Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 1 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 1 of 32

O

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY DAVIS, an individual, on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. CV 06-04804 DDP (PJWx) **ORDER DENYING IN SIGNIFICANT PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |
| Plaintiff, | ) ) | [Motion filed on May 1, 2009] |
| v. | ) ) | |
| CHASE BANK U.S.A., N.A., a Delaware corporation; CIRCUIT CITY STORES, INC., a Virginia corporation , | ) ) ) ) | |
| Defendants. | ) ) | |

Before the Court is Defendant Chase Bank U.S.A., N.A.'s Motion to Dismiss the First Amended Complaint. The First Amended Complaint, filed as a potential class action, seeks to bring four California state law causes of action against Chase,[1] all arising from Chase's servicing of a credit card Chase offered with Circuit City Stores Inc. The First Amended Complaint claims that Chase (1)

---

[1]Because Circuit City is in bankruptcy, this case is actively proceeding only against Chase.

**EXHIBIT**

*E*

tabbies

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 2 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 2 of 32

1 violated California's Consumer Legal Remedies Act, (2) violated
2 California Business and Professions Code § 17200, (3) breached its
3 contracts, and (4) breached the implied covenant of good faith and
4 fair dealing. Chase moves to dismiss the First, Second, and Fourth
5 Causes of Action on the basis that they are federally preempted
6 under the National Bank Act. Alternatively, Chase moves to dismiss
7 all four causes of action on the basis that they fail to state a
8 claim upon which relief can be granted. Additionally, Chase argues
9 that the First and Second Causes of Action must be dismissed for
10 failure to plead those claims with specificity pursuant to Federal
11 Rule of Civil Procedure 9(b). After reviewing the materials
12 submitted by the parties, hearing oral argument, and considering
13 the issues raised in both, the Court denies the motion in
14 significant part and grants the motion in part for the reasons
15 discussed below.

16 **I.   BACKGROUND**

17     **A.   Circuit City Rewards Card and Program**

18     Defendant Chase is a national bank incorporated in Delaware.
19 First Amended Compl. ("FAC") ¶ 4. Chase and Circuit City offered a
20 credit card called the "Circuit City Rewards Card," which conferred
21 certain benefits on consumers who utilized the credit card to make
22 their purchases. _Id._ at ¶ 5. Those benefits included earning
23 reward points redeemable at Circuit City stores and access to
24 Chase's advertised promotions of "no interest, no payment" or "no
25 interest, with minimum payments" for a specified period of time on
26 certain types of Circuit City purchases. _Id._ The FAC alleges that
27 Chase solicited Plaintiff and others similarly situated to make
28 purchases at Circuit City using the Circuit City Rewards Card. _Id._

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 3 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 3 of 32

¶ 18.    In exchange for using its services, Plaintiff was eligible to receive an interest- and payment-free period in which to pay off the balance on certain "Promotional Purchases."    Id.

Plaintiff alleges that Chase offers a misleading promotional program with the card.    Defendants from time to time advertised the ability to make Promotional Purchases.    Id. at ¶ 19.    For example, a Circuit City Rewards Card promotional item offered to customers in 2006 states in large writing: "No interest! No payments! For six months when you spend $499 or more. For 90 days when you spend $299 or more."; and "It is easy to take advantage of this offer! When you make a purchase with your Circuit City credit card, present this certificate to the store associate to scan."    Id.    According to the FAC, the promotional offer conveys that the consumer will receive the benefit of a grace period of anywhere from a few months to two years or more.    Id. at ¶ 28.    In fact, however, all payments made by the consumer on his or her regular monthly statement are given priority of payment to the promotional item, even if not yet billed and even if not due for many months.    Id. at ¶ 27.    That is, Plaintiff alleges that Chase prioritized the allocation of credit card payments to purchases not yet due and owing – the Promotional Purchases subject to a grace period – rather than to purchases that were accruing interest.    Id. at ¶ 28.    According to the FAC, Chase fails to disclose that it allocates payments in this way.    Id. at ¶ 27.    As a result, Plaintiff alleges, the promotional offer is a scam used to induce customers into believing that they will have an extended time period in which to pay off their Promotional Purchases, when in fact the consumer has less time to pay off those

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 4 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 4 of 32

1  purchases because of how Chase allocates consumers' payments. Id.
2  at ¶ 28.

3      On March 3, 2006, Plaintiff purchased a television set from
4  Circuit City, charging $2,000 to his Chase Circuit City Rewards
5  Card. Id. at ¶ 21. Defendants treated the item as a Promotional
6  Purchase, with the term of no interest with minimal payment until
7  January 2008. Id. Prior to the purchase of the television, Chase
8  billed Plaintiff for purchases made between January 14, 2006 and
9  February 13, 2006 (the "February Statement"). Id. at ¶ 22. Based
10  on the language appearing in his monthly statements, Plaintiff
11  believed that he would not be assessed a finance charge if his
12  monthly billings were paid in full, or that any finance charge
13  would be based only on the remaining balance after any partial
14  payment had been subtracted from the outstanding balance. Id. at
15  ¶ 23 & Ex. B. Thus, if payment was due on the February Statement
16  by March 10, 2006 and payment was posted by March 10, 2006, no
17  finance charge should be applied because the balance would have
18  been paid in full. Id. at ¶ 22. Alternatively, if partial payment
19  was made either of the minimum or a greater amount, then a finance
20  charge should be applied only against the remaining balance after
21  subtracting the payment made. Id. Plaintiff returned two items
22  and made two on-line payments consisting of the total owing on
23  March 4, 2006 and March 6, 2006, thereby paying the February
24  Statement balance in full and on time. Id.

25      When Plaintiff received his statement for purchases made
26  between February 14, 2006 and March 13, 2006 ("March Statement"),
27  the statement showed that although Plaintiff had paid the February
28  Statement balance in full and in a timely manner, Chase assessed a

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 5 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 5 of 32

1  $77.25 finance charge which appeared on the March Statement.  _Id._

2  at ¶ 24 & Ex. C.  Plaintiff alleges that he was assessed the

3  finance charge because his entire February Statement Payment was

4  applied against the $2,000 Promotional Purchase (payment for which

5  was not due and which had not yet appeared on his bill), instead of

6  the February Statement balance.  _Id._ at ¶ 25.  Plaintiff alleges

7  that the $2,000 charge for the television was made subsequent to

8  the issuance of the February Statement, and no Payments of any kind

9  were due and owing for the Promotional Purchase until January 2008.

10  _Id._  Chase nevertheless allocated the entire $1,736.91 that

11  Plaintiff paid on his February Statement to the March 3, 2006

12  Promotional Purchase.  _Id._  Chase assessed similar charges in at

13  least two other situations.  _Id._ at ¶ 26.

14  **B.  Language of the Cardholder Agreements**

15  The terms and conditions of the Application to the Circuit

16  City Rewards Card state that, by signing and returning the form for

17  the credit card offer from Chase, an applicant agrees to numerous

18  terms.[2]  Those terms include the following:

19  3.  You authorize us to allocate your payments and credits in

20  a way that is most favorable to or convenient for us.

21  For example, you authorize us to apply your payments and

22  credits to balances with lower APRs (such as promotional

23  APRs) before balances with higher APRs.

24  4.  Claims and disputes are subject to arbitration.

25  5.  As described in the Cardmember Agreement, we reserve the

26  right to change the terms of your account (including the

27

28  [2]The Application is attached as Exhibit A to the FAC.

5

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 6 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 6 of 32

1          APRs) at any time, for any reason, in addition to APR

2          increases that may occur for failure to comply with the

3          terms of your account.

4   FAC, Ex. A at 2.  According to Plaintiff, although the quoted

5   language addresses lower and higher APR balances, it should not be

6   read to include "interest free" balances, with no APR being posted

7   to Plaintiff's monthly account balance.  Opp'n at 6.

8        The various cardholder agreements describe Interest Free

9   Special Purchases as

10         special promotional purchase balances. . . . Finance charges

11         accruing on these balance types are not added to your Account

12         balance, but instead they are accumulated from billing cycle

13         to billing cycle and added to your account as Accumulated

14         Finance Charges only if the Interest Free Special Purchase . .

15         . has not been paid in full by the end of the time period

16         specified in the promotional offer. . . . Until accumulated

17         charges are posted to your account, we refer to these amounts

18         as "Accumulated Deferred Finance Changes."

19   FAC, Ex. B at 2, col. 1.  The Cardholder Agreements repeatedly

20   represented that no payment would be due, and no interest would be

21   charged, until after the end of the time period specified in the

22   promotional offer.  See Falk Decl., Ex. B at 6, ¶ 9(a) & Ex. E at

23   10, ¶ 10(a).  The Cardholder Agreement also states: "[Y]ou agree

24   that we will and you authorize us to allocate your payments and

25   credits in a way that is most favorable to or convenient for us.

26   For example, you authorize us, in our discretion, to apply your

27   payments and credits to balances with lower Annual Percentage Rates

28

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 7 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 7 of 32

1  (such as promotional Annual Percentage Rates) before balances with

2  higher Annual Percentage Rates." Falk Decl., Ex. E at 10, ¶ 9.[3]

3      **C.   Challenge to Initial Complaint**

4      After Plaintiff first filed his Complaint, Chase moved to

5  compel arbitration and enforce a class action waiver on the basis

6  of an arbitration clause contained in its cardmember agreement.

7  Id. at ¶ 31.  An arbitration clause was not part of Plaintiff's

8  original cardmember agreement, but rather had been introduced

9  through a "bill stuffer" that was sent to Chase's cardmembers as

10 part of their monthly billing.  Id.  This Court denied Chase's

11 motion, finding the arbitration clause to be unconscionable under

12 California law.  Id. at ¶ 32; Dkt. No. 42 (March 26, 2007).  The

13 Ninth Circuit affirmed that decision.  Id. at ¶ 33; Dkt. No. 80

14 (November 25, 2008).

15     **D.   Alleged Violations of Law**

16     On behalf of himself and others similarly situated, Plaintiff

17 brings four causes of action.  The First Cause of Action seeks to

18 allege a violation of the Consumers Legal Remedies Act, Cal. Civil

19 Code §§ 1770(a)(9), (14), and (19).  Plaintiff alleges that

20 Defendants (a) advertised goods or services with the intent not to

21 sell them as advertised, (b) represented that the transaction

22 conferred or involved rights, remedies, or obligations that it did

23 not have or involve, and (c) inserted unconscionable provisions in

24

25     [3]The Cardmember Agreements, on which both parties rely but
26 which are not attached to the FAC, are attached to Defendant's
   Request for Judicial Notice and a larger copy is attached to the
27 Falk Declaration.  As the FAC refers to the cardmember agreements
   and no party questions the authenticity of these documents, they
28 are appropriate for consideration in this Motion to Dismiss.  See
   pp. 9-10, infra.

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 8 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 8 of 32

1  the Cardmember agreement.  FAC ¶ 38.  The Second Cause of Action

2  seeks to allege a violation of California's unfair competition law,

3  California Business & Professions Code § 17200 *et seq.*  Plaintiff

4  alleges that Defendants' unfair, fraudulent, and deceptive

5  practices include: (1) advertising promotional items as interest-

6  and payment-free when purchased with a Chase Circuit City Rewards

7  Card when in fact interest and finance charges were frequently

8  applied; (2) charging a finance fee despite payment of monthly

9  balance; (3) applying monthly payments to promotional purchases not

10  yet billed or owing instead of to the balance as billed in the

11  monthly statement due; and (4) inserting an unconscionable

12  arbitration and class action wavier clause and "change of terms"

13  clause in the cardmember agreement.  FAC ¶ 47.

14      The Third Cause of Action seeks to allege breach of contract.

15  Plaintiff alleges that Chase breached its contract by prioritizing

16  the allocation of credit card payments to purchases offered and

17  accepted as interest and payment free ahead of non-promotional

18  items appearing on the monthly statement, and by charging an

19  interest fee on balances that remained due to this allocation of

20  payments.  Id. at ¶ 53.  Finally, Plaintiff alleges that Chase

21  breached the implied covenant of good faith and fair dealing by (1)

22  promising purchasers of Circuit City Promotional Purchases they

23  would receive a payment-free period in which to pay off their

24  purchase when, in fact, Chase prioritized the allocation of

25  payments to Promotional Purchases, and (2) by promising purchasers

26  of Circuit City Promotional Purchases that they would receive an

27  interest-free period in which to pay off their purchase when, in

28

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 9 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 9 of 32

1  fact, Chase charged interest fees in connection with Promotional

2  Purchases. <u>Id.</u> at ¶ 58.

3      The Court heard oral argument on June 29, 2009. Plaintiff

4  subsequently requested the opportunity to present limited

5  additional briefing in light of the Supreme Court's decision in

6  <u>Cuomo v. Clearing House Ass'n, L.L.C.</u>, 129 S. Ct. 2710 (2009).

7  Plaintiff filed a Supplemental Brief on July 7, 2009 and Chase

8  filed a Supplemental Brief on July 14, 2009.

9  **II.    PROCEDURAL STANDARD - RULE 12(b)(6)**

10     Under Rule 12(b)(6), a complaint or counterclaims must be

11  dismissed when the allegations fail to state a claim upon which

12  relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering

13  a 12(b)(6) motion, "all allegations of material fact are accepted

14  as true and should be construed in the light most favorable to the

15  plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).

16  A court properly dismisses a claim under Rule 12(b)(6) based upon

17  the "lack of a cognizable legal theory" or "the absence of

18  sufficient facts alleged under the cognizable legal theory."

19  <u>Baliesteri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.

20  1990). The pleading party's obligation requires more than "labels

21  and conclusions" or a "formulaic recitation of the elements of a

22  cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955,

23  1964-65 (2007) (internal quotation marks omitted). Rather, taking

24  Plaintiff's allegations as true, the alleged violation of law must

25  be plausible. <u>See also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50

26  (2009).

27     On a motion to dismiss pursuant to Federal Rule of Civil

28  Procedure 12(b)(6), a district court generally "may not consider

9

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 10 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 10 of 32

1 any material beyond the pleadings." Lee v. City of Los Angeles, 250

2 F.3d 668, 688 (9th Cir. 2001).  When "matters outside the pleadings

3 are presented to and not excluded by the court, the motion must be

4 treated as one for summary judgment under Rule 56."  Fed. R. Civ.

5 P. 12(d).  Two exceptions exist to the requirement that

6 consideration of extrinsic evidence converts a 12(b)(6) motion to a

7 summary judgment motion: that material properly submitted as part

8 of the complaint (including attachments to the complaint) and

9 material subject to judicial notice under Federal Rule of Evidence

10 201.  Lee, 250 F.3d at 688-89.  Documents whose contents are

11 alleged in a complaint and whose authenticity no party questions,

12 but which are not physically attached to the pleading, may be

13 considered on a 12(b)(6) motion without converting the motion to

14 dismiss into a motion for summary judgment.  Branch v. Tunnell, 14

15 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by

16 Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

17 **III. DISCUSSION**

18     Chase attacks the FAC on a number of grounds.  The Court

19 denies Defendant's motion in significant part and grants it in

20 part.

21     **A.    Preemption**

22     Chase first argues that Plaintiff's First, Second, and Fourth

23 Causes of Action are preempted by the National Bank Act, 12 U.S.C.

24 § 21 et seq. ("NBA") and regulations promulgated by the Office of

25 the Comptroller of the Currency ("OCC"), 12 C.F.R. § 7.4008,

26 because Chase is a national bank.  Plaintiff argues that there is

27 no preemption because Plaintiff seeks to hold Chase accountable

28 under laws of general applicability that have only an incidental

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 11 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 11 of 32

1  effect on bank operations.  The authority on NBA preemption points

2  in both directions, but the Court ultimately finds that Plaintiff's

3  CLRA claims are not preempted by the NBA or 12 C.F.R. § 7.4008,

4  that Plaintiff's UCL claims are preempted in part and not preempted

5  in part, and that Plaintiff's Fourth Cause of Action is not

6  preempted.

7        1.   General Principles Surrounding Preemption and the

8            NBA

9     State laws that are preempted by federal law will be invalid

10  by reason of the Supremacy Clause of the Constitution.  A federal

11  law "may pre-empt state law in three different ways": by express

12  terms, where federal law is so pervasive that it occupies the

13  entire field, or where state law conflicts with federal law or

14  stands as an obstacle to the accomplishment and execution of the

15  full purpose and objectives of Congress.  Bank of Am. v. City and

16  County of S.F., 309 F.3d 551, 557-58 (9th Cir. 2002).  "'Federal

17  regulations have no less pre-emptive effect than federal

18  statutes.'"  Id. at 560 (quoting Fidelity Federal Sav. & Loan Ass'n

19  v. de la Cuesta, 458 U.S. 141, 153 (1982)).

20     National banks are protected from state regulation by a

21  tradition of broad preemption.  Although there is normally a

22  presumption against the preemption of state laws, in the banking

23  context, the Supreme Court has "interpreted grants of both

24  enumerated and incidental 'powers' to national banks as grants of

25  authority not normally limited by, but rather ordinarily pre-

26  empting, contrary state law."  Watters v. Wachovia Bank, N.A., 550

27  U.S. 1, 12 (2007) (internal quotation marks omitted); Wells Fargo

28  Bank N.A. v. Boutris, 419 F.3d 949, 956 (9th Cir. 2005); Bank of

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 12 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 12 of 32

1  <u>Am.</u>, 309 F.3d at 558-59.   The NBA vests in nationally-chartered

2  banks enumerated powers and "all such incidental powers as shall be

3  necessary to carry on the business of banking."   12 U.S.C. § 24

4  (Seventh).   The Act "shields national banking from unduly

5  burdensome and duplicative state regulation"; however, federally

6  chartered banks remain "subject to state laws of general

7  application in their daily business to the extent such laws do not

8  conflict with the letter or the general purposes of the NBA."

9  <u>Watters</u>, 550 U.S. at 11.   "States are permitted to regulate the

10  activities of national banks where doing so does not prevent or

11  significantly interfere with the national bank's or the national

12  bank regulator's exercise of its powers."   <u>Id.</u> at 12.   State law

13  "may not curtail or hinder a national bank's efficient exercise of

14  any . . . power, incidental or enumerated under the NBA."   <u>Id.</u> at

15  13.   Incidental powers "include activities closely related to

16  banking and useful in carrying out the business of banking."   <u>Bank</u>

17  <u>of Am.</u>, 309 F.3d at 562.

18          2.   <u>Authority for and Regulations Governing Preemption</u>

19               <u>with Respect to Credit Card Lending</u>

20      Credit card lending falls under the purview of national banks'

21  authorized powers.   The NBA authorizes national banks to exercise

22  "all such incidental powers as shall be necessary to carry on the

23  business of banking," including "by loaning money on personal

24  security."   12 U.S.C. § 24 (Seventh).   Additionally, 12 C.F.R.

25  § 7.4008(a) authorizes a national bank to "make, sell, purchase,

26  participate in, or otherwise deal in loans and interests in loans

27  that are not secured by liens on, or interests in, real estate,

28  subject to such terms, conditions, and limitations prescribed by

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 13 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 13 of 32

1  the Comptroller of the currency and any other applicable Federal

2  law." Section 7.4008 also discusses preemption with respect to

3  non-real estate lending. Subsection (d), titled "Applicability of

4  state law," provides, in relevant part:

5     (1)   Except where made applicable by Federal law, state laws
            that obstruct, impair, or condition a national bank's

6            ability to fully exercise its Federally authorized non-
            real estate lending powers are not applicable to national

7            banks.

8     (2)   A national bank may make non-real estate loans *without
            regard to state law limitations concerning*: . . .

9

10          (iv) The terms of credit, including the schedule for
              repayment of principal and interest, amortization of
              loans, balance, payments due, minimum payments, or

11             term to maturity of the loan, including the
              circumstances under which a loan may be called due

12             and payable upon the passage of time or a specified
              event external to the loan; . . .

13

14          (viii) Disclosure and advertising, including laws
              requiring specific statements, information, or other
              content to be included in credit application forms,

15             credit solicitations, billing statements, credit
              contracts, or other credit-related documents;

16

17          (ix) Disbursements and repayments; and

18          (x)   Rates of interest on loans.

19  12 C.F.R. § 7.4008(d) (emphasis added). Subsection (e) sets out

20  the types of state laws that are not preempted. In particular, it

21  provides:

22     State laws on the following subjects are not inconsistent with
     the non-real estate lending powers of national banks and apply

23     to national banks to the extent that they only incidentally
     affect the exercise of national banks' non-real estate lending

24     powers: [¶] (1) Contracts; [¶] (2) Torts; . . . [¶] (8) Any
     other law the effect of which the OCC determines to be

25     incidental to the non-real estate lending operations of
     national banks or otherwise consistent with the powers set out

26     in paragraph (a) of this section.

27  Id. § 7.4008(e).

28        3.   Preemption of Plaintiff's Claims

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 14 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 14 of 32

1    Because Defendant focuses its preemption challenge on express

2   preemption, the parties primarily debate whether Plaintiff's CLRA,

3   UCL, and breach of the implied covenant of good faith and fair

4   dealing claims fall under the preemptive scope of § 7.4008.

5                  a.    Predicate Legal Duty

6    Whether framed by the Supreme Court in <u>Watters</u> or the more

7   specific applicable regulations, a critical threshold task in the

8   preemption analysis is identification of the proper state law that

9   is the subject of the preemption analysis.  In the context of

10  generally-applicable laws, the Court's focus is essentially on the

11  law "as applied."  Where a plaintiff brings a claim under an unfair

12  competition law, the Court's inquiry is "whether the legal duty

13  that is the predicate of Plaintiffs' state law claim falls within

14  the preemptive power of the NBA or regulations promulgated

15  thereunder."  <u>Rose v. Chase Bank USA, N.A.</u>, 513 F.3d 1032, 1038

16  (9th Cir. 2008) (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S.

17  504, 524 (1992)); see also <u>Gibson v. World Savings & Loan Ass'n</u>,

18  103 Cal. App. 4th 1291, 1301-02 (2002).  For example, in <u>Rose</u>, the

19  plaintiffs brought their actions under California's Unfair

20  Competition Law, Cal. Bus. & Prof. Code § 17200, and alleged that

21  the defendant had engaged in unlawful business practices because

22  the defendant's credit card "convenience checks" did not have the

23  disclosures required by California Civil Code § 1748.9.  513 F.3d

24  at 1034-35.  The court's analysis focused not on the general

25  applicability of the UCL but on California Civil Code § 1748.9.

26  <u>Id.</u> at 1036-38.

27    Plaintiff's Complaint rests on four state law claims, three of

28  which are relevant here.  First, Plaintiff alleges a Consumer Legal

14

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 15 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 15 of 32

1   Remedies Act claim for false advertising, misrepresentation, and

2   inserting an unconscionable provision in the contract.  FAC ¶ 38.

3   See Cal. Civ. Code § 1770(a)(9), (14), (19).  Second, Plaintiff

4   alleges that Defendant engaged in unfair business practices that

5   include the credit card advertising, the charge of the finance fee,

6   the application of the monthly payments, and inserting an

7   unconscionable arbitration and class action waiver clause.  FAC

8   ¶ 47.  Fourth, Plaintiff alleges breach of the covenant of good

9   faith and fair dealing for the allocation of payments.  Id. at

10   ¶ 58.

11                    b.   12 C.F.R. § 7.4008(d)-(e)

12        The critical point in the analysis is to determine whether

13   Plaintiff's claims fall into 12 C.F.R. § 7.4008's express

14   preemption provision.  As the Court reads § 7.4008, it sets up the

15   following framework for analysis.  First, consistent with the

16   general principles of NBA preemption, see Watters, 550 U.S. at 11-

17   12, it is governed by a general preemption statement provideing

18   that state laws that "obstruct, impair, or condition a national

19   bank's ability to fully exercise its Federally authorized non-real

20   estate lending powers" are simply "not applicable" to national

21   banks.  § 7.4008(d)(1).  Second, it sets out specific laws that are

22   preempted.  § 7.4008(d)(2).  Third, it provides guidance on

23   subjects that are not preempted "to the extent that they only

24   incidentally affect the exercise of national banks' non-real estate

25   lending powers," such as contracts, torts, and criminal law.

26   § 7.4008(e).  Where a state law does not fall into the express

27   preemption provisions of § 7.4008, it will be preempted where it

28   runs afoul of the broader preemption principles discussed above.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 16 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 16 of 32

1              i.    Silvas, OTS, and OCC

2         Cases provide some guidance on how to apply these principles.

3    Although the parties each marshal precedent in their favor and

4    distinguish their opponents' cases, the Court has not found a case

5    that is exactly on point.

6         Defendant argues that the Court is bound by the Ninth

7    Circuit's decision in Silvas v. E*Trade Mortgage Corp., 514 F.3d

8    1001 (9th Cir. 2008).  In Silvas, the Ninth Circuit considered

9    whether the plaintiffs' claim was preempted by the regulations

10   promulgated under a related but distinct statute.  There, the

11   plaintiffs sued E*Trade, a federal thrift with whom they had

12   refinanced their mortgage, alleging that E*Trade violated the

13   unfair advertising section of California's UCL, by representing to

14   its customers that its lock-in fee is non-refundable when, under

15   the law, it is refundable under some circumstances.  Id. at 1003;

16   see Silvas v. E*Trade Mortg. Corp., 421 F. Supp. 2d 1315, 1317

17   (S.D. Cal. 2006).  Against the backdrop of the significant federal

18   presence in the realm of national banking, the Ninth Circuit

19   considered whether provisions regulating banks under the Home

20   Owners' Loan Act of 1933 ("HOLA") preempted Plaintiff's claim.

21   Specifically, the court looked to a preemption regulation

22   promulgated by HOLA's enforcing authority, the Office of Thrift

23   Supervision ("OTS"), 12 C.F.R. § 560.2.  The court noted that

24   § 560.2(a) expressly established that OTS "occupies the entire

25   field of lending regulation for federal savings associations."  Id.

26   at 1005 (quoting 12 C.F.R. § 560.2(a)).

27        Following the guidance by OTS on how to interpret and apply

28   its regulation, the court then applied a two-step process to

16

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 17 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 17 of 32

1  determining whether a claim was preempted by the regulation.

2  First, the court looked to whether the state law was a type

3  contemplated by the list in § 560.2(b), which listed preempted

4  statutes. _Id._ at 1006.  To determine whether the claim fell into

5  the list of preempted statutes, the court focused on how the

6  statute – California's UCL – would apply in the particular case,

7  even if the statute applied more generally. _See id._  If the law

8  was one contemplated by the list, the preemption analysis would end

9  and the claim would be preempted. _Id._  The court would only reach

10  the question of whether the law fit within the confines of

11  subsection (c) (a provision similar to § 7.4008(e)) if the claim

12  did not fit within the list of specifically preempted laws. _Id._ at

13  1006-07; _see_ 12 C.F.R. § 560.2(c).  The Ninth Circuit did not reach

14  the second step; instead, it held that because the claim was

15  "entirely based on E*Trade's _disclosures and advertising_," the

16  claim "[fell] within the specific type of law listed in

17  § 560.2(b)(9)," and was therefore preempted.  514 F.3d at 1006

18  (emphasis in original).  _See also_ Weiss v. Washington Mutual Bank

19  et al., 147 Cal. App. 4th 72, 77-78 (2007).

20      At first glance, _Silvas_ would seem to control the result here.

21  The OTS regulations it considered contain language that is largely

22  parallel to the OCC regulations at issue here.  _Compare_ 12 C.F.R.

23  § 560.2(b)-(c) _with_ 12 C.F.R. § 7.4008(d)-(e); _cf._ Office of the

24  Comptroller of the Currency, Preemption Final Rule, 69 Fed. Reg.

25  1904-01, 1912 n.62 ("As noted in the proposal, the OTS has issued a

26  regulation providing generally that state laws purporting to

27  address the operations of Federal savings associations are

28  preempted.  See 12 CFR 545.2.  The extent of Federal regulation and

17

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 18 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 18 of 32

1  supervision of Federal savings associations under the Home Owners'

2  Loan Act is substantially the same as for national banks under the

3  national banking laws, a fact that warrants similar conclusions

4  about the applicability of state laws to the conduct of the

5  Federally authorized activities of both types of entities.").

6  Additionally, <u>Silvas</u> considers whether false advertising and unfair

7  competition claims fall in the scope of comparable preemption

8  language.  Thus, if <u>Silvas</u> controlled, the Court would be inclined

9  to find that some of Plaintiff's claims – which, like those in

10  <u>Silvas</u>, sound in part in false advertising – are expressly

11  preempted by § 7.4008(d)(2)(viii), which governs "[d]isclosures and

12  advertising."

13      The Court agrees with Plaintiff, however, that <u>Silvas</u> does not

14  control.  First, <u>Silvas</u> involved a field preemption provision and

15  specific guidance from the agency as to how to apply the provisions

16  of the exemption.  Although the phrasing of the two regulations is

17  similar, OTS preemption is more sweeping because "OTS occupies the

18  entire field of lending regulation for federal savings

19  associations" in connection with HOLA.  12 C.F.R. § 560.2(a).

20  Courts have cautioned against wholesale application of an OTS/HOLA

21  analysis in the OCC context.  <u>See, e.g.</u>, <u>Munoz v. Fin. Freedom</u>

22  <u>Senior Funding</u>, 567 F. Supp. 2d 1156, 1162 n.4 (C.D. Cal. 2008)

23  (Carney, J.); <u>Gutierrez v. Wells Fargo Bank, N.A.</u>, 2008 WL 4279550,

24  *12 (N.D. Cal. Sept. 11, 2008) (Alsup, J.) ("The language employed

25  by the OCC in its regulations and interpretive letters evidence

26  that application of a more narrow preemption analysis is more

27  appropriate than that applied in <u>Silvas</u> (where the OTS had

28  specifically defined a proper preemption test to be employed).

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 19 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 19 of 32

Here, the OCC itself has attempted to reconcile banking practices
with state law in an interpretive letter."); id. at *10-11 (citing
OCC Advisory Letter AL 2002-3).[4]

Cases considering whether the NBA and OCC regulations preempt
UCL and CLRA claims have tended to distinguish between those claims
that arise from generally-applicable duties such as contractual
obligations and the duty to refrain from deceptive acts and those
claims that rest on alleged violations of statutes specifically
aimed at NBA duties. See Miller v. Bank of Am., N.A., 170 Cal.
App. 4th 980, 989-90 (2009). In the former case, courts have found
no preemption either by applying general NBA preemption principles
or by finding that § 7.4008(e) applies. See, e.g., Jefferson v.
Chase Home Finance, 2008 WL 1883484 (N.D. Cal. April 29, 2008)
(Henderson, J.); Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th
1463, 1475-84 (2005).[5] In the latter, courts have found that the
state law claims are preempted. See, e.g., Rose, 513 F.3d at 1032;
Miller, 170 Cal. App. 4th at 980; Montgomery v. Bank of Am. Corp.,
515 F. Supp. 2d 1106 (C.D. Cal. 2007) (Snyder, J.)(in part, finding
that UCL claims based on specific means of charging fees conflict-
preempted). This distinction is supported by commentary from the
OCC, see OCC Advisory Letter AL 2002-3 at 3 n.2, though at least
one court has suggested that the OCC's regulations and authority
are broad enough that it should be the enforcing body for all

---

[4]That said, courts have not uniformly distinguished the two
statutes and regulatory schemes in all circumstances.
Additionally, Plaintiff does not suggest that the OTS cases are
wholly unhelpful. See Gibson, 103 Cal. App. 4th at 1302-04.

[5]The Court notes that Smith appears to apply the presumption
against preemption, despite the Ninth Circuit's holdings to the
contrary. See Smith, 135 Cal. App. 4th at 1475-76 & n.5.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 20 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 20 of 32

1  deceptive practices, see Weiss v. Wells Fargo Bank, N.A., 2008 WL

2  2620886 (W.D. Mo. July 1, 2008).  See also Augustine v. FIA Card

3  Services, N.A., 485 F. Supp. 2d 1172, 1175-76 (E.D. Cal. 2007) (OCC

4  regulations do not preempt claims regarding behavior that is

5  unconscionable or contrary to public policy).

6       Instead, Plaintiff urges the Court to follow the reasoning of

7  Jefferson v. Chase Home Finance, 2008 WL 1883484 (N.D. Cal. April

8  29, 2008), which focused on whether the law to be applied was one

9  of general applicability.  In that case, the plaintiff sued his

10  mortgage servicer under California's Consumer Legal Remedies Act

11  for, inter alia, making misrepresentations about how it would apply

12  his mortgage payments.  The defendant argued that two OCC

13  regulations, 12 C.F.R. §§ 34.4(a) and 7.4009, preempted the

14  plaintiff's claims.  Although the regulations provided that banks

15  could make real estate loans without regard to state law

16  limitations regarding terms of credit, disclosure and advertising,

17  processing and servicing of mortgages, repayments, and rates of

18  interest, the court held that the plaintiff's allegations under

19  laws of "general application" like the CLRA and the False

20  Advertising Act, "which merely require all business (including

21  banks) to refrain from misrepresentations and abide by contracts

22  and misrepresentations to customers[,] do not impair a bank's

23  ability to exercise its lending powers." 2008 WL 1883484 at *10.

24  Because they only "'incidentally affect' the exercise of a Bank's

25  power," the court held, they "do not fall into the enumerated

26  categories of § 34.4(a), and are therefore not preempted." Id.

27  The court cited to a California Court of Appeal case in which the

28  court had held that a plaintiff's UCL claims for breaches of

20

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 21 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 21 of 32

1  contractual duties were not preempted.  Id. (citing Gibson v. World

2  Savings & Loan Ass'n, 103 Cal. App. 4th 1291 (2002)).

3       With these principles in mind, the Court turns to whether the

4  allegations are expressly preempted by the OCC regulations.

5                    ii.  Application

6       The Court begins by noting that, based on the plain language

7  of the regulation, its reading of generally how to apply the

8  preemption provisions of § 7.4008 is largely consistent with that

9  of the OTS regulations.[6]  That is, on the Court's reading of the

10  regulation, the first step is to determine whether the predicate

11  legal duty falls in the scope of § 7.4008(d)(2) or § 7.4008(e).  If

12  it falls into neither, the Court must consider whether it violates

13  the general NBA preemption principles.[7]  However, the Court's

14  reading of the specific provisions and applications of those

15  provision do not necessarily yield the same result as in the field-

16  preempted OTS context.

17       The Court finds that Plaintiff's CLRA claims and UCL

18  advertising claims do not fall into the express provisions of

19  § 7.4008(d)(2).  Defendant focuses on the false advertising claim

20  and argues that, like in Silvas, a false advertising claim falls

21  into 12 C.F.R. § 7.4008(d)(2)(viii), which provides that a national

22  bank "may make non-real estate loans without regard to state law

23

24       [6]Given that they use somewhat similar language, this makes
25  sense.  See 69 Fed. Reg. at 1912 n.62.

26       [7]The Jefferson court appears to rest on the conclusion that
    the law at issue is one of general application and move straight to
27  the analysis of whether there was an incidental effect.  See
    Jefferson, 2008 WL 1883484 at *10.  The Court's approach therefore
28  differs slightly from the Jefferson court's, though the Court finds
    that case's reasoning persuasive overall.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 22 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 22 of 32

1  limitations concerning . . . (viii) Disclosure and advertising,

2  including laws requiring specific statements, information, or other

3  content to be included in credit application forms, credit

4  solicitations, billing statements, credit contracts, or other

5  credit-related documents[.]"  The Court finds that this language

6  does not expressly preempt generally-applicable laws regarding

7  deceptive advertising.  Rather, the specific examples listed

8  suggest that the provision expressly preempts laws regarding

9  particular types of disclosures, such as those like APR that might

10  be included in a state version of the Federal Truth in Lending Act.

11  Although the Court recognizes that the list is exemplary rather

12  than exclusive, the Court notes that the language is aimed at

13  *specific* types of disclosures, rather than general "false

14  advertising" laws.  As false advertising laws are widespread, the

15  Court would expect to see such an example.[8]  Because the OTS

16  regulations have broader preemptive force, and because the Silvas

17  court considered a UCL claim premised on a TILA violation, a

18  distinction between the Court's finding here and the result in

19  Silvas is not problematic.  The predicate duty - to avoid deceptive

20  disclosures - is significantly broader than a specific duty to

21  disclose certain provisions that would fall within the scope of

22  subsection (d)(2)(viii).

23     To the extent Plaintiff's UCL claims are challenge the

24  allocation of payments *apart* from the way that allocation interacts

25  with deceptive advertising, the Court finds that those claims are

26  expressly preempted by § 7.4008(d)(2)(iv).  In part, Plaintiff's

27  _____

28     [8]But see Montgomery, 515 F. Supp. 2d at 1114; Weiss, 2008 WL
2620886 at *2-3.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 23 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 23 of 32

1  UCL claim appears to be based on an argument regarding Defendant's

2  charging of a finance fee and the application of monthly payments.

3  See FAC ¶ 47.  The exact nature of this claim is unclear to the

4  Court.  To the extent Plaintiff alleges that Defendant's allocation

5  of payments violates the UCL because it is contrary to

6  advertisements or the contract, these claims are not preempted.  To

7  the extent Plaintiff alleges that the allocation of payments or the

8  charging of a finance fee is generally an unfair act,[9] the Court

9  finds that such a claim seeks to regulate the way in which Chase

10  allocates payments, and falls squarely within § 7.4008(d)(2)(iv).

11  Although the claim could be framed as a "general" attack (like any

12  claim could), the result it seeks squarely impedes on the decision

13  to employ certain lending terms.  Unlike the other claims, an

14  attack on the allocation of payments in this way in and of itself

15  does not say "speak the truth" or "comply with the contracts you

16  make," but rather "do not apply payments in this specific way, even

17  if your contract allows as much and even if you have not done so

18  deceptively."

19     The Court finds that the other CLRA and UCL claims (those

20  related to unconscionable provisions and breach of the implied

21  covenant of good faith and fair dealing) are based in contract, and

22  therefore fall into the scope of § 7.4008(e) so long as they only

23  incidentally affect the exercise of Chase's non-real estate lending

24  practices.  Plaintiff's challenge to specific terms on the ground

25  that they are unconscionable does not seek to dictate the terms of

26

27     _____

28     [9]Given the parties' discussion of forthcoming regulations, it
appears that Plaintiff's UCL claim rests in part on declaring
unfair the specific way that Chase allocates payments.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 24 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 24 of 32

1  credit in a way that would run afoul of either § 7.4008(d)(iv) or

2  the NBA's broader preemption principles: it does not seek to impose

3  a specific term of credit, but rather is part of a general rule of

4  contract law.

5       The Court finds that the false advertising and contract-based

6  claims have only an incidental affect on lending practices.

7  Contrary to Defendant's argument, the Court does not read all parts

8  of Plaintiff's complaint to seek to preclude Defendant from

9  applying payments in a certain way altogether.  (To the extent

10 Plaintiff does seek such a declaration, his claims are expressly

11 preempted by 12 C.F.R. § 7.4008(d)(2)(iv), as discussed above)  For

12 the reasons discussed by the _Jefferson_ court, the Court finds that

13 this application of the CLRA and UCL in the advertising-based

14 claims is consistent with the exceptions to NBA preemption.  _See_

15 _Jefferson_, 2008 WL 1883484 at *12-14.  With respect to the claims

16 the Court has identified as contract-related, the Court finds that

17 these claims have at most an incidental effect on the exercise of

18 Chase's lending powers.  Such a claim does not seek to force Chase

19 to set its contracts in a certain way, but rather merely to _adhere_

20 to the contracts it does create.  A breach of contract claim that

21 concerns lending terms is perhaps closer to preemption than one

22 centered on a contract for employment or maintenance, but the Court

23 does not consider such a claim to fall within the fundamental

24 purposes of the broad national banking preemption.

25      Thus, on the record before it, the Court denies Defendant's

26 motion on preemption grounds with respect to all but the UCL claims

27 that challenge the allocation of payments or fees as inherently

28 unfair, which the Court dismisses with leave to amend.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 25 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 25 of 32

1    **B.    Failure to State a Claim**

2        Defendant alternatively argues that Plaintiff has failed to

3    state a claim under the CLRA, the UCL, and state contract law.

4        1.    <u>CLRA Allocation of Payments Claim (Cal. Civil Code</u>

5            <u>§ 1770(a)(9), (14)</u>

6        Defendant argues that Plaintiff's allegations regarding the

7    allocation of payments fail to state a claim for violation of the

8    CLRA.  As discussed above, Plaintiff's First Cause of Action seeks

9    to allege violations of three provisions of the CLRA.

10   Specifically, Plaintiff alleges that Defendant's acts violate

11   § 1770(a)(9) and (14) in that Defendant (1) advertised goods or

12   services with the intent not to sell them as advertised and (2)

13   represented that the transaction conferred or involved rights,

14   remedies, or obligations that it did not have or involve.  FAC

15   ¶ 38.

16       Defendant argues that Plaintiff fails to plead a CLRA claim

17   because "Plaintiff nowhere alleges that the relied on any

18   supposedly misleading advertising or other statements by Chase

19   concerning promotional purchases, or that any supposed

20   advertisement or representation cause him any harm."  Def.'s Mem.

21   at 13.  Rather, Defendant argues, "as to the only specific

22   transaction identified. . . , Plaintiff expressly alleges that he

23   did not even request his purchase to be treated as a promotional

24   purchase."  <u>Id.</u> (citing FAC ¶ 21).  Defendant also argues that the

25   advertisements say nothing about the allocation of payments, and

26   that Plaintiff's claim independently fails for that reason.

27       "[R]elief under the CLRA is limited to any consumer who

28   suffers any damage *as a result* of the use or employment by any

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 26 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 26 of 32

1    person of a method act, or practice unlawful under the act." Mass.

2    Mutual Life Ins. Co. v. Super. Ct., 97 Cal. App. 4th 1282, 1292

3    (2002) (internal quotation marks and alteration omitted) (emphasis

4    in Mass. Mutual). This limitation on relief "requires that

5    plaintiffs in a CLRA action show not only that a defendant's

6    conduct was deceptive but that the deception caused them harm."

7    Id. Put differently, causation is "a necessary element of proof"

8    for relief. Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th

9    746, 754 (2003).

10    The Court finds Plaintiff's allegations sufficient to state a

11    claim for reliance. Although Plaintiff's allegations preclude him

12    from arguing that he relied on the advertising campaign in

13    *purchasing* the item that was subject to the promotional purchase

14    (and therefore limit his damages accordingly), the Court finds his

15    allegations regarding his payment choices *after* Chase treated his

16    purchase as a promotional payment sufficient to state a claim at

17    the pleading stage. Likewise, at this stage, Defendant's second

18    argument is unavailing, as the Court finds that the FAC pleads a

19    plausible claim.

20    2.    UCL Allocation of Payments Claims

21    Defendant challenges Plaintiff's allegations regarding his

22    allocation of payments UCL claim on three grounds: (1) that

23    Plaintiff has not sufficiently alleged reliance, (2) that there is

24    nothing unfair about the payment allocation method, and (3) that

25    the doctrine of judicial abstention applies to Plaintiff's claims.

26    Plaintiff's Second Cause of Action seeks relief under the UCL for

27    acts that include (1) advertising promotional items as interest and

28    payment free, (2) charging a finance fee, (3) applying monthly

26

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 27 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 27 of 32

1  payments to Promotional Purchases not yet billed or owing instead
2  of to the balance as billed in the monthly statement due, and (4)
3  inserting an unconscionable arbitration and class action waiver
4  clause and "change of terms" clause in its Cardmember Agreement.
5  The Court has dismissed this claim as preempted in part, but some
6  allegations remain.

7       For the reasons discussed immediately above with respect to
8  reliance and the CLRA claim, the Court denies Defendant's motion on
9  that ground.  The remaining challenges appear to go to Plaintiff's
10 allegations regarding the allocation of payments in general, and it
11 therefore appears to the Court that it has already dismissed on
12 preemption grounds the claims to which Defendant's remaining
13 arguments apply.

14            3.   Contract Claims

15      Defendant argues that Plaintiff has failed to state a claim
16 for breach of contract or for breach of the implied covenant of
17 good faith and fair dealing.  Plaintiff alleges that Chase offered
18 Plaintiff a no interest, no payment grace period on Promtional
19 Purchases made using their Rewards Card, and that Plaintiff
20 accepted Chase's offer by making Promotional Purchases.  FAC ¶¶ 51-
21 52.  Plaintiff alleges that Chase breached these contracts by (1)
22 "prioritizing the allocation of credit card Payments to purchases
23 offered and accepted as interest and payment free ahead of non-
24 promotional items appearing on the monthly statement" and (2)
25 "charging an interest fee on balances that remained due to this
26 allocation of Payments."  Id. at ¶ 53.  Plaintiff alleges that the
27 same facts show a violation of the implied covenant of good faith
28 and fair dealing.  Id. at ¶ 58.

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 28 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 28 of 32

1   Defendant argues that Plaintiff has failed to state a claim
2   because the contract does not promise to allocate payments in the
3   manner proposed by Plaintiff, but rather the application and
4   cardholder agreement specifically provide that Chase may "allocate
5   [Plaintiff's] payments and credits in a way that is most favorable
6   to or convenient for [Chase]." FAC, Ex. B at 2; Falk Decl., Ex. E
7   at 10, ¶ 9. Defendant argues that, as alleged by Plaintiff,
8   Chase's promotional offer provided only that the promotional
9   balance would be "interest free," not that other balances would not
10  be subject to finance charges and that nothing in the promotional
11  offer provided that the balance did not need to be repaid or that
12  payments would not be allocated to the promotional balance. Reply
13  at 15. Plaintiff argues that the payment allocation clauses of the
14  contract do not undermine his claim. First, Plaintiff notes that
15  the Defendant allocated the payment to amounts that were not yet
16  due or owing as they had not even appeared on Plaintiff's February
17  Statement. Opp'n at 3-4; FAC ¶¶ 24-25. Additionally, Plaintiff
18  argues that the various agreements define "interest free" offers as
19  exempt from the reach of Defendant's payment allocation powers.
20  Opp'n at 4-5.

21   The Court finds that Plaintiff has stated a claim for breach
22  of contract and breach of the implied covenant of good faith and
23  fair dealing sufficient to survive Defendant's Motion to Dismiss.
24  Although Defendant seems to generally challenge Plaintiff's
25  contract interpretation, the Court is not prepared, on the briefing
26  before it, to perform a contract interpretation analysis that would
27  be required in order to determine whether Plaintiff's
28  interpretation of the contract is the proper one.

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 29 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 29 of 32

4.    CLRA Claim for Damages on Unconscionable Contract

Provisions

Defendant argues that Plaintiff's CLRA claim for damages with respect to the arbitration clause and change-in-terms provisions is procedurally defective and must be dismissed.

The CLRA includes certain mandatory procedural requirements regarding notice.  In particular, California Civil Code § 1782 provides that at least thirty days "prior to the commencement of an action for damages," the consumer "shall" notify the alleged offender of the particular alleged violatiosn and demand that the person "correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" of the CLRA.  Cal. Civil Code § 1782(a)(1)-(2).  The notice "shall be in writing and shall be sent by certified or registered mail, return receipt requested." Id.  Although it is not jurisdictional, compliance with the notice requirement "is necessary to state a claim."  Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  All of the authorities cited to the Court by the parties have explained that these procedural requirements are strictly adhered to by dismissing a claim with prejudice.  As one California District Court noted, even prior litigation on an injunctive relief claim that provides actual notice and an opportunity to correct the behavior does not excuse a party from providing notice in the manner required by § 1782(a).  See Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("While § 1782(d) authorizes the filing of an action for injunctive relief without first providing notice to the vendor, the statute further directs that such an action may not be converted into an action for damages

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 30 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 30 of 32

1  unless the consumer first complies with the notice provisions of §

2  1782(a). Accordingly, § 1782 scrupulously prohibits any action for

3  damages unless its notice provisions are met. As stated, the

4  Legislative goals would be eviscerated if consumers were allowed to

5  sue for damages without first providing the statutorily mandated

6  period for remediation."). Plaintiff's attempt to distinguish

7  these cases is unavailing.

8      Plaintiff acknowledges that he did not provide notice in the

9  form required by § 1782(a). Instead, he argues that Defendant

10  received actual notice because the parties litigated whether the

11  arbitration clause applied for two years. Because actual notice is

12  not sufficient, the Court dismisses this claim, with prejudice.

13  See, e.g., Outboard Marine Copr. v. Super. Ct., 52 Cal. App. 3d 30

14  (1975). A claim for injunctive relief remains.

15          5.   CLRA and UCL "Unconscionable Arbitration Clause"

16               Claims

17      Defendant next challenges Plaintiff's CLRA and UCL claims that

18  seek relief on the ground that Defendant inserted an unconscionable

19  arbitration clause into the contract. As Defendant's argument

20  rests in part on finding that all of Plaintiff's other claims are

21  without merit, the Court denies the Motion.

22          6.   CLRA and UCL Change-in-Terms Provision

23      Defendant also challenges Plaintiff's allegation that the

24  change-in-terms provision of the original Cardmember Agreement is

25  unconscionable because it gave Chase the right unilaterally to

26  change the Cardmember Agreement at any time. FAC ¶ 31. Defendant

27  argues that Plaintiff fails to state a claim because the term is

28  not unconscionable as a matter of law. In light of the sparse

Case 08-35653-KRH   Doc 4899-6   Filed 09/15/09   Entered 09/15/09 14:57:00   Desc
Exhibit E to Newman Declaration   Page 31 of 32
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/2009   Page 31 of 32

1  briefing on this issue, the Court denies the motion on this ground,

2  without prejudice.[10]

3    **C.   Pleading with Specificity**

4       Finally, Defendant argues that the FAC fails to plead the CLRA

5  and UCL claims with the specificity required by Federal Rule of

6  Civil Procedure 9(b).  Although Plaintiff does not assert fraud as

7  one of his causes of action, Defendant argues that the claim sounds

8  in fraud and therefore is subjec to Rule 9(b)'s heightened

9  particularity requirement.  Plaintiff does not exactly dispute this

10 legal argument so much as its implications on Plaintiff's pleading

11 here.

12      Rule 9(b) applies when (1) a complaint specifically alleges

13 fraud as an essential element of a claim, (2) when the claim

14 "sounds in fraud" by alleging that the defendant engaged in

15 fraudulent conduct, but the claim itself does not contain fraud as

16 an essential element, and (3) to any allegations of fraudulent

17 conduct, even when none of the claims in the complaint "sound in

18 fraud."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1102-06 (9th

19 Cir. 2003).  Rule 9(b) requires that a plaintiff set forth what is

20 false or misleading about a statement, why it is false, including

21 the "who, what, when, where, and how of the misconduct charged."

22 <u>Id.</u> at 1106.

23      The Court is satisfied that the FAC has specific enough

24 allegations to satisfy this standard as to those portions of the

25

26  ─────────────

27     [10]For example, previously the Court's and the Ninth Circuit's
   unconscionability discussion considered, among other issues, choice
28 of law and discussed unconscionability against California law.
   Neither party briefs these issues.

31

Case 08-35653-KRH    Doc 4899-6    Filed 09/15/09    Entered 09/15/09 14:57:00    Desc
Exhibit E to Newman Declaration    Page 32 of 32
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/2009    Page 32 of 32

1  CLRA and UCL claims that sound in misrepresentation.  Accordingly,

2  the Court denies this portion of the Motion.

3  **IV.   CONCLUSION**

4      For the foregoing reasons, the Court denies Defendant's motion

5  in significant part.  The Court grants Defendant's motion with

6  respect to (1) the UCL claims seeking to invalidate the payment

7  structure as unfair and (2) the CLRA damages claim.

8  IT IS SO ORDERED.

9

10

11  Dated: September 3, 2009

                                  DEAN D. PREGERSON
12                                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28