IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **Circuit City Stores, Inc.,** *et al.* | : | Case No. 08-35653 (KRH) |
| | : | |
| **Debtors.** | : | |

**MOTION OF OMNIMOUNT SYSTEMS, INC. FOR RECONSIDERATION
OF THE COURT'S AUGUST 20, 2009 ORDER ON THE DEBTORS'
TWENTIETH OMNIBUS OBJECTION FOR THE PURPOSE OF VACATING
THE RECLASSIFICATION OF OMNIMOUNT SYSTEMS, INC.'S 503(B)(9) CLAIM**

COMES NOW, OmniMount Systems, Inc., an Arizona corporation, ("OmniMount"), by and through its undersigned counsel, and hereby files this motion (the "Motion") for reconsideration of this Court's August 20, 2009, *Order on Debtors' Twentieth Omnibus Objection to Claims (Reclassified to Unsecured Claims of Certain Claims Filed as 503(b)(9) Claims for Goods Received by the Debtors Not Within Twenty Days of the Commencement of the Cases)* [Docket No. 4576], (the "Order"), with respect to OmniMount's 503(b)(9) claim, Claim No. 1334 (the "503(b)(9) Claim"). In support of its Motion, OmniMount respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested

---

William A. Gray, Esquire – VSB #46911
C. Thomas Ebel, Esquire – VSB #18637
William A. Burgess (VSB No. 67998)
Sands, Anderson, Marks & Miller, P.C.
801 East Main Street, Suite 1800
(Post Office Box 1998)
Richmond, Virginia 23219 (23218-1998)
Phone: (804) 783-7237
Fax: (804) 783-7291
*Counsel for OmniMount Systems, Inc.*

herein are sections 503(b)(9) and 502(j) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 3008 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.

## BACKGROUND

1. Prior to the commencement of this case, OmniMount sold goods on credit to the Debtors in the ordinary course of the Debtors' business.

2. Within 20 days prior to the commencement of this case (the "503(b)(9) Period"), the Debtors received goods (the "Goods") valued at $257,696.79 from OmniMount. The Goods were shipped to the Debtors outside the 503(b)(9) Period, but they were received by the Debtors within the 503(b)(9) Period.

3. OmniMount timely filed the 503(b)(9) Claim for the Goods in the amount of $257,696.79. A true and correct copy of the 503(b)(9) Claim is attached hereto as **Exhibit A**.

4. The Debtors objected to the 503(b)(9) Claim in their *Twentieth Omnibus Objection to Claims (Reclassified to Unsecured Claims of Certain Claims Filed as 503(b)(9) Claims for Goods Received by the Debtors Not Within Twenty Days of the Commencement of the Cases)* [Docket No. 3704] (the "20th Omnibus Objection"). The 20th Omnibus Objection is over 200 pages in length (including exhibits), and lists 94 separate claims. The notice of the objection was appended to the very end of the document. In general, the relief requested in the 20th Omnibus Objection was based upon supporting documentation in each claim, and the Debtors' books and records.

5. On information and belief, thirteen (13) creditors filed oppositions to the 20th Omnibus Objection. See, Notice of Agenda of Matters Scheduled for Hearing on July 23, 2009

2

at 11:00 A.M. (Eastern) [Docket No. 4189]. At the initial hearing on the 20th Omnibus Objection held on July 23, 2009, Debtors' counsel reported to the Court on the number of filed responses to the 20th Omnibus Objection, and as to such creditors who responded, the Debtors requested adjournment to October 15, 2009, which was granted. As for all creditors who failed to respond, the Debtors requested the Court grant the relief it requested in the 20th Omnibus Objection. On August 20, 2009, the Court did, in fact, enter the Order approving the 20th Omnibus Objection only as to any creditor who failed to respond. In that Order, the 503(b)(9) Claim was reclassified as a general unsecured claim.

6.      OmniMount was listed as the notice party on OmniMount's 503(b)(9) proof of claim. *See* Exhibit A. As such, the 20th Omnibus Objection, and the notice for same, was sent directly to OmniMount. Through inadvertence, OmniMount did not realize that the 503(b)(9) Claim was included in the 200+ pages of the 20th Omnibus Objection. As a result, OmniMount did not initially take any action to responded to the 20th Omnibus Objection. Recently, as a result of OmniMount's outside counsel's review of the Disclosure Statement, as defined below, it came to OmniMount's attention that its 503(b)(9) Claim was included in the Omnibus Objection. OmniMount immediately requested its outside counsel to obtain local counsel for OmniMount who could prosecute the 503(b)(9) Claim in this case.

7.      Upon information and belief, the 20th Omnibus Objection, as same pertains to OmniMount, relied on the invoice dates for the Goods. The dates in Exhibit C to the 20th Omnibus Objection, page 91, correspond with the dates the Goods were shipped from OmniMount, and not the dates the Goods were received by the Debtors. As a result, the Debtors' 20th Omnibus Objection relied on the erroneous assumption that the Goods were received outside the 503(b)(9) Period.

3

## **PROCEDURAL HISTORY**

8. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to manage their property as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

9. On November 12, 2008, this Court entered an *Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007* [Docket No. 107] (the "503(b)(9) Bar Date Order").

10. OmniMount initially filed two 503(b)(9) Claims, [Claim Numbers 1366 and 1334] before the 503(b)(9) bar date for the Goods received by the Debtors within 20 days of bankruptcy. On February 13, 2009, the Debtors filed *Debtors' First Omnibus Objection to (I) Certain Duplicative 503(b)(9) Claims and Certain Amended 503(b)(9) Claims*. On April 3, 2009, this Court entered an *Order Sustaining Debtors' First Omnibus Objection to (I) Certain Duplicative 503(b)(9) Claims* [Docket No. 2914] which expunged Claim Number 1366, leaving Claim 1334 as the surviving claim.

11. On June 23, 2009, the Debtors filed the 20th Omnibus Objection. On August 20, 2009, this Court entered the Order, which reclassified Claim 1334 as a general unsecured claim.

12. The hearing on certain claimants' responses to the Omnibus Objection has been continued to October 15, 2009 at 2:00 P.M. [Docket No. 4698].

13. The *Disclosure Statement with Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims* [Docket No. 4614] (the "Disclosure Statement"),

4

which has not yet been approved, provides that under the proposed plan, 503(b)(9) claims would be paid in full, while general unsecured claims have an estimated recovery of 0% to 13.5%.

### BASIS FOR THE MOTION

A. **A Reclassified Claim May be Reconsidered For Cause**

14. Bankruptcy Rule 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed. R. Bankr. P. 3008. Pursuant to Section 502(j) of the Bankruptcy Code, "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. §502(j). In assessing whether cause exists, courts pay particular attention to (1) possible prejudice to the Debtor, (2) the creditor's explanation for its delay in contesting an objection to its claim and, (3) possible prejudice to the creditor absent reconsideration. *In re Cassell*, 206 B.R. 853, 856 (Bankr. W.D. Va. 1997).

15. In addition, Federal Rule of Civil Procedure 60(b), made applicable to this proceeding by Bankruptcy Rule 9024, provides in pertinent part that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. Here, the facts and circumstances establish adequate cause for this Court to reconsider its Order reclassifying OmniMount's administrative claim on grounds of inadvertence and excusable neglect.

16. The seminal case addressing the "excusable neglect" standard is *Pioneer Inv. Servo Co. v. Brunswick Assoc. Ltd P'ship*, 507 U.S. 380, 395 (1993). In *Pioneer*, the United States Supreme Court enumerated the following factors to be considered when addressing a

claim of excusable neglect: (1) the danger of prejudice to the non-movant; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith. *Id.* In this matter, these factors strongly support reconsideration of the Order.

17.     First, reconsideration of this Court's Order will not prejudice the Debtors because no distributions have been made in the case and because the amount of the claim will not affect the feasibility of the Debtors' proposed chapter 11 Plan. Also, at the time of the filing of the Motion, the Disclosure Statement had not been approved and therefore the Debtors and Creditors in this case have been put on notice of the 503(b)(9) Claim.

18.     Second, only one month has elapsed since entry of the Order, and no subsequent orders have been entered that would otherwise affect the relief requested herein. Such a short delay will not impact negatively any judicial proceedings. Additionally, thirteen (13) other creditors have filed responses to the 20th Omnibus Objection. Those thirteen (13) matters remain pending and, on information and belief, unresolved. As such, the Debtors will not be prejudiced by, at a minimum, adding this one additional claim to the list of claims that must be resolved.

19.     Third, OmniMount submits that the delay was due to inadvertence, as OmniMount did not realize that its claim was one of 94 separate claims included in the Omnibus Objection, which was almost 200 pages in length. In support of its position, OmniMount submits the Declaration of Raymond Nakano, Executive Vice President and Chief Financial Officer of OmniMount, attached hereto as **Exhibit B**.

20.     Fourth, OmniMount submits that it acted in good faith at all times, timely filed its proofs of claim with supporting documentation, and immediately upon learning that its claim had been reclassified on boilerplate "books and records" grounds, OmniMount took appropriate steps

6

to obtain relief from the Order. Moreover, OmniMount is confident that if given the opportunity to address the merits of the 503(b)(9) claim, the Court would deny the Debtors' request to reclassify the claim.

21. In light of the foregoing, OmniMount has met the standards for relief based on excusable neglect. Furthermore, under the circumstances, OmniMount should not be required to shoulder the reclassification of a valid administrative claim for which it has provided ample supporting documentation. Under the *Disclosure Statement with Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims* [Docket No. 4614], administrative claims are intended to be paid in full, while general unsecured claims have an estimated recovery of a 0% to 13.5%. Therefore OmniMount would be prejudiced absent reconsideration if its 503(b)(9) Claim is treated as a general unsecured claim.

22. For the foregoing reasons, OmniMount respectfully submits that reconsideration of the Order of this Court approving the reclassification of Claim No. 1334 is warranted under § 502(j) of the Bankruptcy Code and Bankruptcy Rules 3008 and 9024.

**B.    OmniMount's Right to Allowance of the 503(b)(9)
Claim as an Administrative Claim**

23. OmniMount submits that its 503(b)(9) Claim should be allowed because it fits squarely within the provisions of section 503(b)(9) mandating administrative priority for the value of goods *"received by* the debtor within 20 days before the date of commencement" of the bankruptcy case. 11 U.S.C. § 503(b)(9) (emphasis added). The Debtors' Objection was based either on a misinterpreting of the invoices for the Goods, or on a mistaken assumption that the term "received," as used in section 503(b)(9), relates to the date the Goods were shipped from OmniMount. This interpretation of 503(b)(9) ignores the plain language of the Uniform

Commercial Code (the "U.C.C.") § 2-103(1), defining receipt of goods as requiring "physical possession" by the purchaser. Furthermore, it is inconsistent with the position the Debtors have taken in other pleadings in these Chapter 11 proceedings. *See Debtors Objection to Claim of Panasonic Corporation of North America (Claim No. 1254)* [Docket No. 4630] (the "Debtors' Panasonic Objection") (discussed, *infra*).

24. In addition, although OmniMount does not concede that title to the Goods passed upon shipment, the U.C.C. nevertheless does not rely on the concept of "title" for purposes of establishing the rights of buyers and sellers. *See In re Marin Motor Oil, Inc.*, 740 F.2d 220, 224-26 (3d Cir. 1984). The passage of title is irrelevant to when goods are "received" for the purpose of section 503(b)(9). The U.C.C. defines "receipt of goods" as "taking physical possession of goods." U.C.C. § 2-103(1).

25. Case law supports OmniMount's position that "receipt" for purposes of 503(b)(9) means physical possession of the Goods on the buyer's premises. In *In re Pridgen,* No. 07-04531-8-RDD, 2008 WL 1836950 at *1 (Bankr. E.D.N.C. Apr. 22, 2008), the debtors operated a convenience store that sold gasoline. *Id.* at *1. A creditor, Cary Oil Co. ("Cary"), filed an application for allowance of an administrative expense under section 503(b)(9) for gasoline purchased by the debtors prepetition. Cary argued that its relationship with the debtor was a consignment, and that it owned the gasoline delivered to the debtors' store until the gas was pumped from the tank and sold to the debtors' customers. Based upon that premise, Cary took the position that the gasoline was not "received" by the debtors until the final sale to the debtors' customers. *Id.* at *2-3. Relying on the U.C.C. as enacted in North Carolina, the court indicated in dictum that *receipt* had occurred when the debtors took physical possession of the gasoline. *Id.* at *4.

8

26. The term "receipt" has also been interpreted by several bankruptcy courts in the context of reclamation demands pursuant to section 546(c) of the Bankruptcy Code, which preserves a seller's reclamation rights with respect to certain goods "received" by the debtor prepetition. *See* 11 U.S.C. § 546(c). Case law indicates that delivery to a carrier, even where the sale contract is "F.O.B. shipping point", does not constitute "receipt" by the buyer at the point of delivery to the carrier; receipt requires actual physical delivery to the buyer's location. *See In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225 (3d Cir. 1984); *see also In re R.F. Cunningham & Co.*, 2006 Bankr. LEXIS 3650 (Bankr. E.D.N.Y. 2006); *see also In re Maloney Enterprises, Inc.*, 37 B.R. 290, 291 (Bankr. E.D. Ky. 1983).

27. In *Maloney Enterprises,* the plaintiff-seller sold goods to the debtor and had shipped the goods F.O.B. *Id.* at 291. The court found that neither the date of delivery to the debtor's carrier pursuant to the F.O.B. contract, the passage of title to the debtor, nor the point at which risk of loss passed to the debtor controlled in determining the date of "receipt" by the debtor. *Id.* Instead, the court held that the receipt of goods by the debtor occurred when the goods arrived at the debtors' warehouse and the debtor took actual, physical possession. *Id.*

28. In the present case, the Debtors have elsewhere assumed that the date of actual delivery controls. In the Debtors' Panasonic Objection, the goods were physically received outside the 20 day period, but sold by the Debtors to their customers within the 503(b)(9) Period. The Debtors asserted that "receipt" under section 503(b)(9) means physical possession, and that the date title passes is irrelevant to when goods are "received." The Debtors argued:

> While the Bankruptcy Code does not define the term "received," courts that have interpreted the meaning of "received" have adopted the Uniform Commercial Code's (the "U.C.C.") definition of "receipt". *See In re Pridgen*, 2008 WL 1836950 at *4 (Bankr. E.D.N.C., Apr. 22, 2008); *see also In re Plastech Engineered Products, Inc.*, 2008 WL 5233014 at *4 (Bankr. E.D. Mich. Oct. 7, 2008) (discussing *Pridgen* and indicating in dictum that existence of section

9

> 503(b)(9) claim turned on whether debtor or its agent had "received" goods by taking "actual physical possession") . . . . The Virginia U.C.C. defines "receipt" of goods as "taking physical possession of them." Va. Code Ann. § 8.2-103(1)(c) . . . . [p]assage of title . . . is irrelevant with regard to when goods are 'received' for the purposes of section 503(b)(9).

Debtors' Panasonic Objection, 11, 15.

29.     The Goods sold by OmniMount to the Debtors were physically received by the Debtors within 20 days of the bankruptcy proceeding, and the claim for unpaid Goods should have remained classified as a 503(b)(9) claim.  The Debtors did not take actual, physical possession of the Goods until they arrived at the Debtors' facility, which occurred within the 503(b)(9) Period.  As such, OmniMount requests that the Court vacate its reclassification of the 503(b)(9) Claim.

## WAIVER OF MEMORANDUM OF LAW

30.     Pursuant to Rule 9013-1(G) of the *Local Rules of Bankruptcy Practice and Procedure for the Eastern District of Virginia*, OmniMount respectfully requests that the Court waive the requirement for a separate memorandum of law on the basis that either this Motion contains no novel issues of law and/or that the applicable legal authority is already set forth herein in this Motion.

## ADDITIONAL RESERVATION OF RIGHTS

31.     Nothing herein should be construed as a waiver or limitation of OmniMount's right to appeal from those aspects of the Order that were adverse to it.

## NO PRIOR REQUEST

32.     OmniMount has not previously sought the relief requested herein from this or any other court.

**WHEREFORE,** OmniMount respectfully requests that the Court vacate its Order to the extent that it reclassifies OmniMount's claim as a general unsecured claim, authorize the Debtors to treat the 503(b)(9) Claim with all other administrative priority claims, or in the alternative, vacate its Order to the extent it reclassifies OmniMount's claim, and deem this Motion as OmniMount's objection to the 20th Omnibus Objection, or allow OmniMount to file an opposition to the 20th Omnibus Objection, and thus add OmniMount to the list of creditors whose claims remain unresolved under the 20th Omnibus Objection, and grant such other relief as the Court deems just and proper.

Dated: September 21, 2009

/s/ William A. Gray
William A. Gray, Esquire – VSB #46911
C. Thomas Ebel, Esquire – VSB #18637
William A. Burgess (VSB No. 67998)
Sands, Anderson, Marks & Miller, P.C.
801 East Main Street, Suite 1800
(P.O. Box 1998)
Richmond, Virginia 23219 (23218-1998)
Phone: (804) 783-7237
Fax: (804) 783-7291
*Attorneys for OmniMount Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September, 2009, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Bankruptcy Court for the Eastern District of Virginia, Richmond Division, using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system that have filed notices of appearance in this matter, and was mailed, by U.S. Mail, first class, postage prepaid, to all persons on the Service List below:

## SERVICE LIST

Daniel F. Blanks, Esquire
Douglas M. Foley, Esquire
McGuire Woods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510
*Counsel for Debtors*

David W. Hayes, Esquire
James S. Sheerin, Esquire
Sarah Beckett Boehm, Esquire
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
*Counsel for Debtors*

Gregg M. Galardi, Esquire
Skadden Arps Slate Meagher & Flom, LLC
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
*Counsel for Debtors*

Chris L. Dickerson, Esquire
Skadden Arps Slate Meagher & Flom, LLC
333 West Wacker Drive
Chicago, IL 60606
*Counsel for Debtors*

Robert Van Arsdale, Esquire
Assistant U.S. Trustee
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
*U.S. Trustee's Office*

Linda K. Myers, Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, Illinois 60601
*Special Counsel for Debtors*

David S. Berman, Esquire
Riemer & Braunstein, LLP
Three Center Plaza, 6th Floor
Boston, Massachusetts 02108
*Counsel for Bank of America, N.A.*

Bruce Matson, Esquire
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
*Counsel for Bank of America, N.A.*

Lynn L. Tavenner, Esquire
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
*Local Counsel for the Official Committee of Unsecured Creditors*

Jeffrey N. Pomerantz, Esquire
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Boulevard, 11th Fl
Los Angeles, CA 90067
*Counsel for the Official Committee of Unsecured Creditors*

Robert J. Feinstein, Esquire
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 26th Floor
New York, NY 10017
*Counsel for the Official Committee of Unsecured Creditors*

/s/ William A. Gray