UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FILED
RICHMOND DIVISION
SEP 21 2009
CLERK
U.S. BANKRUPTCY COURT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al, | ) | Case No. 08-35653 |
| | ) | |
| | ) | Jointly Administrated |
| Debtors. | ) | |

WAKE COUNTY'S RESPONSE TO DEBTORS' THIRTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (REDUCTION OF CERTAIN PERSONAL PROPERTY TAX CLAIMS)

NOW COMES, Marcus Kinrade, Revenue Director for Wake County, a creditor herein, and respectfully shows unto the Court as follows:

1. On or before January 22, 2009, Circuit City, Inc., hereinafter referred to as "Debtor," filed with the Wake County Revenue Department, hereinafter "Revenue Department," its 2009 listing forms reporting the taxable personal property in Wake County that Circuit City owned or leased. N.C.G.S.§105-304 requires that business personal property be listed in January at original cost and year of purchase of all equipment and other taxable personal business property. The value of listed personal property is determined as of January 1 of each tax year. A copy of the Debtor's 2009 personal property listing forms is attached hereto as Exhibit A. The property was valued by applying the Cost Index and Depreciation Schedules developed by the North Carolina Department of Revenue for use with taxable personal property in all North Carolina counties. The Wake County Revenue Department's appraised value of the property is shown on Exhibit A.

2.    On or before June 26, 2009 Wake County filed an administrative proof of claim

form, Claim No. 13627, copy attached as Exhibit B, for personal property valued at valued as

follows:

$567,257.00 resulting in tax of $5148.02
$425,000   resulting in tax of  $3,714.50
$283,745.00 resulting in tax of $2,451.56
$333,101.00 resulting in tax of $3,022.89.

for a total of taxable property valued at  $1,609,103.000 and resulting in taxes in the amount of

$14,336.97.

3.    On July 30, 2009, Debtor's agent appealed the assessment of personal property.

Exhibit C, attached.

4.    In response to Debtor's appeal, the Revenue Department scheduled a meeting on

September 10, 2009 and gave Debtor's agent notice of that meeting.  The Debtor's agent did not

attend the meeting or provide any additional evidence of value.  Exhibits D and E.

5.  The North Carolina Court of Appeals has upheld the application of the N.C.

Department of Revenue Personal Property Schedules to calculate depreciation and fairm market

value of business personal property.  In the Matter of Westmoreland LG&E Partners, North

Carolina, 174 N.C.App. 692, 622 S.E.2d 124 (2005), copy attached, the Court upheld the use of

the Cost Index and Depreciation Schedules developed by  the North Carolina Department of

Revenue. The Court held that value derived by application of those schedules is presumed to be

correct and that presumption can be rebutted only when the taxpayer produces competent,

substantial and material evidence that application of the schedules resulted in a value

substantially higher than fair market value as of January 1 of the year in question.

6. The Revenue Department provided an opportunity for Debtor's representative to present evidence to rebut the presumption of correctness of the assessment, but the Debtor did not attend the meeting and submitted no additional evidence of property values. Exhibit E, Affidavit of Gwendolyn Nicholson. By appealing the value but failing to attend the meeting at the Revenue Department, the Debtor refused the Revenue Department's offer to review the Debtor's evidence of value and intentionally withheld its evidence of value. While attempting to present its value of evidence to this Court, the Debtor has deprived the Revenue Department of the chance to examine the Debtor's evidence of value and to reduce that value if warranted by the evidence. Therefore, the Wake County Revenue Department respectfully submits that the Debtor should be estopped from presenting its evidence of value to this Court. This Creditor respectfully submits that Debtor should not be permitted to maintain its omnibus objection as to Wake County's Claim after having intentionally deprived this Creditor of any opportunity to review its evidence and make any adjustments to the assessed value of Debtor's property.

WHEREFORE, Wake County Revenue Director respectfully requests the following:

That an order be entered by this Court allowing the claim of Wake County Revenue against Circuit City, Inc. (Claim #13627) for 2009 ad valorem taxes in the amount of $14,336.97as shown on Exhibit shown on Exhibit B and that the order further requires the Debtor to make full and prompt payment in said amounts to Wake County Revenue Director.

This the 18th day of September, 2009.

Marcus Kinrade
Wake County Revenue Director
P. O. Box 550
Raleigh, North Carolina 27602
(919) 856-5400

CERTIFICATE OF SERVICE

This is to certify that the foregoing Response to Debtors' Thirty-SeventhOmnibus Objection to Claim was served on the Debtors by mailing a copy thereof first class mail, postage prepaid, addressed to the following:

Gregg M. Galardi Esq.
Ian S. Fredericks, Esq.
SCADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmingont Delaware 19899-0636

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGUIREWOODS, LLP
One James Center
901 E. Cary Street
Richmond, VA 23219

Chris L. Dickerson, Esq.
SCADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-7120

This the 18th day of September, 2009.

Marcus Kinrade
Wake County Revenue Director

WAKE COUNTY REVENUE DEPARTMENT
P.O. BOX 2331
RALEIGH, NORTH CAROLINA 27602-2331

EXHIBIT A

2009 BUSINESS PERSONAL PROPERTY LISTING
Due by: January 31, 2009

www.WakeGov.com
Tel (919) 856-5400

| VALUE | ACCOUNT | YEAR | CITY | FIRE | ACCT TYPE | REID | LLP | PASSWORD |
|---|---|---|---|---|---|---|---|---|
| 283744 | 0006149751 | 2009 | CAR | | BUS | 0245572 | | tN7HBDyY |

**Business Location: 1401 PINEY PLAINS RD**
T76 P1 *******************AUTO**MIXED AADC 275
CIRCUIT CITY STORES INC
C/OTAX DEPT LOCATION #3227
PO BOX 42304
RICHMOND VA 23242-2304

COST CENTER

**Trade Name: CIRCUIT CITY STORES INC**

Bus. Begin Date: 01MAR2000 Bus. Yr End: 02/28
Type of Bus: Appliance, Television, and Other Electronics
Sole Prop: ( ) Partnership: ( ) Corp ( Y ) LLP ( ) LLC ( )
Phone: (804) 527-4000 Ext: 39841 NAICS Code: 443110
Alt Phone: Fed ID: 54-0493875
Fax:
E-Mail:
Employees (This location only) F/T P/T

**COMPLETE IF BUSINESS HAS CLOSED:** Date Sold: Telephone: New Owner's Name: Address:

**A SUPPLIES ON HAND JANUARY 1, 2009 AT COST**

| | |
|---|---|
| Office, Medical, Dental, Beauty, Maintenance, etc | 208 |
| Fuels of all kinds | |
| Spare parts for equipment | |
| Expensed Items | |
| All other | |
| **Total** | $ 208 |

**B CIP (PLEASE ATTACH SCHEDULE)**
Report 100% of cost of all personal property carried in a CIP account as of January 1, 2009 $________

**C PERSONAL PROPERTY - SEE INSTRUCTIONS**

| YEAR ACQUIRED | B10-PROFESSIONAL EQUIP (MISC) COST | ADDITIONS | DELETIONS | TOTAL |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | 2,671 | 726 | | 3397 |
| 2006 | 25,668 | | | 25,668 |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | 2,384 | | | 2384 |
| 2002 | 7,736 | | | 7736 |
| 2001 | | | | |
| 2000 | 70,272 | | | 70,272 |
| 1999 | 57,482 | | | 57,482 |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| 1994 | | | | |
| 1993 | | | | |
| PRIOR | | | | |
| TOTAL | 166,213 | 726 | | 166,939 |

| YEAR ACQUIRED | K10-OFFICE FURNITURE, FIXTURES, MACHINES & EQ COST | ADDITIONS | DELETIONS | TOTAL |
|---|---|---|---|---|
| 2008 | | 1519 | | 1519 |
| 2007 | 36,634 | 740 | 33,730 | 3644 |
| 2006 | 21,455 | | | 21,455 |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | 80,293 | | | 80,293 |
| 2002 | 2,323 | | | 2323 |
| PRIOR | 452,900 | | | 452,900 |
| TOTAL | 593,605 | 2259 | 33,730 | 562,134 |

| YEAR ACQUIRED | U5-COMPUTERS-SOFTWARE COST | ADDITIONS | DELETIONS | TOTAL |
|---|---|---|---|---|
| 2008 | | 686 | | 686 |
| 2007 | 5,380 | 52,927 | | 58,307 |
| 2006 | 8,622 | | | 8622 |
| 2005 | 12,385 | | | 12,385 |
| PRIOR | 75,387 ~~85,656~~ | | | 75,387 |
| TOTAL | 101,774 | 53,613 | | 155,387 |

| YEAR ACQUIRED | GROUP4 - MISC 1 COST | ADDITIONS | DELETIONS | TOTAL |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | N/A | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| 1994 | | | | |
| 1993 | | | | |
| PRIOR | | | | |
| TOTAL | | | | |

| YEAR ACQUIRED | N5-LEASED OFFICE EQUIP-MANUFACTURE COST | ADDITIONS | DELETIONS | TOTAL |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | 34,509 |
| 2000 | 34,509 | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| 1994 | | | | |
| 1993 | | | | |
| 1992 | | | | |
| 1991 | | | | |
| 1990 | | | | |
| 1989 | | | | |
| 1988 | | | | |
| PRIOR | | | | |
| TOTAL | 34,509 | | | 34,509 |

WCTBL 20758 12010

**SCHEDULE C-1** LEASED PROPERTY TAXABLE TO THE LESSOR (FOR INFORMATIONAL PURPOSES ONLY)

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE | MONTHLY PAYMENT | LENGTH OF LEASE | ACCOUNT OR LEASE NUMBER | SELLING PRICE NEW |
|---|---|---|---|---|---|---|
| Cary Mini-Ss (S/L) 1401 Piney Plains Road Cary NC27511 | | | | | | |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL KIT<br>123693IBM<br>Computer Equipment / CL | 07/01/2007 | 348.50 | 60 month | 07/01/2007Deal | 20,910.25 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL PERIPHERAL KIT<br>123801IBM<br>Computer Equipment / CL | 07/01/2007 | 215.34 | 60 month | 07/01/2007Deal | 12,920.17 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS DISPLAY MONITOR<br>125077IBM<br>Computer Equipment / CL | 07/01/2007 | 8.15 | 60 month | 07/01/2007Deal | 489.28 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SUREMARK PRINTER<br>125078IBM<br>Computer Equipment / CL | 07/01/2007 | 22.48 | 60 month | 07/01/2007Deal | 1,348.95 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SURE POS CLIENT<br>125079IBM<br>Computer Equipment / CL | 07/01/2007 | 38.96 | 60 month | 07/01/2007Deal | 2,337.44 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | MARKNET X2031E PRINT SERVER<br>909501BM<br>Computer Equipment / CL | 12/28/2005 | 8.00 | 36 month | 12/28/2005Deal | 288.17 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL LS 2208 HAND-HELD SCANN<br>90988IBM<br>Computer Equipment / CL | 12/28/2005 | 5.58 | 36 month | 12/28/2005Deal | 200.98 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL LS 2208 HAND-HELD SCANN<br>90999IBM<br>Computer Equipment / CL | 12/28/2005 | 5.58 | 36 month | 12/28/2005Deal | 200.98 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL AP 200 ACCESS PORT<br>91010IBM<br>Computer Equipment / CL | 12/28/2005 | 12.27 | 36 month | 12/28/2005Deal | 441.89 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL AP 200 ACCESS PORT<br>91021IBM<br>Computer Equipment / CL | 12/28/2005 | 12.27 | 36 month | 12/28/2005Deal | 441.89 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL AP 200 ACCESS PORT<br>91032IBM<br>Computer Equipment / CL | 12/28/2005 | 12.27 | 36 month | 12/28/2005Deal | 441.89 |

**SCHEDULE C-1** *LEASED PROPERTY TAXABLE TO THE LESSOR (FOR INFORMATIONAL PURPOSES ONLY)*

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE | MONTHLY PAYMENT | LENGTH OF LEASE | ACCOUNT OR LEASE NUMBER | SELLING PRICE NEW |
|---|---|---|---|---|---|---|
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL AP 200 ACCESS PORT<br>91043IBM<br>Computer Equipment / CL | 12/28/2005 | 12.27 | 36 month | 12/28/2005Deal | 441.89 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL PD 8500 PIN PAD / PAYME<br>91054IBM<br>Computer Equipment / CL | 12/28/2005 | 16.46 | 36 month | 12/28/2005Deal | 592.57 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL PD 8500 PIN PAD / PAYME<br>91065IBM<br>Computer Equipment / CL | 12/28/2005 | 16.46 | 36 month | 12/28/2005Deal | 592.57 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL ES-3000 24 PORT ETHERNE<br>91076IBM<br>Computer Equipment / CL | 12/28/2005 | 31.51 | 36 month | 12/28/2005Deal | 1,134.41 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL WS 5100 WIRELESS SWITCH<br>91088IBM<br>Computer Equipment / CL | 12/28/2005 | 35.76 | 36 month | 12/28/2005Deal | 1,287.50 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL WS 5100 WIRELESS SWITCH<br>91099IBM<br>Computer Equipment / CL | 12/28/2005 | 37.92 | 36 month | 12/28/2005Deal | 1,365.17 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | SYMBOL - SOFTWARE<br>91415IBM<br>Computer Equipment / CL | 12/28/2005 | 25.11 | 36 month | 12/28/2005Deal | 904.16 |
| | | | | | TOTAL: | 46,340.16 |

**Name: Circuit City Stores, Inc. Circuit City** **Account:6149751** **County:Wake** **Year:2009**

**SCHEDULE G-1** **ACQUISITION DETAIL**

| Asset # / Lease # | Description / State Class/Owner Class | Date Acquired | Original Cost |
|---|---|---|---|
| 129617 | IN STORE NETWORKING<br>Computer Equipment / NW | 02/28/2008 | 685.58 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 685.58 |
| | | Computer Equipment Total: | 685.58 |
| 130906 | Candy Fixture<br>Office Furniture & Fixtures / RE | 07/31/2008 | 981.41 |
| Notes: New Acquisition | | | |
| 128311 | Streater Glass Cases<br>Office Furniture & Fixtures / RE | 01/31/2008 | 537.41 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 1,518.82 |
| | | Office Furniture & Fixtures Total: | 1,518.82 |
| | | TOTAL: | 2,204.40 |

**Name: Circuit City Stores, Inc. Circuit City** **Account:6149751** **County: Wake** **Year:2009**

**SCHEDULE G-1**

**DISPOSALS DETAIL**

| Asset # / Lease # | Description / State Class/Owner Class | Date Acquired | Original Cost |
|---|---|---|---|
| 103627 | Digital Download Kiosk<br>Office Furniture & Fixtures / RE | 05/31/2007 | 33,730.37 |
| Notes: Disposed Date = 05/21/2008 | | | |
| | | 2007 Total: | 33,730.37 |
| | | Office Furniture & Fixtures Total: | 33,730.37 |
| | | TOTAL. | 33,730.37 |

# 2009

**COUNTY OF** WAKE North Carolina **BUSINESS PERSONAL PROPERTY LISTING**

| FOR DEPARTMENT USE ONLY → | ACCOUNT NUMBER | DATE | TWP | DISTRICT | CITY | PENALTY | VALUE |
|---|---|---|---|---|---|---|---|
| | 6478028 | | | | | | 424999 |
| 1 | 2 | 3 | 4 | 5 | 6 | | 7 |
| 8 | B | D | E | F | TOTAL | | |

**Business Legal Name or Individual's Name**
Circuit City Stores, Inc.

**Trade Name or DBA**
Circuit City Stores Inc

**Address**
Attention: Tax Department, P.O. Box 42304

**City** Richmond **State** VA **Zip** 23242

STANDARD INDUSTRIAL CLASSIFICATION CODE (SIC #)

NAICS CODE

DATE BUSINESS BEGAN IN THIS COUNTY 08/19/2006

DATE BUSINESS (FISCAL) YEAR ENDS 02/28/2008

**FILL IN APPLICABLE CIRCLE:**
○ PARTNERSHIP ○ SOLE PROPRIETORSHIP ○ UNINCORPORATED ASSOCIATION
● CORPORATION ○ OTHER (SPECIFY)

**FILL IN APPLICABLE CIRCLE: BUSINESS CATEGORY**
● RETAIL ○ WHOLESALE ○ MANUFACTURING
○ SERVICE ○ LEASING/RENTAL ○ FARMING
○ OTHER (SPECIFY)

OTHER N.C COUNTIES WHERE PERSONAL PROPERTY IS LOCATED Various

CONTACT PERSON FOR AUDIT Scott Ash

ADDRESS & PHONE 9954 Mayland Drive, Richmond, VA (804) 527-4000

CONTACT PERSON FOR PAYMENT & PHONE Scott Ash, (804) 527-4000

PHYSICAL ADDRESS 1591 Beaver Creek Commons Dr., Apex, NC 27502

REAL ESTATE OWNED BY

NAME IN WHICH BUSINESS WAS LISTED LAST YEAR Circuit City Stores, Inc.

WHAT IS PRINCIPAL BUSINESS IN THIS COUNTY Commercial

**IF OUT OF BUSINESS COMPLETE THIS SECTION**

DATE CEASED

**FILL IN APPLICABLE CIRCLE:**
○ SOLD ○ CLOSED ○ BANKRUPT ○ OTHER

SOLD EQUIPMENT, FIXTURES, SUPPLIES TO

BUYER'S ADDRESS & PHONE

## SCHEDULE A — PERSONAL PROPERTY- SEE INSTRUCTIONS

### GROUP (1) MACHINERY & EQUIPMENT

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | 1,368 |
| 2006 | | | | 29,948 |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| 1994 | | | | |
| 1993 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 31,316 |

### GROUP (3) OFFICE FURNITURE & FIXTURES

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR COST |
|---|---|---|---|---|
| 2008 | | | | 915 |
| 2007 | | | | 3,812 |
| 2006 | | | | 499,867 |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 504,594 |

### GROUP (4) COMPUTER EQUIPMENT

| YEAR ACQUIRED | PRIOR YR COST | ADDITIONS | DELETIONS | CURR YR COST |
|---|---|---|---|---|
| 2008 | | | | 686 |
| 2007 | | | | 34,030 |
| 2006 | | | | 16,258 |
| 2005 | | | | 6,512 |
| PRIOR | | | | |
| TOTAL | | | | 57,486 |

### GROUP (2) CONSTRUCTION IN PROGRESS

*LIST TOTAL OF ALL PERSONAL PROPERTY EXPENDITURES IN CIP ACCOUNT ON JANUARY 1, BUT NOT INCLUDED ABOVE - ITEMIZE IN SCHEDULE G*

TOTAL CIP: $ NONE

**DO NOT REMIT THIS FORM TO NC DEPARTMENT OF REVENUE**
County addresses and additional schedules are available at:
http://www.dor.state.nc.us/publications/property.html

Attn Assessor's Office, Wake County Assessor, P.O Box 2331 Raleigh, NC, 27602, Phone (919) 856-5400

Send to appropriate county tax office.

SCHEDULE A - CONTINUED **PERSONAL PROPERTY** - SEE INSTRUCTIONS

**GROUP (5) LEASEHOLD IMPROVEMENTS**

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| 2006 | | | | 35,574 |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 35,574 |

**GROUP (6) EXPENSED ITEMS** Capitalization Threshold

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| PRIOR | | | | |
| TOTAL | | | | |

**GROUP (7) SUPPLIES**

| | COST |
|---|---|
| 1. OFFICE, MAINTENANCE, JANITORIAL, MEDICAL, DENTAL, BARBER AND BEAUTY SUPPLIES | 159 |
| 2. FUELS HELD FOR CONSUMPTION | |
| 3. REPLACEMENT PARTS AND SPARE PARTS | |
| 4. RESTAURANT AND HOTEL ITEMS SUCH AS LINENS, CLEANING SUPPLIES AND COOKWARE NOT LISTED ELSEWHERE IN SCHEDULE A | |
| 5. RENTAL ITEMS NOT SOLD IN THE NORMAL COURSE OF BUSINESS AND NOT LISTED ELSEWHERE IN SCHEDULE A | |
| 6. ALL OTHER MISCELLANEOUS SUPPLIES NOT LISTED ABOVE | |
| 7. TOTAL | 159 |

**GROUP (8) OTHER** - TO BE USED WITH COUNTY APPROVAL

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| PRIOR | | | | |
| TOTAL | | | | |

SCHEDULE B **VEHICULAR EQUIPMENT & MOBILE HOMES OR MOBILE OFFICES**

If you answer yes to any of questions 1-6 below, you must attach the appropriate Schedule which corresponds with the equipment type listed below. If you answer yes to any of questions 1, 2, or 3 attach Schedule B-1, attach Schedule B-2 for watercraft, attach Schedule B-3 for Mobile Homes or Mobile Offices, and attach Schedule B-4 for aircraft. Indicate number of short-term rental vehicles owned for question 7.

1. Does your business own any Unregistered Motor Vehicles? ○ YES ● NO
2. Does your business own any Multi-year or permanently registered Trailers? ○ YES ● NO **If yes attach schedule** → **B-1**
3. Does your business own any special bodies on vehicles? ○ YES ● NO
4. Does your business own any watercraft or engines for watercraft? ○ YES ● NO **If yes attach schedule** → **B-2**
5. Does your business own any Mobile Homes or Mobile Offices? ○ YES ● NO **If yes attach schedule** → **B-3**
6. Does your business own any Aircraft? ○ YES ● NO **If yes attach schedule** → **B-4**
7. Does your business own any vehicles held for short-term rental? ○ YES ● NO Number →

SCHEDULE C **LEASED PROPERTY OR OTHER PROPERTY IN YOUR POSSESSION THAT IS OWNED BY OTHERS**

N.C.G.S. 105-315 AND 105-316 requires every person having custody of taxable tangible personal property that has been entrusted to him by another for any business purpose to furnish a separate list containing name, address and description of this property. If you answer yes to one of the following three questions or are otherwise required to supply this list, you must return the list or separate Schedule C-1 by January 15

1. Does your business hold any Leased Property, owned by another party (are you a lessee)? ● YES ○ NO
2. Do you have any property used by your business, or in your possession that is owned by others? ○ YES ○ NO
3. Do you operate a mobile home park, campground, marina, aircraft storage facility or similar business? ○ YES ○ NO

**SCHEDULE D** — **SEPARATELY SCHEDULED PROPERTY**

1 Does your business own any artwork, displays, statues, or other personal property that is separately scheduled for insurance purposes? ◌ YES ◌ NO

Please describe the items and estimated value of items if applicable.

**SCHEDULE E** — **FARM EQUIPMENT**

Does your business own any tractors and/or other farm equipment? ◌ YES ● NO Cost on schedule A

If so, list and attach separate schedule E-1. If listed by cost on Schedule A, indicate above but still include information on separate schedule E-1.

**SCHEDULE F** — **INTANGIBLE PERSONAL PROPERTY**

Do you lease or rent real property from exempt owners, such as a church, local, state or federal government, an airport authority, university, or other exempt owner? ◌ YES ● NO If yes, include lease information below. Attach additional schedule if necesary.

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE AND LEASE TERM | MONTHLY PAYMENT | ACCT # |
|---|---|---|---|---|
| None | | | | |
| | | | | |

**SCHEDULE G** — **ACQUISITIONS AND DISPOSALS DETAIL**

Acquisitions and disposals detail of machinery, equipment, furniture and fixtures and computer equipment, and leasehold improvements in the prior year. If there is not enough room below, attach separate Schedule G-1.

| ACQUISITIONS - ITEMIZE IN DETAIL | 100% ORIGINAL COST | DISPOSALS - ITEMIZE IN DETAIL | YEAR ACQUIRED | 100% ORIGINAL COST |
|---|---|---|---|---|
| See Attached | 1,600 | See Attached | | 43,715 |
| | | | | |
| | | | | |
| | | | | |

**SCHEDULE H** — **REAL ESTATE IMPROVEMENTS**

During the past calendar year, did your business make improvements and/or other additions to real property, owned by your business? If yes, attach separate schedule H-1 with information on such improvements. ◌ YES ● NO

**SCHEDULE I** — **BILLBOARDS - OUTDOOR ADVERTISING STRUCTURES**

Does your business own any billboards - outdoor advertising structures?
If yes, attach separate Schedule I-1 with requested information. ◌ YES ◌ NO

**SCHEDULE J** — **LEASED EQUIPMENT**

Does your business lease equipment to others?
If yes, attach separate Schedule J-1 with requested information. ◌ YES ● NO

## AFFIRMATION

**LISTING FORM MUST BE SIGNED BY A LEGALLY AUTHORIZED PERSON - SEE INSTRUCTIONS**

Under penalties prescribed by law, I hereby affirm that to the best of my knowledge and belief this listing, including any accompanying statements, inventories, schedules, and other information, is true and complete. (If this is signed by an individual other than the taxpayer, he affirms that he is familiar with the extent and true value of all the taxpayer's property subject to taxation in this county and that his affirmation is based on all the information of which he has any knowledge.)

**Listing MUST be signed by the taxpayer, a principal officer of the taxpayer or a FULL-TIME employee of the taxpayer who has been officially empowered by the principal officer to list the property**

Sarah Harris (signature) 1/27/09
Signature Date
Sarah Harris

Preparer Other Than Taxpayer Date

Property Tax Supervisor (804) 527-4000
Title Telephone Number

Address

sarah_harris@circuitcity.com
Email Address

Fax Number

**Any individual who willfully makes and subscribes an abstract listing required by the Subchapter (of the Revenue Laws) which he does not believe to be true and correct as to every material matter shall be guilty of a Class 2 misdemeanor. (Punishable by imprisonment up to 60 days)**

**SCHEDULE C-1** LEASED PROPERTY TAXABLE TO THE LESSOR (FOR INFORMATIONAL PURPOSES ONLY)

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE | MONTHLY PAYMENT | LENGTH OF LEASE | ACCOUNT OR LEASE NUMBER | SELLING PRICE NEW |
|---|---|---|---|---|---|---|
| NC: Raleigh 1591 Beaver Creek Commons Dr. Apex NC27502 | | | | | | |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL KIT<br>123717IBM<br>Computer Equipment / CL | 07/01/2007 | 388.25 | 60 month | 07/01/2007Deal | 23,294.91 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL PERIPHERAL KIT<br>123825IBM<br>Computer Equipment / CL | 07/01/2007 | 187.45 | 60 month | 07/01/2007Deal | 11,247.17 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS DISPLAY MONITOR<br>125520IBM<br>Computer Equipment / CL | 07/01/2007 | 4.08 | 60 month | 07/01/2007Deal | 244.64 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SUREMARK PRINTER<br>125521IBM<br>Computer Equipment / CL | 07/01/2007 | 22.48 | 60 month | 07/01/2007Deal | 1,348.95 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SURE POS CLIENT<br>125522IBM<br>Computer Equipment / CL | 07/01/2007 | 38.96 | 60 month | 07/01/2007Deal | 2,337.44 |
| | | | | | TOTAL: | 38,473.11 |

**Name:** Circuit City Stores, Inc. Circuit City **Account:** **County:** Wake **Year:** 2009

**SCHEDULE G-1**

## ACQUISITION DETAIL

| Asset # / Lease # | Description / State Class/Owner Class | Date Acquired | Original Cost |
|---|---|---|---|
| 129792 | IN STORE NETWORKING<br>Computer Equipment / NW | 02/28/2008 | 685.58 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 685.58 |
| | | Computer Equipment Total: | 685.58 |
| 130989 | Candy Fixture<br>Office Furniture & Fixtures / RE | 07/31/2008 | 914.82 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 914.82 |
| | | Office Furniture & Fixtures Total: | 914.82 |
| | | TOTAL: | 1,600.40 |

# Disposal Summary by State Class and Acquisition Year
## Declaration of Property Owned and Used by Owner

Wake County Assessor - NC: Raleigh

Assessment Date: 01/01/2009

**Assessed - Personal Property**

| State Class | Year | Reported Cost | Current Value | Rendered Value | Assessor's Use |
|---|---|---|---|---|---|
| Office Furniture & Fixtures | 2007 | 33,867.10 | 27,093.68 | 27,094.00 | |
| | | **33,867.10** | **27,093.68** | **27,094.00** | |
| **Total** | | **33,867.10** | **27,093.68** | **27,094.00** | |

NC: Raleigh

Property Location: 1591 Beaver Creek Commons Dr.
Apex, NC 27502

Taxpayer's Address:
Circuit City Stores, Inc.
Attention: Tax Department
P.O. Box 42304
Richmond, VA 23242

# 2009

## COUNTY OF WAKE North Carolina BUSINESS PERSONAL PROPERTY LISTING

| FOR DEPARTMENT USE ONLY | ACCOUNT NUMBER | DATE | TWP | DISTRICT | CITY | PENALTY | VALUE |
|---|---|---|---|---|---|---|---|
| | 6488899 | | | | | | 567275 |

1 2 3 4 5 6 7

8 B D E F TOTAL

Business Legal Name or Individual's Name: Circuit City Stores, Inc.

Trade Name or DBA: Circuit City Stores, Inc.

Address: Attention: Tax Department, P.O. Box 42304

City: Richmond State: VA Zip: 23242

STANDARD INDUSTRIAL CLASSIFICATION CODE (SIC #)

NAICS CODE

DATE BUSINESS BEGAN IN THIS COUNTY 01/12/2007

DATE BUSINESS (FISCAL) YEAR ENDS 02/28/2008

FILL IN APPLICABLE CIRCLE: ○ PARTNERSHIP ○ SOLE PROPRIETORSHIP ○ UNINCORPORATED ASSOCIATION ● CORPORATION ○ OTHER (SPECIFY)

FILL IN APPLICABLE CIRCLE: BUSINESS CATEGORY: ● RETAIL ○ WHOLESALE ○ MANUFACTURING ○ SERVICE ○ LEASING/RENTAL ○ FARMING ○ OTHER (SPECIFY)

OTHER N.C COUNTIES WHERE PERSONAL PROPERTY IS LOCATED Various

CONTACT PERSON FOR AUDIT Scott Ash

ADDRESS & PHONE 9954 Mayland Drive, Richmond, VA (804) 527-4000

CONTACT PERSON FOR PAYMENT & PHONE Scott Ash, (804) 527-4000

PHYSICAL ADDRESS 3340 Cypress Plantation Trail, Raleigh, NC 27616

REAL ESTATE OWNED BY

NAME IN WHICH BUSINESS WAS LISTED LAST YEAR Circuit City Stores, Inc.

WHAT IS PRINCIPAL BUSINESS IN THIS COUNTY Commercial

IF OUT OF BUSINESS COMPLETE THIS SECTION

DATE CEASED

FILL IN APPLICABLE CIRCLE: ○ SOLD ○ CLOSED ○ BANKRUPT ○ OTHER

SOLD EQUIPMENT, FIXTURES, SUPPLIES TO

BUYER'S ADDRESS & PHONE

## SCHEDULE A — PERSONAL PROPERTY - SEE INSTRUCTIONS

### GROUP (1) MACHINERY & EQUIPMENT

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | 28,464 |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| 1994 | | | | |
| 1993 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 28,464 |

### GROUP (2) CONSTRUCTION IN PROGRESS

LIST TOTAL OF ALL PERSONAL PROPERTY EXPENDITURES IN CIP ACCOUNT ON JANUARY 1, BUT NOT INCLUDED ABOVE - ITEMIZE IN SCHEDULE G

TOTAL CIP: $ NONE

### GROUP (3) OFFICE FURNITURE & FIXTURES

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | 255 |
| 2007 | | | | 615,906 |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 616,161 |

### GROUP (4) COMPUTER EQUIPMENT

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | 722 |
| 2007 | | | | 57,323 |
| 2006 | | | | |
| 2005 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 58,045 |

**DO NOT REMIT THIS FORM TO NC DEPARTMENT OF REVENUE**

County addresses and additional schedules are available at: http://www.dor.state.nc.us/publications/property.html

Attn Assessor's Office, Wake County Assessor, P.O. Box 2331, Raleigh, NC 27602, Phone (919) 856-5400

Send to appropriate county tax office.

## SCHEDULE A - CONTINUED — PERSONAL PROPERTY - SEE INSTRUCTIONS

### GROUP (5) LEASEHOLD IMPROVEMENTS

| YEAR ACQUIRED | PRIOR YR COST | ADDITIONS | DELETIONS | CURR YR COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | 26,212 |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| 1996 | | | | |
| 1995 | | | | |
| PRIOR | | | | |
| TOTAL | | | | 26,212 |

### GROUP (6) EXPENSED ITEMS Capitalization Threshold

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| PRIOR | | | | |
| TOTAL | | | | |

### GROUP (7) SUPPLIES

| | COST |
|---|---|
| 1. OFFICE, MAINTENANCE, JANITORIAL, MEDICAL, DENTAL, BARBER AND BEAUTY SUPPLIES | 185 |
| 2. FUELS HELD FOR CONSUMPTION | |
| 3. REPLACEMENT PARTS AND SPARE PARTS | |
| 4. RESTAURANT AND HOTEL ITEMS SUCH AS LINENS, CLEANING SUPPLIES AND COOKWARE NOT LISTED ELSEWHERE IN SCHEDULE A | |
| 5. RENTAL ITEMS NOT SOLD IN THE NORMAL COURSE OF BUSINESS AND NOT LISTED ELSEWHERE IN SCHEDULE A | |
| 6. ALL OTHER MISCELLANEOUS SUPPLIES NOT LISTED ABOVE | |
| 7. TOTAL | 185 |

### GROUP (8) OTHER -TO BE USED WITH COUNTY APPROVAL

| YEAR ACQUIRED | PRIOR YR. COST | ADDITIONS | DELETIONS | CURR. YR. COST |
|---|---|---|---|---|
| 2008 | | | | |
| 2007 | | | | |
| 2006 | | | | |
| 2005 | | | | |
| 2004 | | | | |
| 2003 | | | | |
| 2002 | | | | |
| 2001 | | | | |
| 2000 | | | | |
| 1999 | | | | |
| 1998 | | | | |
| 1997 | | | | |
| PRIOR | | | | |
| TOTAL | | | | |

## SCHEDULE B — VEHICULAR EQUIPMENT & MOBILE HOMES OR MOBILE OFFICES

If you answer yes to any of questions 1-6 below, you must attach the appropriate Schedule which corresponds with the equipment type listed below. If you answer yes to any of questions 1, 2, or 3 attach Schedule B-1, attach Schedule B-2 for watercraft, attach Schedule B-3 for Mobile Homes or Mobile Offices, and attach Schedule B-4 for aircraft. Indicate number of short-term rental vehicles owned for question 7.

1. Does your business own any Unregistered Motor Vehicles? ○ YES ● NO
2. *Does your business own any Multi-year or permanently registered Trailers?* ○ YES ● NO — **If yes attach schedule B-1**
3. Does your business own any special bodies on vehicles? ○ YES ● NO
4. Does your business own any watercraft or engines for watercraft? ○ YES ● NO — **If yes attach schedule B-2**
5. Does your business own any Mobile Homes or Mobile Offices? ○ YES ● NO — **If yes attach schedule B-3**
6. Does your business own any Aircraft? ○ YES ● NO — **If yes attach schedule B-4**
7. Does your business own any vehicles held for short-term rental? ○ YES ● NO — Number

## SCHEDULE C — LEASED PROPERTY OR OTHER PROPERTY IN YOUR POSSESSION THAT IS OWNED BY OTHERS

N.C.G.S 105-315 AND 105-316 requires every person having custody of taxable tangible personal property that has been entrusted to him by another for *any business purpose to furnish a separate list containing name, address and description of this property. If you answer yes to one of the following three* questions or are otherwise required to supply this list, you must return the list or separate Schedule C-1 by January 15.

1. Does your business hold any Leased Property, owned by another party (are you a lessee)? ● YES ○ NO
2. Do you have any property used by your business, or in your possession that is owned by others? ○ YES ○ NO
3. *Do you operate a mobile home park, campground, marina, aircraft storage facility or similar business?* ○ YES ○ NO

## SCHEDULE D — SEPARATELY SCHEDULED PROPERTY

1. Does your business own any artwork, displays, statues, or other personal property that is separately scheduled for insurance purposes? YES NO

*Please describe the items and estimated value of items if applicable.*

## SCHEDULE E — FARM EQUIPMENT

*Does your business own any tractors and/or other farm equipment?* YES ● NO *Cost on schedule A*

If so, list and attach separate schedule E-1. If listed by cost on Schedule A, indicate above but still include information on separate schedule E-1.

## SCHEDULE F — INTANGIBLE PERSONAL PROPERTY

Do you lease or rent real property from exempt owners, such as a church, local, state or federal government, an airport authority, university, or other exempt owner? YES ● NO If yes, include lease information below. Attach additional schedule if necesary

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE AND LEASE TERM | MONTHLY PAYMENT | ACCT # |
|---|---|---|---|---|
| None | | | | |
| | | | | |

## SCHEDULE G — ACQUISITIONS AND DISPOSALS DETAIL

Acquisitions and disposals detail of machinery, equipment, furniture and fixtures and computer equipment, and leasehold improvements in the prior year. If there is not enough room below, attach separate Schedule G-1

| ACQUISITIONS - ITEMIZE IN DETAIL | 100% ORIGINAL COST | DISPOSALS - ITEMIZE IN DETAIL | YEAR ACQUIRED | 100% ORIGINAL COST |
|---|---|---|---|---|
| See Attached | 977 | See Attached | | 42,348 |
| | | | | |
| | | | | |
| | | | | |

## SCHEDULE H — REAL ESTATE IMPROVEMENTS

During the past calendar year, did your business make improvements and/or other additions to real property, owned by your business? If yes, attach separate schedule H-1 with information on such improvements. YES ● NO

## SCHEDULE I — BILLBOARDS - OUTDOOR ADVERTISING STRUCTURES

Does your business own any billboards - outdoor advertising structures?
If yes, attach separate Schedule I-1 with requested information. YES NO

## SCHEDULE J — LEASED EQUIPMENT

Does your business lease equipment to others?
If yes, attach separate Schedule J-1 with requested information. YES ● NO

## AFFIRMATION

**LISTING FORM MUST BE SIGNED BY A LEGALLY AUTHORIZED PERSON - SEE INSTRUCTIONS**

Under penalties prescribed by law, I hereby affirm that to the best of my knowledge and belief this listing, including any accompanying statements, inventories, schedules, and other information, is true and complete. (If this is signed by an individual other than the taxpayer, he affirms that he is familiar with the extent and true value of all the taxpayer's property subject to taxation in this county and that his affirmation is based on all the information of which he has any knowledge.)

***Listing MUST be signed by the taxpayer, a principal officer of the taxpayer or a FULL-TIME employee of the taxpayer who has been officially empowered by the principal officer to list the property***

Sarah Harris 1/27/09
Signature Date

Preparer Other Than Taxpayer Date

Sarah Harris
Property Tax Supervisor (804) 527-4000
Title Telephone Number

Address

sarah_harris@circuitcity.com
Email Address

Fax Number

**Any individual who willfully makes and subscribes an abstract listing required by the Subchapter (of the Revenue Laws) which he does not believe to be true and correct as to every material matter shall be guilty of a Class 2 misdemeanor. (Punishable by imprisonment up to 60 days)**

**SCHEDULE C-1** LEASED PROPERTY TAXABLE TO THE LESSOR (FOR INFORMATIONAL PURPOSES ONLY)

| NAME AND ADDRESS OF OWNER | DESCRIPTION OF PROPERTY | DATE OF LEASE | MONTHLY PAYMENT | LENGTH OF LEASE | ACCOUNT OR LEASE NUMBER | SELLING PRICE NEW |
|---|---|---|---|---|---|---|
| NC: North Releigh 3340 Cypress Plantation Trail Raleigh NC27616 | | | | | | |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL KIT<br>123711IBM<br>Computer Equipment / CL | 07/01/2007 | 410.74 | 60 month | 07/01/2007Deal | 24,644.31 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS TERMINAL PERIPHERAL KIT<br>123819IBM<br>Computer Equipment / CL | 07/01/2007 | 201 39 | 60 month | 07/01/2007Deal | 12,083.67 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS DISPLAY MONITOR<br>125412IBM<br>Computer Equipment / CL | 07/01/2007 | 8.15 | 60 month | 07/01/2007Deal | 489.28 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SUREMARK PRINTER<br>125413IBM<br>Computer Equipment / CL | 07/01/2007 | 22.48 | 60 month | 07/01/2007Deal | 1,348.95 |
| IBM<br>PO Box 12195, Research Triangle Park, NC 27709 | RPOS SURE POS CLIENT<br>125414IBM<br>Computer Equipment / CL | 07/01/2007 | 38.96 | 60 month | 07/01/2007Deal | 2,337.44 |
| | | | | | TOTAL: | 40,903.65 |

**Name: Circuit City Stores, Inc. Circuit City** **Account:** **County: Wake** **Year: 2009**

**SCHEDULE G-1**

**ACQUISITION DETAIL**

| Asset # / Lease # | Description / State Class/Owner Class | Date Acquired | Original Cost |
|---|---|---|---|
| 129752 | IN STORE NETWORKING<br>Computer Equipment / NW | 02/28/2008 | 722.10 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 722.10 |
| | | Computer Equipment Total: | 722.10 |
| 130976 | Candy Fixture<br>*Office Furniture & Fixtures / RE* | 07/31/2008 | 255.14 |
| Notes: New Acquisition | | | |
| | | 2008 Total: | 255.14 |
| | | Office Furniture & Fixtures Total: | 255.14 |
| | | TOTAL: | 977.24 |

# Disposal Summary by State Class and Acquisition Year
## Declaration of Property Owned and Used by Owner

Wake County Assessor - NC: North Releigh

Assessment Date: 01/01/2009

**Assessed - Personal Property**

| State Class | Year | Reported Cost | Current Value | Rendered Value | Assessor's Use |
|---|---|---|---|---|---|
| Office Furniture & Fixtures | 2007 | 33,433.87 | 26,747.10 | 26,747.00 | |
| | | **33,433.87** | **26,747.10** | **26,747.00** | |
| **Total** | | **33,433.87** | **26,747.10** | **26,747.00** | |

NC: North Releigh
Property Location: 3340 Cypress Plantation Trail
Raleigh, NC 27616

Taxpayer's Address:
Circuit City Stores, Inc.
Attention: Tax Department
P.O. Box 42304
Richmond, VA 23242

# CIRCUIT CITY STORES, INC
# PROPERTY TAX DEPARTMENT

**DATE:**    **01/22/2009**
**TO:**       **THE COUNTY ASSESSOR**
**CC:**       **FILE**
**FROM:**   **LESLIE SPRINKLE**
**RE:**       **BUSINESS PROPERTY TAX RETURNS**

Enclosed please find the 2009 Business Property Tax Statement for the
Circuit City store located in your taxing jurisdiction.

Please send a completed copy of the 2009 Business Property Statement
showing all assessors' calculations, including factors, extensions and full
historical value for the location.

If you have any questions, please contact me at (804)486-3984 or
leslie_sprinkle@circuitcity.com.  You can also contact Sarah Harris at (804)
486-2081 or sarah_harris@circuitcity.com.

**EXHIBIT**
B

United States Bankruptcy Court
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**ADMINISTRATIVE PROOF OF CLAIM**

Name of Debtor
CIRCUIT CITY STORES, INC

Bankruptcy Case No.
08-035653

## A. CREDITOR INFORMATION

*(The creditor is the person or entity to whom the debtor owes money or property)*

Name and Address of Creditor

Wake County Revenue Department
Post Office Box 2331
Raleigh, North Carolina 27602
(919) 856-5400

☐ Check box if you never received any notice from the bankruptcy court in this case.

☐ Check box if this address differs from the address on the envelope sent to you by the bankruptcy court.

☐ Check box and attach copy of assignment if claim has *been assigned to you.*

COPY

Number by which creditor identifies debtor:
**6488899, 6478028, 6149751, 5223495**

Check here if this claim ☐ replaces ☐ amends a previously filed claim dated: ____________ ☐ supplements

## B. CLAIM INFORMATION

1. BASIS FOR CLAIM:
   - ☐ Goods purchased
   - ☐ Services performed
   - ☐ Monies loaned
   - ☐ Other forms of contract (identify)
   - ☐ Personal injury/Wrongful death/Property damage
   - ☒ Other (Describe briefly) **Wake County Personal Property Taxes**

☐ Wages, Salaries and Commissions (Fill out below)
Your social security number ____________
Unpaid services performed from ____________ to ____________
Nature of services (Describe briefly)

2. DATE DEBT WAS INCURRED: 1/09

3. CLASSIFICATION OF CLAIM: Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured non priority, (2) Priority, (3) Secured. It is possible for a claim to be partly in one category and partly in another - such as wage claim which may be a priority claim for the first $2,000.00 and an unsecured nonpriority for the balance. Classify the nature of the claim by CHECKING THE APPROPRIATE BOX OR BOXES which you believe best describes the claim. STATE THE AMOUNT OF THE CLAIM.

☐ UNSECURED NON PRIORITY CLAIM $ ____________
For the purposes of this form, a claim is unsecured if there is no collateral, or to the extent the value of collateral is less than the amount of the debt.

☐ SECURED CLAIM $ ____________
Attach evidence of perfection of security
*Brief Description of Collateral:*
☐ Real Estate ☐ Motor Vehicle ☐ Other
**REAL ESTATE LIEN GRANTED BY VIRTUE OF N.C.G.S. 105-355**

☒ PRIORITY CLAIM $ **14,336.97**
Specify the priority of the claim by checking the appropriate box(es)
- ☐ Wages salaries or commissions (up to $2,000.00, earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier) -- 11 U.S.C. §507(A)(3)
- ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)
- ☐ Up to $900 of deposits toward purchase, lease, or rental of property or *services for personal, family or household use - 11 U.S.C. §507(a)(7)*
- ☒ Taxes or penalties of governmental units - 11 U.S.C. §507(a)(7)
- ☐ Other specify:

| 4. TOTAL AMOUNT OF CLAIM: | | + | | + | **14,336.97** | = | **$14,336.97** |
|---|---|---|---|---|---|---|---|
| | (Unsecured) | | (Secured) | | (Priority) | | (Total) |

5. Attach copies of documents in support of this claim, such as purchase orders, invoices, itemized statements of running accounts, contracts, court judgments or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.
6. This form should not be used to make a claim for expenses incurred after the filing of the bankruptcy petition. Such expenses may be paid only upon proper application and notice pursuant to 11 U.S.C. §503.
7. CREDITS AND SETOFFS: Attach an itemization of all amounts and dates of payments which have been credited against the debt. Set forth any setoff or counterclaim which the debtor may have against your claim.
8. To receive an acknowledgment of the receipt of your claim, enclose a stamped, self-addressed envelope and a copy of your claim.

THIS SPACE IF FOR COURT USE ONLY

RECEIVED
JUN 26 2009
KURTZMANCARSONCONSULTANTS

## C. CERTIFICATION

The undersigned certifies under penalty of perjury that the debtor named above is indebted to the claimant in the amount shown, that there is no security for the debt other than that stated above or in an attachment to this form, that no unmatured interest is included, and that the undersigned is authorized to make this claim.

Date
June 17, 2009

Sign and Print the Name and Title, if any, of the Creditor or Other Person Authorized to File this Claim (attach copy of power of attorney, if any)

Ken Hepler
Wake County Revenue Collection's Supervisor

*Penalty for Presenting Fraudulent Claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. Title 18, U.S.C. §152 & §3623.





WAKE
COUNTY
NORTH CAROLINA
Revenue
Department

JUN 2009
RECEIVED
Wake County
Revenue Dept.

TEL 919 856 5400
FAX 919 856 7128
**Property Assessments & Collections**
One Bank of America Plaza
421 Fayetteville Street • Suite 200
P.O. Box 2331 • Raleigh, NC 27602
www.wakegov.com

**Prepayments Details** *Created:* 12/07/2008 *Updated:* 03/16/2009 *Updated By:* ECALLAH

Account Num: 0006488899 Tax Year: 2009 Year For: 2009 Billing Type: Regular

Owner Name 1: CIRCUIT CITY STORES INC

**This receipt represents a pre-payment based on Estimated Tax Rate and/or value for this account.The actual amount owed will not be known until Tax Bills are printed**

**Note : All the amounts are in Dollars**

Billing Information

| | | | | |
|---|---|---|---|---|
| **Real Value** | : | $0.00 | **Acres** | : |
| **Deferred Value** | : | $0.00 | **REID** | : 0038344 |
| **Use Value** | : | $0.00 | **PIN** | : 1727.14 32 7928 000 |
| **Total Personal Value** | : | $567,275.00 | **Description** | : BUSINESS PROPERTY |
| **Personal+Use Value** | : | $567,275.00 | **Physical Situs** | : 3340 CYPRESS PLANTATION TRL RALEIGH NC 27616 -5179 |
| **Exclusion Value** | : | $0.00 | | |
| **Total** | : | $567,275.00 | | |

**CITY**

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| City Tax | RAL | 0.3735 | 2,118.77 | 0.00 |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Vehicle Fee (0) | | | | |
| Sub Total | | | 2,118.77 | 0.00 |

**Total City Tax and Fees** $2,118.77

**COUNTY**

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| County Tax | CTY | 0.534 | 3,029.25 | 0.00 |
| Fire Dist | | | | |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Recycle Fee (0) | | | | |
| Sub Total | | | 3,029.25 | 0.00 |

**Total County Tax and Fees** $3,029.25

**Total City + County Tax and Fees** $5,148.02



Revenue Department

TEL 919 856 5400
FAX 919 856 7128
Property Assessments & Collections
One Bank of America Plaza
421 Fayetteville Street • Suite 200
P.O. Box 2331 • Raleigh, NC 27602
www.wakegov.com

**Prepayments Details** *Created:* 12/07/2008 *Updated:* 03/18/2009 *Updated By:* DPC_TPV

Account Num: 0006478028 Tax Year: 2009 Year For: 2009 Billing Type: Regular

Owner Name 1: CIRCUIT CITY STORES INC

**This receipt represents a pre-payment based on Estimated Tax Rate and/or value for this account.The actual amount owed will not be known until Tax Bills are printed**

Note : All the amounts are in Dollars

Billing Information

| | | | | |
|---|---|---|---|---|
| **Real Value** | : $0.00 | **Acres** | : |
| **Deferred Value** | : $0.00 | **REID** | : 0358979 |
| **Use Value** | : $0.00 | **PIN** | : 0732.01 36 6127 000 |
| **Total Personal Value** | : $425,000.00 | **Description** | : BUSINESS PROPERTY |
| **Personal+Use Value** | : $425,000.00 | **Physical Situs** | : 1591 BEAVER CREEK COMMONS DR APEX NC 27502 -3997 |
| **Exclusion Value** | : $0.00 | | |
| **Total** | : $425,000.00 | | |

CITY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| City Tax | APE | 0.34 | 1,445.00 | 0.00 |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Vehicle Fee (0) | | | | |
| Sub Total | | | 1,445.00 | 0.00 |

**Total City Tax and Fees** $1,445.00

COUNTY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| County Tax | CTY | 0.534 | 2,269.50 | 0.00 |
| Fire Dist | | | | |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Recycle Fee (0) | | | | |
| Sub Total | | | 2,269.50 | 0.00 |

**Total County Tax and Fees** $2,269.50

**Total City + County Tax and Fees** $3,714.50

WAKE COUNTY NORTH CAROLINA

Revenue Department

TEL 919 856 5400
FAX 919 856 7128

**Property Assessments & Collections**
One Bank of America Plaza
421 Fayetteville Street • Suite 200
P.O. Box 2331 • Raleigh, NC 27602
www.wakegov.com

**Prepayments Details** *Created:* 12/07/2008 *Updated:* 03/18/2009 *Updated By:* DPC_TPV

Account Num: 0006149751 Tax Year: 2009 Year For: 2009 Billing Type: Regular

Owner Name 1: CIRCUIT CITY STORES INC

**This receipt represents a pre-payment based on Estimated Tax Rate and/or value for this account.The actual amount owed will not be known until Tax Bills are printed**

Note : All the amounts are in Dollars

Billing Information

| | | | | | |
|---|---|---|---|---|---|
| **Real Value** | : | $0.00 | **Acres** | : | |
| **Deferred Value** | : | $0.00 | **REID** | : | 0245572 |
| **Use Value** | : | $0.00 | **PIN** | : | 0773.19 51 8254 000 |
| **Total Personal Value** | : | $283,745.00 | **Description** | : | BUSINESS PROPERTY |
| **Personal+Use Value** | : | $283,745.00 | **Physical Situs** | : | 1401 PINEY PLAINS RD CARY NC 27518 -6849 |
| **Exclusion Value** | : | $0.00 | | | |
| **Total** | : | $283,745.00 | | | |

CITY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| City Tax | CAR | 0.33 | 936.36 | 0.00 |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Vehicle Fee (0) | | | | |
| Sub Total | | | 936.36 | 0.00 |

**Total City Tax and Fees** $936.36

COUNTY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| County Tax | CTY | 0.534 | 1,515.20 | 0.00 |
| Fire Dist | | | | |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Recycle Fee (0) | | | | |
| Sub Total | | | 1,515.20 | 0.00 |

**Total County Tax and Fees** $1,515.20
**Total City + County Tax and Fees** $2,451.56



Revenue Department

TEL 919 856 5400
FAX 919 856 7128

**Property Assessments & Collections**
One Bank of America Plaza
421 Fayetteville Street • Suite 200
P.O. Box 2331 • Raleigh, NC 27602
www.wakegov.com

**Prepayments Details** *Created:* 12/07/2008 *Updated:* 03/18/2009 *Updated By:* DPC_TPV

Account Num: 0005223495 Tax Year: 2009 Year For: 2009 Billing Type: Regular

Owner Name 1: CIRCUIT CITY STORES INC

This receipt represents a pre-payment based on Estimated Tax Rate and/or value for this account.The actual amount owed will not be known until Tax Bills are printed

Note : All the amounts are in Dollars

Billing Information

| | | | | |
|---|---|---|---|---|
| **Real Value** | : $0.00 | **Acres** | : | |
| **Deferred Value** | : $0.00 | **REID** | : 0008088 | |
| **Use Value** | : $0.00 | **PIN** | : 0796.14 42 5565 000 | |
| **Total Personal Value** | : $333,101.00 | **Description** | : BUSINESS PROPERTY | |
| **Personal+Use Value** | : $333,101.00 | **Physical Situs** | : 4601 CREEDMOOR RD RALEIGH NC 27612 -5801 | |
| **Exclusion Value** | : $0.00 | | | |
| **Total** | : $333,101.00 | | | |

CITY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| City Tax | RAL | 0.3735 | 1,244.13 | 0.00 |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Vehicle Fee (0) | | | | |
| Sub Total | | | 1,244.13 | 0.00 |

Total City Tax and Fees $1,244.13

COUNTY

| Rate Type | Name | Est Rate | Est Amt | Est Late List |
|---|---|---|---|---|
| County Tax | CTY | 0.534 | 1,778.76 | 0.00 |
| Fire Dist | | | | |
| Spec Dist 1 | | | | |
| Spec Dist 2 | | | | |
| Recycle Fee (0) | | | | |
| Sub Total | | | 1,778.76 | 0.00 |

Total County Tax and Fees $1,778.76
Total City + County Tax and Fees $3,022.89

EXHIBIT C

ERNST & YOUNG

Ernst & Young LLP
One James Center
Suite 1000
901 East Cary Street
Richmond, Virginia 23219-4065

Main tel: +1 804 344 6000
www.ey.com

July 30, 2009

REC 8-4-09 KWM

Wake County Assessor
Attn: Assessor's Office
P.O. Box 2331
Raleigh, NC 27602

REC'D 8088

Notice of Appeal
Circuit City, Inc. and all legal subsidiaries
Store # 840; Property Address: 4601 Creedmoor Rd.

5223495

8088

Dear Sirs:

On behalf of our client, Circuit City Inc., we respectively appeal the assessment of the above property. As a result of their protection under the current federal bankruptcy proceedings, we must protect their administrative appeal rights and are using this letter as a means exercising such protection.

Further information will be provided at a later date in support of our opinion of value.

We may be reached at (704) 331-2004 in case you have further concerns or questions.

Very truly yours,

Charlie

Charles Long
Authorized Agent

Copy to: Jeff McDonald, Circuit City
Jeff Knopke, Circuit City



EXHIBIT
D

Revenue Department

TEL 919 856 5400
FAX 919 856 7128

Property Assessments & Collections
One Bank of America Plaza
421 Fayetteville Street • Suite 200
P.O. Box 2331 • Raleigh, NC 27602
www.wakegov.com

September 14, 2009

Charles Long – Authorized Agent for Circuit City Inc
Ernst & Young
901 East Cary Street, Ste. 1000
Richmond, VA 23219-4065

Re: Assessor Conference concerning appeal of value on Business Property accounts
Accounts: 5223495, 6149751, 6478028, & 6488899

Dear Mr. Long:

The Assessor Conference was held on September 10, 2009 at 10:00 A.M. There was no one in attendance from your office or from Circuit City Inc. Since notice had been sent and you were aware of this conference the meeting proceeded. This informal conference to hear your case was held with me, Gwendolyn Nicholson, Appraisal/Collection Manager and Daniel McCarty, Business Auditor in attendance.

Very little information was provided for consideration. The original listing forms for each account and subsequent letters sent appealing values were the only documents supplied. Mr. McCarty noted that the company is in Chapter 7 bankruptcy at this time. However on January 1, 2009 Circuit City, Inc stores in this county were open and conducting business. In addition the corporation publicly presented itself as an ongoing business that would either be purchased or would reorganize to ensure the continuation of the company. As such my conclusion is as follows:

Per N.C.G.S.§105-285(b) "...the value...shall be determined annually as of January 1" therefore facts occurring after this date cannot reduce or increase the value. On January 1, 2009 the continuation of the business was expected by Circuit City Stores, Inc., albeit the company was in financial trouble. Considering this fact and noting that no additional information was presented, I find the value rendered on all referenced accounts should remain as assessed.

Per N.C.G.S.§105-317 you have 30 days in which to appeal this finding by sending notice of appeal to the Wake County Tax Assessor. This subsequent appeal will be heard by the Wake County Tax Committee on behalf of the Wake County Board of Commissioners. If you choose to appeal you will be notified of the meeting date and time set for you to present any information in support of your appeal.

Sincerely,

Gwendolyn Nicholson
Appraisal / Collections Manager
Wake County Revenue Department
gnicholson@co.wake.nc.us

c.c. Circuit City Stores, Inc, POB 42304, Richmond, VA 23242



EXHIBIT
E

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al, | ) | Case No. 08-35653 |
| | ) | |
| | ) | Jointly Administrated |
| Debtors. | ) | |

AFFIDAVIT OF GWENDOLYN NICHOLSON

Gwendolyn Nicholson, having been duly sworn, does depose and say as follows:

1. I am the Appraisal/Collection Manager of the Wake County Revenue Department. I am more than 18 years of age and am under no disability.

2. On or about August 1, the Revenue Department received Circuit City's notice of appeal of the value of their personal property for 2009, Exhibit C. The appeal letter sent by Mr. Long stated that further information in support of Circuit city's opinion of value would be provided at a later date.

3. In response to Circuit City's appeal letter, Mr. Daniel McCarty, Business Auditor, contacted via phone and email Mr. Charles Long, the taxpayer's authorized representative, to schedule a conference with Mr. Long, Mr. McCarty and me to review the personal property assessment on September 11 at 10:00 am. The email was not returned undelivered. No representative of Circuit City attended the conference and the taxpayer did not provide any further evidence of value.

4. The Wake County Revenue Department has received no additional evidence of value from Circuit City.

Further the affiant saith not.

Gwendolyn Nicholson

Sworn to and subscribed before me this day the 18th day of September, 2009.

Joan O Freeman
Notary Public:

My Commission Expires: 11-19-12

Joan O. Freeman
Notary Public
Wake County, NC

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al, | ) | Case No. 08-35653 |
| | ) | |
| | ) | Jointly Administrated |
| Debtors. | ) | |

AFFIDAVIT OF DANIEL J. MCCARTY

Daniel J. McCarty, having been duly sworn, does depose and say as follows:

1. I am a Business Auditor of the Wake County Revenue Department. I am more than 18 years of age and am under no disability.

2. On or about August 1, the Revenue Department received Circuit City's notice of appeal of the value of their personal property for 2009, Exhibit C. The appeal letter sent by Mr. Long stated that further information in support of Circuit city's opinion of value would e provided at a later date.

3. In response to Circuit City's appeal letter, I contacted Mr. Charles Long, the taxpayer's authorized representative, by phone and email scheduling an Assessor conference with him to review the personal property assessment on September 11 at 10:00 am. The email was not returned undelivered. No representative of Circuit City attended the conference and the taxpayer did not provide any further evidence of value.

4. The Wake County Revenue Department has received no additional evidence of value from Circuit City.

Further the affiant saith not.

Daniel J. McCarty

Sworn to and subscribed before me this day the 18th day of September 2009.

Notary Public:

My Commission Expires: 11-19-12

Joan O. Freeman
Notary Public
Wake County, NC



**Wake County, Raleigh, NC**
**Daniel J McCarty** to: charles.long 08/20/2009 08:48 AM

Good Morning Charlie:

Following up on our phone conversation of a few minutes ago, I have scheduled the Assessor Conference to hear your appeal of value for the Business Property of Circuit City, Inc. I have scheduled the hearing for Friday September 11, 2009 at 10:00 AM to be held in our offices at 421 Fayetteville St.,Suite 200, Raleigh, NC. At this time you have stated you do not plan to make a personal appearance or a phone conference appearance, you do plan to forward additional information for the Assessor to consider.

Please contact me if you have any questions.

Thanks,
Dan

Daniel J. McCarty, CPA
Business Auditor
Wake County Revenue Department
421 Fayetteville St., Suite 200, Raleigh, NC 27601
P.O. Box 2331, Raleigh, NC 27602-2331
(919) 856-7098 (919) 743-4712 fax

**C**

Court of Appeals of North Carolina.
In the Matter of the Appeal of WESTMORELAND-LG & E PARTNERS NORTH CAROLINA from the Decision of the Property Tax Commission Halifax County Board of No. 03 PTC
1 Commissioners for the Tax Years 1996-2001.
**No. COA04-1181.**

Dec. 6, 2005.

**Background:** Taxpayer sought judicial review of decision of state Property Tax Commission confirming ad valorem tax valuation by county of taxpayer's business personal property.

**Holdings:** The Court of Appeals, Calabria, J., held that:
(1) cost of water treatment plant was includible in valuation;
(2) taxpayer was not entitled to functional obsolescence deduction;
(3) taxpayer was not entitled to economic obsolescence deduction; and
(4) taxpayer failed to rebut the presumption that assessment was correct.
Affirmed.

West Headnotes

**[1] Appeal and Error 893(1)**
30k893(1) Most Cited Cases
Appellate courts review all questions of law de novo.

**[2] Taxation 2699(7)**
371k2699(7) Most Cited Cases
Appellate courts apply the "whole record" test where the evidence is conflicting to determine if the Property Tax Commission's decision has any rational basis.

**[3] Taxation 2699(5)**
371k2699(5) Most Cited Cases
Under de novo review for decisions of the Property Tax Commission, the Court of Appeals considers the matter anew and freely substitutes its own judgment for that of the commission.

**[4] Taxation 2699(7)**
371k2699(7) Most Cited Cases
In reviewing a decision of the Property Tax Commission under the "whole record test," the appellate court may not replace the commission's judgment with its own judgment even if there are two reasonably conflicting views; rather, it merely determines whether an administrative decision has a rational basis in evidence.

**[5] Taxation 2699(7)**
371k2699(7) Most Cited Cases
In reviewing a decision of the Property Tax Commission under the "whole record test," the appellate court evaluates whether the commission's decision is supported by substantial evidence, and, if it is, the decision cannot be overturned.

**[6] Administrative Law and Procedure 791**
15Ak791 Most Cited Cases
For purposes of appellate review of an administrative agency decision, "substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

**[7] Taxation 2722**
371k2722 Most Cited Cases
Ad valorem tax assessments are presumed correct.

**[8] Taxation 2722**
371k2722 Most Cited Cases
In order to rebut the presumption that ad valorem tax assessments are correct, the taxpayer must present competent, material, and substantial evidence that tends to show (1) either the county tax supervisor used an arbitrary or illegal method of valuation, and (2) the assessment substantially exceeded the true value in money of the property.

**[9] Taxation 2722**
371k2722 Most Cited Cases

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

For purposes of rebutting the presumption that ad valorem tax assessments are correct, it is not enough for the taxpayer to merely show that the method used by the county tax supervisor was wrong; the taxpayer must additionally show that the result of the valuation is substantially greater than the true value in money of the property assessed.

**[10] Taxation ⚷2168**
371k2168 Most Cited Cases

**[10] Taxation ⚷2176**
371k2176 Most Cited Cases
Cost of water treatment plant was a development cost for coal-fired generating plants includible in ad valorem business personal property tax assessment, even though taxpayer had deeded treatment plant to city; construction of water treatment plant was required to make boilers and other machinery of generating plants operational, taxpayer listed cost of treatment plant as an asset on its books and capitalized the cost on its federal tax return, and failure to build the treatment plant would have restricted generating plants' capacity. West's N.C.G.S.A. § 105-283.

**[11] Taxation ⚷2516**
371k2516 Most Cited Cases
Taxpayer was not entitled to deduction in the valuation of its two coal-fired generating plants due to functional obsolescence under the cost approach in assessing the taxpayer's personal property for ad valorem tax purposes, even though taxpayer's expert asserted that it would have cost $20-30 million less to have built a single larger plant, where taxpayer failed to produce evidence of overcapacity, inadequacy or changes in state of the art, or poor design, plants were profitable and had outstanding performance records, and expert's cost evaluation was speculation that failed to compare cost of one plant compared to cost of two smaller plants. West's N.C.G.S.A. § 105-283.

**[12] Taxation ⚷2516**
371k2516 Most Cited Cases
Part of the cost approach in valuing personal property for ad valorem tax purposes is deducting for depreciation, which is a loss of utility and, hence, value from any cause; it is the difference between cost new on the date of appraisal and present market value.

**[13] Taxation ⚷2516**
371k2516 Most Cited Cases
For purposes of assessment of personal property for ad valorem tax under the cost approach, depreciation may be caused by deterioration, which is a physical impairment, such as structural defects, or by obsolescence, which is an impairment of desirability or usefulness brought about by changes in design standards, functional obsolescence, or factors external to the property, economic obsolescence.

**[14] Taxation ⚷2516**
371k2516 Most Cited Cases

**[14] Taxation ⚷2517**
371k2517 Most Cited Cases
Taxpayer was not entitled to deduction for economic obsolescence in assessing the value of it coal-fired electricity generating plants under the income approach for ad valorem tax purposes; income was determined by taxpayer's projected income under long-term supply contracts public utility, rather than the lower income it would receive selling electricity on the spot market. West's N.C.G.S.A. § 105-283.

**[15] Taxation ⚷2722**
371k2722 Most Cited Cases
Taxpayer failed to present material, competent, and substantial evidence that valuation of its coal-fired generating plants for purposes of ad valorem personal property tax substantially exceeded the value of the property, as required to rebut the presumption the assessment was correct and shift the burden of proof to county tax assessor. West's N.C.G.S.A. § 105-345.2(b).

**126 Appeal by defendant from decision entered 26 May 2004 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 20

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

April 2005.

Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker and Rebecca B. Joyner, Raleigh, for plaintiff-appellee.

Maupin Taylor, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman and Kevin W. Benedict and Hatch, Little & Bunn, L.L.P., by Harold W. Berry, Jr., and A. Bartlett White, Raleigh, for defendant-appellant.

CALABRIA, Judge.

***693** Westmoreland-LG & E Partners ("taxpayer") appeals the final decision of the North Carolina Property Tax Commission ("Commission") confirming the *ad valorem* tax valuation by Halifax County ("appellee") of taxpayer's business personal property ("personal property"). We affirm.

This appeal concerns the tax value of the Roanoke Valley Energy Facility ("ROVA"), which consists of two coal-fired generating facilities located in the Weldon Township of Halifax County, North Carolina. The first facility, ROVA I, has the capacity to generate 165 net megawatts of electricity from pulverized coal. It commenced commercial operations on 29 May 1994. The second facility, ROVA II, has the capacity to generate 44 net megawatts of electricity from pulverized coal, and it commenced commercial operation on 1 June 1995.

ROVA I and II operate as wholesale generators and sell their electricity to Virginia Power and Light Company ("VEPCO") pursuant to two separate Power Purchasing and Operating Agreements ("PPAs") entered into in January of 1989 and June of 1990. Under the PPAs, taxpayer agreed to build and operate the subject facilities and to supply VEPCO with electricity at a set price for twenty-five years from the respective commercial operations date, with possible extensions on each PPA of up to five years.

On 10 May 2001, the Halifax County Assessor implemented an audit program to verify the accuracy of personal property listings that were filed by businesses for the 1996 through 2001 tax years. An audit of taxpayer's records for those years showed a variance between the capitalized cost of its personal property assets reported in taxpayer's accounting records and the cost reported by taxpayer on its personal property listings that were filed with the county. Specifically, the discovery audit revealed taxpayer under-reported its personal property assets by approximately ****127** $75 million each year. Based upon the audit, the Tax Administrator determined taxpayer did not properly list its ***694** business personal property and issued a discovery and appraisal as directed by N.C. Gen.Stat. § 105-312 (2003).

Appellee retained independent appraisers to assess the true value of taxpayer's facilities using both the cost approach and income approach methodology of valuation. Applying the cost approach method, the appraisers used the Cost Index and Depreciation Schedules promulgated by the North Carolina Department of Revenue to assess taxpayer's property. They considered, but made no adjustments for, functional or economic obsolescence. Under the income approach, the appraisers used the income projections based on the income earned under the PPAs, instead of the spot market prices for electric power for the years in question. Using these two approaches, the appraisers determined that the total true value of taxpayer's personal property was $217,924,791 as of 1 January 1996; $211,660,877 as of 1 January 1997; $200,670,919 as of 1 January 1998; $192,397,397 as of 1 January 1999; $185,008,704 as of 1 January 2000; and $176,580,042 as of 1 January 2001.

Subsequently, taxpayer hired Lawrence VanKirk ("VanKirk") and Glen Hartford ("Hartford") of Valuation Research to perform an appraisal of the value of taxpayer's personal property without referring to appellee's appraisal report. VanKirk and Hartford also used the cost and income approaches. However, under the income approach, VanKirk projected taxpayer's revenue for the subject prop-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

erty as consistently lower than the price actually received by taxpayer under the PPAs because VanKirk's revenue valuations were based on the spot market price for electric power for the 1996-2001 tax years. As a result, Hartford, analyzing the property's value under the cost approach, determined that there were insufficient earnings to support the calculated asset value of the property, and concluded that the property was subject to economic obsolescence. Additionally, Hartford found the property was subject to functional obsolescence because taxpayer needed to construct two electric generating plants capable of producing 209 megawatts at the same location rather than one plant capable of producing 209 megawatts. Based on this appraisal, Hartford and VanKirk concluded that the total true value of taxpayer's property was: $124,400,000 as of 1 January 1996; $123,000,000 as of 1 January 1997; $117,000,000 as of 1 January 1998; $116,000,000 as of 1 January 1999; $108,000,000 as of 1 January 2000; and $104,000,000 as of 1 January 2001.

On 26 May 2004, the Commission confirmed the appraiser's values and made the following pertinent findings of fact:

> ***695** 6. During the *1996-2001* tax years at issue, the Halifax County business personal property listing forms provided, in pertinent part: " Property should be reported at 100% acquisition cost including installation, sales tax, freight and all other costs incurred with obtaining the property and making it ready for its intended use." For the years at issue, the Tax Administrator required all taxpayers to list 100% of the acquisition costs of their business personal property.
>
> 7. The taxpayer did not list 100% percent of the acquisition costs of the machinery and equipment and related business personal property situated in Halifax County even though it capitalized such costs for accounting and income tax purposes.
>
> 8. The discovery issued by the Tax Administrator was proper since the Taxpayer failed to list all costs associated with the acquisition of the assets, as well as the costs associated with bringing the assets into operation. The Tax Administrator then properly applied the North Carolina Department of Revenue Cost Index and Depreciation Schedules to these costs to determine the values of Taxpayer's Property[.]

Based on these findings of fact, the Commission also made the following pertinent conclusions of

> 6. The North Carolina Department of Revenue recommends that all costs associated with the acquisition of an asset, as well as the costs associated with bringing the property into operation, be included in **128 the cost of an asset when listing the property for *ad valorem* tax purposes. These costs include direct and indirect costs, and may include, but are not limited to invoice cost, trade-in allowances, freight, installation costs, sales tax, expensed costs, and construction period interest.
>
> 7. [T]he Tax Administrator properly applied the Cost Index and Depreciation Schedules developed by the North Carolina Department of Revenue to those costs to reach the assessed values for the subject property.
>
> 8. Halifax County consistently applied this method of assessment to all taxpayers to reach the assessed values of their business personal property.
>
> 9. The Taxpayer did not produce competent, material and substantial evidence to show that Halifax County employed an arbitrary or illegal method of appraisal as to the subject property.
>
> ***696** 10. The Taxpayer did not produce competent, material and substantial evidence to show that the values assigned to Taxpayer's personal property **substantially** exceeded the true values in money of the subject property. (Emphasis in original.)
>
> 11. The County Board's decision properly reflected the true values in money of the Taxpayer's personal property as of January 1, 1996, January 1, 1997, January 1, 1998, January 1, 1999, January 1, 2000, and January 1, 2000.

From this decision by the Commission, taxpayer appeals.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

I. Standard of Review

[1][2][3][4][5][6] The standard of review for decisions of the Commission on appeal is set forth in N.C. Gen.Stat. § 105- 345.2(b) (2003):

> [T]he court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
> (1) In violation of any Constitutional provisions; or
> (2) In excess of statutory authority or jurisdiction of the Commission; or
> (3) Made upon unlawful proceedings; or
> (4) Affected by other errors of law; or
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
> (6) Arbitrary or capricious.

Appellate courts review all questions of law *de novo* and apply the "whole record" test where the evidence is conflicting to determine if the Property Tax Commission's decision has any rational basis. *In re Univ. for the Study of Human Goodness & Creative Grp. Work,* 159 N.C.App. 85, 88, 582 S.E.2d 645, 648 (2003). Under *de novo* review for decisions of the Property Tax Commission, the Court of Appeals considers the matter anew and freely substitutes its own judgment for ***697** that of the Commission. *In re Appeal of Church of Yahshua the Christ at Wilmington,* 160 N.C.App. 236, 238, 584 S.E.2d 827, 829 (2003). By way of comparison, under the "whole record test," this Court may not replace the Commission's judgment with its own judgment even if there are two reasonably conflicting views; rather, we merely determine whether an administrative decision has a rational basis in evidence. *In re Appeal of Perry-Griffin Foundation,* 108 N.C.App. 383, 393, 424 S.E.2d 212, 218 (1993). In so doing, we evaluate whether the Commission's decision is "supported by substantial evidence, and, if it is, the decision cannot be overturned." *In re Appeal of Interstate Income Fund I,* 126 N.C.App. 162, 165, 484 S.E.2d 450, 451 (1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau,* 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

[7][8][9] Our General Assembly requires appraisals for all property in this State for *ad valorem* taxation purposes at the property's "true value in money" or market value as far as practicable. ****129**N.C. Gen.Stat. § 105-283 (2003). It is well-settled in this State that *ad valorem* tax assessments are presumed correct. *In re Appeal of Amp, Inc.,* 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). In order to rebut this presumption, the taxpayer must present competent, material, and substantial evidence that tends to show (1) either the county tax supervisor used an arbitrary or illegal method of valuation and (2) the assessment substantially exceeded the true value in money of the property. *Id.,* 287 N.C. at 563, 215 S.E.2d at 762. It is not enough for the taxpayer to merely show that the method used by the county tax supervisor was wrong; the taxpayer must additionally show that the result of the valuation is substantially greater than the true value in money of the property assessed. *Id.*

II. Arbitrariness or Illegality of Assessment

In its first assignment of error, taxpayer asserts the Commission erred in concluding that taxpayer did not produce competent, material, and substantial evidence that the County's method of appraisal was arbitrary or illegal. Specifically, taxpayer argues that the County's assessment was arbitrary and illegal in that it (a) included the cost of a water treatment plant taxpayer built but later deeded to the Town of Weldon; (b) failed to take into account functional obsolescence; (c) failed to take into account economic obsolescence; and (d) failed to con-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

sider the income approach in valuating the prop- erty.

***698** A. The Water Treatment Plant

Taxpayer first argues that the County's discovery was arbitrary and illegal because the assessment included the cost of a $5 million water treatment plant that taxpayer built but later transferred to the Town of Weldon. We disagree.

Under N.C. Gen.Stat. § 105-291 (2003), the Department of Revenue has the power to (1) "prescribe the forms, books, and records to be used in the listing, appraisal, and assessment of property and in the levying and collection of property taxes, and how the same shall be kept" and (2)"develop and recommend standards and rules to be used by tax supervisors and other responsible officials in the appraisal of specific kinds and categories of property for taxation." As permitted by Department of Revenue regulations, the Halifax County guidelines provide that the acquisition cost of property includes "installation, sales tax, freight, and *all other costs* incurred with obtaining the property and making it ready for its intended use." It follows that the acquisition cost determination in the instant case must include any amount spent in order to make taxpayer's personal property ready for use.

[10] In the instant case, the County is not assessing taxpayer directly as the owner of the water treatment plant but is, instead, assessing the treatment plant's costs as part of the acquisition and development costs associated with the ROVA I and II facilities pursuant to its guidelines. Bruce Holden, the vice-president of Westmoreland, testified that appellant considered the building of the water treatment plant a development cost and if the plant had not been built, Westmoreland would have had huge capacity restraints in the future. Thomas Tinker, a County appraiser, also testified the water treatment plant was required for the facilities to be operational and that, absent the arrangement with the Town of Weldon, taxpayer would have been required to build the water treatment plant itself. The taxpayer also listed the cost of the water plant as an asset on its books and capitalized the cost each year on its federal tax returns, further indicating taxpayer treated the construction of the water plant as an indirect cost when building its facilities. Thus, there is competent evidence that the water plant's cost was incurred to make the boilers and other machinery ready for use. Since the County's guidelines require it to tax all costs necessary to make personal property ready for its intended use, excluding this type of cost in the instant case would result in assessment inequities when compared to what is required of similar taxpayers in Halifax County. Accordingly, as there is substantial ***699** evidence to support the Commission's finding that the cost of the water treatment plant was necessary to make taxpayer's property ready for its intended use, such cost was properly included in the County's discovery assessment.

****130** B. Functional Obsolescence

[11][12][13] Taxpayer next asserts the County's assessment was illegal and arbitrary because it failed to take into account functional obsolescence when using the cost approach method of valuating its personal property. Specifically, taxpayer argues the assessment should have factored in functional obsolescence based on the fact that the construction of one larger plant producing 209 kilowatts would have been less expensive than building two smaller plants during the years assessed. We disagree.

**Part of the cost approach is deducting for depreciation, which is "a loss of utility and, hence, value from any cause ... the difference between cost new on the date of appraisal and present market value." Depreciation may be caused by deterioration, which is a physical impairment, such as structural defects, or by obsolescence, which is "an impairment of desirability or usefulness brought about by changes in design standards (functional obsolescence) or factors external to the property (economic obsolescence)."**

***In re Appeal of Stroh Brewery*, 116 N.C.App. 178,**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

**186, 447 S.E.2d 803, 807 (1994)**. The *Business Personal Appraisal Manual* published by the North Carolina Department of Revenue's *Ad Valorem* Tax Division defines functional obsolescence as a "loss in value due to impairment of functional capacity ... inherent in the property itself." North Carolina Dept. Of Revenue Ad Valorem Tax Division, *Business Personal Property Appraisal Manuel,* 7-17 (1995). These factors include overcapacity, inadequacy or changes in the state of the art, or poor design. ***Id.***

Taxpayer's argument does not speak to any technological or design factors inherent in the ROVA I or II facilities that impair the property's desirability or usefulness. Its argument merely states that, if it had been aware of all the additional contracts, it could have saved money by tooling once to meet those contracts rather than tooling twice. However, the circumstances of taxpayer's business dealings does not impact the current functionality of the two facilities. The record indicates both plants have outstanding performance records, operate above industry standards in production, have no environmental ***700** problems, and have been consistently profitable. Based on these factors and the possible benefits to having two facilities instead of one, Tinker rejected the argument that taxpayer's personal property was functionally obsolescent. Although taxpayer presented evidence to the contrary, there is substantial evidence to support the Commission's conclusion that the County properly considered the effect of functional obsolescence.

Moreover, taxpayer failed to offer competent, material, and substantial evidence that any error in assessing functional obsolescence resulted in the amount of the County's assessment substantially exceeding the true value of its property. The assessment offered into evidence by taxpayer's expert failed to analyze what effect building one coal plant instead of two would have on the tax valuation. Instead, the assessment dealt with calculating a functional obsolescence penalty based on the cost of replacing taxpayer's coal burning facility with a gas powered facility. Taxpayer's expert testified at the hearing that, even absent the functional obsolescence penalty he assigned in his assessment, there "[wa]s a functional penalty alone in the pulverized coal facility as a pulverized coal facility, because ... in essence, one facility would have cost *perhaps* $20-30 million less[.]" This qualified and speculative statement, standing alone and unsupported by independent research, does not constitute substantial evidence to establish there has been an overvaluation of taxpayer's property. Accordingly, we find the Commission properly considered the evidence on functional obsolescence and find no error.

C. Economic Obsolescence

Taxpayer next argues the County's discovery assessment failed to take into account economic obsolescence when valuing taxpayer's personal property, rendering the assessment arbitrary and illegal. Specifically, taxpayer asserts the County's income approach erroneously relied solely on the income projections under the PPAs instead of looking at the spot market prices at the time of the assessment dates. Taxpayer contends that ****131** this failure to study the spot market price for electricity gave the County "no basis to determine the existence of economic obsolescence and correctly complete its cost approach valuation."

In *In re Appeal of Belk-Broome,* 119 N.C.App. 470, 458 S.E.2d 921 (1995), this Court reviewed the Commission's decision to uphold a tax valuation assigned to one of three anchor department stores at a mall. We observed that a mall developer must first secure anchor ***701** department stores prior to construction in order to attract both customers and tenant stores and, thereby, make the mall viable. *Id.,* 119 N.C.App. at 475, 458 S.E.2d at 925. Accordingly, the operating agreement between the mall developer and the anchor store, which defines each party's respective rights and obligations, customarily offered anchor stores lower rental rates and purchase prices in exchange for the anchor store's promise "to operate only as a department store and ... not to sell the property to any entity other than an

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

acceptable anchor department store." *Id.*, 119 N.C.App. at 476, 458 S.E.2d at 925. In finding error in the County assessor's valuation, we noted that he considered solely the normal market rents and failed to consider the specific operating agreement of the taxpayer anchor store, which was the market standard. *Id.*, 119 N.C.App. at 476, 458 S.E.2d at 925. This Court further observed that the operating agreement in *Belk-Broome* was "an integral part" of the market; therefore, "[t]he property must be valued according to that market." *Id.*, 119 N.C.App. at 478, 458 S.E.2d at 926. "Placing a lower value on th[e] property solely because it is an anchor store may appear illogical, but this unequal treatment is a part of the market that must be considered." *Id.* [FN1]

FN1. Taxpayer's reliance, therefore, upon cases such as *In re Southern Railway*, 313 N.C. 177, 328 S.E.2d 235 (1985), *In re Appeals of Greensboro Office Partnership*, 72 N.C.App. 635, 325 S.E.2d 24 (1985), *rev. denied*, 313 N.C. 601, 330 S.E.2d 610 (1985), and *In re Pine Raleigh Corp.*, 258 N.C. 398, 128 S.E.2d 855 (1963), is misplaced. These cases establish that, for purposes of N.C. Gen.Stat. § 105-283, property should be valued at market value or "the price ... at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used[.]" As distinguished by *Belk-Broome*, where an operating agreement is a market standard such that it affects the price a willing buyer would pay a willing seller, it is appropriate to consider the terms of such agreement.

[14] In the present case, taxpayer owns two coal powered plants and a PPA guaranteeing for 25 years an income that exceeds the income obtainable absent the contract. The evidence in the instant case shows that large electric power plants constructed during the early 1990's were built and financed on the basis of the PPAs. In fact, testimony indicated taxpayer would not have been able to obtain construction financing for these facilities unless the PPA had been negotiated and executed. Taxpayer's own witness, Chris Ganley, the senior manager at LG & E, acknowledged that taxpayer's plant could not operate in the spot market and that without the PPAs their facilities would shut down. He further testified that in a recent attempt to sell the facilities, the income projections given to the buyer were based on the revenues received under the PPAs, indicating that the PPAs ***702** were included in any transfer of taxpayer's personal property. Taxpayer's argument, that its income must be determined based on spot market prices, ignores the necessity for taxpayer to negotiate the PPA and fix its income stream for the period in question. Like the operating agreement in *Belk-Broome*, the income received under the PPAs are an integral part of the market for taxpayer's property; therefore, any assessment of this property's income must factor in the revenue streams received under these PPAs. The existence of the PPA is not something unique to this facility but was a market standard during the tax years in question. Accordingly, the proper market against which to judge the value of taxpayer's plants under the income approach is that consisting of the existing facilities with the PPAs, and taxpayer's argument that the County's cost approach failed to factor in economic obsolescence is rejected.

****132** D. Failure to Consider the Income Approach

Taxpayer next asserts the failure by the County to consider the income approach renders the County's discovery assessment arbitrary and illegal. However, this argument is based on the assumption that the County's assessment under the income approach was improper. Having concluded that the County correctly valued taxpayer's personal property under the income approach, we need not address this contention.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10 of 10

622 S.E.2d 124
174 N.C.App. 692, 622 S.E.2d 124
**(Cite as: 174 N.C.App. 692, 622 S.E.2d 124)**

Page 9

III. Taxpayer's Remaining Arguments

[15] Finally, taxpayer contends the assessed value of taxpayer's personal property substantially exceeded the property's true value and that the Commission failed to shift the burden of proof to the County after taxpayer presented its evidence. However, we do not reach these assignments of error, as taxpayer has failed to meet its initial burden of presenting material, competent, and substantial evidence that the tax valuation was arbitrary and illegal.

Affirmed.

Judges McGEE and ELMORE concur.

174 N.C.App. 692, 622 S.E.2d 124

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

http://web2.westlaw.com/print/printstream.aspx?rs=WLW9.01&destination=atp&prft=HT... 2/11/2009