Gregg M. Galardi, Esq.           Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.          Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS
105 AND 363 AND BANKRUPTCY RULE 9019, FOR ORDER
APPROVING SETTLEMENT AGREEMENT AND STIPULATION BY AND
AMONG THE DEBTORS AND THE PENSION BENEFIT GUARANTY
CORPORATION**

Circuit City Stores, Inc. ("Circuit City") and

its subsidiary debtors and debtors in possession in the

above-captioned jointly administered cases (collectively

with Circuit City, the "Debtors")[1] hereby move (the

"Motion"), pursuant to sections 105 and 363 of title 11

of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order (the "Order")

approving the settlement agreement and stipulation (the

"Settlement Agreement") by and among the Debtors and the

Pension Benefit Guaranty Corporation (the "PBGC" and

together with the Debtors, the "Parties" and each of

which is a "Party").   In support of the Motion, the

Debtors respectfully represent:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.   This is a

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this district is proper

under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory and legal predicates for

the relief requested herein are Bankruptcy Code sections

105 and 363 and Bankruptcy Rule 9019.

**BACKGROUND**

**A.    General Case Background.**

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and

operate their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the

United States Trustee for the Eastern District of

Virginia appointed a statutory committee of unsecured

creditors (the "Creditors' Committee").  To date, no

trustee or examiner has been appointed in these chapter

11 cases.

6.    On January 16, 2009, the Court authorized

the Debtors, among other things, to conduct going out of

business sales at the Debtors' remaining 567 stores
pursuant to an agency agreement (the "Agency Agreement")
between the Debtors and a joint venture, as agent (the
"Agent").  On January 17, 2009, the Agent commenced
going out of business sales pursuant to the Agency
Agreement at the Debtors remaining stores.  As of March
8, 2009, the going out of business sales at the Debtors'
remaining stores had been completed.

**B.    The Plan.**

7.    On September 29, 2009, the Debtors and
the Creditors Committee filed the First Amended Joint
Plan of Liquidation of Circuit City Stores, Inc. and its
Affiliated Debtors and Debtors In Possession and its
Official Committee of Creditors Holding General
Unsecured Claims (the "Plan").  The associated
disclosure statement (the "Disclosure Statement") was
approved on September 24, 2009, and confirmation on the
Plan is currently scheduled for November 23, 2009.

8.    Generally, the Plan provides for the
liquidation of the Debtors under chapter 11 of the
Bankruptcy Code.

## RELIEF REQUESTED

9.    By this Motion, the Debtors, with the support of the Creditors' Committee, request that the Court approve the Settlement Agreement under Bankruptcy Code section 105 and 363, as well as Bankruptcy Rule 9019.

## BASIS FOR RELIEF

### A.    The Debtors' Pension Plan.

10.    The Debtors previously maintained the Retirement Plan of Circuit City Stores, Inc. (as amended, the "Pension Plan") to provide retirement benefits for certain of its employees.  The Pension Plan was established effective September 1, 1980, and was amended and restated as of March 1, 2001.

11.    The Pension Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies and is not exempt under 29 U.S.C. § 1321(b).  The Pension Plan is therefore covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA").

12.    Prior to the Petition Date, the Pension Plan was frozen twice.  First, effective February 28,

2005, the Pension Plan was frozen as to most of the Debtors' employees.  As a result, all participants affected by the plan freeze retained any benefits accumulated to the effective date, but were no longer eligible to increase their benefit.  Second, effective February 29, 2008, the Pension Plan was frozen as to the remainder of the Debtors' employees, upon which date all plan participants retained any benefits accumulated to the effective date, but were no longer eligible to increase their benefit.

**B.    Termination Of The Pension Plan.**

13.  On or about April 20, 2009, the PBGC provided the Debtors with a Notice of Determination, stating PBGC's determination that the Pension Plan had to be terminated in order to protect the interests of the Pension Plan's participants and stating its intention to seek termination of the Pension Plan under 29 U.S.C. section 1342, either by agreement with Debtor, Circuit City Stores, Inc., as plan administrator, or by court action.

14.  On May 21, 2009, the plan administrator signed a Termination and Trusteeship Agreement

("Termination Agreement") with respect to the Pension

Plan.  PBGC signed the Termination agreement on or about

May 26, 2009.  Under the Termination Agreement, the

Pension Plan was terminated and PBGC was appointed

statutory trustee of the Pension Plan pursuant to 29

U.S.C. § 1342, and March 31, 2009 (the "Termination

Date"), was established as the date of plan termination

pursuant to 29 U.S.C. § 1348. As a result of the Pension

Plan termination and PBGC's appointment as statutory

trustee, PBGC assumed the assets and liabilities of the

Pension Plan and is responsible for paying benefits

under the Pension Plan, up to the levels permitted by

law.

15.  On the Termination Date, the Pension Plan

had approximately 22,000 participants.  No due and

unpaid contributions were owed to the Pension Plan, but

PBGC estimated that the difference between the present

value of Pension Plan assets on March 31, 2009, and the

value of benefit liabilities under the plan as

determined under Title IV of ERISA (the "Unfunded

Benefit Liabilities") as of March 31, 2009, was

$36,900,000.00.

C.    **The PBGC Claims.**

16.   On January 30, 2009, PBGC filed three

proofs of claim, which claims it later amended, in each

of the Debtors' cases (collectively, the "PBGC Claims").

Specifically, the PBGC filed amended proofs of claim

numbered (i) 14470 (the "Minimum Funding Claim"), (ii)

14491 (the "Unfunded Benefit Liabilities Claim"), and

(iii) 14471 (the "Premium Claim"), each of which is

asserted individually against each of the Debtors.  The

PBGC also contends that the Debtors are jointly and

severally liable for all of the PBGC Claims.

17.   The Minimum Funding Claim was filed on

account of minimum contributions allegedly due, but

unpaid, under the Pension Plan.  The PBGC filed such

Claim in the amount of $0.00, but reserved its right to

further amend the proof of claim.

18.   The Unfunded Benefit Liabilities Claim

asserts liability for the Pension Plan's alleged

Unfunded Benefit Liabilities measured as of March 31,

2009 -- the date of the Pension Plan's termination.

Based on PBGC's calculation under ERISA and its

accompanying regulations (the "Regs"), PBGC alleges that

the Pension Plan's Unfunded Benefit Liabilities are
$36,900,000.00.

19.   The Premium Claim was bifurcated into two
claims -- the Annual Premium Claim and the Termination
Premium Claim.   The Annual Premium Claim was filed as an
administrative expense and seeks payment of annual flat-
rate and variable-rate premiums allegedly arising under
29 U.S.C. § 1306(a)(3) after the petition date.   The
flat-rate premium is a flat dollar amount per
participant per year, which is currently $33.00.   29
U.S.C. § 1306(a)(3)(A).   The variable-rate premium is
$9.00 for each $1,000.00 of the plan's unfunded vested
benefits each year.   29 U.S.C. § 1306(a)(3)(E).   PBGC
asserts that the total amount of unpaid flat-rate and
variable-rate premiums for the Pension Plan equals
$159,076.00.

20.   The Termination Premium Claim was filed
on account of termination premiums allegedly due under
29 U.S.C. § 1306(a)(7) (the "Termination Premiums").
See Statement of the Pension Benefit Guaranty
Corporation in Support of its Amended Claim for Pension
Insurance Premiums, at ¶ 7.   Termination Premiums total

9

$1,250 for each participant in a pension plan
immediately before the plan termination, and are due for
a period of three years.  In the case of the Pension
Plan, there were approximately 22,000 participants prior
to its termination.  Based on these figures, PBGC
asserts that the Debtors are liable for Termination
Premiums totaling $82,091,250.00.

21.  The Debtors assert that each of the PBGC
Claims described above should be disallowed,
reclassified as a general unsecured claim, or allowed in
a significantly reduced amount pursuant to applicable
law.

22.  Rather than engage in protracted
litigation with PBGC and in light of the costs, risks
and delays associated with litigating the outstanding
disputes between the Parties, the Debtors determined to
settle such disputes with PBGC.  After arms-length
negotiations, the Debtors and PBGC have agreed to
resolve their disputes in accordance with the terms of
the Settlement Agreement, as further described below.

## THE SETTLEMENT AGREEMENT[2]

23.  Pursuant to the terms of the Settlement
Agreement, which is attached hereto as <u>Exhibit A</u>, the
parties agreed as follows:

(a)  <u>Settlement Payment</u>.  The PBGC shall have an
allowed claim equal to $33.5 million in case
no. 08-35653 (KRH) which shall be paid in the
full amount of $33.5 million (the "Settlement
Payment").  The entire Settlement Payment will
be paid to the PBGC within ten (10) business
days after entry of an order by the Bankruptcy
Court approving the Settlement Agreement.

(b)  <u>The Plan</u>.  The PBGC will neither vote to
accept nor reject the First Amended Joint Plan
of Liquidation of Circuit City Stores, Inc.
and its Affiliated Debtors and Debtors In
Possession and its Official Committee of
Creditors Holding General Unsecured Claims
(the "Plan"), which was filed by the Debtors
on September 29, 2009.

(c)  The Debtors will add the following language to
the Plan: notwithstanding anything in the Plan
or the Confirmation Order, no claims,
obligations, suits, judgments, damages,
demands, debts, rights, causes of action or
liabilities whatsoever against any entity,
except the Debtors, Digital Video Express, LP,
and the Debtors' foreign affiliates, with
respect to the Pension Plan shall be released,
exculpated, discharged, enjoined, or otherwise

---

[2]  This section of the Motion is intended as a summary of the
Settlement Agreement and is qualified in all respects by the
terms of the Settlement Agreement.  To the extent that any
description of the Settlement Agreement contained herein
conflicts with the terms of the Settlement Agreement, the
Settlement Agreement shall control in all respects.

effected by the Plan, nor shall the entry of
the Confirmation Order constitute the approval
of any release, exculpation, discharge,
injunction, or other impairment of any claims
obligations, suits, judgments, damages,
demands, debts, rights, cause of action or
liabilities whatsoever against any entity,
except the Debtors, Digital Video Express, LP,
and the Debtors' foreign affiliates, with
respect to the Pension Plan.

(d)   Release by PBGC.   Notwithstanding anything to
the contrary in paragraph (c) above, the Plan
or the Confirmation Order, the PBGC will
release, waive, and discharge the Debtors'
directors and officers from and against all
claims, obligations, suits, judgments,
damages, debts, rights, causes of
action, and liabilities with respect to the
Pension Plan; provided, however, that nothing
in the Settlement Agreement shall constitute a
release, waiver, or discharge of any such
claims, obligations, suits, judgments,
damages, demands, debts, rights, causes of
action, or liabilities arising under Title I
of ERISA for breaches of fiduciary duty (the
"Preserved Claim") against the Debtors'
directors or officers; provided, however,
damages, if any, from the Preserved Claim
shall, at most, be limited to and capped at
the difference between (i) the Settlement
Payment and (ii) the Pension Plan's total
unfunded benefit liabilities as determined in
accordance with ERISA.   Nothing in this
paragraph or the Settlement Agreement shall be
construed as or constitute an admission of
liability for the Preserved Claim or otherwise
by the Debtors' directors or officers.

(e)   Release of Claims.   Except with regard to the
Preserved Claim, upon payment of the
Settlement Payment, the PBGC Claims, together
with any other claims obligations, suits,

12

> judgments, damages, demands, debts, rights,
> causes of action, and liabilities against the
> Debtors (or Digital Video Express, LP or the
> Debtors' foreign affiliates) held by PBGC,
> shall be deemed fully and finally satisfied.

**APPLICABLE AUTHORITY**

**I.    THE SETTLEMENT AGREEMENT SHOULD BE APPROVED UNDER
BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE SECTION
105.**

24.   Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See In re Bond, 1994 U.S. App. Lexis 1282, *9–*14 (4th Cir. 1994)("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996).

25.   The standards by which a court should evaluate a settlement are well established.  In addition

to considering the proposed terms of the settlement, the
court should consider the following factors:

> (a)  the probability of success in litigation;
>
> (b)  the difficulty in collecting any judgment that
>       may be obtained;
>
> (c)  the complexity of the litigation involved, and
>       the expense inconvenience and delay
>       necessarily attendant to it; and
>
> (d)  the interest of creditors and stockholders and
>       a proper deference to their reasonable views
>       of the settlement.

See Protective Comm. for Indep. Stockholders of TMT
Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245
(1968); In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997);
United States ex. Rel. Rahman v. Oncology Assoc., P.C.,
269 B.R. 139, 152 (D. Md. 2001).

      26.  The decision to approve a settlement or
compromise is within the discretion of the court and is
warranted where the settlement is found to be reasonable
and fair in light of the particular circumstances of the
case.  See TMT Trailer Ferry, 390 U.S. at 424-25.  The
settlement need not be the best that the debtor could
have achieved, but need only fall "within the reasonable
range of litigation possibilities."  In re Telesphere

14

Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill.
1994).  In making its determination, a court should not
substitute its own judgment for that of the debtor and
should defer to the debtor so long as there is a
reasonable business justification.  See In re Martin, 91
F.3d at 395; In re Jasmine, Ltd., 258 B.R. 119, 123
(D.N.J. 2000).  The court should exercise its discretion
"in light of the general public policy favoring
settlements."  In re Hibbard Brown & Co., Inc., 217 B.R.
41, 46 (Bankr. S.D.N.Y. 1998); Nellis v. Shugrue, 165
B.R. 115, 23 (S.D.N.Y. 1994) ("[T]he general rule [is]
that settlements are favored and, in fact, encouraged by
the approval process outlined above.").

        27.  Here, approval of the Settlement
Agreement is warranted because each factor in TMT
Trailer Ferry weighs in favor of approving the
Settlement Agreement or is neutral.  First, although the
Debtors believe that they would likely be successful in
litigation with the PBGC, with all litigation there are
risks.  Furthermore, even if the Debtors were ultimately
successful in asserting some or all of their arguments,

they would likely prevail only after significant complex litigation.

28.   Second, because the Debtors would not be collecting money from PBGC, there are no risks associated with collecting judgment.   Consequently, this factor is neutral.

29.   Third, litigation with PBGC would be complex and would involve claim disputes, as well as confirmation disputes.

30.   With respect to the PBGC Claims, the Debtors object to each of the Claims.   With respect to the Unfunded Benefit Liabilities Claim, the Debtors contend that such claim is substantially overestimated by PBGC because of the valuation methodology utilized by PBGC.   This dispute would involve resolving complicated legal issues and, if the Debtors were successful in that regard, fact and expert discovery and testimony. Moreover, it is likely that litigation concerning the Unfunded Benefit Liabilities Claim would involve various appeals.

31.   The Debtors also dispute both components of the Premium Claim — the Annual Premiums and the

16

Termination Premiums.  With respect to the Annual
Premium portion of the Premium Claim, the Debtors
contend that PBGC has not satisfied its burden of
demonstrating that the Annual Premiums should be
afforded administrative expense priority.  As a result,
the Annual Premiums should be reclassified to a general
unsecured claim.

32.  With respect to the Termination Premium
portion of the Premium Claim, such (i) should be
disallowed in its entirety because the Termination
Premiums do not form the basis of a "claim" as that term
is used in 11 U.S.C. § 101(5)(A) of the Bankruptcy Code,
or (ii) should be characterized as a penalty under
applicable law and equitably subordinated to the allowed
claims of all other unsecured creditors.  As the
Termination Premiums resulted from recent amendments to
ERISA, the law surrounding them is unsettled.
Consequently, similar to litigation involving the
Unfunded Benefit Liabilities Claim, litigation with
respect to the Termination Premiums would likely involve
appeals.

17

33.   PBGC has also informally objected to the Plan on several grounds.  Any objection by PBGC would likely involve significant and costly fact and expert discovery, as well as a contested confirmation hearing. By resolving the PBGC Claims according to the terms of the Settlement Agreement, PBGC has agreed not to object to confirmation of the Plan.

34.   Fourth, and finally, the Debtors believe that the Settlement Agreement will enable the Debtors to beneficially reconcile their current disputes with PBGC without instituting complex litigation proceedings, thereby avoiding the attendant costs, delays and uncertainty.  This savings will directly inure to the benefit of the Debtors' creditors and other stakeholders. Moreover, the Debtors have settled the PBGC Claims for an amount substantially less than their asserted amount.

35.   Based on the foregoing, the Debtors submit that the proposed Settlement Agreement is beneficial to their estates and their creditors. Moreover, the Settlement Agreement represents a compromise that is fair and equitable, falls well within

18

the range of reasonableness, and satisfies the standards
for approval under applicable law.

36.   Accordingly, for the reasons detailed
herein, approval of the Settlement Agreement is
warranted under Bankruptcy Rule 9019.

37.   Finally, Bankruptcy Code section 105
provides in pertinent part that "[t]he court may issue
any order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title."
11 U.S.C. § 105(a).  As noted above, approval of the
relief requested herein furthers the Debtors' efforts to
minimize the risk of litigation and to resolve claims in
a manner that benefits the Debtors and is fair and
equitable to other parties in interest.  Accordingly,
approval of the Settlement Agreement is justified under
Bankruptcy Code section 105.

## II.   ENTRY INTO THE SETTLEMENT AGREEMENT IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(B)(1).

38.   Under Bankruptcy Code section 363, a
bankruptcy court is empowered to authorize a chapter 11
debtor to expend funds in the bankruptcy court's
discretion outside the ordinary course of business.  <u>See</u>

11 U.S.C. § 363.  In order to obtain approval for the
use of estate assets outside the ordinary course of
business, the debtor must articulate a valid business
justification for the requested use.  See In re Tubular
Technologies, LLC, 372 B.R. 820, 822 (Bankr. D.S.C. 2007)
("For the Court to approve the Motion, it must determine
that a good business reason exists to use the estate's
funds . . . .");  In re WBQ P'ship, 189 B.R. 97, 102
(Bankr. E.D. Va. 1995) (noting that a debtor or trustee
must have valid business justification for selling or
using property of the estate outside of the ordinary
course of business); In re Ionosphere Clubs, Inc., 98
B.R. 174, 176 (Bankr. S.D.N.Y. 1985) (same).

     39.  In making this determination, the court
should consider all of the facts and circumstances and
"act to further the diverse interests of the debtor,
creditors and equity holders."  Tubular Technologies,
372 B.R. at 822.

     40.  Approval of the Settlement Agreement is
appropriate in order to facilitate an expedient and
orderly liquidation of the Debtors' assets for the
benefit of the Debtors' estates and all of their

stakeholders.  In the event the Debtors did not prevail in litigation with PBGC, the PBGC Claims could be allowed in the amounts asserted -- approximately $120 million -- in its various amended proofs of claim. Moreover, the PBGC contends that all of the Debtors are jointly and severally liable in connection with each of the PBGC Claims.

41.  The Settlement Agreement ensures that PBGC will not object to confirmation of the Plan and thereby remove one potential challenge to confirmation. Moreover, the Settlement Payment is significantly less than the aggregate total of all sums sought by the PBGC, as well as each of the Unfunded Benefit Liabilities Claim and Premium Claim standing alone.

42.  Based on the foregoing, the Debtors submit sound business reasons exist to justify entry into Settlement Agreement and payment of the Settlement Payment.  Moreover, the Debtors submit that such actions are beneficial to their estates and their creditors. Accordingly, granting the relief requested herein is justified under Bankruptcy Code section 363.

**NOTICE**

43.  Notice of this Motion has been provided
to those parties entitled to notice under this Court's
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (Docket
No. 130).  The Debtors submit that, under the
circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

44.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

**NO PRIOR REQUEST**

45.  No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request

that the Court grant the relief requested herein and

such other and further relief as may be just and proper.

Dated: October 5, 2009          SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia            FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                  - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                  - and -

                              MCGUIREWOODS LLP

                              /s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors
                              in Possession

23

**EXHIBIT A**
**(Settlement Agreement)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
                                :
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
          Debtors.              :    Jointly Administered
- - - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
AND BANKRUPTCY RULE 9019, FOR ORDER APPROVING SETTLEMENT
AGREEMENT AND STIPULATION BY AND AMONG THE DEBTORS AND
THE PENSION BENEFIT GUARANTY CORPORATION**

Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to Bankruptcy Code

---

[1]   Each capitalized term not otherwise defined herein shall have the
      meaning ascribed to it in the Motion.

sections 105(a) and 363 and Bankruptcy Rule 9019

approving the settlement agreement and stipulation (the

"Settlement Agreement") by and among the Debtors and the

Pension Benefit Guaranty Corporation (the "PBGC" and

together with the Debtors, the "Parties" and each of

which is a "Party"), and the Court having reviewed the

Motion; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.   The Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334;

B.   This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2) and venue in this district is proper

under 28 U.S.C. §§ 1408 and 1409;

C.   Proper and adequate notice the Motion has

been given under the circumstances, and no other or

further notice is necessary;

F.   Resolution of the disputes between and

among the Debtors and the PBGC as set forth in the

Settlement Agreement attached hereto as <u>Exhibit A</u> is (i)

fair and reasonable and (ii) a reasonable exercise of the

Debtors' sound business judgment and (iii) is in the best

interests of the Parties and all parties in interest; and

it is therefore

2

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Motion is GRANTED.

2.    Pursuant to Bankruptcy Code sections 105 and Bankruptcy Rule 9019, the Settlement Agreement is APPROVED in all respects.

3.    Pursuant to Bankruptcy Code section 363, the Debtors are hereby authorized to remit the Settlement Payment in accordance with the Settlement Agreement.

4.    The Debtors may take such actions and execute any documents necessary or appropriate to consummate the Settlement Agreement and the transactions contemplated thereby.

5.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.    The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

7.   This Court retains jurisdiction to hear

and determine all matters arising from or related to the

Settlement Agreement and this Order.

Dated:  Richmond, Virginia
        October __, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                                /s/ Douglas M. Foley

**<u>EXHIBIT A</u>**
**Settlement Agreement**

Gregg M. Galardi, Esq.        Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.       Douglas M. Foley (VSB
SKADDEN, ARPS, SLATE,         No. 34364)
MEAGHER & FLOM, LLP           MCGUIREWOODS LLP
One Rodney Square             One James Center
PO Box 636                    901 E. Cary Street
Wilmington, Delaware          Richmond, Virginia 23219
19899-0636                    (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

           IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
          Debtors.           :   Jointly Administered
- - - - - - - - - - - - - - x

      **SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE
      DEBTORS AND THE PENSION BENEFIT GUARANTY CORPORATION**

          This settlement agreement and stipulation

(this "Agreement") is entered into by and among the

above-captioned debtors and debtors in possession (the

"Debtors"), on the one hand, and the Pension Benefit

Guaranty Corporation (the "PBGC" and together with the

Debtors, the "Parties" and each of which is a "Party"),

on the other hand.

### GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition

Date"), the Debtors each filed a voluntary petition in

the United States Bankruptcy Court for the Eastern

District of Virginia (the "Court") under chapter 11 of

title 11 of the United States Code (the "Bankruptcy

Code"); and

WHEREAS, the Debtors have continued as debtors

in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code; and

WHEREAS, on November 12, 2008, the Office of

the United States Trustee for the Eastern District of

Virginia appointed a statutory committee of unsecured

creditors (the "Creditors' Committee"); and

WHEREAS, to date, no trustee or examiner has

been appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded; and

**SETTLEMENT BACKGROUND**

**A.   The Debtors' Pension Plan.**

WHEREAS, the Debtors previously maintained the Retirement Plan of Circuit City Stores, Inc. (as amended, the "Pension Plan") to provide retirement benefits for certain of its employees.  The Pension Plan was established effective September 1, 1980, and was amended and restated as of March 1, 2001; and

WHEREAS, the Pension Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies and is not exempt under 29 U.S.C. § 1321(b). The Pension Plan is therefore covered by Title IV of the

Employee Retirement Income Security Act of 1974, as
amended, 29 U.S.C. §§ 1301-1461 ("ERISA"); and

**B.    Termination Of The Pension Plan.**

WHEREAS, on or about April 20, 2009, the PBGC
provided the Debtors with a Notice of Determination,
stating PBGC's determination that the Pension Plan had
to be terminated in order to protect the interests of
the Pension Plan's participants and stating its
intention to seek termination of the Pension Plan under
29 U.S.C. section 1342, either by agreement with Debtor,
Circuit City Stores, Inc., as plan administrator, or by
court action; and

WHEREAS, on May 21, 2009, the Pension Plan
administrator signed a Termination and Trusteeship
Agreement ("Termination Agreement") with respect to the
Pension Plan.  PBGC signed the Termination agreement on
or about May 26, 2009.  Under the Termination Agreement,
the Pension Plan was terminated and PBGC was appointed
statutory trustee of the Pension Plan pursuant to 29
U.S.C. § 1342, and March 31, 2009 (the "Termination
Date"), was established as the date of plan termination
pursuant to 29 U.S.C. § 1348. As a result of the Pension

Plan termination and PBGC's appointment as statutory
trustee, PBGC assumed the assets and liabilities of the
Pension Plan and is responsible for paying benefits
under the Pension Plan, up to the levels permitted by
law; and

WHEREAS, on the Termination Date, the Pension
Plan had approximately 22,000 participants.  No due and
unpaid contributions were owed to the Pension Plan, but
PBGC estimated that the difference between the present
value of Pension Plan assets on March 31, 2009, and the
value of benefit liabilities under the plan as
determined under Title IV of ERISA (the "Unfunded
Benefit Liabilities") as of March 31, 2009, was
$36,900,000.00.

**C.    The PBGC Claims.**

WHEREAS, on January 30, 2009, PBGC filed three
proofs of claim, which claims it later amended, in each
of the Debtors' cases (collectively, the "PBGC Claims").
Specifically, the PBGC filed amended proofs of claim
numbered (i) 14470 (the "Minimum Funding Claim"), (ii)
14491 (the "Unfunded Benefit Liabilities Claim"), and

(iii) 14471 (the "Premium Claim"), each of which is
asserted individually against each of the Debtors; and

WHEREAS, PBGC contends that the Debtors are
jointly and severally liable for all of the PBGC Claims;
and

WHEREAS, the Minimum Funding Claim was filed
on account of minimum contributions allegedly due, but
unpaid, under the Pension Plan.  PBGC filed such Claim,
in the amount of $0.00, but reserved its right to
further amend the proof of claim; and

WHEREAS, the Unfunded Benefit Liabilities
Claim asserts liability for the Pension Plan's alleged
Unfunded Benefit Liabilities measured as of March 31,
2009 -- the date of the Pension Plan's termination.
Based on PBGC's calculation under ERISA and its
accompanying regulations (the "Regs"), PBGC alleges that
the Pension Plan's Unfunded Benefit Liabilities are
$36,900,000.00.  The Debtors disagree with PBGC's
contentions; and

WHEREAS, the Premium Claim was bifurcated into
two claims -- the Annual Premium Claim and the
Termination Premium Claim.  The Annual Premium Claim was

6

filed as an administrative expense and seeks payment of

annual flat-rate and variable-rate premiums allegedly

arising under 29 U.S.C. § 1306(a)(3) after the petition

date.  The flat-rate premium is a flat dollar amount per

participant per year, which is currently $33.00.  29

U.S.C. § 1306(a)(3)(A).  The variable-rate premium is

$9.00 for each $1,000.00 of the plan's unfunded vested

benefits each year.  29 U.S.C. § 1306(a)(3)(E).  PBGC

asserts that the total amount of unpaid flat-rate and

variable-rate premiums for the Pension Plan equals

$159,076.00.  The Debtors assert that the PBGC has not

satisfied its burden of demonstrating that the Annual

Premiums should be afforded administrative expense

priority; and

        WHEREAS, the Termination Premium Claim was

filed on account of termination premiums allegedly due

under 29 U.S.C. § 1306(a)(7) (the "Termination

Premiums").  See Statement of the Pension Benefit

Guaranty Corporation in Support of its Amended Claim for

Pension Insurance Premiums, at ¶ 7.  Termination

Premiums total $1,250 for each participant in a pension

plan immediately before the plan termination, and are

due for a period of three years.  In the case of the

Pension Plan, there were approximately 22,000

participants prior to its termination.  Based on these

figures, PBGC asserts that the Debtors are liable for

Termination Premiums totaling $82,091,250.00.  The

Debtors disagree and contend that the Termination

Premium Claim should be disallowed in its entirety; and

WHEREAS, rather than proceed with litigation

concerning the PBGC Claims, the parties engaged in good

faith, arms' length negotiations to resolve the PBGC

Claims in their entirety.

NOW THEREFORE, for good and valuable

consideration, the receipt and sufficiency of which are

hereby acknowledged, the Parties hereby STIPULATE AND

AGREE as follows:

1.    PBGC shall have an allowed claim equal to

$33.5 million in case no. 08-35653 (KRH)which shall be

paid in the full amount of $33.5 million (the

"Settlement Payment").

2.    The entire Settlement Payment shall be

paid to PBGC within ten business days after entry of an

order by the Bankruptcy Court approving this Agreement.

8

3.     Upon payment of the Settlement Payment, the PBGC Claims, together with any other claims obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities against the Debtors (or Digital Video Express, LP or the Debtors' foreign affiliates) held by PBGC, shall be deemed fully and finally satisfied.

4.     The PBGC will neither vote to accept nor reject the Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as amended from time to time, the "Plan").

5.     The Debtors will add the following language to the Plan:

> notwithstanding anything in the Plan or the Confirmation Order , no claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities whatsoever against any entity, except the Debtors, Digital Video Express, LP, and the Debtors' foreign affiliates, with respect to the Pension Plan shall be released, exculpated, discharged, enjoined, or otherwise effected by the Plan, nor shall the entry of the Confirmation Order constitute the approval of any release, exculpation, discharge, injunction, or other impairment of any claims obligations, suits, judgments, damages, demands, debts, rights, cause

9

of action or liabilities whatsoever against any
entity, except the Debtors, Digital Video Express,
LP, and the Debtors' foreign affiliates, with
respect to the Pension Plan.

6.    Notwithstanding anything to the contrary
in paragraph 5 of this Agreement, the Plan or the
Confirmation Order, PBGC hereby releases, waives, and
discharges the Debtors' directors and officers from and
against all claims, obligations, suits, judgments,
damages, demands, debts, rights, causes of action, and
liabilities with respect to the Pension Plan; provided,
however, that nothing herein shall constitute a release,
waiver, or discharge of any such claims, obligations,
suits, judgments, damages, demands, debts, rights,
causes of action, or liabilities arising under Title I
of ERISA for breaches of fiduciary duty (the "Preserved
Claim") against the Debtors' directors or officers;
provided, however, damages, if any, from the Preserved
Claim shall, at most, be limited to and capped at the
difference between (i) the Settlement Payment and (ii)
the Pension Plan's total unfunded benefit liabilities as
determined in accordance with ERISA.  Nothing in this
paragraph or this Agreement shall be construed as or

constitute an admission of liability for the Preserved
Claim or otherwise by the Debtors' directors or
officers.

7.    Neither this Agreement, nor any statement
made or action taken in connection with the negotiation
of this Agreement, shall be offered or received in
evidence or in any way referred to in any legal action
or administrative proceeding among or between the
parties hereto, other than as may be necessary (a) to
obtain approval of and to enforce this Settlement
Agreement or (b) to seek damages or injunctive relief in
connection therewith.

8.    Each of the Parties hereto shall execute
and deliver any and all additional papers, documents and
other assurances, and shall do any and all acts and
things reasonably necessary or appropriate in
conjunction with the performance of their respective
obligations hereunder.

9.    No provision of this Settlement Agreement
is intended to confer any rights, benefits, remedies,
obligations or liabilities hereunder upon any person

other than the parties hereto and their respective successors.

10.   Except where preempted by applicable Federal law, this Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Virginia without regard to any choice of law provisions.

11.   This Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

12.   This Agreement constitutes the entire agreement and understanding of the parties regarding the Agreement and the subject matter thereof.

13.   The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Agreement.

14.   Each person or entity who executes this
Settlement Agreement on behalf of another person or
entity represents and warrants that he, she, or it is
duly authorized to execute this Agreement on behalf of
such person or entity, has the requisite authority to
bind such person or entity, and such person or entity
has full knowledge of and has consented to this
Agreement.   The representations and warranties set forth
in this paragraph shall survive execution of this
Agreement.

15.   This Agreement shall not be modified,
altered, amended or vacated without the written consent
of all parties hereto or order of the Bankruptcy Court.

          IN WITNESS WHEREOF, this Agreement is hereby

executed as of the later of the dates set forth below.

ACCEPTED AND AGREED TO BY:

CIRCUIT CITY STORES, INC.

By:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

*Counsel for Circuit City Stores, Inc.,
et al., Debtors and Debtors-in-Possession*

14

PENSION BENEFIT GUARANTY CORPORATION

By:        /s/ Sara B. Eagle

Dated:     October 5, 2009

ISREAL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
MICHAEL C. MILLER
Assistant Chief Counsel
SARA B. EAGLE
Attorney
1200 K. Street, N.W.
Washington, D.C.  20005
(202) 326-4020

Attorneys for Pension Benefit Guaranty Corporation