IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:    CIRCUIT CITY STORES, INC.,    Case No. 08-35653
*et al.*,    Chapter 11
Debtors.    Jointly Administered

## MEMORANDUM OPINION

This is a Chapter 11 case filed by a national retailer. The Debtors have filed two Omnibus Objections seeking to disallow certain claims ("Claims") filed by its former employees under § 507(a)(4)(A) of the United States Bankruptcy Code ("Claimants"). The claims at issue requested payment for unused paid time off upon termination of employment. Hearing was conducted on August 18, 2009 (the "Hearing") to consider the Debtors' objections. The Debtors' evidence established that immediately prior to the Petition Date, the Debtors discontinued their practice of paying money for unused Paid Time Off at termination. Debtors claimed that they had subsequently informed all employees of the change in the Paid Time Off policy. The Court finds that the Debtors' communication of this change was confusing and perhaps misleading. Therefore, with regard to the Claimants who timely responded to the Omnibus Objections, the Debtors' objections are overruled. The Court concludes that the responding Claimants are entitled to a priority claim in accordance with § 507(a)(4)(A).

### Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

**Factual and Procedural Background**

The Debtors, Circuit City Stores, Inc., *et al.*,[1] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing proofs of claim. On December 11, 2008, the Court entered an Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order"). Pursuant to the Claims Bar Date Order, the bar date for filing all "claims" (as defined in 11 U.S.C. § 101(5)) by any non-governmental entity was 5:00 p.m. (PT) on January 30, 2009 (the "General Bar Date").

As of the General Bar Date, 519 Claimants filed Claims for payment under § 507(a)(4)(A), asserting that they were entitled to be paid according to the Debtors' Paid Time Off policy. On July 17, 2009, the Debtors filed two omnibus objections[2] to these Claims on the grounds that the Debtors' Paid Time Off policy had been amended pre-petition and therefore the Claimants were no longer entitled to receive payment for Paid Time Off at the termination of their employment because the Paid Time Off had no cash equivalent value under the new

---

[1] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. On November 10, 2008, the Court entered an order granting the Debtors' motion for joint administration of these bankruptcy cases.

[2] The objections were filed as omnibus objections pursuant to the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections, entered on April 1, 2009 [Docket No. 2881].

policy.[3] A total of 27 Claimants (the "Responding Claimants") filed responses to the Omnibus Objections by the August 10, 2009 deadline, maintaining that they were unaware of the new policy or that the new policy was misleading. As to Claims for which no response was filed to the Debtors' Omnibus Objections, the Court sustains the objections, and will enter an order dismissing those Claims.[4] At the Hearing (which the Responding Claimants were not required to attend),[5] the Debtors reiterated their position that, since the Paid Time Off policy had been amended pre-petition, the Claims had no value and the Court should disallow them.

**Analysis**

Prior to the Petition Date, the Debtors' corporate policy regarding Employee Benefits, including Paid Time Off, was outlined in its Associate Handbook. All hourly employees with ninety (90) days or more service with the Debtors accrued Paid Time Off for each hour worked. The accrual rate varied based on the employee's length of service, and the accrued Paid Time Off hours could be used for any purpose, including rest, relaxation, personal business, sick time, and holidays. Although the Associate Handbook did not state a policy of paying employees for accrued, unused Paid Time Off at the termination of their employment, it was in fact the Debtors' practice to do so.

On or about November 7, 2008, just prior to the Petition Date, the Debtors ceased this practice of paying employees for accrued, unused Paid Time Off at the termination of their

---

[3] Debtors' Twenty-fifth Omnibus Objection to Claims (Disallowance of Certain Claims for Paid Time Off), filed on July 17, 2009 [Docket No. 4165]; Debtors' Twenty-sixth Omnibus Objection to Claims (Disallowance of Certain Claims for Paid Time Off), filed on July 17, 2009 [Docket No. 4167].

[4] Local rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia requires a creditor served with an objection to claim to file a response to the objection within 30 days. If no response is filed, the Court may treat the objection as conceded.

[5] *See* Notice of Debtors' Twenty-fifth Omnibus Objection to Claims (Disallowance of Certain Claims for Paid Time Off), filed on July 17, 2009 [Docket No. 4165], at 4.

employment.[6]  On the Petition Date, the Debtors filed as one of their many first day motions a motion requesting that they be authorized to continue their policy regarding Paid Time Off in order to allow employees to continue to accrue Paid Time Off[7] (the "Wage Motion").  The Wage Motion stated that "the Debtors are not seeking authorization to continue to pay an Employee for accrued, unused Paid Time Off upon termination."  The Court entered an order[8] granting the Wage Motion on the Petition Date.

On or about December 16, 2008, the Debtors transmitted a memorandum to their employees via e-mail in an attempt to answer questions the employees had in light of the bankruptcy filing.  The memorandum was titled "What Happens to My Benefits When My Employment Ends and Frequently Asked Questions" (the "December Memo").  Question Number 6 in the December Memo was:  "As a part-time or full-time hourly Associate, will I be paid for unused, accrued PTO [Paid Time Off]?"  The response stated that the Debtors "will not pay associates unused PTO hours upon termination of employment," but that they would "continue to accrue and pay PTO that associates use while employed."

The Debtors e-mailed a subsequent memorandum to their employees on or about January 16, 2009, after the Court had approved the going out of business sales at the Debtors' remaining stores (the "January Memo").  The January Memo was titled "Answers to Common Questions About Circuit City's Liquidation Announcement".  Question Number 6 in the January Memo asked:  "Are there any changes to Circuit City's paid-time-off (PTO) policy?"  The response

---

[6] Had this change occurred post-petition rather than immediately pre-petition, the claims at issue would have been entitled to priority status under § 507(a)(4)(A).

[7] Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rule 6003 Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits, filed on November 10, 2008 [Docket No. 6].

[8] Order Pursuant to Bankruptcy Code Sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rule 6003 Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits, entered on November 10, 2008 [Docket No. 80].

stated that employees with accrued, unused PTO at the time of termination of their employment "will not receive payment of amounts on account of such PTO *at the time of termination*" (emphasis supplied). The answer to Question Number 6 continued, stating that "Instead, during the bankruptcy proceeding, each employee (current and former) will receive a Proof of Claim form," which "may be completed by each employee for any 'claims,' including, without limitation, unpaid PTO at the time the employee receives the Proof of Claim form." This language, albeit somewhat confusing, can be read to suggest that employees simply needed to follow a different procedure in order to be paid for any earned, but unused, Paid Time Off upon termination of their employment.

In support of their contention that employees were aware of and clearly understood the change in the Debtors' practice regarding Paid Time Off, Debtors introduced evidence that 20,516 employees used Paid Time Off during the post-petition period at a total cost of nearly $9.5 million. While this indicates that the Debtors honored their Paid Time Off policy in accordance with the Court's order granting the Wage Order, it fails to demonstrate that these employees in fact knew that the pre-petition practice had changed and that they used their Paid Time Off while employed post-petition because they understood that they would not have that opportunity to use it once their employment terminated. It certainly does not evidence that the changes made to the Paid Time Off policy immediately prior to the Petition Date had been effectively communicated to the employees outside of the December Memo or the January Memo. The fact that 519 Claimants filed Proofs of Claim seeking to be paid for accrued, unused Paid Time Off suggests to the contrary that a substantial number of employees were either unaware of or confused by the change in policy.

5

Many of the Responding Claimants stated that management discouraged them from requesting Paid Time Off during the going out of business sale period because their store retained only a minimal number of employees and they would be able to claim any unused Paid Time Off once the store closed.[9] Other Responding Claimants stated that they interpreted the January Memo to mean they would be paid for their unused Paid Time Off once they filed their Proof of Claim.[10]

Human nature, being what it is, tips the argument in favor of the Responding Claimants. Perhaps the strongest indication that many employees did not understand the ramifications of the Debtors' change in practice regarding Paid Time Off is the fact that the Responding Claimants continued to work without using it up until the date of their termination. As a number of Responding Claimants stated, had they been aware that they would not be paid upon termination for their unused Paid Time Off, they would not have continued to work up until their last day of employment, but instead would have taken time off prior to their store closing. There is no reason to believe that these employees consciously chose to work all scheduled hours and forfeit this benefit out of a sense of loyalty to their employer. After all, these individuals were facing the clear prospect of unemployment. Taking the Paid Time Off they had earned could have afforded them an opportunity to seek a new job, relax while on vacation, or simply avoid the hectic final days of the liquidation sales. It seems much more likely than not that the Responding Claimants were counting on payment for unused Paid Time Off as a financial cushion once their employment terminated.

---

[9] *See, e.g.*, Response of Andrew F. Belovich, filed on August 10, 2009 [Docket No. 4432] ("I was also told and understood from management that I would be paid for my unused paid time off in my final pay check.").

[10] *See, e.g.*, Response of Mary A. Garza, filed on August 7, 2009 [Docket No. 4419] ("It is my opinion that employees were misled. . . . Circuit City's memo indicates that the employee will be compensated by utilizing a Proof of Claim form.").

**Conclusion**

For the above reasons, the Court finds that the Debtors failed to effectively communicate their policy change regarding Paid Time Off to their employees. The December Memo and the January Memo were at best confusing and at worst misleading. The Debtors had the burden of effectively communicating the change in its policy to their employees so as not to take advantage of them in the final hectic days of the liquidation. The Court concludes that the Responding Claimants are entitled to assert a priority claim in accordance with § 507(a)(4)(A). The Debtors' Twenty-fifth and Twenty-sixth Omnibus Objections are overruled with regard to the Responding Claimants and their respective Claims will be allowed. Otherwise, the Objections are sustained, and the remaining Claims are dismissed.

A separate order shall be issued.

ENTERED: _____

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE