Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :   Jointly Administered
            Debtors.        :
- - - - - - - - - - - - - - x

**DEBTORS' BRIEF IN SUPPORT OF DEBTORS' (I) FIFTY-FIRST
OMNIBUS OBJECTION TO CERTAIN 503(b)(9) CLAIMS AND (II)
MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST
HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

## TABLE OF CONTENTS

**Page**

TABLE OF CASES AND AUTHORITIES........................III

PRELIMINARY STATEMENT...................................1

BACKGROUND.............................................2

     A.   General Case Background.......................2

     B.   The Preferential Transfers...................3

ARGUMENT..............................................5

I.   THE 503(B)(9) CLAIMS ARE SUBJECT TO MANDATORY
    DISALLOWANCE UNDER SECTION 502(D).................5

     A.   Section 503(b)(9) Administrative Expenses
        Are Claims...................................6

     B.   The Plain Language Of Section 502(d)
        Makes It Applicable To Any Claim Of Any
        Entity.......................................9

     C.   The Legislative History Of Section 502(d)
        Further Supports Its Application To
        503(b)(9) Administrative Expenses...........15

     D.   The Policy Behind Section 502(d) Also
        Supports The Conclusion That 503(b)(9)
        Claims Are Subject To Mandatory
        Disallowance Under Section 502(d)...........19

II.  THE BETTER REASONED CASES SUPPORT THE
    CONCLUSION THAT SECTION 502(D) SHOULD APPLY TO
    CLAIMS ASSERTED UNDER SECTION 503(B)(9)..........24

III. THE COURT SHOULD TEMPORARILY DISALLOW THE
    503(B)(9) CLAIMS PENDING RESOLUTION OF ANY
    SECTION 502(D) OBJECTION AND THE RETURN OF ANY
    AVOIDABLE TRANSFERS..............................30

A.     Controlling Precedent Requires That The
       503(b)(9) Claims Be Held In Abeyance
       Pending An Adjudication Of The Section
       502(d) Objection...........................30

B.     The Efficient Adjudication Of Claims
       Allowance Matters Warrants Holding The
       Allowance Of 503(b)(9) Claims In Abeyance.
       .........................................34

C.     Any Allowance Of A 503(b)(9) Claim Must
       Be Without Prejudice To The Debtors'
       Rights To Assert Claims Under Section 547.
       .........................................37

CONCLUSION.........................................38

## TABLE OF CASES AND AUTHORITIES

### CASES

In re America West Airlines, Inc., 217 F.3d
    1161 (9th Cir. 2000) ...................................32

In re Ames Dept. Stores, Inc., --- F.3d ----,
    2009 WL 2972510 (2d Cir. Sep. 18, 2009) .....9, 26, 28, 29

In re Bob Grissett Golf Shoppes, Inc., 50 B.R.
    598 (Bankr. E.D. Va. 1985) ......................5, 25, 26

Camelot Music, Inc. v. MHW Advertising & Pub-
    lic Relations Inc. (In re CM Holdings, Inc.),
    264 B.R. 141 (Bankr. D. Del. 2000) .................26, 27

Campbell v. United States (In re Davis), 889
    F.2d 658 (5th Cir. 1989) ..........................20, 22

Central Virginia Community College v. Katz,
    546 U.S. 356 (2006) ....................................5

In re Chase & Sanborn Corp., 124 B.R. 368
    (Bankr. S.D. Fla. 1991) ...............................20

City of New York v. New York, N.H. & Hartford
    R.R. Co., 344 U.S. 293 (1953) .........................16

Commodity Credit Corp. v. National Dairy Pro-
    motion & Research Board (In re KF Dairies,
    Inc.), 143 B.R. 734 (B.A.P. 9th Cir. 1992) ............33

In re Coral Petroleum, Inc., 60 B.R. 377
    (Bankr. S.D. Tex. 1986) ...............................19

Corley v. U.S., 2009 U.S. LEXIS 2512 (U.S. Apr.
    6, 2009) ..............................................14

In re Dana Corp., 2007 WL 1577763 (Bankr.
    S.D.N.Y. 2007) ........................................13

In re Dornier Aviation (North America), Inc.,
    320 B.R. 831 (E.D. Va. 2005) ......................20, 21

In re Dow Corning Corp., 244 B.R. 634 (Bankr.
    E.D. Mich. 1999) ......................................22

Durham v. SMI Industries Corp., 882 F.2d 881
    (4th Cir. 1989) ..................................11, 13

In re E-Z Serve Convenience Stores, Inc., 377
    B.R. 491 (Bankr. M.D.N.C. 2007) .......................34

In re Eye Contact, Inc., 97 B.R. 990 (Bankr.
    W.D. Wis. 1989) .......................................25

FCC v. NextWave Personal Communs. Inc., 537
    U.S. 293 (2003) ...................................7, 14

Gonzales v. Food Marketing Group (In re Furr's
    Supermarkets, Inc.), 320 B.R. 1 (Bankr.
    D.N.M. 2004) .........................................36

Hartford Underwriters Ins. Co. v. Union Plant-
    ers Bank, N.A., 530 U.S. 1 (2000) .....................10

Hudson Feather & Down Prods., Inc. v. B&B
    Assoc., Inc. (In re Hudson Feather & Down
    Prods., Inc.), 22 B.R. 247 (Bankr. E.D.N.Y.
    1982) ................................................25

In re JKJ Chevrolet, Inc., 412 F.3d 545 (4th
    Cir. 2005) ...........................................34

Katchen v. Landy, 382 U.S. 323 (1966)....................31

LaRoche Industrial, Inc. v. General America
    Transport Corp. (In re LaRoche Industrial
    Inc.), 284 B.R. 406 (Bankr. D. Del. 2002) ......10, 11, 37

In re Larsen, 80 B.R. 784 (Bankr. E.D. Va.
    1987) .............................................24, 33

In re Lids Corp., 260 B.R. 680 (Bankr. D. Del
    2001) ................................26, 27, 28, 29, 32

U.S. Lines, Inc. v. United States (In re
    McLean Industrial), 184 B.R. 10 (Bankr.
    S.D.N.Y. 1995) .......................................33

Microage, Inc. v. Viewsonic Corp. (In re
    Microage, Inc.), 291 B.R. 503 (B.A.P. 9th
    Cir. 2002) ......................................passim

In re Mid Atlantic Fund, Inc., 60 B.R. 604
    (Bankr. S.D.N.Y. 1986) ...............................20

Movitz v. Baker (In re Triple Star Welding,
    Inc.), 324 B.R. 778 (B.A.P. 9th  Cir. 2005) ...........25

In re PSA, Inc., 277 B.R. 51 (Bankr. D. Del
    2002) ................................................23

Pa. Department of Public Welfare v. Davenport,
    495 U.S. 552 (1990) ...................................6

In re Plastech Engineered Products, Inc., 394
    B.R. 147 (Bankr. E.D. Mich. 2008) ....................13

In re Red Dot Scenic, Inc., 313 B.R. 181
    (Bankr. S.D.N.Y. 2004) ...............................32

In re Sierra-Cal, 210 B.R. 168 (Bankr. E.D.
    Cal. 1997) ...........................................32

In re Thompson, 329 B.R. 145 (Bankr. E.D. Va.
    2005) ................................................10

Tidwell v. Atlanta Gas Light Co. (In re Geor-
    gia Steel, Inc.), 38 B.R. 829 (Bankr. M.D.
    Ga. 1984) ............................................25

In re U.S. Truck Co. Holdings, Inc., No. 99-
    59972-WS, 2000 Bankr. LEXIS 1376 (Bankr. E.D.
    Mich. Sept. 29, 2000) ................................21

U.S. v. Whiting Pools, 462  U.S. 198 (1983)...............17

United States v. Ron Pair Enterprises, Inc.,
    489 U.S. 235 (1989) ................................9, 11

Weber v. Mickelson (In re Colonial Services
    Co.), 480 F.2d 747 (8th Cir. 1973) .............15, 24, 31

## STATUTES AND RULES

11 U.S.C. § 101(5)................................6, 16, 18

11 U.S.C. § 502(a)..................................13, 33

11 U.S.C. § 502(d)...............5, 10, 12, 16, 18, 19, 22

11 U.S.C. § 503.........................................6

11 U.S.C. § 503(b)................................6, 7, 14

11 U.S.C. § 503(b)(9)..............................passim

11 U.S.C. 507(a)(2)....................................7

11 U.S.C. § 546(c)....................................9

11 U.S.C. § 547(a)(2)................................35

11 U.S.C. § 547(b)..................................30

11 U.S.C. § 547(c)(4)................................34

11 U.S.C. § 558....................................23

11 U.S.C. § 1123(a)(1)................................7

H.R. Rep. No. 599, 95th Cong. 1st Sess. 354
    (1977) ................................6, 15, 17, 19, 27

Law of July 1, 1898, ch. 541, § 57g, 30 Stat.
    560 as amended (repealed 1979) ................16, 17, 18

Pub. L. 98-353 (1984)................................26

S. Rep. No. 95-989, at 65 (1978)..................15, 17, 19

S. Rep. No. 989, 95th Cong., 2d Sess. 64
    (1978)) (emphasis added ...........................6, 28

BAPCPA, section 1227.......................................9

Fed. R. Bankr. P. 3003(b)(1).........................12, 13

**AUTHORITIES**

5 <u>Collier on Bankruptcy</u> ¶ 558.01 (Alan N. Res-
    nick & Henry J. Sommer eds., 15th ed. rev.
    2008) ................................................23

Kenneth N. Klee, <u>Chapter 11 Business Reorgani-
    zations: The Bankruptcy Abuse Prevention and
    Consumer Protection Act of 2005 – Business
    Bankruptcy Amendments</u>, Course No. SK092 ALI-
    ABA Course of Study Materials (2005) ...................9

### PRELIMINARY STATEMENT[1]

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[2] hereby file this brief in support of their objection (the "Objection") to certain alleged Bankruptcy Code section 503(b)(9) claims (the "503(b)(9) Claims") filed by various claimants (collectively, the "Claimants").  Specifically, the Debtors seek to temporarily disallow the 503(b)(9) Claims because the Claimants holding such Claims are the recipients of transfers that are avoidable under Bankruptcy Code section 547.[3]

---

[1]   Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to such terms in the remainder of this memorandum.

[2]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[3]   The Debtors have not completed their review of amounts that may be avoidable under Bankruptcy Code section 553(b).  Nothing herein shall be deemed to be or construed as a waiver of the Debtors' right to seek to avoid any transfers under section 553 or any other section of the Bankruptcy Code or applicable law.

**BACKGROUND**

**A.    General Case Background.**

On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

**B.    The Preferential Transfers.**

As part of the Debtors' ongoing efforts to liqui-
date their estates and wind down their remaining affairs,
the Debtors thoroughly reviewed and analyzed the transfers
made to the Claimants within 90 days of the Petition Date
and for the two-year period prior thereto.

Based upon this analysis, the Debtors have deter-
mined that each of the Claimants was the recipient of one
or more avoidable transfer.  Specifically, pursuant to
Bankruptcy Code sections 547(b) and 550, and as set forth
on Exhibit C to the omnibus objection, the Debtors contend
that the Claimants were recipients of one or more transfers
made on account of antecedent debts, within 90 days of the
Petition Date, while the Debtors were insolvent, and that
allowed the Claimants to receive more than they would had
such transfers not been made and such creditor had received
payment under the Bankruptcy Code.

In evaluating transfers to the Claimants, the
Debtors also evaluated various defenses that may or may not
be applicable, including the "new value" defense.  Based on
this evaluation, the Debtors determined that, after taking
into account the new value defense, the Claimants were
still the recipients of one or more avoidable transfers
(collectively, the "Preferential Transfers").  In evaluat-

3

ing the new value defense, the Debtors excluded any "new value" that overlapped with the alleged 503(b)(9) Claims.

In certain instances the Preferential Transfers are greater than the amount of the corresponding 503(b)(9) Claim.  In other instances, the 503(b)(9) Claim is greater than the corresponding Preferential Transfers.  Rather than seek to temporarily disallow each 503(b)(9) Claim in full, the Debtors propose that the Claimants should be divided into two groups.

The first group is comprised of Claimants whose alleged avoidable transfers are greater than the amount of their 503(b)(9) Claim.  The Debtors contend that the 503(b)(9) Claims filed by these Claimants should be tempo-rarily disallowed in full until such time as each such Claimant returns the Preferential Transfers to the Debtors' estates.

The second group is comprised of Claimants whose alleged preference exposure is less than the amount of their 503(b)(9) Claim.  For Claimants in this group, the Debtors assert that the 503(b)(9) Claims should be tempo-rarily disallowed in an amount equal to Preferential Trans-fers until each such Claimant returns the Preferential Transfers to the Debtors' estates.

**ARGUMENT**

**I.    THE 503(B)(9) CLAIMS ARE SUBJECT TO MANDATORY
       DISALLOWANCE UNDER SECTION 502(D).**

Bankruptcy Code section 502(d), provides, in per-

tinent part, as follows:

> the court shall disallow any claim of any entity
> from which property is recoverable under section
> 542 . . . 550 . . . of this title or that is a
> transferee of a transfer avoidable under sec-
> tion . . . 547 . . . of this title, unless such en-
> tity or transferee has paid the amount, or turned
> over any such property, for which such entity or
> transferee is liable under section . . . 550 . . .
> of this title.

11 U.S.C. § 502(d).  Thus, section 502(d) expressly and un-

equivocally applies to "any claim of any entity."  See also

Central Virginia Community College v. Katz, 546 U.S. 356,

271 (2006)(noting that, under section 502(d), if the

[claimant] has a claim against the bankrupt estate, the

avoidance determination operates to bar that claim until

the preference is turned over); In re Bob Grissett Golf

Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D. Va.

1985)("[S]ection 502(d) requires that the court disallow

the claim of any entity that has been the recipient of an

avoidable transfer unless the entity has disgorged the

property.").  As the legislative history makes clear, sec-

tion 502(d) "requires disallowance of a claim of a trans-

feree of a voidable transfer in toto if the transferee has

not paid the amount or turned over the property received as

required under the sections under which the transferee's

liability arises."  H.R. Rep. No. 599, 95th Cong. 1st Sess.

354 (1977)(citing S. Rep. No. 989, 95th Cong., 2d Sess. 64

(1978)) (emphasis added).

> **A.    Section 503(b)(9) Administrative Expenses Are
> Claims.**

Section 101(5) defines "claim" to include, among

other things:

> (A) a right to payment, whether or not such right
> to payment is reduced to judgment, liquidated,
> unliquidated, fixed, contingent, matured, un-
> matured, disputed, undisputed, legal, equitable,
> secured or unsecured . . . .

See 11 U.S.C. § 101(5)(A).  As the Supreme Court has held,

the definition of "claim" is to be broadly construed and

applied.  See Pa. Dep't of Pub. Welfare v. Davenport, 495

U.S. 552, 558 (1990) ("Congress chose expansive language"

in defining "claim").  On the other hand, Bankruptcy Code

section 503(b) refers to "administrative expenses."  11

U.S.C. § 503.

That Bankruptcy Code section 503(b) uses the

phrase "administrative expense" as opposed to the word

"claim" is irrelevant.  Specifically, a number of Bank-

ruptcy Code sections use the word "claim" when referring to

administrative expenses.  For example, under section 1123(a)

"a plan shall (1) designate, subject to section 1122 of this title, classes of claims, <u>other than claims of a kind specified in section 507(a)(2)</u> . . . ." 11 U.S.C. § 1123(a)(1)(emphasis added).  Critically, section 507(a)(2) expressly refers to "administrative expenses allowed under section 503(b) of this title . . . ."  11 U.S.C. 507(a)(2).  Indeed, as the <u>Microage</u> Court pointed out, the Bankruptcy Code has numerous other sections referring to "claims" allowed under section 503(b).  <u>See</u> <u>Microage, Inc. v. Viewsonic Corp. (In re Microage, Inc.)</u>, 291 B.R. 503, 508 (B.A.P. 9th Cir. 2002) (citing statutory sections).

Moreover, the express text of Bankruptcy Code section 503(b) supports this interpretation.  Specifically, Bankruptcy Code section 503(b) provides, in pertinent part, that "[a]fter notice and hearing, there shall be allowed administrative expenses, <u>other than claims allowed under section 502(f) of this title</u> . . . [.]"  11 U.S.C. § 503(b) (emphasis added).  Had Congress intended the term "administrative expense" and "claim" to be mutually exclusive, there would have been no need to expressly exclude "claims allowed under section 502(f)" from allowed administrative expenses.  <u>See</u>, <u>e.g.</u>, <u>FCC v. NextWave Pers. Communs. Inc.</u>, 537 U.S. 293, 302 (2003) (holding that a reading that renders statutory text superfluous "must be rejected.").

7

Based on the foregoing, it is evident that Congress did not intend the term "claim" and "administrative expense" to be mutually exclusive. Rather, Congress intended administrative expenses to be a subset of claims, those claims expressly identified in Bankruptcy Code section 503.

Congress' amendments to the Bankruptcy Code in 2005 did not alter this framework. Rather, as the Court is well aware, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added new section 503(b)(9) to the Bankruptcy Code, which transformed certain pre-petition unsecured claims arising within the twenty days before the petition date into administrative expenses.[4] Specifically, Bankruptcy Code section 503(b)(9) provides, in pertinent part, that a court shall allow as an administrative expense:

> the value of any goods received by the debtor within 20 days before the commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). Thus, by definition, section 503(b)(9) administrative expenses are pre-petition claims.

---

[4]   The Debtors have found no legislative history regarding section 503(b)(9), other than that it was included in section 1227 of the BAPCPA entitled "Reclamation."

Additionally, section 503(b)(9) was enacted as part of section 1227 to amend the provisions of the Bankruptcy Code that addressed reclamation claims, which are nothing more than a particular class of pre-petition claims. See BAPCPA, section 1227; see also In re Ames Dept. Stores, Inc., --- F.3d ----, 2009 WL 2972510, *8 n.2 (2d Cir. Sep. 18, 2009) (noting that Congress amended section 546(c) in conjunction with adding section 503(b)(9)); 11 U.S.C. §§ 546(c) & 503(b)(9); Kenneth N. Klee, Chapter 11 Business Reorganizations: The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 – Business Bankruptcy Amendments, Course No. SK092 ALI-ABA Course of Study Materials (2005)(section 503(b)(9) "appears to be intended to allow certain sellers that do not properly seek reclamation in accordance with section 546(c) to have an administrative expense claim for the value of such goods.").

Thus, it is clear that section 503(b)(9) administrative expenses are claims.

**B.   The Plain Language Of Section 502(d) Makes It Applicable To Any Claim Of Any Entity.**

As this Court well knows, when a "statute's language is plain . . . the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); see also

<u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000) (stating that a fundamental principle of statutory interpretation is that "Congress 'says in a statute what it means and means in a statute what it says there'") (citation omitted).

Bankruptcy Code section 502(d) mandates that "any claim of an entity," be disallowed pending that entity's return of property to the estate.   <u>See</u> 11 U.S.C. § 502(d). In that regard, the language of section 502(d) draws no distinction among claims for which proofs of claims are filed, scheduled claims or claims for which a request for administrative expense priority treatment has been sought.

Therefore, because section 503(b)(9) administrative expenses are "claims" and each Claimant is an "entity," section 502(d) requires the 503(b)(9) Claims to be disallowed if the Claimants are the recipients of avoidable transfers that are not returned to the Debtors' estates. <u>See</u> <u>In re Thompson</u>, 329 B.R. 145, 171 (Bankr. E.D. Va. 2005) (holding that courts must presume that a "legislature says in a statute what it means and means in a statute what it says there," and when a statute is plain on its face, the court's inquiry is complete); <u>LaRoche Indus., Inc. v. General Am. Transp. Corp. (In re LaRoche Indus. Inc.)</u>, 284 B.R. 406, 408 (Bankr. D. Del. 2002)(what "Congress says in a

statute is what it means and means in a statute what it says there.")(quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6, (2000))(internal quotes omitted); see also United States v. Ron Pair Enter., 489 U.S. 235, 241, (1989)(stating that when a "statute's language is plain . . . the sole function of the courts is to enforce it according to its terms.")(cited in LaRoche, 284 B.R. at 408).

Nor may the Claimants persuasively argue that because section 503(b)(9) requires an entity to "file a request for payment of an administrative expense," as opposed to a proof of claim, section 502(d) does not apply to section 503(b)(9) claims.  First, nothing in the express statutory language of section 502(d) limits the court to disallowing only those claims for which proofs of claims have been filed.  See Microage, 291 B.R. at 508 (B.A.P. 9th Cir. 2002)(rejecting argument that section 502(d) is limited to claims for which proofs of claim must be filed). But see Durham v. SMI Industries Corp., 882 F.2d 881, 883 (4th Cir. 1989) (stating that "'claim' in section 502(d) includes only one for which a proof has been filed.").  Indeed, section 502(d) expressly requires the court to disallow the claim of any entity that is the transferee of an avoidable transfer, "[n]otwithstanding subsection[]

11

(a) . . . ."  11 U.S.C. § 502(d)(referring to subsection (a)

of section 502).   Therefore, disallowance is mandatory un-

der section 502(d) regardless of whether a party objects to

a claim "proof of which is filed under section 501 . . . ."[5]

Id.

        Second, any reading of section 502(d) that would

limit its use only to claims for which proofs of claim have

been filed is inconsistent with a number of the provisions

of the Bankruptcy Code and the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").   For example, section

521 of the Bankruptcy Code requires a debtor to file sched-

ules and statements and, under Bankruptcy Rule 3003, a

proof of claim need not be filed under section 501 unless a

debtor schedules a creditor's claim as "disputed, contin-

gent, or unliquidated."  Fed. R. Bankr. P. 3003(b)(1).

Therefore, no party in interest could object to prepetition

scheduled claims under section 502(d).  That conclusion,

however, flies in the face of Bankruptcy Rule 3007, which

does not limit objections to only claims for which proofs

of claim have been filed, but permits any party in interest

---

[5]   For this reason, the Court may disallow a claim included on the
      Debtors' schedules, if a party in interest objects on the grounds
      that the holder of such claim was the recipient of an avoidable
      transfer and such objection is sustained.

to file an objection to any claim.  See Fed. R. Bankr. P.
3007(a) and (b); 11 U.S.C. § 502(a).

Third, even assuming, arguendo, that the Claim-
ants are obligated to file a proof of claim, see Durham v.
SMI Industries Corp., 882 F.2d at 883, section 502(d) still
applies to the 503(b)(9) Claims at issue because Official
Form 10 also applies to administrative expense claims that
arise pre-petition.  See Official Form 10 ("NOTE: This form
should not be used to make a claim for administrative ex-
penses arising after the commencement of the case.") (em-
phasis added); see also In re Dana Corp., 2007 WL 1577763,
at *5 (Bankr. S.D.N.Y. 2007) ("The 503(b)(9) claims are
prepetition claims and were clearly provided for in the Bar
Date Notice. The face of the proof of claim forms even had
a separate box and checkbox for section 503(b)(9) claims
and accompanying instructions.").

Consequently, the plain language of section 502(d)
supports the conclusion that claims asserted under section
503(b)(9) were not intended by Congress to be excluded from
disallowance under section 502(d).

Notwithstanding the express, clear and unambigu-
ous language of section 502(d), at least one court has re-
jected section 502(d)'s application to section 503(b)(9)
claims.  See In re Plastech Engineered Products, Inc., 394

13

B.R. 147 (Bankr. E.D. Mich. 2008).  In Plastech, the court
held that Bankruptcy Code sections 502 and 503 are mutually
exclusive.

However, as discussed above, this holding ignores,
among other things, the express text of section 503(b).
See 11 U.S.C. § 503(b) (expressly carving out "claims al-
lowed under section 502(f)" from administrative expenses).
In short, the Plastech court's interpretation of section
503(b) renders the clause "claims allowed under section
502(f)" superfluous.  Accord NextWave, 537 U.S. at 302 (re-
jecting a statutory interpretation that render provisions
of a statute superfluous).  As this Court well knows, the
Supreme Court has made it abundantly clear that such an in-
terpretation "must be rejected".  Id.  Indeed, the Supreme
Court recently reaffirmed its holding that this Court
should interpret sections 502 and 503 "so that effect is
given to all [their] provisions, so that no part will be
inoperative or superfluous, void or insignificant[.]"
Corley v. U.S., 2009 U.S. LEXIS 2512 (U.S. Apr. 6, 2009).

Accordingly, this Court should decline to follow
Plastech and conclude that the 503(b)(9) Claims are gov-
erned in part by both 502 and 503.

14

> **C.   The Legislative History Of Section 502(d) Further**
> **Supports Its Application To 503(b)(9) Administra-**
> **tive Expenses.**

The legislative history of section 502(d) further

supports the conclusion that it applies to all claims, in-

cluding section 503(b)(9) administrative expenses.

In particular, section 57g of the Bankruptcy Act

is the precursor to section 502(d) of the Bankruptcy Code.

See H.R. Rep. No. 95-595, at 354 (1977); see also S. Rep.

No. 95-989, at 65 (1978)("Subsection (d) is derived from

present law."); Microage, 291 B.R. at 508-09.  Thus, under

applicable rules of statutory construction, section 502(d)

should be applied as its precursor was applied, absent a

specific indication that Congress intended otherwise.  See

Microage, 291 B.R. at 508-09 (citing Midlantic Nat'l Bank v.

New Jersey Dept. of Envtl. Prot., 474 U.S. 494, 501 (1986)).

Section 57g of the Bankruptcy Act was applied to adminis-

trative claims.  See, e.g., Weber v. Mickelson (In re Colo-

nial Servs. Co.), 480 F.2d 747, 749 (8th Cir. 1973) (sec-

tion 57g precludes allowance of administrative expense

claims until repayment of preferential transfers).  Thus,

Bankruptcy Code section 502(d) should likewise apply to ad-

ministrative claims.

Moreover, the legislative history suggests that

section 502(d) was drafted so as to actually capture admin-

istrative expenses.  Specifically, section 57g of the Bank-

ruptcy Act –- the precursor to section 502(d) -- provided

that:

> the <u>claims of creditors</u> who have received or ac-
> quired preferences, liens, conveyances, transfers,
> assignments or encumbrances, void or voidable un-
> der this title, shall not be allowed unless such
> creditors shall surrender preferences, liens,
> conveyances, transfers, assignments or encum-
> brances.

Law of July 1, 1898, ch. 541, § 57g, 30 Stat 560 as amended

(repealed 1979)(quoted in <u>Microage</u>, 291 B.R. at 509).  Un-

der the Bankruptcy Act, "creditors" included both pre-

petition holders of claims as well as administrative claim-

ants.  <u>See</u> <u>Microage</u>, 291 B.R. at 509; <u>City of New York v.</u>

<u>New York, N.H. & Hartford R.R. Co.</u>, 344 U.S. 293, 295-96

(1953) (defining creditors as all holders of claims of

whatever character against the debtor or its property).

     The Bankruptcy Code now defines "creditor" to

mean an "entity that has a claim against the debtor that

arose at the time of or before the [petition date] . . . ."

11 U.S.C. § 101(10)(A).  Section 502(d), however, applies

to "any claim of an <u>entity</u>"; thus, the "claim" need not be

held by a "creditor".  <u>See</u> 11 U.S.C. § 502(d).  Conse-

quently, section 502(d) was drafted to preserve the prior

practice of subjecting all claims to disallowance and

"thereby preserving the breadth of the section's applica-

tion." <u>Microage</u>, 291 B.R. at 509.

Therefore, there is no indication that Congress

intended to change the law by enacting section 502(d).  In-

deed, the legislative history makes clear that it was "de-

rived from present law." <u>See</u> H.R. Rep. No. 95-595, at 354

(1977); S. Rep. No. 95-989, at 65 (1978).  To the contrary,

as noted above, Congress actually modified certain of the

language to ensure that section 502(d) captured administra-

tive claims and, thus, that it had the same breadth as sec-

tion 57g.  Consequently, it is clear that section 502(d)

was intended to apply to all 503(b) claims.

But, the Court need not go that far.  The Debtors

are only seeking to temporarily disallow administrative ex-

pense claims arising under section 503(b)(9), which, by

their very nature and as discussed more fully below, are

claims held by creditors.  Thus, the Court must only ad-

dress whether the 503(b)(9) Claims are subject to section

502(d).

To do so, this Court need only interpret section

502(d) consistent with its precursor statute -- Bankruptcy

Act section 57g.  <u>See</u> H.R. Rep. No. 95-595, at 354 (1977);

<u>see also</u> S. Rep. No. 95-989, at 65 (1978)("Subsection (d)

is derived from present law."); <u>U.S. v. Whiting Pools</u>, 462

17

U.S. 198, 208 (1983) (holding that absent Congressional in-
tent to depart from a practice under the Bankruptcy Act,
the Bankruptcy Code should be interpreted consistent with
precedent pre-dating the Bankruptcy Code).  Under this
analysis, if each Claimant is a "creditor" within the mean-
ing of the Bankruptcy Code, section 502(d) applies.

There is no reasonable basis to conclude that
that each Claimant is anything but a "creditor".  As noted
above, "creditor" means an "entity that has a claim against
the debtor that arose at the time of or before the [peti-
tion date] . . . ."  11 U.S.C. § 101(10)(A).  Without dis-
pute, the Claimants are entities.  Also without dispute,
the Claimants each held a "claim" -- a right of payment --
for goods delivered to the Debtors.  Finally, without dis-
pute, such goods were delivered within 20 days of the Peti-
tion Date.

Based on the foregoing, it is abundantly clear
that the Claimants are creditors.  As such, under the Bank-
ruptcy Act, section 57g would have applied.  Consequently,
section 502(d) should apply and the 503(b)(9) Claims should
be temporarily disallowed.

**D.   The Policy Behind Section 502(d) Also Supports
The Conclusion That 503(b)(9) Claims Are Subject
To Mandatory Disallowance Under Section 502(d).**

Any conclusion that section 502(d) does not apply
to the 503(b)(9) Claims is at odds with the policies behind
section 502(d).  Specifically, as the legislative history
makes clear, section 502(d) "requires disallowance of a
claim of a transferee of a voidable transfer <u>in toto</u> if the
transferee has not paid the amount or turned over the prop-
erty received as required under the sections under which
the transferee's liability arises.")  H.R. Rep. No. 95-599,
at 354 (1977); <u>see also</u> S. Rep. No. 95-989, at 64 (1978)
(emphasis added).  Thus, as one court has observed:

> Section 502(d) forces preferential transferees
> into an economic position consistent with
> their alleged claim.  If the preferences are eventually
> sustained <u>and</u> are paid over to the estate, then
> and only then will these claimants have an eco-
> nomic stake in the outcome of the proceeding.
> However, without the turnover of funds, the . . .
> [d]efendants have no present financial stake in
> the outcome of the Plan, they do not have a
> claim . . . .

<u>In re Coral Petroleum, Inc.</u>, 60 B.R. 377, 383 (Bankr. S.D.
Tex. 1986).  As a consequence, application of section 502(d)
to the 503(b)(9) Claims furthers numerous important bank-
ruptcy policies.

First, section 502(d) precludes entities from re-
ceiving distribution of assets of the estate unless or un-

til the voidable transfer has been returned to the estate.
See In re Mid Atlantic Fund, Inc., 60 B.R. 604, 609 (Bankr.
S.D.N.Y. 1986)(cited by Microage, 291 B.R. at 511).  In
that regard, the application of section 502(d) to the
503(b)(9) Claims furthers the important policy objective of
maximizing distributions to creditors.  See In re Dornier
Aviation (North America), Inc., 320 B.R. 831, 839 (E.D. Va.
2005) ("A reading of § 502(d) that forces a debtor to
choose between (1) disrupting the orderly and careful proc-
essing of creditors' claims and its own avoidance actions
and (2) protecting all creditors' rights would not effectu-
ate Congress's intent as expressed in the Bankruptcy
Code."); In re Chase & Sanborn Corp., 124 B.R. 368, 370
(Bankr. S.D. Fla. 1991) ("Section 502(d) is designed to
foster the restoration of assets to a debtor's estate,
thereby assuring . . . precluding anyone who has received a
voidable transfer from sharing in any distribution or bur-
dening an estate with continuing litigation unless he first
pays back any preference that he has received.") (internal
quotations and citations omitted).

Second, section 502(d) also "is designed to as-
sure an equality of distribution of the assets of the bank-
ruptcy estate" among similarly situated parties in interest.
Campbell v. United States (In re Davis), 889 F.2d 658, 662

20

(5th Cir. 1989)(cited by <u>Microage</u>, 291 B.R. at 511); <u>see</u> <u>In
re Dornier Aviation</u>, 320 B.R. at 839 ("The bankruptcy laws
were designed to provide for both orderly procedures and an
equitable distribution of a debtor's assets."); <u>see also</u> <u>In
re U.S. Truck Co. Holdings, Inc.</u>, No. 99-59972-WS, 2000
Bankr. LEXIS 1376, at *50 (Bankr. E.D. Mich. Sept. 29, 2000)
(supporting early termination of a collective bargaining
agreement because former employees' claims would not pro-
vide new value to the estate and to permit them an extended
administrative expense claim would contravene the policies
of equitable distribution among creditors and equal treat-
ment for all similarly situated creditors).

     The application of section 502(d) to 503(b)(9)
claims furthers this purpose in two respects.  As set forth
above, the 503(b)(9) Claims are unsecured pre-petition
claims.  As such, there is simply no reason to distinguish
them from other unsecured pre-petition claims subject to
the reach of section 502(d).

     Moreover, as set forth above, if section 502(d)
were not applicable to the 503(b)(9) Claims, then certain
Claimants would receive what is tantamount to an exchange
of an administrative claim for a general unsecured claim.
Specifically, if section 502(d) does not apply to the
503(b)(9) Claims, then each Claimant would (1) receive full

payment on its 503(b)(9) Claim as an administrative expense
and (2) have the right not to return a preference payment
in exchange for only losing its right to a distribution on
a pre-petition unsecured claim.  Such Claimant is clearly
different from a holder of a 503(b)(9) claim that holds no
preference, but both claimants nonetheless receive the same
distribution.  Furthermore, granting 503(b)(9) claimants
such an option places other holders of allowed 503(b)(9)
claims at greater risk for non-payment, _i.e._, there are
more allowed 503(b)(9) claims and less available funds to
distribute.  This is plainly an inequitable result.  See In
re Dow Corning Corp., 244 B.R. 634, 649 (Bankr. E.D. Mich.
1999) (stating that an important policy of bankruptcy is
"loss distribution in an equitable way among the creditors
and the debtor").

Third, section 502(d) "is intended to have a co-
ercive effect of insuring compliance with judicial orders."
In re Davis, 889 F.2d at 661.  As set forth above, if sec-
tion 502(d) does not apply to the 503(b)(9) Claims, an or-
der requiring a transferee to return a preference payment
is only as forceful as the unsecured distribution that the
transferee would forego.  At this time, distributions to
unsecured creditors are speculative and subject to many
variables.  Thus, section 502(d) would have limited coer-

cive effect.  If, however, section 502(d) applied to the 503(b)(9) Claims, its coercive effect would be significant because transferees would have to return payments in exchange for payment on claims that would receive a 100% cash distribution.

And, finally, a broad reading of section 502(d) is consistent with Congressional intent to preserve for the debtor's estates the broadest range of defenses as against any entity.  See 5 Collier on Bankruptcy ¶ 558.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008); In re PSA, Inc., 277 B.R. 51, 54 (Bankr. D. Del 2002) ("Since § 558 of the Bankruptcy Code preserves Debtors' setoff rights as provided by [state] law and the prepetition/postpetition distinctions are irrelevant under § 558, Debtors may offset . . . claim against amounts owed to Debtors . . . .").  Specifically, as set forth above, Bankruptcy Code section 558 expressly provides "The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including . . . personal defenses."  11 U.S.C. § 558.  A broad reading of section 502(d) that permits the estate to use it as an affirmative defense against 503(b)(9) pre-petition claims is thus also supported by section 558.

23

In sum, the policies behind section 502(d) and the Bankruptcy Code in general are furthered, not undermined, by the application of section 502(d) to administrative expense requests under section 503(b)(9).  Thus, on this basis as well, this Court should temporarily disallow the 503(b)(9) Claims.

## II.  THE BETTER REASONED CASES SUPPORT THE CONCLUSION THAT SECTION 502(D) SHOULD APPLY TO CLAIMS ASSERTED UNDER SECTION 503(B)(9).

The reasoning of the majority of cases addressing administrative claims under section 503(b) in general further supports the conclusion that section 502(d) is properly used as a defense to claims under section 503(b)(9). See In re Larsen, 80 B.R. 784, 790-91 (Bankr. E.D. Va. 1987) (stating that "regardless of [the claims'] priority status, this Court further finds that . . . [claimant] has failed to return unauthorized post-petition preferential transfers avoidable under § 549, for which she would be liable under § 550, thus her claims are barred by the terms of § 502(d) . . . ." (emphasis added)); Microage, 291 B.R. at 512 (concluding that "section 502(d) should have been raised as an affirmative defense before the bankruptcy court entered an order allowing [the administrative] claim"); see also Weber v. Mickelson (In re Colonial Servs. Co.), 480 F.2d 747, 749 (8th Cir. 1973)(section 57g pre-

24

cludes allowance of administrative expense claims until re-
payment of preferential transfers); Movitz v. Baker (In re
Triple Star Welding, Inc.), 324 B.R. 778, 794 (B.A.P. 9th
Cir. 2005) (concluding that administrative expense sought
for $12,993.75 could not be paid from estate until claimant
returned preference); Tidwell v. Atlanta Gas Light Co. (In
re Georgia Steel, Inc.), 38 B.R. 829, 839-40 (Bankr. M.D.
Ga. 1984) (concluding that claimant could not setoff an
otherwise allowable administrative expense against prefer-
ential transfers recoverable by trustee); Hudson Feather &
Down Prods., Inc. v. B&B Assoc., Inc. (In re Hudson Feather
& Down Prods., Inc.), 22 B.R. 247, 253 (Bankr. E.D.N.Y.
1982) (requiring surrender of preference before a claim can
be allowed).  Cf. In re Eye Contact, Inc., 97 B.R. 990, 992
(Bankr. W.D. Wis. 1989) (disallowing priority wage claim
under section 502(d) because claimant had received certain
avoidable bonus payments).

        Similarly, in Bob Grisset, a court in this dis-
trict held that, under the mandate of section 502(d), "the
Court must condition allowance of any claim for administra-
tive rent upon the Landlord's [sic] disgorging of the
[avoidable transfers]." Bob Grisset, 50 B.R. at 607.  At
the time Bob Grisset was decided, administrative rent was
payable under Bankruptcy Code section 503(b), rather than

under section 365(d)(3).[6]  Accordingly, by applying section
502(d) to the landlord's administrative rent claim, the
court was applying section 502(d) to an administrative ex-
pense under section 503(b).  See Bob Grisset, 50 B.R. at
607 (describing the post-petition claims as "administrative
rent" (emphasis added)).

Nor should this Court follow those courts that
reached a contrary conclusion.  See Ames, 2009 WL 2972510
at *8; Camelot Music, Inc. v. MHW Advertising & Public Re-
lations Inc. (In re CM Holdings, Inc.), 264 B.R. 141, 158
(Bankr. D. Del. 2000); In re Lids Corp., 260 B.R. 680, 683
(Bankr. D. Del 2001).

Specifically, in In re Ames, the Second Circuit
held that section 502(d) does not apply to administrative
expenses under section 503(b).  In that case, the Court was
persuaded that Congress intended to differentiate between
claims and administrative expenses, and that section 502(d)
did not apply to administrative expenses generally.  See In
re Ames, 2009 WL 2972510, at *6.

The court in Camelot Music, Inc. v. MHW Advertis-
ing & Public Relations Inc. (In re CM Holdings, Inc.),

---

[6]   Bankruptcy Code section 365(d)(3) was enacted by Pub. L. 98-353 and
was applicable to cases filed 90 days after the July 10, 1984 effec-
tive date.

based its holding on the same rationale.  In re CM Holdings,
Inc., 264 B.R. 141, 158 (Bankr. D. Del. 2000) (concluding
that section 502(d) was not applicable to a postpetition
administrative expense claim partly because such claims are
entitled to "distinct treatment separate and apart from
pre-petition, or deemed pre-petition, creditor claims."
(emphasis added)).

Moreover, the bankruptcy court in In re Lids Corp,
reasoned that "if trade vendors felt that a preference
could be used to prevent the payment of their administra-
tive claims, they would be extremely reluctant to extend
post-petition credit to a chapter 11 debtor," causing a po-
tentially devastating effect on a debtor's ability to reor-
ganize.  Lids, 260 B.R. at 683 (emphasis added).

In these instances, the courts were persuaded by,
among other things, general policy arguments underlying
chapter 11 cases.  See, e.g., In re Lids, 260 B.R at 683-84
(discussing that applying 502(d) to 503(b) claims would
subvert the priority and incentive for potential claimants
to do business with the debtors after the commencement of
the case).  However, the courts ignored the clear congres-
sional mandate that 502(d) should be applied broadly.  See
H.R. Rep. No. 599, 95th Cong. 1st Sess. 354 (1977) (section
502(d) "requires disallowance of a claim of a transferee of

27

a voidable transfer _in toto_ if the transferee has not paid

the amount or turned over the property received as required

under the sections under which the transferee's liability

arises") (citing S. Rep. No. 989, 95th Cong., 2d Sess. 64

(1978)) (emphasis added).

Even assuming, _arguendo_, that such cases were

correctly decided, their application to Bankruptcy Code

section 503(b)(9) is inappropriate.  These cases involved

post-petition administrative claims, not pre-petition

claims.  Specifically, in _Ames_ and _Lids_, the courts rea-

soned that section 502(d) "generally deals only with the

allowance of pre-petition claims . . . ."  _In re Lids_, 260

B.R at 683; _see also In re Ames_, 2009 WL 2972510, at *7

("The clarifying final phrase - '_the same as if such claim_

_had become fixed before the date of the filing of the peti-_

_tion_' - is further evidence that section 502(d) . . . ordi-

narily applies only to prepetition claims." (emphasis in

original)).  Those courts also concluded that because sec-

tion 502(d) expressly applied to only five types of post-

petition claims, it could not be applied to post-petition

claims not specifically identified in section 502(d).  _See_

_In re Ames_, 2009 WL 2972510, at *7 (reasoning that section

502(d) does not apply to post-petition claims outside of

those specifically included in section 502); _In re Lids_, at

683-84 (same).  As demonstrated above, however, the
503(b)(9) Claims are not post-petition claims; they are
pre-petition claims.  See 11 U.S.C. § 503(b)(9) (allowing
administrative expense claim for the "value of goods re-
ceived by the debtor within 20 days before . . . the com-
mencement of a case")(emphasis added).  Consequently, the
Court's reasoning in Ames and Lids is inapposite.

Nor is the court's other basis for concluding
that section 502(d) is not a valid defense to a section
503(b)(9) claim persuasive.  Specifically, in Lids, the
court reasoned that the application of section 502(d) to
post-petition administrative expense claims would subvert
the priority and incentive for potential claimants to do
business with the debtors after the commencement of the
case.  Id., at 683-84.  Once again, such a consideration is
simply not applicable with respect to section 503(b)(9)
claims.  There is simply no reason to believe that the as-
sertion of a preference defense in response to a request
for allowance of a section 503(b)(9) claim would subvert
the priority scheme of the Bankruptcy Code or the incentive
for vendors to do business with the Debtors.

Accordingly, this Court should follow those cases
that held section 502(d) applies to 503(b)(9) administra-
tive expense claims.

III. **THE COURT SHOULD TEMPORARILY DISALLOW THE 503(B)(9)
CLAIMS PENDING RESOLUTION OF ANY SECTION 502(D)
OBJECTION AND THE RETURN OF ANY AVOIDABLE TRANSFERS.**

A.   **Controlling Precedent Requires That The 503(b)(9)
Claims Be Held In Abeyance Pending An Adjudica-
tion Of The Section 502(d) Objection.**

As set forth above, the Debtors records show that
the Claimants were the recipients of Preferential Transfers,
which transfers were made on account of antecedent debts,
made within 90 days of the Petition Date and while the
Debtors were presumed insolvent, that allowed the Claimants
to receive more than they would had such transfers not been
made, and are likely not subject any new value defense.
Based on these facts, there is a colorable claim that the
Preferential Transfers are avoidable under Bankruptcy Code
section 547.  See 11 U.S.C. § 547(b) (setting forth the re-
quirements of an avoidable transfer thereunder).

At this time, the Debtors have not commenced any
avoidance actions with respect to the Preferential Trans-
fers.  Indeed, the Debtors are still well within the time
limits set by Bankruptcy Code section 546(a) to do so.
Notwithstanding the foregoing, because the facts suggest
that the Claimants may have received one or more avoidable
transfers, the Section 503(b)(9) Claims should be held in
abeyance up to the amount of the Preferential Transfers

pending resolution of any avoidance actions against the

Claimants.

The Debtors seek this more limited relief, not-

withstanding authority to the contrary.  Specifically, in

<u>Katchen v. Landy</u> the United States Supreme Court determined

that:

> Subsection g [of § 57 of the Bankruptcy Act] for-
> bids the allowance of a claim when the creditor has
> 'received or acquired preferences . . . void or
> voidable under this title' absent a surrender of
> any preference.

<u>Katchen</u>, 382 U.S. 323, 330 (1966)(citation omitted).

More importantly, the Supreme Court went on to con-

clude that:

> Unavoidably and by the very terms of the Act, when
> a bankruptcy trustee presents a s57, sub. g objec-
> tion to a claim, <u>the claim can neither be allowed</u>
> <u>nor disallowed until the preference matter is adju-</u>
> <u>dicated</u>.

<u>Id.</u> (emphasis added).

Accordingly, as the majority of courts have held,

pursuant to section 502(d), a claim may not be allowed if

there is an outstanding unresolved objection to the allow-

ance of such claim based upon the claimant's alleged re-

ceipt of a transfer avoidable under section 547 of the

Bankruptcy Code, among others.  <u>See</u>, <u>e.g.</u>, <u>Weber</u>, 480 F.2d

at 749 (when objection to claim raised under section 57(g)

of Bankruptcy Act, claim is held in "abeyance" until pref-

erence is surrendered); In re Am. West Airlines, Inc., 217 F.3d 1161 (9th Cir. 2000) (judgment of liability in preference action not prerequisite to 502(d) objection); In re Sierra-Cal, 210 B.R. 168, 173 (Bankr. E.D. Cal. 1997) (citing Katchen for the proposition that "the mere assertion of a prima facie § 502(d) defense is sufficient to place the claim in a status in which it is neither allowed nor disallowed").

Other courts have held that section 502(d) is not applicable until the debtor receives a judgment against the claimant.  See, e.g., Lids Corp., 260 B.R. at 684 (alternative holding that "[until] the Debtor obtains a judgment against [a claimant] upon which [the claimant] is liable . . . section 502(d) is not applicable.").  However, these courts ignore the plain language of Bankruptcy Code section 502(d), which expressly provides that "the court shall disallow any claim of any entity from which property is recoverable . . . ."  In re Red Dot Scenic, Inc., 313 B.R. 181, 185 (Bankr. S.D.N.Y. 2004)("The plain language of section 502(d) does not condition disallowance on the transferee's failure to satisfy a judgment; instead, it states that 'the court shall disallow any claim of any entity from which property is recoverable . . .'" (emphasis in original)).

This conclusion is further supported by the lan-
guage of section 502(a) and the numerous cases that hold
that section 502(d) may be used defensively.  Specifically,
under section 502(a) a claim is allowed unless a party ob-
jects.  See 11 U.S.C. § 502(a).  Thus, upon an objection to
a proof of claim, the claim is neither allowed nor disal-
lowed.

More importantly, as a number of courts have held,
even when a preference action is time-barred and, thus, a
debtor precluded from commencing an adversary proceeding,
the trustee may use section 502(d) as a basis for disallow-
ing a claim.  See, e.g., In re Larsen, 80 B.R. at 791 (not-
ing that "statute of limitations may bar an affirmative
claim against [claimant]," but finding that "no policy or
statutory reason" exists to prevent debtor from asserting
an unreturned preference as a defense); Commodity Credit
Corp. v. Nat'l Dairy Promotion & Research Bd. (In re KF
Dairies, Inc.), 143 B.R. 734, 736 (B.A.P. 9th Cir. 1992)
(holding that section 502(d) requires disallowance of unre-
linquished avoidable claims, even if estate's right to
bring an avoidance action is time-barred); U.S. Lines, Inc.
v. United States (In re McLean Indus.), 184 B.R. 10, 14
(Bankr. S.D.N.Y. 1995) (noting that section 502(d) requires
disallowance of claimant's claim if the claimant fails to

33

relinquish an otherwise avoidable transfer and concluding
that this general rule applies regardless of "the expira-
tion of the statute of limitation under section 546(a)(1)"),
aff'd, 196 B.R. 670 (S.D.N.Y. 1996).

Here, the Debtors object to the Claimants section
503(b)(9) Claims.  In the Objection, the Debtors asserted
that a portion of the Claimants' Section 503(b)(9) Claims
should be held in abeyance until the Preferential Transfers
are recovered.  Thus, the Debtors used section 502(d) de-
fensively in accordance with the overwhelming weight of au-
thority.

**B.    The Efficient Adjudication Of Claims Allowance
      Matters Warrants Holding The Allowance Of
      503(b)(9) Claims In Abeyance.**

As this Court is well aware, section 547(c)(4)
provides a creditor with a "new value" defense to a claim
that the creditor received an avoidable preference.  See 11
U.S.C. § 547(c)(4).  As explained by the Fourth Circuit:

> A creditor is entitled to offset preference pay-
> ments through the extension of new value to the
> debtor so long as the debtor does not make an
> otherwise unavoidable transfer on account of the
> new value.

In re JKJ Chevrolet, Inc., 412 F.3d 545, 552 (4th Cir. 2005)
(emphasis in original); see also In re E-Z Serve Conven-
ience Stores, Inc., 377 B.R. 491, 500 (Bankr. M.D.N.C. 2007)
(analyzing proper interpretation of "new value" for pur-

poses of § 547 (c)(4)).  Section 547(a)(2) defines "new value" to include "money or money's worth in goods . . . . " 11 U.S.C. § 547(a)(2)(emphasis added).

It is thus possible, and indeed likely, that in many instances a 503(b)(9) Claimant will be both (i) seeking an administrative payment for goods delivered in the 20 days prior to the commencement of a case under section 503(b)(9) and (ii) using the delivery of those same goods as the basis for a new value defense to an alleged preference under sections 547(a)(2) and (c)(4).  If a 503(b)(9) Claimant could prevail on both the section 503(b)(9) claim and the new value defense, a less favorable distribution to at least some claimants would necessarily occur.  The 503(b)(9) Claimant would receive full payment on the section 503(b)(9) claim and the estate would be deprived of the value of any preferential payments that are shielded by the new value defense.

Thus, to avoid this inequitable result, the efficient administrative of the claims resolution process supports the Court holding in abeyance the allowance of the 503(b)(9) Claims pending the final resolution of any section 502(d) objection based upon the Claimant's alleged receipt of a Preferential Transfer.  In that respect, by requiring an alleged transferee to litigate a preference ac-

35

tion prior to or at the same time as determining the al-
lowed amount of each 503(b)(9) Claim, the Court would en-
sure that the claimant not receive a windfall.  The alleged
transferee will be required to use some or all of the value
of the goods delivered in the last 20 days before the com-
mencement date of a case as part of the Claimant's new
value defense.  As a result, the transferee would receive
full value for any goods delivered and, thus, such Claim-
ant's 503(b)(9) Claim should be appropriately reduced by
such amount.

Furthermore, even if the Court were to conclude
the section 502(d) did not apply to the 503(b)(9) Claims,
it should still not allow such claims until the estate re-
ceives payment from the Claimants on account of any Prefer-
ential Transfers they received.  Thus, even if 502(d) does
not mandate disallowance of a 503(b)(9) claim, the impor-
tant bankruptcy policies set forth above justify having the
Claimants first return the preferences and then receive
back distributions on account of any allowed 503(b)(9)
Claim.  See Gonzales v. Food Mktg. Group (In re Furr's Su-
permarkets, Inc.), 320 B.R. 1, 14-15 (Bankr. D.N.M. 2004)
("FMG is entitled to its administrative claim and to dis-
tribution thereon. But the orderly way to address that
problem is to have FMG return the preferences . . . to the

36

estate and then receive back its . . . share of the distri-

bution on its administrative claim.").

    **C.**    **Any Allowance Of A 503(b)(9) Claim Must Be With-
out Prejudice To The Debtors' Rights To Assert
Claims Under Section 547.**

    Finally, if the Court determines that the Debtors

may not use section 502(d) as defense to the 503(b)(9)

Claims and the Court otherwise allows such Claims now or in

the future, the Court should only allow such claims without

prejudice to the Debtors' right to assert preference claims

against the Claimants.  Specifically, there is some author-

ity for the proposition that "if a claim is allowed there

is no longer a voidable transfer from the claimant."  <u>See</u>

<u>LaRoche Indus.</u>, 284 B.R. at 408. Thus, if the Court allows

any 503(b)(9) Claim, such allowance should be without

prejudice to the Debtors' right to assert that a Claimant

was the recipient of a voidable transfer, such as a prefer-

ence.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the
Debtors respectfully request that the Court enter an order
granting the Debtors the relief requested herein and such
other relief as is just and proper.

Dated: October 13, 2009    SKADDEN, ARPS, SLATE, MEAGHER
       Richmond, Virginia   & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-
0636 (302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley _____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debt-
ors in Possession