THOMAS J. WEISS, State Bar No. 63167
HYRUM K. HUNT, State Bar No. 222110
**WEISS & HUNT**
1925 Century Park East, Suite 2140
Los Angeles, California 90067
Telephone: (310) 788-0710
Facsimile: (310) 788-0735

Attorneys for Plaintiff UNICAL
ENTERPRISES, INC., a California
corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNICAL ENTERPRISES, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIRCUIT CITY STORES, INC., a corporation; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV06-6384 GPS (CTx)<br><br>Hon. George P. Schiavelli<br><br>OPPOSITION OF PLAINTIFF UNICAL ENTERPRISES, INC., TO DEFENDANT CIRCUIT CITY STORES, INC.'S NOTICE OF MOTION AND MOTION IN LIMINE CONCERNING PAROL EVIDENCE RULE<br><br>Pretrial Conference: May 12, 3008<br>Time: 11:00 a.m.<br>Courtroom: 7<br><br>Trial Date: June 3, 2008 |

The motion in limine re the parol evidence rule should be denied because:

1. The alleged integration clause does not purport to cover the entire commercial relationship between plaintiff and the purchaser Circuit City.

2. The possible application of the parol evidence rule turns on the admission into evidence of preliminary facts which are likely to be disputed, such as the offer of Ms Joan Pinoos to purchase the forecast models, and whether or to what extent Circuit City had discretion to decline to take the forecast models and quantities, and the course of dealing and wage of trade.

///

A - 1


EXHIBIT A

3. The principles of promissory estoppel may apply if plaintiff reasonably relied on Circuit City's forecasts and vendor policies to purchase inventory which became stranded when Circuit City arbitrarily refused to honor the purchase forecasts.

At page 7, lines 1-3, of its motion defendant appears to acknowledge a key contention of plaintiff, namely that there were reasonable limits on Circuit City's discretion to ignore its own forecasts and cease forecast purchases: "Specifically, Unical agreed to provide a certain quantity of telephones to Circuit City, at a guaranteed price, depending on Circuit City's needs for the product." Plaintiff contends that the relationship was essentially a requirements contract for the identified models, and that the forecasts are the rolling estimates of those requirements. Because Circuit City required plaintiff to be ready to supply quantities of product in accordance with the forecasts, and because Circuit City describes these forecasts as its expected needs, Circuit City cannot claim the right to then treat them as meaningless. It is one thing for Circuit City to say that it cannot guaranty that its needs will match the forecast, but it is quite another thing to say that even if the forecasts are accurate as to Circuit City's needs, at any time and for any reason Circuit City can purchase those requirements from any source it wishes, regardless of harm to plaintiff.

The motion in limine is based on the theory that Circuit City has absolutely no obligation of good faith in making forecasts or disregarding them. That argument flies in the face of commercial reasonableness and is counter to Circuit City's own published material, fairly interpreted.

Even the text of the parol evidence statute relied on by defendant provides a standard of commercial reasonableness as a supplement to the language of forms or other documents. See California Com. C. Section 2202, which provides that confirmatory memoranda "may be explained or supplemented

    (a) by course of dealing, course of performance, or usage of trade and

    (b) by evidence of consistent additional terms unless the court finds the writing

A - 2

1  to have been intended also as a complete and exclusive statement of the terms of the
2  agreement."
3      Plaintiff submits that this court should be guided by <u>Hegglade-Marguleas-
4  Tenneco, Inc v. Sunshine Biscuit, Inc</u> (1976) 59 Cal.App.3d 948, which interpreted
5  Section 2202 in circumstances analogous to ours. In that case, the seller sued to
6  enforce sale of a specific quantity of potatoes. The defendant buyer contended that
7  even though the contracts specified 100,0000 cwt sacks of potatoes, in fact the
8  usages of the trade regard the specified quantities only as estimates of the buyer's
9  actual requirements, and that the parties effectively had a requirements contract.
10 Seller objected that "the quantity terms in the contracts are definite and
11 unambiguous," and therefore that the parol evidence rule barred evidence of any
12 usage or custom to consider the amounts as reasonable estimates rather then actual
13 quantities. The appellate court disagreed, holding that evidence of the party's
14 reasonable expectations based on the usage and custom in the trade could be received
15 even though the exact quantities to be purchased were specified in the contract. The
16 court pointed out that "because the marketing contracts are signed eight or nine
17 months in advance of the harvest season, common sense dictates that the quantity
18 would be estimated by both the grower and the processor." 59 Cal.App. 3d 957.
19     Further relevant to our circumstances, the court noted that its conclusions were
20 consistent with a Fourth Circuit case interpreting Virginia law concerning the same
21 language. <u>Columbia Nitrogen Corporation v. Royster Company</u> (4th Cir., 1971) 451
22 F.2d 3. In that case, the court held that unless the contract between the parties
23 specifically excludes trade usage to explain or supplement the written terms, such
24 customs or usages are admissible. 59 Cal.App.3d 955.
25     In our case, there will be abundant evidence that the course of dealing between
26 Circuit City and its vendors does not support the assertion that forecasts are
27 meaningless and that Circuit City has absolutely no obligation to its vendors until and
28 unless a specific purchase order is actually received by the vendor for a specific

1  quantity of goods. Indeed, Circuit City would go beyond even such a commercially
2  unreasonable interpretation, arguing that even if it does purchase the goods it could
3  arbitrarily return them for any reason or no reason.

4  Circuit City does not even mention, let alone distinguish, this clearly relevant
5  case. Hegglade was cited with approval for the same proposition in New West Fruit
6  Corporation v. Coastal Berry Corporation (1991) 1 Cal.App.4th 92, 99. The court
7  there observed, "As in any contract interpretation task. . .we must look to the
8  reasonable expectations of the parties. . . An 'agreement' under the Uniform
9  Commercial Code, 'means the bargain of the parties in fact as found in their language
10 or by implication from other circumstances including course of dealing or usage of
11 trade or course of performance. . .' (Sec. 1201, subd. (3); Sec. 2202; Sec. 2208; see
12 Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc. (1976) 59 Cal.App. 3d
13 948, 955.)"

14 Our case is a simple variation of the circumstances of Hegglade, but presents
15 exactly the same principle. The buyer (Circuit City) insists the specified quantity is
16 effectively zero, because protective language used in Circuit City's forms arguably
17 disclaims any obligation to purchase any particular quantity, while the seller (Unical)
18 is contending that the only reasonable interpretation of the contractual relationship,
19 including course of dealing, supplemental promises, and custom of the trade, is that
20 Unical will supply Circuit City's requirements, measured by some good faith
21 standard, evidenced in part by written forecasts.

22 Moreover, Circuit City's integration clause language does not even purport to
23 cover the entire contractual arrangement between plaintiff and defendant. The
24 February 3, 2004 letter agreement recites that its purpose is "to establish the terms
25 upon which Unical Enterprises will sell and Circuit City Stores, Inc. will buy the
26 products set forth on the attached Exhibit 1 ('Products')." Exhibit 1 specifies three
27 models and corresponding quantities of each. The letter, at the last clause under
28 "miscellaneous," says "This Agreement, including any documents incorporated

1  herein, constitutes the entire agreement between the parties hereto with respect to the
2  subject matter hereof and supersedes any prior agreements between the parties with
3  respect to such subject matter." The "subject matter hereof," is models 35800,
4  35807, and 35808, in the respective quantities of 42,000, 30,000 and 25,000.
5  Nothing more. Nor does this contract exclude the supplemental provisions of Section
6  2202 of the Commercial Code, which is the same in both Virginia and California. Nor
7  is there any reference to the forecasts as to any models. Rather, page 1 of the
8  document says simply, "Circuit City shall purchase the Products at the price set forth
9  on Exhibit 1." Yet Circuit City tries to argue that this really means Circuit City
10 doesn't have to purchase anything.
11     For purposes of its motion, defendant must admit that the parol evidence
12 proffered by Unical will tend to show that Circuit City made an oral commitment on
13 the other three models, at or about the same time it made the commitment on the three
14 models mentioned in the agreement. There is nothing inherently contradictory to the
15 letter agreement for Circuit City to agree, as part consideration, to purchase its
16 requirements of certain other models from Unical. In fact, if Circuit City is
17 contending that any such agreement regarding the forecast quantities was not part of
18 the February 3 agreement, but was separate, then there is no rationale for using the
19 February 3 agreement to bar evidence of those other agreements. Circuit City appears
20 to recognize this problem in its description of plaintiff's claims as "tethered" to the
21 February 3 letter. Of course, the limited integration clause says nothing about other
22 agreements which are "tethered" to the February 3 agreement.
23     Circuit City also tries to argue that the forecasts were "merely" "a planning
24 tool." But of course Circuit City does not cite any portion of the February 3, 2004,
25 letter, nor any other documents by which Circuit City so belittles its own forecasts.
26 Circuit City argues that since Mr. Cottogio recognized that the forecasts are not an
27 unequivocal commitment to purchase the forecast quantities, somehow he has
28 admitted that the forecasts are meaningless and that the vendor, Unical, should

1 therefore just assume they are false. But the truth is that the evidence will show that
2 the parties treated the forecasts seriously. For instance, the evidence will show that
3 one of the documents the direct vendor import guide, in fact describes the order
4 forecast as one of the "Key Steps for Vendor," and the description of the role of the
5 forecast in the supply process definitely does not tell the vendor that he should not
6 take the forecasts seriously. In fact, the contrary is true. The vendor must rely on
7 them to maintain capacity to fill orders.

8     Non-party witness Bruce Penslar testified at his deposition to the effect that he
9 was familiar with Circuit City's forecasts, and that the rolling forecasts could be
10 revised upward or downward within a range of plus or minus 20 percent, but not that
11 they were meaningless or could be disregarded entirely. In fact, the Circuit City
12 personnel insisted that the vendors maintain capacity to deliver per the forecasts
13 otherwise they could be terminated as suppliers. See deposition of Penslar, 37:22-
14 40:2; 44:2-45:7.22:12-24:2; 27:20-29:18.

15     Circuit City had a policy of evaluating and ranking its suppliers as to how well
16 they maintained the delivery schedules based on the forecasts. Circuit City should
17 not now be heard to disclaim the materiality of the very same forecasts to which they
18 required their suppliers to commit.

19     Finally, the motion fails to address the established California jurisprudence on
20 application of the parol evidence rule to proffered evidence. In sum, it holds that you
21 cannot apply the parol evidence rule in a vacuum, but only in the context of
22 provisional consideration of specific evidence, to determine whether the evidence
23 supports a meaning to which, in the entire context of circumstances, is a reasonable
24 one. Tahoe National Bank v. Phillips (1971) 4 Cal. 3d 11.

25     Circuit City also claims to rely on selected snippets from the "Supply Chain
26 Standards" and "Direct Import Guide" documents, without even attempting an
27 evaluation of them as a whole. Suffice it to say that the more documents and
28 standards which Circuit City attempts to somehow incorporate by reference into the

A-6

relationship with its vendors, the more complicated that relationship becomes and the more open to ambiguity and modification.

For all of the foregoing reasons, the motion should be denied.

WEISS & HUNT

By: _____
Thomas J. Weiss

A — 7

## DECLARATION OF THOMAS J. WEISS

I, THOMAS J. WEISS, declare and state:

1. I am an attorney for plaintiffs in the above-entitled matter. If called as a witness in this action I could and would testify to the following facts, which are within my personal, first-hand knowledge.

2. Attached hereto as Exhibit 1 are true and correct copies of the following pages from the deposition of Bruce Penslar, taken March 14, 2008:

Page 22, line 12 to page 24, line 2

Page 27, line 20 to page 29, line 18.

Page 33, line 2 to page 45, line 7

Page 37, line 22 to page 40, line 2;

I declare under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September 16, 2009, at Los Angeles, California.

_____
THOMAS J. WEISS

WEISS & HUNT
1925 CENTURY PARK EAST • SUITE 2140 • LOS ANGELES, CALIFORNIA 90067

A-8