THOMAS J. WEISS, State Bar No. 63167
HYRUM K. HUNT, State Bar No. 222110
**WEISS & HUNT**
1925 Century Park East, Suite 2140
Los Angeles, California 90067
Telephone: (310) 788-0710
Facsimile: (310) 788-0735

Attorneys for Plaintiff UNICAL
ENTERPRISES, INC., a California
corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNICAL ENTERPRISES, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIRCUIT CITY STORES, INC., a corporation; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV06-6384 GPS (CTx)<br><br>Hon. George P. Schiavelli<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UNDER RULE 50<br><br>Trial Date:    June 3, 2008 |

1. **SUMMARY OF ARGUMENT.**

The Rule 50(a) motion is without merit for several reasons:

1. The textual evidence is strong, if not determinative, that the defendant was obligated to buy the goods. Defendant says only that plaintiff relies on the language of the contract which says "will buy" and "shall buy," but defendant omits mention of the further clause which says three times that in case of any conflict between the terms incorporated by reference and the provisions of the letter agreement, "this Agreement will control."

2. In order to argue the contrary, defendant has to contend that the language "shall buy" and "will buy" is ambiguous, and has to be interpreted in light of extrinsic evidence. In fact, it was Circuit City which tried to make that argument, offering

C-1


EXHIBIT C

evidence, for instance, that the Unical personnel thought it was important to have a purchase order before shipping goods. That testimony actually was perfectly consistent with plaintiff's interpretation of the Agreement since the purchase order is the means of execution of the purchase not the document creating the purchase obligation. But the jury must weigh that evidence, if it is to be considered at all. Mr. Cotaggio also testified that Circuit city never disclaimed the obligation to purchase. Such evidence cannot be weighed in a Rule 50(a) motion for judgment as a matter of law.

3. Whatever the cancellation and return rights in the contract, the evidence was that the defendant never did resort to the returns or cancellations provisions, and the fact that those options existed actually support the reality of the "will buy" and "shall buy" clauses of the contract.

4. Defendant's argument that the damages limitations clause effectively makes the contract illusory is self-defeating. At trial, defendant did not so argue and did not provide evidence that the plaintiff was not damaged. The remedies provisions of Article 2 are to be liberally interpreted. In any event, there was ample evidence of actual damages.

Defendant admits that the motion under Rule 50 is one made on questions of law only, not on the weighing of evidence or evaluations of credibility. McSherry v. City of Long Beach (9th Cir., 2005) 423 F.3d 1015, 1020 (standard for motion under Rule 50 is same as motion for summary judgment, but Rule 50 is not intended as an alternative mechanism for obtaining summary judgment). Here a scrutiny of the explicit terms of the contract support plaintiff's contention that the agreement is for the purchase of goods, not for the unilateral obligation of plaintiff to supply the goods for sale and the unilateral right of defendant to do nothing or anything it wanted.

///
///
///

2.  **THERE IS NO EXPLICIT LANGUAGE ABSOLVING DEFENDANT ALL OBLIGATIONS TO BUY PRODUCTS.**

Defendant's Rule 50 motion is based primarily upon the contention that the contract documents on their face do not obligate the defendant to buy any goods, and that a jury could not find otherwise. Defendant, however, does not specifically cite any provisions of the February 3, 2004 Letter Agreement, Exhibit 15, which defendant claims are dispositive of plaintiff's claim. Instead, defendant only argues generally that the supplemental materials cross-referenced in the Letter Agreement negate any obligation of defendant actually to purchase any goods. Defendant argues that Unical agreed to the "terms of the eRFP," and the terms of the "Purchase Order" and "Supply Chain Standards and Terms and Conditions," which defendant contends somehow excuse defendant from any and all purchase obligations.

Although defendant also notes that the agreement allowed defendant to terminate the Agreement at any time "upon 30 days' written notice to vendor," defendant admits that defendant never gave any such written notice. Defendant further notes that the agreement gave the defendant the right to return any inventory for reimbursement at the price paid. The Agreement provides a number of circumstances under which the defendant can return goods, but none of them apply. Moreover, defendant is not relying on any such provision because there is admittedly no evidence that defendant ever returned any of these goods. It just failed and refused to purchase them.

Defendant argues essentially that none of these provisions really has any meaning because the true meaning of the agreement is simple: that defendant undertakes no obligation at all by virtue of the contract. That makes no sense, and is not in fact supported by the text.

Moreover, the text on page two of the Agreement does not in fact contain a plenary right to return inventory. That provision is part of the termination for cause paragraph on the fourth page of the Agreement, and does not refer to the clause on

C-3

1  page one which would allow defendant the right to terminate for no reason under the
2  30-day notice provision. But that doesn't matter anyway, because defendant admits
3  there never was a written notice of termination. Contrary to the explicit text of the
4  Agreement, defendant contends that it doesn't matter "when the Agreement
5  terminated, and whether it terminated through expiration of the twelve-month period
6  or by Ms Fullam's written notice provided on July 8, 2005." But that is merely a
7  rhetorical attempt to sweep the dirt under the rug. The July 8 e-mail does not even
8  purport to be a notice of termination, nor give any 30-notice of any kind. Nor is it
9  reasonable to construe the Agreement as allowing a written notice of termination after
10 the 12-month term to wipe out the previous obligation to purchase goods during that
11 term.
12 3.   **THERE IS SUBSTANTIAL EVIDENCE OF DAMAGES.**
13    The seller remedies provisions of the Uniform Commercial Code, both in
14 California and in Virginia, give a wide range of remedies to the aggrieved seller, the
15 general aim being to put the aggrieved seller in the position it would be had the buyer
16 performed. Sections 2703, 2704, 2705, 2706, 2708, 2709. Defendant argues that as
17 a matter of law there is insufficient evidence of damages. But this argument really
18 only amounts to an attempt to discredit the testimony of Ms Tsui, who testified
19 without objection that Unical incurred at least $111,728 in damages, measured by the
20 lost revenue less the amounts saved by reason of the breach. In arguing that the
21 plaintiff had cancelled 8,484 units on order from the factory, and thus could not have
22 been damaged, defendant simply ignores the testimony of both Frank Liu and Becky
23 Tsui that the purchase order amendments did not change the total quantity but only
24 the allocation of the total quantity purchased in 2004 among purchase orders. In fact,
25 Ms Tsui explained that was why the amendments to the purchase order were made a
26 year later, in June 2005, after the full quantity of 64,516 had already been received.
27 Mr. Liu testified without objection that the factory did not allow Unical to cancel
28 quantities which it had already manufactured, for the obvious reason that the

C-4

1  manufacturer would have to take the loss of unsold inventory. Thus, Unical clearly
2  supports its position on this issue clearly with competent evidence, which the jury is
3  entitled to evaluate for itself.
4      Similarly, any argument over evidence of commercial reasonableness is for the
5  trier of fact. Defendant does not cite any authority requiring Unical to prove
6  commercial reasonableness (which is not even defined in the Uniform Commercial
7  Code) of any resale as a prerequisite to recovery of damages by an aggrieved seller.
8  Moreover, the evidence was that defendant was trying to sell the units at $10, so
9  Circuit City can hardly complain that Unical later sold them for $12. Further, under
10 Section 2706(6) the seller is not accountable for any profit on resale.
11     Ms Tsui testified that Unical had made efforts to sell the goods, but that the
12 price declines had made the remaining inventory less valuable. In fact, the evidence
13 was that at one point Circuit City had advertised the model for sale for $10, which
14 very much upset Mr. Cottogio. The most recent sales of the remaining goods by
15 Unical were at $12 per unit, and defendant did not even attempt to show that was
16 unreasonable. Circuit City's argument that the plaintiff's website displayed a retail
17 price of $49.99 for the model is not an indication of the value of the goods, since, as
18 Ms Tsui explained, there were no sales at that price and the only reason for keeping
19 that published sale was to avoid competing with customers. Indeed, it was Ms Fullam
20 who asserted that she could not sell the goods profitably given the contract price.
21     Similarly, the arguments about whether and when the goods were identified to
22 the contract, and whether Circuit City had notice that Unical intended to sell the
23 goods (the statute does not require notice of the actual sale) or even if not what
24 difference it made, are all questions of fact. The Uniform Commercial Code allows
25 the identification to be by any means agreed on (Section 2501), including the
26 designation of quantities, source and amount via the letter of credit agreement, which
27 is Exhibit 16, and also provides that identification can be made after the breach
28 unilaterally by the aggrieved seller (Section 2704). When the parties specified the

1  model quantities, the
2  ///
3  price and the manufacturer and provided for a letter of credit to cover them, that was
4  identification.
5      In sum, the evidence is ample to support a conclusion that plaintiff was
6  damaged by the breach. In any event, defendant concedes that substantial evidence
7  supports at least $50,332.80, so that there can be no judgment in favor of defendant
8  on the theory that Unical had no damages.
9      Lastly, as a kind of throw-away argument, defendant argues that the limitation
10 of liability clause might bar the damages claimed. However, defendant puts the shoe
11 on the wrong foot, arguing that "Unical offered no proof of explanation of whether
12 the amount it claims for damages includes consequential or incidental damages." If
13 defendant were relying on that clause, proof of its applicability would be defendant's
14 burden. In fact, defendant did not even argue the applicability of this clause to the
15 jury, for reasons which are not hard to discern. Again, what defendant is trying to
16 suggest, without actually saying so, is that the limitation of liability clause would
17 catch all damages, so that the result would be that Circuit city would never be liable
18 for anything regardless of whether or how it performed.
19 4.  **CONCLUSION.**
20     The essence of the agreement is explicit on page 1:
21     1.   Circuit City "will purchase" and "shall purchase" the "Products" defined
22 on "Exhibit 1 hereto" which include "25,000" units of "model 35808."
23     2.   "Unical Enterprises <u>will sell</u> and Circuit City, Inc., <u>will buy</u> the products
24 set forth on the attached Exhibit 1 ('Products')."
25     3.   "Circuit City <u>shall purchase the Products at the price set forth on Exhibit</u>
26 <u>1</u>."
27     4.   In case of any conflict between the terms of the matters incorporated by
28 reference, including the Purchase Orders and the Vendor Supply Chain Standards and

1  the eRFP, "this Agreement will control." That phrase is repeated three times, under
2  "Program" with respect to the eRFP, under "Orders" with respect to the provisions of
3  the Purchase Order, and under the "Supply Chain Standards" with respect to the
4  provisions of the Supply Chain Standards.

5  Moreover, the defendant's interpretation beggars common sense and offends
6  the fundamental principle that the provisions of the contract be construed together
7  and that constructions which make many of the provisions meaningless be avoided.
8  That would be the result if Circuit City's interpretation were to prevail. It would
9  mean that all of the descriptions and qualifications on the duties of defendant are
10 meaningless because the true meaning of the contract is that Circuit City simply has
11 no obligations thereunder.

12 Here, a fair scrutiny of the explicit terms of the contract supports plaintiff's
13 contention that the agreement is for the purchase as well as the sale of goods, and not
14 for the unilateral obligation of plaintiff to supply the goods for sale and the unilateral
15 right of defendant to purchase nothing. For this reason, the court should in fact
16 render judgment in favor of Unical Enterprises, Inc., under Rule 50(a) given the
17 explicit text. Nothing in Rule 50 prevents the court from finding adversely to the
18 moving party on the very issue limned by the motion where, as here, the jury does not
19 return a verdict on that issue because of the mistrial. Rule 50(b)(3) allows the court
20 to direct the entry of judgment as a matter of law on that point. Only if the court finds
21 the terms ambiguous could the trier of fact, after weighing evidence, (which cannot
22 be done under Rule 50), find for the defendant. That, if necessary, must be done in a
23 new trial.

WEISS & HUNT

By: *[signature]*
Thomas J. Weiss

Attorneys for Plaintiff UNICAL
ENTERPRISES, INC., a California
corporation

C — 7

# PROOF OF SERVICE OF DOCUMENT
**In re Circuit City Stores, Inc., et al.**
**No. 08-35653 (KRH)**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1925 Century Park East, Suite 2140, Los Angeles, California 90067

The foregoing document described as **RESPONSE OF UNICAL ENTERPRISES, INC., TO DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

☐ **1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 16, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information is on the attached page

☒ **2. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On September 16, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. **Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.**

☒ Service information is on the attached page.

☐ **3. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 16, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. **Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: September 16, 2009   Karen Genova                  /s/ Karen Genova
                           Type Name                    Signature

C-8

In re Circuit City Stores, Inc., et al.
Chapter 11 - Case No. 08-35653 (KRH)

Attachment

| | |
|---|---|
| Gregg M. Galardi, Esq.<br>Ian S. Fredericks, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>One Rodney Square<br>P. O. Box 636<br>Wilmington, Delaware 19899-0636<br>(302) 651-3000<br>**VIA OVERNIGHT DELIVERY** | Counsel to the Debtors and Debtors in Possession |
| Chris L. Dickerson, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>155 North Wacker Drive<br>Chicago, Illinois 60606-1720<br>(312) 407-0700<br>**VIA OVERNIGHT DELIVERY** | Counsel to the Debtors and Debtors in Possession |
| Dion W. Hayes (VSB 34304)<br>Douglas M. Foley (VSB 34364)<br>MCGUIREWOODS LLP<br>One James Center<br>901 E. Cary Street<br>Richmond, Virginia 23219<br>(804) 775-1000<br>**VIA OVERNIGHT DELIVERY** | Counsel to the Debtors and Debtors in Possession |

C-9