Gina Baker Hantel
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 532-8928
Facsimile: (615) 741-3334
Gina.Hantel@ag.tn.gov

Counsel for the State of Tennessee
Department of Treasury, Division of
Unclaimed Property

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - X
In re:                         :       Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :       Case No. 08-35653 (KRH)
et al.,                        :
                               :
        Debtors.               :       Jointly Administered
- - - - - - - - - - - - - - -
```

**RESPONSE OF THE TENNESSEE DEPARTMENT OF TREASURY, DIVISION OF UNCLAIMED PROPERTY, TO THE DEBTORS' FORTY-THIRD OMNIBUS OBJECTION TO CLAIMS (DISALLOWANCE OF CERTAIN LATE CLAIMS) and REQUEST FOR HEARING**

Comes now the Tennessee Attorney General, Robert E. Cooper, Jr., through undersigned counsel, on behalf of the Tennessee Department of Treasury, Division of Unclaimed Property ("Treasury"), and respectfully files this response to Debtors' Forty-Third Omnibus Objection to Claims AND Requests a Hearing thereon. In support of this response and the Proof of Claim filed by Treasury (Claim No. 14567), Treasury states as follows:

1

1.  The Debtors filed for Chapter 11 Bankruptcy relief on November 10, 2008 (the "petition date." On or around that same date, the Court entered an Order setting May 11, 2009 as the bar date for governmental units to file proofs of claim.

2.  On or about August 19th, 2009, a proof of claim for $200,545.51 was prepared and over-nighted for filing in the Debtors' bankruptcy. This claim was based on an audit of Young America ("YA"), a rebate vendor of the Debtor, completed on or around April 20, 2009, with notification to Treasury in late April, 2009.

3.  The claim was for an unclaimed property debt owed on the uncashed rebate checks of Tennessee consumers in the amount of $200,545.52 and is claimed by and due to the Unclaimed Property Division of the Tennessee Department of Treasury. Treasury will hold these funds for claim by those consumers and represents the total amount that the Treasury alleges as a prepetition general unsecured claim (Claim No. 14567) in Debtors' bankruptcy.

4.  On or about September 9, 2009, Debtors filed its Disclosure Statement for Debtors' Plan of Liquidation. It is undisputed that Debtors had actual knowledge of Treasury's proof of claim before the Disclosure Statement and Plan of Liquidation were filed. In addition,

the Debtors had notice of a potential unclaimed property claim prior to the filing of the

bankruptcy as it was noticed of the initiation of the audit by YA.  The First Amended Joint Plan

was filed on September 24, 2009  The date by which objections must be filed has not yet passed.

     5.     On September 29, 2009, Debtors filed their Forty-Third Omnibus Objection to

Certain Late Filed Claims.  The Debtors objected to Treasury's Claim No. 14567 as being late-

filed.  Although Debtors have agreed to allow the claim as an "allowed late-filed claim," under

the proposed plan confirmed by the Court, allowed late-filed claims are not expected to receive

any repayment.  If the claim is allowed as a timely-filed general unsecured claim, there is the

possibility of a pro rata payment of the unsecured claim.  Naturally, to classify Treasury's claim

as an allowed late-filed claim results in prejudice to Treasury's position.

     6.     Bankruptcy Rule 9006(b)(1) governs the enlargement of periods of time set by the

Bankruptcy Rules.  The Court has the power to enlarge the time, in order to permit a late filing

due to the movant's failure to comply with an earlier deadline, as a result of "excusable neglect."

The Rule states:

> . . . when an act is required or allowed to be done at or within a specified period
> by these rules or by a notice given thereunder or by order of court, the court for

cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

7. The United States Supreme Court has provided a working definition of excusable neglect. *Pioneer Inv. Servs. Co. V. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489 (1993). Excusable neglect consists of five elements, including (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the movant, and (5) whether the movant acted in good faith. *Id.* at 395. *See also In re Alexander's, Inc.*, 176 B.R. 715 (Bankr. S.D.N.Y. 1995), *Chateaugay Corp. v. LTV Steel Co. Inc. (In re Chateaugay Corp.)*, 1993 WL 127180 (S.D.N.Y. 1993) (both including adequacy of notice as a factor in determining excusable neglect). The Court also held that Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late claims caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the movant's control. *Pioneer,* 507 U.S. at 388. In determining the existence of excusable neglect a court must take into account all circumstances related to the late filing. *Id.* at 395.

4

8.      The burden of proving excusable neglect rests with the movant. *In re Keene*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995).  For the reasons set forth below,  Treasury's proof of claim should be accepted as a timely-filed claim, because allowing the claim will not unduly prejudice the Debtors, and because Treasury and this Office have acted in good faith to correct an avoidable, but nonetheless understandable, mistake.

**A.      The Delay Was Not Prejudicial to the Debtors**

9.      In exercising broad equitable powers to balance the interests of the affected parties, the courts are to be guided by the overriding goal of ensuring the success of the reorganization.  *Pioneer*, 507 U.S. at 389.  Prejudice to the debtor is more complex than a dollar-for-dollar depletion of assets otherwise available for timely filed claims.  *In re R. H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y. 1994).  Determination of prejudice to the debtor depends on consideration of the circumstances.  *Id*.  The pertinent circumstances include the size of the late claim in relation to the estate, the possible disruptive effect the late filing would have on a plan close to completion, *id*., and the expectation that a creditor would file a claim.  *In re Alexander's, Inc.*, 176 B.R. at 722, see also *In re Keene Corp.*, 188 B.R. at 910.

5

10. Treasury's general unsecured claim in this case is $200,545.51. While this is no small amount standing alone, it constitutes very little of Debtors' total liabilities which are estimated in the billions of dollars. In addition, it is estimated that the general unsecured creditors will received less than 20% of the estimated general unsecured claims.   .

11. Treasury's unclaimed property claim stems from an audit of rebates handled by Youth America for Circuit City. The audit was completed and the Debtors were given notice of the audit's results in April 2009, less than 30 days before the government claim filing deadline. Under these circumstances, it is undisputable that Debtors had knowledge of the state's audit prior to the filing of the Disclosure Statement and Plan, and should have expected that the Treasury would file a claim in the bankruptcy. In addition, it is also undisputable that the Debtors had notice of the Treasury's claim on or about August 20th, 2009, when the claim was filed. This occurred prior to the filing of Debtors' Disclosure Statement and Plan of Liquidation filed on September 9, 2009. The Debtors cannot claim surprise. They should have expected Treasury to file a proof of claim for unclaimed property, as they were clearly aware of the problems with any rebate program. It is certainly not unusual to have many uncashed checks

written to consumers for rebates under numerous programs and, therefore, the existence of unclaimed property claims.

**B.     The Length of the Delay Did Not Negatively Impact Court Proceedings**

12.     Factors applicable to determining the impact of the delay include the reason for the delay and prejudice to the other party.  *Kearney & Trecker Corp. v. Liberty Mut. Ins. Co.*, 1993 WL 525491, *2  (S.D.N.Y. 1993).  Delay can have a negative impact on judicial proceedings where the debtor has confirmed or accepted a plan, and the introduction of a late claim would require re-computation and recasting.  *In re Keene*, 188 B.R. at 912-913; *In re Alexander's Inc.*, 176 B.R. at 722.  That is not the case here.

13.     As discussed before, Treasury's claim was filed prior to the filing of a disclosure statement and plan of liquidation.  In addition, the Debtors should have had prior knowledge of Treasury's claim before the filing of its bankruptcy case and certainly before before the preparation of a disclosure statement and plan.  Under these circumstances, Treasury asserts that its late-filed claim will not negatively impact this Court's proceedings.

**C.     Treasury Has Acted in Good Faith**

14.     Good faith is a long-standing legal concept, usually equated with honesty of intention and acting equitably. *American Home Assurance Co. v. Baltimore Gas & Elec. Co.*, 187 WL 4928, *5 (mem.) (S.D.N.Y. 1987), see also *In re Arlco, Inc.*, 239 B.R. 261, 268 (mem.) (Bankr. S.D.N.Y. 1999). Good faith implies honest and reasonable conduct in the circumstances. *Id.* at *4. In determining good faith, the Court must review each case on the merits, using a sense of what is equitable in a given case. *Matter of Bellgraph*, 4 B.R. 421, 423 (mem.) (Bankr. W.D.N.Y. 1980).

15.     Treasury acted in good faith when it filed its proof of claim in this case. There is no evidence that suggests otherwise. The claim was filed on or about August 20, 2009, within 90 days of the governmental claim filing deadline. In fact, audit results received less than 30 days before the claim filing deadline gave little time for Treasure to file its claim. There was also no improper basis for the filing of the claim past the bar date. Treasury gained no benefit from delaying the filing of its proof of claim. Undisputedly, it was in the best interests of the Treasury to file its claim timely.

8

**D.     Treasury's Failure to File the Proof of Claim Before the Bar Date Is Excusable Neglect**

16.     The reason for the delay, including whether it was within the reasonable control of the movant is very important. *Jin v. Metro. Life Ins. Co.*, 2003 WL 21436211, *3 (S.D.N.Y. 2003), citing *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994); *Active Glass Corp. v. Architect & Ornamental Iron Workers Local*, 899 F.Supp. 1228, 1231 (S.D.N.Y. 1995) (Leisure, J); *Mason v. Schriver*, 1999 WL 498221, *2-3 (S.D.N.Y. 1999) (Preska, J).  However, excusable neglect is not limited to omissions caused by circumstances beyond control of the movant. *Raymond v. International Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (per curiam), see also *Au Coton, Inc.*, 171 B.R. 16, 17 (S.D.N.Y. 1994).  The Court is permitted, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the movant's control. *In re Hills Stores Co.*, 197 B.R. 348, 351 (Bankr. S.D.N.Y. 1994).   Mere inadvertence alone, can be enough to constitute excusable neglect. *Raymond*, 148 F.3d at 66.

17. Admittedly, this was a mistake that was not beyond the control of Treasury or this Office. Nevertheless, the inadvertently misplaced proof of claim can be understandably attributed to the sheer number of papers and claims handled by this Office's bankruptcy division in its role as bankruptcy counsel for the various departments and agencies of the State of Tennessee. In addition to all of the other pleadings and documents that it handles, the Office files thousands of proofs of claim each year. As of August 1, 2009, the Office had 15,000 open case files. During the most recent fiscal year, this Division received in excess of 265,000 pieces of email in our court boxes alone to be handled by 10 attorneys.

18. Considering the sheer task of operating this Office's bankruptcy claim filing operation, Treasury has filed few claims late but seeks an extention of time of 90 days to allow the filing of Treasury's proof of claim.

19. It was also during those months through July, when large cases were filed and/or required much attention from this Office, such as GM, Chrysler, and S & K. Thus, while this mistake was admittedly not beyond the control of this Office or the Treasury and was entirely avoidable, it was certainly not due to purposeful or reckless neglect.

10

20. The delay of the filing of the Treasury's proof of claim was not prejudicial to the Debtors, since they had knowledge of the Treasury's audit prior to the bankruptcy filing and had knowledge of the Treasury's claim before the filing of a disclosure statement and plan. The length of the delay did not significantly or negatively impact the Court's proceedings. The Treasury and this Office filed its late claim in good faith, and due to the high numbers of proofs of claim, open cases, pieces of mail, and the heightened case attention, the delay was certainly not purposeful or reckless. Under these circumstances, and based on evidence to be presented at a hearing on this objection, Treasury submits that its late-filed claim should be allowed as timely due to excusable neglect.

WHEREFORE, The Treasury prays that the Court set a hearing on this matter and enter an Order denying Debtors' objection to Claim No. 14567 filed by Treasury, specifying that Treasury's claim shall be classified as a timely filed claim, to be paid according to the Debtors' Consolidated Plan of Reorganization, and granting such other relief that the Court deems appropriate.

Dated this 27th day of October, 2009.

Respectfully Submitted,

ROBERT E. COOPER, Jr.
Attorney General & Reporter


By: /s/ Gina Baker Hantel
GINA BAKER HANTEL (TN BPR # 018019)
Assistant Attorney General
Tennessee Attorney General's Office
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 532-8928
Fax: (615) 741-3334
E-mail: Gina.hantel@ag.tn.gov

Attorney for the Tennessee Department of Treasury

## CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been forwarded electronically and/or by first class U.S. postage prepaid to the following:

Gregg M. Galardi
Ian S. Fredericks,
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, DE 19899-0636

Chris L. Dickerson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Dr.
Chicago, IL 60606

Dion W. Hayes
Douglas M. Foley
MAGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219              On this the 27th day of October, 2009.

12

13