# EXHIBIT A – PART 2

(c)     Contest of Real Estate Taxes and/or Assessed Valuation of Property.  In the event that Landlord does not contest Real Estate Taxes for any tax year, and so long as Tenant reasonably cooperates with any other tenant of the Shopping Center that is contesting Real Estate Taxes, Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within ten (10) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction.  In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute all documents required and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution.  Likewise, in any instance where any such action or proceeding is being undertaken by Landlord, Tenant shall cooperate with Landlord, execute all documents reasonably required and, if required by any law, rule or regulation of the taxing authority, shall join with Landlord in the prosecution at no cost to Tenant.

(d)     Payment Following Appeal.  Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to commencement of such proceedings), Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, the payment of which may have been deferred during the prosecution of such proceedings.  Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the appropriate taxing authority of all costs, fees and expenses it incurs in such protest or reassessment.

(e)     Tenant shall pay before delinquency all taxes levied, assessed or unpaid on any leasehold interest, any right of occupancy or investment of Tenant in the Premises or any personal property owned, installed or used by Tenant in the Premises.

(f)     If Landlord elects to have Real Estate Taxes for any portion of the Shopping Center calculated and paid separately from the remainder of the Shopping Center, then Tenant's Pro Rata Share of Real Estate Taxes shall be calculated based upon the percentage that the ground-floor gross leasable area in the Building bears to the total number of ground-floor

14

gross leasable area in the tax parcel in which the Premises is located. It is agreed that, as pad or building sites in the Shopping Center are sold to third parties, Landlord shall have the option to require that Real Estate Taxes shall not include real property taxes and assessments relating to such excluded pads or sites, nor shall the denominator of the fraction determining Tenant's Pro Rata Share of Real Estate Taxes include any floor area of any building constructed thereon.

10.    Maintenance, Repairs and Replacements.    Except (i) for costs covered by Landlord's insurance required by this Lease to be maintained, (ii) for condemnation proceeds to be received by Tenant pursuant to this Lease, (iii) for obligations arising from the grossly negligent acts or omissions or willful misconduct of Landlord (or its agents, employees or other tenants), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of the exterior and interior non-structural elements of the Building, including painting of the exterior of the Building. If Tenant is required during the last five (5) years of the Lease Term to expend any sum in satisfaction of its obligations relating to the replacement of the HVAC system serving the Premises, and if the resulting capital replacement cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term, then Tenant shall so notify Landlord and Landlord shall either (A) direct Tenant that Landlord elects not to cause Tenant to make such capital replacement, and Tenant shall thereby be relieved of any liability for such replacement obligation unless such capital replacement is required to sustain a Building system critical to Tenant's operations (determined in Tenant's and Landlord's reasonable judgment and after first obtaining the recommendation of a professional in the trade for repairing or replacing such Building system), in which event Landlord shall be deemed to have elected (B) immediately following, or (B) direct Tenant to make such capital expenditure in which event Tenant shall be reimbursed by Landlord by that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term, such reimbursement to be made at the end of the Term. From and after the Commencement Date, Landlord shall maintain all structural elements of the Premises (whether or not same serve only the Premises), including, without limitation, the roof structure, flooring system, floor slab, foundation, load bearing walls and exterior structural walls. In addition, Landlord agrees to maintain the Other Improvements immediately surrounding the Building, as well as sidewalks and landscaping. Should either party fail to perform its obligations under this paragraph 10, the other party may, at its option,

15

effect such maintenance, replacements or repairs, provided that curing party shall give the non-performing party thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required); but further provided that the thirty (30) day period (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as the party required to effect such cure has commenced such cure within the thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. The non-performing party shall reimburse the other party on demand for the reasonable and actual amount expended (as evidenced by detailed invoice), plus interest at the Default Rate from the date of the expenditure. However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement. All maintenance, repairs or replacements shall be done by Tenant or Landlord lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. In order for Landlord and Tenant to effectively perform their maintenance, repair and replacement obligations, Tenant and Landlord, as applicable, shall provide to the other party the non-exclusive benefit of all manufacturers' and contractors' warranties relating to such work performed on behalf of the other party to the party who is required to maintain same under the Lease; however, Tenant shall not be required to perform the foregoing obligation so long as the Tenant Improvement Allowance remains unpaid.

11.    Utility Service Provider; Payment of Utility Bills.    Tenant shall be entitled, subject to State law, to select the utility service provider which shall provide water, electric, gas, cable, and telecommunication services to the Premises. Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. Landlord shall pay when due all utility charges incurred in the operation of the Common Areas and the Shopping Center. Landlord shall cause, at Landlord's expense, the installation of utility facilities to the Premises as required by this Lease in a manner that same may be separately metered, provided, Tenant shall pay for the cost of the meter. Tenant shall cause all utility companies providing the aforementioned utilities to turn all such utilities on in Tenant's name, including paying the cost of hookup or metering charges.

16

12.    Alterations.  During the Term Tenant shall have the right, at its discretion and at its sole cost, subject to obtaining all necessary governmental approvals, and without Landlord's consent, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores and (ii) any interior nonstructural alterations or modifications it may desire, provided, that such alterations do not adversely affect the structural integrity of the Building and are materially consistent with the then-existing architectural theme of the Shopping Center.  Tenant shall provide Landlord with copies of construction drawings for all such alterations.  With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, subject to obtaining all necessary governmental approvals, to otherwise alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements, provided that Landlord's withholding of consent as to any exterior or structural alteration or modification shall be deemed reasonable if adversely affects the structural integrity of the Building, or is materially inconsistent with the then-existing architecture of the Shopping Center. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work.  Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord.  Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations and Landlord shall execute, acknowledge and deliver any documents reasonably required by Tenant.

13.    Mechanics' Liens.  Landlord and Tenant covenant to each other that they will not permit any lien, to be filed against the Premises or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises or the Shopping Center.  Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises or Shopping Center (to the extent a foreclosure of such lien is threatened or pending), the party on account of whose

17

actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party.

     14.   <u>Insurance</u>.

        (a)   <u>Property Damage</u>. During the Construction Term and the Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all construction. During the Construction Term and the Term, Tenant shall keep the Premises insured against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage in the amount of full replacement value of the Building exclusive of excavation, footings and foundations (which initial amount shall be not less than Tenant Improvement Allowance), with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and Landlord's first "Mortgagee" (as defined in paragraph 21 below), shall be named in such policies as additional insureds as their respective interests may appear. Landlord shall not construct, or permit to be constructed, any improvement in the Shopping Center, nor conduct or permit the conduct of any activity, in the Shopping Center which will prevent Tenant from being able to obtain insurance coverage at commercially reasonable rates. Should Landlord cause or permit any insurance rate increase to occur, Landlord will reimburse Tenant for the additional premium required, subject to Tenant's right to self-insure (in which event Landlord will contribute to Tenant's self insurance fund to cover increased actuarial risks).

        (b)   <u>Liability Insurance</u>. During the Construction Term Tenant shall require its general contractor to keep, and during the Term Tenant shall keep, in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord, Kitchell Contractors, Inc. and Landlord's first Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 ($2,000,000.00 with respect to Tenant's general contractor) combined single limit for bodily injury and property damage, with a commercially reasonable deductible. No more frequently than once every five (5) years, Landlord may adjust the insurance requirements

374052 v10 (00051.00112.000)

set forth in this Lease to the then-current industry standards for similar shopping centers in the Area.

(c)    Workers' Compensation Insurance.    To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d)    Self-Insurance.    Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant has a reported tangible net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than One Hundred Fifty Million Dollars ($150,000,000). Such self-insurance will not affect any waivers, releases or limitations of liability of Landlord set forth in this Lease. If Tenant elects to self-insure, Tenant will deliver written notice to Landlord (a) detailing the coverages being self insured; (b) setting forth the amount, limits, and scope of the self insurance for each such coverage (which will not be less than those required herein): (c) demonstrating the required net worth; and (d) describing Tenant's self-insurance program (including, without limitations, its funding, claim defense policies, coverage provisions, and other relevant matters). Tenant agrees to defend, indemnify and hold harmless Landlord and Landlord's agents, contractors and employees from and against any loss, cost, damage, expense (including attorney's fees and court costs), claim, cause of action or liability that would have been covered by the insurance policy replaced by the self-insurance, and provided further that self-insurance shall not affect the non-liability of Landlord described in this paragraph 14. Upon Landlord's request, Tenant will provide a certificate reasonably satisfactory to any mortgagee or assignee of Landlord setting forth the self-insured coverages and naming (as applicable) such party as an additional insured as such party's interest may appear.

(e)    Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction. During the Term, Landlord shall keep in full force and effect, in commercially reasonable form, policies of (1) commercial general liability insurance, and (2) property insurance insuring against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time

19

has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (the "Additional Areas"). The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center. Said policies shall name Tenant, and any lender which is designated by Tenant from time to time, as an additional insured to the fullest extent Tenant and such lender have insurable interests. The limits of such policies shall be the same as those set forth in subparagraphs (a) and (b) above, as applicable. The premiums for coverages relating to Common Areas as set forth in this paragraph 14 shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage in excess of that coverage which is customary among owners of like shopping centers in the City. Any deductible amount for Common Area insurance coverage shall be reasonable in amount given the nature of the risk insured and probable frequency of claims made under such coverage, but in no event shall such deductible amount exceed $25,000 for Common Area liability coverage. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep, or cause its general contractor to keep, in full force and effect, with regard to the Shopping Center, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

(1)    Workers' Compensation - Statutory Limits;
       Employer's Liability - $500,000;

(2)    Automobile Liability for all vehicles with limits of $3,000,000; and

(3)    Commercial General Liability to include premises operations and products/completed operations coverage with limits of $3,000,000.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured.

374052 v10 (00051.00112.000)

(f)     Policy Provisions.  All policies of insurance (other than self-insurance) shall be provided by insurance carriers with a Best rating of not less than A-VIII. Any insurance coverage may be effected by a blanket policy of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy shall comply with the provisions of this paragraph 14.  Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall not be deemed to be self-insurance.  An increased coverage or "umbrella" policy may be provided by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the limits required herein shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14.

(g)     Waiver of Right of Recovery and Subrogation.  To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's policies of insurance shall contain provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h)     Evidence of Insurance.  Subject to Tenant's right to self-insure, (i) upon commencement of the Main Term (as to property insurance), (ii) upon Delivery of the Land (as to liability insurance) and (iii) prior to expiration, Tenant and Landlord shall cause to be issued to each other certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14.  Each such certificate shall provide that coverage shall not be cancelled without thirty (30) days notice to the certificate-holder (and any Mortgagee, if applicable).

(i)     Indemnities.  Except if arising from the negligent or willful misconduct of Landlord or its agents or employees (to the extent that paragraph 14(g) is inapplicable), Tenant agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage

21                                        374052 v10 (00051.00112.000)

or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use.

Except if arising from the negligent or willful misconduct of Tenant or its agents or employees (to the extent that paragraph 14(g) is inapplicable), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises resulting from the use by Landlord, its agents, contractors or employees.

15.   Damages by Fire or Other Casualty.

(a)   First Ten Lease Years. In the event of a fire, earthquake or other casualty (which is required to be insured or self-insured hereunder), causing destruction or damage to the Improvements, Common Areas and/or Additional Areas during the first ten (10) Lease Years, this Lease shall not terminate except as expressly set forth herein, and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured), Tenant shall complete reconstruction of the Building and Other Improvements, and Landlord shall complete reconstruction of the Common Areas in the "Rebuild Area" as shown on the Site Plan and In-Line Space (hereinafter defined) to that condition existing immediately prior to such casualty, in the reconstructing party's reasonable discretion, with, in event of any Tenant reconstruction, such alterations as may be permitted under paragraph 12. In the event, subject to force majeure, the Premises, Common Areas in the Rebuild Area and/or In-Line Space, as applicable, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by the party with repair and restoration obligations within two hundred forty (240) days after receipt of any required governmental permits, for which permits the party with repair obligations shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured), then the other party, at its option, by giving written notice to the party with repair obligations, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event the party with repair obligations shall make available to the notifying party all insurance proceeds received by the

374052 v10 (00051.00112.000)

non-performing party for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

(b)    Last Five Lease Years. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, Common Areas and/or Additional Areas, during (i) the last five (5) years of the Main Term or any Option Period which would require a restoration period in excess of two hundred forty (240) days, or (ii) the last two (2) years of the Term, regardless of the duration of restoration activities, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord (i) all insurance proceeds paid by Tenant's insurance carrier, or (ii) if self-insured, an amount equal to the reconstruction costs of the Improvements or, if the Improvements are not being reconstructed, an amount equal to the actual value of the Improvements (not to exceed, however, an amount equal to the reconstruction costs of the Improvements), to the extent such amounts would have been payable under the insurance outlined in paragraph 14(a) above. In the event Tenant does not elect to terminate this Lease, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, and shall restore the Premises (including equipment, furniture and fixtures). Should Tenant elect to maintain this Lease in full force and effect, Landlord shall reconstruct all Common Areas in the Rebuild Area and In-Line Space in the manner specified by subparagraph (a) above regardless of the amount of damage to same.

(c)    Limit on Landlord's Rebuild Obligations. Notwithstanding the foregoing provisions of this paragraph, provided Tenant expressly waives its right to terminate this Lease as a result of a casualty pursuant to this paragraph 15, Landlord shall only be obligated to repair or reconstruct three (3) of the buildings denoted on the Site Plan as "Major A" through "Major F" (the "In-Line Space") and Common Areas in the Rebuild Area in order to satisfy Landlord's rebuilding obligations hereunder.

374052 v10 (00051.00112.000)

(d)    <u>Landlord's Right to Terminate</u>.  Notwithstanding anything to the contrary set forth in this Lease, if all or any portion of the Shopping Center shall be damaged or destroyed by fire or other cause (notwithstanding that the Premises may be unaffected thereby), to the extent the cost of restoration thereof would exceed the amount it would have cost to replace fifty percent (50%) of the gross leasable area of the Shopping Center at the time such damage or destruction occurred or in the event of a casualty which is not covered by insurance (other than that required to be maintained under this Lease), then Landlord may terminate this Lease by giving to Tenant prior written notice of Landlord's election so to do, which notice shall be given, if at all, within ninety (90) days  following the date of such occurrence, whereupon this Lease shall terminate within ninety (90) days after such notice is given, and the Base Rent and other charges hereunder shall be adjusted as of that date.  Notwithstanding anything to the contrary contained in this paragraph (d), Landlord shall not have the right to terminate this Lease unless Landlord terminates the leases of all other tenants in the Shopping Center if, prior to any such termination by Landlord, such tenants have not theretofore terminated their leases.  If Landlord shall terminate this Lease pursuant to this provision and within three (3) years from the date of the casualty giving rise to Landlord's right to terminate this Lease the entity which was Landlord herein at the time of such termination or an affiliate or related party of such entity (collectively, the "Successor Landlord") elects to reconstruct or restore the Shopping Center as a retail shopping center, Tenant shall be entitled to demand and receive from Landlord or any Successor Landlord, as the case may be, a new lease for premises within the restored Shopping Center substantially similar to and in the location of the Premises reasonably approved by both parties for a period equal to the remaining Term of this Lease at the time of such termination and upon all of the remaining terms and conditions of this Lease.  This provision shall survive the termination of this Lease.

16.    <u>Condemnation.</u>

(a)    <u>Definition of Taking and Substantial Taking</u>.    For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center or any portion so taken is vested in the condemning authority or the date upon

374052 v10 (00051.00112.000)

which possession of the Premises, the Shopping Center, or any portion is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or In-Line Space and Common Areas as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the Parking Ratio, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, or (iii) there remain less than two (2) points of access to the Shopping Center from the boundaries thereof.

(b)   Tenant's Rights Upon Taking or Substantial Taking.   In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

(c)   Tenant's Rights Upon Less Than Substantial Taking.   In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion of the Premises condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated) and the portion of Landlord's award allocable to the Premises, which Landlord shall make available to Tenant for such restoration. If the Taking occurs within the last two (2) years of the Term and has a material adverse impact on Tenant's ability to conduct Tenant's business as determined by Tenant in Tenant's reasonable judgment, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d)   Landlord's Obligations Upon Any Taking.   In the event of any Taking following which the Lease continues in effect, Landlord shall make all necessary restorations to

25

374052 v10 (00051.00112.000)

all portions of the Common Areas in the Rebuild Area and In-Line Space such that they each constitute a complete architectural unit and serve the function originally intended.

(e)    Rights Upon Temporary Taking. In the event of a Taking of the Premises, the Common Areas, or any portion thereof, for temporary use (specifically one not exceeding ninety (90) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas, but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such other awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained to the contrary notwithstanding, a temporary Taking for any period in excess of ninety (90) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(f)    Taking of the Pylon Sign(s). In the event of a taking, whether permanent or temporary, of any pylon or monument sign on which Tenant has installed identification panels, Landlord shall use best efforts to provide within ninety (90) days a substitute pylon or monument sign (reasonably acceptable to Tenant), subject to governmental approvals, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center, at Landlord's sole cost.

(g)    Tenant's Right Upon Condemnation. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law; provided, however, that any claim allowed to Tenant hereunder shall in no event reduce the amount otherwise payable to Landlord by the condemning authority.

(h)    Limit on Landlord's Rebuild Obligations. Notwithstanding the foregoing provisions of this paragraph, provided Tenant expressly waives its right to terminate this Lease as a result of a Taking, Landlord shall only be obligated to repair or reconstruct the In-Line Space and Common Areas in the Rebuild Area in order to satisfy Landlord's rebuilding obligations.

26

374052 v10 (00051.00112.000)

(i)    Landlord's Right to Terminate.  Notwithstanding anything to the contrary set forth in this Lease, in the event of a Taking of more than fifty percent (50%) of the gross leasable area of the Shopping Center, then Landlord may terminate this Lease by giving to Tenant prior written notice of Landlord's election so to do, which notice shall be given, if at all, within ninety (90) days  following the date of such occurrence, whereupon this Lease shall terminate within ninety (90) days after such notice is given, and the Base Rent and other charges hereunder shall be adjusted as of that date.  Notwithstanding anything to the contrary contained in this paragraph (i), Landlord shall not have the right to terminate this Lease unless Landlord terminates the leases of all other tenants in the Shopping Center if, prior to any such termination by Landlord, such tenants have not theretofore terminated their leases.  If Landlord shall terminate this Lease pursuant to this provision and within three (3) years from the date of the Taking giving rise to Landlord's right to terminate this Lease the entity which was Landlord herein at the time of such termination or an affiliate or related party of such entity (collectively, the "Successor Landlord") elects to reconstruct or restore the Shopping Center as a retail shopping center, Tenant shall be entitled to demand and receive from Landlord or any Successor Landlord, as the case may be, a new lease for premises within the restored Shopping Center substantially similar to and in the location of the Premises reasonably approved by both parties for a period equal to the remaining Term of this Lease at the time of such termination and upon all of the remaining terms and conditions of this Lease.  This provision shall survive the termination of this Lease.

17.    Assignment and Subletting.  Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent.  In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord except to the extent this Lease is changed, modified or amended in any respect by Landlord and any transferee without Tenant's prior written consent.  Transfers to subsidiaries, affiliates, or related parties, and Transfers involving beneficial ownership interests in Tenant, shall not be deemed a Transfer and may be effected without Landlord's consent, but Tenant shall provide notice thereof to Landlord within thirty (30) days following each such Transfer.  Notwithstanding anything contained herein to the contrary, Landlord shall have the right following receipt of written notice (a "Transfer Notice") from Tenant identifying a proposed

374052 v10 (00051.00112.000)

assignee or sublessee and stating the then-current amount of Tenant's then-unamortized improvements made to the Premises to recapture the Premises and terminate this Lease upon payment to Tenant of a sum equal to the amount of Tenant's then-unamortized costs of improvements made to the Premises (which amount shall include the unamortized amount of that portion of the Tenant Improvement Allowance if Landlord has not yet paid such amount pursuant to the Construction Provisions, but shall expressly exclude any portion of the Tenant Improvement Allowance paid by Landlord (the "Unamortized Costs")). The Transfer Notice shall include information which Tenant has in its possession which may be disseminated without penalty regarding the proposed assignment or subletting, including but not limited to information regarding the proposed assignee or subtenant, financial or operating information regarding such entity, the amount of Tenant's Unamortized Costs, the date Tenant plans to vacate the Premises (the "Vacation Date"), and any other information which Tenant may elect to release to Landlord in connection with such transaction. If Landlord elects to terminate the Lease (which election Landlord shall be deemed to have made if Landlord fails to respond to any Transfer Notice within thirty (30) days of its receipt), the Lease shall terminate on the earlier of (i) the date Tenant vacates the Premises, or (ii) the Vacation Date, and the Unamortized Costs shall be paid to Tenant by Landlord on the date of termination.

18.    Use.

(a)    Tenant may initially use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers, video and audio recorders and players and cameras), computer hardware and software and related software services, including internet access services, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment), cellular and wireless telephones and telecommunication devices, and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items are collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products (as an incidental part of the operation of a retail store as described in this subparagraph (a)).

(b)    Tenant shall have the right to use the Premises for any lawful use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use

28

374052 v10 (00051.00112.000)

prohibited under paragraph 19(a)(viii) below, (iii) in violation of any exclusive use restriction granted a tenant or other occupant of the Shopping Center pursuant to a lease or restrictive covenants executed prior to this Lease and shown on Exhibit "F", or (iv) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit "F".

      (c)    Tenant agrees to open for business in the Premises for at least one (1) day within eighteen (18) months following the Delivery Date (hereinafter defined).

      19.   Warranties, Representations and Covenants.

      (a)    Landlord represents and warrants and, with respect to subparagraphs (v), (vi), (viii), (x), (xi) and (xii) below, additionally covenants, to Tenant that:

      (i)    Quiet and Peaceful Enjoyment.  Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises during the Term of this Lease without any manner of hindrance by any party claiming by, through or under Landlord.

      (ii)    Title.  Landlord's fee simple interest in the Shopping Center is free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except those matters set forth on Exhibit "F" attached and entitled "Permitted Encumbrances".  Nothing contained in any other agreement or instrument which encumbers Landlord or the Shopping Center shall restrict Tenant's rights under this Lease. Landlord specifically warrants that no third party has the right to (x) object to Tenant's tenancy, (y) prohibit the sale, rental, servicing, repair or warehousing of the Products, or (z) consent to any feature of the Improvements or Tenant's signage.  This representation and warranty and those following are a material inducement to Tenant's execution of this Lease.

      (iii)    Authority.  Landlord covenants that it is a duly constituted limited liability company under the laws of the State of Arizona, and that its Manager, who is acting as its signatory in this Lease, is duly authorized and empowered to act on behalf of the limited liability company.

      (iv)    No Litigation.  There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or the Shopping Center which would preclude or interfere with, the construction, occupancy and use of the Premises for the purposes contemplated.

      (v)    Hazardous or Toxic Materials.  Except as set forth in that certain Phase I Environmental Site Assessment Update – Gateway Pavilions, dated October 25, 2002,

374052 v10 (00051.00112.000)

prepared by Western Technologies, Inc. (Job. No. 2182J1254), Landlord, to the best of its knowledge, has not used, discharged, dumped, spilled or stored any Hazardous Substances as hereinafter defined on or about the Shopping Center in violation of any law or regulation, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such condition exists at the Shopping Center. If any claim is ever made against Tenant relating to Hazardous Substances present at or around the Shopping Center in violation of any law or regulation, whether or not such substances are present as of the Effective Date, or any Hazardous Substances are discovered at the Shopping Center in violation of any law or regulation (unless introduced by Tenant, its agents or employees), all costs of removal incurred by, all liability imposed upon, or damages suffered by, Tenant because of the same shall be borne by Landlord, and Landlord indemnifies and agrees to defend and hold Tenant harmless from and against all such costs, losses, liabilities and damages, including, without limitation, all third-party claims (including sums paid in settlement thereof, with or without legal proceedings) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or experts fees and all costs incurred in enforcing this indemnity. Notwithstanding the foregoing, Landlord shall not be obligated to indemnify Tenant for compensatory or punitive damages, lost profits or other consequential damages suffered by Tenant under this paragraph. In the event Hazardous Substances are discovered at the Premises and have contaminated the Premises on a date subsequent to the date of this Lease as the result of actions or omissions of parties other than Landlord or Landlord's agents, employees and contractors which is in violation of any applicable laws or regulations, Landlord shall have no obligation to indemnify Tenant as a consequence of the Hazardous Substances so present at the Premises so long as Landlord promptly and diligently pursues to completion, at no cost or expense to Tenant, all remediation and clean-up of the real property and improvements comprising the Premises as may be required by applicable laws and regulations. The representation, warranty and indemnity of Landlord described in this paragraph 19(a)(v) shall survive the termination or expiration of this Lease.

(vi)    <u>Tenant's Exclusive Use</u>. So long as the Premises are used for the initial uses set forth in paragraph 18, no other tenant or occupant of the Shopping Center shall be entitled to sell or rent (or rent to own) any of the Products, subject only to rights granted any

374052 v10 (00051.00112.000)

such tenants under leases in existence as of the date of this Lease. The Incidental Sale (as hereinafter defined) of the Products in connection with the overall business of another occupant or tenant shall not be deemed a violation of the preceding sentence. As used herein, "Incidental Sale" shall mean the lesser of (i) three hundred (300) square feet, or (ii) ten percent (10%) of such occupant's or tenant's display area. Further, the exclusive granted Tenant shall not apply to, bind or restrict the operation of a national or regional office supply store, such as "Staples", or "Office Depot", "OfficeMax", provided the entity operating such national or regional office supply store enters into an agreement with Tenant regarding the applicability of such exclusive use restriction in a form and substance substantially similar to those entered into by Tenant and such office supply retailers, the exclusive granted Tenant shall not apply to, bind or restrict the operation of a national or regional video rental store, such as "Blockbuster", "Video Warehouse", or "Hollywood Video", provided such rental store does not sell any of the Products (other than DVD's and pre-recorded video tapes) in violation of the Incidental Sale provision set forth above, and the exclusive granted Tenant with respect to cameras shall not apply to, bind or restrict the operation of a specialty camera store. In addition, Landlord shall be permitted to replace tenants under leases or other occupancy agreements existing as of the date hereof with tenants utilizing the same space for the same use as the prior tenant (e.g., Landlord shall be permitted to replace an existing tenant engaged in the primary business of selling cellular telephones with a replacement tenant whose primary business is selling cellular telephones). Notwithstanding anything contained herein to the contrary, in the event a tenant or occupant violates the foregoing restriction in breach of such tenant's lease or occupancy agreement or other written agreement with Landlord (a "Contractual Violation"), then Landlord shall not be in default hereunder so long as Landlord promptly and diligently pursues all commercially reasonable means to stop such violation (including the filing of legal or equitable action to enjoin such breach). If Landlord fails to promptly and diligently pursue a Contractual Violation or if another tenant or occupant of the Shopping Center violates the foregoing restriction and such violation is not in violation of such tenant's or occupant's lease or other occupancy agreement with Landlord (e.g., in a situation where Landlord has not included in such tenant's or occupant's lease or other occupancy agreement a restriction prohibiting such tenant or other occupant from engaging in the exclusive rights granted to Tenant hereunder), then in addition to any other remedies which Tenant may have in connection with a violation of the exclusive use right granted Tenant herein,

31

then the payment of fifty percent (50%) of all Base Rent, CAM Charges, Real Estate Taxes and all other sums due hereunder shall abate (and shall not accrue) during any time such violation exists.

(vii)    Zoning and Subdivision.    Based solely on that certain letter from the City of Avondale dated March 13, 2003, the Premises and the Shopping Center are presently properly subdivided, in conformity with all applicable laws and zoned so as to permit (A) the development and operation of the Premises and the Shopping Center in accordance with the provisions of this Lease; and (B) the initial use of the Premises described in paragraph 18 of this Lease.

(viii)    Prohibited Activities.    Landlord shall not operate or lease (or permit to be operated or leased) any building or tenant space in the Shopping Center and Tenant shall not use the Premises for any uses prohibited by the terms of the REA and as set forth in Exhibit "F".

In addition to the foregoing, except for a "café" operated incidental with the operation of another retail use in the areas identified as "Major A" through "Major F" on the Site Plan, Landlord shall not operate, lease or permit to be operated or leased any restaurant or bookstore (other than within the Building identified as "Major C" on the Site Plan), within any building within three hundred (300) feet of the front entrance to the Building.  Tenant shall not operate a restaurant in the Premises, except a "café" operated incidental with the operation of its business. In addition, no auction, fire or going-out-of-business sale shall be conducted in the Shopping Center.

(ix)    Site Covenants.    Landlord makes the following covenants (the "Site Covenants"):

(A)    Building Height and Location.    No building adjacent to the Building shall exceed the height of the Building; no building in the Shopping Center shall exceed the height restrictions set forth in the REA; and no building shall be constructed outside of the "Envelope Areas" shown on the site plan to the REA.  No building on an outparcel in the Shopping Center shall exceed the size necessary for such outparcel to maintain the parking ratio required under the REA.  No buildings on the outparcels shown on the Site Plan as "Pad K", "Pad L", "Shops 5", and "Shops 6" shall exceed twenty-five (25) feet in height above finished

374052 v10 (00051.00112.000)

grade (30' inclusive of architectural features) and no building on "Pad B" shown on the Site Plan exceed thirty (30) feet in height above finished grade (35' inclusive of architectural features).

(B)    Construction and Alterations. Following the date which is one (1) year after Tenant's opening for business to the public at the Premises, no exterior construction on the front of the In-Line Space or in the Common Areas in the Rebuild Area and no construction staging in connection therewith shall be permitted in the Shopping Center during the months of October, November and December except for emergency repairs, unless such construction is otherwise permitted under leases in existence on the date hereof, in which event Landlord shall use reasonable efforts to minimize disruption in the Shopping Center during all periods of construction. In the event of any construction within the Shopping Center, Landlord shall designate a construction access route, staging and parking areas located so as to minimize interference with customers or the operations of other occupants of the Shopping Center and shall require erection of safety barriers as necessary and an opaque wall around the site of such construction of a size necessary to screen such construction from ground level view. With regard to any construction on Landlord's Premises, Landlord shall be solely responsible for any governmentally imposed impact fees, hookup, connection, installation or tap in fees and other similar construction-related charges. Landlord shall make no changes in Tenant's Preferred Area as shown on the Site Plan (including, without limitation, changes in the location of curbcuts, changes in the locations of drive aisles, roadways, sidewalks or parking spaces or reduction of the parking ratio below the Parking Ratio) without Tenant's express written consent, which Tenant may, in its sole discretion, withhold. Landlord shall not make any other changes to the Common Areas which affect Tenant's parking, visibility or access without Tenant's consent, which may be withheld in Tenant's reasonable discretion.

(C)    Prohibited Uses in Common Area. Unless otherwise permitted by the REA or by the terms of any lease entered into by Landlord prior to the date of this Lease, Landlord covenants that it shall not, without Tenant's express written consent, permit the following uses or activities to occur in the Common Areas:  (1) advertisements or signs except for the pylon and/or monument signs described in paragraph 8, the "for rent" signs described in paragraph 40 and traffic control signs; (2) display or sale of merchandise, except on the sidewalks immediately adjacent to a tenant's premises and in the promotional areas set out in the REA; (3) operation of loudspeakers or other sound electronically amplified so as to be heard

33