# EXHIBIT A – PART 3

in the Common Areas; (4) imposition of a charge for parking; or (5) operation of cellular telephone or other telecommunication tower for use by any other party not an occupant of the Shopping Center. Landlord further covenants that it will not seek, nor permit any other occupant of the Shopping Center to seek, a variance or waiver from the minimum parking requirements applicable to the Shopping Center under the zoning code or other applicable ordinance establishing the ratio of parking spaces to building area or otherwise mandating the number of parking spaces required for the Shopping Center and the uses contained therein. Parking by employees of Tenant, Landlord and other occupants of the Shopping Center shall be designated "employee parking" areas, the location of which are as set forth in the REA.

(D) <u>Easements</u>. Landlord shall not subdivide, parcel or otherwise divide the Shopping Center without burdening such subdivided parcels with the restrictions set forth in this Lease, or create any easements in the Tenant's Preferred Area, which interfere with Tenant's use of the Premises or are underneath the Improvements, without Tenant's prior written consent, which consent shall not be unreasonably withheld.

(x) <u>Interference with Tenant's Reception/Transmission</u>. Landlord shall not install and shall use reasonable efforts not to permit to be installed by any other tenant or other person anywhere in the Shopping Center, any structure or equipment which would cause any interference with satellite, radio, telecommunications or television reception or transmission in or from the Building.

(xi) <u>Notices Affecting the Premises</u>. Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises or the Shopping Center received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or the Shopping Center or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises, Shopping Center or any such neighboring property.

(b) . Tenant represents and warrants and, with respect to subparagraph (ii) below also covenants, to Landlord that:

(i) <u>Tenant's Authority</u>. Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(ii) <u>Tenant's Warranty as to Hazardous or Toxic Materials</u>. As to Tenant's use and occupancy of the Premises and use of the Common Areas, Tenant will not introduce, discharge, dump, spill or store within the Premises or the Shopping Center any Hazardous Substances; and Tenant indemnifies and agrees to hold Landlord harmless from and against all costs, losses, liabilities and damages as a result thereof, including, without limitation, all third party claims (including sums paid in settlement thereof, with or without legal proceedings which amounts have been approved by Tenant not to be unreasonably withheld) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or expert fees and all costs incurred in enforcing this indemnity. Notwithstanding anything contained herein to the contrary, in no event shall Tenant or Landlord be liable for any claims by Landlord for compensatory or punitive damages, lost profits or other consequential damages. The warranty and indemnity of Tenant described in this paragraph 19(b)(ii) shall survive the termination of this Lease.

(c) If Landlord shall default in the observance or performance of the covenants set forth above, then in addition to such other remedies as may be accorded Tenant at law, in equity or under the terms of this Lease. Tenant may, in addition to its other remedies under this Lease, after thirty (30) days' notice to Landlord, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of Tenant's legal remedy and the irreparable harm which would be cause to Tenant by any such variance or default.

20. <u>Estoppel Certificates</u>. Without charge, at any time within thirty (30) days after receipt of written request by either party, the other party shall certify, in writing, to any other entity ("Person") specified in such request: (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term (if known at the time of the request); and (f) as to any other matters which may reasonably be requested. In addition, without charge, at any time within thirty (30) days after receipt of written request of Tenant,

35                                         374052 v10 (00051.00112.000)

Landlord shall deliver an estoppel certificate to Tenant's assignee or subtenant that states in the event Tenant defaults under its obligations under this Lease following the date of any assignment or subletting, Landlord will permit such assignee or subtenant to satisfy obligations of Tenant, including but not limited to the direct payment of rentals to Landlord. Any such certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same. In the event either party fails to provide the certificate required hereby when due, the requesting party shall be permitted to provide a second written request for such certificate, and if such party fails to deliver the certificate as required within five (5) business days following such second written notice, such party shall be in default under this Lease without the giving of additional notices.

21. Subordination, Non-Disturbance and Attornment.

(a) Simultaneously with the execution hereof, Landlord shall deliver to Tenant with regard to any and all Mortgages (as defined below) encumbering the Shopping Center, a non-disturbance and attornment agreement in the form and substance of Exhibit "G" attached, executed by the holder of such Mortgage ("Mortgagee"). In addition, throughout the term, Landlord shall deliver to Tenant a non-disturbance and attornment agreement in the form of Exhibit "G" (with such changes as are customarily made in such agreements between large institutional lenders and Tenant and such other modifications as may be reasonably acceptable to Tenant and such Mortgagee) executed by Mortgagee (as applicable) with regard to all future Mortgages and with regard to all renewals, modifications, replacements and extensions of such Mortgages. Upon Tenant's execution of said non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Mortgage. Landlord shall cause any present or future Mortgagee to deliver a non-disturbance and attornment agreement in accordance with this paragraph 21 at or prior to the time the lien of the Mortgage is filed against record title to the Shopping Center. As used in this paragraph 21, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Shopping Center or any part thereof. After the delivery by Landlord of the non-disturbance and attornment agreement issued by the Mortgagee providing the Tenant Improvement Allowance, Landlord agrees to pay Tenant's reasonable attorney's fees incurred in negotiating any additional non-disturbance and attornment agreements, (exclusive of Landlord's

initial permanent loan for the Shopping Center and exclusive of any such instruments required in connection with the first sale of the Shopping Center by Landlord) reciprocal easement agreements or other documents required in the event Landlord sells, finances or refinances the Premises or Shopping Center, or enters into any other transaction requiring the execution of same, including the reasonable equivalent of such fees in the event Tenant elects to utilize in-house legal counsel for the provision of such services, the payment of which fees shall be a condition precedent to the effectiveness of Tenant's execution of such non-disturbance and attornment agreement, reciprocal easement agreement or other document (provided Landlord shall only be obligated to pay Tenant's attorneys' fees to the extent Landlord makes such request more frequently than once every three (3) years).

(b)    Landlord shall, from time to time, upon the request of Tenant, enter into agreements with Tenant and its subtenants providing, in part, that, in the event of any termination of this Lease, all of the rights of any such subtenant(s) under its sublease will be recognized so long as any such subtenant is not in default under its sublease beyond notice and cure periods, provided that as a pre-condition thereto such (i) subtenant agrees that it will attorn to Landlord and will execute and deliver such instrument as Landlord shall reasonably request to confirm such attornment, (ii) the terms of the sublease are substantially consistent with the terms of this Lease, (iii) the sublease is for the entire Premises, (iv) there is no increase in the obligations or decrease in the rights and remedies of the Landlord or rights of the subtenant, (v) Landlord has been furnished with a copy of the sublease agreement, and (vi) Landlord shall not be obligated to recognize any subsequent sublease by such subtenant.

In the event of Landlord's failure to deliver to Tenant the non-disturbance and attornment agreements on a timely basis as required under paragraphs 21(a) and (b) above and in paragraph 35 hereof, Tenant shall be entitled to give a second written notice to Landlord requesting same and if Landlord has not delivered same within five (5) business days following such second written notice, Tenant shall be entitled to two (2) days' abatement of Base Rent for each day that the non-disturbance and attornment agreement is past due, notwithstanding any other remedies available to Tenant in connection therewith otherwise in this Lease. Such rental abatement shall be applied by Tenant as Tenant so desires, and if Base Rent is not then due, abatement in the amount of the Base Rent shall be applicable to Ground Rent if Ground Rent is then due, but in the amount of Base Rent as if Base Rent were due.

22. <u>Tenant's Financing</u>. Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, secure financing or general credit lines and grant the lenders, as security, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) if Landlord fails to pay the Tenant Improvement Allowance, a collateral assignment of Tenant's leasehold interest in the Premises with rights to reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness and provided, further, however, that once Landlord has paid the Tenant Improvement Allowance, the provisions of this clause (iii) shall be null, void and of no further effect. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to consent in writing (in a form reasonably acceptable to Landlord) to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure). In addition, Landlord agrees to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described in paragraph 23 below.

23. <u>Tenant's Property and Waiver of Landlord's Lien</u>. All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly waives its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent against the Personalty of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time upon Tenant's request.

24. <u>Memorandum of Lease; Commencement Date Agreement</u>. Landlord and Tenant agree, at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached as <u>Exhibit "H"</u>, setting forth such provisions hereof as may be required by State law. In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached as <u>Exhibit "I"</u>, once the Commencement Date has been established. Recording costs for either or both documents shall be borne by the party requesting recordation of the same. The provisions of this Lease shall control, however, with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

25. <u>Expiration of Term and Holding Over</u>. At the expiration or earlier termination of the Lease, Tenant shall surrender the Premises in good order and repair and in a broom clean condition. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and at one hundred fifteen percent (115%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year.

26. <u>Force Majeure</u>. Except as otherwise specifically contemplated in this Lease or in the Construction Provisions, in the event that Landlord or Tenant shall be delayed or prevented from the performance of any act required by reason of strikes, lockouts, labor troubles, inability to procure materials, delay, acts or omissions by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Improvements, the consequences of delays by the other party shall be governed by paragraphs 28(d) and 29(c) of this Lease.

27. <u>Events of Tenant's Default</u>. Any of the following occurrences by Tenant shall constitute an "Event of Default" under this Lease:

(a) <u>Failure to Pay Rent; Breach</u>. (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent, CAM Charges or Real Estate Taxes) (subject to Tenant's right of good faith contest Real Estate Taxes), or to provide an estoppel certificate as and when required by paragraph 20 hereof, within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue (in which event the delinquent amount shall accrue interest from the due date at the Default Rate); or (ii) Tenant's failure to observe or perform any other provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure within such thirty (30) day period and diligently prosecutes the cure to completion. In the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)  <u>Bankruptcy</u>.  Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within ninety (90) days after it is begun.

28.  <u>Landlord's Remedies</u>.  After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a)  <u>Continue Lease</u>.  Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due.  Landlord shall also have the right, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord agrees to make), at its option, from time to time to terminate Tenant's right to possession of the Premises, without terminating this Lease, and without the same being considered an unlawful entry or eviction, to relet the Premises, or any part thereof, with or without legal process, for the account of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including, without limitation, necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord under this Lease.  If a sufficient amount to pay such expenses and sums shall not be realized or secured, then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise.  Any such reletting herein provided for may be for the remainder of the Term or for a longer or shorter period (provided that any liability or obligations of Tenant hereunder shall not extend beyond the end of the Term regardless whether such reletting is for a longer period).  Landlord shall have the right to change the character and use made of the Premises, and Landlord shall not be required to accept any substitute tenant offered by Tenant or to observe any instructions given by Tenant about reletting.  Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord in reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present obligations of Tenant hereunder.  Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

40                          374052 v10 (00051.00112.000)

(b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified. In the event of such termination, Landlord shall be entitled to accelerate the Base Rent. If Landlord does accelerate the Base Rent due hereunder (or Ground Rent, if applicable), then the accelerated Base Rent shall be equal to the Base Rent which accrued prior to the date of termination plus the Base Rent that would have accrued during the balance of the Lease Term (as if this Lease had not been terminated) less the fair rental value of the Premises for the corresponding period. The accelerated Base Rent shall be discounted to present value at an annual interest rate equal to eight percent (8%). Upon payment to Landlord of the accelerated Base Rent discounted to present value, Tenant shall be released from all further liability under this Lease. Landlord shall never be entitled to recover from Tenant any consequential, punitive or incidental damages (including, without limitation, lost business opportunity), or to dispossess Tenant of the Premises pursuant to any "lock-out" or other non-judicial remedy. In the event this Lease or Tenant's right to possession shall be terminated as provided above, by summary proceedings or other judicial means, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings or other judicial means, without being liable to indictment, prosecution or damage therefor and repossess and enjoy the Premises, together with all additions, alterations and improvements, without such re-entry and repossession working a forfeiture or waiver of the rents to be paid and the covenants to be performed by Tenant during the term of this Lease.

(c) <u>Reimbursement for Landlord's Costs in Exercising Remedies</u>. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing and renovating the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation, attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative, consequential or punitive damages caused by Tenant's failure to perform its obligations under this Lease.

41

(d) <u>Equitable Remedies</u>. Subject to Tenant's rights set forth herein, Landlord shall at all times have the right to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease or restrain or enjoin a violation of any provision hereof.

(e) <u>Remedies Are Cumulative</u>. The various rights and remedies reserved to Landlord are cumulative, and Landlord may pursue any and all such rights and remedies (but no others), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease). Notwithstanding anything to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

(f) <u>Additional Landlord Remedies Due to Construction Delays by Tenant</u>. If, subject to force majeure, Tenant shall fail to achieve Substantial Completion by that date which is two hundred forty (240) days following Delivery of the Land, Landlord, at its option, upon prior written notice to Tenant, may require Tenant to commence payment of Ground Rent on the date which is two hundred forty (240) days following Delivery of the Land.

In the event, for any reason and regardless of force majeure, Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following Delivery of the Land, Landlord shall be entitled to terminate this Lease upon sixty (60) days prior written notice to Tenant, during which sixty (60) day period Tenant may cure any such default.

For purposes hereof, annual Ground Rent shall equal $151,335.00, payable monthly in equal installments of 1/12 each of the amount of the annual Ground Rent, in lieu of Base Rent, for so long as Tenant's failure continues.

29. <u>Events of Landlord's Default; Tenant's Remedies</u>.

(a) <u>Default by Landlord</u>. Any of the following shall constitute an "Event of Default": (i) Landlord's failure to make any payments of money due Tenant or any third party as required under this Lease, including, but not limited to, the payment of the brokerage commissions pursuant to paragraph 33, within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest from the due date at the Default Rate); or (ii) Landlord's failure to perform any nonmonetary obligation of Landlord within thirty (30) days after receipt of written notice from Tenant to

Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion. Notwithstanding the foregoing, with respect to any event of default described in subparagraph (c) below, Tenant shall not be obligated to deliver any notice of default nor any opportunity to cure such default, it being agreed that with respect to the dates set forth therein time is of the essence.

(b)    Remedies Upon Landlord's Default. Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and offset Tenant's actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against the Base Rent, CAM Charges and all other amounts and charges due Landlord, or (ii) if such failure continues uncured for an additional five (5) days after a second written notice to Landlord and Landlord's Mortgagee, terminate this Lease and sue for damages, including, without limitation, interest, transaction costs and attorneys' fees, provided Tenant gives prior written notice and the same opportunity to cure as is provided herein to Landlord to any Mortgagee of Landlord. Notwithstanding the foregoing, Tenant shall not be allowed to offset more than fifty percent (50%) of the Base Rent, CAM Charges and other amounts and charges due during any one (1) month period during the first six (6) months of any offsetting (unless to do so would not permit Tenant to recoup all of its damages prior to the expiration of the Term) and to the extent any arrearage remains thereafter such offset may be one hundred percent (100%) of all Base Rent, CAM Charges, and other sums due Landlord. Any unrecovered offsets accumulated by Tenant under this subparagraph shall accrue interest at the Default Rate and may continue to be offset as herein provided until paid in full. If Landlord fails to pay Tenant the Tenant Improvement Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in this paragraph and the Construction Provisions; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. The various rights and remedies reserved to Tenant are cumulative,

43

Exhibit(s) A Part 3    Page 12 of 18

and Tenant may pursue all rights and remedies, whether at the same time or otherwise. Notwithstanding anything to the contrary contained herein, in no event shall Landlord be liable to Tenant for any speculative, consequential or punitive damages caused by Landlord's failure to perform its obligations under this Lease.

   (c) <u>Additional Remedies For Delays in Delivery of the Land</u>. In addition to the remedies provided above, in the event, subject to force majeure, Landlord shall fail to accomplish Delivery of the Land on or before the date of this Lease (the "Delivery Date"), Landlord agrees that it shall reimburse Tenant for its fixed and ascertainable costs incurred as a result thereof in the exercise of all reasonable efforts to open for business by November 1, 2003. Such costs shall be limited to Tenant's actual, out-of-pocket expenses of construction overtime, acceleration charges and bonuses paid to Tenant's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed due to the delays by Landlord and construction period interest charges actually incurred to the extent that such charges exceed those which would have accrued without such delay.

In addition to the remedies set forth hereinabove, in the event, for any reason whatsoever, and regardless of force majeure, Landlord shall fail to accomplish Delivery of the Land by the date which is fifteen (15) days following the Delivery Date, then Tenant shall receive two (2) "free" days of Base Rent for each day past said fifteenth (15th) day that Delivery of the Land occurs. Such days of "free" Base Rent shall occur at the beginning of the Lease Term.

Notwithstanding the foregoing and in addition to the remedies set forth hereinabove, in the event, for any reason whatsoever and regardless of force majeure, Landlord shall fail to complete Delivery of the Land to Tenant by the date which is thirty (30) days from the Delivery Date, Tenant shall be entitled, as Tenant's sole and exclusive remedy for Landlord's failure, to terminate this Lease at any time prior to such delivery and receive from Landlord promptly thereafter a sum equal to the actual out-of-pocket expenses and substantiated third-party legal, architectural, engineering and other costs incurred by Tenant to the date of termination (not to exceed $200,000.00 in the aggregate), or Tenant may elect to delay opening of its store facility for a period not to exceed nine (9) months, during which time Tenant shall pay no Ground Rent, Base Rent, Real Estate Taxes or CAM Charges, in which event Landlord shall deliver the Land and complete the Site Delivery Work on the date subsequently required by Tenant, and Landlord shall pay to Tenant on demand an amount equal to all costs incurred by Tenant in the

development of its store facility, including, but not limited to, costs of materials and all engineering, architectural, legal fees, and costs of delay resulting from Landlord's failure to timely deliver.

(d) <u>Additional Tenant Self-help, Equitable and Legal Remedies Due to Construction Delays by Landlord</u>. In the event that Landlord defaults at any time in completion of any component of the Landlord Work (as defined in <u>Exhibit "C"</u> attached hereto), including, without limitation, Delivery of the Land, in addition to any other rights and remedies set forth hereinabove, Tenant shall have the right, but not the obligation, to do any or all of the following:

(i) *perform at Landlord's sole cost and expense, all or any part of the Landlord Work;* Tenant shall exercise this right by providing Landlord with five (5) days prior written notice thereof, which notice shall reasonably detail those portions of the Landlord Work which Tenant elects to complete, at any time following the date Landlord could reasonably have been expected to commence that portion of Landlord Work in order to complete said Landlord Work by the time required hereunder; in the event and to the extent that Tenant exercises its right hereunder, Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete said portions of the Landlord Work; Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense; Landlord covenants, upon Tenant's request, to provide Tenant with duplicate sets of all plans, *specifications and contracts prepared in connection with the construction of the Shopping Center,* as well as schedules of all contractors, subcontractors and suppliers; Landlord agrees to reimburse Tenant for any and all costs incurred by Tenant in connection with any portion of the Landlord Work which Tenant completes within ten (10) days after receipt of written request therefor from Tenant, which request shall be reasonably supported by invoices and/or written description of the Landlord Work performed; in the event that Landlord does not timely reimburse Tenant as hereinabove contemplated, Tenant shall be entitled to deduct the costs of such Landlord Work from rentals and other payments due under the Lease, together with interest at the Default Rate from the date of expenditure by Tenant until paid in full subject to the limitations set forth in paragraph 29(b);

(ii) seek injunctive relief, specific performance or other equitable remedies against Landlord to require Landlord to perform its obligations hereunder, all costs of

45

which litigation (including Tenant's attorneys' fees and court costs) shall be borne by Landlord; and/or seek legal remedies available to Tenant, the costs of which shall be borne by Landlord, including, without limitation, attorneys' fees and court costs.

(e) <u>Tenant Remedies Due to Landlord's Failure to Pay the Tenant Improvement Allowance</u>. If Landlord fails to pay the Tenant Improvement Allowance in full on or before its due date, Landlord shall be in default hereunder, no Ground Rent, Base Rent or CAM Charges shall be due or owing to Landlord until the same is paid to Tenant, together with interest which shall accrue on the unpaid Tenant Improvement Allowance at the Default Rate commencing on the thirty-first (31st) day following Substantial Completion (as defined in the Construction Provisions) until the date of payment of the Tenant Improvement Allowance; provided, however, that if Landlord has not tendered payment of the Tenant Improvement Allowance and interest by that date which is one (1) year from Substantial Completion (the "Substantial Completion Anniversary"), then (i) such date shall become the Commencement Date; (ii) Base Rent shall be reduced to ground rent equal to Fifty Thousand and No/100 Dollars ($50,000.00) per annum during the Term of the Lease; and (iii) this Lease shall be converted to a ground lease, with ownership of the Improvements remaining with Tenant, and Landlord's and any Mortgagees' names being removed as additional insureds or mortgagees on any casualty insurance described in paragraph 14(a) of this Lease. Landlord and Tenant covenant and agree that upon the reasonable written request of either Tenant or Landlord, Landlord and Tenant shall execute such documentation as necessary to formalize the conversion of this Lease to a ground lease upon the Substantial Completion Anniversary.

At any time following the Substantial Completion Anniversary and upon thirty (30) days prior written notice, Tenant shall have the right at Tenant's sole election, but not the obligation, in lieu of the requirement that Landlord pay to Tenant the Tenant Improvement Allowance, to mortgage, sell, convey, assign, lease or otherwise encumber (collectively, a "Transfer") Tenant's interest in the Building, the Improvements and the Lease. Such right shall be in addition to the rights of Tenant set forth in paragraph 22 of this Lease.

Landlord covenants to (i) execute all documents necessary to permit Tenant to effect the Transfer described herein, and (ii) cause any Mortgagee to specifically acknowledge the rights of Tenant's lender and third parties arising as a result of such Transfer. Notwithstanding such

Transfer, Tenant shall continue to pay the ground rentals described in this subparagraph (e) during the remainder of the Term.

(f) <u>Exercise of Remedies</u>. Notwithstanding the foregoing, a delay by Tenant in exercising its cure rights or other remedies shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by Landlord. All sums owing to Tenant under paragraph 29 shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent and CAM Charges otherwise due subject to the limitations set forth in paragraph 29(b).

(g) <u>Time is of the Essence</u>. Notwithstanding anything contained to the contrary, subject to force majeure (expressly provided herein), Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule. In the event that Landlord fails to complete its construction and delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth in this paragraph 29 and the Construction Provisions.

30. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

31. <u>Compliance with Applicable Laws</u>. During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters (collectively, the "Lawful Requirements") respecting Tenant's use and occupancy of the interior of the Improvements and Landlord shall comply with all Lawful Requirements relating to the exterior of the Building and Common Areas. In the event that Tenant, after thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such

374052 v10 (00051.00112.000)

requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, following thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and Landlord shall be obligated to reimburse Tenant therefor within ten (10) days following written request accompanied by reasonably supporting documentation of the costs incurred by Tenant, and if Landlord has not reimbursed within ten (10) days after such written request to Landlord, Tenant may deduct the reasonable cost thereof plus interest at the Default Rate from the due date with the next installment or installments of Base Rent, subject to the limitations set forth in paragraph 29(b).

    32.    <u>Notices</u>. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

| | |
|---|---|
| If to Tenant: | CIRCUIT CITY STORES WEST COAST, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Corporate Secretary |
| If to Landlord: | GATEWAY PAVILIONS, L.L.C.<br>c/o Kitchell Development Company<br>1707 East Highland Avenue<br>Phoenix, Arizona 85016<br>Attention: Mr. Jeff Allen |

with copies to:     Gallagher & Kennedy, P.A.
                    2575 East Camelback Road
                    Phoenix, Arizona 85016-9225
                    Attention: Alexander L. Broadfoot

and to:             Martin L. Flicker, Esq.
                    1000 Quail Street, Suite 210
                    Newport Beach, California 92660

or to such other addressees as any party shall from time to time give notice to the other party in accordance with this paragraph.

33.    Brokers. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Phoenix Commercial Advisors and The Equity Group ("Equity Group") (together, "Brokers"), each of which shall be paid a commission by Landlord pursuant to a separate written agreement with Brokers, a copy of which Landlord agrees to deliver to Tenant on or before the Effective Date. Landlord agrees that Equity Group is representing Tenant with respect to this leasing transaction, and, although Landlord is responsible for payment to Brokers of the Broker's commission, Equity Group owes no fiduciary's, agent's or other duty whatsoever to Landlord. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party has purported to have dealt. If Landlord fails to timely pay the brokerage commissions described above, Tenant may, at Tenant's option, elect to do so, whereupon Landlord shall reimburse to Tenant the amount so paid within fifteen (15) days following receipt from Tenant of notification thereof, together with interest at the Default Rate from the date of Tenant's payment through the date of reimbursement. If Landlord has failed to pay such amount within such fifteen (15) day period, Tenant may, at its election, offset such amounts from its payments of Base Rent, Ground Rent, CAM Charges and other amounts due hereunder, subject to the limitations set forth in paragraph 29(b). Landlord represents to Tenant that Landlord has entered into a binding brokerage commission agreement in writing with Brokers and heretofore or simultaneously herewith delivered a copy thereof to Tenant.

34.    Miscellaneous.

49

(a) <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) <u>Construction</u>. The parties agree that all the provisions are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph.

(c) <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party waives its right to trial by jury.

(d) <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) <u>Entire Agreement; Merger</u>. This Lease, including all exhibits (which are incorporated by reference for all purposes), contains the full and final agreement between the parties concerning the subject matter of this Lease, and all preliminary negotiations and agreements between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) <u>Attorneys' Fees</u>. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g) <u>Partial Invalidity</u>. If any provision of this Lease or the application to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial