# EXHIBIT A – PART 6

5.   Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted);

6.   Any automobile, truck, trailer, boat or recreational vehicle sales, leasing or display;

7.   Any "Pornographic Use", which shall include, without limitation, a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational, or a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto. The parties hereto acknowledge and agree the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Borders and Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder;

8.   Any massage parlor;

9.   Any medical offices, other than those typically located in first class shopping centers and then not located in the buildings identified as "Majors" on the Site Plan, or medical clinics or family planning facilities e.g. Planned Parenthood;

10.   Any office use, other than: (x) office space used in connection with and ancillary to a permitted retail use hereunder; and (y) retail offices providing services commonly found in similar first-class shopping centers in the Phoenix metropolitan area (for example, financial services, real estate brokerage, insurance agency, banking, travel agency).

11.   Any pawn shop, gun shop, or tattoo parlor;

12.   Any car wash located in the areas labeled "Majors", "Shops 4", "Pad K" or "Pad L" on the Site Plan.

13.   Any catering or banquet hall;

14.   Any bowling alley or skating rink;

15.   Any live performance theater, auditorium, meeting hall, sporting event, or other entertainment use "Entertainment Use" (as defined in the REA);

16.   Any training or education facility, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this

374052 v10 (00051.00112.000)

prohibition shall not be applicable to on-site employee training by an occupant incidental to the conduct of its business at the Shopping Center;

17. Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as black-jack or poker; slot machines; video poker/black-jack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not apply to such gambling activities, so long as such activities are incidental to the business operation being conducted by the occupant;

18. Any carnival, amusement park or circus;

19. Any daycare center located in the areas labeled "Majors", "Shops 4", "Pad K" or "Pad L" on the Site Plan;

20. Any children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's") in the areas labeled "Pad L" "Shops 4" or "Majors" on the Site Plan;

21. Any beauty parlor or nail salon located in the areas labeled "Majors", "Pad K" or "Pad L"; or

22. Any health spa, exercise facility or similar type business located in the areas labeled "Majors", "Pad K" or "Pad L".

C.    Permitted Encumbrances.

1. Construction, Operation and Reciprocal Easement Agreement, dated __(not dated) 2001, made and entered into by and among Gateway Pavilions, L.L.C., an Arizona limited liability company, Harkins Phoenix Cinemas, L.L.C., an Arizona limited liability company, and Costco Wholesale Corporation, a Washington corporation, recorded November 5, 2001, as Instrument No. 01-1034470 and re-recorded to correct page discrepancies on February 14, 2002, as Instrument No. 02-157426 in the Official Records of Maricopa County, Arizona.

2. Contract and Grant of Easement, not dated, but executed and delivered on November 13, 1939, by Connie Butler Spratlen and K.C. Spratlen, as grantor, to the United States of America, as grantee, recorded December 22, 1939, in Book 59, beginning at Page 173 of the Official Records of Maricopa County, Arizona.

3. Easement and Agreement for Highway Purposes, dated June 27, 1979, executed and delivered by Kuki Nakazawa, as grantor, to Maricopa County, as grantee, recorded August 7, 1979, in Docket 13815, beginning at Page 210 of the Official Records of Maricopa County, Arizona.

374052 v10 (00051.00112.000)

4.    Easement and Agreement for Highway Purposes, dated October 7, 1983, executed and delivered by Pioneer Trust Company of Arizona, as trustee under Trust No. 20553, as grantor, to Maricopa County, as grantee, recorded November 16, 1983, as Instrument No. 83-462019 in the Official Records of Maricopa County.

5.    Easement and Agreement for Highway Purposes, dated August 26, 1985, executed and delivered by Lee Ackerman Investment Company, an Arizona corporation, as grantor, to Maricopa County, as grantee, recorded September 25, 1985, as Instrument No. 85-455048 in the Official Records of Maricopa County, Arizona.

6.    Power Distribution Easement, dated July 16, 2002, executed and delivered by Gateway Pavilions, L.L.C., as grantor, to the Salt River Project Agricultural Improvement and Power District, as grantee, recorded March 12, 2003, as Instrument No. 2003-0307621 in the Official Records of Maricopa County, Arizona.

7.    Memorandum of Development Agreement, dated November 5, 2001, made and entered into by and among Gateway Pavilions, L.L.C., Harkins Phoenix Cinemas, L.L.C., and Costco Wholesale Corporation, recorded November 5, 2001, as Instrument No. 01-1034471 in the Official Records of Maricopa County, Arizona.

8.    Supplemental Agreement, dated December 16, 2002, made and entered into by and between Gateway Pavilions, L.L.C., and Bank of America, N.A., a national banking association, recorded December 16, 2002, as Instrument No. 02-1351083 in the Official Records of Maricopa County, Arizona.

9.    Construction Deed of Trust and Fixture Filing, dated November 2, 2001, executed and delivered by Gateway Pavilions, L.L.C., as mortgagor, to First American Title Insurance Company, as trustee, for the benefit of California Bank & Trust, a California banking corporation, as mortgagee, recorded November 5, 2001, as Instrument No. 2001-1034472 in the Official Records of Maricopa County, Arizona.

10.    First Amendment to Deed of Trust, dated September 26, 2002, executed and delivered by Gateway Pavilions, L.L.C., as mortgagor, to First American Title Insurance Company, as trustee, for the benefit of California Bank & Trust, as mortgagee, recorded October 2, 2002, as Instrument No. 2002-1022825 in the Official Records of Maricopa County, Arizona.

EXHIBIT "G"

After recording return to:

SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
(Mortgage)

This SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, dated the _____ day of _____, 2003, between _____, a _____ ("Mortgagee"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Tenant").

WITNESSETH:

(a)    Tenant has entered into a certain lease (the "Lease") dated June ___, 2003, with Kitchell Development Co. ("Landlord"), covering premises located within that certain property known as Gateway Pavilions Shopping Center, located in the City of Avondale, Maricopa County, Arizona, and more particularly described in Schedule A hereto; and

(b)    Mortgagee has made a loan to Landlord as evidenced and secured by a Deed of Trust recorded _____, _____ in the land records of Maricopa County, Arizona, in Book _____ at page _____ (the "Mortgage"), encumbering the property described in Schedule A; and the parties hereto desire to set forth their agreement with regard to the priority of the Mortgage and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.    The Lease is and shall be subject and subordinate to the lien of the Mortgage insofar as it affects the real property of which the premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2.    Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3.    In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary or foreclosure

proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4.    Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5.    In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

(a)    liable for any act or omission of any prior lessor (including Landlord); or

(b)    liable for the return of any security deposits unless delivered to Mortgagee; or

(c)    bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

(d)    bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6.    Notwithstanding the foregoing, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

7.    Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Mortgagee acquires title to the Shopping Center by foreclosure or otherwise, Mortgagee shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

8.    Mortgagee, Landlord and Tenant, respectively, represent and warrant to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee, Landlord and Tenant have been duly authorized and empowered to execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant shall inure to the benefit of the parties hereto, and their successors and assigns.

9.    Tenant hereby agrees that, upon the occurrence of an Event of Default (as defined in the Lease), Mortgagee shall have the same time period for cure of such default as is given Landlord in accordance with the terms of the Lease, following notice given by Tenant to Mortgagee at the following address, in the same method for notice as is required under the Lease:

10.    All notices between the parties hereto shall be in writing and comply with the terms of paragraph 32 of the Lease.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

MORTGAGEE:

COMPANY NAME

ATTEST:

_____

Its: _____

By: _____
Name: _____
Title: _____

TENANT:

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

ATTEST:

_____

Its: _____

By: _____
      Thomas C. Nolan, Assistant Vice President

**[Note: Attach appropriate notary blocks for the State]**

EXHIBIT "H"

After recording, return to:
Kane, Russell, Coleman & Logan, P.C.
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Attention: Robert J. Riek, Esq.

## MEMORANDUM OF LEASE

This **MEMORANDUM OF LEASE** is made and entered into this _____ day of May,
2003, between **GATEWAY PAVILIONS, L.L.C.**, an Arizona limited liability company, having
an address of c/o Jeff Allen, Kitchell Development, 1707 E. Highland, Phoenix, Arizona 85016
(hereinafter referred to as "Landlord"), and **CIRCUIT CITY STORES WEST COAST, INC.**,
a California corporation, having an address of Deep Run I, 9950 Mayland Drive, Richmond,
Virginia 23233 (hereinafter referred to as "Tenant").

## W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated June _____, 2003,
whereby Landlord has leased to Tenant a portion of the real property commonly known as the
Gateway Pavilions Shopping Center (the "Property") in Avondale, Maricopa County, Arizona,
the legal description of which Property is set forth on Exhibit "A-1" attached hereto, together
with certain non-exclusive easements in, over, upon, across, under and through certain areas of
the Property defined in the Lease as Landlord's Premises, and all easements and rights pertaining
thereto, including, without limitation, those certain rights and non-exclusive easements granted
to or inuring to the benefit of Landlord under that certain (REA or OEA and other easement
estates of record) recorded in Book _____, beginning at Page _____ of the real property records of
Maricopa County, Arizona, in, over, upon, across, under and through the land described therein.
The Lease contains provisions and rights appurtenant to the Property, some of which are as
follows:

I.     Term.  The term of the Lease is for a period of fifteen (15) years, commencing on the
       Commencement Date (as established in the Lease based upon the substantial completion
       of the improvements upon the Property).  Thereafter, Tenant has the right under the Lease
       to renew and extend the term of the Lease for four (4) successive periods of five (5) years
       each.

II.    Exclusive Use Rights.  The Lease provides that Tenant shall enjoy the sole and exclusive
       privilege within the Property to sell, rent, service, repair or rent to own consumer, office
       and automotive electronics products (which include, but shall not be limited to,
       televisions, stereos, speakers and video and audio recorders and players and cameras),

374052 v10 (00051.00112.000)

computer hardware and software and related software services, including internet access services, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment), cellular and wireless telephones and telecommunication devices and related goods, and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items being herein collectively referred to as the "Products"), and the renting, servicing, repairing and warehousing of the Products.

III.    <u>Successors</u>.  The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

IV.    <u>Incorporation of Lease</u>.  All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

V.    <u>Conflicts with Lease</u>.  This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter, modify, expand, diminish or supplement the provisions of the Lease.  In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

<u>LANDLORD</u>:

**GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company**

By:    KDC-GP Partners L.L.C., an Arizona limited liability company, Manager and Member

        By:    Kitchell Development Company, an Arizona corporation, Managing Member

        By_____
        Name:_____
        Title:_____

374052 v10 (00051.0011 2.000)

STATE OF ARIZONA     )
                  ) ss.
County of _____)

      The foregoing instrument was acknowledged before me this ____ day of May, 2003, by _____, the _____ of Kitchell Development Company, an Arizona corporation, the Managing Member of KDC-GP Partners, L.L.C., an Arizona limited liability company, as Manager and Member of GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company, on behalf of the limited liability company.

_____
Notary Public

My Commission Expires:

_____

374052 v10 (00051.00112.000)

TENANT:

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By:   _____
      Thomas C. Nolan, Assistant Vice President

COMMONWEALTH OF VIRGINIA    )
                            ) ss.
COUNTY OF HENRICO           )

     I certify that on June _____, 2003, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas C. Nolan, Assistant Vice President of **CIRCUIT CITY STORES WEST COAST, INC.**, a California corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and on oath acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which he acted executed the instrument.

     **WITNESS** my hand and official seal.

_____
Notary Public in and for the Commonwealth of
Virginia, residing at _____
My commission expires: _____

_____
[Type or Print Notary Name]

374052 v10 (00051.00112.000)

EXHIBIT "I"

COMMENCEMENT DATE AGREEMENT

This COMMENCEMENT DATE AGREEMENT, made as of this _____ day of May, 2003, between GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company (herein called "Landlord"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation (herein called "Tenant").

W I T N E S S E T H:

WHEREAS, Landlord is the owner of certain premises situated in Avondale, Maricopa County, Arizona (herein called the "Premises"); and

WHEREAS, by that certain Lease dated June _____, 2003 (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of Maricopa County, Arizona, on the _____ day of _____, 2003, in Book _____ at Page _____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under Paragraph 24 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.     The term of the Lease commenced on, and the Commencement Date (as such term is defined in the Lease) was, _____, 2003. The term of the Lease shall expire on January 31, _____ unless Tenant exercises any option to extend the term of the Lease or unless the Lease terminates earlier as provided in the Lease.

2.     The date of commencement of the first "Option Period" (as such term is defined in the Lease) shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3.     The date of commencement of the second Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

4.      The date of commencement of the third Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5.      The date of commencement of the fourth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

6.      The date of commencement of the fifth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless the Lease terminates earlier as provided in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

LANDLORD:

GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company

By:     KDC-GP Partners L.L.C., an Arizona limited liability company, Manager and Member

        By:     Kitchell Development Company, an Arizona corporation, Managing Member

        By_____
        Name:_____
        Title:_____

TENANT:

CIRCUIT CITY STORES WEST COAST, INC., a California corporation

By:     _____
        Thomas C. Nolan, Assistant Vice President

374052 v10 (00051.00112.000)

EXHIBIT "J"

## INDEMNIFICATION AGREEMENT

This INDEMNIFICATION AGREEMENT is made this _____ day of May, 2003, between GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company (hereinafter referred to as "Landlord"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation (hereinafter referred to as "Tenant").

## WITNESSETH:

Landlord and Tenant have entered into a Lease (the "Lease"), dated June ___, 2003, whereby Landlord has leased to Tenant a portion of the real property located in Avondale, Maricopa County, Arizona (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement Allowance as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

2.    Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

EXECUTED this _____ day of May, 2003.

LANDLORD:

**GATEWAY PAVILIONS, L.L.C., an Arizona limited liability company**

By:    KDC-GP Partners L.L.C., an Arizona limited liability company, Manager and Member

        By:    Kitchell Development Company, an Arizona corporation, Managing Member

        By_____
        Name:_____
        Title:_____

TENANT:

**CIRCUIT CITY STORES WEST COAST, INC.,** a California corporation

By:_____
      Thomas C. Nolan, Assistant Vice President

374052 v10 (00051.00112.000)

EXHIBIT "K"

GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Guaranty") is dated as of June ___, 2003, and is made and entered into by CIRCUIT CITY STORES, INC., a Virginia corporation (the "Guarantor"), to be effective as of the Effective Date set forth in the Lease.

## RECITALS

A.    This Guaranty is being executed and delivered by Guarantor as an essential inducement to that certain Lease dated as of _____, 2003 (the "Lease"), between Gateway Pavilions, L.L.C., an Arizona limited liability company, owner of the Complex (as hereinafter defined), hereinafter referred to as "Landlord", and Circuit City Stores West Coast, Inc., a California corporation, hereinafter referred to as "Tenant", covering the Premises as described in the Lease.

B.    Unless otherwise defined in this Guaranty, all capitalized terms used in this Guaranty have the same definitions as are set forth in the Lease.

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor agrees, covenants, represents and warrants as set forth below.

1.    <u>Guaranty</u>.  Guarantor hereby unconditionally guarantees the timely payment and performance of all rent, charges, and obligations of Tenant under the Lease or otherwise owing to Landlord and all other documents evidencing or securing the obligations under the Lease or otherwise owing to Landlord, including, without limitation, Tenant's obligations to pay all Base Rent, Ground Rent and all other sums payable under the Lease and to perform all maintenance and indemnity obligations under the Lease (collectively, the "Guarantied Obligations").  This Guaranty is an absolute guaranty of payment and performance and not of collection.  This Guaranty will survive the termination of the Lease and will continue in full force and effect with respect to any of Tenant's obligations under the Lease which are not fully performed upon the termination of the Lease.

2.    <u>Rights of Landlord</u>.  Guarantor authorizes Landlord to, at any time and from time to time, in Landlord's discretion, (a) take and hold, and apply, any security for the Guarantied Obligations; (b) accept additional or substituted security; (c) subordinate, compromise or release any security; (d) release Tenant or any other person from its liability for all or any part of the Guarantied Obligations; (e) participate in any settlement offered by Tenant or any guarantor, whether in liquidation, reorganization, receivership, bankruptcy or otherwise; (f) release, substitute or add any one or more guarantors or endorsers; (g) assign this Guaranty and/or the Guarantied Obligations in whole or in part; or (h) modify, extend and/or amend the Guarantied Obligations.  Landlord may take any of the foregoing actions upon any terms and conditions as Landlord may elect, without giving notice to Guarantor or obtaining the consent of Guarantor and without affecting the liability of Guarantor to Landlord.

374052 v10 (00051.00112.000)

3.   Independent Obligations.   Guarantor's obligations under this Guaranty are independent of those of Tenant or of any other guarantor. Landlord may bring a separate action against Guarantor without proceeding (either before, after or concurrently) against Tenant or any other guarantor or person or any security held by Landlord and without pursuing any other remedy. Landlord's rights under this Guaranty shall not be exhausted by any action of Landlord until all of the Guarantied Obligations have been fully performed.

4.   Waiver of Defenses.   Guarantor waives the applicability and benefit of Arizona Revised Statutes §12-1641 and §12-1642 and Arizona Rule of Civil Procedure 17(f).

5.   Bankruptcy.   Until all of the Guarantied Obligations have been paid and performed in full, Guarantor shall not, without the prior written consent of Landlord, commence, or join with any other person in commencing, any bankruptcy, reorganization, or insolvency proceeding against Tenant. The obligations of Guarantor under this Guaranty shall not be altered, limited, or affected by any proceeding, voluntary or involuntary, involving the bankruptcy, insolvency, receivership, reorganization, liquidation, or arrangement of Tenant, or by any defense Tenant may have by reason of any order, decree, or decision of any court or administrative body resulting from any such proceeding. No limitation upon or stay of the enforcement of any obligation of Tenant by virtue of any such proceeding shall limit or stay Landlord's enforcement of Guarantor's payment or performance of such obligation under this Guaranty. In furtherance of the foregoing, Guarantor agrees that if acceleration of the time for payment of any amount payable by Tenant under the Lease or in respect of the other Guarantied Obligations is stayed for any reason, all such amounts which would be subject to acceleration shall nonetheless be deemed to be accelerated for purposes of this Guaranty and the full amount thereof shall be payable by Guarantor hereunder forthwith upon demand.

6.   Costs and Expenses.   Guarantor agrees to pay, upon Landlord's demand, Landlord's reasonable out-of-pocket costs and expenses, including but not limited to attorneys' fees, costs and disbursements, incurred in any effort to collect or enforce any of the Guarantied Obligations or this Guaranty, regardless whether any lawsuit is filed, and in the representation of Landlord in any insolvency, bankruptcy, reorganization or similar proceeding relating to Tenant or Guarantor. The obligations of the Guarantor under this Section shall include payment of all such costs and expenses incurred by Landlord in enforcing any judgments.

7.   Reinstatement.   Intentionally Deleted.

8.   Subordination.   Intentionally Deleted.

9.   Representations and Warranties.   Guarantor, and each of the persons or entities executing this Guaranty as Guarantor individually, makes the following representations and warranties to their actual knowledge, which are deemed to be continuing representations and warranties until payment and performance in full of the Guarantied Obligations.

9.1.   Guarantor has all the requisite power and authority to execute, deliver and be legally bound by this Guaranty on the terms and conditions herein stated.

9.2.    Guarantor has all the requisite power and authority to transact any other business with Landlord as necessary to fulfill the terms of this Guaranty.

9.3.    This Guaranty constitutes the legal, valid and binding obligations of Guarantor enforceable against Guarantor in accordance with its terms.

9.4.    Neither the execution and delivery of this Guaranty nor the consummation of the transaction contemplated hereby will, with or without notice and/or lapse of time; (a) constitute a breach of any of the terms and provisions of any note, contract, document, agreement or undertaking, whether written or oral, to which Guarantor is a party or to which Guarantor's property is subject; (b) accelerate or constitute any event entitling the holder of any indebtedness of Guarantor to accelerate the maturity of any such indebtedness; (c) conflict with or result in a breach of any writ, order, injunction or decree against Guarantor of any court or governmental agency or instrumentality; or (d) conflict with or be prohibited by any federal, state, local or other governmental law, statute, rule or regulation.

9.5.    No consent of any other person not heretofore obtained and no consent, approval or authorization of any person or entity is required in connection with the valid execution, delivery or performance by Guarantor of this Guaranty.

9.6.    Guarantor will receive substantial and material benefits from the leasing of the Premises to Tenant and the consideration received by Guarantor for this Guaranty is sufficient in all respects.

9.7.    Guarantor presently has and will at all times maintain sufficient assets and tangible net worth to timely pay and perform all of the Guarantied Obligations, and Guarantor will not take any action nor participate in any transaction which would materially impair Guarantor's ability to so pay and perform the Guarantied Obligations.

9.8.    Neither this Guaranty nor any other statement furnished by Guarantor to Landlord in connection with the transactions contemplated hereby (including, without limitation, any financial statements or other business information) contains any untrue statement of material fact or omits to state a material fact necessary in order to make the statements contained herein or therein true and not misleading.

10.    Joint and Several Liability.    Intentionally Deleted.

11.    Inducement; No Assignment.    Guarantor acknowledges that the undertakings given in this Guaranty are given in consideration of Landlord's entering into the Lease and that Landlord would not enter into the Lease but for the execution and delivery of this Guaranty. Guarantor's obligations hereunder are personal to Guarantor and Guarantor may not assign or delegate any of its obligations under this Guaranty without Landlord's prior written consent, which consent may be withheld in Landlord's sole and absolute discretion.

12.    Guarantor Information.    Intentionally Deleted.

374052 v10 (00051.00112.000)

13.    Tenant's Financial Condition.  Guarantor is relying upon its own knowledge and has made such investigation as Guarantor has deemed necessary with respect to Tenant's financial condition.  Guarantor assumes full responsibility for keeping fully informed of the financial condition of Tenant and all other circumstances affecting Tenant's ability to pay and perform its obligations under the Lease, and agrees that Landlord will have no duty to report to Guarantor any information which Landlord receives about Tenant's financial condition or any circumstances bearing on Tenant's ability to perform.  Guarantor agrees that Landlord has made no representations or assurances regarding Tenant's financial condition or Tenant's ability to pay and perform Tenant's obligations under the Lease.

14.    Default.  The occurrence of any one or more of the following events shall, at the election of Landlord, be deemed an event of default under this Guaranty: (a) Guarantor fails to pay any monetary Guaranteed Obligation within 20 days after written demand from Landlord; (b) Guarantor fails to perform any non-monetary Guaranteed Obligation within 60 days after demand therefor from Landlord (or, if Guarantor is not able through the use of commercially reasonable efforts to perform such Guaranteed Obligation within a 60 day period, if Guarantor does not commence to perform such obligation within such 60 day period and diligently pursue such performance to completion); (c) Guarantor fails or neglects to perform, keep or observe any other term, provision, agreement or covenant contained in this Guaranty; (d) the commencement of any liquidation, reorganization, receivership, bankruptcy, assignment for the benefit of creditors or other similar proceeding by or against Guarantor (Guarantor hereby agreeing to consent to the granting of stay relief to Landlord in any such proceeding); (e) if any representation or warranty made in this Guaranty shall be or become false in any material respect; or (f) the death, legal incapacity, dissolution or termination of the Guarantor.  Upon the occurrence of an event of default under this Guaranty, at the option of Landlord, the Guaranteed Obligations shall be accelerated and shall all be due and payable and enforceable against Guarantor (regardless whether the Guaranteed Obligations are then due and payable under the Lease or otherwise) and Landlord may, in its sole discretion, in addition to any other right or remedy provided by law or at equity, all of which are cumulative and non-exclusive, proceed to suit against the Guarantor.

15.    Transfer by Landlord.  Landlord may sell, assign, or otherwise transfer its interest in the Premises, the Lease or this Guaranty at any time.  If Landlord transfers (other than for collateral security purposes) the ownership of Landlord's interest in the Lease, this Guaranty shall, unless Landlord elects otherwise in writing, automatically apply in favor of the transferee with respect to all Guaranteed Obligations arising or accruing from and after the date of the transfer.  In addition, this Guaranty shall remain in full force and effect in favor of the transferor with respect to all Guaranteed Obligations arising or accruing under the Lease prior to the date of the transfer including, without limitation, all Guaranteed Obligations relating to Tenant's indemnity and insurance obligations (and similar obligations) under the Lease with respect to matters arising or accruing during the transferor's period of ownership.

16.    Governing Law; Exclusive Forum; Service of Process.  This Guaranty shall be governed by and construed under the internal laws of the State of Arizona, and no other state's laws shall be applicable thereto.  Each Guarantor hereby unconditionally consents and agrees

374052 v10 (00051.00112.000)

that any legal action brought under this Guaranty may be brought, and shall only be brought, in any State Court of the State of Arizona or in a Federal United States Court in Arizona, and each Guarantor hereby unconditionally consents to the jurisdiction of such courts in connection with any cause of action brought by or against Tenant and/or such Guarantor in any way directly or indirectly related to the Lease or this Guaranty.

   17. <u>Severability</u>. If any one or more of the covenants, provisions or terms of this Guaranty is, in any respect, held to be invalid, illegal or unenforceable for any reason, the remaining portion thereof and all other covenants, conditions, provisions, and terms of this Guaranty will not be affected by such holding, but will remain valid and in force to the fullest extent permitted by law.

   18. <u>Notices</u>. All notices, demands and other communications with, to, from or upon the Guarantor and the Landlord required or permitted hereunder shall be in writing, addressed to the parties at their respective addresses as follows: (a) with respect to Landlord, to the notice address(es) for Landlord under the Lease; and (b) with respect to Guarantor, unless a separate notice address is specified on the signature page of this Guaranty, to Guarantor in care of Tenant at the notice address(es) for Tenant under the Lease; or (c) as to either, at such other address as shall be designated in a written notice to the other complying with the terms of this Section. All such communications shall be deemed effective upon the earliest of (i) actual delivery if delivered by personal delivery; (ii) four Business Days following deposit, first class postage prepaid, with the United States mail; (iii) if sent by certified postage prepaid mail, upon the earliest to occur of (A) four Business Days following deposit thereof in the United States mail, or (B) receipt (or refusal to accept delivery); or (iv) on the next Business Day after deposit with an overnight air courier with request for next business day delivery.

   19. <u>Miscellaneous</u>. No provision of this Guaranty or Landlord's rights hereunder may be waived or modified nor can Guarantor be released from its obligations hereunder except by a writing executed by Landlord. No such waiver shall be applicable except in the specific instance for which given. No delay or failure by Landlord to exercise any right or remedy against Tenant or Guarantor will be construed as a waiver of that right or remedy. All remedies of Landlord against Tenant and Guarantor are cumulative. The provisions of this Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor and Landlord. The term "Tenant" will mean not only the Tenant named herein but also any other person or entity at any time occupying all or any portion of the Premises or assuming or otherwise becoming liable (other than as a guarantor) for all or any part of the Guarantied Obligations. This Guaranty constitutes the entire agreement between Guarantor and Landlord with respect to its subject matter, and supersedes all prior or contemporaneous agreements, representations and understandings.

   All headings in this Guaranty are for convenience only and shall be disregarded in construing the substantive provisions of this Guaranty.

IN WITNESS WHEREOF, this Guaranty has been duly executed on behalf of Guarantor and delivered to Landlord as of the date set forth above, to be effective as of the Effective Date set forth in the Lease.

GUARANTOR:

CIRCUIT CITY STORES, INC., a Virginia corporation

By:_____

Print Name:_____

Title:_____

Notice Address for Guarantor:

Circuit City Stores, Inc.

_____

_____

Attention: _____

374052 v10 (00051.00112.000)