THIS INSTRUMENT PREPARED BY, §
AND AFTER RECORDING RETURN TO: §
Jenkens & Gilchrist, P.C. §
1445 Ross Avenue, Suite 3200 §
Dallas, Texas 75202-2799 §
Attention: Mark R. Vowell, Esq. §
  §
  §
Return to: OZR 14754 ND2 §
Republic Title of Texas, Inc. §
2626 Howell Street, 10th Floor §
Dallas TX 75204 §  [Clerk's Recording Information]

---

**ATTENTION: TAYLOR COUNTY CLERK - THIS INSTRUMENT COVERS GOODS THAT ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE DEED OF TRUSTS ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS INSTRUMENT SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A DEED OF TRUST, BUT ALSO AS A FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES IN THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE GRANTOR (DEBTOR) AND BENEFICIARY (SECURED PARTY) ARE SET FORTH IN THIS INSTRUMENT.**

**A POWER OF SALE HAS BEEN GRANTED IN THIS DEED OF TRUST. A POWER OF SALE MAY ALLOW THE BENEFICIARY TO TAKE THE DEED OF TRUST PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE GRANTOR UNDER THIS DEED OF TRUST.**

---

## DEED OF TRUST, SECURITY AGREEMENT
## AND ASSIGNMENT OF LEASES

GRANTOR:

**NOVOGRODER/ABILENE, LLC,**
an Indiana limited liability company

and

BENEFICIARY:

**SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,**
a Mississippi corporation

DATE:  September 25, 2002

TRUSTEE:

**MARK R. VOWELL**

*DALLAS4 592836v1 21122-00071*

Doc        Bk     Vol      Pg
02016686   OR     2739     501

Beneficiary's Address is:
1401 Livingston Lane (39213)
Post Office Box 78
Jackson, Mississippi 39205
Attention:  Deed of Trust Loan Administration Department


Grantor's Mailing Address is:
Novogroder/Abilene, LLC
875 North Michigan Avenue, Suite 3612
Chicago, Illinois  60611
Attention: George Novogroder
(**"Grantor's Address"**)


**"Grantor's Organizational Number"**
(charter number or number assigned by the Secretary of State of Indiana)
is:

# DEED OF TRUST, SECURITY AGREEMENT
# AND ASSIGNMENT OF LEASES

THIS DEED OF TRUST, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES (the "**Deed of Trust**") is made as of the 25 day of September, 2002, by **NOVOGRODER/ABILENE, LLC,** an Indiana limited liability company, whose address is as stated on the second page of this Deed of Trust ("**Grantor**"), to and in favor of **SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,** a Mississippi corporation, its successors and assigns ("**Beneficiary**"), whose address is as stated on the first page of this Deed of Trust, and Mark R. Vowell of the County of Dallas, State of Texas ("**Trustee**").

## W I T N E S S E T H:

WHEREAS, Grantor is justly and lawfully indebted to Beneficiary for a loan of money (the "**Loan**") in the amount of THREE MILLION TWO HUNDRED TWENTY-FIVE THOUSAND and NO/100 Dollars ($3,225,000.00), as evidenced by that certain Promissory Note of even date herewith given by Grantor in favor of Beneficiary (as the same may hereafter be amended, modified, consolidated, extended, renewed or replaced, the "**Note**"), such Note having a stated maturity date of October 1, 2023; and

WHEREAS, the obligations secured by this Deed of Trust (the "**Obligations**") are: (i) payment and performance of all covenants, conditions, liabilities and obligations contained in, and payment of the indebtedness evidenced by the Note, together with interest and any other amounts payable thereunder; (ii) payment and performance of all covenants, conditions, liabilities and obligations of Grantor contained in this Deed of Trust and in all other documents now or hereafter executed by Grantor or any other Obligor relating to the Loan or held by Beneficiary relating to the Loan, as now existing or hereafter amended (collectively, the "**Loan Documents**"); (iii) all expenses and charges, including attorneys' fees, incurred by Beneficiary in collecting or enforcing any of the Obligations secured hereby; and (iv) all other indebtedness, obligations and liabilities of Grantor to Beneficiary of every kind and description owing or which may become owing by Grantor to Beneficiary, howsoever evidenced, now or hereafter existing in favor of Beneficiary, whether direct or indirect, primary or secondary, joint or several, fixed or contingent, secured or unsecured (collectively, the "**Other Indebtedness**"), and

WHEREAS, Grantor and all makers, endorsers, sureties, guarantors, accommodation parties and all parties liable or to become liable with respect to the Obligations are each referred to herein as an "**Obligor**";

NOW, THEREFORE, to secure the payment of the Obligations and the full and faithful performance of the covenants and agreements contained in this Deed of Trust and the other Loan Documents, Grantor hereby grants, bargains, sells, conveys, assigns, transfers, pledges, delivers, sets over, warrants and confirms to Trustee, in trust forever the following:

All those certain lots, pieces, or parcels of land lying and being in Taylor County, State of Texas, being legally described in **Exhibit "A"** attached hereto and made a part hereof (hereinafter referred to as the "**Land**"),

Doc                 Bk      Vol      Pg
02016686   OR   2739    503

TOGETHER WITH the buildings and improvements now or hereafter situated thereon (collectively, the "**Improvements**").

TOGETHER WITH all and singular the tenements, hereditaments, easements, rights-of-way, riparian rights and other rights now or hereafter belonging or appurtenant to the Land, and the rights (if any) in all adjacent roads, ways, streams, alleys, strips and gores, and the reversion or reversions, remainder and remainders, rents, royalties, income issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of Grantor of, in and to the same and every part and parcel thereof, whether now owned or hereafter acquired by Grantor (collectively, the "**Rights**");

TOGETHER WITH any and all tangible property now or hereafter owned by Grantor and now or hereafter located at, affixed to, placed upon or used in connection with the Land or the Improvements, or any present or future improvements thereon, including without limitation: all machinery, equipment, appliances, fixtures, conduits and systems for generating or distributing air, water, heat, air conditioning, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, sewage or garbage, or for fire prevention or extinguishing; all elevators, escalators, lifts and dumbwaiters; all motors, engines, generators, compressors, pumps, lift stations, tanks, boilers, water heaters, furnaces and incinerators; all furniture, furnishings, fixtures, appliances, installations, partitions, shelving, cabinets, lockers, vaults and wall safes; all carpets, carpeting, rugs, underpadding, linoleum, tiles, mirrors, wall coverings, windows, storm doors, awnings, canopies, shades, screens, blinds, draperies and related hardware, chandeliers and light fixtures; all plumbing, sinks, basins, toilets, faucets, pipes, sprinklers, disposals, laundry appliances and equipment, and kitchen appliances and equipment; all alarm, safety, electronic, telephone, music, entertainment and communications equipment and systems; all janitorial, maintenance, cleaning, window washing, vacuuming, landscaping, pool and recreational equipment and supplies; all books, records and software; and any other items of property, wherever kept or stored, if acquired by Grantor with the intent of incorporating them in and/or using them in connection with the Land or the Improvements; together also with all additions thereto and replacements and proceeds thereof; all of which foregoing items described in this paragraph are hereby declared to be part of the real estate and encumbered by this Deed of Trust (collectively, the "**Tangible Property**"); and

TOGETHER WITH (a) any and all awards or payments, including interest thereon and the right to receive the same, growing out of or resulting from any exercise of the power of eminent domain (including the taking of all or any part of the Land or the Improvements), or any alteration of the grade of any street upon which the Land abuts, or any other injury to, taking of, or decrease in the value of the Land or the Improvements or any part thereof; (b) all rights of Grantor in and to any hazard, casualty, liability, or other insurance policy carried for the benefit of Grantor and/or Beneficiary with respect to the Improvements or the Tangible Property, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for any loss of or damage to all or any portion of the Improvements or the Tangible Property; (c) all rights of Grantor in and to all supplies and building materials, wherever located, for the construction or refurbishing of the Improvements, and any bill of lading, warehouse receipt or other document of title pertaining to any such supplies and materials; and (d) all rights of Grantor in, to, under, by virtue of, arising from or growing out of any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, prepaid fees, chooses-in-action, subdivision restrictions or declarations or other

Page 2 of 34

general intangibles whatsoever now or hereafter dealing with, affecting or concerning the Land or the Improvements or any portion thereof or interest therein, including but not limited to: (i) all contracts, plans and permits for or related to the Land or its development or the construction or refurbishing of the Improvements; (ii) any agreements for the provision of utilities to the Land or the Improvements; (iii) all payment, performance and/or other bonds; (iv) any contracts now existing or hereafter made for the sale by Grantor of all or any portion of the Land or the Improvements, including any security and other deposits paid by any purchasers or lessees (howsoever such deposits may be held) and any proceeds of such sales contracts and lease contracts, including any purchase-money notes, deeds of trust and Deed of Trusts made by such purchasers; (v) any other contracts and agreements related to or for the benefit of the Land, Rights, Tangible Property and/or Improvements, including leases, repair and maintenance contracts and/or management agreements; (vi) all funds, accounts, instruments, documents, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, notes, and chattel paper arising from or by virtue of transactions related to the Land and Improvements; (vii) without limiting the foregoing, the following now-existing or hereafter-acquired types of collateral of every kind and nature that are owned by Grantor in connection with Grantor's business (as such terms may be defined in the Texas Business and Commerce Code, as may be amended from time to time (the "**Uniform Commercial Code**"):    Accounts (including health-care insurance receivables), Chattel Paper (including Electronic Chattel Paper), Inventory, Instruments (including Promissory Notes), Investment Property, Documents, Deposit Accounts, Letter-of-Credit Rights, General Intangibles (including Payment Intangibles), Software, Supporting Obligations, and to the extent not listed above as original collateral, Proceeds of the foregoing; and (viii) any declaration of condominium, restrictions, covenants, easements or similar documents now or hereafter recorded against the title to all or any portion of the Land (collectively, the "**Intangibles**");

TO HAVE AND TO HOLD the above-described and granted Land, Improvements, Rights, Tangible Property and Intangibles unto Beneficiary, its heirs, successors and assigns in fee simple in trust forever (the Land, Improvements, Rights, Tangible Property and Intangibles are collectively referred to herein as the "**Security Property**").

To secure payment of the Obligations and the full and faithful performance of the covenants and agreements in this Deed of Trust and the other Loan Documents, Grantor hereby Deed of Trusts, grants, bargains, sells, conveys, assigns, transfers, pledges, sets over, warrants and confirms to Beneficiary a security interest in the Tangible Property and the Intangibles.

Grantor covenants with and warrants to Beneficiary: (a) that Grantor has good and marketable title to Security Property, is lawfully seized and possessed of the Land and Improvements and has good right and authority to grant, bargain, sell, assign, and convey the same and to grant a security interest therein as provided herein, fully and absolutely waiving and releasing all rights and claims it may have in or to the Security Property as a homestead exemption or other exemption under any federal, state or local law now or hereafter in effect; (b) that the Security Property is unencumbered and free and clear of all liens, and security interests and title matters whatsoever except for any easements, restrictions or other title exceptions set forth in the title insurance policy delivered to Beneficiary insuring this Deed of Trust, as more particularly described on **Exhibit "B"** attached hereto and made a part hereof (the "**Permitted Exceptions**"); (c) that Grantor is now in a solvent condition and no bankruptcy or insolvency proceedings are pending or contemplated by Grantor or against Grantor; and (d) that Grantor shall forever warrant and defend the title and quiet possession of the Security Property unto Trustee and Beneficiary,

DALLAS4 592836v1 21122-00071

and the validity and priority of the lien of this Deed of Trust, against the lawful claims and demands of all persons whomsoever. This warranty of title shall survive the foreclosure of this Deed of Trust and shall inure to the benefit of and be enforceable by any person who may acquire the Security Property pursuant to foreclosure, trustee's sale or other exercise by Beneficiary of the rights and remedies provided herein.

Grantor further covenants and agrees with Beneficiary as follows:

1.     **Payment and Performance**.   Grantor shall pay all sums due Beneficiary at the time and in the manner provided in the Loan Documents, and Grantor shall otherwise perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants contained in the Loan Documents.

2.     **Taxes, Assessments and Charges**.   Grantor shall pay all taxes, assessments (whether general or special) and other charges whatsoever levied, assessed, placed or made against all or any part of the Security Property or any interest of Beneficiary therein, or against any Loan Document or any obligation thereunder; provided, Grantor may contest taxes and assessments as permitted by law so long as Grantor provides a bond or other adequate security to assure the payment of all taxes and assessments when finally determined.   Absent such a contest and bonding.   Grantor shall make such payment in full (and shall deliver to Beneficiary the paid receipts) not later than thirty (30) days before the last day upon which the same may be paid without the imposition of interest (except interest on special assessments payable by law in installments, in which case Grantor shall pay each such installment when due) or other late charge or penalty.   If Grantor shall fail, neglect or refuse to pay any such taxes, assessments or other charges as aforesaid, then Beneficiary at its option may pay the same, and any funds so advanced by Beneficiary shall bear interest, shall be paid and shall be secured as provided in Section 14.

3.     **Insurance**.

(a)     Grantor shall maintain property insurance with a reputable insurance company or companies with a Best's rating of AVIII or better, licensed in the state in which the Security Property is located and acceptable to Beneficiary, covering all the Improvements, the Tangible Property and all tangible personal property encumbered by this Deed of Trust, for an amount not less than their full insurable value on a replacement cost basis, for the benefit of Grantor and Beneficiary as their interests may appear, by policies on such terms, in such form and for such periods as Beneficiary shall require or approve from time to time, insuring with all risk or special form coverage, and coverage insuring against loss of rents and other income (for no less than twelve (12) full months) and when and to the extent required by Beneficiary, against any other risks.   Regardless of the types or amounts of insurance required and approved by Beneficiary, Grantor shall assign and deliver to Beneficiary all policies of insurance which insure against any loss or damage to the Security Property or any part thereof, as collateral and further security for the payment of the Obligations, with loss payable to Beneficiary pursuant to a standard Beneficiary clause acceptable to Beneficiary.   Beneficiary is hereby authorized at its option to settle and adjust any claims arising out of any insurance coverage so maintained by Grantor.   Any expense incurred by Beneficiary in the adjustment and collection of insurance proceeds shall be reimbursed to Beneficiary first out of any insurance proceeds.

(b)     If Grantor fails to maintain such insurance in force, then Beneficiary at its

Doc 020166686    Bk OR 2739    Vol    Pg 506

option may effect such insurance from year to year and pay the premiums therefor, and any such sums advanced by Beneficiary shall bear interest, shall be paid and shall be secured as provided in Section 14.

(c)    If any insurance proceeds are received for loss or damage to the Improvements or the Tangible Property, then Beneficiary at its option may retain such proceeds and apply them toward the payment of the Obligations (in any order of priority Beneficiary may deem appropriate in its sole discretion), or Beneficiary may disburse them to Grantor for the repair or restoration of the damaged Improvements or Tangible Property in the same manner as disbursements under a construction loan; Beneficiary shall not be obligated to see to the proper application by Grantor of any such disbursement. Notwithstanding the foregoing to the contrary, Beneficiary agrees that such proceeds may be used for restoration of damaged Improvements if the following conditions are fulfilled: (i) No Event of Default (as hereinafter defined) has occurred or is continuing, and no event has occurred which, with the lapse of time or the giving of notice, or both, would constitute an Event of Default hereunder; (ii) such restoration can be fully accomplished within 180 days; (iii) Such restoration will be performed in accordance with plans and specifications approved by Beneficiary; (iv) The cost of restoration does not exceed 30% of the outstanding principal balance of the Note, and Beneficiary is provided with satisfactory evidence that, by expenditure of such proceeds together with funds supplied by Grantor, the damage to such Improvements can be fully repaired, free and clear of all liens for the same; (v) Beneficiary has determined that all payments due hereunder and under the Note will continue to be paid in a timely manner while the Improvements are being so restored; and (vi) no insurer denies liability for all or any part of such damage. If such conditions are met, such proceeds, after deducting therefrom any expenses incurred in the collection thereof, shall be disbursed periodically in accordance with procedures established by Beneficiary as restoration work is completed.

(d)    Grantor shall obtain and carry commercial general liability insurance with a reputable insurance company or companies with a Best's rating of AVIII or better, licensed in the state in which the Security Property is located, and acceptable to Beneficiary, which policy shall name Grantor as insured and Beneficiary as additional insured, with initial limits of not less than One Million Dollars ($1,000,000.00) for each occurrence and a Two Million Dollar ($2,000,000.00) annual aggregate (or such greater or different limits which Beneficiary may require from time to time) and on such terms, in such form and for such periods as Beneficiary shall approve from time to time.

(e)    In the event of a foreclosure of this Deed of Trust, the purchaser of the Security Property shall succeed to all the rights of Grantor in and to all policies of insurance required under this Deed of Trust, including any right to unearned premiums.

(f)    Not less than thirty (30) days prior to the expiration date of each policy required under this Deed of Trust, Grantor shall deliver to Beneficiary a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Beneficiary.

(g)    Each policy of insurance required under this Deed of Trust shall be non-cancelable without at least thirty (30) days' advance written notice to Beneficiary.

DALLAS4 592836v1 21122-00071

4.    __Escrow Account__.  At Beneficiary's option, Grantor shall pay to Beneficiary, together with and in addition to each regular installment of principal and/or interest payable under the Loan Documents, an amount deemed sufficient by Beneficiary to provide Beneficiary with funds in an escrow account sufficient to pay the taxes, assessments, insurance premiums and other charges next due at least thirty (30) days before the last day upon which the same may be paid without the imposition of interest or other late charge or penalty (except interest on special assessments payable by law in installments in which case Grantor shall pay each such installment when due) (the "Due Date").  In no event shall Beneficiary be liable for any interest on any such funds held in the escrow account.  At least thirty (30) days before the Due Date, Grantor shall furnish to Beneficiary an official statement of the amount of said taxes, assessments, insurance premiums and other charges, and Beneficiary shall pay the same, but only if sufficient funds remain in the escrow account.  In the event of any deficiency in the escrow account, Grantor shall upon notice from Beneficiary immediately deposit with Beneficiary such additional funds as Beneficiary may deem necessary to cure the deficiency, in its sole discretion.  If Beneficiary elects to pay any such taxes, assessments, insurance premiums or other charges notwithstanding the escrow account deficiency, then all sums advanced by Beneficiary in excess of the escrow account balance shall bear interest, shall be paid and shall be secured as provided in Section 14.  An official receipt for such sums shall be conclusive evidence of Beneficiary's payment and of the validity of the tax, assessment, insurance premium or other charge so paid.  In the event of any default under this Deed of Trust or any other Loan Document, Beneficiary at its option may apply any or all funds in the escrow account against the Obligations or any other sums secured by this Deed of Trust, in any order of priority Beneficiary may deem appropriate in its sole discretion.  At the time of any permitted transfer of the title to all of the Security Property then encumbered by this Deed of Trust, the balance in the escrow account shall inure to the benefit of such transferee without any specific assignment of such funds.  Upon payment in full of the Obligations, the funds remaining in the escrow account (if any) shall be paid over to the record owner of the Security Property encumbered by this Deed of Trust as of the date of such full payment.  Notwithstanding the foregoing, Beneficiary agrees not to exercise its right to collect escrows for taxes or insurance so long as (i) no Event of Default has occurred and is continuing; and (ii) all such taxes and insurance premiums are paid in a timely manner as and when due, and evidence of such payment is provided to Beneficiary no less than ten (10) days prior to any such payment being delinquent or overdue or beyond any deadline for maximum discounts, as determined by Beneficiary in Beneficiary's sole discretion; provided,  however, that Beneficiary shall have  the right to immediately reinstate its right to collect escrows for taxes and insurance in the event conditions (i) or (ii) above are not met.

5.    __Improvements and Development__.  Without the prior written consent of Beneficiary, which Beneficiary may grant or withhold in its sole discretion, none of the Improvements covered by the lien of this Deed of Trust shall be removed, demolished or materially altered or enlarged (except as required in the event of fire, other casualty or condemnation).  Notwithstanding the foregoing, Grantor shall have the right to remove and dispose of, free from the lien of this Deed of Trust, such Tangible Property as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, Grantor shall have replaced any such Tangible Property with new Tangible Property (of at least the same quality as that of the replaced Tangible Property when it was new) which shall be free from any title retention or other security agreement or other encumbrance, and, by such removal and replacement, Grantor shall be deemed to have subjected such new Tangible Property to the lien of this Deed of Trust.  Without the prior written consent of Beneficiary, which Beneficiary may grant

Doc#
02016686    BK    Vol    Pg
OR    2739    508

or withhold in its sole discretion, Grantor shall not undertake any development of the Land, nor construct any new Improvements thereon, nor initiate or join in or consent to any new (or any change in any existing) private restrictive covenant, zoning ordinance, master plan, site plan, easement, or other public or private restrictions limiting or defining the uses which may be made of the Security Property or any part thereof. Grantor shall complete and pay for any permitted development and/or improvements undertaken on the Land within a reasonable time after commencing the same.

6.    **Maintenance and Repair.** Grantor shall do everything necessary to maintain the Security Property in good condition and repair, shall operate the Security Property in a first-class manner, shall not commit or suffer any waste, impairment, abandonment or deterioration of the Security Property, shall promptly pay all utility fees for services provided to the Security Property, and shall comply with (or cause compliance with) all applicable restrictive covenants and all statutes, ordinances and requirements of any governmental authorities having jurisdiction over the Security Property or the use thereof. In the event of any fire or other casualty loss or damage to all or any part of the Security Property, Grantor shall notify Beneficiary within forty-eight (48) hours of such occurrence. Grantor shall promptly repair, restore, replace or rebuild any part of the Security Property which may be damaged or destroyed by any casualty whatsoever or which may be affected by any condemnation, alteration of grade, or other public or quasi-public taking or injury, except to the extent precluded by Beneficiary's retention and application of the insurance or condemnation proceeds against the Obligations. If Grantor shall fail, neglect or refuse to repair or maintain the Security Property as aforesaid, then Beneficiary may at its option undertake such repairs or maintenance, and any funds advanced therefor by Beneficiary shall bear interest, shall be paid and shall be secured as provided in Section 14.

7.    **Assignment of Leases and Rents and Management Agreements.**

(a)    As further consideration for the making of the Loan evidenced by the Note, Grantor hereby absolutely, presently and unconditionally assigns and transfers to Beneficiary all rents, income, issues and profits of the Security Property and all right, title and interest of Grantor in and under all leases, tenancies, occupancy agreements of any nature whatsoever (and any extensions and renewals thereof) now or hereafter affecting the Security Property (the "Lease(s)"), together with any guaranties thereof and any security deposits or prepaid rent or other deposits or advances thereunder, to be applied by Beneficiary in payment of the Obligations. As further security for the repayment of the Obligations, Grantor hereby assigns and transfers to Beneficiary all right, title and interest of Grantor in and under any and all management agreements of any nature whatsoever (and any extensions and renewals thereof) now or hereafter affecting the Security Property (the "Management Agreements").

(b)    Grantor hereby empowers Beneficiary, its agents or attorneys, to demand, collect, sue for, receive, settle, compromise and give acquittances for all of the rents that may become due under the Leases and to avail itself of and pursue all remedies for the enforcement of the Leases and Grantor's rights thereunder that Grantor could have pursued but for this assignment. Beneficiary is hereby vested with full power and authority to use all measures, legal and equitable, deemed necessary or proper by Beneficiary to enforce this assignment, to collect the rents so assigned, and/or to cure any default and perform any covenant of Grantor as the landlord under any of the Leases, including without limitation the right to enter upon all or any part of the Security Property and to take possession thereof to the extent necessary to exercise such powers.

DALLAS4 592836v1 21122-00071

Beneficiary shall have the right (but not the obligation) to advance any sums necessary to exercise such powers, which sums shall bear interest, shall be paid and shall be secured as provided in Section 14. Grantor hereby empowers Beneficiary to use and apply all such rents and other income of the Security Property to the payment of the Obligations and all interest thereon and any other indebtedness or liability of Grantor to Beneficiary, and to the payment of the costs of managing and operating the Security Property, including without limitation: (i) taxes, special assessments, insurance premiums, damage claims, and the costs of maintaining, repairing, rebuilding, restoring and making rentable the Improvements; (ii) all sums advanced by Beneficiary (with interest thereon) for the payment of such costs or for any other reason permitted by this Deed of Trust or any other Loan Document; and (iii) all costs, expenses and attorney's fees incurred by Beneficiary in connection with the enforcement of this Deed of Trust and/or any Lease; all in such order of priority as Beneficiary may deem appropriate in its sole discretion.

(c)     Beneficiary shall not be obliged to press any of the rights or claims of Grantor assigned hereby, nor to perform or carry out any of the obligations of the landlord under any Lease, and Beneficiary assumes no duty or liability whatsoever in connection with or arising from or growing out of the covenants of Grantor in any Lease. This Deed of Trust shall not operate to make Beneficiary responsible for the control, care, management or repair of all or any part of the Security Property, nor shall it operate to make Beneficiary liable for (i) the performance or carrying out of any of the terms or conditions of any Lease, (ii) any waste of the Security Property by any tenant or any other person, (iii) any dangerous or defective condition of the Security Property, nor (iv) any negligence in the management, upkeep, repair or control of all or any part of the Security Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Grantor hereby indemnifies and holds Beneficiary harmless against any and all liability, loss, claim, damage, costs and attorney's fees whatsoever which Beneficiary may or might incur under any Lease or by reason of this assignment, and against any and all claims or demands whatsoever (and any related costs and attorney's fees) which may be asserted against Beneficiary by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease. Nothing herein contained shall be construed as constituting Beneficiary a Beneficiary in possession.

(d)     Grantor hereby represents and warrants to Beneficiary (and shall be deemed to have represented and warranted to Beneficiary upon and as of the date of delivering to Beneficiary a copy of each Lease), except as previously or concurrently disclosed to and approved by Beneficiary in writing: (i) that each such copy delivered (or to be delivered) to Beneficiary is true, correct and complete; (ii) that Grantor is the sole owner of the entire landlord's interest in each Lease and has not previously assigned or pledged any Lease or any interest therein to any person other than Beneficiary; (iii) that all the Leases are in full force and effect and have not been altered, modified or amended in any manner whatsoever; (iv) that each tenant thereunder has accepted that tenant's respective premises and is paying rent on a current basis; (v) that no default exists on the part of such tenants or on the part of Grantor as landlord in their respective performances of the terms, covenants, provisions and agreements contained in the Leases; (vi) that no rent has been paid by any of the tenants for more than one (1) month in advance; (vii) that Grantor is not indebted to any tenant in any manner whatsoever so as to give rise to any right of set-off against or reduction of the rents payable under any Lease; and (viii) that no payment of rents to accrue under any Lease has been or will be waived, released, reduced, discounted or otherwise discharged or compromised by Grantor directly or indirectly, whether by assuming any tenant's obligations with respect to other premises or otherwise.

Page 8 of 34

Doc
02016686    Bk
OR    2739    Vol    Pg
510

(e)    Grantor covenants and agrees with Beneficiary that each Lease shall remain in full force and effect irrespective of any merger of the interests of the landlord and tenant thereunder.

(f)    Grantor may enter into a proposed Lease (including the renewal or extension of an existing Lease (a "Renewal Lease") without the prior written consent of Beneficiary, provided such proposed Lease or Renewal Lease (i) provides for rental rates and terms comparable to existing local market rates and terms (taking into account the type and quality of the tenant) as of the date such Lease is executed by Grantor (unless, in the case of a Renewal Lease, the rent payable during such renewal, or a formula or other method to compute such rent, is provided for in the original Lease), (ii) is an arms-length transaction with a bona fide, independent third party tenant, (iii) does not have a materially adverse effect on the value of the Security Property taken as a whole, (iv) is subject and subordinate to this Deed of Trust and the lessee thereunder agrees to attorn to Beneficiary, and (v) is written on the standard form of lease approved by Beneficiary. All proposed Leases which do not satisfy the requirements set forth in this Subsection 7 (f) shall be subject to the prior approval of Beneficiary and is counsel, at Grantor's expense. Grantor shall promptly deliver to Beneficiary copies of all Leases which are entered into pursuant to this Subsection together with Grantor's certification that is has satisfied all of the conditions of the Subsection.

(g)    Grantor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of any of the Leases as security for the Obligations; (ii) upon request, shall promptly send copies to Beneficiary of all notices of default which Grantor shall send or receive thereunder; (iii) shall enforce all of the material terms, covenants and conditions contained in the Leases upon the part of the tenant thereunder to be observed or performed; (iv) shall not collect any of the Rents more than one (1) month in advance (except security deposits shall not be deemed Rents collected in advance); (v) shall not execute any other assignment of the lessor's interest in any of the Leases or the rents; and (vi) shall not consent to any assignment of or subletting under any Leases not in accordance with their terms, without the prior written consent of Beneficiary.

(h)    Grantor may, without the consent of Beneficiary, amend, modify or waive the provisions of any Lease or terminate, reduce rents under, accept a surrender of space under, or shorten the term of, any Leases (including any guaranty, letter of credit or other credit support with respect thereto) provided that such action (taking into account, in the case of a termination, reduction in rent, surrender of space or shortening of term, the planned alternative use of the affected space) does not have a materially adverse effect on the value of the Security Property taken as a whole, and provided that such Lease, as amended, modified or waived, is otherwise in compliance with the requirements of this Deed of Trust and any subordination agreement binding upon Beneficiary with respect to such Lease. A termination of a Lease with a tenant who is in default beyond applicable notice and grace periods shall not be considered an action which has a materially adverse effect on the value of the Security Property taken as a whole. Any amendment, modification, waiver, termination, rent reduction, space surrender or term shortening which does not satisfy the requirements set forth in this Subsection shall be subject to the prior approval of Beneficiary and its counsel, at Grantor's expense. Grantor shall promptly deliver to Beneficiary copies of amendments, modification and waivers which are entered into pursuant to this

DALLAS4 592836v1 21122-00071

Doc   Bk   Vol   Pg
02016686 OR  2739  511

Subsection together with Grantor's certification that is has satisfied all of the conditions of this Subsection.

(i)     Notwithstanding anything contained herein to the contrary, Grantor shall not, without the prior written consent of Beneficiary enter into, renew, extend, amend, modify, waive any provisions of, terminate, reduce rents under, accept a surrender of space under, or shorten the term of, any Major Lease.  The term "Major Lease" shall mean any Lease which (i) provides for rental income representing twenty percent (20%) or more of the total rental income for the Security Property, (ii) covers twenty percent (20%) or more of the total space at the Security Property, in the aggregate, or (iii) provides for a lease term of six (6) years or more including options to renew, together with any instrument guaranteeing or providing credit support therefor.

(j)     Grantor and Beneficiary intend that this instrument shall be and is a present, absolute and unconditional assignment of the Leases and the rents, income, issues and profits of the Security Property.  The tenants under all the Leases are hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums which may be or thereafter become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases.

(k)     Grantor has conditionally assigned to Beneficiary by separate agreement of even date herewith all leases and rents with respect to the Security Property, which assignment is in addition to, and cumulative with, the assignment and rights granted to Beneficiary herein. Beneficiary shall have the right to approve any Management Agreement with respect to the Security Property hereafter entered into by Beneficiary, and all managers and management companies thereby selected by Grantor and, upon the occurrence of an Event of Default under this Deed of Trust or the occurrence of a default or event of default under any other Loan Document or under the Management Agreement, such Management Agreement may be terminated by Beneficiary at no cost to Beneficiary upon prior written notice to the manager under the Management Agreement.  The manager under each existing Management Agreement has agreed to the foregoing and that its Management Agreement is subject and subordinate in all respects to this Deed of Trust. Any Management Agreement hereafter entered into by Grantor shall expressly provide that such Management Agreement may be terminated by Beneficiary at no cost to Beneficiary upon prior written notice to the manager under the Management Agreement and that the Management Agreement is subject and subordinate in all respects to this Deed of Trust. Grantor has heretofore delivered to Beneficiary a true and complete copy of any Management Agreements affecting the Security Property and any and all amendments or modifications thereof. Grantor agrees that it will not modify or amend any Management Agreement without Beneficiary's prior written consent.

8.     **Further Encumbrances**.

(a)     Grantor shall not grant any other lien, security interest, pledge, deed of trust, assignment, Deed of Trust or other hypothecation on all or any part of the Security Property or any interest therein nor make any further assignment of the Leases and rentals of the Security Property without the prior written consent of Beneficiary, which Beneficiary may grant or withhold in its sole discretion; any such unpermitted lien, security interest, pledge, deed of trust, assignment,

Page 10 of 34

Deed of Trust, or hypothecation by Grantor, being herein called an "**Encumbrance**", shall entitle Beneficiary to declare the Obligations immediately due and payable and to foreclose this Deed of Trust. Without intending to waive the right to consent granted to Beneficiary herein, any such other Encumbrance shall be junior to this Deed of Trust and to all permitted tenancies now or hereafter affecting the Security Property or any portion thereof and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Deed of Trust, all without the joinder or consent of such junior lienholder, secured party, pledgee, Beneficiary or assignee and without any obligation on Beneficiary's part to give notice of any kind thereto. Grantor shall maintain in good standing any other Encumbrance to secure debt affecting any part of the Security Property from time to time and shall not commit or permit or suffer to occur any default thereunder, nor shall Grantor accept any future advance under or modify the terms of any Encumbrance which may then be superior to the lien of this Deed of Trust. Except for Encumbrances permitted by Beneficiary, Grantor shall not commit or permit or suffer to occur any act or omission whereby any of the security represented by this Deed of Trust shall be impaired or threatened, or whereby any of the Security Property or any interest therein shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Grantor shall immediately cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security. Grantor shall not directly or indirectly do anything or take any action which might prejudice any of the right, title or interest of Beneficiary in or to any of the Security Property or impose or create any direct or indirect obligation or liability on the part of Beneficiary with respect to any of the Security Property.

(b)      Grantor will comply with and will punctually perform all of the covenants, agreements and obligations imposed upon it or the Security Property under the Permitted Exceptions in accordance with the terms, provisions and conditions contained therein, including, without limitation, Grantor's obligation to pay all amounts secured, evidenced or required thereby. Grantor will not modify or permit any modification of any of the Permitted Exceptions without the prior written consent of Beneficiary.

9.      **Prohibited Transfers**. Grantor shall not cause or permit or suffer to occur any of the following events (a "**Disposition**") without the prior written consent of Beneficiary, which Beneficiary may grant or withhold in its sole discretion, and if any of the same shall occur without such consent, then Beneficiary shall have the right to declare the Obligations immediately due and payable and to foreclose this Deed of Trust:  (a) if all or any portion of the legal or equitable or beneficial title to all or any portion of the Security Property or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; or (b) in the case of any portion of the Security Property directly or indirectly owned by a corporation (or a partnership or joint venture or limited liability company or trust or other business entity), if any stock or partnership interest or joint venture interest or member interest or beneficial interest in such owner shall be transferred (whether among the then existing partners, stockholders, members or other beneficial owners, or otherwise), or if such stock or partnership interest or joint venture interest or limited liability company interest or beneficial interest shall be assigned, pledged, hypothecated, Deed of Trust or otherwise encumbered.  It is expressly agreed that, in connection with determining whether to grant or withhold consent to any Disposition or Encumbrance, the determination made by Beneficiary shall be conclusive and Beneficiary may require as conditions to granting such consent (1) an increase in the rate of interest payable under the Note, (2) payment to Beneficiary of a transfer fee, (3) payment of Beneficiary's reasonable

Page 11 of 34

attorneys' fees in connection with such Disposition or Encumbrance, (4) the express assumption of the payment of the indebtedness and performance of the obligations of the Grantor by the party to whom such Disposition will be made (with or without, in Beneficiary's sole discretion, the release of Grantor from liability for such Obligations).

Notwithstanding the foregoing, Beneficiary will allow a one-time transfer of the Security Property with all terms of the Note otherwise remaining the same, if the following conditions are satisfied: (1) the Obligations are current and not in default of any kind at the time of transfer; (2) the transferee demonstrates financial credentials, creditworthiness, and management ability acceptable to Beneficiary in its sole discretion; (3) Beneficiary receives a transfer fee equal to one percent of the outstanding balance of the Obligations; (4) the structure of the transaction, including the form of purchasing transferee entity, secondary financing (if any), third party guarantees and indemnifications and other fundamental matters, is acceptable to Beneficiary in its sole discretion; (5) the transferee executes an environmental certificate and indemnity agreement in form and content satisfactory to Beneficiary; (6) the transferee executes an assumption agreement and such other documentation reasonably requested by Beneficiary to evidence such transfer and to preserve and continue the security interests of Beneficiary in the Security Property and other collateral for the Obligations, in form and substance satisfactory to Beneficiary in Beneficiary's sole discretion; (7) the purchaser executes an indemnity agreement protecting Beneficiary against loss or damage because of the Security Property's failure to comply with applicable laws and governmental regulations, including those pertaining to access of handicapped or disabled persons (including, but not limited to, the Americans With Disabilities Act of 1990 (as amended)); and (8) Beneficiary receives payment of all taxes, costs and expenses incurred in connection therewith, including Beneficiary's attorneys' fees.

The following transfers shall not be in violation of this Section 9: (i) Public utility easements for the benefit of the Security Property; and (ii) involuntary conveyances which are removed or reconveyed within 90 days; and (iii) a transfer as the result of the death of an Obligor who is a natural person, provided that a transferee acceptable to Beneficiary assumes the liability of the decedent with respect to the Loan within 90 days of the person's death.

10.    **Further Assurances.** From time to time and on demand, Grantor shall execute and deliver to Beneficiary (and pay the costs of preparing and recording) any further instruments required by Beneficiary to reaffirm, correct or perfect the evidence of the Obligations secured hereby and the lien and security interest of Beneficiary in all the Security Property and all additions, replacements and proceeds, including but not limited to Deed of Trusts, security agreements, financing statements, assignments and renewal and substitution notes

11.    **Estoppel Letters and Information.** Within three (3) days after request in person or within five (5) days after request by mail, Grantor shall furnish to Beneficiary a written statement, duly acknowledged, of the amount of principal and interest and other sums then owing on the Obligations and whether any offsets, counterclaims or defenses exist against the Obligations. Grantor shall promptly furnish to Beneficiary any financial or other information regarding Grantor or the Security Property required by any Loan Document or which Beneficiary may reasonably request from time to time.

12.    **Notices**.  Whenever Grantor or Beneficiary is obliged to give notice to the other, such notice shall be in writing and shall be given personally, by an overnight courier which provides for a return receipt or by prepaid certified mail (return receipt requested), in which latter case notice shall be deemed effectively made when the receipt is signed or when the attempted initial delivery is refused or cannot be made because of a change of address of which the sending party has not been notified.  Any notice to Beneficiary shall be addressed to the attention of The Deed of Trust Loan Administration Department.  Until the designated addresses are changed by notice given in accordance with this Section 12, notice to either party shall be sent to the respective address set forth on the first page of this Deed of Trust.

13.    **Default and Acceleration**.  At Beneficiary's option, all of the principal and interest and other sums secured by this Deed of Trust shall immediately or at any time thereafter become due and payable without notice to any Obligor, and Beneficiary shall immediately have all the rights accorded Beneficiary by law and hereunder to foreclose this Deed of Trust or otherwise to enforce this Deed of Trust and the security interests evidenced hereby and in any other Loan Document, upon the occurrence of any of the following defaults (an **"Event of Default"**):

(a)    failure to pay any sum due under any Loan Document and the expiration of the grace period (if any) provided therein; or

(b)    failure to pay any tax, assessment, utility charge, or other charge against the Security Property or any part thereof as and when required by this Deed of Trust; or

(c)    any waste, impairment, abandonment, deterioration, removal, demolition, material alteration or enlargement of any existing Improvements, or the commencement of construction of any new Improvements, in either case without the prior written consent of Beneficiary, which Beneficiary may grant or withhold in its sole discretion; or

(d)    failure to keep in force the policies of insurance required by this Deed of Trust or any other Loan Document; or

(e)    Grantor's failure or refusal to provide any estoppel certificate within the time required by this Deed of Trust; or

(f)    [intentionally omitted]; or

(g)    any unpermitted Encumbrance or Disposition (whether voluntary or by operation of law); or

(h)    Grantor's failure to remove any involuntary lien on the Security Property or any part thereof within twenty (20) days after its filing, or the filing of any suit against the Security Property upon any claim or lien other than this Deed of Trust (whether superior or inferior to this Deed of Trust); or

(i)    Grantor's failure to comply within ten (10) days with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Security Property or any operation conducted on the Security Property (or, if such order or notice provides a time period for

DALLAS4 592836v1 21122-00071

Doc       Bk     Vol    Pg
02016686  OR     2739   515

compliance, Grantor's failure to comply within such period), or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Grantor's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or

(j)    the issuance of any order by the state in which the Security Property is located, or any subdivision, instrumentality, administrative board or department thereof, declaring unlawful or suspending any operation conducted on the Security Property; or

(k)    if any representation, warranty, affidavit, certificate or statement made or delivered to Beneficiary by or on behalf of any Obligor from time to time in connection with the Obligations or this Deed of Trust or any other Loan Document shall prove false, incorrect or misleading in any respect deemed material by Beneficiary; or

(l)    the dissolution or merger or consolidation or termination of existence of any Obligor, or the failure or cessation or liquidation of the business of any Obligor, or if the person(s) controlling any Obligor which is a business entity shall take any action authorizing or leading to the same; or

(m)    [intentionally omitted]; or

(n)    the disposition or transfer or exchange of all or substantially all of any Obligor's assets for less than fair market value, or the issuance of any levy, attachment, charging order, garnishment or other process against the Security Property, or the filing of any lien against the Security Property (and the expiration of any grace period provided in any Loan Document for the discharge of such lien); or

(o)    if any Obligor shall make an assignment for the benefit of creditors, file a petition in bankruptcy, apply to or petition any tribunal for the appointment of a custodian, receiver, intervenor or trustee for such Obligor or a substantial part of such Obligor's assets, or if any Obligor shall commence any proceeding under any bankruptcy, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or if any Obligor shall by act or omission approve, consent to or acquiesce in the filing of any such petition or application against such Obligor or the appointment of any such custodian, receiver, intervenor or trustee or the commencement of any such proceeding against such Obligor or the entry of an order for relief with respect to such Obligor, or if any such petition or application shall have been filed or proceeding commenced against any Obligor which remains undismissed for thirty (30) days or more or in which an order for relief is entered, or if any Obligor shall suffer any such appointment of a custodian, receiver, intervenor or trustee to continue undischarged for thirty (30) days or more; or

(p)    if any Obligor while insolvent shall have concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of such Obligor's property with intent to hinder, delay or defraud any of such Obligor's creditors, or if any Obligor shall have made or suffered a transfer of any of such Obligor's properties which may be invalid under any bankruptcy, fraudulent conveyance, preference or similar law, or if any Obligor shall have made any transfer of such Obligor's properties to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or

DALLAS4 592836v1 21122-00071

Doc# 02016686    Bk Vol Pg
OR  2739 516

(q)     Grantor's failure to provide the documents required by Section 29 after 15 days' written notice; or

(r)     the existence of any uncured default under any other Encumbrance affecting any part of the Security Property then encumbered by this Deed of Trust (in the case of a default for which such Encumbrance provides a grace period, if the default remains uncured after the expiration of that grace period), or Grantor's acceptance of any future advance under, or modification of the terms of, any such other Encumbrance which may then be superior to the lien of this Deed of Trust; or

(s)     Beneficiary's election to declare the Obligations due and payable under the provisions of any other Loan Document; or

(t)     any default in the observance or performance of any other covenant or agreement of any Obligor in this Deed of Trust or any other Loan Document, the occurrence of any other event prohibited by the terms of this Deed of Trust or any other Loan Document, or the violation of any other provision of this Deed of Trust or any other Loan Document.

Provided that Beneficiary's rights and interests in the Security Property are not in immediate jeopardy and that the Event of Default is reasonably subject to cure and is not willful or intentional, Grantor will have a period of thirty (30) days following receipt of written notice to cure any Event of Default specified in subsections (b), (c), (e), (h), (i), (j), (l), (n), (p), (q), or (t) above.  Such period will be extended up to an additional sixty (60) days so long as Grantor is diligently pursuing cure.

No consent or waiver expressed or implied by Beneficiary with respect to any default under this Deed of Trust shall be construed as a consent or waiver with respect to any further default of the same or a different nature; and no consent or waiver shall be deemed or construed to exist by reason of any curative action initiated by Beneficiary or any other course of conduct or in any other manner whatsoever except by a writing duly executed by Beneficiary, and then only for the single occasion to which such writing is addressed.  In order to declare the Obligations due and payable because of Grantor's failure to pay any tax, assessment, insurance premium, charge, liability, obligation or encumbrance upon the Security Property as required by this Deed of Trust, or because of any other default, Beneficiary shall not be required to pay the same or to advance funds to cure the default, notwithstanding Beneficiary's option under this Deed of Trust or any other Loan Document to do so; no such payment or advance by Beneficiary shall be deemed or construed a waiver of Beneficiary's right to declare the Obligations due and payable on account of such failure or other default.

14.     **Advances by Beneficiary**.  In the event of any default in the performance of any of Grantor's covenants or agreements contained in this Deed of Trust or any other Loan Document or the violation of any term thereof, Beneficiary shall have the right (but in no event the obligation) at its option to cure the default or take any other action Beneficiary deems necessary or desirable to protect its security (including without limitation the payment of any taxes, assessments, insurance premiums, charges, liens or encumbrances required of Grantor under this Deed of Trust), without thereby waiving any rights or remedies otherwise available to Beneficiary.  If Beneficiary shall elect to advance at any time any sum(s) for the protection of its security or for any other reason

Doc    Bk    Vol    Pg
02016686  OR   2739   517

permitted or provided by any of the terms of this Deed of Trust or any other Loan Document, then such sum(s) shall be deemed Obligations, shall be repaid by Grantor on demand, shall be secured by this Deed of Trust and shall bear interest until paid at the lesser of the nondefault interest rate provided for in §2 of the Note plus five percent (5%) per annum, or at the highest rate allowed by applicable law, commencing on the date they are advanced by Beneficiary. Beneficiary's lien on and security interest in the Security Property for such advances shall be superior to any right or title to, interest in, or claim upon all or any portion of the Security Property junior to the lien of this Deed of Trust.

15.    **Receiver.** In addition to all other remedies herein provided for, Grantor agrees that upon the occurrence of an Event of Default, Beneficiary shall, as a matter of right, be entitled to an ex parte appointment of a receiver or receivers for all or any part of the Security Property without notice and without regard to the value of the Security Property or the solvency of any person or persons liable for the payment of the indebtedness secured hereby, and Grantor does hereby consent to the appointment of such receiver or receivers, waives any and all defenses to such appointment and agrees not to oppose any application therefor by Beneficiary, but nothing herein is to be construed to deprive Beneficiary of any other right, remedy or privilege it may now have under the law to have a receiver appointed; provided, however, that the appointment of such receiver, trustee or other appointee by virtue of any court order, statute or regulation shall not impair or in any manner prejudice the rights of Beneficiary to receive payment of the rents and income. Any money advanced by Beneficiary in connection with any such receivership shall be a demand obligation owing by Grantor to Beneficiary and shall bear interest from the date of making such advancement by Beneficiary until paid at the Default Rate provided in the Note and shall be a part of the Obligations and shall be secured by this Deed of Trust and by every other instrument securing the Obligations. The receiver or his agents shall be entitled to enter upon and take possession of any and all of the Security Property. The receiver, personally or through its agents or attorneys, may exclude Grantor and its agents, servants and employees wholly from the Security Property and have, hold, use, operate, manage and control the same and each and every part thereof, and keep insured, the properties, equipment and apparatus provided or required for use in connection with the business or business operated on the Security Property, and make all such necessary and proper repairs, renewals and replacements and all such useful alterations, additions, betterments and improvements as the receiver may deem judicious. Such receivership shall, at the option of Beneficiary, continue until full payment of all sums, hereby secured, then due and payable or until title to the Security Property shall have passed by foreclosure sale under this Deed of Trust and the period of redemption, if any, shall have expired.

16.    **Remedies.** If an Event of Default shall occur, Beneficiary may, at Beneficiary's election by and through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses, in addition to any other remedy which Beneficiary may have:

(a)    Beneficiary may declare the Obligations immediately due and payable, without notice of intent to accelerate and without notice, presentment, protest, demand or action of any nature whatsoever (each of which hereby is expressly waived by Grantor), whereupon the same shall become immediately due and payable. Additionally, Beneficiary shall not be required to make any further advances on the Note or other Loan Documents upon and during the occurrence of an Event of Default or an event which, with the giving of notice or passing of time, would constitute an Event of Default.

DALLAS4 592836v1 21122-00071

(b)    Unless prohibited by any applicable law, Beneficiary may enter upon the Security Property and take exclusive possession thereof and of all records and documentation relating thereto without notice and without being guilty of trespass. If Grantor remains in possession of all or any part of the Security Property after an Event of Default and without Beneficiary's prior written consent thereto, Beneficiary may, without notice to Grantor, invoke any and all legal remedies to dispossess Grantor, including specifically one or more actions for forcible entry and detainer, trespass to try title and writ of restitution. Nothing contained in the foregoing sentence shall, however, be construed to impose any greater obligation or any prerequisites to acquiring possession of the Security Property after an Event of Default than would have existed in the absence of such sentence.

(c)    Beneficiary may hold, lease, manage, operate or otherwise use or permit the use of the Security Property, either itself or by other persons, firms or entities, in such manner, for such time and upon such other terms as Beneficiary may deem to be prudent and reasonable under the circumstances (making such repairs, alterations, additions and improvements thereto and taking any and all other action with reference thereto, from time to time, as Beneficiary shall deem necessary or desirable), and apply all Rents and other amounts collected by Beneficiary in connection therewith in accordance with the provisions of Section 16(m) below.

(d)    If Grantor has failed to keep or perform any covenant whatsoever contained in this Deed of Trust, Beneficiary may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant, and any payment made or expense incurred in the performance or attempted performance of any such covenant shall be and become a part of the Obligations; and Grantor promises, upon demand, to pay to Beneficiary, at the place where the Note is payable, all sums so advanced or paid by Beneficiary, with interest from the date of advancement until paid by Grantor at the lesser of the rate of eighteen percent (18%) per annum or the highest rate allowed by applicable law. No such payment by Beneficiary shall constitute a waiver of any Event of Default. In addition to the liens and security interests hereof, Beneficiary shall be subrogated to all rights, titles, liens, and security interests securing the payment of any debt, claim, tax, or assessment for the payment of which Beneficiary may make an advance, or which Beneficiary may pay.

(e)    (1)    Beneficiary may, by and through the Trustee, sell or offer for sale the Security Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction. Such sale shall be made at the area of the Taylor County courthouse designated by the commissioners court of such county as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m., after serving notice of the sale as required by Section 51.002 of the Texas Property Code, as amended (or any successor statute or statutes). The affidavit of any person having knowledge of the facts to the effect that such notice or notices were served shall be prima facie evidence of the fact of service.

(2)    Although subparagraph (e)(1) above specifies that a sale be for cash, the Trustee may, in the Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Grantor and Beneficiary, and elect to

Doc        Bk      Vol    Pg
02016686   OR    2739    519

sell the Security Property for credit or for a combination of cash and credit; provided, however, that the Trustee shall have no obligation to accept any bid except an all cash bid.

    (3)    At any time during the bidding, the Trustee may require a bidding party to identify himself or herself (full name, state and city of residence, occupation, and specific business office location) and the name and address of the principal whom he or she is representing (if applicable), and to demonstrate reasonable evidence of his or her financial ability (or, if applicable, the financial ability of the principal), as a condition to his or her submitting bids at the foreclosure sale. If any such bidding party (the "**Questioned Bidder**") declines to comply with the Trustee's requirement in this regard, or if such Questioned Bidder does respond but the Trustee in his or her sole and absolute discretion deems the information or the evidence of the financial ability of the Questioned Bidder to be inadequate, then the Trustee may continue the bidding with reservation; and in such event, (i) the Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (ii) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to the Trustee, all bids by the Questioned Bidder shall be disregarded and all bids by the ultimate purchaser shall be disregarded for such period of the bidding when the only bidding parties were one or more Questioned Bidders and the ultimate purchaser.

    (f)    After a valid sale of the Security Property, or any portion thereof, Grantor will be divested of any and all interest and claim thereto, including any interest or claim to all insurance policies, bonds, loan commitments and other intangible property covered hereby. Additionally, with respect to the Land, the Tangible Property and all tangible personal property encumbered by this Deed of Trust, after a sale of all or any portion thereof, Grantor will be considered a tenant at sufferance of the purchaser of the same, and said purchaser shall be entitled to immediate possession thereof, and if Grantor shall fail to vacate the Security Property immediately, purchaser may and shall have the right, without further notice to Grantor, to go into any justice court in any precinct or county in which the Security Property is located and file an action in forcible entry and detainer, which action shall lie against the Grantor or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have hereunder or otherwise.

    (g)    (1)    Upon, or at any time after, commencement of foreclosure of the lien and security interest provided for herein or any legal proceedings hereunder, Beneficiary may make application to a court of competent jurisdiction, as a matter of strict right and without notice to Grantor or regard to the adequacy of the Security Property for the repayment of the Obligations, for appointment of a receiver of the Security Property, and Grantor does hereby irrevocably consent to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases.

Page 18 of 34

(2)    Beneficiary may exercise any and all other rights, remedies and recourses granted under the Loan Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise.

(h)    The Beneficiary may sell all or any portion of the Security Property together or in lots or parcels and in such manner and order as Beneficiary, in its sole discretion, may elect. The sale or sales by the Beneficiary of less than the whole of the Security Property shall not exhaust the power of sale herein granted, and the Beneficiary is specifically empowered to make successive sale or sales under such power until the whole of the Security Property shall be sold; and if the proceeds of such sale or sales of less than the whole of such Security Property shall be less than the aggregate of the Obligations and the expense of executing this Deed of Trust and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Security Property just as though no sale or sales had been made; provided, however, that Grantor shall never have any right to require the sale or sales of less than the whole of the Security Property, but Beneficiary shall have the right, at its sole election, to sell less than the whole of the Security Property. As among the various counties in which items of the Security Property may be situated, sales in such counties may be conducted in any order that the Beneficiary may deem expedient; and any one or more of such sales may be conducted in the same month, or in successive or different months, as the Beneficiary may deem expedient. If default is made hereunder, the holder of the Obligations or any part thereof on which the payment is delinquent shall have the option to proceed as if under a full foreclosure, conducting the sale as herein provided without declaring the entire Obligations due, and if sale is made because of default of an installment, or a part of an installment, such sale may be made subject to the unmatured part of the Note and the Obligations; and such sale, if so made, shall not in any manner affect the unmatured part of the Obligations but as to such unmatured part, this Deed of Trust shall remain in full force and effect as though no sale had been made under the provisions of this Section 16. Any number of sales may be made hereunder without exhausting the right of sale for any unmatured part of the Obligations.

(i)    Trustee and Beneficiary shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity and same (1) shall be cumulative and concurrent; (2) may be pursued separately, successively or concurrently against Grantor, or against the Security Property, or against any one or more of them at the sole discretion of Beneficiary; (3) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse; and (4) are intended to be, and shall be, nonexclusive.

(j)    Any part of the Security Property may be released by the Beneficiary without affecting, subordinating or releasing the lien, security interest and assignment hereof against the remainder. The lien, security interest and other rights granted hereby shall not affect or be affected by any other security taken for the same indebtedness or any part thereof. The taking of additional security, or the rearrangement, extension or renewal of the Obligations, or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby or affect the liability of any endorser, guarantor or surety, or improve the right of any permitted junior lienholder; and this Deed of Trust, as well as any instrument given to secure any rearrangement, renewal or extension of the Obligations, or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Security Property not expressly released until the Obligations are completely paid.

Page 19 of 34

(k)   To the fullest extent permitted by law, Grantor hereby irrevocably and unconditionally waives and releases (1) all benefits that might accrue to Grantor and/or Guarantor by any present or future laws exempting the Security Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; (2) all notices of any Event of Default (except as may be provided for under the terms hereof) or of Beneficiary's election to exercise or the actual exercise of any right, remedy or recourse provided for under the Loan Documents; (3) any right to appraisal or marshalling of assets or a sale in inverse order of alienation; (4) the exemption of homestead; and (5) the administration of estates of decedents, or other matter whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust, to sell the Security Property for the collection of the Obligations (without any prior or different resort for collection) or the right of Beneficiary, under the terms of this Deed of Trust, to the payment of the Obligations out of the proceeds of sale of the Security Property in preference to every other person and claimant whatever (only reasonable expenses of such sale being first deducted).

(l)   In case Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon the same for any reason, Beneficiary shall have the unqualified right so to do and, in such event, Grantor and Beneficiary shall be restored to their former positions with respect to the indebtedness secured hereby, the Obligations, the Loan Documents, the Security Property and otherwise, and the rights, remedies, recourses and power of Beneficiary shall continue as if same had never been invoked.

(m)   The proceeds of any sale of, and the rents and other income generated by the holding, leasing, operating or other use of, the Security Property shall be applied by Beneficiary (or the receiver, if one is appointed) to the extent that funds are so available therefrom in the following orders of priority:   (1) first, to the payment of the costs and expenses of taking possession of the Security Property and of holding, using, leasing, maintaining, repairing, improving and selling the same, including, without limitation, (A) reasonable Trustee's fees and receiver's fees; (B) costs of advertisement; (C) reasonable attorneys' and accountants' fees; (D) court costs; and (E) payment of any and all impositions and prior liens, security interests or other rights, titles or interests on the Security Property (without in any way implying Beneficiary's prior consent to the creation thereof); (2) second, to the payment of all amounts, other than the principal amount of the Obligations and accrued but unpaid interest which may be due to the Beneficiary under the Loan Documents, together with interest thereon as provided therein; (3) third, to the payment of all accrued but unpaid interest due on the Note; (4) fourth, to the payment of the principal amount outstanding on the Note in inverse order of maturity; (5) fifth, to the payment of any indebtedness or obligation secured by a subordinate Deed of Trust, deed of trust or security interest on the Security Property (but only if and to the extent actually known by Beneficiary); and (6) sixth, to Grantor.

(n)   If, following the occurrence of an Event of Default and an acceleration of Obligations but prior to the sale of the Security Property, Grantor or Borrower shall tender to Beneficiary payment of an amount sufficient to satisfy the entire Obligations, such payment shall be deemed to be a voluntary prepayment under the Note and, accordingly, Grantor or Borrower shall also pay to Beneficiary the premium (if any) then required under the Note in order to exercise the prepayment privilege contained therein. If such payment is made during any period in which

Page 20 of 34

prepayment in full is not allowed under the Note, and Beneficiary, in its sole discretion, elects to accept such prepayment, Beneficiary may collect a prepayment fee in the amount of eight percent (8.0%) of the outstanding principal balance of the Note at the time Beneficiary accepts such prepayment. The inclusion of such prepayment fee in any such tender of payment is to compensate Beneficiary for employing its funds for a predetermined period of time, and the undersigned agrees that the amount so included is a reasonable amount of liquidated damages, in that Beneficiary's actual damages for loss of its investment are difficult or impossible to ascertain.

(o)    Beneficiary shall have the right to become the purchaser at the sale of the Security Property hereunder pursuant to any other means and shall have the right to be credited on the amount of its bid therefor all of the indebtedness secured hereby and Obligations due and owing as of the date of such sale.

(p)    The purchaser at any Trustee's or foreclosure sale hereunder may disaffirm any easement granted, or rental, lease or other contract made in violation of any provisions of this Deed of Trust and may take immediate possession of the Security Property free from, and despite the terms of, such grant of easement and rental, lease or other contract.

(q)    In the event Beneficiary elects to foreclose the lien of this Deed of Trust against the Security Property, and seeks to obtain a deficiency judgment against Grantor or any Guarantor, and if Grantor and/or any Guarantor seek to exercise the rights granted by Sections 51.003, 51.004 or 51.005 of the Texas Property Code (as amended from time to time) to determine the fair market value of the Security Property, the following shall be the basis for the finder of fact's determination of the fair market value of the Security Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time):

(1)    The Security Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Security Property will be repaired or improved in any manner before a resale of the Security Property after foreclosure;

(2)    The valuation shall be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Security Property for cash assuming a reasonable time is allowed for exposure in the open market, as determined by the appraiser;

(3)    All reasonable closing costs customarily borne by the seller in a commercial real estate transaction should be deducted from the gross fair market value of the Security Property, including without limitation, brokerage commissions, title insurance, a survey of the Security Property, tax prorations, attorney's fees and marketing costs;

(4)    The gross fair market value of the Security Property shall be further discounted to account for any estimated reasonable holding costs associated with maintaining the Security Property pending sale, including, without limitation, utility expenses, property management fees, taxes and assessments (to the extent not accounted for by the provisions of subparagraph (c) above), and other maintenance expenses; and

(5)    Any expert opinion testimony given or considered in connection with the determination of the fair market value of the Security Property must be given by persons having at least five years experience in appraising property similar to the Security Property and who have conducted and prepared a complete written appraisal of the Security Property taking into consideration the factors set forth above.

17.    **No Jury Trial**.    Beneficiary, Grantor and each Obligor hereby severally, voluntarily, knowingly and intentionally WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY in any legal action or proceeding arising under or in connection with this Deed of Trust or any other Loan Document or concerning the Obligations and/or the Security Property or pertaining to any transaction related to or contemplated in this Deed of Trust, regardless of whether such action or proceeding concerns any contractual or tortious or other claim. Each Obligor severally acknowledges that this waiver of jury trial is a material inducement to Beneficiary in extending the credit described herein, that Beneficiary would not have extended such credit without this jury trial waiver, and that such Obligor has been represented by an attorney or has had an opportunity to consult with an attorney regarding this Deed of Trust and understands the legal effect of this jury trial waiver.

18.    **Fees and Expenses**.    Grantor shall pay any and all costs, expenses and attorney's fees incurred by Beneficiary (regardless of whether in connection with any action, proceeding or appeal) to sustain the lien of this Deed of Trust or its priority, to protect or enforce any of Beneficiary's rights under this Deed of Trust or under any other Loan Document, to recover any indebtedness secured hereby, to contest or collect any award or payment in connection with the taking or condemnation of all or any part of the Security Property, or for any title examination or abstract preparation or appraisal or title insurance policy relating to the Security Property, and all such sums shall bear interest, shall be paid and shall be secured as provided in Section 14.

19.    **Condemnation**.    Immediately upon obtaining knowledge of the institution or pending institution of any proceedings for the condemnation of the Security Property or any portion thereof, Grantor shall notify Beneficiary thereof. Beneficiary may participate in any such proceedings and may be represented therein by counsel of its selection, and Grantor will deliver to Beneficiary all instruments requested by Beneficiary from time to time to permit or facilitate such participation. In the event of any such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Beneficiary, and Beneficiary shall not be obligated to question the amount of any such award or compensation. At Beneficiary's option, all or any portion of the award or compensation shall be applied toward payment of the Obligations (in any order of priority Beneficiary may deem appropriate in its sole discretion) or shall be disbursed to Grantor from time to time for the restoration of the Security Property in the same manner as disbursements under a construction loan; Beneficiary shall not be obligated to see to the proper application by Grantor of any such disbursement. Notwithstanding any such condemnation award or compensation or the rate of interest payable thereon, Grantor shall continue to pay interest on the Obligations except to the extent that Beneficiary shall have actually received and applied the award or compensation against the Obligations. If all of the Security Property is so taken but the award or compensation is insufficient to pay the Obligations in full, then at Beneficiary's option the unpaid balance shall be immediately due and payable.

Doc Pg
02016686 524
Vol
OR 2739
BK
Doc
02016686

20.    **Documentary Stamps and Intangible Taxes**.  If at any time the state in which the Security Property is located shall determine that an intangible tax, documentary tax or other similar tax shall be paid in connection with this Deed of Trust, or that additional intangible or other tax should be paid, then Grantor shall pay for the same, together with any interest or penalties imposed in connection with such determination, and Grantor hereby agrees to indemnify and hold Beneficiary harmless therefrom.  If any such sums shall be advanced by Beneficiary, they shall bear interest, shall be paid and shall be secured as provided in Section 14.

21.    **No Shift of Taxes**.  If any federal, state or local law shall hereafter be enacted which (a) for the purpose of ad valorem taxation shall deduct the amount of any lien from the value of real property, or (b) shall impose on Beneficiary the payment of all or any part of the taxes or assessments or charges required to be paid hereunder by Grantor, or (c) shall change in any way the laws for the taxation of deeds of trust, Deed of Trusts or debts secured thereby or Beneficiary's interest in the Security Property, or shall change the manner of collecting such taxes, so as to affect this Deed of Trust or the debt secured hereby or the holder thereof, then upon demand Grantor shall pay such taxes or assessments or charges imposed on Beneficiary or shall reimburse Beneficiary therefor; provided, however, that if in the opinion of Beneficiary's counsel the requirement that Grantor make such payments might be unlawful or might result in the imposition of interest in excess of the maximum lawful rate, then Beneficiary shall have the right to declare the Obligations to be due and payable thirty (30) days after notice thereof to Grantor.

22.    **Uniform Commercial Code**.  This Deed of Trust is a "security agreement" and creates a "security interest" in favor of Beneficiary as a "secured party" with respect to all property included in the Security Property which is covered by the Uniform Commercial Code, including but not limited to the Tangible Property and Intangibles.  Upon default under this Deed of Trust or any other Loan Document, Beneficiary may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Security Property so covered by the Uniform Commercial Code, or Beneficiary may at its option proceed as to all or any part of the Security Property in accordance with Beneficiary's rights and remedies in respect of real property to the extent permitted by law.  Grantor and Beneficiary agree that the mention of any portion of the Security Property in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of collateral described in this Deed of Trust are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the Improvements or whether serial numbers are used for the better identification of certain items of Tangible Property.  Specifically, the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Grantor's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Land or Improvements, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Security Property shall never be construed to alter any of the rights of Beneficiary as determined by this Deed of Trust or to impugn the priority of Beneficiary's lien and security interest with respect to the Security Property; such mention in a financing statement is declared to be for the protection of Beneficiary in the event any court shall hold that notice of Beneficiary's priority of interest with respect to any such portion of the Security Property must be filed in the Uniform Commercial Code records in order to be effective against or to take priority over any particular class of persons, including but not limited to the federal government and any subdivision or instrumentality of the federal government.

DALLAS4 592836v1 21122-00071

Doc      Bk     Vol    Pg
02016686 OR   2739   525

23. **Payments to Beneficiary**. Any payment made in accordance with the terms of the Loan Documents by any person at any time liable for the payment of the whole or any part of the Obligations, by any subsequent owner of the Security Property, or by any other person whose interest in the Security Property might be prejudiced in the event of a failure to make such payment (or by any partner, stockholder, member, manager, officer or director of any such person), shall be deemed, as between Beneficiary and all such persons who at any time may be so liable or may have an interest in the Security Property, to have been made on behalf of all such persons. Beneficiary's acceptance of any payment which is less than full payment of all amounts then due and payable to Beneficiary, even if made by one other than the person liable therefor, shall not constitute a waiver of any rights or remedies of Beneficiary.

24. **Consent to Changes**. Grantor consents and agrees that, at any time and from time to time without notice, (a) Beneficiary and the owner(s) of any collateral then securing the Obligations may agree to release, subordinate, increase, change, substitute or exchange all or any part of such collateral, and (b) Beneficiary and any person(s) then primarily liable for the Obligations may agree to renew, extend or compromise the Obligations in whole or in part or to modify the terms of the Obligations in any respect whatsoever. Grantor agrees that no such release, subordination, increase, change, substitution, exchange, renewal, extension, compromise or modification, no sale of the Security Property or any part thereof, no forbearance on the part of Beneficiary, nor any other indulgence given by Beneficiary (whether with or without consideration) shall relieve or diminish in any manner the liability of any Obligor, nor adversely affect the priority of this Deed of Trust, nor limit or prejudice or impair any right or remedy of Beneficiary. All Obligors and all those claiming by, through or under any of them hereby jointly and severally waive any and all right to prior notice of, and any and all defenses or claims based upon, any such release, subordination, increase, change, substitution, exchange, renewal, extension, compromise, modification, sale, forbearance or indulgence.

25. **Governing Law**. This Deed of Trust shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, excepting only that federal law shall govern to the extent it may permit Beneficiary to charge, from time to time, interest on the Obligations at a rate higher than may be permissible under applicable law.

26. **No Usury**. All amounts paid on the Obligations which are deemed interest shall, for the purpose of the calculation provided for herein, be deemed and considered to be spread over the entire period from the date hereof to the date of final payment of the Note. In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Beneficiary as consideration for the Obligations exceed the limits (if any) imposed or provided by the law applicable from time to time to the Obligations for the use or detention of money or for forbearance in seeking its collection; Beneficiary hereby waives any right to demand any such excess. In the event that the interest provisions of the Loan Documents or any exactions required thereunder shall result at any time or for any reason in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall automatically be reduced to such limit and all sums received by Beneficiary in excess of those lawfully collectible as interest shall be applied against the principal of the Obligations immediately upon Beneficiary's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Beneficiary had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments.

DALLAS4 592836v1 21122-00071

Doc
02016686    Bk
OR    Vol
2739    Pg
526

27.    <u>Severability</u>.  Any provision of this Deed of Trust which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

28.    <u>Inspection and Watchmen</u>.    Beneficiary and any persons authorized by Beneficiary shall have the right, from time to time at the discretion of Beneficiary, to enter and inspect the Security Property.  At any time after default under the terms of this Deed of Trust or any other Loan Document, if any of the Improvements or Tangible Property shall be unprotected or unguarded, or if any of the Improvements shall be allowed to remain vacant or deserted, then at its option Beneficiary may employ watchmen for the Security Property and expend any monies deemed necessary by Beneficiary to protect the same from waste, vandalism and other hazards, depredation or injury, and any sums expended by Beneficiary for such purpose shall bear interest, shall be paid and shall be secured as provided in Section 14.

29.    <u>Operating Statements</u>.    Grantor will keep accurate books and records in accordance with accounting principles consistently applied in which full, true and correct entries shall be promptly made as to all operations on the Security Property.  Within 90 days after the end of each fiscal year, Grantor will furnish Beneficiary with annual operating and financial statements covering the Security Property, together with a rent roll, all certified by a principal of Grantor, and all in form satisfactory to Beneficiary.  Grantor shall be charged a fee of Five Hundred Dollars ($500) for the failure to provide any of the foregoing within the prescribed time period, provided, however, that Beneficiary shall give Grantor fifteen (15) days' written notice and opportunity to provide the foregoing before imposing such fee.

30.    <u>Indemnity</u>.  In the event Beneficiary shall be named as a party to any lawsuit brought at any time against Grantor or with respect to the Security Property or this Deed of Trust or the Obligations, or if any claim shall be made against either of them in connection with the Security Property, then regardless of the merits of such lawsuit or claim, Grantor shall defend Beneficiary and indemnify and hold Beneficiary fully harmless from any and all claims, demands, damages, liabilities, judgments, penalties, losses, costs, expenses and attorney's fees arising out of or resulting from any such lawsuit or any appeal in connection therewith.

31.    <u>No Partnership</u>. Grantor and Beneficiary hereby acknowledge and agree that Beneficiary is not, has never been, and shall not be deemed a partner or joint venturer of Grantor or any other Obligor with respect to the Security Property, and that the relationship of Beneficiary to said parties is, has always been, and shall continue to be strictly the role of a lender.  Grantor hereby (a) waives and relinquishes any and all claims, demands, counterclaims and/or defenses alleging the existence of any partnership, joint venture or other fiduciary or special relationship between any of them and Beneficiary, and (b) agrees to indemnify and hold Beneficiary harmless against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other fees, costs and expenses that Beneficiary may sustain as the result of any such allegation by any person whomsoever.

32.    <u>Environmental Laws; Governmental Requirements</u>.  Grantor represents and warrants to Beneficiary that Grantor has undertaken an appropriate inquiry into the previous ownership and uses of the Security Property consistent with good commercial or customary

Page 25 of 34

DALLAS4 592836v1 21122-00071

practice in an effort to minimize liability with respect to any Hazardous Substances (as hereinafter defined). To the best of Grantor's knowledge and except as otherwise disclosed to Beneficiary in writing, Grantor represents and warrants that (i) neither the Security Property nor the operations or activities conducted thereon violate any local, state or federal law, rule or regulation or duty under applicable common law pertaining to human health, safety, protection of the environment, natural resources, conservation, waste management or pollution (the "Environmental Laws"), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §9601 et seq.), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6901 et seq.),, the Clean Air Act (42 U.S.C. §7401 et seq.),the Federal Water Pollution Control Act (33 U.S.C. §1251 et seq.), the Emergency Planning and Community-Right-to-Know Act (42 U.S.C. §11001 et seq.), the Endangered Species Act (16 U.S.C. §1531 et seq.), the Toxic Substances Control Act (15 U.S.C. §2601 et seq.), the Occupational Safety and Health Act (29 U.S.C. §651 et seq.) the Hazardous Materials Transportation Act (49 U.S.C. §1801 et seq.) , the Texas Water Code, the Texas Solid Waste Disposal Act and regulations promulgated pursuant to said laws, all as amended from time to time; (ii) no hazardous substances, toxic substances or harmful substances, hazardous wastes, hazardous materials, pollutants or contaminants (including, without limitation, asbestos or asbestos-containing materials, lead based paint, polychlorinated biphenyls, petroleum or petroleum products or byproducts, flammable explosives, radioactive materials, or infectious substances) or any other substances or materials which are included under or regulated by the Environmental Laws (collectively, "Hazardous Substances") are located on, in or under or have been handled, generated, stored, processed or disposed of on or released or discharged from the Security Property (including underground contamination), except for those substances used by Grantor or any tenant under a Lease in the ordinary course of businesses in compliance with all Environmental Laws and under circumstances where no liability under any Environmental Law could reasonably be anticipated; (iii) the Security Property is presently free from contamination by Hazardous Substances and that the Security Property and the activities conducted thereon do not pose any significant hazard to human health or the environment, and (iv) the Security Property complies in all respects with all laws applicable to access to handicapped or disabled persons, including, without limitation, the "Americans with Disabilities Act" and any current or future governmental law, regulation or ruling applicable to or, if applicable, concerning lead-based paint ("Governmental Requirements"). Grantor shall not cause or permit the Security Property to be used for the generation, handling, storage, transportation, disposal or release of any Hazardous Substances except as exempted or permitted under applicable Environmental Laws, and Grantor shall not cause or permit the Security Property or any activities conducted thereon to be in violation of any applicable Environmental Laws or Governmental Requirements. Grantor agrees to indemnify Beneficiary and hold Beneficiary and its directors, officers, employees, successors and assigns harmless from and against any and all claims, losses, damages (including all foreseeable and unforeseeable consequential damages), liabilities, fines, penalties, charges, interest, administrative or judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including without limitation attorneys' fees and expenses), directly or indirectly resulting in whole or in part from the violation of any Environmental Laws or Governmental Requirements applicable to the Security Property or any activity conducted thereon, or from any past, present or future use, generation, handling, storage, transportation, disposal or release of Hazardous Substances at or in connection with the Security Property, or any decontamination, detoxification, closure, cleanup or other remedial measures required with respect to the Security Property under any Environmental Laws. All sums paid and costs incurred by Beneficiary with respect to the foregoing matters shall bear interest, shall be paid and shall be

Doc
02016686    Bk    Vol    Pg
OR    2739    528

secured as provided in paragraph 14. This indemnity shall survive the full payment and performance of the Obligations and the satisfaction of this Deed of Trust, and it shall inure to the benefit of any transferee of title to the Security Property through foreclosure of this Deed of Trust or through deed in lieu of foreclosure.

33.    **Subrogation** Beneficiary is hereby subrogated (a) to the lien(s) of each and every Encumbrance on all or any part of the Security Property which is fully or partially paid or satisfied out of the proceeds of the Obligations, and (b) to the rights of the owner(s) and holder(s) of any such Encumbrance. The respective rights under and priorities of all such Encumbrances shall be preserved and shall pass to and be held by Beneficiary as security for the Obligations, to the same extent as if they had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been canceled and satisfied of record.

34.    **Representations and Warranties**.  In order to induce Beneficiary to extend the credit secured hereby, Grantor represents and warrants that: (a) except as previously or concurrently disclosed in writing to Beneficiary, there are no actions, suits or proceedings pending or threatened against or affecting any Obligor or any portion of the Security Property or involving the validity or enforceability of this Deed of Trust or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and no Obligor is in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority; (b) the execution and delivery of this Deed of Trust and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any Obligor, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, Deed of Trust, lease, instrument, credit agreement, undertaking, contract or other agreement to which any Obligor is a party or by which any of them or their respective properties may be bound or affected; (c) this Deed of Trust and all other Loan Documents constitute valid and binding obligations of the Obligor(s) executing the same, enforceable against such Obligor(s) in accordance with their respective terms; (d) all financial statements of the Obligors previously delivered to Beneficiary have been prepared in accordance with accounting principles consistently applied and fairly present the correct respective financial conditions of the Obligors as of their respective dates, and the foregoing shall be true with respect to all financial statements of the Obligors delivered to Beneficiary hereafter; (e) there is no fact that the Obligors have not disclosed to Beneficiary in writing that could materially adversely affect their respective properties, businesses or financial conditions or the Security Property or any other collateral for the Obligations; (f) the Obligors have duly obtained all permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution or delivery or enforcement of this Deed of Trust or any other Loan Document or the performance of any Obligor's obligations thereunder; (g) the Land and Improvements fully comply with all applicable restrictive covenants, zoning ordinances, subdivision and building codes, applicable health and environmental laws and regulations and, to the best of Grantor's knowledge, all other ordinances, orders and requirements issued by any state, federal or municipal authorities having jurisdiction over the Security Property; (h) the Land is served by electric, gas, sewer, water, telephone and other utilities required for its intended use and final certificates of occupancy have been or prior to occupancy will be issued by such governmental authorities as have jurisdiction over the construction and use of the Security Property; (i) the proceeds of the Obligations are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board

of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; (j) each extension of credit secured by this Deed of Trust is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-in-Lending Act) and Regulation "Z" of the Board of Governors of the Federal Reserve System, because Grantor is a person fully excluded therefrom, and/or because said extension of credit is only for business or commercial purposes of Grantor and is not being used for personal, family, household or agricultural purposes; (k) except for the security interest granted hereby, Grantor is, and as to portions of the Tangible Property and Intangibles to be acquired after the date hereof will be, the sole owner (or lessee in the case of Tangible Property leased by Grantor) of the Tangible Property and Intangibles, free from any adverse lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever; (l) The Tangible Property will be kept on or at the Land and Improvements and (m) Grantor's Address is as stated on the first page of this Deed of Trust and Grantor will immediately notify Beneficiary in writing of any change thereof; (n) Grantor's name is as stated on the first page of this Deed of Trust and Grantor will immediately notify Beneficiary in writing of any change thereof (including the commencement or continuation of business under an assumed name); and (o) Grantor's Organizational Number and/or Grantor's Taxpayer Identification Number (as applicable) is as stated on the first page of this Deed of Trust and Grantor will immediately notify Beneficiary in writing of any change thereof.

35.    **Business Entity**. If Grantor is a corporation, partnership, limited liability company or other business entity, or if Grantor consists of more than one person and any such person is such a business entity, then each such business entity hereby represents and warrants as to itself, in order to induce Beneficiary to extend the credit secured hereby, that: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the state in which the Security Property is located; (b) it has all requisite power and authority (corporate or otherwise) to conduct its business, to own its properties, to execute and deliver this Deed of Trust and all other Loan Documents executed by it, and to perform its obligations under the same; (c) its execution, delivery and performance of this Deed of Trust and all other such Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of its stockholders (if a corporation) or of any other person or entity whose consent has not been obtained; (d) the execution, delivery and performance of this Deed of Trust and all other Loan Documents do not and shall not conflict with any provision of its by-laws or articles of incorporation (if a corporation), partnership agreement (if a partnership), operating agreement or regulations (if a limited liability company) or trust agreement or other document pursuant to which it was created and exists; and (e) if Grantor is a registered organization, Grantor will not change its state of incorporation or formation without obtaining written consent from Beneficiary. Ownership of the Security Property shall be and remain in a single asset entity throughout the term of the Loan.

36.    **Rights not Impaired**. The lien, security interest and other security rights of Beneficiary hereunder shall not be impaired by any indulgence, moratorium or release granted by Beneficiary, including, but not limited to: (a) any renewal, extension or modification which Beneficiary may grant with respect to any of the Obligations; (b) any surrender, compromise, release, renewal, extension, exchange or substitution which Beneficiary may grant in respect of the Security Property, or any part thereof or any interest therein; or (c) any release or indulgence granted to any endorser, guarantor or surety of any of the Obligations. In the event the ownership of the Security Property or any part thereof becomes vested in a person or entity other than Grantor, Beneficiary may, without notice to Grantor, deal with such successor or successors in

interest with reference to this Deed of Trust and to the indebtedness secured hereby in the same manner as with Grantor, without in any way discharging Grantor's liability hereunder or for the payment of the Obligations. No sale of the Security Property, no forbearance on the part of Beneficiary and no extension of the time for the payment of the indebtedness secured hereby given by Beneficiary shall operate to release, discharge, modify, change or affect, in whole or in part, the liability of Grantor hereunder for the payment of the indebtedness secured hereby or the liability of any other person hereunder or for the payment of the indebtedness secured hereby, except as agreed to in writing by Beneficiary.

      37.   **ERISA.** Grantor covenants and agrees that:

      (a)    Grantor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Beneficiary of any of its rights under the Note, this Deed of Trust and the Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

      (b)    Grantor further covenants and agrees to deliver to Beneficiary such certifications or other evidence from time to time throughout the term of this Deed of Trust, as requested by Beneficiary in its sole discretion, that (i) Grantor is not an "employee benefit plan" as defined in Section 3(32) of ERISA, which is subject to Title I of ERISA, or a "governmental plan" within the meaning of Section 3(3) of ERISA; (ii) Grantor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (iii) one or more of the following circumstances is true:

- Equity interests in Grantor are publicly offered securities, within the meaning of 29 C.F.R. §2510.3-101(b)(2);
- Less than 25 percent of each outstanding class of equity interests in Grantor are held by "benefit plan investors" within the meaning of 29 C.F.R. §2510.3-101(f)(2); or
- Grantor qualifies as an "operating company" or a "real estate operating company" within the meaning of 29 C.F.R. §2510.3-101(c) or (e) or an investment company registered under The Investment Company Act of 1940.

      38.   **Other Indebtedness Secured.** In addition to the specific indebtedness identified hereinabove, the Obligations also include, and this Deed of Trust also secures, all Other Indebtedness (as defined in the preliminary recitals of this Deed of Trust) of Grantor to Beneficiary, whether or not presently contemplated by the parties, direct or indirect, otherwise secured or unsecured, joint or several, absolute or contingent, due or to become due, whether for payment or performance, now existing or hereafter arising, regardless of how the same arise or by what instrument, agreement or book account they may be evidenced or whether evidenced by any instrument, agreement or book account, including without limitation all loans (including any loan by renewal), all indebtedness, all undertakings to take or refrain from taking any action, all indebtedness, liabilities or obligations owing from Grantor to others that Beneficiary may have obtained by purchase, negotiation, discount, assignment or otherwise, and all interest, taxes, fees charges, expenses, and attorney's fees chargeable to Grantor or incurred by Beneficiary hereunder or under any other document or instrument delivered in connection herewith.

DALLAS4 592836v1 21122-00071

Doc        Bk    Vol    Pg
02016686   OR   2739   531

39.   **Interpretation**.  Whenever the context of any provision of this Deed of Trust shall
so require, words in the singular shall include the plural, words in the plural shall include the
singular, and pronouns of any gender shall include the other genders.  Captions and headings in
this Deed of Trust are for convenience only and shall not affect its interpretation.  All references in
this Deed of Trust to Exhibits, Schedules, paragraphs and subparagraphs refer to the respective
subdivisions of this Deed of Trust, unless the reference expressly identifies another document.
Wherever used in this Deed of Trust, unless the context clearly indicates a contrary intention or
unless this Deed of Trust specifically provides otherwise: (a) the term "Grantor" shall include any
subsequent owner(s) of the Security Property; (b) the term "Beneficiary" shall include any
subsequent holder(s) of the Note; (c) the term "Obligors" shall include any permitted successor(s)
or permitted assign(s) of any Obligor; (d) the term "Obligations" shall include any modification of
any Obligations from time to time and any future advances or other sums payable to Beneficiary
under this Deed of Trust; (e) the term "Loan Documents" shall include any note or other
instrument evidencing or pertaining to any future advance hereunder and any renewals, extensions
or modifications of any Loan Document; and (f) the term "person" shall mean "an individual,
corporation, partnership, limited partnership, limited liability company,    unincorporated
association, joint stock corporation, joint venture or other legal entity".

40.   **Substitution of Trustee**.  Beneficiary may from time to time unilaterally substitute
a successor to Trustee pursuant to a recordable instrument that complies with applicable law for
substitution of trustees under deeds of trusts.  The recorded substitution will be conclusive proof of
proper substitution of the substitute trustee who will, without conveyance from the predecessor
trustee, succeed to all of the predecessor trustee's title, estate, rights, powers and duties.

41.   **Subordination of Property Manager's Lien**.  Any property management
agreement for the Security Property entered into hereafter with a property manager shall contain a
"no lien" provision whereby the property manager waives and releases any and all mechanics' lien
rights that the property manager or anyone claiming by, through or under the property manager
may have and shall provide that Beneficiary may terminate such agreement at any time after the
occurrence of an Event of Default hereunder.  Such property management agreement or a short
form thereof, at Beneficiary's request, shall be recorded with the Recorder of Deeds of the county
where the Land is located.  In addition, if the property management agreement in existence as of
the date hereof does not contain a "no lien" provision, Grantor shall cause the property manager
under such agreement to enter into a subordination of the management agreement with
Beneficiary, in recordable form, whereby such property manager subordinates present and future
lien rights and those of any party claiming by, through or under such property manager to the lien
of this Deed of Trust.

42.   **Maximum Indebtedness**.    Anything contained herein to the contrary
notwithstanding, in no event shall the indebtedness secured by this Deed of Trust exceed the sum
of Ten Million and No/100 Dollars ($10,000,000.00).

43.   **Miscellaneous**.  Time is of the essence of all provisions of this Deed of Trust.  If
Grantor consists of more than one person, the obligations and liabilities of each such person
hereunder shall be joint and several, and wherever the term "Grantor" is used it shall be deemed to
refer to such persons jointly and severally.  If Grantor is a partnership, then all general partners in
Grantor shall be liable jointly and severally for the covenants, agreements, undertakings and
obligations of Grantor in connection with the Obligations, notwithstanding any contrary provision

DALLAS4 592836v1 21122-00071

of the partnership laws of the state in which the Security Property is located.  This Deed of Trust shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns, and it shall inure to the benefit of Beneficiary and its successors and assigns and to the benefit of Grantor and Grantor's heirs, personal representatives and permitted successors and assigns.  This Deed of Trust cannot be changed except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

44.    **Filing of Financing Statements**.  Grantor authorizes Beneficiary to file one or more financing statements describing the Collateral in the jurisdiction(s) deemed appropriate by Beneficiary.

45.    **Control Agreements**.  Grantor will cooperate with Beneficiary in obtaining a control agreement in form and substance satisfactory to Beneficiary with respect to such Collateral consisting of Deposit Account(s), Letter-of-Credit Rights, Electronic Chattel Paper, and Investment Property.

[signatures and acknowledgment on following page]

DALLAS4 592836v1 21122-00071

Doc
02016686   Bk   Vol   Pg
           OR   2739  533

WITNESS the due execution hereof as of the date first written above.

GRANTOR:

**NOVOGRODER/ABILENE, LLC,**
an Indiana limited liability company

By: _____
George Novogroder, Manager

STATE OF _Indiana_ §
                   §
COUNTY OF _Lake_ §
                 §

The foregoing instrument was acknowledged to me under oath, with the party so acknowledging being sworn, on the _25th_ day of September, 2002, by George Novogroder, in his capacity as Manager of NOVOGRODER/ABILENE, LLC, an Indiana limited liability company, on behalf of said limited liability company.

_____
Blanche S. Hughes
Notary Public, State of _Indiana_

_Resident of Porter County_

My Commission Expires:
_2-6-08_

DALLAS4 592836v1 21122-00071

Doc   BK   Vol   Pg
02/016686   OR   2739   534

## EXHIBIT "A"

Land

Being 1.988 acres and being all of Lot 202 a replat of Lot 102 of a replat of part of Lot 2, Block A, Section 1, Rhodes Plaza Addition, Abilene, Taylor County, Texas according to plat recorded in Plat Cabinet 3, Slide 428, Plat Records, Taylor County, Texas and described by metes and bounds as follows:

BEGINNING at a found ½" Iron Rod and Cap in concrete on the East boundary line of Ridgemont Drive, a 82' wide street, for the called for Northwest corner of said Lot 202 same being the Northern Southwest corner of a Lot 103, Block A, Section 1, Rhodes Plaza Addition according to plat recorded in Plat Cabinet 3, Slide 370, Plat Records, Taylor County, Texas and being the Southwest corner of a certain 60' wide Buyer's Drive Aisle;

THENCE N 89° 18' 58" E 483.44 feet along the South boundary line of the Northern part of said Lot 103 to a found ½" Iron Rod and Cap in concrete for the called for Northeast corner of said Lot 202 and an interior corner of said Lot 103 and being on the West boundary line of a certain 37' Entrance Drive Easement recorded in Volume 1318, page 661, Deed Records, Taylor County, Texas;

THENCE S 0° 41' 54" E 179.81 feet to a found chiseled 'x' on concrete the called for Southeast corner of said Lot 202 and the Northeast corner of Lot 203 same being on the West boundary line of said 37' Entrance Drive Easement from which the Southeast corner of said Lot 203 same being the original Southeast corner of Lot 102 and a corner of said Lot 103, a found chiseled 'x' on concrete bears S 0°41' 54" E 110.35 feet;

THENCE S 89°17' 57" W at 57.72 feet pass the Southeast corner of Circuit City building foundation continuing along the South wall of said building at 215.72 feet pass it's Southwest corner continuing in all 220.76 feet to a found PK nail for a called for corner of said Lot 202 and Lot 203;

THENCE N 1°21' 54" W 2.48 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 38' 02" W 18.90 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 87°20' 32" W 30.38 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 20' 33" W 214.60 feet to a found ½ " Iron Rod and Cap on the East boundary line of Ridgemont Drive in a curve to the left for the called for Southwest corner of Lot 202 and the Northwest corner of Lot 203;

DALLAS4 592836v1 21122-00071

THENCE along said curve to the left having a partial delta of 0° 43' 28", a radius of 664.46 feet, on a chord bearing of N 0° 05' 33" 8.40 feet for an arc distance of 8.40 feet to a found ½ " Iron Rod and Cap in concrete for the called for end of said curve;

THENCE N 0°19' 29" W 169.85 feet along Ridgemont Drive to the POINT OF BEGINNING and containing 1.988 acres of land more or less.

TOGETHER with those certain rights and easements as set forth in (i) the Easement and Agreement dated December 30, 1999, between First National Bank of Abilene and Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2382, page 137 Official Public Records of Taylor County, Texas, and (ii) the Declaration of Easements and Covenants dated as of the 28th day of March, 2000, by Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2494, page 849, Official Public Records of Taylor County, Texas.

DALLAS4 592836v1 21122-00071

## EXHIBIT "B"

Permitted Exceptions

1. Easement and agreement dated December 30, 1998, by and between First National Bank of Abilene, a national banking association (Grantor) and Circuit City Stores, Inc., a Virginia corporation (CCS) filed for record January 15, 1999, in Book 2382, page 137, Official Public Records of Taylor County, Texas.

2. Subject to the reservation of a mineral and/or royalty interest described in Volume 420, Page 582, Deed Records, Taylor County, Texas.

3. Ten foot (10') underground utility easement running along the easterly property line according to plat thereof recorded in Cabinet 3, Slide 369, Plat Records of Taylor County, Texas.

4. Memorandum of Lease by Lakepointe Texas Investment Properties, LLC, a South Carolina limited liability company, as Lessor and Circuit City Stores, Inc., a Virginia corporation, as Lessee, dated March 31, 2000, and recorded on April 5, 2000, under Taylor County Clerk's File No. 5516, in Volume 2494, Page 875, Official Public Records of Taylor County, Texas, as affected by that certain Subordination, Nondisturbance Agreement signed by Circuit City Stores, Inc. and Beneficiary and filed in Real Property Records of Taylor County, Texas.

5. Declaration of Easement and Covenants dated March 28, 2000 by Circuit City Stores, Inc., recorded in Volume 2494, Page 849, Official Public Records of Taylor County, Texas.

DALLAS4 592836v1 21122-00071

Doc        Bk    Vol      Pg
02016686   OR    2739     537

*Filed for Record in:*
*Taylor County*

*On: Sep 27,2002   at   11:51A*

STATE OF TEXAS                COUNTY OF TAYLOR
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the Official Public
Records of:   Taylor County, Texas as stamped
hereon by me.

Janice Lyons, County Clerk
Taylor County, Texas

By
JoAnn Bender
Deputy