IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC., et al. | ) | CHAPTER 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

RESPONSE OF UNITED STATES CUSTOMS AND BORDER PROTECTION
TO DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 362(d)(1), AND 365(a),
AND BANKRUPTCY RULES 4001 AND 6006, AND LOCAL BANKRUPTCY
RULE 4001 (I) AUTHORIZING REJECTION OF SURETY BONDS, (II)
MODIFYING THE AUTOMATIC STAY FOR THE LIMITED PURPOSE OF
ALLOWING SAFECO INSURANCE COMPANY OF AMERICA TO COMMENCE
CANCELLATION OF SURETY BONDS, (III) ESTABLISHING SURETY
BOND CLAIM DEADLINE, AND (IV) GRANTING RELATED RELIEF

The United States Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security, by counsel, responds to the "Debtors' Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105(a), 362(d)(1), and 365(a), and Bankruptcy Rules 4001 and 6006, and Local Bankruptcy Rule 4001(I) Authorizing Rejection of Surety Bonds, (II) Modifying the Automatic Stay for the Limited Purpose of Allowing Safeco Insurance Company of America to Commence Cancellation of Surety Bonds, (III) Establishing Surety Bond Claim Deadline, and (IV) Granting Related Relief" ("Debtor's Motion") filed September 25, 2009 as follows:

INTRODUCTION

The debtor filed its Motion:

> seek[ing] entry of an order . . . authorizing the Debtors to reject the
> Surety Bonds[,] . . . seek[ing] modification of the automatic stay
> under Bankruptcy Code sections 105(a) and 362(d)(1), Bankruptcy
> Rule 4001 and Local Rule 4001 for the limited purpose of allowing

> Safeco Insurance Company of America ("Safeco") to commence cancellation of the Debtors' outstanding Surety Bonds[,] . . . [and requesting] . . . *that the Court establish a deadline by which any obligee ("Obligee") to a Surety Bond that is cancelled pursuant to the Order must file a Surety Bond Claim with Safeco (the "Surety Bond Claim Deadline")*[,] . . . [and that such claim deadline be established] . . . *sixty (60) days after the occurrence of the Surety Bond Cancellation Effective Date*. . . . [Finally], the Debtors request[ed] that the Court direct Safeco to return unused funds drawn from the Safeco [line of credit] . . . as the Surety Bond Deadline . . . expires in accordance with the procedures described in this Motion.

Debtor's Motion, p. 4 ¶ 6 (emphasis added). The Motion identifies on Exhibit B attached to the Motion an "Importer Broker Bond" in the amount of $1,000,000.00 for which CBP is the obligee. Consequently, among the other bonds at issue in the Motion, the Debtors seek to have the Importer Broker Bond cancelled, and to require CBP to file any claim it may have within a 60-day period to be determined. Id. The failure to CBP (as with any other obligee, as proposed by the Motion) "to file such a Surety Bond Claim *shall release and discharge the Debtors and Safeco from any such Surety Bond Claim* that could have been made by the Surety Bond Obligee, and *any such Surety Bond Claim shall be barred against the Debtors and Safeco forever by court order*." Debtor's Motion, pp. 11-12, ¶ 19 (emphasis added).

For the reasons set forth below, this Court should not–indeed, may not–bar any future claims against the surety, Safeco. The Debtor's Motion should be denied as it relates to the Importer Broker Bond in favor of CBP.

ARGUMENT

I. SOVEREIGN IMMUNITY BARS THE COURT FROM ENJOINING ANY CLAIMS AGAINST SAFECO.

A suit is against the sovereign if "'the judgment sought would expend itself on the public

treasury or domain, or *interfere with the public administration*' . . . or *if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act*.'"  Dugan v. Rank, 372 U.S. 609, 620 (1963) (quoting Land v. Dollar, 330 U.S. 731, 738 (1947); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704 (1949)) (emphasis added).

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); see United States v. Dalm, 494 U.S. 596, 608 (1990); Lehman v. Nakshian, 453 156, 160 (1981); United States v. Testan, 424 U.S. 392, 399 (1976).  "[S]overeign immunity can be waived only by an unequivocal and express act of Congress."  United States v. Jones, 225 F.3d 468, 469 (4th Cir. 2000); see Liffiton v. Keuker, 850 F.2d 73, 77 (2nd Cir. 1988) ("It is well-settled that the United States is immune from suit except where [C]ongress, by specific statute, has waived sovereign immunity."); Barmes v. United States, 199 F.3d 386, 388 (7th Cir. 1999) ("the United States cannot be sued unless by statute Congress has expressly and unequivocally waived the government's sovereign immunity") (citing Dalm, 494 U.S. at 608).

In determining whether the Government is immune from "suit," "courts interpret the term 'suit' broadly to include more than just an actual suit instituted against the United States," and extends to "all types of injunctive process and relief."  United States v. Murdoch Machine and Engineering Co., 81 F.3d 922, 931 (10th Cir. 1996).  Thus the Government's sovereign immunity "embodies the broad principle that the government is not subject to "legal proceedings, at law or in equity' or 'judicial process' without its consent. . . . [and] comports with the core notion of

sovereign immunity that in the absence of governmental consent, the courts *lack jurisdiction* to 'restrain the government from acting, or to compel it to act.'" Id.

In the current case, the relief requested by the Debtors plainly would "interfere with the public administration" and "restrain the Government from acting." Federal law empowers the Commissioner of CBP to protect the revenue of the United States by requiring a bond for each entry of merchandise entering the country. 19 U.S.C. § 1623; see also, 19 C.F.R. § 113.1. In other words, bonds are required of importers such as the Debtors in order to protect the United States from potential loss of revenue resulting from that importer's failure to pay (e.g., as a result of bankruptcy, fraud, etc.). There are many types of customs bonds, however, the most common is a basic importation bond, which is the bond at issue relating to CBP in the current Motion. A basic importation bond, either securing a single entry or one that secures multiple entries during a specified time period, protects the revenue by obligating a surety to be jointly and severally liable with an importer, up to the face amount of the bond, for any duties, taxes or fees found to be due on the entry, or entries, the bond secures. See, 19 C.F.R. § 113.62.

In the current case, Debtor, as obligor, and Safeco, as guarantor, executed customs bond #9905E4843 for $1,000,000 to secure its potential obligations to CBP effective June 24, 2005. This bond was renewed for subsequent annual periods by the debtor and Safeco for $1,000,000 for each annual period. As a matter of federal law, and the authority cited, CBP has the legal right–and is directed–to look to the surety in the event of the default of the obligor.

In addition to securing entries that remain unliquidated, the Safeco Bond secures the revenue that may be lost as a result of negligence, gross negligence, or fraud on the part of the Debtors. See, 19 U.S.C. § 1592(d). CBP typically has five years from the date of the alleged

–4–

violation (or the date of discovery if fraud) to institute an action against the surety to recover such duties. 19 U.S.C. § 1621. CBP does not know to what extent Debtors and/or Safeco, as surety, may be liable for additional duties pursuant to 19 U.S.C. § 1592(d). However, by law CBP is entitled to its rights against the surety.

Moreover, that CBP's rights are likely to be exercised against the surety is not merely speculative. In February 2009, the Debtors submitted a prior disclosure to CBP indicating that they had improperly calculated certain duties due on one or more entries. Neither Debtors nor CBP can insure that additional obligations will not come to light within the statutory timeframe. A Bond Claim Deadline would deny CBP its rights under the bond, and the statutes and regulations under which the bond was procured, under circumstances for which the bond was required in the first place. Any court order enjoining CBP from exercising its rights under the bond, statute, or regulation would "expend itself on the public treasury or domain," "interfere with the public administration," and "restrain the Government from acting"–the very events that sovereign immunity bars.

II.   THERE IS NO "RELATED TO" JURISDICTION TO AUTHORIZE AN INJUNCTION AGAINST ANY GOVERNMENT CLAIMS AGAINST THE SURETY.

While section 1334(b) (28 U.S.C.) has a catch-all "related to" provision granting Bankruptcy Court jurisdiction in certain circumstances, that subsection is not all encompassing and what is "related to" a bankruptcy proceeding has a specialized meaning. An action is "related to" a bankruptcy case if the outcome of that action "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984). Stated another way, "[a]n action is related to bankruptcy if the outcome could

alter the debtor's rights, liabilities, options, or freedom of action (whether positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estates." Id. The Fourth Circuit has adopted the Pacor test for "related to" jurisdiction in bankruptcy matters. See New Horizon of NY, LLC. v. Jacobs, 231 F.3d 143, 151 (4th Cir. 2000). While the Debtors' desire to bring additional funds held by Safeco[1] into the estate for administration may qualify as an effort to impact the administration of the estate, the further provision discharging the surety from any liability or obligation that it has under the bonds is not "related to" the bankruptcy and cannot affect the administration of the estate.

      III.    ANY ACTION TO ENJOIN CBP'S COLLECTION AGAINST THE SURETY MUST BE BROUGHT BY ADVERSARY PROCEEDING.

Rule 7001(7), Fed. R. Bankr. P., provides that an adversary proceeding is required "to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief." While the Fourth Circuit has recognized the application of § 105 of the Bankruptcy Code (11 U.S.C.) to protect certain non-debtor parties, such protection has only been allowed on unique facts. Further, to enjoin CBP from any collection on its bonds against Safeco requires, as Rule 7001(7) provides, an adversary proceeding. See In re Riverfront Properties, LLC, 405 B.R. 570, 575 (Bankr. S.C. 2009) (citations omitted).

---

[1] CBP does not concede that the funds in question are property of the estate. The funds at issue belonged to Bank of America. See, e.g., Hechinger Inv. Co. of Del., Inc. v Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.), 282 B.R. 149 (Bankr. D. Del. 2002).

IV. THE PROPOSED BOND CLAIM DEADLINE BARRING OR ENJOINING CBP IS AN IMPROPER INJUNCTION UNDER FOURTH CIRCUIT STANDARDS.

The bankruptcy code explicitly states that discharge of a debt does not affect the liability of non-debtor third parties. 11 U.S.C. § 524(e). Section 524(e) provides: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). However, this is precisely what the Debtors are attempting to do. Safeco is jointly and severally liable with the Debtors under the terms of the bond agreement. See, 19 C.F.R. § 113.62(a). Because Safeco is not a debtor in this case, its liability should not be affected.

Notwithstanding the seemingly clear language of Section 524(e), the Fourth Circuit Court of Appeals in Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989) concluded that in certain limited, unusual circumstances third party releases may be effective in a Chapter 11 plan of reorganization. *Id.* at 702. Notably, this case–unlike A.H. Robins–does not involve a Chapter 11 plan of reorganization or any of the exceptional circumstances on which the Debtors could obtain the relief they seek. See A.H. Robins Co., 880 F.2d at 701-02; Cf. Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir. 1988) ("Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so."). Rather, Section 524(e) should be applied according to its terms, and no discharge provided for the non-debtor surety. See, e.g., In re Zale Corp., 62 F.3d 746 (5th Cir. 1995); In re

Lowenschuss, 67 F.3d 1394, 1401-02 (9th Cir. 1995); In re Western Real Estate Fund, Inc., 922 F.2d 592, 601 (10th Cir. 1990).

An injunction against and release of a non-consenting creditor's claim against a nondebtor "is only appropriate in 'unusual circumstances.'" Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 658 (6th Cir. 2002). Cf. In re A.H. Robins, 880 F.2d at 702 (discussing factual circumstances justifying injunction barring suits against third parties). It is essential that the facts and circumstances leading to the grant of an injunction and release in favor of a non-debtor be grounded in principles of fairness. Gilman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 217 (3rd Cir. 2000). A review of the A.H. Robins decision and the cases that follow it show that the unusual circumstances needed to grant a third party injunction and release as part of a Chapter 11 plan do not exist in the present case.

The debtor in *A.H. Robins* manufactured and sold almost five million Dalkon Shield Intrauterine Devices. A.H. Robins Co., Inc., 88 B.R. 742, 743 (E.D.Va. 1988), *aff'd* 880 F.2d 694 (4th Cir. 1989).[2] Numerous lawsuits were filed against Robins forcing it to file bankruptcy. At the time of filing, Robins faced almost 6,000 lawsuits and catastrophic tort liability. Its insurer, Aetna Casualty and Surety Company ("Aetna"), paid out approximately $530 million in settlements relating to Dalkon Shield litigation. Id. Robins and Aetna entered into a settlement pursuant to which Aetna paid $75 million into a trust established for the benefit of tort claimants and provided three insurance policies totaling $350 million. A.H. Robins Co., 88 B.R. at 759.

---

[2] The lower court decisions in the A.H. Robins case are cited to highlight the facts of that bankruptcy case.

–8–

Claimants were required to seek recovery on their claims from certain funds set up to administer tort claims. Even late claimants were allowed to participate in a potential recovery.

The plan of reorganization included an injunction barring suits, including medical malpractice suits, against nondebtor third parties, including Aetna, which potentially were subject to liability as joint tortfeasors. In re A.H. Robins, 880 F.2d at 700-01. Over 94.38% of the claimants voted for the plan in *Robins*. Under the terms of the plan, there were sufficient funds to fully pay all meritorious claims. Id. at 701. Accordingly, the plan contemplated that all persons having claims connected with the Dalkon Shield would be funneled into several specific funds for recovery. A procedure was established to examine the merit of claims. The injunction in *Robins* was necessary because a flood of future lawsuits against non-debtors would significantly affect the bankruptcy reorganization by virtue of the non-debtor's rights to indemnity or contribution. Id. Given this, the Court found that the injunction was essential to the reorganization. Id. at 701-02. In upholding the injunction, the Court reasoned:

> In this situation where the Plan was overwhelmingly approved, where the Plan in conjunction with insurance policies provided as part of a plan of reorganization gives a second chance for even late claimants to recover where, nevertheless, some have chosen not to take part in the settlement in order to retain rights to sue other parties, and where the entire reorganization hinges on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor, we do not construe § 524(e) so that it limits the equitable power of the bankruptcy court to enjoin the questioned suits. We leave questions concerning cases in which § 524(e) does apply for another day.

Id. at 702.

Quite simply, in this liquidating Chapter 11 case, there are no exceptional circumstances on which an entry of an injunction can be supported. Pursuant to the express terms of Section

524(e), Debtors' request for an injunction barring CBP from asserting any claims against the non-debtor guarantor must be rejected.

### V. A BAR DATE IS CONTRARY TO FEDERAL REGULATIONS.

Moreover, the establishment of a Bond Claim Deadline conflicts with Federal Regulations. These regulations provide that a surety "remains liable on a terminated bond for obligations incurred prior to termination." 19 C.F.R. § 113.3. CBP interprets this regulation to mean that "both a principal and surety remain liable on a terminated bond for any obligation incurred before the bond was terminated. The phrase any obligation incurred simply refers to obligations such as the liability to pay duty on entered merchandise that is charged against a bond." 15 Cust. B. & Dec. 806 (May 12, 1980). A Bond Claim Deadline that extinguishes Safeco's liability for duties on unliquidated entries conflicts with CBP's regulation requiring sureties to remain liable on terminated bonds.

### VI. THE RISK OF LOSS SHOULD REST WITH SAFECO RATHER THAN CBP.

The Debtors' motion indicates that Safeco issued multiple bonds to secure the Debtors' performance in a variety of contexts. CBP is concerned only with the risk of loss associated with the Customs bond described above. Therefore, CBP takes no position on the setting of a Bond Claim deadline with respect to any other bonds or on the propriety of ordering the surety to release any funds it is holding that are property of the estate.

CBP objects to any attempt by the Debtors or Safeco to shift the risk of loss to CBP. As set out above, the statutory and regulatory Customs bond regime was created to protect the government from the loss of revenue. Both the Debtors and Safeco were fully aware of the risks associated with importing merchandise and issuing bonds. The bond terms specifically give

CBP "the discretionary authority to seek payment of outstanding duties from [a surety] independently of any action that may be brought against its principal." <u>Wash. Int'l Ins. Co. v. United States</u>, 25 C.I.T. 207, 225 (2001). Furthermore, the potential for the Debtors to seek bankruptcy protection was foreseeable. Safeco is a sophisticated participant in the Customs bond market and undoubtedly considered the risk of the Debtors' insolvency when setting its bond premium. Even if Safeco failed to do so, that is not a justification for shifting the risk of loss to CBP.

## CONCLUSION

For the foregoing reasons, the Debtors' Motion should be denied as it relates to CBP, and no bar date for asserting claims against the surety, Safeco, should apply with respect to CBP.

DATED this   28   day of October, 2009.

                    Respectfully submitted,

                    NEIL H. MACBRIDE
                    UNITED STATES ATTORNEY

By:    /s/Robert P. McIntosh
      Robert P. McIntosh
      Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2009, a true and correct copy of the foregoing RESPONSE OF UNITED STATES CUSTOMS AND BORDER PROTECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 362(d)(1), AND 365(a), AND BANKRUPTCY RULES 4001 AND 6006, AND LOCAL BANKRUPTCY RULE 4001 (I) AUTHORIZING REJECTION OF SURETY BONDS, (II) MODIFYING THE AUTOMATIC STAY FOR THE LIMITED PURPOSE OF ALLOWING SAFECO INSURANCE COMPANY OF AMERICA TO COMMENCE CANCELLATION OF SURETY BONDS, (III) ESTABLISHING SURETY BOND CLAIM DEADLINE, AND (IV) GRANTING RELATED RELIEF was electronically filed with the Clerk of the Court using the CM/ECF system, which will thereby cause the above to be electronically served on all registered users of the ECF system that have filed notices of appearance in this matter, and mailed, by U.S. Mail, first class, postage prepaid, to the foregoing Motion and Memorandum to the following:

>Daniel F. Blanks, Esq.
>Douglas M. Foley, Esq.
>McGuire Woods LLP
>9000 World Trade Center
>101 W. Main Street
>Norfolk, Virginia 23510
>*Counsel for Debtor*

Dion W. Hayes, Esq.
Joseph S. Sheerin, Esq.
Sarah Becket Boehm, Esq.
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
*Counsel for Debtor*

Greg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636 Wilmington, Delaware 19899-0636
*Counsel for Debtor*

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
333 West Wacker Drive
Chicago, Illinois 60606

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
*Co-counsel for Official Committee of Unsecured Creditors*

Jeffrey N. Pomerantz, Esq.
Brad R. Godshall, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100
*Counsel for Official Committee of Unsecured Creditors*

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, New York 10017-2024
*Counsel for Official Committee of Unsecured Creditors*

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia 23219
*Counsel for U.S. Trustee*

Bruce H. Besanko
9950 Mayland Drive
Richmond, VA 23233

George J. Bachrach
Wright, Constable & Skeen, LLP
100 North Charles Street, 16th Floor
Baltimore, Maryland 21201
E-mail: gbachrach@wcslaw.com
*Counsel for Safeco*


   /s/Robert P. McIntosh
  Robert P. McIntosh
  Assistant U.S. Attorney