

**Taylor County**
**Larry G Bevill**
**County Clerk**
Abilene, Texas 79602 (325)674-1202



70 2009 00008310

Instrument Number: 2009-00008310

As

Recorded On: June 04, 2009          Recording Fee

Parties:  MCCALL ANDREW K SUBSTITUTE TRUSTEE                    Billable Pages: 9

To      ABILENE-RIDGEMONT LLC                              Number of Pages: 10

Comment:  TD

( Parties listed above are for Clerks reference only )

** Examined and Charged as Follows: **

Recording Fee                    48.00

    Total Recording:             48.00

*********** **DO NOT REMOVE. THIS PAGE IT IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                              Record and Return To:
    Document Number: 2009-00008310
    Receipt Number: 232468                        BRADSHAW & MCCALL, LLP
    Recorded Date/Time: June 04, 2009 02:16:43P     PO BOX 3136
                                                  ABILENE TX 79604

        User / Station: M Dick - Cash STation 5



State of Texas
County of Taylor

**THIS IS NOT A BILL**

I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly
RECORDED in the OFFICIAL RECORDS of Taylor County, Texas as stamped hereon.

  County Clerk
Taylor County, Texas

RECORDING REQUESTED
BY AND WHEN
RECORDED RETURN TO:

Michael Springer
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### TRUSTEE'S DEED and BILL OF SALE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TAYLOR | § |

| | |
|---|---|
| Deed Date: | June 2, 2009 |
| Date of Sale: | June 2, 2009 |
| Grantor: | Andrew K. McCall, Substitute Trustee as appointed under that certain Appointment of Substitute Trustee dated May 7, 2009 and filed in the real property records Taylor County, Texas under Clerk's File No. 2009-00006755 |
| Grantor's Address: | 278 South Pioneer Drive, Abilene, Texas 79605 |
| Grantee: | ABILENE-RIDGEMONT, LLC, a Texas limited liability company |
| Grantee's Address: | c/o Southern Farm Bureau Life Insurance Company, P.O. Box 78, Jackson, Mississippi 39205, Attn: Chadwick W. Russell |
| Consideration: | $2,840,000.00 |
| Property: | All Security Property (as defined in that certain Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust") executed by Novogroder/Abilene, LLC recorded September 27, 2002 in the real property records of Taylor County, Texas under Clerk's Doc 02016686, Bk OR, Vol 2739, Pgs 500-537) including but not limited to the real property described in Exhibit A attached hereto and made a part hereof together with all improvements, fixtures and other property (real or personal, tangible or intangible) and any proceeds thereof described in the Deed of Trust. The Property specifically includes, without limitation, all proceeds and any unearned premiums on any insurance policies covering the Property, including without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property. |

1019353v.1

WHEREAS, on or about September 25, 2002, NOVOGRODER/ABILENE, LLC granted, sold and conveyed the Property to Mark R. Vowell, in trust, to have and to hold, together with all and singular the rights and appurtenances thereto in anywise belonging to secure the payment of a note or notes pursuant to the Deed of Trust to which reference is made for a detailed description of the note or notes and the terms and conditions of the Deed of Trust;

WHEREAS, ABILENE-RIDGEMONT, LLC ("Lender"), the legal and equitable owner and holder of the note or notes, declared a default in the payment of the obligations secured by the Deed of Trust;

WHEREAS, written notice of the default and all other required notices were mailed to all debtors in default and debtors were given the requisite time to cure the default before the debt was accelerated and a notice of sale was given;

WHEREAS, the default was not cured within the allowed cure period;

WHEREAS, the Lender accelerated the maturity date of the note or notes and declared all sums secured by the Deed of Trust to be immediately due and payable:

WHEREAS, the Lender (as Beneficiary under the Deed of Trust) removed the original Trustee and appointed and requested Grantor to serve as Substitute Trustee and sell the Property (as defined in the Deed of Trust) in accordance with the Deed of Trust and apply the proceeds of the sale to the indebtedness in accordance with the Deed of Trust;

WHEREAS, as evidenced by the Affidavit of Giving Notice attached hereto as Exhibit B and incorporated herein, a Notice of Foreclosure Sale was filed with the County Clerk of Taylor County and posted at the designated and customary location in the county where the Property is located, and was served, along with notice of acceleration, on all debtors obligated under the indebtedness under the note or notes in compliance with the Texas Property Code, at least twenty-one (21) days prior to the date of the sale indicated above at the last known address of each such obligor according to the records of Lender.

WHEREAS, on the date of the sale indicated above, between the hours of 10:00 a.m. and 4:00 p.m. and within three hours of the notice of the earliest time for sale indicated in the above-mentioned Notice of Foreclosure Sale, Grantor proceeded to sell the Property at a public auction at the Lobby of the southeast entrance of the Taylor County Courthouse and adjacent exterior upper porch area and at 11:01 A.M. struck off the Property to the Grantee named above for the consideration described above, it being the highest bid.

NOW THEREFORE, by virtue of the authority conferred upon Grantor as Substitute Trustee as authorized by the Deed of Trust, and applicable law, and for the consideration stated above, Grantor hereby grants, sells and conveys the Property (both real and personal), together with all and singular the rights and appurtenances thereto in any wise belonging, to Grantee and its heirs, successors and assigns forever, to have and to hold it to Grantee, and Grantor binds NOVOGRODER/ABILENE, LLC, its successors and assigns to warrant and forever defend all and singular the Property (both real and personal) to Grantee and Grantee's heirs, successors and assigns insofar as is authorized by the Deed of Trust, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Grantor sells the Property (both real and personal) "as-is" without any expressed or implied warranties and at Grantee's own risk, pursuant to the terms of Section 51.009 of the Texas Property Code.

*[Signature Page to Follow]*

2

1019353v.1

_____

Andrew K. McCall, as Substitute Trustee

STATE OF TEXAS         §
                                     §
COUNTY OF TAYLOR    §

       This instrument was acknowledged before me on this 4 day of June , 2009 by Andrew K. McCall as Substitute Trustee.



ASHLEY FERGUSON
MY COMMISSION EXPIRES
October 31, 2010

_____

Notary Public

After Recording Please Return to:
Michael Springer
Winstead PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002

*[Signature Page to Trustee's Deed and Bill of Sale]*

1019353v.1

**Exhibit A**

Legal Description

THIS PAGE IS NOT SUITABLE
FOR SCANNING, THEREFORE
THIS RECORDER STAMP HAS
BEEN ADDED

Exhibit A

1019353v.1

## EXHIBIT A

### Legal Description

Being 1.988 acres and being all of Lot 202 a replat of Lot 102 of a replat of part of Lot 2, Block A, Section 1, Rhodes Plaza Addition, Abilene, Taylor County, Texas according to plat recorded in Plat Cabinet 3, Slide 428, Plat Records, Taylor County, Texas and described by metes and bounds as follows:

BEGINNING at a found ½" Iron Rod and Cap in concrete on the East boundary line of Ridgemont Drive, a 82' wide street, for the called for Northwest corner of said Lot 202 same being the Northern Southwest corner of a Lot 103, Block A, Section 1, Rhodes Plaza Addition according to plat recorded in Plat Cabinet 3, Slide 370, Plat Records, Taylor County, Texas and being the Southwest corner of a certain 60' wide Buyer's Drive Aisle;

THENCE N 89° 18' 58" E 483.44 feet along the South boundary line of the Northern part of said Lot 103 to a found ½" Iron Rod and Cap in concrete for the called for Northeast corner of said Lot 202 and an interior corner of said Lot 103 and being on the West boundary line of a certain 37' Entrance Drive Easement recorded in Volume 1318, page 661, Deed Records, Taylor County, Texas;

THENCE S 0° 41' 54" E 179.81 feet to a found chiseled 'x' on concrete the called for Southeast corner of said Lot 202 and the Northeast corner of Lot 203 same being on the West boundary line of said 37' Entrance Drive Easement from which the Southeast corner of said Lot 203 same being the original Southeast corner of Lot 102 and a corner of said Lot 103, a found chiseled 'x' on concrete bears S 0° 41' 54" E 110.35 feet;

THENCE S 89° 17' 57" W at 57.72 feet pass the Southeast corner of Circuit City building foundation continuing along the South wall of said building at 215.72 feet pass it's Southwest corner continuing in all 220.76 feet to a found PK nail for a called for corner of said Lot 202 and Lot 203;

THENCE N 1° 21' 54" W 2.48 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 38' 02" W 18.90 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 87° 20' 32" W 30.38 feet to a found PK nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 20' 33" W 214.60 feet to a found ½" Iron Rod and Cap on the East boundary line of Ridgemont Drive in a curve to the left for the called for Southwest corner of Lot 202 and the Northwest corner of Lot 203;

A-1

8210649_3

THENCE along said curve to the left having a partial delta of 0° 43' 28", a radius of 664.46 feet, on a chord bearing of N 0° 05' 33" 8.40 feet for an arc distance of 8.40 feet to a found ½" Iron Rod and Cap in concrete for the called for end of said curve;

THENCE N 0° 19' 29" W 169.85 feet along Ridgemont Drive to the POINT OF BEGINNING and containing 1.988 acres of land more or less.

TOGETHER with those certain rights and easements as set forth in (i) the Easement and Agreement dated December 30, 1999, between First National Bank of Abilene and Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2382, page 137 Official Public Records of Taylor County, Texas, and (ii) the Declaration of Easements and Covenants dated as of the 28th day of March, 2000, by Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2494, page 849, Official Public Records of Taylor County, Texas.

8210649.3

A-2

**Exhibit B**

Affidavit of Giving Notice

**THIS PAGE IS NOT SUITABLE
FOR SCANNING, THEREFORE
THIS RECORDER STAMP HAS
BEEN ADDED**

1019353v.1

Exhibit B

STATE OF TEXAS      §
                           §

COUNTY OF HARRIS     §

## AFFIDAVIT OF GIVING NOTICE

BEFORE ME, the undersigned authority, on this day personally appeared Affiant, a person well known to me, who upon oath stated:

I, Michael P. Springer, am an employee of Winstead, PC (and was, during the actions described herein, an employee of Sutherland, Asbill & Brennan, LLP). The facts stated in this affidavit are within my personal knowledge and are true and correct, I am over the age of eighteen years, have never been convicted of a felony or a crime of moral turpitude and have personal knowledge of the facts set forth herein. I am competent to make this affidavit.

I am a Substitute Trustee appointed to enforce the power of sale contained in that certain Deed of Trust, Security Agreement and Assignment of Leases in the real property records of Taylor County, Texas on September 27, 2002 under Clerk's Doc No. 02016686, Bk OR, Vol 2739, Pgs 500-537.

At my request and under my supervisor a Notice of Foreclosure Sale ("Notice") was prepared pertaining to a public foreclosure sale to be conducted for the benefit of ABILENE-RIDGEMONT, LLC, a Texas limited liability company ("Lender") of certain real and personal property as described in the Notice. At my request and under my supervision, the Notice was filed with the Clerk of Taylor County on May 12, 2009 at approximately 8:16 A.M. The necessary filing fees were paid and a true, correct and complete copy of the Notice was posted on the bulletin board where public notices are customarily posted in Taylor County.

At my request and under my supervision, the Notice and a letter informing the Debtors of the acceleration of the loan was mailed to each Debtor obligated to pay the note, addressed to each Debtor's most recent address, as shown by the records of Lender. The Notice was deposited at a United States Post Office under the care and custody of the United States Postal Service in a postage prepaid envelope, certified mail/return receipt requested, on May 12, 2009, which date was at least 21 days preceding the date on which the foreclosure sale was held.

*[Signature Page Follows]*

1019418v.2

Michael P. Springer

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

SUBSCRIBED AND SWORN TO before me by _Michael P. Springer_ on
_June 4, 2009_ .

Notary Public, State of Texas
Printed Name: _Joyce E. Ervin_
Commission Expires: _7/29/ 2010_

JOYCE E. ERVIN
MY COMMISSION EXPIRES
July 29, 2010

*[Signature Page to Affidavit of Giving Notice]*

Return to:
Republic Title of Texas, Inc.
2626 Howell Street, 10th Floor
Dallas TX 75204
02R 14754 ND2

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of the ___25___ day of September, 2002, by NOVOGRODER/ABILENE, LLC, an Indiana limited liability company, having its principal place of business at 875 North Michigan Avenue, Suite 3612, Chicago, Illinois 60611, as mortgagor ("Borrower") to SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, a Mississippi corporation, having an address at 1401 Livingston Lane, Jackson, Mississippi 39213, as mortgagee ("Lender").

### RECITALS:

Borrower by its promissory note of even date herewith given to Lender is indebted to Lender in the principal sum of $3,225,000.00 in lawful money of the United States of America (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note.

Borrower desires to secure the payment of the Debt (defined below) and the performance of all of its obligations under the Note and the Loan Documents as defined in the Security Instrument (defined below).

### CONSIDERATION

CONSIDERATION. This Assignment is made in consideration of that certain loan made by Lender to Borrower evidenced by the Note and secured by that certain commercial real estate mortgage and security agreement, deed of trust and security agreement, deed to secure debt and security agreement or similar real estate security instrument given by Borrower to or for the benefit of Lender, dated the date hereof, in the principal sum of $3,225,000.00 hereof on the property described in Exhibit A attached hereto (the "Property"), and intended to be duly recorded (the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (defined below) are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender which wholly or partially secure or guarantee payment of the Debt are referred to herein as the "Other Security Documents".

### ARTICLE 1 - ASSIGNMENT

Section 1.1    PROPERTY ASSIGNED.  Borrower hereby irrevocably, absolutely and unconditionally assigns and grants to Lender the right, title and interest of Borrower in and to all of

the following property, rights, interests and estates, whether now owned, or hereafter acquired (the
"Assigned Property"):

(a)     Leases and Other Agreements.   All existing and future leases and all other
agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property
or any portion thereof now or hereafter made, whether before or after the filing by or against
Borrower of any petition for relief under 11 U.S.C. § 101 *et seq* , as the same may be amended
from time to time (the "Bankruptcy Code") together with any extension, renewal or replacement
of the same (collectively the "Leases"); this Assignment of all such other present and future leases
and present and future agreements being effective without further or supplemental assignment.

(b)     Rents.  All rents, additional rents, revenues, income, issues and profits (including
all oil and gas or other mineral royalties and bonuses), deposits, accounts and other benefits arising
from the Leases and renewals and replacements thereof or otherwise from the use, enjoyment and
occupancy of the Property and any cash or security deposited in connection therewith, whether
paid or accruing before or after the filing by or against Borrower of any petition for relief under the
Bankruptcy Code (collectively, the "Rents").

(c)     Bankruptcy Claims.  All claims and rights (the "Bankruptcy Claims") to the payment
of damages and other claims arising from any rejection by a lessee of any Lease under the
Bankruptcy Code.

(d)     Lease Guaranties.  All claims and rights under any and all lease guaranties, letters
of credit and any other credit support given to Borrower by any guarantor in connection with any
of the Leases (individually, a "Lease Guarantor", and collectively, the "Lease Guarantors").

(e)     Proceeds.  All proceeds from any sale or other disposition of the Leases, the
Rents, the Lease Guaranties and the Bankruptcy Claims.

(f)     Other Rights.  All rights, powers, privileges, options and other benefits of Borrower
as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation
the immediate and continuing right to make claim for, receive, collect and apply all Rents payable
or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto
(and to apply the same to the payment of the Debt or the Other Obligations), and to do all other
things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease
Guaranties.

(g)     Entry.  The right, at Lender's option, to enter upon the Property in person, by agent
or by court-appointed receiver, to collect the Rents and enforce the Leases.

(h)     Power of Attorney.  Borrower's irrevocable power of attorney, coupled with an
interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all

DALLAS4 592812v1 21122-00071

other actions designated by Lender for the proper management and preservation of the Property.

(i)    Other Rights and Agreements.  Any and all other rights of Borrower in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals, extensions, supplements, restatements and substitutions thereof.

Section 1.2    TERMINATION OF ASSIGNMENT.  Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

ARTICLE 2 - TERMS OF ASSIGNMENT

Section 2.1    PRESENT ASSIGNMENT.  It is intended by Borrower that this Assignment constitute a present, irrevocable, absolute and unconditional assignment of the Assigned Property, and not an assignment for additional security only. Lender shall have the immediate and absolute right to collect and receive the Rents and other sums payable with respect to the Assigned Property.  Lender shall immediately be entitled to possession of all Rents and sums due and payable pursuant to any of the Assigned Property, whether or not Lender enters upon or takes control of the Property.

Section 2.2    NOTICE TO LESSEES.  Borrower hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party all Rents and all sums due under any Lease Guaranties, and to continue so to do until otherwise notified by Lender.

Section 2.3    INCORPORATION BY REFERENCE.    All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

ARTICLE 3 - REMEDIES

Section 3.1    REMEDIES OF LENDER.  (a)  Upon or at any time after an Event of Default, without waiving such Event of Default, to the extent permitted by law, without notice and without regard to the adequacy of the security for the Debt, with or without bringing any action or proceeding, either in person or by agent, nominee or attorney, or a receiver appointed by a court, Lender, at its option, may dispossess Borrower and its agents and servants from the Property, and exclude Borrower and its agents or servants wholly therefrom and take possession of the Property and all books, records and accounts relating thereto  without liability for trespass, damages or otherwise.  Thereafter, Lender may have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all

3

Rents and other sums payable pursuant to any of the Assigned Property, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender. Lender may apply the Rents and sums received pursuant to any of the Assigned Property to the payment of the following in such order and proportion as Lender in its sole discretion may determine: (i) all expenses of managing and securing the Property, including, without limitation, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable; (ii) all expenses of operating and maintaining the Property, including, without limitation, all utility charges, Taxes, and Other Charges (as such terms are defined in the Security Instrument) and any other liens, charges and expenses which Lender may deem necessary or desirable; (iii) the cost of all alterations, renovations, repairs or replacements; (iv) all expenses incident to taking and retaining possession of the Property; and (v) the Debt, together with all costs and reasonable attorneys' fees.

(b) In addition, upon the occurrence of an Event of Default, Lender, at its option, may (i) complete any construction on the Property in such manner and form as Lender deems advisable; (ii) exercise all rights and powers of Borrower, including, without limitation, the right to make, negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums payable under the Assigned Property; (iii) either require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (iv) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

Section 3.2    OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

4

Doc
02016687   BK
OR   Vol
2739   Pg
542

**Section 3.3    OTHER SECURITY.**  Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

**Section 3.4    NON-WAIVER.**  The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and other sums payable pursuant to the Assigned Property and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents.  The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents.  Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment.  The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

**Section 3.5    BANKRUPTCY.**  (a) Upon or at any time after the occurrence of a Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b) If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease.  Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease.  If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within

DALLAS4 592812v1 21122-00071

Doc        Bk      Vol      Pg
02016687   OR      2739     543

thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

### ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

**Section 4.1    NO LIABILITY OF LENDER.** This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after a Default or from any other act or omission of Lender in managing the Property after a Default unless such loss is caused by the willful misconduct and bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Assigned Property or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the Other Security Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

**Section 4.2    NO MORTGAGEE IN POSSESSION.** Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

**Section 4.3    FURTHER ASSURANCES.** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which

6

Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

ARTICLE 5 - DEFINITIONS

Section 5.1    CERTAIN DEFINITIONS.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

ARTICLE 6 - APPLICABLE LAW

Section 6.1  CHOICE OF LAW.  This Assignment shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located.

Section 6.2  PROVISIONS SUBJECT TO APPLICABLE LAW.  All rights, powers and remedies provided in this Assignment may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Assignment invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable laws.

ARTICLE 7 - MISCELLANEOUS PROVISIONS

7

Doc      Bk     Vol     Pg
02016687 OR   2739    545

Section 7.1    CONFLICT OF TERMS.  In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

Section 7.2    NO ORAL CHANGE.  This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.  No modification, amendment, waiver, extension, change, discharge or termination of this Assignment shall be binding and enforceable against Lender unless duly executed in writing by a Vice President of Lender.

Section 7.3    AUTHORITY.  Borrower represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

Section 7.4    DUPLICATE ORIGINALS; COUNTERPARTS.    This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.   This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment.  The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 7.5    NOTICES.  All notices required or permitted hereunder shall be given as provided in the Security Instrument.

SECTION 7.6  WAIVER OF TRIAL BY JURY.  BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 7.7    LIABILITY.  If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

DALLAS4 592812v1 21122-00071

Doc# 02016687   BK   Vol   Pg
OR    2739   546

**Section 7.8**   HEADINGS, ETC.  The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 7.9**   NUMBER AND GENDER.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 7.10**   SOLE DISCRETION OF LENDER.  Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

**Section 7.11**   COSTS AND EXPENSES OF BORROWER.   Wherever pursuant to this Assignment it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement of the expenses for in-house staff or otherwise.

THIS ASSIGNMENT, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the Security Instrument and shall be binding upon Borrower, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

**[NO FURTHER TEXT ON THIS PAGE]**

Doc
02016687
Bk
OR
Vol
2739
Pg
547

IN WITNESS WHEREOF, Borrower has executed this instrument as of the day and year first above written.

NOVOGRODER/ABILENE, LLC,
an Indiana limited liability company

By:_____
George Novogroder, Manager

STATE OF _Indiana_ §
                                    §
COUNTY OF _Lake_ §

The foregoing instrument was acknowledged to me under oath, with the party so acknowledging being sworn, on the _25th_ day of September, 2002, by George Novogroder, in his capacity as Manager of NOVOGRODER/ABILENE, LLC, an Indiana limited liability company, on behalf of said limited liability company.

Notary Public, State of _Indiana_

_Resident Porter County_

My Commission Expires:
_2/6/08_

DALLAS4 592812v1 21122-00071

Doc# 020016687   BK OR 2739   Vol OR 2739   Pg 548

<u>EXHIBIT A</u>

Legal Description of Property

Being 1.988 acres and being all of Lot 202 a replat of Lot 102 of a replat of part of Lot 2, Block A, Section 1, Rhodes Plaza Addition, Abilene, Taylor County, Texas according to plat recorded in Plat Cabinet 3, Slide 428, Plat Records, Taylor County, Texas and described by metes and bounds as follows:

BEGINNING at a found ½" Iron Rod and Cap in concrete on the East boundary line of Ridgemont Drive, a 82' wide street, for the called for Northwest corner of said Lot 202 same being the Northern Southwest corner of a Lot 103, Block A, Section 1, Rhodes Plaza Addition according to plat recorded in Plat Cabinet 3, Slide 370, Plat Records, Taylor County, Texas and being the Southwest corner of a certain 60' wide Buyer's Drive Aisle;

THENCE N 89° 18' 58" E 483.44 feet along the South boundary line of the Northern part of said Lot 103 to a found ½" Iron Rod and Cap in concrete for the called for Northeast corner of said Lot 202 and an interior corner of said Lot 103 and being on the West boundary line of a certain 37' Entrance Drive Easement recorded in Volume 1318, page 661, Deed Records, Taylor County, Texas;

THENCE S 0° 41' 54" E 179.81 feet to a found chiseled 'x' on concrete the called for Southeast corner of said Lot 202 and the Northeast corner of Lot 203 same being on the West boundary line of said 37' Entrance Drive Easement from which the Southeast corner of said Lot 203 same being the original Southeast corner of Lot 102 and a corner of said Lot 103, a found chiseled 'x' on concrete bears S 0°41' 54" E 110.35 feet;

THENCE S 89°17' 57" W at 57.72 feet pass the Southeast corner of Circuit City building foundation continuing along the South wall of said building at 215.72 feet pass it's Southwest corner continuing in all 220.76 feet to a found P.K. nail for a called for corner of said Lot 202 and Lot 203;

THENCE N 1°21' 54" W 2.48 feet to a found P.K. nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 38' 02" W 18.90 feet to a found P.K. nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 87°20' 32" W 30.38 feet to a found P.K. nail in asphalt for a called for corner of said Lot 202 and Lot 203;

THENCE S 89° 20' 33" W 214.60 feet to a found ½ " Iron Rod and Cap on the East boundary line of Ridgemont Drive in a curve to the left for the called for Southwest corner of Lot 202 and the

11

Northwest corner of Lot 203;

THENCE along said curve to the left having a partial delta of 0° 43' 28", a radius of 664.46 feet, on a chord bearing of N 0° 05' 33" 8.40 feet for an arc distance of 8.40 feet to a found ½ " Iron Rod and Cap in concrete for the called for end of said curve;

THENCE N 0°19' 29" W 169.85 feet along Ridgemont Drive to the POINT OF BEGINNING and containing 1.988 acres of land more or less.

TOGETHER with those certain rights and easements as set forth in (i) the Easement and Agreement dated December 30, 1999, between First National Bank of Abilene and Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2382, page 137 Official Public Records of Taylor County, Texas, and (ii) the Declaration of Easements and Covenants dated as of the 28th day of March, 2000, by Circuit City Stores, Inc., a Virginia corporation, recorded in Volume 2494, page 849, Official Public Records of Taylor County, Texas.

DALLAS4 592812v1 21122-00071

Doc    Bk    Vol    Pg
02016687    OR    2739    550

*Filed for Record in:*
*Taylor County*

*On: Sep 27,2002   at   11:51A*

STATE OF TEXAS                    COUNTY OF TAYLOR
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the Official Public
Records of:   Taylor County, Texas as stamped
hereon by me.

Janice Lyons, County Clerk
Taylor County, Texas


By,
JoAnn Bender
Deputy