UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                          . Case No. 08-35653 (KRH)
                                .
                                .
CIRCUIT CITY STORES             . 701 East Broad Street
INC.,                           . Richmond, VA 23219
                                .
                                .
          Debtor.               . October 15, 2009
. . . . . . . . . . . . . . . 2:15 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            McGuireWoods LLP
                            By:  DOUGLAS FOLEY, ESQ.
                            9000 World Trade Center
                            101 W. Main St.
                            Norfolk, VA  23510

                            McGuireWoods, LLP
                            By:  SARAH B. BOEHM, ESQ.
                            One James Center
                            901 East Cary St.
                            Richmond, VA  23219

                            Skadden Arps Slate Meagher
                            & Flom LLP
                            By:  IAN FREDERICKS, ESQ.
                            One Rodney Sq.
                            Wilmington, DE 19899

For the Creditors           Tavenner & Beran PLC
Committee:                  By: LYNN TAVENNER, ESQ.
                            20 North Eighth Street
                            Second Floor
                            Richmond, VA  23219


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No. (609) 587-3599**

2

1          UNIDENTIFIED FEMALE SPEAKER:  All rise.  Court is now

2  in session, please be seated and come to order.

3          THE CLERK:  In the matter of Circuit City Stores,

4  Incorporated, hearing on items 1 through 48 as set out on

5  debtors' agenda.

6          THE COURT:  I note for the record that Ms. Tavenner

7  didn't even need to change seats.

8          MR. FOLEY:  Exactly, exactly.  We're trying to keep

9  it efficient for her.

10          Your Honor, Doug Foley on behalf of the debtors, with

11  McGuireWoods.  Your Honor, if we could, with me at counsel

12  table is Sarah Boehm from my firm, as well as Ian Fredericks

13  from Skadden Arps.  Here from the client, Your Honor, is

14  Michelle Moser, who is the Principle Financial Officer.

15          Your Honor, we do have one matter that we'd like to

16  take out of order, it's an uncontested matter involving a

17  substantial resolution and settlement with the PBGC.  Counsel

18  for the PBGC is here from Washington, D.C., would like to get

19  back on the road before traffic gets too bad.  Sarah Eagle.

20  She's here with PBGC.  So, if we could, Your Honor, take

21  matters 17 and 18 out of order.

22          Your Honor, matter 17 is simply our procedural motion

23  to shorten the notice period with respect to the settlement.

24  Your Honor, we haven't received any responses to that.  The

25  Committee, obviously, has been involved in the discussions with

1 respect to this settlement and have approved the settlement.

2 We would ask that the Court grant the relief sought in item

3 number 17, which is on the agenda.

4          THE COURT:  All right.  Mr. Foley, we certainly can

5 take them out of order.  Does any party wish to be heard in

6 connection with the debtors' motion for expedited hearing on

7 this matter?

8                    (No audible response)

9          THE COURT:  All right, there being no objection, the

10 motion for order shortening the time will be granted.

11          MR. FOLEY:  Thank you, Your Honor.  Mr. Fredericks

12 and Ms. Eagle will address the matters under item number 18 on

13 the docket.

14          THE COURT:  All right, very good.

15          MR. FREDERICKS:  Good afternoon, Your Honor.

16          THE COURT:  Good afternoon.

17          MR. FREDERICKS:  Ian Fredericks with Skadden Arps on

18 behalf of the debtors.

19          Before you is the motion to approve a settlement

20 agreement with the PBGC.  By way of background, the debtors,

21 prior to the petition date, maintained a pension plan.  The

22 pension plan covered approximately 22,000 participants.  Prior

23 to the petition date, the plan had been frozen twice, meaning

24 that no further benefits would accrue, but there were still

25 obligations, you know, going forward to the plan participants.

**J&J COURT TRANSCRIBERS, INC.**

4

1          In March or --  I'm sorry, beginning, I believe,

2   after the liquidation, the debtors began discussions with the

3   PBGC concerning whether or not to terminate the pension plan,

4   consensually or through a distress termination and turn the

5   obligations to administer the plan over to the PBGC.

6          I believe in May of 2009, the debtors and the PBGC

7   entered into an agreement whereby the PBGC did assume those

8   obligations and begin to administer the plan.  It was effective

9   as of March 31st, 2009.

10          In connection with the pension plan, the PBGC filed

11   three proofs of claim against the debtors, although the PBGC,

12   pursuant to a stipulation, each claim was deemed filed against

13   each of the debtors because the PBGC alleged that all the

14   debtors were jointly and severally liable as well as the PBGC

15   alleged that the debtors non-debtor Canadian affiliates, which

16   are the subject of the CCAA proceedings, were also jointly and

17   severally liable.

18          The PBCG three claims, after they were amended,

19   ultimately broke down to an underfunded benefit claim for

20   allegedly the shortfall between the values -- the pension plan

21   assets as of March 31st, 2009 and ultimately what needed to be

22   paid out.  The PBGC alleged that that claim was approximately

23   $36.9 million. They filed a minimum funding claim, which was

24   allegedly amounts that the debtors had not contributed to the

25   pension plan, as of the petition date.  Ultimately, that claim

1  was amended to zero as the debtors had made all of their

2  required minimum funding obligations.

3        And the third claim was what I'll call the premium

4  claim and broke down into two types of premiums.  The first was

5  an annual premium that PBGC charged pension companies that held

6  pension plans, on an annual basis that was filed in the amount

7  of approximately $159,000 and was filed as an admin. claim for

8  the 2009 year.

9        The second was a termination premium claim which came

10 about as a result of recent amendments to ERISA by Congress and

11 this was, essentially, a claim that was calculated based on the

12 number of plan participants and then projected out for three

13 years. I believe, pursuant to the legislative history, it was

14 designed to defray some of the costs of companies that tried to

15 avoid their pension plan liabilities to the PBGC.  That claim

16 totaled approximately $82 million and was ultimately filed as

17 an unsecured claim.

18       Beginning in, I guess beginning in August, at the

19 time the debtors filed their plan and disclosure statement, the

20 debtors began discussions with the PBGC concerning their

21 claims, possible claims litigation as well as litigation

22 concerning the plan.  In particular, the debtors contended that

23 the termination premiums were not actual claims filed against

24 the debtors' estates, the PBGC, obviously disagreed and because

25 there was very unsettled law out there, or I'm sorry, there was

6

1  almost no law and the law there was, somewhat unsettled on what

2  these new provisions meant, the PBGC and the debtors decided

3  that trying to resolve those claims benefitted both sides as

4  opposed to proceeding with litigation.

5       Similarly, although the U.S. Airways case is out

6  there concerning how you calculate the underfunded benefit

7  plan, the debtors disagreed with using the PBGC and the -- I'm

8  sorry, ERISA and the associated regs as the appropriate method

9  for calculating the underfunded claim.

10      Likewise, PBGC contended that substantive

11 consolidation was inappropriate, in this case, especially since

12 they alleged they had claims against all of the 18 debtors.

13      Against that backdrop, the parties, with the support

14 of the Creditors' Committee, entered into the settlement

15 agreement to avoid all litigation.  The settlement agreement

16 provides for the full and final satisfaction of all of the

17 PBGC's claims.  The PBGC will have an allowed claim in the

18 amount of $33.5 million.  That claim will be paid in full

19 within ten days after entry of an order approving this

20 agreement, I believe.

21      The PBGC and the debtors exchanged a mutual release,

22 releasing the debtors, non-debtor affiliates, mainly the

23 Canadian affiliates, as well as some other foreign affiliates

24 and one U.S. limited partnership, for which the debtor held an

25 approximate two-third interest in, and was the managing

**J&J COURT TRANSCRIBERS, INC.**

1  partner.

2       The PBGC agreed to release claims against the

3  debtors' directors, officers, non-debtor affiliates, except to

4  the extent of breach of fiduciary duty claims, and the debtors

5  agree to insert a provision in the plan that basically provided

6  that except for claims against the debtors and their estates,

7  the plan did not effectuate a release exculpation or other

8  waiver of claims the PBGC may have.  The debtors have agreed to

9  insert that in the plan prior to the confirmation hearing.

10       The debtors believe that with the significant

11  litigation risk concerning both the claims as well as

12  substantive consolidation, that approval of the settlement is

13  in the best interests of the debtors, their estates and

14  creditors and ultimately believe this will maximize value to

15  all creditors.  It results in a significant waiver, claims

16  waiver, which -- and I believe -- as I mentioned, the

17  Committee, less the PBGC, was supportive of this.  The debtors

18  did keep them apprised of the negotiations with the PBGC and

19  ultimately they approved of the settlement prior to it being

20  filed.

21       With that, I would ask the Court, unless the Court

22  has questions, to approve the settlement agreement and

23  authorize the debtors to carry out its provisions.

24       THE COURT:  All right, thank you.  Does any party

25  wish to be heard in connection with the debtors' motion for

1  approval of the settlement agreement?

2                    (No audible response)

3          THE COURT:  All right, Mr. Fredericks, there being no

4  objection to the debtors' motion, the Court finds that it is an

5  exercise of the debtors business judgment, and the Court will

6  grant the motion and approve the settlement.

7          MR. FREDERICKS:  Thank you, Your Honor.  With that, I

8  believe I'll turn over the remainder of the agenda to Mr.

9  Foley.  Thank you, Your Honor.

10         MR. FOLEY:  Your Honor, if Ms. Eagle can be excused,

11 for the PBGC.

12         THE COURT:  Ms. Eagle can certainly be excused.

13         MR. FOLEY:  Thank you, Your Honor.  The rest of the

14 items on the agenda, beginning with matter number one, Your

15 Honor, this is the AmREIT motion for an administrative claim.

16 We have resolved that and it can be removed from the Court's

17 docket.

18         THE COURT:  All right.  It'll be removed.

19         MR. FOLEY:  Your Honor, items number two, the

20 Motorola motion; item number three, the General Instruments

21 motion; item number four, the DIRECTV motion; item number six,

22 Your Honor, the SouthPeak motion; item number ten, Your Honor,

23 the Towne Square motion; item number 12, Your Honor, the Slam

24 Brands motion; item number 13, the Columbus Dispatch motion, we

25 have been in contact with all of those parties, and all of

9

1  those parties have requested, and we have agreed, to adjourn

2  their motions until the November 23rd hearing date at 10 a.m.,

3  which is currently scheduled for the confirmation date, Your

4  Honor.  So, we would ask that the Court move those to the

5  November 23rd date at 10.

6          THE COURT:  All right.  Those matters will be removed

7  to November 23.

8          MR. FOLEY:  Your Honor, item number five, this is

9  Sony's motion.  We are still in discussions with them.  They

10 have requested and agreed to adjourn their motion until the

11 November 3rd hearing date, which is at 11 a.m., Your Honor.

12         THE COURT:  All right.  Do we expect that we're going

13 to hear it on that day?

14         MR. FOLEY:  We're still in discussions with them, I

15 don't expect we will go forward on the 3rd.  I think they'll

16 probably agree to adjourn again.  They just didn't want to go

17 all the way to the confirmation hearing at this point.

18         THE COURT:  That's fine.

19         MR. FOLEY:  Your Honor, item number eight, this is

20 the Infogain motion.  Again, they have requested that it be

21 adjourned until November 3rd.  We have reached -- the debtors

22 have reached a settlement in principle with them.  There are

23 some nuances to it that we are still working through with them,

24 with respect to timing of payment of a reconciled

25 administrative claim.  We're working with the committee to get

1 their feedback as to what's appropriate with respect to timing

2 of payment.  We hope we can resolve that by the November 3rd

3 hearing date.  If we are not able to do so, we are checking

4 with counsel for Infogain whether they want to go forward on

5 that date.

6       So, that Your Honor is aware of the background of

7 this one, it's a request for payment of an administrative claim

8 incurred in the ordinary course of business, post petition,

9 under a services contract that was ultimately rejected.  We

10 have reconciled the amount that's owed prior to the time we

11 gave them notice.  There is some dispute as to whether or not

12 they could continue to accrue charges under the contract in

13 addition to out-of-pocket costs and expenses.  That's the piece

14 that we were negotiating over, so we're going to check with

15 their counsel to see if they want to go forward, but we'll

16 advise the Court promptly if we expect to have contested

17 hearing on that date.

18       THE COURT:  All right, thank you.

19       MR. FOLEY:  Your Honor, with respect to item number

20 nine, this is the Site A motion.  They, as well, have agreed to

21 adjourned until the November 3rd hearing date.  We don't expect

22 the matter to go forward on that date.  They just did not want

23 -- they weren't comfortable going out longer, they just wanted

24 to go to the next hearing date.

25       THE COURT:  Very good.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. FOLEY:  Your Honor, item number 14, this is the

2  OmniMount motion which has two parts to it.  One is dealing

3  with the issue of whether they were timely in responding to the

4  objection and the motion to reconsider, as well as the

5  underlying substance of the claim objection.

6          They have requested, and they're making a settlement

7  proposal to us this week, we have not yet received, to resolve

8  the matter.  They've requested that their motion be adjourned

9  until the November 3rd hearing date.

10          THE COURT:  All right, very good.

11          MR. FOLEY:  Your Honor, item number 15, we're working

12  through our motion to terminate the surety bonds.  Safeco filed

13  a response, we're working through their response to see if we

14  can't reach resolution.  We request that that matter be

15  adjourned until the November 3rd hearing date.

16          THE COURT:  All right.

17          MR. FOLEY:  Your Honor, item number 16 on the docket,

18  this is the motion by John Raleigh for late filed proof of

19  claim.  Several of these, as Your Honor is aware, are scheduled

20  for status hearing on the confirmation date, November 23rd,

21  however, just so the Court is aware of how we intend to proceed

22  with some of these late claim motions, some of them involve, as

23  Your Honor is aware, the 503(b)(9) bar date which if the claim

24  is allowed, would result in hundred cent dollar claim, some

25  involve the general unsecured bar date, some involve the first

1  administrative period bar date and some involve the government

2  bar date.  So, there may be a sliding scale approach as to how

3  we deal with that.  We have -- we will be filing a supplemental

4  memorandum with respect to the motion pending by EDC which is

5  the one that's been pending the longest and Your Honor has

6  heard from them several times, which is currently scheduled for

7  the confirmation hearing, where we will set forth what we

8  believe the legal standard is for excusable neglect and Your

9  Honor can tell us whether you agree with that or not, in the

10 context of their particular facts and circumstances.  And we

11 hope that once we have some guidance with respect to one of

12 these, that we could then apply that approach that the Court

13 takes with respect to the others, to see if we can't reach

14 consensual resolutions, one way or the other.

15        Obviously, there's facts and circumstances to each

16 one of these that's a little bit different.  Some are more

17 sympathetic than others, some are more meaningful to the estate

18 than others and so, we're trying to take a practical sliding

19 scale approach to this rather than immediately jump into

20 litigation with each one of these.  The fact that we're not

21 going forward on all of these at once, obviously, is without

22 prejudice to these parties, you know, diligence in prosecuting

23 it and we've told them that, and Your Honor is aware of that.

24 So, we just wanted to give the Court that background.  And so

25 the John Raleigh motion, they have agreed to adjourn their

1  motion until the December 7th hearing date, which is at 2 p.m.,

2  Your Honor.

3          THE COURT:  All right.  And then by that time they're

4  hoping that they're going to have some sort of guidance as far

5  as what happens at the confirmation hearing with regard to the

6  excusable neglect standard.

7          MR. FOLEY:  Yes, Your Honor.

8          THE COURT:  Okay.

9          MR. FOLEY:  Items number 19 through 44, Your Honor,

10  is the status hearing with respect to our numerous omnibus

11  claim objections that we filed.

12          I have a demonstrative exhibit that I'd like to hand

13  up to the Court, just to sort of -- it's a one page exhibit

14  that will show the status of where we are with a lot of these.

15          THE COURT:  You may.  Thank you.  Mr. Foley, before

16  we proceed onto the -- did we address item number seven or are

17  you going to come back to that?

18          MR. FOLEY:  I apologize, Your Honor, that's the

19  motion by Newport News for payment of administrative claim for

20  some taxes.

21          THE COURT:  Right.

22          MR. FOLEY:  It's a small amount, we believe we have a

23  settlement in principle with them but they have requested that

24  their motion be adjourned until the December 7th hearing date

25  at two.

1           THE COURT:  And that's fine.  And item number 11, the

2    Schimenti Construction Company claim.

3           MR. FOLEY:  Yes, Your Honor.  Schimenti Construction,

4    I apologize for skipping over that one, Your Honor.  That one

5    involves, obviously, a 2004 Examination.  What we have done

6    with Schimenti Construction is, we have provided them a lot of

7    documentation, actually, with respect to two construction

8    projects that they were involved in.  One was a renovation of a

9    location in Manhattan, the other was in North Plainfield, New

10   Jersey, actual construction project.  Neither -- one of them

11   was ultimately opened before we filed, the other one was never

12   opened.  The leases were rejected, they have proceeded with

13   some discovery, as Your Honor may be aware from the spring,

14   with respect to the landlords, with respect to any rights they

15   may have there, with respect to lien claims, and whatnot.

16          Schimenti has asserted a couple of claims in our

17   case.  One is a claim, obviously, for construction services,

18   for which they rendered and for which we have not paid.  We

19   have reconciled the dollar amounts of those claims to within

20   $17,000.  I think the total claim is around a million dollars,

21   but we're very close in which the actual dollar amount should

22   be.

23          The issue that they have raised is, they believe that

24   some of the retainage amount owed under the contract is somehow

25   entitled to trust fund status or not property of the estate

1  under 541, some kind of a constructive trust theory.  We have

2  exchanged pretty extensive, you know, analysis of that claim

3  and our position with respect to it, in letters with them.

4  We've actually advised them of the Court's opinions in <u>Land</u>

5  <u>America</u> as well and they've read those and they are chewing on

6  those.

7       But we understand that they may be filing an

8  adversary proceeding to assert those claims and we'll respond

9  accordingly, if and when they do so.

10      With respect to the 2004 Exam motion, Your Honor,

11 again we have produced probably thousands of pages of documents

12 to them already and, in fact, there's probably little documents

13 we have left to produce to them.  They have agreed that if they

14 do file the adversary proceeding, in which they will want to

15 take discovery, that the 2004 Examination will become moot.

16      But in the meantime, they have requested that the

17 motion be adjourned until the December 7th hearing date, at

18 two.  We do have a hearing date on November 3rd, I believe,

19 actually it's the December 7th hearing date as well, with

20 respect to a good versus non-goods objection that they are

21 included in -- this is one of the other claims that they've

22 asserted, Your Honor.  We entered into a contract for

23 construction services with them.  They have identified

24 approximately $47,000 of what they are owed as construction

25 materials that they are asserting are entitled to priority

1 status under 503(b)(9).  They are aware of Your Honor's ruling

2 as to the UCC definition of goods and the predominant purpose

3 test adopting the put on purpose test.

4          We're working with them to figure out the best way to

5 streamline having a ruling on their particular facts and

6 circumstances.  Your Honor is aware that the ruling that you

7 made was without prejudice to any individual's facts and

8 circumstances.  So, we're going to try to see if we can't

9 present that in a stipulated fact form for Your Honor to make a

10 ruling at which point they may want to take an appeal of not

11 only the factual findings but the legal conclusions that Your

12 Honor has already reached.

13          So, that's the long-winded story with respect to

14 Schimenti Construction.  The matter that's on the docket today,

15 Your Honor, they've agreed to adjourn until December 7th.

16          THE COURT:  Very good, thank you.

17          MR. FOLEY:  Your Honor, items number, again, 19, 20,

18 21, 22, 23, 24, 25, 26, 27, I'll skip over 28 and 29 for a

19 moment, 30, 31, skip over 32 through 35 for a moment, number

20 36, 37, 38, 39, 40, 41, 42, 43 and 44, Your Honor, these are

21 status hearings on omnibus claim objection responses that we're

22 requesting the Court, and we've advised these parties, that

23 we'd like to adjourn these until the December 7th hearing date

24 at two, so we can continue to work through resolving some of

25 these.  Some of these are procedural in nature that we think if

1 we just have time to talk to the parties that filed responses

2 we should be able to get consensual resolutions.

3          Some of them are substantive and I'll talk about the

4 ones I skipped over shortly, Your Honor, but I wanted to just

5 advise the Court about this chart that we have prepared and

6 we're going to probably modify this at future hearings but we

7 wanted to give the Court a very simple, one page sort of

8 summary of where were on claim objections.

9          And what this shows, Your Honor, and it's not as

10 tick-and-tie accounting document, but it's really more of a

11 schematic to show how many omnibus objections we filed, the

12 number of claims that are included in each of those omnibuses,

13 what the value, dollar amount as filed was of those particular

14 claims, the amount of claims that had been subject to an order

15 by the Court granting the relief sought in the objection which

16 could have been merely a reclassification, not necessarily a

17 reduction or disallowance, the dollar amount of what the Court

18 has ordered and then a column that shows the amounts that are

19 continued and pending based upon responses that have been

20 filed.

21          So, Your Honor, the middle column which shows -- well

22 the first column shows that we have filed objections to 7,398

23 claims with an as filed value of $6.1 billion.

24          Now, Your Honor, some of these claims have been

25 objected to on multiple bases, so there's some duplication in

1  that number as well as the fact that there are some objections

2  that we have withdrawn from there on those objections, but

3  they're still included in that number, so we haven't completely

4  refined this chart yet, but it's a close approximation of where

5  we're at.

6        The claim count that is listed in the as ordered

7  column, there are orders that the Court has entered, 6,626

8  claims have been subject to a court order of some kind and,

9  again, it could be merely a reclassification, it doesn't adjust

10 the dollar amount.  It could be a reduction, it could be a

11 disallowance, but the dollar amount shows that of the claims

12 that we've objected to, in dollar amounts, that the Court has

13 ordered them down to $381 million so far.  Not all of those

14 have been allowed, obviously.  In fact, very few have.  Some of

15 them have been reduced or reclassified or modified in someway

16 and then the amount that shows in the continue pending column,

17 Your Honor, is 559 claims for which people have filed responses

18 with an as filed value of $620 million.

19       And, so, Your Honor, as we get more resolutions,

20 we'll probably have another column added here that shows as

21 resolved by stipulation and then, hopefully, the arithmetic

22 will tick-and-tie a little bit better.  But this is sort of

23 where we're at, Your Honor.  We're, again, working through the

24 claims, in coordination with the Creditors' Committee,

25 obviously, because they have an interest in a lot of these

1   claims, especially the larger ones, and we're making a lot of

2   progress.  So, we would ask that those omnibus objections that

3   I've already mentioned be adjourned until the December 7th

4   hearing date so we can continue to make progress in that

5   regard.

6          THE COURT:  Those items will be adjourned to December

7   7 and your chart is quite helpful.

8          MR. FOLEY:  Thank you, Your Honor.  The items under

9   number 28 and 29, which I skipped over, these involve the 11th

10  and 12th omnibus objection to certain 401k claims, based upon

11  parties who have an interest in a 401k plan or a pension plan

12  that has been terminated, as Your Honor is aware, the PBGC is

13  administering.

14          Your Honor, those claims Your Honor has already

15  ordered several of the claims to be disallowed.  This objection

16  was, obviously, without prejudice to any parties' rights to the

17  funds that are in those plans and I think they filed claims

18  just out of an abundance of caution against the estate as

19  thought it was a claim against the estate, but it's not, it's

20  really a claim against these funds which are segregated and are

21  not property of the estate and these objections will have not

22  affect upon those rights.

23          So, what we have done, Your Honor, with respect to

24  the responses that have been filed to omnibus 11 and 12, we

25  filed a notice of hearing last night on the merits, to have a

1  hearing on the merits of these responses for November 3rd at 11

2  and we've given specific notice to each of the responding

3  parties that appear to be asserting a claim based upon an

4  interest in a 401k plan or a pension plan so that they have an

5  opportunity to be heard before the Court and Your Honor can

6  make a substantive ruling with respect to those remaining

7  responses.

8          There will be one that Ms. Boehm will address at item

9  number 45 that we were going to ask for similar relief but

10 there's only three responses with respect to that omnibus

11 objection.

12         So, with respect to items number 28 and 29, Your

13 Honor, we're asking that those be set down pursuant to the

14 noticed that we filed for November 3rd at 11 for a hearing on

15 the merits and we, again, I believe we've communicated with

16 your chambers and we will provide to the Court copies of the

17 actual claims that have been filed --

18         THE COURT:  I think that would be helpful.

19         MR. FOLEY:  -- by everyone of these respondents as

20 well as their -- the Court has access to their responses

21 because they're on ECF, we'll be able to go forward on that

22 day.

23         THE COURT:  All right.

24         MR. FOLEY:  Your Honor, items number 32, 33, 34, and

25 35, this is the 15th, 16th, 17th and 18th omnibus objections.

**J&J COURT TRANSCRIBERS, INC.**

1 These are objections based upon our evaluation of the claims

2 being the party asserting an interest in equity in the debtor

3 and not asserting a claim against the debtor.

4      The relief we are simply seeing in these omnibus

5 objections is to reclassify these claims that were filed on

6 proof of claim forms as equity interest in the debtor, which to

7 the extent Your Honor confirms a plan of liquidation in this

8 case, will ultimately be extinguished as part of the plan of

9 confirmation.

10      THE COURT: So, they were filed on the wrong form.

11      MR. FOLEY:  They were filed on the wrong form.  These

12 are proofs of interest, not proofs of claim.  And, again, with

13 respect to those, we've looked at all these responses, they all

14 assert, clearly assert to us that these are equity interest and

15 what the most efficient way we believe to proceed is similar to

16 the 401k pension is to have these set for November 3rd at 11,

17 so we have sent out a notice, very specific notice of hearing

18 with respect to all of these responses, to have these heard on

19 November 3rd at 11, on the merits and, again, similar with the

20 other matters, Your Honor, we will provide the Court copies of

21 all of the proofs of claim filed by all of the responding

22 parties and we've given them specific notice and we'll file

23 certificates of service with respect to that, so that we can go

24 forward on the merits on November 3rd.

25      THE COURT:  All right, very good.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. FOLEY:  Your Honor, I believe that deals with

2    everything except for items number 45 through 48 and Ms. Boehm

3    will address those to the Court.

4          THE COURT:  All right, thank you.

5          MS. BOEHM:  Good afternoon, Your Honor.

6          THE COURT:  Good afternoon.

7          MS. BOEHM:  Sarah Boehm with McGuireWoods on behalf

8    of the debtors.    Item number 45 on the agenda is the debtors

9    38th omnibus objection.  This is set for status hearing for the

10   first time today.  This objection was to the disallowance of

11   certain qualified pension plan and 401k claims, similar to the

12   way Mr. Foley described them.  This was based on objections to

13   claims because they are not against assets of the estate, the

14   are against separate legal entities.

15          We did receive three responses to this and the agenda

16   reflected that we were going to continue this for status to

17   November 7th (sic) but what we now intend to do is to

18   separately notice this for hearing on the merits for November

19   3rd, so that it can go forward at the same time as the other

20   401k and pension claims.  This included 33 claims for a total

21   of approximately 890,000 for the ones who didn't respond, but

22   we'll proposed to go ahead and submit an order disallowing

23   those claims and for the three that we did receive a response

24   for, I have left messages for them to let them know that it's

25   going to be set for November 3rd.  We will file that and

1 separately mail them the notice as well.

2          THE COURT:  All right, yes, as soon as possible

3 because if they got the notice about December 7th, they could

4 be confused.

5          MS. BOEHM:  That's why I tried to call them.

6          THE COURT:  All right, thank you.

7          MS. BOEHM:  I'll followup with them.  Item number 46

8 on the agenda is the 39th omnibus objection to claims.  This

9 deals with the reclassifying claims or portions of claims that

10 asserted administrative priority under 503(b)(9) and

11 reclassifying them to general unsecured claims because they

12 didn't meet the requirements of 503(b)(9) and that they were

13 received by the debtors outside of the 20 day period.

14          This included 19 claims.  We received two responses.

15 One of the responses that we received agrees with our objection

16 and has since filed an amended claim downwardly amending their

17 claim to agree with our objection and the other claim would

18 need to be continued, so we would propose to submit an order

19 for all non-responding disallowing their claims and adjourning

20 the one response that we have.  And we will adjourn those for

21 further status to December 7th.

22          THE COURT:  All right.

23          MS. BOEHM:  Item 47 on the agenda is our 40th omnibus

24 objection to claims.  This sought the disallowance of certain

25 claims that were asserted against a domestic debtor, for which

1  we showed no liability.  This was basically a confusion with

2  InterTAN that is a domestic company that was a debtor in this

3  case and InterTAN Canada, which has its own separate Canadian

4  proceedings.  It included 27 claims filed in the approximate

5  amount of $1.8 million.  We only received one response to this

6  objection and they said they were sorry, they filed it in the

7  wrong case, they have been paid by Canada and they can disallow

8  their claim, was the gist of it.  It was company from Hong Kong

9  and it wasn't worded exactly like that, but that's the way it's

10 being treated.  So, for this one, we will be seeking the

11 disallowance of all the claims with no adjournments.

12             THE COURT:  All right, very good.

13             MS. BOEHM:  Item 48 on the agenda is our 41st omnibus

14 objection that sought the disallowance of certain claims for no

15 liability, because they were either paid prepetition or

16 satisfied post petition.

17             This included 23 claims for approximately $10.2

18 million.  We've only received one response from a creditor that

19 is involved in multiple objections and we're working through a

20 resolution with them.  So, for non-responding claimants, we

21 will seek an order disallowing their claims and their one

22 response will be adjourned for further status to December 7th.

23             THE COURT:  All right, very good.

24             MS. BOEHM:  That's all I have, Your Honor.  Mr.

25 Fredericks has one other item he needs to address

**J&J COURT TRANSCRIBERS, INC.**

1            THE COURT:  Okay, thank you.

2            MR. FREDERICKS:  Good afternoon, again, Your Honor.

3   For the record, Ian Fredericks of Skadden Arps.  I wanted to

4   alert Your Honor to some recent filings and the procedure by

5   which we are proposing to move forward.

6            As Your Honor may be aware, your were kind enough to

7   give us a special hearing date on November 12th, to hear oral

8   argument on a few objections we plan to file that have pretty

9   significant legal issues for the case.

10           On late Monday, last Tuesday evening, we filed five

11  omnibus objections which really amount to three.  Three of them

12  relate to issues of setting off receivables and how you set off

13  receivables, whether you can setoff pre and post petition

14  receivables.  The debtor can do it against pre or post petition

15  claims.  How that's impacted by Bankruptcy Code Section

16  503(b)(9) and we imagine that various creditors will also raise

17  the issue of recoupment.

18           So, we are proposing, subject to Your Honor granting

19  it eventually, at November 12 proceeding with oral argument to

20  resolve kind of those legal issues so that we can then, like we

21  did with goods, you know, try to apply those throughout the

22  case and hopefully you're able to reach consensual resolutions.

23  We don't anticipate any factual evidence at that particular

24  time, we think it's pretty straightforward legal issues and

25  ultimately the factual disputes over when exactly a claim may

1  have arose or when exactly the receivable may have arose or

2  depending on the standard Your Honor grants with respect to

3  recoupment, how that ultimately is applied are all factual

4  issues that we can resolve subsequent to that hearing.

5          In addition to that, we filed two objections, really

6  one dealing with Bankruptcy Code Section 502(d) and whether or

7  not it can be applied to 503(b)(9) claims.  Again, we think

8  those are entirely legal issues that can be resolved and then,

9  ultimately, if necessary, any factual issues later.

10          I don't know if Your Honor -- I'm sure Your Honor has

11 tons of questions about the legal issues, but as of right now,

12 I don't know if Your Honor is interested.  The briefing on

13 502(d) is pretty extensive, we are certainly willing to send

14 you all the -- have all the papers delivered to chambers for

15 you.  I don't think that's your customary practice, but if Your

16 Honor would like to do that, we can have binders sent over

17 along with the exhibits.

18          THE COURT:  I don't need to have binders sent over

19 with regard to them and all the counter parties to these are

20 aware that we're going to be proceeding just with those legal

21 arguments on those days.  And there was some confusion when we

22 had the goods hearing on summary judgment, some parties thought

23 we were going to go forward with the entire matter that day.

24          MR. FREDERICKS:  We tried to be very clear, both in

25 the title of the objection, that we were requesting first a

1 waiver of the requirement that the first hearing proceed as a

2 status conference and then in the objection, I believe in at

3 least two and possibly three places, we noted that we intended

4 to ask the Court to resolve the threshold legal issues at the

5 hearing and reserve factual matters for a subsequent hearing at

6 a date and time to be determined, if necessary.

7        We've been in discussions with some of the biggest

8 players, they've kind of known that these were coming down the

9 pike, but we tried to be very clear, I believe, also in the

10 notice as well, in the cover of the notice.  We didn't want to

11 have the same issue that happened with goods, non-goods.

12        THE COURT:  And just approximately how many claimants

13 are we talking about that are going to be involved with these

14 hearing?

15        MR. FREDERICKS:  I believe it's a total, in total

16 it's approximately 150 claimants.  The issues are bigger for

17 some as opposed to others, and so I imagine that some of them

18 may not respond at all, and they may collectively agree, you

19 know, to get together, but I really think they're all going to

20 be raising exactly the same arguments, but I believe in total

21 it's about 150 claimants.

22        THE COURT:  Okay.  And, then -- and generally I'm

23 familiar with the arguments that you're talking about, and then

24 I don't need to see the claims, then, with regard to those, I

25 can rely on the pleadings that are going to be filed, since

1  we're just dealing with the legal issues that are going to be

2  raised at this point in time, to differentiate from the other

3  ones that we had talked about.

4          MR. FREDERICKS:  No, I don't believe Your Honor will

5  need to see the claims.  On the exhibits we put forward the

6  amounts that we were talking about.  There will, obviously, be

7  some dispute, presumably over our receivables, but I don't

8  believe you're going to be able to glean any of that from the

9  proofs of claim and there may be some disputes over the

10 preference amounts that we had put into the chart, as a little

11 bit of a preview.  While we ultimately think that you can use

12 502(d) to temporarily disallow a claimant regardless of what

13 the preference is, that's not the relief we've sought here.

14 We've sought to kind of reduce the claim by the amount of the

15 alleged preference.  In some instances that may wipe out a

16 claim in full and others it may not.  So that's why I say some

17 creditors may not care, you know, given the numbers that are at

18 issue.  They may care but they may not actually decide that

19 it's worth litigating given that other people are going to be

20 litigating the issue.  I don't believe Your Honor will need to

21 see the proofs of claim, no.

22         THE COURT:  Very good.  All right.  Mr. Foley, did

23 you have something further?

24         MR. FOLEY:  Your Honor, just to add -- yesterday I

25 received calls from several attorneys that either represent

1  some of these creditors that are subject to this objection, or

2  represent creditors who are not subject to this objection but

3  have this issue, so I just wanted to advise the Court, you may

4  not only be hearing from the people whose claims are under

5  objection but people who have an interest in the outcome of th

6  is motion, so you may get, for lack of a better word, amicus

7  briefs on this as well.  So, I think it will be well, well,

8  well briefed for the Court and I don't think you'll have any

9  shortage of interested parties expressing their view.

10          THE COURT:  Well, the Court can use all the help it

11  can get.

12          MR. FOLEY:  Right.

13          THE COURT:  All right, very good.  Well, thank you

14  for the heads-up on that.  And, you know, we'll be, obviously

15  prepared to go forward with that on the 12th.

16          MR. FREDERICKS:   All right, thank you very much,

17  Your Honor.  Unless Your Honor has any questions, I believe

18  that's it.

19          THE COURT:  That's everything for today?

20          MR. FREDERICKS:  I believe so.

21          THE COURT:  We'll be adjourned.

22          MR. FREDERICKS:  Thank you, Your Honor.

23          THE CLERK:  All rise.  Court is now adjourned.

24                    * * * * *

25

**J&J COURT TRANSCRIBERS, INC.**

# **C E R T I F I C A T I O N**

I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Elaine Howell                         Date:  October 30, 2009

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**