Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, MCGUIREWOODS LLP
LLP                                   One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and   Debtors
in Possession

          IN THE UNITED STATES BANKRUPTCY COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                  RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653 (KRH)
et al.,                       :
                              :  Jointly Administered
              Debtors.        :
                              :  **Obj. Deadline: November 17, 2009**
- - - - - - - - - - - - - - - x  **at 4:00 p.m. (ET)**

          **NOTICE OF SALE OF MISCELLANEOUS ASSETS**

          PLEASE TAKE NOTICE that, on February 19, 2009, the
Court entered the Order Pursuant To Bankruptcy Code Sections 105
and 363 granting the Motion(D.I. 2246, the "Miscellaneous Assets
Sale Order").[1]  A copy of the Miscellaneous Assets Sale Order is
attached hereto as Exhibit 1.

          PLEASE TAKE FURTHER NOTICE that, pursuant to the
Miscellaneous Assets Sale Order, the debtors and the debtors in
possession in the above-captioned jointly administered cases
(collectively, the "Debtors")[2] hereby provide notice of the

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings
     ascribed to such terms in the Miscellaneous Assets Sale Order.

[2]  The Debtors and the last four digits of their respective taxpayer
     identification numbers are as follows: Circuit City Stores, Inc. (3875),
     Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),

*(cont'd)*

Debtors' intent to sell the Miscellaneous Assets identified in Exhibit 2 (the "Sale").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in these bankruptcy cases. If you do not have an attorney, you may wish to consult one.**

If you do not want the Debtors to proceed with the Sale or you want the Court to consider your views concerning the Sale, you or you attorney must file in writing with the Court, at Clerk of Court, United States Bankruptcy Court, 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, or electronically (www.vaeb.uscourts.gov), a written response pursuant to Local Bankruptcy Rule 9013-1(H). If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive it on or before November 17, 2009 at 4:00 p.m.**

Under paragraph 2(c) of the Miscellaneous Assets Sale Order, the Debtors are authorized to proceed with the Sale without further notice or hearing unless a written response Sale is filed with the Clerk of the Court and served via email **on or before November 17, 2009 at 4:00 p.m. (ET)** upon:

(i) counsel for the Debtors, Gregg M. Galardi (Gregg.Galardi@skadden.com), Ian S. Fredericks (Ian.Fredericks@skadden.com) and Douglas Foley (dfoley@mcguirewoods.com);

(ii) counsel for the Official Committee of Unsecured Creditors, Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com); and

(iii) counsel for the Debtors' prepetition and postpetition lenders, David S. Berman (dberman@riemerlaw.com).

---

*(cont'd from previous page)*

Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 2(e) of the Miscellaneous Assets Sale Order, if no written objection is received by **November 17, 2009 by 4:00 p.m. (ET)**, the Debtors are authorized to consummate the proposed Sale free and clear of all Interests and to take such actions as are necessary to close the Sale without further order of the court.

Dated: November 2, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

MCGUIREWOODS LLP

__/s/ Douglas M. Foley _____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

**EXHIBIT 1**

**(Miscellaneous Assets Sale Order)**

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                          :  Chapter 11
                                :
Circuit City Stores, Inc.,      :  1Case No. 08-35653(KRH)
<u>et al</u>.,                            :
                                :
              Debtors.          :  Jointly Administered
- - - - - - - - - - - - - - - x

**ORDER GRANTING DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C.
§§ 105 AND 363 APPROVING PROCEDURES TO SELL CERTAIN
MISCELLANEOUS ASSETS FREE AND CLEAR OF ALL INTERESTS
WITHOUT FURTHER ORDER OF COURT**

      Upon consideration of the motion (the "Motion")[1] of

the Debtors for entry of an order pursuant to Bankruptcy

Code sections 105 and 363 approving procedures by which

the Debtors may sell certain Miscellaneous Assets, free

_____
[1]  Each capitalized term not otherwise defined herein shall have the
     meaning ascribed to it in the Motion.

and clear of all interests, including liens, claim and
encumbrances (collectively, "Interests"); and it
appearing that the relief requested is in the best
interest of the Debtor' estates, their creditors and
other parties in interest; and it appearing that this
Court has jurisdiction over this matter pursuant to 28
U.S.C. §§ 157 and 1334; it appearing that this
proceeding is a core proceeding pursuant to 28 U.S.C. §
157; it appearing that venue of this proceeding and this
Motion in this District is proper pursuant to 28 U.S.C.
§§ 1408 and 409; and notice of this Motion and the
opportunity for hearing on this Motion was appropriate
under the particular circumstances and that no other or
further notice need be given; and after due deliberation
and sufficient cause appearing therefore, **and it is**
hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is GRANTED.

2.    Pursuant to Bankruptcy Code section 105
and 363, the Debtors are hereby authorized to consummate
sales of Miscellaneous Assets according to the following
procedures:

2

(a) The Debtors are authorized to sell Miscellaneous Assets with a purchase price equal to or less than $100,000 without notice to any party or further court order; provided however, that within seven days of the closing of such sale, the Debtors shall provide a report of such sale to counsel for the DIP Agent and counsel for the Creditors' Committee, which report shall identify the purchaser, the Miscellaneous Assets sold, and the purchase price for such assets. All provisions of this order conditioned upon notice or expiration of a Notice Period are hereby deemed satisfied upon payment the purchase price to the Debtors at which time all such provisions shall become applicable to such Miscellaneous Asset Sales.

(b) The Debtors are authorized to sell Miscellaneous Assets with a purchase price greater than $100,000 and equal to or less than $500,000; provided, that the Debtors shall provide written notice (each a "Sale Notice"), by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to (i) counsel for the Creditors' Committee, (ii) counsel for the DIP Agent, (iii) if applicable, the landlord for the premises where the Miscellaneous Assets sought to be sold are located, (iv) the taxing authority and/or counsel for the taxing authority (if known) for the jurisdictions in which the Miscellaneous Assets sought to be sold are located, and (vi) any known holder of a lien, claim, or encumbrance against the specific Miscellaneous Asset or Assets to be sold (collectively, the "Notice Parties").  The Notice Parties shall have five business days (a "Notice Period") after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

(c) The Debtors are authorized to sell Miscellaneous Assets with a purchase price greater than $500,000 and equal to or less than $2,000,000; provided, that the Debtors shall send a Sale Notice, by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to the Notice Parties.  The Notice Parties shall have ten business days (also a "Notice Period")

3

after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

(d) The Sale Notice shall specify (i) the asset or assets to be sold, (ii) the identity of the proposed purchaser (including a statement of any connection between the proposed purchaser and the Debtors), and (iii) the proposed sale price, and if requested by the purchaser, attach a copy of a proposed form of order.

(e) Objections must be served via email upon (i) counsel for the Debtors, Gregg M. Galardi (Gregg.Galardi@skadden.com), Ian S. Fredericks (Ian.Fredericks@skadden.com) and Douglas Foley (dfoley@mcguirewoods.com) (ii) counsel for the Official Committee of Unsecured Creditors, Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com); and (iii) counsel for the Debtors' prepetition and postpetition lenders, David S. Berman (dberman@riemerlaw.com).  If counsel to the Debtors receives no written objection prior to the expiration of the applicable Notice Period, the Debtors shall be authorized to consummate the proposed Miscellaneous Asset Sale and to take such actions as are necessary to close the sale and obtain the sale proceeds without further order of the court; provided, however, that, if requested by the proposed purchaser, the Debtors are authorized to submit a proposed form of order approving a Miscellaneous Asset Sale without further notice or hearing.

(f) If a Notice Party objects to the proposed transaction within Notice Period and the Debtors and such objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not take any further steps to consummate the Miscellaneous Asset Sale without first obtaining the Court's approval for that specific transaction, which approval may be obtained on an expedited basis, including through telephonic means, with advance notice to the Objecting Notice Party.

(g) Within fifteen (15) days following the end of each calendar month in which a Miscellaneous Asset Sale has taken place, the Debtors will file a report of Miscellaneous Asset Sales that occurred during such calendar month.

3.    If no Notice Party timely objects to the Miscellaneous Asset Sale or any such objection is consensually resolved, the Debtors may consummate the transaction, notwithstanding Bankruptcy Rule 6004(h), and the net proceeds of such transaction shall be distributed either in accordance with the prior orders entered by the Court (including the final debtor in possession financing order).  To the extent there is a dispute between lienholders regarding the priority of the competing liens on certain Miscellaneous Assets and entitlement to the proceeds of the same, the Debtors shall hold such proceeds until such dispute is resolved consensually or pursuant to court order.

4.    Pursuant to 11 U.S.C. §§ 363(b) and 363(f), if no Notice Party timely objects to the Miscellaneous Asset Sale or any such objection is consensually resolved, upon payment of the purchase price to the Debtors, the Debtor's right, title, and interest in the Miscellaneous Assets sold shall be

transferred to the purchaser free and clear of all Interests, with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Miscellaneous Assets immediately before such transfer, subject to any claims and defenses the Debtors may possess with respect thereto.

5.    Nothing contained herein shall prejudice the Debtors' rights to seek Court authorization for the sale of any asset of the Debtors under 11 U.S.C. § 363.

6.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or other-wise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.    The Court retains jurisdiction with

respect to all matters arising from or related to the

implementation of this Order.

Dated:   Richmond, Virginia
         February [_], 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

      - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

      - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

7

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

# EXHIBIT 2

## (Proposed Sale of Miscellaneous Assets)

\10122910.1

592461.03-Wilmington Server 1A - MSW

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of October 23, 2009, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and COLE CC KENNESAW GA, LLC, a Delaware limited liability company ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below).

Seller intends to close the sale contemplated by this Agreement pursuant to the authority and procedures set forth in that certain Order Granting Debtors' Motion for Order Under 11 U.S.C. §§ 105 and 363 Approving Procedures to Sell Certain Miscellaneous Assets Free and Clear of All Interests Without Further Order of Court (the "Miscellaneous Assets Order") entered in the Bankruptcy Case on February 17, 2009.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain premises located at 225 Chastain Meadows Court, Kennesaw, Georgia, containing approximately 5.15 acres, and being more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land (herein collectively called the "Property").

2.    PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be FIVE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($525,000.00).  At Closing (as defined below), the Purchase Price, less the Cole Administrative Claims (as defined below) and the Deposit (as defined below), shall be paid into the Escrow Agent's (as defined below) escrow account in cash by Purchaser

by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

2.2    Additional Consideration.    In the event the conditions to closing set forth in this Agreement are satisfied and Closing thereafter occurs as set forth in this Agreement, Purchaser, as additional consideration for Seller agreeing to sell and convey the Property to Purchaser pursuant to this Agreement, shall waive and release, and shall cause those certain affiliates of Purchaser set forth on Exhibit B attached hereto (each, a "Purchaser's Affiliate" and collectively, the "Purchaser's Affiliates"), to waive and release, all claims which Purchaser and Purchaser's Affiliates may have against Seller and its affiliated Debtors in the Bankruptcy Case, including all of the claims previously filed by Purchaser and Purchaser's Affiliates in the Bankruptcy Case and described on Exhibit B (collectively, the "Cole Bankruptcy Claims"). The Cole Bankruptcy Claims include claims for lease rejection damages pursuant to Section 502(b)(6) of the Bankruptcy Code, and administrative claims pursuant to Sections 365(d)(3) or 502(b) of the Bankruptcy Code ("Administrative Claims").  Seller and Purchaser agree that the aggregate amount of Administrative Claims to be credited against the Purchase Price is $180,000.00 (collectively, the "Cole Administrative Claims"). If the Closing does not occur, all Cole Bankruptcy Claims shall remain in full force and effect and shall not be waived or released.

3.    DEPOSIT

3.1    Deposit.    Within one (1) business day after execution and delivery of this Agreement by Seller and Purchaser, Purchaser shall deliver to First American Title Insurance Company ("Escrow Agent"), 2425 East Camelback Road, Suite 300, Phoenix, Arizona 85016, Attention: Brandon Grajewski,  Phone: 602-567-8145, Fax: 602-567-8101, Email: bgrajewski@firstam.com, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FIFTY TWO THOUSAND FIVE HUNDRED DOLLARS AND 00/100 ($52,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit") to be held by Escrow Agent in an interest-bearing account in a federally insured financial institution in the Phoenix metropolitan area, or in such other interest-bearing account or investment as the parties  hereto shall direct.

3.2    Application of Deposit.    If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, or Section 8.1 hereof, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival

2

Obligations"). If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations.

4.    PREPURCHASE MATTERS

4.1    Items Delivered.    Seller has previously delivered to Purchaser those items within Seller's possession related to or affecting the Property (if any) to be used by Purchaser in conducting Purchaser's due diligence investigation of the Property during the Due Diligence Period.

4.2    Title Examination.    Purchaser shall have the right to examine Seller's title to the Property and a survey of the Property and shall give written notice (the "Title Objections Notice") to Seller within five (5) days from and after the execution and delivery of this Agreement by Seller and Purchaser of any objections thereto; provided, however, Seller shall have no obligation to satisfy any such objections. Seller shall give written notice (the "Seller's Response") within five (5) days after receipt of the Title Objections Notice of whether it agrees to cure such objections prior to Closing. Failure of Seller to send the Seller's Response in such time shall conclusively be deemed Seller's election not to cure such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period (as hereinafter defined), one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly return the Deposit to Purchaser as Purchaser's sole and exclusive remedy; provided, however, if Seller has agreed to cure or satisfy each such objection specified in the Title Objections Notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement and Seller shall be obligated to satisfy each such objection specified in the Title Objections Notice; provided, further, if Purchaser does not send a written notice of objections within the period specified herein, or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all objections (other than those objections that Seller has agreed to satisfy) and shall be obligated to close the transaction in accordance with the terms of this Agreement. Notwithstanding the foregoing, Seller shall cause the Property to be conveyed to Purchaser at Closing free and clear of all Interests (as defined in the Miscellaneous Assets Order) pursuant to Section 4 of the Miscellaneous Assets Order.

4.3    Property Inspection.    Purchaser shall have until the date that is fourteen (14) days from and after the execution and delivery of this Agreement by Seller and Purchaser (the "Due Diligence Period") to determine whether, in Purchaser's sole and

3

absolute discretion, the Property is acceptable to Purchaser. Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations. If Purchaser does not give a notice of termination pursuant to this Section 4.3 at or prior to 6 p.m. (local time in Phoenix, Arizona) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to this Section 4.3 shall expire and be of no further force or effect.

Subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

4.4    Reports.       All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence investigation, whether before or after the date of this Agreement (collectively, the "Reports"), shall be treated as confidential information using the same degree of care as Purchaser employs with respect to its own proprietary or confidential information of like importance, and shall not be disclosed by Purchaser to any third parties except (i) to the

4

extent Purchaser is required to disclose the same pursuant to a court order, applicable laws, or pursuant to a legal dispute between Purchaser and Seller; or (ii) for Purchaser's attorneys, consultants, advisors, affiliates, accountants, investors, engineers, lenders, prospective tenants and other business associates (collectively, the "Related Parties") who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser, whether occasioned by the acts of Purchaser or the Related Parties, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. Purchaser and the Related Parties shall not be obligated to keep confidential any information that (1) is already in the public domain, (2) is or becomes generally available to the public other than as a result of a disclosure by Purchaser, or (3) is or becomes available to Purchaser on a non-confidential basis from a source other than Seller who, to Purchaser's knowledge, is not subject to a confidentiality agreement with, or other obligation of secrecy to, Seller prohibiting such disclosure. This Section 4.4 shall survive the termination of this Agreement for a period of twelve (12) months, but shall not survive the Closing.

4.5     Purchaser's Representations and Warranties.     Purchaser represents and warrants to Seller that (a) Purchaser is a limited liability company, duly organized and validly existing under the laws of the State of Delaware, is authorized to do business in the State of Georgia, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; and (b) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6     Seller's Representations and Warranties.     Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon compliance with the terms of the

5

Miscellaneous Assets Order, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances. The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

     4.7   Further Assurances.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

     5.1   Disclaimer.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW, AND ANY OTHER REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT. ADDITIONALLY,

6

NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH IN THIS AGREEMENT. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING (SUBJECT TO AND IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT) AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY, EXCEPT FOR CLAIMS AGAINST SELLER WITH RESPECT TO A BREACH OR MISREPRESENTATION BY SELLER UNDER THIS AGREEMENT. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS.  IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO RELEASE SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES

BROUGHT OR INCURRED BY PURCHASER (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO RELEASE SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S ACTS OR OMISSIONS. THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste

8

or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

6.1    Closing.    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is five (5) business days after the later of (i) the expiration of the ten business day Notice Period described in Paragraph 2(c) of the Miscellaneous Assets Order, provided no party timely and properly files an objection to the Sale Notice (as defined in the Miscellaneous Asset Order), or (ii) if any party timely and properly files an objection to the Sale Notice, then upon entry of an order by the Bankruptcy Court approving this Agreement or other appropriate resolution of the objection that will permit the sale of the Property pursuant to this Agreement (the date on which the Closing occurs is referred to as the "Closing Date").

6.2    Possession.    Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, and (iii) title and survey matters accepted or waived by Purchaser pursuant to Section 4.2 (collectively, the "Permitted Encumbrances").

6.3    Prorations.    All real estate taxes and assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, all common area maintenance, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available. Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.    Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    Closing Costs.    Purchaser shall pay all title examination costs, title insurance premiums, and survey, environmental and engineering costs incurred by Purchaser, and any and all other due diligence costs incurred by Purchaser. Seller shall pay all transfer taxes imposed on the Deed (as defined below) pursuant to applicable law. Except as otherwise provided herein, each party shall pay its own attorneys' fees. The parties shall each pay one-half (1/2) of any escrow fee charged by Escrow Agent; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the State of Georgia.

6.5    Seller's Obligations at the Closing.    At the Closing, Seller shall deliver to Escrow Agent the following:

(a)    Deed. A limited warranty deed, duly executed by the Acting President and Chief Executive Officer of Seller, conveying the Property in fee simple free and clear of all Interests (as defined in the Miscellaneous Assets Order), subject to the Permitted Encumbrances.

(b)    Foreign Person.    An affidavit or certificate duly executed by the Acting President and Chief Executive Officer of Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

(c)    Items re: Miscellaneous Assets Order.    A copy of the Sale Notice, together with evidence of service to the Notice Parties (as defined in the Miscellaneous Assets Order), and either (i) email or other correspondence from the attorneys listed in Paragraph 2(e)(i) of the Miscellaneous Assets Order indicating that they did not receive a written objection to the Sale Notice prior to the expiration of the applicable Notice Period (as defined in the Miscellaneous Assets Order), or (ii) if written objection to the Sale Notice was received prior to the expiration of the applicable Notice Period, evidence that the Bankruptcy Court has approved the sale of the Property pursuant to this Agreement or the objection has been resolved in a manner that will permit the sale of the Property pursuant to this Agreement.

(d)    Owner's Affidavit.    An owner's affidavit for the benefit of Escrow Agent duly executed by the Acting President and Chief Executive Officer of Seller in the form of Exhibit D attached hereto.

10

6.6     Purchaser's Obligations at the Closing.     At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)     Purchase Price.     The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller, and less the amount of the Cole Administrative Claims), by wire transfer of immediately available funds.

(b)     Purchaser's Affiliates' Bankruptcy Claims.  A waiver and release of claims in the form of Exhibit C attached hereto pursuant to which Purchaser and Purchaser's Affiliates waive and release the Cole Bankruptcy Claims and such additional documents, if any, as may be reasonably necessary to release the Cole Bankruptcy Claims in the Bankruptcy Case.

(c)     Evidence of Authority.     Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(d)     Taxpayer I.D. Certificate.     A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer Identification Number and consenting to Seller's release of this information to any governmental authority.

6.7     Commission.  Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty (the "Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement.  Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever.  Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction.  The provisions of the preceding sentence shall survive the Closing.

7.     RISK OF LOSS

7.1     Condemnation.     If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority

11

shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

8.    DEFAULT

   8.1    Breach by Seller.    In the event that (a) Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, or (b) Seller shall breach any representation or warranty made by Seller in this Agreement, Purchaser may either (i) terminate this Agreement, upon which the Deposit shall be refunded to Purchaser, or (ii) seek to obtain specific performance of Seller's obligations under this Agreement.  In no event shall Seller be liable to Purchaser for any actual, punitive, speculative or consequential damages.

   8.2    Breach by Purchaser. In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent as liquidated damages.  Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

   9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

   9.2    Filing a Sale Notice. Promptly following the expiration of the Due Diligence Period, Seller shall prepare and file a Sale Notice in accordance with the Miscellaneous Assets Order.

   9.3    Objections to Sale Notice. If any party timely and properly files an objection to the sale of the Property pursuant to the Miscellaneous Assets Order, this Agreement shall nevertheless remain in full force and effect until such objection is resolved, either consensually by agreement of the parties or by order of the Bankruptcy Court.

10.   MISCELLANEOUS

    10.1   <u>Notices.</u>      All notices, demands and requests which may be given or
which are required to be given by either party to the other, and any exercise of a right of
termination provided by this Agreement, shall be in writing and shall be deemed effective
either: (a) on the date personally delivered to the address below, as evidenced by written
receipt therefore, whether or not actually received by the person to whom addressed; (b)
on the third (3rd) business day after being sent, by certified or registered mail, return
receipt requested, addressed to the intended recipient at the address specified below; or
(c) on the first (1st) business day after being deposited into the custody of a nationally
recognized overnight delivery service such as Federal Express, addressed to such party at
the address specified below.   For purposes of this Section 10.1, the addresses of the
parties for all notices are as follows:

| | |
|---|---|
| If to Purchaser: | COLE CC KENNESAW GA, LLC<br>c/o Cole Real Estate Investments<br>2555 East Camelback Road, Suite 400<br>Phoenix, Arizona 85016<br>Attention: Legal Department |
| with a copy to: | KUTAK ROCK LLP<br>8601 N. Scottsdale Road, Suite 300<br>Scottsdale, Arizona 85253<br>Attention: Mitch Padover, Esq. |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: General Counsel |
| and a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Matthew T. Gunlock, Esq. |

13

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment.    This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4    Heading.    The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5    Time of Essence.    Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6    Governing Law.    This Agreement shall be governed by the laws of the State of Georgia.

10.7    Successors and Assigns: Assignment.    This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall not be permitted to assign Purchaser's rights under this Agreement without obtaining the prior written consent of Seller.    No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.    This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the

14

remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9   Attorneys' Fees.     In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10   Multiple Counterparts.     This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11   No Recordation.     Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12   Merger Provision.     Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13   Brokers.     Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   Consent to Jurisdiction of Bankruptcy Court.     THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HEREO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

15

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:     _Michelle Mosier_____
Name:   _Michelle Mosier_____
Title:   _VP of Controller_____

PURCHASER

COLE CC KENNESAW GA, LLC,
a Delaware limited liability company

By:     Cole REIT Advisors II, LLC, a Delaware
        limited liability company, its Manager

        By:     _____
        Name:   Todd J. Weiss
        Title:   Senior Vice President

16

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

PURCHASER

COLE CC KENNESAW GA, LLC,
a Delaware limited liability company

By:    Cole REIT Advisors II, LLC, a Delaware
limited liability company, its Manager

By: _____
Name: Todd J. Weiss
Title:  Senior Vice President

16

The escrow terms and conditions of this Agreement are agreed to and accepted this 26th day of October 2009.

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _Brandon Grajewski_

Name: _Brandon Grajewski_

Title: _Escrow Officer_

Mailing Address:

2425 East Camelback Road, Suite 300

Phoenix, Arizona  85016

Attention: Brandon Grajewski

17

EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

ALL TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 437 OF THE 16TH DISTRICT, 2ND SECTION OF COBB COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MITERED INTERSECTION OF THE NORTH RIGHT-OF-WAY OF BIG SHANTY ROAD (80' R/W) AND THE EAST RIGHT-OF-WAY OF THE I-575 CONNECTOR (100' R/W) AT AN IRON PIN SET (1/2" REBAR);

THENCE NORTH 37 DEGREES 14 MINUTES 22 SECONDS WEST FOR A DISTANCE OF 35.58 FEET ALONG THE MITER OF SAID INTERSECTION TO AN IRON PIN SET (1/2" REBAR) ON THE EAST RIGHT-OF-WAY OF THE I-575 CONNECTOR;

THENCE NORTH 07 DEGREES 23 MINUTES 23 SECONDS EAST FOR A DISTANCE OF 59.07 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 1181.63 FEET AND AN ARC LENGTH OF 338.99 FEET, BEING SUBTENDED BY A CHORD OF NORTH 15 DEGREES 36 MINUTES 29 EAST FOR A DISTANCE OF 337.83 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE NORTH 23 DEGREES 49 MINUTES 36 SECONDS EAST FOR A DISTANCE OF 117.69 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE NORTH 35 DEGREES 56 MINUTES 34 SECONDS EAST FOR A DISTANCE OF 41.58 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 1131.05 FEET AND AN ARC LENGTH OF 161.79 FEET, BEING SUBTENDED BY A CHORD OF NORTH 19 DEGREES 05 MINUTES 31 SECONDS EAST FOR A DISTANCE OF 161.65 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET (1/2" REBAR) AT THE MITERED INTERSECTION OF I-575 CONNECTOR AND AN UNNAMED ROAD;

THENCE NORTH 58 DEGREES 28 MINUTES 47 SECONDS EAST FOR A DISTANCE OF 28.78 FEET ALONG SAID MITERED RIGHT-OF-WAY INTERSECTION TO AN IRON PIN SET (1/2" REBAR) ON THE SOUTH RIGHT-OF-WAY OF SAID UNNAMED ROAD (60' R/W);

THENCE SOUTH 77 DEGREES 31 MINUTES 40 SECONDS EAST FOR A DISTANCE OF 98.98 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 530.00 FEET AND AN ARC LENGTH OF 121.99 FEET, BEING SUBTENDED BY A CHORD OF SOUTH 84 DEGREES 07 MINUTES 18 SECONDS EAST FOR A DISTANCE OF 121.72 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE NORTH 89 DEGREES 16 MINUTES 55 SECONDS EAST FOR A DISTANCE OF 502.40 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN FOUND (1/2" REBAR);

THENCE SOUTH 00 DEGREES 34 MINUTES 21 SECONDS EAST FOR A DISTANCE OF 810.38 FEET TO AN IRON PIN FOUND (1/2" REBAR) ON THE RIGHT-OF-WAY OF BIG SHANTY ROAD (80' R/W);

THENCE NORTH 88 DEGREES 24 MINUTES 25 SECONDS WEST FOR A DISTANCE OF 116.27 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 7226.86 FEET AND AN ARC LENGTH OF 100.92 FEET, BEING SUBTENDED BY A CHORD OF NORTH 88 DEGREES 48 MINUTES 25 SECONDS WEST FOR A DISTANCE OF 100.92 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE NORTH 89 DEGREES 12 MINUTES 25 SECONDS WEST FOR A DISTANCE OF 351.52 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 828.74 FEET AND AN ARC LENGTH OF 106.15 FEET, BEING SUBTENDED BY A CHORD OF NORTH 85 DEGREES 32 MINUTES 15 SECONDS WEST FOR A DISTANCE OF 106.08 FEET ALONG SAID RIGHT-OF-WAY TO A POINT;

THENCE NORTH 81 DEGREES 52 MINUTES 06 SECONDS WEST FOR A DISTANCE OF 308.06 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET (1/2" REBAR) AND THE POINT OF BEGINNING.

TOGETHER WITH AND SUBJECT TO COVENANTS, EASEMENTS AND RESTRICTIONS OF RECORD.

SAID PROPERTY CONTAINS 16.428 ACRES ACCORDING TO A SURVEY FOR CIRCUIT CITY STORES, INC. AND CHICAGO, BY MORELAND ALTOBELLI ASSOCIATES, INC., DATED SEPTEMBER 27, 1996. SAID SURVEY IS INCORPORATED HEREIN BY SPECIFIC REFERENCE FOR A MORE COMPLETE AND ACCURATE DESCRIPTION.

TOGETHER WITH ALL RIGHTS, PRIVILEGES, EASEMENTS AND APPURTENANCES CREATED BY THAT CERTAIN TEMPORARY ACCESS EASEMENT BY AND BETWEEN BK PROPERTIES, L.P. AND CIRCUIT CITY STORES, INC., DATED DECEMBER 11, 1996, RECORDED DECEMBER 11, 1996, IN DEED BOOK 10043, PAGE 32, RECORDS OF COBB COUNTY, GEORGIA.

TOGETHER WITH ALL RIGHTS, PRIVILEGES, EASEMENTS AND APPURTENANCES CREATED BY THAT CERTAIN EASEMENT AGREEMENT BY AND BETWEEN VKEP-B, L.L.C., BK PROPERTIES, L.P. AND CIRCUIT CITY STORES, INC., DATED MAY 10, 1999 RECORDED MAY 14, 1999, IN DEED BOOK 12497, PAGE 193 AFORESAID RECORDS.

TOGETHER WITH ALL RIGHTS, PRIVILEGES, EASEMENTS AND APPURTENANCES CREATED BY THAT CERTAIN TEMPORARY ACCESS EASEMENT BY AND BETWEEN VKEP-B, LLC AND CIRCUIT CITY STORES, INC., DATED MAY 10, 1999, RECORDED MAY 14, 1999, IN DEED BOOK 12497,

PAGE 200, RECORDS OF COBB COUNTY, GEORGIA, AS AMENDED BY THAT CERTAIN
AMENDMENT TO TEMPORARY ACCESS EASEMENT DATED APRIL 13, 2000, RECORDED APRIL
14, 2000 IN DEED BOOK 13255, PAGE 4427, AFORESAID RECORDS.

TOGETHER WITH ALL RIGHTS, PRIVILEGES, EASEMENTS AND APPURTENANCES CREATED BY
THAT CERTAIN EASEMENT AGREEMENT BY AND BETWEEN CIRCUIT CITY STORES, INC. AND BK
PROPERTIES, L.P., DATED DECEMBER 11, 1996, RECORDED IN DEED BOOK 10043, PAGE 41,
AFORESAID RECORDS.

TOGETHER WITH ALL RIGHTS PRIVILEGES, EASEMENTS AND APPURTENANCES CREATED BY
THAT CERTAIN EASEMENT AGREEMENT BETWEEN VKEP-B, LLC, A GEORGIA LIMITED LIABILITY
COMPANY, BK PROPERTIES, L.P., A GEORGIA LIMITED PARTNERSHIP, AND CIRCUIT CITY
STORES, INC., A VIRGINIA CORPORATION, DATED APRIL 13, 2000, FILED APRIL 14, 2000,
RECORDED IN DEED BOOK 13255, PAGE 4433, AFORESAID RECORDS.

LESS AND EXCEPT THAT PORTION OF THE SUBJECT PROPERTY CONVEYED TO MAHWAH
ASSOCIATES, BY VIRTUE OF THAT CERTAIN LIMITED WARRANTY DEED FROM CIRCUIT CITY
STORES, INC., DATED SEPTEMBER 28, 2000, FILED OCTOBER 6, 2000, RECORDED IN DEED
BOOK 13298, PAGE 3839, AFORESAID RECORDS , WHICH PROPERTY IS DESCRIBED ON PAGES
3 AND 4 HEREOF.

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 437 AND 438 OF THE
16TH DISTRICT, 2ND SECTION OF COBB COUNTY, GEORGIA, BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS:

BEGINNING AT THE MITERED INTERSECTION OF THE NORTH RIGHT-OF-WAY OF BIG SHANTY
ROAD, HAVING A 80 FOOT RIGHT-OF-WAY AND THE EAST MITERED RIGHT-OF-WAY OF
CHASTAIN MEADOWS PARKWAY AT AN IRON PIN SET 1/2" REBAR; THENCE NORTH 37
DEGREES 14 MINUTES 22 SECONDS WEST FOR A DISTANCE OF 35.58 FEET ALONG THE MITER
OF SAID INTERSECTION TO AN IRON PIN SET 1/2" REBAR ON THE EAST RIGHT-OF-WAY OF
CHASTAIN MEADOWS PARKWAY, SAID RIGHT-OF-WAY BEING 100' WIDE AT THIS POINT;
THENCE NORTH 07 DEGREES 23 MINUTES 23 SECONDS EAST FOR A DISTANCE OF 59.07 FEET
ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE ALONG A CURVE TO
THE RIGHT HAVING A RADIUS OF 1181.63 FEET AND AN ARC LENGTH OF 338.99 FEET, BEING
SUBTENDED BY A CHORD OF NORTH 15 DEGREES 36 MINUTES 29 SECONDS EAST FOR A
DISTANCE OF 337.83 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR;
THENCE NORTH 23 DEGREES 49 MINUTES 36 SECONDS EAST FOR A DISTANCE OF 173.69 FEET
ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE NORTH 36 DEGREES
56 MINUTES 34 SECONDS EAST FOR A DISTANCE OF 41.58 FEET ALONG SAID RIGHT-OF-WAY
TO AN IRON PIN SET 1/2" REBAR; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS
OF 1131.05 FEET AND AN ARC LENGTH OF 161.79 FEET, BEING SUBTENDED BY A CHORD OF
NORTH 19 DEGREES 05 MINUTES 31 SECONDS EAST FOR A DISTANCE OF 161.65 FEET ALONG
SAID RIGHT-OF-WAY TO THE MITERED INTERSECTION OF THE EAST RIGHT-OF-WAY OF
CHASTAIN MEADOWS PARKWAY AND THE SOUTH RIGHT-OF-WAY OF CHASTAIN MEADOWS
COURT TO AN IRON PIN SET 1/2" REBAR; THENCE NORTH 58 DEGREES 28 MINUTES 47
SECONDS EAST FOR A DISTANCE OF 28.78 FEET ALONG THE MITER OF SAID INTERSECTION
TO AN IRON PIN SET 1/2" REBAR ON THE SOUTH RIGHT-OF-WAY OF CHASTAIN MEADOWS

COURT SAID RIGHT-OF-WAY BEING 60' WIDE AT THIS POINT; THENCE SOUTH 77 DEGREES 31 MINUTES 40 SECONDS EAST FOR A DISTANCE OF 98.98 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 530.00 FEET AND AN ARC LENGTH OF 121.99 FEET, BEING SUBTENDED BY A CHORD OF SOUTH 84 DEGREES 07 MINUTES 18 SECONDS EAST FOR A DISTANCE OF 121.72 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE NORTH 89 DEGREES 16 MINUTES 55 SECONDS EAST FOR A DISTANCE OF 265.44 FEET ALONG SAID RIGHT-OF-WAY TO A NAIL SET; THENCE SOUTH 00 DEGREES 38 MINUTES 01 SECONDS EAST FOR A DISTANCE OF 45 FEET LEAVING SAID RIGHT OF WAY TO A NAIL SET; THENCE SOUTH 89 DEGREES 16 SECONDS WEST FOR A DISTANCE OF 27.37 FEET TO A NAIL SET; THENCE SOUTH 00 DEGREES 38 MINUTES 01 SECONDS EAST FOR A DISTANCE OF 706.09 FEET TO A NAIL SET; THENCE NORTH 89 DEGREES 12 MINUTES 25 SECONDS WEST FOR A DISTANCE OF 260.48 FEET TO A NAIL SET; THENCE SOUTH 00 DEGREES 38 MINUTES 01 SECONDS EAST FOR A DISTANCE OF 50.02 FEET TO A NAIL SET ON THE NORTH RIGHT-OF-WAY OF BIG SHANTY ROAD; THENCE NORTH 89 DEGREES 12 MINUTES 25 SECONDS WEST FOR A DISTANCE OF 44.61 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 828.74 FEET AND AN ARC LENGTH OF 106.15 FEET, BEING SUBTENDED BY A CHORD OF NORTH 89 DEGREES 32 MINUTES 15 SECONDS WEST FOR A DISTANCE OF 106.08 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR; THENCE NORTH 81 DEGREES 52 MINUTES 06 SECONDS WEST FOR A DISTANCE OF 308.06 FEET ALONG SAID RIGHT-OF-WAY TO AN IRON PIN SET 1/2" REBAR AND THE POINT OF BEGINNING.

SAID PROPERTY CONTAINS 11.278 ACRES ACCORDING TO THAT CERTAIN SURVEY ENTITLED "ALTA/ACSM LAND TITLE SURVEY FOR CIRCUIT CITY STORES, INC., CHICAGO TITLE INSURANCE COMPANY, WOODMEN OF AMERICA, UNITED FAMILY LIFE INSURANCE AND MAHWAH ASSOCIATES BY MORELAND ALTOBELLI ASSOCIATE, INC. DATED JULY 27, 2000. SAID SURVEY IS INCORPORATED HEREIN BY SPECIFIC REFERENCE FOR A MORE COMPLETE AND ACCURATE DESCRIPTION.

<u>EXHIBIT B</u>

PURCHASER'S AFFILIATES' BANKRUPTCY CLAIMS

| Entity | Location | Claim Nos. |
| --- | --- | --- |
| Cole CC Kennesaw GA, LLC | Kennesaw, GA | 9678 |
| Cole CC Mesquite TX, LLC | Mesquite, TX | 12178, 14164, 13113 |
| Cole CC Taunton MA, LLC | Taunton, MA | 12270, 14164, 13113 |
| Cole CC Aurora CO, LLC | Aurora, CO | 12271, 14164, 13113 |
| Cole CC Groveland FL, LLC | Groveland, FL | 12272, 14164, 13113 |

EXHIBIT C

FORM OF RELEASE OF CLAIMS

**RELEASE OF CLAIMS AGREEMENT**

      **THIS RELEASE OF CLAIMS AGREEMENT** (the "**Agreement**") is entered into as of _____, 2009, among CIRCUIT CITY STORES, INC., a Virginia corporation ("**Seller**"), COLE CC KENNESAW GA, LLC, a Delaware limited liability company ("**Buyer**"), and COLE CC MESQUITE TX, LLC, a Delaware limited liability company, COLE CC TAUNTON MA, LLC, a Delaware limited liability company, COLE CC AURORA CO, LLC, a Delaware limited liability company, and COLE CC GROVELAND FL, LLC, a Delaware limited liability company (collectively with Buyer, "**Landlord**").

RECITALS

      WHEREAS, Seller is a debtor in a Chapter 11 proceeding filed in the United States Bankruptcy Court for the Eastern District of Virginia Richmond Division (the "**Bankruptcy Court**") (In re: Circuit City Stores, Inc. et al., Debtors, No. 08-35653 (KRH)) (the "**Bankruptcy Proceeding**");

      WHEREAS, Seller and Buyer are parties to that certain Purchase and Sale Agreement dated as of September __, 2009, as amended from time to time (the "**Purchase Agreement**"), wherein Seller agreed to sell and Buyer agreed to purchase certain real property and improvements located at 225 Chastain Meadows Court, Kennesaw, Georgia and identified as Tax Parcel No. 16043800030 (the "**Property**");

      WHEREAS, pursuant to Section 2.2 of the Purchase Agreement, as additional consideration for the sale of the Property, Buyer agreed to cause Landlord to waive and release certain claims in the Bankruptcy Proceeding related to leases between Seller and Landlord for certain premises, as specified in the Purchase Agreement (collectively, the "**Leased Premises**"); and

      WHEREAS, the Bankruptcy Court entered an [INSERT NAME OF ORDER ENTERED] which has been entered in the docket of such case proceeding on _____.

      NOW THEREFORE, in consideration of the mutual promises contained herein, and for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties intending to be legally bound hereby, agree as follows:

1.    **Dismissal of Presently Filed Claims.**  Landlord agrees to withdraw and dismiss Landlord's presently filed proofs of claim specified on Exhibit B to the Purchase Agreement (collectively, the "**Proofs of Claim**").  Landlord agrees to file the necessary motion or notice with the Bankruptcy Court to withdraw the Proofs of Claim, with prejudice, immediately after the closing of the purchase and sale of the Property. Landlord waives and forever discharges Seller from any and all liability with respect to the Proofs of Claim and any pre-petition claims it had or may have with respect to Seller's lease of the Leased Premises.

2.    **Rejection Damages.**  Landlord waives, releases and forever discharges Seller from any liability or responsibility for any damages arising out of Seller's rejection of any lease of the Leased Premises pursuant to 11 U.S.C. § 502(b)(6) (collectively, the "**Rejection Damages**").  Landlord further waives and releases any and all right either may have to file a proof of claim seeking rejection damages from Seller related to Seller's rejection of any lease covering the Leased Premises (collectively, the "**Rejection Proof of Claim**").  In the event that Landlord has filed any proof of claim for such rejection damages, Landlord agrees to file immediately a motion seeking to withdraw, dismiss and disallow such claim, with prejudice.

3.    **Administrative Claims.**  Landlord waives, releases and forever discharges Seller from any liability or responsibility for any administrative claims of Landlord against Seller arising pursuant to 11 U.S.C. §§ 365(d)(3) or 502(b) (collectively, the "**Administrative Claims**").  Landlord further waives and releases any and all right it may have to file any action against Seller for such Administrative Claims. In the event that Landlord has filed any action for such Administrative Claims, Landlord agrees to file immediately a motion seeking to withdraw, dismiss and disallow such action, with prejudice.

4.    **Non-Admission of Liability.**  This Agreement shall not be construed in any way as an admission by Seller of its liability for the Proofs of Claim, the Rejection Damages, the Rejection Proof of Claim, or the Administrative Claims, or as a confirmation of the accuracy of any of the dollar amounts stated in this Agreement or the Purchase Agreement.

5.    **No Other Claimants.**  Landlord and Seller represent and warrant that (a) no other person or entity of any kind had or has any interest in any of the liabilities, claims, damages, actions and causes of action released by this Agreement, and (b) Landlord agrees to indemnify and hold Seller hereto harmless from any liabilities, claims, demands, costs, expenses and attorneys' fees incurred by Seller as a result of any persons' or entities' assertion of any right or claim under and by reason of the claims referred to hereinabove.

6.     **Dismissal of the Proofs of Claim.**  Immediately after the closing of the purchase and sale of the Property, Landlord shall file an appropriate motion or notice with the Bankruptcy Court informing the Bankruptcy Court that the Proofs of Claim have been settled and asking (in the event that a motion is the appropriate filing) the Bankruptcy Court to dismiss the Proofs of Claim **WITH PREJUDICE** or notifying the Bankruptcy Court that the Proofs of Claim are withdrawn.  The Order of the Bankruptcy Court dismissing the Proofs of Claim, or the notice filed by Landlord, shall be incorporated into this Agreement by this reference.

7.     **Choice of Law.**  The parties agree that the Bankruptcy Court will have jurisdiction over all matters, including any legal action, suit or proceeding arising out of or relating to this Agreement and the parties hereto irrevocably submit and consent to such jurisdiction.

8.     **Counterpart Signatures.**  This Agreement may be signed in one or more counterpart copies, each of which, taken together, shall constitute one and the same agreement though no single counterpart bears all parties' signatures.

9.     **Facsimile Signatures.**   The parties agree that, for purposes of this Agreement, the receipt of a party's signature by facsimile transmission, or a .PDF copy, shall be deemed to be the original signature of the party, and the other parties may rely, and shall be fully protected in relying, on such facsimile or .PDF signature copy.

10.     **Miscellaneous.**  This Agreement may not be amended, altered, modified or otherwise changed except in writing executed by the parties hereto expressly stating that it is an amendment to this Agreement.  The undersigned acknowledge and agree that they will make no claims and hereafter waive any right they now have or may hereafter have, based upon any oral alterations, oral amendment, oral modification or any other change of this Agreement based upon any alleged oral warranty, representation or promise, except as set forth expressly in the Agreement.  This Agreement sets forth the entire agreement between the parties hereto, and supersedes any and all prior agreements or understandings between the parties hereto relating to the subject matter hereof.  The parties acknowledge that the Recitals are true and correct and are incorporated herein by reference.

*Signature pages follow*

IN WITNESS WHEREOF, the parties have executed this Release of Claims Agreement as of the date first above written.


**SELLER:**

CIRCUIT CITY STORES, INC.,

a Virginia corporation

By: _____

Name:

Title:


**LANDLORD:**

COLE CC KENNESAW GA, LLC,
COLE CC MESQUITE TX, LLC,
COLE CC TAUNTON MA, LLC,
COLE CC AURORA CO, LLC, and
COLE CC GROVELAND FL, LLC,
each, a Delaware limited liability company

By: Cole REIT Advisors II, LLC, a Delaware
    limited liability company


    By: _____
        Todd J. Weiss
        Senior Vice President

## EXHIBIT D

### FORM OF OWNER'S AFFIDAVIT

#### Commercial Owner's Affidavit

STATE OF    _____     }

COUNTY OF _____     }

The undersigned affiant first being duly sworn, deposes and says:

1.     That the Corporation named herein is the owner of certain real property in the State of Georgia   described as follows (the "property"):

For complete legal description see Exhibit "A" attached hereto and made a part hereof.

2.     That the undersigned officer of said Corporation is authorized to execute this affidavit, and is authorized to execute all instruments necessary to convey the Property pursuant to the [INSERT NAME OF ORDER].

3.     That the Corporation is incorporated in the State of Virginia, and that the Corporation has filed for bankruptcy pursuant to that certain action pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division as In re: Circuit City Stores, Inc. et al., Debtors, No. 08-35653 (KRH).

4.     That to the knowledge of the Corporation, there are no unrecorded leases or agreements affecting the Property, and there is no one in possession of or that has access to the Property.

5.     That to the knowledge of the Corporation, there are no rights of first refusal or options to purchase all or any part of the Property.

6.     That this affidavit is given for the purpose of inducing First American Title Insurance Company and/or its agent to issue its policies of title insurance which may provide coverage as to the matters listed above.  The undersigned acknowledge that they have read the foregoing and fully understand the legal aspects of any misrepresentation and/or untrue statements made herein.

**SELLER:**

CIRCUIT CITY STORES, INC.,

a Virginia corporation

By: _____

Name:

Title:


STATE OF _____   )SS

COUNTY OF _____   )

On _____, before        me,
_____ , Notary Public, personally appeared
_____ , known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____

My Commission Expires: _____

This area for official notarial seal

Exhibit "A" to Form of Owner's Affidavit

[TO BE ATTACHED AT CLOSING]

\9904598.9