Samuel S. Oh (Cal. Bar No. 166719)          Russell Johnson, Esq. (VSB No. 31468)
LIM, RUGER & KIM, LLP                        Law Firm of Russell R. Johnson III, PLC
1055 West Seventh Street, Suite 2800         2258 Wheatlands Drive
Los Angeles, CA 90017                        Manakin-Sabot, VA  23103
213-955-9500                                 804-749-8861

Counsel for Averatec/Trigem USA, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

– – – – – – – – – – – – – – – – – – x
                            :
In re:                                       :          Chapter 11
                            :
**CIRCUIT CITY STORES, INC.**               :          **Case No. 08-35653 - KRH**
et al.,                                      :
            Debtors            :          Jointly Administered
– – – – – – – – – – – – – – – – – –x

**RESPONSE OF AVERATEC/TRIGEM USA, INC. TO DEBTORS' FORTY-EIGHTH
OMNIBUS OBJECTION TO CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9)
CLAIMS AND MOTION FOR (I) AUTHORITY TO SETOFF AGAINST SUCH
EXPENSES AND CLAIMS AND (II) A WAIVER OF THE REQUIREMENT THAT THE
FIRST HEARING OF ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

Avertec/Trigem USA, Inc. ("Claimant"), by counsel, hereby responds to the *Debtors'*

*Forty-Eighth Omnibus Objection To Certain Administrative Expenses And 503(b)(9) Claims And*

*Motion For (I) Authority To Setoff Against Such Expenses And Claims And (II) A Waiver Of The*

*Requirement That The First Hearing On Any Response Proceed As A Status Conference* (the

"Objection"), and sets forth the following:

**<u>PROCEDURAL BACKGROUND</u>**

1.         On November 10, 2008 (the "Petition Date"), the above-captioned debtors (the

"Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States

Code, as amended (the "Bankruptcy Code") with the United States Bankruptcy Court for the

Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

2.      On December 2, 2008, Claimant timely filed its Section 503(b)(9) Claim (the

"503(b)(9) Claim") [Claim No. 111] in the total amount of $321,720.00, broken down as

follows:

### Goods Subject to Section 503(b)(9) Claim

| PO # | INVOICE # | Receipt Date | Quantity | Unit Price | Total Price |
|------|-----------|--------------|----------|------------|-------------|
| 2170690 | 0000239 | 10/21/2008 | 216 | $383.00 | $82,728.00 |
| 2170691 | 0000238 | 10/21/2008 | 288 | $383.00 | $110,304.00 |
| 2170692 | 0000237 | 10/21/2008 | 336 | $383.00 | $128,688.00 |
| | | | | **Total 503(b)(9) Claim** | **$321,720.00** |

3.      On January 13, 2009, Claimant timely filed a proof of claim in the amount of

$955,968.00 (the "Claim") [Claim No. 3449].  As further indicated by Attachment A to the

Claim, the total amount of the Claim consists of the following outstanding and unpaid pre-

petition invoices:

| PO # | INVOICE # | Receipt Date | Quantity | Unit Price | Total Price |
|------|-----------|--------------|----------|------------|-------------|
| 2170689 | 0000241 | 10/20/2008 | 672 | $383.00 | $257,376.00 |
| 2170693 | 0000236 | 10/16/2008 | 504 | $383.00 | $193,032.00 |
| 2170694 | 0000235 | 10/20/2008 | 480 | $383.00 | $183,840.00 |
| 2170690 | 0000239 | 10/21/2008 | 216 | $383.00 | $82,728.00 |
| 2170691 | 0000238 | 10/21/2008 | 288 | $383.00 | $110,304.00 |
| 2170692 | 0000237 | 10/21/2008 | 336 | $383.00 | $128,688.00 |
| | | | | **Total Claim** | **$955,968.00** |

In the above chart, Invoices 0000239, 000238 and 000237 comprise the 503(b)(9) Claim as

further set forth above under paragraph 2 herein.  The remaining invoices in the above chart

(Invoice No. 0000241 in the amount of $257,376.00, Invoice No. 0000236 in the amount of

$193,032.00 and Invoice No. 0000235 in the amount of $183,840.00) and as further explained on

Attachment A to the Claim total $634,248.00.

2

4.      On June 23, 2009, the Debtors filed *Debtors' Twentieth Omnibus Objection To Claims* (the "20th Objection") [Docket No. 3704] seeking to reclassify $128,688.00 worth of goods sold under invoice number 0000237 (the "Subject Goods") as a general unsecured claim on the grounds that the Subject Goods were not received within twenty (20) days of the Petition Date as required under Section 503(b)(9) of the Bankruptcy Code.  In the 20th Objection, however, Debtors did not raise any claim against the Claimant for amounts allegedly due and owing to Debtors by the Claimant.

5.      On July 14, 2009, Claimant filed the *Response Of Averatec/Trigem USA, Inc. To Debtors' Twentieth Omnibus Objection To Claims* (the "Response") [Docket No. 4063]. Claimant attached as Exhibit A to the Response a true and correct copy of the 503(b)(9) Claim. In the Response, Claimant provided the Court with evidence sufficient to deny the relief sought by Debtors in the 20th Objection - Debtors' acknowledgment via e-mail that the Debtors received the Subject Goods on October 21, 2008, which is within twenty days of the Petition Date.

6.      On August 20, 2009, the Court entered the *Order On Debtors' Twentieth Omnibus Objection To Claims (Reclassified To Unsecured Claims Of Certain Claims Filed As 503(b)(9) Claims For Goods Received By The Debtors Not Within Twenty Days Of The Commencement Of The Cases)* (the "20th Objection Order") [Docket No. 4576].  Under the 20th Objection Order, the Court adjourned the hearing on the 20th Objection in relation to the 503(b)(9) Claim until August 27, 2009.  On August 27, 2009, a status conference was held with respect to the 20th Objection and the applicable responses.

7.      On August 21, 2009, Debtors filed *Debtors' Thirty-Fourth Omnibus Objection To Claims (Modification Of Certain Duplicate 503(b)(9) Claims)* (the "34th Objection") [Docket No. 4598] wherein Debtors sought disallowance of the repetitive portion of the Claim containing

the 503(b)(9) Claim.  In the 34th Objection, however, Debtors did not raise any claim against the Claimant for amounts allegedly due and owing to Debtors by the Claimant.[1]

8.    On August 27, 2009, the Court continued the hearing on the 20th Objection until October 15, 2009 [Docket No. 4698].

9.    On September 29, 2009, Debtors filed the *First Amended Joint Plan Of Liquidation Of Circuit City Stores, Inc. And Its Affiliated Debtors And Debtors In Possession And Its Official Committee Of Creditors Holding General Unsecured Claims* (the "Plan") [Docket No. 5124].  As set forth within Article III, Sec. C(2) of the Plan, holders of Class 4 General Unsecured Claims against the Debtors are to receive in full and final satisfaction, settlement and release of and in exchange for their allowed general unsecured claim a pro rata share of the Initial Class 4 Distribution Amount, if any, followed by a pro rata share of the Periodic Class 4 Distribution Amount, if any.  Accordingly, under the Plan, the likelihood of general unsecured claimants receiving any distribution amount for their claims appears remote.

10.    On October 15, 2009, the Court further continued the hearing on the 20th Objection until December 7, 2009, at 2:00 p.m. [Docket No. 5271].

11.    On October 28, 2009, the Court entered the *Order On Debtors' Thirty-Fourth Omnibus Objection To Claims (Modification Of Certain Duplicate 503(b)(9) Claims)* (the "34th Objection Order") [Docket No. 5385].  As indicated by <u>Exhibit A</u> attached to the 34th Objection Order, the Court granted the 34th Objection in relation to the Claim by modifying the allowed and surviving amount of the Claim to $762,936.00.  As further indicated by <u>Exhibit A</u> attached to the 34th Objection Order, the Court represented that the modified and surviving amount of the

---

[1] Conceding the duplication of the 503(b)(9) Claim within the Claim, Claimant did not contest the relief sought by Debtors in the 34th Objection.

503(b)(9) Claim is $321,720.00.[2]

## FACTS REGARDING THE OBJECTION

12.     On October 13, 2009, Debtors filed the Objection [Docket No. 5211].

13.     In the Objection, the Debtors allege for the first time since the Petition Date that

Debtors possess a claim against Claimant that was incurred as part of the ordinary course of

business between Debtors and Claimant and is comprised of receivables, charge-backs, returns

and other amounts (collectively the "Receivables").  Objection at ¶ 12.  Debtors, however, fail to

specify whether the Receivables constitute pre-petition, post-petition or a mixture of pre-petition

and post-petition claims against the Claimant.

14.     Debtors further allege that the Receivables total $197,914.12 and are currently

due and owing to Debtors by Claimant.  Objection at ¶ 12; Exhibit C attached to the Objection,

p. 2 of 13.  Debtors, however, have provided no supporting documentation to validate the

amount of the Receivables.  More importantly, Debtors have provided no evidence or supporting

documentation to establish that the alleged Receivables actually constitute a valid claim against

the Claimant.

15.     In the Objection, Debtors seek to setoff the amount of the Receivables against the

503(b)(9) Claim.  Objection at ¶ 13.  Specifically, in Exhibit C attached to the Objection, Debtors

incorrectly represent the amount of the 503(b)(9) Claim as $193,032.00 and that after setoff of

the Receivables, the amount of Debtors' remaining Receivables claim is $4,882.12 ($197,914.12

Receivables - $193,032.00 503(b)(9) claim = $4,882.12) (the "Surplus Receivables Claim").

Debtors inexplicably make this misrepresentation concerning the amount of the 503(b)(9) Claim

despite the fact that pursuant to the continuances no final order concerning the 20th Objection has

---

[2] In paragraph 2 of the 34th Objection Order, the Court acknowledged that the status of the 503(b)(9) Claim as an allowed administrative expense has yet to be determined.

been entered by the Court and that additionally the 34th Objection Order expressly makes clear

that no determination concerning the status of the 503(b)(9) as an allowed administrative

expense has been made by the Court.[3]  As to the Surplus Receivables Claim, Debtors intend to

seek payment from Claimant and/or offset the Surplus Receivables Claim against other claims of

the Claimant.  Objection at ¶ 21.

16.    Finally, in the Objection, the Debtors request that the Court waive the requirement

under the *Order Establishing Omnibus Objection Procedures And Approving The Form And*

*Manner Of Notice Of Omnibus Objections* (the "Procedures Order") [Docket No. 2881] for

conducting the first hearing on the Objection as a status conference and in the alternative permit

oral argument at the first hearing on the Objection to decide the legal issues raised by the

Debtors in the Objection, namely whether Debtors, pursuant to the Bankruptcy Code, may be

authorized by the Court to setoff the 503(b)(9) Claim against the alleged Receivables.  Objection

at ¶ 20.

17.    On October 13, 2009, Debtors filed the *Notice Of Debtors' Forty-Eighth Omnibus*

*Objection To Certain Administrative Expenses And 503(b)(9) Claims And Motion For (I)*

*Authority To Setoff Against Such Expenses And Claims And (II) A Waiver Of The Requirement*

*That The First Hearing On Any Response Proceed As A Status Conference* (the "Notice of

Hearing") [Docket No. 5211-1].  In the Notice of Hearing, Debtors indicate that the deadline for

filing responses to the Objection is November 4, 2009, at 4:00 p.m. and that the Court will

---

[3] In Exhibit C attached to the Objection, Debtors identify the 503(b)(9) Claim as follows: "Docketed Amount*: $193,032.00.  *Claims filed, adjourned or ordered on prior omnibus objections are reflected at the modified amount."  As Debtors know, however, the 503(b)(9) Claim has not been modified.  Indeed, it is interesting to note that $193,032.00 will be the remaining amount of the 503(b)(9) Claim only if the Court grants the relief sought by Debtors in the 20th Objection – the difference between the amount of the 503(b)(9) Claim ($321,720.00) and the portion of the 503(b)(9) Claim ($128,688.00) that Debtors claim in the 20th Objection is beyond the statutory twenty-day period under Section 503(b)(9) [$321,720.00 - $128,688.00 = $193,032.00].  As set forth in the Response, however, Debtors previously admit receiving the disputed portion of the 503(b)(9) Claim ($128,688.00) on October 21, 2008, which is within twenty days of the commencement of the Debtors' bankruptcy cases as required under Section 503(b)(9) of the Bankruptcy Code.

conduct a hearing on the Objection on November 12, 2009, at 10:00 a.m. (the "Hearing").

18.     Finally, by e-mail dated October 15, 2009, a true and correct copy of which is attached hereto as **Exhibit A**, Debtors' counsel informed undersigned counsel for Claimant of the following *ex parte* communication that took place between the Debtors and the Court concerning the Hearing:

> We are proceeding on the legal issues only raised in this objection
> without prejudice to the claimants [sic] particular facts and
> circumstances as applied to any legal rulings the Court may make on
> Nov.12th.  We do not intend to present evidence nor do we intend to
> engage in discovery before Nov.12th nor do we think it necessary given
> the relief we are seeking on Nov.12th.  We are confident that the Court
> is comfortable with this process.  The Court has proceeded in this
> fashion in the past and we vetting this approach with him today in Court
> and he seemed comfortable with it.  Any factual issues will be dealt
> with in a subsequent hearing and pursuant to a scheduling order if
> necessary.

## FACTS REGARDING CLAIMANT

19.     Claimant is a trade creditor that sold goods to Debtors prior to the Petition Date. Specifically, Trigem USA, Inc., sold Averatec branded computers to Circuit City Stores, Inc. The total amount of Claimant's outstanding pre-petition invoices as a result of the goods sold to and received by the Debtors prior to the Petition Date is $955,968.00.  As set forth herein, this amount constitutes the entire amount of the Claim held by Claimant in the Debtors' bankruptcy cases.

**20.**     As further set forth herein, the Claim consists of: (a) the 503(b)(9) Claim in the amount of $321,720.00; and, (b) the reclamation demand in the amount of $634,248.00. Attached as Exhibit 2 to Attachment A of the Claim is a copy of the reclamation demand Claimant timely issued to Debtors on November 21, 2008, concerning the $634,248.00 portion of the Claim.

## ARGUMENT AND CITATION OF AUTHORITY

**A.     THE COURT MUST REFRAIN FROM ISSUING ADVISORY OPINIONS
CONCERNING ALLEGED DISPUTES THAT ARE HYPOTHETICAL
AND ABSTRACT.**

The Case or Controversy Clause under Article III, Section 2 of the United States

Constitution limits a federal court's exercise of subject matter jurisdiction exclusively to cases

and/or controversies that are ripe for decision.  Indeed, as the United States Supreme Court has

long since held:

> A 'controversy' in this sense must be one that is appropriate for judicial
> determination.  A justiciable controversy is thus distinguished from a
> difference or dispute of a hypothetical or abstract character; from one
> that is academic or moot.  The controversy must be definite and
> concrete, touching the legal relations of parties having adverse legal
> interests.  It must be a real and substantial controversy admitting of
> specific relief through a decree of a conclusive character, as
> distinguished from an opinion advising what the law would be upon a
> hypothetical state of facts.  Where there is such a concrete case
> admitting of an immediate and definitive determination of the legal
> rights of the parties in an adversary proceeding upon the facts alleged,
> the judicial function may be appropriately exercised although the
> adjudication of the rights of the litigants may not require the award of
> process or the payment of damages.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *see

also Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (holding that in

relation to a declaratory judgment, "[t]he real value of the judicial pronouncement-what makes it

a proper judicial resolution of a 'case or controversy' rather than an advisory opinion-is in the

settling of some dispute which affects the behavior of the defendant towards the plaintiff."); *see

also In re NVR*, 189 F.3d 442, 454 (4th Cir. 1999) (wherein the court held that where a decision

by the court secures no satisfaction for the debtor, such a decision is advisory and beyond the

federal court's Article III power).

There is no concrete case or controversy before the Court concerning the Receivables. As noted above, for the first time in their bankruptcy cases, Debtors allege that the Receivables represent Debtors' claim against Claimant but have provided no evidence or supporting documentation that establishes the Receivables as a valid claim against the Claimant. Moreover, the Debtors fail to allege if it is a prepetition or post-petition claim. Furthermore, at this time, the Receivables represent only and at best a hypothetical and abstract claim against the Claimant. As the Debtors have yet to establish the Receivables as a valid claim against the Claimant, the Debtors are incapable at the Hearing of presenting the Court with a valid case or controversy concerning the Receivables that is ripe for decision. Accordingly, any decision or opinion issued by the Court following the Hearing as to the legal issues raised by Debtors in the Objection would constitute an advisory opinion that the Court is expressly prohibited from issuing pursuant to the Case or Controversy Clause of the Constitution. Simply stated, because the Debtors have not established the Receivables as a justiciable claim, the Court lacks subject matter jurisdiction for issuing a decision concerning any legal rights that the Debtors may otherwise have under the Bankruptcy Code for setoff of the Receivables against the 503(b)(9) Claim.

**B.    IN ORDER TO SETOFF THE RECEIVABLES AGAINST THE 503(b)(9) CLAIM AND/OR OBTAIN A DECLARATORY JUDGMENT CONCERNING THE LEGAL RIGHTS OF THE DEBTORS FOR SETOFF OF THE RECEIVABLES AGAINST THE 503(b)(9) CLAIM , THE DEBTORS MUST FILE AN ADVERSARY PROCEEDING.**

In the Objection, the Debtors request that the Court permit oral argument at the Hearing for deciding the legal issues raised by the Debtors in the Objection, namely whether Debtors, pursuant to the Bankruptcy Code, may setoff the 503(b)(9) Claim against the alleged Receivables. No facts, however, concerning the Receivables have been established by the Court much less have been presented by the Debtors to the Court or to the Claimant.

The Debtors' proposed setoff of the Receivables against the 503(b)(9) Claim constitutes an adversary proceeding because it represents an effort by the Debtors to recover money or property from the Claimant.  See Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.  In addition, by asking the Court to proceed directly to oral argument at the Hearing before any facts concerning the Receivables are known or established, the Debtors are also seeking a declaratory judgment from the Court as to whether the Debtors may recover money or property from the Claimant via setoff of the Receivables against the 503(b)(9) Claim.  Rule 7001(9) of the Federal Rules of Bankruptcy Procedure expressly provides, however, that a proceeding to obtain a declaratory judgment relating to a proceeding to recover money or property, with limited exceptions not relevant to this matter, constitutes an adversary proceeding.  Accordingly, in order for the Debtors to be afforded any relief sought under the Objection whether in the form of recovering money or property from Claimant via setoff of the Receivables against the 503(b)(9) Claim or in the form of a declaratory judgment concerning the Debtors' legal rights to setoff the Receivables against the 503(b)(9) Claim, the Debtors are required under Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure to pursue both forms of relief through the filing of an adversary proceeding against the Claimant. *See In re Best Products, Co.*, 203 B.R. 51, 54 (Bankr. E.D.Va. 1996) (Tice, J.) (holding that where the debtor seeks a form of relief prescribed under Rule 7001 of the Federal Rules of Bankruptcy Procedure, the debtor must file the requisite action before that relief may be afforded to the debtor).[4]

---

[4] In addition to the requirements under Rule 7001 of the Federal Rules of Bankruptcy Procedure, Rule 3007 of the Federal Rules of Bankruptcy Procedure also expressly provides as follows: [i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.  As set forth on page 2 of the Objection, Debtors are seeking the relief requested in the Objection, in part, pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure.

C.    **THE AUTHORITY RELIED UPON BY DEBTORS IN THE OBJECTION DOES NOT SUPPORT THE RELIEF REQUESTED BY DEBTORS IN THE OBJECTION.**

In the Objection, Debtors begin their analysis by correctly asserting the axiom that to the extent applicable state law permits setoff, the Debtors' right to setoff a debt is preserved under Section 558 of the Bankruptcy Code.  Objection at ¶ 14.  *See In re TSLC I, Inc.*, 332 B.R. 476, 478 (Bankr. M.D.Fla. 2005) (holding that "section 553 is not relevant here because it only applies to a pre-petition setoff of a creditor against a pre-petition claim of the debtor. . . . [S]ection 558 preserves to the debtor any pre-petition defenses a debtor may have, including any right to setoff."); *In re Westchester Structures, Inc.*, 181 B.R. 730, 739-40 (Bankr. S.D.N.Y. 1995) (holding that "[s]ection 553, however, only speaks to the right of a creditor to offset mutual debts. . . . Section 558 of the Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may have.").[5]

Debtors then proceed to argue that because Virginia law recognizes a right of setoff, Debtors' alleged right to setoff the Receivables against the 503(b)(9) Claim is a valid setoff right under Virginia law.  Objection at ¶¶ 15 & 16.  Debtors' argument concerning the application of Virginia law, however, is of course circular because the Debtors fail to establish the applicability of Virginia law to the prepetition transactions engaged between the Debtors and Claimant that underlie the 503(b)(9) Claim.  Indeed, the Debtors do not even address the requirements under Virginia's conflict of law rules to show that Virginia law is the proper authority upon which Debtors may rely to establish a right to setoff of the Receivables against the 503(b)(9) Claim.

---

[5] The other cases relied upon by the Debtors in the Objection all support this fundamental distinction that Section 553 applies exclusively to a creditor's right of setoff while Section 558 applies exclusively to any rights a debtor may have for asserting a counterclaim against a creditor in bankruptcy.  *See In re ABC-NACO, Inc.*, 294 B.R. 832, 837 (Bankr. N.D.Ill. 2003) (holding that setoff permitted under Section 553 of the Bankruptcy Code only applies to a creditor in bankruptcy, not the debtor); *In re PSA*, 277 B.R. 51, 53 (Bankr. Del. 2002) (holding that when setoff is asserted by the debtor, Section 553 of the Bankruptcy Code does not apply and the court must look exclusively to Section 558 of the Bankruptcy Code); *In re Women First Healthcare, Inc.*, 345 B.R. 131, (Bankr. Del. 2006) (holding that Section 553 pertains only to a creditor's rights of setoff, not the debtor's).

*See In re Varona*, 388 B.R. 705, 721-22 (Bankr. E.D.Va. 2008) (holding that absent the clarity provided from a choice of law provision previously agreed to by the parties, the court must look to Virginia's conflict of law rules for determining questions of applicable substantive state law).

Through this reasoning, the Debtors attempt to portray their alleged right to setoff the Receivables against the 503(b)(9) Claim as conclusively established under prevailing case law.[6] A further reading and analysis of the cases relied upon by the Debtors in making this assertion, however, reveals that those cases do not support the relief sought by the Debtors in the Objection. Indeed, a thorough examination of all reported decisions indicates that there is no published authority providing for a debtor's setoff under Section 558 of the Bankruptcy Code against a creditor's administrative expense under Section 503(b)(9) of the Bankruptcy Code.

The Debtors rely upon the decision in *Brown & Cole Stores, LLC v. Assoc. Grocers, Inc. (In re Brown & Cole Stores, LLC)*, 375 B.R. 873, 879 (9th Cir. B.A.P. 2007) for the proposition that the Debtors may offset the Receivables against the 503(b)(9) Claim.[7] As set forth herein, the analysis employed by the Ninth Circuit BAP in the *Brown & Cole Stores* case is severely flawed for several reasons and has already been refuted. The facts of the *Brown & Cole Stores*

---

[6] In paragraph 18 of the Objection, the Debtors make the following assertion: "as one court recently held, the debtor may offset *pre-petition* receivables against 503(b)(9) administrative expenses." (Emphasis added). As indicated herein, Debtors have failed to identify the Receivables as a pre-petition claim, post-petition claim or mixture of both against Claimant. From this assertion, however, Claimant presumes Debtors' are attempting to qualify the Receivables as a pre-petition claim.

[7] Debtors also rely upon the unreported decision of *In re Martinez*, 2007 WL 295406 (M.D.Pa. Jan. 29, 2007) for the proposition that the bankruptcy court has discretion to restrict setoff solely to priority claims where creditor also held a general unsecured claims against the debtor. Objection at ¶ 18. The Debtors' reliance upon the *Martinez* decision is misplaced and distinguishable from the relief sought by the Debtors in the Objection. The court's decision in *Martinez* concerned the setoff rights of the IRS, not the debtors, under Section 553 of the Bankruptcy Code in relation to a debtors' pre-petition tax refund against the debtors' other outstanding pre-petition federal tax liabilities. As further indicated by the court in *In re Ewing*, 400 B.R. 913 (Bankr. N.D.Ga. 2008), the issues raised in *Martinez* were clarified by Congress under the amendments to the Bankruptcy Code enacted as part of *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ("BAPCPA"). Specifically, the court in *Ewing* held that "[t]o the extent the court has discretion to deny a party's setoff request, the addition of § 362(b)(26) evidences a congressional intent to permit a governmental unit, such as the IRS, to exercise its statutory authority to setoff its claim without interference, interruption, or the necessity of seeking court approval." *In re Ewing*, 400 B.R. at 917.

case are as follows.  Debtor, Brown and Cole Stores, LLC ("B&C") was a privately held grocery

store chain operating primarily in the State of Washington.  Associated Grocers, Incorporated

("AGI"), served as B&C's principal supplier and wholesaler.  AGI is a cooperative and B&C

was its largest shareholder.  AGI claimed a first-position security interest in the AGI stock to

secure all indebtedness of B&C to AGI.  At the time of the bankruptcy case, B&C's total

indebtedness to AGI consisted of: (a) an approximate $907,000 PACA claim for products sold to

B&C prior to the bankruptcy case; (b) an approximate $4,166,000 pre-petition general unsecured

claim for goods sold by AGI to B&C; (c) prepetition rent for under various leases in the

approximate amount of $125,000; (d) potential rejection damages in excess of $4,637,000 plus

additional rejection damages potentially worth $10,000,000; and, (e) a claim for $6,380,000 for

sales by AGI to B&C within the twenty days prior to the petition date (the "Twenty-day Sales

Claim").  *See id*. at 875.  Prior to the bankruptcy, B&C and AGI were parties to a Master Supply

Agreement which required AGI to sell goods to B&C on terms no less favorable than to any

other of AGI's shareholders or customers.  Shortly after B&C filed its bankruptcy case, AGI

filed a motion for allowance and payment of the Twenty-day Sales Claim pursuant to Section

503(b)(9).  B&C opposed the motion on four grounds.  First, debtor argued that the Twenty-day

Sales Claim was not entitled to administrative priority under Section 503(b)(9) because it was a

secured claim.  Second, debtor argued that since the Twenty-day Sales Claim was fully secured,

allowing payment to AGI of an administrative priority claim would be inequitable to other

creditors.  Third, B&C argued that it was entitled to setoff against the Twenty-day Sales Claim

its damage claims arising out of AGI's breach of the Master Supply Agreement for allegedly

selling goods to B&C at higher prices than AGI charged its other customers and for AGI's

alleged unlawful termination of a rebate program that had purportedly caused B&C significant

damages.  Finally, debtor argued that payment of the Twenty-day Sales Claim, if any, should be

deferred until confirmation of the plan.[8]  *See id*. at 876.  The bankruptcy court granted AGI's

motion for allowance of the Twenty-day Sales Claim as an administrative expense pursuant to

Section 503(b)(9) of the Bankruptcy Code and denied B&C's request for setoff.  In reaching its

decision, the bankruptcy court found that the plain meaning of Section 503(b)(9) was to allow

administrative priority regardless of security.  As to its refusal to permit B&C to setoff AGI's

503(b)(9) claim against B&C alleged pre-petition damages claims, the bankruptcy court held that

unsecured claims cannot be setoff against administrative priority claims and that B&C was

equitably estopped from asserting a setoff because it had ordered the goods from AGI while

contemplating its bankruptcy filing.  B&C timely appealed the bankruptcy court's decision to the

Bankruptcy Appellate Panel of the Ninth Circuit ("Ninth Circuit BAP").  *See id*.

Acknowledging the matter as a case of first impression, the Ninth Circuit BAP focused

the appeal on the following two issues: (a) whether a secured claim is entitled to administrative

priority under Section 503(b)(9) of the Bankruptcy Code; and, (b) whether the bankruptcy court

properly denied B&C's request for setoff.  See id. at 874-77.  As to the first issue, the Ninth

Circuit held that based upon the plain meaning of Section 503(b)(9) and the lack of Congress's

insertion of the word "unsecured" into the statute, "all claim arising from twenty-day sales are

entitled to administrative priority."  *Id*. at 878.  As to the second issue, the Ninth Circuit

conducted its analysis concerning the debtor's proposed setoff by examining Section 553, which

as set forth above pertains only to a creditor's right of setoff, against AGI's 503(b)(9) claim.

Under this analysis, the Ninth Circuit BAP reasoned as follows:

---

[8] As explained by the Ninth Circuit BAP, AGI subsequently withdrew its demand for immediate payment resulting in the bankruptcy court's determination of only the remaining three arguments posed by the debtor.  *In re Brown & Coles Stores, LLC*, 375 B.R. at 876.

> The bankruptcy court ruled as a matter of law that 'I don't see how you can setoff unsecured matters against a priority administrative expense claim.' While this principle undoubtedly seemed elementary and beyond dispute to the bankruptcy court, it did not take into consideration the uniqueness of § 503(b)(9) and the treatment Congress has given to twenty-day sales claims. Unlike all of the other subsections of § 503, subsection (b)(9) applies to prepetition debt. Congress has simply moved those claims up higher on the priority ladder.  All of the other subsections of § 503 create administrative priority for postpetition debt.  This is a crucial difference when applying the setoff provisions of the Bankruptcy Code.

*Id*. at 878-79.  By framing the issue in this manner, the Ninth Circuit BAP missed the mark.

Presumably aware that setoff is permitted under Section 553 of the Bankruptcy Code where there is mutuality of pre-petition debts, the Ninth Circuit BAP adopted this approach under the erroneous view that AGI's 503(b)(9) claim, elevated by operation on that statute to an administrative priority expense, remained for all purposes a pre-petition claim subject to "the provisions of § 553(a) which provide for the setoff of mutual debts which arise before bankruptcy [including] twenty-day sales claims, which by definition arise prepetition."  *Id*. at 879.  Despite the fact that the Debtors recognize in the Objection the case law makes it clear that Section 553 of the Bankruptcy Code neither permits nor may be relied upon by a debtor to assert a claim for setoff on behalf of the bankruptcy estate against a creditor's claim, they rely upon a decision that erroneously employs Section 553 of the Bankruptcy Code to establish the Debtors' rights for that purpose.[9]

It is extremely important for this Court to be aware, however, that the Ninth Circuit BAP made clear that the consideration of B&C's rights to setoff were premature because "B&C [had] not established that a right of setoff exists."  *Id*. at 880.  For this reason, the Ninth Circuit remanded the case back to the bankruptcy court for a determination as to whether B&C's

---

[9] Nowhere in the *Brown & Cole Stores* case does the Ninth Circuit BAP mention Section 558 of the Bankruptcy Code much less conduct any analysis as to that statute's applicability to administrative expense priority claims under Section 503(b)(9).

allegations of damages constitute an actual debt owed by AGI to the debtor.  Indeed, the Ninth

Circuit held:

> At this point, the record has not established the existence of such a debt.
> The contentions by B & C that AGI breached the pricing agreement and
> wrongfully terminated the rebate program are nothing more than
> contentions alluded to in the papers and in the arguments of counsel. In
> fact, no contested matter or adversary proceeding has been commenced
> against AGI to determine the parties' rights under the Master Supply
> Agreement, its pricing provisions or the rebate program. Thus, at
> present, there really is nothing for B & C to set off against the various
> AGI claims.  If and when such claims are asserted in proper form and
> adjudicated by the bankruptcy court, then any and all defenses, setoffs,
> and counterclaims can be considered.

*Id*. at 880-81.  Accordingly, the Ninth Circuit made clear that the appropriate time for a

bankruptcy court to consider a debtor's alleged right to setoff against an administrative expense

under Section 503(b)(9) is only after the debtor has properly asserted and established the

existence of a debt owing from the creditor.

      The remaining cases relied upon by the Debtors are distinguishable from the issues raised

by the Debtors in the Objection.  For example, the Debtors refer the Court to the decision of *In re*

*ABC-NACO, Inc.*, 294 B.R. 832 (Bankr. N.D.Ill. 2003) for the Debtors' proposition that "the

overwhelming weight of authority supports the conclusion that a debtor in bankruptcy is not

limited to setting off pre-petition claims against pre-petition receivables or post-petition claims

against post-petition receivables."  Objection at ¶ 17.  Debtors' assertion, however, does not

accurately summarize the bankruptcy court's decision in *In re ABC-NACO, Inc.* or applicable

case law.  In the *ABC-NACO* case, which was decided prior to Congress's insertion of Section

503(b)(9) into Bankruptcy Code under BAPCPA, the court merely considered whether a debtor

*may assert* a counterclaim for outstanding pre-petition debts owed to the debtors against a

creditor's administrative expense claim under Section 503(b) for post-petition goods purchased

by the debtor.  Unlike the facts of this case, the administrative expense priority at issue in *In re ABC-NACO, Inc.* is not one obtained by the creditor under Section 503(b)(9) of the Bankruptcy Code.  Furthermore, unlike the facts of this case, the creditor in *In re ABC-NACO, Inc.* did not also hold a pre-petition general unsecured claim against the debtor.  The creditor objected, in part, arguing that no mutuality between the debts existed in accordance with Section 553 of the Bankruptcy Code.  The court held that "to the extent the right to file a counterclaim is seen as a 'defense' to a creditor's claim, that right is expressly preserved by § 558 of the Bankruptcy Code."  *In re ABC-NACO, Inc.*, 294 B.R. at 838.  Similar to the Ninth Circuit BAP's ruling in the *Brown & Cole Stores* case, the court's decision in *In re ABC-NACO, Inc.* merely stands for the proposition that the appropriate time for a bankruptcy court to consider a debtor's alleged right to setoff against an administrative expense is only after the debtor has properly asserted and established the existence of a debt owing from the creditor.  "[T]he Court rules on an interim basis that the claim asserted by the debtor . . . in response to the [creditor's] request for an administrative payment is a claim that may properly be heard and determined by this Court."  *Id.* at 840.  Accordingly, Debtors are again relying upon a case that fails to provide any substantively analysis of the issues raised or the relief sought by the Debtors in the Objection.[10]

As noted herein, there is no published authority examining much less providing for a debtor's setoff under Section 558 of the Bankruptcy Code against a creditor's administrative expense under Section 503(b)(9) of the Bankruptcy Code.  The faulty reasoning utilized by the Ninth Circuit BAP in holding that a debtor may be allowed to setoff a pre-petition claim against

---

[10] For similar reasons, the remaining cases relied upon Debtors are also distinguishable from the facts currently present in this case.  For example, the court's decision in *In re PSA, Inc.*, 277 B.R. 51 (Bankr. Del. 2002) is another case relied upon by the Debtors that was decided prior to Congress's insertion of Section 503(b)(9) into Bankruptcy Code under BAPCPA.  Further, unlike the facts of this case, the creditor in *In re PSA, Inc.* did not also hold a pre-petition general unsecured claim against the debtor.  As to *In re Women First Healthcare*, 345 B.R. 131 (Bankr. Del. 2006) the facts of that case concerned the setoff of exclusively pre-petition debts between the parties.  Accordingly, the court provided no discussion or analysis concerning a debtor's rights to setoff in the context of Section 503(b)(9).

a creditor's 503(b)(9) administrative expense priority stands contrary to existing analogous authority.  Indeed, the court in *In re Plastech Engineered Products, Inc.*, 394 B.R. 147 (Bankr. E.D.MI. 2008), expressly refuted the Ninth Circuit BAP's rationale that despite the elevation of a pre-petition claim to an administrative expense priority under Section 503(b)(9), the claim remains for all other purposes a pre-petition claim that is subject to the same disallowance and/or modification provisions that are applicable to all other unsecured pre-petition claims under the Bankruptcy Code.  In *Plastech*, the Court considered whether Section 502(d) of the Bankruptcy Code, a provision allowing the disallowance and/or reduction of a creditor's unsecured pre-petition claim pending the creditor's return to the estate of an avoidable transfer for which the creditor has been deemed liable, may be used by the debtor to disallow the creditor's administrative expense priority under Section 503(b)(9) of the Bankruptcy Code.  After extensive analysis and examination of the reasoning employed by the Ninth Circuit BAP in the *Brown & Cole Stores* case, the court in *Plastech* held: "[t]he distinction urged by the Debtor-- i.e., that § 503(b)9's are pre-petition in nature--although factually true, is not a distinction that makes any difference under § 503(b), or is even recognized by § 503(b). Nor is there any legislative history to suggest that Congress intended there to be such a distinction."  *In re Plastech Engineered Products, Inc.*, 394 B.R. at 163.  From this analysis, the court in *Plastech* further reasoned that Congress "took this 'special class' of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses.  By doing so, Congress placed § 503(b)(9) administrative expenses beyond the reach of § 502(d)."  *Id*. at 164.

Similar to the court's rejection of the debtor's efforts in *Plastech* to setoff a 503(b)(9) administrative expense priority against alleged pre-petition obligations of the creditor to the

debtor, the court in *In re Genuity, Inc.*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005) likewise rejected the

debtor's efforts to setoff the debtor's pre-petition security deposits against the debtor's cure

obligations under Section 365 of the Bankruptcy Code.  In this case, debtors sought to offset

their cure obligations for the assumption and assignment of certain telecommunications

agreements under Section 365(f) of the Bankruptcy Code against pre-petition deposits paid by

the debtors to secure payment of their pre-petition obligations under the agreements.  *See id*. at

82.  The Court refused the debtors' attempt to offset the cure obligations against the deposits

holding that "[t]he Debtors' post-petition assumption of their executory contracts *transformed*

the pre-petition claims of the Carriers once not cured, into new claims arising post-petition.

Under Code § 365, the Debtors are required to pay, or provide adequate protection, for these

obligations."  *Id*. at 84.  (Emphasis added).  The court continued:

> Moreover, the court has found that none of the cases it has reviewed,
> whether cited by the parties or through its own research, addresses what
> this court deems a crucial factor in denying the pre/post-petition
> crossover of claims which the Debtors propose: that is that pre-petition
> dollars and post-petition dollars are considered differently under the
> Code. Under their plans of reorganization, debtors routinely pay
> fractional dividends, percentages on the dollar, to their pre-petition
> unsecured creditors. Post-petition administrative expenses are paid in
> full, 100¢ on the dollar. It is not fair, nor is it equitable, to allow the
> satisfaction of post-petition obligations with fractional dollars, rather
> than whole ones.

*Id*.  Accordingly, the court recognized the elevated administrative expense priority status

provided under the Bankruptcy Code to the pre-petition defaults that constituted the creditor's

post-petition cure claim precluded the debtors' attempt to setoff its pre-petition claim.  *See also*

*In re TSLC I, Inc.*, 332 B.R. 476, 479 (Bankr. M.D.Fla. 2005) (wherein the court rejected the

debtor's reliance upon *In re PSA, Inc.* as authority under Section 558 of the Bankruptcy Code for

offsetting debtor's prepetition claim against the creditor's post-petition administrative expense

priority and held that where a creditor holds both a pre-petition unsecured claim and an administrative expense priority, the debtor must first setoff any claim against the creditor's unsecured pre-petition claim); *In re Lawson*, 187 B.R. 6, 7 (Bankr. D. Idaho 1995) (holding that in accordance with the priority scheme under Section 507 of the Bankruptcy Code, the debtor must first offset against its creditor's general unsecured claims before offsetting against any priority claim held by the creditor); *Official Labor Creditors' Comm. v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.)*, 80 B.R. 544, 549 (S.D. Fla. 1987); *In re North Atl. And Gulf Steamship Co.*, 204 F. Supp. 899, 911 (S.D.N.Y. 1962) (making clear that permitting setoff against a creditor's secured claims rather than its unsecured claims would defeat the very purpose of the Bankruptcy Act, and further holding that a creditor may setoff its claim "against whatever general unsecured claims that [the creditor] may have against the debtor"); *In re Braniff Airways, Inc.*, 42 B.R. 443, 452 (Bankr. N.D.Tex. 194) (holding that "[i]t would completely defeat this statutory scheme if a debtor were allowed to setoff its claims against the creditor, *first* against the creditors' priority claims and *secondly* against the creditors' general non-priority claims") (emphasis in original).

WHEREFORE, Claimant requests that the Court:

1. Dismiss the Debtors' Objection with prejudice; and

2. Grant Claimant such relief as is just and equitable.

Dated: November 3, 2009        Law Firm Of Russell R. Johnson III, PLC

                                 */s/  Russell R. Johnson III*
                                Russell R. Johnson III, Esq. (VSB No. 31468)
                                John M. Merritt, Esq.
                                2258 Wheatlands Drive
                                Manakin-Sabot, VA  23103
                                Phone: (804) 749-8861
                                Facsimile: (804) 749-8862
                                E-mail: RussJ4478@aol.com

                                And

                                Samuel S. Oh, Esq.
                                LIM, RUGER & KIM, LLP
                                1055 West Seventh Street, Suite 2800
                                Los Angeles, CA  90017
                                Phone: (213) 955-9500
                                Facsimile: (213) 955-9511
                                E-mail: sam.oh@limruger.com

                                *Co-Counsel for Claimant, Averatec/Trigem USA, Inc.*

## CERTIFICATE OF SERVICE

I, Russell Johnson, III, hereby certify that, on November 3, 2009, I caused a true and correct copy of the within and foregoing *Response Of Averatec/Trigem USA, Inc. To Debtors' Forty-Eighth Omnibus Objection To Certain Administrative Expenses And 503 (b)(9) Claims And Motion For (I) Authority To Setoff Against Such Expenses And Claims And (II) A Waiver Of The Requirement That The First Hearing Of Any Response Proceed As A Status Conference* along with all accompanying Exhibits referenced therein and attached thereto to be served via the Court's ECF system and via email pursuant to Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notices, Case Management, and Administrative Procedures by emailing the Objection to:

circuitcityservice@mcquirewoods.com and proiect.circuitcity@skadden.com.

And by further e-mailing the Objection directly to the parties listed below:

**Counsel for the Debtors**:
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
E-mail: gregg.galardi@skadden.com; Ian.Fredericks@skadden.com

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, VA  23219
E-mail: dhayes@mcguirewoods.com; dfoley@mcguirewoods.com

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL  60606
E-mail: chris.dickerson@skadden.com


**Office of the United States Trustee**:
Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA  23219
E-mail: Robert.B.Van.Arsdale@usdoj.gov


**Counsel to Official Committee of Unsecured Creditors**:
Brad R. Godshall, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd, 11th Floor
Los Angeles, CA  90067-4100
E-mail: bgodshall@pszjlaw.com


       _/s/  Russell R. Johnson III_
      Russell R. Johnson III