DAVID M. STERN (CA State Bar No. 67697),
MICHAEL L. TUCHIN (CA State Bar No. 150375), and
KORIN A. ELLIOTT (CA State Bar No. 260363)
KLEE, TUCHIN, BOGDANOFF & STERN LLP[1]
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

   -and-

WILLIAM A. BROSCIOUS (VA State Bar No. 27436)
KEPLEY BROSCIOUS & BIGGS, PLC
2211 Pump Road
Richmond, Virginia  23233
Telephone:    (804)741-0400, ext. 202

Counsel for Claimant (Claim Nos. 1009, 9681)
PARAMOUNT HOME ENTERTAINMENT INC.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| In re | Case No.: 08-35653-KRH |
|---|---|
| | (Jointly Administered) |
| CIRCUIT CITY STORES, INC., *et al.*, | |
| | Chapter 11 |
| Debtors.[2] | |

**RESPONSE OF PARAMOUNT HOME ENTERTAINMENT INC.**
**TO DEBTORS' (I) FIFTY-SECOND OMNIBUS OBJECTION TO CERTAIN 503(B)(9)**
**CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE**
**FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**
**AND THE DEBTORS' BRIEF IN SUPPORT THEREOF**

---

[1]   Orders granting *pro hac vice* admission for Messrs. Stern and Tuchin and Ms. Elliott (f/k/a Korin A. Avelino) were entered by the Court on July 24, 2009.  See Docket Nos. 4279, 4280, and 4281.

[2]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................... 1

II.    ARGUMENT ...................................................................................................... 4

    A.    Introduction ................................................................................................ 4

    B.    Section 502(d) does not apply to disallow or reduce Section 503(b)
        administrative expenses ............................................................................. 5

    C.    Section 503(b)(9) claims are no exception to the general rule .............................. 8

    D.    Even if the Court determined that section 502(d) were applicable, the
        Debtors have not satisfied the requirements of that section ................................. 10

    E.    Should the Court temporarily reduce Paramount's 503(b)(9) Claim, it must
        require the Debtors to protect Paramount from a permanent denial of
        rights .......................................................................................................... 15

III.   OTHER MATTERS ............................................................................................. 16

IV.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

In re Ames Dept. Stores, Inc.,
    2009 U.S. App. LEXIS 20764 (2d Cir. Sept. 18, 2009) ........................................5, 6, 7, 9, 15

Brown v. Griggsville Cmty. Unit Sch. Dist. No. 4,
    12 F.3d 681 (7th Cir. 1993) ...............................................................................................6

Cohen v. Tic Fin. Sys. (In re Ampace Corp.),
    279 B.R. 145 (Bankr. D. Del. 2002) .................................................................................11

Discovery House, Inc. v. Consol. City of Indianapolis,
    43 F. Supp. 2d 997 (N.D. Ind. 1999) ..................................................................................6

Durham v. SMI Indus. Corp.,
    882 F.2d 881 (4th Cir. 1989) ..............................................................................................7

Everett v. Judson,
    228 U.S. 474 (1913) ...........................................................................................................14

Matter of Eye Contact, Inc.,
    97 B.R. 990 (Bankr. W.D. Wis. 1989) ..............................................................................11

Gold v. Eccleston (In re Dornier Aviation (N. Am.), Inc.),
    320 B.R. 831 (E.D. Va. 2005) ...........................................................................................10

Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.),
    412 F.3d 545 (4th Cir. 2005) .............................................................................................13

Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.),
    319 B.R. 324 (Bankr. D. Conn. 2005) ..............................................................................11

In re Lids Corp.,
    260 B.R. 680 (Bankr. D. Del. 2001) .................................................................................11

Lugar v. Edmondson Oil Co.,
    457 U.S. 922 (1982) ...........................................................................................................14

In re New York City Shoes, Inc.,
    880 F.2d 679 (3d Cir. 1989) ..............................................................................................12

Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.),
    247 B.R. 633 (Bankr. W.D. Va. 2000) ..............................................................................11

Nat'l Indep. Meat Packers Assn. v. U. S. Envtl. Prot. Agency,
    566 F.2d 41 (8th Cir. 1977) ...................................................................................6

Old Stone Bank v. Tycon I Bldg. Ltd. P'ship,
    946 F.2d 271 (4th Cir. 1991) ................................................................................6

In re Phoenix Rest. Group,
    2004 Bankr. LEXIS 2186 (Bankr. M.D. Tenn. Dec. 16, 2004)................................7

In re Plastech Engineered Prods., Inc.,
    394 B.R. 147 (Bankr. E.D. Mich. 2008) ..............................................................8, 9

In re Roberds, Inc.,
    315 B.R. 443 (Bankr. S.D. Ohio 2004)...................................................................7

Seta Corp. of Boca, Inc. v. Atl. Computer Sys. (In re Atl. Computer Sys.),
    173 B.R. 858 (S.D.N.Y. 1994).............................................................................11

Sexton v. Dreyfus,
    219 U.S. 339 (1911).......................................................................................13, 14

Sheet Metal Workers Int'l Assn. v. Dane Sheet Metal, Inc.,
    932 F.2d 578 (6th Cir. 1991) ................................................................................6

In re TI Acquisition, LLC,
    410 B.R. 742 (Bankr. N.D. Ga. 2009) .............................................................7, 8, 9

In re USA Labs, Inc.,
    2006 Bankr. LEXIS 2394 (Bankr. S.D. Fla. Apr. 13, 2006) ...................................7

Ward v. United States, Dep't of Labor,
    726 F.2d 516 (9th Cir. 1984) ................................................................................6

### STATE CASES

M. W. Kellogg Co. v. Concrete Accessories Corp.,
    157 W. Va. 763 (W. Va. 1974) ............................................................................14

## FEDERAL STATUTES

11 U.S.C. § 101 ...................................................................................................................1

11 U.S.C. § 501 ...........................................................................................................1, 5, 7, 8

11 U.S.C. § 502 ..............................................................4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17

11 U.S.C. § 503 ...................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17

11 U.S.C. § 547 ...................................................................4, 10, 12, 13, 14, 17

## STATE STATUTES

Va. Code Ann. § 8.01-533 ..............................................................................................14

Va. Code Ann. § 8.01-537.1(C) ....................................................................................16

## MISCELLANEOUS AUTHORITIES

5 COLLIER ON BANKRUPTCY ¶ 502.05 (15th Ed. rev. 2008) .........................................10

2A MICHIE'S JURISPRUDENCE OF VIRGINIA & WEST VIRGINIA, *Attachment and Garnishment* § 10 ....................................................................................................14

# I.
# BACKGROUND

On November 10, 2008 (the "Petition Date"), the debtors in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in this Court.

On November 12, 2008, the Court entered the *Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007* [Docket No. 107] (the "503(b)(9) Bar Date Order") setting December 19, 2008 as the deadline to file claims under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Bar Date").

In the ordinary course of business, prior to the Petition Date, Paramount Home Entertainment Inc. ("Paramount") regularly received orders from and shipped goods to the Debtors.  Because of this regular business practice, on the Petition Date, the Debtors had received many goods from Paramount for which they had not yet paid, resulting in a substantial pre-petition debt owing to Paramount, including amounts owed for goods received by the Debtors within twenty (20) days of the Petition Date.

Paramount timely filed its claim arising under section 503(b)(9) of the Bankruptcy Code, Claim No. 1009, asserting a priority claim in the amount of $3,201,013.37 (the "Paramount 503(b)(9) Claim"),[3] attached hereto as Exhibit 1.[4]

---

[3]    Although there are legally significant statutory differences between claims under sections 501 and 502 and rights to payment under section 503, Paramount will not attempt to tie itself and the Court in semantic knots; instead it will refer, in the interest of linguistic simplicity, to a right to payment under section 503(b)(9) as a claim.

On June 23, 2009, the Debtors filed the *Debtors' Twentieth Omnibus Objection to Claims (Reclassification to Unsecured Claims of Certain Claims Filed as 503(b)(9) Claims for Goods Received by the Debtors Not Within Twenty Days of the Commencement of the Cases)* [Docket No. 3704] (the "503(b)(9) Objection").   In the 503(b)(9) Objection, the Debtors sought to reclassify $67,378.80 of Paramount's 503(b)(9) Claim as a general unsecured, non-priority claim.

On July 16, 2009, Paramount filed the *Response of Paramount Home Entertainment Inc. to Debtors' Twentieth Omnibus Objection to Claims (Reclassification to Unsecured Claims of Certain Claims Filed as 503(B)(9) Claims for Goods Received by the Debtors Not Within Twenty Days of the Commencement of the Case)* [Docket No. 4155] (the "Response to 20th Objection").   In the Response to 20th Objection, Paramount agreed that the correct amount of the Paramount 503(b)(9) Claim was $3,133,634.57, but also stated that the reclassification of $67,378.80 of the 503(b)(9) Claim should not result in the denial of Paramount's other rights to the $67,378.30, including as a reclaiming vendor.

On September 29, 2009, the Debtors filed the *First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims* [Docket No. 5124] (the "Plan").   Among other things, the Plan states that it will establish a Liquidating Trust on the effective date of the Plan, which will be comprised of all of the Debtors' property and assets.   *See* Plan, at Section V.E.   The Plan promises to pay (out of the Liquidating Trust) the holders of allowed administrative claims, including

---

[4]   When filed and served on December 19, 2008, the Paramount 503(b)(9) Claim included supporting documentation, which satisfied the Court's requirements for establishing a valid 503(b)(9) claim. Because these documents are voluminous, they are not included, but are available upon request.

Bankruptcy Code section 503(b)(9) claims, in cash in full no later than ninety (90) days after such claim is allowed.  *Id.*, Sections III.A and V.E.

On October 13, 2009, the Debtors filed the *Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference* [Docket No. 5216] (the "Objection") and the *Debtors' Brief in Support of Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference* [Docket No. 5217] (the "Debtors' Brief").

In the Objection, the Debtors seek entry of an order temporarily disallowing $335,904.00 of the Paramount 503(b)(9) Claim, thereby temporarily reducing the Paramount 503(b)(9) Claim from $3,133,634.57 to $2,797,730.57.  *See* Objection, ¶ 9 and Exh. C.   Although formally reserving their rights to otherwise object to the Paramount 503(b)(9) Claim, Objection, ¶¶ 13-14, the Debtors base their request solely and exclusively on their contention that Paramount received a preferential transfer of $335,904.00.  *See id.*, at 5.   Put more positively, the Debtors effectively concede, for purposes of the present Objection, that Paramount's 503(b)(9) Claim is allowable and that, except for Paramount's alleged receipt of a preference, it should be paid in full.

In this Response, Paramount opposes the Objection to the extent that it seeks to temporarily disallow any part of the Paramount 503(b)(9) Claim and requests the Objection be overruled.

# II.
## ARGUMENT

### A.    Introduction.

By their Objection, the Debtors seek to temporarily disallow and defer payment of $335,904.00 (of a total of $3,133,634.57) owed to Paramount under the Paramount 503(b)(9) Claim.  The sole basis for this temporary disallowance and deferral of payment is the Debtors' contention  – unsupported by details, let alone evidence – that Paramount received an avoidable preferential transfer of the same $335,904.00.  To prevail in the Objection, the Debtors need to demonstrate all of the following:

1.    Applicability of Section 502(d).  The Debtors must first establish that an administrative expense arising under Bankruptcy Code section 503(b)(9) is subject to disallowance under section 502(d) of the Bankruptcy Code.  This is a legal issue, as is recognized in sections I and II of the Debtors' Brief, but the Debtors' analysis of the issue and the applicable law is flawed and incomplete.  The case law overwhelmingly holds that section 502(d) does not apply to a right to any claim that arises under section 503(b), *see* Part II.B, including one founded upon section 503(b)(9).  *See* II.C.

2.    Prerequisites to invocation of Section 502(d).  Assuming *arguendo* that the Debtors are able to persuade this Court that section 502(d) is legally applicable to section 503(b)(9) administrative expenses, that does not end the matter.  The Debtors must still satisfy the requirements of Bankruptcy Code section 502(d) by showing that Paramount is "an entity from which property is recoverable" or "a transferee of a transfer avoidable" under Bankruptcy Code section 547.  *See* 11 U.S.C. § 502(d).  Courts are split on whether section 502(d) requires the Debtors already have an avoidance judgment or whether they can obtain temporary disallowance (or reduction) by showing, upon admissible evidence, that they are

likely to prevail in an avoidance proceeding.  These Debtors, however, have surmounted neither hurdle.  *See* Part II.D.

        3.      <u>Avoidance of Prejudice to Paramount.</u>  Finally, because what the Debtors seek is effectively a prejudgment attachment of Paramount's property – to assure the estate's recovery if it prevails on a preference claim against Paramount – it ought provide Paramount the same protection as would any other attaching plaintiff to assure that, via temporary disallowance, Paramount's rights under the Plan will not be permanently prejudiced if the Debtors are unsuccessful in establishing Paramount's receipt of a preference.  The Debtors can satisfy this requirement by a bond, escrow or the equivalent, so that a wrongful prejudgment attachment does not become a permanent denial of Paramount's rights.  *See* Part II.E.

**B.**      **Section 502(d) does not apply to disallow or reduce Section 503(b) administrative expenses.**

The Debtors recognize that they face a threshold impediment in applying section 502(d) to section 503(b)(9) claims.  The only circuit level decision to determine the question of whether section 502(d) applies to administrative claims answered in the negative.  <u>In re Ames Dept. Stores, Inc.</u>, 2009 U.S. App. LEXIS 20764, *16-17 (2d Cir. Sept. 18, 2009).[5]  In *Ames*, the Second Circuit found that the structure and context of section 502(d) suggested Congress's intent not to apply the statute to section 503(b) administrative expenses.  *Id.* at *18.  The court also noted that the fact that the filing and allowance of section 503(b) administrative expenses are both governed by section 503, rather than by sections 501 and 502, suggests that section 502(d) should not be extended to section 503(b) expenses.  *Id.* at *18-22.  Further, the court was "not persuaded that the legislative history to section 502(d) indicates a Congressional intent to apply that section to

---

[5]    A copy of this case is attached as <u>Exhibit 2</u>.

administrative expenses pursuant to section 503" and found cases deciding whether section 57g of the Bankruptcy Act applied to administrative expenses to be "weak authority" on the question. *Id.* at \*26 n.6.[6]  Therefore, the court held that section 502(d) does not apply to administrative expenses arising under section 503(b). *Id.* at \*29.

Although *Ames* is not binding in this Circuit, the Fourth Circuit has long recognized the undesirability of creating "a gratuitous inter-circuit conflict." Old Stone Bank v. Tycon I Bldg. Ltd. Partnership, 946 F.2d 271, 273 (4th Cir. 1991).  This protocol is, actually, a universal principle of federal jurisprudence.  *See* Brown v. Griggsville Community Unit Sch. Dist. No. 4, 12 F.3d 681, 684 (7th Cir. 1993) ("our doubts are not such as impel us to create an inter-circuit conflict over it"); Sheet Metal Workers Int'l Assn. v. Dane Sheet Metal, Inc., 932 F.2d 578, 582 (6th Cir. 1991) ("we should be reluctant to create an inter-circuit conflict where none now exists"); Ward v. United States, Dep't of Labor, 726 F.2d 516, 518 (9th Cir. 1984) ("This is an area of federal law which calls for uniformity . . . we see no reason to create an inter-circuit conflict."); Nat'l Indep. Meat Packers Assn. v. U. S. Envtl. Prot. Agency, 566 F.2d 41, 43 (8th Cir. 1977) ("The interest in avoiding inter-circuit conflicts is especially strong when the potentially conflicting decisions would present different interpretations of federal law intended to be uniformly applied on a nationwide scale.").  This prudential rule applies not only to courts of appeal but also to lower courts. *See* Discovery House, Inc. v. Consol. City of Indianapolis, 43 F. Supp. 2d 997, 1002 (N.D. Ind. 1999) ("Although a Second Circuit decision is not binding on this court and so not entitled to automatic deference, it should be followed if possible to avoid unnecessary inter-circuit conflict.").

---

[6]  Notably, the Debtors make these same arguments and cite the same Bankruptcy Act cases.  *See* Debtors' Brief, at 15-18.

Significantly, *Ames* is no outlier.  It is consistent with the vast majority of lower courts that have addressed the issue.  2009 U.S. App. LEXIS 20764, *15-17 (discussing both lines of authority, with those consistent with *Ames*, and Paramount's argument, being substantially more numerous than those inconsistent with *Ames*).   And *Ames's* compendium of lower court cases holding that section 502(d) cannot be used against a section 503(b) claim was not exhaustive.  *See* In re TI Acquisition, LLC, 410 B.R. 742, 748-51 (Bankr. N.D. Ga. 2009); In re USA Labs, Inc., 2006 Bankr. LEXIS 2394, *4 (Bankr. S.D. Fla. Apr. 13, 2006);[7] In re Phoenix Restaurant Group, 2004 Bankr. LEXIS 2186, *62 (Bankr. M.D. Tenn. Dec. 16, 2004);[8] In re Roberds, Inc., 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004).

The rationale for all these cases, as noted in *Ames*, is that the "structure and context of section 502(d) suggests that Congress intended . . . to differentiate between claims and administrative expenses, and not to apply [section 502(d)] to the latter. Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503."  2009 U.S. App. LEXIS 20764, *18.

This rationale is notable because it echoes the holding in Durham v. SMI Industries Corp., 882 F.2d 881 (4th Cir. 1989).  In *Durham*, the Fourth Circuit similarly relied on the structure of the Bankruptcy Code to hold that "[s]ince a court can only disallow a claim after one has been filed under 11 U.S.C.A. § 501(a) . . . , 'claim' in section 502(d) includes only [a claim] for which a proof has been filed . . .  Section 502(d) . . . does not preclude a defendant in an adversary proceeding from asserting the

---

[7]    A copy of this case is attached as Exhibit 3.

[8]    A copy of this case is attached as Exhibit 4.

affirmative defense of pre-petition setoff merely because the trustee has asserted that the defendant has failed to disgorge an unrelated preference." *Id.* at 883.

In sum, the only circuit level decision favors Paramount. The overwhelming majority of lower court decisions do as well. And a court of appeals decision in this Circuit has previously endorsed, albeit in a slightly different context, the logical and structural rationales for these decisions. This Court would have to stake out a position at odds with all these precedents to uphold the Debtors' Objection and that is a path, Paramount respectfully suggests, this Court ought not take.

### C.    Section 503(b)(9) claims are no exception to the general rule.

*Ames* cited with approval and relied upon, *inter alia*, In re Plastech Engineered Products, Inc., 394 B.R. 147 (Bankr. E.D. Mich. 2008), a case which held specifically that section 502(d) does not apply to section 503(b)(9) claims.[9] The court in *Plastech* relied on many of the cases cited above and in its analysis echoed the above-discussed rationale. *Id.* at 161- 63. In brief,[10] it was that section 502 applies to claims filed under section 501 and not under section 503; that section 503 contains its own procedure for filing and allowance that does not depend on and is not limited by sections 501 and 502; and that applying section 502(d) to section 503(b) results in the collision of two mandatory provisions (*i.e.* mandatory allowance under section 503 and mandatory disallowance under section 502(d)), causing an unacceptable, statutorily inconsistent result. And, of import here, the court in *Plastech* went on to specifically hold that

---

[9]    *Plastech* is one of two cases to face the question. The other is *TI Acquisition* and both come out the same way, holding "the language of § 502(d) does not imply or create a defense to a § 503(b)(9) claim." *TI Acquisition*, 410 B.R. at 750.

[10]    Judge Shefferly's six-part analysis is extremely detailed and may well prove to be the definitive statement on this issue. The brief summary here probably does not do it justice, but in the interests of economy, the full analysis is not here quoted.

expenses arising under section 503(b)(9) should not be distinguished from other section 503(b) administrative expenses, simply because (b)(9) is one of the few subsections that elevates prepetition claims to administrative expense priority. *Id.* at 163-64. Rather than representing Congressional error, this placement evidenced Congressional policy that would be negated by applying section 502(d) to section 503(b)(9) claims.

> Congress could have elevated the rights of this special class under § 507 while still recognizing their inherent nature as pre-petition claims subject to the claims allowance process for pre-petition claims under § 502. This would have also avoided the conflict between the mandatory allowance provision of § 503(b) and the mandatory disallowance provision of § 502(d) that would occur if the Court adopts the Debtor's position. But Congress did not do so. Instead, it took this "special class" of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses. By doing so, Congress placed § 503(b)(9) administrative expenses beyond the reach of § 502(d).

*Id.*

*Plastech* has not been rejected by any court and, as noted, was relied upon by the Second Circuit in *Ames*, 2009 U.S. App. LEXIS 20764, *16-17. More recently, Plastech was discussed, cited and approved by the Court in *TI Acquisition*. 410 B.R. at 749-50 (also summarizing and discussing the pertinent case law).

A lengthy portion of the Debtors' argument is devoted to proving that section 503(b)(9) administrative expenses are claims. *See* Debtors' Brief, at 6-14. But this argument does not achieve the result they intend. In *Plastech*, the court was unswayed by the same argument that section 503(b)(9) administrative expenses are really "claims" and responded that:

> "[E]xpenses" and "claims" are not mutually exclusive labels throughout all Chapters and sections of the Bankruptcy Code, in that several provisions sweep "administrative expenses" within the "claims" label. These references simply reflect that the Bankruptcy Code's definition of "claim" broadly includes any right to payment. They do not, however, override the more meaningful and specific utilization of the two distinct terms –

> "expense" and "claim" – within the subchapter in which both sections 502
> and 503 are located.

*Id.* at 159.

In short, overwhelming authority holds section 502(d) inapplicable to section 503(b) claims. The only two cases to address the precise issue of whether section 502(d) applies to section 503(b)(9) administrative expenses find no basis for a special exception, and indeed determined that such an exception was inappropriate and inconsistent with the Code's structure. As such, Paramount submits that the Debtors are simply wrong in asserting that the Paramount 503(b)(9) Claim can be disallowed, in whole or in part, temporarily or permanently, under section 502(d) of the Bankruptcy Code.

**D.      Even if the Court determined that section 502(d) were applicable, the Debtors have not satisfied the requirements of that section.**

Bankruptcy Code section 502(d) requires the court to disallow a claim of "any entity from which property *is* recoverable" or "that *is* a transferee of a transfer avoidable" under, *inter alia*, section 547 of the Bankruptcy Code until the transferred funds or goods are returned to the estate. *See* 11 U.S.C. § 502(d) (emphasis added). Although the statute does not expressly state what showing a trustee or debtor in possession must make with regards to the recoverability of the property or the avoidability of the transfer, to ensure that the section is not abused, courts have required that the initial disallowance be made by judicial determination. *See* 5 COLLIER ON BANKRUPTCY ¶ 502.05 (15th Ed. rev. 2008). Courts have differed with respect to what they require the trustee or debtor in possession to show regarding the transfer. Many courts, including a district court in this district, have found that the debtor must have obtained a judgment in the preference action before section 502(d) can apply. *See* Gold v. Eccleston (In re Dornier Aviation (N. Am.), Inc.), 320 B.R. 831, 836 (E.D. Va. 2005) (holding that section 502(d) applies "only when a fixed amount of adjudicated preference liability remains unpaid – not when an

avoidance action has not yet been litigated") (citations omitted); *see also* Cohen v. Tic Fin. Sys. (In re Ampace Corp.), 279 B.R. 145, 163 (Bankr. D. Del. 2002) ("[I]n the instant action, there is not yet a judicial order requiring the turnover of property.  As such, 502(d) has not yet become operative."); In re Lids Corp., 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable.") (citing Campbell v. United States (In re Davis), 889 F.2d 658, 662 (5th Cir. 1989)); Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.), 247 B.R. 633, 641 (Bankr. W.D. Va. 2000) (section 502(d) "would not appear applicable unless and until a finding under one of the cited sections had been made and then the claimant had failed to comply with such ruling.") (additional citations omitted).  This jurisprudence is consistent with the language of section 502(d) and its use of the definitive "is" rather than the conditional "may be."

Even if the Court were not to require the Debtors to obtain a judgment, courts acknowledging the split of authority on the matter note that at the other end of the spectrum, courts still require at least a *prima facie* showing of the preference to be made by the trustee or debtor in possession.  *See* Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.), 319 B.R. 324, 340 (Bankr. D. Conn. 2005) (comparing Seta Corp. of Boca, Inc. v. Atlantic Computer Systems (In re Atlantic Computer Systems), 173 B.R. 858, 862 (S.D.N.Y. 1994) ("[Bankruptcy Code § 502(d)] clearly envisions some sort of determination of the claimant's liability before its claims are disallowed . . . .") with Matter of Eye Contact, Inc., 97 B.R. 990, 992 (Bankr. W.D. Wis. 1989) ("The trustee need not commence an avoidance action to bring section 502(d) into play.  By making a *prima facie* showing that the transfer is voidable, he can assert the alleged preference defensively under section 502(d) to defeat a proof of claim.")).

The Debtors, however, merely assert, without more – and thus without creating the basis for any possible judicial determination or oversight – that their records show transfers were made on account of antecedent debts, within ninety days of the filing of the bankruptcy petition, that allowed Paramount and others to receive more than they would had the transfers not been made.  Debtors' Brief, at 3 and 30.  That this could be sufficient to establish a "colorable claim" – even if that were the standard – is almost silly.  The Objection and Debtors' Brief lack any information at all detailing the transfer that the Debtors allege was made to Paramount, including the date of the transfer.  The Debtors have not come close to showing that they will be successful in establishing the elements under Bankruptcy Code section 547(b).  All they are saying is "trust me."

The Debtors have similarly failed to show that Paramount, or any other alleged transferee, will not be able to establish a defense under Bankruptcy Code section 547(c).  The Debtors' assertion that the new value defense under section 547(c)(4) will not apply is unimpressive.  *See* Debtors' Brief, at 34.  The Debtors again primarily ask the Court to "trust me."  But again, it is impossible for the Court to make any determination of the probable outcome of the new value defense without any facts before it.

Notably, available authority suggests that the Debtors' argument that the new value defense would not apply because the new value might (or even certainly would) be entitled to section 503(b)(9) administrative claim status is wrong.  In In re New York City Shoes, Inc., 880 F.2d 679 (3d Cir. 1989), the Third Circuit Court of Appeals described the three keys to the "subsequent new value" defense set forth in section 547(c)(4) of the Bankruptcy Code:

> First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b).  Second, after receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis.  Third, the debtor must not have fully compensated the creditor for the "new value" **as of the date that it filed its bankruptcy petition**.

880 F.2d at 680 (emphasis added).

Although courts have often referred to the third prong as the "remains unpaid" requirement, many courts recognize that this shorthand means that "[a] creditor is entitled to offset preference payments through the extension of new value to the debtor so long as the *debtor* does not make an otherwise unavoidable transfer on account of the new value." Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.), 412 F.3d 545, 552 (4th Cir. 2005) (emphasis added); *see also* 11 U.S.C. § 547(c)(4)(B) ("on account of which new value the *debtor* did not make an otherwise unavoidable transfer . . .") (emphasis added).

The Debtors suggest that the new value defense cannot be satisfied by section 503(b)(9) administrative claimants because they are entitled to receive full payment on account of their 503(b)(9) administrative expenses pursuant to and after the effective date of the Plan.   However, what the Debtors fail to recognize is that payment after the petition date by the Debtors' estate cannot negate the third element of the "subsequent new value" defense, which by its own terms requires that the transfer on account of the new value be made by the "debtor" and which courts have required to be made prior to the petition date.

Practically speaking, claimants routinely receive distributions on allowed claims – general unsecured claims as well as those entitled to priority – after confirmation of the plan of reorganization in the case.   The potential future payment that claimants may eventually receive is never relevant in determining whether they have extended new value sufficient to establish the defense in section 547(c)(4).   This must be the case because of the fundamental principle of bankruptcy law that the date on which the bankruptcy petition is filed in a case is the date at which "everything stops," *see* Sexton v. Dreyfus, 219 U.S. 339, 344 (1911), and is the "moment the creditors acquire a right in

rem against the assets" of the estate.  *Id.* at 345; *see also* <u>Everett v. Judson</u>, 228 U.S. 474, 479 (1913) (holding that the petition date is the "line of cleavage").   In this case, Paramount did not receive payment from the Debtors prior to the Petition Date on account of any of the goods that are the subject of the Paramount 503(b)(9) Claim and, therefore, Paramount will likely be able to satisfy Bankruptcy Code section 547(c)(4).

Finally, the Debtors argue that even if Bankruptcy Code section 502(d) does not apply, they should be granted the relief they request.  Debtors' Brief, at 36.  In essence, what the Debtors are attempting to achieve through their proposed "temporary disallowance" is really the equivalent of a prejudgment attachment.  Under Virginia state law, to secure a prejudgment attachment, the claim must be one upon which an attachment may issue.  Va. Code Ann. § 8.01-533.  "A contingent debt, though arising out of contract, can not be garnisheed, as it would be unjust to the garnishee to render a judgment against him on a contract when the amount apparently due, according to the terms of the contract, may be extinguished by subsequent events."  <u>M. W. Kellogg Co. v. Concrete Accessories Corp.</u>, 157 W. Va. 763, 770 (W. Va. 1974).[11]   Moreover, as noted below, *see* note 12 & accompanying text, there are a variety of protections afforded a party subject to attachment, including a bond, and the Debtors have not offered to provide those protections.

Permitting prejudgment attachment here, where there is not yet even a complaint, let alone some showing coupled with a judicial determination that a debt is due and not subject to defenses, raises due process concerns.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 927-28 (1982).

---

[11]   Citation to West Virginia precedent is appropriate because the "grounds of attachment … are substantially the same in Virginia and West Virginia." 2A MICHIE'S JURISPRUDENCE OF VIRGINIA & WEST VIRGINIA, *Attachment and Garnishment* § 10.

To summarize, the Debtors fall woefully short of demonstrating an entitlement to deploy section 502(d) – even if applicable – as they have not even filed a complaint, let alone made an evidentiary showing or obtained a judgment against Paramount. They are plainly entitled to no relief at this time.

**E.    Should the Court temporarily reduce Paramount's 503(b)(9) Claim, it must require the Debtors to protect Paramount from a permanent denial of rights.**

Under the Plan, Paramount is entitled to full payment of the Paramount 503(b)(9) Claim after it is allowed. *See* Plan, Sections III.A and V.E. Because the Liquidating Trust from which the Paramount 503(b)(9) Claim will be paid will hold all of the Debtors' assets and property, will make many other distributions, and is unlikely to be able to satisfy all claimants in the Debtors' cases, *see id.*, it is not clear that there will be sufficient funds to satisfy the Paramount 503(b)(9) Claim if and when a determination as to whether Paramount received a preference is ultimately made by the Court (in an avoidance action that, again, the Debtors have not even initiated at this time).

As shown above, it is possible, even probable, that the Debtors will be unsuccessful in establishing Paramount's receipt of a preference. If the $335,904.00 that Paramount is owed on account of the Paramount 503(b)(9) Claim and that the Debtors seek to temporarily disallow is not safely reserved for Paramount should the Debtors fail in their potential preference action, the remedy of temporary disallowance may turn into a permanent denial of Paramount's rights. When the debtor or debtor in possession will not be able to pay a temporarily disallowed claim in the future, courts have recognized that the disallowance is final in effect because the claim is not likely to ever be paid. *See, e.g., Ames*, 2009 U.S. App. LEXIS 20764, at *11-12.

Paramount submits that if the Court decides to order the temporary disallowance of $335,904.00 of the Paramount 503(b)(9) Claim, the Court should also require the Debtors to post the statutorily required bond or escrow the same amount in a lockbox or the equivalent thereof.[12]   This is the only way to ensure fairness to Paramount, as the holder of an administrative claim, and to protect Paramount's rights from being permanently prejudiced by the requested temporary disallowance.

### III.
### OTHER MATTERS

Under the *Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections* [Docket No. 2881] (the "Omnibus Objection Procedures Order"), a response to an objection is required to contain certain information as follows:

1.      Identification of Persons with Knowledge of Facts Relevant to the Response.  As the Objection and Debtors' Brief do not include any information regarding the $335,904.00 preferential transfer that Paramount has allegedly received, Paramount cannot identify a person with knowledge of relevant facts.  Of course, if the Debtors allege specific facts surrounding the alleged preferential transfer, Paramount will supply one or more witnesses to substantiate this Response.

2.      Copies of Documentation.  For the same reasons set forth in the prior paragraph, no further documentation, other than the Paramount 503(b)(9) Claim attached as Exhibit 1, *see* note 4, *supra*, is required at this time.

---

[12]   This is simply the protection to which Paramount would be entitled under state law if the Debtors forthrightly sought a writ of attachment (and assuming they could otherwise obtain one).  Although Paramount does not believe that the Debtors have established a case for prejudgment attachment under Virginia law, even if this Court were to find the remedy appropriate, the statute would still require the creditor (in this case, the Debtors) to post a bond of twice the amount of the $335,904.00 claim.  Va. Code Ann. § 8.01-537.1(C).

3.      <u>Declaration of Person with Knowledge of Relevant Facts.</u>  For the reasons set forth above, no declaration need be (or rationally could be) submitted at this time.  Upon notice of any facts in dispute, Paramount will provide a declaration of a person with knowledge of such facts.

4.      <u>Claimant's Address for Future Notices.</u>  Future notices should be sent to both counsel who have signed this pleading.

**IV.**
**<u>CONCLUSION</u>**

Under the authority discussed above, Paramount submits that section 502(d) of the Bankruptcy Code cannot be used by the Debtors to disallow any part of the Paramount 503(b)(9) Claim.   Further, even if section 502(d) of the Bankruptcy Code were applicable, the Debtors have failed to satisfy the requirements of that section.  They have not obtained a judgment in a preference action against Paramount (or even initiated such an action) and alternatively have failed to set out a *prima facie* case for satisfaction of the elements of Bankruptcy Code section 547(b) and to make the same showing that the defenses of section 547(c) will not apply.  To the extent that the Objection seeks to have $335,904.00 of the Paramount 503(b)(9) Claim disallowed, it should be overruled.

If the Court finds that $335,904.00 of the Paramount 503(b)(9) Claim should be temporarily disallowed, it should also require the Debtors to post the statutorily required bond or escrow that amount to adequately ensure that the temporary remedy does not become a permanent denial of Paramount's rights.

Respectfully submitted,

DATED: November 3, 2009

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By: _____

David M. Stern
Michael L. Tuchin
Korin A. Elliott
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel: (310) 407-4000
Email: dstern@ktbslaw.com

KEPLEY BROSCIOUS & BIGGS, PLC

By: _____

William A. Broscious
2211 Pump Road
Richmond, Virginia 23233
804.741.0400 ext. 202
Email: wbroscious@kbbplc.com

Counsel for PARAMOUNT HOME
ENTERTAINMENT INC.

18    Paramount Response to Debtors' 52nd Omnibus Objection

## CERTIFICATE OF SERVICE

I, Korin A. Elliott, hereby certify that a true and correct copy of the foregoing *Response of Paramount Home Entertainment Inc. to Debtors' (i) Fifty-Second Omnibus Objection to Certain 503(B)(9) Claims and (ii) Motion For a Waiver of the Requirement That The First Hearing On Any Response Proceed As A Status Conference and the Debtors' Brief in Support Thereof* has been served upon the parties listed below via overnight courier and electronic mail on this 3rd day of November, 2009.

/s/        *Korin A. Elliott*

Korin A. Elliott (kelliott@ktbslaw.com)

**Debtors' Counsel**
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, DE  19899-0636
Attn: Gregg M. Galardi
Attn: Ian S. Fredericks

 -- and --

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP
One Rodney Square
Wilmington, DE  19899
Attn: Gregg M. Galardi
Attn: Ian S. Fredericks

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP
333 West Wacker Drive
Chicago, IL  60606
Attn: Chris L. Dickerson

MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, VA  23219
Attn: Dion W. Hayes
Attn: Douglas M. Foley

Paramount Response to Debtors' 52nd Omnibus Objection

## **Exhibit 1**

## **Paramount 503(b)(9) Claim**



United States Bankruptcy Court
Eastern District of Virginia
Richmond Division

**DEADLINE FOR FILING 503(b)(9) CLAIMS**
5:00 P.M. Pacific Time
December 19, 2008

## Section 503(b)(9) Claim Request Form

| Circuit City Stores, Inc., *et al.*, Claims Processing c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 | Circuit City Stores, Inc., *et al.* Case No. 08-35653 through 08-35670 Chapter 11 Jointly Administered |
|---|---|

**NOTE:** Pursuant to an Order of the Bankruptcy Court in the above-referenced chapter 11 cases (see Docket No. 107), to have claims allowed as administrative expense under 11 U.S.C. § 503(b)(9), this form must be served upon Circuit City Stores, Inc., *et al.*, Claims Processing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 by **December 19, 2008**, the Bar Date for Section 503(b)(9) claims in the above-referenced cases. The form may be submitted in person or by regular mail, overnight mail, or hand delivery. Facsimile, email or electronic submissions will not be accepted. Requests shall be deemed filed when actually received by Kurtzman Carson Consultants LLC.

**Name and Address of Creditor:** *(The person or other entity to whom the debtor owes money or property)*

Paramount Home Entertainment
Attn: Andi Marygold
5555 Melrose Avenue
Hollywood, CA 90038-3197

Telephone: (323)956-5489
Fax: (323)862-1183

**Name and address where notices should be sent (if different from above)** Klee, Tuchin, Bogdanoff & Stern, LLP
Attn: Michael L. Tuchin
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067

Telephone: (310)407-4000
Fax: (310)407-9090

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have made any demand(s) to reclaim goods sold to the debtor under 11 U.S.C. § 546(c). (attach copies of any such demand(s) **See Attachment 2**

☐ Check box if you have transferred any of your claim to any third party. If so please list name of transferee:

☐ Check box if you have never received any notices from the bankruptcy court in this case.

**Debtor against which claim is asserted :** (Check one box below):

☒ Circuit City Stores, Inc. (Tax I.D. No. 54-0493875)
☐ Abbott Advertising, Inc. (Tax I.D. No. 54-1624659)
☐ Circuit City Stores West Coast, Inc. (Tax I.D. No. 95-4460785)
☐ CC Distribution Company of Virginia, Inc. (Tax I.D. No. 54-1712821)
☐ Circuit City Properties, LLC (Tax I.D. No. 54-0793353)
☐ Patapsco Designs, Inc. (Tax I.D. No. 52-1086796)
☐ Ventoux International, Inc. (Tax I.D. No. 20-1071838)
☐ Sky Venture Corporation (Tax I.D. No. 54-1760311)
☐ Prahs, Inc. (n/a)
☐ XS Stuff, LLC (Tax I.D. No. 54-2029263)
☐ Kinzer Technology, LLC (Tax I.D. No. 54-2022157)
☐ Circuit City Purchasing Company, LLC (Tax I.D. No. 20-0995170)
☐ Orbyx Electronics, LLC (Tax I.D. No. 20-1203360)
☐ InterTAN, Inc. (Tax I.D. No. 75-2130875)
☐ CC Aviation, LLC (Tax I.D. No. 20-5290841)
☐ Courchevel, LLC (n/a)
☐ Circuit City Stores PR, LLC (Tax I.D. No. 66-0695512)
☐ Mayland MN, LLC (Tax I.D. No. 20-0896116)

**ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:** See Attachment 1

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____

**1. BASIS FOR CLAIM:** Goods received by the Debtor within 20 days before the date of commencement of the case.    Value of Goods: $ 3,201,013.37 [1]

**2. DATE OF SHIPMENT:** See Attachment 1  **METHOD OF SHIPMENT:** See Attachment 1    **DATE OF RECEIPT:** See Attachment 1
**NAME OF CARRIER:** See Attachment 1    **PLACE OF DELIVERY:** See Attachment 1

**3. TOTAL AMOUNT OF SECTION 503(b)(9) CLAIM:** $ 3,201,013.37
☐ Check the box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**4. BRIEF DESCRIPTION OF CLAIM:** Goods received by the Debtor within 20 days before commencement of the case.
Describe goods sold: Pre-recorded DVD and Blu Ray Discs.
*Attach support for your claim.*

**5. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**6. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, or contracts. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Attachments must be printed on 8-1/2" by 11" paper.

**7. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim request, enclose a stamped, self-addressed envelope and copy of this claim request form.

**8. ORDINARY COURSE CERTIFICATION:** By signing this claim request form, you are certifying that the goods for which payment is sought hereby, were sold to the debtor in the ordinary course of the debtor's business as required by 11 U.S.C. § 503(b)(9).

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**FOR COURT USE ONLY**

RECEIVED
DEC 19 2008
KURTZMAN CARSON CONSULTANTS

| Date 12/18/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) *Andi Marygold*  Andi Marygold    S.V.P. National Credit  Paramount Home Ent |
|---|---|

[1] Claimant asserts that the value of the goods is equal to the invoice price.

**Due to the voluminous nature of the documents
supporting the Paramount 503(b)(9) Claim,
they are not included at this time.  However, the
documents are available upon request.**

**Exhibit 2**

***In re Ames Dept. Stores, Inc.***,
**2009 U.S. App. LEXIS 20764**
**(2d Cir. Sept. 18, 2009)**



LEXSEE 2009 U.S. APP. LEXIS 20764

**IN RE: AMES DEPARTMENT STORES, INC., Debtor, ASM CAPITAL, LP, Appellant, -v.- AMES DEPARTMENT STORES, INC., Debtor-Appellee.**

**Docket No. 07-1362-bk**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*2009 U.S. App. LEXIS 20764; Bankr. L. Rep. (CCH) P81,582; 52 Bankr. Ct. Dec. 23*

**August 29, 2008, Argued**
**September 18, 2009, Decided**

**PRIOR HISTORY:**  [*1]

   Appellant ASM Capital, LP, appeals from an order of the United States District Court for the Southern District of New York (Kaplan, J.) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Gerber, J.) that applied *section 502(d) of the Bankruptcy Code* to disallow a request for payment of administrative expenses until ASM's predecessor in interest returned a preferential transfer. We hold that *section 502(d)* does not bar allowance of administrative expenses within the scope of *section 503(b)*.

**DISPOSITION:**   VACATED and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant investor in distressed debt challenged an order of the United States District Court for the Southern District of New York that affirmed a bankruptcy court order applying *11 U.S.C.S. § 502(d)* to disallow a request for payment of administrative expenses until the investor's predecessor in interest returned a preferential transfer.

**OVERVIEW:** The appeal raised an issue of first impression, i.e., whether *11 U.S.C.S. § 502(d)* barred the allowance of administrative expense claims under *11 U.S.C.S. 503*. The appellate court had jurisdiction under *28 U.S.C.S. § 158* where the bankruptcy court's order concluding that there was no reasonable likelihood that the debtor would ever collect a judgment against a transferee was, in practical effect, final. Given the statutory language of *§ 502(d)* and its statute's structure and context, *11 U.S.C.S. §§ 502 and 503* were separate and independent. Specifically, *§ 502(d)* only applied in the con-

text of *§ 502*. Moreover, the requirement in *11 U.S.C.S. § 503(b)* allowing requests for administrative expenses suggested a conflict with *§ 502(d)*'s equally mandatory disallowance of claims. The context of the provisions also counseled in favor of holding *§ 502(d)* inapplicable to administrative expenses under *§ 503(b)*.

**OUTCOME:** The district court's decision was vacated. The case was remanded with instructions to remand to the bankruptcy court for further proceedings.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Claims > Allowance*
[HN1] *11 U.S.C.S. § 502(d)* bars allowance of certain claims filed against the debtor's estate by alleged recipients of preferential transfers.

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > General Overview*
[HN2] The United States Court of Appeals for the Second Circuit exercise plenary review over the orders of a district court functioning in its capacity as an appellate court in a bankruptcy case. Thus, the Second Circuit independently review the factual findings and legal conclusions of the bankruptcy court.

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review*
*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review*

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

[HN3] The bankruptcy court's legal conclusions are evaluated de novo; its findings of fact are subject to a clearly erroneous standard. The appellate court will determine that a finding is clearly erroneous when it is left with the definite and firm conviction that a mistake has been made.

***Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction***
[HN4] An appellate court has jurisdiction pursuant to *28 U.S.C.S. § 158(d)* to hear an appeal from a decision of the district court exercising its bankruptcy appellate jurisdiction when that decision and the underlying bankruptcy court decision both are final orders within the meaning of *28 U.S.C.S. § 158*.

***Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction***
[HN5] It is sometimes appropriate that the requirement of finality be given a practical rather than a technical construction for purposes of exercising appellate jurisdiction.

***Governments > Legislation > Interpretation***
[HN6] Statutory interpretation always begins with the plain language of the statute, which the court considers in the specific context in which that language is used, and the broader context of the statute as a whole. The court turns to the legislative history only when the plain statutory language is ambiguous or would lead to an absurd result.

***Bankruptcy Law > Claims > Allowance***
[HN7] See *11 U.S.C.S. § 502(d)*.

***Bankruptcy Law > Claims > Types > Definitions***
[HN8] *11 U.S.C.S. § 101(5)* defines the term claim to include any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *11 U.S.C.S. § 101(5)(A)*.

***Bankruptcy Law > Claims > Types > Definitions***
***Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview***

[HN9] Because claims for administrative expenses may not be filed under *11 U.S.C.S. § 501*, they are not subject to *11 U.S.C.S. § 502(a)* and *(b)*.

***Bankruptcy Law > Claims > Types > Definitions***
***Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview***
[HN10] Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by *11 U.S.C.S. § 503*, which is titled "Allowance of administrative expenses." The procedure is independent from the procedure for filing and allowance of prepetition claims under *11 U.S.C.S. §§ 501 and 502*, and differs in significant respects. Whereas *§ 501* allows only creditors (i.e. holders of pre-petition claims) to file proofs of claims, *11 U.S.C.S. § 503(a)* provides that any entity may file a request for payment of administrative expenses. Similarly, while *§ 502* requires notice and a hearing for a prepetition claim only if there is an objection to the claim, *11 U.S.C.S. § 503(b)* requires notice and a hearing on all requests for administrative expenses, regardless of whether any objection has been made. *Section 503(b)* also enumerates the types of administrative expenses allowable under *§ 503* and excludes claims allowed under *11 U.S.C.S. § 502(f)*, i.e., deemed pre-petition claims in an involuntary case that are subject to *§§ 501 and 502*. Thus, with respect to the allowance of claims, *§§ 502 and 503* are separate and independent.

***Bankruptcy Law > Claims > Allowance***
***Bankruptcy Law > Claims > Types > Definitions***
***Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview***
[HN11] *11 U.S.C.S. § 502(d)* provides that, notwithstanding *11 U.S.C.S. § 502(a)* and *(b)*, the court shall disallow any claim of an entity from whom property is recoverable under certain avoidance provisions of the Bankruptcy Code, unless the entity has returned the recoverable property. The plain language thus introduces *§ 502(d)* as an exception to the automatic allowance of proofs of claims under *§ 502(a)* and *(b)*, and suggests that the subsection's scope is limited to that process and does not extend to claims allowable under *11 U.S.C.S. § 503*. That suggestion is reinforced by the absence from *§ 502(d)* of any reference to *§ 503*. To construe *§ 502(d)*'s disallowance as applicable to expenses allowable under *§ 503*, a section with its own scope, purpose, and conditions, is to expand the scope of *§ 502(d)*'s disallowance beyond its plain meaning.

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

*Bankruptcy Law > Claims > Allowance*
*Bankruptcy Law > Claims > Types > Definitions*

[HN12] *11 U.S.C.S. § 502(e)(2)*, *(f)*, *(g)*, *(h)* and *(i)* explicitly bring certain postpetition claims within the scope of *11 U.S.C.S. § 502* by providing, in each case, that the claims shall be allowed under *§ 502(a)*, *(b)*, or *(c)*, or disallowed under *11 U.S.C.S. § 502(d)*, the same as if such claim had become fixed before the date of the filing of the petition.

*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview*

[HN13] The Bankruptcy Code establishes a clear division between an entity in its pre- and postpetition states. Administrative expenses arise postpetition, and generally cannot be set off against pre-petition claims.

*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > Priority*

[HN14] The Bankruptcy Code gives a higher priority to requests for administrative expenses than to pre-petition claims in order to encourage third parties to supply goods and services on credit to the estate, to the benefit of all of the estate's creditors. *11 U.S.C.S. § 506(c)*.

*Bankruptcy Law > Claims > Allowance*
*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview*

[HN15] Congress did not intend *11 U.S.C.S. § 502(d)* to apply to administrative expenses under *11 U.S.C.S. § 503(b)*.

COUNSEL: ROBERT J. BUTLER (Rebecca L. Saitta, on the brief), Wiley Rein LLP, McLean, Virginia, for appellant.

MARTIN J. BIENENSTOCK (Michele J. Meises, on the brief), Weil, Gotshal & Manges LLP, New York, New York, for debtor-appellee.

JUDGES: Before: CALABRESI and B.D. PARKER, Circuit Judges. *

    *   The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. See 28 U.S.C. § 46(d); Local Rule 0.14(2); United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

OPINION

*Per Curiam*:

This appeal raises the question of whether [HN1] *section 502(d) of the Bankruptcy Code*, [*2] which bars allowance of certain claims filed against the debtor's estate by alleged recipients of preferential transfers, also bars allowance to such a claimant of postpetition administrative expenses pursuant to *section 503(b) of the Bankruptcy Code*. We conclude that it does not, and consequently we vacate the order of the district court.

I. BACKGROUND

A. Facts

The debtor-appellee Ames Department Stores, Inc. was a large chain of department stores (collectively, "Ames"), that commenced a voluntary case under chapter 11 of the Bankruptcy Code on August 20, 2001 by filing a petition in the United States Bankruptcy Court for the Southern District of New York (Gerber, J.). A year later, in August 2002, Ames's board of directors determined that the value of the bankruptcy estate could be best maximized through an orderly dissolution of Ames's affairs in chapter 11 and obtained an order from the bankruptcy court allowing Ames to close its businesses and sell its assets.

Appellant ASM Capital, LP ("ASM") is an investor in distressed debt. In 2002 and 2003, ASM acquired claims against Ames's bankruptcy estate from various of Ames's creditors, including two claims held by G&A Sales, Inc. ("G&A"), [*3] a supplier to Ames: an administrative expense claim of $ 360,117.65, and a reclamation claim of $ 33,292.50 (collectively, the "G&A Claims"). ¹ Administrative expenses are the "actual, necessary costs and expenses of preserving the estate," such as rent, wages, insurance, utilities, and trade credit, that arise during the pendency of the debtor's bankruptcy case. *See 11 U.S.C. § 503(b)(1)(A)*. A reclamation claim provides a supplier with a right to reclaim goods that a customer received on credit while insolvent in the period just before commencement of bankruptcy proceedings. *See 11 U.S.C. § 546(c)*; *cf. U.C.C. § 2-702*. At the time of Ames's bankruptcy filing, a court could deny reclamation to a seller with a *section 546(c)* reclamation claim by instead granting the seller's claim priority as a *section 503(b)* claim, or by securing the claim with a lien. ²

    1    ASM also acquired claims from Delaware Ribbon Manufacturers, Commonwealth Wholesale Corp., The Washington Post, and Williamson-Dickie Mfg. Co. Those claims eventually

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

were allowed by the bankruptcy court and are not at issue in this appeal.

2   Prior to 2005, *section 546(c)* provided that:

(c) Except as provided in subsection (d) of this [*4] section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but--

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods--

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court--

(A) grants the claim of such a seller priority as a claim of a kind specified in *section 503(b)* of this title; or

(B) secures such claim by a lien.

*11 U.S.C. § 546(c) (1998).*

In 2005, Congress amended the Bankruptcy Code to include a new *section 503(b)(9)*, which allowed a seller of goods to assert an administrative expense for "the value of any goods received by the debtor within 20 days before" the commencement of bankruptcy proceedings, [*5] and amended *section 546(c)(2)* to provide that "[i]f a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in *section 503(b)(9).*" Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1227, 119 Stat. 23, 199-200. Neither party has suggested that *section 503(b)(9)* has any relevance to this appeal, and we do not specifically address its interaction with *section 502(d).*

Ames had suspended payment on its administrative expense claims in 2002 when it abandoned its efforts to reorganize and decided to liquidate. Sometime thereafter, Ames filed adversarial proceedings ("Preference Actions") against several of its former suppliers and other creditors, including G&A, to recover alleged preferential transfers. In 2004, while Preference Actions were still pending, Ames began making interim distributions to holders of administrative expense claims, but refused to make distributions to holders who (a) were defendants in a Preference Action; (b) acquired their claims from a defendant in a Preference Action; or (c) would not agree to sign a release form fixing the amount of their administrative [*6] expenses. Ames refused to make interim distributions to ASM on the ground that ASM's predecessors in interest were defendants in Preference Actions.

ASM moved the bankruptcy court on April 6, 2005 for an order allowing its administrative expenses in the amount of $ 964,587 and compelling Ames to pay that amount within fifteen days of entry of the order or when Ames paid other administrative expense claim holders. Ames opposed the motion on the ground that *section 502(d) of the Bankruptcy Code* barred payments on ASM's claims until the return of any preferential transfers received by the creditors with whom the claims had originated, notwithstanding that ASM had not itself received any preferential transfers and was not a defendant in any Preference Action.

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

Before the bankruptcy court ruled on the motion in December 2005, the Preference Actions against nearly all of ASM's predecesors-in-interest were resolved, so that only the action against G&A remained outstanding. The bankruptcy court allowed ASM's claims that had originated with creditors who no longer were defending a Preference Action, but ruled that *section 502(d) of the Bankruptcy Code* barred allowance of the claims ASM had acquired [*7] from G&A until the Preference Action against G&A was resolved and G&A had paid or disgorged the amount, if any, for which G&A was liable to Ames.

ASM appealed the 2005 Order to the United States District Court for the Southern District of New York (Kaplan, J.), but the district court dismissed the appeal for lack of finality and failure to meet the requirements for interlocutory appeals. ASM tried again in September 2006, by moving the bankruptcy court to enter a supplemental order (i) disallowing ASM's administrative expenses pursuant to *section 502(d) of the Bankruptcy Code*; (ii) directing immediate payment of its reclamation claim; and (iii) declaring that the supplemental order was final and appealable. The bankruptcy court denied that motion in an order issued on December 1, 2006 (the "2006 Order"), but did make supplemental factual findings relating to finality.

In those findings, the bankruptcy court explained that it had intended its 2005 Order to mean that the G&A Claims held by ASM "would be temporarily disallowed until each of two things had happened: that (1) the [Preference Action] against G&A was 'resolved'; and (2) G&A had paid the amount (or turned over any property), [*8] if any, that had been judicially determined to be payable to the Ames estate." Since then, the court found, the Preference Action had finally been resolved by entry of a default judgment against G&A on June 19, 2006 in the amount of $ 825,138. But the bankruptcy court's disallowance pursuant to *section 502(d)* remained in effect because the repayment requirement "remains unsatisfied--as the judgment has not been collected upon." The court further found that the disallowance "will likely be permanent" because G&A had filed its own petition for Chapter 11 reorganization, suspended its business, and had transferred all of its assets to a secured creditor, thereby making it "highly unlikely" Ames would ever collect on the judgment.

ASM timely appealed the bankruptcy court's 2006 Order to the district court. This time, with the benefit of the bankruptcy court's additional findings, the district court concluded that, "while the disallowance of ASM's claim under *section 502(d)* of the code nominally is temporary, in practical effect it is final." [3] The district court then affirmed the bankruptcy court's order on the merits, stating that it was "in complete agreement" with the

bankruptcy court [*9] that *section 502(d) of the Bankruptcy Code* applied to administrative expense claims.

> 3   The district court also ruled in the alternative that, if the court of appeals decided the finality issue differently, it would grant ASM leave to file an interlocutory appeal.

ASM moved the district court to certify an interlocutory appeal of its order, and simultaneously filed a petition with this Court for permission to appeal from the district court's order pursuant to *Federal Rule of Appellate Procedure 5* and *28 U.S.C. § 1292(b)*. The district court denied ASM's certification motion without prejudice to renewal if this Court concluded that the order appealed from was not final. ASM then filed a Notice of Appeal to this Court. On May 8, 2007, a panel of this Court denied ASM's petition for permission to appeal, and directed the parties to address in their briefs whether the order appealed from is a final order.

## II. DISCUSSION

### A. Standard of Review

[HN2] We exercise plenary review over the orders of a district court functioning in its capacity as an appellate court in a bankruptcy case. Thus, we independently review the factual findings and legal conclusions of the bankruptcy court. *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994)*. [*10] [HN3] The bankruptcy court's legal conclusions are evaluated *de novo*; its findings of fact are subject to a clearly erroneous standard. *Id.; see also Fed. R. Bankr. P. 8013*. We will determine that a finding is "clearly erroneous" when we are left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)*.

### B. Jurisdiction

[HN4] We have jurisdiction pursuant to *28 U.S.C. § 158(d)* to hear this appeal from a decision of the district court exercising its bankruptcy appellate jurisdiction because that decision and the underlying bankruptcy court decision both are final orders within the meaning of *28 U.S.C. § 158. See Shimer v. Fugazy (In re Fugazy Express, Inc.), 982 F.2d 769, 775 (2d Cir. 1992)* ("The district court's own decision of an appeal from the bankruptcy court is not a final decision for purposes of appeal to the court of appeals unless the order of the bankruptcy court was final.").

It is true, as Ames argues, that the bankruptcy court's 2006 Order formally prevents ASM from pursuing its claim for administrative expenses only temporarily, until

Case 08-35653-KRH    Doc 5434    Filed 11/03/09    Entered 11/03/09 16:50:40    Desc Main
Document      Page 34 of 64

Page 6

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

G&A Sales has satisfied the default judgment it owes to Ames. But [HN5] "[i]t is sometimes [*11] appropriate that the requirement of finality be given a practical rather than a technical construction," *In re Am. Preferred Prescription, Inc.,* 255 F.3d 87, 93 (2d Cir. 2001) (quotation marks omitted), and the practical effect of the bankruptcy court's order here will be to permanently bar allowance of ASM's claim because it is not likely that Ames will ever recover its judgment against G&A. As Ames acknowledges, G&A filed for chapter 11 reorganization in the United States Bankruptcy Court for the Central District of California on May 6, 2003, and its case was closed (without a discharge) on May 31, 2005. The bankruptcy court in this case concluded that "there [was] no reasonable likelihood" that Ames would ever collect its judgment against G&A Sales and the district court agreed, finding that "while the disallowance of ASM's claim under *section 502(d)* of the code nominally is temporary, in practical effect it is final because the condition . . . simply is not likely ever to be satisfied." Although Ames says that it still hopes to collect its judgment against G&A and has hired a firm to pursue that collection, it has not identified any assets from which recovery might be had. Moreover, [*12] Ames's lackadaisical efforts in the Preference Action against G&A, which sat for three years without appearance by G&A before Ames moved for entry of a default judgment, counsel against deferring consideration of this appeal. Accordingly, we conclude that the 2005 Order is a final order for purposes of this appeal.

## C. The Scope of *Section 502(d)*

Whether *section 502(d) of the Bankruptcy Code* bars the allowance of administrative expense claims under *section 503* is a question of first impression in this Circuit. The district court and bankruptcy court both held that *section 502(d)*, which disallows bankruptcy claims of certain entities until they have returned any voidable preferential payments or transfers from the debtor's estate, applies to allowance of administrative expense claims under *section 503*. Both courts therefore agreed that *section 502(d)* bars allowance of ASM's G&A claims until G&A satisfies the default judgment that Ames obtained against it in the Preference Action. We disagree.

### 1. Statutory Language

[HN6] "Statutory interpretation always begins with the plain language of the statute," *Universal Church v. Geltzer,* 463 F.3d 218, 223 (2d Cir. 2006), which we consider in "the specific context [*13] in which that language is used, and the broader context of the statute as a whole," *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). We turn to the legislative history only when "the plain statutory lan-

guage is ambiguous or would lead to an absurd result." *Universal Church,* 463 F.3d at 223.

Accordingly, we begin with the language of *section 502(d)*, which provides in full:

> [HN7] Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

*11 U.S.C. § 502(d).*

The courts below first determined that requests for payment of administrative expenses under *section 503* are "claims" within the meaning of the Bankruptcy Code, which in [HN8] *section 101(5)* defines that term to include any "right to payment, whether or not such right is reduced to judgment, liquidated, [*14] unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *11 U.S.C. § 101(5)(A).* The courts then held that, because *section 502(d)* explicitly encompasses "*any claim* of any entity from which property is recoverable," *11 U.S.C. § 502(d)* (emphasis added), it applies to administrative expenses.

Both lower courts endorsed the reasoning of the United States Bankruptcy Appellate Panel of the Ninth Circuit in *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.),* 291 B.R. 503 (B.A.P. 9th Cir. 2002). *See also Movitz v. Baker (In re Triple Star Welding, Inc.),* 324 B.R. 778, 794 (B.A.P 9th Cir. 2005) (applying *MicroAge*), *abrogated on other grounds by Dye v. Brown (In re AFI Holding, Inc.),* 530 F.3d 832 (9th Cir. 2008). The eponymous debtor in *MicroAge* had negotiated a settlement with a seller that had asserted a reclamation claim for goods alleged to be worth $ 947,886. *MicroAge,* 291 B.R. at 504-05. The order approving that settlement granted the seller an "allowed reclamation administrative priority claim" for $ 574,025. *Id.* But then MicroAge failed to pay the seller's claim in a timely manner, and the seller brought a motion to compel [*15] payment. MicroAge opposed that motion by filing an adversary complaint alleging the seller had received $ 2,329,701 in preferential transfers, which it sought to avoid, and then arguing that *section 502(d)* precluded allowance of the administrative claim until the prefer-

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

ence action was resolved. *Id. at 505*. The United States Bankruptcy Court for the District of Arizona rejected that argument and ordered MicroAge to pay the seller's administrative claim, holding that *section 502(d)* did not apply to administrative claims under *section 503*. On appeal, the Ninth Circuit Bankruptcy Appellate Panel disagreed and held that *section 502(d)* generally was a valid defense to allowance of administrative claims, but nevertheless affirmed on the ground that it was too late for *section 502(d)* to be applied to the seller's claim because the claim already had been allowed. *Id. at 512-13*.

In determining the scope of *section 502(d)*, the bankruptcy appellate panel first noted that *section 502(d)* "by its terms applies to 'any claim' of an entity that received an avoidable transfer, and the definition of a 'claim' in *§ 101(5)* [*16] is sufficiently broad to include requests for payment of expenses of administration." *Id. at 508*. The language of other provisions in the Bankruptcy Code, according to the bankruptcy appellate panel, further suggests that "Congress viewed expenses of administration as merely one specialized type of claim," and that Congress thus intended such expenses to be subject to *section 502(d)*. *Id. (citing 11 U.S.C. § 346(e)* (referring to a "claim allowed under *section 502(f)* or *503* of this title"), and *11 U.S.C. § 365(n)(1)(B)(i)* (referring to "any claim allowable under *section 503(b)* of this title")). Similarly, the explicit exclusion of administrative claims from some sections but not from *section 502(d)* suggested to the bankruptcy appellate panel that the claims are intended to be subject to *section 502(d)*. *Id. (citing 11 U.S.C. § 348(d)* (excepting claims allowable under *§ 503(b)*), *11 U.S.C. § 752(a)* (excepting claims of the kind specified in *§ 507(a)(1)*), *11 U.S.C. § 1123(a)(1)* (same) and *11 U.S.C. § 1326(b)(1)* (same)).

As other courts have noted, however, other sections of the Bankruptcy Code distinguish between "claims" and requests for administrative expenses under *section 503(b)*. *See,* [*17] *e.g., In re Plastech Engineered Products, Inc., 394 B.R. 147, 157-58 (Bankr. E.D. Mich. 2008)* (citing cases holding that *section 502(d)* uses "claim" to refer only to prepetition claims and not to requests for administrative expenses; *Beasley Forest Products, Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.), 297 B.R. 326, 329-31 (Bankr. S.D. Ga. 2003)* (discussing instances where "expenses" are distinguished from "claims" in subchapter including *sections 502* and *503*)); *In re Lids Corp., 260 B.R. 680, 683-84 (Bankr. D. Del. 2001)* (noting sections of code that distinguish between prepetition, postpetition, and administrative claims); *Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.), 264 B.R. 141, 159 (Bankr. D. Del. 2000)* (same). For instance, *section 507(a)* refers to "expenses *and* claims," and establishes a separate priority for "administrative

expenses" than for "claims." *11 U.S.C. § 507(a)* (emphasis added). *Section 101(10)* defines "creditor" in terms that include only holders of prepetition claims (and certain postpetition claims deemed to be prepetition claims) and not holders of postpetition claims for administrative expenses under *section 503*. [*18] *11 U.S.C. § 101(10)*. And *section 348(d)* similarly applies to any postpetition claim "other than a claim specified in *section 503(b)*." *11 U.S.C. § 348(d)*. As the United States Bankruptcy Court for the District of Delaware concluded in *CM Holdings*, the express exclusion of administrative expense claims from *section 348(d)*, and the exclusion of administrative claim holders from the definition of "creditor," lend "support to the view that administrative expense claims are claims that are entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims." *CM Holdings, 264 B.R. at 158*. Thus, the general definition of "claim" in *section 101(5)* does not by itself resolve the scope of *section 502(d)*.

The structure and context of *section 502(d)* suggests that Congress intended it to differentiate between claims and administrative expenses, and not to apply to the latter. *Section 502*, in conjunction with *section 501*, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under *section 503*. *Section 501*, which is titled "Filing of proofs of claims or interests," provides that [*19] a creditor may file a proof of claim. *11 U.S.C. § 501(a)*. Although the definition of "claim" in *section 101(5)* does not distinguish between prepetition and postpetition rights to payment, the claims addressed by *section 501* are only prepetition claims and certain postpetition claims that are treated as prepetition claims. *See 11 U.S.C. § 501(d)* (providing that postpetition claims specified in *sections 502(e)(2), (f), (g), (h)* or *(i)* may be filed under *section 501* "the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition"); *see also 11 U.S.C. § 101(10)* (defining "creditor" as a holder of a prepetition claim or a deemed prepetition claim). *Section 502*, which is titled "Allowance of claims or interests," governs the allowance of claims for which proof is filed under *section 501*. Under *section 502(a)*, such claims are deemed allowed when filed unless a party in interest objects, in which case *section 502(b)* requires the court to provide notice and a hearing and then determine the allowable amount of the claim. [HN9] Because claims for administrative expenses may not be filed under *section 501*, [4] they are not subject to *sections 502(a)* [*20] and *(b)*.

4    For instance, the official form for filing a proof of claim pursuant to *section 501* explicitly states "This form should not be used 'to make' a claim for an administrative expense arising after

the commencement of the case. A request for payment of an administrative expense may be filed pursuant to *11 U.S.C. § 503*." *See* Official Bankruptcy Form B 10 (Dec. 2007) *available at* www.uscourts.gov/rules/BK_Forms_Pending_20 08/B_010_1208v4.pdf (last visited September 9, 2009).

[HN10] Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by *section 503*, which is titled "Allowance of administrative expenses." The procedure is independent from the procedure for filing and allowance of prepetition claims under *sections 501* and *502*, and differs in significant respects. *See In re Durango Ga. Paper Co., 297 B.R. at 329* (observing that *section 503* differs from *section 502* because it "needs no complement" and uses different terminology). Whereas *section 501* allows only "creditors" (i.e. holders of prepetition claims) to file proofs of claims, *section 503(a)* provides that any "entity" may file a request for payment of administrative expenses. Similarly, [*21] while *section 502* requires notice and a hearing for a prepetition claim only if there is an objection to the claim, *section 503(b)* requires notice and a hearing on all requests for administrative expenses, regardless of whether any objection has been made. *Section 503(b)* also enumerates the types of administrative expenses allowable under *section 503* and excludes "claims allowed under *section 502(f)*," i.e., deemed prepetition claims in an involuntary case that are subject to *sections 501* and *502*. *Id.* Thus, with respect to the allowance of claims, *sections 502* and *503* are separate and independent.

The language of *section 502(d)* suggests that it applies only in the context of *section 502*, and not to claims addressed by *section 503*. [HN11] *Section 502(d)* provides that, "[n]otwithstanding subsections (a) and (b) of this section," the court shall disallow any claim of an entity from whom property is recoverable under certain avoidance provisions of the Bankruptcy Code, unless the entity has returned the recoverable property. The plain language thus introduces *section 502(d)* as an exception to the automatic allowance of proofs of claims under *sections 502(a)* and *(b)*, and suggests that the subsection's [*22] scope is limited to that process and does not extend to claims allowable under *section 503*. That suggestion is reinforced by the absence from *section 502(d)* of any reference to *section 503*. "To construe *§ 502(d)*'s disallowance as applicable to expenses allowable under *§ 503*--a section with its own scope, purpose, and conditions--is to expand the scope of *§ 502(d)*'s disallowance beyond its plain meaning." *In re Durango Ga. Paper Co., 297 B.R. at 330*.

Furthermore, [HN12] *sections 502(e)(2)*, *(f)*, *(g)*, *(h)* and *(i)* explicitly bring certain postpetition claims within

the scope of *section 502* by providing, in each case, that the claims "shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) . . . *the same as if such claim had become fixed before the date of the filing of the petition*." *E.g.*, *11 U.S.C. § 502(e)(2)* (emphasis added). The express invocation of *section 502(d)* suggests that the section did not already apply to such claims before they were brought within *section 502*'s reach, and that it does not apply to postpetition claims remaining outside *section 502*, such as the requests for administrative expenses addressed by *section 503(b)*. *See In re Lids Corp., 260 B.R. at 683-84* [*23] ("Congress'[s] inclusion of five post-petition claims to which *section 502(d)* expressly applies . . . demonstrates that *section 502(d)* does not apply to other post-petition claims."); *In re CM Holdings, Inc., 264 B.R. at 158 & n.8* ("The express reference to, and treatment of, these other types of postpetition claims within the purview of *§ 502(d)* suggests by negative implication that the drafters did not intend that administrative expense claims be subject to the set off provision of *§ 502(d)*."). The clarifying final phrase--"*the same as if such claim had become fixed before the date of the filing of the petition*"--is further evidence that *section 502(d)*, like *sections 502(a)* and *(b)*, ordinarily applies only to prepetition claims.

Finally, the mandatory terms in which *section 503(b)* is drafted, requiring courts to allow requests for administrative expenses, suggest a conflict with *section 502(d)*'s equally mandatory disallowance of claims. *Section 502(d)* avoids a similar conflict with *sections 502(a)* and *(b)* by expressly providing that it applies "[n]otwithstanding subsections (a) and (b) of this section." Ames contends that there is no conflict with *section 503(b)* because that section [*24] requires notice and a hearing, at which the debtor could invoke *section 502(d)* as an affirmative defense. But *section 502(b)* also requires notice and a hearing, and *section 502(d)* expressly provides that it takes precedence over that section while saying nothing about *section 503(b)*.

## 2. Statutory Context

Moreover, the context of these provisions in the Bankruptcy Code counsels in favor of holding *section 502(d)* inapplicable to administrative expenses under *section 503(b)*.

First, [HN13] the Bankruptcy Code establishes a clear division between an entity in its pre- and post-petition states. Administrative expenses arise post-petition, and generally cannot be set off against prepetition claims. *Cf. 11 U.S.C. § 553* (allowing offset of mutual prepetition debts between creditor and debtor). Second, and more importantly, [HN14] the Bankruptcy Code gives a higher priority to requests for administrative ex-

2009 U.S. App. LEXIS 20764, *; Bankr. L. Rep. (CCH) P81,582;
52 Bankr. Ct. Dec. 23

penses than to prepetition claims in order to encourage third parties to supply goods and services on credit to the estate, to the benefit of all of the estate's creditors. *See 11 U.S.C. § 506(c)*. That intent would be frustrated by allowing a debtor automatically to forestall or avoid payment of administrative [*25] expenses by alleging that the vendor had been the recipient of a preferential transfer. [5] As the United States Bankruptcy Court for the District of Delaware observed in *Lids*, "[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor." *260 B.R. at 684*.

    5   The court in *In re MicroAge* discounted this policy concern because "[a]ny creditor that has received an avoidable transfer may find itself compelled to return that transfer, whether it does business with the reorganized debtor or not." *291 B.R. at 512*. But doing business with the reorganized debtor and filing a request for payment of administrative expenses might have other consequences, such as waiving the vendor's right to a jury trial in any preference action initiated by the debtor. *See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58-59, 109 S. Ct. 2782, 106 L. Ed. 2d 26 & n.14 (1989)* (holding defendant to a preference action has a right to a jury trial pursuant to the *Seventh Amendment of the United States Constitution*, but that right can be waived by filing a claim in the bankruptcy proceedings); *In re CBI Holding Co., 529 F.3d 432, 438 (2d Cir. 2008)* [*26] (holding claimant waived right to jury trial on claims brought against it on behalf of bankruptcy estate "when it submitted its Proof of Claim against the estate and subjected itself to the equitable powers of the bankruptcy court"). Moreover, it generally will be more attractive for a debtor to assert *section 502(d)* as an affirmative defense than for the debtor to initiate suits for the return of preferential transfers, particularly when the alleged transfers are small in relation to the expected costs of the suit.

    These policies confirm our conclusion that [HN15] Congress did not intend *section 502(d)* to apply to administrative expenses under *section 503(b)*. [6]

    6   Contrary to Ames's position, we are not persuaded that the legislative history to *section 502(d)* indicates a Congressional intent to apply that section to administrative expenses pursuant to *section 503*, and we find the legislative history at most to be inconclusive.

The Congressional reports issued in connection with the enactment of the Bankruptcy Reform Act of 1978 state only that *section 502(d)* was "derived from present law," and "requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee [*27] has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." S. Rep. No. 95-989, at 65, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851; H.R. Rep. No. 95-595, at 354, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310. Neither report discusses whether *section 502(d)* was meant to apply to administrative expenses pursuant to *section 503*.

Ames contends that the law from which *section 502(d)* was derived, section 57g of the Bankruptcy Act, Ch. 541, § 57g, 30 Stat. 560 (repealed 1978) (formerly codified at 11 U.S.C. § 93g) ("The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."), was understood to apply to requests for administrative expenses, and that the legislative history to *section 502(d)* therefore should be understood to indicate that Congress intended that section also to apply to administrative expenses. But the Supreme Court stated as late as 1966 that "[t]he exact reach of [*28] s. 57, sub. g is not entirely settled," *Katchen v. Landy, 382 U.S. 323, 330 n.5, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)*, and the reach of the section was not settled any further between that decision and the adoption of the Bankruptcy Code in 1978.

During that period, the only Court of Appeals to address the question was the United States Court of Appeals for the Eighth Circuit, which, in *Weber v. Mickelson (In re Colonial Servs. Co.), 480 F.2d 747 (8th Cir. 1973)*, held that section 57g of the Bankruptcy Act extended to administrative expenses. The *Colonial Services* opinion rested its conclusion upon "the plain, unequivocal language of the statute"--which Congress changed in *section 502(d)*--and the 1932 decision of the United States District Court for the Southern District of New York in *Irving Trust Co. v. Frimitt, 1 F. Supp. 16, 17 (S.D.N.Y. 1932)*. *Colonial Services, 480 F.2d at 749*. But there is no indication that the applicability of section 57g to the creditors' claims was a disputed issue in *Irving Trust*, and the court's statement that each of

the creditors had filed a "proof of claim" in the bankruptcy proceeding, presumably pursuant to section 57 of the Act, suggests that it was not. *Irving Trust, 1 F. Supp. at 17.* [*29] Accordingly, *Colonial Services* is weak authority for the proposition that Congress understood section 57g of the Bankruptcy Act to apply to administrative expenses and intended new *section 502(d) of the Bankruptcy Code* to apply to such requests as well.

## III. CONCLUSION

Pursuant to the above analysis of the relevant statutory language, both in its specific context and in the "broader context of the statute as a whole," *Robinson, 519 U.S. at 341*, we hold that *section 502(d)* does not apply to administrative expenses under *section 503(b)*. In view of this conclusion, we find it unnecessary to reach ASM's alternative argument that, even if *section 502(d)* did extend to administrative expenses under *section 503(b)*, it could be invoked only against the recipient of the alleged preferential transfer and not against a subsequent holder of a claim that originated with the alleged transferee.

We therefore VACATE the decision of the district court and REMAND with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

## <u>Exhibit 3</u>

***In re U.S.A. Labs, Inc.*,**
**2006 Bankr. LEXIS 2394**
**(Bankr. S.D. Fla. Apr. 13, 2006)**



LEXSEE 2006 BANKR. LEXIS 2394



Positive
As of: Nov 02, 2009

**In re: USA LABS, INC. and COSMYL, INC., Debtor.**

**CASE NO. 04-41587-BKC-RAM, CHAPTER 11, (Jointly Administered)**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*2006 Bankr. LEXIS 2394; 19 Fla. L. Weekly Fed. B 389*

**April 13, 2006, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Chapter 11 creditor, a former employee of debtor, filed an application for allowance and payment of administrative expenses, seeking payment for post-petition wages and reimbursable expenses. Trustee objected on the grounds that under *11 U.S.C.S. § 502(d)* the court should disallow the application until creditor repaid alleged preferential payments he received.

**OVERVIEW:** Trustee filed an adversary proceeding against creditor, seeking to recover alleged preferential transfers. Trustee also sought disallowance of creditor's application pending repayment of the alleged preference. In granting creditor's application, the court held that *§ 502(d)* did not apply to administrative expense claims allowable under *11 U.S.C.S. § 503*. The court held that the only claims to which *11 U.S.C.S. § 502(d)* applied to were pre-petition claims or those post-petition claims, such as rejection claims or contribution claims, which were treated like pre-petition claims in *§ 502(e)-(i)* and were expressly subject to *§ 502(d)*.

**OUTCOME:** The court granted creditor's application.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Claims > Allowance*
[HN1] See *11 U.S.C.S. § 502(d)*.

*Bankruptcy Law > Claims > Allowance*
*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview*
[HN2] *11 U.S.C.S. § 502(d)* does not apply to administrative expense claims allowable under *11 U.S.C.S. § 503*.

*Bankruptcy Law > Claims > Allowance*
[HN3] The only claims to which *11 U.S.C.S. § 502(d)* applies to are prepetition claims or those post-petition claims, such as rejection claims or contribution claims, which are treated like prepetition claims in *§ 502(e)-(i)* and are expressly subject to *§ 502(d)*.

**COUNSEL:** [*1] For USA Labs, Inc., Debtor: Hans C Beyer, Esq, Miami, FL.

For Barry E Mukamal, Trustee: Grace E. Robson, John D. Eaton, Fort Lauderdale, FL.; Jordi Guso, Paul Steven Singerman, Esq, Miami, FL.

**JUDGES:** Robert A Mark, Chief Judge.

**OPINION BY:** Robert A Mark

2006 Bankr. LEXIS 2394, *; 19 Fla. L. Weekly Fed. B 389

OPINION

*ORDER GRANTING APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE*

The Court conducted a hearing on March 29, 2006 on Creditor Raul Mathison's ("Mathison") Application for Allowance and Payment of Administrative Expense ("Application"). In the Application, Mathison, a former employee of the Debtor, sought payment of $ 16,254.17 for postpetition wages and reimbursable expenses. Prior to the hearing on the Application, the parties stipulated that the amount owed to Mathison, subject to the defenses discussed in this Order, is $ 15,037.10.

Although he has now stipulated to the amount, the Trustee argues that under *section 502(d) of the Bankruptcy Code*, the Court should disallow the Application until Mathison repays alleged preferential payments he received. [1] The Trustee has filed an adversary proceeding against Mathison, styled as *Mukamal v. Mathison*, Adv. No. 06-1336-BKC-RAM-A, to recover [*2] these preferential transfers which allegedly total $ 67,581.08. Count II seeks to avoid the payments as preferences under *11 U.S.C. § 547*; Count III seeks recovery of the payments under *11 U.S.C. § 550*. The other two counts relate to the Mathison Application. Count I is an objection to the Application seeking disallowance under *§ 502(d)* pending repayment of the alleged preference. Count IV seeks declaratory relief allowing the Trustee to offset the administrative expense against Mathison's liability to repay the preferential payments. At the March 29th hearing, the Trustee did not present any legal basis justifying Count IV of the Complaint and therefore, the Court dismisses it with prejudice.

1  *Section 502(d)* states:

[HN1] [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

*11 U.S.C. § 502(d)(2006).*

[*3]  As to Count I of the Complaint, several courts have grappled with the issue of whether an administrative expense claim is subject to *§ 502(d)* with the result being a split in the case law. *See Microage, Inc. v. Viewsonic Corp. (In re Microage, Inc.)*, 291 B.R. 503 (9th Cir. B.A.P. 2002)(*section 502(d)* applies to administrative expense claims not yet allowed by the court); *In re Georgia Steel, Inc*, 38 B.R. 829 (Bankr. M.D. Ga. 1984)(administrative expense claims subject to *§ 502(d)*); *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004)(*section 502(d)* not a barrier for administrative expense claim); *In re Durango Georgia Paper Co.*, 297 B.R. 326, 331 (Bankr. S.D. Ga. 2003) (*section 502(d)* does not apply to administrative expense claims allowable under *§ 503 of the Code*); *In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001)(administrative expense claims not subject to *§ 502(d)*); *Camelot Music. Inc. v. MHW Adver. and Pub. Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000)(administrative expenses not subject to *§ 502(d)* [*4] defense). This Court has reviewed each of these opinions and strongly agrees with the courts which concluded that [HN2] *§ 502(d)* does not apply to administrative expense claims allowable under *section 503 of the Bankruptcy Code*.

The statutory analysis in *Durango, Lids* and *CM Holdings* is compelling. The structure of *§ 502* indicates that [HN3] the only claims to which *subsection (d)* applies to are prepetition claims or those post-petition claims, such as rejection claims or contribution claims, which are treated like prepetition claims in *§ 502(e) through (i)* and are expressly subject to *§ 502(d)*. *Durango, 247 B.R. at 330*. Moreover, the policy considerations underlying the reason for administrative expenses and their corresponding priority in the context of a bankruptcy case, further compel a finding that *§ 502(d)* does not act as a bar. *See Lids, 260 B.R. at 684* (stating that "extension of [502(d)] to administrative claims could have devastating effects on a debtor's ability to reorganize."). Therefore, it is--

**ORDERED** as follows:

1. The Application is granted. Mathison shall be allowed an administrative expense [*5] in this bankruptcy case in the amount of $ 15,037.10 which the Trustee shall pay upon finality of this Order.

2. Count I and IV of the Complaint in Adv. No. 06-1336-BKC-RAM-A are dismissed with prejudice.

3. A copy of this Order shall be docketed in Adv. No. 06-1336-BKC-RAM-A.

**ORDERED in the Southern District of Florida on** April 13, 2006.

2006 Bankr. LEXIS 2394, *; 19 Fla. L. Weekly Fed. B 389

**Robert A Mark, Chief Judge**                    **United States Bankruptcy Court**

## <u>Exhibit 4</u>

*In re Phoenix Restaurant Group*,
**2004 Bankr. LEXIS 2186**
**(Bankr. M.D. Tenn. Dec. 16, 2004)**



LEXSEE 2004 BANKR. LEXIS 2186



Positive
As of: Nov 02, 2009

**In re: PHOENIX RESTAURANT GROUP, Inc., et al., Debtors; PHOENIX RES-
TAURANT GROUP, Inc., et al., Plaintiffs v. PROFICIENT FOOD COMPANY, De-
fendant**

**Case No. 301-12036, Chapter 11, Adv. No. 303-0568A**

**UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE**

*2004 Bankr. LEXIS 2186*

**December 16, 2004, Decided**

**DISPOSITION:**    Defendant's Motion for Summary
Judgment denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff plan administra-
tor brought an adversary proceeding against defendant,
the debtors' food supplier, in a preference action under
*11 U.S.C.S. § 547(b)*, seeking recovery of payments
made to the supplier during the 90 days prior to the filing
of bankruptcy. The supplier brought a motion for sum-
mary judgment.

**OVERVIEW:** The court had granted a critical vendor
motion allowing payments to be made to the supplier for
pre-bankruptcy claims. After confirmation of the plan, the
administrator brought the present proceeding, and the
supplier pleaded several defenses on which he based his
summary judgment motion, among which defenses were
the contemporaneous exchange under *11 U.S.C.S. §
547(c)(1)*, the ordinary course of business under *§
547(c)(2)*, and the subsequent new value under *§
547(c)(4)*. The court found that summary judgment was
not appropriate because the new value defense required
the court to make a finding as to whether the debtors
made otherwise unavoidable transfers based on the sup-
plier's other pleaded defenses. The critical vendor order
did not exempt the supplier from suit under *§ 547*, and

the confirmed plan did not release the supplier, as a
member of the creditors' committee, from this preference
action. The plan and disclosure statement did preserve
the right to bring post confirmation preference actions.
Further, for the new value defense, the court found that
only pre-petition payments could be considered and any
value had to be reduced to reflect goods subject to rec-
lamation.

**OUTCOME:** The court denied the supplier's motion for
summary judgment.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Examiners,
Officers & Trustees > Preferential Transfers*
*Bankruptcy Law > Case Administration > Examiners,
Officers & Trustees > Preferential Transfers > Exemp-
tions > Subsequent New Value*
*Evidence > Procedural Considerations > Burdens of
Proof > General Overview*
[HN1] To prevail under *11 U.S.C.S. § 547(c)(4)*, a pref-
erence defendant must demonstrate that the debtor did
not pay for new value with an otherwise unavoidable
transfer. Post petition transfers to or from the estate are
not considered in *§ 547(c)(4)* analysis.

2004 Bankr. LEXIS 2186, *

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*

[HN2] Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*

[HN3] The moving party in a motion for summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. All inferences are drawn in the light most favorable to the nonmoving party. The party opposing a motion for summary judgment, however, may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. If after reviewing the record as a whole a rational factfinder could not find for the non-moving party, summary judgment is appropriate.

*Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions*
*Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*

[HN4] Confirmation of a Chapter 11 plan can be preclusive of trustee or debtor-in-possession avoidance actions on principles of res judicata. Preclusion can be prevented by providing in the plan for the preservation of avoidance actions. This power of preservation is codified in *11 U.S.C.S. § 1123(b)(3)*.

*Bankruptcy Law > Reorganizations > Plans > Confirmation > Cramdowns*
*Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions*

[HN5] See *11 U.S.C.S. § 1123(b)(3)*.

*Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions*
*Bankruptcy Law > Reorganizations > Plans > Disclosure Statements*

[HN6] The notice at issue in *11 U.S.C.S. § 1123(b)(3)* is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee.

*Bankruptcy Law > Claims > Allowance*
*Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions*
*Bankruptcy Law > Reorganizations > Plans > Disclosure Statements*

[HN7] The United States Court of Appeals for the Sixth Circuit has not established a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, *11 U.S.C.S. § 1123(b)(3)* protects the estate from loss of potential assets, It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy *§ 1123(b)(3)* must be measured in the context of each case and the particular claims at issue - whether the reservation allow creditors to identify and evaluate the assets potentially available for distribution.

*Bankruptcy Law > Practice & Proceedings > General Overview*
*Bankruptcy Law > Reorganizations > Plans > Contents > Discretionary Provisions*
*Bankruptcy Law > Reorganizations > Plans > Disclosure Statements*

[HN8] Personal service of a list of potential preference recipients is not required by *11 U.S.C.S. § 1123(b)(3)*. Service of such a list will certainly be a strong component of an effort to preserve preference actions, but hardly a mandatory element.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Judicial Estoppel*

[HN9] The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. The doctrine is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Elements > General Overview***
***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Evidence & Procedure***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
[HN10] The Bankruptcy Code empowers a trustee in bankruptcy to recover for the benefit of all creditors transfers within 90-days of bankruptcy that have the effect of preferring one creditor over others. *11 U.S.C.S. §§ 547, 550*. The trustee bears the burden of proof on all elements of a preference listed in *11 U.S.C.S. § 547(b)*. *11 U.S.C.S. § 547(g)*. The preference defendant has eight statutory defenses described in *§ 547(c)*, and bears the burden of proof on each defense. *11 U.S.C.S. § 547(g)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
[HN11] *11 U.S.C.S. § 547(c)(4)* is short-handedly referred to as the subsequent advance exception to preference recovery. This statutory defense provides: The trustee may not avoid under this section a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor not secured by an otherwise unavoidable security interest; and on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. *11 U.S.C.S. § 547(c)(4)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
[HN12] The logic of the defense under *11 U.S.C.S. § 547(c)(4)* is that an otherwise preferential transfer is not avoidable to the extent that, after the transfer, the creditor gave the debtor "new value" in a form that replenished the debtor. Replenishing the debtor for purposes of the *§ 547(c)(4)* defense has several facets. Fundamentally, the debtor must receive "new value."

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > General Overview***
[HN13] See *11 U.S.C.S. § 547(a)(2)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
[HN14] New value given after a preferential transfer helps a defendant only if it is not secured by an unavoidable security interest. *11 U.S.C.S. § 547(c)(4)(A)*. This makes sense because the debtor is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the preferential transfer.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Voidable Transfers > General Overview***
[HN15] The new value must not have been paid for by the debtor with a transfer that cannot itself be avoided, *11 U.S.C.S. § 547(c)(4)(B)*. In other words, the new value must remain an enhancement of the debtor notwithstanding transfers (typically payments) to the creditor by the debtor after the new value was given. A payment by the debtor to the creditor after the creditor gave new value does not unravel the defense if the payment can itself be recovered as an avoidable transfer.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
[HN16] The plain language of *11 U.S.C.S. § 547* closes the preference window at the petition, limiting the *§ 547(c)(4)* defense to new value supplied and payments made before the debtor crosses into bankruptcy. Post petition goods or services provided to a debtor in possession do not qualify as "new value" for purposes of *§ 547(c)(4)*, for the benefit of the debtor implies that subsequent advances of new value are only those given pre-petition, because any post-petition advances are given to the debtor's estate, not to the debtor.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***

[HN17] *11 U.S.C.S. § 547(c)(4)(B)* focuses on actions of the debtor, on account of which new value the debtor did not make an otherwise unavoidable transfer. Throughout *§ 547*, "the debtor" refers to the pre-petition entity that transferred property or engaged in business with the preference defendant.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > General Overview***
[HN18] At its heart, the preference power in *11 U.S.C.S. § 547* levels the playing field for creditors that do business with a debtor during the slide into bankruptcy.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
***Bankruptcy Law > Estate Property > General Overview***
***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Liens (IRC secs. 6320-6327) > Federal Tax Lien Priority***
[HN19] The United States Court of Appeals for the Sixth Circuit has not decided whether post petition transactions between a creditor and a Chapter 11 debtor-in-possession affect the subsequent new value defense in *11 U.S.C.S. § 547(c)(4)*. The Sixth Circuit has held that post petition debt does not affect the hypothetical liquidation value of the estate for purposes of *§ 547(b)(5)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Elements > Creditor Advantage***
[HN20] See *11 U.S.C.S. § 547(b)(5)*.

***Bankruptcy Law > Case Administration > Administrative Powers > Postpetition Credit***
***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > General Overview***
***Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Superpriority***
[HN21] The United States Court of Appeals for the Sixth Circuit has stated that in the context of *11 U.S.C.S. § 547(b)*, Congress' stated concern is reflected only for those creditors with claims against the debtor's estate on the date the petition is filed. Although the Code gives the bankruptcy court power to grant super-priority status to banks which extend credit to debtors during their reorganization efforts under *11 U.S.C.S. § 364*, there is nothing in the Code indicating that post-petition debt incurred

during a reorganization should be included in the *11 U.S.C.S. § 547* determination.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > General Overview***
[HN22] See *11 U.S.C.S. § 546(c)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
***Bankruptcy Law > Reorganizations > Debtors in Possession > General Overview***
[HN23] As a matter of statutory interpretation, post petition payment through a confirmed plan or by the debtors-in-possession, is not a transfer by the debtor for *11 U.S.C.S. § 547(c)(4)(B)* purposes. Accordingly, a post petition payment cannot be an "otherwise unavoidable" transfer by the debtor that defeats the pre-petition new value for which it paid.

***Admiralty Law > Bankruptcy > In Rem Proceedings***
***Contracts Law > Sales of Goods > Damages & Remedies > Seller's Damages & Remedies > Remedies on Discovery of Buyer's Insolvency***
***Contracts Law > Sales of Goods > Performance > General Overview***
[HN24] Goods shipped on the eve of bankruptcy that are subject to reclamation are not the same "money or money's worth" as goods shipped free of the seller's strings. *11 U.S.C.S. § 547(a)(2)*. In the same sense that goods subject to a trust do not enhance the debtor because the value of those goods is held in trust for others, goods subject to reclamation do not enhance the debtor to the extent the value of those goods can be reclaimed.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
[HN25] *11 U.S.C.S. § 547(c)(4)* requires that the new value defense be permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable.

***Bankruptcy Law > Claims > Setoffs***
***Governments > Legislation > Interpretation***
[HN26] Reinserting a word from the prior statute that Congress omitted is not supported by ordinary canons of statutory construction.

2004 Bankr. LEXIS 2186, *

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***
***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Voidable Transfers > General Overview***

[HN27] If a debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, and if these subsequent payments are themselves voidable as preferences (or on any other ground), then under *11 U.S.C.S. § 547(c)(4)(B)* the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the earlier voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under *§ 547*, because the goods and services were given cash on delivery, rather than on a credit, or because the creditor has a defense under *§ 547(c)(1), (2), or (3)*. In this situation, the creditor may keep his payments but has no *§ 547(c)(4)* defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Exemptions > Subsequent New Value***

[HN28] That a debtor did not make an otherwise unavoidable transfer to the creditor on account of the new value is a predicate to the subsequent new value defense; it requires the court to analyze other available defenses to paid new value first. In other words, application of *11 U.S.C.S. § 547(c)(4)* requires prior determination of whether the transfer is protected under other portions of *11 U.S.C.S. § 547*.

***Bankruptcy Law > Committees > Reorganizations***
***Contracts Law > Contract Conditions & Provisions > Exculpatory Clauses***
***Torts > Negligence > Defenses > Exculpatory Clauses > General Overview***

[HN29] In its capacity as a member of a creditor's committee, a member has a right to limited immunity from suit. The Bankruptcy Code contemplates a significant and central role for committees in the scheme of a business reorganization. This broad scope of authority is set forth in *11 U.S.C.S. § 1103(c)(3)*, which provides that official committees are empowered to participate in the formulation of a plan, advise those represented by such committee of such committee's determination as to any plan formulated. This implies both a fiduciary duty to committee constituents, and a grant of limited immunity to committee members. Nevertheless, any such immunity

must be limited to actions taken within the scope of the committee's authority as conferred by statute or the court and may not extend to willful misconduct of the committee or its members.

***Bankruptcy Law > Claims > Proof > Effects & Procedures***

[HN30] See *11 U.S.C.S. § 501*.

***Bankruptcy Law > Claims > Types > Definitions***
***Bankruptcy Law > Conversion & Dismissal > Effects of Conversion***
***Civil Procedure > Judgments > Relief From Judgment > General Overview***

[HN31] A creditor is defined as an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; or an entity that has a claim against the estate of a kind specified in *11 U.S.C.S. §§ 348(d), 502(g), 502(g), 502(h), or 502(1)*. *11 U.S.C.S. § 101(10)*.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Preferential Transfers > Evidence & Procedure***
***Bankruptcy Law > Claims > Allowance***
***Bankruptcy Law > Claims > Proof > Content, Evidence & Form***

[HN32] The claims allowance process is outlined in *11 U.S.C.S. § 502*. It begins with: A claim or interest, proof of which is filed under *11 U.S.C.S. § 501* is deemed allowed, unless a party in interest objects. *11 U.S.C.S. § 502(a)*. *11 U.S.C.S. § 502(b)* lists nine factors that affect the allowance of a claim filed pursuant to *11 U.S.C.S. § 501*. *11 U.S.C.S. § 502(d)* conditions the allowance of a claim filed under *11 U.S.C.S. § 501* that the claim holder first return any avoidable transfer such as a preference under *11 U.S.C.S. § 547*.

***Bankruptcy Law > Claims > Allowance***
***Bankruptcy Law > Claims > Proof > Effects & Procedures***
***Bankruptcy Law > Claims > Reconsideration***

[HN33] *11 U.S.C.S. § 503* concerns administrative expenses, which are distinct from claims filed under *11 U.S.C.S. § 501*, and indeed, need not be requested by a "creditor." Administrative expenses are pursued by filing a request for payment under *11 U.S.C.S. § 503(a)*, not by filing a proof of claim under *11 U.S.C.S. § 501*. Procedure for the management of a request for administrative expense under the Federal Rules of Bankruptcy Procedure is separate and different than the management of

proofs of claim. There is no provision in *11 U.S.C.S. § 503* analogous to *11 U.S.C.S. § 502(d)* disallowing administrative expenses held by an entity that received an avoidable transfer.

**Bankruptcy Law > Claims > Allowance**
**Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > Priority**
[HN34] *11 U.S.C.S. § 502(d)* is not a barrier to the allowance of an administrative expense.

**Bankruptcy Law > Claims > Setoffs**
**Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > Priority**
**Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > Compulsory Counterclaims**
[HN35] An administrative expense request is not a compulsory counterclaim to a complaint for recovery of a preference. Administrative expenses are post petition charges entitled to statutory priority. They cannot be set off against prepetition claims. *11 U.S.C.S. § 553.*

**COUNSEL:** [*1] Samuel K. Crocker, Timothy G. Niarhos, Crocker & Niarhos, Nashville, TN, Counsel for the Consolidated Debtors acting by and through the Plan Administrator

Russell H, Hippe, Jr., Ronald G. Steen, Jr., Robert C. Goodrich, Jr., Stites & Harbison PLLC, Nashville, TN, Attorneys for Proficient Food Company

Mark I. Duedall, Chasta Nicole Williams, Alston & Bird LLP, Atlanta, GA, Attorneys for Proficient Food Company

**JUDGES:** KEITH M. LUNDIN, UNITED STATES BANKRUPTCY JUDGE

**OPINION BY:** KEITH M. LUNDIN

**OPINION**

MEMORANDUM

This preference action seeks recovery of $ 3.7 million in payments to the Debtors' primary supplier during the 90 days before bankruptcy. The Defendant moves for summary judgment on six grounds; 1) The subsequent new value defense in *11 U.S.C. § 547(c)(4)* reduces its maximum preference liability to $ 59,328-78; 2) Defendant's status as the only "critical vendor" in post petition orders insulates the Defendant from this preference action; 3) the Confirmed Plan released this Defendant as a member of the Official Creditors' Committee from any

avoidance exposure; 4) the Confirmed Plan failed to preserve preference actions under *11 U. S.C. § 1123* [*2] *(b)(3)*; 5) inadequate disclosure in the Confirmed Plan and the Disclosure Statement judicially estops Plaintiff from pursuit of preferences; and 6) resolution of Debtors' objection to Defendant's administrative expense request precludes this adversary proceeding.

[HN1] To prevail under *§ 547(c)(4)* a preference defendant must demonstrate that the debtor did not pay for new value with an otherwise unavoidable transfer. Post petition transfers to or from the estate are not considered in *§ 547(c)(4)* analysis. Because this Defendant raises other *§ 547(c)* defenses that are not ready for adjudication, the *§ 547(c)(4)* defense cannot be resolved on summary judgment. The Critical Vendor Order did not exempt the Defendant from suit under *§ 547.* The Confirmed Plan did not release Defendant, as a member of the Creditors' Committee, from this preference action. The Confirmed Plan did preserve preference actions for post confirmation prosecution. The Confirmed Plan and the Disclosure Statement are not inconsistent with this preference action for purposes of judicial estoppel. Debtors' objection to Defendant's administrative expense request does not preclude preference recovery. Accordingly, Defendant's [*3] Motion for Summary Judgment is denied.

I. Facts

Phoenix Restaurant Group, Inc. ("PRG"), a Georgia corporation, resulted from a 1996 merger between Denwest Restaurant Corp. and American Family Restaurants. The principal business of PRG was operating Denny's family style restaurants pursuant to franchise agreements with Advantica Restaurant Group, Inc. (and its predecessors and successors). Throughout the 1990's PRG acquired Denny's locations, and expanded into other restaurant concepts, including Black-Eyed Pea restaurants. In September 2001, PRG operated 96 Denny's restaurants and 91 Black-Eyed Pea restaurants primarily in Florida, Texas, Arizona, Colorado and Oklahoma.

On October 18, 2001, an involuntary Chapter 7 proceeding was filed against PRG in the Middle District of Florida. The involuntary case was transferred to the Middle District of Tennessee by order entered October 29, 2001. On October 31, 2001, PRG moved to convert the involuntary Chapter 7 case to a voluntary Chapter 11. Also on October 31, 2001, five affiliates of PRG -- Denam, Inc., Phoenix Foods, Inc., Black-Eyed Pea U.S.A, Inc., Prufrock Restaurants of Kansas, Inc. and Texas BEP, L.P. -- filed voluntary [*4] Chapter 11 cases in the Middle District of Tennessee. An order converting PRG's case to Chapter 11 was entered November 6, 2001.

2004 Bankr. LEXIS 2186, *

On November 13, 2001, the Office of the United States Trustee appointed a consolidated unsecured creditors committee (Creditors' Committee) pursuant to *11 U.S.C. § 1102(a)*. Proficient was one of five creditors named to the Creditors' Committee.

On November 16, 2001, the Debtors-In-Possession moved for authority to make "payments on account of prebankruptcy claims of the Debtors' critical food supply vendor Proficient Foods Company" ("Critical Vendor Motion"). Proficient was described as the only source approved by the Denny's franchisor for proprietary foodstuffs and restaurant supplies. Weekly inventory purchases from Proficient exceeded $ 250,000. Debtors stated that Proficient had threatened to stop providing goods unless payments were made on account of its prepetition indebtedness of approximately $ 7 million. Debtors represented that continued operation of their Denny's restaurants would be cost prohibitive without Proficient.

The Critical Vendor Motion proposed wire transfers to Proficient of $ 63,750 each day through December 28, 2001. This [*5] amount would first pay all current, post petition claims (estimated at about $ 50,000 a day), with the balance (estimated at $ 13,750 per day or $ 68,750 per week) applied to Proficient's prepetition claim. In any week in which purchases did not reach $ 250,000, the difference would be applied to Proficient's prepetition claim, If weekly purchases exceeded $ 250,000, Debtors were obligated to pay Proficient the excess to net $ 68,750 for the week toward prepetition claims. After December 28, 2001, weekly payment toward prepetition debt was reduced to $ 50,000. Additionally, Debtors would make a Sump sum payment of $ 122,500 at approval of the motion, and $ 250,000 on December 3, 2001, both applied to Proficient's prepetition claim. The $ 122,500 payment was earmarked for Proficient's claims under PACA and PASA. All other payments were to be applied first to any claims Proficient had for goods subject to reclamation (approximately $ 540,000). Total critical vendor payments on account of Proficient's prepetition claims were to be $ 900,000. [1] In return, Proficient would supply Debtors through March 30, 2002.

> 1   The $ 900,000 was a set amount, mat would be granted superiority status in the event of a sate of the Debtors' assets, junior only to debtor-in-possession financing.

[*6]   The Critical Vendor Motion was noticed to creditors with opportunity for objection and a hearing. The United States Trustee, the Creditors' Committee and LH Leasing Company filed objections to the Critical Vendor Motion, but the parties announced a global agreement prior to the hearing. An order granting the motion ("Criticai Vendor Order") was entered on December 12, 2001. [2]

> 2   Nothing in this memorandum should be misconstrued to express an opinion with respect to the propriety of this or any other "Critical Vendor" motion in the event of an unresolved objection.

On April 29, 2002, Debtors filed a Joint Liquidating Plan of Reorganization and Disclosure Statement, On October 23, 2002, the First Amended Joint Liquidating Plan was confirmed (the "Confirmed Plan"). The Confirmed Plan substantively consolidated the Debtors, and appointed PENT A Advisory Services as Plan Administrator.

> The Confirmed Plan defined "Bankruptcy Causes of Action" as:
>
> All claims, actions, causes of action... arising under [*7] the Bankruptcy Code (including, but not limited to, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under *sections 506, 510, 543, 544, 545, 547, 548, 549, 500* [sic], *551*, and *553* of the Bankruptcy Code or otherwise) of the Debtors, the Debtors in Possession, and/or the Post Confirmation Estate (including, but not limited to, those actions identified on Exhibits A, B, and C attached hereto to the extent they constitute Bankruptcy Causes of Action as defined herein) that. .. may be instituted by the Plan Administrator[.]

(Confirmed Plan P 1.15, at 2.)

> Article XVI of the Confirmed Plan provided;
>
> 16.6 Preservation of Rights of Action:
>
> ....
>
> 16.6.2 In addition, potential Bankruptcy Causes of Action which may be pursued by the Debtors prior to the effective Date and by the Plan Administrator, on behalf of the Post-Confirmation Estate after the Effective Date, are identified on Exhibits A, B, and C attached hereto and also include, without limitation, the following to the extent they are not set forth on the attached Exhibits:

....

Except for the express waiver of certain claims in the Plan, [*8] any and all actual or potential avoidance claims pursuant to any applicable section of the Bankruptcy Code, including, without limitation *section 544, 545, 547, 548, 549, 550, 551, 553(b)* and/or *724(a)* of the Bankruptcy Code, arising from any transaction involving or concerning the Debtors.

....

Certain potential Causes of Action as to which the Debtors are continuing their investigation of the complete nature, factual basis, and/or legal basis are identified on Exhibit C attached hereto and incorporated herein by reference. The Debtors specifically reserve any Causes of Action that may arise from the factual circumstances described on Exhibit C, in addition to any Causes of Action generally described herein.

....

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with *section 1123(b)(3) of the Bankruptcy Code*, any claims, rights and Causes of Action that the respective Debtors, or the Post-Confirmation Estate may hold against any Entity, including but not limited to those Bankruptcy Causes of Action . . . shall vest in the Post-Confirmation Estate, and the [*9] Plan Administrator, on behalf of the Post-Confirmation Estate, shaft retain and may exclusively enforce, as the authorized representative of the Post-Confirmation Estate, any and all such... Causes of Action.

(Confirmed Plan P 16.6.2, at 22-3. *See also* Disclosure Statement P V.E. 8, at 62.) [3]

3    "Causes of Action" is defined in the Plan to include Bankruptcy Causes of Action. Plan at P 1.22.

In support of this provision of the Confirmed Plan, the Disclosure Statement provided under the heading "Preservation of Causes of Action:"

The Debtors are currently investigating whether to pursue potential Causes of Action against other Entities. . . . The investigation has not been completed to date, and under the Plan, the Plan Administrator,..., retains all rights on behalf of the Debtors and the Post-Confirmation Estate to commence and pursue any and all Bankruptcy Causes of Action . . . discovered in such an investigation to the extent the Plan Administrator, on behalf to the Post-Confirmation Estate, [*10] deems appropriate in his reasonable business judgment.

....

b. In addition, potential Bankruptcy Causes of Action which may be pursued by the Debtors prior to the Effective Date and by the Plan Administrator, on behalf of the Post-Confirmation Estate after the Effective Date, also include, without limitation the following:

....

Except for the express waiver of certain claims in the Plan, any and all actual or potential avoidance claims pursuant to any applicable section of the Bankruptcy Code, including, without limitation *sections 544, 545, 547, 548, 549, 550, 551, 553(b)* and /or *724(a)* of the Bankruptcy Code, arising from any transaction involving or concerning the Debtors.

(Disclosure Statement P V. E.8, at 59-60.)

The Exhibit A referenced in Confirmed Plan P 16.6.2 reasserts the reservation of preference actions "arising from any transaction involving or concerning the Debtors relating to the Persons and Entities set forth in Exhibit A-1 and the specific payments received by such Persons or Entities during the statutory preference period, as identified on Exhibit A-1." (PL's Amd, Resp. Ex.1.)

The liquidation analysis attached to the Debtors' Disclosure Statement included [*11] a line item under "Non-cash Assets" for "Preference Actions, "and assigned a value between $ 0 and $ 100,000,00 to such actions. The Disclosure Statement noted: "It is impossible to predict with any degree of certainty the range of recoveries available to General Unsecured Claimants due to the speculative nature of the Bankruptcy Causes of Action. . . . Accordingly, recoveries on account of Allowed Unsecured Claims may realistically be as low as zero," (Disclosure Statement P V.C.9.C, at 47.) The Disclosure Statement further explained that proceeds from Bankruptcy Causes of Action "are speculative and uncertain and therefore no value has been assigned to such recoveries. The Debtors and the Post-Confirmation Estate do not intend, and it should not be assumed that because any existing or potential Bankruptcy Causes of Action... have not yet been pursued by the Debtors or are not set forth herein, that any such Bankruptcy Causes of

action ... have been waived." (Disclosure Statement P V.E.8.b, at 61.)

The Disclosure Statement explained that the Plan Administrator would be granted authority to pursue Causes of Action, which included Bankruptcy Causes of Action, for the benefit of the [*12] estate. (Disclosure Statement P 11.A (Description of Property to be Distributed under the Pten), P V.E.3 (Provisions Governing Plan Implementation; Powers and Duties of the Plan Administrator).)

On October 31, 2003, the Plan Administrator filed over 200 adversary proceedings to avoid preferential transfers under *11 U.S.C. § 547(b).* [4] This action against Proficient seeks avoidance and recovery of payments totaling $ 3,707,311.97 during the 90 days before bankruptcy.

> 4   For reasons not revealed, the complaints, briefs and other documents filed by the Plan Administrator in these adversary proceedings are not consistent with respect to whether the Plaintiff is a singular eniity -- the Plan Administrator -- or several entities -- the Plan Administrator, the Reorganized Debtors and the Post Confirmation Estate.

Proficient pleaded many defenses including the statutory defenses in *11 U.S.C. § 547(c)(1)* (contemporaneous exchange), *(c)(2)* (ordinary course of business) and [*13]   *(c)(4)* (subsequent new value). Proficient moved for summary judgment.

## II Analysis

### A, Summary Judgment Standards

[HN2] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of Jaw." *Fed. R. Civ. P. 56(c)*; *Celotex. Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir.1989)*. The court is not to "'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial-31" *Browning v. Levy, 283 F.3d 761, 769 (6th Cir. 2002)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Liberty Lobby, 477 U.S. at 252*).

[HN3] The moving [*14]  party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett, 477 U.S. at 325*. The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52, 106 S. Ct. 2505, 2511-12, 91 L Ed. 2d 202(1988)*. All inferences are drawn in the light most favorable to the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.), 323 F.3d 439, 442 (6th Cir. 2003)* (citations omitted). The party opposing a motion for summary judgment, however, "'may not rest upon mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial.' The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Tri-City Turf Club, Inc., 323 F.3d at 442-43* (internal citations and quotations omitted). *See also Liberty Lobby, Inc., 477 U.S. at 248*; *Matsushita Elec. Indus, Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L Ed. 2d 538 (1986)*. [*15]   "'If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001)* (quoting *Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 349 (6th Cir. 1998)*).

### B. Res Judicata and Judicial Estoppel

Citing *Browning v. Levy, 283 F.3d 761 (6th Cir. 2002)*, Proficient contends that the Confirmed Plan and Disclosure Statement failed to preserve preference actions from the res judicata effect of confirmation. Proficient argues that Debtors' failure to expressly name Proficient as a potential preference defendant before confirmation precludes this complaint. That the Debtors' "telephone-book style appendages attached to the First Amended Plan" named Proficient as an entity that received payments during the preference period, does not change this result because Proficient was (informed of but) not personally served with those attachments.

Plaintiff responds that the preference retention provisions of the Confirmed Plan and Disclosure Statement satisfy this court's recent decision in  [*16]  *Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.), 316 B.R. 495 (Bankr. M.D. Tenn. 2004)*.

As explained in *Pen Holdings,* [HN4] confirmation of a Chapter 11 plan can be preclusive of trustee or debtor-in-possession avoidance actions on principles of res judicata. Preclusion can be prevented by providing in the plan for the preservation of avoidance actions. This power of preservation is codified in *11 U.S.C. § 1123(b)(3)*. [5] The issue addressed in *Pen Holdings* and raised here is whether the language of the Disclosure Statement and Confirmed Plan is sufficient to overcome

the res judicata effect of confirmation with respect to this preference action.

5   [HN5] *11 U.S.C. § 1123(b)(3)* provides:

(b) Subject to subsection (a) of this section, a plan may -- ....

(3) provide for --

(A) the settlement or adjustment of any claim or interest belonging to the debtor to the estate; or (8) the retention and enforcement by the debtor, by the trustee, or by a representatives of the estate appointed for such purpose, of any such claim or interest.

[*17]   In *Pen Holdings,* after reviewing the history of *11 U.S.C. § 1123(b)(3)*, this court concluded that [HN6] "the notice at issue in *§ 1123(b)(3)* is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." *Pen Holdings, 316 B.R. at 500-01.* Considering Sixth Circuit precedent, in the context of the history of *§ 1123(b)(3)* and acknowledging conflicting lower court decisions, this court determined that [HN7] the Sixth Circuit has

not established a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, *§ 1123(b)(3)* protects the estate from loss of potential assets, It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy *§ 1123(b)(3)* must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available [*18] for distribution?

*Id. at 504.*

Application of this standard yields a clearer case than *Pen Holdings.* As detailed above, the Confirmed Plan, Disclosure Statement and exhibits repeatedly reserve Bankruptcy Causes of Action, defined to include preference actions under *§ 547.* The references to preference litigation are not concealed as retention of jurisdiction provisions, are not ambiguously worded and specifically reference *§ 1123(b)(3)* of the Code. That preference actions would be assets of the Post-Confirmation Estate, to be investigated and prosecuted by the Plan Administrator is plainly set forth in the Confirmed Plan and Disclosure Statement. Potential preference recovery -- admittedly speculative -- was included in the liquidation analysis.

Debtors went further than a general reservation of preference actions and attached exhibits to the Disclosure Statement and Confirmed Plan that listed, to the extent then possible, creditors to whom payments were made during the preference period. Proficient was named in the exhibits to the Confirmed Plan. Creditors were able to identify and evaluate the estate's assets -- including preference actions under *§* [*19] *547* -- through the disclosures and reservations contained in the Confirmed Plan and Disclosure Statement.

Proficient's complaint that it was not personally served with the exhibits to the Disclosure Statement and Confirmed Plan misses the point. At one level, [HN8] personal service of the lengthy list of potential preference recipients is not required by this court's analysis of *§ 1123(b)(3)* in *Pen Holdings.* Service of such a list would certainly be a strong component of an effort to preserve preference actions, but hardly a mandatory element.

More basically, Proficient does not deny it was properly served with the Disclosure Statement and Confirmed Plan that referenced the exhibits available for delivery on request or for immediate viewing at the bankruptcy court. Proficient was a self-described major player in these bankruptcy cases -- one of five members of the Creditors' Committee and the *only* "Critical Vendor," with a $ 7 million prepetition claim. There is no contention that Proficient was without knowledge of the exhibits to the Disclosure Statement and Confirmed Plan or that it lacked opportunity to look for itself therein.

Judicial estoppel does not add muscle to Proficient's [*20] preclusion argument. [HN9] "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary

matter or as part of a final disposition1" *Browning v. Levy, 283 F.3d at 775* (quoting *Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214,1218 (6th Cir.1990)*). The doctrine "is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id. at 776* (quoting *Teledyne Indus., Inc. v. NLRB, 911 F.2d at 1218*).

Defendant's judicial estoppel argument mischaracterizes the multiple references to preference actions reproduced above from the Confirmed Plan and Disclosure Statement as a "generic reservation" that is not consistent with pursuit of this action against Proficient, As explained above, the Confirmed Plan and Disclosure Statement quite adequately identify and preserve preference actions for investigation and litigation by the Plan Administrator after confirmation. Even considered alone, the [*21] Disclosure Statement clearly stated that the Debtors had not completed the preference analysis, and that the Plan Administrator would evaluate prepetition transfers with authority to pursue preference actions after confirmation. This adversary proceeding is not inconsistent with the Disclosure Statement; it is the incarnation of exactly what the Confirmed Plan and Disclosure Statement foretold Defendant's judicial estoppel argument fails on summary judgment because there is no inconsistent preconfirmation position on which to bottom the theory.

*C, 11 U.S.C. § 547(c)(4) Defense*

[HN10] The Bankruptcy Code empowers the trustee in bankruptcy to recover for the benefit of all creditors transfers within 90-days of bankruptcy that have the effect of preferring one creditor over others. *11 U.S.C. §§ 547 & 550.* The trustee bears the burden of proof on all elements of a preference listed in *§ 547(b). 11 U.S.C. § 547(g); Corzin v. Decker, Vonau, Sybert & Lackey, Co., L.P.A. (In re Simms Constr. Servs. Co.), 311 B.R. 479, 484 (B.A.P. 6th Cir. 2004).* The preference defendant has eight statutory defenses [*22] described in *§ 547(c),* and bears the burden of proof on each defense. *11 U.S.C. § 547(g); see Chrysler Credit Corp. v. Hall 312 B.R. 797, 803 (E.D. Va. 2004).*

[HN11] *Section 547(c)(4) is short-handedly referred to as the subsequent advance exception to preference recovery. Waldschmidt v. Ranter (In re Fulghum Constr. Corp.), 706 F.2d 171,172 (6th Cir), cert. denied, 464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 342, 104 S. Ct. 343 (1983).* This statutory defense provides:

(c) The trustee may not avoid under this section a transfer --

....

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor --

(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

*11 U.S.C. § 547(c)(4).*

[HN12] The logic of this defense is that an otherwise preferential transfer is not avoidable to the extent that, after the transfer, the creditor gave the debtor "new value" in a form that replenished [*23] the debtor. *See, e.g., Williams v. Agama Sys., Inc. (In re Micro Innovations Corp.), 185 F.3d 329, 336 (5th Cir. 1999).* Replenishing the debtor for purposes of the *§ 547(c)(4)* defense has several facets. Fundamentally, the debtor must receive "new value" defined by *§ 547(a)(2)* as follows:

[HN13] (a) In this section --

....

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

*11 U.S.C. § 547(a)(2).*

[HN14] New value given after a preferential transfer helps the defendant only if it is not secured by an unavoidable security interest. *11 U.S.C. § 547(c)(4)(A). See in re Micro Innovations Corp., 185 F.3d at 334-35.* This makes sense because the debtor is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the [*24] preferential transfer.

Also, [HN15] the new value must not have been paid for by the debtor with a transfer that cannot itself be avoided, *11 U.S.C. § 547(c)(4)(B).* In other words, the new value must remain an enhancement of the debtor notwithstanding transfers (typically payments) to the

2004 Bankr. LEXIS 2186, *

creditor by the debtor after the new value was given. A payment by the debtor to the creditor after the creditor gave new value does not unravel the defense if the payment can itself be recovered as an avoidable transfer.

The policy behind *§ 547(c)(4)* is two fold. One: It encourages creditors to continue to do business with troubled businesses, which may allow some to avoid bankruptcy altogether. *See, e.g.*, *In re Micro innovations Corp.*, 185 F.3d at 332; *Fitzpatrick v. Rockwood Water Wastewater & Natural Gas Sys. (in re Tennessee Valley Steel Corp.)*, 201 B.R. 927, 939 (Bankr. E.D. Tenn. 1996) (citations omitted). Two: "A subsequent advance is excepted because a creditor who contributes new value in return for payments from the incipient bankruptcy . . . should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other [*25] creditors." *Charisma Inv. Co. v. Airport Sys. (In re Jet Florida Sys.)*, 841 F.2d 1082, 1083 (11 th Cir. 1988) (per curiam). *See also Chrysler Credit Corp. v. Hall*, 312 B.R. at 803 ("It is grounded in 'the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors.'") (quoting *Lubman v. C.A. Guard Masonry Constr., Inc. (In re Gem Constr. Corp.)*, 262 B.R. 638, 645 (Bankr. E.D. Va. 2000)). New value that replenishes the debtor balances the preferential effect of a prior transfer from the debtor. *See, e.g., Waldschmidt v. Mid-State Homes, Inc. (In re Pitman)*, 843 F.2d 235, 241-42 (6th Cir. 1988).

This Motion for Summary Judgment raises two issues under *§ 547(c)(4)(B)*: 1) Whether transfers to or from the Debtors-In-Possession after the bankruptcy petitions affect the subsequent new value defense; and 2) application of the "otherwise unavoidable" element of *§ 547(c)(4)(B)*. Proficient calculates that the *§ 547(c)(4)* defense reduces the maximum preference recovery from $ 3.7 million to $ 59,328,78. In support, [*26] Proficient offers the affidavit of Gordon Eatherly.

Plaintiff responds that Proficient's methodology gives credit for "new value" without regard to whether that new value "remained unpaid;" or alternatively, Proficient fails to disqualify new value that was subsequently paid for by Debtors with a transfer that is not "otherwise avoidable" as required by *§ 547(c)(4)(B)*. Plaintiff invites the adoption of cases that read *§ 547(c)(4)* to require (only) that new value remain unpaid, regardless of the avofdability of any transfer that paid for new value. If the court rejects this approach, Plaintiff asserts that Proficient nonetheless neglected to account for "otherwise unavoidable' transfers in two ways; (1) Post petition payments under the Critical Vendor Order are unavoidable payments on account of new value; and (2) other defenses with respect to avoidance of prepetitton transfers must be determined before consideration of

the *§ 547(c)(4)* defense. At oral argument, Plaintiff seemed to advocate that any payment rendered unavoidable by *subsection (c)(4)* should disqualify new value paid for by that unavoidable transfer. In other words, Plaintiff would apply *subsection (c)(4)* within itself.

[*27] *1. Post Petition Transfers*

[HN16] The plain language of *§ 547* closes the preference window at the petition, limiting the *§ 547(c)(4)* defense to new value supplied and payments made before the debtor crosses into bankruptcy. As explained by the Eighth Circuit in *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1284 (8th Cir. 1988), post petition goods or services provided to a debtor in possession do not qualify as "new value" for purposes of *§ 547(c)(4)*: "'for the benefit of the debtor ***' ... impl[ies] that subsequent advances of new value are only those given pre-petition, because any post-petition advances are given to the debtor's estate, not to the debtor." (emphasis in original). *Accord Field v. Maryland Motor Truck Assoc. Workers Compensation Self-Insurance Group (In re George Transfer, Inc.)*, 259 B.R. 89, 96 (Bankr. D. Md. 2001) ("Unfortunately for the defendant, its refund to the debtors does not qualify under *Section 547(c)(4)* as 'new value' because it was made postpetition. Indeed, this Court has found no case decided under *Section 547(c)(4)* that permitted a transferee to successfully [*28] defend an action for the recovery of a preference based upon a subsequent advance that was made postpetition.") (citing *Schwinn Plan Comm. v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.)*, 205 B.R. 557 (Bankr. N.D. 111.1997); *Clark v. Frank B. Hall & Co. of Colo. (In re Sharon Food Serv., Inc.)*, 179 B.R. 669, 678 (Bankr. D. Colo. 1995) (The specific language 'to or for the benefit of the debtor' [indicates] that the subsequent advances of new value are only those given prepetition, because any post-petition advances are given to the debtor's estate, not the debtor."); *Wallach v. Vulcan Steam Forging (In re D.J. Mgmt. Group)*, 161 B.R. 5 (Bankr. W.D.N.Y. 1993); *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669 (Bankr. D. Vt.1989); *Warsco v. Ryan (In re Richards)*, 92 B.R. 369 (Bankr. N.D. lnd.1988); *Cullen v. TDK Blec. Corp. (In re Antinarett Enter.)*, 76 B.R. 247 (Bankr. D. Mass. 1987); *Official Labor Creditors Comm. v. Jet Florida Sys. (In re Jet Florida Sys.)* 80 B.R. 544 (S.D. Fla.1987)).

[HN17] *Section 547(c)(4)(B)* focuses [*29] on actions of the debtor, "on account of which new value *the debtor did not make* an otherwise unavoidable transfer...." Throughout *§ 547*, "the debtor" refers to the *prepetition* entity that transferred property or engaged in business with the preference defendant. Had Congress intended *§ 547(c)(4)(B)* to account for payments made post petition, the section would have included something

like "an otherwise unavoidable transfer of an interest of the estate in property to or for the benefit of such creditor." Instead, Congress disqualified only new value paid for by "the debtor" with an otherwise unavoidable transfer. *11 U.S.C. § 547(c)(4)(B).*

Closing *§ 547(c)(4)* analyses at the petition is consistent with other Code remedies that only apply post petition. Creditors who continue to supply the debtor-in-possession with goods and services post petition are provided special priority for payment from the bankruptcy estate. *See 11 U.S.C. §§ 364 & 503(b); see also Wolinsky v. Central Vermont Teachers Credit Union (In re Ford), 98 B.R. 669, 683 (Bankr. D. Vt. 1989)* ("Once the bankruptcy petition is filed ... other sections [*30] of the Code provide protection to parties advancing credit. For example, *§ 364* provides mechanisms for secured and unsecured lending to the debtor-in-possession. The problem with allowing post-petition advances to freely offset against otherwise avoidable preferences is that no mutuality of debt exists and control of the finances of the estate is taken out of the hands of the Court and fiduciaries for the estate and placed in the hands of a single creditor who is hostile to the overall interests of the estate and its creditors. 'To permit such offsets notwithstanding possible prejudice to other creditors would ignore the orderly mechanism established by Congress to protect all interested parties concerned.'") (quoting *Jet Florida Sys. v. Eastern Air Lines, Inc. (In re Jet Florida Sys.), 59 B.R. 886, 890 (Bankr. S.D. F!a. 1986)*). A post petition transfer that is not authorized by the court or by the Code can be recovered by the trustee or debtor-in-possession under *§ 549:* "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case[.]" *11 U.S.C. § 549(a)(1).* Notice that *§ 549(a)(1)* [*31] refers to a transfer of *property of the estate,* and not to a payment made by *the debtor.*

[HN18] At its heart, the preference power in *§ 547* levels the playing field for creditors that do business with a debtor during the slide into bankruptcy. *See Union Bank v. Wolas, 502 U.S. 151, 160-161, 116 L. Ed. 2d 514, 112 S. Ct. 527, 533 (1991)* ("The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the prefer-

ence section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy [*32] furthers the second goal of the preference section-that of equality of distribution.'") (quoting H.R. Rep. No. 595, 95th Cong., 177-78, *reprinted in* 1978 U.S.C.C.AN. 5787, 6137, 6138); *Gregory v. Community Credit Co. (In re Biggers), 249 B.R. 873, 879 (Bankr. M.D. Tenn. 2000)* (accord). These policy considerations change when the petition is filed and the debtor becomes a bankruptcy estate under the administration of the bankruptcy court and subject to the scrutiny of creditors, committees, the U.S. Trustee, etc.

[HN19] The Sixth Circuit has not decided whether post petition transactions between a creditor and a Chapter 11 debtor-in-possession affect the subsequent new value defense in *§ 547(c)(4).* The Sixth Circuit has held that post petition debt does not affect the hypothetical liquidation value of the estate for purposes of *§ 547(b)(5).*

In *Neuger v. United States (In re Tenna Corp.), 801 F.2d 819 (6th Cir. 1996),* the IRS received a large income tax payment two months before Tenna Corporation filed Chapter 11. During the Chapter 11 case, the corporation as debtor-in-possession borrowed several million dollars secured by super priority liens. The [*33] Chapter 11 failed and converted to Chapter 7. The Chapter 7 trustee sued the IRS to recover the prepetition payment as a preference.

One element of the trustee's preference case was *11 U.S.C. § 547(b)(5)* -- the so-called "greater percentage test":

[HN20] (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property --

.....

(5) that enables such creditor to receive more than such creditor would receive if --

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2004 Bankr. LEXIS 2186, *

*11 U.S.C. § 547(b)(5).*

If calculated at the date of Tenna's Chapter 11 petition, the IRS's priority in a hypothetical Chapter 7 case would have produced a greater dividend than if the hypothetical liquidation was timed as of trial in the adversary proceeding -- after the run up of debt and superpriority liens during the Chapter 11 case. The bankruptcy and district courts bought the trustee's argument for hypothetical liquidation at the date of trial. [*34] The Sixth Circuit disagreed.

Citing *Palmer Clay Products Co. v. Brown, 297 U.S. 227, 56 S. Ct. 450, 80 L. Ed 655 (1936)*, the Sixth Circuit held that the testing date for *§ 547(b)(5)* purposes was the date of the bankruptcy petition. In support of this conclusion, the Sixth Circuit focused on congressional concern for equality of distribution among creditors and made these broader observations about post petition debt in preference litigation;

> [HN21] In the context of *§ 547(b)*. Congress' stated concern is reflected only for those creditors with claims against the debtor's estate on the date the petition is filed.
>
> . . . Although the Code gives the bankruptcy court power to grant super-priority status to banks which extend credit to debtors during their reorganization efforts under *11 U.S.C. § 364*, we can find nothing in the Code indicating that post-petition debt incurred during a reorganization should be included in the *§ 547* determination.

*Tenna, 801 F.2d at 823.*

The subsequent new value defense in *§ 547(c)(4)* was not at issue in *Tenna*. But the Sixth Circuit found good policy reasons to isolate post petition [*35] debt from preference analysis under *§ 547(b)*, and *Tenna* supports the similar conclusion here with respect to *§ 547(c)(4)*.

Plaintiff cites *Ringel Valuation Services, Inc. v. Shamrock Foods Co. (in re Arizona Fast Foods, LLC), 299 B. R. 589 (Bankr. D. Ariz. 2003)*, for the proposition that post petition payments pursuant to the Critical Vendor Order on account of PACA [6] and reclamation claims are "otherwise unavoidable" transfers that reduce the new value defense available to Proficient. In *Arizona Fast Foods*, a restaurant operator not unlike these Debt-

ors, stipulated that it owed a supplier (Shamrock) a PACA claim for perishable agricultural commodities; a reclamation [7] claim for goods delivered within 10 days before bankruptcy; and an ordinary unsecured claim. [8] The confirmed plan paid Shamrock's PACA and reclamation claims in full. Months later, the liquidating trustee objected to Shamrock's remaining unsecured claim alleging that Shamrock had received preferential transfers during the 90 days before bankruptcy. [9]

6   *See* Perishable Agricultural Commodities Act, *7 U.S.C. § 499s* -- 499s.

[*36]

7   *See* n [HN22] U.S.C. *§ 546(c)*, that provides:

> (c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but --
>
> > (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods --
> >
> > (A) before 10 days after receipt of such goods by the debtor; or
> >
> > (B) If such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
> >
> > (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the

court-(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this tittle; or

(B) secures such claim by a lien.

8    There was also a secured claim not relevant here.

9    See discussion below of *11 U.S.C. § 502(d)*("The court shall disallow any claim of any entity from which properly is recoverable , , . or that is a transferee of a transfer avoidable under *section ,.. 547...* unless such entity or transferee has paid the amount or turned over any such property for which such entity or transferee is liable.").

[*37]    The trustee moved for summary judgment that Shamrock could not use goods shipped to the debtor prepetition that formed the predicate for its (fully-paid) PACA and reclamation claims as "new value" for *§ 547(c)* purposes. Citing *In re Fresh Approach, Inc., 51 B.R. 412 (Bankr. ND. Tex. 1985)*, the bankruptcy court held that neither the PACA goods nor the proceeds of PACA goods figured in *§ 547* analysis because of the trust created by PACA:

The Courts have universally recognized that any property held by a debtor in a statutory PACA Trust is excluded from the bankruptcy estate....Since PACA trust funds are not property of the estate, and the debtor never obtains a beneficial interest in the produce sold to it, PACA trust fund creditor has an otherwise unanticipated preference defense. ... As the Debtor received payments for the produce, it was required to hold the funds in trust for Shamrock. These funds never became property of the bankruptcy estate, and the Debtor, or the Liquidating Trustee, as the Debtor's successor, was required to turn these funds over to Shamrock. This has happened. However, since these trust funds have no effect on the bankruptcy estate [*38]  (they never be-

came part of the estate), they cannot be used by the Liquidating Trustee or Shamrock in any preference analysis.

....

The PACA claims, for the reasons stated above, must be excluded in considering whether Shamrock has a 'new value' defense.

*Arizona Fast Foods, 299 B.R. at 595-97* (internal citations omitted).

With respect to Shamrock's reclamation claim, the bankruptcy court stated this additional conclusion:

Shamrock was paid in full by Stipulation on its reclamation claim, so the 'new value' has become unavoidable ... and does not replenish the estate to protect earlier transactions from constituting preferences. . . . Any reclamation goods shipped pre-petitton, which have now been paid in full, may not be used as a part of the 'new value' defense.

*Arizona Fast Foods, 299 B.R. at 597.*

*Arizona Fast Foods* seems correct with respect to PACA claims: Goods shipped to the debtor in statutory trust from the time of delivery [10] are not new value for *§ 547(c)(4)* purposes because the debtor is not enhanced as contemplated by *§ 547(a)(2)*; proceeds from the sale of goods held in a PACA trust do not become property [*39]  of the debtor (or property of the bankruptcy estate) and thus, when paid to the PACA claimant there is no transfer of property of the debtor for *§ 547* purposes.

10    *See In re Fresh Approach, 51 B.R. at 419-22.*

Here, the Critical Vendor Motion and Order acknowledged a PACA claim in Proficient and resolved that claim with post petition cash payments. On summary judgment, neither party has accounted for the delivery of PACA goods or the payment of PACA funds consistent with the trust fund logic in *Arizona Fast Foods.*

*Arizona Fast Foods* reaches the right result with respect to the effect of reclamation on the new value defense, but slightly different logic explains that outcome. [HN23] As a matter of statutory interpretation, post petition payment through the confirmed plan in *Arizona Fast Foods,* or, as here, by the Debtors-in-Possession, was not a transfer by the *debtor* for *§ 547(c)(4)(B)* purposes. Accordingly, the post petition payment cannot be an "oth-

erwise unavoidable" transfer by [*40] the debtor that defeats the prepetition new value for which it paid.

However, [HN24] goods shipped on the eve of bankruptcy that are subject to reclamation are not the same "money or money's worth" as goods shipped free of the seller's strings. See *11 U.S.C. § 547(a)(2)*. In the same sense that goods subject to a PACA trust do not enhance the debtor because the value of those goods is held in trust for the growers and shippers, goods subject to reclamation do not enhance the debtor to the extent the value of those goods can be reclaimed.

Here, the new value given by Proficient must be reduced to reflect its reclamation claim -- not because it received an otherwise unavoidable payment after the petition -- but because the new value given to the Debtors prepetition should be discounted to reflect the right of reclamation preserved by *§ 546(c)*. Put another way, the Plaintiff cannot use post petition payments under the Critical Vendor Order as "otherwise unavoidable" transfers that deplete the prepetition new value given by Proficient; but Proficient in its calculations failed to adjust new value during the preference period to reflect goods subject to reclamation.

### [*41] 2. "Otherwise Unavoidable"

Proper accounting for new value for *§ 547(c)(4)* purposes is thoroughly explained by Judge Waldron in *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.), 315 B.R. 443 (Bankr. S.D. Ohio 2004)*. Judge Waldron convincingly discredits the "remains unpaid" test applied by some courts [11] in favor of the plain meaning of the statute, double negatives notwithstanding. [HN25] The statute requires that "the new value defense [be] permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable." *Id. at 471. Accord Jones Truck Lines, Inc. v. Central States (In re Jones Truck Lines, Inc.), 130 F.3d 323 (8th Cir. 1997); Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.), 52 F. 3d 228 (9th Cir. 1995); Laker v. Vallette (In re Toyota of Jefferson), 14 F.3d 1088 (5th Cir. 1994); Chrysler Credit Corp. v. Hall, 312 B.R. 797 (ED. Va. 2004); Field v. Maryland Motor Truck Assoc. Workers Compensation Self-insurance Group (In re George Transfer, Inc.), 259 B.R. 89, 95 (Bankr. D. Md. 2001); Pay 'N Pak Stores v. Slide-Co. (In re PNP Holdings Corp.), 167 B.R. 619 (Bankr. W.D. Wash, 1994);* [*42] *Boyd v. Water Doctor (In re Check Reporting Servs.), 140 B.R. 425 (Bankr. W.D. Mich. 1992)* (the requirement that new value remain unpaid is an "'inaccurate and confusing paraphrase of a clearly stated statutory purpose'") (quoting *Valley Candle Mfg. Co. v. Stonitsch (In re Isis Foods, Inc.), 39 B.R. 645, 653 (W.D. Mo. 1984)*).

11    *See Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 653 (8th Cir. 1991)* (creditor who has been paid for the new value by the debtor may not assert a new value defense); *New York City Shoes, Inc. v. Benttey In'l Inc. (In re New York City Shoes, Inc.), 880 F.2d 679, 680 (3d Cir.1989)* ("the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition"); *In re Jet Florida Sys., Inc., 841 F.2d at 1083* (same); *In re Prescott, 805 F.2d 719, 731 (7th Cir. 1988)* (same).

[*43] Had Congress intended "otherwise unavoidable" to mean that new value must remain unpaid, it would simply have said so. Indeed, § 60(c) of the Bankruptcy Act, the predecessor to *§ 547(c)(4)*, specifically provided that only "the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable" from the creditor as a preference. *11 U.S.C. § 96(c)* (repealed). The word "unpaid[11] is conspicuously absent from *§ 547(c)(4)*. [HN26] Reinserting a word from the prior statute that Congress omitted is not supported by ordinary canons of statutory construction. *See Chrysler Credit Corp. v. Hell, 312 B.R. at 805. See generally* Robert H. Bowmar, *The New Value Exception to the Trustee's Preference Avoidance Power Getting the Computations Straight, 69 Am. BANKR. L.J. 65, 73-4 (1995)*.

"Otherwise" in the phrase "otherwise unavoidable" is also not ambiguous. Otherwise means "in a different way or manner." Webster's Third New Int'l. Dictionary 1598 (1981). "Otherwise" in *§ 547(c)(4)* means a transfer unavoidable for reasons other than *§ 547(c)(4)*. The Plaintiffs [*44] contrary calculations in this adversary proceeding are not consistent with the language or logic of *§ 547(c)(4)*. As Professor Countryman explained:

> [HN27] If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under *section 547(c)(4)(B)* the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under *section 547*, because the goods and services were given C.O.D. rather than on a credit,

*or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.*

Vem Countryman, *The Concept of a Voidable Preference in Bankruptcy, 38 Vand. L REV. 713, 788 (1985)* [*45] (emphasis added and footnotes omitted). *See also Robert H. Bowmar, The New Value Exception to the Trustee's Preference Avoidance Power: Getting the Computations Straight, 69 Am. BANKR, L.J. 65, 76 (1995)* ("A payment by the debtor made subsequent to a particular extension of new value does not diminish the new value unless the payment is not avoidable on any basis other than the (c)(4) exception itself.... It is only if the payment is unavoidable because of the applicability of one of the other exceptions in subsection (c) or because of the applicability of some other Code provision, that the payment should be applied to reduce the new value,") (footnotes omitted).

[HN28] That "the debtor did not make an *otherwise unavoidable transfer*" to the creditor on account of the new value is a predicate to the subsequent new value defense; "it requires the court to analyze other available defenses to paid new value first[.]" *In re Roberds, Inc., 315 B.R, at 473* (emphasis added). In other words, application of § 547(c)(4) "requires prior determination of whether the transfer is protected under *other portions* of Code § 547." *In re George Transfer, Inc., 259 B.R. 89 at 95* [*46] (emphasis added).

Proficient has asserted defenses under § 547(c)(1) (contemporaneous exchange) and under § 547(c)(2) (ordinary course of business). Proficient's motion for summary judgment with respect to § 547(c)(4) fails to account for payments by the Debtors that may be "otherwise unavoidable" because of these other defenses. Until the other § 547(c) defenses are adjudicated, the math necessary to do the temporally sensitive calculation in § 547(c)(4) cannot be performed.

*D. Release Under the Confirmed Plan*

The Confirmed Plan provides:

18.13 Exculpation; Indemnification

(a) The Creditors' Committee: From and after the Effective Date, the Committee and its members... shall be and hereby are fully exculpated by all Persons and Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action, and other assertions of liability except for their own gross negligence or ultra vires acts arising out of the discharge of the powers and duties conferred upon the Committee by the Bankruptcy Code or any order of the Bankruptcy Court. No holder of a Claim or other party in interest [*47] will have or pursue any claim or cause of action against the Committee.

(Confirmed Plan P 18.13(1), at 33.)

Proficient characterizes this provision as a general release that extends to this preference action. Proficient reads the paragraph to say that Creditors' Committee members received a waiver of any claim arising out of any order in these bankruptcy cases, This preference action "would not exist if there had not been an Order for Relief, [therefore] it must 'arise out of the Order for Relief... [and] this Preference Action fits squarely within the types of claims that are released by the Committee's General Released[.] (Def. Mem. of Law in Sup. at 19.)

Proficient's strained interpretation is just the sort of mischief the United States Trustee predicted in *In re WCI Cable, Inc., 282 B.R. 457, 475 (Bankr. D. Or. 2002)*, when the United States Trustee objected to a similar provision as a "gratuitous provision that should be rejected to the extent that it could be interpreted as enhancing liability protections for members of the Creditors Committee beyond the immunity for official acts of creditors' committees implicit in § 1103()." [12]

> 12    The court in *WCl Cable* allowed the provision finding that it simply stated the standard for immunity of creditors' committee members in performing their official functions under the Bankruptcy Code.

[*48] This preference action does not fall within the plain words of paragraph 18.13 and Proficient's expansive interpretation is not reasonable. This preference action is not the 'discharge of... powers and duties" by the Official Creditors' Committee. The Plaintiff in this adversary proceeding is the Plan Administrator. The Creditors' Committee participated in the confirmation process that preserved this preference action for prosecution by the Plan Administrator. Paragraph 18.13 might exculpate and indemnify Proficient for its role in confirmation of the plan. That protection doesn't morph into a defense to Proficient's individual liability for avoidable prepetition transfers. Even if the Bankruptcy Code conferred on the Creditors' Committee the power to bring preference actions, [13] this Confirmed Plan vested the in-

vestigation and prosecution of preference actions in the Plan Administrator, not in the Creditors' Committee. Reading a release of this preserved cause of action into the general exculpation of Creditors' Committee members is inconsistent with the specific language of the Confirmed Plan and Disclosure Statement.

> 13    "This is a sometimes debated proposition. *See, e.g., Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003)* (en banc) (derivative standing available to committee to pursue fraudulent conveyance action); *Canadian Pac. Forest Prods. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436 (6th Cir. 1995)* (creditor or creditors' committee may have derivative standing to initiate avoidance actions when certain requirements are satisfied); *Jefferson County Bd. of County Comm'rs v. Volnovich (In re The V Cos.), 292 B.R. 290 (B.A.P. 6th Cir. 2003)* (derivative standing Jo pursue avoidance actions available),

[*49] Consistent with the whole of the Confirmed Plan, there is a reasonable interpretation of P 18.13; to afford members of the Creditors' Committee protection from liability for actions pursuant to the statutory powers and duties of committees in *11 U.S.C § 1103* or as may have been ordered by the court. *See Philip v. L.F. Rothschild Holdings (In re L.F. Rothschild Holdings), 163 B.R. 45, 47 (S.D.N.Y. 1994)* [HN29] ("In its capacity as a member of the Committee, [the member] has a right to limited immunity from suit. 'The Bankruptcy Code 'contemplates a significant and central role for committees in the scheme of a business reorganization." This broad scope of authority is set forth in *section 1103(c)(3)* of the Code, which provides that official committees are empowered to 'participate in the formulation of a plan, advise those represented by such committee of such committee's determination as to any plan formulated,....' This implies both a fiduciary duty to committee constituents, and a grant of limited immunity to committee members. Nevertheless, 'any such immunity must be limited to actions taken within the scope of the committee's authority [*50] as conferred by statute or the court and may not extend to 'willful misconduct' of the committee or its members."") (internal citations omitted). *See also In re Transit Group, Inc., 286 B.R. 811, 819 (Bankr. M.D. Fla. 2002)* (efficacy of broad exculpation provisions has been questioned). The exculpation provision shielded Proficient from liability arising from the discharge of its duties as a member of the Creditors' Committee; no general release was contemplated with respect to Proficient's liability in a preserved cause of action that would be prosecuted after confirmation by the Plan Administrator.

*E. Critical Vendor Order*

The flip side of Plaintiff's argument that post petition payments under the Critical Vendor Order should disqualify prepetition new value is Proficient's argument that the Critical Vendor Order insulates it all together from preference liability. Proficient states: "As a matter of law, it is inconsistent to pay down Proficient's prepetition claim. .. pursuant to the Critical Vendor Order, as a means to ensure Proficient provides post-petition goods and services to the Debtors, but then later seek to recover other pre-petition payments [*51] of the same kind as a preference, thereby running up Proficient's prepetition claim and thereby increase [sic] Proficient's losses. . . . After entry of the Critical Vendor Order, Proficient was no longer in the same class as other unsecured creditors .... The decision to pay a creditor in exchange for forced performance benefitting the estate binds the trustee to the choice made and prevents the "mutually exclusive1 remedy of preference avoidance." (Def. Mem. of Law in Sup. at 11-13.) In support of this position, Proficient cites *In re Superior Toy & Mfg. Co., 78 F.3d 1169 (7th Cir. 1996).*

In *Superior Toy,* after conversion to Chapter 7, a preference action was filed to recover prepetition royalties paid by the debtor to a licensor. The license agreement had been assumed by the Chapter 11 debtor in possession, prior to conversion. The licensor argued that assumption of the license removed prepetition contract payments from the grasp of *§ 547.* The Seventh Circuit agreed. Assumption of the license under *§ 547* required payment of all contract amounts -- the Bankruptcy Code required that all pre- and post petition defaults be cured at assumption. The Seventh Circuit [*52] explained:

> If Congress had intended to deprive contracting parties of monies they received prepetition, why would Congress require all default be cured prior to assumption. Serendipity would determine whether a contracting party is subject to a preference suit. We believe Congress passed *§ 365* to insure that a contracting party is made whole before a court can force the part to continue performing with a bankrupt debtor. Permitting a preference suit after an assumption order would undermine that purpose. . . . The congressional intent behind *§ 547* is consistent with this result. By retaining the monies paid to him prepetition, a party to an assumed contract does not receive more than other similarly situated creditors. Until the assumption decision is made, the "situation" of a party to an executory contract remains undetermined. As previously discussed, an assumption order effectively

gives the contracting party a secured interest in the monies owed him. From the moment the assumption order is entered, the contracting party's interest is necessarily distinct from the interests of unsecured creditors.

*Superior Toy, 78 F.3d at 1174.*

This case is fundamentally [*53] different than *Superior Toy*. There is no statute that required the Critical Vendor payments on account of prepetition debt or that compelled Proficient to accept performance by the Debtors-In-Possession. *Section 365* required the licensor to accept the debtor's performance in *Superior Toy* once the debtor paid the royalties due before assumption. Proficient had a choice to deal or not with the Debtors-In-Possession. Here, there was no contract or lease assumed and no statutory protection enveloped Proficient's receipt of prepetition payments. The Critical Vendor Motion specifically stated that nothing contained therein would be deemed an assumption of any contract or agreement between the Debtors and Proficient. (Critical Vendor Motion at 9.)

In exchange for on-going business paid for with daily wire transfers, and payment of $ 900,000 of prepetition debt, Proficient agreed to continue to supply goods to the Debtors-In-Possession after the petition. Indeed, had Proficient simply refused to do business with the Debtors-in-Possession, many of Debtors' restaurants would have shut down, and any dividend to unsecured creditors take Proficient would have evaporated. If anything, there [*54] was self-interest, not statutory compulsion, in Proficient's choice to become the Critical Vendor.

Proficient's expansive view of the Critical Vendor Order is not grounded in the plain wording of the Motion and Order. The payment terms within the Critical Vendor Motion specifically state, "nothing contained herein shall be deemed ... an admission as to the validity or allowance of [Proficient's] prepetition claim," (Critical Vendor Motion at 9.) The Motion explains that if Debtors make all the required payments and Proficient then fails to supply goods, all payments "will be voidable transfers under *11 U.S.C. § 549.*" (Critical Vendor Motion at 10.) There is a cross-reference in the Critical Vendor Motion to *§ 546(c) of the Bankruptcy Code* in connection with payment of Proficient's reclamation claim.

These provisions of the Critical Vendor Motion and Order reveal that the parties were aware of avoidance and recovery actions with respect to both pre- and post petition payments to Proficient and aware that Proficient had a substantial prepetition claim that had not been liti-

gated. Yet nowhere in the Critical Vendor Motion or Order is there any whisper that [*55] the parties intended to insulate Proficient from preference liability under *§ 547*, Why would the Critical Vendor Motion preserve objection to Proficient's claim [14] and reference the limitation on preference recovery in *§ 546(c)* if it was intended that Proficient would have no avoidance or recovery liability under any circumstances?

14    See *11 U.S.C. § 502(d)* quoted above and discussed below.

*Official Comm. of Unsecured Creditors v. Med. Mut. of Ohio (In re Primary Health Sys.), 275 B.R. 709 (Bankr. D. Del. 2002), aff'd, 2003 U.S. Dist. LEXIS 26256, C.A. No. 02-301 (D. Del. Feb. 27, 2003)*, fails to advance Proficient's argument for similar reasons. In *Primary Health,* the court approved post petition payment of wages, salaries and employee benefits, including payments to the defendant insurer to continue insurance coverages. The creditors committee later sued the insurer to recover preferential payments. The court concluded that if the alleged preferential payments were authorized [*56] by the post petition wage order they were protected from recovery under *§ 547.*

The order in *Primary Health* provided that the debtor "honor and pay all employee benefits in accordance with their prepetition employee benefit plans and policies, including all costs and expenses incurred in connection with the maintenance of such plans and policies," In effect, the wage order required debtor to pay all amounts in default at the petition -- the same scenario as the license assumption in *Superior Toy. See also HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.), 313 B.R. 189, 193-94 (Bankr. D. Del. 2004)* (Court rejects argument that critical vendor motion and order precluded recovery of *prepetition* preferential transfers. "Nothing in the critical vendor order] require[d] that Export's pre-petition claims be paid in full, and did not provide that any preferential payments previously made to Export could not be recovered. In fact... there was no consideration or analysis of whether any potential critical vendor had received a preference.").

Here, the Critical Vendor Motion and Order did not contemplate the cure of all prepetition defaults. Payments [*57] were limited to $ 900,000, and Proficient's prepetition claim was nearly $ 7 million. No contracts were assumed, no waivers or releases were given. Perhaps, using its unique leverage with the Debtors, Proficient could have bargained for a provision releasing it from preference liability in this bankruptcy case. The Critical Vendor Motion and Order did not do so.

*F. Resolution of Administrative Expense Request*

Lastly, Proficient asserts that the Debtors' objection to and resolution of Proficients administrative expense request precludes this preference action. On September 5, 2003, Proficient filed a request for payment of $ 17,000 as an administrative expense for attorney fees in connection with its participation on the Creditors' Committee. The Debtors objected and the parties came to a resolution; The Debtors agreed to pay $ 2,250, memorialized in an agreed order entered September 24, 2003.

Characterizing the administrative expense dispute as part of the claims allowance process, Proficient cites *§ 502(d)* and contends that this preference action had to be asserted when its administrative expense request was in dispute. Proficient relies on *LaRoche Industries, Inc. v. General American Transportation Corp. (In re LaRoche Industries, Inc.), 284 B.R. 406 (Bankr. D. Dei 2002),* [*58] and *Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings), 2003 Bankr. LEXIS 577, No. 00-1919, 2003 WL 1818177 (Bankr. D. Del. Apr. 2, 2003).*

*LaRoche Industries and Cambridge Industries* are distinguishable in an important respect: In both, the preference defendants filed proofs of claim to which the debtors objected and which were resolved by orders allowing claims before the preference actions were filed. Here, Proficient argues for predusive effect from the resolution of an administrative expense request under *11 U.S.C. § 503* -- a matter separate and distinct from the allowance of claims under *§ 502* of the Code. This is a distinction with a difference.

[HN30] *Section 501* provides that "[a] creditor. . . may file a proof of claim." *11 U.S.C. § 501 (a).* [HN31] A creditor is defined as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; [or] [an] entity that has a claim against the estate of a kind specified in *section 348(d), 502(g), 502(g), 502(h)* or *502(i).*" *11 U.S.C § 101(10).*

[HN32] The claims allowance process is outlined in *§ 502.* [*59] It begins with: "A claim or interest, proof of which is filed under *section 501*..., is deemed allowed, unless a party in interest,..., objects." *11 U.S.C. § 502(a).* Subsection (b) lists nine factors that affect the allowance of a claim filed pursuant to *§ 501.*

*Section 502(d)* conditions the allowance of a claim filed under *§ 501* that the claim holder first return any avoidable transfer such as a preference under *§ 547.* The courts In *LaRoche Industries* and *Cambridge Industries* applied this long standing statutory relationship to conclude that preference litigation was precluded by prior claims litigation against when regurgitation of the preference was not raised as a ground for disallowance. *See also Katchen v. Landy, 382 U.S. 323, 15 L. Ed. 2d 391, 86 S. Ct. 467 (1966)* (Under § 57(g) of the former Bankruptcy

Act, *11 U.S.C § 93(g)* (repealed), the predecessor to *11 U.S.C. § 502(d),* preference litigation must be resolved before claim could be allowed). The holdings of *LaRoche Industries* and Cambridge Industries are controversial even within the Bankruptcy Court for the District of Delaware. [*60] *See TWA Inc. Post Confirmation Estate v. City & County of S.F. Airports Comm'n (In re TWA Inc. Post Confirmation Estate), 305 B.R. 221 (Bankr. D. Del. 2004)* (Settlement of claims dispute does not preclude subsequent preference litigation under *§ 502(d).*). *See also Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.), 293 B.R. 479 (Bankr. E.D. Mo. 2003); Rhythms NetConnections, Inc. v. Cisco Sys., Inc. (In re Rhythms NetConnections Inc.), 300 B.R. 404 (Bankr. S.D.N.Y. 2003)* (Both holding that *§ 502(d)* does not bar preference litigation after allowance of claims.).

[HN33] *Section 503* concerns administrative expenses, which are distinct from claims filed under *§ 501,* and indeed, need not be requested by a "creditor." Administrative expenses are pursued by filing "a request for payment' under *§ 503(a),* not by filing a proof of claim under *§ 501.* Procedure for the management of a request for administrative expense under the Federal Rules of Bankruptcy Procedure is separate and different than the management of proofs of claim. *Compare Fed. R. Bankr. P. 3001-3008* (dealing with filing and allowance of claims under *§ 501*); [*61] *with Fed. R. Bankr. P. 1019(6)* (timely filing of a "request" for payment of an administrative expense after conversion). There is no provision in *§ 503* analogous to *§ 502(d)* disallowing administrative expenses held by an entity that received an avoidable transfer. *Section 502(d)* does not cross-reference or obviously affect the allowance or payment of administrative expenses under *§ 503.*

Judge Waldron in Roberds recently observed that "there is a split in the case law on whether an administrative claim is subject to the requirements of *11 U.S.C. § 502(d).*" *In re Roberds, Inc., 315 B.R. at 476* (citing *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.), 38 B.R. 829 (Bankr. M.D. Ga. 1984)* (administrative claims are subject to *§ 502(d)*); *Microage, Inc. v. Viewsonic Corp, (In re Microage, Inc.), 291 B.R. 503 (BAP. 9th Cir. 2002)* (Section 502(d) applies to administrative claims, but cannot be used to defeat a previously allowed administrative claim.); *Beasley Forest Prods., Inc. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.), 297 B.R. 326, 331 (Bankr. S.D. Ga. 2003)* [*62] ("*Section 502(d)* does not apply to administrative claims allowable under *§ 503.*"); *In re Lids Corp., 260 B.R. 680 (Bankr. D. Del. 2001)* (administrative claims are not subject to *§ 502(d)*); *Camelot Music, Inc. v. MHW Advertising & Public Relations Inc. (In re CM Holdings, Inc.), 264 B.R. 141 (Bankr. D. Del. 2000)* (administrative claims not subject to *§ 502(d)*). Roberds

concluded that [HN34] *11 U.S.C. § 502(d)* was not a barrier to the allowance of an administrative expense. This court agrees.

Beyond *§ 502(d)*, Proficient's implicit appeal to equitable principles is not compelling on summary judgment. Proficient's administrative expense request was resolved by a one-page agreed order. The agreed order says nothing about preclusion of any kind -- no mention of Proficient's prepetition claim for more than $ 7 million, and no mention of any other causes of action that were preserved by the Confirmed Plan nearly a year earlier. The agreed order does not convey any intent by Proficient or the Debtors-In-Possession to affect other issues between the parties by preclusion, contract or otherwise.

As Judge Waldron explained in *Roberts,* this [*63] action to recover prepetition preferential payments does not raise the same issues of law or fact as Proficient's request for reimbursement of post petition expenses. *See Roberds, 315 B.R. at 474-75* [HN35] (administrative expense request is not a compulsory counterclaim to a complaint for recovery of a preference). Administrative expenses are post petition charges entitled to statutory priority. They cannot be set off against prepetition claims, See *11 U.S.C. § 553*. Proficient has not articulated why the Debtors "should" have litigated this preference in response to Proficient's administrative expense request. Resolution of this preference litigation was not necessary to the allowance or disallowance of Proficient's administrative expense request. This preference litigation lacks "identity" with the administrative expense dispute for purposes of ordinary principles of res judicata. The agreed order adjudicating Proficient's request for an administrative expense does not raise an equitable bar to litigation of this preference action.

## III. Conclusion

Proficient's Motion for Summary Judgment will be denied by separate order.

Dated this 16th day [*64] of December, 2004.

KEITH M. LUNDIN

UNITED STATES BANKRUPTCY JUDGE

Order

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the Defendant's motion for summary judgment is DENIED.

DATED: December 16, 2004

KEITH M. LUNDIN

UNITED STATES BANKRUPTCY JUDGE