# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CIRCUIT CITY STORES, INC.,** *et al.*, | ) | No. 08-35653-KRH |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ENVISION PERIPHERALS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEBTORS' (I) FIFTY-FIRST OMNIBUS OBJECTION TO CERTAIN 503(b)(9) CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST <u>HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE</u>**

H. Jason Gold, Va. Bar No. 19117
Valerie P. Morrison, Va. Bar No. 24565
Dylan G. Trache, Va. Bar No. 45939
WILEY REIN LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia  22102
703.905.2800

Counsel to Envision Peripherals, Inc.

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT. ...................................................................... 1

II.  BACKGROUND. .............................................................................................. 3

III.  ARGUMENT. .................................................................................................... 3

    A.  Mere Allegations of Preferential Transfers Are Insufficient Under § 502(d). ...... 3

        1.  No Evidence Exists to Establish that EPI Received Preferential Transfers. .............................................................................................. 3

        2.  The Court Should Not Disallow Any Administrative Expenses Under § 502(d) Prior to Confirmation of the Plan. .................................. 4

        3.  The Plain Language of the Statute Requires an Adjudication of Any Preference Liability Before § 502(d) is Applicable. ................................. 5

        4.  Circuit City's "New Value" Argument is a Red Herring. ...................... 11

    B.  Section 502(d) is Inapplicable to Administrative Expenses. ............................... 12

        1.  The Unambiguous Language of the Relevant Statutes Demonstrates that § 502(d) Does Not Apply to Administrative Expenses. ................... 12

        2.  The *MicroAge* Decision and the Bankruptcy Code's Broad Definition of "Claim" Do Not Compel a Different Result ...................... 16

        3.  Legislative History and Policy Support a Finding that Administrative Expenses are Not Subject to Disallowance Under § 502(d). ................... 20

        4.  Analogous Authority Regarding § 502(c) Supports a Finding that Administrative Expenses are Not Subject to Disallowance Under § 502(d). ............................................................................................... 21

        5.  Section 502(d) Does Not Apply to Administrative Expenses Allowed Under § 503(b)(9). ............................................................................... 23

IV.  CONCLUSION. ............................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page**

*In re Ames Dep't Stores, Inc.*, 582 F.3d 422 (2nd Cir. 2009) .................................. *passim*

*In re Atcall*, 284 B.R. 791 (Bankr. E.D. Va. 2002) ....................................................22, 23

*Ayes v. United States VA*, 473 F.3d 104 (4th Cir. 2006)...................................................19

*Beach v. Ocwen Federal Bank*, 523 U.S. 410, 118 S. Ct. 1408 (1998)............................10

*Beasley Forest Prod., Inc v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.)*, 297 B.R. 326 (Bankr. S.D. Ga. 2003) ........................................................ *passim*

*Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000)...................................................................15

*In re Chase & Sanborn Corp.*, 124 B.R. 368 (Bankr. S.D. Fla. 1991) .............................10

*CM Holdings, Inc.*, 264 B.R. at 158.......................................................................... *passim*

*Credit Union Ins. Corp. v. United States*, 86 F.3d 1326 (4th Cir. 1996)..........................20

*In re Davis*, 889 F.2d 658 (5th Cir. 1989) ........................................................................7

*Gold v. Eccleston (In re Dornier Aviation (North America), Inc.)*, 320 B.R. 831 (E.D. Va. 2005)................................................................................................................6

*HCSC-Laundry v. United States*, 450 U.S. 1, 101 S.Ct. 836 (1981) ................................20

*Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d 705 (8th Cir. 2003) ...............7, 8

*Katchen v. Landy*, 382 U.S. 323 (1966)............................................................................8

*In re Larsen*, 86 B.R. 784 (Bankr. E.D. Va. 1987)....................................................10, 11

*In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001) ....................................7, 15, 16, 17

*Marsano v. Laird*, 412 F.2d 65 (2d Cir. 1969) ...............................................................19

*MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (B.A.P. 9th Cir. 2002)........................................................................................................ *passim*

*Mountaineer Coal Co. v. Liberty Mut. Ins. Co., Inc. (In re Mountaineer Coal Co., Inc.)*, 247 B.R. 633 (Bankr. W.D.Va. 2000)................................................................8

*Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys., Inc.)*, 293 B.R. 479 (Bankr. E.D. Mo. 2003) ................................................................................................8

*Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.)*,
    2004 WL 3113719 (Bankr. M.D. Tenn. 2004) ...........................................................16

*In re Plastech Engineered Prods., Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008)
    .............................................................................................................................16, 23, 24

*In re Red Dot Scenic, Inc.*, 313 B.R. 181 (Bankr. S.D.N.Y. 2004) ....................................9

*Rhythms NetConnections Inc. v. Cisco Sys. (In re Rhythms NetConnections Inc.)*,
    300 B.R. 404 (Bankr. S.D.N.Y. 2003) ...........................................................................7

*Roberds, Inc. v. Broyhill Furniture* (*In re Roberds, Inc.),* 315 B.R. 443, 476 (Bankr.
    S.D. Ohio 2004) ............................................................................................................16

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...............................................................20

*S. Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742,
    749-50 (Bankr. N.D. Ga. 2009) ..............................................................................16, 24

*Seta Corp. of Boca v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys.,*
    *Inc.),* 173 B.R. 858 (S.D.N.Y. 1994) .............................................................................8

*In re USA Labs, Inc.*, 2006 Bankr. LEXIS 2394 (Bankr. S.D. Fla. 2006)........................16

*United States v. Childress*, 104 F.3d 47 (4th Cir. 1996).............................................18, 19

*United States v. Morton*, 467 U.S. 822 (1984)..................................................................19

*United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240, 103 L. Ed. 2d 290, 109 S.
    Ct. 1026 (1989) ............................................................................................................20

*United States v. Sterling Consulting Corp.* (*In re Indian Motocycle Co., Inc.),* 261
    B.R. 800, 810 (B.A.P. 1st Cir. 2001)............................................................................22

*Virginia v. Browner*, 80 F.3d 869 (4th Cir. 1996) ............................................................19

*Weber v. Mickelson (In re Colonial Servs. Co.)*, 480 F.2d 747 (8th Cir. 1973) .................7

*Zurich Am. Ins. Co. v. Lexington Coal Co., LLC (In re HNRC Dissolution Co.)*, 536
    F.3d 683 (6th Cir. 2008) ..............................................................................................22

## LEGISLATIVE HISTORY

H.R. Rep. No. 95-595, at 354 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310..........21

H.R. Rep. No. 95-595, at 355 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6311.........21

S. Rep. No. 95-989, at 65 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851...............21

S. Rep. No. 95-989, at 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852...............22

## STATUTES

§ 57..........................................................................................................................8, 9

§ 57g.......................................................................................................................8, 9, 21

§ 101(5)....................................................................................................................17

§501.....................................................................................................................12, 13, 14

§ 502........................................................................................................... *passim*

11 U.S.C. § 502(a) ..............................................................................................13, 14

11 U.S.C. § 502 (b) .............................................................................................14, 21

11 U.S.C. § 502(c) ...........................................................................................21, 22, 23

11 U.S.C. § 502(d) ............................................................................................. *passim*

11 U.S.C. § 502(e) ............................................................................................15, 18, 19

11 U.S.C. § 502(f)........................................................................................12, 14, 15, 19

11 U.S.C. § 502(g) ...........................................................................................15, 18, 19

11 U.S.C. § 502(h) ...........................................................................................15, 18, 19

11 U.S.C. § 502(i) ............................................................................................15, 18, 19

11 U.S.C. § 503 ................................................................................................. *passim*

11 U.S.C. § 503(a) ..........................................................................................23

11 U.S.C. § 503(b) ............................................................................................. *passim*

11 U.S.C. § 507.................................................................................................17

11 U.S.C. § 507(a) ................................................................................................................17, 23

11 U.S.C. § 546(c) ................................................................................................................17, 24

11 U.S.C. § 547 ...........................................................................................................................11

11 U.S.C. § 547(c) .......................................................................................................................11

11 U.S.C. § 550 .....................................................................................................................4, 5, 6

11 U.S.C. § 550(a) .........................................................................................................................5

11 U.S.C. § 766(h) .......................................................................................................................17

11 U.S.C. § 766(i) ........................................................................................................................17

11 U.S.C. § 1129(a) ...................................................................................................................4, 5

ENVISION PERIPHERALS, INC. ("EPI"), by counsel, WILEY REIN LLP, H. Jason Gold, Valerie P. Morrison and Dylan G. Trache files this Memorandum of Law in Opposition[1] to the above-captioned debtors' ("Debtors" or "Circuit City") (i) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims ("Administrative Expense Objection") and (ii) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference ("Motion to Waive Status Conference"), stating to the Court as follows:

## I.    Summary of Argument.

Through its Administrative Expense Objection, Circuit City seeks to summarily disallow EPI's administrative expense, which has already been fixed in the amount of $309,516 by Court order, without presenting any evidence to support its assertion that EPI received a preferential transfer. The Debtors have simply asserted a total amount of purported preferences without any specificity, analysis or factual support. This attempted use of § 502(d) is procedurally improper, premature, and contrary to the Bankruptcy Code.

Most courts, including the only two Circuit Courts to opine on the issue, have held that § 502(d) may only be invoked where a court has actually adjudicated preference liability. The majority view is consistent with both the language and purpose of § 502(d), which only authorizes disallowance of claims where a transferee has failed to pay the amount or turn over property for which it "is liable under . . . section 550", which requires an adjudication on the merits. Prior to an adjudication of preference liability, EPI is not "liable" to the estate for any amounts. Moreover, as the Fifth and Eighth Circuits have concluded, § 502(d) is simply a tool that a debtor-in-possession may use to enforce an order of the bankruptcy court. In this case

---

[1] Because the Administrative Expense Objection does not provide sufficient factual background regarding the alleged preferential transfers, EPI is unable at this time to provide a declaration of relevant facts. To the extent the Debtors provide notice of the specific facts in dispute, EPI reserves the right to supplement this response.

there is not even a pending lawsuit, much less a judgment or order to enforce. It is neither necessary nor appropriate for the Debtors to attempt to employ § 502(d) as a prejudgment collection tool akin to an attachment before judgment.

Every single court outside of the Ninth Circuit[2] to consider the issue in the past seven (7) years has concluded that § 502(d) does not apply to administrative expenses. The courts that have found § 502(d) to be inapplicable to administrative expenses include the United States Court of Appeals for the Second Circuit, which on September 18 of this year issued a well-reasoned and thorough opinion, *In re Ames Dep't Stores, Inc.*, 582 F.3d 422 (2nd Cir. 2009), on this exact issue.

Finally, the fact that EPI's administrative expense was determined under § 503(b)(9)[3] as opposed to another subsection does not alter the result. The statute treats all administrative expenses the same regardless of the particular subsection from which they arise and even when they are predicated on pre-petition facts and circumstances. The failure to differentiate or segregate § 503(b)(9) administrative expenses from others under the same statute demonstrates that Congress intended to treat administrative expenses arising out of § 503(b)(9) exactly the same as all other administrative expenses. For all of these reasons, and as more thoroughly set forth below, the Court should overrule the Administrative Expense Objection and deny the Motion to Waive Status Conference.

---

[2] Courts in the Ninth Circuit are bound by the decision in *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (B.A.P. 9th Cir. 2002). The *MicroAge* case from the 9th Circuit Bankruptcy Appellate Panel upon which the Debtors rely heavily is an outlier. Many courts have expressly rejected its rationale as should this Court.
[3] *See* Order on Debtors' Twentieth Omnibus Objection to Claims, entered on August 22, 2009, Docket No. 4602 ("Administrative Expense Allowance Order").

## II.    Background.

1.    Debtor Circuit City Stores, Inc. ("Debtor" or "Circuit City") filed a voluntary petition under chapter 11 of the Bankruptcy Code on November 10, 2008 ("Petition Date").

2.    EPI was a supplier and creditor of Circuit City.

3.    EPI holds a general unsecured claim against Circuit City in the amount of $250,380 and an allowed administrative expense arising under 11 U.S.C. § 503(b) in the amount of $309,516 ("Administrative Expense").   These amounts are set forth in the Administrative Expense Allowance Order.

4.    Currently before the Court is the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims ("Plan").   The Court will consider confirmation of the Plan on November 23, 2009.   The Plan provides, among other things, that: (i) all allowed administrative expenses will be paid in full; and (ii) the cases will be administered by a Liquidating Trustee. *See* Plan at 13, 19-21.

5.    On October 13, 2009, the Debtors filed the Administrative Expense Objection. The Administrative Expense Objection alleges that EPI received preferential transfers and seeks to disallow EPI's previously determined Administrative Expense on that basis alone.

## III.    Argument.

### A.    Mere Allegations of Preferential Transfers Are Insufficient Under § 502(d).

#### 1.    No Evidence Exists to Establish that EPI Received Preferential Transfers.

The  Administrative Expense Objection is flawed from the outset because it posits, in summary fashion, without any supporting facts that EPI received an undisclosed number of preferential transfers totaling $3,194,041.   No information about any of the alleged transfers,

such as dates, amounts, payee, payor, or payment method, is provided, nor is there any evidence of the purported antecedent debts that are alleged to have been paid.

Further, while the Debtors assert that they have applied the new value defense to arrive at a net preference of $3,194,041, they provide no information to support their determination of the new value credit. The Debtors have apparently rejected, self-servingly and without any explanation, the applicability of all other preference defenses, such as the ordinary course defense.

Such conclusory allegations would not survive a Rule 12(b)(6) motion, and certainly do not come close to establishing EPI's liability for preferential transfers. Given the Debtors' complete failure to establish that EPI is liable to the estate under § 550, it is unnecessary for the Court to reach any of the legal issues raised in the Administrative Expense Objection, and the same should be dismissed without further consideration.

**2.     The Court Should Not Disallow Any Administrative Expenses Under § 502(d) Prior to Confirmation of the Plan.**

The Debtors have not articulated a reason for their request to proceed with argument on the legal issues at the initial hearing as opposed to proceeding in accordance with the Court's Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections. The Plan cannot be confirmed unless sufficient cash exists to pay all administrative expenses in full on the effective date. *See* 11 U.S.C. § 1129(a)(9). In the event EPI's already fixed Administrative Expense and others are disallowed under § 502(d), the Debtors will be in a position to artificially reduce their administrative expense liability, and by necessity, the cash required to exit chapter 11. Disallowance could also expose EPI and other holders of administrative expenses to non-payment of valid administrative expenses in the event of an administrative insolvency. Accordingly, it would be improper to disallow any

administrative expenses without the proper evidentiary showing and the Motion to Waive Status

Conference should be denied.

### 3.  The Plain Language of the Statute Requires an Adjudication of Any Preference Liability Before § 502(d) is Applicable.

Section 502(d) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphasis added).

Under the plain language of § 502(d), only claims (as opposed to administrative expenses) may be disallowed, provided that property is either "recoverable" from the claimant or the claimant is recipient of an avoidable transfer, and then only to the extent that the claimant does not pay the amount for which it "is liable" to the estate under § 550. Section 550 expressly contemplates that a transfer must be "avoided" prior to § 550 being applicable. *See* 11 U.S.C. § 550(a). As of the date of the Administrative Expense Objection, EPI cannot be liable to Circuit City for any amounts because no judgment has been entered against EPI holding it "liable" as required by the statute prior to disallowance under § 502(d).

Despite the fact that no judgment has been entered against EPI and no avoidance complaint filed, Circuit City asserts that it has a "colorable claim" that certain transfers are avoidable, and that therefore, EPI's Administrative Expense must be disallowed. The statute, however, speaks in terms of a "transfer" that "is avoidable" and for which a "transferee" "is liable," not transfers that may be avoidable or for which a transferee may be liable. The use of the phrase "has paid an amount for which such transferee is liable" indisputably evidences the

5

intent of Congress that § 502(d) should apply only where liability has been established in a fixed amount, i.e., has been finally ruled upon by the Court, not merely a future possibility. Otherwise, the amount required to be "paid" would be unknown and the obligation to pay it would not yet exist. Thus, § 502(d) does not apply in situations where preference liability has not yet been adjudicated. Prior to the adjudication of a preference claim, the statute neither precludes allowance of a creditor's administrative expense nor suggests that allowance of such an expense amounts to an adjudication that no preference liability exists.

In *Gold v. Eccleston (In re Dornier Aviation (North America), Inc.)*, the United States District Court for the Eastern District of Virginia endorsed this construction of the statute. 320 B.R. 831 (E.D. Va. 2005). *Dornier* involved an attempt by a creditor to use § 502(d) to bar a preference complaint. *Id.* at 833. The creditor argued that the prior allowance of his claim in the bankruptcy case constituted an agreement by the trustee that the creditor did not owe the estate any money, thereby barring any subsequent preference actions. *Id.* at 835. Among the arguments advanced by the trustee was that § 502(d) can only apply once a judgment is entered against the creditor. *Id.* at 835-36 (describing the trustee's argument as to this point). In concluding that allowance of a claim did not bar a subsequent preference action, the court sided with the trustee. Specifically, the court determined "that the authority cited by the trustee articulates a better-reasoned interpretation of the plain meaning of § 502(d)" and that "§ 502(d) clearly provides a mechanism for debtors to disallow creditors' claims when those creditors owe money or other assets to the debtor." *Id.* at 837. In this case, no court has determined that EPI owes money to the Debtors. This Court should follow the interpretation adopted by Judge Brinkema and bar the use of § 502(d) to disallow administrative expenses prior to an adjudication on the merits of the alleged preference.

The Courts of Appeal that have addressed this issue have uniformly held that § 502(d) is only applicable where liability on a preferential transfer has been adjudicated.[4]  In *Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d 705 (8th Cir. 2003), the United States Court of Appeals for the Eighth Circuit ruled that § 502(d) could only be used "to disallow a claim after the entity is first adjudged liable." *Id.* at 708 (citations omitted).  In reaching this decision, the Eighth Circuit relied upon the decision of the Fifth Circuit in *In re Davis*, 889 F.2d 658 (5th Cir. 1989).  In *Davis*, the Fifth Circuit held that § 502(d) "is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate." *Id.* at 662.  In reaching this decision, the Fifth Circuit noted that "[t]he legislative history and policy behind § 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders." *Id.* at 661.  Again, in this case, there has been no adjudication of any preference liability, and therefore, there is no judicial order to enforce.  Further, these courts correctly interpret § 502(d) as an additional tool that the debtor has to enforce a judgment.  Collection is not appropriate prior to obtaining a judgment.

Many other courts to address the issue have also held that § 502(d) is designed as an enforcement mechanism and only applies where a judgment has been entered against the creditor, or another judicial determination of liability is made.  *See, e.g., Rhythms NetConnections Inc. v. Cisco Sys. (In re Rhythms NetConnections Inc.)*, 300 B.R. 404, 409 (Bankr. S.D.N.Y. 2003) ("Section 502(d) is intended to coerce creditors to comply with judicial orders.");  *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("There is an additional reason to overrule the Debtor's objection. The Debtor does not have a final judgment on its

---

[4] Circuit City cites *Weber v. Mickelson (In re Colonial Servs. Co.)*, 480 F.2d 747 (8th Cir. 1973) in support of its position that no judgment is required to invoke § 502(d).  As explained more thoroughly below, the relevant statutory language under the Bankruptcy Act is different from the language of § 502(d).  Moreover, to the extent *Weber* may have been relevant, it was overruled by *Odom Antennas.*

preference complaint. To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable.") (citation omitted); *Mountaineer Coal Co. v. Liberty Mut. Ins. Co., Inc. (In re Mountaineer Coal Co., Inc.),* 247 B.R. 633, 641 (Bankr. W.D.Va. 2000) (Section 502(d) "would not appear applicable unless and until a finding under one of the cited sections had been made and then the claimant had failed to comply with such ruling"); *Seta Corp. of Boca v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.),* 173 B.R. 858, 862 (S.D.N.Y. 1994) ("*Once the liability of the transferee has been determined,* the claim interposed by the transferee will be disallowed *unless* such transferee gives effect to the judgment flowing from the exercise of the avoiding powers described above.") (citation and internal quotation marks omitted, emphasis in original). Accordingly, the weight of authority supports the argument that a judgment or other adjudication of an alleged preference is required before § 502(d) may be used.

The contrary authority cited by Circuit City is unavailing. The Debtors rely heavily on *Katchen v. Landy*, 382 U.S. 323 (1966). However, the most important distinction between *Katchen* and the matter *sub judice* is that in *Katchen* a judgment had been entered with respect to the alleged preference. *See id.* at 325. The Court decided in that case that "a bankruptcy court has summary jurisdiction to order the surrender of voidable preferences asserted *and proved* by the trustee in response to a claim filed by the creditor who received the preferences." *Id.* (emphasis added); *see also Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys., Inc.),* 293 B.R. 479, 488 (Bankr. E.D. Mo. 2003) (explaining the limits of the decision in *Katchen*). The Court in *Katchen* expressly declined to decide the "exact reach of s 57, sub. g." *Katchen* at 330 n. 5. Moreover, the language of § 57 of the Bankruptcy Act applicable under *Katchen* is not the same as or even substantially similar to the language of § 502(d). Section 57 of the Bankruptcy Act provided in relevant part:

(g) The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

*Id.* (quoting Section 57(g)).  While the concept of § 57(g) may be similar in a generic sense to that of § 502(d), the language employed is not similar.  As explained above, the language of § 502(d) requires an adjudication of liability in order to invoke § 502(d).  The language of § 57 of the Bankruptcy Act speaks in general terms about claims and creditors and, unlike § 502(d) of the Bankruptcy Code, does not expressly limit its application to circumstances where a creditor "is liable" for a preference.  For these reasons, the decision in *Katchen* is not relevant to the issues before this Court.

Circuit City asserts that the adjudication requirement, which has been adopted by the majority of courts, ignores the plain language of § 502(d).  However, the case relied upon by Circuit City for this proposition, *In re Red Dot Scenic, Inc.*, 313 B.R. 181 (Bankr. S.D.N.Y. 2004), actually supports the position that a judgment is required in order to invoke § 502(d).  In *Red Dot*, the trustee obtained a judgment against the creditor and sought to invoke § 502(d) to disallow the creditor's claim.  *Id* at 183.  In response to the claim objection, the creditor asserted that it was "premature" to disallow the claim "under [§] 502(d) until the [t]rustee has unsuccessfully tried to enforce the judgment against him." *Id.* at 185.  The Court ruled that the failure of the creditor to satisfy the judgment was not necessary to invoke § 502(d).  *Id.*  All that was required was that the property be "recoverable." *Id.*  In *Red Dot* the amounts were "recoverable" because  the judgment had been entered.  In this case, however, no amounts "are recoverable" from any entity and no transfers are avoidable from any entity because no determination of liability has been made.

Finally, Circuit City cites certain cases that allowed a claim objection to move forward under § 502(d) despite the applicable statute of limitations for preference actions having passed. EPI submits that these cases are wrongly decided as a creditor cannot be liable for any preference, and no preference "is recoverable," once the applicable statute of limitations has expired.  Nevertheless, even those courts apparently adjudicated the preference liability in the context of a claim objection, as an offset or recoupment, and determined that the creditor had received preferential transfers; thus, before applying § 502(d), those courts made a "judicial determination that the creditor received a preference…" *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991) (collecting authority).  For example, in *In re Larsen*, the court concluded that the creditor "has received and retained post-petition preferential [sic] transfers to which she is not entitled and therefore, even if filed timely, her proofs of claim must be disallowed under § 502(d)…." 80 B.R. 784, 791 (Bankr. E.D. Va. 1987).  Moreover, in *Larsen*, the relevant claims were untimely, and the use of § 502(d) as an affirmative defense was a secondary reason to disallow the claims.  *Id.*

It is well settled that in most instances, a party may raise defensively claims that are barred by the statute of limitations and cannot be brought offensively.  *See generally, Beach v. Ocwen Federal Bank*, 523 U.S. 410, 415, 118 S. Ct. 1408, 1411 (1998) ("as a general matter a defendant's right to plead 'recoupment,' as a 'defense arising out of some feature of the transaction upon which the plaintiff's action is grounded,' survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action.") (internal citations omitted).  Therefore, the authority cited by Circuit City does not support the conclusion that no adjudication of a preferential transfer is required prior to disallowance.

10

Circuit City does not propose to have a trial on the issue of whether preferential transfers were received, which is the very least that is required to disallow any claims. Indeed, Circuit City has failed to even explain the individual transfers it believes are recoverable or provide any information sufficient to satisfy a *prima facie* case under § 547. Accordingly, this Court should follow the reasoning of the courts that have required an actual adjudication of preference liability before § 502(d) may apply.

**4.      Circuit City's "New Value" Argument is a Red Herring.**

Circuit City asserts that holding EPI's administrative expense in abeyance is warranted because the relevant transactions giving rise to the administrative expense may overlap with transactions that support a new value defense in the event any preference action is commenced. This argument is a red herring at best.

Under the express language of § 547(c)(4), the new value defense to an alleged preferential transfer is applicable so long as the debtor did not make an otherwise unavoidable transfer on account of that new value. *See* 11 U.S.C. § 547(c)(4). Thus, on its face, it appears that the defense is available even if the transactions underlying the new value are ultimately paid as an administrative expense in the bankruptcy case. However, this matter is not properly before the Court at this time and Debtors' argument is premature. To the extent Circuit City (or the Plan trustee) pays EPI's Administrative Expense and an avoidance action against EPI is later commenced, the Court may be called upon at that time to decide whether the new value defense can be used with respect to those transactions paid as administrative expenses. That issue is simply not yet before the Court and should not impact the Court's decision on the Administrative Expense Objection. This Court should not issue an advisory opinion with respect to the extent of the new value defense to a preference suit that does not yet exist.

**B.      Section 502(d) is Inapplicable to Administrative Expenses.**

        **1.      The Unambiguous Language of the Relevant Statutes Demonstrates that § 502(d) Does Not Apply to Administrative Expenses.**

By its very terms, § 502(d) only applies to claims and not administrative expenses. Administrative expenses are not governed by § 502 of the Bankruptcy Code, but rather are allowed only in accordance with § 503 of the Bankruptcy Code.  Section 503 of the Bankruptcy Code provides in relevant part:

    (a)      An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

    (b)      After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –

11 U.S.C. § 503.  Nine categories of examples of administrative expenses follow, including:

    (9)      the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title, in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

*Id*.  Without exception, administrative expenses are entitled to second priority under 11 U.S.C. § 507.  Nowhere in the Bankruptcy Code do the rights of a holder of an administrative expense vary due to the particular subsection of § 503(b) under which the administrative expense was approved.

In contrast, allowance of proofs of claim and equity interests filed pursuant to § 501 of the Bankruptcy Code are governed by § 502, as qualified by subsection 502(d).  Section 502, entitled "Allowance of claims or interests" provides, in part:

    (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title objects.

*Id.* § 502(a).   Section 502 is specifically complemented by § 501, which sets forth the requirements for filing proofs of claims and interests.   Unlike §§ 501 and 502, § 503 stands alone.   *See, e.g., Beasley Forest Prods., Inc v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.)*, 297 B.R. 326, 328 (Bankr. S.D. Ga. 2003).   As the court in *Durango Georgia Paper* explained:

> Unlike sections 501 and 502, § 503 needs no complement in providing for payment [of] administrative expenses, in that it provides both for filing *and* allowance of requests for administrative expenses.   Section 503 employs terminology that further sets it apart from Sections 501 and 502 in purpose and meaning:   A party seeking payment under § 503 is to file a "request," rather than a "proof," and the payment to be requested is an "expense," rather than a "claim."

*Id*. at 329 (emphasis in original).   Thus, the § 502 and § 503 allowance processes are distinct and separate in context, purpose, and intent.

The United States Court of Appeals for the Second Circuit recently analyzed this statutory framework in concluding that § 502(d) does not apply to administrative expenses in *Ames*.   In *Ames*, the debtor obtained a judgment for preferential transfers against an entity that had transferred its administrative claims to an investor in distressed debt, ASM Capital, LP ("ASM").   The debtor sought to use § 502(d) to withhold payment to ASM until the judgment debtor paid the amount of the judgment.   Both the Bankruptcy Court and the District Court agreed with the debtor and disallowed the administrative expense.   On appeal, the Second Circuit reversed.   In concluding that § 502(d) does not apply to bar payment of administrative expenses, the *Ames* court noted that:

> The structure and context of section 502(d) suggests that Congress intended it to differentiate between claims and administrative expenses, and not to apply to the latter.   Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503.

*Id.* at 429.  The Second Circuit provided a detailed analysis of the relevant statutory provisions, and concluded that a plain reading of the statute required it to hold that administrative expenses were not subject to disallowance pursuant to § 502(d).  First, the court noted that while only "creditors" are authorized to file proofs of claim under § 502, any entity may file a request for payment under § 503.  *Id.* at 429-30.  In addition, the Second Circuit recognized that § 503 requires a notice and hearing for all administrative expenses, whereas § 502 only requires notice and a hearing in the event of an objection to a claim  *See id.* at 430.  Section 503(b) also specifically excludes claims allowed under § 502(f), which might otherwise constitute administrative expenses, from allowance.  *See id.*

The *Ames* court quoted extensively from the decision in *Durango Georgia Paper* in its analysis of the language employed in § 502(d) to suggest that that section was not intended to apply to § 503 administrative expenses.  Section 502(d) requires the disallowance of any claim of any entity from whom property is recoverable "[n]otwithstanding subsections (a) and (b)" of § 502.  As explained by the Second Circuit, "[t]he plain language thus introduces section 502(d) as an exception to the automatic allowance of proofs of claim under sections 502(a) and (b), and suggests that the subsection's scope is limited to that process and does not extend to claims allowable under section 503."  *Id.*  "That suggestion is reinforced by the absence from section 502(d) of any reference to section 503."  *Id.*  As both *Ames* and *Durango Georgia Paper* held, "[t]o construe     § 502(d)'s disallowance as applicable to expenses allowable under § 503 – a section with its own scope, purpose, and conditions – is to expand the scope of § 502(d)'s disallowance beyond its plain meaning."  *Id.* (quoting *Durango Georgia Paper*, 297 B.R. at 330).  In other words, if Congress had intended § 502(d) to apply to administrative expenses, the

14

introductory phrase would have read "notwithstanding subsections (a) and (b) and Section 503(b)," or words of similar purport.

In Ames, the Second Circuit also followed the decisions in *In re Lids Corp.* and *Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000) in considering § 502 in light of the principle of statutory construction known as "*affirmatio unius exclusio est alterius*" (the affirmance of one thing is the exclusion of the other). Section 502 specifically identifies certain post-petition claims and states that they are to be, *inter alia*, disallowed under subsection 502(d) "*as if such claim had become fixed before the date of filing of the petition.*" *In re CM Holdings, Inc.*, 264 B.R. at 158 (quoting 11 U.S.C. § 502(e)(2)) (emphasis in original). Specifically, §§ 502(e)(2), (f), (g), (h) and (i) each explicitly bring certain post-petition claims, which otherwise might arguably qualify as administrative expenses, within the ambit of § 502, by providing that those claims will be allowed or disallowed "the same as if such claim had become fixed before the date of the filing of the petition." *Ames*, 582 F3d at 430 (emphasis omitted). The Court in *CM Holdings* concluded that "[t]he express reference to, and treatment of, these other types of postpetition claims within the purview of § 502(d) suggests by negative implication that the drafters did not intend that administrative expense claims be subject to the set off provision of § 502(d)." *In re CM Holdings, Inc.*, 264 B.R. at 158.

The persuasiveness of the "*affirmatio unius*" principle in this context is highlighted by the fact that § 503(b) expressly excludes "involuntary gap claims" described in § 502(f) from § 503's mandatory allowance process. In turn, § 502(f) is both included in § 502 and by its own terms subject to disallowance under § 502(d). *See* 11 U.S.C. § 502(f). There is no such cross-reference in § 502 for any type of administrative expense allowable under § 503. In view of the

express exclusion of involuntary gap claims from administrative expenses under § 503, and the inclusion of such claims under § 502, the omission of administrative expenses from the express scope of § 502(d) is presumed to have been intentional on the part of Congress under the authorities discussed above.

The rationale of the Second Circuit in *Ames* and the cases cited by that panel are sound. This Court should follow *Ames*, *Durango Georgia Paper*, *Lids*, and *CM Holdings*, as well as every other court to consider the issue (which was not bound by controlling precedent or later reversed) in the last seven years. *See, e.g., S. Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742, 749-50 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Prods., Inc.,* 394 B.R. 147, 161 (Bankr. E.D. Mich. 2008); *In re USA Labs, Inc.*, 2006 Bankr. LEXIS 2394, at *4 (Bankr. S.D. Fla. 2006); *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.*), 2004 WL 3113719, at *20  (Bankr. M.D. Tenn. 2004); *Roberds, Inc. v. Broyhill Furniture* (*In re Roberds, Inc.), * 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004) ("This court does not find 11 U.S.C. § 502(d) a barrier to the allowance of an administrative claim.").

### 2. The *MicroAge* Decision and the Bankruptcy Code's Broad Definition of "Claim" Do Not Compel a Different Result.

Circuit City argues that this Court should follow the decision of the Ninth Circuit Bankruptcy Appellate Panel in *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (B.A.P. 9th Cir. 2002), which held that § 502(d) could be employed to disallow administrative expenses.  This decision has been repeatedly rejected by every court to decide this issue in the last seven years (with the exception of a bankruptcy court in the Ninth Circuit that was bound to follow it and the lower courts reversed in *Ames*).  The *MicroAge* decision rests in large part on the broad definition of the term "claim" in § 101(5) of the Bankruptcy Code.  The

term "claim" is defined broadly enough in the Bankruptcy Code to include the right to payment

of an administrative expense, at least in some contexts, such that the terms are not always

"mutually exclusive." *Durango Georgia Paper*, 297 B.R. at 330. Nonetheless, in *MicroAge*, the

BAP reached a conclusion opposite to that of the courts in *CM Holdings* and *Lids*, holding that

the plain meaning of the relevant provisions requires application of § 502(d) to administrative

expenses. The BAP noted that the term "claim" is defined sufficiently broadly in § 101(5) of the

Bankruptcy Code, to include administrative expenses, and that because many sections of the

Bankruptcy Code specifically exclude administrative expenses from claims, the absence of such

an exclusion in § 502(d) is significant. *In re MicroAge, Inc.,* 291 B.R. at 508. The logic of the

*MicroAge* court is flawed.

The Bankruptcy Code uses both the terms "claim" and "administrative expense"

inconsistently throughout its text. As explained by the court in *Durango Georgia Paper*:

> [S]everal provisions sweep "administrative expenses" within the "claims" label.
> *See id.* § 766(h) & (i)(2) (referring to "claims of a kind specified in section
> 507(a)(1) of this title," which claims are labeled "administrative expenses" in §
> 507(a)(1)); § 546(c)(2) (referring to "claim of a kind specified in section 503(b) of
> this title") ….

*Durango Georgia Paper*, 297 B.R. at 330.[5] Yet, § 507(a) refers to "expenses *and* claims," *id.* at

329 (emphasis in original), and establishes a separate priority for "administrative expenses" as

opposed to various "claims." *Compare* 11 U.S.C. § 507(a)(2) *with* §§ 507(a)(3)-(10), as

amended by BAPCPA.

Moreover, the statutory analysis adopted by the Second Circuit in *Ames*, easily disposes

of the *MicroAge* court's concerns about the absence of any express exclusion of administrative

expenses from the § 502 claims subject to § 502(d). As stated by the Court in *Durango Georgia*

---

[5] Pursuant to the amendments to § 507, as provided by the Bankruptcy Abuse Prevention and Consumer Protection
Act of 2005 ("BAPCPA"), § 507(a)(1) is now § 507(a)(2).

*Paper*, the provisions cited by the *MicroAge* court that include administrative expenses within the "'claims label'" merely "reflect that the Bankruptcy Code's definition of 'claim' broadly includes any right to payment . . . . They do not, however, override the more meaningful and specific utilization of two distinct terms – 'expense' and 'claim' – within the subchapter in which both sections 502 and 503 are located." *Durango Georgia Paper*, 297 B.R. at 330 (footnote omitted).

Circuit City's reliance on the use of the term "entity" rather than "creditor" in subsection 502(d), under the rationale of *MicroAge* to justify the inclusion of administrative expenses in the § 502(d) disallowance process is similarly unpersuasive. *See* 291 B.R. at 509. No legislative history specifically addresses the use of the word "entity" in § 502(d). Therefore, it is pure speculation to posit why Congress used that term; although, one possible explanation is that Congress merely intended to include the claims of entities other than creditors that are permitted to file proofs of claim within the ambit of § 502(d)'s disallowance process.

Simply put, *MicroAge* and the Debtors have it backwards. It is Section 503 that expressly excludes from mandatory allowance the sole type of potential administrative expense – involuntary gap claims – that is subject to § 502(d). Other provisions of § 502 similarly make § 502(d) apply to various types of post-petition claims. *See* 11 U.S.C. §§ 502(e)(2), (g), (h) and (i). As explained above, the appropriate negative inference is, therefore, that Congress intended to exclude certain types of post-petition claims, namely administrative expenses, from the scope of § 502(d) and make those enumerated in § 502(e)(2), (f), (g), (h) and (i) subject to disallowance under § 502(d). *See In re CM Holdings, Inc.*, 264 B.R. at 158.

It is likewise well established that statutes are to be interpreted so as not to render any words meaningless or redundant. *See, e.g., United States v. Childress*, 104 F.3d 47, 52 (4th Cir.

18

1996) ("A well-recognized canon of construction requires courts to read statutory provisions so that, when possible, no part of the statute is superfluous."); *Virginia v. Browner*, 80 F.3d 869, 877 (4th Cir. 1996) ("A court should not and we will not construe a statute in a manner that reduces some of its terms to mere surplusage."). But, the *MicroAge* analysis does just that. Contrary to the rationale of *MicroAge*, administrative expenses and claims are statutorily distinguished for some purposes. This is confirmed by the distinct and separate treatment for administrative expenses as opposed to other claims dictated by Sections 502 and 503.

Accordingly, it is incorrect to consider merely the Bankruptcy Code's broad generic definition of claim to determine whether the § 502(d) disallowance applies to administrative expenses. Instead, this Court's analysis must consider the context and statutory framework of the relevant code provisions as a whole, consistent with fundamental principles of statutory construction. *See Ayes v. United States VA,* 473 F.3d 104, 108 (4th Cir. 2006) ("Of course, in looking to the plain meaning, we must consider the context in which the statutory words are used because '[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.'") (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).

Where Congress intended to make the allowance of a certain type of potential administrative claim subject to § 502(d), it did so expressly in § 502(e)(2), (f), (g), (h) and (i). Absent such an express provision, the mandatory allowance language in § 503(b) remains unqualified. It is well established that "[a]bsent a qualifying clause, one mandatory statutory provision should not be presumed to trump another mandatory provision." *Durango Georgia Paper*, 297 B.R. at 331; *see Marsano v. Laird*, 412 F.2d 65, 70 (2d Cir. 1969) ("[A]n interpretation which emasculates a provision of a statute is not to be preferred...."). This Court should not create any such unnecessary conflicts here.

But, even if the Court believes, as apparently did the *MicroAge* court, that it is compelled

by the broad definition of "claim" to find that a conflict between § 503 and § 502(d) exists, that

conflict must be resolved in favor of the more specific provision controlling over the more

general.  "It is a basic principle of statutory construction that a specific statute controls over a

general provision, particularly when the two are interrelated and closely positioned." *Credit*

*Union Ins. Corp. v. United States*, 86 F.3d 1326, 1333 (4th Cir. 1996) (citing *HCSC-Laundry v.*

*United States*, 450 U.S. 1, 6 (1981)). With respect to §§ 502(d) and 503, this principle requires

that the more specific mandatory language of § 503 dealing with administrative expenses as a

subset of claims, and requiring mandatory allowance of such expenses, controls over the more

general claim language in § 502, including § 502(d).  For all of these reasons, the Court should

conclude that pursuant to the plain language of the Bankruptcy Code, § 502(d) is inapplicable to

administrative expenses.

> **3.      Legislative History and Policy Support a Finding that Administrative
> Expenses are Not Subject to Disallowance Under § 502(d).**

It is well-established that legislative history may not be used to contradict the meaning of

a statute that is, or can be rendered, unambiguous by the application of well-settled principles of

statutory construction. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our inquiry must

cease if the statutory language is unambiguous and 'the statutory scheme is coherent and

consistent.') (citing *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 240 (1989)).  Resort to

the legislative history is unnecessary here because the statute is not ambiguous.  Moreover, the

legislative history relied on by the Debtors is unpersuasive.

The Debtors rely upon House and Senate Reports for the new Bankruptcy Code which

stated that "Subsection [502](d) is derived from present law," as well as decisions under the

Bankruptcy Act purportedly holding that § 57g applied to administrative expenses under the

Bankruptcy Act.  Administrative Expense Objection at 15-17.  The Debtors extrapolate from this exercise that Congress must be presumed to have transported § 57g's alleged applicability to administrative expenses into the new Bankruptcy Code.  This convoluted analysis, also adopted by the court in *MicroAge*, is pure speculation.

The observation that "Subsection (d) is derived from present law" may mean nothing more than that new § 502(d) would continue to apply to the allowance of proofs of claim as explicitly set out in new § 502.  *See* H.R. Rep. No. 95-595, at 354 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310; S. Rep. No. 95-989, at 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851.  Such ambiguous references and weak at best analysis fall far short of the standard for overruling the unambiguous language and structure of the Bankruptcy Code, which if properly construed, establishes a mandatory process under § 503 for the allowance of administrative expense payments without regard to § 502(b) considerations.  Indeed, the House and Senate Reports addressing the enactment of § 503 suggested that the request for payment of an administrative expense was a separate mechanism for which the "Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing."  H.R. Rep. No. 95-595, at 355 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6311; S. Rep. No. 95-989, at 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852.

> **4.      Analogous Authority Regarding § 502(c) Supports a Finding that Administrative Expenses are Not Subject to Disallowance Under § 502(d).**

Courts have also found that § 502(c) of the Bankruptcy Code may not be used to estimate administrative expenses.  Subsection 502(c) provides:

There shall be estimated for purpose of allowance under this section—

> (1)     any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2)     any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).[6]

The United States Court of Appeals for the Sixth Circuit recently had an opportunity to consider whether § 502(c) could be used to estimate administrative expenses, and concluded that administrative expenses could not be estimated under that subsection. *See Zurich Am. Ins. Co. v. Lexington Coal Co., LLC, (In re HNRC Dissolution Co.)*, 536 F.3d 683, 683-84 (6th Cir. 2008) ("Zurich argues that the lower courts should have permitted the estimation of Zurich's administrative expense claim under 11 U.S.C. § 502(c). We find no merit in Zurich's arguments"). The Sixth Circuit in *HNRC* expressly adopted the reasoning of the district court in *Zurich Am. Ins. Co. v. Lexington Coal Co., LLC (In re HNRC Dissolution Co.)*, 371 B.R. 210 (E.D. Ky. 2007). In that opinion, the court noted that "[t]he large majority of courts addressing estimation have consistently held that, because § 502 covers pre-petition claims of general creditors, the allowance for estimation of claims is reserved only for claims falling within the scope of § 502." *Id.* at 233 (citing *United States v. Sterling Consulting Corp. (In re Indian Motocycle Co., Inc.)*, 261 B.R. 800, 810 (B.A.P. 1st Cir. 2001)). In concluding that administrative expenses were not subject to estimation, the court followed an Eastern District of Virginia case which "explicitly rejected the idea that § 502(c) could act to authorize estimation for administrative claims that inherently fall under § 503." *Id.* at 234. In that case, *In re Atcall*, 284 B.R. 791 (Bankr. E.D. Va. 2002), Judge Mayer concluded:

---

[6] In a sense, by seeking "temporary" disallowance of EPI's Administrative Expense, the Debtors are effectively seeking estimation of that expense at zero until such time as any preference action might be adjudicated.

> There are differences between requests for payment [of an administrative expense] and proofs of claim. One relates to allowance. A proof of claim is deemed allowed unless a party in interest objects to the claim. A properly filed proof of claim constitutes prima facie evidence of the validity and amount of claim. A contingent or unliquidated claim may be estimated under § 502([c]) if the fixing or liquidation of the claim would unduly delay the administration of the estate. None of these provisions apply to a request for payment [of an administrative expense claim].

*Id.* at 799. Accordingly, there is authority within this District holding that administrative expenses are not subject to the provisions of § 502. This Court should follow these well-reasoned opinions and conclude likewise.

**5.    Section 502(d) Does Not Apply to Administrative Expenses Allowed Under § 503(b)(9).**

The fact that EPI's Administrative Expense was allowed under § 503(b)(9) as opposed to another subsection of § 503 is not meaningful. All administrative expenses are treated equally under the Bankruptcy Code. No basis in the law exists to differentiate between types of administrative expenses. The fact that the amount of EPI's allowed administrative expense was based upon prepetition circumstances does not make the expense any less "administrative in nature." As explained by the court in *Plastech*:

> [N]o such distinction is recognized in the statute. Section 503(b) contains nine categories of administrative expenses, six of which consist of post-petition obligations and three of which consist either entirely or partially of pre-petition obligations. Section 503 makes no distinction among these nine categories either with respect to how their payment is requested under § 503(a), nor how they are allowed under § 503(b). Further, § 507(a)(2) affords the identical priority to all administrative expenses allowed under § 503(b), without regard to which of § 503(b)'s nine examples provides the basis for the administrative expense. The distinction urged by the Debtor - i.e., that § 503(b)(9)'s are pre-petition in nature-although factually true, is not a distinction that makes any difference under § 503(b), or is even recognized by § 503(b). Nor is there any legislative history to suggest that Congress intended there to be such a distinction.

394 B.R. at 163.

In enacting § 503(b)(9), Congress was not establishing some special (inferior) class of administrative expenses that would alone be subject to § 502(d).  As explained in *Plastech*, had Congress intended to do so, it could have easily modified the priority scheme or through other language.  "But Congress did not do so. Instead, it took this 'special class' of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses.  By doing so, Congress placed § 503(b)(9) administrative expenses beyond the reach of § 502(d)." *Id.* at 164.  No reading of the statute could lead the Court to the conclusion that administrative claims allowed under § 503(b)(9) should be treated any differently from other administrative expenses, which, as explained above, are not subject to the provisions of § 502(d).

In addition, policy arguments support treating administrative expenses under § 503(b)(9) in the same manner as other administrative expenses. As explained by the court in *TI Acquisition*, in determining that § 502(d) did not apply to administrative expenses under § 503(b)(9):

> The treatment of expenses in § 503(b)(9) appears to be an outgrowth of the policy that first appeared in 11 U.S.C. § 546(c), which preserved the right of reclamation to certain sellers of goods on credit. BAPCPA included both the addition of § 503(b)(9) and the amendment of § 546(c). The combination of these changes suggests that Congress intended to recognize a reclamation right for sellers that was no longer exclusively dependent upon state law. ...  Prior to BAPCPA, § 546(c) provided for an administrative priority claim for reclaiming sellers who were denied a right of reclamation by the court. BAPCPA deleted that portion of § 546(c)(2) and added § 503(b)(9), thus according protection to sellers of goods on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of whether the technical requirements for reclamation were met. While no legislative history exists, one can only surmise that these amendments reflect Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors.

410 B.R. at 745-46.  It follows that Congress intended to protect suppliers of goods through the 2005 Amendments to the Bankruptcy Code and did not intend to treat administrative expenses under § 503(b)(9) differently from other administrative expenses.

**IV.    Conclusion.**

The authorities cited herein conclusively establish that § 502(d) only operates where an actual adjudication of the preference liability has been made, and then only serves to disallow claims as opposed to administrative expenses.  This Court should decline the Debtor's invitation to follow the *MicroAge* case, which has been universally rejected by every court that was not bound to follow it, and should both overrule the Administrative Expense Objection and deny the Motion to Waive Status Conference.

WHEREFORE, based upon the foregoing, EPI respectfully requests that the Court: (i) overrule the Administrative Expense Objection and the Motion to Waive Status Conference; (ii) allow EPI's Administrative Expense in the amount of $309,516.00 and (iii) grant such other and further relief as is just and proper.

Respectfully submitted,

ENVISION PERIPHERALS, INC.

By Counsel

WILEY REIN LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia  22102
703.905.2800


By:     /s/ Dylan G. Trache
          H. Jason Gold, Va. Bar No. 19117
          Valerie P. Morrison, Va. Bar No. 24565
          Dylan G. Trache, Va. Bar No. 45939

Counsel to Envision Peripherals, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 4, 2009, the foregoing was sent by electronic

mail and first class mail, postage prepaid, to:

Gregg M. Galardi (gregg.galardi@skadden.com)
Ian S. Fredericks (ian.fredericks@skadden.com)
Skadden Arps Slate Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

Chris L. Dickerson (chris.dickerson@skadden.com)
Skadden Arps Slate Meagher & Flom, LLP
155 North Wacker Drive
Chicago, Illinois 60606

Dion W. Hayes (dhayes@mcguirewoods.com)
Douglas M. Foley (dfoley@mcguirewoods.com)
McGuireWoods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219


 /s/ Dylan G. Trache
Dylan G. Trache

13067054.3