**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | | |
|---|---|---|
| In re: | * | |
| **CIRCUIT CITY STORES, INC., et al.,** | * | **Case No: 08-35653-KRH** |
| | | **Chapter 11** |
| **Debtors.** | * | **(Jointly Administered)** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### RESPONSE OF ALLIANCE ENTERTAINMENT LLC, NOW KNOWN AS SOURCE INTERLINK DISTRIBUTION, LLC AND SOURCE INTERLINK MEDIA, LLC TO DEBTORS' FORTY-EIGHTH, FORTY-NINTH AND FIFTIETH OMNIBUS OBJECTION TO CLAIMS

Alliance Entertainment LLC, now known as Source Interlink Distribution, LLC

("Alliance") and Source Interlink Media, LLC ("SIM")(Alliance and SIM are referred to

collectively herein as "Source"), hereby submit this response (the "Response") to the Debtors'

Forty-Eighth, Forty-Ninth and Fiftieth Omnibus Objection to Claims (the "Objections"), and in

support thereof, state:

Bradford F. Englander, VSB# 36221
Brian M. Nestor, VSB# 77133
Whiteford, Taylor & Preston LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9081 (tel)
(703) 280-9139 (fax)
benglander@wtplaw.com

*Counsel for Alliance Entertainment LLC,*
*now known as Source Interlink Distribution, LLC, and*
*Source Interlink Media, LLC*

## **Preliminary Statement**

The Debtors seek an expedited determination that they may apply or "setoff" any claims they may have against a creditor's 503(b)(9) expense.  The request for expediting a ruling on the Objections should be denied for four reasons.

First, the broad relief that the Debtors request is inconsistent with the priorities established by Congress.  Sections 553 and 558 of the Bankruptcy Code, which preserve setoff rights and personal defenses, are not priority provisions.  Rather, they preserve general rights and defenses to the extent that such rights and defenses exist under non-bankruptcy law.  Section 503(b)(9), on the other hand, implements Congress' intent to establish a priority  in favor of creditors who deliver goods to a debtor on the eve of bankruptcy.  The Debtors' broad brush request to turn this priority on its ear by giving a debtor the unilateral right to apply alleged credits (no matter what their nature) would defeat congressional intent and would create a disincentive for vendors to ship to a troubled debtor during the important run up to bankruptcy.

Second, any attempt to expedite a ruling would require the Court to render an advisory opinion.  The facts of each case are not before the Court.  Consequently, in order for the Court to make a decision at this early stage would require the Court to make an abstract ruling, which might be irrelevant or inadvisable in the context of any specific dispute.

Third, the Debtors' request for an expedited substantive ruling violates due process and the Bankruptcy Rules.  At the outset of this case, the Debtors requested that the Court establish omnibus claim objection procedures that gave the Debtors the ability to object to claims on any grounds.  The Debtors justified this broad departure from Rule 3007(d) by including a requirement that the initial hearing on any objection would proceed solely as a status conference with respect to any party who filed a response.  The Debtors have not provided any justification

for bypassing this important procedural protection.    Adherence to the standard procedures is particularly important in the present circumstance because development of the factual record will be essential to resolving the matters before the Court.  Moreover, basic due process requires that affected parties be given notice that the Debtors are seeking a ruling that may affect their rights.  Notably, the Debtors did not include Source as a party to the Objections, even though the requested expedited ruling could affect Source's rights in this bankruptcy case.  Other creditors may be similarly situated.

Finally, there is nothing to be gained by attempting to reach an abstract decision in the dark.  The Debtor is not an operating company, and the requested decision consequently is not necessary to the Debtors' reorganization.  This case is a liquidation.  Thus, rushing into an abstract, premature and partial decision will not benefit the estate.

For the foregoing reasons, the request for expedited decision should be denied and, in the alternative, if the Court determines to reach the merits at this time, the Objections should be overruled.

## Background

1.      Alliance and Circuit City Stores, Inc. ("Circuit City") are parties to a Retail Product Services and Supply Agreement, dated June 15, 2007, as amended by Amendment No. 1, dated April 29, 2008, and Amendment No. 2, dated September 15, 2008 (collectively, with exhibits and schedules, the "Alliance Agreement").[1]  Under the Alliance Agreement, Alliance sells or provides supply chain services to Circuit City with respect to compact discs ("CDs"); digital video discs ("DVDs"), video games ("Gaming") and other inventory (collectively, the "Products").  As more fully detailed in the Alliance Agreement, some Products were purchased directly from Alliance and some new release Products were purchased directly from the initial vendor of such Product, such as a recording label, film studio or game development firm or their respective affiliates (the "Original Vendors").

2.      Prior to the Petition Date (defined below), Alliance and SIM delivered Goods and Products and provided services to the Debtors for which no payment was made by the Debtors (the "Source Claims").

3.      Debtor Circuit City and its related entities (the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on November 10, 2008 ("Petition Date").

4.      On November 12, 2008, this Court entered its Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107)(the "503(b)(9) Bar Date Order").

---

[1] SIM and Circuit City are parties to an agreement dated July, 2006 (the "SIM Agreement").   Under the SIM Agreement, SIM sells books and magazines (the "Books" and "Magazines" to Circuit City (collectively, the "Goods").

5.    Pursuant to the 503(b)(9) Bar Date Order, the Court approved the form and manner of the 503(b)(9) bar date notice, which was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice"). Pursuant to the 503(b)(9) Bar Date Order and the 503(b)(9) Bar Date Notice, the bar date for filing proofs of claim asserting administrative priority claims pursuant to section 503(b)(9) of the Bankruptcy Code was December 19, 2008 (the "503(b)(9) Bar Date").

6.    On December 10, 2009, the Court entered its Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order").

7.    Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. §105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009 (the "General Bar Date"). This Court also approved the form and manner of the General Bar Date notice ("General Bar Date Notice"), which was attached to the Claims Bar Date Order.

8.    On April 1, 2009, this Court entered an Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections (Docket No. 2881) (the "Claims Procedures Order").

9.    On April 27, 2009, Source and their related entities filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  On April 28, 2009, Source filed its prepackaged joint plan of reorganization.

10.    On May 28, 2009, the Delaware bankruptcy court entered an order confirming the Source et al.'s prepackaged joint plan of reorganization pursuant to Chapter 11 of the

Bankruptcy Code (with technical amendments) (Docket No. 237).  The Source plan became effective on June 19, 2009.

11.   Source complied with the Court's 503(b)(9) Bar Date Order and Claims Bar Date Order with respect to timing and filing requirements for asserting its claims against the various Debtors entities.  Source filed the following claims against the Debtors:[2]

    a.   "Alliance 503(b)(9) Claim" filed on December 17, 2008 as follows:

        (i)$4,010,658.44 for the value of Products delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City PR, LLC; (ii)$4,010,658.44 for the value of Products delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City Stores West Coast, Inc.; and (iii) $4,010,658.44 for the value of Products delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City Stores, Inc.;

    b.   "SIM 503(b)(9) Claim" filed on December 17, 2008 as follows:

        (i)$360,345.31 for the value of Goods delivered by SIM during the 20-day period prior to the Petition Date against Circuit City Stores West Coast, Inc.; and (ii) $360,345.31 for the value of Goods delivered by SIM during

---

[2] The General Bar Date Notice stated:

    [a] creditor's proof of claim may be filed without the writings and/or documentation upon which the claim is based, as required by Bankruptcy Rule 3001(c) and (d); provided, however, that, upon the request of the Debtors or any other party in interest in these cases, any such creditor will be required to transmit promptly such writings and/or documentation to the Debtors or the other party in interest, but in no event later than ten (10) days from the date of such request.

Source filed the Alliance Unsecured Claim, Alliance Secured Claim and SIM Unsecured Claim without the voluminous spreadsheets and CD-ROM attachments.  Upon the request of a representative of the Debtors, the support was delivered in June.

the 20-day period prior to the Petition Date against Circuit City Stores, Inc.;

    c.  "Alliance Unsecured Claim" filed on January 30, 2009 as follows: (i)$10,996,107 for unpaid goods and services against Circuit City PR, LLC; (ii) $10,996,107 for unpaid goods and services against Circuit City Stores West Coast, Inc.; and (iii) $11,646,519.00 for goods, services and other contractual/indemnity claims against Circuit City Stores, Inc.;

    d.  "Alliance Secured Claim" filed on January 30, 2009 as follows: (i)$1,028,153.34 secured claim for unpaid storage and carrier services against Circuit City Stores West Coast, Inc.; and (ii) $1,028,153.34 secured claim for unpaid storage and carrier services against Circuit City Stores, Inc.; and

    e.  "SIM Unsecured Claim" filed on January 30, 2009 as follows: (i) $875,724.31 for unpaid goods and services provided against Circuit City Stores West Coast, Inc.; and (ii) $875,724.31 for unpaid goods and services provided against Circuit City Stores, Inc.

12.   On or about August 27, 2009, the Debtors filed their proof of claim in the amount of $3,887,327.00 in the Source bankruptcy.

## Argument

13.  The Debtors seek to "setoff" certain amounts alleged owed to the Debtors' estates, defined as receivables, chargebacks, returns, and other amounts (collectively, the "Receivables"), against certain identified creditors' (the "Claimants") requests for payment made pursuant to Bankruptcy Code sections 503(b)(1) through 503(b)(8) (collectively, the

"503(b) Administrative Expenses") and/or a claims made pursuant to Bankruptcy Code section

503(b)(9) (collectively, the "503(b)(9) Claims" and together with the 503(b) Administrative

Expenses, the "Administrative Expenses").

14.    As set forth above, SIM and Alliance properly filed their respective 503(b)(9)

Claims.  The Debtors did not name Source in the Objections, but they have stated their intent to

exercise their alleged setoff against Source's 503(b)(9) Claims.  Therefore, Source files this

Response requesting that the Court (i) deny the Debtors' request to waive the requirement that

the initial hearing on any response to this Objection proceed as a status conference; and (ii)

deny the Debtors' request for an advisory opinion and its attempt to bifurcate indistinguishable

legal and factual issues related to the alleged Receivables and Administrative Expenses.  If the

Court proceeds with the expedited hearing on the merits of the Objections, Source alternatively

requests that this Court overrule the Objections, and deny the Debtors' request to be authorized

to setoff the Receivables against the Administrative Expenses.[3]

## I.    The Omnibus Objections Are Procedurally Improper

15.    The Debtors request that this Court "hear argument on and resolve" certain legal

issues presented by the Objections (and any responses), but reserve "any factual disputes for a

subsequent hearing after appropriate discovery." [4]  Objections ¶ 9.  Adopting this approach

---

[3] Source has standing to be heard on these matters because Source is a creditor in the case and because the requested relief may affect Source's rights.  11 U.S.C. § 1109(b).

[4] As a threshold matter, the Court must determine if there is even a case or controversy to be heard.  The Court cannot provide the Debtors with an advisory opinion; and without actual facts and a cognizable harm to be litigated, this matter is not ripe for ruling.  Federal courts have judicial power to hear only real cases or controversies.  United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993) (citations omitted); Crosetto v. State Bar of Wis., 12 F.3d 1396, 1403 (7th Cir. 1989).  An advisory opinion results if the court resolves a question of law that is not presented by the facts of the case.  In re Chi., Rock Island & Pac. R.R. Co., 772 F.2d 299, 303 (7th Cir. 1985) (finding that a court can decide "only the case before it, and can not render advisory opinions disposing of other issues not presented for decision"); Muskrat v. United States, 219 U.S. 346, 359 (1911); People of the State of Ill. v. Archer Daniels Midland Co., 704 F.2d 935, 941 (7th Cir. 1983) ("The term 'advisory opinion' is often just a conclusion; it is what you call a decision that does not resolve an actual case or controversy.").  Moreover, a case or controversy must satisfy the ripeness doctrine.  Ripeness reflects the timing of the litigation.  The doctrine serves

8

would deprive the Court of the ability to fashion a ruling based on the facts.  There are

numerous factual circumstances that could affect the Court's ruling.  For instance:

- There has been no determination regarding choice of law.  The Debtors assume
  that Virginia law governs.  See Objections at ¶¶ 15 & 16.  The operative
  documents or law may provide otherwise.

- The terms of a contract or course of dealings may affect the order of disposition
  of credits or rights to setoff.  See  United States Internal Revenue Serv. v.
  Martinez (In re Martinez), 2007 U.S. Dist. LEXIS 6163 (M.D. Pa. Jan. 29,
  2007)(setoff is fact dependent and court needed more detailed findings); see also
  Brown & Cole Stores, LLC v. Assoc. Grocers, Inc. (In re Brown & Cole Stores,
  LLC), 375 B.R. 873, 879 (9th Cir. B.A.P. 2007)(court reversed and remanded
  because "no contested matter or adversary proceeding has been commenced
  against AGI to determine the parties' rights under the Master Supply Agreement,
  its pricing provisions or the rebate program.")

- With respect to credits for returns, the timing of delivery of the returns may be
  relevant.  The Court may determine that returns that were made prior to petition
  date, or prior to the 20-day period preceding the petition date, occupy a different
  status than returns that were made post-petition.  See In re Plastech Engineered

---

to avoid premature adjudication and the entanglement of the courts in abstract disagreements that may or may not
mature into a genuine case or controversy.  A legally cognizable claim subject to redress by the Court must be
present before a case is ripe.  See e.g., Valley Forge Christian College v. Americans United for Separation of Church
& State, Inc., 454 U.S. 464, 472 (1982) (Constitution's "irreducible minimum" requires that a plaintiff or petitioner
"show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of
the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a
favorable decision") (citation and internal quotation marks omitted); Abbott Laboratories v. Gardner, 387 U.S. 136,
152 (1967) (ripeness requires that the claimed legal injury be "direct and immediate" rather than speculative); Jones
v. Griffith, 870 F.2d 1363, 1366 (7th Cir. 1989) ("[a] dispute must have ripened into a legal case before a federal
court can act; the case must not lie merely in the future.").

Prods., 394 B.R. 147, 151 (Bankr. E.D. Mich. 2008)(503(b)(9) elevates claims for

value of goods received by debtor during 20-day period prior to bankruptcy).

- The doctrine of recoupment may alter the Court's analysis substantially. See

    Georgetown Steel Co., LLC v. Capital City Ins. Co. (In re Georgetown Steel), 318

    B.R. 313 (Bankr. D.S.C. 2004) (recoupment is case-by-case determination for

    whether the claims are part of "same transaction"); see, e.g., In re Camellia, 287

    B.R. at 61 (determination of same transaction in the Fourth Circuit involves

    analysis of the integrated nature of the events); see also  In re Thompson, 182

    B.R. 140, 148 (Bankr. E.D.Va. 1995) (recoupment involves claims "arising out of

    the very contract giving rise to the plaintiff's claim.") (citations omitted).

16.   The foregoing are examples of factors that may affect a decision regarding the

issues raised by the Debtors.  Other factors may arise as well.  Attempting to address the issues

raised by the Debtors prior to the development of any factual record would deprive the Court of

the ability to render a fully considered ruling.[5]

17.   The Debtors simply allege that they have claims for setoff by stating that

"Circuit City became entitled to certain amounts, including … the "Receivables"… which are

currently due and owing to Circuit City by the Claimants."  The Receivables are identified

under the heading "Total Receivables" on Exhibit C.  Objections, ¶ 12.  The Debtors state that

the "Receivables and the Administrative Expenses were the result of transactions between

Circuit City and the Claimants" with the Receivables and Administrative Expenses resulting in

debts owed between the parties.  Objections, ¶ 16.  There is no evidence provided to the Court

---

[5] The Debtors also request in their prayer for relief that the Court "enter the Order sustaining" the Objections.
Objections pg. 16.  The Proposed Order provides, among other things, that the "Debtors are authorized to exercise
their setoff rights… [t]he 503(b) Administrative Expenses …are reduced as provided in [the Debtors' Exhibit]…
[t]he 503(b)(9) Claims … are reduced as provided in [the Debtors' Exhibit]".  Objections, Ex. A.

with respect to a single claim for setoff nor is there discussion of the standards under Section

503(b) of the Bankruptcy Code.

18.   The Bankruptcy Rules were amended in 2007 to address the abuses arising in

many large cases with respect to omnibus objections.  Bankruptcy Rule 3007(d) provides

specified grounds for an omnibus objection (absent an order of the Court).  The bases identified

in Rule 3007(d) are the sole grounds for omnibus objections.  The type of ruling requested by

the Debtors is not included in Rule 3007(d).  The Debtors may contend that they are excused

from compliance with Rule 3007(d) because at the outset of the case they requested, and the

Court entered, the Claims Procedures Order.  The Claims Procedures Order provides that the

Debtors may object on any grounds.  However, the Claims Procedures Order does not authorize

the Debtor's to deviate from the Bankruptcy Rules as far as they propose in the Objections.

19.   In their omnibus claims procedures motion (the "Claims Procedure Motion"),

the Debtors represented the following:

> Recognizing that Bankruptcy Rule 3007 seeks to provide creditors with
> transparency and clarity with respect to omnibus claims objections, the
> Debtors have tailored the Omnibus Objection Procedures to adequately
> protect creditors' due process rights and achieve administrative and
> judicial efficiency. The Omnibus Objection Procedures will help
> streamline the Claims objection process, which will inure to the benefit of
> the Debtors, creditors, the Court and all parties in interest.

Claims Procedures Motion ¶ 7.[6]  The Debtors continued:

> …the Omnibus Objection Procedures also afford substantial protection
> with respect to creditors' due process rights, providing all claimants with
> sufficient notice and an opportunity to be heard…

---

[6] The Committee Note to Amended Rule 3007 notes "[s]uch filings present significant opportunity for efficient administration of larges cases, but the rule includes restrictions on the use of these omnibus objections to ensure the protection of the due process rights of the claimants."

> The Omnibus Objection Procedures maintain the requisite due process
> protections and embody the spirit of the amendments. Indeed, although an
> Omnibus Objection will address multiple Claims, the Notice of Omnibus
> Objection is individualized for each claimant affected by such Omnibus
> Objection, clearly informing them of the Omnibus Objection and, more
> importantly, how to preserve their rights with respect thereto.

Id. ¶ 15, 18.[7]

20.   The Claims Procedures Order specified that if a response were filed, the initial

hearing would proceed solely as a status conference with respect to the responding claimant,

and that the responding claimant need not even appear at the initial hearing set on the objection.

The Court's approved Claims Procedures Order provides:

> Status hearings for all Claims for which timely responses are filed will be
> held on scheduled omnibus hearing dates. Unless otherwise notified, no
> claimants will need to appear at the status hearings on the Omnibus
> Objections. If an evidentiary hearing is necessary, claimants will be
> provided a separate notice of hearing.

Claims Procedures Order Ex. 1, ¶ 7.

21.   In recognizing the legal protections afforded parties to litigation, the Court's

Claims Procedures Order and guideline procedures stated:

> Each Claim subject to an Omnibus Objection and the Response thereto
> shall constitute a separate contested matter as contemplated by Bankruptcy
> Rule 9014, and any order entered by the Bankruptcy Court will be deemed
> a separate order with respect to such claim.

Claims Procedures Order Ex. 1, ¶ 9.

---

[7]  The Debtors noted:

> Importantly, the Omnibus Objection Procedures are not intended to alter the substantive rights of creditors
> and, instead, provide parties in interest with transparency and predictability with respect to the resolution of
> the Claims. No Claim subject to the Omnibus Objection Procedures will be disallowed, altered, reclassified
> or otherwise affected without a further order of this Court.

Claims Procedure Motion ¶ 20.

22.    The Claims Procedures Motion touted these procedures as protecting the due

process rights of claimants.  These procedural protections are critical to justifying the broad

relief that this Court gave the Debtors when it entered the Claims Procedures Order.[8]

23.    The Debtors have not followed the spirit of the Bankruptcy Rules or this Court's

Claims Procedures Order.  The Debtors now seek a ruling on issues that affect numerous

creditors.  However, the Debtors have not named all of the parties who are affected in the

pending Objections.  Source has significant 503(b)(9) claims.  The Debtors have filed six (6)

objections to Source's claims, mostly on procedural grounds.  The Debtors have expressed their

intent to exercise this same alleged right to setoff against the Source 503(b)(9) Claims.  Yet

Source was not named in the Objections.  It is unclear how many other creditors who face the

same issue were not named in the Objections and thus were not alerted to the fact that the Court

is being asked to rule on an issue that may affect their rights.  The Debtors' rush to obtain a

broad brush ruling on the 503(b)(9) setoff issues cannot be squared with the Debtors' promises to

protect due process rights in connection with the omnibus objection procedures.

24.    Even if the Debtors had notified all potentially affected creditors, the Debtors

have not justified a departure from the Claims Procedures Order.  The Claims Procedures Order

correctly specifies that the filing of an omnibus objection commences a contested matter.  Rule

56 of the Federal Rule of Bankruptcy Procedure, made applicable to contested matters by 7056

---

[8]   The Supreme Court has held that due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and **opportunity for hearing appropriate to the nature of the case**." <u>Mullane v. Cen. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950) (emphasis added).  Congress expressly incorporated the <u>Mullane</u> standard in the Bankruptcy Code:

> In this title –
> > (1) "after notice and a hearing," or a similar phrase –
> > (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.

11 U.S.C. § 102(1).

sets forth the procedures for obtaining a partial summary judgment.  See Commonwealth Ins.
Co. of N.Y. v. O. Henry Tent & Awning Co., 266 F.2d 200, 201 (7th Cir. 1959) (partial
summary judgment can be used to dispose of only one or more counts of a complaint in their
entirety).  Summary judgment (either complete or partial) requires that there be no genuine
issue of material fact.  See Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324,
332 (4th Cir. 2009); see also Celotex Corp. v. Catrett, 477 U.S. at 325.  Furthermore, Rule 56(g)
requires the court to permit discovery to take place prior to resolving a summary judgment
motion.  See RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658 (4th Cir. 1992) (summary judgment
is appropriate after adequate time for discovery and after no evidence exists which would be
sufficient to establish an element necessary for proof at trial).  The Debtors seek to bypass Rule
56 in its entirety by obtaining a partial summary judgment before any case has developed.

        25.   The Debtors offer no compelling reason to support their request to deviate from
the procedures imposed by the Bankruptcy Rules and by this Court.  Any ruling by this Court
would violate the established procedures set forth in Bankruptcy Rules 3007 and 7056, the prior
orders of this Court with respect to the Claims Procedures, and due process of law.

        **II.      No Right to Selective Setoff**

        26.   If the Court proceeds with the expedited hearing on the merits of the Objections,
the Court should find that any claim for setoff by the Debtors must first be applied against a
creditor's general unsecured claim.  The Debtors assert that they are entitled to selectively apply
alleged setoff rights against a creditor's priority Administrative Expense claim even if such
creditor has a valid general unsecured claim against which the setoff could be applied.  The
Debtors ask the Court to ignore the priorities of claims established by Congress.  Congress
made specific policy decisions when enacting section 503(b)(9) of the Bankruptcy Code and

entitled such claimants to administrative expense priority.  The issues raised by the Debtors are

not limited to setoff but rather implicate the priority of distributions.

**A.    Section 507 of the Bankruptcy Code Is The Priority Statute**

27.   Section 507, "Priorities," of the Bankruptcy Code states in pertinent part:

(a) The following expenses and claims have priority in the following order:

…

(2) Second, administrative expenses allowed under section 503(b) of this title ….

11 U.S.C. § 507(a)(2).

28.   Section 503(b)(9) provides:

[a]fter notice and a hearing, there shall be allowed, administrative
expenses, other than claims allowed under section 502(f) of this title,
including—

(9) the value of any goods received by the debtor within 20 days before
the date of the commencement of a case under this title in which the goods
have been sold to the debtor in the ordinary course of such debtor's
business.

11 U.S.C. §503(b)(9).

29.   Before enactment of BAPCPA, Congress established six non-exclusive

categories of claims entitled to administrative priority.[9]  While there is little legislative history

with respect to section 503(b)(9), its is clear that BAPCPA added a new administrative priority

expense to require the preferential treatment of a 503(b)(9) claimholder.  See In re Plastech

Engineered Prods., 394 B.R. at 151 ("§ 503(b)(9) also results in significant differences in the

treatment of pre-petition debts of creditors who otherwise appear to be similarly situated...[and]

---

[9] Section 503(b) was non-exclusive with courts applying various tests to determine administrative priority based on
actual and necessary benefits to an estate.  See In re Plastech Engineered Prods., 394 B.R. 147, 151 (Bankr. E.D.
Mich. 2008).

extends only to the value of goods received by a debtor in the ordinary course of its business

within 20 days before the bankruptcy case.")

30.   The policy objective of section 503(b)(9) is to encourage vendors to continue to

ship goods to debtors that experiencing distress, liquidity or insolvency issues without concerns

with respect to sudden build-ups.  See 4 Lawrence P. King, COLLIER ON BANKRUPTCY, ¶ 503.16,

p. 503-79 (15th ed. 1991)("ostensible reason for according administrative priority to such

obligations was to prevent debtors from acquiring goods at a time where the debtor knew that

bankruptcy was imminent and that the debtor would not be able to pay for such goods").

31.   The fact that the 503(b)(9) administrative expenses arise pre-bankruptcy does

not change their administrative expense priority.  As noted by the court in In re Plastech

Engineered Prods.:

> Much like § 503(b)(9), §§ 503(b)(3) and (4) represent instances where Congress
> has seen fit to define a certain class of pre-petition obligations, take that defined
> class of pre-petition obligations and permit the holders of such pre-petition
> obligations to have their pre-petition claims allowed as administrative expenses
> under § 503(b), rather than be subjected to the claims filing and allowance
> provisions of § 501 and § 502. While certainly much larger in scope than §
> 503(b)(3) or (4), § 503(b)(9) is but another example of Congress defining a
> specific type of pre-petition obligation that it has determined should be afforded
> administrative expense priority treatment under § 503(b).

394 B.R. at 163.

32.   Courts have rejected debtor attempts to erode a creditor's priority claim by

picking and choosing how to apply setoff.  See, e.g.,  In re Lawson, 187 B.R. 6 (Bankr. D. Idaho

1995).  In Lawson, the trustee claimed that "because a chapter 13 debtor's plan must provide for

full payment of the IRS's priority debt, allowing the IRS to offset the refund against its general

unsecured debt rather then its priority debt would give it a preference over the other general

unsecured creditors."  Id.  The bankruptcy court rejected the trustee's position.  The court stated

that except in "the extraordinary situation of a 100% payout plan or liquidation, setoffs

generally result in a preference for creditor exercising his right to setoff." Id. (IRS's use of

setoff is no more inequitable then other ordinary setoffs).

> 33.   The court in Lawson noted:

> > Those who drafted [the Bankruptcy Code] knew that [the] free exercise [of setoff
> > rights] could inhibit . . . bankruptcy policies like fair distribution of funds
> > inadequate to satisfy the debts of the petitioner in bankruptcy. . . ."

Id. (quoting In re Cascade, 34 F.3d at 766, quoting United States v. Norton, 717 F.2d 767, 773

(3d. Cir. 1983)).

> 34.   The court analogized the situation to a secured creditor bank that has a right to

setoff payments against its secured or unsecured amounts.  The court wrote:

> > [f]or example, if a bank had a $ 2,000.00 unsecured claim against a debtor and the
> > debtor had $ 1,000.00 in a checking account at the bank, the bank would be
> > entitled to offset the $ 1000.00 account against the $ 2,000.00 claim even though
> > the offset would result in a $ 1,000.00 "preference" for the bank.
> >
> > Similarly, if in the present case, the IRS is allowed to use its offset against its
> > general unsecured claim it will receive a preference of $ 2,923.92.

Id.

> 35.   There is nothing inequitable about a creditor's choice to apply setoff amounts to

unsecured claims before applying any such amounts to a secured or priority claim. As the court

in In re Lawson observed:

> > The priorities given by Section 507 are expressions of Congressional policy that
> > certain claims against a debtor should be given priority in payment above others.
> > It would completely defeat this statutory scheme if a debtor were allowed to setoff
> > its claims against the creditor, first against the creditors['] priority claims and
> > secondly against the creditors['] non-priority claims.
> >
> > . . . .

> In equity, therefore, the Court finds that [the debtor's] claims against the United States should first setoff against the non-priority claims of the United States in order to preserve the priority payment scheme as expressed in the Bankruptcy Code.

See In re Lawson, at 8-9 (quoting In re Braniff Airways, Inc., 42 B.R. 443, 452 (Bankr. N.D.

Texas 1984). See also In re Carter, 125 B.R. 832, 835 (Bankr. C.D. Kan. 1991) (citing In re

Braniff Airways for the proposition that the debtor may not require the IRS to first setoff the

debtors' tax refund against the IRS's priority claims).

36.   The Debtors contend that their claim for setoff and ability to apply such right of

setoff of is based on section 558 of the Bankruptcy Code.  Section 558 of the Bankruptcy Code

provides:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. § 558.  Section 558 is not a setoff statute and does not speak to the priority of claims.

Section 558 merely preserves certain defenses for assertion by the bankruptcy estate.

37.   The Debtors cite In re Martinez, 2007 U.S. Dist. LEXIS 6163 (M.D. Pa. Jan. 29,

2007) as "holding that the bankruptcy court had discretion to restrict setoff solely to priority

claims where creditor also held a general unsecured claim against the debtor." Objections ¶ 18.

The Debtors read Martinez too broadly.   The court's discussion regarding setoff rights was

made in the context of determining the standard of review to apply to the bankruptcy court

decision.

38.   The district court vacated the decision of the bankruptcy court that sanctioned a

selective setoff, stating:

> The bankruptcy court's statement that it limited setoff to the IRS's priority claim based on "the facts of this case" is simply too general to afford any insight into the equitable considerations that guided its decision.

In re Martinez, at 11.  The case was remanded to the bankruptcy court for a more detailed explanation of its findings.

39.   The Debtors cite Brown & Cole Stores, LLC v. Assoc. Grocers, Inc. (In re Brown & Cole Stores, LLC), 375 B.R. 873, 879 (9th Cir. B.A.P. 2007) for the proposition that the right of setoff applies to 503(b)(9) claims such that a debtor may offset its prepetition claims against a creditor's administrative expense claims.[10]  In Brown, the Ninth Circuit Bankruptcy Appellate Panel reversed the bankruptcy court's decision that the debtor could not setoff unsecured matters against administrative expense claims.  The court remanded for additional fact finding because the record lacked sufficient information to make a determination regarding the equitable considerations underlying setoff, its application and the rights under the applicable contract.  The Court recognized that the creditor's alleged right to setoff was abstract, and additional facts needed to be developed.   The court stated:

> The contentions by B&C [debtor] that AGI [creditor] breached the pricing agreement and wrongfully terminated the rebate program are nothing more than contentions alluded to in the papers and in the arguments of counsel. In fact, no contested matter or adversary proceeding has been commenced against AGI to determine the parties' rights under the Master Supply Agreement, its pricing provisions or the rebate program. Thus, at present, there really is nothing for B&C to set off against the various AGI claims. If and when such claims are asserted in proper form and adjudicated by the bankruptcy court, then any and all defenses, setoffs, and counterclaims can be considered.

---

[10] But see In re Braniff Airways, Inc., 42 B.R. 443, 448 (Bankr. N.D. Tex. 1984)(debtor may not set off prepetition claims against creditor's postpetition administrative expenses because of absence of mutuality of parties- limited by requirements of section 553); In re Jarvis Kitchenware of D.C., Inc., 13 B.R. 230, 232 (Bankr. D.D.C. 1981)(trustee not entitled to offset security deposit against landlord's postpetition claim for use and occupancy when prepetition arrearages exceeded amount of deposit).

Id. at 880-81.

40.    The court's analysis in In re Brown & Cole Stores, LLC involved a textual review of section 553 of the Bankruptcy Code and simply acknowledged that goods delivered during the 20 days prior to the bankruptcy involve prepetition claims.  Id. at 879.   Therefore, the Court found that a prepetition claim for setoff based on Section 553 of the Bankruptcy Code asserted against a creditor claim under Section 503(b)(9) of the Bankruptcy Code could exist. However, the court did not discuss, much less determine, whether a debtor has a right to pick and chose how to apply a setoff when a creditor possess both an administrative expense and a non-priority unsecured claim.  Id.

41.    The Court must follow the priority scheme set forth by Congress.  The Court should find that any claim for setoff by the Debtors must first be applied against a creditor's general unsecured claim and cannot be applied against such creditor's 503(b)(9) administrative expense claim.

## B.        Section 553 Is Specific Regarding Setoff

42.    The Debtors fail to address Section 553 of the Bankruptcy Code anywhere in their brief as the basis for the relief requested, yet this is the section of the Bankruptcy Code titled "setoff."  Section 553 of the Bankruptcy Code provides:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…

11 U.S.C. § 553.  As with Section 558 of the Bankruptcy Code, Section 553 only preserves a right or defense but does not govern the priority of claims.  Section 507 of the Code governs priority.  See In re Lawson, 187 B.R. at 8-9.

43.    The Debtors contend that In re TSLC I, Inc., 332 B.R. 476 (Bankr. M.D. Fla. 2005), supports their position that they have the right to rely on Section 558 of the Bankruptcy Code to use their alleged pre-petition setoff rights against administrative expenses.  The court in TSLC I did acknowledge that Section 558 could be used (in the appropriate case) to permit a debtor to use its pre-petition set off defense against a creditor's administrative expense.  Id. at 478.  However, the Debtors fail to mention that on the facts of the TSLC I case, the court rejected the debtor's attempt to exercise setoff in a manner that would diminish the creditor's administrative expense.

44.    In TSLC I, the creditor had shipped goods to the debtor prepetition.  The court approved critical vendor procedures, which permitted the creditor to be paid 77.5% of its asserted claim, subject to disgorgement if the claim were allowed in a lesser amount.  Thereafter, the creditor shipped goods to the debtor on credit post-petition.  The debtor failed to pay the administrative expense, and the creditor sought to compel payment.  The creditor defended on the ground that the goods shipped to the debtor pre-petition were defective, and the debtor was entitled to assert set off under Section 558.  The court rejected the debtor's argument and allowed the administrative expense in full.  The court reasoned that the cases permitting set off of a debtor's pre-petition claim against a creditor's administrative expense were distinguishable because in those cases there was "no offsetting pre-petition balance due the creditor from the debtor."  Id.,  332 B.R. at 479.

45.    The court's reasoning in TSLC I demonstrates two points.  First, when a creditor has a pre-petition claim, the debtor's pre-petition set off rights should be applied first to that claim, and only against the creditor's administrative expense after the creditor's pre-petition claim is exhausted.  Accord, In re Lawson, 187 B.R. at 8-9 (citations omitted).  Second, TSLC I

demonstrates that the facts of the case matter.  This Court is not in a position to make an

abstract ruling of law, applicable to all Claimants, prior to the development of a factual record.

### Conclusion

Wherefore, Source prays that this Court enter an order: (a) denying the Debtors'

request to waive the requirement that the initial hearing on any response to these Objections

proceed as a status conference; (b) denying the Debtors' request for an advisory opinion and its

attempt to bifurcate indistinguishable legal and factual issues related to the alleged Receivables

and Administrative Expenses; and, to the extent the Court proceeds with a hearing on the merits

of the Objections, (c) overruling the Objections, (d) denying the Debtors' request to be

authorized to setoff the Receivables against the Administrative Expenses; and (e) granting such

other and further relief as the Court deems just and proper.


Dated:  November 4, 2009                    Respectfully submitted,



                                            /s/ Bradford F. Englander
                                            Bradford F. Englander, VSB# 36221
                                            Brian M. Nestor, VSB# 77133
                                            Whiteford, Taylor & Preston LLP
                                            3190 Fairview Park Drive, Suite 300
                                            Falls Church, Virginia 22042
                                            (703) 280-9081 (tel)
                                            (703) 280-9139 (fax)
                                            benglander@wtplaw.com


                                            Counsel for Alliance Entertainment, LLC, now
                                            known as Source Interlink Distribution, LLC, and
                                            Source Interlink Media, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response was mailed by overnight delivery and electronic mail, this 4th day of November, 2009, to the following:

Greg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Counsel for the Debtors
gregg.galardi@skadden.com
ian.fredericks@skadden.com

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Counsel for the Debtors
dfoley@mcguirewoods.com
dhayes@mcguirewoods.com

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
36th Floor New York, NY 10017
Counsel for the Creditors' Committee Case
rfeinstein@pszjlaw.com

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
333 West Wacker Drive
Chicago, IL 60606
Counsel for the Debtors
chris.dickerson@skadden.com

Lynn L. Tavenner, Esq.
Tavenner & Beran, PLC
20 North Eighth Street Second Floor Richmond, VA 23219
Counsel for the Creditors' Committee
ltavenner@tb-lawfirm.com

Robert B. Van Arsdale, Esq.
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov

and that the foregoing Response was also filed electronically via the Court's CM/ECF system on this date such that it would be served electronically on those parties entitled to receive such notice in this case.

/s/Bradford F. Englander
Bradford F. Englander

*17191*