Sharon Z. Weiss
Mark E. Carrillo
RICHARDSON & PATEL LLP
Murdock Plaza
10900 Wilshire Boulevard, Suite 500
Los Angeles, California 90024
Tel: (310) 208-1182
Fax: (310) 208-1154

*Counsel for Apex Digital, Inc.*

David M. Poitras
Caroline R. Djang
JEFFER, MANGELS, BUTLER &
MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Counsel for THQ, Inc.*

- and –

Michael St. Patrick Baxter
Dennis B. Auerbach
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

*Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In Re:<br><br>CIRCUIT CITY STORES, INC., et al.,<br><br>                              Debtors. | Case No. 08-35653 (KRH)<br><br>Chapter 11<br><br>Jointly Administered |

**JOINT RESPONSE OF THQ, INC. AND APEX DIGITAL, INC. TO DEBTORS' (I) FIFTY-FIRST OMNIBUS OBJECTION TO CERTAIN 503(B)(9) CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

THQ, Inc., a Delaware corporation, and Apex Digital, Inc., a California corporation ("Apex") hereby submit this Joint Response to the *Debtors' Fifty-First Omnibus Objection To Certain 503(b)(9) Claims* (the "Objection").[1]

## INTRODUCTION[2]

The Objection addresses an issue of first impression in the Fourth Circuit – namely, *whether a request for administrative expenses arising under § 503(b)(9)[3] may be partially disallowed under § 502(d)*? Since Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005 ("BAPCPA") only one Circuit Court - - the Second Circuit in *Ames*[4] - - has analyzed the application of a § 502(d) objection to administrative expenses arising under § 503(b). In that recent decision, the Second Circuit flatly rejected the reasoning of the Ninth Circuit Bankruptcy Appellate Panel in *MicroAge*[5], and held that § 502(d) is not a proper ground to object to an administrative expense. The majority of lower court decisions support the holding in *Ames*.[6]

---

[1] THQ and Apex join all other Responses to the Omnibus Objection (and substantively similar Omnibus Objections) to the extent that those Responses are not inconsistent with this Response.

[2] The Debtors confirmed on November 3, 2009 that the November 12, 2009 hearing will only address the legal issues relating to whether § 502(d) is applicable to administrative expenses arising under § 503(b)(9). All disputes relating to whether THQ or Apex received an avoidable transfer are expressly reserved.

[3] Unless otherwise noted, all statutory references are made to Title 11 of the U.S. Code.

[4] *ASM Capital, LP v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.),* 582 F.3d 422 (2nd Cir. 2009).

[5] *MicroAge, Inc. v, Viewsonic Corp. (In re MicroAge, Inc. ),* 291 B.R. 503 (BAP 9th Cir. 2002).

[6] *In re Renew Energy*, 2009 WL 3320420 at *4 (recognizing *Ames* is the majority position); see also *Southern Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742, 750-51 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Products, Inc.*, 394 B.R. 147, 161 (Bankr. E. D. Mich 2008).

This Court should follow the precedent established by the *Ames* Court and rule that § 502(d) is not a proper ground to object to <u>any</u> request for payment of administrative expenses arising under § 503(b), including requests arising under § 503(b)(9), which Congress specially earmarked for administrative expense status. Any other result would frustrate Congressional intent.

**BACKGROUND**

1. On November 10, 2008 (the "Petition Date"), the debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions in this Court for relief under chapter 11 of Title 11 of the United States Code.

2. THQ timely filed its § 503(b)(9) request for administrative expenses in these cases on December 12, 2008 (the "THQ Request"). The THQ Request was filed in the amount of $514,159.08 for goods (video games) received by Debtors within the 20 days prior to the Petition Date, and was designated as Claim No. 747. In the Objection, the Debtors allege that THQ, Inc. received approximately $222,453.00 in preferential transfers, and thus, seeks to reduce the THQ Request to $291,706.08.

3. Apex filed its timely Section 503(b)(9) request for administrative expenses in these cases on December 12, 2008 (the "Apex Request"). The Apex Request was filed in the amount of $1,490,630.40 for goods (televisions) received by the Debtors within the 20 days prior to the Petition Date, and was designated as Claim No. 732. In the Objection, the Debtors allege

2

that Apex received approximately $1,110,764.00 in preferential transfers and thereby seeks to reduce the Apex Request to $379,866.40.[7]

## ARGUMENT

### I. SECTION 503(b)(9) ADMINISTRATIVE EXPENSES ARE SPECIALLY TREATED.

Administrative expenses allowed pursuant to § 503(b) of the Bankruptcy Code are separate and distinct from other claims against a bankruptcy estate. Section 503(b)(9) provides for the allowance of administrative expenses for the value of goods sold in the ordinary course to a debtor during the period twenty (20) days prior to the petition date. Added to the Bankruptcy Code in 2005, § 503(b)(9) represents Congress' deliberate and focused expansion of the bankruptcy estate's administrative expenses. *In re TI Acquisition*, 410 B.R. at 746.

The Debtors' argument that the legislative history supports their Objection is misplaced. The Debtors rely wholly on the legislative history of the statute predating § 502(d), § 57(g) of the Bankruptcy Act. The Debtors argue that § 57(g) applied to post-petition claims and therefore, so should § 502(d) without specific Congressional intent stating otherwise. But the Debtors ignore the history behind § 503(b)(9). Congress, in creating § 503(b)(9), must have intended to protect these specific deliveries of goods by providing them with administrative expense priority. At least one bankruptcy court observed:

> The treatment of expenses in § 503(b)(9) appears to be an outgrowth of the policy that first appeared in 11 U.S.C. § 546(c), which preserved the right of reclamation to certain sellers of goods on credit. BAPCPA included both the addition of § 503(b)(9) and the amendment of § 546(c). The combination of these changes suggests that Congress intended to recognize a reclamation right

---

[7] THQ and Apex have assigned these rights to payment of administrative expenses, but retain the duty to defend their validity.

3

> for sellers that was no longer exclusively dependent upon state law. Alternatively, and at a minimum, these two changes to the Bankruptcy Code expanded certain aspects of state law reclamation. See *In re Dana Corp.*, 367 B.R. 409 (Bankr.S.D.N.Y.2007) (rejecting the creation of an independent federal right); Collier on Bankruptcy ¶ 546.04[2] (15th rev. ed.) (explaining that the amendment's deletion of the language "any statutory or common law" could serve no purpose if not to uncouple bankruptcy right of reclamation from state law). Prior to BAPCPA, § 546(c) provided for an administrative priority claim for reclaiming sellers who were denied a right of reclamation by the court. BAPCPA deleted that portion of § 546(c)(2) and added § 503(b)(9), thus according protection to sellers of goods on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of whether the technical requirements for reclamation were met. **While no legislative history exists, one can only surmise that these amendments reflect Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors.**

*In re TI Acquisition*, 410 B.R. at 745-46 (emphasis added). As such, these administrative claims which arise within 20 days of the petition date, are not of the same nature as prepetition general unsecured claims. Congress has elected to treat § 503(b)(9) claims exactly like other administrative claims of the estate arising under § 503(b). Significantly, Congress did not insert into § 503(b) and § 507(a)(2) any different treatment for § 503(b)(9) administrative expenses and § 503(b)(9) expenses are treated with the same priority as other § 503(b) expenses. As with all § 503(b) administrative expenses, § 502(d) cannot be used to attack these important, priority expenses of the estate.

The arguments asserted in the Debtors' Objection are almost entirely based on the Ninth Circuit Bankruptcy Appellate Panel's decision in *MicroAge*. This Court should follow the majority of cases and find that *MicroAge* is not persuasive, especially since it was decided before

4

the enactment of BAPCPA and the creation of § 503(b)(9). As a result, the Ninth Circuit BAP could not analyze Congressional intent to this situation. Indeed, the *MicroAge* Court noted, "[n]o changes of law or policy should be interpreted from changes of language in revision of a statue unless the intent to make a change is clearly expressed." *MicroAge*, 291 B.R. at 509. Since the *MicroAge* Court did not have the benefit of BAPCPA (and Congress' expressed changes to the Bankruptcy Code) when it rendered its decision, its logic is inapplicable to this case. Against this backdrop, and as noted above, the majority of recent cases, including the Second Circuit in *Ames*, have now rejected *MicroAge*'s rationale. *In re Ames*, 582 F.3d at 428-31; *In re TI Acquisition*, 410 B.R. at 749-51; *In re Plastech*, 394 B.R. at 161-64; *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.),* 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004); *Beasley Forest Products, Inc. v. Durango Georgia Paper Co. (In re Durango Ga. Paper Co.)*, 297 B.R. 326, 330-31 (Bankr. S.D. Ga. 2003); *In re Lids Corp.*, 260 B.R. 680, 683-84 (Bankr. D. Del. 2001); *Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141, 157-58 (Bankr. D. Del. 2000).

In fact, since the enactment of BAPCPA, no court has relied on *MicroAge* to deny an administrative expense claim under § 503(b). The only two cases that cite to *MicroAge* after BAPCPA defer the issue. *See In re Modern Metal Products Co.*, 2009 WL 1362632 (Bankr. N.D. Ill. 2009) (ruling it would exercise its discretion to delay payment of an otherwise allowed claim under § 503(b)(9) because it believed that the estate may be administratively insolvent and specifically deferred objection under § 502(d)); *In re Renew Energy LLC*, 2009 WL 3320420 at *5 ("until a preference has been found to be recoverable, the application of any limitation in § 502(d) would be premature").

5

## II. SECTION 502(D) DOES NOT APPLY TO ADMINISTRATIVE EXPENSES.

Section 502(d) provides that a court shall disallow a claim allowed under § 502(a)(1) or (2) of an entity that received an avoidable transfer. The weight of authority demonstrates that § 502(d) is <u>not</u> a proper ground to disallow an otherwise allowable administrative expense. See *In re Ames*, 582 F.3d at 428-32 (2nd Cir. 2009); *In re TI Acquisition,*, 410 B.R. at 749-51; *In re Plastech,* 394 B.R. at 161-64; *In re Durango Ga. Paper Co.*, 297 B.R. at 330-31; *In re Lids Corp.*, 260 B.R. at 683-84; *In re CM Holdings*, 264 B.R. 157-58.

### A. The Structure and Language of the Statutes Do Not Support Application of § 502(d) to § 503(b) Administrative Expenses.

In analyzing whether § 502(d) is a proper ground to object to a § 503(b)(9) claim, courts have primarily looked to the structure and language of § 502(d) and § 503(b) and determined that these statutes are mutually exclusive. Courts have reasoned that neither statute references the other and both statutes are mandatory. *In re Ames*, 582 F.3d at 429-31; see also *In re TI Acquisition*, 410 B.R. at 751 ("the mandatory disallowance language of § 502(d), 'the court shall disallow,' does not give the court authority to presume one mandatory provision trumps another") citing *In re Durango Ga. Paper Co.,* 297 B.R. at 330.

The Second Circuit recently determined in *Ames* that § 502(d) applied only to allowed claims arising under §§ 501 and 502, and "that the subsection's scope is limited to that process and does not extend to claims allowable under § 503." *In re Ames*, 582 F.3d at 430. The Court further reasoned that the terms of § 502(d) make no reference to § 503(b) administrative expenses, but only reference the allowance of claims under § 502(a) and (b). Moreover, § 502(d) is structured as an *exception* to the automatic allowance of claims filed pursuant to § 502(a) and

6

(b). This is significant because of the different procedural requirements for allowance of §§ 501 and 502 claims versus those for § 503(b) administrative expenses. On the one hand, § 501 claims are allowed without a hearing if timely filed with the court, unless a party in interest objects. On the other hand, allowance under § 503(b) requires a notice and hearing. While explaining § 502(d) to be a exception to the automatic allowance of proofs of claims under § 502(a) and (b), the Second Circuit in *Ames* reasoned that "[t]o construe § 502(d)'s disallowance as applicable to expenses allowable under § 503—a section with its own scope, purpose, and conditions—is to expand the scope of § 502(d)'s disallowance beyond its plain meaning." *Id*. quoting *In re Durango Ga. Paper Co.*, 297 B.R. at 330.

Whether the events giving rise to the administrative expenses are post- or pre-petition is also irrelevant to the application of § 502(d); what matters is whether the debt is classified and allowed as a claim or as administrative expenses against the estate. *Id.* citing *In re Lids Corp.*, 260 B.R. at 683-84, and *In re CM Holdings*, 264 B.R. at 158 n. 8. Of the nine different administrative expenses provided for under § 503(b), "three consist either entirely or partially of pre-petition obligations." *In re Plastech*, 394 B.R. at 163. Section 502 also explicitly brings certain post-petition claims within its scope as prepetition claims. See *In re Ames*, 582 F.3d at 430, citing § 502(e)(2), (f), (g), (h) and (i). So while § 502(d) applies to both pre- and post-petition claims, it *only* applies to those pre- and post-petition claims specifically governed by §§ 501 and 502. *In re TI Acquisition*, 410 B.R. at 750, citing *In re Plastech*, 394 B.R. at 161-62. The choice of Congress to apportion separate treatment of these pre-petition and post-petition liabilities and, moreover, to leave § 503(b) administrative expenses out of

7

§ 502(d)'s scope is indicative of the distinct and priority nature of § 503(b)(9) administrative expenses.

### B. Section 503(b)(9) Administrative Expenses Are Not Different From Other Administrative Expenses.

Contrary to what the Debtors' Objection argues, § 503(b)(9) administrative expenses are not a lesser protected form of administrative expense. Both the *TI Acquisition* and *Plastech* Courts determined that § 502(d) was equally inapplicable to a § 503(b)(9) administrative expense like any other § 503(b) administrative expense. These Courts found that Congress did not identify any difference between expenses arising under § 503(b), § 507(a) and § 503(b)(9) administrative expenses. *In re TI Acquisition,* 410 B.R. at 750. As with other § 503(b) expenses, the mere fact that § 503(b)(9) expenses are for pre-petition debts does not mean they should be viewed differently from other § 503(b) expenses. *Id*. The Court in *Plastech* stated, "[m]uch like § 503(b)(9), §§ 503(b)(3) and (4) represent instances where Congress has seen fit to define a certain class of pre-petition obligations. . .[and permitted them to be] allowed as administrative expenses under § 503(b) rather than subjected to the claims filing and allowance provisions of § 501 and § 502." *In re Plastech*, 394 B.R. at 163. While the Debtors argue that § 503(b)(9) expenses are a separate, less important class of pre-petition claims, Congress did not specify separate treatment or priority classification of such expenses in § 507(a)(2). *Id.* Furthermore, as with other § 503(b) expenses, "the language of § 502(d) does not imply or create a defense to a § 503(b)(9) claim." *In re TI Acquisition*, 410 B.R. at 750. Congress instead determined § 503(b)(9) expenses are allowable and payable with the same formal requirements as other § 503(b) administrative expenses. *In re Plastech*, 394 B.R. at 164.

8

Accordingly, § 503(b)(9) administrative expenses are equally immune from § 502(d)'s disallowance provision.

### C. The Policy Supporting Administrative Expenses Would Be Frustrated by § 502(d) Disallowance.

The policy behind allowing administrative expenses also dictates such expenses should not be subject to attack by § 502(d). There is nothing in the Bankruptcy Code that states otherwise. The purpose of providing higher priority to administrative expense requests over other debts of the estate is to encourage the supply of goods and services to benefit all the estate's creditors. *In re Ames,* 582 F.3d at 431. As noted above, this new amendment reflects Congress' intent to better protect ordinary course of business sellers of goods that are received by the debtor within 20 days of the petition date to gain priority payment. *In re TI Acquisition*, 410 B.R. at 746.

In *Ames,* the Second Circuit reasoned that if § 502(d) were permitted to disallow administrative expenses this "intent would be frustrated by allowing a debtor automatically to forestall or avoid payment of administrative expenses by alleging the vendor had been the recipient of a preferential transfer." *In re Ames,* 582 F.3d at 431. As noted in *TI Acquisition*, "[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor." *In re TI Acquisition*, 410 B.R. at 750, quoting *In re Lids Corp.* 260 B.R. at 683. The importance of the policy of promoting extension of credit to chapter 11 debtors thus further supports a narrow reading of § 502(d)'s scope and its inapplicability to administrative expenses.

9

The Debtors argue in the Objection that the Court should ignore the reasoning of this recent precedent and the intent of Congress expressed in the plain language of § 503(b)(9). The Debtors rely wholly on the fact that § 503(b)(9) administrative expenses arise from the delivery of goods prior to the Petition Date and seek to have the Court ignore Congress' explicit intent and direction to absorb these deliveries into § 503(b)'s other administrative expenses. The Debtors argue, in effect, that § 503(b)(9) expenses are not real administrative expenses and that § 502(d) should reach these "lesser" administrative expenses because the policy behind § 502(d) is stronger than that of § 503(b)(9). This logic conflicts with the specific language of § 503(b)(9) and the recent case law cited above reasoning to the contrary.

The Debtors further claim that even if § 502(d) is not a proper objection to claims under § 503(b)(9), the Court should nevertheless hold these administrative claims in abeyance until the preference actions are resolved. That argument is misplaced. As admitted by the Debtors, § 546(c) excepts reclamation claims from the preference avoidance powers in § 547. Objection, p. 34. Section 546(c)(2) (as newly revised) specifically contemplates a seller's assertion of rights under § 503(b)(9) as an alternative. Taken together, any reclamation claim, whether it arises under § 546(c)(1) or (2) is exempt from § 547. If so, then § 502(d) would not apply because the Debtors could never recover a preference under § 547.

The Debtors argue this result is inequitable. However, an administrative expense claim is generally less favorable than the return of the claimant's goods in a timely manner. This is because a claimant must wait to receive payment on an administrative claim and may not be paid in full. Moreover, the former § 546(c)(2) provided that a court could deny reclamation but only if it protected the seller by providing him with an administrative expense for the claim

10

arising out of the reclamation transaction. Consequently, there is no windfall since the claimant is in essence providing goods on credit to the Debtors without any ability to recover the goods it delivered just days before the petition date.

> The legislative history regarding former § 546(c)(2) supports this position:
>
> Subsection (b) [enacted as subsection (c)] specifies that <u>the trustee's rights and powers under the strong arm clause, the successor to creditors provision, the preference section, and the postpetition transaction section *are all subject to* any statutory or common-law right of a seller, in the ordinary course of business, of goods to the debtor to reclaim the goods</u> if the debtor received the goods on credit while insolvent. The seller must demand reclamation within ten days after receipt of the goods by the debtor. As under nonbankruptcy law, the right is subject to any superior rights of other creditors. The purpose of the provision is to recognize, in part, the validity of section 2-702 of the Uniform Commercial Code, which has generated much litigation, confusion, and divergent decisions in different circuits. <u>The right is subject, however, to the power of the court to deny reclamation and *protect the seller by granting him a priority as an administrative expense* for his claim arising out of the sale of the goods</u>.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 371-372, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6327-28. (emphasis added).

It would therefore be inequitable for the Court to delay or otherwise disallow payment to this special category of claimants, when these specifically protected claimants (Apex and THQ) are already supplying the Debtors with goods that were used post-petition (perhaps on an involuntary basis).

## **CONCLUSION**

Section 502(d) is not applicable and, therefore, cannot be invoked to disallow administrative expenses otherwise allowable under § 503(b), temporarily or otherwise. This applies equally to administrative expenses allowed pursuant to § 503(b)(9) because there is no

distinction in the Bankruptcy Code and the policy supporting the allowance of administrative expenses is equally applicable to expenses allowed pursuant to § 503(b)(9). Therefore, § 502(d) cannot operate to disallow the administrative expenses that Congress clearly intended to be provided with priority under § 507(a). Therefore, the THQ Request and the Apex Request should not be disallowed on a temporary basis as to do so would only give the Debtors leverage Congress clearly did not intend to provide.

Dated: November 4, 2009

        Sharon Z. Weiss
        Mark E. Carrillo
        RICHARDSON & PATEL LLP
        Murdock Plaza
        10900 Wilshire Boulevard, Suite 500
        Los Angeles, California 90024
        Tel: (310) 208-1182
        Fax: (310) 208-1154

*Counsel for Apex Digital, Inc.*

- and –

David M. Poitras
Caroline R. Djang
JEFFER, MANGELS, BUTLER & MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Counsel for THQ, Inc.*

- and -

/s/   Joshua D. McKarcher
Michael St. Patrick Baxter
Dennis B. Auerbach
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

*Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that, pursuant to this Court's **Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures**, a true and exact copy of the foregoing Joint Response of THQ, Inc. and Apex Digital, Inc. to Debtors' (I) Fifty-First Omnibus Objection To Certain 503(B)(9) Claims . . . was served on November 4, 2009 by electronic mail on the below listed parties and e-mail addresses and through the ECF system, which in turn will generate an electronic notice of filing to all parties registered to receive electronic notice from the Court.

      Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
E-mail: gregg.galardi@skadden.com;
Ian.Fredericks@skadden.com; proiect.circuitcity@skadden.com

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
E-mail: dhayes@mcguirewoods.com; dfoley@mcguirewoods.com;
circuitcityservice@mcquirewoods.com

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL 60606
E-mail: chris.dickerson@skadden.com

*Counsel for the Debtors*

14

        Robert B. Van Arsdale, Esq.
        Office of the U. S. Trustee
        701 East Broad Street, Suite 4304
        Richmond, VA 23219
        E-mail: Robert.B.Van.Arsdale@usdoj.gov

*Office of the United States Trustee*

        Brad R. Godshall, Esq.
        Pachulski Stang Ziehl & Jones, LLP
        10100 Santa Monica Blvd, 11th Floor
        Los Angeles, CA 90067-4100
        E-mail: bgodshall@pszjlaw.com

*Counsel to Official Committee of Unsecured Creditors*

Dated: November 4, 2009

        /s/   Joshua D. McKarcher
        Joshua D. McKarcher (VSB No. 77061)
        COVINGTON & BURLING LLP
        1201 Pennsylvania Avenue, N.W.
        Washington, DC  20004-2401
        (202) 662-5223 (phone)
        (202) 778-5223 (fax)
        jmckarcher@cov.com