Michael I. Goldberg, Esquire
Joanne Gelfand, Esquire
Stanley Salus, Esquire
Virginia Bar No. 00464
Mona M. Murphy, Esquire
Virginia Bar No. 21589
Akerman Senterfitt LLP
8100 Boone Boulevard, Suite 700
Vienna, Virginia  22182-2642
(703) 790-8750
*Counsel to Samsung Electronics America, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CIRCUIT CITY STORES, INC.,** | ) | **Case No. 08-35653 (KRH)** |
| ***et al.*** | ) | **(Chapter 11)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

**SAMSUNG ELECTRONICS AMERICA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEBTORS' (I) FIFTY-SECOND OMNIBUS OBJECTION TO CERTAIN 503(b)(9) CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"), by and through its undersigned counsel, submits its Memorandum of Law In Opposition To Debtors' (I) Fifty-Second Omnibus Objection To Certain 503(B)(9) Claims And (Ii) Motion For A Waiver Of The Requirement That The First Hearing On Any Response Proceed As A Status Conference.

{FT624626;2}

## INTRODUCTION

The only two courts considering whether to expand the scope of Section 502(d) to Section 503(b)(9) administrative expenses refused to do so.[1]  Likewise, the majority of the remaining courts, including two Courts of Appeals, refuse to apply Section 502(d) to administrative expenses.  These courts agree that the plain language of the statute, the procedural differences between the request and allowance of administrative expenses and general unsecured claims, and the mandatory language in each statute, demonstrate that Section 502(d) only applies to Section 501 pre-petition claims.  Policy reasons also favor limiting the scope of Section 502(d) as suppliers may refuse to do business with debtors immediately prior and during bankruptcy if they risk disallowance of their administrative expenses because they are vulnerable to a preference.

The Debtors belatedly filed their Objection to Samsung and other Section 503(b)(9) expenses notwithstanding their acknowledgement that these expenses must be determined before they could formulate a plan.  Fairness and due process mandate that the Court refuse to temporarily disallow Samsung's Section 502(b)(9) expenses in this abbreviated proceeding.  Otherwise, Samsung will be deprived of the right to object to the Plan and insist on full payment of its administrative expenses as a condition to confirmation, a fundamental right afforded Samsung and other similarly situated parties who supplied goods to the Debtors on the eve of bankruptcy.

---

[1]Capitalized terms are not defined in this Preliminary Statement and shall have the same meaning set forth *infra*. Also, citations are omitted from this section and are contained below in the Argument.

## BACKGROUND

A.    **The Bankruptcy Cases and Section 503(b)(9) Administrative Expense Procedures**.

On November 10, 2008 (the "Petition Date"), the Debtors[2] commenced this action by the filing of a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.  11 U.S.C. § 101 *et seq.* (the "Code").

The Debtors' first day motions included the Motion of Debtors for Order Establishing Bar Date For Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 ("Bar Date Motion") (D.N. 19).  Anticipating that various vendors would request administrative expenses pursuant to section 503(b)(9) of the Code ("Section 503[b][9]"), the Debtors sought approval of a Section 503(b)(9) bar date and special procedures for requesting these expenses.  Bar Date Motion at 4-5.

In their Bar Date Motion, the Debtors acknowledge that "determining the amount and validity of Section 503(b)(9) Claims is necessary *before* the Debtors can formulate a plan of reorganization."  Bar Date Motion at 12 (emphasis supplied).  The Debtors recognized that pursuant to Section 1129(a)(9)(A) of the Code "the Debtors . . . must pay these claims in full to confirm a bankruptcy plan."  *Id.*

---

[2] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), PRAHS, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

On November 12, 2008, the Court entered its order granting the Bar Date Motion, setting December 19, 2008 at 5:00 p.m as the bar date for requesting Section 503(b)(9) expenses and approving the Debtors' "Request Form" for these expenses.  Order Granting Motion (D.N. 107).

**B.**      **Samsung's Section 503(b)(9) Administrative Expenses and General Unsecured Claim**.

Prior to the Petition Date, Samsung had an ongoing business relationship with the debtor, Circuit City Stores, Inc. ("Circuit City"), pursuant to which Samsung sold goods to Circuit City.

Some of the goods Samsung sold to Circuit City prior to the Petition Date were sold  to Circuit City in the ordinary course of Circuit City's business and received by Circuit City within twenty days before the Petition Date.

On December 18, 2009, Samsung timely requested its Section 503(b)(9) administrative expenses against Circuit City in the amount of $19,262,466.96 pursuant to the procedures proposed by the Debtors and approved by the Court.

In addition, Samsung filed a $122,577,855.01 Million general unsecured claim against Circuit City.  Samsung believes it is Circuit City's largest unsecured creditor.

**C.**      **The Debtors' August 24, 2009 Filing of a Disclosure Statement and Plan**.

Notwithstanding that since the outset of the cases the Debtors knew that any objections to Section 503(b)(9) expenses needed to be resolved "before" the Debtors could formulate a plan, the Debtors nevertheless filed their Disclosure Statement With Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors-In-Possession and Its Official Committee of Creditors Holding General Unsecured Claims ("Disclosure Statement"), together with their attached liquidating plan ("Plan") on August 24, 2009.  *See* Disclosure Statement and Plan (D.N. 4614).  On September 24, 2009, the Debtors' Disclosure Statement, as amended, was approved.  The deadlines for voting to accept or reject the Plan and

file objections to the Plan are November 10 and 16, 2009, respectively.    The Debtors'

confirmation hearing is scheduled for November 23, 2009.

Significantly, the Plan does not provide for reserving monies for payment of disputed

administrative expenses like Samsung's.[3]

**D.      The Debtors' Belated Objection to Samsung's Section 503(b)(9) Administrative Expense.**

The Debtors delayed filing their objections to various Section 503(b)(9) administrative

expenses, including Samsung's, until October 13, 2009, after filing a Plan and almost one year

after Samsung filed its request for Section 503(b)(9) administrative expenses.  *See* Debtors'

(i) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (ii) Motion for a Waiver of

the Requirement that the First Hearing on any Response Proceed as a Status Conference (the

"Objection") (D.N. 5217).   The basis for the Objection is Samsung's alleged receipt of a

preferential transfer in the amount of $51,466,693 (the "Alleged Preference"), which transfer is

purportedly subject to set-off against Samsung's Section 503(b)(9) administrative expenses

pursuant to section 502(d) of the Code ("Section 502(d)").   Samsung strenuously denies that it

received the Alleged Preference and objects to the application of Section 502(d) to its Section

503(b)(9) administrative expenses.

**E.      Samsung's Discovery Concerning the Alleged Preference**

Shortly after service of the Objection, Samsung served limited discovery on the Debtors

seeking basic information concerning the showing necessary for the Debtors to establish their

*prima facie* case for a preference against Samsung, including the date of the alleged preferential

---

[3] Samsung anticipates objecting to the Debtors Plan on the grounds, *inter alia*, that the Plan fails to provide for full payment of all administrative expenses on the effective date and reserve for disputed administrative expenses. Furthermore, it appears that the Plan was not proposed in good faith as the Debtors are knowingly attempting to railroad the Plan through confirmation prior to resolving their objections to administrative expenses in a veiled effort to deprive the administrative expense holders of their right to full payment at confirmation and other attendant rights.  *See* 11 U.S.C. §§ 1129(a)(3), (a)(9) .

transfers, a description of the alleged antecedent debts and a copy of the new value analysis referenced by the Debtors in their Objection.  Rather than provide Samsung with this essential information that the Debtors supposedly assembled and reviewed prior to making the Objection, the Debtors objected to the discovery and the shortened time for responses, contending the discovery is unnecessary for the Court to rule on the Objection.  *See* Debtors' Objection To Samsung's Electronics America Inc.'s (I) Motion For A Shortened Response Time To Interrogatories and Request For Production Of Documents; and (II) Motion For An Expedited Hearing  ("Discovery Objection") (D.N. 5407).[4]

Instead, the Debtors produced a useless spreadsheet (the "Spreadsheet"), supposedly evidencing the Alleged Preference.  The Spreadsheet fails to identify the most basic elements of the Alleged Preference including the dates of the invoice that are allegedly linked to the avoidable transfers.  Accordingly, it is impossible to determine if the transfers were even made on account of an antecedent debt.  Moreover, the Spreadsheet does not include any "new value" analysis even though the Debtors contend they relied upon this analysis in formulating their Objection.

---

[4] On November 3, 2009, hearings were held on Samsung's motions.  At the hearings, the Debtors represented that they would not seek temporary disallowance of Samsung's administrative expenses if Samsung filed a response to the objection.  All of Samsung's objections were reserved for the hearing on the Objection scheduled for November 12, 2009.

**ARGUMENT**

**I.     SECTION     502(d)     IS     INAPPLICABLE     TO     SECTION     503(B)(9) ADMINISTRATIVE EXPENSES.**

The unambiguous language of Section 502(d) and public policy considerations demonstrate that Section 502(d) is inapplicable to Section 503(b)(9) reclamation administrative expenses.    Notably, the only two courts to consider the narrow issue both concluded that Section 503(b)(9) is *not* subject to Section 502(d).    *In re Plastech Eng'red Prod., Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008); *Southern Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742 (Bankr. N.D. Ga. 2009).    Likewise, the only Circuit Court of Appeals to consider the analogous issue of whether Section 503(b) reclamation administrative expenses[5] are subject to Section 502(d), held that the "plain language" of Section 502(d) limits its scope to pre-petition claims.    *ASM Capital LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 430 (2d Cir. 2009).    Finally, the majority of the remaining courts considering the broader issue of whether Section 502(d) applies to 503(b) administrative expenses, refuse to expand its grasp to these expenses afforded special treatment under the Code. *In re USA Labs, Inc.,* No. 04-41587-BKC-RAM, 2006 Bankr. Lexis 2394 (Bankr. S.D. Fla. April 13, 2006) (Section 503[b] administrative expenses are not subject to Section 502[d]); *Roberds, Inc. v. Broyhill Furniture (In re Roberds Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004) (same); *In re Durango Georgia Paper Co.*, 297 B.R. 326 (Bankr. S.D. Ga. 2003) (same); *In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001) (same); *Camelot Music, Inc. v. MHW Adver. & Pub. Relations, Inc. (In re CM Holdings, Inc.),* 264 B.R. 141, 157 (Bankr. D. Del., 2000 (same); *Rand Energy Co. v. Del Mar Drilling Co., Inc. (In re Rand Energy Co*.), 256 B.R. 712 (Bankr.

---

[5] Section 503(b)(9), which specifically provides for reclamation administrative expenses, was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).    In cases commenced prior to the passage of BAPCPA, like *In re Ames Dep't Stores, Inc*., the court could grant a seller a reclamation administrative expense claim under Section 503(b).    11 U.S.C. § 546 (1998).

N.D. Tex. 2000) (same).  *See also In re Phoenix Rest. Group, Inc.*, 2004 WL 3113719 at *20

(Bankr. M.D. Tenn. 2004) (Resolution of administrative expense does not preclude preference

claim because "[s]ection 502[d] does not cross-reference or obviously affect the allowance or

payment of administrative expenses under § 503"); *Durham v. SMI Indus. Corp.,* 882 F.2d 881,

883 (4th Cir. 1989) (Section 502[d] only applies to claims for which a proof has been filed and

does not extend to a set-off ).

A.      **The Introductory Language of Section 502(d) Illustrates That Its Application
        Is Limited To Claims For Which Proofs Are Filed Under
        Section 501.**

Statutory interpretation begins with an examination of the plain language of the statute.

*U.S. v. Sheek,* 990 F.2d 150, 152 (4th Cir. 1993) (citations omitted).  Statutory provisions should

not be examined in isolation as the meaning of certain words become evident only when placed

in context.  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120,

132 (2000) (citations omitted).  A fundamental canon of statutory construction is that the words

of the statute should be read in their context and with a view to their placement in the overall

statutory scheme. *Id.* at 133 (citations omitted).  A statute must be interpreted as a symmetrical

and coherent regulatory scheme, fitting, if possible, all the parts into a "harmonious whole." *Id.*

(citations omitted).  The courts must "give effect", if possible, to every clause rather than

emasculating an entire section of the statute.  *U.S. v. Wildes*, 120 F.3d 468 (4th Cir. 1997) citing

*U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955).

The United States Supreme Court counsels that a court should read a statute according to

its literal terms unless such a reading would produce a result at odds with the Congressional

intent.  *United States v. Locke*, 471 U.S. 84, 96 (1985); *United States v. Ron Pair Enters., Inc.*,

489 U.S. 235, 242 (1989);  *Thompson v. New Mexico Student Loan Gurantee Corp. (In re

Thompson)*, 329 B.R. 145, 171 (Bankr. E.D. Va. 2005) (Courts must presume that a "legislature

says in a statute what it means and means in a statute what it says there" and "[w]hen a statue is plain on its face, the Court's inquiry is complete").

The starting point for analysis is the plain language of Section 502(d) and the statutes referenced therein.  Section 502(d) provides as follows:

> **Notwithstanding subsections (a) and (b) of this section**, the court shall disallow any claim of any entity from which property is recoverable under Section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under Section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphasis supplied).

> 1.   **The Introductory Language to Section 502(d) Making Its Application An Exception To The Automatic Allowance of Pre-Petition Claims Filed Under Section 501, Demonstrates That Its Application Is Limited To Pre-Petition Claims**

The introductory language in Section 502(d) making its application an exception to Sections 502(a) and (b) is critical.  Because Sections 502(a) and (b) and Section 501 are inextricably intertwined, the latter section should first be examined.

Significantly, Section 501 titled "Filing of proofs of claims or interests," governs the filing of proofs of claims by a "creditor" holding pre-petition claims or deemed pre-petition claims.  11 U.S.C. § 501.[6]  Section 502 titled "Allowance of claims or interests," governs the allowance of Section 501 pre-petition claims providing that such claims are automatically deemed allowed unless an interested party objects.  11 U.S.C. § 502(a).  Section 502(b) governs

---

[6] The term "creditor" is defined under the Code as the holder of a  pre-petition claim or a postpetition claim treated as a pre-petition claim under Sections 348(d) or Sections 501(d) and 502(f), (g), (h), or (i) of the Code.  11 U.S.C. §§ 101(10), 501(d), 502(e)-(i).

the objection procedure providing that the court, after notice and hearing, shall determine the amount of the pre-petition claim.  11 U.S.C. § 502(b) [7]

The Second Circuit, in reversing the lower court's finding that administrative expenses are subject to Section 502(d), reasoned that the introductory language "[n]otwithstanding subsections (a) and (b) of this section," suggests that its scope is limited to the process of automatic allowance of pre-petition claims filed under Section 501 and governed by Section 502 and that the statute does not extend to Section 503 administrative expenses.  *In re Ames Dep't Stores, Inc.,*, 582 F.3d at 430; *In re Durango Georgia Paper Co.*, 297 B.R. at 330 (Section 503 has its own scope, purpose and conditions separate from Section 502).  This suggestion is reinforced by the absence from Section 502(d) of any references to Section 503.  *Id.*  This reasoning was extended to preclude application of Section 502(d) to newly enacted Section 503(b)(9).  *See In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 161; *In re TI Acquisition, LLC,* 410 B.R. at 750.  Certainly, if Section 502(d) applied to Section 503(b)(9) expenses the introductory language would be "wholly unnecessary."  *Id.*

The introductory language of Section 502(d) demonstrates that it is inapplicable to Samsung's Section 503(b)(9) administrative expenses.  The statute's inclusion of language referring to the treatment of pre-petition claims, without reference to Section 503(b) administrative expenses, shows that its application is limited to claims filed under Section 501.  To hold otherwise renders the qualifying language meaningless.

---

[7] Section 502 (a) and (b) provide:

(a) A claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.  (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . .

2.      **The Failure to Include Section 503(b)(9) Administrative Expenses In The Introductory Language Demonstrates that Section 502(d) Only Applies To Those Postpetition Expenses** *Deemed* **To Arise Pre-Petition Pursuant to Sections 502 (e)-(i).**

Moreover, Sections 502(e) through (i) explicitly provide that certain "claim[s]"[8] arising after the commencement of the case shall be treated as pre-petition claims.  11 U.S.C. § 502(e)-(i).  The inclusion of the introductory language demonstrates that it applies only to pre-petition claims and those postpetition claims deemed to arise pre-petition under Section 502 and not to Section 503(b)(9) administrative expenses.  *In re Plastech Eng'red, Prod., Inc.*, 349 B.R. at 161. *See In re Ames Dep't Stores, Inc.,* 582 F.3d at 430 (This "express invocation" demonstrates that Section 502(d) did not apply to postpetition claims before they were brought within the statute's reach pursuant to Sections 502[e]-[i]).

The court in *In re Lids Corp.* applied the statutory interpretation doctrine of *expressio unius est exclusio alterius* (translated as "to express or include one thing is to exclude the other") in construing Section 502(d), concluding that the express inclusion in Section 502 of certain claims arising postpetition suggests that the statute was not intended to apply to all postpetition expenses.  *In re Lids Corp.*, 260 B.R. at 683.  *See In re CM Holdings, Inc.,* 264 B.R. at 158 (The court applied sister principle of "*affirmio unius exclusio est alterius"* [translated as "the affirmance of one thing is the exclusion of the other"], in concluding that the reference to and treatment of certain postpetition claims "within the purview" of Section 502(d) suggests by negative implication that congress did *not* intend to subject administrative expenses to the provisos of Section 502[d].)

---

[8] Samsung utilizes the term " claim(s)" in this subsection as Sections 502(e) through (i) of the Code refer to a "claim" arising after the filing of the case.   The meaning of the term "claim" in Section  502(d) is explored *infra* at 15.

Congress specifically provided for the treatment of certain "claims" arising postpetition in Section 502 without including any reference to Section 503(b).  The inclusion of some postpetition expenses within the reach of Section 502 demonstrates that Congress never intended to make Samsung's Section 503(b)(9) expenses subject to the rigors of  Section 502(d).

**B.**      **The Procedural Differences Between The Filing And Allowance of Pre-Petition Claims under Sections 501 and 502 and Administrative Expenses Under Section 503 Support Limiting Section 502(d)'s Application to Pre-Petition  Claims**

In contrast to the simple procedures set forth in Section 502 automatically allowing claims filed without objection under Section 501, the filing and allowance of administrative expenses are governed by the more onerous procedures set forth in Section 503 titled "Allowance of administrative expenses."  11 U.S.C. § 503.[9]  Pursuant to Section 503, a request for allowance of an administrative expense must be filed with the court and allowance is determined by the court only *after* notice and hearing.  11 U.S.C. §§ 503(a), (b).  This procedure differs greatly from those governing the filing of pre-petition claims set forth in Sections 501 and 502.  Markedly, Section 503 does not provide for the routine allowance of filed claims like Section 502, but requires notice and hearing for allowance regardless of whether an objection is filed.  *See In re Ames Dep't Stores, Inc.,* 582 F.3d at 429; *In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 161.  Furthermore, requests for administrative expenses are filed under Section 503(a) and not by proof of claim under 501(a).  *See In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 161 (Section 503 provides the "sole method" for filing a request for an administrative expense.) Indeed, the proof of claim form recognizes this distinction providing that the form should not be used for administrative expenses which may be requested under Section 503.  *See* Official Form

---

[9] The title of a statute are tools available for  resolution of doubt about a statute's meaning.  *Almendarez-Torres v. U.S.,* 523 U.S. 224, 234 (1998) (citations omitted)..

10.   *Id.* at 161 n.4.[10]   Finally, the provisions concerning the filing and allowance of administrative expenses are "self-contained" in Section 503 and do not depend upon a complementary statute like Sections 501 and 502.  *Id.* at 161.

The Debtors implicitly acknowledged these distinctions when crafting the "Request Form" for Section 503(b)(9) expenses.  Notably, the Debtors elected to file the Bar Date Motion addressing the unique characteristics of these administrative expenses as a first day motion knowing these unique claims must be quantified before the Debtors could formulate a confirmable plan.

Section 503 is the only provision of the Code governing the request and allowance of Samsung's administrative expenses.  Because the Debtors assert no basis for disallowance of these expenses under this section, Samsung's expenses should be allowed.

### C.    The Mandatory Language Allowing Section 503(b)(9) Administrative Expenses Precludes Disallowing These Expenses Under Section 502(d).

Notably, both allowance of an administrative expense under Section 503 and disallowance of a claim under Section 502(d) are provided in mandatory language.  *See* 11 U.S.C. §§ 502(d), 503(b).  Section 503 provides that administrative expenses "*shall* be allowed" including for the value of goods sold to the debtor in the ordinary course of such debtor's business and received by the debtor within 20 days before commencement of the bankruptcy case.  11 U.S.C. § 503(b)(9) (emphasis supplied).  Section 502(d) provides that the court "*shall* disallow" certain claims.  11 U.S.C. § 502(d) (emphasis supplied).

---

[10] The Debtors' contention that Form 10 should be used for Section 503(b)(9) administrative expense requests is undermined by its Bar Date Motion seeking approval of a special "Request Form" specific to Section 503(b).  The Request Form eventually designed and utilized by the Debtors for Section 503(b)(9) differs greatly from Form 10, requiring various extraneous information such as the date and method of shipment and delivery of the goods which are the subject of the request, the place of delivery, and the name of the carrier of the goods.  *See generally* Bar Date Motion.  The Debtors' reliance on *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763 (Bankr. S.D.N.Y. May 30, 2007), is misplaced as the bar date notice in that matter specifically provided that it included both pre-petition and Section 503(b)(9) administrative expenses.  *Id.* at * 2.

The mandatory terms of both sections creates a conflict and there is no basis for finding

that Section 502(d) changes the mandatory allowance of Section 503(b)(9).  *In re Ames Dep't*

*Stores, Inc.,* 582 F.3d at 430-31; *In re Durango Georgia Paper, Co.,* 297 B.R. at 331.

Importantly, neither section contains a qualifying clause excepting the other from its application.

*Id.*  For instance, although Section 502(d) provides for overriding its subsections (a) and (b) of

502, it does not provide for overriding Section 503's mandatory allowance.  Nor does Section

503 make its mandatory allowance subject to Section 502(d)'s mandatory disallowance.  *Id.*  Yet,

absent a qualifying clause, one mandatory provision cannot presumably "trump" another.  *Id.*

*See U.S. v. Menasche*, 348 U.S. at 538-39 (Meaning should be given to all words of a statute

rather than emasculating an entire section); *Marsano v. Laird*, 412 F.2d 65, 70 (2d Cir. 1969) (an

interpretation which emasculates a provision is not preferred).

Section 502(d) cannot override the mandatory provisions in Section 503(b)(9) providing

for allowance of Samsung's administrative expenses.  The absence of a qualifying clause in

either statute overriding the other statute's mandatory provisions precludes this interpretation

which would render meaningless a compulsory provision of the Code.

### D.    Policy Reasons Favor Limiting Section 502(d)'s Application to Pre-Petition Claims.

Various policy reasons support the limited application of Section 502(d).  Seemingly, by

affording suppliers special treatment under Section 503(b)(9), Congress intended to encourage

suppliers to continue doing business with their troubled customers prior to bankruptcy.[11]  At the

outset, subjecting Section 503(b)(9) expenses to set-off under Section 502(d) could have

devastating effects on a debtor.  Undoubtedly, suppliers vulnerable to a preference may refuse to

extend pre-petition credit to debtors during the weeks proceeding the bankruptcy fearing that

---

[11] The legislative history for Section 503(b)(9) is of no consequence.

their Section 503(b)(9) expenses will be subject to set-off under Section 502(d).  Furthermore, trade vendors susceptible to an avoidance action could easily decide to refuse to extend any postpetition credit to a chapter 11 debtor, fearing that their administrative expenses would be subject to set-off under Section 502(d).  *In re Lids, Corp.,* 260 B.R. at 683-84.  *Id.  See generally In re CM Holdings, Inc.*, 264 B.R. at 159 (Administrative expenses stemming from the furnishing of postpetition services facilitates a debtor's "survival" in chapter 11).

Making Section 503(b)(9) expenses subject to section 502(d) also undermines the policy of preventing a debtor from acquiring goods at a time when it knows that bankruptcy is imminent and the debtor cannot pay for the goods.  *See generally* Judith G. Miller and Jay Welford, " Section 503(b)(9) *Claimants – The New Constituents, A/K/A The 500 Pound Gorilla, At The Table,*" 5 DePaul Bus. & Comm. L.J. 487 (2007).

Nor does the broad interpretation of Section 502(d) advocated by the Debtors advance the goal of treating equally situated claimants similarly.  Applying Section 502(d) to Section 503(b)(9) expenses prejudices those suppliers who provided goods to the debtor on the eve of filing when the debtor was probably unable to obtain credit from third parties.  These suppliers are unique and are not equally situated with the general unsecured creditors as these suppliers did business with an insolvent debtor during the critical days immediately prior to the bankruptcy filing prompting Congress to elevate their status to administrative priority.  Making Section 503(b)(9) subject to Section 502(d) improperly alters the priorities intentionally created through legislation.

Samsung sold goods to Circuit City in the ordinary course of Circuit City's business, during the twenty days prior to the Petition Date.  Permitting Circuit City to set-off against these expenses those amounts it claims under a preference theory would deprive Samsung of the very

protections afforded suppliers selling goods to debtors during the turbulent weeks prior to bankruptcy. This unconscionable result will assuredly dissuade suppliers from extending credit to troubled companies in the future, both prior to and during bankruptcy, threatening the overall reorganization process.

## II.   ADMINISTRATIVE   EXPENSES   ARE   NOT   "CLAIMS"   UNDER SECTION 502(d).

The Debtors deliberately omit the introductory language from their quotation and analysis of Section 502(d), ignoring the abundant authorities interpreting this language as limiting Section 502(d) to pre-petition claims. Debtors' brief at 5. Instead, the Debtors devote a large portion of their brief attempting to argue that administrative expenses are tantamount to "claims" and that Section 502(d) is applicable to them, extensively relying on the decision in *In re MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.),* 291 B.R. 503 (B.A.P. 9th Cir. 2002). Debtors' brief at 5-14.[12]

The Second Circuit rejected the reasoning of *In re MicroAge, Inc.,* concluding that the definition of "claim" does not by itself resolve the scope of Section 502(d). *In re Ames Dep't Stores, Inc.,* 582 F.3d at 428-31. The Fourth Circuit likewise rejected broadly defining the term "claim". *See Durham v. SMI Indus. Corp.,* 882 F.2d 881, 883 (4th Cir. 1989).[13]

The Code defines "claim" as any "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The Debtors point to

---

[12]However, in doing so the Debtors completely ignore the line of cases limiting the scope of Section 502(d) to pre-petition claims because of the procedural differences between the filing and allowance of administrative expenses and pre-petition claims. Nor, do the Debtors address the trumping of the mandatory allowance language of Section 503(b) by expanding Section 502(d) to administrative expenses.

[13] The issue in *Durham* arose in connection with an analysis concerning whether a set-off is a claim under Section 502(d). The court concluded that a "claim" under Section 502(d) "includes only one for which a proof has been filed." *Id.*

the language in Section 1123(a) referring to "claims of a kind specified in Section 507(a)(2)" and Sections 507(a)(2)'s reference to "administrative expenses" as evidence that administrative expenses are "claims" under the Code.  Debtors' brief at 6-7.  The *In re MicroAge, Inc.* court reasoned that  Sections 346(e), 348(d) and 365(n)(1)(B)(i) of the Code refer to claims allowed under Section 503, demonstrating that Congress intended to include administrative expenses as a "claim" subject to Section 502(d).[14]  *In re MicroAge, Inc.,* 291 B.R. at 508.  Similarly, the court found that the exclusion of "administrative claims" from some sections of the Code, but not from Section 502(d), suggests that Congress did not mean to exclude "administrative claims" from the application of Section 502(d).  *Id.  But see In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 161-62 (The analysis in *MicroAge* may have some appeal if Section 502(d) is read in "isolation without regard to § 501" and the other provisions of Sections 502 and 503).

However, many Code sections distinguish between "claims" and "administrative expenses" and "it is just as easy to point to other examples where Congress used 'claim' and 'expense' in a way that suggests a distinction."  *In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 161-162.  For instance, Section 507(a) refers to both "expenses and claims" and establishes a separate priority for "administrative expenses" and "unsecured claims".  11 U.S.C. § 507(a).  The definition does not address administrative expenses under Section 503.  *Id.*  As discussed above, Section 501 governs the filing of claims by a "creditor" and Section 502 governs their allowance.  As the definition of "creditor" includes only a holder of a pre-petition claim or a "claim" treated as a pre-petition claim notwithstanding it arose postpetition, the term "claim" must be limited to

---

[14] The Bankruptcy Court for the District of Delaware concluded the opposite interpreting Section 348(d) as expressly excepting administrative expense claims from its scope, further supporting the view that administrative expenses are entitled to distinct treatment from pre-petition claims or claims deemed to arise pre-petition.  *In re CM Holdings, Inc.*, 264 B.R. at 158.

pre-petition claims filed by creditors under Section 501.   11 U.S.C. § 101(10)   (defining

creditor).

The reasoning that administrative expenses are "unique creatures" in bankruptcy and

should not be considered claims under Section 502(d) is exemplified by Section 501(d).   *In re*

*CM Holdings, Inc.,* 264 B.R. at 158-59.   Section 501(d) provides that "[a] claim of a kind

specified in section 502(e), 502(f), 502(g), 502(h), or 502(i) of this title" may be filed under

Section 501(a), (b) or (c), as if such claim had arisen pre-petition.   11 U.S.C. § 501(d).   The

"claim[s]" specified in section 502(e)-(i) are claims arising postpetition, yet the Code treats them

as pre-petition claims under Section 501.   11 U.S.C. §§ 501, 502.   Section 501(d)'s explicit

references to postpetition claims, other than administrative expense claims, including those

found among the exceptions listed in Section 502(d), again demonstrates that administrative

expense claims are accorded special and distinct treatment and are not within the purview of

§ 502(d) .   *In re CM Holdings, Inc.,* 264 B.R. at 159.

The court in *In re Durango Georgia Paper Co.,* lists several Code provision that "sweep"

"'administrative expenses' within the 'claims label,'" concluding that the terms are not exclusive.

*In re Durango Georgia Paper Co.,* 297 B.R. at 330.   However, the court refused to "override the

more meaningful and specific utilization of two distinct terms-'expense' and 'claim' –within the

subchapter where both sections 502 and 503 are located," noting that the use of these distinct

terms in the titles to Section 503 and 502, respectively, indicate the limited scope of Section 502.

*Id.*

A harmonious interpretation of the statute requires a more in depth examination of the

plain meaning of the statute by moving beyond the "claim" label and exploring:   *i)* the meaning

and affect of  the introductory language to Section 502(d), *ii)* the procedural differences inherent

in seeking allowance of pre-petition claims under Sections 501 and 502 contrasted to postpetition claims under Section 503; and *iii)* the potential conflict between the mandatory provisions included in both Sections 502(d) and 503.  An examination of these germane issues demonstrate that the harmonious interpretation of the statute limits the scope of Section 502(d) to claims governed by Sections 501 and 502.

Samsung's administrative expenses requested and allowable under Section 503(b)(9), even if labeled a "claim," are entitled to special and distinct treatment from "claims" filed and allowed under Sections 501 and 502.

## III.  THE LEGISLATIVE HISTORY OF SECTION 502(d) AND PRE-CODE PRACTICE PROVIDE NO BASIS FOR MAKING ADMINISTRATIVE EXPENSES SUBJECT TO SECTION 502(d).

Rather than examining the plain meaning of Section 502(d) beyond its usage of the term "claim", the Debtors resort to a self-serving analysis of the statute's meager legislative history. Debtors' brief at 15-18.  Legislative history becomes relevant only if the plain language of the statute is ambiguous or the interpretation leads to an absurd result.  *U.S. v. Sheek,* 990 F.2d 150, 152-153 (4th Cir. 1993).  If the language is clear, the inquiry ends and the courts neither resort to examining legislative history nor applying the traditional rules of statutory construction. *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 653 (4th Cir. 1996).  Indeed, the Debtors assert that the "plain language" of the statute supports their interpretation.  Debtors' brief at 13.   Yet, the Debtors spend considerable time examining the legislative history of Section 502(d) notwithstanding that the statute is unambiguous and the result urged by Samsung is reasonable.

The legislative history relied upon by the Debtors states only that Section 502(d) was "derived from present law" requiring "disallowance of a claim of a transferee of a voidable transfer in toto" if the transferee has not satisfied the claim.  S. Rep. No. 95-989, at 65 (1978).

H.R. Rep. No. 95-595, at 354.  The term "derived" is defined as "received from a specified source" and contrary to the Debtors assertions, the term does not indicate that Section 502(d)'s application should expand to administrative expenses.  *Blacks Law Dictionary,* 399 (5th Ed.).  Conspicuously, neither report discusses the application of Section 502(d) to administrative expenses or references Section 503.  *See In re Ames Dep't Stores, Inc.,* 582 F.3d at 431 n.6.  The Congressional reports are at most "inconclusive".  *Id.*

The Debtors also urge the court to apply Section 502(d) in the same manner as its "precursor" statute, Section 57g, was applied under the now repealed Bankruptcy Act.  Debtor's brief at 15-18.  While pre-Code practice informs our understanding of the language of the Code, it cannot overcome the Code's language.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A,* 530 U.S. 1, 10 (2000).  Justice Scalia cautions that pre-Code language is a tool of construction, not an extra-textual supplement, and should be relied upon only when, ultimately, the meaning of a provision is not plain.  *Id.  See Ron Pair Enters., Inc.,* 489 U.S. at 243-244 (citations omitted) (In those "rare cases" where the plain meaning of the statute is inconclusive and the literal application will produce a result demonstrably at odds with the intentions of the drafters should pre-Code practice be examined for interpretive assistance).  When a natural meaning of a Code provision can be arrived by itself and by its context, the burden to persuade the court to adopt a different reading is "exceptionally heavy".  *Hartford Underwriters Ins. Co.,* 530 U.S. at 9 (citations omitted).

Pre-Code practice is irrelevant to the issue at bar as the plain meaning of the statute is conclusive and does not produce a result demonstrably at odds with the intentions of the drafters.  In any event, pre-Code decisions provide no basis for finding administrative expenses are subject to Section 502(d).

Initially, the Debtors fail to appreciate that the language of Section 57g differed substantially from Section 502(d) arguably bringing administrative expenses within its clutches.

Section 57g provides as follows:

> The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

52 Stat. 840 (1937-1938) (hereafter "the Act") at § 57g.

Importantly, Section 57g made the claims of "creditors" subject to set-off for preference liability. Under the Act, the term "creditor" is not limited to holders of pre-petition claims or deemed pre-petition claims. The Act at § 1(11). In contrast, the term "creditor" under the Code is limited to an entity holding a claim arising pre-petition or deemed to arise pre-petition and does not include claims arising postpetition. 11 U.S.C. § 101(10). Thus, the rationale is clear for interpreting Section 57g to apply to creditors holding administrative claims while limiting Section 502(d)'s application to prepetition claims.

Furthermore, as recognized by the Supreme Court in *Katchen v. Landy*, 382 U.S. 323 (1966), the "exact reach of Section 57g is not entirely settled." *Id.* at 330 n5 The only Court of Appeals to address the breadth of Section 57g, *Weber v. Mickelson (In re Colonial Serv., Co.),* 480 F.2d 747 (8th Cir 1973), left for later determination whether the claimant was entitled to an allowed administrative expense or unsecured claim, finding that the claim could not be allowed until the voided preference was surrendered. *Id.* at 749. The court never squarely addressed whether section 57g applied to administrative expenses other than by a passing citation to the inapposite decision in *Irving Trust Co. v. Frimitt*, 1 F. Supp. 16, 17 (S.D.N.Y. 1932). *In re Colonial Serv., Co.,* 480 F.2d at 749. However, *Irving Trust Co.,* is silent on the issue for which

it is cited,  whether the priority claims of creditor's are subject to disallowance pending surrender of a preference.  *Irving Trust Co.,*  1 F. Supp at 16.

Neither the Act nor cases decided thereunder provide support for expanding Section 502(d) to administrative expenses.  Indeed, *In re Colonial Serv. Co.,* is "weak" authority for applying Section 502(d) to administrative expenses.  *In re Ames Dep't Stores, Inc.,* 582 F.3d at 431 n6.

## IV.   SECTION 503(b)(9) ADMINISTRATIVE EXPENSES ARE AFFORDED THE SAME SPECIAL TREATMENT AS OTHER SECTION 503(b) ADMINISTRATIVE EXPENSES.

The Debtors urge the court to discriminate against Section 503(b)(9) administrative expenses by treating them in the same manner as unsecured pre-petition claims, reasoning that these claims relate to the pre-petition conduct of the parties.  Debtors' brief at 21.  However, nothing in Section 503(b) suggests treating these claims differently from any other administrative expenses.

Section 503(b)(9) administrative expenses are Congress' latest addition to the class of pre-petition obligations accorded special treatment under the Code.  Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and its addition of Section 503(b)(9), certain pre-petition obligations relating to the filing of an involuntary petition or a receivership were already treated as administrative expenses of the debtor.  11 U.S.C. § 503(b)(2), (3)(E) .  *See In re TI Acquisition, LLC,* 410 B.R. at 750; *In re Plastech Eng'red Prod., Inc.,* 394 B.R. at  151.  Section 503(b)(9) broadened the category of pre-petition obligations entitled to administrative status to include the value of goods sold to the debtor in the ordinary course of such debtor's business and received by the debtor within 20 days before commencement of the bankruptcy case.  11 U.S.C. § 503(b)(9).

Indeed, the addition of Section 503(b)(9) greatly expands the expenses of administration of a bankruptcy estate as this type of debt is more pervasive than the prior categories of pre-petition debts afforded administrative status. *See In re Plastech Eng'red Prod., Inc.,* 394 B.R. at 151. Consequently, a chapter 11 debtor will need significant amounts of cash to confirm a plan because of the requirement that the debtor pay all administrative expenses in full on the effective date of its plan. *Id.* 11 U.S.C. § 1129(a)(9)(A). Post BAPCPA, a debtor may not confirm a plan providing for the payment over time, or partial payment of administrative expenses, including those rising under Section 503(b)(9). 11 U.S.C. § 1129(a)(9)(A).

A second benefit to a creditor holding a Section 503(b)(9) claim is the potential for being paid before general unsecured claimants as the Court has discretion of when to order payment of administrative expenses. *See Plastech Eng'red Prod., Inc.,* 394 B.R. at 151 (citations omitted). In exercising this discretion the courts rely on the same factors examined when determining when to pay other administrative expenses arising under Section 503(b).

The two courts addressing whether to treat Section 503(b)(9) administrative expenses differently from other Section 503(b) administrative expenses for purposes of Section 502(d), declined to do so. *In re Plastech Eng'red Prod., Inc.*, 394 B.R. at 163-65. *In re TI Acquisition, LLC*, 410 B.R. at 750. In *In re Plastech Eng'red Prod., Inc.*, the debtor contended that Section 503(b)(9) are simply a "special class" of pre-petition claims distinguishable from other Section 503(b) administrative expenses. *Id.* at 163. However, the statute fails to recognize any distinction between the nine categories of Section 503(b) administrative expenses, six of which consist of postpetition obligations and three of which consist either entirely or partially of pre-petition obligations. *Id.* Notably, section 507(a)(2) affords the same priority to all administrative expense claims arising under Section 503(b). 11 U.S.C. § 507(a)(2). Instead of

making the reclamation claims a Section 503(b) administrative expense,  Congress could have elevated the priority of these types of claims under Section 507 while still treating them as pre-petition claims under Section 502.  *Id.* at 163-64.  This would also alleviate the conflict between the mandatory provisions of Sections 503(b) and 502(d).  *Id.* at 164.  *See* discussion *supra* at 12.

Congress determined that Section 503(b)(9) administrative expenses were entitled to special treatment.  By doing so, Congress placed these claims beyond the reach of Section 502(d).  *Id.  See In re TI Acquisition, LLC*, 410 B.R. at 750 (the "pre-petition nature" of Section 503(b)(9) administrative expenses does not dictate treating those claims differently that other Section 503(b) expenses).[15]

The disparate treatment of Section 503(b)(9) administrative expenses promoted by the Debtors is beyond the scope of the Code.  Congress could easily have included Section 509(b)(9) in Section 502(d)'s qualifying clause expanding the clause to provide, "notwithstanding subsections (a) and (b) of this section *and Section 503(b)(9),*" thereby making these claims subject to Section 502(d).  Yet, Congress declined to do so.[16]  Section 503(b)(9) is merely another example of Congress affording administrative expense treatment to a special group -- those persons continuing to sell goods to debtors at a time when the debtors are preparing to seek bankruptcy relief.  Without this special treatment, vendors might be inclined to cease supplying goods to a potential debtor in bankruptcy during the weeks prior to the filing, potentially irreparably harming the debtor and negatively impacting its bankruptcy case and the persons with whom the debtor does business.

---

[15] Expanding upon the Debtors' reasoning, arguably postpetition claims treated as pre-petition claims under Section 502 should be viewed as a "special class" of pre-petition claims not subject to Section 502(d).  11 U.S.C. § 502(e)-(i).

[16] *See* discussion *supra* concerning the doctrine *expressio unius est exclusio alterius* at 10.

## V. THIS COURT SHOULD ADOPT THE REASONING OF THE MAJORITY AND DECLINE TO EXPAND SECTION 502(d) TO ADMINISTRATIVE EXPENSES

The majority of the courts, including the only two circuit courts opining on the issue, refuse to extend the grasp of Section 502(d) to Section 503(b) administrative expenses, including those arising under Section 503(b)(9), reasoning that: *i)* Section 502(d)'s introductory language demonstrates it only applies to Section 501 pre-petition claims; *ii)* allowance of Section 503(b) administrative expenses is entirely separate from allowance of claims under Section 502; *iii)* an administrative expense is not the "type of claim" subject to Section 502(d); *iv)* making administrative expenses subject to Section 502(d) results in the collision of two mandatory provisions set forth in Section 502(d) and 503(b); *v)* Section 503(b)(9) administrative expenses are entitled to the same treatment as other Section 503(b) expenses; and *vi)* policy reasons dictate the result. *In re Plastech Eng'red Prod., Inc.*, 394 B.R. at 163-65 (Section 503(b)(9) reclamation expense); *In re TI Acquisition, LLC*, 410 B.R. at 750 (same); *In re Ames Dep't Stores, Inc.*, 582 F.3d at 422 (Pre-BAPCPA Section 503(b) reclamation administrative expense); *See Durham v. SMI Indus. Corp.,* 882 F.2d at 881 (Application of Section 502(d) to a set-off); *In re USA Labs, Inc.,* 2006 Bankr. Lexis at 2394 (Section 503[b] postpetition wage expense); *Roberds, Inc. v. Broyhill Furniture (In re Roberds Inc.)*, 315 B.R. at 443 (Supplier's administrative expense); *In re Durango Georgia Paper Co.*, 297 B.R. at 326 (Involuntary petitioners' attorneys' fees administrative expense); *In re Lids Corp.*, 260 B.R. at 680 (Photographer's administrative expense claim); *In re CM Holdings, Inc.,* 264 B.R. at 157  (Advertising agency's administrative expense); *In re Rand Energy Co*., 256 B.R. at 712 (Postpetition services expense); *In re Phoenix Rest. Group, Inc.*, 2004 WL at 3113719 (Committee's attorneys' fees expense).

The decisions under the Code comprising the minority view and expanding the scope of Section 502(d) to Section 503(b) expenses are not persuasive. For instance, the issue confronting this Court in *In re Bob Grissett Golf Shoppes Inc.*, 50 B.R. 598 (Bankr. E.D. Va. 1985), was whether to surcharge the secured creditor for the rent paid by the debtor to the landlord. *Id.* at 602, 607. The matter arose when the trustee sought to surcharge the secured creditor for certain administrative expenses in connection with the secured creditor's application for payment of administrative expenses. *Id.* The secured creditor objected to the surcharge claiming that the landlord's administrative rent expense was subject to disallowance pursuant to Section 502(d) because the landlord received an unauthorized and avoidable postpetition transfer. *Id.* at 607. The Court, without analysis or citation, stated that it must condition the landlord's administrative expense on surrender of the avoidable transfer. *Id.* The precedential effect of this decision is questionable as it appears that none of the parties objected to the application of Section 502(d) to administrative expenses. *Id.*

In *In re MicroAge, Inc.*, the court applied Section 502(d) to disallow a vendor's Section 503(b) reclamation claim allowed under Section 546(c) of the Code. *In re MicroAge, Inc.*, 291 B.R. at 503 (Pre-BAPCPA case). The court limited its analysis to an examination of the meaning of "claim" in Section 502(d) and the language of other Code provisions purporting to explicitly exclude administrative expenses from their reach and legislative history. *Id.* The court dismissed inapposite Code decisions stating that "the structure of these code sections does provide some evidence of Congressional intent", which evidence, at best, was deemed "ambiguous." *Id.* at 511. Instead, like the Debtors, the court opted to rely on pre-Code decisions which are irrelevant and distinguishable as Section 57g, the "precursor" to Section 502(d),

specifically applied to claims of "creditors" which under the Act included postpetition claims. *See* discussion *supra* at 20. *In re MicroAge*, 291 B.R. at 509-10.

In *Movitz v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 794 *abrogated on other grounds by Dye v. Brown (In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008) (B.A.P. 9th Cir. 2005), the court relies on its previous decision in *MicroAge* without further analysis, stating in *dicta* that attorneys' fees incurred by the debtor's chapter 11 counsel would not be paid until a preference was returned. Furthermore, there is no evidence that the attorney objected to this treatment. *Id.*

Finally, in *Tidwell v. Atlanta Gas Light Co., (In re Georgia Steel, Inc.)*, 38 B.R. 829 (Bankr. MD. Ga. 1984), the court relies on pre-Code law without analyzing the plain language of Section 502(d) and how it differs from its "precursor," Section 57g. *Id.* at 839-40.

The Debtors cite this Court's decision in *In re Larsen,* 80 B.R. 784 (Bankr. E.D. Va. 1987), for the proposition that the "reasoning of the majority of cases addressing administrative claims under section 503(b) in general further supports the conclusion that section 502(d) is properly used as a defense to claims under Section 503(b)." Debtors' brief at 24. Initially, the majority of decisions examining the issue find that Section 503(b) administrative expenses are not subject to Section 502(d). *See supra* at 24. Second, *In re Larsen* does not involve a Section 503(b)(3) administrative expense, but two belatedly filed proofs of claim relating to two pre-petition loans made by the creditor to a business owned by the debtor. *Id.* at 785. One of the proofs of claim stated that the claim was "administrative in nature and should be accorded the proper priority." *Id.* After a lengthy analysis of whether the creditor was entitled to a Section 503(b) administrative expense, the Court concluded that the claim, "if allowed, would be as a general unsecured claim." *Id.* at 790, 791. The creditor's counsel admitted his client received

unauthorized postpetition payments totaling $2,000.  *Id.* at 791.  Having determined that the

claim was unsecured, in *dicta*, the court states that "regardless of their priority status, . . . even if

the proofs of claim were timely filed," the claims would be barred by Section 502(d).  *Id.* at 790.

Although the Court examined the procedural aspects of Section 502(d), unsurprisingly it

provides no analysis concerning its application to administrative expenses as the issue was not

*sui juris.*

Finally, the analysis in *In re Colonial Servs., Co.,* was widely criticized by the Second

Circuit and is weak. *See* discussion *supra* at 20-21.

## VI.   SECTION   502(d)   DOES   NOT   AUTHORIZE   THE   TEMPORARY DISALLOWANCE OF CLAIMS.

### A.   The Plain Language of Section 502(d) Requires the Court to Adjudicate the Debtors' Alleged Avoidance Claims Prior to the Disallowance of a Claim.

The Debtors again resort to analyzing Section 502(d)'s sparse legislative history in

asserting that Samsung's Section 503(b)(9) administrative expenses should be disallowed.  The

Debtors rely on the legislative history providing that Section 502(d) "requires disallowance of a

claim of a transferee of a voidable transfer if the transferee has not paid the amount or turned

over the property received as required under the sections under which the transferee's liability

arises."  H.R. Rep. No. 95-599, at 354 (1977).  *See also* S. Rep. No. 95-989, at 64 (1978). [17]

Both the literal terms of Section 502(d) and its legislative history make clear that the

disallowance of a claim is contingent upon: (i) a finding that the claimant is liable to return estate

property under chapter 5 of the Code ("Avoidance Liability"); and (ii) claimant's failure to return

---

[17] The legislative history is irrelevant because the meaning of the statute is clear.  *See,* discussion *supra* at 18.
However, in an abundance of caution, Samsung addresses the Debtors' contentions.

such property to the debtor's estate.   Here, the Debtors concede that this Court has yet to determine whether Samsung has any Avoidance Liability.[18]  Accordingly, even if Section 502(d) is applicable to Samsung's Section 503(b)(9) expenses, the plain meaning of Section 502(d) and its legislative history preclude a temporary disallowance of such claims.

> **B.      The Better Reasoned Decisions Support the Conclusion that Adjudication of Avoidance Liability is Required *Prior* to Disallowance of a Claim Under Section 502(d).**

A majority of courts hold that the adjudication of Avoidance Liability is required prior to disallowance of a claim pursuant to Section 502(d).  *In re Lids Corp.*, 260 B.R. at 684; *Seta Corp. of Boca, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (Section 502[d] "clearly envisions some sort of determination of the claimant's liability before its claims are disallowed, and in the event of an adverse determination, the provision of some opportunity to turn over the property.");  *Hoggarth v. Kaler (In re Midwest Agri Dev. Corp.)*, 387 B.R. at 586 ("Because Section 502(d) provides that an entity's claim is not disallowed if the entity pays the amount owed or turns over the property, the court may only use section 502(d) to disallow a claim if the entity is first adjudicated liable under the applicable section.") (citing *In re Odom Antennas, Inc.*, 340 F.3d  at 708).[19]

The primary reasoning underpinning the holdings in these cases is that a court may not order the turnover of property in one instant and in the same instant disallow a creditor's claim

---

[18] The Debtors simply assert that because the facts **suggest** that the Claimants **may** have received one or more avoidable transfers . . . ."  Debtors' brief at 30 (emphasis  supplied).

[19] *See also Creditors of Melon Prod., Inc. v. Braunstein*, 112 F.3d 1232, 1237 (1st Cir. 1997) ("the key phrase in this inquiry is 'the amount … for which such entity or transferee is liable'"); *Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989) (Section 502(d) "is designed to be triggered after a creditor has been afforded reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate."); *Mountaineer Coal Co. Inc. v. Liberty Mutual Ins. Co. (In re Mountaineer Coal Co., Inc.)*, 247 B.R. 633, 641 (Bankr. W.D. Pa. 2000) (Section 502(d) "would not appear applicable unless and until a finding under one of the cited sections had been made and then the claimant had failed to comply with such ruling").

for failing to comply with that order.  *See generally Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989).  Instead, a court must provide a creditor with a reasonable period of time to comply with the court's turnover order before disallowing the claimant's claims.  *Id.*

Moreover, the disallowance of a claimant's claim prior to a determination of Avoidance Liability would inequitably prejudice a claimant's ability to preserve any disallowed claims and deny them of due process.  By way of example, a claimant may possess aggregate claims against a bankruptcy estate that collectively yield a proposed distribution substantially in excess of a claimant's Avoidance Liability.   Under such a scenario the claimant would be inclined to preserve its claims by promptly curing any Avoidance Liability.  If, as the Debtors urge, the claims may be temporarily disallowed until a determination of the Avoidance Liability, the claimant's ability to maximize distribution on its claims may be substantially impaired because: (i) it may be prohibited from voting to reject an unfavorable plan of reorganization; (ii) the claimant's standing to assert confirmation objections may be prejudiced; and (iii) the debtor may render claimant's claims worthless by dissipating its assets by making distributions on account of allowed claims.   Under such a scenario, the disallowance of a claimant's claim prior to adjudication of Avoidance Liability would turn the policy goals supporting the enactment of Section 502(d) on their head by reducing a claimant's incentive to return property subject to Avoidance Liability.    Taken to its logical conclusion, the Debtors' interpretation of Section 502(d) would allow the Debtors to silence any creditor who may object to their Plan solely by alleging that a creditor received a preferential transfer.[20]   Logic and simple common

---

[20] Here, the Debtors merely assert conclusory allegations that Samsung "may" have Avoidance Liability through the receipt of the Alleged Preference.  Debtors' brief at p. 30.  The Debtors' bare allegations alone are not enough to temporarily disallow Samsung's 503(b)(9) claims.  *In re Southern Air Transport, Inc.*, 294 B.R. 293, 296 (Bankr. S.D. Ohio 2003) ("The allegation of a preference alone cannot act to defeat a claim against a debtor.")  It is also immaterial that the Debtors' assert that they possess a colorable avoidance claim against Samsung.  *See In re Lids Corp.*, 260 B.R. at 684 (Debtors' assertion that it will be successful in asserting a preference action is immaterial to application of 502[d] until the Debtor obtains a judgment).

sense dictate that to limit such unfettered use of Section 502(d), its application cannot be triggered until a claimant's Avoidance Liability is adjudicated.[21]

Any "temporary disallowance" of Samsung's 503(b)(9) administrative expenses without an adjudication of Samsung's Avoidance Liability will inequitably impair Samsung's ability to maximize the distribution on account of such expenses.  Specifically, the Plan contemplates interim distributions to claimants holding allowed administrative claims.  Because the Plan does not reserve any funds for disputed administrative claims, Samsung's distribution on account of such claims may be completely compromised by any interim distributions made by the Debtors under the Plan.  The foregoing operates to deprive Samsung of its rights under the Code to full payment at confirmation through a procedure akin to an unlawful prejudgment writ of attachment.  *See* discussion *infra* at 33.  *In re TI Acquisition, LLC,* 410 B.R. at 751 n5; *In re Global Home Prods., LLC,* No. 06-10340 (KG), 2006 WL 3791955, *3 (Bankr. D. Del. Dec. 21, 2006).

Accordingly, Samsung requests that this Court follow the better reasoned decisions cited above, and require the adjudication of Samsung's Avoidance Liability prior to the temporary disallowance of its Section 503(b)(9) administrative expenses.

**C.    The Legal Authorities Relied Upon by the Debtors are Inapposite to the Instant Case.**

The Debtors rely upon *Katchen, In re Colonial Servs. Co.*, *In re Am. West Airlines, Inc.*, 217 F.3d 1161 (9th Cir. 2000); and *In re Sierra-Cal,* 210 B.R. 168, 173 (Bankr. E.D. Cal. 1997), for the proposition that a claim objected to under Section 502(d) is neither allowed nor disallowed until the Avoidance Liability is adjudicated by the Bankruptcy Court.  Debtors' brief

---

[21] A court is not required to leave its common sense at the courthouse door. *See In re Lawrence*, 238 B.R. 498, 500 (Bankr. S.D. Fla. 1999).

at 30-31.  As a threshold matter, the Debtors' reliance on the pre-Code decision in *In re Colonial Servs., Co.,* is missplaced as demonstrated by two recent Eighth Circuit Court of Appeals opinions impliedly overruling *In re Colonial Servs., Co.,* and expressly holding that a claim cannot be disallowed under Section 502(d) until an adjudication of the Avoidance Liability.  *See In re Midwest Agri Dev. Corp.*, 387 B.R. at 586; *Holloway v. Internal Revenue Serv. (In re Odom Antennas, Inc.)*, 340 F.3d at 708.  The remaining legal authorities cited by the Debtors are distinguishable because in those cases the bankruptcy courts adjudicated a claimant's Avoidance Liability prior to disallowing the claim under Section 502(d).

In *Katchen*, a trustee objected to two unsecured claims arising from unpaid promissory notes pursuant to section 57(g) of the Act.  *Katchen*, 382 U.S. at 325.  In addition to the section 57(g) objections, the trustee filed a petition to void certain preferential payments received by the claimant.  *Id.*  By summary proceeding the bankruptcy court adjudicated the preference action in the trustee's favor and ordered that the claimant's unsecured claims would be disallowed until the claimant surrendered the preferences.   *Id.* at 326.   The claimant objected because the adjudication was by summary proceeding as opposed to a plenary suit.  *Id.*  The Supreme Court held that the preference could be adjudicated in a summary proceeding upholding the bankruptcy court's decision.  *Id.* at 340.

The decision in *Katchen* is wholly inapposite to the case at bar because as distinct from the instant case, the *Katchen* bankruptcy court adjudicated the preference *prior* to disallowing the claims.  Moreover, the objections in *Katchen* related to unsecured claims and were raised by a trustee in a liquidation and not a reorganization.  This distinction is critical because here, unlike *Katchen*, the temporary disallowance of Samsung's claims on the eve of the confirmation hearing will prejudice Samsung's distribution to the extent it prohibits Samsung from objecting to the

Plan on the grounds, *inter alia,* it fails to provide for full payment to administrative claimants in contravention of Section 1129.  11 U.S.C. § 1129(a)(9).

In *In re Sierra-Cal* the issue before the bankruptcy court was whether a claim subject to a Section 502(d) objection should be considered in calculating a hypothetical liquidation under the "best interests" test for chapter 11 plan confirmation.    *In re Sierra-Cal,* 210 B.R. at 174. 11 U.S.C. § 1129(a)(7).  The court theorized that the claim should not be considered because in a chapter 7 liquidation, "a creditor who is under a § 502(d) disability would receive nothing." *Id.* (emphasis in original).  Importantly, the bankruptcy court made a finding as to the claimant's Avoidance Liability prior to holding that the claim should be disallowed for purposes of calculating the "best interests" test. *Id.* at 171.

Like *Katchen*[22], the holding in *Sierra-Cal* was decided under the rubric of a liquidation proceeding, rather than a chapter 11 reorganization.  Moreover, as in *Katchen*, the bankruptcy court already adjudicated the Avoidance Liability thereby mitigating any potential prejudice to the claimant associated with disallowance of its claim.  In contrast, here, the Debtors are urging the court to forego any adjudication prior to disallowing Samsung's administrative expenses.  In addition, rather than cooperating with discovery, the Debtors produced the laughable Spreadsheet and objected to Samsung's efforts to obtain the basic facts underlying the Alleged Preference. The lack of adjudication violates the Code and Samsung's due process rights to notice and an opportunity to defend itself before being deprived of its valuable Section 503(b)(9)

---

[22] *In re Am. West Airlines, Inc.*, 217 F.3d at 1161  is also distinguishable from the instant case because the bankruptcy court had already adjudicated the claimant's Avoidance Liability prior to disallowing their claim under Section 502(d). *Id.* at 1163.  Specifically, the bankruptcy court avoided a tax lien asserted by the City of El Paso pursuant to Section 545.  *Id.*  The City of El Paso appealed the disallowance of their claim asserting that the disallowance was improper because the bankruptcy court had not adjudicated whether the City of El Paso had returned the property subject to the Avoided Liability.  *Id.* at 1165-66.  The Ninth Circuit disagreed with the City's interpretation of Section 502(d) holding that an adjudication of Avoidance Liability alone is sufficient to disallow a claim under 502(d).  *Id.* at 1166.  Accordingly, Debtors' reliance on *America West* is likewise without merit.

expenses.  Accordingly, the Debtors' reliance on *Sierra-Cal* is equally inapposite as applied to the facts of this case.

## VII.   THE DEBTORS WRONGFULLY SEEK AFFIRMATIVE RELIEF BY WAY OF OBJECTION IN CONTRAVENTION OF THE BANKRUPTCY RULES REQUIRING THE COMMENCEMENT OF AN ADVERSARY PROCEEDING.

Federal Rule of Bankruptcy Procedure 7001 provides that an adversary proceeding must be commenced "to obtain an injunction or other equitable relief . . . ."  Fed. R. Bankr. P. 7001(9). Furthermore, demands for relief shall not be included in an objection to claims.  Fed. R. Bankr. P. 3007(b).[23]  The Debtors filing of the Objection seeking affirmative relief runs afoul of these important procedural rules.

Although the Debtors are seeking what amounts to a declaratory judgment concerning the scope of Section 502(d) and an injunction temporary disallowing Samsung's administrative expenses, they neglected to commence an adversary proceeding depriving Samsung of the due process and procedural protections inherent in a lawsuit.  *See* Fed. R. Bankr. P. 7001 *et seq.* Seemingly, the Debtors are attempting to remove Samsung and other administrative claimants from the confirmation process in this potentially administratively insolvent case without affording them the opportunity to respond to specific allegations and take discovery.[24]  Samsung is entitled to the due process protections of the Federal Rules of Civil Procedure, as adapted by the Federal Rules of Bankruptcy Procedure, commencing with the filing of a formal complaint containing factual allegations and a prayer for relief.

---

[23]Rule 3007(b) applies to the Debtors' Objection asserted under Section 502.  *See* 2009 Collier Pamphlet Ed., Bankruptcy Rules (MB) (notes and commentary provide that Rule 3007 relates to Sections 501 and 502).

[24]The Debtors motives are evidenced by their filing the Objection *after* they obtained approval of their Disclosure Statement and filed a Plan notwithstanding that on the Petition Date they were fully aware that a determination of the amounts of allowed Section 503(b)(9) administrative expenses was "necessary before the Debtors can formulate a plan."  *See* Bar Date Motion at 12.  *See also* Disclosure Statement at 67 (Because the amount of allowed administrative claims is unknown and the Debtors may lack cash sufficient to confirm the Plan, without the consent of the holders of administrative expenses confirmation may be denied.)

## CONCLUSION

Based on the foregoing arguments and authorities, the Debtors' objections should be overruled and Samsung's Section 503(b)(9) administrative expenses should be allowed in their entirety and Samsung should be granted such further and additional relief as this Court deems just and equitable.

Dated:  November 4, 2009

AKERMAN SENTERFITT LLP

By:  /s/ Mona M. Murphy_____
Stanley Salus, Esquire
Mona M. Murphy, Esquire
Virginia Bar No. 21589
8100 Boone Boulevard, Suite 700
Vienna, VA  22182-2642
tel.:  (703) 790-8750
fax:  (703) 448-1767
mona.murphy@akerman.com

Michael Goldberg, Esquire
Joanne Gelfand, Esquire
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
Email:  michael.goldberg@akerman.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 4th day of November, 2009, a copy of the foregoing Samsung Electronics America, Inc.'s Memorandum Of Law In Opposition To Debtors' (I) Fifty-Second Omnibus Objection To Certain 503(b)(9) Claims And (II) Motion For A Waiver Of The Requirement That The First Hearing On Any Response Proceed As A Status Conference was sent to the United States Trustee, counsel for the Debtors, counsel for the unsecured creditors committee, and all creditors and parties-in-interest who are included in the United States Bankruptcy Court's ECF e-mail notification system for this case, by virtue the electronic filing of same.

<u>/s/ Mona M. Murphy</u>