IN THE UNITED STATES BANKRUPTCY COURT
FOR EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC, *et al.*, | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

**RESPONSE OF ONKYO USA CORPORATION IN
OPPOSITION TO DEBTORS' (I) FIFTY-FIRST OMNIBUS
OBJECTION TO CERTAIN 503(b)(9) CLAIMS AND (II) MOTION
FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING
ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

Onkyo USA Corporation ("Onkyo"), by and through its undersigned attorneys, hereby submits this response in opposition (the "Opposition") to the Debtors' (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims (the "Objection") and (II) Motion for a Waiver of the Requirement that the First Hearing on Any Response Proceed as a Status Conference (collectively, with the "Objection," the "Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By this Motion, the Debtors seek, among other things, the entry of an order under Section 502(d) temporarily disallowing each of the Section 503(b)(9) administrative expenses identified on Exhibit C of the Motion, which includes the claim of Onkyo, to the extent that any of the parties claiming entitlement to an administrative expense received an "alleged" preferential transfer. In essence, the Debtors are seeking to combine two separate and distinct provisions of the Bankruptcy Code, namely, Sections 502(d) and 503(b)(9), presumably, in order

---

Philip C. Baxa, Esquire VSB No. 22977
MercerTrigiani LLP
16 South 2nd Street
Richmond, Virginia 23219
Tel: 804-782-8691
Fax: 804-644-0209
phil.baxa@mercertrigiani.com
Local Counsel for Onkyo USA Corporation

to obtain plan approval without having to establish or pay administrative expenses mandated by the Bankruptcy Code to be paid on the effective date of their plan.

2. For reasons more fully set forth below, the Debtors' Motion should be denied. Contrary to the suggestion of the Debtors, the question of whether Section 503(b) administrative expenses are subject to disallowance under Section 502(d) is not a novel issue. The vast majority of cases addressing this issue, including a very recent decision from the Second Circuit Court of Appeals, have resoundingly answered that question in the negative. Moreover, the two cases which specifically have addressed whether a 503(b)(9) administrative expense is subject to disallowance under Section 502(d) have also rejected that argument. Essentially ignoring these cases, the Debtors seek to treat this issue as a case of first impression raising arguments regarding statutory interpretation, legislative history, and general bankruptcy policy. But these and other arguments advanced by the Debtors have already been addressed by a number of courts, the vast majority of which have held that Section 502(d) may not be used by a debtor to disallow, set-off, or otherwise delay payment of an allowable administrative expense under section 503(b).

3. Moreover, while the Debtors aver that a handful of cases which have extended Section 502(d) to Section 503(b) administrative expenses are "better reasoned cases", the cases cited by the Debtors are not only in the minority but are factually dissimilar and were decided on different grounds, than the case at bar.

4. Regardless of the legal issue at the center of the Objection, the Debtors' Motion is premature in that the Debtors should not be allowed to hold administrative claims hostage pending a ruling on preference liability. Importantly, this case sits on the eve of confirmation and no preference actions have been initiated against Onkyo. To this end, although the Debtors

2

made a unilateral determination that each of the parties referenced on Exhibit C was the recipient of one or more avoidable transfers, the Debtors' have failed to support this contention with any evidence. In addition, although the Debtors purportedly "evaluated several defenses" to a party's preference exposure, including the new value defense, it is clear that the Debtors did not apply the ordinary course defense as set forth in Section 547(c)(2).

5. Onkyo has a complete ordinary course defense to any alleged preference and therefore, ruling on the legal issue attempted to be raised by Debtors through an omnibus objection at this point is unnecessary. In any event, the Debtors have not cited any support for the proposition that a mere allegation of an alleged preference, i.e., finger-pointing without evidence, is an appropriate method for disallowing a claim, let alone an administrative expense. At the very least, even if this Court were to determine that Section 502(d) is applicable to a Section 503(b) administrative expense, the Debtors should be made to support their bald conclusions regarding the receipt of preferential transfers – which strictly mimic the elements of the preference statute – and Onkyo should be permitted to assert its defenses and conduct discovery in an appropriate adversary proceeding, before temporarily disallowing Onkyo's request for payment of its 503(b)(9) administrative expense.

**BACKGROUND**

6. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

7. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors. To date, no trustee or examiner has been appointed.

3

8.      On September 22, 2009, this Court approved the Disclosure Statement with Respect to First Amended Joint Plan of Liquidation (the "Plan") of Circuit City Stores, Inc and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Disclosure Statement"). According to the Disclosure Statement, the hearing on Plan confirmation is currently scheduled for November 23, 2009 with objections due on or before November 16, 2009.

9.      Onkyo has filed claims against the Debtors in these cases seeking payment of (i) $4,905,048.57 as an administrative expense pursuant to Section 503(b)(9) of the Bankruptcy Code based upon goods received by the Debtors within twenty (20) days of the Petition Date (the "Administrative Expense") and (ii) $1,722,427.00 as a general unsecured claim with respect to goods delivered to the Debtors outside the twenty (20) day period.

**OBJECTION**

**I. Section 502(d) Is Not A Defense to the Allowance of a Section 503(b)(9) Administrative Expense**

10.     By the Motion, the Debtors seek entry of an order temporarily disallowing Onkyo's Administrative Expense pending "return of the preferential transfers." See Motion at p. 5. As there has been no adjudication as to whether payments received by Onkyo within ninety-days of the Petition Date are in fact, preferential -- indeed, no adversary proceeding has yet been filed -- Onkyo can only assume that Debtors are seeking to temporarily disallow Onkyo's Administrative Expense without any adjudication as to Onkyo's preference liability. Such relief is unwarranted.

11.     Debtors assert that Section 503(b)(9) administrative expenses are subject to mandatory disallowance under Section 502(d). See Brief in Support of Motion (hereinafter, "Brief") at p. 5. In support of this position, Debtors seek to argue, among other things, that

4

statutory interpretation, legislative history, and the policy behind Section 502(d) support such disallowance. These are not novel arguments.

**A.     Statutory Construction Confirms that Section 503(b)(9) Administrative Expenses are Not Subject To Mandatory Disallowance Under Section 502(d)**

12.     Debtors' argument, in part, is based on statutory interpretation. Specifically, the Debtors' contend that Section 503(b)(9) "expenses" are "claims" and as such, fall within the gambit of Section 502(d). They assert that the fact "[t]hat Bankruptcy Code section 503(b) uses the phrase "administrative expense" as opposed to the word "claim" is irrelevant." See Brief at p. 6. This is an interesting argument, if for nothing else, the Debtors later cite to case law for the proposition that "Congress says in a statute what it means and means in a statute what it says there." See Brief at p. 10, citing, Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000).

13.     A number of courts, including the Second Circuit, have interpreted the interplay between Sections 502(d) and 503(b) and have found that the plain language of these provisions dictate that administrative expenses under Section 503(b) are not subject to mandatory disallowance in the context of Section 502(d). See ASM Capital, LP v. Ames Department Stores, Inc. (In re: Ames Department Stores, Inc.), 582 F.3d 422 (2nd Cir. 2009) ("The structure and context of section 502(d) suggests that Congress intended it to differentiate between claims and administrative expenses and not to apply to the later."); see also In re Plastech Eng'r Prods, Inc., 394 B.R. 147, 157-58 (Bankr. E.D. Mich. 2008) (citing cases holding that Section 502(d) uses "claim" to refer only to prepetition claims and not to requests for administrative expenses); Beasley Forest Prods., Inc.v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.), 297 B.R. 326, 329-31 (Bankr. S.D. Ga. 2003) (giving examples where "claims" and "expenses" are not one in the same, including under Sections 502 and 503); In re Lids Corp., 260 B.R. 680, 683-84

5

(Bankr. D. Del. 2001) (illustrating Bankruptcy Code's distinctions between prepetition, postpetition, and administrative claims); Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.), 264 B.R. 141, 159 (Bankr. D. Del. 2000) (to the same effect).

14. First, Section 502(d) does not contain any language or other reference making it applicable to administrative expenses under Section 503. See Ames at 14[1]; see also In re TI Acquisitions, LLC, 410 B.R. 742 (Bankr. N.D. Ga. 2009).

15. Second, read in the appropriate context, Section 502, entitled "Allowance of claims or interests," governs the allowance of claims filed under Section 501, "Filing of proofs of claims or interests", and not expenses sought under Section 503, "Allowance of administrative expenses." See Ames at 13 (citing In re Durango Ga. Paper Co., 297 B.R. 326, 329 (Bankr. S.D. Ga. 2003) ("To construe Section 502(d)'s disallowance as applicable to expenses allowable under Section 503 – a section with its own scope, purpose, and conditions, is to expand the scope of Section 502(d)'s disallowance beyond its plain meaning."). Indeed, Section 502 specifically addresses Section 501 claims in its introductory language. See In re TI Acquisitions LLC, 742 B.R. at 750.

16. Third, Section 502 does not cross-reference Section 503, and no statutory support for its application to Section 503 exists Id.

17. While the Debtors argue that amounts given administrative expense status by Section 503(b)(9), by definition, are pre-petition claims, and therefore, subject to disallowance under Section 502(d), such an argument is twisting the language of these various statutes. See

---

[1] At the time of submission of this Response, there were no page references to Ames in the Federal Reporter other than the initial page. Consequently, references to page numbers herein are the page numbers set forth in the Ames Slip Opinion issued by the Second Circuit Court of Appeals on September 18, 2009 at Docket No. 07-1362-bk.

6

Brief at p. 8. While Section 502 does apply to pre and post petition claims, it applies to only those pre and post petition claims governed by section 501. In re TI Acquisitions LLC, 742 B.R. at 750. Further, it is of no relevance that Section 503(b)(9) administrative expenses relate to pre-petition debt because the prepetition nature of the debt does not dictate that 503(b)(9) claims should be treated any differently from other Section 503(b) administrative expenses. Id.

18.  In addition to the plain language of these provisions, courts also rely on the procedural mechanisms of Sections 501 and 503 to find that Section 502(d) is not applicable to Section 503(b). Section 503 states that an entity "may timely file a request…" (emphasis added) whereas Section 501 *requires* the filing of a proof of claim. Hence, these courts find that the prosecution of a motion (in the context of Section 503(b)) is not the same as presumptive allowance under Section 501. Id.

**B.    Legislative History Suggests Section 502(d) Does Not Apply to Section 503(b)(9)**

19.  Understanding that statutory construction and the plain language of the statute do not suit their position, the Debtors turn to legislative history for support. In particular, the Debtors rely on Section 57g of the Bankruptcy Act, the precursor to Section 502(d). According to Section 57g, claims of "creditors" who received preferences were denied allowance of their claims absent return of the preference. Under the Act, "creditors" included both prepetition holders of claims as well as administrative claimants. Thus, the theory goes, Section 502(d) was meant to preserve the Act's policy of denying administrative expenses absent return of a preference.

20.  Such reliance on legislative history, including Section 57g of the Bankruptcy Act and the cases addressing this provision, is weak at best. Indeed, in Ames, the Second Circuit entertained, and flatly rejected this identical argument. "Contrary to Ames's position, we are not

7

persuaded that the legislative history to Section 502(d) indicates a Congressional intent to apply that Section to administrative expenses pursuant to Section 503, and we find the legislative history at most to be inconclusive." See Ames at 16 n.6.

21. First, as in Ames, the Debtors in this case contend that the law from which section 502(d) was derived, Section 57g of the Bankruptcy Act, was understood to apply to requests for administrative expenses, and accordingly, such understanding should be imputed to Section 502(d). The Second Circuit found, however, that as late as 1966, the exact reach of Section 57g was not settled. See Ames at 16 n. 6. (citing Katchen v. Landy, 382 U.S. 323, 330 n.5 (1966)). Moreover, only one case between the decision questioning the reach of Section 57g in Katchen and the adoption of the Bankruptcy Code in 1978 deals with this question. In Weber v. Mickelson (In re: Colonial Servs. Co.), 480 F.2d 747 (8th Cir. 1973), which is cited by the Debtors in its Brief, the Eighth Circuit found that Section 57g of the Bankruptcy Act extended to administrative expenses.

22. The decision in Weber rested on two separate grounds. First, the court found that the plain, unequivocal language of Section 57g applied to administrative expenses. As the Second Circuit has pointed out in Ames, however, the language in Section 502(d) of the Bankruptcy Code is different than the language in Section 57g of the Act. If Congress intended to preserve the scope of Section 57g as determined by the Weber court, there would have been no need to use different language when Section 502(d) was enacted.

23. Second, the court in Weber based its decision on the holding in Irving Trust Co. v. Frimitt, 1 F. Supp. 16 (S.D.N.Y. 1932). However, as the Second Circuit found in Ames, there is no indication that the applicability of Section 57g to the creditors' claims was a disputed issue in that case. See Ames at 16-17, n.6.

8

24.     As such, relying on the legislative history of Section 502(d), including the interpretation of Section 57g of the Bankruptcy Act, lends little credence to Debtors' arguments in the case at bar.

25.     Although no legislative history on this Section exists, at least one court has surmised that Section 503(b)(9) was designed to reflect Congress' intent to protect sellers of goods received by debtors within twenty days of a bankruptcy, by giving these sellers priority in payment over most other creditors.  See In re TI Acquisition, LLC, 410 B.R. 742, 746.

**C.    The Policy Behind Sections 502(d) and 503(b)(9) Do Not Support Debtors' Position**

26.     Debtors cite several cases establishing the theory behind Section 502(d)'s disallowance requirement.  Onkyo does not disagree that Section 502(d) was intended by Congress to further important policy objectives, including without limitation, maximizing distributions to creditors and forcing parties to comply with court orders.  Ti Acquisitions, LLC, 410 B.R. at 748.  None of the cases cited by the Debtors, however, involves application of Section 502(d) to Section 503(b)(9), which was added later to deal with issues identified as being an unfair burden on good faith vendors selling goods to a debtor on the eve of a filing.

27.     Indeed, Debtors fail to recognize the important policy implications behind Section 503(b)(9).  In In re Lids Corp., 260 B.R. 680, 684 (Bankr. D. Del. 2001), the court observed that "[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative expenses, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor."  The fact that the administrative expenses in this case arose pre-petition is of little significance in that suppliers are often encouraged to supply goods to a failing business by the fact that they will have allowable administrative expenses if a case is filed within twenty days.  See In re TI Acquisitions Corp. LLC, 410 B.R. at 751.

9

28.     Moreover, applying Section 502(d) to administrative expenses could have certain "snowball" effects that would undermine other provisions of the Bankruptcy Code.  For instance, an agreement by a pre-petition creditor to extend post-petition unsecured credit under Section 364(a) and (b) in exchange for an administrative expense under Section 503(b)(1) would be meaningless if the debtor could disallow the administrative expense claim under Section 502(d) if such creditor received allegedly preferential payments.  Likewise, to the extent that professional fees are paid pre-petition, post-petition fees may be subject to disallowance.  In other words, making Section 502(d) applicable to Section 503 will open doors and create issues heretofore not imagined.

## II.     The "Better Reasoned Cases" Support Onkyo's Position, Not the Debtors

29.     The Debtors aver that "[t]he reasoning of the majority of cases addressing administrative claims under section 503(b) in general supports the conclusion that section 502(d) is properly used as a defense to claims under section 503(b)(9)".  The Debtors fail to cite a single case that would support this contention.  In addition, the Debtors fail to properly account for two Bankruptcy Court decisions directly on point, which find that Section 503(b)(9) <u>does</u> <u>not</u> implicate Section 502(d).

30.     First, in <u>In re TI Acquisitions LLC</u>, 742 B.R. at 750, the debtor sought to set-off payments made within the twenty-days against shipments made within the same period.  In rejecting the "net-value" theory, the court specifically found that the plain language of the statute does not permit such theory.  <u>Id</u>. at 748.  Moreover, the court went on to uphold the reasoning of the cases that find Section 502(d) does not permit disallowance of administrative expenses under Section 503(b) and specifically finds that the pre-petition nature of a Section 503(b)(9) debt does not dictate that Section 503(b)(9) expenses should be treated differently than other Section

10

503(b) expenses. "Indeed, the plain language of the statute does not distinguish in any way among the various types of Section 503(b) expenses." <u>Id.</u> (citing <u>In re Plastech Eng'r Prods. Inc.</u>, 394 B.R. at 163).

31.     In <u>In re Plastech Eng'r Prods., Inc.</u>, 394 B.R. 147 (Bankr. E.D. Mich. 2008), the debtor objected to administrative expenses filed pursuant to Section 503(b)(9) on the ground that the claimants had received preferential transfers and could not receive their administrative expenses until the preferences were returned. The Court examined the relationship between Section 502(d) and Section 503 and, for the reasons more fully set forth above, found that the two provisions were mutually exclusive. <u>Id</u>. at 161. Moreover, in addressing the debtor's argument that Section 503(b)(9) contains a "special class" of pre-petition claims, the Court noted that "no such distinction is recognized in the statute…[n]or is there any legislative history to suggest that Congress intended there to be such a distinction." <u>Id</u>. at 163.

32.     Rather than give credence to (indeed, even cite one of the cases) <u>In re TI Acquisitions, LLC</u>, and <u>In re Plastech Engineered Products, Inc.</u> -- two cases directly on all-fours with the case at bar -- the Debtors cite several cases that are hardly relevant. For instance, in their lead case, <u>In re Larsen</u>, 80 B.R. 784 (Bankr. E.D. Va. 1987), the court did not even determine whether the claim was entitled to priority and found only that the defendant was liable for receiving unauthorized post-petition transfers under Section 549. Accordingly, the facts of <u>Larsen</u> are not on point, and <u>Larsen</u> should be disregarded.

33.     Second, the Debtors' reliance on <u>MicroAge, Inc. v. Viewsonic Corp (In re: MicroAge, Inc.)</u>, 201 B.R. 503 (B.A.P 9th Cir. 2002), is misplaced. <u>MicroAge</u> turns on a broad reading of the term "claim" and thus equating "claims" with "expenses." As previously discussed, however, in <u>ASM Capital, LP v. Ames Department Stores, Inc. (In re: Ames</u>

11

Department Stores, Inc.), the Second Circuit addressed the "expense equals claim" – statutory language argument made by the Debtors in this case, in the context of a broader statutory interpretation analysis of the two relevant Code sections and found that "claims" does not equate to "expenses." See Ames at 12. An important distinction to the case at bar.

34.     In Ames, ASM Capital, an investor in distressed debt, acquired claims against Ames's bankruptcy estate, including administrative expenses and reclamation claims. Once Ames abandoned its efforts to reorganize and instead decided to liquidate its estate, Ames suspended payments on its administrative expenses. In addition, Ames filed adversary proceedings against several of its former suppliers to recover preferential transfers. While preference actions were pending, Ames began making interim distributions to holders of administrative expenses but refused to make these distributions to holders who were either defendants in a preference action or who acquired these claims from a defendant in a preference action, such as ASM.

35.     In connection with the "expense equals claim" statutory language analysis, the Second Circuit, after reviewing several decisions cited by the Debtors in this case, including MicroAge and Movitz v. Baker (In re: Triple Star Welding, Inc.), 324 B.R. 778 (B.A.P. 9th Cir. 2005), found that the "structure and context of Section 502(d) suggests that Congress intended it [502(d)] to differentiate between claims and administrative expenses, and not to apply to the latter." Ames at 12.

36.     Moreover, in addition to the Second Circuit, a majority of bankruptcy courts interpreting the statutory context and reach of Section 502 have found that Section 502 provides a procedure for the allowance of claims as set forth in Section 501 which is entirely "separate from the procedure for allowance of administrative expenses under section 503." Ames at 11,

12

(citing In re: Plastech Engineered Products, Inc., 394 B.R. 147, 157-158 (Bankr. E.D. Mich. 2008) (citing to cases that determined section 502(d) uses "claim" to refer only to prepetition claims and not to requests for administrative expenses); Beasley Forest Products, Inc. v. Durango Ga. Paper Co. (In re: Durango Ga. Paper Co.), 297 B.R. 326, 329-31 (Bankr. S.D. Ga. 2003); In re Lids Corp., 260 B.R. 680, 683-84 (Bankr. D. Del. 2001); and Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re: CM Holdings, Inc.), 264 B.R. 141, 159 (Bankr. D. Del. 2000).

37.    Likewise, the Debtors' reliance on In re Triple Star Welding, Inc., 324 B.R. 778, which supports MicroAge, is equally misplaced.  In In re Triple Star, the court cited MicroAge only in connection with whether counsel disclosed sufficient facts to satisfy the disinterested standard under Section 327(a).  In addition, although MicroAge's reasoning is derived from Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.), 38 B.R. 778 (9th Cir. B.A.P. 2005), and Tidwell has not been overturned, its holding was rejected by the Bankruptcy Court for the Southern District of Georgia in Durango, *supra*, which held that Section 502(d) is not an appropriate basis for an objection to the allowance of administrative expenses.

38.    Weber, as has already been discussed, does not provide shelter to the Debtors.  In that case, the Court decided that the particular claim for services provided to the debtor was an unsecured claim and not a priority claim.  Furthermore, as the Debtor themselves note, the In re Eye Contact decision applies to pre-petition wage claims and not an administrative expenses and therefore is not on point.  The holding in In re Hudson Feather & Down Prods., Inc. also provides no comfort in that the reasoning behind this case, Section 57g of the Bankruptcy Act, rests on infirm grounds as more fully set forth above in the discussion on legislative history.

13

39. Finally, in <u>In re Bob Grissett Golf Shoppes, Inc.</u>, 50 B.R. 598 (Bankr. E.D. Va. 1985), the payments at issue were determined to be on account of pre-petition debt in violation of Section 549. Again, nothing in that case even remotely suggests that Section 503(b) expenses are subject to mandatory disallowance under Section 502.

40. For the foregoing reasons, it is clear that even if this Court were to reject the holding of the vast majority of cases determining that Section 502(d) is not applicable to Section 503(b), the "better reasoned cases" cited by Debtors support Onkyo's contention that Section 503(b) expenses are not subject to mandatory disallowance under Section 502. For this additional reason, the Debtors' Objection must be overruled.

**III.    Temporary Disallowance is Unwarranted**

41. In the context of a typical motion seeking to allow a Section 503(b)(9) administrative expense, Section 503(b)(9) claimants often seek payment of their administrative expenses prior to confirmation of a plan. In that context, because of the uncertainties of confirmation and ability to pay all administrative expenses in full as required under the Bankruptcy Code, delaying payment – on account of vagaries in the process and not the outcome of an avoidance action – may be warranted. The case at bar presents a different scenario. This case sits on the eve of confirmation. As provided in Section 1129(a)(9), holders of administrative expenses must be paid in full on the effective date. Accordingly, nothing in Section 1129, or any other Code provision for that matter, would allow the Debtors to hold administrative expenses in abeyance, in effect to disallow them, pending the outcome of any avoidance action that may be brought in the future.

42. In order to comply with the Bankruptcy Code, the Debtors must pay administrative expenses in full on the effective date of the plan. Should the Debtors initiate an

14

adversary proceeding at some point in the future, seeking a return of allegedly preferential transfers, those issues will be decided on a full evidentiary record.

43.     Moreover, even if this Court were to accept Debtors' argument that Section 502(d) could be used to temporarily disallow a Section 503(b)(b)(9) administrative expense, it would be improper to permit such disallowance, temporarily or otherwise, until there was a judicial order determining that Onkyo was, in fact, liable to return any alleged preferential payments. See In re Odom Antennas, Inc., 340 F.3d 705, 708 (8th Cir. 2003)(determining that Section 502(d) can only be used to disallow a claim "after the entity is first adjudged liable"); In re Davis, 889 F.2d 658, 661 (5th Cir. 1989)(observing that the legislative history and policy behind Section 502(d) is to insure compliance with judicial orders after adjudication of a preference or other voidable transfer); see also In re Parker N. Am. Corp., 24 F.3d 1145, 1155 (9th Cir. 1994).

44.     Accordingly, even if this Court were to determine, counter to the great weight of authority, that Section 502(d) can be used with respect to a Section 503(b)(9) administrative expense, it may only disallow such expense after there has been a full judicial determination by way of an adversary proceeding that Onkyo was a recipient of a preferential transfer.

45.     Onkyo reserves the right to amend, modify or supplement this Response prior to a determination being made by the Court regarding this matter and further reserves the right to join in additional responses to the Objection, to the extent these responses are consistent with Onkyo's position herein.

## **CONCLUSION**

WHEREFORE, Onkyo respectfully requests that the Court overrule the Debtors' Fifty-First Omnibus Objection to claims on the grounds set forth herein, direct payment of Onkyo's

15

Section 503(b)(9) administrative expense on the effective date of the plan confirmed in this case, and grant such other and further relief as the Court deems appropriate.

Submitted:  November 4, 2009

/s/  Philip C. Baxa
Philip C. Baxa, Esquire, VSB No. 22977
MercerTrigiani LLP
16 South Second Street
Richmond, Virginia 23219
Telephone: (804) 782-8691
Facsimile: (804) 644-0209

- and -

Larry D. Henin, Esquire
Paul J. Labov, Esquire
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Facsimile: (212) 308-4844

Counsel for Onkyo USA Corporation

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 4th day of November, 2009, this Response will be filed with the Clerk of the Court using the CM/ECF system, and send a true and correct copy of the Response via regular mail, postage prepaid, on November 4, 2009 to:

Greg M. Galardi
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

Dion W. Hayes
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219

Douglas H. Foley
McGuire Woods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510

Chris L. Dickerson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, Illinois 60606

/s/ Philip C. Baxa

R0009382