Stephan W. Milo (VSB #42156)
Whitney J. Levin (VSB #68365)
Wharton Aldhizer and Weaver, PLC
125 S. Augusta Street
Suite 2000
Staunton, VA 24401
Phone: 540.213.7440
Fax: 540.213.0390
Email: smilo@wawlaw.com

Counsel for Claimant (Claim No. 1293)
BISSELL Homecare, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| **CIRCUIT CITY STORES, INC.,** | ) Case No. 08-35653 (KRH) |
| **et al.,** | ) Chapter 11 |
| | ) Jointly Administered |
| Debtors.[1] | ) |
| | ) |

### RESPONSE IN OPPOSTION OF BISSELL HOMECARE, INC. TO DEBTORS' (I) FIFTY-FIRST OMNIBUS OBJECTION TO CERTAIN 503(B)(9) CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE AND THE DEBTORS' BRIEF IN SUPPORT THEREOF

BISSELL Homecare, Inc. ("BISSELL"), by and through its undersigned counsel, respectively submits this Response in opposition to Debtors' (i) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (ii) Motion for a Waiver of The Requirement that the First Hearing on any Response Proceed as a Status Conference and the Debtors' Brief in Support Thereof" and in support thereof states the following;

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CCDistribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Maryland MN, LLC (6116), Courchevel, LLC 9n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

## I. BACKGROUND

1. On November 10, 2008 (the "Petition Date"), the debtors in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code") in this Court.

2. On November 12, 2008, the Court entered its "Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007" (ECF Doc. No. 107) (the "503(b)(9) Bar Date Order") setting December 19, 2008 as the deadline to file claims under §503(b)(9) of the Bankruptcy Code (the "503(b)(9) Bar Date").

3. Consistent with the 503(b)(9) Bar Date Order, BISSELL timely filed its claim arising under §503(b)(9) of the Bankruptcy Code, which claim has been designated as Claim No. 1293, on the claims register maintained by Kurtzman Carson Consultants, in these proceedings, asserting an administration expense in the amount of $48,916.54 (the "BISSELL 503(b)(9) Claim").

4. On September 29, 2009, the Debtors filed the "First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims" (ECF Doc. No. 5124, the "Plan"). Among other things, the Plan states that it will establish a Liquidating Trust on the effective date of the Plan, which will be comprised of all of the Debtors' property and assets. See Plan, at §V(E). The Plan promises to pay (out of the Liquidating Trust) the holders of allowed administrative claims, including Bankruptcy Code §503(b)(9) claims, in cash in full no later than ninety (90) days after such claim is allowed. Id., §§III(A) and V(E).

5. On October 13, 2009, the Debtors filed the "Debtor's (i) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (ii) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference" (ECF Doc. No. 5126, the "Objection") and the Debtors' Brief in Support of Debtors' (i) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (ii) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference" (ECF Doc. No. 5127, the "Debtors' Brief").

6. In the Objection, the Debtors seek entry of an order "temporarily disallowing" $35,450 of the BISSELL 503(b)(9) Claim, thereby temporarily reducing the BISSELL 503(b)(9) Claim from $48,916.54 to $13,466.54. See Objection, ¶9 and Exhibit C. The Debtors base their request solely and exclusively on their contention that BISSELL received an alleged, but not identified, preferential transfer(s) of $35,450. See id., at 5. The Debtors have not otherwise challenged the validity of the BISSELL 503(b)(9) Claim, which, but for the alleged preference asserted in the Objection, must be paid in full on the effective date of the Plan.

7. By this Response, BISSELL opposes the Objection to the extent that it seeks to temporarily disallow any part of the BISSELL 503(b)(9) Claim and requests the Objection be overruled.

8. As set forth below, the Objection is not well founded and must be overruled to the extent it seeks to disallow any portion of the BISSELL 503(b)(9) Claim.

## II. ARGUMENT

9. In order to grant the Objection, the Debtors must establish that: (a) an administrative expense such as the BISSELL 503(b)(9) Claim is subject to disallowance under §502(d) of the Bankruptcy Code; (b) even if §502(d) does apply, the Objection satisfies the requirements of that section; and (c) the Debtors can protect BISSELL from any prejudice that

3

may occur if, assuming the Objection is granted, the Debtors' alleged preference action ultimately fails and the BISSELL 503(b)(9) Claim must be paid in full. As the Debtors cannot meet any of these standards, this Response must be sustained and the Objection must be overruled.

### A. §502(D) DOES NOT APPLY TO DISALLOW OR REDUCTION §503(B)(9) ADMINISTRATIVE EXPENSE

10. The Debtors readily concede that in order for the Objection to be granted, they must establish that Bankruptcy Code §502(d) applies to disallow administrative expenses arising under §503(b)(9). See Debtors' Brief at Part I, II. Despite devoting numerous pages of the Debtors' Brief to this issue, the Debtors have not, and cannot, clear this preliminary hurdle.

11. Indeed, the only Circuit level decision to address the issue unequivocally and persuasively held that §502(d) does not apply to §503(b) administrative expenses. See In re Ames Dept. Stores, Inc., 2009 U.S. App. LEXIS 20764, at *29 (2d. Cir. Sept. 18, 2009). In Ames, the Court undertook an extensive review of the issue and delved into the same case law and legislative history of the Bankruptcy Code upon which the Debtors rely in the Objection. See Ames, 2009 U.S. app. LEXIS 20764, at *13-29 (citing, inter alia, Movitz v. Baker (In re Triple Star Welding, Inc.), 324 B.R. 778, 794 (B.A.P. 9th Cir. 2005); MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.) 291 B.R. 503 (B.A.P. 9th Cir. 2002)).

12. In addition to the cases cited by Ames, see, e.g., Beasley Forest Products, Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.), 297 B.R. 326, 329-31 (Bankr. S.D. Ga. 2003); In re Lids Corp., 260 B.R. 680 (Bankr. D. Del. 2001); Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc. (In re CM Holdings, Inc.), 264 B.R. 141 (Bankr. D. Del. 2000), numerous other lower courts likewise have concluded that §502(d) simply does not apply to administrative expenses under §503(b). See e.g. In re TI Acquisition, LLC, 410 B.R. 742, 748-

4

51 (Bankr. N.D. Ga. 2009); In re USA Labs, Inc., 2006 Bankr. LEXIS 2394, *4 (Bankr. S.D. Fla. Apr. 13, 2006); In re Phoenix Restaurant Group, 2004 Bankr. LEXIS 2186, * (Bankr. M.D. Tenn. Dec. 16, 2004); In re Roberds, Inc., 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004).

13. Moreover, the only reported decisions to directly address the issue presented here have concluded that §502(d) does not apply to administrative expenses arising under §503(b)(9). See In re Plastech Engineered Products, Inc., 394 B.R. 147, 161-164. (Bankr. E.D. Mich. 2008) and In re TI Acquisitions, LLC, 410 B.R. 742, 748-51 (Bankr. N.D. Ga. 2009). In both Plastech and TI Acquisitions, the respective courts overruled the very same argument upon which the Debtors rely as the sole basis for the Objection to the BISSELL 503(b)(9) Claim.

14. Accordingly, because §502(d) does not apply to the BISSELL 503(b)(9) Claim, the Objection must be overruled on this basis alone.

### B. ASSUMING, ARGUENDO, THAT §502(D) DOES APPLY, DEBTORS HAVE FAILED TO MEET THE REQUIREMENTS OF THAT SECTION

15. Section 502(d) of the Bankruptcy Code provides that the Court shall disallow any claim of any entity that is a transferee of a transfer avoidable under, inter alia, section 547, among others. 11 U.S.C. §502(d). The purpose of this section is to assist a debtor in collecting a preferential transfer from a transferor which is refusing to pay.

16. Many courts, including a district court in this district, have found that the debtor must have obtained a judgment in the preference action before section 502(d) can apply. *See* Gold v. Eccleston (In re Dornier Aviation (N. Am.), Inc.), 320 B.R. 831, 836 (E.D. Va. 2005) (holding that section 502(d) applies "only when a fixed amount of adjudicated preference liability remains unpaid – not when an avoidance action has not yet been litigated") (citations omitted); *see also* Cohen v. Tic Fin. Sys. (In re Ampace Corp.), 279 B.R. 145, 163 (Bankr. D. Del. 2002) ("[I]n the instant action, there is not yet a judicial order requiring the turnover of

5

property. As such, 502(d) has not yet become operative."); In re Lids Corp., 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable.") (citing Campbell v. United States (In re Davis), 889 F.2d 658, 662 (5th Cir. 1989)); Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.), 247 B.R. 633, 641 (Bankr. W.D. Va. 2000) (section 502(d) "would not appear applicable unless and until a finding under one of the cited sections had been made and then the claimant had failed to comply with such ruling.") (additional citations omitted). This jurisprudence is consistent with the language of section 502(d) and its use of the definitive "is" rather than the conditional "may be."[2]

17. Even Courts which do not require a formal adjudication for 502(d) to apply, they at least require that the debtor make a *prima facie* showing of a preference. *See* Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.), 319 B.R. 324, 340 (Bankr. D. Conn. 2005) (comparing Seta Corp. of Boca, Inc. v. Atlantic Computer Systems (In re Atlantic Computer Systems), 173 B.R. 858, 862 (S.D.N.Y. 1994) ("[Bankruptcy Code §502(d)] clearly envisions some sort of determination of the claimant's liability before its claims are disallowed . . . .") with Matter of Eye Contact, Inc., 97 B.R. 990, 992 (Bankr. W.D. Wis. 1989) ("The trustee need not commence an avoidance action to bring section 502(d) into play. By making a *prima facie* showing that the transfer is voidable, he can assert the alleged preference defensively under section 502(d) to defeat a proof of claim.")).

18. Here, the Debtors' pleadings fail to come close to establishing a *prima facie* preference case against BISSELL. In the Debtors' Brief, Debtors allege that they have

---

[2] By this Response, BISSELL respectfully incorporates, among others, that certain "Response of Paramount Home Entertainment Inc. to Debtors' (i) Fifty-Second Omnibus Objection to Certain 503(B)(9) Claims and (ii) Motion for a Waiver of the Requirement That the First Hearing on Any Response Proceed as a Status Conference and the Debtors' Brief in Support Thereof" from which this argument is taken.

6

"thoroughly reviewed and analyzed the transfers made to [BISSELL] within the 90 days prior to the Petition Date and for the two-year period prior thereto". See Debtors' Brief at 3. From that review, the Debtors merely "contend" that [BISSELL] was the recipient of one or more "allegedly" preferential transfers. Id.

19. However, despite this allegedly "thorough" review, the Debtors failed (much less prove) to even identify the particular transfer or transfers it alleges were preferentially made to BISSELL. The only reference the Debtors make is a single, lump sum amount on Exhibit C to the Objection labeled "Total Preference", which for BISSELL is listed as $$35,450.00. There is no indication if this "Total Preference" is comprised of one or more transfers, the date(s) on which the transfer(s) was made or whether the "total" amount is the gross transfer(s) as opposed to a net amount after Debtors' purported deduction of any defenses. BISSELL has not been able to identify receipt of any single lump sum payment from the Debtors in the amount of $35,450.00 within the 90 days prior to the Petition Date.

20. Without even this basic information, neither BISSELL nor this Court can evaluate the bona fides of any alleged preferences, let alone conclude that Debtors' bare contention is sufficient to support the drastic relief they request to temporarily disallowance of a portion of the BISSELL 503(b)(9) Claim.

21. Likewise, the Debtors provide no detail whatsoever as to the "various defenses, including the new value defense" which purportedly they evaluated and took into account in determining the net amount of any alleged payments. See Debtors' Brief at 3. Here again, absent this critical information, neither BISSELL nor the Court can evaluate the bona fides of any alleged preference claim, the full amount of which the Debtors seek to avoid paying in the full when due under the Plan.

22. Moreover, from the limited information that is provided, it is clear that the Debtors have misapplied the law and likely overstated the preference amount by failing to acknowledge all applicable new value. The Debtors concede that in considering the new value defense, they "excluded any 'new value' that overlapped with [BISSELL's 503(b)(9) Claim]." See Debtors' Brief at 3-4. Despite the extremely lengthy and heavily annotated case law recited in the Debtors' Brief, the Debtors offer no legal support for the exclusion of 503(b)(9) new value position, and instead just ask this court to "deem it so." See Debtors' Brief at 4.

23. On the contrary, because the invoices comprising BISSELL's 503(b)(9) Claim were unpaid as of the Petition Date, BISSELL is entitled to assert them in full as new value without offset or discount against its administrative expense claim. See In re New York City Shoes, Inc., 880 F.2d 679, 680 (3d Cir. 1989) (concluding that creditor entitled to new value provided invoices not paid "as of the date [the debtor] filed its bankruptcy petition"). See also Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.), 412 F.3d 545, 552 (4th Cir. 2005) (noting that creditor can use open invoices as long as the prepetition debtor [as opposed to postpetition debtor in possession] did not pay those invoices).

24. Finally, the Debtors have failed entirely to consider BISSELL's complete "ordinary course of business" defense (the "OCB Defense") available to it under Bankruptcy Code §547(c)(2). BISSELL is confident that once the Debtors identify the alleged transfers as they are required to do, BISSELL will establish a complete OCB Defense to wholly defeat any alleged preference liability. As such, the Debtors have no basis to "temporary disallow" or offset a portion of the BISSELL 503(b)(9) Claim based on "new value."

### C. THE DEBTORS MUST BE REQUIRED TO BOND OR OTHERWISE PROTECT BISSELL'S INTEREST SHOULD ANY PORTION OF THE OBJECTION BE GRANTED

25. As stated above, §502(d) neither applies with respect to the BISSELL 503(b)(9) Claim nor can the Debtors meet the statute's requirements even if it did apply. Nonetheless, if the Court is inclined to "temporarily disallow" any portion of the BISSELL 503(b)(9) Claim, it should require the Debtors to post a bond or establish a cash reserve in at least the amount of any such disallowance.

26. By requesting "temporary disallowance" of claims based on alleged preferential transfer which have not ever been identified, much less proven, the Debtors are in effect requesting a prejudgment attachment. In order to protect BISSELL as a putative defendant, the Debtors should be required to post cash, a bond or other cash equivalent to ensure that when BISSELL prevails as the preference matter, funds are available to pay the BISSELL 503(b)(9) claim in full. As the Ames Court recognized, if a debtor ultimately is unable to pay a temporarily disallowed claim in the future, the disallowance becomes final and BISSELL will be improperly denied its rights under the Bankruptcy Code and Plan. See Ames, 2009 U.S. App. LEXIS 20764, at *11-12.

27. This protection is similar to what BISSELL would be entitled to under Virginia law which would require the Debtors to post a bond in twice the amount of the "temporary disallowance" in order to get a prejudgment attachment. Va. Code Ann. § 801-537.1(c).

### III. RESERVATION OF RIGHTS

28. BISSELL reserves the right to amend, modify or supplement this Response prior to a determination being made by the Court regarding this matter and further reserves the right to

join in additional responses to the Objection, to the extent these responses are consistent with BISSELL's position herein.

29. Nothing in this Response is intended to waive release, prejudice or compromise in any way, any and all rights of claims, defenses or argument of which BISSELL has or may have in these Chapter 11 proceedings, including those with respect to any attempt by the Debtors to recover any alleged preferential payments (collectively the "Rights"), all of which Rights BISSELL expressly hereby reserves.

### IV. COMPLIANCE WITH NOTICE

30. In accordance with the "Notice of Debtors' (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on Any Response Proceed as a Status Conference," (the "Notice"), BISSELL attaches the "Sworn Declaration and Statement of James M. Racinowski in Support of Bissell Homecare, Inc.", attached hereto as Exhibit A, and hereby designates the following as its "designated representative" and the Notice Address (as required by the Notice):

> Stephan W. Milo, Esquire
> c/o Wharton Aldhizer & Weaver PLC
> 125 S. Augusta Street
> Suite 2000
> Staunton, Virginia 24401
> Phone: (540) 885-0199
> Fax: (540) 213-0390

31. For an explanation of claim as required by the Notice, BISSELL refers to the BISSELL 503(b)(9) Claim as defined above and filed previously in this case.

### V. CONCLUSION

WHEREFORE, BISSELL respectfully requests that the Court overrule the Debtors' Fifty-First Omnibus Objection to claims on the grounds set forth herein, direct payment of

10

BISSELL's §503(b)(9) Claim in full as an administrative expense on the effective date of the Plan, and grant such other and further relief as the Court deems appropriate.

Dated: Staunton, Virginia
November 4, 2009

          WHARTON, ALDHIZER & WEAVER, P.L.C.

          /s/ Stephan W. Milo
          STEPHAN W. MILO, ESQ. (VSB#42156)
          WHITNEY J. LEVIN (VSB#68365)
          The American Hotel
          125 South Augusta Street, Suite 2000
          Staunton, VA 24401
          (540) 213-7440 – Telephone
          (540) 213-0390 – Facsimile
          Counsel for BISSELL Homecare, Inc.

S0903583