OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
Fredrick J. Levy, Esq.
Park Avenue Tower
65 East 55th Street
New York, New York 10022
212.451.2300
*Counsel for ON Corp. USA, Inc. and ON Corp.*


DUANE MORRIS LLP
Denyse Sabagh, Esquire (Va. I.D. No. 17003)
Duane Morris LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
(202) 776-7817

 DUANE MORRIS LLP
Junghye June Yeum, Esq.
William C. Heuer, Esq.
1540 Broadway
New York, New York 10036
212-692-1070
*Counsel for Korea Export Insurance Company*


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. Case No. 08-35653 (MFW) |
| CIRCUIT CITY STORES INC., et al., | |
| Debtors. | Jointly Administered |

834714-4

**RESPONSE OF KOREA EXPORT INSURANCE COMPANY, ON CORP. USA, INC.
AND ON CORP. REGARDING DEBTORS' FORTY-NINTH OMNIBUS OBJECTION
TO CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9) CLAIMS AND MOTION
FOR (I) AUTHORITY TO SET OFF AGAINST SUCH EXPENSES AND CLAIMS AND
(II) A WAIVER OF THE REQUIREMENT THAT THE FIRST
<u>HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE</u>**

Korea Export Insurance Company ("KEIC") and On Corp.USA, Inc. and On Corp.

("ON"), by and through their undersigned counsel, hereby respond to the Debtors' Forty-Ninth

Omnibus Objection (the "Objection") and state as follows:

<u>Introduction</u>

1.      By the Objection, the Debtors seek to take away from certain creditors the benefit

that Congress conferred upon them in Bankruptcy Code § 503(b)(9).  The Debtors seek to offset

an alleged pre-petition receivable due to the Debtors from ON (the "Receivable") against

503(b)(9) Claim No. 1446 filed by ON (the "503(b)(9) Claim").  This offset will result in treating

the 503(b)(9) Claim which has an administrative priority the same as ON's General Unsecured

Claim (as defined below).  This would strip from ON Congress' intended benefit of elevating a

limited portion of a supplier's claim above that of a general unsecured claim, and to provide a

more certain and greater distribution to such creditors.  In accordance with the priorities of

distribution enacted by Congress, ON seeks to exercise its option to offset the Receivable against

its  General Unsecured Claim.  The limited case law on the choice of allocation of payments or

offsets holds that the allocation choice rests with the creditor and not the debtor, except in

limited circumstances not present herein.  Finally, to the extent that the Court, despite instructive

case law to the contrary, determines that it is within its discretion to determine the allocation of

the Receivable offset, the Court should direct allocation of the offset to the General Unsecured

Claim following the mandate of section 503(b)(9) and the intent of Congress.  To do otherwise

would be to completely distort, if not ignore, the distribution scheme enacted by Congress.

2

<u>Facts</u>

2.       ON is a licensee and manufacturer of Proscan televisions.  Shortly before the

Debtors' bankruptcy filing, ON began selling certain of these televisions to the Debtors.  The

Debtors did not pay for any of the televisions delivered to it by ON.

3.       ON timely filed a general unsecured claim in the amount of $1,708,920 for

televisions delivered outside of the 20-day window of section 503(b)(9) (Claim No. 6819, the

"General Unsecured Claim").

4.       ON timely filed the 503(b)(9) Claim in the amount of $7,713,340 (Claim No.

1239).  Subsequently, ON determined that KEIC had partially insured the transactions on which

ON's 503(b)(9) claim was based.  As a result of agreements between ON and KEIC, ON

transferred $4,713,340.80 of the claim to KEIC (the Notice of Transfer of Claim Other Than for

Security was filed on March 30, 2009, Docket No. 2870).  Thus, after the transfer, both ON and

KEIC had economic interests in part of the 503(b)(9) claim which arose out of ON's transactions

with the Debtors.

5.       On July 8, 2009, KEIC filed an amended proof of claim attaching a spreadsheet

detailing by invoice number and amount the bifurcation of the claim between ON and KEIC,

together with copies of the invoices and proofs of delivery (Claim No. 1446).  This is the

503(b)(9) Claim which is identified in the Objection.  However, the Objection does not specify

which portion of the 503(b)(9) Claim – i.e., the portion held by KEIC or the portion which

remained with ON -- is subject to the Objection inasmuch as the Objection is not related to any

specific invoices or sales that gave rise to the 503(b)(9) Claim itself.

6.       ON has sold and transferred its portion of the 503(b)(9) Claim to Hain Capital

Group LLC ("Hain").  A Notice of Transfer will be filed soon.  ON is defending the Objection

3

because under both its insurance agreement with KEIC and its assignment agreement with Hain,

ON remains liable to either Hain or KEIC for any reduction of the 503(b)(9) claim.  To the

extent that there is a valid Receivable, it is owed by ON.

The Objection

7.      The Objection alleges that the Receivable is a $380,345.00 obligation owed by the

holder of the 503(b)(9) Claim to the Debtors.  However, based upon the circumstances set forth

above, the Receivable is owed by ON.  To date, the Debtors have provided to ON's counsel only

a summary spreadsheet list of the alleged charges, but no underlying documentation to support

those claims.

8.      The parties continue to investigate the bona fides of the Receivable.  This will not

be the subject of the initial hearing (on November 12, 2009) on the Debtor's Objection or this

Response, but rather will be put over for a further hearing.  The initial hearing herein is to

determine legal issues only.  The Objection takes the legal position that the offsets are to be

taken first against creditors' section 503(b)(9) claims, not against their general unsecured claims.

Thus, preeminent among the legal issues to be determined at the initial hearing is whether such

allocation of the Receivable offset first against the 503(b)(9) Claim is permissible.  ON and

KEIC maintain it is not and assert to the contrary that the Receivable offset should first be

allocated as they wish, against ON's General Unsecured Claim.

Argument

9.      Despite the clear mandate of section 503(b)(9) to elevate and protect the 20-day

claims, the Objection does not cite to any provision of the Bankruptcy Code or any case law that

directly support the contrary result the Debtors seek.  In fact, there is no statutory or decisional

4

law that directly supports of the allocation of the Receivable offset against ON's 503(b)(9)

Claim[1] rather than against its General Unsecured Claim.

10.     In implicit recognition of this lack of authority, the Objection relies upon two, and

only two, decisions relevant herein, each of which does not actually support the Objection

(Objection, ¶ 18).  One decision is purported to stand for the proposition that a debtor may offset

a 503(b)(9) claim against a prepetition receivable and the other for the proposition that the

bankruptcy court has the authority to order the allocation of such offset.

11.     As to the former, the Objection relies upon the flawed decision in Brown & Cole

Stores LLC v. Assoc. Grocers, Inc. (In re Brown & Cole Stores, LLC, 375 B.R. 873 (B.A.P. 9th

Cir. 2007).  In Brown & Cole, the court interpreted Bankruptcy Code § 553.  However, by its

express terms, section 553 applies to a creditor's right of setoff, not the debtor's.  In addition, the

court actually remanded the matter for a determination of whether there was any equitable basis

of denial of setoff rights.  Id. at 881.  Moreover, for the purpose of enforcing Bankruptcy Code

502(d), other courts have found that administrative claims and even specifically 503(b)(9) claims

are not the same as other unsecured claims and should not be treated as such.  See ASM Capital,

LP v. Ames (In re Ames), 2009 WL 2972510 (C.A. 2009) (administrative claims not subject to

502(d) objection); In re Plastech Engineered Products, Inc., 394 B.R. 147 (Bankr. E.D. Mich.

2008) (503(b)(9) claims not subject to 502(d) objection).  Accordingly, there is no basis to

permit the setoff of the Receivable against the 503(b)(9) Claim is in fact permissible.

12.     Even if this Court holds that such setoff is permissible, it is improper under the

circumstances herein.  The Objection's second incorrect proposition is that the bankruptcy court

has authority to allocate the claim or offset herein (¶ 18).  For this, the Objection wrongly relies

---

[1] As noted above, the 503(b)(9) claim arises out of transactions between ON and the Debtors, and will be discussed herein as "ON's 503(b)(9) Claim."  However, and again as noted above, KEIC and Hain now hold economic interests in "ON's 503(b)(9) claim" as a result of certain transactions.

upon United States Internal Revenue Serv. v Martinez (In re Martinez), 2007 WL 295406 (M.D.

Pa. 2007).  Martinez is part of the only line of cases which delves into the allocation of payments

or offsets between claims of different priorities.  Those cases all pertain to tax claims of the

Internal Revenue Service ("IRS").  They are instructive for the issue at hand and lead to the

conclusions that the Debtors' reliance upon Martinez is misplaced, that the Receivable should be

offset against the General Unsecured Claim, and that this Court does not have discretion to direct

otherwise.

13.    The general rule applied by courts in the IRS allocation cases is that when a tax

payment is deemed to be "involuntary", the allocation of the payment or offset will be

determined by the IRS, and when it is deemed to be "voluntary" it will be determined by the

debtors.  See In re R.L. Inge Dev. Corp., 78 B.R. 793,795 (Bankr. E.D.Va. 1987) ("Because the

Debtor's payment was involuntary, the I.R.S. has the right to decide how to apply said payments

to its tax liens."); In re Herald, 66 B.R. 169, 171 (Bankr. E.D.N.C. 1986) ("When the payments

are involuntary, the taxpayer lacks the authority to direct the application of the payment").  This

policy "stems from the common law rule generally recognized between creditors and debtors that

the debtor may indicate which debt it intends to pay when it voluntarily submits a payment to a

creditor,  but may not dictate the application of funds that the creditor involuntarily collects from

it."  United States v Pepperman, 976 F.2d 123, 127 (3rd Cir. 1992).  See also In re M.C. Tooling

Consultants, Inc., 165 B.R. 590, (Bankr. D.S.C. 1993); In re F.A. Dellastatious, Inc., 121 B.R.

487, 491 (Bankr. E.D.Va. 1990).

14.    Courts have concluded that payments made in the bankruptcy context are

involuntary.  Pepperman, 976 F.2d at 127; see also  In re Frank Meador Buick, Inc., 1991 WL

209824, at *3 (4th Cir. 1991) ("It is the general rule that payments to the IRS on behalf of a

6

debtor which is in Chapter 7 bankruptcy are not voluntary payments"); <u>In re Jehan-Das, Inc.</u>, 925 F.2d 237, 238 (8th Cir. 1991) (Payment of proceeds from a debtor's liquidated bankruptcy estate to the Internal Revenue Service is involuntary).  <u>In re Optics of Kansas, Inc.</u>, 132 B.R. 446, 448 (Bankr. D.Kan. 1991) ("Payments made by the debtors to the IRS under the Bankruptcy Court's jurisdiction were not voluntary. It is the involvement of the court and not the type of bankruptcy which makes payments by a debtor involuntary."); <u>see also</u> <u>Herald</u>, 66 B.R. at 171 ("The bankruptcy court's involvement in the distribution of the funds to the IRS is enough to make the payments involuntary").

15.     Payment on the 503(b)(9) Claim is a payment mandated by the Bankruptcy Code and is therefore "involuntary."  Accordingly, the allocation of the Receivable offset should be determined by the creditor, not by the debtor.

16.     The Supreme Court has found a limited exception to the above for reorganization cases.  In <u>United States v Energy Resources Co., Inc.</u>, 495 U.S. 545 (1990) (emphasis supplied), the Supreme Court held that the bankruptcy court has discretion to determine the allocation of the debtor's distribution "where it concludes that this action is necessary for a *reorganization's* success."  <u>Martinez</u>, 2007 WL 295406, at *3, relied upon by the Debtors and discussed above, follows the <u>Energy Resources</u> holding that in a Chapter 13 reorganization, the court's discretion extends to allocation in order to help preserve the feasibility of a rehabilitation plan.

17.     However, <u>Martinez</u> is inapposite to the matter at hand as <u>Martinez</u> was a reorganization case, and the decision follows the Supreme Court exception which is limited to reorganization cases.  The Debtors' cases herein are liquidations and thereby outside of the ambit of <u>Energy Resources</u>.  Indeed, the overwhelming majority of courts do not permit expansion of <u>Energy Resources</u> and hold that judicial discretion to alter the creditor's preferred allocation is

7

limited to reorganization cases and is not applicable to liquidation cases.  See Pepperman 976

F.2d at 130 ("Such considerations have no application where Chapter 7 liquidation is involved

because designation of tax payments cannot aid the debtor's reorganization efforts"); In re Optics

of Kansas, Inc., 132 B.R. at 448 (holding Energy Resources inapplicable where there is no

proposed Chapter 11 plan); Locks v. U.S. Trustee, 157 B.R. 89, 96, (W.D.Pa.  1993) (noting the

vast majority of courts that have considered the scope of the Energy Resources decision have

found it inapplicable to liquidations under Chapter 7 or Chapter 11, and limited the decision to

Chapter 11 reorganizations); In re Tillery Mechanical Contractors, Inc., 319 B.R. 695, 697

(Bankr. S.D.Ala. 2004) ("A bankruptcy court does not have the authority to order such a

designation of payments in a liquidation case."), citing In re Kare Kemical, Inc., 935 F.2d 243,

244-45 (11th Cir. 1991);  U.S. v. BTJ, Inc., 2006 WL 3197269, at *1 (S.D. Fla. 2006)

(liquidation case reversing the bankruptcy court's determination that it could order the IRS to

designate its share of the sale proceeds to the trust fund portion of its claim under the Energy

Resources precedent).

        18.    Once again, looking to the IRS cases for instruction, the Debtors' cases herein are

liquidations, and there is no basis for this court to use its discretion to alter the creditors'

determination that any receivable claim be offset against their general unsecured claims.

        19.    We recognize that a small minority of courts have allowed judicial discretion with

regard to allocation even in liquidation situations.  See In re 20th Century Enterprises, Inc., 1994

WL 779356, at *4 (Bankr. N.D.Miss. 1994); In re Deer Park, Inc., 136 B.R. 815, 818 (9th Cir.

1992).  There is no reason for this Court to follow these outlier decisions.  However, even should

this Court extend the Supreme Court's limited exception and determine that this Court does have

discretion to alter the creditors' allocation choice, the result should still be the same.  In

exercising such discretion, the Court should be guided Congress' intent in enacting Bankruptcy Code § 503(b)(9), and the fact that allowing offset against that administrative claim would strip section 503(b)(9) of its power and relegate the claims Congress chose to elevate back down to the status of general unsecured claims.

20.     By enacting section 503(b)(9), Congress intended to elevate what would otherwise be a standard prepetition unsecured claim to special status with administrative priority, to provide a vehicle to increase payments to creditors that shipped goods to a debtor in the ordinary course of business.  See In re TI Acquisition, LLC, 410 B.R. 742, 746 (Bankr. N.D.Ga. 2009) (provision shows "Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors."); In re Plastech Engineered Products, Inc., 394 B.R. 147, 164 (Bankr .E.D.Mich. 2008) ("[Congress] took this special class of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses").

21.     Were this court to allow the Debtors to offset their Receivable against the 503(b)(9) Claim, as opposed to the General Unsecured Claim, the intent of Congress in enacting 503(b)(9) would be frustrated, as the creditor would no longer be in possession of a claim with enhanced priority.  The 503(b)(9) Claim would have no more value than the General Unsecured Claim, despite Congress' clear intent to the contrary.

22.     Finally, the Debtors fall back on the Court's equitable powers under Bankruptcy Code §105 (Objection, ¶ 18).  This is unavailing as the Debtors do not invoke such authority to "effect the provisions of the Bankruptcy Code".  To the contrary, as shown above, they do so to undermine and eliminate a provision.  Accordingly, if this Court holds that it is within its

9

discretion to alter the creditor's wishes to allocate the Receivable offset to its general unsecured

claim, that discretion should reach the same result.

Conclusion

For all of the above-stated reasons, ON and KEIC respectfully request that the Objection

be denied.

Dated: New York, New York
       November 4, 2009

834714-4

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Fredrick J. Levy (FL 0670)
Park Avenue Tower
65 East 55th Street
New York, New York 10022
212.451.2300


By:_____/s/___Fredrick Levy_____
    Fredrick J. Levy
*Counsel for On Corp. USA, Inc. and On Corp.*

DUANE MORRIS LLP
Denyse Sabagh (DS17003)
Junghye June Yeum (JH7000)
William C. Heuer (WH8217)
1540 Broadway
New York, New York 10036
212-692-1070

Denyse Sabagh, Esquire (Va. I.D. No. 17003)
Duane Morris LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
(202) 776-7817


*Counsel for Korea Export Insurance Company*


By:  _____/s/ Denyse Sabagh_____
        Denyse Sabagh
        Junghye June Yeum
        William C. Heuer

11