| | |
|---|---|
| Mona M. Murphy, Esquire<br>Virginia Bar No. 21589<br>Akerman Senterfitt LLP<br>8100 Boone Blvd., Suite 700<br>Vienna, VA 22182<br>(703) 790-8750<br>*Local Counsel for Thomson, Inc*. | OLSHAN GRUNDMAN FROME<br>ROSENZWEIG & WOLOSKY LLP<br>Fredrick J. Levy, Esquire<br>Jayme M. Bethel (Awaiting Admission)<br>Park Avenue Tower<br>65 East 55th Street<br>New York, New York 10022<br>(212) 451.2300<br>*Counsel for Thomson, Inc.  (Pro Hac Vice Motion pending)* |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES INC., et al.,<br><br>Debtors. | Chapter 11<br>Case No. Case No. 08-35653 (MFW)<br><br><br>Jointly Administered |

**THOMSON INC.'S RESPONSE REGARDING DEBTORS' FORTY-EIGHTH OMNIBUS OBJECTION TO CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9) CLAIMS AND MOTION FOR (I) AUTHORITY TO SET OFF AGAINST SUCH EXPENSES AND CLAIMS AND (II) A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS
<u>A STATUS CONFERENCE</u>**

Thomson Inc. ("Thomson") by and through its undersigned counsel, hereby responds to the Debtors' Forty-Eighth Omnibus Objection (the "Objection") (Docket No. 5211) and states as follows:

<u>Introduction</u>

1. By the Objection, the Debtors seek to take away from certain creditors the benefit that Congress conferred upon them in Bankruptcy Code § 503(b)(9).  The Debtors seek to offset an alleged pre-petition receivable due to the Debtors from Thomson (the "Receivable") against 503(b)(9) Claim No. 1059 filed by Thomson (the "503(b)(9) Claim").  This offset will result in treating the 503(b)(9) Claim which has an administrative priority the same as

Thomson's General Unsecured Claim (as defined below).  This would strip from Thomson Congress' intended benefit of elevating a limited portion of a supplier's claim above that of a general unsecured claim, and to provide a more certain and greater distribution to such creditors.  In accordance with the priorities of distribution enacted by Congress, Thomson seeks to exercise its option to offset the Receivable against its General Unsecured Claim.  The limited case law on the choice of allocation of payments or offsets holds that the allocation choice rests with the creditor and not the debtor, except in limited circumstances not present herein.  Finally, to the extent that the Court, despite instructive case law to the contrary, determines that it is within its discretion to determine the allocation of the Receivable offset, the Court should direct allocation of the offset to the General Unsecured Claim following the mandate of section 503(b)(9) and the intent of Congress.  To do otherwise would be to completely distort, if not ignore, the distribution scheme enacted by Congress.

Facts

2. Thomson supplied the Debtors with cordless telephones and related accessories. Thomson timely filed the 503(b)(9) Claim in the amount of $446,517.08 for goods delivered to the Debtors in the 20 days prior to the bankruptcy filing (Claim No. 1059).

3. Thomson has two other claims against the Debtors.  In the pre-petition period, in addition to the 503(b)(9) Claim, Thomson delivered to the Debtors goods with an invoice value of $681,163.28 which remains unpaid (the "General Unsecured Claim").  Thomson did not file a proof of claim therefor.[1]

The Objection

---

[1] Although Thomson did not file a proof of claim for its General Unsecured Claim and is not entitled to a distribution thereof, Thomson is entitled to use this claim as an offset to the Receivable.  See Davidovich v. Welton (In re Davidovich) 901 F.2d 1553, 1539 (10th Cir 1990)

{TY089142;1}2

834752-1

4. The Objection alleges that there is a $282,809.77 obligation owed by Thomson to the Debtors (the "Receivable") and seeks to offset the Receivable against the 503(b)(9) Claim, thereby reducing the 503(b)(9) Claim to $163,707.31.

5. The Debtors have provided certain information regarding the alleged Receivable and Thomson is investigating. The amount of the Receivable is not the subject of the initial hearing on the Objection. Similarly, the amount of Thomson's General Unsecured Claim and Administrative Claim are not at issue at the initial hearing. At the appropriate time, Thomson shall provide information to the Debtors regarding its claims and seek to offset the Receivable against Thomson's General Unsecured Claim.

## Argument

6. Despite the clear mandate of section 503(b)(9) to elevate and protect the 20-day claims, the Objection does not cite to any provision of the Bankruptcy Code or any case law that directly support the contrary result the Debtors seek. In fact, there is no statutory or decisional law that directly supports of the allocation of the Receivable offset against Thomson's 503(b)(9) Claim rather than against its General Unsecured Claim.

7. In implicit recognition of this lack of authority, the Objection relies upon two, and only two, decisions relevant herein, each of which does not actually support the Objection (Objection, ¶ 18). One decision is purported to stand for the proposition that a debtor may offset a 503(b)(9) claim against a prepetition receivable and the other for the proposition that the bankruptcy court has the authority to order the allocation of such offset.

8. As to the former, the Objection relies upon the flawed decision in Brown & Cole Stores LLC v. Assoc. Grocers, Inc. (In re Brown & Cole Stores, LLC, 375 B.R. 873 (B.A.P. 9th Cir. 2007). In Brown & Cole, the court interpreted Bankruptcy Code § 553. However, by its

{TY089142;1}3

834752-1

express terms, section 553 applies to a creditor's right of setoff, not the debtor's.  In addition, the court actually remanded the matter for a determination of whether there was any equitable basis of denial of setoff rights.  *Id.* at 881.  Moreover, for the purpose of enforcing Bankruptcy Code 502(d), other courts have found that administrative claims and even specifically 503(b)(9) claims are not the same as other unsecured claims and should not be treated as such.  See <u>ASM Capital, LP v. Ames (In re Ames)</u>, 2009 WL 2972510 (C.A. 2009) (administrative claims not subject to 502(d) objection); <u>In re Plastech Engineered Products, Inc.</u>, 394 B.R. 147 (Bankr. E.D. Mich. 2008) (503(b)(9) claims not subject to 502(d) objection).  Accordingly, there is no basis to permit the setoff of the Receivable against the 503(b)(9) Claim is in fact permissible.

9. Even if this Court holds that such setoff is permissible, it is improper under the circumstances herein.  The Objection's second incorrect proposition is that the bankruptcy court has authority to allocate the claim or offset herein (¶ 18).  For this, the Objection wrongly relies upon <u>United States Internal Revenue Serv. v Martinez (In re Martinez)</u>, 2007 WL 295406 (M.D. Pa. 2007).  <u>Martinez</u> is part of the only line of cases which delves into the allocation of payments or offsets between claims of different priorities.  Those cases all pertain to tax claims of the Internal Revenue Service ("IRS").  They are instructive for the issue at hand and lead to the conclusions that the Debtors' reliance upon <u>Martinez</u> is misplaced, that the Receivable should be offset against the General Unsecured Claim, and that this Court does not have discretion to direct otherwise.

10. The general rule applied by courts in the IRS allocation cases is that when a tax payment is deemed to be "involuntary", the allocation of the payment or offset will be determined by the IRS, and when it is deemed to be "voluntary" it will be determined by the debtors.  See <u>In re R.L. Inge Dev. Corp.</u>, 78 B.R. 793,795 (Bankr. E.D.Va. 1987) ("Because the

Debtor's payment was involuntary, the I.R.S. has the right to decide how to apply said payments to its tax liens."); In re Herald, 66 B.R. 169, 171 (Bankr. E.D.N.C. 1986) ("When the payments are involuntary, the taxpayer lacks the authority to direct the application of the payment").  This policy "stems from the common law rule generally recognized between creditors and debtors that the debtor may indicate which debt it intends to pay when it voluntarily submits a payment to a creditor, but may not dictate the application of funds that the creditor involuntarily collects from it."  United States v Pepperman, 976 F.2d 123, 127 (3rd Cir. 1992).  See also In re M.C. Tooling Consultants, Inc., 165 B.R. 590, (Bankr. D.S.C. 1993); In re F.A. Dellastatious, Inc., 121 B.R. 487, 491 (Bankr. E.D.Va. 1990).

11. Courts have concluded that payments made in the bankruptcy context are involuntary. Pepperman, 976 F.2d at 127; see also In re Frank Meador Buick, Inc., 1991 WL 209824, at *3 (4th Cir. 1991) ("It is the general rule that payments to the IRS on behalf of a debtor which is in Chapter 7 bankruptcy are not voluntary payments"); In re Jehan-Das, Inc., 925 F.2d 237, 238 (8th Cir. 1991) (Payment of proceeds from a debtor's liquidated bankruptcy estate to the Internal Revenue Service is involuntary). In re Optics of Kansas, Inc., 132 B.R. 446, 448 (Bankr. D.Kan. 1991) ("Payments made by the debtors to the IRS under the Bankruptcy Court's jurisdiction were not voluntary. It is the involvement of the court and not the type of bankruptcy which makes payments by a debtor involuntary."); see also Herald, 66 B.R. at 171 ("The bankruptcy court's involvement in the distribution of the funds to the IRS is enough to make the payments involuntary").

12. Payment on the 503(b)(9) Claim is a payment mandated by the Bankruptcy Code and is therefore "involuntary."  Accordingly, the allocation of the Receivable offset should be determined by the creditor, not by the debtor.

13. The Supreme Court has found a limited exception to the above for reorganization cases. In United States v Energy Resources Co., Inc., 495 U.S. 545 (1990) (emphasis supplied), the Supreme Court held that the bankruptcy court has discretion to determine the allocation of the debtor's distribution "where it concludes that this action is necessary for a *reorganization's* success." Martinez, 2007 WL 295406, at *3, relied upon by the Debtors and discussed above, follows the Energy Resources holding that in a Chapter 13 reorganization, the court's discretion extends to allocation in order to help preserve the feasibility of a rehabilitation plan.

14. However, Martinez is inapposite to the matter at hand as Martinez was a reorganization case, and the decision follows the Supreme Court exception which is limited to reorganization cases. The Debtors' cases herein are liquidations and thereby outside of the ambit of Energy Resources. Indeed, the overwhelming majority of courts do not permit expansion of Energy Resources and hold that judicial discretion to alter the creditor's preferred allocation is limited to reorganization cases and is not applicable to liquidation cases. See Pepperman 976 F.2d at 130 ("Such considerations have no application where Chapter 7 liquidation is involved because designation of tax payments cannot aid the debtor's reorganization efforts"); In re Optics of Kansas, Inc., 132 B.R. at 448 (holding Energy Resources inapplicable where there is no proposed Chapter 11 plan); Locks v. U.S. Trustee, 157 B.R. 89, 96, (W.D.Pa. 1993) (noting the vast majority of courts that have considered the scope of the Energy Resources decision have found it inapplicable to liquidations under Chapter 7 or Chapter 11, and limited the decision to Chapter 11 reorganizations); In re Tillery Mechanical Contractors, Inc., 319 B.R. 695, 697 (Bankr. S.D.Ala. 2004) ("A bankruptcy court does not have the authority to order such a designation of payments in a liquidation case."), citing In re Kare Kemical, Inc., 935 F.2d 243, 244-45 (11th Cir. 1991); U.S. v. BTJ, Inc., 2006 WL 3197269, at *1 (S.D. Fla. 2006)

(liquidation case reversing the bankruptcy court's determination that it could order the IRS to designate its share of the sale proceeds to the trust fund portion of its claim under the <u>Energy Resources</u> precedent).

15. Once again, looking to the IRS cases for instruction, the Debtors' cases herein are liquidations, and there is no basis for this court to use its discretion to alter the creditors' determination that any receivable claim be offset against their general unsecured claims.

16. We recognize that a small minority of courts have allowed judicial discretion with regard to allocation even in liquidation situations.  See <u>In re 20th Century Enterprises, Inc.</u>, 1994 WL 779356, at *4 (Bankr. N.D.Miss. 1994); <u>In re Deer Park, Inc.</u>, 136 B.R. 815, 818 (9th Cir. 1992).  There is no reason for this Court to follow these outlier decisions.  However, even should this Court extend the Supreme Court's limited exception and determine that this Court does have discretion to alter the creditors' allocation choice, the result should still be the same.  In exercising such discretion, the Court should be guided Congress' intent in enacting Bankruptcy Code § 503(b)(9), and the fact that allowing offset against that administrative claim would strip section 503(b)(9) of its power and relegate the claims Congress chose to elevate back down to the status of general unsecured claims.

17. By enacting section 503(b)(9), Congress intended to elevate what would otherwise be a standard prepetition unsecured claim to special status with administrative priority, to provide a vehicle to increase payments to creditors that shipped goods to a debtor in the ordinary course of business.  See <u>In re TI Acquisition, LLC</u>, 410 B.R. 742, 746 (Bankr. N.D.Ga. 2009) (provision shows "Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors."); <u>In re Plastech Engineered Products, Inc.</u>, 394 B.R. 147,

164 (Bankr .E.D.Mich. 2008) ("[Congress] took this special class of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses").

18. Were this court to allow the Debtors to offset their Receivable against the 503(b)(9) Claim, as opposed to the General Unsecured Claim, the intent of Congress in enacting 503(b)(9) would be frustrated, as the creditor would no longer be in possession of a claim with enhanced priority. The 503(b)(9) Claim would have no more value than the General Unsecured Claim, despite Congress' clear intent to the contrary.

19. Finally, the Debtors fall back on the Court's equitable powers under Bankruptcy Code §105 (Objection, ¶ 18). This is unavailing as the Debtors do not invoke such authority to "effect the provisions of the Bankruptcy Code". To the contrary, as shown above, they do so to undermine and eliminate a provision. Accordingly, if this Court holds that it is within its discretion to alter the creditor's wishes to allocate the Receivable offset to its general unsecured claim, that discretion should reach the same result.

## Conclusion

For all of the above-stated reasons, Thomson respectfully requests that the Objection be denied.

Dated: November 5, 2009                    Akerman Senterfitt LLP

                                           By:     /s/  Mona M. Murphy
                                           Mona M. Murphy, Esquire (VSB No. 21589)
                                           8100 Boone Blvd., Suite 700
                                           Vienna, VA 22182
                                           Tel: (703) 790-8750
                                           Fax: (703) 448-1767

{TY089142;1}8

834752-1

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Frederick J. Levy (Pro Hac Vice pending)
Jayme M. Bethel (Awaiting Admission)
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(202) 451-2300

*Counsel for Thomson, Inc.*