Paul V. Shalhoub (*pro hac vice admission pending*)
Terence K. McLaughlin  (*pro hac vice admission pending*)
Jeanna L. Composti
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

    - and -

Bruce H. Matson (VSB No. 22874)
Christopher L. Perkins (VSB No. 41783)
LECLAIRRYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA  23219
(804) 783-2003

Counsel to Olympus Corporation and Olympus Imaging America, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
------------------------------------------------------------ x
In re                               :      Chapter 11
                                    :
CIRCUIT CITY STORES, INC.,          :      Case No. 08-35653 (KRH)
et al.,                             :
                                    :      JOINTLY ADMINISTERED
                    Debtors.        :
------------------------------------------------------------ x
```

**RESPONSE OF OLYMPUS CORPORATION AND OLYMPUS IMAGING AMERICA, INC. TO DEBTORS' (I) FIFTY-FIRST OMNIBUS OBJECTION TO CERTAIN 503(b)(9) CLAIMS AND (II) MOTION FOR A WAIVER OF THE REQUIREMENT THAT THE <u>FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................2

    I.    THE ADMINISTRATIVE EXPENSES ARE NOT SUBJECT TO
DISALLOWANCE UNDER SECTION 502(d). ...................................................2

        A.    The Bankruptcy Code Distinguishes Between Claims And
Administrative Expenses. ...........................................................3

            (i)    Administrative Expenses Are Governed By Section 503. ...............3

            (ii)    Claims Are Governed By Sections 501 and 502. ..........................5

        B.    The Words And Structure Of The Bankruptcy Code Compel The
Conclusion That Section 502(d) Is Inapplicable To Section 503(b)
Administrative  Expenses. ...........................................................7

        C.    Excepting Administrative Expenses From The Reach Of Section
502(d) Is Consistent With The Policies Underlying Sections 502(d)
And 503(b). ...........................................................................12

        D.    Section 503(b)(9) Administrative Expenses Should Not Be
Analyzed Any Differently Than Any Other Administrative
Expense Allowed Under Section 503(b)......................................13

    II.    EVEN IF SECTION 502(d) WERE APPLICABLE TO THE
ADMINISTRATIVE EXPENSES, DISALLOWANCE IS
NEVERTHELESS PREMATURE.......................................................16

CONCLUSION...........................................................................................20

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                                    <u>Page</u>

*ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*,
    582 F.3d 422 (2d Cir. 2009)......................................................................................*passim*

*Beasley Forest Prods., Inc. v. Durango Ga. Paper Co.*
    *(In re Durango Ga. Paper Co.)*, 297 B.R. 326 (Bankr. S.D. Ga. 2003).................*passim*

*In re Bookbinder's Rest., Inc.*, No. 06-12302ELF, 2006 WL 3858020
    (Bankr. E.D. Pa. Dec. 28, 2006) ................................................................................. 4, 5

*Brown & Cole Stores, LLC v. Associated Grocers, Inc.*
    *(In re Brown & Cole Stores, LLC)*, 375 B.R. 873 (9th Cir. BAP 2007)........................... 5

*Campbell v. U.S. (In re Davis)*, 889 F.2d 658 (5th Cir. 1989).................................................. 16

*Camelot Music, Inc. v. MHW Adver. & Pub. Relations, Inc.*
    *(In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000) ........................... 7, 8, 11

*In re Chase & Sanborn Corp.*, 124 B.R. 368 (Bankr. S.D. Fla. 1991) ........................................ 6

*Enron Corp. v. Ave. Special Situations Fund II, LP*
    *(In re Enron Corp.)*, Bankruptcy No. 01-16034, 2006 WL 832674
    (Bankr. S.D.N.Y. Mar. 31, 2006)................................................................................. 18

*F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120
    S.Ct. 1291, 146 L.Ed.2d 121 (2000) .............................................................................. 3

*Holloway v. I.R.S. (In re Odom Antennas, Inc.)*, 340 F.3d 705 (8th Cir. 2003) ........................ 16

*In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001) .......................................................*passim*

*Mktg. Res. Int'l Corp. v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*,
    35 B.R. 353 (Bankr. E.D. Pa. 1984) ............................................................................. 17

*In re Metiom, Inc.*, 301 B.R. 634 (Bankr. S.D.N.Y. 2003)........................................................ 18

*MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503
    (9th Cir. BAP 2002)..........................................................................................*passim*

*Mountaineer Coal Co. v. Liberty Mut. Ins. Co.*
    *(In re Mountaineer Coal Co.)*, 247 B.R. 633 (Bankr. W.D .Va. 2000) ........................ 17

*Parker N. Am. Corp. v. Resolution Trust Corp.*
    *(In re Parker N. Am. Corp.)*, 24 F.3d 1145 (9th Cir. 1994)...................................... 16, 17

*Phoenix Rest. Group, Inc. v. Proficient Food Co.*
    (*In re Phoenix Rest. Group, Inc.*), 2004 WL 3113719
    (Bankr. M.D. Tenn. Dec. 16, 2004) ................................................................... 7, 17

*In re Plastech Engineered Prods.*, *Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008) ..............*passim*

*In re Red Dot Scenic Inc.*, 318 B.R. 181 (Bankr. S.D.N.Y. 2004) ............................................ 18

*In re Renew Energy, LLC*, No. 09-10491, 2009 WL 3320420
    (Bankr. W.D. Wis. Sept. 30, 2009) .................................................................... 6, 7, 17

*Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443
    (Bankr. S.D. Ohio 2004) ................................................................................. 7, 17

*S. Polymer, Inc. v. TI Acquisition LLC (In re TI Acquisition, LLC)*,
    410 B.R. 742 (Bankr. N.D. Ga. 2009) ...................................................................... 7, 17

*Seta Corp. of Boca, Inc. v. Atl. Computer Sys.*
    (*In re Atl. Computer Sys.*), 173 B.R. 858 (S.D.N.Y. 1994) ..................................... 17, 18

Statutes

11 U.S.C. 101(5)(A) ................................................................................................... 13

11 U.S.C. § 501(a) ..................................................................................................... 5

11 U.S.C. § 502(a) ..................................................................................................... 5

11 U.S.C. § 502(b) ..................................................................................................... 5

11 U.S.C. § 502(d) .................................................................................................. 6, 9

11 U.S.C. § 503(a) ..................................................................................................... 3

11 U.S.C. § 503(b) ............................................................................................... 3, 4, 9

11 U.S.C. § 1129(a)(9)(A) ........................................................................................... 5

Other Authorities

4 Collier on Bankruptcy ¶ 502.05[2][a] (15th ed. rev. 2003) ....................................... 18

Olympus Corporation and Olympus Imaging America, Inc. (collectively, "**Olympus**"), through its counsel Willkie Farr & Gallagher LLP and LeClairRyan, A Professional Corporation, respectfully submits this Response (the "**Response**") to (i) the Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (ii) the Motion for a Waiver of the Requirement that the First Hearing on Any Response Proceed as a Status Conference (collectively, the "**Objection**") of the debtor Circuit City Stores, Inc. and its affiliated debtors and debtors in possession (collectively, "**Circuit City**" or the "**Debtors**").  In support of this Response, Olympus respectfully states as follows:

## PRELIMINARY STATEMENT

Olympus timely and legitimately asserted a request for payment from the Debtors, pursuant to section 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**"), of administrative expenses totaling approximately $5.9 million (the "**Administrative Expenses**") for goods delivered in the ordinary course to the Debtors within twenty (20) days of the filing of the Debtors' bankruptcy petition (the "**Petition Date**").  The Objection seeks (among other things) to temporarily disallow, pursuant to section 502(d) of the Bankruptcy Code, approximately $771,000 of the Administrative Expenses on the ostensible theory that Olympus received $771,000 in allegedly preferential payments from the Debtors within ninety days of the Petition Date.  As shown in this Response, the Objection is devoid of merit for at least two reasons.[1]

First, the weight of persuasive authority holds that section 502(d) disallowance is not applicable to administrative expenses provided for under section 503(b).  Extension of

---

[1]    This Response addresses only the legal issues raised by the Objection.  Olympus does not concede that it received any preferences or that it is a party to any other transaction that is avoidable by the Debtors. Should the Court conclude that the Debtors are entitled to proceed with any purported avoidance claim, Olympus fully reserves all of its rights, arguments and defenses with regard to all such claims.

section 502(d) to administrative expenses (including those at issue in the Objection) is supported

by neither the statutory language of the Bankruptcy Code nor the policy underpinnings of

sections 502(d) or 503(b).

        Second, leaving aside the inapplicability of section 502(d), resort to that section's

disallowance remedy is premature.  The Debtors have made no effort to properly assert their

purported preference claim against Olympus.  Nor have the Debtors offered *any* factual

averments to support its conclusory announcement (based on the Debtors' subjective

"determination") that Olympus is liable to the Debtors on such a claim.  To prevent the abusive

and premature invocation of section 502(d) disallowance, courts routinely hold that a debtor

must first obtain a judicial determination as to the creditor's liability on a claim for an avoidable

transfer.  While courts vary in their application of this requirement -- with some courts requiring

a formal adjudication on the merits of the claim in an adversary proceeding and others accepting

well-pled factual allegations sufficient to survive a motion to dismiss -- the Debtors' bare-bones

*ipse dixit* fails to measure up under even the most liberal standards.

        For these reasons, as discussed in greater detail below, the Objection should be

denied.

## ARGUMENT

## I.    THE ADMINISTRATIVE EXPENSES ARE NOT SUBJECT TO DISALLOWANCE UNDER SECTION 502(d).

        1.    The precise legal issue presented by the Debtors in the Objection --

"whether [section] 502(d) of the Bankruptcy Code may be used to disallow an administrative

expense under [section] 503(b)(9)"-- was thoroughly analyzed in *In re Plastech Engineered*

*Products, Inc.*, 394 B.R. 147, 149 (Bankr. E.D. Mich. 2008).  The *Plastech* court answered the

question in the negative.  The *Plastech* holding is fully supported by the statutory language of the

- 2 -

Bankruptcy Code, as demonstrated by the *Plastech* court's studious parsing of the statutory

provisions.  It is also consistent with other authorities to have considered the interplay between

sections 502(d) and 503(b).  While the Debtors place heavy reliance on the Ninth Circuit

Bankruptcy Appellate Panel's decision in *Microage, Inc. v. Viewsonic Corp.* (*In re MicroAge,

Inc.*), 291 B.R. 503 (9th Cir. BAP 2002), as shown below, *MicroAge* is against the growing

weight of authority and, in any event, not binding on this Court.

    **A.**    **The Bankruptcy Code Distinguishes Between Claims And Administrative
Expenses.**

      2.      The legal issue confronting this Court is one of statutory interpretation.  In

that regard, the United States Supreme Court cautions that:

> In determining whether Congress has specifically addressed the
> question at issue, a reviewing court should not confine itself to
> examining a particular statutory provision in isolation.  The
> meaning - or ambiguity - of certain words or phrases may only
> become evident when placed in context.  It is a "fundamental
> canon of statutory construction that the words of a statute must be
> read in their context and with a view to their place in the overall
> statutory scheme."  A court must therefore interpret the statute "as
> a symmetrical and coherent regulatory scheme," and "fit, if
> possible, all parts into an harmonious whole."

*F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146

L.Ed.2d 121 (2000) (internal citations omitted).  The natural starting place is the words that

Congress opted to use to express its legislative intent.  *See ASM Capital, L.P. v. Ames Dep't

Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 427 (2d Cir. 2009) ("'Statutory

interpretation always begins with the plain language of the statute.'").

    **(i)**    **Administrative Expenses Are Governed By Section 503.**

      3.      Section 503(a) of the Bankruptcy Code -- entitled "Allowance of

administrative expenses" -- provides that "[a]n entity may timely file a request for payment of an

administrative expense . . . ."  11 U.S.C. § 503(a).  Section 503 continues: "[a]fter notice and a

hearing, there shall be allowed administrative expenses, other than claims allowed under section

502(f) of this title . . . ." *Id.* § 503(b).  Prior to the passage of the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005 ("**BAPCA**"), the Bankruptcy Code expressly provided for

six non-exclusive types of administrative expenses as set forth in separate subsections under

section 503(b).  Subsection 503(b)(9) was added in 2005 via the BAPCA.

      4.    Section 503(b)(9) provides in pertinent part:

> After notice and a hearing, there shall be allowed administrative
> expenses . . . including -
>
>        *   *   *   *
>
> (9)    the value of any good received by the debtor within 20 days
> before the date of commencement of a case under this title in
> which the goods have been sold to the debtor in the ordinary
> course of such debtor's business."

11 U.S.C. § 503(b)(9).  Section 503(b)(9) administrative expenses differ from some of the other

types of administrative expenses expressly provided for under section 503(b) in that the

transactions underlying section 503(b)(9) occur prepetition.  Contrary to the Debtors' assertion,

however, section 503(b)(9) is not unique in this regard.  Other sections of the Bankruptcy Code

elevate what are otherwise prepetition obligations to administrative expense priority status.  *See.*

*e.g.*, 11 U.S.C. § 503(b)(3)(A) (granting administrative expense priority to the actual and

necessary expenses incurred by a petitioning creditor filing an involuntary bankruptcy petition

against a debtor) and § 503(b)(4) (reasonable compensation for professional services rendered by

an attorney or an accountant to a creditor petitioning for an involuntary petition afforded

administrative expense priority).

      5.    The enactment of section 503(b)(9) reflects a "Congressional decision to

convert . . . pre-petition debt [associated with twenty-day sales] to administrative expense

priority."  *In re Plastech Engineered Prods., Inc.*, 394 B.R. at 151.  *See also In re Bookbinder's*

*Rest., Inc.*, No. 06-12302ELF, 2006 WL 3858020, at *3 (Bankr. E.D. Pa. Dec. 28, 2006)

("Section 503(b)(9) effectively converted what previously was a prepetition 'claim' into an

allowable administrative expense."); *Brown & Cole Stores, LLC v. Associated Grocers, Inc. (In

re Brown & Cole Stores, LLC)*, 375 B.R. 873, 879 (9th Cir. BAP 2007) ("Congress has simply

moved [twenty-day sales] up higher on the priority ladder.").  Like any other administrative

expense, section 503(b)(9) administrative expenses must be paid in full in cash as a condition to

confirmation of any chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A) (requiring full payment of

allowed administrative expenses on the effective date of the plan as a condition to confirmation,

unless the holder of the administrative expense agrees to a different treatment).

### (ii)    Claims Are Governed By Sections 501 and 502.

6.     While section 503 addresses the assertion, mandatory allowance and

payment of *administrative expenses*, the assertion and allowance of *claims* is governed by an

entirely separate set of statutory provisions.  Specifically, section 501 of the Bankruptcy Code --

entitled "Filing of proofs of claims or interests" -- provides that a "creditor . . . may file a proof

of claim."  11 U.S.C. § 501(a).  Under Section 502 of the Bankruptcy Code -- entitled

"Allowance of claims or interests" -- a claim is "deemed allowed" upon the filing of a proof of

claim pursuant to section 501 unless a party in interest objects to the claim.  11 U.S.C. § 502(a).

If such an objection is lodged, the Court, after notice and a hearing, "shall determine the amount

of such claim" and "allow such claim."  *Id.* § 502(b).  As such, sections 501 and 502 work in

tandem, with the former governing the filing of claims and the latter governing the allowance (or

disallowance) of such claims.

7.     Section 502(d) provides for mandatory temporary disallowance of a claim

filed pursuant to section 501 under certain circumstances.  It states:

> Notwithstanding subsections (a) and (b) of this section, the court
> shall disallow any claim of any entity from which property is
> recoverable under sections 542, 543, 550 or 553 of this title or that
> is a transferee of a transfer avoidable under section 522(f), 522(h),
> 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or
> transferee has paid the amount, or turned over any such property,
> for which such entity or transferee is liable under section 522(i),
> 542, 543, 550 or 553 of this title.

11 U.S.C. § 502(d).  Section 502(d) is "designed to assure an equality of distribution of the assets

of the bankruptcy estate . . . ."  *In re Plastech Engineered Prods.*, 394 B.R. at 155 (quoting

*Campbell v. U.S. (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989)).  *See also In re Chase &*

*Sanborn Corp.*, 124 B.R. 368, 371 (Bankr. S.D. Fla. 1991) ("[Section] 502(d) is designed to

foster the 'restoration' of assets to a debtor's estate . . . by precluding anyone who has received a

voidable transfer from sharing in any distribution or burdening an estate with continuing

litigation unless he first pays back any preference he has received.").

      8.     Relying heavily on *MicroAge* (in which the Bankruptcy Appellate Panel

for the Ninth Circuit concluded that administrative expenses are not excluded from the scope of

section 502(d)), the Debtors argue that section 502(d) may be utilized to temporarily disallow the

Olympus Administrative Expenses.  *See In re MicroAge Inc.*, 291 B.R. at 508 (relying

principally on *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, 38 B.R. 829 (Bankr.

M.D. Ga. 1984)).  However, *MicroAge* and the twenty-five year old opinion in *Georgia Steel*

represent the minority view.  The growing majority of courts to confront this issue have properly

concluded that section 502(d)'s *claim* disallowance remedy is inapplicable to *administrative*

*expenses.  See, e.g., In re Renew Energy, LLC*, No. 09-10491, 2009 WL 3320420, at *4 (Bankr.

W.D. Wis. Sept. 30, 2009) (canvassing case law and concluding that "[t]he majority position is

that [section] 502(d) does not affect [section] 503(b) claims").[2]

**B.**    **The Words And Structure Of The Bankruptcy Code Compel The Conclusion That Section 502(d) Is Inapplicable To Section 503(b) Administrative Expenses.**

9.      As noted above, the Bankruptcy Code establishes two separate and distinct

processes for the assertion and allowance of claims, on the one hand (i.e., sections 501 and 502),

and administrative expenses, on the other hand (i.e., section 503).  *See In re Plastech Engineered*

*Prods., Inc.*, 394 B.R. at 161 ("[T]he Court agrees with those cases that hold that the allowance

of claims under [section] 502 is entirely separate from the allowance of administrative expenses

under [section] 503.").  Significantly, section 501(d) governs not only the filing of pre-petition

claims by creditors, but also provides for the filing of certain specified post-petition claims

identified in section 501(d) the same as if such post-petition claims were pre-petition claims

against a debtor.  Section 502(a), in turn, provides that such claims (including the specifically

enumerated post-petition claims) are deemed allowed unless objected to pursuant to section

502(b).  And finally, section 502(d) provides that *notwithstanding subsections (a) and (b)*, the

court must temporarily disallow certain claims if the elements of that subsection are met.

10.     The words and structure of these statutory provisions make clear that

"[section] 502(d) does apply to post-petition claims, but *only* to those post-petition claims that

---

[2]     Courts following the majority approach include *In re Ames Dept. Stores, Inc.*, 582 F.3d 422 (2d Cir. 2009); *In re Renew Energy, LLC*, No. 09-10491, 2009 WL 3320420 (Bankr. W.D. Wis. 2009); *S. Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008); *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004); *Phoenix Rest. Group Inc. v. Proficient Food Co.* (*In re Phoenix Rest. Group, Inc.*), Nos. 301-12036; 303-0568A, 2004 WL 3113719  (Bankr. M.D. Tenn. Dec. 16 2004); *Beasley Forest Prods., Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.)*, 297 B.R. 326 (Bankr. S.D. Ga. 2003); *In re Lids Corp.*, 260 B.R. 680 (Bankr. D. Del. 2001); *Camelot Music, Inc. v. MHW Adver. & Pub. Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000).

are governed by [sections] 501 and [] 502." *Id.* (emphasis in original).  *See also In re CM Holdings, Inc.*, 264 B.R. at 159 (invoking the doctrine of *affirmatio unis exclusio est alterius* and concluding that "[t]he explicit references [in section 501(d)] to postpetition claims other than administrative expense claims . . . demonstrate that administrative expense claims are accorded special and distinct treatment and are not within the purview of [section] 502(d)."); *In re Lids Corp.*, 260 B.R. at 683 ("[B]ecause section 502(d) expressly applies to *some* post-petition claims, it suggests that section 502(d) was not intended to apply to *every* post-petition claim.").

11.    As the Court in *Plastech* explained, if section 502(d) applied to "all claims" (including administrative expenses on the theory that they are a species of "claims"):

> [I]t would be wholly unnecessary for [section] 502(d) to say that it applies "notwithstanding subsections (a) and (b) of [section] 502." The inclusion of this qualifying phrase . . . demonstrates that [section] 502(d) applies only to those prepetition claims and post-petition claims that are governed by [section] 501 and [section] 502 and does not apply to administrative expenses under [section] 503.

394 B.R. at 161.  The United States Court of Appeals for the Second Circuit -- the only Circuit Court to have addressed the issue -- reached the same conclusion little more than a month ago in *In re Ames Dep't Stores, Inc.*, 582 F.3d. 422 (2d Cir. 2009).  There, the Second Circuit found that "The plain language [of section 502(d)'s qualifying phrase] thus introduces section 502(d) as an exception to the automatic allowance of proofs of claims under sections 502(a) and (b), and suggests that the subsection's scope is limited to that process and does not extend to claims allowable under section 503." *Id.* at 430.

12.    The Second Circuit went on to explain that its conclusion "is reinforced by the absence from section 502(d) of any reference to section 503." *Id.*[3]  The Second Circuit further opined that "[t]o construe [section] 502(d)'s disallowance as applicable to expenses allowable under [section] 503 - a section with its own scope, purpose, and conditions - is to expend the scope of [section] 502(d)'s disallowance beyond its plain meaning." *Id.* (quoting *In re Durango Ga. Paper Co.*, 297 B.R. 326, 330 (Bankr. S.D. Ga. 2003)).

13.    Further evidence of the Bankruptcy Code's dichotomy between claims and administrative expenses is found in the fact that "requests for payment of administrative expenses are expressly filed under [section] 503(a) and not by a proof of claim filed under [section] 501." *In re Plastech Engineered Prods., Inc.*, 394 B.R. at 161.  *See also In re Ames Dep't Stores, Inc.*, 582 F.3d at 429 (Section 503's procedure "is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects."); *In re Durango Ga. Paper Co.*, 297 B.R. at 329 (noting that section 503 differs from section 502 because it "needs no complement" and uses different terminology).

14.    Were a debtor permitted to invoke section 502(d) to disallow an administrative expense, it would give rise to an irreconcilable conflict between two otherwise mandatory Bankruptcy Code provisions.  Specifically, section 503(b) commands that, after notice and a hearing, administrative expenses provided for under section 503(b) (including those provided for under 503(b)(9)) "shall be allowed."  11 U.S.C. § 503(b).  On the other hand, section 502(d) commands that the court "shall disallow" any claim if the requirements of section 502(d) are met.  *Id.* § 502(d).  While the Debtors urge this Court to sanction section 502(d)

---

[3]    The opposite is also true.  *See In re Durango Ga. Paper Co.*, 297 B.R. at 330 (noting that section 503 "contains no reference to [section 502] whatsoever except to specify that 'claims allowed under section 502(f)' are *not* governed by [section] 503(b)'s mandatory allowance.").

disallowance of the Administrative Expenses, the Debtors are unable to cite any provision in the

Bankruptcy Code indicating that section 502(d)'s mandatory disallowance language overrides

section 503(b)(9)'s otherwise mandatory allowance language.

15.    On the other hand, a proper interpretation of section 502(d) yields no such

conflict.  As the Court in *Plastech* explained:

> There is no conflict between the mandatory allowance of claims
> under [section] 502(a) and (b), and the mandatory disallowance of
> claims under [section] 502(d), because of the qualifying preface of
> [section] 502(d) that says that [section] 502(d) applies
> "notwithstanding subsections (a) and (b) of this section."  In
> contrast, the qualifying clause in [section] 502(d) does not refer to
> [section] 503(b) and there is no other Bankruptcy Code provision
> that harmonizes the mandatory allowance of an administrative
> expense under [section] 503(b) with the mandatory disallowance of
> a claim under [section] 502(d).  The Debtor's position puts these
> two mandatory sections on a direct collision course.

*In re Plastech Engineered Prods., Inc.*, 394 B.R. at 162.  It is a fundamental canon of statutory

construction that "'When faced with statutory sections that are inherently inconsistent, [the

Court's] first duty is to reconcile the competing provisions so that they can both remain in

effect.'"  *Id.* (quoting *Schmitt v. City of Detroit*, 395 F.3d 327, 330 (6th Cir. 2005)).  The

Debtors' proposed interpretation violates that fundamental tenet and is therefore untenable.

16.    Other provisions of the Bankruptcy Code evince the Congressional intent

to treat claims separately from administrative expenses and bolster the conclusion that section

502(d) cannot be used to disallow administrative expenses.[4]  For example, "section 507(a) refers

---

[4]    The Court in *MicroAge* pointed to a number of provisions in the Bankruptcy Code that supposedly indicate
Congress' "view[] [that administrative expenses are] merely one specialized type of claim." *In re
MicroAge, Inc.*, 291 B.R. at 508 (citing section 346(e) (referring to a "claim allowed under section 502(f)
or 503 of this title"), section 365(n)(1)(B)(i) (referring to "any claim allowable under section 503(b) of this
title), section 348(d) (expressly carving out claims allowable under section 503(b)), section 752(a)
(expressly excepting claims allowable of the kind specified in section 507(a)(1)), section 1123(a)(1)
(same), and section 1326(b)(1) (same)).  However, as several courts have observed, "other sections of the
Bankruptcy Code distinguish between 'claims' and requests for administrative expenses under section

to 'expenses *and* claims,' and establishes a separate priority for 'administrative expenses' than for 'claims.'"  *In re Ames Dep't Stores, Inc.*, 582 F.3d at 429.  Similarly, "section 348(d) . . . applies to any postpetition claim 'other than a claim specified in section 503(b).'"  *Id.  See also In re CM Holdings, Inc.*, 264 B.R. at 158 (holding that the specific exemption of administrative expenses from the scope of section 348(d) "lend[s] further support to the view that administrative expense[s] are entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims").

      17.     In addition, as the Second Circuit elucidated in Ames:

> [S]ections 502(e)(2), (f), (g), (h) and (i) explicitly bring certain postpetition claims within the scope of section 502 by providing, in each case, that the claims "shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) . . . *the same as if such claim had become fixed before the date of the filing of the petition.*"  The express invocation of section 502(d) suggests that the section did not already apply to such claims before they were brought within section 502's reach, and that it does not apply to postpetition claims remaining outside section 502, such as the requests for administrative expenses addressed by section 503(b).

*In re Ames Dep't Stores, Inc.*, 582 F.3d at 430 (internal citations omitted, emphasis in original).

*See also In re Lids Corp.*, 260 B.R. at 683-84 ("Congress'[s] inclusion of five post-petition claims to which section 502(d) expressly applies . . . demonstrates that section 502(d) does not apply to other post-petition claims."); *In re CM Holdings, Inc.*, 264 B.R. at 158 ("The express

---

503(b)."  *In re Ames Dep't Stores, Inc.*, 582 F.3d at 428.  *See also In re Plastech Engineered Prods., Inc.*, 394 B.R. at 162 ("[I]t is just as easy to point to other examples where Congress used 'claim' and 'expense' in a way that suggests that there is a distinction.").  In the final analysis, selective citation to disjointed provisions of the Bankruptcy Code is not a compelling basis on which to interpret section 502(d).  Rather, for the reasons set forth throughout this Response, when that section is properly construed within the greater context of the Bankruptcy Code as a whole (including sections 501, 502 and 503), it is clear that section 502(d) is inapplicable to administrative expenses otherwise allowable under section 503(b).  *See In re Durango Ga. Paper Co.*, 297 B.R. at 330 (holding that various Bankruptcy Code provisions suggesting that administrative expenses are "claims" "do not, however, override the more meaningful and specific utilization of two distinct terms - 'expense' and 'claim' - within the subchapter in which both sections 502 and 503 are located").

reference to, and treatment of, these other types of postpetition claims within the purview of

[section] 502(d) suggests by negative implication that the drafters did not intend that

administrative expense claims be subject to the set off provision of [section] 502(d).").

18.    The Bankruptcy Code's distinctions between claims and administrative

expenses bolster the conclusion that section 502(d) disallowance is not available as against

administrative expenses otherwise allowable under section 503(b).

### C.    Excepting Administrative Expenses From The Reach Of Section 502(d) Is Consistent With The Policies Underlying Sections 502(d) And 503(b).

19.    The Debtors contend that immunizing section 503(b) administrative

expenses from 502(d) disallowance would somehow subvert the policies underlying section

502(d) and/or the Bankruptcy Code.  This argument is without merit.  To the contrary,

maintaining the dichotomy that Congress saw fit to establish between claims (which are subject

to disallowance under section 502(d) if its conditions are met) and administrative expenses

(which are not subject to disallowance) effectuates the policy of the Bankruptcy Code by

maintaining the priority afforded to administrative expenses.  *See In re Ames Dep't Stores, Inc.*,

582 F.3d at 431.

20.    While, unlike some (though not all) of the other statutorily prescribed

categories of administrative expenses, section 503(b)(9) administrative expenses do not arise

from post-petition transactions with the bankruptcy estate, that does not mean that such

transactions are undeserving of protection.  Congress determined that goods provided in the

ordinary course of a debtor's business within twenty days of its bankruptcy petition merit

administrative expense priority.  By affording such enhanced treatment, Congress intended to

induce suppliers to continue supplying goods to distressed companies potentially on the verge of

bankruptcy.

21.     Providing priority for twenty-day sales benefits a debtor in several ways.

First, it protects a debtor in financial distress or on the verge of bankruptcy (particularly a retail

debtor whose business relies on a steady supply of inventory) against a premature bankruptcy

occasioned by a refusal of its suppliers to continue supplying product.  And second, it helps to

ensure that a debtor headed into bankruptcy will enjoy an uninterrupted supply of inventory so as

to enhance its ability to continue operating its business as a debtor in possession postpetition.

Were section 503(b)(9) administrative expenses subject to section 502(d) disallowance, suppliers

otherwise protected by section 503(b)(9) would be disinclined to supply goods to financially

distressed debtors and such debtors would be deprived of the benefits (both pre- and postpetition)

associated with uninterrupted supply.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 582 F.3d at 431

(noting that administrative expenses are designed to "encourage third parties to supply goods and

services on credit to the estate, to the benefit of all of the estate's creditors); *In re Lids Corp.*, 260

B.R. at 684 ("If trade vendors felt that a preference could be used to prevent the payment of their

administrative claims, they would be extremely reluctant to extend post-petition credit to a

chapter 11 debtor.").

**D.     Section 503(b)(9) Administrative Expenses Should Not Be Analyzed Any
Differently Than Any Other Administrative Expense Allowed Under Section
503(b).**

22.     The Debtors focus heavily (as did the court in *MicroAge*) on the fact that

the Bankruptcy Code defines the term "claim" broadly enough to capture administrative

expenses.  *See* 11 U.S.C. 101(5)(A).  Thus, according to the Debtors, because section 503(b)(9)

expenses are premised on transactions that would otherwise represent prepetition "claims," such

claims should be subject to section 502(d) even if other postpetition administrative expenses are

not.  However, that very argument was considered and rejected by the court in *Plastech*.  Such a

- 13 -

myopic focus on one individual defined term divorced of the broader context and structure of the

Bankruptcy Code produces a distorted result.  As the *Plastech* court held,

> In applying [the rule of statutory construction requiring the court to
> read the words of a statute in context], the Court does not conclude
> that a [section] 503(b)(9) administrative expense cannot be a
> "claim."  Instead, the Court finds that a [section] 503(b)(9)
> administrative expense is simply not a type of claim that is filed
> under [section] 501, and allowed or disallowed under [section]
> 502.  When [section] 502(d) is examined within the larger
> framework of the Bankruptcy Code, the better interpretation
> supports the argument [that section 502(d) cannot be used to
> disallow section 503(b)(9) administrative expenses].

*In re Plastech Engineered Prods., Inc.*, 394 B.R. at 162.

23.     Moreover, section 503(b)(9) "is not the first nor the only time that

[section] 503(b) recognizes a pre-petition obligation as an allowable administrative expense of a

bankruptcy case."  *Id.* at 163.  To the contrary, sections 503(b)(3) and (4), both of which existed

prior to BAPCA, elevate certain types of prepetition obligations to administrative expense

priority.  *Id.*  These sections

> represent instances where Congress has seen fit to define a certain
> class of pre-petition obligations, take that defined class of pre-
> petition obligations and permit the holders of such pre-petition
> obligations to have their pre-petition claims allowed as
> administrative expenses under [section] 503(b), rather than be
> subjected to the claims filing and allowance provisions of
> [sections] 501 and 502.  While certainly much larger in scope than
> [section] 503(b)(3) or (4), [section] 503(b)(9) is but another
> example of Congress defining a specific type of pre-petition
> obligation that it has determined should be afforded administrative
> expense priority treatment under [section] 503(b).

*Id.*

24.     Indeed, "[s]ection 503 makes no distinction among [its] nine [subsections]

either with respect to how their payment is requested under [section] 503(a), nor how they are

allowed under [section] 503(b)."  *Id.*  Equally significant, section 507(a)(2) "affords the identical

- 14 -

priority to all administrative expenses allowed under [section] 503(b), without regard to which of [section] 503(b)'s nine examples provides the basis for the administrative expense." *Id.*

25.    In sum, "[t]he distinction urged by the Debtor[s] - *i.e.*, that [section] 503(b)(9)'s are pre-petition in nature - although factually true, is not a distinction that makes any difference under [section] 503(b), or is even recognized by [section] 503(b).  Nor is there any legislative history to suggest that Congress intended there to be such a distinction." *Id.*  If Congress had intended, through section 503(b)(9), to create a "special" variety of claim that would be entitled to administrative expense priority but otherwise subject to the provisions of section 502(d), it could have (and would have) done that with ease by "simply creating a separate priority for this special class under [section] 507 of the Bankruptcy Code instead of their wholesale inclusion in [section] 507(a)(2)." *Id.*  As the Court in *Plastech* explained:

> Congress could have elevated the rights of this special class under [section] 507 while still recognizing their inherent nature as pre-petition claims subject to the claims allowance process for pre-petition claims under [section] 502.  This would have also avoided the conflict between the mandatory allowance provision of [section] 503(b) and the mandatory disallowance provision of [section] 502(d) that would occur if the Court adopts the Debtor's position.  But Congress did not do so.  Instead, it took this "special class" of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under [section] 503(b) along with all of the other statutorily recognized administrative expenses.  By doing so, Congress placed [section] 503(b)(9) administrative expenses beyond the reach of [section] 502(d).

*Id.* at 163-64.

For all of these reasons, there is no merit to the Debtors' suggestion that section 503(b)(9) administrative expenses are a "special" form of pre-petition claims that remain subject to section 502(d) disallowance (notwithstanding that they are administrative expenses).

## II.  **EVEN IF SECTION 502(d) WERE APPLICABLE TO THE ADMINISTRATIVE EXPENSES, DISALLOWANCE IS NEVERTHELESS PREMATURE.**

26.    Even assuming, without concession, that the Olympus Administrative Expenses could be subject to disallowance pursuant to section 502(d) (which they are not for the reasons just demonstrated), Circuit City's premature request for disallowance would still be improper.  The Debtors seek disallowance based on nothing more than their conclusory proclamation that Olympus was the recipient of one or more preferences.  *See* Debtors' Brief at 3.  This self-serving *ipse dixit* is an insufficient basis on which to invoke section 502(d).  As demonstrated below, section 502(d) disallowance is not available in the absence of a predicate judicial determination of the creditor's liability on the avoidable transfer.  There is no such determination here.

27.    Section 502(d) provides a statutory mechanism to ensure compliance with court orders adjudicating liability for avoidable transfers.  *See, e.g.*, *In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989) (noting that "[t]he legislative history and policy behind section 502(d) illustrate[] that the section is intended to have the coercive effect of insuring compliance with judicial orders").  For that reason, as demonstrated by the authorities cited below, it is widely accepted that a debtor must, as a condition precedent to disallowance under section 502(d), obtain a *judicial determination* of the creditor's liability on the underlying avoidable transfer.

28.    Indeed, many courts require a formal adjudication on the merits of the avoidance claim (*i.e.*, following a trial, or in connection with a dispositive motion, in an adversary proceeding).  *See, e.g.*, *Holloway v. I.R.S. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003) ("[S]ection 502(d) should be used to disallow a claim *after the entity is first adjudged liable*") (emphasis added); *Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.)*, 24 F.3d 1145, 1155 (9th Cir. 1994) (noting "'[s]ection 502(d) operates to

- 16 -

disallow claims of transferees who do not surrender their avoidable transfers.  It does not compel

the surrender, nor permit affirmative relief of any kind.'"); *In re Lids Corp.*, 260 B.R. at 684

(holding that "the [d]ebtor has merely commenced an adversary proceeding; that is not enough to

determine that [the claimant] is liable."); *Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re

Mountaineer Coal Co.)*, 247 B.R. 633, 641 (Bankr. W.D .Va. 2000) (noting that section 502(d)

"would not appear applicable unless and until a finding under one of the cited sections had been

made and then the claimant had failed to comply with such ruling"); *Seta Corp. of Boca, Inc. v.

Atl. Computer Sys. (In re Atl. Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (holding that

section 502(d) "envisions some sort of determination of the claimant's liability before its claims

are disallowed, and in the event of an adverse determination, the provision of some opportunity

to turn over the property"); *Mktg. Res. Int'l Corp. v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35

B.R. 353, 356 (Bankr. E.D. Pa. 1984) (rejecting invocation of section 502(d) as "premature since

judgment has not yet been entered on the debtor's actions under §§ 547 and 542.").  Here, there

is no adversary proceeding and there has been no judicial determination of Olympus' liability for

a purported preference.[5]

---

[5]     Tellingly, in the vast majority of the cases addressing whether section 502(d) disallowance is applicable to
administrative expenses otherwise allowable under section 503(b), the debtor seeking 502(d) disallowance had
formally commenced an adversary proceeding against the administrative expense holder.  *See In re Ames Dept.
Stores, Inc.*, 582 F.3d at 425 (2d Cir. 2009) (noting that "[the debtor] filed adversarial proceedings . . . against
several of its former suppliers . . . to recover alleged preferential transfers"); *In re Renew Energy, LLC*, 2009 WL
3320420, at *2 (noting that "[the debtor] filed an adversary complaint against [the holder of the administrative
expense] on July 27, 2009 asserting clams [sic] of preferential transfer . . ."); *In re TI Acquisition, LLC*, 410 B.R. at
749 (noting that "[the debtor] commenced Adversary Proceeding 09-4009-MGD seeking the recovery from [the
holder of the administrative expense] of preferential payments . . ."); *In re Roberds, Inc.*, 315 B.R. at 447 (noting
that "[the debtor] filed a complaint against [the holder of the administrative expense] to recover thirty-two allegedly
preferential transfers" in an adversary proceeding); *In re Phoenix Rest. Group, Inc.*, 2004 WL 3113719, at *4
(noting that "the Plan Administrator filed over 200 adversary proceedings to avoid preferential transfers under 11
U.S.C. § 547(b)");  *In re Lids Corp.*, 260 B.R. at 684 (noting that debtor had commenced an adversary proceeding,
and noting absence of a final judgment on the preference claims); *In re CM Holdings, Inc.*, 264 B.R. at 143 (noting
commencement of adversary proceeding "seeking a judgment . . . that certain prepetition payments . . . constitute
avoidable preferential payments"); *See also In re MicroAge Inc.*, 291 B.R. at 505 (noting that "[the debtor] fil[ed] an
adversary complaint against [the holder of the administrative expense] for avoidance of $2,329,700.56 in allegedly
preferential transfers").

29.    Other courts permit judicial determinations short of formal adjudications on the merits by permitting, for example, such liability determinations to be made in connection with claim objections.  But no court finds the mere proclamation of liability (what the Debtors seek to do here) to be sufficient.  Rather, courts are sensitive to the need to stem premature and abusive application of section 502(d), recognizing that a naked "allegation" of a creditor's liability for an avoidable transfer must be subjected to a judicial evaluation and found to have merit before resort to section 502(d) is appropriate.  *See, e.g.*, 4 Collier on Bankruptcy 502.05[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed.rev.) ("To assure the effectuation of the purpose of this section, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer.  *But to prevent abuse of this section this initial disallowance should be made by judicial determination*, whether it be obtained in a claim objection or by some form of a declaratory judgment action.") (emphasis added); *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, Bankruptcy No. 01-16034, 2006 WL 832674, at *191-92 (Bankr. S.D.N.Y. Mar. 31, 2006) ("[T]he Court must only determine whether Enron *asserts a valid cause of action under section 502(d) to survive a motion to dismiss* and not whether the Claims are disallowed based on the merits of the underlying avoidance actions.") (emphasis added); *In re Red Dot Scenic Inc.*, 313 B.R. 181, 186 (Bankr. S.D.N.Y. 2004) ([T]o prevent abuse of this section this initial disallowance should be made by judicial determination, whether it be obtained in a claim objection or by some form of declaratory judgment action."); *In re Atl. Computer Sys.*, 173 B.R. at 862 (noting that section 502(d) envisions some form of judicial determination of the underlying avoidance action before claim disallowance); *In re Metiom, Inc.*, 301 B.R. 634, 642 (Bankr. S.D.N.Y. 2003) (same).

30.     Here the Debtors' premature invocation of Section 502(d) does not pass muster even under the most liberal of standards.  The Debtors have not brought formal preference claims against Olympus.  There is no complaint whose sufficiency on a motion to dismiss can be briefed and adjudicated.  And even if the requirement for a complaint and formal adversary proceeding were to be relaxed, the averments offered by the Debtors in support of the claim objection fail to meet even the most minimal pleading standards.  Not a single fact (distinguished from legal conclusions) is pled.

31.     Instead, the Debtors offer nothing more than a blatantly conclusory proclamation that they have subjectively "determined that [Olympus was the recipient of] . . . one or more transfers made on account of antecedent debts, within 90 days of the Petition Date, while the Debtors were insolvent, and that allowed [Olympus] to receive more than they would had such transfers not been made and such creditor had received a payment under the Bankruptcy Code."  *See* Debtors' Brief at 3.  No facts are set forth as to the date(s), amounts, or other circumstances of these alleged preferences.  The Debtors further proclaim, in conclusory fashion, that they have subjectively "evaluated" the availability of, and taken into consideration, any preference defenses, including the "new value defense."  *Id.* at 3-4.  Here again, however, no details are provided of the Debtors' analysis or the individual facts on which it purports to be premised.  Olympus' liability on a purported preference claim is not "determined" by the Debtors' say so.  Nor is it the Debtors' place to "determine" the extent to which Olympus would successfully defend against a preference claim (were one ever to be asserted).  These are determinations for this Court, alone, to make.

32.     Before this Court could possibly make any such determinations, the Debtors must come forward with a formal preference claim, supported by well-pled factual

- 19 -

allegations.  Such averments should be set forth in an adversary proceeding.  If not by adversary proceeding, these charges should at least be set forth in a factually-supported claim objection.  Either way, Olympus deserves notice of the claims and the facts on which the claims purport to be premised.  Upon the proper assertion of such claims, the Debtors will bear the burden of demonstrating that such claims are sufficient to (at least) survive a motion to dismiss.  If the claims cannot survive that hurdle, the Debtors may not invoke section 502(d).  If, on the other hand, the claims pass muster, the parties would proceed to litigate the contested matter through discovery, dispositive motions (if applicable) and trial.

33.      In summary, Olympus has no preference liability unless and until the Debtors demonstrate the existence of a viable preference claim.  The Debtors have not done so here.  The Debtors' self-serving and conclusory *ipse dixit* with regard to alleged preferences could not, and do not, survive a motion to dismiss.  Such bare-bones assertions are an insufficient basis on which to invoke section 502(d).  Absent the predicate of a judicial determination as to liability on a preference claim, resort to section 502(d) is premature and improper.

## **CONCLUSION**

34.      Olympus respectfully submits that the Motion is devoid of merit.  As a threshold matter, section 502(d) disallowance is inapplicable to administrative expenses under section 503(b) of the Bankruptcy Code.  Even leaving aside that fundamental defect, the Motion is further deficient in that the Debtors have not obtained a judicial determination of Olympus' liability on a purported preference claim.  Indeed, the Debtors have not even so much as formally asserted a preference claim against Olympus nor demonstrated that such a purported claim is capable of surviving a motion to dismiss.  For these reasons, as amplified above, Olympus

respectfully requests that the Court deny the relief sought by the Debtors in the Motion and grant

such other and further relief as the Court deems just and proper.

Dated:  November 5, 2009
        Richmond, Virginia

LECLAIRRYAN, A Professional Corporation

/s/ Christopher L. Perkins
Bruce H. Matson (VSB No. 22874)
Christopher L. Perkins (VSB No. 41783)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA  23219
(804) 783-2003

- and -

WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub
Terence K. McLaughlin
Jeanna L. Composti
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Counsel to Olympus Corporation and Olympus
Imaging America, Inc.