Gregg M. Galardi, Esq.                  Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                 Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,   MCGUIREWOODS LLP
LLP                                     One James Center
One Rodney Square                       901 E. Cary Street
PO Box 636                              Richmond, Virginia 23219
Wilmington, Delaware 19899-0636         (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors in
Possession

             IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :    Chapter 11
                           :
CIRCUIT CITY STORES, INC., :    Case No. 08-35653 (KRH)
et al.,                    :
                           :
            Debtors.       :    Jointly Administered
- - - - - - - - - - - - - - X

                 **NOTICE OF FILING PLAN EXHIBITS**

     **PLEASE TAKE NOTICE** that on November 5, 2009, the debtors

and debtors in possession in the above-captioned jointly

administered cases (collectively, the "Debtors")[1] filed the

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux
International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC
Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821),
Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture
Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),

*(cont'd)*

following exhibits to the First Amended Joint Plan of

Liquidation of Circuit City Stores, Inc. and Its Affiliated

Debtors and Debtors in Possession and Its Official Committee of

Creditors Holding General Unsecured Claims (the "Plan"):

| | |
|---|---|
| Exhibit B | Liquidating Trust Agreement |
| Exhibit C | Non-exclusive List of Insurance Agreements |
| Exhibit D | Non-exclusive List of Retained Causes of Action |

_____

*(cont'd from previous page)*
Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores
PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250
Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the
address is For all other Debtors, the address was 9950 Mayland Drive,
Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen,
VA 23060.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the exhibits thereto are available at: www.kccllc.net/circuitcity.

Dated: November 5, 2009    SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia   FLOM, LLP
                          Gregg M. Galardi, Esq.
   Ian S. Fredericks, Esq.
   P.O. Box 636
   Wilmington, Delaware 19899-0636
   (302) 651-3000

         - and -

   SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM, LLP
   Chris L. Dickerson, Esq.
   155 North Wacker Drive
   Chicago, Illinois 60606
   (312) 407-0700

         - and -

   MCGUIREWOODS LLP

   /s/ Douglas M. Foley      .
   Dion W. Hayes (VSB No. 34304)
   Douglas M. Foley (VSB No. 34364)
   One James Center
   901 E. Cary Street
   Richmond, Virginia 23219
   (804) 775-1000

   Counsel for Debtors and Debtors
   in Possession

\10142839

**EXHIBIT B**

**CIRCUIT CITY STORES, INC. LIQUIDATING TRUST AGREEMENT**

This Circuit City Stores, Inc. Liquidating Trust Agreement (the "Agreement") dated as of November __, 2009 is by and between Circuit City Stores, Inc. and its affiliated debtors and debtors in possession, as identified on Exhibit A hereto (collectively, the "Debtors"), and Alfred H. Siegel, the Liquidating Trustee under the terms of the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims filed on September 29, 2009 (the "Plan") in the chapter 11 bankruptcy cases currently pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") with a caption of In re Circuit City Stores, Inc., et al., Case No. 08-35653 (KRH), to implement the Liquidating Trust for the benefit of the Beneficiaries under the terms of the Plan, as confirmed by the Bankruptcy Court by Order dated _____, 2009.

WITNESSETH

WHEREAS, the Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Plan;

WHEREAS, the Trust is established for the purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Liquidating Trust;

WHEREAS, pursuant to the Plan, the Debtors, the Trustee, the Trust and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust

Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in

satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the

Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the

Beneficiaries as the grantors and owners of the Trust for federal income tax purposes;

WHEREAS, pursuant to the Plan, the Trust is intended to be treated as a grantor trust for

federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue

Code of 1986 (as amended, the "IRC");

NOW, THEREFORE, in consideration of the promises and the mutual covenants

contained herein and in the Plan, the Debtors and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>

1.1.1    "Beneficiaries" shall collectively mean the Holders of Allowed Claims

under the Plan, or any successors to such Holders' Allowed Claims pursuant to Article 10.1

herein.

1.1.2    "Effective Date" shall have the same meaning as set forth in the Plan.

1.1.3    "Oversight Committee" shall mean a committee of seven (7) persons

established pursuant to the Plan to oversee the Trustee's performance of his duties and otherwise

serve the functions described in the Plan.  The initial members of the Oversight Committee shall

be Hewlett Packard Company, Samsung Electronics America, Simon Property Group, Inc.,

Weidler Settlement Class, Paramount Home Entertainment, Developers Diversified Realty Corp.

and [___].

1.1.4    "Trust" shall mean the Liquidating Trust established pursuant to the terms of this Agreement and the Plan.

1.1.5    "Trust Assets" shall mean all of the Liquidating Trust Assets conveyed to the Trust on the Effective Date of the Plan, including the proceeds and/or income related thereto, held from time to time pursuant to this Agreement by the Trustee of the Trust for the benefit of the Beneficiaries.

1.1.6    "Trustee" shall mean (x) initially, Alfred H. Siegel, and (y) any successor or replacement "Liquidating Trustee," as that term is defined under the Plan.

1.2    Use of Plan Definitions.  All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3    Interpretation.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

## ARTICLE  II

## DECLARATION OF TRUST

2.1    Purpose of Trust.  The Debtors and the Trustee, pursuant to the Plan and in accordance with title 11 of the United States Code (the "Bankruptcy Code"), hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating

-3-

purpose of the Trust.  The activities of the Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan.

    2.2    <u>Transfer of Trust Assets.</u>

    A.    The Debtors hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trustee as of the Effective Date in trust for the benefit of the Beneficiaries to be applied as specified in this Agreement and the Plan. The Debtors shall from time to time as and when reasonably requested by the Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Trustee title to and possession of the Trust Assets.

    B.    Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets are automatically vested in the Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Beneficiaries (whether such Beneficiaries' Claims are Allowed Claims on or after the Effective Date of the Plan) to establish the Trust. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trustee and such law is not superseded by the Bankruptcy Code, the Trustee's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.1, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

C.      Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trustee or the Trust receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Trust Assets during liquidation, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as practicable in accordance with the Plan and this Agreement.

D.      Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

2.3    Valuation of Trust Assets.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on his good faith determination, (b) advise the Oversight Committee of such valuation and (c) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee and the Beneficiaries) for all federal income tax purposes.

-5-

# ARTICLE  III

# ADMINISTRATION OF THE TRUST

3.1    <u>Rights, Powers and Privileges</u>.  The Trustee shall have only the rights, powers and privileges expressly provided to the Trustee in this Agreement or in the Plan.  Without limiting the foregoing, the Trustee shall have the power to take the following actions in addition to the powers granted in the Plan, and any powers reasonably incidental thereto, which the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the liquidating purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

A.    hold legal title to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

B.    in reliance upon the Debtors' schedules and the official claims register (the "Register") maintained in the Chapter 11 cases, maintain on the Trustee's books and records a register evidencing the beneficial interest herein held by each Beneficiary;

C.    protect and enforce the rights to the Trust Assets (including any Causes of Action) vested in the Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

D.    make all distributions to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

E.    establish reserves for Disputed Claims and open and maintain bank accounts on behalf of or in the name of the Trust;

F.    make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Trust and file tax returns for the Trust as a grantor trust under

IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 pursuant to and in accordance with the Plan and Article 7.9 hereof;

G.      send annually to each Beneficiary a separate statement stating the Beneficiary's share of the Trust's income, gain, loss, deduction or credit, and instruct all such Beneficiaries to report such items on their federal tax returns;

H.      establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

I.      pay all expenses and make all other payments relating to the Trust Assets;

J.      retain and pay third parties pursuant to Article 3.2, 11.5 and/or 11.6;

K.      carry insurance coverage and, as required in the Confirmation Order, obtain a bond as an expense of the Trust;

L.      exercise all powers provided under the Plan, including the right to pursue and settle Causes of Action and object to and settle objections to Claims, subject to the limitations set forth in Article XI hereof and the Plan; and

M.      invest any moneys held as part of the Trust Assets in accordance with the terms of Article 3.3 hereof.

3.2      Action by the Oversight Committee Due to Conflict. The Trustee shall disclose to the Oversight Committee any connections, conflicts or potential conflicts of interest that the Trustee or his firm has with respect to the exercise of any rights, powers, duties and privileges under this Trust Agreement. In the event that the Trustee cannot take any action, including

without limitation the prosecution of any Causes of Action or the objection to any Claim, by

reason of an actual or potential conflict of interest, the Oversight Committee acting by majority

shall be authorized to take any such action(s) in his place and stead, including without limitation

by the retention of professionals (which may include professionals retained by the Trustee) for

the purpose of taking such actions.

3.3    Agents and Professionals.  The Trustee may, but shall not be required to, consult

with and retain attorneys, accountants, appraisers, or other parties deemed by the Trustee to have

qualifications necessary to assist in the proper administration of the Trust, including

professionals previously retained by the Debtors and the Creditors' Committee.  Subject to the

procedures set forth in Article XI, the Trustee may pay the reasonable salaries, fees and expenses

of such persons out of the Trust Assets in the ordinary course of business.

3.4    Investment and Safekeeping of Trust Assets.  All moneys and other assets

received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be

held in trust for the benefit of the Beneficiaries, but need not be segregated from other Trust

Assets, unless and to the extent required by law or the Plan.  The Trustee shall be under no

liability for interest or producing income on any moneys received by it herein and held for

distribution or payment to the Beneficiaries, except as such interest shall actually be received by

the Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by

the Plan, the powers of the Trustee to invest any moneys held by the Trustee, other than those

powers reasonably necessary to maintain the value of the assets and to further the Trust's

liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as

short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid

investments, such as treasury bills.

## ARTICLE IV

## DISTRIBUTIONS FROM THE TRUST

4.1     <u>Liquidation and Distribution of Trust Assets</u>.  Following the transfer of Trust

Assets to the Trust, the Trustee shall make continuing efforts to liquidate all Trust Assets.  The

Trustee shall timely distribute to the Beneficiaries (as such may have been determined at such

time) the net income of the Trust plus all Net Proceeds from liquidating all assets in accordance

with the Plan and this Agreement, except for amounts retained as reasonably necessary to

maintain the value of the Trust Assets, to fund any reserves or to meet claims and contingent

liabilities (including Disputed Claims), and the necessary expenses of the Trustee to fulfill its

duties.  Distributions shall be made in accordance with the Plan and at least annually, and the

Trustee shall not unduly prolong the duration of the Trust.

4.2     <u>Timing of Distributions</u>.  Distributions to the Beneficiaries will be made from the

Trust in accordance with the terms of the Plan.  Notwithstanding the foregoing or anything to the

contrary contained in the Plan:

A.     no Distributions shall be made to the Holder of any Allowed

Priority Tax Claims unless (a) the Trust has sufficient Available Cash to pay, or reserve for, as

the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Trust has

sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all

Priority Tax Claims or (ii) the Oversight Committee consents to all or any portion of such

Distribution;

B.     no Distributions shall be made to the Holder of any Allowed

Miscellaneous Secured Claim unless either (a) the Trust has sufficient Available Cash to pay, or

reserve for, as the case may be, the Face Amount of all Miscellaneous Secured Claims or (b) the Oversight Committee consents to all or any portion of such Distribution;

C.      no Distributions shall be made to the Holder of any Allowed Non-Tax Priority Claims unless (a) the Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Non-Tax Priority Tax Claims or (ii) the Oversight Committee consents to all or any portion of such Distribution; and

D.      no Distributions shall be made to the Holder of any Convenience Claim or General Unsecured Claim unless the Face Amount of all Administrative Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve.

4.3      Withholding from Distributions.  Pursuant to and in accordance with the terms of the Plan, the Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.4      Undeliverable Distributions.  If a distribution is returned to the Trustee as undeliverable, such undeliverable distributions shall be governed by Article VI of the Plan.

4.5      Priorities of Distribution.  The Trustee must pay the operating expenses of the Trust before approving distributions to or for the benefit of the Beneficiaries.

# ARTICLE  V

# BENEFICIARIES

5.1     <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

5.2     <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to Section 4.1 herein and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan.

5.3     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Trust Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities, and (ii) if the rights arising under the Trust Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under Section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Trust Agreement shall make a contrary or different contention.

5.5     <u>Delivery of Distributions</u>.  The Trustee shall make distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE  VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation on any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     <u>Limitation of Trustee's Liability</u>.  Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries and the Debtors are safeguarded; but the Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except for fraud, gross negligence or willful misconduct.  Without limiting the foregoing, the Trustee shall be entitled to the benefits of the exculpation and limitation of liability provisions set forth in the Plan, including, but not limited to Article X.G of the Plan.

6.3     <u>Indemnification</u>. The Trustee and the members of the Oversight Committee, and their respective firms, companies, partners, officers, directors, employees, professionals, advisors, attorneys, financial advisors, investment bankers or agents and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified and receive reimbursement from and against any and all loss, liability, expense (including counsel fees) or damage of any kind, type or nature, which the Indemnified Parties may incur or sustain in the exercise and performance of any of the Trustee's powers and

-12-

duties under this Agreement, or in the rendering of services by Indemnified Party to the Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Trustee's or an Indemnified Person's fraud, gross negligence or willful misconduct (the "Indemnified Conduct"). For the avoidance of doubt and without limiting the generality of the foregoing, the Debtors' former directors, officers, employees, professionals, and representatives retained, employed, or otherwise engaged by the Trustee or the Trust on or after the Effective Date of the Plan shall be Indemnified Parties with respect to Indemnified Conduct rendered to the Trustee after the Effective Date. The amounts necessary for such indemnification and reimbursement shall be paid by the Trustee out of the Trust Assets. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust, and shall inure to the benefit of the Trustee's and the Indemnified Person's heirs and assigns.

## ARTICLE  VII

## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE
## AND OVERSIGHT COMMITTEE MEMBERS

7.1    <u>Initial Trustee</u>.  The initial Trustee shall be Alfred H. Siegel.

7.2    <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal.

7.3     <u>Removal of a Trustee</u>.  Any person serving as Trustee may be removed at any time for cause.

7.4     <u>Resignation of Trustee</u>.  The Trustee may resign at any time.  In the event of a resignation, the resigning Trustee shall render to the Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Oversight Committee and the U.S. Trustee; (ii) the date that is thirty days (30) after the date such notice is delivered; or (iii) the date the accounting described in the preceding sentence is transmitted to the Beneficiaries by first class mail, postage pre-paid.

7.5     <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, incapacity, or removal of a Trustee, the Oversight Committee shall appoint a successor Trustee.  Any successor Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of his heirs and legal and personal representatives, successors or assigns.

7.6     <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his predecessor under this Agreement and the Plan.

7.7     <u>Trust Continuance</u>.  The resignation, death, incapacitation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.  In the event that a successor Trustee is not appointed when required under this Agreement and the Plan, the Oversight Committee shall apply to the Bankruptcy Court for appointment of a successor Trustee.

7.8     Compensation of the Trustee and Costs of Administration.  The Trustee shall receive fair and reasonable compensation for the Trustee's services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trustee from the Trust Assets prior to any distribution to the Beneficiaries.

7.9     Resignation of Oversight Committee Member.  A member of the Oversight Committee may resign at any time.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Trustee, the Oversight Committee and the U.S. Trustee or (ii) the date that is thirty days (30) after the date such notice is delivered.

7.10    Appointment of Oversight Committee Members.  The Oversight Committee must, at all times, have an odd number of members and have no fewer than three (3) members.  In the event that the resignation, death, incapacity, or removal of a member of the Oversight Committee causes the Oversight Committee to fail to satisfy the foregoing requirements, the Trustee shall nominate and the remaining members of Oversight Committee shall approve, by a majority vote, an additional member of the Oversight Committee.

7.11    Compensation of the Members of the Oversight Committee.  Each of the members of the Oversight Committee shall receive compensation at the rate of $5,000 per month for their services to the Oversight Committee, provided, however, that the Chairperson of the Oversight Committee shall receive compensation at the rate of $10,000 per month, which compensation shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the members of the Oversight Committee shall be paid by the Trustee

from the Trust Assets prior to any distribution to the Beneficiaries. Any disputes with respect to the compensation of the members of the Oversight Committee shall be resolved by order of the Bankruptcy Court.

    7.12   <u>Annual Reporting and Filing Requirements</u>.

    A.   Within seventy-five (75) days after the end of each calendar year, the Trustee shall prepare, and shall distribute to any Beneficiary who in writing requests a copy, (i) an unaudited operating statement showing all revenues received by the Trust and expenses of operations of the Trust (including all expenses associated with the sale of any Trust Assets paid by the Trust) during such calendar year and (ii) an unaudited written report and accounting showing the assets and liabilities of the Trust at the end of such year, any changes in the Trust assets, the amount of any reserves of the Trust, and any material action taken by the Trustee in performance of his duties under the Plan and this Agreement during the preceding calendar year.

    B.   Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

    C.   The Plan permits the Trustee to create separate reserves for Disputed Claims. The Trustee may, at the Trust's sole discretion, file a tax election to treat any such reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust. If such an election were made, the Liquidating Trust would comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

## ARTICLE  VIII

## MAINTENANCE OF RECORDS

8.1     The Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Assets, the management thereof, all transactions undertaken by the Trustee, all expenses incurred by or on behalf of the Trust, and all disbursements.  Said books shall be open to inspection by any Beneficiary at any reasonable time during normal business hours.

## ARTICLE  IX

## DURATION OF TRUST

9.1     <u>Duration</u>.  The Trust shall become effective upon the Effective Date of the Plan. Thereupon, the Trust and its provisions herein shall remain and continue in full force and effect until the Trust is terminated.

9.2     <u>Termination Upon Distribution of All Trust Assets</u>.  Upon (i) the Bankruptcy Court's entry of a Final Order closing the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and (b) and (ii) the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all remaining Trust Assets in accordance with the provisions of the Plan, the Confirmation Order and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     <u>Termination After Five Years</u>.  If the Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, and unless the Trust term has been otherwise extended by the Bankruptcy Court in accordance with the terms of the Plan (such extension to be approved by the Bankruptcy Court within six (6) months of the

-17-

beginning of the extended term), the Trustee shall distribute all of the Trust Assets to the

Beneficiaries in accordance with the Plan and immediately thereafter the Trust shall terminate

and the Trustee shall have no further responsibility in connection therewith.

## ARTICLE  X

## MISCELLANEOUS

10.1    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial

interests herein shall be non-assignable during the term of this Agreement except by operation of

law.  An assignment by operation of law shall not be effective until appropriate notification and

proof thereof is submitted to the Trustee, and the Trustee may continue to pay all amounts to or

for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of

assignment by operation of law.  The Trustee may rely upon such proof without the requirement

of any further investigation.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail,

or may be delivered personally, to the Holders at the addresses appearing on the books kept by

the Trustee.  Any notice or other communication which may be or is required to be given, served,

or sent to the Trustee shall be in writing and shall be sent by registered or certified United States

mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if

receipt is confirmed) addressed as follows:

> If to the Trust:
>
> Alfred H. Siegel, CPA, CFF
> Crowe Horwath LLP
> 15233 Ventura Boulevard, Ninth Floor
> Sherman Oaks, California 91403-2250
>
> with a copy to –

[_____]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Bond</u>.  The Trustee shall be required to post a bond in accordance with the terms of the Plan using the Trust's cash on hand to pay the premiums on such bond.

10.4    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia.

10.5    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.6    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.7    <u>No execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

10.8    <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy Court.

10.9    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

-19-

and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.10   Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

## ARTICLE XI

## LIMITATIONS ON CERTAIN ACTIONS BY THE TRUSTEE
## WITHOUT APPROVAL OF THE OVERSIGHT COMMITTEE

11.1   Limitations on Actions. Notwithstanding anything to the contrary contained in this Agreement or the Plan, the Trustee's discretion to settle Claims and Causes of Action, dispose of Assets and retain and compensate professionals shall be subject to the limitations contained in this Article XI..

11.2   Resolution of Claims. The Trustee may resolve objections to Claims which were either pending on the Effective Date or first initiated after the Effective Date as follows:

       A.      without notice to, or consent from, the Oversight Committee where the Face Amount of the Claim is equal to or less than $2,500,000;

       B.      with the affirmative consent of the Oversight Committee where the Face Amount of the Claim is in excess of $2,500,000 but is equal to or less than $20,000,000; and

       C.      with the affirmative consent of the Oversight Committee and approval from the Bankruptcy Court where the Face Amount of the Claim is in excess of $20,000,000.

11.3   Sale of Assets. The Trustee may sell Trust Assets as follows:

A.    without notice to, or consent from, the Oversight Committee where the sales price is equal to or less than $100,000;

B.    with written notice to the Oversight Committee where the sales price is more than $100,000 and equal to or less than $1,000,000 provided that no member of the Oversight Committee objects to the sale within five (5) business days of transmission of the written notice; provided, further that if a member of the Oversight Committee so objects then the Trustee may only proceed with the proposed sale with the consent of the Oversight Committee;

C.    with the affirmative consent of the Oversight Committee where the sales price is more than $1,000,000 and equal to or less than $10,000,000; and

D.    with the affirmative consent of the Oversight Committee and approval from the Bankruptcy Court where the sales price is more than $10,000,000.

11.4    <u>Settlement of Causes of Action</u>.  The Trustee may settle Causes of Action as follows:

A.    without notice to, or consent from, the Oversight Committee where the disputed amount (i.e. gross transfer minus good faith estimates of new value and ordinary course of business) is less than $250,000 and the Trustee proposes to settle such claim for more than 60% of the disputed amount;

B.    with written notice to the Oversight Committee where the disputed amount is less than $250,000 and the Trustee proposes to settle such claim for less than 60% of the disputed amount, provided that no member of the Oversight Committee objects in writing to the proposed settlement within five (5) business days of transmission of the written notice; provided, further that if a member of the Oversight Committee so objects then the Trustee may only proceed with the proposed settlement with the consent of the Oversight Committee;

-21-

C.      with written notice to the Oversight Committee where the disputed amount is between $250,000 and $10,000,000 and the Trustee proposes to settle such claim for more than 60% of the disputed amount; provided that no member of the Oversight Committee objects in writing to the proposed settlement within five (5) business days of transmission of the written notice; provided, further that if a member of the Oversight Committee so objects then the Trustee may only proceed with the proposed settlement with the consent of the Oversight Committee;

D.      with the affirmative consent of the Oversight Committee where the disputed amount is between $250,000 and $10,000,000 and the Trustee proposes to settle such claim for less than 60% of the disputed amount; and

E.      with the affirmative consent of the Oversight Committee and approval from the Bankruptcy Court where the disputed amount is more than $10,000,000.

11.5    <u>Retention of Professionals</u>. The Trustee may retain professionals as follows:

A.      without notice to, or consent from, the Oversight Committee, where the total expected compensation for such professional is expected to be $100,000 or less;

B.      with written notice to the Oversight Committee where the total expected compensation for such professional is expected to be more than $100,000 and less than $1,000,000; provided that no member of the Oversight Committee objects to the proposed retention of the professional within five (5) business days of transmission of the written notice provided, further that if a member of the Oversight Committee so objects then the Trustee may only proceed with the proposed retention with the consent of the Oversight Committee; and

C.      with the affirmative consent of the Oversight Committee where the total expected compensation for such professional is expected to be $1,000,000 or more.

11.6    <u>Compensation of Professionals</u>. The Trustee may compensate professionals as follows:

A.    without notice to, or consent from, the Oversight Committee, where the professional's bill is $50,000 or less;

B.    with written notice to the Oversight Committee where the professional's bill is more than $50,000 and less than $200,000; provided that no member of the Oversight Committee objects to the proposed payment within five (5) business days of transmission of the written notice provided, further that if a member of the Oversight Committee so objects then the Liquidating Trustee may only proceed with the proposed payment ion with the consent of the Oversight Committee; and

C.    with the affirmative consent of the Oversight Committee where the total expected compensation for such professional is expected to be $200,000 or more.

D.    In the event that the Trustee is not authorized to make a payment due to the Trustee or professionals employed by the Trustee pursuant to Section 11.6 because the Oversight Committee has not provided its consent to such payment, (a) the Trustee shall be authorized to make that portion of the payment as to which there is no objection; and (b) to the extent such objection cannot be resolved by the Oversight Committee and the affected professional, the Bankruptcy Court shall retain jurisdiction to resolve such dispute.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

CIRCUIT CITY STORES, INC., on behalf of the Debtors

By: _____
Name:
Title: Chief Executive Officer

ALFRED H. SIEGEL

By: _____
Name:

**EXHIBIT C**

**Non-Exclusive List of Insurance Agreements**

The following is a non-exclusive list of insurance agreements of the Debtors,[1] which agreements shall not be rejected pursuant to Article VII.A. of the Plan.

The listing of an insurance agreement below shall not constitute an admission by the Debtors that such agreement is an executory contract or that any Debtor has any liability thereunder.

The Plan Proponents reserve their right to modify this list to amend agreements or otherwise update this list at any point prior to the Confirmation Date.

| Policy Type | Policy Number | Coverage Period | Carrier |
|---|---|---|---|
| Workers Compensation & Employer's Liability | 6S62UB-0552N90-8-09 | 4/1/09 to 4/1/10 | ACE American Insurance Company |
| General Liability and Non-owned Auto Liability | IRG47865 | 4/1/09 to 4/1/10 | First Specialty Insurance Company |
| Excess Liability | NHA048351 | 4/1/09 to 4/1/10 | RSUI Indemnity Company |
| Foreign Liability Package | WR10004769 | 1/1/09 - 1/1/10 | Insurance Company of the State of Pennsylvania |
| Fiduciary | 8119-7821 | 12/1/08 - 12/1/09 | Chubb Group |
| Fiduciary Excess | FDC0030784-00 | 12/1/08 - 12/1/09 | Arch Insurance Group |
| Crime | 8119-7821 | 12/1/08 - 12/1/09 | Chubb Group |
| Kidnap and Ransom | 8119-7821 | 12/1/08 - 12/1/09 | Chubb Group |
| D&O (Traditional) - Primary | 01-334-81-07 | 12/1/08 - 12/1/09 | AIG |
| D&O (Traditional) - Layer 1 | DOX G23661421 001 | 12/1/08 - 12/1/09 | ACE American Insurance Company |
| D&O (Traditional) - Layer 2 | ELU108518-08 | 12/1/08 - 12/1/09 | XL Insurance |
| D&O (Traditional) - Layer 3 | LSA-VIC-0000006-0 | 12/1/08 - 12/1/09 | Valiant Insurance Group |
| D&O (Traditional) - Layer 4 | V0043160/001A | 12/1/08 - 12/1/09 | C.V. Starr & Co., Inc. |
| Runoff D&O - Primary | 287083253 | 12/1/08 - 12/1/14 | CNA |
| Runoff D&O - Layer 1 | 8209-3152 | 12/1/08 - 12/1/14 | Chubb Group |
| Runoff D&O - Layer 2 (Year 1) | DFX3911891 | 12/1/08 - 12/1/14 | Great American Insurance Group |

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").

| Policy Type | Policy Number | Coverage Period | Carrier |
|---|---|---|---|
| Runoff D&O - Layer 2 (Years 2 - 6) | RAN710840/01/2007 | 12/1/08 - 12/1/14 | Axis Insurance |
| Runoff D&O - Layer 3 | EC06800972 | 12/1/08 - 12/1/14 | Travelers |
| Runoff D&O - Layer 4 | RAN710840/01/2007 | 12/1/08 - 12/1/14 | Axis Insurance |
| Runoff D&O - Layer 5 | NHS627141 | 12/1/08 - 12/1/14 | RSUI Group, Inc. |
| Runoff D&O - Layer 6 | DOX0023851-00 | 12/1/08 - 12/1/14 | Arch Insurance Group |
| Runoff D&O - Layer 7 (Side A DIC) | ELU101502-07 | 12/1/08 - 12/1/14 | XL Insurance |
| Runoff D&O - Layer 8 | 8209-3156 | 12/1/08 - 12/1/14 | Chubb Group |
| Property - Boiler & Machinery | R3011090663 | 8/15/09 - 11/15/09 | Continental Casualty Company |
| Property - All Risk | RMP2083563945 | 8/15/09 - 8/15/10 | Columbia Casualty Company |

**EXHIBIT D**

**Non-Exclusive List of Retained Causes of Action**

The following is a non-exclusive list of potential or actual causes of action and parties against whom the Debtors[1] could assert, have asserted or may potentially assert a claim or cause of action.  The Plan Proponents reserve their right to modify this list to amend parties or otherwise update this list, but disclaim any obligation to do so.  In addition to possible causes of action and claims against the persons or entities listed herein, the Debtors may have, in the ordinary course of business, numerous causes of action, claims, or rights against vendors or others with whom they deal in the ordinary course of business ("Ordinary Course Claims") to the extent such causes of action, claims, or rights have not been assigned to a third party.  The Debtors reserve their right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the claims and causes of action asserted against the parties listed herein.

As set forth in the Plan, the Debtors shall have, prior to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

The Debtors expressly reserve all rights, defenses and counterclaims against any person or entity that has asserted or could assert a claim against the Debtors.

I.       Pre-Petition Active Litigation

II.      Class Action Lawsuits

III.     Bankruptcy Proofs of Claims in Third Party Bankruptcies

IV.      Outstanding Collections

V.       Tax Refund Claims

VI.      Potential New Matters

VII.     Avoidance Actions

---

[1]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").

I.        PRE-PETITION ACTIVE LITIGATION

| | Defendant | Description |
|---|---|---|
| 1. | Etón Corporation<br>1015 Corporation Way<br>Palo Alto, CA  94303 | Pending case concerning dispute over return of product.<br><br>Case No. CL08-1084. |
| 2. | Saafnet Canada, Inc.<br>d/b/a Alphashield Co.<br>107-1089 East Kent Ave.<br>Vancouver BC, V5X 4V9<br>Canada | Breach of contract dispute. |
| 3. | Charter Township of Flint,<br>Michigan<br>1490 S. Dye Road<br>Flint, MI 48532 | Property tax dispute. |

The Debtors may be party to certain other pending pre-petition litigation (the "Pre-Petition Litigation").  The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to the Pre-Petition Litigation, including their right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Pre-Petition Litigation.

II.    CLASS ACTION LAWSUITS

|  | Case Name | Description |
|---|---|---|
| 1. | Remeron Antitrust Litigation<br><br>Settlement Administrator:<br>Complete Claim Solutions, Inc.<br>PO Box 24769<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation. |
| 2. | GlaxoSmithKline's Relafen Antitrust Litigation<br><br>Settlement Administrator:<br>Complete Claim Solutions, Inc.<br>PO Box 24769<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation. |
| 3. | Lupron Marketing Antitrust Litigation<br><br>Settlement Administrator:<br>PO Box 24604<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, District of Massachusetts, No. 01-CV-10861, MDL No. 1430. |
| 4. | Augmentin Antitrust Litigation<br><br>Settelement Administrator:<br>Complete Claim Solutions, Inc.<br>PO Box 24771<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, Eastern District of Virginia, Norfolk Division. |
| 5. | Pharmaceutical Industry Average Wholesale Price Litigation<br><br>Settlement Administrator:<br>Complete Claim Solutions, Inc.<br>PO Box 24743<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, District of Massachusetts, No. 01-CV-12257-PBS, MDL No. 1456. |
| 6. | Terazosin Hydrochloride Antitrust Litigation<br><br>Settlement Administrator:<br>Complete Claim Solutions, Inc.<br>PO Box 24769<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, Southern District of Florida, MDL No. 1317. |
| 7. | Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation<br><br>Claims Administrator:<br>Rust Consulting, Inc. | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, Northern District of California, No. 05-CV-01699-CRB. |

3

| | | |
|---|---|---|
| | PO Box 24675<br>West Palm Beach, FL  33416 | |
| 8. | Nichols, et al. v. SmithKline<br>Beecham Corporation<br><br>Paxil Settlement Administrator<br>PO Box 24754<br>West Palm Beach, FL  33416 | Circuit City Stores, Inc. is claimant in antitrust litigation.<br><br>U.S. Dist. Court, Eastern District Of Pennsylvania, No. 00-CV-6222. |

The Debtors may be party to or have a claim in certain other class action lawsuits (the "Class Action Lawsuits").  The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to such Class Action Lawsuits, including their right to assert a claim in, enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Class Action Lawsuits.

### III.     BANKRUPTCY PROOFS OF CLAIM IN THIRD PARTY BANKRUPTCIES

| | Debtor Name | Debtor Address |
|---|---|---|
| 1. | Theater Extreme Entertainment Group, Inc. | Pencader Corporate Center<br>250 Corporate Blvd., Suite E & F<br>Newark, DE  19702 |
| 2. | Alliance Entertainment, LLC | 4250 Coral Ridge Drive<br>Coral Springs, FL 33065 |
| 3. | Just for Feet, Inc., et al. | Trustee:<br>Charles Goldstein<br>1 East Pratt St., Ste 800<br>Baltimore, MD 21202 |
| 4. | Charter Communications, et al. | Counsel:<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, NY  10022 |
| 5. | iRiver America, Inc. | Trustee:<br>E.Lynn Schoenmann<br>Goldberg, Stinnett, Meyers & Davis<br>44 Montgomery St., Ste 2900<br>San Francisco, CA  94104 |
| 6. | Belle Marmick, Inc.<br>d/b/a Amigos Flooring Monster | Counsel:<br>Steven Spector<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA  90067 |
| 7. | Midway Games Inc., et al. | 2704 West Roscoe Street<br>Chicago, IL 60618 |
| 8. | The National Scrip Center, Inc. | 1745 Copperhill Pkwy<br>Santa Rosa, CA  95403 |
| 9. | Tee Vee Toons, Inc.<br>aka TVT Records | 23 East 4th Street, 3rd floor<br>New York, NY  10003<br><br>Counsel:<br>Alec P. Ostrow<br>485 Madison Ave., 20th floor<br>New York, NY  10022 |
| 10. | Anderson Homes, Inc., et al. | 549 Pylon Drive<br>Raleigh, NC  27606 |
| 11. | Pacific Digital Corporation | 17811 Mitchell N.<br>Irvine, CA 92614 |

| | Debtor Name | Debtor Address |
|---|---|---|
| 12. | Mercedes Homes, Inc., et al. | Counsel:<br>Squire, Sanders & Dempsey, LLP<br>1900 Phillips Point West<br>777 South Flagler Drive<br>West Palm Beach, FL 33401 |
| 13. | Tousa, Inc., et al.<br>aka Newmark Homes | Counsel:<br>Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.<br>150 West Flagler Street<br>Miami, FL 33130 |
| 14. | Source Interlink Companies,<br>Inc. (AEC Direct, LLC) | 4250 Coral Ridge Drive<br>Coral Springs, FL 33065 |
| 15. | Kobra Properties | 3001 Lava Ridge Court, Ste 340<br>Roseville, CA 95661 |
| 16. | General Growth Properties,<br>Inc. et al.[2] | Counsel:<br>Marcia L. Goldstein, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153 |

The Debtors or the Liquidating Trust may hold claims against other third parties who are or may become debtors. The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to such third-party debtors, including their right to file proofs of claim in the associated bankruptcy cases.

---

[2]    As of the date hereof, the bar date for filing proofs of claim has not yet passed in General Growth's bankruptcy cases. The Debtors intend to file proofs of claim prior to the bar date.

## IV.    OUTSTANDING COLLECTIONS

As part of the ordinary course of the Debtors' business with parties in interest, the Debtors became entitled to certain amounts, including receivables, chargebacks, returns, and other amounts (collectively, the "Receivables"), which are currently due and owing to the Debtors by such parties.  The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to the Receivables, including their right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Receivables.

V.    TAX REFUND CLAIMS

| | Tax Refund | Description |
|---|---|---|
| 1. | Federal and state amended tax returns | Amended returns have been filed for fiscal years 2002 through 2006 on account of sale leaseback losses. |
| 2. | Federal and state amended tax returns | The Debtors have requested reordering of the application of payments made on account of federal income taxes, as adjusted, for fiscal years 2001 through 2008 and resulting interest assessments to reflect proper interest netting. |
| 3. | Various state income tax refunds | Amended returns have been filed for fiscal years 2004 through 2006 to reflect NOL carrybacks, federal flow through adjustments, and other amendments. |
| 4. | Florida sales tax refund | The Debtors are seeking collection of a misappropriated post-petition sales tax refund that was offset against an alleged pre-petition liability. |
| 5. | Hawaii excise tax refund | The Debtors have filed a formal protest requesting refund of overassessed excise tax. |
| 6. | Pending state sales tax refunds | The Debtors have requested refunds from states which have been delayed due to administrative and budget issues. |
| 7. | Employment tax appeal | The Debtors have reached agreement with the Internal Revenue Service with respect to an employment tax appeal and are awaiting the release of the funds at issue. |

In addition, the Debtors may be seeking or may determine to seek tax refunds from various state and local taxing authorities (the "Tax Refund Claims").  The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to the Tax Refund Claims, including their right to seek, file for, enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Tax Refund Claims.

VI.     POTENTIAL NEW MATTERS

| | Subject Matter of Litigation | Description |
|---|---|---|
| 1. | Flatscreen Antitrust Litigation | Claims arising from an alleged antitrust conspiracy among manufacturers and distributors of flat panel televisions, including in connection with the multi-district litigation pending in the District Court for the Northern District of California, In re TFT-LCD (Flat Panel) Antitrust Litigation, Nos. M-07-1827 SI and C-07-1827 SI (N.D. Cal.), MDL No. 1827. |
| 2. | Visa/Mastercard Antitrust Litigation | Claims arising from an alleged antirust conspiracy among Visa, MasterCard and their member banks regarding merchant and interchange fees. |
| 3. | Bad Debt Recovery Project | Circuit City Stores, Inc. has retained outside counsel to identify potential opportunities to offset against sales taxes owed or seek a refund in certain states on bad debt amounts for prior taxes paid. |
| 4. | Claims against Non-Released Parties | Any and all claims, causes of action, damages, losses, liabilities, obligations, expenses, debts, dues, sums of money, accounts, reckonings, contracts, controversies, known or unknown, fixed or contingent, direct or indirect, accrued or not accrued, liquidated or unliquidated or suspected or unsuspected, in contract or in tort or otherwise, that the Debtors have against present or former officers, directors, employees, agents, representatives or professionals that are not being released under the Plan, including, but not limited to, claims arising from breach of fiduciary duty, mismanagement, negligence, breach of the duty of loyalty or duty of care, corporate waste, breach of contract or fraud. |

In addition, the Debtors may identify other potential new claims and causes of action (the "Potential New Matters").  The Debtors and the Liquidating Trust retain any and all rights, claims and causes of action with respect to the Potential New Matters, including their right to seek, file for, enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Potential New Matters.

VII.    AVOIDANCE ACTIONS

The Debtors may have certain causes of action against parties in interest under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (the "Avoidance Actions").  Except with respect to persons released under Section X(C) of the Plan, the Debtors and the Liquidating Trust retain all Avoidance Actions with respect to any person or entity, including, without limitation, Avoidance Actions listed on SOFA-3(b) of each of the Debtors' Schedules and Statement of Financial Affairs filed with the Bankruptcy Court, or on any amendments thereto, and all rights with respect thereto, including their right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) such Avoidance Actions.