Ellen A. Friedman (California Bar No. 127684)
*Admitted pro hac vice*
Friedman Dumas & Springwater LLP
150 Spear Street, Suite 1600
San Francisco, California  94105
(415) 834-3800

Roy Terry (VSB No. 17764)
DurretteBradshaw PLC
600 East Main Street, 20th Floor
Richmond, Virginia  23219
(804) 775-6900

Attorneys for Hewlett-Packard Company

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| | ) | **Chapter 11** |
| In re:  **CIRCUIT CITY STORES, INC.**, et al. | ) | |
| | ) | **Case No.:  08-35653-KRH** |
| **Debtors.** | ) | |
| | ) | |
| _____ | ) | **Jointly Administered** |

**RESPONSE OF HEWLETT-PACKARD COMPANY TO
DEBTORS' FORTY-NINTH OMNIBUS OBJECTION TO
CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9) CLAIMS
AND MOTION FOR (I) AUTHORITY TO SETOFF AGAINST SUCH EXPENSES
AND CLAIMS AND (II) A WAIVER OF THE REQUIREMENT THAT THE FIRST
HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE, AND
CROSS-MOTION FOR RECOUPMENT OR SETOFF IN THE ALTERNATIVE**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

ANALYSIS............................................................................................................ 5

    I.     THE DEBTORS' REQUEST THAT THE COURT WAIVE THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE PREJUDICES HP. ........................................................................... 5

    II.    SETOFF UNDER SECTION 558 IS INAPPLICABLE; THE DOCTRINE OF RECOUPMENT CONTROLS.............................................. 6

        A.   Recoupment is Superior in Right than Setoff............................................ 6

        B.   HP has the Right to Recoup the Credits Against its Claims. .................... 7

    III.   THE APPLICATION OF SECTION 558 SHOULD BE LIMITED BASED UPON HP'S CLAIMS IN THIS CASE. ........................................... 10

        A.   Section 558 Should Not be Applied to Permit the Debtors to Setoff Against a Post Petition Claim When the Creditor Holds a Secured Setoff Claim. ........................................................................... 10

        B.   The Debtors' Proposed Allocation of Setoff under Section 558 Provides More Favorable Treatment than Would Occur under Non-Bankruptcy Law................................................................. 12

        C.   HP's 503(b)(9) Expense of Administration Claim Should not be Treated as a Prepetition Claim for Purposes of Setoff. ..................... 13

    IV.   THE CREDITS REQUESTED ARE NOT COLLECTIBLE UNDER THE RESELLER AGREEMENT BECAUSE OF CIRCUIT CITY'S MATERIAL BREACH OF THE RESELLER AGREEMENT........................................................................................... 16

    V.    HP'S CROSS MOTION FOR RECOUPMENT OR SETOFF IN THE ALTERNATIVE. ................................................................................. 16

        A.   HP has the Right to Recoup under the Reseller Agreement. ................. 17

        B.   In the alternative, HP makes this cross motion for setoff and related relief from the automatic stay...................................................... 17

        C.   Relief from the Automatic Stay is Appropriate to Allow HP to Effectuate a Setoff ................................................................................ 19

CONCLUSION.................................................................................................... 19

{00473477.DOC v 1}

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*ASM Capital, LP v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.),*
   2009 U.S. App. LEXIS 20764 (2d Cir. 2009) ................................................................ 15

*Brown & Cole Stores, LLC v. Assoc. Grocers, Inc (In re Brown & Cole Stores, LLC),*
   375 B.R. 873 (9th Cir. BAP 2007) ................................................................................ 13

*Citizens Bank of Maryland v. Strumpf,*
   516 U.S. 16 (1995) ....................................................................................................... 17

*FDIC v. Marine Midland Realty Credit Corp.,*
   17 F.3d 715 (4th Cir. 1994) ...................................................................................... 6, 8

*First Nat'l Bank v. Master Service Corp.,*
   693 F.2d 308 (4th Cir. 1982) ......................................................................................... 8

*Georgetown Steel Co., LLC v. Capital City Ins. Co., Inc. (In re Georgetown Steel Co.),*
   318 B.R. 313 (Bankr. D.S.C 2004) ................................................................................. 8

*In re Braniff Airways, Inc.,*
   42 B.R. 443 (Bankr. N.D. Tex. 1984) ..................................................................... 11, 12

*In re M.W. Ettinger Transfer Co.,*
   1988 WL 129334 (Bankr. D. Minn. Nov. 29, 1988) ............................................... 11, 12

*In re Malinowski,*
   156 F.3d 131 (2d Cir. 1998) ........................................................................................... 7

*In re McMahon,*
   129 F.3d 93 (2d Cir. 1997) ............................................................................................. 7

*In re Plastech Engineered Products, Inc.,*
   394 B.R. 147 (Bankr. E.D. Mich. 2008) ................................................................. 14, 15

*In re PSA, Inc.,*
   277 B.R. 51 (Bankr. D. Del. 2002) ............................................................................... 11

*In re TSLC I, Inc.*
   332 B.R. 476 (Bankr. M.D. Fla. 2005) ................................................................... 11, 12

*In re Univ. Med. Ctr.,*
   973 F.2d 1065 (3d Cir. 1992) ......................................................................................... 8

*In re Westchester Structures, Inc.,*
   181 B.R. 730 (Bankr. S.D.N.Y. 1995) .......................................................................... 12

*In re Women's First Healthcare,*
   345 B.R. 131 (Bankr. D. Del. 2006) ............................................................................ 11

*IRS v. Martinez (In re Martinez),*
   2007 WL 295406 (M.D. Pa. Jan. 29, 2007) ................................................................. 12

*Newbery Corp. v. Fireman's Fund Ins. Co.,*
   95 F.3d 1392 (9th Cir. 1996) .......................................................................... 6, 7, 17, 18

{00473477.DOC v 1}

*Ravenwood Healthcare, Inc. v. Maryland Dept. of Health and Human Servs. (In re Ravenwood Healthcare, Inc.),*
2007 WL 1657421 (D. Md. June 5, 2007) ........................................................................ 8
*Simms v. U.S. Dept. of Health and Human Servs. (In re TLC Hosps., Inc.),*
224 F.3d 1008 (9th Cir. 2000) ....................................................................................... 7
*Tavenner v. U. S. (In re Vance),*
298 B.R. 262 (Bankr. E.D. Va. 2003) ......................................................................... 7, 8, 17
*United States  v. Consumer Health Servs. of America, Inc.,*
108 F.3d 390 (D.C. Cir. 1997) ....................................................................................... 7
*United States v. Offord Fin., Inc. (In re Medina),*
205 B.R. 216 (9th Cir. BAP 1996) ............................................................................... 17
*Westinghouse Credit Corp. v. D'Urso,*
278 F.3d 138 (2d Cir. 2002) ......................................................................................... 8

**State Cases**

*Advance Industrial Finance Company v. Western Equities, Inc.,*
173 Cal. App. 2d 420 (Cal. App. 1959) ....................................................................... 18
*Nat'l Bank & Trust Co. at Charlottesville v. Castle,*
85 S.E. 2d 228 (Va. 1955) ............................................................................................. 6

**Statutes**

11 U.S.C. § 361 ............................................................................................................ 10
11 U.S.C. § 362(a)(7) ................................................................................................... 19
11 U.S.C. § 362(d)(1) ................................................................................................... 19
11 U.S.C. § 502(b)(1) ................................................................................................... 12
11 U.S.C. § 503(b)(9) ........................................................................................... passim
11 U.S.C. § 506(a)(1) ..................................................................................... 10, 13, 15
11 U.S.C. § 553 ............................................................................................... 10, 13, 17
11 U.S.C. § 553(a) ....................................................................................................... 18
11 U.S.C. § 558 .................................................................................................... passim

**Treatises**

1 Witkin Summary 10th (2005) Contracts § 853 .......................................................... 16
5 Collier on Bankruptcy ¶ 553.06[1] (15th ed. rev.) ................................................... 19

{00473477.DOC v 1}

Hewlett-Packard Company ("HP") hereby responds to the Forty-Ninth Omnibus Objection to Certain Administrative Expenses and 503(b)(9) Claims and Motion for (i) Authority to Setoff Against Such Expenses and Claims and (ii) a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference (the "Objection"), filed by Circuit City Stores, Inc. ("Circuit City") and its subsidiary debtors and debtors in possession in the above-captioned cases (collectively with Circuit City, the "Debtors"), as follows:

## INTRODUCTION

HP is one of the largest unsecured creditors in these Chapter 11 Cases, and currently has a general unsecured claim of approximately $97,000,000 for the sale of goods to the Debtors. HP also has a Section 503(b)(9) expense of administration claim in the approximate amount of $33,000,000, as well as a smaller administrative expense claim of approximately $155,000. By this Objection, the Debtors seek to setoff credits and rebates for goods that HP sold to the Debtors prepetition against HP's administrative claims. Yet the Debtors have never paid for these goods. Even worse, depending upon how the Debtors' requested setoff is allocated, the Debtors will demand HP's payment of postpetition credits, after having wiped out HP's superior recoupment claim or secured setoff claim, thereby receiving more than they would outside of a bankruptcy setting. This result would be contrary to the dictates of Sections 506(a)(1) and 503(b)(9) of the Bankruptcy Code and should not be permitted.

The Debtors seek this extraordinary relief in the guise of a routine omnibus objection to claims. They suggest that it will be more efficient for them to setoff receivables, rather than have to sue separately to collect those receivables. The Debtors further seek to

dispense with the protections normally provided to litigants, including the right to a status

conference, discovery, and presentation of evidence before the court hears what is essentially

a dispositive motion, by suggesting that this Court should simply make a determination as to

whether setoff is permitted, regardless of the facts. HP does not believe that this Court will

be able to apply the law in this case without an understanding of the facts, and should decline

to do so. Specifically, HP respectfully suggests that due process will not be served if the

court disposes of a $33,000,000 administrative expense claim and a secured setoff claim in

the manner proposed by the Debtors.

 In the Objection, the Debtors seek, among other things, authorization from this

Court to setoff certain unspecified claims they assert against HP, which they define as the

"receivables," against their obligations to HP under Section 503(b)(9) of the Bankruptcy

Code.[1] The only "receivables" that the debtors have from HP are in fact credits and rebates

arising in connection with the sale of goods to Circuit City, which HP asserts are not

receivables at all, but only a mechanism for the adjustment of a purchase price. The Debtors

base their purported right of offset on Section 558. For the reasons set forth below, HP

asserts that it has a right of recoupment that, when exercised, eliminates any setoff right of

the Debtors. Alternatively, HP asserts that it has rights of setoff under Section 553, and that

regardless of whether Section 558 or Section 553 provides the Debtors with the right to

setoff, when a creditor also holds a secured setoff claim, the correct application of the law is

to require that the setoff be taken against mutual prepetition and postpetition debts so as to

preserve the creditor's secured setoff claim. Finally, HP asserts that to the extent that the

---

[1] Unless otherwise specified, all section references in this Response are to sections of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

Debtors seek to treat its administrative expense claim under Section 503(b)(9) as if it were a prepetition claim, such result should not be permitted.  As HP demonstrates below, any reconciliation of the mutual claims and obligations of HP and the Debtors that does not preserve and protect HP's right of recoupment or secured setoff claim would be contrary to the protections afforded to creditors under the Bankruptcy Code and inequitable under the facts and circumstances of this case.

## BACKGROUND

HP and Circuit City executed a U.S. Consumer Products Reseller Agreement and amendments thereto with effective dates of January 5, 1999, September 21, 2004, and July 1, 2008 and adopted as a part thereof a U.S. Consumer Operations Policy Manual, a U.S. Retailer Addendum, and various other supplements regarding volume resale credit and rebate programs relating to the resale by Circuit City of consumer products it purchased from HP (collectively, the "Reseller Agreement").  The Reseller Agreement is a confidential document and proprietary to HP.  HP has filed a motion concurrently with this response requesting that the Reseller Agreement be filed under seal.

The Reseller Agreement governs the sale and all volume resale credit and rebate programs relating to the resale by Circuit City of consumer products it purchased from HP. Each of the U.S. Consumer Operations Policy Manual and the U.S. Retailer Addendum are addendums to and part of the basic Reseller Agreement and its two amendments.  In addition, Section 5 of the U.S. Consumer Operations Policy Manual establishes rules for the content and processing of all credit and debit memos issued, thereby confirming that all obligations of HP to Circuit City in connection with the sale, marketing, resale, and return of goods is incorporated under the Reseller Agreement.

The Reseller Agreement provides for the sale of goods to Circuit City and also controls all transactions related to the sale of those goods. HP has agreed, pursuant to the Reseller Agreement, that depending upon the volume of sales made to Circuit City, it will provide a discount to Circuit City, thus adjusting the purchase price of the goods sold and incentivizing Circuit City to purchase additional products. In addition, HP provided certain adjustments to the purchase price depending upon the volume of returned goods and marketing for the sale of the goods. These discounts and credits are only available to authorized resellers of HP products, and are designed in contemplation of an ongoing commercial relationship. The Reseller Agreement provides that when the agreement is terminated, the credits are no longer available.

Pursuant to the Reseller Agreement, HP has sold approximately $129,000,000 worth of goods to Circuit City prior to the petition date that remain unpaid. Of that amount approximately $33,000,000 was sold to Circuit City in the 20 days leading up to these Chapter 11 Cases that comprise HP's 503(b)(9) expense of administration claim. Although the dollar amounts comprising HP's claims are quite large, the Court should be aware that the claims and credits themselves are comprised of hundreds of thousands of invoices representing the sale of individual computers, printers and other related products.

Credits were generally determined based upon the volume of shipments in a given quarter. Prior to the filing, HP and Circuit City had an elaborate procedure that would take several months to complete to reconcile credits. Only upon the reconciling of the credits was Circuit City allowed to adjust or deduct amounts it owed against amounts owing to HP, and in that case, only if HP pre-approved it.

## ANALYSIS

I.    **THE DEBTORS' REQUEST THAT THE COURT WAIVE THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE PREJUDICES HP.**

The Debtors have requested that the Court waive the requirement under the

Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of

Notice of Omnibus Objections entered on April 1, 2009, that the first hearing on an objection be

a status conference for the limited basis of proceeding with oral argument on the legal issues

presented in the Objection.  HP submits that the Debtors' request is not possible and prejudicial

to HP.  The facts relating to HP's claim will need to be carefully considered and reviewed by

this Court in order to determine the rights of the parties.  For example, the Court will need to

determine the following based upon the facts and circumstances: (i) whether HP owes the

debtor the credits and rebates under California law; (ii) whether HP has a right of recoupment;

and (iii) the extent of HP's secured setoff claims.  Without an understanding of these facts, the

Court should not make a binding determination on the rights of the parties.  The Debtor is

requesting the Court to make an advisory ruling on the meaning and application of setoff,

recoupment, secured claims and Bankruptcy Code Sections 503(b)(9), 553 and 558, and at the

same time bind the parties without a full hearing.  Rather than reducing expenses of the Debtors

and HP, it will actually cost more to proceed this way, as the facts relating to each and every

issue will have to be heard by the Court even if the Court decides how the law should apply in

theory to various facts.

However, if the Court wishes to proceed along this basis, HP has prepared the

legal arguments set forth below.  To the extent that the Court chooses to address this issue with

other creditors, even if the hearing becomes a status conference for HP, HP respectfully requests

that the Court provide that HP will not be bound by orders with respect to other creditors, or at

least consider the arguments set forth in this response.

## II.   SETOFF UNDER SECTION 558 IS INAPPLICABLE; THE DOCTRINE OF RECOUPMENT CONTROLS.

### A.   *Recoupment is Superior in Right than Setoff.*

Circuit City asserts a right to offset what it terms "pre-petition receivables"

against HP's right to payment under § 503(b)(9). But those so-called "receivables" (which in

this case would be better characterized as "rebate credits") are themselves subject to

recoupment by HP, and so cannot form the basis for any setoff against a separate debt owed by

Circuit City. The Debtors' rights of setoff asserted under Section 558 of the Bankruptcy Code

simply are not applicable to this situation. See *Nat'l Bank & Trust Co. at Charlottesville v.*

*Castle*, 85 S.E. 2d 228, 234 (Va. 1955) (setoff not applicable if recoupment controls: "The cases

cited by the plaintiff on the question of set-off are not in [sic] point here."), a case cited by the

Debtors in support of the Objection.

The difference between setoff and recoupment has been characterized by the

Fourth Circuit as follows: "Setoff is a counterclaim arising from an independent claim that the

defendant has against the plaintiff. Recoupment is the right of the defendant to have the

plaintiff's monetary claim reduced by reason of some claim the defendant has against the

plaintiff arising out of the very contract giving rise to the plaintiff's claim." *FDIC v. Marine*

*Midland Realty Credit Corp.*, 17 F.3d 715, 722 (4th Cir. 1994). While setoff involves mutual

but separate claims held between two parties, the doctrine of recoupment is used to determine

the just and proper extent of a single claim. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95

F.3d 1392, 1399 (9th Cir. 1996) ("In contrast to setoff, recoupment 'is the setting up of a

demand arising from the *same transaction* as the plaintiff's claim of cause of action, strictly for

the purpose of abatement or reduction of such claim.') (quoting 4 Collier on Bankruptcy ¶

553.03, at 553-15 (15th ed. 1995) (emphasis in original)).  The doctrine helps ensure that a

debtor does not obtain a windfall benefit under a contract without regard to its own

unperformed obligations. *Tavenner v. U. S. (In re Vance)*, 298 B.R. 262, 269 (Bankr. E.D. Va.

2003).  To the extent the Debtors are asserting a right to setoff, it is on the basis of a certain

purported right to payment the Debtors claim as their property.  The doctrine of recoupment is

properly invoked to determine the proper amount of that payment right.  Funds subject to

recoupment are not the debtor's property.  *See, e.g.*, *In re Malinowski,* 156 F.3d 131, 133 (2d

Cir. 1998).  Therefore, a creditor need not seek relief from the stay in order to exercise

recoupment rights.  *See Vance*, 298 B.R. at 267 (recoupment a non-statutory exception to the

automatic stay); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d  at 1399.  Only after

recoupment has occurred is it possible to justly offset a debtor's claim against that of a creditor.

*See In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997).  Therefore, HP's right of recoupment must

be considered first before any right the Debtors may have to setoff claims.

     B.       <u>*HP has the Right to Recoup the Credits Against its Claims.*</u>

        Circuit courts of appeal have established two alternative tests to determine

whether the netting of mutual claims and obligations constitute permissible recoupment, i.e.,

whether the claims and obligations arise out of the "same transaction."  Some courts apply a test

that requires that the claims and obligations have a "logical relationship." *Simms v. U.S. Dept.*

*of Health and Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 (9th Cir. 2000);

*Newbery*, 95 F.3d  at 1399–1400; *United States  v. Consumer Health Servs. of America, Inc.*,

108 F.3d 390 (D.C. Cir. 1997).  A logical relationship often exists if the claims arise under a

single contract or involve the same subject matter.  Other courts apply a test requiring that "both

debts . . . arise out of a single integrated transaction so that it would be inequitable for the debtor

to enjoy the benefits of that transaction without also meeting its obligations." *In re Univ. Med.*

*Ctr.*, 973 F.2d 1065, 1081 (3d Cir. 1992); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138,

147–48 (2d Cir. 2002).

        In the Fourth Circuit, there is no circuit-level decision on which test applies, and

the recent decisions of bankruptcy and district courts identify the issue but reach conflicting

conclusions.  *See, e.g.*, *Ravenwood Healthcare, Inc. v. Maryland Dept. of Health and Human*

*Servs. (In re Ravenwood Healthcare, Inc.),* No. MJG-06-3059, 2007 WL 1657421 (D. Md. June

5, 2007) (district court agrees with logical relationship test as the "majority view"); *Georgetown*

*Steel Co., LLC v. Capital City Ins. Co., Inc. (In re Georgetown Steel Co.)*, 318 B.R. 313, 330

(Bankr. D.S.C 2004) (bankruptcy court finds that Fourth Circuit has impliedly adopted

integrated transaction test in unpublished opinion, citing *Thompson v. Bd. of Trustees (In re*

*Thompson)*, 1996 WL 431990 (4th Cir. Aug. 2, 1996).  However, the recent cases in the Fourth

Circuit that have permitted recoupment have found that the transactions at issue satisfy both the

logical relationship and integrated transaction tests.  *See, e.g.*, *Ravenwood; Vance*, 298 B.R. at

69.  In addition, two older Fourth Circuit decisions discussing recoupment generally suggest

that the mutual claims must arise under the same contract.  *See FDIC v. Marine Midland Realty*

*Credit Corp.*, 17 F.3d 715, 722 (4th Cir. 1994); *First Nat'l Bank v. Master Service Corp.*, 693

F.2d 308, 310 n.1 (4th Cir. 1982).

        HP has a classic right of recoupment in this case, and is able to meet either test.

HP and Circuit City entered into the Reseller Agreement.  The Reseller Agreement provides for

the sale of goods and also controls all transactions related to the sale of those goods.  HP has

agreed, pursuant to the Reseller Agreement, that depending upon the volume of sales made to

Circuit City, it will provide a discount to Circuit City, thus adjusting the purchase price of the

goods sold and incentivizing Circuit City to purchase additional products.    In addition, HP

provided certain adjustment to the purchase price depending upon the volume of returned goods

and marketing for the sale of the goods.  The Reseller Agreement governs all of these programs

and the application of a credit memo is part of an integrated transaction for the  adjustment of

the purchase price.

Each of the U.S. Consumer Operations Policy Manual and the U.S. Retailer

Addendum are addendums to and part of the basic Reseller Agreement and its two amendments.

In addition, Section 5 of the U.S. Consumer Policy Operations Manual establishes rules for the

content and processing of all debit memos issued by Circuit City, thereby confirming that all

obligations of HP to Circuit City in connection with the sale, marketing, resale, and return of

goods is incorporated under the Reseller Agreement.  Accordingly, it is clear that the claims and

obligations HP intends to recoup arise under a single contract.

An obligation to reduce the effective purchase price of goods previously sold by

HP to Circuit City based on subsequent resale levels is logically related to claims for payment

by Circuit City to HP of the original purchase price of those goods.  Likewise, the sell-through

and other credits applicable to the actual purchase price payable by Circuit City and the claim

for payment of the purchase price are parts of the integrated transaction for the purchase and

sale of the HP product.  Indeed, it is hard to imagine parts of a transaction that are more closely

integrated than the invoicing of the original purchase price for goods and the subsequent

adjustment of that price.

Finally, disallowance of recoupment by HP would be clearly inequitable and would constitute a windfall to Circuit City because it would permit Circuit City to receive credits from the resale of HP products for which Circuit City did not pay.  With respect to its $97,000,0000 claim, HP cannot expect more than cents on the dollar for its claim, based upon the range of estimated recoveries to be provided to unsecured claims that is set forth in the Disclosure Statement of between 0-13%.

### III.   THE APPLICATION OF SECTION 558 SHOULD BE LIMITED BASED UPON HP'S CLAIMS IN THIS CASE.

A.   *Section 558 Should Not be Applied to Permit the Debtors to Setoff Against a Post Petition Claim When the Creditor Holds a Secured Setoff Claim.*

If the court determines that setoff and Section 558 of the Bankruptcy Code are applicable to HP's claims, the Debtors' setoff rights should be limited to require an offset of prepetition obligations against prepetition claims and postpetition obligations against administrative expense claims.  This result is dictated by the fact that by virtue of its setoff claims, HP has a security interest in the debtor's property under Section 553 and Section 506(a)(1) of the Bankruptcy Code.  By seeking to setoff postpetition credits against the prepetition claim, the Debtors seek to destroy HP's collateral without any adequate protection or due process.   The only way to provide adequate protection for HP's offset claims is to require offset of prepetition claims against prepetition obligations and administrative expense claims against postpetition obligations.

The cases that permit the debtor to offset under Section 558 regardless of whether the obligation is a pre or post petition obligation do not address the situation in which the creditor has a property right in the asset that is required to be protected under Section 361 of

the Bankruptcy Code.  Generally under these cases, unlike HP, the creditor did not have both a

prepetition and administrative claim and rights to setoff in both instances.  *See In re Women's*

*First Healthcare*, 345 B.R. 131 (Bankr. D. Del. 2006) (both offsetting claims prepetition); *In re*

*PSA, Inc.*, 277 B.R. 51 (Bankr. D. Del. 2002) (creditor did not have a prepetition claim, but held

a security deposit for postpetition rent).  The court in *In re PSA* noted that by allowing the

Debtor to setoff under Section 558 without regard to the prepetition to postpetition

requirements, no one was harmed.  The creditor would still receive the equivalent payment and

the debtor's estate would not be reduced by the obligation.  *See In re PSA*, 277 B.R. at 54.

However, the court in *In re TSLC I, Inc.,* 332 B.R. 476 (Bankr. M.D. Fla. 2005),

distinguishes cases such as *In re PSA*, in which the creditor in question does not have an

offsetting prepetition balance.  In *In re TSLC I, Inc.,* the debtor setoff amounts owing to it for

defective goods sold prepetition against goods sold to it postpetition pursuant to a critical

vendor order.  The court held that while the debtor was allowed to setoff under Section 558, the

setoff to be taken would be against the prepetition shipments.  In making that determination, the

court noted that the debtor's setoff of post petition obligations against prepetition claims saved

the debtor and cost the creditor the difference between a prepetition and postpetition setoff.  *In*

*re TSLC I, Inc.,* 332 B.R. at 479.

The court in *In re Braniff Airways, Inc.*, 42 B.R. 443 (Bankr. N.D. Tex. 1984),

noting that the creditor had a secured setoff claim, also required that prepetition debt be offset

by prepetition obligations even if the setoff is being requested by the debtor.  *Braniff* has been

criticized for making that determination without regard to the policy behind Section 558.  *See In*

*re M.W. Ettinger Transfer Co.*, 1988 WL 129334 (Bankr. D. Minn. Nov. 29, 1988) (as pointed

out in *In re TSLC I, Inc.,* the creditor in *Ettinger* did not have a prepetition claim.)[2]   However,

in *Ettinger,* much like in *PSA,* there was no harm to either party.

In both *TSLC I, Inc.* and *Braniff*, the courts required setoff of mutual obligations,

including prepetition debt to prepetition obligations and postpetition debt to postpetition

obligations.   The *TSLC I, Inc.* case relies on equity to make its determination while the *Braniff*

decision refers to the creditor's secured setoff claim issue.   Using either rationale, this court can

require that the Debtors' setoff rights should be limited to require an offset of prepetition

obligations against prepetition claims and postpetition obligations against administrative

expense claims.   Setoff is an equitable remedy that the court may choose to limit or bar based

upon the equities of the situation.   *In re Westchester Structures, Inc.*, 181 B.R. 730, 739–40

(Bankr. S.D.N.Y. 1995); *Braniff* at 448.   The court has the power to determine how setoffs

should be allocated.   *See IRS v. Martinez (In re Martinez)*, 2007 WL 295406 (M.D. Pa. Jan. 29,

2007).

     B.     *The Debtors' Proposed Allocation of Setoff under Section 558 Provides*
     *More Favorable Treatment than Would Occur under Non-Bankruptcy*
     *Law*.

The policy behind Section 558 is to permit a debtor to have all of the defenses

that it would have under state law.   Some courts have held that it permits the debtor to have

those defenses as if there were no bankruptcy.   *See In re Westchester Structures, Inc.*, 181 B.R.

at 740.   Section 558, however, does not by itself provide any greater benefit to a debtor than

would already be available to it.   State law and the parties' contract will determine whether a

debtor may setoff its claim under Sections 502(b)(1) or 558 of the Bankruptcy Code.   *Id.*

Based upon the Debtors' proposed use of Section 558, the Debtors are not using 558 simply as a

---

[2] Braniff has also been criticized for its definition of mutuality, a concept that HP is not contesting in this Response.

defense or shield.  The Debtors are using 558 as a sword in order to obtain more than they would if there were no bankruptcy at all.

HP holds a large prepetition claim and is obligated for a large number of prepetition credits that could be netted against the prepetition claim, and also holds an administrative claim and is obligated for a large number of postpetition credits that can be netted against its administrative claims.  If the Debtors are permitted to setoff the prepetition credits against the 503(b)(9) administrative claim, HP's administrative claim would be dramatically reduced if not eliminated and HP's secured claim would be wiped out.  At the same time, HP would continue to hold a $97,000,000 prepetition claim and postpetition credits to be provided to the Debtor.  HP would lose the ability to setoff those credits against the administrative claim of $33,000,000 (although under Section 553 of the Bankruptcy Code it would be able to) because they would have been previously setoff, and would be required to pay them to the Debtor.  HP, therefore, would lose its rights under Section 553 and its security under Section 506(a)(1), while the Debtor would actually be paid more than it would receive if there was no bankruptcy pending.  This is contrary to the provisions and policy of Sections 558, 506(a)(1) and 553.

C.    *HP's 503(b)(9) Expense of Administration Claim Should not be Treated as a Prepetition Claim for Purposes of Setoff*.

The Debtors have cited *Brown & Cole Stores, LLC v. Assoc. Grocers, Inc (In re Brown & Cole Stores, LLC)*, 375 B.R. 873, 879 (9th Cir. BAP 2007), as a case that recently held that the debtor may offset prepetition claims against 503(b)(9) claims.  However, the Debtors fail to provide any analysis of why the court made that determination.  The *Brown & Cole* court did not reach that decision based upon Section 558 permitting the debtor to setoff

unsecured claims against a priority administrative claim.  Rather the court chose to treat the

creditor's 503(b)(9) claim as a prepetition claim for mutuality purposes under Section 553 of the

Bankruptcy Code.  *See id.* at 878–79.  In coming to this conclusion, the court carefully

examined Section 553 and its requirement for mutuality of prepetition debts being setoff against

each other, and then further determined that "Congress has simply moved those claims up

higher in the priority ladder."  *Id.* at 879.  Other courts that have looked at this case have

criticized it for its analysis of the 503(b)(9) claim as prepetition for purposes of setoff.  *In re*

*Plastech Engineered Products, Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008), has called into

question the reasoning of the *Brown & Cole* court, correcting, for example, its misconception

that no other administrative expense claims arise before bankruptcy.  *See Plastech* at 153.

 While the Debtors have not actually asserted the reasoning behind *Brown & Cole*

*Stores*, by citing the case, HP feels compelled to address this argument.  Although *Plastech*

relates to whether 502(d) is applicable to 503(b)(9) claims rather than setoff, the principle is the

same.  HP urges this Court to adopt the reasoning of *Plastech* and determine that a 503(b)(9)

claim may not be treated as a prepetition claim for purposes under the Bankruptcy Code other

than distributions merely because it arose prepetition.  As stated in *Plastech*:

> [Congress] took this 'special class' of pre-petition claims and
> determined that they are administrative expenses of the
> bankruptcy case, payable and allowable under § 503(b) along with
> all of the other statutorily recognized administrative expenses.  By
> doing so, Congress placed § 503(b)(9) administrative expenses
> beyond the reach of § 502(d).

*Id.* at 164.  The court notes that if Congress had wanted to create a prepetition priority status for

goods received by the debtor within 20 days, it could have easily done so and permitted

disallowance of 503(b)(9) claims under Section 502.  *Id.* at 164.  The court in *ASM Capital, LP*

*v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.),* 2009 U.S. App. LEXIS

20764 (2d Cir. 2009), agreed with the reasoning in *Plastech* and stated:

> First, the Bankruptcy Code establishes a clear division between an
> entity in its pre- and post-petition states.  Administrative expenses
> arise post-petition, and generally cannot be set off against
> prepetition claims…. Second, and more importantly, the
> Bankruptcy Code gives a higher priority to requests for
> administrative expenses than to prepetition claims in order to
> encourage third parties to supply goods and services on credit to
> the estate, to the benefit of all of the estate's creditors.

*Id.* at  *24.

The logic of why Section 502(d) should not affect 503(b)(9) claims should apply

equally to a setoff of a prepetition obligation against a postpetition claim.  The fact that the

503(b)(9) expense of administration claim may have arisen prepetition does not mean that for

setoff or other purposes the claim should not be treated as an expense of administration claim.

Congress could have provided special status to claims arising in the 20 days before bankruptcy

without making them expenses of administration. *See Plastech* at 164. To permit the use of

setoff of a prepetition obligation against 503(b)(9) claims thwarts the policy of providing

administrative claims to those who are willing to provide goods to debtors in the 20 days prior

to the bankruptcy filing.  Congress intended for those creditors to be given an administrative

claim in order to encourage them to ship goods during financially difficult times.  If in fact the

creditor is going to be treated as if it holds a prepetition claim for many purposes such as setoff,

the creditor is deprived of the advantage afforded by Congress.  Section 558 of the Bankruptcy

Code should not be able to be used to deprive creditors of the protections and benefits provided

under 506(a)(1) and 503(b)(9) of the Bankruptcy Code.

IV.    **THE CREDITS REQUESTED ARE NOT COLLECTIBLE UNDER THE RESELLER AGREEMENT BECAUSE OF CIRCUIT CITY'S MATERIAL BREACH OF THE RESELLER AGREEMENT.**

Regardless of whether setoff or recoupment is applicable, under California law, the governing law of the contract, HP is not required to provide credits on goods for which the Debtors have not paid.  It is a material breach of the contract for Circuit City not to have paid for the goods in question, and HP is entitled not to perform.  *1 Witkin Summary 10th (2005) Contracts* § 853, p. 940.

While HP understands that the Chapter 11 Cases pose some limitations on contract law and the aggrieved party to exercise all of its remedies under a contract, the Bankruptcy Code does not force performance on the part of HP in this circumstance.  A non-debtor party to a pre-petition executory contract has no obligation to perform post-petition under the contract if the debtor has materially breached the contract or otherwise acted to excuse the non-debtor party's performance under applicable, non-bankruptcy law.  In addition, the non-debtor party's right to suspend performance is not contingent on pre-petition notice to the debtor of its breach.  Accordingly, HP is not required to perform when the Debtors themselves have materially breached the Reseller Agreement.

V.    **HP'S CROSS MOTION FOR RECOUPMENT OR SETOFF IN THE ALTERNATIVE.**

In further response to this Objection, HP makes this cross motion for recoupment or in the alternative setoff.  As indicated above, HP has a right to recoupment based upon the Reseller Agreement, and HP also meets all of the requirements of Section 553 of the Bankruptcy Code for setoff.

A.    *HP has the Right to Recoup under the Reseller Agreement*.

The tests for allowing recoupment are all set forth in Section II.B. above.  As discussed there, HP has met all of the requirements for recoupment.  Recoupment, by its terms, does not require court approval or relief from the automatic stay.  *See Vance*, 298 B.R. at 267 (recoupment a non-statutory exception to the automatic stay); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d at 1399.   However, based upon the Debtors' Objection, HP felt it prudent to make a motion and seek authority to recoup prior to taking such action.  By this cross-motion, HP seeks to recoup credits it has issued under the Reseller Agreement against its prepetition claim.

B.    *In the alternative, HP makes this cross motion for setoff and related relief from the automatic stay*.

The Bankruptcy Code leaves intact parties' non-bankruptcy rights of setoff.  Section 553 provides in pertinent part that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553; *see Newbery* 95 F.3d at 1398–99.  "The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995) (citation omitted).  In addition, the right to setoff claims "is an established part of our bankruptcy laws . . . [and] should be enforced unless compelling circumstances . . . require otherwise." *United States v. Offord Fin., Inc. (In re Medina)*, 205 B.R. 216, 223 (9th Cir. BAP 1996) (internal quotation and citation omitted).

A creditor may exercise its non-bankruptcy setoff rights pursuant to Section 553 of the Bankruptcy Code where the creditor and debtor have mutual debts that arise prepetition.  11 U.S.C. § 553(a); *see also Newbery,* 95 F.3d at 1398–99.  Section 553 of the Bankruptcy Code does not provide an independent source of law creating setoff rights.  11 U.S.C. § 553(a).  Rather, it is merely a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law.

By the terms of the Reseller Agreement, California law governs the setoff rights of the Debtors and HP here.  California law allows parties to setoff mutual debts. *Advance Industrial Finance Company v. Western Equities, Inc.*, 173 Cal. App. 2d 420 (Cal. App. 1959).  Pursuant to California law, "debts are mutual when they are due to and from the same persons in the same capacity."  *Id at* 427.  Based on applicable California law, HP has valid and enforceable state-law bases under the Reseller Agreement to effectuate a setoff.

The mutuality requirement is clearly satisfied here.  HP (1) issued credits in favor of the Debtors pursuant to sales under the Reseller Agreement and (2) has a claim against the Debtors for outstanding invoices under the Reseller Agreement for the payment of goods.

Applicable non-bankruptcy law permits HP to exercise its statutory and equitable setoff rights against the Debtor.  The obligations that HP seeks to setoff were both incurred prepetition, thereby meeting the requirements of Section 553 of the Bankruptcy Code.

C.    *Relief from the Automatic Stay is Appropriate to Allow HP to
Effectuate a Setoff*

A party seeking to assert its setoff rights must obtain relief from the automatic

stay imposed by Bankruptcy Code § 362(a)(7) prior to applying the asserted setoff.  The

automatic stay does not defeat a right of setoff, rather it merely stays enforcement pending an

orderly examination of the rights of the debtor and creditor.  *5 Collier on Bankruptcy* ¶

553.06[1], at 553-67 (15th ed. rev).  These obligations are appropriately setoff pursuant to

Section 553, California law and HP's equitable rights.  The setoff requires no payment from

the Debtors, and the result is a netting effect, reducing debt owed by both the Debtors and

HP.  Granting relief from the automatic stay to allow HP to enforce its setoff rights does not,

and will not, impair the Debtors' reorganization efforts.  In addition, such relief does not

prejudice the rights of other creditors.  Application of these rights is appropriate at this time,

and cause exists under Section 362(d)(1) of the Bankruptcy Code to grant relief from the

automatic stay to HP, for the limited purpose of effectuating its valid setoff rights.

## CONCLUSION

For the reasons set forth above, HP respectfully requests that this Court: (i) not

waive the requirement that the first hearing on this matter be a status conference; and, to the

extent the Court does rule on the legal issues set forth above, (ii) find that recoupment is a

superior right to setoff and must occur prior to the Debtors' right to exercise setoff rights and

(iii) require that with respect to any setoff against HP's claims, the setoff be taken against

mutual prepetition and postpetition debts so as to preserve the creditor's secured setoff

claims, and that the 503(b)(9) claim be treated as an administrative expense claim, and not a

prepetition claim, for setoff purposes.


Respectfully submitted, this 6th day of November, 2009.



*/s/ Roy M. Terry, Jr.*
Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 E. Main Street, 20th Floor
Richmond, Virginia 23219
Phone: (804) 775-6900
Fax: (804) 775-6911

and

Ellen A. Friedman, Esq., *admitted pro hac vice*
California Bar No. 127684
Friedman Dumas & Springwater LLP
150 Spear Street, Suite 1600
San Francisco, CA 94105
Phone: (415) 834-3800
Fax: (415) 834-1044
Email: efriedman@friedumspring.com

## **Certificate of Service**

I hereby certify that a true and exact copy of the foregoing was served this 6th day of

November, 2009 on counsel for the Debtors by electronic mail as follows:

McGuireWoods LLP
Attn: Douglas M. Foley (dfoley@mcguirewoods.com)
Attn: Dion W. Hayes (dhayes@mcguirewoods.com)

Skadden Arps
Attn: Gregg M. Galardi (gregg.galardi@skadden.com)
Attn: Ian S. Fredericks (ian.fredericks@skadden.com)
Attn: Chris L. Dickerson (chris.dickerson@skadden.com)

/s/ Elizabeth L. Gunn