Ellen A. Friedman, Esq., *admitted pro hac vice*
California Bar No. 127684
Friedman Dumas & Springwater LLP
150 Spear Street, Suite 1600
San Francisco, CA 94105
Phone: (415) 834-3800
Fax: (415) 834-1044
Email: efriedman@friedumspring.com

Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 E. Main Street, 20th Floor
Richmond, Virginia 23219
Phone: (804) 775-6900
Fax: (804) 775-6911

Attorneys for Hewlett-Packard Company

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| In re: CIRCUIT CITY STORES, INC., et al. ) | Chapter 11 |
| ) | Case No.: 08-35653-KRH |
| Debtors. ) | |
| ) | Jointly Administered |

DECLARATION OF CHRISTOPHER J. PATAFIO IN SUPPORT
OF RESPONSE OF HEWLETT-PACKARD COMPANY TO
DEBTORS' FORTY-NINTH OMNIBUS OBJECTION TO
CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9) CLAIMS
AND MOTION FOR (I) AUTHORITY TO SETOFF AGAINST SUCH EXPENSES
AND CLAIMS AND (II) A WAIVER OF THE REQUIREMENT THAT THE
FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS
CONFERENCE, AND CROSS-MOTION FOR RECOUPMENT OR SETOFF IN
THE ALTERNATIVE

{00473403.DOC v 1}

I, Christopher J. Patafio, hereby declare:

1. I am World Wide Credit Manager at Hewlett-Packard Company ("HP"). I make this declaration in support of HP's Response to Debtors' Forty-Ninth Omnibus Objection to Certain Administrative Expenses and 503(b)(9) Claims and Motion for (i) Authority to Setoff Against Such Expenses and Claims and (ii) A Waiver of the Requirement that the First Hearing on Any Response Proceed as a Status Conference, and Cross-Motion for Recoupment or Setoff in the Alternative. Except as otherwise indicated, I have personal knowledge of the facts stated herein and, if called to testify, could and would competently testify thereto.

2. HP and Circuit City executed a U.S. Consumer Products Reseller Agreement and amendments thereto with effective dates of January 5, 1999, September 21, 2004, and July 1, 2008 and adopted as a part thereof a U.S. Consumer Operations Policy Manual, a U.S. Retailer Addendum, and various other supplements regarding volume resale credit and rebate programs relating to the resale by Circuit City of consumer products it purchased from HP (collectively, the "Reseller Agreement"). The Reseller Agreement is a confidential document and is proprietary to HP. I am informed and believe that the Debtors possess a copy of the Reseller Agreement.

3. The Reseller Agreement governs the sale and all volume resale credit and rebate programs relating to the resale by Circuit City of consumer products it purchased from HP. Each of the U.S. Consumer Operations Policy Manual and the U.S. Retailer Addendum are addendums to and part of the basic Reseller Agreement and its two amendments. In addition, Section 5 of the U.S. Consumer Operations Policy Manual establishes rules for the content and processing of all credit and debit memos issued, thereby confirming that all obligations of HP to Circuit City in connection with the sale, marketing, resale, and return of goods is incorporated under the Reseller Agreement.

4. The Reseller Agreement provides for the sale of goods in connection with Circuit City transactions. HP has agreed, pursuant to the Reseller Agreement, that depending upon the volume of sales made to Circuit City, it will provide a discount to

{00473403.DOC v 1}    1

Circuit City thus adjusting the purchase price of the goods sold and incentivizing Circuit City to purchase additional products. In addition, HP provided certain adjustment to the purchase price depending upon the volume of returned goods and marketing for the sale of the goods. These discounts and credits are only available to authorized resellers of HP products, and are designed in contemplation of an ongoing commercial relationship. The Reseller Agreement provides that when the agreement is terminated, the credits are no longer available.

5. Pursuant to the Reseller Agreement, HP has sold approximately $129,000,000 worth of goods to Circuit City prior to the petition date that remain unpaid, and that are consequently subject to a reclamation claim by HP. Of that amount approximately $33,000,000 was sold to Circuit City in the 20 days leading up to the Cases. The claims and credits themselves are comprised of hundreds of thousands of invoices representing the sale of individual computers, printers and other related products.

6. Credits were generally determined based upon the volume of shipments in a given quarter. Prior to the filing, HP and Circuit City had an elaborate procedure that would take several months to complete to reconcile credits. Only upon the reconciling of the credits was Circuit City allowed to adjust or deduct amounts it owed against amounts owing to HP, and in that case, only if HP pre-approved it.

7. HP also had several other agreements with Circuit City, including the Mercury Software License. It is my understanding that HP is not asserting a recoupment right with respect to those agreements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration was executed at Atlanta, Georgia on November 6, 2009.

*[signature]*

Christopher J. Patafio

{00473403.DOC v 1}    2