Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware
19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            – and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF FORTY–EIGHTH AND FIFTIETH OMNIBUS OBJECTIONS TO CERTAIN ADMINISTRATIVE EXPENSES AND 503(b)(9) CLAIMS AND MOTION FOR (I) AUTHORITY TO SETOFF AGAINST SUCH EXPENSES AND CLAIMS AND (II) A WAIVER OF THE REQUIREMENT THAT THE FIRST HEARING ON ANY RESPONSE PROCEED AS A STATUS CONFERENCE**

Circuit City Stores, Inc. ("Circuit City") and

its subsidiary debtors and debtors in possession in the above-captioned cases (collectively with Circuit City, the "Debtors"),[1] hereby submit this Omnibus Reply (the "Reply") in support of the Debtors' Forty-Eighth and Fiftieth Omnibus Objections to Certain Administrative Expenses and 503(b)(9) Claims and Motion for (I) Authority to Setoff Against Such Expenses and Claims and (II) a waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference (D.I. 5211 & 5213); together, the "Objection")[2] and hereby respectfully state as follows:

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2]  Each capitalized term not otherwise defined herein shall have the meaning ascribed to it in the Objection.

## PRELIMINARY STATEMENT

1.   By the Objections, the Debtors object to
certain 503(b) Administrative Expenses and 503(b)(9) Claims
-- the Administrative Expenses -- on the basis that such
Administrative Expenses should be reduced on account of
Circuit City's setoff rights.  In an effort to ease the
administrative burden on this Court and provide affected
creditors with the opportunity to participate in the
resolution of common legal issues, the Debtors also request
that this Court bifurcate the hearing on the Objection.

2.   Specifically, the Debtors request that this
Court resolve any common legal issues at the initial
hearing on November 12 (the "Hearing") and reserve any
factual issues for subsequent hearings with respect to each
Claimant that responded (each a "Respondent" and,
collectively, the "Respondents").  Only after each such
subsequent hearing would the Court enter an order
sustaining/overruling the Objections.  In the Debtors'
view, this process protects creditors' rights.

3.   Nearly every Respondent objected, raising,
among other things, due process and other constitutional
objections and arguing that the Debtors were required to
commence an adversary proceeding to obtain the relief

3

sought by the Objections.  As discussed herein, the proposed process of bifurcating legal and factual issues (i) satisfies constitutional due process, (ii) presents justiciable issues properly considered by the Court and does not constitute a request for an advisory opinion, and (iii) is a cost effective mechanism accepted by other bankruptcy courts facing similar issues.  Moreover, because the Debtors are not requesting any affirmative relief, i.e., the recovery of money or property or a declaration, but simply a ruling on threshold legal issues in a form similar to seeking partial summary judgment, they were not required to commence an adversary proceeding. Consequently, the Respondents' procedural objections should be overruled and this Court may proceed to decide the threshold legal issues presented by the Objections, the Responses, and this Reply.[3]

---

[3]   By this Reply, the Debtors have attempted to address all issues that are ripe for consideration at the Hearing.  To the extent the Debtors have not specifically addressed an argument in this Reply, the Debtors reserve the right to address such argument at the Hearing or in supplemental submissions.  Nothing herein shall constitute a waiver of such rights.  All rights are expressly reserved.

### THRESHOLD LEGAL ISSUES[4]

4.   To assist the Court and the Respondents, the Debtors have identified the following four threshold legal issues, which include the procedural issues raised by the Respondents, should be resolved at the Hearing:

I.   <u>Issue</u>:  Whether this Court may bifurcate the hearing and resolve common legal issues prior to making findings of fact with respect to the specific claims of a Respondent?

<u>Respondents' Position</u>:  Bifurcating the hearing violates the Respondents' due process rights and any decision by the Court violates Article 2 of the Constitution because the Debtors are requesting an advisory opinion.

<u>Debtors' Position</u>:  The process proposed by the Debtors (i) protects the Respondents' due process rights because their right to a subsequent, individual judicial determination is preserved, (ii) is not a request for an advisory opinion because there is a justiciable case and controversy, and, thus, in essence a request for partial summary judgment proper in the context of a contested matter under Bankruptcy Rule 9014, and (iii) has been used by other bankruptcy courts to address similar disputes.  Accordingly, the Court may properly bifurcate the hearing on the Objections and address common legal issues prior to resolving factual disputes.

---

[4]   This section is intended as a summary of the legal issues presented by the Objection, the Responses, and this Reply, as well as the general position of the various Respondents and the Debtors' position.  The "Respondents' Position" may vary somewhat from Respondent to Respondent and not all Respondents presented all of the arguments addressed herein.

II.   <u>Issue</u>:  Whether the Debtors were required to commence an adversary proceeding?

<u>Respondents' Position</u>:  The Debtors are seeking a declaratory judgment or to recover money or property, which must proceed by adversary proceeding.

<u>Debtors' Position</u>:  Setoff is a defense that may be raised in a claim objection and the Debtors need not proceed in an adversary proceeding.  In that regard, the Debtors are not seeking to affirmatively recover money or property nor are they seeking a declaration regarding any such recovery.  Instead, the Debtors are seeking a ruling on threshold legal issues similar to seeking partial summary judgment in the context of a claims objection under Bankruptcy Rule 3007 and a contested matter governed by Bankruptcy Rule 9014.  Thus, it was not necessary for the Debtors to commence an adversary proceeding under Bankruptcy Rule 7001.

III.   <u>Issue</u>:  Whether the Debtors may setoff the Receivables, arising pre- or post-petition, against the Administrative Expenses, even if the Respondent has an alleged general unsecured pre-petition claim?  If the Debtors are not permitted to setoff the Receivables against the 503(b) Administrative Expense when the Respondent holds an alleged general unsecured claim, whether the Debtors may setoff the Receivables, arising pre- or post-petition, against the 503(b)(9) Claims?

<u>Respondents' Position</u>:  Although the Debtors are authorized under Bankruptcy Code section 558 to setoff pre-petition receivables against post-petition administrative expenses, such relief is not warranted when a creditor also holds a general unsecured claim.

<u>Debtors' Response</u>:  Setoff is an equitable remedy and the equities, as well as Bankruptcy Code goals and objectives, favor authorizing the Debtors to setoff the Receivables against the

6

Administrative Expenses.  Even assuming,
_arguendo_, that the Debtors are prohibited from
setting off pre-petition Receivables against
503(b) Administrative Expenses, the 503(b)(9)
Claims are pre-petition claims, and,
consequently, the Debtors should be authorized to
setoff the Receivables against the 503(b)(9)
Claims.

IV.    Issue:  Whether the defense of recoupment
precludes the Debtors from setting off the
Receivables against the Administrative Expenses?
If recoupment applies, whether the logical
relationship standard or the integrated
transaction standard applies?

Respondents' Position:  The Respondents should be
able to recoup under either the logical
relationship or the integrated transaction
standard.

Debtors' Position:  As both setoff and recoupment
are equitable defenses, the equities favor the
Debtors' setoff rights under Bankruptcy Code
section 558.  If recoupment applies, this Court
should adopt the integrated transaction standard
and, consistent with courts in this District and
across the country, construe it narrowly.

**APPLICABLE AUTHORITY**

**I.   THIS COURT MAY BIFURCATE THE HEARING AND RESOLVE
COMMON LEGAL ISSUES PRIOR TO MAKING FINDINGS OF FACT
WITH RESPECT TO EACH RESPONDENT.**

5.    In the Objections, the Debtors requested

that this Court bifurcate the hearings on the Objections to

address threshold legal issues at the first hearing, and

leaving factual issues for any subsequent hearings after

discovery.  Certain Respondents object to this request

arguing that it denies them due process and that any
decision rendered at the first hearing would constitute an
advisory opinion.[5]  The Respondents' arguments should be
rejected on four grounds.

6.   First, the bifurcated hearing process does
not deny the Respondents' due process rights.  The Fourth
Circuit Court of Appeals has recognized that due process is
not a "technical conception of inflexible procedures."
A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1014 (4th Cir.
1986) (internal quotation omitted).  "[R]ather, [it is] a
delicate process of adjustment and of a balancing of
interests in which it is recognized that what is unfair in
one situation may be fair in another." Id. (internal
quotations omitted).  Moreover, when a dispute involves
property rights only, "mere postponement of the judicial
enquiry is not a denial of due process, if the opportunity
given for ultimate judicial determination . . ." is
preserved.  Id. (citing Parratt v. Taylor, 451 U.S. 527,
540 (1981)).

---

[5]   See Response of Alliance Entertainment ("Alliance") (D.I. 5481), at
p. 8 ¶15; Response of Averatec/Trigem USA, Inc. ("Averatec") (D.I.
5415), at p. 8; Response of Vonwin Capital Management, L.P. (D.I.
5509), at p. 3, incorporating the Response of Averatec (D.I. 5415).

7.   Here, the Debtors are proposing a two step adjudication process whereby, first, the Court addresses threshold legal issues common to all Respondents, and, second, the Court may hold subsequent hearings to address factual issues that may be unique to a Respondent.  Thus, no "ultimate judicial determination" is made without a Respondent receiving adequate notice and opportunity to be heard on all issues.  Consequently, there is simply no due process violation.

8.   Second, this Court is not being asked to render an advisory opinion by resolving the threshold legal issues presented by the Objections and Responses. Specifically, the Court would be issuing an advisory opinion if the Court were being asked to render a decision based on hypothetical facts, or to address abstract issues lacking a concrete factual basis.  See In re Nixon, 2007 WL 1394033, *3 (Bankr. N.D. W. Va. May 9, 2007).  A party is not seeking an advisory opinion when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality."  Id. (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

9

9.   Moreover, courts have held that a party is
not seeking an advisory opinion merely by requesting that
the court address threshold legal issues before making a
determination on underlying facts.  See Thomas v. Union
Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985) ("The
issue presented in this case is purely legal, and will not
be clarified by further factual development . . . . 'One
does not have to await the consummation of threatened
injury to obtain preventive relief. If the injury is
certainly impending, that is enough.'") (citation omitted);
Pac. Gas & Elec. Co. v. State Energy Res. Conservation &
Dev. Comm'n, 461 U.S. 190, 201 (1983) (holding that a case
is ripe for decision even though all the factual predicates
ordinarily necessary for review have not been met when the
question presented was predominantly legal and withholding
a decision would work a substantial hardship on the
parties); Satellite Broad. & Communs. Ass'n v. FCC, 275
F.3d 337, 369 (4th Cir. 2001) (holding that a case is ripe
for review when it raises purely legal questions).

10.  Here, however, the Debtors are requesting
that the Court rule on specific threshold legal issues
presented by a multitude of Claims and Responses.  These
legal issues are live controversies or disputes between the

Debtors.  Indeed, in the Objections, the Debtors have set

forth sufficient facts to demonstrate that there is a

substantial controversy between the Debtors and the

Respondents and that the parties have adverse legal

interests of sufficient immediacy and reality such that

there is a justiciable issue to be resolved, not an

advisory opinion requested.

11.   Third, the process the Debtors are seeking

to employ fits easily within the Bankruptcy Rules.  As this

Court well knows, pursuant to Bankruptcy Rule 3007 a claims

objection need not be made in an adversary proceeding.

Moreover, upon receiving the Responses, the claims

objection is a contested matter governed by Bankruptcy Rule

9014.  See In re Fleming, 2008 WL 4736269, * 1 (Bankr. E.D.

Va. Oct. 15, 2008) (Huennekens, J.) ("The hearing on the

claim objection is treated as a contested matter, and Fed.

R. Bankr. P. 9014 applies.").  As such, certain rules,

under part VII of the Bankruptcy Rules are applicable,

including Bankruptcy Rule 7056, which incorporates Rule 56

of the Federal Rules of Civil Procedure (the "Civil

Rules").  See id.; see also Fed. R. Bankr. P. 7056.

12.   Under Civil Rule 56, a party may request

partial summary judgment.  See Fed. R. Civ. P. 56(a), (b)

(providing that any party "may move, with or without
supporting affidavits, for summary judgment on all or part
claim."). Here, the Debtors have, in essence, requested
partial summary judgment on certain legal issues for which
no genuine issue of material facts is in dispute. Thus,
the Debtors' request to bifurcate the hearings is proper
under the applicable rules of Bankruptcy Procedure.

13. Finally, the same exact process requested by
the Debtors has been followed by other bankruptcy courts in
similar situations. See, e.g., In re Leeds Bldg. Prods.,
Inc., 141 B.R. 265, 266 (Bankr. N.D. Ga. 1992)
(implementing a bifurcated hearing process whereby
threshold legal issues were resolved prior to making
specific findings of fact concerning each claimant); In re
Plastech Engineered Prods., Inc., 394 B.R. 147, 149 (Bankr.
E.D. Mich. 2008) (issuing an opinion addressing a legal
threshold issue without making findings as to the merits of
any particular claim).[6]  In that regard, the decision in

---

[6]  See also In re Stegall, No. 05-09519, 2007 WL 1125635, *1 (Bankr.
S.D. Iowa Apr. 3, 2007) (noting that the court would consider the
primary threshold legal issue before receiving factual information
or a presentation of evidence on the merits of the parties' claims);
In re Hackney, 351 B.R. 179, 181 (Bankr. N.D. Ala. 2006) (holding
that the court would consider the threshold legal issue underlying a
claim before it considered the claim's merits); In re Dawson, 346
B.R. 503, 507 (Bankr. N.D. Cal. 2006) (noting that the court issued
(continued)

Leeds is particularly instructive.  In Leeds, the debtor
requested that the court resolve common legal issues
applicable to all reclamation claimants before issuing
findings of fact concerning each claimant's reclamation
rights.  In re Leeds Bldg. Prods., Inc., 141 B.R. at 266.
This is precisely the relief the Debtors seek here.

          14.  Therefore, the process proposed by the
Debtors is appropriate and any objections thereto should be
overruled.

**II.  THE DEBTORS ARE PERMITTED TO PROCEED BY CLAIM
      OBJECTION AND ARE NOT REQUIRED TO COMMENCE AN
      ADVERSARY PROCEEDING.**

     **A.   Setoff Is A Defense That May Be Raised In The
           Context Of A Claim Objection.**

          15.  In the Objections, the Debtors raised setoff
as a defense and did not seek to recover affirmatively any
property or other amount owed to Circuit City by the
Respondents.  Nonetheless, certain Respondents argue that
the Debtors must commence an adversary proceeding to seek

---

a memorandum of decision addressing the underlying legal issues
before resolving remaining factual issues); In re Hicks, 300 B.R.
372, 375 (Bankr. D. Idaho 2003) (holding that because a threshold
legal issue emerged from the parties' arguments, the court would
consider the legal issue first and reserve any evidentiary issues
for a subsequent hearing); In re Lenartz, No. 01-40268, 2001 WL
35814401, *1 (Bankr. D. Idaho May 3, 2001) (holding that before
conducting an evidentiary hearing on the merits, the court would
decide the underlying threshold legal issue).

setoff because setoff amounts to the recovery of money or
property under Bankruptcy Rule 7001(1).[7]  The Respondents,
however, fail to cite any authority to substantiate that
contention, and instead, certain Respondents rely on In re
Best Products, Co., 203 B.R. 51, 54 (Bankr. E.D. Va. 1996),
a case addressing a request for an injunction.  See, e.g.,
Response of Averatec, at p. 10.  The Debtors have not,
however, requested injunctive relief and any reliance on
Best Products is misplaced.

    16.  More importantly, that contention is
inconsistent with Bankruptcy Rule 3007 ands reads
Bankruptcy Rule 7001 too broadly.  In particular, pursuant
to Bankruptcy Rule 3007, the Debtors are permitted to
object to claims.  See Fed. R. Bankr. P. 3007(a) ("An
objection to the allowance of a claim shall be in writing
and filed.").  Critically, Bankruptcy Rule 3007, not 7001,
governs objections to claims.  See Fed. Bankr. R. 7001
advisory committee's note (stating that "objections to
claims are governed by [Bankruptcy] Rule 3007.").  And,
critically, by the Objections, the Debtors are not seeking

---

[7]   See Response of Averatec (D.I. 5415), at p. 9; Response of Vonwin
      Capital Management, L.P. (D.I. 5509), at p. 3, incorporating the
      Response of Averatec (D.I. 5415).

any affirmative relief such as the recovery of money or
property or an injunction, that might otherwise require
them to commence an adversary proceeding.  See Fed. R.
Bankr. P. 3007(b).  Instead, the Debtors are only raising
an affirmative defense to the allowance of the
Administrative Expenses.

17.  Specifically, a debtor is authorized (and in
certain instances compelled) to raise defenses to claims in
a claim objection.  See In re Handy Andy Home Imp. Centers,
Inc., 222 B.R. 571, 573-74 (Bankr. N.D. Ill. 1998)
("However, just as 'proofs of claim have been held
analogous to complaints initiating civil actions[,] an
objection to a claim should meet the standards of an
answer.' . . . According to Federal Rule of Civil
Procedure 8(b), an answering party must 'state in short and
plain terms the party's defenses to each claim and shall
admit or deny the averments upon which the adverse party
relies.'" (internal citations omitted)).  Moreover, setoff
is a defense.  E.g., Apache Prods. v. Mr. Winter, Inc. (In
re Apache Prods.), 2004 Bankr. LEXIS 1500, *5 (Bankr. M.D.
Fla. Oct. 4, 2004); see also In re Blanton, 105 B.R. 321,
333 (Bankr. E.D. Va. 1989) (characterizing setoff as both a

"defense" and an "equitable remedy").  It follows, that
setoff may be raised as a defense in a claim objection.

18.  Indeed, at least one court has requested
that a debtor assert its setoff rights by way of a claim
objection.  In re Cumberland Farms, Inc., 249 B.R. 341, 348
(Bankr. D. Mass. 2000) (ordering the debtor to file an
objection to a creditor's claim and raise any setoff
defenses).  Although the Court did not specifically address
the issue presented here, in considering the debtor's
setoff rights in the context of a claim objection, the
Court drew a distinction between circumstances in which a
debtor raises setoff as a defense up to the amount of the
claim and circumstances in which a debtor seeks to recover
amounts in excess of the creditor's claim.  See Cumberland
Farms, Inc., 249 B.R. at 343-44 ("[The Debtor] asserts
setoff rights only.  It does not seek judgment against [the
creditor] for the excess of its claim over the undisputed
portion of the [the creditor's] claim.").  After concluding
that the debtor was entitled to more than the amount of the
creditor's claim, the Court disallowed the claim in full.
Because the debtor was not seeking to recover amounts in
excess of the claim, the court did not grant any

affirmative relief, such as turnover of additional amounts.
Id. at 360.

19.   The relief sought by the debtor in
Cumberland Farms is precisely the relief requested by the
Debtors here.  In particular, the Debtors do not seek
affirmative relief; they only seek to setoff the
Receivables to the extent of the alleged Administrative
Expenses.

20.   Finally, the procedure employed by the
Debtors here is not uncommon.  See Brown & Cole Stores, LLC
v. Assoc. Grocers, Inc. (In re Brown & Cole Stores, LLC),
375 B.R. 873, 876 (9th Cir. B.A.P. 2007) (noting debtor's
objection to an administrative expense claim included a
claim for setoff); In re PSA, Inc., 277 B.R. 51, 52-3
(Bankr. D. Del. 2002) (noting that, procedurally, the
matter was before the court based on creditor's motion to
compel payment under section 503(b)(1)(A) and the debtor's
objection to that motion seeking to offset the claim
against prepetition receivables).

21.   Accordingly, the Debtors were not required
to commence an adversary proceeding to raise their setoff
rights.

### B.    The Debtors Are Not Seeking A Declaratory Judgment.

22.   Alternatively, certain Respondents argue that the Debtors are seeking a declaratory judgment with regard to the recovery of money or property.  As such, they contend that Bankruptcy Rules 7001(1) and (9) govern the Debtors' request.[8]  These Respondents, however, read Bankruptcy Rule 7001(9) too broadly, as any claim for partial summary judgment relief would then be considered a declaratory judgment action.  It is not.

23.   In any event, the Debtors are not seeking to recover money or property; they are asserting an affirmative defense and seeking a legal ruling that Bankruptcy Code section 558 permits the Debtors to setoff the Receivables against the Administrative Expenses. Consequently, Bankruptcy Rule 7001(9) is inapplicable. Accordingly, the Respondents' objections should be overruled.

---

[8]   See Response of Averatec (D.I. 5415), at p. 9; Response of Vonwin Capital Management, L.P. (D.I. 5509), at p. 3, incorporating the Response of Averatec (D.I. 5415); see also Response of Nyko Technologies, Inc. (D.I. 5494), at p. 5; Response of Southpeak Interactive, LLC (D.I. 5501), at p. 5.

### III. THE DEBTORS SHOULD BE PERMITTED TO SETOFF THE RECEIVABLES AGAINST THE ADMINISTRATIVE EXPENSES.

### A. The Debtors Proposed Setoff Is Consistent With Applicable Law And The Bankruptcy Code's Goals And Objectives.

24. Pursuant to Bankruptcy Code section 558, the Debtors seek to setoff the Receivables against the Respondents' Administrative Expenses, *i.e.*, 503(b) Administrative Expenses and 503(b)(9) Claims.[9]  In response, collectively the Respondents assert that (i) the Debtors are not permitted to setoff against their Administrative Expenses,[10] (ii) if Debtors are so permitted, they must

---

[9]  As set forth in the Objection, section 558 preserves the Debtors' state law setoff rights.  In the Objection the Debtors cited Virginia setoff law for illustrative purposes.  Certain Respondents, however, objected to the Debtors use of Virginia setoff law. Setting aside the issue of which state law applies for a subsequent hearing, the Respondents ignore the fact that the setoff standard is nearly identical under various state laws that could apply.  See, e.g., Heimbrock v. Heimbrock, No. CV085004975S, 2009 WL 1662469, *3 (Conn. Super. Ct. 2009) (stating that the law of set-off requires that there be mutual debts between the parties); Clark v. Cannon Steel Erection Co., 835 N.E. 2d 394, 402 (Ill. App. Ct. 2005) (same); Schwalm v. Zachrais Constr., No. 00-06-090, 2002 WL 596808, *8 (Feb. 7, 2002) (same); Granberry v. Islay Invs., 889 P.2d 970, 972-73 (Cal. 1995) (same); In re Midland Ins. Co., 79 N.Y. 2d 253, 259 (N.Y. 1992) (same); Billman v. State of Md. Deposit Ins. Fund Corp., 593 A.2d 684, 691 (Md. 1991) (same); Cooper v. Hubbard, 703 S.W. 2d 494, 496 (Ky. App. 1986) (same); Fed. Deposit Ins. Corp. v. Pioneer State Bank, 382 A.2d 958, 962 (N.J. 1977) (same); Sarkeys v. Marlow, 235 P.2d 676, 677 (Okla. 1951) (same); In re Kenin's Estate, 29 A.2d 495, 496 (Pa. 1943) (same); Everglade Cypress Co. v. Tunnicliffe, 107 Fla. 675, 678 (1933) (same); Brown v. Perry, 156 A. 910, 914 (Vt. 1931) (same); Woods v. Metro. Nat'l Bank, 234 P. 672, 672 (Wash. 1925) (same).

[10]  See Response of Averatec, at p. 11; Response of Alliance, at p. 14; Response of Imagination Entertainment (D.I. 5533); Response of
(continued)

19

setoff first against the Respondents' unsecured claims, and then, to the extent any Receivables remain, against the Administrative Expenses,[11] or (iii) in the event the Debtors are permitted to setoff the Receivables against the Administrative Expenses, pre-petition Receivables should only be setoff against unsecured claims and post-petition Receivables should be setoff against the Administrative Expenses, including the 503(b)(9) Claims.[12]  The Debtors, however, contend that setoff (1) furthers the goals and objectives of the Bankruptcy Code, and (2) is consistent with Fourth Circuit law concerning administrative expenses.

25.  First, the Debtors should be authorized to setoff the Receivables against the Administrative Expenses because such relief is consistent with the Bankruptcy Code's goals and objectives.  E.g., Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re The

---

Thomson, Inc. (D.I. 5518), at p. 3; Response of Vonwin Capital Management, L.P. (D.I. 5509), at p. 3, incorporating the Response of Averatec (D.I. 5415); see also Response of Digital Innovations, LLC on behalf of Vonwin Capital Management, L.P. (D.I. 5474), at p. 3; Response of Nyko Technologies, Inc. (D.I. 5494), at p. 2; Response of Southpeak Interactive, LLC (D.I. 5501), at p. 2.

[11]  See Response of Actiontec (D.I. 5382); Response of Alliance, at p. 17; Response of TiVo Inc. (D.I. 5426), at p. 2; see also Response of Audiovox Corporation (D.I. 5476), at p. 3; Response of SIMA Products Corp. (D.I. 5485) at p. 3.

[12]  See Response of TiVo Inc. (D.I. 5426), at p. 4.

Bennett Funding Group, Inc.), 212 B.R. 206, 212 (2d Cir. B.A.P. 1997), aff'd 146 F.3d 136 (2d Cir. 1998) ("Once the technical requirements of setoff are satisfied, 'the bankruptcy judge must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives."). "Specifically, [t]hese goals [and objectives] include . . . equitable treatment of all creditors.'" Id. (emphasis added); Matter of Martin, 130 B.R. 930, 939 (Bankr. N.D. Ill. 1991) ("In analyzing the doctrine of setoff, courts have scrutinized its application in light of the goals and objectives of bankruptcy.  Few will dispute that . . . equitable treatment of creditors is a goal Congress intended to achieve through an orderly bankruptcy process." (internal citations omitted)).  Consequently, the Court evaluating setoff should favor the treatment that is most likely to result in equal distributions to the Debtors' creditors as a whole.  See In re Colonial Realty Co., 229 B.R. 567, 575 (Bankr. D. Conn. 1999) (holding that the right to setoff is not absolute and must be balanced against the debtor's duty to maximize assets of the bankruptcy estate and equitable treatment of other creditors).

26.   Here, allowing the Debtors to offset the
Receivables against the Administrative Expenses will result
in the greatest recovery to creditors because it will
permit the Debtors to reduce the highest priority claims
asserted against their estates on a dollar-for-dollar basis
and thereby increase the assets available to similarly
situated and junior creditors.

27.   Critically, in the absence of a statute
directing otherwise, this court retains the discretion to
allocate the Debtors' offset rights in this fashion.  See
United States Internal Revenue Serv. v. Martinez (In re
Martinez), 2007 U.S. Dist. LEXIS 6163 (M.D. Pa. Jan. 29,
2007) (holding that the bankruptcy court had discretion to
restrict setoff solely to priority claims where creditor
also held a general unsecured claim against the debtor).
As one court recognized, "the right of setoff is within the
bankruptcy court's discretion, and it may 'invoke equity to
bend the rules,' if required, to avert injustice."  In re
The Bennett Funding Group, Inc., 212 B.R. at 212.

28.   This is especially true here because the
Respondents have asserted 503(b)(9) Claims, which, until
recently, were general unsecured claims, except to the
extent the Respondent had a valid setoff right.  See In re

22

Laues, 90 B.R. 158, 162 (Bankr. E.D.N.C. 1988) (stating

that "[a] claim that is subject to setoff is treated as a

secured claim to the extent of the amount subject to

setoff, but it is treated as secured *only to that extent*.")

As secured claims, such claims received payment in full up

to the amount of the setoff.  See In re Thompson, 182 B.R.

140, 154 (Bankr. E.D. Va. 1995) ("[A]s a general

proposition, a '[s]etoff ... elevates an unsecured claim to

secured status, to the extent that the debtor has a mutual,

pre-petition claim against the creditor.'") (quoting Lee v.

Schweiker, 739 F.2d 870, 875 (3d Cir. 1984).  Consequently,

until 2005, it was irrelevant which aspect of the

Claimants' pre-petition claims was subject to setoff.

29.  By adding Bankruptcy Code section 503(b)(9)

as part of the 2005 amendments, Congress altered the

treatment for certain pre-petition claims such that the

claims would be paid in full under a plan, regardless of

whether the claimant asserted a setoff right.  See In re

Brown & Cole Stores, LLC, 375 B.R. at 879 (reasoning that

503(b)(9) claims by definition are pre-petition claims);

see also 11 U.S.C. § 1129(a)(9) (providing for payment in

full of claims specified in section 507(a)(2)).

30.   Under the current law, if the Debtors are prohibited from offsetting the Receivables against the 503(b)(9) Claims, the Respondents will receive payment in full on account of pre-petition claims converted to priority under Bankruptcy Code section 503(b)(9) and payment in full on the portion of their unsecured claim equal to the amount of the Receivables.  Consequently, each Respondent will receive payment in full equal to twice the amount entitled to payment in full prior to the 2005 Bankruptcy Code amendments.

31.   As a result, the Debtors' other creditors will be deprived of the benefit of having administrative priority claims reduced on a dollar-for-dollar basis, which will necessarily result in fewer assets available to distribute to the greater creditor group.

32.   Thus, to further the goals and objectives of the Bankruptcy Code, this Court should authorize the Debtors to setoff the Receivables against the Administrative Expenses, with the Debtors' rights with respect to any remaining Receivables preserved.

33.   Second, the Debtors' proposed setoff is consistent with the Fourth Circuit's general mandate to construe administrative expenses narrowly to preserve the

24

Debtors' resources for equal distributions.  As this Court
is well aware, the Fourth Circuit Court of Appeals has
repeatedly held that administrative expenses must be
narrowly construed.  E.g., Ford Motor Credit Co. v.
Dobbins, 35 F.3d 860, 865 (4th Cir. 1994) (holding that
"statutory priorities must be narrowly construed."); In re
Merry-Go-Round Enterpr. v. Simon DeBartolo Group, 180 F.3d
149, 157 (4th Cir. 1999) (same).  This is true because
"[t]he presumption in bankruptcy cases is that the debtor's
limited resources [should] be equally distributed among the
creditors."  Id.  Here, the proposed setoff best preserves
the Debtors' limited resources because it enables the
Debtors to realize value on the Receivables against the
highest priority claims asserted against their estates and
retain other assets for other pari passu and junior
creditors.

> **B.     Bankruptcy Code Section 553 Does Not Bar The
> Debtors' Proposed Setoff.**

34.  Notwithstanding the foregoing, certain
Respondents also contend that the Debtors' proposed setoff
is barred under Bankruptcy Code section 553 because it
impairs any potential setoff rights the Respondents may

have thereunder.[13]  In support, the Respondents rely upon
the phrase "[e]xcept as otherwise provided in this section
. . . this title does not affect any right of a creditor to
offset a mutual debt owing by such creditor to the debtor
that arose before the commencement of the case under this
title."  See 11 U.S.C. § 553.  In reaching this conclusion,
however, the Respondents misconstrue section 553's
application.

35.  The phrase relied upon by the Respondents
has been specifically and repeatedly held not to create any
independent rights.  See In re Calore Exp. Co., Inc., 288
F.3d 22, 43 (1st Cir. 2002) ("As a general matter, 11 U.S.C.
§ 553 does not create a scheme of priority for the setoff
rights it preserves, any more than it creates those rights
themselves."); In re Bennett Funding Group, Inc., 146 F.3d
136, 138-39 (2d Cir. 1998) ("Section 553(a) . . . does not
create a right of setoff, but rather preserves whatever
right exists under applicable non-bankruptcy law.").
Instead, the phrase has been interpreted to merely preserve
a creditor's setoff right, if any, under applicable state
law.  Id.; see also In re Camellia Food Stores, Inc., 287

_____
[13] See Response of Alliance, at p. 20; Response of TiVo Inc., at p. 3.

B.R. 52, 59 (Bankr. E.D. Va. 2002 ("No federal right of
setoff is created by the Bankruptcy Code[.]  [Section 553]
merely preserves the right of setoff as it is allowed under
nonbankruptcy law with certain limitations.").

36.  More importantly, there is an additional
hurdle to overcome to assert setoff rights under section
553.  Specifically, the creditor must establish that both
debts arose prior to the petition date.  See In re
Camellia, 287 B.R. at 59 (noting that in order to claim a
right of setoff pursuant to section 553, a creditor must
demonstrate "(1) a debt owed by the creditor to the debtor,
which arose prior to the commencement of the bankruptcy
case; (2) a claim of the creditor against the debtor, which
arose prior to the commencement of the bankruptcy case").

37.  Assuming, arguendo, the Respondents can
satisfy a pre-petition right of setoff under state law,
this Court must still consider the equities of the case to
determine whether setoff is warranted.  See In re
Securities Group 1980, 74 F.3d 1103, 1114 (11th Cir. 1996)
("[T]he right to a set off under § 553 is merely permissive
and subject to the discretion of the bankruptcy court.");
In re Lambert Oil Co., Inc., 347 B.R. 508, 520 (W.D. Va.
2006) ("After a court determines that the prerequisites for

27

setoff exist, it generally looks to the equities to determine if the setoff should be allowed.").

38.   Certain Respondents contend that it would be inequitable to permit the Debtors to setoff first against their Administrative Expenses because it would deprive them of any setoff against their unsecured claims.   The Respondents argument is more properly characterized as marshalling.

39.   Marshalling, however, is simply not applicable.   In particular,

> The equitable doctrine of marshaling exists for the benefit of persons who hold a subordinate secured claim in property; it holds that where a secured creditor has a lien on two funds or parcels, and the junior lienor has a lien on only one of those two properties, a court of equity may compel the former to satisfy his debt out of the property which is encumbered by only his lien.

In re Price, 50 B.R. 226, 230 (Bankr. E.D. Mich. 1985); see also Meyer v. United States, 375 U.S. 233, 236 (1963) (stating that "the equitable doctrine of marshalling [sic] rests upon the principle that a creditor having two funds to satisfy his debt may not, by application of them to his demand, defeat another creditor, who may resort to only one of the funds." (quotation omitted)).

40.   None of the Respondents is a junior secured lienholder, but rather all of the Respondents are simply alleged administrative creditors and/or unsecured creditors.  Consequently, the Respondents' rights to insist on the Debtors proceeding first against their unsecured claims is questionable at best.  Compare, Gayley & Lord Inc. v. Arley Corp., 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999)(noting that "[a]n unsecured creditor has no standing to invoke the doctrine" of marshaling)(quotations omitted), with, In re Williams, 345 B.R. 853, 857 (Bankr. S.D. Ohio 2006)(noting that "doctrine of marshaling of assets is usually invoked by a junior secured creditor", but noting that may be part of a debtors powers under section 541(a)); see also Meyer, 375 U.S. at 237 (purpose of marshaling is to prevent arbitrary action of senior lienor from destroying the rights of a junior lienor or a creditor having less security").

41.   Moreover, under the present facts and circumstances, the principles of fair dealing and justice overwhelmingly weigh in favor of the Debtors being authorized to offset their Receivables against the Administrative Expenses.

42.   First, the Court cannot lose sight of the
fact that the Debtors have fiduciary obligations to their
creditors.   Thus, this Court, "as a forum for resolving
large and complex mass litigations, has substantial power
to reorder creditor-debtor relations[.]"   See In re Dow
Corning Corp., 280 F.3d 648, 656 (6th Cir. 2002).   Here, the
Debtors are simply attempting to do that by offsetting the
Receivables against the Administrative Expenses.
Critically, in so doing, the Debtors are simply exercising
their equitable rights for the benefit of its
administrative and priority creditors to ensure that there
are sufficient funds to effect confirmation of its plan of
reorganization and payment in full to its administrative
and priority creditors in accordance with section
1129(a)(9).   The Respondents can make no similar argument.

43.   Second, the equities favor the Debtors'
proposed setoff because the Respondents are receiving the
full benefit of their bargain.   Specifically, under the
Debtors' proposal, the Respondents will receive the
equivalent of payment in full on account of the
Administrative Expenses.   See In re PSA, Inc., 277 B.R. at
54 ("[T]he use of setoff rights does not operate as a
denial of [the creditor's claim]. . . . [the creditor will

not] be harmed if the Debtors' postpetition debt and prepetition receivables are setoff.  [The creditor] will receive the equivalent of payment because its own debt will be extinguished.").  Satisfaction of the Respondents' claims by extinguishing debts owed to Circuit City does not erode the value of those claims as alleged by the Respondents.[14]

44.  Finally, as discussed more fully herein, allowing the Debtors to offset the Receivables against the Administrative Expenses will result in the greatest recovery to the entire creditor body.  In particular, the proposed setoff will permit the Debtors to reduce the highest priority claims asserted against their estates, thereby increasing the assets available to similarly situated and junior creditors.

45.  Accordingly, the equities of this case favor allowing the Debtors to setoff the Receivables against the Administrative Expenses without regard to any potential setoff rights of the Respondents under section 553.[15]

---

[14]  See Response of Alliance, at p. 16.

[15]  Certain Respondents, who purchased their claims from the original claimants ("the "Assignee Respondents"), argue that the Debtors may not assert the equitable defense of setoff.  In support, the Assignee Respondents contend that the Debtors lack mutuality and setoff may only be asserted against original claimants and not

(continued)

**C.    Assuming, _Arguendo_, Section 553 Bars Setoff
        Against Post-Petition Administrative Expenses,
        Section 553 Would Not Bar Setoff Against 503(b)(9)
        Claims Because They Are Pre-Petition Claims.**

46.   Although claims asserted under section

503(b)(9) are entitled to administrative priority, such

claims are "pre-petition" claims.  See In re Brown & Cole,

375 B.R. at 879 (reasoning that 503(b)(9) claims by

definition are pre-petition claims).  As pre-petition

claims, the 503(b)(9) Claims are no different than the

Respondents' unsecured claims for purposes of (i) any

protection afforded by section 553, and (ii) the Debtors'

setoff rights under section 558.  Thus, section 553 does

not bar (as discussed above and in the Objection, section

---

assignees to claims.  See Response of United States Debt Recovery
(D.I. 5536).  The Assignee Respondents are incorrect.
    Under state law, assignees take claims subject to the same
defenses as the assignor.  See Libby, McNeil, and Libby v. City
Nat'l Bank, 592 F.2d 504, 513 (9th Cir. 1978) (finding that the
assignee "must stand in the shoes" of the assignor for set-off
purposes); Concrete Structures, Inc. v. Oxford Dev. Corp., 23 B.R.
605, 614 (E.D. Va. 1982) (applying Maryland law to find that an
assignee's rights in receivables was subject to any defense or claim
that could have been brought against the assignor); see also Iowa
Oil Co. v. Citgo Petroleum Corp. (In re Iowa Oil Co.), No. C04-1002-
LRR, 2004 WL 2326377, *6 (N.D. Iowa Sep. 30, 2004) (noting that the
legislature codified the familiar common law concept that "claims of
an assignee are no higher or greater than those of the assignor");
Schneider Nat'l, Inc. v. Bridgestone/Firestone, Inc., 200 F. Supp.
2d 1006, 1011 (E.D. Wis. 2001) (noting that in an analogous
situation, state law provided that the "rights of an assignee are
subject to . . . any claim or defense" that could have been brought
against the assignor).
    Thus, the Debtors may assert any defenses against the Assignee
Respondents that they could have asserted against the original
claimholders.

558 authorizes) setoff of the Receivables against the
503(b)(9) Claims.

**IV.   THE DOCTRINE OF RECOUPMENT IS INAPPLICABLE.**

47.   Certain Respondents argue that the Debtors
may not setoff the Receivables pursuant to 11 U.S.C. § 558
because to do so would impair their alleged right to
recoup.[16]  The Debtors, however, contend that the doctrine
of recoupment is inapplicable because the equities favor
granting the Debtors' setoff under section 558 and the
Respondents cannot satisfy the applicable standard.

48.   Recoupment is an equitable defense similar
to setoff.  Tavenner v. United States (In re Vance), 298
B.R. 262, 267 (Bankr. E.D. Va. 2003) ("Recoupment is an
equitable doctrine that has long been applied in the
bankruptcy context."); In re Camellia, 287 B.R. at 60
(noting that recoupment is an equitable doctrine).  As an
equitable defense, application of recoupment is within this
Court's discretion and should only be permitted if the
equities warrant the relief.  In re Straightline
Investments, Inc., 525 F.3d 870, 882 (9th Cir. 2008) (noting
that the court has discretion whether to allow a defense of

---

[16]  See Response of Alliance, p. 10.

recoupment); In re Vance, 298 B.R. at 269 ("When applying
the doctrine of recoupment, courts must be "'guided by
basic principles of equity.'") (quoting Tidewater Mem'l
Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.),
106 B.R. 876, 882 (Bankr. E.D. Va. 1989)).  For the reasons
discussed in section III of this Reply, the Debtors submit
that the equities favor granting the Debtors' setoff under
section 558 and denying any alleged recoupment rights.

49.  To the extent the doctrine of recoupment
might be available to the Respondents, this Court should
set forth the applicable legal standard and provide the
Debtors and the Respondents guidance with respect to its
application.  The Debtors submit that this Court should
follow decisions from this District and throughout the
Fourth Circuit, which have adopted the integrated
transaction test and rejected the logical relationship
test.

50.  In adopting the integrated transaction test,
courts in this District and throughout the Fourth Circuit
have characterized recoupment as "the right of the
defendant to have the plaintiff's monetary claim reduced by
reason of some claim the defendant has against the
plaintiff arising out of the very contract giving rise to

the plaintiff's claim." In re Vance, 298 B.R. at 267

(internal citations omitted).  Moreover, this definition

has been interpreted narrowly.  See In re Ravenwood

Healthcare, Inc., 2006 WL 4481985, *2 (Bankr. D. Md. 2006)

("'Recoupment is 'narrowly construed' in bankruptcy cases .

. . '") (internal citations omitted); In re Fas Mart

Convenience Stores, Inc. 296 B.R. 414, 422 (Bankr. E.D. Va.

2002) ("Generally, courts have narrowly construed the

doctrine of recoupment.").

       51.   Indeed, for recoupment to apply, the basis

for the recoupment demand must arise from the "same

transaction as the plaintiff's claim or cause of action,

strictly for the purpose of abatement or reduction of such

claim." E.g., In re Thompson, 182 B.R. at 174 (Bankr. E.D.

Va. 1995); University Med. Ctr. v. Sullivan (In re

University Med. Ctr.), 973 F.2d 1065, 1081 (3d Cir. 1992).

In evaluating the meaning of "same transaction", courts in

this District and in this Circuit apply the "integrated

transaction test."  See In re Vance, 298 B.R. at 267; see

also Georgetown Steel Co., LLC v. Capital City Ins. Co. (In

re Georgetown Steel Co., LLC), 318 B.R. 313, 331 (Bankr.

D.S.C. 2004) ("Therefore, the Fourth Circuit and cases

within the Circuit are closely aligned with the 'integrated

transaction' test"); In re Colonial Health Investors, LLC,
2001 WL 34388127, *4 (Bankr. W.D.N.C. 2001) (adopting the
integrated transaction test).  This test requires that
"both debts must arise out of a single integrated
transaction so that it would be inequitable for the debtor
to enjoy the benefits of that transaction without also
meeting its obligations."  Id. at 268 (citing University
Med. Ctr., 973 F.2d at 1081)) (emphasis added).

        52.  For example, in the University Med. Ctr.
case, the court denied recoupment, because even though the
parties had an ongoing business relationship, that
relationship was not sufficient to support the conclusion
that Medicare overpayments made to the debtor in one year
could be recouped by subsequent Medicare reimbursements due
the debtor in another year.  The court reasoned that
reimbursements for health care services provided by the
debtor in later years were separate and distinct
transactions from the services provided that gave rise to
the earlier overpayments.  As the court stated, "[t]o
conclude that these claims arose from the same transaction
for the purposes of equitable recoupment would be to
contort that doctrine beyond any justification for its
creation."  University Med. Ctr., 973 F.2d at 1082.

53.    In this case, the Respondents contend that the Receivables may be recouped against each Respondent's general unsecured claim as opposed to the Administrative Expenses.  As the parties seeking recoupment, the Respondents have the burden of proving all of the elements of the recoupment defense.  See In re Koch, 224 B.R. 572, 575 (Bankr. E.D. Va. 1998) (explaining that the defendant carries the burden of proof when it asserts the defense of recoupment).

54.    The Debtors contend that the Respondents will not be able to satisfy their burdens of demonstrating that the Receivables and the general unsecured claims (1) arose from the same underlying contractual agreement and, (2) arose as part of a single integrated transaction.  In any event, as a determination of this issue depends on individual facts specific to each Respondent, it should be considered at a subsequent hearing.

## V.    FACTUAL DISPUTE SHOULD BE RESERVED FOR A HEARING AFTER THE COURT RESOLVES THE THRESHOLD LEGAL ISSUES AND DISCOVERY CONCLUDES.

55.    The Respondents raised various issues of fact in their Responses.  The Debtors disagree with such factual issues, but do not intend to address such issues at the Hearing.  Instead, as set forth in the Objection and

this Reply, subject to the Court's approval, the Debtors

have requested resolution of legal issues only.  Indeed,

the Debtors will not request entry of an order authorizing

setoff with respect to any of the Respondents at the

Hearing.  Only after discovery, if any, and a subsequent

hearing on the merits will the Debtors seek entry of orders

resolving the Objection with respect to the Respondents.

## CONCLUSION

WHEREFORE, the Debtors request the Court to enter

the Order sustaining the Objection and granting such other

and further relief as the Court deems appropriate.

Dated: Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER
       November 10, 2009          & FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-
                              0636 (302) 651-3000

                                  – and –

                              SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                  – and –

                              MCGUIREWOODS LLP

                              _/s/ Douglas M. Foley _____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB
                              No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and
                              Debtors in Possession