**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

------------------------------------------------------ x
: 
In re: : Chapter 11
: 
CIRCUIT CITY STORES, INC. et al., : Case No. 08-35653-KRH
: 
Debtors. : Jointly Administered
------------------------------------------------------ x Judge Kevin R. Huennekens

**RESPONSE TO DEBTORS' OBJECTION TO CLAIM OF PANASONIC
CORPORATION OF NORTH AMERICA (CLAIM NO. 1254)**

Panasonic Corporation of North America ("Panasonic"), by and through its undersigned counsel, responds to the *Debtors' Objection to Claim of Panasonic Corporation of North America (Claim No. 1254)*, dated August 25, 2009 [D.N. 4630] (the "Objection") and states as follows:

**Preliminary Statement**

1.  Panasonic is owed more than $9.3 million, as an administrative expense under section 503(b)(9) of the Bankruptcy Code, for the value of goods sold to and received by debtor Circuit City Stores, Inc. ("Circuit City") during the 20 days before the commencement of its

J.R. Smith (VSB No. 41913)
Henry (Toby) P. Long, III (VSB No. 75134)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

and

David M. Hillman (NY Bar No. DMH 8666)
Meghan M. Breen (NY Bar No. MMB 2389)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY  10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel for Panasonic Corporation of North America*

chapter 11 bankruptcy case (the "20-Day Period"). Circuit City asserts that the claim should not be afforded administrative expense priority under 11 U.S.C. § 503(b)(9), 11 U.S.C §§ 101-1532 (the "Bankruptcy Code"). The stakes are material because administrative expenses will receive a 100% recovery, but general unsecured claims will only receive a recovery in the range of 0% to 13.5%. See Disclosure Statement at p. ix.

2. The dispute centers upon the meaning of "received" as used in section 503(b)(9) of the Bankruptcy Code. The term is not defined in the Bankruptcy Code and, thus, the statute is ambiguous. Circuit City urges this Court to adopt the meaning of "receipt" under Article 2 of the Uniform Commercial Code as adopted in Virginia (the "UCC"), which defines "receipt" as "physical possession." Adopting Article 2's definition of "receipt" may make sense in a simple sale transaction under Article 2. See Va. Code Ann. § 8.2-103(1)(c) (1950). But here, adopting such definition is neither logical nor reasonable due to the changing nature of the parties' relationship and would be inconsistent with the purpose of section 503(b)(9).

3. As explained below, the parties entered into a consignment relationship (governed by Article 9 of the UCC) followed by a sale transaction (governed by Article 2 of the UCC). The parties acted in different legal capacities at different points in time. For example, when Panasonic shipped goods to Circuit City under the Consignment Agreement (defined below), the goods were delivered by Panasonic as consignor (not as a seller) and received by Circuit City as consignee (not as a buyer). Thereafter, the parties' legal capacities changed at the point of sale to Circuit City's retail customer. At that moment in time, the goods (already in Circuit City's possession by virtue of the consignment) were sold by Panasonic (as seller) to Circuit City (as buyer), then from Circuit City (as seller) to retail customer (as buyer).

2

4.   The change in the parties' legal capacities (from consignee/consignor to buyer/seller), makes application of Article 2's definition of receipt illogical.  If Circuit City's reasoning were adopted, virtually every consignment sale in a retail context would be barred from the protections of section 503(b)(9) because consignments always involve physical delivery prior to actual sale.

5.   Instead, in a consignment/sale context, it is more appropriate to determine "receipt" based on legal capacity.  In other words, receipt under section 503(b)(9) in a consignment/sale context, should be deemed to occur at the moment when debtor acquires title to the goods because at that moment the debtor's capacity changes from mere consignee (under Article 9 consignment) to buyer (under Article 2 sale).  This standard of receipt, as opposed to the standard urged by Circuit City, is consistent with section 503(b)(9)'s requirement that goods must be received by the debtor as part of a *sale transaction*.

**Facts**

6.   Prior to the commencement of these cases on November 10, 2008 (the "Petition Date"), Panasonic agreed to provide plasma televisions to Circuit City on a consignment basis (the "Consigned Products").  As of the Petition Date, the Debtors operated 712 superstores and 9 outlet stores throughout the United States and Puerto Rico.  See Declaration of Bruce H. Besanko, Executive Vice President and Chief Financial Officer of Circuit City Stores, Inc., in Support of Chapter 11 Petitions and First Day Pleadings, ¶ 10 [D.N. 22].  The parties entered into a consignment[1] relationship to, among other things, enable Circuit City to stock inventory without simultaneously incurring the related financial burden to pay for such goods.[2]  In addition

---

[1]   In a consignment, generally, the consignor places goods in the hands of a consignee but retains ownership until such goods are sold.

[2]   The goods had a per unit wholesale cost in the range of approximately $1,300 and $3,500.

3

to the consignment relationship, Circuit City also agreed to purchase the goods from Panasonic at the moment in time prior to Circuit City's sale of the goods to its retail customers. Thus, the relationship between Circuit City and Panasonic had two legally separate and distinct parts: (i) a consignor/consignee relationship, and (ii) a buyer/seller relationship.

7. To memorialize their relationships, the parties executed the *Consignment Agreement*, dated as of March 8, 2006, and amended in February 2008 (the "Consignment Agreement"). A true and correct copy of the Consignment Agreement was attached to the Objection as Exhibit A.[3] Under the Consignment Agreement, Panasonic agreed to ship the Consigned Products to Circuit City. See Consignment Agreement at § 4(a). Title to the Consigned Products remained with Panasonic until they were sold by Circuit City to its customers. See Consignment Agreement at § 1(b) ("[t]itle to the Consigned Products . . . shall remain in Panasonic until such time as the products are sold by Circuit City to its customers. . ."). The Consignment Agreement further provided that title passes to Circuit City from Panasonic and then from Circuit City to its customer at the point of sale between Circuit City and its customer. See Consignment Agreement at § 1(b) ("At the point of sale to Customers, title to the Consigned Products first shall pass to Circuit City and then to the Customer as part of a simultaneous transaction.").

8. The consignee/consignor and buyer/seller relationship between Circuit City and Panasonic is further memorialized in the *VMI, Vendor Managed Inventory Document of Understanding*, dated as of December 22, 2005 (the "VMI Agreement"). The VMI Agreement

---

[3] By filing the Consignment Agreement on the court's docket as an attachment to its Objection, Circuit City violated the terms of the settlement agreement, approved by an order of this Court on December 17, 2008 [D.N. 1085] (the "Settlement Agreement"). Section 11 of the Settlement Agreement, as attached to the order, provided that the Consignment Agreement was to be deemed terminated *except* for certain provisions. Section 25 of the Consignment Agreement, requiring that the Consignment Agreement remain confidential, was to remain in effect. See Settlement Agreement at ¶ 11; Consignment Agreement at ¶ 25. Panasonic did not provide Circuit City with written consent to disclose the Consignment Agreement as required by the confidentiality provision.

4

states that "[i]nventory owned by Panasonic is located at Circuit City's warehouses and stores. Transfer of ownership from Panasonic to Circuit City occurs at consummation of point of sale." See VMI Agreement at § 2.1.

9. Prior to the 20-Day Period, Panasonic consigned televisions to Circuit City (*as consignee*). During the 20-Day Period, Panasonic sold televisions to Circuit City (*as buyer*) at which point Circuit City acquired title to the Consigned Products.

10. On December 17, 2008, Panasonic filed an administrative claim for $9,334,327.43 for the value of goods sold to, and received by, Circuit City during the 20-Day Period pursuant to section 503(b)(9) of the Bankruptcy Code (the "Administrative Claim"). A true and correct copy of the Administrative Claim was attached to the Objection as Exhibit B.

11. Circuit City filed their Objection to the Administrative Claim on the basis that the Consigned Products were "physically received" by Circuit City outside the 20-Day Period.

## Response

A.   Panasonic Satisfies Section 503(b)(9)

12. Section 503(b)(9) grants administrative expense priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Simply stated, the elements of section 503(b)(9) are: (i) the vendor sold goods to the debtor; (ii) the goods were "received" by the debtor within the 20-Day Period; and (iii) the goods were sold to the debtor in the ordinary course of business. See In re Goody's Family Clothing, Inc., 401 B.R. 131, 133 (Bankr. D. Del. 2009). Panasonic satisfies section 503(b)(9) because (i) Panasonic sold goods - the Consigned Products - to Circuit City; (ii) as explained in greater detail below, the Court should interpret "received" as occurring the moment that title to the

Consigned Products passed to Circuit City as *buyer in a sale transaction* (as opposed to physical receipt by *consignee in a consignment*), which occurred within the 20-Day Period; and (iii) Panasonic sold the Consigned Products to Circuit City in the ordinary course of Circuit City's business. Additionally, Panasonic has documented the sales of the Consigned Products to Circuit City within the 20-Day Period with invoices and a spreadsheet, both of which were attached to the Administrative Claim.[4]

B.  Circuit City Blurs Relationships Between the Parties

13. The term "received" as used in section 503(b)(9) is not defined. Circuit City argues that "received" should have the meaning set forth in Article 2 of the UCC. See Objection at ¶¶ 16-17. Under Article 2, "receipt" means "taking physical possession." See Va. Code Ann. § 8.2-103(1)(c). Thus, Circuit City maintains that Panasonic's claim under Bankruptcy Code section 503(b)(9) should be denied because Circuit City received physical possession of the Consigned Products outside the 20-Day Period.

14. Circuit City blurs the consignee/consignor and buyer/seller relationships. Consignments are governed by Article 9, not Article 2, of the UCC. See Va. Code Ann. § 8.9-109(a)(4) ("[T]his title applies to. . . a consignment"). Thus, Article 2's definition of "receipt" is legally irrelevant at the time the goods were delivered to Circuit City as part of a consignment transaction. Panasonic admits the goods at issue were physically received by Circuit City outside the 20-Day Period *as consignee in a consignment transaction*. That fact, however, should have no relevance to the buyer/seller relationship.

---

[4] Circuit City suggests that the 503(b)(9) claim should be disallowed because Panasonic failed to make a reclamation demand under section 546(c) of the Code. See Objection at ¶ 8. There is no requirement under Code sections 503(b)(9) or 546(c) that a claimant first make a reclamation demand prior to filing a 503(b)(9) claim. Moreover, a reclamation demand would have been fruitless because the Consigned Goods at issue had been sold by Circuit City to its customers prior to the Petition Date.

15.     It is equally undisputable that Circuit City (as *buyer,* and not as *consignee*) received the goods *as part of a sale transaction* during the 20-Day Period.  Under Bankruptcy Code section 503(b)(9), goods must be received by the debtor during the 20-Day Period as *part of a sale transaction*.  Under Article 2 of the UCC, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price."  See Va. Code Ann. § 8.2-106(1).  At the time the goods were physically delivered, there was no sale because title, at that time, had not passed from Panasonic to Circuit City.  The fact that Circuit City had physical custody of the Consigned Products *as consignee* outside the 20-Day Period is meaningless and, therefore, physical possession should not be the standard by which to determine "receipt" in a consignment/sale transaction.  Instead, in a consignment/sale transaction, receipt should be determined at the moment that Circuit City acquires title (or possession) as a *buyer* in a sale transaction.

C.     Canons of Statutory Construction Support Panasonic

16.     Statutory construction begins with analysis of the language of the statute to determine whether the language at issue has a plain and unambiguous meaning.  See Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002) (internal citations omitted).  To be ambiguous, the disputed language must be "reasonably susceptible of different interpretations."  Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 473 n. 27 (1985).  Here, section 503(b)(9) is ambiguous because the term "received" is not defined and is susceptible to different interpretations.  When, as here, the statute is ambiguous, courts employ traditional tools of statutory interpretation and look to legislative history for guidance.  Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996).

17.     One canon of statutory construction requires interpretation of the term in question in the context of the statute as a whole.  See Dolan v. United States Postal Serv., 546 U.S. 481,

486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). Circuit City's interpretation violates this canon of construction by de-linking the concept of receipt (which appears in first clause of section 503(b)(9)) from the sale context (which appears in the second clause of section 503(b)(9)). Panasonic's interpretation, however, gives meaning to the term received in the sale context and is, therefore, consistent with the statute as a whole.

18.    Section 503(b)(9) was added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The legislative history surrounding this section is scant. According to a leading bankruptcy treatise, "[t]he ostensible reason for according administrative priority to such obligations was to prevent debtors from acquiring goods at a time where the debtor knew that bankruptcy was imminent and that the debtor would not be able to pay for such goods." See, 4 Collier on Bankruptcy ¶ 503.16 at 503-79 (15th ed. rev., 2009). Panasonic's interpretation is consistent with the statute's apparent purpose -- as Circuit City was preparing to file its chapter 11 petition during the 20-Day Period, it bought Panasonic's Consigned Products and failed to pay for them. As a result, Circuit City's estate benefited and Panasonic is entitled to an administrative expense claim under section 503(b)(9).

D.    *Pridgen* is Inapplicable

19.    Circuit City relies heavily on In re Pridgen, 2008 WL 1836950 (Bankr. E.D.N.C., Apr. 22, 2008), an unpublished decision, to support the proposition that physical delivery should

8

define receipt even in the consignment context.[5]  Circuit City mischaracterizes the *dicta* in the case as the court's holding and misconstrues the facts.  See Objection at ¶¶ 17 & 18.

20.  In Pridgen, the debtors operated a grocery and gas station and had an oral fuel contract with Warren Oil ("Warren").  Pridgen, 2008 WL 1836950 at *1 & 2.  Warren hired Cary Oil Co. ("Cary") as its contractor to administer the gas to the debtors and other dealers.  Id. at *1.  Cary, however, had no contract (other than a credit application[6]) with the debtors.  Id. at *2.  The contract between Cary and Warren provided that title to the fuel "shall remain with Cary until same is pumped from the tank and sold to retail customers."  Id. at *1.  There was nothing in the contract between Cary and Warren that addressed whether title to the fuel passed to the debtor.

21.  Cary filed an administrative claim under Bankruptcy Code section 503(b)(9) claim for approximately $8,800 for fuel purchases made by the debtors during the 20-Day Period.  Id.  The bankruptcy court denied the claim because it found that receipt of the fuel by the debtors had occurred outside the 20-Day Period.  Id.  Cary moved for reconsideration and argued that the relationship between Cary and debtors "should be classified as a consignment," and that title to the fuel passed from Cary to the debtors when the fuel "passed from the end of the hose" to the consumer.  See id. at *2 and 4.  The court denied the motion for reconsideration finding that there were no grounds for reconsideration.  Id. at *4.

---

[5]  None of the other cases cited by Circuit City regarding the definition of "receipt" as used in Bankruptcy Code sections 503(b)(9) or 546(c) involve a consignment transaction.  Circuit City also cites to In re Plastech Engineered Products, Inc., 2008 WL 5233014 (Bankr. E.D. Mich. Oct. 7, 2008) to support its assertion that "received" must mean physical receipt under 503(b)(9).  The Plastech court was asked whether the debtors needed physical possession under 503(b)(9), or if there was "receipt" when the debtors' customer had possession of the goods.  Id. at *2.  The court declined to determine whether actual, as opposed to constructive, receipt was necessary to trigger rights under section 503(b)(9) as it did not have sufficient facts to decide the issue.  Id. at *4.  Notably, the Plastech court stated that the analysis in Pridgen was of "little help" especially because it was "dictum in an unpublished decision from another court decided in the context of a motion for reconsideration."  Id. at *4.

[6]  The credit application explained the credit terms and personal guarantees.  Id. at *2.

9

22. In *dicta*, the court observed that even if it had granted the reconsideration motion, it would still deny the section 503(b)(9) claim because there was no credible evidence to support a conclusion that a consignment relationship existed or that title to the fuel ever passed to the debtors. Id. The court observed that "there is no written agreement with the debtor setting out terms of delivery, receipt or title terms for a consignment dealer," "[n]o language exists in the documents supporting intervening title to the gasoline or receipt of the gasoline by the debtor," and "testimony supporting the argument that title passes to the dealer from the meter to the end of the hose for receipt purposes is not credible." Id. at *4 and n. 1.

23. Pridgen is wholly inapposite because the transaction at issue did *not* involve a sale of goods to the debtor. Without a sale to the debtor, there can be no section 503(b)(9) claim and analysis of receipt is therefore irrelevant. Here, unlike Pridgen, the operative agreements provide that title to the goods passed from Panasonic to Circuit City, and Panasonic legitimately asserted a valid section 503(b)(9) claim as the title transfer occurred during the 20-Day Period.

**WHEREFORE**, Panasonic respectfully requests that this Court enter an order (i) denying Circuit City's Objection to Panasonic's Administrative Claim, (ii) allowing the Administrative Claim as an administrative expense pursuant to Bankruptcy Code section 503(b)(9), and (iii) granting other relief this Court deems appropriate.

Dated:  November 13, 2009
       Richmond, Virginia

    /s/ J.R. Smith_____
J.R. Smith (VSB # 41913)
Henry (Toby) P. Long III (VSB # 75134)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8478
Facsimile:  (804) 788-8218

 - and -

David M. Hillman (N.Y. Bar No. DMH 8666)
Meghan M. Breen (N.Y. Bar No. MMB 2389)
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

COUNSEL FOR PANASONIC
CORPORATION OF NORTH AMERICA

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the parties receiving electronic notice via the Court's CM/ECF system and the following parties via US regular mail, on this the 13th day of November, 2009.

Douglas M. Foley, Esq.
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510
*Counsel for the Debtors*

Dion W. Hayes, Esq.
McGuireWoods LLP
One James Center, 901 E. Cary St.
Richmond, VA 23219
*Counsel for the Debtors*

Gregg Galardi, Esq.
Skadden Arps, Slate Meagher & Flom LLP
One Rodney Square
Box 636
Wilmington, Delaware 19899
*Counsel for the Debtors*

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
*U.S. Trustee for the Eastern District of Virginia*

Jeffrey N. Pomerantz, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067
*Counsel for the Creditor's Committee*

Lynn L. Tavenner, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
*Counsel for the Creditor's Committee*

                                                                        */s/ J.R. Smith*_____