# EXHIBIT A

**COPY**

**B 10 (Official Form 10) (12/07)**

| UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA | PROOF OF CLAIM |
|---|---|

**Debtor against which claim is asserted :** (Check only **one** box below):

☐ Circuit City Stores, Inc. (Case No. 08-35653)
☐ Circuit City Stores West Coast, Inc. (Case No. 08-35654)
☐ InterTAN, Inc. (Case No. 08-35655)
☐ Ventoux International, Inc. (Case No. 08-35656)
☐ Circuit City Purchasing Company, LLC (Case No. 08-35657)
☐ CC Aviation, LLC (Case No. 08-35658)

☐ CC Distribution Company of Virginia, Inc. (Case No. 08-35659)
☐ Circuit City Stores PR, LLC (Case No. 08-35660)
☐ Circuit City Properties, LLC (Case No. 08-35661)
☐ Orbyx Electronics, LLC (Case No. 08-35662)
☐ Kinzer Technology, LLC (Case No. 08-35663)
☐ Courchevel, LLC (Case No. 08-35664)

☐ Abbott Advertising, Inc. (Case No. 08-35665)
☐ Mayland MN, LLC (Case No. 08-35666)
☐ Patapsco Designs, Inc. (Case No. 08-35667)
☐ Sky Venture Corporation (Case No. 08-35668)
☐ XSStuff, LLC (Case No. 08-35669)
☐ PRAHS, INC. (Case No. 08-35670)

*NOTE: This form should not be used to make a claim for administrative expenses arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503(b).*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
SNELL ACOUSTICS

☑ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** 1450
*(If known)*

Filed on: 12/19/08

**Name and address where notices should be sent:**
NameID: 4531384   PackID: 296410

SNELL ACOUSTICS
300 JUBILEE DR
PEABODY MA 01960

Telephone number:

*ADMINISTRATION*
*$8,166.39*

**Name and address where payment should be sent** (if different from above):

100 CORPORATE DRIVE
MAHWAH NJ 07430

Telephone number: 201 762-6523

*ADMINISTRATIVE UNSECURED*

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $8,233.56 = $2,166.39 + $6,067.17

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** GOODS SOLD
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:** $_____   **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**
**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier — 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan — 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units — 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Date:** 1/29/08

**Signature:** the person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Tom Mastronade, Director of Credit

FOR COURT USE ONLY
**RECEIVED**

JAN 30 2009

KURTZMAN CARSON CONSULTANTS

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



0835653081208104023002402

| Address | Alpha | Document | Do | Inv Date | Due Date | Gross | Open | Reference | Remark | Claim Type |
|---|---|---|---|---|---|---|---|---|---|---|
| 94855 | CIRCUIT CITY PURCH | 1151262 | RI | 9/25/2008 | 10/25/2008 | 301.61 | $301.61 | CCS01-0000480 | 00545424 (Sales | Reclamation |
| 94855 | CIRCUIT CITY PURCH | 1151882 | RI | 9/26/2008 | 10/26/2008 | 163.26 | $163.26 | CCS01-0000480 | 00545424 (Sales | Reclamation |
| 94855 | CIRCUIT CITY PURCH | 1153525 | RI | 9/30/2008 | 10/30/2008 | 655.8 | $655.80 | CCS01-0000487730 | 00550160 (Sales | Reclamation |
| 94855 | CIRCUIT CITY PURCH | 1153681 | RI | 9/30/2008 | 10/30/2008 | 1,045.72 | $1,045.72 | CCS01-0000488741 | 00550833 (Sales | Reclamation |
| | | | | | | | $2,166.39 | | | |
| 94855 | CIRCUIT CITY PURCH | 1131543 | RI | 8/8/2008 | 9/7/2008 | 2,000.00 | $2,000.00 | CCS01-0000467521 | 00537542 (Sales | Pre-petition |
| 94855 | CIRCUIT CITY PURCH | 1132528 | RI | 8/12/2008 | 9/11/2008 | 625 | $625.00 | CCS01-0000467521 | 00537542 (Sales | Pre-petition |
| 94855 | CIRCUIT CITY PURCH | 1133706 | RI | 8/14/2008 | 9/13/2008 | 562 | $562.00 | CCS01-0000461632 | 00532437 (Sales | Pre-petition |
| 94855 | CIRCUIT CITY PURCH | 1145237 | RI | 9/11/2008 | 10/11/2008 | 2,404.08 | $2,404.08 | CCS01-0000480 | 00545424 (Sales | Pre-petition |
| 94855 | CIRCUIT CITY PURCH | 1146139 | RI | 9/15/2008 | 10/15/2008 | 476.09 | $476.09 | CCS01-0000459979 | 00531370 (Sales | Pre-petition |
| | | | | | | | $6,067.17 | | | |
| 94855 Total | | | | | | | $8,233.56 | | | |

COPY

United States Bankruptcy Court
Eastern District of Virginia
Richmond Division

**Section 503(b)(9) Claim Request Form**

DEADLINE FOR
FILING 503(b)(9)
CLAIMS
5:00 P.M. Pacific Time
December 19, 2008

| Circuit City Stores, Inc., *et al.*, Claims Processing<br>c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 | Circuit City Stores, Inc., *et al.*<br>Case Nos. 08-35653 through 08-35670<br>Chapter 11 Jointly Administered |
|---|---|

NOTE: Pursuant to an Order of the Bankruptcy Court in the above-referenced chapter 11 cases (see Docket No. 107), to have claims allowed as administrative expense under 11 U.S.C. § 503(b)(9), this form must be served upon Circuit City Stores, Inc., *et al.*, Claims Processing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245 by **December 19, 2008**, the Bar Date for Section 503(b)(9) claims in the above-referenced cases. The form may be submitted in person or by regular mail, overnight mail, or hand delivery. Facsimile, email or electronic submissions will not be accepted. Requests shall be deemed filed when actually received by Kurtzman Carson Consultants LLC.

Name and Address of Creditor: *(The person or other entity to whom the debtor owes money or property)* NameID: 4579503   (P1) PackID: 589

SUERU AUSTIN, INC.
JOHN HENDERSON
100 CORPORATE DRIVE
MAHWAH, NJ 07430

Telephone: (201) 762-6523
Fax: (201) 961-6886

Name and address where notices should be sent (if different from above)

COPY

Telephone:
Fax:

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have made any demand(s) to reclaim goods sold to the debtor under 11 U.S.C. § 546(c). (attach copy of any such demand(s))

☐ Check box if you have transferred the rights of your claim to any third party. If so please list name of transferee:

☐ Check box if you have never received any notices from the bankruptcy court in this case.

Debtor against which claim is asserted : (Check one box below:)

☒ Circuit City Stores, Inc. (Tax I.D. No. 54-0493875)
☐ Abbott Advertising, Inc. (Tax I.D. No. 54-1624659)
☐ Circuit City Stores West Coast, Inc. (Tax I.D. No. 95-4460785)
☐ CC Distribution Company of Virginia, Inc. (Tax I.D. No. 54-1712821)
☐ Circuit City Properties, LLC (Tax I.D. No. 54-0793353)
☐ Patapsco Designs, Inc. (Tax I.D. No. 52-1086796)
☐ Ventoux International, Inc. (Tax I.D. No. 20-1071838)
☐ Sky Venture Corporation (Tax I.D. No. 54-1760311)
☐ Prahs, Inc. (n/a)
☐ XS Stuff, LLC (Tax I.D. No. 54-2029263)
☐ Kinzer Technology, LLC (Tax I.D. No. 54-2022157)
☐ Circuit City Purchasing Company, LLC (Tax I.D. No. 20-0995170)
☐ Orbyx Electronics, LLC (Tax I.D. No. 20-1203360)
☐ InterTAN, Inc. (Tax I.D. No. 75-2130875)
☐ CC Aviation, LLC (Tax I.D. No. 20-5290841)
☐ Courchevel, LLC (n/a)
☐ Circuit City Stores PR, LLC (Tax I.D. No. 66-0695512)
☐ Mayland MN, LLC (Tax I.D. No. 20-0896116)

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: _____

Check here if this claim ☐ replaces
☐ amends   a previously filed claim, dated: _____

1. BASIS FOR CLAIM: Goods received by the Debtor within 20 days before the date of commencement of the case.   Value of Goods: $ 2,166.39

2. DATE OF SHIPMENT: 9/15 - 9/30   METHOD OF SHIPMENT: UPS   DATE OF RECEIPT: 9/15 - 10/8
NAME OF CARRIER: UPS   PLACE OF DELIVERY: SEE INVOICE

3. TOTAL AMOUNT OF SECTION 503(b)(9) CLAIM: $ 2,166.39
☐ Check the box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

4. BRIEF DESCRIPTION OF CLAIM: INVOICE FOR RETURN NOT HONORED
Describe goods sold: SUERU AUSTIN SPEAKERS   *Attach support for your claim.*

5. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

6. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, or contracts. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Attachments must be printed on 8-1/2" by 11" paper.

7. DATE-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this claim request form.

8. ORDINARY COURSE CERTIFICATION: By signing this claim request form, you are certifying that the goods for which payment is sought hereby, were sold to the debtor in the ordinary course of the debtor's business as required by 11 U.S.C. § 503(b)(9).

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FOR COURT USE ONLY

RECEIVED

DEC 19 2008

KURTZMAN CARSON CONSULTANT

| Date<br>12/18/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>John Henderson, Director of Credit |
|---|---|

0835653081113193852094314



**D&M**

Bruce H Besanko                                        11/10/08
Chief Financial Officer                        sent via Fed-X and fax
Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233

Dear Mr. Besanko,

Please be advised that D&M Holdings US, Inc and its subsidiaries, Denon Electronics (Denon), Boston Acoustics (Boston) and Snell Acoustics (Snell) has chosen to pursue its reclamation rights. This letter is a demand for reclamation rights pursuant to Section 546 of the Bankruptcy Code. We are asserting the right of reclamation under 11 U.S.C. Section 546.

Listed below are the Denon, Boston & Snell invoices pertaining to shipments received within (45) days prior to the commencement of Circuit City's Bankruptcy filing on 11/10/08. Hard copies of said invoices will be delivered tomorrow via Fed-X.

52394 CIRCUIT CITY STORES

|  | Invoice # | Invoice Date | Due Date | Amount |
|---|---|---|---|---|
| RZ | 1155453 | 10/07/08 | 11/06/08 | $278,496.40 |
| RZ | 1155454 | 10/07/08 | 11/06/08 | $17,640.00 |
| RZ | 1157265 | 10/13/08 | 11/13/08 | $211,915.20 |
| RI | 1157485 | 10/14/08 | 11/13/08 | $201.56 |
| RI | 1157486 | 10/14/08 | 11/13/08 | $190.30 |
| RI | 1158551 | 10/17/08 | 11/16/08 | $226.74 |
| RI | 1158552 | 10/17/08 | 11/16/08 | $906.96 |
| RI | 1158553 | 10/17/08 | 11/16/08 | $453.48 |
| RI | 1158558 | 10/17/08 | 11/16/08 | $1,360.44 |
| RI | 1158559 | 10/17/08 | 11/16/08 | $235.93 |
| RI | 1158561 | 10/17/08 | 11/16/08 | $226.74 |
| RI | 1158588 | 10/17/08 | 11/02/08 | $226.74 |
| RZ | 1164765 | 10/30/08 | 11/15/08 | $76,630.00 |
| RI | 1166743 | 11/06/08 | 11/22/08 | $232.65 |
| RI | 1166744 | 11/06/08 | 11/22/08 | $226.74 |
| RI | 1166745 | 11/06/08 | 11/22/08 | $226.74 |
|  |  |  |  | $589,396.62  Denon |

91425 CIRCUIT CITY

|  | Invoice # | Invoice Date | Due Date | Amount |
|---|---|---|---|---|
| RZ | 1155452 | 10/07/08 | 12/06/08 | $12,470.10 |
| RI | 1156086 | 10/08/08 | 12/07/08 | $120.38 |
| RZ | 1156474 | 10/09/08 | 12/08/08 | $48,555.00 |
| RZ | 1156977 | 10/10/08 | 12/10/08 | $47,330.00 |
| RZ | 1157266 | 10/13/08 | 12/13/08 | $63,094.65 |
| RI | 1157829 | 10/14/08 | 12/13/08 | $8.01 |

| | | | | | |
|---|---|---|---|---|---|
| RZ | 1159705 | 10/20/08 | 11/05/08 | $12,533.40 | |
| RI | 1160560 | 10/21/08 | 11/06/08 | $96.66 | |
| RI | 1160560 | 10/21/08 | 11/06/08 | $4.80 | |
| RI | 1164301 | 10/29/08 | 11/14/08 | $60.75 | |
| RI | 1164301 | 10/29/08 | 11/14/08 | $5.35 | |
| RI | 1167085 | 11/06/08 | 11/22/08 | $96.66 | |
| RI | 1167085 | 11/06/08 | 11/22/08 | $5.11 | |
| | | | | $184,380.87 | Boston |

91456 CIRCUIT CITY

| | **Invoice #** | **Invoice Date** | **Due Date** | **Amount** | |
|---|---|---|---|---|---|
| RI | 1150763 | 09/24/08 | 11/23/08 | $43.22 | |
| RI | 1160542 | 10/21/08 | 12/20/08 | $102.11 | |
| RI | 1167107 | 11/06/08 | 01/05/09 | $167.21 | |
| | | | | $312.54 | Boston |

| | **Invoice #** | **Invoice Date** | **Due Date** | **Amount** |
|---|---|---|---|---|
| | 91457 CIRCUIT CITY | | | |

| | | | | |
|---|---|---|---|---|
| RI | 1150765 | 09/24/08 | 11/23/08 | $51.73 |
| RI | 1154106 | 10/01/08 | 11/30/08 | $46.20 |
| RI | 1154107 | 10/01/08 | 11/30/08 | $70.60 |
| RI | 1154375 | 10/02/08 | 12/01/08 | $27.50 |
| RI | 1154376 | 10/02/08 | 12/01/08 | $32.14 |
| RI | 1156576 | 10/09/08 | 12/08/08 | $32.71 |
| RI | 1157837 | 10/14/08 | 12/13/08 | $87.71 |
| RI | 1160516 | 10/21/08 | 12/20/08 | $101.25 |
| RI | 1160552 | 10/21/08 | 12/20/08 | $101.25 |
| RI | 1161252 | 10/22/08 | 12/21/08 | $197.92 |
| RI | 1167108 | 11/06/08 | 01/05/09 | $101.21 |
| | | | | $850.22 | 

$850.22    Boston

91458 CIRCUIT CITY

| | **Invoice #** | **Invoice Date** | **Due Date** | **Amount** | |
|---|---|---|---|---|---|
| RI | 1153524 | 09/30/08 | 11/29/08 | $32.35 | |
| RI | 1158880 | 10/17/08 | 12/16/08 | $173.14 | |
| RI | 1158881 | 10/17/08 | 12/16/08 | $27.50 | |
| RI | 1160523 | 10/21/08 | 12/20/08 | $101.77 | |
| RI | 1167097 | 11/06/08 | 01/05/09 | $101.77 | |
| RI | 1167102 | 11/06/08 | 01/05/09 | $64.37 | |
| | | | | $500.90 | Boston |

91461 CIRCUIT CITY

| | **Invoice #** | **Invoice Date** | **Due Date** | **Amount** |
|---|---|---|---|---|
| RI | 1153518 | 09/30/08 | 11/29/08 | $96.68 |
| RI | 1154108 | 10/01/08 | 11/30/08 | $278.21 |
| RI | 1154381 | 10/02/08 | 12/01/08 | $38.02 |
| RI | 1157838 | 10/14/08 | 12/13/08 | $22.24 |

| | | | | | |
|---|---|---|---|---|---|
| RI | 1160521 | 10/21/08 | 12/20/08 | $96.66 | |
| RI | 1160524 | 10/21/08 | 12/20/08 | $96.66 | |
| RI | 1160538 | 10/21/08 | 12/20/08 | $96.66 | |
| RI | 1160541 | 10/21/08 | 12/20/08 | $96.66 | |
| RI | 1160550 | 10/21/08 | 12/20/08 | $96.66 | |
| RI | 1160570 | 10/21/08 | 12/20/08 | $111.48 | |
| RI | 1160582 | 10/21/08 | 12/20/08 | $151.26 | |
| RI | 1164306 | 10/29/08 | 12/28/08 | $61.91 | |
| RI | 1165814 | 11/03/08 | 01/02/09 | $167.21 | |
| | | | | $1,410.31 | Boston |

94855 CIRCUIT CITY

| | Invoice # | Invoice Date | Due Date | Amount | |
|---|---|---|---|---|---|
| RI | 1151262 | 09/25/08 | 10/25/08 | $301.61 | |
| RI | 1151882 | 09/26/08 | 10/26/08 | $163.26 | |
| RI | 1153525 | 09/30/08 | 10/30/08 | $655.80 | |
| RI | 1153581 | 09/30/08 | 10/30/08 | $1,045.72 | |
| | | | | $2,166.39 | Snell |

$779,017.85    Total

We hereby formally request that the Denon, Boston and Snell goods be accounted for and an inventory taken of what's on hand as of 11/10/08. We request that we are immediately supplied with the results of the inventory. The Denon, Boston and Snell goods should be immediately segregated until arrangements can be made for their return or until action can be taken under Section 546 to acknowledge our reclamation claim.

Best regards,

John Henderson
Director of Credit
D&M Holdings, Americas
(Denon, Marantz, D&M Pro, Escient, Snell & Boston Acoustics)
100 Corporate Drive
Mahwah, NJ 07430-2041
(201) 762-6523 phone
(201) 961-6886 e-fax
jhenderson@dm-holdings-na.com

Cc: Dion Hayes
McGuireWoods LLP
One James Center, 901 E. Cary St.
Richmond, VA 23219
(804) 775-1144

**EXHIBIT B**



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464
804.527.4000

August 2, 2006

Boston Acoustics, Inc.
Attn: Phil Cohn
300 Jubilee Drive
Peabody, MA 01960

  The purpose of this letter agreement ("Agreement") is to establish the terms upon which Boston Acoustics, Inc. ("Vendor") will sell and Circuit City Stores, Inc. and its affiliates ("Circuit City") may buy certain products ("Products") from Vendor for resale to consumers in the United States. The initial Product assortment included under this Agreement is set forth on the attached Exhibit 1.

| | |
|---|---|
| TERM: | The term of the Agreement will begin upon both parties' execution of this Agreement and continue until February 28, 2007 ("Initial Term"). Thereafter, this Agreement will automatically renew for additional one-year (March 1 to February 28) renewal terms (each, a "Renewal Term") unless either party terminates this Agreement by giving the other party at least sixty (60) days' written notice prior to the end of the Initial or any Renewal Term. The Initial Term, as renewed by any Renewal Term, shall be collectively referred to herein as the "Term." Notwithstanding the foregoing, either party may terminate this Agreement at any time upon sixty (60) days' written notice to the other party. |
| PAYMENT TERMS: | Payment terms are Net 60 Days Receipt of Goods. Payment shall be in US Dollars. |
| ORDERS: | All orders will be submitted on Circuit City's purchase order (the "Purchase Order"). All terms and conditions contained in the Purchase Order, including, but not limited to any terms accompanying the Purchase Order or appearing on the reverse side of the Purchase Order form, are specifically included in and made a part of this Agreement, notwithstanding the fact that such terms and conditions may not be transmitted or included with a Purchase Order. Any terms proposed or submitted by Vendor at any time, including but not limited to any provisions or agreements contained in Vendor's franchise agreements, invoices, billing statements, documents used in the ordinary course of filling, accepting or acknowledging orders or other similar documents, will be of no force or effect. In the event of any conflict between the Purchase Order and this Agreement, this Agreement will control. |
| FREIGHT: | As more particularly set forth in a Purchase Order, freight will be either (i) FOB Origin at Vendor's domestic warehouse as set forth in the applicable Purchase Order, in which case Circuit City shall be responsible for freight charges subject to Vendor's Freight Allowance as provided herein; or (ii) |

FOB Destination at Circuit City's Distribution Center(s) indicated on the Purchase Order, Freight Prepaid.

**FREIGHT ALLOWANCE:** In the event that Circuit City is responsible for freight charges associated with shipments of Product FOB Origin at Vendor's domestic warehouse as provided above, Vendor will provide Circuit City with a freight allowance in payment of Circuit City's freight costs associated with shipment of the Products ("Freight Allowance"). Any such Freight Allowance shall be applied as a discount from invoice ("DFI") on a Product model basis, at the rates set forth on Exhibit 1 hereof as the same may be updated by the parties.

**PRICING:** Circuit City shall purchase the Products at the price set forth on Exhibit 1. The parties may add additional Products to this Agreement or modify the price by written amendment to this Agreement. Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price in effect at the time of receipt of the Products at Circuit City's distribution center or other designated location. Any listing of suggested retail price is for point of reference only. Circuit City shall unilaterally establish its own resale prices and terms with respect to the Products.

**MARKETING DEVELOPMENT FUNDS:** Vendor agrees to provide marketing development funds to Circuit City for use in promoting the Vendor's Products through advertising, associate training, sales contests, event funding, and for such other purposes as the parties may agree from time to time ("Marketing Development Funds"). The Marketing Development Fund program for the Initial Term is more particularly set forth on Exhibit 2 to this Agreement. In the event that this Agreement is renewed as provided herein, the Marketing Development Fund program attached as Exhibit 2 shall be amended by the parties for each such Renewal Term.

**MAP POLICY:** All purchases hereunder will be subject to Vendor's Minimum Advertised Pricing policy, dated effective as of February 1, 2006, a copy of which is attached hereto as Exhibit 3 ("MAP Policy"). Vendor may amend its MAP Policy from time to time by providing Circuit City at least thirty (30) days' advance written notice of such amendment.

**RETURNS:** Products returned to Circuit City in accordance with Circuit City's return policies and which Products evidence defects in material and workmanship may be returned to Vendor at Vendor's expense if they are products that the parties have agreed are "return to vendor" Products as set forth on Exhibit 1 as it may be amended from time to time (such "return to vendor" products evidencing defects in materials or workmanship are referred to herein as "RTV Products"). Circuit City may return all such RTV Products subject to the applicable terms of Circuit City's Policies for Service, Parts and Warranty Billing contained in the VOG (as defined herein), as amended. Circuit City shall request a return authorization (RMA) from Vendor, which RMA shall not be unreasonably withheld or delayed. Vendor shall not be required to issue blanket RMAs. Upon Vendor's issuance of the RMA, Circuit City shall be entitled to reduce its Vendor account payable balance with Vendor based upon 100% of the invoice price of the properly returned RTV Products in accordance with the

paragraph titled "Offset" below. In the event any such reduction in accounts payable balance creates a debit balance, Vendor will make payment to Circuit City in accordance with the paragraph titled "Debit Balance" below. RTV Product returns will be accepted by Vendor for at least twelve (12) months after Circuit City's receipt of the last shipment of the Product so long as they were properly returned pursuant to Vendor's Product warranty.

In addition to any other rights it may have at law or in equity, Circuit City may refuse and/or return (with a valid RMA from Vendor), at Vendor's expense, any Products which are (i) goods that are nonconforming with the applicable Purchase Order or the specifications for the Products or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City, (ii) shipped in excess of or not covered by the Purchase Order, or (iii) not shipped in standard packaging or containers (collectively "Refused Products"). Circuit City also has the right to refuse and/or return, at Vendor's expense, any Products subject to a Product recall ("Recalled Products."). If Circuit City has made payment to Vendor for the Refused Products or Recalled Products, Circuit City shall be entitled to reduce its Vendor account payable balance with Vendor based upon 100% of the invoice price of the Refused Products or Recalled Products promptly upon Vendor's receipt of the Refused or Recalled Products or Circuit City's notice of refusal, whichever occurs first, in accordance with the paragraph titled "Offset" below. In the event a refusal or return of Refused Products or Recalled Products creates a debit balance, such amounts will be payable in accordance with the terms of the section titled "Debit Balance" below.

All Products returned to Vendor shall be returned in accordance with the terms of the section titled "Return Procedures" below. This "Returns" section states Circuit City's sole and exclusive Product return rights except as may be otherwise mutually agreed to in writing by the parties. In the event Products are returned not in conformance with this Agreement, Circuit City shall either not deduct or offset amounts associated with such erroneous returns, or if such deduction or offset has already taken place, then Circuit City shall immediately reverse such charge. Additionally, if Circuit City has charged Vendor for other costs related to such erroneous return, Circuit City shall immediately reverse such charges. In the event of erroneous returns as provided herein, Circuit City and Vendor shall mutually agree on disposition of such products.

**SERVICE PRODUCTS:** Products returned to Circuit City in accordance with Circuit City's return policies and which Products evidence defects in material and workmanship shall be repaired by Circuit City if they are products that the parties have agreed are "repair" Products as set forth on Exhibit 1 as it may be amended from time to time ("Repair Products"). Circuit City shall repair all such Repair Products subject to the applicable terms of Circuit City's Policies for Service, Parts and Warranty Billing contained in the VOG (as amended) and the labor rates set forth on Exhibit 1.

**WARRANTY:** Vendor agrees to comply in all respects with the Magnuson-Moss Warranty Act [15 U.S.C. Sections 2301 et seq.] and the regulations issued thereunder, as the same may be amended from time to time. Prior to the

initial delivery of each Product purchased under this Agreement, Vendor agrees to deliver to Circuit City at least one copy of all written warranty documents covering each Product. In the event a Product is not covered by a written warranty, Vendor agrees to deliver to Circuit City a written statement that Vendor offers no such warranty for that specified Product. In the event any existing Product warranty is amended, updated or modified, Vendor agrees to deliver to Circuit City at least one copy of any amended, updated or modified warranty document within a reasonable time prior to the effective date of the change.

**VENDOR OPERATING GUIDELINES:**

Vendor agrees to the terms of Circuit City's Vendor Operating Guidelines ("VOG"), a copy of which has been provided to Vendor and which has been executed on even date herewith. In the event of any conflict between the terms of this Agreement and the terms of the VOG, the terms of this Agreement will control. The remedies set forth in the VOG shall not be exclusive.

**SUPPLY CHAIN STANDARDS:**

Vendor agrees to use commercially reasonable efforts to comply with requirements set forth in the Circuit City Vendor Supply Chain Standards (the "Supply Chain Standards"), a copy of which has been provided to Vendor and which has been executed on even date herewith. Notwithstanding the above, Vendor shall not be subject to financial assessments under the Supply Chain Standards.

**NO PENALTIES:**

Vendor will use all commercially reasonable efforts to meet performance targets established by Circuit City. In no event will any financial assessments or penalties apply to Vendor for any failure to meet such targets, goals or other criteria.

**PRICE PROTECTION:**

Price Protection will be provided on all existing inventories and Products in transit in the event that Vendor decreases its price. This price protection will be taken as a reduction of Circuit City's account balance with Vendor. In the event any such reduction creates a debit balance, Vendor will make payment of any such amounts in accordance with the paragraph titled "Debit Balance" below.

**STOCK BALANCING:**

The parties agree to collaborate on the creation of a mutually acceptable plan to address any overstock issues and which shall include a stock balancing plan.

**TIMING:**

In the event of an increase in Vendor's price to Circuit City after issuance of a Purchase Order, Circuit City will pay the lower price for all Products ordered under open Purchase Orders.

**RETURN PROCEDURES:**

All Products returned to Vendor shall be returned in accordance with the requirements herein and the VOG (except for the "Returns Goods Policy" within the VOG which is superseded by the terms of this Agreement). Without limiting the generality of the foregoing, all returned Products will be packed by Circuit City to avoid damage in transit, but the original packaging is not required. No deduction will be taken or credit memo

issued by Vendor for any missing parts (including owner's manuals) unless otherwise specifically agreed by the parties on Exhibit 4.

**OFFSET:** Circuit City shall be entitled to set off, offset, or deduct any amounts that Circuit City believes it is owed by Vendor from any amounts owed to Vendor; provided that Circuit City uses all commercially reasonable efforts to provide Vendor with at least five (5) business days advance notice with reasonable documentation establishing the basis for such amount. In the event Vendor disputes any or all of such amount, whether prior to or after the set off, the parties agree to use all good faith, commercially reasonable efforts to resolve the dispute. In the event Vendor receives five (5) business days advance notice and fails to respond to Circuit City, and unless a later audit shows an accounting error or discrepancy, Vendor is deemed to have assented to such set off amount, except with respect to RTV Defective Products for which Vendor shall have a reasonable time after receipt in which to inspect for "true" defect. Vendor's point of contact for such notice of offset shall be as set forth on Exhibit 5 to this Agreement.

**DEBIT BALANCE:** In the event Vendor is ever in a debit balance with Circuit City such that no set off is available to Circuit City, Vendor agrees to remit payment to Circuit City by certified check or wire transfer within thirty (30) days of Circuit City's notice to Vendor of any such debit balance. A debit balance may result from events including, but not limited to, returns, stock balancing, price protection, or funding items.

**INDEMNIFICATION:** Vendor agrees to defend (through counsel reasonably satisfactory to Circuit City), indemnify and hold harmless Circuit City and its affiliates, and their respective directors, officers, employees, agents, successors, and assigns from and against any and all actions, judgments, claims, losses, damages, expenses or costs (including reasonable attorneys' fees and costs and expenses of defense) and liabilities which arise out of, relate to or are in any way connected with (i) the sale, resale and/or use or failure of the Products, including without limitation, liability based upon death or injury to any person (including Circuit City employees) or damage to property resulting or arising from or alleged to result or arise from or out of the sale, resale, use and/or failure of the Products, (ii) Vendor's actual or alleged breach of this letter agreement, (iii) Vendor's actual or alleged violation of any of the laws of any governmental entity with respect to the Products, (iv) any representations made by Vendor to Circuit City which Circuit City uses and incorporates into its advertising or upon which Circuit City relies when selling the Products hereunder, or (v) any actual or alleged infringement by Vendor of the intellectual property rights of any third party. The above indemnification rights shall not apply to the extent any actions, judgments, claims, losses, damages, expenses or costs are determined by a court of competent jurisdiction or other arbiter to have been caused by the negligence or intentional misconduct of Circuit City, its employees or contractors. In the event of an indemnifiable claim hereunder, Circuit City shall: (i) provide as much advance notice of such claim to Vendor as possible; (ii) provide Vendor with all reasonably requested assistance in its defense of the claim, at Vendor's cost; and (iii) tender the defense of the claim to Vendor; provided however, that if Circuit City remains a named party Vendor shall be required to obtain Circuit City's consent prior to any settlement, which consent shall not be

unreasonably withheld or delayed.  The terms of this paragraph shall survive the termination of this Agreement.

INSURANCE:

Vendor shall maintain a policy of commercial general liability insurance, including products – completed operations coverage, with an insurance carrier authorized to do business in the United States and having a rating of "A–" or better by A.M. Best Company and a Financial Size Category of at least Class VIII, with limits of no less than $2,000,000 per occurrence and $10,000,000 aggregate.  Products – completed operations coverage will be maintained during the term of this Agreement and for at least five (5) years after termination of this Agreement. Such policies will name Circuit City Stores, Inc. as an additional insured.  All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Agreement.  A certificate of insurance meeting the above requirements will be delivered to Circuit City (i) prior to the initial delivery of the Products, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

LIMITATION
OF LIABILITY:

IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS OR REVENUE OR FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES RESULTING FROM ANY PERFORMANCE, NON-PERFORMANCE, BREACH OR TERMINATION OF THIS LETTER AGREEMENT.

TERMINATION/
INVENTORY BUYBACK:

Either party may terminate this Agreement immediately without liability or obligation upon written notice to the other party if the other party (i) breaches any term of this Agreement and fails to cure such breach within ten (10) days of such notice, (ii) becomes insolvent, files a petition in bankruptcy, makes an assignment for the benefit of creditors or ceases normal business operations, or (iii) assigns or attempts to assign this Agreement or any of the rights and obligations hereunder without first obtaining consent as required herein. The foregoing termination rights will be in addition to and will not be construed to limit or restrict any other rights a party may have with regard to cancellation, termination, refusal, return or rejection of any order of Products pursuant to this Agreement. Upon termination of this Agreement for any reason, including, but not limited to termination of the Agreement without cause as set forth in the section titled "Term" above, at Circuit City's election, Vendor shall purchase from Circuit City and Circuit City shall sell and deliver to Vendor all new, "A Stock" Products (excluding floor samples, demos and open box units) then in Circuit City's inventory at the same price as Circuit City paid for such Products less any and all allowances, credits or deductions granted to Circuit City for said products. Such purchase of inventory shall first be accomplished through an offset by Vendor of the total purchase price of such Products from any existing accounts receivables owed by Circuit City to Vendor.

CONFIDENTIALITY:

Prior to or simultaneously with this Agreement, Circuit City and Vendor have entered into a nondisclosure and confidentiality agreement (the "Confidentiality Agreement"). The parties acknowledge and agree that the Confidentiality Agreement will apply to all Confidential Information

(which may also be referred to by a similar term, such as Confidential Data, all as defined in the Confidentiality Agreement) disclosed under this Agreement, and further agree that a breach of the Confidentiality Agreement will constitute a breach of this Agreement. The terms of this Section will survive the termination of this Agreement.

**USE OF MARKS**

Vendor hereby grants Circuit City a limited license to use Vendor's trademarks as found in Vendor's Product literature or as otherwise provided by Vendor during the term of this Agreement and any follow on period during which Vendor is marketing or selling the Vendor Products remaining in Circuit City's inventory solely in connection with the promotion and sale of the Products. Vendor warrants that it has the right to grant such license of the Vendor trademarks. Circuit City acknowledges and agrees that such trademarks are owned by or licensed to Vendor and that all usage by Circuit City shall inure to the benefit of Vendor, and that it will refrain from taking any action inconsistent with such usage. Circuit City will not deface, or otherwise alter any Vendor trademarks.

**DOCUMENT PRECEDENCE:**

In the event of any conflict between the terms of this Agreement and the terms of the VOG, the Supply Chain Standards, a Purchase Order or any other agreement executed by the parties which does not explicitly state that its terms take precedence over those stated herein, the terms of this Agreement will control.

**MISCELLANEOUS:**

Neither party may assign this Agreement, or any of its rights or duties hereunder, without the prior written consent of the other party. This Agreement shall be governed by the laws of the Commonwealth of Virginia (other than its conflicts of laws provisions). All provisions of this Agreement that by their nature should survive the expiration or termination of this Agreement shall survive such expiration or termination. This Agreement, including any documents incorporated herein, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any prior agreements between the parties with respect to such subject matter.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the date and year first above written.

Circuit City Stores, Inc.

By: _____
Name: _____
Date: _____8 | 7 | 2006_____

Boston Acoustics, Inc.

By: _____
Name: _Robert Weissburg_
Date: _August 2, 2006_

Exhibit 1
to
Letter Agreement
Dated August 2, 2006
Between
Circuit City Stores, Inc.
and
Boston Acoustics, Inc.

<u>LIST OF PRODUCTS</u>

Boston Acoustics, Inc. will sell and Circuit City Stores, Inc. will purchase the following Products FOB Origin at Vendor's U.S. domestic warehouse, as provided in the Agreement dated August 2, 2006 between the parties:

| Circuit City Class | Brand | Model No. | Contract Price (Invoice) | Freight Allowance | Service Strategy | Labor Rate | No Trouble Found Rate |
|---|---|---|---|---|---|---|---|
| 240 | Boston Acoustics | P430 | $172.90/ea. | 2.50%DFI | Repair | $30 | $10 |
| 240 | Boston Acoustics | CR67Black | $106.40/pair | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | CR57Black | $79.80/ea. | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | CRC7Black | $98.80/ea. | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | VR2Black | $212.52/ea. | 3.50%DFI | Repair | $30 | $10 |
| 240 | Boston Acoustics | VRCBlack | $200.01/ea. | 3.50%DFI | Repair | $30 | $10 |
| 240 | Boston Acoustics | BravollWhite | $118.75/ea. | 2.50%DFI | RTV | n/a | n/a |
| 129 | Boston Acoustics | XB2 | $156.24/ea. | 2.50%DFI | Repair | $40 | $15 |
| 129 | Boston Acoustics | XB4 | $187.23/ea. | 2.50%DFI | Repair | $40 | $15 |
| 129 | Boston Acoustics | XB6 | $236.63/ea. | 2.50%DFI | Repair | $40 | $15 |
| 239 | Boston Acoustics | DSI260 | $76.00/pair | 2.50%DFI | RTV | n/a | n/a |
| 239 | Boston Acoustics | DSI265 | $76.00/pair | 2.50%DFI | RTV | n/a | n/a |
| 239 | Boston Acoustics | DSI255 | $57.00/pair | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | MRCB | $125.01/ea. | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | VOYAGER5White | $142.50/pair | 2.50%DFI | RTV | n/a | n/a |
| 240 | Boston Acoustics | VOYAGER6White | $190.00/pair | 2.50%DFI | RTV | n/a | n/a |
| 253 | Boston Acoustics | Receptor Radio Charcoal | $84.93/ea. | 2%DFI | RTV | n/a | n/a |
| 253 | Boston Acoustics | Microsystem CD Black | $285.00/ea. | 2%DFI | RTV | n/a | n/a |
| 253 | Boston | Receptor HD | $199.49/ea. | 2%DFI | RTV | n/a | n/a |

| | Acoustics | | | | | | |
|---|---|---|---|---|---|---|---|

Exhibit 2
to
Letter Agreement
Dated August 2, 2006
Between
Circuit City Stores, Inc.
and
Boston Acoustics, Inc.

## MARKETING DEVELOPMENT FUNDS

Under the terms of the Agreement between Circuit City Stores, Inc. ("Circuit City") and Boston Acoustics, Inc. ("Boston Acoustics"), dated as of August 2, 2006, Boston Acoustics agrees to provide Marketing Development Funds (as defined therein) to Circuit City equal to two percent (2%) of Circuit City's total invoices less credit returns and pricing adjustments of Products during the Initial Term.  The Marketing Development Funds are to be paid quarterly to Circuit City by credit memo, as of November 30 and February 28, and in any event by certified funds as of the date of termination or expiration of this Agreement for any partial quarters.  Vendor's payment of the Marketing Development Funds shall not be unreasonably withheld or delayed.

In the event that this Agreement is renewed by the parties, this Exhibit 2 shall be amended to set forth the Marketing Development Fund program for the Renewal Term.

Exhibit 3
to
Letter Agreement
Dated August 2, 2006
Between
Circuit City Stores, Inc.
and
Boston Acoustics, Inc.

## BOSTON ACOUSTICS MINIMUM ADVERTISED PRICE (MAP) POLICY

Minimum advertised prices do not in any way restrict the dealer's ability to determine its own retail prices, and do not apply to "used or discontinued" products provided that such merchandise is clearly identified as "used or discontinued." This policy applies only to products that are identified below as part of our Minimum Advertised Price ("MAP") policy. You will be in compliance with this policy if the subject products are (1) advertised for sale to your customer at no less than the published MAP, or (2) advertised with no price. The MAP for each product is specified below and may be revised from time to time as communicated to you by your sales representative. Advertisements that are within $1.00 of the MAP will be viewed as compliant to the MAP policy. MAP only applies to specified, new (unused) Boston Acoustics products.

"Advertising" includes, without limitation, catalogs, direct mailers, flyers, handouts, magazines, newspapers, all electronic means of communication, radio or television, the listing of products for sale on Internet web sites, mass e-mails billboards, exterior store displays, in-store displays and any other media for public display, but only to the extent such advertising is paid for in part or in whole by Boston Acoustics MAP cooperative ad funding. Advertising (including in-store signage) that is paid for by business partners themselves is not subject to the Boston Acoustics MAP policy.

Non-compliance will result if a Dealer includes, in any advertising paid for in part or in whole by Boston Acoustics MAP cooperative ad funding, any additional discount, coupon, incentive or indication of discount (whether by code, icon or graphics), where the cumulative effect would be to reduce the advertised price below the MAP price. The use of "click on" or "click through" buttons or any similar buttons that provide a lower than MAP price also constitutes non-compliance with this MAP policy. Failure to abide by the MAP policy for products that are on our MAP product list will result in the following consequences:

- First violation — no coop advertising, MDF or accrual funding associated with advertising support for the particular advertisement in violation and no such funding for 30 days thereafter;

- Second violation — no coop advertising, MDF or accrual funding associated with advertising support for the particular advertisement in violation and no such funding for 90 days thereafter;

- Third violation — no coop advertising, MDF or accrual funding associated with advertising support for the particular advertisement in violation and no such funding for 1 year thereafter.

- After the third violation, Boston Acoustics may, in its sole discretion, seek additional remedies if and as appropriate.

Should you have any questions, please contact your Boston Acoustics Sales Representative.
Effective February 1, 2006

Exhibit 4
to
Letter Agreement
Dated August 2, 2006
Between
Circuit City Stores, Inc.
and
Boston Acoustics, Inc.

MISSING PARTS PRICE LIST

Vendor shall be entitled to take a deduction or issue a credit memo at the rates below if any returned product does not include any of the following parts:

| Basic Missing Accessory Charges | |
| --- | --- |
| Remote Controls | $5 |
| Power Cables | $5 |
| AC Power Adapter | $15 |
| Microphone | n/a |
| Mounting Brackets | $10 |
| Hardware Kits | $5 |
| Missing Knobs | $2 |
| S Cable | n/a |
| Ipod Cable | n/a |
| Speaker Grilles | $5 |

Exhibit 5

to

Letter Agreement

Dated August 2, 2006

Between

Circuit City Stores, Inc.

and

Boston Acoustics, Inc.

<u>BOSTON ACOUSTICS CONTACT FOR NOTICE OF OFFSET</u>

Notice of offset as set forth under this Agreement will be in writing and will be sent to the facsimile number given below:

Boston Acoustics, Inc.
300 Jubilee Rd.
Peabody, MA 01960

Attn: Debby Ricker
Fax: 978.538.5088

and will be deemed to have been duly given or rendered upon receipt of facsimile confirmation.

## EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Circuit City Stores, Inc., *et al.*,** | : | **Case No. 08-35653 (KRH)** |
| | : | |
| **Debtors.** | : | |

## DECLARATION OF JOHN HENDERSON

I, John Henderson, make this Declaration under 28 U.S.C. § 1746, and state:

1. I am the Director of Credit for D & M Holding US, Inc. I am older than 21 years of age, and suffer no legal disability. I am competent to make this Declaration, and have personal knowledge of the matters stated herein. This Declaration is made in support of the *Response of Boston Acoustics, Inc. to the Debtor's Thirty Third Omnibus Objection To Claims (Modification and/or Reclassification of Certain Claims)* (the "Response")

2. D&M Holdings US Inc. is the parent company of Boston Acoustics, Inc. ("Boston Acoustics").

3. On August 2, 2006, Boston Acoustics and Circuit City entered into a letter agreement pursuant to which Circuit City purchased certain goods identified in the agreement from Boston Acoustics (the "Letter Agreement"). A true and correct copy of the Letter Agreement is attached to the Response as **Exhibit B**.

4. Pursuant to the Letter Agreement, and subsequent orders placed by Circuit City, within forty-five (45) days of Circuit City's bankruptcy petition, Boston Acoustics delivered to Circuit City goods ordered by Circuit City.

{W1121803.1 014297-075387 }

5. On November 10, 2008, I sent a reclamation demand letter to Mr. Bruce H. Besanko, Chief Financial Officer, Circuit City Stores, Inc.  A true and correct copy of my reclamation demand letter is attached to the Response as part of Exhibit A.

I declare under penalty of perjury that the foregoing statements are true and correct.

Date: _9/14/09_____            _____
                               John Henderson

{W1121803.1 014297-075387 }