# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

|  |  |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES, INC.*, et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653<br><br>Jointly Administered |

---

## FM FACILITY MAINTAINENCE'S BRIEF IN SUPPORT OF OBJECTION TO DEBTORS' FIFTY-FOURTH ONMINBUS OBJECTION TO CLAIMS (DISALLOWANCE OF CERTAIN LATE CLAIMS) AND CROSS MOTION FOR THE ENTRY OF AN ORDER DEEMING ADMINISTRATIVE CLAIM TIMELY FILED

---

Nancy A. Washington
Colin R. Robinson
**SAIBER LLC**
18 Columbia Turnpike
Florham Park, NJ 07932
(973) 622-3333

- and -

Christopher L. Perkins
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA 23219
(804) 783-7550

Counsel for FM Facility Maintenance, LLC,
  f/k/a IPT, LLC

# TABLE OF CONTENTS

**PAGE**

**PRELIMINARY STATEMENT** ...................................................................................... 1

**STATEMENT OF FACTS** ............................................................................................. 2

**ARGUMENT** ................................................................................................................. 6

**POINT I** ......................................................................................................................... 6

**FM'S ADMINISTRATIVE CLAIM MUST BE** ......................................................... 6

**DEEMED ALLOWED** .................................................................................................. 6

**POINT II** ........................................................................................................................ 9

**THE DEBTOR IS IN NO WAY PREJUDICED BY THE** ........................................ 9

**TARDINESS OF THE FM ADMINISTRATIVE CLAIM** ........................................ 9

**POINT III** ...................................................................................................................... 11

**THE LENGTH OF THE DELAY DID NOT ADVERSELY IMPACT THE DEBTOR** ..... 11

**POINT IV** ...................................................................................................................... 12

**THE DELAY WAS CAUSED BY EVENTS OUTSIDE OF** ..................................... 12

**FM'S CONTROL** .......................................................................................................... 12

**POINT V** ....................................................................................................................... 14

**FM DID NOT ACT IN BAD FAITH** ......................................................................... 14

**CONCLUSION** ............................................................................................................. 16

# TABLE OF AUTHORITIES

**PAGE**

*In re A.H. Robins Co., Inc.*, 129 B.R. 457 (Bankr.E.D.Va. 1991) ....................................................9

*In re American Classic Voyages Co.*, 405 F.3d 127 (3d Cir. 2005) ................................................12

*In re Broadmoor Country Club & Apt.*, 158 B.R. 146 (Bankr.W.D.Mo. 1993) ...............................11

*In re Crane Rental Company*, 334 B.R. 73 (Bankr.D.Ma. 2005) ...................................................11

*In re E.S. Bankest L.C.*, 321 B.R. 588 (Bankr. S.D. Fla. 2005) .......................................................11

*In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005) ...........................................................................12

*In re Garden Ridge Corporation*, 348 B.R. 642 (Bankr.D.Del. 2006) .......................................10, 11

*In re Hillman*, No. 92-12284, 1993 WL. 464371 (Bankr.S.D.Ala. June 29, 1993) .........................13

*In re Hooker Investments, Inc.*, 937 F.2d 833 (2d Cir. 1991) ...........................................................9

*In re Modern Medical Products, Co.*,
  No. 08-B-73908, 2009 WL. 2990000 (Bankr.N.D.Ill. Sept. 16, 2009) ........................................11

*Pioneer Investment Services Co. v. Brunswick Association Ltd. Partnership*,
  507 U.S. 380 (1993) ..................................................................................................................6, 7

*In re Quartercall Communications*,
  No. 95-15090, 1996 WL. 910910 (Bankr.E.D.Va. May 15, 1996) ...............................................8

*Thompson v. E.I. DuPont de Nemours, & Co.*, 76 F.3d 530 (4th Cir. 1996) ...................................8, 12, 13

## STATUTES

Federal Rule Bankruptcy Procedure 9006(b)(1) ...............................................................................1, 6

FM Facility Maintenance, LLC, f/k/a IPT, LLC ("FM"), by and through its undersigned counsel, hereby objects to Circuit City Stores, Inc., *et al.'s* (collectively the "Debtor") Fifty-Fourth Omnibus Objection to Claims (Disallowance of Certain Late Claims) and cross-moves for the entry of an order deeming its administrative claim timely filed, and submits this Memorandum of Law in support of same.

## PRELIMINARY STATEMENT

By its opposition and cross-motion, FM requests this Court to exercise its discretion in accordance with Rule 9006(b)(1) and the Supreme Court's decision in *Pioneer*, and deem its administrative claim timely filed. Such exercise of discretion is fair and equitable under the circumstances.  While technically late, FM's administrative claim was delivered essentially ten (10) minutes after the deadline in a "business day" context, and that delay was unequivocally the result of excusable neglect.  For the same reasons, the Debtor's objection and attempt to disallow and expunge FM's administrative claim, received after the briefest of delays, should be flatly denied.

The Court must prevent a grave injustice from occurring, as FM can demonstrate excusable neglect to deem its claim timely filed and the Debtor cannot reasonably articulate a scintilla of prejudice as a result of the brief delay in receiving the administrative claim: the bar date deadline was 5:00 p.m. on June 30th and the claim was received by the claims agent at 9:10 a.m. the next morning, July 1st.  More importantly, the brief delay in the filing was caused by an event outside of FM's reasonable control and FM did not exhibit any bad faith in its conduct either prior to or following the bar date, as it immediately attempted to amicably resolve the timeliness issue regarding the filing of its claim with the Debtor (and avoid motion practice…obviously its efforts were to no avail).  The Court must deny Circuit City's attempt to

reap a significant windfall by expunging and avoiding payment of an otherwise valid claim that the Debtor had notice of prior to the administrative claims bar date and that seeks payment for substantial critical services provided to the Debtor post-petition.

## STATEMENT OF FACTS

FM, a leading nationwide provider of comprehensive facility maintenance services, entered into that certain Master Service Agreement (the "MSA"), effective October 15, 2008, with Circuit City Stores, Inc. ("Circuit City"), a nationwide retailer of consumer electronics, and a Debtor herein.  Certification of Steve Maggipinto ("Maggipinto Cert.),   ¶2.  A copy of the MSA is attached as Exhibit A to the Maggipinto Cert.

Prior to its bankruptcy filing, Circuit City operated not less than 550 retail locations throughout the United States.  Circuit City retained FM as its exclusive maintenance services manager and provider for all of Circuit City's retail stores throughout the country.  Maggipinto Cert., ¶4.  FM, through its national network of service vendors, provided regular daily and preventive maintenance and addressed emergent maintenance issues in Circuit City locations nationwide.  FM provided all aspects of essential facility maintenance, including without limitation, janitorial services, HVAC, fire protection, lighting, glass services, roof, awnings, signage, electrical, lighting, plumbing, doors, locks, sanitation services, pest control, landscaping, parking lots and sidewalks, office equipment and property repair.  *Id.*  These services were provided to Circuit City throughout the post-petition period, including the going out of business sales conducted by the Debtor.  *Id.*

Pursuant to the MSA, regularly scheduled maintenance services were invoiced on a monthly basis, and reactive maintenance services were invoiced on a weekly basis.  Maggipinto Cert., ¶7; MSA, §9.2.  FM accounted for and captured all outstanding vendor invoices and

consolidated them into one invoice that was presented to Circuit City for payment.  Maggipinto

Cert., ¶6.  Such invoices detail, among other items, the work performed, the location, the date

and the cost.  *Id.*  The consolidated invoices were comprised of both services performed for

which invoices were received from vendors and estimates based on services performed but not

yet invoiced by the individual vendor.  *Id.*

In accordance with the MSA, FM commenced provision of nationwide maintenance

services to Circuit City in the beginning of November 2008.  On November 10, 2008 (the

"Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code.   The Debtor has managed and operated its business as a debtor-in-possession

pursuant to sections 1107 and 1108 of Title 11 of the U.S. Code (the "Bankruptcy Code").  No

trustee or examiner has been appointed in these chapter 11 cases.

While Circuit City continued to manage and operate their business as a debtor-in-

possession, through and including the Debtor's going out of business sales, FM continued to

provide post-petition maintenance services to Circuit City's retail stores nationwide.  As set forth

in its Amended Request for Payment of Administrative Expense, FM is owed $607,961.73 by

Circuit City for post-petition services. [1]  Magginpinto Cert., ¶11.

On May 15, 2009, the Court entered that certain Order Pursuant to Bankruptcy Code

Sections 105 and 503 and Bankruptcy Rules 2002 and 9007(I) Setting Administrative Bar Date

and Procedures for Filing and Objecting to Administrative Expense Requests and (II) Approving

Form and Manner of Notice Thereof (Docket No. 3354) (the "Administrative Claims Bar Date

Order").  Pursuant to the Administrative Claims Bar Date Order, the deadline for filing a claim

---

[1] Additionally, the Debtor owes FM $211,793.61 for pre-petition services under the MSA as set forth in its proof of claim timely filed on January 29, 2009.

for Administrative Expenses (as defined in the Administrative Bar Date Order) with the Debtors'

claims agent, Kurtzman Carson Consultants LLC ("Claims Agent"), located in El Segundo,

California, was 5:00 p.m. on June 30, 2009 (the "Administrative Claims Bar Date").

Due to the hundreds of Circuit City stores that FM provided maintenance services to

during the post-petition period, and the number of contractors, sub-contractors and employees

required to relay their invoices and accountings for the services performed at Circuit City

locations, as a regular course of conduct FM was continuously accounting and consolidating

invoices to the Debtor.  Maggipinto Cert., ¶8.  Accordingly, FM strove until the eve of the bar

date to reign in as many of the outstanding invoices as possible in order to submit the most

comprehensive consolidated invoice that reconciled all outstanding vendor invoices.  *Id.* at ¶9.

Accordingly, on June 29, 2009, after receiving the consolidated invoice comprising FM's

Administrative Claim, counsel for FM sent to the Claims Agent's location in California, via

Federal Express ("FedEx") priority overnight delivery, its administrative claim (the

"Administrative Claim") for delivery and filing on the following morning, June 30, 2009.  A

copy of the cover letter and Administrative Claim is attached to the Certification of Nancy A.

Washington ("Washington Cert.") as Ex. A.  FedEx's "Priority Overnight" shipping was selected

because packages sent via "FedEx Priority Overnight" are to be delivered the next business day

by no later than 10:30 a.m.  FM's expectation was that its Administrative Claim would be

delivered to the Claims Agent the very next morning -- well in advance of the Administrative

Claim Bar Date, which was at 5:00 p.m., the close of business.  *See* FedEx shipping

confirmation, Washington Cert., Ex. B.

On June 30, 2009, the Federal Express tracking status indicated that the Administrative

Claim had arrived in California.  *See* Washington Cert., ¶3.   However, on July 1, 2009, counsel

for FM learned that despite the tracking status indication that the package was indeed in California on June 30th, the package was not delivered to its final destination, the Debtor's Claims Agent, until 9:10 a.m. on July 1, 2009, the very next morning after the Administrative Claims Bar Date. *See id.*, Ex. B.    Upon its immediate and detailed investigation into this delivery failure, counsel learned that the FedEx plane had experienced mechanical failure in Newark, New Jersey on June 29, 2009, thereby delaying the packages arrival in Memphis, resulting in a late delivery in California.   *See* Letter dated July 1, 2009 from Federal Express, Washington Cert., Ex. C.

Counsel for FM demanded an immediate writing from FedEx detailing the events that led to the delivery failure, including the mechanical failure of Federal Express' plane, and took immediate steps to amicably resolve the ultimate 10 minute filing time disparity with the Debtor. Specifically, counsel for FM sent counsel for the Debtor a letter dated July 2, 2009, via electronic mail, informing them of the FedEx delivery failure resulting in the Claims Agent's receipt of the FM Administrative Claim at 9:10 a.m. on July 1, 2009 rather than by 5:00 p.m. on June 30, 2009.   *See* Letter dated July 2, 2009, Washington Cert., Ex. D.  Given the extraordinary circumstances that fall squarely within the excusable neglect standard set forth by the United States Supreme Court in *Pioneer*, as well as the significant amount of the claim, FM requested the Debtor's immediate consent to deem this 10-minute late claim timely filed, and to that end counsel sent a proposed form of stipulation and consent order to accomplish same.  *Id.*, Washington Cert., Ex. D.  FM's counsel made it clear that if the Debtor did not promptly agree and enter the stipulation, then FM would seek the appropriate relief from the court.  *Id.* Washington Cert., Ex. D.

{00591635.DOC}

5

On July 5, 2009, counsel for the Debtor responded via electronic mail, advising that FM's request would be discussed with the Debtor and the Unsecured Creditors Committee and pending such consideration of the issue, counsel for the Debtor requested that FM not file a motion. *See* Email correspondence dated July 5, 2009, Washington Cert., Ex. E. Accordingly, FM did not seek relief from the Court for an order deeming its claim timely filed or otherwise allowing the late filed claim, anticipating a prompt and reasonable response from the Debtor.

Upon further inquiry into the status of its request, counsel for FM received a follow-up communication from counsel for the Debtor that indicated counsel had followed up with the Unsecured Creditors Committee and that the Debtor was postponing the determination of requests such as FM's and other similarly situated claimants until plan confirmation and that FM do the same without prejudice in not having filed its motion. *See* Email correspondence dated August 13, 2009, Washington Cert., Ex. F.

Subsequently, the Debtor filed its Fifty-Fourth Omnibus Objection, necessitating FM's cross-motion to deem its Administrative Claim timely filed pursuant to Rule 9006(b)(1) and opposition to the requested relief sought in the Debtor's omnibus objection.

## ARGUMENT

### POINT I

### FM'S ADMINISTRATIVE CLAIM MUST BE DEEMED ALLOWED

Federal Rule of Bankruptcy Procedure 9006(b)(1) provides courts with discretion to allow a late-filed proof of claim "where the failure to act was the result of excusable neglect." Should a creditor show excusable neglect, the court should allow a late-filed proof of claim. *See Pioneer Inv. Servs. Co. v. Brunswick Ass'n. Ltd. P'ship*, 507 U.S. 380 (1993). In *Pioneer*, the

Supreme Court established a two-part test to determine whether a party's failure to act in accordance with a deadline was due to excusable neglect. *Pioneer*, 507 U.S. at 395.

The Supreme Court's decision in *Pioneer* resolved a split among circuit courts of appeal as to whether a strict standard should be applied to define "excusable neglect" that did not include analysis of factors other than whether the delay was due to circumstances beyond the control of the claimant.   *See* COLLIER ON BANKRUPTCY, ¶ 9006[3], 15 ed. rev'd (2009). Specifically, the Supreme Court recognized excusable neglect as an "elastic concept" covering a spectrum encompassing not only "acts of God or some other circumstance beyond [ ] control" at one end (which the Court noted "plainly would have permitted [the Bankruptcy Court] to find 'excusable neglect'"), but also omissions due to carelessness, at the other end.  *Pioneer,* 507 U.S. at 394.

While the post-*Pioneer* excusable neglect standard may be somewhat unpredictable, it is most assuredly dependent on the "equities of each case."  *Id*.   In the instant matter, the equities clearly dictate that FM's Administrative Claim must be deemed timely filed or otherwise allowed as a late filed claim.

 The initial prong of the *Pioneer* analysis is whether a party's failure to act in a timely manner was due to neglect.  *Id*. at 388, 394.  Under this part, neglect Is deemed to encompass "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness". Id.   The marginal tardiness of the FM Administrative Claim is not the result of an omission or carelessness but the occurrence of an event beyond its control -- a mechanical failure experienced by the courier tasked with the timely delivery of FM's Administrative Claim.

Under *Pioneer*, the next step is to determine whether the events that led to the missed deadline are "excusable."  The Supreme Court's decision in *Pioneer* set forth four factors that

must be considered when contemplating a motion to allow a late-filed proof of claim under Rule 9006(b). Those factors include: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at 395.

The determination of whether FM's claim, filed ten (10) minutes late in the context of a business day, at most mere hours after the bar date, should be deemed timely filed is an equitable one, taking into account all the relevant circumstances surrounding the missed deadline. *Id.* at 394, 395. *See also In re Quartercall Communications*, No. 95-15090, 1996 WL 910910, *3 (Bankr.E.D.Va. May 15, 1996). While the excusable neglect standard is not to be loosely interpreted, the instant matter is most certainly one where, if excusable neglect is not found, an "injustice would otherwise result." *See Thompson v. E.I. DuPont de Nemours, & Co.*, 76 F.3d 530, 534 (4th Cir. 1996).

Equity and justice support the allowance of FM's Administrative Claim as timely filed. FM provided all aspects of Circuit City's essential facility maintenance at every one of its retail locations throughout the post-petition period, and in particular through the Debtor's going out of business sales. FM sent off its Administrative Claim based upon the outstanding invoices for those services in a timely manner. The claim's tardiness was the result of circumstances beyond FM's control. Indeed, a significant injustice will occur if Circuit City is permitted to reap the significant windfall of expungement of a claim for substantial critical services that were rendered to the Debtor post-petition and vital to its efforts to successfully liquidate its assets. Such a harsh result would be contrary to the policies underlying Chapter 11 as a whole to balance the interests

of affected parties and encourage the reorganization of debtors, by punishing a creditor who provided significant and critical post-petition services to a debtor.

To avoid such inequity, this Court must deem FM's Administrative Claim timely filed.

## POINT II

### THE DEBTOR IS IN NO WAY PREJUDICED BY THE TARDINESS OF THE FM ADMINISTRATIVE CLAIM

The Debtor would be hard-pressed to articulate any real prejudice by the allowance of FM's Administrative Claim as a result of its tardiness.  The Administrative Claims Bar Date was 5:00 p.m. on June 30, 2009, and FM's Administrative Claim was received at 9:10 a.m. on July 1, 2009 -- effectively 10 minutes late after the opening of the next day of business - - 9:00 a.m. in a business day context.  *See* Federal Express shipping confirmation, Washington Cert., Exhibit B.

The purpose of a bar date in a chapter 11 bankruptcy is to enable a debtor "to establish the universe of claims with which it must deal and the amount of these claims."  *See In re A.H. Robins Co., Inc.*, 129 B.R. 457, 459 (Bankr.E.D.Va. 1991).  As stated by one court, "a bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization…."  *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991).

The purpose of the bar date was satisfied with regard to FM's Administrative Claim as the Debtor received the claim the very next morning, after the close of business on the Administrative Claim Bar Date.  That FM's Administrative Claim arrived the very next morning cannot reasonably be argued to prejudice the Debtor's ability to "establish the universe of claims" it needed to address.

In determining whether the Debtor is prejudiced, this Court should consider:

> whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether payment of the claim would force the return of amount already paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debtor actually or legally; and whether allowance of the claim would open the floodgates to other future claims.

*In re Garden Ridge Corporation*, 348 B.R. 642, 646 (Bankr.D.Del. 2006) (finding no prejudice where claim was filed seven days after bar date).

Moreover, Circuit City utilized FM's substantial and critical services throughout the post-petition period, received invoicing for such services, and should have expected to pay for those services in the ordinary course as an administrative expense of the estate. The Administrative Claim Bar Date created a need for a final consolidated invoice, which was prepared in conjunction with FM's Administrative Claim. The Debtor cannot seriously claim surprise where Circuit City availed itself of FM's substantial and critical maintenance services throughout the post-petition period. Thus, Circuit City should not be permitted to avoid payment of FM's claim through the rigid, inequitable application of the Administrative Claims Bar Date, particularly under the circumstances of the FM Administrative Claim.

Furthermore, FM's Administrative Claim was filed well before the Debtor filed its proposed plan of liquidation and prior to confirmation notwithstanding that the objection is currently scheduled for the same date as the Debtor's objection to FM's Administrative Claim – a schedule put in place by the Debtor. Because this is a plan of liquidation, Circuit City cannot reasonably claim that its attempts at reorganization are jeopardized by the allowance of FM's Administrative Claim. Additionally, because it was literally filed the morning after the bar date, the Debtor had sufficient time to consider and calculate FM's Administrative Claim in the

presentation of its proposed plan of liquidation.   Thus, deeming FM's Administrative Claim timely filed or otherwise allowing FM's tardy claim would not adversely impact the Debtor.

In sum, the Debtor cannot now feign surprise that FM filed its Administrative Claim and should not be permitted to utilize the Administrative Claim Bar Date offensively and in a punitive manner to disallow and expunge an otherwise valid claim, particularly where the Debtor cannot reasonably claim prejudice as a result of the technical tardiness.

## POINT III

### THE LENGTH OF THE DELAY DID NOT ADVERSELY IMPACT THE DEBTOR

The length of the delay, and its impact on judicial proceedings, unequivocally favors FM. Because FM's claim was filed at 9:10 a.m. the very next morning following the Administrative Claim Bar Date, it is virtually impossible for there to be any discerable impact on the judicial proceedings in this bankruptcy case.   Considering that the Administrative Claim Bar Date deadline was 5:00 p.m., the close of business, in reality, the delay was approximately ten (10) minutes.

Delays much longer than the brief overnight period found in this matter have been held to be acceptable for purposes of allowing a late claim.   See *Pioneer*, 507 U.S. at 384 (allowing claim filed twenty days after the bar date); *In re Crane Rental Company*, 334 B.R. 73 (Bankr.D.Ma. 2005) (allowing claim filed thirty days after the bar date and before the debtor's plan of liquidation); *In re Broadmoor Country Club & Apt.*, 158 B.R. 146 (Bankr.W.D.Mo. 1993) (allowing claims filed eight days after bar date); *Garden Ridge Corp.*, 348 B.R. at 646; *In re Modern Medical Products, Co.*, No. 08-B-73908, 2009 WL 2990000 (Bankr.N.D.Ill. Sept. 16, 2009) (allowing claim filed four days after bar date); *In re E.S. Bankest L.C.*, 321 B.R. 588 (Bankr. S.D. Fla. 2005) (deeming claim filed three days late timely filed).   These decisions

provide ample examples of courts that, after considering the *Pioneer* factors, have properly exercised their discretion and allowed claims much tardier than FM's Administrative Claim. Accordingly, in the instant matter, this Court should exercise its discretion and allow the FM Administrative Claim.

### POINT IV

### THE DELAY WAS CAUSED BY EVENTS OUTSIDE OF FM'S CONTROL

Prior to the Supreme Court's decision in *Pioneer*, excusable neglect was strictly applied and narrowly interpreted by most courts to situations beyond the control of the claimant. *See* Point I, *supra*.  As noted above, *Pioneer* expanded excusable neglect to encompass other events or omissions.  Thus, even under the narrowest interpretation of excusable neglect by courts pre-*Pioneer*, and most definitely under the current *Pioneer* factors, the unique circumstance that caused FM's claim to arrive the morning after the Administrative Claim Bar Date qualify as excusable neglect.

The Fourth Circuit, among others, noted that the critical inquiry and the one that draws a court's attention in the analysis of whether excusable neglect is present is "the reason for the delay, including whether it was in the reasonable control of the movant."  *Thompson*, 76 F.3d at 534;  *In re Enron Corp.*, 419 F.3d 115, 122 (2nd Cir. 2005) (noting that most circuits have focused on the third factor); *but see In re American Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005) ("All factors must be considered and balanced; no one factor trumps the others"). Regardless of whether the third prong of the *Pioneer* factors is weighed more heavily than the others, the undisputable fact is that FM's claim was received after the 5:00 p.m. deadline due to events that were beyond FM's reasonable control.

FM reasonable relied upon Federal Express' Priority Overnight Delivery to deliver its Administrative Claim from the east coast to Circuit City's Claims Agent on the west coast because FedEx guaranteed delivery by the next morning, no later than 10:30 a.m.    The unfortunate and obviously unforeseen mechanical failure of Federal Express' aircraft the night of June 29th was a unique event that FM could not control once it surrendered its Administrative Claim to the courier for delivery.    This event delayed the Administrative Claim's arrival in California and its ultimate delivery to the Claims Agent in El Segundo, California.    The mechanical failure of the FedEx plane and the resulting tardiness of FM's Administrative Claim are not, as is often the case, the result of "a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree…"    *Enron*, 419 at 123-124.    Instead, the Administrative Claim Bar Date established by this Court was adhered to by FM and its counsel, as they had timely placed the claim in the control of the courier for guaranteed delivery.    FM's adherence to the Administrative Claims Bar Date deadline was derailed by the FedEx plane's mechanical failure.    This event was not within FM's reasonable control and the exceptional nature of these circumstances supports FM's position that its Administrative Claim should be deemed timely filed because of excusable neglect.    *See e.g. In re Hillman*, No. 92-12284, 1993 WL 464371 (Bankr.S.D.Ala. June 29, 1993) (overruling claim objection and allowing claim delayed one day due to snow storm).

FM is cognizant of the Fourth Circuit's decision in *Thompson*.    *Thompson*, 76 F.3d at 535 (holding that a litigant that relies on the "postal processes, without taking further steps" to ensure timely filing, "cannot establish excusable neglect").    However, FM's unfortunate predicament and its discovery of the events outside its control are clearly distinguishable in two respects. First, *Thompson* addressed the failure to timely file an appeal, not a proof of claim.    Second, and

more importantly, the Debtor should not be able to rely upon *Thompson* to create a stricter standard than the one that existed pre-Pioneer. *See In re Commonwealth Aluminum Supply*, 110 B.R 778 (Bankr.E.D.Va. 1989) (holding that excusable neglect under Bankruptcy Rule 9006 exists only where there are unique or extraordinary circumstances beyond reasonable control); *In re Larsen*, 80 B.R. 784 (Bankr.E.D.Va. 1987).   Under the narrow, more stringent view of excusable neglect that existed pre-*Pioneer*, and the current elastic standard, FM's circumstances constitute excusable neglect and qualify for the enlargement of time under Rule 9006.

Additionally, the Debtor will no doubt argue that FM created the delay by filing its claim just prior to the Administrative Claim Bar Date.  Such an argument rings hollow given the nature and scope of the services provided and the regular course of dealings between the parties.  FM's actions in assembling its Administrative Claim were born from its course of dealing as the manager of vendors located across the country that performed maintenance services at hundreds of Circuit City locations and its obligation and intention to provide a consolidated invoice that included all outstanding invoices for post-petition services.  Adherence to its business practices, which the Debtor was aware and enjoyed the benefit of should not now be used to punish FM and expunge its valid claim for substantial critical services provided.

## POINT V

## FM DID NOT ACT IN BAD FAITH

The final factor to be considered when determining excusable neglect under *Pioneer*, whether the movant acted in bad faith, unequivocally falls in favor of FM as well, as FM in no way exhibited bad faith.

FM's tardy Administrative Claim was the direct result of events beyond FM's reasonable control.  Immediately upon learning of the FedEx delivery failure, FM took immediate steps to

notify the Debtor of the incident and seek a consensual resolution.  To provide the Debtor with a fair opportunity to consider the situation, FM withheld the assertion of its right to file a motion for allowance of the claim based on the representation from Debtor's counsel.[2]

Additionally, FM submitted its Amended Administrative Claim, significantly reducing its claim after review of billing records submitted after the Administrative Claim Bar Date.  These are not the acts of a party that is exhibiting bad faith but one that sought to cooperate in good faith with the Debtor to secure the just and proper payment of outstanding sums due for substantial essential services provided to the Debtor throughout the post-petition period.

FM can also dispel the notion that waiting until the eve of the bar date exhibited bad faith.  As Circuit City was well aware, the provision of a consolidated invoice to the Debtor by FM was constrained by the receipt, accounting and capturing of the work performed by FM vendors Circuit City stores located nationwide.  Magginpinto Cert., ¶9.  By endeavoring to provide fully captured, final consolidated invoices, FM filed its Administrative Claim in good faith.

Because FM did not act in bad faith, and demonstrated that it has overwhelmingly satisfied the other criteria set forth by the Supreme Court in *Pioneer* to establish excusable neglect, FM respectfully requests that FM's Administrative Claim be allowed and the Debtor's requested relief denied.

---

[2]  FM was further encouraged to stand down from asserting its rights to file a Motion by correspondence from Debtor's counsel indicting that any such request would be postponed until plan confirmation.  See Washington Cert., Exh. E.

## CONCLUSION

**WHEREFORE,** by reason of the foregoing, FM Facility Maintenance respectfully requests that the Court deem FM's Administrative Claim allowed as timely filed, enter an order denying the Debtor's Fifty-Fourth Omnibus Objection at to FM's Administrative Claim, and grant such other and further relief as the Court deems equitable and just.

Dated:  November 16, 2009

Respectfully Submitted,
FM Facility Maintenance, LLC, f/k/a IPT, LLC

By Counsel:

**SAIBER LLC**

Nancy A. Washington
Colin R. Robinson
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
nwashington@saiber.com

- and -

**LECLAIRRYAN**

/s/ Christopher L. Perkins
Christopher L. Perkins (VSB No. 41783)
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA 23219
(804) 783-7550
Christopher.perkins@leclairryan.com

## CERTIFICATE OF SERVICE

Pursuant to the *Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* entered on November 13, 2008 [Docket No. 130], I hereby certify that on this 16th day of November 2009 the foregoing was served upon the following parties via electronic mail.

Skadden, Arps, Slate, Meagher &
Flom, LLP One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Attn: Gregg M. Galardi
Attn: Jan S. Fredericks

McGuireWoods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Attn: Douglas M. Foley

Skadden, Arps, Slate, Meagher &
Flom, LLP 333 West Wacker Drive
Chicago, IL 60606
Attn: Chris L. Dickerson

I further certify that the original of the foregoing was filed with the Court via the Clerk's CM/ECF electronic filing system on November 16, 2009.

/s/ Christopher L. Perkins
Counsel

{00591635.DOC}                                                17