## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
| In re:                               | ) |                          |
|                                      | ) | **Chapter 11**           |
| **CIRCUIT CITY STORES, INC., et al.,** | ) |                          |
|                                      | ) | **Case No. 08-35653-KRH** |
| **Debtors.**                         | ) |                          |
|                                      | ) | **Jointly Administered** |

### RESPONSE OF JAMES H. WIMMER, JR. TO
### DEBTORS' FIFTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS

James H. Wimmer, Jr. ("Mr. Wimmer") hereby responds to the Debtors' Fifty-Eighth Omnibus Objection to Claims (Reclassification of Certain Misclassified Claims to General Unsecured, Non-priority Claims) (the "Fifty-Eighth Omnibus Objection") as follows:

### BACKGROUND

1.     On November 10, 2008 ("Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2.     The Debtors continue to operate their businesses and to manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.     No trustee or examiner has been requested or appointed in this case.

4.     The court established January 30, 2009 as the general bar date.

5.     On January 27, 2009, Mr. Wimmer filed a proof of claim in the amount of $1,749,707.14 (the "Proof of Claim").  Of that amount, Mr. Wimmer designated $107,500.00 as

_____

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
909 East Main Street, Suite 1200
Richmond, VA 23219
Tel: 804-697-4100
Fax: 804-697-4112

Counsel for James H. Wimmer, Jr.

an administrative expense claim pursuant to Sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.  *See* POC # 9584.

6.      On October 21, 2009, the Debtors filed the Debtor's Fifty-Eighth Omnibus Objection (Docket No. 5320).   In the Fifty-Eighth Objection, the Debtors seek to reclassify certain claims (the "Misclassified Claims") because "[a]fter reviewing the Misclassified Claims, the basis upon which they are asserted, and reviewing their books and records, the Debtors submit that the Misclassified Claims are asserted with incorrect classifications and should be reclassified to general unsecured, non-priority claims."  *See* Fifty-Eighth Objection, ¶ 11 (Docket No. 5322).

7.      Mr. Wimmer's administrative expense claim is included among those Misclassified Claims the Debtor seeks to reclassify pursuant to the Fifty-Eighth Objection.  *See* Fifty-Eighth Objection, Ex. B & Ex. C.

## BASIS FOR MR. WIMMER'S CLAIM

8.      By letter dated January 3, 2008, Mr. Wimmer was notified that he received a special cash retention award (the "Cash Retention Award").   The Cash Retention Award was dated January 1, 2008.   The total cash award was $125,000, with fifty percent (50%) vesting on January 1, 2009, and fifty percent (50%) vesting on January 1, 2010.

9.      By letter dated October 9, 2008, Mr. Wimmer was notified that he received a long-term cash incentive award (the "Long-Term Cash Award").   The Long-Term Cash Award was dated September 29, 2008.   The first vesting date was July 1, 2009, with a targeted amount vesting of $45,000.

10.     Mr. Wimmer's employment was terminated by the debtors on January 9, 2009.

11.     The Cash Retention Award and the Long-Term Cash Award form the basis of the

$107,500.00 administrative expense claim set forth in the Proof of Claim.  However, for reasons

more fully explained herein, Mr. Wimmer concedes that only the Cash Retention Award should

be classified as an administrative expense claim and only in the amount of $9,616.44.

Furthermore, Mr. Wimmer asserts that $10,950.00 of his severance claim in the amount of

$433,509.30 should be reclassified as a priority claim pursuant to Section 507(a)(4) of the

Bankruptcy Code.

## ARGUMENT

12.     Section 503(b)(1)(A)(i) allows administrative expenses for "the actual, necessary

costs and expenses of preserving the estate including wages, salaries, and commissions for

services rendered after the commencement of the case."  *See* 11 U.S.C. § 503(b)(1)(A)(i).

13.     Section 507(a)(2) gives a priority for "administrative expenses allowed under

section 503(b) of this title."  *See* 11 U.S.C. § 507(a)(2).

14.     In *Former Employees of Builders Square Retail Stores v. Hechinger Investment

Company of Delaware (In re Hechinger Investment Company of Delaware)*, 298 F.3d 219 (3rd

Cir. 2002), the court determined what priority should be afforded claims filed by employees

pursuant to pre-petition retention agreements entered into with the debtor.  The employees

argued that the entire claims should qualify as administrative expenses under

Section 503(b)(1)(A) because the benefits were not 'earned' (in that the employees could not

expect payment until the debtor's store was closed or the employee was terminated, which events

occurred after the petition date) until after the petition date.  *Id.* at 224.  The court found that the

employees' reliance on the scheduled payment date was "misplaced."  *Id.* at 225.  The court

stated that "503(b)(1)(A) refers to services that are 'rendered after the commencement of the

case' and that are needed for the purpose 'of preserving the estate.'" *Id.* at 226.  Thus, the

section "looks to the time when the services were 'rendered' not when they were scheduled for

payment." *Id.* at 225.  The court then apportioned the benefits between those amounts

accumulated pre- and post-petition and only treated that portion accumulated post-petition as an

administrative expense claim. *Id.* at 227.

15. The court in *In re Lason, Inc.*, 309 B.R. 441 (Bankr. D. Del. 2003) construed a

retention agreement that included a vesting date.  The retention agreement at issue was entered

into on February 12, 2001, and awarded the employee $75,000 if the employee remained

employed by the debtor on December 31, 2001. *Id.* at 442.  On December 5, 2001, the debtor

filed for bankruptcy. *Id.*  The employee continued to work for the debtor until January 31, 2002.

*Id.*  The court found that "[r]etention bonuses are earned on each day that the employee works

and, therefore, are entitled to administrative claim status only for the period that the employee

worked post-petition." *See id.* at 443 (citing to *Hechinger Investment*, 298 F.3d at 225).

16. In determining what priority to assign a claim for benefits accrued pursuant to a

retention agreement, the *Hechinger Investment* court and the *Lason* court looked to when the

services under the retention agreements were rendered, not the date the retention agreements

were entered into or the date the benefit was scheduled for payment. *Cf. In re Dornier Aviation*

*(North America), Inc.*, 2002 Bankr. Lexis 1653, *13 (Bankr. E.D. Va. 2002) (finding that an

administrative expense claim must arise from a transaction with the debtor-in-possession

(quoting *In re Mammoth Mart*, 536 F.2d 950 (1st Cir. 1976))).[1]

17. In accordance with the foregoing authorities, in order for an employee to be

entitled to an administrative expense claim based on a pre-petition retention agreement that

---

[1]  *Dornier* was concerned not with a retention bonus but with severance pay.

includes a vesting date, the employee must have (a) worked during the post-petition period and (b) remained employed on the vesting date.

18.     Because Mr. Wimmer worked during the post-petition period and was employed on the vesting date, Mr. Wimmer is entitled to an administrative expense claim in the amount of $9,616.44, which represents the portion of the Cash Retention Award earned during the post-petition period.[2]

19.     Section 507(a)(4)(A) awards priority to "allowed secured claims, but only to the extent of $10,950 for each individual . . . earned within 180 days before the date of the filing of the petition . . . for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual." 11 U.S.C. § 507(a)(4)(A).

20.     Because Mr. Wimmer's Cash Retention Award was earned on each day that Mr. Wimmer worked, Mr. Wimmer is further entitled to that portion of the Cash Retention Award he earned within 180 days prior to the Petition Date up to the statutory maximum of $10,950.00. *See* 11 U.S.C. § 507(a)(4)(A); *Lason*, 309 B.R. at 443. *See also In re Yarn Liquidation, Inc.*, 217 B.R. 544 (E.D. Tenn. 1998) (finding that severance pay created both an administrative expense claim for the amount that accrued post-petition and a priority unsecured claim for the amount that accrued pre-petition, up to the statutory maximum). Because the pay under the Cash Retention Award allocable to the 180 days immediately preceding the Petition Date exceeds the statutory maximum eligible for priority treatment under Section 507(a)(4), Mr. Wimmer is entitled to have $10,950.00 of his administrative expense claim reclassified as a claim entitled to the priority afforded by that section.

---

[2]  There are 365 days between the Cash Retention Award date of January 1, 2008, and the vesting date of January 1, 2009.  Fifty percent (50%) of $125,000, is $62,500.  $62,500 divided by 365 days, equals $171.23 per diem.  There are 52 days between the petition date of November 10, 2008, and the vesting date of January 1, 2009.  $171.23 multiplied by 52 days, equals $8,903.96.

21.    Alternatively, upon Mr. Wimmer's termination by the Debtors on January 9, he would have been entitled to his severance benefits in the amount of $433,509.30 but for the bankruptcy petitions filed by the Debtors.    As Mr. Wimmer's employment agreement was rejected post-petition, "the legal effect of rejecting the employment agreement was to make the breach effective as of the filing date." *Dornier*, 2002 Bankr. Lexis at *28.    Thus, Mr. Wimmer's "right to severance pay is properly treated as having occurred within [180] days of the filing of the petition and [is] therefore entitled to [fourth]-level priority." *Id.*    Therefore, $10,950.00 of his severance amount is entitled to priority treatment under Section 507(a)(4) of the Bankruptcy Code.

WHEREFORE, Mr. Wimmer respectfully requests that the Court enter an order denying the Fifth-Eighth Objection with respect to the Proof of Claim, granting Mr. Wimmer an administrative expense claim of $9,616.44, reclassifying $10,950.00 of claim # 9584 as a Section 507(a)(4) priority claim, and granting such further and additional relief as the Court may deem just and proper.

Dated:  November 16, 2009                CHRISTIAN & BARTON, LLP

/s/ Michael D. Mueller
Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
909 East Main Street, Suite 1200
Richmond, VA 23219
Tel: 804-697-4100
Fax: 804-697-4112

Counsel for James H. Wimmer, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of November, 2009, I caused a copy of the foregoing

to be served by electronic means on the "2002" and "Core" lists and through the ECF system.

/s/  Michael D. Mueller
Michael D. Mueller

1001114v1