IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| **CIRCUIT CITY STORES, INC., et al.,** ) | |
| ) | Case No. 08-35653-KRH |
| **Debtors.** ) | |
| ) | Jointly Administered |

**RESPONSE OF LAWRENCE W. FAY TO**
**DEBTORS' FIFTY-SIXTH OMNIBUS OBJECTION TO CLAIMS**

Lawrence W. Fay ("Mr. Fay") hereby responds to the Debtors' Fifty-Sixth Omnibus Objection to Claims (Disallowance of Certain Alleged Administrative Expenses on Account of Employee Obligations) (the "Fifty-Sixth Omnibus Objection") as follows:

**BACKGROUND**

1. On November 10, 2008 ("Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. The Debtors continue to operate their businesses and to manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been requested or appointed in this case.

4. The court established January 30, 2009, as the general bar date, and June 30, 2009, as the administrative bar date.

---

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
909 East Main Street, Suite 1200
Richmond, VA 23219
Tel: 804-697-4100
Fax: 804-697-4112

Counsel for Lawrence W. Fay

5. On January 23, 2009, Mr. Fay filed four proof of claims in the amounts of $641,722.00, $270,000, $165,000, and $20,000, respectively (the "General Proofs of Claim"). *See* POC ## 7103, 7104, 7099, and 10842.

6. On June 19, 2009, Mr. Fay attached a cover letter to each of the General Proofs of Claim and resubmitted each claim as an administrative expense claim (the "Administrative Expense Proofs of Claim"). *See* POC ## 14365, 13863, 13864, and 13862.

7. On October 21, 2009, the Debtors filed the Fifty-Sixth Omnibus Objection (Docket No. 5320). In the Fifty-Sixth Objection, the Debtors seek entry of an order reclassifying certain administrative expense priority claims as general unsecured claims and then disallowing the reclassified claims as late-filed and duplicative. *See generally* Fifty-Sixth Objection.

8. The Administrative Expense Proofs of Claim are included among those claims the Debtor seeks to reclassify and disallow pursuant to the Fifty-Sixth Objection. *See* Fifty-Sixth Objection, Ex. B & Ex. C.

**BASIS FOR MR. FAY'S CLAIM**

9. Mr. Fay entered into an employment agreement (the "Employment Agreement") with the Debtors, effective as of March 3, 2006. Section 7.4(a) of the Employment Agreement states that upon "termination by the Company without cause, the Company shall pay to the Executive, an amount equal to the product of six (6) months of the Executive's Base Salary for the fiscal year in which the [termination occurred]."

10. By letter dated January 3, 2008, Mr. Fay was notified that he received a special cash retention award (the "Cash Retention Award"). The Cash Retention Award was dated January 1, 2008. The total cash award was $165,000, with fifty percent (50%) vesting on January 1, 2009, and fifty percent (50%) vesting on January 1, 2010.

2

10. By letter dated July 22, 2008, Mr. Fay was notified that he received a Chairman's Award for 2008 (the "Chairman's Award"). The Chairman's Award was dated July 1, 2008. The total cash award was $20,000, with fifty percent (50%) vesting on July 1, 2009, and fifty percent (50%) vesting on July 1, 2010.

11. By letter dated October 9, 2008, Mr. Fay was notified that he received a long-term cash incentive award (the "Long-Term Cash Award"). The Long-Term Cash Award was dated September 29, 2008. The first vesting date was July 1, 2009, with a targeted amount vesting of $45,000.

12. Mr. Fay's employment was terminated by the debtors on March 29, 2009. Upon information and belief, Mr. Fay's base salary on the date of termination was $212,000.00.

13. The Employment Agreement, the Cash Retention Award, the Chairman's Award, and the Long-Term Cash Award form the basis of the $1,096,722.00 administrative expense claim set forth in the Administrative Expense Proofs of Claim. However, for reasons more fully explained herein, Mr. Fay concedes that only the Cash Retention Award should be classified as an administrative expense claim and only in the amount of $11,753.52. Furthermore, Mr. Fay asserts that $10,950.00 of his severance claim in the amount of $106,000.00 should be reclassified as a priority claim pursuant to Section 507(a)(4) of the Bankruptcy Code.

## ARGUMENT

14. Section 503(b)(1)(A)(i) allows administrative expenses for "the actual, necessary costs and expenses of preserving the estate including wages, salaries, and commissions for services rendered after the commencement of the case." See 11 U.S.C. § 503(b)(1)(A)(i).

15. Section 507(a)(2) gives a priority for "administrative expenses allowed under section 503(b) of this title." See 11 U.S.C. § 507(a)(2).

16. In *Former Employees of Builders Square Retail Stores v. Hechinger Investment Company of Delaware (In re Hechinger Investment Company of Delaware)*, 298 F.3d 219 (3rd Cir. 2002), the court determined what priority should be afforded claims filed by employees pursuant to pre-petition retention agreements entered into with the debtor. The employees argued that the entire claims should qualify as administrative expenses under section 503(b)(1)(A) because the benefits were not 'earned' (in that the employees could not expect payment until the debtor's store was closed or the employee was terminated, which events occurred after the petition date) until after the petition date. *Id.* at 224. The court found that the employees' reliance on the scheduled payment date was "misplaced." *Id.* at 225. The court stated that section "503(b)(1)(A) refers to services that are 'rendered after the commencement of the case' and that are needed for the purpose 'of preserving the estate.'" *Id.* at 226. Thus, the section "looks to the time when the services were 'rendered' not when they were scheduled for payment." *Id.* at 225. The court then apportioned the benefits between those amounts accumulated pre- and post-petition and only treated that portion accumulated post-petition as an administrative expense claim. *Id.* at 227.

17. The court in *In re Lason, Inc.*, 309 B.R. 441 (Bankr. D. Del. 2003) construed a retention agreement that included a vesting date. The retention agreement at issue was entered into on February 12, 2001, and awarded the employee $75,000 if the employee remained employed by the debtor on December 31, 2001. *Id.* at 442. On December 5, 2001, the debtor filed for bankruptcy. *Id.* The employee continued to work for the debtor until January 31, 2002. *Id.* The court found that "[r]etention bonuses are earned on each day that the employee works and, therefore, are entitled to administrative claim status only for the period that the employee worked post-petition." *See id.* at 443 (citing to *Hechinger Investment*, 298 F.3d at 225).

18. In determining what priority to assign a claim for benefits accrued pursuant to a retention agreement, the *Hechinger Investment* court and the *Lason* court looked to when the services under the retention agreements were rendered, not the date the retention agreements were entered into or the date the benefit was scheduled for payment. *Cf. In re Dornier Aviation (North America), Inc.*, 2002 Bankr. Lexis 1653, *13 (Bankr. E.D. Va. 2002) (finding that an administrative expense claim must arise from a transaction with the debtor-in-possession (quoting *In re Mammoth Mart*, 536 F.2d 950 (1st Cir. 1976))).[1]

19. In accordance with the foregoing authorities, in order for an employee to be entitled to an administrative expense claim based on a pre-petition retention agreement that includes a vesting date, the employee must have (a) worked during the post-petition period and (b) remained employed on the vesting date.

20. Because Mr. Fay worked during the post-petition period and was employed on the vesting date, Mr. Fay is entitled to an administrative expense claim in the amount of $11,753.56, which represents the portion of the Cash Retention Award earned during the post-petition period.[2]

21. Section 507(a)(4)(A) awards priority to "allowed secured claims, but only to the extent of $10,950 for each individual . . . earned within 180 days before the date of the filing of the petition . . . for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual." 11 U.S.C. § 507(a)(4)(A).

22. Because Mr. Fay's Cash Retention Award was earned on each day that Mr. Fay worked, Mr. Fay is further entitled to that portion of the Cash Retention Award he earned within

---

[1] *Dornier* was concerned not with a retention bonus but with severance pay.
[2] There are 365 days between the Cash Retention Award date of January 1, 2008, and the vesting date of January 1, 2009. Fifty percent (50%) of $165,000, is $82,500. $82,500 divided by 365 days, equals $226.03 per diem. There are 52 days between the petition date of November 10, 2008, and the vesting date of January 1, 2009. $226.03 multiplied by 52 days, equals $11,753.56.

5

180 days prior to the Petition Date up to the statutory maximum of $10,950. *See* 11 U.S.C. § 507(a)(4)(A); *Lason*, 309 B.R. at 443. *See also In re Yarn Liquidation, Inc.*, 217 B.R. 544 (E.D. Tenn. 1998) (finding that severance pay created both an administrative expense claim for the amount that accrued post-petition and a priority unsecured claim for the amount that accrued pre-petition, up to the statutory maximum). Because the pay under the Cash Retention Award allocable to the 180 days immediately preceding the Petition Date exceeds the statutory maximum eligible for priority treatment under section 507(a)(4)[3], Mr. Fay is entitled to have $10,950 of his administrative expense claim reclassified as a claim entitled to the priority afforded by that section.

23.    Alternatively, upon Mr. Fay's termination by the Debtors on January 9, he would have been entitled to his severance benefits in the amount of $433,509.30 but for the bankruptcy petitions filed by the Debtors. As Mr. Fay's employment agreement was rejected post-petition, "the legal effect of rejecting the employment agreement was to make the breach effective as of the filing date." *Dornier*, 2002 Bankr. Lexis at *28. Thus, Mr. Fay's "right to severance pay is properly treated as having occurred within [180] days of the filing of the petition and [is] therefore entitled to [fourth]-level priority." *Id.* Therefore, $10,950.00 of his severance amount is entitled to priority treatment under Section 507(a)(4) of the Bankruptcy Code.

WHEREFORE, Mr. Fay respectfully requests that the Court enter an order denying the Fifth-Sixth Objection with respect to the Proof of Claim, granting Mr. Fay an administrative expense claim of $11,753.56, reclassifying $10,950.00 as a section 507(a)(4) priority claim, and granting such further and additional relief as the Court may deem just and proper.

---

[3] Per diem of $226.03 multiplied by 180 days equals $40,685.40.

6

| | |
|---|---|
| Dated: November 16, 2009 | CHRISTIAN & BARTON, LLP |
| | /s/ Michael D. Mueller |
| | Augustus C. Epps, Jr., Esquire (VSB No. 13254) |
| | Michael D. Mueller, Esquire (VSB No. 38216) |
| | Jennifer M. McLemore, Esquire (VSB No. 47164) |
| | 909 East Main Street, Suite 1200 |
| | Richmond, VA 23219 |
| | Tel: 804-697-4100 |
| | Fax: 804-697-4112 |
| | |
| | Counsel for Lawrence W. Fay |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November, 2009, I caused a copy of the foregoing to be served by electronic means on the "2002" and "Core" lists and through the ECF system.

/s/ Michael D. Mueller
Michael D. Mueller

1001218v1