Jeff McDonald
5540 Quail Ridge Terrace
Chesterfield, Va. 23832
(804) 674-1804

November 13, 2009

The United States Trustee
U.S. Bankruptcy Court
701 East Broad Street
Suite 4304
Richmond, Va. 23219

In re:
U.S. Bankruptcy Court for the Eastern District of Virginia
In re: Circuit City Stores, Inc., et al., Debtors
Case No. 08-35653 (KRH) Jointly Administered

Response of Jeffrey A. McDonald to Debtor's Fifty Sixth Omnibus Objection to Claims –
Disallowance of certain alleged administrative expenses on account of employee
obligations

In the Debtor's Fifty Sixth Omnibus objection, Debtor seeks to object to claim No. 13879 along with other claims based on two reasons outlined in their "Summary of Objection" section. First, Debtor argues that the claims are not entitled to administrative priority because they reason that the claim arose prior to the petition date and should be reclassified as general unsecured claims. Second, they argue that the claims should be disallowed as late filed and duplicative of an existing claim IF the claims were reclassified which would involve unnecessary time, delay and expense.

Summary : The Debtor's objection to claim #13879 which seeks to disallow the claim from being eligible for administrative priority and seeks to reclass the claim as a general unsecured claim should be dismissed. The actual liability for each portion of the relief set out in this claim arose in the post petition, administrative period largely based on the "cliff vesting" nature of the various rewards programs. The Debtor did not communicate to the employees affected OR to the court, their intention to reject the contracts or rewards programs under which these claims are made. By not rejecting the contracts or the rewards programs and by continuing to enjoy the benefits of the continuation of employment services through the administrative period provided by the claimant and others, the Debtor effectively adopted the contracts and signaled the validity of the rewards programs through the administrative period.

With respect to the second reason on which the Debtors rely in seeking that the court disallow the claims, the court record will show that claim # 13879 has not been reclassified and was timely filed. With respect to claim #13879 there was no intention of making a duplicative claim, rather it is simply a response to protect and preserve rights to which I believe I am entitled. This second reasoning by the debtors is therefore not applicable to claim # 13879 and should be ignored by the court. It is unfortunate that the administration of claims in a bankruptcy case as large as this case is cannot be handled with greater efficiency and without the resulting duplicative efforts, time delays and expense that the debtor seeks to cure for the court by arguing for disallowance . However, many claimants lack the sophistication in legal matters, court proceedings and resources to engage counsel with the experience and expertise of the Debtor's counsel. While it may be disappointing to the court that individual claimants lack this sophistication, in most cases it is an employee claimants first experience with issues as complex as those encountered in the bankruptcy claim process. The legal complexity of the process frequently pits single lone claimants with relatively small resources against legal "giants" with vast experience and seemingly unlimited research and administrative capacities. Therefore, claimants such as myself file claims to protect themselves against the hard filing deadlines that are established which, if missed, could result in a total devaluation of their rights. They make these claims in order to protect themselves to the best of their ability. There is no intent to be frivolous or waste the courts valuable time.

In the Debtor's first reasoning, they ask that the claims be reclassified as general unsecured claims because they arose prior to the petition date. Each of the seven categories described in Section D of the Debtors fifty sixth omnibus objection, describe compensation programs of the debtor which were designed to attract and retain valuable human resources. These plans were very intentionally directed at retaining certain employees that the Debtor felt were critical to its success and/or it's viability to continue as a going concern. As business prospects worsened for the Debtor, they recognized the increased risk of key personnel leaving their employ for potentially better opportunities which they believed would further worsen their chance to be successful in their "turn around" efforts. Each individual employee had to decide whether the rewards offered to remain employed by a troubled company offset the risks of lost opportunities if they left and pursued employment with a more successful employer. The "package of rewards" varied with respect to the debtors assessment of each persons relative value as a key contributor to the turnaround plan. The debtor restated their intentions to each key contributor and reinforced the value of the rewards offer as late as three weeks prior to filing for reorganization under protection of the Bankruptcy Court.

While in categories 1-6 , the reward program was articulated and defined prior to the date of petition, most of the programs (other than employment contracts for which the reward was tied to change of control) clearly indicate that there was no valid or enforceable claim or right until all events had occurred. Each of these contracts had an element of "cliff vesting" in which the entire amount due under the contract became due in full upon a specific date or event. In the case of the cash retention reward described in category 2 on page 9 of omnibus objection #56, a cash retention bonus was to be paid to eligible

employees if they continued to be employed on a full time basis in the same or a similar level position on January 1, 2009. It is the performance of the criteria that establishes the very fact of validity and basis for the claim. If the performance to which the reward is atributable occurs post petition, it does not seem that a valid claim existed at petition date and therefore cannot have been a pre-petition claim. A hope of a claim may exist, but it is not an enforceable right and nothing that could have been done pre-petition could change that. The performance is solely attributable to those eligible employees being employed full time on January 1, 2009 which is within an administrative post petition period and in which services were provided.

The debtors had the opportunity to disavow the rewards programs by rejecting the contracts prior to the performance date. They chose not to disavow and continued to accept performance in the form of employment services during post petition administrative periods. The specific performance that gave rise to the right of compensation and the measurement of that performance both occurred post petition with respect to both the Cash Retention Program (category 2) and the Short term incentive program (category 3). In claim # 13879 these amounts are $62,500 and $83,600 respectively. The debtors objection with regards to the Cash Retention reward portion of claim # 13879 in the amount of $62,500 should be dismissed by the court.

The Short term incentive plan (STIP) has been described in numerous documents that have been filed with the court in this case. In summary, the STIP provided that 50% of the potential reward was based on company performance and 50% was based on individual performance. In order to be eligible for a full payout of the 50% attributable to individual performance, an associate had to achieve a rating of 3 on a scale of 1-5. A 3 was defined as a solid performer, meaning that all necessary job criteria were being met. If an individual was below a 3 rating (ie: a 1 or a 2) they were placed in administrative jepoady with respect to continued employment. A process of coaching, warnings and written disciplinary actions were taken to document that the associate was underperforming. Failure to cure the underperformance could lead to dismissal. Company records will corroborate that I was consistently rated as a 3 or higher during all of my 22 years of employment. Individual specific goals were outlined and were to be achieved by the end of the performance measurement period which was February 28, 2009. The individual specific goals were met in my case and were subject to review and change as management determined. In the post petition period, and after the announcement of liquidation in January, 2009 certain goals were no longer valid as we were directed to re-prioritize our efforts. The final eligibility measurement for payment of the STIP reward was that the associate had to be employed on the date that the payment was made. Since the company has still not made the payment and will likely not make the required payments unless directed to by the court, this requirement cannot be met by otherwise eligible employees and seems like an unreasonable standard to enforce. The debtors objection with regards to the STIP portion of claim # 13879 in the amount of $83,600 should be dismissed by the court.

The employment contracts described in section D 7 of the Debtors motion provide for immediate vesting of all rights under the contract in the event of "the consummation of a

plan of reorganization,..." or "consummation of a plan of complete liquidation" I believe that the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy code constitutes "a reorganization" and the announcement of a plan of complete liquidation occurred on January 16, 2009. In either event, the compensation due under the employment contract vests in the administrative period immediately following the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy code or the announcement of the plan of complete liquidation. The debtors objection with regards to the employment contract portion of claim # 13879 should be dismissed by the court.

The basis and support for my claim was included in various forms within claim # 13879 and claim #7583. The claimant was continuously employed by the debtor on a full time basis from November 1, 1987 through April, 2009.

Jeffrey A. McDonald

# 7583

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA | PROOF OF CLAIM |
|---|---|

Debtor against which claim is asserted: (Check only **one** box below:)

☒ Circuit City Stores, Inc. (Case No. 08-35653)
☐ Circuit City Stores West Coast, Inc. (Case No. 08-35654)
☐ InterTAN, Inc. (Case No. 08-35655)
☐ Ventoux International, Inc. (Case No. 08-35656)
☐ Circuit City Purchasing Company, LLC (Case No. 08-35657)
☐ CC Aviation, LLC (Case No. 08-35658)
☐ CC Distribution Company of Virginia, Inc. (Case No. 08-35659)
☐ Circuit City Stores PR, LLC (Case No. 08-35660)
☐ Circuit City Properties, LLC (Case No. 08-35661)
☐ Orbyx Electronics, LLC (Case No. 08-35662)
☐ Kinzer Technology, LLC (Case No. 08-35663)
☐ Courchevel, LLC (Case No. 08-35664)
☐ Abbott Advertising, Inc. (Case No. 08-35665)
☐ Mayland MN, LLC (Case No. 08-35666)
☐ Patapsco Designs, Inc. (Case No. 08-35667)
☐ Sky Venture Corporation (Case No. 08-35668)
☐ XSStuff, LLC (Case No. 08-35669)
☐ PRAHS, INC. (Case No. 08-35670)

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
McDonald Jeffrey A

**Name and address where notices should be sent:**
McDonald, Jeffrey A.
5540 Quail Ridge Ter.
Chesterfield, VA. 23832
Telephone number: 804-674-1804

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

**Name and address where payment should be sent (if different from above):**

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ **See Attached**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** **See Attached**
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   **Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe:

   **Value of Property:** $ _____   **Annual Interest Rate** ____ %

   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $ _____   Basis for perfection: _____

   Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☒ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier — 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan — 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units — 11 U.S.C. § 507(a)(8).

   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   **Amount entitled to priority:**
   $ 10,950

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Date:** 1-27-09

**Signature:** the person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature]

FOR COURT USE ONLY

**RECEIVED**
JAN 28 2009
KURTZMAN CARSON CONSULTANTS

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

083565309012800000000000334

**Summary of Claim – Jeffrey A. McDonald**

**Basis for Claim –** Employment services performed

**Employment Status:** Claimant has been continuously employed by Circuit City Stores, Inc since November 1, 1987 *up to and including the date of claim, 1/27/09. Current position is* Vice President-Tax.

<u>**A.) Employment Contract**</u> – At the time of the Date of filing of voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, claimant was under a contract of employment with debtor. On January 16, debtor adopted a plan of liquidation. Under the terms of the document, adoption of a plan of liquidation is one of several change of control "triggering events". Section 9.3 of the contract provides for change of control severance benefits including:

1. Remaining base salary and benefits for the month in which the termination occurs
2. A lump sum severance allowance equal to one years base pay and target annual bonus
3. Continued health, welfare and benefit participation for one year at same cost
4. Provision of outplacement services for 3 months
5. Lump sum payment of 1 year cost of perquisites
6. Immediate vesting of non-performance based restricted stock grants and stock options

<u>Cash value estimated at $308,996</u>

<u>**B.) Retention Plan Award 1/1/08**</u> - At the time of the Date of filing of voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, claimant was a participant in debtor's retention plan as outlined in letter dated 1/3/08. Generally, this plan provides for immediate vesting and lapse of restrictions under the change of control provisions described in term 2 of that letter. <u>Cash Retention Award = $125,000</u>

<u>**C.) Retention Plan Award 9/29/08**</u> - At the time of the Date of filing of voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, claimant was a participant in debtor's retention plan as outlined in letter dated 10/9/08. Generally, this plan provides for immediate vesting and lapse of restrictions and payment of the "Target Cash Incentive Award" within 75 days after a change of control. The change of control provisions are described in term 2 of that letter. <u>Target Cash Incentive = $135,000</u>

**D.) FY09 Incentive Plan (Annual Bonus) :** At the time of the Date of filing of voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, claimant was a participant in the debtor's Annual Bonus Plan. The payout of the plan requires that employee meet certain performance objectives and be employed at the date of the payout which can occur at any time and has generally been paid on or before May 15 following the close of the current fiscal year. Claimant's mid year performance evaluation indicates that he would be eligible for a payout and amount was accrued for such a payout. Claimant intended to remain employed with the debtor until and beyond the payout date. <u>Target Cash Incentive Award = $100,320.</u>

**E.) Various Stock Award Programs -** At the time of the Date of filing of voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, claimant was a participant in various stock option and restricted stock retention and incentive plans awarded by the debtor. These plans generally provide for full and immediate vesting of any outstanding shares upon a change of

control. Claimant was entitled to 20,875 restricted shares and was eligible to exercise stock options to acquire 22,235 shares of common stock at various grant prices. A summary schedule of share awards is attached. <u>Cash Value of immediate vesting of restricted shares = Unknown</u>

This Proof of Claim shall include any and all claims arising out of or relating to any employment agreement or other contractual arrangement, compensation plan or program, benefit plan or program including, without limitation: the 1984 Circuit City Stores, Inc. Employee Stock Purchase Plan; the Circuit City Stores, Inc. Supplemental 401(k) Plan; the Circuit City Stores, Inc. Benefit Restoration Plan; the Retirement Plan of Circuit City Stores, Inc.; the Circuit City Stores, Inc. 2008 Annual Performance-Based Incentive Plan; the Circuit City Stores, Inc. Executive Deferred Compensation Plan; the Circuit City Stores, Inc. 2003 Annual Performance-Based Incentive Plan; and the Circuit City Stores, Inc. 401(k) Plan, each as may have been amended or restated to date. Such claims shall include, without limitation, any rights of indemnification, reimbursement or contribution.

#13879

Jeff McDonald
5540 Quail Ridge Terrace
Chesterfield, Va. 23832
804-814-9713

Circuit City Stores, Inc. et-al
Claims Processing Dept
KCC, LLC
2335 Alaska Avenue
El Segundo, CA  90245

Gentlemen;
Please consider the attached spreadsheet as a modification of my previous claim to the extent the amounts denoted as "Admin" are eligible for treatment as administrative claims. I was continually employed by Circuit City Stores, Inc. or one of it's wholly owned subsidiaries from November 1987 through June 30, 2009.

Some of the amounts on the claim were due simply by virtue of my continued status as a full time employee.

Thanks:



RECEIVED
JUN 29 2009
KURTZMANCARSONCONSULTANTS



| Name | Jeffrey A McDonald |
|---|---|
| Employee ID # | 10028417 |
| SSN | XXX-XX-8538 |
| DOB | 12/28/1957 |
| Adj DOH | 11/1/1987 |
| Position | Vice-President, Tax |
| Annual Salary | 208,000 |
| Bonus % | 40% |
| Car Allowance perq. | 533/mo |

| Summary | | |
|---|---|---|
| Employment Contract | A | 308,998.00 |
| Retention Cash Award | B | 125,000.00 |
| Retention Cash Award | C | 135,000.00 |
| Contingent FY09 Bonus | D | 83,600.00 |
| Restricted stock @ $.25 | E | 5,218.00 |
| Non-Qualified Options | F | 0.00 |
| Total Claim | | 657,814.00 |

### Cash Awards

| | Comp Item | Grant date | Amount | Vest Date | Requirement |
|---|---|---|---|---|---|
| A | Annual Salary | Employment Contract | 8/22/2007 | $208,000 | evergreen | 1 yr at change of control |
| A | Target Incentive | Employment Contract | 8/22/2007 | $83,600 | evergreen | 1 yr at change of control |
| A | Perquisites 1 year | Employment Contract | 8/22/2007 | $6,398 | evergreen | 1 yr at change of control |
| A | Benefits continuation | Employment Contract | 8/22/2007 | $10,000 | evergreen | 1 yr at change of control |
| B | Cash Retention Award | Cash Retention plan #1 | 1/1/2008 | $62,500 | 1/1/2009 | be employed FT |
| B | Cash Retention Award | Cash Retention plan #1 | 1/1/2008 | $62,500 | 1/1/2010 | be employed FT |
| C | Target Cash Incentive | Cash Retention plan #2 | 9/29/2008 | $45,000 | 7/1/2009 | Minimum Availability |
| C | Target Cash Incentive | Cash Retention plan #2 | 9/29/2008 | $45,000 | 1/1/2010 | Stock price of 3.00 or more |
| C | Target Cash Incentive | Cash Retention plan #2 | 9/29/2008 | $45,000 | 7/1/2010 | Stock price of 4.00 or more |
| D | FY 09 Bonus | Cash Bonus Plan #1 | 4/1/2008 | $83,600 | 5/15/2009 | Annual Incentive Plan 40% |
| | | | $652,598 | | |

### Stock Awards

| | Stock grants: | Grant Date | # Shares | Vest Date | Option price | Expire Date |
|---|---|---|---|---|---|---|
| E | Restricted Stock | | | | | |
| | Restricted | 7/1/2007 | 1,125 | 7/1/2009 | 0.00 | Admin |
| | Restricted | 7/1/2007 | 375 | 7/1/2009 | 0.00 | Admin |
| | Restricted | 8/1/2007 | 1,250 | 8/1/2009 | 0.00 | Admin |
| | Restricted | 8/1/2007 | 1,250 | 8/1/2010 | 0.00 | Admin |
| | Restricted | 1/1/2008 | 5,000 | 1/1/2011 | 0.00 | Admin |
| | Restricted | 1/1/2008 | 2,750 | 7/1/2009 | 0.00 | Admin |
| | Restricted | 6/21/2005 | 4,125 | 7/1/2009 | 0.00 | Admin |
| | | | 20,875 | | | |
| F | Non Qual Options | | | | | |
| | Options | 4/10/2001 | 2,000 | 4/10/2004 | 8.30 | 4/10/2009 |
| | Options | 4/15/2003 | 2,935 | 4/15/2006 | 5.81 | 4/15/2011 |
| | Options | 8/1/2004 | 2,300 | 8/1/2006 | 12.17 | 8/1/2014 |
| | Options | 1/1/2008 | 5,000 | 1/1/2009 | 4.20 | 1/1/2018 |
| | Options | 1/1/2008 | 5,000 | 1/1/2010 | 4.20 | 1/1/2018 |
| | Options | 1/1/2008 | 5,000 | 1/1/2011 | 4.20 | 1/1/2018 |
| | | | 22,235 | | | |