UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                        . Case No. 08-35653 (KRH)
                              .
                              .
CIRCUIT CITY STORES, INC.,    . 701 East Broad Street
et al.,                       . Richmond, VA 23219
                              .
                              .
                 Debtors.     . November 3, 2009
. . . . . . . . . . . . . . . . 11:04 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          McGuire Woods, LLP
                          By:  DOUGLAS FOLEY, ESQ.
                          9000 World Trade Center
                          101 W. Main St.
                          Norfolk, VA  23510

                          McGuire Woods, LLP
                          By:  SARAH B. BOEHM, ESQ.
                          One James Center
                          901 East Cary St.
                          Richmond, VA  23219

                          Skadden Arps Slate Meagher
                            & Flom LLP
                          By:  IAN FREDERICKS, ESQ.
                          One Rodney Sq.
                          Wilmington, DE 19899

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

**APPEARANCES (Contd'):**

For Samsung:                    Akerman Senterfitt
                                By:  MONA A. MURPHY, ESQ.
                                8100 Boone Blvd.
                                Suite 700
                                Vienna, VA  22182

                                Akerman Senterfitt
                                By: MICHAEL I. GOLDBERG, ESQ.
                                350 East Las Olas Blvd.
                                Ft. Lauderdale, FA  33301
                                (Appearing telephonically)

For OmniMount:                  Sands Anderson, Marks & Miller, PC
                                By:  WLLLIAM A. GRAY, ESQ.
                                801 E. Main Street
                                Suite 1800
                                Richmond, VA  23218

For Safeco:                     Gregory Kaplan PC
                                By:  TROY SAVENKO, ESQ.
                                Seven East Second Street
                                Richmond, VA  23224


For Mark Turner:                MARK TURNER, Pro Se

For George Benson:              GEORGE BENSON, Pro Se

For Michael Tucker:             MICHAEL TUCKER, Pro Se

For Mr. Johnny Ferguson:        JOHNNY FERGUSON, Pro Se

 1           DEPUTY CLERK:  All rise.  The United States

 2   Bankruptcy Court for the Eastern District of Virginia is now in

 3   session.  The Honorable Kevin R. Huennekens presiding.  Please

 4   be seated and come to order.

 5           COURT CLERK:  In the matter of Circuit City Stores,

 6   Incorporated, hearing on Items 1 through 35, as set out on

 7   debtors' agenda.

 8           MR. FOLEY:  Good morning, Your Honor, Doug Foley from

 9   McGuire Woods on behalf of the debtors.

10           THE COURT:  Good morning.

11           MR. FOLEY:  With me at counsel table is Sarah Boehm

12   from my firm and Ian Fredericks from Skadden Arps.  Also in the

13   courtroom today, Your Honor, is Michelle Moser, the Principle

14   Financial Officer for Circuit City.

15           Your Honor, just going in the order of the agenda, I

16   may ask the Court to go out of order in a couple places, but

17   I'll let you know when I get there.

18           With respect to Item Number 1, Your Honor, this is a

19   motion by Site A for allowance of payment of administrative

20   claim.  We're happy to report we've resolved that matter and it

21   can be removed from the docket.

22           THE COURT:  All right, very good.

23           MR. FOLEY:  Your Honor, Item Number 2, this is the

24   remnants of our lease disposition motion and the request for

25   attorneys' fees by 444 Connecticut Avenue.  They have actually

4

1  asked us to adjourn this matter an additional time, until the

2  November 23rd hearing date and we have agreed to that.  So,

3  we'd ask the Court to move that to the 11/23 docket, Your

4  Honor.

5         THE COURT:  I'll be adjourned to 11/23.

6         MR. FOLEY:  Your Honor, Item Number 3 is Sony

7  Pictures' request for payment of administrative claim.  We are

8  still in settlement discussions with them and they have

9  requested that the matter be adjourned until the November 23rd

10 hearing date at 10 a.m., Your Honor.

11        THE COURT:  It'll be adjourned.

12        MR. FOLEY:  Your Honor, Item Number 4, this is the

13 motion by Infogain for payment of administrative claim during

14 the course of business.  We're pleased to report that we have

15 reached a settlement with Infogain that we have run by the

16 Creditors' Committee and we believe we have their agreement to

17 that, as well.  We are in the process of drafting documents

18 that we hope will finish that, but for now we'd ask the Court

19 to adjourn Item Number 4 until November 23rd at 10 so that we

20 can submit the stipulation with respect to their claim.

21        THE COURT:  Okay.  So, Number 4 is being adjourned to

22 11/23.

23        MR. FOLEY:  Yes, Your Honor.  And if we can submit

24 the stipulation beforehand we will and we'll take it off the

25 docket.

1              THE COURT:  That'll be fine.

2              MR. FOLEY:  Your Honor, Item Number 5, 6 and 7, those

3   are our motions with respect to Panasonic's claim.  And 6 is

4   OmniMount's motion and 7 is Madcow International's motion.

5              We'd ask the Court to adjourn our motion with respect

6   to Panasonic to the 11/23 hearing date.  The issue there, Your

7   Honor, there's been some personal issues with counsel for

8   Panasonic that have delayed their ability to file responsive

9   pleadings.  We've agreed to extend their response period until

10  November 13th, and we will file a reply shortly thereafter.

11             But, for these personal issues with counsel for

12  Panasonic, we do intend to go forward with this.

13             THE COURT:  That will be heard on the 23rd then?

14             MR. FOLEY:  It should be heard on the 23rd, Your

15  Honor.  It's not a matter that we're likely to resolve.  I

16  mean, the issue, if Your Honor recalls, Panasonic is a

17  consignment vendor and the question here is whether or not we

18  receive the goods when sold or whether we receive the goods

19  when we receive physical possession and that dictates whether

20  and how much of their goods were delivered within the 20-day

21  period provided for by 503(b)(9) and has a significant effect

22  on the size of their claim.

23             THE COURT:  Okay.

24             MR. FOLEY:  And it also could be precedent-setting

25  with respect to some other similarly situated creditors.  So,

6

1  that one, Your Honor, we would ask to move to November 23rd at

2  10.

3       Your Honor, OmniMount, which is their motion, we've

4  agreed -- they've agreed to adjourn their matter until the

5  December 7th hearing date, Your Honor, and extend our response

6  deadline until November the 30th.

7       Your Honor, this is a dual part motion.  We intend to

8  proceed with the first part, with respect to whether or not

9  their late response should be deemed timely, but also the

10 substance of their issue is similar but distinguishable to the

11 Panasonic issue that has to do with date of receipt with

12 respect to goods within the 20-day period, Your Honor, so we

13 will brief that appropriately and have that heard on the

14 December 7th date if we can't resolve it prior to that time.

15      THE COURT:  All right.  So, you do believe this will

16 go forward on the 7th?

17      MR. FOLEY:  We believe it probably will, Your Honor.

18      THE COURT:  All right, very good.

19      MR. FOLEY:  Just to clarify, Your Honor, with respect

20 to the late claim issue, with respect to the lateness issue,

21 that probably will go forward on the 7th, not the underlying

22 issue of, if you decide that their response should be deemed

23 timely, the merits of the underlying claim will not go forward

24 on the 7th, just the first part of the issue.

25      THE COURT:  Just whether or not it should be allowed

1 as a late claim.

2          MR. FOLEY:  Exactly.

3          THE COURT:  Okay, I got it.  Do you wish to be heard,

4 Mr. Gray?

5          MR. GRAY:  Good morning, Your Honor, William Gray

6 representing OmniMount and what was represented here is what my

7 understanding is, although I do believe we still are in

8 settlement negotiations.  So, we do ask that it be --

9          THE COURT:  Well, obviously, if we can settle the

10 matter, that would be the Court's preference, as well.

11          MR. GRAY:  Sure.  But, we do ask that it be set over

12 to the 7th.

13          THE COURT:  All right.

14          MR. GRAY:  Thank you.

15          MR. FOLEY:  Your Honor, the motion by Madcow

16 International, that one as well they've requested that their

17 matter be adjourned until the December 7th hearing date and our

18 responsive pleading will be filed by November the 30th, Your

19 Honor.  We're also in settlement discussions with respect to

20 that matter and, hopefully, we'll reach a resolution, but we

21 don't know at this point.

22          THE COURT:  All right, very good.

23          MR. FOLEY:  Your Honor, Item Number 8, which is the

24 motion by Site A for an allowance of a late filed claim, they

25 have requested and we've agreed to adjourn that matter until

1  the December 8th hearing date, as well.

2         THE COURT:  All right.  It'll be carried over to the

3  7th.

4         MR. FOLEY:  Your Honor, if we could skip 9 and 10 for

5  a moment, I'll come back to those.  Mr. Fredericks will address

6  the Court with respect to our motion with respect to Safeco.

7         THE COURT:  All right.

8         MR. FREDERICKS:  Good morning, Your Honor, Ian

9  Fredericks of Skadden Arps, Slate, Meagher & Flom on behalf of

10 the debtors.

11        I wanted to just give the Court just a little bit of

12 context because the matter was listed as going forward on the

13 agenda and last night we had a call with Safeco to advise them

14 that we would be adjourning it.

15        THE COURT:  Yes, the Court had some questions about

16 this one, as well.

17        MR. FREDERICKS:  I'm sure the Court did and, frankly,

18 the debtors did, as well.  The objections came as somewhat of a

19 surprise.

20        To give you just a little bit of background, we've

21 been working with Safeco, probably since the liquidation

22 commenced, back in January, to try to figure out what to do

23 with the bonds that we no longer require.  Primarily the bonds

24 relate to utilities.  There, obviously, is this importer bond

25 and there are a couple of other bonds, but I think the vast

1 majority of them were utility bonds that were, obviously, no

2 longer necessary, given that we weren't operating any longer in

3 those locations.

4          So, Safeco approached us to come up with a consensual

5 means by which to cancel the bonds, set some type of claim

6 objection deadline and then have any future claims after that

7 period barred against both Safeco and the debtors.  Obviously,

8 from the debtors' perspective, we viewed our prior bar date

9 orders as satisfactory to prevent any claims against us.

10 Safeco requested that additional relief and we thought that it

11 made sense, given that no new claims were likely to accrue

12 under the vast majority of those bonds, after we vacated the

13 stores and the utilities did their final reconciliations.  So,

14 we prepared the motion.

15          When you read the objection, if you ever read the

16 objection, it sounds as if --

17          THE COURT:  I read the objection.

18          MR. FOLEY:  It sounds as if we were in disagreement

19 over everything, and I think that's a vast mischaracterization

20 of where we were.  I believe 90 --

21          THE COURT:  Starting with whether it's property of

22 the estate.

23          MR. FOLEY:  Correct.  Ninety percent of the motion

24 was consensual.  Safeco commented on it over a period of

25 months.  The real disagreement here centers around what to do

1  with the collateral and primarily centers around issues related

2  to the Customs Department, which we also had a call with them

3  last night, that I'll advise Your Honor about, where we stand

4  with them.

5       And so, there were proposals put forth by the debtors

6  and Safeco is considering them or not considering them, to try

7  to resolve this collateral issue and what to do.  It's

8  obviously a significant issue and I can certainly understand

9  Safeco's concern that it wants to make sure that it's secure.

10      And so that's kind of where we're at, is really, what

11 needs to happen with this collateral and in addition to that,

12 we had a discussion last night with the Assistant U.S. Attorney

13 who is representing the Customs Department about trying to

14 resolve any claims the Customs Department may have.  Safeco

15 contends that the Customs Department may have a significant

16 period of time that cannot be shortened by a result of federal

17 regulation to submit claims and, in fact, all the bonds

18 actually compound, and so while the face amount of bond may be

19 a million dollars, it actually can compound over the number of

20 years that the bond was in existence, and that's how Safeco

21 arrives at its kind of $9 million number of exposure.

22      So, we're opening that dialogue with the United

23 States Attorney.  It's possible we may be able to reach a

24 resolution with the federal government.  If we can, I can

25 envision a scenario where we would be able to go forward with

1  this motion.  I think that given Safeco's objection, given the

2  U.S. Attorney's objection and the issues raises in both, and

3  some overlap and some don't, if we're unable to reach a

4  resolution with the federal government, I anticipate this

5  motion would likely be withdrawn because we don't think that it

6  makes sense to have sovereign immunity and other significant

7  legal issues resolved in a motion that really provides little

8  benefit to the debtors, unless it can actually ever get the

9  collateral back.

10         THE COURT:  All right, thank you.

11         MR. FREDERICKS:  I don't know if Your Honor has any

12  questions, but tentatively we would adjourn it to the 23rd, but

13  I'm not optimistic it'll go forward at that time either.

14         THE COURT:  All right.  Moved to the 23rd of

15  November.

16         MR. FREDERICKS:  Thank you, Your Honor.

17         THE COURT:  All right.  Mr. Savenko, do you wish to

18  be heard?

19         MR. SAVENKO:  Just briefly, Your Honor.  I've Been

20  retained just recently to represent them locally -- represent

21  Safeco locally, and the adjournment is part of an agreement

22  with my client and we'll reserve any rights to respond to

23  anything that was represented this morning.

24         THE COURT:  All right, very good.

25         MR. SAVENKO:  Thank you.

1              THE COURT:  All right.  So, matter Number 11 will be

2    adjourned to the 23rd of November.

3              MR. FOLEY:  Thank you, Your Honor.  Next item on the

4    agenda, Your Honor, is Item Number 9, which is our third motion

5    for an order under 105, Bankruptcy Rule 9006, to further extend

6    the time period within which the debtors may renew actions

7    under 28 U.S.C. 1453 and Bankruptcy Rule 9027, Your Honor.

8              We're asking in this order, Your Honor, to enter a

9    similar order that you did last time that would extend this

10   time period until January 4th, 2010, or 30 days after the entry

11   of an order terminating the automatic stay with respect to any

12   particular action sought to be removed.

13             Your Honor, we have not received any responses to

14   this particular motion and would ask the Court to grant the

15   relief requested.

16             THE COURT:  Does any party wish to be heard in

17   connection with the debtors' motion to extend the time period

18   within which the debtors may remove actions?

19                     (No audible response)

20             THE COURT:  All right.  There being no objection, the

21   Court will grant the motion.

22             MR. FOLEY:  Thank you, Your Honor.  Item Number 10,

23   Your Honor, is our objection to certain general unsecured

24   claims for voting purposes.

25             Your Honor, we have reviewed all of the responses to

1  that objection and are pleased to report to the Court that we

2  are comfortable at this point withdrawing the objection as to

3  those claimants that filed a response, which would be IBM,

4  Inland and Vision Tech.  And so the order that we would propose

5  to submit, Your Honor, would exclude reducing those claims for

6  voting purposes and they would be allowed to vote in the amount

7  that they set forth in their responses and in their claims that

8  were filed.

9        Your Honor, the response filed by LG was actually

10  documenting the agreement we had reached with Mr. Trachi with

11  respect to adjusting which claims would be included in this

12  order and which would not, but the bottom line net is that LG

13  would be allowed to vote in the amount of approximately $36

14  million.

15        THE COURT:  All right.  So, does any party wish to be

16  heard on the debtors' objections to certain general unsecured

17  claims for voting purposes?

18                (No audible response)

19        THE COURT:  All right.  With that withdrawal of the

20  three respondents and the LG Electronics being resolved, the

21  Court will grant that motion.

22        MR. FOLEY:  Thank you, Your Honor.  Your Honor,

23  before we get to Items Number 12 and 13 involving Samsung, if

24  we could address Items 14 and 15.  This is our complaint and

25  pretrial conference and motion to dismiss the counterclaim with

1 respect to the XM Sirius issues.

2        Your Honor, we had a conference call with the

3 business people, as well as counsel for XM Sirius yesterday, to

4 discuss where we are in our settlement discussions and the

5 parties are still far apart, but we expect and we were told by

6 counsel yesterday, that we should be receiving a counter

7 proposal in the next few days, and given that assurance, Your

8 Honor, we would ask that the pretrial conference, as well as

9 our motion to dismiss the counterclaim, be adjourned until the

10 December 7th hearing date, Your Honor.

11        THE COURT:  All right.  So Matters 14 and 15 on the

12 agenda will be adjourned to the 7th of December.

13        MR. FOLEY:  Yes, Your Honor.  And I think counsel for

14 Samsung is here to address Items Number 12 and 13, and we'll

15 respond.

16        THE COURT:  All right.  Thank you.

17        MS. MURPHY:  Good morning, Your Honor, Mona Murphy,

18 Akerman Senterfitt for Samsung and local counsel.  My colleague

19 Michael Goldberg is on the phone to argue this matter.

20        THE COURT:  All right.  Mr. Goldberg?

21        MR. GOLDBERG:  Good morning, Your Honor.

22        THE COURT:  Good morning.  Would you identify

23 yourself for the record?

24        MR. GOLDBERG:  Yes.  Michael Goldberg, Akerman,

25 Senterfitt on behalf of Samsung and I want to thank the Court

**J&J COURT TRANSCRIBERS, INC.**

1   for allowing me to attend telephonically.

2        THE COURT:  You're certainly welcome.  You may

3   proceed, sir.

4        MR. GOLDBERG:   Thank you.

5        Your Honor, on October 13th, the debtors filed the

6   52nd omnibus objection to claims, which is set to be heard by

7   the Court on November 12th.  The debtors object to Samsung's

8   $19 million 503(b)(9) expense pursuant to 502(d), based on

9   nothing more than unsupported allegations that the facts

10  suggest that Samsung -- and this is in the debtors words -- may

11  have received an avoidable transfer.  That's on Page 30 of

12  their objection -- of their memo in support of their objection.

13       The debtors request the Court to limit the hearing to

14  deciding only the legal issues of whether 502(d) apply to

15  503(b)(9) expenses and ask the Court not to consider any

16  factual disputes at the hearing.  The debtors specifically

17  request the Court to enter an order temporarily disallowing

18  Samsung's 503(b)(9) expense claim.

19       Samsung completely disagrees with the debtors'

20  assertion that it received an avoidable transfer, Your Honor.

21  More importantly, Samsung believes that under the applicable

22  case law, the Court cannot disallow Samsung's claim pursuant to

23  502(d) until it makes necessary factual determinations as to

24  whether or not Samsung did, in fact, receive an avoidable

25  transfer and the debtors' attempt to bifurcate the legal issues

1  from the factual issues will deny Samsung due process.

2          Your Honor, the factual issues of this case are

3  intertwined with the legal issues.  Specifically, in order for

4  you to determine if 502(d) is applicable, you have to first

5  determine whether or not Samsung received an avoidable

6  preference.

7          The case law is very clear on this.  Just for

8  purposes of the record, I'm going to cite a few cases.  In re

9  Atlantic Computer Systems 173 BR 858, which says Section 502(d)

10 clearly envisions some sort of determination of the claimants'

11 liability before its claims are disallowed and in the event of

12 an adverse determination the provisions -- or some opportunity

13 to turn over the property.

14         In re Midwest Agra Development Corp. 387 BR 580

15 (8th Cir. 2008), because Section 502(d) provides that an

16 entity's claim is not disallowed if the entity pays the amount

17 owed or turns over the property, the Court may only use 502(d)

18 to disallow a claim if the entity is first adjudicated liable

19 under the applicable sections.

20         In re Lids Corp. 260 BR 684 (BR DE 2001), Judge

21 Walrath, "To disallow a claim under 502(d) requires a judicial

22 determination that a claimant is liable."

23         In re Davis 889 F.2d. in accord, and in In re

24 Mountaineer Coal Company BR (WDPA 2000), also in accord.

25 Each of these cases require the Court to make a factual

1   determination.

2          In their response, the debtors -- to our motion to

3   shorten time, because we believe we need the factual discovery

4   in order to defend ourselves properly at the hearing -- the

5   debtors basically take the position that they're only seeking a

6   legal determination.

7          Well, there's a couple of problems with that, Your

8   Honor.  As I previously said, you need to make these factual

9   determinations because the debtors are actually seeking

10  affirmative relief.  They're not just seeking a declaration

11  that 502(d) is applicable to 503(b)(9), but what they're

12  actually asking for is temporary disallowance and in the

13  proposed order, in Paragraph 3, they're asking that you

14  temporarily disallow Samsung's claim.

15         And this affects Samsung's substantive rights because

16  it's a right, under 1129, is to have its administrative expense

17  paid on confirmation, and 1129 actually requires a debtor to do

18  that, as the Court is well-aware, in order to confirm its plan.

19         Now, the debtors also have a problem because to the

20  extent they're seeking just a declaration, they're procedurally

21  improper before this Court.

22         Under 7001(9) to the extent they're seeking a

23  declaration, they have to bring it by adversary proceeding and

24  also under 3007, when their objection is joined with a demand

25  for relief under 7001, such as a preference claim, an adversary

1  is required.  And that's based on the position that people in

2  Samsung's position need to get due process rights and be able

3  to effectively defend themselves.

4          Now, although the debtor states that they're just

5  seeking the legal determination, it's putting Samsung in a

6  position that we had to file discovery against the debtor, to

7  get the discovery necessary in order to defend ourselves at the

8  hearing up coming on the 12th, and the debtor has resisted

9  giving us the documents.  They did provide us with a

10 spreadsheet, but the spreadsheet, you know, the debtor

11 described it as detailed, but it's hardly detailed, it doesn't

12 even have the basic information necessary to determine if

13 payments were made on account of antecedent debt.  They

14 admittedly only look at new value issues, there's no analysis

15 for ordinary course, contemporaneous exchange, and it's just

16 wholly inadequate in order for Samsung to determine what the

17 debtors are basing their position on.

18         Again, Your Honor, due to the fact that you can't

19 separate the factual issues because the case law requires you

20 to determine that we first received an avoidable transfer from

21 the legal issues as the debtors would want, and based on the

22 procedural deficiencies, we need this discovery in order to

23 defend ourselves if you're going to require us to go forward on

24 that date.  And that is why we have moved to shorten the time

25 period for the discovery.

1          THE COURT:  What specifically are you asking for in

2    your discovery?

3          MR. GOLDBERG:  We have asked -- we have propounded

4    two types of discovery.  We've propounded for document requests

5    seeking all of the documents that support the claims that we

6    received in avoidable transfer, including payments on invoices

7    so we can identify which payments they are putting to which

8    specific invoices.  We've asked them for just the basic

9    documents you would need.   We've also asked them -- and that's

10   really to determine mostly antecedent debt, new value and

11   ordinary course.

12          The next thing we asked, we propounded some

13   interrogatories specifically asking them to identify the

14   transfers that they believe were preferential.  And we believe

15   that we need those, based on them trying to disallow our claim

16   because we almost have to prove our preference defense in

17   connection with the 502(d) objection, based on the way they

18   procedurally -- incorrectly procedurally postured this case,

19   doing it pursuant to a motion.

20          We intend to file tomorrow a response to the general

21   objection as well as a motion to strike their objection based

22   on it being procedurally improper and that, I guess, will be

23   heard by the Court on the 12th, but right now we believe that

24   we'd be severely prejudiced if we didn't get the discovery

25   needed in order to show to the Court, at the very least on the

1  12th, that there is no preference and since there is no

2  preference, they're not entitled to invoke 502(d).

3         THE COURT:  So, you want this discovery so that you

4  can basically try the preference issue in the context of the

5  motion that the debtor has teed up on its request for a

6  determination about whether or not 502(d) would act as a bar to

7  a payment under Section 503(b)(9).

8         MR. GOLDBERG:  No, Judge, we don't expect to try the

9  preference matter on the 12th.  Again, we think it's

10 procedurally improper that it's even brought to you, in the

11 form of some sort of declaratory request for some sort of

12 comfort order.

13        THE COURT:  Well, that's what I'm asking you.  I

14 mean, I'm trying to figure out why you need the discovery.

15 Can't you just make that exact same argument without the

16 discovery?

17        MR. GOLDBERG:  I can absolutely make that exact same

18 argument, but to be honest, I did not want to be caught

19 shorthanded if in the event the Court disagreed with that

20 argument and then turned around and said, Mr. Goldberg, why

21 didn't you issue discovery in order to abrogate the debtors'

22 claim that you received a preference.  So, I absolutely can

23 make that argument at the hearing on the 12th, Your Honor.

24 But, I just did this in an abundance of caution.  We're dealing

25 with a $19 million 503(b)(9) expense, a $51 million alleged

1  preference and we're the largest unsecured creditor in the

2  case, owed approximately $120 million.  And I just did not want

3  to go before Your Honor on the 12th and have you make

4  determinations based on the debtors' allegations that we "may

5  have received a preference" and not be prepared to defend my

6  client.

7         THE COURT:  All right, I understand that position.

8  Anything further, Mr. Goldberg?

9         MR. GOLDBERG:  No, Your Honor.  Just, again, we

10  stress that we need this and that the factual issues that you

11  must decide in order to even invoke 502(d) is that we received

12  an avoidable transfer.

13        THE COURT:  All right, thank you, sir.  Let me hear

14  from counsel for the debtor.

15        MR. FOLEY:  Your Honor, just to be clear, with

16  respect to next week's hearing on the 12th, with respect to any

17  respondent to the claim objection that files a response, Your

18  Honor will not be asked to enter an order disallowing their

19  claim in any form or fashion.  So, if they file any response

20  tomorrow, even one page that says, we deny that we got a

21  preference and we don't think 503(b)(9) and 502(d) can work

22  together, and that's all they say in their response, we will

23  not ask Your Honor to enter an order with respect to that

24  claimant, disallowing their claim temporarily or otherwise.

25        So, that's why we don't --

1          THE COURT:  What will you be asking me to do?

2          MR. FOLEY:  Well, Your Honor, we objected to a lot of

3  claims in this.

4          THE COURT:  Right.

5          MR. FOLEY:  Some people will file responses that

6  simply say that.  Some people will file responses briefing the

7  503(b)(9), 502(d) issue, citing <u>Ames</u> and <u>Blastack</u> and asking

8  Your Honor to perform the legal analysis that we want you to

9  do.  With respect to those who don't respond, we'll certainly

10  ask Your Honor to enter an appropriate order.  With respect to

11  those that do respond, we think that Your Honor can address

12  this limited issue, this legal issue of whether or not 502(d)

13  can apply to 503(b)(9) and without prejudice to any particular

14  facts or circumstances of any particular claimant, whether they

15  got a preference or not, or how much.

16          But, to give the Court a little background as to how

17  we crafted this objection, we have spent a lot of time

18  analyzing the data that the debtors have accumulated with

19  respect to payments and transfers that were made prepetition.

20  And counsel referred to what we provided to him shortly after

21  we heard from him, it's a very exhaustive spreadsheet, upon

22  which we based our analysis.

23          Now, obviously, this analysis was prepared in

24  anticipation of potential litigation and filing a preference

25  complaint and we did take into account some new value defenses,

1  with respect to the numbers that we put in the objection as to

2  what we think the avoidable transfers are.  We did not, with

3  respect to that analysis, take into account ordinary course of

4  business defense, but we did do some analysis with respect to

5  that, again, in anticipation of ultimately litigating these

6  preference complaints down the road as to what effect that

7  defense would potentially have and we tried to only include

8  ones in here that we clearly thought had a very high likelihood

9  of an avoidable transfer for purposes of 547.

10        And so, we did not file this objection as to someone

11  who got a $1 preference, to try to disallow, temporarily or

12  otherwise, a $50 million claim.  We didn't do that.

13        What we intend to do, Your Honor, with respect to

14  anybody that files a response tomorrow, if they want it, we

15  will provide to them the exact data that we've already provided

16  to Samsung upon which we based our preference analysis which

17  shows all the payments and all the deliveries and the dates and

18  the invoice numbers.  These are -- it's a pretty lengthy

19  spreadsheet that we've been providing to people and anybody who

20  wants that, we'll give it to them.  I mean, we're not going to

21  give them our privileged and attorney work product of our

22  analysis with respect to the preference because that will come

23  when we actually litigate the preference complaint.

24        And we will have next week, Your Honor, the ability

25  to proffer the testimony of FTI who is the financial advisors

1  for the debtors, with respect to the analysis that they did

2  perform, based upon the data that we will provide it to anybody

3  who responds to this objection.  But, we think the discovery is

4  unnecessary for the reasons that we've said in our response and

5  the case law that we cited, Your Honor, is that under 502(d)

6  it's not intended you actually have to prove an avoidable

7  transfer.  You simply -- some courts say you simply have to

8  allege, but we've done a lot more than that.  We've done a lot

9  more than allege, we've actually provided the data to the

10  claimants to do their own analysis and if they want to file a

11  response tomorrow that says they have no preference, they're

12  free to do that and Your Honor won't enter an order that

13  disallows their claim.

14         Now, just to clarify one thing that counsel said on

15  the record is that the plan that we have on file does not have

16  a payment of all administrative claims on the effective date

17  provision anyway.  It's a plan that's been, you know, proposed

18  both by the committee and the debtors at this point.  And so,

19  there is a time period by which we can object to 503(b)(9)

20  claims.  There's a time period to object to other claims.  So,

21  there won't be any allowed claims anyway.  So, there's no

22  prejudice, there's no due process issues here.  We're not

23  talking about tying up people for years.  I mean, this is going

24  to be resolved one way or the other.  When the plan gets

25  confirmed, there's going to be a liquidating trustee,

1  preference complaints and preference demands may go out soon.

2          So, we would ask the Court to deny the request with

3  respect to the discovery because there is no due process here.

4  They will not be prejudiced.  There will not be an order

5  disallowing their claim if they file any response tomorrow.

6  And we think that under the claim objection that we have

7  properly filed and properly noticed, that the Court can

8  consider the legal issue of whether or not 502(d) can be

9  applied to 503(b)(9) and address that analysis.  Then that will

10 give everybody the ability to react to that in, hopefully,

11 resolving some of these claims.

12          THE COURT:  All right, thank you, Mr. Foley.  Does

13 the committee wish to be heard on this?

14                      (No audible response)

15          THE COURT:  All right.  Mr. Goldberg, do you wish to

16 reply?

17          MR. GOLDBERG:  Just very briefly, Your Honor, and I

18 appreciate the opportunity to reply.

19          Your Honor, again, even -- I understand counsel, and

20 this is the first time I've heard that, you know, if you reply

21 with anything, deny anything in their objection, they're not

22 going to move forward with you on your specific claim, but the

23 fact is, they are going forward seeking a legal determination

24 from the Court which necessarily intertwines the factual

25 determinations of whether 502(d) is applicable.

1       They are going to make legal argument on that day.

2  Again, they are seeking some sort of declaratory comfort order

3  from the Court which requires an adversary and I think that the

4  adversary rules are there for a purpose, to afford the parties

5  an opportunity not to piecemeal litigation, but to do it in a

6  process that was designed to afford due process to the

7  litigants, and bifurcating out the 503(b)(9) claims and not

8  giving us an opportunity to, you know, get discovery and be at

9  that court on the 12th and argue why it's inapplicable,

10  prejudices my client.

11       THE COURT:  All right, thank you.  Anything further,

12  Mr. Foley?

13       MR. FOLEY:  Your Honor, again, just to clarify, we do

14  intend to go forward with the legal issue next week.  As Your

15  Honor did with the goods/non-goods claim objection, again, this

16  is a claim objection, so we think it's procedurally proper to

17  address it this way.

18       Your Honor made a ruling as to what standard the

19  Court was going to apply with respect to goods versus

20  non-goods, the UCC definition of the predominate purpose test,

21  without prejudice to the facts and circumstances of any

22  particular claimant.  Here, if Your Honor rules that 502(d) can

23  be used, as we're advocating, to temporarily disallow

24  distribution on an allowed 503(b)(9)claim, then that's without

25  prejudice to any particular claimant saying, I don't have a

 1  preference.

 2         So, that's fine, Judge, you made that legal ruling,

 3  but it doesn't apply to me because I don't have a 502(d)

 4  avoidable transfer.

 5         So, again, we are going to go forward with the legal

 6  issue and, again, we think some people will respond, some

 7  people won't respond, some people will brief the 502(b) issue,

 8  some people won't, some people will file place orders, but

 9  we're not treating this claim objection any differently than

10  we've treated any other one.  Anybody who files a response,

11  even an informal response, we're not going to seek an order

12  disallowing their claim.

13         THE COURT:  All right, thank you.

14         All right.  Mr. Goldberg, I'm going to deny your

15  motion for the request for expedited discovery in this case.

16  That's without prejudice to you being able to raise the

17  arguments that you've raised today at the hearing on the 12th.

18  I think that you can raise those arguments.  I'm not making any

19  ruling with regard to those arguments at this point in time.

20  Those will be reserved for the hearing and I will take them up

21  at that time.

22         And the Court being aware that counsel for the debtor

23  is not going to seek a temporary disallowance of any claim that

24  is filed, to which a response is timely filed at the hearing on

25  the 12th.

1              MR. GOLDBERG:  Thank you, Your Honor, and I

2    appreciate the debtors' counsel's clarification on that.

3              THE COURT:  All right.  And, Mr. Foley, I'd ask you

4    to prepare the order in that regard.

5              MR. FOLEY:  Thank you, Your Honor, we will.

6              MR. GOLDBERG:  Your Honor, may I be excused from

7    here?

8              THE COURT:  Mr. Goldberg, you may be excused, thank

9    you, sir.

10             MR. GOLDBERG:  Thank you for allowing me to attend

11   telephonically again.

12             THE COURT:  You're welcome.

13             MR. FOLEY:  Your Honor, Items Number 16 through 21 on

14   the agenda are our status hearing on the 30th, 31st, 33rd,

15   34th, 35th and 36th omnibus objection to claims.

16             Your Honor, we have a similar demonstrative exhibit

17   that we used last time, Your Honor, just to give the Court an

18   update, that I would ask be able to hand up.

19             THE COURT:  You may.

20             MR. FOLEY:  It's a one-page document, I'll send up

21   three copies for the Court.  It just shows the progress that we

22   have made and we have a lot that is in progress, obviously.  A

23   lot of our objections that are pending are procedural in nature

24   to clean up duplicative claims, but what this exhibit shows,

25   and, again, we're going to update this throughout the case for

1 the Court's benefit, it shows the omnibus objections as filed

2 and the claims as filed and the totals at the bottom.

3        It shows that so far we have objected to 7,395

4 claims, the total filed amount, subject to the footnotes, it

5 shows there may be some duplication, is $6 billion.  The total

6 ordered has been 6,772 claims with the various results of those

7 orders set forth in the amounts column and that's $332 million

8 and then the ones that are continued pending, to which a

9 response is filed, there's 570 of those, for a total claim

10 filed amount of $573 million.  But, we're continuing to work

11 through the responses, Your Honor.  We're trying not to burden

12 the Court with any unnecessary hearings until we have to.

13 We're trying to resolve the procedural ones by stipulation with

14 counsel, the substantives ones we're probably going to have to

15 seek legal rulings with respect to those and some of the things

16 that we're asking the Court to do will give us guidance with

17 respect to that.

18        There are some that Ms. Boehm is going to address

19 shortly that fall into the category of ones that we think are

20 simply ready for a court ruling and, Your Honor, we would ask

21 that these matters, again, be adjourned until the next claims

22 hearing date, which is December 7th, Your Honor, and that's

23 Items 16 through 21.

24        THE COURT:  All right.

25        MR. FOLEY:  Your Honor, Items Number 22 through 35

Ms. Boehm will address.  However, I wanted to just clarify one

thing with respect to Item Number 25, which is our 45th omnibus

objection and Item Number 26, which is our 46th omnibus

objection.

The 45th omnibus objection relates to certain claims

that we believe were satisfied, already paid.  Some parties did

not respond to that objection.  However, we have done further

research and concluded that there may be some claims that were

included in that objection as satisfied that were not, in fact,

satisfied and notwithstanding the fact that those parties did

not file a response, we're going to adjust any order that Your

Honor allows us to submit to make sure that that's clarified so

that we don't in advertently order a claim as satisfied that

wasn't.

With respect to Item Number 26 on the docket, Your

Honor, this is our 46th omnibus objection.  This relates to

claims of Sony and Toshiba.  Sony called us with respect to the

-- this is a duplicative claim objection with respect to

certain parts of their claim that were asserted as reclamation.

We were seeking to disallow a duplicative portion of their

claim and have a surviving claim be a general unsecured claim.

They wanted to make certain that they were not prejudiced from

making an argument later with respect to that surviving general

unsecured claim which, again, was duplicative of a reclamation

claim, that somehow that should be entitled to priority status.

1          Your Honor, at some point, will hear an argument made

2  by some of the parties in the case relating to reclamation

3  asserting some type of priority status for goods delivered

4  between day 21 and day 45.  Our view will be, when we file our

5  papers, is that given changes in the statute in 2005, that the

6  alternative remedy of any kind of an administrative claim for

7  that period has been removed and 503(b)(9) is all that's left.

8          However, some claimants are going to want to make

9  some arguments with respect to priority status as to that time

10  period.  And so, with respect to Sony, we're going to put some

11  clarifying language in the order that although their surviving

12  claim is classified as general unsecured, it's without

13  prejudice to their rights to assert priority agreements without

14  prejudice to the estate's right to dispute that priority.

15          THE COURT:  All right.

16          MR. FOLEY:  With that, Your Honor, Ms. Boehm will

17  address the balance of the matters on the docket.

18          THE COURT:  All right, thank you, Mr. Foley.

19          MS. BOEHM:  Good morning, Your Honor, Sarah Boehm

20  from McGuire Woods on behalf of the debtors.

21          THE COURT:  Good morning.

22          MS. BOEHM:  Item 22 on the agenda is the debtors'

23  42nd omnibus objection.  This seeks a disallowance of certain

24  amended claims.  This objection included 406 claims for

25  approximately 197.8 million.  For any responses that we

1  received, we will seek an order adjourning those claims for

2  further status hearing to the December 7th hearing and for any

3  non-responding parties we'll seek an order disallowing those

4  amended claims.

5          THE COURT:  All right, that will be fine.

6          MS. BOEHM:  The debtors' 43rd omnibus objection to

7  claims sought the disallowance of certain late claims.  This

8  included 31 claims for approximately 21.5 million.  Again, for

9  any non-responding parties, we'll seek an order disallowing

10 their claims and for any responses that have been received, we

11 will adjourn those to December 7th for further status.

12         THE COURT:  All right.  The objection will be

13 sustained to that extent.

14         MS. BOEHM:  The debtors' 44th omnibus objection to

15 claims sought the disallowance of certain duplicative claims.

16 This includes 76 claims, for approximately $17 million.  Any

17 responses received we will seek an adjournment to December 7th

18 and an order disallowing the claims for any non-responding

19 claimant.

20         THE COURT:  All right.  That will be sustained to

21 that extent.

22         MS. BOEHM:  As Mr. Foley mentioned, our 45th omnibus

23 objection sought the disallowance of certain claims that were

24 fully satisfied and, again, claims that were partially

25 satisfied.  This included 38 claims that have been fully

1  satisfied and six claims that have been partially satisfied.

2  With the adjustments that Mr. Foley mentioned earlier, we will

3  seek an order disallowing any non-responding claim and an

4  adjournment to December 7th for further status if any

5  responses.

6          THE COURT:  All right.  With regard to the claims

7  that have been identified by the debtor that were not actually

8  satisfied or partially satisfied, what's going to happen with

9  those?  Are those going to be adjourned or are those just going

10 to be resolved as part of this order?

11         MS. BOEHM:  It's going to be, probably, a multi-step

12 process.  For some that we identified as originally fully

13 satisfied, they may have moved onto the partially satisfied

14 portion, so their claim instead of being completely disallowed

15 will just be a reduced amount.

16         THE COURT:  All right.

17         MS. BOEHM:  And then for others that we may have an

18 issue with, or that they brought something else to our

19 attention that we have not been able to resolve prior to entry

20 of the order, we will adjourn those.

21         THE COURT:  All right, very good.  The Court will

22 grant the relief to that extent.

23         MS. BOEHM:  Thank you, Your Honor.  The 46th omnibus

24 objection to claims sought the modification of certain

25 duplicative claims.  This only included two claimants, Sony and

1   Toshiba, and with the order that Mr. Foley described earlier

2   with respect to Sony and their right to assert certain

3   priorities, we will seek the entry of the order sought in the

4   objection.

5           THE COURT:  And as I understand it, that only applies

6   to Sony.

7           MS. BOEHM:  Yes.

8           THE COURT:  All right.  It will be granted.

9           MS. BOEHM:  With respect to the 47th omnibus

10  objection, this sought the disallowance of certain claims with

11  insufficient support.  This included 26 claims for

12  approximately $2.7 million.  We only received two responses

13  that we will seek to adjourn for further status and the

14  remaining claims we will seek to disallow.

15          THE COURT:  Okay.  The objection is sustained as to

16  the non-responding parties.

17          MS. BOEHM:  Your Honor, the remaining items on the

18  agenda are the omnibus claim objections that we're seeking to

19  go forward with on the merits.  These include omni objections

20  11, 12, and 38 with respect to qualified pension plan and

21  401(k) claims, and omni objections 15, 16, 17, 18, and 32 with

22  respect to the reclassification of certain equity claims to

23  interests.

24          As set forth in the objections, the debtors

25  previously maintained the retirement plan of Circuit City

1  Stores, Inc., which was covered by ERISA and as a separate

2  legal entity distinct from the debtors' estates.  The plan was

3  terminated in March and as the Court is aware, we recently

4  entered into a stipulation with the PBGC affixing all their

5  claims on behalf of that pension plan.

6        The claims that were filed by claimants with respect

7  to a claim for their pensions were not claims actually against

8  the estate.  Further, they are duplicative of the claims of the

9  PBGC because now that the PBGC has taken over the plan, they

10  are responsible and whatever claim they asserted is on behalf

11  of the entire plan of the claimants included therein.

12        We're seeking the disallowance of any of the claims

13  that were asserted as claims against the debtors for their

14  pensions and the disallowance of their claims against the

15  debtors is without prejudice to their rights against any

16  pension that they will receive from the PBGC.

17        Similarly, all the claims that were filed by

18  claimants on behalf of rights or a claim against the debtors on

19  behalf of their 401(k), again, this disallowance of claims that

20  they filed against the estate is completely without prejudice

21  to any claim that they have against that 401(k) plan which

22  under the Internal Revenue Code is a separate legal entity from

23  the debtors.

24        With respect to the equity, we have objected to any

25  claims that were filed --

1          THE COURT:  Well, why don't we take this -- we've had

2  a lot of responses --

3          MS. BOEHM:  Okay.

4          THE COURT:  -- to the objection on the 401(k) claims

5  and I've looked at those and they appear to me to be confusion,

6  where people think that their 401(k) plan is being eliminated

7  or their claim, as a result of this, and so I think we ought to

8  take up any objections that have been filed there so we can

9  clear that first and then we'll get into the equity ones, if

10  that's okay.

11          MS. BOEHM:  Okay, sure.

12          THE COURT:  Does any party wish to be heard in

13  connection -- let's see, which ones.  It's Item Number 28, 29,

14  and 30, is that right?

15          MS. BOEHM:  Yes.  It's the 11th, 12th and 38th

16  omnibus objections.

17          THE COURT:  Okay.  Does any party wish to be heard in

18  connection with any of those three omnibus objections?  Yes,

19  sir.

20          MR. TURNER:  Yes, Your Honor.

21          THE COURT:  Come forward to the podium.  Would you

22  identify yourself for the record?

23          MR. TURNER:  My name is Mark Turner.

24          THE COURT:  Okay.  And are you an attorney, or are

25  you representing yourself?

1          MR. TURNER:  I'm representing myself.

2          THE COURT:  Okay, very good.  And you may proceed.

3          MR. TURNER:  Okay.  First, I want to say this is a

4 sad day for me.  I'm here today because of the gross negligence

5 of the executive suite at Circuit City.  Their actions and poor

6 management brought down one of the greatest retailers in the

7 country.  I personally fought every bad decision they made, I

8 put my job and career at risk to fight them, but in the end, I

9 had no power to stop what was happening and I had to stand by

10 while the company I loved was destroyed.

11          Their actions failed the company, the employees and

12 the loyal customers of Circuit City.  I spent over 16 years of

13 my life working for Circuit City helping to build what would

14 become a great organization.  I gave up every weekend, holiday

15 with my friends and family because I believed in the company

16 and they promised me a pension when I was ready to retire.

17          I fear for the future of the company and the pension

18 I had worked for.  Now my pension funds have been given away to

19 the PBGC, I had no say in this, nobody asked me what I wanted

20 for my pension funds.  Again, I was given no choice.  There's

21 no one in this room who can guarantee that the PBGC will be

22 solvent in 20 years, when I'm ready to retire and even if they

23 are, that they will be able to pay me the benefits that I

24 earned.  They gave away my pension funds and now they want to

25 wash their hands of me.

1          I came to this Court looking for the protections that

2    wealthy people can afford, but that I cannot.  I'm asking the

3    Court to protect myself and my earnings.  I should have the

4    right to manage my retirement funds and not someone else.  I'm

5    confident that the executives who brought down this company got

6    what they wanted out of the company, whether it be bonuses or

7    retention pay or whatever they decided to call it, while the

8    lower employees had no rights or protections against them.

9          I believe it is fair and reasonable to ask that my

10   pension benefits be awarded to me from the remains of this

11   company and I appreciate your time.

12          THE COURT:  All right.  You understand that the

13   pension benefit that you have is not property of the debtors'

14   bankruptcy estate.  In other words, your claim for your pension

15   is not any way a part of the bankruptcy case itself.  It's a

16   separate fund, a separate entity that has that claim.

17          MR. TURNER:  Okay.

18          THE COURT:  So, and you're correct about the PBGC

19   having taken over responsibility for that.  Let me ask you, do

20   you have a pension claim or do you have a 401 claim?

21          MR. TURNER:  Pension.

22          THE COURT:  A pension, okay.  And so that will -- and

23   you're correct that the PBGC will be responsible for that going

24   forward and, in fact, it's on your behalf and on behalf of

25   other people that have -- are entitled to pensions, has filed

1  claims against the bankruptcy estate, you know, seeking monies

2  from there.  But, it seems to me that what you're asking for is

3  to have control over your particular pension funds now so that

4  you can make sure that they're going to be there for you in the

5  future, is that right?

6          MR. TURNER:  Correct.

7          THE COURT:  All right.  And so that will be a claim

8  that you would need to file against the PBGC as opposed to

9  objecting to what the debtor is asking for in this proceeding.

10  Is that -- you follow what I'm saying there?

11          MR. TURNER:  Yes.  So, I have no legal claim against

12  Circuit City, is what you're saying?

13          THE COURT:  Well, the -- Circuit City is objecting to

14  the claim that you have filed for your pension and the question

15  then that I have for you, what is the claim that you have, that

16  you're asserting against Circuit City that you think that you

17  have separate and apart from that?

18          MR. TURNER:  Well, just my pension funds, based on

19  what I earned while I worked at the company.

20          THE COURT:  Okay, all right.  And I think I

21  understand that, then.  All right.  Do you have anything

22  further, sir?

23          MR. TURNER:  That's all I have, sir.

24          THE COURT:  All right, thank you.

25          MR. TURNER:  Thank you, Your Honor.

40

1          THE COURT:  Does any other party wish to be heard?

2          MR. BENSON:  George Benson, sir.

3          THE COURT:  Benson, you said, sir?

4          MR. BENSON:  George Benson.

5          THE COURT:  Okay, Mr. Benson.

6          MR. BENSON:  I'm an investor and living on social

7  security and I had a large investment in Circuit City.

8          THE COURT:  Well, do you have a 401(k)?

9          MR. BENSON:  401(k).

10         THE COURT:  Okay.

11         MR. BENSON:  And I'm trying to eke out a living on

12 social security, which isn't easy, and they have left us a big

13 hole in our retirement fund; myself and many, many others.  I'm

14 here representing myself, and trying to get a word in for so

15 many others who were left holding the bag.

16         THE COURT:  All right.  And you heard my comments

17 just a moment ago about the pension fund and with regard to

18 401(k) funds.  You understand that your 401(k) fund is not

19 going to be eliminated by any action that is being asked --

20 that the Court is being asked to take today?

21         MR. BENSON:  All right.  I'm not an employee of

22 Circuit City, this is, my -- I'm an investment on the 401(k).

23         THE COURT:  Well, a 401(k) plan is a retirement plan

24 --

25         MR. BENSON:  I just wanted to clarify that.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  Were you an employee?

2              MR. BENSON:  No.

3              THE COURT:  Okay.  You were an investor.  So, we're

4    going to get to you next.  We haven't gotten to your objection

5    yet, so why don't you go ahead and I'll call you back up here

6    when we get to the shareholder ones.  Okay?

7              MR. BENSON:  Okay, thank you.  Thank you, sir.

8              THE COURT:  Thank you.

9              MR. TUCKER:  I'm Michael Tucker.

10             THE COURT:  Mr. Tucker?

11             MR. TUCKER:  Yes.  I must first apologize to the

12   Court.  I am a -- or was an employee of Circuit City and my

13   argument is similar to -- I don't remember his name.

14             THE COURT:  The first gentleman, okay.

15             MR. TUCKER:  And I listened to your argument and I

16   respect the argument, so I'm thinking that your answer to me

17   would be similar.

18             THE COURT:  It will.  Do you have any other questions

19   or did you understand what I was saying about that?

20             MR. TUCKER:  Clear.  You were clear.

21             THE COURT:  Okay.

22             MR. TUCKER:  All right.

23             THE COURT:  Thank you, sir.

24             MR. TUCKER:  Thank you.

25             THE COURT:  Yes, sir.

42

1            MR. FERGUSON:  I'm Johnny Ferguson.

2            THE COURT:  I'm sorry, I missed your name.

3            MR. FERGUSON:  I'm Johnny Ferguson.

4            THE COURT:  Mr. Ferguson.

5            MR. FERGUSON:  Yes, sir, first on the list here.

6            THE COURT:  All right.  And you're an employee or

7  former employee?

8            MR. FERGUSON:  Yes, 401(k), right.

9            THE COURT:  And you have a 401(k)?

10           MR. FERGUSON:  Yes, sir.

11           THE COURT:  All right.

12           MR. FERGUSON:  So, similar to Mr. Turner and Mr.

13 Tucker, similar, so I'm with the PBGC, also.  So, I'm due for

14 retirement next year, so, you know, so what you're saying is

15 that we need to contact them and whatever transaction needs to

16 be done, do it through them, is that what you're saying?

17           THE COURT:  Right.  They've got custody of the funds

18 that were put into the pension, as well as control of the

19 401(k), and so that's the entity that you're going to need to

20 deal with in order to get the retirement funds.

21           MR. FERGUSON:  All right.

22           THE COURT:  Okay?

23           MR. FERGUSON:  Thank you, sir.

24           THE COURT:  You're welcome.  Mr. Gray?

25           MR. GRAY:  Good afternoon, Your Honor.  I filed an

43

1   opposition for about four or five employees on the 12th omnibus

2   objection.  Yesterday, I agreed to a stipulated order for

3   those.  It's for Rebecca DeCamps, Chris Borgland, Hilton Epps,

4   Phyllis Pierson and Paul Shapman.

5           So, again, that order was probably BOPS'd yesterday,

6   so it'd be a separate order resolving this.  The claims are

7   withdrawn, we just have some language that I wanted.

8           THE COURT:  Okay.

9           MR. GRAY:  Thank you, Your Honor.

10          THE COURT:  And, again, they realize that they need

11  to proceed against the PBGC.

12          MR. GRAY:  They do, yes.

13          THE COURT:  All right, thank you.  Does any other

14  party wish to be hard in connection with the debtors' omnibus

15  objections concerning pension plan claims and 401(k) claims?

16                    (No audible response)

17          THE COURT:  All right.  The Court, then, Ms. Boehm,

18  is going to sustain the objections as they're not properly --

19  these claims are not properly against the company, that there

20  are separate funds that are in existence and that those

21  claimants will have a recourse against those separate funds.

22          MS. BOEHM:  Thank you, Your Honor.  With respect to

23  the equity claims, this included Omnibus Objections 15, 16, 17,

24  18 and 32.

25          THE COURT:  Okay.  And then with regard to the docket

1  what numbers are we talking about?

2            MS. BOEHM:  Sorry.  Item Number 30 --

3            THE COURT:  All right.

4            MS. BOEHM:  -- 31, 32, 34.

5            THE COURT:  What about Number 33?

6            MS. BOEHM:  33 -- 33 and 34.

7            THE COURT:  33 and 34, okay.

8            MS. BOEHM:  And these objections, Your Honor, the

9  debtors objected to claims that were filed in actual dollar

10  amounts on account of ownership of common stock.  The

11  stockholders, in fact, are not owed money from Circuit City and

12  they do not have claims against the debtors, rather, they hold

13  interests on account of their common stock, and pursuant to

14  501, they may have filed a proof of interest.

15            So, at this time we're just seeking the

16  reclassification of these from claims against the debtors'

17  estate to interests and then those interests will be treated in

18  accordance with the debtors' plan of liquidation.

19            THE COURT:  All right, thank you, Ms. Boehm.  And

20  now, sir, you can come back up and be heard.  I'd ask you once

21  again to state your name for the record.

22            MR. BENSON:  George Benson.

23            THE COURT:  All right.  Now, Mr. Benson, you have an

24  ownership interest in Circuit City, you bought stock.

25            MR. BENSON:  That is correct.

1          THE COURT:  All right.  And you understand what the

2   debtor is asking here is, you filed a claim against the company

3   --

4          MR. BENSON:  I did.

5          THE COURT:  -- as if you were a creditor and what

6   they want to do is reclassify your claim so that it properly is

7   an interest in the company, an ownership interest, which is

8   what a share of stock would be.

9          MR. BENSON:  Well, according to public records right

10  now, that would be worthless.

11         THE COURT:  Well, that's what Ms. Boehm was just

12  saying, that then what they want to do is, they want to treat

13  it as they would in the proposed plan.

14         MR. BENSON:  Which is?

15         THE COURT:  Which is that there's not going to be any

16  distribution on account of interest if the plan is confirmed.

17         MR. BENSON:  And they're just going to walk off and

18  take everybody's money.

19         THE COURT:  From -- the shareholders will not receive

20  any distribution from the case.

21         MR. BENSON:  But, this is all premeditated fraud,

22  sir.  This is no different than Enron.

23         THE COURT:  Well, are you claiming that you have a

24  claim that you want to assert --

25         MR. BENSON:  I think that the investors should not be

1 left out in the field.  That they just took all this money and

2 they resolved it.  These people are not bankrupt.  These people

3 are not out, they're back in business on the Internet selling

4 the same products.  They just --

5          THE COURT:  You realize what we did is, we sold the

6 name to another entity that is doing that?

7          MR. BENSON:  Yeah, but the original owners and

8 investors are not out on the street.  And they're not hurting

9 like the rest of us are.  This took a 10 percent cut out of my

10 retirement fund.  And I think we deserve a little respect and a

11 little bit remuneration.  We're not looking for the entire

12 amount back, we know it's an investment, but I think right is

13 right.

14          THE COURT:  All right.  Anything further, sir?

15          MR. BENSON:  No, that's it.  But, I want to speak for

16 myself and for all of the other investors that can't afford to

17 make the trip here.

18          THE COURT:  All right, thank you, Mr. Benson.

19 Anything further, Ms. Boehm?

20          MS. BOEHM:  No, Your Honor.

21          THE COURT:  All right.  The Court is going to

22 reclassify the claims, they are properly interest under Section

23 502 of the bankruptcy code.  And, obviously, the investors may

24 have other recourse that they can pursue, but that's not what

25 we're here about today.

1          MS. BOEHM:  Thank you, Your Honor.  I just wanted to

2 note for the record, with respect to Elizabeth Warren, who was

3 included in the 32nd omnibus objection, she was not originally

4 noticed for a hearing on the merits today, but I've spoken with

5 her counsel and she has consented to the reclassification, and

6 with those claims in unliquidated amounts and she understands

7 that the treatment will be set forth in the plan.

8          THE COURT:  Okay.  And that's with regard to Ms.

9 Warren?

10          MS. BOEHM:  Yes.

11          THE COURT:  All right, very good.  The Court will

12 make that note.  All right.  Is there anything else that we

13 need to --

14          MS. BOEHM:  That's all we have for today, Your Honor.

15          THE COURT:  All right.  And we took up matter number

16 35 in connection with the first group that was the pension plan

17 and 401k claims.

18          MS. BOEHM:  Yes, Your Honor.

19          THE COURT:  All right.  All right, we're going to

20 stand adjourned.

21          COURT CLERK:  All rise.  Court is now adjourned.

22                    *  *  *  *  *

23

24

25


                    **J&J COURT TRANSCRIBERS, INC.**

# C E R T I F I C A T I O N

I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Elaine Howell              Date:  November 16, 2009

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.