**B104 (FORM 104) (08/07)** **EDVA**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| | |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| | |

| **PARTY** (Check One Box Only) <br> □ Debtor □ U.S. Trustee/Bankruptcy Admin <br> □ Creditor □ Other <br> □ Trustee | **PARTY** (Check One Box Only) <br> □ Debtor □ U.S. Trustee/Bankruptcy Admin <br> □ Creditor □ Other <br> □ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

---

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR ||  BANKRUPTCY CASE NO. ||
| DISTRICT IN WHICH CASE IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) ||||
| DATE ||| PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

-----------------------------------------------------------------X

In re:

**CIRCUIT CITY STORES, INC., et. al.**

                                **Debtor,**

Case No.: 08-35653
Chapter 11

-----------------------------------------------------------------X

**CC INVESTORS 1995-6**

                                **Plaintiff,**

   **-against-**

**CIRCUIT CITY STORES, INC.**

                                **Defendant.**

Adv. Pro. No.

-----------------------------------------------------------------X

## COMPLAINT

Plaintiff, CC Investors 1995-6 (hereinafter the "Plaintiff" or the "Landlord"), by and through its counsel, RIVKIN RADLER LLP and CHRISTIAN & BARTON LLP, as and for its complaint against Debtor, Circuit City Stores, Inc. (hereinafter the "Defendant" or the "Debtor") hereby alleges as follows:

### INTRODUCTON

1.     This is an action for a declaratory judgment pursuant to Bankruptcy Code §§ 105, 503(b), and 507(a)(2), in which the Plaintiff seeks a judicial determination and order

---

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 E. Main Street, Suite 1200
Richmond, Virginia 23219
(804) 697-4100
(804) 697-4112 (facsimile)

Counsel to CC Investors 1995-6

that it is entitled to payment of all of the insurance proceeds that are payable under a series of insurance policies covering its property in Bethlehem, Pennsylvania as a result of a loss that occurred on October 28, 2008 at the Bethlehem property, and directing the insurance trustee designated under the lease between Plaintiff and Debtor to distribute all such insurance proceeds to Plaintiff that are now in such trustee's possession or which may come into its possession in the future.

### THE PARTIES

2. At all relevant times, Plaintiff was the owner and landlord of the premises known as 4000 Townshipline Road, Bethlehem, Pennsylvania (hereinafter the "Premises"), out of which Premises the Debtor operated before and during its bankruptcy filing.

3. Defendant is the debtor in the within bankruptcy proceeding, and at all relevant times, was the tenant in possession of the Premises.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2).

6. Pursuant to 28 U.S.C. § 1409, this is the proper venue for this adversary proceeding

7. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 105, 503(b), and 507(a)(2).

8. The Debtor filed a voluntary petition for relief (the "Petition") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 10, 2008 (the "Petition Date").

9. This adversary proceeding arises out of and relates to the Chapter 11 case of the Debtor.

## BACKGROUND

10. On or about September 20, 1995, the Debtor and the Plaintiff entered into a written lease (the "Lease"), whereunder the Debtor leased the entire Premises from the Plaintiff on a "Net Lease" basis for the term September 20, 1995 through and including October 31, 2017. (A copy of the Lease is annexed hereto as Exhibit "A").

11. Pursuant to Section 13 of the Lease, the Debtor was required to procure and to maintain, at its sole cost and expense, replacement cost insurance against loss or damage to the Premises under an "all risk" policy naming the Plaintiff as an insured party.

12. Debtor procured the required insurance. As of October 2008, the required insurance was in force and effect through a series of "all risk" insurance policies issued by Lexington Insurance Company, Axis Specialty Insurance Company, the Underwriters at Lloyds, Liberty Mutual Insurance Company and Max Specialty Insurance Company (collectively referred to as the "Insurers" – the coverage is referred to as the "Insurance Policies").

13. Plaintiff was named as an Insured on the Insurance Policies covering the Premises.

14. On October 28, 2008 (the "Loss Date"), one or more sinkholes (the "Loss Event") were discovered at the Premises.

3

15. The Loss Event is a covered occurrence under the Insurance Policies.

16. After the Loss Date, the Debtor retained certain parties (the "Remediating Parties") to begin to repair and/or restore the damage sustained at the Premises as a result of the Loss Event.

17. The replacement costs associated with full repair and/or restoration of the Premises as a result of the Loss Event are in the range of $3,000,000.00.

18. Claims have been submitted by both Debtor and Plaintiff to the Insurers seeking payment under the Insurance Policies as a result of the Loss Event.

19. On November 10, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

20. On March 21, 2009, the Debtor rejected the Lease under 11 U.S.C. §365 (the "Rejection Date").

21. After the Loss Date but before the Rejection Date, the Debtor failed to pay in full the Remediating Parties or complete the repair and/or restoration of the Premises despite a legal obligation to do so, as more fully described below.

22. In order to protect the Premises, and despite no obligation to do so, Plaintiff undertook to continue such repair and/or remediation following the Debtor's failure. As a result, Plaintiff was forced to pay the Remediating Parties amounts that were due to them for work performed prior to the Rejection Date that the Debtor did not pay, as well as for continued repair and/or restoration work that the Debtor was legally responsible to have performed, and incurred actual costs totaling in excess of $265,000.00.

23. On April 30, 2009, Plaintiff timely filed a proof of claim (the "Proof of Claim") asserting a general unsecured claim of $3,203,343.89 and an administrative priority claim of $225,132.91. The general unsecured and administrative priority claims were amended on or about November 17, 2009 to $3,352,250.47 and $402,899.17, respectively. The Proof of Claim is comprised of, *inter alia*, both pre and post-petition arrearages under the Lease and statutory Lease rejection damages.[1]

## THE DEBTOR'S DEFAULTS UNDER THE LEASE

24. The Debtor is currently in default of several provisions of the Lease, as more fully set forth below.

**A.    Rent and Taxes**

25. Sections 4 and 7 of the Lease required the Debtor to make timely payment of rent to the Plaintiff and to pay all real estate taxes, insurance, and maintenance costs associated with the Premises. Section 14(b) of the Lease states that in the event of any casualty resulting in damage to the Premises or any part thereof (which would include the Loss Event), the Lease term shall continue and there shall be no abatement or reduction of Basic Rent, Additional Rent, or any other sums payable by the Debtor under the Lease.

26. As of the Petition Date, the Debtor was in default of the Lease by virtue of its failure to pay pre-petition Rent in the amount of $175,187.52 for the time period October 1, 2008 through November 10, 2008, as well as Real Estate Taxes in the amount of $144,018.93 for the time period July 1, 2008 through November 10, 2008, plus additional penalties and interest in the amount of $5,009.11 (collectively the "Pre Petition Arrearages").

---

[1] The timely-filed Proof of Claim seeks $3,028,156.37 in statutory Lease rejection damages under 11 U.S.C. 502(b)(6)(A) (the "502(b)(6)(A) Claim").

5

27. After the Petition Date, the Debtor was in default of the Lease by virtue of its failure to pay post-petition Rent in the amount of $91,288.78 for the time period March 1, 2009 through March 21, 2009, Real Estate Taxes in the amount of $144,018.93 for the time period November 10, 2008 through March 21, 2009 as well as associated interest and penalties, and charges related to the unpaid Real Estate Taxes in the amount of $56,432.82 (collectively, the "Post Petition Arrearages").

### B. Lease Rejection

28. The Debtor is in default of the Lease by virtue of the fact that it rejected, and therefore breached, the Lease on the Rejection Date.

### C. Maintenance and Repair

29. Section 9(a) of the Lease requires the Debtor to keep and maintain the Premises in good repair and appearance, and to promptly make all repairs and replacements of every kind and nature, whether foreseen or unforeseen. Section 9(a) of the Lease also states that the Landlord is not required to make any repair to or maintain the Premises in any way and that the Debtor expressly waives the right to make repairs at the expense of the Landlord.

30. Section 9(b) of the Lease states that in the event that the Debtor defaults on any obligation under Section 9, the Plaintiff may do whatever is necessary to cure such default as may be reasonable under the circumstances for the account of and at the expense of the Debtor. Additionally, Section 9(b) provides that the costs and expenses incurred by the Plaintiff in maintaining and repairing the Premises after the Debtor's default, together with interest, are payable by the Debtor to the Plaintiff.

31. Although the Debtor began to repair and/or remediate the Premises after the Loss Event, it defaulted on its obligation to restore the Premises, which resulted in the Plaintiff being obligated to pay in excess of $265,000.00 to the Remediating Parties for amounts that were due to them for work performed prior to the Rejection Date that the Debtor did not pay, as well as for continued repair and/or remediation work that the Debtor was legally responsible to have performed. In addition, as a result of the Debtor's default on its obligations, Plaintiff was required to incur a loss associated with the eventual sale of the Premises in excess of $1,500,000, representing an adjustment that was given to the purchaser of the Premises equal to the value of the costs associated with the completion of the restoration.

## THE INSURANCE TRUST

32. The Lease expressly provides for the establishment of a third party monitor in the event of a significant loss and establishes specific conditions to ensure that insurance proceeds payable as a result of a covered loss (such as the Loss Event described herein) are collected, held and paid out only for the benefit of the Plaintiff.

33. Specifically, Section 14(a) of the Lease provides that in the event of a loss where the estimated costs to repair and/or restore the Premises exceeds $500,000.00, all Net Proceeds (i.e. the insurance proceeds realized from payment under any property casualty insurance required under the Lease, less any actual and reasonable expenses incurred in collecting such proceeds), shall be paid to an insurance trustee (the "Trustee").

34. Section 14(a) of the Lease further authorizes and directs the Insurers who have issued coverage to make payment of all insurance proceeds directly to the Trustee, who is appointed as the Debtor's attorney in fact to endorse and deposit all payments.

7

35. Following the Loss Event, a Trustee was appointed with the knowledge and acquiescence of Debtor, and an escrow account was established pursuant to an agreement between the Bank of New York Mellon and the Trustee for the purposes of depositing, accounting for and distributing all insurance proceeds.

36. Section 14(b) authorizes the Trustee to make the Net Proceeds available to the Debtor only for the purposes of restoring the Premises. However, the Debtor's right to disbursement of the Net Proceeds is expressly subject to the provisions of Section 15 of the Lease. Specifically, Section 15(a) states that the Debtor is entitled to disbursement of the Net Proceeds only if, at the time of any disbursement, "no Event of Default shall exist and no mechanic's or materialman's liens shall have been filed and remain undischarged and unbonded." In addition, the Trustee is authorized to retain ten (10%) percent from each disbursement until the restoration of the Premises is fully completed and is available for their intended use.

37. Upon information and belief, the Insurers have acknowledged coverage and are prepared to begin issuing some level of payment of insurance proceeds to the Trustee.

38. Upon information and belief, Debtor claims that it is entitled to disbursement of the insurance proceeds payable under the Insurance Policies despite the fact that it was, at the time of the Loss Event, and remains in default under the Lease.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(A Declaration That The Trustee is Obligated and Directed to Pay All Insurance Proceeds Payable as a Result of The Loss Event to the Plaintiff and Not The Debtor)**

39. Plaintiff repeats and re-alleges each and every allegation in the paragraphs marked and designated 1 through 38 with the same force and effect as though the same were set forth at length herein.

40. There is an actual case in controversy between Plaintiff and Debtor as to the distribution of the Insurance Proceeds payable as a result of the Loss Event.

41. The Debtor's rejection of the Lease, its failure to pay all Pre and Post Petition Arrearages, and its failure to make full and complete Restoration of the Premises after the Loss Event represent defaults under the Lease. Based on the terms of the Lease, the Trustee may not disburse any insurance proceeds to the Debtor and the Debtor is not entitled to disbursement of any insurance proceeds payable as a result of the Loss Event because it is in default under the Lease.

42. Accordingly, Plaintiff seeks a judgment and judicial determination declaring (i) that Debtor is not entitled to disbursement of any insurance proceeds payable under the Insurance Policies as a result of the Loss Event; and that (ii) Plaintiff is entitled to retain all of the insurance proceeds payable under the Insurance Policies as a result of the Loss Event, as well as an Order directing the Trustee to distribute to Plaintiff all insurance proceeds payable under the Insurance Policies as a result of the Loss Event that are now in its possession or which may come into its possession in the future.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests, pursuant to Bankruptcy Code §§ 105, 503(b), and 507(a)(2), a Declaratory Judgment declaring (i) that Debtor is not entitled

9

to disbursement of any insurance proceeds payable under the Insurance Policies as a result of the Loss Event; and that (ii) Plaintiff is entitled to retain all of the insurance proceeds payable under the Insurance Policies as a result of the Loss Event, as well as an Order directing the Trustee to distribute to Plaintiff all insurance proceeds payable under the Insurance Policies as a result of the Loss Event that are now in its possession or which may come into its possession in the future, together with such other and further relief as this Court deems just and proper.

Dated: November 18, 2009

CHRISTIAN & BARTON LLP
Attorneys for Plaintiff CC INVESTORS 1995-6

/s/ Jennifer M. McLemore
Augustus C. Epps, Jr., Esquire (VSB 13254)
Michael D. Mueller, Esquire (VSB 38216)
Jennifer M. McLemore, Esquire (VSB 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

and

Stuart I. Gordon, Esquire
Mathew V. Spero, Esquire
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11566-0926

1001701