UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                          .    Case No. 08-35653 (KRH)
                                .
CIRCUIT CITY STORES, INC.,      .
et al.,                         .
                                .
                                .    701 East Broad Street
                                .    Richmond, VA  23219
            Debtors.            .
                                .    November 12, 2009
. . . . . . . . . . . . . . .   .    10:02 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          McGuireWoods LLP
                         By: DOUGLAS M. FOLEY, ESQ.
                         9000 World Trade Center
                         101 West Main Street
                         Norfolk, VA  23510

                         McGuireWoods LLP
                         By:  SARAH BECKETT BOEHM, ESQ.
                         One James Center
                         901 East Cary Street
                         Richmond, VA  23219

                         Skadden Arps Slate Meagher & Flom LLP
                         By:  GREGG M. GALARDI, ESQ.
                              IAN S. FREDERICKS, ESQ.
                         One Rodney Square
                         Wilmington, DE  19899

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

APPEARANCES (CONT'D):

For Hewlett-Packard :       DurretteBradshaw PLC
                            By:  ROY M. TERRY, JR., ESQ.
                            Main Street Centre
                            600 East Main Street, 20th Floor
                            Richmond, VA

For Official Committee      Tavenner & Beran, PLC
of Unsecured Creditors:     By:  PAULA S. BERAN, ESQ.
                            20 North Eighth Street, Second Floor
                            Richmond, VA  23219

                            Pachulski Stang Ziehl & Jones LLP
                            By:  JEFFREY N. POMERANTZ, ESQ.
                            10100 Santa Monica Boulevard
                            Suite 1000
                            Los Angeles, CA  90067

For Averatec/Trigem USA:    RUSSELL R. JOHNSON III, ESQ.
                            2258 Wheatlands Drive
                            Manakin-Sabot, VA 23103

For Source Interlink        Whiteford, Taylor and Preston LLP
Distribution LLC:           By:  BRADFORD F. ENGLANDER, ESQ.
                            3190 Fairview Park Drive, Suite 300
                            Falls Church, VA  22042

For Bethesda                McKenna, Long and Aldridge LLP
Softworks LLC:              By:  DANIEL J. CARRIGAN, ESQ.
                            1900 K Street, N.W.
                            Washington, DC  20006

For Samsung:                Akerman Senterfitt
                            By:  MICHAEL I. GOLDBERG, ESQ.
                            350 East Las Olas Boulevard
                            Ft. Lauderdale, FL  33301

For LG Electronics          Wiley Rein LLP
and Envision                By:  VALERIE MORRISON, ESQ.
Peripherals:                7925 Jones Branch Drive, Suite 6200
                            McLean, VA  22102

For Metra Electronics       Sands Anderson, Marks & Miller PC
Corp. and Tamrac Inc:       By:  WILLIAM A. GRAY, ESQ.
                            801 East Main Street, Suite 1800
                            Richmond, VA  23218

APPEARANCES (CONT'D):

For Namsung America:          Leonard E. Starr, III, PC
                              By:  LEONARD E. STARR, III, ESQ.
                              119 West Williamsburg Road
                              Sandston, VA  23150

For Digital Innovations:      Christian and Barton LLP
                              By:  A.C. EPPS, JR., ESQ.
                              909 East Main Street, Suite 1200
                              Richmond, VA  23219

For Audiovox Corp. and        Duane Morris LLP
Sima Products Corp:           By:  MATTHEW E. HOFFMAN, ESQ.
                              30 South 17th Street
                              Philadelphia, PA  19103

For Samsung:                  Olshan, Grundman, Frome, Rosenzweig
                              and Wolosky, LLP
                              By:  FREDERICK J. LEVY, ESQ.
                              Park Avenue Tower
                              65 East 55th Street
                              New York, NY  10022

For Tivo, Inc.:               Zemanian Law Group
                              By:  PETER G. ZEMANIAN, ESQ.
                              600 Town Point Center
                              150 Bousch Street
                              Norfolk, VA  23510

For Paramount Home            Klee Tuchin Bogdanoff & Stern
Entertainment:                By:  DAVID M. STERN, ESQ.
                              1999 Avenue of the Stars, 39th Floor
                              Los Angeles, CA  90067

For Apex Digital &            Covington & Burling LLP
THQ, Inc.:                    By:  DENNIS B. AUERBACH, ESQ.
                              1201 Pennsylvania Avenue, N.W.
                              Washington, DC  20004

For JVC Companies:            Otterbourg, Steindler, Houston &
                              Rosen PC
                              By:  SCOTT L. HAZAN, ESQ.
                              230 Park Avenue, 29th Floor
                              New York, NY  10169

                              -  -  -

**J&J COURT TRANSCRIBERS, INC.**

4

1          COURT CLERK:  In the matter of Circuit City Stores,

2    Inc., hearing on items 1 through 7 is set out on debtors'

3    agenda.

4          MR. FOLEY:  Good morning, You Honor.  Doug Foley with

5    McGuireWoods on behalf of the debtors.

6          THE COURT:  Good morning, Mr. Foley.

7          MR. FOLEY:  With me today in court from our firm is

8    Sarah Boehm.  As well at counsel table is Gregg Galardi and Ian

9    Fredericks from Skadden Arps.  Today here from the company,

10   Your Honor, is Jim Marcum, the CEO, Michelle Mosier, the

11   principal financial officer, and Debra Miller who is the

12   general counsel.

13         Your Honor, the agenda only has seven items on it

14   today.  But as Your Honor is aware, it's been heavily briefed

15   by a lot of parties and there's a lot of important issues to be

16   addressed.  We wanted to thank the Court for scheduling the

17   hearing on these matters for today.

18         The way we would propose to proceed, Your Honor, is

19   to deal with items 1 and 2 on the agenda which are motions

20   filed by Hewlett-Packard first and then also report to the

21   Court about a settlement that we reached with Hewlett-Packard

22   last night resolving all of their claims in the case.  They are

23   the largest creditor in the case so we're pleased to be able to

24   report that to the Court.

25         And then with respect to items number 3 through 7 on


**J&J COURT TRANSCRIBERS, INC.**

1 the agenda, omnibus number 48, 49 and 50 deal with our motions

2 relating to the application of setoff of receivables to various

3 claims.   And then items number 6 and 7, omnibus 51 and 52, deal

4 with the applicability of Section 502(d) to 503(b)(9) claims.

5 The way we would propose to proceed with those items, Your

6 Honor, unless Your Honor disagreed, was to deal with the common

7 procedural objections to going forward with respect to those

8 objections first.   And then depending on how Your Honor came

9 out with respect to that, deal with the substance of the issues

10 on items number 3, 4 and 5 and then move on to items number 6

11 and 7.

12          THE COURT:  All right, Mr. Foley, that sounds

13 reasonable.

14          MR. FOLEY:  Your Honor, item number 1 is

15 Hewlett-Packard's motion for an expedited hearing with respect

16 to item number 2 which is their motion to seal certain

17 documents.  We have no objection to either of those motions.

18 Mr. Terry is here for Hewlett-Packard.

19          THE COURT:  All right, Mr. Terry?

20          MR. TERRY:  Good morning, Your Honor.  Roy Terry of

21 DurretteBradshaw appearing as local counsel for Hewlett-Packard

22 and that is the agreement, Your Honor.  We would appreciate the

23 Court filing that.  We're accepting that document under seal.

24          THE COURT:  Does any party wish to be heard in

25 connection with the motions of Hewlett-Packard?  All right, the

**J&J COURT TRANSCRIBERS, INC.**

1  Court will grant the motions.

2           MR. TERRY:  Thank you, Your Honor.

3           MR. FOLEY:  Your Honor, while we are on

4  Hewlett-Packard, omnibus objection number 49 which is number 4

5  on the agenda, Mr. Galardi and Mr. Terry can address the terms

6  of the settlement that we filed about a half hour ago.  Thank

7  you, Your Honor.

8           THE COURT:  All right, thank you.

9           MR. GALARDI:  Good morning, Your Honor, for the

10 record, Gregg Galardi of Skadden Arps.  Your Honor, for the

11 last four or five days we have been negotiating a settlement

12 with Hewlett-Packard with respect to our setoff motion and our

13 objection to their claim which is in the 49th omnibus

14 objection.

15          Your Honor, the settlement that we filed this morning

16 I'll be very brief about.  We had agreed with Hewlett-Packard

17 that they had essentially three claims and we'll be talking a

18 lot about the three periods today.  First was there was an

19 administrative claim of $150,000.  Second, there was a

20 503(b)(9) claim in the amount of $33 million.  And then there

21 was an unsecured claim in the amount of $92 million.

22          Your Honor, there was back and forth reconciliations

23 but these --

24          THE COURT:  Mr. Galardi, let me ask you.

25          MR. GALARDI:  Sure.


**J&J COURT TRANSCRIBERS, INC.**

1                 THE COURT:  When I was reading the papers I was

2  unclear, was the 33 included in the 92 --

3                 MR. GALARDI:  It was not.

4                 THE COURT:  -- or was the 92 in addition?

5                 MR. GALARDI:  It was in addition to it, Your Honor.

6                 THE COURT:  All right, thank you.

7                 MR. GALARDI:  So we had gone back and forth.  And the

8  92 reflected a compromise between us at 86 and them at 94 I

9  think the number was or 88 and 94.  Your Honor, then we also

10  did a reconciliation with HP with respect to what we've called

11  the receivables which included both pre petition and post

12  petition receivables.  And again, those receivables, back and

13  forth conversations were spread over what I'll call the same

14  three periods, the pre petition, the 503(b)(9) period and the

15  post petition period and we came up with a number of

16  $54,600,000 that was owed to Circuit City.

17                 After much back and forth discussions, we came up

18  with the following settlement.  The settlement is the

19  administrative claim which was $150,000, it was probably just a

20  rounding error, to call that zero.  There will be nothing on

21  account of the pure 503(b) post petition administrative claim.

22                 The Hewlett-Packard 503(b)(9) claim is going to be

23  reduced from the $33 million to $6 million.  So we got a lot of

24  credit out of our $54 million receivable, to reduce that claim

25  roughly by $27 million.

1          And then next, Your Honor, the unsecured claim which

2     was 92 would be reduced and allowed in the amount of $64.5

3     million.  So we essentially agreed to allocations of our

4     receivables across administrative and non-administrative claims

5     and come to that settlement.

6          Otherwise, there are releases with respect to

7     avoidance actions with a carve out for both parties on there is

8     this multi-district litigation pending about flat panels and

9     they're not involved.  We're involved tangentially but we left

10    that open so that each party could still assert claims and

11    defenses with respect to that.

12         And that is our settlement which we believe resolves

13    the 49th omnibus objection.  What we would do is provide ten

14    days' notice for people to object to that and then proceed

15    absent objections that that would be settlement.  So in

16    essence, while that is pending, our objection, on the 49th

17    objection, is adjourned until this order becomes actually an

18    order approved subject to our settlement.  But that is the

19    settlement with respect to Hewlett-Packard, Your Honor.

20         THE COURT:  All right, thank you, Mr. Galardi.  Do

21    you wish to be heard, Mr. Terry?

22         MR. TERRY:  Good morning again, Your Honor.  Roy

23    Terry as local counsel for HP.  I would concur with the terms

24    as have been recited by Mr. Galardi and I appreciate him doing

25    so.  I would add only that HP reserves all of its rights in the

**J&J COURT TRANSCRIBERS, INC.**

1  event that the stipulation should not be approved.  But if it

2  is approved, then that will resolve all matters as to HP, yes.

3            THE COURT:  Of course, yes, all right.

4            MR. TERRY:  Thank you, Your Honor.

5            MR. GALARDI:  And, Your Honor, one fact that I left

6  out.  Hewlett-Packard is the chair -- one of the committee

7  members.  The Committee has also agreed and supports this.  We

8  were in contact with the Committee.  The Committee has agreed

9  to this settlement.  Hewlett-Packard obviously was not involved

10 in the deliberations of the Committee with respect to its own

11 settlement but we have been in contact and the Committee also

12 has -- supports that settlement.  I don't know if counsel for

13 the Committee has heard that from their own counsel.

14           UNIDENTIFIED ATTORNEY:  Your Honor --

15           MS. BERAN:  For the record, Paula Beran of the law

16 firm of Tavenner and Beran and on the line as well is Mr. Jeff

17 Pomerantz from the Pachulski firm and he can speak more to it

18 if Your Honor is so inclined.  But yes, Mr. Galardi is correct,

19 the Committee does support it and HP was not involved in any

20 way, shape or form in the deliberations.

21           THE COURT:  All right, thank you, Ms. Beran.  Mr.

22 Pomerantz has never been shy about speaking up so I assume he

23 would if he's any different from --

24           MR. POMERANTZ:  Ms. Beran is totally correct, Your

25 Honor.

**J&J COURT TRANSCRIBERS, INC.**

1             THE COURT:  Thank you.

2             MR. GALARDI:  Your Honor, that then goes to the next

3   matters on the agenda and I guess, the omnibus objections 48,

4   49, 50, 51 and 52.  There is, as Mr. Foley mentioned, there are

5   a common thread of procedural objections which we could address

6   first.  I don't know if Your Honor wants me to address our

7   response to those or whether you want to hear from the parties,

8   those objections.  However you'd like to proceed, I can respond

9   to -- I think there are three common objections but whatever

10  Your Honor -- however Your Honor wants to proceed, I think it's

11  best to take those up.

12            THE COURT:  Why don't you just sort of lay the table

13  and then we'll let everybody else voice their objections?

14            MR. GALARDI:  Sure.  Your Honor, I guess -- as I read

15  them, they come down to, I think, three objections.  First is

16  that somehow by going to threshold legal issues, we're

17  depriving the claimants of their due process rights.  Second

18  is, and whether this is a Constitutional objection or something

19  else, the second is we are seeking an advisory opinion in

20  accordance with hypothetical facts that it would be

21  inappropriate, as this Court knows, to do that.  It's an

22  Article III Constitutional issue in my view.

23            And then finally, the last objection is even if it's

24  not due process and even if it's not an adversary -- even if

25  it's not an advisory opinion, because of the type of relief

**J&J COURT TRANSCRIBERS, INC.**

11

1 we're asking for should be brought in an adversary proceeding,

2 we should have proceeded under 7001, filed the complaint and

3 that argument goes to (1) we're seeking declaratory relief, and

4 (2) that may be combined with or separate from, I can't quite

5 tell sometimes, that we are seeking to recover money or other

6 property under 7001 I believe it is.  And therefore, because

7 we're seeking that, we needed to go through an adversary

8 proceeding.  That's how I understand the three objections and I

9 can respond to them and we can proceed however.

10 THE COURT:  I think you can save your response until

11 after the objections have been made.

12 MR. GALARDI:  Thank you.

13 THE COURT:  Thank you, Mr. Galardi.  All right, does

14 anybody wish to proceed with the objection to -- on the

15 procedural matters?

16 MR. JOHNSON:  Good morning, Your Honor.

17 THE COURT:  Good morning.

18 MR. JOHNSON:  Russell Johnson here on behalf of

19 Averatec/Trigem USA.  Your Honor, with respect to the advisory

20 opinion issue, the debtors -- it's interesting on Page 3 of

21 their omnibus reply they state how they want this matter to be

22 bifurcated.  They want the Court to issue a ruling on common

23 legal issues and reserve factual issues for a later date,

24 "Then..." and I quote, "...only after subsequent hearing would

25 the Court enter an order sustaining overruling objections."  So

1 we're not going to have any ruling by this Court under their

2 proposed procedure, that could be appealed or addressed to the

3 next level until after the factual determination.  So why make

4 that determination at this time?

5 　　　　Your Honor, what they're asking this Court to do --

6 there's no facts.  We don't know what the facts are, at least

7 as far as my client.  They've said we have this claim.  We've

8 asked them for documentation regarding that claim because it's

9 never been asserted before.  So what is the Court's ruling

10 going to be as far as that claim as opposed to every other

11 person's claim?  Are we going to have --

12 　　　　THE COURT:  Then I have to accept the facts as you've

13 alleged them for purposes of going forward today.

14 　　　　MR. JOHNSON:  The facts as we have alleged them?

15 　　　　THE COURT:  As you've alleged them.

16 　　　　MR. JOHNSON:  Well, we filed a claim.  We filed a

17 503(b)(9) and an unsecured claim.  There's two claims out

18 there.  The 503(b)(9) is three hundred and twenty some thousand

19 and the unsecured claim is -- was $600,000.  It's been reduced

20 down to about four hundred something at this point.  And

21 they've alleged that they have about a $200,000 offset claim.

22 　　　　And, Your Honor, I guess where we come with this is

23 that there's so many different factual scenarios that are being

24 presented to this Court today.  Is the Court just going to rule

25 on each particular one and issue multiple rulings on just on

1  the legal issues and then what happens after that?  So we're

2  stuck with a legal ruling based on hypothetical facts because

3  we don't know if they have a claim.  They've never asserted it

4  before so it is hypothetical.  They've asserted it in their

5  pleadings for the first time with no supporting documentation,

6  no chance for discovery, no chance to ferret this out to

7  whether it isn't even a claim at all.

8         So you're essentially ruling, if they don't have a

9  claim -- let's just assume for the moment they don't have a

10  claim.  They've never asserted it to this point.  There's no

11  documentation ever provided to my client.  They don't have a

12  claim.

13         You go and issue a ruling today that they can offset

14  that against either the unsecured claim, which I think makes

15  sense, they can probably assert that against the unsecured

16  claim if they do, or can they assert it, as a setoff to the

17  503(b)(9) claim?  Well, if they eventually don't have a claim,

18  what have you done today?  You've issued a ruling on a set of

19  facts that doesn't really exist because they don't have a

20  claim.

21         Your Honor, the other part about this is that, as I

22  --

23         THE COURT:  Well, the other side of that though is

24  why should we go through all of the discovery and such to get

25  to whether or not they have a claim if they're not going to

1  have a right to set it off?

2          MR. JOHNSON:  Well, the issue is --

3          THE COURT:  Isn't that the question I'm being asked

4  today, do they have the right to set off?  And if they do, you

5  know, which claim can they set off --

6          MR. JOHNSON:  I don't think it's disputed that they

7  have a right of setoff.  It's where they can apply it if they

8  have a claim and that's one of the legal issues.  But the case

9  law on this and the various factual scenarios -- you could have

10 issue 5, 6, 7, 10 different rulings today to deal with a

11 creditor such as mine that has an unsecured claim and a

12 503(b)(9) claim.

13         Well, then what if you have a creditor that just has

14 an administrative claim but no unsecured claim, is the ruling

15 going to be different?  The case law sort of indicates that

16 there might be a difference for that.

17         What if they have -- what if their claim is a post

18 petition claim and the other claim is a combination of various

19 other things?  There's numerous factual scenarios that they're

20 asking you to rule upon without any facts, without any facts

21 before you.  And I don't know how it benefits the parties for

22 you to rule -- there's a claim objection to the third one, to

23 my client's -- they filed a claim and now they're dealing with

24 a third objection.  One is still pending and one was taken care

25 of.  So this is the third objection to the 503(b)(9) claim.  At

J&J COURT TRANSCRIBERS, INC.

1  some point judicial economy needs to step up and say Judge, can

2  we just resolve all the issues of my claim in one proceeding?

3  Why do I have to keep coming here for various hearings on

4  various different objections to my claim?  But that's another

5  issue.

6          But if you rule today, what is the effect of that

7  ruling?  Is there going to be an order saying that they can do

8  X or Y?  Well, how does that affect our litigation when we

9  don't know what the facts are, right?  And so we can't -- is

10 any party going to be able to appeal that?  What if you rule in

11 my favor and they're upset with that ruling, are they going to

12 be able to appeal it?  What if you rule in their favor and I'm

13 upset with it, can I appeal that ruling?  Are we talking about

14 a final decision here that's going to be something that the

15 parties can take up?

16          THE COURT:  Well, how would any ruling I make today

17 be any different than if I was to treat this as a motion for

18 partial summary judgment?

19          MR. JOHNSON:  Well, to get to partial summary

20 judgment, don't you have to have undisputed facts?

21          UNIDENTIFIED SPEAKER:  All right, I'm on a conference

22 call, so when I take another call --

23          THE COURT:  I'm sorry, whoever is on the phone, would

24 you please put your phone on mute?  Thank you.

25          MR. JOHNSON:  The difference, Your Honor, as far as

1  the partial summary judgment question is you only get to

2  partial summary judgment when you have undisputed facts.  And

3  here, we do have disputed facts.  We have no idea what this

4  claim is and they've objected to our claim.  So it is

5  different.  It is different because when you do a partial

6  summary judgment, there's undisputed facts, there's legal and

7  factual issues that could be subject to an appeal.  You've got

8  legal and factual issues.

9         Here, we've got factual disputes.  There's no issue

10 here.  So there are factual issues.  We dispute their claim.

11 They dispute ours.  So what benefit does that give the parties?

12 The parties -- if you issue a ruling that neither party can

13 appeal, then they have to deal with this issue while they go

14 through discovery.  And then after all discovery is done and if

15 they have to litigate the matter, then you issue finally this

16 final order that they're talking about resolving their claim

17 objection.  Then, whenever that is, then that goes up if one

18 party is not satisfied with the ruling.

19        So it seems to me it doesn't really benefit the

20 parties to actually make this ruling today because we don't

21 know what the facts are.  It just -- that's what advisory

22 opinions are supposed to be -- to prevent.  The Court is not

23 supposed to issue a ruling that is not a final ruling on a

24 factual, legal issue.  I say the Court doesn't have the

25 jurisdiction to do it.  There's just no facts before this Court

1  to do that and I don't see how it benefits the parties.  Plus

2  --

3       THE COURT:  Doesn't the Court issue interlocutory

4  orders all the time?

5       MR. JOHNSON:  On various issues, yes, but I mean is

6  this an interlocutory ruling here where the facts haven't even

7  been established yet?  I mean these are allegations.  That's

8  all we're here on.  This is not summary judgment.

9       THE COURT:  How would you propose to resolve these

10  issues?

11       MR. JOHNSON:  Your Honor, my client, I think, all

12  these claim objections filed by my client, we should all have

13  one hearing, not one proceeding to deal with that so my client

14  doesn't have to deal with all that.  But claim objections --

15       THE COURT:  So you would have each client have their

16  one day in court to argue this issue?

17       MR. JOHNSON:  Well --

18       THE COURT:  Because if I decided it in a case that

19  you weren't involved in, then maybe you wouldn't have the right

20  to be able to argue the issues.

21       MR. JOHNSON:  That decision obviously wouldn't be

22  binding on my client.  Then we would be aware that the other

23  decision is out there.  Claim objections get settled 99 percent

24  of the time.  They don't come to this court.  And they're

25  coming to court today because they want some ruling that's

1  going to guide advisory only how they're going to deal with

2  those fact scenarios, although I still don't know how the Court

3  can issue one ruling here today with all the various fact

4  scenarios that can present itself to the Court.

5       And that is troubling because if you issue -- what if

6  the facts change?  What if the facts that they have alleged

7  against my client have changed and I'm not arguing the issue

8  today that you rule on all these other separate rulings?  Let's

9  say the facts dramatically change as far as my client's

10 concerned and now you've made a ruling today that after

11 discovery, all of a sudden, those facts are relevant to my

12 client?

13      THE COURT:  Okay, what facts are going to change?  I

14 mean we know that you filed a proof of claim and you're

15 asserting a claim against Circuit City.

16      MR. JOHNSON:  Two claims, right.

17      THE COURT:  We know that, okay.  Circuit City is also

18 asserting a claim against your client.  We don't know whether

19 it's valid.  We don't know whether your claim is valid.  You

20 know, but we've got those two allegations.  Now, what other

21 allegations do we need to have from a factual standpoint that

22 might change that would affect anything we do today?

23      MR. JOHNSON:  As far as my client?

24      THE COURT:  Yes.

25      MR. JOHNSON:  I guess if they don't have a claim,

**J&J COURT TRANSCRIBERS, INC.**

1  then any ruling you make is moot anyway because they don't have

2  a claim.

3          THE COURT:  And if you don't have a claim, then any

4  ruling would also be moot?

5          MR. JOHNSON:  Be moot.

6          THE COURT:  So if I accept that both, for purposes of

7  today, that both parties have claims without deciding what the

8  claims or whether they're valid, just assume for purposes of

9  today's ruling that you have a valid claim, they have a valid

10  claim in some amount --

11          MR. JOHNSON:  Right.

12          THE COURT:  -- then how has that harmed your client?

13          MR. JOHNSON:  I don't think it affects my client

14  simply because they have just a 503(b)(9) and an unsecured

15  claim.  I think it could affect somebody that has just a post

16  petition claim and a 503(b)(9) claim, but I don't see how it

17  would affect my client specifically on that issue.

18          Though, as I said, I just don't see how you can issue

19  one ruling, as a first matter, on all the facts that are being

20  presented to you which could affect others.  It's obviously not

21  going to affect mine.  Two, any ruling you issue today I don't

22  think either side can take up on appeal.  They're going to have

23  to live with that ruling until the factual issues are decided.

24  So I don't see what is gained by doing this because any ruling

25  that you would do in a separate proceeding wouldn't be binding

1  on my client.  And certainly, yes, if you ruled, you're going

2  to be predisposed to rule that way, but maybe I can change your

3  mind and my -- contest the matter at an adversary proceeding,

4  however it comes up.

5         So I just think this is improper.  I think we --

6  claim objections resolve themselves.  We don't need these

7  procedures.  They get them adopted in this case, they're going

8  to do just like they did in their brief, look, the judge did it

9  in this case, and they don't even have any authority that even

10  supports it.  The two cases they cite in the reply brief, the

11  <u>Leeds</u> and I'm trying to remember the other case they cited,

12  <u>Plastech</u>, the parties consented to the procedure.  They

13  actually consented to it.  They don't have any authority that

14  anybody has actually done this without the authority of the

15  parties and my client doesn't consent to these procedures.

16         THE COURT:  All right, anything further?

17         MR. JOHNSON:  No, Your Honor.

18         THE COURT:  Thank you, Mr. Johnson.

19         MR. ENGLANDER:  Good morning, Your Honor.

20         THE COURT:  Good morning.

21         MR. ENGLANDER:  Brad Englander.  I'm representing

22  Source Interlink Distribution LLC which is -- at the outset of

23  this case was known as Alliance Entertainment and also an

24  affiliate of that entity, Source Interlink Media LLC.  And our

25  view is a little bit different on this.  We think that the

1  debtors -- there is an interest in having a ruling on common

2  issues in a common way.  That concept does not trouble me.

3          The problem is the procedures here today.  The Court

4  at the outset of this case entered an order governing omnibus

5  claims objection procedures and that order expanded very, very

6  broadly the types of matters that could be brought before the

7  Court in an omnibus.  Under Rule 3000(7)(d) there's a list of

8  specified omnibus objection matters that the Court can

9  entertain.  The Court has the power to expand what it can do in

10 an omnibus and the Court here did.  And we've all been

11 operating under that rule from the beginning of the case.

12          It's a very broad rule, but the one thing that the

13 Court did that really gave the creditors comfort here is it

14 included in the order a provision that said we'll go forward at

15 the first hearing with respect to those who don't respond, but

16 with respect to the creditors who respond, the first hearing

17 will be a status conference and they don't even need to appear.

18 And that sounds like a small procedural matter but it's not

19 because what that permits us to do is to file a response and

20 then work behind the scenes to develop a record, to develop

21 procedures, to trade information as apparently happened between

22 the debtor and the largest creditor in this case as the Court

23 heard this morning.

24          Presently, my clients are subject to six separate

25 omnibus objections and they have all proceeded in that manner.

22

1  All of those omnibus objections are procedural in nature,

2  misclassification, filing claims against the wrong debtor,

3  things like that.  This one is very different.

4          And what we are here to ask the Court to do is not to

5  vary from those procedures, to follow what's been done in this

6  case.  And there's good reason why we're here to do it.  We

7  invited ourselves to this party.  We are not named in any of

8  the three objections that we've appeared on.  The ones we're

9  appearing on are 48, 49 and 50.  And I'd like to call the

10 Court's attention that what the Court has to decide today is

11 very different with respect to those omnibus objections than

12 what the Court is being asked to decide with respect to the

13 other two, the 502(d) objections.

14         48, 49 and 50 are what we call the setoff against

15 503(b)(9) and admin claims.  Those are inherently factual.  It

16 is not simply a question of let's decide a legal issue and if

17 you fit into that facts, then you go this way or that way.

18 Each one of them really could be very different from the next.

19 There may, however, be, as the facts develop, common buckets

20 where we can develop through looking at the facts different

21 categories of objections and relationships that might lend

22 themselves to a global ruling on a subset basis, not across the

23 board.  But with no facts in front of the Court, you can't

24 decide whether that's appropriate or not.

25         You asked before what sort of things could vary.

23

1   This isn't simply a question do we have a claim, do they have a

2   claim.  My client has a very complex relationship with the

3   debtor.  I'm talking now about the Alliance relationship, not

4   the Simm relationship.  The Alliance relationship -- Alliance,

5   the Court may recall or may not, that was here at the first day

6   and briefly described it, we handled shipping, the DVDs and CDs

7   to the debtor.

8          We did two things.  We sold product to the debtor,

9   and this is part of what we did, sold our own product to the

10  debtor and supplied all the stores.  And we also handled

11  servicing of products sold directly by major DVDs primarily.

12  And so that was sort of a service-oriented process.

13         And there was a very complex relationship defined in

14  a very detailed contract where there were products sold,

15  returns, procedures for returns, procedures for crediting

16  returns.  Those were different than the returns, you know, the

17  returns that came to us of our product were different than the

18  return procedures when we were processing returns that went

19  back to the major distributors.  It's a unique relationship and

20  it's not simply that the debtor may have a claim.  These are

21  credits under a single contract, an integrated transaction here

22  and it's going to be very --

23         THE COURT:  So you're arguing the recoupment issue?

24         MR. ENGLANDER:  It may be recoupment.  It may be

25  recoupment.  It may be simply that it's simply a reduction.

1   It's a method for calculating what the debtor owes to us.

2           THE COURT:  Okay, and without getting into, you know,

3   all of that, let's get back on the procedural --

4           MR. ENGLANDER:  Right.

5           THE COURT:  -- why we shouldn't proceed today.

6           MR. ENGLANDER:  Well, first, the debtor hasn't

7   identified -- the debtor is asking the Court for a global broad

8   based ruling.  It's going to affect everybody who has some sort

9   of a credit or setoff.  It's very vague what exactly the types

10  of triggers are that would implicate this Court's ruling.  The

11  debtor is asking for that today.  The debtor has not identified

12  all of the parties who are going to be subject to this Court's

13  ruling today.

14          The debtor did not name us but we know from dealing

15  with this issue already on an informal basis that this is

16  exactly an issue that we are facing and that the debtor will

17  try to use this ruling to affect our rights.  We noticed it.

18  We have a relatively large claim, as I see it, for a

19  million-dollar 503(b)(9) claim.  It's significant.  How many

20  haven't noticed it?

21          Again, one of the essences --

22          THE COURT:  Well, let's go back to the question I

23  asked Mr. Johnson when he was up here.

24          MR. ENGLANDER:  Mm-mm.

25          THE COURT:  If I was to proceed on Mr. Johnson's

J&J COURT TRANSCRIBERS, INC.

1  claim first because he was advocating do it on a specific, you

2  know, entity by entity basis instead of doing this in a global

3  fashion and I ruled in his favor or I ruled against him in the

4  debtor's favor, wouldn't that ruling in just his case impact

5  just like you're saying this proceeding today may very well

6  impact you?

7          MR. ENGLANDER:  I don't think so because the facts

8  are going to be so very different.  I'm really not sure when

9  the Court rules today what has been accomplished.  And again,

10 I'm leaving aside the 502(d) issues here.  I think this is --

11 on these setoff issues I think you're going to find that there

12 are various different types of relationships and you may find

13 similarities among them but I think that they're very

14 different.

15         So if the Court rules on one, that's not necessarily

16 going to impact the others.  But I'm not suggesting that we all

17 go off on our own separate ways and litigate the same issue

18 hundreds of times.  I don't think that would be practical and I

19 don't think that would be good use of the debtor's resources or

20 the Court's.

21         What I do think should be done, though, is that we

22 follow the same procedures that have been followed since the

23 very beginning of this case with respect to claims objections

24 and that we deal, like you would in any piece of litigation

25 even if it's one to one, in working out a scheduling order,

1  trading facts, coming up with agreed facts so that the Court

2  has something in front of it.  And it may be that various

3  creditors are of a certain nature.

4       I'll give you an example.  If a creditor -- if the

5  debtor has a setoff right and it's a true setoff right, and it

6  exceeds an amount, the total amount of the claims asserted by

7  the creditor, that's an enormously different fact pattern than

8  if the debtor's setoff right would still leave a remaining

9  claim.  Then you're dealing with the allocation between

10 503(b)(9) and the general unsecured claim.  The motivation for

11 litigating those and how you go about approaching those would

12 be very different.

13      THE COURT:  But the debtor is not -- they were very

14 careful to say in their memoranda that they're not seeking

15 affirmative recovery.  They're only seeking to setoff.

16      MR. ENGLANDER:  Well, they may not be seeking

17 affirmative recovery but the difference between how you would

18 approach it in defending against the objection would be very

19 different if you are trying to deal with an allocation issue as

20 opposed to completely wiping out your claim.  But the facts

21 remain is that these are facts.  I mean you have different

22 contracts.  They could be governed by different laws of

23 different states.  The debtor proceeded in its -- when it filed

24 this objection assuming Virginia law would apply.  Our contract

25 says it's governed by New York law.  We saw it from HP's

1   papers.  They're governed by California law.

2          You need to get down to the differences here to make

3   sure that they're not salient.  And we're not dealing here --

4   unlike the 502(d) issue where we're dealing with one section of

5   the Bankruptcy Code versus another.  Here, what we're dealing

6   with is two sections of the Bankruptcy Code, 553 and 558, which

7   preserve state law rights and using those against a priority

8   provision in the Bankruptcy Code.  So you have to --

9          THE COURT:  Isn't the law set off -- I mean is it

10  different between New York and California?

11         MR. ENGLANDER:  I'm not sure that these are going to

12  be great differences.  I think though that the parties need

13  time to look into that and it could be relevant.  Certainly

14  we're already seeing different arguments on recoupment and how

15  it should be construed.  But these are issues that could be

16  affected by the terms of the contracts, the course of dealings

17  between the parties, the nature and timing of the returns.

18         And you're being asked to make a ruling -- take an

19  example here.  You're being asked to make this ruling as though

20  it's a simple, broad base, across the board ruling without any

21  facts in front of you.  One fact that you may find, Your Honor

22  may find to be very relevant as you look into the matter is

23  when were these credits generated and how were they generated.

24  Were they generated a year before the petition?  Were they

25  generated on the 21st day before the petition?  Were they

**J&J COURT TRANSCRIBERS, INC.**

1  generated during the 20-day period?  Were they generated post

2  petition?  The debtor is asking you to, as a matter of law,

3  treat them all as exactly the same.  And the debtor can get

4  away with that now only because there's nothing in front of

5  Your Honor.

6        And this is -- this really is an important issue.  It

7  is a relatively novel issue.  It's obviously only arisen as to

8  the 503(b)(9) claims since BAPCPA and there's very little case

9  law on it.  And the cases that were decided -- what was

10 critical, common theme, Courts needed to have the facts.  Two

11 of the opinions vacated the lower court opinion because more

12 facts were needed or a more detailed factual finding was

13 needed.  That's on appeal.

14       So that says something here.  It says we really need

15 to know what the facts are.  It doesn't mean that they're all

16 going to be different.  It doesn't mean you're not going to

17 have commonality.  And it doesn't mean you can't use the

18 omnibus procedures to come up with a practical, cost-effective

19 way of resolving claims.  But what it does mean is that we have

20 to go through the process just as we have with 47 prior claims

21 objections to reach -- to accommodate the parties, to work out

22 procedures, to make sure that a factual presentation is

23 provided.

24       Even if you were to look at this as a partial summary

25 judgment motion, the most basic rules -- I mean if you say --

**J&J COURT TRANSCRIBERS, INC.**

1  and Rule 56 does apply in contested matters, right off the bat

2  you have to look at Rule 56.  It says you can't even file a

3  Rule 56 motion for 20 days after you file your -- commence your

4  action.  Now, here it's filed with the original objection

5  asking for relief against parties who aren't even named,

6  essentially for just the reasons the Court raised.  They're

7  asking for a very broad base ruling and parties have not been

8  named.  And trying to bifurcate an issue where all authority

9  for bifurcation that the debtor's relying on essentially says

10 the parties agreed.  This is a practical way to resolve the

11 matter.

12          THE COURT:  So what you're asking me for then is you

13 say that this should be treated as a status conference pursuant

14 to the Court's original order and that, you know, everybody

15 should come back on another day and take up this issue and

16 don't take it up today?

17          MR. ENGLANDER:  That's exactly what I'm asking.  Let

18 the parties do what they've done very effectively so far and

19 that is work out -- reconciling the facts, coming up with

20 procedures, working on scheduling orders, things like that.

21          Your Honor, you're being asked to make a decision

22 which is going to be widely reviewed.  It's going to be focused

23 on.  It's an important issue, lots of policy concerns on it.  I

24 think that the Court would be well served to make a decision

25 like this on an adequately-developed factual record.  I don't

1  think that we have to go through a year of trial for every

2  issue.  But I think that the Court would be well served in that

3  way.

4        I don't think the debtor will be harmed or the other

5  creditors will be harmed in any way.  There's been no showing

6  of any sort of an exigency.  And, in fact, what we saw this

7  morning almost proves the opposite, that if the whole idea is

8  to let's get something resolved so that we can get matters

9  settled, what we just saw is the largest creditor in the case

10 settle out before any resolution.  So attorneys know how to

11 resolve matters without having the Court tell them which way

12 the Court is going to go.  And I think that everybody would be

13 well served by preserving exactly that dynamic.

14       So I would simply suggest that we go forward in the

15 ordinary way, develop the factual record and then let the Court

16 decide it as in let the parties present a proposed scheduling

17 order in a way to manage this process.  I would also suggest

18 that the Court ought to require some level of certainty that

19 all of the parties who are affected by this proposed ruling be

20 before the Court.  Like I say, I know we were brought before on

21 this one.  I don't know how many others are out there that are

22 similarly situate.  I think it's a matter of simple fairness

23 and due process that if people's administrative priority claims

24 are going to be at risk, that they be given notice of that

25 fact.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.

2          MR. ENGLANDER:  Thank you.

3          THE COURT:  Thank you, sir.  Yes, sir?

4          MR. CARRIGAN:  Good morning, Your Honor.  Daniel

5   Carrigan from McKenna Long and Aldridge for Bethesda Softworks

6   LLC.  Our particular client has a very small unsecured claim of

7   about $34,000.  It also has a 503(b)(9) for what we'll, for

8   purposes of the hearing, call a claim although it's an

9   administrative expense of about $3.8 million round figures.

10  The debtors, we are one of the creditors named in the 51st

11  omnibus objection.  Our claims have been the subject of two

12  other omnibus objections and those omnibus objections have been

13  resolved.  They were essentially a duplication of multiple

14  claims filed on the same -- for the same amounts.

15         The 51st objection does not make any reference to any

16  setoff claim against our client except that there --

17         THE COURT:  The 502(d) issue.

18         MR. CARRIGAN:  Well, it is, Your Honor, but in

19  discussions with the debtor, we are aware that they are

20  asserting a setoff claim for both pre petition and post

21  petition amounts due to the debtor.  Our -- I guess -- I

22  suppose it's a procedural question is this and it's raised in

23  large part by the settlement that was announced this morning.

24  What's the purpose of allowing or disallowing claims?  Well,

25  the first one is for voting on the plan.  But for the -- for

32

1  all practical purposes, that's irrelevant for our client

2  because we don't get to vote on the plan.  We have a $3.8

3  million 503(b)(9) claim.  We don't vote.  The only thing we can

4  do is object.  So that's not the purpose of this exercise.

5           The second purpose is for allowance -- of allowance

6  or disallowance is for distribution.  Now, the question that

7  was unanswered by the description of the settlement this

8  morning is when is the allowed amount of that claim, the $6

9  million 503(b)(9) claim going to get paid?  Under the plan as

10 it's currently proposed, it's our understanding that the

11 initial distribution date is going to be five days or

12 thereabouts after the effective date of the plan which means in

13 theory, given the schedule we have, that claim could get paid

14 before the end of the year in cash in full.

15          But what's proposed in these motions, and that's an

16 interesting question.  Should any of these claims be paid until

17 everybody's get paid?  But that's a question for the plan in

18 the next couple of weeks down the road.

19          But then the question becomes is what is it that the

20 debtor is, or actually it's the estate I suppose, it's not

21 really the debtor, this is the estate, and the estate is

22 setting up for a liquidating trust, what is it that seeks to be

23 accomplished by temporarily disallowing the difference between

24 what they call the preference or the preferential amount and

25 the 503(b)(9) claim?

1          If -- and that really -- and what happens to the rest

2    of it?  In our case, for example, it's 3.8 million is the

3    503(b)(9).  Let's say we, for purposes of argument, we deduct

4    the 100,000 bucks and that's temporarily disallowed, whatever

5    that means.  And then the $3.7 million is left.  Is that

6    allowed?  Is it not allowed?  Is it disallowed?  Is it in the

7    first initial payment date?  Do we have to wait the 120 days

8    after the effective date to find out whether or not it's

9    allowed or disallowed or is going to be challenged or whatever?

10   Does the temporary disallowance last to the end of the 90-day

11   period within which we have to be advised whether 502(d) is

12   going to be applied to our claim to hold up any distribution or

13   not?  What's the purpose of doing this?

14         And what happens to that piece of the claim that's

15   not temporarily disallowed?  And that's really the fundamental

16   question here is how fast this has to be done and all that

17   really revolves around what's the purpose of this exercise.  If

18   the purpose of this exercise is to determine whether or not the

19   plan is going to be feasible in that the estate has enough

20   money on the confirmation date to pay all allowed 503(b)(9) and

21   other 503(b) claims, then it is something that really needs to

22   be decided before we get to the confirmation date.

23         If it's for purposes of distribution and no

24   distribution is contemplated on account of 503(b)(9) or other

25   administrative claims until some time after the initial

**J&J COURT TRANSCRIBERS, INC.**

1  distribution date which at the earliest, if I understand it

2  correctly, is going to be a periodic distribution date which is

3  going to be after the 120 days of objection periods, we're down

4  the road a piece.

5          But the question that's not been addressed in any of

6  this as far as we can tell, although I believe in some of the

7  responses the estate has suggested that what's going to happen

8  is that as to the difference, the part that is not temporarily

9  disallowed, that it's not going to be allowed or disallowed and

10  so will come up on confirmation and I suppose they could argue

11  they don't have to take it into account to determine whether or

12  not 1129 is satisfied in terms of being able to paid allowed

13  administrative expenses on the date of confirmation.

14          And that's our question, Judge, is why are we doing

15  this?  And what is the significance of being temporarily

16  disallowed?  And what happens to the piece that is not

17  temporarily disallowed?  Thank you, Your Honor.

18          THE COURT:  Thank you, sir.  Any other party wish to

19  be heard?  Yes, sir?

20          MR. GOLDBERG:  Good morning, Your Honor.  Michael

21  Goldberg on behalf of Samsung.

22          THE COURT:  All right, Mr. Goldberg?

23          MR. GOLDBERG:  Your Honor, I don't need to repeat

24  what counsel has said because they eloquently stated the

25  position which we adopt.  I just want to make sure we've

1  already raised it in our papers and I want to make sure by not

2  coming up here and going through the same exact repetitive

3  argument that I'm not waiving anything for purposes of the

4  record and that our objections to this procedure is preserved.

5          THE COURT:  They are.

6          MR. GOLDBERG:  Okay.

7          THE COURT:  And then I've read your papers.

8          MR. GOLDBERG:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10         MS. MORRISON:  Good morning, Your Honor.  I'm Valerie

11 Morrison from Wiley Rein here on behalf of LG Electronics and

12 Envision Peripherals, part of the 51st and 52nd omnibus

13 objections.  My question procedurally is what happens in part

14 two of this proceeding?  Today they're asking for the Court to

15 make a decision on certain legal questions.  But what is part

16 two?  Is that an adjudication of preference liability?  The

17 debtors have represented to the Court and in their papers that

18 they're not seeking affirmative relief of any kind, that

19 they're simply filing this as a defensive mechanism.

20         But in the case of my clients, the amounts of the

21 alleged avoidance actions exceed the amounts of the 503(b)(9)

22 claims which leaves me with the question are the debtors then

23 not proceeding on the entire avoidance action?  Are they simply

24 proceeding on the amount for which they seek offset?  Or is

25 this part two an adjudication of their entire avoidance claim?

1  In which case if it is, Your Honor, then really what this is is

2  an adversary proceeding because eventually, they are going to

3  want to recover that avoidance action unless, of course,

4  they're waiving it which I don't think they are.

5       THE COURT:  Well, they would have to file that as an

6  adversary proceeding if they want to pursue their remedies

7  under Section 547, right?

8       MS. MORRISON:  I think that they would have to file

9  this whole thing as an adversary proceeding, Your Honor,

10 because otherwise, my clients are subjected essentially to two

11 pieces of preference litigation.  Or are they going to simply

12 adjudicate the entire preference matter in the context of the

13 contested matter and then later seek by ministerial act

14 eventually of an order to convert that into a judgment that's

15 actually recoverable?  If that's the process they're employing,

16 Your Honor, then what they're really doing is using the

17 contested matter process to effectuate an adversary proceeding

18 which is impermissible under Rule 3000(7)(b).

19      THE COURT:  All right, thank you.

20      MR. GRAY:   Good morning, Your Honor, William Gray.

21 I represent Metra Electronics Corporation and Tamrac Inc.   I

22 would just -- first of all, just to make sure, I'm not sure I

23 heard it on the record but I do believe 502(d) requires an

24 adjudication.  It talks about when a transferee is liable.

25      My point, though --

1          THE COURT:  We're going to get into all that later I

2  think.  We're talking about the procedural stuff now.

3          MR. GRAY:  Well, I understand but I think that goes

4  to the procedural part.  And what I would add is more bringing

5  back -- to bring us back to what is before the Court.  We've

6  talked about facts.  Facts have to be established by evidence.

7  What's before the Court?  Basically pleadings.  The debtor has

8  asserted in their pleading.

9          I'm sorry, if I could back up.  I'm on the 51st

10  omnibus objection which is 502/503.  So the premise of the

11  objection in the 51st is that there's an avoidable preference,

12  has to be.  The debtor does say that they have to establish a

13  prima facie case of that and they, I believe, allege that their

14  allegations of it in the objection is that case, is the prima

15  facie case.

16          Well, we have filed an opposition.  Our opposition

17  denies that there's an avoidable preference.  So what's the

18  Court left with as evidence?  Well, their pleadings, our

19  pleadings.  Does that establish the fact of avoidable

20  preference?  I say it does not.  And since the premise of their

21  objection and the relief to temporarily disallow is the

22  existence of an avoidable preference, there is no prima facie

23  case of that at this point in the proceeding.  So, therefore,

24  it should be disallowed.

25          THE COURT:  All right, thank you.


**J&J COURT TRANSCRIBERS, INC.**

1          MR. GRAY:  Thank you.

2          THE COURT:  Mr. Starr?

3          MR. STARR:  Your Honor, Leonard Starr representing

4   Namsung America.  We provided manufactured electronic parts to

5   the debtor.  During the 20-day period of time prior to the

6   filing we have a 503(b)(9) claim for $204,364.26.  The debtors

7   have filed their 51st omnibus objection and have simply alleged

8   that we have an avoidable preference in the amount of $93,174

9   which they seek to temporarily avoid.

10          I agree with the speakers before and incorporate all

11  of their arguments and probably those that will follow me.  The

12  allegations are just that, simple allegations.  There's no

13  facts supporting that even though in their brief the debtor

14  stated and I quote, "The debtors thoroughly reviewed and

15  analyzed the transfers made to the claimants within 90 days of

16  the petition date and for the two-year prior to."  But there's

17  no facts that are alleged.  Even when I was in high school, my

18  high school teacher wouldn't let me get away with that in math

19  class.  They said show me your work, show me your work.  How

20  can that be a prima facie case where there are no factual

21  allegations?  That is, I submit to Your Honor, that that is not

22  a prima facie case.

23          The detrimental effect of allowing the debtor to do

24  what they're trying to do has been touched on earlier and that

25  is the ability to affect the distribution under the plan which

1  has not yet been confirmed but which is coming up for a hearing

2  as I understand this month.  If we are cut out because of this

3  "temporary disallowance," it allows this motion to affect the

4  distribution process required by Section 1129 and puts us at

5  risk, as we said earlier, if there are any distributions made

6  for administrative expenses unless there is adequate protection

7  that these claims can be, in fact, paid.  We would ask that the

8  Court deny the motion of the debtors.

9          THE COURT:  And how would you propose we proceed then

10  to resolve these issues?

11          MR. STARR:  I have no objection really to resolving

12  the issues.  What bothers me is coming to an order that

13  prejudices a legal ruling on the legal aspects of it doesn't

14  bother me.  It's allowing, after getting to that point, the

15  Court going to an order which does adversely affect the people

16  that does bother me.  So I would suggest to the Court that if

17  it does rule on the legal issues, that it crafts some way to

18  protect those people.  Perhaps there's been one motion filed

19  for an escrow to be created to pay administrative expenses, the

20  ones that were temporarily disallowed.

21          THE COURT:  All right, I understand your issue, thank

22  you.  Anybody else wish to be heard?  Is there anyone on the

23  phone that wishes to be heard?  All right, Mr. Galardi, you may

24  respond.

25          MR. GALARDI:  Your Honor, first, I haven't heard --

**J&J COURT TRANSCRIBERS, INC.**

1  well, I did hear, due process once but let me address that

2  first.  Obviously, everybody who received a claims objection

3  has had notice and opportunity to be heard.  Second, Your

4  Honor, you've asked the question I think three times to three

5  different people, well, isn't it the case that if we proceeded

6  separately, this would affect your rights?  And the answer is

7  yes, law of the case.

8       And this is exactly, again, everybody here knows I

9  was the Plastech attorney that came up with this, and the fact

10 of the matter is everybody complained because I went after one,

11 perhaps choosing the weakest link and they all objected saying

12 oh no, that's not fair because then my legal rights will be

13 affected.  So the reason that we did it this way this time in

14 the first instance is because we understand that everybody has

15 a voice to be heard on the two legal issues.

16      And so it is law of the case.  It's not a factual

17 determination and we thought the best way to give everybody

18 notice and opportunity to be heard on the legal issue.  And I

19 want to stress, this is only two legal issues I think today.

20 On those legal issues is to bring in as many of the claimants

21 as we possibly could.  Now, I understand Alliance has

22 complained that we've given them four objections.  They're also

23 in bankruptcy so we didn't add them and theirs is a more

24 complicated situation but they're aware of the docket and the

25 objection.  They're not even involved in this 48 through 51 but

1  they're here as a friend of the Court -- or 52.

2        But the fact of the matter is we think we satisfied

3  due process.  Everybody knows.  We've said this -- I think I

4  even said it the first day of hearing that we would be doing

5  these kind of procedures and it is also a procedure that Your

6  Honor has already used when we did the 503(b)(9) to sort of

7  come up with the threshold issues on what's the definition of

8  goods.  So we think it's not a due process issue.

9        Now, let's get to the adversary -- the advisory

10 opinion.  Is there a justiciable issue?  There is absolutely a

11 justiciable issue before Your Honor on both of these motions.

12 We've said we've had a receivable.  I'm going to go through the

13 pleadings rules because people don't seem to go back to Federal

14 Rules of Civil Procedure and throw out -- they don't know

15 facts.  But there is, in fact, a justiciable issue.

16        First, Your Honor, if we go back to what we've done,

17 they have filed a claim.  Let's ignore the fact that some of it

18 is prepetition, unsecured claim for which it's prima facie

19 valid.  503(b)(9) claims are not prima facie valid.  They still

20 have a burden.  But we're going to assume they have those

21 claims.  And by the way, we're also going to assume they have

22 503(b) claims.  We've assumed all the facts.  Now, what do we

23 have to do?  Well, we are seeking an affirmative defense, not a

24 counterclaim, not a cross claim.

25        And the rules of evidence -- I mean the Rules of

**J&J COURT TRANSCRIBERS, INC.**

42

1 Civil Procedures say, in Rule 8 affirmative defenses, those

2 things that we put at the end, failure to state a claim,

3 laches, blah, blah, blah, you never plead the facts there.

4 What it says is in general, when responding to a pleading,

5 treat their claim, a party must affirmatively state any

6 avoidance or affirmative defense and gives a list.  You don't

7 have to even plead facts when you assert an affirmative

8 defense.

9        We went further in the 503(b).  We pled facts.  We

10 said you had an avoidable transfer.  They can dispute those.

11 But if we had done it as a counterclaim, we would have gotten

12 the same on a motion to dismiss our counterclaim.  You would

13 have to assume those facts are true.  All we've done in this

14 complaint or all we've done in this objection is you get your

15 validity, we'll assume everything you say is true, we get our

16 avoidance action, assume what we say is true and let's just

17 deal with the legal issues.  There's no genuine issue yet of

18 material facts.

19        Yes, as you asked Mr. Johnson here, if it turns out

20 we don't have the preference, this is going to be irrelevant to

21 him.  If it turns out he doesn't have a claim, our objection is

22 irrelevant.  He's asserted a claim, we've got an avoidance

23 action and what do you do?  You play it out.  But, we have an

24 avoidance action and you are entitled, without pleading all of

25 the facts, to say whether this affirmative defense of setoff or

43

1  of a preference is sufficient to knock down or reduce your

2  claim.  And we've presented that legal issue.

3        There's a justiciable issue.  Indeed, we took a

4  narrow view on 503(b)(9).  If we had one dollar, a 502(d), we

5  could have argued the entire claim.  We just tried to reduce

6  it.  We took it as a very simple affirmative defense because we

7  don't think we're administratively insolvent.  So, we think

8  we've met the pleading requirements of an affirmative defense.

9  We think we've gone beyond that and we'll talk about that when

10 we come to 503(b)(9).  But, on setoff, setoff is a traditional,

11 affirmative defense.  You make an allegation, you have it.  You

12 don't even in a pleading, if this was a complaint, have to go

13 through the details.  We did.  We went through the details and

14 said, and in fact we gave Mr. Johnson -- he may not like the

15 adequacy of the information -- we gave Mr. Johnson our

16 receivables.

17       So, we've taken a litigation position.  Whether those

18 receivables were prepetition, whether they were 503(b)(9)

19 period or whether they're post-petition, our view is 558 says

20 we can offset.  Their view is, you've got to go first to the

21 unsecured claim.  The only issue Your Honor has to say is,

22 okay, but which of those positions is right?  How do we decide

23 that issue?  That's what we think we've presented in 51 -- in

24 48 and 49.  And in 51 and 52 we've raised the same argument I

25 raised in <u>Plastech</u>, it's the cover of the <u>ABI Journal</u>,

**J&J COURT TRANSCRIBERS, INC.**

1  everybody says <u>Ames</u> says this, that and the other thing.

2         Okay, we've raised the issue in the Fourth Circuit.

3  Your Honor's going to have to decide that issue.  We're not

4  going away.  We think those cases are wrong.  That's all there

5  is to it, and we're entitled to do that.  And that's a simple,

6  legal issue.  And it is an issue that affects everybody in this

7  courtroom in some way, shape or form at this particular time

8  without resolving the facts, because they've made allegations

9  of claims, we've made allegations of avoidance actions or

10 affirmative defenses.  So, there's a justiciable issue.  They

11 know it, we know it and it has significance.

12        And as to the beginning of an adversary proceeding,

13 the fact of the matter is, Your Honor, we are not seeking

14 affirmative relief.  We are not seeking to recover the money.

15 We are not seeking to get back any sort of payment.

16        Now, the lady who came up says yes, there is one

17 claimant that we might have preference actions that are greater

18 than, but we are not by this action seeking that.  And

19 presumably when we get through this, they will say our

20 preference analysis is flawed and it's far greater.  But, let's

21 get to the one issue, because I'm most concerned about one

22 thing, as they've all pointed out, and we'll not argue

23 confirmation today, what would we have to distribute on

24 confirmation?  You don't distribute undisputed claims.  So,

25 instead of waiting until this point, what I think the people

1  want us to do is, we'll just make the payments or set it aside

2  and don't raise the objections.  The only way to get to an

3  actual distribution is to figure out what the claims are.  This

4  is an expedient way to get there.  Otherwise, as you've asked

5  everybody, well, what's the alternative?  Okay, we would start

6  probably thousands of adversary proceedings, seek a partial

7  summary judgment with an affirmative defense.  Say everything

8  you say is true and I have this defense and we would never get

9  to a distribution or a confirmation, and that's nice and you'll

10 pay us legal fees to remain here for another year or two and

11 the committee another year or two, but that's not the efficient

12 way to run this case, not that efficiency overrides due process

13 or adversary proceedings or advisory opinions.  But, the fact

14 of the matter is, we've not violated a single rule of civil

15 procedure, of 3007 which allows us to raise the claims as a

16 claim defense.  It is a contested matter.  There is a summary

17 judgment aspect to this, a partial summary judgment.  It is not

18 unusual to issue interlocutory decisions.  And we're not

19 violating the justiciable Article 3 issue because there is a

20 dispute on both of these motions, and 7001 is simply not

21 implicated since we're not seeking affirmative relief.

22      So, we would ask to proceed on this method and head

23 -- and move on to the legal arguments on the setoff and the

24 503(b)(9).  Thank you.

25      THE COURT:  All right, thank you, Mr. Galardi.  All

1 right, the Court --

2          MR. CARRIGAN:  Your Honor, may I be heard again in

3 response to Mr. Galardi?

4          THE COURT:  Very, very short, Mr. Carrigan.

5          MR. CARRIGAN:  Thank you, Your Honor.  I believe that

6 counsel said that you don't distribute on undisputed claims.  I

7 believe that probably was a misstatement.  He had in mind that

8 you don't distribute on disputed claims.  But, what's

9 conspicuously absent from the debtors' or the estate's response

10 is, what happens to the -- what's the purpose of the temporary

11 disallowance?  I think we get that.  That's not going -- so

12 that piece is not going to be eligible for distribution on the

13 confirmation date, and it's not going to be included in the

14 calculation for feasibility, I suppose.  But, what about the

15 rest of it?  The conspicuously absence is, what about the rest

16 of it?  And conspicuously absent also was, what about the six

17 million for the creditor that settled?  Are they going to get

18 paid on the confirmation date?  Those two are still

19 conspicuously absent.

20          Secondly, as the Court noted earlier in the context,

21 as we walk through it, of the civil procedure, this is -- I

22 believe you analogized it to the summary judgment process, in

23 which you assume all the facts favorable to the opposing party.

24 And, in fact, in this case, pursuant to the Court's order, our

25 clients have filed affidavits in the form of the claim form for

1  503(b)(9)s and in the form of the claim forms under penalty of

2  perjury for unsecured claims that establish our claims.

3        So, what we have is a summary judgment motion that's

4  opposing ours without affidavits, without any testimony,

5  without anything.  And therefore the facts are conclusively,

6  for purposes of the motion, established in our favor which I

7  would respectfully suggest that the amounts and everything else

8  of our claims are established for purposes of this motion and

9  therefore are allowed.

10       THE COURT:  All right, thank you, Mr. Carrigan.

11       MR. CARRIGAN:  Thank you, Your Honor.

12       THE COURT:  All right.  The Court is going to allow

13 the proceedings to go forward.  The Court is satisfied that the

14 due process concerns have been addressed.  There has been

15 notice and there has been obviously an opportunity for a

16 hearing.  We're going to have that hearing today, and the

17 parties are here.

18       The due process, as the Fourth Circuit has pointed

19 out, is a flexible concept and certainly by all means has been

20 satisfied to the Court's satisfaction.  The Court's also

21 satisfied that there is a justiciable controversy before the

22 Court concerning the affirmative defense that the debtor seeks

23 to raise to the claims that have been filed, as well as the

24 request for administrative expenses under 503(b)(9).  And so

25 the Court thinks that it is a simple legal issue that needs to

1  be resolved.  Today there are two of them, and that the Court

2  can resolve those, much like the Court did previously with

3  regard to the question of goods versus services in the concept

4  of 503(b)(9) in order to resolve the legal issues so that the

5  factual issues in the rest of the case can go forward.

6         The Court's also satisfied that Rule 7001 is not

7  implicated as the debtor is not seeking any affirmative relief.

8  And, Ms. Morrison, you will not be subjected to any kind of a

9  claim against your client, nor will anybody else affirmatively

10 unless there's an adversary proceeding brought.  But, this is

11 done by way of affirmative defense which is just to -- by way

12 of defense to claims and request for payment of administrative

13 expenses and not by way of affirmative relief.

14        I think that it's important what Mr. Galardi said

15 that he could have brought this against one person and gone

16 forward, as done in Plastech.  But, by doing it under this kind

17 of procedure, it allows everyone's voice to be heard.  It's

18 more inclusive, and I think that that's a good thing rather

19 than a bad thing.  And so I'm going to bifurcate proceedings

20 pursuant to the request of the debtor and allow these two

21 issues to go forward here this morning.  So, with that, Mr.

22 Galardi, you may proceed.

23        MR. GALARDI:  Thank you, Your Honor.  I'll take up

24 the legal issue, I guess raised by the 48th and 49th omnibus

25 objection first, the setoff issue.

1            THE COURT:  That's what I would like to do.  And then

2    we'll take up the 502(d) issue second.

3            MR. GALARDI:  Your Honor, again, I think that all of

4    the sort of legal principles for the most part, or I'm going to

5    cite what I think the legal principles are that all parties

6    agree to.  One, we agree that 553 preserves a creditor's right

7    to setoff as under state law.  And nothing here -- if there are

8    differences under state law, we're not trying to take those

9    away from anybody.  We will presume that various creditors in

10   this room have rights to setoff under 553.  I will also point

11   out that I don't think they disagree that setoff is an

12   equitable remedy that the Court does have some discretion

13   whether to grant or not grant on any particular instance.  You

14   still have to make a motion, you still have to lift the stay --

15   which one person already has admitted that they did not do and

16   exercise their setoff rights, so we'll come back to them at

17   some point -- and that it is subject to the discretion to lift

18   the stay and to exercise their rights of setoff, and that 553,

19   we'll even admit under 506(a), gives them a secured claim to

20   the extent of the setoff.

21           That does not answer the fundamental question is,

22   what property secures that under 506(a)?  It does not say

23   whether you have to -- you get it to exercise it with respect

24   to the most advantageous to you, i.e. the little unsecured

25   claim, as I say, gets paid in little itty bitty bankruptcy

1   dollars, or whether you could be forced under a marshaling or

2   an equitable standard to exercise that right with respect to

3   other claims.  That's the open issue, it seems to me, from the

4   creditors' perspective.  558 on the other hand, and I don't

5   think people -- well maybe they do disagree with those cases --

6   but 558 says the debtor has all the rights and does not waive

7   those rights, and then we have cited cases that say 558, you

8   are permitted to use prepetition receivables to offset

9   post-petition.  And I'm using petition date, because that seems

10  to get confused in a number of things.  I know it will become

11  important when we get to 503(b).

12          For the purposes of this setoff argument, what we

13  have sought to do is to say, we have receivables, just like we

14  did with HP.  We have prepetition receivables and we have

15  post-petition receivables.  But, from the debtors' perspective,

16  our view, our legal proposition is, it really doesn't make a

17  difference from our view because we should be able to set them

18  off for the benefit of the estate.  So, we'll go what I call

19  top down.

20          The most valuable claims we would like to set off,

21  starting with administrative or 503(b)(9), and only if we have

22  a leftover do we want to go to unsecured.  Not surprisingly,

23  everybody in this room wants to go in exactly the opposite

24  order.  They want to say, let's take the receivables, let's do

25  the prepetition unsecured, because I know I'm not going to get

1    more than 100 cents on the dollar.  I'm taking it from

2    unsecured.  Then maybe you go to the 503(b)(9)s, but certainly

3    don't let us go over the petition date hurdle and use them

4    there.

5              Your Honor, there is no section of the Bankruptcy

6    Code that addresses that.  That's our point.  The question to

7    Your Honor is, who decides it?  Creditors say they get to do it

8    at will.  They get to pick.  That somehow we would violate 553

9    if we did it the way we're asking.  We say the debtor -- as the

10   debtor's obligation to maximize value to the estate and under

11   558 we should get to do it in the way that maximizes value to

12   the estate, and if we have a receivable that we could force

13   them to pay us 100 cent dollars, we should use it to offset

14   what we would have to pay them, 100 cent dollars.  That's the

15   fundamental legal issue.  And in that issue, one new section of

16   the Bankruptcy Code has caused even more of a problem, because

17   553 talks about pre-bankruptcy claims.  And 503(b), though

18   people want to say it, and I don't know how it could be clearer

19   on its face, it is entitled to administrative priority, but it

20   is a prepetition claim.  503(b)(9) says, it must arise in the

21   20 days prior to bankruptcy.

22             So, our first argument is, if you have a prepetition

23   receivable, we think you can bring it to the post-petition

24   period.  But, even if you can't, even if Your Honor wants to

25   draw this big line here and say you can't get over that

1  petition date, the fact of the matter is, a 503(b)(9) claim,

2  though it's an administrative expense, is a prepetition claim.

3  And we think we could setoff our receivables against a

4  503(b)(9) claim.  They say no, we say yes.  We leave it to Your

5  Honor to decide whether we can do that.  We think the code does

6  not require both prepetition, post-petition for the debtor.  It

7  does for them.  But, even if it does for them, why should they

8  get both the 503(b) -- you know, why should they get a

9  receivable, a prepetition receivable to select the least

10  valuable when, in fact, 503(b)(9) is a prepetition claim.

11        That's the simple legal issue.  Our view is, Judge,

12  you have the discretion to decide that.  One, debtor thinks we

13  can go all the way to 558 and go all the way.  They say no, I

14  can do it against my claim.  And I think the Court, because it

15  has total control over how to equitably allocate the

16  receivables, if you so choose, can say we can go all the way to

17  the post-petition or I don't want to draw that line, but it

18  certainly can go to the 503(b)(9) and it's consistent with the

19  policies of the Bankruptcy Code.  Because if you think of it,

20  and I said this last night to someone, think of -- if the

21  bankruptcy could be done in one instant, what would you do?

22  Will you get all of the cash back by way of preferences and

23  everything else, and then you distribute it according to the

24  priority scheme?  What this is, is a concession of time.  The

25  setoff rules say, okay, I'm not going to bother, you're going

53

1  to take it back or in certain cases, I'm not going to take 100

2  cent dollars, because why would any creditor give me back 100

3  cent dollars only to get a penny?  What we're saying is, you

4  owe us the money, we can get it back.  Offset from the debtor's

5  perspective is a valuable right, because it's again a

6  concession to the shortness of life.  I don't want to have to

7  sue you, go through the collection risk to bring the cash back

8  in so then I could really satisfy the Bankruptcy Code priority

9  scheme.  That's all we're trying to do.  We're trying to bring

10 that cash in and use it to pay the claims that are highest in

11 the priority first and actually go through the distribution

12 schemes.

13        Congress has said that an unsecured creditor can use

14 their setoff and not have to give back that money, and I

15 understand that.  That is what the code says.  But, there's

16 still an equitable issue, do you bring it all back?  Again, if

17 this case were administratively insolvent and where Plastech

18 was worried about that, every creditor in here who had an

19 administrative claim would be supporting what we're doing.

20 Bring that money back, because you don't want an

21 administratively insolvent case.  They're just not worried

22 about that in this case.  But, the same principle applies,

23 because only by bringing back those receivables and using them

24 to pay the highest priority claim do you actually live to the

25 spirit of the Bankruptcy Code.  Priority claims, administrative

54

1   claims, all get paid before people get a distribution on the

2   unsecured claim.

3        So, Your Honor, we would ask Your Honor to rule, one,

4   that a receivable, whether it's prepetition or post-petition

5   can be used to pay down or to offset against an administrative

6   claim.  And by administrative claim I mean a post-petition

7   administrative claim.  If you're not going to go that far and

8   you see this, I call it the imaginary wall of the petition

9   date, then there is simply no logical reason under 553 why it

10  cannot be used to offset the 503(b)(9) claim, because it is a

11  prepetition claim.  It may get an exalted status, but it is

12  still a prepetition claim.  And what they're asking you to do

13  is to equitably allow them to marshal their claims to the

14  detriment of the estate and only let us use it on their

15  prepetition, unsecured claims.  That again is asking for

16  equitable relief from the Court.  And I'm not sure the basis

17  for such equitable marshaling, in their instance, when it can

18  prejudice other creditors, such as administrative creditors,

19  such as 503(b)(9) creditors.  We're doing what we think the

20  Bankruptcy Code requires.  Get all of the assets and make sure

21  the highest priority claims get paid first.  Thank you.

22        THE COURT:  Thank you, Mr. Galardi.  Does any party

23  wish to be heard in connection with the debtor's motion?  Mr.

24  Epps?

25        MR. EPPS:  Good morning, Your Honor.  A.C. Epps Jr.,

**J&J COURT TRANSCRIBERS, INC.**

1  on behalf of Digital Innovations.  I am also authorized by Mr.

2  Bliley, he represents South Peak and NYCO, to speak on his

3  behalf, as well.

4          THE COURT:  All right, thank you.

5          MR. EPPS:  Your Honor, my remarks actually go to both

6  issues.  I think Mr. Galardi said he was speaking only to the

7  setoff, but I think his remarks go to both issues, as well.  So

8  rather than burden the Court with speaking twice, if you would

9  let me just speak once and I'll not speak to the other motion

10 --

11         THE COURT:  I would like to focus on the setoff issue

12 before we get to 502(d), because I see those as very different

13 issues.

14         MR. EPPS:  Well, they certainly are different issues

15 in the sense that they have different code provisions that

16 govern.  And I do agree to that, and I think we admitted as

17 much in our filing.  But, Your Honor, the principle, I think,

18 is the same.  The principle is that we have claims and we have

19 administrative expenses.  And administrative expenses are not

20 claims, and administrative expenses should not be offset

21 against claims.

22         THE COURT:  So, you don't think that the definition

23 of claim in the Bankruptcy Code is sufficiently broad enough to

24 encompass payment of an expense that's due?

25         MR. EPPS:  I understand your argument, but I think

1 that the _Ames_ Court got the issue correct.  The _Ames_ Court, in

2 my reading, addressed that question front on and said they

3 understand the argument, but that isn't sufficient to put them

4 all in the same package together, and that administrative

5 expenses are a different breed of cat from a claim.

6          And what is happening here, if the debtor gets its

7 way, is that administrative expenses are going to be absorbed

8 into the vortex of the prepetition estate, which this Court has

9 to administer.  And I believe that the fact that they are, in

10 this case, they may be setoffs as opposed to 503(b)(9) doesn't

11 change the fundamental issue.  Our clients have run up

12 administrative expenses in one form or another which haven't

13 been paid at this point.  And now what's going to happen is

14 contrary to -- if the debtor gets his way, contrary to what the

15 code says that they should be paid at confirmation, they will

16 not be paid at confirmation.  There will be an effort to offset

17 them against a prepetition claim that goes the other way.  Now,

18 the dollar effect of this is pretty substantial I think as the

19 Court can understand by reading the disclosure statement.  They

20 were offsetting ten to 13 cents against a buck.  And I submit

21 to the Court that that is not, as _Ames_' Court said, that is not

22 the way the code should be read, and that the expansion

23 definition of claims is inappropriate.

24          But, I would like to tell the Court also what is

25 going to happen if the Court does this.  We've seen this in

1  other cases.  What we have when we have an administrative

2  expense is the right to be paid at confirmation.  Now, what is

3  being asked is for that right to be abrogated and the

4  administrative expense that is subject to a theoretical right

5  of setoff can be held until the setoff issue is resolved in the

6  fullness of time by this Court.  That can be years.  Indeed, we

7  have cases where it has been years.

8         But, it's more than just the timing.  The two other

9  issues that are effected here, number one is, will there be

10 money to pay those administrative expenses two years from now?

11 We don't know.  The Court doesn't, and no one knows.  There's

12 no provision to put that money away for the rainy day.

13        And the second thing is, which as we've seen in other

14 cases just as well is, what the Court is being asked to do is

15 to give the debtors a hammer, and none of these administrative

16 expenses will be ever paid at 100 cents on the dollar if the

17 Court grants this motion.  In the practical world, the Court is

18 being asked to completely upset the balance of power in the

19 claim objection process because the administrative expense,

20 which was incurred in your reliance upon the code, would have

21 been turned on its ear.  And we'll have to wait until these

22 other issues are decided before any administrative expense is

23 paid.

24        Now, in addition -- well, I'm sorry.  I will wait if

25 the Court wants to do this in two pieces.  The rest goes to the

1  502(b)(9).  But, I don't believe that there is substantial

2  difference in what's really being asked.  I understand the

3  statutory issue is quite different, but I don't think it's --

4          THE COURT:  Your argument on the setoff is that the

5  claims are not mutual.

6          MR. EPPS:  They're not mutual and that there are

7  claims versus administrative expenses, which I believe under

8  Ames is inappropriate to be matched up against each other.  And

9  furthermore, I would ask the Court in this regard that if the

10 Court does not agree with the Ames Court in this respect, that

11 -- because I think Ames is the clearest voice that we have so

12 far on these issues, that it be addressed because -- by the

13 Court, because I do think that's where we are --

14         THE COURT:  All right, thank you.

15         MR. EPPS:  -- is at that essential bifurcation.

16 Thank you.

17         THE COURT:  Thank you.

18         MR. HOFFMAN:  Good morning, Your Honor.  Matthew

19 Hoffman from the firm of Duane Morris representing Audiovox

20 Corporation and Sima Products Corporation with regard to their

21 responses to the 50th omnibus objection.  I'm a member of the

22 Bar of the Commonwealth of Pennsylvania and the State of New

23 Jersey appearing before the Court pursuant to Local Rule 2090,

24 with my colleague Denyse Sabagh, who is a member of the bar in

25 this Court.

59

1          I'm going to make a series of alternative arguments

2   today.   And as Mr. Galardi had said, we're really just going to

3   take the reverse of the positions they've taken.   To start

4   with, we argue that the debtors may not set off claims based on

5   receivables against any administrative expense claims, whether

6   post-petition or prepetition 503(b)(9).   In support of that

7   proposition, we would look to the <u>Ames</u> case, which has already

8   been cited and the recognition that administrative expense

9   claims under 503(b) generally are not to be treated the same as

10  unsecured claims.   I would also point that the <u>Plastech</u> case

11  and the <u>TI Acquisition</u> case, which recognize that with regard

12  to 503(b)(9) claims in particular.

13         In the alternative, to the extent the Court finds

14  that the debtors may set off receivables against administrative

15  expense claims, to start with, we would argue that

16  post-petition admin claims can only be set off with

17  post-petition receivables, receivables arising under

18  transactions that occurred post-petition.   To permit the

19  debtors to set off prepetition receivables against these

20  post-petition receivables would undercut the principle of

21  mutuality underlying the Setoff Doctrine, and we believe

22  there's case law in support of this.   The decision in <u>TSLC1</u>

23  <u>Inc.</u> 332 Bankruptcy Reporter 476, a 2005 case in the Bankruptcy

24  Court for the Middle District of Florida, where the creditor

25  held both prepetition, general unsecured and post-petition

**J&J COURT TRANSCRIBERS, INC.**

admin claims.  The Court required that the setoff of

prepetition receivables be as against the prepetition claim

before going to admin claims.  We believe this case

distinguishes the PSA decision upon which the debtors relied in

their objection and upon which the ABC-Naco decision also

relied, which is another case that the debtor cited to in their

objection.  In the PSA case, the debtors -- or the creditor

rather -- only held admin claims, so there were no prepetition

claims against which to offset the prepetition receivables.

        Now also, to the extent the debtors can set off

receivables against admin claims, this time with regard to

503(b)(9), we would say that the debtors need to setoff

prepetition receivables first against general unsecured claims

prior to going after the 503(b)(9) claims.  Most of the case

law that the debtors cite to in support of their proposition is

pre-BAPCPA and we believe that Congress made clear that 20-day

claims are entitled to a special recognition.  That's also what

the Second Circuit Court of Appeals found in Ames and what the

Bankruptcy Court in the Eastern District --

        THE COURT:  I thought the Ames case didn't reach the

503(b)(9) issue.

        MR. HOFFMAN:  Right.  That was with regard to just to

503(b) claims in general and admin claims.  The Plastech case

did recognize the special treatment that 503(b)(9) claims are

entitled to.  And I would also point to the TI Acquisition case

**J&J COURT TRANSCRIBERS, INC.**

1  that's been cited in the papers.

2         We certainly understand why, you know, the debtors

3  want to do what they're trying to do, to set off against the

4  higher priority claims.  But, we don't believe that the Court's

5  equitable powers to do so are enough to really make that step

6  in the face of congressional intent, and also case law in

7  support of the proposition that we're stating.

8         Finally, in the alternative, if the Court will not,

9  just by rule, setoff prepetition receivables, first against

10  unsecured claims then against 503(b)(9) claims, we would argue

11  along the lines of the mutuality underlying the setoff

12  doctrine, basically that receivables arising from post-petition

13  transactions be used to offset post-petition admin claims,

14  receivables arising from transactions occurring within the 20

15  days prior to the petition be used to offset 503(b)(9) claims

16  and anything from before that be used to offset general

17  unsecured claims in the alternative and as an equitable

18  solution.

19         So, basically arguing the opposite and requesting the

20  opposite of what Mr. Galardi asked for, we're asking first that

21  no admin claims be offset by receivables.  Then if they're

22  going to be, no post-petition admin claims be offset by any

23  prepetition receivables, that prepetition receivables be used

24  to offset 503(b)(9) -- I'm sorry -- general unsecured claims

25  before 503(b)(9) claims, or in the alternative that they just

1  go based on timing.  You know, post-petition versus

2  post-petition, 20-day versus 20-day, and general unsecureds

3  with everything before the 20-day claims.  Thank you, Your

4  Honor.

5           THE COURT:  Thank you, Mr. Hoffman.

6           MR. LEVY:  Good morning, Your Honor.

7           THE COURT:  Good morning.

8           MR. LEVY:  Fred Levy, Olshan Grundman.  My admission

9  pro hac is pending.  I'm here with Mona Murphy of Akerman

10 Senterfitt, our local counsel.

11          THE COURT:  You may proceed, sir.  Thank you.

12          MR. LEVY:  Thank you, Your Honor.

13          Your Honor, we represent two creditors in this case

14 for the purposes of this part of the argument.  Thompson Inc.,

15 which has a $283,000 receivable asserted against it, a general

16 unsecured claim of 281,000 and a 503(b)(9) claim of 446,000.

17 We submitted a response to the objection on the docket at

18 5,518, part of responding to the debtor's 48th omnibus

19 objection.

20          In addition we're representing On Corp. in

21 conjunction with Korea Export Insurance Company.  On Corp.,

22 which filed the underlying claim, has a $380,000 receivable

23 asserted against it, has filed a $1.7 million general unsecured

24 claim, and it has a $7.7 million 503(b)(9) claim.  And Mr.

25 Galardi has presented an interesting argument to this Court.

1  But, I think boiled down to its essence, he would like to go

2  back before BAPCPA before 503(b)(9).  Because if we were in

3  that time and we were before Your Honor, the debtor would be

4  offsetting the receivables against general unsecured claims,

5  and that's the way it was always done.  Whether putting aside

6  the argument of pre to pre, post to post, that's the way it was

7  done.  You have the receivable, you have the general, unsecured

8  claim, that's what you'll be talking about.  But, that's not

9  where we are today.

10      Congress has amended the Bankruptcy Code.  Congress

11  has determined its policy of equitable distribution includes

12  giving previously general unsecured creditors a bumped up,

13  elevated admin claim for those 20-day goods.  Congress has

14  determined that it enhances the overall purpose of the

15  Bankruptcy Code to give suppliers those claims.  And as

16  Colliers has said, although it's not articulated so well by

17  Congress, but what that does, it encourages suppliers to deal

18  with a distressed company.  And that's one of the things that

19  the Bankruptcy Code has tried to do.

20      Now, with the motion before you, the 503(b)(9) claim

21  will be depressed and treated the same as a general unsecured

22  claim.  There will be no distinction and no difference in

23  distribution for the 503(b)(9) claim and the general unsecured

24  claim.  Suppliers will get no benefit from 503(b)(9).  In fact,

25  what the debtor is doing is eliminating 503(b)(9).  The debtor

1 is asking Your Honor to substitute your judicial discretion for

2 Congress' intent in the Bankruptcy Code.  And we know that

3 Congress gets to write the laws and Congress gets to determine

4 what is equitable in bankruptcy distributions.

5       Bankruptcy is not about equal distribution to all

6 creditors.  It's about equitable distribution to all creditors.

7 And that equitableness is determined by the priorities of the

8 Code -- in the Code, and one of those priorities is 503(b)(9).

9 So, to treat a 503(b)(9) claim the same as a general unsecured

10 claim violates Congress' priorities.

11       THE COURT:  Well, would the debtor have the right to

12 set off a claim that it has against a priority claim?

13       MR. LEVY:  It has the right to set off, but the issue

14 before Your Honor is the allocation when there are multiple

15 claims.

16       THE COURT:  Well, let's say that a creditor had a

17 priority claim and a general unsecured claim, could the debtor

18 offset against the priority claim?

19       MR. LEVY:  Not if the creditor opposed it.  And Mr.

20 Galardi and the debtor here is saying what authority -- when

21 they look at the code, they say there's no statutory authority.

22 Then they think, what is a case that allows the debtor or Your

23 Honor to decide what the allocation should be?  What is that

24 case?  Where is the authority to do that?  They cite one case,

25 In re Martinez.  In re Martinez is absolutely distinguishable

1  from what is before Your Honor.  <u>In re Martinez</u> says that in a

2  reorganization or rehabilitation scenario, the Court has the

3  power to allocate the offset.  And <u>Martinez</u> is part of a series

4  of cases that look back -- and <u>Martinez</u>, in fact, recognizes

5  this -- to a United States Supreme Court case.  And that case

6  is <u>United States v. Energy Resources</u> 495 U.S. 545.  And

7  <u>Martinez</u> relies upon <u>Energy Resources</u> for this holding.  And it

8  states -- and <u>Martinez</u> states as follows.  The Supreme Court

9  held that a Bankruptcy Court had the authority to direct

10  allocation of payments to the IRS for certain liabilities

11  where, "The Bankruptcy Court determined that the designation

12  was necessary to the success of a reorganization plan."  That's

13  not where we are here.  This is a liquidation.

14         <u>Martinez</u> and the United States Supreme Court in

15  <u>Energy Resources</u> do not support the ability of this Court to

16  use its discretion to determine the allocation of the offset.

17  Yes, there are cases which talk about the allowance of the

18  offset.  This is not an allowance case.  This is an allocation

19  case.  Virtually all, or the overwhelming majority of cases

20  that emanate and rely upon <u>Energy Resources</u> in the Supreme

21  Court hold that that allocation discretion is limited to

22  reorganization or rehabilitation, and the necessity to support

23  that.  That is not what we have here.

24         There is no authority, and certainly there is none

25  cited in the papers before Your Honor.  The debtor has no

1  authority to do this.  And, in fact, not only don't they have

2  authority, but it contravenes the congressional intent of

3  503(b)(9).  It's recent law.  I hear -- it's in their papers, I

4  heard it today.  The fact is, recent law doesn't mean that it's

5  bad law, doesn't mean that Your Honor should overturn it.  It

6  shows that Congress has looked at the situation in bankruptcies

7  today and saw the need to protect the suppliers.

8        Now, they want to take away that protection and

9  nobody knows what effect that will have on all the other

10  distressed business situations in this country today.  It will

11  -- certainly suppliers will say, 503(b)(9), it's worthless,

12  we're not going to ship to them.  Put them on COD, whatever.

13  So Congress' intent here is very important and should not be

14  easily overridden.  Thank you, Your Honor.

15        THE COURT:  I thank you.

16        MR. ZEMANIAN:  Good morning, Your Honor.

17        THE COURT:  Good morning, Mr. Zemanian.

18        MR. ZEMANIAN:  Pete Zemanian appearing for Tivo as

19  local counsel.  And let me just punctuate one or two of the

20  points that were made by Mr. Levy very well.  Tivo's briefs

21  essentially align with the argument that you've just heard.

22  First, in a global perspective, the debtor is asking you to

23  exercise your equitable discretion in connection with setoffs

24  as the Ellers (phonetic) case long ago made clear this Court's

25  equity is limited by the framework of the Bankruptcy Code.  And

1 as Mr. Levy has very well articulated, the Bankruptcy Code

2 includes administrative expenses and puts them up above other

3 claims.  To use Mr. Galardi's terms, these have exalted status.

4 And I don't think he meant that with respect, I think he meant

5 that in a belittling fashion, but the exalted status is there,

6 nonetheless.

7       THE COURT:  But, the Congress didn't change Section

8 558 to preserve the right of the debtor to exercise its state

9 law setoff claims that it would have.  It just said that, to

10 the extent that there was going to be a distribution, that

11 these claimants would be entitled to administrative priority,

12 didn't it?

13       MR. ZEMANIAN:  That's correct.  But, neither did

14 Congress change 553, which preserves the right to setoff to the

15 benefit of the creditor.  And to the extent that these setoff

16 --

17       THE COURT:  Well, where does it say to the benefit?

18 It just preserves the right.

19       MR. ZEMANIAN:  I'm sorry.  Preserves the right.  It

20 doesn't say -- but it does not -- that's not available to

21 creditors.  It preserves the rights to set off whatever those

22 rights are.

23       THE COURT:  Right.  And limited only to be able to

24 setoff prepetition against prepetition.

25       MR. ZEMANIAN:  There's a mutuality requirement in

**J&J COURT TRANSCRIBERS, INC.**

1  there, as well, Judge.

2             THE COURT:  Right.

3             MR. ZEMANIAN:  Tivo's position, I think, is a little

4  more basic, which is, to the extent the debtor is going to be

5  offsetting against administrative expenses, direct them in the

6  spirit of Section 553 to exhaust the prepetition claim first.

7  Because that is a right that is available -- that is preserved,

8  excuse me, to the creditors.

9             THE COURT:  Well, let me -- here's the problem that

10 is bothering me.  In all this argument nobody has really

11 addressed this, and that is, taking it just from your client's

12 perspective, you owe money to Circuit City.

13            MR. ZEMANIAN:  Yes, sir.

14            THE COURT:  Okay?  And if you're getting dollar for

15 dollar that debt forgiven, how have you been harmed?  I mean,

16 you're not having to pay those dollars.  It's much like Mr.

17 Galardi was getting at with the closed bargaining.  If we could

18 just distill the whole bankruptcy process down to one

19 microsecond and say everything's going to happen, you know, all

20 at once, which of course we know doesn't, but isn't the effect

21 that your client actually is getting, you know, the full

22 benefit of not having -- by way of the offset by not having to

23 pay those dollars to Circuit City?

24            MR. ZEMANIAN:  Well, to the extent that this Court

25 could distill this down to a microsecond, that might make

1  sense, but of course it can't.  And in that process, to the

2  extent that there are unsecured pennies on the dollars claims

3  left behind, you have deprived a creditor such as Tivo of its

4  offset price.  And I don't know what's going to happen down the

5  road.  I don't know if there's -- right now you've made it very

6  clear, and that's a comfort to creditors, that there will be no

7  affirmative rights -- excuse me -- affirmative orders being

8  entered.  Tivo is not going to have to tomorrow, pay whatever

9  dollars are left once the debtor offsets them the way they want

10  to offset.  That's a comfort.  But, nevertheless, the debtor

11  will have been given a global order that allows them to do

12  things in the top down fashion they've described.  That's not

13  fair to the extent that there is subsequent hearings in which

14  Tivo is going to be put in the dock for the amounts that are

15  left behind, and that's why there ought to be, if not a bottom

16  up, then an exhaustion remedy first.  Section 553 is there and

17  it preserves rights, those rights ought not be prejudiced by

18  any global order, especially in the context where we have

19  situations where the facts aren't known, going back to the very

20  first discussions we had today.

21          THE COURT:  All right.

22          MR. ZEMANIAN:  May I also echo Mr. Levy's good

23  argument.  It says, in the context of what authority is there?

24  The one case offered is _Martinez_.  Judge _Martinez_ is

25  distinguishable for all the reasons Mr. Levy said, but also

 1  because it involves tax claims, and as we saw on the <u>Kraft</u>

 2  decision, tax claims are sometimes different.  I submit to you

 3  that they are different in this context.  And then of course we

 4  also echo the notion that the purpose, to the extent you can

 5  distill any purpose from BAPCPA or the Bankruptcy Code in

 6  general is to encourage vendors to deal with distressed

 7  parties, either pre-bankruptcy or certainly post-bankruptcy.

 8  And to the extent this Court is exercising its equity, please

 9  keep that in mind as you do so.

10          THE COURT:  All right, thank you, sir.

11          MR. ZEMANIAN:  Thank you.

12          MR. ENGLANDER:  Your Honor, I join the prior

13  arguments -- Brad Englander for Alliance and Source, join the

14  priority arguments.  I think as to the tax claims, those are

15  significant, they're distinguishable.  Here Congress set up a

16  priority that is intended to induce private parties to enter

17  into certain sorts of behavior, to continue shipping goods.

18  And considering the equities of the case, one needs to look at

19  that.

20          The situation the Court has before it on the merits

21  here, actually I think Mr. Galardi almost makes my point.  And

22  the reason is this, 558 and 553 preserve state law rights.

23  Under state law there is no priority claim.  There's a claim.

24  And Mr. Galardi points out that the 503(b)(9) claim is a claim.

25  It has priority given by Congress.  It's like, however -- it's

1   analogous to a secured creditor who is under secured.  In that

2   circumstance, take a creditor who has a $2 million claim and a

3   one million dollar piece of collateral.  And during the course

4   of the case, money is paid on account of that claim, adequate

5   protection.  Well, that adequate protection is going to reduce

6   the amount of the claim, I think we can all agree on that,

7   because it's an under secured creditor.  But, at the end of the

8   case you don't say, well, the secured claim went down.  If the

9   claim is reduced from two million to a million five during the

10  course of the bankruptcy case, it's still a million five.  And

11  there's still a million dollars collateral and that creditor

12  has a secured claim to the extent of the value of the

13  collateral.  That's a very analogous circumstance.  We have a

14  claim that exists, under law, outside of bankruptcy.  That

15  claim may exist by virtue of a contract, it may exist by virtue

16  of shipments on open invoices.  Whatever the nature of it,

17  there is a claim, and the rights to set off against that claim

18  may very well be preserved under 558 or 553, as the case may

19  be.

20          But, how it gets characterized is a different matter

21  entirely.  We have a policy driven by due process and takings

22  clause concerns for protecting collateral, protecting property

23  interests, and that's preserved in the bankruptcy.  Similarly,

24  Congress here has set a priority in Section 503(b)(9) to induce

25  creditors to continue doing business with debtors on the run up

72

1  to the bankruptcy.  It's Congress' policy, but it's a good

2  policy, and it's equitable to protect that.  Now, if the debtor

3  wants to assert any sorts of rights under 553 or 558 it can do

4  that, but what it doesn't get to do is wipe out the priority

5  portion.

6          Now, I submit again, and I'm going to delve back a

7  little bit into some of the arguments I made on the procedural

8  piece of this because I think that they're very related, is

9  that the Court's going to have to look at the facts and

10 circumstances of each case in deciding ultimately whether there

11 is a setoff or some sort of an allocation here.  But, what is

12 clear is that the Court's determination of how this works does

13 seem to involve, under the cases, some equitable discretion on

14 the Court's part, and that every Court that's looked at it and

15 considered this particular issue has said the Court has to have

16 those facts in order to make that equitable determination.

17 Because the Court will find facts, and I know this because I

18 know what our facts are, where the equities are different.  The

19 facts of whether there is a setoff, versus a recoupment, versus

20 simply a method of calculating the claim is going to be very

21 relevant to the Court's ultimate determination, as is the

22 timing of the events that lead to the so-called setoff.

23         And again, I would ask the Court to consider these

24 facts, at least as hypothetical facts.  They're not in front of

25 the Court, but consider this.  You have credits that arise

**J&J COURT TRANSCRIBERS, INC.**

1  under a contract well before the bankruptcy is filed.  They're

2  out there, they're still sitting out there for whatever reason.

3  Perhaps the paperwork hasn't been done.  But, all of the

4  factual events that give rise to those credits have occurred

5  before the 20 days even prior to the bankruptcy.  And then

6  during the 20 days, the creditor continues to ship product on a

7  credit basis to the debtor, doing exactly what Congress sought

8  to induce that creditor to do; deal with the debtor on a credit

9  basis.  And then the debtor comes in afterwards -- and then

10  during that period, during the 20-day period and during the

11  post-petition no events occur that give rise to any of these

12  setoffs or credits.  All of them are in the past.  Then the

13  debtor comes in, or trustee comes in or the estate comes in and

14  says equitably we want to wipe out all the good deeds that the

15  creditor did by shipping on a credit basis during the 20 days

16  prior to the bankruptcy based on things that occurred before

17  that period even arose.  That's the sort of factual

18  distinctions that you're going to come into when you look at

19  each case.  And what I'd ask the Court to do, and I do adopt

20  all of the policy arguments that have been made, I think that

21  the Court should reject the debtor's request to adopt this sort

22  of broad brush program.  I think, as I said before, that the

23  Court should defer a ruling until it has actual facts in front

24  of it.  But, what I would urge the Court to do is that if it is

25  going to move toward the debtor's position in some general way,

1  that it preserve not only its ability to look at the facts, but

2  to make the equitable determinations that are the basis for the

3  debtor's argument in the first place.

4          THE COURT:  All right, thank you.

5          MR. ENGLANDER:  Thank you.

6          MR. JOHNSON:  It's still good morning.

7          THE COURT:  It's still good morning, yes.

8          MR. JOHNSON:  Good morning, Your Honor.  Russell

9  Johnson here on behalf of Averatec Trigem.  I'm not going to

10 rehash the arguments that have been made, but I do have a

11 different type of spin on this based on my client's facts of

12 this.  But, first I want to first say that the authority the

13 debtors rely upon, there's really, there's only the one case,

14 the Brown and Cole case where they said that they could do

15 this.  The Court equated the 503(b)(9) claim to a prepetition

16 claim and we submit that that reasoning is wrong, and that's

17 really the only case that they have factually that supports

18 their relief that they're seeking against my client.  And let

19 me explain what I mean by that.

20          My client, as I mentioned earlier, has a 440,000 some

21 thousand dollar unsecured claim.  They have a $321,000

22 503(b)(9) claim.  When you look at the other cases that the

23 debtors cite, let's look at the ABN -- I'm sorry -- ABC-Naco

24 decision.  The creditor there did not have a prepetition claim,

25 it just had an administrative claim.  If you look at the PSA

1  case, that case, the PSA creditor did not hold a prepetition

2  general unsecured claim, it just had an administrative claim.

3  The <u>Women First Healthcare</u> case, the claims were both

4  prepetition claims in that case that they were talking about.

5  And why I say this is significant is, if the debtor has a

6  claim, $197,000 claim, that they claim against my client --

7  well, let me go back for a second.  If the debtor has a

8  $190,000 claim against a creditor that only has an

9  administrative claim -- let's go back and change the facts for

10  a second.  If the debtor has $197,000 claim that they can file

11  an adversary proceeding for to collect, and assuming that claim

12  is right, they get $197,000 judgment against that particular

13  creditor.  But, that creditor has, let's say $100,000

14  administrative claim.  I can see in that particular context

15  where you would want to do -- where the offset might make

16  sense, because the debtor has $197,000 real money claim that it

17  sued for against the $100,000 administrative claim, so that

18  threshold might be able to make sense in that context.

19        Here, however, we don't have that same threshold

20  context.  We don't know from the facts what their claim relates

21  to, the 197 against my client.  And this is why I think it's

22  important.  We have one contract, in fact, all I'm told is we

23  have one contract with them.  We don't know what their claim

24  relates to.  Does it relate to the contract?  If it relates to

25  the contract, it seems to me that their claim is a recoupment

1 claim that comes underneath that contract and we can figure

2 out, does it relate to invoices that were part of the 503(b)(9)

3 claim, or does it relate to invoices that were before the

4 503(b)(9) claim?  And that's where the facts become important.

5 Because why should they be entitled to offset or recoup,

6 whatever you want to call it, the 197,000 that might relate to

7 the $441,000 worth of invoices when they had nothing to do with

8 the 321,000, they're the 503(b)(9).

9         I don't see how -- that's why the factual record here

10 is very important with respect to my client, or is their claim

11 something completely separate?  Is their claim outside the

12 contract?  And in that case, then what is their claim and what

13 is it then, or are we just talking setoff?

14        But, I think it's important though when you look at

15 the cases first, they haven't allowed a situation, there's no

16 cases that support their position, that they can take and pick

17 and choose where they can offset.  There's not a single case

18 that says other than the, what is it, the <u>Brown and Cole</u> that

19 says you can pick and choose.  In contrast, all the cases that

20 are cited in my brief, <u>Plastech</u> -- well <u>Plastech</u> is more on the

21 503, 502 issue, but <u>Genuity</u>, Southern District of New York

22 case.  There, the creditor had an assumed contract.  Here's

23 another situation where all of a sudden a prepetition claim

24 becomes an administrative claim.  In that case, the debtor

25 wanted to offset monies from prepetition security deposit

 1  against that cure claim, and the Court said, no, would not

 2  allow that unsecured claim to be asserted against the

 3  administrative cure claim, which is a prepetition claim, that

 4  because of the Code now has sprung and become an administrator.

 5       So, we have direct authority, <u>Genuity</u>, that says, no,

 6  you can't do this, you can't allow them to cross these

 7  barriers.  They can't use their unsecured claim against an

 8  administrative claim.  That case, very similar to our situation

 9  here, both are priority claims.

10       Then you have -- I'm not going to go into the <u>TSLC1</u>

11  that has already been argued.  We've added cases not cited by

12  others.  The <u>Lawson</u> case, the <u>Official Labor Committee v. Jet</u>

13  <u>Florida</u> and the <u>Braniff Airways</u>.  All of those cases would not

14  allow the debtor to offset an unsecured claim against a secured

15  or administrative claim; all those cases.  And so all we have

16  is the <u>Brown and Cole</u>, the <u>Martinez</u> case, which I think has

17  already been addressed ad nauseam, I'm not going to address

18  that, and as I said, the <u>ABC-Naco</u> case, there the creditor

19  didn't even have a prepetition claim, just had a post-petition

20  claim.  So, it's different than our scenario here.

21       And as I mentioned, my clients' facts are such that

22  the unsecured claim greatly exceeds their purported claim and

23  then you've got, in addition to that, the 503(b)(9).  So, first

24  I guess I say, they don't have any authority other than that

25  <u>Brown and Cole</u> case and the <u>Martinez</u> case, which I think have

1  been thoroughly addressed.  The other cases that it rely upon

2  aren't the same facts.  They're not the same facts.  It's not

3  the facts that relate to Averatec.  And I don't know everybody

4  else's facts here so I don't want to go into those arguments,

5  but they don't support that they're seeking against Averatec.

6  And we've cited plenty of cases, I think <u>Genuity</u> is the best

7  one, that says you can't to this.

8           Your Honor, the other argument I'd like to make is

9  that, if they were to have actually filed their claim against

10 my client, the 197,000, they just filed an adversary proceeding

11 instead of doing it by an offset, or by a setoff, my client

12 would then be entitled to determine what offset it wanted to

13 assert to that claim.  So, they're trying to flip the tables

14 here, and is that proper?  I don't think it is.  Because if

15 they sued us for that 197,000 instead of making us an offset

16 claim, my client could decide what invoices it wanted to assert

17 as a setoff against that claim, but now they're telling this

18 Court, well, we asserted it as a setoff, so we want it to go

19 against these priority claims first before that and it takes

20 away our right if they're seeking that affirmative relief to

21 this -- for us to assert what claims that applies to.  The

22 arguments have been made that the Congress established a

23 priority scheme that they're trying to upset the apple cart on

24 by asking this Court to apply their claim against the higher

25 priority claims first and I just don't think that's proper.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  Thank you.  Does any other

2  party in the courtroom wish to be heard?  Is there anybody on

3  the phone that wishes to be heard?  All right.  Mr. Galardi?

4          MR. GALARDI:  Your Honor, do you want me to reach the

5  confirmation issue before I go on about what's going to happen

6  with confirmation or the -- because --

7          THE COURT:  You may because I think that there is

8  some confusion about that.

9          MR. GALARDI:  With respect to confirmation, again,

10  let's just talk about temporary disallowance, the plan.  I

11  think the plan is pretty clear.  People may not like it, but

12  hear of what the plan provides.  If it's temporary disallowed

13  it doesn't get a distribution.  That's if there's an objection

14  to a claim it doesn't get a distribution.  And I believe if the

15  plan is how I normally draft them there is an allowed claim

16  definition, a disallowed claim definition and a disputed claim

17  definition and the disputed claim definition tails into the

18  objection deadline by which we must file claims.  And, so if

19  you had a disputed claim under the definition of the plan

20  although an objection has not been filed yet, there's a time

21  limit, but you don't get a distribution until that objection is

22  resolved.

23          That then goes to 1129(a)(9) which I understand

24  people want to hear about today, but I think that's a

25  confirmation objection that I fully expect people to raise.

**J&J COURT TRANSCRIBERS, INC.**

1   Well, how can you pay the Hewlett-Packard?  And our intention

2   is to pay Hewlett-Packard the $6 million claim on confirmation

3   because it will hopefully if nobody objects have an allowed

4   503(b)(9) administrative claim and I do read that to say if

5   it's an allowed on the effective date you pay it on the

6   effective date.

7        Most people will not have an allowed claim, so what I

8   fully expect and I'm sure now that everybody will take notes

9   and I will expect hundreds of objections saying our plan cannot

10  be confirmed because we're not paying claims on the effective

11  date.

12        THE COURT:  I'm hoping for hundreds of settlements.

13        MR. GALARDI:  I wish they would all settle too, Your

14  Honor, but let's assume that they don't.  That goes to the

15  feasibility.  It goes to whether I have to set up a reserve to

16  confirm a plan to show that I can satisfy it.  It doesn't mean

17  that I have to pay them on the effective date if they're not

18  allowed claims.  That will be an issue we'll all litigate

19  probably and we'll take about when we're going to go forward

20  with confirmation, but that has nothing it do with today's

21  issue other than it may have created confusion.  But, the

22  temporary disallowance is simply to say if you had an allowed

23  claim otherwise, so if I -- if, for example, the gentleman that

24  says this is disallowed, but I have seven million allowed and

25  we agreed between now and confirmation that the allowed amount

1  is that, they'd get the distribution.  That's how that works.

2  So, I, you know, not hiding the ball there I know my

3  definitions from the plan.

4        Let me go to what I still don't understand and Your

5  Honor raised it and what everybody seems to ignore.  First of

6  all 558, 558 says the debtors have all their defenses.  That

7  means I have a setoff defense.  It doesn't say, "But, you can't

8  use these defenses against administrative claims."  It doesn't

9  say you can't use them against 503(b)(9) claims.  It says you

10  have the full -- even if you waived them pre-bankruptcy, you

11  can't waive them.  You have all of your defenses.

12        So, let's take your ordinary course State court

13  offset.  Mr. Johnson again raises this.  Well, let's assume I

14  had this really old offset that, you know, I haven't decided to

15  use yet, but nobody disputes it.  Well, there may be a good

16  reason I didn't use it because I have an ongoing business

17  relationship and I didn't want to use it at that point.  But,

18  if there comes a day, let's assume it was 40 days before

19  bankruptcy and you gave me an invoice, I could use it then.  Or

20  if it's 19 days before bankruptcy, I could use it then.  And if

21  it was ten days after the bankruptcy, I could use it then.  It

22  may mean that they don't ship goods after that, but there's

23  nothing that precludes me under the bankruptcy code or under

24  State law from at some point getting an invoice, asserting my

25  offset right and it would have had exactly the impact that I

1  wanted it to have.  If I had waited and not paid everybody and

2  everybody was coming in the other day saying, "Well, you got to

3  pay your administrative claims."  We could have started to use

4  those offsets during the course of this case when we were an

5  operating company.  We didn't.  We could have done that.  They

6  could have said, no.  But, we didn't.  It -- that's my State

7  law right to use my offsets.

8        So, 558 says I can use it and nothing has changed

9  whether it's 503(b)(9), whether it's 503(b) or whether it's a

10 ordinary pre-petition unsecured claim.  I have my rights.  I

11 have the offset rights.  I could assert them and they can deny

12 it and nothing in 558 -- though they put 503(b) in there and

13 503(b)(9) in there.  They didn't say, "But, now you can't use

14 558 for that purpose."  They never said that.  And as the

15 gentleman said the law and the practice before we gave it to

16 the exalt estate and I didn't say it in a sarcastic way.  It

17 is.  Administrative status is a very good thing, but you could

18 have asserted it and I could have asserted it and nothing about

19 changing 503(b)(9) and given this carve out changed anything

20 that I could have done.  So, I think 558 gives me the rights.

21        The other thing is think of the following example and

22 553 says you can -- they can setoff as long as it arose before

23 the commencement of the case.  I think Your Honor pointed out

24 it doesn't give them the discretion which of the pre-petition.

25 It doesn't say what's ever best for the creditor.  So, let's

1  just take the following example.  Let's assume very simple I

2  have to use small numbers because I'm not that quick.  An

3  unsecured claim of $5, a 503(b)(9) claim of $10 and I have a $7

4  offset.  Are they saying that I can only use $5, but I still

5  have to pay the ten or do I -- or are they saying that I can --

6  have to go first to the five?  They're giving an exhaustion

7  remedy that I have to first exhaust one pot before I exhaust

8  another pot.  There's nothing in the code that says that and

9  there's nothing in the code that says I have to do it that way.

10        As my example said if I wanted to and I happen to

11  know I was filing tomorrow I could have used my offset right

12  then and there.  I could have stopped the 503(b)(9) claim.  I

13  didn't because we wanted to have an operating business, but I

14  could have used my full offset right then and there against

15  that ten million and nothing could have stopped me.  They

16  wouldn't have had the 503(b)(9) claim and what would they have

17  done then?  Oh, that was an invalid offset.  What, State law

18  would have let me do that.  So, I don't see the argument.

19        And then to talk about congressional intent to get

20  people to continue to ship in the 20 days, there was no

21  congressional intent.  We'll get to this on 503(b)(9), but

22  there's no congressional intent here whatsoever.  As if these

23  people knew I filed 20 days, so they extended credit.  Every

24  one of them as soon as I filed didn't extend credit.  They

25  didn't want to extend credit.  So, to talk about that this is

1  somehow the great thing to keep bankruptcy retailers alive is

2  just disbelievable in my view.  There's no detrimental

3  reliance.

4         So, Your Honor, we think, you know, the law actually

5  is pretty clear, 558 was not amended, 558 gives me my State law

6  rights.  My State law rights are to exercise my offset rights

7  whenever I please to exercise them and, yes, it may have an

8  implication on the status or priority of their claim, but it

9  doesn't say I can only do it.  In fact, my fiduciary obligation

10 it seems to us is to use them as effectively as possible to

11 maximize recovery and no one has yet answered your question or

12 my question is well, if we can do this instantaneous bankruptcy

13 and bring the money in how are they really harmed here?

14 They're harmed because they don't get a windfall on their

15 pre-petition unsecured claim.  That's the only answer they can

16 give.  And that's nothing that Congress intended for them to

17 have.  Congress intended for them to have a setoff right.  If

18 all they had was a 503(b) claim they would have to use it and

19 it would be reduced.  It just so happens they want a windfall

20 on their pre-petition claim.

21        So, Your Honor, we would ask you to enter the order

22 allowing us to setoff and, again, we believe we can exercise it

23 under 558 just at any time with respect to any claim.  I think

24 they want to go the opposite priority, but even many of them

25 conceded that at least with respect to 502(b)(9) it's a pre-

1  petition claim and it should be allowed to be exercised against

2  the 503(b)(9) claim.  And if Your Honor has any questions for

3  me?

4          THE COURT:  No, Mr. Galardi.  Thank you.

5          MR. GALARDI:  One other point and I guess it will

6  come up, but I think it's irrelevant and I'm sort of going to

7  dare people before lunch.  _Ames_, I hope people actually read

8  _Ames_ because _Ames_ does not say expenses are different than

9  claims.

10          THE COURT:  I've read _Ames_.

11          MR. GALARDI:  Okay.  I know you have, Your Honor, but

12  I keep hearing this.  Expenses are different than claims.  The

13  sentence says, "Because claims for administrative expenses may

14  not be filed under 501, they are not 502(a)."  It's not that

15  the claims and expenses are different.  It's they're treated

16  differently.  Now, I may disagree with their conclusion, but

17  Your Honor raised the point claims is a right to payment.

18  That's different and they, you know, a payment -- an

19  administrative expense is a right to payment.  It's a debt.

20  It's a liability.  It's a claim.  The issue is do they get

21  treated differently for the next argument under 502(a), 503?

22  Thank you.

23          MR. CARRIGAN:  Your Honor, may I attempt to answer

24  Mr. Galardi's hypothetical?  And actually I think goes to --

25          THE COURT:  Certainly.


**J&J COURT TRANSCRIBERS, INC.**

1          MR. CARRIGAN:  -- question you asked.  He says

2     there's five bucks pre-petition claim, ten bucks 503(b)(9) and

3     the debtor has an offset of seven.  Let's consider the offset

4     and it's post bankruptcy and let's consider the offset seven

5     bucks cash that he's got to pay.  Where does that seven bucks

6     have to go under the absolute priority rule?  Well, it first

7     goes to the five bucks because that's a secured claim and then

8     it goes to the 503 which is the priority claim.  That's how it

9     goes and that's the reason that we have an absolute priority

10    rule.  Secureds get paid first.  The "unsecured" piece of five

11    is a secured claim at least to the extent that that seven bucks

12    in cash is going to be used to make distributions.

13         So, what's the difference?  If it's a pre-petition

14    setoff of seven bucks, it's the same as cash and it's not

15    unfair that the five gets paid.  And I think whoever said that

16    you match the pre-petition versus pre-petition maybe the 20

17    days versus the 20 days and then the administrative versus

18    administrative.  You're actually following the absolute

19    priority rule, Your Honor.  There's no windfall.  There's no

20    bargain.  It's a secured claim that's getting paid.  It's in

21    the example that Mr. Englander raised and that's the answer.

22         THE COURT:  All right.  Thank you.

23         MR. CARRIGAN:  Thank you, Your Honor.

24         THE COURT:  All right.  The Court has read all of the

25    papers that have been filed in this matter and this has been

1  very well briefed and I think everybody for the very thorough

2  analysis that you've given the Court and I appreciate the

3  arguments this morning.

4         The Court is going to rule in favor of the debtors on

5  this matter.  I do -- I think that Section 558 does preserve

6  the debtors' State law setoff rights and there's nothing in

7  Section 558 that says that it's limited to certain types of

8  claims.  The bankruptcy policy certainly favors equality of

9  treatment among creditors and Mr. Galardi raises the argument

10 about the debtors' fiduciary duty to maximize that and to apply

11 the claims that the debtor has to maximize a value for the

12 estate.  Section 553, I don't think creates any kind of a

13 scheme of priority of setoff rights in favor of creditors.  It

14 merely preserves a right.  It doesn't create any rights.

15        And finally, with regard to, you know, what's really

16 going on here.  Satisfying creditors' claims by extinguishing

17 the debts that they owe to the debtor does not in any way erode

18 the value of the claims that these creditors are advancing or

19 alleging.  They're getting, you know, dollar-for-dollar relief

20 of their obligations.  I think what we're mixing apples and

21 oranges when we talk about that from the distribution side

22 which is something entirely different.  So, the Court will rule

23 in favor of the debtors.  They may apply the offset as they

24 deem appropriate to maximize value of the estate.

25        Mr. Galardi, I would ask you to please prepare and

**J&J COURT TRANSCRIBERS, INC.**

1  submit proposed findings of fact and conclusions of law.  The

2  Court does intend to write a memorandum opinion and I will

3  issue an appropriate order at that time, but I did want the

4  parties to know what the Court's ruling was going to be.

5          MR. GALARDI:  We'll do so, Your Honor.

6          THE COURT:  All right.  You may proceed to now to the

7  next issue.

8          MR. GALARDI:  Your Honor, obviously another sensitive

9  topic for everyone and this is our 502(d), 503(b)(9).  Everyone

10 has today and in their papers taken on what I'll call the

11 Plastech decision as their own as well as the Ames decision on

12 their own although Ames does have the footnote that it really

13 didn't apply.  But, let's assume that it does apply.  I want to

14 note one thing about Ames and I have a certain view of

15 bankruptcy judges versus appellate decisions.  I note that

16 Judge Gerber, a very well known Southern District, actually

17 took the position contrary to Ames that 502(d) applies as did

18 the District Court.

19         With no disrespect to the Second Circuit because I

20 may find myself there some day, I think their ruling is simply

21 superficial with respect to the 502(a) issue.  They are not

22 mutually exclusive by any stretch of the imagination.  I point

23 out, again, the following differences.  First, the bankruptcy

24 code is really very clear.  What 501 talks about is creditors

25 who file claims, creditors who file proofs of claim and the

1  word creditor appears over and over again in 501(a), (b), (c)

2  and then it talks about a claim of a certain site in another

3  claim, but it is a creditor indenture trustee may file a proof

4  of claim.  If a creditor does not file a proof of claim, blah,

5  blah, blah, if a creditor does not timely file.

6         You got to start with -- the Court seems to be

7  looking at claim in 501 as opposed to who has the obligation

8  and there is a major difference there because creditor if we go

9  now to the bankruptcy code is an entity that has a claim that

10 arose before the petition date, 101.  That definition itself

11 says a claim, you know, why would you say a claim that arose

12 before the petition date if claims were simply those things

13 that only arose before the petition date?  Those words would be

14 redundant.

15        What the definition of creditor did was it says

16 you're a creditor if the type of claim you have under 101(10)

17 is the one that arose before the petition date.  It's not that

18 the claim makes you a creditor.  It's not that the claim had to

19 arise before the petition date.  You're a creditor if that's

20 the two conditions.  So, again, the Second Circuit goes on and

21 says because claims for administrative expense may not be filed

22 under Section 501 they are not subject to 502(a).  That's just

23 false.

24        Claims are filed.  Even administrative claims are

25 filed.  The forms have changed.  The forms say administrative

1   expenses that arise after the petition date should not be filed

2   on this form.   I mean, it doesn't -- it doesn't -- and this is

3   a may -- it's a permissible.   It's not a preclusion.   You can

4   still do it, but frankly pre-petition administrative claims can

5   be filed and should be filed.   And frankly I'll warn everybody

6   out here if you don't file a proof of claim for a 503(b)(9)

7   expect me to object because a 503(b)(9) claim is a claim that

8   arose before the commencement of the case.   It says it.   And

9   the form says file -- only don't file those ones that arose

10  after the date, but you are a creditor.

11       Why are you a creditor?   Because it arose -- but,

12  your claim which may be treated to an administrative expense

13  status arose prior to the petition date.   Importantly, and

14  again I think you've already alluded to it, the definition of

15  claim is broadly construed.   A debt is a liability on a claim

16  and no one in this room is going to say an administrative

17  expenses is not a debt.

18       So, I think the Second Circuit simply got it wrong

19  and to base a decision on the fact that you don't file a proof

20  of claim for a 503(b)(9) claim which is what it seems to have

21  rested on is just simply not true because you probably do have

22  to file a proof of claim.   And if you have to file a proof of

23  claim, you know, all this discussion of whether or not 502(d)

24  only applies to those claims really is largely irrelevant, but

25  we'll go through more of that argument.

1          Your Honor, again, I happen to be -- and I'm never a

2   fan, but -- except for this instance of the Ninth Circuit.   I

3   rarely agree with the Ninth Circuit as -- but, in this instance

4   I think that MicroAge court is directly -- it's just a common

5   sense approach.   It takes the definition.   It starts with

6   502(d) language.   502(d) language says a claim of an entity.

7   It does not say creditor.   Let's just take the strict language,

8   a claim.   They clearly have a claim.   I don't think anybody in

9   this room in the -- and I don't think Ames and I challenge

10  people at break to find me where it says an expense is not a

11  claim.   They have a claim.   It arose before the petition date.

12  They are an entity.

13          I don't know how 502(d) cannot apply to a claim of an

14  entity that arose before the petition date and to argue that

15  it's not governed by 502 because you don't have to file the

16  proof of claim, that would have two consequences.   One, I don't

17  think it's right and, two, does that mean we can't go against

18  scheduled claims for which no proof of claim is filed and say

19  that they're the recipient of a preference and therefore it

20  shouldn't be disallowed?   You do exactly that and a creditor

21  can go in and object to schedule claims.   But, under this

22  reading you couldn't challenge a scheduled claim because why?

23  It wasn't a proof of claim under 501, so 502 doesn't apply.

24  That's an absurd conclusion.   3007 doesn't preclude a creditor.

25  Debtors can amend their schedules, but creditors can object to

1  claims and say that person got a preference.  So, I don't see

2  the same 502(a), 503 distinction.

3         Also, if you look at 503 there are other pre-petition

4  claims in there that you still get 503 status, but you're still

5  a pre-petition claim.  For example, if you look at 503(b), I

6  guess it's (b)(1)(b), a tax for the period that ended before

7  the commencement of the case, it's still a pre-petition claim.

8  If you look at the -- a government unit for a payment of an

9  expense and they don't even have to file an allowed

10  administrative expense then you look at what is also clearly

11  pre-petition.  A creditor that files the petition and the

12  attorney's fees for filing the involuntary petitions.  They are

13  clearly pre-petition claims.

14        But, what did the Court decide?  They're pre-petition

15  claims, but you have to -- but you get 503(b) status.  And, so

16  if you look at those conditions it's not as if this only talks

17  about post petition administrative expenses.  It says they've

18  got a claim, but they get elevated status.  And to get elevated

19  status what do you have to do?  You take the claim you've got

20  and you make a request for the payment of an administrative

21  expense.  You have to do something else.  You got to file your

22  claim if you're a creditor which you are if you're a pre-

23  petition creditor, so maybe the only people who get out of this

24  are the people who don't have claims arising after the

25  bankruptcy which is the normal 503.

**J&J COURT TRANSCRIBERS, INC.**

1          But, anybody who has a claim beforehand, if I were a

2     creditor and I wanted to get my attorney's fees and I filed an

3     involuntary and I looked at that form and that form says you

4     don't use it if it's an administrative claim that arises after

5     the petition date.  It still means you got to file a proof of

6     claim unless the debtors put it on your schedule.  If the

7     debtors put it on your schedule you might not have to do it,

8     but if you want special treatment, you want administrative

9     expense treatment, you want to be paid now or you want to be

10    paid full dollars for that stuff, you've got to make -- you've

11    got to take the extra hurdle.  You got to go and file an

12    administrative expense request.  What does that do?  It

13    accelerates the timing of your claim and it says you can get

14    paid full dollars sooner than confirmation, maybe on

15    confirmation.

16         So, the distinction between claims and -- claims and

17    expenses I think is simply one that all expenses are claims,

18    but certain expense -- certain claims are elevated.  They are

19    elevated to get priority and treatment as an administrative

20    expense claim.  They're nothing but a subset.  You read the

21    definition of claim, it's broad.

22         So, I think the first thing is those people that rely

23    on the expense versus claim argument should read Ames and what

24    Ames really says is that expenses can be claims.  They're just

25    not subject to 502.  I happen to disagree.  They are subject to

1  502 if they're held by creditors and that is they have claims

2  that arose prior to the petition date.   That's what a creditor

3  is and a creditor must file a proof of claim.

4        Look through 3001, 3002, 3003 and 501 only talks

5  about when you have to file a proof of claim.   It totally

6  ignores 3003 that says by the way you don't have to file a

7  proof of claim if you're on the schedules.   But, if you're on

8  the schedules you're not home free because you didn't file a

9  claim under 502.   There are plenty of creditors that can object

10  to scheduled claims.   They can, you know, they can come in and

11  say, "I don't want to pay that person because they got a

12  preference."   That's legitimate.   Don't tell me we can't go to

13  502(d) and say that because they didn't file a proof of claim.

14  That's a silly defense.

15        So, I think the distinction that those Courts draw

16  between 501, 502 and 503 is just simply not a viable

17  distinction.   Rather the distinction is 501, you file a proof

18  of claim if you're not scheduled, 502, if you're a creditor you

19  have to file a proof of claim.   Why?   Because you're a creditor

20  and that's what 501 said and they didn't file a proof of claim

21  on your behalf, 502, you do it and 503 says, well look, you can

22  get some of those pre-petition claims to exalted status as an

23  administrative expense, but by the way if your claim doesn't

24  arise until after the petition date you got to use 503 because

25  you're not a creditor.   That's not mutually exclusive.   That's

1  variations of how you get your claims paid in the priority

2  scheme.

3         So, once we get to that point, Your Honor, it seems

4  to me 502(d) is straightforwardly a statute that says look, if

5  you have a claim it's a claim of an entity, no doubt, if you're

6  subject to avoidable preference you cannot be paid that amount

7  until you return it.  Now, we didn't take the radical position.

8  Under that radical position if I had a $2 claim and they had a

9  million dollar 503(b)(9) technically this statute says what?

10 It says you don't have to pay them anything on that 503(b)(9)

11 until they give you the $2 back.

12        It was meant to be if we look at the legislative

13 history of 57(g) and all the policies it was meant to, so that

14 a debtor doesn't have to chase people down to get the money to

15 come in before making distributions.  That was the intent of it

16 and that intent is served whether it's a 503(b)(9) claim or

17 whether it's a pre-petition unsecured claim.  And it's even

18 served better on 503(b)(9) because with respect to the

19 pre-petition unsecured claims most people don't want to pay you

20 the real dollars to get their unsecured claim.  Here, it's

21 important to get the real dollars, so you can pay the

22 administrative claims.  So, those purposes are actually better

23 fulfilled in that.

24        With respect to the other distinctions between

25 administrative expenses and claims, again, Your Honor, there's

1  plenty of sections.   3001 talks about -- I mean, five -- you

2  know, <u>MicroAge</u> goes through a number of statutes where the

3  claim and the classifications of claims whether they're

4  administrative expenses.  So, Your Honor, we think clearly that

5  502(d) would apply to the 503(b)(9) claims.  They're

6  pre-petition claims held by a creditor.  You don't even need a

7  creditor.  Some people go back to the legislative history and I

8  guess <u>Ames</u> didn't think it was clear.

9        Well, as the papers pointed out prior to the

10  bankruptcy code it applied to creditors, but creditors included

11  both holders of claims, pre-petition and post petition.  So,

12  they had to change the language to get an entity because they

13  were distinguishing as I just pointed out with 501 and all the

14  other provisions the creditors were now only those people who

15  had pre-petition claims, not post petition entities.  If they

16  had put a creditor here in 502(d) I wouldn't -- we'd still have

17  an argument about the distinction pre-petition.

18        But, here they have an entity, so whether we slip and

19  slide all the way into the post petition I don't think is an

20  issue for us to decide today, but I think it can cover even

21  503(b) claims, Your Honor.  But, clearly there is a principled

22  reason why it covers the 503(b)(9) claims.  They are creditors.

23  They hold claims.  They are pre-petition claims.  I believe

24  they have to file proofs of claim especially now that the proof

25  of claim form which makes it clear that it's a claim -- an

1   administrative claim that arises prior to the filing.

2         Your Honor, I guess the other things we can say are

3   in the papers.  I don't know if Your Honor wants further

4   argument on those points.  I can wait to respond to all the

5   other people or we can take up one other legal issue that's

6   been raised, the 502(d), when is it right for -- when is it

7   right to be used so to speak?

8         THE COURT:  Let me ask some questions.

9         MR. GALARDI:  Sure.

10        THE COURT:  You know, first of all the Fourth Circuit

11  has an opinion that is remarkably similar to <u>Ames</u> not dealing

12  with 503(b)(9) claims, but it's the <u>Durham v. SMI Industries</u>

13  case where it said that since a Court can only disallow a claim

14  after one has been filed under Section 501(a) claim and Section

15  502(d) includes only one for which a proof of claim has been

16  filed and there they wouldn't let the trustee use 502 to defeat

17  an admin claim.  Why -- is this Court bound by the Fourth

18  Circuit's decision there?

19        MR. GALARDI:  Well, if the decision were on point

20  with respect to the need for a proof of claim, Your Honor, you

21  would be bound by it.  But, again, my view is that the

22  503(b)(9) claims are claims for which proof of claims should be

23  filed and therefore it's actually --

24        THE COURT:  So, it's --

25        MR. GALARDI:  -- it's distinguishable --

1            THE COURT:  -- distinguished that --

2            MR. GALARDI:  -- all right.  Because that, again,

3   that proceeded -- and there were other cases that suggested

4   otherwise, but the point is it is only -- would only be

5   decisive here if you reached the conclusion that a creditor

6   holding a 503(b)(9) claim was somehow absolved of a

7   responsibility to file a proof of claim.  I don't see how

8   you're absolved of filing because, one, we didn't schedule them

9   as 503(b)(9) claims.  So, two, go to 3003 -- two, they are

10  creditors.  There's no question they hold a claim that arose

11  prior to the commencement of the state -- statute.  That's what

12  the statute said.

13           So, if they're not scheduled and it's a pre-petition

14  claim and they're a creditor then I don't see how come they

15  don't have to file proofs of claim.  To rely on a form and

16  admittedly a form is nothing but a -- again, we're not going to

17  argue that's not the statute that was enacted by the Supreme

18  Court or whatever to prove.  I'm not going to rely on that, but

19  frankly if they want a claim and they wanted a claim of that

20  sort, they have to file a proof of claim.

21           And then what else did they have to do?  They had to

22  come and ask for administrative status, as well.  Then they had

23  to make the request.  This is why I don't think 502 and 503 are

24  mutually exclusive by any stretch.  I think pre-petition

25  creditors have to file proofs of claim.  And, so what we did is

1  there's a form for them to use.  It's very much like the proof

2  of claim form, so these people have used that form and we set a

3  separate bar date because we worried about administrative

4  solvency and insolvency.

5        So, these people did file the proofs of claim.  Now,

6  they want to say it was an administrative request, but I think

7  that's a distinction without a difference.  Here, if they're

8  creditors the claims aren't scheduled as administrative status

9  I don't think they can avoid the proof of claim argument and I

10  think they have to file it under 502 which is why I think they

11  are subject to 502(d) and why I don't think the Fourth Circuit

12  decision is decisive on this point.

13        Again, I don't necessarily agree because they were

14  looking at the word claim as opposed to creditor in that

15  decision and I think that's a slippery slope because, again,

16  there are plenty of claims that are never filed like scheduled.

17  I mean, we know at the U.S. Trustee's office if I don't

18  schedule some as -- if I scheduled everybody contingent

19  disputed on liquidated I've already had an argument with the

20  creditors here, they all have to file proofs of claim.  If I

21  put in a specific amount you can bet I'm not going to give them

22  a 503(b)(9).  If they think that's a pre-petition claim they

23  better file that.

24        So, I don't think you get out of it.  I don't think

25  the Fourth Circuit's decision is dispositive of this issue

**J&J COURT TRANSCRIBERS, INC.**

1 because I still believe that they have to file a proof of claim

2 because they're a creditor with a claim that arose prior to the

3 commencement of the case.

4          THE COURT:  All right.  And then given the -- that

5 the Court is agreed with you that you have a right to setoff

6 the claims that the debtor would have, why do I need to reach

7 this decision?

8          MR. GALARDI:  Because --

9          THE COURT:  Couldn't you just invoke a right of

10 setoff?

11          MR. GALARDI:  Well, again, if I had setoffs against

12 these claims, yes, I could and I could proceed first there.

13 Some of these are not -- partly why they're in separate

14 objections is that I didn't have sufficient setoffs, so it was

15 people that I would, in fact -- they're not technically

16 receivables.  Receivables we think are undisputed.  We may have

17 fights about the amounts, but that's a different issue.

18          THE COURT:  No, I'm saying if you have a claim under

19 Section 547 against somebody, why can't you offset that claim

20 against their claim?

21          MR. GALARDI:  Well, because I have to go prove that

22 claim first --

23          THE COURT:  It's unliquidated.

24          MR. GALARDI:  -- and maybe I can, in fact, offset

25 that at a point, but -- and, again, maybe because we sort of

1 tailored our relief here, the beauty of really 502(d) if I took

2 it as aggressively is I could set it off, but it's even worse

3 for them.  If the 502(d) says I don't have to pay them anything

4 until they pay it, but we did what we -- that's why we did it

5 the way we did it.  We're just using it as a setoff because we

6 think we're not administratively insolvent.  But, in the case

7 that people are worried about administrative insolvency you

8 wouldn't want to do just the setoff.  You would actually want

9 to wipe out that administrative claim until you've got the cash

10 in because you could then pay in seven no administrative claims

11 in full.

12           So, yes, here it's a distinction without a

13 difference, but I understand the receivables language in the

14 547 is I have a burden.  They have certain defenses.

15 Receivables is sort of the ordinary course contract State law

16 notion.  This is a different right that I get under the

17 bankruptcy code.  They have the right to defend and give

18 various defenses and what it does is it temporarily suspends

19 them for their entire claim although we did a little bit

20 smaller and not everybody has a receivable.  I don't consider

21 it -- maybe I -- maybe the simple answer to your questions is I

22 don't consider a preference recovery the same as "an ordinary

23 course receivable" and that's probably why it's not the same

24 relief.

25           THE COURT:  All right.  Very good.  You can then

**J&J COURT TRANSCRIBERS, INC.**

1  address the other issue that you wanted to address.

2        MR. GALARDI:  Sure.  The next issue, again, I go back

3  to the Supreme Court case, <u>Katchen v. Landy</u>.  Again, everybody

4  says it's a liability, but the language is that it's avoidable

5  and no, I can't just come in and say I've got a preference and

6  not give you any disclosure.  But, if I raise the preference

7  defense just like if I raised on objection to claim our reading

8  of 502(d) says, okay, "Shall disallow any claim from an entity

9  that is recoverable."  We're not trying to disallow.  We're not

10  disallowing it.  We're temporarily disallowing it which

11  basically is our phrase for the <u>Katchen v. Landy</u> it's held in

12  abeyance pending the outcome of that litigation.  It is neither

13  allowed nor disallowed.

14        In essence, the presumption that the claim is allowed

15  has been suspended until the preference action or -- in this

16  case our 547 action is resolved.  That's where we see <u>Katchen</u>

17  <u>v. Landy</u> did.  That's how we've read many Courts to say if you

18  raise an objection and you raise your prima facie defense and,

19  again, we can raise a 547 defense.  We make the allegations.

20  It is then their burden under 547 to come back and say it's

21  subject to one of the defenses.  But, that is sufficient to

22  suspend payment on it.  It doesn't mean it's disallowed.  It

23  doesn't mean it's allowed.  It means it's neither allowed or

24  disallowed.  It's held in abeyance.

25        And, so we think if you just simply make the

**J&J COURT TRANSCRIBERS, INC.**

1  allegations that we are, in fact, entitled to suspend payment

2  on the claim until such time as those allegations are resolved.

3  That's how we read 57(g) and --

4          THE COURT:  Okay.  Well, how do you respond to what,

5  you know, Mr. Epps is going to say because he's already said

6  it.  You know, where it talks about in the statute 502(d) it

7  says is liable and, you know, many of the memoranda have --

8          MR. GALARDI:  Sure.

9          THE COURT:  -- spoken to that language.  How do they

10 know what amount to pay at this point in time?

11         MR. GALARDI:  They don't, Your Honor, but that --

12 but, again, it's the Court shall disallow when it's liable.

13 We're not saying the Court shall disallow.  We're not requiring

14 you to disallow.  We are just saying you suspend the lead in to

15 502 which says the claim is allowed until such time as this is

16 resolved, right?  And, so we can raise an objection.  They have

17 prima facie evidence of it.  When we raise the objection the

18 claim is put into suspension until the 547 action is decided.

19 It's neither allowed nor disallowed very much like my disputed

20 class.  Any claims objection does that to some extent, but this

21 one is more -- is different because sometimes you'll object to

22 a claim.  It's overstated.  It's not books and records.

23         Here we actually have to bring a preference action --

24 a right of action given to us by the bankruptcy code which

25 essentially suspends payment allowance and disallowance until

1  ii's resolved.  It may ultimately be allowed if we can't

2  prevail on ours.  It may be ultimately disallowed and frankly

3  we could have -- as I said, disallowed it in full, but here

4  because of not concerns of administrative solvency we've taken

5  a more -- a narrow approach to that.  I mean, we could have

6  said until you actually pay me cash money back you don't get

7  any claim and that's what the statute really says, but we've

8  decided to cut it back to not create quite as much controversy

9  as we've already created.

10          THE COURT:  All right.  Very good.

11          MR. GALARDI:  So, again, Your Honor, with respect to

12  that we think it's sufficient to raise the objection, sign a

13  pleading under Rule 11 that says that we have these claims just

14  like I would sign a complaint.  I don't have to verify a

15  complaint with respect to a preference action.  A lawyer can

16  assign it.  We've -- we understand Rule 11.  We're put forth

17  our prima facie claim.  Until it's resolved that puts it in

18  temporary suspension.  That's all that means until such time as

19  that's resolved and those claims should be held temporarily

20  disallowed or whether you want to call it temporarily

21  semi-allowed or suspension or abeyance, that's what Katchen v.

22  Landy says and we think that that's still the law.

23          THE COURT:  All right.  Thank you.

24          MR. GALARDI:  Thank you.

25          THE COURT:  All right.  Why don't we take a -- about

1  15 minute recess and then I'll hear everybody else's response?

2         COURT CLERK:  All rise.  Court is at recess.

3                    (Recess)

4         COURT CLERK:  All rise.  The Court is now in session.

5  Please be seated and come to order.

6         THE COURT:  All right.  I will hear arguments opposed

7  to the debtor's position.  Mr. Stern.

8         MR. STERN:  Good afternoon, Your Honor.  David Stern,

9  Klee, Tuchin, Bogdanoff & Stern appearing on behalf of

10 paramount Home Entertainment.  I'm going to try to be brief and

11 not go over the areas in the brief.

12        There is one area of confusion however.  The original

13 objection that was filed took three different points.  One was

14 that 502(d) applied to 503(b)(9).  That's teed up.  Second was

15 that there should be temporary disallowance by virtue of the

16 association of the 502(d) preference.  That does not appear to

17 be any more teed up.  It appears that was withdrawn in a reply

18 that there is not a request for currently temporary

19 disallowance.  If I've misread that then I've missed a lot.

20        But that was how I read the reply that just came in,

21 I believe it was either yesterday or the day before.  The final

22 thing was an argument over whether or not the new value

23 exception to the preference liability could be utilized by

24 somebody who has a 503(b)(9) claim.  I don't know how that

25 exactly comes in but I do think it is gloriously premature to

1   deal with that.  I'm happy to do so if we are actually ruling

2   on that.  I would hope that at some point Mr. Galardi would

3   clarify based on the reply whether or not we are dealing with

4   all three prongs or just prong one.

5          THE COURT:  From the Court's standpoint, the Court is

6   looking at whether 502(d) can be applied to claims filed under

7   503(b).

8          MR. STERN:  That's fine and that's how I understood

9   it after the reply.  I did not understand that as the

10  objection.  Let me just sort of --

11         MR. GALARDI:  And that's my understanding today, Your

12  Honor.  The implications of temporary allowance we can deal

13  with but since most people addressed it, I just addressed it.

14  But simply the legal issue is does 502(d) apply to 503(b)(9).

15         THE COURT:  All right.  Thank you.

16         MR. STERN:  And I appreciate that.  I just want to

17  make sure I --

18         THE COURT:  I'm glad I got it to.

19         MR. STERN:  Yes, I just wasn't sure.  Your Honor, I

20  think Your Honor hit on a couple of points and I want to

21  address those directly.  Mr. Galardi, you know, went on at

22  great length about are we a creditor, do we have a claim and my

23  answer is yes we are and of course we have a claim.  But it

24  doesn't answer the question.  It only poses it.

25         This isn't a semantic test of how one looks at the

1  statute.  One has to look at the statute's architecture and I

2  think that's where Durham comes in.  I think that's where Ames

3  come in.  Claims were indeed filed by proofs of claim because

4  this Court ordered claims to be filed by proofs of claim if

5  they were 503(b)(9) claims.  503(a) doesn't require it to be

6  that way.  It can be a request for payment as opposed to a

7  proof of claim and again we can parse those words until we are

8  blue in the face.

9       The real point here is that a 503(b)(9) claim falls

10 into what I will term a different silo; something that Durham

11 recognized, something that Ames recognized, which is that you

12 have claims that fall into the proof of claim or scheduled

13 claims context and those are subject to 502(d).

14      You have claims that fall into the 503 category and

15 that's where Ames becomes significant and that's where Durham

16 becomes significant because those claims are of a different

17 nature.  They are claims that are payable in full at the

18 petition date and that's a very significant concept.  They are

19 also payable in full.

20      One of the points that you raised in your questions

21 is, Why, Mr. Galardi, didn't you simply file this as a setoff?

22 You have a 547 claim.  You can set it off.  That seems to be

23 in fact what they are doing or asking ultimately to be done

24 which is that there's going to be a dollar for dollar setoff

25 under 547.  The reason for that, I think, is that they just

**J&J COURT TRANSCRIBERS, INC.**

1  don't have the facts, the evidence and the like to do that

2  right now.  If they do, then they ought to do it in an

3  appropriate fashion.

4          I analogize this as trying to seek an attachment.

5  However you want to look at it, you can analogize it an

6  attachment or seeking immediate credit.  They have a -- we have

7  a, for all intents and purposes, an allowed 503(b)(9) claim.

8  In our case $3 million.  I know they reserved their objections.

9  We understand that.  But for these purposes we've got a $3

10 million claim.

11         What they are doing is they assert without any

12 evidence or any, you know, even any detail we've got a $300,000

13 offset for a preference.  If they were to do that in an

14 appropriate fashion, what they would have to do is make I would

15 say, they would probably have to prove that they have it, but

16 even if they didn't they would have to show the probable

17 validity of their claim and then we can get into all those

18 marvelous issues as to whether or not new value does apply,

19 doesn't apply, whether it was an ordinary course payment, maybe

20 even whether it was within 90 days.

21         The attempt to use 502(d) is just slightly off point

22 and I think it is off point both as a matter of statutory

23 construction, as made clear in the <u>Ames</u> case and the <u>Durham</u>

24 case, and as a matter of fundamental logic in the way it is

25 being used here.  For that reason I think the relief they seek

1  here really isn't appropriate.

2          I would also assert that, you know, one of the

3  questions that was asked, you know, by Your Honor was whether

4  or not the Durham case was problematic.  It is extremely

5  problematic for the debtor in this case.  Clearly it is not on

6  point, but it definitely advises where the Fourth Circuit stood

7  on this issue.  It stands out as circuit precedent.  Your Honor

8  can distinguish it and, you know, I've often said that you know

9  good lawyers can practically distinguish any case that's ever

10 been written.

11         THE COURT:  I'm learning that.

12         MR. STERN:  Yes.  You certainly will see that in this

13 case.  But if you look at two things, you look at the weight of

14 authority on whether or not 503(b) claims -- 502(d) can be used

15 against 503(b), whether it is 503(b) generally or 503(b)(9).

16 The overwhelming weight of authority and in terms of the

17 chronology.  The more recent cases say no.

18         You have the Ames case which is a circuit level

19 decision and granted it is not this circuit, but you know, we

20 don't gratuitously create inter-circuit conflicts.  That's a

21 policy in every circuit in the country.  And we've got the

22 Durham case that is of a piece with Ames.

23         I would assert that 502(d) should not be used as

24 against 503(b)(9) and if, in fact, the debtor has a bonafide

25 preference case against anybody here or anybody not here the

1    way to assert that -- and I'm not saying it has to be asserted

2    by adversary or affirmative defense or offset.  I really don't

3    care what the procedural framework is, but they've got to make

4    the prima facie case, plus they've got to show probable

5    validity.

6         It's like getting an attachment.  They owe us $3

7    million and what they are saying is we don't have to pay you

8    $300,000 of it.  We have a good claim.  They don't have

9    anything yet and until and unless they do, we shouldn't even

10   approach this subject.  I don't think 502(d) applies here.  I

11   don't think 502(d) is being used here in the way in which it is

12   even written, as Mr. Galardi indicated.

13        I think they've come in the wrong door and I think

14   the door should be closed for multiple reasons.

15        THE COURT:  All right.  Thank you.

16        MR. GOLDBERG:  Good afternoon, Your Honor.  Mike

17   Goldberg on behalf of Samsung.  Your Honor, we have a $19

18   million 503(b)(9) claim.  The debtor's argument is intuitively

19   at first blush, a claim is a claim is a claim and our 503(b)(9)

20   claim is a claim according to them and therefore it shouldn't

21   be allowed under 502(d).

22        THE COURT:  Well the problem is just like Mr. Stern

23   was saying is, you know, you say well we are just going to

24   parse this language.  But really, you know, what the Supreme

25   Court says we have to apply the plain meaning.  And when you

1   look at the plain meaning of the defined terms, you know, Mr.

2   Galardi makes a good point and, in fact, Judge Shefferly in his

3   opinion said, if you look at 502(d) all by itself it makes

4   sense.  The problem is, how does it fit into the overall

5   structure?

6            MR. GOLDBERG:  Exactly, Your Honor.  When you get to

7   the statutory construction and look at the statutes, it is

8   clear when you read them that 501 and 502 deal with 501 the

9   filing of claims, 502 deemed allowance in (a), objections in

10  (b), skip over the temporary allowance of (c) and get to (d)

11  and you have 502(b) which says shall -- "notwithstanding

12  subsection (a) and (b), claims against individuals who received

13  an avoidable preference shall be disallowed."

14           Notwithstanding language is very important, Your

15  Honor.  It doesn't say notwithstanding (a) and (b) and 503.  It

16  doesn't go there.  It doesn't skip between the sections and go

17  there.  It says notwithstanding (a) and (b).

18           Congress easily could have put that language in there

19  if they wanted.  Another very important statutory construction.

20  502(d) says, "shall disallow."  503(b) says, "shall be

21  allowed."  You can't make those two mandatory provisions

22  coexist without butchering the construction of the code.  To

23  follow up on Mr. Stern, he is exactly right.  501 and 502 are

24  separate silo from 503 and it was the intent of the code.

25           Now, how do I say that?  Well 501 has its own filing

**J&J COURT TRANSCRIBERS, INC.**

1  instructions and the allowance of 502.  503 says you can

2  request a payment for administrative expense.  Under that

3  section it has its own filing requirements and its own filing

4  rules.  It also has its own procedure.  It requires notice and

5  a hearing which is a separate procedure set forth in 501 and

6  502 which is deemed allowed unless there's objections.

7        Your Honor, they can't jive that mandatory language

8  of each section to indicate where 502(d) goes.  More

9  importantly they discuss that 503(b)(9) is not like other

10 administrative claims because it is pre-petition.  That's a red

11 herring.  Congress --

12       THE COURT:  Well he makes a good argument though.  I

13 mean, we ought to talk about this because he says look a

14 503(b)(9) administrative expense claimant is a creditor and,

15 you know, as defined in the bankruptcy code unlike some other

16 types of administrative expense claimants.  So it is a creditor

17 that has a cl aim and then based on 501 it would have to file a

18 proof of claim.

19       MR. GOLDBERG:  I disagree with that.

20       THE COURT:  Okay.

21       MR. GOLDBERG:  I think it's dealt with as an admin

22 claim under 503 and you file it as 503.  I disagree with Mr.

23 Galardi.  I don't think there's anything in the code that says

24 you have to file that under 501.

25       There are -- this is not the first pre-petition claim

1 that's afforded administrative status.  It's a function of

2 congressional intent to give special treatment to these.  You

3 have -- in fact there are nine listed admin claims in 503,

4 three of them deal with pre-petition issues and six of them

5 deal with post-petition issues.  This is not new.

6         It is a function of congressional intent to elevate

7 the treatment of these claims.  Now Congress certainly if they

8 wanted to distinguish they could have gone to 507(a)(2) and

9 said, hey we are going to pay these post-petition admin claims

10 first and then we are going to make (a)(2)(1) which are these

11 pre-petition admin claims.  Congress didn't do that.  They

12 treated them all the same.

13         It is identically treated and nothing in the statute

14 which Your Honor is charged in applying indicates that the pre-

15 petition claims should be treated any different, pre-petition

16 admin claims should be treated any different than the six post-

17 petition admin claims.  There is nothing in there that states

18 that.  You know, they are asking you to do that and they are

19 asking you to do this, but _Plastech,_ _TI Acquisitions_, these

20 have all been briefed by many of the parties, these courts very

21 well briefed.  Mr. Galardi was there in _Plastech_.  I'm sure he

22 put another 50 page brief in there and had his day in Court.

23         I'm not saying it is binding on Your Honor, but it's

24 been considered at least by one Court that issued a pretty

25 thorough opinion and rejected those arguments.  _Ames_, although

114

1  it is clearly I agree with Mr. Galardi 100 percent, it said we

2  are not reaching whether 503(b)(9) is at issue here, but they

3  determined that it doesn't apply to admin claims.  But these

4  are, you know, as Mr. Stern said, the newer cases, the TI

5  Acquisition cases, basically stating that Plastech and TI that

6  503(b)(9) claims are not subject to 502(d).  They go through

7  the statutory construction I just went through.

8          And the second reason and a very important reason,

9  they go through policy reasons.  Now Mr. Galardi tries to

10 distinguish between this pre-petition dealings with the debtor

11 versus post-petition dealings.  Well, Your Honor, bankruptcies

12 usually don't come as a surprise to most people unless it's

13 some big fraud that it, you know, spurs on.

14         Creditors sort of know when companies are in trouble.

15 If you were to apply 502(d) to 503(b)(9), you would shut

16 companies down prematurely in that time period because creditor

17 lawyers like myself and some of the others here would

18 immediately tell their clients as soon as those companies start

19 getting into any bit of trouble, stop dealing with them.  You

20 don't have that elevated 503(b)(9) claim that was trying to

21 recognize your reclamation claim.  They would say stop dealing

22 with those companies completely.

23         Now Congress also, there is one part that has not

24 been discussed, in affording this special treatment on

25 503(b)(9) claims Congress actually is recognizing that these 20

1   day deliveries, these massive deliveries within that 20 day

2   period are actually benefitting the estate because in most

3   likelihood they are in the hands of the debtor at the time that

4   the debtor files bankruptcy.  They are probably not sold.  They

5   are probably in the debtor's estate ready to be sold.

6           Congress said hey, we should give a benefit to these

7   people who are actually basically funding that debtor's estate.

8   And it is also based on the recognition that most debtors again

9   going back to my point a minute earlier, they don't just go

10  bankrupt.  There's planning, there's planning with their

11  lawyers, there's retention of counsel, financial advisors.

12  Congress recognized that.  They recognize that in that 20 day

13  period the debtors knew they were going bankrupt probably.  Not

14  every time, but in many cases.

15          Congress is recognizing that the creditors who are

16  the biggest victims of that, the people who deliver in that 20

17  days they could have said 30 days, they could have said 40

18  days, but they chose 20.  And Congress is recognizing that

19  those creditors needed this added protection.

20          Basically, Your Honor, the structure reasons as I am

21  following up on Mr. Stern because I like his silo treatment.

22  The policy decisions dictate that 502(d) does not apply to

23  503(b)(9).

24          Now, Your Honor, and I don't know if you want me to

25  respond to the allowability argument of when 502(d) is ripe.

**J&J COURT TRANSCRIBERS, INC.**

1 Now?  You originally --

2            THE COURT:  You may respond to that as well.

3            MR. GOLDBERG:  Your Honor, the bulk of the recent

4 cases, and I think the better recent cases do say that you

5 actually have to have an adjudication in order for 502(d) to be

6 applicable.  Just for purposes of the record, I want to point

7 the Court to In Re: Atlanta Computing Systems, 173 BR 858,

8 "Section 502(d) clearly envisioned some sort of determination

9 of claimant's liability before it's claims are disallowed in

10 the event of an adverse determination a provision of some

11 opportunity to turn over the property."  An opportunity to turn

12 over the property, not some sort of prejudgment writ of

13 attachment which this is basically serving as.

14            In re:  Leads Corp, "To disallow" -- and that's

15 bankruptcy court Delaware 2000, 1260 BR at 684, "To disallow a

16 claim under 502(d) requires a judicial determination that the

17 claimant is liable."  In Re:  Midwest Agra Development Corp,

18 387 BR 580, "Because Section 502(d) provides that an entity's

19 claim is not disallowed if the entity pays the amount owed or

20 turns over the property, the Court may only use 502(d) to

21 disallow a claim if the entity is first adjudicated liable

22 under the applicable section."

23            THE COURT:  Well, isn't Mr. Galardi though giving an

24 opportunity to turn over the property in the way that he is

25 applying statute by saying look we are only going to

1    temporarily disallow the claim to the extent that we think we

2    have an avoidance claim?  So actually you don't then have to

3    turn over the property and then get it paid back, but actually

4    just treating that portion of it as being temporarily

5    disallowed.

6           MR. GOLDBERG:  That is the most fundamental denial of

7    my client's due process you could have, Your Honor.  Because I

8    have the right to defend a preference claim.  In fact, I think

9    the debtor is being a little cute.  In their papers they say,

10   we have done our due diligence, a thorough analysis and applied

11   new value.  What they don't tell you and most people know is

12   that this debtor was paying its bills in the ordinary course of

13   business right up to bankruptcy, fairly close.  They say in

14   that prima facie evidence that they even did an value analysis

15   -- I mean that they did an ordinary course analysis or a

16   contemporaneous exchange analysis.  They just picked new value.

17          To get back to my due process argument for me just to

18   -- they are giving me the opportunity to turn it over.  No.

19   Because they are not giving me the opportunity to bring

20   somebody before this Court and present my ordinary course of

21   business analysis, my new value analysis and my ability to

22   challenge and to have a preference.  Samsung for instance was

23   cash in advance for much of this.  Arguably I don't even have

24   an antecedent debt transfer, or if I do I have a

25   contemporaneous exchange.  That just shows you how 502(d) -- it

1    proves my case on 502(d).  And then the denial of due process,

2    I should just hand it over.

3           Your Honor, I don't know if there is any other

4    questions you have for me, but based on the statutory

5    construction which clearly indicates a 502(d) is not applicable

6    to 503(b)(9) based on policy reasons, evidenced by the statute

7    and based on the fact of the cases.  I just want to add one

8    more case, In Re: Mountaineer Coal Company, 247 BR 633 Western

9    District Pennsylvania 2000, Section 502(d), "would not appear

10   to be applicable unless and until a finding under one of the

11   cited Sections has been made and complainants fail to comply

12   with such a ruling."

13          Under those reasonings I would say that Your Honor

14   can not hold the 502(d) as applicable to 503(d), should not

15   because it would have detrimental affects.  It would have worse

16   affects on the bankruptcy, debtors that are on the verge of

17   bankruptcy because creditor's lawyers would have to advise all

18   their clients to immediately cut that debtor off and would

19   counter-serve any congressional purpose of trying to work and

20   facilitate creditors working with debtors.

21          If Your Honor has any other questions otherwise, I'm

22   through.

23          THE COURT:  Thank you, Mr. Goldberg.

24          MR. GOLDBERG:  Thank you, Your Honor.

25          THE COURT:  Mr. Epps.


**J&J COURT TRANSCRIBERS, INC.**

1          MR. EPPS:  Good afternoon, Your Honor.  Just very

2     quickly I would like to say a couple of things.

3          THE COURT:  Could you identify yourself on the

4     record, Mr. Epps.

5          MR. EPPS:  I'm sorry, Your Honor.  I'm A.C. Epps,

6     Jr., Your Honor, appearing once again for Digital Innovations.

7          Your Honor, it is an extremely well briefed issue.

8     Many of these briefs in fact cost more than my client's entire

9     claim.  Nevertheless, I would like to say a couple of things

10    that I think haven't been brought forward at least in the oral

11    argument today.

12         First of all there seems to be an undercurrent of

13    perhaps the fact that I haven't read the Ames case.  That is

14    clearly not correct.  As a matter of fact, I was going to point

15    out to the Court what the Ames case actually did say about this

16    issue  I think and recognizing it doesn't speak directly to

17    Section 503(b)(9).

18         The Ames Court said and I think that it is really

19    hard to argue with this regardless of the word by word picking

20    apart of the Sections 501 and 502 that we've talked about

21    before.  The Court says, "Second and more importantly the

22    bankruptcy code gives a higher priority to request for

23    administrative expenses and a pre-petition claim in order to

24    encourage third parties to supply goods and services on credit

25    to the estate to the benefit of all the estate's creditors."

**J&J COURT TRANSCRIBERS, INC.**

1          That integrity frustrated by allowing a debtor

2     automatically to forestall or avoid payment of administrative

3     expenses by alleging that a vender had been the recipient of a

4     preferential transfer.  Now admitted we know that does not

5     apply by this Court's own words to 503(b)(9) directly,

6     505(b)(9), excuse me.

7          But there isn't any question if you look at Section

8     503 that the Congress has denominated this as an administrative

9     expense.  The fact that it came up pre-petition I think is

10    interesting but I think it is a false lead.  I think Mr.

11    Goldberg quite accurately explained why it should be an

12    administrative expense.  But it's more than why it should be an

13    administrative expense, it is an administrative expense because

14    that's where it is in the code.  I think that whatever else one

15    thinks about <u>Ames</u>, I think this Court got that exactly,

16    directly.  I ask the Court to think long and hard before it

17    disregards that.

18         Once again, I would like also to reiterate my

19    discussions about the practical effect of what the debtor is

20    asking for in this case.  The practical effect of what the

21    debtor is asking for in this case is that administrative

22    expense obligations can be continued for years without payment

23    based on preferential allegations -- allegations of

24    preferential liability.  That, I submit to the Court, is a

25    complete change of the code's idea of who should have leverage

1   and under what circumstances.  Because if there is no

2   agreement, these cases can be tried in 2012 rather easily.  It

3   could be 2013, you never know.

4          But these administrative expense claims, if the Court

5   finds that that is exactly what they are under 503(b)(9),

6   should not be subjected to that.  Thank you, Your Honor.

7          THE COURT:  Thank you, Mr. Epps.

8          MR. CARRIGAN:  Your Honor, I'd like to focus on --

9   David Carrigan for Bethesda Softworks.  We'd like to focus on

10  our claim, the Bethesda Softworks claim and how it fits into

11  the context of the arguments that have been made about 502(d).

12         At the outset, we have in round numbers now $3.8

13  million in a 503(b)(9) claim.  That is supported by a sworn

14  proof of claim form that was directed by the Court and provides

15  all the information.  It's been the subject of two other

16  omnibus objections and the substance of that claim has not be

17  challenged in any way, shape or form other than through this

18  51st omnibus objection.

19         There is also another claim on a separate form which

20  has also been the subject of two omnibus objections for $34,000

21  which, until we became aware recently that the debtor asserts a

22  setoff claim for accounts receivable is either a secured claim

23  or it's an unsecured claim in whole or in part.  But leaving

24  that aside, we have 503(b)(9) of approximately $3.8 million.

25         In analyzing the amount that the debtor proposes to

**J&J COURT TRANSCRIBERS, INC.**

1    temporarily disallow as an avoidable transfer under -- and to

2    temporary disallow under I guess it's 502(d), the debtors have

3    indicated I believe in their papers that they have not taken

4    into account as new value -- they have done the new value

5    analysis, but they have not taken into account in that new

6    value analysis any transfer that gave rise to any part of the

7    503(b)(9) claim.

8        Now what that means by -- and they've come up with

9    this number of $100,000 by excluding all value attributable to

10   transfers that are part of the 503(b)(9) claim.  They have come

11   up with a number that should be temporarily disallowed of

12   approximately $100,000.

13       What that would suggest is, more than suggest, what

14   it means is that in -- let me just step back for a second.  The

15   debtors didn't file any affidavits.  They filed nothing other

16   than the naked allegation that that's how much it is, not

17   taking in account the 503(b)(9) transfers.  They've also said

18   that this is a proof of claim exercise and that we are

19   claimants and that we are subject to the rules on claims, and

20   that we should know, that we should even after the Court's

21   order we should have filed a proof of claim form for this.

22       The official form of course has a list of

23   administrative claims that need to be filed.  The official form

24   doesn't have 503(b)(9) on it.  What does have it is the form,

25   special form that was approved by the Court.  If we want to go

1  down that road we can go even farther.  The schedules and

2  statements of affairs don't have a schedule of priority claims

3  under 503(b)(9).  They have a bunch of other scheduled priority

4  claims, but they don't have a schedule for 503(b)(9) claims.

5  So the debtor doesn't disclose up front what they are.

6         If this whole proof of claim business and this

7  literal interpretation of the pieces of the puzzle is supposed

8  to follow, shouldn't there be a schedule of 503(b)(9) claims

9  that the debtor would have to file if he followed through?  To

10 follow up on that particular point, 507(a) says, (a)(2) says,

11 "The following expenses and claims have priority in the

12 following order.  Two, second, administrative expenses allowed

13 under 503(b) of this title and any fees and charges assessed

14 against the estate under Chapter 123 of Title 28."  Nothing

15 about anything being allowed under 501 or 502.  It's a separate

16 -- as Mr. Stern said, it's a separate silo.  It doesn't fall

17 into that particular piece of the puzzle.

18        But back to the debtor's analysis.  So we have an

19 affidavit in fact in effect, two of them actually, both proofs

20 of claim on the part of the creditor.  We have no affidavits.

21 We have no exhibits except the summary conclusion as to what

22 the -- what the amount of the 503(b)(9) claim would be except

23 that absent the amount that they believed could be avoided

24 under 547(b) and they exclude from that analysis any new value

25 that may be attributable to transfers under the 503(b)(9)

1 claim.

2        Well, what does 547(c)(4) say?  547(c)(4) says that

3 the trustee may not avoid, under deception, a transfer to or

4 for the benefit of a creditor to the extent that after such

5 transfer such creditor gave new value to or for the benefit of

6 the debtor.  And (b) says on account of which new value, the

7 debtor did not make any otherwise unavoidable transfer to or

8 for the benefit of such creditor.

9        So if you take them at their allegations that they

10 have applied all the new value that is available except for the

11 new value attributable to the 503(b)(9) claims, what that would

12 say is that we have roughly $3.7 million of new value to be

13 applied against $98,000 that might otherwise be avoidable under

14 547(b), which means that we have no preference liability

15 whatsoever by their own figures.

16        So 502(d), even if it does apply to administrative

17 expenses, doesn't apply to our administrative expenses.  For

18 that reason, and if we go back to the where we are procedurally

19 in this process, they've essentially filed a motion for partial

20 summary judgment against us and against everybody else in the

21 room I suppose.

22        They did not file any affidavits or any supporting

23 materials.  They've just made the bare allegations and they've

24 caveated those bare allegations by confining their use of new

25 value to one segment of the available new value.

1           Under rule 56(e)(2) they are not allowed to seek

2  summary judgment and get summary judgment over ours, our

3  response, if our response is supported by affidavits and ours

4  has been supported by affidavits from day one.  Secondly, if

5  this really is a proof of claim situation and if all the rules

6  on proof of claim apply, then bankruptcy rule 3001(f) applies

7  which means that our claim is presumptively allowed.  Even

8  under the cases that say that the burden shifts when an

9  objection is made, no affidavits, no documentation, no

10 testimony, no depositions, no support does not overtake a sworn

11 affidavit or a sworn proof of claim form.

12          There's got to be something more than that.  So, what

13 we respectfully submit is that our 503(b)(9) claim is an

14 allowed 503(b)(9) claim.  It is allowed right now.  Now we are

15 willing, just as they are willing to sort of mitigate their

16 relief that they are requesting to say well we are only going

17 to have this little bit temporarily allowed, disallowed, but

18 the rest of it is going to be disputed and therefore not

19 eligible for distribution and presumably not eligible to be

20 counted as something that has to be paid on the date of

21 confirmation.

22          We are willing to say that if they really think that

23 this $98,000 preference is out there and that there is $2,000

24 of offsets out there, well fine.  But allow the rest of it and

25 pay the rest of it and pay the rest of it on the initial

1  distribution date.  And we respectfully suggest that based on

2  the factual record that is before this Court at this moment and

3  if the Court treats this as a motion for summary judgment or if

4  the Court treats this under bankruptcy rule 3001(f) that our

5  client is entitled to that treatment at the least.

6       But the key thing is that go back to 502(d), even the

7  language of 502(d).  When does 502(d) disallow a claim?  It

8  disallows it when its -- when the creditor is subject to a

9  recoverable transfer.  Well if new value -- if the transfer

10 constitutes new value and eliminates -- if there is new value

11 and it eliminates the liability or precludes, actually doesn't

12 eliminate it, it precludes liability for preference because

13 they say the trustee may not avoid these kinds of transfers.

14      We have the new value by their own admission.  It's

15 subsequent to the last payment.  It has to be given the

16 framework that they've set up.  That $3.8 million since it

17 can't be avoided, it can't be recovered under 550.  Since it

18 can't be recovered, it's not subject to 502(d).  That's -- the

19 other fallacy in this exercise is if 502(d) does apply, what

20 happens if we turned around right now and paid it back to the

21 debtor?  Then we would be allowed.  The whole amount of the

22 503(b)(9) would be allowed and would be eligibly paid.

23      This is a 100 percent plan as to 503(b)(9) creditor

24 claims supposedly.  If it is, this whole exercise is an

25 exercise that just postpones payment.  It doesn't address the

1 validity of the claim or anything else.  Application of 502(d)

2 to 100 percent claims really makes no sense at all.  None.

3 Because it's just a circular exercise.

4       Mr. Galardi was talking before about, well we do this

5 and we do that and why should we do all this stuff.  Exactly.

6 Why should we do all this stuff when at the end of the day 100

7 percent of the 503(b)(9) claim has to be paid?  And there is no

8 preference because of the application in new value.

9       Respectfully, Your Honor, two things, at least as to

10 the folks in my client's position, deny the motion.  Secondly,

11 allow the claim for purposes of the confirmation hearing and

12 for purposes of distribution.  If the Court has misgivings

13 about allowing the claim in the full amount, then take out the

14 pieces the debtors want taken out and put it aside, but

15 adequately protect that amount.  Treat it as an attachment.

16 Make them put the money aside or otherwise escrow for it in a

17 way that it will be there because at the end of the day some

18 amount of that money is going to be due to us even if the

19 setoffs of the ARs are appropriate.

20       For that reason, Your Honor, we'd ask two things.

21 One is deny the motion at least as to us and, two, grant our

22 relief which is to allow that claim for purposes of the three

23 purposes again for allowance of claim, voting doesn't matter.

24 We don't get to vote.  It's allowed for purposes of

25 distribution.  The first distribution date is supposed to be a

1  few days after it.  It means something to companies to get paid

2  this year as I'm sure it meant to the settlement -- the folks

3  that were parties to that settlement as opposed to getting paid

4  next year.  It means something because the next distribution

5  date isn't going to be some time until next spring.

6         We are going to wait three or four months or

7  something for it, at least.  And if not, if we miss that one,

8  we are on for three or four months beyond that.  So it means

9  something and it also means something in terms of evaluating

10 whether this plan is ripe for being confirmed because the

11 requirement is that they pay all allowed claims on the date of

12 the filing.

13        If this exercise is about saying we don't have enough

14 money on the confirmation date to pay all of the administrative

15 claims then the debtor and the other proponents of the

16 committee, the committee ought to be forthright enough to stand

17 up and say that that's what the problem is.  You know, if they

18 were to say to us, look we've got to postpone some of these

19 payments, well we can always agree to do that.  That's

20 something that the administrative creditors can do.

21        But that's something that ought to be in the plan and

22 we ought to have the right to say whether or not it happen to

23 us or not happen to us through the backdoor like this.  If the

24 Court has any questions, I am happy to try to respond.

25        THE COURT:  Thank you, Mr. Carrigan.


                    **J&J COURT TRANSCRIBERS, INC.**

129

1          MR. CARRIGAN:  Thank you, Your Honor.

2          MR. AUERBACH:  Good afternoon, Your Honor.

3          THE COURT:  Good afternoon.

4          MR. AUERBACH:  Dennis Auerbach, Covington & Burling

5    LLP, on behalf of Apex Digital and THQ Inc.  Your Honor, my

6    application for admission pro hac vice is pending before the

7    Court.  My colleague, Mr. McCartcher, who was admitted in this

8    Court is in the courtroom with me today.

9          THE COURT:  You may proceed.  Welcome to the Court.

10         MR. AUERBACH:  Thank you, Your Honor.  Your Honor, I

11   will be very brief because I do agree heartily with the

12   arguments that have been presented already by the other

13   claimants.

14         I do want to address just a couple of points.  Your

15   Honor, first I believe the debtors focus on claim language and

16   suggesting that the claimants are trying to distinguish between

17   claim and expenses is really a strawman.  What is really going

18   on here, Your Honor, is the debtor is asking the Court to focus

19   simply on the language of 502(d) which refers to any claim and

20   is asking the Court to ignore the preface to 502(d) which

21   specifically states, notwithstanding subsections (a) and (b) of

22   this Section.

23         Your Honor, those words are very important and really

24   establish that under the plain meaning rule the attempt to

25   disallow the 503(b)(9) claims is improper and, in fact, this is

1 exactly what the _Ames_ Court held.   The _Ames_ Court said, "The

2 plain language thus introduces Section 502(d) as an exception

3 to the automatic allowance of proofs of claim under Sections

4 502(a) and 502(b) and suggests that the subsection scope is

5 limited to that process and does not extend to claims allowable

6 under Section 503.

7        The notwithstanding word which is an integral part of

8 the statute establishes that 502(b) is an exception to the

9 allowance of claims under Section 502.   Your Honor, I think

10 this ties in very closely to the issue of whether 503(b)(9) is

11 somehow a distinct animal, distinct from other 503(b) claims.

12        In fact, the way 502 and 503(b) work is, I think,

13 quite interesting.   Certain post-petition claims that would

14 otherwise be administrative are put into the Section 502 basket

15 and that is true, for example, of Section 502(f) and 502(g) and

16 the code in those sections provides well, and Section 502(f)

17 claim it shall be allowed pursuant to Sections 502(a) or 502(b)

18 or disallowed under Section 502(d).

19        The same language is used in Section 502(h).   So what

20 is going on is there is certain post-petition claims that are

21 put into the 502 basket.   They are specifically subject to

22 disallowance under 502.   Correlatively there are certain pre-

23 petition debts that are put into the Section 503 basket.   And

24 interestingly, there is no reference in Section 503 to disallow

25 what is under Section 502.

**J&J COURT TRANSCRIBERS, INC.**

1          So the plain language of Section 502(d) itself and

2     then the structure of Sections 502 and 503 working together I

3     think make it very clear that Section 503(b)(9) administrative

4     expenses are not subject to disallowance under Section 502(d).

5     Thank you, Your Honor.

6          THE COURT:  Thank you, sir.

7          MS. MORRISON:  Your Honor, Valerie Morrison for

8     Envision Peripherals and LG Electronics.  I want to focus

9     mostly on the adjudication requirement that is set forth in

10    Section 502(d).  Again focusing on the plain language of the

11    statute which says, "Claims are to be disallowed unless such

12    entity or transferee has paid the amount or turned over such

13    property for which such entity or transfer he is liable under

14    the avoidance sections including Section 550."

15         Disallowance is limited to cases, Your Honor, where

16    the transferee has failed to pay the amount for which it is

17    liable.  That is set forth.  And the enumerated provision

18    applicable to our situation with preferential transfers is

19    Section 550.  It's fundamental, Your Honor, a party can not

20    fail to pay an amount for which it is liable until there has

21    been an adjudication of that liability.

22         It is also fundamental, Your Honor, that one does not

23    incur liability on a preference  until adjudication.  Section

24    550 of the code which is one of the reference subsections in

25    Section 502(d) supports this reading.  It says, "To the extent

1  that a transfer is avoided, is avoided under Section 547, the

2  Trustee may either recover the property transfer or the value

3  of that property."

4        So Section 550 which the transferee has to be liable

5  under isn't even triggered until the transfer is avoided.

6  That's the way the statute operates.  Your Honor, transfer is

7  not avoided by performing an analysis even a thorough analysis.

8  It's not avoided by filing complaint or stating a prima facie

9  claim which I would argue hasn't been done here at least with

10 regard to the prima facie.  We know a complaint has not been

11 filed.  But it is only avoided by a judicial determination of

12 liability.

13       Your Honor, Section 502(d) in my view strikes a

14 balance between the bankruptcy codes very sound policy of

15 promoting equality of distribution on the one hand, and a

16 preference litigant's fundamental right to a day in court

17 before being deprived of its property.

18       The property we are talking about here is an imminent

19 right to payment and administrative expense.  In the case of

20 both of my clients their 503(b)(9) claims have been fixed by

21 prior order of this Court.  They are set.  They are, if not

22 allowed, they are fixed and determined.  I'm not aware of any

23 other objections that can be raised in that.

24       So they have a perspective right that is imminent on

25 the effect of date of the plan to be paid.  Your Honor, it is

1   important to note that Section 57(g) of the Bankruptcy Act

2   which preceded Section 502(d) did not expressly condition

3   disallowance on a party's failure to pay the amount for which

4   it is liable.  The "is liable" words are new.  They are new to

5   Section 502(d) and Congress put them in there for a reason.

6        The debtors say they did an analysis of the

7   preferential transfers and one of the defenses.  But by their

8   own admission they didn't address the other defenses which

9   could completely wipe out and erase any preferential liability

10  for my clients and many of the others that are in this room,

11  especially if it is correct that the debtor was paying its

12  obligations in the ordinary course of business.

13       Your Honor, the reliance by Mr. Galardi on the

14  Katchen v. Landy case is simply mistaken because it was an act

15  case.  And again the words is liable were not in Section 57(g)

16  which is what the Katchen v. Landy case was construing.  And

17  suspension, disobeyance concept, that's not an option for the

18  Court because Section 502(d) says the Court shall disallow.

19  Section 502(d) does not offer other options to the Court.  If

20  disallowance doesn't apply then the section doesn't apply.

21  There is no other relief envisioned by Section 502(d).

22       Counsel for Circuit City makes much of the use of the

23  word entity in Section 502(d).  The statute says that the claim

24  of any entity from which property is recoverable is to be

25  disallowed and the debtors argue that Congress must have

1  intended this to encompass administrative expenses because if

2  they used the word creditor it would have just been pre-

3  petition claims.

4          But, Your Honor, the word creditor would have

5  actually missed something far more important than

6  administrative claims.  It would have missed the targets that

7  are the very focus of this statute.  Those parties that have

8  received avoidable transfers or otherwise are obligated to

9  return property to the estate like a trustee -- like a

10  custodian or someone else who is holding property for the

11  estate that is obligated to turn it over under Section 542,

12  those characters are not necessarily creditors.

13          They may have no relationship whatsoever to the

14  estate as a creditor, as a holder of a claim.  However they are

15  liable to the estate and when they turn that property over they

16  will be afforded a claim.  But until that point they are not a

17  creditor, they are not the holder of a claim until they turn it

18  over.  Therefore, the word entity, Your Honor, I would submit

19  was used to capture the host of characters that are targets of

20  avoidance actions that may become creditors, but only if they

21  turn over the property or pay the amounts for which they are

22  determined to be liable.

23          THE COURT:  Doesn't that prove too much.  I mean

24  because they wouldn't have a claim against the estate in that

25  case.  They can only have a claim against the estate if they

1  were a creditor and that's why Congress was using the word

2  entity.  It really did mean to make sure that it encompassed

3  more than just that.  When people have claims against the

4  estates who are not creditors.

5       MS. MORRISON:  Yes, that's the crux of my argument.

6  But I think the focus was on the recipients of these transfers

7  under 542, 543, 547.  They are not creditors perhaps at the

8  time of the avoidance action but they become creditors after

9  the avoidance is adjudicated.  At that point Congress says

10 unless you pay the amount for which you are liable, your claim

11 will be disallowed.

12      So they don't fit in the definition of creditor

13 because their claims really arise post-petition.  They don't

14 have a claim perhaps until the avoidance is adjudicated.

15 Because the statute is really focusing on those types of

16 transactions and trying to bring them back into the estate, I

17 think the use of the word entity was used to capture those

18 people, those characters, and not necessarily to import the

19 concept of administrative claim where it is not referenced

20 anywhere in all of Section 502(d) or anywhere else in Section

21 502.

22      Your Honor, I want to address one other argument of

23 Mr. Galardi which was that a proof of claim is required to be

24 filed by a Section 503(b)(9) creditor.  In part Mr. Galardi

25 relies on the form, the proof of claim official form.  I would

1  submit, Your Honor, that truly exalts form over substance

2  because the statute Section 503(a) delineates how an

3  administrative expense is allowed and it doesn't mention filing

4  a proof of claim at all.  It mentions filing a request for

5  payment.

6        And 503(b)(9) claims are within the ambit of the

7  503(b)(9) allowance process.  It's an entirely separate

8  allowance process than the 501 process.  I don't think you can

9  use an official form to import a requirement that is not within

10 the bankruptcy code itself when the bankruptcy code is pretty

11 clear on how those entities, those expense claimants are

12 supposed to prosecute their claim.

13       Your Honor, I didn't reiterate the arguments that the

14 people that went before me made.  I thought they were very well

15 made and I would adopt them.

16       THE COURT:  All right.  Thank you, Ms. Morrison.

17       MS. MORRISON:  Thank you.

18       THE COURT:  Any other party wish to be heard?  Is

19 there any party on the phone who wishes to be heard?

20       MR. HAZEN:  Your Honor, this is Scott Hazen from

21 Otterbourg, Steindler in New York on behalf of the JVC

22 Companies and we would request that opportunity for a brief

23 moment.

24       THE COURT:  Mr. Hazen, you may proceed.

25       MR. HAZEN:  Thank you, Your Honor.  I'm not going to

1 repeat that some have the arguments in opposition to the

2 debtor's relief.  JVC is in the 51st omnibus.  It has two

3 502(b)(9) claims and it has asserted against those claims two

4 alleged preferences.  I adopt all the arguments on the separate

5 silos, 501 and 2 versus 503 and among other arguments the

6 502(d) requirement to some determination before it could even

7 arguably be used.

8            The only reason I speak up is I am only a bit

9 concerned about what is the relief being sought today as the

10 result of the reply of the debtors and the colloquy that

11 occurred at the very beginning of this afternoon's, if I may

12 call it the 503(b)(9) argument, the afternoon's argument, when

13 it was noted that the temporary disallowance is not being

14 sought today.  That we filed a joinder and a response to the

15 pleadings of the debtor and currently confused if Your Honor

16 were to grant the debtor's relief, which we submit you should

17 not, what are the consequences or what is going to follow if

18 temporary disallowance is not what is being sought today?

19            THE COURT: You are asking the Court that question?

20            MR. HAZEN:  I'm asking the -- I'm raising it as an

21 issue.  Mr. Galardi, I would appreciate if and if I had

22 realized this before the hearing I would have called him and

23 I'm confident he would have given the answer.  But I'm confused

24 and would hope somewhere during the course of Your Honor's

25 resolution of the issue there will be clarity on what actually

1  is the relief being sought today because I do not see that

2  clarity and thus the reason I raise the question.

3         THE COURT:  All right.  I will give Mr. Galardi an

4  opportunity to respond, but the Court has afforded the question

5  whether or not the debtor can use Section 502(d) in application

6  to Section 503(b).  I think that that's asked the question that

7  the Court is under the impression that it is being asked and

8  answered today.

9         MR. HAZEN:  And I understand that and I won't say any

10  more.  I'm sure Mr. Galardi will clarify the specific relief

11  when he has a moment.  Thank you, Your Honor.

12         THE COURT:  Thank you, Mr. Hazen.  Any other party on

13  the phone wish to be heard?  All right.  Mr. Galardi.

14         MR. GALARDI:  Since I have a limited short term

15  memory, I will go with Mr. Hazen's question first.  Your Honor,

16  I think you're ruling on the legal issue.  I think everybody

17  has raised issues of whether temporary disallowance is valid or

18  not.  Valid absent an order on liability.  So I leave that

19  issue open and we have to come back to the Court and have to

20  prevail on we think -- we do think temporary allowance is

21  appropriate, but they are free to make that argument even

22  though some people have raised it today.  They are free to make

23  that argument if we go to seek temporary disallowance.  And if

24  that's in the context of a confirmation hearing and

25  distributions I assume it will come up very soon.

**J&J COURT TRANSCRIBERS, INC.**

1          But I'm not having a consequence today nor do I take

2    your ruling to say I've won on the temporary disallowance.

3    Does that help you, Mr. Hazen?

4          MR. HAZEN:  Yes, Mr. Galardi.

5          MR. GALARDI:  Your Honor, I'm just going to sort of

6    do things a little bit, some small points and then I want to go

7    to this silo approach.  First, it's been raised that 502(d) has

8    this and I know this is sort of for future but I don't want to

9    hide anything from anyone.  502(d) does refer to 550 but what

10   seems to be ignored is it also replies to 547 which says maybe

11   disallowed.  It doesn't have to say is disallowed.  So I just

12   want to point that out.

13         If it were  -- and 550 says if it is avoided under

14   547 that is how you get it back under 550.  But 502(d) refers

15   to 547, 548 et cetera.  So when I go to that temporary

16   disallowance argument, people should be on notice that my view

17   is, as I've said in our papers, it should be temporary

18   disallowed merely with the objection.  Just wanted to make that

19   point.

20         The other point I want to make is about the

21   gentleman, and again I know this is not today because it's not

22   an evidentiary hearing and that's why there is no affidavit on

23   a legal issue, but let's just be clear what 3001(f) actually

24   says because people seem to throw these things out and not read

25   the words.

1           It says the evidentiary effect.  First of all this is

2   with respect to a pre-petition unsecured claim.  It's not with

3   respect to an administrative status and it doesn't go to

4   whether you are entitled to administrative status.  All it says

5   is a proof of claim executed and filed in accordance with this

6   shall be prima facie evidence of the validity and amount.  It

7   doesn't go to the priority or the status even if this was to be

8   bound by it.  And we don't dispute.  He's got prima facie

9   validity that we will have to respond, but that doesn't mean

10  just because you have an affidavit which is hearsay unless

11  there is witnesses here, that he then gets the allowed claim

12  today.

13          And as I mentioned before we can assert offset

14  rights.  So I want to touch that point.  The next point I want

15  to touch on, Your Honor, is just simply one of the points you

16  raised to me and the more I thought about it, the more I came

17  up with answers.  So I will give you another answer.

18          Why didn't we proceed under 558?  No good deed goes

19  unpunished, Your Honor.  I should have moved to disallow

20  everybody's claim in full under my 502(d) objection.  Maybe I

21  should have done that.  But 558 says the following.  It says

22  the debtor's defenses are preserved.

23          Now I haven't done the research but I'm sure I would

24  have had the following objections.  If I tried to use a 547

25  defense under 548, there will be people in this Court that will

1  say that's not what 558 intended, you have to go under 547

2  because 547 and 548 are all bankruptcy created causes of

3  action.   558, if everybody wants to give me that one, I will

4  certainly use it the next time I'm in Court.  But I don't think

5  that's what they intended there.

6          THE COURT:  That answers the Court's question.  I

7  understand completely.

8          MR. GALARDI:  So I don't see why 558 allows me to

9  bring in 547 because it's a bankruptcy cause of action.  That's

10  ordinary course cause of action at least as I've read 558 and

11  why I went through setoff.  So it finally dawned on me -- not

12  that it dawned on me not to use it in the first place.  I never

13  thought of it until Your Honor asked me the question.

14          Now let's go back to 502(e) and 502(f) comments.  I

15  just, again the bankruptcy code is an odd thing, but I do like

16  to read it occasionally.  I agree that 502(f) is a post-

17  petition claim but it's a very unique -- it's that gap claim.

18  502(e) is not a post-petition claim.  Unless this is a

19  friendville (phonetic) jurisdiction which I know it is not, I

20  would argue that any of these claims for reimbursement and

21  reimbursement or contributions are pre-petition claims.  They

22  just become actual physical value claims.  This becomes the

23  liquidated claim post-bankruptcy.  But that doesn't mean it's a

24  post-petition claim.

25          I know people keep throwing this out but 502(e) says


**J&J COURT TRANSCRIBERS, INC.**

1   the Court shall disallow a claim for reimbursement or

2   contribution against the estate but it's when it is contingent

3   at the time of allowance.  It's still a pre-petition claim.

4   It's just it's a contingent claim.  The whole point of that

5   section is when it becomes fixed or amount or contingent, you

6   can do various things.  But usually those are pre-petition type

7   claims.  So I don't use it.

8        Yes, 502(f) is an involuntary gap claim and it makes

9   sense that it's here because there is always the dispute of

10  when's the petition date versus the order for relief.  And the

11  code often treats those gap claims as separate.

12       So now I really want to go to the big issue.  They

13  say 502 is a silo and 503 is a silo.  I don't say it is.  Okay.

14  They give you Plastech.  They give you Ames.  I disagree with

15  it.  I think the fact of the matter is it would be nice if it

16  were silos.  The problem is the involuntary creditor claim in

17  502(b), the claim of 503(b)(9) are creditor claims.

18       They've put the rabbit in the hat by saying these are

19  silos.  They are not silos.  If they are claims of creditors

20  they are governed by 501, 502.  Period, end of story, that's

21  what the statute says.  That's what 3001 says.  And just

22  because they now can get elevated to a separate status, it

23  doesn't say they are not claims.  It doesn't say there are not

24  proofs of claims required.  It doesn't say they don't have to

25  file proofs of claim and go on 501 and 502.

 1          What it says is you've got to do that.  But if you
 2  want some --
 3          THE COURT:  Where does it say that they have to do
 4  it?  Because a number of people have stood up and said no we
 5  don't have to do that, we disagree.
 6          MR. GALARDI:  Okay.  Well here it is.
 7          THE COURT:  Because in looking at Rule 3002, it says
 8  that an unsecured creditor must file a proof of claim.  You
 9  know, and --
10          MR. GALARDI:  Let's take that.  Let's just take an
11  unsecured creditor.  503(b)(9) is not a secured claim.  It's an
12  unsecured creditor.  So why are they getting out of that?  Are
13  they a creditor?  Yes.  Do they have a claim?  And by the way
14  3001 says secured creditors have to file it.  It's creditors.
15  That's the key language.  Look at 5001, 501.  A creditor may
16  file a proof of claim.  (b) if a creditor does not file such a
17  -- file a proof of claim, an entity that is liable with the
18  creditor, with the debtor.  Okay, so it's drafted, who is going
19  to file a proof of claim, a creditor.
20          I go back to 100 -- I got back to 101(10).  What's a
21  creditor?  I want to know.  I'm reading the bankruptcy code.
22  I'm from Mars.  I say, okay a creditor has got to file a claim.
23  Okay, let me look up the word creditor.  Creditor, ah here it
24  is.  An entity that has a claim that arose at the time of or
25  before the order for relief.  So my claim just have come --

1  it's not just that I had a claim.  It had to come before the

2  petition date.

3        Okay, the order for relief I know enough about the

4  bankruptcy code that that's entered when you file a petition.

5  So it had to be something in there.  That tells me who has to

6  file a claim.  Now I go to 3001 and I say, well do I really

7  have to do that?  I really do have to do it.  Then I go to 3003

8  actually and I look and I say, who must file claims?  Oh

9  there's a rule on this.  It says who must file a claim.

10       Any creditor, again that word, who has a claim --

11  whose claim or interest is not scheduled or schedule is

12  disputed, contingent, unliquidated shall file a proof of claim.

13  They must file the claim.  So if they are not scheduled or they

14  are scheduled as disputed, contingent or unliquidated, they

15  must file a claim.  Why?  Because they are a creditor and

16  because it says they must in the rule and it says they are

17  entitled to under 501.

18       Why do they get out of this?  They are a creditor.

19  Their claim arose prior to the commencement of the case.  I

20  don't see how they get out of it.  That's what the straight

21  language of the code says.  But once you have that, then the

22  question is well how do you reconcile 502 and 503?

23       It seems to me pretty simple what Congress said.  If

24  you are a creditor, you go under 502.  There are certain people

25  in 503 that are clearly creditors that have to file claims, but

**J&J COURT TRANSCRIBERS, INC.**

1  they get exalted status as I say.  If you want not just to file

2  a proof of claim and be an unsecured creditor, but you want to

3  get this administrative status, what do you got to do? You got

4  to ask for it.

5       You got to make the request for administrative

6  expense.  That's what 503 says.  Why don't all the other

7  administrative creditors have to do it?  Because they are not

8  creditors.  Administrative claimants are not creditors if they

9  didn't have a claim that arose prior to the petition date.

10      So these unique set of creditors have the extra

11  burden.  That's all 503(b) says.  It says, look you can have a

12  priority -- you can get a claim.  If you are  pre-petition

13  creditor and you want administrative status because you fall in

14  503(b)(9) or you fall in whatever those other sections, a tax

15  claim or you are professional for a creditor who commenced an

16  involuntary, you better do something else if you want a

17  503(b)(9).

18      It doesn't say notwithstanding that you never have to

19  file a proof of claim.  It says if you want this status, file

20  the claim.  But by the way if you are an ordinary course

21  expense that arises after a debt, a liability that arises after

22  the petition date, you don't have to do this.  Why not?

23  Because you are not a creditor.

24      Indeed, if you look at the bankruptcy code on

25  classification  of claims for proofs of claim, you don't

1  classify administrative expenses.  Why not?  Because they are

2  not a class of claims.  They are not a class of creditors.  But

3  that is not what it says with respect to 507(a)(2) and (a)(3)

4  and that's the interesting thing.  The bankruptcy code actually

5  is consistent on these points and there is nothing that says if

6  you filed under 502, don't file under 503; or if you filed

7  under 503, you don't have to file under 502. It doesn't say

8  that at all.  It relies on the word creditor.

9        Now let's go to the other argument.  So I don't see

10  the two silos and somebody can explain to me why the code

11  doesn't say you don't have to do both.  I see the code through

12  its definition saying, yes, some people have to do both,

13  creditors.  That word is clear.  No one can argue that

14  503(b)(9) people aren't creditors.  No one can argue that they

15  are not unsecured creditors and therefore they are bound.

16        So now we go to the (a) and (b).  Well I think (a)

17  and (b) is pretty easily reconciled.  It's the key to Ames

18  perhaps, but I don't again understand why it is a problem.

19  502(d) says the following, notwithstanding (a) and (b).  That

20  is you don't get automatic allowance and if people object,

21  whether or not they -- so (a) says you are deemed allowed,

22  okay?  Okay.  Fine, so we know that if you have a potential

23  preference you are not deemed allowed, that's it.

24        (b) says except under blah, blah, blah, if such

25  objection is made, you shall be allowed, except to the extent.

**J&J COURT TRANSCRIBERS, INC.**

1    So again you would be allowed under either of these provisions

2    if you filed a claim and there was no objection or you filed a

3    claim and there was an objection unless you fit into these

4    categories.  That's all that says, but if you file the claim

5    and you are subject to a 50 -- you know, a 543, a 550, a 547, a

6    strong arm, any of these things, your claim is not allowed,

7    notwithstanding the fact that it is a pre-petition, unsecured

8    claim that is prima facie valid until it is objected to.

9         This says it doesn't matter that all that happened.

10   If you are the recipient of this, though shall not allow.  Now

11   why is that not inconsistent with 503?  Because you don't have

12   a 503 allowance until you make the request and the Court allows

13   it.  So these two mandatory provisions are not.  This says it

14   is not allowed and if somebody comes in and says, but I have

15   this claim, I want the exalted status, I want an

16   administrative, I want to get granted administrative status,

17   you've got to give it to me if it's 503(b).  Yes, we have to

18   give it to you if it's a 503(b) and it's a claim that's

19   allowed.  But if it's not allowed, I never have to get to the

20   issue of whether it's mandatorily allowed.

21        Because you didn't pass step one, you didn't get the

22   claim allowed in the first place.  But once you are allowed in

23   your 503(b), I agree with you.  So I don't think these --

24   clashes of mandatory provisions are at all inconsistent with

25   the code.  I'm not asking you to read two provisions

**J&J COURT TRANSCRIBERS, INC.**

1  inconsistent.

2         The question is where do you go first if you are a

3  creditor?  You go to 501, 502.  Once you pass go, then you can

4  ask for certain status, just like people can ask for priority

5  status.  And if you ask for the status and you get

6  administrative status, you get the treatment, but you've got to

7  pass go.  You don't just jump to the administrative expense.

8         So in that understanding, Your Honor, not the two

9  silos, nothing in the code says that there are two silos that

10 they can't be both.  The fact of the matter is they are subject

11 to 502(d).

12        Let me see if there was anything else.  Your Honor,

13 I didn't rely on the form for the fact, but I do find it again,

14 my code is my creditor definition.  But it is interesting that

15 the interesting fun fact, perhaps, that it says the form should

16 not be used to make a claim for administrative expense arising

17 after the commencement of the case.  A request for payment of

18 the administrative expense may be made under 503.  It doesn't

19 preclude you from using this form for pre-petition claims.

20        Now I don't know if that's just dumb luck or it's a

21 fact that somebody actually thought about because I don't think

22 anybody in Congress ever thought about 503(b).  Your Honor,

23 again, we will have an evidentiary hearing but I can't believe

24 the venders in this courtroom are saying well because we knew

25 we'd get administrative status, we continue to get credit.

**J&J COURT TRANSCRIBERS, INC.**

1   That's just not true.  They've been arguing about

2   administrative insolvency and concerns from the very first day.

3          We wouldn't have had those arguments.  We might not

4   even have the liquidation that we had if they weren't so

5   worried about these 503(b)(9) administrative claims.  So they

6   didn't ship, again, they are not using evidence.  I'll take my

7   shot.  They didn't ship because they said oh, well I'm safe

8   because I'm going to have an administrative claim because

9   everybody knows Circuit City is going to bankruptcy.  That's

10  just hogwash.

11         I have nothing further, Your Honor.

12         THE COURT:  All right.  Thank you, Mr. Galardi.  All

13  right.  Once again, this was very well briefed and I thank

14  everybody for the excellent presentations that have been made

15  on the matter.  The Court has heard quite a bit today by way of

16  the arguments and the Court would like to go back and look at a

17  couple of these cases once again in light of the arguments that

18  I have heard today.  So I'm not going to make a ruling from

19  the bench, but I will take this matter under advisement and I

20  will be issuing a ruling very shortly.

21         So with that, do we have anything further that we

22  need to take up today, Mr. Galardi, on the docket for Circuit

23  City?

24         MR. GALARDI:  It's not on the docket but since

25  everybody has asked and I know Mr. Pomerantz is on the phone.

1    We are not going to be proceeding with confirmation on November

2    23rd, but would like to move that and adjourn it to December

3    21st keeping the objection deadline.  I believe it's the 16th,

4    the same.

5              Your Honor, just to give by way of -- it has really

6    nothing to do with the administrative cost.  As Your Honor

7    knows we closed a sale in Canada a while back and there are

8    proceeds that are coming back from Canada to take full

9    advantage of -- well let me put it this way.  To avoid -- well

10   I won't say it that way either.

11             To get the maximum recovery by way of dividend and

12   ex-repatriation of the funds, it is important that we first do

13   certain corporate matters with respect to debtors to make sure

14   that the money flows and we get the maximum value back.  That

15   requires that we do those things prior to confirmation and

16   forming a liquidating trust.  So consequently that is why we

17   are going to ask to -- we are going to -- we would like to

18   adjourn the confirmation hearing from November 23rd.  I think

19   Your Honor has a December 21st calendar date that we are

20   already on for an omnibus date.  That would be our intention to

21   proceed at that point if we could get these corporate matters

22   resolved.

23             I think Mr. Pomerantz is on the phone.  I don't know

24   if he wants to add to that comment.

25             THE COURT:  Well before I turn to Mr. Pomerantz, is

1  there any expectation that the confirmation hearing would have

2  to take more than one day?

3         MR. GALARDI:  No.  Well, again, Your Honor, it

4  depends on what the evidentiary burdens of the people are on

5  feasibility with all of the administrative claims.  That would

6  be the only thing that I think could take on more than a day.

7  But I think, Your Honor, at this time to schedule that because

8  whether we can accomplish all of the corporate amalgamations

9  and actions by December 21st is still an issue.

10        What I'd like to do is just plan for a day and then

11  sort of give Your Honor an update.  I think we are also here on

12  December 7th.  To give Your Honor an update on December 7th as

13  to where we stand so that we don't fly people in for that

14  purpose.  But to try to keep it posted with every omnibus

15  hearing as to where those stand.  Again, it's a corporate

16  matter.  It just may take more time and a revenue ruling from

17  the Canadian government.

18        THE COURT:  All right.  Very good.  Mr. Pomerantz, do

19  you wish to be heard on that?

20        MR. POMERANTZ:  Yes.  Briefly, Your Honor.  The

21  committee supports the continuance.  We are hoping to resolve

22  the corporate issues that Mr. Galardi mentioned.  And I agree

23  we will have a little better information a few weeks from now

24  and can advise the Court of our progress at the December 7th

25  hearing.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  All right.  Thank you, Mr. Pomerantz.

2    Mr. Carrigan, do you wish to be heard?

3              MR. CARRIGAN:  Just one point, Your Honor.  Since the

4    Court is taking part (b) of today's hearing under advisement, I

5    thought I heard Mr. Galardi say that they weren't contemplating

6    the extended objection date with respect to the adjourned

7    confirmation hearing.

8              In light -- What the Court decides may very well

9    affect what kind of objection and the nature of objection

10   people in the 503(b)(9) group may have on this.  What we would

11   ask is at least for the -- for my client, if not all the

12   503(b)(9) folks that they get a little extra time once we've

13   seen the Court's ruling to evaluate how it fits into an

14   objection to the plan.

15             THE COURT:  Well, I mean, you could always file an

16   objection and withdraw it if you saw what the Court ultimately

17   ruled on the matter, could you not?

18             MR. CARRIGAN:  I could also spend my client's money

19   doing that when I might not have to do it.

20             THE COURT:  All right.  The -- let me hear from Mr.

21   Galardi on that.

22             MR. GALARDI:  Your Honor, excuse me, as I mentioned

23   at the outset, I think the issue has been out there and the

24   plan confirmation order and the plan itself with the disputed

25   claims and the objection deadline.  So I'm not sure what an

1  extension does.  I don't want to put anybody -- to the client's

2  money but I would assume that all of these issues would have

3  been ripe for their objection already because our analysis even

4  on 503(b)(9)s is there is a 503(b)(9) objection deadline and

5  they wouldn't be receiving a distribution and that's all set

6  out in the plan.

7         If they have a problem with that provision, I'd

8  rather see now what that objection is and I think I take it the

9  following, they will be objecting to that provision and that

10 will give me that much longer to try to resolve any objection

11 before December 21st.  So I prefer to see those objections now

12 without Your Honor's ruling, and maybe Your Honor's ruling may

13 affect settlement sort of negotiations.  But the legal issue of

14 disputed claims has already been out there and been out there

15 for quite a period of time.

16        THE COURT:  All right.  Thank you.  all right, the

17 Court will grant the continuance of the confirmation hearing to

18 December 21 and that subject to status conference on the 7th to

19 see if we are actually going to go forward on that day so that

20 if we are not everybody does not have to fly in for a

21 confirmation hearing that may not be taking place.

22        As far as the claim objection deadline is concerned,

23 the Court is not going to unilaterally extend that.  If any

24 particular creditor feels aggrieved, they can certainly file a

25 separate motion with the Court asking for an extension of time

154

1 or take that up on a case by case basis or if it can't we

2 worked out consensually between the debtor and the creditor.

3         Any other business we need to take up today, Mr.

4 Galardi?

5         MR. GALARDI:  Nothing by me, Your Honor.

6         THE COURT:  Okay.  We've got separate hearings in

7 LandAmerica this afternoon, so I'm going to take a recess so we

8 can get those parties on the phone before we go into the next

9 matter. So we will take about a 15 minute recess.

10                    * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T I O N**

2              We, Mary Polito, Rita Bergen, Amy Rentner and Lynn

3    Schmitz, court approved transcribers, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled

6    matter, and to the best of our ability.

7

8    /s/ Mary Polito                DATE:  November 18, 2009

9    MARY POLITO

10

11   /s/ Rita Bergen

12   RITA BERGEN

13

14   /s/ Amy Rentner

15   AMY RENTNER

16

17   /s/ Lynn Schmitz

18   LYNN SCHMITZ

19   J&J COURT TRANSCRIBERS, INC.

20

21

22

23

24

25

**J&J COURT TRANSCRIBERS, INC.**