Mona M. Murphy, Esquire
Virginia Bar No. 21589
Stanley M. Salus, Esquire
Virginia Bar No. 00464
Michael Goldberg, Esquire
Akerman Senterfitt LLP
8100 Boone Boulevard, Suite 700
Vienna, Virginia  22182-2642
(703) 790-8750
*Counsel to Samsung Electronics America, Inc.*
_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CIRCUIT CITY STORES, INC.** | ) | **Case No. 08-35653 (KRH)** |
| | ) | **(Chapter 11)** |
| | ) | |
| **Debtor.** | ) | **Jointly Administered** |

**SAMSUNG AMERICA ELECTRONICS, INC.'S OBJECTION TO CONFIRMATION OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION**

SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"), by and through undersigned counsel, hereby files this Objection to Confirmation of the Debtors' First Amended Joint Plan of Liquidation (the "Confirmation Objection"), and states as follows:

## I.    INTRODUCTION

Samsung is one of the Debtors' largest administrative and unsecured creditors asserting administrative expenses pursuant to 11 U.S.C. § 503(b)(9) in the aggregate amount of $19,262,466.96 (Claim No. 1425) (the "Samsung 503(b)(9) Expenses") and general unsecured claims in the amount of $122,577,855.01 (Claim No. 2425).  As one of the Debtors' largest creditors, Samsung objects to the Debtors' Chapter 11 Plan for numerous reasons stated below, any one of which would be sufficient for this Court to deny confirmation of the Debtors' Chapter 11 Plan.

{TY090415;1}

In summary, the Debtors' Chapter 11 Plan:

- Proposes to pay Allowed Administrative Claims[1] subsequent to the Effective Date of the Plan;

- Proposes to pay some Allowed Administrative Claims earlier than other Allowed Administrative Claims;

- Does not maintain a reserve fund for the payment of disputed 503(b)(9) Expenses; and

- Limits creditors' rights to setoff and recoupment of mutual outstanding obligations.

Samsung objects to the Chapter 11 Plan on the following basis:

**A.      The Chapter 11 Plan violates 11 U.S.C. Section 1129(a)(9)(A) as Holders of Administrative Claims will not be paid cash equal to the allowed amount of such claims on the Effective Date of the Plan.**

**B.      The Chapter 11 Plan violates 11 U.S.C. Section 1129(a)(11) as the Plan is not feasible because it fails to set aside a reserve for the payment of disputed 503(b)(9) Expenses.**

**C.      The Chapter 11 Plan violates 11 U.S.C. Section 1129(a)(3) as it is not being proposed in good faith.**

**D.      The Chapter 11 Plan violates 11 U.S.C. Section 1129(a)(3) because it is proposed by means forbidden by law.**

**E.      The Chapter 11 Plan violates 11 U.S.C. Section 1129(a)(1) because the Plan's Setoff/Recoupment Provisions fail to comply with 11 U.S.C. § 553.**

Samsung posits that the risks, inequities, burdens and prejudices shifted by the Debtors to Samsung and other 503(b)(9) claimants under the proposed Chapter 11 Plan make the Plan incapable of confirmation. Accordingly, Confirmation of the Debtors' Chapter 11 Plan should be denied with prejudice.

---

[1]      All capitalized terms shall have the same definition as set forth in the Debtors' Plan (as further defined below) unless further defined herein.  Nothing contained herein shall be construed as an admission by Samsung that its 503(b)(9) Expenses constitute a "claim" under Section 502(d) of the Bankruptcy Code.

{TY090415;1}

## II.    BACKGROUND

A.    __The Bankruptcy Cases and Section 503(b)(9) Administrative Expense Procedures__.

On November 10, 2008 (the "Petition Date"), the Debtors[2] commenced this action by the filing of a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 *et seq.* (the "Code").

The Debtors' first day motions included the Motion of Debtors for Order Establishing Bar Date For Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 ("Bar Date Motion") (D.N. 19). Anticipating that various vendors would request administrative expenses pursuant to Section 503(b)(9) of the Code, the Debtors sought approval of a Section 503(b)(9) bar date and special procedures for requesting these expenses. Bar Date Motion at 4-5.

In their Bar Date Motion, the Debtors acknowledge that "determining the amount and validity of Section 503(b)(9) Expenses is necessary *before* the Debtors can formulate a plan of reorganization." Bar Date Motion at 12 (emphasis supplied). The Debtors recognized that pursuant to Section 1129(a)(9)(A) of the Code "the Debtors . . . must pay these claims in full to confirm a bankruptcy plan." *Id.*

---

[2]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), PRAHS, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

3

{TY090415;1}

On November 12, 2008, the Court entered its order granting the Bar Date Motion, setting December 19, 2008 at 5:00 p.m. as the bar date for requesting Section 503(b)(9) expenses and approving the Debtors' "Request Form" for these expenses.  Order Granting Motion (D.N. 107).

**B.**     **Samsung's Section 503(b)(9) Administrative Expenses and General Unsecured Claim**.

Prior to the Petition Date, Samsung had an ongoing business relationship with the debtor, Circuit City Stores, Inc. ("Circuit City"), pursuant to which Samsung sold goods to Circuit City.

Some of the goods Samsung sold to Circuit City prior to the Petition Date were sold  to Circuit City in the ordinary course of Circuit City's business and received by Circuit City within twenty days before the Petition Date.

On December 18, 2008, Samsung timely requested its Section 503(b)(9) administrative expenses against Circuit City in the amount of $19,262,466.96 pursuant to the procedures proposed by the Debtors and approved by the Court.  *See* Samsung 503(b)(9) Expenses (Claim No. 1425).

In addition, Samsung filed a $122,577,855.01 general unsecured claim against Circuit City.  Samsung believes it is Circuit City's largest unsecured creditor.  *See* Claim No. 2425.

**C.**     **The Debtors' August 24, 2009 Filing of a Disclosure Statement and Plan**.

Notwithstanding that since the outset of the cases the Debtors knew that any objections to Section 503(b)(9) Expenses needed to be resolved "before" the Debtors could formulate a plan, the Debtors nevertheless filed their *Disclosure Statement With Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors-In-Possession and Its Official Committee of Creditors Holding General Unsecured Claims* (the "Disclosure Statement") (D.N. 4614), together with their attached liquidating plan ("Plan") (D.N. 5124) on August 24, 2009.  On September 24, 2009, the Debtors' Disclosure Statement, as amended, was

4

approved.  The deadline for filing objections to the Plan is November 16, 2009.  The Debtors'

confirmation hearing is scheduled for November 23, 2009.

**D.**     **The Debtors' Belated Objection to Samsung's Section 503(b)(9) Expenses.**

The Debtors delayed filing their objections to various Section 503(b)(9) Expenses,

including Samsung's, until October 13, 2009, after filing a Plan and Disclosure Statement almost

one year after Samsung filed its 503(b)(9) Expenses.  *See* Debtors' *(i) Fifty-Second Omnibus*

*Objection to Certain 503(b)(9) Claims and (ii) Motion for a Waiver of the Requirement that the*

*First Hearing on any Response Proceed as a Status Conference* (the "Objection") (D.N. 5217).

The basis for the Objection is Samsung's alleged receipt of a preferential transfer in the amount

of $51,466,693 (the "Alleged Preference"), which transfer is purportedly subject to set-off

against Samsung's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the

Code.[3]

Significantly, the Plan does not provide for reserving monies for payment of disputed

503(b)(9) Expenses like Samsung's.  Furthermore, it appears that the Plan was not proposed in

good faith as the Debtors are knowingly attempting to railroad the Plan through confirmation

prior to resolving their objections to administrative expenses in a veiled effort to deprive the

administrative expense holders of their right to full payment at confirmation and other attendant

rights.  Accordingly, the Debtors' Plan fails to satisfy the requirements set forth in 11 U.S.C. §§

---

[3]     Samsung strenuously denies that it received the Alleged Preference and has filed a response in opposition
to the Objection wherein it cites a glut of legal authority which collectively holds that Section 502(d) is not
applicable to disallow Section 503(b)(9) administrative expenses.  See *Samsung Electronics America, Inc.'s*
*Memorandum of Law in Opposition to Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims*
*and (II) Motion for a Waiver of the Requirement that the First Hearing on Any Response Proceed as a Status*
*Conference* (the "Samsung Response") (D.N. 5500).

{TY090415;1}

1129(a)(1), (a)(3), (a)(9), and (a)(11), and confirmation of the Plan should be denied as a matter

of law.

### III.    OBJECTIONS TO CONFIRMATION
### OF THE DEBTORS' CHAPTER 11 PLAN[4]

**A.    The Chapter 11 Plan does not satisfy 11 U.S.C. Section 1129(a)(9)(A) as Holders of Administrative Claims will not be paid cash equal to the allowed amount of such claim on the Effective Date of the Plan.**

The Debtors' Plan provides that the Holders of Allowed Administrative Claims shall

receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed

Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim

on the earlier of (a) the Distribution Date immediately following the date an Administrative

Claim becomes an Allowed Administrative Claim or (b) the date that is ninety (90) days after the

date on which such Administrative Claim becomes an Allowed Administrative Claim.  *See* Plan

at Article III.A.1.    According to the Plan's definition of Distribution Date,[5] the earliest

distribution to Holders of Allowed Administrative Claims is five (5) Business Days after the

Effective Date of the Plan.

11 U.S.C. § 1129(a)(9)(A) provides:

(a) The court shall confirm a plan only if . . .

---

[4]        The Debtor has the burden of proof on each element of 1129(a) and (b). *See In re Stuart Glass & Mirror, Inc.,* 71 B.R. 332, 334 (Bankr.S.D.Fla.1987); *In re Midland Plaza Associates,* 247 B.R. 877 (Bankr. S.D. Fla. 2000). The appropriate standard of proof at a hearing on confirmation is the clear and convincing evidence standard, rather than the preponderance of the evidence standard. *See In re Miami Center Assocs. Ltd.,* 144 B.R. 937, 940 (Bankr.S.D.Fla.1992); *In re Midland Plaza Associates,* 247 B.R. 877 (Bankr. S.D. Fla. 2000).

[5]        The Plan defines a Distribution Date as either an Initial Distribution Date or a Periodic Distribution Date. Plan at Article I.A.1.47.  An Initial Distribution Date is defined as a Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, that is at least five (5) Business Days after the funding of the Liquidating Trust pursuant to Article V.E. of the Plan.  Article V.E. provides that the funding of the Liquidating Trust take place on the Effective Date of the Plan.  A Periodic Distribution Date is defined, in part, as a Distribution Date after the Initial Distribution Date.  Thus, the earliest Distribution Date under the Plan is five (5) Business Days after the Effective Date of the Plan.

6

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that –

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, **on the effective date of the plan**, the holder of such claim will receive on account of such claim **cash equal to the allowed amount of such claim**;

(emphasis added).   Section 507(a)(2) includes administrative expenses allowed under Section 503(b)(9) of title 11.

It is black letter law that in a Chapter 11, allowed claims for administrative expenses must be paid in full no later than the effective date of any confirmed plan of reorganization or liquidation, unless the holder of such claim consents to other treatment.  *In re Midway Airlines Corp.*, 406 F.3d 229 (4th Cir. 2005) (administrative expenses must be paid in cash no later than effective date of chapter 11 plan); *In re American Coastal Energy, Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009); *In re WCI Cable, Inc.*, 274 B.R. 529 (Bankr. D. Or. 2002); *In re Scott Cable Communications, Inc.*, 227 B.R. 596 (Bankr. D. Conn. 1998) (a Chapter 11 plan cannot be confirmed without full payment of administrative expense claims, regardless of whether there are any estate assets to pay them).

Here, the Debtors propose a Plan that on its face violates Section 1129(a)(9)(A).  First, the Debtors' Plan proposes a Distribution Date that at its earliest would pay Allowed Administrative Claims at least five (5) Business Days <u>after</u> the Effective Date of the Plan. Absent the consent of Holders of Allowed Administrative Claims, such treatment is expressly prohibited by the plain language of Section 1129(a)(9)(A).  Samsung does not consent to the delayed distribution proposed by the Debtors' Plan and demands that its 503(b)(9) Claim be paid in full on or before the Effective Date as required under 11 U.S.C. Section 1129(a)(9)(A).

7

Second, the Debtors' Plan does not provide for the payment of <u>all</u> Allowed Administrative Claims at the same time, but rather, contemplates payment of Administrative Claims as they are allowed[6] by the Court on various Distribution Dates subsequent to the Plan's Effective Date.    Thus, the Debtors' Plan proposes to pay some Holders of Allowed Administrative Claims earlier than others depending on when the Administrative Claim is fixed by the Court.    Such disparate treatment is expressly prohibited by the plain language of 11 U.S.C. Section 1129(a)(9)(A). *See  In re TI Acquisition, LLC*, 410 B.R. 742, 751, n.5 (Bankr. N.D.Ga. 2009) (noting that to confirm a Chapter 11 plan of reorganization, 11 U.S.C. § 1129(a)(9)(A) requires a debtor to pay all 503(b)(9) claims in full on the effective date of confirmation irrespective of unresolved avoidance actions pending against creditors asserting 503(b)(9) expenses).

Accordingly, the Court should deny confirmation of the Debtors' Plan for its failure to satisfy the requirements set forth in 11 U.S.C. § 1129(a)(9)(A).

**B.    <u>The Chapter 11 Plan is not feasible as required by 11 U.S.C. § 1129(a)(11).</u>**

As it relates to the payment in full of all Administrative Claims, the Chapter 11 Plan is predicated, in part, on the Debtors' speculation that the Court will sustain the Debtors' Objection to the 503(b)(9) Claims.    The Plan fails to establish a reserve sufficient to pay off disputed Administrative Claims such as Samsung's 503(b)(9) Expense, while providing for payment in full to holders of Allowed Administrative Claims.    Thus, Samsung and other creditors holding disputed 503(b)(9) Claims are essentially being offered a "hope note" that the Debtors' will either: (i) successfully disallow disputed Administrative Claims so that the Debtors' existing cash

---

[6]    In essence, the Debtors' Plan proposes a floating date for payment in full of Allowed Administrative Claims, with the first payment scheduled five (5) business days after the Effective Date.

{TY090415;1}

(or cash equivalents) <u>after</u> payment of Allowed Administrative Claims will be enough to pay all allowed 503(b)(9) Expenses after the Objection is resolved; or (ii) recover additional assets presumably through future avoidance actions yet to be filed by the Debtors to pay the allowed 503(b)(9) Expenses if later allowed.  In either case, the Debtors' Plan offers Samsung and others what one court has termed as "the veritable pot of gold at the end of the rainbow"[7] and Samsung does not believe the Chapter 11 Plan is  feasible on this basis.

The purpose of the feasibility requirement under Section 1129(a)(11) is "to prevent confirmation of visionary schemes which promise creditors and equity holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Investors Florida Aggressive Growth Fund, Ltd.* ("*In re Investors Florida*"), 168 B.R. 760,765 (Bankr. N.D. Fla. 1994) *quoting In re In re Lakeside Global II, Ltd.,* 116 B.R. 499, 507 (Bankr. S.D.Tex.1 989) (*citation omitted*). Only a reasonable assurance of commercial viability under the plan is required; a debtor need not demonstrate that the plan is certain to succeed. *Id* at 765.   However where the financial realities do not support the proposed plan's projections or where proposed assumptions are unreasonable, confirmation of the plan should be denied. *Id.*

In a recent decision decided under similar facts, a bankruptcy court held that a liquidating Chapter 11 Plan was not feasible where unresolved administrative and priority claims exceeded the cash the debtors' proposed to allocate for funding of such claims.  *In re Musicland Holding Corp., et al.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007).  In *Musicland*, the debtors filed a joint plan of liquidation wherein the debtors' secured trade creditors agreed to carve-out of their collateral up to $5,800,000 to the debtors' estates allowing the debtors to satisfy in full all administrative

---

[7]      *In re Investors Florida Aggressive Growth Fund, Ltd.* ("*In re Investors Florida*"), 168 B.R. 760,765 (Bankr. N.D. Fla. 1994).

{TY090415;1}

and priority debt on the effective date of the confirmed plan. *Id.* at 649. The debtors' disclosure statement estimated that the aggregate amount of administrative and priority debt would not exceed $500,000. *Id.* The debtors' plan was overwhelmingly accepted by impaired creditors entitled[8] to cast votes for or against the plan. *Id.* The bankruptcy court conducted a confirmation hearing and found that the plan was not confirmable because it failed to satisfy the feasibility requirement set forth in 11 U.S.C. § 1129(a)(11). *Id.* Specifically, the bankruptcy court found that at the time of the confirmation hearing there remained unresolved administrative and priority claims in excess of the $5,800,000 carve-out set aside for payment of such claims and the debtors lacked the financial wherewithal to reserve for the disputed amounts. *Id.* Accordingly, the bankruptcy court adjourned the confirmation hearing until such time as the debtors were able to reduce the amount of unresolved administrative and priority claims below the carve-out amount set aside by the debtors' secured trade creditors. *Id.*

Here, as in *Musicland*, the face amount of the unresolved Administrative Claims exceed the available cash to satisfy such claims.[9] Moreover, like *Musicland*, the Debtors' Plan does not reserve funds sufficient to satisfy the disputed claims in the event they are allowed by the Court at a later date. Accordingly, the confirmation of the Debtors' Plan should be denied because it is not feasible pursuant to 11 U.S.C. § 1129(a)(11).

## C.    The Chapter 11 Plan has not been proposed in good faith as required by 11 U.S.C. § 1129(a)(3).

A court shall confirm a plan only if the plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). Factors which a court should examine in

---

[8]        In *Musicland*, like the instant case,  holders of administrative and priority claims were not entitled to vote because they were deemed unimpaired under the debtors' liquidating plan.

[9]        Debtors' Liquidation Analysis indicates that the Debtors do not presently have enough cash and cash equivalents to pay all estimated administrative claims. *See* Disclosure Statement at Appendix "C".

{TY090415;1}

determining whether a Chapter 11 plan was proposed in good faith include the following: (1) whether a plan comports with the provisions of the Bankruptcy Code; (2) whether a plan is feasible; (3) whether a plan is proposed with honesty and sincerity; and (4) whether a plan's terms or the process used to seek its confirmation was fundamentally fair.  *In re Mount Carbon Metropolitan Dist.*, 212 B.R. 18 (Bankr. D. Colo. 1999).

The proposal of Debtors' Plan fails all of the aforementioned factors.  As discussed above, the Plan does not comport with the provisions of the Bankruptcy Code because it proposes to pay Allowed Administrative Claims after the Effective Date in direct violation of 11 U.S.C. § 1129(a)(9)(A).  In addition, the Plan is not feasible because it fails to reserve sufficient funds to pay all Allowed Administrative Claims in full in violation of 11 U.S.C. § 1129(a)(11).

Moreover, it appears that the Plan was not proposed with honesty and sincerity because the Debtors' prior admissions in the Bar Motion and Disclosure Statement indicate that the Debtors are knowingly attempting to railroad the Plan through confirmation prior to resolving their objections to administrative expenses in a veiled effort to deprive the administrative expense holders of their right to full payment at confirmation and other attendant rights.  Specifically, the Debtors' motives are evidenced by their filing of the 503(b)(9) Objection *after* they obtained approval of their Disclosure Statement and filed a Plan notwithstanding that on the Petition Date they were fully aware that a determination of the amounts of allowed Section 503(b)(9) administrative expenses was "necessary before the Debtors can formulate a plan."  *See* Bar Date Motion at 12.  *See also* Disclosure Statement at 67 (Because the amount of allowed administrative claims is unknown and the Debtors may lack cash sufficient to confirm the Plan, without the consent of the holders of administrative expenses confirmation may be denied.) Notwithstanding the Debtors' prior admissions, the Debtors have proposed a Plan that improperly

11

{TY090415;1}

prejudices the distributions to claimants holding 503(b)(9) Expenses in favor of other Administrative Claims, a result at odds with the Debtors' expressed intention on day one of these cases.

Finally, the Plan's terms coupled with the process used to seek its confirmation are fundamentally unfair to Samsung and other Holders of 503(b)(9) Expenses.  The Debtors' Plan constitutes a bad faith attempt to prefer one category of administrative claimants (i.e. professionals of the Debtors' estates) at the expense of another category of administrative claimants (i.e. holders of 503(b)(9) Expenses).   Under the Plan, Samsung is entitled to full payment of its 503(b)(9) Expense only once it is allowed by the Court.  Because the Plan allows for interim distributions to Allowed Administrative Claims five (5) business days after the Effective Date without reserving any funds to pay the host of disputed Section 503(b)(9) Expenses, it is unclear whether any funds will remain to satisfy Samsung's 503(b)(9) Expenses after final adjudication of the Objection.[10]

All claims arising under 11 U.S.C. § 503(b), including professional fees and Samsung's 503(b)(9) Expenses, have equal priority.  *See* 11 U.S.C. § 507(a)(2).  However, in this case, the Plan improperly prejudices Holders of 503(b)(9) Expenses by forcing them to bear all the risk of administrative insolvency.  The Debtors are attempting to use the Plan and the confirmation process as a means to disallow the administrative claims of Samsung and other administrative claimants in violation of Section 507 and without affording them the opportunity to take

---

[10]     The Court held a preliminary hearing on the Debtors' Objection on November 12, 2009 and took the issue under advisement.  Unless the Court overrules the Objection prior to the Confirmation Hearing, the Debtors' Plan provides that Samsung and other 503(b)(9) claimants will not be entitled to receive a distribution on account of such claims.  Thus, if the Debtors' pay the Allowed Administrative Claims, such as claims asserted by the Estates' professionals, prior to the allowance of Samsung's 503(b)(9) Expenses, it is possible (if not probable) that Samsung will not receive full payment on account of its 503(b)(9) Expenses.

{TY090415;1}

discovery and respond to the specific allegations raised in the 503(b)(9) Objection.  *See In re Ames Dept. Stores, Inc.*, 2009 U.S. App. Lexis 20764, p. 11-12 (2d Cir. Sept. 18, 2009) (when the debtor will not be able to pay a temporarily disallowed claim in the future, courts have recognized that the disallowance is final in effect because the claim is not likely to ever be paid).  Thus, it is self-evident that the Debtors' proposed Plan and confirmation process are fundamentally unfair to Samsung and other Holders of 503(b)(9) Expenses.

Based on the foregoing it is without question that the Debtors' Plan constitutes a bad faith attempt on the part of the Debtors to circumvent the Code and due process protections that Samsung and other similarly situated creditors are entitled to receive under the Federal Rules of Civil Procedure, as adapted by the Federal Rules of Bankruptcy Procedure, and applicable non-bankruptcy law.  Accordingly, Samsung requests that the confirmation of the Debtors' Plan be denied because it is clear that it has not been proposed in good faith as required pursuant to 11 U.S.C. § 1129(a)(3).

**D.    The Chapter 11 Plan has been proposed by means forbidden by law in violation of 11 U.S.C. § 1129(a)(3).**

The court shall confirm a plan only if the plan has not been proposed by means forbidden by law.  11 U.S.C. § 1129(a)(3).  The term "law" in 11 U.S.C. § 1129(a)(3) includes state law; thus a Chapter 11 plan must comply with all applicable law, not just bankruptcy law. *In re Jandous Elec. Const. Corp.*, 115 B.R. 46 (Bankr. S.D.N.Y. 1990).

In addition to the Plan's blatant violations of the Code, the Plan further demonstrates bad faith as it violates Virginia law.  In essence, what the Debtors are attempting to achieve through the Plan and the pending 503(b)(9) Objection is a *de facto* attachment of the distributions Samsung and other 503(b)(9) claimants would be entitled to receive prior to the adjudication of

13

{TY090415;1}

the Debtors' 503(b)(9) Objection.  Under Virginia law, a party subject to attachment is afforded a

variety of protections, including the posting of a bond.  *See* Va. Code Ann. § 8.01-537.1(C) (pre-

judgment attachment requires posting of bond equal to twice the amount of property sought to be

attached).  Because the Debtors admit that the Estates do not possess enough Cash (or Cash

Equivalents) to satisfy all disputed 503(b)(9) Claims, the Debtors cannot post the necessary bond

required for a pre-judgment writ of attachment under Virginia law.[11]  Thus, the confirmation of

the Debtors' Plan must be denied pursuant to 11 U.S.C. § 1129(a)(3) because it effectuates a pre-

judgment attachment of Samsung's distribution rights in violation of Virginia law.

**E.**     **The Plan can not be confirmed pursuant to 11 U.S.C. § 1129(a)(1) because the Setoff/Recoupment Provisions contained in the Plan fail to comply with the applicable provisions of title 11.**

The court shall confirm a plan only if the plan complies with the applicable provisions of

title 11.  11 U.S.C. § 1129(a)(1); *In re Beyond.com Corp.*, 289 B.R. 138 (Bankr. N.D. Cal. 2003)

(bankruptcy court has the power to confirm a Chapter 11 plan only if it complies with applicable

provisions of the Bankruptcy Code).  The Debtors' Plan contains a number of provisions relating

to setoff and recoupment (the "Setoff/Recoupment Provisions"), including, *inter alia*:

**Article VI – Provisions Governing Distributions, Section H, Setoffs provides:**

1. By a Debtor.  Except as otherwise provided in the Plan, the Debtors, prior to
the Effective Date, and the Liquidating Trustee, on and after the Effective Date,
may, pursuant to Bankruptcy Code Section 553 or applicable nonbankruptcy laws,
but shall not be required to, set off against any Claim, and the payments or other
Distributions to be made pursuant to the Plan in respect of such Claim, Claims of
any nature whatsoever that the Debtors may have against the Holder of such
Claim; provided, however, that neither the failure to do so nor the allowance of
any Claim hereunder shall constitute a waiver or release by the Debtors, the

---

[11]     Although Samsung disputes that the remedy of a pre-judgment writ of attachment is available to the
Debtors, under Virginia law the Debtors would be required to post a bond in excess of $38,000,000 to protect
Samsung in the event Samsung prevails in its opposition to the Debtors' Objection.

{TY090415;1}

Liquidating Trust or the Liquidating Trustee of any such Claim that the Debtors may have against such Holder.

2. By Non-Debtors.  Unless otherwise stipulated in writing by the Debtors (before the Effective Date) or by the Liquidating Trust (after the Effective Date), any party against whom a claim or counterclaim is asserted by the Estates (an "Estate Claim") must assert any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim **at the time it answers such Estate Claim**, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred; provided, however that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment via an amended or supplemental pleading to the extent permitted by Rule 15 of the Federal Rules of Civil Procedure and/or Rule 7015 of the Federal Rules of Bankruptcy Procedure.  (Plan, page 27) (emphasis added).

**Article X – Effect of Plan Confirmation, Section D. Injunction provides:**

Except as otherwise provided in the Plan, including, but not limited to, as set forth in Article VI.H.2, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Debtors **are permanently enjoined from taking any of the following actions against the Estate(s), the Liquidating Trust, the Liquidating Trustee, or any of their property on account of any such Claims or Interests:** (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; **(D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, except as set forth in Article VI.H.2. of the Plan**; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.  (Plan, page 32) (emphasis added)

The Setoff/Recoupment Provisions allow the Debtors to assert the Estates' setoff and recoupment rights at any time while limiting a creditor's assertion of such rights solely in instances where a creditor is obligated to answer an Estate Claim.  Such disparate treatment contravenes 11 U.S.C. § 553, which expressly provides, in part:

Except as otherwise provided in this section and in section 362 and 363 of this title, this title does not affect any **right of a creditor** to offset a mutual debt

{TY090415;1}

owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

(emphasis added).

The Code places the following restrictions on a creditor's right to setoff mutual pre-petition debts: (i) disallowing offset of a disallowed claim (§ 553(a)(1)); (ii) disallowing offset of a claim acquired post-petition or for purposes of asserting an offset (§ 553(a)(2) and (3)); (iii) disallowing offset of a claim to the extent it results in a preferential transfer under § 553(b); and (iv) asserting offset pursuant to a setoff right while automatic stay is in effect (§ 362(a)(7)). Significantly, a creditor's recoupment right exists independently of the Bankruptcy Code and is not subject to the limitations on setoff contained in §§ 553 and 362. *See In re Vaughter*, 109 B.R. 229 (Bankr. W.D. Tex. 1989); *In re Gaither*, 200 B.R. 847 (Bankr. S.D. Ohio 1996); *In re American Cent. Airlines, Inc.*, 60 B.R. 587 (Bankr. N.D. Iowa 1986); *In re Vance*, 298 B.R. 262, 267 (Bankr. E.D. Va. 2003) (noting that courts view doctrine of recoupment as a non-statutory exception to the automatic stay.); *In re Tidewater Mem'l Hosp., Inc.*, 106 B.R. 876, 881 (Bankr. E.D. Va. 1989).

The Debtors' Plan improperly seeks to restrict creditors' setoff and recoupment rights by enjoining the exercise of said rights in all instances other than an answer to an Estate Claim. The limitations imposed by the Plan's Setoff/Recoupment Provisions contravene the express language of § 553 while undermining the well established doctrine of recoupment. For these reasons, Samsung objects to the Setoff/Recoupment Provisions to the extent they limit Samsung's rights to offset mutual debts existing between Samsung and the Debtors.

Accordingly, Samsung requests that the Court deny confirmation of the Debtors' Plan because the Setoff/Recoupment Provisions fail to comply with 11 U.S.C. § 553.

16

{TY090415;1}

**WHEREFORE**, Samsung requests that this Court enter an Order: (i) sustaining this Objection; (ii) denying confirmation of the Chapter 11 Plan; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  November 16, 2009

**AKERMAN SENTERFITT LLP**

By:  /s/ Mona M. Murphy

Mona M. Murphy, Esquire
Virginia Bar No. 21589
Stanley Salus, Esquire
Virginia Bar No. 00464
8100 Boone Boulevard, Suite 700
Vienna, VA  22182-2642
tel.:  (703) 790-8750
fax:  (703) 448-1767
mona.murphy@akerman.com
stan.salus@akerman.com

Michael Goldberg, Esquire
Joanne Gelfand, Esquire
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
michael.goldberg@akerman.com
joanne.gelfand@akerman.com

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of November, 2009, a copy of the foregoing

Samsung Electronics America, Inc.'s Objection to Confirmation of Debtors' Plan was sent to the

United States Trustee, counsel for the Debtors, counsel for the unsecured creditors committee,

and all creditors and parties-in-interest who are included in the United States Bankruptcy Court's

ECF e-mail notification system for this case, by virtue of the electronic filing of same, and to the

following by first-class mail:

> Douglas M. Foley, Esquire
> Dion W. Hayes, Esquire
> McGuireWoods LLP
> One James Center
> 901 East Cary Street
> Richmond, VA 23219
> *Counsel for the Debtor*
>
> Robert B. Van Arsdale
> Office of the United States Trustee
> 701 E. Broad Street, Suite 4304
> Richmond, VA 23219
>
> Brad R. Godshall, Esquire
> Jeffrey N. Pomerantz, Esquire
> Pachulski Stang Ziehl & Jones, LLP
> 10100 Santa Monica Blvd., 11th Floor
> Los Angeles, CA 90067-4100
> *Counsel for the Official Committee of Unsecured Creditors*

> /s/ Mona M. Murphy
> Mona M. Murphy

18