Nancy A. Washington
**SAIBER LLC**
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333

    - and -

Christopher L. Perkins
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA 23219
(804) 783-7550

Counsel for FM Facility Maintenance, LLC, f/k/a IPT, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| CIRCUIT CITY STORES, INC. et al., | : | Case No. 08-35653 (KRH) |
| | : | Jointly Administered |
| Debtors. | : | |

**OBJECTION OF FM FACILITY MAINTENANCE, LLC TO THE JOINT PLAN OF
LIQUIDATION OF CIRCUIT CITY STORES, INC. AND ITS AFFILIATED
DEBTORS AND DEBTORS IN POSSESSION AND ITS OFFICIAL COMMITTEE
OF CREDITORS HOLDING GENERAL UNSECURED CLAIMS**

FM Facility Maintenance Inc., f/k/a IPT, LLC ("FM"), by and through its undersigned

counsel, hereby objects to the Joint Plan of Liquidation of Circuit City Stores, Inc. and its

Affiliated Debtors and Debtors-in-Possession and its Official Committee of Creditors Holding

{00594279.DOC}

General Unsecured Claims (the "Joint Plan").  In support of its Objection, FM respectfully states as follows:

1.  FM, a leading nationwide provider of comprehensive facility maintenance services, entered into that certain Master Service Agreement (the "MSA"), effective October 15, 2008, with Circuit City Stores, Inc., ("Circuit City") a nationwide retailer of consumer electronics.

2.  Circuit City retained FM as its exclusive maintenance services provider for all of Circuit City's retail stores throughout the country.  Circuit City operated not less than 550 retail locations in the United States.

3.  In accordance with the MSA, FM commenced provision of nationwide maintenance services to Circuit City in the beginning of November 2008.  On November 10, 2008, Circuit City, together with its affiliates (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code ("Petition Date").

4.  The Debtors have continued to manage and operate their business as debtors-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  To date, no trustee or examiner has been appointed.

5.  FM continued to provide substantial critical maintenance services to Circuit City's retail stores nationwide through the post-petition period, including the Debtors' going out of business sales.

6.  On January 29, 2009, FM timely filed a Proof of Claim for the pre-petition sums due from Circuit City under the MSA in the amount of $211,793.61.

7.  On July 1, 2009, FM filed a Request for Payment of Administrative Expenses in the amount of $731,296.46.  On July 27, 2009, FM filed an Amended Request for Payment of

Administrative Request, reducing its Administrative Claim to $607,961.73 (as amended the "Administrative Claim").

8.   On August 24, 2009, the Debtors, together with the Creditors' Committee, filed their Disclosure Statement and proposed Joint Plan of liquidation.

9.   On September 24, 2009, the Bankruptcy Court entered an Order approving the Disclosure Statement and setting a confirmation hearing date at which to consider the Joint Plan.

10.   FM respectfully objects to the confirmation of the Joint Plan. The Joint Plan fails to provide for the payment of Administrative Claims on the Effective Date, except for the administrative claims of professionals. In fact, the proposed treatment and timing of administrative claims is so unspecific and vague, that it fails to satisfy the mandates of Section 1129 of the Bankruptcy Code.

## **OBJECTION**

11.   The Joint Plan is ambiguous as to when and if Administrative Claims will be paid and, as such, is not confirmable under Section 1129 of the Bankruptcy Code. Specifically, the timing of payment of Administrative Claims is vague and insufficient, and requires a reading of both the Joint Plan and the Disclosure Statement for any guidance.

12.   The Disclosure Statement provides that distributions to holders of allowed administrative claims will be made by the Liquidating Trust, which "…shall be established and shall become effective on the Effective Date." (*Disclosure Statement*, p. 44; *Joint Plan,* Art. V.E.1.). However, rather than providing for payment of allowed administrative claims on the Effective Date, the Disclosure Statement contemplates that distributions will be made on the "Initial Distribution Date." *Id*. at p. 51-52. The Joint Plan defines the "Initial Distribution Date", as the "Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, that is at least five (5) Business Days after the funding of the

Liquidating Trust…". (*Joint Plan*, Art I.B.1.73). Thus, Administrative Claimholders cannot expect to be paid until the Liquidating Trust is funded, which seems to require the liquidation of estate assets, the prosecution of causes of action, and other prerequisites to the Effective Date of the Joint Plan and the Liquidating Trust being funded. *See*, *Joint Plan*, Art. V.E.

13. The Joint Plan fails to satisfy Section 1129(a)(9)(A) because it does not provide for payment of Administrative Claims upon the Effective Date. Specifically, the Joint Plan provides that, "no Distributions shall be made to the Holder of any Allowed Administrative Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims or (b) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution." *Joint Plan,* Art. III.A.1. Administrative Claimholders are entitled to receive cash equal to the allowed amount of their Administrative Claim on the Effective Date. 11 U.S.C. § 1129(a)(9)(A). The Joint Plan proposes to pay Administrative Claims in a manner that is contrary to the Bankruptcy Code. As the Joint Plan does not comply with Section 1129 of the Bankruptcy Code, the Court must deny confirmation of same.

14. While the Joint Plan proponents contend that Administrative Claimholders will be paid in full on account of their claims and are not impaired, the Joint Plan provides no precise commitment as to when and how the Administrative Claims will in fact be paid. *See, Joint Plan,* Art. III.A.1.

15. Furthermore, it appears that the proponents are not certain whether the estates have sufficient assets to pay Administrative Claims in full, and nothing in the Joint Plan requires this determination to be made on or before the Effective Date (i.e., until the Liquidating Trustee, in his discretion, determines that the Liquidating Trust possesses sufficient Available Cash to pay

all Administrative Claims).  This "hedge" by the proponents is bolstered by the Disclosure Statement, which provides, "[n]otwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the Holder of any Allowed Administrative Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims or (b) the Liquidating Trust Oversight committee consents to all or any portion of such Distribution." (*Disclosure Statement,* p. 35). Therefore, it is not at all clear under the Joint Plan whether or when allowed Administrative Claims will be paid.

16. Nor does the Joint Plan make clear exactly how the Liquidating Trust will function or how the Trust Oversight Committee will be governed, creating further vagueness as to when and how Administrative Claims will be paid, if at all.

17. The mere ambiguity surrounding payment of Administrative Claims alone renders the Joint Plan unconfirmable under Section 1129 of the Bankruptcy Code.  Section 1129(a)(9) expressly requires that, "…with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim".  11 U.S.C. § 1129(a)(9)(A).

18. It is well-settled that a Chapter 11 plan cannot be confirmed without full payment of administrative claims, regardless of whether there are any estate assets to pay them.  *See In re Scott Cable Comm's., Inc.,* 227 B.R. 596. 599-600 (Bankr. D. Conn. 1998).

19. Furthermore, administrative claims must be paid on the effective date of a Chapter 11 plan, unless the holders of such claims agree to different treatment.  *In re Am. Coastal Energy Inc.,* 399 B.R. 805, 808 (Bankr. S.D. Tex. 2009) (in a Chapter 11 case, the

debtor must pay administrative expenses in full on the effective date of the plan); *In re Circuit City Stores, Inc.*, Case No. 08-35653, Huennekens, Bankr. J., 2009 Bankr. LEXIS 672 at *25 (Bankr. E.D. Va. Feb. 12, 2009) (finding that rent claims were accorded administrative priority expense treatment under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and shall be payable upon the effective date of any plan of reorganization); *In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005) (administrative expense must be paid in cash on the effective date of the plan); *In re Valley Park Group, Inc.*, 96 B.R. 16, 22 (Bankr. N.D.N.Y. 1989) (chapter 11 plan cannot be confirmed under § 1129(a) where plan proposes to pay administrative expense claimants outside plan and in ordinary course of debtors' business on unspecified distribution date.)

20. In the instant matter, the Joint Plan does not provide for payment of Administrative Claims on the Effective Date. As proposed, allowed Administrative Claims do not get paid until after the Liquidating Trust is funded, and only if the Liquidating Trustee determines that the Liquidating Trust possesses enough available cash to cover all Administrative Claims. *See*, *Joint Plan*, Art. III.A.1. Furthermore, the Liquidating Trustee is not required to file objections to Administrative Claims until four months after the Effective Date, with the option to request further extensions of this period. (*Joint Plan*, Art. VI.I.1). Thus, Administrative Claims that have not yet been allowed are in virtual limbo. As such, the Joint Plan cannot pass scrutiny under Section 1129(a)(9)(A) of the Bankruptcy Code and confirmation should therefore be denied.

## **RESERVATION OF RIGHTS**

21. FM reserves the right to raise further objections to confirmation of the Joint Plan, if any, at the confirmation hearing.

## CONCLUSION

**WHEREFORE**, FM Facility Maintenance, LLC, respectfully requests that the Court deny confirmation of the Joint Plan and grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2009
       Richmond, Virginia

       **SAIBER LLC**
       Nancy A. Washington
       18 Columbia Turnpike, Suite 200
       Florham Park, New Jersey 07932
       (973) 622-3333
       nwashington@saiber.com

       - and -

       **LECLAIRRYAN**

       /s/ Christopher L. Perkins
       Christopher L. Perkins (VSB No. 41783)
       Riverfront Plaza, East Tower
       951 East Byrd Street, Eighth Floor
       Richmond, VA 23219
       (804) 783-7550
       Christopher.perkins@leclairryan.com

# **CERTIFICATE OF SERVICE**

Pursuant to the *Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* entered on November 13, 2008 [Docket No. 130], I hereby certify that on this 16th day of November 2009 the foregoing was served upon the following parties via electronic mail.

Skadden, Arps, Slate, Meagher & Flom, LLP One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Attn: Gregg M. Galardi
Attn: Jan S. Fredericks

McGuireWoods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Attn: Douglas M. Foley

Skadden, Arps, Slate, Meagher & Flom, LLP 333 West Wacker Drive
Chicago, IL 60606
Attn: Chris L. Dickerson

I further certify that the original of the foregoing was filed with the Court via the Clerk's CM/ECF electronic filing system on November 16, 2009.

/s/ Christopher L. Perkins
Counsel