Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - -x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - -X  - - - - - - - - - - - -
                              :
Unical Enterprises, Inc.,     :   Contested Matter No. _____
                              :
              Movant,         :
                              :
v.                            :
                              :
Circuit City Stores, Inc.,    :
                              :
              Respondent.     :
- - - - - - - - - - - - - - -x  - - - - - - - - - - - -
```

**THE DEBTORS' RESPONSE AND OBJECTION TO THE MOTION OF
<u>UNICAL ENTERPRISES, INC. FOR RELIEF FROM THE AUTOMATIC STAY</u>**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[1] by and through their undersigned counsel, hereby respond and object (the "Response") to the Motion of Unical Enterprises, Inc. (the "Movant") for relief from the automatic stay (the "Motion").  In support of the Response, the Debtors respectfully represent as follows:

**BANKRUPTCY BACKGROUND**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, Virginia 23060.

3.  On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

4.  On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

5.  On December 10, 2008, the Court entered that certain Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order").

6.  Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009 (the "General Bar Date"). The deadline for governmental units to file claims that arose before November 10, 2009 was 5:00 p.m. (Pacific) on May 11, 2009 (the "Governmental Bar Date"). Pursuant to the Claims Bar Date

3

Order, this Court approved the form and manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date Order (the "Claims Bar Date Notice").

7.   On December 17 and 19, 2008, KCC served a copy of the Claims Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other parties (Docket No. 1314). In addition, the Debtors published the Claims Bar Date Notice in The Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

8.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed (the "Liquidation").

9.   On January 26, 2009, the Movant filed a proof of claim asserting an unsecured claim in the amount of

4

$4,053,450.00 against the Debtors for breach of contract ("Claim No. 6555").[2]

## CALIFORNIA LITIGATION

10. On or about October 2, 2006, the Movant filed a lawsuit against the Debtors in Los Angeles County, California. The case was removed to the United States District Court for the Central District of California on October 27, 2006 and given case number 06-6384 GPS (CTx) (the "Lawsuit").

11. On or about October 30, 2006, the Movant filed its First Amended Complaint in the Lawsuit alleging breach of contract, breach of covenant of good faith and fair dealing, and promissory estoppel.

12. A jury trial was held from June 17, 2008 through June 24, 2008. At the conclusion of the trial, the jury could not reach a verdict.

13. On August 18, 2009, the court, after a full briefing on the topic, granted Debtors' renewed oral motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.

---

[2] Claim No. 6555 was objected to by the Debtors in the Debtors' Thirty-First Omnibus Objection to Claims (Disallowance of Certain Legal Claims) filed on August 20, 2009 (the "Omni Objection")(Docket No. 4585). The Movant filed a response to the Omni Objection on September 17, 2009 (Docket No. 4975). The status hearing on the Omni Objection and the responses thereto has been continued to December 7, 2009.

5

14. On September 4, 2008, the court entered judgment in favor of the Debtors and ordered that the Movant's action be dismissed with prejudice.

15. The Movant filed its notice of appeal on October 1, 2009 with the Ninth Circuit Court of Appeals, which appeal was assigned case number 08-56628 (the "Appeal"). The Appeal is stayed.

16. On October 23, 2009, the Movant filed the Motion seeking relief from the automatic stay to proceed with the Appeal.

**PRELIMINARY STATEMENT**

17. The Movant has not, and cannot meet its burdens with respect to the Motion. The Movant has failed to meet its statutory burdens under section 362 of the Bankruptcy Code and, therefore, has not established cause to lift or modify the automatic stay. In the Motion, the Movant seeks relief from the automatic stay to allow the Movant to continue the Appeal. Motion, ¶ 5. The Movant has failed to demonstrate, however, that it will suffer any harm or prejudice as a result of the automatic stay if the Appeal does not proceed.

18. Conversely, the Debtors will suffer substantial injury if the stay is lifted and the Movant is allowed to proceed with the Appeal.

19. Therefore, the delay imposed upon the Movant as a result of the automatic stay is likely to be minimal as the Debtors have already substantially begun the claims reconciliation and objection process.  Moreover, the Movant has already availed itself of the Bankruptcy Court's jurisdiction through the claims resolution process when it filed Claim No. 6555.  The Movant's claim can now be readily liquidated in the Bankruptcy Court.  Because the Movant has articulated no cause for lifting the automatic stay, the Motion should be denied in its entirety.

### OBJECTION TO THE MOTION FOR RELIEF FROM STAY

20. The Debtors respectfully object to the Movant's Motion.

21. The automatic stay provided for in section 362 of the Bankruptcy Code operates as a stay against:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . .

7

11 U.S.C. § 362.  "The automatic stay is the most fundamental protection afforded a debtor in bankruptcy," In re Nelco, 264 B.R. 790, 810 (Bankr. E.D. Va. 1999), and Congress intended the automatic stay protection to have broad application.  See H.R. Rep. No. 95-595. 95th Cong., at 340-42 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; S. Rep. No. 95-989, at 49-51 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41.  "The main purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions."  In re Atlas Machine & Iron Works, 239 B.R. 322, 328 (Bankr. E.D. Va. 1998) (citation omitted); see also In re A.H. Robins Co., 788 F.2d 994, 998 (4th Cir. 1985) (stating that a key purpose of section 362 is "to provide the debtor and its executives with a reasonable respite from the protracted litigation, during which they may have an opportunity to formulate a plan"); In re Avis, 178 F.3d 718, 720-721 (4th Cir. 1999).

    22.  Pursuant to section 362(d)(1), an unsecured creditor is entitled to relief from the automatic stay only if it is able to show that cause exists for such relief.  See In re Tristar Auto Group, Inc., 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992) (finding that an unsecured creditor must

8

"establish extraordinary circumstances" for the court to lift the stay).  The only express statutory definition of "cause" includes "the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).  Other circumstances constituting "cause" are determined by the courts on a "case-by-case" basis.  See In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992).  The moving party carries the burden of making an "initial showing of 'cause' for relief from the stay."  In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999) (citations omitted).

23.  To determine whether "cause" exists to lift or modify the automatic stay, the Fourth Circuit has established that a bankruptcy court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied."  Robbins, 964 F.2d at 345 (citing In re Peterson, 116 B.R. 247, 249 (D. Colo. 1990)); see also In re Robinson, 169 B.R. 356 (E.D. Va. 1994) (stating that the court must attempt to "harmonize the interest of both debtor and creditors while preserving the debtor's assets for repayment and reorganization").[3]

---

[3] In making this determination, some of the factors a court should consider are: "1) whether the issues in the litigation involve only state law; 2) whether modifying the stay will promote judicial economy; 3)

9

24.  As demonstrated below, applying this balancing test, the Movant cannot establish a prima facie showing that sufficient cause exists to allow relief from the automatic stay as it has not alleged that the time delay imposed by the stay will impose a serious burden upon the Movant. However, even if the Court finds that the Movant has established a prima facie case, the facts underlying the Motion demonstrate that the Debtors are entitled to continued protection by the automatic stay and that the Movant's claim should be resolved as part of the bankruptcy claims resolution process that is already underway.

**A.  Permitting the Appeal to Proceed Would Cause Prejudice to the Debtors and Their Bankruptcy Estates.**

25.  The "key to determining whether to permit an action to proceed in another tribunal" is whether that case will cause "interference with the pending bankruptcy case." In re Penn-Dixie Indus., 6 B.R. 832, 835 (Bankr. S.D.N.Y. 1980). Even participation in preliminary proceedings can be disruptive, as the Penn-Dixie court explained:

> Interference by creditors in the
> administration of the estate, no matter
> how small, through the continuance of a
> preliminary skirmish in a suit outside

---

whether the bankruptcy court will be disrupted if the stay is not lifted; and 4) whether the estate can be protected if the stay is lifted." Robinson, 169 B.R. at 359 (citing Robbins, 964 F.2d at 344).

10

>     the Bankruptcy Court is prohibited.  In
>     short, the Debtor should not be required
>     to devote energy to this collateral
>     matter at this juncture . . . . This
>     Court will not allow Plaintiffs to chip
>     away piecemeal at the Debtor's automatic
>     stay protection.

Id. at 836-37 (refusing to lift stay for the limited purpose of requiring the debtor to produce customer list in class certification proceeding); see In re Towner Petro. Co., 48 B.R. 183, 191 (Bankr. W.D. Okla, 1985) (refusing to lift stay because discovery would require the debtor to expend sufficient time and effort away from the debtor's attempts at reorganization so as to prejudice the reorganization efforts); In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984) ("Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit."); see also In re Collins, 118 B.R. 35, 38 (Bankr. D. Md. 1990).

    26. At the outset, it should be noted that the Movant's Motion is inconsistent with the fundamental purpose of the automatic stay.  Since March 8, 2009, the Debtors have ceased operations as a going concern business operation.  Since the Liquidation, they have had no operations or employees in California.  The Debtors' few remaining management and staff are taxed with the

11

responsibility of liquidating the remaining assets of the Debtors, winding down the Debtors' estates, and assisting the prosecution of the chapter 11 cases and plan of liquidation.  The Movant nevertheless argues that the stay should be lifted for one claimant so that it can proceed with the Appeal on an adverse ruling in California.

27.  The liquidation of Movant's claim is more conveniently determined by this Court pursuant to section 502 of the Bankruptcy Code in conjunction with the liquidation of other disputed, unliquidated contract claims. See In re UNR Industries, Inc., 54 B.R. 263, 265(Bankr. N.D. Ill. 1985) ("If the Court were to allow Plaintiff's request for relief from the stay with reference to its breach of contract claim, Debtor would be required to defend itself against Plaintiff's claim in a foreign court using funds which would otherwise be available for distribution to all of Debtor's creditors in a plan or plans of reorganization. If the Court were to allow Plaintiff's request for relief from the stay, the Court could not, in fairness, deny such relief to other creditors involved in these procedurally consolidated cases who, like Plaintiff, possess disputed unsecured claims against the Debtor.").

28. The Debtors and their estates would be prejudiced if the automatic stay were modified to permit the Appeal to proceed at this point in this chapter 11 case because litigating the Appeal would expose the Debtors to significant litigation costs using limited human resources to deal with this one claim on an appeal in a non-bankruptcy forum.

29. It is more efficient and cost effective to have the Movant's claim resolved as part of the collective bankruptcy claims resolution process in this Court. Judicial economy is not promoted by lifting the automatic stay in the instant case. At this point, the Movant has filed a notice of appeal with the Ninth Circuit Court of Appeals on a purely legal ruling, but no proceedings have yet commenced in that court. By lifting the automatic stay, this Court would essentially be permitting the Movant to initiate a new proceeding through the appeal process in California.

30. Furthermore, the Movant has provided no reason to suggest that the matter cannot easily be resolved by this Court. The Movant has already filed Claim No. 6555 in the Debtors' bankruptcy case and thereby submitted to the jurisdiction of this Court. The Appeal does not concern any

novel issues of California state law or the resolution of any questions of fact, but rather concerns a purely legal issue on a contract claim that this Court is readily capable of resolving in the bankruptcy claims resolution process. As a result, judicial economy would favor a resolution of the matter in this Court rather than in the Ninth Circuit Court of Appeals. Furthermore, any recovery, if any, the Movant would receive on Claim No. 6555 would be entitled to unsecured claim status in these bankruptcy cases pro rata with other unsecured creditors.

31. Granting the relief requested by Movant could result in opening the flood gates by other claimants wanting to avoid the bankruptcy claims resolution process in this Court. If this Court were to grant the Movant's requested relief, others may argue they are entitled to the same relief and seek to initiate new litigation against the Debtors in various other courts throughout the country. The distraction, delay, substantial costs, and overall prejudice that would result to the Debtors by allowing the relief requested by the Movant would be directly contrary to the express intent of Congress and the express purpose of the automatic stay. See H.R. Rep. No. 95-595. 95th Cong., at 340-42(1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97;

14

S. Rep. No. 95-989, at 49-51 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41.

32. Accordingly, the Debtors will suffer significant prejudice if the Motion were granted because of the distraction and interference to the Debtors' administration of these bankruptcy cases that would flow from allowing the Appeal to proceed at this critical stage of these chapter 11 cases. See In re United States Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).

**B.    The Movant Would Suffer Little, If Any, Hardship If The Automatic Stay is Retained.**

33. While the Debtors would suffer significant prejudice in moving forward with the Appeal, the Movant has not shown that it would be prejudiced if the Motion is denied.  Such a denial would only continue the status quo, Claim No. 6555 can be resolved in this Court through the bankruptcy claim resolution process already underway, and the Movant would only face the ordinary delay that all

15

creditors face in large chapter 11 cases.  Creditor delay is inherent in the bankruptcy process, and is an unavoidable – and intended – consequence of the automatic stay.  See In re Comdisco, Inc., 271 B.R. 273, 279 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants.  That, after all, is its purpose, and the reason they call it a 'stay.'").  Furthermore, the Appeal is still in its infancy as no briefing has yet begun or been filed with the Ninth Circuit.

34.  Moreover, the Movant has already submitted itself to the jurisdiction of the Bankruptcy Court and the claims resolution process when it filed Claim No. 6555. Accordingly, it is in the best interests of both parties for the automatic stay to remain in place and to have the Movant's claims resolved through the claim resolution process.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other and further relief as this Court deems just and proper.

Dated: Richmond, Virginia
      November 30, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

\10137711.2