Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

           IN THE UNITED STATES BANKRUPTCY COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
             Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**FOURTH INTERIM APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM AUGUST 1, 2009 THROUGH OCTOBER 31, 2009**

     McGuireWoods LLP ("MW"), in its capacity as co-counsel

to the debtors and debtors in possession in the above-

captioned jointly administered cases (collectively, the

"Debtors"),[1] submits the following as its Fourth Interim
Application for Compensation and Reimbursement of Expenses
for Services Rendered from August 1, 2009 through October
31, 2009 (the "Application") pursuant to 11 U.S.C. §§ 330,
331 and 503(b) and Federal Rule of Bankruptcy Procedure
2016.  MW certifies that the Debtors have received a copy of
this Application, but have not completed their review.  In
addition, MW certifies that a copy of this Application has
been served on the Office of the United States Trustee and
counsel for the Official Committee of Unsecured Creditors.
For its Application, MW seeks the entry of an order,
substantially in the form attached hereto as Exhibit A,
granting interim approval of compensation in the amount of
$857,682.00 and reimbursement of expenses in the amount of
$24,808.40 for services rendered by MW from August 1, 2009
through October 31, 2009 (the "Application Period").  In

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC
(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address was 9950
Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook
Drive, Glen Allen, Virginia 23060.

support of the Application, MW respectfully represents as follows:

## JURISDICTION

1.    This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The bases for the relief requested herein are sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2016.

## BACKGROUND

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Committee").   To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent.   On January 17, 2009, the agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.   As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

7.   The Disclosure Statement with Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (as amended and modified, the "Disclosure Statement") was filed on August 24, 2009 (Docket No. 4614), and was approved by the Court by an order entered on September 24, 2009 (Docket No. 5090).   The hearing on confirmation of the Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured

Claims (as amended and modified, the "Plan") has been
adjourned.

### MCGUIREWOODS LLP'S EMPLOYMENT

8.   On November 18, 2008, MW filed an Application to
Employ and Retain McGuireWoods LLP as Counsel for the
Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 (Docket No.
191) (the "Employment Application").

9.   On December 8, 2008, the Court entered an order
authorizing the employment of MW as counsel to the Debtors
(Docket No. 791) (the "Employment Order").

10.   By this Application, MW is seeking, _inter alia_,
interim approval of its compensation and reimbursement of
expenses pursuant to the Employment Order and pursuant to
sections 330, 331 and 503(b) of the Bankruptcy Code for the
period of August 1, 2009 through October 31, 2009.

11.   MW charges legal fees on an hourly basis at its
attorneys' and paraprofessionals' hourly rates, which rates
are set in accordance with the attorney's or
paraprofessional's seniority and experience and are adjusted
from time to time.  MW also charges the Debtors for its
actual out-of-pocket expenses incurred including, but not
limited to, photocopying, long distance telephone calls,
messenger services, computer research, travel expenses,

overnight mail and court fees.  MW's fee structure and expense reimbursement policies were disclosed in MW's Employment Application, to which no party objected and this Court approved.  See Docket Nos. 191, 791.

12.  The names of all MW attorneys and paraprofessionals who have worked on this matter and their respective hourly rates are set forth on Exhibit B hereto.

13.  MW currently holds a retainer from the Debtors in the amount of $348,568.07.

14.  To the best of MW's knowledge, and upon information and belief, the Debtors have paid or will pay undisputed postpetition operating expenses in the ordinary course.

15.  To the best of MW's knowledge, and upon information and belief, the Debtors have sufficient funds on hand to pay the compensation and reimbursement of expenses requested herein.

16.  To the best of MW's knowledge, and upon information and belief, the Debtors have filed with the United States Trustee all monthly operating reports presently due, and have paid all quarterly fees to the United States Trustee that are presently due.

### FEE PROCEDURES AND MONTHLY FEE STATEMENTS

17.  On December 9, 2008, this Court entered an Order
Under Bankruptcy Code Sections 105(a) and 331 Establishing
Procedures for Interim Compensation (Docket No. 830) (the
"Interim Compensation Order"), which approved the interim
compensation procedures attached thereto (the "Interim
Compensation Procedures").  Pursuant to paragraph (d) of the
Interim Compensation Procedures, interim applications for
compensation and reimbursement of expenses must be filed on
or before December 15, 2009.  Moreover, in accordance with
paragraphs (a) and (d) of the Interim Compensation
Procedures, MW will serve a copy of this Application upon
the Notice Parties (as defined therein).  Moreover, notice
of the Application will be served on the parties as required
by the Case Management Order (Docket No. 130).

18.  Pursuant to the Interim Compensation Procedures,
approximately on or after the tenth (10th) day of each month
following the month for which compensation was sought, MW
submitted a monthly statement to the Notice Parties (as
defined in the Interim Compensation Procedures).  The
parties had twenty (20) days to review any such statement.
If there were no objections, at the expiration of the twenty
(20) day period, the Debtors were ordered to promptly pay

eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses identified in each monthly statement.  MW submitted monthly statements for each month during the Application Period and no objections were received.  Accordingly, MW has been paid approximately 85% of its total requested fees and approximately 100% of its expenses during the Application Period.  A chart summarizing these payments and the monthly statements is attached hereto as Exhibit C.

## REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

19.  MW has played an important role in advising the Debtors and handling the day to day administration of the Debtors' chapter 11 cases.  As a result of its efforts during the Application Period, MW now seeks interim allowance of $857,682.00 in fees calculated at the applicable guideline hourly billing rates of the firm's personnel who have worked on the cases, and $24,808.40 in expenses actually and necessarily incurred by MW while providing services to the Debtors during the Application Period.

20.  In staffing this case, in budgeting and incurring charges and disbursements, and in preparing and submitting this Application, MW has been mindful of the need to be

efficient while providing full and vigorous representation
to the Debtors.  MW also has been especially cognizant of
the standards established by this Court for compensation of
professionals and reimbursement of charges and
disbursements.  As described in detail herein, MW believes
that the requests made in this Application comply with this
Court's standards in the context of the unique circumstances
surrounding these large and complex chapter 11 cases.

**SUMMARY OF SERVICES PROVIDED DURING THE APPLICATION PERIOD**

**A.   General Case Administration.**

21.  <u>Description</u>.  MW assisted with, <u>inter alia</u>, the
review, analysis and preparation of correspondence,
documents, pleadings and notices; handled the day to day
administration of the Debtors' chapter 11 cases; prepared
and maintained a case calendar, hearing planners and omnibus
hearing agendas used by the Debtors and their professionals
in these chapter 11 cases; prepared for and participated in
all court hearings in these chapter 11 cases; regularly
participated in meetings and telephone conferences with
officers and employees of the Debtors and the Debtors'
financial and other advisors regarding the foregoing as well
as other operational, organizational and strategic issues
arising in the cases; regularly participated in meetings and

telephone conferences with professionals for the Committee,
creditors and other parties in interest regarding the
foregoing and various other issues arising in these cases;
assisted the Debtors with the service of relevant documents
on appropriate parties, and the organization of information
and document requests from various parties; handled issues
relating to electronic case filing; regularly communicated
with the Clerk's office, Chambers and the U.S. Trustee's
office regarding various case administration issues; handled
the internal coordination of motions, responses, objections
and other related matters; coordinated the establishment and
maintenance of a MW's telephone hotline to assist in
responding to the numerous inquiries from creditors and
other parties in interest that these cases have generated;
and researched responses to each message and otherwise
responded to all inquiries tendered through the hotline.

22.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in the
administration and prosecution of these complex chapter 11
cases.

23.  <u>Status</u>.  These and other general case
administration matters will continue until the chapter 11
cases are closed.

24.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 257.0 hours during the Application Period for a total of $69,778.00.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**B.    Restructuring and General Strategy.**

25.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the analysis of wind down materials in connection with board meetings and participated in board meetings; and participated in telephone conferences and meetings with the Debtors and the Creditors' Committee regarding confirmation and postconfirmation matters.

26.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors in the administration and prosecution of these complex chapter 11 cases.

27.   <u>Status</u>.   These matters will continue as the need arises.

28.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 16.1 hours during the Application Period for a total of $8,775.00.   The complete narrative, time detail of

the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**C.    Monthly Operating Reports.**

29.   Description.   MW assisted the Debtors and their professionals with, inter alia, the preparation of and filing of the Debtors' Monthly Operating Reports.

30.   Necessity and Benefit to the Estates.   These services were necessary to assist the Debtors with compliance with the Bankruptcy Code, local bankruptcy rules and the United States Trustee's guidelines.

31.   Status.   These matters will continue as the need arises.

32.   Hours Spent and Compensation Requested.   In connection with the foregoing matters, MW's professionals expended 2.5 hours during the Application Period for a total of $937.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.[2]

**D.    Professional Retention/Fee Applications.**

33.   Description.   Pursuant to the requirements of the Interim Compensation Order, MW has prepared detailed monthly

---

[2] There was one time entry on the October monthly fee statement under the matter number for Schedules and SOFA (0050), which was for the filing of a monthly operating report.   That time entry has been included under Monthly Operating Reports for purposes of the description above.

fee statements for distribution to the Notice Parties and handled inquires from all of the professionals regarding monthly fee statements.  Moreover, MW assisted with, <u>inter alia</u>, various issues pertaining to the retention and payment of various professionals employed by the Debtors and the Committee in connection with the Debtors' bankruptcy cases, including bankruptcy counsel, special counsel, accountants, financial advisors and ordinary course professionals; reviewed, analyzed, drafted and filed employment applications on behalf of the Debtors; coordinated the employment of ordinary course professionals and filed affidavits on behalf of ordinary course professionals according to the procedures established by this Court; and communicated with the Office of the United States Trustee regarding the foregoing.

34.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to comply with the Bankruptcy Code, the Interim Compensation Order and the United States Trustee's guidelines.  Additionally, access to qualified professionals is critical to the Debtors' chapter 11 cases.

35.   <u>Status</u>.  These matters will continue as the need arises.

36.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 39.6 hours during the Application Period for a total of $16,773.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**E.    Creditors Committee.**

37.   <u>Description</u>.   MW participated in meetings and telephone conferences with the Committee regarding the Debtors' chapter 11 cases.

38.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors with various issues related to the Committee.

39.   <u>Status</u>.   These and other related matters will continue until a chapter 11 plan is confirmed.

40.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 3.9 hours during the Application Period for a total of $2,145.00.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**F.    Automatic Stay.**

41.    <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to motions for relief from the automatic stay; negotiated settlements with various parties seeking to lift the automatic stay; reviewed, analyzed and drafted pleadings for various ordinary course professionals regarding the filing of suggestions in bankruptcy in litigation in which the Debtors and/or their current and/or former employees are parties; drafted correspondence and participated in meetings and telephone conferences regarding violations of the automatic stay; and conducted research regarding various issues related to automatic stay matters.

42.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in enforcing the automatic stay, reducing the administrative burden on the Debtors' management and reducing expenses incurred by the Debtors' bankruptcy estates by resolving potential automatic stay related matters.

43.    <u>Status</u>.  These and other automatic stay related matters will continue until a chapter 11 plan is confirmed.

44.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 26.4 hours during the Application Period for a total of $10,810.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**G.   Credit Cards.**

45.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, an agreement with American Express, which resulted in a payment by American Express to the Debtors of over $7 million.

46.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors with issues pertaining to the wind down of various credit card agreements.

47.   <u>Status</u>.   These and other credit card matters will continue as the need arises.

48.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 5.3 hours during the Application Period for a total of $2,415.00.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**H.    Executory Contracts.**

49.   Description.  MW assisted with, inter alia, the review and analysis of various executory contracts; researched, drafted, reviewed and analyzed pleadings regarding the rejection or modification of certain executory contracts; negotiated matters related to the rejection or modification of certain executory contracts; and regularly participated in meetings and telephone conferences with the Debtors, their professionals and opposing counsel regarding the foregoing.

50.   Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in developing and implementing a strategy regarding various executory contracts.

51.   Status.  These matters will continue as the need arises.

52.   Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 5.3 hours during the Application Period for a total of $2,275.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**I.   Litigation.**

53.   Description.  MW historically represented the Debtors in various litigation matters.  MW also assisted with, inter alia, the strategy and negotiations regarding responding to third party subpoenas; continued prosecution of litigation matters in which the Debtors are plaintiffs, and other litigation that could affect the Debtors and/or their current and/or former employees; researched, drafted and filed complaints and responded to a counter-claim; and analyzed strategies and participated in meetings regarding adversary proceedings and flat panel class action litigation.

54.   Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors with various litigation matters.

55.   Status.  These matters will continue as the need arises.

56.   Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 151.1 hours during the Application Period for a total of $59,274.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**J.   Avoidance Actions.**

57.  Description.  MW assisted with, inter alia, the review and analysis of possible avoidance and preference actions and the development of various strategies regarding the foregoing.

58.  Necessity and Benefit to the Estates. These services were necessary to assist the Debtors in developing and implementing strategies for avoidance and preference actions.

59.  Status.  These matters will continue as the need arises.

60.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 10.5 hours during the Application Period for a total of $5,020.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**K.   Vendor Matters.**

61.  Description.  MW assisted with, inter alia, developing and implementing strategies for handling vendor related issues; reviewed, analyzed and responded to correspondence received from various vendors and their counsel; researched, reviewed, analyzed and drafted

pleadings regarding vendors; reviewed and analyzed various vendor related contracts and negotiated with vendors and their counsel to resolve various vendor related issues; and participated in meetings and telephone conferences with the Debtors, the Debtors' professionals and counsel for various vendors regarding the foregoing.

62. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in developing and implementing a strategy for recovering money from vendors and resolving various vendor related issues.

63. <u>Status</u>.  These matters will continue as the need arises.

64. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 13.6 hours during the Application Period for a total of $6,877.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**L.   Real Estate.**

65. <u>Description</u>.  MW historically represented the Debtors on various real estate matters and continues to handle matters related thereto.  MW also assisted with, <u>inter alia</u>, the review, analysis and drafting of

correspondence, documents and pleadings regarding
disposition of real property leases and the sale of
property; drafted and filed multiple pleadings and notices
regarding the sale of real property; and participated in
meetings and telephone conferences with the Debtors and
their professionals, landlords and their counsel, and other
parties in interest regarding the foregoing.

66.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in various
real estate and related matters.

67.   <u>Status</u>.   These matters will continue as the need
arises.

68.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 112.7 hours during the Application Period for a
total of $35,538.50.   The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**M.   Utilities Matters.**

69.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the
filing of a motion to terminate the blocked account for
utilities; and communicated with the Debtors and their
professionals regarding the foregoing.

70.   <u>Necessity and Benefit to the Estates</u>.   These
services assisted the Debtors in implementing the strategies
for resolving various utility demands.

71.   <u>Status</u>.   These matters are substantially
concluded, however, they will continue as the need arises.

72.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 7.5 hours during the Application Period for a total
of $2,485.50.   The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**N.   Tax Matters.**

73.   <u>Description</u>.   MW historically represented the
Debtors in connection with various tax matters, including an
IRS audit, tax audit appeals and related tax matters, which
are ongoing.   MW also assisted with, <u>inter alia</u>, the review,
analysis and preparation of correspondence, documents and
pleadings regarding various tax matters; participated in the
analysis and researched issues regarding the Debtors'
strategies regarding overall tax procedures and protocols
for tax issues that impact the Debtors' estates; analyzed
tax claims and objections thereto; and participated in

meetings and telephone conferences with the Debtors and various taxing authorities regarding the foregoing.

74. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in connection with resolving tax related issues.

75. <u>Status</u>.  These matters will continue as the need arises.

76. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 182.2 hours during the Application Period for a total of $84,550.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**O.   Claims Administration.**

77. <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of and responses to numerous claimants' communications; researched, analyzed, drafted and filed multiple omnibus objections to claims and reviewed and analyzed claims regarding the foregoing; analyzed responses to omnibus claim objections, negotiated resolutions to omnibus claim objections and drafted and filed pleadings in connection therewith; drafted and maintained a summary of the status of all adjourned claims; and participated in

multiple telephone conferences and meetings with Debtors and their professionals regarding the foregoing.

78.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors in developing and implementing a claims resolution strategy and responding to claimants regarding claims related issues.

79.   <u>Status</u>.   These matters will continue as the need arises.

80.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 1,321.3 hours during the Application Period for a total of $458,453.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**P.**   **Disclosure Statement and Plan.**

81.   <u>Description</u>.   MW assisted with the, <u>inter</u> <u>alia</u>, researching, drafting and filing of the disclosure statement and plan of liquidation; researched issues and participated in meetings regarding substantive consolidation; participated in the hearing on approval of the disclosure statement; assisted the noticing agent with matters related to solicitation; and participated in communications with the

Debtors, counsel for the Creditors' Committee and other professionals and creditors regarding the foregoing.

82.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors in developing a plan of liquidation and disclosure statement.

83.   <u>Status</u>.   These matters will continue as the need arises.

84.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 143.2 hours during the Application Period for a total of $65,741.00.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**Q.   Employee Benefits/Pensions.**

85.   <u>Description</u>.   MW historically represented the Debtors in connection with various employee benefit and pension matters.   MW also assisted with, <u>inter</u> <u>alia</u>, the review and analysis of various qualified domestic relations orders.

86.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors with various employee benefit and pension matters.

87.   <u>Status</u>.   These matters will continue as the need arises.

88.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 3.0 hours during the Application Period for a total of $958.00.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**R.    Intellectual Property Matters.**

89.   <u>Description</u>.   MW has historically represented the Debtors in connection with various trademark and intellectual property matters.   In addition, MW assisted the Debtors and their professionals with the review and transfer of various intellectual property matters to Systemax; and analyzed issues and corresponded with the Debtors regarding the renewal or abandonment of various trademarks.

90.   <u>Necessity and Benefit to the Estates</u>.   These services were necessary to assist the Debtors with various intellectual property matters.

91.   <u>Status</u>.   These matters will continue as the need arises.

92.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals

expended 35.6 hours during the Application Period for a total of $10,635.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**S.    Vendor Claim Litigation.**

93.   <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the analysis and strategy of filing complaints against various vendors; and participated in meetings with the Debtors regarding the foregoing.

94.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in developing and implementing a strategy for resolving various vendor related issues.

95.   <u>Status</u>.  These matters will continue as the need arises.

96.   <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 17.8 hours during the Application Period for a total of $7,467.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**T.   Asset Sales.**

97. <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>,
drafting and filing multiple pleadings regarding the sale
and auction of assets, analyzed and developed strategies
regarding the marketing, auction, and sale of assets, and
participated in multiple meetings and telephone conferences
with the Debtors, their professionals, bidders, and other
parties regarding the foregoing.

98.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in the sale
and disposition of their assets.

99.   <u>Status</u>.   These matters are substantially
concluded, however, they will continue as the need arises.

100. <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 16.5 hours during the Application Period for a
total of $6,771.50.   The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

<u>**APPLICABLE LEGAL STANDARD**</u>

101. The Bankruptcy Code sets forth the legal standards
for awarding compensation to professionals employed by the
debtor.   The format for fee applications is set forth in the

U.S. Trustee's Guidelines for Reviewing Applications for
Compensation and Reimbursement of Expenses Filed under
section 330 of the Bankruptcy Code (the "Guidelines").

102. Under section 330 of the Bankruptcy Code, the
Court may award counsel to the Debtors reasonable
compensation for actual, necessary services rendered by such
attorneys and paraprofessionals employed by such attorneys
based on the nature, extent and value of the services
rendered, time spent on such services and the cost of
comparable services other than in a bankruptcy case.
Furthermore, the Court may award reimbursement for actual,
necessary expenses.

103. The expenses incurred by MW, as set forth herein,
are reasonable and necessary charges for items including,
but not limited to, photocopying, long distance telephone
calls, messenger services, computer research, travel
expenses, overnight mail and court fees.  Photocopy charges
are assessed at ten cents ($.10) per page, which MW believes
to be competitive for professional firms in this geographic
area.  Some larger copy and mailing projects may have been
performed at an outside copy center at a lower per page
rate.  In all cases, MW has passed through the costs of the
outsourced copy or mailing projects to the estate without

markup.   MW incurred messenger service charges when such
delivery was more economical or when prompt delivery was
necessary in a given circumstance.

104. Under the "lodestar" approach, the Court should
consider the number of hours of service reasonably devoted
to the case multiplied by the attorney's reasonable rates.
Courts frequently consider the specific "lodestar" factors
enumerated in Johnson v. Georgia Highway Express, Inc., 488
F.2d 714 (5th Cir. 1974).   These lodestar factors were
adopted by the Fourth Circuit in Barber v. Kimbrells, Inc.,
577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934
(1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th
Cir. 1981), where the Fourth Circuit held that the district
court should employ the lodestar approach, and then adjust
the fee on the basis of the remaining Johnson factors in the
case.   The following are the Johnson factors:

> (a)  the time and labor required;
>
> (b)  the novelty and difficulty of the questions;
>
> (c)  the skill requisite to perform the legal
> service properly;
>
> (d)  the preclusion of other employment by the
> attorney due to acceptance of the case;
>
> (e)  the customary fee;
>
> (f)  whether the fee is fixed or contingent;

(g)  time limitations imposed by the client or the circumstances;

(h)  the amount involved and the results obtained;

(i)  the experience, reputation and ability of the attorneys;

(j)  the "undesirability" of the case;

(k)  the nature and length of the professional relationship with the client; and

(l)  awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

105. MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

106. Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

107. MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to effectively and efficiently address issues

arising in a national bankruptcy case.  Further, the rates charged by MW are significantly less than rates charged by other law firms in comparable national chapter 11 cases and MW's rates are consistent with rates charged to other clients in non bankruptcy matters.[3]  MW has efficiently assisted the Debtors by employing a streamlined case management structure that generally consists of a core team with various other attorneys and paraprofessionals assigned to other discrete tasks to avoid the performance of duplicative or unnecessary work.  MW believes the fees requested herein satisfy the <u>Johnson</u> factors as set forth above.

## <u>SUMMARY OF EXHIBITS</u>

108. A proposed order approving the Application is attached hereto as <u>Exhibit A</u>.

109. Attached hereto as <u>Exhibit B</u> is a list of all attorneys and paraprofessionals who have worked on these cases, by name, year of admission (where applicable), hourly rate, hours expended on these cases, and total fees incurred.

---

[3] Douglas M. Foley is board certified by the American Board of Certification as specialists in the field of Business Bankruptcy Law. <u>See</u> 11 U.S.C. § 330(a)(3)(E).

110. Pursuant to the Interim Compensation Order, MW has received eighty-five percent (85%) of its monthly fees and one hundred percent (100%) of its monthly disbursements for services rendered in August, September and October 2009. In total, MW has received $729,029.70 in fees and $24,808.40 in disbursements during the Application Period. See Exhibit C attached hereto for a statement of those payments.

111. A summary of all actual and necessary expense disbursements is attached hereto as Exhibit D.

112. A chronological itemization of time categorized by task performed is attached hereto as Exhibit E. MW has made every effort to place all time entries in the proper service category; however, it should be noted that in some circumstances an entry could have been properly placed in more than one of the service categories. In such circumstances, MW has used its best efforts to place the time entry in the service category that represents the primary purpose of the services rendered. Time entries do not appear in more than one service category.

### NOTICE

113. Pursuant to the Interim Compensation Order, MW has served copies of the Application on the Notice Parties (as defined therein). In addition, MW has served notice of the

33

hearing on the Application on the parties required by the Case Management Order.  MW submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

114. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Application, the Debtors request that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## NO PRIOR REQUEST

115. No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's fourth interim application for compensation and reimbursement of expenses.

WHEREFORE, MW respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving the compensation and reimbursement of expenses requested herein on an interim basis, (ii) authorizing and directing the Debtors to pay such amounts, and (iii) granting MW such other and further relief as is just and proper.

Dated: December 15, 2009        SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia       FLOM, LLP
                                Gregg M. Galardi, Esq.
                                Ian S. Fredericks, Esq.
                                P.O. Box 636
                                Wilmington, Delaware 19899-0636
                                (302) 651-3000

                                        – and –

                                SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP
                                Chris L. Dickerson, Esq.
                                155 North Wacker Drive
                                Chicago, Illinois 60606
                                (312) 407-0700

                                        – and –

                                MCGUIREWOODS LLP

                                /s/ Douglas M. Foley          .
                                Dion W. Hayes (VSB No. 34304)
                                Douglas M. Foley (VSB No. 34364)
                                One James Center
                                901 E. Cary Street
                                Richmond, Virginia 23219
                                (804) 775-1000

                                Counsel for Debtors and Debtors
                                in Possession

<u>**EXHIBIT A**</u>

Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                 IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                            RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
<u>et al</u>.,                        :
                             :
              Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - X

**ORDER GRANTING FOURTH INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
<u>RENDERED FROM AUGUST 1, 2009 THROUGH OCTOBER 31, 2009</u>**

     Upon consideration of the Fourth Interim Application

for Compensation and Reimbursement of Expenses of

McGuireWoods LLP, Co-counsel to the Debtors, for Services

Rendered from August 1, 2009 through October 31, 2009 (the

"Application"); and the Court having reviewed the
Application and the Court having determined that the relief
requested in the Application is necessary and appropriate;
and it appearing that proper and adequate notice of the
Application has been given and that no other or further
notice is necessary; and upon the record herein; and after
due deliberation thereon; and good and sufficient cause
appearing therefor, it is hereby

     **ORDERED, ADJUDGED, AND DECREED that:**

1.    The Application meets the requirements of the
Bankruptcy Code and the compensation and reimbursement of
expenses sought in the Application is both fair and
reasonable.

2.    The Application is hereby approved in its
entirety, and compensation for the Application Period in the
total amount of $857,682.00 is hereby approved, and the
Debtors are hereby authorized and directed to pay
McGuireWoods LLP the unpaid portion of such compensation.

3.    The reimbursement of expenses for the Application
Period in the total amount of $24,808.40 is hereby approved,
and the Debtors are hereby authorized and directed to pay
McGuireWoods LLP any unpaid portion of such reimbursements.

4.    This Court will retain jurisdiction with respect

to any dispute concerning the relief granted hereunder.

Dated:  Richmond, Virginia
_____, 2010


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

\10269498

## Exhibit B

In re Circuit City Stores, Inc., et al.
Case No. 08-35653 (Jointly Adminstered)

Name of Applicant:  McGuireWoods LLP
Role: Co-counsel to the Debtors

First Interim Application:
    Fees Approved: $896,193.25
    Expenses Approved: $37,355.52

Third Interim Application:
    Fees Approved: $757,717.00
    Expenses Approved: $25,549.27

Second Interim Application:
    Fees Approved: $706,661.50
    Expenses Approved: $9,794.66

Fourth Interim Application:
    Fees Requested: $857,682.00
    Expenses Requested: $24,808.40

### Summary of Timekeepers

| Attorneys | Admitted | 2009 Rate | 2009 Hours | Amount |
|---|---|---|---|---|
| Ashcroft, Erin Q. | 2007 | $300.00 | 37.8 | $11,340.00 |
| Bell, Craig D. | 1983 | $530.00 | 107.0 | $56,710.00 |
| Blanks, Daniel F. | 2002 | $375.00 | 516.3 | $193,612.50 |
| Boehm, Sarah B. | 2000 | $450.00 | 349.9 | $157,455.00 |
| Cushmac, Anne Marie | 1995 | $490.00 | 8.7 | $4,263.00 |
| Diller, Elizabeth A. | 2008 | $275.00 | 2.0 | $550.00 |
| Elbert, Regina Johnson | 2005 | $345.00 | 0.4 | $138.00 |
| Foley, Douglas M. | 1992 | $550.00 | 355.1 | $195,305.00 |
| Fratkin, Bryan A. | 1995 | $490.00 | 14.7 | $7,203.00 |
| Grotins, Jodie | 2008 | $300.00 | 0.3 | $90.00 |
| Gunlock, Matthew T. | 2006 | $290.00 | 93.0 | $26,970.00 |
| Peyton, Janet P. | 1996 | $460.00 | 5.0 | $2,300.00 |
| Pittman, Edmund S. | 1992 | $450.00 | 2.8 | $1,260.00 |
| Rooksby, Jacob H. | 2007 | $315.00 | 0.2 | $63.00 |
| Sheerin, Joseph S. | 2001 | $450.00 | 4.1 | $1,845.00 |
| Smith, Douglas B. | 2006 | $295.00 | 24.6 | $7,257.00 |
| Stark, Bryan A. | 2007 | $295.00 | 223.6 | $65,962.00 |
| Tennant, J. Christian | 2005 | $285.00 | 10.5 | $2,992.50 |
| **ATTORNEY TOTALS:** | | | **1756.0** | **$735,316.00** |

| Paraprofessionals | | | | |
|---|---|---|---|---|
| Barnett, Charlotte C. | | $175.00 | 0.2 | $35.00 |
| Cain, Karen B. | | $195.00 | 270.1 | $52,669.50 |
| Dagrosa, Gloria K. | | $225.00 | 0.8 | $180.00 |
| Ferrell, Connie | | $215.00 | 4.0 | $860.00 |
| Gokey, Kymberleigh B. | | $160.00 | 5.5 | $880.00 |
| Hall, Dana James | | $225.00 | 127.0 | $28,575.00 |
| Neilson, Linda J. | | $185.00 | 189.7 | $35,094.50 |
| Tarnower, Susan C. | | $350.00 | 1.2 | $420.00 |
| von Bargen, Nancy S. | | $220.00 | 16.6 | $3,652.00 |
| **PARAPROFESSIONAL TOTALS:** | | | **615.1** | **$122,366.00** |

| | | | | |
|---|---|---|---|---|
| **TOTALS:** | | | **2371.1** | **$857,682.00** |
| **BLENDED HOURLY RATE:** | | **$361.72** | | |

**Exhibit C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|---|---|
| August 1, 2009 to August 31, 2009 | $240,742.00 | $204,630.70 | $204,630.70 | $36,111.30 | $6,123.19 | $6,123.19 | $6,123.19 | $0.00 |
| September 1, 2009 to September 30, 2009 | $308,797.50 | $262,477.88 | $262,477.88 | $46,319.62 | $7,470.68 | $7,470.68 | $7,470.68 | $0.00 |
| October 1, 2009 to October 31, 2009 | $308,142.50 | $261,921.13 | $261,921.13 | $46,221.37 | $11,214.53 | $11,214.53 | $11,214.53 | $0.00 |
| **TOTALS:** | **$857,682.00** | **$729,029.70** | **$729,029.70** | **$128,652.29** | **$24,808.40** | **$24,808.40** | **$24,808.40** | **$0.00** |

## <u>Exhibit D</u>

### Summary of Expenses

| <u>Disbursement</u> | <u>Amount</u> |
|---|---|
| Copy Charges | $2,963.60 |
| Overnight Delivery | $349.87 |
| Telephone and Teleconference Charges | $1,271.46 |
| Computer Research | $149.36 |
| Working Meals | $593.30 |
| Travel | $11,409.86 |
| Court Costs | $7,783.06 |
| Professional Services | $287.89 |
| **TOTAL:** | **$24,808.40** |