| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

    - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

         IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
Circuit City Stores, Inc.,    :   Case No. 08-35653(KRH)
et al.,                       :
                              :
           Debtors.           :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' REPLY IN SUPPORT OF OBJECTION TO CLAIM OF
PANASONIC CORPORATION OF NORTH AMERICA**

The debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors")[1] hereby submit this reply (the "Reply") to

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City
                                                    *(cont'd)*

the response (D.I. 5662; the "Response") of Panasonic Corporation of North America ("Panasonic") to Debtors' Objection To Claim Of Panasonic Corporation (D.I. 4630; the "Objection")[2] and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.   As discussed in the Objection, the Debtors submit that Panasonic has not satisfied its burden under Bankruptcy Code section 503(b)(9) because Panasonic has not demonstrated that the Consigned Goods were "received" on or after October 21, 2008 -- the date that was twenty days prior to the Petition Date.  Indeed, the Debtors submit, and Panasonic agrees, that the Debtors took actual physical possession of the Consigned Goods prior to October 21st.  See Resp. at ¶ 14.

---

*(cont'd from previous page)*
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

2

2. Panasonic contends, however, that the date the Debtors took physical possession of the Consigned Goods is legally irrelevant under the particular circumstances applicable to its claim under section 503(b)(9). Specifically, Panasonic argues that although the Debtors took physical possession of the Consigned Goods before October 21, 2008, the Debtors did not "receive" the Consigned Goods for purposes of section 503(b)(9) until a date subsequent to October 21st when title was transferred to the Debtors.[3] Consequently, Panasonic asserts that the Claim is entitled to administrative priority under Bankruptcy Code section 503(b)(9) notwithstanding the Debtors actual physical possession of the Consigned Goods before the twenty days preceding the Petition Date.

3. Thus, the parties' disagree on the meaning of the word "received" as that word is used in section 503(b)(9). The Debtors contend that "received" means actual physical possession of the Consigned Goods,

---

[3] As noted in the Objection, the Consignment Agreement provides that "[t]itle to the Consigned Products . . . shall remain in Panasonic until such time as the products are sold by Circuit City to its customers." Consignment Agreement at § 1(b).

3

regardless of whether the goods were consigned goods or goods sold to the Debtors. As demonstrated below, this interpretation is not only consistent with the ordinary meaning of "received", but also supported by the definition of "receipt" in the Uniform Commercial Code (the "UCC"), and the only reported case to interpret "received" in the context of Bankruptcy Code section 503(b)(9).

        4.    Panasonic, on the other hand, argues that the Court should instead interpret "received" to take into account an alleged difference between goods consigned and goods sold to the Debtors and, thus, to interpret "received" to mean the date on which title passed. In support of its position Panasonic argues that (i) the word "received" is ambiguous and (ii) the unique relationship, whereby the parties engage in hybrid consignment/sale transactions, justifies using the date that title transferred as the date the Consigned Goods were "received" within the meaning of section 503(b)(9).

        5.    As demonstrated below, "received" is not ambiguous and the meaning of a word in a statute should not vary depending on the particular circumstances of a

4

specific transaction. Instead, the unambiguous meaning of the word "received" should be applied to the wide variety of facts and circumstances. Consequently, Panasonic's request that its Claim be accorded adminstrative expense status under section 503(b)(9) should be denied.

**ARGUMENT**

**I. "RECEIVED" IS NOT AMBIGUOUS AND SHOULD BE INTERPRETED CONSISTENT WITH ITS ORDINARY MEANING AND THE MEANING OF ITS FUNCTIONAL EQUIVALENT, "RECEIPT".**

6. As discussed in the Objection, the Debtors submit that "received" should be interpreted as meaning taking physical possession of the Consigned Goods. Panasonic disagrees and argues that section 503(b)(9) is ambiguous because "received" is not defined. As such, Panasonic contends that "received" must be interpreted to mean "the moment that Circuit City acquires title (or possession) as a buyer in a sale transaction" and insists that this interpretation is "consistent with section 503(b)(9)'s apparent purpose[.]" Resp. at ¶¶ 15, 18. Panasonic's proposed interpretation should be rejected because it is inconsistent with the ordinary meaning of

5

"received" and the meaning of its functional equivalent, "receipt".

       7.   Contrary to Panasonic's suggestion, the fact that "received" is not defined in the Bankruptcy Code does not render the term ambiguous. See, e.g., United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008) ("[S]tatutory silence does not prove that a term is ambiguous[.]" (citations omitted)); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir. 1998); (finding the term "transaction" not ambiguous even though not defined in statute); Bass v. Stolper, Koritzinsky, Breqster & Neider, S.C., 111 F.3d 1322, 1325 (7th Cir. 1997) (same). Instead, principles of statutory construction dictate that "received" should be interpreted consistent with its ordinary meaning. See, e.g., Cuomo v. Clearing House Ass'n, __ U.S. __, 129 S.Ct, 2710, 2723 (2009) (noting that "the ordinary meaning of the words chosen by Congress provides the starting point for interpreting the statute" where a word is not defined by statute); Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").

6

8. <u>Webster's Ninth New Collegiate Dictionary</u> defines "receive[d]", in the first instance, as "[having] come into possession of." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 982 (9th ed. 1986). Thus, the Debtors' proposed interpretation of "received" as taking physical possession is consistent with the word's ordinary meaning.

9. The Debtors' proposed interpretation is also consistent with interpretations of "receipt" in Bankruptcy Code section 546(c), as well as the definition of "receipt" in UCC Article 2. Courts have unanimously interpreted "receipt" in Bankruptcy Code section 546(c) to mean taking "physical possession". <u>See</u>, <u>e.g.</u>, <u>Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.)</u>, 740 F.2d 220, 224-25 (3d Cir. 1984) (holding that receipt under section 546(c) occurred when buyer's bailee took actual physical possession of goods, not when title and risk of loss passed); <u>In re Trico Steel Co., L.L.C.</u>, 282 B.R. 318, 324 (Bankr. D. Del. 2002) (finding no receipt where buyer lacked physical possession of the goods, even if title passed under the

contract).[4]  In reaching this conclusion, courts relied upon the definition of "receipt" in UCC Article 2.  See id.  UCC Article 2 provides that "'[r]eceipt' of goods means taking physical possession of them."  UCC § 2-103.

       10.  The Supreme Court has recognized that when two words are similar and concern related issues, they may be treated as "functional equivalent[s]" and interpreted identically.  See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (recognizing that the Court previously "interpreted 'involving commerce' . . . as the functional equivalent of the more familiar term 'affecting commerce' . . . ").

---

[4] See also In re R.F. Cunningham & Co., Inc., 2006 WL 3791329 at *1-2 (Bankr. E.D.N.Y. Dec. 21, 2006) (stating that "[t]he [right of reclamation] do[es] not depend on the passage of title" but rather receipt of goods, "defined as taking physical possession of goods"); In re Kellstrom Industries, Inc., 282 B.R. 787, 791 (Bankr. D. Del. 2002) (holding delivery of goods or transfer of title alone cannot constitute "receipt", which requires transfer of actual physical possession); In re Maloney Enterprises, Inc., 37 B.R. 290, 292 (Bankr. E.D. Kent. 1983) (holding that passage of title does not control in determining "receipt" for purposes of section 546(c); rather, "receipt" occurs when the debtor took actual, physical possession of the goods).  Cf. In re Bill's Dollar Stores, Inc., 164 B.R. 471, 477 (Bankr. D. Del. 1994) (concluding that the date governing inspection, payment obligation and accounting under contract are irrelevant to physical possession so as to constitute receipt in reclamation context).

8

11. It cannot be reasonably disputed that the words "receipt" and "received" are functionally equivalent. Indeed, section 546(c) uses both terms in the same sentence to discuss the same concept. See 11 U.S.C. § 546(c) ("the rights and powers of the trustee . . . are subject to the right of a seller . . . to reclaim such goods if the debtor has received such goods while insolvent, . . . but such seller may not reclaim such goods unless such seller demands in writing . . . not later than 45 days after the date of receipt of such goods" (emphasis added)).

12. Similarly, it cannot be reasonably argued that sections 546(c) and 503(b)(9) do not address related matters. As evidenced by the legislative history and recognized by this Court, section 503(b)(9) was enacted in connection with amendments to Bankruptcy Code section 546(c)(2). See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA") § 1227; see also In re Circuit City Stores, Inc., 416 B.R. 531, 536 (Bankr. E.D. Va. 2009). Additionally, section 546(c) expressly refers to section 503(b)(9). See 11 U.S.C. § 546(c)(2) ("the seller still may assert the rights contained in section

503(b)(9)"). And, both sections concern "goods" "received" by a debtor prior to the petition date. Compare 11 U.S.C. § 546(c) ("the rights and powers of the trustee . . . are subject to the right of a seller . . . if the debtor has received such goods . . . within 45 days before the date of the commencement of a case under this title") with 11 U.S.C. § 503(b)(9) ("[t]here shall be allowed administrative expenses . . . including the value of any goods received by the debtor within 20 days before the commencement of a case under this title"). Consequently, "received" and "receipt" should be treated as functional equivalents, and "received" should be interpreted as taking physical possession.

13.  Finally, as discussed in the Objection, the Debtors' proposed reading is supported by the only reported case interpreting the meaning of "received" in section 503(b)(9). See In re Pridgen, 2008 WL 1836950 (Bank. E.D.N.C. Apr. 22, 2008). In Pridgen, the court declined to reconsider an order denying the creditor a section 503(b)(9) claim for the value of gasoline physically received prior to the twenty days preceding the debtor's petition date, but sold within that twenty

10

day period.  See id.  In doing so, the Pridgen court refused to consider whether "receipt" of the gasoline was delayed, beyond the point of the debtor taking physical possession, until title transferred to the debtor upon sale to consumers.  Instead, it cited the UCC Article 2 definition of "receipt" and, in turn, equated "received" with "[taking] physical possession".  See id. at *3-4. (concluding that facts "d[id] not support a finding that the debtors took physical possession of the gas or 'received' the gas sold within 20 days before the commencement of the case").

14.   Notwithstanding the foregoing, Panasonic argues that, under the particular circumstances of this matter, "received" should mean "the moment that Circuit City acquires title (or possession) as a buyer in a sale transaction".  Resp. at ¶ 15.  Leaving aside that statutory interpretation is not fact driven, see In re Enron Creditors Recovery Corp., 2009 WL 3349371 at *6 (S.D.N.Y. Oct. 16 2009), Panasonic's interpretation is inconsistent with the ordinary meaning of "received" and all alternative ordinary definitions listed in

11

Webster's,[5] and has been rejected by courts considering the meaning of the functional equivalent of received -- "receipt".  See supra ¶ 9.  Indeed, as one court recognized, to interpret "receipt" as Panasonic suggests would "contort the plain meaning of the Bankruptcy Code and the Uniform Commercial Code[.]"  In re First Software Corp., 72 B.R. 403, 407 (Bankr. D. Mass. 1987); see Official Comment to U.C.C. § 2-103(l),(3) (highlighting distinction between "delivery" (when title passes) and "receipt").  Consequently, the court declined to "interject[] the concept of title into the simple definition of receipt[.]").  First Software, 72 B.R. at 407.

15.   The Debtors submit that the same logic applies here, especially in light of the ordinary meaning of the word "received".  Accordingly, "received" should be interpreted as taking physical possession, and

---

[5]   See WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 982 (defining "received" in the second, third, fourth and fifth instances as "to act as a receptacle or container for," "to permit to enter," "to accept as authoritative, true, or accurate," and "to support the weight or pressure of", respectively).

Panasonic's Claim should not be awarded administrative priority under section 503(b)(9).

## II. THE PARTIES' CONTRACTUAL RELATIONSHIP DOES NOT SUPPORT PANASONIC'S NOVEL INTERPRETATION OF "RECEIVED" IN SECTION 503(B)(9).

16. Panasonic attempts to dissuade this Court from using the ordinary meaning of "received" in interpreting section 503(b)(9), arguing that state law and the contractual consignment relationship between the parties justify this Court finding that the Debtors did not receive the Consigned Goods until the sale transaction occurred. In support, Panasonic argues that Article 9, not Article 2, governs the parties relationship, and thus, physical possession is irrelevant. Resp. ¶¶ 2-5, 13-14. Instead, Panasonic contends that the Debtors only "received" the Consigned Goods when title passed. As demonstrated below, Panasonic's argument fails for a number of reasons.

17. Critically, the parties' dispute requires this Court to interpret a section of the Bankruptcy Code -- a Federal statute, not Article 9. As discussed above, in interpreting a statute, this Court should apply the ordinary meaning of the words of the statute. See, supra

13

§ I. In this instance, the ordinary meaning of "received" is taking physical possession. See id. Thus, Panasonic's reliance on Article 9, as opposed to Article 2, is misplaced. See Christ v. Beneficial Corp. (In re Consolidated "Non-Filing Insurance" Fee Litigation) 2001 WL 35840127 at *8 (M.D. Ala. Feb. 27, 2001) (recognizing that where litigation involves a federal statute, state law defining the parties' relationship is irrelevant); see, generally, Ford v. Baroff (In re Baroff), 105 F.3d 439, 442 (9th Cir. 1997) (explaining that where parties were not litigating the validity of a contract, but rather federal statutory issues, the bankruptcy court appropriately applied federal law instead of the state law governing the contract).

18. In any event, even assuming the parties' state law and contractual relationship were relevant to the proper interpretation of the word "received" in section 503(b)(9), Panasonic's reliance on Article 9 is also misplaced because Article 9 does not define or otherwise address "receipt" or any similar concept in

14

defining parties' rights.[6]  Instead, Article 9 merely establishes how a consignor may obtain priority over a secured creditor of the consignee with a perfected security interest in the consigned goods.  See UCC § 9-114.

19.  More importantly, perhaps, if the Court were inclined to look to the Consignment Agreement itself, the Agreement supports the Debtors' position that "received" should be given its ordinary course meaning of taking physical possession.  Specifically, the Consignment Agreement treats "sale" (or "title transfer"[7]) and "receipt" of the Consigned Goods as distinct events by addressing them in separate sections.

---

[6]  To the extent that the concept of "receipt" or "received" were relevant to Article 9, in all likelihood, courts would rely on Article 2.  See Equal Justice Foundation v. Deutsche Bank Trust Co. Americas, 2006 WL 2795211 at *7 (S.D. Ohio Sept. 27, 2006) (referring to the definition of "repudiation" supplied in Article 2, where not defined in Article 5); LeChase Data/Telecom Services, LLC v. Goebert, 844 N.E.2d 771, 778 (N.Y. App. Ct. 2006) (defining "notice" in Article 9 with reference to Article 1 where not otherwise defined); Barber v. United States Nat'l Bank of Or., 750 P.2d 1183, 1185 (Or. Ct. App. 1988) (interpreting "properly payable", where not defined in one section, by reference to another section of the UCC); see, generally, Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998) ("[A] statute is to be considered in all its parts when construing any one of them").

[7]  See Consignment Agreement at § 1(b); see also supra n.3.

15

20. In particular, "receipt" is addressed in section 4(b) of the Consignment Agreement. Under this section, Circuit City was obligated upon "receipt of the Consigned Goods" to issue a report "detailing the quantity of products received." Consignment Agreement at § 4(b) (emphasis added). This report required Circuit City to detail the Consigned Goods of which it actually took physical possession. See id.

21. On the other hand, "sale" is addressed in section 6 of the Consignment Agreement. Section 6 required Circuit City to issue a separate report with respect to any Consigned Goods in its possession that it actually sold. See Consignment Agreement at § 6(b) ("Circuit City shall send Panasonic the following reports validating the sales of Consigned Products for that sales day . . . ."). Thus, this second report was required to provide Panasonic with details regarding the Consigned Goods that Circuit City had in its possession, but were sold and, thus, title transferred. See id. The report had nothing to do with Consigned Goods in Circuit City's

physical possession or "received", but only those which were sold by Circuit City.[8]

22.  Thus, despite Panasonic's attempt to depict a unique consignment/sale relationship with the Debtors, neither relevant law nor the Consignment Agreement itself supports Panasonic's position that "received" in section 503(b)(9) means the date that title passed.

---

[8]  In addition, Panasonic's argument is internally inconsistent because Panasonic admits that the parties' relationship is, in part, governed by Article 2, but rejects certain unfavorable aspects of Article 2. See Resp. at ¶ 15. Specifically, Panasonic suggests that at the time the Consigned Goods were sold to the Debtors, the parties' Article 9 relationship ended in favor of an Article 2 sale transaction. See id. Not unexpectedly, Panasonic acknowledges that Article 2 applies to the parties' sale transaction, see id. at ¶ 3, and even adopts the meaning of "sale" from that Article.[8] See id. at ¶ 15 (relying on the definition of "sale" in Article 2 to suggest that "receipt should be determined at the moment [the Debtors] acquire title (or possession) as a buyer in a sale transaction." (emphasis added)). Yet, in the next breath, without citing any authority, Panasonic rejects the meaning of "receipt" in Article 2. See id. (stating that "physical possession should not be the standard by which to determine 'receipt' in a consignment/sale transaction). This selective application of Article 2 is not only inconsistent, but is also inappropriate.

17

**CONCLUSION**

WHEREFORE, the Debtors request the Court to enter the Order sustaining the Objection and granting such other and further relief as the Court deems appropriate.

Dated: December 17, 2009
Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession