Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

– – – – – – – – – – – – – – – x
In re:                              :    Chapter 11
                                    :
CIRCUIT CITY STORES, iNC.,          :    Case No. 08-35653 (KRH)
et al.,                             :
                                    :
    Debtors.                        :    Jointly Administered
– – – – – – – – – – – – – – – x

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO CERTAIN CLAIMS SUBJECT TO (I) THE DEBTORS' NINETEENTH OMNIBUS OBJECTION TO CLAIMS (RECLASSIFICATION OF CERTAIN MISCLASSIFIED CLAIMS TO GENERAL UNSECURED, NON-PRIORITY CLAIMS) AND (II) THE DEBTORS' THIRTY-THIRD OMNIBUS OBJECTION TO CLAIMS (MODIFICATION AND/OR RECLASSIFICATION OF CERTAIN CLAIMS)**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................... 1

PRELIMINARY STATEMENT ..................................... 1

PROCEDURAL BACKGROUND ..................................... 3

STATEMENT OF MATERIAL FACTS ............................... 5

     A.   The Pre-Petition And DIP Facilities ............. 5

     B.   The Reclamation Procedures Order ................ 8

     C.   The Alleged Reclamation Claims ................. 10

          1.   The LumiSource Reclamation Claim .......... 10

          2.   The Cisco-Linksys Reclamation Claim ....... 11

          3.   The Paramount Reclamation Claim .......... 12

          4.   The Seagate Reclamation Claim ............. 13

          5.   The Denon Reclamation Claim ............... 14

          6.   The Plantronics Reclamation Claim ......... 14

          7.   The Boston Acoustics Reclamation Claim .... 15

ARGUMENT ............................................... 16

     I.   STANDARD FOR SUMMARY JUDGMENT .................. 16

     II. THE RECLAMATION CLAIMS ARE GENERAL UNSECURED,
         NON-PRIORITY CLAIMS AS A MATTER OF LAW ......... 18

         A.   Bankruptcy Code Section 546(c)(1)
            Plainly And Unambiguously Only Granted
            The Respondents The Right To Reclaim
            Their Alleged Goods ....................... 18

         B.   The Respondents Reliance On Pre-BAPCPA
            Cases Is Misplaced ........................ 20

C.   The Respondents' Failure To Pursue
Their Reclamation Rights Also Warrants
Reclassifying Their Reclamation Claims
To Unsecured Non-Priority Claims .......... 25

III. THE RECLAMATION CLAIMS ARE ALSO GENERAL
UNSECURED, NON-PRIORITY CLAIMS BECAUSE THE
GOODS WERE SUBJECT TO THE PRE-PETITION AND
DIP LENDERS' FLOATING LIENS ON INVENTORY ....... 29

CONCLUSION ............................................. 37

**TABLE OF AUTHORITIES**

**CASES**

Page(s)

CSX Transport, Inc. v. Georgia State Board of
    Equalization, 552 U.S. 9 (2007) ....................... 23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1985) .................................. 21

In re Child World,
    145 B.R. 5 (Bankr. S.D.N.Y. 1992) ..................... 27

In re Conn. Pizza, Inc.,
    193 B.R. 217 (Bankr. D. Md. 1996) ..................... 21

In re Dairy Mart Convenience Stores, Inc.,
    302 B.R. 128 (Bankr. S.D.N.Y. 2003) ............... 34, 35

In re Dana Corp.,
    367 B.R. 409 (Bankr. S.D.N.Y. 2007) ............... passim

In re First Magnus Finance Corp.,
    2008 WL. 5046596
    (Bankr. D. Ariz. Oct. 16, 2008) ................... passim

Galey & Lord Inc. v. Arley Corp.
    (In re Arlco, Inc.),
    239 B.R. 261 (Bankr. S.D.N.Y. 1999) ............... 34, 38

In re Georgetown Steel Co., LLC,
    318 B.R. 340 (Bankr. D.S.C. 2004) ............. 20, 27, 30

Goodman v. Resolution Trust Corp.,
    7 F.3d 1123 (4th Cir. 1993) .......................... 17

In re IBIS Corp.,
    272 B.R. 883 (Bankr. E.D. Va. 2001) .................. 16

In re McLouth Steel Products Corp.,
    213 B.R. 978 (Bankr. E.D. Mich. 1997) ........ 25, 26, 28

In re Pester Refining Co.,
    964 F.2d 842 (8th Cir. 1992) ..................... 23, 29

Phar-Mor, Inc. v. McKesson Corp.,
   534 F.3d 502 (6th Cir. 2008) ..................... 20, 30

In re Pluma, Inc.,
   2000 WL. 33673751 (Bankr. M.D.N.C. July 21, 2000) ..... 34

Sibley v. Lutheran Hospital of Md., Inc.,
   871 F.2d 479 (4th Cir. 1989) ......................... 16

Simon & Schuster, Inc. v. Advanced Marketing Services
   (In re Advanced Marketing Services),
   360 B.R. 421 (Bankr. D. Del. 2007) ........... 30, 31, 35

Tate Cheese Co. v. Crofton & Sons, Inc.
   (In re Crofton & Sons, Inc.),
   139 B.R. 567 (Bankr. M.D. Fla. 1992) .............. 26, 28

In re Tucker,
   329 B.R. 291 (Bankr. D. Ariz. 2005) ................... 20

In re US Airways, Inc.,
   2006 WL. 2992495 (E.D. Va. 2006) ..................... 16

U.S. Trustee v. Equip. Services
   (In Re Equip. Services),
   290 F.3d 739 (4th Cir. 2002) ......................... 26

**STATUTES AND RULES**

11 U.S.C. § 502(a) ..................................... 16

11 U.S.C. § 546(c) (2004) .......................... passim

11 U.S.C. § 546(c)(2009) ........................... passim

Fed. R. Civ. P. 56(b) ................................. 17

Fed. R. Bankr. P. 3007(a) ............................. 16

Fed. R. Bankr. P. 9014(c) ............................. 16

## INTRODUCTION

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), pursuant to Rules 3007, 7056, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"), submit this memorandum of law in support of their motion for summary judgment (the "Summary Judgment Motion") on the Nineteenth and Thirty-Third Omnibus Objections (the "Objections")[1] with respect to Reclamation Claims (as defined herein) asserted by LumiSource, Cisco-Linksys, Paramount, Seagate, Denon, Plantronics, and Boston Acoustics (each as defined herein, and collectively the "Respondents").

### PRELIMINARY STATEMENT

By the Objections, the Debtors seek to reclassify each Reclamation Claim from an administrative priority or secured claim to a pre-petition general unsecured, non-priority claim.  Each Respondent has contested the Objections, arguing that its respective Reclamation Claim

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Nineteenth Omnibus Objection and the Thirty-Third Omnibus Objection (each as defined below).

is either a secured claim or entitled to priority under
Bankruptcy Code section 546(c).

As demonstrated below, each Reclamation Claim is,
as a matter of law, however, a pre-petition general
unsecured, non-priority claim for two reasons.  First,
under the clear and unambiguous language of Bankruptcy Code
section 546(c), the Respondents only recourse upon the
Debtors filing petitions for relief was to seek to reclaim
their goods.  See 11 U.S.C. § 546(c).  None of the
respondents, however, pursued that remedy and their failure
to do so resulted in their respective Reclamation Claims
being nothing more than pre-petition general unsecured,
non-priority claims.

Second, on the Petition Date, all of the Debtors'
"inventory", including the goods the Respondents requested
to reclaim, were "subject to" good, valid and fully
perfected and enforceable floating liens held by the
Debtors' Pre-petition Lenders (as defined herein), which
floating liens were satisfied by the Debtors' DIP Lenders
(as defined herein) who provided the Debtors with debtor in
possession financing under the DIP Facility (as defined
herein) itself secured by floating liens on all of the
Debtors' inventory.  Therefore, because the Respondents'

Reclamation Claims were individually and collectively less
than the value of Pre-petition Lenders and DIP Lenders
loans, the Reclamation Claims were mere pre-petition
general unsecured non-priority claims, not secured or
administrative expense claims.  See In re Dana Corp., 367
B.R. 409, 421 (Bankr. S.D.N.Y. 2007) (concluding that "the
Reclamation Claims are valueless").

Accordingly, the Summary Judgment Motion should
be granted, and the Reclamation Claims should be
reclassified as pre-petition general unsecured, non-
priority claims.

### PROCEDURAL BACKGROUND

On June 22, 2009, the Debtors filed the Debtors'
Nineteenth Omnibus Objection to Claims (Reclassification of
Certain Misclassified Claims to General Unsecured, Non-
Priority Claims) (D.I. 3703; the "Nineteenth Omnibus
Objection").  By the Nineteenth Omnibus Objection, the
Debtors sought to reclassify certain filed claims to pre-
petition general unsecured, non-priority claims.

Responses to the Nineteenth Omnibus Objection
were filed by, among others, LumiSource, Inc. ("LumiSource"
and its response, D.I. 4122; the "LumiSource Response"),
Cisco-Linksys LLC ("Cisco-Linksys" and its response, D.I.

4120; the "Cisco-Linksys Response"), Paramount Home

Entertainment Inc. ("Paramount" and its response, D.I. 4154;

the "Paramount Response"), Seagate Technology LLC

("Seagate" and its response, D.I. 4115; the "Seagate

Response"), Denon Electronics (USA) LLC ("Denon" and its

response, D.I. 4148; the "Denon Response"), and Plantronics

Inc. ("Plantronics" and its response, D.I. 4118; the

"Plantronics Response").

On August 20, 2009, the Debtors filed the

Debtors' Thirty-Third Omnibus Objection to Claims

(Modification and/or Reclassification of Certain Claims)

(D.I. 4590; the "Thirty-Third Omnibus Objection").  By the

Thirty-Third Omnibus Objection, the Debtors sought to

reclassify certain claims to pre-petition general unsecured,

non-priority claims.

Boston Acoustics, Inc. ("Boston Acoustics") filed

a response to the Thirty-Third Omnibus Objection (D.I. 4850;

the "Boston Acoustics Response", and collectively with the

Responses to the Nineteenth Omnibus Objection, the

"Responses").

### STATEMENT OF MATERIAL FACTS

The following material facts are not in dispute:

**A.    The Pre-Petition And DIP Facilities.**

On or about January 31, 2008, certain Debtors,
including Circuit City Stores, Inc. ("Circuit City"),
entered into a revolving credit facility (the "Pre-petition
Credit Facility") with Bank of America, N.A., as agent
(together with the lenders under the Pre-petition Credit
Facility, the "Pre-petition Lenders") pursuant to Pre-
petition Credit Agreement.[2]  Final DIP Order[3] ¶ F.  Under
the Pre-petition Credit Facility, the Pre-petition Lenders
advanced loans secured by first priority liens on
substantially all of the Debtors' assets.  <u>See</u> the Besanko
Declaration[4] at p. 5.  The Pre-petition Lenders' collateral

---

[2]  "Pre-Petition Credit Agreement" means the Second Amended and
Restated Credit Agreement dated as of January 31, 2008, as well as
all related documents and agreements, including the Amended and
Restated Security Agreement (the "Pre-petition Security Agreement").

[3]  "Final DIP Order" means the Final Order Pursuant to 11 U.S.C.
Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of
the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence
by the Debtors of Post-Petition Secured Indebtedness with Priority
Over All Secured Indebtedness and with Administrative Superpriority,
(2) Granting Liens, (3) Authorizing Use of Cash Collateral by the
Debtors Pursuant to 11 U.S.C. Section 363 and Providing for Adequate
Protection and (4) Modifying the Automatic Stay (D.I. 1262).

[4]  "Besanko Declaration" means the Corrected Declaration of Bruce H.
Besanko, Executive Vice President and Chief Financial Officer of
Circuit City Stores, Inc. in Support of Chapter 11 Petitions and
First Day Pleadings (D.I. 79).

included, among other collateral, all existing and after-acquired inventory and the proceeds thereof.  <u>See</u> Interim DIP Order[5] ¶ E(iii) (finding that the Pre-petition Lenders had a security interest and liens on among other things, the Debtors' "inventory" and the proceeds thereof; Final DIP Order ¶ F(iii) (same); <u>see</u> <u>also</u> Circuit City Stores, Inc., Current Report (Form 8-K), at Item 1.01 (Feb. 6, 2008) (stating that the Pre-petition Credit Agreement would be "secured primarily by the Company's inventory and credit card receivables").

On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11, Unite States Code (the "Bankruptcy Code"). As of the Petition Date, approximately $898 million was outstanding under the Pre-petition Credit Facility.  <u>See</u> Besanko Declaration at p. 5; <u>see</u> <u>also</u> Final DIP Order ¶ F(ii).  In connection with their bankruptcy filings, the

---

[5]   "Interim DIP Order" means the "Interim DIP Order" means the Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness with Priority over all Secured Indebtedness and with Administrative Superpriority, (2) Granting liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection, (4) Modifying the Automatic Stay and (5) Scheduling a Final Hearing (D.I. 78; the "Interim DIP Order").

Debtors sought authority to enter into a post-petition, debtor in possession, secured financing facility (the "DIP Facility") with Bank of America, N.A., as agent (together with the lenders under the DIP Facility, the "DIP Lenders") pursuant to the DIP Credit Agreement.[6]  As was the case with the Pre-petition Credit Facility, all obligations under the DIP Facility were to be secured by substantially all of the Debtors' existing and after acquired assets, including "inventory" and the proceeds thereof.  See Interim DIP Order ¶ 2(f); Final DIP Order ¶ 2(e).

Importantly, pursuant to this Court's Interim and Final DIP Orders, the Debtors were authorized, among other things, to repay all outstanding obligations under the Pre-petition Credit Facility.  See Interim DIP Order ¶ 2(c); see also Final DIP Order ¶ 2(c). Consequently, on November 12, 2008, the Debtors repaid all of the outstanding obligations under the Pre-petition Credit Facility.  See Circuit City Stores, Inc., Current Report (Form 8-K), at Item 1.01 (Nov. 12, 2008) (noting that all obligations under the Pre-petition Credit Agreement, "including

---

[6]   "DIP Credit Agreement" means that certain Senior Secured, Super-Priority, Debtor-in-Possession Credit Agreement dated November 12, 2008, as subsequently modified, amended, or supplemented, and as approved by the Interim and Final DIP Orders.

outstanding borrowings as of November 12, 2008, have been

subsumed under the DIP Credit Agreement").

**B.    The Reclamation Procedures Order.**

        During the "first day" hearing in these cases,

the Court not only approved the DIP Facility on an interim

basis, but also approved certain reclamation procedures on

an interim basis.  <u>See</u> Interim Reclamation Procedures

Order.[7]  After a hearing on December 5, 2008, the Court

entered a final order with respect to reclamations

procedures (D.I. 897, the "Reclamation Procedures Order").

<u>See</u> Reclamation Procedures Order.

        Pursuant to the Reclamation Procedures Order,

claimants seeking to reclaim goods were required to file

reclamation demands no later than twenty days following the

Petition Date.  Each reclamation demand had to include,

among other information, the information required by

Bankruptcy Code section 546(c).

---

[7]   "Interim Reclamation Procedures Order" means Interim Order Under
Bankruptcy Code Sections 105(a), 362, 503(b), 507(a), 546(c), and
546(h) (I) Granting Administrative Expense Status to Obligations
from Postpetition Delivery of Goods; (II) Authorizing Payment of
Expenses in the Ordinary Course of Business; (III) Authorizing
Debtors to Return Goods; and (IV) Establishing Procedures for
Reclamation Demands (D.I. 133, the Interim Reclamation Procedures
Order").

As part of the approved reclamation procedures, the Debtors were required to advise each reclamation claimant of the allowed amount, if any, of its reclamation demand on or before the day that was one hundred and twenty (120) days following the Petition Date (the "Allowed Reclamation Amount"), and absent giving such notice, the Debtors were deemed to have rejected the reclamation demand. See Reclamation Procedures Order ¶ 5(c).  None of the Respondents were sent a notice setting forth an Allowed Reclamation Amount and, thus, all of their demands were deemed rejected on March 10, 2009.

Importantly, the Reclamation Procedures Order did not deny any request.  Indeed, it expressly provided that:

> Nothing in this Order or the above procedures is intended to prohibit, hinder, or delay any Reclamation Claimant from asserting or prosecuting any of its rights to seek to reclaim goods provided to the Debtors, or affect, alter, diminish, extinguish, or expand the rights or interest, if any, to recover goods (or proceeds thereof) sought to be reclaimed.

Reclamation Procedures Order ¶ 6.  This point was also made clear by counsel at the "first-day" hearing.  See

Transcript of Hearing on November 10, 2008[8] at 84 (Debtors'

counsel stating that if reclamation claimants wanted "to

get [a] TRO and injunction in an adversary proceeding, . . .

[the proposed Reclamation Procedures Order] doesn't

preclude them from doing it").  Nonetheless, none of the

Respondents commenced an adversary proceeding, filed a

motion for relief from the automatic stay, or sought any

other relief from this Court (or any other court, for that

matter) to pursue their Reclamation Demand (as defined

herein), other than sending its reclamation request or

filing its Reclamation Claim (as defined herein).

**C.    The Alleged Reclamation Claims.[9]**

   **1.    The LumiSource Reclamation Claim.**

        On or about November 13, 2008, LumiSource sent a

letter to the Debtors' claims and noticing agent, Kurtzman

Carson Consultants ("KCC"), demanding the return of alleged

goods in the amount of $235,200 (the "LumiSource Goods").

---

[8]  A true and correct copy of the Transcript of Hearing on November 10,
     2008 is attached hereto as Exhibit A.

[9]  As provided for in the Objections, the Debtors only sought to
     reclassify the Reclamation Claims to pre-petition general unsecured
     claims and did not otherwise seek to alter or modify such claims.
     Thus, for purposes of the Objections and the Summary Judgment Motion,
     the Debtors assume that the Reclamation Claims are otherwise valid,
     but reserve any and all rights to object to or otherwise challenge
     the Reclamation Claims at a later date.

LumiSource alleged that the LumiSource Goods were (i)
"goods" within the meaning of the Uniform Commercial Code
(the "U.C.C.") and (ii) received by Circuit City Stores,
Inc. within 45 days prior to the Petition Date.  As such,
LumiSource demanded return of the LumiSource Goods (the
"LumiSource Reclamation Demand").

        Thereafter, on January 29, 2009, LumiSource filed
a claim in the amount of $392,000.00, of which LumiSource
asserted $235,200.00 was allegedly entitled to secured
claim status pursuant to Bankruptcy Code section 546(c)
(the "LumiSource Reclamation Claim").  The remaining
$156,800.00 was classified on the proof of claim form as a
general unsecured claim.

        **2.    The Cisco-Linksys Reclamation Claim.**

        On or about November 10, 2008, Cisco-Linksys sent
a letter to the Debtors' counsel, demanding the return of
alleged goods in the amount of $7,453,957.38 (the "Cisco-
Linksys Goods").  Cisco-Linksys alleged that the Cisco-
Linksys Goods were (i) "goods" within the meaning of the
U.C.C. and (ii) shipped to Circuit City Stores, Inc. and
its affiliates within 53 days of the Petition Date.  As
such, Cisco-Linksys demanded return of the Cisco-Linksys
Goods (the "Cisco-Linksys Reclamation Demand").

Thereafter, on January 21, 2009, Cisco-Linksys filed a claim in the amount of $8,287,653.95, of which Cisco-Linksys asserted $7,453,957.38 was allegedly entitled to secured claim or priority status pursuant to Bankruptcy Code sections 546(c) and 507(a)(2) (the "Cisco Linksys Reclamation Claim").  The remaining $833,696.57 was classified on the proof of claim form as a general unsecured claim.

### 3.    **The Paramount Reclamation Claim.**

On or about November 12, 2008, Paramount sent a letter to the Debtors and the Debtors' counsel, demanding the return of alleged goods in the amount of $11,600,840.04 (the "Paramount Goods").  Paramount alleged that it was entitled to reclaim the Paramount Goods pursuant to the U.C.C. and the California Commercial Code.  As such, Paramount demanded return of the Paramount Goods (the "Paramount Reclamation Demand").

Thereafter, on December 19, 2008, Paramount filed a claim in the amount of $3,201,013.37 asserting priority pursuant to Bankruptcy Code section 503(b)(9).  On January 30, 2009, Paramount filed a claim in the amount of $16,497,463.67, of which Paramount asserted $14,801,853.41 was allegedly entitled to priority status pursuant to

Bankruptcy Code sections 546(c), 503(b)(9), and 507(a)(2)
(the "Paramount Reclamation Claim").  The remaining
$1,695,610.26 was classified as a general unsecured claim.

     **4.    The Seagate Reclamation Claim.**

     On or about November 10, 2008, Seagate sent a
letter to the Debtors' counsel, demanding the return of
alleged goods in the amount of $130,920.00 (the "Seagate
Goods").  Seagate alleged that the Seagate Goods were (i)
"goods" within the meaning of the U.C.C. and (ii) were the
subject of invoices dated within 50 days of the Petition
Date.  As such, Seagate demanded return of the Seagate
Goods (the "Seagate Reclamation Demand").

     Thereafter, on January 30, 2009, Seagate filed a
claim in the amount of $1,765,132.70, of which Seagate
asserted $130,920.00 was allegedly entitled to secured
claim or priority status pursuant to Bankruptcy Code
sections 546(c) and 507(a)(2), and $796,502.70 was entitled
to administrative expense priority pursuant to Bankruptcy
Code section 503(b)(1) (the "Seagate Reclamation Claim").
The remaining $864,710.05 was classified as a general
unsecured claim.

5.    **The Denon Reclamation Claim**.

On or about November 10, 2008, Denon sent a letter to the Debtors' Chief Financial Officer, Bruce H. Besanko ("Mr. Besanko"), demanding the return of alleged goods in the amount of $589,396.62 (the "Denon Goods"). Denon alleged that the Denon Goods were received by the Debtors within 45 days of the Petition Date.  As such, Denon demanded return of the Denon Goods (the "Denon Reclamation Demand").

Thereafter, on December 19, 2008, Denon filed a claim in the amount of $589,396.62 asserting a secured claim or priority status pursuant to Bankruptcy Code section 546(c) (the "Denon Reclamation Claim").

6.    **The Plantronics Reclamation Claim**.

On or about November 10, 2008, Plantronics, sent a letter to the Debtors and the Debtors' counsel, demanding the return of alleged goods in the amount of $21,594.00, which was later reduced to $20,062.40 (the "Plantronics Goods"). Plantronics alleged that the Plantronics Goods were (i) "goods" within the meaning of the U.C.C. and (ii) received by Circuit City Stores, Inc. and its affiliates prior to the Petition Date.  As such, Plantronics demanded

return of the Plantronics Goods (the "Plantronic Reclamation Demand").

Thereafter, on January 21, 2009, Plantronics filed a claim in the amount of $376,818.62, of which Plantronics asserted $20,062.40 was allegedly entitled to secured or priority claim status pursuant to Bankruptcy Code sections 546(c) and 507(a)(2) and $296,365.00 was allegedly entitled to priority status under Bankruptcy Code section 507(a)(2) (the "Plantronics Reclamation Claim"). The remaining $60,391.22 was classified on the proof of claim form as a general unsecured claim.

7.    **The Boston Acoustics Reclamation Claim**.

On or about November 10, 2008, Boston Acoustics sent a letter to Mr. Besanko, demanding the return of alleged goods in the amount of $187,454.84 (the "Boston Acoustics Goods").[10]   Boston Acoustics alleged that the Boston Acoustics Goods were received by Circuit City Stores, Inc. and its affiliates within 45 days prior to the Petition Date.  As such, Boston Acoustics demanded return

---

[10]  Collectively with the LumiSource Goods, the Cisco-Linksys Goods, the Paramount Goods, the Seagate Goods, the Denon Goods, the Snell Acoustics Goods, and the Plantronic Goods, the "Alleged Goods".

of the Boston Acoustics Goods (the "Boston Acoustics
Reclamation Demand").[11]

Thereafter, on January 30, 2009, Boston Acoustics
filed a claim in the amount of $503,373.29 asserting
$187,454.84 was allegedly entitled to administrative
priority pursuant to Bankruptcy Code section 546(c) (the
"Boston Acoustics Reclamation Claim").[12]  The remaining
$315,918.15 was classified on the proof of claim form as a
general unsecured claim.

### ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT.

Pursuant to section 502(a), a party in interest,
including the debtor, may object to claims.  See 11 U.S.C.
§ 502(a).  In turn, Bankruptcy Rule 3007(a) provides that
such objection must be in writing and filed with the Court.
Fed. R. Bankr. P. 3007(a).

---

[11]  Collectively with the LumiSource Reclamation Demand, the Cisco-
Linksys Reclamation Demand, the Paramount Reclamation Demand, the
Seagate Reclamation Demand, the Denon Reclamation Demand, the Snell
Acoustics Reclamation Demand, and the Plantronic Reclamation Demand,
the "Reclamation Demands".

[12]  Collectively with the LumiSource Reclamation Claim, the Cisco-
Linksys Reclamation Claim, the Paramount Reclamation Claim, the
Seagate Reclamation Claim, the Denon Reclamation Claim, the Snell
Acoustics Reclamation Claim, and the Plantronic Reclamation Claim,
the "Reclamation Claims".

Claim objections are contested matters pursuant
to Bankruptcy Rule 9014.  In re IBIS Corp., 272 B.R. 883,
893 (Bankr. E.D. Va. 2001) ("Objections to proofs of claims
are contested matters governed by Fed. R. Bankr. P. 9014.").
As in the case of all other contested matters, Bankruptcy
Rule 7056, which incorporates Civil Rule 56, applies to
claim objections.  See Fed. R. Bankr. P. 9014(c).

Pursuant to Civil Rule 56(b), "[a] party against
whom relief is sought may move at any time, with or without
supportive affidavits, for summary judgment on all or part
of the claim."  Fed. R. Civ. P. 56(b). "Summary judgment is
appropriate if there is no genuine issue as to any material
fact and the moving party is entitled to judgment as a
matter of law."  In re US Airways, Inc., No. 1:06CV539,
2006 WL 2992495, at *4 (E.D. Va. 2006) (citing Celotex Corp.
v. Catrett, 477 U.S. 317, 322-23 (1985)).

The United States Supreme Court has held that
summary judgment is not a disfavored procedural shortcut,
but rather an integral part of the Civil Rules as a whole,
which are designed "to secure the just, speedy and
inexpensive determination of every action." Sibley v.
Lutheran Hosp. of Md., Inc., 871 F.2d 479, 483 n.9 (4th Cir.

1989) (citing <u>Celotex</u>, 477 U.S. at 327).  In this regard, a

court may properly grant summary judgment when:

> Although each side in its submissions has
> presented a different characterization of the
> facts . . . and has argued different conclusions
> which the court should draw from those facts,
> there is little dispute as to actual facts and no
> dispute of material facts relevant to the
> determination of the causes of action.

<u>In re Conn. Pizza, Inc.</u>, 193 B.R. 217, 220 (Bankr. D. Md.

1996); <u>see</u> <u>also</u> <u>Goodman v. Resolution Trust Corp.</u>, 7 F.3d

1123, 1124 (4th Cir. 1993) (finding that summary judgment

is appropriately granted where there are "no <u>relevant</u>

disputes of material fact" (emphasis added)).

**II.  THE RECLAMATION CLAIMS ARE GENERAL UNSECURED, NON-PRIORITY CLAIMS AS A MATTER OF LAW.**

**A.  Bankruptcy Code Section 546(c)(1) Plainly And Unambiguously Only Granted The Respondents The Right To Reclaim Their Alleged Goods.**

Bankruptcy Code section 546(c) provides as

follows:

> Except as provided in subsection (d) of this
> section and in section 507(c), and subject
> to the prior rights of a holder of a
> security interest in such goods or the
> proceeds thereof, <u>the rights and powers of
> the trustee</u> under sections 544(a), 545, 547,
> and 549 <u>are subject to the right of a seller
> of goods that has sold goods to the debtor,
> in the ordinary course of such seller's
> business, to reclaim such goods</u> if the
> debtor has received such goods while
> insolvent, within 45 days before the date of

the commencement of a case under this title,
but such seller may not reclaim such goods
unless such seller demands in writing
reclamation of such goods--

(A) not later than 45 days after the date of
receipt of such goods by the debtor; or

(B) not later than 20 days after the date of
commencement of the case, if the 45-day
period expires after the commencement of the
case.

11 U.S.C. § 546(c) (2009)(emphasis added).

Bankruptcy Code section 546(c)(1) is clear on its

face.  First, that section "does not give such a

[reclamation] seller/creditor an administrative

claim . . . ."  See In re First Magnus Fin. Corp., 2008 WL

5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008) (emphasis

added).  Nor does it provide that a reclaiming seller holds

a lien on the goods that are subject to a written

reclamation demand. See 11 U.S.C. § 546(c)(1).  It simply

and unequivocally provides that a seller may reclaim goods,

if, among other things, the seller provides a debtor with

the required written demand.  See 11 U.S.C. § 546(c)(1).

Thus, there is simply no statutory basis for the

Respondents' Reclamation Claims to be accorded

administrative expense priority or treated as secured

claims.  CSX Transp., Inc. v. Georgia State Bd. of
Equalization, 552 U.S. 9, 20 (2007) (noting that where "the
words of the statute are unambiguous, the judicial inquiry
is complete." (quotation and citation omitted)).

   **B.   The Respondents Reliance On Pre-BAPCPA Cases Is
         Misplaced.**

      Notwithstanding the above, the Respondents
contend that their respective Reclamation Claims are
entitled to administrative expense status or a junior
lien.[13]  In support, certain Respondents cite In re
Georgetown Steel Co., LLC and Phar-Mor, Inc. v. McKesson
Corp.  In both cases, the courts concluded that, under
section 546(c)(2), the reclaiming seller was entitled to
administrative expense priority for its reclamation claim.
Georgetown Steel, 318 B.R. 340, 351-52 (Bankr. D.S.C. 2004);
Phar-Mor, 534 F.3d 502, 508 (6th Cir. 2008).  The
Respondents' reliance on these decisions, however, is
misplaced because the decisions were interpreting the prior

---

[13]  See LumiSource Response ¶ 6 (asserting a lien); Cisco-Linksys
     Response ¶ 7 (asserting secured creditor status); Paramount Response
     ¶ 14 (asserting a right to administrative expense status); Seagate
     Response ¶ 6 (asserting secured creditor status); Plantronics
     Response ¶ 6 (asserting secured creditor status); Boston Acoustics
     Response at ¶ 2 (asserting a right to administrative expense status).
     See, generally, Denon Response  ¶ 1.

and no longer applicable[14] version of Bankruptcy Code
section 546(c) and a misreading of the Reclamation
Procedures Order.

Specifically, as this Court is well aware,
Bankruptcy Code section 546(c) was amended as part of the
Bankruptcy Abuse Prevention and Consumer Protection Act of
2005 ("BAPCPA").  Under pre-BAPCPA section 546(c), a
reclaiming seller would be entitled to an administrative
expense under Bankruptcy Code section 503(b) or a junior
lien in certain circumstances.  See 11 U.S.C. §
546(c)(2)(A), (B); see also Dana, 367 B.R. at 415
(collecting cases interpreting section 546(c)(2)).
Specifically, pre-BAPCPA section 546(c)(2) provided, in
pertinent part, as follows:

> (2) the court may deny reclamation to a seller
> with such a right of reclamation that has made
> such a demand only if the court—
>
> (A) grants the claim of such a seller priority
> as a claim of a kind specified in section 503(b)
> of this title; or
>
> (B) secures such claim by a lien.

---

[14]  The amended Bankruptcy Code section 546(c) applies to all cases
filed on or after October 17, 2005.  In re Tucker, 329 B.R. 291, 298
(Bankr. D. Ariz. 2005).

11 U.S.C. § 546(c)(2004)(emphasis added).  Thus, under the

pre-BAPCPA Bankruptcy Code section 546(c)(2), the

Respondents could have properly asserted an administrative

expense claim or a secured claim, if the Court denied their

written demand and granted them an administrative claim or

secured their claim with a lien.  11 U.S.C. § 546(c)(2)(A)-

(B) (2004).  Under BAPCPA, however, no such rights exist.

In particular, in the BAPCPA amendments to

Bankruptcy Code section 546(c), Congress deleted subsection

(c)(2) in its entirety and replaced it with the current

statutory language.  Compare, 11 U.S.C. § 546(c)(2) (2009)

("If the seller of goods fails to provide notice in the

manner described in paragraph (1), the seller still may

assert the rights contained in section 503(b)(9)"), with,

11 U.S.C. § 546(c)(2) (2004) ("the court may deny

reclamation . . . only if the court — (A) grants the claim

of such a seller priority as a claim of a kind specified in

section 503(b) of this title; or (B) secures such claim by

a lien.").  In so doing, Congress clearly intended to

eliminate any right to an administrative expense (other

than under section 503(b)(9)) or a junior lien under

section 546(c).  See, e.g., U.S. Trustee v. Equip. Servs.

(In Re Equip. Servs.), 290 F.3d 739, 745 (4th Cir. 2002)

(holding that when words were deleted from the Bankruptcy
Code, the Court "must presume that Congress intended what
it said when it . . . delete[d]" the words).

Consequently, under the BAPCPA amendments to
Bankruptcy Code section 546(c)(2), Congress reserved
administrative expense treatment for only a "reclamation"
claim asserted by a seller/creditor who failed to provide a
written reclamation notice, but whose claim otherwise
"qualifies for [administrative expense status] under §
503(b)(9)." See 11 U.S.C. § 546(c)(2); see also First
Magnus, 2008 WL 5046596, at *2. Therefore, the Reclamation
Claims asserted by the Respondents as well as any other
claims asserted as reclamation claims under Bankruptcy Code
section 546(c)(1) pursuant to a written reclamation demand,
are simply not entitled to administrative expense priority
treatment.

Moreover, even if this Court were to look to the
pre-BAPCPA version of section 546(c)(2), the Reclamation
Claims are not entitled to administrative expense treatment
or a junior lien. As emphasized above, under the pre-
BAPCPA version of Bankruptcy Code section 546(c)(2),
reclaiming creditors were not automatically granted an
administrative claim. See In re Child World, 145 B.R. 5, 8

(Bankr. S.D.N.Y. 1992) ("Pursuant to 11 U.S.C. §

546(c)(2)(A) the granting of an administrative priority to

a reclaiming seller is conditioned on the court's denial of

reclamation."); see also In re Pester Refining Co., 964

F.2d 842 (8th Cir. 1992) "(In this situation, the

bankruptcy court does not 'deny reclamation' in recognizing

that the reclamation right no longer has value; therefore,

the alternative remedies of § 546(c)(2) do not come into

play."). Instead, the Court was required to deny the

seller's request and grant the seller either an

administrative or secure the claim with a lien. See id.;

see also 11 U.S.C. § 546(c)(2)(A)-(B) (2004).

This Court never denied the Respondents'

reclamation requests.[15] Nor did it enter any order granting

the Respondents an administrative claim or a lien to secure

their Reclamation Claim. Rather, the only orders entered

with respect to reclamation demands -- the Interim and

---

[15] The Debtors anticipate that some or all of the Respondents may rely
on paragraph 5(c) of the Reclamation Procedures Order and argue that
"reject[ing]" their Reclamation Demands was tantamount to denying
them. Even assuming rejection is equivalent to denial, this
argument must fail because paragraph 5(c) expressly provided that
the "Debtors", not "the court" as required by pre-BAPCPA section
546(c), "shall be deemed to have rejected the Reclamation Demand."
Thus, any reliance on paragraph 5(c) and "the Debtors" deemed
rejection of the Reclamation Demands would be misplaced.

Final Reclamation Procedures Orders —— (i) did not deny any
reclamation demand, (ii) established "procedures for the
<u>processing and reconciliation</u> of Reclamation Claims" that
permitted the Debtors 120 days to review such demands, and
(iii) left claimants with the right to pursue any and all
remedies.  Reclamation Order ¶¶ 4-5 (emphasis added).  More
specifically, this Court's Reclamation Order provided that:

> "[n]othing in th[e] Order or the above
> procedures [for the processing and
> reconciliation of Reclamation Claims] <u>is
> intended to prohibit, hinder, or delay any
> Reclamation Claimant from asserting or
> prosecuting any of its rights to seek to
> reclaim goods provided to the Debtors, or
> affect, alter, diminish, extinguish, or
> expand the rights or interests, if any, to
> recover goods (or proceeds thereof) sought
> to be reclaimed</u> . . . [.]"

See <u>id.</u> ¶ 6.

Consequently, even under pre-BAPCPA section
546(c), in lieu of reclaiming their Alleged Goods, the
Respondents would not have been entitled to the alternative
remedies of an administrative claim or a junior lien.

**C.    The Respondents' Failure To Pursue Their
Reclamation Rights Also Warrants Reclassifying
Their Reclamation Claims To Unsecured Non-
Priority Claims.**

As set forth above, Bankruptcy Code section
546(c)(1) permitted the Respondents to reclaim their goods,

but only if they made a written reclamation demand.

Critically, however, even assuming that the Respondents'

written Reclamation Demands were legally proper and

sufficient,[16] the Respondents still had a duty to pursue

their reclamation claims on a timely basis and with

sufficient diligence.  See First Magnus, 2008 WL 5046596 at

*1-2 (noting that a creditor can lose its reclamation

rights by not pursuing its reclamation claim timely and

diligently); In re McLouth Steel Prods. Corp., 213 B.R. 978,

987 (Bankr. E.D. Mich. 1997) (finding that the "burden is

on the reclamation claimant to further diligently pursue

its claim by, for example, filing a motion or complaint for

reclamation in bankruptcy court for the goods, or

commencing an adversary proceeding"); Tate Cheese Co. v.

Crofton & Sons, Inc. (In re Crofton & Sons, Inc.), 139 B.R.

567, 569 (Bankr. M.D. Fla. 1992) (holding that a creditor's

failure to diligently pursue its reclamation demand through

appropriate judicial channels defeated its right to reclaim

goods).  As one court recently held, if a reclaiming seller

makes a reclamation demand and the debtor does not respond

---

[16]  The Debtors do not waive, and expressly reserve, the right to argue
     that the Reclamation Demands were not adequate in the event that the
     Court does not grant the Summary Judgment Motion and proceeds to a
     trial on the Reclamation Claims.

or never returns the goods, the seller loses its

reclamation rights.  First Magnus, 2008 WL 5046596, at *2.

In this regard, another court explained that:

> [a] claimant may not be allowed to merely sit on
> its potential claims awaiting fulfillment, when
> the debtor has clearly rejected the claim.  Again,
> the Bankruptcy Code is not self-executing, and
> the bankruptcy courts exist, in part, for the
> purpose of resolving disputes over entitlement to
> insolvent debtors' assets, between the insolvent
> debtors and their various creditors.

McLouth Steel, 213 B.R. at 989.

Here, the Respondents each submitted a

Reclamation Demand.  None of the Respondents, however, took

any action to pursue their goods or provide an explanation

justifying their inaction.  In fact, none of the

Respondents should to lift the automatic stay to reclaim

their goods or seek a temporary or preliminary injunction

prohibiting the sale of their goods.  Nothing, however,

precluded the Respondents from doing so, and in fact, the

Reclamation Procedures Order made clear that all such

rights were preserved and not prohibited.  See Reclamation

Procedures Order at ¶ 6.[17]  Moreover, counsel to the Debtors

---

[17] For this reason, the Respondents' reliance on Georgetown Steel is
misplaced.  In Georgetown Steel, the reclamation order provided, in
pertinent part, that a creditor was "enjoined" from seeking to
reclaim its goods.  318 B.R. at 349.  The reclamation order also
provided that a reclamation claim allowed by the court would be

*(cont'd)*

made clear that such actions could be taken.  See
Transcript of Hearing held Nov. 10, 2008 at p. 84 (Debtors'
counsel stating that if reclamation claimants wanted "to
get [a] TRO and injunction in an adversary proceeding, . . .
[the proposed Reclamation Procedures Order] doesn't
preclude them from doing it"); see also Transcript of
Hearing held Dec. 5, 2008 at p. 62-63 (D.I. 942)(Debtors'
counsel stating that if reclamation claimants were not
"comfortable with these procedures, then . . . [such
claimants were] entitled to file a lawsuit, a request for a
stay, [or] a temporary injunction").

　　　　Furthermore, although at least one of the
Respondents contends that it failed to take further action
because the Debtors failed to respond to its Reclamation
Demand, that fact does not justify the Respondent's
inaction.  See Crofton & Sons, 139 B.R. at 569 (holding
that a creditor's failure to diligently pursue its
reclamation demand through appropriate judicial channels

_____

*(cont'd from previous page)*
　"deemed an administrative expense claim in accordance with Section
　546(c) of the Bankruptcy Code."  Id.  As set forth above, neither of
　those facts is present here, and the Debtors are not equitably or
　judicially estopped from arguing that reclamation creditors were not
　entitled to administrative expenses, as were they in Georgetown Steel.
　Id.

defeated its right to reclaim goods); See First Magnus,
2008 WL 5046596, at *2 (denying administrative expense
status and reclassifying a reclamation claim to a general
unsecured claim because the reclaiming seller failed to
timely and appropriately pursue its reclamation rights);
McLouth Steel, 213 B.R. at 989-90 (reversing the bankruptcy
court's award of administrative priority because the
reclaiming sellers failed to timely and appropriately
pursue their reclamation claims).

Accordingly, for this reason as well, the
Reclamation Claims should be reclassified to pre-petition
general unsecured, non-priority claims.

**III. THE RECLAMATION CLAIMS ARE ALSO GENERAL UNSECURED,
NON-PRIORITY CLAIMS BECAUSE THE GOODS WERE SUBJECT TO
THE PRE-PETITION AND DIP LENDERS' FLOATING LIENS ON
INVENTORY.**

In pursuing their requests for administrative
claims or junior liens, the Respondents also ignore other
newly added language in Bankruptcy Code section 546(c)(1)
by BAPCPA, certain indisputable facts present in these
cases, and the nature of the reclamation remedy.

Specifically, prior to the BAPCPA amendments to
section 546(c), courts were split as to whether the so
called "prior lien defense" could be used to deny a

reclaiming seller "an administrative claim or a lien on

property of the debtor's estate . . . ."  Dana, 367 B.R. at

415.  A majority of courts applied the defense and had held

that a reclamation claimant was not entitled to an

administrative claim or lien if a lender had a floating

lien on all of the debtor's inventory and the value of

lender's claim exceeded the value of the inventory sought

to be reclaimed.  See, e.g., In re Pester Refining Co., 964

F.2d 842, 847 (8th Cir. 1992) ("[W]hen the secured

creditors have satisfied their claims out of the goods to

be reclaimed, granting § 546(c)(2) relief [an

administrative claim or a junior lien] would afford the

reclamation seller something it does not have under the UCC

-- a priority interest in the buyer's assets other than the

goods to be reclaimed.").[18]

        Nonetheless, a minority of courts held otherwise.

See, e.g., Phar-Mor, 534 F.3d at 508 (finding that the

plain language of the pre-BAPCPA section 546(c) provided

---

[18]  See also In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128,
134 (Bankr. S.D.N.Y. 2003) ("When goods subject to a reclamation
demand are liquidated and the proceeds used to pay the secured
creditor's claim, the reclaiming seller's subordinated right is
rendered valueless."); Galey & Lord Inc. v. Arley Corp. (In re Arlco,
Inc.), 239 B.R. 261, 273 (Bankr. S.D.N.Y. 1999) ("When the secured
claim, or a portion of it, is paid out of the goods sought to be
reclaimed, the right to reclaim is rendered valueless.").

the reclaiming seller with administrative expense priority);

Georgetown Steel, 318 B.R. at 351-52 (same).

In the BAPCPA amendments, however, the phrase

"subject to the prior rights of a holder of a security

interest in such goods or the proceeds thereof" was

inserted into the introductory paragraph of section

546(c)(1).  By so doing, Congress adopted the majority view

and expressly provided that a senior lender's pre-petition

and post-petition liens are superior to the rights of all

reclaiming creditors.  See Simon & Schuster, Inc. v.

Advanced Mktg. Servs. (In re Advanced Mktg. Servs.), 360

B.R. 421, 429 (Bankr. D. Del. 2007) ("Under the express

language of § 546(c)(1) of the Bankruptcy Code, as amended,

[a senior lenders'] pre-petition and post-petition liens on

[a debtor's] inventory are superior to a reclamation

claim.").  And, Congress expressly accepted the "prior lien

defense" and eliminated the need to interpret state law to

determine whether a pre- or post-petition lender was a

"good faith purchaser for value" or "buyer in the ordinary

course of business."  See id. (concluding that, under the

Bankruptcy Code, as opposed to state law, reclamation

rights were valueless because the lenders had floating

liens on the debtor's inventory).

31

Here, the Pre-petition Lenders and the DIP
Lenders held floating liens on all of the Debtors'
inventory, including the Alleged Goods, and the proceeds
thereof.  See supra at pp. 6-8.  Consequently, under
Bankruptcy Code section 546(c)(1), the Pre-petition
Lenders' and the DIP Lenders' rights were superior to the
Respondents' reclamation rights, if any.  Accordingly, the
Respondents' Reclamation Claims are valueless and, thus,
not entitled to anything other than a pre-petition general
unsecured non-priority claim.  See Dana, 367 B.R. at 421
(holding that "the Reclamation Claims are valueless as the
goods remained subject to the Prior Lien Defense."); Dairy
Mart, 302 B.R. at 136 (holding that "the goods or their
proceeds have effectively been 'paid' to the secured
creditor, and the Reclamation Claims in those goods is
valued at zero.").

Nor does it matter, that on November 12, 2008,
the Pre-petition Lenders were paid in full by the DIP
Lenders and released their liens in favor of the DIP
Lenders' liens on the same collateral.  Indeed, on nearly
identical facts, the bankruptcy court in Dana concluded
that reclamation rights were nonetheless valueless.

Specifically, in <u>Dana</u>, the pre-petition lenders held floating liens on the debtor's equipment, inventory, and other assets and the pre-petition lenders were oversecured.  <u>Dana</u>, 367 B.R. at 412.  After the debtor filed bankruptcy, the court approved a debtor in possession financing facility under which the debtor was authorized to (and over a short period did) repay the pre-petition lenders in full and granted the post-petition lenders liens on what was formerly the pre-petition collateral and the proceeds thereof.  <u>Id.</u>

Relying on the fact that the "lien chain continued unbroken", the court found that the goods sought to be reclaimed were "effectively disposed of" by liquidating them in satisfaction of the pre-petition indebtedness or pledging them to the DIP lenders as collateral.  <u>Dana</u>, 367 B.R. at 421.  Moreover, none of the reclamation claims were greater than the amount of the outstanding pre-petition or post-petition secured debt. <u>Id.</u> "Accordingly, the Reclamation Claims [were] valueless as the goods remained subject to the Prior Lien Defense."  <u>Id.</u>; <u>see id.</u> at 420 ("[I]f the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless.").

Similarly, here, the Pre-petition Lenders held
floating liens on the Debtors' inventory, including the
Alleged Goods, and proceeds thereof.  On the Petition Date,
this Court approved the DIP Facility under which the
Debtors repaid the Pre-petition Lenders in full.  In
addition, the Court granted the DIP Lenders senior liens on,
among other property, all of the Debtors' inventory and
proceeds thereof.  Thus, the lien chain was unbroken and
the Alleged Goods were disposed of by using them to satisfy
the obligations owed to the Pre-petition Lenders and
pledging them as collateral for the obligations owed to the
DIP Lenders.  See supra at pp 6-8.  Consequently, under
Bankruptcy Code section 546(c)(1), the Respondents'
reclamation rights were subject to the prior lien defense,
and since the Reclamation Claims were neither separately or
collectively greater in value than the outstanding amount
due to the Pre-petition Lenders or the DIP Lenders, the
Reclamation Claims are valueless as anything other than
pre-petition general unsecured, non-priority claims.

Certain Respondents also contend that even though
the Debtors no longer have possession of the Alleged Goods,
the Respondents are entitled to a security interest in the
proceeds of the Alleged Goods specified in their

Reclamation Demands.[19]  This assertion should also be

rejected.

     A seller's right to reclamation is an in rem

remedy.  See Dana, 367 B.R. at 419 (noting that reclamation

is an in rem remedy); see also In re Pluma, Inc., 2000 WL

33673751, at *3 (Bankr. M.D.N.C. July 21, 2000) (noting

that reclamation is an in rem right).  As such, a seller

only has the right to reclaim the goods, not the proceeds

thereof.  Arlco, 239 B.R. at 274 (noting that a reclaiming

seller is not a secured creditor and does not have a

security interest in reclaimed goods or a secured claim

from the proceeds thereof).  Indeed, the Respondents can no

more properly request that they be paid an administrative

expense from proceeds of the sale of inventory or a lien on

such proceeds, as they could require a lender to marshal

assets for their individual benefit.  See Advanced Mktg.

Servs., 360 B.R. at 427 (holding that reclamation creditors

are unsecured creditors who cannot invoke the equitable

doctrine of marshaling). Consequently, any such request

---

[19]  See LumiSource Response at p. 2; Plantronics Response at p. 2;
     Cisco-Linksys Response (D.I. 4120) at p. 2; Seagate Response (D.I.
     4115) at p.2.

with respect to the cash proceeds of the inventory sales should also be denied as a matter of law.

Thus, for the foregoing reasons, under Bankruptcy Code section 546(c)(1), the prior lien defense applies and the asserted administrative or secured claims of the Respondents are valueless as anything other than pre-petition general unsecured, non-priority claims, if they exist at all.

## CONCLUSION

For the reasons set forth herein, the Debtors respectfully request that this Court grant summary judgment and reclassify the Reclamation Claims to general unsecured, non-priority claims.

Dated: Richmond, Virginia       SKADDEN, ARPS, SLATE, MEAGHER
      December 18, 2009       & FLOM, LLP
                                    Gregg M. Galardi, Esq.
                                    Ian S. Fredericks, Esq.
                                    P.O. Box 636
                                    Wilmington, Delaware 19899-
                                    0636 (302) 651-3000

                                    - and -

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM, LLP
                                    Chris L. Dickerson, Esq.
                                    155 North Wacker Drive
                                    Chicago, Illinois 60606
                                    (312) 407-0700

                                    - and -

                                    MCGUIREWOODS LLP

                                  /s/ Douglas M. Foley          .
                                    Dion W. Hayes (VSB No. 34304)
                                    Douglas M. Foley (VSB
                                    No. 34364)
                                    One James Center
                                    901 E. Cary Street
                                    Richmond, Virginia 23219
                                    (804) 775-1000

                                    Counsel for Debtors and
                                    Debtors in Possession