Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
          Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' SUPPLEMENTAL OBJECTION TO MOTION FOR
ALLOWANCE OF THE LATE FILED ADMINISTRATIVE
EXPENSE CLAIM OF EXPORT DEVELOPMENT CANADA**

The debtors and debtors-in-possession in the above-

captioned jointly administered cases (collectively, the

"Debtors")[1] hereby file this supplemental objection (the

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC

"Objection") to the Motion for Allowance of the Late Filed

Administrative Expense Claim of Export Development Canada

(Docket No. 2960) (the "Late Claim Motion") filed by Export

Development Canada ("Movant").[2]   In support of the Objection,

the Debtors respectfully represent as follows:

**BACKGROUND**

**I.    The Bankruptcy Cases**

1.    On November 10, 2008 (the "Petition Date"), the

Debtors filed with the United States Bankruptcy Court for

the Eastern District of Virginia, Richmond Division (the

"Court"), their voluntary petitions for relief under chapter

11 of title 11 of the United State Code (the "Bankruptcy

Code") commencing the above-captioned chapter 11 cases.

2.    The Debtors have continued the management of

Debtors' business and properties as debtors-in-possession

---

(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address was 9950
Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook
Drive, Glen Allen, Virginia 23060.

[2] The Debtors hereby incorporate herein their Preliminary Objection to
Motion for Allowance of the Late Filed Administrative Expense Claim of
Export Development Canada (Docket No. 3131) and the Amended Preliminary
Objection to Motion for Allowance of the Late Filed Administrative
Expense Claim of Export Development Canada (Docket No. 3154).

pursuant to sections 1107(a) and 1108 of the Bankruptcy
Code.

3.    On November 12, 2008, the Office of the United
States Trustee for the Eastern District of Virginia
appointed a statutory committee of unsecured creditors (the
"Creditors' Committee").  To date, no trustee or examiner
has been appointed in these chapter 11 cases.

## II.  Relationship Between Movant and TechCraft Manufacturing, Inc.

4.    Movant is a provider of credit insurance to
Canadian companies that export goods to companies located in
the United States.

5.    Movant provided credit insurance to TechCraft
Manufacturing, Inc. ("TechCraft") and Movant insured
TechCraft's pre-petition sales to the Debtors.  Pursuant to
Movant's insurance contract with TechCraft, Techraft
assigned its claims to Movant after the Debtors filed their
chapter 11 petitions.  Late Claim Motion, ¶ 9.

6.    Prior to the 503(b)(9) Bar Date, on November 25,
2008, TechCraft filed an application for payment on its
claim against the Debtors with Movant.  Movant ultimately
paid TechCraft an agreed upon percentage of its claim on
January 21, 2009.

**III. The Bar Date for Filing 503(b)(9) Claims**

    **A.   503(b)(9) Bar Date**

    7.   On November 12, 2008, this Court entered that certain Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "503(b)(9) Bar Date Order").

    8.   Pursuant to the 503(b)(9) Bar Date Order, this Court approved the form and manner of the 503(b)(9) bar date notice, which was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice").  Pursuant to the 503(b)(9) Bar Date Order and 503(b)(9) Bar Date Notice, the bar date for filing proofs of claim asserting administrative priority claims pursuant to section 503(b)(9) of the Bankruptcy Code was December 19, 2008 (the "503(b)(9) Bar Date").

    **B.   Service of 503(b)(9) Bar Date Notice**

    9.   On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

10.   On or before November 19, 2008, TechCraft was
served with a copy of the 503(b)(9) Bar Date Notice and an
attached 503(b)(9) Claim Request Form via overnight mail at
P.O. Box 55811, Boston, MA 02205-5811.  See Affidavit of
Service, filed November 25, 2008, attaching Notice of Bar
Date for Filing a Request for Allowance of an Administrative
Expense Claim Under 11 U.S.C. § 503(b)(9) and Section
503(b)(9) Claim Request Form (Docket No. 358).  The relevant
portions of the Affidavit of Service are attached hereto as
Exhibit A.

11.   In addition, the Debtors published the 503(b)(9)
Bar Date Notice in The New York Times, see Affidavit of
Publication dated November 21, 2008 (Docket No. 549), The
Wall Street Journal, see Affidavit of Publication dated
November 24, 2008 (Docket No. 548), and The Richmond Times-
Dispatch, see Affidavit of Publication dated November 21,
2008 (Docket No. 547).

12.   Movant admits that TechCraft received the
503(b)(9) Bar Date Notice and the 503(b)(9) Claim Request
Form, and that TechCraft provided the 503(b)(9) Bar Date
Notice and 503(b)(9) Claim Request Form to Movant on
December 11, 2008 – prior to the 503(b)(9) Bar Date.  See
Movant's Response to Interrogatory No. 7.

13.   The 503(b)(9) Bar Date also was clearly identified
and posted by KCC on its website at
www.kccllc.net/circuitcity (the "KCC Website") under the
section of the KCC Website entitled "Important Dates,
Deadlines & Documents" on November 13, 2008.  See Affidavit
of Evan J. Gershbein dated December 9, 2009, attached hereto
as Exhibit B and incorporated herein.  The items on the
"Important Dates, Deadlines & Documents" section appear in
chronological order and the 503(b)(9) Bar Date is the fourth
item on the list.  Additionally, on November 13, 2008, a
link to the 503(b)(9) Bar Date Notice was posted next to the
503(b)(9) Bar Date in the "Important Dates, Deadlines &
Documents" section of the KCC Website.  See id.  Further, on
November 19, 2008, a link to the 503(b)(9) proof of claim
form was posted next to the 503(b)(9) Bar Date in the
"Important Dates, Deadlines & Documents" section of the KCC
Website.  See id.

   **C.   Content of 503(b)(9) Bar Date Order and Notice**

14.   The 503(b)(9) Bar Date Order provided in relevant
part:

> The Section 503(b)(9) Bar Date Notice shall be
> mailed by first class mail, postage prepaid to
> the Debtors' vendors and suppliers of goods.
>
>                  ...

The Debtors are permitted, but not
required, to publish notice of the Section
503(b)(9) Bar Date as set forth in the Motion.

...

Any holder of a Section 503(b)(9) Claim that
fails to file a Section 503(b)(9) Claim Request
or a Section 503(b)(9) Motion by the Section
503(b)(9) Bar Date in accordance with the
procedure set forth in this Order is forever
barred, estopped and permanently enjoined from
asserting its Section 503(b)(9) Claim against
the Debtors, their estates, or the property of
any of them, and such holder shall not be
entitled to receive any distribution in these
bankruptcy cases on account of such Section
503(b)(9) Claim or receive further notices
regarding such Section 503(b)(9) Claim, absent
further order of this Court.

...

Any Section 503(b)(9) Claim Request or Section
503(b)(9) Motion that is not timely filed and
served in accordance with this Order on or
before the Section 503(b)(9) Bar Date, so as to
be actually RECEIVED by the deadline and in the
manner set forth herein, shall be disallowed,
and the holder of such Section 503(b)(9) Claim
shall be forever enjoined from asserting such
Section 503(b)(9) Claim against the Debtors,
their estates, or the property of any of them,
and such holder shall not be entitled to
receive any distribution in these bankruptcy
cases on account of such Section 503(b)(9)
Claim or receive further notices regarding such
Section 503(b)(9) Claim, absent further order
of this Court.

503(b)(9) Bar Date Order, pgs. 3, 7, 12.

15.   The 503(b)(9) Bar Date Notice provided in relevant part:

> **CONSEQUENCES OF FAILURE TO FILE SECTION
> 503(b)(9) CLAIM REQUEST**
>
> **ANY PERSON OR ENTITY HOLDING A SECTION
> 503(b)(9) CLAIM THAT FAILS TO FILE A SECTION
> 503(b)(9) CLAIM REQUEST ON OR BEFORE THE BAR
> DATE SHALL BE FOREVER BARRED AND ESTOPPED FROM
> ASSERTING A SECTION 503(b)(9) CLAIM AGAINST THE
> DEBTORS, THEIR ESTATES, OR THE PROPERTY OF ANY
> OF THEM, ABSENT FURTHER ORDER OF THE COURT.**

Bar Date Notice, p. 5.

16.   The 503(b)(9) Bar Date Notice provided, in pertinent part, that the 503(b)(9) Bar Date was 5:00 p.m., Pacific Time, on December 19, 2008.

**IV.  Movant's Late Claim**

17.   Pursuant to its insurance contract with Movant, TechCraft filed an insurance claim with Movant on November 25, 2008.  Late Claim Motion, ¶ 9.

18.   Movant admits that TechCraft received the 503(b)(9) Bar Date Notice and that TechCraft forwarded the 503(b)(9) Bar Date Notice to Movant on December 11, 2008.  Late Claim Motion, ¶ 11.  Accordingly, both TechCraft and Movant had notice of the deadline prior to the 503(b)(9) Bar Date.

19.   Neither TechCraft nor Movant filed a 503(b)(9) claim against Debtors prior to the 503(b)(9) Bar Date,

December 19, 2008.  Movant asserts that TechCraft did not
file a 503(b)(9) claim because "it had filed the Application
for Payment with EDC on November 25, 2008, and forwarded EDC
the [503(b)(9)] Bar Date Notice on December 11, 2008."
Movant's Response to Interrogatory No. 7.

20.  Movant did not file its 503(b)(9) administrative
expense claim until January 28, 2009 – forty (40) days after
the 503(b)(9) Bar Date had expired.  Movant states that the
503(b)(9) claim was filed after TechCraft and EDC entered
into an assignment agreement and EDC paid TechCraft on its
application for payment.  Movant's Response to Interrogatory
No. 7.

21.  Movant then waited over two months to file its Late
Claim Motion on April 8, 2009.

## V.   Movant's Late Claim Motion

22.  By the Late Claim Motion, Movant incorrectly seeks
to extend the deadline by which it must file its 503(b)(9)
claim to January 21, 2009, thereby preventing the
disallowance of its 503(b)(9) claim.  Late Claim Motion, ¶
16.

23.  Attached as Exhibit 4 to the Late Claim Motion is
the "Creditor Data for Claim Number 8051," presumably from
the KCC Website (as hereinafter defined).  As set forth on

Exhibit 4, and according to the official claims register, Movant's late claim was filed on January 28, 2009, not January 21, 2009 as alleged in the Late Claim Motion.

## PRELIMINARY STATEMENT

24.  Movant paid out on an insurance claim and is now trying not only to recoup its loss off of the backs of junior creditors in this case, but also to make a profit.  While paying only a percentage of its insured's claim, Movant has asserted a late 503(b)(9) claim and a general unsecured claim in the full amount of its insured's claim.  Although both had actual notice of the 503(b)(9) Bar Date, neither the insured nor Movant filed a timely 503(b)(9) claim.  Movant's failure to timely file a 503(b)(9) claim was not due to excusable neglect, and certainly was not due to any alleged omission on the part of Debtors' counsel.  Movant had the 503(b)(9) Bar Date Notice and the 503(b)(9) claim request form prior to the 503(b)(9) Bar Date and simply failed to act on it.  No cause exists to excuse Movant's failure to timely file a 503(b)(9) claim and the Late Claim Motion must be denied.

## OBJECTION

I.  **Movant's 503(b)(9) Claim is Barred by the Terms of the 503(b)(9) Bar Date Order and Movant's Motion Should be Denied**

25.  Movant did not file a 503(b)(9) claim by the
503(b)(9) Bar Date and, as a result, its claim is time
barred and permanently enjoined under the terms of the
503(b)(9) Bar Date Order.

26.  The claims bar date in a chapter 11 bankruptcy
case serves a very important purpose; "[t]he requirement of
a Bar Date in Chapter 11 enables the debtor...to establish
the universe of claims with which it must deal and the
amount of those claims."  In re A.H. Robins Co., Inc., 129
B.R. 457, 459 (Bankr. E.D. Va. 1991).  Premised on the
imperative purpose of finality of asserting claims against a
debtor in chapter 11, courts have not allowed claims filed
by creditors after the bar date, absent special
circumstances.  See In re Provident Hosp., Inc., 122 B.R.
683, 685 (D. Md. 1990), aff'd, 943 F.2d 49 (4th Cir. 1991)
(unpublished opinion) ("Because [the claimant] did not
timely file his bankruptcy claim after having been given
constitutionally sufficient notice, his claim is barred
under well-settled authority, 11 U.S.C. 1141(d) and
Bankruptcy Rule 3003(c)(2).").

27.  Due process requires that the notice of the
applicable bar date be "reasonably calculated, under the
circumstances, to apprise an interested party of the

pendency of the action." In re Snug Enters., Inc., 169 B.R. 31, 33 (Bankr. E.D. Va. 1994). In the Debtors' cases, sufficient notice was given to Movant such that its due process rights were met.

28. The 503(b)(9) Bar Date Order explicitly provided that the "503(b)(9) Bar Date Notice shall be mailed by first class mail, postage prepaid to the Debtors' vendors and suppliers of goods." 503(b)(9) Bar Date Order, p. 3. In keeping with the 503(b)(9) Bar Date Order, TechCraft, a supplier to the Debtors, was served with the 503(b)(9) Bar Date Notice on November 19, 2008. See Exhibit A.

29. Debtors had no duty or obligation to serve Movant with notice of the 503(b)(9) Bar Date. Movant, an insurer of TechCraft, was unknown to Debtors and Debtors were under no duty to ascertain Movant's identity or the nature of any potential claim held by Movant against Debtors. Movant was not a vendor or supplier to Debtors. Furthermore, Movant had never transacted any business with Debtors. As a result, Debtors were under no duty to provide Movant with notice of the 503(b)(9) Bar Date and Debtors fulfilled their obligation to provide notice to known creditors when they served the 503(b)(9) Bar Date Notice upon TechCraft.

30. Movant admits that TechCraft received the 503(b)(9) Bar Date Notice and that Movant had actual notice of the 503(b)(9) Bar Date over one week prior to the filing deadline. On December 11, 2008, TechCraft forwarded the 503(b)(9) Bar Date Notice to Movant. Late Claim Motion, ¶ 3. As a result, Movant had actual notice of the 503(b)(9) Bar Date over one week prior to the 503(b)(9) Bar Date.

31. The 503(b)(9) Bar Date Order provided that "[t]he Debtors are permitted, but not required, to publish notice of the Section 503(b)(9) Bar Date . . . ."

32. Although under no obligation to provide publication notice of the 503(b)(9) Bar Date, the Debtors nonetheless published the 503(b)(9) Bar Date in three nationally distributed publications. See supra, ¶ 11. The 503(b)(9) Bar Date also was posted on the KCC Website.

33. Despite actual and constructive notice, Movant failed to file a 503(b)(9) claim by the 503(b)(9) Bar Date. As a result of Movant's failure to timely file a proof of claim by or before the 503(b)(9) Bar Date, Movant is "forever barred, estopped and permanently enjoined from asserting its 503(b)(9) Claim against the Debtors, their estates, or the property of any of them..." 503(b)(9) Bar Date Order, p. 6.

## II.  Movant Failed to Establish Excusable Neglect and Movant's Motion Should be Denied

34.  Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause."  In addition, if the request for an extension is made after the expiration of the bar date, a claimant must establish not only "cause," but also that "the failure to act was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b).

35.  The burden of proving excusable neglect lies with the claimant seeking to file a proof of claim after a court-ordered bar date.  In re Enron Corp., 419 F.3d 115 (2d Cir. 2005); see also Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996) ("'[T]he burden of demonstrating excusability lies with the party seeking the extension...'") (quoting In re O.P.M. Leasing Serv., Inc., 769 F.2d 911, 917 (2d. Cir. 1985)).

36.  In Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship, 507 U.S. 380, 113 S. Ct. 1489 (1993), the Supreme Court established a two-part test to determine whether a claimant's failure to act in accordance with the filing

deadline was due to "excusable neglect."[3] Id. at 395, 1498.
Under the Pioneer framework, a court must first determine
whether the claimant's failure to file in a timely manner
was the result of neglect.  See id. at 394; see also
Huennekens v. Marx (In re Springfield Contracting Corp.),
156 B.R. 761, 765 (Bankr. E.D. Va. 1993) (holding that the
Supreme Court had established a two-part inquiry for
determining whether a party's failure to act was due to
"excusable neglect," the first question being whether the
failure to act was due to neglect).

   A.   **Movant's Failure to Timely File a 503(b)(9) Claim
        Was Not the Result of "Neglect"**

   37.   "The law since the Pioneer decision has been well
established that where a party's actions are deliberate, the
party's late filing cannot constitute excusable neglect."
In re Banco Latino International, 310 B.R. 780, 785 (Bankr.
S.D. Fla. 2004) (internal quotations omitted); see also In
re Celotex Corp., 232 B.R. 493, 495 (Bankr. M.D. Fla. 1999)
("After Pioneer, most courts have held that where a party's
actions are deliberate, the party's late filing cannot
constitute excusable neglect."); see also Agribank v. Breen,
188 B.R. 982, 989 (Bankr. C.D. Ill. 1995) ("[The Pioneer

---

[3] To the extent the Court determines that an alternative standard
applies, the Debtors submit that the Movant has nonetheless failed to
establish "cause" under section 503 for the reasons set forth herein.

Court's] definition [of 'neglect'] virtually excludes any possibility that a late filing which is the result of a party's deliberate choice can constitute 'neglect.'").

38. Movant states that on November 25, 2008, TechCraft filed its insurance claim with Movant. Late Claim Motion, ¶ 9. Movant concedes that TechCraft forwarded the 503(b)(9) Bar Date Notice to Movant on December 11, 2008 - over one week prior to the 503(b)(9) Bar Date.[4] Late Claim Motion, ¶ 11. As a result, Movant had adequate time to prepare and file its 503(b)(9) claim before the expiration of the 503(b)(9) Bar Date.

39. Movant's failure to file a 503(b)(9) claim appears to be the result of deliberate inaction, rather than "neglect." Because Movant had knowledge of the 503(b)(9) Bar Date at least one week prior to the deadline and also had knowledge of its claim against the Debtors twenty-four (24) days prior to the 503(b)(9) Bar Date, Movant's conduct must be characterized as "deliberate." See <u>Pioneer Inv. Servs. Co.</u>, 507 U.S. at 388 (stating that neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness"). Movant's

---

[4] Notably, Movant received the 503(b)(9) Bar Date Notice and claim form after sending its e-mail to counsel for the Debtors.

failure to timely file its 503(b)(9) claim was not the
result of neglect.  Accordingly, Movant should not be
allowed to file a late claim.

> **B.   Alternatively, Movant's Neglect Was Not Excusable**

40.  If a claimant is able to overcome the burden of
proving that its failure to timely file a claim was the
result of neglect, a court must then turn to the secondary
inquiry of whether or not such neglect is "excusable."  See
id. at 395.  In Pioneer, the Court held that the
determination of whether the claimant's neglect is excusable
is "at bottom an equitable one, taking account of all
relevant circumstances surrounding the party's omission."
Id.  In keeping with the equitable nature of such a
determination, the Supreme Court set forth four factors to
be considered when contemplating a motion to allow a late-
filed proof of claim under Rule 9006(b).  Those factors
include: (1) the danger of prejudice to the debtor; (2) the
length of the delay and its potential impact on judicial
proceedings; (3) the reason for the delay, including whether
it was within the reasonable control of the claimant; and
(4) whether the claimant acted in good faith.  Id. at 395.

41.  In Thompson  v. E.I. DuPont de Nemours & Co.,
Inc., 76 F.3d 530 (4th Cir. 1996), a unanimous panel of the

U.S. Court of Appeals held that the "excusable neglect"

standard was not an easy one to satisfy: "'excusable

neglect' is not easily demonstrated, nor was it intended to

be." Id. at 534; see also In re Best Products Co., 140 B.R.

353, 359 (S.D.N.Y. 1992) (characterizing the bar date as a

court-imposed statute of limitation that is "peremptory").

Inadvertence, ignorance of the rules, or mistakes construing

the rules do not usually constitute "excusable neglect."

See Thompson, 76 F.3d at 534; see also In re Best Products

Co., Inc., 140 B.R. at 358 ("Except when a known creditor is

not listed on the schedules and hence fails to receive

notice of the filing deadline, the bar date is strictly

enforced.") (citing Wright v. Placid Oil Co., 107 B.R. 104,

106 (N.D. Tex. 1989)).   "Even upon a showing of 'excusable

neglect,' whether to grant an enlargement of time still

remains committed to the discretion of the district court."

Thompson, 76 F.3d at 532.

### 1.   Movant Has Failed to Provide an Adequate Reason for Failing to Timely File

42.   "The most important of the factors identified in

Pioneer for determining whether 'neglect' is 'excusable' is

the reason for the failure to file." Thompson, 76 F.3d at

534.   "[T]he four Pioneer factors do not carry equal weight;

the excuse given for the late filing must have the greatest
import.  While prejudice, length of delay, and good faith
might have more relevance in a close[] [sic] case, the
reason-for-delay factor will always be critical to the
inquiry." In re Enron Corp., 419 F.3d 115, 122-24 (3d Cir.
2005) (quoting Graphic Commc'ns. Int'l Union v. Quebecor
Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001));
see also Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd.
P'ship, 507 U.S. at 395 (stating that it is also significant
whether or not the reason for the failure to file was
"within the reasonable control of the movant.").  In this
case, Movant offers no plausible reason for its failure to
file a proof of claim until forty (40) days after the
503(b)(9) Bar Date.

43.  Administrative failure on the part of the claimant
is generally insufficient to warrant a finding of "excusable
neglect." See Thompson, 76 F.3d at 534 ("'[A] mere
concession of palpable oversight or administrative failure
generally has been held to fall short of the necessary
showing...'") (quoting In re O.P.M. Leasing Serv., Inc., 769
F.2d 911, 917 (2d Cir. 1985); see also In re Century Brass
Products, Inc., 72 B.R. 68 (Bankr. D. Conn. 1987) (holding
that a delay resulting from a breakdown in creditor's

internal procedures does not constitute excusable neglect
within the meaning of Rule 9006(b)(2) of the Federal Rules
of Bankruptcy Procedure); see also In re Figueroa, 33 B.R.
298, 303 (Bankr. S.D.N.Y. 1983) (holding that courts
generally refuse to grant relief when late filing is caused
by internal breakdowns because a finding that a breakdown in
internal procedures caused the noncompliance shows that the
events were not beyond the control of the creditor).

44.   The assignment and transfer of the bankruptcy
claim from TechCraft was clearly "within the reasonable
control" of the Movant.   TechCraft timely informed Movant on
November 25, 2008, that it would be seeking compensation
pursuant to its insurance policy with Movant.   As a result,
Movant had notice of the nature of its claim against Debtors
on November 25, 2008, well in advance of the 503(b)(9) Bar
Date.   Notably, Movant also was in receipt of the 503(b)(9)
Bar Date Notice over one week prior to the filing deadline.

45.   Movant is not an unwitting victim of bankruptcy
procedure, but rather a regular participant in such
procedures and as such should be held to the same, if not a
higher standard, as the thousands of other claimants who
timely filed their claims in the instant case.   A failure to
enforce the relevant bar dates against an assignee-insurer

of a creditor's claim would entirely remove the incentives to such parties to timely file their claims in future cases.

46. The Supreme Court noted in <u>Pioneer</u> that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" 507 U.S. at 392. "Similarly, preoccupation or an excessive workload does not typically render a mistake excusable." <u>In re Enron Corp.</u>, 419 F.3d 115 (3d Cir. 2005) (citing <u>Pioneer</u>, 507 U.S. at 398 ("we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.")).

47. As a result, this Court should disregard Movant's contention that its heavy workload contributed to the "excusable" nature of its conduct. Late Claim Motion, ¶ 12 ("It is possible for information in fast-paced bankruptcy cases to be delayed in reaching those within [Movant] that perform functions such as filing proofs of claim due to its size, the sheer number of claims being filed in today's economic climate and the lengthy claims reconciliation process."). The fact that Movant was preoccupied or busy during the filing period is irrelevant to a determination of whether the Movant is able to satisfy the stringent excusable neglect standard.

48.  Additionally, Movant states that its "regular practice" is to contact counsel to determine if there is a "looming bar date."  Movant's Amended Response to Interrogatory No. 10.  If, as is the case here, new information is received after counsel is contacted (i.e., Movant received the 503(b)(9) Bar Date Notice after contacting counsel for the Debtors), it is solely Movant's failure to act upon such information that caused the untimely filing, which does not even begin to rise to the level of excusable neglect.

49.  Movant had actual notice of the bar date for filing 503(b)(9) claims at least one week prior to the 503(b)(9) Bar Date and nonetheless failed to file a timely 503(b)(9) claim.  Rather than accept responsibility for its failure, it points the finger at counsel for the Debtors as having materially omitted this information in an e-mail. See Late Claim Motion, ¶ 13.

50.  Movant is in the business of insuring "companies that export goods to companies located in the United States."  Late Claim Motion, ¶ 7.  As a result, Movant is not the type of party that can easily claim ignorance of bankruptcy procedures.  See Late Claim Motion at ¶ 12 ("[Movant] is a large entity, and many insurance claims

similar to TechCraft's are filed with it."). Movant knew as
of November, 25, 2008, the date on which TechCraft filed its
insurance claim with Movant, that it had a claim against the
Debtors. Additionally, Movant had sufficient time in which
to file a proof of claim after its physical receipt of the
503(b)(9) Bar Date Notice on December 11, 2008. The
503(b)(9) claim form is not excessively complicated, and the
accompanying instructions and notice were quite clear – the
bar date was December 18, 2008 and Movant simply failed to
file a timely claim. See 503(b)(9) Bar Date Notice, pp. 2-3
(Contents of Section 503(b)(9) Claim Requests).

51. Movant also had constructive notice of the
impending 503(b)(9) Bar Date. On November 19, 2008, the
Debtors published the 503(b)(9) Bar Date Notice in The New
York Times (Dkt. No. 549), The Wall Street Journal (Dkt. No.
548),and The Richmond Times-Dispatch (Docket No. 547).
Publication notice had not been required by the 503(b)(9)
Bar Date Order, yet Debtors took this extra step to ensure
that unknown creditors would be provided with notice of the
impending bar date. See 503(b)(9) Bar Date Order, p. 3.

## 2.   Debtors Will Be Prejudiced if Movant's Claim Is Allowed

52.   Another factor to be considered when determining whether a party's failure to act in a timely manner was attributable to "excusable neglect" is whether the party's failure to act in a timely manner will prejudice the opposing party.  See Pioneer, 507 U.S. at 395.  However, the presence or absence of prejudice to the Debtors is only one of several factors to be considered by the court in determining whether the claimant has satisfied the excusable neglect standard.  See In re Keene Corp., 188 B.R. 903, 909 (S.D.N.Y. 1995) ("We ... conclude that an approach that considers all the relevant factors, but recognizes that they all need not point in the same direction, is the correct one.  Conversely, we question the wisdom of an approach under which the court must ultimately ignore the creditor's culpability and permit the filing of an [sic] late claim if prejudice is absent.").

53.   The allowance of Movant's late claim could conceivably have a substantial, negative impact on the dividend to junior claimants.  The allowance of these late claims would significantly diminish the distribution projected for those claimants that filed timely proofs of

24

claim.  See In re Intelligent Med. Imaging, 262 B.R. 142,

146 (Bankr. S.D. Fla. 2001) (disallowing the late claim in a

liquidating chapter 11 case because "the claim would produce

substantial prejudice to the other creditors in the case, in

that it would greatly reduce the distribution to unsecured

creditors.").  In addition, if this Court were to grant

Movant's motion, it may encourage the filing of many similar

motions, and the amount of the Court's time that would be

devoted to considering late claim motions in this case would

be substantial.

    54.  Were this Court to grant the relief requested by

the Movant, it also would wreak administrative havoc in the

Debtors' claims resolution process, especially with respect

to alleged administrative claims which could, in the

aggregate, have a substantial impact on distributions to

junior creditors, as well as affect the liquidation analysis

and administrative claims pool with respect to confirmation

of the plan of liquidation.  The amount of time and legal

expense that the Debtors would have to devote to responding

to such motions, rather than continuing to reconcile timely

filed claims, also could be substantial.  See In re Calpine

Corp., 2007 U.S. Dist. LEXIS 86514 at *19 (S.D.N.Y. Nov. 21,

2007) (finding that "the disruption in the judicial

administration of the estate can constitute prejudice, apart from any decreased distribution"); see also In re Nat'l Steel Corp., 316 B.R. 510, 520 (Bankr. N.D. Ill. 2004) (disallowing a late claim because allowing the claim would require considerable analysis and time and would severely prejudice the debtors and their ability to effectively and efficiently review and dispose of claims and make distributions under the plan).  The allowance of late claims at this stage of the case also would severely prejudice the administration of this mature liquidating chapter 11 case.[5]

55.  Allowing Movant's late claim could easily open the flood gates for additional late claimants to come forward. As one court in this district has previously noted: "[i]f the court were to allow [Movant] to file a late claim solely because [Movant was] unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward."  In re US Airways, Inc., 2005 Bankr. LEXIS 2696, *24-25 (E.D. Va. 2005); see also In re Dana

---

[5] In its Response to Interrogatory No. 8, Movant incorrectly states that the allowance of the late claim will have no effect on "the filing of any such plan" and that the Debtors "have not filed a disclosure statement or plan with the Court."  Movant has clearly failed to review the docket to see that a disclosure statement has been approved, an amended plan filed, and the continued hearing on confirmation of the plan is scheduled for January 28, 2009.

Corp., 2007 Bankr. LEXIS 1394 at *19 (In a case dealing with a late-filed 503(b)(9) claim in a chapter 11 bankruptcy, the court held that "the floodgates argument is a viable one ... [g]ranting the requested relief ... would set an untenable precedent and would likely precipitate a flood of similar claims."); In re US Airways, Inc., 2005 Bankr. WL 3676186, *8 (E.D. Va. 2005) ("[A]llowance of claims filed many months after the passage of the bar date would frustrate the efforts of both the participants and the court.")

56.   Movant's Late Claim Motion should be denied because its allowance would significantly prejudice the Debtors, open the door to a flood of late claims, reduce the recovery to junior creditors, and result in significant investment of time and expense on behalf of this Court, the Debtors and their professionals.

### 3.   The Length of Delay Weighs Against the Allowance of Movant's Late Claim

57.   Another factor this Court must consider is the length of the delay.  The length of Movant's delay in this case is significant and weighs against the Movant.  Movant received TechCraft's insurance claim on November 25, 2008 and received TechCraft's 503(b)(9) claim form and notice of

the 503(b)(9) Bar Date on December 11, 2008 – in advance of
the 503(b)(9) Bar Date.

58.  Despite early notice of the nature of the claim,
Movant failed to file a 503(b)(9) claim by the 503(b)(9) Bar
Date and did not file such claim until January 28, 2009,
forty (40) days after the 503(b)(9) Bar Date had passed.

59.  It is not uncommon for courts to deny a proof of
claim filed just a few days after the bar date.  See
Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530
(4th Cir. 1996) (refusing to enlarge the period for filing a
notice of appeal when the litigant mailed the notice three
days prior to the expiration of the deadline but the notice
did not arrive until three days after the expiration of the
deadline); see also In re Dishman, 257 B.R. 780 (Bankr. E.D.
Va. 2000) (refusing to enlarge time for filing of complaint
where complaint was filed two days late due to a delay in
mail delivery caused by inclement weather); see also Avnet,
Inc. v. Maxwell, 2006 WL 1519333 (N.D. Ill.) (refusing to
accept late filing where claim was faxed to claims agent on
bar date and delivered by courier to claims agent one day
after the bar date); see also In re Yankee Distrib. Co., 53
B.R. 222 (Bankr. D. Vt. 1985) (motion to allow late proof of
claim was denied where proof of claim arrived one day after

the bar date).  As a result of Movant's substantial delay in filing its 503(b)(9) claim and Movant's failure to provide a reasonable justification for such delay, Movant's late 503(b)(9) claim should be disallowed.

60.  Movant has failed to demonstrate sufficient facts to warrant this Court's finding of "excusable neglect." Because Movant had notice of the nature of TechCraft's claim by November 25, 2008, had constructive notice of the 503(b)(9) Bar Date on November 19, 2008 and had actual receipt of the 503(b)(9) Bar Date Notice by December 11, 2008, Movant has failed to provide this Court with any reason why it should be excused from its failure to timely file its claim by the 503(b)(9) Bar Date.

61.  Movant's failure to file a 503(b)(9) claim by the 503(b)(9) Bar Date was due to inaction, not neglect, and even if Movant's failure to file a 503(b)(9) claim was due to neglect, such neglect is not excusable.  Even if Movant could prove excusable neglect, which the Debtors submit is not possible under the facts Movant alleges, the Court should, in its discretion deny Movant's Late Claim Motion because, among other reasons, any potential claims held by Movant are barred by the 503(b)(9) Bar Date Order.

**III. Movant's Contention that Debtors' Counsel Provided Misleading Information To Movant Is Without Merit**

62.   Movant alleges that it should be allowed to file a late 503(b)(9) claim because, in part, Debtors' counsel purportedly supplied Movant with misleading information.   In support of this contention, Movant's counsel rely upon a string of emails sent by and between Jo-Ann Keech-Barker ("Barker"), an employee of Movant, and counsel for the Debtors.   A true and correct copy of the emails is attached hereto as Exhibit C and incorporated herein.

63.   The emails cited by Movant do not provide any indication that Debtors' counsel misled Movant with regard to the 503(b)(9) Bar Date.   In fact, the opposite is true. The emails provide a link to the KCC Website and advise Movant to consult the KCC Website for information on filing deadlines. See Exhibit C.   Therefore, the emails with Debtors' counsel provided the Movant with actual notice – albeit indirect – of the 503(b)(9) Bar Date on December 2, 2008.

64.   Based on the email correspondence, it is inconceivable that Movant is alleging that it was misled. The relevant 503(b)(9) Bar Date information was clearly

identified and easily accessible on the KCC Website.  <u>See</u>
<u>Exhibit B</u>.

65.  Additionally, debtors' counsel are under no duty
to provide creditors with information regarding bar dates.
<u>See</u> <u>In re Jackson</u>, 98 B.R. 738, 741 (Bankr. D. Md. 1986)
(stating that debtor's counsel is under no duty to respond
to creditor inquiries regarding filing deadlines); <u>see</u> <u>also</u>
<u>In re First Software Corp.</u>, 97 B.R. 711, 719 (Bankr. D.
Mass. 1988) (affirming the bankruptcy court's rejection of
claimant's motion to extend time for filing and stating that
debtor's counsel was under no duty to make the claimant
aware of the filing deadline).

66.  Moreover, after contacting Debtors' counsel,
Movant was provided with a copy of the 503(b)(9) Bar Date
Notice on December 11, 2008 – in advance of the 503(b)(9)
Bar Date.  Even if this Court were to find that Debtors'
counsel had materially omitted information regarding the
503(b)(9) Bar Date, which it vehemently denies, Movant
nonetheless obtained actual notice of the impending
503(b)(9) Bar Date in advance of its expiration.  Movant has
only itself to blame for its failure to act on the
information provided in the 503(b)(9) Bar Date Notice.

67.   The undisputed facts are that Movant received the 503(b)(9) Bar Date Notice prior to the 503(b)(9) Bar Date and failed to timely file a claim during the reconciliation process with its insured.  Its insured failed to file a claim because it had provided the claim information to Movant.  Movant was contractually obligated to pay out on its insured's claim (at a percentage of the total amount), which it ultimately paid, and which Movant now is attempting to recover in full from the Debtors' estates.[6]  Movant has failed to meet its burden of proving excusable neglect and no cause exists for extending the time within which it may file its claim.  Accordingly, the Late Claim Motion must be denied.

---

[6] In addition to the late 503(b)(9) claim, Movant also has asserted a general unsecured claim, to which the Debtors intend to object.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtors

respectfully request that this Court sustain this Objection,

deny the Late Claim Motion, and grant the Debtors such other

and further relief as it deems just and proper.

Dated: January 11, 2010  Gregg M. Galardi, Esq.
   Richmond, Virginia  Ian S. Fredericks, Esq.
           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           One Rodney Square
           PO Box 636
           Wilmington, Delaware 19899-0636
           (302) 651-3000

            - and -

           Chris L. Dickerson, Esq.
           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           155 North Wacker Drive
           Chicago, Illinois 60606
           (312) 407-0700

            - and -

           /s/ Douglas M. Foley
           Dion W. Hayes (VSB No. 34304)
           Douglas M. Foley (VSB No. 34364)
           MCGUIREWOODS LLP
           One James Center
           901 E. Cary Street
           Richmond, Virginia 23219
           (804) 775-1000

           Counsel for Debtors in
           Possession

\10015562

**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

```
------------------------------------------------  x
                                          :   Chapter 11
                                          :
In re:                                    :   Case No. 08-35653 (KRH)
                                          :
CIRCUIT CITY STORES, INC.,                :
et al.,                                   :
                                          :   Jointly Administered
                    Debtors.¹             :
                                          :
                                          :
------------------------------------------------  x
```

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed

by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the

Debtors in the above-captioned cases.

On November 19, 2008, copies of the following documents were served via overnight mail

upon the parties set forth on the service list attached hereto as **Exhibit A**:

1. Notice of Bar Date for Filing a Request for Allowance of an Administrative Expense Claim Under 11 U.S.C. § 503(b)(9); and Section 503(b)(9) Claim Request Form (Docket No. 145)

2. Notice of Entry of Interim Order Under Bankruptcy Code Sections 105(a), 362, 503(b), 507(a), 546(c), and 546(h) (I) Granting Administrative Expense Status to Obligations from Postpetition Delivery of Goods; (II) Authorizing Payment of Expenses in the Ordinary Course of Business; (III) Authorizing Debtors to Return Goods; and (IV) Establishing Procedures for Reclamation Demands (Docket No. 146)

---

¹   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.



Dated: November 24, 2008

Evan Gershbein

State of California, County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 24th day of November, 2008, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _Shannon Spencer_

SHANNON JOANN SPENCER
Commission # 1676705
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2010

2

Circuit City Stores, Inc.
Creditor Matrix

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TECH CONFERENCES INC | | 731 MAIN ST STE D3 | | | MONROE | CT | 06468 | |
| TECH CONFERENCES INC | | 470 MISSION ST STE 2 | | | CAROL STREAM | IL | 60188 | |
| TECH CONNECTORS | | | | | | | | |
| TECH CRAFT INC | | | | | | | | |
| TECH CRAFT INC | | PO BOX 83097 | W83097 | | WOBURN | MA | 01813-3097 | |
| TECH DATA CORP | | PO BOX 651138 | | | CHARLOTTE | NC | 282651138 | |
| TECH DATA CORP | | PO BOX 651138 | | | CHARLOTTE | NC | 282651138 | |
| TECH DATA CORP | | 6000 FELDWOOD RD | | | COLLEGE PARK | GA | 30349 | |
| TECH DATA CORP | | PO BOX 93836 | | | CHICAGO | IL | 60673-3836 | |
| TECH DATA CORPORATION | | PO BOX 277847 | | | ATLANTA | GA | 30384-7847 | |
| TECH DEPOT | | HFD FGD 3074 | | | HARTFORD | CT | 06150-3074 | |
| TECH DEPOT | | 6 CAMBRIDGE DR | | | TRUMBULL | CT | 06611 | |
| TECH ELECTRONICS | | 4323 ATLANTA HWY | | | MONTGOMERY | AL | 36109 | |
| TECH ELECTRONICS INC | | 5437 MANCHESTER AVE | | | ST LOUIS | MO | 63110 | |
| TECH GROUP INC | | 2001 TIDEWATER COLONY DRIVE | SUITE 101 | | ANNAPOLIS | MD | 21401 | |
| TECH GROUP INC | | SUITE 101 | | | ANNAPOLIS | MD | 21401 | |
| TECH GROUP INC, THE | | FOURTH FLOOR | FOURTH FLOOR | | ANNAPOLIS | MD | 21401 | |
| TECH GROUP INC, THE | | 147 OLD SOLOMONS ISLAND RD | | | ANNAPOLIS | MD | 21401 | |
| TECH HEATING AIR CONDITIONING | | PO BOX 9713000 | | | DALLAS | TX | 75397-1300 | |
| TECH HEATING AIR CONDITIONING | | PO BOX 9713000 | | | DALLAS | TX | 75397-1300 | |
| TECH II ELECTRONIC SVC CO | | 1038 FARMINGTON AVE | | | KENSINGTON | CT | 06037 | |
| TECH KNOWLEDGE COMPUTER | | 11676 BAPTIST CHURCH RD | | | ST LOUIS | MO | 63128 | |
| TECH KNOWLEDGE COMPUTER | | | | | | | | |
| TECH MAINTENANCE SUPPLY INC | | 3422 W 63RD ST | | | CHICAGO | IL | 60629 | |
| TECH NI COMM INC | | 28170 AVENUE CROCKER NO 100 | | | VALENCIA | CA | 91355 | |
| TECH NI COMM INC | | 1655 S EUCLID SUITE G | | | ANAHEIM | CA | 92802 | |
| TECH PAINTING | | | | | | | | |
| TECH RENTALS INC | | | | | | | | |
| TECH RENTALS INC | | 6550 MCDONOUGH DR | | | NORCROSS | GA | 30083 | |
| TECH RESOURCE GROUP INC | | 2 HANOVER SQUARE SUITE 2330 | | | RALEIGH | NC | 27601 | |
| TECH SER INC | | 27 MAUCHLY ROAD STE 210 | | | IRVINE | CA | 92618 | |
| TECH SITE | | PO BOX 11290 | | | RICHMOND | VA | 232230-1290 | |
| TECH SITE | | PO BOX 11290 | | | RICHMOND | VA | 232230-1290 | |
| TECH SPACES | | 711 N ROCKCLIFF RD | | | FAYETTEVILLE | AR | 72701 | |
| TECH SPECIALISTS | | 106 EAST 1120 NORTH SUITE B | | | LOGAN | UT | 84341 | |
| TECH SUPPORT | | 9320 WALSH LANE | | | UKIAH | CA | 95482 | |
| TECH TAG & LABEL | | 1501 W PARK AVENUE | | | PERKASIE | PA | 18944 | |
| TECH TAG & LABEL | | 1901 N PENN RD | | | HATFIELD | PA | 19440 | |
| TECH TARGET COM | | | | | | | | |
| TECH TARGET COM | | 117 KENDRICK ST STE 800 | | | NEEDHAM | MA | 02494 | |
| TECH TRON TELEVISION CO INC | | 94 QUENTIN RD | | | BROOKLYN | NY | 11223 | |
| TECH TRONICS INC | | 220A THREE BROTHERS RD | | | SHELBY | NC | 28152 | |
| TECH TV | | 12312 W OLYMPIC BLVD | | | LOS ANGELES | CA | 90064 | |
| TECH TV | AD SALES AR | G4 MEDIA INC FILE 50460 | | | LOS ANGELES | CA | 90074-0460 | |
| TECH TV & VCR INC | | 1614 N GRAND | | | ENID | OK | 73701 | |
| TECHBARGAINS.COM LLC | | 1819 POLK ST STE 218 | | | SAN FRANCISCO | CA | 94109 | |
| TECHCENTER | | | | | | | | |
| TECHCENTER | | 7850 12TH AVE S | | | BLOOMINGTON | MN | 55425 | |
| TECHCRAFT MANUFACTURING INC | | PO BOX 55811 | | | BOSTON | MA | 02205-5811 | |
| TECHDATA | | 5301 TECHDATA DRIVE | | | CLEARWATER | FL | 34620 | |
| TECHDATA | | PO BOX 561549 | | | CHEVY CHASE | MD | 20825-1549 | |
| TECHEAD | | 111 N 17TH ST | | | RICHMOND | VA | 23219 | |
| TECHEAD | | 111 N 17TH ST | | | RICHMOND | VA | 23219 | |
| TECHLINE ELTRAX INC | | PO BOX 5328 | | | BOSTON | MA | 02206 | |
| TECHLINK TRAINING INC | | PO BOX 226 | | | FANWOOD | NJ | 07023 | |
| TECHNA GLASS | | 460 W 9000 S | | | SANDY | UT | 84070 | |
| TECHNI TOOL INC | | PO BOX 827014 | | | PHILADELPHIA | PA | 19182-7014 | |
| TECHNI TOOL INC | | PO BOX 368 | | | PLYMOUTH MEETING | PA | 19462 | |
| TECHNI TOOL INC | | PO BOX 1117 | | | WORCESTER | PA | 19490-1117 | |
| TECHNIBILT LTD | | | | | | | | |
| TECHNIBILT LTD | | PO BOX 60297 | | | CHARLOTTE | NC | 28260 | |
| TECHNIBILT LTD | | PO BOX 309 | | | NEWTON | NC | 28658 | |
| TECHNIBILT LTD | | PO BOX 309 | | | NEWTON | NC | 28658 | |
| TECHNIBILT LTD | | PO BOX 310 | 700 EASE P ST | | NEWTON | NC | 28658 | |
| TECHNIBILT LTD | | PO BOX 532078 | | | ATLANTA | GA | 30353-2078 | |
| TECHNICAL ARTS | | 6800 EDGEWATER COMMERCE PKY | | | ORLANDO | FL | 32810 | |

11/24/2008 12:17 PM

**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - -  x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC., et :   Case No. 08-35653 (KRH)
al.,                        :
                            :
              Debtors.      :   Jointly Administered
- - - - - - - - - - - - - -  X
```

I, Evan J. Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC ("KCC"), the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

I administer the KCC website for the above-captioned case at http://www.kccllc.net/circuitcity (the "KCC Website").

At my direction, on November 13, 2008, the 503(b)(9) administrative claim bar date of December 19, 2008 at 5:00 p.m. (Pacific) (the "503(b)(9) Administrative Claims Bar Date") was posted under the section of the KCC Website entitled Important Dates, Deadlines & Documents.

The items in the Important Dates, Deadlines & Documents section appear in chronological order. The 503(b)(9) Administrative Claims Bar Date is the fourth item on the list.

At my direction, on November 13, 2008, a link to the 503(b)(9) Administrative Claims Bar Date Notice was posted next

to the 503(b)(9) Administrative Claims Bar Date in the Important

Dates, Deadlines & Documents section of the KCC Website.

On November 19, 2008, I posted the link to the 503(b)(9)

Administrative Proof of Claim Form next to the 503(b)(9)

Administrative Claims Bar Date in the Important Dates, Deadlines

& Documents section of the KCC Website.


Dated: December 9, 2009                    _____
                                           Evan J. Gershbein


State of California, County of Los Angeles
Subscribed and sworn to (or affirmed) before me on this 9th day
of December 2009, by Evan J. Gershbein, provided to me on the
basis of satisfactory evidence to be the person who appeared
before me.

Signature: _____

SHANNON JOANN SPENCER
Commission # 1676705
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2010

**Exhibit C**

**From:** Keech-Barker, Jo-Ann [JKeech-Barker@edc.ca]
**Sent:** Tuesday, December 02, 2008 11:00 AM
**To:** Boehm, Sarah B.
**Subject:** RE: Circuit City

Thank you!

Jo-Ann

-----Original Message-----
**From:** Boehm, Sarah B. [mailto:sboehm@mcguirewoods.com]
**Sent:** Tuesday, December 02, 2008 10:40 AM
**To:** Keech-Barker, Jo-Ann
**Subject:** RE: Circuit City

No, it is not too early to file a claim. You can go to www.kccllc.net/circuitcity for information.

-----Original Message-----
**From:** Keech-Barker, Jo-Ann [mailto:JKeech-Barker@edc.ca]
**Sent:** Tuesday, December 02, 2008 10:26 AM
**To:** Boehm, Sarah B.
**Subject:** RE: Circuit City

Is it too early to file Proof of Claims?

-----Original Message-----
**From:** Boehm, Sarah B. [mailto:sboehm@mcguirewoods.com]
**Sent:** Tuesday, December 02, 2008 10:25 AM
**To:** Keech-Barker, Jo-Ann
**Cc:** Blanks, Daniel F.
**Subject:** RE: Circuit City

The general bar date for filing proofs of claim has not yet been established.

-----Original Message-----
**From:** Keech-Barker, Jo-Ann [mailto:JKeech-Barker@edc.ca]
**Sent:** Tuesday, December 02, 2008 10:22 AM
**To:** Boehm, Sarah B.
**Subject:** Circuit City
**Importance:** High

Dear Ms. Beckett-Boehm,

Can you please tell me when is the Bar Date for filing proof of Claims?  Export
Development Canada (EDC) has pending claims against Circuit City and we would like
to register these debts in EDC's name.

Thank you for your assistance in this matter.

Best Regards,

Jo-Ann Keech-Barker
Recovery Assistant/Adjointe aux recouvrements
Export Development Canada/Exportation et développement Canada
151 O'Connor St.
Ottawa, Ontario
Tel: 613-598-3103
Fax: 613-598-2837
jkeech-barker@edc.ca