Sharon Z. Weiss
RICHARDSON & PATEL LLP
Murdock Plaza
10900 Wilshire Boulevard, Suite 500
Los Angeles, California 90024
Tel: (310) 208-1182
Fax: (310) 208-1154

*Counsel for Apex Digital, Inc.*

– and –

Michael St. Patrick Baxter
Dennis B. Auerbach
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

*Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

David M. Poitras
JEFFER, MANGELS, BUTLER &
MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Counsel for THQ, Inc.*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In Re

CIRCUIT CITY STORES, INC., *et al.*,

Debtors.

Case No. 08-35653 (KRH)

Chapter 11

Jointly Administered

## MOTION OF APEX DIGITAL, INC. AND THQ, INC. FOR RECONSIDERATION OF COURT'S ORDER ON DEBTORS' FIFTY-FIRST AND FIFTY-SECOND OMNIBUS OBJECTIONS

Pursuant to Fed. R. Civ. P. 59 (as made applicable in this proceeding by Fed. R. Bankr. P.

9023), Apex Digital, Inc. and THQ, Inc. respectfully move for reconsideration of the Court's

Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections and related Memorandum

Opinion, both entered on January 6, 2010 (Docket Numbers 6228 and 6228-1).

1.      On November 13, 2009, Apex and THQ filed a Supplemental Response to the

Debtors' Fifty-First Omnibus Objection to Certain Section 503(b)(9) Claims (the "Supplemental

Response" — Docket No. 5666).[1]  However, the Court did not consider the Supplemental

Response in rendering its judgment.  *See* Memorandum Opinion at 3 n.5 (indicating that the

Supplemental Response was not among the pleadings considered by the Court).

2.      We respectfully submit that the Court should now reconsider its January 6, 2010

Memorandum Opinion and Order to take account of the Supplemental Response.  *See In re E.M.*

*Williams & Sons, Inc.*, No. 08-30054, 2009 WL 2211727, *1-2 (Bankr. E.D. Va. July 17, 2009).

In the Memorandum Opinion, the Court agreed with the Debtors' position that, pursuant to Fed.

R. Bankr. P. 3002, a section 503(b)(9) administrative claimant must file a proof of claim, which

is in turn subject to disallowance under 11 U.S.C. § 502(d).  The Debtors stated this position for

the first time at the November 12, 2009 hearing.  Accordingly, Apex and THQ were only able to

brief the issue in their Supplemental Response, which was filed the next day.  The Supplemental

Response is the only brief filed by a respondent that specifically addresses Rule 3002, and it

should thus be considered by the Court in resolving the Debtors' objections.

3.      As explained in the Supplemental Response, the Debtors' position that section

503(b)(9) claimants must file proofs of claim pursuant to Rule 3002 is unfounded.  Indeed, the

Court has previously ruled in this case that a party seeking administrative-expense

reimbursement under section 503(b)(9) need only file a motion for allowance of administrative

---

[1]      The Supplemental Response is attached as **Exhibit A** and incorporated by reference

herein.

expense — not a proof of claim — to meet its procedural burden.  *See* Order Establishing Bar Date For Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107), ¶ 6 ("All persons or entities holding a Section 503(b)(9) Claim against the Debtors are required to file a Section 503(b)(9) Claim Request *or, alternatively, a motion seeking payment of a 503(b)(9) claim* . . . no later than the Section 503(b)(9) Bar Date") (emphasis added).

4.     That prior ruling by the Court is fully consistent with section 503(a), which expressly states that only a "request for payment of an administrative expense" is required for a party to seek allowance of an administrative expense.  It is also supported by the *Collier* treatise: "The requirement that a proof of claim be filed extends to unsecured creditors claiming priorities *but does not extend to costs of administration*."  9 *Collier on Bankruptcy*, ¶ 3002.01[1] at 3002-3 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.) (emphasis added).  To the extent Rule 3002 provides otherwise, it is at odds with the plain language of section 503 and does not control.  *See In re Pac. Atl. Trading Co.*, 33 F.3d 1064, 1066 (9th Cir. 1994) ("Any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code.").

5.     "'[C]laim' in section 502(d) includes only one for which a proof has been filed." *Durham v. SMI Indus. Corp.*, 882 F.2d 881, 883 (4th Cir. 1989).  For the reasons stated above and in the Supplemental Response, a section 503(b)(9) claimant need only file a request for payment — not a proof of claim.  Accordingly, requests for payment asserted pursuant to section 503(b)(9) are not subject to disallowance under section 502(d).  *See* Supplemental Response, ¶¶ 2-6.

6.    The Court expresses concern in the Memorandum Opinion that overruling the Debtors' objections might allow section 503(b)(9) claimants both to seek payment in respect of goods provided to debtors within 20 days of bankruptcy, and to use the provision of such goods as the basis for a "new value" defense under 11 U.S.C. § 547(c)(4).  Memorandum Opinion at 12-13.  However, neither section 503(b)(9) nor section 547(c)(4) states that the provisions are mutually exclusive.  The plain language of the Code thus permits a claimant to both seek administrative-expense reimbursement under section 503(b)(9) and to assert a new value defense under section 547(c)(4).  *See, e.g.*, *Commissary Operations v. Dot Foods, Inc. (In re Commissary Operations, Inc.)*, No. 308-06279, slip op. at 11 (M.D. Tenn. Jan. 6, 2010) ("There is nothing in the plain language of 11 U.S.C. § 503(b)(9) or 11 U.S.C. § 547(c)(4) that indicates any Congressional intent to offset the intended benefits that [section 503(b)(9)] confers upon sellers through a reduction of available new value in defending a preference action") **(Exhibit B)**.  Moreover, these provisions were enacted to encourage vendors to continue providing goods to companies in financial distress.  Forcing vendors to give up a new value defense as a condition of asserting a 503(b)(9) administrative claim, or vice-versa, "would work a disservice on Congress' inherent policy goals" by "chill[ing] [vendors'] willingness to do business with troubled entities." *Id*. at 10-11.

7.    In any event, this issue need not and should not be resolved now.  If a section 503(b)(9) claimant invokes section 547(c)(4) as an affirmative defense in a future preference adversary proceeding, the Court can decide at that time whether the defense is valid where the defendant/claimant has already been paid in full in respect of its new value pursuant to section

503(b)(9).  Until then, there is no live controversy regarding section 547(c)(4) to be addressed by the Court.

<u>**Conclusion**</u>

For the foregoing reasons, Apex and THQ respectfully request that the Court (a) grant the Motion for Reconsideration; (b) reconsider its January 6, 2010 ruling in light of the arguments set forth in the Supplemental Response; and (c) overrule the Debtors' Fifty-First and Fifty-Second Omnibus Objections to Certain 503(b)(9) Claims.  Pursuant to Local Rule 9013-1(L), we submit that this matter can be decided on the papers and that no hearing is required.

Dated: January 13, 2010

Sharon Z. Weiss
RICHARDSON & PATEL LLP
Murdock Plaza
10900 Wilshire Boulevard, Suite 500
Los Angeles, California 90024
Tel: (310) 208-1182
Fax: (310) 208-1154

*Counsel for Apex Digital, Inc.*

David M. Poitras
JEFFER, MANGELS, BUTLER & MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Counsel for THQ, Inc.*

– and –

/s/   Joshua D. McKarcher
Michael St. Patrick Baxter
Dennis B. Auerbach
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

*Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

**Exhibit A**

Sharon Z. Weiss
Mark E. Carrillo
RICHARDSON & PATEL LLP
Murdock Plaza
10900 Wilshire Boulevard, Suite 500
Los Angeles, California 90024
Tel: (310) 208-1182
Fax: (310) 208-1154

*Counsel for Apex Digital, Inc.*

- and –

Michael St. Patrick Baxter
Dennis B. Auerbach
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC  20004-2401
Tel: (202) 662-6000
Fax: (202) 662-6291

*Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

David M. Poitras
Caroline R. Djang
JEFFER, MANGELS, BUTLER &
MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Tel: (310) 203-8080
Fax: (310) 203-0567

*Counsel for THQ, Inc.*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In Re:<br><br>CIRCUIT CITY STORES, INC., et al.,<br><br>Debtors. | Case No. 08-35653 (KRH)<br><br>Chapter 11<br><br>Jointly Administered |

**SUPPLEMENTAL RESPONSE OF APEX DIGITAL, INC. AND THQ, INC. TO
DEBTORS' FIFTY-FIRST OMNIBUS OBJECTION TO CERTAIN 503(b)(9) CLAIMS**

1.      Apex Digital, Inc. and THQ, Inc. file this supplemental response to the Debtors'

Fifty-First Omnibus Claim Objection to Certain 503(b)(9) Claims (Docket No. 5214).   The

supplemental response is limited to the Debtors' assertion at the November 12 hearing on the Omnibus Objection that, pursuant to Fed. R. Bankr. P. 3002, a party seeking payment of administrative expenses under 11 U.S.C. § 503(b)(9) must file a proof of claim (which is, in turn, subject to allowance or disallowance under section 502). The Debtors stated this argument for the first time at the November 12 hearing. It was not contained in the Debtors' papers, and respondents thus did not have the opportunity to brief the issue previously.

2.      The Fourth Circuit has held that "'claim' in section 502(d) includes only one for which a proof has been filed." *Durham v. SMI Indus. Corp.*, 882 F.2d 881, 883 (4th Cir. 1989). At the hearing, the Debtors attempted to get around this clear statement by the Fourth Circuit by contending that a proof of claim must be filed in order for a section 503(b)(9) administrative expense request to be allowed.

3.      That position is wholly unfounded. Amounts due under section 503(b)(9) are administrative expenses, which are allowed or disallowed under section 503 — not section 502. Accordingly, the proof of claim provisions of the Code and Rules do not apply to section 503(b)(9) expense requests. *See* 9 *Collier on Bankruptcy*, ¶ 3002.01[1] at 3002-3 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.) ("The requirement that a proof of claim be filed extends to unsecured creditors claiming priorities **but does not extend to costs of administration.**") (emphasis added).

4.      The Norton treatise explains why this is the case:

To begin with, § 503 is captioned "allowance of administrative expenses." This appears to suggest that § 503 is a separate allowance section, apart from § 502, devoted exclusively to administrative expenses. If so, then § 502 would not apply to the allowance of administrative expenses. The rest of the statute is consistent with this reading. Section 507(a)(1) refers to 'administrative expenses allowed under section 503(b).' Note that the reference is to 'expenses' rather than

2

'claims,' the latter of which is handled under § 502. Also, of course, § 507(a)(1) specifically states that allowance is under § 503(b), implying that § 502 is out of the picture.

2 *Norton Bankruptcy Law and Practice 2d* ¶ 42.14 at 42-76 to 42-77 (emphasis added).

5.     Indeed, the Court has previously ruled in this case that a party seeking administrative-expense reimbursement under section 503(b)(9) need only file a motion for allowance of administrative expense — not a Rule 3001 proof of claim — to meet its procedural burden.  *See* Order Establishing Bar Date For Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107), ¶ 6 ("All persons or entities holding a Section 503(b)(9) Claim against the Debtors are required to file a Section 503(b)(9) Claim Request or, alternatively, a motion seeking payment of a 503(b)(9) claim . . . no later than the Section 503(b)(9) Bar Date.").  This ruling is fully consistent with section 503(a), which expressly states that only a "request for payment of an administrative expense" is required for a party to seek allowance of an administrative expense.[1]

6.     The Debtors offer no case support for their position that the proof of claim rules apply to section 503(b)(9) administrative claimants.  That is not surprising because the cases support the contrary *Collier/Norton* view.  *See, e.g.*, *In re Plastech Eng'r Prods.,* 394 B.R. 147, 162 (Bankr. E.D. Mich. 2008) ("[T]he Court does not conclude that a § 503(b)(9) administrative expense cannot be a 'claim.'  Instead, the Court finds that **a § 503(b)(9) administrative expense**

---

[1]     Indeed, if Rule 3002 were read to apply to section 503(b)(9) administrative-expense requests, then the Rule would be in direct conflict with section 503(a):  the "must file a proof of claim" language of Rule 3002 would conflict with the section 503(a) provision that an entity "may timely file a request for payment of an administrative expense."  Of course, "[a]ny conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064, 1066 (9th Cir. 1994).

**is simply not a type of claim that is filed under § 501, and allowed or disallowed under § 502**.") (emphasis added)); *accord In re TI Acquisition, LLC*, 410 B.R. 742, 750 (Bankr. N.D. Ga. 2009); *see also In re Ames*, 582 F.3d 422, 429 (2d Cir. 2009) ("Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled 'Allowance of administrative expenses.' The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects."); *In re Atcall, Inc.*, 284 B.R. 791, 797 (Bankr. E.D. Va. 2002) ("Section 503(b) and the introductory clause to § 507(a)(1) make clear that the [section 503 allowance] process is **commenced with the filing of a request for payment** . . . ." (emphasis added)); *In re Fas Mart Convenience Stores, Inc.*, 320 B.R. 587, 593 (Bankr. E.D. Va. 2004) ("Unlike a proof of claim, which according to Rule 3001(a) should 'conform substantially to the appropriate Official Form,' an administrative expense claim need not take any particular form under the Code or Rules.").

7.    In sum, the cases and treatises make clear that no proof of claim is required to assert a section 503(b)(9) administrative-expense request, and that such requests are governed by the allowance/disallowance provisions of section 503 — not those of section 502 (including section 502(d)). For this and the other reasons stated in the respondents' papers and at the November 12 hearing, the Debtors' Omnibus Objection should be overruled.

4

Dated: November 13, 2009                Sharon Z. Weiss
                                        Mark E. Carrillo
                                        RICHARDSON & PATEL LLP
                                        Murdock Plaza
                                        10900 Wilshire Boulevard, Suite 500
                                        Los Angeles, California 90024
                                        Tel: (310) 208-1182
                                        Fax: (310) 208-1154

                                        *Counsel for Apex Digital, Inc.*

                                        David M. Poitras
                                        Caroline R. Djang
                                        JEFFER, MANGELS, BUTLER & MARMARO
                                        LLP
                                        1900 Avenue of the Stars, Seventh Floor
                                        Los Angeles, California 90067
                                        Tel: (310) 203-8080
                                        Fax: (310) 203-0567

                                        *Counsel for THQ, Inc.*

                                        - and -

                                        /s/   Joshua D. McKarcher
                                        Michael St. Patrick Baxter
                                        Dennis B. Auerbach
                                        Joshua D. McKarcher (VSB No. 77061)
                                        COVINGTON & BURLING LLP
                                        1201 Pennsylvania Avenue, N.W.
                                        Washington, DC  20004-2401
                                        Tel: (202) 662-6000
                                        Fax: (202) 662-6291

                                        *Co-Counsel for Apex Digital, Inc. and THQ, Inc.*

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing Supplemental Response of Apex Digital, Inc. and THQ, Inc. to Debtors' Fifty-First Omnibus Objection To Certain 503(B)(9) Claims was served on November 13, 2009 by electronic mail on the below listed parties and e-mail addresses and through the ECF system, which in turn will generate an electronic notice of filing to all parties registered to receive electronic notice from the Court.

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
E-mail: gregg.galardi@skadden.com;
Ian.Fredericks@skadden.com; project.circuitcity@skadden.com

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
E-mail: dhayes@mcguirewoods.com; dfoley@mcguirewoods.com;
circuitcityservice@mcguirewoods.com

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL 60606
E-mail: chris.dickerson@skadden.com

*Counsel for the Debtors*

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
E-mail: Robert.B.Van.Arsdale@usdoj.gov

*Office of the United States Trustee*


Brad R. Godshall, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd, 11th Floor
Los Angeles, CA 90067-4100
E-mail: bgodshall@pszjlaw.com

*Counsel to Official Committee of Unsecured Creditors*


/s/   Joshua D. McKarcher
Joshua D. McKarcher (VSB No. 77061)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-2401
(202) 662-5223 (phone)
(202) 778-5223 (fax)
jmckarcher@cov.com

Dated: November 13, 2009

**<u>Exhibit B</u>**

Julian J. Harrison
Marian F. Harrison
US Bankruptcy Judge

Dated: 01/06/10

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **COMMISSARY OPERATIONS, INC.,** | ) | **CASE NO. 308-06279** |
| | ) | **CHAPTER 11** |
| Debtor. | ) | |
| | ) | **JUDGE MARIAN F. HARRISON** |
| | ) | |
| **COMMISSARY OPERATIONS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DOT FOODS, INC.,** | ) | **Adv. Pro. No.: 309-00280A** |
| **SUGAR FOODS CORPORATION,** | ) | **Adv. Pro. No.: 309-00282A** |
| **ARCOBASSO FOODS, INC.,** | ) | **Adv. Pro. No.: 309-00287A** |
| **NEW CITY PACKING COMPANY,** | ) | **Adv. Pro. No.: 309-00290A** |
| **INC.,** | ) | |
| **SCA TISSUE NORTH AMERICA, LLC,** | ) | **Adv. Pro. No.: 309-00295A** |
| **H.J. HEINZ COMPANY, L.P.,** | ) | **Adv. Pro. No.: 309-00297A** |
| **GEORGIA PACIFIC CONSUMER** | ) | **Adv. Pro. No.: 309-00300A** |
| **PRODUCTS, LP, ET AL,** | ) | |
| **ECOLAB, INC.,** | ) | **Adv. Pro. No.: 309-00301A** |
| **CONAGRA FOODS, INC., ET AL,** | ) | **Adv. Pro. No.: 309-00303A** |
| **NATIONAL STEAK PROCESSORS,** | ) | |
| **INC., d/b/a NATIONAL STEAK AND** | ) | |
| **POULTRY,** | ) | **Adv. Pro. No.: 309-00306A** |
| **ALLEN'S, INC.,** | ) | **Adv. Pro. No.: 309-00309A** |
| **ROCKY MOUNTAIN NATURAL** | ) | |
| **MEATS, INC.,** | ) | **Adv. Pro. No.: 309-00315A** |
| **SUPERIOR DAIRY, INC., and** | ) | **Adv. Pro. No.: 309-00327A** |
| **RYDER TRUCK RENTAL, INC.,** | ) | **Adv. Pro. No.: 309-00332A** |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OPINION

---

This matter came before the Court upon the debtor's motions for declaratory judgment regarding the use of 11 U.S.C. § 503(b)(9) administrative invoices in the 11 U.S.C. § 547(c)(4) subsequent new value defense to a preference claim and the various defendants' objections to the debtor's motions and motions for summary judgment on the same issue.[1] As stated in open court and for the following reasons, the Court denies the debtor's motions for declaratory judgment, sustains the defendants' objections to the debtor's motions, and grants the defendants' motions for partial summary judgment.

## I. PROCEDURAL BACKGROUND

On July 22, 2008, the debtor filed its voluntary Chapter 11 petition. As of the petition date, the debtor's primary business was the wholesale distribution of food and related items to chain restaurants and restaurant franchisees. The debtor originally intended to reorganize its business, however, due to various post-petition occurrences, the debtor determined in the exercise of its business judgment to wind down its business and liquidate its assets. Over 200 creditors asserted approximately 215 claims for allowance of administrative expenses arising under 11 U.S.C. § 503(b)(9). The debtor then initiated adversary proceedings against

---

[1]At the hearing, the debtor requested permission to present testimony regarding the defendants' reclamation claims. The Court orally denied the request, recognizing that the new value defense was the only issue addressed in the pleadings and set for hearing.

2 - U.S. Bankruptcy Court, M.D. Tenn.

several creditors, seeking recovery of alleged preferential transfers made by the debtor within the 90 days prior to the petition date. During a hearing held on September 17, 2009, this Court invited the parties to assert their positions on whether a creditor may reduce its liability by new value provided to a debtor within the 20 days prior to the bankruptcy filing if the creditor also files a § 503(b)(9) administrative claim seeking payment for that new value. Pleadings on this issue were filed in the above-styled adversaries.

## II. <u>ARGUMENTS</u>

The issue in dispute is whether the goods and invoices making up the pending 11 U.S.C. § 503(b)(9) claims may be included in the 11 U.S.C. § 547(c)(4) defense to a preference claim, commonly referred to as the "subsequent new value defense." The debtor argues that they should not be included in the subsequent new value defense, asserting that creditors would receive double value for their § 503(b)(9) invoices: first by receiving administrative expense priority over unsecured creditors, and second by reducing their preference liability by the amount of their § 503(b)(9) invoices, assuming those invoices are for goods provided subsequent to avoidable preferential transfers.

The creditors submit that goods delivered to a pre-petition debtor within the 20 days prior to the petition date benefit the pre-petition debtor and the estate upon a bankruptcy filing. Therefore, the creditors argue that they cannot be excluded from a subsequent new value defense analysis under 11 U.S.C. § 547(c)(4) because: (1) a creditor's ability to file

3 - U.S. Bankruptcy Court, M.D. Tenn.

a claim for administrative payment for the value of goods delivered in the 20 days prior to the petition date arises only after the debtor files the bankruptcy petition, and unlike reclamation, affords a creditor only the right to request administrative status, but not to seek return of its deliveries, or otherwise encumber the delivered goods prior to or after the bankruptcy filing; (2) any payment that a creditor may receive on a properly filed § 503(b)(9) claim necessarily occurs after the bankruptcy filing, and because post-petition payments cannot be used to deplete pre-petition new value, any payment a creditor receives, or may hope to receive, on its § 503(b)(9) claim cannot deplete that creditor's new value in a subsequent new value defense to a preference action; (3) applying §§ 503(b)(9) and 547(c)(4) so as not to limit a

creditor's new value by the amount of its § 503(b)(9) claim furthers the policy of both provisions to encourage creditors to continue to do business with a troubled debtor; (4) forcing a creditor to choose between its right to administrative expense status under § 503(b)(9) and the statutory defense in § 547(c)(4) runs counter to the long-standing interpretation and treatment of the new value defense; and (5) the plain language of §§ 503(b)(9) and 547(c)(4) and prior case law compel a holding that the new value defense is not reduced by the allowance of an administrative expense claim.

4 - U.S. Bankruptcy Court, M.D. Tenn.

# III. **DISCUSSION**

Whether deliveries entitled to a § 503(b)(9) claim status are disqualified from constituting new value for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4) is a question of first impression.  In order to decide this issue, the Court must consider and interpret 11 U.S.C. §§ 503(b)(9), 547(a)(2), and 547(c)(4).

"New value" is defined in 11 U.S.C. § 547(a)(2) as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."  Pursuant to 11 U.S.C. § 547(c)(4), a creditor is protected from avoidance of an allegedly preferential transfer to the extent that after the transfer, the creditor "gave new value to or for the benefit of the debtor."  New value helps a creditor reduce its preference liability if that new value is not secured by an otherwise unavoidable security interest.  11 U.S.C. § 547(c)(4)(A).  The reasoning behind this limitation is that a debtor "is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the preferential transfer." *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.)*, 373 B.R. 541, 547 (M.D. Tenn. 2007).

5 - U.S. Bankruptcy Court, M.D. Tenn.

Section 503(b)(9) provides that an allowed administrative expense includes "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." A creditor's right to assert an administrative expense claim under 11 U.S.C. § 503(b)(9) is not linked to or conditioned upon the creditor's separate, potential right to assert a reclamation claim against the debtor pursuant to 11 U.S.C. § 546(c). *See ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.),* 582 F.3d 422, 424 n.2  (2d Cir. 2009) (Congress "amended section 546(c)(2) to provide that '[i]f a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)'") (citation omitted).   While 11 U.S.C. § 503(b)(9) affords a creditor the opportunity to receive payment for goods delivered within the 20-day period before the bankruptcy filing, it does not allow a creditor to claim a lien or otherwise repossess those delivered goods.  In other words, it is not a reclamation claim.

As stated earlier, there are no reported decisions specifically addressing whether payment of a § 503(b)(9) claim precludes the claimant from asserting a new value defense based upon the related 20-day goods delivered to the debtor.  However, in *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.),* the District Court agreed with the bankruptcy court and determined that the amount of a preference defendant's reclamation claim can be used to deplete that defendant's new value because the defendant "essentially kept strings on those goods and thus, the goods subject to reclamation did not

6 - U.S. Bankruptcy Court, M.D. Tenn.

enhance [the debtor] . . . ." 373 B.R. 541, 547.  The District Court adopted the bankruptcy

court's reasoning that:

> [G]oods shipped on the eve of bankruptcy that are subject to reclamation are
> not the same "money or money's worth, as goods shipped free of the seller's
> strings." *See* 11 U.S.C. § 547(a)(2).  In the same sense that goods subject to
> a PACA trust do not enhance the debtor because the value of those goods is
> held in trust for the growers and shippers, goods subject to reclamation do not
> enhance the debtor to the extent the value of those goods can be reclaimed.

*Id.* at 548 (citation omitted).


In other words, in ***In re Phoenix Rest. Group, Inc.,*** the District Court valued the

reclamation right at an amount equal to the amount of the goods.  Thus, there was no

remaining new value available as a preference defense because the reclamation right was

fully  recognized and paid by the debtor.  *Id.* at 549.  The same rationale does not apply to

§ 503(b)(9) claims.


First, the ability to assert a § 503(b)(9) claim, unlike a reclamation claim, only arises

after the filing of the bankruptcy petition.  The right to a § 503(b)(9) administrative claim for

those goods shipped within the preceding 20 days is solely cognizable in bankruptcy.  In fact,

at the time the goods are shipped to the debtor, the claimant does not even know it is

shipping within the 11 U.S.C. § 503(b)(9) period.  Moreover, even once a § 503(b)(9) claim

is asserted, the holder is still not entitled to a lien on the goods subject to the claim or

demand the return of such goods.  Instead, the claimant is only entitled to request priority

7 - U.S. Bankruptcy Court, M.D. Tenn.

payment for goods that are in the debtor's possession pre-petition and then used by the debtor-in-possession post-petition to continue operations.

The debtor-in-possession is not required to hold in trust the value of the goods for the benefit of the potential § 503(b)(9) claimant. Instead, payment is dependent upon whether the claimant's § 503(b)(9) claim is approved by the Court and whether the debtor-in-possession has the ability to pay the § 503(b)(9) claim either before or after a plan is confirmed.

With reclamation claims, the debtor is obligated to segregate and return reclamation goods, depriving it of the ability to re-sell the goods at a profit or to incorporate the goods into a manufactured product for sale. Conversely, a debtor can freely use goods subject to a § 503(b)(9) claim, whether before or after the petition date. Thus, goods shipped to and received by a debtor in the 20 days prior to bankruptcy are exactly the same as "money or money's worth as goods shipped free of the seller's strings." *Id.* at 548.

Section 503(b)(9) claims are analogous to critical vendor claims. In *Phoenix Rest. Group, Inc. v. Ajilon Prof'l Staffing LLC (In re Phoenix Rest. Group, Inc.)*, 317 B.R. 491 (Bankr. M.D. Tenn. 2004), at issue was a preference defendant's new value defense where the defendant had been a critical vendor and received full payment post-petition for pre-petition new value invoices. *Id.* at 496. Judge Lundin determined that the "plain language

8 - U.S. Bankruptcy Court, M.D. Tenn.

of § 547 closes the preference window at the petition, limiting the § 547(c)(4) defense to new value supplied and payments made *before* the debtor crosses into bankruptcy." *Id.* (emphasis added). *See also Kaye v. Accord Mfg., Inc.,* No. 05-0732, 2007 WL 5595447 (Bankr. M.D. Tenn. June 6, 2007) (post-petition paid new value is not excluded from new value defense). Obviously, critical vendors, who have been paid in full and do not receive statutory status, should not occupy a more favorable position as preference defendants than § 509(b)(9) claimants, whose administrative claims are expressly contemplated for distribution in the Bankruptcy Code and while allowed, have not been paid.  Because goods shipped to and received by a debtor in the 20 days prior to bankruptcy satisfy the definition of "new value" in 11 U.S.C. § 547(a)(2), a creditor need not reduce its new value, in a subsequent new value defense, by the amount of any deliveries included in its § 503(b)(9) claim.

The possibility that a § 503(b)(9) claimant might receive payment for the deliveries it made to a debtor within the 20 days prior to the petition date does not remove those deliveries from the definition of "new value" in 11 U.S.C. § 547(a)(2).  As discussed in *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.),* the "preference window of § 547 closed on the date of the filing of the bankruptcy petition and post-petition payments could not be used to deplete pre-petition 'new value.'" 373 B.R. 541, 547.  Thus, the possibility that a debtor may pay a creditor's § 503(b)(9) claim post-petition does not negate the value represented by the claim that the creditor provided to the debtor. The deliveries benefit the estate, for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4),

9 - U.S. Bankruptcy Court, M.D. Tenn.

regardless of whether the § 503(b)(9) claimants are paid at a later date for those deliveries.

Even if the creditor receives a limited post-petition payment on its § 503(b)(9) claim to cover

the "value" of the goods, the debtor-in-possession has realized the mark-up profit on the

re-sale of the goods (or use of the goods incorporated into a finished product for sale, for a

manufacturing or distributor debtor) and has the ability to fill an order to its customers'

satisfaction. Meeting and fulfilling the expectation of customers achieves the most important

goal of a business entity – to maximize its goodwill.

Finally, the Congressional policy behind 11 U.S.C. § 503(b)(9) (giving trade creditors

a post-petition priority for the value of goods delivered to the debtor within 20 days of the

petition) and 11 U.S.C. § 547(c)(4) (encouraging creditors to continue to do business with

and extend credit to debtors in trouble and heading for bankruptcy) supports this conclusion.

*See In re Arts Dairy*, *LLC*, 414 B.R. 219, 220 (Bankr. N.D. Ohio 2009) (describing policy

goals of § 503(b)(9)); *In re Phoenix Rest. Group, Inc.,* 373 B.R. 541, 547 (describing policy

goals of § 547(c)(4)).

To force a creditor to choose between asserting a § 503(b)(9) claim and preserving

its right to assert a subsequent new value defense that includes deliveries made to the debtor

within the 20 days prior to the bankruptcy filing would work a disservice on Congress'

inherent policy goals when enacting 11 U.S.C. §§ 503(b)(9) and 547(c)(4). Requiring

creditors to make such a choice would chill their willingness to do business with troubled

10 - U.S. Bankruptcy Court, M.D. Tenn.

entities.  In addition, requiring creditors to make this choice in essence deprives sellers of

goods of the benefits Congress conferred upon them when it enacted 11 U.S.C. § 503(b)(9).

This policy is supported by the fact that when 11 U.S.C. § 503(b)(9) was added,

Congress did not amend 11 U.S.C. § 547(c)(4) to include a new subsection reducing new

value by the amount of any § 503(b)(9) claim.  There is nothing in the plain language of

11 U.S.C. § 503(b)(9) or 11 U.S.C. § 547(c)(4) that indicates any Congressional intent to

offset the intended benefits that 11 U.S.C. § 503(b)(9) confers upon sellers through a

reduction of available new value in defending a preference action.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court denies the debtor's motions for declaratory

judgment, sustains the defendants' objections to the debtor's motions, and grants the

defendants' motions for partial summary judgment.  Specifically, the Court finds that

deliveries entitled to § 503(b)(9) claim status are not disqualified from constituting new value

for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the
top of the first page.**

11 - U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.