Hearing Date:   January 14, 2010 at 2:00 p.m.

Scott E. Blakeley, Esq. (Cal. Bar No. 141418)
Ronald A. Clifford, Esq. (Cal. Bar No. 246542)
BLAKELEY & BLAKELEY LLP
4685 MacArthur Court, Suite 421
Newport Beach, California 92660
(949) 260-0611

Richard I. Huston, Esq. (VSB No. 71097)
FULLERTON & KNOWLES, P.C.
12644 Chapel Rd., #206
Clifton, CA 20124
(703) 818-2602

Counsel to Export Development Canada

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------X
In re:                                      :    Chapter 11
                                            :
CIRCUIT CITY STORES, INC., et al.,          :    Case No. 08-35653
                                            :
                  Debtors.                  :
                                            :    Jointly Administered
-------------------------------------------------X

**SECOND AMENDED REPLY TO DEBTORS' SUPPLEMENTAL OBJECTION
TO MOTION FOR ALLOWANCE OF THE LATE FILED ADMINISTRATIVE
EXPENSE CLAIM OF EXPORT DEVELOPMENT CANADA**

Export Development Canada ("EDC") by its undersigned counsel, replies as

follows to the Debtors' Supplemental Objection to Motion for Allowance of the Late

Filed Administrative Expense Claim of Export Development Canada (the "Objection"):

/ / /

/ / /

1

**A.      This Court Should Not Consider the Untimely Filed Objection in Ruling on the Motion**

The local rules for this district are clear as to the filing deadlines for responses to motions. Specifically, Local Bankruptcy Rule 9013-1(H)(3)(b) states, "[w]hen a hearing has been set on at least 21 days' notice, the opposing party may file a response with a supporting memorandum, not later than 7 days before the hearing date." Circuit City Stores, Inc., et al. (the "Debtor") and its counsel had fifty-two (52) days' notice that the hearing on the Motion was going forward on January 14, 2010, which is evidenced by Docket Entry 5914, whereby the Court, at a November 23, 2009 hearing on the Motion, continued the hearing on the Motion to January 14, 2010. Further, the last of the Debtor's propounded discovery was responded to by EDC on December 23, 2009.

The Debtor, however, filed the Objection on January 11, 2010, only three (3) days prior to the hearing on the Motion. Counsel for EDC received the Objection the evening of January 11, 2010. The Debtor's gamesmanship has resulted in counsel for EDC being left to file EDC's second amended reply to the late filed Objection on the eve of the hearing. Because EDC has not been given an adequate opportunity to review and respond to the Objection, it should not be considered by this Court as a part of its ruling.

**B.      EDC's Failure to Timely File a 503(b)(9) Claim Was A Result Of Neglect**

The Objection incorrectly applies the *In re Blanco Latino International* holding. 310 B.R. 780 (Bankr. S.D. Fla. 2004). In *In re Banco Latino International*, pre-petition directors and officers of the debtor that filed proofs of claim for losses they incurred under indemnification agreements the debtor provided them. Those creditors filed proofs of claims under the indemnification agreements five (5) years after the bar date for claims

2

had passed. The court in that case denied the motion to allow the late file claims because the creditors could have filed contingent proofs of claim prior to the bar date based on ongoing litigation, but the creditors chose not to do so until five (5) years after the bar date. *Id.* at 785. The court termed the creditors' action in that case as being "deliberate."

The Debtor asserts in the Objection, through a misapplication of the *In re Banco Latino International* case, that EDC's actions "appear[] to be the result of deliberate inaction" because EDC had "knowledge of the 503(b)(9) Bar Date at least one week prior to the deadline and also had knowledge of its claim against the Debtor twenty-four (24) days prior to the 503(b)(9) Bar Date" and must therefore be "'deliberate.'"

The *In re Blanco Latino International* case is distinguishable, and misapplied here because EDC did not consciously disregard the bar date. *Id.* at 785. Here, EDC's actions were not "deliberate." Jo-Ann Keech-Barker ("Keech-Barker") is cognizant of EDC's internal delays that can sometimes delay a claim reaching her desk. For that reason Keech-Barker specifically contacted counsel for the Debtor to inquire as to whether a bar date had been set in the case. After being informed by counsel for the Debtor that "[T]he general bar date for filing proofs of claim ha[d] not yet been established," and after reviewing the claims agent's website and finding no mention of a bar date, Keech-Barker had no reason to believe that any bar date, much less the 503(b)(9) Bar Date was looming just days away. Keech-Barker is the employee at EDC that was tasked with filing the proof of claim in the instant case. There is no evidence in front of this Court to suggest that Keech-Barker took some deliberate action in missing the bar date other than reasonably relying on the representations of counsel for the Debtor.

3

**C.     EDC Has Established That It Meets the Second Prong of the Excusable Neglect Analysis**

The Debtor is correct in that courts look to a totality of the circumstances in determining whether excusable neglect is present on a set of facts, including (1) danger of prejudice to the debtor; (2) length of delay and its potential impact on judicial proceedings; (3) reason for delay; and (4) whether the creditor acted in good faith. *In re Enron Corp.*, 298 B.R. 513, 525 (S.D.N.Y. 2003).  It is also true that "[n]ot all factors need to favor [the] moving creditor to warrant acceptance of [the] creditor's late-filed proof of claim on 'excusable neglect' theory." *Id.*  Further, "[i]n deciding whether to accept [the] creditor's late-filed proof of claim on 'excusable neglect' theory, [the] court should not accord controlling weight to any single circumstance or simply proceed down a checklist ticking off traits; rather, courts are to look for synergy of several factors that conspire to push [the] analysis one way or the other. *Id.*

**1.     The Objection Does Not Correctly Analyze The 'Danger to the Debtor' Factor**

The Enron court established, in analyzing whether there is prejudice to the debtor, that a number of "considerations, including (1) the size of the late claim in relation to the estate, (2) whether a disclosure statement or plan of reorganization has been filed or confirmed with knowledge of the existence of the claim, and (3) the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated or negotiated." *Id.*  The Objection fails to address any of these "considerations."

The Objection does however state, in a conclusory fashion, that the "allowance of the EDC claim could conceivably have a substantial, negative impact on the dividend to junior claimants," by diminishing the return to those creditors in the amount of EDC's 503(b)(9) claim, and because the estate could incur fees in counsel for the Debtor responding to motions filed on the same basis as the instant Motion. Objection, at ¶ 53.

First, motions to allow late filed claims based on excusable neglect are factually distinct creatures. It is an unreasonable position on the part of the Debtor to argue that a mass of creditors in this case will learn that EDC's claim was allowed pursuant to the Motion, and so they should file like motions. Allowing EDC's 503(b)(9) claim under the theory of excusable neglect would have no res judicata effect for any other claimants' motions under a like theory unless they had similar facts. Given the unique nature of EDC's business, and the other facts listed in the Motion, it is highly unlikely that another creditor would have similar facts. It is also important to note that the Debtor cannot stonewall the Motion simply because it does not want to engage in the resolution of claims from other creditors that believe they have valid claims after applying the excusable neglect doctrine. Creditors have the right to bring good faith motions for late filed claims on the excusable neglect theory no matter the fate of any other creditor in the case.

Second, the Objection pays no attention to the other two (2) relevant considerations under the 'danger to the debtor' factor. The size of administrative expense priority claims in this case are extraordinary. Professionals in this case have filed applications for payment in the case totaling more than $20,000,000. Professionals enjoy the same priority as 503(b)(9) claimants. When analyzed next to the professional fees in

5

the case, EDC's claim is a small claim, roughly 2.5% of the professionals' fees thus far. When analyzed with all of the claims in the case as a whole, EDC's claim is simply dwarfed by the sheer amount of debt in the case. Claims in the case are roughly $3 billion. It is simply disingenuous for the Debtor to argue that payment of EDC's claim will have a meaningful effect on any creditor class in the case.

When EDC filed its Motion, the Debtor was nowhere near filing a liquidating plan. The Motion was filed on March 18, 2009, and the first amended plan was filed on September 24, 2009. The Debtor was aware of the Motion prior to the filing of the plan, and had even requested that this Court hear the Motion after the plan had been confirmed. EDC's Motion has no effect on the plan, and the small impact to the estate if the claim is allowed will not affect the feasibility of the plan given the sheer size of the creditor classes.

**2.      The Objection Fails to Show That the Length of Delay in EDC Filing Its Proof of Claim Weighs Against Allowance of the Claim**

EDC had a delay in filing its 503(b)(9) proof of claim of roughly forty (40) days. The Objection cites distinguishable cases in support of its position that forty (40) days weighs against allowance of the claim. In *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, the court was focused on the period in which litigants to a federal case have to appeal a ruling. 76 F.3d 530 (4th Cir. 1996). In *In re Yankee Distrib. Co.*, the court, in summary fashion, denied the motion to file a late filed claim on the basis that the creditor failed to show excusable neglect. The court did not provide an analysis of the factors listed supra. 53 B.R. 222 (Bankr. D. Vt. 1985). In *In re Dishman*, the relief requested was an extension of the time in which a complaint for the denial of a discharge must be

6

filed.  257 B.R. 780 (Bankr. E.D. Va. 2000).  Again, this is dealing with a completely different topic than that of the filing of proofs of claims.

The Debtor has failed to provide the Court with any case law that is counter to that listed in the Motion.  Of the cases squarely on issue with this topic, where courts have analyzed the length of delay factor of the excusable neglect doctrine, none has held that a delay of a time period as short as the one present in the Motion weighed against allowance of the late filed claim.

### 3.    EDC Has Provided An Adequate Reason for Delay

As stated in the Motion and subsequent replies, EDC nor TechCraft filed a 503(b)(9) proof of claim prior to the 503(b)(9) Bar Date.  With today's economic climate, EDC has a very large number of bankruptcy cases that it deals with on a daily basis.  Between November 25, 2008, and January 21, 2009, the time period that elapsed between the point when TechCraft filed its application for payment and when the claim was assigned to EDC, the file did not make it to Keech-Barker's desk, who is responsible for filing proofs of claims in the bankruptcy cases for assigned claims to EDC.  Aware that there can be a time delay in Keech-Barker receiving the assigned claim and the filing of the application for payment by the insured, Keech-Barker sent an e-mail to counsel for the Debtor, Boehm, on December 2, 2008, to inquire as to whether a bar date had been set in the case.  Boehm responded through an e-mail to Keech-Barker dated December 2, 2008, stating that a general claims bar date had not yet been established in the case.  Further, Keech-Barker searched the claims agent's website, and did not find any information on a bar date.  Given the workload of EDC in this economic climate, and counsel for the Debtor's e-mail to Keech-Barker, which could only be taken as meaning

7

no bar date had been set in the case, EDC had a valid reason for filing its 503(b)(9) claim late.

### 4. EDC Has Acted in Good Faith

The Objection does not challenge the fact that EDC has acted in good faith.

### D. Counsel for the Debtor Is Very Much A Part of the Reason EDC Did Not Timely File a Proof of Claim for Its 503(b)(9) Claim

Counsel's argument that it bears no responsibility in the late filing of the EDC claim is absolutely preposterous. Keech-Barker asked Debtor's counsel whether a bar date had been established in the case prior to the 503(b)(9) Bar Date. Boehm failed to mention the 503(b)(9) Bar Date when responding to Keech-Barker's e-mail requesting whether a bar date in the case had been set. The Objection asserts that counsel for the Debtor has no duty to provide bar date information to creditors that request the same. However, that reasoning must be extended in this case because counsel for the Debtor did respond to a request for that information. Counsel for the Debtor may indeed have no requirement to provide information on bar dates to creditors that inquire about them, but when they do decide to respond, as was done in the instant case, counsel for the Debtor cannot leave a creditor worse off than before the inquiry was made. Boehm's suggestion that no bar date had been established in the case caused Keech-Barker to reasonably rely on that representation, and EDC found itself in a worse position after the information provided by counsel for the Debtor than before the response. It is patently dishonest for counsel to attempt to absolve itself of any liability in the missing of the 503(b)(9) Bar Date.

/ / /

For the Foregoing reasons, EDC respectfully requests that the Motion be granted.

Dated:  January 13, 2010            FULLERTON & KNOWLES, P.C.

By: /s/Richard I. Hutson
Richard I. Hutson, Esq.
12644 Chapel Rd., #206
Clifton, VA 20124

*-and-*

BLAKELEY & BLAKELEY LLP

Ronald A. Clifford, Esq.
Scott E. Blakeley, Esq.
1000 Quail Street, Suite 200
Newport Beach, CA 92660
(949) 260-0611

*Attorneys for Export Development Canada*

9