Case 08-35653-KRH    Doc 6266-4    Filed 01/14/10    Entered 01/14/10 11:53:54    Desc
Exhibit(s) Supplement to Notice of Transfer    Page 1 of 26

5

FILED FOR RECORD
'99 MAR 18 PM 2 56
WASHINGTON CO AR
K. HARNESS

A.B 98-6570

---

**WEC 99A-2 LLC**
(Mortgagor)

to

**CAPITAL LEASE FUNDING, L.P.**
(Mortgagee)

---

MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND RENTS
AND FIXTURE FILING

---

Dated as of:  March 12, 1999

Location:    744 East Joyce Boulevard
             Fayetteville, Washington County, Arkansas

RECORD AND RETURN TO:

Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York  10038
Attention:  James Park, Esq.

---

Staubach3 ARK
0345965.03

**99024815**


EXHIBIT
Fayetteville
D

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING (this "Mortgage"), made as of the 12th day of March, 1999, by WEC 99A-2 LLC, a Delaware limited liability company, having its principal place of business at 116 Gulfstream Road, Palm Beach, Florida  33480-4708 ("Mortgagor"), to CAPITAL LEASE FUNDING, L.P., a Delaware limited partnership, having its principal place of business at 110 Maiden Lane, 36th Floor, New York, New York 10005 ("Mortgagee").

### W I T N E S S E T H:

To secure the payment of an indebtedness in the principal sum of Three Million Two Hundred Seventy Nine Thousand Thirty-Five and 28/100 ($3,279,035.28) (the "Loan"), lawful money of the United States of America, to be paid with interest according to a certain Mortgage Note dated the date hereof made by Mortgagor to Mortgagee (the note together with all extensions, renewals or modifications thereof being hereinafter collectively called the "Note") and all other sums due hereunder, under the Note and any Other Security Documents (hereinafter defined) (said indebtedness and interest due under the Note and all other sums due hereunder and under the Note and the Other Security Documents being hereinafter collectively called the "Debt"), Mortgagor has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned, and hypothecated and by these presents does hereby mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate unto Mortgagee the real property described in Exhibit A attached hereto (the "Premises") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements");

TOGETHER WITH: all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements together with the following property, rights, interests and estates being hereinafter described are collectively referred to herein as the "Mortgaged Property"):

(a)      all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights (including, without limitation, all right, title and interest of Mortgagor under any reciprocal easement agreement affecting or pertaining to the Mortgaged Property), and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and

99024816

demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)   all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively called the "Equipment"), including the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "Uniform Commercial Code") superior in lien to the lien of this Mortgage.  In connection with Equipment which is leased to Mortgagor or which is subject to a lien or security interest which is superior to the lien of this Mortgage, this Mortgage shall also cover all right, title and interest of Mortgagor in and to all deposits, and the benefit of all payments now or hereafter made with respect to such Equipment;

(c)   subject to the rights of Lessee (hereinafter defined) under the Lease (hereinafter defined), all awards or payments payable to Mortgagor, including interest thereon, which may heretofore and hereafter be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain or condemnation (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property;

(d)   all right, title and interest of Mortgagor in and to the Lease Agreement, dated as of March 12, 1999 (including, without limitation, all guarantees thereof) (the "Lease") between Mortgagor and Circuit City Stores, Inc., a Virginia corporation, as lessee ("Lessee") and all other leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into (the "Other Leases") (including any use or occupancy arrangements created pursuant to Section 365(d) of Title 11 of the United States Code (the "Bankruptcy Code") or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Premises and the Improvements) and all income, rents, issues, profits and revenues (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (the "Rents") (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement,

- 2 -

99024817

insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Premises and the Improvements and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Lease and the Other Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)   subject to the rights of Lessee under the Lease and after the occurrence of an Event of Default (hereinafter defined) and during the continuation thereof, the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property or any part thereof;

(f)   all franchises, trade names, trademarks, symbols, service marks, books, records, plans and specifications, contracts, licenses, approvals, consents, subcontracts, service contracts, management contracts, permits and other agreements of any nature whatsoever now or hereafter obtained or entered into by Mortgagor, or any managing agent of the Mortgaged Property on behalf of Mortgagor, with respect to the use, occupation, development, construction and/or operation of the Mortgaged Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Mortgaged Property or any part thereof;

(g)   all accounts receivable, contract rights, interests, estate or other claims, both in law and in equity, which Mortgagor now has or may hereafter acquire in the Mortgaged Property or any part thereof, and all reserve accounts, accounts for the deposit, collection and/or disbursement of Rents and other accounts now or hereafter in existence with respect to the Loan (hereinafter defined), including, without limitation, that certain account for the payment of Rents to Mortgagee described in Paragraph 14(a) of the Assignment of Leases and Rents delivered to Mortgagee by Mortgagor on the date hereof and all interest reserve accounts, borrower reserve accounts and replacement reserve accounts, if any, provided for under any documentation entered into or delivered by Mortgagor in connection with the Loan; and

(h)   all rights which Mortgagor now has or may hereafter acquire, to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Mortgaged Property or any part thereof.

Notwithstanding the foregoing absolute or conditional assignment of Mortgagor's rights in and to the Lease and the rents therefrom, provided no Event of Default has occurred and is continuing, Mortgagor shall retain the following rights and privileges: (i) all payments by Lessee pursuant to any indemnity or guaranty provision under the Lease which is payable directly to Mortgagor or its successors or assigns as the landlord under the Lease; (ii) liability insurance payments payable to Mortgagor; (iii) the right (but not to the exclusion of Mortgagee) to receive certificates and other documents and information that Lessee is required to furnish pursuant to the Lease, to make inspections of the Mortgaged

- 3 -

99024818

Property, to repair and maintain the Mortgaged Property, to inspect the books and records of Lessee, to sue for damages or specific performance under the Lease or any guaranty of the Lease (subject to any prohibitions against same as specifically set forth in the Note, the Mortgage and the Other Security Documents (collectively, the "Loan Documents")); and (iv) the right of Mortgagor to consent or approve or refuse to consent or approve of any options or other rights to terminate the Lease and/or to acquire the Mortgaged Property (subject to any conditions thereto as specifically contained in the Loan Documents).

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee, and the successors and assigns of Mortgagee, forever.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, these presents and the estate hereby granted shall cease, terminate and be void.

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

### Part I

### General Provisions

1.    Payment of Debt and Incorporation of Covenants, Conditions and Agreements.  Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage.  All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and Mortgage (the "Other Security Documents"), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

2.    Warranty of Title.  To the best of Mortgagor's knowledge, except as may have been disclosed in that certain title insurance commitment no. 98-6570, dated December 15, 1998, redated as of the date hereof and issued by Chicago Title Insurance Company, Mortgagor warrants that Mortgagor has good and marketable title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, lease, assign and hypothecate the same and that Mortgagor possesses an indefeasible fee estate in the Premises and the Improvements subject to the Lease and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for the Lease and those exceptions shown in the title insurance policy insuring the lien of this Mortgage.  Mortgagor shall forever warrant, defend and preserve such

-4-

99024819

title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

3.  Insurance.  (a) The Mortgaged Property shall at all times during the entire term of this Mortgage be insured for the mutual benefit of Mortgagor and Mortgagee against loss or damage by any peril covered by a standard "all risk of physical loss" insurance policy. The insurance required in this Paragraph 3 shall be provided by Mortgagor or, where Lessee is required to maintain insurance under the Lease, by Lessee pursuant to the terms of the Lease (including, without limitation, self-insurance in the event Lessee is permitted to self-insure under the Lease and Lessee has a net worth in excess of $100,000,000.00) provided that the Lease is in full force and effect with no defaults with respect to any insurance provisions thereunder. Except as otherwise provided in the Lease and provided that the Lease is in full force and effect with no defaults with respect to any insurance provisions thereunder, unless Mortgagee shall have otherwise agreed, such insurance, whether provided by Mortgagor or Lessee, shall be in an amount (i) equal to at least the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation (and contain an appropriate "Replacement Cost Endorsement" with waiver of depreciation) and with a deductible no greater than $5,000.00, and (ii) such that the insurer would not deem Mortgagor a co-insurer under said policies. The policies of insurance carried in accordance with this Paragraph 3 (the "Policies") shall be paid annually in advance or as otherwise provided in the Lease as long as the Lease is in full force and effect with no defaults with respect to any insurance provisions thereunder.

(b)    Mortgagor covenants to strictly enforce the obligations of Lessee under the Lease to provide all insurance to be provided by Lessee pursuant to the terms of the Lease. In the event that the Lease shall not be in full force and effect, or if a default by Lessee under the Lease shall have occurred thereunder and Lessee has not cured such default in accordance with the terms of the Lease and within the time periods set forth in the Lease, Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the term of this Mortgage the following Policies:

(i)    Flood insurance if any part of the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any successor act thereto) in an amount at least equal to the outstanding principal amount of the Note or the maximum limit of coverage available with respect to the Improvements and Equipment under said Act, whichever is less.

(ii)    Comprehensive public liability insurance, including broad form property damage, blanket contractual and personal injuries (including death resulting therefrom) coverages.

(iii)    Rental loss insurance in an amount equal to the aggregate annual amount of all rents and additional rents payable under the Lease, such rental loss

- 5 -

99024820

insurance to cover rental losses for a period of at least one year after the date of the fire or casualty in question, irrespective of whether the Lease has been terminated during that one-year period, or, in the event the Lease is no longer in effect, as required by Mortgagee.   Mortgagor shall not, without the prior written consent of Mortgagee, amend the Lease to reduce the amounts and/or types of insurance required to be maintained under the Lease or waive any provision of the Lease to reduce such amounts and/or types of insurance.

         (iv)   Insurance against loss or damage from explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements.

         (v)   Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests.

         (c)   All Policies if and to the extent required by Mortgagee and except as otherwise provided in the Lease (i) shall be issued by an insurer rated at least "A" by the Rating Agencies that is satisfactory to Mortgagee, (ii) shall contain the standard New York mortgagee or equivalent non-contribution clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid, (iii) shall be maintained throughout the term of this Mortgage without cost to Mortgagee, (iv) shall be delivered to Mortgagee or a certificate of such Policies shall be delivered to Mortgagee, (v) shall contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies and that Mortgagee shall receive at least thirty (30) days prior written notice of any modification or cancellation, and (vi) shall be reasonably satisfactory in form and substance to Mortgagee and shall be approved by Mortgagee in its reasonable discretion as to amounts, form, risk coverage, deductibles, loss payees and insureds.   The premiums for such Policies (the "Insurance Premiums") shall be paid as the same become due and payable.   Prior to the expiration date of each of the Policies, Mortgagor will deliver or cause to be delivered to Mortgagee satisfactory evidence of the renewal of each Policy.

         (d)   If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee. Mortgagor shall not settle or adjust or permit the settlement or adjustment of any insurance claim without Mortgagee's prior written consent, except as otherwise provided in the Lease provided the Lease is in full force and effect with no defaults with respect to any insurance provisions thereunder.   All insurance proceeds required to be applied to restoration and repair of the Mortgaged Property under the Lease shall be disbursed in accordance with the provisions of the Lease for such restoration and repair.   All insurance proceeds not required to be disbursed for repair and restoration of the Mortgaged Property pursuant to the provisions of the Lease shall be delivered to Mortgagee and may be retained and applied by Mortgagee, after deduction of Mortgagee's reasonable costs and expenses of collection, toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper

99024821

(such application to be without any prepayment consideration, except that if an Event of Default has occurred, then such application shall be subject to the Default Prepayment Consideration (as defined in the Note) computed in accordance with the Note).

     4.   <u>Payment of Taxes, etc.</u>  (a)  All taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "<u>Taxes</u>") and all ground rents, maintenance charges, other governmental impositions, and other charges, including without limitation vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "<u>Other Charges</u>") shall be paid on or prior to the date the same become either (i) due and payable in the event the Lease is no longer in full force and effect or (ii) delinquent while the Lease is in full force and effect with no defaults with respect to Taxes and Other Charges thereunder. Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent. Subject to the rights of Lessee under the Lease, Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property. Mortgagor shall furnish to Mortgagee or its designee receipts for the payment of the Taxes and Other Charges prior to the date the same shall become delinquent.

     (b)   While the Lease is in full force and effect and Lessee is in full compliance with any provisions in the Lease dealing with Taxes and Other Charges, Lessee may, at its own expense and in accordance with the terms of the Lease, contest the Taxes and Other Charges, provided that Lessee does not allow Taxes and Other Charges to become delinquent or a lien on the Mortgaged Property. In the event the Lease is no longer in full force and effect, after prior written notice to Mortgagee, Mortgagor, at its own expense, may contest, or permit to be contested, by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Taxes or Other Charges, provided that (i) Mortgagor is not in default under the Note or this Mortgage, (ii) Mortgagor is permitted to do so under the provisions of any mortgage or deed of trust junior in lien to this Mortgage, (iii) such proceeding shall suspend the collection of the Taxes or Other Charges from Mortgagor and from the Mortgaged Property, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder, (v) neither the Mortgaged Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, cancelled or lost, (vi) adequate reserves for the payment of the Taxes or Other Charges, together with all interest and penalties thereon, shall have been set aside, and (vii) Mortgagor shall have furnished to Mortgagee, or caused to be furnished to Mortgagee, such security as may be required in the proceeding, or as may be requested by Mortgagee, to insure the payment of any such Taxes or Other Charges, together with all interest and penalties thereon.

     5.   <u>Escrow Fund</u>.  Mortgagor shall, after the occurrence of an Event of Default and during the continuation thereof (unless Lessee is paying such sums directly) or

99024822

during any period that the Lease is not in effect, at the option of Mortgagee or its designee, pay to Mortgagee on the fifteenth day of each calendar month after notice from Mortgagee (a) one-twelfth of an amount which would be sufficient to pay the Taxes payable, or reasonably estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) one-twelfth of an amount which would be reasonably sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter called the "Escrow Fund"). If Lessee is not paying Taxes or Insurance Premiums pursuant to the terms of the Lease, the Escrow Fund, if any, and the payments of interest or principal or both, payable pursuant to the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Mortgagor pursuant to Paragraphs 3 and 4 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Paragraphs 3 and 4 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall reasonably estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its sole discretion:

     (i)     Taxes and Other Charges;

     (ii)    Insurance Premiums;

     (iii)   Interest on the unpaid principal balance of the Note;

     (iv)   Amortization of the unpaid principal balance of the Note; or

     (v)    All other sums payable under the Loan Documents including, without limitation, advances made by Mortgagee pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. No earnings or interest on the Escrow Fund shall be payable to Mortgagor.

6.   Condemnation. (a) Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding of which Mortgagor is or shall become aware and shall deliver to Mortgagee copies of any and all papers served in connection with such proceedings received by Mortgagor. Notwithstanding any taking by any public or quasi-public authority through

- 8 -

99024823

eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Loan Documents and the Debt shall not be reduced until any award or payment therefor shall have been actually received after expenses of collection and applied by Mortgagee to the discharge of the Debt. Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Mortgagor shall cause the award or payment made in any condemnation or eminent domain proceeding, to which Mortgagor or Mortgagee is entitled, to be paid directly to Mortgagee.

(b)      All condemnation awards or payments required to be applied to restoration and repair of the Mortgaged Property under the Lease shall be disbursed in accordance with the provisions of the Lease. All condemnation awards or payments to which Mortgagor or Mortgagee is entitled and which are not required to be disbursed for repair and restoration of the Mortgaged Property pursuant to the provisions of the Lease shall be delivered to Mortgagee and applied to the reduction or discharge of the Debt whether or not then due and payable (such application to be without any prepayment consideration, except that if an Event of Default has occurred and remains uncured at the time such condemnation award is applied to the Debt, then such application shall be subject to the Default Prepayment Consideration (as defined in the Note) computed in accordance with the Note). If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt. Mortgagor shall file and prosecute or cause to be filed and prosecuted its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be paid over to Mortgagee, and hereby irrevocably authorizes and empowers Mortgagee, in the name of Mortgagor or otherwise, to collect and receipt for any such award or payment and to file and prosecute such claim or claims, and although it is hereby expressly agreed that the same shall not be necessary in any event, Mortgagor shall, upon demand of Mortgagee, make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any such award or payment to Mortgagee, free and clear of any encumbrances of any kind or nature whatsoever.

7.      The Lease.  (a) Mortgagor, by this Mortgage and the Assignment of Lease and Rents of even date herewith, has absolutely and unconditionally assigned to Mortgagee, all of Mortgagor's right, title and interest in the Lease, the Other Leases and the Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment. Mortgagor represents to Mortgagee that (i) the Lease is in full force and effect, (ii) a true and correct copy of the Lease as amended to the date hereof has been delivered to Mortgagee, (iii) neither Mortgagor nor, to the best of Mortgagor's knowledge, Lessee is in default under any of the terms, covenants or conditions of the Lease, (iv) Mortgagor has not delivered to, or received from the Lessee any notice of default under the Lease and (v) all rents due and payable under the Lease, including all additional rent, have been paid in full. If Lessee has not paid the Rents to Assignee as provided in Paragraph 14(a) of the Assignment of

99024824

Lease and Rents by the sixth (6th) day of the month (or, in the event rents are due and payable at the end of each calendar month, by the sixth (6th) day of the following calendar month) in which such Rents are due under the Lease, Servicer (hereinafter defined) shall provide Mortgagor one (1) business day thereafter with oral notice of Lessee's failure to pay the Rents via telephone call to Mortgagor at the telephone number set forth in Paragraph 39 of this Mortgage. If Lessee has not paid the Rents to the Mortgagee as provided in Paragraph 14(a) of the Assignment of Lease and Rents by the eleventh (11th) day of the month (or, in the event rents are due and payable at the end of each calendar month, by the eleventh (11th) day of the following calendar month) in which such rents are due under the Lease, Servicer shall provide Mortgagor one (1) business day thereafter with written notice (the "Servicer Notice") of such Lessee's failure to pay the Rents via facsimile transmission to Mortgagor at the telecopier number set forth in Paragraph 39 of this Mortgage. The Servicer Notice shall be deemed delivered on confirmation of the transmission. Servicer's failure to give the aforementioned oral notice and/or to send the Servicer Notice shall have no effect on the rights and remedies of Mortgagee under the Loan Documents and shall not be deemed to extend the time for the payment of the Debt or any portion thereof then due and payable.

(b)   Mortgagor agrees with Mortgagee that Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything to impair the value of the Lease as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notices of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the material terms, covenants and conditions contained in the Lease upon the part of the Lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not execute any other assignment of lessor's interest in the Lease except pursuant to and in full compliance with the terms of Paragraph 9 hereof; (v) shall not alter, modify or change the terms of the Lease without the prior consent of Mortgagee and without the prior written consent Financial Structures Limited, a company formed under the laws of Bermuda ("FSL"), in accordance with the provisions of Section 21 of the Additional Named Endorsement of that certain residual value insurance policy made on or about the date hereof by FSL (the "RVI Policy"), or cancel or terminate the Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the premises demised by the Lease or of any interest therein so as to effect a merger of the estates and rights of, or termination or diminution of the obligations of Lessee thereunder; (vi) shall not alter, modify or change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without the prior consent of Mortgagee and without the prior written consent FSL in accordance with the provisions of Section 21 of the Additional Named Endorsement of the RVI Policy; (vii) shall not consent to any assignment of or subletting under the Lease not in accordance with the Lease terms, without the prior written consent of Mortgagee; (viii) upon request of Mortgagee, shall request and use reasonable efforts to obtain, an estoppel certificate from the Lessee in substantially the form required by the Lease or if not so required, in form and substance reasonably satisfactory to Mortgagee; and (ix) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time reasonably require.

99024825

8.   Maintenance of Mortgaged Property.  If the Lease is in full force and effect with no defaults thereunder, the Mortgaged Property shall be maintained in accordance with the terms of the Lease.  Otherwise, the Mortgaged Property shall be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment or as otherwise permitted under the Lease) without the consent of Mortgagee.  Mortgagor shall cause the Mortgaged Property to be in compliance with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof.  Subject to the rights of Lessee under the Lease, Mortgagor shall cause any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any proceeding of the character referred to in Paragraph 6 hereof to be promptly repaired, replaced or rebuilt.  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

9.   Transfer or Encumbrance of the Mortgaged Property.  (a) Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover all or a portion of the Debt by a sale of the Mortgaged Property.  Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer either the Mortgaged Property or any ownership interests of Mortgagor in the Mortgaged Property or any part thereof or any interest therein (a "Sale") or any direct or indirect ownership interests in Mortgagor (a "Transfer"), or permit either a Sale or a Transfer, except as otherwise specifically provided herein.

(b)   A Sale or Transfer within the meaning of this Paragraph 9 shall be deemed to include, without limitation, (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to the Lease or any Rents; (iii) any divestiture of Mortgagor's title or any interest therein in any manner or way, whether voluntary or involuntary, or any merger, consolidation, dissolution or syndication affecting Mortgagor; (iv) if Mortgagor, any person or entity guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage (a "Guarantor"), or any general partner or managing member of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of any of

- 11 -

99024826

such corporation's stock (or any stock or other interests of any corporation or entity directly or indirectly controlling such corporation, by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation directly or indirectly; and (v) if Mortgagor, any Guarantor or any general partner or managing member of Mortgagor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, joint venturer or member or the transfer of any partnership interests of any general partner, managing partner or limited partner or the transfer of any interests of any joint venturer or member (or any interests of any entity directly or indirectly controlling such partner, joint venturer or member, by operation of law or otherwise).

(c)     Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Sale or Transfer without Mortgagee's consent, unless such consent is not required as otherwise provided herein.   This provision shall apply to every Sale or Transfer regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous Sale or Transfer.

(d)     Mortgagee's consent to a Sale or Transfer shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same.  Any Sale or Transfer made in contravention of this Paragraph 9 shall be null and void and of no force and effect.

(e)     Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Mortgagee in connection with the review, approval and documentation of any such Sale or Transfer.

(f)     Mortgagee's consent to a Sale or Transfer will not be unreasonably withheld after consideration of all relevant factors, provided that:

(i)     no Event of Default shall have occurred and remain uncured;

(ii)     the proposed transferee ("Transferee") shall be a reputable entity or person of good character and shall comply in all respects with the provisions set forth in Paragraph 20 of this Mortgage;

(iii)     Mortgagee shall have received evidence satisfactory to Mortgagee that all required approvals, if any, to such Sale or Transfer shall have been obtained, including, without limitation, approvals required under the organizational documents of Mortgagor (the "Organizational Documents");

99024827

(iv)   If required by the then applicable published or announced standards or guidelines of the Rating Agencies (hereinafter defined), Mortgagee shall have received evidence in writing from the Rating Agencies to the effect that such Sale or Transfer will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a Secondary Market Transaction (as hereinafter defined).   The term "Rating Agencies" as used herein shall mean any of Standard & Poor's Ratings Group, Duff & Phelps Credit Rating Co., Moody's Investors Service, Inc. and Fitch Investors Service, Inc. or any other nationally-recognized statistical rating agency which has been approved by Mortgagee and which is then rating the securities or certificates issued in connection with the Secondary Market Transaction;

(v)   Mortgagee shall have received such legal opinions (including, without limitation, new non-consolidation opinions) as may be requested by Mortgagee (acting reasonably) or any Rating Agency in connection with such Sale or Transfer;

(vi)   In the case of a Sale, the Transferee shall have executed and delivered to Mortgagee an assumption agreement in form and substance reasonably acceptable to Mortgagee, evidencing such Transferee's agreement to abide and be bound by the terms of the Loan Documents, together with such title insurance endorsements as may be reasonably requested by Mortgagee;

(vii)   In the event of a Sale or any Transfer which leads to a change of control of Mortgagor, and in connection with the release of the then current Guarantor, if any, the new beneficial owner of the Mortgagor shall become the new Guarantor by the execution of new guaranty and/or indemnity agreements.   Such replacement guarantor and/or indemnitor shall not be subject to any requirements or conditions which were not required of the initial guarantor and/or indemnitor under the Loan and Mortgagee acknowledges and agrees that the financial condition of any replacement Guarantor shall not be required to be better than the financial condition of the initial Guarantor certified to Mortgagee as of the date hereof; and

(viii)   In addition to the payment of all costs and expenses incurred by Mortgagee (including reasonable attorneys' fees and costs) in connection with a Sale or a Transfer which leads to a Change of Control of Mortgagor, Mortgagee shall have received an assumption fee equal to (A) $10,000.00 for the first such Sale or

- 13 -

99024828

Transfer which leads to a Change of Control of Mortgagor and (B) one percent (1%) of the then unpaid principal balance of the Note for each Subsequent Sale or Transfer which leads to a Change of Control of Mortgagor:

(g)  Provided that Mortgagor is in compliance with Paragraph 9(e) and (f)(i) hereof, notwithstanding anything to the contrary contained in this Paragraph 9, holders of interests in Mortgagor and beneficiaries of holders of interests of Mortgagor (or holders of interests in any entity directly or indirectly holding an interest in Mortgagor) as of the date of this Mortgage (the "Interest Holders") shall have the right to make a Transfer without Mortgagee's consent; provided, however, that (i) after taking into account any prior Transfers pursuant to this Paragraph 9, whether to the proposed transferee or otherwise, no such Transfer (or series of Transfers) shall result in a change of control of Mortgagor measured as of immediately prior to and subsequent to such Transfer and (x) the proposed transferee, together with all members of his/her immediate family or any affiliates thereof, owning in the aggregate (directly, indirectly or beneficially) 49% or more of the interests in Mortgagor (or any entity directly or indirectly holding an interest in Mortgagor), or (y) such Transfer results in a transfer in the aggregate of 49% or more of the interests in Mortgagor as of the date hereof, (ii) Mortgagor shall give Mortgagee notice of such transfer together with copies of all proposed instruments effecting such transfer not less than ten (10) business days prior to the date of such transfer; (iii) no Event of Default has occurred and remains uncured; and (iv) the legal and financial structure of Mortgagor after such transfer and, if Mortgagor is a limited or general partnership, joint venture or limited liability company, its general partner, managing partner, joint venturer, managing member or Non-Owner Manager (as hereinafter defined), as applicable, and the single purpose and bankruptcy remoteness nature of Mortgagor satisfies the then-current standards of the Rating Agencies and Mortgagor shall deliver, if required by such Rating Agencies, a non-consolidation opinion acceptable to Mortgagee and such Rating Agencies. For the purposes of this Paragraph 9, a proposed transferee shall be deemed to own that interest in the Mortgagor and/or a constituent entity of Mortgagor owned by an immediate family member. In addition, a Transfer shall not require the consent of Mortgagee if the Transfer occurs by inheritance, devise or bequest or by operation of law upon the death of a natural person who is an Interest Holder, provided that, such Transfer is to an immediate family member of such Interest Holder, or a trust established for the benefit of such immediate family member. For purposes of this Paragraph 9, (1) an "immediate family member" shall mean an individual's spouse, brothers and sisters (whether by the whole or half blood), ancestors or lineal descendants by birth or adoption, trusts for the exclusive benefit of any of the foregoing individuals, and/or any limited partnership in which the immediate family member is a general partner; and (2) a change of control of Mortgagor shall be deemed to have occurred if there is any change in the identity of the individual or group of individuals who have the right, by virtue of the articles of organization, the operating agreement or any other agreement, with or without taking any formative action, to cause Mortgagor to take some action or to block Mortgagor from taking some action which, in either case, Mortgagor could take or could refrain from taking were it not for the rights of such individuals.

- 14 -

99024829

(h)     Provided that Mortgagor is in compliance with Paragraph 9(e) and (f)(i) hereof, notwithstanding anything to the contrary contained in this Paragraph 9, Mortgagor shall have the right to substitute an SPC Party (hereinafter defined) or a manager of Mortgagor which has no ownership interest in Mortgagor (a "Non-Owner Manager") with another SPC Party or Non-Owner Manager, as applicable, without obtaining Mortgagee's prior consent; provided, however, that Mortgagor must provide Mortgagee with evidence reasonably satisfactory to Mortgagee that the new Non-Owner Manager or SPC Party, as applicable, is a single-purpose, bankruptcy-remote entity satisfying the then applicable single-purpose, bankruptcy-remote criteria of the Rating Agencies including, without limitation, the provision of a new non-consolidation opinion reasonably acceptable to Mortgagee and the Rating Agencies if such new non-consolidation opinion is required by the Rating Agencies.

(i)     Provided that Mortgagor is in compliance with Paragraph 9(e) and (f)(i) hereof, notwithstanding anything to the contrary contained in this Paragraph 9, Mortgagee acknowledges that if Mortgagor (or any transferee) is a Delaware business trust, the substitution of trustees under such trust shall not be deemed to be a Transfer, except if the trustee being removed qualifies as an Independent Director (hereinafter defined), then the replacement trustee must also qualify as an Independent Director.

(j)     In connection with a Sale or a Transfer which results in a change of control of Mortgagor, Mortgagee agrees that the then current Guarantor, if any, Mortgagor or other indemnitor entity shall be relieved of all obligations and liabilities (other than liability for environmental issues under this Mortgage or the Environmental Indemnification Agreement that arose prior to such Transfer or Sale) thereafter under the Loan Documents and Mortgagee shall deliver to such Mortgagor, Guarantor or other indemnitor entity a release to such effect.

(k)     In connection with any Sale or Transfer contemplated in this Paragraph 9, upon request of Mortgagor, but not more often than once per calendar year, Mortgagee shall provide Mortgagor or such Transferee or transferee entity with a certificate ("Lender's Certificate") containing the following information, duly certified by Mortgagee or its servicer or agent:  (i) the outstanding principal balance of the Loan; (ii) Mortgagee shall certify to its actual knowledge, without conducting any independent investigation or inquiry, whether any default exists under the Loan Documents; and (iii) Mortgagee shall certify that the Loan Documents attached as exhibits to the Lender's Certificate are true, complete and correct.  Mortgagor shall pay all reasonable costs, expenses and other charges (excluding legal fees) actually incurred by Mortgagee in preparing the Lender's Certificate.

10.     Estoppel Certificates.  After request by Mortgagee, but not more often than once per calendar year, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified to the best of Mortgagor's knowledge, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

- 15 -

99024830

11.   <u>Changes in the Laws Regarding Taxation</u>. If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any.  In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable. Mortgagor shall not be required to pay any prepayment consideration in connection herewith provided that no Event of Default has occurred and remains uncured during the period commencing with the date the Debt is declared due and payable and ending on the date the Debt is paid in full.

12.   <u>No Credits on Account of the Debt</u>.  Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.  Mortgagor shall not be required to pay any prepayment consideration in connection herewith provided that no Event of Default has occurred and remains uncured during the period commencing with the date the Debt is declared due and payable and ending on the date the Debt is paid in full.

13.   <u>Documentary Stamps</u>.  If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

14.   <u>Usury Laws</u>.  This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject Mortgagee to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by law to contract or agree to pay.  If by the terms of this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all previous payments in excess of such maximum rate shall be deemed to have been payments in reduction of the principal and not on account of the interest due hereunder.

15.   <u>Books and Records</u>.  Mortgagor and Guarantors, if any, shall keep books and records of account in accordance with generally accepted accounting principles (on a cash basis) consistently applied and, upon request of Mortgagee, furnish to Mortgagee: (a) an annual balance sheet and profit and loss statement of Mortgagor prepared and certified by

99024831

Guarantor or a principal of Mortgagor within thirty (30) days after such request of Mortgagee; and (b) such annual balance sheets and profit and loss statements and other financial statements as may, from time to time, be required by Mortgagee. Mortgagor shall provide Mortgagee with such additional financial or management information as Mortgagee may reasonably request, provided that any such additional information with respect to the Lessee or the Mortgaged Property is available to Mortgagor pursuant to the terms and provisions of the Lease.

16.     <u>Performance and Enforcement of Other Agreements</u>.  Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor and shall enforce each and every term required to be observed or performed by any other party pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property, including, without limitation, any reciprocal easement, operating or similar agreement, and if Mortgagor shall fail to so observe, perform and enforce any such terms, Mortgagee and Servicer and their agents, employees, contractors, engineers, architects and other representatives shall have the right to so observe, perform and enforce such terms.

17.     <u>Further Acts, etc.</u>  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage.  Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property.  After the occurrence of an Event of Default and during the continuation thereof, Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including, without limitation, such rights and remedies available to Mortgagee pursuant to this <u>Paragraph 17</u>.

18.     <u>Recording of Mortgage, etc.</u>  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property.  Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to

- 17 -

99024832

the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

      19.    <u>Prepayment</u>.  If permitted by the Note, the Debt may be prepaid in accordance with the terms thereof.

      20.    <u>Single Purpose Entity/Separateness</u>.  Mortgagor hereby represents and warrants to, and covenants with, Mortgagee that as of the date hereof and until such time as the Debt shall be paid in full:

      (a)    The purpose for which Mortgagor is organized shall be limited solely to (i) owning, holding, selling, leasing, transferring, exchanging, operating and managing the Mortgaged Property, (ii) entering into the Loan with Mortgagee, (iii) refinancing the Mortgaged Property in connection with a permitted repayment of the Loan and (iv) transacting any and all lawful business for which a Mortgagor may be organized under its constitutive law that is incident, necessary and appropriate to accomplish the foregoing.

      (b)    Mortgagor does not own and will not own any asset or property other than (i) the Mortgaged Property, and (ii) incidental personal property necessary for the ownership or operation of the Mortgaged Property.

      (c)    Except as otherwise provided in <u>Paragraph 20A</u> herein, Mortgagor (i) will not engage in any business other than the ownership, management and operation of the Mortgaged Property, (ii) will conduct and operate its business as presently conducted and operated, and (iii) shall not pledge its assets for the benefit of any other person or entity, other than with respect to the Loan.

      (d)    Mortgagor will not enter into any contract or agreement with any affiliate of Mortgagor, any constituent party of Mortgagor, any Guarantor or any affiliate or constituent party of Guarantor, except upon terms and conditions that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with unaffiliated third parties. Mortgagor will allocate fairly and reasonably any overhead expenses that are shared with an affiliate, including paying for office space and services performed by any employee of an affiliate.

      (e)    Except as otherwise provided in <u>Paragraph 20A</u> herein, Mortgagor has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (i) the Debt or (ii) unsecured trade and operational debt customarily payable within thirty (30) days incurred in the ordinary course of business with trade creditors and in amounts as are normal and reasonable under the circumstances, provided such debt is not evidenced by a note and is paid

99024833

when due, and (iii) indebtedness incurred in the financing of equipment and other personal property used on the Mortgaged Property.  Except as otherwise provided in Paragraph 20A herein, Mortgagor may not secure any indebtedness other than the Loan (subordinate or pari passu) by the Mortgaged Property.

(f)     Mortgagor has not made and will not make any loans or advances to any third party (including any affiliate or constituent party of Mortgagor, or any Guarantor or any affiliate or constituent party of Guarantor), and shall not acquire obligations or securities of its affiliates or any constituent party and shall not hold evidence of indebtedness issued by any other person or entity (other than cash and investment-grade securities).

(g)     Mortgagor is and will remain solvent and Mortgagor will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due and payable.

(h)     Mortgagor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Mortgagor will not, nor will Mortgagor permit any constituent party, SPC Party, Non-Owner Manager or Guarantor, if any, to amend, modify or otherwise change the partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents of Mortgagor or such SPC Party or Non-Owner Manager without the prior written consent of Mortgagee.

(i)     Mortgagor will maintain books, records, financial statements and bank accounts separate from those of its affiliates and any constituent party.  Mortgagor's assets will not be listed as assets on the financial statement of any other entity.  Mortgagor will file its own tax returns and will not file a consolidated federal income tax return with any other corporation..  Mortgagor shall maintain its books, records, resolutions and agreements as official records.

(j)     Mortgagor will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Mortgagor, any constituent party of Mortgagor, any Guarantor or any affiliate or constituent party of Guarantor), shall correct any known misunderstanding regarding its status as a separate entity, shall conduct business in its own name, shall not identify itself or any of its affiliates as a division or part of the other and shall maintain and utilize separate stationery, invoices and checks.

(k)     Mortgagor will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(l)     Neither Mortgagor nor any constituent party will seek or effect the dissolution, winding up, sale of assets (except as expressly permitted pursuant to Paragraph 9 hereof), liquidation, consolidation or merger, in whole or in part, of Mortgagor.

99024834

(m)    Mortgagor will hold all of its assets in its own name and will not commingle the funds and other assets of Mortgagor with those of any affiliate or constituent party of Mortgagor, any Guarantor, any affiliate or constituent party of Guarantor, or any other person or entity and will not participate in any cash management system with any such party.

(n)    Mortgagor has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party, any Guarantor, or any affiliate of any constituent party of Guarantor, or any other person.

(o)    Mortgagor does not and will not hold itself out to be responsible for the debts or obligations of any other person or entity and does not and will not guarantee the debts or obligations of any other person or entity.

(p)    Mortgagor shall not hold out its credit as being available to satisfy the obligations of any other person or entity.

(q)    Mortgagor shall maintain a sufficient number of employees (if any are required) in light of its contemplated business operations and shall pay the salaries of its own employees (if any are required) from its own funds.

(r)    If Mortgagor is a limited partnership or a limited liability company, and its general partner or managing member (an "SPC Party"), respectively, is a corporation whose sole asset is its interest in Mortgagor, each such SPC Party will at all times comply, and will cause Mortgagor to comply, with each of the representations, warranties, and covenants contained in this Paragraph 20 as if such representation, warranty or covenant was made directly by such SPC Party.

20A.    Subordinate Debt.  Notwithstanding anything to the contrary contained in Paragraph 20(c) and (e) hereof and subject to the provisions of this Paragraph 20A, provided no Event of Default has occurred, Mortgagor shall have the right to incur subordinate debt secured by the Mortgaged Property (the "Subordinate Debt") provided that:

(a)    any documents evidencing, securing, guaranteeing or otherwise executed in connection with the Subordinate Debt (together with any extensions, modifications, substitutions and consolidations thereof, being hereinafter collectively referred to as the "Subordinate Loan Documents") shall be subject and subordinate in lien and in payment to the Loan Documents, and shall remain so notwithstanding any amendments, modifications, consolidations, extensions, increases, renewals, or changes to the Loan Documents;

(b)    the holder(s) of the Subordinate Debt (the "Subordinate Lender") shall enter into an intercreditor subordination and standstill agreement with Mortgagee satisfactory to Mortgagee in its sole discretion;

99024835

(c)    the Subordinate Loan Documents shall not be amended, modified, consolidated, extended, increased, renewed, changed or waived without Mortgagee's prior written consent, which may be withheld in its sole and absolute discretion;

(d)    no Enforcement Action (as hereinafter defined) may be commenced under the Subordinate Loan Documents or otherwise in connection with the Subordinate Debt while any portion of the Debt remains outstanding;

(e)    the Subordinate Debt must have a maturity date which is at least one (1) year and one (1) day after the Maturity Date (as defined in the Note), and no balloon payments or partial payments of principal shall be permitted prior to the date which is at least one (1) year and one (1) day after the Maturity Date;

(f)    no payment shall be made on the Subordinate Debt any time that any Event of Default or any event which, with the giving of notice or the passage of time, would constitute an Event of Default exists and any payments received by the Subordinate Lender after an Event of Default and during the continuation thereof shall be paid to Mortgagee;

(g)    Mortgagee shall have received written confirmation from the Rating Agencies that the Subordinate Debt will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a Secondary Market Transaction;

(h)    Mortgagee shall have received additional legal opinions as may be reasonably requested by Mortgagee or the Rating Agencies in connection with the Subordinate Debt;

(i)    Mortgagee has received any consents and approvals required under the Organizational Documents for Mortgagor to effect the placement of such Subordinate Debt; and

(j)    all of Mortgagee's costs and expenses including, without limitation, attorneys' fees incurred in connection with the Subordinate Debt shall be paid by Mortgagor.

For the purposes of this Mortgage, (i) "Enforcement Action" shall mean with respect to the Subordinate Debt, the acceleration of all or any part of the Subordinate Debt, the seeking of default interest, the suing on the Subordinate Debt, or any guaranty or other obligation in connection with the Subordinate Debt, the exercising of any banker's lien or rights of set-off or recoupment, the commencement of any bankruptcy, reorganization or insolvency proceedings against Mortgagor under any federal or state laws, the exercise of any right or remedy as may be available at law or in equity including any right or remedy under the Uniform Commercial Code, the imposition of any late payment penalties, the sending of any default notice, or the taking of any other enforcement action against Mortgagor or the Mortgaged Property.

99024836

21.   <u>Events of Default</u>.  The Debt shall become immediately due and payable at the option of Mortgagee, without notice or demand, upon any one or more of the followings events ("<u>Events of Default</u>"):

(a)    if any portion of the Debt is not paid on the later of (i) when due or (ii) four (4) days after Servicer sends the Servicer Notice;

(b)    if any of the Taxes or Other Charges is not paid when the same is due and payable, subject to the provisions of <u>Paragraph 4</u>;

(c)    if the Policies are not kept in full force and effect, or if the Policies are not delivered to Mortgagee upon request pursuant to the terms of <u>Paragraph 3</u> hereof;

(d)    if Mortgagor violates or does not comply with any of the provisions of <u>Paragraphs 7</u>, <u>9</u>, <u>20</u>, <u>34</u> or <u>35</u>;

(e)    if a default has occurred and is continuing under the Lease and has not been cured within the time period set forth in the Lease by either Lessee or Mortgagor in accordance with the terms of the Lease or if the Lease is cancelled, terminated, abridged, modified or surrendered; provided, however, in the event of any non-monetary default under the Lease (except the bankruptcy of Lessee) ("<u>Lease Default</u>") which would constitute, after the giving of and expiration of any applicable notice or grace periods, if any, then no Event of Default under the Loan Documents shall be deemed to exist until Mortgagor has received notice thereof and has failed to cure or cause Lessee to cure same within thirty (30) days or such additional time as may be reasonably necessary provided Mortgagor is diligently pursuing the cure of such Lease Default, but in no event exceeding ninety (90) days.  Notwithstanding any failure of Lessee to timely pay any rents or additional rents owed under the Lease to Mortgagee as provided in the Loan Documents, no Event of Default shall be deemed to have occurred if Mortgagor has paid to Mortgagee the portion of the Debt which is then due on or prior to the date such amounts are due and payable under the terms of the Note.

(f)    if any representation or warranty of Mortgagor, or of any Guarantor, made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(g)    if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

(h)    if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by

99024837

Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days;

(i)     if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

(j)     if the Mortgaged Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of sixty (60) calendar days;

(k)     if Mortgagor fails to cure promptly any violations of laws or ordinances affecting the Mortgaged Property which Lessee has failed to cure within the time period set forth in the Lease; or

(l)     if for more than thirty (30) days after notice from Mortgagee, Mortgagor shall continue to be in default under any other term, covenant or condition of the Loan Documents; provided, however, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Mortgagor may be permitted up to an additional sixty (60) days to cure such default provided that Mortgagor diligently and continuously pursues such cure. In addition, the notice and grace period set forth in this <u>Paragraph 21(l)</u> shall not apply to any other Event of Default expressly set forth in this <u>Paragraph 21</u> or to any other Event of Default defined as such in the Note or any Other Security Document or to any other covenant or condition with respect to which a grace period is expressly provided elsewhere.

22.     <u>Default Interest</u>.     Upon the occurrence of any Event of Default, Mortgagor shall pay interest on the unpaid principal balance of the Note at a rate equal to the Default Rate (as defined in the Note).     Such Default Rate interest shall be compounded monthly. The Default Rate shall be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt. This charge shall be added to the Debt, and shall be deemed secured by this Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Mortgagee by reason of the occurrence of any Event of Default. If the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

23.     <u>Right to Cure Defaults</u>.     (a) Subject to the rights of Lessee under the Lease, upon the occurrence of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided (including, without limitation, any failure to observe, and/or enforce the terms of any reciprocal easement agreement affecting or pertaining to the Mortgaged Property, or any failure to make any payment or to do any act with respect to property other than the Mortgaged Property, as may be provided for in the Lease), Mortgagee and/or Servicer may (themselves or by their agents, employees, contractors, engineers, architects, nominees, attorneys or other representatives), but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any

99024838

obligation hereunder or curing or being deemed to have cured any default hereunder, make or do the same in such manner and to such extent as Mortgagee and/or Servicer may deem necessary to protect the security hereof.  After the occurrence of an Event of Default and during the continuation thereof, Mortgagee and Servicer (and their agents, employees, contractors, engineers, architects, nominees, attorneys or other representatives) are authorized to enter upon the Mortgaged Property for such purposes and Mortgagee and/or Servicer are authorized to appear in, defend, or bring any action or proceeding to protect Mortgagee's interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, including, without limitation, the remedies provided for in Paragraph 23(c) below.  All costs and expenses (the "Advances") incurred by Mortgagee and/or Servicer in remedying such Event of Default or other such failure by Mortgagor (including, without limitation, any such failure with respect to property other than the Mortgaged Property, as may be provided for in the Lease) or in appearing in, defending, or bringing any such action or proceeding (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law and any fees of any special servicer of Mortgagee) shall bear interest at the Default Rate (the "Advance Interest"), for the period after notice from Mortgagee and/or Servicer that such cost or expense was incurred to the date of payment to Mortgagee and/or Servicer.  All such Advances incurred by Mortgagee or Servicer, as applicable (the "Advancing Party"), together with all such Advance Interest thereon, shall be deemed to be protective advances hereunder and shall constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee or Servicer therefor.

Notwithstanding anything to the contrary in this Paragraph 23(a) or in the Note, if, within thirty (30) days after Mortgagor has received written demand from the Advancing Party, Mortgagor has failed to reimburse the Advancing Party for all Advances incurred by the Advancing Party, together with Advance Interest thereon, then, unless the Advancing Party specifies in such written demand that the failure of Mortgagor to make such reimbursement shall constitute an Event of Default hereunder, (i) the failure of Mortgagor to reimburse the Advancing Party for such Advances and Advance Interest pursuant to such written demand shall not, in and of itself, be deemed to be an Event of Default hereunder; (ii) such Advances and Advance Interest shall automatically be deemed to be due and payable on the earlier of the Maturity Date (as defined in the Note) or thirty (30) days after Mortgagor has received subsequent written demand therefor from the Advancing Party, and the failure of Mortgagor to pay such Advances and Advance Interest on the earlier of the Maturity Date or the expiration of such thirty (30) day period shall be deemed to be an automatic Event of Default hereunder; and (iii) from and after the expiration of such thirty (30) day period until the date such Advances and Advance Interest have been paid in full by Mortgagor, the Applicable Interest Rate (as defined in the Note) shall be equal to the Default Rate, and the outstanding principal balance of the Note shall bear interest at such Applicable Interest Rate.  Notwithstanding that such Advances and Advance Interest may be due and payable on the earlier of the Maturity Date or the expiration of such thirty (30) day period as provided in clause (ii) above, Mortgagor shall nevertheless have the right at any time to pay to the Advancing Party all or any portion of such Advances, together with the Advance Interest which is accrued thereon through the date of such payment.  If the Advances and Advance Interest have been paid in

99024839

full by Mortgagor in accordance with the preceding sentence, then from and after the date of such payment (and provided that no Event of Default has occurred and remains uncured, the Applicable Interest Rate on the Note shall be the rate per annum as originally set forth in the Note prior to the failure of Mortgagor to reimburse the Advancing Party prior to the expiration of such thirty (30) day period. Except with respect to the payment of Advances and Advance Interest by Mortgagor, the foregoing provisions of this Paragraph 23 shall not in any way affect the provisions of the Note regarding prepayment of the principal balance of the Note or the provisions of Paragraph 59 hereof.

(b)     After the occurrence of an Event of Default and during the continuation thereof and subject to the rights of Lessee under the Lease, in order to facilitate Mortgagee's and/or Servicer's rights under Paragraph 23(a) above, Mortgagor hereby further grants to Mortgagee and Servicer and any agents, employees, contractors, engineers, architects, nominees, attorneys and other representatives of Mortgagee and/or Servicer, an easement on, over, through and under the Mortgaged Property in order to exercise any such rights. Such easement is self-effectuating and runs with the land, and shall be binding upon Mortgagor and all successors and assigns of Mortgagor. Mortgagor shall cause the foregoing rights of Mortgagee and easement to be agreed to by and binding upon all tenants of the Mortgaged Property and all successors and assigns of such tenants. Mortgagor shall promptly execute, and cause to be executed, any other documents required by Mortgagee in order to further confirm the foregoing rights of Mortgagee and easement. After the occurrence of an Event of Default and during the continuation thereof and subject to the rights of Lessee under the Lease, for the foregoing purposes, Mortgagor constitutes and appoints each of Mortgagee and Servicer its true and lawful attorney-in-fact with full power of substitution to exercise any such rights in the name of Mortgagor. Mortgagor empowers each of said attorneys-in-fact to do any and every act which Mortgagor might do in its own behalf to fulfill the terms of the Loan Documents and/or the Lease. It is further understood and agreed that the foregoing powers of attorney, which shall be deemed to be powers coupled with an interest, cannot be revoked. Mortgagor specifically agrees that all powers granted to Mortgagee and Servicer under this Mortgage may be assigned by Mortgagee to its successors or assigns as holder of the Note and by Servicer to its successors or assigns as servicer of the Loan.

(c)     Mortgagor specifically admits and acknowledges that a prima facie showing of any breach of any term, provision or condition of this Mortgage by Mortgagor also constitutes a showing (i) of irreparable injury to Mortgagee, for which Mortgagee may have no adequate remedy at law, and (ii) that the balance of hardships weighs in favor of Mortgagee. Immediately upon learning of any such threatened breach, anticipatory breach or breach by Mortgagor, in addition to any other rights or remedies available under this Mortgage or at law or in equity, Mortgagee and/or Servicer shall have the right to, but shall not be obligated to, (A) institute an action, suit or proceeding in equity for the specific performance of any such term, provision or condition; (B) institute an action, suit or proceeding against Mortgagor for damages resulting from such threatened breach, anticipatory breach or breach and/or (C) commence an action against Mortgagor for injunctive relief, and may move, ex parte and without notice to Mortgagor, for a temporary restraining order or preliminary injunction, prohibitory and/or mandatory as the circumstances require, restraining

99024840