and prohibiting any such threatened breach, anticipatory breach or breach. Mortgagor expressly waives any requirement that Mortgagee and/or Servicer post a bond or undertaking for any such temporary restraining order or preliminary injunction described in clause (C) above.

24. <u>Late Payment Charge</u>. If any portion of the Debt is not paid on or before the date on which it is due, Mortgagor shall pay to Mortgagee upon demand an amount equal to the lesser of five percent (5%) of such unpaid portion of the Debt or the maximum amount permitted by applicable law, to defray the expense incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be secured by this Mortgage and the Other Security Documents.

25. <u>Prepayment After Event of Default</u>. Except as otherwise expressly provided in connection with a casualty or condemnation under <u>Paragraphs 3(d)</u> and <u>6(b)</u> hereof, the principal balance of the Note may not be prepaid in whole or in part, whether voluntarily or involuntarily, prior to the Maturity Date; provided, however, that Mortgagor shall have the right and option to defease the Loan and obtain a release of the Mortgaged Property from the lien of this Mortgage in accordance with and subject to the terms and provisions set forth in <u>Paragraph 59</u> of this Mortgage (the "<u>Defeasance Option</u>"). If following the occurrence of any Event of Default, Mortgagor or any purchaser at foreclosure or any other person shall tender payment of all or any portion of the Debt, whether such payment is voluntary or involuntary, or occurs as a result of a foreclosure or the exercise of any other remedies available to Mortgagee under the Loan Documents, or otherwise, such tender shall be deemed to be an attempt to circumvent the prohibition against prepayment set forth in this <u>Paragraph 25</u> and Mortgagor shall pay to Mortgagee, in addition to the Debt, the Default Prepayment Consideration.

26. <u>Right of Entry</u>. Subject to the terms of the Lease provided that the Lease is in full force and effect, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

27. <u>Remedies</u>. (a) Upon the occurrence of any Event of Default and during the continuation thereof, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

> (i) declare the entire Debt to be immediately due and payable;

> (ii) institute proceedings for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more

99024841

parcels or in several interests or portions and in any order or manner;

(iii) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv) sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in the Note;

(vi) subject to the terms of Paragraph 54 herein, recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii) subject to the terms of the Lease provided that the Lease is in full force and effect, enter into or upon the Mortgaged Property, either personally or by its agents, servicers, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right

99024842

to cancel, enforce or modify the Lease and, if the Lease shall no longer be in effect, the right to make, cancel, enforce or modify new leases, obtain and evict tenants, and demand, sue for, collect and receive all earnings, revenues, rents, issues profits and other income of the Mortgaged Property and every part thereof; and (E) apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, assessments, insurance and Other Charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix) pursue such other rights and remedies as may be available at law and in equity.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)     The proceeds of any sale made under or by virtue of this Paragraph 27, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Paragraph 27 or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its discretion shall deem proper.

(c)     To the extent permitted by applicable law, Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales made by Mortgagee under or by virtue of this Paragraph 27, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. After the occurrence of an Event of Default, Mortgagee is hereby irrevocably appointed the true and lawful attorney of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof.  Any such sale or sales made under or by virtue of this Paragraph 27 shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of

99024843

Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)     Upon any sale made under or by virtue of this Paragraph 27, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.

(f)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

28.     Reasonable Use and Occupancy.     In addition to the rights which Mortgagee may have herein, upon the occurrence of any Event of Default and during the continuation thereof, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor or may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

29.     Security Agreement.     This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.     The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property.     Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this Paragraph 29 the "Collateral").     If an Event of Default shall occur and remains uncured, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may reasonably deem necessary for the care, protection and preservation of the Collateral.     Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee.     Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to

99024844

the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. In the event of any change in name, identity or structure of any Mortgagor, such Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as secured party, in connection with the Collateral.

30.    <u>Actions and Proceedings</u>. After the occurrence of an Event of Default and during the continuation thereof, Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect their interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

31.    <u>Waiver of Counterclaim</u>. All amounts due under the Loan Documents shall be payable without setoff, counterclaim or any deduction whatsoever. Mortgagor hereby waives the right to assert a setoff, counterclaim (other than a mandatory or compulsory counterclaim) or deduction in any action or proceeding brought against it by Mortgagee, and, to the extent permitted by law, waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Mortgagee against Mortgagor, or in any matters whatsoever arising out of or in any way connected with the Loan Documents or the Debt. Notwithstanding the foregoing, Mortgagor may raise any claim it has against Mortgagee in a separate action.

32.    <u>Recovery of Sums Required to Be Paid</u>. Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

99024845

33.    <u>Marshalling and Other Matters</u>.  Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

34.    <u>Hazardous Substances</u>.  (a)  Except as may have been disclosed in that certain environmental report, dated November 20, 1998 and prepared by Raisanen & Associates Inc. (the "<u>Environmental Report</u>"), Mortgagor hereby represents and warrants to Mortgagee that, to the best of Mortgagor's knowledge: (i) the Mortgaged Property is not in direct or indirect violation of any federal, state, or local law, ordinance or regulation or any court judgment or order of any federal, state or local agency or regulatory body applicable to Mortgagor or to the Mortgaged Property relating to industrial hygiene or to environmental or unsafe conditions including, but not limited to, those relating to the generation, manufacture, storage, handling, transportation, disposal, release, emission or discharge of Hazardous Substances (hereinafter defined) those in connection with the construction, fuel supply, power generation and transmission, waste disposal or any other operations, or processes relating to the Mortgaged Property, and those relating to the atmosphere, soil, surface and ground water, wetlands, stream sediments and vegetation on, under, in or about the Mortgaged Property or, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, the Emergency Planning and Community Right-to-Know Act of 1986, the Hazardous Substances Transportation Act, the Resource Conservation and Recovery Act, the Solid Waste Disposal Act, the Clean Water Act, the Clean Air Act, the Toxic Substance Control Act, the Safe Drinking Water Act and Occupational Safety and Health Act, and all regulations adopted in respect to the foregoing laws (collectively, "<u>Environmental Laws</u>"); (ii) the Mortgaged Property is not subject to any private or governmental lien or judicial or administrative notice or action relating to hazardous and/or toxic, dangerous and/or regulated, substances, wastes, materials, pollutants or contaminants, petroleum and petroleum products, tremolite, anthlophyli or actinolite or polychlorinated biphenyls (including, without limitation, any raw materials which include hazardous constituents) and any other substances or materials which are included under or regulated by Environmental Laws (collectively, "<u>Hazardous Substances</u>"); (iii) no Hazardous Substances are or have been, prior to Mortgagor's acquisition of the Mortgaged Property, discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Mortgaged Property otherwise than in compliance with all Environmental Laws; (iv) no property adjoining the Mortgaged Property is being used or has ever been used at any previous time, for the disposal, storage, treatment, processing or other handling of Hazardous Substances; and (v) no underground storage tanks exist on any of the Mortgaged Property except as those disclosed in writing to Mortgagee and which comply with applicable Environmental Laws.

(b)    So long as Mortgagor owns or is in possession of the Mortgaged Property, Mortgagor shall (i) keep or cause the Mortgaged Property to be kept free from

- 31 -

99024846

(except for those materials or substances that are used or stored in reasonable quantities in the ordinary course of business in compliance with applicable Environmental Laws) Hazardous Substances in violation of applicable Environmental Laws and in compliance with all Environmental Laws; (ii) promptly notify Mortgagee if Mortgagor shall become aware of any Hazardous Substances in violation of applicable Environmental Laws on the Mortgaged Property and/or if Mortgagor shall become aware that the Mortgaged Property is in direct or indirect violation of any Environmental Laws; and (iii) conduct and complete or cause to be conducted and completed all remedial action necessary to clean up such Hazardous Substances and remove or cause to be removed such Hazardous Substances and/or cure or cause to be cured such violations, as applicable, as required by law, promptly after Mortgagor becomes aware of same. Nothing herein shall prevent Mortgagor from recovering such expenses from any other party that may be liable for such removal or cure.

(c)     If Mortgagee has a reasonable suspicion that the Mortgaged Property is in violation of applicable Environmental Laws, upon Mortgagee's request, at any time and from time to time while this Mortgage is in effect, Mortgagor shall provide at Mortgagor's sole expense, an inspection or audit of the Mortgaged Property prepared by a licensed hydrogeologist or licensed environmental engineer approved by Mortgagee indicating the presence or absence of Hazardous Substances on the Mortgaged Property. If Mortgagor fails to provide such inspection or audit within ninety (90) days after such request Mortgagee may order same, and Mortgagor hereby grants to Mortgagee and its employees and agents access to the Mortgaged Property and a license to undertake such inspection or audit. The cost of such inspection or audit shall be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate. The obligations and liabilities of Mortgagor under this Paragraph 34 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

35.     Asbestos.   Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, no asbestos or any substance containing asbestos ("Asbestos") is located on the Mortgaged Property in violation of applicable Environmental Laws except as may have been disclosed the Environmental Report. Mortgagor shall not install in the Mortgaged Property, nor permit to be installed in the Mortgaged Property, Asbestos and shall remove or cause to be removed any Asbestos promptly upon discovery to the reasonable satisfaction of Mortgagee, or take all action necessary to ensure that such Asbestos is abated or managed in a manner which complies with all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos. Mortgagor shall in all instances comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. If Mortgagee has a reasonable suspicion that the Mortgaged Property is in

99024847

violation of applicable Environmental Laws with respect to Asbestos, upon Mortgagee's request, at any time and from time to time while this Mortgage is in effect, Mortgagor shall provide, at Mortgagor's sole expense, an inspection or audit of the Mortgaged Property prepared by an engineering or consulting firm approved by Mortgagee, indicating the presence or absence of Asbestos on the Mortgaged Property. If Mortgagor fails to provide such inspection or audit within ninety (90) days after such request, Mortgagee may order same, and Mortgagor hereby grants to Mortgagee and its employees and agents access to the Mortgaged Property and a license to undertake such inspection or audit. The cost of such inspection or audit shall be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate. The obligations and liabilities of Mortgagor under this Paragraph 35 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

36. Environmental Monitoring. In the event that any investigation, site monitoring, containment cleanup, removal, restoration or other work of any kind is reasonably necessary under an applicable Environmental Law (the "Remedial Work"), Mortgagor shall commence such Remedial Work within ninety (90) days after written demand by Mortgagee (the "Environmental Notice") for performance thereof (or such shorter period of time as may be required under applicable law) and thereafter diligently prosecute to completion all such Remedial Work within one hundred-eighty (180) days after Mortgagee has sent the Environmental Notice (or such shorter period of time as may be required under applicable law) except that, while the Lease is in full force and effect with no monetary defaults thereunder, Mortgagor shall cause Lessee to complete such Remedial Work within the time period specified in the Lease. All Remedial Work shall be performed by contractors approved in advance by Mortgagee, and under the supervision of a consulting engineer approved by Mortgagee. All costs and expenses of such Remedial Work shall be paid by Mortgagor including, without limitation, Mortgagee's reasonable attorneys' fees and disbursements incurred in connection with monitoring or review of such Remedial Work. In the event Mortgagor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute or cause to be diligently prosecuted to completion, such Remedial Work, Mortgagee may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.

37. Handicapped Access. (a) Mortgagor agrees that the Mortgaged Property shall at all times comply, to the extent applicable, with the applicable requirements of the Americans with Disabilities Act of 1990, the Fair Housing Amendments Act of 1988, all applicable state and local laws and ordinances related to handicapped access and all rules, regulations, and orders issued pursuant thereto including, without limitation, the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (collectively "Access Laws").

99024848

(b)     Notwithstanding any provisions set forth herein or in any other document regarding Mortgagee's approval of alterations of the Mortgaged Property, subject to Lessee's obligations under the Lease to maintain the Mortgaged Property in compliance with applicable laws, Mortgagor shall not alter or permit the Mortgaged Property to be altered in any manner which would increase Mortgagor's responsibilities for compliance with the applicable Access Laws without the prior written approval of Mortgagee. Mortgagee may condition any such approval upon receipt of a certificate of Access Law compliance from an architect, engineer, or other person acceptable to Mortgagee.

(c)     Mortgagor agrees to give prompt notice to Mortgagee of the receipt by Mortgagor of any complaints related to violation of any Access Laws and of the commencement of any proceedings or investigations which relate to compliance with applicable Access Laws.

38.     Indemnification.  In addition to any other indemnifications provided herein or in the Other Security Documents, Mortgagor covenants and agrees at its sole cost and expense to protect, defend, indemnify and save harmless Mortgagee and Servicer from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee or Servicer by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) subject to the terms of Paragraph 54 herein, any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Substance or Asbestos in violation of applicable Environmental Laws on, from, or affecting the Mortgaged Property or any other property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance or Asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance or Asbestos; (i) any violation of the Environmental Laws, which are based upon or in any way related to such Hazardous Substance or Asbestos including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses; and (j) any failure of the Mortgaged Property to comply with any Access Laws. Any amounts payable to Mortgagee or Servicer by reason of the application of this Paragraph 38 shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee or Servicer until paid.  The obligations and liabilities of Mortgagor under this Paragraph 38 accruing prior to the date of any foreclosure or conveyance in lieu of foreclosure shall survive any termination, satisfaction or assignment

- 34 -

99024849

of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.  Notwithstanding the foregoing, Mortgagor shall not be liable for losses or damages (i) resulting solely from Mortgagee's gross negligence or willful misconduct or (ii) that arise solely after (A) a Sale or Transfer which leads to a change of control of Mortgagor pursuant to the provisions of Paragraph 9 hereof or (B) the acquisition by Mortgagee of title to the Mortgaged Property pursuant to a foreclosure, deed in lieu thereof or the exercise of any other remedies available to Mortgagee under the Loan Documents and were not caused, directly or indirectly, by any condition existing on the Mortgaged Property prior to the occurrence of either (A) or (B) of this Paragraph 38.

      39.    Notices. Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Mortgage, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

      To Mortgagee:

Capital Lease Funding, L.P.
110 Maiden Lane, 36th Floor
New York, New York  10005
Attention:  Paul McDowell, Esq.
Phone:  (212) 217-6300
Fax:  (212) 217-6301

with a copy concurrently to:

Cadwalader Wickersham & Taft
100 Maiden Lane
New York, New York  10038
Attention:  John J. Busillo, Esq.
Phone:  (212) 504-6000
Fax:  (212) 504-6666

and with a copy concurrently to:

Midland Loan Services, Inc.
210 West Tenth Street
Kansas City, MO 64105
Attention: Alan Torgler
Phone:  (816) 435-5000
Fax:  (816) 435-2326

99024850

and with a copy concurrently to:

Financial Services Limited
Chevron House
11 Church Street
Hamilton HM 11, Bermuda

To Mortgagor:

WEC 99A-2 LLC
116 Gulfstream Road
Palm Beach, Florida  33480-4708
Attention:  Robert K. Wood
Phone:  (561) 659-6996
Fax:  (561) 659-0256

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, (iii) if sent by certified mail, three (3) days after such notice has been sent by Mortgagor or Mortgagee, or (iv) if sent by facsimile, upon sending party's receipt of confirmation that the fax has been received.

40.    Authority; Compliance with ERISA and State Statutes on Governmental Plans.  (a)  Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

(b)    Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

(c)    Mortgagor represents and warrants that, as of the date of this Mortgage and throughout the term of this Mortgage, (i) Mortgagor is not an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which is subject to Title I of ERISA, and (ii) the assets of such Mortgagor do not constitute "plan assets" of one or more such plans within the meaning of 29 C.F.R. Section 2510.3-101.

(d)    Mortgagor represents and warrants to Mortgagee that, as of the date of this Mortgage and throughout the term of this Mortgage (i) Mortgagor is not a "governmental plan" within the meaning of Section 3(32) of ERISA, and (ii) transactions by or with Mortgagor or any Mortgagor are not subject to state statutes regulating investments of and fiduciary obligations with respect to governmental plans.

99024851

(e)     Mortgagor covenants and agrees to deliver to Mortgagee such certifications or other evidence from time to time throughout the term of this Mortgage, as requested by Mortgagee in its reasonable discretion, that (i) Mortgagor is not an "employee benefit plan" or a "governmental plan"; (ii) Mortgagor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (iii) one or more of the following circumstances is true:

1.     Equity interests in Mortgagor are publicly offered securities, within the meaning of 29 C.F.R. § 2510.3-101(b)(2);

2.     Less than 25 percent of all equity interests in such Mortgagor are held by "benefit plan investors" within the meaning of 29 C.F.R. § 2510.3-101(f)(2); or

3.     Mortgagor qualifies as an "operating company" or a "real estate operating company" within the meaning of 29 C.F.R. § 2510.3.-101(c) or (e).

(f)     Any of the following shall constitute an Event of Default under this Mortgage, entitling Mortgagee to exercise any and all remedies to which it may be entitled under this Mortgage, and any Other Security Documents:  (i) the failure of any representation or warranty made by any Mortgagor under this Paragraph 40 to be true and correct in all respects, (ii) the failure of any Mortgagor to provide  Mortgagee with the written certifications and evidence referred to in this Paragraph 40, or (iii) the consummation by Mortgagor of a transaction which would cause this Mortgage or any exercise of Mortgagee's rights under this Mortgage or the Other Security Documents to constitute a non-exempt prohibited transaction under ERISA or a violation of a state statute regulating governmental plans, or otherwise subjecting Mortgagee to liability for violation of ERISA or such state statute.

(g)     Mortgagor shall indemnify Mortgagee and defend and hold Mortgagee harmless from and against all civil penalties, excise taxes, or other loss, cost, damage and expense (including, without limitation, attorneys' fees and disbursements and costs incurred in the investigation, defense and settlement of claims and losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Mortgagee's sole discretion) that Mortgagee may incur, directly or indirectly, as a result of a default under this Paragraph 40.  This indemnity shall survive any termination, satisfaction or foreclosure of this Mortgage.

41.     Waiver of Notice.  Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

99024852

42.   <u>Remedies of Mortgagor</u>.  In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Loan Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

43.   <u>Sole Discretion of Mortgagee</u>.  Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

44.   <u>Non-Waiver</u>.  The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Loan Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect.  Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage.  The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

45.   <u>No Oral Change</u>.  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

46.   <u>Liability</u>.  If Mortgagor (but not the constitutent partners, members or beneficiaries of Mortgagor) consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

99024853

47.   Inapplicable Provisions.  If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

48.   Headings, etc.  The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

49.   Duplicate Originals.  This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

50.   Definitions.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "Mortgagor" shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

51.   Homestead.  Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of any state, in and to the Mortgaged Property as against the collection of the Debt, or any part hereof.

52.   Assignments.  Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation in accordance with applicable law.  Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage.

53.   Cooperation.  Mortgagor acknowledges that Mortgagee and its successors and assigns may (a) sell the Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors, (c) deposit the Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "Secondary Market Transactions"). Mortgagor, without expense to Mortgagor after the date hereof, shall cooperate in good faith with Mortgagee in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements imposed by the Rating Agency involved in any Secondary Market Transaction including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the Rating Agency and addressing such matters as the Rating Agency may require; provided, however, that the Mortgagor shall not be required to modify

- 39 -

99024854

any documents evidencing or securing the Loan which would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other economic or material term of the Loan.  Mortgagor shall provide such information and documents relating to Mortgagor, Guarantor, if any, the Mortgaged Property, the Lease and the Lessee as Mortgagee or any Rating Agency may reasonably request in connection with a Secondary Market Transaction, including, without limitation, any further environmental requirements.  Mortgagee shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Mortgagor, the Guarantor, if any, the Mortgaged Property and the Lessee.  Mortgagor acknowledges that certain information regarding the Loan and the parties thereto and the Mortgaged Property may be included in a private placement memorandum, prospectus or other disclosure documents.

      54.  <u>Recourse Provisions</u>.  Subject to the qualifications below, Mortgagee shall not enforce the liability and obligation of Mortgagor to perform and observe the obligations contained in the Loan Documents by any action or proceeding wherein a money judgment shall be sought against Mortgagor or any partner, member, beneficiary, principal, manager, trustee, officer, director or shareholder of Mortgagor, except that Mortgagee may bring a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Mortgagee to enforce and realize upon its interests under the Loan Documents or in the Mortgaged Property, or any other collateral given to Mortgagor pursuant to this Mortgage and the Other Security Documents; provided, however, that, except as specifically provided herein, any judgment in any such action or proceeding shall be enforceable against Mortgagor only to the extent of Mortgagor's interest in the Mortgaged Property and in any other collateral given to Mortgagee, and Mortgagee, by accepting the Loan Documents, agrees that it shall not sue for, seek or demand any deficiency judgment against Mortgagor or any partner, member, beneficiary, principal, manager, trustee, officer, director or shareholder of Mortgagor in any such action or proceeding under or by reason of or in connection with the Loan Documents.  The provisions of this <u>Paragraph 54</u> shall not, however, (i) constitute a waiver, release or impairment of any obligation evidenced or secured by the Loan Documents; (ii) impair the right of Mortgagee to name Mortgagor as a party defendant in any action or suit for foreclosure and sale under this Mortgage; (iii) affect the validity or enforceability of any guaranty made in connection with the Debt or any of the rights and remedies of the Mortgagee thereunder; (iv) impair the right of Mortgagee to obtain the appointment of a receiver; (v) impair the enforcement of the Assignment of Lease and Rents executed in connection herewith; or (vi) constitute a waiver of the right of Mortgagee to enforce against Mortgagor the liability and obligation of Mortgagor, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Mortgagee (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

      (a)  fraud or intentional misrepresentation by Mortgagor or any Guarantor in connection with the Loan;

      (b)  material physical waste by Mortgagor of the Mortgaged Property;

99024855

(c)     the breach by Mortgagor of any provision of any environmental indemnity given by Mortgagor to Mortgagee in this Mortgage or by separate agreement concerning Environmental Laws, Hazardous Substances and Asbestos and any indemnification of Mortgagee with respect thereto in such document or agreement;

(d)     the removal or disposal by Mortgagor of any portion of the Mortgaged Property after an Event of Default, except as otherwise expressly permitted under the Loan Documents or the Lease;

(e)     the misapplication or conversion by Mortgagor of (i) any insurance proceeds paid to Mortgagor by reason of any loss, damage or destruction to the Mortgaged Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Mortgaged Property, or (iii) any rents paid to Mortgagor following an Event of Default;

(f)     failure to pay charges for labor or materials or other charges incurred or created by Mortgagor that can create liens on any portion of the Mortgaged Property senior or superior to the lien of this Mortgage;

(g)     any security deposits collected by Mortgagor with respect to the Mortgaged Property which are not delivered to Mortgagee upon a foreclosure of the Mortgaged Property or action in lieu thereof, except to the extent any such security deposits were applied in accordance with the terms and conditions of any leases prior to the occurrence of the Event of Default that gave rise to such foreclosure or action in lieu thereof;

(h)     Mortgagor fails to maintain its status as a single purpose entity as required by, and in accordance with the terms and provisions of, this Mortgage;

(i)     Mortgagor fails to obtain Mortgagee's prior written consent to any subordinate financing or other voluntary lien incurred or created by Mortgagor encumbering the Mortgaged Property as required by this Mortgage; and

(j)     Mortgagor fails to obtain Mortgagee's prior written consent (to the extent Mortgagee's consent is required under the Loan Documents) to any assignment, transfer, or conveyance of the Mortgaged Property or any interest therein as required by this Mortgage.

Notwithstanding anything to the contrary contained in the Loan Documents, Mortgagee shall not be deemed to have waived any right which Mortgagee may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by this Mortgage or to require that all collateral shall continue to secure all of the Debt owing to Mortgagee.

99024856

55.   <u>Governing Law; Submission to Jurisdiction</u>. THIS MORTGAGE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF (WHICH PROVISIONS SHALL BE DEEMED TO EXCLUDE SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW) AND APPLICABLE FEDERAL LAWS, EXCEPT TO THE EXTENT THAT PERFECTION OF LIENS AND SECURITY INTERESTS, AND REMEDIES PERTAINING THERETO, MUST BE GOVERNED BY THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED, THAT STATE BEING ARKANSAS, REGARDING WHICH ISSUES ARKANSAS LAW SHALL GOVERN. EACH MORTGAGOR, AND EACH ENDORSOR OR GUARANTOR, HEREBY SUBMITS TO PERSONAL JURISDICTION IN SAID STATES AND IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN SAID STATES (AND ANY APPELLATE COURTS TAKING APPEALS THEREFROM) FOR THE ENFORCEMENT OF SUCH MORTGAGOR'S, ENDORSOR'S OR GUARANTOR'S OBLIGATIONS HEREUNDER, UNDER THE LOAN DOCUMENTS, AND WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAW OF ANY OTHER STATE TO OBJECT TO JURISDICTION WITHIN SUCH STATE FOR THE PURPOSES OF SUCH ACTION, SUIT, PROCEEDING OR LITIGATION TO ENFORCE SUCH OBLIGATIONS OF SUCH MORTGAGOR, ENDORSOR OR GUARANTOR.  EACH MORTGAGOR AND EACH ENDORSOR AND GUARANTOR HEREBY WAIVES AND AGREES NOT TO ASSERT, AS A DEFENSE IN ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE, THE NOTE, ANY GUARANTY OR ANY OF THE OTHER SECURITY DOCUMENTS, (A) THAT IT IS NOT SUBJECT TO SUCH JURISDICTION OR THAT SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN THOSE COURTS OR THAT THIS MORTGAGE, THE NOTE, ANY GUARANTY AND/OR ANY OF THE OTHER SECURITY DOCUMENTS MAY NOT BE ENFORCED IN OR BY THOSE COURTS OR THAT IT IS EXEMPT OR IMMUNE FROM EXECUTION, (B) THAT THE ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (C) THAT THE VENUE OF THE ACTION, SUIT OR PROCEEDING IS IMPROPER.  IN THE EVENT ANY SUCH ACTION, SUIT, PROCEEDING OR LITIGATION IS COMMENCED, MORTGAGOR, OR ENDORSOR AND GUARANTOR AGREE THAT SERVICE OF PROCESS MAY BE MADE, AND PERSONAL JURISDICTION OVER SUCH MORTGAGOR, ENDORSOR OR GUARANTOR OBTAINED, BY SERVICE OF A COPY OF THE SUMMONS, COMPLAINT AND OTHER PLEADINGS REQUIRED TO COMMENCE SUCH LITIGATION UPON SUCH MORTGAGOR OR ENDORSOR OR GUARANTOR AT THE ADDRESS SET FORTH IN <u>PARAGRAPH 39</u> HEREOF.

56.   <u>Waiver of Jury Trial</u>. MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION

99024857

ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH 56 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.

57.   Miscellaneous.

(a)   Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date, and the failure of Mortgagee to promptly exercise any right, power, remedy, consent or approval provided herein or at law or in equity shall not constitute or be construed as a waiver of the same nor shall Mortgagee be estopped from exercising such right, power, remedy, consent or approval at a later date. Any consent or approval requested of and granted by Mortgagee pursuant hereto shall be narrowly construed to be applicable only to Mortgagor and the matter identified in such consent or approval and no third party shall claim any benefit by reason thereof, other than the party to whom such consent or approval was given or reasonably intended to benefit, and any such consent or approval shall not be deemed to constitute Mortgagee a venturer or partner with Mortgagor nor shall privity of contract be presumed to have been established with any such third party.

(b)   Mortgagor represents and warrants to Mortgagee that, as of the date hereof, there has not been committed by Mortgagor any act or omission affording the federal government or any state or local government the right of forfeiture as against the Mortgaged Property or any part thereof or any monies paid in performance of Mortgagor's obligations under the Loan Documents. Mortgagor hereby covenants and agrees not to commit, permit or suffer to exist any act, omission or circumstance affording such right of forfeiture. In furtherance thereof, Mortgagor hereby indemnifies Mortgagee and agrees to defend and hold Mortgagee harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the representations and warranties set forth in this Paragraph 57.

(c)   Mortgagor represents and warrants to Mortgagee that all utilities necessary for the operation of the Improvements are available at the Mortgaged Property.

58.   Servicer.   Mortgagee may from time to time appoint one or more servicers and/or special servicers (collectively, the "Servicer") to administer the Loan or otherwise perform certain functions in connection with the Loan, which Servicer shall have the power and authority to exercise all of the rights and remedies of Mortgagee and to act as agent of Mortgagee hereunder.

99024858

59.     Defeasance.

(a)     Provided no Event of Default has occurred and is continuing, at any time (x) after the earlier to occur of (I) the date which is four (4) years from the date hereof or (II) the date which is two years from the "startup day" within the meaning of Section 806G(a)(9) of the Code of the REMIC Trust or otherwise two years after the securitization of the Loan, and (y) before the Maturity Date, Mortgagor may voluntarily defease the Loan and obtain the release of the Mortgaged Property from the lien of this Mortgage upon the satisfaction of the following conditions precedent:

(i)     not less than thirty (30) days prior written notice to Mortgagee specifying a regularly scheduled payment date (the "Release Date") on which the Defeasance Deposit (hereinafter defined) is to be made;

(ii)     the payment to Mortgagee of interest accrued and unpaid on the principal balance of the Note to but not including the Release Date;

(iii)     the payment to Mortgagee of all other sums, not including scheduled interest or principal payments due after the Release Date, due under the Loan Documents;

(iv)     the payment to Mortgagee of the Defeasance Deposit; and

(v)     the delivery to Mortgagee of:

(A)     a security agreement, in form and substance satisfactory to Mortgagee, creating a first priority lien on the Defeasance Deposit and the U.S. Obligations (hereinafter defined) purchased on behalf of Mortgagor with the Defeasance Deposit in accordance with this provision of this Paragraph 59 (the "Security Agreement");

(B)     a release of the Mortgaged Property from the lien of this Mortgage (for execution by Mortgagee) in a form appropriate for the jurisdiction in which the Mortgaged Property is located and otherwise reasonably satisfactory to Mortgagee in form and substance;

(C)     an officer's certificate of Mortgagor certifying that the requirements set forth in this Paragraph 59(a) have been satisfied;

(D)     an opinion of counsel for Mortgagor in form and substance reasonably satisfactory to Mortgagee stating, among other things, that Mortgagee has a perfected first priority security interest in the Defeasance Deposit and

- 44 -

99024859

the U.S. Obligations purchased by Mortgagee on behalf of Mortgagor, and that Mortgagor has legally and validly transferred and assigned the U.S. Obligations and all obligations, rights and duties under and to the Note to the Successor Mortgagor (hereinafter defined);

(E)   evidence in writing from the applicable Rating Agencies to the effect that such release will not result in a re-qualification, reduction or withdrawal of any rating in effect immediately prior to such defeasance for any securities issued in connection with a Secondary Market Transaction involving the Loan which are then outstanding;

(F)   if required by the applicable Rating Agencies, Mortgagor should also deliver or cause to be delivered a non-consolidation opinion with respect to the Successor Mortgagor in form and substance satisfactory to Mortgagee and the applicable Rating Agencies; and

(G)   such other certificates, documents or instruments as Mortgagee may reasonably request.

In connection with the conditions set forth in Paragraph 59(a)(v) above, Mortgagor hereby appoints Mortgagee as its agent and attorney-in-fact for the purpose of using the Defeasance Deposit to purchase U.S. Obligations which provide payments on or prior to, but as close as possible to, all successive scheduled payment dates after the Release Date upon which interest and principal payments are required under the Note (including the amounts due on the Maturity Date) and in amounts equal to the scheduled payments due on such dates under the Note (the "Scheduled Defeasance Payments"). Mortgagor, pursuant to the Security Agreement or other appropriate document, shall authorize and direct that the payments received from the U.S. Obligations may be made directly to Mortgagee and applied to satisfy the obligations of Mortgagor under the Note.

(b)   Upon compliance with the requirements of this Paragraph 59, the Mortgaged Property shall be released from the lien of this Mortgage and the pledged U.S. Obligations shall be the sole source of collateral securing the Note. Provided no Event of Default has occurred and is continuing, any portion of the Defeasance Deposit in excess of the amount necessary to purchase the U.S. Obligations required by Paragraph 59(a) above and satisfy Mortgagor's obligations under this Paragraph 59 shall be remitted to Mortgagor. In connection with such release, Mortgagor (or, at Mortgagee's option, Mortgagee) shall establish or designate a successor entity (the "Successor Mortgagor"), which shall be a single purpose bankruptcy remote entity approved by Mortgagee, and Mortgagor shall transfer and assign all obligations, rights and duties under and to the Note together with the pledged U.S. Obligations to such Successor Mortgagor. Such Successor Mortgagor shall assume the

99024860

obligations under the Note and the Security Agreement and Mortgagor shall be relieved of its obligations thereunder. Mortgagor shall pay $1,000.00 to any such Successor Mortgagor as consideration for assuming the obligations under the Note and the Security Agreement. Notwithstanding anything in this Mortgage to the contrary, no other assumption fee shall be payable upon a transfer of the Note in accordance with this Paragraph 59, but Mortgagor shall pay all costs and expenses incurred by Mortgagee, including, without limitation, Mortgagee's attorneys' fees and expenses, incurred in connection with this Paragraph 59.

(c)      For purposes of this Paragraph 59, the following terms shall have the following meanings:

(i)      The term "Code" shall mean the Internal Revenue Code of 1986, as amended, and as it may be further amended from time to time, any successor statutes thereto, and applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form.

(ii)      The term "Defeasance Deposit" shall mean an amount equal to the remaining principal amount of the Note, the Yield Maintenance Premium, any costs and expenses incurred or to be incurred in the purchase of U.S. Obligations necessary to meet the Scheduled Defeasance Payments and any revenue, documentary stamp or intangible taxes or any other tax or charge due in connection with the transfer of the Note or otherwise required to accomplish the agreements of this Paragraph 59;

(iii)      The term "REMIC Trust" shall mean a "real estate mortgage investment conduit" within the meaning of Section 860D of the Code that holds the Note;

(iv)      The term "U.S. Obligations" shall mean direct non-callable obligations of the United States of America; and

(v)      The term "Yield Maintenance Premium" shall mean the amount (if any) which, when added to the remaining principal amount of the Note, will be sufficient to purchase U.S. Obligations providing the required Scheduled Defeasance Payments.

60.      Inconsistency with Lease.  To the extent there is any direct inconsistency between the Loan Documents and the Lease with respect to Lessee's rights under the Lease, then the applicable provisions of the Lease shall govern so long as the Lease is in full force and effect and there are no existing events of default thereunder.  If the Loan Documents contain provisions which are not addressed in the Lease, then the Loan Documents shall prevail; provided, further, the Loan Documents shall in all events govern repayment of the Loan, the interest rate on the Loan, Events of Default under the Loan Documents and Lender's remedies against Borrower and any Guarantor with respect to the Loan.

99024861

## Part II

### State Specific Provisions (Arkansas)

61.    In the event of any conflict between the provisions of Part I of this Mortgage and the State Specific Provisions contained in this Part II, the provisions of this Part II shall govern and control.

62.    The following sentence is hereby added to <u>Paragraph 33</u> of this Mortgage:

"Without limiting the generality of the foregoing, the Mortgagor expressly waives any right of redemption which it may have by virtue of the Act passed by the Arkansas General Assembly on May 8, 1899, and all acts amendatory thereof."

63.    <u>Fixtures</u>. Some of the items of the Mortgaged Property described herein are goods that are or are to become fixtures or Improvements related to the Premises and it is intended that, as to those goods, Mortgagor hereby grants and assigns to Lender a continuing security interest in and a lien against Mortgagor's rights therein, and this Mortgage shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of the county in which the Mortgaged Property is situated. Information concerning the security interest created by this instrument may be obtained form Lender, as secured party, at the address of Lender, as set forth in <u>Paragraph 39</u> hereof. The mailing address of Borrower, as debtor, is set forth in <u>Paragraph 39</u> hereof.

64.    The maturity date of the Note and the Debt secured by this Mortgage shall be April, 15, 2021.

99024862

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the day and year first above written.

**MORTGAGOR:**

WEC 99A-2 LLC, a Delaware limited liability
    company

By:  Wolverine 99A-2, Inc., a
       Delaware corporation, its Manager

By: _____
      Name:  Robert K. Wood
      Title:  President

STATE OF NEW YORK      )
                        )ss.:
COUNTY OF NEW YORK    )

On this 4th day of March, 1999, before me, the undersigned officer personally appeared:

    **Robert K. Wood**

personally known and acknowledged himself to me (or proved to me on the basis of satisfactory evidence) to be the President of Wolverine 99A-2, Inc., the Manager and authorized signatory of

    **WEC 99A-2 LLC**

and as such, being duly authorized to do so, executed, subscribed and acknowledged the foregoing instrument, by signing his name in his authorized capacity as his free and voluntary act and deed and the free and voluntary act and deed of said corporation and **WEC 99A-2 LLC.**

In Witness Whereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:



FRANK S. CAIAZZO
Notary Public, State of New York
No. 43-4777178
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 30, 2000

99024863

**Fayetteville, Arkansas**

## EXHIBIT A

The land referred to below is situated in the State of Arkansas, County of Washington, and is described as follows:

Lot 1, less and except 15 feet of equal and uniform width off the south side, Spring Park Subdivision – Phase I, to the City of Fayetteville, Washington County, Arkansas, as per Subdivision Plat 11 at Page 88 of the records of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas.

Also described by metes and bounds as follows:

A part of the SE/4 of the SW/4 and part of the SW/4 of the SE/4 of Section 23 and part of the NE/4 of the NW/4 and part of the NW/4 of the NE/4 of Section 26, T-17-N, R-30-W, of the 5th Principal Meridian, Washington County, Arkansas, and being more particularly described as follows: To-wit: Commencing at the NW corner of the NW/4 of the NE/4 of Section 26, T-17-N, R-30-W, thence West – 441.98 feet, thence North – 280.70 feet, thence North 89° 36' 54" East – 226.76 feet, thence North 89° 36' 30" East – 736.74 feet to the Point of Beginning, said point being on the south line of the 60 foot Georgetown Square Road right of way; thence North 89° 36' 30" East along said south right of way line a distance of 163.81 feet; thence North 89° 32' 23" East continuing along said south right of way line a distance of 116.19 feet; thence South leaving said south right of way line a distance of 366.48 feet to the north line of the Joyce Boulevard right of way; thence West along said north right of way line a distance of 280.00 feet; thence North leaving said north right of way line a distance of 364.42 feet to the Point of Beginning, containing 2.45 acres (106,512 sq. ft.), more or less. Being the same lands as shown in general warranty deed from Duane B. Nelson Revocable Trust, Orena M. Nelson, Trustee to Circuit City Stores, Inc., recorded in Land Document No. 97068569 among the Land Records of Washington County, Arkansas.

TOGETHER WITH all right, title and interest in and to that Reciprocal Easement and Operation Agreement by and between Circuit City Stores, Inc. and Duane B. Nelson Trust/Orena M. Nelson, Trustee dated September, 1997 and recorded as Land Document No. 97068573 among the Land Records of Washington County, Arkansas.

CWT\NCLIB1 (CORP)\62660.1

99024864

I, Kathleen Harness, Circuit Clerk and Ex-officio Recorder for Washington County Arkansas, do hereby certify that this instrument was filed for record in my office as indicated hereon and the same is now duly recorded with the acknowledgement and certificate thereon in Record Book and Page as indicated thereon.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Court on the date indicated hereon.

Kathleen Harness
Circuit Clerk and Ex-officio Recorder

by *Kathleen Harness*

I, Kathleen Harness, Circuit Clerk and Ex-officio
Recorder for Washington County, Arkansas, do hereby
certify that this instrument was filed for record in my
office as indicated hereon and the same is now duly
recorded with the acknowledgement and certificate
thereon in Record Book and Page as indicated thereon.

IN WITNESS WHEREOF, I have hereunto set my
hand and affixed the seal of said Court on the date indi-
cated hereon.

Kathleen Harness
Circuit Clerk and Ex-officio Recorder

by *Kathleen Harness*