---

**WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP**
(Trustor)


to


**CHICAGO TITLE INSURANCE COMPANY**
(Trustee)


for the benefit of

**CAPITAL LEASE FUNDING, L.P.**
(Beneficiary)

---

**DEED OF TRUST, SECURITY AGREEMENT AND
ASSIGNMENT OF LEASES AND RENTS**

---

Dated: November 7, 1995

Location:    Winston-Salem
             North Carolina


**RECORD AND RETURN TO:**

Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York  10038

Attention:  Michael J. Heneghan, Esq.

---

WINSTON-DOT:0040727.02

**EXHIBIT**
Winston
Salem
D

THIS DEED OF TRUST, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Deed of Trust"), made as of the 7th day of November, 1995, from WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP, a Texas limited partnership, having its principal place of business at 6750 LBJ Freeway, Suite 1100, Dallas, Texas 75240 ("Trustor"), to CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, having its principal place of business at 1129 20th Street, N.W., Suite 505, Washington, D.C. 20036 ("Trustee") for the benefit of CAPITAL LEASE FUNDING, L.P., a Delaware limited partnership, having its principal place of business at 85 John Street, New York, New York 10038 ("Beneficiary").

## WITNESSETH:

To secure the payment of an indebtedness in the principal sum of FIVE MILLION NINE HUNDRED FOURTEEN THOUSAND FOUR HUNDRED THIRTY AND 00/100 DOLLARS ($5,914,430.00), lawful money of the United States of America, to be paid with interest according to a certain Deed of Trust Note dated the date hereof made by Trustor to Beneficiary (the note together with all extensions, renewals or modifications thereof being hereinafter collectively called the "Note") and all other sums due hereunder and under the Note (said indebtedness and interest due under the Note and all other sums due hereunder and under the Note being hereinafter collectively called the "Debt"), Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, and grants unto Trustee a security interest in, the following property and rights (collectively the "Trust Property"):

All of Trustor's right, title and interest in and to the real property described in Parcel 1 and Parcel 2 of Exhibit A ("Parcel 1" and "Parcel 2", respectively) attached hereto (the "Premises") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements"; the Premises and the Improvements hereinafter collectively referred to as the "Real Property");

All of Trustor's right, title and interest in and to the Sublease with respect to Parcel 2 dated November ___, 1995 from WS/Stratford, LLC, a South Carolina limited liability company, as landlord and Circuit City Stores, Inc., a Virginia corporation, as tenant, a Memorandum of which is recorded in Book 1844 page 2783, Forsyth County Registry, as assigned by Assignment of Lease Agreement by and between Circuit City Stores, Inc. and WEC 95B Winston-Salem Limited Partnership, a Texas limited partnership, dated November 7, 1995 and recorded in Book ___, page ___, Forsyth County Registry, and the leasehold estate created thereby (the "Sub-Ground Lease") together with all right, title, and interest of Trustor, as assignee of Circuit City Stores, Inc., in and to that certain Subordination, Nondisturbance and Attornment Agreement dated December 29, 1994 between Harley P. Graves, Jr. and Nellie W. Graves, his wife, and Circuit City Stores, Inc., and recorded on December 29, 1994 in Book 1844 at page 2786 in the office of the County Registry of Forsyth

-2-

County, North Carolina (all references in this Deed of Trust to the term "Sub-Ground Lease" shall include this agreement). If Trustor shall acquire the fee title oor any other estate, title or interest in any property demised by the Sub-Ground Lease, or any part thereof, the lien of this Deed of Trust shall attach to, cover and be a lien upon such estate, title or interest.

TOGETHER WITH: all right, title, interest and estate of Trustor now owned, or hereafter acquired, in and to the following property, rights, interests and estates:

(a)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Trustor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)    all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively called the "Equipment"), including the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Trust Property is located (the "Uniform Commercial Code") superior in lien to the lien of this Deed of Trust. In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Deed of Trust, this Deed of Trust shall also cover all right, title and interest of each Trustor in and to all deposits, and the benefit of all payments now or hereafter made with respect to such Equipment;

(c)    subject to the provisions of the Lease (hereinafter defined) all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Trust Property, whether from the exercise of the right of eminent domain or condemnation (including but not limited to any transfer made in lieu of or in anticipation of the

-3-

exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Trust Property;

(d)    all right, title and interest of Trustor in and to the lease dated as of November 7, 1995 (the "Lease") between Trustor, as lessor, and Circuit City Stores, Inc., a Virginia corporation, as lessee ("Lessee") and all other leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into (the "Other Leases") and all income, rents, issues, profits and revenues (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (the "Rents") and all proceeds from the sale or other disposition of the leases and the right to receive and apply the Rents to the payment of the Debt;

(e)    Trustor's interest in any insurance policies covering the Premises and the Improvements, including, without limitation, that certain lease enhancement insurance policy No. 8182271, dated November 7, 1995, and issued by American International Specialty Lines Insurance Company (the "Lease Enhancement Policy"), all proceeds thereof and any unearned premiums on any insurance policies covering the Trust Property (including, without limitation, the Lease Enhancement Policy), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property or any part thereof;

(f)    the right, in the name and on behalf of Trustor, after an Event of Default, to appear in and defend any action or proceeding brought with respect to the Trust Property and to commence any action or proceeding to protect the interest of Beneficiary in the Trust Property or any part thereof (provided, however, that prior to an Event of Default Beneficiary shall be kept regularly and fully appraised by Trustor of the status of such action or proceeding and Trustor shall deliver to Beneficiary copies of all notices and documentation delivered or received by Trustor in connection with such action or proceeding simultaneously with such delivery or receipt; and if at any time Beneficiary in its reasonable judgment decides that Trustor is not diligently and/or properly conducting such action or proceeding or that the interests of Beneficiary in the Trust Property are not being adequately protected, then Beneficiary shall have the right, in the name and on behalf of Trustor, to appear in and defend such action or proceeding);

(g)    all franchises, trade names, trademarks, symbols, service marks, books, records, plans and specifications, contracts, licenses, approvals, consents, subcontracts, service contracts, management contracts, permits and other agreements of any nature whatsoever now or hereafter obtained or entered into by Trustor, or any managing agent of the Trust Property on behalf of Trustor, with respect to the use, occupation, development, construction and/or operation of the Trust Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Trust Property or any part thereof;

(h)    all accounts receivable, contract rights, interests, estate or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Trust Property or any part thereof, and all reserve accounts, accounts for the deposit, collection and/or disbursement of Rents and other accounts now or hereafter in existence with respect to the Loan (hereinafter defined), including, without limitation, that certain account for the payment of Rents to Beneficiary described in paragraph 14(a) of the Assignment of Lease and Rents delivered to Beneficiary by Trustor on the date hereof; and

(i)    all rights which Trustor now has or may hereafter acquire, to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Trust Property or any part thereof.

WITH RESPECT to any portion of the Real Property which is not real estate under the laws of the State of North Carolina, Trustor hereby grants, bargains, sells and conveys the same to Beneficiary for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Beneficiary with respect to such portion of the Real Property and Beneficiary shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Trust Property unto and to the use and benefit of Beneficiary, and the successors and assigns of Beneficiary, forever.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Trustor shall well and truly pay to Beneficiary the Debt at the time and in the manner provided in the Note and this Deed of Trust and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void.

AND Trustor represents and warrants to and covenants and agrees with Beneficiary as follows:

### Part I

### General Provisions

1.    Payment of Debt and Incorporation of Covenants, Conditions and Agreements. Trustor will pay the Debt at the time and in the manner provided in the Note and in this Deed of Trust. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Deed of Trust now or hereafter executed by Trustor and/or others and by or in favor of Beneficiary, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered by or on behalf of Trustor in connection with the Note

-5-

and Deed of Trust (the "Other Security Documents"), are hereby made a part of this Deed of Trust to the same extent and with the same force as if fully set forth herein.

2.    Warranty of Title.  Trustor warrants that Trustor has good title to the Trust Property and has the right to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Trustor possesses an unencumbered fee estate in Parcel 1 and the Improvements thereon and that it is the sole holder of an unencumbered leasehold estate in Parcel 2 and that the Sub-Ground Lease is prior to all liens, encumbrances and charges whatsoever, subject to the Lease and those exceptions shown in the title insurance policy insuring the lien of this Deed of Trust and that it owns the Trust Property free and clear of all liens, encumbrances and charges whatsoever except for the Lease and the Sub-Ground Lease and those exceptions shown in the title insurance policy insuring the lien of this Deed of Trust.  Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust and shall forever warrant and defend the same to Beneficiary and Trustee against the claims of all persons whomsoever.

3.    Insurance.  (a) The Trust Property shall at all times during the entire term of this Deed of Trust be insured for the mutual benefit of Trustor and Beneficiary against loss or damage by any peril covered by a standard "all risk of physical loss" insurance policy together with such other insurance as is required to be maintained by the tenant under the Lease, as required under the terms of the Lease, or in the event that the Lease is no longer in effect, as required by Beneficiary.  Such insurance shall be in an amount (i) equal to at least the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation (and contain an appropriate "Replacement Cost Endorsement" with waiver of depreciation) and with a deductible no greater than $5,000.00 unless Beneficiary shall have otherwise agreed, and (ii) such that the insurer would not deem Trustor a co-insurer under said policies.  The policies of insurance carried in accordance with this paragraph (the "Policies") shall be paid annually in advance.  The foregoing requirements of this subparagraph may be met through self-insurance carried by the tenant under the Lease in accordance with the terms of the Lease.

(b)    Unless such insurance is being provided by the Lessee under the Lease, Trustor, at its sole cost and expense, for the mutual benefit of Trustor and Beneficiary, shall also obtain and maintain during the entire term of this Deed of Trust the following Policies:

(i)    Flood insurance if any part of the Trust Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any successor act thereto) in an amount at least equal to the outstanding principal amount of the Note or the maximum limit of coverage available with respect to the Improvements and Equipment under said Act, whichever is less.

(ii)   Comprehensive public liability insurance, including broad form property damage, blanket contractual and personal injuries (including death resulting therefrom) coverages.

(iii)   Rental loss insurance in an amount equal to the aggregate annual amount of all rents and additional rents payable under the Lease, such rental loss insurance to cover rental losses for a period of at least one year after the date of the fire or casualty in question irrespective of whether the Lease has been terminated during that two-year period, or, in the event the Lease is no longer in effect, as required by Beneficiary. Trustor shall not, without the prior written consent of Beneficiary, amend the Lease to reduce the amounts and/or types of insurance required to be maintained under the Lease or waive any provision of the Lease to reduce such amounts and/or types of insurance.

(iv)   Insurance against loss or damage from explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements.

(v)   Such other insurance as may from time to time be reasonably required by Beneficiary in order to protect its interests.

(c)   All Policies if and to the extent required by Beneficiary and except as otherwise provided in the Lease (i) shall be issued by an insurer rated at least "A" by the Rating Agencies that is satisfactory to Beneficiary (subject to the tenant's right to self-insure in accordance with the terms of the Lease), (ii) shall contain the standard New York mortgagee or equivalent non-contribution clause naming Beneficiary as the person to which all payments made by such insurance company shall be paid, (iii) shall be maintained throughout the term of this Deed of Trust without cost to Beneficiary, (iv) shall be delivered to Beneficiary, (v) shall contain such provisions as Beneficiary deems reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Trustor, Beneficiary nor any other party shall be a co-insurer under said Policies and that Beneficiary shall receive at least thirty (30) days prior written notice of any modification or cancellation, and (vi) shall be satisfactory in form and substance to Beneficiary and shall be approved by Beneficiary as to amounts, form, risk coverage, deductibles, loss payees and insureds. The premiums for such Policies (the "Insurance Premiums") shall be paid as the same become due and payable. Not later than thirty (30) days prior to the expiration date of each of the Policies, Trustor will deliver to Beneficiary satisfactory evidence of the renewal of each Policy.

(d)   If the Trust Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Trustor shall give prompt notice thereof to Beneficiary. Trustor shall not settle or adjust or permit the settlement or adjustment of any insurance claim without Beneficiary's prior written consent. All insurance proceeds required to be applied to restoration and repair of the Trust Property under the Lease shall be disbursed in accordance with the provisions of the Lease for such restoration and repair upon such conditions as Beneficiary may reasonably require and which are otherwise customary in the locality where

the Trust Property is situated, which conditions shall include, without limitation, the following: (i) no Event of Default has occurred and remains uncured at the time of such disbursement; (ii) the insurer does not deny liability to any named insured; (iii) the remaining Trust Property continues at all times to comply with all applicable building, zoning and other land use laws and regulations; (iv) in Beneficiary's reasonable judgment, the restoration or repair is practicable and can be completed within a reasonable period of time following such damage or destruction, but in no event later than the date by which completion is required under the Lease; (v) Trustor proceeds promptly after the insurance claims are settled with the restoration or repair; and (vi) the restoration or repair is performed in compliance with all applicable laws, rules and regulations. All insurance proceeds not required to be disbursed for repair and restoration of the Trust Property pursuant to the provisions of the Lease shall be delivered to Beneficiary and may be retained and applied by Beneficiary, after deduction of Beneficiary's reasonable costs and expenses of collection, toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper (such application to be without any prepayment consideration, except that if an Event of Default has occurred, then such application shall be subject to the prepayment consideration computed in accordance with the Note).

(e)     Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of the Lease Enhancement Policy, including, without limitation, the terms of the paragraph entitled "Maintenance of Certain Insurance Coverage" under any such Lease Enhancement Policy. Trustor acknowledges Beneficiary's right under and pursuant to Paragraph 23 hereof to obtain (either itself or by its agents, servicers, nominees or attorneys) any insurance required of Trustor hereunder should Trustor fail to do so as required hereunder. The foregoing shall not be deemed to affect any rights of self-insurance by the tenant under the Lease permitted by this Deed of Trust.

4.     Payment of Taxes, etc.    (a) All taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Trust Property or any part thereof (the 'Taxes") and all ground rents, maintenance charges, other governmental impositions, and other charges, including without limitation vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Trust Property or any part thereof (the "Other Charges") shall be paid on or prior to the date the same become due and payable. Trustor will deliver to Beneficiary, promptly upon Beneficiary's request, evidence satisfactory to Beneficiary that the Taxes and Other Charges have been so paid or are not then delinquent. Trustor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Trust Property. Trustor shall furnish to Beneficiary or its designee receipts for the payment of the Taxes and Other Charges prior to the date the same shall become delinquent.

(b)     After prior written notice to Beneficiary, Trustor, at its own expense, may contest, or permit to be contested, by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Taxes or Other Charges, provided that (i) Trustor is not in default

under the Note or this Deed of Trust, (ii) Trustor is permitted to do so under the provisions of any mortgage or deed of trust junior in lien to this Deed of Trust, (iii) such proceeding shall suspend the collection of the Taxes or Other Charges from Trustor and from the Trust Property, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Trustor is subject and shall not constitute a default thereunder, (v) neither the Trust Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, cancelled or lost, (vi) adequate reserves for the payment of the Taxes or Other Charges, together with all interest and penalties thereon, shall have been set aside, and (vii) Trustor shall have furnished, or caused to be furnished, such security as may be required in the proceeding, or as may be requested by Beneficiary, to insure the payment of any such Taxes or Other Charges, together with all interest and penalties thereon.

5.    Escrow Fund.  Trustor shall, after an Event of Default (unless the tenant under the Lease is paying such sums directly) or during any period that the Lease is not in effect, at the option of Beneficiary or its designee, pay to Beneficiary on the fifteenth day of each calendar month after notice from Beneficiary (a) one-twelfth of an amount which would be sufficient to pay the Taxes payable, or estimated by Beneficiary to be payable, during the next ensuing twelve (12) months, and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter called the "Escrow Fund").  The Escrow Fund, if any, and the payments of interest or principal or both, payable pursuant to the Note, shall be added together and shall be paid as an aggregate sum by Trustor to Beneficiary.  Trustor hereby pledges to Beneficiary any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt.  Beneficiary will apply the Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Trustor pursuant to paragraphs 3 and 4 hereof.  If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to paragraphs 3 and 4 hereof, Beneficiary shall, in its discretion, return any excess to Trustor or credit such excess against future payments to be made to the Escrow Fund.   In allocating such excess, Beneficiary may deal with the person shown on the records of Beneficiary to be the owner of the Trust Property.  If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Trustor shall promptly pay to Beneficiary, upon demand, an amount which Beneficiary shall estimate as sufficient to make up the deficiency.  Upon the occurrence of an Event of Default, Beneficiary may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its sole discretion:

       (i)      Taxes and Other Charges;

       (ii)     Insurance Premiums;

       (iii)    Interest on the unpaid principal balance of the Note;

       (iv)    Amortization of the unpaid principal balance of the Note; or

    (v)    All other sums payable pursuant to the Note, this Deed of Trust and the Other Security Documents, including, without limitation, advances made by Beneficiary pursuant to the terms of this Deed of Trust.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Beneficiary. No earnings or interest on the Escrow Fund shall be payable to Trustor.

    6.    <u>Condemnation</u>. (a) Trustor shall promptly give Beneficiary and Trustee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Beneficiary and Trustee copies of any and all papers served in connection with such proceedings. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Trustor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note, in this Deed of Trust and the Other Security Documents and the Debt shall not be reduced until any award or payment therefor shall have been actually received after expenses of collection and applied by Beneficiary to the discharge of the Debt. Beneficiary shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Trustor shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Trustor, to be paid directly to Beneficiary.

    (b)    All condemnation awards or payments required to be applied to restoration and repair of the Trust Property under the Lease shall be disbursed in accordance with the provisions of the Lease. All condemnation awards or payments not required to be disbursed for repair and restoration of the Trust Property pursuant to the provisions of the Lease shall be delivered to Beneficiary and applied to the reduction or discharge of the Debt whether or not then due and payable (such application to be without any prepayment consideration, except that if an Event of Default has occurred, then such application shall be subject to the prepayment consideration computed in accordance with the Note). If the Trust Property is sold, through foreclosure or otherwise, prior to the receipt by Beneficiary of such award or payment, Beneficiary shall have the right to receive said award or payment, or a portion thereof sufficient to pay the Debt. Trustor shall file and prosecute or cause to be filed and prosecuted its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be paid over to Beneficiary, and hereby irrevocably authorizes and empowers Beneficiary, in the name of Trustor or otherwise, to collect and receipt for any such award or payment and to file and prosecute such claim or claims, and although it is hereby expressly agreed that the same shall not be necessary in any event, Trustor shall, upon demand of Beneficiary, make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any such award or payment to Beneficiary, free and clear of any encumbrances of any kind or nature whatsoever.

7.    <u>The Lease</u>.  (a)  Trustor, by this Deed of Trust and the Assignment of Lease and Rents of even date herewith, has absolutely and unconditionally assigned to Beneficiary, all of Trustor's right, title and interest in the Lease, the Other Leases and the Rents, it being intended by Trustor that this assignment constitutes a present, absolute assignment.  Trustor represents to Beneficiary that (i) the Lease is in full force and effect, (ii) a true and correct copy of the Lease as amended to the date hereof has been delivered to Beneficiary, (iii) neither Trustor nor Lessee is in default under any of the terms, covenants or conditions of the Lease, (iv) Trustor has not delivered to, or received from the Lessee any notice of default under the Lease and (v) all rents payable under the Lease, including all additional rent, have been paid in full.

(b)    Trustor agrees with Beneficiary that Trustor (i) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything within the power of Lessor under the Lease to impair the value of the Lease as security for the Debt; (ii) shall promptly send copies to Beneficiary of all notices of default which Trustor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Lease upon the part of the Lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not execute any other assignment of lessor's interest in the Lease; (v) shall not alter, modify or change the terms of the Lease without the prior consent of Beneficiary, or cancel or terminate the Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the premises demised by the Lease or of any interest therein so as to effect a merger of the estates and rights of, or termination or diminution of the obligations of Lessee thereunder; (vi) shall not alter, modify or change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without the prior consent of Beneficiary; (vii) shall not consent to any assignment of or subletting under the Lease not in accordance with the Lease terms, without the prior written consent of Beneficiary; (viii) upon request of Beneficiary, shall request and use reasonable efforts to obtain, an estoppel certificate from the Lessee in substantially the form required by the Lease or if not so required, in form and substance reasonably satisfactory to Beneficiary; (ix) shall execute and deliver at the request of Beneficiary all such further assurances, confirmations and assignments in connection with the Trust Property as Beneficiary shall from time to time require; (x) shall request and use its best efforts to obtain a subordination, non-disturbance and attornment agreement from the Lessee in substantially the forum required by the Lease; (xi) Trustor shall neither accept nor reject any offer by Lessee to purchase the Leased Premises (as defined in the Lease) and or the condemnation award pursuant to section 12 of the Lease without the proper written consent of Beneficiary and Beneficiary shall have the irrevocable right to make such determination on behalf of Trustor; and (xii) in any event where Trustor has the right to determine application of the Net Surplus Award (as defined in the lease) pursuant to Section 12 of the lease, Beneficiary shall have the sole right to so determine the application of such Net Surplus Award on behalf of Trustor.

8.    <u>Maintenance of Trust Property</u>.  The Trust Property shall be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment or as otherwise permitted under the Lease) without the consent of Beneficiary.  Trustor shall

cause the Trust Property to be in compliance with all laws, orders and ordinances affecting the Trust Property, or the use thereof. Trustor shall cause any part of the Trust Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any proceeding of the character referred to in paragraph 6 hereof to be promptly repaired, replaced or rebuilt. Trustor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Trust Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Trust Property is or shall become a nonconforming use, Trustor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Beneficiary.

9. <u>Transfer or Encumbrance of the Trust Property.</u> (a) Trustor acknowledges that Beneficiary has examined and relied on the creditworthiness and experience of Trustor in owning and operating properties such as the Trust Property in agreeing to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, should Trustor default in the repayment of the Debt, Beneficiary can recover all or a portion of the Debt by a sale of the Trust Property. Trustor shall not, without the prior written consent of Beneficiary, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Trust Property or any part thereof or any interest therein, or permit the Trust Property or any part thereof or any interest therein to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b) A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this paragraph 9 shall be deemed to include, without limitation, (i) an installment sales agreement wherein Trustor agrees to sell the Trust Property or any part thereof for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in and to the Lease or any Rents; (iii) any divestiture of Trustor's title or any interest therein in any manner or way, whether voluntary or involuntary, or any merger, consolidation, dissolution or syndication affecting Trustor; (iv) if Trustor, any person or entity guaranteeing payment of the Debt or any portion thereof or performance by Trustor of any of the terms of this Deed of Trust (a "Guarantor"), or any general partner of Trustor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of any of such corporation's stock (or the stock or other interests of any corporation or entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation directly or indirectly; and (v) if Trustor, any Guarantor or any general partner of Trustor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of any partnership interests of any general

-12-

partner, managing partner or limited partner or the transfer of any interests of any joint venturer or member (or any interests of any entity directly or indirectly controlling such partner, joint venturer or member by operation of law or otherwise).

(c) Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Trustor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property regardless of whether voluntary or not, or whether or not Beneficiary has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property.

(d) Beneficiary's consent to a sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property shall not be deemed to be a waiver of Beneficiary's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property made in contravention of this paragraph shall be null and void and of no force and effect.

(e) Trustor agrees to bear and shall pay or reimburse Beneficiary on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Beneficiary in connection with the review, approval and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer.

(f) Notwithstanding the foregoing provisions of this paragraph 9, Beneficiary's consent to the sale or transfer of the Trust Property will not be unreasonably withheld after consideration of all relevant factors, provided that:

(i) no Event of Default is existing and remains uncured;

(ii) the proposed transferee ("Transferee") shall be a reputable entity or person of good character, creditworthy, with sufficient financial worth considering the obligations assumed and undertaken, as evidenced by financial statements and other information reasonably requested by Beneficiary (provided that creditworthiness and financial worth of the transferee at least equal to the creditworthiness and financial worth of Trustor on the date hereof shall be deemed acceptable) and shall comply in all respects with the provisions set forth in paragraph 20 of this Deed of Trust and all other applicable criteria of the Rating Agencies (as hereinafter defined);

(iii) Beneficiary shall have received evidence satisfactory to Beneficiary that all required approvals, if any, to such sale or transfer shall have been obtained, including, without limitation,

-13-

approvals required under the Lease or the Lease Enhancement Policy;

(iv)     Beneficiary shall have received evidence in writing from the Rating Agencies to the effect that such transfer will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a Secondary Market Transaction (as hereinafter defined). The term "Rating Agencies" as used herein shall mean any of Standard & Poor's Ratings Group, Duff & Phelps Credit Rating Co., Moody's Investors Service, Inc. and Fitch Investors Service, Inc. or any other nationally-recognized statistical rating agency which has been approved by Beneficiary and which is then rating the securities or certificates issued in connection with the Secondary Market Transaction;

(v)      Beneficiary shall have received such legal opinions as may be requested by Beneficiary or any Rating Agency in connection with such sale or transfer;

(vi)     the Transferee shall have executed and delivered to Beneficiary an assumption agreement in form and substance acceptable to Beneficiary, evidencing such Transferee's agreement to abide and be bound by the terms of the Note, this Deed of Trust and the Other Security Documents, together with such title insurance endorsements as may be reasonably requested by Beneficiary; and

(vii)    Beneficiary shall have received an assumption fee equal to actual out-of-pocket costs and expenses incurred by Beneficiary in connection with such sale, transfer or assumption (including, but not limited to, attorneys' fees and costs).

(g)      Beneficiary shall not unreasonably withhold its consent to a subordinate deed of trust by Trustor provided that such deed of trust (i) is expressly subordinate to the lien of this Deed of Trust in all respects and the holder of such deed of trust enters into a subordination agreement satisfactory in all respects to Beneficiary; (ii) the loan which will be secured by such deed of trust shall only be paid after all payments then due and payable under the Note are made and after payment of all current operating expenses with respect to the Trust Property; (iii) the holder of such deed of trust shall have entered into a written agreement approved by Beneficiary which prohibits such holder from exercising any remedies, including accelerating any indebtedness and commencing any action (including the filing of a bankruptcy petition or similar proceeding) against Trustor for collection of interest, principal or other charges while the Note is outstanding and prohibits such holder from filing a claim in a bankruptcy or similar proceeding commenced by Trustor or by one or more affiliates of Trustor and requires that such holder shall vote against any plan presented in such

-14-

proceeding which would alter the terms of the Note, this Deed of Trust or any of the Other Security Documents (provided that such holder may file a claim in a bankruptcy or similar proceeding commenced by an independent person other than itself); (iv) Beneficiary shall have received evidence satisfactory to Beneficiary that all required approvals, if any, to such deed of trust shall have been obtained, including, without limitation, approvals required under the Lease or the Lease Enhancement Policy; (v) Beneficiary shall have received evidence in writing from the Rating Agencies to the effect that such deed of trust will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a Secondary Market Transaction; and (vi) Beneficiary shall have received such legal opinions as may be requested by Beneficiary or any Rating Agency in connection with such deed of trust.

(h)    Notwithstanding anything contained in this Paragraph 9, Beneficiary shall not withhold its consent to the sale or transfer of limited partnership interests of Trustor provided that: (i) after taking into account any prior transfers pursuant to this Paragraph, whether to the proposed transferee or otherwise, no such transfer (or series of transfers) shall result in (x) the proposed transferee, together with all members of his/her immediate family or any affiliates thereof, owning in the aggregate (directly, indirectly or beneficially) more than 49% of the interests in Trustor (or any entity directly or indirectly holding an interest in Trustor), or (y) a transfer in the aggregate of more than 49% of the interests in Trustor as of the date hereof; (ii) no such transfer of interest shall result in a change of control of Trustor or the day to day operations of the Trust Property; (iii) Trustor shall give Beneficiary notice of such transfer together with copies of all instruments effecting such transfer not less than ten (10) business days prior to the date of such transfer; (iv) no Event of Default has occurred and remains uncured; and (v) the legal and financial structure of Trustor after such transfer and its shareholders, partners or members and the single purpose nature and bankruptcy remoteness of Trustor and its shareholders, general partners or members satisfies Beneficiary's then current applicable underwriting criteria and requirements including, without limitation, the requirement to deliver at the request of Beneficiary, (A) a New Non-Consolidation Opinion (hereinafter defined) and (B) evidence reasonably satisfactory to Beneficiary that the single purpose nature and bankruptcy remoteness of Trustor and its shareholders or general partners following such transfer is in accordance with the standards of two of the Rating Agencies or, if a securitization has occurred, the Rating Agencies rating the securities in the securitization (including, in such event, written confirmations from such Rating Agencies that such transfer or series of transfers will not result in a requalification, reduction or withdrawal of the ratings initially assigned, to be assigned or then applicable to such securities in a Secondary Market Transaction). For purposes of this Paragraph, (1) a change of control of Trustor shall be deemed to have occurred if there is any change in the identity of the individual or group of individuals who have the right, by virtue of the articles of organization, the operating agreement or any other agreement, with or without taking any formative action, to cause Trustor to take some action or to block Trustor from taking some action which, in either case, Trustor could take or could refrain from taking were it not for the rights of such individuals; and (2) the term "New Non-Consolidation Opinion" shall mean an opinion of counsel to Trustor (reasonably satisfactory to Beneficiary in form and substance and from counsel reasonably satisfactory to Beneficiary and containing assumptions, limitations and qualifications customary for opinions of such type) to the effect that a court of competent jurisdiction in a proceeding under Title 11 of the United States Code (the "Bankruptcy Code")

-15-

would not consolidate the assets and liabilities of Trustor and any special purpose, bankruptcy remote partner or member of Trustor with those of any holder of any interests in Trustor (or holders of interests in any entity directly or indirectly holding an interest in Trustor) or affiliate thereof which became a debtor under the Bankruptcy Code and, if applicable, that any such transfer would not be a fraudulent conveyance under the Bankruptcy Code.

(i)    Notwithstanding anything to the contrary herein, in the event of any transfer by Trustor of all or any portion of the Trust Property or any interest therein (whether or not such transfer shall have been approved by Beneficiary), such transferee shall be automatically deemed to have assumed all the obligations of the Insured Owner (as such term is defined in the Lease Enhancement Policy) under the Lease Enhancement Policy, including any application submitted in connection therewith, without the need for any further agreement or documentation.

(j)    Upon any permitted sale of all of the Trust Property by Trustor in accordance with the provisions of this Paragraph 9, Trustor shall be released from any claims for personal liability under Paragraph 54 hereof arising subsequent to such transfer date with respect to the acts of the transferee occurring subsequent to such transfer date, but only if such sale is accomplished in accordance with the provisions of this Paragraph 9 and then only if such transferee assumes all of the obligations of Trustor under this Deed of Trust, the Note and the Other Security Documents (subject to the non-recourse provisions thereof) pursuant to a written instrument satisfactory to Beneficiary.

10.    Estoppel Certificates.  After request by Beneficiary, Trustor shall within ten (10) days furnish Beneficiary with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

11.    Changes in the Laws Regarding Taxation.  If any law is enacted or adopted after the date of this Deed of Trust which deducts the Debt from the value of the Trust Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Beneficiary's interest in the Trust Property, Trustor will pay such tax, with interest and penalties thereon, if any.  In the event Beneficiary is advised by counsel chosen by it that the payment of such tax or interest and penalties by Trustor would be unlawful or taxable to Beneficiary or unenforceable or provide the basis for a defense of usury, then in any such event, Beneficiary shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

12.    No Credits on Account of the Debt.  Trustor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Trust Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Trust Property, or any part

-16-

thereof, for real estate tax purposes by reason of this Deed of Trust or the Debt. In the event such claim, credit or deduction shall be required by law, Beneficiary shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

13.    Documentary Stamps. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Deed of Trust, or impose any other tax or charge on the same, Trustor will pay for the same, with interest and penalties thereon, if any.

14.    Usury Laws. This Deed of Trust and the Note are subject to the express condition that at no time shall Trustor be obligated or required to pay interest on the Debt at a rate which could subject Beneficiary to either civil or criminal liability as a result of being in excess of the maximum interest rate which Trustor is permitted by law to contract or agree to pay. If by the terms of this Deed of Trust or the Note, Trustor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all previous payments in excess of such maximum rate shall be deemed to have been payments in reduction of the principal and not on account of the interest due hereunder.

15.    Books and Records. Trustor and Guarantors, if any, shall keep adequate books and records of account in accordance with generally accepted accounting principles consistently applied and furnish to Beneficiary: (a) an annual operating statement of the Trust Property; (b) an annual balance sheet and profit and loss statement of Trustor, and of any Guarantor, prepared by or, if required by Beneficiary, certified by, a certified public accountant acceptable to Beneficiary within ninety (90) days after the close of each fiscal year; and (c) such annual balance sheets and profit and loss statements and other financial statements as may, from time to time, be required by Beneficiary. Trustor shall provide Beneficiary with such additional financial or management information as Beneficiary may request, provided that any such additional information with respect to the Lessee or the Trust Property is available to Trustor pursuant to the terms and provisions of the Lease.

16.    Performance of Other Agreements. Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property including, without limitation, any reciprocal easement, operating or similar agreement, and if Trustor shall fail to so observe and perform any such terms, Beneficiary and Servicer and their agents, employees, contractors, engineers, architects and other representatives shall have the right to so observe and perform such terms.

17.    Further Acts, etc. Trustor will, at the cost of Trustor, and without expense to Beneficiary, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, assignments, notices of assignment, transfers and assurances as Beneficiary shall, from time to time, require, for the better assuring, conveying,

-17-

assigning, transferring, and confirming unto Beneficiary and Trustee the property and rights hereby mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Trustor may be or may hereafter become bound to convey or assign to Beneficiary or Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust. Trustor, on demand, will execute and deliver and hereby authorizes Beneficiary or Trustee to execute in the name of Trustor or without the signature of Trustor to the extent Beneficiary or Trustee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Beneficiary and Trustee in the Trust·Property. Without in any way limiting any other rights of Beneficiary specifically provided for in this Deed of Trust, Trustor grants to Beneficiary and Trustee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting, after the expiration of any applicable grace or notice period, any and all rights and remedies available to Beneficiary or Trustee at law and in equity, including, without limitation, such rights and remedies available to Beneficiary and Trustee pursuant to this paragraph 17.

18.    Recording of Deed of Trust, etc.   Trustor forthwith upon the execution and delivery of this Deed of Trust and thereafter, from time to time, will cause this Deed of Trust, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Trust Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Beneficiary and Trustee in, the Trust Property. Trustor will pay all filing, registration or recording fees, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Deed of Trust, any deed of trust supplemental hereto, any security instrument with respect to the Trust Property or any instrument of further assurance, except where prohibited by law so to do. Trustor shall hold harmless and indemnify Beneficiary, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Deed of Trust.

19.    Prepayment.   If permitted by the Note, the Debt may be prepaid in accordance with the terms thereof.

20.    Single Purpose Entity/Separateness.   Trustor hereby represents and warrants to, and covenants with Lender that as of the date hereof and until such time as the Debt shall be paid in full:

(a)    Trustor does not own and will not own any asset or property other than (i) the Trust Property, and (ii) incidental personal property necessary for the ownership or operation of the Trust Property.

(b)    Trustor will not engage in any business other than the ownership, management and operation of the Trust Property and Trustor will conduct and operate its business generally as presently conducted and operated.

(c)    Trustor will not enter into any contract or agreement with any affiliate of Trustor, any constituent party of Trustor, any Guarantor or any affiliate of any constituent party or Guarantor, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d)    Trustor has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (i) the Debt or unsecured trade debt customarily payable within thirty (30) days.

(e)    Trustor has not made and will not make any loans or advances to any third party (including any affiliate or constituent party, any Guarantor or any affiliate of any constituent party or Guarantor) and shall not acquire obligations or securities of its affiliates.

(f)    Trustor is and will remain solvent and Trustor will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g)    Trustor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Trustor will not, nor will Trustor permit any constituent party or Guarantor to amend, modify or otherwise change the partnership certificate, partnership agreement, articles of incorporation and bylaws, trust or other organizational documents of Trustor or such constituent party or Guarantor without the prior written consent of Beneficiary.

(h)    Trustor will maintain books, records, financial statements and bank accounts separate from those of its affiliates and any constituent party and Trustor will file its own tax returns.  Trustor shall maintain its books, records, resolutions and agreements as official records.

(i)    Trustor will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Trustor, any constituent party of Trustor, any Guarantor or any affiliate of any constituent party or Guarantor), and shall conduct business in its own name and shall maintain and utilize separate stationery, invoices and checks.  Trustor shall correct any misunderstanding regarding its status as a separate entity and shall not identify itself or any of its affiliates as a division or part of the other.

(j)    Trustor will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k)     Neither Trustor nor any constituent party will seek or effect the liquidation, dissolution or winding up, in whole or in part, of Trustor.

(l)     Trustor will not commingle the funds and other assets of Trustor with those of any affiliate or constituent party, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other person.

(m)     Trustor has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other person.

(n)     Trustor does not and will not hold itself out to be responsible for the debts or obligations of any other person.

(o)     If Trustor is a limited partnership or a limited liability company, and each general partner managing member (an "SPC Member"), respectively, is a corporation whose sole asset is its interest in Trustor, and each such general partner or SPC Member will at all times comply, and will cause Trustor to comply, with each of the representations, warranties, and covenants contained in this paragraph 20 as if such representation, warranty or covenant was made directly by such general partner or SPC Member.

(p)     Trustor shall at all times cause there to be at least one duly appointed member of the board of directors (an "Independent Director") of Trustor or each general partner or SPC member of Trustor, as applicable, reasonably satisfactory to Beneficiary who shall not have been at the time of such individual's appointment, and may not have been at any time during the preceding five years (i) a shareholder of, or an officer, director, partner or employee of, Trustor or any of its shareholders, subsidiaries or affiliates, (ii) a customer of, or supplier to, Trustor or any of its shareholders, subsidiaries or affiliates, who derives more than 10% of its purchases or revenues from its activities with Trustor, (iii) a person or other entity controlling or under common control with any such shareholder, partner, supplier or customer, or (iv) a member of the immediate family of any such shareholder, officer, director, partner, employee, supplier or customer.  As used herein, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through ownership of voting securities, by contract or otherwise.

(q)     Trustor shall not cause or permit the board of directors of Trustor or the general partner(s) of Trustor, or the SPC Member, as applicable, to take any action which, under the terms of any certificate of incorporation, by-laws or any voting trust agreement with respect to any common stock, requires the vote of the board of directors of Trustor or the general partners of Trustor or the SPC Member, as applicable, unless at the time of such action there shall be at least one member who is an Independent Director.

(r)     Trustor shall conduct its business so that the assumptions made with respect to Trustor in that certain opinion letter (the "Non-Consolidation Opinion") dated

-20-

November 7, 1995 delivered by Winstead Sechrest & Minick P.C. in connection with this Deed of Trust shall be true and correct in all respects.

21.    Events of Default.  The Debt shall become immediately due and payable at the option of Beneficiary, without notice or demand, upon any one or more of the followings events ("Events of Default"):

(a)    if any portion of the Debt is not paid when due;

(b)    if any of the Taxes or Other Charges is not paid prior to when the same is delinquent and prior to the date on which interest and/or penalties would accrue, and Trustor has been given five (5) days notice thereof, subject to the provisions of paragraph 4;

(c)    if the Policies are not kept in full force and effect, or if the Policies are not delivered to Beneficiary within 10 days after Beneficiary's request or if the Lease Enhancement Policy are not kept in full force and effect as a result of Trustor's acts;

(d)    if Trustor violates or does not comply with any of the provisions of paragraphs 7, 9, 20, 34 or 35;

(e)    if a default has occurred under the Lease and has not been cured as provided therein or if the Lease is cancelled, terminated, abridged, modified or surrendered without Beneficiary's consent;

(f)    if any material representation or warranty of Trustor, or of any Guarantor, made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Beneficiary shall have been false or misleading in any material respect when made, or if any of the assumptions in the Non-Consolidation Opinion shall be or become inaccurate in any material respect;

(g)    if Trustor or any Guarantor shall make a general assignment for the benefit of creditors or if Trustor shall generally not be paying its debts as they become due;

(h)    if a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Trustor or any Guarantor or if any proceeding for the dissolution or liquidation of Trustor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Trustor or such Guarantor, upon the same not being discharged, stayed or dismissed within ninety (90) days;

(i)    if Trustor shall be in default under any other deed of trust or security agreement covering any part of the Trust Property whether it be superior or junior in lien to this Deed of Trust;

(j)    if the Trust Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) calendar days;

(k)    if Trustor fails to cure promptly or within any period of time permitted by the locality any violations of laws or ordinances affecting the Trust Property;

(l)    if for more than thirty (30) days after notice from Beneficiary, Trustor shall continue to be in default under any other term, covenant or condition of the Note, this Deed of Trust or any of the Other Security Documents.

(m)    if the lessor under the Sub-Ground Lease shall give Trustor or Beneficiary (i) a written notice of cancellation of the Sub-Ground Lease or (ii) a written notice of default under the Sub-Ground lease and the default specified in such notice shall not have been remedied within the time limit in the Sub-Ground Lease for the remedying of such default; or

(n)    if the Sub-Ground Lease is surrendered, terminated; modified, changed, supplemented, altered or amended without the prior written consent of Beneficiary.

22.    Default Interest.  Upon the occurrence of any Event of Default, Trustor shall pay interest on the unpaid principal balance of the Note at a rate equal to three percent (3)% above the Applicable Interest Rate (as defined in the Note) (the "Default Rate"). The Default Rate shall be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt.  This charge shall be added to the Debt, and shall be deemed secured by this Deed of Trust.  This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Beneficiary by reason of the occurrence of any Event of Default.  If the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

23.    Right to Cure Defaults.

(a)    Upon the occurrence of any Event of Default, Beneficiary and/or Servicer may (themselves or by their agents, employees, contractors, engineers, architects, nominees, attorneys or other representatives), but without any obligation to do so and without notice to or demand on Trustor and without releasing Trustor from any obligation hereunder or curing or being deemed to have cured any default hereunder, make or do the same in such manner and to such extent as Beneficiary and/or Servicer may deem necessary to protect the security hereof.  Beneficiary and Servicer (and their agents, employees, contractors, engineers, architects, nominees, attorneys or other representatives) are authorized to enter upon Trust Property for such purposes and Beneficiary and/or Servicer are authorized to appear in, defend, or bring any action or proceeding to protect Beneficiary's interest in the Trust Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including, without limitation, reasonable attorneys' fees and disbursements to the

-22-

extent permitted by law), with interest as provided in this paragraph 23, shall constitute a portion of the Debt and shall be due and payable to Beneficiary upon demand. All such costs and expenses incurred by Beneficiary and/or Servicer in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Beneficiary and/or Servicer that such cost or expense was incurred to the date of payment to Beneficiary and/or Servicer. All such costs and expenses incurred by Beneficiary or Servicer together with interest thereon calculated at the above rate shall be deemed to be protective advances hereunder and shall constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Beneficiary or Servicer therefor.

(b)   Foreclosure through Trustee will be initiated by Beneficiary's filing of its notice of election and demand for sale with Trustee. Upon the filing of such notice of election and demand for sale, Trustee shall promptly comply with all notice and other requirements of the laws of the state in which the Trust Property is located then in force with respect to such sales. Any sale conducted by Trustee pursuant to this Paragraph shall be held at the front door of the county courthouse for such County, or on the Premises, or at such other place as similar sales are then customarily held in such County, provided that the actual place of sale shall be specified in the notice of sale. At the conclusion of any foreclosure sale, the officer conducting the sale shall execute and deliver to the purchaser at the sale a certificate of purchase which shall describe the property sold to such purchaser and shall state that upon the expiration of the applicable periods for redemption, the holder of such certificate will be entitled to a deed to the property described in the certificate. After the expiration of all applicable periods of redemption, unless the property sold has been redeemed by Trustor, the officer who conducted such sale shall, upon request, execute and deliver an appropriate deed to the holder of the certificate of purchase or the last certificate of redemption, as the case may be, and such deed shall operate to divest Trustor and all persons claiming under Trustor of all rights, title, and interest, whether legal or equitable, in the property described in the deed. Nothing in this Paragraph dealing with foreclosure procedures or specifying particular actions to be taken by Beneficiary or by Trustee or any similar officer shall be deemed to contradict or add to the requirements and procedures now or hereafter specified by the laws of the state in which the Trust Property is located, and any such inconsistency shall be resolved in favor of the laws of the state in which the Trust Property is located applicable at the time of foreclosure.

(c)   In order to facilitate Beneficiary and/or Servicer's rights under subparagraph (a) above, Trustor hereby further grants to Beneficiary and Servicer and any agents, employees, contractors, engineers, architects, nominees, attorneys and other representatives of Beneficiary and/or Servicer, an irrevocable non-terminable license on, over, through and under the Trust Property in order to exercise any such rights. Such license is self-effectuating, and shall be binding upon Trustor and all successors and assigns of Trustor. Trustor shall cause the foregoing rights of Beneficiary and license to be agreed to by and binding upon all tenants of the Trust Property and all successors and assigns of such tenants. Trustor shall promptly execute, and cause to be executed, any other documents required by Beneficiary in order to further confirm the foregoing rights of Beneficiary and license. For

-23-

the foregoing purposes, Trustor constitutes and appoints each of Beneficiary and Servicer its true and lawful attorney-in-fact with full power of substitution to exercise any such rights in the name of Trustor. Trustor empowers each of said attorneys-in-fact to do any and every act which Trustor might do in its own behalf to fulfill the terms of this Mortgage, the other Loan documents and/or the Lease. It is further understood and agreed that the foregoing powers of attorney, which shall be deemed to be powers coupled with an interest, cannot be revoked. Trustor specifically agrees that all powers granted to Beneficiary and Servicer under this Mortgage may be assigned by Beneficiary to its successors or assigns as holder of the Note and by Servicer to its successors or assigns as servicer of the Loan.

24.    Late Payment Charge.    If any portion of the Debt is not paid on or before date on which it is due, Trustor shall pay to Beneficiary upon demand an amount equal to the lesser of five percent (5%) of such unpaid portion of the Debt or the maximum amount permitted by applicable law, to defray the expense incurred by Beneficiary in handling and processing such delinquent payment and to compensate Beneficiary for the loss of the use of such delinquent payment, and such amount shall be secured by this Deed of Trust and the Other Security Documents;

25.    Prepayment After Event of Default.    If following the occurrence of any Event of Default, Trustor shall tender payment of an amount sufficient to satisfy the Debt at any time prior to a sale of the Trust Property either through foreclosure or the exercise of other remedies available to Beneficiary under this Deed of Trust, such tender by Trustor shall be deemed to be a voluntary prepayment under the Note and this Deed of Trust in the amount tendered. If at the time of such tender prepayment of the principal balance of the Note is not permitted, Trustor shall, in addition to the entire Debt, also pay to Beneficiary a sum equal to interest which would have accrued on the principal balance of the Note at the Applicable Interest Rate from the date of such tender to the earlier of (i) the Maturity Date (as defined in the Note), or (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time such tender prepayment of the principal balance of the Note is permitted, Trustor shall, in addition to the entire Debt, also pay to Beneficiary the applicable prepayment consideration specified in the Note.

26.    Right of Entry.    Beneficiary and its agents shall have the right to enter and inspect the Trust Property at all reasonable times.

27.    Remedies.    (a)    Upon the occurrence of any Event of Default, Beneficiary may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Trustor and in and to the Trust Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary:

(i) declare the entire Debt to be immediately due and payable;

-24-

(ii) institute proceedings for the complete foreclosure of this Deed of Trust in which case the Trust Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed of Trust for the portion of the Debt then due and payable, subject to the continuing lien of this Deed of Trust for the balance of the Debt not then due;

(iv) sell for cash or upon credit the Trust Property or any part thereof and all estate, claim, demand, right, title and interest of Trustor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in the Note;

(vi) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Deed of Trust;

(vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Trust Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Trustor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii) enter into or upon the Trust Property, either personally or by its agents, servicers, nominees or attorneys and dispossess Trustor and its agents and servants therefrom, and thereupon Beneficiary may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Trust Property and conduct the business thereat; (B) complete any construction on the Trust Property in such manner and form as Beneficiary deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Trust Property; (D) exercise all rights and powers of Trustor with respect to the Trust Property, whether in the name of Trustor or otherwise, including, without limitation, the right to cancel, enforce or modify the Lease and, if the Lease shall no

-25-

longer be in effect, the right to make, cancel, enforce or modify new leases, obtain and evict tenants, and demand, sue for, collect and receive all earnings, revenues, rents, issues profits and other income of the Trust Property and every part thereof; and (E) apply the receipts from the Trust Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, assessments, insurance and Other Charges in connection with the Trust Property, as well as just and reasonable compensation for the services of Beneficiary, its counsel, agents and employees; or

(ix)  pursue such other rights and remedies as may be available at law and in equity.

In the event of a sale, by foreclosure or otherwise, of less than all of the Trust Property, this Deed of Trust shall continue as a lien on the remaining portion of the Trust Property.

(b)    The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Beneficiary under this Deed of Trust, whether under the provisions of this paragraph or otherwise, shall be applied by Beneficiary to the payment of the Debt in such priority and proportion as Beneficiary in its discretion shall deem proper, including, without limitation, to the payment of reasonable charges of Trustee in an amount permitted by law or such lesser amount as may be agreed upon between Beneficiary and Trustee.

(c)    To the extent permitted by applicable law, Beneficiary may adjourn from time to time any sale by Trustee to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Beneficiary, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)    Upon the completion of any sale or sales made by Beneficiary under or by virtue of this paragraph, Beneficiary, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Beneficiary is hereby irrevocably appointed the true and lawful attorney of Trustor, in is name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Trust Property and rights so sold and for that purpose Beneficiary may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Trustor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this paragraph shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or

-26-

in equity, of Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Trustor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Trustor.

(e)    Upon any sale made under or by virtue of this paragraph, Beneficiary may bid for and acquire the Trust Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Beneficiary is authorized to deduct under this Deed of Trust.

(f)    No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Trust Property or upon any other property of Trustor shall affect in any manner or to any extent the lien of this Deed of Trust upon the Trust Property or any part thereof, or any liens, rights, powers or remedies of Beneficiary hereunder, but such liens, rights, powers and remedies of Beneficiary shall continue unimpaired as before.

28.    Reasonable Use and Occupancy.    In addition to the rights which Beneficiary may have herein, upon the occurrence of any Event of Default, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Trust Property as may be occupied by Trustor or may require Trustor to vacate and surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise.

29.    Security Agreement.    This Deed of Trust is both a real property deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code.  The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property.  Trustor by executing and delivering this Deed of Trust has granted and hereby grants to Beneficiary and Trustee, as security for the Debt, a security interest in the Trust Property to the full extent that the Trust Property may be subject to the Uniform Commercial Code (said portion of the Trust Property so subject to the Uniform Commercial Code being called in this paragraph 29 the "Collateral").  If an Event of Default shall occur, Beneficiary and Trustee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Beneficiary and/or Trustee may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Beneficiary and/or Trustee, Trustor shall at its expense assemble the Collateral and make it available to Beneficiary and/or Trustee at a convenient place acceptable to Beneficiary and/or Trustee.  Trustor shall pay to Beneficiary and/or Trustee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Beneficiary and/or Trustee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral.  Any notice of sale, disposition or other intended action by Beneficiary and/or Trustee with respect to the Collateral sent to

-27-