WEC 95B GATEWAY LIMITED PARTNERSHIP
as Assignor

to

CAPITAL LEASE FUNDING, L.P.
as Assignee

ASSIGNMENT OF LEASE AND RENTS

Dated as of November 7, 1995

RECORD AND RETURN TO:
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York 10038
Attn: Michael J. Heneghan, Esq.

GATEWAY-ALR
0040722 02



EXHIBIT
Portland
H

ASSIGNMENT OF LEASE AND RENTS (herein, together with all modifications, supplements and amendments hereto, called this "Assignment"), dated as of November 7, 1995 made by WEC 95B GATEWAY LIMITED PARTNERSHIP, a Texas limited partnership having an address at 6750 LBJ Freeway, Dallas, Texas 75240 ("Assignor") to CAPITAL LEASE FUNDING, L.P., a Delaware limited partnership having an address at 85 John Street, New York, New York 10038 ("Assignee").

WITNESSETH:

WHEREAS, Assignor and Circuit City Stores, Inc. ("Lessee") have heretofore entered into a Lease Agreement, dated as of November 7, 1995 (herein, as it may from time to time be modified, supplemented or amended, called the "Lease") covering the lands and premises more particularly described in Exhibit A and all buildings and other improvements now or hereafter located thereon (collectively, the "Premises"); and

WHEREAS, simultaneously with the execution and delivery of this Assignment, Assignee is making a mortgage loan to Assignor in the principal amount of $5,269,220.00 (the "Loan") as evidenced by a Deed of Trust Note dated as of the date hereof by Assignor to Assignee (the "Note") and secured by a Deed of Trust, Security Agreement and Assignment of Leases and Rents of even date herewith by Assignor to Assignee, covering the Premises (the "Deed of Trust"); and

WHEREAS, Assignor has agreed to execute and deliver this Assignment for the purpose of securing the following (collectively, the "Obligations"): (i) the payment of the principal of, interest on, premium (if any) and all other amounts payable in respect of the Note and the Deed of Trust and (ii) the performance of the covenants and agreements contained herein and in the Note and the Deed of Trust;

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Assignor, as security for the Obligations, has assigned, transferred, conveyed and set over, and by these presents does hereby presently, unconditionally and irrevocably, assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease and the Lease Enhancement Policies (as defined in the Deed of Trust) (including, without limitation, all proceeds of such Lease Enhancement Policies and any unearned premiums on such policies), together with all rights, powers, privileges, options and other benefits of Assignor, as the lessor under the Lease, including, without limitation, the immediate and continuing right:

(a) to make claim for, receive and collect (and to apply the same to the payment of the Obligations) all rents (including, all basic rent and additional rent), income, revenues, issues, profits, insurance proceeds, condemnation proceeds, moneys, security deposits, and damages payable or receivable under the Lease or pursuant to any of the provisions thereof;

(b) to accept any offer by Lessee pursuant to the Lease to purchase the Premises or any part thereof, or any condemnation proceeds or insurance proceeds payable in connection with a loss or destruction thereof;

(c) to make all waivers and agreements of any kind; and

(d) to give all notices, consents, approvals, releases and other instruments.

2. This Assignment is executed as collateral security and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the Lease, nor shall any of the obligations contained in the Lease be imposed upon Assignee. Upon the payment of the Obligations, this Assignment and all rights herein assigned to Assignee shall cease and terminate and all estate, right, title and interest of Assignor in and to the Lease shall revert to Assignor, and Assignee shall, at the request and at the expense of Assignor, deliver to Assignor an instrument in recordable form cancelling this Assignment and reassigning the Lease without recourse, representation or warranty, to Assignor.

3. Assignor hereby presently, unconditionally and irrevocably designates Assignee to receive, and directs Lessee to pay to Assignee, all payments, payable or receivable under the Lease (including, without limitation, all payments of basic rent and additional rent, and other sums payable to the lessor under the Lease) and Assignor agrees to cause Lessee under the Lease to make such payments directly to Assignee as required hereunder in lieu of making such payments to Assignor. Assignee shall have the right to apply such payments to the payment of the Obligations as and when same shall be due. Such payments may be held by Assignee in an interest-bearing account and any interest or other investment income accruing on such payments shall be the property of Assignee. Any portion of any such rent payment received by Assignee which exceeds the amount of the Obligations due shall be paid to and retained by the Servicer (as defined in the Deed of Trust) for the benefit of Assignee. Assignor hereby designates Assignee to receive duplicate original copies of all notices, undertakings, demands, statements, offers, documents and other instruments and communications which Lessee is or may be required or permitted to give, make, deliver to or serve upon Assignor under the Lease. Assignor hereby directs Lessee to deliver to Assignee, at its address set forth below or at such other address as Assignee shall designate, duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications and no delivery thereof by Lessee shall be of any force or effect unless made to Assignee and Assignor.

4. Assignor represents and warrants to Assignee that (a) the Lease is in full force and effect and no default exists thereunder; (b) Assignor is the sole owner of the entire lessor's interest in the Lease; (c) Assignor has delivered to Assignee a true, correct and complete copy of the Lease as amended to the date hereof; (d) Assignor has full power and authority to execute and deliver this Assignment; (e) Assignor has not executed any other assignment of the subject matter of this Assignment; (f) none of the Rents reserved in the Lease have been assigned or otherwise pledged or hypothecated; (g) none of the Rents have been collected for

more than one (1) month in advance; and (h) there exist no offsets or defenses to the payment of any portion of the Rents.

5. Assignor shall not take any action as the lessor under the Lease or otherwise which is inconsistent with this Assignment, or make any other assignment, designation or direction inconsistent therewith, and any assignment, designation or direction inconsistent therewith shall be void. Assignor shall, from time to time upon the request of Assignee, execute all instruments of further assurance and all such supplemental instruments with respect to the transactions contemplated hereby as Assignee may specify.

6. Assignor further agrees with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything within the power of Assignor under the Lease to impair the value of the Lease as security for the Obligations; (b) shall promptly send copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Lease upon the part of the Lessee thereunder to be observed or performed, short of termination thereof; (d) shall not execute any other assignment of lessor's interest in the Lease (e) shall not alter, modify or change the terms of the Lease without the prior consent of Assignee, or cancel or terminate the Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or termination or diminution of the obligations of Lessee thereunder; (f) shall not alter, modify or change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without the prior consent of Assignee; and (g) shall not consent to any assignment of or subletting under the Lease not in accordance with the Lease terms, without the prior consent of Assignee.

7. Upon or at any time after an Event of Default (as defined in the Deed of Trust), Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent or servicer, with or without bringing any action or proceeding, or by a receiver appointed by a court, enforce its interest in the Lease and Rents and take possession of the Trust Property and have, hold, manage, lease and operate the Trust Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Trust Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee, in accordance with the provisions of the Lease, and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Trust Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Trust Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance (unless Lessee has provided self-insurance

-4-

pursuant to the terms of the Lease and the Deed of Trust) which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Trust Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option may require Assignor to pay monthly in advance to Assignee or the designee of Assignee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Trust Property as may be in possession of Assignor if the Lease has been terminated or is no longer in effect, or may require Assignor to vacate and surrender possession of the Trust Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. For purposes of this paragraph, Assignor grants to Assignee and the designee of Assignee its irrevocable power of attorney, coupled with an interest, after the occurrence of and Event of Default, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Trust Property. The exercise by Assignee of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Deed of Trust, the Lease, this Assignment or the Other Security Documents (as defined in the Deed of Trust).

       8.     Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Trust Property after an Event of Default or from any other act or omission of Assignee in managing the Trust Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease (other than such liabilities, obligations, claims, demands, damages, penalties, courses of action, losses, fines, costs and expenses arising from any action taken by Beneficiary in respect of the Trust Property after Beneficiary has taken title to the Trust Property by reason of foreclosure or deed-in-lieu thereof. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Deed of Trust and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby, the Note, and the Deed of Trust and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Trust Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Trust Property by the Lessee or any other parties, or for any dangerous or defective condition of the Trust Property, including without limitation the presence of any Hazardous

Substances (as defined in the Deed of Trust), or for any negligence in the management, upkeep, repair or control of the Trust Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

9. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

10. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Deed of Trust, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

11. Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Trust Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor, except as otherwise provided herein.

12. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeable in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Deed of Trust," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Trust Property" shall include any portion of the Trust Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Deed of Trust and all other sums due pursuant to the Note, the Deed of Trust, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

13. The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Deed of Trust, the Note or the Other Security Documents, (ii) the

release regardless of consideration, of the whole or any part of the Trust Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Deed of Trust or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, subject to the non-recourse provisions of paragraph 21 hereof, or any portion thereof or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

14.    Assignor hereby consents to, and covenants, represents and warrants to Assignee as follows:

(a)    Lessee has consented to this Assignment, and Assignor shall cause Lessee to pay and deliver to Assignee all rentals and other sums assigned to Assignee pursuant to this Assignment in accordance with the terms and provisions of the Lease, without offset, deduction, defense, deferment or abatement. Assignee shall cause Lessee not to seek to recover from Assignee for any reason whatsoever any moneys paid to Assignee by virtue of this Assignment. All sums payable to Assignee pursuant to this Assignment shall be paid to Assignee in immediately available funds on the due date thereof to Boatmen's First National Bank of Kansas City on behalf of Midland Loan Services, L.P., 2001 Shawnee Mission Parkway, Shawnee Mission, Kansas 66205, Attention: Capital Lease Funding, L.P. and CS First Boston Mortgage Capital Corp., Rent Escrow Account # 01021105901701, ABA # 1010000035, Reference: 286-4 WBC 95B Gateway Limited Partnership, or at such other address and/or account as shall be designated by Assignee by written notice to Lessee. Assignor agrees that no payment made by Lessee shall be effective to discharge the obligations of Lessee under the Lease to make such payments or be of any other force or effect unless paid to Assignee. Assignor shall, simultaneously with receipt or delivery thereof, deliver to Assignee duplicate original copies of all notices, undertakings, demands, statements, offers, documents and other instruments or communications which it is or may be required or permitted to give, make, serve or deliver pursuant to the Lease or which it receives from Lessee under the Lease.

(b)    Assignor shall cause Lessee not to enter into any agreement amending, modifying, waiving any provision of, or terminating (except as provided in the Lease) the Lease, nor shall Assignor permit Lessee to sublease all or any part of the Premises (except as provided in the Lease), without the prior consent of Assignee and any such attempted assignment, amendment, modification, waiver, termination or subleasing without such consent shall be void. If the Lease shall be amended as herein permitted, the Lease as so amended shall continue to be subject to this Assignment without the necessity of any further act by any of the parties hereto or Lessee. Assignor shall cause Lessee to remain obligated under the Lease in accordance with its terms, and

shall cause Lessee to not take any action to terminate (except as expressly permitted by the Lease), rescind or avoid the Lease, notwithstanding any action with respect to the Lessee which may be taken by any trustee or receiver of Assignor or of any assignee of Assignor or by any court in any bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution or other proceeding affecting Assignor or any assignee of Assignor. Assignor shall cause Lessee to acknowledge and agree to be bound by the license granted to Assignee and Servicer (as defined in the Deed of Trust) pursuant to Paragraph 23 (b) of the Deed of Trust.

15. If any term or provision of this Assignment or any application hereof shall be invalid or unenforceable, the remainder of this Assignment and any other application of such term or provision shall not be affected thereby.

16. Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Assignment, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

To Assignee:

Capital Lease Funding, L.P.
85 John Street, 12th Floor
New York, New York 10038
Attention: Paul McDowell, Esq.

with a copy concurrently to:

Cadwalader Wickersham & Taft
100 Maiden Lane
New York, New York 10038
Attention: W. Christopher White, Esq.

To Assignor:

WEC 95B Gateway Limited Partnership
6750 LBJ Freeway
Dallas, Texas 75240
Attn: Mr. Brett Landes

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, or (iii) if sent by certified mail, three (3) days after such notice has been sent by Assignor or Assignee.

-8-

17. This Assignment cannot be modified, changed or discharged except by an agreement in writing, duly acknowledged in form for recording, signed by the party against whom enforcement of such modification, change or discharge is sought.

18. This Assignment shall bind and inure to the benefit of the parties hereto and their respective successors and assigns and shall run with the Premises.

19. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

20. This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located.

21. The provisions of this Assignment are subject to the provisions of Paragraph 54 of the Deed of Trust.

IN WITNESS WHEREOF, the Assignor has caused this Assignment to be duly executed and delivered as of the date first above written.

          **WEC 95B GATEWAY LIMITED PARTNERSHIP,**
          a Texas limited partnership

By:   Wolverine Gateway, Inc.,
      a Texas corporation, its general partner

By: _____
     Name: James C. Leslie
     Title: President

State of New York    )
                     )
County of New York )

On __November 4, 1995__ before me, __Lorraine Michels__,
a Notary Public in and for said State, personally appeared James C. Leslie, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Lorraine Michels__                    (Seal)

LORRAINE MICHELS
Notary Public, State of New York
No. 52-4830738
Qualified in Suffolk County
Commission Expires 2-28-96

## EXHIBIT A

PARCEL I:

A Parcel of Land in the Southwest one quarter of the Southwest one quarter of Section 27, Township 1 North, Range 2 East, Willamette Meridian, City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at the Southwest corner of said Section 27, a Brass Disk located in a monument box at the Intersection of the centerlines of Northeast Halsey Street and Northeast 102nd Avenue; thence North 00° 34' 14" East, along the centerline of Northeast 102nd Avenue and the Section line, 407.92 feet; thence leaving said centerline South 89° 25' 46" East, 40.00 feet to the Easterly Right of Way line of Northeast 102nd Avenue, a brass screw with a brass washer stamped PLS 2045 and the True Point of Beginning of the herein described parcel; thence North 00° 34' 14" East, along said Easterly Right of Way line, 252.51 feet to a Brass Screw with a Brass Washer stamped PLS 2045; thence leaving said Right of Way line South 89° 34' 20" East, along the northerly line of said parcel as established by Circuit Court Decree Number 269-568 E, dated June 1, 1961, 462.36 feet; thence leaving said line South 00° 34' 05" West, 140.15 feet; thence North 89° 37' 00" West, 150.00 feet to the Westerly Right of Way line of Northeast 103rd Place; thence South 00° 34' 05" West, along said Westerly Right of Way line, 240.00 feet to the intersection of the Westerly Right of Way line of Northeast 103rd Place and the Northerly Right of Way line of Northeast Weidler Street; thence North 89° 37' 00" West, along the Northerly Right of Way line of Northeast Weidler Street, 157.43 feet to a 5/8 inch iron rod with a yellow plastic cap marked PLS 2045; thence continuing along said Right of Way line North 00° 38' 00" East, 128.00 feet; thence continuing along said Right of Way line North 89° 37' 00" West, 154.90 feet to the True Point of Beginning. Basis of Bearings Private Survey filed in the Multnomah County Surveyor's Office as Survey Number 53940.

PARCEL II:

A parcel of land in the Southwest one quarter of the Southwest one quarter of Section 27, Township 1 North, Range 2 East, Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, being the North 30 feet of Lot 3, HOUGHTON ADDITION, City of Portland, Multnomah County, Oregon, and described as follows:

Beginning at the Southwest corner of said Section 27, a brass disk located in a monument box at the intersection of the centerlines of Northeast Halsey Street and Northeast 102nd Avenue; thence North 61° 18' 06" East, 575.90 feet to a 5/8 inch iron rod with a yellow plastic cap marked PLS 2045 set at the Southeasterly corner of said parcel and a point on the Northerly right of way line of Northeast Weidler Street 40.00 feet North of the centerline of said Northeast Weidler Street and the true point of beginning of the herein described parcel; thence North 89° 37' 00" West, 100.00 feet to a 5/8 inch iron rod with a plastic cap marked LS 2045, set at the intersection of the North right of way line of Northeast Weidler Street and the Easterly right of way line of Northeast 103rd Place; thence North 00° 34' 05" East, along the Easterly right of way line of Northeast 103rd Place, 30.00 feet to the Northwest corner of said

Lot 3 of HOUGHTON ADDITION; thence leaving said right of way line, South 89° 37' 00" East, along the North line of said Lot 3, 100.00 feet to the Northeast corner of said Lot 3; thence along the East line of said Lot 3, South 00° 34' 05" West, 30.00 feet to the true point of beginning;

TOGETHER WITH right of access to Northeast Weidler across a 10 foot strip between said Northeast Weidler and the subject property included in contract recorded November 27, 1962, in Miscellaneous Book 349, page 660.

After Recording Return to:
Joyce Mayo, Legal Department
Midland Loan Services, Inc.
P. O. Box 25965
Shawnee Mission, KS 66225-5965

LIBER 855 PAGE 219

1278738

BOOK 4013 PAGE 689

3008-15872 531
FATIC

ASC 3058954

# LIMITED POWER OF ATTORNEY
## TO MIDLAND LOAN SERVICES, INC. FOR
## CAPITAL LEASE FUNDING SECURITIZATION, L.P.
## SERIES 1997-CTL1

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, Capital Lease Funding Securitization, L.P., as Depositor, Midland Loan Services, L.P., as Servicer, LaSalle National Bank, as Trustee, and ANB AMRO Bank, N.V., as Fiscal Agent, have entered into a Pooling and Servicing Agreement (the "PSA") dated as of January 15, 1997, pertaining to Corporate Credit-Backed Pass-Through Certificates Series 1997-CTL which provides in part that Midland Loan Services, L.P. shall administer and service certain "Mortgage Loans" as that term is defined in the PSA, in accordance with the terms of the PSA and the respective Mortgage Loans; and,

WHEREAS, in connection with the acquisition of substantially all the assets of Midland Loan Services, L.P. and by virtue of an assignment and assumption agreement, Midland Loan Services, Inc. ("Servicer") succeeded to the rights and obligations under the PSA of Midland Loan Services, L.P.; and,

WHEREAS, pursuant to the terms of the PSA, Servicer is granted certain powers, responsibilities and authority in connection with its servicing and administration subject to the terms of the PSA; and,

WHEREAS, Trustee has been requested by Servicer pursuant to Section 3.1.(a) of the PSA to grant this Limited Power of Attorney to Servicer to enable Servicer to execute and deliver, on behalf of the Trustee, certain documents and instruments related to the Mortgage Loans thereby empowering Servicer to take such actions as it deems necessary to comply with its servicing, administrative and management duties under and in accordance with the PSA.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS:

LaSalle National Bank, a national bank, whose principal office address is 135 South LaSalle Street, Suite 200, Chicago, IL 60603, solely in its capacity as trustee (in such capacity hereinafter called "Trustee") under the PSA, and not in its corporate capacity, does make, constitute and appoint Midland Loan Services, Inc., a Delaware Corporation, 210 West 10th Street, Kansas City, Missouri 64105, Trustee's true and lawful agent and attorney in fact with respect to the Mortgage Loans held by the Trustee in its capacity as Trustee in Trustee's name, place and stead, to prepare, execute and deliver: (i) any and all financing statements, continuation statements and other documents or instruments necessary to maintain the validity, enforceability, perfection and priority of the lien created by a mortgage or deed of trust or similar instrument on each mortgage property and related collateral (the "Mortgaged Property") securing a Mortgage Loan held by the Trustee and serviced for the Trustee by Servicer; (ii) subject to the provisions of the PSA, modifications, waivers, consents, assumptions, amendments or subordinations with

PB-00088 -906

02/10/04 MF
09:25

EXHIBIT
Portland
I

I:\data\legal\smc\poa\97C5.doc

LIBER 855 PAGE 220        BOOK 4013 PAGE 690

respect to a Mortgage Loan or documents relating thereto; (iii) any and all assignments, deeds, deeds of release and reconveyance, satisfactions of mortgage, termination statements and any and all other instruments of satisfaction, assignment, conveyance, instruction or cancellation, or of partial or full release or discharge and all other comparable instruments with respect to the Mortgage Loans and the Mortgaged Properties, which are customarily and reasonably necessary and appropriate to assign, partially release, or fully release or discharge upon payment in full and discharge in full all sums secured thereby, whether the Trustee is named therein as mortgagee or beneficiary or has become mortgagee or beneficiary by virtue of assignment of such mortgage, deed of trust or deed to secure debt; (iv) any and all instruments necessary or appropriate for the judicial or nonjudicial foreclosure of, the taking of a deed in lieu of foreclosure with respect to, or the conversion of title to any Mortgaged Property securing a Mortgage Loan owned by the Trustee and serviced by the Servicer for the Trustee; and, consistent with the authority granted by the PSA; to take any and all actions on behalf of the Trustee in connection with maintaining and defending the enforceability of such Mortgage Loan obligation including but not limited to the execution of any and all instruments necessary or appropriate in defense of and for the collection and enforcement of said Mortgage Loan obligation in accordance with the terms of the PSA.

## ARTICLE I

The enumeration of particular powers hereinabove is not intended in any way to limit the grant to Servicer as the Trustee's attorney in fact of full power and authority with respect to the Mortgage Loans to execute and deliver any such documents, instrument or other writing, as fully, to all intents and purposes, as Trustee might or could do if personally present, hereby ratifying and confirming whatsoever such attorney in fact shall and may do by virtue hereof; and Trustee agrees and represents to those dealing with such attorney in fact that they may rely upon this power of attorney until termination of the power of attorney under the provisions of Article III below. As between and among Trustee, the Certificateholders, the Trust Fund and Servicer, Servicer may not exercise any right, authority or power granted by this instrument in a manner which would violate the terms of the PSA or the servicing standard imposed on Servicer by the PSA, but any and all third parties dealing with Servicer as Trustee's attorney in fact may rely completely, unconditionally and conclusively on Servicer's authority and need not make inquiry about whether Servicer is acting pursuant to the PSA or such standard. Any purchaser, title company or other third party may rely upon a written statement by Servicer that any particular loan or property in question is subject to and included under this power of attorney and the PSA.

## ARTICLE II

An act or thing lawfully done hereunder by Servicer shall be binding on Trustee and Trustee's successor and assigns.

## ARTICLE III

This power of attorney shall continue in full force and effect from the date hereof until the earliest occurrence of any of the following events, unless sooner revoked in writing by the Trustee:

-2-

I:\data\legal\sme\poa\97C5.doc

LIBER 855 PAGE 221

BOOK 4013 PAGE 691

(i) the suspension or termination of this Limited Power of Attorney by the Trustee;

(ii) the transfer of both servicing and special servicing under the PSA from Servicer to another Servicer;

(iii) the appointment of a receiver or conservator with respect to the business of Servicer, or

(iv) the filing of a voluntary or involuntary petition in bankruptcy by or against Servicer.

Nothing herein shall be deemed to amend or modify the PSA or the respective rights, duties or obligations of the Trustee or Servicer thereunder, and nothing herein shall constitute a waiver of any rights or remedies thereunder.

IN WITNESS WHEREOF, the Trustee has caused this instrument to be executed and its corporate seal to be affixed hereto by its officer duly authorized as of the ___8___ day of ___APRIL___, 1998.

(SEAL)

LaSalle National Bank, as Trustee of
Corporate Credit-backed pass-Through Certificates
Series 1997-CTL1
(and not in its corporate capacity)

By_____
Russell M. Goldenberg
Senior Vice President

ATTEST:

_____
Secretary or Assistant Secretary
CYNTHIA REIS
Vice President

- 3 -

I:\data\legal\smc\poa\97C5.doc

R &R
MIDLAND LOAN SERVICES INC
ATTN COLLATERAL SERVICES /PLJ
10851 MASTIN SUITE 300
BUILDING 82 CORPORATE WOODS
OVERLAND PARK, KS 66210

LIBER 855 PAGE 222

BOOK 4013 PAGE 692

STATE OF ILLINOIS    )
                     ) ss.
COUNTY OF COOK       )

On this __8__ day of __APRIL__, 1998, before me personally appeared Russell M. Goldenberg, to me personally known, who, being by me duly sworn, did acknowledge and say that he is the Vice President of LaSalle National Bank, a national bank, as Trustee, and that the seal affixed to the foregoing instrument is the corporate seal of said corporation by authority of its board of directors, and said Russell M. Goldenberg did acknowledge said instrument to be the free act and deed of said corporation.

Notary Public
My Commission expires: __05-09-99__

"OFFICIAL SEAL"
BETTYE McDOWELL
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 05/09/1999

State of Kansas, County of Wyandotte, ss.
I, THOMAS W. GRONEMEN, Register of Deeds in and for the County and State aforesaid, do hereby certify that the foregoing is a true and correct copy of an instrument of writing filed in this office on the __20__ day of __AUG__, 19__98__ as the same appears of record in book __4013__ at page __689__
WITNESS, my hand and seal, this __20__ day of __AUG__, 19__98__

_____
Register of Deeds/Deputy

12778738
STATE OF KS.
WYANDOTTE COUNTY
RECEIVED FOR RECORD
98 AUG 20 P 12:35 30
THOMAS W. GRONEMAN
REGISTER OF DEEDS
BY _____ DEP.

-4-

I:\data\legal\sme\poa\97C5.doc

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

RWHITTEN@FULBRIGHT.COM
DIRECT DIAL: (202) 662-4531

TELEPHONE:  (202) 662-0200
FACSIMILE:  (202) 662-4643

January 14, 2010

**VIA FEDERAL EXPRESS**
U.S. Bankruptcy Court
Clerk of the Court
701 E. Broad Street, Suite 4000
Richmond, VA 23219

Re:  *In re Circuit City Stores, Inc., et al.*
     **Chapter 11, Jointly Administered**
     **Case No. 08-35653 (KRH)**

Dear Clerk of the Court:

Enclosed with this letter please find one original and two copies of the *Notice of Transfer of Claim Pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2)* to be filed in the above-referenced bankruptcy case related to the following claim:

❖ KC 12311 (unsecured claim of Mayfair ORCC Business Trust).

Please return the two copies marked "COPY" to me in the self-addressed stamped envelope provided for that purpose. In accordance with Rule 3001(e), Midland Loan Services, Inc. ("**Midland**") requests that the Clerk of the Bankruptcy Court immediately notify Mayfair ORCC Business Trust ("**Mayfair**") of this Notice of Transfer and that, absent the filing of an objection within twenty (21) days of the mailing of said notice, Midland be deemed to be the transferee of the claim of Mayfair as described above, and that Midland be substituted for Mayfair for purposes of all further proceedings relating to said claims and distributions thereon.

If you have any questions, please contact me.

Regards,

Reid Whitten

RSW/lss
Enclosures

85451654.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC