LEASE CERTIFICATE

The undersigned certifies that attached hereto is a true and correct copy of the Lease Agreement to be entered into by and between the undersigned and Circuit City Stores, Inc. with respect to the property located at 1612 S. Stratford Road, Winston-Salem, North Carolina.

WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP

By: Wolverine Winston-Salem, Inc.

By: _____

Its: _____

As of 11/7/95



LOCATION:  910 Hanes Mall Boulevard
Winston-Salem, NC
#830

## LEASE

between

## CIRCUIT CITY STORES, INC.,

as Tenant

and

## WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP,

as Landlord

dated November 7, 1995

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| 1. | Certain Definitions | 1 |
| 2. | Demise of Premises | 5 |
| 3. | Term | 6 |
| 4. | Rent | 6 |
| 5. | Net Lease; True Lease | 7 |
| 6. | Title and Condition | 8 |
| 7. | Taxes; Insurance and Legal Requirements | 10 |
| 8. | Use | 11 |
| 9. | Maintenance and Repair | 12 |
| 10. | Liens | 13 |
| 11. | Alterations | 14 |
| 12. | Condemnation | 14 |
| 13. | Insurance | 18 |
| 14. | Damage, Destruction | 21 |
| 15. | Restoration | 22 |
| 16. | Subordination to Financing | 23 |
| 17. | Assignment, Subleasing | 25 |
| 18. | Permitted Contests | 29 |
| 19. | Default | 30 |

-i-

<u>TABLE OF CONTENTS</u>
(Continued)

| | | Page |
|---|---|---|
| 20. | Landlord's Remedies | 31 |
| 21. | Notices | 33 |
| 22. | Memorandum of Lease; Estoppel Certificates | 34 |
| 23. | Surrender and Holding Over | 35 |
| 24. | No Merger of Title | 36 |
| 25. | Landlord Exculpation | 36 |
| 26. | Hazardous Substances | 37 |
| 27. | Entry by Landlord | 38 |
| 28. | Statements | 39 |
| 29. | No Usury | 39 |
| 30. | Broker | 39 |
| 31. | Waiver of Landlord's Lien | 39 |
| 32. | No Waiver | 40 |
| 33. | Separability | 40 |
| 34. | Indemnification | 40 |
| 35. | Lender as Third Party Beneficiary | 41 |
| 36. | Tenant to Comply With Reciprocal Easement Agreement | 41 |
| 37. | Headings | 42 |
| 38. | Modifications | 42 |

-ii-

## TABLE OF CONTENTS
(Continued)

| | | Page |
|---|---|---|
| 39. | Successors, Assigns | 42 |
| 40. | Counterparts | 42 |
| 41. | Governing Law | 42 |
| 42. | Transfer of Landlord's Interest | 42 |
| 43. | Lot Lease; Ground Lease | 42 |
| 44. | Attorneys' Fees | 44 |

SENT BY: XEROX Telecopier 7017;11- 7-85 ; 1:08AM ;    21474553800→    →0BE88858#:5

THIS LEASE AGREEMENT is made as of this 7th day of November, 1995, by and between WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP, a Texas limited partnership, having its principal place of business at 6750 LBJ Freeway, Suite 1100, Dallas, Texas 75240 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having its principal office at 9950 Mayland Drive, Richmond, Virginia  23233-1464 ("Tenant").

In consideration of the rents and provisions herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1.     Certain Definitions.

(a)     "Additional Rent" shall mean all sums required to be paid by Tenant to Landlord or Lender hereunder other than Basic Rent, which sums shall constitute rent hereunder.

(b)     "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

(c)     "Alteration" or "Alterations" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements, both interior or exterior, and ordinary and extraordinary.

(d)     "Basic Rent" shall mean Basic Rent as defined in Paragraph 4.

(e)     "Basic Rent Payment Dates" shall mean the Basic Rent Payment Dates as defined in Paragraph 4.

(f)     "Claim Deadline" shall mean the Claim Deadline as defined in paragraph 34.

(g)     "Commencement Date" shall mean the Commencement Date as defined in Paragraph 3.

(h)     "Condemnation" shall mean a Taking and/or a Requisition.

(i)     "Cross Defaulted Leases" shall be those leases with Landlord dated as of the date hereof affecting the premises (other than the Leased Premises) listed on Exhibit

MWBB 11/6/95
776\circuit\winston\lease.wc

SENT BY: XEROX Telecopier 7010;11-7-95 ; 1:09AM ;            21474558380→            ←5046893#: 6

D attached hereto and made a part hereof; provided, however, that Landlord and Lender may unilaterally amend Exhibit D, by serving written notice upon Tenant of its election to do so, to delete (but not to add) the listing of any such lease.

     (j)    "Default Rate" shall mean an annual rate of interest equal to two (2%) percent per annum above the then current Prime Rate.

     (k)    "Event of Default" shall mean an Event of Default as defined in Paragraph 19.

     (l)    "Ground Lease" shall mean that certain Amended and Restated Lease Agreement dated December 29, 1994 between W/S Stratford, LLC, as lessee, and Harley P. Graves, Jr. and Nellie W. Graves, as lessor.

     (m)    "Insurance Requirement" or "Insurance Requirements" shall mean, as the case may be, any one or more of the terms of each insurance policy required to be carried by Tenant under this Lease and the requirements of the issuer of such policy, and whenever Tenant shall be engaged in making any Alteration or Alterations, repairs or construction work of any kind (collectively, "Work"), the term "Insurance Requirement" or "Insurance Requirements" shall be deemed to include a requirement that Tenant obtain or cause its contractor to obtain completed value builder's risk insurance when the estimated cost of the Work in any one instance exceeds the sum of One Hundred Thousand ($100,000.00) Dollars and that Tenant or its contractor shall obtain worker's compensation insurance or other adequate insurance coverage covering all persons employed in connection with the Work, whether by Tenant, its contractors or subcontractors and with respect to whom death or bodily injury claims could be asserted against Landlord.

     (n)    "Law" shall mean any constitution, statute or rule of law.

     (o)    "Leased Premises" shall mean the Leased Premises as defined in Paragraph 2.

     (p)    "Legal Requirement" or "Legal Requirements" shall mean, as the case may be, any one or more of all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those

**MWBB 11/6/95**

which by their terms are not applicable to and do not impose any obligation on Tenant, Landlord or the Leased Premises) and all covenants, restrictions and conditions (including, without limitation, reciprocal easement agreements) now or hereafter of record which may be applicable to Tenant, to Landlord or to any of the Leased Premises, or to the ownership, use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Leased Premises, even if compliance therewith (i) necessitates structural changes or improvements (including changes required to comply with the "Americans with Disabilities Act") or results in interference with the use or enjoyment of any of the Leased Premises or (ii) requires Tenant to carry insurance other than as required by the provisions of this Lease.

(q)     "Lender" shall mean the entity identified from time to time, to Tenant as such in writing, which makes a Loan to Landlord, secured by a Mortgage and evidenced by a Note or which is the holder of a Mortgage and Note as a result of an assignment thereof.

(r)     "Loan" shall mean a loan made by a Lender to Landlord secured by a Mortgage and evidenced by a Note.

(s)     "Lot Lease" means that certain sublease dated December 29, 1994 between Tenant, as sublessee, and W/S Stratford, LLC, as sublessor, which affects the same property that is the subject of the Ground Lease.

(t)     "Mortgage" shall mean a first priority mortgage, deed of trust or similar security instrument hereafter executed covering the Leased Premises from Landlord to and for the benefit of Lender.

(u)     "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any actual and reasonable expenses incurred by Landlord in collecting such award.

(v)     "Net Proceeds" shall mean the entire proceeds paid as a result of any property casualty payable under insurance required under Paragraph 13.(a), less any actual and reasonable expenses incurred by Landlord in collecting such proceeds.

.SENT BY: XEROX Telecopier 7010;11-·4-95-;·1:10AM ;   2147465580→   +0840888;# 8

(w)    "Note" or "Notes" shall mean a promissory note or notes hereafter executed from Landlord to Lender, which Note or Notes will be secured by a Mortgage and an assignment of leases and rents.

(x)    "Permitted Encumbrances" shall mean Taxes, Legal Requirements, any matters consented to by Tenant, those covenants, restrictions, reservations, liens, conditions, encroachments, easements and other matters of title, including, without limitation, the terms and conditions of the Lot Lease and the Ground Lease that affect the Leased Premises as of Landlord's acquisition thereof, whether recorded or unrecorded excepting, however, any such matters arising from the acts of Landlord (such as liens arising as a result of judgments against Landlord) unless consented to by Tenant or requested by Tenant under Section 6(d).

(y)    "Prime Rate" shall mean the rate of interest announced publicly by Citibank, N.A. or its successor, from time to time, as Citibank, N.A.'s or such successor's base rate, or if there is no such base rate, then the rate of interest charged by Citibank, N.A. or such successor to its most creditworthy customers on commercial loans having a ninety (90) day duration.

(z)    "Rent" shall mean Basic Rent and Additional Rent, collectively.

(aa)    "Requisition" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

(ab)    "Restoration" shall mean the restoration of the Leased Premises after any Taking or damage by casualty, as nearly as possible to their value, condition and character existing immediately prior to such Taking or damage.

(ac)    "State" shall mean the State or Commonwealth in which the Leased Premises are situate.

(ad)    "Taking" shall mean any taking of any of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such

MWBB 11/6/95

SENT BY: XEROX Telecopier 7021 ;11-7-95 ; 1:10AM ;    21474556880→    ←0885452412    504898218 #

condemnation or other eminent domain proceedings or by any other means, or any *de facto* condemnation.

(ae)   "Taxes" shall mean taxes of every kind and nature (including real, *ad valorem* and personal property, income, franchise, withholding, profits and gross receipts taxes), all charges and/or taxes for any easement or agreement maintained for the benefit of any of the Leased Premises, all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and other utility charges, all ground rents, and all other public charges and/or taxes whether of a like or different nature, even if unforeseen or extraordinary, imposed upon or assessed, prior to or during the Term, against Landlord, Tenant or any of the Leased Premises as a result of or arising in respect of the ownership, occupancy, leasing, use, maintenance, operation, management, repair or possession thereof, or any activity conducted on the Leased Premises, or the Basic Rent or Additional Rent, including without limitation, any gross income tax, sales tax, occupancy tax or excise tax levied by any governmental body on or with respect to such Basic Rent or Additional Rent.

(af)   "Term" shall mean the initial term of this Lease, as extended pursuant to any renewal that has become effective.

(ag)   "Termination Date" shall mean the Termination Date as defined in Paragraph 12.(b).

(ah)   "Trade Fixtures" shall mean all warehouse racking systems, counters, cases, shelving and similar fixtures, which are owned by Tenant and used in the operation of the business conducted on the Leased Premises.

2.   <u>Demise of Premises</u>.   Landlord hereby leases (but with respect to the property that is subject of the Lot Lease, Landlord hereby sub-subleases), demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the Term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) the premises described in Exhibit "A" attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively, the "Land"); (ii) the buildings, structures, fixtures and other improvements constructed and to be constructed on the Land (collectively, the "Improvements"), together with

MWBB 11/6/95

5

all Alterations and other additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease excepting therefrom Tenant's Trade Fixtures.

3.    Term.  Tenant shall have and hold the Leased Premises for an initial term commencing on November 7, 1995 (the "Commencement Date") and ending on November 30, 2017 (the "Expiration Date").  Provided the Lease shall not have been terminated pursuant to the provisions hereof, this Lease and the term thereof shall be automatically extended for two (2) renewal terms of ten (10) years each upon condition that (a) at the commencement of each renewal term, no Event of Default shall exist (provided, that, Landlord may, in its sole discretion, waive the condition of this Paragraph 3(a)), and (b) Tenant may cancel any renewal term by giving notice, in accordance with the provisions of Paragraph 21, to Landlord at least twelve (12) months prior to the expiration of the then current Term.  Upon the giving of such notice this Lease and the Term thereof shall terminate and come to an end on the Expiration Date of the then current Term.  Any such extension or renewal of the Term shall be subject to all of the provisions of this Lease, and all such provisions shall continue in full force and effect, except that the Basic Rent for each renewal term shall be the amounts determined in accordance with the schedule set forth in Exhibit "B" attached hereto and made a part hereof.  In the event that Tenant exercises its option to cancel any renewal Term as hereinabove provided, then Landlord shall have the right during the remainder of the Term then in effect to (i) advertise the availability of the Leased Premises for sale or for reletting, and (ii) show the Leased Premises to prospective purchasers, lenders or tenants at such reasonable times during normal business hours as Landlord may select.  If Tenant shall timely give such notice of its election to cancel any renewal option, then all options with regard to subsequent extensions or renewals of the Term shall expire and be null and void.

4.    Rent.

(a)    Tenant shall pay to Landlord or Lender, if directed by Landlord or Lender, as annual rent for the Leased Premises during the Term, the amounts determined in accordance with the schedule set forth in Exhibit "B" attached hereto and made a part hereof ("Basic Rent"), which rent shall be paid in equal monthly installments commencing on the last day of the first month next following the Commencement Date and continuing on the last day

**MWBB 11/6/95**
77635chreslfscsratancfsleasa.bw

of each month thereafter during the Term (the said days being called the "Basic Rent Payment Dates"), and shall pay the same at Landlord's address set forth below, or at such other place or to such other person or persons (not exceeding four (4) in number) and in such proportions as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America and if required by Landlord or Lender by wire transfer in immediately available federal funds to such account in such bank as Landlord or Lender shall designate from time to time.  Pro rata Basic Rent shall be due for the period from and including the Commencement Date to the first day of the month next following the Commencement Date computed as set forth in Exhibit "B" and shall be paid in advance on the Commencement Date, except that if the Commencement Date shall occur on the first day of a calendar month, the full monthly installment of Basic Rent for such first month shall be paid on the last day of the month in which the Commencement Date shall occur.

(b)    If any installment of Basic Rent is not paid on the date due, Tenant shall pay Landlord interest on such overdue payment at the Default Rate, accruing from the due date of such payment until the same is paid.

(c)    Tenant shall pay and discharge before the imposition of any fine, lien, interest or penalty may be added thereto for late payment thereof, as Additional Rent, all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added by the party to whom such payment is due for nonpayment or late payment thereof.  In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent.

5.    Net Lease; True Lease.  (a) It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events, and that the obligations of Tenant hereunder shall continue unaffected, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.  This is a net Lease and Basic Rent, Additional

MWBB 11/6/95

7

SENT BY: XEROX Telecopier 7021;11-9-95 ; 1:12AM ;    21474556390+    50466838;#12

Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense, except as otherwise specifically set forth herein. Tenant shall pay all operating expenses related to the leasing, use, occupancy, management, maintenance, repair, operation or possession of the Leased Premises, and to the extent required hereunder, Taxes and insurance costs. This Lease shall not terminate and Tenant shall not have any right to terminate this Lease, during the Term (except as otherwise expressly provided herein). Tenant agrees that, except as otherwise expressly provided herein, it shall not take any action to terminate, reject, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, Tenant or any assignee or subtenant of Tenant, (ii) the exercise of any remedy, including foreclosure, under the Mortgage, or (iii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord under the Federal Bankruptcy Code or by any trustee, receiver or liquidator of Landlord or by any court under the Federal Bankruptcy Code or otherwise, or (iv) the conditions of the Leased Premises. Tenant waives all rights which are not expressly stated herein but which may now or hereafter otherwise be conferred by law to quit, terminate or surrender this Lease or any of the Leased Premises; to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein; and for any statutory lien or offset right against Landlord or its property.

(b)     Landlord and Tenant agree that this Lease is a true lease and does not represent a financing arrangement. Each party shall reflect the transaction represented hereby in all applicable books, records and reports (including income tax filings) in a manner consistent with "true lease" treatment rather than "financing" treatment.

6.     Title and Condition.

(a)     The Leased Premises are demised and let subject to the Permitted Encumbrances and all Legal Requirements and Insurance Requirements, including any existing violation of any thereof, without representation or warranty by Landlord; it being understood and

**MWBB 11/6/95**

SENT BY: XEROX Telecopier 7011;11- 9-96 ; 1:13AM ;        2147465980→        5048898;#13

agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b)    EXCEPT FOR LANDLORD'S WARRANTY SET FORTH IN PARAGRAPH 8.(c), THE LANDLORD MAKES NO, AND EXPRESSLY HEREBY DENIES ANY, REPRESENTATIONS OR WARRANTIES REGARDING THE CONDITION OR SUITABILITY OF, OR TITLE TO, THE LEASED PREMISES. TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, TENANT WAIVES ANY RIGHT OR REMEDY OTHERWISE ACCRUING TO TENANT ON ACCOUNT OF THE CONDITION OR SUITABILITY OF THE LEASED PREMISES, OR (EXCEPT WITH RESPECT TO LANDLORD'S WARRANTY SET FORTH IN PARAGRAPH 8(C)) TITLE TO THE LEASED PREMISES, AND TENANT AGREES THAT IT TAKES THE LEASED PREMISES "AS IS," WITHOUT ANY SUCH REPRESENTATION OR WARRANTY.

(c)    Landlord hereby conditionally assigns, without recourse or warranty whatsoever, to Tenant, all warranties, guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of any of the Leased Premises, including, but not limited to, any rights and remedies existing under contract or pursuant to the Uniform Commercial Code (collectively, the "guaranties"). Such assignment shall remain in effect so long as no Event of Default exists hereunder or until the termination of this Lease. Landlord shall also retain the right (but without any obligation to do so) to enforce any guaranties assigned in the name of Tenant or Landlord upon the occurrence of an Event of Default. Landlord hereby agrees to execute and deliver at Tenant's expense such further documents, including powers of attorney (which shall contain indemnity agreements from Tenant to Landlord which shall be in form reasonably satisfactory to Landlord), as Tenant may reasonably request (and which in the good faith judgment of Landlord, do not adversely affect a substantial general interest of Landlord), in order that Tenant may have the full benefit of the assignment of guaranties effected or intended to be effected by this Paragraph 6(c). Upon the occurrence of an Event of Default or termination of this Lease, the guaranties shall automatically revert to Landlord. The foregoing provision of reversion shall be self-operative and no further instrument of reassignment shall be required. In confirmation

**MWBB 11/6/95**

9

of such reassignment Tenant shall execute and deliver promptly any certificate or other instrument which Landlord may request. Any monies collected by Tenant under any of the guaranties after the occurrence of and during the continuation of an Event of Default shall be held in trust by Tenant and promptly paid over to Landlord.

(d)    Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants, waivers, approvals or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises or properties adjacent thereto (collectively, "Easements") as requested by Tenant, subject to Lender's and Landlord's approval of the form thereof, not to be unreasonably withheld or delayed; provided, however, that no such Easement shall result in any diminution in the value or utility of the Leased Premises for use as a retail store site and further provided that no such Easement shall render the use of the Leased Premises dependent upon any other property or condition the use of the Leased Premises upon the use of any other property. If either Landlord or Lender shall fail to approve or disapprove the form of any such Easements, within a period of thirty (30) days from receipt, then either Landlord or Lender, as the case may be, shall be deemed to have approved the form of any such Easement.

7.    Taxes; Insurance and Legal Requirements.

(a)    Tenant shall, subject to the provisions of Paragraph 18 hereof relating to contests, before interest or penalties are due thereon, pay and discharge all Taxes. Landlord shall promptly deliver to Tenant any bill or invoice it receives with respect to any Tax. Nothing herein shall obligate Tenant to pay, and the term "Taxes" shall exclude, federal, state or local (i) franchise, capital stock or similar taxes if any, of Landlord, (ii) income, excess profits or other taxes, if any, of Landlord, determined on the basis of or measured by its net income, or (iii) any estate, inheritance, succession, gift, capital levy or similar taxes unless the taxes referred to in clauses (i) and (ii) above are in lieu of or a substitute for any other tax or assessment upon or with respect to any of the Leased Premises which, if such other tax or assessment were in effect at the commencement of the Term, would be payable by Tenant. In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments which become due and payable in respect of the Term. Tenant shall

prepare and file all tax reports required by governmental authorities which relate to the Taxes. Tenant shall deliver to Landlord, (i) within twenty (20) days of Landlord's request therefor, copies of all settlements and notices pertaining to the Taxes which may be issued by any governmental authority and (ii) receipts for payments of all Taxes made during each calendar year of the Term within thirty (30) days after payment.

(b)    Tenant shall promptly comply with and conform to all of the Legal Requirements and Insurance Requirements, subject to the provisions of Paragraph 18 hereof.

8.    Use.

(a)    Tenant may use the Leased Premises for any lawful purpose other than any use that will (i) have an adverse effect on the value of the Leased Premises, (ii) increase the likelihood that Landlord or Lender would incur liability under any provisions of the Acts referred to in Paragraph 26 of this Lease, or (iii) result or give rise to any material environmental deterioration or degradation of the Leased Premises. In no event shall the Leased Premises be used for any purpose which shall violate any of the provisions of any recorded covenants, restrictions or agreements applicable to the Leased Premises or to any shopping center of which the Leased Premises may be a part. Tenant agrees that with respect to any such recorded covenants, restrictions or agreements, Tenant shall observe, perform and comply with and carry out the provisions thereof required therein to be observed and performed by Landlord.

(b)    Subject to Tenant's rights of contest under Paragraph 18 hereof, Tenant shall not permit any unlawful occupation, business or trade to be conducted on any of the Leased Premises or any use to be made thereof contrary to applicable Legal Requirements or Insurance Requirements. Subject to Tenant's rights of contest under Paragraph 18 hereof, Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance which Tenant is required hereunder to maintain then in force with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain any insurance which Tenant is required to furnish hereunder, (iv) cause any

injury or damage to any of the Improvements unless pursuant to Alterations permitted under Paragraph 11 hereof, or (v) constitute a public or private nuisance or waste.

(c) Subject to all of the provisions of this Lease, so long as no Event of Default exists hereunder, Landlord covenants that neither it nor any party claiming by, through or under it, shall do any act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord may enter upon and examine any of the Leased Premises at reasonable times after reasonable notice and during business hours and exercise any rights and privileges granted to Landlord under the provisions of this Lease.

9.    Maintenance and Repair.

(a) Except for any alterations that Tenant is permitted to make hereunder, Tenant shall at all times, including without limitation, any Requisition period, put, keep and maintain the Leased Premises, including, without limitation, the roof, landscaping, walls, footings, foundations, HVAC, mechanical and electrical systems in or serving the Leased Premises and structural and nonstructural components and systems of the Leased Premises, and the Adjoining Property, in good repair and appearance, and shall promptly make all repairs and replacements (substantially equivalent in quality and workmanship to the original work) of every kind and nature, whether foreseen or unforeseen, which may be required to be made upon or in connection with any of the Leased Premises in order to keep and maintain the Leased Premises in as good repair and appearance as they were originally, except for ordinary wear and tear. Tenant shall do or cause others to do all shoring of the Leased Premises or Adjoining Property or of foundations and walls of the Improvements and every other act necessary or appropriate for preservation and safety thereof, by reason of or in connection with any excavation or other building operation upon any of the Leased Premises or Adjoining Property, whether or not Landlord shall, by reason of any Legal Requirements or Insurance Requirements, be required to take such action or be liable for failure to do so. Landlord shall not be required to make any repair, replacement, maintenance or other work whatsoever, whether foreseen or unforeseen, or to maintain any of the Leased Premises or Adjoining Property in any way, and Tenant hereby expressly waives the right to make repairs, replacements or to perform maintenance or other work at the expense of the Landlord, which right may be provided for in any law now or hereafter in

**MWBB 11/6/95**

12

effect. Nothing in the preceding sentence shall be deemed to preclude Tenant from being entitled to insurance proceeds or condemnation awards for Restoration pursuant to the terms of this Lease. Tenant shall, in all events, make all repairs, replacements and perform maintenance and other work for which it is responsible hereunder promptly, and all repairs, replacements, maintenance and other work  shall be in a good, proper and workmanlike manner.

(b)    If Tenant shall be in default under any of the provisions of this Paragraph 9, Landlord may, after thirty (30) days notice to Tenant and failure of Tenant to commence to cure during said period or to diligently prosecute such cure to completion once begun, but immediately upon notice in the event of an emergency, do whatever is necessary to cure such default as may be reasonable under the circumstances for the account of and at the expense of Tenant.  In the event of an emergency, before Landlord may avail itself of its rights under this Paragraph 9(b), Landlord shall send notice to Tenant of the situation by phone or other available communication.  All actual and reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred by Landlord, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional Rent payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.

(c)    Tenant shall from time to time replace with other operational equipment or parts any of the mechanical systems or other equipment included in the Improvements which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation, or been lost, stolen, damaged or destroyed.  Tenant shall repair at its sole cost and expense all damage to the Leased Premises caused by the removal of equipment or other personal property of Tenant.

10.    Liens.  Tenant shall not, directly or indirectly, create or permit to be created or to remain, and shall promptly discharge, any lien on any of the Leased Premises, on the Basic Rent, Additional Rent or on any other sums payable by Tenant under this Lease, other than the Mortgage (and any assignment of leases or rents collateral thereto), the Permitted Encumbrances and any mortgage, lien, encumbrance or other charge created by or resulting from any act or omission by Landlord or those claiming by, through or under Landlord (except Tenant).

SENT BY: XEROX Telecopier 7011;11- 9-95 ; 1:18AM ;      2147455880→

11.   Alterations.  Tenant shall not make any Alterations which would result, after giving consideration to the completed Alteration, in a diminution in the value of the Leased Premises, without Landlord's written consent.  Tenant may make any other Alterations without the prior written consent of the Landlord provided such Alterations comply with all of the provisions of the following sentence.  In the event that Landlord gives its prior written consent to any Alterations, or if such consent is not required, Tenant agrees that in connection with any Alteration (i) all such Alterations shall be performed in a good and workmanlike manner, and shall be expeditiously completed in compliance with all Legal Requirements, (ii) all work done in connection with any such Alteration shall comply with all Insurance Requirements, (iii) Tenant shall promptly pay all costs and expenses of any such Alteration, and shall discharge all liens filed against any of the Leased Premises arising out of the same, (iv) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, (v) all such Alterations shall be the property of Landlord and shall be subject to this Lease, and (vi) any Alteration the estimated cost of which in any one instance exceeds Two Hundred Fifty Thousand Dollars ($250,000.00) shall be made under the supervision of a licensed architect or engineer in accordance with detailed plans and specifications which shall be submitted to Landlord at least ten (10) days prior to the commencement of the Alterations.

12.   Condemnation.

(a)   Immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, Tenant shall notify Landlord thereof and Landlord shall be entitled to participate in any Condemnation proceeding at Tenant's expense.  Landlord, immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, shall notify Tenant thereof and Tenant shall have the right to participate in such proceedings at its own expense.  Subject to the provisions of this Paragraph 12 and Paragraph 15, Tenant hereby irrevocably assigns to Lender or to Landlord, in that order, any award or payment in respect of any Condemnation of the Leased Premises, except that nothing in this Lease shall be deemed to require (i) the assignment to Landlord or Lender of any award or payment on account of Tenant's leasehold interest hereunder, Tenant's Trade Fixtures, or other tangible personal property, moving expenses and similar claims, if available, to the extent Tenant shall have a right to make a

MWBB 11/6/95

77639...

14

separate claim therefor against the condemnor or (ii) any act or circumstance that impairs Tenant's right to any such award or payment. All reasonable costs and expenses incurred by Landlord after notice to Tenant that such costs will be incurred in any condemnation proceeding shall be paid by Tenant within ten days after demand as Additional Rent.

(b)     If (i) the entire Leased Premises or (ii) at least ten percent (10%) of the Land or the building constructed on the Land, the loss of which even after restoration would, in Tenant's reasonable business judgment, be substantially and materially adverse to the business operations of Tenant at the Leased Premises, shall be subject of a Taking by a duly constituted authority or agency having jurisdiction, then Tenant shall, not later than sixty (60) days after a Taking has occurred, serve notice upon Landlord and Lender ("Tenant's Termination Notice") of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice, which date (the "Termination Date") shall be no sooner than the first, nor later than the third, Basic Rent Payment Date occurring at least thirty (30) days after the date of Tenant's Termination Notice. In the event that during the initial term Tenant shall serve such notice upon Landlord and Lender of its intention to terminate this Lease on the Termination Date, Tenant shall, as part of such notice, offer (which offer may be rejected by Landlord as set forth below) to purchase the Leased Premises and the award, or if no part of the Leased Premises shall remain, the entire award, for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit "C" (the "Purchase Price") plus all other amounts which may be due and owing to Lender or Landlord as Additional Rent or by reason of any default by Tenant in complying with its obligations under this Lease (the "Additions to Purchase Price"). Any such Tenant's Termination Notice served upon Landlord and Lender without the offer to purchase as described above shall nevertheless be deemed to include an offer to purchase as described above. If Landlord and Lender shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice rejecting such offer to Tenant within thirty (30) days after the giving of Tenant's Termination Notice, in which case this Lease shall be terminated as above provided and the entire award made in the Condemnation proceeding shall be paid to Lender, or if there is no Lender, to Landlord or, if the amount of such award is greater than the amount owing to Lender, the excess shall be paid to Landlord. If there is a Lender on the date of Tenant's

MWBB 11/6/95

7762drial Metrebury Tenan un

15

Termination Notice, Landlord's notice to reject Tenant's said offer to purchase shall be void and of no effect unless accompanied by the written notice of Lender to the effect that Lender also elects not to accept Tenant's said offer to purchase.  Should said notices of Landlord and Lender rejecting Tenant's said offer to purchase not be served within said period of thirty (30) days, then and in that event, the said offer shall be deemed accepted.

In the event that Landlord and Lender shall accept or be deemed to have accepted Tenant's offer to purchase, title shall close and Purchase Price and Additions to Purchase Price shall be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards then or thereafter made in the Condemnation proceeding and Landlord shall assign or in case of any award previously made with respect to such Condemnation, deliver to Tenant on the Closing Date such award as may be made, provided, that this Lease shall not terminate and Tenant's obligations hereunder shall continue until the purchase of the Property by Tenant has closed.  In the event Landlord and Lender shall accept Tenant's offer to purchase, or be deemed to have accepted Tenant's offer, title shall close thirty (30) days after the Termination Date hereinbefore defined (the "Closing Date"), at noon at the local office of Landlord's counsel, or at such other time and place as the parties hereto may agree upon, this Lease shall be automatically extended to and including the Closing Date (or, if applicable, the extended Closing Date hereinafter described) and Tenant shall pay the Purchase Price and Additions to Purchase Price by transferring immediately available federal funds to such account or accounts and in such bank or banks as Lender or Landlord, in that order, shall designate, upon delivery of a re-assignment of the Lot Lease and, with respect to that portion of the Leased Premises not subject to the Lot Lease, a special warranty deed or similar conveyance document conveying the Leased Premises and all other required documents including an assignment of any award in connection with such Taking.  The special warranty deed shall convey a good and clear record and marketable title, free from encumbrances other than (i) Permitted Encumbrances, (ii) liens or encumbrances created or suffered through or by Tenant failing to observe or perform any of the terms, covenants or agreements herein provided to be observed and performed by Tenant, (iii) any installments of Taxes due and payable, and (iv) this Lease.  Each of the above-referenced deed and assignment shall contain an agreement by grantee or assignee to observe and

MWBB 11/6/95

16

perform all of the covenants, conditions and restrictions contained in any instruments of record which apply with respect to any Permitted Encumbrances. Such reassignment of the Lot Lease shall contain an agreement by Tenant to observe and perform all of the covenants, conditions and restrictions contained in the Lot Lease. The Purchase Price and Additions to Purchase Price payable as hereinabove provided shall be charged or credited, as the case may be, on the Closing Date, to reflect adjustments of Basic Rent paid or payable to and including the Closing Date, apportioned as of the Closing Date. The acceptance of a deed and the re-assignment by Tenant shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Landlord to be performed pursuant to the provisions hereof. Tenant shall pay all conveyance, transfer, sales and like taxes and other governmentally-imposed fees and charges required in connection with the purchase.

In the event that during any renewal term Tenant shall serve Tenant's Termination Notice upon Landlord, this Lease and the Term hereof shall terminate on the Termination Date. In such event the entire award made in Condemnation proceeding shall be paid to Lender, or to Landlord, in that order.

(c)    In the event of any other Condemnation of part of the Leased Premises which does not result in a Termination of this Lease, subject to the requirements of Paragraph 15, the Net Award of such Condemnation, i.e., after deducting therefrom all expenses incurred in the collection thereof, shall be retained by Landlord and, promptly after such Condemnation, Tenant shall commence and diligently continue to perform the Restoration of the Leased Premises.

Any Condemnation Award in respect of the portion of the Leased Premises subject to the Lot Lease shall be applied in accordance with the Lot Lease. Notwithstanding anything contained herein to the contrary, Basic Rent hereunder shall not be reduced to the extent any condemnation applies only to a portion of the Leased Premises subject to the Lot Lease. With respect to the remainder of the Leased Premises, upon the payment to Landlord of the Net Award of a Taking which falls within the provisions of this subparagraph (c), Landlord and Lender shall, to the extent received, make that portion of the Net Award equal to the cost of Restoration, (the "Restoration Award"), available to Tenant for Restoration, in

**MWBB 11/6/95**

17

accordance with the provisions of Paragraph 15, and at Landlord's election of which Landlord shall advise Tenant in writing promptly after the completion of the Restoration either (i) the balance remaining (the "Net surplus award") shall be the property of Lender or Landlord in that order, and the monthly installment of Basic Rent for each month thereafter during the term hereof shall be reduced by an amount equal to one-twelfth (1/12) of 9.75 percent (if during the initial term hereof; if during the first renewal term 10.725 percent and if during the second renewal term 11.70 percent) of the net surplus award retained by Landlord or paid to Lender, or (ii) the net surplus award shall be paid to Tenant and all Rent shall continue unabated.

In the event of a Requisition of any of the Leased Premises, the Net Award of such Requisition shall be paid to Tenant to the extent such amount relates to any period within the Term, and all Rent shall continue unabated.

(d)    Except with respect to an award or payment to which Tenant is entitled pursuant to the foregoing provisions of this Paragraph 12, no agreement with any condemnor in settlement of or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other, and of Lender, if the Leased Premises are then subject to a Mortgage, which consent shall not be unreasonably withheld or delayed.

(e)    In the case of any Condemnation proceeding, all Rent obligations shall continue unabated (except for a reduction of Basic Rent pursuant to Landlord's election under subparagraph (c) above) until the termination of this Lease or Tenant's purchase of the Leased Premises pursuant to Section 12(b).

13.    Insurance.

(a)    Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i)    Insurance against loss or damage to the Improvements under an All Risk Policy (which shall include flood insurance and earthquake insurance, each to the extent applicable and which may contain such exclusions as are standard in the industry, in amounts to prevent Landlord or Tenant from becoming a co-insurer under the applicable policies,

and in any event in amounts not less than the actual replacement cost of the Improvements (excluding footings and foundations and parts of the Improvements which are not insurable).

(ii)    Contractual and comprehensive general liability insurance against claims for bodily injury, death or property damage occurring on, in or about any of the Leased Premises or the Adjoining Property, which insurance shall be written on a so-called "occurrence basis," and shall provide minimum protection with a combined single limit in an amount not less than Five Million ($5,000,000) Dollars (or in such increased limits from time to time to reflect declines in the purchasing power of the dollar as Landlord may reasonably request).

(iii)    Worker's compensation insurance covering all persons employed by Tenant on the Leased Premises in connection with any work done on or about any of the Leased Premises.

(b)    During such time as no Event of Default is outstanding hereunder, and the tangible net worth of Tenant shall be not less than Two Hundred Million ($200,000,000.00) Dollars as determined in accordance with generally accepted accounting principles consistently applied, Tenant may self-insure the coverage referred to in Paragraph 13(a), provided that the self insurance program of this subparagraph (b) does not violate any Legal Requirements applicable to the Leased Premises or Tenant. Tenant shall provide annually to the Landlord a certificate indicating its decision to self-insure together with the evidence that insurance is permitted hereunder, all in form reasonably satisfactory to Landlord.

(c)    The insurance required by Paragraph 13(a) shall be written by companies having a Best's rating of at least B during such time as Tenant shall have a tangible net worth of not less than Two Hundred Million dollars ($200,000,000.00) and at all other times written by companies having a Best's rating of A- and all such companies shall be authorized to do an insurance business in the State or otherwise agreed to by Landlord and Lender. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance programs shall be treated as insurance proceeds for all purposes under this Lease. The insurance policies shall be for a term of not less than one year, and shall (except for worker's compensation insurance) name Landlord, Tenant and any Lender as additional insured parties as their respective interests

MWBB 11/6/95

19

may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant or become void or unsafe by reason of the failure or impairment of the capital of any insurer, Tenant shall immediately obtain new or additional insurance reasonably satisfactory to Landlord and Lender.

(d)    Each insurance policy referred to above shall, to the extent applicable, contain standard non-contributory mortgagee clauses in favor of any Lender. The certificate delivered by Tenant in respect of each policy shall provide that the policy may not be cancelled except after 30 days prior notice to Landlord and any Lender. The certificate delivered by Tenant in respect of each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e)    Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 13, shall renew or replace each policy, and shall deliver to Landlord and Lender, a certificate or other evidence (reasonably satisfactory to Lender and Landlord) of the existing policy and such renewal or replacement policy within 30 days following such renewal or replacement. The certificate delivered by Tenant in respect of each such policy shall provide that the policy shall not expire until the Landlord and Lender shall receive a notice from the insurer to the effect that a policy will expire on a date (the "Policy Expiration Date") which shall be thirty (30) days following the date of notice to Landlord and Lender. In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 13, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord.

MWBB 11/6/95

20.