## DEED OF TRUST NOTE

$5,914,430.00

New York, New York
November 7, 1995

      FOR VALUE RECEIVED WEC 95B WINSTON-SALEM LIMITED PARTNERSHIP, a Texas limited partnership, having its principal place of business at 6750 LBJ Freeway, Suite 1100, Dallas Texas 75240 (hereinafter referred to as "Maker"), promises to pay to the order of CAPITAL LEASE FUNDING, L.P., a Delaware limited partnership, at its principal place of business at 85 John Street, New York, New York 10038 (hereinafter referred to as "Payee"), or at such place as the holder hereof may from time to time designate in writing, the principal sum of FIVE MILLION NINE HUNDRED FOURTEEN THOUSAND FOUR HUNDRED THIRTY AND NO/100 DOLLARS ($5,914,430.00) in lawful money of the United States of America with interest thereon to be computed on the unpaid principal balance from time to time outstanding at the Applicable Interest Rate (hereinafter defined), and to be paid in installments as follows:

1.    A payment of interest only on the 15th day of November 1995; and

2.    A constant payment of $44,553.84, on the 15th day of December, 1995 and on the 15th day of each calendar month thereafter up to and including the 15th day of October, 2017; each of such payments to be applied (a) to the payment of interest computed at the Applicable Interest Rate; and (b) the balance applied toward the reduction of the principal sum;

and the balance of said principal sum together with all accrued and unpaid interest thereon shall be due and payable on the 15th day of November, 2017 (the "Maturity Date"). Interest on the principal sum of this Note shall be calculated on the basis of a three hundred sixty (360) day year composed of twelve (12) months of thirty (30) days each except that interest due and payable for a period less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360 day year.

      The term "Applicable Interest Rate" as used in this Note shall mean from the date of this Note through and including the Maturity Date, a rate of seven and sixteen hundredths percent (7.16%) per annum.

      The whole of the principal sum of this Note, together with all interest accrued and unpaid thereon and all other sums due under the Deed of Trust (hereinafter defined) and this Note (all such sums hereinafter collectively referred to as the "Debt") shall without notice become immediately due and payable at the option of Payee if any payment required in this Note is not paid when due or on the happening of any other default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Deed of Trust (hereinafter collectively an "Event of Default"). All of the terms, covenants and conditions contained in Deed of Trust and the Other Security Documents (hereinafter defined) are hereby

WINSTON-NOTE\0040716.02



made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event that it should become necessary to employ counsel to collect or enforce the Debt or to protect or foreclose the security therefor, Maker also shall pay on demand all costs of collection incurred by Payee, including attorneys' fees and costs reasonably incurred for the services of counsel whether or not suit be brought.

The principal balance of this Note may not be prepaid in whole or in part during the period from the date of this Note to and including November 7, 2003 (the "Lockout Period"). At any time after the Lockout Period, provided no Event of Default exists, the principal balance of this Note may be prepaid, in whole but not in part, on any scheduled payment date under this Note upon not less than thirty (30) days prior written notice to Payee specifying the scheduled payment date on which prepayment is to be made (the "Prepayment Date") and upon payment of (a) interest accrued and unpaid on the principal balance of this Note to and including the Prepayment Date, (b) all other sums then due under this Note, the Mortgage, the Assignment of Lease and Rents (as defined in the Mortage) and the Other Security Documents, and (c) a prepayment consideration ("Prepayment Consideration") in an amount equal to (i) the present value as of the Prepayment Date of the remaining scheduled payments of principal and interest from the Prepayment Date through the Maturity Date (including any balloon payment) determined by discounting such payments at the Discount Rate (as hereinafter defined), less (ii) the amount of principal being prepaid. As used herein, the "Discount Rate" is the rate which, when compounded monthly, is equivalent to the Treasury Rate (as hereinafter defined) when compounded semi-annually. The "Treasury Rate" is the yield calculated by the linear interpolation of the yields, as reported in Federal Reserve Statistical Release H.15-Selected Interest Rates under the heading "U.S. Government Securities/Treasury Constant Maturities" for the week ending prior to the Prepayment Date, of U.S. Treasury constant maturities with maturity dates (one longer and one shorter) most nearly approximating the Maturity Date. In the event Release-H.15 is no longer published, Payee shall select a comparable publication to determine the Treasury Rate. Payee shall notify Maker upon determination of the amount and the basis of determination of the required Prepayment Consideration. If any notice of prepayment is given, the principal balance of this Note and the other sums required under this paragraph shall be due and payable on the Prepayment Date. Payee shall not be obligated to accept any prepayment of the principal balance of this Note unless (a) the payment is accompanied by the required Prepayment Consideration and (b) the prepayment is made on the applicable Prepayment Date. If for any reason the principal balance of this Note is paid on a date other than a scheduled payment date, in addition to the amounts due and payable hereunder, Maker shall pay interest accrued and unpaid on the principal balance of this Note to and including the first day of the calendar month immediately following the Prepayment Date.

If following the occurrence of any Event of Default, Maker shall tender payment of an amount sufficient to satisfy the Debt at any time prior to a sale of the Trust Property (as defined in the Deed of Trust), either through foreclosure or the exercise of the other remedies available to Payee under the Deed of Trust, such tender by Maker shall be deemed to be a voluntary prepayment under this Note in the amount tendered. If such tender occurs during the Lockout Period, Maker shall, in addition to the entire Debt, also pay to

Payee a sum equal to (a) interest accrued and unpaid on the principal balance of this Note to the date of such tender, (b) interest which would have accrued on the principal balance of this Note at the Applicable Interest Rate from the date of such tender to the first day after the Lockout Period, (c) a Prepayment Consideration equal to the Prepayment Consideration which would have been payable if such prepayment were made on the first day after the Lockout Period, (d) the outstanding principal balance of this Note, and (e) all other amounts due under this Note, the Deed of Trust and the Other Security Documents. If such tender occurs after the Lockout Period, Maker shall pay to Payee an amount calculated in accordance with the preceding paragraphs.

Maker does hereby agree that upon the occurrence of an Event of Default or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire unpaid principal sum and any other amounts due at a rate equal to three percent (3%) above the Applicable Interest Rate (the "Default Rate"). The Default Rate shall be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt. This charge shall be added to the Debt, and shall be deemed secured by the Deed of Trust. This paragraph, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default. In the event the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

This Note is secured by the Deed of Trust and the Other Security Documents. The term "Deed of Trust" as used in this Note shall mean the Deed of Trust, Security Agreement, Assignment of Lease and Rents dated the date hereof in the principal sum of $5,914,430.00 given by Maker for the use and benefit of Payee covering the fee estate of Maker in certain premises located in Forsyth County, State of North Carolina, as more particularly described therein. The term "Other Security Documents" as used in this Note shall mean all and any of the documents other than this Note or the Deed of Trust now or hereafter executed by or on behalf of Maker in favor of Payee, which wholly or partially secure or guarantee payment of this Note. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Payee" and "Maker" shall include their respective successors, assigns, heirs, executors and administrators.

This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Debt at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum interest rate which Maker is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Maker is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest due under this Note shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

If any sum payable under this Note is not paid on or before the date on which it is due, Maker shall pay to Payee upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law to defray the expenses incurred by Payee in handling and processing such delinquent payment and to compensate Payee for the loss of the use of such delinquent payment, and such amount shall be secured by the Deed of Trust and the Other Security Documents.

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

If Maker consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

Maker and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment except as otherwise expressly provided herein, and notice of intent to accelerate the maturity hereof (and of such acceleration). No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Deed of Trust or the Other Security Documents made by agreement between Payee and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker, and any other who may become liable for the payment of all or any part of the Debt, under this Note, the Deed of Trust or the Other Security Documents.

Subject to the qualifications below, Payee shall not enforce the liability and obligation of Maker (or its general partners) to perform and observe the obligations contained in this Note, the Deed of Trust or the Other Security Documents by any action or proceeding wherein a money judgment shall be sought against Maker (or its general partners), except that Payee may bring a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Payee to enforce and realize upon its interest under this Note, the Deed of Trust and the Other Security Documents, or in the Trust Property, or any other collateral given to Payee pursuant to the Deed of Trust or the Other Security Documents; *provided, however*, that, except as specifically provided herein, any judgment in any such action or proceeding shall be enforceable against Maker (or its general partners) only to the extent of Maker's (or its general partners') interest in the Trust Property and in any other collateral given to Payee, and Payee, by accepting this Note, the Deed of Trust and the Other Security Documents, agrees that it shall not sue for, seek or demand any deficiency judgment against Maker (or its general partners) in any such action or proceeding under or by reason of or under or in connection with this Note, the Deed of Trust or the Other Security Documents. The provisions of this paragraph shall not, however, (a) constitute a waiver, release or impairment of any obligation evidenced or secured by this Note, the Deed of Trust or any of the Other Security Documents; (b) impair the right of Payee to name Maker (but not

its general partners unless such general partners are necessary parties to such action or suit) as a party defendant in any action or suit for foreclosure and sale under the Deed of Trust; (c) affect the validity or enforceability of or any guaranty made in connection with the Debt or any of the rights and remedies of the Payee thereunder; (d) impair the right of Payee to obtain the appointment of a receiver; (e) impair the enforcement of the Assignment of Lease and Rents (as defined in the Deed of Trust) given in connection herewith; or (f) constitute a waiver of the right of Payee to enforce the liability and obligation of Maker or Maker's general partners in their capacity as general partners, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Payee (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

(i) fraud or intentional misrepresentation by Maker or any guarantor in connection with the Debt;

(ii) the gross negligence or willful misconduct of Maker;

(iii) physical waste of the Trust Property;

(iv) the breach of any provision in any environmental indemnity given by Maker to Payee in the Deed of Trust or pursuant to a separate agreement concerning environmental laws, hazardous substances and asbestos and any indemnification of Payee with respect thereto in such document or agreement;

(v) the removal or disposal by Maker or its general partner of any portion of the Trust Property after an Event of Default;

(vi) the misapplication or conversion by Maker of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Trust Property, (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Trust Property, or (C) any rents following an Event of Default;

(vii) failure by Maker or its general partner to pay charges for labor or materials or other charges that can create liens on any portion of the Trust Property; and

(viii) any security deposits collected with respect to the Trust Property which are not delivered to Payee upon a foreclosure of the Trust Property or action in lieu thereof, except to the extent any such security deposits were applied in accordance with the terms and conditions of any leases prior to the occurrence of the Event of Default that gave rise to such foreclosure or action in lieu thereof.

Notwithstanding anything to the contrary in this Note, the Deed of Trust or any of the Other Security Documents, (A) Payee shall not be deemed to have waived any right which Payee may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by the Deed of Trust or to require that all collateral shall continue to secure all of the Debt owing to Payee in accordance with this Note, the Deed of Trust or any of the Other Security Documents, and (B) the Debt shall be fully recourse to Maker in the event that: (i) Maker fails to maintain its status as a single purpose entity, as required by, and in accordance with the terms and provisions of, the Deed of Trust; (ii) Maker fails to obtain Payee's prior written consent to any subordinate financing or other voluntary lien encumbering the Trust Property as required by the Deed of Trust; or (iii) Maker fails to obtain Payee's prior written consent to any assignment, transfer, or conveyance of the Trust Property or any interest therein as required by the Deed of Trust.

Maker represents that Maker has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note, the Deed of Trust and the Other Security Documents and that this Note, the Deed of Trust and the Other Security Documents constitute valid and binding obligations of Maker.

Maker agrees to deposit in escrow with the Payee the sum of Fifty-Four Thousand Ninety-Eight and 02/100 Dollars ($54,098.02) (the "Deposit") upon execution of this Note. Except as otherwise provided below, the Deposit shall be used exclusively by Payee to pay to Payee on or before the applicable due dates, the interest and/or principal which is due and payable under this Note for the period from November 7, 1995 through and including December 14, 1995 and for any other purpose described in Paragraph 3 of the Assignment of Lease and Rents given to Payee on the date hereof, and Payee shall have the right to so apply such Deposit without any further notice to Maker or further action by Maker or Payee. The Deposit is pledged as additional security for the indebtedness evidenced by this Note and secured by the Deed of Trust. If Maker defaults on any payment due under this Note or under any covenant in the Deed of Trust, or any term or provision of any Other Security Document, then Payee and/or Servicer (as defined in the Deed of Trust), in their sole and absolute discretion, may, at its option, (i) apply the Deposit or any portion of such funds to payment of the indebtedness evidenced by this Note or any unpaid fees, costs or expenses that Maker is required to pay under this Note or any of the Other Security Documents; provided, however, that such application of funds shall not cure or be deemed to cure any default; (ii) apply the Deposit to reimburse Payee and/or Servicer for any losses or expenses (including, without limitation, legal fees and disbursements) suffered or incurred by Payee and/or Servicer as a result of such default or (iii) apply the Deposit in connection with the exercise of any rights and remedies available to Payee and/or Servicer at law or in equity or under this Note or any of the Other Security Documents.

All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Deed of Trust directed to the parties at their respective addresses as provided therein.

MAKER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, THE DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. PAYEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MAKER.

This Note shall be governed by and construed in accordance with the laws of the State in which the Trust Property is located and the applicable laws of the United States of America.

        IN WITNESS WHEREOF, Maker has duly executed this Note under seal as of the day and year first above written.

                                          WEC 95B WINSTON-SALEM LIMITED
                                          PARTNERSHIP, a Texas limited
                                          partnership                   [SEAL]

                                          By:   Wolverine Winston-Salem, Inc.,
                                                  a Texas corporation

                                          By: _____
                                             Name:  James C. Leslie
                                             Title:  President

ATTEST: _____
Brett L. Landes, Secretary

[CORPORATE SEAL]

## NOTE ALLONGE

Pay to the order LASALLE NATIONAL BANK, a nationally chartered bank, as Trustee under that certain Pooling and Servicing Agreement dated as of January 15, 1997 for Corporate Credit-Backed Pass-Through Certificates, Series 1997-CTL-1, having an address at 135 LaSalle Street, 17th Floor, Chicago, Illinois 60603, without recourse.

Date: As of January 15, 1997

        CAPITAL LEASE FUNDING SECURITIZATION, L.P.,
        a Delaware limited partnership

            By: CLF Holdings, Inc., a Delaware corporation,
                its general partner

                *[signature]*
                Name: Paul McDowell
                Title: Vice President

Allonge by CLFC:\DOCSOPEN\NYLIB1\KVOTTA\0116319.01