```
                      UNITED STATES BANKRUPTCY COURT
                       EASTERN DISTRICT OF VIRGINIA


                                  .    Case No.  08-35653(KRH)
IN RE:                            .
                                  .    U.S. Courthouse, Suite 4000
                                  .    701 East Broad Street
CIRCUIT CITY STORES, INC.,        .    Richmond, VA  23219-1888
                                  .
     Debtor.                      .    December 7, 2009
. . . . . . . . . . . . . .       .    2:03 p.m.


                         TRANSCRIPT OF HEARING
                 BEFORE HONORABLE KEVIN R. HUENNEKENS
                 UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Debtors:          McGuireWoods, LLP
                          By:  DOUGLAS M. FOLEY, ESQ.
                               DANIEL F. BLANKS, ESQ.
                          World Trade Center
                          101 West Main Street, Suite 9000
                          Norfolk, VA  23510-1655

                          Skadden, Arps, Slate, Meagher and
                            Flom, LLP
                          By:  IAN S. FREDERICKS, ESQ.
                          One Rodney Square, P.O. Box 636
                          Wilmington, DE  19899

For Unical Enterprises:   WallacePledger, PLLC
                          By:  THOMAS J. MORAN, ESQ.
                          7100 Forest Avenue, Suite 302
                          Richmond, VA  23226




Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service
```

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (CONT'D):

For Export Development          Fullerton and Knowles, PC
Canada:                         By:  RICHARD HUTSON, ESQ.
                                12642 Chapel Road
                                Clifton, VA  20124

                                Blakeley and Blakeley, LLP
                                By:  RONALD A. CLIFFORD, ESQ.
                                4685 MacArthur Court, Suite 421
                                Newport Beach, CA  92660

For Sirius XM Radio,            LeClair Ryan
Inc. and Schimenti              By:  CHRIS PERKINS, ESQ.
Construction:                   951 East Byrd Street, Eighth Floor
                                Richmond, VA 23219


                         - - -

1            THE COURT DEPUTY:  All rise.  United States

2  Bankruptcy Court for the Eastern District of Virginia is now in

3  session.  The Honorable Kevin R. Huennekens presiding.  Please

4  be seated and come to order.

5            THE CLERK:  In the matter of Circuit City Stores,

6  Incorporated, hearing on Items 1 through 48 as set out on

7  debtor's agenda.

8            MR. FOLEY:  Good afternoon, Your Honor, Doug Foley

9  with McGuireWoods on behalf of Circuit City.  With me today

10 from my firm is Dan Blanks.  Also with me at counsel table is

11 Ian Fredericks from Skadden Arps.  With us today from the

12 company, Your Honor, is Michelle Mosier, who is the principal

13 financial officer of Circuit City.

14           THE COURT:  All right.

15           MR. FOLEY:  Your Honor, we have 48 items on the

16 agenda.  Most of the matters we're going to ask the Court to --

17 with respect to claims we're going to ask the Court to adjourn

18 to the January 14th date, but there are some exceptions to

19 that.  One matter I would like to take out of order only

20 because I think we've resolved it for today and that's the

21 Matter Number 10, which is EDC's motion for a late file proof

22 of claim.  It was on today to resolve any discovery disputes,

23 Your Honor, and I have met and conferred with counsel for EDC,

24 their main counsel in California as well as Mr. Hutson who is

25 here this morning, to discuss the couple of issues that we have

**J&J COURT TRANSCRIBERS, INC.**

4

1 and some of the agreements that we've reached and we wanted to

2 put those on the record.

3        Ultimately, this matter will be tried on January 14th

4 at two o'clock.  We have some discovery issues that we're going

5 to ask the Court to rule on today.  We have an agreement as to

6 some other issues that they have agreed to address in ten days.

7 And so, we probably want this matter continue for procedural

8 purposes as to discovery until the December 21st date, but it

9 will be heard on the merits on January 14th.  Here is the

10 issues, Your Honor, that we have that I'll address to the

11 Court.  We did get on Friday night some discovery responses

12 from EDC in which they reiterated some objections that they had

13 previously timely filed to our written discovery and some

14 documents they have not agreed to produce.  But, we have

15 reached an agreement as to several matters and I wanted to read

16 those into the record and get counsel for EDC to agree.  I

17 believe counsel is on the phone as well as here in court today.

18        Your Honor, we asked for in one of our

19 interrogatories protocols and procedures and methodologies that

20 EDC uses in responding to bankruptcy notifications and bar

21 dates and the like.  As Your Honor is aware, the issue here has

22 to do with excusable neglect.  And they objected to that

23 interrogatory, did not provide an answer.  But, in conversation

24 with counsel this afternoon, they have agreed as long as we

25 limited that request to the United States -- EDC deals with

5

1    bankruptcies throughout the world -- that they were okay

2    responding to that interrogatory within ten days of today and

3    producing any documents that may exist relating to those

4    procedures and protocols and methodologies in responding to

5    United States Bankruptcy notifications and bar dates.

6          We have also agreed Your Honor that with respect to

7    the production of witnesses, we've noticed a Rule 30(b)(6)

8    deposition of EDC with various topics, and they have agreed to

9    produce one or two witnesses to cover those topics in Richmond

10   the day before the hearing that's going to go forward so that

11   they can do this in one trip rather than having to make

12   multiple trips.  Even though that compressing our time frame

13   obviously to get some of the information, we're willing to do

14   that to reduce the cost to EDC.  So, rather than us having to

15   travel to Ottawa, Canada to depose these witnesses, they will

16   come here.

17         Your Honor, with respect to the issues that we have

18   not been -- we've also agreed -- Your Honor, we asked for in

19   our interrogatories and request for production of documents for

20   any communications between the insured here, which is

21   Techcraft, and the insurer, which is EDC.  Your Honor, EDC is a

22   credit insurer of Techcraft and this was a claim by --

23   originally held by Techcraft for alleged goods sold to the

24   debtors in the ordinary course of business within 20 days of

25   the bankruptcy case.  So, this is a 503(b)(9) claim in the

6

1  range of about $550,000.  And Techcraft called upon EDC, who

2  was their insurer, to pay the claim.  And there was

3  communications back and forth between EDC and Techcraft

4  relating to that request for payment.  The actual document,

5  which we do have an issue with, is called an application for

6  payment.

7        But, they have agreed with respect to any transmittal

8  correspondence of any email communications to the extent those

9  exist that they will also produce those to the extent they are

10 not privileged within ten days.  So, that leaves two issues --

11 two documents, Your Honor, that are identified in the

12 interrogatory responses that they have not agreed to produce

13 and we think we're entitled to.  One is called the application

14 for payment.  It's a defined term in their discovery responses

15 and in their pleadings, and that is the document that Techcraft

16 used to put EDC on notice that it's calling upon the insurance

17 to pay its claim.

18       Then, there's the actual insurance contract itself,

19 Your Honor, between EDC and Techcraft.  That's also been

20 identified in their interrogatory responses.  We've asked for

21 both of those documents because we believe that they may

22 contain information that would lead to the discovery of

23 admissible evidence.  They have refused to produce those two

24 documents notwithstanding our offer to address some of their

25 proprietary concerns to do so under a protective order or under

**J&J COURT TRANSCRIBERS, INC.**

1   seal.  They still believe that with respect to certain issues

2   in Canada that the documents should not be produced.  And I'll

3   let Mr. Hutson or Mr. Clifford, who is on the phone, address

4   those issues.  But, we would ask that the Court require those

5   two documents be produced pursuant to an appropriate protective

6   order or produced and not be able to be used unless filed under

7   seal so that no third parties could actually see the context of

8   the document other than the Court and the parties to the

9   litigation.

10          THE COURT:  All right, thank you, Mr. Foley.

11          MR. HUTSON:  Good morning, Your Honor -- afternoon

12   actually.

13          THE COURT:  Good afternoon.

14          MR. HUTSON:  Richard Hutson, local counsel for Export

15   Development Canada.  I believe we have lead counsel, Ronald

16   Clifford, of the firm Blakeley and Blakeley on the phone.  My

17   motion -- this Court has granted my motion to admit Mr.

18   Clifford pro hac, and at this time I would like to have him

19   address the issues raised by counsel.

20          THE COURT:  All right.  Mr. Clifford, are you on the

21   phone?

22          MR. CLIFFORD:  I am.  Good morning, Your Honor.  Can

23   you hear me?

24          THE COURT:  Yes, I can hear you.

25          MR. CLIFFORD:  Perfect.  Your Honor, I just wanted to

1  step back very briefly on the first three issues that Mr. Foley

2  read onto the record as those being topics that EDC and the

3  debtor have agreed to.  I agree with most of his statements.

4  As to the production of documents as to any U.S. Bankruptcy

5  protocols or procedures, the only thing I wanted to add to that

6  is that EDC is willing to respond or to amend its

7  interrogatory.  If there are indeed any protocols or procedures

8  and they relate to U.S. bankruptcy courts, as to the -- to the

9  extent that they aren't privileged or covered under any privacy

10  laws of the Canadian Constitution or the Federal Export

11  Development Act.  And I think that goes for the communications

12  between Techcraft, the insured, and Export Development Canada

13  as well.  Besides those -- besides that I guess caveat as to

14  those two issues, EDC would agree with Mr. Foley on the first

15  three topics that the parties agreed to.

16          As to the application for payment and the insurance

17  contract, EDC will submit to Your Honor that EDC is a federal

18  arm of the Canadian government.  These insurance contracts, the

19  application for payment -- these contain extremely sensitive

20  information.  These are not boilerplate insurance contracts.

21  These are very confidential and secret documents that contain

22  extensive negotiation between the parties.  Counsel for the

23  debtor hasn't given me a reason as to why they would be

24  relevant.  What EDC has done is turn over to counsel for the

25  debtor the assignment agreement between the parties which

**J&J COURT TRANSCRIBERS, INC.**

1  details the insurance number, it proves that there was an

2  insurance agreement between the parties and it lays out the

3  terms of the insurance agreement itself.

4       The only thing it doesn't do is go into some of the

5  confidential information related to negotiations that is

6  contained in the insurance contract and the application for

7  payment.  EDC would request that Your Honor not grant this

8  request by the debtor as we believe it not to -- it to be not

9  only irrelevant, we also believe it to be covered by Canadian

10 constitutional law as well as the Export Development Canadian

11 Act, Section 24.3.  And we believe this is something that just

12 should not be allowed to be discoverable in this case.

13      THE COURT:  All right.  Now, you've come into this

14 court though and you want to file a proof of claim in this

15 court.  So, why would the Export Development Canadian Act be

16 relevant to this issue?

17      MR. CLIFFORD:  Export Development Canada believes

18 that the insurance policy itself contains information that may

19 disclose topics that are unrelated to the application for

20 payment here.  The contract contains information sensitive to

21 negotiation between not only this party but may disclose some

22 information as to the rhymes and reasons that EDC uses when it

23 enters into negotiation between parties for the extension of

24 insurance when it comes to foreign credit -- I guess credit

25 sales.  What we have done -- and we agree that we need to

1  actually show the Court that there was an insurance agreement

2  in place.  What we have provided to the debtor and are willing

3  to provide to any parties in interest is the actual assignment

4  of the claim which walks any party through the relevant terms

5  of the insurance contract.  It shows the existence of a

6  contract.  And both parties to that contract together agree

7  that the contract existed and what it existed for.

8         THE COURT:  Well, I guess what I'm having trouble

9  figuring out, Mr. Clifford, is what is it in the nature of this

10  document that makes it so confidential and secret?  It sounds

11  to me like you're describing proprietary type of information

12  that would be the subject of any negotiation between any

13  parties which the Court routinely handles by way of a

14  protective order or reviewing the document under seal.  Why

15  wouldn't that be an appropriate remedy in this situation?

16         MR. CLIFFORD:  Your Honor, EDC believes that this

17  information is even -- is of an even higher level of security

18  in that, one, it's dealing with a federal government

19  negotiation with its constituency and further, that these are

20  dealing with not just a contract negotiation between parties to

21  purchase a business say, but this is a large part of the Export

22  Development portion of the Canadian development.  Any leak

23  whatsoever of this information could prove extremely fatal to

24  the cause and to the purposes of this governmental body.

25         THE COURT:  All right.  And that applies to the

1   application for payment as well as to the insurance contract

2   itself?

3           MR. CLIFFORD:   It does.   We believe that both of

4   those contain information that if this information got out,

5   this could not be good.   It couldn't end up -- well, I guess we

6   would put it this way.   There's no benefit.   There's only a

7   downside to the Canadian Government were this information to

8   get out to anyone.

9           THE COURT:   Okay.   Is the nature of the information

10  anything other than financial?

11          MR. CLIFFORD:   It is, Your Honor.   The information

12  deals with different factors that Export Development Canada is

13  using to extend credit.   This goes beyond economic factors.   My

14  understanding is --

15          THE COURT:   Extension of credit is financial.   I

16  mean, I'm going -- I'm trying to find out if there's some sort

17  of a national security issue here or something of -- that would

18  take it out of regular business context.

19          MR. CLIFFORD:   We believe so, Your Honor.   The

20  factors used to extend credit insurance to the insureds and

21  Canada go beyond merely the financial abilities of an insured

22  to -- and its credit sales with foreign body.   My understanding

23  is that there is ethics factors that are looked into.   There

24  are a number of issues that are looked into in the negotiation

25  of these contracts.   Merely financial numbers are only a part

12

1  of the contracts themselves.

2          THE COURT:  Okay.  Anything further?

3          MR. CLIFFORD:  EDC rests, Your Honor.

4          THE COURT:  All right, thank you.  Mr. Foley?

5          MR. FOLEY:  I did want just address one clarification

6  that Mr. Clifford made with respect to our agreement as to the

7  communications surrounding the protocols, procedures,

8  methodologies and any correspondence between Techcraft and EDC

9  that does not include these two documents that they want to

10 withhold.  Mr. Clifford mentioned that he wanted any production

11 to be subject to again these Canadian privacy laws.  That's

12 different than the attorney-client privilege.  If they're going

13 to withhold documents for privilege, I've informed Mr. Clifford

14 that the practice in this court is that we produce a privilege

15 log describing the document that's being withheld for

16 attorney-client privilege.  That's fine.  I'm okay if that's

17 what he's prepared to do.  But, I don't believe it's an

18 appropriate objection to raise, as Your Honor mentioned in your

19 question to Mr. Clifford, Canadian privacy laws for purposes of

20 an American bankruptcy case where we're trying to resolve a

21 claim that they had asserted in this Court.

22          With respect to the two documents that are at issue,

23 Your Honor, I mean, we could subpoena Techcraft for them.

24 Presumably, they have them.  The application for payment is a

25 document created by Techcraft and sent to them.  I can't

13

1  imagine that could have national security implications.  The

2  insurance contract itself is a bilaterally negotiated document.

3  I can't imagine they would have national security information

4  in there.  We would ask the Court again to require that those

5  two documents be produced, that any objection to production

6  based upon Canadian law be overruled, and that in the worst

7  case scenario that if Your Honor is uncomfortable with that

8  ruling to at least require the production of these documents.

9         And I don't even know, to be honest with you, Your

10  Honor, whether Mr. Clifford has even seen these documents to be

11  able to tell you what's in them.  Now, he can correct me if I'm

12  wrong, but I'm not sure that they've even been produced to

13  them.  But, that they be produced to the Court so the Court can

14  look at them to see if there's anything that gives the Court

15  concern that would lead the Court to conclude that a protective

16  order is insufficient to protect the information that's

17  contained in them.

18         THE COURT:  All right.  Anything further, Mr.

19  Clifford?

20         MR. CLIFFORD:  No, Your Honor.

21         THE COURT:  All right.  The Court is going to require

22  these documents be produced to the Court under seal for the

23  Court's in camera review, and the Court will review it.  If

24  there's something that -- the Court then will decide once its

25  has an opportunity to review these documents whether or not

1 they can be produced pursuant to an appropriate protective

2 order or whether they should be withheld from production.  And

3 so, the Court is going to require that the documents be

4 produced to the Court under seal for its inspection.

5           MR. FOLEY:  Thank you, Your Honor.  With respect to

6 the balance of the issues, if we could just again continue for

7 status to the December 21st hearing date after Your Honor has

8 had an opportunity to look at those documents?

9           THE COURT:  Then, I have a question for Mr. Clifford

10 before we move on.

11           MR. FOLEY:  Okay.

12           MR. CLIFFORD:  Yes, Your Honor.

13           THE COURT:  How long will it take EDC to provide

14 these two documents to me under seal?

15           MR. CLIFFORD:  Your Honor, I think I can have those

16 to you -- if it will work for Your Honor, I think I can have

17 them to you within probably seven days from today's hearing.  I

18 just need to send this up the chain of command and have those

19 sent to me and I can forward them onto Your Honor from there.

20 But, just to give me some time for -- some lead time for

21 mailing, I'd like to probably stretch it out for seven days or

22 so.

23           THE COURT:  Okay.  I'm going to require that they be

24 produced to me by one week from today on the 14th.  Have them

25 delivered directly to my chambers.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. CLIFFORD:  Okay, I will do that, Your Honor.

2          THE COURT:  And then, Mr. Clifford, I'd ask you also

3  to submit an order ordering that the Court can enter that they

4  be held under seal --

5          MR. CLIFFORD:  Yes, Your Honor.

6          THE COURT:  -- pending further ruling of the Court.

7  All right, Mr. Foley?

8          MR. FOLEY:  Thank you, Your Honor.  That disposes for

9  now of Matter Number 10 on the agenda.  Your Honor, if we could

10 go back to the beginning of the agenda, there are several items

11 that we have adjourned by consent with the other parties to the

12 motions.  The DirecTV motion, Your Honor, this is their motion

13 for setoff and for relief from the automatic stay.  We've

14 agreed with them to adjourn that one additional time to January

15 14th at two.  Some additional issues have cropped up regarding

16 accounts back and forth between the parties.  And so, we're

17 still negotiating with them.  So, that matter, Your Honor, is

18 being moved to January 14th at two.

19         Item Number 2, this is Newport News' application for

20 payment of administrative tax claim.  We have reconciled most

21 of the claim and we believe we're going to reach an agreement.

22 As to the amount of the payment, we believe we're ultimately be

23 agreed to as part of the plan once the plan is confirmed.  But,

24 they have agreed for now, Your Honor, to adjourn their motion

25 until the January 28th docket date at 11.

**J&J COURT TRANSCRIBERS, INC.**

1             THE COURT:  All right.

2             MR. FOLEY:  Your Honor, Item Number 3, this is

3  Schimenti Construction's motion for 2004 examination.  We are

4  working with them.  They are providing us a draft of a

5  complaint that they intend to file with respect to certain

6  issues that they would like to raise which could moot this

7  motion all together because they can take discovery as part of

8  that adversary proceeding.  But, they're also I believe going

9  to be making a settlement proposal to us to consider.  We have

10 not received that yet.  Mr. Perkins is here on behalf of

11 Schimenti, but they've agreed to adjourn this motion for now

12 until the January 14th hearing date at two.

13            THE COURT:  All right.  Mr. Perkins, did you wish to

14 be heard on this matter?

15            MR. PERKINS:  No, Your Honor, the debtor has

16 accurately recited the agreement.

17            THE COURT:  Thank you, sir.

18            MR. FOLEY:  Your Honor, Item Number 4, this is

19 OmniMount's motion to reconsider disallowance of a 503(b)(9)

20 claim that was late.  Your Honor, we're working with them.

21 There are some -- to try to resolve the matter.  There are some

22 accounts back and forth, accounts receivable back and forth

23 that we're trying to reconcile as well as potential preference

24 exposure.  We have not reached a resolution of that yet, but

25 they are prepared to for now adjourn their matter until the

**J&J COURT TRANSCRIBERS, INC.**

1 December 21st hearing date at ten.

2          Your Honor, Items Number 5, 6 and 7, these are

3 motions relating to either the receipt of goods or late filed

4 claims.  This is the Madcow motion to compel payment, the John

5 Raleigh motion for a late file proof of claim and Site A's

6 motion for a late file proof of claim.  All of those parties

7 have agreed to adjourn their matters until the January 28th

8 hearing date at 11 in hopes that once we resolve the EDC matter

9 before Your Honor on the January 14th date, that we'll have

10 better guidance as to how to deal with the late claim motions.

11          Your Honor, Item Number 8, this is the motion by

12 Booth for relief from the automatic stay.  We're working with

13 them to try to get that matter withdrawn.  They are not

14 prepared to do that yet, but they are prepared to adjourn the

15 preliminary hearing on the relief from stay motion until the

16 December 21st hearing date at ten.  Your Honor, Item Number 9,

17 this is the motion by Ryan Inc. for assumption of a contract.

18 We were trying to deal with this in the context of

19 confirmation.  Any contracts that aren't specifically assumed

20 as part of the plan or have already been assumed as part of the

21 case will be deemed rejected upon confirmation.  We believe

22 that Ryan Inc. will ultimately withdraw this motion, but we're

23 working with them on that.  For now, they are prepared to

24 adjourn their matter until the December 21st hearing date at

25 ten.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  Before we skip over Number 10

2   because I know we've already dealt with that, but you had

3   indicated at the beginning that you expected to try this matter

4   on January 14 at two o'clock.

5          MR. FOLEY:  Yes, Your Honor.

6          THE COURT:  How long will the trial take?

7          MR. FOLEY:  I think it will be less than two hours.

8          THE COURT:  All right.  And we'll be able to do that

9   with all the other -- because that's an omnibus hearing date.

10         MR. FOLEY:  It is.  I think we'll be able to do it

11  that day.  I think we'll probably stipulate to most of the

12  facts.  I think we're mostly going to be arguing about law,

13  Your Honor.

14         THE COURT:  All right, very good.  All right.  And

15  then, you also made mention about some other discovery disputes

16  to be heard on the 21st of December or have we just heard

17  those?

18         MR. FOLEY:  We did except Your Honor needs to review

19  obviously the documents that are produced to see if they need

20  to be produced to us.  They're going to produce additional

21  documents.  They're going to provide us additional

22  interrogatory answers pursuant to the agreement that we just

23  reached today within ten days of today.

24         THE COURT:  So, if there other issues --

25         MR. FOLEY:  And if there are any issues then we'll --

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  -- then they'll be raised then.

2           MR. FOLEY:  -- then we'll bring them up then.

3           THE COURT:  Got it.  Okay, thank you.

4           MR. FOLEY:  Your Honor, if we could drop -- skip over

5    Unical for a moment, that one is -- I believe counsel is here.

6    They do want to go forward on that today.

7           THE COURT:  All right.

8           MR. FOLEY:  And go through the balance of the agenda

9    first before we go to that.  As well -- if we could skip over

10   12 as well, Your Honor.  That's XM Sirius.

11          THE COURT:  Yes.

12          MR. FOLEY:  And 13 -- let me just go through the

13   claims issues, Your Honor.  Items Number 14 on the agenda, 15,

14   16, 17 and 18, these are the 13th omnibus objection, the 14th

15   omnibus objection, the 45th omnibus objection, the 46th omnibus

16   objection and the 47th omnibus objection.  All of the responses

17   to those objections, Your Honor, have now been resolved and

18   those omnibus objections can be removed from the agenda going

19   forward.  Your Honor, we do have a demonstrative exhibit that

20   we used in the past for the Court that we would like to hand

21   up.  It's one page.  We're trying to keep it simple

22   notwithstanding how many omnibus objections have been filed so

23   far.  We have --

24          THE COURT:  Does the print get smaller?

25          MR. FOLEY:  Yes, the print does get a little -- we

**J&J COURT TRANSCRIBERS, INC.**

1  may need a magnifying glass then.  But, the exhibit, Your

2  Honor, does show the status of the objections that we have

3  filed so far up through Omnibus Objection Number 47, taking

4  into account the footnotes, Your Honor, with respect to some

5  duplication.  As Your Honor can see, we have filed claim

6  objections to over 7,900 claims, and the Court has entered

7  orders with respect to non-responding parties as to 7,300

8  claims.  451 parties have filed responses to our pending claim

9  objections, and we have resolved by consent or by -- through

10 litigated court orders 122 of those claims.  These numbers

11 again, but for the duplication that are noted in the footnote,

12 should tick and tie, but we are continuing to make progress on

13 the claims.  But, I wanted to provide that to the Court so you

14 can sort of see a schematic as to the dollar value of what

15 we're dealing with and the numerosity of the claims that we're

16 dealing with.

17         Your Honor, Items Number 19, which is the 2nd

18 omnibus, 20, which is the 3rd, 21, which is the 4th, 22, which

19 is the 5th, 23rd, which is the 6th, 24th, the 7th, 25th is the

20 8th, Item Number 26 is the 9th, 27 is the 10th, and I'll skip

21 over 28 for a moment, Your Honor, because there's something

22 unique about that one, Item Number 29, which is the 20th, Item

23 Number 30, which is the 21st, Item Number 31, which is the

24 22nd, Item Number 32 on the agenda, which is the 23rd, Item

25 Number 33, which is the 24th, Item Number 34, which is the

1  27th, Item Number 35, which is the 28th, Item Number 26, which

2  is the 29th, Item Number 37, which is the 30th, Item Number 38,

3  which is the 31st, and I'll skip over Item Number 39 for a

4  moment, Item Number 40 on the agenda, which is the 34th, Item

5  Number 41, which is the 35th, Item Number 42, which is the

6  36th, Item Number 43, which is the 37th, Item Number 44, which

7  is the 39th, Item Number 45, which is the 41st, Item Number 46,

8  which is the 42nd, Item Number 47, which is the 43rd, and

9  finally the Item Number 48 on the agenda, which is the 44th

10  omnibus objection, all of those -- the status as to all of

11  those, Your Honor, can be followed with respect to this chart I

12  gave you.  You can see how many people responses, how many were

13  ordered and how many are left to be resolved as to all those.

14  We're continuing to negotiate with these parties.  And so, with

15  respect to all of those agenda items that I just referred to,

16  Your Honor, I would ask that the status hearing with respect to

17  those claims be adjourned until the January 14th hearing date

18  at 2:00 p.m.

19          THE COURT:  All right, that will be fine.

20          MR. FOLEY:  Items Number 28, Your Honor, and Item

21  Number 39 on the agenda, this is our 19th omnibus objection and

22  our 33rd omnibus objection, deal with reclassification of

23  certain claims that were filed as administrative status, but

24  they relate to certain reclamation claims.  And we'd ask that

25  those two omnibus objections, the 19th and the 33rd -- again,

**J&J COURT TRANSCRIBERS, INC.**

22

1 agenda items Number 28 and 39 -- be adjourned for status until

2 the December 21st hearing date.  The reason is, Your Honor, at

3 that time we'd like to -- and by that time we will probably

4 file our reply memorandum that deals with the legal issues that

5 are unique -- not unique, that are common to a bunch of these

6 reclamation claimants that are still asserting administrative

7 status under 546(c) for a variety of legal reasons that we

8 think that the Court can address in a summary judgment type

9 fashion as the Court has done in the past.  And then, at that

10 hearing we will announce the hearing on the merits of that so

11 that the Court and all the parties can be apprised of the new

12 date that we will actually be going forward on those claims.

13         THE COURT:  So, you're going to announce the new date

14 on the 21st.  You're not going to go forward on the 21st.

15         MR. FOLEY:  That's correct, Your Honor.

16         THE COURT:  Okay.

17         MR. FOLEY:  But, we wanted to have that to be able to

18 then -- we will probably use January 28th is my guess.  But, we

19 wanted to give people enough notice to be able to appropriately

20 respond and appear or file whatever additional briefing that

21 they would like to deal with.

22         THE COURT:  All right.

23         MR. FOLEY:  I'm told that we were going to try to use

24 the 14th for that date.

25         THE COURT:  All right.

**J&J COURT TRANSCRIBERS, INC.**

1           MR. FOLEY:  But, again it would just be legal

2     argument common to all the similarly situated claimants.  But,

3     for now, Your Honor, we're just continuing the status until

4     December 21st.

5           THE COURT:  Just the status until the 21st.  On the

6     21st, you're going to announce the date upon which you're going

7     to take up the legal argument.

8           MR. FOLEY:  Yes, Your Honor.

9           THE COURT:  All right.

10          MR. FOLEY:  With respect to the items that are left

11    on the agenda, it's Items Number 11, 12 and 13.  I believe

12    counsel is here for Unical --

13          MR. MORAN:  Yes.

14          MR. FOLEY:  -- and we'll respond to their argument,

15    Your Honor.

16          THE COURT:  All right.

17          MR. MORAN:  Good afternoon, Your Honor, Thomas Moran

18    on behalf of -- local counsel on behalf of Unical Enterprises,

19    Inc., and we're here on Unical's motion for relief from the

20    automatic stay.  My clients filed a breach of contract case

21    that was pending in the Central District for California.  That

22    matter was tried to a hung jury.  It's currently pending before

23    the Ninth Circuit of Appeals because the judge ruled after the

24    jury was hung on the Rule 50 motion and found in favor of

25    Circuit City.  Now, my client would like to appeal that case to

1   the Ninth Circuit and has -- and in fact was about to do that

2   or has -- excuse me, has filed the appeal and at that time

3   Circuit City filed their petition for bankruptcy.

4            The value of the claim is about $4 million, about

5   $3.3 million in principal and the interest brings that to just

6   under $4 million.  The issue in that case was forecasts issued

7   by Circuit City, and my client had a contract to provide

8   telephones to the debtor.  And certain forecasts were issued by

9   Circuit City for periods of time saying how many telephones

10  that they would need or how many telephones they predicted they

11  were going to need to order.  My client relied on those and

12  purchased certain numbers of telephones, and they're pretty

13  close to the forecast.  And eventually the contract was

14  terminated abruptly and my client was left with a number of

15  telephones, the value of which had declined and were unable to

16  sell those.

17           So, the issue that came up in that case was parole

18  evidence involves specific issues of California law and choice

19  of law provisions.  And we feel that the best forum whereby

20  those can be resolved is going to be in California and by the

21  Ninth Circuit.  So, we'd ask that the Court lift the automatic

22  stay as to this case and permit the Ninth Circuit to visit

23  those issues.

24           THE COURT:  All right.  If the Ninth Circuit goes

25  forward on this, it will either reverse and remand the

**J&J COURT TRANSCRIBERS, INC.**

1  proceeding back to the District Court in California?

2         MR. MORAN:  That's my understanding, Judge.

3         THE COURT:  Okay.  It's not going to enter a final

4  judgment in favor of your client at the Ninth Circuit issue.

5         MR. MORAN:  I believe that's correct.

6         THE COURT:  All right.  So, if I grant the relief,

7  then you're going to go up and you'll have the appeal which

8  will undo the judgment that was entered against your client,

9  but it won't get any finality until we retry the case in the

10 California court to a jury?

11        MR. MORAN:  Yes, Judge.

12        THE COURT:  All right.  And have you filed a proof of

13 claim in this case?

14        MR. MORAN:  I believe we have, Your Honor.

15        THE COURT:  All right.  Now --

16        MR. MORAN:  I apologize if I'm not completely sure on

17 the facts.  I'm filling in for Mr. Seamster from my firm.  He

18 was called away on a family emergency.  So, I believe we have

19 filed a proof of claim.  I'm sure if we have not, counsel will

20 correct me.

21        THE COURT:  Well, they certainly have alleged in

22 their papers that you have.

23        MR. MORAN:  Yes.

24        THE COURT:  And my question to you is really, why is

25 it more efficient to have the Ninth Circuit hear an appeal,

1   send it back down to a trial court in California, have the case

2   retried in California and then maybe appealed again, rather

3   than to have this Court decide it through the claims resolution

4   process?

5          MR. MORAN:  Well, Judge, I would have to say that it

6   maybe more efficient from the Court's standpoint to look at

7   this matter and rule on it through the claims process.

8   However, I think the questions of law involved here -- and we

9   go to some length on this in our briefs and the attachment to

10  the brief --

11         THE COURT:  I've read your papers.

12         MR. MORAN:  Okay.  I think the questions of law

13  involved are such that it's really something the Ninth Circuit

14  should be looking -- should rule on rather than going through

15  the Court's claim process.

16         THE COURT:  All right, very good.  Thank you.  Let me

17  hear from Mr. Foley.

18         MR. FOLEY:  Thank you, Your Honor.  With respect to

19  this particular motion, I think it's probably helpful -- I have

20  the judgment entered by Judge Shavaley, the United States

21  District Court Judge.  It's only two pages, Your Honor, but it

22  explains the basis of the legal ruling, which is a Rule 50

23  motion.  This was not a jury verdict in any way.

24         THE COURT:  I understand.

25         MR. FOLEY:  And I would highlight to the Court -- and

**J&J COURT TRANSCRIBERS, INC.**

1  I've provided a copy of this to counsel who I believe already

2  has it.   On the second page of the opinion that the judge

3  wrote, the judge states that, "From the scope of the parties'

4  agreement, it is clear that the present motion is a purely

5  legal dispute that turns upon the Court's interpretation of the

6  agreement's terms.   After reviewing the relevant agreements and

7  the parties' arguments, the Court finds no reasonable jury

8  could find for the plaintiff for two reasons."   And it goes on

9  and explains his legal reasoning.   As the movants' have stated

10 in their papers in Page 3, these are purely issues of law.

11 There are no novel legal issues involving California law.   This

12 is a breach of contract claim.   Your Honor deals with breach of

13 contract claims all the time in this court.

14         Again, they cannot show cause which is the standard

15 on the 362.   They can't deny that the debtor will be prejudiced

16 having to go to the Ninth Circuit Court of Appeals and begin

17 filing briefs.   As they say in Mr. Weiss' affidavit attached to

18 the motion, no briefs have been filed yet in the Ninth Circuit,

19 nothing has happened.   They have filed a proof of claim, Claim

20 Number 6555 in the amount of $4,055,450 in this Court.   I don't

21 know if it's under objection yet, but if it's not it probably

22 will be soon based upon the judge's ruling.   But, they can have

23 a full and fair hearing before this Court and in the collective

24 claims resolution process.   Again, this would be, if anything,

25 a general unsecured claim.

1        We don't know what the value of those claims are

2   going to be yet at this point.  We believe that our papers

3   outline that they have not been able to show cause.  And, as a

4   legal matter, the Court should deny the motion for relief from

5   stay, allow the claims adjudication process to continue in this

6   Court, and have the matter determined here.

7        THE COURT:  Is it Circuit City's position that Unical

8   is bound by the decision of the District Court in California?

9        MR. FOLEY:  Your Honor, I believe so.  I think we

10  will argue res judicata and collateral estoppel.  If Your Honor

11  disagrees and wants to give them a fresh look at the claim,

12  we're fine with that as well.  We haven't analyzed all the

13  issues, but we would think that given that this was a purely

14  legal ruling and not based upon any factual issues, just based

15  upon an interpretation of the documents, Your Honor may reach a

16  different conclusion if Your Honor decides to take a look at

17  it.  But, I think we will have to consider at the time that we

18  object to this claim whether or not concepts of res judicata

19  and collateral estoppel do apply.

20       THE COURT:  Well, if they do, then why wouldn't this

21  claimant be entitled to have the Ninth Circuit reverse or

22  consider reversing the District Court's ruling?  I mean, this

23  Court can't sit as an appellate court over the District Court.

24       MR. FOLEY:  No, I understand that, Your Honor, but we

25  -- again, we haven't addressed that issue at this point.  If

1  Your Honor is asking us to --

2         THE COURT:  I just wonder if they're in a catch 22

3  situation where they're going to be bound by the terms of this

4  order and they are losing their right to appeal or whether they

5  get to start anew in this Court.

6         MR. FOLEY:  Well, I'm not sure how that's different

7  than any other claimants that has to file a claim in this

8  Court, Your Honor.  Any breach of contract party --

9         THE COURT:  Well, I'm asking whether they're going to

10 be bound by this decision.

11        MR. FOLEY:  No.

12        THE COURT:  If you're going to come in and say, we

13 rest on here, it's collateral estoppel, res judicata, they

14 cannot, you know, argue anything other than this and they're

15 losing their right to appeal, I can see where they would be --

16        MR. FOLEY:  I understand that, but I think it's

17 premature to address that because Your Honor would have to --

18 we'd have to evaluate the issue.  We'd have to brief it.  Your

19 Honor would have to decide whether the concepts properly apply.

20 Again, I just don't want to waive that at this point.  If it

21 turns out that Your Honor thinks that they do apply and you

22 think it's appropriate to proceed with the appeal, we can

23 proceed with it at that point in time.  But, right now, it's

24 premature to do that, especially when if this -- if there is

25 any legitimacy to this claim -- we did brief it.  It did go to

1 a jury.  The judge did not take it away from the jury before it

2 went there.

3       We maybe able to negotiate a resolution of this claim

4 depending on what unsecured claims are worth.  It's just

5 premature to use in our view a state resources to start filing

6 legal briefs in the Ninth Circuit Court of Appeal.  So, again,

7 we're not asking you to deny the motion with prejudice.  We're

8 simply asking you to deny the motion now without prejudice

9 subject to brining it up later should Your Honor find that

10 they're in a catch 22 and they need to preserve appeal rights.

11       THE COURT:  All right, thank you.  Anything further?

12       MR. MORAN:  Very briefly, Your Honor.  I would act on

13 your concerns over whether we would suffer any damage to our

14 appeal rights if this matter were to go forward, and Mr. Foley

15 has already kind of indicated that he would go the collateral

16 estoppel res judicata route.  And I would just respond to that

17 by saying, I mean, obviously our rights to appeal can be

18 prejudiced by if the Court ruling -- my opinion is that this

19 Court can prejudice my client's right to appeal by sending this

20 to the claims process and then having the debtor claim that

21 it's treated by res judicata.  We have to have a right to

22 appeal to the Ninth Circuit or to have our claims looked at.

23 And maybe that is something to be looked at down the road, but

24 I think it kind of ties into the whole reason why we're asking

25 this Court for automatic stay in the first place.  And that's

1   to have the Ninth Circuit look at these issues, rule on them

2   and our proceedings here will be effected by then.

3           THE COURT:  And the cause that you say exists in this

4   case that gives you entitlement to relief from stay is the fact

5   that you maybe bound by this decision without the ability to be

6   able to appeal the judge's ruling in this case, and that you

7   shouldn't be bound by this unless you are given your appellate

8   remedy.

9           MR. MORAN:  I think that's fair.

10          THE COURT:  Okay.

11          MR. MORAN:  Yes.

12          THE COURT:  Is there any other cause or irreparable

13  harm that you're going to suffer?

14          MR. MORAN:  I believe that's it, Judge.

15          THE COURT:  Okay, thank you very much.

16          MR. MORAN:  Thank you.

17          THE COURT:  All right.  The Court is going to deny

18  the motion for relief from stay, that is without prejudice.  I

19  don't think I've got before me the issue of whether the debtor

20  is taking the position -- whether they're objecting to the --

21  really there even is an objection to the proof of claim, or if

22  there is an objection that it's an objection based on

23  collateral estoppel or res judicata.  If that issue comes up,

24  then the Court will reconsider at that time whether it's

25  appropriate to grant relief from stay.  But, otherwise, the

1  claim may very well be able to be resolved through the claims

2  resolution process without having to involve the appellate

3  court and the Ninth Circuit.  So, for those reasons, the Court

4  is going to for now deny the motion for relief from stay

5  without prejudice.  Mr. Foley, if you would please prepare the

6  order?

7          MR. FOLEY:  We will, Your Honor.  Thank you.  That

8  leaves Item Number 12 and 13 on the agenda.  Mr. Blanks will

9  address those on behalf of the debtors, Your Honor.

10          MR. BLANKS:  Good morning, Your Honor, Dan Blanks

11 with McGuireWoods on behalf of the debtors.  The remaining

12 items on the agenda this afternoon is the pretrial conference

13 with respect to Adversary Proceeding Number 09-3167, as well as

14 the debtor's motion to dismiss the counterclaim that was filed

15 by Sirius XM.  If Your Honor would permit, I'd like to take the

16 motion to dismiss slightly out of order just so we can resolve

17 that issue, and then with the remaining issue of the possibly

18 scheduling with respect to the adversary proceeding.

19          THE COURT:  All right, you may.

20          MR. BLANKS:  Your Honor, the counterclaim filed by

21 Sirius XM is comprised solely of five paragraphs.  Two of those

22 paragraphs are legal predicates by which this Court has venue

23 and jurisdiction over this matter.  Two of those paragraphs are

24 with respect to factual allegations that are some substance of

25 verbatim from what is asserted by the debtors in its complaint.

1 And the last remaining paragraph, the sole paragraph, has two

2 sentences that comprise that paragraph.  Paragraph 5 provides

3 in sum that Sirius XM alleges that Circuit City breached one of

4 its contracts.  Furthermore, Sirius, and I quote, provides,

5 "Sirius is in the process of fully analyzing the plaintiff's

6 breaches of the Sirius agreement and calculated the damages in

7 loss profits that it suffered from such breaches."

8        The debtors would submit that the first sentence in

9 that paragraph is not a factual allegations.  It is not even a

10 bare assertion of any item, but is solely a legal conclusion.

11 The last remaining sentence in that paragraph is evidence that

12 Sirius XM has no facts and no evidence at this time to allege

13 any breach of any contract.  Your Honor, with that, the debtors

14 would submit that this counterclaim is insufficient as a matter

15 of law and must be dismissed without prejudice.

16        THE COURT:  Well, they don't have to allege their

17 damages, do they?  They just have to allege that they've been

18 damaged, right?

19        MR. BLANKS:  That's correct, Your Honor.  WE would

20 not -- I don't think they need to go through all of the

21 different elements in this paragraph and this particular

22 element that they were damaged.  But, I would submit that they

23 need to do more than simply state that the contract had been

24 breached.  They need to apply some facts to that legal

25 conclusion.

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  Under the Supreme Court's new standard in

2    Ashcroft, they have to allege some facts that would support

3    their claim that there was a breach.

4           MR. BLANKS:  Yes, Your Honor.  Under the new standard

5    by the Supreme Court in Ickball, they need to do more and raise

6    that to a level of plausibility as pled in the documents and

7    not just a simple level that there maybe some claim out there

8    at some point.

9           THE COURT:  All right, thank you.

10          MR. PERKINS:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon, Mr. Perkins.

12          MR. PERKINS:  Your Honor, Chris Perkins for Sirius XM

13   Radio, Inc.  Judge, we filed a response on Friday.  I don't

14   know if the Court has had a chance yet to read it.

15          THE COURT:  I've read your response.

16          MR. PERKINS:  Okay.  That was with an extension by

17   the debtors.  As we said in the papers, Judge, we think the

18   motion to dismiss should be denied.  We believe we've satisfied

19   the standard of plausibility that guides this Court's analysis

20   of the counterclaim.  Judge, this is a breach of contract case.

21   It's probably the most straightforward cause of action that

22   exists under the law.  You've got a contract.  You've got

23   obligations under that contract.  You didn't perform them and

24   we've been damaged, as the Court pointed out.

25          THE COURT:  But, you never said what they didn't do.

**J&J COURT TRANSCRIBERS, INC.**

1           MR. PERKINS:  Well --

2           THE COURT:  You just said they failed to perform

3   numerous post-petition services.  How do they know -- I mean,

4   you should say something like, well, they didn't deliver the

5   widgets on, you know, March 1st, or they should have, you know,

6   dome something that they didn't do.  They didn't provide the

7   marketing they're supposed to provide, you know, on x date, or

8   some single fact, I mean, because all we do have are conclusory

9   allegations.  You say they breached a contract.  I mean, you

10  and I know what breach of contract means because that's a legal

11  term.

12          MR. PERKINS:  Right.

13          THE COURT:  But, you didn't say how they breached the

14  contract.

15          MR. PERKINS:  Well, I would refer the Court back to

16  Paragraph 4 of our counterclaim and -- which states that, "The

17  Sirius agreement provides, among other things, that the

18  plaintiff shall market, advertise and promote subscriptions for

19  satellite radio services and market, advertise, sell and

20  distribute certain equipment."

21          THE COURT:  And I agree with that, but you didn't say

22  that plaintiff failed to market, it failed to advertise, it

23  failed to service.  You just say they breached the contract.

24          MR. PERKINS:  Well, I would say that working in

25  connection, these two paragraphs, the reasonable inference and

**J&J COURT TRANSCRIBERS, INC.**

1 viewing it in the light most favorable to the pleader that

2 that's what was implied there, that the obligations under the

3 contract pled in Point 4, which are there for a reason, were

4 the breaches that were alleged in Point 5.  So, I think when

5 you work those in connection with each other, that puts the

6 defendant on notice of what breaches we're claiming under the

7 contract.  It's no different, Your Honor, then what they pled

8 in their complaint.  Remember, this is a counterclaim.  All

9 they said when they instituted the suit was, we have a

10 contract.  We're supposed to provide services.  We provided

11 them and you didn't pay us.  And what we've said in our

12 counterclaim is, no, you didn't provide them and we don't owe

13 you what you claim.

14        So, it's -- this isn't a case where we're hiding the

15 ball or they don't understand what the allegations are.  In

16 fact, the parties have had a number of discussions off the

17 record and are moving towards what I hope to be a resolution.

18 So, this isn't a case where they don't understand the

19 allegations against them.  They said we did the work.  We said,

20 no, you didn't.  It's almost in the nature of a setoff, so to

21 speak, but we've pled it in the form of a counterclaim.

22        There is one other layer to this, Judge, and that is

23 the proprietary nature of this contract.  It's not on the

24 agenda today, but the debtor has filed a motion to file this

25 contract under seal given the pricing and other sensitive

1  information that neither one of us wants out in the public

2  domain.  They didn't attach it to their complaint, but they

3  referenced it.  They've now filed a motion.  I don't know if

4  it's scheduled for hearing or maybe it's on a negative notice.

5  We certainly don't object to it, but we couldn't go but so far

6  in the complaint without revealing certain of that information

7  because it's confidential.  So, that was another factor in the

8  short and plain statement that Rule A requires that we've given

9  here.

10        Now, I don't think this is a situation like the

11  Supreme Court in <u>Twombly</u> or the <u>Ashcroft</u> case where you're

12  dealing with constitutional law questions, conspiracy, fraud,

13  things that do require a heightened pleading standard.  It's

14  simple, straightforward breach of contract.  We did the work,

15  no, you didn't, and the damages that flow from that.  So, I

16  would submit, Judge, that we have done enough here.  But, of

17  course, if the Court feels that we haven't, we're happy to

18  re-plead and would certainly ask for leave to do that.

19        THE COURT:  All right, thank you.  Mr. Blanks?

20        MR. BLANKS:  Your Honor, we have asked for this in

21  our motion to dismiss that this be without prejudice.  And so,

22  to the extent that Sirius XM would like to refile this

23  counterclaim within -- and as they say in their papers within

24  14 days, the debtors would consent to that.

25        THE COURT:  Well, what would we accomplish by doing

1  that?  I mean, you know what they're complaining about, that,

2  you know, you didn't do what you're supposed to do under the

3  contract, and you're saying that they didn't do what they were

4  supposed to do under the contract.  I mean, it's not a

5  constitutional issue that we're dealing with here.

6      MR. BLANKS:  Understood, Your Honor.  With respect to

7  that, we know that they have stated that we have not complied

8  with all of the terms of the contract.  In our complaint in

9  Paragraphs 22 through 24, we lay out in very explicit detail

10 what those breaches are and why we are suing them for the

11 aggregate amount that we are suing them under the complaint.

12 With respect to their counterclaim against us, they just say

13 that we breached the contract.  We have no way of knowing if

14 it's the marketing that they allege that we breached, if it's

15 the returns that we allegedly breached or what exactly they

16 alleged that we breached under the contract.  We have no

17 knowledge as to how we would properly respond to that at this

18 point.  They have not pled a single fact that they have alleged

19 that we breached the contract.  They have simply said that we

20 breached the contract.

21      THE COURT:  Why wouldn't you be able to ferret that

22 out through appropriate interrogatories, state the facts and

23 information to support your allegation, Paragraph 5?

24      MR. BLANKS:  Your Honor, at this time -- we maybe

25 able to do that through discovery.  But, at this point, we

**J&J COURT TRANSCRIBERS, INC.**

1 would simply submit that they had failed to state a single fact

2 in their claim.

3     THE COURT:  And what they're going to do if they

4 refile, they're going to come back and they say, well, you

5 failed to, you know, market.  You failed to advertise.  You

6 failed to sell.  You failed to distribute the equipment.  And

7 so, what have we accomplished there?  Aren't you better off

8 getting discovery and getting that going?

9     MR. BLANKS:  We would at least narrow the scope of

10 that discovery, Your Honor, because at this point since we have

11 no idea what particularly they allege that we have breached and

12 we also don't know that they have even analyzed the breaches.

13 Again, in Paragraph 5, they say that they are still analyzing

14 the breaches under the Sirius agreement.  So, with that

15 remaining out there with Circuit City not having any knowledge

16 of those breaches, what we would be left with is discovery on

17 every single aspect of the contract.  We would have no way to

18 narrow the scope.  If we're going to have a trial on this and

19 the entire contract is open for debate -- and, again, these

20 contracts, if Your Honor has reviewed them, it is a -- two

21 separate contracts, one for Sirius --

22     THE COURT:  I've not seen the contracts.

23     MR. BLANKS:  I believe we delivered one to your

24 chambers, but understood, Your Honor.  There are effectively

25 two contracts, one for Sirius, one for XM, and then a number of

1  letter agreements that follow from each of them.  If we were to

2  have discovery on each component of each of those contracts, as

3  well as the letter agreements, as well as possible emails that

4  may amend or revise some of those terms in those contracts, we

5  would be left with discovery that would burden all of the

6  parties as well as this Court.

7            THE COURT:  Anything further?

8            MR. BLANKS:  That is all, Your Honor.

9            THE COURT:  All right.  I'm going to deny the motion

10  to dismiss the counterclaim.  I don't think that the standard

11  denunciated by the Supreme Court in its recent decision, you

12  know, comes to that heightened standard.  I think that the

13  parties are adequately informed of the issues against them.

14  The contract has been identified.  And I think that the

15  specific allegations can be sorted out by way of discovery in

16  the ordinary course.  Mr. Perkins, would you please draft the

17  order and submit that to the Court?

18            MR. PERKINS:  I will, Your Honor.

19            MR. BLANKS:  Your Honor, the last item on the agenda

20  is the pretrial conference with respect to Sirius XM.  With

21  Your Honor's ruling, we will file our answer as -- one moment,

22  Your Honor.  With Your Honor's permission as well as counsel

23  for Sirius XM, we'll file our answer within ten days if that's

24  acceptable?

25            THE COURT:  I thought we had to do everything in

**J&J COURT TRANSCRIBERS, INC.**

1  numbers of seven or 14.  So, I was going to give you 14 days.

2          MR. BLANKS:  I'm sorry, Your Honor.  I realize it's

3  after December 1st now.  Fourteen days is acceptable to the

4  parties?

5          UNIDENTIFIED SPEAKER:  That's fine with me.

6          THE COURT:  Fourteen days will be fine.

7          MR. BLANKS:  Thank you, Your Honor.

8          THE COURT:  We just have to get everybody used to

9  thinking that way now.

10          MR. BLANKS:  I apologize, Your Honor.

11          THE COURT:  No apology necessary.

12          MR. BLANKS:  The last item on the agenda is the

13  pretrial.  We have spoken with Sirius XM.  We believe that this

14  matter can be litigated and tried in approximately one day,

15  perhaps even less.  With respect to a standard scheduling

16  order, I think the parties would be in agreement with that.  If

17  we could have a date that's approximately six months out from

18  today, I think that would be sufficient time for discovery and

19  other matters.

20          THE COURT:  All right, very good.  How about June 24?

21  That's a Thursday.

22          UNIDENTIFIED SPEAKER:  That's available for me, Your

23  Honor.

24          MR. BLANKS:  That's fine, Your Honor.

25          THE COURT:  Okay.  So, we'll start June 24, and that

**J&J COURT TRANSCRIBERS, INC.**

1    will be at ten o'clock.  And you say the Court's normal

2    pretrial order will be satisfactory as far as the parties are

3    concerned?

4            MR. BLANKS:  Yes, Your Honor.

5            THE COURT:  Okay.  The Court had received some

6    inquiry previously about modifying the Court's pretrial.  And

7    if the parties are agreeable, the Court certainly would.  But,

8    in this case, I'll just issue the normal pretrial order.

9            MR. BLANKS:  That's fine, Your Honor.

10           THE COURT:  All right.  Is there any other business

11   we need to take up this afternoon?

12           MR. FREDERICKS:  Good afternoon, Your Honor, Ian

13   Fredericks of Skadden, Arps on behalf of the debtors.  There is

14   one matter not on the agenda that I just wanted to bring to the

15   Court's attention.  At the November 12th hearing, I believe Mr.

16   Galardi of Skadden, Arps announced to the Court that

17   confirmation would be adjourned to December 21st while the

18   debtors worked -- the debtors and the committee worked through

19   a structural issue with the plan.  At this point, we are not

20   going to be able to go forward with the confirmation on

21   December 21st.  We have agreed with the committee to adjourn

22   confirmation further.  However, we're still working on what an

23   appropriate date would be.  And so, what we intend to do is

24   later this week file a formal notice adjourning it to some date

25   beyond December 21st.

**J&J COURT TRANSCRIBERS, INC.**

43

1            THE COURT:  How much slippage do you anticipate?

2            MR. FREDERICKS:  I would anticipate that it's at

3  least going to go to the end of January at this point.  I

4  believe we have the January 28th hearing.  It's possible that

5  it could go into February, and that's kind of all the

6  information that we have right now.

7            THE COURT:  All right.  You say that the issue is

8  structural issues with the committee.  Does this concern the

9  objections that have been filed?

10           MR. FREDERICKS:  No, it doesn't concern the

11 objections that have been filed.  It concerns some structural

12 issues related to the Canadian proceedings, so --

13           THE COURT:  All right, that's what Mr. Galardi said

14 last time.

15           MR. FREDERICKS:  Yes.

16           THE COURT:  All right.

17           MR. FREDERICKS:  We did receive the objections.  We

18 are working through the objections, and our goal obviously is

19 to continue to work through those and try to resolve as many or

20 at least narrow those issues prior to bringing them before the

21 Court, so.

22           THE COURT:  All right.  Well, that would certainly be

23 the Court's hope as well.  All right, thank you for that

24 report.

25           MR. FREDERICKS:  All right.

**J&J COURT TRANSCRIBERS, INC.**

44

1                THE COURT:  Anything further?

2                MR. FREDERICKS:  I don't believe there's anything

3    further, Your Honor.

4                THE COURT:  All right.  Thank you, all then.  We'll

5    be adjourned.

6                MR. FOLEY:  Thank you, Your Honor.

7                THE COURT DEPUTY:  All rise.  Court is now adjourned.

8                          * * * * *

9                   C E R T I F I C A T I O N

10               I, CARLA M. OAKLEY, court approved transcriber,

11   certify that the foregoing is a correct transcript from the

12   official electronic sound recording of the proceedings in the

13   above-entitled matter, and to the best of my ability.

14

15

16   /s/ Carla M. Oakley

17   CARLA M. OAKLEY

18   J&J COURT TRANSCRIBERS, INC.              DATE:  January 24, 2010

19

20

21

22

23

24

25

                      **J&J COURT TRANSCRIBERS, INC.**