Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
: 
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :    Jointly Administered
- - - - - - - - - - - - - - x

DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE
SECTIONS 105, 363(b) AND 503(c)(3) APPROVING A
LIQUIDATION RETENTION PLAN AND AUTHORIZING
PAYMENT OF LIQUIDATION RETENTION PAY

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      *(cont'd)*

hereby move for entry of an order, under sections 105, 363(b) and, to the extent applicable, 503(c) of title 11 of the United States Code (the "Bankruptcy Code"), approving the Liquidation Retention Plan (as defined herein) and authorizing, but not directing, payment of wind down retention pay to Plan Participants (as defined herein).  In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicate for the relief requested herein are Bankruptcy Code sections 105, 363(b) and, to the extent applicable, 503(c)(3)..

---

*(cont'd from previous page)*
    Inc. (0875), Ventoux International, Inc. (1838), Circuit City
    Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
    Distribution Company of Virginia, Inc. (2821), Circuit City
    Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
    Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
    Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
    Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
    LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
    for Circuit City Stores West Coast, Inc. is 9250 Sheridan
    Boulevard, Westminster, Colorado 80031.  For all other Debtors,
    the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**BACKGROUND**

**A.    General Background.**

2.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

3.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

5.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

6.     On August 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").  The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009, and confirmation of the Plan is currently scheduled for February 11, 2010.

7.     Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

**B.     The Wind Down Incentive And Retention Plan.**

8.     On February 6, 2009, the Debtors filed a request for approval of a wind down incentive and retention plan (the "Wind Down Incentive and Retention Plan") and authorization of payment of wind down incentive pay to participants in that plan. Under that plan, participants were divided into two categories -- Tier I, which consisted of management level employees that may be considered "insiders," as that term is defined in Bankruptcy Code section 101(31), and Tier II, which consisted of non-insider key employees.

9.     Tier I participants were entitled to earn incentive bonuses based upon their performance with

4

respect to accomplishing various identified tasks.  Tier
II participants, on the other hand, were entitled to
retention payments that varied based on (1) the
employee's weekly salary, (2) the length of time for
which the employee's services were needed, and (3)
whether the employee was designated to receive 25%, 50%,
or 75% of his or her weekly salary earned during the
length of time for which the employee's services were
needed.

10.  On March 25, 2009, this Court approved the
Wind Down Incentive and Retention Plan, as modified by
agreement with the Committee, other than with respect to
James Marcum for whom the motion was adjourned.

11.  With respect to Tier I Plan Participants,
payments have been or will be made in accordance Wind
Down Incentive and Retention Plan upon completion of
tasks associated with each payment.  With respect to Tier
II participants, however, the Wind Down Incentive and
Retention Plan expired on or before January 15, 2010.

### RELIEF REQUESTED

12.  By this Motion, the Debtors seek entry of
an order under Bankruptcy Code sections 105, 363(b) and,
to the extent applicable, 503(c) (i) approving the
Liquidation Retention Plan, (ii) authorizing the Debtors
to implement the Liquidation Retention Plan for the Plan

Participants, and (iii) allowing all payments thereunder as administrative expenses of the Debtors' estates.  The Creditors' Committee has advised the Debtors that it supports the relief requested in this Motion.

## BASIS FOR RELIEF

13.  As this Court is aware, the Debtors and the Committee have proposed and solicited votes on the Plan, which contemplates the continued liquidation of the Debtors' assets, reconciliation of liabilities, and the distributions according to the priorities set forth in the Bankruptcy Code.  Against this backdrop, the Debtors have continued to work towards an orderly and efficient liquidation process, including liquidating their remaining assets, minimizing administrative expenses, investigating causes of action for the benefit of their estates, reconciling claims, and advancing towards confirmation of the Plan.

14.  To assist the Debtors with that process, the Debtors currently have 23 full-time employees.  At this time, the Debtors believe that the continued employment of their remaining employees is in the best interests of their creditors and their estates.  The Debtors believe that their ability to keep their remaining employees, however, is threatened by three primary factors.

15. First, the employees recognize that, due to the liquidation, long-term employment with the Debtors is not an option. Second, the employment market in Richmond has improved considerably over the last several months. Indeed, the Debtors have had certain unexpected resignations by certain key employees. Third, the Wind Down Incentive and Retention Plan expired. And, as a result, the Debtors have no ability to incentivize their employees to remain until their services are no longer needed.

16. Moreover, additional unexpected employment losses threaten the Debtors' ability to achieve an orderly and efficient liquidation. Thus, to successfully continue and complete the liquidation process, the Debtors determined that formulating a retention plan for those twenty (20) employees set forth on Exhibit A (the "Plan Participants")[2] was in the best interest of their estates and creditors. Such a plan would help ensure that Plan Participants, each of whom are essential to the liquidation process and critical to managing the effective and timely liquidation of the Debtors' estates,

---

[2] A list of all 20 employees and their proposed compensation under the Liquidation Retention Plan is attached as Exhibit A. The Debtors have provided the Creditors' Committee with the information and will also provide such information to the Court and the U.S. Trustee.

are retained in order to maximize value for the Debtors'
creditors.  Indeed, the Plan Participants' efforts have
been, and continue to be, critical to the Debtors'
efforts to facilitate a liquidation process that will
allow the Debtors and their estates to realize the
highest value possible.

      17.  In order to assure the continued
employment of Plan Participants and to motivate them to
continue to expend the additional effort required of them
to efficiently liquidate the Debtors' estates, as well as
to continue to manage an efficient and coordinated
chapter 11 process, the Debtors have worked with their
restructuring professionals to develop an appropriate but
limited liquidation retention plan (the "Liquidation
Retention Plan" or the "Plan").  The Debtors formulated
the Liquidation Retention Plan with the goal of rewarding
the substantial contribution and performance of the Plan
Participants going forward.  Because the Wind Down
Incentive and Retention Plan has expired, it is
imperative that the Plan Participants continue to be
motivated to provide their substantial contributions to
the liquidation of the Debtors.  The efforts of the Plan
Participants have been and will continue to be
instrumental to the Debtors efforts to effectively
liquidate their estates, including ongoing efforts to

maintain value in order to provide the maximum return to the Debtors' estates and creditors.

### THE LIQUIDATION RETENTION PLAN

18.   The proposed Liquidation Retention Plan is relatively straightforward and designed to incentivize the Plan Participants to remain with the Debtors and continue their efforts to liquidate their estates and maximize value.  The Liquidation Retention Plan consists of retention bonus payments to the Plan Participants based upon their continued service to the Debtors for a specified period of time as described more fully below.  Although the total payments under the Plan will vary, on a weekly basis, the Debtors estimate that the Debtors will accrue approximately nine thousand four hundred dollars ($9,400).

19.   As noted above, the Plan Participants consist of 20 employees.  None of the Plan Participants are members of the Debtors' management or "insiders" and are not persons in control of the Debtors such that they set overall corporate policy or perform other executive duties.  Titles include Director, Manager, Supervisor, Project Manager, Specialist, Senior Analyst, Associate Analyst, Senior Processor, and Processor.

20.   The Liquidation Retention Plan provides for retention bonus payments to each Plan Participant

based on such person's continued service to the Debtors
through the earlier of the following date (as it may vary
for each Plan Participant, such date, the "End Date"):
(i) the date the Debtors sever such Plan Participant, and
(ii) the effective date of a plan of liquidation.  All
payments to a particular Plan Participant under the Plan
vest and will be made on each Plan Participant's
applicable End Date.  Importantly, if a Plan Participant
voluntary terminates his or her employment or is
terminated for cause before the End Date, such Plan
Participant will not receive any portion of any payment
that the Plan Participant would have received had the
Plan Participant continued to be employed by the Debtors
on the End Date.

21.   The Liquidation Retention Plan treats each
Plan Participant differently and payments to a particular
Plan Participant depend on three factors: (i) weekly
salary, (ii) the percentage of the weekly salary
designated under the Liquidation Retention Plan,[3] and
(iii) the number of weeks actually worked beginning with
the first week after the Debtors' Wind Down Incentive and

---

[3]    Unless otherwise noted in Exhibit A, the percentage for each
Participant is the same as the percentage previously approved
by the court with regard to Debtors' Wind Down Incentive
and Retention Plan.

Retention Plan ended for the particular Plan Participant and ending on such Plan Participant's respective End Date.  Notably, the Plan Participants are not required to accomplish specific performance metrics to be eligible for payment.

22.  To illustrate, if a Plan Participant's prior Wind Down Incentive and Retention Plan ended on December 31, 2009, the Plan Participant worked through June 30, 2010 (the date the Plan Participant was terminated without cause and assuming the Plan was not confirmed earlier), the Plan Participant earned $1,000 per week, and the Plan Participant was entitled to a retention bonus payment equal to 50% of his or her weekly salary, under the Liquidation Retention Plan, the Plan Participant would receive a retention payment equal to $13,000 ($1,000 multiplied by 50% multiplied by 26 weeks) on June 30, 2010.  If, however, that Plan Participant voluntarily resigned from, or was terminated for cause by the Debtors on June 29, 2010, such Plan Participant would not receive any payments under the Liquidation Retention Plan.

23.  Based on the foregoing, the Debtors submit that approval of the Liquidation Retention Plan is in the best interests of the Debtors and their estates.

### APPLICABLE AUTHORITY

I.   **THE LIQUIDATION RETENTION PLAN IS A VALID EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT AND WARRANTED UNDER BANKRUPTCY CODE SECTION 363(B).**

24.   Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

25.   Under Bankruptcy Code section 363, this Court may approve a debtor's request for relief when the debtor demonstrates a sound business justification for seeking such relief.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

26.   As set forth above, the Debtors have articulated valid business reasons for implementing the Liquidation Retention Plan.  Among other things, the Liquidation Retention Plan will help ensure the Debtors continue to liquidate and wind down their estates in an orderly and efficient manner.  Moreover, the Liquidation Retention Plan is structured to maximize value for the Debtors' estates and creditors by rewarding the Plan Participants for remaining with the Debtors until the

12

Debtors no longer need their services or a plan of liquidation becomes effective. Accordingly, the Debtors believe that valid business reasons exist for the implementation of the Liquidation Retention Plan and, thus, that it should be approved.

27. Once a debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" See id.

28. In that regard, courts have found that a debtor's use of reasonable bonuses and other incentives for employees is a valid exercise of a debtor's business judgment. See, e.g., In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (noting that it is the proper use of a debtor's business judgment to propose bonuses for employees who helped propel the

13

debtor successfully through the bankruptcy process); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (stating that a debtor's business judgment was controlling in the approval of a "performance/retention program").

29.   More importantly, perhaps, even after the recent amendments to the Bankruptcy Code, courts have approved employee bonus programs as valid exercises of business judgment. See, e.g., In re Nellson Nutraceutical, Inc., 368 B.R. 787, 801 (Bankr. D. Del. 2007) (Bankruptcy Code section 503(c)(1) does not restrict incentive payments to non-insider employees); In re Dana Corp., 358 B.R. 567 (Lifland, J.) (Bankr. S.D.N.Y. Nov. 30, 2006) (approving management incentive plan under the business judgment standard), appeal docketed Case No. 07-CV-01888 (PKC) (S.D.N.Y. Mar. 5, 2007) (appeal dismissed by consent of parties); In re Global Home Prods. LLC, 369 B.R. 778 (Bankr. D. Del. 2007) (approving management incentive program for benefit of nine employees of the debtors provided that such employees fulfilled their obligations to the debtors through the closing of a sale of substantially all of the Debtors' assets).

30.   Indeed, this Court previously approved retention payments under the Wind Down Incentive and

Retention Plan.  In re Circuit City Stores, Inc., Case
No. 08-35653 (Bankr. E.D. Va. Mar. 25, 2009).  Similarly,
other courts have also approved plans that contemplate
retention payments to non-insiders.  See In re KB Toys,
Inc., Case No. 08-13269 (Carey, J.) (Bankr. D. Del. Jan.
6, 2009) (approving a retention plan for non-insider
employees); In re Mervyn's Holdings, LLC, Case No. 08-
11586 (Gross, J.) (Bankr. D. Del. Oct. 30, 2009)
(approving a retention plan for non-insiders); In re
Linens Holding Co., Case No. 08-10832 (Sontchi, J.)
(Bankr. D. Del. Oct. 21, 2008) (approving a retention
plan for non-insiders).

    31.  In the present case, authorizing the
Debtors to provide the Liquidation Retention Plan to the
Plan Participants will accomplish a similarly sound
business purpose.  The Debtors have determined that the
costs associated with such additional post-petition
compensation are more than justified by the benefits that
the Debtors will realize by the continued retention of
Plan Participants, whose experience, skills and diligent
efforts are critical for the Debtors to maximize the
value of their estates.  Indeed, the Plan Participants
are essential for Debtors' continued efforts in
liquidating their remaining assets, minimizing
administrative expenses, investigating causes of action

15

for the benefit of their estates, reconciling claims, and achieving confirmation of the Plan.

**II.   THE LIQUIDATION RETENTION PLAN DOES NOT CONFLICT WITH BANKRUPTCY CODE SECTION 503(C)(1) OR (C)(2).**

32.   Bankruptcy Code Section 503(c) governs retention, severance and other payments to insiders.  The Liquidation Retention Plan does not conflict with Bankruptcy Code section 503(c) because the Plan Participants are not "insiders" within the meaning of Bankruptcy Code section 101(31).  To be considered "insiders", the Plan Participants must exercise control over the Debtors, influence general corporate policy, or perform other important executive functions.  See <u>455 CPW Assocs. v. Greater N.Y. Sav. Bank (In re 455 CPW Assocs.)</u>, 2000 U.S. App. LEXIS 23470 (2d Cir. Sept. 14, 2000) (affirming a bankruptcy court's holding that a vice president of a limited partnership that was a limited partner of the debtor was not an insider because he was not "in control"); <u>NMI Sys. v. Pillard (In re NMI Sys.)</u>, 179 B.R. 357, 368 (Bankr. D.D.C. 1995) (concluding that a "vice president" was not an "officer" or a "person in control" within the meaning of insider in the Bankruptcy Code because the employee was not in a position to influence corporate policy); <u>C.f.</u>, <u>Gold v. Sloan</u>, 486 F.2d 340, 350 (4th Cir. Va. 1973) (concluding, in the

16

context of a section 16(b) Securities Exchange Act of
1934 lawsuit, that an officer's title was "merely
titular" because such officer was a member of lower level
management and did not have access to or could avail
himself of inside information); <u>C.R.A. Realty Corp. v.
Crotty</u>, 878 F.2d 562, 566 (2d Cir. 1989) (concluding that
a vice president was not an "officer" within the meaning
of section 16(b) of the Securities Exchange Act of 1934
because, among other things, the officer did not have
access to inside information).  Here, none of the Plan
Participants exercise control over the Debtors, influence
general corporate policy, or perform other important
executive functions.

33.  As such, Bankruptcy Code section 503(c)
not only does not conflict with the Liquidation Retention
Plan as it applies to Plan Participants, the Code section
is not applicable.

**III. THE LIQUIDATION RETENTION PLAN IS JUSTIFIED UNDER
THE FACTS AND CIRCUMSTANCES UNDER BANKRUPTCY CODE
SECTION 503(C)(3).**

34.  Bankruptcy Code section 503(c)(3)
provides:

> [There shall neither be allowed, nor paid--]
> (3) other transfers or obligations that are
> outside the ordinary courts of business and
> not justified by the facts and circumstances
> of the case, including transfers made to, or
> obligations incurred for the benefit of,

17

> officers, managers, or consultants hired
> after the date of the filing of the
> petition.

11 U.S.C. § 503(c)(3).

35. Courts have held that the requirement that transfers or obligations be "justified by the facts and circumstances of the case" is a reiteration of the business judgment test (or sound business judgment test) incorporated into Bankruptcy Code section 363(b) and under which courts traditionally evaluated compensation programs prior to recent amendments to the Bankruptcy Code. See In re Dana Corp., 567 B.R. at 576; In re Nobex Corp., Case No. 05-20050 (Walrath, J.) (Bankr. D. Del. Jan. 12, 2006) ("So I do read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case. Nothing more – no further guidance being provided to the Court by Congress, I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside the ordinary course of business and that is, based on the business judgment [sic] of the debtor, the court always considered the facts and circumstances of the case to determine

whether it was justified."); <u>In re Calpine Corp.</u>, Case No. 05-60200 (Lifland, J.) (approving incentive plan under Bankruptcy Code section 503(c)(3) pursuant to the business judgment test).[4]

36.   As demonstrated above, the Debtors have established a sound business justification for the proposed Liquidation Retention Plan.  exercise control over the Debtors, influence general corporate policy, or perform other important executive functions

37.   Finally, the Liquidation Retention Plan is fair and reasonable and does not discriminate among the Plan Participants.  Moreover, the total potential payout the Debtors seek to pay pursuant to the Liquidation Retention Plan is reasonable in the context of the Debtors' assets and liabilities, as well as the value the Debtors anticipate preserving and obtaining as a result of the critical employees' efforts.

---

[4]   <u>See also</u> 4 <u>Collier on Bankruptcy</u> ¶ 503.17[3] (15th rev. ed. 2006) (indicating that the standard for approval under Bankruptcy Code section 503(c)(3) is "unlikely to be much different than the standard for approval that would otherwise be applied by the court").  <u>Cf.</u>, <u>In re Refco Inc.</u>, Case No. 05-60006 (Drain, J.) (Bankr. S.D.N.Y. Jan. 10, 2006 (approving non-insider retention plan pursuant to business judgment test).

IV.   **THE LIQUIDATION RETENTION PLAN IS ALSO APPROPRIATE
      UNDER BANKRUPTCY CODE SECTION 105(A).**

38.   Bankruptcy Code section 105 provides that
"[t]he court may issue any order, process, or judgment
that is necessary or appropriate to carry out the
provisions of this title."  11 U.S.C. § 105.

39.   As set forth in detail above, the
Liquidation Retention Plan is critical to the Debtors'
efforts to maximize the value of their estates throughout
the liquidation process.  The efforts of the Plan
Participants in pursuing the maximum return for the
Debtors' creditors and other parties in interest, as well
as their efforts in pursuing confirmation of the Plan,
are essential to the Debtors.  Therefore, the costs
associated with the Liquidation Retention Plan are
reasonable and necessary and are justified by the
benefits that the Debtors will realize as a result of the
services of the Plan Participants.

40.   For all the foregoing reasons, the Debtors
submit that the Liquidation Retention Plan should be
approved.

V.    **WAIVER OF THE TEN-DAY STAYS PROVIDED BY BANKRUPTCY
      RULE 6004 SHOULD BE WAIVED.**

41.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of
property is stayed until the expiration of 10 days after

20

entry of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

42.   The Debtors request that the Court waive
the ten-day stay of Bankruptcy Rules 6004 with respect to
the Liquidation Retention Plan following entry of the
Order approving such plan.  By waiving such requirements,
the Debtors will be able to immediately provide certainty
to Plan Participants that they will be compensated for
their efforts to maximize value for these estates.

### NOTICE

43.   Notice of this Motion has been provided to
those parties entitled to notice under this Court's Order
Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice, Case
Management, and Administrative Procedures (Docket No.
130).  The Debtors submit that, under the circumstances,
no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

44.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a separate
written memorandum of law be waived.

21

## NO PRIOR REQUEST

45.  No previous request for the relief sought in this Motion has been made to this Court or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 29, 2010
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley _____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                :
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC., et   :   Case No. 08-35653 (KRH)
al.,                            :
                                :
                    Debtors.    :   Jointly Administered
- - - - - - - - - - - - - - x

### ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363(b) AND 503(c)(3) APPROVING A LIQUIDATION RETENTION PLAN AND AUTHORIZING PAYMENT OF LIQUDIATION RETENTION PAY

Upon the motion (the "Motion")[1] of the Debtors[2] for

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company

*(cont'd)*

entry of an order, under Bankruptcy Code sections 105, 363(b), and, to the extent applicable, 503(c)(3) approving the Liquidation Retention Plan and authorizing, but not directing, payment of liquidation retention pay to Plan Participants; and this Court having fully considered the record before it; and it appearing that the relief requested by the Motion is supported by the Committee and in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

1.    Given the circumstances surrounding the liquidation and wind down process in these chapter 11 cases, the Liquidation Retention Plan is designed to retain the Plan Participants to ensure that the Debtors can conduct an

---

*(cont'd from previous page)*
of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

orderly, efficient and effective liquidation of their estates.

2.    The full experience, expertise, unique skills, and enthusiastic involvement of the Plan Participants will be beneficial to the Debtors' efforts to maximize value for their estates.

3.    The Plan Participants are the personnel of the Debtors with the necessary skill and experience to ensure that the liquidation process produces the best result and maximum value for the Debtors and their estates.

4.    The Debtors have demonstrated sound business justifications for authorizing the Liquidation Retention Plan.

5.    In proposing the Liquidation Retention Plan subject to this Court's approval, the Debtors acted on an informed basis, in good faith and in the honest belief that such action was in the best interests of the Debtors, their estates, and their creditors.

6.    The terms of the Liquidation Retention Plan, proposed by the Debtors after consultation with their professionals and approval by the Creditors' Commtitee, are

fair and reasonable under the circumstances and provide a substantial benefit to these estates.

7.    The terms of the Liquidation Retention Plan are appropriate under the facts and circumstances as presently exist in these bankruptcy cases.

8.    The Liquidation Retention Plan is not governed by Bankruptcy Code section 503(c)(1) or (c)(2).

9.    Each Plan Participant is not an "insider" (as defined in the Bankruptcy Code).  As such, Bankruptcy Code section 503(c) does not apply to any payments to the Plan Participants.

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Motion is GRANTED.  All objections or responses to the Motion not otherwise resolved are hereby OVERRULED.

2.    Pursuant to Bankruptcy Code sections 105, 363 and, to the extent applicable, 503(c)(3), the Liquidation Retention Plan is APPROVED in all respects.

3.    The Debtors are authorized, but not directed, to implement the Liquidation Retention Plan for the Plan Participants.

4.    The Debtors are authorized, but not directed, to make payments to the Plan Participants in accordance with the Liquidation Retention Plan.

5.    Any and all payments to the Plan Participants shall be made in accordance with the following:

(a)    The Debtors are authorized, but not directed, to make payments to the 20 Plan Participants set forth on Exhibit 1 hereto based on such person's continued service to the Debtors through the earlier of the following date (as it may vary for each Plan Participant, such date, the "End Date"): (i) the date the Debtors sever such Plan Participant, and (ii) the effective date of a plan of liquidation.

(b)    All payments to a particular Plan Participant under the Plan vest and will be made on each Plan Participant's applicable End Date.

(c)    If a Plan Participant voluntary terminates his or her employment or is terminated for cause before the End Date, such Plan Participant will not receive any portion of any payment that the Plan Participant would have received had the Plan Participant continued to be employed by the Debtors on the End Date.

(d)    The Debtors are authorized, but not directed, to make payments to each Plan Participant, in accordance with the terms set forth on Exhibit 1 hereto, depending on three factors: (i) weekly salary, (ii) the percentage of the weekly salary designated under the Liquidation Retention Plan, and (iii) the number of weeks actually worked beginning with the first week after the Debtors' Wind Down Incentive and Retention Plan ended for

the particular Plan Participant and ending on such Plan Participant's respective End Date.

6.    All payments under the Liquidation Retention Plan shall be allowed administrative expenses of the Debtors' estates under Bankruptcy Code section 503(b).

7.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rule 6004(h) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

8.    The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

9.   This Court retains jurisdiction to hear and

determine all matters arising from or related to the

implementation or interpretation of this Order.

Dated:   Richmond, Virginia
         _____, 2010


         _____
         UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**EXHIBIT 1**

**(Plan Participants and Retention Bonus Payment Terms)**

# [FILED UNDER SEAL]