Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

         - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        : Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    : Case No. 08-35653
<u>et al.</u>,                :
                              : Tax ID No. (54-0493875)
         Debtors.            :
                              : Jointly Administered
- - - - - - - - - - - - - - x

**MOTION OF DEBTORS FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTION 105 AND BANKRUPTCY RULE 2002, 3003(c)(3), AND
9007 TO DEEM PUBLICATION NOTICE OF GENERAL BAR DATE
SUFFICIENT AS TO CERTAIN PARTIES**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
                                                          *(cont'd)*

hereby move (the "Motion") this Court for entry of an

order (the "Order") pursuant to section 105 of title 11

of the United States Code (the "Bankruptcy Code"), and

Rules 2002, 3003(c)(3) and 9007 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") to deem

publication notice of the general bar date sufficient as

to certain parties.  In support of the Motion, the

Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

---

*(cont'd from previous page)*
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2.     The statutory predicates for the relief requested herein is Bankruptcy Code section 105.  Such relief is warranted pursuant to Bankruptcy Rules 2002, 3003(c)(3) and 9007.

## BACKGROUND

**A.    General Case Background.**

3.     On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.     On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement")

between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

7.    On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").  The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009, and confirmation of the Plan is currently scheduled for January 28, 2010.

8.    Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

**B.    The Rebate Programs.**

9.    Prior to the Petition Date, the Debtors from time to time offered customers rebates (the "Rebates") on products sold at the Debtors' stores and

on the Debtors' website.  The Rebates were promotions
that allowed customers to mail in forms (the "Rebate
Forms") to receive money back on certain products
(collectively, the "Rebate Programs").

10.  Prior to the Petition Date, the Debtors
contracted with various companies to administer the
Rebate Programs.  Between 1999 and the Petition Date,
the Rebate Programs were predominantly administered by
Young America Corporation ("Young America") and Parago,
Inc. ("Parago").

**1.   The Parago Rebate Program.**

11.  Between October, 2005 and March, 2009,
Parago was the Debtors' sole provider of Rebate Program
administration services.  In order to take advantage of
a Rebate offer under the Parago Rebate Program, each
customer was required to mail a completed Rebate Form to
Parago.  Parago would process all of the Rebate Forms it
received from customers within a certain period of time,
compile the data from the Rebate Forms into an
electronic file, and then transmit the file to Solutran,
Inc. ("Solutran").

12.   Solutran was responsible for issuing rebate checks (the "Rebate Checks") on behalf of Circuit City directly to the customers (the "Rebate Check Holders") based on the information it received from Parago.   The Rebate Checks were paid by Solutran with funds provided by Circuit City from an account administered by Solutran (the "Solutran Account").

13.   During Parago's administration of the Rebate Programs, each Rebate Check conspicuously indicated on the face of the check that it was void after ninety (90) days from the date the Rebate Check was issued.   An example of a Rebate Check issued by Solutran is attached hereto as Exhibit A.   In most cases, if a Rebate Check was not cashed within ninety (90) days of issuance, the Rebate Check Holder was deemed to have rejected the Rebate offer.   More particularly, the Rebate offers issued by the Debtors generally contained the following, or similar, language:

> In order to accept this offer, you must cash the promotional incentive offer check within ninety (90) days of check issuance. If you do not cash the check within this time period, you shall be deemed to have rejected this offer, making it void. Circuit City is not responsible for any

> lost or misdirected checks. By submitting
> this form, you acknowledge and agree to
> these conditions of acceptance and that
> any disputes arising from or relating to
> this offer will be governed by Virginia
> law without regard to its choice of law
> rules.

Examples of Rebate offers containing this language are attached hereto as <u>Exhibit B</u>.

14.  As of the Petition Date, there were approximately 480,000 outstanding Rebate Checks issued under the Parago Program.  The total value of these Rebate Checks is approximately $20,355,443.00.  The individual Rebate Checks range in value between approximately $1.00 and $1,200.00.  The approximate average amount of the outstanding Rebate Checks is $43.00.  Moreover, approximately 444,000 of these outstanding Rebate Checks, with an approximate value of $18,550,106.00, were more than ninety days old as of the Petition Date, and thus, expired by their own terms and are void.

**2.    The Young America Rebate Program.**

15.  The Debtors engaged Young America to provide Rebate program administration services between November of 1999 through September of 2005.  Because

that relationship was terminated in 2005, the Debtors no longer possess detailed information about the procedures that were in place during Young America's administration of the various Rebate Programs. The Debtors reasonably believe, however, that the Rebate Checks issued under the Young America program also stated that the checks were void if not cashed within ninety (90) days from the date of issuance. Moreover, the Debtors reasonably believe that the Young America Rebate offers would have contained a similar provision to that discussed above in connection with the Parago program, which provision would have deemed a rebate offer void if the Rebate Check was not cashed within ninety (90) days from the date of issuance.

16. As set forth above, the Debtors possess limited information about the Young America rebate program. However, based on the information in their possession, the Debtors believe that approximately 277,059 rebate checks issued by Young America were outstanding as of the Petition Date. The approximate value of these outstanding Young America Rebate Checks is $12,498,589.00. These Rebate Checks range in value

from $.01 and $600.00.  The average amount of the outstanding Rebate Checks is $45.00.[2]

17.  The total number of outstanding Rebate Checks issued under the Parago and Young America programs as of the Petition Date was approximately 758,000.  The total value of all of these outstanding Rebate Checks is approximately $32,854,033.00.  Of these outstanding Rebate Checks, approximately 720,780 checks, with a combined approximate value of $31,048,696.00, were issued more than ninety (90) days before the Petition Date and are void under the terms and conditions of the Debtors' various Rebate Programs.

C.    **The Customer Practices Motion.**

18.  On November 11, 2008, this Court entered the Order Pursuant to Bankruptcy Code Sections 105(a), 363, 506, 507(a), 553, 1107(a), 1108 and 1129(b) and Bankruptcy Rule 6003 Authorizing Continuation of Certain Customer Practices (the "Customer Practices Order")(D.I.

---

[2]    The information concerning the Young America Rebate Checks is based on data that the Debtors had in their possession as of the Petition Date.  Because the Debtors' business relationship with Young America ended in 2005, it is possible that the data is inaccurate and that the total number and value of the outstanding Young America Rebate Checks is greater or lesser than what is contained herein.

111).    Pursuant to the terms of the Customer Practices

Order, the Debtors were authorized, but not directed, to

continue to honor uncashed Rebate Checks issued prior to

the Petition Date.

19.    Because the Debtors were given the

authority to continue their pre-petition Rebate Program,

the Rebate Check Holders were eligible to, and in many

cases did, receive payment on account of pre-petition

Rebate Checks issued by Solutran.    Indeed, approximately

27,804 Rebate Checks issued prior to the Petition Date

were cashed post-petition.    The total value of these

Rebate Checks is $1,377,565.56.

**D.    The Rebate Check Holders.**

20.    In connection with preparing their

schedules and statements of financial affairs (the

"Schedules and Statements"), the Debtors considered

scheduling the Rebate Holders on Debtors' Schedule F –

Creditors Holding Unsecured Non-Priority Claims and

providing them with actual notice of the General Bar

Date.    After carefully considering the following factors,

the Debtors determined neither was appropriate under the

circumstances.

21.  First, service by mail of more than
758,000 Rebate Check Holders, in addition to all of the
Debtors' other creditors and interest holders, was
costly, especially considering the average amount of the
Rebate Checks.

22.  Second, at the time the Debtors served
creditors with notice of the General Bar Date, the
Debtors were operating as a going concern.  As such, the
Debtors were honoring valid Rebate Checks issued prior
and subsequent to the Petition Date under the Customer
Practices Order.

23.  Third, the Debtors did not believe that
the Rebate Check Holders had valid claims because they
did not have legally enforceable rights to payment.

24.  Lastly, the Debtors did not physically
possess the contact information for the various Rebate
Check Holders at the time notice of the General Bar Date
was given.  Although the Debtors ultimately obtained
this information from Parago and Young America, upon
inspection, the Debtors determined that much of the data
was likely unreliable considering the length of time
many of the Rebate Checks had been outstanding.  This

was particularly true with regard to the outstanding

Young America Rebate Checks, as they would have been

issued between three and nine years before the Debtors

filed their bankruptcy petitions.

**E.    The General Bar Date.**

25.   On November 12, 2008, the Court appointed

Kurtzman Carson Consultants LLC ("KCC") as claims,

noticing and balloting agent for the Debtors in these

chapter 11 cases pursuant to 28 U.S.C. § 156(c).

26.   On December 10, 2008, the Court entered

that certain Order Pursuant to Bankruptcy Code Sections

105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and

9007 (I) Setting General Bar Date and Procedures for

Filing Proofs of Claim; and (II) Approving Form and

Manner of Notice Thereof (Docket No. 890) (the "Claims

Bar Date Order").

27.   Pursuant to the Claims Bar Date Order,

the deadline for filing all "claims" (as defined in 11

U.S.C. § 105(5)) arising before November 10, 2008

against the Debtors by any non-governmental entity was

5:00 p.m. (Pacific) on January 30, 2009 (the "General

Bar Date").

28.  Moreover, pursuant to the Claims Bar Date
Order, this Court approved the form and manner of the
general bar date notice (the "General Bar Date Notice").
The Debtors served the General Bar Date Notice by first
class mail on or before December 19, 2008 to all known
creditors and all known holders of the Debtors' equity
securities as reflected in the Debtors' books and
records, as well as U.S. state escheat or unclaimed
property offices.

29.  Additionally, pursuant to the Claims Bar
Date Order, the Debtors were given the authority to
publish the General Bar Date notice in various
newspapers.  Consequently, on December 24, 2008, the
Debtors published notice of the General Bar Date in the
Richmond Times Dispatch (see Affidavit of Publication of
Sheila Lloyd, D.I. 1394), and the national edition of
the Wall Street Journal (see Affidavit of Publication of
Roy Oteo, D.I. 1395).

### RELIEF REQUESTED

30.  By this Motion, the Debtors seek entry of
an order pursuant to section 105 of title 11 of the
Bankruptcy Code, and Rules 2002, 3003(c)(3) and 9007 of

the Bankruptcy Rules to deem publication notice of the
General Bar Date sufficient as to all of the Rebate
Check Holders.

### BASIS FOR RELIEF

31.   At this stage of the Debtors' cases, the
Debtors believe that deeming publication notice of the
General Bar Date as to the Rebate Check Holders adequate
is in the best interests of the Debtors' estates and
their creditors, and will help facilitate an orderly
liquidation and distribution of the Debtor' assets
through a confirmed plan of liquidation.

32.   The Debtors assert that most of the
Rebate Checks Holders do not hold claims against the
Debtors' bankruptcy estates because their Rebate Checks
were void before the Petition Date.  The Debtors also
contend that the applicable statute of limitations would
prevent a significant portion of the Rebate Check
Holders from enforcing any such claims against the
Debtors' bankruptcy estates in any event.

33.   The Debtors also contend that the Rebate
Check Holders are not entitled to receive actual notice
by mail of the General Bar Date.  Because the Rebate

Check Holders were unknown creditors of the Debtors as of the Petition Date, and any claims they could potentially assert against the Debtors' estates are speculative, publication notice was sufficient to inform the Rebate Check Holders of the General Bar Date.

34.   Lastly, because the Court granted the Debtors the authority to continue their pre-petition Rebate program, the Rebate Check Holders in possession of valid Rebate Checks could have, and in many cases already have, received payment from the Debtors' estates on account of their Rebate Checks.[3]

35.   Accordingly, for these reasons, the Debtors request that the Court deem publication notice of the General Bar Date sufficient as to all of the Rebate Check Holders.

_____

[3]   Additionally, if the Debtors' proposed Plan is approved, the Rebate Check Holders would most likely not be entitled to receive any distributions on claims made in connection with valid Rebate Checks.  Under the Debtors' proposed Plan, the amount of the asserted claims would probably not satisfy the monetary threshold that would obligate the Liquidating Trustee to make a distribution to any individual Rebate Check Holder in connection with a Rebate Check claim.  See Plan § Article VI, Section I, Subsection 4 ("The Liquidating Trustee shall have no obligation to make any Distribution on Claims Allowed in an amount less than $500.00.").

## APPLICABLE AUTHORITY

### I.    THE VAST MAJORITY OF THE REBATE CHECK HOLDERS DO NOT HOLD CLAIMS AGAINST THE DEBTORS' ESTATES.

36.   Section 101(5) of the Bankruptcy Code defines "claim" to include, among other things, a:

> (A) right to payment, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . .

11 U.S.C. § 101(5).

37.   Although the Supreme Court has held that a "claim" is to be broadly construed and applied, see Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 200 (4th Cir. 1988), the construction of the term "claim" is not without limits.  See In re Westerlund, 2006 WL 4063034, *1 (D.S.C. June 21, 2006) (noting that while the term "claim" is interpreted broadly, a claim will not arise unless a party demonstrates that it possesses a right to receive payment from the bankruptcy estate).

38.   Indeed, under the Bankruptcy Code, a valid "claim" exists only when the following two elements are satisfied:  (1) an entity possessed a right

to payment, and (2) that right to payment arose before
the filing of the bankruptcy petition.  Pension Benefit
Guaranty Corporation v. Oneida Ltd. (In re Oneida Ltd.),
562 F.3d 154, 157 (2d Cir. 2009) (discussing two prong
test to determine whether a "claim" exists under the
Bankruptcy Code); see also A.H. Robins, 839 F.2d at 202-
203.  A "claim" does not exist if the potential claimant
does not possess a "right to payment" from the Debtors.
See In re Dykes, 287 B.R. 298, 306 (Bankr. S.D. Ga. 2002)
("If there is no debt there is no right to payment, and
there is no claim in a bankruptcy case.").

      39.  A right to payment exists when one party
possesses an enforceable obligation against another.
See F.C.C. v. NextWave Personal Communications Inc., 537
U.S. 293, 303 (2003) ("'[A] 'right to payment' is
nothing more nor less than an enforceable
obligation . . . .'") (quoting Pennsylvania Dept. of
Public Welfare v. Davenport, 495 U.S. 552, 559 (1990));
In re Varona, 388 B.R. 705, 721 (Bankr. E.D. Va. 2008)
(same).  In contrast, a right to payment will not arise
when a legally enforceable obligation does not exist
under applicable non-bankruptcy law.  See In re North

American Refractories Co., 280 B.R. 356, 358 (Bankr. W.D.
Pa. 2002) (holding that a claim will not arise if no
right to payment exists under state law and no cause of
action is specifically created by the Bankruptcy Code).

    40.   In this case, the vast majority of the
pre-petition Rebate Check Holders do not hold "claims"
against the Debtors' bankruptcy estates.  As previously
discussed, each Rebate Check conspicuously indicated on
the face of the document that it was void after ninety
(90) days.  Moreover, pursuant to the specific terms and
conditions included on each Rebate offer, Rebate Check
Holders were required to cash Rebate Checks within
ninety (90) days of the date of check issuance.  If the
Rebate Check Holder did not cash the Rebate Check within
ninety (90) days, the Rebate Check Holder was deemed to
have rejected the Rebate offer, making it void.[4]  See
Exhibit B.

    41.   Based on the Debtors' review of the data
obtained from Parago and Young America, many of the

---

[4]   As indicated above, the Debtors do not have documents with
      respect to the Young America Rebate Program, but reasonably
      believe that the documents included the type of information
      discussed in this paragraph.

Rebate Check Holders were still in possession of Rebate
Checks well beyond the ninety (90) day expiration date
of the Rebate Check.  Indeed, approximately 720,780 of
the 758,000 outstanding Rebate Checks were issued at
least ninety (90) days before the Petition Date.  These
Rebate Checks represent approximately $31,048,696.00 of
the total value of all outstanding Rebate Checks.

42.  Because these Rebate Checks were void
after ninety (90) days under the terms and conditions of
the Debtors' Rebate policies, the Rebate Check Holders
in possession of these Rebate Checks did not possess
legally enforceable obligations against the Debtors as
of the Petition Date.  As such, these Rebate Check
Holders did not possess a "right to payment" from the
Debtors.  Therefore, these Rebate Check Holders could
not assert "claims" under section 101(5) against the
Debtors' bankruptcy estates.

43.  Moreover, even assuming, _arguendo_, that
the Rebate Check Holder could enforce a right to payment,
under Virginia law, a Rebate Check Holder would have had
five years to bring an action against the Debtors to
enforce payment of a void Rebate Check.  _See_ Va. Code

Ann. § 8.01-246(2).  In many instances, the outstanding

Rebate Checks were issued more than five years prior to

the Petition Date.  Because expiration of a state

statute of limitations is grounds for disallowing a

claim under the Bankruptcy Code, such Rebate Check

Holders would not be entitled to any recoveries in any

event.  See In re Andrews, 394 B.R. 384, 388 (Bankr.

E.D.N.C. 2008) ("Section 502(b)(1) provides that one of

the grounds for disallowing a claim is that the claim is

unenforceable under applicable law. A statute of

limitations . . . is the type of applicable law referred

to in § 502(b)(1) that is grounds for disallowing a

claim.")

44.  Accordingly, Rebate Check Holders in

possession of Rebate Checks for more than ninety (90)

days before the Petition Date do not hold "claims"

against the Debtors' bankruptcy estates.

## II.   PUBLICATION NOTICE WAS CONSTITUTIONALLY SUFFICIENT TO INFORM ALL OF THE REBATE CHECK HOLDERS OF THE GENERAL BAR DATE.

45.  Bankruptcy Rule 3003(c)(3) provides that

"[t]he court shall fix . . . the time within which

proofs of claim or interest may be filed."  In order to

20

participate in the bankruptcy process, Bankruptcy Rule 3003(c)(3) requires claimants to file proofs of claim by the bar date established by the Bankruptcy Court.  See Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995) (holding that Bankruptcy Rule 3003(c) requires claimants to file timely proofs of claim in order to participate in the reorganization process).

46.  If an entity was required to file a proof of claim by the bar date, but failed to do so, that entity would have forfeited any right to receive a distribution from the bankruptcy estate on account of its alleged claim.  See In re U.S. Airways, Inc., 2005 WL 3676186, *2 (Bankr. E.D. Va. Nov. 21, 2005) ("After the passage of the bar date, a claimant cannot participate in the reorganization . . . ."); see also In re Envirodyne Industries, Inc., 214 B.R. 338, 347-48 (N.D. Ill. 1997) ("Once the time for filing a proof of claim is passed, such claim is barred, discharged forever, and the creditor forfeits his or her entitlement to distribution from the bankruptcy estate.").

47.   Because the occurrence of the bar date, coupled with the failure to file a timely proof of claim, will extinguish the rights of creditors to take part in bankruptcy proceedings and receive distributions from a bankruptcy estate, due process requires that creditors be given notice of the claims bar date.  See In re U.S. Airways, Inc., 2005 WL 3676186, *2.

48.   This due process requirement is incorporated into Bankruptcy Rule 2002(f), which states in pertinent part that "the clerk, or some other person as the court may direct, shall give the debtor, all creditors . . .  notice by mail of . . . (3) the time allowed for filing claims pursuant to Rule 3002."  Fed. R. Bankr. P. 2002(f).

49.   Moreover, pursuant to Bankruptcy Rule 9007, this Court has the authority to designate "the time within which, the entities to whom, and the form and manner in which the notices shall be given."  Fed. R. Bankr. P. 9007.

50.   In order to satisfy the requirements of due process, the Supreme Court has held that notice must be reasonably calculated to apprise interested persons

of the pending action.  Mullane v. Central Hanover Bank
& Trust Co., 339 U.S. 306, 314 (1950).  Moreover, in
determining whether notice was sufficient, courts should
consider the practicalities and peculiarities of each
individual case.  Id., at 314-15.

51.  With these principles in mind, courts
have determined that whether due process in the bar date
notice context has been satisfied depends on whether the
creditor was known or unknown to the debtors.  See In re
J.A. Jones, Inc., 492 F.3d 242, 249 (4th Cir. 2007)
("The type of notice that is reasonable or adequate for
purposes of . . . due process . . . depends on whether a
particular creditor is known or unknown to the debtor.");
Chemetron Corp. v. Jones, 72 F.3d at 346 ("For notice
purposes, bankruptcy law divides claimants into two
types, 'known' and 'unknown.'"); In re Envirodyne
Industries, Inc., 214 B.R. at 348 ("In determining the
proper form of notice of a bankruptcy claim bar
date . . . courts divide creditors into two groups,
known and unknown creditors.").

52.  Known creditors include those claimants
"whose identities are actually known to the debtor, as

well as claimants whose identities are 'reasonably
ascertainable' to the debtor". In re J.A. Jones, Inc.,
492 F.3d at 250 (citations omitted). Known creditors
must receive actual notice by mail of the claims bar
date. Id., at 249 (holding that due process requires
known creditors to receive actual notice of the claims
bar date).

53. Unknown creditors, on the other hand, are
those whose identities or claims are conjectural or
"'whose interests or whereabouts could not with due
diligence be ascertained'" by the debtor. In re J.A.
Jones, Inc., 492 F.3d at 250 (quoting Mullane v. Central
Hanover Bank & Trust Co., 339 U.S. at 317). Unknown
creditors need only receive constructive notice of the
claims bar date. See In re J.A. Jones, Inc., 492 F.3d
at 249-50. ("[W]here a creditor is unknown to the debtor,
constructive notice . . . is generally sufficient to
pass constitutional muster."); Chemetron Corp. v. Jones,
72 F.3d at 346 (same); In re Envirodyne Industries, Inc.,
214 B.R. at 348 (same).

54. Generally, publication notice will
suffice to inform unknown creditors of an impending

claims bar date.  See In re J.A. Jones, Inc., 492 F.3d
at 249-50.  Indeed, as stated by the Fourth Circuit, "in
the case of persons missing or unknown, employment of an
indirect and even a probably futile means of
notification is all that the situation permits and
creates no constitutional bar to a final decree
foreclosing their rights."  In re J.A. Jones, Inc., 492
F.3d at 250 n.6 (quoting Mullane v. Central Hanover Bank
& Trust Co., 339 U.S. at 317).

      55.  In the instant matter, the Rebate Check
Holders are unknown creditors for the purposes of notice
of the General Bar Date for various reasons.  First, as
explained above, the vast majority of the Rebate Check
Holders do not hold "claims" against the Debtors'
bankruptcy estates.  Moreover, the Debtors are not
required to serve creditors whose claims are merely
conjectural with actual notice of the General Bar Date.
See In re J.A. Jones, Inc., 492 F.3d at 250 ("An unknown
creditor, i.e., one who is not entitled to actual notice
of the debtor's bankruptcy filing, is a claimant whose
identity or claim is wholly conjectural . . . .").
Because the Rebate Check Holders in possession of checks

for longer than ninety (90) days do not hold claims

against the Debtors' bankruptcy estates and, if they did,

such claims were conjectural, they were not entitled to

receive notice of the General Bar Date in any event.

56.   Second, the Debtors were not required to

give actual notice of the General Bar Date to creditors

when the Debtors reasonably believed those creditors

abandoned their claims.  See Matter of Chicago, Rock

Island & Pacific R.R. Co., 788 F.2d 1280, 1283 (7th Cir.

1986)("[A] trustee has no duty to give notice to

creditors who he reasonably believes have abandoned

their claims . . . ."); Charter Crude Oil Company v.

Petroleos Mexicano (In re Charter Company), 125 B.R. 650,

655 (M.D. Fla. 1991) ("[A] debtor is not required to

give actual notice of the bar date to a creditor where

the debtor could reasonably have believed that the

creditor had abandoned its claim against the debtor.").

Because many of the Rebate Check Holders had been in

possession of their Rebate Checks for longer than ninety

(90) days without taking steps to deposit or cash those

checks, the Debtors reasonably believed that those

Rebate Check Holders abandoned any potential claims they might have had against the Debtors' bankruptcy estates.

57.  Third, after conducting a diligent search of their books and records, the Debtors determined that they did not possess all of the names and addresses of the Rebate Check Holders.  Once the Debtors obtained the necessary information, it was apparent that, due to length of time a significant number of the Rebate Checks were outstanding, much of the contact information was likely unreliable.  This was particularly true with regard to the Young America Rebate Check Holders as those Rebate Checks were issued between November of 1999 and August of 2005.

58.  Under applicable law, the Debtors were not obligated to engage in extensive searches beyond their own books and records in order to obtain the contact information for the Rebate Check Holders.  See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 317 (holding that due process does not require that the Debtors engage in "impracticable and extended searches" in order to determine the identity of potential creditors.); In re J.A. Jones, Inc., 492 F.3d at 250

("Only those claimants who are identifiable through a diligent search [of the debtors' books and records] are 'reasonably ascertainable' . . . ."); Chemetron Corp. v. Jones, 72 F.3d at 347 ("The requisite search . . . focuses on the debtor's own books and records.  Efforts beyond a careful examination of these documents are generally not required.").  Under the particular facts and circumstances of these cases, the Debtors undertook reasonable efforts to obtain accurate contact information for all outstanding Rebate Check Holders.

59.   Accordingly, the Rebate Check Holders should be classified as unknown creditors and the Court should deem publication notice as sufficient to inform them of the General Bar Date.

**III. PUBLICATION NOTICE IS IN THE BEST INTEREST OF THE DEBTORS, THEIR ESTATES, AND OTHER PARTIES IN INTEREST**

60.   After reviewing the Young America and Parago data, the Debtors determined that individually serving the approximately 758,000 outstanding Rebate Check Holders with notice of the General Bar Date was unduly expensive and impractical in relation to the size

of the claims the Rebate Check Holders could have
asserted against the Debtors' bankruptcy estates.

61.   When courts consider the type of notice
required under the circumstances of a particular case,
they must harmonize the fundamental requirements of due
process with the underlying purposes of the Bankruptcy
Code, which in this context means "the prompt and
effectual administration and settlement of the debtor's
estate."  Chemetron Corp. v. Jones, 72 F.3d at 346
(citing Katchen v. Landy, 382 U.S. 323, 328 (1966)); see
also In re Envirodyne Industries, Inc., 214 B.R. at 347
("The state has an interest in bringing bankruptcy cases
to a final settlement, enabling the debtor to have a
fresh start and protecting the interests of other
creditors, and the individual has a right to due process
of law prior to being deprived of a property right.").

62.   In addition to the above, the court must
also consider the interests of all the debtor's
creditors and other parties in interest when determining
what form of notice is appropriate in a particular case.
Indeed, as the Fourth Circuit has stated:

> In bankruptcy, the court has an obligation
> not only to the potential claimants, but
> also to existing claimants and the
> petitioner's stockholders. The court must
> balance the needs of notification of
> potential claimants with the interest of
> existing creditors and claimants. A
> bankrupt estate's resources are always
> limited and the bankruptcy court must use
> discretion in balancing these interests
> when deciding how much to spend on
> notification.

Vancouver Women's Health Collective Soc. v. A.H. Robins

Co., Inc., 820 F.2d 1359, 1364 (4th Cir. 1987).

63.   In balancing these competing interests,

courts have held that publication notice is appropriate,

where as here, the sheer volume of potential claimants

in relation to the size of their claims makes it

excessively costly for the debtors to serve the

claimants with actual notice of the claims bar date.

See Fogel v. Zell, 221 F.3d 955, 963 (7th Cir. 2000)

("Notice by publication may thus be entirely appropriate

when potential claimants are numerous, unknown, or have

small claims (whether nominally or . . . realistically)

– all circumstances that singly or in combination may

make the cost of ascertaining the claimants' names and

addresses and mailing each one a notice of the bar date

and processing the responses consume a disproportionate share of the assets of the debtor's estate.); <u>Matter of GAC Corp.</u>, 681 F.2d 1295, 1300 (11th Cir. 1982) (reasoning that publication notice is appropriate when it would have been extremely burdensome and costly to serve certain individual claimants within a larger class of creditors with actual notice of the bar date).

64.   Here, the cost of serving each of the 758,000 Rebate Check Holders was excessive in relation to the average potential claim that could have been made against the Debtors' bankruptcy estates, and ultimately, would have been detrimental to the Debtors' other creditors and parties in interest.

65.   As discussed in more detail above, the vast majority of the Rebate Check Holders do not hold valid claims against the Debtors' bankruptcy estates. Due process does not require that the Debtors individually serve approximately 758,000 potential claimants when the cost of serving such claimants is harmful to all other creditors of their bankruptcy estates and is grossly disproportionate to the value of

their potential claims, which in most cases here is
$0.00.[5]

66.   Accordingly, the Court should find that
the Rebate Check Holders were unknown creditors as of
the Petition Date, and that publication notice of the
General Bar Date satisfied due process in this instance.

**IV.   PUBLICATION NOTICE OF THE GENERAL BAR DATE DID NOT
PREJUDICE THE REBATE CHECK HOLDERS WITH POTENTIALLY
VALID CLAIMS.**

67.   Bankruptcy Code section 105 provides in
pertinent part that "[t]he court may issue any order,
process, or judgment that is necessary or appropriate to
carry out the provisions of this title."   11 U.S.C. §
105(a).

---

[5]   Assuming, _arguendo_, that some of the Rebate Check Holders have
valid claims, they would probably not receive distributions from
the Debtors' estates in any event.   The average Rebate Check
issued by Young America was in the amount of $45.   The average
Rebate Check issued by Parago was in the amount of $43.   Under
the Debtors' proposed Plan of liquidation, the Liquidating
Trustee will not be obligated to distribute payments to holders
of de minimis claims.   Specifically, in accordance with Article
VI, Section I, Subsection 4 of the Plan: "The Liquidating Trustee
shall have no obligation to make any Distribution on Claims
Allowed in an amount less than $500.00."   Because the average
value of the outstanding Rebate Checks is significantly lower
than the required threshold amount that would obligate the
Liquidating Trustee to make a distribution on account of any
Rebate Check claim, the Rebate Check Holders are not harmed by
the relief requested herein.

68.   As set forth above, due process requires
that known creditors receive actual notice of the claims
bar date because the occurrence of the bar date, coupled
with the failure to file a timely proof of claim, will
extinguish the rights of creditors to take part in
bankruptcy proceedings and receive distributions from a
bankruptcy estate.   See In re U.S. Airways, Inc., 2005
WL 3676186, *2.

69.   The constitutional justification for
requiring notice of the claims bar date -- deprivation
of a property right -- is not present with regard to the
Rebate Check Holders.   See Mullane v. Central Hanover
Bank & Trust Co., 339 U.S. 306, 313 (holding that
"deprivation of life, liberty or property by
adjudication be preceded by notice and opportunity for
hearing appropriate to the nature of the case."); see
also In re U.S. Airways, Inc., 2005 WL 3676186, *2
(Bankr. E.D. Va. 2005) ("After the passage of the bar
date, a claimant cannot participate in the
reorganization . . . ."). As explained more fully
herein, the vast majority of Rebate Check Holders did
not hold claims against the Debtors' bankruptcy estates

because their Rebate Checks were void and they did not
possess a right of payment from the Debtors.  Because
they did not hold claims against the Debtors' estates,
those Rebate Check Holders could not have suffered a
deprivation of property rights by not receiving actual
notice of the General Bar Date.

70.  Moreover, the occurrence of the General
Bar Date did not forfeit the rights of Rebate Check
Holders in possession of Rebate Checks issued within
ninety (90) days of the Petition Date to receive payment
on account of those checks.  Pursuant to the terms of
the Customer Practices Order, the Debtors were granted
the authority to continue to offer the Rebates in the
ordinary course of their businesses, including Rebates
for products purchased or Rebate Forms mailed in prior
to the Petition Date.  In accordance with the Customer
Practices Order, the Debtors continued their pre-
petition practices with regard to the Rebate program
well after the Petition Date.

71.  Throughout the course of these
proceedings, the Rebate Check Holders have been
permitted to cash Rebate Checks issued by Solutran under

the Parago program.   Indeed, the Debtors have funded

Solutran for every Rebate Check it is has issued since

the filing of these Chapter 11 cases.[6]   Thus, the failure

to file a proof of claim on account of an outstanding

Rebate Check issued less than ninety (90) days before

the Petition Date did not preclude a Rebate Check Holder

from actually receiving payment in connection with that

Rebate Check.

72.   Accordingly, the potential deprivation of

property rights that would require Rebate Check Holders

to receive actual notice of the claims bar date is not

present in this case.   Therefore, granting the relief

requested herein is justified under Bankruptcy Code

section 105(a) and the Court should deem that

publication notice of the General Bar Date satisfies due

process with regard to the Rebate Check Holders.

**NOTICE**

73.   Notice of this Motion has been provided

to those parties who have requested notice pursuant to

Bankruptcy Rule 2002 and the Core Group (as defined in

---

[6]   As of the date of this Motion, the Debtors have instructed
Solutran to discontinue honoring all Rebate Checks.

the Order Pursuant to Bankruptcy Code Sections 102 and
105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(Docket No. 130; the "Case Management Order")), as well
as the Attorneys General for all fifty (50) states.  The
Debtors have not, however, provided notice to the Rebate
Holders for the same reasons the Debtors did not provide
actual notice of the Bar Date.  The Debtors submit that,
under the circumstances, no other or further notice need
be given.

## WAIVER OF MEMORANDUM OF LAW

74.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

## NO PRIOR REQUEST

75.   No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Richmond, Virginia
   February 3, 2010

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley _____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105 AND
BANKRUPTCY RULE 2002, 3003(c)(3), AND 9007 TO DEEM
PUBLICATION NOTICE OF GENERAL BAR DATE SUFFICIENT AS TO
CERTAIN PARTIES**

Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to section 105 of

---

[1]   Each capitalized term not otherwise defined herein shall have the
meaning ascribed to it in the Motion.

title 11 of the United States Code (the "Bankruptcy

Code"), and Rules 2002, 3003(c)(3) and 9007 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") to deem publication notice of the general bar

date sufficient as to certain parties; and the Court

having reviewed the Motion; and the Court having

determined that the relief requested in the Motion is in

the best interests of the Debtors, their estates, their

creditors, and other parties in interest; and it

appearing that proper and adequate notice of the Motion

has been given and that no other or further notice is

necessary; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Motion is GRANTED.

2.    Publication notice of the General Bar

Date was sufficient to inform all of the Rebate Check

Holders of the General Bar Date pursuant to Bankruptcy

Code section 105 and Bankruptcy Rules 2002, 3003(c)(3)

and 9007.

2

3.    Publication notice of the General Bar
Date as to the Rebate Check Holders satisfied the
requirements of due process in all respects.

4.    The Debtors are not required to provide
actual notice of the General Bar Date to the Rebate
Check Holders because the Rebate Check Holders are not
known creditors of the Debtors.

5.    This Court retains jurisdiction to hear
and determine all matters arising from or related to the
Settlement and this Order.

Dated:  Richmond, Virginia
        _____, 2010


        _____
        UNITED STATES BANKRUPTCY JUDGE

3

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

4

## **EXHIBIT A**
**(Sample Rebate Check)**



REDACTED

**EXHIBIT B**
**(Sample Rebate Forms)**

Rebate Redemption Form

Program No. PNN
$10 KOR W/PURCHASE
OF PNN 230100033

**Qualifying Models:**
$10 Mail-in-Rebate on purchase of:

PNN 230100033    Qty: 1 Rebate Amount: $10



Forms postmarked later than 07/14/2006 are ineligible.

**HOW TO SUBMIT FOR THIS OFFER:**
Please completely fill out the form below and make a copy
for your records.
Please send in the following items:

* This form in its entirety.
* A legible copy of the Circuit City sales receipt.
* The original UPC barcode(s) from the product packaging.
* See our website information below for details.

The above listed items must have been purchased during the
listed sales dates. Qualifying items must have been
purchased between 6/4/2006 and 6/14/2006. By submitting this
rebate form you certify that the above rebate items are for
personal use only and not for resale. Allow 8 weeks from
postmark date for processing of your rebate. This offer is
valid for customer name on sales receipt only. Circuit City
and its associated companies are not responsible for lost or
misdirected mail. This form and sales receipt will not be
returned. Offer void where prohibited or restricted by law.
Fraudulent submission of multiple requests may result in
prosecution under applicable law. Circuit City and its
associated companies reserve the right to audit any claims,
to request additional information regarding this claim and
to nullify any claims which cannot be substantiated. Please
see your sales associate regarding qualifying models for
additional information. Products for which a rebate or
promotional offer is claimed may not be returned.

Advertised rebate amount assumes payment of Circuit City's
before-rebate advertised price. Circuit City reserves the
right to reduce the fulfilled rebate amount based on price
adjustments and/or price matches made on qualifying items.

1 of 2

- Offer valid in the United States of America only.
Additional Terms and Conditions for Promotional Incentive
Check Offers Sponsored by Circuit City:

If your submission has a timely postmark but you have not
provided all required documentation, Circuit City will allow
you 6 months from the postmark date to remedy any
deficiencies to Circuit City's satisfaction. If you do so,
Circuit City shall then mail you a promotional incentive
offer check within 8 weeks.

In order to accept this offer, you must cash the
promotional incentive offer check within ninety (90) days of
check issuance. If you do not cash the check within this
time period, you shall be deemed to have rejected this
offer, making it void. Circuit City is not responsible for
any lost or misdirected checks. By submitting this form,
you acknowledge and agree to these conditions of acceptance
and that any disputes arising from or relating to this offer
will be governed by Virginia law without regard to its
choice of law rules.

Limit 1 rebate per person and per household.

_____

CUSTOMER INFORMATION:
P.O. Boxes cannot be accepted as valid addresses.
Name:    _____
Address: _____ Apt#: _____
City: _____ State: ____ Zip: _____
Home Phone: [_____] ___ - _____
E-Mail: _____

_____

Mail This Form In Its Entirety To:
DAZZLE DVD RCRDR $10
BOX 100468 H57259
WHITE BEAR LK, MN  55110-0468

_____

To track the real-time status of your claim please visit our
website.

HTTP://WWW.REBATE-ZONE.COM/PINNACLE

If you have questions about your rebate, please call

**(800) 762-9741**
Business hours may vary

_____

Ticket Number:    3100 - 04920998

Date: 08/13/2006

This item was purchased from Circuit City Stores, Inc.

2 of 2

## Offer Redemption Form

### $50.00 MIR WITH PURCH OF

### SAM 2255BW

Program No. 1123A

Please completely fill out the form below and make a copy for your records.

**Qualifying Models:**

$    50 Mail-in Offer on purchase of:

SAM 2255W         Qty:    1 Offer Amt: $    50.00

Please see your sales associate regarding qualifying models or for additional information.

Qualifying items must have been purchased between 11/23/08 and 11/26/08

**HOW TO SUBMIT FOR THIS OFFER:**

Please send in the following items:

* This form in its entirety.
* The original Circuit City sales receipt.
* A copy of the UPC barcode from the product packaging.
* See our website information below for details.

The above listed items must have been purchased during the listed sales dates. Forms postmarked later than 01/18/07 are ineligible. By submitting this form, you certify that the above items are for personal use only and not for resale. Allow 12 weeks from postmark date for processing of your rebate or other promotional offer. This offer is valid for customer name on sales receipt only. Circuit City and its associated companies are not responsible for lost or misdirected mail. This form and sales receipt will not be returned.

Offer void where prohibited or restricted by law. Fraudulent submission of multiple requests may result in prosecution under applicable law. Circuit City and its associated companies reserve the right to audit any claims, request additional information regarding this claim and to nullify any claims which can not be substantiated. Products for which rebate or promotional offer is claimed may not be returned.

Advertised rebate amount assures payment of Circuit City's before-rebate advertised prices. Circuit City reserves the right to reduce the fulfilled rebate amount based on price adjustments and/or price matches made on qualifying items.

- Offer not valid with other offers unless specified by the offer.

### Additional Terms and Conditions for Promotional Incentive Check Offers Sponsored by Circuit City (Excludes all Manufacturer Rebates):

If your submission has a timely postmark but you have not provided all required documentation, Circuit City will allow you 6 months from the postmark date to remedy any deficiencies to Circuit City's satisfaction. If you do

- Offer not valid with other offers unless specified by the offer.

### Additional Terms and Conditions for Promotional Incentive Check Offers Sponsored by Circuit City (Excludes all Manufacturer Rebates):

If your submission has a timely postmark but you have not provided all required documentation, Circuit City will allow you 6 months from the postmark date to remedy any deficiencies to Circuit City's satisfaction. If you do so, Circuit City shall then mail you a promotional incentive offer check within 8 weeks.

In order to accept this offer, you must cash the promotional incentive offer check within ninety (90) days of check issuance. If you do not cash the check within this time period, you shall be deemed to have rejected this offer, making it void. Circuit City is not responsible for any lost or misdirected checks. By submitting this form, you acknowledge and agree to these conditions of acceptance and that any disputes arising from or relating to this offer will be governed by Virginia law without regard to its choice of law rules.

Limit 1 rebate or other promotional offer:
* Per item purchased
* Per person
* Per customer
* Per address
* Per household
* Per purchase

**CUSTOMER INFORMATION:**

Please verify name, address and phone number below.

## REDACTED

**Mail This Form In Its Entirety To:**

OFFER # 08-224-1123A
SAMSUNG PROMOTIONS
P.O. Box 18020
YOUNG AMERICA, MN    55558-8020

To track the real-time status of your claim, please visit our website.

## WWW.WEB-REBATES.COM/SAMSUNG

If you have questions about this offer, please call
1 (877) 693-4193
Business hours may vary.

Ticket Number:    3323 - 042337#8

Date Of Purchase: 11/24/08

This item was purchased from Circuit City Stores, Inc.

Purchased 12/19/07                                                                2007

12/20/07

1-800-241-1343

2/13/08
CK# 855 6943

**Rebate Redemption Form**
Program No. PCXCN
$200 Mail-In Rebate on
Select Notebook Computers

**Qualifying Models:**
$200 Mail-In Rebate on purchase of:
TOS A13557406    Qty: 1 Rebate Amount: $200

Forms postmarked later than 01/19/2008 are ineligible.

**HOW TO SUBMIT FOR THIS OFFER:**
Please completely fill out the form below and make a
copy for your records.
Please send in the following items:
* This form in its entirety.
* A legible copy of the Circuit City sales receipt.
* A copy of the UPC barcode(s) from the product
packaging.
* Please circle the qualified item(s) and purchase
price(s) on your Circuit City sales receipt.

* See our website information below for details.
* Please write the ESN or serial #'s in the space
provided.       Y7383458K
TOS A13557406 : 2089410300033
The above listed items must have been purchased during
the listed sale dates. Qualifying items must have been
purchased between 12/18/2007 and 12/22/2007. By
submitting this rebate form you certify that the above
rebate items are for personal use only and not for
resale.  Allow 8 weeks from postmark date for processing
of your rebate.  This offer is valid for customer name
on sales receipt only.  Circuit City and its associated
companies are not responsible for lost or misdirected
mail.  This form and sales receipt will not be returned.
Offer void where prohibited or restricted by law.
Fraudulent submission of multiple requests may result in
prosecution under applicable law. Circuit City and its
associated companies reserve the right to audit any
claims, to request additional information regarding this
claim and to nullify any claims which cannot be
substantiated. Please see your sales associate regarding
qualifying models for additional information. Products
for which a rebate or promotional offer is claimed may
not be returned. Advertised rebate amount assumes
payment of Circuit City's before-rebate advertised
price.  Circuit City reserves the right to reduce the
fulfilled rebate amount based on price adjustments
and/or price matches made on qualifying items.
- Offer valid in the United States of America only.

**Additional Terms and Conditions for Promotional Incentive
Check Offers Sponsored by Circuit City (Excludes all Man
ufacturer Rebates):** If your submission has a timely postm
ark but you have not provided all required documentation,
Circuit City will allow you 6 months from the postmark d
ate to remedy any deficiencies to Circuit City's satisfac
tion. If you do so, Circuit City shall then mail you a pr
omotional incentive offer check within 8 weeks.  In order
to accept this offer, you must cash the promotional ince
ntive offer check within ninety (90) days of check issuan
ce.  If you do not cash the check within this time period
, you shall be deemed to have rejected this offer, making
it void.  Circuit City is not responsible for any lost o
r misdirected checks.  By submitting this form, you ackno
wledge and agree to these conditions of acceptance and th
at any disputes arising from or relating to this offer wi
ll be governed by Virginia law without regard to its choi
ce of law rules.
Limit 1 rebate per item purchased.

**CUSTOMER INFORMATION:**
Please verify name, address, and phone number below.



E-Mail: _____

**Mail This Form In Its Entirety To:**
Circuit City #PCXCN
P.O. Box 540040
El Paso, TX 88554-0040

To track the real-time status of your claim please visit
our website.    www.CCIRebates.com

If you have questions about your rebate, please call
(866) 754-7717
Business hours may vary

Ticket Number:   03977 - 04041412007I219



→ Date: 12/18/2007

This item was purchased from Circuit City Stores, Inc.

*2008*

*Purchased 8/7/08*

**#2 Rebate Envelope: Toshiba Satellite Widescreen Laptop (L305DS5881)**

Please Print the following information

# REDACTED

Email Address

| | |
|---|---|
| **Promotion Name:** | $50 Mail in Rebate with Purchase of Select Notebook Computers at Circuit City |
| **Program ID:** | PCKFW |
| **Rebate Reward:** | $50.00 Check |
| **Valid Dates :** | 08-03-2008 through 08-09-2008<br>Dates vary by location, see details below. |
| **Postmark Date:** | 09-09-2008 |

**Promotion Details:**

Submission Requirements: - The rebate form in its entirety. - A legible copy of Circuit City sales receipt. - A copy of the UPC barcodes from the product packaging. - Write in Serial Number in space provided. The above listed items must have been purchased during the listed sales dates. Forms postmarked later than 30 days from purchase date are ineligible. By submitting this form you certify that the above items are for personal use only and not for resale. Allow 8 weeks from postmark date for processing of your rebate or other promotional offer. This offer is valid for customer name on sales receipt only. Circuit City and its associated companies are not responsible for lost or misdirected mail. This form and sales receipt will not be returned. This offer is no longer valid if not fully redeemed within 11 Months from the close of the redemption period. Offer void where prohibited or restricted by law. Fraudulent submission of multiple requests may result in prosecution under applicable law. Circuit City and its associated companies reserve the right to audit any claims, to request additional information regarding this claim and to nullify any claims which cannot be substantiated. Products for which rebate or promotional offer are claimed may not be returned. Offer valid in United States of America only. Limit 1 rebate(s) or other promotional offer(s) per address. Advertised rebate amount assumes payment of Circuit City's before-rebate advertised price. Circuit City reserves the right to reduce the fulfilled rebate amount based on price adjustments and/or price matches made on qualifying items. If your submission has a timely postmark but you have not provided all required documentation, Circuit City will allow you 6 months from the postmark date to remedy any deficiencies to Circuit City's satisfaction. If you do so, Circuit City shall then mail you a promotional incentive offer check within 8 weeks. In order to accept this offer, you must cash the promotional incentive offer check within ninety (90) days of check issuance. If you do not cash the check within this time period, you shall be deemed to have rejected this offer, making it void. Circuit City is not responsible for any lost or misdirected checks. By submitting this form, you acknowledge and agree to these conditions of acceptance and that any disputes arising from or relating to this offer will be governed by Virginia law without regard to its choice of law rules. For more information about this offer, please visit our website www.cccityrebates.com. If you have questions about your offer, please call 1-866-754-7717. Business hours may vary.

## Mailing Instructions

To receive your reward:

### Attach the following required proof of purchase for Toshiba Satellite Widescreen Laptop (L305DS5881):

- Receipt or Web Confirmation
- Rebate Form
- Some rebates have additional requirements (ex. Serial Number or Mac ID). Please refer to the specific terms & conditions for any additional requirements.

### Mail the proof of purchase and a copy of this form to:

Circuit City
Dept. #PCKFW
P.O. Box 540040
EL PASO, TX 88554-0040

Please allow 6 to 8 weeks after we receive this form and your proof of purchase to receive rebate.

A confirmation email that includes your tracking number will be sent to your email address.

You can track the status of your rebate any time at www.cccityrebates.com.