IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:     CIRCUIT CITY STORES, INC.,            Case No. 08-35653
            *et al.*,                                                    Chapter 11
                Debtors.                                       Jointly Administered

_____

EXPORT DEVELOPMENT CANADA

         Movant,

                                                                                  CONTESTED MATTER

v.

CIRCUIT CITY STORES, INC.,
*et al.*,

         Respondents.
_____

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

Upon consideration of the Motion for Allowance of the Late Filed Administrative Expense Claim of Export Development Canada ("EDC") (Docket No. 2960) (the "Motion"), the Debtors' objections thereto (Docket Nos. 3131, 3154 and 6252) (collectively, the "Objection") and EDC's replies thereto (Docket Nos. 3152, 4186 and 6264) (collectively, the "Reply"); and the Court having reviewed the Motion, the Objection, and the Reply; and the Court having conducted an evidentiary hearing on January 14, 2010 (the "Hearing"), at which the Court considered the arguments advanced by EDC and the Debtors; and upon the record herein, and after due deliberation thereon; and good and sufficient cause appearing therefore, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES THAT:[1]**

BANKRUPTCY CASE BACKGROUND

This is a Chapter 11 case filed by a national retailer. Circuit City Stores, Inc. ("Circuit City") and certain of its subsidiaries (collectively, the "Debtors")[2] filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. The Debtors have continued as debtors in possession in these jointly administered Chapter 11 cases pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors Committee"). To date, no trustee or examiner has been appointed in these Chapter 11 cases. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 store locations pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). The Agent commenced the going out of business sales pursuant to the Agency Agreement on January 17, 2009; and the going out of business sales were concluded on March 8, 2009,

On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[2] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan is currently scheduled for March 8, 2010. Generally, the Plan provides for the liquidation of the Debtors under Chapter 11 of the Bankruptcy Code.

## JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

EDC is a provider of credit insurance to Canadian companies that export goods to companies located in the United States. EDC provided credit insurance to TechCraft Manufacturing, Inc. ("TechCraft") pursuant to which EDC insured TechCraft's prepetition sales to the Debtors.

## THE BAR DATE FOR FILING 503(b)(9) CLAIMS

On November 12, 2008, the Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "503(b)(9) Bar Date Order"). The 503(b)(9) Bar Date Order approved the form and substance of the 503(b)(9) bar date notice.[3] The 503(b)(9) Bar Date Order and 503(b)(9) Bar Date Notice established December 19, 2008 as the bar date for

---

[3] The 503(b)(9) Bar Date Notice was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice").

3

filing proofs of claim asserting administrative priority under § 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Bar Date"). The 503(b)(9) Bar Date Order provided in relevant part:

> 4. The Section 503(b)(9) Bar Date Notice shall be mailed by first class mail, postage prepaid to the Debtors' vendors and suppliers of goods. . . .
>
> 5. The Debtors are permitted, but not required, to publish notice of the Section 503(b)(9) Bar Date as set forth in the Motion.
>
> . . .
>
> 7. Any holder of a Section 503(b)(9) Claim that fails to file a Section 503(b)(9) Claim Request or a Section 503(b)(9) Motion by the Section 503(b)(9) Bar Date and in accordance with the procedure set forth in this Order is forever barred, estopped and permanently enjoined from asserting its Section 503(b)(9) Claim against the Debtors, their estates, or the property of any of them, and such holder shall not be entitled to receive any distribution in these bankruptcy cases on account of such Section 503(b)(9) Claim or receive further notices regarding such Section 503(b)(9) Claim, absent further order of this Court.
>
> . . .
>
> 12. Any Section 503(b)(9) Claim Request or Section 503(b)(9) Motion that is not timely filed and served in accordance with this Order on or before the Section 503(b)(9) Bar Date, so as to be actually <u>RECEIVED</u> by the deadline and in the manner set forth herein, shall be disallowed, and the holder of such Section 503(b)(9) Claim shall be forever barred, estopped, and permanently enjoined from asserting such Section 503(b)(9) Claim against the Debtors, their estates, or the property of any of them, and such holder shall not be entitled to receive any distribution in these bankruptcy cases on account of such Section 503(b)(9) Claim or receive further notices regarding such Section 503(b)(9) Claim, absent further order of this Court.

503(b)(9) Bar Date Order, pp. 3-4, 7.

The 503(b)(9) Bar Date Notice provided in relevant part:

> CONSEQUENCES OF FAILURE TO FILE SECTION 503(b)(9) CLAIM REQUEST
>
> ANY PERSON OR ENTITY HOLDING A SECTION 503(b)(9) CLAIM THAT FAILS TO FILE A SECTION 503(b)(9) CLAIM REQUEST ON OR BEFORE THE BAR DATE[4] SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING A SECTION 503(b)(9) CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR THE PROPERTY OF ANY OF THEM, ABSENT FURTHER ORDER OF THE COURT.

---

[4] The 503(b)(9) Bar Date Notice also provided notice that the 503(b)(9) Bar Date was 5:00 p.m., Pacific Time, on December 19, 2008.

4

Bar Date Notice, p. 5.

On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these Chapter 11 cases in accordance with 28 U.S.C. § 156(c). On or before November 19, 2008, TechCraft was served with a copy of the 503(b)(9) Bar Date Notice and a 503(b)(9) Claim Request Form (together, the "Bar Date Notice"). *See* Affidavit of Service of KCC (Docket No. 358).[5] In addition, the Debtors published the 503(b)(9) Bar Date Notice in The New York Times (Docket No. 549), The Wall Street Journal (Docket No. 548) and The Richmond Times-Dispatch (Docket No. 547).[6] By no later than December 11, 2008, TechCraft had actually received a copy of the Bar Date Notice. The Debtors did not serve EDC with a copy of the Bar Date Notice because EDC was not a known or reasonably ascertainable creditor and the Debtors had not conducted any business nor had any contact with EDC prior to the Petition Date.

On December 11, 2008, eight days prior to the 503(b)(9) Bar Date, TechCraft forwarded a copy of the Bar Date Notice to EDC by electronic mail (the "TechCraft E-mail"). EDC does not dispute receiving the Bar Date Notice from TechCraft. Upon receipt, EDC uploaded the Bar Date Notice onto its computer system. Both the 503(b)(9) Bar Date Notice and 503(b)(9) Claim Request Form conspicuously included the 503(b)(9) Bar Date in more than one location. Thus, both TechCraft and EDC had actual notice of the deadline prior to the 503(b)(9) Bar Date.

---

[5] The Court may take judicial notice of filings and pleadings in the underlying Chapter 11 cases. *See Pathnet, Inc. v. Nortel Networks, Inc. (In re Pathnet, Inc.)*, 2002 Bankr. LEXIS 1262, at *7 (Bankr. E.D. Va. Aug. 14, 2002) (finding that a court is entitled to take judicial notice of pleadings); *Fletcher v. U.S.,* 174 F.2d 373, 376 (4th Cir. 1949) ("Certainly a judge may take cognizance of the records of his own court."), *cert. denied* 338 U.S. 851 (1948).

[6] The 503(b)(9) Bar Date also was clearly identified and posted by KCC on its website at www.kccllc.net/circuitcity (the "KCC Website") under the section of the KCC Website entitled "Important Dates, Deadlines & Documents" on November 13, 2008. The items on the "Important Dates, Deadlines & Documents" section appear in chronological order and the 503(b)(9) Bar Date is the fourth item on the list. Additionally, on November 13, 2008, a link to the 503(b)(9) Bar Date Notice was posted next to the 503(b)(9) Bar Date in the "Important Dates, Deadlines & Documents" section of the KCC Website. Further, on November 19, 2008, a link to the 503(b)(9) proof of claim form was posted next to the 503(b)(9) Bar Date in the "Important Dates, Deadlines & Documents" section of the KCC Website and at the top of the KCC Website under the heading "503(b)(9) Proof Of Claim Form."

5

Due process requires that the notice of the applicable bar date be "reasonably calculated, under the circumstances, to apprise an interested party of the pendency of the action." *In re Snug Enters., Inc.*, 169 B.R. 31, 33 (Bankr. E.D. Va. 1994). In the Debtors' cases, sufficient notice was given such that due process rights were met. Moreover, there is no doubt that TechCraft and EDC received the Bar Date Notice and that both TechCraft and EDC had actual knowledge of the 503(b)(9) Bar Date well in advance of its expiration.

THE LATE FILED CLAIM

Prior to the 503(b)(9) Bar Date, TechCraft filed an application for payment of its claim against the Debtors with EDC (the "Application for Payment"). EDC's claims unit processed TechCraft's Application for Payment. EDC ultimately paid TechCraft an agreed upon percentage of its claim. The Application for Payment included a notation in the risk category portion of the form that Circuit City had filed for bankruptcy on November 10, 2008. Because the Application for Payment involved a bankruptcy case, EDC's claims department immediately notified its recovery unit and the person responsible for handling all bankruptcy matters on behalf of EDC (the "EDC Representative") about the Application for Payment.

In the TechCraft E-mail, TechCraft offered to assist EDC in connection with the 503(b)(9) Bar Date Notice and 503(b)(9) Claim Request Form. EDC did not respond to TechCraft's offer of assistance. While EDC's claims unit notified its recovery unit about the Application for Payment and about the related Circuit City bankruptcy case, it failed to notify the EDC recovery unit or the EDC Representative that EDC had received the Bar Date Notice. The EDC Representative had full access to EDC's computer system. The uploaded information available on EDC's computer system clearly set forth the 503(b)(9) Bar Date and included the provided

6

claim form. However, the EDC Representative did not review the information that had been uploaded onto EDC's computer system by the claims unit.

Prior to the 503(b)(9) Bar Date, the EDC Representative had been directed by counsel for the Debtors to consult the KCC Website, which contained information about the 503(b)(9) Bar Date and the claim form.[7] The EDC Representative testified that she did in fact visit the KCC Website as she had been directed by Debtors' counsel. The EDC Representative testified further that Circuit City was her first bankruptcy case involving section 503(b)(9) of the Bankruptcy Code and that she was not familiar with that provision of the Bankruptcy Code at the time she visited the KCC Website. Accordingly, the EDC Representative did not appreciate the significance of the information with which she was provided on the KCC Website pertaining to the 503(b)(9) Bar Date.

Neither TechCraft nor EDC timely filed a 503(b)(9) claim against Debtors. Although EDC could have requested that TechCraft file a claim, including a 503(b)(9) claim, EDC did not choose to do so. After EDC paid TechCraft, TechCraft assigned its claim to EDC. Thereafter, EDC filed a 503(b)(9) administrative expense claim on January 28, 2009 – forty (40) days after the 503(b)(9) Bar Date had expired.

---

[7] The Court rejects EDC's contention that its failure to timely file its 503(b)(9) claim was somehow the result of communications it had with counsel for the Debtors. Counsel for debtors have no duty to respond to creditor inquires regarding filing deadlines. *See In re Jackson,* 98 B.R. 738, 741 (Bankr. D. Md. 1986) (stating that debtor's counsel is under no duty to respond to creditor inquiries regarding filing deadlines); *see also In re First Software Corp.*, 97 B.R. 711, 719 (Bankr. D. Mass. 1988) (affirming the bankruptcy court's rejection of claimant's motion to extend time for filing and stating that debtor's counsel was under no duty to make the claimant aware of the filing deadline). But even if some duty on the part of Debtors' counsel did exist (which the Court concludes it did not), the e-mail exchange between Debtors' counsel and EDC was not in any way misleading. Rather, it was both informative and helpful in directing EDC to the KCC Website, which conspicuously contained the 503(b)(9) Bar Date and related notices and forms. Debtors' counsel's did not contribute in any way to EDC's neglect, and no actions of Debtors' counsel excuse EDC for its failure to timely file a 503(b)(9) claim.

EDC FAILED TO ESTABLISH EXCUSABLE NEGLECT

Bankruptcy Rule 3003(c) provides that "the court shall fix [in a Chapter 11 case] and for cause shown may extend the time within which proofs of claim . . . may be filed." Fed. R. Bankr. P. 3003(c)(3).  With respect to claims entitled to administrative priority, § 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause."  11 U.S.C. § 503(b).  In addition, if the request for an extension under Bankruptcy Rule 3003(c)(3) or § 503(b) is made after the expiration of the bar date, a claimant must establish not only "cause," but also that "the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b).

"The requirement of a Bar Date in Chapter 11 enables the debtor . . . to establish the universe of claims with which it must deal and the amount of those claims." *In re A.H. Robins Co.,* 129 B.R. 457, 459 (Bankr. E.D. Va. 1991).  As Bar Dates in Chapter 11 bankruptcy cases serve such a very important purpose, courts do not allow claims filed by creditors after the bar date, absent special circumstances.  *See In re Provident Hosp., Inc.,* 122 B.R. 683, 685 (D. Md. 1990), *aff'd*, 943 F.2d 49 (4th Cir. 1991) (unpublished opinion) ("Because [the claimant] did not timely file his bankruptcy claim after having been given constitutionally sufficient notice, his claim is barred under well-settled authority, 11 U.S.C. 1141(d) and Bankruptcy Rule 3003(c)(2).").[8]

---

[8] The necessity for the establishment of a bar date can no better be illustrated than by the Debtors' upcoming confirmation hearing.  The Debtors must, as a condition for confirmation of their proposed Plan, be able to demonstrate their ability to pay, on the effective date, all of their administrative expenses.  *See* 11 U.S.C. § 1129(a)(9).  Accordingly, it is imperative that the Debtors know, at this point in their cases, the extent of those asserted expenses.

It is not uncommon for courts to disallow a proof of claim filed just a few days after a filing deadline. *See Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (refusing to enlarge the period for filing a notice of appeal when the litigant mailed the notice three days prior to the expiration of the deadline but the notice did not arrive until three days after the expiration of the deadline). *See also In re Dishman*, 257 B.R. 780 781-83 (Bankr. E.D. Va. 2000) (refusing to enlarge time for filing of complaint where complaint was filed two days late due to a delay in mail delivery caused by inclement weather); *Avnet, Inc. v. Maxwell*, 2006 U.S. Dist. LEXIS 39425 (N.D. Ill. May 25, 2006) (refusing to accept late filed proof of claim where claim was faxed to claims agent on bar date and delivered by courier to claims agent one day after the bar date); *In re Yankee Distrib. Co.*, 53 B.R. 222, 223-24 (Bankr. D. Vt. 1985) (motion to allow late proof of claim was denied where proof of claim arrived one day after the bar date).

As the claimant seeking to file a combined proof of claim and request for payment of that claim as administrative expense after the court-ordered 503(b)(9) Bar Date, EDC bears the burden of proving excusable neglect. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005); *see also Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) ("'[T]he burden of demonstrating excusability lies with the party seeking the extension . . .'") (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)); *see generally In re Circuit City Stores, Inc.,* 2010 WL 56076, at *5 (Bankr. E.D. Va. Jan. 6, 2010) ("If a 'creditor' wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501 [and Bankruptcy Rule 3003], second, have the claim allowed under § 502, and then, third, request administrative expense priority under § 503(a).").

The Supreme Court has established a two-part test to determine whether a claimant's failure to act in accordance with the filing deadline was due to "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship*, 507 U.S. 380, 395 (1993). Under the *Pioneer* framework, a court must first determine whether the claimant's failure to file in a timely manner was the result of neglect. *See id*. at 394; *see also Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761, 765 (Bankr. E.D. Va. 1993) (holding that the Supreme Court had established a two-part inquiry for determining whether a party's failure to act was due to "excusable neglect," the first question being whether the failure to act was due to neglect).

The Court finds that EDC's failure to timely file its claim was the result of its neglect. Neglect encompasses inaction caused by "inadvertence, mistake, or carelessness." *Pioneer*, 507 U.S. at 388. EDC timely received notice of the bar date deadline established in these cases, but, nevertheless, failed to timely file its claim.

The Court must next determine whether EDC's failure to timely file its 503(b)(9) claim was excusable. *See Pioneer,* 507 U.S. at 395. In *Pioneer*, the Supreme Court held that the determination of whether the claimant's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. In this regard, the Supreme Court set forth four factors to be considered when considering a motion to allow a late-filed proof of claim under Rule 9006(b). Those factors include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the claimant; and (4) whether the claimant acted in good faith. *Id*.

The "excusable neglect" standard is not an easy one to satisfy. *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 534 (4th Cir. 1996) ("'[E]xcusable neglect' is not easily

10

demonstrated, nor was it intended to be."); *see also In re Best Products Co.*, 140 B.R. 353, 359 (S.D.N.Y. 1992) (characterizing the bar date as a court-imposed statute of limitation that is "peremptory"). As the Supreme Court discussed in *Pioneer*, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" 507 U.S. at 392; *see also Thompson*, 76 F.3d at 534; *In re Best Products Co., Inc.*, 140 B.R. at 358 ("Except when a known creditor is not listed on the schedules and hence fails to receive notice of the filing deadline, the bar date is strictly enforced.") (citing *Wright v. Placid Oil Co.,* 107 B.R. 104, 106 (N.D. Tex. 1989)). "[E]ven upon a showing of 'excusable neglect,' whether to grant an enlargement of time still remains committed to the discretion of the district court." *Thompson*, 76 F.3d at 532 n.2.

"The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file." *Thompson*, 76 F.3d at 534. "[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[] [sic] case, the reason-for-delay factor will always be critical to the inquiry." *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005) (quoting *Graphic Commc'ns. Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001)); *see also Pioneer*, 507 U.S. at 395 (stating that it is also significant whether or not the reason for the failure to file was "within the reasonable control of the movant").

Administrative failure on the part of the claimant is insufficient to warrant a finding of "excusable neglect." *See Thompson*, 76 F.3d at 534 ("[A] mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing. . . .") (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)); *see also In re*

11

*Century Brass Products, Inc.*, 72 B.R. 68, 70 (Bankr. D. Conn. 1987) (holding that a "[d]elay resulting from a breakdown in creditor's internal procedures . . . does not constitute excusable neglect within the meaning of Rule 9006(b)(2)" of the Federal Rules of Bankruptcy Procedure); *see also In re Figueroa*, 33 B.R. 298, 303 (Bankr. S.D.N.Y. 1983) (holding that courts generally refuse to grant relief when late filing is caused by internal breakdowns because a finding that a breakdown in internal procedures caused the noncompliance shows that the events were not beyond the control of the creditor). "Similarly, preoccupation or an excessive workload does not typically render a mistake excusable." *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005) (citing *Pioneer*, 507 U.S. at 398 (noting that "we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.")); *see also In re Wilmoth*, 412 B.R. 791, 798-800 (Bankr. E.D. Va. 2009).

The Court concludes that EDC's neglect was not excusable. Neither EDC's lack of understanding of § 503(b)(9) of the Bankruptcy Code nor its administrative failure to act on the Bar Date Notice when EDC received notice of it constitutes excusable neglect. The Court finds that EDC's failure to timely file its 503(b)(9) claim was the result of a breakdown in the internal procedures of EDC. For the foregoing reasons, the Court will disallow the late filed 503(b)(9) Claim filed by EDC.

A separate order shall be issued.

ENTERED: _____

                                                                      /s/ Kevin R. Huennekens
                                    UNITED STATES BANKRUPTCY JUDGE