Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS
105, 363 AND 365 AND BANKRUPTCY RULES 2002, 6004 AND
6006 (A) AUTHORIZING SELLER TO ENTER INTO AGREEMENT FOR
SALE OF CERTAIN REAL PROPERTY IN LOUISVILLE, KENTUCKY
SUBJECT TO HIGHER OR OTHERWISE BETTER BIDS,
(B) APPROVING BIDDING PROCEDURES IN CONNECTION THEREWITH,
(C) APPROVING SALE FREE AND CLEAR OF ALL INTERESTS,
(D) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN
UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY FREE
AND CLEAR OF ALL INTERESTS, AND (E) GRANTING RELATED
RELIEF**

        Circuit City Stores, Inc. (the "Seller," and

collectively with the debtors and debtors in possession

in the above-captioned jointly administered cases, the

"Debtors")[1] hereby moves (the "Motion"), pursuant to

sections 105, 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002, 6004

and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order

(A) authorizing the Seller to enter into an agreement

with the Purchaser (as defined below) for the sale (the

"Sale") of certain of the Seller's real property located

at 5120 Dixie Highway in Louisville, Kentucky (the

"Property"), a copy of which is attached as <u>Exhibit A</u> to

the Sale Order (the "Agreement"), subject to higher or

otherwise better proposals, (B) approving the Bidding

Procedures (as defined below) in connection therewith,

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen,
      VA 23060.

(C) approving the Sale free and clear of all Liens (as
defined below), (D) approving the assumption, assignment
and sale (the "Assignment") of the Lease (as defined
below) associated with the Property free and clear of
all Liens, and (E) granting related relief.  In support
of the Motion, the Seller respectfully represents as
follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider
this Motion under 28 U.S.C. §§ 157 and 1334.  This is a
core proceeding under 28 U.S.C. § 157(b).  Venue of
these cases and this Motion in this District is proper
under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105, 363,
and 365 and Bankruptcy Rules 2002, 6004 and 6006.

### BACKGROUND

**A.    The Bankruptcy Cases.**

3.    On November 10, 2008 (the "Petition
Date"), the Debtors filed voluntary petitions in this
Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going-out-of-business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  The going-out-of-business sales were concluded on or about March 8, 2009.

7.   On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its

Affiliated Debtors and Debtors In Possession and its

Official Committee of Creditors Holding General

Unsecured Claims (the "Plan").  The associated

disclosure statement (the "Disclosure Statement") was

approved on September 24, 2009.  Confirmation of the

Plan is currently scheduled for March 8, 2010.

8.   Generally, the Plan provides for the

liquidation of the Debtors under chapter 11 of the

Bankruptcy Code.

### RELIEF REQUESTED

9.   By this Motion, the Seller seeks an

order (A) authorizing the Seller to enter into the

Agreement in connection with the Sale of the Property,

subject to higher or otherwise better proposals,

(B) approving the Bidding Procedures in connection

therewith, (C) approving the of the Sale of the Property

free and clear of all Liens, (D) approving the

Assignment of the Lease free and clear of all Liens, and

(E) granting related relief (the "Sale Order").

### BASIS FOR RELIEF

10.  As more fully set forth below, after a

comprehensive review, the Seller believes that the Sale

of the Property and the Assignment of the Lease
represent its best opportunity under the circumstances
to maximize the value of the Property and the Lease.
Therefore, the Sale of the Property and Assignment of
the Lease are in the best interests of its estate and
stakeholders.

**A.    The Property and the Lease.**

11.   The Property comprises approximately 4.02
acres in Louisville, Kentucky.  In addition to having
operated a retail store on the Property until the
conclusion of Seller's going-out-of-business sales, the
Seller leased and continues to lease a certain portion
of the Property to EEG, Inc. (successor by merger to The
Hair Design School, Inc.) ("Tenant") pursuant to a lease
dated June 23, 2003 (as modified and amended, the
"Lease").  Accordingly, the Sale of the Property would
be subject to the Lease, which would be assigned to any
purchaser of the Property.

**B.    Events Leading To The Sale.**

12.   In light of the failure to obtain any
feasible going concern bids and the decision to
liquidate the Debtors' inventory through going-out-of-

business sales, as described above, the Seller has been
left with various assets -- including the Property --
for which it has no remaining use.  In contrast, the
sale of such assets, including the Sale of the Property,
would result in significant proceeds for the Seller's
estate and creditors.

13.   Since at or about the time the going-out-
of-business sales were commenced, the Seller, along with
its real estate advisor, DJM Realty, LLC ("DJM"), has
been marketing the Property and the Lease.  As a result
of these marketing efforts, the Seller received various
proposals to purchase the Property.  Upon reviewing
these proposals, the Seller determined that the proposal
submitted by the Purchaser was considerably higher or
otherwise better than the alternate proposals received.
Thus, the Seller elected to proceed with the Sale of the
Property to the Purchaser.

**C.     The Agreement.**

14.   On February 16, 2010, the Seller entered into the Agreement[2] by and between the Seller and Janet F. Nicklies (the "Purchaser").

15.    Pursuant to the Agreement, the Seller has agreed to sell the Property and assign the Lease to the Purchaser for $750,000 (the "Purchase Price"), subject to higher or otherwise better proposals.

16.    The significant terms of the Agreement are as follows:[3]

(a)  <u>General Terms</u>.  The Purchaser would acquire the Property, consisting solely of the Seller's right, title and interest in and to the property located at 5120 Dixie Highway, Louisville, Kentucky, comprising approximately 4.02 acres, together with (i) all rights and appurtenances pertaining to such land, (ii) all buildings (including a building constituting approximately 45,027 square feet), structures and other improvements on said land, (iii) electrical, mechanical, air conditioning and other fixtures attached thereto and (iv) Seller's interest as landlord under the Lease. Seller would assign the Lease to Purchaser.

(b)  <u>Sale and Assignment</u>.  Possession of the Property would be delivered "AS IS, WHERE IS".  The Property would be sold free and clear of all liens

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

[3]   In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

(including the liens of the Seller's post-petition
lenders and liens for past-due real property taxes),
claims and encumbrances (collectively, the "Liens"),
except for (i) liens for real property taxes and
assessments that are not yet due and payable,
(ii) zoning ordinances, building codes and other land
use laws and applicable governmental regulations,
(iii) all covenants, agreements, conditions, easements,
restrictions and rights, whether of record or otherwise,
(iv) the Lease, and (v) any and all matters that would
be shown by a physical inspection of the Property
(collectively, the "Permitted Encumbrances").

      (c)  <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding
Procedures.

      (d)  <u>Documentation</u>.  The Sale would be
effected pursuant to the Agreement and related
documentation.

      (e)  <u>Purchase Price</u>.  The Purchase Price to be
paid by the Purchaser for the Property would be $750,000.

      (f)  <u>Deposit Escrow</u>.  In accordance with the
Agreement, the Purchaser has placed $130,000 into an
escrow account with Chicago Title Insurance Company (the
"Deposit").  If the Sale is consummated under the
Agreement, the Deposit shall be applied to the Purchase
Price.  Upon closing of the Sale (the "Closing"), or if
the Agreement is terminated prior to Closing because of
the Purchaser's breach of the Agreement (on the terms as
provided in the Agreement), the Seller would be entitled
to the Deposit.

      (g)  <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain
standard representations and warranties relating to the
Sale of the Property and the Purchaser would provide
representations and warranties generally standard in a
transaction of this type.  The representations and
warranties of the Purchaser and the Seller shall expire
and be extinguished at the Closing.

(h)  <u>Closing</u>.  The Closing shall occur on
(i) April 1, 2010, or (ii) ten (10) days following entry
by the Court of the Sale Order.  In the event the
Closing has not occurred by 6:00 p.m. (ET), on April 1,
2010 (the "Outside Date") for any reason other than a
default by the Purchaser thereunder, the Agreement, at
the election of Purchaser to be exercised no later than
the Outside Date, will become null and void and
Purchaser will receive a refund of the Deposit.

17.  <u>Termination</u>.  The Agreement could be
terminated prior to Closing in the following
circumstances:  (i) by Purchaser, if an action is
initiated to take any material portion of the Property
by eminent domain proceedings, (ii) by Purchaser, in the
event of damage to the Property exceeding $70,000
occurring during the period after the date of the
Agreement and prior to Closing, if Seller does not
repair such damage, (iii) by the Seller, in order to
permit the Seller to accept a higher or better offer for
the Property pursuant to the Bidding Procedures or
(iv) by either Purchaser or Seller if the Court has not
entered the Sale Order on or prior to the Outside Date.

**D.    The Bidding Procedures.**

18.    To ensure the Seller receives the

highest or otherwise best proposal for the Property, the

Seller will entertain alternate proposals for the Sale

of the Property.  The Seller accordingly requests that

this Court order that any parties, including those

parties that previously submitted proposals, who wish to

submit an alternate proposal for consideration by the

Debtors be required to do so by March 9, 2010 at 4:00

p.m. (ET) (the "Bid Deadline").  All bids are to be sent

to the following parties:

(1) Circuit City Stores, Inc., 4951 Lake Brook
Drive, P.O. Box 5695, Glen Allen, VA 23060, Attn:
Michelle Mosier (michelle_mosier@ccswinddown.com);
(2) Counsel to the Seller, Gregg M. Galardi
and Ian S. Fredericks, Skadden, Arps, Slate, Meagher &
Flom LLP, One Rodney Square, P.O. Box 636, Wilmington,
DE 19801 (gregg.galardi@skadden.com and
ian.fredericks@skadden.com);
(3) Counsel to the Creditors' Committee, Jeff
Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100
Santa Monica Blvd., 11th Floor, Los Angeles, California
90067-4100, (jpomerantz@pszjlaw.com); and
(4) DJM Realty Services, LLC, 445 Broadhollow
Road, Suite 225, Melville, New York 11747, Attn: James
Avallone, Fax: (631) 752-1231 (javallone@djmrealty.com).

19.   If the Seller receives any Qualified

Bids (as defined herein), the Seller would hold an

auction (the "Auction") on March 16, 2010 at 10:00 a.m.

(ET) telephonically, or at the offices of Skadden, Arps,

Slate, Meagher & Flom LLP, 1440 New York Avenue, N.W.,

Wilmington, Delaware.  The Seller will advise the

Purchaser and all other parties that submitted a

Qualified Bid (as defined below) of the Auction.

20.   At the conclusion of any Auction, the

Seller, in consultation with its advisors (and

representatives of the Creditors' Committee), would

11

determine the highest or otherwise best bid (the "Successful Bid").

21.    Following the Auction, if any, the Seller intends to proceed with a hearing to approve the Sale of the Property on March 18, 2010 at 10:00 a.m. (ET) (the "Sale Hearing").

22.    If no Qualified Bids other than the bid of the Purchaser are received, the Seller would proceed with the Sale to the Purchaser following entry of the Sale Order.  If the Seller receives additional Qualified Bids, then at the Sale Hearing, the Seller would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by the Seller unless and until approved by the Court.

23.    Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Seller would be permitted to effectuate a sale

to the Alternate Bidder without further order of the
Court.

24.    To ensure that only bidders with a
serious interest in the purchase of the Property
participate in the bidding process, the Seller would
only consider the "Qualified Bids" of "Qualified
Bidders."  To be considered a "Qualified Bid" and a
"Qualified Bidder" for purposes of the Auction, the
person or entity submitting the bid would be required to
submit an offer by the Bid Deadline that includes:

(a)    an executed copy of the Agreement marked
to show those amendments and
modifications to the Agreement that the
Qualified Bidder proposes (such modified
Agreement, a "Marked Agreement"),
including modifications to the Purchase
Price, which price must be at least
$800,000 (the "Initial Minimum Overbid");

(b)    the potential bidder and the officer(s)
or authorized agent(s) who will appear on
behalf of such bidder;

(c)    a statement that the bid shall not be
conditioned on the outcome of unperformed
due diligence by the bidder or any
financing contingency;

(d)    a good faith deposit (the "Good Faith
Deposit") in an amount equal to $130,000
plus ten (10) percent of the amount the
bid exceeds the Purchase Price;

(e)   an acknowledgement that the bidder's
      offer is irrevocable until two (2)
      business days after the closing of the
      Sale of the Property; and

(f)   an acknowledgement that, in the event the
      bidder is the Alternate Bidder, the
      bidder will proceed with the purchase of
      the Property pursuant to the terms the
      Marked Agreement.

25.   The Seller reserves the right to

(i) determine in its reasonable discretion (after

consultation with representatives of the Creditors'

Committee) which offer is the highest or otherwise best

offer; (ii) reject at any time prior to the closing of a

Sale and Assignment, without liability, any offer that

the Seller in its reasonable discretion (after

consultation with representatives of the Creditors'

Committee) deems to be (x) inadequate or insufficient,

(y) not in conformity with the requirements of the

bidding procedures or applicable law or (z) contrary to

the best interests of the Seller and its estate; (iii)

re-open the Auction at any time prior to entry of the

Sale Order, (iv) withdraw the Property from the Auction,

and (v) waive the requirements of any of the bidding

procedures with respect to a potential or Qualified

Bidder if the Seller determines in its business judgment
(after consultation with representatives of the
Creditors' Committee) it is in the best interests of its
estate and creditors.

26.   Objections to the Sale, if any, shall be
filed and served no later than 4:00 p.m. (ET) on March
11, 2010.

**APPLICABLE AUTHORITY**

**I.   APPROVAL OF THE TRANSACTIONS FOR THE SALE OF THE
PROPERTY IS WARRANTED UNDER BANKRUPTCY CODE SECTION
363(b)(1).**

27.   As set forth above, Bankruptcy Code
section 363(b)(1) authorizes a  trustee to "use, sell,
or lease" property of the estate with the Court's
approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors
may be sold outside of the ordinary course of business,
pursuant to Bankruptcy Code section 363(b)(1), if a
sound business purpose exists for doing so.  In re WBQ
P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing
Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th
Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214
B.R. 834, 836 (Bankr. E.D. Va. 1997).

28.   To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided.  In re WBQ P'ship, 189 B.R. at 102.

29.   Based upon the results of their analysis, the Seller's management and advisors have concluded that the Sale of the Property pursuant to the Agreement or a higher or otherwise better offer would maximize the value of the Property for the Seller's estate. Maximizing asset value is a sound business purpose that warrants authorizing the proposed Sale.

30.   The Sale of the Property will be subject to competing bids, thereby enhancing the Seller's ability to receive the highest or otherwise best value for the Property.  Consequently, the fairness and reasonableness of the consideration to be received by the Seller will ultimately be demonstrated by a "market check" through the auction process, which is the best

means for establishing whether a fair and reasonable price is being paid.

31.   Moreover, the Seller proposes to provide adequate notice of the Auction and the Sale Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Seller's major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Property and others whose interests are potentially implicated by the proposed Sale and Assignment.

## II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

32.   Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

33.   The disposition of the Property and Lease pursuant to the terms reflected in the Agreement resulted from the bids submitted for the Property, pursuant to a marketing process led by DJM.   Conducting a marketing process through a third party broker represents an accepted method of selling property. Similar marketing processes have been approved in other chapter 11 cases.   See, e.g., Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see also In re Reading Broadcasting, Inc., 386 B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

34.   In addition, bid procedures similar to those Bid Procedures outlined above have been approved by this Court in this case.   See, e.g., In re Circuit City Stores, Inc., Case No. 08-35653 (KRH)(Bankr. E.D. Va. Sept. 1, 2009) (D.I. 4735).

35.   Finally, the other interested parties are provided with an opportunity to submit a higher or otherwise better proposal and, if necessary, the Seller will conduct an auction.

36.   In light of the foregoing, the Seller submits that the Sale process is reasonable and appropriate.

**IV.   THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE BANKRUPTCY CODE AND THE TRANSACTIONS CONTEMPLATED BY THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF SECTION 363(n) OF THE BANKRUPTCY CODE.**

37.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of leases does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Fourth Circuit Court of Appeals has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'"  Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

38.   Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

39.   The Seller submits that the Agreement

reflects an negotiated, arm's length transaction.

Throughout the negotiations, the Purchaser has at all

times acted in good faith.   Moreover, to the extent that

the assets are sold to a Successful Bidder, it will be

because of a well-planned competitive process and

negotiations at arm's length to be conducted at an

auction.   As a result of the foregoing, the Seller

requests that the Court make a finding that the Purchase

Price to be paid by the Purchaser or the Successful

Bidder constitutes reasonably equivalent value and fair

consideration under any applicable law.

40.   The Seller, therefore, requests that this

Court make a finding that the Purchaser or the

Successful Bidder, as the case may be, has purchased the
Property in good faith within the meaning of section
363(m) of the Bankruptcy Code.  Further, the Seller
requests that this Court make a finding that the
Agreement or any purchase agreement reached as a result
of the bidding procedures necessarily will comprise an
arm's length, negotiated transaction entitled to the
protections of section 363(m) of the Bankruptcy Code.
Because the Seller has shown that the Purchaser's or
Successful Bidder's bid is not the product of fraud or
collusion between the Purchaser or Successful Bidder and
other bidders or the trustee, or an attempt to take
grossly unfair advantage of other bidders, the Seller
furthers request that this Court make a finding that the
transactions contemplated by the Agreement are not
avoidable under section 363(n) of the Bankruptcy Code.

**V.    THE SALE OF THE PROPERTY FREE AND CLEAR OF ANY
        INTEREST SHOULD BE AUTHORIZED UNDER BANKRUPTCY CODE
        SECTION 363(f).**

41.  To facilitate a sale of the Property, the
Seller requests authorization to sell the Property and
the Lease free and clear of any and all Liens that may
be asserted against such property.

42.   Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such
> interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at
> which such property is sold is greater than
> the aggregate value of all liens on such
> property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal
> or equitable proceeding, to accept a money
> satisfaction of such interest.

11 U.S.C. § 363(f).

43.   Section 363(f) permits the sale of estate
property free and clear of interests if any one of the
five conditions above is met.  See, e.g., In re Laines,
352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

44.   Courts have held that the authority of a
debtor to sell assets free and clear of interests is
broad and should be read expansively.  See In re TWA,
Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United

Mine Workers of Am. 1992 Benefit Plan v. Leckie

Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99

F.3d 573, 582 (4th Cir. 1996) (holding that the phrase

"any interest in property" includes more than just in

rem interests); In re P.K.R. Convalescent Centers, Inc.,

189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain

meaning of the statute demonstrates, § 363 covers more

situations than just sales involving liens.").  Moreover,

courts have noted that the purpose of the "free and

clear" language is to allow the debtor to obtain a

maximum recovery on its assets in the marketplace.  See

In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr.

D. Del. Mar. 27, 2001).

        45.  Accordingly, this Court should authorize

the Seller to sell the Property and the Lease free and

clear of any and all Liens that may be asserted by any

parties, with any such Liens attaching to the net

proceeds of the sale of the Property and the Lease in

the same order and priority and subject to the same

defenses as they exist against the Property and the

Lease.

## VII. APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASE IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.

46.   Under section 365(a) of the Bankruptcy Code a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor.  It provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

> (C)  provides adequate assurance of
> future performance under such contract or
> lease.

11 U.S.C. § 365(b)(1).

47.  Section 365(f)(2) of the Bankruptcy Code

provides that:

> The trustee may assign an executory contract
> or unexpired lease of the debtor only if –
>
> (A)  the trustee assumes such contract or
> lease in accordance with the provisions
> of this section; and
>
> (B)  adequate assurance of future
> performance by the assignee of such
> contract or lease is provided, whether or
> not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

48.  First, the Seller does not believe it is

in default under the Lease.  However, to the extent that

any defaults exist under the Lease, the Seller (or the

Successful Bidder) would cure any such default.

49.  Second, Courts give the phrase "adequate

assurance of future performance" a "practical, pragmatic

construction."  <u>EBG Midtown S. Corp. v. Mcharen/Hart

Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)</u>, 139

B.R. 585, 592 (S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 300 (2d

Cir. 1993) (presence of adequate assurance should be

"determined under the facts of each particular case").

Adequate assurance does not require a debtor to provide

a guarantee of future performance; assurance is deemed

adequate as long as performance is more probable than

not.  See Cinicola v. Scharffenberger, 248 F.3d 110, 120

n. 10 (3d Cir. 2001) ("Although no single solution will

satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of

performance." (quotations and citations omitted)); In re

Weirton Steel Corp., 2007 WL 2021896 at *5 (Bankr. N.D.

W. Va. July 6, 2007) ("Assurance is adequate if

performance is likely; that is more probable than not.").

      50.  Adequate assurance is generally

associated with assurance that the assignee, as tenant,

will perform payment obligations under the lease being

assigned.  Here however, the Purchaser will be assigned

the obligations of the Seller as lessor, which are far

more limited than those of assignee as tenant.  There

will be little practical change under the Lease as far

as the Tenant is concerned.  Consequently, the financial

wherewithal and diligence required to negotiate and

enter into the Agreement for the Sale of the Property
and the Assignment of the Lease, combined with the
Purchaser's agreement to perform all obligations under
the Lease on and after the date of the Sale, satisfy the
standard set by the Bankruptcy Code.

**VIII. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE OF THE PROPERTY.**

51. Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of
property of the estate is stayed until the expiration of
10 days after entry of the order, unless the court
orders otherwise." Fed. R. Bankr. P. 6004(h); see also
6006.

52. The Seller requests that the Court waive
the ten-day stay of Bankruptcy Rules 6004 and 6006 with
respect to the Sale of the Property and Assignment of
the Lease following the entry of the Sale Order. By
waiving such requirements, the Seller and the Purchaser
or the Successful Bidder, as applicable, will be able to
immediately close the Sale. This will result in
immediate proceeds to the Seller's estate. Moreover,
the Agreement requires closing of the Sale to take place

not later than April 1, 2010 or within ten (10) days of
entry of the Sale Order, whichever is the first to occur.
Accordingly, the stay under Bankruptcy Rules 6004(h) and
6006 should be waived.

## NOTICE

53.   Notice of this Motion has been provided
to those parties entitled to notice under the
Supplemental Order Pursuant to Bankruptcy Code Sections
102 and 105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management and Administrative Procedures
(D.I. 6208; the "Case Management Order"), as well as
(a) all entities known to have expressed an interest in
a transaction regarding the Property during the past
three (3) months; (b) all entities reasonably known to
have a Lien on the Property; (c) all federal, state, and
local regulatory or taxing authorities or recording
offices that have a reasonably known interest in the
relief requested by the Motion; and (d) Tenant under the
Lease.   The Seller submits that, under the circumstances,
no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

54.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Seller requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

55.    No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Seller respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: February 23, 2010
       Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                                 Gregg M. Galardi, Esq.
                                 Ian S. Fredericks, Esq.
                                 P.O. Box 636
                                 Wilmington, Delaware 19899-0636
                                 (302) 651-3000

                                    - and -

                                 SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                                 Chris L. Dickerson, Esq.
                                 155 North Wacker Drive
                                 Chicago, Illinois 60606
                                 (312) 407-0700

                                    - and -

                                 MCGUIREWOODS LLP

                                 /s/ Douglas M. Foley _____
                                 Dion W. Hayes (VSB No. 34304)
                                 Douglas M. Foley (VSB No. 34364)
                                 One James Center
                                 901 E. Cary Street
                                 Richmond, Virginia 23219
                                 (804) 775-1000

                                 Counsel for Debtors and Debtors in Possession

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
              Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x
```

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365 AND BANKRUPTCY RULES 2002, 6004 AND 6006 AUTHORIZING AND APPROVING SALE OF CERTAIN REAL PROPERTY LOCATED IN LOUISVILLE, KENTUCKY AND THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

1

debtors and debtors in possession in the above-captioned

jointly administered cases, the "Debtors") for an order

pursuant to Bankruptcy Code sections 105, 363 and 365

and Bankruptcy Rules 2002, 6004 and 6006 (A) authorizing

the Seller to enter into an agreement with the Purchaser

for Sale of the Property, subject to higher or otherwise

better proposals, (B) approving the Bidding Procedures

in connection therewith, (C) approving the Sale and of

the Property free and clear of all Liens; (D) approving

Assignment of the Lease associated with the Property

free and clear of all Liens and (E) granting related

relief; and upon the record of the hearing held on March

18, 2010 (the "Sale Hearing"); and after due

deliberation thereon, and sufficient cause appearing

therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.      The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

---

[2]  Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.     Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.     The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

D.     The notice of the Motion and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.     The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property and the Leases.

F.     A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities, including EEG, Inc. ("Tenant").

G.     The Seller and its professionals marketed the Property and the Lease and conducted a sale

3

process as set forth in and in accordance with the
Motion.  Based upon the record of these proceedings, all
creditors and other parties in interest and all
prospective purchasers have been afforded a reasonable
and fair opportunity to bid for the Property and the
Lease.

H.     The Seller has demonstrated good,
sufficient, and sound business purpose and justification
for the Sale and Assignment because, among other things,
the Seller and its advisors diligently and in good faith
analyzed all other available options in connection with
the disposition of the Property and Lease and determined
that (a) the terms and conditions set forth in the
Agreement, (b) the transfer to the Purchaser of the
Property and Lease pursuant thereto and (c) the purchase
price agreed to by the Purchaser, $750,000 is fair and
reasonable and constitutes the highest or otherwise best
value obtainable for the Property and the Lease.

I.     The Seller has full power and authority
to execute the agreement submitted by Janet F. Nicklies
(the "Purchaser"), a copy of which is annexed hereto as
Exhibit A (the "Agreement") and all other applicable

4

documents contemplated thereby.  The transfer and
conveyance of the Property by the Seller have been duly
and validly authorized by all necessary action of the
Seller.  The Seller has all of the power and authority
necessary to consummate the transactions contemplated by
the Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Agreement, are required for the Seller to consummate
such transactions.

J.    The Agreement and the sale of the
Property and assignment of the Lease thereunder were
negotiated and undertaken by the Seller and the
Purchaser at arms' length without collusion or fraud,
and in good faith within the meaning of Sections 363(m)
of the Bankruptcy Code.  As a result of the foregoing,
the Seller and the Purchaser are entitled to the
protections of Section 363(m) of the Bankruptcy Code.

K.    Neither the Seller nor the Purchaser
engaged in any conduct that would cause or permit the
Agreement or the consummation of the Sale or Assignment

5

to be avoided, or costs or damages to be imposed, under

Section 363(n) of the Bankruptcy Code.

L.    The consideration provided by the

Purchaser for the Property and the Lease is the highest

and best offer received by the Seller, and the

consideration constitutes (a) reasonably equivalent

value under the Bankruptcy Code and Uniform Fraudulent

Transfer Act, (b) fair consideration under the Uniform

Fraudulent Conveyance Act, and (c) reasonably equivalent

value, fair consideration and fair value under any other

applicable laws of the United States, any state,

territory or possession, or the District of Columbia,

for the Property and the Lease.

M.    The Sale and Assignment must be approved

and consummated promptly to obtain the value provided

under the terms of the Agreement.

N.    The transfer of the Property to the

Purchaser is a legal, valid, and effective transfer of

the Property, and shall vest the Purchaser with all

right, title, and interest of the Seller to the Property

and the Lease free and clear of all liens, claims and

encumbrances (collectively, the "Liens"), except for

those items defined in the Agreement (and which are referred to hereinafter) as the "Permitted Encumbrances".

O.   If the Sale of the Property and Assignment of the Lease by the Seller were not free and clear of any Liens, except for the Permitted Encumbrances, or if the Purchaser would, or in the future could, be liable for any of the Liens, the Purchaser would not have entered into the Agreement and would not consummate the Sale and Assignment contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.   The Seller may sell its interest in the Property and the Lease free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale and Assignment are deemed to have consented to the Sale and Assignment pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale and

Assignment ultimately attributable to the property
against or in which they claim an interest with the same
priority, validity, force, and effect as they attached
to such property immediately before the closing of the
Sale and Assignment.

Q.   Pursuant to sections 365(b)(1)(C),
365(f)(2)(B) and, if applicable, 365(b)(3), the Seller
and the Purchaser have demonstrated adequate assurance
of future performance by the Purchaser under the Leases.

R.   There is no cure obligation due and owing
on the Lease under section 365 of the Bankruptcy Code.

S.   There are no outstanding defaults of the
Debtors and their estates under the Lease.

T.   Upon the assignment to the Purchaser, the
Lease shall be deemed valid and binding, in full force
and effect in accordance with their terms, subject to
the provisions of this Order and, pursuant to section
365(k) of the Bankruptcy Code, the Debtors and their
estates shall be relieved from any further liability
thereunder, including for any breach of the Leases.

U.    Based on the foregoing findings of fact and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled on the merits and denied with prejudice.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to Bankruptcy Code section 363(b), the Seller is authorized to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale and Assignment in accordance with and subject to the terms and conditions of the Agreement.

---

[3]    Statements made by the Court from the bench at the hearing on the Motion shall constitute additional conclusions of law and findings of fact as appropriate.

5.    The Seller is authorized, but not
directed, to execute and deliver, and empowered to
perform under, consummate, and implement, the Agreement,
together with all additional instruments and documents
as may be reasonably necessary or desirable to implement
the Agreement, and to take all further actions as may be
requested by the Purchaser for the purpose of assigning,
transferring, granting, conveying, and conferring to the
Purchaser or reducing to possession the Property and the
Lease as contemplated by the Agreement.

6.    This Sale Order and the Agreement shall
be binding in all respects upon the Seller, all
stakeholders (whether known or unknown) of the Seller,
all affiliates and subsidiaries of the Seller, and any
subsequent trustees appointed in the Seller's chapter 11
case or upon a conversion to chapter 7 under the
Bankruptcy Code.  To the extent that any provision of
this Sale Order is inconsistent with the terms of the
Agreement, this Sale Order shall govern.

7.    The Agreement and any related agreements,
documents, or other instruments may be modified, amended,
or supplemented by the parties thereto, in a writing

10

signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

8.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Successful Bidder free and clear of all Liens except the Permitted Encumbrances, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

9.    If any person or entity which has filed financing statements, mortgages, mechanic's liens, <u>lis pendens</u>, or other documents or agreements evidencing Liens on or against the Property shall not have

delivered to the Seller prior to the Closing of the Sale,

in proper form for filing and executed by the

appropriate parties, termination statements, instruments

of satisfaction, releases of all Liens that the person

or entity has with respect to the Property, or otherwise,

then (a) the Seller is hereby authorized to execute and

file such statements, instruments, releases, and other

documents on behalf of the person or entity with respect

to the Property and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a

certified copy of this Sale Order, which, once filed,

registered, or otherwise recorded, shall constitute

conclusive evidence of the release of all Liens on or

against the Property of any kind or nature whatsoever

except for the Permitted Encumbrances.

　　　　10.　This Sale Order (a) shall be effective as

a determination that, upon the Closing of the Sale, all

Liens of any kind or nature whatsoever existing as to

the Seller or the Property prior to the Closing of the

Sale, except for the Permitted Encumbrances, have been

unconditionally released, discharged, and terminated

(other than any surviving obligations), and that the

conveyances described herein have been effected and
(b) shall be binding upon and shall govern the acts of
all entities including, without limitation, all filing
agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars
of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and
local officials, and all other persons and entities who
may be required by operation of law, the duties of their
office, or contract, to accept, file, register, or
otherwise record or release any documents or instruments,
or who may be required to report or insure any title or
state of title in or to any of the Property.

        11.   All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other
stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)

arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of
violation of environmental laws and regulations prior to
Closing.

**C.    Assumption, Assignment and Sale of the Lease.**

12.   Under section 365 of the Bankruptcy Code,
the Seller is authorized to assume the Lease and to
assign the Lease to the Purchaser, which assignment
shall take place on Closing.

13.   Under Bankruptcy Code section 363, the
Seller is authorized to sell the Lease to the Purchaser.

14.   The Debtors are authorized to execute the
assignment agreement, in substantially the form attached
as Exhibit C to the Agreement (the "Assignment
Agreement").

15.   Upon Closing, subject to the provisions
of this Order, the Purchaser shall succeed to the
entirety of Seller's rights and obligations in the Lease
due, accruing, arising or attributable to the time
period occurring on or after Closing and shall have the
rights of the landlord thereunder.

16.   Upon Closing, neither the Purchaser, the
Debtors, nor the Debtors' estates shall have liability
for cure claims of, from, or related to the Lease for
any defaults or monetary obligations thereunder.

15

17.   Upon the entry of this Sale Order,
(i) all defaults under the Lease through Closing shall
be deemed cured, (ii) no other amounts will be owed by
Debtors or their estates with respect to the Lease,
(iii) no amounts will be owed by the Purchaser with
respect to the Lease for obligations relating or
attributable to the period prior to Closing, (iv) any
and all persons or entities shall be forever barred and
estopped from asserting a claim against the Debtors or
their estates that any additional amounts are due or
defaults exist under the Lease, and (v) any and all
persons or entities shall be forever barred and estopped
from asserting a claim against the Debtors, their
estates, and the Purchaser that any additional amounts
are due or defaults exist under the Lease that arose or
accrued, relate to or are attributable to the period
prior to Closing.

18.   The Purchaser takes the Lease "as is."

19.   Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision to the
contrary in the Lease, or in applicable nonbankruptcy
law, that prohibits, restricts, or conditions the

16

assignment of the Lease, the Seller may assign the Lease to the Purchaser.

20.   Upon Closing, subject to the provisions of this Sale Order, the Purchaser shall assume all obligations under the Lease attributable to, or arising or accruing during, the time period occurring on or after Closing or related to the period subsequent to Closing.

21.   Upon the Assignment authorized herein, and under section 365(k) of the Bankruptcy Code, the Debtors and their estates shall have no further liability under the Lease.

22.   Upon the Assignment to the Purchaser, the Lease shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order.

23.   To the extent that any of the Debtors acts as a guarantor of the Lease (a "Debtor-Guarantor"), the Debtor-Guarantor(s) shall have no obligations with respect to the Lease after the Closing.

24.   Pursuant to Bankruptcy Code section 363(f), the sale and corresponding assumption and

17

assignment of the Lease authorized hereunder shall be free and clear of all Liens, with all such Liens attaching only to the amount paid under the Agreement for the Lease and the related premises on which such Liens had been attached previously, in the same order and priority, and with the same validity and enforceability, as same may have had prior to the sale, assumption and assignment of the Lease, subject to any and all available defenses.

      25.  Any mechanic's lien filed against the Seller with respect to the premises associated with the Leases is hereby released, discharged, and terminated, and the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order and each and every federal, state, and local governmental agency or department is hereby directed to accept a certified copy of this Sale Order as conclusive evidence of the release, discharge, and termination of any mechanic's lien filed against the Seller with respect to the premises associated with the Leases and shall remove such mechanic's lien from record.  Any interest released, discharged and/or terminated under

this paragraph shall attach solely to the amount paid
under the Agreement for the Lease and the related
premises on which such interest had previously attached,
subject to any and all available defenses.

26.   Except for the Seller with respect to
their rights under the Agreement and this Sale Order,
all parties to the Lease, and to any other agreements
relating to the Lease, other than the Agreement, are
forever barred from raising or asserting against the
Purchaser any default or breach under, or any claim or
pecuniary loss arising under or related to the Lease or
such other agreements, arising, accruing or incurred
prior to Closing.

27.   Except for the Seller with respect to its
rights under the Agreement and this Order, all parties
to the Lease, and to any other agreements relating to
the Lease, other than the Agreement, are forever barred
from raising or asserting against the Debtors or their
estates any default or breach under, or any claim or
pecuniary loss, arising under or related to, the Lease
or such other agreements.

28.    Any obligations arising under the Lease
which arise, accrue, are incurred or relate to periods
on or subsequent to Closing, including but not limited
to any tax, utility, common area charges or insurance
payments, shall be the obligation of the Purchaser, and
no party (including the Purchaser) shall have a claim
against the Debtors or their estates for such
obligations.

29.    The Tenant and any governmental agency
shall accept and honor the assignment of the Leases to
the Purchaser in accordance with the Agreement and this
Sale Order.

30.    The Tenant shall cooperate and
expeditiously execute and deliver, upon the reasonable
requests of the Purchaser, and shall not charge the
Purchaser for, any instruments, applications, consents,
or other documents which may be required by any public
or quasi-public authority or other party or entity, for
the purpose of obtaining any permits, approvals or other
necessary documents required for the alteration,
installation of signage, opening and operating of the
premises associated with the Lease.

**D.    Additional Provisions**

31.    The consideration provided by the Purchaser for the Property and the Lease under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

32.    The consideration provided by the Purchaser for the Property and the Lease under the Agreement is fair and reasonable and the Sale and Assignment may not be avoided under section 363(n) of the Bankruptcy Code.

33.    Upon the Closing, this Sale Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all the Property or a bill of sale transferring good and marketable title in to the Purchaser pursuant to the terms of the Agreement.

34.    The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser

21

at arm's-length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the sale of the Property and assignment of
the Lease shall not affect the validity of the Sale and
Assignment to the Purchaser, unless such authorization
is duly stayed pending such appeal.  The Purchaser is a
purchaser in good faith, within the meaning of section
363(m) of the Bankruptcy Code, of the Property and the
Lease, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

35.  The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

36.  If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of Seller and Seller is

not in default of its obligations under such Agreement,
then Seller's counsel shall file with the Court and
serve upon the Purchaser, the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the
Property and assignment of the Lease with the Alternate
Bidder on ten (10) days' advance written notice to the
Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale
agreement with the Seller, without the necessity of
further order of this Court.

37. All deposits submitted to the Seller for
the Property and the Lease shall be returned to the
bidder that submitted them no later than (i) two
business days after the closing of the sale with the
Purchaser (or the Alternate Bidder, as the case may be)

23

except in the case of a bidder who closed on the sale of
the Property or who was required to close in accordance
with the terms of this Sale Order but failed to do so in
breach of its contractual obligations through no fault
of the Seller.

38.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

39.   This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Order, the Agreement, all
amendments thereto, any waivers and consents thereunder,
and of each of the agreements executed in connection
therewith in all respects, including, but not limited to,
retaining jurisdiction to (a) compel delivery of the
Property and the Lease to the Purchaser, (b) compel
delivery of the purchase price or performance of other
obligations owed to the Seller pursuant to the Agreement,
(c) resolve any disputes arising under or related to the
Agreement, the Alternate Bid, and any deposit delivered
to Seller by a bidder for the Property and the Lease,
(d) interpret, implement, and enforce the provisions of

this Sale Order, and (e) protect the Purchaser against

any Lien against the Seller or the Property or the

Leases of any kind or nature whatsoever, except for

Permitted Encumbrances, which Liens, valid and timely

perfected, shall attach to the proceeds of the Sale.

    40.   This Order shall be effective and

enforceable immediately upon entry and shall not be

stayed pursuant to Rules 6004(h) and 6006.


Dated:  Richmond, Virginia
        _____, 2010


      _____
      UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of February _16_, 2010 (the "Effective Date"), is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and JANET F. NICKLIES, an individual ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

## I.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to the property located at 5120 Dixie Highway, Louisville, Kentucky, comprising approximately 4.02 acres, and being more particularly described on Exhibit A attached hereto and made a part hereof, together with (i) all the rights and appurtenances pertaining to such land, (ii) all buildings (including a building containing approximately 45,027 square feet), structures, and other improvements on said land, (iii) electrical, mechanical, air conditioning and other fixtures attached thereto, and (iv) Seller's interest as landlord under that certain lease between Seller and EEG, Inc., successor by merger to The Hair Design School, Inc., dated June 26, 2003 (the "School Lease") (herein collectively called the "Property").

1.2    <u>Exchange</u>.  Purchaser may consummate the purchase of the Property as part of a so-called like kind exchange (an "<u>Exchange</u>") pursuant to §1031 of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), provided that: (a) the Closing shall not be delayed or affected by reason of the Exchange nor shall the consummation or accomplishment of an Exchange be a condition precedent or condition subsequent to Purchaser's obligations under this Agreement; (b) Purchaser shall effect its Exchange through an assignment of this Agreement, or its rights under this Agreement, to a qualified intermediary; (c) Seller shall not be required to take an assignment of the purchase agreement for the relinquished or replacement property or be required to acquire or hold title to any real property for purposes of consummating an Exchange desired by Purchaser; and (d) Purchaser shall pay any additional costs that would not otherwise have been incurred by Seller had Purchaser not consummated the transaction through an Exchange.  Seller shall not by this Agreement or acquiescence to an Exchange have its rights under this Agreement affected or diminished in any manner or be responsible for compliance with or be deemed to have warranted to Purchaser that its Exchange in fact complies with §1031 of the Code.

2.    PURCHASE PRICE

2.1    <u>Purchase Price</u>.    The purchase price (the "<u>Purchase Price</u>") for the Property shall be SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00).  The Purchase Price, less the Deposit, shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by the Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.    DEPOSIT

3.1    <u>Deposit</u>.    Concurrently with execution of this Agreement, Purchaser shall deliver to Chicago Title Insurance Company (the "<u>Escrow Agent</u>"), 24300 Town Center Drive, Suite #320, Valencia, CA 91355, Attention: Maggie Watson, Phone: (866) 612-8165, Fax: (661) 753-5730, Email: <u>Maggie.Watson@ctt.com</u>, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to ONE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($130,000.00) (which amount, and all interest accrued thereon, is herein called the "<u>Deposit</u>") to be held by the Escrow Agent (the "<u>Escrow Account</u>").  The Deposit shall be held in an interest-bearing savings account in a federally insured financial institution in the Los Angeles, California metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

3.2   Application of Deposit.   If the sale of the Property is consummated under this Agreement, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 7.1, Section 7.2, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").   If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, the Deposit and all accrued interest shall be retained by Seller and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given.   The obligations to deliver the Reports shall survive the termination of this Agreement.  In no event shall any Deposit be returned to Purchaser hereunder until all Reports have been delivered to Seller.  All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser and Purchaser shall promptly execute all forms reasonably requested by the Escrow Agent regarding such interest.

4.   ITEMS DELIVERED TO PURCHASER

4.1   Items Delivered.   Seller has delivered or will deliver to Purchaser, within ten (10) days following opening of escrow with the Escrow Agent, certain information with respect to the Property, which may include, without limitation, title reports, copies of the School Lease, environmental and engineering reports and real property surveys, but only to the extent Seller has reasonable access to and possession of such information.

4.2   Title Examination.   Seller has delivered or will deliver to Purchaser, within ten (10) days following opening of escrow with the Escrow Agent, a Preliminary Title Report ("PTR") issued by Chicago Title Insurance Company ("Title Company") covering the Property together with copies of all documents of record referenced therein.

4.3   Inspection of Books and Records and Property.   On and subject to the conditions set out in this Section 4.3 and the terms of the School Lease, Purchaser shall have reasonable access to the Property for the purpose of conducting surveys, architectural, engineering, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. If any inspection or test disturbs the Property, Purchaser will (at its sole

expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing. All other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser acknowledges that it shall not be unreasonable for Seller to require Purchaser to be accompanied by representatives of Seller and to coordinate its inspections with such representatives. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

     4.4    Reports.    All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property, whether before or after the date of this Agreement (collectively, the "Reports"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, real estate broker, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of this Agreement, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

     4.5    Purchaser's Representations and Warranties.    Purchaser represents and warrants to Seller that (a) Purchaser is an individual who resides in Louisville, Kentucky, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and

CCS: Louisville, KY Sale [2/15/2010]              4

sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser is a party or by which Purchaser or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The representations and warranties contained in this Section 4.5 shall expire and be extinguished at the Closing.

4.6     Seller's Representations and Warranties.     Seller   represents   and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined hereinafter) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes).   The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

4.7     Further Assurances.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.     DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1     Disclaimer.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE GENERAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE

WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY.  ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY.  PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION.  SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT,

REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY. PROTECT, DEFEND. SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

     5.2   <u>Hazardous Materials</u>. "<u>Hazardous Materials</u>" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("<u>CERCLA</u>"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("<u>RCRA</u>"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements (as hereinafter defined) or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property

CCS: Louisville, KY Sale [2/15/2010]                                                    7

or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

6.1    Closing.    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at the offices of Escrow Agent not later than (i) April 1, 2010, or (ii) ten (10) days following entry by the Bankruptcy Court of the Sale Order, whichever is the first to occur (the date on which the Closing occurs is referred to as the "Closing Date").  In the event the Closing has not occurred by 6:00 pm, local time in Richmond, Virginia, on April 1, 2010, for any reason other than a default by Purchaser hereunder, this Agreement, at the option of Purchaser to be exercised no later than 6:00 pm, local time in Richmond, Virginia, on April 1, 2010, will be terminated and of no further force and effect, and Purchaser will receive a refund of the Deposit.  Purchaser shall exercise its option to terminate this Agreement pursuant to this Section 6.1 by delivering written notice of termination to Seller.

6.2    <u>Possession.</u>    Possession of the Property shall be delivered to Purchaser at the Closing, "AS IS, WHERE IS," subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, (iv) the School Lease, and (v) any and all matters that would be shown by a physical inspection of the Property (collectively, the "<u>Permitted Encumbrances</u>").

6.3    <u>Proration.</u>    All utilities with respect to the Property for the month in which the Closing occurs, all rent under the School Lease, and real estate taxes and other assessments with respect to the Property for the year in which the Closing occurs, shall be prorated as of the Closing Date as follows:

(a)    In addition to prorating monthly rent as of the Closing Date, Purchaser shall receive a credit equal to the amount of the security deposit (if any) held by Seller under the School Lease.

(b)    All real estate taxes and assessments, both general and special, water charges and sewer rents, whether or not then due or payable, and all other normally proratable items shall be prorated to the Closing Date, based upon the latest assessments or actual invoices available.  Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.  Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.   All payments received by Purchaser from the tenant under the School Lease following the Closing shall first be applied to obligations incurred under the School Lease following the Closing; provided, however, that while Purchaser is under no obligation to collect monies owed Seller by the tenant under the School Lease attributable to obligations incurred prior to the Closing, Purchaser agrees to deliver to Seller, within thirty (30) days after receipt thereof, all monies collected from the tenant under the School Lease after the Closing Date but attributable to periods prior to the Closing Date, and Purchaser agrees to cooperate with Seller in Seller's efforts to collect from such tenant any such pre-closing monetary obligations owed Seller by such tenant.

(c)    Purchaser shall cause all utility meters to be read as of the Closing Date, shall cause the transfer of all utility services for the Property to Purchaser's name as of the Closing Date, and where necessary, shall post deposits with the utility companies; provided, however, Seller shall cooperate reasonably with Purchaser in connection with

switching utility services over to Purchaser's name. Seller shall be entitled to a credit of whatever deposits Seller may have with any utility companies if Purchaser receives the benefit of such deposits. If the Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month. Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    <u>Closing Costs</u>.        Purchaser shall pay, on the Closing Date, any and all closing expenses and costs, including, without limitation, title insurance premiums, survey costs, environmental and engineering costs, recordation fees, fees associated with the 1031 tax free exchange and any and all other costs with respect to Purchaser's evaluation of the Property. Seller shall pay, on the Closing Date, all transfer taxes. Except as otherwise provided herein, each party shall pay its own attorneys' fees. The parties shall share equally in any escrow fee; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in Louisville, Kentucky.

6.5    <u>Seller's Obligations at the Closing</u>.    At the Closing, Seller shall deliver to Escrow Agent the following:

(a)    <u>Deed</u>. A general warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances.

(b)    <u>Foreign Person</u>.        An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

(c)    <u>Assignment and Assumption of Lease</u>. An executed counterpart of an assignment and assumption of lease agreement with respect to the School Lease, in the form of <u>Exhibit C</u> attached hereto.

6.6    <u>Purchaser's Obligations at the Closing</u>.        At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)    <u>Purchase Price and Closing Costs</u>.    The Purchase Price (less the amount of the Deposit, which shall be released separately by the Escrow Agent to Seller) and any Closing costs which are Purchaser's responsibility hereunder, plus or minus prorations as provided herein, by wire transfer of immediately available funds.

(b)    <u>Evidence of Authority</u>.        Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)    <u>Taxpayer I.D. Certificate</u>.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

(d)    <u>Assignment and Assumption of Lease</u>. An executed counterpart of an assignment and assumption of lease agreement with respect to the School Lease, in the form of <u>Exhibit C</u> attached hereto.

6.7    <u>Escrow Agent's Duties Upon Closing</u>.    When the Escrow Agent has received all documents and funds required for the Closing and has received written notification from Purchaser and Seller that all conditions to the Closing have been satisfied or waived, and when the Title Company is irrevocably committed to issue the Title Policy, then the Escrow Agent shall:

(a)    Record the Deed and any other documents which the parties may mutually direct to be recorded in the Official Records of the County of Jefferson, Kentucky, and shall obtain conformed copies thereof for prompt distribution to Purchaser and Seller;

(b)    Cause the Title Company to issue to Purchaser the Title Policy;

(c)    File Seller's certification of non-foreign status with the appropriate federal agency as well as comply with any other federal or state reporting requirements;

(d)    Deliver to Purchaser (i) a conformed copy of the Deed and (ii) the appropriate escrow closing statement; and

(e)    Deliver to Seller (i) the Purchase Price, less Seller's share of the Closing costs, if any, and (ii) the appropriate escrow closing statement.

6.8    <u>Commission</u>. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty ("<u>Broker</u>") and CBRE|Louisville ("CBRE"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement and shall pay CBRE a commission equal to three percent (3%) of the Purchase Price.    Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS; EXISTING INSURANCE PROCEEDS

7.1    <u>Condemnation</u>.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

7.2    <u>Casualty</u>.    Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated. If the Property, or any part thereof, suffers any damage in excess of Seventy Thousand and No/100 Dollars ($70,000.00) after the date of this Agreement and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event all of Seller's right, title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any expenses and costs incurred by Seller to repair or restore the Property or to be paid on account of the loss of rents or other income from the Property for the period prior to and including the Closing Date, all of which shall be payable to Seller), to the extent the amount of such insurance does not exceed the Purchase Price, plus Seller's deductible under its insurance policy, shall be assigned to Purchaser at the Closing. If the Property, or any part thereof, suffers

any damage less than Seventy Thousand and No/100 Dollars ($70,000.00) after the date of this Agreement and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage, plus Seller's deductible under its insurance policy, and there shall be no reduction in the Purchase Price. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

8.    DEFAULT

8.1    Breach by Seller.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than the return of its Deposit and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

8.2    Breach by Purchaser. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole remedy and relief hereunder and shall not be entitled to the remedy of specific performance. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from

CCS: Louisville, KY Sale [2/15/2010]                                          13

Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, including, without limitation, Seller's assumption and assignment of the School Lease, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.   Within ten (10) days following the Effective Date, Seller will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"); provided, however, that prior to filing the Sale Motion, and as a condition precedent to Seller's obligation to file the Sale Motion, Purchaser shall be obligated to provide Seller and its counsel with adequate assurance of Purchaser's ability to satisfy the obligations of the Purchaser under this Agreement, including, without limitations, the obligations of the landlord under the School Lease.   The Sale Motion shall be in form and substance consistent with this Agreement, and Seller shall be responsible for serving and providing notice of the Sale Motion.

  9.3    Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.   Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

  9.4    Termination.   Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($800,000.00); (b) each initial overbid must be accompanied by a deposit in an amount equal to the total aggregate Deposit; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (e.g., no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction.   The last day for submission of higher or better offers will be fixed by the Seller or established by order of the Bankruptcy Court.   Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale

Order on or prior to April 1, 2010 (the "Outside Date"). If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser.

10.    MISCELLANEOUS

10.1    Notices.    All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

If to Purchaser:    Janet F. Nicklies
6060 Dutchmans Lane, Suite 110
Louisville, KY 40205
Attention:  David W. Nicklies, President

with a copy to:    Janet F. Nicklies
6060 Dutchmans Lane, Suite 110
Louisville, KY 40205
Attention:  Donna M. Hindman, Paralegal

If to Seller:    CIRCUIT CITY STORES, INC.
P.O. Box 5695
Glen Allen, Virginia 23058
Attention: General Counsel

and a copy to:    KENNERLY, LAMISHAW & ROSSI, LLP
707 Wilshire Blvd., Suite 1400
Los Angeles, CA 90017
Attention:  Matthew I. Lamishaw, Esq.

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2   Entire Agreement.   This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3   Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4   Heading.    The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence.    Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law.    This Agreement shall be governed by the laws of the Commonwealth of Virginia and the laws of the United States pertaining to transactions in such State.

10.7   Successors and Assigns: Assignment.     This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller.  No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.  This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    <u>Invalid Provision</u>.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9    <u>Attorneys' Fees</u>.    In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10    <u>Multiple Counterparts</u>.    This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11    <u>No Recordation</u>.    Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12    <u>Merger Provision</u>.    Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13    <u>Brokers</u>.    Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   <u>Consent to Jurisdiction of Bankruptcy Court.</u>    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.


<u>SELLER</u>

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Michelle Mosier_____
Name: _Michelle Mosier_____
Title: _V.P. and Controller_____


<u>PURCHASER</u>

_____
Name: Janet F. Nicklies

The escrow terms and conditions of this Agreement are agreed to and accepted this 16th day of February , 2010.

ESCROW AGENT:

CHICAGO TITLE INSURANCE COMPANY

By: _____

Name: _____

Title: _____

Mailing Address:

24300 Town Center Drive, Suite #320
Valencia, CA 91355
Attention: Maggie Watson, National Projects Group

CCS: Louisville, KY Sale [2/15/2010]

19

<u>EXHIBIT A</u>

LEGAL DESCRIPTION OF PROPERTY

Property situated in the County of Jefferson, State of Kentucky, more particularly described as follows:

BEGINNING at an iron pipe in the northwest right of way line of Dixie Highway, said point being South 22 degrees 05 minutes 28 seconds West, 55.06 feet from a concrete monument in said right of way line at Dixie Highway Station 110+00; thence North 60 degrees 57 minutes 39 seconds West, 500.49 feet to an iron pipe; thence North 18 degrees 10 minutes 51 seconds East, 406.44 feet to an iron pipe; thence South 67 degrees 45 minutes 40 seconds East, 333.08 feet to an iron pipe; thence South 22 degrees 14 minutes 05 seconds West, 244.88 feet to an iron pipe; thence South 67 degrees 46 minutes 13 seconds East, 192.07 feet to an iron pipe in the northwest right of way line of Dixie Highway; thence South 22 degrees 05 minutes 28 seconds West, 219.83 feet to the point of the beginning.

## EXHIBIT C

## ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT (this "Assignment") is made as of _____, 2010 (the "Effective Date") by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Assignor") and JANET F. NICKLIES, an individual ("Assignee").

## RECITALS

A.    Assignor, as lessor, and EEG, Inc. (the "Tenant"), successor by merger to The Hair Design School, Inc., have entered into that certain lease dated June 26, 2003 (the "Lease") covering certain premises located upon that certain property commonly known as 5120 Dixie Highway, Louisville, Kentucky (the "Real Property").

B.    Concurrently with this Assignment, pursuant to the terms of that certain Purchase and Sale Agreement between Assignor, as Seller, and Assignee, as Purchaser, dated as of _____, 2010 (the "Purchase Agreement"), Assignor has conveyed the Real Property to Assignee.

C.    In connection with said conveyance, Assignor now desires to assign and transfer to Assignee all of Assignor's interest as lessor in the Lease, subject to the rental, terms, covenants, obligations, easements and restrictions set forth therein.

NOW THEREFORE, in consideration of the mutual covenants and conditions hereinbelow set forth, it is agreed:

1.    Assignment.  Assignor hereby assigns and transfers to Assignee, effective as of the Effective Date, all of Assignor's right, title and interest as lessor (excepting therefrom the Reserved Rights) accruing after the Effective Date, in and to the Lease, and any security deposit held by Assignor thereunder (the "Security Deposit"), subject to the rentals, terms, covenants, obligations, easements and restrictions set forth in the Leases. As used herein, the term "Reserved Rights" shall mean all relevant rights and remedies of the Lease (collectively, the "Enforcement Rights") relating to the landlord's right to collect past due monetary obligations of the tenant including the landlord's right to recover the payment of landlord's attorneys' fees as the same relate to the collection of monetary obligations of the Tenant(s) arising prior to the Effective Date. Nothing contained in this Section 1 shall impair Assignee's assumption of the Enforcement Rights

as the same relate to the collection of monetary obligations of the Tenant(s) under the Lease(s) arising after the Effective Date.

2.     <u>Assumption</u>. Assignee hereby accepts, effective as of the Effective Date, the assignment of the Lease (and the Security Deposit, if applicable) and shall be entitled to all rights and benefits accruing to the lessor thereunder and hereby assumes all obligations thereunder and agrees to be bound by the terms of the Lease, from and after the Effective Date.

3.     <u>Tenant Notice</u>. Assignor agrees to deliver to the Tenant notice to inform the Tenant that Assignor has transferred its interest in the Lease (and the Security Deposit, if applicable) to Assignee as of the Effective Date.

4.     <u>Miscellaneous</u>

(a)     <u>Counterparts</u>. This Assignment may be executed in counterparts which taken together shall constitute one and the same instrument.

(b)     <u>Assignment</u>. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective heirs, executors, administrators, successors and assigns.

(c)     <u>Headings</u>. Headings used in this Assignment are for reference purposes only, and are not to be considered in interpreting this Assignment.

(d)     <u>Governing Law</u>. This Assignment shall be governed and construed in accordance with the laws of the State of Kentucky.

(e)     <u>Entire Agreement</u>. This Assignment and the other agreements entered into in connection with this Assignment embody the entire agreement and understanding between the parties hereto and shall, except with respect to the Purchase Agreement, supersede all prior agreements and understanding between the parties relating to relating to the subject matter hereof.

(f)     <u>Attorneys' Fees</u>. If any action or proceeding is commenced by either party to enforce its rights under this Assignment, the prevailing party in such action or proceeding shall be entitled to recover all reasonable costs and expenses incurred in such action or proceeding, including reasonable attorneys' fees and costs, in addition to any other relief awarded by the court.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the date first above written.

<u>ASSIGNOR</u>

CIRCUIT CITY STORES, INC.,
a Virginia corporation


By: _____
Name: _____
Title: _____


<u>ASSIGNEE</u>



_____
JANET F. NICKLIES, an individual