Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       : Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   : Case No. 08-35653
et al.,                      :
                             : Tax ID No. (54-0493875)
            Debtors.         :
                             : Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING WACHOVIA BANK, N.A., AS CUSTODIAN OF CIRCUIT CITY STORES, INC.'S SUPPLEMENTAL 401(k) PLAN, TO DELIVER ASSETS OF THE PLAN TO THE DEBTORS' ESTATES**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1] hereby

---

[1]     The Debtors and the last four digits of their respective taxpayer
        identification numbers are as follows: Circuit City Stores, Inc.
                                                              *(cont'd)*

move this Court (the "Motion") for entry of an order
directing the Custodian (as defined herein) to deliver
assets of the Circuit City Stores, Inc.'s Supplemental
401(k) Plan (the "Supplemental 401(k) Plan"), a copy of
which is annexed as Exhibit A, to the Debtors' estates.  In
support of the Motion, the Debtors respectfully represent
as follows:

### JURISDICTION AND VENUE

1.   The Court has jurisdiction to consider the
Motion under 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding under 28 U.S.C. § 157(b).  Venue of these cases
and the Motion in this district is proper under 28 U.S.C.
§§ 1408 and 1409.

2.   The statutory predicates for the relief
requested here are Bankruptcy Code sections 541 and 543.

---

*(cont'd from previous page)*
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2

## BACKGROUND

**A.  General Case Background.**

      3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

      4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

      5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

      6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

3

7.    On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").  The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation has been adjourned from time to time and is currently scheduled for March 8, 2010.

8.    Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

**B.   The Supplemental 401(k) Plan.**

9.    Effective March 1, 2005, Circuit City Stores, Inc. (the "Company") established the Supplemental 401(k) Plan to provide "a select group of management or highly compensated employees" of the Company with supplemental benefits through salary deferrals and matching employer contributions.  See Supplemental 401(k) Plan, Introduction.

10.   As of January 20, 2010, there were twenty-eight participants ("Participants") and the Supplemental 401(k) Plan had assets of $1,114,527.63 in various

4

investment funds.  The Supplemental 401(k) Plan is administered by an Administrative Committee appointed by the Circuit City Stores, Inc. board of directors the "Plan Administrator").

11.     Wachovia Bank, N.A. serves as custodian ("Wachovia" or the "Custodian") of the Supplemental 401(k) Plan.

### RELIEF REQUESTED

12.     By this Motion, the Debtors seek entry of an order directing the Custodian to deliver the assets of the Supplemental 401(k) Plan to the Debtors for the benefit of the Debtors' bankruptcy estates.

### BASIS FOR RELIEF

13.     Prior to the petition date, the Company maintained the Supplemental 401(k) Plan to provide pre-tax salary deferrals to the Participants under the Employee Retirement Income Security Act of 1974 ("ERISA").

14.     Pursuant to the Supplemental 401(k) Plan, the Participants were deemed to be "general unsecured creditors of the Company with respect to the benefits due [under the Supplemental 401(k) Plan]."  Supplemental 401(k) Plan, § 7.01(a).  Moreover, the Supplemental 401(k) Plan

was considered unfunded.  See Supplemental 401(k) Plan, §

7.01(a) ("It is the intention of the Company that the Plan

be considered unfunded for tax purposes.").  Consequently,

the Participants had no ownership interest in contributions

to the Supplemental 401(k) Plan.

       15.   To hold contributions made pursuant to the

Supplemental 401(k) Plan, the Company was permitted to and

did establish a "grantor trust to hold assets . . . as

reserves against the Company's unfunded, unsecured

obligations under the [Supplemental 401(k)] Plan."  See

Supplemental 401(k) Plan, § 7.01(c).  Such reserves,

however, were "at all times [to] be subject to the claims

of the Company's creditors."  Id.

## APPLICABLE AUTHORITY

## I.    THE SUPPLEMENTAL 401(K) PLAN IS A "TOP HAT" PLAN UNDER ERISA.

       16.   Under ERISA, a "top hat" deferred

compensation plan is "a plan which is unfunded and is

maintained by an employer primarily for the purpose of

providing deferred compensation for a select group of

management or highly compensated employees."  29 U.S.C. §

1051(2); see Guiragoss v. Khoury, 444 F. Supp. 2d 649, 658-

59 (E.D. Va. 2006) ("To be designated a top hat plan, ERISA

requires that the plan be (1) 'unfunded' and (2)
'maintained by an employer primarily for the purpose of
providing deferred compensation for a select group of
management or highly compensated employees.'").

17.  To determine whether a plan is unfunded,
courts evaluate whether the company's creditors may still
reach the assets of the plan when the company becomes
insolvent or bankrupt.  <u>Violette v. Ajilon Fin.</u>, 2005 U.S.
Dist. LEXIS 22859, at *13 (D.N.J. Sept. 29, 2005)("The
'essential feature' of a funded deferred compensation plan
is that its assets are ... not 'available to general
creditors if the employer becomes insolvent.'").  If the
assets are available to satisfy creditor claims, the plan
is considered "unfunded".  <u>Accardi</u>, 448 F.3d at 665("An
employer may set aside deferred compensation amounts in a
segregated fund or trust without jeopardizing a plan's
'unfunded' status if the fund or trust remains 'subject to
the claims of the employer's creditors in the event of
insolvency or bankruptcy.'"); <u>see also</u> <u>Goodman v.</u>
<u>Resolution Trust Corp.</u>, 7 F.3d, 1123, 1130 (4th Cir. 1993)
("Federal tax law conditions the beneficial tax treatment
of a rabbi trust [a type of top hat plan] on the
requirement that the trust fund remains subject to the

7

claims of the employer's creditors as if the assets were the general assets of the employer."). In contrast, if the assets are segregated from the employer's general assets and thus not available to satisfy creditor claims, the plan is considered "funded". See Miller v. Heller, 915 F. Supp. 651, 657 (S.D.N.Y. 1996) ("the essential feature of a funded plan is that its assets are segregated from the general assets of the employer and are not available to general creditors if the employer becomes insolvent."); see also Violette, 2005 U.S. Dist. LEXIS 22859, at *13.

18. Here, the Supplemental 401(k) Plan treated the Participants as general unsecured creditors and did not give them an ownership interest in the Plan's assets. See Supplemental 401(k) Plan, § 7.01(a) ("All Participants and Beneficiaries are general unsecured creditors of the company with respect to the benefits...."). Moreover, the Supplemental 401(k) Plan was intended to be an "unfunded" Plan. Id. ("It is the intention of the Company that the Plan be considered unfunded ...."). Finally, the Supplemental 401(k) Plan provided that the assets "at all times be subject to the claims of the Company's creditors." See Supplemental 401(k) Plan, § 7.01(c).

8

19.  Accordingly, the Supplemental 401(k) Plan is a "top hat" plan under ERISA.

## II.  THE SUPPLEMENTAL 401(K) PLAN ASSETS ARE PROPERTY OF THE DEBTORS' ESTATES.

20.  Section 541(a) provides, in pertinent part, as follows:  the "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of this case . . . ."  11 U.S.C. § 541(a).  As the Supreme Court has recognized, "§ 541(a)(1)'s scope is broad . . . [and] is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code."  United States v. Whiting Pools, 462 U.S. 198, 205 (1983); Shumate v. Patterson, 943 F.2d 362, 363 (4th Cir. 1991) ("Section 541 of the Bankruptcy Code provides that 'all legal or equitable interests of the debtor in property as of the commencement of the case' become part of the bankruptcy estate . . . this provision was intended to be broad in scope . . . ."); Frontier Pepper's Ferry, LLC v. LandAmerica 1031 Exchange Serv. (In re LandAmerica Fin. Group, Inc.), 2009 Bankr. LEXIS 4133, at *19 (Bankr. E.D. Va. May 7, 2009)("Property included within that estate is

9

defined very broadly to include every interest that a
debtor has in property as of the commencement of the
bankruptcy case, wherever located and by whomever held.").

21.   Section 541(c)(2), however, excludes certain
property that contains "[a] restriction on the transfer of
a beneficial interest of the debtor in a trust that is
enforceable under applicable non-bankruptcy."   See 11 U.S.C.
§ 541(c)(2).

22.   Here, because the Supplemental 401(k) Plan
is a "top hat" deferred compensation plan under ERISA, the
assets of the Plan are property of the Debtors' estate.
See IT Group, Inc. v. Rochelle Bookspan, 305 B.R. 402, 406-
07 (Bankr. D. Del. 2004)("If a plan fits the 'top hat'
exclusion, ERISA does not impose a trust on the plan's
funds.  Consequently, section 541(c)(2) would not exclude
the property in a 'top hat' plan from a debtor employer's
bankruptcy estate."), aff'd Accardi v. It Litig. Trust, 448
F.3d 661, 665 (3d Cir. 2006).

**III. WACHOVIA, AS CUSTODIAN, MUST DELIVER THE SUPPLEMENTAL
401(K) PLAN ASSETS TO THE DEBTORS' ESTATES.**

23.   Under section 543(b)(1), "A custodian shall
deliver to the trustee any property of the debtor held by
or transferred to such custodian, . . . that is in such

10

custodian's possession, custody or control . . . ."  11

U.S.C. § 543(b)(1).  A custodian includes an "agent under

applicable law, or under a contract, that is appointed or

authorized to take charge of a property of the debtor . . .

for the purpose of general administration of such property

for the benefit of the debtor's creditors."  11 U.S.C. §

101(11)(C).

     24.  Here, Wachovia is a custodian because the

Plan Administrator appointed Wachovia as the entity

responsible for holding the assets of the Supplemental

401(k) Plan.  <u>See</u> Supplemental 401(k) Plan, § 8.01

(providing that the Plan Administrator "shall be

responsible for the operation and administration of the

Plan . . .").

     25.  As the custodian of the Supplemental 401(k)

Plan, Wachovia must "deliver to the [Debtors] and to

account for property that has come into his possession,

custody, or control as a custodian."  <u>In re 400 Madison Ave.</u>

<u>Ltd. Pshp.</u>, 213 B.R. 888, 895 (Bankr. S.D.N.Y. 1997); <u>see</u> 5

Collier on Bankruptcy, ¶ 543.03 (15th ed. rev.)(a custodian

"must deliver and account for all property in his or her

possession, custody or control, regardless of what the

trustee is entitled to do with it.").

26.   Accordingly, courts in this District have previously ordered custodians of top hat deferred compensation plans to deliver their assets to a debtor's estate.  See In re S & K Famous Brands, Inc., Ch. 11 Case No. 09-30805 (KRH), Docket No. 130 (Bankr. E.D. Va. Feb. 18, 2009);[2] In re Heilig-Meyers Co., Ch. 11 Case No. 00-33453 (DOT), Docket No. 2820 (Bankr. E.D. Va. Feb. 21, 2002).

27.   For the foregoing reasons, Wachovia should be directed to deliver all of the Supplemental 401(k) Plan's assets to the Debtors estates.

**NOTICE**

28.   Notice of this Motion has been provided to those parties entitled to notice under this Court's Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures

---

[2]   The S & K Famous Brands order characterized the deferred compensation plan as a "rabbi trust."  A rabbi trust enables the employer to place the deferred compensation into a fund or trust while still keeping the unfunded status under ERISA by provisioning for the employer's creditors to reach the fund if the employer goes bankrupt or insolvent.  See Accardi, 844 F.3d at 665; Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 111 (Bankr. D. Del. 2008).  The Supplemental 401(k) Plan either keeps the deferred compensation with the Company, i.e. unfunded, or in a grantor trust subject to the Company's creditors, i.e. a rabbi trust.  See Supplemental 401(k) Plan, § 7.01(c).

(Docket No. 6208).  The Debtors submit that, under the circumstances, no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

29.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

30.  No previous motion for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that

the Court enter an Order, substantially in the form annexed

hereto, granting the relief requested in the Motion and

such other and further relief as may be just and proper.

Dated: Richmond, Virginia       SKADDEN, ARPS, SLATE, MEAGHER &
      March 4, 2010               FLOM, LLP
                                      Gregg M. Galardi, Esq.
                                      Ian S. Fredericks, Esq.
                                      P.O. Box 636
                                      Wilmington, Delaware 19899-0636
                                      (302) 651-3000

                                            - and -

                                      SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM, LLP
                                      Chris L. Dickerson, Esq.
                                      155 North Wacker Drive
                                      Chicago, Illinois 60606
                                      (312) 407-0700

                                            - and -

                                      MCGUIREWOODS LLP

                                      /s/ Douglas M. Foley   ____
                                      Dion W. Hayes (VSB No. 34304)
                                      Douglas M. Foley (VSB No. 34364)
                                      One James Center
                                      901 E. Cary Street
                                      Richmond, Virginia 23219
                                      (804) 775-1000

                                      Counsel for Debtors and Debtors
                                      in Possession

**Exhibit A**

**(Circuit City Stores, Inc. Supplemental 401(k) Plan)**

CIRCUIT CITY STORES, INC.

SUPPLEMENTAL 401(k) PLAN

Effective  March 1, 2005

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

ARTICLE I DEFINITIONS ......................................................................................................2

1.01    Account ................................................................................................................2
1.02    Affiliate ...............................................................................................................2
1.03    Beneficiary ..........................................................................................................2
1.04    Board of Directors...............................................................................................2
1.05    Change in Control ...............................................................................................2
1.06    Code ....................................................................................................................4
1.07    Committee............................................................................................................4
1.08    Company ..............................................................................................................4
1.09    Compensation ......................................................................................................4
1.10    Disabled ..............................................................................................................4
1.11    Employee .............................................................................................................4
1.12    ERISA ..................................................................................................................4
1.13    401(k) Plan ..........................................................................................................5
1.14    Investment Fund ..................................................................................................5
1.15    Matching Contribution ........................................................................................5
1.16    Participant ...........................................................................................................5
1.17    Plan .....................................................................................................................5
1.18    Plan Year .............................................................................................................5
1.19    Salary Deferral Contribution ..............................................................................5
1.20    Salary Deferral Election .....................................................................................5
1.21    Unforeseen Emergency .......................................................................................6
1.22    Valuation Date .....................................................................................................6

ARTICLE II ELIGIBILITY AND PARTICIPATION ..............................................................7

2.01    Eligibility Requirements .....................................................................................7
2.02    Participation in the Plan ......................................................................................7

ARTICLE III DEFERRAL ELECTIONS..................................................................................8

3.01    Election of Deferrals ...........................................................................................8
3.02    Election, Revocation and Modification of Deferrals ..........................................8

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE IV ACCOUNTS

4.01  Establishment of Accounts ...................................................................................... 9
4.02  Crediting of Salary Deferral Contributions ................................................................ 9
4.03  Matching Contributions ............................................................................................ 9

## ARTICLE V INVESTMENTS AND VALUATIONS

5.01  Investment of Accounts .......................................................................................... 10
5.02  Valuation of Bookkeeping Accounts ...................................................................... 10

## ARTICLE VI DISTRIBUTIONS AND WITHDRAWALS

6.01  Termination of Employment for Reasons Other than Death or Disability ............ 11
6.02  Death or Disability ................................................................................................. 11
6.03  Hardship ................................................................................................................. 11
6.04  Form of Distribution .............................................................................................. 11
6.05  Federal Income Tax Withholding ........................................................................... 12

## ARTICLE VII FUNDING

7.01  Funding .................................................................................................................. 13
7.02  Change in Control .................................................................................................. 13

## ARTICLE VIII ADMINISTRATION .................................................................................... 14

8.01  Appointment of Administrator .............................................................................. 14
8.02  Duties ..................................................................................................................... 14
8.03  Benefit Claims Review Procedure ......................................................................... 14
8.04  Fiduciary Discretion .............................................................................................. 15

## ARTICLE IX AMENDMENT AND TERMINATION OF THE PLAN

9.01  Amendment of the Plan ......................................................................................... 16
9.02  Termination of the Plan ......................................................................................... 16

## ARTICLE X GENERAL PROVISIONS

10.01  No Guaranty of Employment ............................................................................... 17
10.02  Payments to Minors and Incompetents ............................................................... 17
10.03  Non-Alienation of Benefits .................................................................................. 17
10.04  Headings and Subheadings .................................................................................. 17
10.05  Use of Masculine and Feminine; Singular and Plural ......................................... 17
10.06  Beneficiary Designation ....................................................................................... 17
10.07  Errors and Omissions ........................................................................................... 18

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

10.08   Governing Law ................................................................................................ 18
10.09   Binding Effect .................................................................................................. 18
10.10   Effect on Other Plans ....................................................................................... 18
10.11   Other Benefits and Agreements ....................................................................... 18

ARTICLE XI ADOPTION OF PLAN ......................................................................................... 22

## INTRODUCTION

The Circuit City Stores, Inc. Supplemental 401(k) Plan (the "Plan") is adopted effective March 1, 2005. The purpose of the Plan is to supplement the benefits payable to certain employees of Circuit City Stores, Inc. (the "Company") by supplementing benefits that would be available to such employees through salary deferrals and matching employer contributions. The Company has determined that the adoption of the Plan will assist it in attracting and retaining those employees whose abilities and experience will contribute to the Company's continued success.

The Company intends for the Plan to be an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 as amended. The Plan is unfunded and covers a select group of management or highly compensated employees. The Company also intends the Plan to comply with the requirements of Section 409A of the Internal Revenue Code of 1986. All questions arising in the construction and administration of the Plan must be resolved in a manner that is consistent with that intent.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE I

# DEFINITIONS

1.01 **Account**

Account means the account or bookkeeping record reflecting a Participant's interest in the Plan. A Participant may have several Accounts in the Plan.

1.02 **Affiliate**

Affiliate means any corporation which, when considered with Circuit City Stores, Inc., would constitute a controlled group of corporations within the meaning of Code section 1563(a), determined without regard to Code sections 1563(a)(4) and 1563(e)(3)(C) or any entity, whether or not incorporated which, when considered with Circuit City Stores, Inc. would constitute a controlled group in accordance with Code section 414(c) and regulations promulgated thereunder.

1.03 **Beneficiary**

Beneficiary means the the person or entity specified by a Participant on forms prescribed by the Company for that purpose. If a Participant does not designate a Beneficiary or if the designated Beneficiary predeceases the Participant or is not in existence on the date of the Participant's death, then Beneficiary means the Participant's surviving spouse, or if there is no surviving spouse, the executor(s)or administrator(s)of the Participant's estate.

1.04 **Board of Directors**

Board of Directors means the Board of Directors of Circuit City Stores, Inc.

1.05 **Change in Control**

Change of Control means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

(a)     The acquisition by any individual, entity, or group (a "Person"), including a "person" within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Exchange Act, of thirty-five percent (35%) or more of either:  (i) the then outstanding shares of common stock of the Circuit City Group (the "Outstanding Common Stock"); or (ii) the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following:  (A) any acquisition directly from the Company (excluding an acquisition resulting from the exercise of an option, conversion right, or exchange privilege unless the

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

security being so exercised, converted or exchanged was acquired directly from the Company);
(B) any acquisition by the Company; (C) any acquisition by an employee benefit plan (or related
trust) sponsored or maintained by the Company or any corporation controlled by the Company;
or (D) any acquisition by any corporation pursuant to a transaction which complies with clauses
(i), (ii), and (iii) of subsection (c) of this Section 1.05;

(b)     Individuals who, as of the Effective Date, constitute the Board of Directors (the
"Incumbent Board") cease for any reason to constitute at least a majority of such Board; provided
that any individual who becomes a director of the Company subsequent to the Effective Date,
whose election, or nomination for election by the Company's stockholders, was approved by the
vote of at least a majority of the directors then comprising the Incumbent Board shall be deemed
a member of the Incumbent Board; and provided further, that any individual who was initially
elected as a director of the Company as a result of an actual or threatened election contest, as
such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or
any other actual or threatened solicitation of proxies or consents by or on behalf of any Person
other than the Board shall not be deemed a member of the Incumbent Board;

(c)     The consummation of a reorganization, merger or consolidation of the Company
or sale or other disposition of all or substantially all of the assets of the Company (a "Corporate
Transaction"); excluding, however, a Corporate Transaction pursuant to which:   (i) all or
substantially all of the individuals or entities who are the beneficial owners, respectively, of the
Outstanding Common Stock and the Outstanding Voting Securities immediately prior to such
Corporate Transaction will beneficially own, directly or indirectly, more than sixty percent
(60%) of, respectively, the outstanding shares of common stock, and the combined voting power
of the outstanding securities of such corporation entitled to vote generally in the election of
directors, as the case may be, of the corporation resulting from such Corporate Transaction
(including, without limitation, a corporation, which as a result of such transaction owns the
Company or all or substantially all of the Company's assets either directly or indirectly) in
substantially the same proportions relative to each other as their ownership, immediately prior to
such Corporate Transaction, of the Outstanding Common Stock and the Outstanding Voting
Securities, as the case may be; (ii) no Person (other than:  the Company; any employee benefit
plan (or related trust) sponsored or maintained by the Company or any corporation controlled by
the Company; the corporation resulting from such Corporate Transaction; and any Person which
beneficially owned, immediately prior to such Corporate Transaction, directly or indirectly,
twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting
Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent
(25%) or more of, respectively, the outstanding shares of common stock of the corporation
resulting from such Corporate Transaction or the combined voting power of the outstanding
securities of such corporation entitled to vote generally in the election of directors; and
(iii) individuals who were members of the Incumbent Board will constitute at least a majority of
the members of the board of directors of the corporation resulting from such Corporate
Transaction; or

(d)     The consummation of a plan of complete liquidation, dissolution, or sale of
substantially all the assets of the Company.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

For purposes of this Section 1.05, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person.  For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

1.06    **Code**

Code means the Internal Revenue Code of 1986, as amended.  References to specific sections of the Code includes those sections and any comparable sections of future legislation that modify, amend, supplement, supersede or recodify such sections.

1.07    **Committee**

Committee means the Administrative Committee appointed by the Board to administer the Plan.

1.08    **Company**

Company means Circuit City Stores, Inc. and all of its Affiliates that have adopted the Plan.

1.09    **Compensation**

Compensation means compensation as defined in Section 1.10 of the 401(k) Plan without regard to the limit on compensation that may be recognized under Code section 401(a)(17) and with the inclusion of compensation deferred by the Participant pursuant to Plan section 3.01 for any relevant period.

1.10    **Disabled**

Disabled means the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months.

1.11    **Employee**

Employee means an individual who is an employee of Circuit City Stores, Inc. or an affiliate who has adopted the Plan and who is a member of a select group of management or highly compensated employees of the Company.

1.12    **ERISA**

4

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

ERISA means the Employee Retirement Income Security Act of 1974, as amended. References to specific sections of ERISA shall include those sections and any comparable sections of future legislation that modify, amend, supplement, supersede or recodify such sections.

## 1.13    **401(k) Plan**

401(k) Plan means the Circuit City Stores, Inc. 401(k) Plan, as now and hereafter amended.

## 1.14    **Investment Fund**

Investment Fund means any of the investment funds designated under the 401(k) Plan pursuant to Article VI thereof.

## 1.15    **Matching Contribution**

Matching Contribution means the Company's Matching Contribution which matches Salary Deferral Contributions made to the Plan on behalf of a Participant as described in section 4.02 of the Plan.

## 1.16    **Participant**

Participant means an eligible Employee who satisfies the requirements of Article II. A Participant is considered an active Participant if such Participant has an election to make a Salary Deferral Election in effect. A Participant who does not have a Salary Deferral Election in effect or who is no longer an Employee is considered an inactive Participant.

## 1.17    **Plan**

Plan means the Circuit City Stores, Inc. Supplemental 401(k) Plan.

## 1.18    **Plan Year**

Plan Year means the annual period beginning on January 1st and ending on the following December 31st. The Plan has a short Plan Year commencing March 1, 2005, and ending December 31, 2005.

## 1.19    **Salary Deferral Contribution**

Salary Deferral Contribution means a Participant's pre-tax salary deferrals made under the Plan in accordance with Plan section 3.01.

## 1.20    **Salary Deferral Election**

Salary Deferral Election means the Employee's election in writing to defer amounts under

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

the Plan.

### 1.21   Unforeseen Emergency

Unforeseen Emergency means a Participant's severe financial hardship resulting from an illness or accident of the Participant, the Participant's spouse or of a dependent (as defined in Code section 152), loss of the Participant's property due to casualty or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant. The amount of the distribution on account of an Unforeseen Emergency may not exceed the amounts necessary to satisfy such emergency plus amounts necessary to pay taxes reasonably anticipated as a result of the distribution. Payment may not be made to the extent an Unforeseen Emergency is or may be relieved (a) through reimbursement or compensation by insurance or otherwise, or (b) by liquidation of the Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship. Any determination of the existence of an Unforeseen Emergency and the amount to be distributed on account thereof shall be made by the Plan Administrator (or such other person as may be required to make such decisions) in accordance with rules applied in a uniform and nondiscriminatory manner.

### 1.22   Valuation Date

Valuation Date means each business day of the Plan Year.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE II

## ELIGIBILITY AND PARTICIPATION

2.01    **Eligibility Requirements**

An Employee shall be eligible to participate in the Plan as of later of a) the date such Employee is designated by the Committee to participate in the Plan, and b) is eligible to participate in the 401(k) Plan.

2.02    **Participation in the Plan**

(a)    An eligible Employee becomes a Participant upon his completion of a Salary Deferral Election pursuant to Article III.    Each Employee and Participant must correctly disclose to the Administrator all requested information necessary for the administration of the Plan.

(b)    A Participant shall continue to be a Participant of the Plan until the date that he is no longer entitled to benefits under the Plan.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE III

## DEFERRAL ELECTIONS

3.01   **Election of Deferrals**

(a)      In order to become an Active Participant, an eligible Employee must file with the Administrator a Salary Deferral Election, in accordance with its terms and the terms and conditions of this section 3.01.  Such Salary Deferral Election must be filed no later than the December 31 preceding such Plan Year and at such earlier time as may be set by the Committee in its sole discretion.

(b)      The maximum Salary Deferral Contribution for a Plan Year shall be forty percent (40%) of the Participant's Compensation for such Year.  A Participant's election must be made in one percent (1%) increments.

(c)      Each Salary Deferral Election shall be made on a form provided by the Administrator and shall specify any such information as the Administrator may require.

3.02   **Election, Revocation and Modification of Deferrals**

A Participant's election to defer under the Plan shall be irrevocable for the Plan Year and thereafter as of the December 31 of the preceding year, but may be revoked or modified by the Participant prior the beginning of any subsequent Plan Year.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE IV

## ACCOUNTS

4.01   **Establishment of Accounts**

The Administrator shall establish and maintain separate Accounts and for each Participant of the Plan to credit a Participant's Salary Deferral Contributions and Matching Contributions. As required for appropriate record-keeping, the Administrator may establish and name additional Accounts or sub-accounts for each Participant.

4.02   **Crediting of Salary Deferral Contributions**

(a)   Salary Deferral Contributions shall be credited to the Participant's Account as of the last day of the payroll period in which such Compensation would otherwise be paid to the Participant.

(b)   A Participant's interest in his Account attributable to Salary Deferral Contributions and any earnings therein shall be fully vested and nonforfeitable.

4.03   **Matching Contributions**

(a)   As soon as practicable after the end of each calendar quarter, the Company shall credit to each Participant's Matching Contribution Account an amount equal to (i) minus (ii) below where:

(i)   equals the Company Safe Harbor Contribution (as defined in the 401(k) Plan) the Participant would have received under the 401(k) Plan based on the formula set forth in the 401(k) Plan and the percentage of Compensation deferred under this Plan, and                                                                    (17)?

(ii)   equals the amount of Company Safe Harbor Matching Contribution (as defined in the 401(k) Plan) credited to the Participant under the 401(k) Plan for the Plan Year assuming the Participant deferred at least five percent (5%) of his Compensation (taking into account the limit under Code Section 401(a)(7) under the 401(k) Plan).

(b)   A Participant's interest in his Account attributable to Matching Contributions and any earnings thereon shall be fully vested and nonforfeitable.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE V

## INVESTMENTS AND VALUATION

5.01   **Investment of Accounts**

(a)   A Participant may direct the investment of his Account among one or more of the Investment Funds.  Such direction shall be in writing on a form provided by the Administrator and in accordance with procedures established by the Administrator.  The investment of a Participant's Account is hypothetical and solely for the purpose of crediting earnings on such Account.

(b)   The investment of a Participant's Account shall be made in multiples of ten percent (10%). An investment election shall remain in force until changed.  Participants may change the investment of their Account with respect to the balance in their Account and with respect to any future Salary Deferral Contributions and Matching Contributions in accordance with procedures established by the Administrator.

5.02   **Valuation of Bookkeeping Accounts**

Each Participant's Account shall be valued as of the last day of each calendar quarter and adjusted as of such date to reflect any gains and  losses in the Investment Funds and any other expenses or charges attributable to the Account or Investment Fund.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE VI

## DISTRIBUTIONS AND WITHDRAWALS

6.01   **Termination of Employment for Reasons Other than Death or Disability**

(a)   In the event of a Participant's termination of employment, the Plan shall pay the Participant the total value of the Participant's Account as of the Participant's termination of employment.

(b)   Subject to subsection (c) below, a Participant's Account shall be distributed as soon as practicable following his termination of employment.

(c)   In the event the Participant is a key employee (as defined in Code section 416(i) without regard to paragraph (5) thereof) on the date of his termination of employment, the distribution of his Account shall be made no earlier than the six-month anniversary of his termination of employment.

6.02   **Death or Disability**

In the event of a Participant's death or Disability, the Plan shall pay the Participant, or his Beneficiary, as the case may be, the total value of the Participant's Account as of his death or Disability.

6.03   **Hardship**

(a)   No withdrawals or distributions are permitted from the Plan while the Participant remains employed by the Company except upon an Unforeseeable Emergency.

(b)   A distribution of up to 50% of the Participant's Account because of an Unforeseeable Emergency will be permitted only to the extent required by the Participant to satisfy the emergency need. Whether an Unforeseeable Emergency has occurred will be determined solely by the Administrator. Distributions in the event of an Unforeseeable Emergency may be made by and with the approval of the Administrator upon written request by a Participant.

6.04   **Form of Distribution**

Payment shall be made from the Plan to a Participant or Beneficiary in a single lump sum in cash.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

6.05    **Federal Income Tax Withholding**

The Company shall withhold from any payment made by it under the Plan such amount or amounts as may be required for purposes of complying with the tax withholding or other provisions of the Code, the Social Security Act, as amended, or any federal, state or local income or employment tax provision, or otherwise.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE VII

## FUNDING

7.01    Funding

(a)    All  Participants and Beneficiaries are general unsecured creditors of the Company with respect to the benefits due hereunder and the Plan constitutes a mere promise by the Company to make benefit payments in the future.   It is the intention of the Company that the Plan be considered unfunded for tax purposes.

(b)    The Company may, but is not required to, purchase life insurance in amounts sufficient to provide some or all of the benefits provided under this Plan or may otherwise segregate assets for such purpose.

(c)    Except as provided in Plan section 7.02 below, the Company may, but is not required to establish a grantor trust which may be used to hold assets of the Company which are maintained as reserves against the Company's unfunded, unsecured obligations under the Plan. Such reserves shall at all times be subject to the claims of the Company's creditors.   To the extent such trust or other vehicle is established, and assets contributed for the purpose of fulfilling the Company's obligation hereunder, then such obligation of the Company shall be reduced to the extent such assets are utilized to meet its obligations hereunder.

7.02    Change in Control

Effective upon a Change in Control, the Company shall contribute to a  grantor trust an amount equal to the aggregate Account balances of all Participants in the Plan.  The trust shall be funded with cash or cash equivalents other than stock of the Company.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE VIII

## ADMINISTRATION

### 8.01    Appointment of Administrator

The Committee shall serve as the Plan Administrator and shall be responsible for the operation and administration of the Plan except to the extent its duties are allocated to and assumed by persons or entities hereunder.

### 8.02    Duties

(a)    The Committee shall make such rules and regulations as it deems necessary for operation of the Plan, shall determine all questions arising in the administration, interpretation and application of the Plan, review claims for benefits which have been denied, and shall perform all other functions which may be assigned to it by the Board.

(b)    The Committee or its delegate shall maintain, on a plan or calendar year basis, employee and other such records as are necessary for the successful operation of the Plan and shall supply such full and timely information for all matters relating to the Plan as the Committee may require for the effective discharge of its duties.

(c)    The Committee or its delegate shall receive all applications for benefits and shall establish rules and procedures to be followed by Participants and Beneficiaries in filing such applications and for furnishing and verifying all data which may be required in order to establish their rights to benefits in accordance with the Plan.  Upon receipt of an application for benefits, the Committee or its delegate shall determine all facts which are necessary to establish the right of an applicant to benefits and the amount thereof.  All approved benefits shall be paid at the direction of the Committee or its delegate.  Such payments shall be made in accordance with the Committee's or its delegate's written directions setting forth the amount of such payments and the specific manner in which such payments are to be made.

### 8.03    Benefit Claims Review Procedure

(a)    Claims for benefits under the Plan may be submitted to the Committee or such person as the Committee may designate in writing who shall have the initial responsibility for determining the eligibility of any Participant or Beneficiary for benefits.  Such claims for benefits shall be made in writing and shall set forth the facts which such Participant or Beneficiary believes to be sufficient to entitle him to the benefit claimed.  The Committee may adopt forms for the submission of claims for benefits in which case all claims for benefits shall be filed on such forms.

(b)    Upon receipt of a claim, the Committee or its delegate must respond in writing within 90 days.  If necessary, the Committee or its delegate's first notice must indicate any special circumstances requiring an extension of time for the Committee or its delegate's decision.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

The extension notice must indicate the date by which the Committee or its delegate expects to give a decision. An extension of time for processing may not exceed 90 days after the end of the initial 90 day period.

(c)     If the written claim for a Plan benefit is wholly or partially denied or the claimant has had no response, the claimant or his duly authorized representative, at the sole expense of the claimant, may appeal the denial within 60 days of the date of the denial or the expiration of the time period provided in subsection (b) to the Committee. An adverse notice must be written in a manner calculated to be understood by the claimant and must include (i) each reason for denial; (ii) specific references to the pertinent provisions of the Plan or related documents on which the denial is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why that material or information is needed; and (iv) appropriate information about the steps to be taken if the claimant wishes to submit the claim for review.

(d)     In pursuing his appeal the claimant or his representative:

(i)     may request in writing that the Committee review the denial;

(ii)     may review pertinent documents; and

(iii)     may submit issues and comments in writing.

(e)     The decision on review shall be made within 60 days; provided that the 60 day period may be extended for an additional 60 days by written notice to the claimant setting forth the reasons for the extension. The decision on review shall be made in writing, shall include specific reasons for the decision, shall be written in a manner calculated to be understood by the claimant and shall contain specific references to the pertinent Plan provisions on which the decision is based.

8.04    **Fiduciary Discretion**

In discharging the duties assigned to it under the Plan, the Committee and each other fiduciary with respect to the Plan has the discretion to interpret the Plan; adopt, amend and rescind rules and regulations pertaining to its duties under the Plan; and to make all other determinations necessary or advisable for the discharge of its duties under the Plan. Each fiduciary's discretionary authority is absolute and exclusive if exercised in a uniform and nondiscriminatory manner with respect to similarly situated individuals. The express grant in the Plan of any specific power to a fiduciary with respect to any duty assigned to it under the Plan must not be construed as limiting any power or authority of the fiduciary to discharge its duties. A fiduciary's decision is final and conclusive unless it is established that the fiduciary's decision constituted an abuse of its discretion.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE IX

## AMENDMENT AND TERMINATION OF THE PLAN

### 9.01   Amendment of the Plan

The Company shall have the right by action of the Board of Directors or its delegate to modify, alter or amend the Plan in whole or in part prospectively or retroactively; provided, however, that any such action shall not, in any way, adversely affect the benefits of individuals who have terminated their employment under the Plan prior to the effective date of such action, or of their Beneficiaries, nor shall it adversely affect amounts credited to Participants prior to the effective date of such action.

### 9.02   Termination of the Plan

The Company reserves the right to terminate the Plan at any time by action of its Board of Directors or its delegate, provided, however, that any such action shall not, in any way, adversely affect the benefits of individuals who have terminated their employment under the Plan prior to the effective date of such action, or of their Beneficiaries, nor shall it adversely affect amounts credited to Participants prior to the effective date of such action.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE X

## GENERAL PROVISIONS

### 10.01  No Guaranty of Employment

The Plan shall not be deemed to constitute a contract between the Company and any Participant or to be consideration or an inducement for the employment of any Participant of the Company.  Nothing contained in the Plan shall be deemed to give any Participant the right to be retained in the service of the Company or to interfere with the rights of the Company to discharge or to terminate the service of any Participant at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

### 10.02  Payments to Minors and Incompetents

If a Participant or Beneficiary entitled to receive any benefits hereunder is a minor or is deemed so by the Administrator or is adjudged to be legally incapable of giving valid receipt and discharge for such benefits, benefits will be paid to such person as the Administrator might designate.  Such payments shall, to the extent made, be deemed a complete discharge of any liability for such payment under the Plan.

### 10.03  Non-Alienation of Benefits

To the extent permitted by law, no benefit payable under the Plan will be subject in any manner to anticipation, assignment, garnishment, or pledge; and any attempt to anticipate, assign, garnish or pledge the same will be void and no such benefits will be made in any manner liable for or subject to the debts, liabilities, engagements or torts of any Participants.

### 10.04  Headings and Subheadings

The headings and subheadings in this Plan have been inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

### 10.05  Use of Masculine and Feminine; Singular and Plural

In the construction of the Plan the masculine shall include the feminine and the singular the plural in all cases where such meanings are indicated by the context.

### 10.06  Beneficiary Designation

At the time of enrollment in the Plan, each Participant, if applicable, must designate a Beneficiary to receive settlement of his Plan account in the event of his death during employment.  A Participant may, from time to time, change a Beneficiary or Beneficiaries under the Plan.  In the event that no designated Beneficiary is surviving at the time of the Participant's death, settlement under the Plan will be made as provided in Plan section 1.03.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

10.07  **Errors and Omissions**

It shall be the responsibility of those individuals and entities charged with the administration of the Plan to see that it is administered in accordance with its terms.  In the event an innocent error or omission is discovered in the operation or administration of the Plan, then the Committee may correct such error as it deems necessary or desirable in a manner consistent with the goodwill intended to be engendered by the Plan and to put Participants in the same relative position they would have been in but for such error or omission.

10.08  **Governing Law**

The Plan shall be construed, enforced and administered in accordance with the laws of the Commonwealth of Virginia.

10.09  **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Company, its successors and assigns, and the Participant and his heirs, executors, administrators and legal representatives.

10.10  **Effect on Other Plans**

The amount of Compensation deferred under the Plan and the crediting of any Matching Contribution shall not be deemed to be earnings or compensation for the purpose of calculating a Participant's benefits or contribution under a retirement or deferral plan of the Company or the basis for determining benefits under any other benefit plan provided by the Company, except to the extent provided in any such plan.  No amount distributed under this Plan shall be deemed to be earnings or a part of the Participant's total Compensation when determining a Member's benefit under any benefit plan established by a Company, unless otherwise provided in such plan.

10.11  **Other Benefits and Agreements**

The benefits provided for a Participant under the Plan are not intended to duplicate any other benefits available to such Participant under any other plan or program of the Corporation for its employees, and, except as may otherwise be expressly provided for, the Plan shall not duplicate, supersede, modify or amend any other plan or program of the Company in which a Participant is participating.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE XI

## ADOPTION OF PLAN

As evidence of its adoption of the Plan herein constituted, Circuit City Stores, Inc. has caused this instrument to be signed by its duly authorized officer this _28th_ day of October, 2004.

**CIRCUIT CITY STORES, INC.**

By: _____

Title _Chairman, President & Chief Executive Officer_

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors in
Possession

              IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. 08-35653 (KRH)
et al.,                    :
                           :
              Debtors.     :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING WACHOVIA BANK, N.A., AS CUSTODIAN OF CIRCUIT CITY STORES, INC.'S SUPPLEMENTAL 401(k) PLAN, TO DELIVER ASSETS OF THE PLAN TO THE DEBTORS' ESTATES**

          THIS MATTER having come before the Court upon the

motion (the "Motion") of the above captioned debtors and

debtors-in-possession (the "Debtors") for an entry of an order

directing Wachovia Bank, N.A., as custodian, to deliver all

assets of the Circuit City Stores, Inc. Supplemental 401(k) Plan

(the "Supplemental 401(k) Plan") to the Debtors as set forth

1

more fully in the Motion; and it appearing that due and proper

notice and service of the Motion has been given in compliance

with Supplemental Order Pursuant to Bankruptcy Code Sections 102

and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy

Rules 2002-1 and 9013-1 Establishing Certain Notice, Case

Management, and Administrative Procedures (Docket No. 6208) and

was good and sufficient and that no other further notice or

service of the Motion need be given; and it appearing that the

relief requested on the Motion is in the best interest of the

Debtors, their estates and creditors and other parties-in-

interest; and after due deliberation thereon good and sufficient

cause exists for the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.    The Motion is GRANTED.

2.    Within seven days after entry of this Order,

Wachovia Bank, N.A., as custodian, is directed to deliver the

assets of the Supplemental 401(k) Plan to the Debtors (the

"Turnover").

3.    To the extent required, the Plan Administrator

and the Debtors are directed to take all actions that are

necessary or appropriate to complete the Turnover.

4.    The requirement under Local Bankruptcy Rule 9013-

1(G) to file a memorandum of law in connection with the Motion

is hereby waived.

5.    This Court retains jurisdiction to hear and

determine all matters arising from or related to the

implementation or interpretation of this Order.

Dated:    Richmond, Virginia
          _____, 2010


          _____
          UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley