Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
     Debtors.                   :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF THE FIFTY-SIXTH
OMNIBUS OBJECTION TO CLAIMS (DISALLOWANCE OF CERTAIN
ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE
OBLIGATIONS)**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................. 1

PRELIMINARY STATEMENT ................................... 2

ARGUMENT ................................................ 6

      I.    THE CLAIMS AROSE PRE-PETITION REGARDLESS OF
           WHETHER THERE HAS BEEN A "CHANGE OF CONTROL" ... 6

     II.   THE CLAIMS ARE NOT ENTITLED TO
           ADMINISTRATIVE PRIORITY UNDER BANKRUPTCY
           CODE SECTION 503(B). .......................... 9

          A.   The Claims Do Not Arise Out Of A Post-
               Petition Transaction. ................... 11

          B.   Because The Claims Arise From The Pre-
               Petition Agreements, The Claims Are Not
               Administrative Claims. ................... 15

               1.   The Pre-Petition Agreements are
                    not enforceable against the
                    Debtors. .......................... 15

               2.   The Claims under the Pre-Petition
                    Agreements are pre-petition
                    rejection damages claims. ........... 17

    III. THE CLAIMS SHOULD NOT BE PRORATED. ............ 19

          A.   Under The Fourth Circuit's Conduct Test,
                The Claims Arose In Full Before The
               Petition Date And Should Not Be
               Prorated. ............................... 19

          B.   The Claims Should Not Be Prorated As A
               Measure Of The Reasonable Value Of The
               Respondents' Services. .................. 23

     IV.   CERTAIN CLAIMS MUST BE DISALLOWED UNDER
           BANKRUPTCY CODE SECTION 503(C). ............... 27

CONCLUSION .............................................. 31

## INTRODUCTION

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), pursuant to sections 105, 502 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), submit this omnibus reply (the "Reply") to the Responses[1] of the Respondents and in support of the Debtors' Fifty-Sixth Omnibus Objection (Disallowance of Certain Alleged Administrative Expenses on

---

[1]   Responses were filed by Bruce H. Besanko (D.I. 5687, the "Besanko Response"), Thomas C. Bradley (D.I.s 5719, 5721, 5724, the "Bradley Responses"), Kelly Breitenbecher (D.I. 5733, the "Breitenbecher Response"), Linda H. Castle (D.I. 5697, the "Castle Response"), Lawrence W. Fay (D.I. 5749, the "Fay Response"), Jon C. Geith (D.I. 5704, the "Geith Response"), Michael D. Goode (D.I. 5748, the "Goode Response"), Laurie Lambert-Gaffney (D.I. 5700, the "Lambert-Gaffney Response"), Scott D. Mainwaring (D.I. 5706, the "Mainwaring Response"), Jeff McDonald (D.I. 5755, the "McDonald Response"), Daniel W. Ramsey (D.I. 5754, the "Ramsey Response"), Richard E. Salon (D.I. 5811, the "Salon Response"), Francis E. Telegadas (D.I. 5698, the "Telegadas Response"), David W. Tolliver (D.I. 5744, the "Tolliver Response"), Dawn W. vonBechmann (D.I. 5660, the "vonBechmann Response") and James H. Wimmer, Jr. (D.I. 5693, the "Wimmer Response" and collectively with the foregoing responses, the "Responses," filed by the "Respondents").

Account of Employee Obligations) (D.I. 5320, the

"Objection")[2].

### PRELIMINARY STATEMENT

On October 21, 2009, the Debtors filed the

Objection.  By the Objection, the Debtors seek to

reclassify certain administrative expense claims filed by

former employees of the Debtors on account of alleged

employee-related obligations, including the Claims of the

Respondents, to pre-petition general unsecured claims and

simultaneously disallow such general unsecured claims as

late-filed and duplicative.

Each Respondent has contested the Objection,

arguing that his or her respective Claim is entitled, at

least in part, to administrative priority under Bankruptcy

Code section 503(b).[3]  As set forth in the Objection and as

discussed below, however, each Claim is, as a matter of law,

a pre-petition claim and should be disallowed.

---

[2]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to them in the Objection.

[3]  Certain of the Respondents also argue that, in lieu of
     administrative priority, up to $10,950 of their Claims are entitled
     to priority under Bankruptcy Code section 507(a)(4).  The Debtors do
     not address these arguments here, as, even if the Respondents could
     seek section 507(a)(4) priority for their Claims, that does not
     alter the fact that the Claims are pre-petition claims and, once
     reclassified, should be disallowed as late-filed.

2

To assist the Court, the Debtors have identified the following four issues raised by the Debtors and the Respondents, together with the Respondents' and the Debtors' positions.

1.    Issue:  When did the Claims arise?

    1a.    Respondents' Position:  The Claims arose post-petition when they vested under the terms of the Award Programs or when the Respondent was terminated under the terms of his or her respective Employment Agreement.

    Debtors' Position:  Each of the Claims arose under a pre-petition contract.  Thus, under the Fourth Circuit's conduct test, the Claims likewise arose pre-petition and, accordingly, are pre-petition general unsecured claims.  The Debtors' position regarding when the Claims arose is fully set forth in the Objection and is not duplicated herein.  Objection at 17-23.

    1b.    Respondents' Position:  The Claims arose post-petition because a change of control occurred post-petition.

    Debtors' Position:  Even assuming, arguendo, a change in control did occur, the Claims nonetheless arose pre-petition.  The occurrence of a change in control affects only when the Claims vest and does not transform pre-petition general unsecured claims into post-petition administrative expense claims.

2.    Issue:  Whether the Claims are post-petition claims entitled to administrative expense priority?

    Respondents' Position:  The Claims vested post-petition because the Respondents were employed on

3

the post-petition vesting dates and thus the
Claims satisfy the post-petition transaction
requirement and are administrative expense claims.

Debtors' Position:  Each of the Award Program
Agreements (as defined herein) and Employment
Agreements were executed prior to the Petition
Date and the Awards were granted prior to the
Petition Date notwithstanding Respondents' post-
petition services.  Accordingly, there is no
post-petition transaction and the Claims are pre-
petition unsecured claims.  Moreover, courts have
consistently held that post-petition contractual
damage claims arising from pre-petition contracts
are not entitled to administrative priority.  The
Debtors' position on this issue is set forth in
part in the Objection, see Objection at 23-26,
and more fully herein.

In addition, the Award Program Agreements and the
Employment Agreements were executory contracts
that may not be enforced against the Debtor
except by means of a general unsecured claim.
Moreover, the Award Program Agreements and the
Employment Agreements have been or will be
rejected.  Thus, any Claims thereunder are pre-
petition rejection damages claims.

3.    Issue:  Whether the Claims should be pro-rated
      between the pre- and post-petition periods, such
      that portions of the Claims are granted
      administrative expense status?

      3a.    Respondents' Position:  A portion of the
             Claims arose each day the Respondents worked
             post-petition and that portion should be
             granted administrative expense priority.

             Debtors' Position:  Under the conduct test
             and the terms of the Award Programs and
             Employment Agreements, the Claims arose in
             full prior to the Petition Date.  Thus,
             there is no basis to pro-rate the Claims
             between pre- and post-petition periods and
             grant administrative expense status to any

"post-petition portion"; indeed, there is no post-petition portion.

3b.    Respondents' Position:  The Respondents are entitled to the reasonable value of their services provided post-petition and that value should be determined by looking to the Award Program Agreements.

Debtors' Position:  The appropriate measure of the value of Respondents' services is their wages and benefits and Respondents have been paid these amounts in full.

4.    Issue:  Whether the Claims of Respondents who are insiders are barred by Bankruptcy Code section 503(c)?

Respondents' Position:  Respondents did not address this issue.[4]

Debtors' Position:  With respect to those Respondents who are insiders of the Debtors, the payments requested pursuant to the Claims are barred by Bankruptcy Code sections 503(c)(1) and (2).

The Debtors submit that each position advanced by

the Respondents is contrary to governing law and,

accordingly, each Claim should be reclassified to a general

unsecured claim.  As such, each Claim was filed after the

applicable General Bar Date, and thus, the Claims should be

disallowed as late-filed.  Moreover, each Respondent filed

---

[4]    But see Besanko Response at 1 (stating only "the law is unclear as to whether or not Bankruptcy Law 503(c) trumps Contract Law regarding Employment Agreements.  If the Judge determines this to be the case than the Employment Agreement claim should be reclassified as a general unsecured claim.").

another proof of claim -- the Existing Claims -- based upon

the same underlying basis and claim as the Claims.[5]

Consequently, the Claims should also be disallowed as

duplicative of the Existing Claims.  Objection at 26-32.

Accordingly, the Objection should be sustained,

and the Claims should be disallowed.

**ARGUMENT**

**I.    THE CLAIMS AROSE PRE-PETITION REGARDLESS OF WHETHER
       THERE HAS BEEN A "CHANGE OF CONTROL".**

In the Objection, the Debtors submit that, under

the Fourth Circuit's conduct test, each Claim arose pre-

petition because the Award Programs were instituted pre-

petition, the Awards were granted pre-petition, and the

Award Program Agreements[6] and Employment Agreements

(together, the "Pre-Petition Agreements") were executed

pre-petition.  See Objection at 17-23.  In response,

---

[5]   The Existing Claims are not always in the same amount as the Claims.
      In each case, however, the Claim and the Existing Claim were
      asserted on account of the same underlying obligation.

[6]   Each of the Respondents asserting Claims under the Long-term
      Incentive Program, the Cash Award Programs, the Chairman's Award
      Program, the Phantom Stock Program and the Restricted Stock Program,
      entered into separate contracts with the Debtors with respect to
      each such program; such contracts are referred to herein as the
      "Award Program Agreements".  Samples of the Award Program Agreements
      are attached as Exhibits D, E, G, H and I to the Objection.  Note
      that participants were automatically enrolled in the Short-term
      Incentive Program such that that Program did not provide for
      individual letter agreements.

certain Respondents point to "change of control" provisions contained in each Award Program Agreement providing that, in the event of a change of control, the Award would vest in full on the date of such change in control.[7]  Similarly, other Respondents note that the Employment Agreements provided that severance benefits would be payable in conjunction with a change in control of the Debtors.[8] Because these Respondents contend that a change in control occurred post-petition, such Respondents conclude that their Claims are entitled to administrative priority.[9]  As discussed in the Objection and further below, however, this conclusion is plainly at odds with the Fourth Circuit's conduct test.

        Even assuming, _arguendo_, a change in control has occurred -- a fact the Debtors dispute -- the existence of a change of control does not affect the classification of the Claims.  Instead, the existence of a change in control affects only the date the Awards or payments under the

---

[7]  See Bradley Responses at 1; Castle Response at 2; Salon Response at 1.

[8]  See Besanko Response at 1; Breitenbecher Response at 1-2; McDonald Response at 3-4.

[9]  See Besanko Response at 1; Breitenbecher Response at 1-2; Bradley Responses at 1; Castle Response at 2; McDonald Response at 3-4; Salon Response at 1.

Employment Agreements vest -- that is, become noncontingent;
it does not alter the day such Claims arose.  See Thompson
v. Board of Directors of Fairfax Cty. Police Officers
Retirement Sys., 182 B.R. 140, 153 (Bankr. E.D. Va. 1995)
("A debt can be absolutely owing prepetition even though
that debt would never have come into existence except for
postpetition events." (quoting United States v. Gerth, 991
F.2d 1428, 1434 (8th Cir. 1993))), aff'd, 92 F.3d 1182 (4th
Cir. 1996); id. ("The character of a claim is not
transformed from prepetition to postpetition simply because
it is contingent, unliquidated, or unmatured when the
debtor's petition is filed." (quoting Braniff Airways, Inc.
v. Exxon Co., 814 F.2d 1030, 1036 (5th Cir. 1987))); see
also Mondragon v. Circuit City Stores, Inc. (In re Circuit
City Stores, Inc.), Case No. 09-03073 (KRH) (Jan. 11, 2010)
(confirming that the Fourth Circuit applies a conduct test
pursuant to which, "the Plaintiff . . . had a 'claim'
against the Debtors on the 60th day prior to his
termination of employment," when the Debtors ordered the
plant closing or mass layoff giving rise to the claim,
"even if that 'claim' was 'contingent' when it arose").

Here, each Award Program was instituted pre-
petition, each Award was granted pre-petition, and each

Pre-Petition Agreement was executed pre-petition.  <u>See</u>

Objection at 8-15; 23-25.  Consequently, any claims under

such Programs or Agreements arose pre-petition.  <u>See</u>

Objection at 17-26.

Accordingly, the Claims arose pre-petition and

are general unsecured non-priority claims.

## II.   THE CLAIMS ARE NOT ENTITLED TO ADMINISTRATIVE PRIORITY UNDER BANKRUPTCY CODE SECTION 503(B).

As discussed in the Objection, the Debtors assert

that the Claims are not entitled to administrative expense

priority.  Objection at 23-26.  In the Responses, certain

of the Respondents nonetheless contend that the Claims are

entitled to administrative expense priority.[10]  The

Respondents, however, have failed to meet their burden of

demonstrating that the Claims arise out of a post-petition

transaction with the Debtors as debtors in possession.

Moreover, the Claims are pre-petition general

non-priority claims because they arose from the Pre-

Petition Agreements, which have not been assumed and have

---

[10]  <u>See</u> Breitenbecher Response at 2-3; Fay Response at 5; Geith Response at 2; Goode Response at 3; Lambert-Gaffney Response at 2; McDonald Response at 1; Ramsey Response at 4; Telegadas Response at 2; Tolliver Response at 3; vonBechmann Response at Ex. 1, p. 3.

been or will be rejected.[11]  Specifically, for Claims

relating to the Long-Term Incentive Program, Cash Award

Programs, the Chairman's Award Program, the Phantom Stock

Program and the Restricted Stock Program, the Respondents

asserting such Claims entered into the Award Program

Agreements prior to the Petition Date,[12] and for Claims

relating to severance payments, the Respondents asserting

such Claims entered into the Employment Agreements prior to

the Petition Date.  Each of the Pre-Petition Agreements was

an executory contract on the Petition Date.  Thus, by

filing requests for administrative expenses and seeking

payment on account of the Claims, the Respondents are

attempting to impermissibly enforce the Pre-Petition

---

[11]  The Employment Agreements were rejected on March 4.  See Order
Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and
Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory
Contracts (D.I. 6686, the "Rejection Order").  In addition, the
First Amended Joint Plan of Liquidation of Circuit City Stores, Inc.
and its Affiliated Debtors and Debtors In Possession and its
Official Committee of Creditors Holding General Unsecured Claims
(D.I. 5124, the "Plan") provides that all remaining executory
contracts not identified on Exhibit C to the Plan as insurance
agreements will be rejected on the Effective Date.  See Plan at §
VII.A.  The Award Program Agreements are not identified on Exhibit C
to the Plan.  See Exhibit C to Plan at D.I. 5548.

[12]  Mr. Ramsey has not provided a copy of his executed Award Program
Agreement with respect to the Long-Term Incentive Program.  Instead,
Mr. Ramsey states, in his proof of claim form for claim number 13967,
that he "received confirmation from the company that the
confirmation of participation was received."  See Claim Number 13967
at 1.

Agreements against the Debtors.  In addition, because each

of the Pre-Petition Agreements has been or will be rejected,

the Claims are pre-petition rejection damages claims.

Accordingly, the Claims are not entitled to

administrative expense status.

**A.  The Claims Do Not Arise Out Of A Post-Petition Transaction.**

As the parties filing administrative claims, the

Respondents bear the burden of proving that the Claims are

entitled to administrative priority under Bankruptcy Code

section 503.  See, e.g., Devan v. Simon DeBartolo Group,

L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149,

157 (4th Cir. 1999) (holding that the creditor "has the

burden of proving that its administrative claim . . . is an

actual and necessary expense"); Ford Motor Credit Co. v.

Dobbins, 35 F.3d 860, 866 (4th Cir. 1994) (same); In re

Boling Group, L.L.C., 2002 WL 31812671, at *4. (Bankr.

M.D.N.C. 2002) (citing Devan v. Simon DeBartolo Group, L.P.

(In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157

(4th Cir. 1999))("The burden of proof is on the claimant to

establish by a preponderance of the evidence its

entitlement to an administrative expense award under 11

U.S.C. § 503(b).").  Here, Respondents have not, and indeed
cannot, meet that burden.

        As discussed in the Objection, the Fourth Circuit
requires that administrative expense claims arise out of a
post-petition transaction with the debtor as a debtor in
possession.  Objection at 23-24.  The Pre-Petition
Agreements were entered into and fully executed prior to
the Petition Date.  Id.  As such, the transactions giving
rise to the Claims were completed pre-petition.

        In analogous circumstances, courts have
consistently held that post-petition contractual damage
claims arising from pre-petition contracts are not entitled
to administrative priority. See, e.g., Einstein/Noah Bagel
Corp. v. Smith (In re BCE West, L.P.), 319 F.3d 1166, 1173
(9th Cir. 2003) (holding that a breach of contract claim
resulting from post-petition conduct, but arising from a
pre-petition contract, did not arise from a post-petition
transaction with the debtor); In re Sheehan Mem. Hosp., 377
B.R. 63, 67 (Bankr. W.D.N.Y. 2007) (concluding that an
employment termination claim arose not from post-petition
conduct, but from the execution of a pre-petition contract).
Indeed, this Court previously recognized that this legal
principle was consistent with Fourth Circuit law. See In re

12

US Airways Group, Inc., 296 B.R. 673, 681 (E.D. Va. 2003)

(noting that the 9th Circuit Court of Appeals' decision in

Einstein was consistent with Fourth Circuit law).

Certain of the Respondents assert that the

services they provided to the Debtors post-petition

constituted a post-petition transaction.[13]  However, as

discussed below, the Respondents were fully compensated for

those services through the payment of their wages and

benefits.  While continued employment on the vesting date

under the Award Programs or until the date of an

involuntary termination under the Employment Agreements is

a condition for the Claims to become non-contingent,

continued employment is not a transaction that gives rise

to the Claims.  See Merry-Go-Round Enters., 180 F.3d at 157

(requiring that an administrative expense claim "must arise

out of a post-petition transaction between the creditor and

the debtor-in-possession (or trustee)").  Instead, the

Claims had already arisen in full upon the Respondents'

return of an executed copy of the Award Program Agreement

or the Respondents' execution of the Employment Agreement.

---

[13] See, e.g., Fay Response at 5; Ramsey Response at 4; Telegadas
Response at 2.

Respondents do not point to any additional transaction

satisfying the requirement for an administrative expense.[14]

        Here, Respondents seek nothing more than post-

petition contractual damages arising from the Pre-Petition

Agreements.  In the absence of a post-petition transaction,

Respondents cannot satisfy their burden of demonstrating

that the Claims are entitled to administrative expense

priority.  Thus, the Claims are pre-petition general

unsecured claims.

---

[14]  In addition, one Respondent states that "[b]y not rejecting the
      contracts or the rewards programs and by continuing to enjoy the
      benefits of the continuation of the employment services through the
      administrative period . . ., the Debtors effectively adopted the
      contracts and signaled the validity of the rewards programs through
      the administrative period."  McDonald Response at 1.  In sum, this
      Respondent is arguing that the Pre-Petition Agreements were either
      implicitly assumed or are enforceable against the Debtors.  It is
      well established, however, that an executory contract cannot be
      assumed by implication.  See, e.g., Mason v. Official Comm. of
      Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 45
      (1st Cir. 2003) ("It is well settled . . . that an executory
      contract cannot be assumed by the unilateral acts of the debtor in
      possession during the reorganization of the business.")  Indeed, as
      noted below, in the Employee Practices Motion (as defined herein),
      the Debtors explicitly did not seek to continue the Award Programs
      or make severance payments.  In addition, as discussed in detail in
      section II.B.1. of this Reply, the Pre-Petition Agreements are not
      enforceable against the Debtors.

**B.    Because The Claims Arise From The Pre-Petition Agreements, The Claims Are Not Administrative Claims.**

**1.    The Pre-Petition Agreements are not enforceable against the Debtors.**

By seeking payment of the Claims as administrative expenses, the Respondents are impermissibly attempting to enforce unassumed executory contracts against the Debtors.

At the time the Claims were filed, the Debtors had neither assumed nor rejected the Pre-Petition Agreements.  It is well established that, pending assumption or rejection, an executory contract is enforceable only against the non-debtor party, but not against the debtors.  See, e.g., NLRB v. Bildisco and Bildisco, 465 U.S. 513, 532 (1984) ("[F]rom the filing of a petition in bankruptcy until formal acceptance, the [executory contract] is not an enforceable contract [against the debtor in possession] . . ."); FBI Distrib. Corp., 330 F.3d at 43 (noting that, "[a]lthough during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is unenforceable against the debtor in possession unless and until the

15

contract is assumed" (emphasis in original)).  Thus,
parties to executory contracts are not entitled to enforce
such contracts.

        Here, by seeking payment of the Claims as
administrative expenses, the Respondents are seeking, in
effect, to enforce the Pre-Petition Agreements against the
Debtors -- that is, to impermissibly "require adherence to
the terms" of the Pre-Petition Agreements.  Bildisco, 465
U.S. at 532.  Such efforts conflict with the Supreme
Court's holding in Bildisco and should be rejected.
Instead, as discussed below, the Respondents may only
assert general unsecured claims on account of the Pre-
Petition Agreements.[15]  See FBI Distrib. Corp., 330 F.3d at
43, 48 (finding that employment agreement was not
enforceable against the debtor, regardless of whether the
debtor elected to continue to receive the benefit of
employee's services after the petition date and denying
administrative priority to employee's claim for severance
pay under the employment agreement).

---

[15] As addressed in section III.B., infra, the Debtors acknowledge that
the Respondents are entitled to the reasonable value of their post-
petition services.  Bildisco, 465 U.S. at 531.  The Respondents have
been fully provided with such reasonable value through payment of
their salaries and benefits.

> **2.  The Claims under the Pre-Petition Agreements
> are pre-petition rejection damages claims.**

Moreover, since the filing of the Claims, the
Debtors have rejected the Respondents' Employment
Agreements and the Award Program Agreements will be
rejected under the Plan.  <u>See</u> Rejection Order; Plan at §
VII.A.  Thus, the Claims for amounts allegedly due under
such Pre-Petition Agreements arose, at the latest,
immediately prior to the Petition Date.

Bankruptcy Code section 365(g) provides that "the
rejection of an executory contract . . . of the debtor
constitutes a breach of such contract or lease - . . .
immediately before the date of the filing of the petition."
<u>See</u> 11 U.S.C. § 365(g).  Thus, upon rejection, the Debtors
are deemed to have breached the Pre-Petition Agreements
immediately prior to the Petition Date.  Consequently, any
claim for damages under the Pre-Petition Agreements
likewise arose, at the latest, immediately prior to the
Petition Date and thus is a pre-petition claim.  <u>See</u>, <u>e.g.</u>,
<u>In re Stewart Foods, Inc.</u> 64 F.3d 141, 144 (4th Cir.
1995)("The rejection of an executory contract constitutes a
breach of the contract, and a party's damages resulting
from that rejection are treated as a pre-petition claim and

17

receive the priority provided to general unsecured
creditors.").

    Certain of the Respondents may argue that the
Pre-Petition Agreements were not executory at the time they
were rejected or will be rejected under the Plan.[16]  The
Debtors submit, however, that the Pre-Petition Agreements
were executory on the relevant date -- the Petition Date.
As this Court has held, "The court looks at the petition
date to determine whether the contract is executory."  In
re Dornier Aviation (North America), Inc., 2002 WL 31999222,
*2 (Bankr. E.D. Va. 2002); see also BNY, Capital Funding
LLC v. US Airways, Inc., 345 B.R. 549, 553 (Bankr. E.D.
2006) ("The date a bankruptcy petition is filed is the
critical time for determining whether a contract is
executory." (quoting RCI Tech. Corp. v. Sunterra Corp. (In
re Sunterra Corp.), 361 F.3d 257, 264 n. 12 (4th Cir.
2004)).[17]

---

[16] Indeed certain of the Respondents filed objections to the Debtors'
    motion to reject the Employment Agreements arguing that the
    Employment Agreements were not executory.  See Response of Lawrence
    W. Fay to Debtors' Eighth Omnibus Motion for Rejection of Executory
    Contracts (D.I. 6485); Response of Kelly Breitenbecher to Debtors'
    Eighth Omnibus Motion for Order Pursuant to Bankruptcy Code Sections
    105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Reject of
    Certain Executory Contracts (D.I. 6488).

[17] But see Gloria Mfg. Corp. v. International Ladies' Garment Workers'
    Union, 734 F.2d 1020 (4th Cir. 1984).  While the Gloria court found
                                                        (cont'd)

Here, on the Petition Date, the Pre-Petition
Agreements were plainly executory contracts as both parties
had material unperformed obligations remaining thereunder.
See Sunterra Corp., 361 F.3d at 264 n. 12.   Accordingly,
because the Employment Agreements have now been rejected
and the Award Program Agreements will be rejected under the
Plan, the Claims for damages thereunder are pre-petition
rejection damages claims and may not be asserted as
administrative claims.

**III. THE CLAIMS SHOULD NOT BE PRORATED.**

      **A.    Under The Fourth Circuit's Conduct Test, The
            Claims Arose In Full Before The Petition Date And
            Should Not Be Prorated.**

In the Objection, the Debtors contend that, under
the Fourth Circuit's conduct test, which was recently
reaffirmed by this Court in Mondragon, the Claims all arose
pre-petition.   See Objection at 17-23; Mondragon, Case No.
09-03073 (KRH) (Jan. 11, 2010).   Certain Respondents have
pointed to case law suggesting that the Awards accrued on a

_____

*(cont'd from previous page)*
    that the relevant date for determining whether a contract was
    executory was the time at which the Debtors sought to reject the
    contract, id. at 1022, that holding is distinguishable.   Gloria
    dealt with a contract with a specified end date.   Id. at 1021.   Here,
    on the other hand, the Prepetition Agreements did not specify end
    dates.   Moreover, as cited above, more recent opinions in this
    Circuit and this district support using the Petition Date as the
    determinative date.

pro-rata basis each day such Respondents were employed.[18]
As such, these Respondents concede that the full amount of
the Awards are not due as administrative expenses.  They
assert, however, that the portion of the Award that
"accrued" or was "earned" after the Petition Date should be
granted administrative expense status.[19]

        In support of this position, these Respondents
rely on certain cases from the Third Circuit, in particular
Former Employees of Builders Square Retail Stores v.
Hechinger Investment Company of Delaware (In re Hechinger
Investment Company of Delaware), 298 F.3d 219 (3d Cir.
2002).  These cases, however, are contrary to the Fourth
Circuit's "conduct test" and, in any event, are not binding
on this Court.  See In re W.R. Grace, 281 B.R. 851, 860
(Bankr. D. Del. 2002) (noting that Third Circuit has
adopted the "accrual test for bankruptcy claims, as
distinguished from a conduct test under which only the
conduct giving rise to liability must have occurred to give
rise to a claim under the Code"); compare Hechinger, 298
F.3d 219 (prorating claim for benefits that were earned

---

[18]  See Fay Response at 4-5; Ramsey Response at 3-4; see also
      Breitenbecher Response at 2; vonBechmann Response, Ex. A at 6-7.

[19]  Breitenbecher Response at 2; Fay Response at 5; Ramsey Response at 4.

over time and granting administrative expense status to
amounts earned after the petition date), with Thompson, 182
B.R. 140 (deeming entirety of retirement benefits that were
earned over time to arise pre-petition and give rise to a
pre-petition claim).  Moreover, none of the Respondents
cite any Fourth Circuit cases to support their argument.

     As discussed in the Objection, under the Fourth
Circuit's "conduct test", a claim arises in full when the
event or conduct giving rise to the claim first occurs.
Objection at 18-19 (citing Grady v. A.H. Robins Co., 839
F.2d 198, 201-02 (4th Cir. 1988)).  Here, each Award
Program was instituted pre-petition, each Award was granted
pre-petition, and each Pre-Petition Agreement was executed
pre-petition.  Consequently, each Claim thereunder arose
pre-petition.

     Moreover, even assuming Hechinger and the accrual
method were relevant to this dispute, neither supports the
Respondents' arguments.  The program at issue in Hechinger
differs markedly from the Award Programs at issue here.  In
Hechinger, the court considered a program through which
employees accrued paid time off over time -- i.e., as they
worked.  Hechinger, 298 F.3d at 223.  Upon termination,
participants in the program were paid for their accrued

paid time off.  Id.  Thus, under the express terms of the
program, the amounts at issue were earned each day of an
employee's service.  On these facts, the court held that
only that portion of benefits earned after the petition
date was entitled to administrative expense status.  Id. at
223.[20]

Here, in contrast, the amount of the Awards did
not increase -- or accrue -- with each day the Award
Program Participant worked.  Instead, as set forth above,
the Awards were granted in full at the commencement of each
Award Program[21] and were merely contingent upon the Award
Program Participant meeting the vesting conditions.

---

[20] Certain of the Respondents also cite In re Lason, Inc., 309 B.R. 441
(Bankr. D. Del. 2003).  See Fay Response at 4-5; Ramsey Response at
3-4; Breitenbecher Response at 2.  In Lason, the bankruptcy court
applied Hechinger to a retention bonus which would be paid in full
if the employee were still employed on a given date.  Lason, 309 B.R.
at 443.  The Lason court, citing Hechinger, stated that "[r]etention
bonuses are earned on each day that the employee works and,
therefore, are entitled to administrative claim status only for the
period that the employee worked post-petition."  Id.  This holding
misconstrues and inappropriately expands the reasoning in Hechinger,
which considered only a program wherein the benefits at issue in
fact increased (literally, were earned) with each day the employee
provided services.  As such, the Lason court misapplied Hechinger
and, the Debtors submit, that ruling should not be followed by this
Court.

[21] See Long-Term Incentive Program Sample Letter at 1 (setting the
"Award Date" as September 29, 2008); Long Term Cash Award Program
Sample Letter at 1 (providing that "effective January 1, 2008, you
have been awarded the following long-term cash award . . ."); Cash
Retention Program Sample Letter at 1 (setting the "Award Date" as
January 1, 2008); Chairman's Award Program Sample Letter at 1
(setting the "Award Date" as July 1, 2008); Phantom Stock Program
(cont'd)

Accordingly, under either the conduct test or

Hechinger, the Claims are pre-petition claims.[22]

**B.     The Claims Should Not Be Prorated As A Measure Of The Reasonable Value Of The Respondents' Services.**

Certain Respondents, conceding that the Claims

arose pre-petition, nonetheless argue for proration of the

Awards on the basis that payment of the Awards represents

the reasonable value of the Respondents' services.[23]  While

the Debtors agree that each Respondent is entitled to the

reasonable value of their services after the Petition Date,

the Debtors submit that each Respondent has been fully

provided with such reasonable value through payment in full

of his or her salary and fringe benefits through the date

of termination.

---

*(cont'd from previous page)*
    Sample Letter at 1 (providing that "effective January 1, 2008, you
    have been awarded the following phantom stock units . . ."); 
    Restricted Stock Program Sample Letter at 1 (establishing a "Grant
    Date" of July 1, 2006).

[22] Hechinger did not concern, and the Respondents do not appear to
    argue, that severance payments under the Employment Agreements
    should be prorated.  Regardless, however, like the Awards, the
    severance payments, though due upon termination, were earned in full
    when the Employment Agreement was executed and were not earned over
    time by the employee's service.  Thus, even if this Court followed
    Hechinger, that case also does not support prorating the Claims
    under the Employment Agreements.

[23] See Goode Response at 3; Tolliver Response at 3; see also
    VonBechmann Response at Ex. A, pp. 4-5.

As Respondents have noted, the Supreme Court in
Bildisco stated that, "[i]f the debtor-in-possession elects
to continue to receive benefits from the other party to an
executory contract pending a decision to reject or assume
the contract, the debtor-in-possession is obligated to pay
for the reasonable value of those services . . . which,
depending on the circumstances of a particular contract,
may be what is specified in the contract." Bildisco, 465
U.S. at 531 (internal citation omitted) (emphasis added).
Importantly, the Supreme Court recognized that the
reasonable value may or may not be what is included in the
contract, depending on the circumstances. See Dornier
Aviation, 2002 WL 31999222 at *7-8 (determining that the
contract was not the proper measure of reasonable value).

In determining whether to look to the contract
for the measure of reasonable value, this Court has held
that an important factor is whether the Debtors could have
entered into the contract at issue post-petition without
seeking court authorization -- i.e. whether the contract
arises in the ordinary course of business. See Dornier
Aviation, 2002 WL 31999222 at *7-8 (citing 11 U.S.C. §
363(c)(1)). If debtors typically seek court approval of
the type of contract at issue, reasonable value should not

24

be measured by the contract.  Id. at *8.  In this regard,
this Court has noted that "it is not at all unusual for
chapter 11 debtors in possession to seek specific court
approval . . . to continue existing employment policies,
including severance pay or to enter into new severance or
retention agreements, particularly for executives or other
key employees.  That was not done here."  Id.  As such, the
Dornier Court declined to look to the contract as measure
of reasonable value of services.

        Similarly, here, at no point did the Debtors seek
authorization to continue any of the Award Programs or make
severance payments.  Indeed, on the Petition Date, the
Debtors filed a motion seeking, among other things,
authorization to continue certain employee programs and
practices post-petition in the ordinary course (D.I. 6; the
"Employee Practices Motion").  Under the Employee Practices
Motion, however, the Debtors did not seek to continue the
Award Programs or make any severance payments.  As stated
in the Employee Practice Motion:

        [T]he Debtors have in place a number of other
        policies and programs, including, severance
        policies, certain additional short-term and
        long-term incentive plans and a board of
        directors deferred compensation plan. At this
        time, the Debtors are not requesting
        authorization to make payments on account of

25

> prepetition amounts owed in connection with
> such policies and plans. The Debtors <u>are also
> not seeking authorization at this time to
> continue such programs</u> in the ordinary course.
> The Debtors are currently evaluating their need
> and ability to continue such programs and will
> seek relief with respect to such programs in
> later motions, as needed.

Employee Practices Motion at 38.   Thus, the Debtors did not

seek, or obtain, authorization to continue the Award

Programs, and the Debtors never returned to the Court to

seek such authorization.

As noted above, each Respondent has been paid his

or her wages, salaries and benefits in full.   The Debtors

submit that, under these circumstances, such amounts

represent the reasonable value of the Respondents' services.

<u>See</u> <u>FBI Distrib. Corp.</u>, 330 F.3d at 48 ("Of course,

[Employee] is entitled to receive the reasonable value of

the beneficial services rendered during the reorganization.

For these services, she was fully compensated by the debtor

in possession: she received her full salary plus fringe

benefits [which did not include severance payments provided

by the Employment Agreement] pursuant to the terms of her

Employment Agreement for all the services she rendered

postpetition.").

## IV.  CERTAIN CLAIMS MUST BE DISALLOWED UNDER BANKRUPTCY CODE SECTION 503(C).

Bankruptcy Code section 503(c) provides that:

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid —

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business . . . ; [or]

(2) a severance payment to an insider of the debtor . . . .

11 U.S.C. § 503(c) (emphasis added).  Pursuant to this section, any claims by insiders for retention or severance payments may be neither allowed nor paid unless certain conditions are met.  See id.

Where the debtor is a corporation, Bankruptcy Code section 101 defines insider as, among other things, a director or officer of the debtor.  Here, Mr. Besanko,[24] Ms. Breitenbecher,[25] Mr. Fay,[26] Ms. Lambert-Gaffney,[27] and Mr.

---

[24]  Mr. Besanko's Claims seek payment of a Cash Retention Award and amounts allegedly due under his Employment Agreement.

[25]  Ms. Breitenbecher's Claim seeks payment of a Cash Retention Award and amounts allegedly due under her Employment Agreement.

[26]  Mr. Fay's Claim seeks payment of a Cash Retention Award.  Mr. Fay also submitted additional administrative expense claims, claim numbers 13862, 13864 and 14365, which are subject to the Objection.  However, in his response, Mr. Fay "concedes that only the Cash Retention Award should be classified as an administrative expense claim and only in the amount of $11,753.52."  Fay Response at 3.

McDonald[28] (collectively, the "Officer Respondents") were
officers of the Debtors prior to their termination.   The
Officer Respondents' Claims seek amounts allegedly owing
for Cash Retention Awards, Long-Term Incentive Awards,
Restricted Stock Awards, and severance payments under their
Employment Agreements.

Each of the Cash Retention Program, the Long-Term
Incentive Program and the Restricted Stock Program is a
retention program designed to induce the employee to remain
with the Debtors and, thus, claims for amounts under these
programs must be disallowed under section 503(c)(1).   See,
e.g., Cash Retention Program Sample Letter at 1 (granting a
"special cash retention award", "[t]he purpose of [which]
is to reward, motivate and retain management personnel who
are key to the Company's turnaround efforts and long term
success" (emphasis added)); Long-Term Incentive Program
Sample Letter at 1 ("The purpose of this Award is to reward,
motivate and retain associates who are key to our

_____

*(cont'd from previous page)*
[27]  Ms. Lambert-Gaffney's Claim seeks payment of a Cash Retention Award.

[28]  Mr. McDonald's Claim seeks payment of a Cash Retention Award, a
     Long-Term Incentive Award, a Short-Term Incentive Award, a
     Restricted Stock Award and severance payments allegedly due under
     his Employment Agreement.   The Debtors do not object to Mr.
     McDonald's Claim under Bankruptcy Code section 503(c) with respect
     to amounts sought under the Short-Term Incentive Program.

turnaround efforts and long term success of Circuit City Stores, Inc." (emphasis added)); Restricted Stock Program Sample Letter at 1 ("The purpose of this discretionary award is to reward, motivate and retain key management personnel." (emphasis added)).  Moreover, a condition of vesting under each program is that the employee remain employed full-time on the relevant vesting date.  Indeed, the Cash Retention Program and Restricted Stock Program had no performance component other than remaining employed by the Debtors.

Thus, the primary effect of such programs was to induce the Award Program Participants to remain with the Debtors' business.  See, e.g., In re Nellson Nutraceutical Inc., 369 B.R. 787, 802 (Bankr. D. Del. 2007).  Here, none of the Officer Respondents have demonstrated, nor could they demonstrate, that they satisfy the requirements under 503(c)(1) for the allowance of such retention payments.[29]

---

[29]  For example, none of the Officer Respondents has demonstrated that payment of his or her Cash Retention or Long-Term Incentive Award was "essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation" or that the services provided by the Officer Respondent were "essential to the survival of the business."  See 11 U.S.C. § 503(c)(1).

Accordingly, the Claims of the Officer Respondents under the Award Program Agreements should be disallowed.

With respect to the severance payments owed to the Officer Respondents, section 503(c)(2) plainly provides that severance payments may not be made to insiders unless such payments are part of a generally applicable severance program. 11 U.S.C. § 503(c)(2). Here, the severance payments arise out of Employment Agreements entered into by the Debtors and each Officer Respondent, individually, and reflect individualized packages designed for such Officer Respondent. Accordingly, under Bankruptcy Code section 503(c)(2), such payments may be neither allowed nor paid.

Thus, the Claims of the Officer Respondents should be disallowed for the additional reason that such claims are prohibited by Bankruptcy Code section 503(c).

For the foregoing reasons, the Claims should reclassified from administrative expense claims to pre-petition general unsecured claims and simultaneously disallowed as late-filed and duplicative.[30]

---

[30] Should the Court deny the relief requested in the Objection, the Debtors reserve the right to seek entry of an order disallowing certain of the Claims to the extent that the Respondents concede such Claims are pre-petition unsecured claims or do not include such Claims in their Response.

**CONCLUSION**

For the reasons set forth in the Objection and herein, the Debtors respectfully request that this Court grant summary judgment and disallow the Claims.

Dated: Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
       March 4, 2010         FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

                             - and -

                             SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Chris L. Dickerson, Esq.
                             155 North Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                             - and -

                             MCGUIREWOODS LLP

                             /s/ Douglas M. Foley      .
                             Dion W. Hayes (VSB No. 34304)
                             Douglas M. Foley (VSB No. 34364)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                             Counsel for Debtors and Debtors
                             in Possession