IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., | Case No. 08-35653 |
| | *et al.*, | Chapter 11 |
| | Debtors. | Jointly Administered |

## <u>MEMORANDUM OPINION</u>

Before the Court is the Debtors' motion for summary judgment (the "Summary Judgment Motion") on the Debtors' Nineteenth and Thirty-Third Omnibus Objections with respect to certain reclamation claims asserted by LumiSource, Inc., Cisco-Linksys LLC, Paramount Home Entertainment Inc., Seagate Technology LLC, Denon Electronics (USA) LLC, Plantronics Inc., and Boston Acoustics, Inc. (collectively, the "Respondents") pursuant to Rules 3007, 7056, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Respondents contend that their respective reclamation claims are either secured claims or claims entitled to priority under Bankruptcy Code § 546(c).  The Debtors maintain that the failure of Respondents to physically reclaim their goods immediately after the commencement of these Chapter 11 cases rendered their respective reclamation claims as pre-petition general unsecured non-priority claims as a matter of law.  Accordingly, the Debtors seek to have each of the reclamation claims identified in the Summary Judgment Motion reclassified from an administrative priority or secured claim to a pre-petition general unsecured, non-priority claim.  This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with

Bankruptcy Rule 7052 in support of the Court's entry of summary judgment in favor of the Debtors.[1]

## Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).  Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date").  Circuit City was a national retailer of consumer electronics.  As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico.  Respondents claim to have sold goods to Circuit City in the ordinary course of business during the 45-day period preceding the Petition Date and to have made timely Reclamation Demands for the return of those goods.

Prior to the Petition Date, certain of the Debtors, including Circuit City Stores, Inc. ("Circuit City"), had entered into a revolving credit facility (the "Pre-petition Credit Facility") with Bank of America, N.A., as agent.  The lenders under the Pre-petition Credit Facility (the

---

[1]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[2]   The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.  The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

"Pre-petition Lenders") had made advances under the Pre-petition Credit Facility that were secured by first priority liens on substantially all of the Debtors' assets. As of the Petition Date, approximately $898 million was outstanding under the Pre-petition Credit Facility. The Pre-petition Lenders' collateral included all of the Debtors' existing and after-acquired inventory as well as the proceeds thereof.

After filing their bankruptcy petitions, the Debtors sought and obtained authority to enter into a post-petition, debtor in possession, secured financing facility (the "DIP Financing Facility").[3] All obligations under the DIP Financing Facility were secured by substantially all of the Debtors' existing and after-acquired assets, including "inventory" and the proceeds thereof. The Debtors used the DIP Financing Facility to repay all of the outstanding indebtedness under the Pre-petition Credit Facility as well as to finance their ongoing post-petition operations.[4]

Soon after the Petition Date, the Debtors filed a motion seeking entry of an order establishing procedures for filing reclamation demands. On November 13, 2008, the Court entered an Order[5] (the "Reclamation Procedures Order") that required claimants seeking to reclaim goods to file reclamation demands no later than 20 days following the Petition Date. Each claimant was required to include with its reclamation demand the information required by Bankruptcy Code § 546(c). The Order expressly provided that:

> Nothing in this Order or the above procedures is intended to prohibit, hinder, or delay any Reclamation Claimant from asserting or prosecuting any of its rights to seek to reclaim goods provided to the Debtors, or affect, alter, diminish,

---

[3]  The lenders under the DIP Financing Facility are hereinafter referred to as the "DIP Lenders."

[4]  Circuit City continued to manage and operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

[5]  Interim Order Under Bankruptcy Code Sections 105(a), 362, 503(b), 507(a), 546(c), and 546(h) (I) Granting Administrative Expense Status to Obligations from Postpetition Delivery of Goods; (II) Authorizing Payment of Expenses in the Ordinary Course of Business; (III) Authorizing Debtors to Return Goods; and (IV) Establishing Procedures for Reclamation Demands, entered on November 13, 2008 [Docket No. 133].

extinguish, or expand the rights or interest, if any, to recover goods (or proceeds thereof) sought to be reclaimed.

Reclamation Procedures Order at 6.

The Reclamation Procedures Order required the Debtors to advise each reclamation claimant of the allowed amount, if any, of its reclamation demand on or before March 10, 2009. If no such notice was given, then the Debtors were deemed to have rejected the reclamation demand.  As none of the Respondents were sent a notice setting forth an allowed reclamation amount, all of their demands were deemed rejected by the Debtors.

On January 16, 2009, the Debtors abandoned their efforts to reorganize, and the Court authorized the Debtors to conduct going out of business sales at all of the Debtors' remaining stores (the "GOB Sales").  None of the Respondents objected to the store closing GOB sales. Respondents never commenced an adversary proceeding, never filed a motion for relief from the automatic stay, or took any other action in pursuit of their Reclamation Demands.  The store closing GOB sales were completed as of March 8, 2009.  On September 29, 2009, the Debtors and the Official Committee of Unsecured Creditors[6] filed their First Amended Joint Plan of Liquidation (the "Plan").  A disclosure statement[7] was approved by order entered September 24, 2009.  The confirmation hearing is currently scheduled for April 7, 2010.

### The Reclamation Claims

On November 13, 2008, LumiSource, Inc. ("LumiSource") sent a letter to the Debtors' claims and noticing agent, Kurtzman Carson Consultants ("KCC"), demanding the return of goods it had sold to Circuit City in the amount of $235,200 (the "LumiSource Goods").

---

[6]  An Official Committee of Unsecured Creditors was appointed by the United States Trustee on November 12, 2008, pursuant to 11 U.S.C. § 1102(a).

[7]  Acceptance of a plan may not be solicited until a written disclosure statement containing adequate information has been approved by the court.  11 U.S.C. § 1125.

LumiSource alleged that the LumiSource Goods were "goods" within the meaning of the Uniform Commercial Code (the "UCC") that were received by Circuit City within 45 days prior to the Petition Date.  As such, LumiSource demanded return of the LumiSource Goods (the "LumiSource Reclamation Demand").  On January 29, 2009, LumiSource filed a claim in the amount of $392,000, of which LumiSource asserted $235,200 was entitled to secured claim status pursuant to Bankruptcy Code § 546(c) (the "LumiSource Reclamation Claim").   The remaining $156,800 was classified on the proof of claim form as a general unsecured claim.

On November 10, 2008, Cisco-Linksys LLC ("Cisco-Linksys") sent a letter to Debtors' counsel, demanding the return of goods it had sold to Circuit City in the amount of $7,453,957.38 (the "Cisco-Linksys Goods").   Cisco-Linksys alleged that the Cisco-Linksys Goods were "goods" within the meaning of the UCC that were shipped to Circuit City within 53 days of the Petition Date.  As such, Cisco-Linksys demanded return of the Cisco-Linksys Goods (the "Cisco-Linksys Reclamation Demand").  On January 21, 2009, Cisco-Linksys filed a claim in the amount of $8,287,653.95, of which Cisco-Linksys asserted $7,453,957.38 was entitled to secured or priority claim status pursuant to Bankruptcy Code §§ 546(c) and 507(a)(2) (the "Cisco Linksys Reclamation Claim").  The remaining $833,696.57 was classified on the proof of claim form as a general unsecured claim.

On November 12, 2008, Paramount Home Entertainment Inc. ("Paramount") sent a letter to the Debtors and Debtors' counsel, demanding the return of goods it sold to the Debtors in the amount of $11,600,840.04 (the "Paramount Goods").  Paramount alleged that it was entitled to reclaim the Paramount Goods pursuant to the UCC and the California Commercial Code.  As such, Paramount demanded return of the Paramount Goods (the "Paramount Reclamation Demand").  On December 19, 2008, Paramount filed a claim in the amount of $3,201,013.37 that

asserted priority status pursuant to Bankruptcy Code § 503(b)(9).   On January 30, 2009, Paramount filed a claim in the amount of $16,497,463.67, of which Paramount asserted that $11,600,840.04 was entitled to priority status pursuant to Bankruptcy Code §§ 546(c) and 507(a)(2) (the "Paramount Reclamation Claim") and $3,201,013.37 was entitled to priority claim status pursuant to Bankruptcy Code §§ 503(b)(9) and 507(a)(2).[8]   The remaining $1,695,610.26 was classified as a general unsecured claim.

On November 10, 2008, Seagate Technology LLC ("Seagate") sent a letter to Debtors' counsel, demanding the return of goods it had sold to the Debtors in the amount of $130,920 (the "Seagate Goods").   Seagate alleged that the Seagate Goods were "goods" within the meaning of the UCC that were the subject of invoices dated within 50 days of the Petition Date.   As such, Seagate demanded return of the Seagate Goods (the "Seagate Reclamation Demand").   On January 30, 2009, Seagate filed a claim in the amount of $1,765,132.70, of which Seagate asserted $130,920 was entitled to secured or priority claim status pursuant to Bankruptcy Code §§ 546(c) and 507(a)(2) (the "Seagate Reclamation Claim"), and $796,502.70 was entitled to administrative expense priority status pursuant to Bankruptcy Code § 503(b)(1).   The remaining $864,710.05 was classified as a general unsecured claim.

On November 10, 2008, Denon Electronics (USA) LLC ("Denon") sent a letter to the Debtors' Chief Financial Officer demanding the return of goods it had sold to the Debtors in the amount of $589,396.62 (the "Denon Goods").   Denon alleged that the Denon Goods were received by the Debtors within 45 days of the Petition Date.   As such, Denon demanded return of the Denon Goods (the "Denon Reclamation Demand").   On December 19, 2008, Denon filed a

---

[8]  The § 503(b)(9) administrative claim asserted by Paramount is not at issue in the Summary Judgment Motion.

claim in the amount of $589,396.62, for which it asserted a secured or priority claim status pursuant to Bankruptcy Code § 546(c) (the "Denon Reclamation Claim").

On November 10, 2008, Plantronics Inc. ("Plantronics") sent a letter to the Debtors and Debtors' counsel, demanding the return of goods it had sold to Circuit City in the amount of $21,594, which was later reduced to $20,062.40 (the "Plantronics Goods"). Plantronics alleged that the Plantronics Goods were "goods" within the meaning of the UCC that were received by Circuit City prior to the Petition Date. As such, Plantronics demanded return of the Plantronics Goods (the "Plantronics Reclamation Demand"). On January 21, 2009, Plantronics filed a claim in the amount of $376,818.62, of which Plantronics asserted $20,062.40 was entitled to secured or priority claim status pursuant to Bankruptcy Code §§ 546(c) and 507(a)(2) (the "Plantronics Reclamation Claim") and $296,365 was entitled to priority claim status under Bankruptcy Code § 507(a)(2). The remaining $60,391.22 was classified on the proof of claim form as a general unsecured claim.

On November 10, 2008, Boston Acoustics, Inc. ("Boston Acoustics") sent a letter to the Debtors' Chief Financial Officer demanding the return of goods it had sold to Circuit City in the amount of $187,454.84 (the "Boston Acoustics Goods").[9] Boston Acoustics alleged that the Boston Acoustics Goods were received by Circuit City within 45 days prior to the Petition Date. As such, Boston Acoustics demanded return of the Boston Acoustics Goods (the "Boston Acoustics Reclamation Demand").[10] On January 30, 2009, Boston Acoustics filed a claim in the

---

[9]  Collectively, the LumiSource Goods, the Cisco-Linksys Goods, the Paramount Goods, the Seagate Goods, the Denon Goods, the Snell Acoustics Goods, the Plantronic Goods, and the Boston Acoustics Goods are herein referred to as the "Reclamation Goods."

[10]  Collectively, the LumiSource Reclamation Demand, the Cisco-Linksys Reclamation Demand, the Paramount Reclamation Demand, the Seagate Reclamation Demand, the Denon Reclamation Demand, the Snell Acoustics Reclamation Demand, the Plantronic Reclamation Demand, and the Boston Acoustics Reclamation Demand are herein referred to as the "Reclamation Demands."

amount of $503,373.29 asserting $187,454.84 was entitled to administrative priority claim status pursuant to Bankruptcy Code § 546(c) (the "Boston Acoustics Reclamation Claim").[11]   The remaining $315,918.15 was classified on the proof of claim form as a general unsecured claim.

On June 22, 2009, the Debtors filed the Debtors' Nineteenth Omnibus Objection to Claims (Reclassification of Certain Misclassified Claims to General Unsecured, Non-Priority Claims) (the "Nineteenth Omnibus Objection") [Docket No. 3703].[12]   By the Nineteenth Omnibus Objection, the Debtors sought to reclassify certain filed claims, including six of the Reclamation Claims, to pre-petition general unsecured, non-priority claims.  Responses to the Nineteenth Omnibus Objection were filed by, among others, LumiSource, [Docket No. 4122], Cisco-Linksys [Docket No. 4120], Paramount [Docket No. 4154], Seagate [Docket No. 4115], Denon [Docket No. 4148], and Plantronics [Docket No. 4118].

On August 20, 2009, the Debtors filed the Debtors' Thirty-Third Omnibus Objection to Claims (Modification and/or Reclassification of Certain Claims) (the "Thirty-Third Omnibus Objection") [Docket No. 4590] (The Nineteenth Omnibus Objection and the Thirty-Third Omnibus Objection are herein referred to as the "Objections").  By the Thirty-Third Omnibus Objection, the Debtors sought to reclassify certain claims, including the Boston Acoustics Reclamation Claim, to pre-petition general unsecured, non-priority claims.  Boston Acoustics filed a response to the Thirty-Third Omnibus Objection [Docket No. 4850].

---

[11]   Collectively, the LumiSource Reclamation Claim, the Cisco-Linksys Reclamation Claim, the Paramount Reclamation Claim, the Seagate Reclamation Claim, the Denon Reclamation Claim, the Snell Acoustics Reclamation Claim, the Plantronic Reclamation Claim, and the Boston Acoustics Reclamation Claim are herein referred to as the "Reclamation Claims".

[12]   The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount under § 507 of the Bankruptcy Code.

## Standard for Summary Judgment

The Debtors assert that summary judgment is appropriate in these contested matters because, they maintain, there is no relevant dispute as to any material fact regarding their Objections to the Reclamation Claims.[13]    The standard for entry of summary judgment under Bankruptcy Rule 7056 is well established.    Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(c) (as incorporated by Fed. R. Bankr. P. 7056). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact.    *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    In determining whether this showing has been made, the court must assess the evidence in the light most favorable to the party opposing the motion.    *See, e.g.*, *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).    Summary judgment is appropriate only where there are no "disputes over facts that might affect the outcome of the suit," not mere peripheral or irrelevant facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party demonstrates that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to produce evidence to demonstrate that there is indeed a genuine issue for trial.    Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations

---

[13]    The Respondents filed proofs of their Reclamation Claims pursuant to § 501 of the Bankruptcy Code.  A proof of claim filed under § 501 of the Bankruptcy Code is deemed allowed unless the Debtors, or some other party in interest, objects.  *See* 11 U.S.C. § 502.  The Debtors filed their Objections to the Reclamation Claims pursuant to Bankruptcy Rule 3007(a).  Once the responses were filed to the Objections, the Objections to the Reclamation Claims became contested matters governed by Bankruptcy Rule 9014.  *In re IBIS Corp.,* 272 B.R. 883, 893 (Bankr. E.D. Va. 2001) ("Objections to proofs of claims are contested matters governed by Fed. R. Bankr. P. 9014."); *see also In re Fleming,* 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter, and Fed. R. Bankr. P. 9014 applies.").  As such, certain rules, under part VII of the Federal Rules of Bankruptcy Procedure became applicable, including Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure.  *See id.*; *see also* Fed. R. Bankr. P. 7056.

or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 661 (4th Cir. 1992).  Summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case" when the requirements of Rule 56 are met.  *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1).

The Court concludes that the Debtors are entitled to summary judgment on their Objections to the Reclamation Claims filed by Respondents as "there is little dispute as to actual facts and no dispute of material facts relevant to the determination of the causes of action," even though "each side in its submissions has presented a different characterization of the facts."  *In re Conn. Pizza, Inc.*, 193 B.R. 217, 220 (Bankr. D. Md. 1996); *see also Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1124 (4th Cir. 1993) (holding that summary judgment is appropriately granted where there are "no relevant disputes of material fact").

## Analysis

In its present form, the plain language of Bankruptcy Code § 546(c) provides no statutory predicate for the relief requested by Respondents.  Bankruptcy Code s§ 546(c) provides:

> Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods--
>
> (A) not later than 45 days after the date of receipt of such goods by the debtor; or

      (B) not later than 20 days after the date of commencement of the case, if
the 45-day period expires after the commencement of the case.

11 U.S.C. § 546(c) (2009).

The statute does not grant Respondents either administrative expense priority or secured

lien status on account of their Reclamation Claims.  *See In re First Magnus Fin. Corp.,* 2008 WL

5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008).  Section 546 of the Bankruptcy Code is not a

remedial statute.  It simply subordinates the avoiding powers of a trustee[14] under §§ 544(a), 545,

547, and 549 of the Bankruptcy Code to the right of a seller to reclaim its goods under certain

conditions.  Problematically, that "right of a seller . . . to reclaim [its] goods" is nowhere defined

or fleshed out in the Bankruptcy Code.[15]

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act

of 2005,[16] it was well established that Bankruptcy Code § 546(c) did not create a federal right to

reclamation.  *See In re Hartz Foods, Inc.,* 264 B.R. 33, 35-36 (Bankr. D. Minn. 2001) ("Section

546(c) does not create any right to reclamation for vendors of goods to insolvent buyers; it

merely recognizes such a right exists to a limited extent in a bankruptcy case, provided such right

exists either under common law or under statute other than the Bankruptcy Code."); s*ee also

Allegiance Healthcare Corp. v. Primary Health Systems, Inc. (In re Primary Health Systems,

Inc.)*, 258 B.R. 111, 114 (Bankr. D. Del. 2001) ("Section 546(c) does not create an independent

right of reclamation.").  One of the significant changes that was made to former Bankruptcy

---

[14]  In a Chapter 11 case, the Debtor in Possession has all the rights and powers of a trustee other than the right to
compensation.  *See* 11 U.S.C. § 1107.

[15]  The Court is mindful that "[w]here words are employed in a statute which had at the time a well-known meaning
at common law or in the law of this country, they are presumed to have been used in that sense."  *Standard Oil Co.
of N.J. v. United States,* 221 U.S. 1, 59 (1911).

[16]  In 2005 Congress made extensive changes to the Bankruptcy Code by enacting the Bankruptcy Abuse Prevention
and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005).

Code § 546(c) by BAPCPA was the deletion of the phrase "the rights and powers of a trustee . . . are subject to any statutory or common-law right of a seller of goods" and the insertion in its stead of the language "the rights and powers of a trustee . . . are subject to the right of a seller of goods." If the right to reclaim goods is not a statutory or common law right, then from where does this right derive? Some commentators have suggested that Congress meant to create an independent right in the federal law by way of this change. *See, e.g.,* 4 White & Summers, *Uniform Commercial Code* § 32-11 (6th ed. 2009) ("[I]f this section does not create a freestanding right in federal law, then it is difficult to see what Congress had in mind when it deleted 'any statutory or common-law' from 546."). The court in *In re Dana Corporation* rejected this view. After extensive analysis of the language used, the context of § 546(c), and the policies inherent in the Bankruptcy Code, the Bankruptcy Court for the Southern District of New York concluded that BAPCPA did not create a new federal right of reclamation. *In re Dana Corporation,* 367 B.R. 409, 416-18 (Bankr. S.D.N.Y. 2007). This Court finds the *In re Dana Corporation* analysis persuasive and concludes that there still exists no federal right to reclamation post-BAPCPA.[17]

Reclamation is a state law remedy that remains available to sellers in a bankruptcy case, subject to the additional provisions and conditions set forth in § 546(c). *In re Dana Corporation,* 367 B.R. at 416-18; *In re R.F. Cunningham & Co., Inc.*, 2006 WL 3791329, at *1 (Bankr. E.D.N.Y. Dec. 21, 2006). In order to prevail, Respondents must be able to prove that they have a valid right of reclamation under state law. *See Galey & Lord Inc. v. Arley Corp. (In re Arlco,*

---

[17] Even if the Court were to conclude that § 546(c) does create an independent freestanding federal right, the Court would still be compelled to look to state law for the interpretation and application of the term "reclaim," as it is not defined in the Bankruptcy Code. *See In re Price*, 562 F.3d 618, 624-25 (4th Cir. 2009) (applying North Carolina law, which had adopted the UCC, to define "purchase money security interest" in § 1325(a) of the Bankruptcy Code); *see also In re Circuit City Stores, Inc.*, 416 B.R. 531, 535 (Bankr. E.D. Va. 2009) ("The Fourth Circuit has instructed that state law should be used to define terms in the Bankruptcy Code not otherwise defined by Congress."). Thus, the ultimate result would remain the same.

*Inc.*), 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999) ("Section 546(c) . . . merely affords the seller

an opportunity, with certain limitations, to avail itself of any reclamation right it may have under

nonbankruptcy law."); *see also In re Victory Markets*, 212 B.R. 738, 741 (Bankr. N.D.N.Y.

1997).

The right to reclaim goods is codified in most states in § 2-702 of the UCC.  That section

provides:

> (1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (Section 2-705).

> (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

> (3)    The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2-403). Successful reclamation of goods excludes all other remedies with respect to them.

A seller's right to reclaim goods under UCC § 2-702 is limited to the right to assert a

claim for the return of the specific goods.  UCC § 2-702 does not grant any right of possession.

"The reclamation authorized by UCC § 2-702 is to be distinguished from repossession by a

secured creditor under Article 9. . . .  The right of reclamation has none of the attributes of the

right to repossess. . . ." 4A *Anderson on the Uniform Commercial Code* § 2-702:47 (3d ed.

2009).  A seller's right to reclaim is the right to rescind a transaction with an insolvent buyer.

The right to reclamation under UCC § 2-702 does not give rise to a lien or security interest in the

goods sold.  *See Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.*), 239 B.R. 261, 274 (Bankr.

S.D.N.Y. 1999) (noting that the claimant's right to reclamation did not make him a secured creditor).

The right of reclamation is not self-effectuating.  *See In re Waccamaw's Homeplace,* 298 B.R. 233, 238 (Bankr. D. Del. 2003); *Tate Cheese Co. v. Crofton & Sons, Inc.,* 139 B.R. 567, 569 (Bankr. M.D. Fla. 1992) ("Reclamation is not a self-executing remedy . . . [Plaintiff] failed to assert diligently its right of reclamation and, consequently, has lost that right.").  The reclamation seller must take some affirmative action to pursue its claim.  *Id.*  The reclamation seller must be able to identify its goods which must remain in the possession of the purchaser. *See, e.g., In re Coupon Carriers Co.,* 77 B.R. 650, 651-52 (N.D. Ill. 1987); *In re Flagstaff Foodservice Corp.,* 56 B.R. 910, 914-15 (Bankr. S.D.N.Y. 1986); *Matter of Bensar Co., Inc.,* 36 B.R. 699, 701-02 (Bankr. S.D. Ohio 1984); *In re Coast Trading Co.,* 31 B.R. 667, 670 (Bankr. D. Or. 1982).  The failure to take appropriate action to assert the right may result in the loss of the right.  *In re Waccamaw's Homeplace*, 298 B.R. at 238*; In re First Magnus Fin. Corp.,* 2008 WL 5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008).

As one of the elements that must be established to assert a claim for reclamation is the insolvency of the purchaser, many reclamation demands arise in the context of a bankruptcy case.  Section 362 of the Bankruptcy Code prohibits a creditor from taking any action to pursue reclamation of its goods when a bankruptcy case is commenced.  *See, e.g., In re Rea Keech Buick, Inc.*, 139 B.R. 625, 627 (Bankr. D. Md. 1992) (stating that the state replevin action to pursue the movant's reclamation right under state law was stayed by 11 U.S.C. § 362 as of the chapter 11 petition date).  Accordingly, under the present form of Bankruptcy Code § 546(c), enforcement of a reclamation demand in a bankruptcy case would require, at a minimum, a motion for relief from the automatic stay.

Prior to BAPCPA, if a court denied a seller a valid right to reclaim its goods in a bankruptcy case, the court was required to provide the seller with an administrative claim or a junior lien.    Among the many amendments made by BAPCPA, Congress deleted former subsection (c)(2) from Bankruptcy Code § 546 and replaced that subsection with an entirely new provision.[18]   As a result, Bankruptcy Code § 546(c) no longer expressly provides that the court must grant a reclamation seller an administrative claim or junior lien if it prevents the claimant from reclaiming its goods.[19]

In making these changes to Bankruptcy Code § 546(c), Congress appears to have limited a reclamation seller's right to an administrative expense claim to that provided under Bankruptcy Code § 503(b)(9).   *See, e.g., U.S. Trustee v. Equip. Servs. (In Re Equip. Servs.),* 290 F.3d 739, 745 (4th Cir. 2002) (holding that when words were deleted from the Bankruptcy Code, the Court "must presume that Congress intended what it said when it . . . delete[d]" the words).   The Reclamation Claims asserted by the Respondents are simply not entitled to an administrative expense priority beyond that to which they may be entitled under Bankruptcy Code § 503(b)(9).

Respondents rely heavily on a number of pre-BAPCPA cases, such as *Phar-Mor v. McKesson Corp. (In re Phar-Mor, Inc.),* 534 F.3d 502 (6th Cir. 2008) and *In re Georgetown Steel Co.,* 318 B.R. 340 (Bankr. D.S.C. 2004), in arguing that reclaiming creditors are entitled to administrative expense priority.   These cases, though, do not support the proposition that the

---

[18]  *Compare* 11 U.S.C. § 546(c)(2) (2009) ("If the seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)"), *with* 11 U.S.C. § 546(c)(2) (2004) ("the court may deny reclamation . . . only if the court — (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or (B) secures such claim by a lien.").

[19]  The amendments made to Bankruptcy Code § 546(c)(2) by BAPCPA eliminated the entitlement of a reclaiming seller to an administrative expense claim or a junior lien in the event that the court denied its valid reclamation claim.  Instead, Congress reserved administrative expense treatment only for a reclamation claim asserted by a seller who "qualifies for [administrative expense status] under § 503(b)(9)."  *See* 11 U.S.C. § 546(c)(2); *see also In re First Magnus Fin. Corp.,* 2008 WL 5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008) ("The statute does not give such a seller/creditor an administrative claim, except to the extent it qualifies for one under § 503(b)(9).").

court is required to grant an administrative expense priority or a junior lien under the *current version* of the statute. Respondents are not entitled to administrative expense priority unless they can establish a benefit to the estate that would qualify as an administrative expense under § 503(b)(1) or unless they can establish the criteria that would qualify as an administrative expense under § 503(b)(9). *See In re First Magnus Fin. Corp.,* 2008 WL 5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008).

But even if *Phar-Mor v. McKesson Corp., In re Georgetown Steel Co.,* and the other cases cited by Respondents were relevant, the Court never denied Respondents' Reclamation Demands. That is because the Respondents never asserted them. The Court's Reclamation Procedures Order did not prevent the Respondents from pursuing their claims. To the contrary, the Reclamation Procedures Order provided that "[n]othing in this Order or in the above procedures is intended to prohibit, hinder, or delay any Reclamation Claimant from asserting or prosecuting any of its rights to seek to reclaim goods. . . ." Reclamation Procedures Order at 6. Respondents were free to seek reclamation of their goods at any time.[20] They simply failed to do so. A creditor seeking to reclaim goods must do more than submit a written demand. *Id; In re McLouth Steel Prods. Corp.,* 213 B.R. 978, 987 (Bankr. E.D. Mich. 1997) ("[T]he burden is on the reclamation claimant to further diligently pursue its claim by, for example, filing a motion or complaint for reclamation in bankruptcy court for the goods, or commencing an adversary proceeding"); *Tate Cheese Co. v. Crofton & Sons, Inc.,* 139 B.R. 567, 569 (Bankr. M.D. Fla. 1992) (holding that a creditor's failure to diligently pursue its reclamation demand through appropriate judicial channels defeated its right to reclaim goods); *Islat Klondike Co. v. Sunstate*

---

[20] Debtors' counsel made this point clear during the first and second day hearings in these cases when he stated on the record that, notwithstanding the entry of the Reclamation Procedures Order, creditors were free to pursue their reclamation rights. *See* Transcript of Hearing on November 10, 2008, at 84 (Debtors' counsel stating that if reclamation claimants want "to get [a] TRO and injunction in an adversary proceeding . . . [the proposed Reclamation Procedures Order] doesn't preclude them from doing it").

*Dairy & Food Prods. Co.*, 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992) (holding that to demonstrate a right of reclamation, a creditor must show "diligent assertion of the right of reclamation"). *See also In re Adventist Living Ctrs., Inc.*, 52 F.3d 159, 165 (7th Cir. 1995) (denying administrative claim where debtor disregarded agreement with reclamation claimant to segregate goods and grant administrative claim for value because the reclamation claimant should have acted sooner to enforce its rights); *In re Waccamaw's HomePlace*, 298 B.R. 233, 238-39 (Bankr. D. Del. 2003) (denying administrative claim to reclamation claimant where, "after making its Reclamation Demand [reclamation claimant] inexplicably took no action to protect or enforce its rights with respect to the Reclamation Goods," and holding that it was "incumbent on [reclamation claimant] to exercise self help or seek judicial intervention").

Certain of the Respondents argue that because they complied with the Reclamation Procedures Order, which they assert required them to "go beyond the statutory requirements for establishing the right to reclaim," they were not required to take these additional steps. But as Debtors point out in their reply, this argument fails because the Reclamation Procedures Order only required Respondents to comply with applicable law. The Court is hard put, in any event, to find how its requiring Respondents to comply with one aspect of the law would excuse Respondents' failure to comply with other aspects of the law. Accordingly, Respondents failure to diligently pursue their Reclamation Claims warrants denial of their Reclamation Claims as a matter of law.

The most likely reason that Respondents did not pursue their Reclamation Claims at the commencement of these cases is because they realized it would have been futile to do so given the facts and circumstances that surrounded their Reclamation Claims at the time. At the commencement of the cases, the Pre-petition Lenders had a floating blanket lien on all of the

Debtors' assets, including inventory.[21]    Section 2-702 of the UCC makes a seller's right of reclamation subject to the rights of other third parties.    Specifically, a seller's right to reclaim under subsection (2) of § 2-702 of the UCC is subject to the rights of a good faith purchaser.    By definition, a secured creditor with a floating blanket lien on inventory is a "purchaser" under the UCC.[22]    Consistent therewith, BAPCPA added additional language to § 546(c) confirming that reclamation rights in bankruptcy are "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof."    11 U.S.C. § 546(c)(1).    Accordingly, the Reclamation Goods sold by the Respondents to the Debtors became part of the Pre-petition Lenders' collateral and were not reclaimable at that time.    The prior liens of the Pre-petition Lenders rendered the Reclamation Claims valueless at the commencement of these cases as anything other than general unsecured, non-priority claims.    *In re Dana Corporation,* 367 B.R. 409, 421 (Bankr. S.D.N.Y. 2007).

The problem that Respondents encountered with the pre-existing floating blanket lien of the Pre-petition Lenders was compounded when they allowed the pre-petition debt to be refinanced post-petition without objection.    A seller's right to reclaim under subsection (2) of § 2-702 of the UCC is subject to the rights of a buyer in ordinary course.    After receipt of due and proper notice of the Debtors' intention to "use" the Reclamation Goods by further

---

[21]    A creditor establishes a floating lien by including an after-acquired property clause in its security agreement.    *See* UCC 9-204, cmt. 1.    The floating lien gave the Pre-petition Lenders a security interest in the Debtors' future inventory.

[22]    The UCC defines the term "purchaser" in section 1-201(33) of the UCC as one who takes by purchase.    Section 1-201(32) defines "purchase" as taking by any voluntary transaction creating an interest in the property.    There really is no dispute over the fact that an Article 9 secured creditor falls within the definition of "purchaser".    *See, e.g., In re Bensar Co., Inc.,* 36 B.R. 699, 703 (Bankr. S.D. Ohio 1984) (holding that secured creditor qualifies as purchaser); *In re Wathen's Elevators, Inc.,* 32 B.R. 912, 919-920 (Bankr. W.D. Ky. 1983) (same); *In re Bowman,* 25 U.C.C. REP. SERV. 738, 742-44 (Bankr. N.D. Ga. 1978) (same); *In re American Food Purveyors,* 17 U.C.C. REP. SERV. 436, 441 (N.D. Ga. 1974) (conceding that Code definition of purchaser is broad enough to include Article 9 secured creditor); Quinn, *Uniform Commercial Code Commentary and Law Digest* § 2-337 (Cum. Supp. No. 2 1985)**.**

encumbering them,[23] the Respondents did not object to the approval of the post-petition DIP

Financing Facility.[24]  To the extent that the Respondents had any interest in the Reclamation

Goods prior to the time that the Debtors entered into the DIP Financing Facility, that interest was

extinguished as a result of that refinancing.[25]  The problem Respondents had with enforcing their

Reclamation Claims early in these cases was further exacerbated when the Respondents allowed,

again without objection, the Debtors' entire inventory to be sold in connection with the store

closing GOB Sales.  After due and proper notice thereof, none of the Respondents objected to the

liquidation of all the Debtors' remaining inventory, including any remaining Reclamation Goods,

pursuant to § 363 of the Bankruptcy Code.[26]  After the store closing GOB Sales were concluded

in early March of 2009, the Debtors had no Reclamation Goods left in their possession.  The

Reclamation Goods had all been sold to buyers in the ordinary course or to other good faith

purchasers.

Now that the Debtors' entire inventory has been liquidated and the prior liens of the Pre-

petition Lenders and the DIP Lenders have been satisfied, the Respondents have come to this

Court seeking to resuscitate belatedly their Reclamation Claims.   They argue that their

---

[23]  Section 546(c) of the Bankruptcy Code does not make a Trustee's power to "use, sell or lease . . . property of the
estate" under 11 U.S.C. § 363(b) subject to the right of a seller to reclaim its goods.  To the extent that the
Reclamation Claimants contended that they had an interest in the Reclamation Goods at the commencement of these
cases, they should have requested the Court to "prohibit or condition such use" of the Reclamation Goods by the
Debtors under 11 U.S.C. § 363(e).  At a minimum, the Reclamation Claimants should have objected to the proposed
use.

[24]  *See* Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 And Rules 2002, 4001 and 9014 of
the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Postpetition Secured
Indebtedness with Priority Over all Secured Indebtedness and with Administrative Superpriority, (2) Granting liens,
(3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing for
Adequate Protection and (4) Modifying the Automatic Stay, entered on Dec. 23, 2008 [Docket No. 1262].

[25]  The liens granted to the DIP Lenders under the DIP Financing Agreement were free and clear of all interests.

[26]  *See* Order Approving Agency Agreement, Store Closing Sales and Related Relief [Docket No. 1634] (authorizing
the Debtors to enter into an agency agreement with a joint venture as agent and authorizing the Agent to conduct
going-out-of-business sales of the Debtors' inventory at the Debtors' remaining stores).

Reclamation Claims somehow survived by attaching as liens to the proceeds of their Reclamation Goods.  In the alternative, they contend that the Court failed to adequately protect some interest that the Respondents claim they had in the Reclamation Goods and, therefore, now they should be entitled to an administrative claim.  The Respondents argue that, at a minimum, summary judgment should be denied in order to permit them the opportunity to conduct limited discovery in an attempt to trace the proceeds of their Reclamation Goods.  But this argument badly distorts the right that the Respondents seek to redress.  A right to reclamation does not give rise to a lien on the goods in question.  It only gives rise, in the first instance, to a right to assert a claim against the Debtors for the return of any identifiable Reclamation Goods that might have remained in the possession of the Debtors at the time of the Reclamation Demands.  The right does not extend to any proceeds of the Reclamation Goods sold to buyers in the ordinary course or to other good faith purchasers.

Under state law, reclamation is an *in rem* remedy that provides a right to reclaim only the goods themselves.  It does not provide a right to pursue the proceeds from the resale of those goods.  UCC § 2-702 provides, in pertinent part, that "[w]here the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand . . . ."  UCC § 2-702.  The only remedy provided to Respondents under the plain language of the UCC was the right to reclaim the Reclamation Goods at issue.  *See In re Coast Trading Co.,* 31 B.R. at 669 ("Section 546(c) gives a seller only a right to reclaim the goods.").

Given the statutory language, most courts have concluded that the right of reclamation does not extend to proceeds.[27]  Indeed, the majority of courts that have considered the issue have

---

[27]  *See, e.g., Collingwood Grain Inc. v. Coast Trading Co. (In re Coast Trading Co. Inc.),* 744 F.2d 686, 691 (9th Cir. 1984) (holding that under Colorado, Oregon, Kansas or Arizona law, a reclaiming seller may not recover the proceeds of the resale of the goods); *Monfort Inc. v. Kunkel (In re Morken),* 182 B.R. 1007, 1017 (Bankr. D. Minn. 1995) (same under Minnesota law); *In re Mayer Pollock Steel Corp.,* 157 B.R. 952, 959 (Bankr. E.D. Pa. 1993)

concluded that the right of reclamation, as provided by state law and made applicable in bankruptcy by section 546(c), provides only an *in rem* right to reclaim goods.  *See, e.g., In re Dana Corp.*, 367 B.R. at 419 (noting that reclamation is an in rem remedy); *In re Pluma, Inc.*, 2000 WL 33673751, at *3 (Bankr. M.D.N.C. 2000) (same); *Tate Cheese Co. v. Crofton & Sons*, 139 B.R. at 569 (same); *Action Indus., Inc. v. Dixie Enters., Inc.*, 22 B.R. 855, 859 (Bankr. S.D. Ohio 1982) (same).

But even  if the law of some state were to provide a reclaiming creditor with such a right to receive the proceeds from a sale of its goods, that right would not be enforceable under the Bankruptcy Code.  That is because the plain language of § 546(c) grants the reclaiming seller the right to reclaim only the goods, not the "goods or the proceeds thereof."  *See* 11 U.S.C. § 546(c) (referring only to the "right of a seller of goods that has sold goods to the debtor . . . to reclaim such goods . . .").  The omission of "proceeds" in this part of § 546(c) is significant.  Congress used the word "proceeds" earlier in the same sentence when it stated that the reclaiming creditor's rights were subject to "the prior rights of a holder of a security interest in such goods or the proceeds thereof . . . ."  11 U.S.C. § 546(c).  If Congress had intended to extend the right of reclamation to include a right to proceeds, it would have made that intent clear by including the term "proceeds," as it did elsewhere in § 546 and the Bankruptcy Code generally.  *See, e.g.,* 11 U.S.C. § 546(h) (referencing "proceeds"); 11 U.S.C. § 363(a) (providing that "'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, . . . and includes the proceeds . . ."); 11 U.S.C. § 541(a)(6) (providing that property of the estate

---

(same under Pennsylvania law); *Party Packing Corp. v. Rosenberg (In re Landy Beef Co.)*, 30 B.R. 19, 21 (Bankr. D. Mass. 1983) (same under Massachusetts law); *In re Kentucky Flush Door Corp.*, 28 B.R. 808, 810 (Bankr. W.D. Ky. 1983) (same under Kentucky law); *In re Deephouse Equip. Co.*, 22 B.R. 255, 258 (Bankr. D. Conn. 1982) (same under Connecticut law); *Action Indus., Inc. v. Dixie Enters., Inc.*, 22 B.R. 855, 859-60 (Bankr. S.D. Ohio 1982) (same under Ohio law); *see also In re Diversified Food Service Distributors, Inc.*, 130 B.R. 427, 430 (Bankr. S.D.N.Y. 1991) (same under U.C.C. § 2-702 generally).

includes proceeds of property of the estate).   Under principles of statutory construction, the

failure to expressly authorize a reclaiming creditor the right to obtain the proceeds of its goods is

fatal to Respondents' position.   *See, e.g., Kucana v. Holder, -- U.S. --,* 2010 WL 173368, *9 (Jan.

20, 2010) ("[W]here Congress includes particular language in one section of a statute but omits it

in another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion." (internal quotation and citation omitted)).

The Respondents cannot come into court at this late date arguing that they have some

claim against whatever proceeds may ultimately be traceable from their Reclamation Goods.  By

operation of § 2-702 of the UCC, their Reclamation Claims were inferior to the interests of

buyers in the ordinary course and other good faith purchasers.  These included not only the Pre-

petition Lenders and the DIP Lenders but also all of the buyers who participated at the store

closing GOB Sales.  Bankruptcy Code § 546 makes clear that the Respondents had, at most, a

right to assert an *in rem* action for the return of their Reclamation Goods.  They never had the

right to any proceeds thereof.  At this late point in the case, there is simply no basis to find that

the Respondents are entitled to an administrative claim or to a junior lien on account of causes of

action that they once may have possessed but never asserted.

## Conclusion

For the above reasons, the Debtors' Summary Judgment Motion will be granted.   The

Court concludes that Respondents' Reclamation Claims are not entitled to administrative expense

or secured lien status.  To the extent they are not otherwise entitled to priority under § 503(b)(9),

the Reclamation Claims shall be reclassified generally as non-priority, unsecured claims.

A separate order shall issue.


ENTERED: _____


_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE