Philip C. Baxa (VSB No. 22977)
MercerTrigiani LLP
16 South Second Street
Richmond, Virginia 23219
Tel: 804-782-8691
Fax: 804-644-0209
phil.baxa@mercertrigiani.com

        -and-

KING & SPALDING LLP
James A. Pardo, Jr.
Georgia Bar No. 561206
jpardo@kslaw.com
Thaddeus D. Wilson
Georgia Bar No. 596008
thadwilson@kslaw.com
1180 Peachtree Street
Atlanta, Georgia  30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5128

*Counsel for Mitsubishi Digital Electronics America, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| ----------------------------------------------X | | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **CIRCUIT CITY STORES, INC., et al.,** | : | **Case No. 08-35653** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |
| ----------------------------------------------X | | |

### MITSUBISHI DIGITAL ELECTRONICS AMERICA, INC.'S
### MOTION FOR LEAVE TO APPEAL AND INCORPORATED
### <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION</u>

Mitsubishi Digital Electronics America, Inc. ("Mitsubishi"), by and through its

undersigned counsel, and pursuant to 28 U.S.C. § 158(a)(3) and Rule 8003 of the Federal Rules

of Bankruptcy Procedure (the "Rules"), seeks entry of an Order granting it leave to appeal from

the Bankruptcy Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections

entered in the above-captioned case on January 6, 2010 (together with an accompanying

Memorandum Opinion, the "Order") [Docket Nos. 6228-1, 6228], and in support hereof states as follows:

<u>**INTRODUCTORY STATEMENT**</u>

Mitsubishi is a creditor in the above-styled bankruptcy case, with an outstanding claim in the amount of $15,258,077.65, which is comprised of a secured claim in the amount of $3,110,267.24, a pre-Petition Date non-priority general unsecured claim in the amount of $7,181,834.23 and a Section 503(b)(9)[1] claim in the amount of $4,965,976.18. The Debtors, through the 51st Omnibus Objection, objected to a portion of Mitsubishi's 503(b)(9) claim on the grounds that a portion of the claim should be "temporarily" disallowed under 11 U.S.C. § 502(d)[2] pending the outcome of a preference action against Mitsubishi that the Debtors have yet to bring.

Although Mitsubishi contends that the Order is final and appealable as of right pursuant to 28 U.S.C. § 158(a), Mitsubishi is filing this motion in an abundance of caution. *See A. H. Robins Co., Inc. v. Piccinin,* 788 F.2d. 994, 1009 (4th Cir. 1986). Although the Order purports only to "temporarily" disallow Mitsubishi's Section 503(b)(9) administrative expenses, the practical effect of the Order will be to permanently deprive Mitsubishi of its ability to collect these expenses. Through the Debtors' proposed Plan, the Debtors intend to make distributions to the holders of allowed administrative expenses without reserving funds for the holders of temporarily disallowed administrative expenses, such as Mitsubishi. *See* Plan (defined below) at Art. III, § 1. Thus, the Order, coupled with the proposed Plan, has the effect of reducing

---

[1]       Section 503(b)(9), enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, provides administrative expense priority to creditors for the value of goods delivered to a debtor within the twenty days prior to bankruptcy but for which the debtor did not pay. 11 U.S.C. § 503(b)(9).

[2]       Section 502(d) provides that "the court shall disallow any *claim* of any entity . . . that is a transferee of a transfer avoidable under section . . . 547. . . , unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . ." (emphasis added).

Mitsubishi's claim based solely on a naked preference allegation made by the Debtors without the Court ever adjudicating the preferential payments allegedly received by Mitsubishi.[3]

Outside of the bankruptcy context, a final order conclusively determines the rights of the parties in the litigation leaving nothing for the court to do. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (citations omitted); *Charter Co. v. Prudential Ins. Co. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (*quoting Catlin v. United States*, 324 U.S. 229, 233 (1945); 28  U.S.C. § 1291.  As shown below, the approach to finality in the bankruptcy context is less stringent.  Yet, under either standard, the Order undoubtedly disposed of a critical and discrete issue, *to wit*, whether Section 502(d) applies to Section 503(b)(9) administrative expenses.  The Order, thus, leaves nothing for the Court to do concerning that issue: a portion of Mitsubishi's 503(b)(9) claim is temporarily disallowed for some indefinite period of time until an alleged preference claim is resolved. *See Charter Co. v. Prudential Ins. Co. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (*quoting Catlin v. United States*, 324 U.S. 229, 233 (1945)).

The Fourth Circuit recognizes that the concept of finality is applied in a more pragmatic and less technical way in bankruptcy cases than in other situations. *A. H. Robins Co.*, 788 F.2d. at 1009 (citations omitted).  Because a discrete dispute between a debtor and its creditors over a claim or a priority, for example, is a separate "proceeding" in bankruptcy, orders resolving such disputes should be considered final. *Id.* (citations omitted).  Moreover, adopting a flexible approach to finality avoids the waste of time and resources resulting from the review of discrete issues *after* confirmation of a plan. *Id.* (citations omitted).

---

[3]    Mitsubishi asserts that such "alleged" preference claims are meritless as to it and that the Debtors have not provided the Court (or even Mitsubishi) with any evidence of such preferential payments.

Adopting this pragmatic approach to finality, the Second Circuit recently held that an order "temporarily" disallowing a Section 503(b) administrative expense claim pursuant to Section 502(d) was final for appellate purposes. *ASM Capital, LP v. Ames Dept. Stores, Inc. (In re Ames)*, 582 F.3d 422, 426-27 (2d Cir. 2009). The Court reasoned that the order had the practical effect of finality because the debtor would never collect the judgment from the creditor, and thus, the claim would never be allowed. *Id.*

The Debtors here are marching toward confirmation without making full payment on the effective date to Mitsubishi for its Section 503(b)(9) administrative expenses. *See* 11 U.S.C. § 1129(a)(9) (unless otherwise agreed, all administrative expenses must be paid on the effective date of the Plan). Because of the Debtors' resolve to proceed to confirmation prior to even commencing the alleged preference actions, without reserving any monies for distribution on account of the "temporarily" disallowed claims, Mitsubishi is deprived of the ability to collect the entirety of its administrative expenses, notwithstanding that the claim is validly owed. Mitsubishi's predicament, like that of other similarly situated creditors, evidences that the practical effect of the Order is to finally determine Mitsubishi's rights and strip Mitsubishi of its substantial administrative expense priority, forcing Mitsubishi to unfairly bear the risk that the Debtors actually will be able to pay Mitsubishi's entire administrative expense claim if and when an alleged preference claim against Mitsubishi is eventually resolved.

Notwithstanding that Mitsubishi is confident the Order meets the requirements of finality, Mitsubishi is filing this motion seeking leave to appeal out of an abundance of caution.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.       The Debtors[4] filed their voluntary petitions under Chapter 11 of the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code") on November 10, 2008.

2.       On November 12, 2008, the Court entered an Order Establishing Bar Date for

Filing Requests for Payment of Administrative Expense Claims under Bankruptcy Code Sections

105 and 503(B)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date

pursuant to Bankruptcy Rule 9007 (the "Administrative Expense Claim Order") [Dkt. No. 107],

which order required each creditor with a claim for administrative expenses under Code Section

503(b)(9) to file a "Section 503(b)(9) Claims Request" in a form attached as Exhibit B, or

alternatively, by motion, by the stated bar date. *See* Adm. Exp. Cl. Order, ¶¶ 2, 6 and Exh. B.

3.       On April 1, 2009, on the motion of the Debtors seeking a bar date and related

procedures for the filing of administrative expense claims including 503(b)(9) claims, this Court

entered an Order Establishing Omnibus Objection Procedures and Approving the Form and

Manner of Notice of Omnibus Objections (the "Omnibus Objection Procedure Order") [Dkt. No.

2881].

4.       Pursuant to the Administrative Expense Claim Order, Mitsubishi timely filed its

Section 503(b)(9) Claim Request for payment of its administrative expenses under Section

503(b)(9) for goods it provided to the Debtor, and received by the Debtor, within 20 days prior to

the Petition Date (the "503(b)(9) Claim").  The 503(b)(9) Claim asserted an administrative

---

[4]       The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux
International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), PRAHS,
Inc. (n/a), XS Stuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC
(3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250
Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive,
Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

priority claim against the Debtors in the amount of $4,965,976.18.  Kurtzman Carson

Consultants LLC docketed the 503(b)(9) Claim as Claim No. 132.

6.    5.    The Debtors filed their First Amended Joint Plan of Liquidation (the "Plan") on

September 29, 2009 [Dkt. No. 5124].  The Plan is currently scheduled for a confirmation hearing

on April 6, 2010.

6.    On October 13, 2009, the Debtors filed their (I) Fifty-First Omnibus Objection to

Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing

on any Response Proceed as a Status Conference [Dkt. No. 5214] (the "51st Omnibus

Objection"), with a Brief in Support thereof [Dkt. No. 5215] ("Debtors' Brief"), seeking an order

"temporarily disallowing each of the claims identified on Exhibit C up to the amount of the

Preferential Transfers . . . pending return of the Preferential Transfers."  51st Omn. Obj. ¶ 9.

7.    Mitsubishi's 503(b)(9) Claim was listed on Debtors' Exhibit C to the 51st

Omnibus Objection in the docketed amount of $4,889,716.18.[5]  Exhibit C also showed that the

Debtors, for the first time, asserted a preference of $ 2,407,142.00 against Mitsubishi (the

"Alleged Preference"), which they sought to set off against Mitsubishi's Claim No. 132 by

"temporarily disallowing" a portion of such claim until such time as Mitsubishi returns the

Alleged Preference.  *See* Debtors' Br. at 4.  The Debtors have not initiated an adversary

proceeding on the Alleged Preference, and to date, the Debtors have presented no evidence to the

Court (or to Mitsubishi) regarding the Alleged Preference.

---

[5]    The amount reflected on Exhibit C is the 503(b)(9) Claim, less an amount the Debtors' have objected to in one of five omnibus objections filed to Mitsubishi's claims.  Mitsubishi notes that on June 23, 2009, the Debtors filed the Debtors' Twentieth Omnibus Objection to Claims [Dkt. No. 3704] (the "Twentieth Omnibus Objection"), in which, among other things, the Debtors objected to the inclusion of an invoice for $76,260.00 as part of the Mitsubishi 503(b )(9) Claim and sought to have such amount reclassified as a general unsecured claim, arguing that the Debtors did not receive the goods listed on the invoice within the twenty days prior to commencement of the above-referenced bankruptcy cases.  As is evidenced by the documents attached to Mitsubishi's response to the Twentieth Omnibus Objection [Dkt. No. 3946], the Debtors' Twentieth Omnibus Objection as to Mitsubishi is without merit.

8.      Mitsubishi is informed and believes that the Debtors filed additional omnibus claims objections, including Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference [Dkt. No. 5216] (the "52nd Omnibus Objection"), to all Section 503(b)(9) claims on essentially the same grounds, and is seeking the same relief as asserted against Mitsubishi and the other creditors listed in the 51st Omnibus Objection, *i.e.*, that such creditors may have received preferential transfers that could be avoidable under Section 547(b), and that the Court should reduce any 503(b)(9) claims by "temporarily disallowing" such claim under Code Section 502(d) until such time as the creditors return the allegedly preferential transfers to the estate.

9.      A large number of creditors filed responses to the 51st and 52nd Omnibus Objections (*see* Mem. Op. n.5) (the "Respondents"), and the Debtors filed two reply briefs on November 10, 2009 [Dkt. Nos. 5621 and 5622].

10.     The Court held a hearing on the 51st and 52nd Omnibus Objections on November 12, 2009. At the hearing, with respect to the Section 503(b)(9) claims listed in both objections, the Court heard argument on one legal issue only: "whether § 502(d) can be used to temporarily disallow ¶ 503(b)(9) claims." *See* Mem. Op. at 1. At the hearing, the Debtors provided no evidence to the Court as to the merits of the alleged preference claims.

11.     On January 6, 2010, the Court issued the Order and Memorandum Opinion, partially sustaining the 51st and 52nd Omnibus Objections with respect to the Respondents' 503(b)(9) claims, and temporarily disallowing such claims. [Dkt. Nos. 6228 and 6288-1]. In the Order the Court ruled:

    a. "The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims

       filed by Respondents under 11 U.S.C. § 503(b)(9) up to the amount potentially

       recoverable on account of preferential transfers allegedly avoidable under 11

       U.S.C. § 547"; and

    b. "The Respondents' § 503(b)(9) claims identified in the Objections are temporarily

       disallowed (the 'Disallowed Claims')."

    12.    On January 13, 2010, Apex Digital, Inc. and THQ, Inc. filed a Motion for

Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections

(the "Motion for Reconsideration") [Dkt. No. 6258].  Under Bankruptcy Rule 8002(b), the

Motion for Reconsideration delayed the time for all parties affected by the Order to appeal the

Order and Memorandum Opinion until the Court disposed of the Motion for Reconsideration.

*See* FED. R. BANKR. PRO. 8002(b) ("If *any* party makes a timely motion [for reconsideration

under Rule 9023], the time for appeal for *all* parties runs from entry of the order disposing of the

last such motion outstanding." (emphasis added)).

    13.    On February 23, 2010, the Court entered an order and accompanying

supplemental memorandum opinion denying the Motion for Reconsideration [Dkt. Nos. 6601,

6602].  The Court found that the parties seeking reconsideration of the Order were merely

"asking the Court to reconsider arguments that were made during the hearing and [were]

suggesting that the Court erred in its reasoning rather than in its apprehension."  Supp. Mem. Op.

at 13.

### Questions Presented and Relief Requested

    14.    The questions presented on appeal are as follows:

a.  Whether the Bankruptcy Court erred in sustaining the Debtor's Fifty-First and Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims.

b.  Whether the Bankruptcy Court erred in finding that administrative expenses arising under Section 503(b)(9) of the Bankruptcy Code are subject to temporary disallowance under Section 502(d) of the Code.

c.  Whether the Bankruptcy Court erred in finding that Section 502(d) of the Bankruptcy Code is applicable to Section 503(3)(b) administrative expenses.

d.  Whether the Bankruptcy Court erred in ruling that the Debtors could seek a temporary disallowance of Mitsubishi's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code without commencing the alleged preference actions.

e.  Whether the Bankruptcy Court erred in temporarily disallowing Mitsubishi's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code, prior to an adjudication of the Debtor's alleged preference claim against Mitsubishi.

f.  Whether the Bankruptcy Court erred in finding that creditors seeking administrative priority under Section 503(b)(9) are required to file a proof of claim pursuant to Section 501 of the Bankruptcy Code.

g.  Whether the Bankruptcy Court erred in ruling that the Debtors could seek a temporary disallowance of Mitsubishi's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code within the claims resolution process and not in an adversary proceeding.

h.  Whether the Bankruptcy Court erred in ruling that the Debtors were not seeking

affirmative relief when they sought temporary disallowance of Mitsubishi's

Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the

Bankruptcy Code.

15.    While Mitsubishi believes the Order is final, Mitsubishi seeks an order from this

Court permitting it leave to appeal the Order to the District Court in an abundance of caution,

wherein Mitsubishi will seek an order from the District Court reversing the Bankruptcy Court's

Order and overruling the Debtor's Fifty-First Omnibus Objection to Certain 503(b)(9) Claims.

### Statement of Reasons to Grant Appeal

16.    The District Court has jurisdiction to hear Bankruptcy Court appeals of final

judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a).  *In re Paschall*, 408 B.R. 79, 84

(E.D. Va. 2009).  However, leave of the Court is required to appeal from an interlocutory order.

*See Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996).

17.    The Eastern District of Virginia follows the standards set forth in 28 U.S.C.

§ 1292(b) to guide the Court's discretion in granting leave to appeal.  *See In re Paschall*, 408

B.R. at 84; *see also Atlantic Textile Group, Inc.*, 191 B.R. at 653 ("This approach, while not

required by the terms of Section 158, provides a useful framework for considering the merits of a

discretionary appeal.").  Section 1292(b) permits leave to file an interlocutory appeal when: 1)

the order involves a controlling question of law; 2) as to which there is a substantial ground for a

difference of opinion; and 3) immediate appeal would materially advance the termination of the

litigation. *Id.*

18.     The Order addresses the discrete and controlling issue of law, *to wit*, whether

Section 502(d) applies to the newly enacted Section 503(b)(9).[6]  *See supra* Questions Presented

for enumeration of collateral discrete issues.  Because of the brief history of Section 503(b)(9),

these are novel issues with very little case law addressing them and no appellate decisions of

record.  *See Southern Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R.

742, 750 (Bankr. N.D. Ga. 2009) ("*Section 502(d)* does not contain any language or reference

which would make it applicable to administrative expenses of any kind.  More specifically, the

language of *§ 502(d)* does not imply or create a defense to a *§ 503(b)(9)* claim."); *In re Plastech*

*Eng'd Prods., Inc.*, 394 B.R. 147, 161 (Bankr. E.D. Mich. 2008) (determining that Section

503(b)(9) is not subject to Section 502(d)).  Although the Bankruptcy Court cites the decision of

*In re Plastech Eng'd Prods. Inc.*, as in line with the majority of courts who have ruled more

generally on the applicability of Section 502(d) to administrative expense claims arising under

Section 503(b),[7] the Court comes down on the opposite side of the issue.  *See* Mem. Op. at 9.

Furthermore, the decisions in *In re Plastech Eng'd Prods., Inc.*, *In re TI Acquisition, LLC*, *In re*

*MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (B.A.P. 9th Cir. 2002),

and the Memorandum Opinion exemplify the substantial grounds for a difference of opinion

among the courts.  The Bankruptcy Court recognized: "Courts are split on the issue of whether or

not § 502(d) can be read to apply to claims for administrative expense.  The majority of courts

have held that § 502(d) is generally not applicable to § 503(b) claims. [cites omitted]"  Mem. Op

at 9.  Moreover, the extent and variety of briefing below by the Debtors and the thirty-four

---

[6]     Section 503(b)(9) gives administrative expense priority to creditors that delivered goods to a debtor within
the twenty days prior to bankruptcy for which the debtor did not pay. 11 U.S.C. § 503(b)(9).

[7]     *See, e.g.*, *In re Ames Department Stores, Inc.*, 582 F.3d. 411, 430-32 (2d Cir. 2009) (Section 502(d) does
not apply to Section 503(b)); *Phoenix Restaurant Group, Inc. v. Proficient Food Co. (In re Phoenix Restaurant*
*Group, Inc.)*, 2004 WL 3113719 at *20 (Bankr. M.D. Tenn. 2004) (same); *In re Roberds, Inc.*, 315 B.R. 443, 476
(Bankr. S.D. Ohio 2004) (same); *Beasley Forest Prod., Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper*
*Co.)*, 297 B.R. 326 (Bankr. S.D. Ga. 2003) (same).

creditors who responded to the 51st and 52nd Omnibus Objections further demonstrates these

differences of opinion among the parties. Finally, the fact that the Order affects thirty-four

503(b)(9) respondents shows that review would materially advance the termination of substantial

litigation between each of the claimants and the Debtors, including the contested matters

instituted by Debtors' filing of the 51st and 52nd Omnibus Claims Objections.

19.    The Fourth Circuit also permits review of non-final orders pursuant to the

collateral order doctrine. *See Grundy Nat'l Bank v. Looney (In re Looney)*, 823 F.2d 788, 791

(4th Cir. 1987). To satisfy the collateral order doctrine as originally enunciated in *Cohen v.*

*Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), the movant must show that the order: 1)

conclusively determines the disputed question; 2) resolves an important issue completely

separate from the merits of the action; and 3) is effectively unreviewable on appeal from a final

judgment. *In re Looney,* 823 F.2d at 791 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463,

468 (1978)). The Fourth Circuit has determined that appeals that would be "effectively

unreviewable" after resolution on the merits should be heard, although they may not technically

be final. *See Shipbuilders Council of America v. U.S. Coast Guard*, 578 F.3d 234, 239-40 (4th

Cir. 2009).

20.    The collateral order doctrine applies here because:

    a. The Order conclusively determines the disputed question of law, *i.e.*, whether

        Section 502(d) of the Bankruptcy Code can be used to temporarily disallow

        Section 503(b)(9) administrative expense claims together with the related issues

        listed in the above Questions Presented;

b.  This issue of law is separate from the merits of the main bankruptcy case, including confirmation issues, and from the merits of any future adversary proceedings arising from the Debtors' Alleged Preference; and

c.  Delay of review until the conclusion of the bankruptcy case or of any future adversary proceedings on preferences may make meaningful review impossible because, by that point, the Debtor may have distributed all the estates' assets, leaving no funds to pay any reinstated administrative expense claims if the Debtors cannot prove the Alleged Preference.

### Copy of Order and Memorandum

21.    A copy of the Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections entered in the above-captioned case on January 6, 2010 and its accompanying Memorandum Opinion are attached hereto as Exhibit A and Exhibit B.

WHEREFORE, Mitsubishi respectfully requests that the District Court enter an order granting this motion and leave to appeal the Order and granting such other and further relief as this Court deems just and proper.

Dated: March 9, 2010                    **MITSUBISHI DIGITAL ELECTRONICS
                                        AMERICA, INC.**

/s/ Philip C. Baxa
Philip C. Baxa (VSB No. 22977)
MercerTrigiani LLP
16 South Second Street
Richmond, Virginia 23219
Tel: 804-782-8691
Fax: 804-644-0209
phil.baxa@mercertrigiani.com

- and -

KING & SPALDING LLP
James A. Pardo, Jr. (*pro hac vice*)
Georgia Bar No. 561206
jpardo@kslaw.com
Thaddeus D. Wilson (*pro hac vice*)
Georgia Bar No. 596008
thadwilson@kslaw.com
1180 Peachtree Street
Atlanta, Georgia  30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5129

*Counsel for Mitsubishi Digital Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 9, 2010 I will electronically file the foregoing Mitsubishi Digital Electronics America, Inc.'s Motion for Leave to Appeal and Incorporated Memorandum of Law in Support of Motion with the Clerk of the Court using the CM/ECF system, and send a true and correct copy of the foregoing Motion and Memorandum via regular mail, postage prepaid, on March 9, 2010 to:

Gregg M. Galardi, Esquire
Ian S. Fredericks, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19899
gregg.galardi@skadden.com

Dion W. Hayes, Esquire
Douglas M. Foley, Esquire
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
dfoley@mcguirewoods.com

Chris L. Dickerson, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606
chris.dickerson@skadden.com

Robert B. Van Arsdale, Esquire
Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov

/s/ Philip C. Baxa
Philip C. Baxa (VSB No. 22977)

R0010083

**<u>Exhibit A</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      CIRCUIT CITY STORES, INC.,          Case No. 08-35653
          *et al.*,                        Chapter 11
                Debtors.              Jointly Administered

## MEMORANDUM OPINION

The issue now before the Court in this Chapter 11 case is whether the Debtors may use § 502(d) of the Bankruptcy Code to temporarily disallow certain § 503(b)(9)[1] claims filed by a number of their creditors (the "Claimants"). The Debtors seek to have the claims filed by the Claimants temporarily disallowed up to the amount potentially recoverable on account of preferential transfers allegedly avoidable under § 547 (the "Preferential Transfers). Hearing was conducted on November 12, 2009 (the "Hearing") to consider Debtors' request for ruling on the threshold issue of whether § 502(d) can be used to temporarily disallow § 503(b)(9) claims.

### Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

### Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores. As of March, 8, 2009, the going out of business sales had been completed. On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan"). The disclosure statement was approved by order entered September 24, 2009. The confirmation hearing is currently scheduled for January 28, 2010.

---

[2]  The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

On October 13, 2009, the Debtors filed two omnibus objections (the "Objections")[3] to

certain of the Claimants' claims that asserted a § 503(b)(9) administrative priority (the "Claims")

on the grounds that those Claims should be temporarily disallowed under § 502(d) up to the

amount potentially recoverable in an avoidance action under § 547 until the return of any

Preferential Transfers.[4] A large number of Claimants filed responses[5] (the "Responses"), and on

November 10, 2009, the Debtors filed two reply briefs.[6]

---

[3]      The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of
Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount
under § 507 of the Bankruptcy Code.

[4]      *See* Debtors' (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver
of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13,
2009 [Docket No. 5214]; Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion
for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on
October 13, 2009 [Docket No. 5216].

[5]      *See* Response of Namsung America Inc. to Debtors' Fifty-First Omnibus Objection to Claims  [Docket
No. 5411]; PNY Technologies, Inc.'s Response to Debtors Fifty-First Omnibus Objection to Claims [Docket No.
5416]; Response of Onkyo USA Corporation in Opposition to Debtors' Fifty-First Omnibus Objection to Claims
[Docket No. 5447]; Mitsubishi Digital Electronics America, Inc.'s Response to Debtor's Fifty-First Omnibus
Objection to Claims [Docket No. 5454]; Response of Digital Innovations, LLC on Behalf of VonWin Capital
Management, LP to Debtors' Fifty-First Omnibus Objection to Claims [Docket No.5470]; Response of Longacre
Opportunity Fund, L.P. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5472]; Envision
Peripherals, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket
No. 5475]; Response and Joinder of JVC Americas Corp. and JVC Company of America to Debtors' Fifty-First
Omnibus Objection to Claims [Docket No. 5479]; Response of Olympus Corporation and Olympus Imaging
America, Inc. to Debtors' (I) Fifty-First Omnibus Objection to Claims [Docket No. 5529]; Response of Hauppage
Computer Works, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5530]; Response of United
States Debt Recovery, LLC to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5535]; Response and
Objection of Midland Radio Corporation to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5537];
Response and Objection of Bethesda Softworks LLCto Debtors' Fifty-First Omnibus Objection to Claims [Docket
No. 5539]; Response of TeleDynamics LLP in Opposition to Debtors' Fifty-First Omnibus Objection to Claims
[Docket No. 5610]; Metra Electronics Corporation's Opposition to Debtor's Fifty-First Omnibus Objection to Claims
[Docket No. 5487]; Response of Sima Products Corp. to Debtors' Fifty-First Omnibus Objection to Claims [Docket
No. 5491]; Joint Response of THQ, Inc. and Apex Digital, Inc. to Debtors' Fifty-First Omnibus Objection to Claims
[Docket No. 5497]; Tamrac, Inc.'s Opposition to Debtor's Fifty-First Omnibus Objection [Docket No. 5498];
Response of Nyko Technologies, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5499];
Response of SouthPeak Interactive, LLC to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5502];
Bush Industries Inc.'s Response and Joinder Regarding Debtors' Fifty-First Omnibus Objection to Claims [Docket
No. 5505]; Joinder of Vonage Marketing LLC to the Responses Filed by SouthPeak Interactive, LLC and Nyko
Technologies, Inc to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5506]; Omnibus Response of
Vonwin Capital Management, L.P. to Debtors' Forty-Eighth, Forty-Ninth, Fiftieth and Fifty-First Omnibus
Objections [Docket No. 5509]; Response in Opposition of BISSELL Homecare, Inc. to Debtors' Fifty-First Omnibus
Objection to Claims [Docket No. 5511]; Cokem International, Inc.'s Response to the Debtor's Fifty-First Omnibus
Objection [Docket No. 5515]; Response of Paramount Home Entertainment Inc. to Debtors' Fifty-Second Omnibus
Objection to Claims [Docket No. 5434]; Response of SanDisk Corporation to Debtors' (I) Fifty-Second Omnibus

In their Objections and at the Hearing, the Debtors requested a determination of the threshold legal issue of whether § 502(d) can be applied as a matter of law to temporarily disallow § 503(b)(9) claims in the amount potentially recoverable as a preferential transfer under § 547. Several of Claimants' Responses took issue with proceeding in this manner. They objected to the Hearing, arguing that it was improper to consider the threshold legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim in a contested matter as part of the claims resolution process separate from any underlying adversary proceeding to determine whether a Preferential Transfer was recoverable in the first instance. The Claimants based their objection to the bifurcation of these issues an on essentially three grounds: (1) bifurcation deprived them of their constitutional due process rights, (2) the Debtors were requesting an advisory opinion, and (3) the Debtors should be required to file an adversary proceeding in order to raise the legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim.

Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures. . . it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1014 (4th Cir.

---

Objection to Claims [Docket No. 5449]; Pioneer Electronics' Response to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5464]; LG Electronics USA, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5489]; Response of Toshiba America Consumer Products,L.L.C. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5495]; Response of Samsung Electronics America, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5496]; Samsung Electronics America, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5500]; Twentieth Century Fox Home Entertainment LLC's Response in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5504]; Response of Take Two Interactive Software, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5583].

[6]     *See* Debtors' Omnibus Reply in Support of (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5621]; Debtors' Omnibus Reply in Support of (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5622].

4

1986) (internal citations omitted).  In this case, parties were given ample notice that the threshold

legal issue regarding whether § 502(d) could be applied to temporarily disallow a § 503(b)(9)

claim would be the topic of the first hearing on the two omnibus Objections.  Based on the

quantity and the quality of the briefs submitted to this Court (including amicus briefs) and the

thorough oral arguments made at the Hearing, the parties have certainly exercised their

opportunity to be heard.  Further, the Debtors are not requesting an ultimate judicial

determination concerning the allowance of these Claims.  Rather, they are seeking to postpone

payment of the Claims by disallowing them temporarily until the underlying issues can be fully

adjudicated in separate adversary proceedings.[7]  To this end, Debtors are requesting a ruling on a

threshold legal issue common to all of the Claimants.  Each of the Claimants will have an

opportunity to have an adjudication made in the context of a full blown adversary proceeding

regarding any liability they might have for the alleged Preferential Transfers.  Therefore, the

Claimants' due process rights are not being infringed.  Rather, the due process rights of the

bankruptcy estates are being preserved.

     The Court is not rendering an advisory opinion.  Very real disputes exist between the

parties concerning the threshold legal issue.  The Court is not asked to issue an advisory opinion

when "the facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality." *Maryland*

*Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Court is merely making

a partial ruling in an interlocutory fashion on a very real controversy, and it is reserving the

---

[7]  If the Claims are not temporarily disallowed, the Debtors will be required to pay to Claimants cash equal to the
amount of their Claims on the effective date of the Plan once it is confirmed, *See* 11 U.S.C. §1129(a)(9); and,
thereby, the bankruptcy estates may forfeit any right they may have to contest the underlying dispute.

adjudication regarding the underlying liability for any alleged Preferential Transfers for a later determination to be made in the context of an adversary proceeding.

Finally, the Debtors do not need to file an adversary proceeding in order to have this threshold legal issue resolved. The Debtors are asserting a defense within the claim resolution process. They do not seek affirmative relief. Therefore, Bankruptcy Rule 7001 is not implicated and an adversary proceeding is not necessary at this time.

Pursuant to Bankruptcy Rule 3007 a claim objection need not be made in an adversary proceeding.[8] When a response is filed to an objection, the claim objection becomes a contested matter governed by Bankruptcy Rule 9014. *See In re Fleming*, 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter, and Fed. R. Bankr. P. 9014 applies."). As such, certain rules, under part VII of the Federal Rules of Bankruptcy Procedure are applicable, including Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"). *See id.*; *see also* Fed. R. Bankr. P. 7056.[9]

Bifurcating the Hearing between a common threshold legal issue that pertains to all the Claims Objections and reserving for later determination the underlying issues unique to each of the adversary proceedings will create efficiencies in resolving the Claims Objections as well as greater opportunity for all interested parties to participate and be heard. When Claimants were questioned during the Hearing as to how they would propose to go forward if the Hearing was

---

[8] Rule 3007(b) of the Federal Rules of Bankruptcy Procedure states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." The Debtors are not seeking relief of the kind specified in Rule 7001. Rather, they are asserting an affirmative defense to the claims.

[9] Under Civil Rule 56, a party may request partial summary judgment. *See* Fed. R. Civ. P. 56(a), (b) (providing that any party "may move, with or without supporting affidavits, for summary judgment on all or part claim."). Here, the Debtors have, in essence, requested partial summary judgment on a particular legal issue for which no genuine issue of material fact is in dispute. Thus, the Debtors' request to bifurcate the hearings is proper under the applicable Rules of Bankruptcy Procedure.

not bifurcated, they suggested that the alternative would be to go forward individually on a claim by claim basis in connection with the separate adversary proceedings. This suggested alternative would take significantly more time and would be potentially detrimental to parties given later trial dates. Given the efficiencies created by this method and the greater opportunity of all Claimants to participate and be heard on the common legal issue, it is not surprising that many other bankruptcy courts have proceeded in a similar fashion—first addressing common threshold legal issues before resolving separate underlying liability issues. *See, e.g., In re Leeds Bldg. Prods., Inc.*, 141 B.R. 265, 266 (Bankr. N.D. Ga. 1992); *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 149 (Bankr. E.D. Mich. 2008); *In re Hackney,* 351 B.R. 179, 181 (Bankr. N.D. Ala. 2006); *In re Dawson*, 346 B.R. 503, 507 (Bankr. N.D. Cal. 2006); *In re Hicks*, 300 B.R. 372, 375 (Bankr. D. Idaho 2003). Accordingly, the Court agreed to hear arguments relating to the one legal issue regarding the application of § 502(d) to temporarily disallow the Claims filed by the Claimants pending an adjudication of any underlying liability for the alleged Preferential Transfers in the context of separate adversary proceedings.

## Analysis

The question before the Court is whether § 502(d) may be used to bar § 503(b)(9) administrative expense claims. Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Section 502(d) provides that "[n]otwithstanding subsections (a) and (b) of [section 502], the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553, of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545,

547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or

turned over any such property, for which such entity or transferee is liable under section 522(i),

542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d). Debtors contend that the Claimants are

transferees of Preferential Transfers avoidable under § 547. From a plain reading of § 502(d), it

would appear that if a Claimant's request for payment of an administrative expense arising under

§ 503(b)(9) is a "claim" under the Bankruptcy Code, then § 502(d) may be used to disallow it.

　　　The word "claim" is defined in § 101(5)(A) as a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A). It is generally accepted

that "Congress chose expansive language," in defining the term "claim," and therefore the

definition of "claim" should be broadly construed and applied. *Pennsylvania Dep't of Pub.*

*Welfare v. Davenport*, 495 U.S. 552, 558 (1990). Administrative expenses appear to be a subset

of "claims." 　Throughout the Bankruptcy Code, the term "claim" is used to refer to

administrative expenses. For example, under § 1123(a), "a plan shall (1) designate, subject to

section 1122 of this title, classes of claims, other than claims of a kind specified in section

507(a)(2)." 11 U.S.C. § 1123(a)(1). Section 507(a)(2) specifically refers to "administrative

expenses allowed under section 503(b) of this title. . . ." 11 U.S.C. § 507(a)(2). So, the kind of

"claims" specified in § 507(a)(2) to which § 1123(a) refers are administrative expenses.[10]

Further, § 503(b) itself uses the terms "claims" and "expenses" interchangeably: "[a]fter notice

and hearing, there shall be allowed administrative expenses, other than claims allowed under

section 502(f) of this title. . . ." 11 U.S.C. § 503(b). If Congress had intended that these terms be

mutually exclusive, there would be no need to carve out "claims" allowed under § 502(f). *See,*

*e.g., F.C.C. v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 302 (2003) (holding that

---

[10]　Similarly § 1129(a)(9)(A) refers to *claims* of a kind specified in section 507(a)(2).

a reading that renders parts of the Bankruptcy Code "superfluous . . . means, of course, that such a reading must be rejected.").

When a "statute's language is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). From a plain reading of the text of § 502(d), it appears that § 502(d) can be invoked to disallow a claim for an administrative expense under § 503(b). Nonetheless, the Claimants argue in their Responses that §§ 502(d) and 503(b) should be read separate and apart from one another, where § 502(d) may only be used to disallow claims filed under § 501 and not claims filed under § 503(b). The Respondents rely heavily on the logic of *In re Ames Dep't Stores, Inc.*, 582 F.3d 411, 430 (2d Cir. 2009) ("Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled 'Allowance of administrative expenses.' The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects. . . . Thus, with respect to the allowance of claims, sections 502 and 503 are separate and independent.").

Courts are split on the issue of whether or not § 502(d) can be read to apply to claims for administrative expense. The majority of courts have held that § 502(d) is generally not applicable to § 503(b) claims. *See, e.g., In re Ames*, 582 F.3d at 430-32 (holding that § 502(d) does not apply to administrative expenses under § 503(b)); *In re TI Acquisition, LLC*, 410 B.R. 742 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 161 (Bank. E.D. Mich. 2008) (holding that § 502(d) may not be used to bar claims under § 503(b)(9)); *In re Roberds, Inc.*, 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004); *In re Lids Corp.*, 260 B.R. 680, 683-4 (Bankr. D. Del. 2001); *In re CM Holdings, Inc.*, 264 B.R. 141, 158 (Bankr. D. Del. 2000) (holding that § 502(d) was not applicable to a postpetition administrative expense claim). A

9

minority of courts have adopted the contrary position and read the definition of "claim" in

§ 101(5) as broad enough to cover administrative expenses.  *See, e.g., In re MicroAge, Inc.*, 291

B.R. 503, 513-4 (B.A.P. 9th Cir. 2002); *In re Georgia Steel, Inc.*, 38 B.R. 829, 839-40 (Bankr.

M.D. Ga. 1984).

The majority approach is more consistent with established Fourth Circuit precedent.  In

*Durham v. SMI Industries,*[11] the Fourth Circuit Court of Appeals stated that "Section 502(d)

provides, in pertinent part, that 'the court shall disallow any claim of any entity from which

property is recoverable under section . . . 550, unless such entity . . . has paid the amount . . . for

which such entity or transferee is liable.'  Since a court can only disallow a claim after one has

been filed under 11 U.S.C.A. 501(a), 'claim' in section 502(d) includes only one for which a

proof has been filed."  *Durham v. SMI Industries*, 882 F.2d. 881, 882-83 (4th Cir. 1989).

Therefore, despite the expansive language used in § 101(5)(A) that defines the term "claim" and

despite the apparent plain meaning of § 502(d) that applies that defined term, the law in this

Circuit is that § 502(d) can only be used to bar "claims" where the "claims" are filed under

§ 501(a).  This application of the law is entirely in keeping with the recent holding of the Second

Circuit in *In re Ames.*[12]

The Debtors argue that the instant case can be distinguished from *In re Ames* and

*Durham v. SMI Industries* because this case involves § 503(b)(9) claims, which arise prepetition,

rather than general § 503(b) administrative expenses, most of which arise postpetition.  Notably,

the Debtors argue that even if the courts in *Ames* and *Durham* are correct that § 502(d) can only

---

[11]  *Durham v. SMI Industries*, 882 F.2d. 881 (4th Cir. 1989).

[12]  It is also worth noting that the Ames court specifically did not address the application of 502(d) to 503(b)(9) claims.  *See Ames*, 582 F.3d at 424, n. 2 ("Neither party has suggested that section 503(b)(9) has any *relevance* to this appeal, and we do not specifically address its interaction with section 502(d).").  Further, the *Ames* court paid special attention to the postpetition nature of administrative expenses in holding 502(d) inapplicable. *Id.* at 431.

be used to disallow claims filed under 501(a) of the Bankruptcy Code, § 503(b)(9) claims, unlike

other § 503(b) administrative expenses, *must* be filed under § 501(a) of the Bankruptcy Code.

Bankruptcy Rule 3002(a) mandates that "[a]n unsecured creditor . . . *must* file a proof of

claim . . . for the claim . . . to be allowed, except as provided in Rules 1019(3), 3003, 3004, and

3005." Fed. R. Bankr. P. 3002(a) (emphasis added).[13] Bankruptcy Rule 3003(c) addresses filing

a proof of claim in a Chapter 11 case: "(2) Who must file. Any creditor . . . whose claim . . . is

not scheduled or scheduled as disputed, contingent, or unliquidated *shall* file a proof of

claim. . . ." Fed. R. Bankr. P. 3003(c)(2) (emphasis added).[14]

The definition of "creditor" is an "entity that has a claim against the debtor that arose at

the time of or before the [Petition Date]. . . ." 11 U.S.C. §101(10)(A).  The Claimants are entities

whose claims arose against the Debtors prepetition because they delivered goods to the Debtors

within the 20 days prior to the Petition Date for which they were not paid.  Accordingly, the

Claimants are "creditors" within the meaning of the Bankruptcy Code.  Rules 3002 and 3003 of

the Federal Rules of Bankruptcy Procedure mandate that "creditors" must file a proof of claim to

receive a distribution.   Therefore, Claimants, as prepetition "creditors", must file their

§ 503(b)(9) claim under § 501(a).  Neither the Federal Rules of Bankruptcy Procedure nor the

Bankruptcy Code provide § 503(b)(9) Claimants an exception to this rule.  In fact, each Claimant

in this case did file a proof of claim under § 501(a).  If a "creditor" wishes to be granted an

administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under

§ 501, second, have the claim allowed under § 502, and then, third, request administrative

expense priority under § 503(a).

---

[13]   None of the exceptions provided in Rules 1019(3), 3003, 3004, and 3005 of the Federal Rules of Bankruptcy
Procedure are applicable to the Claimants.

[14]   The Claimants' Claims in this case were either not scheduled or were scheduled as disputed, contingent or
unliquidated.

The Bankruptcy Court of the Eastern District of Michigan is one of the few courts that has specifically addressed the application of § 502(d) to §503(b)(9) claims. *See In re Plastech Engineered Products Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008). The *Plastech* court held that § 502(d) could not apply to § 503(b)(9) claims because there was nothing in the Bankruptcy Code that made § 503(b)(9) claims a "special class," that would distinguish them from other § 503(b) claims. *Id.* at 163-64. The *Plastech* court, though, ignored the fact that nothing in the Bankruptcy Code makes §§ 501, 502 and 503 mutually exclusive. A creditor may be required to seek allowance of its claim under both §§ 502 and 503. This is, in fact, what the Federal Rules of Bankruptcy Procedure require in cases of § 503(b)(9) claims.

Both *Durham* and *Ames* make clear that § 502(d) may only be used to disallow claims filed by creditors under § 501(a). Although Claimants may be entitled to administrative expense status under § 503(b)(9), they are also creditors within the meaning of § 101(10)(A) and, as such, were required to file a proof of claim under § 501(a) in accordance with Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure. Therefore, consistent with *Durham* and *Ames*, § 502(d) may be applied to disallow the Claimants' Claims until the Claimants have paid into the estate any Preferential Transfers for which they may be held liable.

The goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the Claimants' Claims. Section 547(c)(4) provides a creditor with a "new value" defense to a claim that the creditor received an avoidable Preferential Transfer. 11 U.S.C. § 547(c)(4). This defense allows a creditor "to offset preference payments through the extension of new value to the debtor so long as the debtor does not make an *otherwise unavoidable transfer* on account of the new value." *In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir. 2005). The definition of "new value" includes "money or money's worth

12

in goods. . . ." 11 U.S.C. § 547(a)(2).  It is very likely, therefore, that in many instances, a Claimant will be both seeking an administrative expense payment for goods delivered in the 20 days prior to the Petition Date under § 503(b)(9) and using the delivery of those same goods as a basis for the new value defense.  If the Claimant succeeds in both instances, then the Claimant will receive full payment on the § 503(b)(9) claim and the estate will be unable to get back the value of any Preferential Transfer that was made.  This would allow the Claimant to receive a more favorable distribution to the detriment of other claimants in the case.  Temporarily disallowing the Claims and holding them in abeyance until the preference litigation takes place would allow this Court to adjudicate these issues together and ensure that Claimants do not receive windfalls to the detriment of other creditors.

### Conclusion

For the above reasons, the Court concludes that § 502(d) may be used to temporarily disallow § 503(b)(9) claims.  As the Fourth Circuit held in *Durham*, § 502(d) may be used to bar claims filed under § 501.  Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that all creditors must file proofs of claim pursuant to § 501(a).  By definition, § 503(b)(9) claims arise within the 20 days prior to the Petition Date.  This means that Claimants, as holders of § 503(b)(9) claims, are creditors as defined in § 101(10)(A).  As creditors, Claimants must file a proof of claim under § 501(a).  Therefore, § 502(d) may be used to temporarily disallow the Claims filed under § 501(a) up to the amount of the alleged Preferential Transfers.

A separate order shall be issued.

ENTERED:  <u>Jan 6 2010</u>

<u>     /s/ Kevin R. Huennekens     </u>
UNITED STATES BANKRUPTCY JUDGE

13

**<u>Exhibit B</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:        CIRCUIT CITY STORES, INC.,                    Case No. 08-35653
              *et al.*,                                     Chapter 11
                        Debtors.                            Jointly Administered

## ORDER ON DEBTORS' FIFTY-FIRST,
## AND FIFTY-SECOND OMNIBUS OBJECTIONS

Upon consideration of Debtors'(I) Fifty-First Omnibus Objection to Certain 503(b)(9)

Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response

Proceed as a Status Conference, filed on October 13, 2009 (Docket No. 5214; the "51st Omnibus

Objection), and Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and

(II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a

Status Conference, filed on October 13, 2009 (Docket No. 5216; the "52nd Omnibus Objection";

collectively, with the 51st Omnibus Objection, the "Objections"), the responses thereto (Docket

Numbers 5411, 5416, 5447, 5454, 5470, 5472, 5475, 5479, 5529, 5530, 5535, 5537, 5539, 5610,

5487, 5491, 5497, 5498, 5499, 5502, 5505, 5506, 5509, 5511, 5515, 5434, 5449, 5464, 5489,

5495, 5496, 5500, 5504, 5583; collectively, the "Responses") of the respondents (the

"Respondents") and the omnibus replies thereto (Docket Numbers 5621 & 5622; together, the

"Replies"); and the Court having reviewed the Objections, the Responses and the Replies; and

the Court having considered the arguments advanced by the Debtors and the Respondents at the

hearing held on November 12, 2009; and upon the record herein, and after due deliberation

thereon; and good and sufficient cause appearing therefore as set out in the Court's

Memorandum Opinion[1] entered on this date, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Objections are partially SUSTAINED to the extent set forth herein.

2.    The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims

filed by Respondents under 11 U.S.C. § 503(b)(9) as set forth in the 51st Omnibus Objection and

the 52nd Omnibus Objection up to the amount potentially recoverable on account of preferential

transfers allegedly avoidable under 11 U.S.C. § 547.

3.    The Respondents' § 503(b)(9) claims identified in the Objections are temporarily

disallowed (the "Disallowed Claims").

4.    The Debtors' right to object to any claim on any grounds that governing law

permits is not waived and expressly preserved.

5.    The requirement that the initial hearings on the Objections proceed as status

conferences is hereby waived.

6.    This Court retains jurisdiction to hear and determine all matters arising from or

related to the Objections, the Disallowed Claims and this Order.

ENTERED: _____


_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE


Entered on docket: Jan 6 2010

---

[1]  The Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

2