## IN THE UNITED STATES BANKRUPTCY COURT
## FOR EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

**CIRCUIT CITY STORES, INC,** *et al.,*

Debtors.

**Chapter 11**

**Case No. 08-35653 (KRH)**

**Jointly Administered**

### ONKYO USA CORPORATION'S MOTION FOR
### LEAVE TO APPEAL AND INCORPORATED
### <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION</u>

Onkyo USA Corporation ("Onkyo"), by and through its undersigned counsel, and

pursuant to 28 U.S.C. § 158(a)(3) and Rule 8003 of the Federal Rules of Bankruptcy Procedure

(the "Rules"), seeks entry of an Order granting it leave to appeal from the Bankruptcy Court's

Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections entered in the above-

captioned case on January 6, 2010, with an accompanying Memorandum Opinion [Docket Nos.

6228-1, 6228], and its Order Denying Motion to Reconsider entered on February 23, 2010, with

an accompanying Supplemental Memorandum Opinion Denying Reconsideration of Court's

Order on Debtor's Fifty-First and Fifty-Second Omnibus Objections [Docket Nos. 6601, 6002]

(collectively, "the Order"), and in support hereof states as follows:

### <u>INTRODUCTORY STATEMENT</u>

Onkyo is a creditor in the above-styled bankruptcy case, with an outstanding claim for

administrative expenses pursuant to Section 503(b)(9) of the Bankruptcy Code, based upon

goods received by the Debtors within twenty (20) days of the Petition Date (the "503(b)(9)

Philip C. Baxa, Esquire VSB No. 22977
MercerTrigiani LLP
16 South Second Street
Richmond, Virginia 23219
Tel: 804-782-8691
Fax: 804-644-0209
phil.baxa@mercertrigiani.com
*Counsel for Onkyo USA Corporation*

Claim" or the "Administrative Expense"). Onkyo also has general unsecured claims with respect

to goods delivered to the Debtors outside the twenty (20) day period. The Debtors, through the

51st Omnibus Objection, objected to a portion of Onkyo's 503(b)(9) claim on the grounds that a

portion of the claim should be "temporarily" disallowed under 11 U.S.C. § 502(d)[1] pending the

outcome of a preference action against Onkyo that the Debtors have yet to bring.

Although Onkyo contends that the Order is final and appealable as of right pursuant to 28

U.S.C. § 158(a), Onkyo is filing this motion in an abundance of caution. *See A. H. Robins Co.,

Inc. v. Piccinin,* 788 F.2d. 994, 1009 (4th Cir. 1986). Although the Order purports only to

"temporarily" disallow Onkyo's Section 503(b)(9) administrative expenses, the practical effect

of the Order will be to permanently deprive Onkyo of its ability to collect these expenses.

Through the Debtors' proposed Plan, the Debtors intend to make distributions to the holders of

allowed administrative expenses without reserving funds for the holders of temporarily

disallowed administrative expenses, such as Onkyo. *See* Plan (defined below) at Art. III, § 1.

Thus, the Order, coupled with the proposed Plan, has the effect of reducing Onkyo's claim based

solely on a naked preference allegation made by the Debtors without the Court ever adjudicating

the preferential payments allegedly received by Onkyo.[2]

Outside of the bankruptcy context, a final order conclusively determines the rights of the

parties in the litigation leaving nothing for the court to do. *See Coopers & Lybrand v. Livesay*,

437 U.S. 463, 467 (1978) (citations omitted); *Charter Co. v. Prudential Ins. Co. (In re Charter

Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (*quoting Catlin v. United States*, 324 U.S. 229, 233

(1945); 28  U.S.C. § 1291. As shown below, the approach to finality in the bankruptcy context is

---

[1]     Section 502(d) provides that "the court shall disallow any *claim* of any entity . . . that is a transferee of a
transfer avoidable under section . . . 547. . . , unless such entity or transferee has paid the amount, or turned over any
such property, for which such entity or transferee is liable under section . . . 550 . . . ." (emphasis added).
[2]     Onkyo asserts that such "alleged" preference claims are meritless as to it and that the Debtors have not provided any
evidence of such preferential payments.

less stringent.  Yet, under either standard, the Order undoubtedly disposed of a critical and

discrete issue: that is, whether Section 502(d) applies to Section 503(b)(9) administrative

expenses.  Thus, the Order leaves nothing for the Court to do concerning that issue: a portion of

Onkyo's 503(b)(9) claim is temporarily disallowed for some indefinite period of time until an

alleged preference claim is resolved.  *See Charter Co. v. Prudential Ins. Co. (In re Charter Co.)*,

778 F.2d 617, 621 (11th Cir. 1985) (*quoting Catlin v. United States*, 324 U.S. 229, 233 (1945)).

       The Fourth Circuit recognizes that the concept of finality is applied in a more pragmatic

and less technical way in bankruptcy cases than in other situations.  *A. H. Robins Co.*, 788 F.2d.

at 1009 (citations omitted).  Because a discrete dispute between a debtor and its creditors over a

claim or a priority, for example, is a separate "proceeding" in bankruptcy, orders resolving such

disputes should be considered final.  *Id.* (citations omitted).  Moreover, adopting a flexible

approach to finality avoids the waste of time and resources resulting from the review of discrete

issues *after* confirmation of a plan. *Id.* (citations omitted).

       Adopting this pragmatic approach to finality, the Second Circuit recently held that an

order "temporarily" disallowing a Section 503(b) Administrative Expense claim pursuant to

Section 502(d) was final for appellate purposes. *ASM Capital, LP v. Ames Dept. Stores, Inc. (In

re Ames)*, 582 F.3d 422, 426-27 (2d Cir. 2009).  The Court reasoned that the order had the

practical effect of finality because the debtor would never collect the judgment from the creditor,

and thus, the claim would never be allowed.  *Id.*

       The Debtors here are marching toward confirmation without making full payment on the

effective date to Onkyo for its Section 503(b)(9) administrative expenses. *See* 11 U.S.C. §

1129(a)(9) (unless otherwise agreed, all administrative expenses must be paid on the effective

date of the Plan).  Because of the Debtors' resolve to proceed to confirmation prior to even

commencing the alleged preference actions without reserving any monies for distribution on

account of the "temporarily" disallowed claims, Onkyo is deprived of the ability to collect the

entirety of its administrative expenses, notwithstanding that the claim is validly owed. Onkyo's

predicament, like that of other similarly situated creditors, evidences that the practical effect of

the Order is to finally determine Onkyo's rights and strip Onkyo of its substantial administrative

expense priority, forcing Onkyo to unfairly bear the risk that the Debtors actually will be able to

pay Onkyo's entire administrative expense claim if and when an alleged preference claim against

Onkyo is eventually resolved.

Notwithstanding that Onkyo is confident the Order meets the requirements of finality,

Onkyo is filing this motion seeking leave to appeal out of an abundance of caution.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.      The Debtors[3] filed their voluntary petitions under Chapter 11 of the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code") on November 10, 2008.

2.      On November 12, 2008, the Court entered an Order Establishing Bar Date for

Filing Requests for Payment of Administrative Expense Claims under Bankruptcy Code Sections

105 and 503(B)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date

pursuant to Bankruptcy Rule 9007 (the "Administrative Expense Claim Order") [Dkt. No. 107],

which order required each creditor with a claim for administrative expenses under Code Section

503(b)(9) to file a "Section 503(b)(9) Claims Request" in a form attached as Exhibit B, or

alternatively, by motion, by the stated bar date. *See* Adm. Exp. Cl. Order, ¶¶ 2, 6 and Exh. B.

---

[3]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux
International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs,
Inc., XS Stuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and
Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond,
Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

3.      On April 1, 2009, on the motion of the Debtors seeking a bar date and related procedures for the filing of administrative expense claims including 503(b)(9) claims, this Court entered an Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections (the "Omnibus Objection Procedure Order") [Dkt. No. 2881].

4.      Pursuant to the Administrative Expense Claim Order, Onkyo timely filed its Section 503(b)(9) Claim Request for payment of its administrative expenses under Section 503(b)(9) for goods it provided to the Debtor, and received by the Debtor, within 20 days prior to the Petition Date (the "503(b)(9) Claim"). The 503(b)(9) Claim asserted an administrative priority claim against the Debtors in the amount of $4,905,048.57. Kurtzman Carson Consultants LLC docketed the 503(b)(9) Claim as Claim No. 128.

5.      The Debtors filed their First Amended Joint Plan of Liquidation (the "Plan") on September 29, 2009 [Dkt. No. 5124]. The Plan is currently scheduled for a confirmation hearing on April 6, 2010.

6.      On October 13, 2009, the Debtors filed their (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference [Dkt. No. 5214] (the "51st Omnibus Objection") with a Brief in Support thereof [Dkt. No. 5215] ("Debtors' Brief"), seeking an order "temporarily disallowing each of the claims identified on Exhibit C up to the amount of the Preferential Transfers . . . pending return of the Preferential Transfers." 51st Omn. Obj. ¶ 9.

7.      Onkyo's 503(b)(9) Claim was listed on Debtors' Exhibit C to the 51st Omnibus Objection in the docketed amount of $4,905,004.20. Exhibit C also showed that the Debtors, for the first time, asserted a preference of $3,995,027.00 against Onkyo (the "Alleged Preference"), which they sought to set off against Onkyo's Claim No. 128 by "temporarily disallowing" a

portion of such claim until such time as Onkyo returns the Alleged Preference. *See* Debtors' Br. at 4. The Debtors have not initiated an adversary proceeding on the Alleged Preference, and to date, the Debtors have presented no evidence to the Court (or to Onkyo) regarding the Alleged Preference.

8.    Onkyo is informed and believes that the Debtors filed additional omnibus claims objections, including Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference [Dkt. No. 5216] (the "52nd Omnibus Objection"), to all Section 503(b)(9) claims on essentially the same grounds and is seeking the same relief as asserted against Onkyo and the other creditors listed in the 51st Omnibus Objection, *i.e.*, that such creditors may have received preferential transfers that could be avoidable under Section 547(b), and that the Court should reduce any 503(b)(9) claims by "temporarily disallowing" such claim under Code Section 502(d) until such time as the creditors return the allegedly preferential transfers to the estate.

9.    A large number of creditors filed responses to the 51st and 52nd Omnibus Objections (*see* Mem. Op. n.5) (the "Respondents"), and the Debtors filed two reply briefs on November 10, 2009 [Dkt. Nos. 5621 and 5622].

10.    The Court held a hearing on the 51st and 52nd Omnibus Objections on November 12, 2009. At the hearing, with respect to the Section 503(b)(9) claims listed in both objections, the Court heard argument on one legal issue only: "whether § 502(d) can be used to temporarily disallow ¶ 503(b)(9) claims." *See* Mem. Op. at 1. At the hearing, the Debtors provided no evidence to the Court as to the merits of the alleged preference claims.

11.    On January 6, 2010, the Court issued the Order and Memorandum Opinion, partially sustaining the 51st and 52nd Omnibus Objections with respect to the Respondents'

503(b)(9) claims, and temporarily disallowing such claims. [Dkt. Nos. 6228 and 6288-1]. In the

Order the Court ruled:

> a. "The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims
>
> filed by Respondents under 11 U.S.C. § 503(b)(9) up to the amount potentially
>
> recoverable on account of preferential transfers allegedly avoidable under 11
>
> U.S.C. § 547"; and
>
> b. "The Respondents' § 503(b)(9) claims identified in the Objections are temporarily
>
> disallowed (the 'Disallowed Claims')."

12.    On January 13, 2010, Apex Digital, Inc. and THQ, Inc. filed a Motion for

Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections

(the "Motion for Reconsideration") [Dkt. No. 6258]. Under Bankruptcy Rule 8002(b), the

Motion for Reconsideration delayed the time for all parties affected by the Order to appeal the

Order and Memorandum Opinion until the Court disposed of the Motion for Reconsideration.

*See* FED. R. BANKR. PRO. 8002(b) ("If *any* party makes a timely motion [for reconsideration

under Rule 9023], the time for appeal for *all* parties runs from entry of the order disposing of the

last such motion outstanding." (emphasis added)).

13.    On February 23, 2010, the Court entered an order and accompanying

supplemental memorandum opinion denying the Motion for Reconsideration [Dkt. Nos. 6601,

6602]. The Court found that the parties seeking reconsideration of the Order were merely

"asking the Court to reconsider arguments that were made during the hearing and [were]

suggesting that the Court erred in its reasoning rather than in its apprehension." Supp. Mem. Op.

at 13.

### Questions Presented and Relief Requested

14.    The questions presented on appeal are as follows:

a. Whether the Bankruptcy Court erred in sustaining the Debtor's Fifty-First and Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims.

b. Whether the Bankruptcy Court erred in finding that administrative expenses arising under Section 503(b)(9) of the Bankruptcy Code are subject to temporary disallowance under Section 502(d) of the Code.

c. Whether the Bankruptcy Court erred in finding that Section 502(d) of the Bankruptcy Code is applicable to Section 503(3)(b) administrative expenses.

d. Whether the Bankruptcy Court erred in ruling that the Debtors could seek a temporary disallowance of Onkyo's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code without commencing the alleged preference actions.

e. Whether the Bankruptcy Court erred in temporarily disallowing Onkyo's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code, prior to an adjudication of the Debtor's alleged preference claim against Onkyo.

f. Whether the Bankruptcy Court erred in finding that creditors seeking administrative priority under Section 503(b)(9) are required to file a proof of claim pursuant to Section 501 of the Bankruptcy Code.

g. Whether the Bankruptcy Court erred in ruling that the Debtors could seek a temporary disallowance of Onkyo's Section 503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy Code within the claims resolution process and not in an adversary proceeding.

h. Whether the Bankruptcy Court erred in ruling that the Debtors were not seeking affirmative relief when they sought temporary disallowance of Onkyo's Section

503(b)(9) administrative expenses pursuant to Section 502(d) of the Bankruptcy

Code.

15.     While Onkyo believes the Order is final, Onkyo seeks an order from this Court

permitting it leave to appeal the Order to the District Court in an abundance of caution, wherein

Onkyo will seek an order from the District Court reversing the Bankruptcy Court's Order and

overruling the Debtor's Fifty-First Omnibus Objection to Certain 503(b)(9) Claims.

## Statement of Reasons to Grant Appeal

16.     The District Court has jurisdiction to hear Bankruptcy Court appeals of final

judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a). *In re Paschall*, 408 B.R. 79, 84

(E.D. Va. 2009).  However, leave of the Court is required to appeal from an interlocutory order.

*See Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996).

17.     The Eastern District of Virginia follows the standards set forth in 28 U.S.C.

§ 1292(b) to guide the Court's discretion in granting leave to appeal. *See In re Paschall*, 408

B.R. at 84; *see also Atlantic Textile Group, Inc.*, 191 B.R. at 653 ("This approach, while not

required by the terms of Section 158, provides a useful framework for considering the merits of a

discretionary appeal.").  Section 1292(b) permits leave to file an interlocutory appeal when: 1)

the order involves a controlling question of law; 2) as to which there is a substantial ground for a

difference of opinion; and, 3) immediate appeal would materially advance the termination of the

litigation. *Id.*

18.     The Order addresses the discrete and controlling issue of law, *to wit,* whether

Section 502(d) applies to the newly enacted Section 503(b)(9).[4]  *See supra* Questions Presented

for enumeration of collateral discrete issues.  Because of the brief history of Section 503(b)(9),

these are novel issues with very little case law addressing them and no appellate decisions of

---

[4]     Section 503(b)(9) gives administrative expense priority to creditors that delivered goods to a debtor within
the twenty days prior to bankruptcy for which the debtor did not pay. 11 U.S.C. § 503(b)(9).

record. *See Southern Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R.

742, 750 (Bankr. N.D. Ga. 2009) ("*Section 502(d)* does not contain any language or reference

which would make it applicable to administrative expenses of any kind.  More specifically, the

language of *§ 502(d)* does not imply or create a defense to a *§ 503(b)(9)* claim."); *In re Plastech*

*Eng'd Prods., Inc.*, 394 B.R. 147, 161 (Bankr. E.D. Mich. 2008) (determining that Section

503(b)(9) is not subject to Section 502(d)).  Although the Bankruptcy Court cites the decision of

*In re Plastech Eng'd Prods. Inc.*, as in line with the majority of courts who have ruled more

generally on the applicability of Section 502(d) to administrative expense claims arising under

Section 503(b),[5] the Court comes down on the opposite side of the issue.  *See* Mem. Op. at 9.

Furthermore, the decisions in *In re Plastech Eng'd Prods., Inc.*, *In re TI Acquisition, LLC*, *In re*

*MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503 (B.A.P. 9th Cir. 2002),

and the Memorandum Opinion exemplify the substantial grounds for a difference of opinion

among the courts.  The Bankruptcy Court recognized: "Courts are split on the issue of whether or

not § 502(d) can be read to apply to claims for administrative expense.  The majority of courts

have held that § 502(d) is generally not applicable to § 503(b) claims. [cites omitted]" Mem. Op

at 9.  Moreover, the extent and variety of briefing below by the Debtors and the thirty-four

creditors who responded to the 51st and 52nd Omnibus Objections further demonstrates these

differences of opinion among the parties.  Finally, the fact that the Order affects thirty-four

503(b)(9) respondents shows that review would materially advance the termination of substantial

litigation between each of the claimants and the Debtors, including the contested matters

instituted by Debtors' filing of the 51st and 52nd Omnibus Claims Objections.

---

[5]      *See, e.g., In re Ames Department Stores, Inc.*, 582 F.3d. 411, 430-32 (2d Cir. 2009) (Section 502(d) does
not apply to Section 503(b)); *Phoenix Restaurant Group, Inc. v. Proficient Food Co. (In re Phoenix Restaurant
Group, Inc.)*, 2004 WL 3113719 at *20 (Bankr. M.D. Tenn. 2004) (same); *In re Roberds, Inc.*, 315 B.R. 443, 476
(Bankr. S.D. Ohio 2004) (same); *Beasley Forest Prod., Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper
Co.)*, 297 B.R. 326 (Bankr. S.D. Ga. 2003) (same).

19.     The Fourth Circuit also permits review of non-final orders pursuant to the collateral order doctrine. *See Grundy Nat'l Bank v. Looney (In re Looney)*, 823 F.2d 788, 791 (4th Cir. 1987). To satisfy the collateral order doctrine as originally enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), the movant must show that the order: 1) conclusively determines the disputed question; 2) resolves an important issue completely separate from the merits of the action; and 3) is effectively unreviewable on appeal from a final judgment. *In re Looney*, 823 F.2d at 791 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). The Fourth Circuit has determined that appeals that would be "effectively unreviewable" after resolution on the merits should be heard, although they may not technically be final. *See Shipbuilders Council of America v. U.S. Coast Guard*, 578 F.3d 234, 239-40 (4th Cir. 2009).

20.     The collateral order doctrine applies here because:

a.  The Order conclusively determines the disputed question of law, *i.e.*, whether Section 502(d) of the Bankruptcy Code can be used to temporarily disallow Section 503(b)(9) administrative expense claims together with the related issues listed in the above Questions Presented;

b.  This issue of law is separate from the merits of the main bankruptcy case, including confirmation issues, and from the merits of any future adversary proceedings arising from the Debtors' Alleged Preference; and

c.  Delay of review until the conclusion of the bankruptcy case or of any future adversary proceedings on preferences may make meaningful review impossible because, by that point, the Debtor may have distributed all the estates' assets, leaving no funds to pay any reinstated administrative expense claims if the Debtors cannot prove the Alleged Preference.

## Copy of Order and Memorandum

21.      Copies of the Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections

entered in the above-captioned case on January 6, 2010 and its accompanying Memorandum

Opinion are attached hereto as Exhibit A and Exhibit B, respectively. Copies of the  Order

Denying Motion to Reconsider and the Supplemental Memorandum Opinion Denying

Reconsideration of Court's Order on Debtor's Fifty-First and Fifty-Second Omnibus Objections

are attached hereto as Exhibits C and D, respectively.

WHEREFORE, Onkyo respectfully requests that the District Court enter an order

granting this motion and leave to appeal the Orders and granting such other and further relief as

this Court deems just and proper.

Dated: March 9, 2010                    **ONKYO USA CORPORATION**

                                        /s/ Philip C. Baxa
                                        Philip C. Baxa, Esquire VSB No. 22977
                                        MercerTrigiani LLP
                                        16 South Second Street
                                        Richmond, Virginia 23219
                                        Telephone: (804) 782-8691
                                        Facsimile: (804) 644-0209
                                        phil.baxa@mercertrigiani.com

                                        - and -

                                        EDWARDS ANGELL PALMER & DODGE LLP
                                        Larry D. Henin, Esq.
                                        Paul J. Labov, Esq.
                                        750 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 308-4411
                                        Facsimile: (212) 308-4844

                                        *Counsel for Onkyo USA Corporation*

12

## CERTIFICATE OF SERVICE

I certify that on March 9, 2010 I will electronically file the foregoing Onkyo USA Corporation's Motion for Leave to Appeal and Memorandum with the Clerk of the Court using the CM/ECF system, and send a true and correct copy of the foregoing Motion and Memorandum via regular mail, postage prepaid, on March 9, 2010 to:

Greg M. Galardi
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

Robert Van Arsdale
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

Dion W. Hayes
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219

Robert J. Feinstein
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 36th Floor
New York, NY 10017

Lynn L. Tavenner
Tavenner & Beran, PLC
20 North Eighth Street
Second Floor
Richmond, VA 23219

Brad R. Godshell
Pachulski Stang Ziehl & Jones
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100

Douglas H. Foley
McGuire Woods, LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510

Chris L. Dickerson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, Illinois 60606

/s/ Philip C. Baxa
Philip C. Baxa (VSB No. 22977)

R0010087

**<u>Exhibit A</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      CIRCUIT CITY STORES, INC.,        Case No. 08-35653
            *et al.*,                    Chapter 11
                 Debtors.        Jointly Administered

## MEMORANDUM OPINION

The issue now before the Court in this Chapter 11 case is whether the Debtors may use § 502(d) of the Bankruptcy Code to temporarily disallow certain § 503(b)(9)[1] claims filed by a number of their creditors (the "Claimants"). The Debtors seek to have the claims filed by the Claimants temporarily disallowed up to the amount potentially recoverable on account of preferential transfers allegedly avoidable under § 547 (the "Preferential Transfers). Hearing was conducted on November 12, 2009 (the "Hearing") to consider Debtors' request for ruling on the threshold issue of whether § 502(d) can be used to temporarily disallow § 503(b)(9) claims.

### Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

### Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores. As of March, 8, 2009, the going out of business sales had been completed. On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan"). The disclosure statement was approved by order entered September 24, 2009. The confirmation hearing is currently scheduled for January 28, 2010.

---

[2] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

On October 13, 2009, the Debtors filed two omnibus objections (the "Objections")[3] to

certain of the Claimants' claims that asserted a § 503(b)(9) administrative priority (the "Claims")

on the grounds that those Claims should be temporarily disallowed under § 502(d) up to the

amount potentially recoverable in an avoidance action under § 547 until the return of any

Preferential Transfers.[4]  A large number of Claimants filed responses[5] (the "Responses"), and on

November 10, 2009, the Debtors filed two reply briefs.[6]

---

[3]      The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount under § 507 of the Bankruptcy Code.

[4]      *See* Debtors' (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5214]; Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5216].

[5]      *See* Response of Namsung America Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5411]; PNY Technologies, Inc.'s Response to Debtors Fifty-First Omnibus Objection to Claims [Docket No. 5416]; Response of Onkyo USA Corporation in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5447]; Mitsubishi Digital Electronics America, Inc.'s Response to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5454]; Response of Digital Innovations, LLC on Behalf of VonWin Capital Management, LP to Debtors' Fifty-First Omnibus Objection to Claims [Docket No.5470]; Response of Longacre Opportunity Fund, L.P. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5472]; Envision Peripherals, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5475]; Response and Joinder of JVC Americas Corp. and JVC Company of America to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5479]; Response of Olympus Corporation and Olympus Imaging America, Inc. to Debtors' (I) Fifty-First Omnibus Objection to Claims [Docket No. 5529]; Response of Hauppage Computer Works, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5530]; Response of United States Debt Recovery, LLC to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5535]; Response and Objection of Midland Radio Corporation to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5537]; Response and Objection of Bethesda Softworks LLCto Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5539]; Response of TeleDynamics LLP in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5610]; Metra Electronics Corporation's Opposition to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5487]; Response of Sima Products Corp. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5491]; Joint Response of THQ, Inc. and Apex Digital, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5497]; Tamrac, Inc.'s Opposition to Debtor's Fifty-First Omnibus Objection [Docket No. 5498]; Response of Nyko Technologies, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5499]; Response of SouthPeak Interactive, LLC to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5502]; Bush Industries Inc.'s Response and Joinder Regarding Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5505]; Joinder of Vonage Marketing LLC to the Responses Filed by SouthPeak Interactive, LLC and Nyko Technologies, Inc to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5506]; Omnibus Response of Vonwin Capital Management, L.P. to Debtors' Forty-Eighth, Forty-Ninth, Fiftieth and Fifty-First Omnibus Objections [Docket No. 5509]; Response in Opposition of BISSELL Homecare, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5511]; Cokem International, Inc.'s Response to the Debtor's Fifty-First Omnibus Objection [Docket No. 5515]; Response of Paramount Home Entertainment Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5434]; Response of SanDisk Corporation to Debtors' (I) Fifty-Second Omnibus

In their Objections and at the Hearing, the Debtors requested a determination of the threshold legal issue of whether § 502(d) can be applied as a matter of law to temporarily disallow § 503(b)(9) claims in the amount potentially recoverable as a preferential transfer under § 547. Several of Claimants' Responses took issue with proceeding in this manner. They objected to the Hearing, arguing that it was improper to consider the threshold legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim in a contested matter as part of the claims resolution process separate from any underlying adversary proceeding to determine whether a Preferential Transfer was recoverable in the first instance. The Claimants based their objection to the bifurcation of these issues an on essentially three grounds: (1) bifurcation deprived them of their constitutional due process rights, (2) the Debtors were requesting an advisory opinion, and (3) the Debtors should be required to file an adversary proceeding in order to raise the legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim.

Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures. . . it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1014 (4th Cir.

Objection to Claims [Docket No. 5449]; Pioneer Electronics' Response to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5464]; LG Electronics USA, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5489]; Response of Toshiba America Consumer Products,L.L.C. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5495]; Response of Samsung Electronics America, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5496]; Samsung Electronics America, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5500]; Twentieth Century Fox Home Entertainment LLC's Response in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5504]; Response of Take Two Interactive Software, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5583].

[6]    *See* Debtors' Omnibus Reply in Support of (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5621]; Debtors' Omnibus Reply in Support of (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5622].

1986) (internal citations omitted). In this case, parties were given ample notice that the threshold legal issue regarding whether § 502(d) could be applied to temporarily disallow a § 503(b)(9) claim would be the topic of the first hearing on the two omnibus Objections. Based on the quantity and the quality of the briefs submitted to this Court (including amicus briefs) and the thorough oral arguments made at the Hearing, the parties have certainly exercised their opportunity to be heard.   Further, the Debtors are not requesting an ultimate judicial determination concerning the allowance of these Claims. Rather, they are seeking to postpone payment of the Claims by disallowing them temporarily until the underlying issues can be fully adjudicated in separate adversary proceedings.[7] To this end, Debtors are requesting a ruling on a threshold legal issue common to all of the Claimants.   Each of the Claimants will have an opportunity to have an adjudication made in the context of a full blown adversary proceeding regarding any liability they might have for the alleged Preferential Transfers.  Therefore, the Claimants' due process rights are not being infringed.  Rather, the due process rights of the bankruptcy estates are being preserved.

The Court is not rendering an advisory opinion.  Very real disputes exist between the parties concerning the threshold legal issue.  The Court is not asked to issue an advisory opinion when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court is merely making a partial ruling in an interlocutory fashion on a very real controversy, and it is reserving the

---

[7] If the Claims are not temporarily disallowed, the Debtors will be required to pay to Claimants cash equal to the amount of their Claims on the effective date of the Plan once it is confirmed, *See* 11 U.S.C. §1129(a)(9); and, thereby, the bankruptcy estates may forfeit any right they may have to contest the underlying dispute.

adjudication regarding the underlying liability for any alleged Preferential Transfers for a later determination to be made in the context of an adversary proceeding.

Finally, the Debtors do not need to file an adversary proceeding in order to have this threshold legal issue resolved. The Debtors are asserting a defense within the claim resolution process. They do not seek affirmative relief. Therefore, Bankruptcy Rule 7001 is not implicated and an adversary proceeding is not necessary at this time.

Pursuant to Bankruptcy Rule 3007 a claim objection need not be made in an adversary proceeding.[8] When a response is filed to an objection, the claim objection becomes a contested matter governed by Bankruptcy Rule 9014. *See In re Fleming,* 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter, and Fed. R. Bankr. P. 9014 applies."). As such, certain rules, under part VII of the Federal Rules of Bankruptcy Procedure are applicable, including Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"). *See id.; see also* Fed. R. Bankr. P. 7056.[9]

Bifurcating the Hearing between a common threshold legal issue that pertains to all the Claims Objections and reserving for later determination the underlying issues unique to each of the adversary proceedings will create efficiencies in resolving the Claims Objections as well as greater opportunity for all interested parties to participate and be heard. When Claimants were questioned during the Hearing as to how they would propose to go forward if the Hearing was

---

[8] Rule 3007(b) of the Federal Rules of Bankruptcy Procedure states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." The Debtors are not seeking relief of the kind specified in Rule 7001. Rather, they are asserting an affirmative defense to the claims.

[9] Under Civil Rule 56, a party may request partial summary judgment. *See* Fed. R. Civ. P. 56(a), (b) (providing that any party "may move, with or without supporting affidavits, for summary judgment on all or part claim."). Here, the Debtors have, in essence, requested partial summary judgment on a particular legal issue for which no genuine issue of material fact is in dispute. Thus, the Debtors' request to bifurcate the hearings is proper under the applicable Rules of Bankruptcy Procedure.

not bifurcated, they suggested that the alternative would be to go forward individually on a claim by claim basis in connection with the separate adversary proceedings. This suggested alternative would take significantly more time and would be potentially detrimental to parties given later trial dates. Given the efficiencies created by this method and the greater opportunity of all Claimants to participate and be heard on the common legal issue, it is not surprising that many other bankruptcy courts have proceeded in a similar fashion—first addressing common threshold legal issues before resolving separate underlying liability issues. *See, e.g., In re Leeds Bldg. Prods., Inc.*, 141 B.R. 265, 266 (Bankr. N.D. Ga. 1992); *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 149 (Bankr. E.D. Mich. 2008); *In re Hackney*, 351 B.R. 179, 181 (Bankr. N.D. Ala. 2006); *In re Dawson*, 346 B.R. 503, 507 (Bankr. N.D. Cal. 2006); *In re Hicks*, 300 B.R. 372, 375 (Bankr. D. Idaho 2003). Accordingly, the Court agreed to hear arguments relating to the one legal issue regarding the application of § 502(d) to temporarily disallow the Claims filed by the Claimants pending an adjudication of any underlying liability for the alleged Preferential Transfers in the context of separate adversary proceedings.

## Analysis

The question before the Court is whether § 502(d) may be used to bar § 503(b)(9) administrative expense claims. Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Section 502(d) provides that "[n]otwithstanding subsections (a) and (b) of [section 502], the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553, of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545,

547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or

turned over any such property, for which such entity or transferee is liable under section 522(i),

542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d). Debtors contend that the Claimants are

transferees of Preferential Transfers avoidable under § 547. From a plain reading of § 502(d), it

would appear that if a Claimant's request for payment of an administrative expense arising under

§ 503(b)(9) is a "claim" under the Bankruptcy Code, then § 502(d) may be used to disallow it.

    The word "claim" is defined in § 101(5)(A) as a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A). It is generally accepted

that "Congress chose expansive language," in defining the term "claim," and therefore the

definition of "claim" should be broadly construed and applied. *Pennsylvania Dep't of Pub.*

*Welfare v. Davenport*, 495 U.S. 552, 558 (1990). Administrative expenses appear to be a subset

of "claims."    Throughout the Bankruptcy Code, the term "claim" is used to refer to

administrative expenses. For example, under § 1123(a), "a plan shall (1) designate, subject to

section 1122 of this title, classes of claims, other than claims of a kind specified in section

507(a)(2)." 11 U.S.C. § 1123(a)(1).    Section 507(a)(2) specifically refers to "administrative

expenses allowed under section 503(b) of this title. . . ." 11 U.S.C. § 507(a)(2). So, the kind of

"claims" specified in § 507(a)(2) to which § 1123(a) refers are administrative expenses.[10]

Further, § 503(b) itself uses the terms "claims" and "expenses" interchangeably: "[a]fter notice

and hearing, there shall be allowed administrative expenses, other than claims allowed under

section 502(f) of this title. . . ." 11 U.S.C. § 503(b). If Congress had intended that these terms be

mutually exclusive, there would be no need to carve out "claims" allowed under § 502(f). *See,*

*e.g., F.C.C. v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 302 (2003) (holding that

---

[10]  Similarly § 1129(a)(9)(A) refers to *claims* of a kind specified in section 507(a)(2).

a reading that renders parts of the Bankruptcy Code "superfluous . . . means, of course, that such a reading must be rejected.").

When a "statute's language is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). From a plain reading of the text of § 502(d), it appears that § 502(d) can be invoked to disallow a claim for an administrative expense under § 503(b). Nonetheless, the Claimants argue in their Responses that §§ 502(d) and 503(b) should be read separate and apart from one another, where § 502(d) may only be used to disallow claims filed under § 501 and not claims filed under § 503(b). The Respondents rely heavily on the logic of *In re Ames Dep't Stores, Inc.,* 582 F.3d 411, 430 (2d Cir. 2009) ("Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled 'Allowance of administrative expenses.' The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects. . . . Thus, with respect to the allowance of claims, sections 502 and 503 are separate and independent.").

Courts are split on the issue of whether or not § 502(d) can be read to apply to claims for administrative expense. The majority of courts have held that § 502(d) is generally not applicable to § 503(b) claims. *See, e.g., In re Ames,* 582 F.3d at 430-32 (holding that § 502(d) does not apply to administrative expenses under § 503(b)); *In re TI Acquisition, LLC,* 410 B.R. 742 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Prods., Inc.,* 394 B.R. 147, 161 (Bank. E.D. Mich. 2008) (holding that § 502(d) may not be used to bar claims under § 503(b)(9)); *In re Roberds, Inc.,* 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004); *In re Lids Corp.,* 260 B.R. 680, 683-4 (Bankr. D. Del. 2001); *In re CM Holdings, Inc.,* 264 B.R. 141, 158 (Bankr. D. Del. 2000) (holding that § 502(d) was not applicable to a postpetition administrative expense claim). A

minority of courts have adopted the contrary position and read the definition of "claim" in § 101(5) as broad enough to cover administrative expenses. *See, e.g., In re MicroAge, Inc.,* 291 B.R. 503, 513-4 (B.A.P. 9th Cir. 2002); *In re Georgia Steel, Inc.,* 38 B.R. 829, 839-40 (Bankr. M.D. Ga. 1984).

The majority approach is more consistent with established Fourth Circuit precedent. In *Durham v. SMI Industries,*[11] the Fourth Circuit Court of Appeals stated that "Section 502(d) provides, in pertinent part, that 'the court shall disallow any claim of any entity from which property is recoverable under section . . . 550, unless such entity . . . has paid the amount . . . for which such entity or transferee is liable.' Since a court can only disallow a claim after one has been filed under 11 U.S.C.A. 501(a), 'claim' in section 502(d) includes only one for which a proof has been filed." *Durham v. SMI Industries,* 882 F.2d. 881, 882-83 (4th Cir. 1989). Therefore, despite the expansive language used in § 101(5)(A) that defines the term "claim" and despite the apparent plain meaning of § 502(d) that applies that defined term, the law in this Circuit is that § 502(d) can only be used to bar "claims" where the "claims" are filed under § 501(a). This application of the law is entirely in keeping with the recent holding of the Second Circuit in *In re Ames.*[12]

The Debtors argue that the instant case can be distinguished from *In re Ames* and *Durham v. SMI Industries* because this case involves § 503(b)(9) claims, which arise prepetition, rather than general § 503(b) administrative expenses, most of which arise postpetition. Notably, the Debtors argue that even if the courts in *Ames* and *Durham* are correct that § 502(d) can only

---

[11] *Durham v. SMI Industries,* 882 F.2d. 881 (4th Cir. 1989).

[12] It is also worth noting that the Ames court specifically did not address the application of 502(d) to 503(b)(9) claims. *See Ames,* 582 F.3d at 424, n. 2 ("Neither party has suggested that section 503(b)(9) has any *relevance* to this appeal, and we do not specifically address its interaction with section 502(d)."). Further, the *Ames* court paid special attention to the postpetition nature of administrative expenses in holding 502(d) inapplicable. *Id.* at 431.

be used to disallow claims filed under 501(a) of the Bankruptcy Code, § 503(b)(9) claims, unlike other § 503(b) administrative expenses, *must* be filed under § 501(a) of the Bankruptcy Code.

Bankruptcy Rule 3002(a) mandates that "[a]n unsecured creditor . . . *must* file a proof of claim . . . for the claim . . . to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr. P. 3002(a) (emphasis added).[13]  Bankruptcy Rule 3003(c) addresses filing a proof of claim in a Chapter 11 case: "(2) Who must file. Any creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated *shall* file a proof of claim. . . ." Fed. R. Bankr. P. 3003(c)(2) (emphasis added).[14]

The definition of "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the [Petition Date]. . . ." 11 U.S.C. §101(10)(A). The Claimants are entities whose claims arose against the Debtors prepetition because they delivered goods to the Debtors within the 20 days prior to the Petition Date for which they were not paid.  Accordingly, the Claimants are "creditors" within the meaning of the Bankruptcy Code. Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that "creditors" must file a proof of claim to receive a distribution.  Therefore, Claimants, as prepetition "creditors", must file their § 503(b)(9) claim under § 501(a).  Neither the Federal Rules of Bankruptcy Procedure nor the Bankruptcy Code provide § 503(b)(9) Claimants an exception to this rule.  In fact, each Claimant in this case did file a proof of claim under § 501(a).  If a "creditor" wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501, second, have the claim allowed under § 502, and then, third, request administrative expense priority under § 503(a).

---

[13]  None of the exceptions provided in Rules 1019(3), 3003, 3004, and 3005 of the Federal Rules of Bankruptcy Procedure are applicable to the Claimants.

[14]  The Claimants' Claims in this case were either not scheduled or were scheduled as disputed, contingent or unliquidated.

The Bankruptcy Court of the Eastern District of Michigan is one of the few courts that has specifically addressed the application of § 502(d) to §503(b)(9) claims. *See In re Plastech Engineered Products Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008). The *Plastech* court held that § 502(d) could not apply to § 503(b)(9) claims because there was nothing in the Bankruptcy Code that made § 503(b)(9) claims a "special class," that would distinguish them from other § 503(b) claims. *Id.* at 163-64. The *Plastech* court, though, ignored the fact that nothing in the Bankruptcy Code makes §§ 501, 502 and 503 mutually exclusive. A creditor may be required to seek allowance of its claim under both §§ 502 and 503. This is, in fact, what the Federal Rules of Bankruptcy Procedure require in cases of § 503(b)(9) claims.

Both *Durham* and *Ames* make clear that § 502(d) may only be used to disallow claims filed by creditors under § 501(a). Although Claimants may be entitled to administrative expense status under § 503(b)(9), they are also creditors within the meaning of § 101(10)(A) and, as such, were required to file a proof of claim under § 501(a) in accordance with Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure. Therefore, consistent with *Durham* and *Ames*, § 502(d) may be applied to disallow the Claimants' Claims until the Claimants have paid into the estate any Preferential Transfers for which they may be held liable.

The goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the Claimants' Claims. Section 547(c)(4) provides a creditor with a "new value" defense to a claim that the creditor received an avoidable Preferential Transfer. 11 U.S.C. § 547(c)(4). This defense allows a creditor "to offset preference payments through the extension of new value to the debtor so long as the debtor does not make an *otherwise unavoidable transfer* on account of the new value." *In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir. 2005). The definition of "new value" includes "money or money's worth

12

in goods. . . ." 11 U.S.C. § 547(a)(2). It is very likely, therefore, that in many instances, a Claimant will be both seeking an administrative expense payment for goods delivered in the 20 days prior to the Petition Date under § 503(b)(9) and using the delivery of those same goods as a basis for the new value defense. If the Claimant succeeds in both instances, then the Claimant will receive full payment on the § 503(b)(9) claim and the estate will be unable to get back the value of any Preferential Transfer that was made. This would allow the Claimant to receive a more favorable distribution to the detriment of other claimants in the case. Temporarily disallowing the Claims and holding them in abeyance until the preference litigation takes place would allow this Court to adjudicate these issues together and ensure that Claimants do not receive windfalls to the detriment of other creditors.

**Conclusion**

For the above reasons, the Court concludes that § 502(d) may be used to temporarily disallow § 503(b)(9) claims. As the Fourth Circuit held in *Durham*, § 502(d) may be used to bar claims filed under § 501. Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that all creditors must file proofs of claim pursuant to § 501(a). By definition, § 503(b)(9) claims arise within the 20 days prior to the Petition Date. This means that Claimants, as holders of § 503(b)(9) claims, are creditors as defined in § 101(10)(A). As creditors, Claimants must file a proof of claim under § 501(a). Therefore, § 502(d) may be used to temporarily disallow the Claims filed under § 501(a) up to the amount of the alleged Preferential Transfers.

A separate order shall be issued.

ENTERED:    Jan 6 2010
_____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

13

**<u>Exhibit B</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., *et al.*, Debtors. | Case No. 08-35653 Chapter 11 Jointly Administered |

## ORDER ON DEBTORS' FIFTY-FIRST,
## AND FIFTY-SECOND OMNIBUS OBJECTIONS

Upon consideration of Debtors'(I) Fifty-First Omnibus Objection to Certain 503(b)(9)

Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response

Proceed as a Status Conference, filed on October 13, 2009 (Docket No. 5214; the "51st Omnibus

Objection), and Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and

(II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a

Status Conference, filed on October 13, 2009 (Docket No. 5216; the "52nd Omnibus Objection";

collectively, with the 51st Omnibus Objection, the "Objections"), the responses thereto (Docket

Numbers 5411, 5416, 5447, 5454, 5470, 5472, 5475, 5479, 5529, 5530, 5535, 5537, 5539, 5610,

5487, 5491, 5497, 5498, 5499, 5502, 5505, 5506, 5509, 5511, 5515, 5434, 5449, 5464, 5489,

5495, 5496, 5500, 5504, 5583; collectively, the "Responses") of the respondents (the

"Respondents") and the omnibus replies thereto (Docket Numbers 5621 & 5622; together, the

"Replies"); and the Court having reviewed the Objections, the Responses and the Replies; and

the Court having considered the arguments advanced by the Debtors and the Respondents at the

hearing held on November 12, 2009; and upon the record herein, and after due deliberation

thereon; and good and sufficient cause appearing therefore as set out in the Court's Memorandum Opinion[1] entered on this date, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Objections are partially SUSTAINED to the extent set forth herein.

2.    The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims filed by Respondents under 11 U.S.C. § 503(b)(9) as set forth in the 51st Omnibus Objection and the 52nd Omnibus Objection up to the amount potentially recoverable on account of preferential transfers allegedly avoidable under 11 U.S.C. § 547.

3.    The Respondents' § 503(b)(9) claims identified in the Objections are temporarily disallowed (the "Disallowed Claims").

4.    The Debtors' right to object to any claim on any grounds that governing law permits is not waived and expressly preserved.

5.    The requirement that the initial hearings on the Objections proceed as status conferences is hereby waived.

6.    This Court retains jurisdiction to hear and determine all matters arising from or related to the Objections, the Disallowed Claims and this Order.

ENTERED: _____

_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

Entered on docket: Jan 6 2010

---

[1]  The Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

**Exhibit C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:         CIRCUIT CITY STORES, INC.,              Case No. 08-35653
               *et al.*,                               Chapter 11
                    Debtors.                           Jointly Administered

## ORDER ON MOTION TO RECONSIDER

For the reasons set forth in the Supplemental Memorandum Opinion entered on this date,

it is hereby

**ORDERED** that the Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of

the Court's Order on Debtors' Fifty-first and Fifty-second Omnibus Objections and Memoran-

dum Opinion dated January 6, 2010 be, and it hereby is, DENIED.

ENTERED:    Feb 23 2010

Entered on docket: Feb 23 2010

                              /s/ Kevin R. Huennekens
                         UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      CIRCUIT CITY STORES, INC.,          Case No. 08-35653
            *et al.*,                           Chapter 11
                       Debtors.                 Jointly Administered

**SUPPLEMENTAL
MEMORANDUM OPINION**

     Before the Court is the Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-first and Fifty-second Omnibus Objections (the "Motion"), the Debtors' objection to the Motion, and the Movants' reply thereto.  Apex Digital, Inc. and THQ, Inc. (the "Movants") ask the Court to reconsider its Order and Memorandum Opinion dated January 6, 2010 (the "Memorandum Opinion"), in which the Court held that the Debtors may use 11 U.S.C. § 502(d) to temporarily disallow certain § 503(b)(9)[1] claims filed by a number of their creditors (the "Claimants").[2]

     Movants assert that in rendering its Memorandum Opinion, the Court failed to consider their late filed supplemental response (the "Supplemental Response").[3]  In light of the arguments

---

[1]  Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

[2]  Various other Claimants have joined in the Motion.  *See* Joinder of Paramount Home Entertainment Inc. to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections [Docket No. 6323]; PNY Technologies, Inc.'s Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections [Docket No. 6322]; Olympus Corporation and Olympus Imaging America Inc.'s Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections [Docket No. 6349]; Onkyo USA Corporation's Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objection [Docket No. 6351]; Joinder of Toshiba America Consumer Products, L.L.C. to Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections [Docket No. 6370].

[3]  The Supplemental Response [Docket No. 5666] was filed, without leave of court, on November 13, 2009, the day after the hearing on the Debtors' Fifty-First and Fifty-Second Omnibus Objections to Certain § 503(b)(9) Claims.

set forth in the Supplemental Response, Movants request that the Court reconsider its January 6,

2010 ruling (the Court's "Prior Ruling") in accordance with Fed. R. Civ. P. 59 as made

applicable herein by Fed. R. Bankr. P. 9023.[4]  Movants urge the Court to reverse its Prior Ruling

and overrule the Debtors' Fifty-First and Fifty-Second Omnibus Objections to Certain 503(b)(9)

Claims.

    The Fourth Circuit Court of Appeals (the "Fourth Circuit") recognizes three grounds for

reconsideration under Fed. R. Civ. P. 59:  "(1) to accommodate an intervening change in

controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear

error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.

1993); *see also Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006).  Nothing in the Motion

suggests that there has been any intervening change in controlling law, any new evidence for

which to account, or any manifest injustice to prevent.  Rather, the Movants argue that the Court

made a clear error of law in holding that § 502(d) may be used to temporarily disallow a claim

asserted under § 503(b)(9).  After review of the arguments presented in the Supplemental

Response, the Motion, the Debtors' objection to the Motion, and the Movants' reply, many of

which were already analyzed in the Memorandum Opinion, the Court concludes that no clear

error of law was made in connection with its Prior Ruling.[5]  Accordingly, Movants' Motion will

---

[4]  The Federal Rules of Bankruptcy Procedure are hereinafter referred to as the "Bankruptcy Rule(s)."

[5]  Failure to review the Supplement Response does not constitute a clear error of law, nor is it necessary to prevent
manifest injustice. *See Motorists Mut. Ins. Co. v. Teel's Restaurant Inc.*, 2009 WL 5065223, *1 (N.D. Ind. Dec. 23,
2009) (holding that the court's failure to consider a reply brief in support of a motion for summary judgment before
issuing its ruling was not manifest error of law such that motion for  reconsideration should be granted); *Ogbevoen
v. Aramark Campus, Inc.*, 2006 WL 1788430, *1 (S.D. Tex. June 20, 2006) (holding that the court did not err in
failing to consider reply in support of motion for summary judgment when reply was filed after deadline established
by the court); *Cotracom Commodity Trading Co.v. Seaboard Corp.*, 193 F.R.D. 696, 699 (D. Kan. 2000) ("That the
Court failed to consider the reply brief thus provides no basis to reconsider the ruling concerning the duty to
confer.").  The Court had no obligation to review the Supplemental Response. *See Colodney v. Sebelius*, 2009 WL
4884501, *1 n.1 (D. Md. Dec. 9, 2009) (noting that the court has discretion to disregard untimely filed reply to

be denied.    This Supplemental Memorandum Opinion sets forth the Court's findings and

conclusions in support of its denial of the Motion and supplements the Court's findings of fact

and conclusions of law set forth in the Memorandum Opinion all in accordance with Rule 7052

of the Federal Rules of Bankruptcy Procedure.[6]  As no party has raised any new facts, the facts

and procedural history as set out in the Memorandum Opinion are incorporated by reference into

this Supplemental Memorandum Opinion.[7]

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C.

§§ 157 and 1334 and the general order of reference from the United States District Court for the

Eastern District of Virginia dated August 15, 1984.   This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (B), (C), and (O).   Venue is appropriate in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

### The Court's Prior Ruling

The question initially put before the Court was whether the Debtors could use § 502(d) to

temporarily disallow § 503(b)(9) administrative expense claims.[8]   The Court began its analysis of

this issue with § 502(d) which "provides, in pertinent part, that 'the court shall disallow any

---

motion for summary judgment).   Nevertheless, the Court has given due consideration to the arguments set forth in
the Supplemental Response, the Motion, and Movants' reply as detailed in this Supplemental Memorandum
Opinion.  *See In re E.M. Williams & Sons, Inc.,* 2009 WL 2211727, *1 (Bankr. E.D. Va 2009) (addressing a new
argument advanced by the Plaintiff in a motion to reconsider, even though the Plaintiff raised arguments that could
have been raised prior to the issuance of the Court's decision and the Plaintiff did not identify any new evidence that
was not previously available to it nor cite any intervening change in controlling law).

[6]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[7]  The only change in facts since the entry of the Memorandum Opinion on January 6, 2009 is that the Confirmation
hearing is now scheduled for March 8, 2010, instead of January 28, 2010.

[8]  Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by
the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been
sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).

claim of any entity from which property is recoverable under section . . . 550, unless such entity

. . . has paid the amount . . . for which such entity or transferee is liable.'" *Durham v. SMI

*Industries*, 882 F.2d. 881, 882-83 (4th Cir. 1989). Debtors contend that the Movants are

transferees of Preferential Transfers avoidable under § 547 of the Bankruptcy Code. The Fourth

Circuit explained in *Durham* that the term "claim" as used in § 502(d) is not to be construed

expansively in accordance with the definition supplied in § 101(5)(A) of the Bankruptcy Code;[9]

but rather, the term "claim" as used in § 502(d) refers only to claims for which a proof has been

filed under § 501(a).    *Id.*    As the vast majority of administrative expense claims arise

postpetition, § 501(a) is inapplicable to them, and § 502(d) cannot be used to bar those types of

administrative expense claims.

     In its Memorandum Opinion, the Court concluded that a claimant asserting a § 503(b)(9)

administrative expense claim must file a proof of claim under § 501 in order to have such claim

allowed as an administrative expense under § 503(b)(9).    Rules 3002 and 3003 of the Federal

Rules of Bankruptcy Procedure require all creditors to file proofs of claim pursuant to § 501(a).

By definition, § 503(b)(9) administrative expense claims arise within the 20 days prior to the

Petition Date. This means that the holders of § 503(b)(9) administrative expense claims are

creditors as defined in § 101(10)(A) of the Bankruptcy Code. As creditors, the holders of

§ 503(b)(9) administrative expense claims (unlike the majority of entities holding other § 503(b)

administrative expense claims that arise postpetition) must file a proof of claim under § 501(a) of

the Bankruptcy Code. In accordance with the Fourth Circuit's holding in *Durham* that § 502(d)

may be used to bar claims filed under § 501, the Court concluded in its Memorandum Opinion

---

[9] "The term 'claim' means -- (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. 101(5)(A).

4

that § 502(d) may be used to temporarily disallow § 503(b)(9) Claims filed under § 501(a) up to

the amount of the alleged Preferential Transfers.

## Discussion

Movants argue in their Motion that the Court's conclusion that § 503(b)(9) Claimants

must file proofs of claim pursuant to Bankruptcy Rule 3002 is "unfounded." Yet, Movants do

not take issue with the Court's observation that the plain language of Bankruptcy Rule 3002

requires that "[a]n unsecured *creditor* . . . *must* file a proof of claim . . . for the claim . . . to be

allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr. P. 3002(a)

(emphasis added). None of the exceptions set forth in Bankruptcy Rules 1019(3), 3003, 3004,

and 3005 are applicable here. Quite to the contrary, Bankruptcy Rule 3003(c), which addresses

specifically the need to file a proof of claim in a Chapter 11 case, provides that "[a]ny

creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or

unliquidated *shall* file a proof of claim. . . ." Fed. R. Bankr. P. 3003(c)(2) (emphasis added).[10]

As explained in the Memorandum Opinion, there is no escaping the fact that the § 503(b)(9)

Claimants are unsecured creditors as defined in §101(10)(A).[11]   Neither Movant suggests that it

is not a "creditor" within the meaning of that section.

Rather, Movants argue that, if Bankruptcy Rule 3002 is read to apply to § 503(b)(9)

administrative expense claims as the Court maintains, then the Bankruptcy Rule would directly

conflict with § 503(a) of the Bankruptcy Code. Movants point out that "[a]ny conflict between

the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *In re*

---

[10]   Movants' administrative expense claims were either unscheduled or scheduled as disputed, contingent or
unliquidated; and, therefore, Movants were required by the Bankruptcy Rules to file proofs of their claims, which, in
fact, they did.

[11]   "The term 'creditor' means – (A) entity that has a claim against the debtor that arose at the time of or before the
order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section
348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." 11 U.S.C. §101(10).

*Pacific Atlantic Trading Co.,* 33 F.3d 1064, 1066 (9th Cir. 1994). The Court agrees with this abstract principle of law -- conflicts between the Bankruptcy Code and the Bankruptcy Rules must be resolved in favor of the Code. But in this instance, there is no such conflict. Applying Bankruptcy Rule 3002 to § 503(b)(9) administrative expense claims does not "abridge, enlarge, or modify any substantive right" in the Bankruptcy Code. *See* 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right.").

Bankruptcy Rules 3002 and 3003(c) merely set forth the practice and procedure for filing proofs of claim under § 501(a) in chapter 11 cases. Section 501(a) states that "a creditor . . . may file a proof of claim." As each § 503(b)(9) Claimant is very clearly "a creditor" within the meaning of the Code, § 501(a) is applicable to their claims. Nothing in the language of §§ 501, 502, or 503 of the Bankruptcy Code suggests that filing a proof of claim by a creditor under § 501 becomes unnecessary when the creditor also seeks to have the claim paid as an administrative expense under § 503(b)(9) and accorded priority status under § 507(a)(2). Section 503(a) states that an "entity may timely file a request for payment of an administrative expense." Requiring an entity that is also a creditor to file a proof of claim under § 501(a) in no way conflicts with the requirement that the entity may also request administrative expense status for that claim under § 503(a).

There is no language in either the Code or the Bankruptcy Rules that exempts creditors with § 503(b)(9) administrative expense claims from the procedures laid out in the Bankruptcy Rules for filing proofs of claim. Further, § 503(b)(9) Claimants are not being forced to navigate a "three-step gauntlet" as suggested by the Movants. A § 503(b)(9) claimant can file a single

proof of claim using Official Form 10 that satisfies the requirements of both § 501(a) and

§ 503(a).  That single proof of claim form would first establish that a claim by the creditor exists

and then request that the claim be paid as an administrative expense.  Under § 502(a), any claim

filed under § 501 is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).

If no objection is filed to the claim, then, "[a]fter notice and a hearing," the creditor's request for

payment of the claim as an administrative expense "shall be allowed" – in effect granting that

claim an administrative priority under § 507(a)(2).  11 U.S.C. § 503.  This procedure does not

impose an excessive burden on § 503(b)(9) Claimants.  And should such a claimant fail to

establish that it has a valid administrative expense claim under § 503(b)(9)[12] (perhaps because

the "goods" were not "sold to the debtor in the ordinary course of such debtor's business," or

because the "goods" allegedly "sold to the debtor" failed to meet the definition of "goods" under

the Code, or because the "goods" were "sold to the debtor" outside the statutory timeframe), this

procedure ensures that only the administrative priority status of the claim would be disallowed

and not the underlying claim itself.

     In their Supplemental Response, Movants rely heavily on two bankruptcy treatises in

contending that this Court committed clear legal error.  Movants first cite to Collier on

Bankruptcy for the proposition that "[t]he requirement that a proof of claim be filed extends to

unsecured creditors claiming priorities but does not extend to costs of administration."  9 *Collier*

*on Bankruptcy*, ¶ 3002.01 at 3002-2 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.).

---

[12]  *See In re Merry-Go-Round Enterprises v. Simon Debartolo Group*, 180 F.3d 149, 156-157 (4th Cir. 1999) (holding that the claimant has the burden of establishing entitlement to payment of an administrative expense under § 503).

As a treatise, Collier on Bankruptcy is not binding authority on this Court.[13]   In the cited

instance, there is no indication that the editors took into account the addition of § 503(b)(9) to the

Bankruptcy Code in 2005.   The footnote in support of the quoted statement from the treatise

bears this out.   It references a 1985 case from the Bankruptcy Court in the District of Oregon that

is no longer good authority for at least one point of law and that deals with the payment of

attorney fees for a debtor in possession.   Such an entity is not a "creditor" as defined by the

Bankruptcy Code and would not be required by Bankruptcy Rule 3002 to file a proof of claim

for this kind of administrative expense claim.   The Court does not find the referenced passage

from Collier on Bankruptcy to be helpful in the context of § 503(b)(9) claims.

Movants cite no controlling authority to support their argument that Bankruptcy Rule

3002 does not apply to creditors with § 503(b)(9) claims.   Instead, the Movants rely on yet

another treatise that states:

> § 503 is captioned 'allowance of administrative expenses' [which] *appears to*
> *suggest* that § 503 is a separate allowance section, apart from § 502, devoted
> exclusively to administrative expenses.   *If so*, then § 502 would not apply to the
> allowance of administrative expenses.

2 *Norton Bankruptcy Law and Practice 2d* ¶ 42.14 at 42-76 to 42-77 (emphasis added).   As the

emphasized language indicates, the editors of the treatise express some uncertainty as to the

application and interplay of §§ 502 and 503.   But more importantly, this is the same argument

that was presented by a number of Claimants in their briefs and at the hearing on November 12,

2009, which the Court has already rejected in holding that §§ 501 and 503 are not mutually

exclusive in cases of § 503(b)(9) Claims.   The Court is not persuaded that the quoted passage

from this treatise demonstrates that the Court made a clear error of law in holding that

---

[13] The Court would note, however, that it has often cited to the treatise and does find it to be a scholarly work and
generally persuasive.

§ 503(b)(9) Claimants must file proofs of claim under § 501(a) and request administrative expenses status under § 503(a) in order to be allowed their § 503(b)(9) Claims.

Indeed, there are any number of reasons why Congress would treat § 503(b)(9) claims differently from other administrative expense claims. As the Second Circuit Court of Appeals noted, "the Bankruptcy Code establishes a clear division between an entity in its pre- and post-petition states." *In re Ames,* 582 F.3d 422, 431 (2d Cir. 2009). Most administrative expenses arise postpetition and cannot be readily calculated at the petition date because they have not yet been incurred. Administrative expense claims for the compensation of professionals under § 503(b)(2), for example, are incurred postpetition, on an ongoing basis, throughout the bankruptcy case. The procedure for filing proofs of claim under Bankruptcy Rules 3002 and 3003 is inappropriate for such administrative expense claims. For this reason, § 501(a) and Bankruptcy Rules 3002 and 3003 only require "creditors" to file proofs of claim. Section 503(b)(9) claims, unlike most other administrative expenses, are prepetition claims that can be calculated as of the petition date. They arise, by definition, prepetition. Therefore, there is no practical reason why the procedures laid out in Bankruptcy Rules 3002 and 3003 should not apply to § 503(b)(9) claims. The Official Proof of Claim Form bears out this distinction between prepetition § 503(b)(9) administrative expense claims and other types of postpetition administrative expense claims where it states that "[t]his form should not be used to make a claim for an administrative expense *arising after the commencement of the case.*" Official Form 10 (emphasis added).

The policy consideration most often advanced for not allowing § 502(d) to be used to bar § 503(b) administrative expense claims is not applicable in the § 503(b)(9) context, lending further support for the application of the Bankruptcy Rules as written. It is generally understood

9

that "the Bankruptcy Code gives a higher priority to requests for administrative expenses than to prepetition claims in order to encourage third parties to supply goods and services on credit to the *estate* . . . '[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend *post-petition credit* to a chapter 11 debtor.'" *Id.* (quoting *In re Lids*, 260 B.R. 680, 684 (Bankr. D. Del. 2001)) (emphasis added). The payment for which § 503(b)(9) provides an administrative priority is for goods that were sold to the debtor within the 20-day period preceding the petition date. No bankruptcy estate was in existence (or even contemplated) when these goods were sold. Section 503(b)(9) does not encourage the extension of postpetition credit. Section 503(b)(9) claims are by definition claims that arise for the prepetition supply of goods in the ordinary course of the debtor's business. Although trade vendors may have an idea that a business is troubled, they generally do not know if or when a debtor might file a bankruptcy petition. In a prepetition world, it is assumed that creditors take whatever steps are lawfully necessary and appropriate to get their claims preferred and thus paid. It is doubtful that § 503(b)(9) has any significant effect on whether vendors choose to extend credit prepetition.[14]

As the Court explained in its Memorandum Opinion, the goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the § 503(b)(9) Claimants' administrative expense claims.[15] The Court expressed concern in its

---

[14] There was certainly no evidence presented to the Court in these bankruptcy cases that trade creditors extended any significant postpetition unsecured credit to the Debtors even in light of the postpetition DIP financing facility approved by the Court that allowed the Debtors to pay for the continued delivery of goods by vendors. Rather, it appeared that the existence of the § 503(b)(9) administrative expense claims had a chilling effect on the part of the holders of such claims to extend postpetition credit.

[15] *See, e.g., Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994) ("The presumption in bankruptcy cases is that the debtor's limited resources [should] be equally distributed among the creditors. Thus, statutory priorities must be narrowly construed.").

10

Memorandum Opinion that overruling the Debtors' objections might prejudice the bankruptcy estates by allowing § 503(b)(9) Claimants both to receive payment on their asserted administrative claims for the delivery of goods and to use the provision of those same goods as the basis of a new value defense under 11 U.S.C. § 547(c)(4). While Movants appear to concede that the Court has identified a relevant point of concern, they argue that it is of no moment because they are, in fact, entitled to this type of double recovery on their claims.[16]  If the Movants are correct in this regard, then the Claimants not only will be paid back in full for any goods delivered to the Debtors in the 20 days prior to the petition date but also will be able to use the delivery of those same goods as a "new value" credit to offset against their preference exposure.  While these Claimants would effectively receive payment for the delivery of their goods twice, other § 503(b)(9) Claimants who did not receive any preferential payments would only receive one payment for their goods and general unsecured creditors would receive no benefit from the preference actions.  Not surprisingly, the Debtors take issue with Movants' espoused position.  There is no controlling case law in this jurisdiction on the issue of whether creditors may assert a claim under § 503(b)(9) for goods sold to the debtor and use those same goods as the basis for asserting a new value defense under § 547(c)(4).  The Court expressed its concern over this issue in its Memorandum Opinion because this issue is not ripe for adjudication at this time.  However, a ruling against the Debtors at this point may very well preclude the estates from raising the issue when it does arise in the proper context.  Given the strong likelihood of this issue coming up in these cases as the preference litigation progresses,

---

[16]  Movants argue that neither § 503(b)(9) nor § 547(c)(4) states that the provisions are mutually exclusive.  Citing *Commissary Operations v. Dot Foods, Inc. (In re Commissary Operations, Inc.)*, No. 308-06279, slip op. at 11 (M.D. Tenn. Jan. 6, 2010), Movants argue that the plain language of the Code permits a § 503(b)(9) Claimant both to seek an administrative expense claim and to assert a new value defense all on account of the single transaction.

11

the Court agrees with the Debtors that the best approach is to temporarily disallow the Claims and hold them in abeyance until the preference litigation takes place so that the Court can adjudicate these issues together and ensure that Claimants do not receive windfalls to which they may not be entitled to the detriment of other creditors.

Movants also argue that the Court has previously ruled in this case that a § 503(b)(9) Claimant need only file a motion for allowance of administrative expense, not a proof of claim, to meet its procedural burden. The Movants cite the Bar Date Order[17] entered on November 12, 2008, which states that "[a]ll persons or entities holding a Section 503(b)(9) Claim against the Debtors are required to file a Section 503(b)(9) Claim Request or, alternatively, a motion seeking payment of 503(b)(9) claim . . . no later than the Section 503(b)(9) Bar Date." The Court had no intention for the Bar Date Order to constitute a substantive ruling on the issue of whether, as a matter of Bankruptcy law, a § 503(b)(9) Claimant was supposed to file a proof of claim. Rather, the Bar Date Order was procedural in nature. It was intended to forestall objections on account of technical deficiencies pertaining to the filing of § 503(b)(9) Claims by laying out simplified alternative procedures for satisfying the filing requirements for this particular case. Indeed, had any Claimant filed only a motion seeking payment of its § 503(b)(9) claim, the Court would have treated the motion as an informal proof of claim under § 501.[18] In point of fact, this did not occur. Each of the Movants did file a proof of claim form, most likely because they wanted to

---

[17] Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 [Docket No. 107].

[18] Actions by a claimant which do not amount to a formal proof of claim may constitute an informal proof of claim. *Fyne v. Atlas Supply Co. (In re Fyne)*, 245 F.2d 107, 107 (4th Cir.1957). If a creditor has "taken 'some affirmative action to constitute sufficient notice that he has a claim against the estate,'" then its claim should be allowed. *In re Judy Wood Pub. Corp.* 289 B.R. 319, 322 (Bankr. E.D. Va. 2002) (quoting *Hardgrave v. La Rock ( In re Hardgrave)*, No. 94-1832, 1995 WL 371462, 1995 U.S.App. LEXIS 15506 (4th Cir. June 21, 1995)).

preserve their underlying unsecured claim to the extent that their request for administrative priority status was denied.

## Conclusion

"Reconsideration may be appropriate where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issue presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Puller v. Unisource Worldwide, Inc.*, No. 3:08-CV-813, 2009 U.S. Dist. LEXIS 27306, at *3–5 (E.D. Va. Mar. 31, 2009) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). And, "a party should not use a 59(e) motion simply 'to ask the Court to rethink what the Court had already thought through.'" *Id.; see also Cureton v. Cianbro Corp.*, No. JFM-06-2303, 2007 U.S. Dist. LEXIS 7388, 2007 WL 397025, at *1 (D. Md. Jan 30, 2007) (holding that reconsideration is not permitted when parties are attempting to "raise arguments which could have been raised prior to the issuance of judgment"); *see also In re E.M. Williams & Sons, Inc.*, 2009 WL 2211727, *1 (Bankr. E.D. Va 2009) (noting that reconsideration may be appropriate where the court has made an error not of reasoning but of apprehension, but that such circumstances are rare). The Movants here are asking the Court to reconsider arguments that were made during the hearing and are suggesting that the Court erred in its reasoning rather than in its apprehension.

For these reasons, the Movants have not met their burden of establishing a clear error of law. The Court will not overturn its Prior Ruling that entities seeking to assert administrative claims under § 503(b)(9) are creditors who must file proofs of claims under § 501(a) and, therefore, that § 502(d) may be used to temporarily disallow claims asserted under § 503(b)(9).

Accordingly, the Motion for Reconsideration will be denied.  A separate order shall issue.

ENTERED: _Feb  23 2010_____

Entered on docket: Feb 23 2010

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

14