Gregg M. Galardi, Esq.                    Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                   Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,     MCGUIREWOODS LLP
LLP                                       One James Center
One Rodney Square                         901 E. Cary Street
PO Box 636                                Richmond, Virginia 23219
Wilmington, Delaware 19899-0636           (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x
LG ELECTRONICS USA, INC.,       :
UNITED STATES DEBT              :
RECOVERY, LLC, AND PNY          :
TECHNOLOGIES, INC.,             :
                                :
            Movants,            :
                                :
      v.                        :
                                :
CIRCUIT CITY STORES, INC.,      :
et al.,                         :
                                :
            Respondents.        :
- - - - - - - - - - - - - - x

**DEBTORS' OMNIBUS ANSWERING BRIEF IN OPPOSITION TO THE
MOTIONS OF CERTAIN 503(b)(9) ADMINISTRATIVE EXPENSE
CLAIMANTS FOR LEAVE TO APPEAL FROM THE ORDER ON DEBTORS'
FIFTY-FIRST AND FIFTY-SECOND OMNIBUS OBJECTIONS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................ii

INTRODUCTION...................................................1

STATEMENT OF THE CASE..........................................2

    A.   Nature and Stage of Proceedings.......................2

    B.   Statement of Additional Facts Relevant to Relief
        Requested............................................5

SUMMARY OF ARGUMENT...........................................7

ARGUMENT......................................................7

I.   STANDARD FOR AN INTERLOCUTORY APPEAL......................7

II.  THE MOVANTS HAVE NOT SATISFIED THE Strict STANDARD FOR
    GRANTING AN INTERLOCUTORY APPEAL.........................10

    A.   There Is No Controlling Question Of Law.............10

    B.   There Is No Substantial Ground For Difference Of
        Opinion Among The Courts Of Appeals Or Lower
        Courts Within The Fourth Circuit...................16

    C.   An Immediate Appeal Will Not Materially Advance
        The Ultimate Termination Of The Litigation.........21

CONCLUSION...................................................23

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

In re Ames Dep't Stores, Inc.,
 582 F.3d 422 (2d Cir. 2009)............................. 18

Atlantic Textile Group, Inc. v. Neal,
 191 B.R. 652, 653 (E.D. Va. 1996).................... 9, 22

In re Bob Grissett Golf Shoppes, Inc.,
 50 BR. 598, 607 (Bankr. E.D. Va. 1985)................... 18

In re Circuit City Stores, Inc.,
 Case No. 08-35653, 2009 WL 4755253
 (Bankr. E.D. Va. Dec. 3, 2009).......................... 14

Colon v. BIC USA, Inc.,
 No. 00 CIV. 3666(SAS), 2001 WL 88230, at *2
 (S.D.N.Y. Feb. 1, 2001))................................ 17

Coopers & Lybrand v. Livesay,
 437 U.S. 463, 475 (1978)................................ 10

David v. Alphin,
 No. 3:07-cv-11-RJC-DLH, 2009 WL 3633889 at *4
 (W.D.N.C. Oct. 30, 2009)................................ 20

In re Davis,
 889 F.2d 658, 662 (5th Cir. 1989)................... 19, 20

Devan v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round
 Enters., Inc.), 180 F.3d 149, 157 (4th Cir. 1999)........ 13

Dew v. Nabisco, Inc.,
 Civ.A. 3:99CV353, 1999 WL 33228565
 (E.D. Va. Oct. 4, 1999)................................. 16

In re Dornier Aviation (North America), Inc.,
 320 B.R. 831, 839 (E.D. Va. 2005)...................... 17

Enron Corp. v. Springfield Assocs., L.L.C.
 (In re Enron Corp.), No. 01-16034, 2006 WL 2548592,
 at *3 (S.D.N.Y. Sept. 5, 2006).......................... 9

Fannin v. CSX Transp. Inc.,
    873 F.2d 1438, No. 01-16034, 1989 WL 42583,
    at *2 (4th Cir. Apr. 26, 1989).................... 9, 11, 22

Flor v. Bot Fin. Corp. (In re Flor),
    79 F.3d 281, 284 (2d Cir. 1996)......................... 21

Ford Motor Credit Co. v. Dobbins,
    35 F.3d 860, 866 (4th Cir. 1994)....................... 13

Gouveia v. IRS,
    228 B.R. 412, 414 (N.D. Ind. 1998)..................... 23

Herrington v. Swyter (In re Swyter),
    263 B.R. 742, 749 (E.D. Va. 2001)...................... 11

Holloway v. IRS (In re Odom Antennas, Inc.),
    340 F.3d 705 (8th Cir. 2003)........................ 18, 19

Katchen v. Landy,
    382 U.S. 323, 330 (1966).............................. 20

KPMG Peat Marwick v. Estate of Nelco, Ltd., Inc.,
    250 B.R. 74, 79 (E.D. Va. 2000)..................... 10, 17

In re Larsen,
    80 B.R. 784, 790-91 (Bankr. E.D. Va. 1987)............. 18

Marlin v. U.S. Trustee,
    333 B.R. 14, 21 (W.D.N.Y. 2005)....................... 17

McDaniel v. Mehfourd,
    708 F.Supp. 754, 756 (E.D. Va. 1989)................. 9, 17

Myles v. Laffitte,
    881 F.2d 125, 127 (4th Cir. 1989)...................... 9

In re Odom Antennas, Inc.,
    340 F.3d at 708 (8th Cir. 2003)..................... 19, 20

In re Pilgrim's Pride Corp.,
    421 B.R. 231, 243 (Bankr. N.D. Tex. 2009)............. 14

Prunty v. Terry (In re Paschall),
    408 B.R. 79, 84 (E.D. Va. 2009)...................... 8, 9

Ryan, Beck & Co., LLC v. Fakih,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003)................... 17

State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust,
    889 F.Supp. 849, 854-856 (E.D.N.C. 1995).................. 22

**STATUTES**

11 U.S.C. § 502(d)....................................... passim

11 U.S.C. § 503(b) .......................................... 13

28 U.S.C. § 1292(b)........................... 8, 9, 10, 21, 23

28 U.S.C. § 158(a)............................................ 8

## INTRODUCTION

The debtors and debtors in possession in the above-
captioned cases (collectively, the "Debtors")[1] submit this
answering brief in opposition (the "Answering Brief") to the
motions (the "Motions") filed by United States Debt Recovery LLC
("USDR"), LG Electronics USA, Inc. ("LG"), and PNY Technologies,
Inc. ("PNY" and, collectively with USDR and LG, the
"Movants") for leave to appeal the order of the United States
Bankruptcy Court for the Eastern District of Virginia (the
"Bankruptcy Court") dated January 6, 2010 (Bankr. Ct. Docket
No. 6228, the "Order").[2]  For the Court's convenience, a copy of
the Order and the Bankruptcy Court's underlying Memorandum
Opinion (Bankr. Ct. Docket No. 6228) (the "Opinion") are attached
hereto as Exhibits A and B respectively.

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC
(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx
Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The
address for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors, the
address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently
is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2]    Contemporaneously herewith, the Debtors have filed a motion to
consolidate certain matters related to the Motions (the "Motion to
Consolidate").  By filing the Motion to Consolidate, the Debtors are
neither consenting to the appeals nor conceding that they should be
consolidated.  The Debtors reserve all rights with respect to the
foregoing.

Samsung Electronics America, Inc. ("Samsung") also
filed a notice and an amended notice of appeal (Bankr. Ct. Docket
Nos. 6335 and 6720) and a motion and an amended motion for leave
to appeal (Bankr. Ct. Docket Nos. 6336 and 6748).  Pursuant to an
agreement between the Debtors and Samsung, however, all deadlines
associated with Samsung's appeal and its motion for leave to
appeal have been stayed.  Indeed, at this time, the Debtors and
Samsung are finalizing the terms of a stipulation with respect to
the foregoing to be presented to the Bankruptcy Court.
Accordingly, the Debtors have not addressed Samsung's arguments
in this Answering Brief.

## STATEMENT OF THE CASE

**A.    Nature and Stage of Proceedings.**

On or prior to December 19, 2008, each Movant filed a
combined proof of claim and request for payment of an
administrative expense under Bankruptcy Code
Section 503(b)(9) (Claim Nos. 447, 13210 and 1261) (each a
"Section 503(b)(9) Claim" and, collectively, the
"Section 503(b)(9) Claims").[3]

On October 13, 2009, the Debtors filed (1) the Debtors'
(I) Fifty-First Omnibus Objection To Certain 503(b)(9) Claims And
(II) Motion For A Waiver Of The Requirement That The First

---

[3]     Claim number 13210 amended claim number 778, which was purchased by USDR
        from Signature Home Furnishing Co., Inc.

Hearing On Any Response Proceed As A Status Conference (Bankr. Ct. Docket No. 5214) and (2) the Debtors' (I) Fifty-Second Omnibus Objection To Certain 503(b)(9) Claims And (II) Motion For A Waiver Of The Requirement That The First Hearing On Any Response Proceed As A Status Conference (Bankr. Ct. Docket No. 5216) (together, the "Objections").  By the Objections, the Debtors sought to temporarily disallow the Section 503(b)(9) Claims filed by the Movants pursuant to Bankruptcy Code Section 502(d) on the grounds that the Movants were the recipients of transfers that are avoidable under Bankruptcy Code sections 547 and 550 (the "Avoidable Transfers").

Each Movant filed a response to the applicable Objection and argued that Section 502(d) could not be used to temporarily disallow the Section 503(b)(9) Claims. (Bankr. Ct. Docket Nos. 5416, 5489, and 5535) (collectively, the "Reponses"), and the Debtors filed an omnibus reply in support of each Objection. (Bankr. Ct. Docket Nos. 5621 and 5622) (together, the "Replies").

On November 12, 2009, the Bankruptcy Court held a hearing on the Objections and heard oral argument with respect to the Objections, the Responses and the Replies.  At the conclusion of the hearing, the Bankruptcy Court took the matter under advisement.

On January 6, 2010, the Bankruptcy Court issued the
Opinion and entered the Order.  Seven days later, on January 13,
2010, Apex Digital, Inc. and THQ, Inc. filed a motion for
reconsideration of the Order. (Bankr. Ct. Docket No. 6258) (the
"Reconsideration Motion").

On January 19, 2010, while the Reconsideration Motion
was pending, LG filed a Notice of Appeal (Bankr. Ct. Docket
No. 6318) (the "LG Appeal") and, contemporaneously therewith,
filed a Motion for Leave to Appeal the Order. (Bankr. Ct. Docket
No. 6320) (the "LG Motion"). Thereafter, USDR and PNY also filed
notices of appeal (Bankr. Ct. Docket Nos. 6327 and 6331)
(together with the LG Appeal, the "Appeals"), and their
respective Motions for Leave to Appeal the Order. (Bankr. Ct.
Docket Nos. 6329 and 6333) (together with the LG Motion, the
"Motions").

On January 27, 2010, the Debtors filed an objection to
the Reconsideration Motion (Bankr. Ct. Docket No. 6382).
Thereafter, on February 3, 2010, Apex Digital, Inc. and THQ, Inc.
filed a reply (Bankr. Ct. Docket No. 6449).

By stipulation dated February 3, 2010 and order dated
February 5, 2010 (Bankr. Ct. Docket No. 6482), the Movants and
the Debtors agreed to stay the Appeals pending disposition of the
Reconsideration Motion.  All deadlines associated with the

4

Appeals, including the Debtors' deadline to file this Answering
Brief, were extended.

On February 23, 2010, the Bankruptcy Court issued its
Supplemental Memorandum Opinion (Bankr. Ct. Docket No. 6601) (the
"Supplemental Opinion") and entered an order denying the
Reconsideration Motion (Bankr. Ct. Docket No. 6602) (the
"Reconsideration Order").  For the Court's convenience, a copy of
the Supplemental Opinion and Reconsideration Order are attached
hereto as Exhibits C and D, respectively.

**B.   Statement of Additional Facts Relevant to Relief Requested.**

On November 10, 2008 (the "Petition Date"), the Debtors
filed voluntary petitions in the United States Bankruptcy Court
for the Eastern District of Virginia (the "Bankruptcy Court") for
relief under chapter 11 of title 11, United States Code (the
"Bankruptcy Code") (Bankr. Ct. Docket No. 1).  These Debtors'
Chapter 11 cases were consolidated for procedural purposes.
(Bankr. Ct. Docket. No. 77)

On November 12, 2008, the Office of the United States
Trustee for the Eastern District of Virginia appointed a
statutory committee of unsecured creditors (the "Creditors'
Committee")(Bankr. Ct. Docket No. 116).  The Debtors continue to
manage and operate as debtors in possession pursuant to
Bankruptcy Code sections 1107 and 1108.

On January 16, 2009, the Bankruptcy Court authorized the Debtors to, among other things, conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent")(Bankr. Ct. Docket No. 1020). Those sales were complete by March 8, 2009, and since then, the Debtors have been, among other things, liquidating their other assets, reconciling claims filed against their estates, and commencing litigation to recover transfers avoidable under various sections of Chapter 5 of the Bankruptcy Code, including sections 547 and 550 (the "Avoidance Actions").

On September 29, 2009, the Debtors and the Creditors' Committee filed the First Amended Joint Plan Of Liquidation Of Circuit City Stores, Inc. And Its Affiliated Debtors And Debtors In Possession And Its Official Committee Of Creditors Holding General Unsecured Claims (Bankr. Ct. Docket No. 5124) (the "Plan").  The associated disclosure statement (Bankr. Ct. Docket No. 5103) (the "Disclosure Statement") was approved on September 24, 2009, and the confirmation hearing with respect to the Plan is currently scheduled for April 6, 2010 (as may be adjourned or rescheduled, the "Confirmation Hearing").  The Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code and distribution of the proceeds from such liquidation to the Debtors' creditors.  See, generally, Plan.

Various creditors, including LG, have objected to the Plan (the "Plan Objections") on the grounds that the Plan should require a "reserve" for claims that have been "temporarily" disallowed, including the Section 503(b)(9) Claims. <u>See</u>, <u>e.g.</u>, <u>Objection Of LG Electronics USA, Inc. To Confirmation Of Chapter 11 Plan Of Liquidation</u> at 5 (Bankr. Ct. Docket No. 5652) ("LG respectfully requests that the Court deny confirmation of the Plan unless the Plan is modified to specifically require the Debtors and the Trustee to reserve for LG's Administrative Expense in the amount of $5,397,977"). The Plan Objections will be heard at the Confirmation Hearing.

## SUMMARY OF ARGUMENT

The Movants all contend that an interlocutory appeal should be permitted. As demonstrated below, the proposed interlocutory appeal (i) does not involve a controlling question of law, (ii) does not involve a substantial disagreement among the Courts of Appeals or courts within this Circuit, and (iii) will not materially advance the litigation between the Debtors and the Movants. Thus, the Court should deny the Movants' requests to pursue an interlocutory appeal.

## ARGUMENT

I.   **STANDARD FOR AN INTERLOCUTORY APPEAL.**

In the absence of a final judgment, order or decree, Judicial Code Section 158(a)(3) provides that "[t]he district

courts of the United States shall have jurisdiction to hear
appeals . . . with leave of the court, from interlocutory orders
and decrees of bankruptcy judges . . . ."  28 U.S.C. § 158(a)(3).
Because Judicial Code Section 158 provides no direct guidance as
to when leave may be granted, courts within this district have
looked to the standard Circuit Courts of Appeal apply when
determining whether to grant leave to appeal under 28 U.S.C.
§ 1292(b).  See Prunty v. Terry (In re Paschall), 408 B.R. 79, 84
(E.D. Va. 2009) (stating that "[w]hile no specific criteria exist
to guide the Court's discretion to hear an interlocutory appeal,
most district courts faced with the issue follow the standard
prescribed in 28 U.S.C. § 1292(b), which governs appeals of
interlocutory orders from the district courts to the courts of
appeals."); Atlantic Textile Group, Inc. v. Neal, 191 B.R. 652,
653 (E.D. Va. 1996) (noting that "[a]ccordingly, although
Section 158 provides no direct guidance concerning the grant or
denial of leave to appeal interlocutory orders, many courts apply
an analysis similar to that employed by the district court in
certifying interlocutory review by the circuit court of appeals
under 28 U.S.C. § 1292(b).").

        Thus, this Court should grant the Movants relief only
if the Order "involves a controlling question of law as to which
there is substantial ground for difference of opinion and . . .
an immediate appeal from the order may materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b);

see also Prunty 408 B.R. at 84; Atlantic Textile, 191 B.R. at

653.

Critically, under this standard, this Court should

remain mindful that "interlocutory review is not to be granted

lightly" because it is "an extraordinary remedy." Fannin v. CSX

Transp. Inc., 873 F.2d 1438, No. 01-16034, 1989 WL 42583, at *2

(4th Cir. Apr. 26, 1989) (unpublished).  In that regard, the

discretion to grant interlocutory relief should be "used

sparingly" and the standard under 1292(b) should be "strictly

construed." Myles v. Laffitte, 881 F.2d 125, 127 (4th Cir.

1989); see McDaniel v. Mehfourd, 708 F.Supp. 754, 756 (E.D. Va.

1989) (acknowledging "the frequently stated rule that permission

for interlocutory appeals should be given sparingly and with

discrimination"); Enron Corp. v. Springfield Assocs., L.L.C. (In

re Enron Corp.), No. 01-16034, 2006 WL 2548592, at *3 (S.D.N.Y.

Sept. 5, 2006) (stating that 28 U.S.C. § 1292(b) is "strictly

applied as interlocutory appeals from bankruptcy courts'

decisions are 'disfavored' . . . .").  Therefore, the Movants

must "carr[y] 'the burden of persuading [the district court] that

exceptional circumstances justify a departure from the basic

policy of postponing appellate review until after the entry of a

final judgment." Id. (quoting Coopers & Lybrand v. Livesay, 437

U.S. 463, 475 (1978)).  This they have not and cannot do.

**II.  THE MOVANTS HAVE NOT SATISFIED THE STRICT STANDARD FOR
     GRANTING AN INTERLOCUTORY APPEAL.**

As demonstrated below, the Movants have not established
that the Order involves a controlling question of law as to which
there is substantial ground for difference of opinion.  Moreover,
even if this Court were to so find, the Movants have not, and
cannot, demonstrate that an interlocutory appeal would
"materially advance the ultimate termination of the litigation."
Consequently, the Movants' request for leave to appeal the Order
should be denied.

**A.   There Is No Controlling Question Of Law.**

Under Judicial Code Section 1292, the Movants must
first establish the existence of a "controlling question of law."
See 28 U.S.C. § 1292(b) (providing that the relevant order must
"involve[] a controlling question of law . . . .").  Following an
unpublished opinion from the Fourth Circuit Court of Appeals,
this Court has held that a "controlling question of law" means "a
narrow, dispositive question of pure law."  KPMG Peat Marwick v.
Estate of Nelco, Ltd., Inc., 250 B.R. 74, 79 (E.D. Va.
2000) (emphasis added) (quoting Fannin v. CSX Transp. Inc., 873
F.2d 1438, No. 01-16034, 1989 WL 42583, at *5 (4th Cir. Apr. 26,
1989) (unpublished)).  Moreover, to be "dispositive", the issue
of law must either terminate the litigation or materially advance
its termination.  Herrington v. Swyter (In re Swyter), 263 B.R.

10

742, 749 (E.D. Va. 2001) (denying request to proceed with an
interlocutory appeal because the "interlocutory resolution of the
validity of the [order] . . . would not end either this phase of
the litigation, or the dispute between [claimant] and the debtor.
Instead [it] would result, at most, in aiding [claimant] in his
effort to negotiate and obtain a plan of reorganization more
favorable to him.").

        The Movants argue that this element of the standard is
satisfied because the issues presented in the Appeals are purely
legal in nature and resolve the Objections.  LG Motion at 4
("each of these questions is a pure question of law . . . . " and
"the only substantive relief sought by the [Debtors] was
temporary disallowance . . . ."); PNY Motion at 5 ("These two
questions are narrow and purely legal in nature, and the answers
given to them . . . completely resolve the contested matter
initiated by the [Objections]."); USDR Motion at 5 (same).  In
particular, the Movants contend that an interlocutory appeal will
resolve two legal issues: (1) whether the Debtors may apply 11
U.S.C. § 502(d) to temporarily disallow the claims filed under 11
U.S.C. § 503(b)(9) up to the amount potentially recoverable on
account of alleged preferential transfers and (2) whether such
temporary disallowances may occur before any alleged preference
liability has been adjudicated.  While an interlocutory appeal
might resolve these issues, the Movants' argument overstates the

11

implications of resolving those legal issues on the claims or

other litigation between the parties.  Indeed, even though a

resolution of the appeal in favor of the Movants may reverse the

temporary disallowance of the Movants' Section 503(b)(9) Claims,

that resolution does not dispose of or even materially advance

the ultimate allowance or disallowance of their

Section 503(b)(9) Claims or the Debtors contention that the

Movants were the recipients of Avoidable Transfers.

Specifically, although an interlocutory appeal may

resolve the two legal issues identified by the Movants in this

Court, the losing party will most certainly appeal.  Thus, an

interlocutory appeal does not finally resolve the two legal

issues that the Movants are attempting to bring to this Court.

More importantly, perhaps, resolving the issues

identified by the Movant in their favor does not finally resolve

or materially advance the allowance or disallowance of the

Movants' Section 503(b)(9) Claims.  Specifically,

Section 503(b)(9) provides as follows:

> after notice and hearing, there shall be
> allowed administrative expenses . . . the
> value of any goods received by the debtor
> within 20 days before the date of
> commencement of a case under this title in
> which the goods have been sold to the debtor
> in the ordinary course of such debtor's
> business.

12

11 U.S.C. § 503(b)(9).  And, the Movants -- not the Debtors --
bear the burden of proving that their Section 503(b)(9) Claims
are entitled to administrative priority, which must occur before
such Claims are allowed as administrative expenses.  E.g., Devan
v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round Enters.,
Inc.), 180 F.3d 149, 157 (4th Cir. 1999) (holding that the
creditor "has the burden of proving that its administrative claim
. . . is an actual and necessary expense"); Ford Motor Credit Co.
v. Dobbins, 35 F.3d 860, 866 (4th Cir. 1994) (same).  Even
assuming that Bankruptcy Code Section 502(d) could not be used to
temporarily disallow the Movants' Section 503(b)(9) Claims, the
Debtors submit that the Movants have not satisfied their burden
of proving that the Section 503(b)(9) Claims should be allowed as
administrative expenses and the Debtors are free to challenge the
Movants' 503(b)(9) Claims on numerous factual grounds.  Indeed,
the Order expressly reserved the Debtors' right to do so.  See
Order at 2.

Here, the Debtors submit that the Section 503(b)(9)
Claims should be disallowed and/or reduced because they (i) were
filed on account of something other than goods, (ii) were filed
for goods not received by the Debtors within 20 days of the
Petition Date, (iii) overstate the value of the goods received,
and/or (iv) are subject to setoff by the Debtors on account of
amounts due by the Movants.  As the Bankruptcy Court and other

13

courts have recognized, these are valid bases upon which to
challenge the allowance of the Section 503(b)(9) Claims.  See
Supplemental Opinion at 7 (noting that a claimant may fail to
establish valid 503(b)(9) claims "because the 'goods' were not
'sold to the debtor in the ordinary course of such debtor's
business,' or because the 'goods' allegedly 'sold to the debtor'
failed to meet the definition of 'goods' under the Code, or
because the 'goods' were 'sold to the debtor' outside the
statutory timeframe"); In re Circuit City Stores, Inc., Case
No. 08-35653, 2009 WL 4755253 (Bankr. E.D. Va. Dec. 3,
2009) ("[t]he Court holds, as a matter of law, § 558 of the
Bankruptcy Code allows the Debtors to setoff any Receivables due
against the Claimants' 503(b) claims for Administrative Expenses
[before general unsecured claims.]"); In re Pilgrim's Pride
Corp., 421 B.R. 231, 243 (Bankr. N.D. Tex. 2009) ("Each
503(b)(9) Claimant must prove the value of the goods for which it
is entitled to an administrative expense claim.").  Consequently,
there will be additional claims litigation concerning the
Movants' Section 503(b)(9) Claims.

    Moreover, an interlocutory appeal will not resolve the
Debtors' claims against the Movants to avoid and recover the
Avoidable Transfers.  In fact, the Debtors intend to promptly
file complaints against the Movants to affirmatively recover the
Avoidable Transfers.

14

Nor can the Movants contend that the litigation regarding the Avoidable Transfers would be rendered irrelevant in the event that the Court rules in their favor.  As the Bankruptcy Court found, there is a "strong likelihood of" additional issues arising "as the preference litigation progresses."  Supplemental Opinion at 11-12.  Indeed, the Bankruptcy Court identified at least one such issue -- "whether creditors may assert a claim under § 503(b)(9) for goods sold to the debtor and use those same goods as the basis for asserting a new value defense under § 547(c)(4)."  Id. at 11.  These additional issues are not ripe for consideration, however.  See id. at 11-12 ("The Court expressed its concern over this issue in its [Opinion] because this issue is not ripe for adjudication at this time.").  Consequently, although an interlocutory appeal might resolve the narrow legal issues presented by the Objections, the resolution of the Objections neither ends the claims litigation between the parties nor materially advances the underlying litigation regarding the allowance and disallowance of the Section 503(b)(9) Claims or the Movants' liability with respect to an Avoidable Transfer.  Thus, there is no "controlling", i.e., "dispositive", issue of law for this Court to resolve in an interlocutory appeal.

Accordingly, the Movants have not satisfied the first element of the standard under Judicial Code Section 1292(b).

15

**B.    There Is No Substantial Ground For Difference Of Opinion Among The Courts Of Appeals Or Lower Courts Within The Fourth Circuit.**

The Movants also argue that an interlocutory appeal would address legal issues on which there is substantial grounds for a difference of opinion. See PNY Motion at 5; LG Motion at 5-9; USDR Motion at 5. In that regard, the Movants argue that this factor is satisfied because the issues presented by the interlocutory appeal is novel and there is disagreement among courts outside of this Circuit. See PNY Motion at 5; LG Motion at 5-9; USDR Motion at 5. The presence of novels issue and the existence of disagreement among courts outside of this Circuit, however, are not sufficient grounds for the Movants to carry their burden on this element.

In determining whether the second factor is satisfied, courts within this Circuit focus on whether there are conflicting decisions among the lower courts in the Fourth Circuit or among the various Courts of Appeals. See Dew v. Nabisco, Inc., Civ.A. 3:99CV353, 1999 WL 33228565 (E.D. Va. Oct. 4, 1999) (considering conflict only among district courts within the Fourth Circuit for purposes of this element); KPMG Peat Marwick v. Estate of Nelco, Ltd., Inc., 250 B.R. 74, 79 (E.D. Va. 2000) (considering only decisions of the Courts of Appeals for purposes of this element); McDaniel v. Mehfoud, 708 F.Supp. 754 (E.D. Va. 1989) (same). Consequently, even when conflicting decisions from lower courts

outside the particular Circuit exist, courts have concluded that this factor has not been satisfied.  See, e.g., Marlin v. U.S. Trustee, 333 B.R. 14, 21 (W.D.N.Y. 2005) (holding that disagreement outside the Circuit does not establish "substantial grounds for difference of opinion.") (citing Colon v. BIC USA, Inc., No. 00 CIV. 3666(SAS), 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001)); Ryan, Beck & Co., LLC v. Fakih, 275 F. Supp. 2d 393 (E.D.N.Y. 2003) (same).

Within the Fourth Circuit there are simply no conflicting decisions concerning the application of Section 502(d) to section 503(b)(9) claims.  Indeed, the Debtors are not aware of any lower court within the Fourth Circuit that has addressed the issues that the Movants seek to present with an interlocutory appeal.[4]

---

[4]   To the contrary, cases within the Eastern District of Virginia support the Debtors' assertion that 502(d) applies to 503(b)(9) claims.  See, e.g., In re Dornier Aviation (North America), Inc., 320 B.R. 831, 839 (E.D. Va. 2005) ("A reading of § 502(d) that forces a debtor to choose between (1) disrupting the orderly and careful processing of creditors' claims and its own avoidance actions and (2) protecting all creditors' rights would not effectuate Congress's intent as expressed in the Bankruptcy Code."); In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D. Va. 1985)("[S]ection 502(d) requires that the court disallow the claim of any entity that has been the recipient of an avoidable transfer unless the entity has disgorged the property."); In re Larsen, 80 B.R. 784, 790-91 (Bankr. E.D. Va. 1987) (stating that "regardless of [the claims'] priority status, this Court further finds that . . . [claimant] has failed to return unauthorized post-petition preferential transfers avoidable under § 549, for which she would be liable under § 550, thus her claims are barred by the terms of § 502(d) . . . ." (emphasis added).

17

Nor is there a split in the Circuit Courts on the
issues that the Movants seek to present to this Court on an
interlocutory basis.  Indeed, with respect to whether
Section 502(d) applies, the only Court of Appeals decision to
which the Movants cite is In re Ames Dep't Stores, Inc., 582 F.3d
422 (2d Cir. 2009).  In that case, however, the Court of Appeals
expressly stated that it was not addressing the applicability of
Bankruptcy Code Section 502(d) to Section 503(b)(9) Claims.  See
id. at 424 n. 2 ("Neither party has suggested that Section
503(b)(9) has any relevance to this appeal, and we do not
specifically address its interaction with Section 502(d).")

With respect to the second issue -- whether 502(d) may
be applied before the Movants are found liable for the Avoidable
Transfers, the Movants offer the decisions of two Courts of
Appeals.  See LG Motion at 9 (citing Holloway v. IRS (In re Odom
Antennas, Inc.), 340 F.3d 705 (8th Cir. 2003) and In re Davis,
889 F.2d 658, 662 (5th Cir. 1989)).  The Bankruptcy Court's
decision is readily distinguishable from these decisions and the
Debtors submit that, without more, the Movants have failed to
satisfy this standard.

In Odom, the Court considered whether 502(d) could be
used to temporarily disallow a perfected lien that was not
voidable under any of the sections identified in Section 502(d).
In re Odom Antennas, Inc., 340 F.3d at 708 ("Neither [claimant]

18

has received property from a transaction that is voidable under

the sections identified in Section 502(d), that is, sections

522(f), 522(h), 544, 545, 547, 548, 549 and 724(a).")  Here, the

Movants <u>have</u> received property from transactions that are

voidable under a section identified in section 502(d).  Namely,

the Movants have received preferences under section 547.

Therefore, <u>Odom</u> is inapposite.

The <u>Davis</u> case is also distinguishable because the

court in that case expressly limited its holding to the facts at

hand.  <u>In re Davis</u>, 889 F.2d 658, 661 (5th Cir. 1989) (stating

"[t]he touchstone of this appeal is the applicability of

section 502(d) to <u>this fact pattern</u>.  We find that

section 502(d) was not intended to have a punitive effect and

consequently does not apply in this case." (emphasis added)).  In

<u>Davis</u> the lower court found that the IRS had unduly delayed

refunds owed to the debtors and, therefore, used 502(d) to

disallow other tax claims in a subsequent litigation.  <u>Id.</u>  Here,

section 502(d) is clearly not being used to penalize the Movants.

Rather, as the Bankruptcy recognized:

> the Court agrees with the Debtors that the <u>best
> approach is to temporarily disallow the Claims and
> hold them in abeyance</u> until the preference
> litigation takes place so that the Court can
> adjudicate these issues together <u>and ensure that
> Claimants do not receive windfalls to which they
> may not be entitled to the detriment of other
> creditors.</u>

19

Supplemental Opinion at 12 (emphasis added).  Therefore, the
limited holding in Davis does not apply.

Even if the holdings in Odom and Davis stand for the
proposition that section 502(d) cannot be used to temporarily
disallow claims before avoidance and setoff actions are
adjudicated, that holding is directly contradicted by a Supreme
Court decision.  See Katchen v. Landy, 382 U.S. 323, 330
(1966) ("Unavoidably and by the very terms of the Act, when a
bankruptcy trustee presents a [Section 57g] objection to a claim,
the claim can neither be allowed nor disallowed until the
preference matter is adjudicated.").[5]  With a Supreme Court case
on point, there is clearly no ground (let alone substantial
ground) for difference of opinion.

And finally, the fact that the issues presented by the
Appeals appear to be questions of first impression in this
Circuit does not justify the extraordinary relief the Movants
seek.  Indeed, the presence of a disputed issue that presents an
issue of first impression is insufficient to demonstrate a
substantial ground for difference of opinion. David v. Alphin,
No. 3:07-cv-11-RJC-DLH, 2009 WL 3633889 at *4 (W.D.N.C. Oct. 30,
2009) ("[T]he mere presence of a disputed issue that is a
question of first impression in this Circuit is insufficient to

demonstrate a substantial ground for a difference of
opinion.")(quoting Flor v. Bot Fin. Corp. (In re Flor), 79 F.3d
281, 284 (2d Cir. 1996)).

Thus, the Movants have also failed to satisfy the
second element under Judicial Code Section 1292(b).

## C.   An Immediate Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation.

Even assuming, arguendo, that the first two elements
for granting an interlocutory appeal were satisfied, the Movants
have not established that an immediate appeal would "materially
advance the ultimate termination of the litigation."  28 U.S.C.
§ 1292(b).

As noted above, only orders that are "completely
dispositive of the litigation" will meet this element of the
test. Fannin, 873 F.2d 1438, No. 01-16034, 1989 WL 42583, at *5
(4th Cir. 1989) (unpublished).  Orders that do not finally
establish liability will not suffice for purposes of this
element.  Atlantic Textile Group, Inc. v. Neal, 191 B.R. 652, 654
(E.D. Va. 1996) (stating that "to permit a party to challenge,
piecemeal, every adverse determination of the bankruptcy court en
route to a final disposition of the matter would unnecessarily
prolong the litigation."); State of N.C. ex rel. Howes v. W.R.

---

*(cont'd from previous page)*
[5]     Section 57(g) was the predecessor section to Bankruptcy Code section
        502(d).

Peele, Sr. Trust, 889 F.Supp. 849, 854-856 (E.D.N.C.
1995) (holding that there the litigation would not be materially
advanced where question presented for interlocutory appeal was
"only a threshold one" which "would [have] no clear effect on the
disposition of other pending CERCLA litigation.").

The Movants argue that the resolution of the questions
presented will materially advance the termination of the
litigation because they are currently the only issues before the
Court and because their resolution would move the bankruptcy
proceedings toward termination.  See LG Motion at 9 ("a decision
on appeal will properly facilitate the entirety of the bankruptcy
proceedings below and promote judicial economy"); see also PNY
Motion at 6 ("whether the questions presented are answered
affirmatively or negatively, the result is that the contested
matter initiated by the filing of the Claim Objection is
resolved."); USDR Motion at 5-6 (same).  As discussed in detail
above, however, litigation between the Debtors and the Movants is
far from over.  See, supra at 11-16 (identifying the fact that
resolving the issues presented on appeal would neither advance
the allowance or disallowance of the 503(b)(9) Claims nor resolve
litigation to recover the Avoidable Transfers).  Consequently, it
is not possible for this Court to completely (or even
substantially) dispose of litigation between the Debtors and the
Movants.  In this regard, one court recognized that it is

impossible to "fathom how a review of . . . an order, which makes no <u>final</u> determination regarding [a creditor's] right to the funds, would 'materially advance' the ultimate termination of the litigation." <u>Gouveia v. IRS</u>, 228 B.R. 412, 414 (N.D. Ind. 1998) (emphasis added).

Accordingly, as with the first and second elements under Judicial Code Section 1292(b), the Movants have failed to meet their burden with respect to the third element.

### CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motions.

Dated: Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER
       March 9, 2010        & FLOM, LLP
                      Gregg M. Galardi, Esq.
                      Ian S. Fredericks, Esq.
                      P.O. Box 636
                      Wilmington, Delaware 19899-0636
                      (302) 651-3000

                            - and -

                      SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM, LLP
                      Chris L. Dickerson, Esq.
                      155 North Wacker Drive
                      Chicago, Illinois 60606
                      (312) 407-0700

                            - and -

                      MCGUIREWOODS LLP

                      /s/ Douglas M. Foley      .
                      Dion W. Hayes (VSB No. 34304)
                      Douglas M. Foley (VSB
                      No. 34364)
                      One James Center
                      901 E. Cary Street
                      Richmond, Virginia 23219
                      (804) 775-1000

                      Counsel for Debtors and Debtors
                      in Possession

**EXHIBIT A**

**(The Order)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., | Case No. 08-35653 |
| | *et al.*, | Chapter 11 |
| | Debtors. | Jointly Administered |

## ORDER ON DEBTORS' FIFTY-FIRST,
## AND FIFTY-SECOND OMNIBUS OBJECTIONS

Upon consideration of Debtors'(I) Fifty-First Omnibus Objection to Certain 503(b)(9)

Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response

Proceed as a Status Conference, filed on October 13, 2009 (Docket No. 5214; the "51st Omnibus

Objection), and Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and

(II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a

Status Conference, filed on October 13, 2009 (Docket No. 5216; the "52nd Omnibus Objection";

collectively, with the 51st Omnibus Objection, the "Objections"), the responses thereto (Docket

Numbers 5411, 5416, 5447, 5454, 5470, 5472, 5475, 5479, 5529, 5530, 5535, 5537, 5539, 5610,

5487, 5491, 5497, 5498, 5499, 5502, 5505, 5506, 5509, 5511, 5515, 5434, 5449, 5464, 5489,

5495, 5496, 5500, 5504, 5583; collectively, the "Responses") of the respondents (the

"Respondents") and the omnibus replies thereto (Docket Numbers 5621 & 5622; together, the

"Replies"); and the Court having reviewed the Objections, the Responses and the Replies; and

the Court having considered the arguments advanced by the Debtors and the Respondents at the

hearing held on November 12, 2009; and upon the record herein, and after due deliberation

thereon; and good and sufficient cause appearing therefore as set out in the Court's

Memorandum Opinion[1] entered on this date, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Objections are partially SUSTAINED to the extent set forth herein.

2.      The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims

filed by Respondents under 11 U.S.C. § 503(b)(9) as set forth in the 51st Omnibus Objection and

the 52nd Omnibus Objection up to the amount potentially recoverable on account of preferential

transfers allegedly avoidable under 11 U.S.C. § 547.

3.      The Respondents' § 503(b)(9) claims identified in the Objections are temporarily

disallowed (the "Disallowed Claims").

4.      The Debtors' right to object to any claim on any grounds that governing law

permits is not waived and expressly preserved.

5.      The requirement that the initial hearings on the Objections proceed as status

conferences is hereby waived.

6.      This Court retains jurisdiction to hear and determine all matters arising from or

related to the Objections, the Disallowed Claims and this Order.


ENTERED: _____


_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE


---

[1]  The Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

**EXHIBIT B**

**(The Opinion)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:          CIRCUIT CITY STORES, INC.,                    Case No. 08-35653
                *et al.*,                                     Chapter 11
                        Debtors.                              Jointly Administered

## <u>MEMORANDUM OPINION</u>

The issue now before the Court in this Chapter 11 case is whether the Debtors may use

§ 502(d) of the Bankruptcy Code to temporarily disallow certain § 503(b)(9)[1] claims filed by a

number of their creditors (the "Claimants").  The Debtors seek to have the claims filed by the

Claimants temporarily disallowed up to the amount potentially recoverable on account of

preferential transfers allegedly avoidable under § 547 (the "Preferential Transfers).  Hearing was

conducted on November 12, 2009 (the "Hearing") to consider Debtors' request for ruling on the

threshold issue of whether § 502(d) can be used to temporarily disallow § 503(b)(9) claims.

### Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C.

§§ 157 and 1334 and the general order of reference from the United States District Court for the

Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (B), (C), and (O).  Venue is appropriate in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

---

[1]  Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United
States Code (the "Bankruptcy Code").



083565310010600000000000004

### Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date").  Circuit City was a specialty retailer of consumer electronics.   As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico.   After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order").   Pursuant to the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008.  On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores.  As of March, 8, 2009, the going out of business sales had been completed.  On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan").   The disclosure statement was approved by order entered September 24, 2009.   The confirmation hearing is currently scheduled for January 28, 2010.

---

[2]   The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.  The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

On October 13, 2009, the Debtors filed two omnibus objections (the "Objections")[3] to certain of the Claimants' claims that asserted a § 503(b)(9) administrative priority (the "Claims") on the grounds that those Claims should be temporarily disallowed under § 502(d) up to the amount potentially recoverable in an avoidance action under § 547 until the return of any Preferential Transfers.[4]  A large number of Claimants filed responses[5] (the "Responses"), and on November 10, 2009, the Debtors filed two reply briefs.[6]

---

[3]      The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount under § 507 of the Bankruptcy Code.

[4]      *See* Debtors' (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5214]; Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on October 13, 2009 [Docket No. 5216].

[5]      *See* Response of Namsung America Inc. to Debtors' Fifty-First Omnibus Objection to Claims  [Docket No. 5411]; PNY Technologies, Inc.'s Response to Debtors Fifty-First Omnibus Objection to Claims [Docket No. 5416]; Response of Onkyo USA Corporation in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5447]; Mitsubishi Digital Electronics America, Inc.'s Response to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5454]; Response of Digital Innovations, LLC on Behalf of VonWin Capital Management, LP to Debtors' Fifty-First Omnibus Objection to Claims [Docket No.5470]; Response of Longacre Opportunity Fund, L.P. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5472]; Envision Peripherals, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5475]; Response and Joinder of JVC Americas Corp. and JVC Company of America to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5479]; Response of Olympus Corporation and Olympus Imaging America, Inc. to Debtors' (I) Fifty-First Omnibus Objection to Claims [Docket No. 5529]; Response of Hauppage Computer Works, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5530]; Response of United States Debt Recovery, LLC to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5535]; Response and Objection of Midland Radio Corporation to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5537]; Response and Objection of Bethesda Softworks LLCto Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5539]; Response of TeleDynamics LLP in Opposition to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5610]; Metra Electronics Corporation's Opposition to Debtor's Fifty-First Omnibus Objection to Claims [Docket No. 5487]; Response of Sima Products Corp. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5491]; Joint Response of THQ, Inc. and Apex Digital, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5497]; Tamrac, Inc.'s Opposition to Debtor's Fifty-First Omnibus Objection [Docket No. 5498]; Response of Nyko Technologies, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5499]; Response of SouthPeak Interactive, LLC to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5502]; Bush Industries Inc.'s Response and Joinder Regarding Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5505]; Joinder of Vonage Marketing LLC to the Responses Filed by SouthPeak Interactive, LLC and Nyko Technologies, Inc to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5506]; Omnibus Response of Vonwin Capital Management, L.P. to Debtors' Forty-Eighth, Forty-Ninth, Fiftieth and Fifty-First Omnibus Objections [Docket No. 5509]; Response in Opposition of BISSELL Homecare, Inc. to Debtors' Fifty-First Omnibus Objection to Claims [Docket No. 5511]; Cokem International, Inc.'s Response to the Debtor's Fifty-First Omnibus Objection [Docket No. 5515]; Response of Paramount Home Entertainment Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5434]; Response of SanDisk Corporation to Debtors' (I) Fifty-Second Omnibus

In their Objections and at the Hearing, the Debtors requested a determination of the threshold legal issue of whether § 502(d) can be applied as a matter of law to temporarily disallow § 503(b)(9) claims in the amount potentially recoverable as a preferential transfer under § 547. Several of Claimants' Responses took issue with proceeding in this manner. They objected to the Hearing, arguing that it was improper to consider the threshold legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim in a contested matter as part of the claims resolution process separate from any underlying adversary proceeding to determine whether a Preferential Transfer was recoverable in the first instance. The Claimants based their objection to the bifurcation of these issues an on essentially three grounds: (1) bifurcation deprived them of their constitutional due process rights, (2) the Debtors were requesting an advisory opinion, and (3) the Debtors should be required to file an adversary proceeding in order to raise the legal issue of whether § 502(d) could be applied to disallow a § 503(b)(9) claim.

Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures. . . it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1014 (4th Cir.

---

Objection to Claims [Docket No. 5449]; Pioneer Electronics' Response to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5464]; LG Electronics USA, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5489]; Response of Toshiba America Consumer Products,L.L.C. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5495]; Response of Samsung Electronics America, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5496]; Samsung Electronics America, Inc.'s Memorandum of Law in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5500]; Twentieth Century Fox Home Entertainment LLC's Response in Opposition to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5504]; Response of Take Two Interactive Software, Inc. to Debtors' Fifty-Second Omnibus Objection to Claims [Docket No. 5583].

[6]    *See* Debtors' Omnibus Reply in Support of (I) Fifty-First Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5621]; Debtors' Omnibus Reply in Support of (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a Status Conference, filed on November 10, 2009 [Docket No. 5622].

1986) (internal citations omitted).  In this case, parties were given ample notice that the threshold legal issue regarding whether § 502(d) could be applied to temporarily disallow a § 503(b)(9) claim would be the topic of the first hearing on the two omnibus Objections.  Based on the quantity and the quality of the briefs submitted to this Court (including amicus briefs) and the thorough oral arguments made at the Hearing, the parties have certainly exercised their opportunity to be heard.    Further, the Debtors are not requesting an ultimate judicial determination concerning the allowance of these Claims.  Rather, they are seeking to postpone payment of the Claims by disallowing them temporarily until the underlying issues can be fully adjudicated in separate adversary proceedings.[7]  To this end, Debtors are requesting a ruling on a threshold legal issue common to all of the Claimants.    Each of the Claimants will have an opportunity to have an adjudication made in the context of a full blown adversary proceeding regarding any liability they might have for the alleged Preferential Transfers.    Therefore, the Claimants' due process rights are not being infringed.    Rather, the due process rights of the bankruptcy estates are being preserved.

The Court is not rendering an advisory opinion.  Very real disputes exist between the parties concerning the threshold legal issue.  The Court is not asked to issue an advisory opinion when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality."  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Court is merely making a partial ruling in an interlocutory fashion on a very real controversy, and it is reserving the

---

[7]  If the Claims are not temporarily disallowed, the Debtors will be required to pay to Claimants cash equal to the amount of their Claims on the effective date of the Plan once it is confirmed,  *See* 11 U.S.C. §1129(a)(9); and, thereby, the bankruptcy estates may forfeit any right they may have to contest the underlying dispute.

adjudication regarding the underlying liability for any alleged Preferential Transfers for a later

determination to be made in the context of an adversary proceeding.

Finally, the Debtors do not need to file an adversary proceeding in order to have this

threshold legal issue resolved.  The Debtors are asserting a defense within the claim resolution

process.  They do not seek affirmative relief.  Therefore, Bankruptcy Rule 7001 is not implicated

and an adversary proceeding is not necessary at this time.

Pursuant to Bankruptcy Rule 3007 a claim objection need not be made in an adversary

proceeding.[8]  When a response is filed to an objection, the claim objection becomes a contested

matter governed by Bankruptcy Rule 9014.  *See In re Fleming,* 2008 WL 4736269, at *1 (Bankr.

E.D. Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter, and

Fed. R. Bankr. P. 9014 applies.").  As such, certain rules, under part VII of the Federal Rules of

Bankruptcy Procedure are applicable, including Bankruptcy Rule 7056, which incorporates Rule

56 of the Federal Rules of Civil Procedure (the "Civil Rules").  *See id.*; *see also* Fed. R. Bankr.

P. 7056.[9]

Bifurcating the Hearing between a common threshold legal issue that pertains to all the

Claims Objections and reserving for later determination the underlying issues unique to each of

the adversary proceedings will create efficiencies in resolving the Claims Objections as well as

greater opportunity for all interested parties to participate and be heard.  When Claimants were

questioned during the Hearing as to how they would propose to go forward if the Hearing was

---

[8]  Rule 3007(b) of the Federal Rules of Bankruptcy Procedure states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."  The Debtors are not seeking relief of the kind specified in Rule 7001. Rather, they are asserting an affirmative defense to the claims.

[9]  Under Civil Rule 56, a party may request partial summary judgment.  *See* Fed. R. Civ. P. 56(a), (b)  (providing that any party "may move, with or without supporting affidavits, for summary judgment on all or part claim.").  Here, the Debtors have, in essence, requested partial summary judgment on a particular legal issue for which no genuine issue of material fact is in dispute.  Thus, the Debtors' request to bifurcate the hearings is proper under the applicable Rules of Bankruptcy Procedure.

not bifurcated, they suggested that the alternative would be to go forward individually on a claim

by claim basis in connection with the separate adversary proceedings.  This suggested alternative

would take significantly more time and would be potentially detrimental to parties given later

trial dates.  Given the efficiencies created by this method and the greater opportunity of all

Claimants to participate and be heard on the common legal issue, it is not surprising that many

other bankruptcy courts have proceeded in a similar fashion—first addressing common threshold

legal issues before resolving separate underlying liability issues.  *See, e.g., In re Leeds Bldg.*

*Prods., Inc.*, 141 B.R. 265, 266 (Bankr. N.D. Ga. 1992); *In re Plastech Engineered Prods., Inc.,*

394 B.R. 147, 149 (Bankr. E.D. Mich. 2008); *In re Hackney,* 351 B.R. 179, 181 (Bankr. N.D.

Ala. 2006); *In re Dawson*, 346 B.R. 503, 507 (Bankr. N.D. Cal. 2006); *In re Hicks*, 300 B.R.

372, 375 (Bankr. D. Idaho 2003).  Accordingly, the Court agreed to hear arguments relating to

the one legal issue regarding the application of § 502(d) to temporarily disallow the Claims filed

by the Claimants pending an adjudication of any underlying liability for the alleged Preferential

Transfers in the context of separate adversary proceedings.

## Analysis

The question before the Court is whether § 502(d) may be used to bar § 503(b)(9)

administrative expense claims.    Section 503(b)(9) provides for the allowance of an

administrative claim for "the value of any goods received by the debtor within 20 days before the

date of commencement of a case under [Title 11] in which the goods have been sold to the debtor

in the ordinary course of such debtor's business."   11 U.S.C. § 503(b)(9).   Section 502(d)

provides that "[n]otwithstanding subsections (a) and (b) of [section 502], the court shall disallow

any claim of any entity from which property is recoverable under section 542, 543, 550, or 553,

of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545,

547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or

turned over any such property, for which such entity or transferee is liable under section 522(i),

542, 543, 550, or 553 of this title."  11 U.S.C. § 502(d).  Debtors contend that the Claimants are

transferees of Preferential Transfers avoidable under § 547.  From a plain reading of § 502(d), it

would appear that if a Claimant's request for payment of an administrative expense arising under

§ 503(b)(9) is a "claim" under the Bankruptcy Code, then § 502(d) may be used to disallow it.

The word "claim" is defined in § 101(5)(A) as a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, secured, or unsecured."  11 U.S.C. § 101(5)(A).  It is generally accepted

that "Congress chose expansive language," in defining the term "claim," and therefore the

definition of "claim" should be broadly construed and applied.  *Pennsylvania Dep't of Pub.

Welfare v. Davenport*, 495 U.S. 552, 558 (1990).  Administrative expenses appear to be a subset

of "claims."   Throughout the Bankruptcy Code, the term "claim" is used to refer to

administrative expenses.  For example, under § 1123(a), "a plan shall (1) designate, subject to

section 1122 of this title, classes of claims, other than claims of a kind specified in section

507(a)(2)."  11 U.S.C. § 1123(a)(1).  Section 507(a)(2) specifically refers to "administrative

expenses allowed under section 503(b) of this title. . . ."  11 U.S.C. § 507(a)(2).  So, the kind of

"claims" specified in § 507(a)(2) to which § 1123(a) refers are administrative expenses.[10]

Further, § 503(b) itself uses the terms "claims" and "expenses" interchangeably:  "[a]fter notice

and hearing, there shall be allowed administrative expenses, other than claims allowed under

section 502(f) of this title. . . ."  11 U.S.C. § 503(b).  If Congress had intended that these terms be

mutually exclusive, there would be no need to carve out "claims" allowed under § 502(f).  *See,

e.g., F.C.C. v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 302 (2003) (holding that

---

[10]  Similarly § 1129(a)(9)(A)  refers to *claims* of a kind specified in section 507(a)(2).

a reading that renders parts of the Bankruptcy Code "superfluous . . . means, of course, that such a reading must be rejected.").

When a "statute's language is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). From a plain reading of the text of § 502(d), it appears that § 502(d) can be invoked to disallow a claim for an administrative expense under § 503(b). Nonetheless, the Claimants argue in their Responses that §§ 502(d) and 503(b) should be read separate and apart from one another, where § 502(d) may only be used to disallow claims filed under § 501 and not claims filed under § 503(b). The Respondents rely heavily on the logic of *In re Ames Dep't Stores, Inc.*, 582 F.3d 411, 430 (2d Cir. 2009) ("Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled 'Allowance of administrative expenses.' The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects. . . . Thus, with respect to the allowance of claims, sections 502 and 503 are separate and independent.").

Courts are split on the issue of whether or not § 502(d) can be read to apply to claims for administrative expense. The majority of courts have held that § 502(d) is generally not applicable to § 503(b) claims. *See, e.g., In re Ames*, 582 F.3d at 430-32 (holding that § 502(d) does not apply to administrative expenses under § 503(b)); *In re TI Acquisition, LLC*, 410 B.R. 742 (Bankr. N.D. Ga. 2009); *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 161 (Bank. E.D. Mich. 2008) (holding that § 502(d) may not be used to bar claims under § 503(b)(9)); *In re Roberds, Inc.*, 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004); *In re Lids Corp.*, 260 B.R. 680, 683-4 (Bankr. D. Del. 2001); *In re CM Holdings, Inc.*, 264 B.R. 141, 158 (Bankr. D. Del. 2000) (holding that § 502(d) was not applicable to a postpetition administrative expense claim). A

minority of courts have adopted the contrary position and read the definition of "claim" in

§ 101(5) as broad enough to cover administrative expenses.  *See, e.g., In re MicroAge, Inc.,* 291

B.R. 503, 513-4 (B.A.P. 9th Cir. 2002); *In re Georgia Steel, Inc.*, 38 B.R. 829, 839-40 (Bankr.

M.D. Ga. 1984).

    The majority approach is more consistent with established Fourth Circuit precedent.  In

*Durham v. SMI Industries,*[11] the Fourth Circuit Court of Appeals stated that "Section 502(d)

provides, in pertinent part, that 'the court shall disallow any claim of any entity from which

property is recoverable under section . . . 550, unless such entity . . . has paid the amount . . . for

which such entity or transferee is liable.'  Since a court can only disallow a claim after one has

been filed under 11 U.S.C.A. 501(a), 'claim' in section 502(d) includes only one for which a

proof has been filed."  *Durham v. SMI Industries*, 882 F.2d. 881, 882-83 (4th Cir. 1989).

Therefore, despite the expansive language used in § 101(5)(A) that defines the term "claim" and

despite the apparent plain meaning of § 502(d) that applies that defined term, the law in this

Circuit is that § 502(d) can only be used to bar "claims" where the "claims" are filed under

§ 501(a).  This application of the law is entirely in keeping with the recent holding of the Second

Circuit in *In re Ames*.[12]

    The Debtors argue that the instant case can be distinguished from *In re Ames* and

*Durham v. SMI Industries* because this case involves § 503(b)(9) claims, which arise prepetition,

rather than general § 503(b) administrative expenses, most of which arise postpetition.  Notably,

the Debtors argue that even if the courts in *Ames* and *Durham* are correct that § 502(d) can only

---

[11]  *Durham v. SMI Industries*, 882 F.2d. 881 (4th Cir. 1989).

[12]  It is also worth noting that the Ames court specifically did not address the application of 502(d) to 503(b)(9)
claims.  *See Ames*, 582 F.3d at 424, n. 2 ("Neither party has suggested that section 503(b)(9) has any *relevance* to
this appeal, and we do not specifically address its interaction with section 502(d).").  Further, the *Ames* court paid
special attention to the postpetition nature of administrative expenses in holding 502(d) inapplicable.  *Id.* at 431.

be used to disallow claims filed under 501(a) of the Bankruptcy Code, § 503(b)(9) claims, unlike

other § 503(b) administrative expenses, *must* be filed under § 501(a) of the Bankruptcy Code.

Bankruptcy Rule 3002(a) mandates that "[a]n unsecured creditor . . . *must* file a proof of

claim . . . for the claim . . . to be allowed, except as provided in Rules 1019(3), 3003, 3004, and

3005." Fed. R. Bankr. P. 3002(a) (emphasis added).[13]  Bankruptcy Rule 3003(c) addresses filing

a proof of claim in a Chapter 11 case:  "(2) Who must file. Any creditor . . . whose claim . . . is

not scheduled or scheduled as disputed, contingent, or unliquidated *shall* file a proof of

claim. . . ." Fed. R. Bankr. P. 3003(c)(2) (emphasis added).[14]

The definition of "creditor" is an "entity that has a claim against the debtor that arose at

the time of or before the [Petition Date]. . . ." 11 U.S.C. §101(10)(A).  The Claimants are entities

whose claims arose against the Debtors prepetition because they delivered goods to the Debtors

within the 20 days prior to the Petition Date for which they were not paid.  Accordingly, the

Claimants are "creditors" within the meaning of the Bankruptcy Code.  Rules 3002 and 3003 of

the Federal Rules of Bankruptcy Procedure mandate that "creditors" must file a proof of claim to

receive a distribution.  Therefore, Claimants, as prepetition "creditors", must file their

§ 503(b)(9) claim under § 501(a).  Neither the Federal Rules of Bankruptcy Procedure nor the

Bankruptcy Code provide § 503(b)(9) Claimants an exception to this rule.  In fact, each Claimant

in this case did file a proof of claim under § 501(a).  If a "creditor" wishes to be granted an

administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under

§ 501, second, have the claim allowed under § 502, and then, third, request administrative

expense priority under § 503(a).

---

[13]  None of the exceptions provided in Rules 1019(3), 3003, 3004, and 3005 of the Federal Rules of Bankruptcy
Procedure are applicable to the Claimants.

[14]  The Claimants' Claims in this case were either not scheduled or were scheduled as disputed, contingent or
unliquidated.

The Bankruptcy Court of the Eastern District of Michigan is one of the few courts that has specifically addressed the application of § 502(d) to §503(b)(9) claims. *See In re Plastech Engineered Products Inc.*, 394 B.R. 147 (Bankr. E.D. Mich. 2008). The *Plastech* court held that § 502(d) could not apply to § 503(b)(9) claims because there was nothing in the Bankruptcy Code that made § 503(b)(9) claims a "special class," that would distinguish them from other § 503(b) claims. *Id.* at 163-64. The *Plastech* court, though, ignored the fact that nothing in the Bankruptcy Code makes §§ 501, 502 and 503 mutually exclusive. A creditor may be required to seek allowance of its claim under both §§ 502 and 503. This is, in fact, what the Federal Rules of Bankruptcy Procedure require in cases of § 503(b)(9) claims.

Both *Durham* and *Ames* make clear that § 502(d) may only be used to disallow claims filed by creditors under § 501(a). Although Claimants may be entitled to administrative expense status under § 503(b)(9), they are also creditors within the meaning of § 101(10)(A) and, as such, were required to file a proof of claim under § 501(a) in accordance with Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure. Therefore, consistent with *Durham* and *Ames,* § 502(d) may be applied to disallow the Claimants' Claims until the Claimants have paid into the estate any Preferential Transfers for which they may be held liable.

The goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the Claimants' Claims. Section 547(c)(4) provides a creditor with a "new value" defense to a claim that the creditor received an avoidable Preferential Transfer. 11 U.S.C. § 547(c)(4). This defense allows a creditor "to offset preference payments through the extension of new value to the debtor so long as the debtor does not make an *otherwise unavoidable transfer* on account of the new value." *In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir. 2005). The definition of "new value" includes "money or money's worth

12

in goods. . . ." 11 U.S.C. § 547(a)(2).  It is very likely, therefore, that in many instances, a Claimant will be both seeking an administrative expense payment for goods delivered in the 20 days prior to the Petition Date under § 503(b)(9) and using the delivery of those same goods as a basis for the new value defense.  If the Claimant succeeds in both instances, then the Claimant will receive full payment on the § 503(b)(9) claim and the estate will be unable to get back the value of any Preferential Transfer that was made.  This would allow the Claimant to receive a more favorable distribution to the detriment of other claimants in the case.  Temporarily disallowing the Claims and holding them in abeyance until the preference litigation takes place would allow this Court to adjudicate these issues together and ensure that Claimants do not receive windfalls to the detriment of other creditors.

## Conclusion

For the above reasons, the Court concludes that § 502(d) may be used to temporarily disallow § 503(b)(9) claims.  As the Fourth Circuit held in *Durham*, § 502(d) may be used to bar claims filed under § 501.  Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure mandate that all creditors must file proofs of claim pursuant to § 501(a).  By definition, § 503(b)(9) claims arise within the 20 days prior to the Petition Date.  This means that Claimants, as holders of § 503(b)(9) claims, are creditors as defined in § 101(10)(A).  As creditors, Claimants must file a proof of claim under § 501(a).  Therefore, § 502(d) may be used to temporarily disallow the Claims filed under § 501(a) up to the amount of the alleged Preferential Transfers.

A separate order shall be issued.

ENTERED: _____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., | Case No. 08-35653 |
| | *et al.*, | Chapter 11 |
| | Debtors. | Jointly Administered |

## ORDER ON DEBTORS' FIFTY-FIRST,
## AND FIFTY-SECOND OMNIBUS OBJECTIONS

Upon consideration of Debtors'(I) Fifty-First Omnibus Objection to Certain 503(b)(9)

Claims and (II) Motion for a Waiver of the Requirement that the First Hearing on any Response

Proceed as a Status Conference, filed on October 13, 2009 (Docket No. 5214; the "51st Omnibus

Objection), and Debtors' (I) Fifty-Second Omnibus Objection to Certain 503(b)(9) Claims and

(II) Motion for a Waiver of the Requirement that the First Hearing on any Response Proceed as a

Status Conference, filed on October 13, 2009 (Docket No. 5216; the "52nd Omnibus Objection";

collectively, with the 51st Omnibus Objection, the "Objections"), the responses thereto (Docket

Numbers 5411, 5416, 5447, 5454, 5470, 5472, 5475, 5479, 5529, 5530, 5535, 5537, 5539, 5610,

5487, 5491, 5497, 5498, 5499, 5502, 5505, 5506, 5509, 5511, 5515, 5434, 5449, 5464, 5489,

5495, 5496, 5500, 5504, 5583; collectively, the "Responses") of the respondents (the

"Respondents") and the omnibus replies thereto (Docket Numbers 5621 & 5622; together, the

"Replies"); and the Court having reviewed the Objections, the Responses and the Replies; and

the Court having considered the arguments advanced by the Debtors and the Respondents at the

hearing held on November 12, 2009; and upon the record herein, and after due deliberation

thereon; and good and sufficient cause appearing therefore as set out in the Court's

Memorandum Opinion[1] entered on this date, it is hereby,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Objections are partially SUSTAINED to the extent set forth herein.

2.     The Debtors may apply 11 U.S.C. § 502(d) to temporarily disallow the claims

filed by Respondents under 11 U.S.C. § 503(b)(9) as set forth in the 51st Omnibus Objection and

the 52nd Omnibus Objection up to the amount potentially recoverable on account of preferential

transfers allegedly avoidable under 11 U.S.C. § 547.

3.     The Respondents' § 503(b)(9) claims identified in the Objections are temporarily

disallowed (the "Disallowed Claims").

4.     The Debtors' right to object to any claim on any grounds that governing law

permits is not waived and expressly preserved.

5.     The requirement that the initial hearings on the Objections proceed as status

conferences is hereby waived.

6.     This Court retains jurisdiction to hear and determine all matters arising from or

related to the Objections, the Disallowed Claims and this Order.

ENTERED: _____

_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

---

[1]  The Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

**EXHIBIT C**

**(The Supplemental Opinion)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:   CIRCUIT CITY STORES, INC.,   Case No. 08-35653
*et al.*,   Chapter 11
Debtors.   Jointly Administered

## SUPPLEMENTAL
## MEMORANDUM OPINION

Before the Court is the Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration

of Court's Order on Debtors' Fifty-first and Fifty-second Omnibus Objections (the "Motion"), the

Debtors' objection to the Motion, and the Movants' reply thereto.  Apex Digital, Inc. and THQ,

Inc. (the "Movants") ask the Court to reconsider its Order and Memorandum Opinion dated

January 6, 2010 (the "Memorandum Opinion"), in which the Court held that the Debtors may use

11 U.S.C. § 502(d) to temporarily disallow certain § 503(b)(9)[1] claims filed by a number of their

creditors (the "Claimants").[2]

Movants assert that in rendering its Memorandum Opinion, the Court failed to consider

their late filed supplemental response (the "Supplemental Response").[3]  In light of the arguments

---

[1]  Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United
States Code (the "Bankruptcy Code").

[2]  Various other Claimants have joined in the Motion.  *See* Joinder of Paramount Home Entertainment Inc. to Motion
of Apex Digital, Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second
Omnibus Objections [Docket No. 6323]; PNY Technologies, Inc.'s Joinder to Motion of Apex Digital, Inc. and
THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections
[Docket No. 6322]; Olympus Corporation and Olympus Imaging America Inc.'s Joinder to Motion of Apex Digital,
Inc. and THQ, Inc. for Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus
Objections [Docket No. 6349]; Onkyo USA Corporation's Joinder to Motion of Apex Digital, Inc. and THQ, Inc. for
Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objection [Docket No. 6351];
Joinder of Toshiba America Consumer Products, L.L.C. to Motion of Apex Digital, Inc. and THQ, Inc. for
Reconsideration of Court's Order on Debtors' Fifty-First and Fifty-Second Omnibus Objections [Docket No. 6370].

[3]  The Supplemental Response [Docket No. 5666] was filed, without leave of court, on November 13, 2009, the day
after the hearing on the Debtors' Fifty-First and Fifty-Second Omnibus Objections to Certain § 503(b)(9) Claims.



0835653100223000000000009

set forth in the Supplemental Response, Movants request that the Court reconsider its January 6, 2010 ruling (the Court's "Prior Ruling") in accordance with Fed. R. Civ. P. 59 as made applicable herein by Fed. R. Bankr. P. 9023.[4]  Movants urge the Court to reverse its Prior Ruling and overrule the Debtors' Fifty-First and Fifty-Second Omnibus Objections to Certain 503(b)(9) Claims.

The Fourth Circuit Court of Appeals (the "Fourth Circuit") recognizes three grounds for reconsideration under Fed. R. Civ. P. 59:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993); *see also Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006).  Nothing in the Motion suggests that there has been any intervening change in controlling law, any new evidence for which to account, or any manifest injustice to prevent.  Rather, the Movants argue that the Court made a clear error of law in holding that § 502(d) may be used to temporarily disallow a claim asserted under § 503(b)(9).  After review of the arguments presented in the Supplemental Response, the Motion, the Debtors' objection to the Motion, and the Movants' reply, many of which were already analyzed in the Memorandum Opinion, the Court concludes that no clear error of law was made in connection with its Prior Ruling.[5]  Accordingly, Movants' Motion will

---

[4]  The Federal Rules of Bankruptcy Procedure are hereinafter referred to as the "Bankruptcy Rule(s)."

[5]  Failure to review the Supplement Response does not constitute a clear error of law, nor is it necessary to prevent manifest injustice.  *See Motorists Mut. Ins. Co. v. Teel's Restaurant Inc*., 2009 WL 5065223, *1 (N.D. Ind. Dec. 23, 2009) (holding that the court's failure to consider a reply brief in support of a motion for summary judgment before issuing its ruling was not manifest error of law such that motion for  reconsideration should be granted); *Ogbevoen v. Aramark Campus, Inc.*, 2006 WL 1788430, *1 (S.D. Tex. June 20, 2006) (holding that the court did not err in failing to consider reply in support of motion for summary judgment when reply was filed after deadline established by the court); *Cotracom Commodity Trading Co.v. Seaboard Corp.,* 193 F.R.D. 696, 699 (D. Kan. 2000) ("That the Court failed to consider the reply brief thus provides no basis to reconsider the ruling concerning the duty to confer.").  The Court had no obligation to review the Supplemental Response.  *See Colodney v. Sebelius,* 2009 WL 4884501, *1 n.1 (D. Md. Dec. 9, 2009) (noting that the court has discretion to disregard untimely filed reply to

2

be denied.   This Supplemental Memorandum Opinion sets forth the Court's findings and

conclusions in support of its denial of the Motion and supplements the Court's findings of fact

and conclusions of law set forth in the Memorandum Opinion all in accordance with Rule 7052

of the Federal Rules of Bankruptcy Procedure.[6]  As no party has raised any new facts, the facts

and procedural history as set out in the Memorandum Opinion are incorporated by reference into

this Supplemental Memorandum Opinion.[7]

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C.

§§ 157 and 1334 and the general order of reference from the United States District Court for the

Eastern District of Virginia dated August 15, 1984.   This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (B), (C), and (O).   Venue is appropriate in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

### The Court's Prior Ruling

The question initially put before the Court was whether the Debtors could use § 502(d) to

temporarily disallow § 503(b)(9) administrative expense claims.[8]  The Court began its analysis of

this issue with § 502(d) which "provides, in pertinent part, that 'the court shall disallow any

---

motion for summary judgment).   Nevertheless, the Court has given due consideration to the arguments set forth in
the Supplemental Response, the Motion, and Movants' reply as detailed in this Supplemental Memorandum
Opinion.  *See In re E.M. Williams & Sons, Inc.,* 2009 WL 2211727, *1 (Bankr. E.D. Va 2009) (addressing a new
argument advanced by the Plaintiff in a motion to reconsider, even though the Plaintiff raised arguments that could
have been raised prior to the issuance of the Court's decision and the Plaintiff did not identify any new evidence that
was not previously available to it nor cite any intervening change in controlling law).

[6]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[7]  The only change in facts since the entry of the Memorandum Opinion on January 6, 2009 is that the Confirmation
hearing is now scheduled for March 8, 2010, instead of January 28, 2010.

[8]  Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by
the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been
sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).

claim of any entity from which property is recoverable under section . . . 550, unless such entity

. . . has paid the amount . . . for which such entity or transferee is liable.'" *Durham v. SMI*

*Industries*, 882 F.2d. 881, 882-83 (4th Cir. 1989).   Debtors contend that the Movants are

transferees of Preferential Transfers avoidable under § 547 of the Bankruptcy Code.  The Fourth

Circuit explained in *Durham* that the term "claim" as used in § 502(d) is not to be construed

expansively in accordance with the definition supplied in § 101(5)(A) of the Bankruptcy Code;[9]

but rather, the term "claim" as used in § 502(d) refers only to claims for which a proof has been

filed under § 501(a).   *Id.*   As the vast majority of administrative expense claims arise

postpetition, § 501(a) is inapplicable to them, and § 502(d) cannot be used to bar those types of

administrative expense claims.

In its Memorandum Opinion, the Court concluded that a claimant asserting a § 503(b)(9)

administrative expense claim must file a proof of claim under § 501 in order to have such claim

allowed as an administrative expense under § 503(b)(9).    Rules 3002 and 3003 of the Federal

Rules of Bankruptcy Procedure require all creditors to file proofs of claim pursuant to § 501(a).

By definition, § 503(b)(9) administrative expense claims arise within the 20 days prior to the

Petition Date.  This means that the holders of § 503(b)(9) administrative expense claims are

creditors as defined in § 101(10)(A) of the Bankruptcy Code.  As creditors, the holders of

§ 503(b)(9) administrative expense claims (unlike the majority of entities holding other § 503(b)

administrative expense claims that arise postpetition) must file a proof of claim under § 501(a) of

the Bankruptcy Code.  In accordance with the Fourth Circuit's holding in *Durham* that § 502(d)

may be used to bar claims filed under § 501, the Court concluded in its Memorandum Opinion

---

[9]  "The term 'claim' means -- (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. 101(5)(A).

that § 502(d) may be used to temporarily disallow § 503(b)(9) Claims filed under § 501(a) up to

the amount of the alleged Preferential Transfers.

### Discussion

Movants argue in their Motion that the Court's conclusion that § 503(b)(9) Claimants

must file proofs of claim pursuant to Bankruptcy Rule 3002 is "unfounded."  Yet, Movants do

not take issue with the Court's observation that the plain language of Bankruptcy Rule 3002

requires that "[a]n unsecured *creditor . . . must* file a proof of claim . . . for the claim . . . to be

allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr. P. 3002(a)

(emphasis added).  None of the exceptions set forth in Bankruptcy Rules 1019(3), 3003, 3004,

and 3005 are applicable here.  Quite to the contrary, Bankruptcy Rule 3003(c), which addresses

specifically the need to file a proof of claim in a Chapter 11 case, provides that "[a]ny

creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or

unliquidated *shall* file a proof of claim. . . ." Fed. R. Bankr. P. 3003(c)(2) (emphasis added).[10]

As explained in the Memorandum Opinion, there is no escaping the fact that the § 503(b)(9)

Claimants are unsecured creditors as defined in §101(10)(A).[11]   Neither Movant suggests that it

is not a "creditor" within the meaning of that section.

Rather, Movants argue that, if Bankruptcy Rule 3002 is read to apply to § 503(b)(9)

administrative expense claims as the Court maintains, then the Bankruptcy Rule would directly

conflict with § 503(a) of the Bankruptcy Code.  Movants point out that "[a]ny conflict between

the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *In re*

---

[10]   Movants' administrative expense claims were either unscheduled or scheduled as disputed, contingent or
unliquidated; and, therefore, Movants were required by the Bankruptcy Rules to file proofs of their claims, which, in
fact, they did.

[11]   "The term 'creditor' means – (A) entity that has a claim against the debtor that arose at the time of or before the
order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section
348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." 11 U.S.C. §101(10).

*Pacific Atlantic Trading Co.,* 33 F.3d 1064, 1066 (9th Cir. 1994).  The Court agrees with this abstract principle of law -- conflicts between the Bankruptcy Code and the Bankruptcy Rules must be resolved in favor of the Code.  But in this instance, there is no such conflict.  Applying Bankruptcy Rule 3002 to § 503(b)(9) administrative expense claims does not "abridge, enlarge, or modify any substantive right" in the Bankruptcy Code.  *See* 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.  Such rules shall not abridge, enlarge, or modify any substantive right.").

Bankruptcy Rules 3002 and 3003(c) merely set forth the practice and procedure for filing proofs of claim under § 501(a) in chapter 11 cases.  Section 501(a) states that "a creditor . . . may file a proof of claim."   As each § 503(b)(9) Claimant is very clearly "a creditor" within the meaning of the Code, § 501(a) is applicable to their claims.  Nothing in the language of §§ 501, 502, or 503 of the Bankruptcy Code suggests that filing a proof of claim by a creditor under § 501 becomes unnecessary when the creditor also seeks to have the claim paid as an administrative expense under § 503(b)(9) and accorded priority status under § 507(a)(2).  Section 503(a) states that an "entity may timely file a request for payment of an administrative expense."  Requiring an entity that is also a creditor to file a proof of claim under § 501(a) in no way conflicts with the requirement that the entity may also request administrative expense status for that claim under § 503(a).

There is no language in either the Code or the Bankruptcy Rules that exempts creditors with § 503(b)(9) administrative expense claims from the procedures laid out in the Bankruptcy Rules for filing proofs of claim.  Further, § 503(b)(9) Claimants are not being forced to navigate a "three-step gauntlet" as suggested by the Movants.  A § 503(b)(9) claimant can file a single

6

proof of claim using Official Form 10 that satisfies the requirements of both § 501(a) and

§ 503(a).  That single proof of claim form would first establish that a claim by the creditor exists

and then request that the claim be paid as an administrative expense.  Under § 502(a), any claim

filed under § 501 is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).

If no objection is filed to the claim, then, "[a]fter notice and a hearing," the creditor's request for

payment of the claim as an administrative expense "shall be allowed" – in effect granting that

claim an administrative priority under § 507(a)(2).  11 U.S.C. § 503.  This procedure does not

impose an excessive burden on § 503(b)(9) Claimants.  And should such a claimant fail to

establish that it has a valid administrative expense claim under § 503(b)(9)[12] (perhaps because

the "goods" were not "sold to the debtor in the ordinary course of such debtor's business," or

because the "goods" allegedly "sold to the debtor" failed to meet the definition of "goods" under

the Code, or because the "goods" were "sold to the debtor" outside the statutory timeframe), this

procedure ensures that only the administrative priority status of the claim would be disallowed

and not the underlying claim itself.

     In their Supplemental Response, Movants rely heavily on two bankruptcy treatises in

contending that this Court committed clear legal error.  Movants first cite to Collier on

Bankruptcy for the proposition that "[t]he requirement that a proof of claim be filed extends to

unsecured creditors claiming priorities but does not extend to costs of administration."  9 *Collier*

*on Bankruptcy*, ¶ 3002.01 at 3002-2 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.).

---

[12]   *See In re Merry-Go-Round Enterprises v. Simon Debartolo Group*, 180 F.3d 149, 156-157 (4th Cir. 1999)
(holding that the claimant has the burden of establishing entitlement to payment of an administrative expense under
§ 503).

As a treatise, Collier on Bankruptcy is not binding authority on this Court.[13]    In the cited

instance, there is no indication that the editors took into account the addition of § 503(b)(9) to the

Bankruptcy Code in 2005.    The footnote in support of the quoted statement from the treatise

bears this out.    It references a 1985 case from the Bankruptcy Court in the District of Oregon that

is no longer good authority for at least one point of law and that deals with the payment of

attorney fees for a debtor in possession.    Such an entity is not a "creditor" as defined by the

Bankruptcy Code and would not be required by Bankruptcy Rule 3002 to file a proof of claim

for this kind of administrative expense claim.    The Court does not find the referenced passage

from Collier on Bankruptcy to be helpful in the context of § 503(b)(9) claims.

Movants cite no controlling authority to support their argument that Bankruptcy Rule

3002 does not apply to creditors with § 503(b)(9) claims.    Instead, the Movants rely on yet

another treatise that states:

> § 503 is captioned 'allowance of administrative expenses' [which] *appears to
> suggest* that § 503 is a separate allowance section, apart from § 502, devoted
> exclusively to administrative expenses.    *If so*, then § 502 would not apply to the
> allowance of administrative expenses.

2 *Norton Bankruptcy Law and Practice 2d* ¶ 42.14 at 42-76 to 42-77 (emphasis added).    As the

emphasized language indicates, the editors of the treatise express some uncertainty as to the

application and interplay of §§ 502 and 503.    But more importantly, this is the same argument

that was presented by a number of Claimants in their briefs and at the hearing on November 12,

2009, which the Court has already rejected in holding that §§ 501 and 503 are not mutually

exclusive in cases of § 503(b)(9) Claims.    The Court is not persuaded that the quoted passage

from this treatise demonstrates that the Court made a clear error of law in holding that

---

[13]    The Court would note, however, that it has often cited to the treatise and does find it to be a scholarly work and
generally persuasive.

§ 503(b)(9) Claimants must file proofs of claim under § 501(a) and request administrative expenses status under § 503(a) in order to be allowed their § 503(b)(9) Claims.

Indeed, there are any number of reasons why Congress would treat § 503(b)(9) claims differently from other administrative expense claims. As the Second Circuit Court of Appeals noted, "the Bankruptcy Code establishes a clear division between an entity in its pre- and post-petition states." *In re Ames,* 582 F.3d 422, 431 (2d Cir. 2009). Most administrative expenses arise postpetition and cannot be readily calculated at the petition date because they have not yet been incurred. Administrative expense claims for the compensation of professionals under § 503(b)(2), for example, are incurred postpetition, on an ongoing basis, throughout the bankruptcy case. The procedure for filing proofs of claim under Bankruptcy Rules 3002 and 3003 is inappropriate for such administrative expense claims. For this reason, § 501(a) and Bankruptcy Rules 3002 and 3003 only require "creditors" to file proofs of claim. Section 503(b)(9) claims, unlike most other administrative expenses, are prepetition claims that can be calculated as of the petition date. They arise, by definition, prepetition. Therefore, there is no practical reason why the procedures laid out in Bankruptcy Rules 3002 and 3003 should not apply to § 503(b)(9) claims. The Official Proof of Claim Form bears out this distinction between prepetition § 503(b)(9) administrative expense claims and other types of postpetition administrative expense claims where it states that "[t]his form should not be used to make a claim for an administrative expense *arising after the commencement of the case*." Official Form 10 (emphasis added).

The policy consideration most often advanced for not allowing § 502(d) to be used to bar § 503(b) administrative expense claims is not applicable in the § 503(b)(9) context, lending further support for the application of the Bankruptcy Rules as written. It is generally understood

that "the Bankruptcy Code gives a higher priority to requests for administrative expenses than to prepetition claims in order to encourage third parties to supply goods and services on credit to the *estate* . . . '[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend *post-petition credit* to a chapter 11 debtor.'"    *Id.*    (quoting *In re Lids*, 260 B.R. 680, 684 (Bankr. D. Del. 2001)) (emphasis added).    The payment for which § 503(b)(9) provides an administrative priority is for goods that were sold to the debtor within the 20-day period preceding the petition date.    No bankruptcy estate was in existence (or even contemplated) when these goods were sold.    Section 503(b)(9) does not encourage the extension of postpetition credit.    Section 503(b)(9) claims are by definition claims that arise for the prepetition supply of goods in the ordinary course of the debtor's business.    Although trade vendors may have an idea that a business is troubled, they generally do not know if or when a debtor might file a bankruptcy petition.    In a prepetition world, it is assumed that creditors take whatever steps are lawfully necessary and appropriate to get their claims preferred and thus paid.    It is doubtful that § 503(b)(9) has any significant effect on whether vendors choose to extend credit prepetition.[14]

As the Court explained in its Memorandum Opinion, the goals of equitable distribution and efficiency support the conclusion that § 502(d) may be employed to temporarily disallow the § 503(b)(9) Claimants' administrative expense claims.[15]    The Court expressed concern in its

---

[14]    There was certainly no evidence presented to the Court in these bankruptcy cases that trade creditors extended any significant postpetition unsecured credit to the Debtors even in light of the postpetition DIP financing facility approved by the Court that allowed the Debtors to pay for the continued delivery of goods by vendors.    Rather, it appeared that the existence of the § 503(b)(9) administrative expense claims had a chilling effect on the part of the holders of such claims to extend postpetition credit.

[15]    *See, e.g., Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 865 (4th Cir. 1994) ("The presumption in bankruptcy cases is that the debtor's limited resources [should] be equally distributed among the creditors.    Thus, statutory priorities must be narrowly construed.").

Memorandum Opinion that overruling the Debtors' objections might prejudice the bankruptcy estates by allowing § 503(b)(9) Claimants both to receive payment on their asserted administrative claims for the delivery of goods and to use the provision of those same goods as the basis of a new value defense under 11 U.S.C. § 547(c)(4).  While Movants appear to concede that the Court has identified a relevant point of concern, they argue that it is of no moment because they are, in fact, entitled to this type of double recovery on their claims.[16]  If the Movants are correct in this regard, then the Claimants not only will be paid back in full for any goods delivered to the Debtors in the 20 days prior to the petition date but also will be able to use the delivery of those same goods as a "new value" credit to offset against their preference exposure.  While these Claimants would effectively receive payment for the delivery of their goods twice, other § 503(b)(9) Claimants who did not receive any preferential payments would only receive one payment for their goods and general unsecured creditors would receive no benefit from the preference actions.  Not surprisingly, the Debtors take issue with Movants' espoused position.  There is no controlling case law in this jurisdiction on the issue of whether creditors may assert a claim under § 503(b)(9) for goods sold to the debtor and use those same goods as the basis for asserting a new value defense under § 547(c)(4).  The Court expressed its concern over this issue in its Memorandum Opinion because this issue is not ripe for adjudication at this time.  However, a ruling against the Debtors at this point may very well preclude the estates from raising the issue when it does arise in the proper context.  Given the strong likelihood of this issue coming up in these cases as the preference litigation progresses,

---

[16]  Movants argue that neither § 503(b)(9) nor § 547(c)(4) states that the provisions are mutually exclusive.  Citing *Commissary Operations v. Dot Foods, Inc. (In re Commissary Operations, Inc.)*, No. 308-06279, slip op. at 11 (M.D. Tenn. Jan. 6, 2010), Movants argue that the plain language of the Code permits a § 503(b)(9) Claimant both to seek an administrative expense claim and to assert a new value defense all on account of the single transaction.

the Court agrees with the Debtors that the best approach is to temporarily disallow the Claims

and hold them in abeyance until the preference litigation takes place so that the Court can

adjudicate these issues together and ensure that Claimants do not receive windfalls to which they

may not be entitled to the detriment of other creditors.

Movants also argue that the Court has previously ruled in this case that a § 503(b)(9)

Claimant need only file a motion for allowance of administrative expense, not a proof of claim,

to meet its procedural burden.  The Movants cite the Bar Date Order[17] entered on November 12,

2008, which states that "[a]ll persons or entities holding a Section 503(b)(9) Claim against the

Debtors are required to file a Section 503(b)(9) Claim Request or, alternatively, a motion seeking

payment of 503(b)(9) claim . . . no later than the Section 503(b)(9) Bar Date."  The Court had no

intention for the Bar Date Order to constitute a substantive ruling on the issue of whether, as a

matter of Bankruptcy law, a § 503(b)(9) Claimant was supposed to file a proof of claim.  Rather,

the Bar Date Order was procedural in nature.  It was intended to forestall objections on account

of technical deficiencies pertaining to the filing of § 503(b)(9) Claims by laying out simplified

alternative procedures for satisfying the filing requirements for this particular case.  Indeed, had

any Claimant filed only a motion seeking payment of its § 503(b)(9) claim, the Court would have

treated the motion as an informal proof of claim under § 501.[18]  In point of fact, this did not

occur.  Each of the Movants did file a proof of claim form, most likely because they wanted to

---

[17]  Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under
Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar
Date Pursuant to Bankruptcy Rule 9007 [Docket No. 107].

[18]  Actions by a claimant which do not amount to a formal proof of claim may constitute an informal proof of claim.
*Fyne v. Atlas Supply Co.* (*In re Fyne*), 245 F.2d 107, 107 (4th Cir.1957).  If a creditor has "taken 'some affirmative
action to constitute sufficient notice that he has a claim against the estate,'" then its claim should be allowed.  *In re
Judy Wood Pub. Corp.* 289 B.R. 319, 322 (Bankr. E.D. Va. 2002) (quoting *Hardgrave v. La Rock* ( *In re
Hardgrave*), No. 94-1832, 1995 WL 371462, 1995 U.S.App. LEXIS 15506 (4th Cir. June 21, 1995)).

preserve their underlying unsecured claim to the extent that their request for administrative priority status was denied.

### Conclusion

"Reconsideration may be appropriate where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issue presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Puller v. Unisource Worldwide, Inc.*, No. 3:08-CV-813, 2009 U.S. Dist. LEXIS 27306, at *3–5 (E.D. Va. Mar. 31, 2009) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). And, "a party should not use a 59(e) motion simply 'to ask the Court to rethink what the Court had already thought through.'" *Id.; see also Cureton v. Cianbro Corp.*, No. JFM-06-2303, 2007 U.S. Dist. LEXIS 7388, 2007 WL 397025, at *1 (D. Md. Jan 30, 2007) (holding that reconsideration is not permitted when parties are attempting to "raise arguments which could have been raised prior to the issuance of judgment"); *see also In re E.M. Williams & Sons, Inc.*, 2009 WL 2211727, *1 (Bankr. E.D. Va 2009) (noting that reconsideration may be appropriate where the court has made an error not of reasoning but of apprehension, but that such circumstances are rare).   The Movants here are asking the Court to reconsider arguments that were made during the hearing and are suggesting that the Court erred in its reasoning rather than in its apprehension.

For these reasons, the Movants have not met their burden of establishing a clear error of law.  The Court will not overturn its Prior Ruling that entities seeking to assert administrative claims under § 503(b)(9) are creditors who must file proofs of claims under § 501(a) and, therefore, that § 502(d) may be used to temporarily disallow claims asserted under § 503(b)(9).

Accordingly, the Motion for Reconsideration will be denied.  A separate order shall issue.


ENTERED: _____


_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT D**

**(The Reconsideration Order)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., *et al.*, | Case No. 08-35653 |
| | Debtors. | Chapter 11 |
| | | Jointly Administered |

### ORDER ON MOTION TO RECONSIDER

For the reasons set forth in the Supplemental Memorandum Opinion entered on this date, it is hereby

**ORDERED** that the Motion of Apex Digital, Inc. and THQ, Inc. for Reconsideration of the Court's Order on Debtors' Fifty-first and Fifty-second Omnibus Objections and Memorandum Opinion dated January 6, 2010 be, and it hereby is, DENIED.

ENTERED: _____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

0835653100223000000000010