Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

             IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. 08-35653 (KRH)
et al.,                    :
                           :
            Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A),
363(B) AND 503(C)(3) (A) APPROVING THE WIND DOWN
INCENTIVE AND RETENTION PLAN WITH RESPECT TO MR. MARCUM,
(B) AUTHORIZING PAYMENT OF BONUS TO MR. MARCUM AND (C)
APPROVING THE CONSULTING AGREEMENT WITH MR. MARCUM**

Upon the motion (the "Motion")[1] of the Debtors for entry of an order, under Bankruptcy Code sections 105 and 363(b), approving the Wind Down Incentive and Retention Plan and authorizing, but not directing, payment of wind down incentive and retention pay to Plan Participants (D.I. 2008); and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion with respect to James Marcum is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.    On March 25, 2009, the Court entered the Order Under Bankruptcy Code Sections 105, 363(b) and

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

503(c)(3) Approving a Wind Down Incentive and Retention
Plan and Authorizing Payment of Wind Down Incentive Pay
to Plan Participants (D.I. 2757) (the "Wind Down Order")
granting the Motion to the extent set forth therein and
approving the Wind Down Incentive and Retention Plan.

B.     Pursuant to the Wind Down Order, the
Motion was adjourned with respect to Mr. Marcum.

C.     On January 15, 2010, Mr. Marcum stepped
down as acting president and chief executive officer of
Circuit City Stores, Inc.  Since that date, Mr. Marcum
has been acting as a consultant to the Debtors.

D.     Given the services of Mr. Marcum beyond
his ordinary course responsibilities in connection with
the liquidation and wind down process in these chapter
11 cases, the Wind Down Incentive and Retention Plan, as
approved by the Wind Down Order and this Order, was
designed to appropriately compensate Mr. Marcum to
ensure that the Debtors conducted an orderly, efficient
and effective wind down of their business.

E.     The full experience, expertise, unique
skills, and enthusiastic involvement of Mr. Marcum has

3

been beneficial to the Debtors' efforts to maximize value for their estates.

F.    Mr. Marcum's services to the Debtors have been and continue to be critical to the successful wind down and liquidation of the Debtors.

G.    The Debtors have demonstrated sound business justifications for approving the Wind Down Incentive and Retention Plan with respect to Mr. Marcum and for payment of the Bonus (as defined herein) to Mr. Marcum thereunder.

H.    Approval of the Wind Down Incentive and Retention Plan with respect to Mr. Marcum and payment of the Bonus to Mr. Marcum are fair and reasonable under the circumstances.

I.    Approval of the Wind Down Incentive and Retention Plan with respect to Mr. Marcum and payment of the Bonus to Mr. Marcum are not governed by Bankruptcy Code section 503(c)(1) or (c)(2).

J.    Approval of the Wind Down Incentive and Retention Plan with respect to Mr. Marcum and payment of the Bonus to Mr. Marcum are justified under the facts

4

and circumstances of the Debtors' chapter 11 cases for the purposes of Bankruptcy Code section 503(c)(3).

K.    The Debtors' entry into the Consulting Agreement (as defined herein) is in the best interests of the Debtors, their estates and creditors.

L.    The terms of the Consulting Agreement and the compensation provided thereunder are fair and reasonable.

M.    The Debtors have reached an agreement with the Creditors' Committee and the U.S. Trustee with respect to payment of the Bonus to Mr. Marcum and the Debtors' entry into the Consulting Agreement.  This Order reflects the terms of that agreement.

N.    Based on the foregoing findings of fact and conclusions of law,[3] it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED to the extent set forth herein.

---

[3]    Statements made by the Court from the bench at the hearing on the Motion shall constitute additional conclusions of law and findings of fact as appropriate.

2.    Pursuant to Bankruptcy Code sections 105, 363 and 503(c)(3), the Wind Down Incentive and Retention Plan is approved with respect to Mr. Marcum.

3.    The Debtors are authorized to pay Mr. Marcum a bonus of $350,000 (the "Bonus"), to be paid in two equal installments of $175,000 as set forth herein.

4.    The Debtors shall pay the first $175,000 installment of the Bonus to Mr. Marcum within three (3) business days of the date this Order becomes a final order.

5.    The Debtors shall pay the second $175,000 installment of the Bonus to Mr. Marcum on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases.

6.    Pursuant to an agreement between the Debtors and the Creditors' Committee, the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (D.I. 5124)(the "Plan") shall be amended as follows:  Article VIII.B. shall include as a fifth condition precedent to the occurrence of the

6

Effective Date (as defined in the Plan), "The Debtors shall have paid to James A. Marcum Cash in the amount of $175,000 pursuant to paragraph 5 of the Bankruptcy Court's Order Pursuant to Bankruptcy Code Sections 105(a), 363(b) And 503(c)(3) (A) Approving the Wind Down Incentive and Retention Plan With Respect To Mr. Marcum, (B) Authorizing Payment Of Bonus To Mr. Marcum And (C) Approving The Consulting Agreement With James A. Marcum (D.I. _____)."

7.    The Circuit City Stores, Inc. Consulting Agreement between Circuit City Stores, Inc. and James Marcum, attached hereto as Exhibit A (the "Consulting Agreement"), is hereby approved in all respects.

8.    The Debtors are hereby authorized to enter into the Consulting Agreement and to engage Mr. Marcum under the Consulting Agreement to provide services to the Debtors in accordance with the terms thereof.

9.    The Consulting Agreement shall be effective as of January 16, 2010 until its expiration in accordance with its terms.

7

10.   The Debtors are authorized to take all
actions necessary to carry out the provisions of the
Consulting Agreement.

11.   Any amounts due to Mr. Marcum pursuant to
this Order, including the Bonus and any amounts due
under the Consulting Agreement, are hereby allowed as
administrative expenses under Bankruptcy Code section
503(b) and shall be granted priority under Bankruptcy
Code section 507(a)(2) without the need for Mr. Marcum
to file a request for payment under Bankruptcy Code
section 503(a), file a proof of claim or otherwise make
a request for payment.

12.   Nothing herein shall be deemed to affect
the validity of the Wind Down Order.

13.   This Order shall be effective immediately
upon entry, and any stay of orders provided for in
Bankruptcy Rule 6004(h) and any other provision of the
Bankruptcy Code or Bankruptcy Rules is expressly lifted.

14.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

8

15.   The Court retains exclusive jurisdiction
to hear and determine all disputes concerning this Order
and any and all matters arising from or related to the
implementation or interpretation of this Order, to the
fullest extent permitted by law.

Dated:  Richmond, Virginia
        Mar 11 2010                , 2010


                /s/ Kevin Huennekens
                _____
                UNITED STATES BANKRUPTCY JUDGE

                Entered on docket:  Mar 11 2010

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                /s/ Douglas M. Foley
                Douglas M. Foley


10

**EXHIBIT A**

**(Consulting Agreement)**

# CIRCUIT CITY STORES, INC.

## CONSULTING AGREEMENT

This CONSULTING AGREEMENT ("Consulting Agreement"), dated as of February 25, 2010, by and between Circuit City Stores, Inc., with its headquarters located at 4951 Lake Brook Drive, Glen Allen, VA 23060 (the "Company"), and James Marcum (the "Consultant"), an individual. For purposes of this Consulting Agreement, the term "Affiliates" shall mean any entities controlling, controlled by, or under common control with, the Company.

## W I T N E S S E T H :

WHEREAS, the Consultant serves as a member and Vice Chairman of the Company's Board of Directors (the "Board");

WHEREAS, until January 15, 2010, the Consultant served as Vice Chairman, Chief Executive Officer, and acting President of the Company;

WHEREAS, the Company wishes to engage the Consultant to perform consulting services, and the Consultant wishes to accept such engagement, all on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual obligations herein set forth, the parties hereto hereby agree as follows:

1.     **Term**. The term of this Consulting Agreement shall commence on January 16, 2010, and shall continue until the earlier to occur of (i) the effective date of a confirmed plan of liquidation in the Company's chapter 11 case and (ii) termination by the Company or the Consultant in accordance with section 9 of this Consulting Agreement (the "Consulting Term").

2.     **Consulting Services**. The services rendered by the Consultant pursuant to this Consulting Agreement shall consist of such consulting services as the Board of Directors or Chief Restructuring Officer of the Company ("CRO") may from time to time reasonably request during the Consulting Period and for which the Consultant agrees in his reasonable discretion to perform. Such services shall be with respect to:

(a) the wind down of the Company and its Affiliates remaining operations;

(b) such other matters as may be agreed upon between the Company and the Consultant ((a) and (b), together, the "Consulting Services"); and

(c) litigation concerning the Company, including (without limitation) assisting the Company's and its Affiliates' officers, directors, employees, representatives, and advisors with, participating in, and appearing or testifying before any court with

respect to such litigation ((c), the "Litigation Services" and together with the Consulting Services, the "Services")

     **3.**   **Other Engagements.** Nothing contained in this Consulting Agreement is intended to nor shall it prevent the Consultant from (1) continuing to serve and be compensated as a member of the Board or (2) simultaneously becoming employed by, or becoming an officer, employee, director, agent, consultant, contractor, shareholder, member or partner of, or otherwise hold an interest in, any partnership, corporation, limited liability company or other entity; provided, however, that the Consultant shall remain bound by, and shall not violate the covenant set forth in Paragraph 7 below.

     **4.**   **Compensation**.

     (a)  In consideration for the Consultant's performance of the Services and compliance with the covenants contained herein, the Company shall pay the Consultant a consulting fee at a rate of $700.00 per hour worked. The Consultant shall submit an invoice, in reasonable detail, to the Company, the CRO, counsel to the Official Committee of Unsecured Creditors (the "Committee") and the Office of the United States Trustee (the "UST") reflecting (1) the total number of hours worked during each Monthly Period (as defined herein), (2) a brief description of the Services provided during each such Monthly Period, and (3) documentation for any Expenses (as defined herein) for which reimbursement is sought.

     (b)  For Consulting Services rendered during the first two months of this Consulting Agreement, i.e., January 16, 2010 through February 15, 2010 ("February Period") and February 16, 2010 through March 15, 2010 ("March Period"), the Consultant may provide Consulting Services on an unlimited basis; provided, however, that the Consultant's compensation shall be limited as set forth in Paragraph 4(d) below.

     (c)  For Consulting Services rendered during any period beginning on March 16, 2010, and on the 16th of each month thereafter, e.g., April 16, May 16, etc., and ending on the 15th of the following month (each of the foregoing time periods, as well as the February Period and the March Period, referred to as a "Monthly Period"), the Consultant shall not provide more than ten (10) hours of Consulting Services during each such Monthly Period absent consent of the CRO or "Consent of the Committee" (as defined herein);

     (d)  Notwithstanding anything to the contrary in this Agreement, the Consultant's total compensation for Services rendered during any Monthly Period may not exceed $62,500 per each individual Monthly Period.

     (e)  For purposes of this Consulting Agreement "Consent of the Committee" shall be mean an affirmative acknowledgment by counsel to the Official Committee of Unsecured Creditors, in writing or electronic mail, that the Consultant may perform Consulting Services in excess of 10 hours during a Month Period;

(f) Payments to the Consultant under this Consulting Agreement shall be made within seven (7) days of the CRO's, the Company's and the Committee's receipt of an invoice.

5.     **Expenses.** During the Consulting Term, the Company shall reimburse the Consultant for all reasonable and documented expenses. Consultant shall also be compensated for non-working travel time incurred by the Consultant in connection with the performance of the Consultant's Services under this Agreement at the rate of $350.00 per hour, subject to limitation on compensation set forth in Paragraph 4(d) above.

6.     **Independent Contractor Status.** Nothing contained in this Consulting Agreement shall be construed to constitute the Company and the Consultant as partners or as joint venturers, or either as agent of the other, or as employer and employee. The Consultant's relationship to the Company during the Consulting Period shall only be that of an independent contractor and the Consultant shall perform all services pursuant to this Consulting Agreement as an independent contractor.

(a)     *Exercise of Independent Judgment.* Subject only to such specific limitations as are contained in this Consulting Agreement, the manner, means, details or methods by which the Consultant performs the consulting services under this Consulting Agreement shall be solely within the Consultant's discretion. The Company shall not have the authority to, nor shall it, supervise, direct or control the manner, means, details or methods utilized by the Consultant to perform the Consultant's consulting services under this Consulting Agreement and nothing in this Consulting Agreement shall be construed to grant the Company any such authority.

(b)     *Inability to Bind the Company.* The Consultant shall not have any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of the Company, or to bind the Company in any manner, unless authorized in writing by a duly authorized officer of the Company, and shall not make any contrary representation to any third party.

(c)     *No Right to Fringe Benefits.* The Consultant shall not be entitled to, and shall make no claim to, fringe benefits, including, without limitation, disability or unemployment insurance, workers' compensation insurance, pension and retirement benefits, profit-sharing, or rights under any other benefit plan or program of the Company.

(d)     *Responsibility for Taxes.* The Company will issue the Consultant a tax form 1099 that reflects the consulting fee set forth in Paragraph 4 of this Consulting Agreement. Notwithstanding the foregoing, the Company makes no representation to the Consultant concerning the tax consequences of the consulting fee. The Consultant is responsible for paying all federal, state and local income or business taxes, including estimated taxes, self-employment and any other taxes, fees, additions to tax, interest or penalties which may be assessed, imposed, or incurred as a result of the amounts paid by the Company pursuant to Paragraph 4. The Consultant shall indemnify, defend and hold harmless the Company from and against any and all liability (including interest, penalties

and defense costs) for any taxes, fees or related liabilities for which the Consultant is responsible pursuant to this Paragraph 5(d).

### 7. Confidentiality.

(a) *Definition of Confidential Information.* "Confidential Information" means any information not generally known to the public or recognized as standard industry practice, including, without limiting the generality of the foregoing, any data, reports, interpretations, forecasts, know-how, technology, plans, strategies, studies, employee and consultant information, intellectual property, the Company's plans for acquisition or disposition of investments, trade secrets, research, inventions, ideas, concepts, designs, formulae, models, methods and financial and other records of the Company and its Affiliates (and such other information normally understood to be confidential or otherwise designated as such in writing by the Company or its Affiliates), as well as information discerned from, based on or relating to any of the foregoing, all of which the Consultant expressly acknowledges and agrees shall be confidential and proprietary information belonging to the Company.

(b) *Safeguarding Confidential Information.* The Company acknowledges that the Consultant has had access to and is in possession of Confidential Information as a result of Consultant's service on the Board and as prior executive of the Company. The Consultant acknowledges that, by virtue of the Consultant's engagement hereunder, the Consultant will have access to additional Confidential Information of the Company and its Affiliates, and that the communication of any Confidential Information to third parties could irreparably injure the Company and its Affiliates. Accordingly, the Consultant agrees to continue during the Consultant's engagement with the Company and thereafter following termination of the engagement, without limitations of time, the Consultant will treat and safeguard as confidential and secret all Confidential Information, and without the prior written consent of the Company will not disclose or reveal any of the Confidential Information to any third party whatsoever or use the same in any manner except in connection with the business of the Company and its Affiliates, except as may be required by order of a court of competent jurisdiction, or a regulatory or governmental body having jurisdiction over the Consultant; *provided, however*, that the Consultant shall have given prompt notice of any such order so as to give the Company adequate opportunity to object to the order.

### 8. Consultant Representations.
The Consultant represents that the Consultant has the full right and authority to enter into this Consulting Agreement, that the Consultant has no agreement, duty, commitment, responsibility, or obligation of any kind or nature whatsoever with any corporation, partnership, firm, company, joint venture, or other person or entity which would conflict in any manner whatsoever with any of the Consultant's duties, obligations, or responsibilities to the Company pursuant to this Consulting Agreement, or which could interfere with the Consultant's performance under this Consulting Agreement.

### 9. Termination.
Either the Consultant or the Company (acting through the Board of Directors) may terminate this Agreement with or without cause upon ten (10)

days advance written notice to the other party in accordance with section 10(k) of this Consulting Agreement; provided, that section 7 of this Agreement shall survive termination of this Agreement.

### 10.  Agreement to Hold Harmless.

(a)  *By the Consultant.*  The Consultant agrees to hold harmless the Company, including its officers and directors, any CRO, and any professional retained by such CRO from and against any and all claims, demands, loss, or liability arising from or relating to this Consulting Agreement, other than directly or indirectly arising from or relating to breaches of this Consulting Agreement, willful misconduct, or gross negligence.

(b)  *By the Company.*  The Company, including its officers and directors, agrees to hold harmless the Consultant from and against any and all claims, demands, loss, or liability arising from or relating to this Consulting Agreement, other than directly or indirectly arising from or relating to breaches of this Consulting Agreement, willful misconduct, or gross negligence.

### 11.  Miscellaneous.

(a)  *Governing Law.*  This Consulting Agreement shall be governed by, and construed in, accordance with the laws of the Commonwealth of Virginia without regard to the conflict of laws principles of such Commonwealth.

(b)  *Injunctive Relief.*  The Consultant expressly agrees that the Company shall or would suffer irreparable injury if the Consultant were to breach, or threaten to breach Paragraph 7 of this Consulting Agreement and that the Company would by reason of such breach, or threatened breach, be entitled to injunctive relief in a court of appropriate jurisdiction, without the need to post any bond, and the Consultant further consents and stipulate to the entry of such injunctive relief in such a court prohibiting the Consultant from breaching Paragraph 7 of this Consulting Agreement.

(c)  *Entire Agreement.*  This Consulting Agreement sets forth the entire agreement between the parties with respect to its subject matter, and merges and supersedes all prior discussions, representations, negotiations, statements, proposals, agreements, and understandings of every kind and nature between the parties, and neither party shall be bound by any term or condition other than as expressly set forth, or provided for, in this Consulting Agreement.

(d)  *Modifications.*  This Consulting Agreement may not be changed or modified except by an agreement in writing, signed by the parties hereto.

(e)  *Counterparts.*  This Consulting Agreement may be executed in one or more counterpart copies, each of which shall be deemed an original, but all of which shall constitute the same instrument.

(f)  *Successors and Assigns.*  This Agreement, which is personal in nature, may not be assigned by the Consultant, and any purported assignment without the prior written consent of the Company shall be null and void.  This Agreement is freely assignable by the Company.  This Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns.

(g)  *Captions.*  Captions used in this Consulting Agreement are for convenience of reference only and shall not be deemed a part of this Consulting Agreement nor used in the construction of its meaning.

(h)  *Waivers.*  No waiver of any right or option hereunder by any party shall operate as a waiver of any other right or option, or the same right or option as respects any subsequent occasion for its exercise, or of any legal remedy.  No waiver by any party of any breach of this Consulting Agreement or of any agreement or covenant contained herein shall be held to constitute a waiver of any other breach or a continuation of the same breach.  All remedies provided by this Consulting Agreement are in addition to all other remedies by it or the law provided.

(i)  *Severability; Judicial Modification.*  If any provision of this Consulting Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the greatest extent possible, in a manner which shall render it valid and enforceable and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof; no invalidity or unenforceability shall affect any other portion of this Consulting Agreement unless the provision deemed to be so invalid or unenforceable is a material element of this Consulting Agreement, taken as a whole.

(j)  *Jurisdiction; Venue.*  All actions in connection with this Consulting Agreement shall be brought only in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  The Bankruptcy Court shall have personal jurisdiction over the parties in connection with any such lawsuit and venue shall be appropriate in the Bankruptcy Court.  Consultant understands that the Consultant will have to bring or defend any lawsuit between the Consultant and the Company in the Bankruptcy Court.

(k)  *Notices.*  Any notice to be given under this Consulting Agreement shall be as follows:

If to the Company:

Circuit City Stores, Inc.
4951 Lake Brook Drive
Glenn Allen, VA 23060
Attention:     Katie Bradshaw
               Facsimile: (804) 290-4305
               Email: katie_bradshaw@ccswinddown.com

With a copy to

Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
Wilmington, DE 19899-0636
Attention: Gregg M. Galardi – gregg.galardi@skadden.com
            Ian S. Fredericks – ian.fredericks@skadden.com

With a copy to

Alfred Siegel
15233 Ventura Boulevard, Ninth Floor
Sherman Oaks, CA 91403-2250
Email:  Al.Siegel@crowehorwath.com

With a copy to

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, Suite 1100
Los Angeles, CA 90067
Attention:  Jeffrey N. Pomerantz – jpomerantz@pszjlaw.com
            Robert J. Feinstein – rfeinstein@pszjlaw.com

If to the Consultant:

James Marcum

IN WITNESS WHEREOF, the parties have executed this Consulting Agreement as of the day and year first above written.

CIRCUIT CITY STORES, INC.

By: *Michelle Mosier*

Name:  Michelle Mosier
Title: Chief Accounting Officer and Controller

JAMES MARCUM

SEEN AND ACCEPTED BY:

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

**By:  HEWLETT-PACKARD COMPANY, CO-CHAIR**

By: _____

Name: Ramona S. Neal
Title: Senior Counsel

Page 8 of 8

IN WITNESS WHEREOF, the parties have executed this Consulting Agreement as of the day and year first above written.

**CIRCUIT CITY STORES, INC.**

By: _____
    Name:  Michelle Mosier
    Title: Chief Accounting Officer and Controller

_____
JAMES MARCUM

SEEN AND ACCEPTED BY:

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:  **HEWLETT-PACKARD COMPANY, CO-CHAIR**

By: _____
    Name: Ramona S. Neal
    Title: Senior Counsel

Page 8 of 8

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: frenchs          Page 1 of 1          Date Rcvd: Mar 11, 2010
Case: 08-35653               Form ID: pdforder       Total Noticed: 1
```

The following entities were noticed by first class mail on Mar 13, 2010.
```
aty          +Gregg M. Galardi,   Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636
```

The following entities were noticed by electronic transmission.
NONE.                                                                          TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Mar 13, 2010**                    **Signature:**    _Joseph Speetjens_