Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

```
            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
             Debtors.         :    Jointly Administered
- - - - - - - - - - - - - - - x
```

**DEBTORS' OBJECTION TO BERKADIA COMMERCIAL MORTGAGE LLC'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF GROUND LEASE**

        The debtors and debtors in possession in the above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby submit their objection (the "Objection") to Berkadia Commercial Mortgage LLC's ("Berkadia") Motion to Compel Assumption or Rejection of Ground Lease (D.I 6690; the "Motion").  In support of the Objection, the Debtors respectfully represent:

### BACKGROUND

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

2.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the

---

[1]   The Debtors are the following entities: The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen, VA 23060.

2

"Agent"). On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores. The going out of business sales concluded on or about March 8, 2009.

3. On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan is currently scheduled for April 6, 2010.

4. Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

**B.    The Ground Lease.**

5. The Debtors own a certain parcel of real property located at 9950 Mayland Drive in Richmond, Virginia (the "Property"). The Debtors lease the

Property to Berkadia, successor in interest to Lexington Richmond LLC ("Lexington").

**C.   The Building Lease.**

6.   In addition to the Ground Lease, the Debtors, as tenant, were party to an agreement with Lexington, as landlord, under which the Debtors leased a building (the "Building") on the Property from Lexington (the "Building Lease").  The Debtors rejected the Building Lease on February 28, 2009 (D.I. 2400).

**D.   The Sale Process.**

7.   The Debtors have been working diligently with their real estate advisor, DJM Realty, LLC ("DJM"), to sell the Property and an expedited sale would obviously benefit Berkadia in its concurrent efforts to sell the Building.  It is the Debtors' understanding that Berkadia has a purchaser under contract to purchase the Building and that the same prospective purchaser is one of the interested parties with respect to the sale of the Property.

8.   While the Debtors are sympathetic to Berkadia's desire, essentially as a foreclosing lender, to quickly sell the Building, Berkadia is not entitled

4

to force the Debtors to decide to assume or reject the Ground Lease to facilitate its sale process.  In fact, the Debtors' efforts to sell the Property have actually been delayed by Berkadia's own actions in creating a dispute regarding the rent under the Ground Lease (the "Ground Rent").

9.   Under the Ground Lease, the Ground Rent was to be reset as of March 1, 2010 to equal ten percent (10%) of the fair market value of the Property.  In June 2009, the Debtors had the Property appraised and have been marketing the Property based on that appraisal and the consequent Ground Rent.  In theory, the higher the Ground Rent, the higher the potential sale price for the Property because the Ground Rent would be income for the purchaser of the Property.

10.  As the sale of the Property progressed and it became apparent that the Debtors were entertaining offers other than that of Berkadia's proposed purchaser, Berkadia submitted a "valuation" of the Property

5

suggesting that the Ground Rent was materially lower than the Ground Rent based on the Debtors' appraisal.[2]

11.  Since then, the Debtors have worked with Berkadia to resolve the Ground Rent dispute, but because the Ground Rent is directly linked the amount certain potential purchasers might offer the Debtors for the Property, the issue must be resolved definitively before the Debtors can solicit an agreement for sale of the Property.  The Debtors are optimistic that the Ground Rent issue will be resolved shortly, and the Debtors intend to recommence efforts to sell the Property thereafter.

**OBJECTION**

12.  Through the Motion, Berkadia seeks to force the Debtors to assume or reject the Ground Lease and thereafter sell the Building.  In doing so, Berkadia improperly seeks to extricate itself from the difficulties inherent in selling the Building situated

---

[2]  The Debtors believe that the "valuation" submitted by Berkadia did not conform with the requirements set forth in the Ground Lease.

6

on the Property owned by the Debtors and leased to Berkadia.

13. There is no basis in the Bankruptcy Code or applicable law, however, for Berkadia's request. Indeed, Berkadia acknowledges that section 365 of the Bankruptcy Code "does not expressly contain a deadline with respect to the issue before the Court, _i.e._, where the Debtor is the lessor of nonresidential real property. Additionally, there are no reported opinions dealing with this issue." (Motion at ¶ 12).

14. Even assuming, _arguendo_, that Berkadia's request is proper, the request is premature. Specifically, Berkadia's request arises not after years of bankruptcy and with no plan confirmation in sight, but instead less than a month before the Debtors' scheduled confirmation hearing and, in any event, while a Plan is pending that has received requisite support of the Debtors' creditors. Thus, Berkadia cannot demonstrated cause to compel assumption or rejection of the Ground Lease.

**I. AS A LESSOR OF NONRESIDENTIAL REAL PROPERTY, THE DEBTORS CANNOT BE COMPELLED TO ASSUME OR REJECT THE GROUND LEASE.**

15.  Bankruptcy Code section 365 deals with the assumption or rejection of unexpired leases. Specifically, section 365(a) states that "the trustee, subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor."  11 U.S.C. §365(a).

16.  Additionally, section 365(d)(2) provides that "the trustee may assume or reject an . . . unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan."  11 U.S.C. §365(d)(2).  As set forth above, confirmation is scheduled for April 6, 2010.

17.  Notably, though section 365 contains detailed provisions on the assumption or rejection of unexpired leases, there is no provision that requires a <u>debtor-lessor</u> to assume a <u>nonresidential</u> lease or have it deemed rejected within a certain time period, or that grants a bankruptcy court authority to compel assumption or rejection for "cause" shown.  See <u>In re Oklahoma Plaza Investors, Ltd.</u>, 124 B.R. 108, 112 (Bankr. N.D.

8

Okla. 1991) (holding debtor had no duty to assume unexpired nonresidential lease under which it was the lessor or otherwise have it deemed rejected). Citing Collier's on Bankruptcy, the only court that appears to have considered a debtor-lessor's decision to assume or reject a lease of nonresidential real property emphasizes that:

> [p]roblems concerning the rejection of unexpired leases of real property where the debtor is the lessor rather than the lessee are infrequently litigated, due no doubt to the fact that the bankruptcy or reorganization of a lessor will not ordinarily disturb existing leases, since the lessor's interests and the rents accruing thereon will be administered definite assets of the estate.

Id. (quoting 3 COLLIER ON BANKRUPTCY ¶ 365.10 (15th ed. rev.)).

18. Additionally, the Bankruptcy Code already contains provisions intended specifically to protect non-debtor lessees in this situation. See 11 U.S.C. §365(h). Since section 365(h) largely prevents abrogation of a lessee's rights upon rejection of a lease under certain circumstances, it is not surprising that section 365 is silent on any right of a debtor-lessors's lessee to compel assumption or rejection. In

9

other words, section 365(h) provides the only relief intended for non-debtor lessees under the Bankruptcy Code, and no further remedy need be provided.

19.  Accordingly, Berkadia cannot compel the Debtors to assume or reject the Ground Lease.

## II.  IT IS PREMATURE TO REQUIRE THE DEBTORS TO ASSUME OR REJECT THE GROUND LEASE.

20.  Assuming, arguendo, that a debtor-lessor could be compelled by a lessee to assume or reject an unexpired lease of nonresidential real property under certain circumstances, the lessee must demonstrate cause exists to depart from the rule that the Debtors have until confirmation of a plan to assume or reject such lease.[3]  See 11 U.S.C. § 365(d)(2); In re Wheeling-Pittsburgh Steel Corp., 54 B.R. 385, 388 (Bankr. W.D.Pa. 1985) ("As [section 365(d)(2)] clearly states, the debtor may wait until the plan confirmation date to make its decision to assume or reject an unexpired [executory

---

[3]  Admittedly, section 365(d)(2) does not, by its terms, speak of unexpired leases of nonresidential real property.  That said, if a court were to consider the ability of a lessee under such a lease to compel assumption or assignment prior to confirmation, it seems appropriate to apply the jurisprudence developed under that section.  See Oklahoma Plaza Investors, 124 B.R. at 112; 3 COLLIER ON BANKRUPTCY ¶ 365.10 (15th ed. rev.).

10

contract]."). Indeed, "it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract." In re Dana Corp., 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006). This is, in part, because "[i]t is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision." In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001) (quoting Wheeling-Pittsburgh Steel, 54 B.R. at 388); see also Dana, 350 B.R. at 147 ("Permitting a debtor to make its decision as late as plan confirmation enables the debtor to carefully evaluate the possible benefits and burdens of an executory contract.").

21. Assuming that the court may, in its discretion, fix a deadline by which a debtor-lessor must assume or reject a lease, when considering whether to exercise this permissive authority, courts are mindful that a debtor should be allowed a reasonable amount of time in which to make such decision. See Dana, 350 B.R. at 147. Critically, before even considering the factors

11

posited by Berkadia as relevant, it is noteworthy that Berkadia has alleged no defaults by the Debtors under the Ground Lease and, indeed, has made no allegations that its rights as tenant under the Ground Lease are in any way unprotected or imperiled.  Instead, Berkadia brings the motion as a foreclosing lender seeking to sell collateral and neither this Court nor the Debtors have any obligation to facilitate Berkadia in this process.

22.    Berkadia sets forth one set of factors courts have used to determine what may constitute a "reasonable time" for the purposes of section 365(d)(2): (i) the nature of the interests at stake, (ii) the balance of potential harm to the parties, (iii) the good to be achieved, (iv) the safeguards afforded to the parties, (v) the importance of the lease to the debtor's business and reorganization, and (vi) the debtor's failure or ability to satisfy post-petition obligations.  See id.

23.    Where a party seeks an order shortening the time in which the debtor may decide to assume or reject a lease, the burden is on that party to establish

that the foregoing factors have been satisfied.  Id. Berkadia does not even attempt to satisfy its burden, merely stating that "the balance of hardships in these cases should persuade the Court."  Motion at ¶ 18. Conclusory statements are insufficient to establish cause.  See In re Texaco Inc., 81 B.R. 820, 829 (Bankr. S.D.N.Y. 1988).  Moreover, application of each of these factors favors sustaining the Objection.

### A.   The Ground Lease Is A Valuable Asset Of The Debtors' Estates.

24.  As noted above, the Debtors are in the process of marketing the Property.  The Ground Lease may be of great value to a potential purchaser or, alternatively, a potential purchaser may prefer to buy the Property free of the Ground Lease.  Although it may be uncertain whether the Debtors can sell the Property free and clear of the Ground Lease, to maximize the value of the Property, the Debtors need the great degree of flexibility they are afforded under section 365 to make the assumption or rejection decision at any time up to confirmation.  Moreover, even as the Debtors market the Property, the Ground Lease provides a valuable

13

source of revenue for their estates that the Debtors should not be deprived of at this stage of their bankruptcy cases.

### B. Berkadia Has Not Shown Its Interests Are Superior To Those Of The Debtors.

25. In the Motion, Berkadia asserts that it has entered a contract with a potential buyer for sale of the Building but that "the potential buyer cannot obtain financing while the Ground Lease is still subject to rejection by the Debtor." Motion, ¶ 10. This is not, however, an interest protected by the Bankruptcy Code, much less an interest superior to that of the Debtors in making a prudent decision in their business judgment to maximize the value of the Property and associated Ground Lease for their estates. For that matter, the interest Berkadia asserts is not even an interest as a lessee under the Ground Lease about which they are seeking to compel a determination; rather, Berkadia is asking this Court to grant it leverage as a seller of the Building that it would not have under applicable non-bankruptcy law.

26. On the other hand, as discussed herein, the Debtors' right to assume or reject the Ground Lease at such time as they see fit is a core protection under section 365.

**C. Berkadia Is Only Entitled to Protections Afforded It By Sections 365(h) And 365(f).**

27. Typically, a party seeks to compel assumption or rejection when it is threatened by rejection of its executory contract or unexpired lease. It is not clear from the Motion that this fear is driving Berkadia's request. That said, if Berkadia believes it is threatened by rejection of the Ground Lease, Berkadia and, by extension, any potential purchaser of the Building, could seek to enforce the rights, if any, provided for in Bankruptcy Code section 365(h).

28. Specifically, as noted above, section 365(h) provides that a lessee under a lease rejected by a debtor-lessor may either treat the lease as terminated or "retain its rights under such lease (including any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) . . . for the balance of

15

the term . . . and for any renewal or extension of such rights to the extent such rights are enforceable under applicable non-bankruptcy law." 11 U.S.C. § 365(h)(1)(A). No other counterparty to an executory contract or unexpired lease subject to rejection has such affirmative rights. And, if the Ground Lease is assumed, the Debtors will have to cure any defaults and provide adequate assurance of future performance of all covenants under the Ground Lease. See 11 U.S.C. § 365(f).

### D. The Balance Of Harms Favors The Debtors.

29. The Debtors dispute that Berkadia suffers any cognizable harm even if, as Berkadia asserts, "the status of the Ground Lease and [its] rights thereunder have been in limbo for fifteen months" and the Debtors have made the assumption or rejection decision with respect to hundreds of other contracts and leases. Motion, ¶ 19. Creditor delay is inherent in the bankruptcy process and, in fact, intended. See Dana, 144 B.R. at 147 (emphasizing that bankruptcy is intended to provide the debtor with a breathing spell); cf. In re Comdisco, Inc., 271 B.R. 273, 279 (Bankr. N.D. Ill. 2002)

16

(explaining that delay is an unavoidable consequence of the automatic stay).  Moreover, though the Debtors have made the assumption or rejection decision with respect to many other contracts and leases, the Debtors are equally eager to determine the disposition of the Ground Lease.  As set forth above, however, the Debtors cannot make such a determination prematurely, without a view toward maximizing the value of the Property and it is difficult to make such a determination without having established the Ground Rent.  Accordingly, compelling the Debtors to do so at this time would not only be unwarranted, but detrimental to the Debtors' estates.

30.  Berkadia is right insofar as the assumption or rejection of the Ground Lease is not like the assumption and rejection decision the Debtors have faced with most of their other executory contracts and unexpired leases -- the Ground Lease is intricately connected to the Property and the value of the Property to the Debtors' estates.  Berkadia is asking this Court to force an unprecedented and premature decision upon the Debtors at the very moment this decision is central to the Debtors' sale of the Property.  The Debtors

17

believe that as soon as the Ground Rent is established, the sale of the Property and associated decision on assumption or rejection of the Ground Lease would proceed.

31.  Moreover, Plan confirmation, by which point the Debtors would assume the Ground Lease or have it deemed rejected under the Plan, is currently scheduled to take place in the next month, but may be adjourned.  It is difficult to imagine how, after fifteen months of bankruptcy, the extra month or so to confirmation would somehow prejudice Berkadia.  Even if confirmation of the Plan were not to occur for an extended period of time, Berkadia cannot claim to be prejudiced by such delay in its capacity as tenant under the Ground Lease, as Berkadia has alleged no ongoing breach or other threat to its ground tenancy by virtue of further delay.  The fact that Berkadia has difficulties in its role as owner of the Building is not a problem that need be addressed by the Debtors or this Court.  As such, the showing of "cause" necessary to overcome the presumption set forth in 365(d)(2) should be even more robust that usual.

18

32. Berkadia has failed to demonstrate cause exists to shorten the time in which the Debtors have to assume or reject the Ground Lease and, accordingly, the Motion should be denied.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the relief requested in the Motion.

Dated: March 15, 2010  
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
P.O. Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Chris L. Dickerson, Esq.  
155 North Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley\_\_\_  
Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB No. 34364)  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000

Counsel for Debtors and Debtors in Possession