Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

             - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
             Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**FIFTH INTERIM APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM NOVEMBER 1, 2009 THROUGH JANUARY 31, 2010**

McGuireWoods LLP ("MW"), in its capacity as co-counsel

to the debtors and debtors in possession in the above-

captioned jointly administered cases (collectively, the

"Debtors"),[1] submits the following as its Fifth Interim

Application for Compensation and Reimbursement of Expenses

for Services Rendered from November 1, 2009 through January

31, 2010 (the "Application") pursuant to 11 U.S.C. §§ 330,

331 and 503(b) and Federal Rule of Bankruptcy Procedure

2016.  MW certifies that the Debtors have received a copy of

this Application, but have not completed their review.  In

addition, MW certifies that a copy of this Application has

been served on the Office of the United States Trustee and

counsel for the Official Committee of Unsecured Creditors.

For its Application, MW seeks the entry of an order,

substantially in the form attached hereto as Exhibit A,

granting interim approval of compensation in the amount of

$715,884.50 and reimbursement of expenses in the amount of

$20,263.11 for services rendered by MW from November 1, 2009

through January 31, 2010 (the "Application Period").  In

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC
(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address was 9950
Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook
Drive, Glen Allen, Virginia 23060.

support of the Application, MW respectfully represents as
follows:

## JURISDICTION

1.   This Court has jurisdiction to consider this
Application under 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding under 28 U.S.C. § 157(b).  Venue of these cases
and this Motion in this District is proper under 28 U.S.C.
§§ 1408 and 1409.

2.   The bases for the relief requested herein are
sections 330, 331 and 503(b) of title 11 of the United
States Code (the "Bankruptcy Code") and Federal Rule of
Bankruptcy Procedure (the "Bankruptcy Rules") 2016.

## BACKGROUND

3.   On November 10, 2008 (the "Petition Date"), the
Debtors filed voluntary petitions in this Court for relief
under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate their
businesses as debtors in possession pursuant to Bankruptcy
Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United
States Trustee for the Eastern District of Virginia
appointed a statutory committee of unsecured creditors (the

"Committee").   To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent.  On January 17, 2009, the agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

7.    The Disclosure Statement with Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (as amended and modified, the "Disclosure Statement") was filed on August 24, 2009 (Docket No. 4614), and was approved by the Court by an order entered on September 24, 2009 (Docket No. 5090).  The hearing on confirmation of the Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured

4

Claims (as amended and modified, the "Plan") has been
adjourned.

### MCGUIREWOODS LLP'S EMPLOYMENT

8.   On November 18, 2008, MW filed an Application to
Employ and Retain McGuireWoods LLP as Counsel for the
Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 (Docket No.
191) (the "Employment Application").

9.   On December 8, 2008, the Court entered an order
authorizing the employment of MW as counsel to the Debtors
(Docket No. 791) (the "Employment Order").

10.   By this Application, MW is seeking, <u>inter alia</u>,
interim approval of its compensation and reimbursement of
expenses pursuant to the Employment Order and pursuant to
sections 330, 331 and 503(b) of the Bankruptcy Code for the
period of November 1, 2009 through January 31, 2010.

11.   MW charges legal fees on an hourly basis at its
attorneys' and paraprofessionals' hourly rates, which rates
are set in accordance with the attorney's or
paraprofessional's seniority and experience and are adjusted
from time to time.  MW also charges the Debtors for its
actual out-of-pocket expenses incurred including, but not
limited to, photocopying, long distance telephone calls,
messenger services, computer research, travel expenses,

overnight mail and court fees.  MW's fee structure and
expense reimbursement policies were disclosed in MW's
Employment Application, to which no party objected and this
Court approved.  See Docket Nos. 191, 791.

   12.  The names of all MW attorneys and
paraprofessionals who have worked on this matter and their
respective hourly rates are set forth on Exhibit B hereto.

   13.  MW currently holds a retainer from the Debtors in
the amount of $348,568.07.

   14.  To the best of MW's knowledge, and upon
information and belief, the Debtors have paid or will pay
undisputed postpetition operating expenses in the ordinary
course.

   15.  To the best of MW's knowledge, and upon
information and belief, the Debtors have sufficient funds on
hand to pay the compensation and reimbursement of expenses
requested herein.

   16.  To the best of MW's knowledge, and upon
information and belief, the Debtors have filed with the
United States Trustee all monthly operating reports
presently due, and have paid all quarterly fees to the
United States Trustee that are presently due.

## **FEE PROCEDURES AND MONTHLY FEE STATEMENTS**

17.   On December 9, 2008, this Court entered an Order under Bankruptcy Code Sections 105(a) and 331 Establishing Procedures for Interim Compensation (Docket No. 830)(the "Interim Compensation Order"), which approved the interim compensation procedures attached thereto (the "Interim Compensation Procedures").  Pursuant to paragraph (d) of the Interim Compensation Procedures, interim applications for compensation and reimbursement of expenses must be filed on or before March 17, 2010.  Moreover, in accordance with paragraphs (a) and (d) of the Interim Compensation Procedures, MW will serve a copy of this Application upon the Notice Parties (as defined therein).  Moreover, notice of the Application will be served on the parties as required by the Case Management Order (Docket No. 130).

18.   Pursuant to the Interim Compensation Procedures, approximately on or after the tenth (10th) day of each month following the month for which compensation was sought, MW submitted a monthly statement to the Notice Parties (as defined in the Interim Compensation Procedures).  The parties had twenty (20) days to review any such statement.  If there were no objections, at the expiration of the twenty (20) day period, the Debtors were ordered to promptly pay

eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses identified in each monthly statement.  MW submitted monthly statements for each month during the Application Period and no objections were received.  Accordingly, MW has been paid approximately 85% of its total requested fees and approximately 100% of its expenses during the Application Period.  A chart summarizing these payments and the monthly statements is attached hereto as <u>Exhibit C</u>.

<b><u>REQUESTED FEES AND REIMBURSEMENT OF EXPENSES</u></b>

19.  MW has played an important role in advising the Debtors and handling the day to day administration of the Debtors' chapter 11 cases.  As a result of its efforts during the Application Period, MW now seeks interim allowance of $715,884.50 in fees calculated at the applicable guideline hourly billing rates of the firm's personnel who have worked on the cases, and $20,263.11 in expenses actually and necessarily incurred by MW while providing services to the Debtors during the Application Period.

20.  In staffing this case, in budgeting and incurring charges and disbursements, and in preparing and submitting this Application, MW has been mindful of the need to be

efficient while providing full and vigorous representation
to the Debtors.  MW also has been especially cognizant of
the standards established by this Court for compensation of
professionals and reimbursement of charges and
disbursements.  As described in detail herein, MW believes
that the requests made in this Application comply with this
Court's standards in the context of the unique circumstances
surrounding these large and complex chapter 11 cases.

**SUMMARY OF SERVICES PROVIDED DURING THE APPLICATION PERIOD**

**A.   General Case Administration.**

21.  Description.  MW assisted with, inter alia, the
review, analysis and preparation of correspondence,
documents, pleadings and notices; handled the day to day
administration of the Debtors' chapter 11 cases; prepared
and maintained a case calendar, hearing planners and omnibus
hearing agendas used by the Debtors and their professionals
in these chapter 11 cases; prepared for and participated in
all court hearings in these chapter 11 cases; regularly
participated in meetings and telephone conferences with
officers and employees of the Debtors and the Debtors'
financial and other advisors regarding the foregoing as well
as other operational, organizational and strategic issues
arising in the cases; regularly participated in meetings and

telephone conferences with professionals for the Committee,
creditors and other parties in interest regarding the
foregoing and various other issues arising in these cases;
assisted the Debtors with the service of relevant documents
on appropriate parties, and the organization of information
and document requests from various parties; handled issues
relating to electronic case filing; regularly communicated
with the Clerk's office, Chambers and the U.S. Trustee's
office regarding various case administration issues; handled
the internal coordination of motions, responses, objections
and other related matters; coordinated the establishment and
maintenance of a MW's telephone hotline to assist in
responding to the numerous inquiries from creditors and
other parties in interest that these cases have generated;
and researched responses to each message and otherwise
responded to all inquiries tendered through the hotline.

22.    <u>Necessity and Benefit to the Estates</u>.    These
services were necessary to assist the Debtors in the
administration and prosecution of these complex chapter 11
cases.

23.    <u>Status</u>.    These and other general case
administration matters will continue until the chapter 11
cases are closed.

24.    Hours Spent and Compensation Requested.    In

connection with the foregoing matters, MW's professionals

expended 243.2 hours during the Application Period for a

total of $69,729.00.    The complete narrative, time detail of

the hours incurred and the value of the matter by

professional is attached hereto as Exhibit E.

**B.    Restructuring and General Strategy.**

25.    Description.    MW assisted with, inter alia, the

analysis of wind down materials in connection with board

meetings and participated in board meetings; and

participated in telephone conferences and meetings with the

Debtors and the Creditors' Committee regarding confirmation

and postconfirmation matters, including the retention of a

chief restructuring officer.

26.    Necessity and Benefit to the Estates.    These

services were necessary to assist the Debtors in the

administration and prosecution of these complex chapter 11

cases.

27.    Status.    These matters will continue as the need

arises.

28.    Hours Spent and Compensation Requested.    In

connection with the foregoing matters, MW's professionals

expended 8.2 hours during the Application Period for a total

of $4,605.00.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**C.    Monthly Operating Reports.**

    29.  Description.  MW assisted the Debtors and their

professionals with, inter alia, the preparation of and

filing of the Debtors' Monthly Operating Reports.

    30.  Necessity and Benefit to the Estates.  These

services were necessary to assist the Debtors with

compliance with the Bankruptcy Code, local bankruptcy rules

and the United States Trustee's guidelines.

    31.  Status.  These matters will continue as the need

arises.

    32.  Hours Spent and Compensation Requested.  In

connection with the foregoing matters, MW's professionals

expended 1.5 hours during the Application Period for a total

of $582.50.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**D.    Professional Retention/Fee Applications.**

    33.  Description.  Pursuant to the requirements of the

Interim Compensation Order, MW has prepared detailed monthly

fee statements for distribution to the Notice Parties and

handled inquires from all of the professionals regarding
monthly fee statements.  Moreover, MW assisted with, inter
alia, various issues pertaining to the retention and payment
of various professionals employed by the Debtors and the
Committee in connection with the Debtors' bankruptcy cases,
including bankruptcy counsel, special counsel, accountants,
financial advisors and ordinary course professionals;
reviewed, analyzed, drafted and filed interim fee
applications and notices on behalf of all of the Debtors'
professionals; coordinated the employment of ordinary course
professionals and filed affidavits on behalf of ordinary
course professionals according to the procedures established
by this Court; and communicated with the Office of the
United States Trustee regarding the foregoing.

    34.  Necessity and Benefit to the Estates.  These
services were necessary to comply with the Bankruptcy Code,
the Interim Compensation Order and the United States
Trustee's guidelines.  Additionally, access to qualified
professionals is critical to the Debtors' chapter 11 cases.

    35.  Status.  These matters will continue as the need
arises.

    36.  Hours Spent and Compensation Requested.  In
connection with the foregoing matters, MW's professionals

13

expended 28.8 hours during the Application Period for a
total of $12,773.00.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**E.   Automatic Stay.**

37.  <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the
review, analysis and preparation of correspondence,
documents, pleadings and notices relating to motions for
relief from the automatic stay; negotiated settlements with
various parties seeking to lift the automatic stay;
reviewed, analyzed and drafted pleadings for various
ordinary course professionals regarding the filing of
suggestions in bankruptcy in litigation in which the Debtors
and/or their current and/or former employees are parties;
drafted correspondence and participated in meetings and
telephone conferences regarding violations of the automatic
stay; and conducted research regarding various issues
related to automatic stay matters.

38.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in enforcing
the automatic stay, reducing the administrative burden on
the Debtors' management and reducing expenses incurred by

the Debtors' bankruptcy estates by resolving potential automatic stay related matters.

39.  Status.  These and other automatic stay related matters will continue until a chapter 11 plan is confirmed.

40.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 30.4 hours during the Application Period for a total of $11,798.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**F.    Employment and Compensation.**

41.  Description.  MW assisted with, inter alia, researching, drafting and filing pleadings in connection with the retention program.

42.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors with issues pertaining to various employee related matters.

43.  Status.  These and other employee related matters will continue as the need arises.

44.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 7.8 hours during the Application Period for a total of $3,037.00.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**G.    Executory Contracts.**

45.   Description.  MW assisted with, inter alia, the

review and analysis of various executory contracts;

researched, drafted, reviewed and analyzed pleadings

regarding the rejection of certain executory contracts and

motion to compel assumption of an executory contract;

negotiated matters related to the rejection or modification

of certain executory contracts; and regularly participated

in meetings and telephone conferences with the Debtors,

their professionals and opposing counsel regarding the

foregoing.

46.   Necessity and Benefit to the Estates.  These

services were necessary to assist the Debtors in developing

and implementing a strategy regarding various executory

contracts.

47.   Status.  These matters will continue as the need

arises.

48.   Hours Spent and Compensation Requested.  In

connection with the foregoing matters, MW's professionals

expended 15.7 hours during the Application Period for a

total of $8,146.00.  The complete narrative, time detail of

the hours incurred and the value of the matter by

professional is attached hereto as Exhibit E.

**H.   Litigation.**

49.  Description.  MW historically represented the

Debtors in various litigation matters.  MW also assisted

with, inter alia, the strategy and negotiations regarding

responding to third party subpoenas; researched, drafted and

filed complaints; drafted and responded to discovery in

connection with the foregoing; researched, drafted

pleadings, responded to and conducted discovery, and

successfully defeated a motion to allow a late 503(b)(9)

claim; and analyzed strategies and participated in meetings

regarding adversary proceedings and flat panel class action

litigation.

50.  Necessity and Benefit to the Estates.  These

services were necessary to assist the Debtors with various

litigation matters.

51.  Status.  These matters will continue as the need

arises.

52.  Hours Spent and Compensation Requested.  In

connection with the foregoing matters, MW's professionals

expended 164.1 hours during the Application Period for a

total of $66,776.00.  The complete narrative, time detail of

the hours incurred and the value of the matter by

professional is attached hereto as <u>Exhibit E</u>.

**I.    Avoidance Actions.**

53.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, the

review and analysis of possible avoidance and preference

actions and the development of various strategies regarding

the foregoing.

54.    <u>Necessity and Benefit to the Estates</u>. These

services were necessary to assist the Debtors in developing

and implementing strategies for avoidance and preference

actions.

55.    <u>Status</u>.  These matters will continue as the need

arises.

56.    <u>Hours Spent and Compensation Requested</u>.  In

connection with the foregoing matters, MW's professionals

expended 4.2 hours during the Application Period for a total

of $1,855.00.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as <u>Exhibit E</u>.

**J.    Vendor Matters.**

57.    <u>Description</u>.  MW assisted with, <u>inter alia</u>,

reviewed, analyzed and responded to correspondence received

from various vendors and their counsel; researched,

reviewed, analyzed and drafted pleadings regarding vendors;
and participated in meetings and telephone conferences with
the Debtors, the Debtors' professionals and counsel for
various vendors regarding the foregoing.

58.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in developing
and implementing a strategy for recovering money from
vendors and resolving various vendor related issues.

59.  <u>Status</u>.  These matters will continue as the need
arises.

60.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 3.6 hours during the Application Period for a total
of $1,804.50.  The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**K.    Real Estate.**

61.  <u>Description</u>.  MW historically represented the
Debtors on various real estate matters and continues to
handle matters related thereto.  MW also assisted with,
<u>inter alia</u>, the review, analysis and drafting of
correspondence, documents and pleadings regarding
disposition of real property leases and the sale of

property; drafted and filed multiple pleadings and notices
regarding the sale of real property; and participated in
meetings and telephone conferences with the Debtors and
their professionals, landlords and their counsel, and other
parties in interest regarding the foregoing.

62.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in various
real estate and related matters.

63.   <u>Status</u>.   These matters will continue as the need
arises.

64.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 64.0 hours during the Application Period for a
total of $20,069.00.   The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**L.    Insurance Matters.**

65.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the
review and analysis of insurance-related contracts; and the
retention of an ordinary course professional to handle
insurance matters.

66.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to ensure that the Debtors were in
compliance with their insurance obligations.

67.   <u>Status</u>.   These matters will continue as the need
arises.

68.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 0.5 hours during the Application Period for a total
of $245.00.   The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**M.    Tax Matters.**

69.   <u>Description</u>.   MW historically represented the
Debtors in connection with various tax matters, including an
IRS audit, tax audit appeals and related tax matters, which
are ongoing.   MW also assisted with, <u>inter alia</u>, the review,
analysis and preparation of correspondence, documents and
pleadings regarding various tax matters; participated in the
analysis and researched issues regarding the Debtors'
strategies regarding overall tax procedures and protocols
for tax issues that impact the Debtors' estates; analyzed
tax claims and objections thereto; and participated in

meetings and telephone conferences with the Debtors and various taxing authorities regarding the foregoing.

70. <u>Necessity and Benefit to the Estates</u>. These services were necessary to assist the Debtors in connection with resolving tax related issues.

71. <u>Status</u>. These matters will continue as the need arises.

72. <u>Hours Spent and Compensation Requested</u>. In connection with the foregoing matters, MW's professionals expended 163.1 hours during the Application Period for a total of $72,583.50. The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**N.   Claims Administration.**

73. <u>Description</u>. MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of and responses to numerous claimants' communications; researched, analyzed, drafted and filed multiple omnibus objections to claims and reviewed and analyzed claims regarding the foregoing; analyzed responses to omnibus claim objections, negotiated resolutions to omnibus claim objections, responded to and drafted discovery, and drafted and filed and pleadings in connection therewith; drafted and maintained a summary of the status of

all adjourned claims; participated in hearings regarding
claim-related matters; and participated in multiple
telephone conferences and meetings with Debtors and their
professionals regarding the foregoing.

74.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in developing
and implementing a claims resolution strategy and responding
to claimants regarding claims related issues.

75.  <u>Status</u>.  These matters will continue as the need
arises.

76.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 1,153.0 hours during the Application Period for a
total of $427,861.50.  The complete narrative, time detail
of the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**O.   Disclosure Statement and Plan.**

77.  <u>Description</u>.  MW assisted with the, <u>inter</u> <u>alia</u>,
the drafting and filing of plan exhibits and notices of
continued hearing on confirmation of the plan; analyzed
pleadings and communicated with counsel regarding deposit
requirements; and participated in communications with the

Debtors, counsel for the Creditors' Committee and other professionals and creditors regarding the foregoing.

78.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in developing a plan of liquidation and disclosure statement.

79.  Status.  These matters will continue as the need arises.

80.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 24.0 hours during the Application Period for a total of $10,958.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**P.    Employee Benefits/Pensions.**

81.  Description.  MW historically represented the Debtors in connection with various employee benefit and pension matters.  MW also assisted with, inter alia, the review and analysis of various qualified domestic relations orders.

82.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors with various employee benefit and pension matters.

83.  <u>Status</u>.  These matters will continue as the need
arises.

84.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 3.5 hours during the Application Period for a total
of $1,005.00.  The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**Q.   Intellectual Property Matters.**

85.  <u>Description</u>.  MW has historically represented the
Debtors in connection with various trademark and
intellectual property matters.  In addition, MW assisted the
Debtors and their professionals with the review and transfer
of various intellectual property matters to Systemax; and
analyzed issues and corresponded with the Debtors regarding
the renewal or abandonment of various trademarks.

86.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors with various
intellectual property matters.

87.  <u>Status</u>.  These matters will continue as the need
arises.

88.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals

expended 6.3 hours during the Application Period for a total of $1,568.00. The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**R.   Asset Sales.**

89.  Description.  MW assisted with, inter alia, analyzing, drafting and filing pleadings regarding the sale of assets.

90.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in the sale and disposition of their assets.

91.  Status.  These matters are substantially concluded, however, they will continue as the need arises.

92.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 1.3 hours during the Application Period for a total of $487.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**APPLICABLE LEGAL STANDARD**

93.  The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals employed by the debtor.  The format for fee applications is set forth in the

U.S. Trustee's Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed under

section 330 of the Bankruptcy Code (the "Guidelines").

94.    Under section 330 of the Bankruptcy Code, the

Court may award counsel to the Debtors reasonable

compensation for actual, necessary services rendered by such

attorneys and paraprofessionals employed by such attorneys

based on the nature, extent and value of the services

rendered, time spent on such services and the cost of

comparable services other than in a bankruptcy case.

Furthermore, the Court may award reimbursement for actual,

necessary expenses.

95.    The expenses incurred by MW, as set forth herein,

are reasonable and necessary charges for items including,

but not limited to, photocopying, long distance telephone

calls, messenger services, computer research, travel

expenses, overnight mail and court fees.  Photocopy charges

are assessed at ten cents ($.10) per page, which MW believes

to be competitive for professional firms in this geographic

area.  Some larger copy and mailing projects may have been

performed at an outside copy center at a lower per page

rate.  In all cases, MW has passed through the costs of the

outsourced copy or mailing projects to the estate without

markup.   MW incurred messenger service charges when such

delivery was more economical or when prompt delivery was

necessary in a given circumstance.

96.   Under the "lodestar" approach, the Court should

consider the number of hours of service reasonably devoted

to the case multiplied by the attorney's reasonable rates.

Courts frequently consider the specific "lodestar" factors

enumerated in Johnson v. Georgia Highway Express, Inc., 488

F.2d 714 (5th Cir. 1974).   These lodestar factors were

adopted by the Fourth Circuit in Barber v. Kimbrells, Inc.,

577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934

(1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th

Cir. 1981), where the Fourth Circuit held that the district

court should employ the lodestar approach, and then adjust

the fee on the basis of the remaining Johnson factors in the

case.   The following are the Johnson factors:

> (a)  the time and labor required;
>
> (b)  the novelty and difficulty of the questions;
>
> (c)  the skill requisite to perform the legal service properly;
>
> (d)  the preclusion of other employment by the attorney due to acceptance of the case;
>
> (e)  the customary fee;
>
> (f)  whether the fee is fixed or contingent;

(g)  time limitations imposed by the client or the circumstances;

(h)  the amount involved and the results obtained;

(i)  the experience, reputation and ability of the attorneys;

(j)  the "undesirability" of the case;

(k)  the nature and length of the professional relationship with the client; and

(l)  awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

97.  MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

98.  Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

99.  MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to effectively and efficiently address issues

arising in a national bankruptcy case.  Further, the rates

charged by MW are significantly less than rates charged by

other law firms in comparable national chapter 11 cases and

MW's rates are consistent with rates charged to other

clients in non bankruptcy matters.[2]  MW has efficiently

assisted the Debtors by employing a streamlined case

management structure that generally consists of a core team

with various other attorneys and paraprofessionals assigned

to other discrete tasks to avoid the performance of

duplicative or unnecessary work.  MW believes the fees

requested herein satisfy the <u>Johnson</u> factors as set forth

above.

**SUMMARY OF EXHIBITS**

100. A proposed order approving the Application is

attached hereto as <u>Exhibit A</u>.

101. Attached hereto as <u>Exhibit B</u> is a list of all

attorneys and paraprofessionals who have worked on these

cases, by name, year of admission (where applicable), hourly

rate, hours expended on these cases, and total fees

incurred.

---

[2] Douglas M. Foley is board certified by the American Board of
Certification as specialists in the field of Business Bankruptcy Law.
<u>See</u> 11 U.S.C. § 330(a)(3)(E).

102. Pursuant to the Interim Compensation Order, MW has received eighty-five percent (85%) of its monthly fees and one hundred percent (100%) of its monthly disbursements for services rendered in November 2009, December 2009 and January 2010.  In total, MW has received $608,501.83 in fees and $20,263.11 in disbursements during the Application Period.  See Exhibit C attached hereto for a statement of those payments.

103. A summary of all actual and necessary expense disbursements is attached hereto as Exhibit D.

104. A chronological itemization of time categorized by task performed is attached hereto as Exhibit E.  MW has made every effort to place all time entries in the proper service category; however, it should be noted that in some circumstances an entry could have been properly placed in more than one of the service categories.  In such circumstances, MW has used its best efforts to place the time entry in the service category that represents the primary purpose of the services rendered.  Time entries do not appear in more than one service category.

## NOTICE

105. Pursuant to the Interim Compensation Order, MW has served copies of the Application on the Notice Parties (as defined therein).  In addition, MW has served notice of the hearing on the Application on the parties required by the Case Management Order.  MW submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

106. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Application, the Debtors request that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## NO PRIOR REQUEST

107. No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's fifth interim application for compensation and reimbursement of expenses.

        WHEREFORE, MW respectfully requests that this Court

enter an order, substantially in the form attached hereto as

Exhibit A, (i) approving the compensation and reimbursement

of expenses requested herein on an interim basis, (ii)

authorizing and directing the Debtors to pay such amounts,

and (iii) granting MW such other and further relief as is

just and proper.

Dated: March 17, 2010          SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia      FLOM, LLP
                               Gregg M. Galardi, Esq.
                               Ian S. Fredericks, Esq.
                               P.O. Box 636
                               Wilmington, Delaware 19899-0636
                               (302) 651-3000

                                    - and -

                               SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                               Chris L. Dickerson, Esq.
                               155 North Wacker Drive
                               Chicago, Illinois 60606
                               (312) 407-0700

                                    - and -

                               MCGUIREWOODS LLP

                               /s/ Douglas M. Foley          .
                               Dion W. Hayes (VSB No. 34304)
                               Douglas M. Foley (VSB No. 34364)
                               One James Center
                               901 E. Cary Street
                               Richmond, Virginia 23219
                               (804) 775-1000

                               Counsel for Debtors and Debtors
                               in Possession

## EXHIBIT A

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - X
```

**ORDER GRANTING FIFTH INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM NOVEMBER 1, 2009 THROUGH JANUARY 31, 2010**

Upon consideration of the Fifth Interim Application for

Compensation and Reimbursement of Expenses of McGuireWoods

LLP, Co-counsel to the Debtors, for Services Rendered from

November 1, 2009 through January 31, 2010 (the

"Application"); and the Court having reviewed the

Application and the Court having determined that the relief

requested in the Application is necessary and appropriate;

and it appearing that proper and adequate notice of the

Application has been given and that no other or further

notice is necessary; and upon the record herein; and after

due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

    **ORDERED, ADJUDGED, AND DECREED that:**

    1.    The Application meets the requirements of the

Bankruptcy Code and the compensation and reimbursement of

expenses sought in the Application is both fair and

reasonable.

    2.    The Application is hereby approved in its

entirety, and compensation for the Application Period in the

total amount of $715,884.50 is hereby approved, and the

Debtors are hereby authorized and directed to pay

McGuireWoods LLP the unpaid portion of such compensation.

    3.    The reimbursement of expenses for the Application

Period in the total amount of $20,263.11 is hereby approved,

and the Debtors are hereby authorized and directed to pay

McGuireWoods LLP any unpaid portion of such reimbursements.

4.    This Court will retain jurisdiction with respect
to any dispute concerning the relief granted hereunder.

Dated:  Richmond, Virginia
_____, 2010


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

\10901265

EXHIBIT B

## Summary of Timekeepers

In re Circuit City Stores, Inc., et al.
Case No. 08-35653 (Jointly Adminstered)


Name of Applicant:  McGuireWoods LLP
Role: Co-counsel to the Debtors

**First Interim Application:**
  Fees Approved: $896,193.25
  Expenses Approved: $37,355.52

**Third Interim Application:**
  Fees Approved: $757,717.00
  Expenses Approved: $25,549.27

**Fifth Interim Application:**
  Fees Requested: $715,884.50
  Expenses Requested: $20,263.11

**Second Interim Application:**
  Fees Approved: $706,661.50
  Expenses Approved: $9,794.66

**Fourth Interim Application:**
  Fees Approved: $857,682.00
  Expenses Approved: $24,808.40


Summary of Timekeepers

| Attorneys | Admitted | 2009 Rate | 2010 Rate | 2009 Hours | 2010 Hours | Amount |
|---|---|---|---|---|---|---|
| Ashcroft, Erin Q. | 2007 | $300.00 | $330.00 | 21.0 | 0.0 | $6,300.00 |
| Bell, Craig D. | 1983 | $530.00 | $570.00 | 45.8 | 13.0 | $31,684.00 |
| Blanks, Daniel F. | 2002 | $375.00 | $415.00 | 275.8 | 127.7 | $156,420.50 |
| Boehm, Sarah B. | 2000 | $450.00 | $495.00 | 238.1 | 106.0 | $159,615.00 |
| Cushmac, Anne Marie | 1995 | $490.00 | $525.00 | 0.3 | 0.0 | $147.00 |
| Diller, Elizabeth A. | 2008 | $275.00 | $300.00 | 1.8 | 1.7 | $1,005.00 |
| Foley, Douglas M. | 1992 | $550.00 | $600.00 | 209.8 | 80.0 | $163,390.00 |
| Fratkin, Bryan A. | 1995 | $490.00 | $540.00 | 5.8 | 4.7 | $5,380.00 |
| Grotins, Jodie | 2008 | $300.00 | $325.00 | 0.6 | 0.0 | $180.00 |
| Gunlock, Matthew T. | 2006 | $290.00 | $320.00 | 25.1 | 26.0 | $15,599.00 |
| Scott, Lori Michelle | 2003 | $295.00 | $335.00 | 0.0 | 12.9 | $4,321.50 |
| Smith, Douglas B. | 2006 | $295.00 | $320.00 | 2.4 | 1.4 | $1,156.00 |
| Stark, Bryan A. | 2007 | $295.00 | $335.00 | 104.0 | 120.5 | $71,047.50 |
| **ATTORNEY TOTALS:** | | | | **930.5** | **493.9** | **$616,245.50** |

**EXHIBIT B**

**Summary of Timekeepers**

| Attorneys | Admitted | 2009 Rate | 2010 Rate | 2009 Hours | 2010 Hours | Amount |
|---|---|---|---|---|---|---|
| **Paraprofessionals and Contract Attorneys** | | | | | | |
| Cain, Karen B. | | $195.00 | $215.00 | 201.7 | 66.5 | $53,629.00 |
| Enderle, Heather M. | | $150.00 | $150.00 | 0.7 | 0.0 | $105.00 |
| Gokey, Kymberleigh B. | | $160.00 | $175.00 | 1.7 | 0.8 | $412.00 |
| Hall, Dana James | | $225.00 | n/a | 55.2 | 0.0 | $12,420.00 |
| Morrison, Diane E. | | $195.00 | $215.00 | 0.0 | 2.6 | $559.00 |
| Neilson, Linda J. | | $185.00 | $200.00 | 114.0 | 45.0 | $30,090.00 |
| Reback, Thayer A. | | $220.00 | $240.00 | 5.4 | 0.0 | $1,188.00 |
| von Bargen, Nancy S. | | $220.00 | $240.00 | 0.6 | 4.6 | $1,236.00 |
| | | | | | | |
| **PARAPROFESSIONAL TOTALS:** | | | | **379.30** | **119.5** | **$99,639.00** |
| | | | | | | |
| **TOTALS:** | | | | **1309.80** | **613.4** | **$715,884.50** |
| | | | | | | |
| **BLENDED HOURLY RATE:** | | **$261.83** | | | | |

**Exhibit C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|---|---|
| November 1, 2009 Novmeber 30, 2009 | $251,282.50 | $213,590.13 | $213,590.13 | $37,692.37 | $5,528.90 | $5,528.90 | $5,528.90 | $0.00 |
| December 1, 2009 December 31, 2009 | $222,121.00 | $188,802.85 | $188,802.85 | $33,318.15 | $10,320.37 | $10,320.37 | $10,320.37 | $0.00 |
| January 1, 2010 January 31, 2010 | $242,481.00 | $206,108.85 | $206,108.85 | $36,372.15 | $4,413.84 | $4,413.84 | $4,413.84 | $0.00 |
| **TOTALS:** | **$715,884.50** | **$608,501.83** | **$608,501.83** | **$107,382.67** | **$20,263.11** | **$20,263.11** | **$20,263.11** | **$0.00** |

<u>**Exhibit D**</u>

**Summary of Expenses**

| <u>**Disbursement**</u> | <u>**Amount**</u> |
|---|---|
| Copy Charges | $2,285.20 |
| Overnight Delivery | $319.69 |
| Telephone and Teleconference Charges | $1,104.08 |
| Computer Research | $299.12 |
| Working Meals | $2,290.49 |
| Travel | $7,851.47 |
| Court Costs | $3,608.06 |
| Professional Services | $2,505.00 |
| **TOTAL:** | **$20,263.11** |