MATTHEW RIGHETTI    (SBN #121012)
matt@righettilaw.com
JOHN GLUGOSKI    (SBN #191551)
jglugoski@righettilaw.com
MICHAEL RIGHETTI    (SBN #258541)
mike@righettilaw.com
**RIGHETTI LAW FIRM, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
**Telephone:    (415) 983-0900**
**Facsimile:    (415) 397-9005**

Attorneys for Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Circuit City Stores, Inc., *et al.*, | Case No. 08-35653 (KRH) |
| Debtors. | **DECLARATION OF JOSEPH SKAF** |
| | Date: March 25, 2010<br>Time: 2:30 p.m. ET<br>Room: 5000<br>Hon. Kevin Huennekens |

I, Joseph Skaf, declare as follows:

1. I am one of the named Plaintiffs in the case entitled *Skaf v. Circuit City*, Case No. BC 404195, originally filed in Los Angeles Superior Court. I have personal knowledge of the matters herein and would and could testify thereto if called as a witness.

2. I was employed by Circuit City and held the position of Entertainment Sales Manager, and Technology Sales Manager between approximately 2002 and 2007. My career with Circuit City began at the Glendale store in California as a Sales Counselor in 1998. After about three years, I was promoted to Entertainment Sales Manager. I worked as an Entertainment Sales Manager for approximately one to two years, and then I became a Technology Sales Manager.

In 2005, I was transferred to the Norwalk store in Norwalk, California where I also worked as a Technology Sales Manager. In each of these positions, I routinely worked over 8 hours per day and 40 hours per week, and my managers at Circuit City *expected* me to work these hours. In fact, I was required to schedule myself for at least 50 hours each week; however, I estimate that I worked at least 55 hours per week. Some weeks, I was required to work six days per week. If I worked six days per week, then my hours would typically reach 70 hours for that week. Despite the fact that I routinely worked over 8 hours per day and 40 hours per week, Circuit City never paid me overtime wages for my overtime hours.

3. In addition, I rarely, if ever, received an uninterrupted, off-duty, thirty minute meal period while employed by Circuit City, nor did Circuit City authorize and permit me to take uninterrupted, off-duty ten minute rest periods. On some occasions, I would have the opportunity to eat some food during the workday, which I would do in the sales managers' break room at the store. Usually, however, I would get paged by staff members requesting assistance and my lunch would be interrupted to tend to customer needs. My "lunch break" usually consisted of swallowing a sandwich in five minutes and then getting back out on the sales floor to help customers.

4. When I was first promoted to Entertainment Sales Manager, I attended a formal week-long training program in Pomona, California. This was the only formal training I received while employed at Circuit City. When I was transferred to the Norwalk, California, I neither received nor required additional training to perform the duties and responsibilities of the Entertainment Sales Manager. The duties and responsibilities of this position were substantially similar at both stores, and each had the same overtime expectation, the same refusal to compensate for overtime hours worked and the same denial of statutory meal and rest breaks.

5. Generally, the work I performed at an Entertainment Sales Manager and a Technology Sales Manager was substantially similar to the work performed by the hourly sales associates. As entertainment sales manager and technology sales manager, I would spent the majority of my time walking the sales floor, helping customers, re-organizing the store according to corporate plan-o-grams, and moving merchandise such as televisions, audio equipment, and appliances. In

2

addition, I spent a substantial amount of time responding to customer questions and ringing up customers on the cash register. Generally, the entertainment and technology sales manager was responsible for doing whatever it took to keep the department operating smoothly and ensuring a high level of customer service. My store managers (Erick Lina in Glendale and Misty Murphy in Norwalk) would tell me that I was responsible for doing whatever it took to get the job done, regardless of how many hours it took or what tasks I had to perform.

6. The reason I spent so much time performing the same types of work as hourly associates was because the store had very few labor hours to work with. The corporate office never gave my department enough hours for labor so I routinely had to spend the majority of my time doing hourly work. Circuit City Corporate would hand down a certain number of hours on a weekly basis to my department. I would make the schedule for the department by divvying up hours to the hourly associates. However, it was corporate policy that the store remained at least 90 percent compliant to the labor allocation model. If I did not have enough hours, my store managers told me I would have to fill in to make sure the work got done.

7. It is my understanding and belief that other Entertainment Sales Managers and Technology Sales Managers worked in similar working conditions, worked overtime, did not receive meal/rest breaks and were shorted their hard-earned wages. I believe this because I worked alongside the other Entertainment and Technology Sales managers. In addition, we attended meetings where our superiors would communicate Circuit City policies and procedures which were to apply uniformly to each of the stores. Our job, as the department managers, was to return to the store and implement the strategies which were communicated to us at the meetings. A common theme that was communicated to us at these meetings was that it didn't matter how many hours of overtime we had to work so long as the work was getting done.

8. Finally, another frustrating aspect of my experience at Circuit City was the way in which Circuit City dealt with vacation days. Often, I would request vacation days well in advance, and my manager would approve the request. However, as the date for my vacation approached, my manager would tell me that I can no longer have the days off and that I needed to reschedule my vacation. This would usually be due to a regional directive which would require my presence at the store.

1

2      I swear under penalty of perjury under the laws of the State of California that the

3  foregoing is true and correct. Executed this 12th day of March, 2010 at MONTROSE,

4  California.

5

6                                                _____

7                                                Joseph Skaf

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

MATTHEW RIGHETTI    (SBN #121012)
matt@righettilaw.com
JOHN GLUGOSKI    (SBN #191551)
jglugoski@righettilaw.com
MICHAEL RIGHETTI    (SBN #258541)
mike@righettilaw.com
RIGHETTI LAW FIRM, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone:    (415) 983-0900
Facsimile:    (415) 397-9005

Attorneys for Plaintiff

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>Circuit City Stores, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653 (KRH)<br><br>**DECLARATION OF JACK HERNANDEZ**<br><br>Date: March 25, 2010<br>Time: 2:30 p.m. ET<br>Room: 5000<br>Hon. Kevin Huennekens |

I, Jack Hernandez, declare as follows:

1.    I am the named Plaintiff in the case entitled *Hernandez v. Circuit City*, Case No. 37-2008-00082173-CU-OE-CTL, originally filed in San Diego Superior Court. I have personal knowledge of the matters herein and would and could testify thereto if called as a witness.

2.    I was employed by Circuit City and held the position of Sales Manager. I began my employment with Circuit City in January of 2006 and worked there as a Sales Manager until October of 2006. I began working at the National City store, but after only a few weeks I was transferred to the Point Loma store. Then, a few months later in approximately May or June of

1

2006, I was transferred back to the National City store. As a Store Manager, I routinely worked over 8 hours per day and 40 hours per week, and my managers at Circuit City expected me to work these hours. I was scheduled to work at least a 10 hour shift, but I often worked 12 hours per day. Also, I worked at least 5 days per week but most of the time I would work 6 days per week. I estimate that I worked anywhere from 50 to 70 hours per week as a Sales Manager at Circuit City in California. Despite the fact that I routinely worked over 8 hours per day and 40 hours per week, Circuit City never paid me overtime wages for my overtime hours.

3.   In addition, I rarely, if ever, received an uninterrupted, off-duty, thirty minute meal period while employed by Circuit City. I would try to eat lunch during the work day; however, my lunch would almost always get interrupted by someone at work who needed my assistance. Circuit City provided me and the other sales managers with cell phones, which we were required to keep on during the work day. If I was able to leave the store during my lunch, I would routinely receive calls on my cell phone from someone at the store who needed my help. Rest breaks, on the other hand, were nonexistent. The hourly employees were expected to take breaks but as my position was salaried, I was not authorized or permitted to take rest breaks. In fact, I would have to cover for the hourly employees while they were taking breaks. The result was that I rarely, if ever, received meal and/or rest periods as required under California law.

4.   When I started as a Sales Manager, I received a small amount of training to help me become knowledgeable with Circuit City's integrated system. However, when I transferred back and forth between the Point Loma and National City stores, I did not require any additional training to perform the duties and responsibilities of the Sales Manager. The duties and responsibilities of the position and the tasks I was expected to perform were substantially identical with the same overtime expectation, the same refusal to compensate for overtime hours worked and the same denial of statutory meal and rest breaks.

5.   The majority of my work day at Circuit City was spent performing the same tasks as the hourly sales associates. I really felt like the Sales Manager position was just a glorified sales associate at Circuit City. I spent most of my time receiving trucks, unpacking boxes, pricing

merchandise, stocking shelves, helping customers, setting up merchandise for advertisement prep, and moving product around on the sales floor. I had to spend my time on these tasks because the stores were not properly staffed, which made my job really challenging. My supervisor, Bobbie King, who was the Store Manager, often told me that I was required to do whatever it took to get the job done. I also believe other Sales Managers had the same experience I did because I spoke with other Sales Managers at the Point Loma and National City stores. I also worked alongside other Sales Managers on occasion and we had the same duties and responsibilities. Circuit City also had uniform policies and procedures which applied to all Sales Manager, regardless of where we worked as Sales Managers.

6. In addition to the hours I was putting in at the store, I was also expected to be on call at all times if the store alarm went off during the night. At National City, I lived closer to the store than any other managers, so if the alarm went off, the security guard would call me and I would have to leave my house and travel to the store to shut off the alarm. I was never compensated for the time I spent dealing with this issue.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _12_ day of March, 2010 at _Chula Vista_, California.

_____
Jack Hernandez

MATTHEW RIGHETTI    (SBN #121012)
matt@righettilaw.com
JOHN GLUGOSKI    (SBN #191551)
jglugoski@righettilaw.com
MICHAEL RIGHETTI    (SBN #258541)
mike@righettilaw.com
RIGHETTI LAW FIRM, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone:    (415) 983-0900
Facsimile:    (415) 397-9005

Attorneys for Plaintiff

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>Circuit City Stores, Inc., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653 (KRH)<br><br>**DECLARATION OF ROBERT GENTRY**<br><br>Date: March 25, 2010<br>Time: 2:30 p.m. ET<br>Room: 5000<br>Hon. Kevin Huennekens |

I, Robert Gentry, declare as follows:

1.    I am the named Plaintiff in the case entitled *Gentry v. Circuit City*, Case No. BC280631, originally filed in Los Angeles Superior Court. I have personal knowledge of the matters herein and would and could testify thereto if called as a witness.

2.    I was employed by Circuit City and held the position of Customer Service Manager. My career with Circuit City began in 1987 as a part-time warehouse employee at the La Cienega store in Los Angeles. In 1994 I was transferred to the Westwood store and by that time I had been promoted to a full-time warehouse employee. In 1996 I was promoted to the position of

1

Customer Service Manager ("CSM") and I began as a CSM at the Culver City store. In 1997, I was transferred to the Lakewood Store where I continued to perform the duties of a CSM. In 97-98, I was transferred back to La Cienega, but I stepped down and went back to a full-time hourly warehouse employee. In 1998, I became a CSM again and went back to the Culver City store, and then in 1999 I was transferred back to La Cienega as a CSM. In 2001, I quit my job because Circuit City was eliminating the CSM position, and Circuit City offered me the option of taking a demotion to a full time hourly position. As a Customer Service Manager, I routinely worked over 8 hours per day and 40 hours per week, and my supervisors at Circuit City *expected* me to work these hours. In fact, I was routinely scheduled to work at least 50 hours per week, and at the Lakewood Store I was scheduled to work 12-hour shifts. I estimate that I worked at least 50 to 55 hours per week as a CSM at Circuit City. Despite the fact that I routinely worked over 8 hours per day and 40 hours per week, Circuit City never paid me overtime wages for my overtime hours.

3. In addition, I rarely, if ever, received an uninterrupted, off-duty, thirty minute meal period while employed by Circuit City, nor did Circuit City authorize and permit me to take uninterrupted, off-duty rest breaks. The hourly employees were expected to take breaks but those employees with my title were expected to do whatever the store required to operate it smoothly. The nature of the work at Circuit City routinely prevented me from taking meal and rest periods.

4. When I was first promoted to CSM, I attended a week long training program in Virginia, which constituted the only formal training I received while employed at Circuit City. Although Circuit City transferred me to many different stores throughout my tenure as a CSM, I never received or required additional training to perform the duties and responsibilities of a CSM. The duties and responsibilities of the CSM position were substantially the same in every store I worked, including the same overtime expectation, the same refusal to compensate for overtime hours worked and the same denial of statutory meal and rest breaks.

2

5. Generally, the duties and responsibilities of the CSM position required a great deal of physical labor and was hard work to perform when working such long shifts. The majority of my time spent on warehouse and cashier functions. Warehouse functions included pulling the merchandise from the back room, unloading trucks, carrying merchandise to cars for customers, and stocking shelves. Much of the merchandise was very heavy, e.g. televisions, speakers, and refrigerators. As a CSM, the position was also responsible for cashiering and customer service. This meant that I spent a significant amount of time ringing up customers at the cash register and helping customers on the sales floor.

6. The vast majority of my time was spent performing the same functions as hourly employees. I believe that the job of the CSM required me to spend my time in this way because Circuit City liked to run a skeleton crew. For example, when we were taking care of receiving in the mornings, it would be myself and two other hourly employees. The truck would arrive at 7:00 a.m. and would often contain 700-800 pieces of merchandise, which would range anywhere from a handheld electronic device to a refrigerator. I would unload the truck between 7 a.m. and by 10 a.m., and we would be expected to have the truck unloaded by 10:00 a.m. At 10:00 a.m., I was required to have a cashier at the front of the store because that was when the store opened for business. Basically, I would go from unloading the truck to cashiering, to stocking merchandise because I had to do whatever the store needed. The work had to get done and the stores were only allocated a limited amount of labor hours. We had a scheduling system that would forecast how many hours we were allotted per week. The system never gave enough hours and the schedules were reviewed to make sure labor was kept in the required ratio. The store was required to keep its schedule at least 90 percent compliant with the labor scheduling system.

7. It is my understanding and belief that other Customer Service Managers worked in similar working conditions, worked overtime, did not receive meal/rest breaks and were shorted their hard-earned wages. I believe this because I worked at numerous stores as a CSM and other

3

CSMs were always performing the same tasks that I was performing. In addition, I had the opportunity to speak with other CSMs on a regular basis. The work was not rocket science; we all did whatever was necessary to keep customers satisfied, because that is what we were expected to do.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _10_ day of March, 2010 at _Los Angeles_, California.

_Robert Gentry_ (signature)
Robert Gentry

4

MATTHEW RIGHETTI    (SBN #121012)
matt@righettilaw.com
JOHN GLUGOSKI    (SBN #191551)
jglugoski@righettilaw.com
MICHAEL RIGHETTI    (SBN #258541)
mike@righettilaw.com
**RIGHETTI LAW FIRM, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA  94104
**Telephone:    (415) 983-0900**
**Facsimile:    (415) 397-9005**

Attorneys for Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Circuit City Stores, Inc., *et al.*, | Case No. 08-35653 (KRH) |
| Debtors. | **DECLARATION OF JONATHAN CARD** |
| | Date: March 25, 2010<br>Time: 2:30 p.m. ET<br>Room: 5000<br>Hon. Kevin Huennekens |

I, Jonathan Card, declare as follows:

1.    I am the named Plaintiff in the case entitled *Card v. Circuit City*, Case No. 37-2008-00095260-CU-OE-CTL, which was originally filed in San Diego Superior Court. I have personal knowledge of the matters herein and would and could testify thereto if called as a witness.

2.    I was employed by Circuit City and held the position of Assistant Store Manager. My specific title was Assistant Manager One. I was employed by Circuit City as an Assistant Manager at two different locations, Vista and Grossmont in California. As an Assistant Manager, I routinely worked over 8 hours per day and 40 hours per week, and my supervisors at

1

Circuit City expected me to work these hours. In fact, I was required to schedule myself for at least 45 hours per week, but I was often scheduled for at least 50 hours per week. I estimate that I worked between 50 and 60 hours per week. Despite the fact that I routinely worked over 8 hours per day and 40 hours per week, Circuit City never paid me overtime wages for my overtime hours.

3. In addition, I rarely, if ever, received an uninterrupted, off-duty, thirty minute meal period while employed by Circuit City, nor did Circuit City authorize and permit me to take uninterrupted, off-duty ten minute rest periods. Other store employees were expected to take breaks but those with my title were not provided or authorized and permitted to take breaks. Further, Circuit City would have me cover the associates during their meal and rest breaks. The result was that I rarely, if ever, received meal and/or rest periods as required under California law.

4. When I was first promoted to Assistant Manager, I received some online training as well as physical training in the store. When I was transferred from the Grossmount store to the Vista store, I did not receive or require any additional training to perform the duties and responsibilities of the Assistant Manager (One) position. The duties and responsibilities at each of the stores for this position were substantially the same with the same overtime expectation, the same refusal to compensate for overtime hours worked and the same denial of statutory meal and rest breaks.

5. Generally, the work I performed at Circuit City was laborious and hard. The majority of my day was spent on my feet on the sales floor mostly helping customers, loading televisions off of trucks and onto the sales floor, stocking the shelves with merchandise and cleaning the store. My immediate supervisors Bill Doehr – Store Director, and Eric Chapel – Operations Manager knew the work load and work activities and would tell me that I had to do whatever needed to be done to keep the store operating smoothly, and that it didn't matter if I had to perform the job of a sales associate.

6. An example of this is when the store would change the schematic or plan-o-gram for an entire department. The store would not schedule additional hours to help with the extra work that required me to move the products around on the floor. Therefore, I would be required to work long hours without receiving overtime pay to do this work. Often, this would require me to work two twelve-hour shifts in a row, but management did not care, I had to work until the job was done.

7. It is my understanding and belief that other Assistant Store Managers worked in similar working conditions. I believe this because Assistant Store Managers all attended the same training and the same meetings wherein we learned about what was going on in other stores and I had the opportunity to speak with other Assistant Managers regularly. The meetings were usually held in Escondido, California and were led by my District Manager John Thrasher and the District Operations Manager John Kimball. John Thrasher and John Kimball would tell us which stores were having success and which stores were not. They would tell us what needs to get done in the stores. They would communicate the same policies and procedures to each of the stores, and we were all required to carry out their wishes at the store level. They often said they didn't care if we had to pull ten or twelve hour shifts, we were expected to get the work done.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _10_ day of March, 2010 at _Oceanside_, California.

_Jonathan Card_

3