Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :    Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :    Case No. 08-35653 (KRH)
et al.,                      :
                             :
     Debtors.                :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO CLAIM OF WEIDLER
SETTLEMENT CLASS SUBJECT TO DEBTORS' FIFTY-EIGHTH
OMNIBUS OBJECTION TO CLAIMS (MODIFICATION AND/OR
RECLASSIFICATION OF CERTAIN CLAIMS)**

# TABLE OF CONTENTS

                                                                    Page

INTRODUCTION ............................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................... 1

SUMMARY OF ARGUMENT ...................................... 6

ARGUMENT ................................................. 7

    I.   STANDARD FOR SUMMARY JUDGMENT. ................. 7

    II.  THE COURT SHOULD RECLASSIFY THE WEIDLER
        CLAIM AS A GENERAL UNSECURED, NON-PRIORITY
        CLAIM AS A MATTER OF LAW. ...................... 9

        A.   The Settlement Class Has Failed To Meet
            Its Burden To Establish That The
            Alleged Wage Claim Is Entitled To
            Section 507(A)(4) Priority. ............... 10

            1.   Even if the Alleged Wage Claim is
                a claim for wages, those wages
                were not "earned" within the
                Priority Period. ..................... 13

            2.   The Alleged Wage Claim may not
                properly be characterized as a
                claim for "wages". ................... 20

        B.   No Amount Of The Alleged Wage Claim
            Constitutes "Back Pay" That Accrued
            During The Priority Period. ............... 28

CONCLUSION ............................................. 34

**TABLE OF AUTHORITIES**

**CASES**

Page(s)

In re Cargo, Inc.
138 B.R. 923 (Bankr. N.D. Iowa 1992) ..................... 31

In re Cardinal Industries,
160 B.R. 83 (Bankr. S.D. Ohio 1993) ................. 14, 17

In re Casimiro,
Case No. 05-19558-B-7, 2007 Bankr. LEXIS 1926
(Bankr. E.D. Cal. 2007) ..................... 25, 26, 31, 32

In re Conn. Pizza, Inc.,
193 B.R. 217 (Bankr. D. Md. 1996) ........................ 9

In re Crouthamel Potato Chip Co.,
52 B.R. 960 (E.D. Pa. 1985), rev'd on other grounds,
786 F.2d 141 (3d Cir. 1986) ............. 16, 17, 18, 19, 20

Davidson Transfer & Storage Co. v. Teamsters
Pension Trust Fund, 817 F.2d 1121 (4th Cir. 1987)......... 12

Ford Motor Credit v. Dobbins,
35 F.3d 860 (4th Cir. 1994) .............................. 12

Goodman v. Resolution Corp.,
7 F.3d 1123 (4th Cir. 1993) .............................. 9

Howard Delivery Service, Inc. v. Zurich
American Insurance Co., 547 U.S. 651 (2006) .......... 11, 12

In re IBIS Corp.,
272 B.R. 883 (Bankr. E.D. Va. 2001) ................... 7, 8

In re Ionosphere Clubs,
154 B.R. 623 (Bankr. S.D.N.Y. 1993) ..................... 14

In re Kasson, Inc.,
109 B.R. 52 (Bankr. E.D. Wisc. 1989) ................. 21, 25

In re Kitty Hawk, Inc.,
Case No. 00-42141-BJH-11, 2002 Bankr. LEXIS 1996
(Bankr. N.D. Tex. Nov. 26, 2002) ......................... 11

In re Lynnwear Corp.,
28 B.R. 532 (Bankr. S.D.N.Y. 1983) ...................... 14

In re Lull Corp.,
162 B.R. 234 (Bankr. D. Minn. 1993) ..................... 12

In re Myer,
197 B.R. 875 (Bankr. W.D. Mo. 1996) ..................... 14

In re Northwest Engineering Co.,
863 F.2d 1313 (7th Cir. 1988) ....................... 13, 14

In re Palau Corp., 18 F.3d 746 (9th Cir. 1994) ........... 32

In re Pittston Stevedoring Corp.,
40 B.R. 424 (Bankr. S.D.N.Y. 1984) ............... 12, 13, 14

Schachter v. Citigroup, Inc.,
218 P.3d 262 (Cal. 2009) ................................ 23

S.G. Borello & Sons, Inc. v. Department of Industrial
Relations, 769 P.2d 399 (Cal. 1989) ..................... 24

In re Sher-Del Foods, Inc.,
186 B.R. 358 (Bankr. W.D.N.Y. 1995) ................. 30, 31

In re Sholdra,
270 B.R. 64 (Bankr. N.D. Tex. 2001) ................. 21, 22

Sibley v. Lutheran Hosp. of Md., Inc.,
871 F.2d 479 (4th Cir. 1989) ............................. 8

In re T & B.C. Coal Mining,
Case No. 90-70714, 1993 Bankr. LEXIS 2315
(Bankr. E.D. Ky. 1993) ........................... 14, 17, 18

In re US Airways, Inc.,
No. 1:06CV539, 2006 WL 2992495 (E.D. Va. 2006) ........... 8

**STATUTES AND RULES**

11 U.S.C. § 502(a) ....................................... 7

11 U.S.C. § 507(a)(4) ............................... passim

Fed. R. Civ. P. 56(b) .................................... 8

Fed. R. Bankr. P. 3007(a) ............................... 7

Fed. R. Bankr. P. 9014(c) ............................... 8

**OTHER AUTHORITIES**

Black's Law Dictionary, 9th ed. 2009 ................. 21, 22

Collier on Bankruptcy, 15th ed. Revised 2009 & 507 ....... 11

Norton Bankruptcy Law and Practice,
3rd ed. 2010, § 49:44 ................................... 13

## INTRODUCTION

The debtors and debtors in possession in the
above-captioned cases (collectively, the "Debtors") submit
this memorandum of law in support of their motion, under
Rules 3007, 7056, and 9014 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 56
of the Federal Rules of Civil Procedure (the "Civil Rules"),
for summary judgment (the "Summary Judgment Motion") on the
Fifty-Eighth Omnibus Objection (the "Objection") with
respect to the class proof of claim -- Claim 11271 (the
"Weidler Claim") -- filed by certain class action
plaintiffs (the "Settlement Class").

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following material facts are not in dispute.

On April 4, 2007, Daniel Weidler and others (the
"Plaintiffs") filed a class action complaint on behalf of
themselves and other former employees against Circuit City
Stores, Inc. ("CCSI") in Los Angeles County Superior Court,
Case No. BC369001, styled Daniel E. Weidler, Michael F.
Yezback, and Eloise Garcia v. Circuit City Stores, Inc.
(the "Class Action Litigation"), which complaint was
amended on September 4, 2007 (the "First Amended
Complaint").  See Joint Stipulation of Settlement Agreement

and Release of Class Action Claims (the "Settlement

Agreement") ¶ 1.  A true and correct copy of the Settlement

Agreement is attached as <u>Exhibit A</u>.

In the First Amended Complaint, the Plaintiffs

alleged that they and other similarly situated former

employees of CCSI were entitled to recover, among other

things, "general and compensatory damages, including wages,

punitive damages, interest, attorneys' fees, and costs

under California Government Code section 12940 *et seq*."  <u>Id.</u>

In addition, the First Amended Complaint also included "a

cause of action for wrongful discharge . . . ."  <u>Id.</u>

In September 2008, the Plaintiffs and CCSI

reached a settlement, which was documented in the form of

the Settlement Agreement.  Pursuant to the Settlement

Agreement, CCSI and the Plaintiffs stipulated to the

creation and certification of a class (the "Settlement

Class"), which Settlement Class was defined as:

> All persons who were employed by Circuit
> City [Stores, Inc.] in California and who
> were at least forty (40) years of age as of
> March 28, 2007, and whose employment with
> Circuit City [Stores, Inc.] was terminated
> on or about March 28, 2007 or shortly
> thereafter in relation to their wage rates.

<u>Id.</u> ¶¶ 5-7.

2

In addition to stipulating to the formation of
the Settlement Class, CCSI agreed to pay the members of the
Settlement Class a maximum amount of $15 million dollars,
less attorney's fees of $3,750,000 and administrative costs
of $50,000, or a net maximum payment of approximately
$11,200,000.  Id. at ¶¶ 13-21 (the "Settlement Payment").
Pursuant to the Settlement Agreement, each member of the
Settlement Class (each a "Class Member" and collectively
the "Class Members") was entitled to receive a share of the
Settlement Payment, which share was "based on the number of
years of service prior to termination in or about March of
2007."  Id. at ¶ 20(d).  Moreover, "[f]or tax purposes the
Parties agree[d] to allocate 25% of any amounts paid to
Class Members as wages, and 75% to non-wages, reportable on
IRS Form 1099, as required",  id. at ¶¶ 19 and 23(a), and
each Class Member was to receive an IRS Form W-2 "for his
or her portion of the amount treated as wages."  Id. ¶
23(a).

On or about September 25, 2008, the Los Angeles
County Superior Court entered an Order Granting Preliminary
Approval of Class Action Settlement, Provisional
Certification of Class for Settlement Purposes, Approval of
Notice, and Setting of Final Fairness Hearing ("the

3

Preliminary Approval Order") and set a hearing for December 12, 2008 to consider final approval of the Settlement Agreement. <u>See</u> Preliminary Approval Order ¶¶ 7, 12. A true and correct copy of the Preliminary Approval Order is attached hereto as <u>Exhibit B</u>.

On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On December 3, 2008, this Court entered a Stipulation and Order Granting Motion for Relief from Stay permitting the settlement approval process to be completed in the Class Action Litigation (Docket No. 648). On or about December 12, 2008, the Los Angeles County Superior Court held a hearing to consider final approval of the Settlement Agreement. On the same day, it entered an Order Granting Final Approval of Class Action Settlement and Final Judgment in the Class Action Litigation (the "Approval Order"). <u>See</u> Approval Order ¶ 2. A true and correct copy of the Approval Order is attached as <u>Exhibit C</u>.

Thereafter, on January 28, 2009, counsel to the Settlement Class filed a proof of claim (Claim No. 7528) based on the Settlement Agreement (the "Initial Claim") and the Settlement Class's right to receive the Settlement Payment. The Initial Claim was asserted in the aggregate

4

amount of $14,369,903.70 and consisted of: (i) a pre-petition unsecured, non-priority claim in the amount of $8,363,203.70 and (ii) a pre-petition, unsecured priority claim in the amount of $6,005,700.  On February 6, 2009, the Settlement Class filed an amended proof of claim -- Claim No. 11271 -- requesting the same amounts (the "Weidler Claim").  The Weidler Claim consisted of three parts: (i) a pre-petition unsecured, non-priority claim in the amount of $8,363,203.70 (the "Nonpriority Claim"); (ii) a pre-petition claim in the amount of $2,255,700 asserted as being entitled to priority as wage claim under section 507(a)(4) (the "Alleged Wage Claim"); and (iii) a claim in the amount $3,750,000 for attorneys' fees asserted as being entitled to priority under Bankruptcy Code sections 105, 503, 507, or other applicable sections (the "Attorneys Fee Claim").  <u>See</u> Weidler Claim.[1]

On October 21, 2009, the Debtors filed their Fifty-Eighth Omnibus Objection to Claims (the "Objection") (Docket No. 5322), seeking to reclassify the Alleged Wage Claim and the Attorneys Fee Claim to pre-petition general

---

[1]   The Initial Claim was subsequently disallowed by the Court's Order dated September 14, 2009 which granted the Debtors' Twenty-Eighth Omnibus Objection to Claims (Docket No. 4848) to, among other things, amended and superseded claims.

unsecured, non-priority claims.  On November 16, 2009, the

Settlement Class responded to the Objection (the "Weidler

Response") (Docket No. 5753), arguing that the Alleged Wage

Claim is entitled to section 507(a)(4) priority.  Weidler

Response ¶ 14 n. 3.[2]

## SUMMARY OF ARGUMENT

The Settlement Class disputes the Debtors'

contention that no part of the Weidler Claim, including the

Alleged Wage Claim, is entitled to priority treatment under

section 507(a)(4) of the Bankruptcy Code ("section

507(a)(4)").  In support, the Settlement Class contends

that the Alleged Wage Claim is entitled to priority under

section 507(a)(4) because it is a claim for "wages" earned

within 180 days prior to the Petition Date (the "Priority

Period").

As demonstrated below, the Alleged Wage Claim is,

as a matter of law, a pre-petition general unsecured, non-

priority claim for three reasons.  First, even assuming

---

[2]    The Weidler Response does not appear to contest the Debtors' request
to reclassify the Attorneys Fee Claim to an unsecured, non-priority
claim.  Nor could it, as there is no basis in section 503 or 507 for
asserting that the Attorneys Fee Claim is entitled to priority.  To
the extent, however, that the Settlement Class contends otherwise,
the Debtors reserve their right to brief the issue in any reply they
file.

that the Alleged Wage Claim was a claim for "wages", which
it is not, those "wages" were not "earned" within the
Priority Period, as required by section 507(a)(4).  Second,
the Alleged Wage Claim is simply not a claim for "wages".
The claim is based on the Settlement Agreement, not a claim
by an employee for wages "earned" by the Class Members.
Third, the Settlement Class' contention that the Alleged
Wage Claim may, in the alternative, be characterized as
"back pay" that accrued, at least in part, during the
Priority Period is without any legal or factual foundation.

Accordingly, the Summary Judgment Motion should
be granted, and the entire Weidler Claim, including the
Alleged Wage Claim, should be classified as a pre-petition
general unsecured, non-priority claim.

## ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT.

Pursuant to section 502(a), a party in interest,
including the debtor, may object to claims.  See 11 U.S.C.
§ 502(a).  Bankruptcy Rule 3007(a) provides that an
objection must be in writing and filed with the Court.  Fed.
R. Bankr. P. 3007(a).

Claim objections are contested matters pursuant
to Bankruptcy Rule 9014.  In re IBIS Corp., 272 B.R. 883,

7

893 (Bankr. E.D. Va. 2001) ("Objections to proofs of claims are contested matters governed by Fed. R. Bankr. P. 9014."). Therefore, Bankruptcy Rule 7056, which incorporates Civil Rule 56, applies. See Fed. R. Bankr. P. 9014(c). Moreover, as the United States Supreme Court has held, summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Civil Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Sibley v. Lutheran Hosp. of Md., Inc., 871 F.2d 479, 483 n.9 (4th Cir. 1989) (citing Celotex, 477 U.S. at 327).

Pursuant to Civil Rule 56(b), "[a] party against whom relief is sought may move at any time, with or without supportive affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Moreover, "[s]ummary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." In re US Airways, Inc., No. 1:06CV539, 2006 WL 2992495, at *4 (E.D. Va. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985)). In this regard, a court may properly grant summary judgment when:

> Although each side in its submissions has
> presented a different characterization of the
> facts . . . and has argued different conclusions
> which the court should draw from those facts,
> there is little dispute as to actual facts and no
> dispute of material facts relevant to the
> determination of the causes of action.

In re Conn. Pizza, Inc., 193 B.R. 217, 220 (Bankr. D. Md.

1996); see also Goodman v. Resolution Trust Corp., 7 F.3d

1123, 1124 (4th Cir. 1993) (finding that summary judgment

is appropriately granted where there are "no relevant

disputes of material fact" (emphasis added)).

    As demonstrated below, no genuine issue as to any

relevant or material fact exists, and summary judgment

should be granted to the Debtors.

## II.   THE COURT SHOULD RECLASSIFY THE WEIDLER CLAIM AS A GENERAL UNSECURED, NON-PRIORITY CLAIM AS A MATTER OF LAW.

    The Settlement Class asserts that the Alleged

Wage Claim is entitled to priority under section 507(a)(4)

because that Claim constitutes "unpaid wages" earned within

the Priority Period.   See Weidler Response ¶ 20.   In

support, the Settlement Class states that in the Settlement

Agreement, Circuit City Stores agreed to pay the Settlement

Class "no less than $2,800,000 in wages."   Id.   Moreover,

the Settlement Class alleges that these "wages" were

"earned" on the date of execution of the Settlement

Agreement, which date was within the Priority Period.  <u>Id.</u>

Consequently, the Settlement Class contends that the

Alleged Wage Claim is entitled to priority treatment under

section 507(a)(4).

        The Settlement Class also argues, in the

alternative, that if the entire $2,255,700 amount is not

determined to be entitled to priority, the Court should

hold a hearing to determine how much of these "wages"

constituted "back pay" that accrued during the Priority

Period.  <u>See</u> Weidler Response ¶ 22.

        As demonstrated below, both of the Settlement

Class' alternative arguments fail as a matter of law.

   **A.    The Settlement Class Has Failed To Meet Its
           Burden To Establish That The Alleged Wage Claim
           Is Entitled To Section 507(A)(4) Priority.**

        Section 507(a)(4) states, in relevant part, that

priority will be granted to:

> [a]llowed unsecured claims, but only to the
> extent of $10,950 for each individual or
> corporation, as the case may be, earned
> within 180 days before the date of the
> filing of the petition or the date of the
> cessation of the debtor's business,
> whichever occurs first, for—
>
> > (A) wages, salaries, or commissions,
> > including vacation, severance, and sick
> > leave pay earned by an individual; . . .

10

11 U.S.C. § 507(a)(4).[3]  Thus, section 507(a)(4) expressly

provides that a claim is only entitled to priority

treatment if it is a claim for "wages" that were "earned"

within the Priority Period.  Moreover, it is the Settlement

Class' burden to demonstrate that the Alleged Wage Claim

satisfies this standard.  See, e.g., In re Kitty Hawk, Inc.,

Case No. 00-42141-BJH-11, 2002 Bankr. LEXIS 1996, *7

(Bankr. N.D. Tex. Nov. 26, 2002) ("The claimant asserting

wage priority bears the burden of establishing the priority

claim and must fit squarely within the statutory

requirements to achieve priority status.").

     Importantly, this section must be narrowly

construed because, due to the "equal distribution objective

underlying the Bankruptcy Code[,]" "provisions allowing

preferences must be tightly construed." Howard Delivery

Service, Inc. v. Zurich American Insurance Co., 547 U.S.

651, 668-69 (2006) (applying this principle in narrowly

---

[3]  The current section 507(a)(4) was "renumbered from section 507(a)(3)
     to section 507(a)(4) by the Bankruptcy Abuse Prevention and Consumer
     Protection Act of 2005, Pub. L. No. 109-8, § 212 (2005), effective
     in cases commenced on or after October 17, 2005." Collier on
     Bankruptcy, 15th ed. Revised 2009, ¶ 507.05, n. 1.  Accordingly, all
     references to section 507(a)(3) in this memorandum should be
     construed as referring to the current section 507(a)(4).  It should
     also be noted that prior versions of this provision had a shorter
     (90 day) priority period.  As a result, some cases cited in this
     memorandum may apply the 90 day period, which has since been amended
     to 180 days.

construing Bankruptcy Code section 507(a)(5)); see Ford
Motor Credit v. Dobbins, 35 F.3d 860, 866 (4th Cir. 1994)
("The presumption in bankruptcy cases is that the debtor's
limited resources will be equally distributed among the
creditors" and therefore "statutory priorities must be
narrowly construed"); see also In re Lull Corp., 162 B.R.
234, 239 (Bankr. D. Minn. 1993) (noting, in the context of
applying section 507(a)(3) wage priority, that "[p]riority
statutes are generally narrowly construed").  Thus,
notwithstanding the fact that "wage priority statutes are
to be liberally construed . . . a rule of liberal
construction does not allow a court to disregard the plain
language of the statute."  Davidson Transfer & Storage Co.
v. Teamsters Pension Trust Fund, 817 F.2d 1121, 1124 (4th
Cir. 1987); see In re Pittston Stevedoring Corp., 40 B.R.
424, 428 (Bankr. S.D.N.Y. 1984) (noting that "even a canon
of construction favoring a broad interpretation does not
militate in favor of so wide an interpretation as to render
explicit provisions of the Code meaningless" and stating
that "there is long-standing authority for the proposition
that words of a statute should be afforded their plain
narrow meaning, especially in the area of wage
priorities.").

12

As demonstrated below, the Settlement Class has not, and cannot, carry its burden of establishing that the Alleged Wage Claim is actually for "wages" that were "earned" in the Priority Period.  Therefore, the Alleged Wage Claim is not entitled to section 507(a)(4) priority.

> **1.    Even if the Alleged Wage Claim is a claim for wages, those wages were not "earned" within the Priority Period.**

Even assuming, _arguendo_, that the Alleged Wage Claim is a claim for "wages," _but see_ infra Section II.A.2, the Alleged Wage Claim would still not qualify for priority treatment under section 507(a)(4) because those "wages" were not "earned" within the Priority Period.

An "employee earns wages within the meaning of Code § 507(a)(4) at the time that the services are performed, rather than at the time that the right to payment vests."  _Norton Bankruptcy Law and Practice_, 3rd ed. 2010, § 49:44 (emphasis added); _see also_ In re Northwest Engineering Co., 863 F.2d 1313, 1314-17 (7th Cir. 1988) (separating the work requirement from the vesting requirement and concluding that "the employee gets a priority equal to the value of services rendered in the 90 days before bankruptcy"); In re Myer, 197 B.R. 875, 877 (Bankr. W.D. Mo. 1996) (noting that "[p]riority status is

available only for actual services performed and

commissions earned" and that "analysis of when § 507(a)(3)

priority arises focuses on the time the individual

performed the services giving rise to the right to the

commissions"); In re Cardinal Industries, 160 B.R. 83, 85

(Bankr. S.D. Ohio 1993) ("[T]he timing of the payment on

account of an earned bonus or commission should not be the

focus of the analysis under 11 U.S.C. § 507(a)(3)(A).

Rather, the focus should be upon the time the individual

performed the services which gave rise to the right to the

bonus or commission.  'Earned' for purposes of priority,

therefore, may not always be synonymous with 'payable'.").[4]

     As the Settlement Agreement makes clear, the

Class Members did not provide any services to Debtors

within the Priority Period.  As set forth above, the

Settlement Class is defined as:

---

[4]  See also In re T & B.C. Coal Mining, Case No. 90-70714, 1993 Bankr.
LEXIS 2315, *4 (Bankr. E.D. Ky. 1993) (citing cases under the
Bankruptcy Act for the proposition that "wages are 'earned' when the
work is performed"); In re Ionosphere Clubs, 154 B.R. 623, 626
(Bankr. S.D.N.Y. 1993) (approving of bankruptcy judge's holding that
"only vacation pay earned for work actually performed within the 90-
day period qualified for inclusion as a third priority claim");
Pittston, 40 B.R. at 426-27 (rejecting claimant's argument that
wages were earned "when discovered during the audit of the debtor's
books [during the priority period]", finding instead that the wages
must actually have been "earned" during the priority period); In re
Lynnwear Corp., 28 B.R. 532, 534 (Bankr. S.D.N.Y. 1983) (noting that
"priority is only available for actual services performed").

> All persons who were employed by Circuit
> City [Stores, Inc.] in California and who
> were at least forty (40) years of age as of
> March 28, 2007, and whose employment with
> Circuit City [Stores, Inc.] was terminated
> on or about March 28, 2007 or shortly
> thereafter in relation to their wage rates.

Settlement Agreement ¶¶ 5-7.  Therefore, any services performed by a Class Member for the Debtors was last performed in or about March 2007 and, thus, well before the commencement of the Priority Period.

Moreover, as the Settlement Agreement also makes clear, the amount of the Settlement Payment payable to any individual member of the Settlement Class was based entirely on that individual member's length of service to CCSI before he or she was terminated in or about March 2007. See Settlement Agreement ¶ 20(d) (providing that "[t]he Maximum Class Payment will be divided among the Class Members by a formula based on the number of years of service prior to termination in or about March 2007"). Consequently, to the extent the Settlement Payment may be characterized as "wages", the service for such wages were rendered outside the Priority Period.

Nor does, or can, the Settlement Class contend otherwise.  Indeed, the Settlement Class concedes as much in the Weidler response.  See Weidler Response ¶ 2 ("The

15

Debtor terminated Plaintiffs' employment in early
2007 . . ."). Therefore, even if the Alleged Wage Claim
constituted a claim for "wages", which it does not, the
"wages" were "earned" well before the Priority Period.
Consequently, the Alleged Wage Claim is not entitled to
priority under section 507(a)(4).

Notwithstanding the above, the Settlement Class
argues that the Alleged Wage Claim is entitled to section
507(a)(4) priority because it was "earned" when the parties
entered into the Settlement Agreement, which occurred
during the Priority Period. See Weidler Response ¶ 20. In
support of this position, the Settlement Class cites In re
Crouthamel Potato Chip Co., 52 B.R. 960, 965 (E.D. Pa.
1985), rev'd on other grounds, 786 F.2d 141 (3rd Cir. 1986),
for the proposition that wages are earned "when, as a
matter of contract, the employees' right to receive those
funds are fixed and could not be taken from him by the
occurrence of some contingent event." This argument fails
on a number of grounds and the Class Members' reliance on
Crouthamel is misplaced.

First, by changing the focus to the date on
parties entered into the Settlement Agreement as opposed to
the dates on which the Class Members provided services to

16

the Debtors, the Settlement Class is seeking not a claim
for wages, but a contractual claim for the amount of the
Settlement Payment.  As demonstrated below, that is not a
claim for wages at all, and thus, not entitled to priority
under section 507(a)(4).  See infra Section II.A.2.

Second, as courts have made clear, wages are
"earned" when the services are performed, not when they
become payable.  See, e.g., In re Cardinal Industries, 160
B.R. at 85 ("the focus should be upon the time the
individual performed the services which gave rise to the
right" to payment); In re T & B.C. Coal Mining, 1993 Bankr.
LEXIS 2315 at *4 ("wages are 'earned' when the work is
performed").  Indeed, at least one court has expressly
rejected the argument made by the Settlement Class based on
Crouthamel case.

In particular, in T & B.C. Coal Mining, the
claimant argued that its claim, based on a judgment for
unpaid wages due on account of services provided before the
priority period, was entitled to priority because it was
"fixed" within the priority period when the judgment was
entered within such period.  See 1993 Bankr. LEXIS 2315 at
*3.  In support, the claimant cited Crouthamel for the
proposition that "[i]f the wages were due and payable

17

within the 90 day period, they were 'earned' during that period" because the requirement that wages be "earned" "does not necessarily mean that the work done by the individual to earn the unpaid wages had to be performed within the 90 day period." Id.  The bankruptcy court expressly rejected this argument, concluding instead that the cases relied upon by Crouthamel actually stood for the proposition that "wages are 'earned' when the work is performed."  Id. at *5 (citing In re Ad Service Engraving Co., 338 F.2d 41, 43 (6th Cir. 1964); U.S. v. Munro-Van Helms Co., 243 F.2d 10, 13 (5th Cir. 1957)).  As set forth above, the Class Members performed no work for the Debtors during the Priority Period so no "wages" could have been "earned" during that period.

Third, Crouthamel is distinguishable.  In Crouthamel, the employee's union argued that union employees had a priority wage claim for holiday pay because, under its collective bargaining agreement with the debtor, holiday pay was "earned" when the employees were laid off within 45 days prior to the holiday, which layoff had occurred within the priority period.  Crouthamel, 52 B.R. at 963-65.  The court found, however, that the agreement not only required the employees to have been laid off

18

within 45 days prior to the holiday, but also required the
employees to remain laid off on the date of the holiday,
which holiday was after the petition date.  Id. at 965.
Therefore, the court concluded that the payment had not
been earned or fixed under the collective bargaining
agreement within the priority period; rather, it would
become earned or fixed on the post-petition date of the
holiday, when the determination as to whether the employees
remained laid off could be made.  Id.

        In the present case, however, the Settlement
Class is not relying on an employment contract that governs
the payment of wages qua wages for services.  It is relying
on the Settlement Agreement that is a contract governing
the resolution of litigation, not the employment
relationship and when wages are earned.  Nor is the
Settlement Class requesting payment of wages that would be
earned pursuant to the terms of a policy or contract as
opposed to simply for services rendered on a particular
date.  Indeed, unlike the collective bargaining agreement
in Crouthamel, the Settlement Agreement here does not
specify when any wages are earned.  Rather, it simply
states that some of the Settlement Payment would be treated
as "wages" for tax purposes.

19

Therefore, to the extent the court is called upon to determine when the wages, if any, were earned, such wages were earned when the services were provided.  This occurred well before the Priority Period.  Thus, <u>Crouthamel</u> is plainly distinguishable and its conclusion as to when holiday pay would be earned under a collective bargaining agreement has no application as to when ordinary wages are earned when no employment or other agreement alters the general principle that wages are earned when services are rendered.

Accordingly, the Settlement Class' position should be rejected, and the Alleged Wage Claim fails to qualify for section 507(a)(4) priority treatment because it was not "earned" within the Priority Period.

> **2.    The Alleged Wage Claim may not properly be characterized as a claim for "wages".**

As shown above, even assuming the payment required by the Settlement Agreement constituted "wages", those "wages" were not earned during the Priority Period. Thus, the Alleged Wage Claim is not entitled to priority treatment under section 507(a)(4).  Additionally, as demonstrated below, no part of the Settlement Payment was to be the payment of "wages" as that term is used in

section 507(a)(4) and, therefore, the Alleged Wage Claim is not entitled to priority treatment under section 507(a)(4) on this ground as well.

The Bankruptcy Code does not contain a definition of "wages."  As a result, "[t]he proper place to begin in interpreting language of the Bankruptcy Code is with the plain meaning of the words at issue."  In re Sholdra, 270 B.R. 64 (Bankr. N.D. Tex. 2001).  Additionally, although "wages" is used in federal statute, some courts have determined that "the meaning of wages may be decided by reference to state law."  In re Kasson, Inc., 109 B.R. 352, 355 (Bankr. E.D. Wisc. 1989) ("the meaning of wages may be decided by reference to state law").  In the present case, this Court's reliance on either results in the same conclusion -- the Settlement Payment is not the payment of "wages" as that term is used in section 507(a)(4).

First, Black's Law Dictionary defines "wages" as:

Payment for labor or services, [usually]
based on time worked or quantity produced;
[specifically] compensation of an employee
based on time worked or output of production.
Wages include every form of remuneration
payable for a given period to an individual
for personal services, including salaries,
commissions, vacation pay, bonuses, and the
reasonable value of board, lodging, payments
in kind, tips, and any similar advantage
received from the employer.

21

Black's Law Dictionary 1716 (9th ed. 2009); see also

Sholdra, 270 B.R. at 69 (using the Black's Law Dictionary

definition of "wages" in the context of defining "earnings"

under section 541(a)(6), noting that the term "wages" was

used by Congress in other provisions of the Code, including

section 507(a)(3)).  The Weidler Claim, however, seeks a

payment due under the Settlement Agreement that is to be

given in full satisfaction, settlement and release of pre-

petition litigation.  Therefore, at bottom, the Weidler

Claim is based on a contract -- the Settlement Agreement --

not on an employee rendering services to the Debtors during

the Priority Period.

     Nor would the Settlement Payment constitute a

claim for wages under state law.  Specifically, in the

present case, this Court should refer to California law to

obtain guidance regarding the meaning of "wages" because

the Settlement Class consists of former employees of CCSI's

locations in California, and the underlying class action

was brought in a California state court based on claims

under California law.  The California Supreme Court has

determined that

          A wage is defined as "all amounts for labor
          performed by employees of every description,
          whether the amount is fixed or ascertained

22

> by the standard of time, task, piece,
> commission basis, or other method of
> calculation." [] We construe the term
> "wages" broadly to "include not only the
> periodic monetary earnings of the employee
> but also the other benefits to which he is
> entitled as a part of his compensation." []
> "Courts have recognized that 'wages' also
> include those benefits to which an employee
> is entitled as a part of his or her
> compensation, including money, room, board,
> clothing, vacation pay, and sick pay." []
> Incentive compensation, such as bonuses and
> profit-sharing plans, also constitutes wages.

Schachter v. Citigroup, Inc., 218 P.3d 262, 268 (Cal. 2009)

(citations omitted) (emphasis added).  Thus, here again,

"wages" refer to compensation paid to employees in exchange

for labor or services rendered by that employee.

Accordingly, for the same reasons as set forth above, the

Settlement Payment is not the payment of "wages" as that

term is used in section 507(a)(4).  Indeed, the Alleged

Wage Claim is based on a contract, the Settlement Agreement,

not on services rendered and, consequently, it is not

entitled to priority under section 507(a)(4).

The Alleged Wage Claim may also not be

characterized as "wages" for another reason.  The right to

be paid the Alleged Wage Claim does not arise out of an

employment relationship.  Instead, that claim is based upon

23

the agreements embodied in a contract -- the Settlement

Agreement.

Specifically, as set forth above, it is

indisputable that that employee-employer relationship

between the Class Members and CCSI ended no later than

March 2007.  See Settlement Agreement ¶ 6 (defining

Settlement Class as those people whose employment was

terminated in or about March 2007).  Since that time, CCSI

has had no right or ability to control the Class Members'

work or services.  Therefore, the Class Members were not in

an employment relationship with Debtors at the time they

commenced the Class Action Litigation or upon entering into

the Settlement Agreement.  See S.G. Borello & Sons, Inc. v.

Department of Industrial Relations, 769 P.2d 399, 404 (Cal.

1989) (stating that "[the] principal test of an employment

relationship is whether the person to whom service is

rendered has the right to control the manner and means of

accomplishing the result desired").  Consequently, the

Alleged Wage Claim cannot qualify as "wages" entitled to

priority because it failed to arise out of an employment

relationship.[5]   See, e.g., In re Casimiro, Case No. 05-19558,
2007 Bankr. LEXIS 1926, *19-22 (Bankr. E.D. Cal. 2007)
(concluding that former employees' claims in class action
were not claims for wages entitled to priority under
section 507(a)(4)); see also In re Kasson, 109 B.R. at 352
(finding that debtors' payments to milk suppliers during
the Priority Period "are not wages within the meaning of §
507(a)(3)" because "[n]o employer-employee relationship
existed between the milk suppliers and the debtor" when
they sold milk supplies to the debtor).

On the above point, the California bankruptcy
court's decision in Casimiro is particularly instructive.
In Casimiro, former employees of the debtor filed a class
action in California Superior Court before the debtor's
bankruptcy filing, asserting the existence of unpaid wages
and violations of various California employment laws.   Id.
at *3.   The employees then claimed entitlement to section
507(a)(4) priority based on the class action allegations.

---

[5]   The only way the Alleged Wage Claim would constitute "wages" arising
from an employer-employee relationship is if the Settlement Class
concedes that the Alleged Wage Claim consists of payments arising
from the Class Members' pre-March 2007 employment relationship with
CCSI.   However, in that case, the wages would have been "earned"
outside of the Priority Period, when the Settlement Class provided
its pre-March 2007 services to CCSI.   See supra Section II.A.1.

Id. at *7.  The bankruptcy court determined, however, that it was "not satisfied that the [employees] have the right to a priority claim under § 507(a)(4)."  Id. at *19.

Specifically, the bankruptcy court concluded that "[the employees'] own pleadings suggest that none of the [employees] even qualify to have a claim under § 507(a)(4)."  Id. at *19-20.  In support of its conclusion, the bankruptcy court found that none of the employees alleged that they worked for debtors on or after the date that started the Priority Period.  Id. at *21 n. 11.  Moreover, the bankruptcy court pointed out that "[the employees] commenced the Civil Action against Casimiro . . . approximately three months before the Priority Period", and concluded that it was "not unreasonable to infer that the [employees] did not work for Casimiro and accrue any claim for unpaid wages after the Civil Action was filed."  Id. at *22.

Here no inference need be made.  The indisputable facts are that the Settlement Class consists of employees whose employment relationship was terminated in or around March 2007, well outside the Priority Period.  Hence, the Alleged Wage Claim is not based on an employment relationship, but on litigation claims settled under the

Settlement Agreement.   Accordingly, on this ground as well, the Alleged Wage Claim should be reclassified as an unsecured non-priority claim.

Nor should this Court be persuaded by the Settlement Class' argument that because the Settlement Agreement characterizes part of the Settlement Payment as "wages", that part of the Settlement Payment is entitled to priority treatment.  See Weidler Response ¶¶ 19-21.  First, although the Settlement Agreement refers to part of the Settlement Payment as "wages", the Settlement Agreement does so only for "tax purposes", not in exchange for services.  In particular, the Settlement Agreement expressly provides that "[f]or tax purposes, the Parties agree to allocate 25% of any amounts paid to Class Members as wages, and 75% to non-wages . . . ."  Settlement Agreement ¶ 19.  And, the only other section of the Settlement Agreement that discusses "wage" treatment of the settlement payment does so within a section entitled "Tax Treatment of Claim Share Portion of Settlement Payments."  Id. at ¶ 23(a).

Second, even assuming that 25% of the Settlement Payment could be treated as "wages", that part of the Settlement Payment relates to the period in or before March

27

2007.  Thus, even if the Settlement Payment was in part a promise to pay "wages", the wages expressly relate to a period prior to the Priority Period.

As a result, the Alleged Wage Claim does not constitute a claim for "wages" entitled to priority treatment under section 507(a)(4) because it does not consist of compensation paid to employees in exchange for services.  Rather, the Alleged Wage Claim is a claim for part of the Settlement Payment promised under the Settlement Agreement that was characterized by the parties as "wages" for the very limited purpose of determining who was responsible for tax payments.  Therefore, the Alleged Wage Claim is not entitled to section 507(a)(4) priority as "wages" earned within the Priority Period.

**B.   No Amount Of The Alleged Wage Claim Constitutes "Back Pay" That Accrued During The Priority Period.**

The Settlement Class also argues that, even if the entire Alleged Wage Claim is not entitled to priority, part of it is entitled to priority under section 507(a)(4) because it constitutes "back pay" that accrued during the Priority Period.  See Weidler Response ¶ 22.  In support, the Settlement Class asserts that although the employment relationship with CCSI was terminated in 2007, the Class

28

Members' "claim for lost wages continued to accrue up to
and including the date of the Settlement Agreement, when
that liability was fixed by contract." Id.  Thus, the
Settlement Class asserts that "the portion of the wages due
under the Settlement Agreement that covers the Priority
Period should be accorded priority status" under section
507(a)(4).  Id.  This argument should be rejected on
numerous grounds, including some of the grounds already
stated.

        First, the Settlement Class' back pay argument
rests on the proposition that back pay was earned up to the
date the parties entered into the Settlement Agreement.  As
shown above, that argument should be rejected because no
services were performed after March 2007.

        Second, the Settlement Agreement itself
forecloses the possibility of any back pay accruing during
the Priority Period.  Specifically, the Settlement
Agreement expressly provides that the Settlement Payments
are based on each Class Member's "number of years of
service prior to termination in or about March 2007" rather
than any time period after March 2007.  Settlement
Agreement ¶ 20(d).  In addition, the Settlement Agreement
releases CCSI from "any and all claims . . . contingent or

29

accrued, that relate to the Class Members' termination of
employment . . . including without limitation . . . the
nonpayment of wages . . . ." Id. at ¶ 28.  Thus, to the
extent that any of the Class Members are entitled to "back
pay", that "back pay" related to a period in or before
March 2007.  As a result, any "back pay" claim is not
entitled to priority under Bankruptcy Code section
507(a)(4).

          Third, as previously discussed, section 507(a)(4)
wage priority requires that (1) the payment qualify as
"wages" by being compensation to an employee in exchange
for services; and (2) the claimant "earn" the wages within
the Priority Period by having provided services within that
period.  These principles do not differ with regard to
"back pay."  Indeed, courts have found that back pay awards
are subject to the same requirements as ordinary wages.
See, e.g., In re Sher-Del Foods, Inc., 186 B.R. 358, 361
(Bankr. W.D.N.Y. 1995) (citing prior cases for the
proposition that "a back pay award under the National Labor
Relations Act is in the nature of wages earned," so the
"present back pay award will receive priority if . . . [the]
back pay awards [] are earned within the time and monetary
limits set forth in the Bankruptcy Code").  Consistent with

30

the aforementioned principles, courts analyzing the

priority of back pay awards have found that back pay is

"earned", at the very latest, when the employee is

terminated and ceases to provide services to the debtor.

See, e.g., Id. at 362 (concluding that back pay award was

entitled to priority because the employees "earned their

back pay award upon the debtor's failure to negotiate the

effects of termination" which occurred within the priority

period); In re Cargo, Inc., 138 B.R. 923, 927-28 (Bankr.

N.D. Iowa 1992) (concluding that back pay award under the

Worker Adjustment and Retraining Notification Act was

"earned . . . upon termination" that occurred within the

priority period).

     As shown, no employer-employee relationship

existed between the Class Members and the Debtors during

the Priority Period, nor were any services provided by the

Class Members to Debtors during that time because the Class

Members were terminated in or around March 2007.  As a

result, the Class Members' claim for "back pay" could not

have accrued within the Priority Period.  See, e.g.,

Casimiro, 2007 Bankr. LEXIS 1926 at *22 (stating that "[i]t

is not unreasonable to infer that the [former employees]

did not work for [debtors] and accrue any claims for unpaid

wages after the Civil Action [for unpaid wages] was filed"
three months before the Priority Period).  Therefore, no
amount of the Alleged Wage Claim is entitled to priority
under section 507(a)(4), as no part of it was "earned"
within the Priority Period on account of an employer-
employee relationship.

Nor does In re Palau Corp., 18 F.3d 746 (9th Cir.
1994), a case cited by the Settlement Class, dictate a
different conclusion.  In Palau, the court concluded that a
portion of a lost wage claim was entitled to priority.  Id.
at 749-51.  However, the claim in Palau was made by
employees of the debtor who were terminated during the
period for which they could properly claim priority
treatment.  Id. at 748, n.2.  As a result, the lost
wage/back pay claim was "earned" within the requisite
priority period.

In contrast, the present case involves a
Settlement Class that was terminated well in advance of the
Priority Period.  Therefore, no amount of the Alleged Wage
Claim was "earned" within the Priority Period.  Thus, the
Settlement Class' reliance on Palau is misplaced.
Consequently, no part of the Alleged Wage Claim is a claim
for "back pay" that accrued during the Priority Period, and

32

the entire Weidler Claim should be classified as a pre-petition unsecured, non-priority claim.

## CONCLUSION

For the reasons set forth herein, the Debtors respectfully request that this Court grant summary judgment and reclassify the Weidler Claim, in its entirety, to a general unsecured, non-priority claim.

Dated: Richmond, Virginia
      March 17, 2010

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636 (302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley   .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB
No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and
Debtors in Possession

## EXHIBIT A

**(Settlement Agreement)**

1 | NATHAN GOLDBERG (SBN 61292)
MICHAEL MAROKO (SBN 62013)
2 | **ALLRED, MAROKO & GOLDBERG**
6300 Wilshire Boulevard, Suite 1500
3 | Los Angeles, California 90048
Telephone: 323-653-653
4 | Facsimile: 323-653-1660
Attorneys for Plaintiffs

5 |
6 | DAVID M. deRUBERTIS (SBN 208709)
**THE deRUBERTIS LAW FIRM**
21800 Oxnard Street, Suite 1180
7 | Woodland Hills, California 91367
Telephone: 818-227-8605
8 | Facsimile: 818-227-8616
Attorneys for Plaintiffs

9 |
10 | E. JOSEPH CONNAUGHTON (SBN 166765)
JEFFREY P. AMES (SBN 234871)
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
11 | 401 B Street, Tenth Floor
San Diego, California 92101-4232
12 | Telephone: 619-237-5200
Facsimile: 619-615-0700
13 | Attorneys for Defendant

14 |
15 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

16 | COUNTY OF LOS ANGELES – CENTRAL DISTRICT

17 | CENTRAL CIVIL WEST COURTHOUSE

18 | DANIEL E. WEIDLER; MICHAEL F. YEZBACK; ELOISE GARCIA, ANGIE DURON, individually and on behalf of a class of all similarly-situated individuals,

CASE NO. BC369011

**JOINT STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE OF CLASS ACTION CLAIMS**

PlaintiffS,

v.

CIRCUIT CITY STORES, INC.; and DOES 1 through 100, inclusive,

Defendants.

| | |
|---|---|
| Date: | TBD |
| Time: | TBD |
| Dept: | 324 |
| Judge: | Hon. Victoria G. Chaney |
| Complaint Filed: | April 4, 2007 |
| Trial Date: | Not set |

This Joint Stipulation of Settlement Agreement and Release of Class Action Claims

("Stipulation of Settlement") is made and entered into by and between Plaintiffs Daniel E.

Weidler, Michael F. Yezback, Eloise Garcia, and Angie Duron ("Plaintiffs" or "Class

1    Representatives"), on the one hand, and Defendant Circuit City Stores, Inc. ("Circuit City" or

2    "Defendant"), on the other hand, and is subject to the terms and conditions hereof and the

3    approval of the Court. As used herein, "Settlement" means the terms and conditions set forth in

4    this Stipulation of Settlement. Plaintiffs and Defendant are referenced collectively herein as "the

5    Parties."

6        1.        On April 4, 2007, Plaintiffs filed a proposed class action complaint in the

7    Los Angeles County Superior Court, Case No. BC369011, captioned *Daniel E. Weidler,*

8    *Michael F. Yezback, Eloise Garcia, individually and on behalf of a class of all similarly situated*

9    *employees v. Circuit City Stores, Inc.* On September 4, 2007, Plaintiffs filed a First Amended

10   Complaint, captioned *Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, Angie Duron,*

11   *individually and on behalf of a class of all similarly situated employees v. Circuit City Stores,*

12   *Inc.,* (hereinafter referred to as "the Action"). The First Amended Complaint alleges that

13   Plaintiffs and other similarly situated former employees of Defendant are entitled to recover

14   general and compensatory damages, including unpaid wages, punitive damages, interest,

15   attorneys' fees, and costs under California Government Code section 12940 *et seq.* Plaintiffs'

16   complaint also contains a cause of action for wrongful discharge in violation of public policy,

17   including violation of California Government Code sections 12940 and 12941, and seeks general

18   and compensatory damages, including unpaid wages, punitive damages, interest, attorneys' fees,

19   and costs.

20       2.        Plaintiffs believe the Action is meritorious as described in their complaint, and that

21   this case is appropriate for class certification under California law. Plaintiffs have considered the

22   expense and length of continued proceedings necessary to continue the Action against Defendant

23   through class certification, pre-trial motions, trial, and any possible appeals. Plaintiffs have also

24   taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties

25   inherent in such litigation. Plaintiffs are also aware of the burdens of proof necessary to establish

26   suitability of the case as a class action, liability for the claims asserted in the Action, Defendant's

27   defenses thereto, and the difficulties in establishing Plaintiffs' damages. Plaintiffs have also

28   considered the settlement negotiations conducted by the Parties and the recommendations of the

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS                                2

1   mediator (Antonio Piazza, Esq.), who is highly experienced in employment litigation and in

2   complex class litigation. Based on the foregoing, Plaintiffs have determined that this Settlement

3   is fair, adequate and reasonable, and in the best interests of the Settlement Class defined below.

4   Should this Settlement not be finally approved by the Court, neither this Stipulation of Settlement,

5   nor any documents referred to herein, nor any action taken to carry out the Parties' Settlement is,

6   or may be construed as or may be used as, an admission by or against the Plaintiffs as to the

7   merits or lack thereof of the claims asserted by Plaintiffs.

8        3.      Defendant denies any liability or wrongdoing of any kind associated with the

9   claims alleged in Plaintiffs' complaint. Defendant contends, among other things, that at all times

10  it has fully complied with the California Government Code, and that Plaintiffs and similarly

11  situated employees were paid all wages owing to them under California law.

12       4.      The Parties have conducted significant discovery and investigation of the facts and

13  law both before and after the Action was filed. Such discovery and investigation have included,

14  *inter alia*, the exchange of information pursuant to extensive informal discovery, meetings and

15  conferences, two mediation sessions, and interviews of potential witnesses. Although formal

16  discovery was stayed, the Parties exchanged and analyzed extensive electronic data, including

17  information regarding Defendant's March 28, 2007 terminations which form the basis of

18  Plaintiffs' complaint, documents reflecting Defendant's relevant policies and procedures,

19  information relevant to the size and composition of the putative classes of former employees

20  alleged in the complaint, documents regarding the implementation of the March 28, 2007

21  terminations, and information relevant to the damages alleged in the complaint. The Parties each

22  hired experts to analyze employment data for class representatives and putative class members.

23  On April 21, 2008 and May 15, 2008, the Parties participated in mediation sessions with mediator

24  Antonio Piazza in San Francisco. The Parties subsequently reached a tentative agreement to settle

25  the case, agreed on the key terms of the tentative settlement, and continued to negotiate specific

26  terms of the settlement. The Parties now enter into this detailed, formalized settlement agreement

27  to submit to the Court for approval in accordance with their earlier tentative agreement.

28  ///

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

3

1        5.     For purposes of settling this lawsuit only, the Parties conditionally stipulate and

2   agree that the requisites for establishing class certification are met with respect to a single

3   "Settlement Class" as defined below, and stipulate to certification of this Settlement Class for

4   purposes of this settlement only.

5        6.    The Settlement Class shall be composed exclusively of "Class Members." A

6   "Class Member" shall be defined as follows:

7             All persons who were employed by Circuit City in California and
              who were at least forty (40) years of age as of March 28, 2007, and

8             whose employment with Circuit City was terminated on or about
              March 28, 2007 or shortly thereafter in relation to their wage rates.

9

10       7.     For purposes of this settlement only, the Parties further conditionally stipulate and

11  agree that:

12         a.     The members of the Settlement Class are so numerous as to make it

13  impracticable to join all Class Members.

14         b.     The Settlement Class is ascertainable.

15         c.     There are common questions of law and fact including, but not necessarily

16  limited to, the following:

17            1)     Whether the wage management initiative constitutes a

18  companywide decision and/or policy, which was applied throughout the State of California, in a

19  common scheme to terminate age-protected workers;

20            2)     Whether the Defendant's March 28, 2007 terminations had a

21  disparate impact on older workers in violation of the California Fair Employment and Housing

22  Act (Government Code section 12940 *et seq.*);

23            3)     Whether the Defendant had a valid business necessity defense that

24  would have barred liability even if the terminations did disparately impact older workers;

25            4)     Whether the implementation of the "wage management initiative"

26  had the purpose of discriminating against older workers;

27            5)     Whether Defendant engaged in the conduct alleged with malice,

28  fraud or oppression under California law.

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

4

1       d.      Plaintiffs' claims are typical of the claims of the members of the Settlement

2  Class.

3       e.      The deRubertis Law Firm and Allred, Maroko & Goldberg shall be deemed

4  "Class Counsel" and will fairly and adequately protect the interests of the Class Members.

5       f.      The prosecution of separate actions by individual members of the

6  Settlement Class would create the risk of inconsistent or varying adjudications, which would

7  establish incompatible standards of conduct.

8       g.      Questions of law and fact common to the members of the Settlement Class

9  predominate over questions affecting individual members of those classes, and a class action is

10  superior to other available means for the fair and efficient adjudication of the controversy.

11      8.      It is the desire of the Parties to fully, finally, and forever settle, compromise, and

12  discharge all disputes and claims that exist between them arising from or related to the lawsuit or

13  the Class Members' termination of employment in or about March of 2007 from Circuit City.  In

14  order to achieve a full and complete release of Defendant (and the Releasees as defined in

15  Paragraph 9) of such disputes and claims, each Class Member (which includes any legal heirs

16  and/or successors-in-interest of each Class Member), through execution of the Stipulation of

17  Settlement by the Class Representatives, acknowledges that this Stipulation of Settlement is

18  intended to include in its effect all claims arising from or related to the lawsuit or the Class

19  Members' termination of employment in or about March of 2007, exclusive only of claims the

20  Class Members may have under the related case of *Moncayo, et al. v. Circuit City*, Los Angeles

21  Superior Court Case No. BC368973, contained in this Settlement, including all claims set forth in

22  paragraph 28 of this Stipulation of Settlement, which each Class Member does not know or

23  suspect to exist in his or her favor against Defendant.  The Settlement Class, including Plaintiffs

24  and each Class Member, waives all rights and benefits afforded by section 1542 of the Civil Code

25  of the State of California with respect to such disputes and claims, and does so understanding the

26  significance of that waiver.  Section 1542 provides:

27      **A general release does not extend to claims which the creditor
        does not know or suspect to exist in his or her favor at the time**

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

5

1    **of executing the release, which if known by him or her must
have materially affected his or her settlement with the debtor.**

2

3    9.    It is the intention of the Parties that this Stipulation of Settlement shall constitute a

4    full and complete settlement and release all claims arising from or related to the lawsuit or the

5    Class Members' termination of employment in or about March of 2007, including, without

6    limitation, any and all claims under state and federal law for unpaid damages, penalties and

7    attorneys' fees arising from the Class Members' termination of employment in or about March of

8    2007, and, as encompassed by the class definition, exclusive only of claims the Class Members

9    may have under the related case of *Moncayo, et al. v. Circuit City*, Los Angeles Superior Court

10   Case No. BC368973, which release shall include in its effect Circuit City Stores, Inc., and each of

11   their present and former affiliates, parent companies, subsidiaries, shareholders, officers, partners,

12   directors, employees, agents, attorneys, insurers, predecessors, successors and assigns and each

13   and all of their respective officers, partners, directors, servants, agents, shareholders, employees,

14   representatives, accountants, insurers, and attorneys, past, present, and future, and all persons

15   acting under, by, through, or in concert with any of them (collectively, the "Releasees").

16   10.    Class Counsel has conducted a thorough investigation into the facts of the class

17   action, including an extensive review of relevant documents and electronic data, and has

18   diligently pursued an investigation of Class Members' claims against Defendant.  Prior to the

19   Parties' tentative agreement to settle this case, Class Counsel examined extensive data pertaining

20   to Class Members, including dates of employment and termination, data regarding Class

21   Members' age and compensation rates, documents regarding the March 28, 2007 terminations,

22   and Class Members' potential damages.  Based on the foregoing data, data developed during

23   discovery, and its own independent investigation and evaluation, Class Counsel is of the opinion

24   that this Settlement is fair, reasonable, and adequate, and is in the best interest of the Class

25   Members in light of all known facts and circumstances, including the risk of significant delay,

26   defenses asserted by Defendant to class certification and liability, and numerous potential

27   appellate issues.

28   ///

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

6

1      11.    The Parties agree to cooperate and to take all steps necessary and appropriate to

2  dismiss this action with prejudice after all payments described herein have been made.

3      12.    In order for Defendant to make payment to a Class Member, it is necessary for the

4  Class Member to provide certain information and confirm his or her identity and address. This

5  Settlement provides that Defendant will make payments of specified sums to every Class Member

6  who does not opt out of the Settlement and provides the information necessary to make payment

7  by submitting a timely Claim Form. This Settlement establishes a Maximum Class Payment from

8  which claims are paid, and establishes an individual entitlement for each Class Member who

9  provides the necessary information by submitting a valid, timely Claim Form.

10      13.    This Settlement provides for a "claims made" process requiring Defendant to make

11  a maximum payment of FIFTEEN MILLION DOLLARS ($15,000,000.00) that shall be referred

12  to herein as the "Maximum Payment." The Maximum Payment represents the maximum amount

13  that Defendant shall make toward the settlement of this action (except that Defendant shall also be

14  responsible for the employer's share of payroll taxes in addition to the Maximum Payment). The

15  Maximum Payment includes Class Counsel's attorneys' fees and costs, the enhancement

16  payments to the Class Representatives, and all costs of administration of this Settlement. Under

17  no circumstances shall Defendant be required to make any payment in excess of the Maximum

18  Payment.

19      14.    The Parties agree to work together expeditiously to obtain preliminary and final

20  approval of this Settlement. The parties agree that California Code of Civil Procedure section 384

21  is not applicable to this Settlement. Neither Plaintiffs nor Class Counsel shall take, or cause any

22  other person to take, a position before the Court that California Code of Civil Procedure section

23  384 applies to this Settlement.

24      15.    In the event that more than 10% of the Class Members exclude themselves from

25  the settlement by timely returning Request for Exclusion forms to the Claims Administrator,

26  Defendant may, at its sole option, rescind this Stipulation. In order to exercise its rights under

27  this paragraph, Defendant must give written notice to Class Counsel and to the Court no later than

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

7.

fifteen (15) days after the deadline for Class Members to submit Request for Exclusion forms to the Claims Administrator.

16.     The "Maximum Class Payment" will consist of the portion of the Maximum Payment remaining after subtraction of Court-approved attorneys' fees and costs, enhancement awards to Class Representatives, and costs of administration. The Parties estimate that the Maximum Class Payment will total approximately ELEVEN MILLION ONE HUNDRED FORTY THOUSAND DOLLARS ($11,140,000.00) if all fees, costs, and enhancements are approved by the Court.

17.     100% of the Maximum Class Payment shall be available for distribution to Class Members.

18.     Each Class Member who submits a valid, timely Claim Form shall be entitled to a share of the Class Payment based on the formula set forth below in paragraph 20(d).

19.     For tax purposes the Parties agree to allocate 25% of any amounts paid to Class Members as wages, and 75% to non-wages, reportable on IRS Form 1099, as required.

## TERMS OF SETTLEMENT

20.     NOW, THEREFORE, in consideration of the mutual covenants, promises, and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

a.     This lawsuit and any claims, damages, or causes of action arising out of the dispute which is the subject of this lawsuit, or related to the Class Members' termination of employment in or about March of 2007, shall be settled and compromised as between the Settlement Class and Defendant, subject to the terms and conditions set forth in this Stipulation of Settlement and the approval of the Superior Court of Los Angeles County. In the event that the Court does not execute and file the Order of Final Approval, or in the event that the Order of Final Approval does not become final for any reason, or in the event that this Settlement is modified in any material respect, or in the event that the Settlement Date, as defined herein, does not occur, this Stipulation of Settlement shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

8

1          b.      Settlement Date:  The Settlement embodied in this Stipulation of

2  Settlement shall go into effect upon entry of a final order by the Court certifying the class and

3  dismissing this action with prejudice in accordance with the terms herein, and approving this

4  Stipulation of Settlement.

5          c.      Initial Reductions from the Maximum Payment:

6          1)      Attorneys' Fees:  Subject to the Court's final approval, Defendant

7  agrees to Plaintiffs' request for an attorneys' fees award to Class Counsel in the amount of 25% of

8  the Maximum Payment (up to $3.75 million), in order to compensate and reimburse Class

9  Counsel for all of the work already performed by Class Counsel in this case, all of the work

10  remaining to be performed by Class Counsel in documenting the Settlement, securing Court

11  approval of the Settlement, making sure that the Settlement is fairly administered and

12  implemented, and obtaining dismissal of the action, as well as for all costs and expenses incurred

13  by Class Counsel.  Such a percentage fee is warranted considering, without limitation:  (1) the

14  time and labor required of Class Counsel in this matter; (2) the complexity involved and the

15  results obtained; (3) the potential contingent nature of the compensation; (4) the opportunity costs

16  to Class Counsel in the time the engagement has taken away from other potential matters; (5) the

17  recognized benchmark award of 30% by California and federal courts in similar class action

18  cases; and (6) the informed consent of the Class Representatives to a percentage fee award up to

19  33⅓%.  This attorneys' fee award shall be inclusive of costs advanced by Class Counsel to

20  prosecute this action.

21          2)      Administration Costs:  The Parties have selected Rosenthal &

22  Company as the "Claims Administrator" in this action.  Reasonable administration fees and costs

23  shall be paid to the Claims Administrator for work performed and expenses incurred in

24  administration of this Settlement; provided, however, that such administration costs shall not

25  exceed Fifty Thousand Dollars ($50,000.00).  All payments to the Claims Administrator shall be

26  deducted from the Maximum Payment subject to Court approval.

27          3)      Class Representative Enhancements:  Subject to Court approval,

28  Defendant agrees to Class Counsel's request for an enhancement award of Fifteen Thousand

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

9

1    Dollars ($15,000.00) each to Plaintiffs Daniel Weidler, Michael Yezback, Eloise Garcia, and

2    Angie Duron, for a total of Sixty Thousand Dollars ($60,000.00) in consideration for serving as

3    Class Representatives. The enhancement awards are in addition to the claim share to which the

4    Class Representatives are entitled along with other claiming Class Members.

5            d.    Payments to Class Members: In consideration for this Settlement and the

6    release of all claims of the Settlement Class against Defendant, Defendant agrees to pay to each

7    member of the Settlement Class who submits a valid, timely claim a share of the Maximum Class

8    Payment.

9        The Maximum Class Payment will be divided among the Class Members by a formula

10    based on the number of years of service prior to termination in or about March 2007. The

11    determination of each Class Member's years of service shall be made by the claims administrator

12    based on company records. Each Class Member shall automatically receive one (1) point (the

13    initial point). Then, for each five (5) years of service, a class member shall receive an additional

14    point. For example, a Class Member who worked two (2) years shall receive one (1) point total

15    (the initial point). A Class Member who worked seven (7) years shall receive two (2) points (the

16    initial point plus an additional point upon completing five (5) years of service).

17        At the conclusion of the claims period, the claims administrator shall determine the total

18    number of points attributable to valid, timely claims and the total number of points attributable to

19    Class Members who do not submit valid claims and/or opt-out. The claims administrator will

20    then divide the Maximum Class Payment by the total number of points attributed to all Class

21    Members, including those who did not submit a valid claim or opted out. This calculation will

22    result in a specific dollar value per point for all Class Members, regardless of whether the Class

23    Member submitted a claim or opted out.

24        Following the determination of the specific dollar value per point, the claims administrator

25    will deduct from the Maximum Class Payment the amount of dollars attributable to those Class

26    Members who do not submit valid, timely claims and/or opt-out. The remaining amount of the

27    Maximum Class Payment shall be distributed to the Class Members who submitted valid, timely

28    claims. Each Class Members' respective payment shall be calculated by multiplying the Class

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

10

1   Member's number of points by the dollar value per point.

2       21.    Treatment of Unclaimed Portions of Maximum Class Payment: To the extent that

3   any Class Member fails to make a claim, the portion of the Maximum Class Payment initially

4   allocated to that Class Member will remain the property of Defendant.

5       22.    Funding and Payout of Settlement:

6           a.    Settlement Funding Deadline: Within ten (10) business days of the

7   "Effective Date" of final approval by the Court, the Claims Administrator will notify Defendant

8   and Class Counsel of the actual amount to be paid under the Settlement, including the payment of

9   claims administration costs, all payments for Class Counsel's attorneys' fees and costs,

10  enhancement payments to the four Class Representatives, and the claims of all individual Class

11  Members. Within twenty (20) days of said notification, Defendant will transfer funds to the

12  Claims Administrator sufficient to make all such payments. The Effective Date of the Settlement

13  shall be the date of final approval if no objections are filed to the settlement. If objections are

14  filed and overruled, and no appeal is taken of the final approval order, then the Effective Date of

15  final approval shall be sixty-five (65) days after the trial court enters final approval. If an appeal

16  is taken from the Court's overruling of objections to the settlement, then the Effective Date of

17  final approval shall be twenty (20) days after the appeal is withdrawn or after an appellate

18  decision affirming the final approval decision becomes final.

19          b.    Settlement Payout Timetable: Within thirty (30) business days of the

20  "Effective Date" of final approval of the settlement, the Claims Administrator will pay all claims,

21  and Court-approved attorneys' fees, costs, and enhancement payments. No money will be

22  distributed unless and until the Effective Date of final approval occurs.

23      23.    Miscellaneous Provisions regarding Settlement Funds:

24          a.    Tax Treatment of Claim Share Portion of Settlement Payments: Of the

25  amount to be paid to Class Members, 25% is allocated to wages, and 75% to non-wages. The

26  Claims Administrator will be responsible for all required withholdings for portions of any

27  payments designated as wages. Each Class Member who receives a payment under this

28  Settlement will receive an IRS Form W-2 from the Claims Administrator for his or her portion of

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT                    11
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

1  the amount treated as wages and will be responsible for correctly characterizing this compensation

2  for tax purposes and for payment of any taxes owing on said amount. If required, each Class

3  Member will receive an IRS Form 1099 from the Claims Administrator for his or her portion of

4  the amount treated as interest or non-wage claims and will be responsible for correctly

5  characterizing this compensation for tax purposes and for payment of any taxes owing on said

6  amount.

7          b.     Tax Treatment of Class Representative Enhancement Award: Class

8  Representatives will receive an IRS Form 1099 for their individual enhancement award, and will

9  be responsible for correctly characterizing this additional compensation for tax purposes and for

10  the payment of any taxes owing on said amount.

11          c.     Resolution of Disputes Relating To Amount of Claim to be Paid to Class

12  Member: A "Qualified Claimant" will be defined as an individual in the Settlement Class who

13  timely submits a Claim Form signed under the penalty of perjury. If a Qualified Claimant timely

14  disputes Defendant's records (on a Claim Form) as to the dates that he or she met the definition of

15  a Class Member, or as to the proper size of his or her claim, the Parties' counsel will make a good

16  faith effort to resolve the dispute informally. If they cannot agree, the dispute shall be submitted

17  to the Claims Administrator, who shall examine Defendant's records and make a good faith

18  determination, which determination shall be final.

19          d.     Right to Rescission: Notwithstanding any other provision of this

20  Stipulation of Settlement, Defendant shall retain the right, in the exercise of its sole discretion, to

21  nullify the settlement within fifteen (15) days of expiration of the opt-out deadline, if more than

22  10% of the Class Members opt out of the settlement by timely submitting Request for Exclusion

23  forms. In the event of such a rescission, no party may use the fact that the Parties agreed to settle

24  this case as evidence of Defendant's liability in this lawsuit or the lack thereof. All signatories

25  and their counsel must not encourage opt-outs. Class Counsel and Class Representatives

26  specifically agree not to solicit opt-outs, directly or indirectly, through any means.

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

12

1          **NOTICE TO THE PLAINTIFF CLASS**

2          24.     The Parties agree that within ten (10) days after preliminary approval of this

3    settlement agreement, Defendant will provide to the Claims Administrator all of the following

4    information about each Class Member in a format requested by the Claims Administrator:

5    (1) name; (2) last known home address; (3) Social Security number; (4) the dates of employment

6    of each Class Member. The Claims Administrator will perform address updates and verifications

7    as necessary prior to the first mailing. Within twenty (20) days after preliminary approval, and

8    subject to the approval of the Court, the Claims Administrator will mail a Notice of Proposed

9    Class Action Settlement ("Notice") in the form attached hereto as Exhibit "A" to each Class

10   Member, by first class mail. Attached to the Notice will be a Claim Form and Request for

11   Exclusion Form, in the forms attached hereto as Exhibits "B" and "C," respectively.

12         **CLAIM PROCESS**

13         25.     Class Members will be permitted no more than forty-five (45) days from the date

14   the notices are mailed by the Claims Administrator to postmark or fax Claim Forms back to the

15   Claims Administrator. Class Members will also have forty-five (45) days from the date the

16   Notices are mailed by the Claims Administrator to postmark objections and/or Requests For

17   Exclusion. The Claims Administrator will perform two skip-traces on returned mail and re-mail

18   claim forms to an updated address (if any) within fifteen (15) business days of receipt of the

19   returned mail. It is the intent of the Parties that reasonable means be used to locate Class

20   Members. Any portion of the Maximum Class Payment not timely claimed shall be retained by

21   Defendant.

22         26.     Within five (5) business days of receipt by the Claims Administrator of each timely

23   submitted Claim Form, the Claims Administrator will send a deficiency notice to the Class

24   Member for any irregularities in the completed Claim Form. The deficiency notice will provide

25   the Class Members no more than fifteen (15) days from the mailing of the deficiency notice to

26   postmark the response to any deficiencies in writing. The failure of a Class Member to execute a

27   Claim Form under penalty of perjury, timely submit a claim form, or timely submit a response to

28   any deficiency notice shall invalidate a claim and will not be considered deficiencies subject to

JOINT STIPULATION OF SETTLEMENT         13
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

1    cure, unless counsel for both of the Parties stipulate to allow cure.

2          27.    All original Claim Forms shall be sent or faxed directly to the Claims

3    Administrator at the address indicated on the Claim Form. Defendant has made a good faith

4    effort to identify all class members and will provide a detailed list of such class members to the

5    Claims Administrator on an Excel spreadsheet or in such other format as requested by the Claims

6    Administrator. The Claims Administrator will certify jointly to Class Counsel and Defendant's

7    counsel which claims were timely filed. The Claims Administrator shall be responsible for

8    calculating the payment to each Class Member, issuing checks, withholding of all required state

9    and federal taxes, and mailing the payments. Upon completion of the claims period, the Claims

10   Administrator shall provide Plaintiffs and Defendant with a report listing the amount of all

11   payments to be made to each Qualified Claimant. Proof of payment will be filed with the Court

12   and provided to the Parties' counsel.

13                                **RELEASE BY THE CLASS**

14         28.    Upon final approval by the Court, the Settlement Class, and each Class Member

15   who has not submitted a valid Request For Exclusion form, will release Circuit City, and each of

16   their present and former affiliates, parent companies, subsidiaries, shareholders, officers, partners,

17   directors, employees, agents, attorneys, insurers, predecessors, successors and assigns and each

18   and all of their respective officers, partners, directors, servants, agents, shareholders, employees,

19   representatives, accountants, insurers, and attorneys, past, present, and future, and all persons

20   acting under, by, through, or in concert with any of them (collectively, the "Releasees"), from any

21   and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees,

22   damages, action, or causes of action, contingent or accrued, that relate to the Class Members'

23   termination of employment in or about March of 2007 from Circuit City, exclusive only of claims

24   the Class Members may have under the related case of *Moncayo, et al. v. Circuit City*, Los

25   Angeles Superior Court Case No. BC368973, under any federal, state, or local law, including

26   without limitation: allegations of discrimination, wrongful termination, harassment, retaliation,

27   the nonpayment of wages under any federal, state, or local law; allegations of the failure to pay

28   penalties under the California Labor Code (including without limitation penalties under Labor

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS                                   14

1   Code sections 203 and 226); or any other termination related allegations that could have been

2   alleged in or that arise from the complaint, including without limitation all claims arising under

3   the FLSA, the California Labor Code or Business and Professions Code (including section

4   17200), or the IWC Wage Orders, claims for restitution and other equitable relief, conversion,

5   liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever,

6   retirement, health benefits, stock options, stock deferred compensation benefits, or any other

7   benefit claimed on account of unpaid wages, whether known or unknown, and all attendant

8   attorneys' fees and costs, arising therefrom.

9        29.    Upon final approval by the Court, the Settlement Class and each Class Member

10  who has not submitted a valid Request For Exclusion form will expressly waive any and all rights

11  they may have under the Older Workers Benefits Protection Act (OWBPA). This Agreement is

12  intended to satisfy the requirements of the Older Workers' Benefit Protection Act, 29 U.S.C.

13  § 626(f) and to effectuate the release by the Settlement Class, and each Class Member who has

14  not submitted a valid Request For Exclusion form, of any potential claims under the Federal Age

15  Discrimination in Employment Act. The release of such potential claims shall not become

16  effective or enforceable until the eighth day after the deadline for submitting a Claim Form

17  ("Enforceable Date"). In other words, any Class Member who submits a Claim Form may revoke

18  their claim within seven (7) days of the expiration of the claims period, which ends on DATE. In

19  order to be effective, a revocation must be in writing and received by the Claims Administrator,

20  by 5:00 p.m. not later than the seventh day after the end of the claims period. Class Members are

21  advised to consult with Class Counsel or another attorney regarding this Settlement. This

22  Settlement does not waive or release any rights or claims that any Class Member may have under

23  the Age Discrimination in Employment Act that arise after the date of final approval by the Court.

24       Plaintiffs acknowledge and agree that they have read and understand the terms and

25  conditions of this Agreement; that they understand that by entering into this Agreement, the

26  Settlement Class is giving up potentially valuable legal rights and intends to be bound by all the

27  terms and conditions set forth herein; that the Settlement Class is entering into this Agreement

28  freely, knowingly and voluntarily; that this Agreement advised them in writing that they may

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS                              15

1   consult with an attorney before executing this Agreement, if desired; that they have obtained and

2   considered such legal counsel as she deems necessary.

3   ### DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

4        30.    The Parties shall promptly submit this Stipulation of Settlement to the Court in

5   support of a request for preliminary approval and determination by the Court as to its fairness,

6   adequacy, and reasonableness.  Promptly upon execution of this Stipulation of Settlement, the

7   Parties shall apply to the Court for the entry of a preliminary order substantially in the following

8   form:

9        a.    Scheduling a fairness hearing on the question of whether the proposed

10   settlement, including payment of attorneys' fees and costs, claims administration costs, and the

11   Class Representatives' enhancement awards, should be finally approved as fair, reasonable, and

12   adequate as to the members of the Class;

13        b.    Certifying the Class for purposes of settlement;

14        c.    Certifying this action under California Code of Civil Procedure section 382

15   and California Rules of Court, rule 3.760 *et seq.* as a class action for purposes of settlement;

16        d.    Approving as to form and content the proposed Notice;

17        e.    Approving as to form and content the proposed Claim Form;

18        f.    Approving as to form and content the proposed Request for Exclusion

19   form;

20        g.    Directing the mailing of the Notice, Claim Form and Request for Exclusion

21   form by first class mail to the Class Members;

22        h.    Preliminarily approving the settlement subject only to the objections of

23   Class Members and final review by the Court;

24        i.    Preliminarily approving Class Counsel's attorneys' fees and costs subject

25   to final review of the Court;

26        j.    Preliminarily approving Class Representatives' enhancement awards

27   subject to final review of the Court;

28        k.    Preliminarily approving the payment of fees and costs to the Claims

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

16

1   Administrator for administration of this Settlement, subject to final review of the Court.

## DUTIES OF THE PARTIES FOLLOWING FINAL APPROVAL

3     31.    Following final approval of the settlement provided for in this Stipulation of

4   Settlement, Class Counsel will submit a proposed final order:

5         a.    Approving the Settlement, adjudging the terms thereof to be fair,

6   reasonable, and adequate, and directing consummation of its terms and provisions;

7         b.    Approving the award of attorneys' fees and costs to Class Counsel;

8         c.    Approving the enhancement award to Plaintiffs;

9         d.    Approving the payment of fees and costs of administration to the Claim

10   Administrator; and

11         e.    Dismissing this Action on the merits and with prejudice and permanently

12   barring all members of the Settlement Class from prosecuting against Releasees, any individual or

13   class claims arising out of the acts, facts, transactions, occurrences, representations, or omissions

14   set forth in the lawsuit, that were or could have been asserted in the Action, through the date of

15   the final approval of this Settlement upon satisfaction of all payments and obligations hereunder.

## PARTIES' AUTHORITY

17     32.    The signatories hereto hereby represent that they are fully authorized to enter into

18   this Stipulation of Settlement and bind the Parties hereto to the terms and conditions hereof.

## MUTUAL FULL COOPERATION

20     33.    The Parties agree to fully cooperate with each other to accomplish the terms of this

21   Stipulation of Settlement, including but not limited to, execution of such documents and to take

22   such other action as may reasonably be necessary to implement the terms of this Stipulation of

23   Settlement. The Parties to this Stipulation of Settlement shall use their best efforts, including all

24   efforts contemplated by this Stipulation of Settlement and any other efforts that may become

25   necessary by order of the Court, or otherwise, to effectuate this Stipulation of Settlement and the

26   terms set forth herein. As soon as practicable after execution of this Stipulation of Settlement,

27   Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all

28   necessary steps to secure the Court's final approval of this Stipulation of Settlement.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

17

### NO PRIOR ASSIGNMENTS

34.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

### NO ADMISSION

35.  Nothing contained herein, nor the consummation of this Stipulation of Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. Each of the Parties hereto has entered into this Stipulation of Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

### CONSTRUCTION

36.  The Parties hereto agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive arms-length negotiations between the Parties, and that this Stipulation of Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Stipulation of Settlement.

### CAPTIONS AND INTERPRETATIONS

37.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation of Settlement or any provision hereof. Each term of this Stipulation of Settlement is contractual and not merely a recital.

### MODIFICATION

38.  This Stipulation of Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Stipulation of Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

18

1    **INTEGRATION CLAUSE**

2        39.    This Stipulation of Settlement contains the entire agreement between the Parties

3    relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous

4    agreements, understandings, representations, and statements, whether oral or written, and whether

5    by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived

6    except in writing.

7    **BINDING ON ASSIGNS**

8        40.    This Stipulation of Settlement shall be binding upon and inure to the benefit of the

9    Parties hereto and their respective heirs, trustees, executors, administrators, successors, and

10   assigns.

11   **SIGNATORIES**

12       41.    It is agreed that because of the large number of Class Members, it is impossible or

13   impractical to have each Class Member execute this Stipulation of Settlement.  The Notice

14   (Exhibit "A" hereto) will advise all Class Members of the binding nature of the release and such

15   shall have the same force and effect as if this Stipulation of Settlement were executed by each

16   member of the Class.

17   **PUBLIC COMMENT**

18       42.    All of the Parties and their counsel agree that they shall not share or have any

19   communications with any member of the media other than to say that "the matter has been

20   resolved to the mutual satisfaction of the Parties."

21   **NO RETALIATION BY DEFENDANT**

22       43.    Defendant shall not take any adverse employment action or otherwise target,

23   retaliate, or discriminate against any of the Plaintiffs or Class Members by reason of the fact that

24   any of them:  (a) instituted or in any way participated in this Action, or (b) elects or indicates an

25   intention to participate or not to participate in the Settlement memorialized in this Stipulation of

26   Settlement or any order entered by the Court approving its terms.

27

28

PAUL, PLEVIN,        JOINT STIPULATION OF SETTLEMENT                    19
SULLIVAN &          AGREEMENT AND RELEASE OF CLASS
CONNAUGHTON LLP     ACTION CLAIMS

1                              **COUNTERPARTS**

2      44.    This Stipulation of Settlement may be executed in counterparts, and when each

3 party has signed and delivered at least one such counterpart, each counterpart shall be deemed an

4 original, and, when taken together with other signed counterparts, shall constitute one Stipulation

5 of Settlement, which shall be binding upon and effective as to all Parties.

6 DATED: _____     CIRCUIT CITY STORES, INC.

7

8                                 By: _____

9                                   NAME
                                  Title *Senior VP, General Counsel + Secy*

10

11 DATED: _____     PAUL, PLEVIN, SULLIVAN &
                                  CONNAUGHTON LLP

12

13                                   By: _____

14                                     E. JOSEPH CONNAUGHTON
                                    JEFFREY P. AMES

15                                     Attorneys for Defendant
                                    CIRCUIT CITY STORES, INC.

16

17 DATED: _____

18                                  DANIEL E. WEIDLER

19

20 DATED: _____
                                 MICHAEL F. YEZBACK

21

22 DATED: _____
                                 ELOISE GARCIA

23

24 DATED: _____

25                                ANGIE DURON

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

20

1                             **COUNTERPARTS**

2        44.     This Stipulation of Settlement may be executed in counterparts, and when each

3 party has signed and delivered at least one such counterpart, each counterpart shall be deemed an

4 original, and, when taken together with other signed counterparts, shall constitute one Stipulation

5 of Settlement, which shall be binding upon and effective as to all Parties.

6 DATED: _____      CIRCUIT CITY STORES, INC.

7

8                                     By: _____
                                    NAME

9                                     Title Senior VP, General Counsel + Secy

10

11 DATED: _SEPT 17, 2008_       PAUL, PLEVIN, SULLIVAN &
                                    CONNAUGHTON LLP

12

13                                     By: _____

14                                     E. JOSEPH CONNAUGHTON
                                    JEFFREY P. AMES

15                                     Attorneys for Defendant
                                    CIRCUIT CITY STORES, INC.

16

17 DATED: _____      _____
                                    DANIEL E. WEIDLER

18

19

20 DATED: _____      _____
                                    MICHAEL F. YEZBACK

21

22 DATED: _____      _____
                                    ELOISE GARCIA

23

24 DATED: _____      _____
                                    ANGIE DURON

25

26

27

28

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS             20

### COUNTERPARTS

44.   This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: 9/17/08

CIRCUIT CITY STORES, INC.

By: _____
NAME _____
Title Senior VP, General Counsel – Secy

DATED: SEPT 17, 2008

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: _____
E. JOSEPH CONNAUGHTON
JEFFREY P. AMES
Attorneys for Defendant
CIRCUIT CITY STORES, INC.

DATED: 9/19/08

_____
DANIEL E. WEIDLER

DATED: _____

_____
MICHAEL F. YEZBACK

DATED: _____

_____
ELOISE GARCIA

DATED: _____

_____
ANGIE DURON

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

20

## COUNTERPARTS

44.    This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: _____              CIRCUIT CITY STORES, INC.

                                      By: _____
                                      NAME
                                      Title Senior VP, General Counsel + Secy

DATED: SEPT 17, 2008                  PAUL, PLEVIN, SULLIVAN &
                                      CONNAUGHTON LLP

                                      By: _____
                                      E. JOSEPH CONNAUGHTON
                                      JEFFREY P. AMES
                                      Attorneys for Defendant
                                      CIRCUIT CITY STORES, INC.

DATED: _____              _____
                                      DANIEL E. WEIDLER

DATED: 9/19/08                        _____
                                      MICHAEL E. YEZBACK

DATED: _____              _____
                                      ELOISE GARCIA

DATED: _____              _____
                                      ANGIE DURON

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

20

COUNTERPARTS

44.  This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

DATED: _____          CIRCUIT CITY STORES, INC.

By: _____

NAME _____
Title: Senior VP, General Counsel + Secy

DATED: SEPT 17, 2008          PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: _____
E. JOSEPH CONNAUGHTON
JEFFREY P. AMES
Attorneys for Defendant
CIRCUIT CITY STORES, INC.

DATED: _____          _____
DANIEL E. WEIDLER

DATED: _____          _____
MICHAEL F. YEZBACK

DATED: 7/19/08          _____
ELOISE GARCIA

DATED: _____          _____
ANGIE DURON

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

JOINT STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE OF CLASS
ACTION CLAIMS

20

<u>COUNTERPARTS</u>

44.    This Stipulation of Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon, and effective as to all Parties.

DATED: _____        CIRCUIT CITY STORES, INC.

By: _____
NAME _____
Title Senior VP, General Counsel ~ Secry

DATED: SEPT 17, 2008        PAUL, PLEVIN, SULLIVAN &
                            CONNAUGHTON LLP

By: _____
E. JOSEPH CONNAUGHTON
JEFFREY P. AMES
Attorneys for Defendant
CIRCUIT CITY STORES, INC.

DATED: _____        _____
                              DANIEL E. WEIDLER

DATED: _____        _____
                              MICHAEL F. YEZBACK

DATED: _____        _____
                              ELOISE GARCIA

DATED: 9/19/08        _____
                      ANGIE DUKOR

1  DATED: _9 - 18 - 08_

2                                    ALLRED, MAROKO & GOLDBERG

3                                    By: _____

4                                        NATHAN GOLDBERG
                                         Attorneys for Plaintiffs
5

6  DATED: _9/22/08_

7                                    THE deRUBERTIS LAW FIRM

8                                    By: _____

9                                        DAVID deRUBERTIS
                                         Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,          JOINT STIPULATION OF SETTLEMENT          21
SULLIVAN &             AGREEMENT AND RELEASE OF CLASS
CONNAUGHTON LLP        ACTION CLAIMS

## EXHIBIT B

**(Preliminary Approval Order)**

1 | Nathan Goldberg, State Bar No. 61292
Michael Maroko, State Bar No. 62013
2 | **ALLRED, MAROKO & GOLDBERG**
6300 Wilshire Boulevard, Suite 1500
3 | Los Angeles, California 90048
Telephone:   (323) 653-6530
4 | Facsimile:   (323) 653-1660

**FILED**
LOS ANGELES SUPERIOR COURT

SEP 25 2008

JOHN A. CLARKE, CLERK

BY ELMER SABALBURO, DEPUTY

5 | David M. deRubertis, State Bar No. 208709
**The deRubertis Law Firm**
6 | 21800 Oxnard Street, Suite 1180
Woodland Hills, California 91367
7 | Telephone:   (818) 227-8605
Facsimile:   (818) 227-8616
8 | Email: David@deRubertisLaw.com

9 | Attorneys for Plaintiffs Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, and
Angie Duron, individually and on behalf of a class of all
10 | similarly-situated individuals

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 | **FOR THE COUNTY OF LOS ANGELES**

13 | **CENTRAL CIVIL WEST**

14 | DANIEL E. WEIDLER, MICHAEL F. YEZBACK,   ) Case No.: BC 369 011
ELOISE GARCIA, ANGIE DURON, individually and   ) [Assigned to Hon. Victoria Chaney,
15 | on behalf of a class of all similarly-situated individuals,   ) Dept. 324, Civil Central
) West–Complex Designation]
16 |                                 Plaintiffs,   ) [Related to Case Nos. BC 368973 and
) BC 389968]
17 |          v.   )
) [~~PROPOSED~~] ORDER
18 |   ) **GRANTING PRELIMINARY**
) **APPROVAL OF CLASS ACTION**
19 | CIRCUIT CITY STORES, INC.; and DOES 1 through   ) **SETTLEMENT, PROVISIONAL**
100, inclusive,   ) **CERTIFICATION OF CLASS**
) **FOR SETTLEMENT PURPOSES,**
20 |                                 Defendants.   ) **APPROVAL OF NOTICE, AND**
) **SETTING OF FINAL FAIRNESS**
21 |   ) **HEARING**
)
22 |   ) Date: September 25, 2008
23 |   ) Time: 9:00 a.m.
) Dept.: 324
24 |   )
) Complaint Filed: April 4, 2007
25 |   )
)
26 |   )
)
27 |   )
28 |

1

1    The motion of Plaintiffs Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, and Angie

2    Duron, on behalf of the Settlement Class as defined below, for an order granting preliminary

3    approval of class action settlement came on for hearing on September 25, 2008 at 9:00 a.m. in

4    Department 324 of the above-entitled Court, the Honorable Judge Victoria G. Chaney, presiding.

5    The Court having considered the motion and all submissions in connection with the proposed

6    settlement and argument of counsel at the hearing, and having concluded that it has jurisdiction to

7    adjudicate the issues raised and thus to provide relief, IT IS HEREBY ORDERED THAT:

8

9    JURISDICTION:

10    1.    The Court has jurisdiction over the subject matter and all parties to this action,

11    including the Settlement Class.

12

13    PLAINTIFF AND SETTLEMENT CLASS:

14    2.    The Court orders the certification of this litigation as a class action for settlement

15    purposes only.  The certified "Settlement Class" consists of: All persons who were employed by

16    Circuit City in California and who were at least forty (40) years of age as of March 28, 2007, and

17    whose employment with Circuit City was terminated on or about March 28, 2007 or shortly

18    thereafter in relation to their wage rates.

19    3.    The Court orders the appointment of Daniel E. Weidler, Michael F. Yezback, Eloise

20    Garcia, and Angie Duron as the Class Representatives.

21    4.    The Court orders the appointment of Nathan Goldberg and Michael Maroko of

22    Allred, Maroko & Goldberg and David M. deRubertis of The deRubertis Law Firm as co-class

23    counsel.

24    5.    The Court has not certified the Settlement Class for any purpose other than to

25    effectuate the Settlement Agreement, to which the parties have consented on the condition that it

26    receives final approval.  If this Settlement Agreement is terminated pursuant to its terms or if it is not

27    otherwise approved, this order conditionally certifying the Settlement Class shall be treated as void

28    *ab initio* and automatically vacated *nunc pro tunc* upon written notice to the Court.  The litigation

PROPOSED ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    shall then proceed as if the Court had never conditionally certified the Settlement Class and such

2    findings in paragraphs 2 through 4 had never been made, without prejudice to the ability of any party

3    to request or oppose class certification on any basis.

4         6.    The Court finds that preliminary approval of the Settlement Agreement is appropriate

5    because its terms appear to be fair, reasonable and adequate to the Settlement Class.

6         7.    The Court approves the Notice of Proposed Class Action Settlement, substantially in

7    the form and content of Exhibit "B" to the Declaration of David M. deRubertis filed in support of the

8    motion for preliminary approval.  The Court finds that this is the best notice practicable to the

9    Settlement Class under the circumstances and constitutes valid notice to its members.  The Court

10   further approves the Claim Form and Request for Exclusion from Class Action Settlement,

11   substantially in the form and content of Exhibits "C" and "D" respectively to the Declaration of

12   David M. deRubertis filed in support of the motion for preliminary approval.

13        8.    Within ten (10) days of preliminary approval, Defendant shall supply the claims

14   administrator with the name, last known address, social security number and dates of employment of

15   each class member.  Within twenty (20) days after preliminary approval, the claims administrator

16   shall mail the approved Notice of Proposed Class Action Settlement as well as the Claim Forms and

17   Request for Exclusion forms.

18        9.    Class members shall have forty-five (45) days from the date of mailing to postmark or

19   return by facsimile either their Claim Form or opt-out notice.

20        10.    If the Settlement Agreement receives final Court approval, the final judgment will be

21   res judicata and prohibit any prior, concurrent, or subsequent litigation brought individually, by, or in

22   the name of, or otherwise on behalf of any member of the Settlement Class against Defendant related

23   to or arising out of the Class Members' termination of employment by Defendant on or about March

24   28, 2007, ~~in relation to their wage rate.~~ UGC 9/25/08  Full effect will be given to the terms of the release contained

25   in the Settlement Agreement except as to any Class Member who validly opts-out.

26        11.    If the Settlement Agreement does not receive final Court approval, is terminated, or

27   fails to become effective in accordance with its terms, the parties shall be restored to their respective

28   positions in litigation as of the entry date of that agreement.  In such event, the terms and conditions

~~PROPOSED~~ ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    of the Settlement Agreement shall have no further force and effect on the parties and shall not be

2    used in this litigation or in any other proceeding for any purpose, and any judgment or order entered

3    by this Court in accordance with the terms of the Settlement Agreement shall be treated void *ab*

4    *initio* and vacated *nunc pro tunc*.

5       12.     The Court will determine whether the Settlement Agreement will receive final

6    approval at the Final Fairness Hearing on ___12__/_12__/_0 8_ at _10_ _ _.m.

7          a.     __3__ days before the date of the Final Fairness Hearing, Plaintiffs shall file

8                  with the Court moving papers in support of final approval of the Settlement

9                  Agreement and a request for attorney's fees/costs.

10         b.     The Court will hear Class Member objections to the proposed settlement (if

11                 any) at the Final Fairness Hearing if the objecting Class Member files a

12                 written statement with the Court, and serves such written statement on counsel

13                 for the parties, no later than forty-five (45) days after the date the Notice of

14                 Proposed Class Action Settlement is mailed.

15       13.     The provisions of this order for the Preliminary Approval of Class Action Settlement

16    are stipulated to and entered as a result of a compromised settlement of disputed claims.  Thus,

17    nothing contained herein shall be construed at any time or in any forum as an admission or finding,

18    express or implied, of any fault, liability or wrongdoing by any party.

19

20      IT IS HEREBY ORDERED, ADJUDGED AND DECREED.

21

22    Dated: _9_/_25_/_08_

23                   The Honorable Victoria G. Chaney
                     Judge of the Los Angeles Superior Court

24

25

26

27

28

~~PROPOSED~~ **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## EXHIBIT C

**(Approval Order)**

1 | Nathan Goldberg, State Bar No. 61292
Michael Maroko, State Bar No. 62013
2 | **ALLRED, MAROKO & GOLDBERG**
6300 Wilshire Boulevard, Suite 1500
3 | Los Angeles, California 90048
Telephone:    (323) 653-6530
4 | Facsimile:    (323) 653-1660

5 | David M. deRubertis, State Bar No. 208709
**The deRubertis Law Firm**
6 | 21800 Oxnard Street, Suite 1180
Woodland Hills, California 91367
7 | Telephone:    (818) 227-8605
Facsimile:    (818) 227-8616
8 | Email: David@deRubertisLaw.com

9 | Attorneys for Plaintiffs Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, and
Angie Duron, individually and on behalf of a class of all
10 | similarly-situated individuals

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 | **FOR THE COUNTY OF LOS ANGELES**

13 | **CENTRAL CIVIL WEST**

14 | DANIEL E. WEIDLER, MICHAEL F. YEZBACK,
ELOISE GARCIA, ANGIE DURON, individually and
15 | on behalf of a class of all similarly-situated individuals,

16 | Plaintiffs,

17 | v.

18 |
CIRCUIT CITY STORES, INC.; and DOES 1 through
19 | 100, inclusive,

20 | Defendants.

21 |

22 |

23 |

24 |

| | |
|---|---|
| ) Case No.: BC 369 011 | |
| ) [Assigned to Hon. Victoria Chaney, Dept. 324, Civil Central West–Complex Designation] | |
| ) [Related to Case Nos. BC 368973 and BC 389968] | |
| ) **NOTICE OF RULING ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGEMENT** | |
| ) Date: December 12, 2008 | |
| ) Time: 10:00 a.m. | |
| ) Dept.: 324 | |
| ) Complaint Filed: April 4, 2007 | |

25 | On December 12, 2008, Plaintiffs' Motion for Final Approval of Class Action Settlement and

26 | Final Judgment came on for hearing in Department 324, Central Civil West, the Honorable Victoria

27 | G. Chaney, presiding.  David deRubertis of The deRubertis Law Firm and Nathan Goldberg and

28 |

**NOTICE OF RULING ON GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FINAL JUDGMENT**

1  Gloria Allred of Allred, Maroko & Goldberg appeared for plaintiffs.  E. Joseph Connaughton of

2  Paul, Plevin, Sullivan & Connaughton LLP appeared for defendant.

3          At that hearing, the Court granted final approval and issued the Order attached to this Notice

4  as Exhibit "A."

5

6  DATED:  December 26, 2008                    **Allred, Maroko & Goldberg**

7                                              **The deRubertis Law Firm**

8

9                                              By_____
                                                    David M. deRubertis, Esq.
10                                                  Attorneys for Plaintiffs
                                                    Daniel E. Weidler, Michael F. Yezback and
11                                                  Eloise Garcia, Angie Duron individually and on
                                                    behalf of a class of all similarly-situated
12                                                  individuals

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF RULING ON GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FINAL JUDGMENT**

# EXHIBIT "A"

1  Nathan Goldberg, State Bar No. 61292
   Michael Maroko, State Bar No. 62013
2  **ALLRED, MAROKO & GOLDBERG**
   6300 Wilshire Boulevard, Suite 1500
3  Los Angeles, California 90048
   Telephone:   (323) 653-6530
4  Facsimile:   (323) 653-1660

5  David M. deRubertis, State Bar No. 208709
   **The deRubertis Law Firm**
6  21800 Oxnard Street, Suite 1180
   Woodland Hills, California 91367
7  Telephone:   (818) 227-8605
   Facsimile:   (818) 227-8616
8  Email: David@deRubertisLaw.com

9  Attorneys for Plaintiffs Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, and
   Angie Duron, individually and on behalf of a class of all
10 similarly-situated individuals

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                    **FOR THE COUNTY OF LOS ANGELES**

13                          **CENTRAL CIVIL WEST**

14 DANIEL E. WEIDLER, MICHAEL F. YEZBACK,      ) Case No.: BC 369 011
   ELOISE GARCIA, ANGIE DURON, individually and ) [Assigned to Hon. Victoria Chaney,
15 on behalf of a class of all similarly-situated individuals, ) Dept. 324, Civil Central
                                                ) West–Complex Designation]
16                              Plaintiffs,      ) [Related to Case Nos. BC 368973 and
                                                ) BC 389968]
17           v.                                  )
                                                ) [~~PROPOSED~~] ORDER
18                                              ) **GRANTING FINAL APPROVAL**
   CIRCUIT CITY STORES, INC.; and DOES 1 through ) **OF CLASS ACTION**
19 100, inclusive,                              ) **SETTLEMENT AND FINAL**
                                                ) **JUDGMENT**
20                              Defendants.      )
                                                ) Date: December 12, 2008
21                                              ) Time: 10:00 a.m.
                                                ) Dept.: 324
22                                              )
                                                ) Complaint Filed: April 4, 2007
23                                              )
                                                )
24 _____

25
26     The motion of Plaintiffs Daniel E. Weidler, Michael F. Yezback, Eloise Garcia, and Angie
   Duron, on behalf of the Settlement Class as defined below, for an order granting final approval of
27
   the class action settlement came on for hearing on December 12, 2008 at 10:00 a.m. in Department
28

**FILED**
LOS ANGELES SUPERIOR COURT

**DEC 12 2008**

JOHN A. CLARKE, CLERK
BY ELMER SABALBURO, DEPUTY

1

1    324 of the above-entitled Court, the Honorable Judge Victoria G. Chaney, presiding.  After

2    reviewing all the papers submitted in connection with the motion, the oral argument of counsel, and

3    good cause having been shown thereby, IT IS HEREBY ORDERED:

4         1.    The Court has jurisdiction over the subject matter and all parties to this action,

5    including the Settlement Class;

6         2.    The Court hereby grants final approval of the Settlement on the terms stated in the

7    in the Joint Stipulation of Settlement Agreement and Release of Class Action Claims, subject to the

8    further administration of said settlement in the bankruptcy proceeding.  The Court finds that the

9    terms are fair, reasonable and adequate pursuant to California Code of Civil Procedure section 382;

10        3.    The Court hereby certifies a class for settlement purposes consisting of: All persons

11   who were employed by Circuit City in California and who were at least forty (40) years of age as of

12   March 28, 2007, and whose employment with Circuit City was terminated on or about March 28,

13   2007 or shortly thereafter;

14        4.    The Court orders the appointment of Daniel E. Weidler, Michael F. Yezback, Eloise

15   Garcia, and Angie Duron as the Class Representatives;

16        5.    The Court orders the appointment of Nathan Goldberg and Michael Maroko of

17   Allred, Maroko & Goldberg and David M. deRubertis of The deRubertis Law Firm as co-class

18   counsel;

19        6.    The Court approves claims administration costs of CPT Group, Inc. in an amount not

20   less than $13,000 and not to exceed $50,000 from the settlement funds, the final amount to be

21   determined after CPT Group, Inc. determines what additional work must be done to administer the

22   settlement through the Bankruptcy Court;

23        7.    The Court hereby awards incentive payments of $15,000 to be paid to each named

24   Plaintiff from the settlement funds;

25        8.    The Court hereby awards Plaintiffs' counsel, Allred, Maroko & Goldberg and The

26   deRubertis Law Firm, attorneys' fees and costs of 25% of the maximum settlement fund in the

27   amount of $3,750,000.

28

2

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FINAL JUDGMENT

1      9.    The Court hereby dismisses Plaintiffs' claims against Defendants with prejudice.

2      10.    The Court hereby orders that class members who did not timely exclude themselves

3 from the settlement have released their claims against Defendants as set forth in the Joint Stipulation

4 of Settlement Agreement and Release of Class Action Claims.

5      11.    The Court hereby directs that the Clerk of the Court enter the Court's order as a final

6 judgment; and,

7      12.    The Court hereby orders that, without affecting the finality of the final judgment, it

8 reserves continuing jurisdiction over the parties for purposes of implementing, enforcing and/or

9 administering the Settlement or enforcing the terms of the Judgment but only to the extent that such

10 action is so ordered or permitted by the United States Bankruptcy Court Eastern District of Virginia

11 (Richmond Division).

12      IT IS HEREBY ORDERED, ADJUDGED AND DECREED.

13

14 Dated: 12/12/08 _____

15              The Honorable Victoria G. Chaney
Judge of the Los Angeles Superior Court

16

17

18

19

20

21

22

23

24

25

26

27

28

3

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FINAL JUDGMENT

**PROOF OF SERVICE**

*Case Name: Weidler, et. al. v. Circuit City, Inc.*
*Case Number: BC 369 011*

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed by the office of a member of the court in this action at whose direction the within service was made. My business address is 21800 Woodland Hills, California 91367. I am over the age of 18 and not a party to the within action. On the below executed date, I served upon the interested parties in this action the following described document(s): **NOTICE OF RULING ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGEMENT.**

/**XXX**/ **MAIL:** by placing a true copy thereof enclosed in a sealed envelope with First Class prepaid postage thereon in the United States mail at Woodland Hills, California address(es) as set forth below, pursuant to Code of Civil Procedure Section 1013a(1):

/____/ **OVERNIGHT DELIVERY**: by causing it to be mailed by a method of overnight delivery with instructions for delivery the next business day with delivery fees paid or provided for in the United States mail at Woodland Hills, California address(es) as set forth below, pursuant to Code of Civil Procedure Section 1013(c):

/____/ **PERSONAL SERVICE:** by delivering a true copy thereof by hand to the person or office, indicated, at the address(es) set forth below:

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 29, 2008 at Woodland Hills, California.

Kari Kroll

**Case Name: *Weidler, et. al. v. Circuit City, Inc.***
**Case Number: BC 369011**

| | |
|---|---|
| E. Joseph Connaughton, Esq.<br>Jeffery P. Ames, Esq.<br>**PAUL, PLEVIN, SULLIVAN &**<br>**CONNAUGHTON, LLP**<br>401 B Street<br>Tenth Floor<br>San Diego, California 92101-4232 | *Attorneys for Defendant CIRCUIT CITY*<br>*STORES, INC.* |
| Nathan Goldberg, Esq.<br>**ALLRED, MAROKO & GOLDBERG**<br>6300 Wilshire Blvd.<br>Suite 1500<br>Los Angeles, California 90048 | *Attorneys for Plaintiffs Weidler, Yezback,*<br>*Garcia, et. al.*<br>*Lead Case No. BC369011* |
| Manuel H. Miller, Esq.<br>Martin I. Aarons, Esq.<br>**Law Offices of Manuel H. Miller**<br>A Professional Corporation<br>20750 Ventura Boulevard<br>Suite 440<br>Woodland Hills, California 91364 | *Attorneys for Plaintiffs Maria G.*<br>*Moncayo and Luella Smith in*<br>*Related Case No. BC368973* |
| Roger L. Gordon, Esq.<br>Noah Green, Esq.<br>**GORDON, EDELSTEIN, KREPACK,**<br>**GRANT, FELTON, & GOLDSTEIN**<br>Attorneys at Law<br>Paramount Plaza, Suite 1800<br>3580 Wilshire Boulevard<br>Los Angeles, California 90010 | *Attorneys for Plaintiffs Thomas*<br>*Danakas, et al.; Related Case No.*<br>*BC 389 968* |