Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
One Rodney Square  
PO Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000  

Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB No. 34364)  
MCGUIREWOODS LLP  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000  

- and -

Chris L. Dickerson, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
155 North Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700  

Counsel to the Debtors and  
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF VIRGINIA  
RICHMOND DIVISION

- - - - - - - - - - - - - - x  
In re:                          :    Chapter 11  
                                :  
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)  
et al.,                         :  
                                :  
            Debtors.            :    Jointly Administered  
- - - - - - - - - - - - - - x  

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING
THE SALE BY SELLER OF CERTAIN REAL PROPERTY LOCATED IN
WHITEHALL, PENNSYLVANIA FREE AND CLEAR OF LIENS AND
INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1]  Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Motion.

debtors and debtors in possession in the above-captioned
jointly administered cases, the "Debtors") for entry of
an order pursuant to sections 105 and 363 of title 11 of
the United States Code (the "Bankruptcy Code") and Rules
2002 and 6004 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), (A) authorizing the
Seller to enter into the Agreement with H&L Holdings,
LLC (the "Purchaser") for the sale (the "Sale") of the
Seller's real property located at Grape Street and
Jordan Boulevard in Whitehall, Pennsylvania (the
"Property"), subject to higher or otherwise better
proposals, (B) approving the Bidding Procedures in
connection therewith, (C) approving the Sale free and
clear of all Liens and (D) granting related relief; and
upon the record of the auction conducted on March 16,
2010 (the "Auction") and the hearing held on March 18,
2010 (the "Sale Hearing"); and after due deliberation
thereon, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002 and 6004.

D.    The notice of the Motion, the Auction, and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property.

---

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

3

F.    A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities.

G.    The Seller and its professionals marketed the Property and conducted a sale process as set forth in and in accordance with the Motion and the Bidding Procedures.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid on the Property.

H.    The Seller has demonstrated good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto and (c) the purchase price (the "Purchase Price") agreed to by the Purchaser, $910,000, is fair and reasonable and constitutes the highest or otherwise best value obtainable for the Property.

4

I.    The Seller has full power and authority
to execute the agreement submitted by the Purchaser, a
copy of which is annexed hereto as Exhibit A (the
"Agreement") and all other applicable documents
contemplated thereby.  The transfer and conveyance of
the Property by the Seller have been duly and validly
authorized by all necessary action of the Seller.  The
Seller has all of the power and authority necessary to
consummate the transactions contemplated by the
Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Agreement, are required for the Seller to consummate
such transactions.

J.    The Agreement and the Sale of the
Property were negotiated and have been and are
undertaken by the Seller and the Purchaser at arms'
length without collusion or fraud, and in good faith
within the meaning of Sections 363(m) of the Bankruptcy
Code.  As a result of the foregoing, the Seller and the

Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

K.   Neither the Seller nor the Purchaser engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

L.   The Purchase Price provided by the Purchaser for the Property is the highest and best offer received by the Seller, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Property.

M.   The Sale must be approved and consummated promptly to obtain the value provided under the terms of the Agreement.

N.    The transfer of the Property to the Purchaser is a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Seller to the Property free and clear of all liens (including the liens of the Seller's post-petition lenders and liens for past-due real property taxes), claims and encumbrances (collectively, the "Liens"), except for those items defined in the Agreement (and which are referred to hereinafter) as the "Permitted Encumbrances".

O.    If the Sale of the Property by the Seller were not free and clear of any Liens, except for the Permitted Encumbrances, as set forth in the Agreement and this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Liens, the Purchaser would not have entered into the Agreement and would not consummate the Sale contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.    The Seller may sell its interest in the Property free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or

7

more of the standards set forth in Bankruptcy Code
sections 363(f)(1)-(5) has been satisfied.  All holders
of Liens, if any, who did not object or withdrew their
objections to the Sale are deemed to have consented to
the Sale pursuant to 11 U.S.C. § 363(f)(2) and all
holders of Liens are adequately protected by having
their Liens, if any, attach to the cash proceeds of the
Sale ultimately attributable to the property against or
in which they claim an interest with the same priority,
validity, force, and effect as they attached to such
property immediately before the closing (the "Closing")
of the Sale.

Q.   Based on the foregoing findings of fact
and conclusions of law,[3] it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED.

2.   Any and all objections to the Motion not
waived, withdrawn, settled, adjourned or otherwise

---

[3]   Statements made by the Court from the bench at the hearing on the
Motion shall constitute additional conclusions of law and
findings of fact as appropriate.

8

resolved herein are hereby overruled on the merits and denied with prejudice.

**A.     Approval Of The Agreement.**

3.     Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.     Pursuant to Bankruptcy Code section 363(b), the Seller is authorized and approved to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

5.     The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property as contemplated by the Agreement.

6.    This Sale Order and the Agreement shall be binding in all respects upon the Seller, all stakeholders (whether known or unknown) of the Seller, all affiliates and subsidiaries of the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.  To the extent that any provision of this Sale Order is inconsistent with the terms of the Agreement, this Sale Order shall govern.

7.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

8.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in

the Property shall be transferred to the Purchaser free
and clear of all Liens except the Permitted Encumbrances,
with all such Liens to attach to the cash proceeds of
the Sale in the order of their priority, with the same
validity, force, and effect which they had as against
the Property immediately before such transfer, subject
to any claims and defenses the Seller may possess with
respect thereto.

9.   If any person or entity which has filed
financing statements, mortgages, mechanic's liens, lis
pendens, or other documents or agreements evidencing
Liens on or against the Property shall not have
delivered to the Seller prior to the Closing of the Sale,
in proper form for filing and executed by the
appropriate parties, termination statements, instruments
of satisfaction, releases of all Liens that the person
or entity has with respect to the Property, or otherwise,
then (a) the Seller is hereby authorized to execute and
file such statements, instruments, releases, and other
documents on behalf of the person or entity with respect
to the Property and (b) the Purchaser is hereby
authorized to file, register, or otherwise record a

11

certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on or against the Property of any kind or nature whatsoever except for the Permitted Encumbrances.

10.   This Sale Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Seller or the Property prior to the Closing of the Sale, except for the Permitted Encumbrances, have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

11.   All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Seller or the Property, except the Permitted Encumbrances (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to the Property prior to the Closing of the Sale, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' Liens.  Nothing in this Sale Order or the Agreement releases or nullifies any liability to a governmental agency under any environmental laws and regulations that any entity would

13

be subject to as owner or operator of the Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of
violation of environmental laws and regulations prior to
the Closing of the Sale.

**C.    Additional Provisions**

12.    The Purchase Price provided by the
Purchaser for the Property under the Agreement is hereby
deemed to constitute reasonably equivalent value and
fair consideration under the Bankruptcy Code, the
Uniform Fraudulent Conveyance Act, the Uniform
Fraudulent Transfer Act, and under the laws of the
United States, and any state, territory, or possession
thereof, or the District of Columbia.

13.    The Purchase Price provided by the
Purchaser for the Property under the Agreement is fair

14

and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

14.   Upon the Closing, this Sale Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Property or a bill of sale transferring good and marketable title in the Property to the Purchaser pursuant to the terms of the Agreement.

15.   The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser at arm's length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Property shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.  The Purchaser is a purchaser in good faith, within the meaning of section 363(m) of the Bankruptcy Code, of the Property and is, and shall be, entitled to all of the

protections afforded by such section and in accordance therewith.

16.  The failure specifically to include or to reference any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

17.  The Closing of the Sale shall occur upon the later of (i) five (5) business days of entry of this Order or (ii) a date on which the Purchaser and Seller have agreed.

18.  If the Purchaser fails to close on the purchase of the Property in accordance with the terms of the Agreement due to no fault of the Seller and Seller is not in default of its obligations under such Agreement, then Seller's counsel shall file with the Court and serve upon the Purchaser, Dowel-Allentown, LLC (the "Alternate Bidder") and their counsel, a notice of such default, which shall include a copy of the Alternate Bidder's agreement upon which the Seller will then close, in which case (i) Seller shall be deemed

16

authorized to close on the Sale of the Property with the Alternate Bidder on ten (10) days' advance written notice to the Alternate Bidder, and (ii) the Alternate Bidder shall be afforded all of the protections originally afforded to the Purchaser under this Sale Order and the findings herein as to adequacy and fairness of consideration paid and good faith shall be deemed to apply to the Alternate Bidder, its Alternate Bid, and its purchase and sale agreement with the Seller, without the necessity of further order of this Court.

19.   All deposits submitted to the Seller for the Property, if any, shall be returned to the bidders that submitted such deposits no later than five (5) business days after the Closing of the Sale with the Purchaser (or the Alternate Bidder, as the case may be), except in the case of a bidder who closed on the Sale of the Property or who was required to close in accordance with the terms of this Sale Order but failed to do so in breach of its contractual obligations through no fault of the Seller.

20. This Order shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Bankruptcy Rules 6004(h).

21. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

22. This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Seller pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, the Alternate Bid, and any deposit delivered to Seller by a bidder for the Property, (d) interpret, implement, and enforce the provisions of this Sale Order, and (e) protect the Purchaser against any Lien against the Seller or the Property of any kind or nature whatsoever,

except for Permitted Encumbrances, which Liens, valid

and timely perfected, shall attach to the proceeds of

the Sale.

Dated:  Richmond, Virginia
         Mar 19 2010                  , 2010


                        /s/ Kevin Huennekens
         _____
                  UNITED STATES BANKRUPTCY JUDGE


Entered on docket:  March 19 2010

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of March 18, 2010, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and H & L HOLDINGS, LLC, a Pennsylvania limited liability company ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain real property located in Whitehall, Pennsylvania and being more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land (herein collectively called the "Property").

2.    PURCHASE PRICE

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be NINE HUNDRED TEN THOUSAND AND NO/100 DOLLARS ($910,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's (as defined below) escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.     DEPOSIT

3.1     Deposit.   Purchaser has delivered to Seller, by cashier's check payable to Seller, an amount equal to SIX THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($6,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit"), which Deposit has been deposited by Seller in a federally insured financial institution.

3.2     Application of Deposit.     If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be retained by Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 6.8, Section 7.1, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly by Seller to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Seller shall retain the Deposit, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.2 hereof) at the time the notice to terminate this Agreement is given. The obligation to deliver the Reports shall survive the termination of this Agreement. Purchaser shall not be entitled to the return of the Deposit from Seller until all Reports have been delivered to Seller.

4.     PREPURCHASE MATTERS

4.1     Items Delivered.     Seller has previously delivered to Purchaser those items within Seller's possession related to or affecting the Property (if any) to be used by Purchaser in conducting Purchaser's due diligence investigation of the Property.

4.2     Reports.     All information provided by Seller to Purchaser relating to the Property, whether before or after the date of this Agreement (collectively, the "Reports"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to

2

defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.2 shall survive the Closing or the termination of this Agreement, as applicable.

4.3   Purchaser's Representations and Warranties.   Purchaser represents and warrants to Seller that (a) Purchaser is a limited liability company, duly organized and validly existing under the laws of the Commonwealth of Pennsylvania, is authorized to do business in the Commonwealth of Pennsylvania, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.3 shall survive the Closing or termination of this Agreement.

4.4   Seller's Representations and Warranties.   Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined below) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances (as defined below). The representations and warranties contained in this Section 4.4 shall expire and be extinguished at the Closing.

3

4.5   <u>Further Assurances</u>.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.   DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1   <u>Disclaimer</u>.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE CONDITION OR STATUS OF THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER

4

ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND NOT ATTRIBUTABLE TO PURCHASER'S CONDUCT. THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

5

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

6

6.1   <u>Closing</u>.      Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "<u>Closing</u>") shall be conducted by mail or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is five (5) business days after the date upon which Purchaser receives from Seller written notice (which written notice may be given by email) of entry by the Bankruptcy Court of the Sale Order, together with an electronic copy thereof, and that any applicable appeal period has expired (the date on which the Closing occurs is referred to as the "<u>Closing Date</u>").

6.2   <u>Possession</u>.      Possession of the Property shall be delivered to Purchaser at the Closing, subject only to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, and (iv) any and all matters that would be shown by a physical inspection of the Property (collectively, the "<u>Permitted Encumbrances</u>").

6.3   <u>Prorations</u>.      All real estate taxes and assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available.   Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.   Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4   <u>Closing Costs</u>.      Purchaser shall pay all title examination costs, title insurance premiums, survey costs, environmental and engineering costs, and any and all other due diligence costs.   Purchaser shall also pay any grantee's tax imposed on the Deed (as defined below) pursuant to applicable state law and any other recording fees associated with the recordation of the Deed.   Seller shall pay any grantor's tax imposed on the Deed pursuant to applicable state law. Except as otherwise provided herein, each party shall pay its own attorneys' fees.   The parties shall each pay one-half (1/2) of all transfer and recordation costs and any escrow fee charged by Escrow Agent, and with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the Commonwealth of Pennsylvania.

7

6.5   <u>Seller's Obligations at the Closing</u>.   At the Closing, Seller shall deliver to Search & Settlement Solutions, Inc., as Agent for Commonwealth Land Title Insurance Company ("<u>Escrow Agent</u>"), c/o Charlie Seliga, 111 N. 6th Street (P.O. Box 1659), Reading, Pennsylvania 19601 (19603), Phone: (610) 478-2268, Fax: (610) 988-0876  the following:

(a)   <u>Deed</u>. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances.

(b)   <u>Foreign Person</u>.   An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

(c)   <u>Documents Required by Escrow Agent</u>.   A customary owner's affidavit substantially in the form attached hereto as <u>Exhibit B</u> and a customary privacy notice, both in form and substance reasonably acceptable to Seller and Escrow Agent, duly executed on behalf of Seller.

6.6   <u>Purchaser's Obligations at the Closing</u>.   At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)   <u>Purchase Price</u>.   The Purchase Price (less the amount of the Deposit) by wire transfer of immediately available funds.

(b)   <u>Evidence of Authority</u>.   Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)   <u>Taxpayer I.D. Certificate</u>.   A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer Identification Number and consenting to Seller's release of this information to any governmental authority.

6.7   <u>Commission</u>. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty (the "<u>Broker</u>"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders'

8

fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

6.8    Conditions to Closing.    Each of the following shall be a condition to Purchaser's obligation to proceed to Closing hereunder:

(a)    Title.    Title to the Property shall be in the condition required pursuant to Section 6.2 above.

(b)    Bankruptcy Sale Order.    The Bankruptcy Court shall have entered the Sale Order, as described in Section 9.2 below, and any applicable appeal period shall have expired (without appeal).

(c)    Closing Deliverables. Seller shall have delivered all of Seller's closing deliverables, as required under Section 6.5 above.

(d)    Seller's Representations and Warranties.    The representations and warranties of Seller set forth in Section 4.4 above shall be true and correct in all material respects.

In the event of the failure of any of the above conditions, Purchaser shall have the right, at its election, to either (i) waive such failure and proceed to Closing, or (ii) terminate this Agreement, in which event the Deposit shall be returned promptly by Seller to Purchaser, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations.

7.    RISK OF LOSS

7.1    Condemnation.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Seller and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

8.    DEFAULT

8.1    Breach by Seller.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so

9

under the provisions hereof, Purchaser, as its sole and exclusive remedy, may terminate this Agreement and demand the return of the Deposit from Seller. In no event shall Purchaser be entitled to any remedy other than the return of the Deposit. Notwithstanding the foregoing, the provisions of this Section 8.1 shall not limit or affect any of Seller's indemnities as provided in any other Section of this Agreement. Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

8.2    Breach by Purchaser. In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to retain the Deposit as liquidated damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. In no event shall Purchaser be liable for any actual, punitive, speculative or consequential damages in connection with this Agreement. In no event shall Seller be entitled to the remedy of specific performance. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement. Seller has filed with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of, among other things, the consummation of the transactions contemplated hereby, and entry of the Sale Order (the "Sale Motion").

9.3    Entry of Sale Order. The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above. Purchaser shall cooperate with the

10

Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable and Seller shall diligently pursue entry by the Bankruptcy Court of the Sale Order, and shall provide to Purchaser written notice (which written notice may be given by email) of same promptly upon Seller's becoming aware that the Sale Order has been entered by the Bankruptcy Court.

9.4   Termination. Each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to September 30, 2010. In the event of a termination of this Agreement pursuant to this Section 9.4, the Deposit shall be returned to Purchaser by Seller, and neither party shall have any further right or obligation hereunder except for the Survival Obligations.

10.   MISCELLANEOUS

10.1   Notices.      All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below, or (d) upon receipt, if sent by email, addressed to such party at the address specified below. Further, any notice to Seller shall be deemed effective upon delivery of such notice to counsel for Seller (Matthew T. Gunlock, Esquire, at McGuireWoods LLP), without the necessity of copies of such notice having been received by the other Seller notice parties. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

If to Purchaser:          H & L HOLDINGS, LLC
                          c/o Kayton Company
                          1045 Grape Street
                          Whitehall, PA 18052
                          Attention: David Kurlansik
                          E-mail: gearstuff@rcn.com

with a copy to:          STEVENS & LEE, P.C.
                         1818 Market Street, 29th Floor
                         Philadelphia, PA 19103
                         Attention: Beth Stern Fleming, Esq.

Email: bsf@stevens.com

If to Seller: MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Attention: Matthew T. Gunlock, Esq.
E-mail: mgunlock@mcguirewoods.com

with a copy to: CIRCUIT CITY STORES, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: General Counsel

and a copy to: CIRCUIT CITY STORES, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: Vice President of Real Estate

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2 Entire Agreement. This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3 Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4 Headings. The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5 Time of Essence. Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the jurisdiction in which the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

12

10.6    Governing Law.    This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.

10.7    Successors and Assigns: Assignment.    This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall not be permitted to assign Purchaser's rights under this Agreement without obtaining the prior written consent of Seller.  No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.  This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9    Attorneys' Fees.    In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10    Multiple Counterparts.    This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11    No Recordation.    Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

13

10.12  <u>Merger Provision.</u>    Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  <u>Brokers.</u>    Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  <u>Consent to Jurisdiction of Bankruptcy Court.</u>    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

14

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

<u>SELLER</u>

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Catherine W. Bradshaw_
Name: Catherine W. Bradshaw
Title:   Vice President and Controller

<u>PURCHASER</u>

H & L HOLDINGS, LLC,
a Pennsylvania limited liability company

By: _____
Name: David Kurlansik
Title:   Member

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:_____
Name:_____
Title:_____

PURCHASER

H & L Holdings, LLC

By:_____
Name: David Kurlansik
Title: Member

<u>EXHIBIT A</u>

LEGAL DESCRIPTION OF PROPERTY

[FOLLOWS THIS PAGE]

## EXHIBIT A

ALL THAT CERTAIN tract of land located in Whitehall Township, Lehigh County, Pennsylvania, bounded and described as follows, to wit:

COMMENCING at a drill hole in the sidewalk at the intersection of the northerly property line of Grape Street (70 feet wide) with the westerly line of Jordan Boulevard (60 feet wide); thence from the point of commencement along the northerly property line of Grape Street (parallel with and five feet north of the curb line of Grape Street), S 75° 35' 30" W 282.59 feet to a drill hole in the sidewalk; thence along the easterly property line of Howard Johnson Company, N 14° 24' 30" W 350.00 feet to an iron pipe; thence along the northerly property line of Howard Johnson Company and Monroe Kurlansik, S 75° 35' 30" W 147.30 feet to an iron pipe, said iron pipe being the POINT OF BEGINNING; thence from the point of beginning along the northerly property line of Howard Johnson Company and Monroe Kurlansik, S 75° 35' 30" W 177.70 feet to an iron pipe; thence along the easterly property line of State Street Bank and Trust Company of Connecticut, W. Jeffrey Kramer, Boatman's National Bank of St. Louis, and City National Bank of Florida N 14° 24' 30" W 232.26 feet to an iron pipe; thence along the easterly line of State Street Bank and Trust Company of Connecticut, W. Jeffrey Kramer, Boatman's National Bank of St. Louis, and City National Bank of Florida N 10° 57' 40" E 121.36 feet to an iron pipe; thence along the southerly property line of Jefferson Street (50 feet wide) parallel with and 8.5 feet south of the curb line of Jefferson Street and the two following courses and distances: (1) S 79° 02' 20" E 72.19 feet to an iron pipe at a point of curvature; and (2) on a curve to the left having a radius of 670.86 feet an arc length of 65.52 feet (chord bearing and distance N 81° 50' 12" E 65.49 feet) to an iron pipe; thence along the westerly property line of Toys "R" Us – Penn, Inc. S 14° 24' 30" E 285.85 feet to the point of beginning.

BEING a portion of the same premises which Henry T. Newhard, Jr. and Eleanor C. Newhard by Deed dated and recorded 10/19/1984 in Lehigh County, Pennsylvania in Deed Book Vol. 1343 page 1040, conveyed unto Toys "R" Us – Penn., Inc., a Pennsylvania corporation, in fee.

Parcel No F9SE 4-3-2

CHICAGO TITLE INSURANCE COMPANY
101 SOUTH STREET NW
Suite 1700
WASHINGTON DC 20002

V1641 P0137

EXHIBIT B

FORM OF OWNER'S AFFIDAVIT

**COMMITMENT NO.  [_____]**

**PREMISES:**    **1.25 acres, more or less, Parking lot on Jefferson Street,**

**Township of Whitehall, Lehigh County, PA**

COMMONWEALTH OF PENNSYLVANIA )
COUNTY OF                                          ) SS

ON THE ___ DAY OF _____, 2010, before me, the undersigned Officer, personally appeared the undersigned, who being duly sworn according to law and intending to be legally bound, depose(s) and say(s) that the following statements are true and correct to the actual knowledge and belief of the undersigned.

1.    That the Grantor(s)/Mortgagor(s) herein is/are the owner(s) of premises described on Exhibit A being insured hereunder.

2.    That there have been no repairs, additions or improvements made, ordered or contracted to be made on or to the premises on behalf of the undersigned, within six (6) months prior to the date hereof, nor are there any improvements or fixtures attached to the premises which have not been paid for in full; and that there are no outstanding or disputed claims for any such work or items.

3.    That there has been no work done, or notice received that work is to be done, by the Municipality (City, Borough or Township), or at its direction, in connection with the installation of sewer or water or for improvements such as paving or repaving of streets or alleys, or the installation or repair of curbs or sidewalks.

4.    That no notice has been served by any governmental authority for the removal or abatement of any nuisance, for the violation of any zoning regulations or concerning the condemnation of any portion of said premises.

5.    That there has been no violation of any restrictions affecting the premises.

6.    That there are no purchase money obligations being created in this transfer.

7.    That the Grantor(s)/Mortgagor(s) in this transaction is/are in actual possession of the entire premises, and there are no unrecorded leases or agreements affecting the premises or any part thereof outstanding, other than those that are presently being assigned.

8.      That the Grantor(s)/Lessor(s) has/have not received a notice of claim from any Real Estate Broker claiming a right to a lien in accordance with Act 34 of 1998.

9.      That as to each Grantor/Mortgagor that is a Corporation, Limited Liability Company or Partnership:

     A.    That the Corporation, Limited Liability Company or Partnership has been duly formed according to the laws of its incorporation or formation and is validly existing. The Corporation is a Debtor in a voluntary bankruptcy proceeding pending in the Eastern District of Virginia (Case No. 08-35653 (KRH)) (Bankr. E.D.Va. 2008).

     B.    That all parties signatory to documents in this transaction are duly authorized to execute same on behalf of the Corporation, the Limited Liability Company or the Partnership.

     C.    That no shareholder consent is required by the Corporation, nor member consent required by the Limited Liability Company, nor limited partner consent required by the Partnership.

This affidavit is made for the purpose of inducing [_____] or its duly authorized agent to hold settlement on the above premises, and to issue its title insurance policy, insuring the title thereto and to make disbursement of funds arising out of said transaction.

SWORN TO AND SUBSCRIBED before me,
the day and year aforesaid.

_____
                Notary Public
My Commission Expires:_____

Circuit City Stores, Inc., a Virginia corporation

BY:_____
Name:
Title

ATTEST:

_____

\10365628.9

# CERTIFICATE OF NOTICE

```
District/off: 0422-7         User: frenchs         Page 1 of 1                Date Rcvd: Mar 19, 2010
Case: 08-35653              Form ID: pdforder      Total Noticed: 1
```

The following entities were noticed by first class mail on Mar 21, 2010.
```
aty          +Gregg M. Galardi,    Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636
```

The following entities were noticed by electronic transmission.
```
NONE.                                                                        TOTAL: 0
```

```
      ***** BYPASSED RECIPIENTS *****
NONE.                                                                        TOTAL: 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Mar 21, 2010**                     **Signature:**            *Joseph Speetjens*