Gregg M. Galardi, Esq.                    Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                   Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  MCGUIREWOODS LLP
One Rodney Square                         One James Center
PO Box 636                                901 E. Cary Street
Wilmington, Delaware 19899-0636           Richmond, Virginia 23219
(302) 651-3000                            (804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 N. Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

*Counsel to the Debtors and
Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x
CIRCUIT CITY STORES, INC.,    x
                              :
      Plaintiff,              :
                              :
            v.                :   Adv. Pro. No. 10-_____
                              :
LG ELECTRONICS USA, INC.      :
                              :
      Defendants.             :
- - - - - - - - - - - - - - x

**CIRCUIT CITY STORES, INC.'S OBJECTION TO CLAIM NOS.
1261, 8357 AND 13233 AND COMPLAINT AGAINST LG
ELECTRONICS USA, INC.**

Circuit City Stores, Inc. ("Circuit City"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[1] hereby files its objection to proof of claim numbers 1261, 8357 and 13233 and its complaint (the "Complaint") against LG Electronics USA, Inc. ("LG" or the "Defendant").  In support of the Complaint, Circuit City respectfully alleges as follows:

### NATURE OF THE ACTION

1.   Circuit City brings this action to avoid and recover certain transfers made to LG within the 90-day period prior to the commencement of Circuit City's bankruptcy cases.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2.    In addition, Circuit City seeks to recover a sum of not less than $10,469,268 due and owing from LG to Circuit City on account of certain receivables arising in connection with the business previously conducted among Circuit City and LG.

3.    In connection therewith, Circuit City objects to claim numbers 1261, 8357 and 13233 and seeks to disallow them under Bankruptcy Code section 502(d).

4.    In the event claim numbers 1261, 8357 and 13233 are not disallowed under Bankruptcy Code section 502(d), Circuit City objects to such claims on the basis that they are improper in whole or in part.

5.    Finally, in the event Circuit City is not entitled to affirmatively recover all or any portion of the receivables, Circuit City seeks to setoff such receivables against claim numbers 1261, 8357 and 13233.

**THE PARTIES**

6.    Circuit City is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia. Circuit City is a debtor and debtor in possession in the above-captioned chapter 11 bankruptcy proceedings.

7.   Upon information and belief, defendant LG
is a corporation organized under the laws of the State
of Delaware with its principal place of business in
Pharr, Texas.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction to consider
this matter under 28 U.S.C. §§ 157 and 1334.

9.   This is a core proceeding under 28 U.S.C.
§ 157(b).

10.   Venue of these cases and the Complaint in
this district and before this Court is proper under 28
U.S.C. §§ 1408 and 1409.

11.   The statutory and legal predicates for
the relief requested by the Complaint are sections 105,
502, 503, 541, 542, 547, 550, and 558 of title 11,
United States Code (the "Bankruptcy Code"), Bankruptcy
Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

## BACKGROUND

**A.   General Case Background.**

12.   On November 10, 2008 (the "Petition
Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

13.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

14.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

15.   On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").

16.   On January 17, 2009, the Agent commenced going out of business sales at the Stores pursuant to the Agency Agreement.

17.   As of March 8, 2009, the going out of business sales at the Debtors' Stores were completed.

18.   On September 24, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as amended, the "Plan").

19.   The disclosure statement (the "Disclosure Statement") filed with respect to the Plan was approved on September 24, 2009.

20.   No confirmation hearing has been held with respect to the Plan, and the Plan has not yet been confirmed.

21.   The Plan provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

**B.    The Business Relationship Between Circuit City And LG.**

22.   Prior to the commencement of these bankruptcy cases, the Debtors were a leading specialty retailer of consumer electronics and operated large nationwide electronics stores that sold, among other things, televisions, home theatre systems, computers,

camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

23.  During the ordinary course of the Debtors' business, the Debtors maintained books and records of their transactions with the Defendant (the "Books and Records").

24.  Over the course of the parties' business relationship, Circuit City and LG entered into numerous purchase agreements ("LG Agreements").

25.  Pursuant to the LG Agreements, Circuit City purchased certain goods and services from LG for resale by Circuit City through its retail channels.

26.  Circuit City and LG conducted business with one another up to and through the Petition Date under the LG Agreements.

**C.  Amounts Allegedly Owed To LG And LG's Proofs Of Claim.**

**(1)  Claim No. 1261**

27.  On or about December 18, 2008, LG filed claim number 1261 ("Claim No. 1261").

28.   Claim No. 1261 was filed in the total amount of $20,599,070.25.

29.   Claim No. 1261 was filed as an administrative priority claim under Bankruptcy Code section 503(b)(9).

30.   Claim No. 1261 was asserted on account of alleged sales by LG, and receipt by Circuit City, of certain goods during the twenty-day period prior to the Petition Date.

31.   On or about June 23, 2009, the Debtors filed their Twentieth Omnibus Objection (Docket No. 3704).

32.   Pursuant to the Twentieth Omnibus Objection, the Debtors objected to Claim No. 1261 and sought to reclassify a portion of Claim No. 1261 to a general unsecured non-priority claim on the basis that certain of the goods that were the subject of Claim No. 1261 were not received by the Debtors within the twenty days prior to the Petition Date.

33.   On August 20, 2009, this Court entered an order sustaining the Twentieth Omnibus Objection (Docket No. 4576) and thereby reclassifying Claim No. 1261 to a

general unsecured non-priority claim in the amount of $15,201,093.25 and a claim allegedly entitled to priority under Bankruptcy Code section 503(b)(9) in the amount of $5,397,977.00.

34.   Pursuant to the Court's order on Debtors' Fifty-First and Fifty-Second Omnibus Objections (Docket No. 6228), that portion of Claim No. 1261 allegedly entitled to priority under Bankruptcy Code section 503(b)(9) has been disallowed under Bankruptcy Code section 502(d) pending the return of certain avoidable transfers identified in the Fifty-First and Fifty-Second Omnibus Objections.

**(2)   Claim No. 8357**

35.   On or about January 29, 2009, LG filed claim number 8357 ("Claim No. 8357").

36.   Claim No. 8357 was filed by LG in the total amount of $208,637.10 for "expense payable[s]."

37.   Claim No. 8357 was filed as a general unsecured, non-priority claim.

**(3)   Claim Nos. 9623 And 13233.**

38.   On or about January 29, 2009, LG filed claim number 9623 ("Claim No. 9623").

39.   Claim No. 9623 was filed by LG in the total amount of $42,315,217.97 for "goods sold" by LG to Circuit City prior to the Petition Date.

40.   Claim No. 9623 was filed as general unsecured, non-priority claim.

41.   On or about June 1, 2009, LG filed claim number 13233 ("Claim No. 13233").

42.   Claim No. 13233 amended Claim No. 9623.

43.   Claim No. 13233 was filed by LG in the total amount of $41,478,011.85 for "goods sold" by LG to Circuit City prior to the Petition Date.

44.   Claim No. 13233 was filed as a general unsecured, non-priority claim.

45.   On or about August 21, 2009, the Debtors filed their Thirty-Fourth Omnibus Objection (Docket No. 4598).

46.   Pursuant to the Thirty-Fourth Omnibus Objection, the Debtors objected to Claim No. 13233 and sought to reduce Claim No. 13233 on the basis that it included amounts duplicated in Claim No. 1261.

47.   On October 28, 2009, this Court entered an order sustaining the Thirty-Fourth Omnibus Objection

(Docket No. 5385) and thereby reduced Claim No. 13233 to $20,878,941.60.

48.  On or about August 21, 2009, the Debtors filed their Thirty-Fifth Omnibus Objection (Docket No. 4599).

49.  Pursuant to the Thirty-Fifth Omnibus Objection, the Debtors objected to Claim No. 9623 and sought to disallow Claim No. 9623 on the basis that Claim No. 9623 was amended by Claim No. 13233 and was duplicative.

50.  On October 29, 2009, this Court entered an order sustaining the Thirty-Fifth Omnibus Objection (Docket No. 5396) and thereby disallowed Claim No. 9623 in its entirety.

**(4)  LG's Current Claims.**

51.  In summary, LG's remaining claims currently consist of (i) three general unsecured non-priority claims -- a portion of Claim No. 1261 and Claim Nos. 8357 and 13233 -- totaling $36,288,671.95 (collectively, the "General Unsecured Claims"), and (ii) a claim -- a portion of Claim No. 1261 -- allegedly

entitled to priority under Bankruptcy Code section

503(b)(9) totaling $5,397,977 (the "503(b)(9) Claim").

**D.    Amounts Owed To Circuit City By LG.**

52.   As of the date hereof, on account of the

pre- and post-petition business conducted between LG and

Circuit City pursuant to the LG Agreements or otherwise,

LG is indebted to Circuit City on account of the

following items and in at least the following amounts:

| | |
|---|---|
| Chargebacks | $9,208,199[2] |
| Billbacks | $709,355 |
| Warranty Claims | $410,106 |
| Returns | $141,608 |
| **TOTAL** | **$10,469,268** |

(collectively, the "Unpaid Obligations").

53.   The Unpaid Obligations are due, owing,

and payable by LG to Circuit City.

**E.    Transfers To LG Made Within 90 Days Prior To The Petition Date.**

54.   During the 90-day period prior to the

commencement of Circuit City's bankruptcy cases (the

"Preference Period"), Circuit City transferred property

---

[2]   The Debtors submit that the Chargebacks total $10,042,055.
However, such amount has been reduced by an unrelated credit of
$833,856 due to LG.

to or for the benefit of LG in an amount not less than $59,014,852.87.

55.   A list identifying each transfer is attached hereto as Exhibit A and incorporated herein by reference (collectively, the "Preferential Transfers").

56.   Certain of the Preferential Transfers may be subject to defenses under section 547(c).

57.   Each Preferential Transfer was made to satisfy antecedent debts owed by Circuit City to LG.

58.   Circuit City was insolvent during the 90-day period prior to the Petition Date.

59.   Each Preferential Transfer enabled LG to receive more than LG would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

60.   Each Preferential Transfer enabled LG to receive more than LG would have received if the transfers or payments had not been made.

61.   Each Preferential Transfer enabled LG to receive more than LG would have received if LG received payment of such debt to the extent provided by the Bankruptcy Code.

13

## COUNT I

### (RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(B) AND 550)

62.  Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

63.  During the Preference Period, LG was a creditor of Circuit City.

64.  Each Preferential Transfer was made to or for the benefit of LG.

65.  Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

66.  Each Preferential Transfer was made during the Preference Period.

67.  Each Preferential Transfer was made while Circuit City was insolvent.

68.  Each Preferential Transfer enabled LG to receive more than LG would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

69.   Each Preferential Transfer enabled LG to receive more than LG would have received if the transfers and/or payments had not been made.

70.   Each Preferential Transfer enabled LG to receive more than LG would have received if LG received payment of such debt to the extent provided by the Bankruptcy Code.

71.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

72.   LG is either (i) the initial transferee of the Preferential Transfers, (ii) the entity for whose benefit the Preferential Transfers were made, or (iii) an immediate or mediate transferee of the Preferential Transfers.

73.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

74.   Subject to potential defenses, Circuit City is entitled to recover pursuant to Bankruptcy Code

section 550(a) an amount not less than $59,014,852.87,

plus costs, expenses, and interest at the higher of the

legal rate or the rate set forth in the LG Agreements or

in any agreements governing the parties' relationship.

**COUNT II**

**(OBJECTION TO THE GENERAL UNSECURED CLAIMS –
DISALLOWANCE UNDER SECTION 502(D))**

75.   Circuit City repeats and realleges each

of the allegations set forth above and below as if fully

set forth herein.

76.   The General Unsecured Claims are rights

to payment allegedly owed by Circuit City.

77.   The General Unsecured Claims are

allegedly claims under Bankruptcy Code section

101(5)(A).

78.   During the Preference Period, LG was a

creditor of Circuit City.

79.   Each Preferential Transfer was made to or

for the benefit of LG.

80.   Each Preferential Transfer was made for

or on account of an antecedent debt or debts owed by

Circuit City before such Preferential Transfers were made.

81.   Each Preferential Transfer was made during the Preference Period.

82.   Each Preferential Transfer was made while Circuit City was insolvent.

83.   Each Preferential Transfer enabled LG to receive more than LG would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

84.   Each Preferential Transfer enabled LG to receive more than LG would have received if the transfers or payments had not been made.

85.   Each Preferential Transfer enabled LG to receive more than LG would have received if LG received payment of such debt to the extent provided by the Bankruptcy Code.

86.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

87.   LG is either the initial transferee of the Preferential Transfers, the entity for whose benefit the Preferential Transfers were made, or an immediate or mediate transferee of the Preferential Transfers.

88.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

89.   Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claims should be disallowed pending the payment by LG of amounts owed to the Debtors.

**COUNT III**

**(TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542)**

90.   Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

91.   LG is in possession, custody, and control of the Unpaid Obligations in an amount not less than $10,469,268, plus costs, expenses, and interest.

92.   The Unpaid Obligations constitute valid and existing debts, due and owing by LG to Circuit City.

93.   The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

94.   Accordingly, pursuant to Bankruptcy Code section 542, LG should be compelled to immediately turn over and deliver to Circuit City the Unpaid Obligations in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations.

**COUNT IV**

**(OBJECTION TO THE GENERAL UNSECURED CLAIMS –
DISALLOWANCE UNDER SECTION 502(D))**

95.   Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

96.   In the alternative to Count II, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count IV.

97.   The General Unsecured Claims are rights to payment allegedly owed by Circuit City.

98.   The General Unsecured Claims are allegedly claims under Bankruptcy Code section 101(5)(A).

99.   LG is in possession, custody, and control of the Unpaid Obligations in an amount not less than $10,469,268, plus costs, expenses, and interest.

100.  The Unpaid Obligations constitute valid and existing debts, due and owing by LG to Circuit City.

101.  The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

102.  The Unpaid Obligations are recoverable pursuant to Bankruptcy Code section 542.

103.  LG has not turned over or paid to Circuit City the Unpaid Obligations.

104.  Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claims should be disallowed pending LG's turnover or payment of the Unpaid Obligations to Circuit City.

**COUNT V**

**(BREACH OF CONTRACT)**

105. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

106. In the alternative to Count III, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count V.

107. Pursuant to the LG Agreements, LG is obligated to pay to Circuit City the Unpaid Obligations.

108. The LG Agreements are valid and enforceable agreements against LG.

109. Circuit City performed its obligations under the LG Agreements with respect to the Unpaid Obligations.

110. LG's failure to compensate Circuit City for the Unpaid Obligations in an amount not less than $10,469,268 constitutes a material breach of LG's obligations under the LG Agreements.

111. As a direct and proximate result of LG's breaches, Circuit City has incurred damages in an amount

not less than $10,469,268, plus costs, expenses, and interest.

112. Accordingly, Circuit City is entitled to a judgment against LG in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations.

## COUNT VI

### (UNJUST ENRICHMENT/QUASI CONTRACT)

113. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

114. In the alternative to Counts III and V, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count VI.

115. Circuit City conferred a benefit upon LG pursuant to the LG Agreements.

116. LG knowingly accepted the benefit conferred by Circuit City.

117. Circuit City reasonably expected to be compensated by LG in an amount not less than $10,469,268 on account of the benefit conferred upon LG.

118. LG's benefit without just compensation to Circuit City has unjustly enriched LG in an amount not less than $10,469,268 plus costs, expenses, and interest.

119. Circuit City has no adequate remedy at law to recover the Unpaid Obligations.

120. Accordingly, as a result of LG's unjust enrichment at Circuit City's expense, Circuit City is entitled to restitution from the Defendant in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations.

**COUNT VII**

**(OBJECTION TO GENERAL UNSECURED CLAIM NO. 1261 –
REDUCTION BECAUSE THE CLAIM IS OVERSTATED)**

121. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

122. In the alternative to Counts II and IV, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count VII.

123. After a thorough review of the Debtors' Books and Records, Circuit City has determined that the general unsecured non-priority portion of Claim No. 1261 is overstated by $600,261.50 such that such portion of Claim No. 1261 should be reduced to $14,600,831.75.

124. The overstatement is based on two components.

125. First, Claim No. 1261 is overstated based on invoice shortages, whereby Circuit City was invoiced for a greater number of goods than it received from LG, in an amount totaling $220,320.00.

126. Second, Claim No. 1261 is overstated based on general invoice pricing discrepancies, whereby Circuit City was quoted a certain price for goods sold by LG, but invoiced at a higher price, in an amount totaling $379,941.50.

127. Because of the overstatements, Circuit City seeks to reduce the general unsecured, non-priority

portion of Claim No. 1261 from the currently asserted

amount of $15,201,093.25 to the proper amount of

$14,600,831.75 ("Modified Claim No. 1261").

### COUNT VIII

### (OBJECTION TO GENERAL UNSECURED CLAIM NO. 8357 – DISALLOWANCE BECAUSE THE CLAIM HAS BEEN AMENDED OR SUPERSEDED)

128. Circuit City repeats and realleges each

of the allegations set forth above and below as if fully

set forth herein.

129. In the alternative to Counts II and IV,

but without waiving any allegation contained therein,

Circuit City makes the following allegations in support

of Count VIII.

130. After a thorough review of the Debtors'

Books and Records, Claim No. 8357, and Claim No. 13233,

Circuit City has determined that Claim No. 8357 is

entirely duplicated on Claim No. 13233.

131. In Claim No. 8357, LG alleges that

Circuit City owes LG $208,637.10 on account of a July

28, 2008 invoice for an "expense payable."

132. In Claim No. 13233, LG alleges that

Circuit City owes LG $41,478,011.85 on account of

invoices for "goods sold", which calculation includes the same July 28, 2008 "expense payable" invoice that is the basis for Claim No. 8357.

133. Accordingly, Circuit City seeks to disallow Claim No. 8357 because it has been amended or superseded by Claim No. 13233.

**COUNT IX**

**(OBJECTION TO GENERAL UNSECURED CLAIM NO. 13233 – REDUCTION BECAUSE THE CLAIM IS OVERSTATED)**

134. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

135. In the alternative to Counts II and IV, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count IX.

136. After a thorough review of the Debtors' Books and Records, Circuit City has determined that Claim No. 13233 is overstated by $68,689.49 such that such portion of Claim No. 13266 should be reduced to $20,810,252.11.

137. The overstatement is based on two components.

138. First, Claim No. 13233 is overstated based on general invoice pricing discrepancies, whereby Circuit City was quoted a certain price for goods sold by LG, but invoiced at a higher price, in an amount totaling $1,481.00.

139. Second, Claim No. 13233 is overstated because LG improperly reversed advertising chargebacks totaling $67,208.49 for which Circuit City previously received credit.

140. The chargebacks were valid at the time Circuit City sought and received the credit.

141. LG had no valid basis to deny the chargebacks.

142. Accordingly, Circuit City seeks to reduce Claim No. 13233 from the currently asserted amount of $20,878,941.60 to the proper amount of $20,810,252.11 ("Modified Claim No. 13233").

**COUNT X**

**(OBJECTION TO THE 503(B)(9) CLAIM – SETOFF OF THE UNPAID OBLIGATIONS)**

143. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

144. In the alternative to Counts III, V and VI, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count X.

145. The Unpaid Obligations arose from business transactions between Circuit City and LG.

146. The Unpaid Obligations are debts owed by LG to Circuit City.

147. The 503(b)(9) Claim arose from business transactions between LG and Circuit City.

148. The 503(b)(9) Claim is allegedly a debt owed by Circuit City to LG.

149. Consequently, under applicable law, Circuit City has established valid setoff rights.

150. Pursuant to Bankruptcy Code section 558, Circuit City's defenses, including setoff, are preserved.

151. Under applicable law, the Unpaid Obligations should be setoff first against the 503(b)(9) Claim.

152. After setoff, the 503(b)(9) Claim should be reduced to $0.00.

153. After setoff, the Unpaid Obligations should be reduced to $5,071,291 (the "Remaining Unpaid Obligations").

**COUNT XI**

**(OBJECTION TO MODIFIED CLAIM NO. 1261 – SETOFF OF THE UNPAID OBLIGATIONS)**

154. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

155. In the alternative to Counts III, V and VI, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count XI.

156. The Unpaid Obligations arose from business transactions between Circuit City and LG.

157. The Unpaid Obligations are debts owed by LG to Circuit City.

158. The General Unsecured Claims arose from business transactions between LG and Circuit City.

159. The General Unsecured Claims are allegedly debts owed by Circuit City to LG.

160. Consequently, under applicable law, Circuit City has established valid setoff rights.

161. Pursuant to Bankruptcy Code section 558, Circuit City's defenses, including setoff, are preserved.

162. The Remaining Unpaid Obligations should be setoff against Modified Claim No. 1261.

163. After setoff, Modified Claim No. 1261 should be reduced to $9,529,540.75.

164. After setoff, the Unpaid Obligations should be reduced to $0.00.

165. After the foregoing setoffs, Modified Claim No. 13233 would be unaltered and remain a general

unsecured, non-priority claim in the amount of

$20,810,252.11.

## PRAYER FOR RELIEF

WHEREFORE, Circuit City respectfully requests

and prays that the Court:

i.  Pursuant to Count I, enter judgment against LG under 11 U.S.C. §§ 547 and 550 and allow Circuit City to avoid and recover the Preferential Transfers in an amount not less than $59,014,852.87, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the parties' relationship; and

ii.  Pursuant to Count II, disallow the General Unsecured Claims in accordance with Bankruptcy Code section 502(d) pending payment by LG to the Debtors of any avoidable and recoverable transfers; and

iii.  Pursuant to Count III, order LG to immediately turn over and deliver to Circuit City the Unpaid Obligations in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations; and

iv.  In the alternative to Count II, pursuant to Count IV, disallow the General Unsecured Claims in accordance with Bankruptcy Code section 502(d) pending LG's turnover or payment of the Unpaid Obligations to Circuit City; and

v.    In the alternative to Count III, pursuant to Count V, enter judgment against LG for breach of contract and award Circuit City damages in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations; and

vi.    In the alternative to Counts III and V, pursuant to Count VI, enter judgment against LG for unjust enrichment and award Circuit City restitution damages on account of LG's unjust enrichment in an amount not less than $10,469,268, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the LG Agreements or in any agreements governing the Unpaid Obligations; and

vii.    In the alternative to Counts II and IV, pursuant to Count VII, reduce the unsecured portion of Claim No. 1261 from the overstated amount of $15,201,093.25 to the proper amount of $14,600,831.75; and

viii.    In the alternative to Counts II and IV, pursuant to Count VIII, disallow Claim No. 8357 because it has been amended or superseded by Claim No. 13233; and

ix.    In the alternative to Counts II and IV, pursuant to Count IX, reduce Claim No. 13233 from the overstated amount of $20,878,941.60 to the proper amount of $20,810,252.11; and

x.    In the alternative to Counts III, V and VI, pursuant to Count X, authorize Circuit City to effect a setoff of the Unpaid Obligations first against the 503(b)(9) Claim, reducing it to the proper amount of $0.00; and

32

     xi.       In the alternative to Counts III, V and VI, pursuant to Count XI, authorize Circuit City to effect a setoff of the Remaining Unpaid Obligations against Modified Claim No. 1261, reducing it to the proper amount of $9,529,540.75; and

xii.      Grant Circuit City such other and further
          relief the Court deems just and appropriate.

Dated: Richmond, Virginia   MCGUIREWOODS LLP
       March 23, 2010
                              /s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                                     - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                     - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 N. Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                              Counsel for the Plaintiff

34

## **EXHIBIT A**

**(Preferential Transfers)**

**Exhibit A**

| Vendor Name | Check Clear Date | Check Number | Paid Amount |
|---|---|---|---|
| LG ELECTRONICS | 8/12/2008 | 1033390 | $ 983,931.07 |
| LG ELECTRONICS | 8/14/2008 | 1033479 | $ 1,020,941.48 |
| LG ELECTRONICS | 8/15/2008 | 1033603 | $ 1,691,155.46 |
| LG ELECTRONICS | 8/18/2008 | 1033672 | $ 523,158.50 |
| LG ELECTRONICS | 8/18/2008 | 1033702 | $ 203,623.86 |
| LG ELECTRONICS | 8/18/2008 | 1033746 | $ 855,368.15 |
| LG ELECTRONICS | 8/22/2008 | 1033940 | $ 3,011,882.83 |
| LG ELECTRONICS | 8/25/2008 | 1033823 | $ 1,606,378.20 |
| LG ELECTRONICS | 8/25/2008 | 1033992 | $ 366,637.20 |
| LG ELECTRONICS | 8/25/2008 | 1034075 | $ 1,354,423.54 |
| LG ELECTRONICS | 9/2/2008 | 1034158 | $ 4,231,954.89 |
| LG ELECTRONICS | 9/5/2008 | 1034275 | $ 7,772,462.31 |
| LG ELECTRONICS | 9/5/2008 | 1034374 | $ 1,861,131.02 |
| LG ELECTRONICS | 9/9/2008 | 1034607 | $ 640,753.00 |
| LG ELECTRONICS | 9/11/2008 | 1034699 | $ 414,207.00 |
| LG ELECTRONICS | 9/12/2008 | 1034836 | $ 541,651.16 |
| LG ELECTRONICS | 9/15/2008 | 1034910 | $ 4,720,532.60 |
| LG ELECTRONICS | 9/15/2008 | 1035017 | $ 1,747,351.42 |
| LG ELECTRONICS | 9/18/2008 | 1035110 | $ 137,351.15 |
| LG ELECTRONICS | 9/19/2008 | 1035244 | $ 1,281,628.20 |
| LG ELECTRONICS | 9/22/2008 | 1035316 | $ 206,487.00 |
| LG ELECTRONICS | 9/25/2008 | 1035514 | $ 2,759,422.58 |
| LG ELECTRONICS | 9/30/2008 | 1035794 | $ 421,638.09 |
| LG ELECTRONICS | 10/2/2008 | 1035872 | $ 3,913,111.65 |
| LG ELECTRONICS | 10/6/2008 | 1036092 | $ 1,879,479.56 |
| LG ELECTRONICS | 10/7/2008 | 1036134 | $ 1,455,494.28 |
| LG ELECTRONICS | 10/10/2008 | 1036218 | $ 2,689,755.36 |
| LG ELECTRONICS | 10/10/2008 | 1036350 | $ 2,958,854.22 |
| LG ELECTRONICS | 10/14/2008 | 1036412 | $ 796,091.86 |
| LG ELECTRONICS | 10/14/2008 | 1036500 | $ 2,566,744.00 |
| LG ELECTRONICS | 10/20/2008 | 1036587 | $ 749,335.73 |
| LG ELECTRONICS | 10/21/2008 | 1036842 | $ 262,756.88 |
| LG ELECTRONICS | 10/24/2008 | 1036693 | $ 822,993.06 |
| LG ELECTRONICS | 11/3/2008 | 1037373 | $ 2,566,165.56 |
| | | **Total Check Amount** | $ 59,014,852.87 |