Gregg M. Galardi, Esq.                   Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                  Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP   MCGUIREWOODS LLP
One Rodney Square                        One James Center
PO Box 636                               901 E. Cary Street
Wilmington, Delaware 19899-0636          Richmond, Virginia 23219
(302) 651-3000                           (804) 775-1000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 N. Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

*Counsel to the Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                         :  Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :  Case No. 08-35653 (KRH)
et al.,                        :
                               :
          Debtors.             :  Jointly Administered
- - - - - - - - - - - - - - x
CIRCUIT CITY STORES, INC.,     x
                               :
     Plaintiff,                :
                               :
          v.                   :  Adv. Pro. No. 10-_____
                               :
UNITED STATES DEBT RECOVERY    :
LLC and SIGNATURE HOME         :
FURNISHINGS CO. INC.           :
                               :
          Defendants.          :
- - - - - - - - - - - - - - x

**CIRCUIT CITY STORES, INC.'S OBJECTION TO CLAIM NOS. 778
AND 13210 AND COMPLAINT AGAINST UNITED STATES DEBT
RECOVERY LLC AND SIGNATURE HOME FURNISHINGS CO. INC.**

1

Circuit City Stores, Inc. ("Circuit City"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[1] hereby files its objection to proof of claim numbers 778 and 13210 and its complaint (the "Complaint") against United States Debt Recovery LLC ("USDR") and Signature Home Furnishings Co. Inc. ("Signature" and, together with USDR, the "Defendants").  In support of the Complaint, Circuit City respectfully alleges as follows:

### NATURE OF THE ACTION

1.   Circuit City brings this action to avoid and recover certain transfers made to Signature within the 90-day period prior to the commencement of Circuit City's bankruptcy cases.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2.    In addition, Circuit City seeks to recover a sum of not less than $3,800 due and owing from Signature to Circuit City on account of certain receivables arising in connection with the business previously conducted among Circuit City and Signature.

3.    In connection therewith, Circuit City objects to claim number 778 and seeks to disallow it under Bankruptcy Code section 502(d).

4.    Circuit City further objects to claim number 778 on the basis that it is improper in part.

5.    Finally, in the event Circuit City is not entitled to affirmatively recover all or any portion of the receivables, Circuit City seeks to setoff such receivables against claim number 13210.

**THE PARTIES**

6.    Circuit City is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia. Circuit City is a debtor and debtor in possession in the above-captioned chapter 11 bankruptcy proceedings.

7.    Upon information and belief, defendant Signature is a corporation organized under the laws of

3

the State of California with its principal place of business in Cerritos, California.

8.   Upon information and belief, defendant USDR is a limited liability company organized under the laws of the State of Nevada with its principal place of business in Incline Village, Nevada.

### JURISDICTION AND VENUE

9.   This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

10.   This is a core proceeding under 28 U.S.C. § 157(b).

11.   Venue of these cases and the Complaint in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

12.   The statutory and legal predicates for the relief requested by the Complaint are sections 105, 502, 503, 541, 542, 547, 550, and 558 of title 11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

**BACKGROUND**

**A.   General Case Background.**

13.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

14.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

15.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

16.   On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").

17.  On January 17, 2009, the Agent commenced going out of business sales at the Stores pursuant to the Agency Agreement.

18.  As of March 8, 2009, the going out of business sales at the Debtors' Stores were completed.

19.  On September 24, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as amended, the "Plan").

20.  The disclosure statement (the "Disclosure Statement") filed with respect to the Plan was approved on September 24, 2009.

21.  No confirmation hearing has been held with respect to the Plan, and the Plan has not yet been confirmed.

22.  The Plan provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

**B.    The Business Relationship Between Circuit City And Signature.**

23.   Prior to the commencement of these bankruptcy cases, the Debtors were a leading specialty retailer of consumer electronics and operated large nationwide electronics stores that sold, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

24.   During the ordinary course of the Debtors' business, the Debtors maintained books and records of their transactions with Signature (the "Books and Records").

25.   On September 20, 2007, Circuit City and Signature entered into a Master Dealer Agreement.

26.   The Master Dealer Agreement is attached hereto as Exhibit A and has been filed under seal.

27.   The Master Dealer Agreement is governed by Virginia law.

28.   Upon information and belief, the Master Dealer Agreement was extended by various addendums

and/or other agreements (collectively with the Master
Dealer Agreement, the "Signature Agreements").

29.   Pursuant to the Signature Agreements,
Circuit City purchased certain goods from Signature for
resale by Circuit City through its retail channels.

30.   Circuit City and Signature conducted
business with one another up to the Petition Date under
the Signature Agreements.

**C.    Amounts Allegedly Owed To Signature And Signature's
       Proofs Of Claim.**

**(1)  Claim No. 778**

31.   On or about December 10, 2008, Signature
filed claim number 778 ("Claim No. 778").

32.   Claim No. 778 was filed in the total
amount of $36,570.72.

33.   Claim No. 778 was filed as an
administrative priority claim under Bankruptcy Code
section 503(b)(9).

34.   Claim No. 778 was asserted on account of
alleged sales by Signature, and receipt by Circuit City,
of certain goods during the twenty-day period prior to
the Petition Date.

35.   On or about June 5, 2009, Claim No. 778 was transferred from Signature to USDR, pursuant to a notice of claim transfer (Docket No. 3530).

36.   On or about June 23, 2009, the Debtors filed their Twentieth Omnibus Objection (Docket No. 3704).

37.   Pursuant to the Twentieth Omnibus Objection, the Debtors objected to Claim No. 778 and sought to reclassify a portion of Claim No. 778 to a general unsecured non-priority claim on the basis that certain of the goods that were the subject of Claim No. 778 were not received by the Debtors within the twenty days prior to the Petition Date.

38.   On August 20, 2009, this Court entered an order sustaining the Twentieth Omnibus Objection (Docket No. 4576) and thereby reclassifying Claim No. 778 to a general unsecured non-priority claim in the amount of $18,640.58 (the "General Unsecured Claim") and a claim allegedly entitled to priority under Bankruptcy Code section 503(b)(9) in the amount of $17,930.14 (the "Initial 503(b)(9) Claim").

39.   Pursuant to the Court's order on Debtors' Fifty-First and Fifty-Second Omnibus Objections (Docket No. 6228), the Initial 503(b)(9) Claim has been disallowed under Bankruptcy Code section 502(d) pending the return of certain avoidable transfers identified in the Fifty-First and Fifty-Second Omnibus Objections.

**(2)   Claim No. 13210**

40.   On or about June 5, 2009, Signature filed claim number 13210, which expressly amends Claim No. 778 ("Claim No. 13210" or the "Amended 503(b)(9) Claim").

41.   Claim No. 13210 was filed in the total amount of $17,548.92.

42.   Claim No. 13210 was filed as an administrative priority claim under Bankruptcy Code section 503(b)(9).

43.   Claim No. 13210 was asserted on account of alleged sales by Signature, and receipt by Circuit City, of certain goods during the twenty-day period prior to the Petition Date.

44.   On or about September 30, 2009, the Amended 503(b)(9) Claim was transferred from Signature

to USDR, pursuant to a notice of claim transfer (Docket No. 5128).

45.    Pursuant to the Court's order on Debtors' Fifty-First and Fifty-Second Omnibus Objections (Docket No. 6228), the Amended 503(b)(9) Claim has been disallowed under Bankruptcy Code section 502(d) pending the return of certain preferential transfers identified in the Fifty-First and Fifty-Second Omnibus Objections.

**D.    Amounts Owed To Circuit City By Signature.**

46.    As of the date hereof, on account of the pre-petition business conducted between Signature and Circuit City pursuant to the Signature Agreements or otherwise, Signature is indebted to Circuit City, in the amount of $3,800.00 (the "Unpaid Obligations").

47.    The Unpaid Obligations arise from four social audits pursuant to which inspections were performed at four of Signature's factories in order to evaluate compliance with Circuit City's "Supplier Code of Conduct."

48.    The Unpaid Obligations are due, owing, and payable by Signature to Circuit City.

**E.    Transfers To Signature Made Within 90 Days Prior To
The Petition Date.**

49.   During the 90-day period prior to the commencement of Circuit City's bankruptcy cases (the "Preference Period"), Circuit City transferred property to or for the benefit of Signature in an amount not less than $100,037.53.

50.   A list identifying each transfer is attached hereto as <u>Exhibit B</u> and incorporated herein by reference (collectively, the "Preferential Transfers").

51.   Certain of the Preferential Transfers may be subject to defenses under Bankruptcy Code section 547(c).

52.   Each Preferential Transfer was made to satisfy antecedent debts owed by Circuit City to Signature.

53.   Circuit City was insolvent during the 90-day period prior to the Petition Date.

54.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

55. Each Preferential Transfer enabled Signature to receive more than Signature would have received if the transfers or payments had not been made.

56. Each Preferential Transfer enabled Signature to receive more than Signature would have received if Signature received payment of such debt to the extent provided by the Bankruptcy Code.

### COUNT I

### (RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(B) AND 550)

57. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

58. During the Preference Period, Signature was a creditor of Circuit City.

59. Each Preferential Transfer was made to or for the benefit of Signature.

60. Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

61.   Each Preferential Transfer was made during the Preference Period.

62.   Each Preferential Transfer was made while Circuit City was insolvent.

63.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

64.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if the transfers and/or payments had not been made.

65.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if Signature received payment of such debt to the extent provided by the Bankruptcy Code.

66.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

67.   Signature is either (i) the initial transferee of the Preferential Transfers, (ii) the entity for whose benefit the Preferential Transfers were made, or (iii) an immediate or mediate transferee of the Preferential Transfers.

68.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

69.   Subject to potential defenses, Circuit City is entitled to recover pursuant to Bankruptcy Code section 550(a) an amount not less than $100,037.53, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the parties' relationship.

**COUNT II**

**(OBJECTION TO THE GENERAL UNSECURED CLAIM –
DISALLOWANCE UNDER SECTION 502(D))**

70.   Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

71.   The General Unsecured Claim is a right to payment allegedly owed by Circuit City.

72.   The General Unsecured Claim is allegedly a claim under Bankruptcy Code section 101(5)(A).

73.   During the Preference Period, Signature was a creditor of Circuit City.

74.   Each Preferential Transfer was made to or for the benefit of Signature.

75.   Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

76.   Each Preferential Transfer was made during the Preference Period.

77.   Each Preferential Transfer was made while Circuit City was insolvent.

78.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

79.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if the transfers or payments had not been made.

80.   Each Preferential Transfer enabled Signature to receive more than Signature would have received if Signature received payment of such debt to the extent provided by the Bankruptcy Code.

81.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

82.   Signature is either the initial transferee of the Preferential Transfers, the entity for whose benefit the Preferential Transfers were made, or an immediate or mediate transferee of the Preferential Transfers.

83.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

84.   Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claim should be

disallowed pending the payment by Signature of amounts

owed to the Debtors.

### COUNT III

### (TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542)

85.   Circuit City repeats and realleges each

of the allegations set forth above and below as if fully

set forth herein.

86.   Signature is in possession, custody, and

control of the Unpaid Obligations in an amount not less

than $3,800, plus costs, expenses, and interest.

87.   The Unpaid Obligations constitute valid

and existing debts, due and owing by Signature to

Circuit City.

88.   The Unpaid Obligations are property of

Circuit City's estate under section 541 of the

Bankruptcy Code and constitute debts that are matured,

payable on demand, or payable on order.

89.   Accordingly, pursuant to Bankruptcy Code

section 542, Signature should be compelled to

immediately turn over and deliver to Circuit City the

Unpaid Obligations in an amount not less than $3,800,

plus costs, expenses, and interest at the higher of the

legal rate or the rate set forth in the Signature

Agreements or in any agreements governing the Unpaid

Obligations.

## COUNT IV

### (OBJECTION TO THE GENERAL UNSECURED CLAIM – DISALLOWANCE UNDER SECTION 502(D))

90.  Circuit City repeats and realleges each

of the allegations set forth above and below as if fully

set forth herein.

91.  In the alternative to Count II, but

without waiving any allegation contained therein,

Circuit City makes the following allegations in support

of Count IV.

92.  The General Unsecured Claim is a right to

payment allegedly owed by Circuit City.

93.  The General Unsecured Claim is allegedly

a claim under Bankruptcy Code section 101(5)(A).

94.  Signature is in possession, custody, and

control of the Unpaid Obligations in an amount not less

than $3,800, plus costs, expenses, and interest.

19

95.   The Unpaid Obligations constitute valid and existing debts, due and owing by Signature to Circuit City.

96.   The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

97.   The Unpaid Obligations are recoverable pursuant to Bankruptcy Code section 542.

98.   Signature has not turned over or paid to Circuit City the Unpaid Obligations.

99.   Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claim should be disallowed pending Signature's turnover or payment of the Unpaid Obligations to Circuit City.

## COUNT V

### (BREACH OF CONTRACT)

100. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

101. In the alternative to Count III, but without waiving any allegation contained therein,

Circuit City makes the following allegations in support of Count V.

102. Pursuant to the Signature Agreements, Signature is obligated to pay to Circuit City the Unpaid Obligations.

103. The Signature Agreements are valid and enforceable agreements against Signature.

104. Circuit City performed its obligations under the Signature Agreements with respect to the Unpaid Obligations.

105. Signature's failure to compensate Circuit City for the Unpaid Obligations in an amount not less than $3,800 constitutes a material breach of Signature's obligations under the Signature Agreements.

106. As a direct and proximate result of Signature's breaches, Circuit City has incurred damages in an amount not less than $3,800, plus costs, expenses, and interest.

107. Accordingly, Circuit City is entitled to a judgment against Signature in an amount not less than $3,800, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature

Agreements or in any agreements governing the Unpaid
Obligations.

**COUNT VI**

**(UNJUST ENRICHMENT/QUASI CONTRACT)**

108. Circuit City repeats and realleges each
of the allegations set forth above and below as if fully
set forth herein.

109. In the alternative to Counts III and V,
but without waiving any allegation contained therein,
Circuit City makes the following allegations in support
of Count VI.

110. Circuit City conferred a benefit upon
Signature pursuant to the Signature Agreements.

111. Signature knowingly accepted the benefit
conferred by Circuit City.

112. Circuit City reasonably expected to be
compensated by Signature in an amount not less than
$3,800 on account of the benefit conferred upon
Signature.

113. Signature's benefit without just
compensation to Circuit City has unjustly enriched

Signature in an amount not less than $3,800 plus costs, expenses, and interest.

114. Circuit City has no adequate remedy at law to recover the Unpaid Obligations.

115. Accordingly, as a result of Signature's unjust enrichment at Circuit City's expense, Circuit City is entitled to restitution from the Defendant in an amount not less than $3,800, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the Unpaid Obligations.

**COUNT VII**

**(OBJECTION TO THE INITIAL 503(B)(9) CLAIM – DISALLOWANCE BECAUSE THE CLAIM HAS BEEN AMENDED OR SUPERSEDED)**

116. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

117. After a thorough review of the Debtors' Books and Records, the Initial 503(b)(9) Claim, and the Amended 503(b)(9) Claim, Circuit City has determined that the Initial 503(b)(9) Claim is entirely duplicated on the Amended 503(b)(9) Claim.

118. Specifically, Circuit City has determined that the Amended 503(b)(9) Claim consists of the same invoices that form the basis for the Initial 503(b)(9) Claim.

119. Additionally, the proof of claim for Claim No. 13210 -- the Amended 503(b)(9) Claim -- expressly states that it amends Claim No. 778, which contains the Initial 503(b)(9) Claim.

120. Accordingly, Circuit City seeks to disallow the Initial 503(b)(9) Claim because it has been amended or superseded by the Amended 503(b)(9) Claim.

**COUNT VIII**

**(OBJECTION TO THE AMENDED 503(B)(9) CLAIM –
SETOFF OF THE UNPAID OBLIGATIONS)**

121. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

122. In the alternative to Counts III, V and VI, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count VIII.

123. The Unpaid Obligations arose from business transactions between Circuit City and Signature.

124. The Unpaid Obligations are debts owed by Signature to Circuit City.

125. The Amended 503(b)(9) Claim arose from business transactions between Signature and Circuit City.

126. The Amended 503(b)(9) Claim is allegedly a debt owed by Circuit City to Signature.

127. Consequently, under applicable law, Circuit City has established valid setoff rights.

128. Pursuant to Bankruptcy Code section 558, Circuit City's defenses, including setoff, are preserved.

129. Under applicable law, the Unpaid Obligations should be setoff against the Amended 503(b)(9) Claim.

130. After setoff, the Amended 503(b)(9) Claim should be reduced to $13,748.92.

131. After setoff, the Unpaid Obligations should be reduced to $0.

132. After the foregoing setoff, the General Unsecured Claim would be unaltered and remain in the amount of $18,640.58.

### PRAYER FOR RELIEF

WHEREFORE, Circuit City respectfully requests and prays that the Court:

i.   Pursuant to Count I, enter judgment against Signature under 11 U.S.C. §§ 547 and 550 and allow Circuit City to avoid and recover the Preferential Transfers in an amount not less than $100,037.53, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the parties' relationship; and

ii.  Pursuant to Count II, disallow the General Unsecured Claim in accordance with Bankruptcy Code section 502(d) pending payment by Signature to the Debtors of any avoidable and recoverable transfers; and

iii. Pursuant to Count III, order Signature to immediately turn over and deliver to Circuit City the Unpaid Obligations in an amount not less than $3,800, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the Unpaid Obligations; and

iv.  In the alternative to Count II, pursuant to Count IV, disallow the General Unsecured Claim in accordance with Bankruptcy Code section 502(d) pending Signature's turnover or payment of the Unpaid Obligations to Circuit City; and

v.      In the alternative to Count III, pursuant to Count V, enter judgment against Signature for breach of contract and award Circuit City damages in an amount not less than $3,800, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the Unpaid Obligations; and

vi.     In the alternative to Counts III and V, pursuant to Count VI, enter judgment against Signature for unjust enrichment and award Circuit City restitution damages on account of Signature's unjust enrichment in an amount not less than $3,800, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the Signature Agreements or in any agreements governing the Unpaid Obligations; and

vii.    Pursuant to Count VII, disallow the Initial 503(b)(9) Claim in Claim No. 778 because it has been amended or superseded by the Amended 503(b)(9) Claim -- Claim No. 13210; and

viii.   In the alternative to Counts III, V and VI, pursuant to Count VIII, authorize Circuit City to effect a setoff of the Unpaid Obligations against the Amended 503(b)(9) Claim, reducing it to the proper amount of $13,748.92; and

ix.    Grant Circuit City such other and further
       relief the Court deems just and appropriate.

Dated: Richmond, Virginia   MCGUIREWOODS LLP
       March 23, 2010

                            /s/ Douglas M. Foley _____
                            Dion W. Hayes (VSB No. 34304)
                            Douglas M. Foley (VSB No. 34364)
                            One James Center
                            901 E. Cary Street
                            Richmond, Virginia 23219
                            (804) 775-1000

                                   – and –

                            SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                            Gregg M. Galardi, Esq.
                            Ian S. Fredericks, Esq.
                            P.O. Box 636
                            Wilmington, Delaware 19899-0636
                            (302) 651-3000

                                   – and –

                            SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                            Chris L. Dickerson, Esq.
                            155 N. Wacker Drive
                            Chicago, Illinois 60606
                            (312) 407-0700

                            Counsel for Plaintiff

## EXHIBIT A

**(Master Dealer Agreement)**

**FILED UNDER SEAL**

## **EXHIBIT B**

**(Preferential Transfers)**

**Exhibit B**

| Vendor Name | Check Clear Date | Check Number | Paid Amount |
|---|---|---|---|
| SIGNATURE HOME FURNISHINGS | 8/13/2008 | 1033220 | $ 2,576.53 |
| SIGNATURE HOME FURNISHINGS | 8/25/2008 | 1033810 | $ 1,822.08 |
| SIGNATURE HOME FURNISHINGS | 8/26/2008 | 1033928 | $ 671.04 |
| SIGNATURE HOME FURNISHINGS | 9/29/2008 | 1035499 | $ 4,625.60 |
| SIGNATURE HOME FURNISHINGS | 10/8/2008 | 1036122 | $ 79,611.28 |
| SIGNATURE HOME FURNISHINGS | 10/15/2008 | 1036437 | $ 10,731.00 |

**Total Check Amount** $ 100,037.53