Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 N. Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

*Counsel to the Debtors and
Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :  Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :  Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :  Jointly Administered
- - - - - - - - - - - - - - x
CIRCUIT CITY STORES, INC.,      x
                                :
      Plaintiff,                :
                                :
            v.                  :  Adv. Pro. No. 10-_____
                                :
PNY TECHNOLOGIES INC.           :
                                :
      Defendant.                :
- - - - - - - - - - - - - - x

**CIRCUIT CITY STORES, INC.'S OBJECTION TO CLAIM NOS. 447
AND 1723 AND COMPLAINT AGAINST PNY TECHNOLOGIES INC.**

1

Circuit City Stores, Inc. ("Circuit City"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[1] hereby files its objection to proof of claim numbers 447 and 1723 and its complaint (the "Complaint") against PNY Technologies Inc. ("PNY" or the "Defendant").  In support of the Complaint, Circuit City respectfully alleges as follows:

### NATURE OF THE ACTION

1.   Circuit City brings this action to avoid and recover certain transfers made to PNY within the 90-day period prior to the commencement of Circuit City's bankruptcy cases.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2.    In addition, Circuit City seeks to recover a sum of not less than $65,659.75 due and owing from PNY to Circuit City on account of certain receivables arising in connection with the business previously conducted among Circuit City and PNY.

3.    In connection therewith, Circuit City objects to claim numbers 447 and 1723 and seeks to disallow them under Bankruptcy Code section 502(d).

4.    Circuit City further objects to claim number 447 on the basis that it is improper in part.

5.    Finally, in the event Circuit City is not entitled to affirmatively recover all or any portion of the receivables, Circuit City seeks to setoff such receivables against claim number 447.

**THE PARTIES**

6.    Circuit City is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia. Circuit City is a debtor and debtor in possession in the above-captioned chapter 11 bankruptcy proceedings.

7.    Upon information and belief, defendant PNY is a corporation organized under the laws of the

State of Delaware with its principal place of business in Parsippany, New Jersey.

**JURISDICTION AND VENUE**

8.   This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

9.   This is a core proceeding under 28 U.S.C. § 157(b).

10.  Venue of these cases and the Complaint in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

11.  The statutory and legal predicates for the relief requested by the Complaint are sections 105, 502, 503, 541, 542, 547, 550, and 558 of title 11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

**BACKGROUND**

**A.    General Case Background.**

12.  On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

13.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

14.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

15.   On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").

16.   On January 17, 2009, the Agent commenced going out of business sales at the Stores pursuant to the Agency Agreement.

17.   As of March 8, 2009, the going out of business sales at the Debtors' Stores were completed.

18.   On September 24, 2009, the Debtors and the Creditors Committee filed the First Amended Joint

Plan of Liquidation of Circuit City Stores, Inc. and its
Affiliated Debtors and Debtors In Possession and its
Official Committee of Creditors Holding General
Unsecured Claims (as amended, the "Plan").

19.   The disclosure statement (the "Disclosure
Statement") filed with respect to the Plan was approved
on September 24, 2009.

20.   No confirmation hearing has been held
with respect to the Plan, and the Plan has not yet been
confirmed.

21.   The Plan provides for the liquidation of
the Debtors' assets and distribution of the proceeds
thereof under chapter 11 of the Bankruptcy Code.

**B.   The Business Relationship Between Circuit City And
     PNY.**

22.   Prior to the commencement of these
bankruptcy cases, the Debtors were a leading specialty
retailer of consumer electronics and operated large
nationwide electronics stores that sold, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and

6

telecommunications products, and other audio and video electronics.

23.  During the ordinary course of the Debtors' business, the Debtors maintained books and records of their transactions with PNY (the "Books and Records").

24.  On May 16, 2006, Circuit City and PNY entered into a Master Dealer Agreement.

25.  The Master Dealer Agreement is attached hereto as Exhibit A and has been filed under seal.

26.  The Master Dealer Agreement is governed by Virginia law.

27.  Upon information and belief, neither party terminated the Master Dealer Agreement.

28.  Over the course of the parties' business relationship, Circuit City and PNY entered into numerous side agreements, addendums and letter agreements, both subject to, and outside of, the terms of the Master Dealer Agreement (together with the Master Dealer Agreement, the "PNY Agreements").

29.  Pursuant to the PNY Agreements, Circuit City purchased certain goods from PNY for resale by Circuit City through its retail channels.

30.  Circuit City and PNY conducted business with one another up to the Petition Date under the PNY Agreements.

**C.    Amounts Allegedly Owed To PNY And PNY's Proofs Of Claim.**

**(1)  Claim No. 447**

31.  On or about December 1, 2008, PNY filed claim number 447 ("Claim No. 447").

32.  Claim No. 447 was filed in the total amount of $1,723,312.08.

33.  Claim No. 447 was filed as an administrative priority claim under Bankruptcy Code section 503(b)(9) consisting of two distinct liabilities.

34.  First, $875,313.70 was asserted on account of alleged sales by PNY, and receipt by Circuit City, of certain goods during the twenty-day period prior to the Petition Date (collectively, the "Invoices").

35.   Second, $847,998.38 was asserted on account of reversals of deductions and setoffs that Circuit City had taken against prior amounts owed to PNY because of returned goods, goods that were not received, price discrepancies, billbacks and chargebacks (collectively, the "Reversals").

36.   Specifically, the Reversals consist of the following deductions and setoffs that Circuit City had previously taken:

(i)   advertising chargebacks totaling $405,851.92;

(ii)   billbacks totaling $57,157.20;

(iii)   vendor performance chargebacks resulting from supply chain or other violations of agreements between Circuit City and PNY totaling $191,560.01.

(iv)   amounts paid by Circuit City for which Circuit City was subsequently rebilled or not credited totaling $1,520.00;

(v)   model mix discrepancies, whereby Circuit City was invoiced for a different model(s) than Circuit City received from PNY, totaling $1,536.40;

(vi)   quantity discrepancies, whereby Circuit City did not receive the goods for which it was billed for by PNY, totaling $2,776.80;

(vii)   price discrepancies, whereby Circuit
        City was quoted a certain price for
        goods sold by PNY, but invoiced at a
        higher price, totaling $74,739.51;

(viii)  quantity shortages, whereby Circuit
        City was invoiced for a greater number
        of goods than it received from PNY,
        totaling $16,926.24;

(ix)    return discrepancies, whereby Circuit
        City was entitled to more credit for
        returned goods than was credited by
        PNY, totaling $95,930.30; and

37.   On or about September 15, 2009, the
Debtors filed their Thirty-Ninth Omnibus Objection
(Docket No. 4881).

38.   Pursuant to the Thirty-Ninth Omnibus
Objection, the Debtors objected to Claim No. 447 and
sought to reclassify the portion of Claim No. 447
relating to the Invoices to a general unsecured non-
priority claim on the basis that the goods allegedly
received by the Debtors pursuant to the Invoices were
not received by the Debtors within the twenty days prior
to the Petition Date.

39.   On November 19, 2009, this Court entered
an order sustaining the Thirty-Ninth Omnibus Objection
(Docket No. 5829) and thereby reclassifying Claim No.
447 to a general unsecured non-priority claim in the

amount of $875,313.70 (the "General Unsecured Claim")
and a claim allegedly entitled to priority under section
503(b)(9) in the amount of $847,998.38 (the "Alleged
503(b)(9) Claim").

40.   Pursuant to the Court's order on Debtors'
Fifty-First and Fifty-Second Omnibus Objections (Docket
No. 6228), the Alleged 503(b)(9) Claim has been
disallowed under Bankruptcy Code section 502(d) pending
the return of certain avoidable transfers identified in
the Fifty-First and Fifty-Second Omnibus Objections.

**(2)  Claim No. 1723**

41.   On or about December 16, 2008, PNY filed
claim number 1723 ("Claim No. 1723" or the "Litigation
Claim").

42.   Claim No. 1723 was filed by PNY in an
unliquidated amount of "at least $10,000,000."

43.   Claim No. 1723 was filed as a general
unsecured non-priority claim.

44.   Upon information and belief, Claim No.
1723 was asserted on account of an action for the
alleged breach of an August 2006 agreement concerning
the sale and advertising of flash cards.

45.    On or about August 20, 2009, the Debtors filed their Thirty-First Omnibus Objection (Docket No. 4585).

46.    Pursuant to the Thirty-First Omnibus Objection, the Debtors objected to Claim No. 1723 because they disputed any liability for the legal claim.

47.    On October 16, 2009, this Court entered an order on the Thirty-First Omnibus Objection (Docket No. 5294) adjourning the Thirty-First Omnibus Objection with respect to Claim No. 1723.

**D.    Amounts Owed To Circuit City By PNY.**

48.    As of the date hereof, on account of the pre-petition business conducted between PNY and Circuit City pursuant to the PNY Agreements or otherwise, PNY is indebted to Circuit City on account of the following items and in at least the following amounts:

| | |
|---|---|
| Chargebacks | $44,516.96 |
| Returns | $21,142.79 |
| **TOTAL** | **$65,659.75** |

(collectively, the "Unpaid Obligations").

49.    The Unpaid Obligations are due, owing, and payable by PNY to Circuit City.

**E.    Transfers To PNY Made Within 90 Days Prior To The Petition Date.**

50.    During the 90-day period prior to the commencement of Circuit City's bankruptcy cases (the "Preference Period"), Circuit City transferred property to or for the benefit of PNY in an amount not less than $994,588.20.

51.    A list identifying each transfer is attached hereto as <u>Exhibit B</u> and incorporated herein by reference (collectively, the "Preferential Transfers").

52.    Certain of the Preferential Transfers may be subject to defenses under Bankruptcy Code section 547(c).

53.    Each Preferential Transfer was made to satisfy antecedent debts owed by Circuit City to PNY.

54.    Circuit City was insolvent during the 90-day period prior to the Petition Date.

55.    Each Preferential Transfer enabled PNY to receive more than PNY would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

56.  Each Preferential Transfer enabled PNY to receive more than PNY would have received if the transfers or payments had not been made.

57.  Each Preferential Transfer enabled PNY to receive more than PNY would have received if PNY received payment of such debt to the extent provided by the Bankruptcy Code.

### COUNT I

### (RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(B) AND 550)

58.  Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

59.  During the Preference Period, PNY was a creditor of Circuit City.

60.  Each Preferential Transfer was made to or for the benefit of PNY.

61.  Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

62.   Each Preferential Transfer was made during the Preference Period.

63.   Each Preferential Transfer was made while Circuit City was insolvent.

64.   Each Preferential Transfer enabled PNY to receive more than PNY would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

65.   Each Preferential Transfer enabled PNY to receive more than PNY would have received if the transfers and/or payments had not been made.

66.   Each Preferential Transfer enabled PNY to receive more than PNY would have received if PNY received payment of such debt to the extent provided by the Bankruptcy Code.

67.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

68.   PNY is either (i) the initial transferee of the Preferential Transfers, (ii) the entity for whose

15

benefit the Preferential Transfers were made, or (iii) an immediate or mediate transferee of the Preferential Transfers.

69.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

70.   Subject to potential defenses, Circuit City is entitled to recover pursuant to Bankruptcy Code section 550(a) an amount not less than $994,588.20, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the PNY Agreements or in any agreements governing the parties' relationship.

## COUNT II

### (OBJECTION TO THE GENERAL UNSECURED CLAIM AND LITIGATION CLAIM – DISALLOWANCE UNDER SECTION 502(D))

71.   Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

72.   The General Unsecured Claim and Litigation Claim are rights to payment allegedly owed by Circuit City.

73.   The General Unsecured Claim and Litigation Claim are allegedly claims under Bankruptcy Code section 101(5)(A).

74.   During the Preference Period, PNY was a creditor of Circuit City.

75.   Each Preferential Transfer was made to or for the benefit of PNY.

76.   Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

77.   Each Preferential Transfer was made during the Preference Period.

78.   Each Preferential Transfer was made while Circuit City was insolvent.

79.   Each Preferential Transfer enabled PNY to receive more than PNY would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

80.   Each Preferential Transfer enabled PNY to receive more than PNY would have received if the transfers or payments had not been made.

17

81.  Each Preferential Transfer enabled PNY to receive more than PNY would have received if PNY received payment of such debt to the extent provided by the Bankruptcy Code.

82.  Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b), but certain Preferential Transfers may be subject to a defense under Bankruptcy Code section 547(c).

83.  PNY is either the initial transferee of the Preferential Transfers, the entity for whose benefit the Preferential Transfers were made, or an immediate or mediate transferee of the Preferential Transfers.

84.  Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

85.  Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claim and Litigation Claim should be disallowed pending the payment by PNY of amounts owed to the Debtors.

## COUNT III

### (TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542)

86.    Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

87.    PNY is in possession, custody, and control of the Unpaid Obligations in an amount not less than $65,659.75, plus costs, expenses, and interest.

88.    The Unpaid Obligations constitute valid and existing debts, due and owing by PNY to Circuit City.

89.    The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

90.    Accordingly, pursuant to Bankruptcy Code section 542, PNY should be compelled to immediately turn over and deliver to Circuit City the Unpaid Obligations in an amount not less than $65,659.75, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the PNY Agreements or in any agreements governing the Unpaid Obligations.

## COUNT IV

### (OBJECTION TO THE GENERAL UNSECURED CLAIM AND LITIGATION CLAIM – DISALLOWANCE UNDER SECTION 502(D))

91.   Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

92.   In the alternative to Count II, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count IV.

93.   The General Unsecured Claim and Litigation Claim are rights to payment allegedly owed by Circuit City.

94.   The General Unsecured Claim and Litigation Claim are allegedly claims under Bankruptcy Code section 101(5)(A).

95.   PNY is in possession, custody, and control of the Unpaid Obligations in an amount not less than $65,659.75, plus costs, expenses, and interest.

96.   The Unpaid Obligations constitute valid and existing debts, due and owing by PNY to Circuit City.

97.  The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

98.  The Unpaid Obligations are recoverable pursuant to Bankruptcy Code section 542.

99.  PNY has not turned over or paid to Circuit City the Unpaid Obligations.

100. Accordingly, pursuant to Bankruptcy Code section 502(d), the General Unsecured Claim and Litigation Claim should be disallowed pending PNY's turnover or payment of the Unpaid Obligations to Circuit City.

### COUNT V

### (BREACH OF CONTRACT)

101. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

102. In the alternative to Count III, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count V.

103. Pursuant to the PNY Agreements, PNY is obligated to pay to Circuit City the Unpaid Obligations.

104. The PNY Agreements are valid and enforceable agreements against PNY.

105. Circuit City performed its obligations under the PNY Agreements with respect to the Unpaid Obligations.

106. PNY's failure to compensate Circuit City for the Unpaid Obligations in an amount not less than $65,659.75 constitutes a material breach of PNY's obligations under the PNY Agreements.

107. As a direct and proximate result of PNY's breaches, Circuit City has incurred damages in an amount not less than $65,659.75, plus costs, expenses, and interest.

108. Accordingly, Circuit City is entitled to a judgment against PNY in an amount not less than $65,659.75, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the PNY Agreements or in any agreements governing the Unpaid Obligations.

## COUNT VI

### (UNJUST ENRICHMENT/QUASI CONTRACT)

109. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

110. In the alternative to Counts III and V, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count VI.

111. Circuit City conferred a benefit upon PNY pursuant to the PNY Agreements.

112. PNY knowingly accepted the benefit conferred by Circuit City.

113. Circuit City reasonably expected to be compensated by PNY in an amount not less than $65,659.75 on account of the benefit conferred upon PNY.

114. PNY's benefit without just compensation to Circuit City has unjustly enriched PNY in an amount not less than $65,659.75 plus costs, expenses, and interest.

115. Circuit City has no adequate remedy at law to recover the Unpaid Obligations.

116. Accordingly, as a result of PNY's unjust enrichment at Circuit City's expense, Circuit City is entitled to restitution from the Defendant in an amount not less than $65,659.75, plus costs, expenses, and interest at the higher of the legal rate or the rate set forth in the PNY Agreements or in any agreements governing the Unpaid Obligations.

## COUNT VII

### (OBJECTION TO THE GENERAL UNSECURED CLAIM – REDUCTION BECAUSE THE CLAIM IS OVERSTATED)

117. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

118. In the alternative to Counts II and IV, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count VII.

119. After a thorough review of the Debtors' Books and Records, Circuit City has determined that the General Unsecured Claim is overstated by $8,564.80 such that it should be reduced to $866,748.90.

120. The overstatement is based on two components.

121. First, the General Unsecured Claim is overstated based on general invoice pricing discrepancies, whereby Circuit City was quoted a certain price for goods sold by PNY, but invoiced at a higher price, in an amount totaling $8,114.80.

122. Second, the General Unsecured Claim is overstated based on invoice shortages, whereby Circuit City was invoiced for a greater number of goods than it received from PNY, in an amount totaling $450.00.

123. Because of the overstatements, Circuit City seeks to reduce the General Unsecured Claim from the currently asserted amount of $875,313.70 to the proper amount of $866,748.90 (the "Modified General Unsecured Claim").

**COUNT VIII**

**(OBJECTION TO THE ALLEGED 503(B)(9) CLAIM – DISALLOWANCE BECAUSE THE CLAIM IS INVALID)**

124. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

125. Circuit City has determined that the Alleged 503(b)(9) Claim is based solely upon the Reversals, which consist entirely of PNY's reversals of deductions and setoffs that Circuit City had previously taken against amounts owed to PNY for goods or services received by Circuit City.

126. Circuit City has determined that the deductions and setoffs underlying the Reversals were properly applied at the time they were taken.

127. Therefore, the Defendant's assertion that the Reverals should be reversed is without merit, and Circuit City is not obligated to PNY on account of the Reversals.

128. Accordingly, the Alleged 503(b)(9) Claim should be disallowed in its entirety.

**COUNT IX**

**(OBJECTION TO THE ALLEGED 503(B)(9) CLAIM –
RECLASSIFICATION BECAUSE THE CLAIM IS NOT ENTITLED TO
SECTION 503(B)(9) PRIORITY)**

129. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

130. In the alternative to Count VIII, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count IX.

131. After a thorough review of the Debtors' Books and Records, Circuit City has determined that the Alleged 503(b)(9) Claim does not qualify for administrative expense priority under Bankruptcy Code section 503(b)(9) because it is not based on the sale of goods received by Circuit City within the twenty-day period prior to the Petition Date (the "503(b)(9) Period").

132. Specifically, Circuit City has determined that the Alleged 503(b)(9) Claim is based solely upon the Reversals, which consist entirely of PNY's reversals of deductions and setoffs that Circuit City had previously taken against amounts owed to PNY for goods received by Circuit City.

133. The Reversals were not "sold" to the Debtors.

134. The Reversals were not "received" by the Debtors within the 503(b)(9) Period.

135. The Reversals do not qualify as "goods."

136. Circuit City did not receive any "value" for the Reversals.

137. Therefore, the Alleged 503(b)(9) Claim does not qualify for priority under Bankruptcy Code section 503(b)(9).

138. Accordingly, Circuit City the Alleged 503(b)(9) Claim should be reclassified to a general unsecured non-priority claim.

**COUNT X**

**(OBJECTION TO THE MODIFIED GENERAL UNSECURED CLAIM – SETOFF OF THE UNPAID OBLIGATIONS)**

139. Circuit City repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

140. In the alternative to Counts III, V and VI, but without waiving any allegation contained therein, Circuit City makes the following allegations in support of Count X.

141. The Unpaid Obligations arose from business transactions between Circuit City and PNY.

142. The Unpaid Obligations are debts owed by PNY to Circuit City.

143. The Modified General Unsecured Claim allegedly arose from business transactions between PNY and Circuit City.

144. The Modified General Unsecured Claim is a debt allegedly owed by Circuit City to PNY.

145. Consequently, under applicable law, Circuit City has established valid setoff rights.

146. Pursuant to Bankruptcy Code section 558, Circuit City's defenses, including setoff, are preserved.

147. Under applicable law, the Unpaid Obligations should be setoff against the Modified Unsecured Claim.

148. After setoff, the Modified General Unsecured Claim should be reduced to $801,089.15.

149. After setoff, the Unpaid Obligations should be reduced to $0.

150. After the foregoing setoff, the Litigation Claim would be unaltered and remain an unliquidated claim subject to the Debtors' right to

pursue the Thirty-First Omnibus Objection or otherwise

object to and address the Litigation Claim.

### PRAYER FOR RELIEF

WHEREFORE, Circuit City respectfully requests

and prays that the Court:

i.     Pursuant to Count I, enter judgment against
       PNY under 11 U.S.C. §§ 547 and 550 and allow
       Circuit City to avoid and recover the
       Preferential Transfers in an amount not less
       than $994,588.20, plus costs, expenses, and
       interest at the higher of the legal rate or
       the rate set forth in the PNY Agreements or in
       any agreements governing the parties'
       relationship; and

ii.    Pursuant to Count II, disallow the General
       Unsecured Claim and Litigation Claim in
       accordance with Bankruptcy Code section 502(d)
       pending payment by PNY to the Debtors of any
       avoidable and recoverable transfers; and

iii.   Pursuant to Count III, order PNY to
       immediately turn over and deliver to Circuit
       City the Unpaid Obligations in an amount not
       less than $65,659.75, plus costs, expenses,
       and interest at the higher of the legal rate
       or the rate set forth in the PNY Agreements or
       in any agreements governing the Unpaid
       Obligations; and

iv.    In the alternative to Count II, pursuant to
       Count IV, disallow the General Unsecured Claim
       and Litigation Claim in accordance with
       Bankruptcy Code section 502(d) pending PNY's
       turnover or payment of the Unpaid Obligations
       to Circuit City; and

v.    In the alternative to Count III, pursuant to
Count V, enter judgment against PNY for breach
of contract and award Circuit City damages in
an amount not less than $65,659.75, plus
costs, expenses, and interest at the higher of
the legal rate or the rate set forth in the
PNY Agreements or in any agreements governing
the Unpaid Obligations; and

vi.    In the alternative to Counts III and V,
pursuant to Count VI, enter judgment against
PNY for unjust enrichment and award Circuit
City restitution damages on account of PNY's
unjust enrichment in an amount not less than
$65,659.75, plus costs, expenses, and interest
at the higher of the legal rate or the rate
set forth in the PNY Agreements or in any
agreements governing the Unpaid Obligations;
and

vii.    In the alternative to Counts II and IV,
pursuant to Count VII, reduce the General
Unsecured Claim from the overstated amount of
$875,313.70 to the proper amount of
$866,748.90; and

viii.    Pursuant to Count VIII, disallow the Alleged
503(b)(9) Claim because it is invalid; and

ix.    In the alternative to Count VIII, pursuant to
Count IX, reclassify the Alleged 503(b)(9)
Claim to a general unsecured non-priority
claim because it is not entitled to priority
under Bankruptcy Code section 503(b)(9); and

x.    In the alternative to Counts III, V and VI,
pursuant to Count X, authorize Circuit City to
effect a setoff of the Unpaid Obligations
against the Modified General Unsecured Claim,
reducing it to the proper amount of
$801,089.15; and

xi.      Grant Circuit City such other and further
         relief the Court deems just and appropriate.

Dated: Richmond, Virginia   MCGUIREWOODS LLP
       March 23, 2010
                             /s/ Douglas M. Foley _____
                             Dion W. Hayes (VSB No. 34304)
                             Douglas M. Foley (VSB No. 34364)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                                     - and -

                             SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

                                     - and -

                             SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                             Chris L. Dickerson, Esq.
                             155 N. Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                             Counsel for the Plaintiff

## **EXHIBIT A**

**(Master Dealer Agreement)**

**FILED UNDER SEAL**

### EXHIBIT B

**(Preferential Transfers)**

**Exhibit B**

| Vendor Name | Check Clear Date | Check Number | Paid Amount |
|---|---|---|---|
| PNY TECHNOLOGIES INC | 8/15/2008 | 1033504 | $  50,391.82 |
| PNY TECHNOLOGIES INC | 9/5/2008 | 1034394 | $  14,938.88 |
| PNY TECHNOLOGIES INC | 9/16/2008 | 1034922 | $   3,270.00 |
| PNY TECHNOLOGIES INC | 9/26/2008 | 1035536 | $ 645,919.64 |
| PNY TECHNOLOGIES INC | 9/29/2008 | 1035649 | $  94,514.16 |
| PNY TECHNOLOGIES INC | 10/10/2008 | 1036237 | $  66,265.54 |
| PNY TECHNOLOGIES INC | 10/15/2008 | 1036417 | $  15,848.65 |
| PNY TECHNOLOGIES INC | 10/15/2008 | 1036513 | $  24,392.12 |
| PNY TECHNOLOGIES INC | 10/20/2008 | 1036605 | $  60,290.35 |
| PNY TECHNOLOGIES INC | 10/31/2008 | 1037159 | $  18,757.04 |
| | | **Total Check Amount** | $ 994,588.20 |