Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Bryan A. Fratkin (VSB No. 38933)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 N. Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

*Counsel to the Debtors and
Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653 (KRH)
<u>et</u> <u>al.</u>,                    :
                              :
            Debtors.          :  Jointly Administered
- - - - - - - - - - - - - - x
CIRCUIT CITY STORES, INC.,    x
                              :
       Plaintiff,             :
                              :
            v.                :  Adv. Pro. No. 10-_____
                              :
ONKYO USA CORP. and NATIONAL  :
UNION FIRE INSURANCE COMPANY  :
OF PITTSBURGH, PA,            :
                              :
            Defendant.        :
- - - - - - - - - - - - - - x

**CIRCUIT CITY STORES, INC.'S OBJECTION TO CLAIM NOS. 128,
958 AND 2295 AND COMPLAINT AGAINST ONKYO USA CORP. AND
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

Circuit City Stores, Inc. ("Circuit City"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[1] hereby files its objection to proof of claim numbers 128, 958, and 2295 and its complaint (the "Complaint") against Onkyo USA Corporation ("Onkyo") and the National Union Fire Insurance Company of Pittsburgh, PA ("National Union" and, together with Onkyo, the "Defendants").  In support of the Complaint, Circuit City respectfully alleges as follows:

### NATURE OF THE ACTION

1.   Circuit City brings this action to avoid and recover certain transfers made to Onkyo within the

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

90-day period prior to the commencement of Circuit City's bankruptcy cases.

2.   In addition, Circuit City seeks to recover a sum of not less than $238,910.84 due and owing from Onkyo to Circuit City on account of certain receivables arising in connection with the business previously conducted between Circuit City and Onkyo (collectively, the "Unpaid Obligations").

3.   In connection therewith, Circuit City objects to claim number 958 ("Claim No. 958") and claim number 2295 ("Claim No. 2295") and seeks to disallow them under Bankruptcy Code section 502(d).

4.   In the event Claim No. 2295 is not disallowed under Bankruptcy Code section 502(d), Circuit City objects to such claim on the basis that it is improperly classified and overstated.

5.   Circuit City further objects to claim number 128 ("Claim No. 128" and, together with Claim Nos. 958 and 2295, the "Onkyo Claims") on the basis that it is overstated.

6.   Finally, in the event Circuit City is not entitled to affirmatively recover all or any portion of

the Unpaid Obligations, Circuit City seeks to setoff the Unpaid Obligations against any amount for which it is determined to be liable with respect to Claim No. 128.

**THE PARTIES**

7.   Circuit City is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia. Circuit City is a debtor and debtor in possession in the above-captioned chapter 11 bankruptcy cases.

8.   Upon information and belief, defendant Onkyo is a corporation organized under the laws of the State of Illinois with its principal place of business in Upper Saddle River, New Jersey.

9.   Upon information and belief, defendant National Union is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York.

**JURISDICTION AND VENUE**

10.   This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

11.   This is a core proceeding under 28 U.S.C. § 157(b).

4

12.   Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

13.   The statutory and legal predicates for the relief requested by the Complaint are sections 105, 502, 503, 541, 542, 547, 550, and 558 of title 11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

**BACKGROUND**

**A.   General Case Background.**

14.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

15.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

16.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no

trustee or examiner has been appointed in these chapter 11 cases.

17.  On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales ("GOB Sales") at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").

18.  On January 17, 2009, the Agent commenced GOB Sales at the Stores pursuant to the Agency Agreement.

19.  As of March 8, 2009, the GOB Sales at the Debtors' Stores were completed.

20.  On September 24, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as amended, the "Plan").

21.  The disclosure statement (the "Disclosure Statement") filed with respect to the Plan was approved on September 24, 2009.

22.   No confirmation hearing has been held with respect to the Plan, and the Plan has not yet been confirmed.

23.   The Plan provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

**B.    The Debtors' Secured Indebtedness**

24.   Prior to the Petition Date, certain of the Debtors, including Circuit City, entered into a revolving credit facility (the "Pre-Petition Credit Facility") with Bank of America, N.A., as agent.

25.   The lenders under the Pre-Petition Credit Facility made advances under the Pre-Petition Credit Facility that were secured by first priority liens on substantially all of the Debtors' assets, including all of the Debtors' existing and after-acquired inventory and the proceeds thereof.

26.   As of the Petition Date, approximately $898 million was outstanding under the Pre-Petition Credit Facility.

27.   After the Petition Date, the Debtors sought and obtained authority to enter into a post-

petition, debtor in possession, secured financing
facility (the "DIP Financing Facility").

28.   All obligations under the DIP Financing
Facility were secured by substantially all of the
Debtors' existing and after-acquired assets, including
"inventory" and the proceeds thereof.

29.   The Debtors used the DIP Financing
Facility to repay all of the outstanding indebtedness
under the Pre-Petition Credit Facility, as well as to
finance ongoing post-petition operations.

**C.   The Business Relationship Between Circuit City And
Onkyo.**

30.   Prior to the commencement of these
bankruptcy cases, the Debtors were a leading specialty
retailer of consumer electronics and operated large
nationwide electronics stores that sold, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

31.   During the ordinary course of the
Debtors' business, the Debtors maintained books and

records of their transactions with Onkyo (the "Books and Records").

32.    Over the course of the parties' business relationship, Circuit City and Onkyo entered into numerous purchase agreements (the "Onkyo Agreements").

33.    Pursuant to the Onkyo Agreements, Circuit City purchased certain goods from Onkyo for resale by Circuit City through its retail channels.

34.    Circuit City and Onkyo conducted business with one another up to and through the Petition Date under the Onkyo Agreements.

**D.    Onkyo's Reclamation Demand.**

35.    On November 17, 2008, Onkyo submitted a letter to Circuit City demanding the return of certain goods that were allegedly sold to and received by Circuit City within the forty-five day period prior to the Petition Date (the "Reclamation Demand").

36.    On March 10, 2009, the Reclamation Demand was denied because the Debtors did not submit a notice to Onkyo setting forth an allowed reclamation claim.

**E.    Amounts Allegedly Owed To Onkyo And Onkyo's Proofs
Of Claim.**

37.   On or about January 19, 2010, the Debtors

entered into a Settlement and Stipulation By and Among

the Debtors and Onkyo Resolving the Debtors' Fourth

Omnibus Objection to Claims 128, 958, and 2295 (Docket

No. 6313) (the "Settlement Agreement").

38.   Pursuant to the Settlement Agreement, the

amount of each Onkyo Claim was modified.

39.   Pursuant to the Settlement Agreement, the

Debtors retained the right to further object to the

Onkyo Claims.

**(1)  Claim No. 128**

40.   On or about November 20, 2008, Onkyo

filed Claim No. 128.

41.   Pursuant to the Settlement Agreement,

Claim No. 128 has been modified to a claim in the amount

of $3,927,287.70 allegedly entitled to administrative

priority under Bankruptcy Code section 503(b)(9).

42.   In Claim No. 128, as modified, Onkyo

alleged that the claim was based on sales of certain

10

goods by Onkyo to Circuit City during the twenty-day
period prior to the Petition Date.

43.   On or about November 17, 2009, Claim No.
128 was transferred from Onkyo to National Union,
pursuant to a notice of claim transfer (Docket No.
5801).

44.   Pursuant to the Court's order on Debtors'
Fifty-First and Fifty-Second Omnibus Objections (Docket
No. 6228), Claim No. 128 has been temporarily disallowed
under Bankruptcy Code section 502(d) pending the Court's
resolution of Circuit City's allegations that Onkyo
received the avoidable transfers identified in the
Fifty-First and Fifty-Second Omnibus Objections.

**(2)   Claim No. 958**

45.   On or about December 19, 2008, Onkyo
filed Claim No. 958.

46.   Pursuant to the Settlement Agreement,
Claim No. 958 has been modified to a claim in the amount
of $977,716.50 allegedly entitled to administrative
priority under Bankruptcy Code section 503(b)(9).

47.   In Claim No. 958, as modified, Onkyo
alleged that the claim was based on sales of certain

11

goods by Onkyo to Circuit City during the twenty-day

period prior to the Petition Date.

     **(3)  Claim No. 2295**

     48.  On or about December 22, 2008, Onkyo

filed Claim No. 2295.

     49.  Pursuant to the Settlement Agreement,

Claim No. 2295 has been modified to a claim in the

amount $1,722,471.37 allegedly entitled to

administrative priority based on the right to

reclamation.

     50.  In Claim No. 2295, as modified, Onkyo

alleged that the claim was based on sales of certain

goods by Onkyo to Circuit City during the period between

the twenty-first day and forty-fifth day before to the

Petition Date.

     51.  On or about November 17, 2009, Claim No.

2295 was transferred from Onkyo to National Union,

pursuant to a notice of claim transfer (Docket No.

5800).

**F.  Amounts Owed To Circuit City By Onkyo.**

     52.  As of the date hereof, on account of the

pre- and post-petition business conducted between Onkyo

and Circuit City pursuant to the Onkyo Agreements or
otherwise, Onkyo is indebted to Circuit City on account
of the following Unpaid Obligations in at least the
following amounts:

| | |
|---|---|
| Chargebacks | $199,538.97 |
| Warranty Claims | $25,109.00 |
| Returns | $14,262.87 |
| **TOTAL** | **$238,910.84** |

53.   The Unpaid Obligations are due, owing,
and payable by Onkyo to Circuit City.

**G.   Transfers To Onkyo Made Within 90 Days Prior To The
Petition Date.**

54.   During the 90-day period prior to the
commencement of Circuit City's bankruptcy cases (the
"Preference Period"), Circuit City transferred property
to or for the benefit of Onkyo in an amount not less
than $9,373,092.50.

55.   A list identifying each transfer is
attached hereto as Exhibit A and incorporated herein by
reference (collectively, the "Preferential Transfers").

56.   Some, but not all, of the Preferential
Transfers might be subject to defenses under Bankruptcy
Code section 547(c).

## COUNT I

### (RECOVERY OF PREFERENTIAL TRANSFERS
### PURSUANT TO 11 U.S.C. §§ 547(B) AND 550)

57.  Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

58.  During the Preference Period, Onkyo was a creditor of Circuit City.

59.  Each Preferential Transfer was made to or for the benefit of Onkyo.

60.  Each Preferential Transfer was made for or on account of an antecedent debt or debts owed by Circuit City before such Preferential Transfers were made.

61.  Each Preferential Transfer was made during the Preference Period.

62.  Each Preferential Transfer was made while Circuit City was insolvent.

63.  Each Preferential Transfer enabled Onkyo to receive more than Onkyo would have received if Circuit City's chapter 11 case was instead a case under chapter 7 of the Bankruptcy Code.

14

64.   Each Preferential Transfer enabled Onkyo to receive more than Onkyo would have received if the transfers and/or payments had not been made.

65.   Each Preferential Transfer enabled Onkyo to receive more than Onkyo would have received if Onkyo received payment of such debt to the extent provided by the Bankruptcy Code.

66.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b).

67.   Onkyo is either (i) the initial transferee of the Preferential Transfers, (ii) the entity for whose benefit the Preferential Transfers were made, or (iii) an immediate or mediate transferee of the Preferential Transfers.

68.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

69.   Subject to potential defenses, Circuit City is entitled to recover an amount not less than $9,373,092.50 pursuant to Bankruptcy Code section 550(a).

15

## COUNT II

## (OBJECTION TO CLAIM NOS. 958 AND 2295 – DISALLOWANCE UNDER SECTION 502(D))

70.   Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

71.   Claim Nos. 958 and 2295 are rights to payment allegedly owed by Circuit City.

72.   Each Preferential Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b).

73.   Each Preferential Transfer that is avoided is recoverable pursuant to Bankruptcy Code section 550.

74.   Accordingly, pursuant to Bankruptcy Code section 502(d), Claim Nos. 958 and 2295 should be disallowed pending the payment by Onkyo of amounts owed to Circuit City.

## COUNT III

## (TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542)

75.   Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

16

76.    Onkyo is in possession, custody, and
control of the Unpaid Obligations in an amount not less
than $238,910.84.

77.    The Unpaid Obligations constitute valid
and existing debts, due and owing by Onkyo to Circuit
City.

78.    The Unpaid Obligations are property of
Circuit City's estate under section 541 of the
Bankruptcy Code and constitute debts that are matured,
payable on demand, or payable on order.

79.    Accordingly, pursuant to Bankruptcy Code
section 542, Onkyo should be compelled to turn over and
deliver to Circuit City the Unpaid Obligations in an
amount not less than $238,910.84.

**COUNT IV**

**(OBJECTION TO CLAIM NOS. 958 AND 2295 – DISALLOWANCE
UNDER SECTION 502(D))**

80.    Circuit City repeats and realleges each
of the allegations set forth above as if fully set forth
herein.

81.    In the alternative to Count II, but
without waiving any allegation with respect thereto,

17

Circuit City makes the following additional allegations in support of Count IV.

82.  Claim Nos. 958 and 2295 are rights to payment allegedly owed by Circuit City.

83.  Onkyo is in possession, custody, and control of the Unpaid Obligations in an amount not less than $238,910.84.

84.  The Unpaid Obligations constitute valid and existing debts, due and owing by Onkyo to Circuit City.

85.  The Unpaid Obligations are property of Circuit City's estate under section 541 of the Bankruptcy Code and constitute debts that are matured, payable on demand, or payable on order.

86.  The Unpaid Obligations are recoverable pursuant to Bankruptcy Code section 542.

87.  Despite being requested to do so, Onkyo has not turned over or paid to Circuit City the Unpaid Obligations.

88.  Accordingly, pursuant to Bankruptcy Code section 502(d), Claim Nos. 958 and 2295 should be

disallowed pending Onkyo's turnover or payment of the
Unpaid Obligations to Circuit City.

### COUNT V

### (BREACH OF CONTRACT)

89.   Circuit City repeats and realleges each
of the allegations set forth above as if fully set forth
herein.

90.   In the alternative to Count III, but
without waiving any allegation with respect thereto,
Circuit City makes the following additional allegations
in support of Count V.

91.   Pursuant to the Onkyo Agreements, Onkyo
is obligated to pay to Circuit City the Unpaid
Obligations.

92.   The Onkyo Agreements are valid and
enforceable agreements against Onkyo.

93.   Circuit City performed its obligations
under the Onkyo Agreements with respect to the Unpaid
Obligations.

94.   Onkyo's failure to compensate Circuit
City for the Unpaid Obligations in an amount not less

than $238,910.84 constitutes a material breach of
Onkyo's obligations under the Onkyo Agreements.

95.  As a direct and proximate result of
Onkyo's breaches, Circuit City has incurred damages in
an amount not less than $238,910.84.

96.  Accordingly, Circuit City is entitled to
a judgment against Onkyo in an amount not less than
$238,910.84.

## COUNT VI

### (UNJUST ENRICHMENT/QUASI CONTRACT)

97.  Circuit City repeats and realleges each
of the allegations set forth above as if fully set forth
herein.

98.  In the alternative to Counts III and V,
but without waiving any allegation with respect thereto,
Circuit City makes the following additional allegations
in support of Count VI.

99.  Circuit City conferred a benefit upon
Onkyo pursuant to the Onkyo Agreements.

100. Onkyo knowingly accepted the benefit
conferred by Circuit City.

101. Circuit City reasonably expected to be compensated by Onkyo in an amount not less than $238,910.84 on account of the benefit conferred upon Onkyo.

102. Onkyo's benefit without just compensation to Circuit City has unjustly enriched Onkyo in an amount not less than $238,910.84.

103. Circuit City has no adequate remedy at law to recover the Unpaid Obligations.

104. Accordingly, as a result of Onkyo's unjust enrichment at Circuit City's expense, Circuit City is entitled to restitution from the Defendant in an amount not less than $238,910.84.

## COUNT VII

### (OBJECTION TO CLAIM NO. 128 AS OVERSTATED)

105. Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

106. After a thorough review of the Debtors' Books and Records, Circuit City has determined that Claim No. 128 is overstated by $180.

107. In particular, Onkyo invoiced Circuit City for a greater number of goods than Circuit City actually received from Onkyo, and the value of those goods that Circuit City did not receive totaled $180.

108. Due to the overstatement, Circuit City's maximum liability on Claim No. 128 should be reduced to an amount not to exceed $3,927,107.70.

## COUNT VIII

### (OBJECTION TO CLAIM NO. 2295 AS MISCLASSIFIED)

109. Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

110. In the alternative to Counts II and IV, but without waiving any allegation with respect thereto, Circuit City makes the following additional allegations in support of Count VIII.

111. After a thorough review of the Debtors' Books and Records, Circuit City has determined that Claim No. 2295 is not entitled to administrative priority.

112. Specifically, Claim No. 2295 is based on goods that were sold to the Debtors prior to the Petition Date (the "Reclamation Goods").

113. The Reclamation Goods were received by the Debtors prior to October 21, 2008.

114. At the time the Reclamation Goods were received, such Goods were subject to the pre-petition lenders' liens.

115. Although Onkyo submitted its Reclamation Demand, Onkyo did not take any action to enforce its alleged reclamation right.

116. Onkyo did not file a motion for relief from the automatic stay to enforce its alleged reclamation right.

117. Onkyo did not commence any adversary proceeding to enforce its alleged reclamation right.

118. Onkyo did not object to approval of the DIP Financing Facility.

119. Onkyo did not object to the repayment of the Debtors' pre-petition secured indebtedness under the Pre-Petition Credit Facility from borrowings under the DIP Financing Facility.

23

120. Onkyo did not object to the GOB Sales.

121. The Debtors rejected Onkyo's Reclamation Demand.

122. The Debtors do not have possession of any of the Reclamation Goods.

123. The Reclamation Goods were sold by Circuit City to buyers in the ordinary course or good faith purchasers for value.

124. Accordingly, Claim No. 2295 should be reclassified to a general unsecured non-priority claim.

## COUNT IX

### (OBJECTION TO CLAIM NO. 2295 AS OVERSTATED)

125. Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

126. In the alternative to Counts II and IV, but without waiving any allegation with respect thereto, Circuit City makes the following additional allegations in support of Count IX.

127. After a thorough review of the Debtors' Books and Records, Circuit City has determined that Claim No. 2295 is overstated by $44,446.54.

128. The overstatement is based on five components.

129. First, Claim No. 2295 is overstated because Circuit City was quoted a certain price for goods sold by Onkyo, but invoiced at a higher price, in an amount totaling $82.50.

130. Second, Claim No. 2295 is overstated because Circuit City was invoiced for a greater number of goods than it actually received from Onkyo, and the value of those goods that Circuit City did not receive totaled $2,108.37.

131. Third, Claim No. 2295 is overstated because Onkyo improperly reversed valid chargebacks totaling $41,471.12 properly taken by Circuit City.

132. Fourth, Claim No. 2295 is overstated because Circuit City did not receive appropriate credit from Onkyo for returned goods, and the value of those goods that Circuit City returned totaled $627.

133. Fifth, Claim No. 2295 is overstated because it is based on invoices that Circuit City had previously paid in the amount of $157.55.

134. As a result of the above, Claim No. 2295 should be reduced to an amount not to exceed $1,678,024.83.

## COUNT X

### (OBJECTION TO CLAIM NO. 128 – SETOFF OF THE UNPAID OBLIGATIONS)

135. Circuit City repeats and realleges each of the allegations set forth above as if fully set forth herein.

136. In the alternative to Counts III, V and VI, but without waiving any allegation with respect thereto, Circuit City makes the following additional allegations in support of Count X.

137. The Unpaid Obligations arose from business transactions between Circuit City and Onkyo.

138. The Unpaid Obligations are debts owed by Onkyo to Circuit City.

139. Claim No. 128 arose from business transactions between Onkyo and Circuit City.

140. Claim No. 128 is a debt allegedly owed by Circuit City to Onkyo.

141. Consequently, under applicable law, Circuit City has established valid setoff rights.

142. Pursuant to Bankruptcy Code section 558, Circuit City's defenses, including setoff, are preserved.

143. Under applicable law, the Unpaid Obligations should be setoff first against Claim No. 128.

144. After setoff, Claim No. 128 should be reduced to $3,688,196.86.

145. After setoff, the Unpaid Obligations should be reduced to $0.

## PRAYER FOR RELIEF

WHEREFORE, Circuit City respectfully requests and prays that the Court:

i.    Pursuant to Count I, enter judgment against Onkyo under 11 U.S.C. §§ 547 and 550 and allow Circuit City to avoid and recover the Preferential Transfers in an amount not less than $9,373,092.50; and

ii.   Pursuant to Count II, disallow Claim Nos. 958 and 2295 in accordance with Bankruptcy Code section 502(d) pending payment by Onkyo to the Debtors of any avoidable and recoverable transfers; and

iii.      Pursuant to Count III, order Onkyo to immediately turn over and deliver to Circuit City the Unpaid Obligations in an amount not less than $238,910.84; and

iv.      In the alternative to Count II, pursuant to Count IV, disallow Claim Nos. 958 and 2295 in accordance with Bankruptcy Code section 502(d) pending Onkyo's turnover or payment of the Unpaid Obligations to Circuit City; and

v.      In the alternative to Count III, pursuant to Count V, enter judgment against Onkyo for breach of contract and award Circuit City damages in an amount not less than $238,910.84; and

vi.      In the alternative to Counts III and V, pursuant to Count VI, enter judgment against Onkyo for unjust enrichment and award Circuit City restitution damages on account of Onkyo's unjust enrichment in an amount not less than $238,910.84; and

vii.      Pursuant to Count VII, reduce Claim No. 128 from the overstated amount of $3,927,287.70 to the proper amount of $3,927,107.70; and

viii.      In the alternative to Counts II and IV, pursuant to Count VIII, reclassify Claim No. 2295 to a general unsecured non-priority claim because it is not entitled to priority under the Bankruptcy Code; and

ix.      In the alternative to Counts II and IV, pursuant to Count IX, reduce Claim No. 2295 from the overstated amount of $1,722,471.37 to the proper amount of $1,678,024.83; and

x.      In the alternative to Counts III, V and VI, pursuant to Count X, authorize Circuit City to effect a setoff of the Unpaid Obligations

against Claim No. 128, reducing it to the
proper amount of $3,688,196.86; and

xi.      Award Circuit City interest, costs, and
expenses; and

xii.    Grant Circuit City such other and further
relief the Court deems just and appropriate.

Dated: Richmond, Virginia  MCGUIREWOODS LLP
       April 2, 2010

                            __/s/ Douglas M. Foley_____
                            Douglas M. Foley
                            (VSB No. 34364)
                            Bryan A. Fratkin
                            (VSB No. 38933)
                            One James Center
                            901 E. Cary Street
                            Richmond, Virginia 23219
                            (804) 775-1000

                                  - and -

                            SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM, LLP
                            Gregg M. Galardi, Esq.
                            Ian S. Fredericks, Esq.
                            P.O. Box 636
                            Wilmington, Delaware 19899-
                            0636 (302) 651-3000

                                  - and -

                            SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM, LLP
                            Chris L. Dickerson, Esq.
                            155 N. Wacker Drive
                            Chicago, Illinois 60606
                            (312) 407-0700

                            Counsel for Plaintiff

## EXHIBIT A

**(Preferential Transfers)**

**Exhibit A**

| Vendor Name | Check Clear Date | Check Number | Paid Amount |
|---|---|---|---|
| ONKYO USA CORP | 8/13/2008 | 1033423 | $ 228,986.00 |
| ONKYO USA CORP | 8/15/2008 | 1033632 | $ 131,932.52 |
| ONKYO USA CORP | 8/18/2008 | 1033531 | $ 409,360.00 |
| ONKYO USA CORP | 8/20/2008 | 1033776 | $ 147,646.00 |
| ONKYO USA CORP | 8/21/2008 | 1033872 | $ 658,580.80 |
| ONKYO USA CORP | 8/22/2008 | 1033962 | $ 480,368.00 |
| ONKYO USA CORP | 8/27/2008 | 1034096 | $ 183,662.00 |
| ONKYO USA CORP | 9/4/2008 | 1034201 | $ 261,329.00 |
| ONKYO USA CORP | 9/5/2008 | 1034307 | $ 335,110.00 |
| ONKYO USA CORP | 9/5/2008 | 1034419 | $ 612,698.51 |
| ONKYO USA CORP | 9/10/2008 | 1034644 | $ 272,539.00 |
| ONKYO USA CORP | 9/11/2008 | 1034752 | $ 354,524.00 |
| ONKYO USA CORP | 9/12/2008 | 1034867 | $ 297,126.50 |
| ONKYO USA CORP | 9/17/2008 | 1035053 | $ 213,490.00 |
| ONKYO USA CORP | 9/18/2008 | 1035162 | $ 234,945.00 |
| ONKYO USA CORP | 9/19/2008 | 1035274 | $ 123,422.00 |
| ONKYO USA CORP | 9/24/2008 | 1035449 | $ 658,132.50 |
| ONKYO USA CORP | 9/25/2008 | 1035560 | $ 1,461,454.50 |
| ONKYO USA CORP | 9/26/2008 | 1035666 | $ 491,215.50 |
| ONKYO USA CORP | 10/2/2008 | 1035922 | $ 128,015.27 |
| ONKYO USA CORP | 10/6/2008 | 1036022 | $ 59,506.33 |
| ONKYO USA CORP | 10/8/2008 | 1036156 | $ 91,072.00 |
| ONKYO USA CORP | 10/9/2008 | 1036264 | $ 328,618.00 |
| ONKYO USA CORP | 10/10/2008 | 1036374 | $ 204,131.00 |
| ONKYO USA CORP | 10/14/2008 | 1036423 | $ 34,412.80 |
| ONKYO USA CORP | 10/16/2008 | 1036628 | $ 61,018.00 |
| ONKYO USA CORP | 10/17/2008 | 1036718 | $ 18,560.00 |
| ONKYO USA CORP | 10/23/2008 | 1036949 | $ 133,059.18 |
| ONKYO USA CORP | 10/27/2008 | 1037037 | $ 121,974.00 |
| ONKYO USA CORP | 10/30/2008 | 1037238 | $ 426,472.09 |
| ONKYO USA CORP | 10/31/2008 | 1037333 | $ 209,732.00 |
| | | **Total Check Amount** | $ 9,373,092.50 |