B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA | PROOF OF CLAIM |
|---|---|

**Debtor against which claim is asserted :  (Check only one box below):**

☒ Circuit City Stores, Inc. (Case No. 08-35653)
☐ Circuit City Stores West Coast, Inc. (Case No. 08-35654)
☐ InterTAN, Inc. (Case No. 08-35655)
☐ Ventoux International, Inc. (Case No. 08-35656)
☐ Circuit City Purchasing Company, LLC (Case No. 08-35657)
☐ CC Aviation, LLC (Case No. 08-35658)

☐ CC Distribution Company of Virginia, Inc. (Case No. 08-35659)
☐ Circuit City Stores PR, LLC (Case No. 08-35660)
☐ Circuit City Properties, LLC (Case No. 08-35661)
☐ Orbyx Electronics, LLC (Case No. 08-35662)
☐ Kinzer Technology, LLC (Case No. 08-35663)
☐ Courchevel, LLC (Case No. 08-35664)

☐ Abbott Advertising, Inc. (Case No. 08-35665)
☐ Mayland MN, LLC (Case No. 08-35666)
☐ Patapsco Designs, Inc. (Case No. 08-35667)
☐ Sky Venture Corporation (Case No. 08-35668)
☐ XSStuff, LLC (Case No. 08-35669)
☐ PRAHS, INC. (Case No. 08-35670)

NOTE: *This form should not be used to make a claim for administrative expenses arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503(a).*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>SanDisk Corporation | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>O'Melveny & Myers LLP<br>Attn: Jennifer Taylor and Caleb Langston<br>Two Embarcadero Center, 28th Floor    Telephone number: (415)984-8700<br>San Francisco, CA 94111-3823 | **Court Claim Number:**_____<br>    *(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>SanDisk Corporation<br>601 McCarthy Blvd.<br>Milipitas, CA 95035-7932    Telephone number: (408)801-1000 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed:**    $ **\*See attached\***

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐  Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**  **\*See attached\***
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**  0082

**3a.** Debtor may have scheduled account as:_____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

**Value of Property:** $_____    **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $_____    **Basis for perfection:**_____

**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| | |
|---|---|
| **Signature:** the person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Date: 1/27/09    *[signature]* | **FOR COURT USE ONLY**<br>**RECEIVED**<br>JAN 3 0 2009<br>KURTZMAN CARSON CONSULTANTS |

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier — 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan — 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units — 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**\*The attachments hereto are fully incorporated herein and made part hereof by this reference.**

☐ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



0835653090130000000000860

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | Embarcadero Center West | NEWPORT BEACH |
| BRUSSELS | Two Embarcadero Center, 28th Floor | NEW YORK |
| CENTURY CITY | San Francisco, California 94111-3823 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE (415) 984-8700 | TOKYO |
| LOS ANGELES | FACSIMILE (415) 984-8701 | WASHINGTON, D.C. |
| | www.omm.com | |

January 29, 2009

OUR FILE NUMBER
0749018-00016

WRITER'S DIRECT DIAL
(415) 984-8850

**VIA COURIER**

WRITER'S E-MAIL ADDRESS
clangston@omm.com

Circuit City Stores, Inc., et al., Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

Re: *In re Circuit City Stores, Inc., et al., Case No: 08-35653-KRH*

To Whom It May Concern:

Please find enclosed the proof of claim form and associated documentation of SanDisk Corporation in the above-referenced case.

Please do not hesitate to call if you have any questions.

Very truly yours,

Caleb Langston
for O'MELVENY & MYERS LLP

Enclosures

UNITED STATES BANKRUPTCY COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., *et al.*, | Case No.  08-35653-KRH |
| Debtors. | Jointly Administered |
| | **PROOF OF CLAIM OF SANDISK CORPORATION** |

     1.     The undersigned is authorized to make this Proof of Claim on behalf of SanDisk Corporation ("Claimant").  Claimant hereby files and asserts its pre-petition claim (this "Claim") against Circuit City Stores, Inc. ("Debtor") in jointly administered Case No. 08-35653-KRH.

BACKGROUND

     2.     Claimant and Debtor are parties to that certain Master Dealer Agreement attached as <u>Exhibit A</u> hereto (as supplemented by each Product Addendum thereto, the "Agreement"), pursuant to which Claimant agreed to sell and deliver, and Debtor agreed to purchase and pay for, certain goods at the prices set forth from time to time on Claimant's product price listings.

     3.     Pursuant to the Agreement, Debtor is entitled to "best-price" protection for all products sold by Claimant to Debtor that are either held in Debtor's inventory or in transit to Debtor.  In the event that Claimant lowers its price for such products, Debtor is entitled to claim

PROOF OF CLAIM OF<br>SANDISK CORPORATION

a reduction of its account balance with Claimant, calculated based on the difference between the original invoice price paid by Debtor and the lowest price published by Claimant in its price listings.

4.      The Product Addendum to the Agreement dated March 1, 2008 further provides that Debtor will exclusively market and sell products manufactured by Claimant, within specified product categories (the "Exclusive Categories"), in exchange for quarterly deductions of $400,000 from the outstanding balance owed by Debtor to Claimant. On account of this exclusivity arrangement, Debtor claimed deductions totaling $800,000.

THE CLAIMS

5.      As of the date hereof, the Agreement has not been assumed or rejected. In the event the Agreement is rejected or terminated by Debtor or any of its successors in interest, Claimant hereby reserves the right to assert additional claims. Furthermore, to the extent Debtor seeks to assume the Agreement, Claimant also hereby reserves the right to assert a right to receive cure payments and to dispute or propose the amount thereof.

6.      As of the date hereof, Debtor has failed to perform numerous of its obligations under the Agreement. Debtor is obligated to Claimant to perform all such obligations and Claimant hereby asserts all claims against Debtor (and, to the extent such may later become applicable, any other debtor administered with this case) that Claimant may be entitled to under the Agreement or otherwise.

7.      Claimant estimates as of the date hereof that its Claim against Debtor is no less than $7,614,454.18.[1]

8.      This amount is inclusive of the value of goods subject to the reclamation demand Claimant made against Debtor on November 26, 2008, pursuant to (1) Delaware Uniform Commercial Code Section 2-702, (2) any other applicable law in effect for the jurisdiction in question and (3) 11 U.S.C. § 546(c), in an amount no less than $5,753,095.54. This amount also

---

[1] An itemized summary of Claimant's Claim against Debtor is attached hereto as Exhibit B. Invoices reflecting the Claim amount are voluminous but will be provided upon request.

PROOF OF CLAIM OF
SANDISK CORPORATION

includes an amount no less than $6,230 claimed against Debtor by Claimant pursuant to 11 U.S.C. § 503(b)(9), filed with this court on December 19, 2008.  As of the date hereof, both the reclamation demand and Claimant's claim pursuant to 11 U.S.C. § 503(b)(9) remain outstanding.

9.     The amounts owed to Claimant include amounts by which Debtor has improperly reduced payments due to Claimant in the form of various "bill-back" claims, in an aggregate amount no less than $1,733,597.58.  This amount is inclusive of an $800,000 reduction improperly claimed by Debtor in reliance on the exclusivity provisions of the Product Addendum to the Agreement dated March 1, 2008.  Debtor breached its exclusivity obligations under the Product Addendum by marketing and or selling products manufactured by persons other than Claimant within the Exclusive Categories, and is accordingly not entitled to the reductions claimed.  Also included in the improper "bill-backs" is a reduction of the amounts due to Claimant by Debtor in an amount no less than $614,830.68, claimed pursuant to the "best price" provisions of the Agreement.  Debtor claimed these reductions both by improperly comparing "gross" per-product price listings published by Claimant against "net" per-product prices actually paid by Debtor, and by claiming "best price" protection for a greater number of goods than Debtor actually purchased.[2]

10.     No judgment has been rendered on these Claims.  The amount of all payments on the Claims has been credited and deducted for the purpose of making this Proof of Claim.

11.     Claimant reserves all of its rights with respect to the status of the Agreement. Claimant specifically reserves the right to assert anticipatory repudiation of the Agreement and the right to withhold performance as a result.

12.     Claimant is not admitting liability to any party as a result of this Proof of Claim and reserves all defenses to any claims by any party.  Claimant asserts and reserves all rights to setoff and recoupment.

13.     Claimant made every effort possible to identify the correct Debtor liable for these claims.  To the extent a Debtor in a related bankruptcy case is jointly or individually liable,

---

[2] A full summary of the improper reductions that comprise this "bill-back" category is attached hereto as Exhibit C.

PROOF OF CLAIM OF
SANDISK CORPORATION

Claimant asserts such claim against that Debtor and reserves all rights to amend and/or supplement related proofs of claim or file additional proofs of claim as necessary.

14.    Claimant reserves the right to amend or to supplement this Proof of Claim and to set forth in additional detail the basis and nature of its claims, to assert pre- and post-petition claims held by Claimant other than those set forth herein, to state further amounts owing Claimant by Debtor (or by any other debtor later administered with this case) arising out of its claims, including, without limitation, post-petition interest and fees to the extent allowed, and to demonstrate the liability of any of debtor administered with this case on any or all of the Claims. Claimant further reserves the right to assert a claim for payment under 11 U.S.C. §§ 503(b) or 506 and the right to assert claims for additional amounts to the extent any unliquidated portion of its claim becomes liquidated.  Claimant further reserves the right to seek an accounting of the amount due under the Agreement or otherwise.

15.    The filing of this Proof of Claim shall not constitute a waiver of Claimant's right to have any and all final orders in any and all non-core matters entered only after de novo review by a United States District Court Judge or Claimant's right to trial by jury in any proceeding as to any and all matters so triable, whether or not the same be designated legal or private rights, or in any case or controversy or proceeding related thereto, notwithstanding the designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b) or otherwise, and whether such jury trial is pursuant to statute or the United States Constitution.

**[Signature Page Follows.]**

PROOF OF CLAIM OF
SANDISK CORPORATION

Dated: January 27, 2009

SANDISK CORPORATION

Name: Phyllis Miller
Title: Senior Director of Worldwide Credit and Collections

## Exhibit A

**Master Dealer Agreement,**

**as supplemented by each Product Addendum thereto**

## MASTER DEALER AGREEMENT

THIS MASTER DEALER AGREEMENT ("Master Agreement") is made effective as of March 1, 2007 (the "Effective Date") by and between Circuit City Stores, Inc., a Virginia corporation, with its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464, and its affiliates and subsidiaries ("Circuit City") and SanDisk Corporation, a corporation with its principal office at 601 McCarthy Boulevard, Milpitas, California 95035 ("Vendor").

### Background

Circuit City and Vendor desire to enter into this Master Agreement to set forth certain terms and conditions under which Circuit City will purchase consumer electronics and related products from Vendor for resale by Circuit City to its customers.

The parties acknowledge that it has been and is their mutual intention that this Master Agreement be effective as of the Effective Date stated above notwithstanding the actual execution date of this Master Agreement.

### Agreement

In consideration of these premises, and the mutual agreements set forth below, the parties agree as follows:

1.    **APPOINTMENT**.  Vendor agrees to sell to Circuit City, and Circuit City agrees to purchase from Vendor, certain products (the "Products") that are more particularly described in one or more Product Addenda that is/are may be entered into from time to time by the parties (each a "Product Addendum"), each such Product Addendum shall be incorporated herein by this reference. While the parties acknowledge that Circuit City intends to sell the Products primarily to consumers through its retail locations and its Internet web site, the parties agree that Circuit City may sell the Products to any other persons or entities in the United States as it may desire through any method of sale it may elect.

2.    **PRICE AND TERMS OF SALE**.  Vendor will sell and Circuit City will purchase Products upon the terms and at the prices specified in the applicable Product Addendum and subject to this Master Agreement. Circuit City will unilaterally establish its own prices and terms for the resale of the Products to the public, and Vendor will not advise, instruct or in any way interfere with Circuit City's independent establishment of its retail prices. Unless stated otherwise in a Product Addendum, Circuit City will have the right to set off any amounts Vendor owes to it against any amount it owes to Vendor. In addition, in the event Vendor is ever in a debit balance with Circuit City, Vendor will remit payment of any such amounts to Circuit City by certified check or wire transfer within forty-five (45) days of demand by Circuit City.

3.    **ORDERS AND OPERATING PROCEDURES**.

3.1    Vendor agrees to comply with the requirements contained in the then-current version of Circuit City's Vendor Operating Guidelines (the "Vendor Operating Guidelines"), which shall be incorporated into this Master Agreement by this reference. Vendor acknowledges receipt of the Vendor Operating Guidelines as of the Effective Date hereof. Circuit City may publish updated versions of the Vendor Operating Guidelines in its sole discretion from time to time upon at least thirty (30) days' written notice, which updated versions may be delivered electronically or made available via web portal. Vendor will be expected to acknowledge receipt of any updated version; however, in the absence of such acknowledgment Vendor will be deemed to have accepted the updated version unless it objects to the same in writing prior to its effective date. In the event Vendor objects in writing to an updated version, the parties agree to negotiate in good faith with regard to the objection. During the pendency of such negotiations, unless (i) Vendor notifies Circuit City in writing that it is operationally unable, notwithstanding commercially reasonable efforts, to comply with the requirements of such updated version or (ii) the parties otherwise agree in writing, the terms of such updated version shall be in force. Any agreement

reached by the parties resolving the objection will be set forth in writing signed by the parties as an amendment to the updated version of the Vendor Operating Guidelines.

3.2     Without limiting the generality of the foregoing, Circuit City will order Products by submitting its purchase order ("Purchase Order") to Vendor via Electronic Data Interchange ("EDI"). Purchase Orders shall be governed by the general terms and conditions contained in the Vendor Operating Guidelines, notwithstanding the fact that such terms and conditions may not be transmitted with the actual Purchase Order.  To the extent commercially practicable, Circuit City will provide SanDisk with EDI document number 997 in response to each Vendor invoice.  Circuit City may amend the form of the Purchase Order in its sole discretion from time to time by updated version of the Vendor Operating Guidelines published as set forth in Section 3.1 above.  The general Purchase Order terms and conditions contained in the Vendor Operating Guidelines and any other terms actually transmitted with the Purchase Order are specifically included in and made a part of this Master Agreement.  In the event of a conflict between the Supply Chain Standards, the Vendor Operating Guidelines, or the Purchase Order and this Master Agreement, this Master Agreement will control.  This Master Agreement, including all Product Addenda, the Vendor Operating Guidelines and the Supply Chain Standards, contains the exclusive terms and conditions that apply to all purchases of Products.

3.3     Except as otherwise expressly provided herein, any terms proposed or submitted by Vendor at any time, including but not limited to, any provisions or terms contained in Vendor's franchise agreement(s), invoices, billing statements, documents used in the ordinary course of filling, accepting or acknowledging orders, or other similar documents, will be of no force or effect.  Vendor will fill each order in accordance with the Purchase Order unless Vendor rejects the Purchase Order.  For clarity, Vendor may reject a Purchase Order for any reason, including without limitation in the event Circuit City fails to meet Vendor's credit terms. In addition to any other remedies Circuit City may have hereunder, Circuit City may, at its option, cancel any Purchase Order without further obligation or liability, and may refuse and/or return the Products to Vendor at Vendor's expense if any material terms or conditions set forth in any Purchase Order or in this Master Agreement are not met by Vendor.  Upon receipt of prior express written consent by Circuit City to accept a partial delivery with respect to a particular Purchase Order, Vendor may make and invoice for such partial delivery.

3.4     Circuit City agrees to provide to Vendor on a weekly basis a nonbinding six (6) month rolling forecast of its expected weekly purchases of Products.  Circuit City's forecasts shall reflect Circuit City's good faith expectations of consumer demand.  Such forecasts are for Vendor's planning purposes only and shall not constitute binding obligations on the part of Vendor to supply Product in accordance with such forecasts or on the part of Circuit City to purchase Products in accordance with such forecasts.

4.     **SUPPLY CHAIN STANDARDS.**  Vendor agrees to comply with the requirements contained in the then-current version of Circuit City's Supply Chain Standards (the "Supply Chain Standards"), which shall be incorporated into this Master Agreement by this reference.  Vendor acknowledges receipt of the Supply Chain Standards as of the Effective Date hereof.  Circuit City may publish updated versions of the Supply Chain Standards in its sole discretion from time to time upon at least thirty (30) days written notice, which updated version may be delivered electronically or made available via web portal.  Vendor will be expected to acknowledge receipt of any updated version; however, in the absence of such acknowledgment Vendor will be deemed to have accepted the updated version unless it objects to the same in writing prior to its effective date.  In the event Vendor objects in writing to an updated version, the parties agree to negotiate in good faith with regard to the objection.  During the pendency of such negotiations, unless (i) Vendor notifies Circuit City in writing that it is operationally unable, notwithstanding commercially reasonable efforts, to comply with the requirements of such updated version or (ii) the parties otherwise agree in writing, the terms of such updated version shall be in force.   Any agreement reached by the parties resolving the objection will be set forth in writing signed by the parties as an amendment to the updated version of the Supply Chain Standards. In the event the parties are unable to reach agreement with regard to the objection, Vendor may terminate this Master Agreement without liability and in accordance with Section 9.2 below.

5.     **WARRANTIES.**

5.1     Vendor represents and warrants good and marketable title to the Products free of any lien or encumbrance.  Vendor will comply with all applicable Federal, state and local laws and regulations in performing its obligations under this Master Agreement.  Circuit City shall not make any warranties to its customers on behalf of Vendor.  TO THE FULLEST EXTENT PERMITTED BY LAW, VENDOR MAKES NO WARRANTIES OR CONDITIONS, EXPRESS, STATUTORY, IMPLIED OR OTHERWISE, TO CIRCUIT CITY WITH RESPECT TO THE PRODUCTS OR ANY SERVICES AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY AND NONINFRINGEMENT AND THEIR EQUIVALENTS.

5.2     Vendor agrees to comply in all respects with the Magnuson-Moss Warranty Act [15 U.S.C. Sections 2301 et seq.] and the regulations issued thereunder, as the same may be amended from time to time.  Prior to the initial delivery of each Product purchased under this Master Agreement, Vendor agrees to deliver to Circuit City at least one copy of all written warranty documents covering each Product.  In the event a Product is not covered by a written warranty, Vendor agrees to deliver to Circuit City a written statement that Vendor offers no such warranty for that specified Product.  In the event any existing Product warranty is amended, updated or modified, Vendor agrees to deliver to Circuit City at least one copy of any amended, updated or modified warranty document within a reasonable time prior to the effective date of the change.  Forwarding information and preferred electronic formats are specified in the Vendor Operating Guidelines.

6.     **INDEMNIFICATION; INSURANCE; LIMITATION OF LIABILITY**.

6.1     Vendor agrees to defend (through counsel reasonably satisfactory to Circuit City), indemnify and hold harmless Circuit City and their respective directors, officers, successors and assigns from and against third party actions, judgments, claims, losses, damages awarded, expenses or costs (including reasonable attorneys' fees and costs and expenses of defense) and liabilities (hereinafter "Claims") which are caused by or arise out of: (i) use of the Products, including, without limitation, liability based upon death or injury to any person or damage to tangible personal or real property; (ii) any representations made by Vendor to Circuit City which Circuit City uses or incorporates into its advertising or upon which Circuit City relies when selling the Products under this Master Agreement; (iii) Vendor's actual or alleged violation of any of the laws of any United States government entity applicable to the operation or quality of the Products; or (iv) any actual or alleged infringement, misappropriation or other violation by Vendor of any United States patent, copyright, trademark, trade secret or other United States proprietary or intellectual property rights of any third party.  Circuit City agrees that it will (i) provide Vendor prompt notice in writing of any Claim; (ii) permit Vendor to answer and defend such Claim; and (iii) cooperate to provide Vendor with all information, assistance and authority reasonably necessary to defend such Claim. Circuit City shall have the right to participate in the defense with its own counsel. However, Vendor's indemnification obligations hereunder shall not apply to the extent the Claim is caused by or arises out of (i) modifications or adjustments to the Products made by Circuit City or a third party under authority by Circuit City which Vendor did not authorize in writing  or (ii) use of the Products by Circuit City or a third party under authority by Circuit City in combination with other products not delivered by Vendor; or (iii) Vendor's compliance with Circuit City's written specifications.

6.2     During the term of this Master Agreement, Vendor will maintain a policy of commercial general liability insurance, including products-completed operations coverage, with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category rating of at least Class VIII, with limits of no less than US$2,000,000.00 per occurrence and with limits of no less than US$10,000,000.00 aggregate.  Products-completed operations coverage will be maintained for the time period covered by this Master Agreement and for at least five (5) years after the latest of the Products to be delivered under this Master Agreement have been delivered to Circuit City.  Such policies will name "Circuit City Stores, Inc." as an additional insured.  All certificates will provide for at least thirty (30) days' written notice prior to cancellation of any insurance referred to under this Master Agreement.  A certificate of insurance meeting these requirements will be delivered to Circuit City (i) prior to the initial delivery of the Products, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.3    TO THE MAXIMUM EXTENT PERMITTED BY LAW AND EXCEPT FOR EACH PARTY'S LIABILITY UNDER SECTION 8 (CONFIDENTIALITY) AND VENDOR'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 6.1, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER UNDER ANY CONTRACT, STRICT LIABILITY, NEGLIGENCE OR OTHER LEGAL OR EQUITABLE THEORY, IN CONNECTION WITH THE SUBJECT MATTER OF THIS AGREEMENT FOR ANY INDIRECT, EXEMPLARY, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOST PROFITS.   WITHOUT LIMITING THE FOREGOING, NOTWITHSTANDING ANYTHING ELSE IN THIS AGREEMENT OTHER THAN VENDOR'S INDEMNIFICATION OBLIGATIONS FOR THIRD PARTY CLAIMS UNDER SECTION 6.1, EACH PARTY'S LIABILITY TO THE OTHER PARTY ARISING FROM THIS AGREEMENT UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY IS LIMITED TO THE AGGREGATE AMOUNTS CIRCUIT CITY PAID VENDOR FOR THE PRODUCTS THAT GIVE RISE TO THE LIABILITY DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENTS THAT GAVE RISE TO THE CLAIM. THE FOREGOING LIMITATIONS SHALL APPLY TO THE EXTENT PERMITTED BY LAW, REGARDLESS OF WHETHER A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

7.    **TRADEMARKS**.

7.1    Circuit City acknowledges that it has no ownership right in or to Vendor's trademarks and/or trade names.  Circuit City is hereby licensed to use, in accordance with Vendor's then-current Branding and Graphic Design Guidelines available at http://www.sandisk.com/Assets/File/pdf/corporate/SanDisk_logo_guidelines.pdf or another successor site thereto ("SanDisk Website"), Vendor's Product images, trademarks and/or trade names ("SanDisk Trademarks") as it may deem necessary or advisable in conjunction with the marketing and sale of the Products, and in accordance with the instructions, if any, provided by Vendor to Circuit City.  Vendor shall promptly notify Circuit City in writing in the event Vendor publishes any changes to the SanDisk Trademarks on the SanDisk Website via Sellpoint or successor web portal for SanDisk customers. Vendor must approve in advance all representations of SanDisk Trademarks that Circuit City intends to use if these are not exact copies of those used by Vendor.  In addition, Circuit City shall fully comply with all reasonable guidelines, if any, communicated by Vendor concerning the use of SanDisk Trademarks. Circuit City acknowledges the ownership of the SanDisk Trademarks by Vendor and shall not alter or remove any of SanDisk Trademarks affixed to the Products by Vendor.  All goodwill arising from Circuit City's use of Vendor's trademarks and/or trade names shall inure solely to the benefit of Vendor.  Vendor may immediately revoke, upon written notice to Circuit City, any rights granted under this Section 7 in the event Circuit City does not comply with the usage guidelines set forth herein.

7.2    Vendor acknowledges that it has no right in or to Circuit City's trademarks and/or trade names.  Vendor will not use Circuit City's trademarks and/or trade names either in connection with the Products or for any other reason whatsoever without obtaining Circuit City's prior written consent, which shall not be unreasonably delayed, and in the event such consent is obtained, such use will be subject to such restrictions or limitations as Circuit City may reasonably impose and in accordance with such instructions as Circuit City may provide.

8.    **CONFIDENTIALITY**.  To the extent necessary to perform the obligations related to this Master Agreement, a party (the "Disclosing Party") may share with the other party (the "Receiving Party") certain documents and information, including, but not limited to, information pertaining to products, business practices, schedules, services, methods, data, processes, advertising plans, sales, financial information and operating procedures which the Disclosing Party considers to be, and treats as, confidential ("Confidential Information"), whether or not specifically identified as such.  Information shared under the terms of any confidentiality agreement executed by the parties in contemplation of the relationship set forth herein is also deemed to be "Confidential Information" subject to this Section 8.  The Receiving Party shall maintain the Disclosing Party's Confidential Information in confidence, shall protect it with the same degree of care which it uses to protect its own Confidential Information (which shall be not less than reasonable care), and shall use it for the sole purpose of performing under this Master Agreement. Confidential Information shall not be distributed, disclosed, conveyed or in any other manner made

4

available to any consultant, subcontractor or any third party unless such third party is bound by confidentiality restrictions or agreements sufficient to enable the Receiving Party to comply with its obligations hereunder. For purposes of this Section, the term "Confidential Information" shall not include any information which: (i) is in the public domain at the time of disclosure or enters the public domain following disclosure through no fault of the Receiving Party; (ii) the Receiving Party can demonstrate was already in its possession prior to disclosure hereunder or is subsequently disclosed to the Receiving Party with no obligation of confidentiality by a third party having the right to disclose it; or (iii) is independently developed by the Receiving Party without reference to the Disclosing Party's Confidential Information, provided that the Receiving Party can clearly demonstrate such independent development through contemporaneous records showing such development. The Receiving Party may disclose the Disclosing Party's Confidential Information upon the order of any court of competent jurisdiction or as otherwise required by law or legal process, provided that prior to such disclosure the Receiving Party shall inform the Disclosing Party of such order if permitted by law, in order to provide the Disclosing Party with an opportunity to contest such order or to seek such other protective action as the Disclosing Party may elect. Vendor and Circuit City agree that the confidentiality covenants in this Section 8 apply to all Confidential Information disclosed to it during the term of this Master Agreement (including any renewal terms) and for a period of three (3) years after disclosure. In the event of a violation of this Section 8, because of the unique nature of the Confidential Information, the Disclosing Party would suffer irreparable harm, and money damages and other remedies at law available in the event of a breach or a threatened breach would not be adequate to compensate for the harm caused by the breach or the threatened breach. Accordingly, in addition to any other remedies it may have hereunder or at law or in equity, the Disclosing Party shall have the right to seek injunctive relief for violation of this Section.

9.   **TERM AND TERMINATION**.

9.1     The initial term of this Master Agreement will commence on the Effective Date and will continue until February 28, 2009. The term will automatically renew for successive one (1) year periods thereafter unless either party terminates this Master Agreement by giving the other party at least sixty (60) days' written notice prior to the end of the initial or any renewal term.

9.2     Notwithstanding the foregoing, this Master Agreement may be terminated with or without cause by either party without liability or obligation upon not less than sixty (60) days' written notice to the other party.

9.3     Either party may terminate this Master Agreement immediately, without liability or further obligation, upon written notice to the other party if the other party (i) breaches the confidentiality obligations set forth in Section 8 hereof; (ii) breaches any other material term of this Master Agreement and fails to cure the breach within thirty (30) calendar days following receipt of notice of such breach, (iii) becomes insolvent, files (or has filed against it) a petition in bankruptcy, makes an assignment for the benefit of creditors or ceases normal business operations, or (iv) assigns or attempts to assign this Master Agreement or any of the rights and obligations under this Master Agreement without first obtaining consent as required under this Master Agreement. The foregoing termination rights will be in addition to, and will not be construed to limit or restrict, any other rights either party may have with regard to cancellation, termination, refusal, return or rejection of any order of Products pursuant to this Master Agreement.

9.4     Upon termination of this Master Agreement, the Receiving Party shall either return the Disclosing Party's Confidential Information in its possession (including all copies) or shall, at the Disclosing Party's direction, destroy the Receiving Party's Confidential Information (including all copies) and certify its destruction to the Disclosing Party.

10.   **RELATIONSHIP OF THE PARTIES**. The relationship between Circuit City and Vendor is that of buyer and seller only. Nothing in this Master Agreement will be construed as creating any other relationship (including, but not limited to, principal and agent, master and servant, employer and employee, franchisor and franchisee or joint venturer) whatsoever between the parties. Both parties are independent contractors and neither has any express or implied authority to create or assume any obligation on behalf of the other.

11.   **NOTICES.**   Any notice required or permitted under this Master Agreement or any Product Addendum hereunder and not otherwise addressed pursuant to specific instructions relating to contact information shall be in writing and shall be sent to the address given below of the party to be notified, unless such party has previously notified the other of a change of address, in which case notice shall be sent to such changed address.

<table>
<tr><td>

If to Circuit City:
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464
Attention: Vendor Relations

</td><td>

If to Vendor:
SanDisk Corporation
601 McCarthy Boulevard
Milpitas, CA 95035
Attention: _____

</td></tr>
<tr><td>

With a copy to:
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464
Attention: Legal Department – Commercial

</td><td>

With a copy to:
SanDisk Corporation
601 McCarthy Boulevard
Milpitas, CA 95035
Attention: _____

</td></tr>
</table>

Any notice shall be sent by prepaid registered or certified United States mail, return receipt requested, or via any national overnight mail service, and shall be deemed to have been duly given or rendered five (5) days after mailing, or upon delivery, whichever is earlier.

12.   **FORCE MAJEURE.**   Neither party will be liable to the other party for failure or delay in performance under this Master Agreement due in whole or in part to an act of God, strike, lockout or other labor dispute, civil commotion, sabotage, fire, flood, explosion, acts of any government, unforeseen shortages or unavailability of fuel, power, transportation, or supplies, inability to obtain or delay in obtaining governmental approvals, permits, licenses, or allocations, and any other causes which are not within such party's reasonable control, whether or not of the kind specifically enumerated above.  During any period of Vendor's inability to perform a material term of this Master Agreement for more than fourteen (14) days, Circuit City in its sole discretion may (i) cancel Purchase Orders or portions thereof as appropriate, (ii) acquire from others, without incurring liability to Vendor, similar products as Circuit City may deem necessary under the circumstances, and (iii) appropriately reduce the quantity of Products ordered from Vendor hereunder.

13.   **AUDIT.**   Each party shall have the right to audit the books and records of the other party relating to the business transacted hereunder upon thirty (30) days prior written notice, which audit is to be conducted during regular business hours at the business location of the audited party.  Such audit may be conducted by the auditing party alone or together with qualified accountants.  The auditing party shall bear the cost of the audit.  In the event of any such audit, the party being audited shall extend its full and complete cooperation to the auditing party.  The auditing party shall ensure that such accountants and/or individuals safeguard Confidential Information in accordance with Section 8 of this Master Agreement.  The foregoing right of a party to audit books and records of the other party shall terminate as to any transaction hereunder as of the third anniversary of the date such transaction occurred.

14.   **SURVIVAL.**   All provisions of this Master Agreement which by their nature and context should survive the expiration or termination of this Master Agreement shall survive such expiration or termination, including without limitation the terms of Sections 5, 6, 7, 8, 9, 13, 14, 16, 17, 18, 20 and 22.

15.   **CALCULATION OF DATES.**   For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day.

6

16.    **NO ASSIGNMENT; NO WAIVER**.  Neither party may assign this Master Agreement or any of its rights or duties under this Master Agreement without the prior written consent of the other party.  Neither party will be deemed to have waived any right, power, privilege or remedy unless the waiver is in writing and duly executed by it. Notwithstanding the foregoing, either party shall be able to assign this Agreement to a corporate affiliate without seeking the other party's prior written consent.

17.    **GOVERNING LAW**.  This Master Agreement will be governed by the laws of the State of Delaware and the United States without regard to conflicts of laws provisions thereof and without regard to the United Nations Convention on Contracts for the International Sale of Goods.

18.    **ENTIRE AGREEMENT; SEVERABILITY**.  This Master Agreement, including any documents incorporated or referenced under this Master Agreement, constitutes the entire agreement between the parties with respect to the subject matter of this Master Agreement and supersedes any prior agreements between the parties with respect to such subject matter.  If any provision of this Master Agreement is determined by a court of competent jurisdiction to be unenforceable, the provision will be deemed to be severed, and the remaining provisions of this Master Agreement will remain in full force and effect.

19.    **EXPORT.**  Circuit City shall not directly or indirectly export or otherwise transfer any software, source code, or technology (including Products derived from or based on such technology) received from Vendor under this Agreement except as permitted under any and all applicable export control laws and regulations of any nation, including, without limitation, U.S. embargo laws administered by the Office of Foreign Assets Control and the U.S. Export Administration Regulations.

20.    **ORDER OF PRECEDENCE.**  In the event of conflicting terms among the documents referenced herein, the following order of precedence shall apply: (1) Master Dealer Agreement; (2) Product Addenda; (3) Vendor Operating Guidelines, (4) Supply Chain Standards, and (5) the Purchase Order.

21.    **TAXES AND DUTIES**.  The stated charges for Products are exclusive of all sales and other taxes or duties based upon the value of the Products (for which Circuit City is responsible). When Vendor has the legal obligation to pay or collect such taxes, excluding taxes on the income of Vendor, Vendor shall invoice the appropriate amount to Circuit City and Circuit City shall pay such invoice in accordance with this Section 21 unless Circuit City provides Vendor with a valid exemption certificate authorized by the appropriate taxing authority.  In the event Circuit City does not provide Vendor with a valid exemption certificate and Circuit City pays taxes pursuant to an invoice submitted by Vendor hereunder, Circuit City shall provide Vendor with official receipts issued by the appropriate taxing authority or such other evidence as is reasonably requested by Vendor to establish that such taxes have been paid.

22.    **MISCELLANEOUS**.  For purposes of clarity, all references to the United States herein shall include all fifty (50) states and its territories.  The headings in this Master Agreement are for convenience of reference only and will not affect its interpretation or construction.  This Master Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together shall constitute one and the same instrument.  Facsimile signatures shall be binding upon receipt, and the parties agree to exchange original signature pages as soon as reasonably possible after facsimile transmission.

[Signatures appear on the following page.]

IN WITNESS WHEREOF, the parties have caused this Master Dealer Agreement to be executed as of the date and year first above written.

**CIRCUIT CITY STORES, INC.:**

By: _____

Name _____

Title: _____SVP—CMO_____

Date: ____6/16/08____

**SANDISK CORPORATION:**

By: _____

Name: Doug Hauck

Title: Vice President of Sales, North America

Date: ____5/19/08____

8

| Model | Description | PP Date | Invoice Cost | PROGRAM | Cost after Program | Suggested Street | Suggested Ad Pricing |
|---|---|---|---|---|---|---|---|
| | | | | 10% | | | |
| **Ultra CF** | | | | | | | |
| SDCFH-1024 | Ultra II 1GB Compact Flash Card | 1/20/08 | $16.25 | " | $14.63 | $24.99 | $24.99 |
| SDCFH-2048 | Ultra II 2GB Compact Flash Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $29.99 |
| SDCFH002G | Ultra II 2GB Compact Flash Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDCFH-4096 | Ultra II 4GB Compact Flash Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDCFH-004G | Ultra II 4GB Compact Flash Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDCFH-8192 | Ultra II 8GB Compact Flash Card | 1/20/08 | $78.00 | " | $70.20 | $119.99 | $89.99 |
| SDCFH008G | Ultra II 8GB Compact Flash Card | 1/20/08 | $78.00 | " | $70.20 | $119.99 | $119.99 |
| **Extreme III** | | | | | | | |
| SDCFX31024 | Extreme III Compact Flash 1GB | 1/20/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDCFX32048 | Extreme III Compact Flash 2GB | 3/2/08 | $29.25 | " | $26.33 | $44.99 | $39.99 |
| SDCFX3002G | Extreme III Compact Flash 2GB | 3/2/08 | $29.25 | " | $26.33 | $44.99 | $44.99 |
| SDCFX34096 | Extreme III Compact Flash 4GB | 1/20/08 | $48.75 | " | $43.88 | $74.99 | $59.99 |
| SDCFX3004G | Extreme III Compact Flash 4GB | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $89.99 |
| SDCFX38192 | Extreme III Compact Flash 8GB | 1/20/08 | $84.50 | " | $76.05 | $129.99 | $99.99 |
| SDCFX3008G | Extreme III Compact Flash 8GB | 1/20/08 | $104.00 | " | $93.60 | $159.99 | $159.99 |
| SDCFX312288 | Extreme III Compact Flash 12GB | 1/20/08 | $128.00 | " | $115.20 | $199.99 | $199.99 |
| SDCFX316384 | Extreme III Compact Flash 16GB | 1/20/08 | $169.00 | " | $152.10 | $259.99 | $199.99 |
| SDCFX3016G | Extreme III Compact Flash 16GB | 1/20/08 | $208.00 | " | $187.20 | $319.99 | $319.99 |
| SDSDX31024 | Extreme III Secure Digital 1GB | 1/20/08 | $16.50 | " | $14.85 | $24.99 | $24.99 |
| SDSDX32048 | Extreme III Secure Digital 2GB | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDX002G | Extreme III Secure Digital 2GB | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDRX34096 | Extreme III Secure Digital 4GB | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDSDX3004G | Extreme III Secure Digital 4GB | | | | | | |
| SDSDRX38192 | Extreme III Secure Digital 8GB | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $99.99 |
| SDSDX3008G | Extreme III Secure Digital 8GB | | | | | | |
| SDMSPDX31024 | Extreme III Memory Stick 1GB | 9/16/07 | $29.25 | " | $26.33 | $44.99 | $39.99 |
| SDMSPDX32048 | Extreme III Memory Stick 2GB | 9/16/07 | $42.25 | " | $38.03 | $64.99 | $49.99 |
| SDMSPDX34096A21 | Extreme III Memory Stick 4GB | 9/16/07 | $78.00 | " | $70.20 | $119.99 | $94.99 |
| **Secure Digital** | | | | | | | |
| SDSDB-256 | 256MB SD Card | 5/6/08 | $5.25 | " | $4.73 | $7.99 | $7.99 |
| SDSDB-512 | 512MB SD Card | 1/20/08 | $6.50 | " | $5.85 | $9.99 | $9.99 |
| SDSDB-1024 | 1GB SD Card | 1/20/08 | $9.75 | " | $8.78 | $14.99 | $12.99 |
| SDSDB2048 | 2GB SD Card | 3/2/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| SDSDB22048 | 2GB SD Card - 2 pack | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| SDSDBR4906 | 4GB SD Card w/ reader | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| SDSDBR8192A11 | 8GB SD Card w/ reader | 1/20/08 | $52.00 | " | $46.80 | $79.99 | $59.99 |
| **Ultra SD** | | | | | | | |
| SDSDH1024 | Ultra II 1GB SD Card | 1/20/08 | $13.00 | " | $11.70 | $19.99 | $19.99 |
| SDSDH2048 | Ultra II 2GB SD Card | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH002G | Ultra II 2GB SD Card | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH2048ALZ | Ultra II 2GB SD Card - Alzheimer ltd Edition | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH22048 | Ultra II 2GB SD Card - 2 pk | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDH2002G | Ultra II 2GB SD Card - 2 pk | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH4096 | Ultra II 4GB SD Card w reader | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH004G | Ultra II 4GB SD Card w reader | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH8192 | Ultra II 8GB SD Card w reader | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $69.99 |
| SDSDRH008G | Ultra II 8GB SD Card w reader | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $69.99 |
| SDSDRH016G | Ultra II 16GB SD Card w reader | 1/20/08 | $117.00 | " | $105.30 | $179.99 | $139.99 |
| SDSDPH1024 | Ultra II 1GB SD Plus Card | 1/20/08 | $16.50 | " | $14.85 | $24.99 | $24.99 |
| SDSDPH2048 | Ultra II 2GB SD Plus Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $29.99 |
| SDSDPH002G | Ultra II 2GB SD Plus Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDPH4096 | Ultra II 4GB SD Plus Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDSDPH004G | Ultra II 4GB SD Plus Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDSDPH008G | Ultra II 8GB SD Plus Card | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $99.99 |
| SDSDHV4096 | Ultra II SD Video HD 4GB | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $49.99 |
| SDSDHV008G | Ultra II SD Video HD 8GB | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $89.99 |
| **SD Gaming** | | | | | | | |
| SDSDG1024 | 1GB SD Gaming for Nintendo Wii | 1/20/08 | $10.75 | " | $9.68 | $14.99 | $12.99 |
| SDSDG2048 | 2GB SD Gaming for Nintendo Wii | 3/2/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| **Mini SD** | | | | | | | |
| SDSDM1024 | 1GB miniSD Card | 5/6/07 | $19.50 | " | $17.55 | $29.99 | $14.99 |
| SDSDM2048 | 2GB miniSD Card | 5/6/07 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| **Micro SD** | | | | | | | |
| SDSDQ512 | 512MB Micro SD Memory Module | 8/5/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ1024 | 1GB Micro SD Memory Module | 1/20/08 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ2048 | 2GB Micro SD Memory Module | 1/20/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDQ4096 | 4GB Micro SD Memory Module | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $39.99 |
| SDSDQR8192 | 8GB Micro SD Memory Module with Reader | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $79.99 |
| **Micro SD 3-in-1 Kit** | | | | | | | |
| SDSDQ512 | 512MB Micro SD Memory Module Kit | 8/5/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ1024 | 1GB Micro SD Memory Module Kit | 1/20/08 | $13.50 | " | $12.15 | $19.99 | $14.99 |

**Lienau**

SanDisk Price List

| Model | Description | PP Date | Invoice Cost | PROGRAM | Cost after Program | Suggested Street | Suggested Ad Pricing |
|---|---|---|---|---|---|---|---|
| | | | | 10% | | | |
| SDSDQ2048 | 2GB Micro SD Memory Module Kit | 1/20/08 | $20.25 | | $18.23 | $29.99 | $24.99 |
| **MemoryStick ProDuo** | | | | | | | |
| SDMSPD-512 | 512MB Memory Stick Pro Duo | 5/6/07 | $9.75 | " | $8.78 | $14.99 | $14.99 |
| SDMSPD-1024 | 1GB Memory Stick Pro Duo | 2/24/08 | $16.25 | " | $14.63 | $24.99 | $14.99 |
| SDMSPD-2048 | 2GB Memory Stick Pro Duo | 2/24/08 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSPD22048 | 2GB Memory Stick Pro Duo - 2 pack | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSPD4096 | 4GB Memory Stick Pro Duo | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSPD8192 | 8GB Memory Stick Pro Duo | 2/24/08 | $78.00 | " | $70.20 | $119.99 | $89.99 |
| **Ultra MSPD** | | | | | | | |
| SDMSPDH1024901 | Ultra 1GB Memory Stick Pro Duo | 2/24/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDMSPDH2048901 | Ultra 2GB Memory Stick Pro Duo | 2/24/08 | $26.00 | " | $23.40 | $39.99 | $34.99 |
| SDMSPDH002G | Ultra 2GB Memory Stick Pro Duo | 2/24/08 | $26.00 | " | $23.40 | $39.99 | $39.99 |
| SDMSPDH4096901 | Ultra 4GB Memory Stick Pro Duo | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $54.99 |
| SDMSPDH004G | Ultra 4GB Memory Stick Pro Duo | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $69.99 |
| SDMSPDH8192 | Ultra 8GB Memory Stick Pro Duo | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $99.99 |
| SDMSPDH008G | Ultra 8GB Memory Stick Pro Duo | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $129.99 |
| SDMSPDHV004G | Ultra II SD Video HD 4GB | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $69.99 |
| SDMSPDHV008G | Ultra II SD Video HD 8GB | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $129.99 |
| **MemoryStick M2** | | | | | | | |
| SDMSM2-512 | Memory Stick M2 512MB | 9/16/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDMSM21024 | Memory Stick M2 1024MB | 9/16/07 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSM22048 | Memory Stick M2 2048MB | 9/16/07 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSM24096 | Memory Stick M2 4096MB | 9/16/07 | $65.00 | " | $58.50 | $99.99 | $69.99 |
| SDMSM26192 | Memory Stick M2 8192MB | 1/20/08 | $97.50 | " | $87.75 | $149.99 | • $124.99 |
| **MSi Gaming** | | | | | | | |
| SDMSG1024 | 1GB Memory Stick Pro Duo Gaming | 2/24/08 | $16.25 | " | $14.63 | $24.99 | $14.99 |
| SDMSG2048 | 2GB Memory Stick Pro Duo Gaming | 2/24/08 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSG4096 | 4GB Memory Stick Pro Duo Gaming | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSG8192 | 8GB Memory Stick Pro Duo Gaming | 2/24/08 | $78.00 | " | $70.20 | $119.99 | $89.99 |
| SDMSGX31024 | 1GB RapidGX MSPD | 12/16/07 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSGX32048 | 2GB RapidGX MSPD | 12/16/07 | $35.75 | " | $32.18 | $54.99 | $44.99 |
| SDMSGX34096 | 4GB RapidGX MSPD | 11/13/07 | $78.00 | " | $70.20 | $119.99 | $94.99 |
| **xD** | | | | | | | |
| SDXDM512 | 512MB xDM Picture Card | 3/18/07 | $13.00 | " | $11.70 | $19.99 | $9.99 |
| SDXDM1024 | 1GB xDM Picture Card | 1/20/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| SDXDM2048 | 2GB xDM Picture Card type H | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $34.99 |

Lienau Associates Confidential

**PRODUCT ADDENDUM**
**(Flash Memory Cards)**

THIS PRODUCT ADDENDUM is entered into as of April 27, 2007 (the "Effective Date") by and between Circuit City Stores, Inc., a Virginia corporation, with its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464, and its affiliates and subsidiaries ("Circuit City"), and SanDisk Corporation, a corporation with its principal office at 601 McCarthy Boulevard, Milpitas, California 95035 ("Vendor"), pursuant to the Master Dealer Agreement between Circuit City and Vendor dated as of March 1, 2007 (the "Master Agreement") to set forth certain terms of sale to Circuit City by Vendor of the Products referenced in the attached Product Exhibit. Capitalized terms not otherwise defined in this Product Addendum will have the meanings set forth in the Master Agreement.  The parties acknowledge that it has been and is their mutual intention that this Product Addendum be effective as of the Effective Date stated above notwithstanding the actual execution date of this Product Addendum.

1.      **PRICE AND PAYMENT TERMS**.

1.1      The Products subject to this Product Addendum, and the prices at which Circuit City may purchase those Products, are set forth on Vendor's current price list, in the form which is attached as the Product Exhibit to this Product Addendum.  The Products subject to this Product Addendum, and/or the prices therefor, may be updated from time to time by Vendor's providing Circuit City with its published, updated, and then-current price list in a substantially similar form to that attached hereto.

1.2      Any listing of suggested retail prices is for point of reference only.  This is not an agreement to sell the Products at a certain price, and Circuit City reserves the right, in its sole discretion, to establish the price at which it will sell the Products.

1.3      Payment terms are Net 45 Days, Receipt of Goods.  Payment will be made in U.S. dollars.

2.      **FREIGHT**.  Unless otherwise set forth by Circuit City in a Purchase Order, freight will be FOB Destination, Freight Prepaid by Vendor.  The FOB Destination point will be set forth in the applicable Purchase Order.  Vendor will reimburse Circuit City for charges incurred by Circuit City associated with shipments not in accordance with the terms stated herein.

3.      **PRICE INCREASE TIMING**.  Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price confirmed in Vendor's order acknowledgement document, which will be issued to Circuit City via EDI.

4.      **PRICE PROTECTION**.  In the event that Vendor lowers its price for the Products as published on its then current price list, price protection will be provided to Circuit City for all Products in inventory or in transit to Circuit City at the time of the price reduction; provided, however that Circuit City must submit a Claim for price protection pursuant to the process set forth in Section 5.4 (except that such Claim must be submitted within fifteen (15) business days of any price move rather than within thirty (30) days which Claim shall include a computer-generated, on-hand inventory report as of the date of the price change.  Vendor will only process complete claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing.  Price protection for Products in inventory will be taken as a reduction of Circuit City's account balance with Vendor, calculated based on the difference between the original invoice price paid by Circuit City and the lowest price published by Vendor to Circuit City.  Price protection for Products in transit will be taken at the time payment is due on the Vendor's original invoice, calculated based on the difference between the original invoice price and lowest price published by Vendor to Circuit City while the Product was in transit.  In the event price protection for Products in inventory creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

1

5.     **FUNDING ALLOWANCES**. (All allowances claimed by Circuit City under this Product Addendum must be submitted in accordance with Vendor's Claims Process set forth in Section 5.4).

5.1     Marketing Development Funds.  Vendor will provide Circuit City with marketing development funds ("MDF") equal to two percent (2%) of the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum.  For purposes of this Product Addendum, "Net Invoice Cost" is defined as the invoice cost of all Products actually purchased hereunder by Circuit City, exclusive of returns and price protection. MDF shall be deducted from the gross amount payable by Circuit City under Vendor's invoice ("DFI") (i.e. calculated prior to any other deductions from invoice taken hereunder).

5.2     Co-operative Advertising Funds.  Vendor will provide Circuit City with co-operative advertising funds ("Ad Funds") equal to eight percent (8%) of the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum. Ad Funds shall be deducted from the gross amount payable by Circuit City under Vendor's invoice ("DFI") (i.e. calculated prior to any other deductions from invoice taken hereunder).  In addition to Vendor's Claim Process set forth in Section 5.4, Circuit City shall abide by the following procedures with respect to Ad Funds:

- With each claim for Ad Funds, Circuit City shall submit "Proof of Performance", including any applicable third party invoices.  Vendor will not honor deductions from payment until Proof of Performance is accepted.  "Proof of Performance" may include:
  o For advertisements, copies of such ads.
  o For qualifying events, pictures of event or program of event, with clear promotion of Vendor's Product.
  o For Website advertisements, a screen shot including the Vendor logo.

- To qualify an event or activity as an "Eligible Event/Activity", Circuit City shall submit a request for authorization to Vendor, describing the event/activity. Qualifying events may include:
  o Tradeshows
  o Training Programs
  o Advertisements
  o Special Promotional Displays
  o Other events for which Circuit City has obtained Vendor's prior approval.

5.3     Volume Incentive Rebate.  Vendor agrees to fund a volume purchase rebate program with Circuit City ("Volume Purchase Rebate"), under which Circuit City shall be entitled to incentive funding based on the number of Products purchased by Circuit City under this Product Addendum and under that certain Product Addendum executed by the parties effective as of March 1, 2007 (collectively, the "VPR Product Addenda") during fiscal year 2008 ("FY08"). The availability of the Volume Purchase Rebate shall be based on the gross number of units purchased by Circuit City and the gross number of units purchased by Circuit City shall also determine the percentage of Net Invoice Cost to be used in the calculation as follows:

5.3.1     1st and 2nd Quarters of FY08:  Vendor shall pay Circuit City an amount equal to one percent (1%) of the Net Invoice Cost of all Products purchased during a fiscal quarter in the event that Circuit City purchases an equal or greater number of units of Product in such fiscal quarter than Circuit City purchased in the same quarter of fiscal year 2007 ("FY07"). This Section 5.3.1 shall apply only to the first fiscal quarter (March 1, 2007 through May 31, 2007) and the second fiscal quarter (June 1, 2007 through August 31, 2007) of FY08.

5.3.2   3rd and 4th Quarters of FY08:  In the event Circuit City purchases a number of units of Product during the third and fourth quarters combined of FY08 (from September 1, 2007 through February 29, 2008) which is equal to or exceeds one hundred percent (100%) but is less than one hundred nineteen percent (119%) of the number of units of Product purchased in the same period in FY07, Vendor shall pay Circuit City an amount equal to one percent (1%) of the Net Invoice Cost of all Products purchased during such period in FY08. In the event Circuit City purchases a number of units of Product in the third and fourth quarters combined of FY08 which is equal to or exceeds one hundred nineteen percent (119%) of the number of units of Product purchased in the same period in FY07, Vendor shall pay Circuit City an amount equal to two percent (2%) of the Net Invoice Cost of all Products purchased during such period in FY08.

The Volume Purchase Rebate shall be paid to Circuit City by a Circuit City deduction from amounts owed Vendor, made as of August 31, 2007 and as of February 29, 2008, based on Vendor's books and records.  Either party may only dispute the amount of such chargeback within thirty (30) days of Circuit City's deduction thereof by providing electronic support for the disputed amount with reasonable detail to permit Circuit City to research the alleged discrepancy. In the event the Volume Purchase Rebate due from Vendor creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

5.4    Vendor Claim Process.  Circuit City shall submit all claims and supporting documentation to Vendor for the offered programs within thirty (30) days of the event or circumstance giving rise to the claim (each, a "Claim") and any Claims not submitted by Circuit City within one year of such event or circumstance shall expire.  Vendor reserves the right to refuse to reimburse Circuit City for any Claim relating to an advertisement or other program which does not meet Vendor's published retail guidelines as provided to Circuit City, does not contain Vendor's retail Products, or which contain material errors in, or otherwise do not treat the Vendor trademark(s), trade names or service marks in accordance with Section 7.1 of the Master Agreement.  Vendor will not process incomplete Claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing.

6.     **ALLOCATION OF ORDERED PRODUCT**.  In the event that Vendor's inventories are insufficient to fill orders received from all of its customers at the time of receipt of Circuit City's Purchase Order, Vendor will notify Circuit City immediately. In the event Circuit City elects not to cancel its Purchase Order or any portion of its Purchase Order following such notice (but prior to shipment of the Products as described in this Section 6), Vendor shall use its commercially reasonable efforts to promptly fill such orders pursuant to the terms of the Master Agreement and this Product Addendum in accordance with Vendor's then-current lead-time schedules, shipping schedules, and access to suppliers on acceptable terms. As soon as practicable and upon prior notice to Circuit City, Vendor will ship on-order or back-order (without the requirement of placement or maintenance of multiple Purchase Orders and with "first in" priority among the Circuit City Purchase Orders) Products to Circuit City at the lower of (i) the price in effect as of the date of the Purchase Order relative to each such Product or (ii) the price on the date of receipt of each such Product.  Cancellation or consolidation of older Purchase Orders as requested or allowed by Circuit City may not result in the loss of priority for shipment and receipt of the Product, in Vendor's management sole discretion.

7.     **RETURNS OF NONCONFORMING PRODUCTS; PRODUCT RECALLS**.  In addition to any other rights it may have under this Agreement, Circuit City may refuse and/or return, at Vendor's expense and pursuant to Section 10, below, any Products which are (i) goods that are nonconforming with the applicable Purchase Order or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City, (ii) shipped in excess of or not covered by the Purchase Order, or (iii) not shipped in standard packaging or containers (collectively, "Refused Products"). Circuit City also has the right to refuse and/or return, at Vendor's expense, any Products subject to a Product recall ("Recalled Products"). If Circuit City has made payment to Vendor for the Refused Products or Recalled

Products, then, at Circuit City's option, Vendor will credit or refund such payments to Circuit City promptly upon Vendor's receipt of the Refused Products or Recalled Products. In the event a refusal or return of Refused Products or Recalled Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

8.      **CUSTOMER RETURNS.**  Circuit City may return to Vendor any opened-box Product returned by a Customer in accordance with Circuit City's return policies as they may exist from time to time (collectively, "Customer Returns"). Customer Returns will be accepted by Vendor for at least twelve (12) months after the date of Circuit City's receipt of the last shipment of the Product. All return shipments will be sent in accordance with Section 10 of this Product Addendum. Customer Return amounts will be deducted from Circuit City's Vendor accounts payable balance based on 100% of the gross invoice cost of such Customer Returns. In the event Customer Returns result in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

9.      **STOCK BALANCING.**  Vendor will consider in good faith any requests by Circuit City from time to time during the term of this Product Addendum to return any overstock of Product for 100% of the invoice price paid for such Product ("Stock Balancing Returns"). Any approved Stock Balancing Returns will be taken as a reduction of Circuit City's account balance with Vendor. In the event stock balancing results in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

10.     **PROCEDURES FOR RETURNS.**  All Products returned to Vendor for any reason in accordance with this Product Addendum (collectively, "Returned Products") will be returned in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. All Returned Products shall be at Vendor's expense. Except with respect to Stock Balancing Returns, Vendor shall issue a blanket return authorization number to cover Returned Products. With respect to Stock Balancing Returns, Circuit City will request a return authorization from Vendor for any Stock Balancing Returns which have been approved by Vendor pursuant to Section 9 hereof, which return authorization will not be unreasonably withheld or delayed. Without limiting the generality of the foregoing, Returned Products will be packed by Circuit City to avoid damage in transit, but the Returned Product's original packaging is not required, unless Refused Products or Stock Balancing Returns are being returned, in which case, the original packaging is required. No deduction or credit memo will be taken by Vendor for any missing parts, however, by way of clarification, the credit issued will reflect only parts Vendor received.     In the event the return of any Returned Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

11.     **REPORTING.**  Circuit City shall submit to Vendor on a weekly basis an electronic report. This report will provide weekly gross sales in units, location, customer returns, and inventory.

12.     **TERM AND TERMINATION.**

        12.1    The term of this Product Addendum will commence on the Effective Date and will continue until February 29, 2008.

        12.2    Notwithstanding the foregoing, this Product Addendum may be terminated with or without cause by either party without liability or obligation upon not less than sixty (60) days' written notice to the other party. Additionally, this Product Addendum will terminate automatically upon the termination of the Master Agreement.

        12.3    Circuit City shall submit to Vendor, within ten (10) days after the effective date of expiration or termination, a list of all Products in Circuit City's inventory. Vendor may, in its sole discretion, repurchase any Products in Circuit City's inventory. Vendor will pay Circuit City the lower of the actual price Circuit City paid Vendor for such Products or Vender's then-current price

4

for such Products, less any amounts then owing to Vendor by Circuit City and less any credits previously given by Vendor.

13.     **NOTICES**.  Any notice required or permitted under this Product Addendum and not otherwise addressed pursuant to specific instructions provided herein shall be given pursuant to the instructions for giving notices set forth in the Master Agreement.

14.     **MISCELLANEOUS**.  This Product Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together shall constitute one and the same instrument.  For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day. All provisions of this Product Addendum which by their nature should survive the expiration or termination of this Product Addendum shall survive such expiration or termination.  Facsimile signatures shall be binding upon receipt, and the parties agree to exchange original signature pages as soon as reasonably possible after facsimile transmission.  Notwithstanding the actual execution date of this Product Addendum, the parties acknowledge and agree that it has been and is their intention to enter into this Product Addendum effective as of the Effective Date to set forth the terms of their mutual agreement with respect to the transactions described herein.

        IN WITNESS WHEREOF, the parties have caused this Product Addendum to be executed as of the date and year first above written.

| CIRCUIT CITY STORES, INC. | SANDISK CORPORATION |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name:  Doug Hauck |
| Title: _____ SVP | Title: Vice President of Sales, North America |
| Date: _____ 6/16/08 | Date: ____ 5/19/08 |

### PRODUCT EXHIBIT

See Vendor's current price list attached hereto.

| Model | Description | PP Date | Invoice Cost | PROGRAM | Cost after Program | Suggested Street | Suggested Ad Pricing |
|---|---|---|---|---|---|---|---|
| | | | | 10% | | | |
| **Ultra CF** | | | | | | | |
| SDCFH-1024 | Ultra II 1GB Compact Flash Card | 1/20/08 | $16.25 | " | $14.63 | $24.99 | $24.99 |
| SDCFH-2048 | Ultra II 2GB Compact Flash Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $29.99 |
| SDCFH002G | Ultra II 2GB Compact Flash Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDCFH-4096 | Ultra II 4GB Compact Flash Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDCFH004G | Ultra II 4GB Compact Flash Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDCFH-8192 | Ultra II 8GB Compact Flash Card | 1/20/08 | $78.00 | " | $70.20 | $119.99 | $89.99 |
| SDCFH008G | Ultra II 8GB Compact Flash Card | 1/20/08 | $78.00 | " | $70.20 | $119.99 | $119.99 |
| **Extreme III** | | | | | | | |
| SDCFX31024 | Extreme III Compact Flash 1GB | 1/20/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDCFX32048 | Extreme III Compact Flash 2GB | 3/2/08 | $29.25 | " | $26.33 | $44.99 | $39.99 |
| SDCFX3002G | Extreme III Compact Flash 2GB | 3/2/08 | $29.25 | " | $26.33 | $44.99 | $44.99 |
| SDCFX34096 | Extreme III Compact Flash 4GB | 1/20/08 | $48.75 | " | $43.88 | $74.99 | $59.99 |
| SDCFX3004G | Extreme III Compact Flash 4GB | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $89.99 |
| SDCFX38192 | Extreme III Compact Flash 8GB | 1/20/08 | $84.50 | " | $76.05 | $129.99 | $99.99 |
| SDCFX3008G | Extreme III Compact Flash 8GB | 1/20/08 | $104.00 | " | $93.60 | $159.99 | $159.99 |
| SDCFX312288 | Extreme III Compact Flash 12GB | 1/20/08 | $128.00 | " | $115.20 | $199.99 | $199.99 |
| SDCFX316384 | Extreme III Compact Flash 16GB | 1/20/08 | $169.00 | " | $152.10 | $259.99 | $199.99 |
| SDCFX3016G | Extreme III Compact Flash 16GB | 1/20/08 | $208.00 | " | $187.20 | $319.99 | $319.99 |
| SDSDX31024 | Extreme III Secure Digital 1GB | 1/20/08 | $16.50 | " | $14.85 | $24.99 | $24.99 |
| SDSDX32048 | Extreme III Secure Digital 2GB | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDX002G | Extreme III Secure Digital 2GB | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDRX34096 | Extreme III Secure Digital 4GB | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDSDX3004G | Extreme III Secure Digital 4GB | | | | | | |
| SDSDRX38192 | Extreme III Secure Digital 8GB | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $99.99 |
| SDSDX3008G | Extreme III Secure Digital 8GB | | | | | | |
| SDMSPDX31024 | Extreme III Memory Stick 1GB | 9/16/07 | $29.25 | " | $26.33 | $44.99 | $39.99 |
| SDMSPDX32048 | Extreme III Memory Stick 2GB | 9/16/07 | $42.25 | " | $38.03 | $64.99 | $49.99 |
| SDMSPDX34096A21 | Extreme III Memory Stick 4GB | 9/16/07 | $78.00 | " | $70.20 | $119.99 | $94.99 |
| **Secure Digital** | | | | | | | |
| SDSDB-256 | 256MB SD Card | 5/6/08 | $5.25 | " | $4.73 | $7.99 | $7.99 |
| SDSDB-512 | 512MB SD Card | 1/20/08 | $6.50 | " | $5.85 | $9.99 | $9.99 |
| SDSDB-1024 | 1GB SD Card | 1/20/08 | $9.75 | " | $8.78 | $14.99 | $12.99 |
| SDSDB2048 | 2GB SD Card | 3/2/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| SDSDB22048 | 2GB SD Card - 2 pack | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| SDSDBR4906 | 4GB SD Card w/ reader | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| SDSDBR8192A11 | 8GB SD Card w/ reader | 1/20/08 | $52.00 | " | $46.80 | $79.99 | $59.99 |
| **Ultra SD** | | | | | | | |
| SDSDH1024 | Ultra II 1GB SD Card | 1/20/08 | $13.00 | " | $11.70 | $19.99 | $19.99 |
| SDSDH2048 | Ultra II 2GB SD Card | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH002G | Ultra II 2GB SD Card | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH2048ALZ | Ultra II 2GB SD Card - Alzheimer ltd Edition | 3/2/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDH22048 | Ultra II 2GB SD Card - 2 pk | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDH2002G | Ultra II 2GB SD Card - 2 pk | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH4096 | Ultra II 4GB SD Card w reader | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH004G | Ultra II 4GB SD Card w reader | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $34.99 |
| SDSDRH8192 | Ultra II 8GB SD Card w reader | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $69.99 |
| SDSDRH008G | Ultra II 8GB SD Card w reader | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $69.99 |
| SDSDRH016G | Ultra II 16GB SD Card w reader | 1/20/08 | $117.00 | " | $105.30 | $179.99 | $139.99 |
| SDSDPH1024 | Ultra II 1GB SD Plus Card | 1/20/08 | $16.50 | " | $14.85 | $24.99 | $24.99 |
| SDSDPH2048 | Ultra II 2GB SD Plus Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $29.99 |
| SDSDPH002G | Ultra II 2GB SD Plus Card | 3/2/08 | $22.75 | " | $20.48 | $34.99 | $34.99 |
| SDSDPH4096 | Ultra II 4GB SD Plus Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDSDPH004G | Ultra II 4GB SD Plus Card | 1/20/08 | $39.00 | " | $35.10 | $59.99 | $59.99 |
| SDSDPH008G | Ultra II 8GB SD Plus Card | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $99.99 |
| SDSDHV004G | Ultra II SD Video HD 4GB | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $49.99 |
| SDSDHV008G | Ultra II SD Video HD 8GB | 1/20/08 | $58.50 | " | $52.65 | $89.99 | $89.99 |
| **SD Gaming** | | | | | | | |
| SDSDG1024 | 1GB SD Gaming for Nintendo Wii | 1/20/08 | $10.75 | " | $9.68 | $14.99 | $12.99 |
| SDSDG2048 | 2GB SD Gaming for Nintendo Wii | 3/2/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| **Mini SD** | | | | | | | |
| SDSDM1024 | 1GB miniSD Card | 5/6/07 | $19.50 | " | $17.55 | $29.99 | $14.99 |
| SDSDM2048 | 2GB miniSD Card | 5/6/08 | $26.00 | " | $23.40 | $39.99 | $29.99 |
| **Micro SD** | | | | | | | |
| SDSDQ512 | 512MB Micro SD Memory Module | 8/5/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ1024 | 1GB Micro SD Memory Module | 1/20/08 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ2048 | 2GB Micro SD Memory Module | 1/20/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDSDQ4096 | 4GB Micro SD Memory Module | 1/20/08 | $32.50 | " | $29.25 | $49.99 | $39.99 |
| SDSDQR8192 | 8GB Micro SD Memory Module with Reader | 1/20/08 | $65.00 | " | $58.50 | $99.99 | $79.99 |
| **Micro SD 3-in-1 Kit** | | | | | | | |
| SDSDQ512 | 512MB Micro SD Memory Module Kit | 8/5/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDSDQ1024 | 1GB Micro SD Memory Module Kit | 1/20/08 | $13.50 | " | $12.15 | $19.99 | $14.99 |

SanDisk Price List

**Lienau**
ASSOCIATES, INC.

| Model | Description | PP Date | Invoice Cost | PROGRAM | Cost after Program | Suggested Street | Suggested Ad Pricing |
|---|---|---|---|---|---|---|---|
| | | | | 10% | | | |
| SDSDQ2048 | 2GB Micro SD Memory Module Kit | 1/20/08 | $20.25 | " | $18.23 | $29.99 | $24.99 |
| **MemoryStick ProDuo** | | | | | | | |
| SDMSPD-512 | 512MB Memory Stick Pro Duo | 5/6/07 | $9.75 | " | $8.78 | $14.99 | $14.99 |
| SDMSPD-1024 | 1GB Memory Stick Pro Duo | 2/24/08 | $16.25 | " | $14.63 | $24.99 | $14.99 |
| SDMSPD-2048 | 2GB Memory Stick Pro Duo | 2/24/08 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSPD22048 | 2GB Memory Stick Pro Duo - 2 pack | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSPD4096 | 4GB Memory Stick Pro Duo | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSPD8192 | 8GB Memory Stick Pro Duo | 2/24/08 | $78.00 | " | $70.20 | $119.99 | $69.99 |
| **Ultra MSPD** | | | | | | | |
| SDMSPDH1024901 | Ultra 1GB Memory Stick Pro Duo | 2/24/08 | $19.50 | " | $17.55 | $29.99 | $24.99 |
| SDMSPDH2048901 | Ultra 2GB Memory Stick Pro Duo | 2/24/08 | $26.00 | " | $23.40 | $39.99 | $34.99 |
| SDMSPDH002G | Ultra 2GB Memory Stick Pro Duo | 2/24/08 | $26.00 | " | $23.40 | $39.99 | $39.99 |
| SDMSPDH4096901 | Ultra 4GB Memory Stick Pro Duo | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $54.99 |
| SDMSPDH004G | Ultra 4GB Memory Stick Pro Duo | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $69.99 |
| SDMSPDH8192 | Ultra 8GB Memory Stick Pro Duo | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $99.99 |
| SDMSPDH008G | Ultra 8GB Memory Stick Pro Duo | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $129.99 |
| SDMSPDHV004G | Ultra II SD Video HD 4GB | 2/24/08 | $45.50 | " | $40.95 | $69.99 | $69.99 |
| SDMSPDHV008G | Ultra II SD Video HD 8GB | 2/24/08 | $84.50 | " | $76.05 | $129.99 | $129.99 |
| **MemoryStick M2** | | | | | | | |
| SDMSM2-512 | Memory Stick M2 512MB | 9/16/07 | $13.00 | " | $11.70 | $19.99 | $14.99 |
| SDMSM21024 | Memory Stick M2 1024MB | 9/16/07 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSM22048 | Memory Stick M2 2048MB | 9/18/07 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSM24096 | Memory Stick M2 4096MB | 9/16/07 | $65.00 | " | $58.50 | $99.99 | $69.99 |
| SDMSM28192 | Memory Stick M2 8192MB | 1/20/08 | $97.50 | " | $87.75 | $149.99 | $124.99 |
| **MS Gaming** | | | | | | | |
| SDMSG1024 | 1GB Memory Stick Pro Duo Gaming | 2/24/08 | $16.25 | " | $14.63 | $24.99 | $14.99 |
| SDMSG2048 | 2GB Memory Stick Pro Duo Gaming | 2/24/08 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSG4096 | 4GB Memory Stick Pro Duo Gaming | 2/24/08 | $39.00 | " | $35.10 | $59.99 | $44.99 |
| SDMSG8192 | 8GB Memory Stick Pro Duo Gaming | 2/24/08 | $78.00 | " | $70.20 | $119.99 | $69.99 |
| SDMSGX31024 | 1GB RapidGX MSPD | 12/16/07 | $22.75 | " | $20.48 | $34.99 | $24.99 |
| SDMSGX32048 | 2GB RapidGX MSPD | 12/16/07 | $35.75 | " | $32.18 | $54.99 | $44.99 |
| SDMSGX34096 | 4GB RapidGX MSPD | 11/13/07 | $78.00 | " | $70.20 | $119.99 | $94.99 |
| **xD** | | | | | | | |
| SDXDM512 | 512MB xDM Picture Card | 3/18/07 | $13.00 | " | $11.70 | $19.99 | $9.99 |
| SDXDM1024 | 1GB xDM Picture Card | 1/20/08 | $16.25 | " | $14.63 | $24.99 | $19.99 |
| SDXDM2048 | 2GB xDM Picture Card type H | 1/20/08 | $26.00 | " | $23.40 | $39.99 | $34.99 |

## PRODUCT ADDENDUM
### (Flash Memory Cards and Readers)

THIS PRODUCT ADDENDUM is entered into as of March 1, 2008 (the "Effective Date") by and between CIRCUIT CITY STORES, INC., a Virginia corporation, with its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464, and its affiliates and subsidiaries ("Circuit City"), and SANDISK CORPORATION, a corporation with its principal office at 601 McCarthy Boulevard, Milpitas, California 95035   ("Vendor"), pursuant to the Master Dealer Agreement between Circuit City and Vendor dated as of March 1, 2007 (the "Master Agreement") to set forth certain terms of sale to Circuit City by Vendor of the Products referenced in the attached Product Exhibit.   Capitalized terms not otherwise defined in this Product Addendum will have the meanings set forth in the Master Agreement.

1.     **PRICE AND PAYMENT TERMS**.

1.1     The Products subject to this Product Addendum, and the prices at which Circuit City may purchase those Products, are set forth on Vendor's current price list, in the form which is attached as the Product Exhibit to this Product Addendum. The Products subject to this Product Addendum, and/or the prices therefor, may be updated from time to time by Vendor's providing Circuit City with its published, updated, and then-current price list in a substantially similar form to that attached hereto.

1.2     Any listing of suggested retail prices is for point of reference only.  This is not an agreement to sell the Products at a certain price, and Circuit City reserves the right, in its sole discretion, to establish the price at which it will sell the Products.

1.3     Payment terms that apply from the Effective Date through and including October 20, 2008 are Net 50 Days, Date of Invoice.  For Vendor shipments made between October 21, 2008 through and including November 7, 2008, payment terms are Net 5 Days, Date of Invoice, and in consideration for Net 5 Days payment, Vendor's invoice will reflect an additional 2% discount from Vendor's gross price list. The parties will negotiate in good faith the payment terms that will apply on and after November 8, 2008; however, should the parties fail to reach an agreement, the default payment terms on and after November 8, 2008 will be cash in advance (CIA).  All payments under this Product Addendum will be made in U.S. dollars.  Should Circuit City fail to comply with the terms of this Section 1.3, among other remedies that may be available to Vendor at law or in equity, Vendor, in its sole discretion, shall be entitled to reject, reschedule or cancel any outstanding Circuit City Purchase Orders and/or to place Circuit City on credit hold until the parties are able to resolve the matter.

1.4     Notwithstanding anything to the contrary in the Master Agreement, the Vendor Operating Guidelines, the Supply Chain Standards or other terms that apply to Vendor, Circuit City shall not have the right to assess against Vendor any penalties, charges or fees in connection with missed delivery dates, non-delivery, or other product delivery issues that arise due to Circuit City's failure to pay Vendor within the time-frames set forth in this Section 1.

2.     **FREIGHT**.  Unless otherwise set forth by Circuit City in a Purchase Order, freight will be FOB Destination, Freight Prepaid by Vendor.  The FOB Destination point will be set forth in the applicable Purchase Order.  Vendor will reimburse Circuit City for charges incurred by Circuit City associated with shipments not in accordance with the terms stated herein.

3.     **PRICE INCREASE TIMING**.  Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price confirmed in Vendor's order acknowledgement document, which will be issued to Circuit City via EDI.

4.     **PRICE PROTECTION**.  In the event that Vendor lowers its price for the Products as published on its then current price list, price protection will be provided to Circuit City for all

1

2008-11-05 17:07        Circuit City         804-342-6454 >> 18042908332          P 2/6

Products in inventory or in transit to Circuit City at the time of the price reduction; provided, however that Circuit City must submit a Claim for price protection pursuant to the process set forth in Section 5.6 (except that such Claim must be submitted within fifteen (15) business days of any price move rather than within thirty (30) days which Claim shall include a computer-generated, on-hand inventory report as of the date of the price change. Vendor will only process complete claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing. Price protection for Products in inventory will be taken as a reduction of Circuit City's account balance with Vendor, calculated based on the difference between the original invoice price paid by Circuit City and the lowest price published by Vendor to Circuit City. Price protection for Products in transit will be taken at the time payment is due on the Vendor's original invoice, calculated based on the difference between the original invoice price and lowest price published by Vendor to Circuit City while the Product was in transit. In the event price protection for Products in inventory creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

5.    **FUNDING ALLOWANCES**. (All allowances claimed by Circuit City under this Product Addendum must be submitted in accordance with Vendor's Claims Process set forth in Section 5.6).

    5.1    Marketing Development Funds. Vendor will provide Circuit City with marketing development funds ("MDF") equal to three percent (3%) of the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum. For purposes of this Product Addendum, "Net Invoice Cost" is defined as the invoice cost of all Products actually purchased hereunder by Circuit City, exclusive of returns and price protection. MDF shall be deducted from the gross amount payable by Circuit City under Vendor's Invoice ("DFI") (i.e. calculated prior to any other deductions from invoice taken hereunder).

    5.2    Co-operative Advertising Funds. Vendor will provide Circuit City with cooperative advertising funds ("Ad Funds") equal to eight percent (8%) of the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum. Ad Funds shall be deducted from the gross amount payable by Circuit City under Vendor's Invoice ("DFI") (i.e. calculated prior to any other deductions from invoice taken hereunder). In addition to Vendor's Claim Process set forth in Section 5.6, Circuit City shall abide by the following procedures with respect to Ad Funds:

- With each claim for Ad Funds, Circuit City shall submit "Proof of Performance", including any applicable third party invoices. Vendor will not honor deductions from payment until Proof of Performance is accepted. "Proof of Performance" may include:
    o For advertisements, copies of such ads.
    o For qualifying events, pictures of event or program of event, with clear promotion of Vendor's Product.
    o For Website advertisements, a screen shot including the Vendor logo.

- To qualify an event or activity as an "Eligible Event/Activity", Circuit City shall submit a request for authorization to Vendor, describing the event/activity. Qualifying events may include:
    o Tradeshows
    o Training Programs
    o Advertisements
    o Special Promotional Displays
    o Other events for which Circuit City has obtained Vendor's prior approval.

    5.3    Advertising Support Funds. Vendor shall pay Circuit City advertising support funds ("Ad Support Funds") in an amount equal to One Million Four Hundred Thousand Dollars ($1,400,000) in support of Circuit City's advertisements and other marketing efforts for Vendor's Products during the term of this Product Addendum. The Ad Support Funds will be paid in four (4)

equal quarterly installments of Three Hundred Fifty Thousand Dollars ($350,000) each, payable by a Circuit City deduction from amounts owed to Vendor as of each of the following dates: May 31, 2008; August 31, 2008; November 30, 2008, and February 28, 2009. In the event the Exclusivity Funds due from Vendor create a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

  5.4     Volume Incentive Rebate.  Vendor shall pay Circuit City volume incentive rebate funds ("VIR Funds") in an amount equal to one percent (1%) of the aggregate Net Invoice Cost of All Products purchased under this Product Addendum in the event the aggregate Net Invoice Cost of all Products purchased by Circuit City under this Product Addendum equals or exceeds One Hundred and Eighteen Million Dollars ($118,000,000) during the term of this Product Addendum. The VIR Funds shall be paid to Circuit City by a Circuit City deduction from amounts owed to Vendor, made as of February 28, 2009, based on Vendor's books and records. Either party may only dispute the amount of such chargeback within thirty (30) days of Circuit City's deduction thereof by providing electronic support for the disputed amount with reasonable detail to permit Circuit City to research the alleged discrepancy. In the event the VIR Funds due from Vendor create a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

  5.5     Vendor-Preferred Activities.  During the term of this Product Addendum, with respect to sales of secure digital cards, compact flash cards, mobile cards and gaming cards ("Exclusive Categories") by Circuit City in its retail store locations, Circuit City agrees that (i) it will sell no products in the Exclusive Categories other than Vendor's Products and (ii) it will advertise no products in the Exclusive Categories other than Vendor's Products in its weekly circular. Circuit City and Vendor agree that memory stick products and xD card products are specifically excluded from the definition of "Exclusive Categories." For clarity, the parties acknowledge that the limitation set forth in this Section 5.5 shall not apply to Circuit City's sales of products via the Internet or any other sales channel other than its retail store locations. In exchange for Circuit City's agreement with respect to the Exclusive Categories set forth in this Section 5.5, Vendor agrees to pay Circuit City Vendor-preferred activities support funds ("VPA Support Funds") in the amount of One Million Six Hundred Thousand Dollars ($1,600,000) during the term of this Product Addendum. The VPA Support Funds will be paid to Circuit City in four (4) equal quarterly installments of Four Hundred Thousand Dollars ($400,000) each, payable by a Circuit City deduction from amounts owed to Vendor as of each of the following dates: May 31, 2008; August 31, 2008; November 30, 2008 and February 28, 2009. In the event the VPA Support Funds due from Vendor create a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

  5.6     Vendor Claim Process.  Circuit City shall submit all claims and supporting documentation to Vendor for the offered programs within thirty (30) days of the event or circumstance giving rise to the claim (each, a "Claim") and any Claims not submitted by Circuit City within one year of such event or circumstance shall expire. Vendor reserves the right to refuse to reimburse Circuit City for any Claim relating to an advertisement or other program which does not meet Vendor's published retail guidelines as provided to Circuit City, does not contain Vendor's retail Products, or which contain material errors in, or otherwise do not treat the Vendor trademark(s), trade names or service marks in accordance with Section 7.1 of the Master Agreement. Vendor will not process incomplete Claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing.

6.     **ALLOCATION OF ORDERED PRODUCT.**  In the event that Vendor's inventories are insufficient to fill orders received from all of its customers at the time of receipt of Circuit City's Purchase Order, Vendor will notify Circuit City immediately. In the event Circuit City elects not to cancel its Purchase Order or any portion of its Purchase Order following such notice (but prior to shipment of the Products as described in this Section 6), Vendor shall use its commercially reasonable efforts to promptly fill such orders pursuant to the terms of the Master Agreement and this Product Addendum in accordance with Vendor's then-current lead-time schedules, shipping

schedules, and access to suppliers on acceptable terms. As soon as practicable and upon prior notice to Circuit City, Vendor will ship on-order or back-order (without the requirement of placement or maintenance of multiple Purchase Orders and with "first in" priority among the Circuit City Purchase Orders) Products to Circuit City at the lower of (i) the price in effect as of the date of the Purchase Order relative to each such Product or (ii) the price on the date of receipt of each such Product. Cancellation or consolidation of older Purchase Orders as requested or allowed by Circuit City may not result in the loss of priority for shipment and receipt of the Product, in Vendor's management sole discretion.

7.     **RETURNS OF NONCONFORMING PRODUCTS; PRODUCT RECALLS**. In addition to any other rights it may have under this Agreement, Circuit City may refuse and/or return, at Vendor's expense and pursuant to Section 10, below, any Products which are (i) goods that are nonconforming with the applicable Purchase Order or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City, (ii) shipped in excess of or not covered by the Purchase Order, or (iii) not shipped in standard packaging or containers (collectively, "Refused Products"). Circuit City also has the right to refuse and/or return, at Vendor's expense, any Products subject to a Product recall ("Recalled Products"). If Circuit City has made payment to Vendor for the Refused Products or Recalled Products, then, at Circuit City's option, Vendor will credit or refund such payments to Circuit City promptly upon Vendor's receipt of the Refused Products or Recalled Products. In the event a refusal or return of Refused Products or Recalled Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

8.     **CUSTOMER RETURNS**. Circuit City may return to Vendor any opened-box Product returned by a Customer in accordance with Circuit City's return policies as they may exist from time to time (collectively, "Customer Returns"). Customer Returns will be accepted by Vendor for at least twelve (12) months after the date of Circuit City's receipt of the last shipment of the Product. All return shipments will be sent in accordance with Section 10 of this Product Addendum. Customer Return amounts will be deducted from Circuit City's Vendor accounts payable balance based on 100% of the Net Invoice Cost of such Customer Returns. In the event Customer Returns result in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

9.     **STOCK BALANCING**. Vendor will consider in good faith any requests by Circuit City from time to time during the term of this Product Addendum to return any overstock of Product for 100% of the invoice price paid for such Product ("Stock Balancing Returns"). Any approved Stock Balancing Returns will be taken as a reduction of Circuit City's account balance with Vendor. In the event stock balancing results in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

10.     **PROCEDURES FOR RETURNS**. All Products returned to Vendor for any reason in accordance with this Product Addendum (collectively, "Returned Products") will be returned in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. All Returned Products shall be at Vendor's expense. Except with respect to Stock Balancing Returns, Vendor shall issue a blanket return authorization number to cover Returned Products. With respect to Stock Balancing Returns, Circuit City will request a return authorization from Vendor for any Stock Balancing Returns which have been approved by Vendor pursuant to Section 9 hereof, which return authorization will not be unreasonably withheld or delayed. Without limiting the generality of the foregoing, Returned Products will be packed by Circuit City to avoid damage in transit, but the Returned Product's original packaging is not required, unless Refused Products or Stock Balancing Returns are being returned, in which case, the original packaging is required. No deduction or credit memo will be taken by Vendor for any missing parts; however, by way of clarification, the credit issued will reflect only parts Vendor received. In the event the return of any Returned Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

4

11.    **REPORTING.** Circuit City shall submit to Vendor on a weekly basis an electronic report. This report will provide weekly gross sales in units, location, customer returns, and inventory.

12.    **TERM AND TERMINATION.**

    12.1    The term of this Product Addendum will commence on the Effective Date and will continue until February 28, 2009.

    12.2    Notwithstanding the foregoing, this Product Addendum may be terminated with or without cause by either party without liability or obligation upon not less than sixty (60) days' written notice to the other party. Additionally, this Product Addendum will terminate automatically upon the termination of the Master Agreement.

    12.3    Circuit City shall submit to Vendor, within ten (10) days after the effective date of expiration or termination, a list of all Products in Circuit City's inventory. Vendor may, in its sole discretion, repurchase any Products in Circuit City's inventory. Vendor will pay Circuit City the lower of the actual price Circuit City paid Vendor for such Products or Vendor's then-current price for such Products, less any amounts then owing to Vendor by Circuit City and less any credits previously given by Vendor.

13.    **NOTICES.** Any notice required or permitted under this Product Addendum and not otherwise addressed pursuant to specific instructions provided herein shall be given pursuant to the instructions for giving notices set forth in the Master Agreement.

14.    **MISCELLANEOUS.** This Product Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together shall constitute one and the same instrument. For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day. All provisions of this Product Addendum which by their nature should survive the expiration or termination of this Product Addendum shall survive such expiration or termination. Facsimile signatures shall be binding upon receipt, and the parties agree to exchange original signature pages as soon as reasonably possible after facsimile transmission.

    IN WITNESS WHEREOF, the parties have caused this Product Addendum to be executed as of the date and year first above written.

**CIRCUIT CITY STORES, INC.**                    **SANDISK CORPORATION**

By: _Elliot Becker_                              By: _____

Name: _Elliot Becker_                            Name: Doug Hauck

Title: _Vice President_                           Title: Vice President of Sales, North America

Date: _11/5/08_                                   Date: _____

## PRODUCT EXHIBIT

See Vendor's current price list attached hereto.

CONFIDENTIAL

# PRODUCT ADDENDUM
## (Flash Memory Cards and Readers)

THIS PRODUCT ADDENDUM is entered into as of November 11, 2008 (the "Effective Date") by and between CIRCUIT CITY STORES, INC., a Virginia corporation, with its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464, and its affiliates and subsidiaries ("Circuit City"), and SANDISK CORPORATION, a corporation with its principal office at 601 McCarthy Boulevard, Milpitas, California 95035 ("Vendor"), pursuant to the Master Dealer Agreement between Circuit City and Vendor dated as of March 1, 2007 (the "Master Agreement") to set forth certain terms of sale to Circuit City by Vendor of the Products referenced in the attached Product Exhibit. Capitalized terms not otherwise defined in this Product Addendum will have the meanings set forth in the Master Agreement.

I.   PRICE AND PAYMENT TERMS.

1.1   The Products subject to this Product Addendum, and the prices at which Circuit City may purchase those Products, are set forth on Vendor's current price list, in the form which is attached as the Product Exhibit to this Product Addendum. The Products subject to this Product Addendum, and/or the prices therefore, may be updated from time to time by Vendor's providing Circuit City with its published, updated, and then-current price list in a substantially similar form to that attached hereto.

1.2   Any listing of suggested retail prices is for point of reference only. This is not an agreement to sell the Products at a certain price, and Circuit City reserves the right, in its sole discretion, to establish the price at which it will sell the Products.

1.3   For Vendor shipments made between the Effective Date through and including November 14, 2008, payment terms are Net 10 Days, Date of Invoice (which Invoice shall not be issued prior to the ship date of the Products),; and in consideration for Net 10 Days payment, Vendor's invoice will reflect an additional 2% discount from Vendor's gross price list. .For vendor shipments made on and after November 15, 2008, payment terms will be Net 17, Date of Invoice (which invoice shall not be issued prior to the ship date of the Products) and in consideration for Net 17 Days payment, Vendor's invoice will reflect an additional 1% discount from Vendor's gross price list. All payments under this Product Addendum will be made in U.S. dollars. Should Circuit City fail to comply with the terms of this Section 1.3, among other remedies that may be available to Vendor at law or in equity, Vendor, in its sole discretion, shall be entitled to reject, reschedule or cancel any outstanding Circuit City Purchase Orders and/or to place Circuit City on credit hold until the parties are able to resolve the matter.

1.4   Notwithstanding anything to the contrary in the Master Agreement, the Vendor Operating Guidelines, the Supply Chain Standards or other terms that apply to Vendor, Circuit City shall not have the right to assess against Vendor any penalties, charges or fees in connection with missed delivery dates, non-delivery, or other product delivery issues that arise due to Circuit City's failure to pay Vendor within the time-frames set forth in this Section 1.

2.   FREIGHT. Unless otherwise set forth by Circuit City in a Purchase Order, freight will be FOB Destination, Freight Prepaid by Vendor. The FOB Destination point will be set forth in the applicable Purchase Order. Vendor will reimburse Circuit City for charges incurred by Circuit City associated with shipments not in accordance with the terms stated herein.

3.   PRICE INCREASE TIMING. Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price confirmed in Vendor's order acknowledgement document, which will be issued to Circuit City via EDI.

4.   PRICE PROTECTION. In the event that Vendor lowers its price for the Products as published on its then current price list, price protection will be provided to Circuit City for all

**CONFIDENTIAL**

Products in inventory or in transit to Circuit City at the time of the price reduction; provided, however that Circuit City must submit a Claim for price protection pursuant to the process set forth in Section 5.5 (except that such Claim must be submitted within fifteen (15) business days of any price move rather than within thirty (30) days which Claim shall include a computer-generated, on-hand inventory report as of the date of the price change. Vendor will only process complete claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing. Price protection for Products in inventory will be taken as a reduction of Circuit City's account balance with Vendor, calculated based on net pricing. SanDisk's invoices to Circuit City are net of programs and discounts and SanDisk's pricing is generated net of programs and discounts. Price protection is calculated based on the difference between the net price on SanDisk's invoice, and the lowest net price published by Vendor to Circuit City. Price protection for Products in transit will be taken at the time payment is due on the Vendor's original invoice, calculated based on the difference between the original invoice price and lowest price published by Vendor to Circuit City while the Product was in transit. In the event price protection for Products in inventory creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City. In consideration of the payment terms granted to Circuit City in Section 1.3 of this Product Addendum, the parties hereby agree that any unpaid inventory purchases will be ineligible for price protection

5.    FUNDING ALLOWANCES. (All allowances claimed by Circuit City under this Product Addendum must be submitted in accordance with Vendor's Claims Process set forth in Section 5.5).

    5.1    Marketing Development Funds. Vendor will provide Circuit City with marketing development funds ("MDF") equal to three percent (3%). The 3% is reflected in the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum.

    5.2    Co-operative Advertising Funds. Vendor will provide Circuit City with cooperative advertising funds ("Ad Funds") equal to eight percent (8%). The 8% is reflected in the Net Invoice Cost of all Products purchased by Circuit City during the term of this Product Addendum. In addition to Vendor's Claim Process set forth in Section 5.5, Circuit City shall abide by the following procedures with respect to Ad Funds:

- With each claim for Ad Funds, Circuit City shall submit "Proof of Performance", including any applicable third party invoices. Vendor will not honor deductions from payment until Proof of Performance is accepted. "Proof of Performance" may include:
  - For advertisements, copies of such ads.
  - For qualifying events, pictures of event or program of event, with clear promotion of Vendor's Product.
  - For Website advertisements, a screen shot including the Vendor logo.

- To qualify an event or activity as an "Eligible Event/Activity", Circuit City shall submit a request for authorization to Vendor, describing the event/activity. Qualifying events may include:
  - Tradeshows
  - Training Programs
  - Advertisements
  - Special Promotional Displays
  - Other events for which Circuit City has obtained Vendor's prior approval.
  - Other events for which Circuit City has obtained Vendor's prior approval.

    5.3    Advertising Support Funds. Vendor shall pay Circuit City advertising support funds ("Ad Support Funds") in an amount equal to Seven Hundred Thousand Dollars ($700,000) in support of Circuit City's advertisements and other marketing efforts for Vendor's Products

**CONFIDENTIAL**

during the term of this Product Addendum. The Ad Support Funds will be paid in two (2) equal installments of Three Hundred Fifty Thousand Dollars ($350,000) each, payable by a Circuit City deduction from amounts owed to Vendor as of each of the following dates: November 30, 2008, and February 28, 2009. In the event the Ad Support Funds due from Vendor create a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

     5.4    Volume Incentive Rebate. Vendor shall pay Circuit City volume incentive rebate funds ("VIR Funds") in an amount equal to one percent (1%) of the aggregate Net Invoice Cost of all Products purchased under (1) this Product Addendum and (2) that certain Product Addendum between the parties dated as of March 1, 2008 (the "Prior Product Addendum") in the event the aggregate Net Invoice Cost of all Products purchased by Circuit City under this Product Addendum and the Prior Product Addendum equals or exceeds One Hundred and Eighteen Million Dollars ($118,000,000) during Circuit City's fiscal year 2009 (i.e. from March 1, 2008 through and including February 28, 2009). The VIR Funds shall be paid to Circuit City by a Circuit City deduction from amounts owed to Vendor, made as of February 28, 2009, based on Vendor's books and records. Either party may only dispute the amount of such chargeback within thirty (30) days of Circuit City's deduction thereof by providing electronic support for the disputed amount with reasonable detail to permit Circuit City to research the alleged discrepancy. In the event the VIR Funds due from Vendor create a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

     5.5    Vendor Claim Process. Circuit City shall submit all claims and supporting documentation to Vendor for the offered programs within thirty (30) days of the event or circumstance giving rise to the claim (each, a "Claim") and any Claims not submitted by Circuit City within one year of such event or circumstance shall expire. Vendor reserves the right to refuse to reimburse Circuit City for any Claim relating to an advertisement or other program which does not meet Vendor's published retail guidelines as provided to Circuit City, does not contain Vendor's retail Products, or which contain material errors in, or otherwise do not treat the Vendor trademark(s), trade names or service marks in accordance with Section 7.1 of the Master Agreement. Vendor will not process incomplete Claims, and Vendor will notify Circuit City promptly in writing if it deems a submitted Claim to be incomplete for processing.

6.    ALLOCATION OF ORDERED PRODUCT. In the event that Vendor's inventories are insufficient to fill orders received from all of its customers at the time of receipt of Circuit City's Purchase Order, Vendor will notify Circuit City immediately. In the event Circuit City elects not to cancel its Purchase Order or any portion of its Purchase Order following such notice (but prior to shipment of the Products as described in this Section 6), Vendor shall use its commercially reasonable efforts to promptly fill such orders pursuant to the terms of the Master Agreement and this Product Addendum in accordance with Vendor's then-current lead-time schedules, shipping schedules, and access to suppliers on acceptable terms. As soon as practicable and upon prior notice to Circuit City, Vendor will ship on-order or back-order (without the requirement of placement or maintenance of multiple Purchase Orders and with "first in" priority among the Circuit City Purchase Orders) Products to Circuit City at the lower of (i) the price in effect as of the date of the Purchase Order relative to each such Product or (ii) the price on the date of receipt of each such Product. Cancellation or consolidation of older Purchase Orders as requested or allowed by Circuit City may not result in the loss of priority for shipment and receipt of the Product, in Vendor's management sole discretion.

7.    RETURNS OF NONCONFORMING PRODUCTS; PRODUCT RECALLS. In addition to any other rights it may have under this Agreement, Circuit City may refuse and/or return, at Vendor's expense and pursuant to Section 10, below, any Products which are (i) goods that are nonconforming with the applicable Purchase Order or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City, (ii) shipped in excess of or not covered by the Purchase Order, or (iii) not shipped in standard packaging or containers (collectively, "Refused Products"). Circuit City also has the right to refuse

CONFIDENTIAL

and/or return, at Vendor's expense, any Products subject to a Product recall ("Recalled Products"). If Circuit City has made payment to Vendor for the Refused Products or Recalled Products, then, at Circuit City's option, Vendor will credit or refund such payments to Circuit City promptly upon Vendor's receipt of the Refused Products or Recalled Products. In the event a refusal or return of Refused Products or Recalled Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

8.     CUSTOMER RETURNS. Circuit City may return to Vendor any opened-box Product returned by a Customer in accordance with Circuit City's return policies as they may exist from time to time (collectively, "Customer Returns"). Customer Returns will be accepted by Vendor for at least twelve (12) months after the date of Circuit City's receipt of the last shipment of the Product. All return shipments will be sent in accordance with Section 10 of this Product Addendum. Customer Return amounts will be deducted from Circuit City's Vendor accounts payable balance based on 100% of the Net Invoice Cost of such Customer Returns. In the event Customer Returns result in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

9.     STOCK BALANCING. Vendor will consider in good faith any requests by Circuit City from time to time during the term of this Product Addendum to return any overstock of Product for 100% of the invoice price paid for such Product ("Stock Balancing Returns"). Any approved Stock Balancing Returns will be taken as a reduction of Circuit City's account balance with Vendor. In the event stock balancing results in a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

10.    PROCEDURES FOR RETURNS. All Products returned to Vendor for any reason in accordance with this Product Addendum (collectively, "Returned Products") will be returned in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. All Returned Products shall be at Vendor's expense. Except with respect to Stock Balancing Returns, Vendor shall issue a blanket return authorization number to cover Returned Products. With respect to Stock Balancing Returns, Circuit City will request a return authorization from Vendor for any Stock Balancing Returns which have been approved by Vendor pursuant to Section 9 hereof, which return authorization will not be unreasonably withheld or delayed. Without limiting the generality of the foregoing, Returned Products will be packed by Circuit City to avoid damage in transit, but the Returned Product's original packaging is not required, unless Refused Products or Stock Balancing Returns are being returned, in which case, the original packaging is required. No deduction or credit memo will be taken by Vendor for any missing parts; however, by way of clarification, the credit issued will reflect only parts Vendor received. In the event the return of any Returned Products creates a debit balance, such amounts will be payable via check within forty-five (45) days of demand from Circuit City.

11.    REPORTING. Circuit City shall submit to Vendor on a weekly basis an electronic report. This report will provide weekly gross sales in units, location, customer returns, and inventory.

12.    TERM AND TERMINATION.

12.1    The term of this Product Addendum will commence on the Effective Date and will continue until February 28, 2009.

12.2    Notwithstanding the foregoing, this Product Addendum may be terminated with or without cause by either party without liability or obligation upon not less than sixty (60) days' written notice to the other party. Additionally, this Product Addendum will terminate automatically upon the termination of the Master Agreement.

12.3    Circuit City shall submit to Vendor, within ten (10) days after the effective date of expiration or termination, a list of all Products in Circuit City's inventory. Vendor may, in its sole

**CONFIDENTIAL**

discretion, repurchase any Products in Circuit City's inventory. Vendor will pay Circuit City the lower of the actual price Circuit City paid Vendor for such Products or Vendor's then-current price for such Products, less any amounts then owing to Vendor by Circuit City and less any credits previously given by Vendor.

13.     NOTICES.  Any notice required or permitted under this Product Addendum and not otherwise addressed pursuant to specific instructions provided herein shall be given pursuant to the instructions for giving notices set forth in the Master Agreement.

14.     MISCELLANEOUS.  This Product Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together shall constitute one and the same instrument. For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day. All provisions of this Product Addendum which by their nature should survive the expiration or termination of this Product Addendum shall survive such expiration or termination.  Facsimile signatures shall be binding upon receipt, and the parties agree to exchange original signature pages as soon as reasonably possible after facsimile transmission.

        IN WITNESS WHEREOF, the parties have caused this Product Addendum to be executed as of the date and year first above written.

CIRCUIT CITY STORES, INC.                SANDISK CORPORATION

By: _Elliot Becker_                      By: _Judy Bruner_

Name: _Elliot Becker_                    Name: _Judy Bruner_

Title: _Vice President_                  Title: _EVP + CFO_

Date: _11/14/08_                         Date: _11/14/08_

**CONFIDENTIAL**

PRODUCT EXHIBIT

See Vendor's current price list attached hereto.

## **Exhibit B**

### **Claim Summary**

# Summary

| Sum of Open Amount | |
|---|---|
| Category | Total |
| Invoice | $ 7,319,023.39 |
| Billback | $ 1,733,597.58 |
| Unapplied payment | $     (73,632.73) |
| Return credit | $     (86,536.92) |
| Marketing Credit | $(1,277,997.14) |
| Grand Total | $ 7,614,454.18 |

## Exhibit C

**"Bill-back" Summary**

EX-C

# Billback Summary

| Bill-To | Customer | T | Invoice | PO Number | Date of Billback (Not deduction date) | Due Date | Terms | Original Amt | Open Amount | Billback Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 00500082 | Circuit City Billback | | 29983 | DR R BB3765815U | 6/27/2008 | 6/27/2008 | DUE | $ 2,446.40 | $ 2,446.40 | Shortage claimed against invoice SU376581; SanDisk provided POD |
| 00500082 | Circuit City Billback | | 33671 | DR R BB4651815U | 9/18/2006 | 9/18/2006 | DUE | $ 2,191.20 | $ 2,191.20 | Shortage claimed against invoice SF468438; SanDisk provided POD. |
| 00500082 | Circuit City Billback | | 39990 | DR R BB067385SF | 12/28/2006 | 12/28/2006 | DUE | $ 25,344.00 | $ 25,344.00 | Shortage claimed against invoice SF225747; SanDisk provided POD. |
| 00500082 | Circuit City Billback | | 46344 | DR R BB2257475F | 4/11/2007 | 4/11/2007 | DUE | $ 24,825.60 | $ 24,825.60 | Shortage claimed against invoice SF067385; SanDisk provided POD. |
| 00500082 | Circuit City Billback | | 48693 | DR R AV061506 | 5/23/2007 | 5/23/2007 | DUE | $170,766.50 | $ 78,226.50 | 07/30/06 Price drop |
| 00500082 | Circuit City Billback | | 54269 | DR R BBAV08648 | 8/10/2007 | 8/10/2007 | DUE | $ 16,250.00 | $ 16,250.00 | Claim for warranty promo. No proof of performance submitted. |
| 00500082 | Circuit City Billback | | 75617 | DR R BBAV07428 | 4/12/2008 | 4/12/2008 | DUE | $ 42,380.00 | $ 42,380.00 | 1/20/04 Price drop. Circuit claimed invalid quantities |
| 00500082 | Circuit City Billback | | 79435 | DR R BBSU71754 | 5/14/2008 | 5/14/2008 | DUE | $ 526.60 | $ 526.60 | Shortage claimed against invoice SU717544; SanDisk provided POD showing full delivery. |
| 00500082 | Circuit City Billback | | 79416 | DR R BB5F225785 | 5/14/2008 | 5/14/2008 | DUE | $ 11,003.85 | $ 11,003.85 | 10/30/06 price drop/post-audit. Circuit claimed invalid quantity. |
| 00500082 | Circuit City Billback | | 86028 | DR R BBCB8984 1 | 7/21/2006 | 7/21/2008 | DUE | $ 5,160.96 | $ 5,160.96 | 05/06/07 price drop/post-audit. Circuit claimed invalid |
| 00500082 | Circuit City Billback | | 81085 | DR R BBMPA0854 | 5/25/2008 | 5/25/2008 | DUE | $ 13,368.75 | $ 13,368.75 | Rebate. Circuit claimed invalid sku (COAM #650485) |
| 00500082 | Circuit City Billback | | 86936 | DR R BBMPA0854 | 7/24/2008 | 7/24/2008 | DUE | $ 9,782.50 | $ 9,782.50 | 03/04/07 price drop/post-audit. Circuit claimed invalid quantity. |
| 00500082 | Circuit City Billback | | 87784 | DR R BBAV03066 | 8/6/2008 | 8/6/2008 | DUE | $ 34,120.00 | $ 34,120.00 | Duplicate. MFA062534 |
| 00500082 | Circuit City Billback | | 88512 | DR R BBF1520476 | 8/21/2008 | 8/21/2008 | DUE | $ 4,915.20 | 1.20 | Small balance remaining |
| 00500082 | Circuit City Billback | | 90476 | DR R BBAV07980 | 9/3/2008 | 9/3/2008 | DUE | $ 75,257.00 | $ 75,257.00 | 7/13/2008 price drop; Circuit City claimed invalid quantity. |
| 00500082 | Circuit City Billback | | 90929 | DR R BBAV07937 | 9/9/2008 | 9/9/2008 | DUE | $ 64,886.25 | $ 64,886.25 | 4/27/2008 price drop; Circuit City claimed invalid quantity. |
| 00500082 | Circuit City Billback | | 98210 | AV082131 | 11/3/2008 | 11/3/2008 | DUE | $ 29,372.34 | $ 29,372.34 | 9/7/2008 price drop; Circuit City claimed invalid prices. |
| 00500082 | Circuit City Billback | | 98209 | AV082128 | 11/3/2008 | 11/3/2008 | DUE | $221,956.93 | $221,956.93 | 9/7/2008 price drop; Circuit City claimed invalid prices |
| 00500082 | Circuit City Billback | | 99697 | AV080198 | 11/6/2008 | 11/6/2008 | DUE | $ 68,596.55 | $ 68,596.55 | 7/27/08 price drop. Circuit City claimed invalid prices. |
| 00500082 | Circuit City Billback | | 99665 | AV080383 | 11/6/2008 | 11/6/2008 | DUE | $ 22,470.94 | $ 22,470.94 | No proof-of-performance submitted (Com #12243) |
| 00500082 | Circuit City Billback | | 99664 | AV080382 | 11/6/2008 | 11/6/2008 | DUE | $185,450.00 | $185,450.00 | Mail-in rebate rejected (COAM #24494) |
| 00500082 | Circuit City Billback | | 103248 | AV081680 | 12/10/2008 | 12/10/2008 | DUE | $400,000.00 | $400,000.00 | Q2 Exclusivity funds. Circuit was not exclusive for entirety of 2008. |
| 00500082 | Circuit City Billback | | 105185 | AV079353 | 12/19/2008 | 12/19/2008 | DUE | $400,000.00 | $400,000.00 | Q1 Exclusivity funds. Circuit was not exclusive for entirety of 2008. |