IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:     CIRCUIT CITY STORES, INC.,           Case No. 08-35653
           *et al.*,                             Chapter 11
                    Debtors.                    Jointly Administered


**MEMORANDUM OPINION**

Hearing was conducted on March 8, 2010 (the "Hearing") to consider the Debtors' Objection to the administrative claim that Panasonic Corporation of North America ("Panasonic") filed under § 503(b)(9) of the Bankruptcy Code[1] (the Objection"). The Objection seeks to have Panasonic's administrative claim disallowed and reclassified because the Panasonic goods were not "received by the debtor within 20 days before the date of the commencement of a case under this title. . . ." 11 U.S.C. § 503(b)(9). The legal issue presented by the Objection concerns the proper interpretation of the term "received" in § 503(b)(9) of the Bankruptcy Code.

The parties agree that the goods at issue were in the physical possession of the Debtors prior to the 20 days before the commencement of these cases. Panasonic asserts that this fact is of no moment. Because the goods at issue were sold on consignment, Panasonic argues that the goods should be deemed to have been "received" by the Debtors on the date that title to the goods passed from Panasonic to the Debtors. The Debtors, on the other hand, argue that the goods were "received" on the date that the Debtors took physical possession of them. At the conclusion of the Hearing, the Court announced its ruling in favor of the Debtors. This

---

[1] Unless otherwise specified, all code sections to which this opinion refers are sections from Title 11 of the United States Code (the "Bankruptcy Code").

Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

## Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*, ("Circuit City")[3] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a national retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order"). Pursuant to

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[3] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008.

On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores. As of March 8, 2009, the going out of business sales had been completed. On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan"). The disclosure statement was approved by order entered September 24, 2009. The confirmation hearing is currently scheduled for May 11, 2010. Generally, the Plan provides for the liquidation of the Debtors under Chapter 11 of the Bankruptcy Code.

Prior to and following the Petition Date, Panasonic provided consumer electronics to Circuit City to sell at its stores on a consignment basis (the "Consigned Goods") pursuant to a consignment agreement dated March 8, 2006 and amended February 2008 (the "Consignment Agreement"). Although the Consigned Goods were physically delivered to Circuit City's warehouses and stores and although the Consigned Goods remained in the physical possession of Circuit City after delivery up to the time of sale, the Consignment Agreement provided that Panasonic retained title to the Consigned Goods until the time that Circuit City sold the Consigned Goods to its customers. At the time of sale, title to the particular Consigned Goods passed first to Circuit City and then to the customer as part of a simultaneous transaction.

On December 17, 2008, Panasonic timely filed claim number 1254 pursuant to § 503(b)(9) in the amount of $9,334,327.43 (the "Panasonic Claim") for Consigned Goods allegedly sold to Circuit City pursuant to the Consignment Agreement during the 20-day period prior to the Petition Date. Circuit City filed its Objection to the Panasonic Claim on August 25, 2009. The parties agree that the Consigned Goods at issue were physically delivered to Circuit

3

City prior to the 20 day period preceding the Petition Date, but the parties disagree as to whether the goods were "received" within the meaning of 11 U.S.C. § 503(b)(9) prior to the 20-day period. As Panasonic retained title to the Consigned Goods until Circuit City sold the Consigned Goods to its customers, Panasonic contends that Circuit City held the Consigned Goods as bailee. Panasonic argues that the Consigned Goods were "received" by Circuit City, for the purposes of § 503(b)(9), at the time Circuit City sold the Consigned Goods to its customers. Circuit City contends that the date on which it took physical possession of the goods should be the applicable date on which the goods were "received" by Circuit City for the purposes of § 503(b)(9).

## Analysis

Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Consistent with the plain language of the statute, allowed administrative expenses under § 503(b)(9) should only be for claims arising from the sale of goods "received" by the debtor within 20 days before the commencement of the case, not for goods "received" before the 20-day period.

The issue for the Court to decide is what is the definition of "received" under § 503(b)(9) of the Bankruptcy Code. The Bankruptcy Code does not define "received" and there is no controlling case law directly on point. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). And "where words are employed in a statute which had at the time a well-known

4

meaning at common law or in the law of this country, they are presumed to have been used in that sense." *Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59 (1911).

The Fourth Circuit has instructed that state law should be used to define terms in the Bankruptcy Code not otherwise defined by Congress. *See In Re Price,* 562 F.3d 618, 624-25 (4th Cir. 2009) (applying North Carolina law, which had adopted the UCC, to define "purchase money security interest" in § 1325(a) of the Bankruptcy Code). This may prove to be impractical in large bankruptcy cases like this one, where there have been multiple transactions in 48 states and Puerto Rico that implicate § 503(b)(9) of the Bankruptcy Code. The question arises what state law does the Court apply? It would be inefficient to look at each transaction that occurred in every state or territory that has an interest in the transaction, decide which state law may apply to the transaction, determine how the law of each applicable state or territory would individually construe the term "received," and then apply that definition to the individual claim at hand. This approach could lead to inconsistent treatment for otherwise similar claims. The Court does not believe that Congress intended a disparate application of the term "received," but rather contemplated a consistent, uniform approach to its interpretation. For this reason, the Court will adopt and apply a federal definition for the term "received" for purposes of § 503(b)(9) of the Bankruptcy Code. "When a federal statute leaves terms undefined or otherwise has a 'gap,' we often borrow from state law in creating a federal common law rule." *In re Bassett*, 285 F.3d 882, 884 (9th Cir. 2002). Following the Fourth Circuit's guidance in *In re Price, supra*, the Court will look to state law generally for any well known meaning of the term in constructing this definition.

Forty-nine states have adopted some form of the UCC. The UCC does not define "received," but it does define "receipt" of goods as "taking physical possession of them." UCC

§ 2-103(c). The term "receipt" is also not defined in the Bankruptcy Code, but it is used in § 546(c). *See* 11 U.S.C. § 546(c)(1)(A). Courts interpreting "receipt" in § 546(c) have consistently adopted a definition of "receipt" based on the definition in Article 2 of the UCC and held that "receipt" in § 546(c) means taking "physical possession." *See*, *e.g.*, *Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.)*, 740 F.2d 220, 224-25 (3d Cir. 1984); *In re R.F. Cunningham & Co., Inc.*, 2006 WL 3791329 at *1-2 (Bankr. E.D.N.Y. Dec. 21, 2006); *In re Kellstrom Industries, Inc.*, 282 B.R. 787, 791 (Bankr. D. Del. 2002); *In re Trico Steel Co., L.L.C.*, 282 B.R. 318, 324 (Bankr. D. Del. 2002).

The Supreme Court has recognized that when two words are similar and concern related issues they may be treated as "functional equivalent[s]" and interpreted identically. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (recognizing that the Court previously "interpreted 'involving commerce' . . . as the functional equivalent of the more familiar term 'affecting commerce'. . ."). Although the word "receipt" does not appear in § 503(b)(9), both "receipt" and "received" appear in the same sentence in § 546(c).[4] Both § 503(b)(9) and the amendments to § 546(c) were enacted as part of § 1227 of the of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to "enhance certain types of reclamation claims." *Circuit City Stores*, 416 B.R. 531, 536 (Bankr. E.D. Va. 2009); *see also Brown & Cole Stores, LLC v. Associated Grocers, Inc. (In re Brown & Cole Stores, LLC)*, 375 B.R. 873 (B.A.P. 9th Cir. 2007) ("The legislative history of § 503(b)(9) suggests that it was aimed at providing relief to sellers of goods who fail to give the required notice under the

---

[4] *Compare* 11 U.S.C. § 503(b)(9) (providing administrative priority for "the value of any goods *received* by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." (emphasis added)), *with* 11 U.S.C. § 546(c) (providing that "the right of a seller of goods . . . to reclaim such goods if the debtor has *received* such goods . . ., but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods-- (A) not later than 45 days after the date of *receipt* of such goods by the debtor . . ." (emphasis added)).

reclamation provision of section 546 (c).").  The Court concludes that "receipt" and "received" are similar words and concern related issues.  Therefore, they should be treated as functional equivalents and interpreted identically.  *See Alafabco, Inc.*, 539 U.S. at 56*; see also Circuit City Stores*, 416 B.R. at 536 (concluding that the word "goods" in § 503(b)(9) should be defined the same way as "goods" is defined in § 546(c)).  As "receipt" in Article 2 of the UCC and § 546(c) is defined as taking "physical possession," the Court holds that "received" for the purposes of § 503(b)(9) means having taken into "physical possession."

This definition of "received" is consistent with Black's Law Dictionary, which defines "receipt" as the "[a]ct of receiving; also, the fact of receiving or being received," and "receive" as "[t]o take into possession and control; to accept custody of."  BLACK'S LAW DICTIONARY 1433 (4th ed. 1968).  This definition is also consistent with the term's ordinary and common usage.  For example, Webster's Ninth New Collegiate Dictionary defines "receive[d]," in the first instance, as "[having] come into possession of."  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 982 (9th ed. 1986).

Clearly, the Parties contemplated this "ordinary and natural meaning" of the word "received" when they entered into the Consignment Agreement.  The Consignment Agreement differentiates between the Consigned Goods "received" by Circuit City and the Consigned Goods sold by Circuit City.  Section 4(b) of the Consignment Agreement required Circuit City upon "receipt of the Consigned [Goods]" to issue a report "detailing the quality or products *received*." (emphasis added).  Section 6(b) of the Consignment Agreement required Circuit City to issue subsequent reports "validating the sales of Consigned Goods for that sales day."  The parties thus refer to the receipt of the Consigned Goods in the Consignment Agreement as the

7

time that the Debtors obtained physical possession of them, rather than as the time that title to the goods transferred.

Panasonic has presented no law from *any* jurisdiction suggesting that "received" means anything other than "having taken into physical possession." Nor has Panasonic presented anything to suggest that Congress meant to deviate from the common and well known meaning of the word "received" in drafting § 503(b)(9).[5] Panasonic, instead, argues that the consignment nature of their transaction requires "received" to mean the time at which title transferred, as the "sale" of the Consigned Goods by Panasonic to Circuit City did not occur until after the Consigned Goods were in the physical possession of Circuit City and as this reading of the statute is somehow more consistent with the purpose of § 503(b)(9). It seems highly unlikely, however, that Congress intended for § 503(b)(9) to serve as a backstop for creditors who otherwise failed to timely enforce their lien rights against proceeds resulting from the sale of consigned goods.

## Conclusion

For all of the foregoing reasons, the Court holds that the definition of "received" means "having taken into physical possession," and that this definition should be applied as the federal definition of the term "received" for purposes of interpreting § 503(b)(9) of the Bankruptcy Code. Because it is undisputed that Circuit City took physical possession of the Consigned Goods prior to the 20-day period immediately preceding the Petition Date, the Court concludes the Consigned Goods were not "received" within the 20-day period prior to the Petition Date. Panasonic has failed to satisfy its burden under § 503(b)(9); accordingly, the Panasonic Claim

---

[5] Statutes should be interpreted consistent with Congressional intent. *See, e.g., U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242-43 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' In such cases, the intention of the drafters, rather than the strict language controls.").

8

should be disallowed as an administrative claim and should be reclassified as a non-priority, general unsecured claim.

A separate order shall issue.

ENTERED: _____

                                                           /s/ Kevin R. Huennekens
                                     UNITED STATES BANKRUPTCY JUDGE