specifications for the Site A Pylon Sign (including colors, design, dimensions, type of lighting and position of tenant panels) for Tenant's written approval, which approval shall not be unreasonably withheld or delayed; provided, however, that it shall be deemed reasonable for Tenant to withhold its approval if Tenant is unable to use its prototypical signage, in which event Tenant shall have the right to terminate this Lease upon written notice to Landlord. Tenant shall be entitled to select the position of Tenant's sign panel on the Site A Pylon Sign prior to (and the size of Tenant's sign panel shall be no smaller than that of) any other tenant or occupant of the Shopping Center that occupies a premises containing a total gross leasable floor area less than the total gross leasable floor area of the Premises. Attached as a portion of Exhibit "E" are plans and specifications for Tenant's building signage, which Landlord hereby approves upon its execution of this Lease, subject to compliance with all applicable laws and requirements of governmental and quasi-governmental offices and agencies having jurisdiction over the Premises. If Tenant is unable to secure consent from such governmental and quasi-governmental offices and agencies for its prototypical signage (and Tenant and Landlord hereby agrees to use their commercially reasonable efforts to secure such consents), Tenant shall have the right to terminate this Lease upon written notice to Landlord. Notwithstanding the foregoing, Tenant, its successors, subtenants and assigns shall be entitled without Landlord's consent (except as hereafter provided), but subject to governmental requirements, as aforesaid, to replace any and all of its signs with signage consistent with Tenant's (or its successors', subtenants' or assigns') then-current prototypical sign plans, so long as such signage is consistent with Landlord's then current Sign Criteria; provided, however, that with respect to Tenant's subtenants' or assigns' signage, Landlord shall have reasonable consents rights with respect thereto. In the event that any of the In-Line Stores (as defined in paragraph 15(c) below) are afforded the opportunity to be represented on any multi-tenant pylon or monument signs in the Shopping Center in addition to the Site A Pylon Sign, the parties agree that Tenant shall be afforded the opportunity to be represented thereon, with the priority of signage position determined by relative gross leasable area of the premises, as set forth above.

(b)   Communications Equipment. Tenant may install, maintain and/or replace any satellite dishes, antennas, cellular and PCS towers and poles on the roof

13

and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided same shall not adversely and materially affect the roof or the structural elements thereof. Tenant's right to install, maintain and/or replace communications equipment specified in this paragraph shall be subject to City approval and Landlord approving (which approval shall not be unreasonably withheld, delayed or conditioned) the location, screening thereof, and the manner of attachment to the roof, including any roof penetrations or repairs, adjustments or Alterations thereto; provided that with respect to any roof penetrations, all such work shall either be performed by Landlord's roofing contractor or supervised by Landlord's roofing consultant at Tenant's sole expense. At the expiration of the Term, upon Landlord's request, Tenant shall remove all such communications equipment, and shall repair any damage to the roof in connection with such removal. Communications equipment may be used only by Tenant, its assignees, subtenants and successors-in-interest.

9. Taxes.

(a) Taxes Contemplated Hereunder. The term "Real Estate Taxes" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Shopping Center, including the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes. Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or charge upon the rent or other charges payable by Tenant under this Lease.

(b) Payment of Real Estate Taxes. At such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes (calculated in the same manner as Tenant's Pro Rata Share of CAM Charges in paragraph 7(c)) levied against the tax parcel or parcels within which the Premises are located (the "Tax Parcel"). Tenant's Pro Rata Share of Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's payment is due. Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes within thirty (30) days after Tenant's

14

receipt of Landlord's statement therefor, accompanied by the tax bill on the basis of which such statement is rendered. Landlord shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost may be added thereto, become due or be imposed by operation of law for the nonpayment or late payment thereof. In no event shall Tenant be liable for any discount forfeited or penalty incurred as a result of late payment by another tenant or by Landlord. Real Estate Taxes shall be prorated on a 360-day basis as of the Commencement Date and the expiration or earlier termination of this Lease, and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. Landlord shall remain primarily responsible for such payment notwithstanding the fact that such payment may be made by a tenant of Landlord's Premises or other third party pursuant to an agreement to which Tenant is not a party. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due thereon, subject to reimbursement by Landlord.

    (c)    <u>Contest of Real Estate Taxes and/or Assessed Valuation of Property</u>. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within five (5) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof. Landlord shall join with Tenant in the prosecution of the contest if required by law or Landlord, in its sole discretion, determines that Tenant's position is meritorious.

    (d)    <u>Payment Following Appeal</u>. Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that

15

Real Estate Taxes be paid under protest prior to commencement of such proceedings), Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, the payment or partial payment of which may have been deferred during the prosecution of such proceedings. Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the appropriate taxing authority of all costs, fees and expenses it incurs in such protest or reassessment.

10. Maintenance, Repairs and Replacements.

(a) Tenant's Obligation. Except (i) for costs covered by Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents, employees or contractors), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of the exterior and interior non-structural elements of the Building, including the HVAC equipment. Notwithstanding the foregoing, Tenant shall have no obligation to install or construct alterations or incur expenditures pursuant to this paragraph during the last two (2) years of the Lease Term; provided however that if Tenant is required to expend any sum in satisfaction of its obligations hereunder, and if the resulting improvement to the Improvements cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term (without consideration to the exercise of any additional Renewal Options), then Tenant shall be reimbursed by Landlord by that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term (with consideration to the exercise of any additional Renewal Options), so long as any replacements of a capital nature are first approved by Landlord, which has the right to require Tenant to repair said item rather than replace it, if repair is reasonably possible. If Landlord has reimbursed Tenant as set forth herein, and Tenant subsequently exercises a Renewal Option, Tenant shall promptly refund to Landlord an equitable amount of the funds so received from Landlord.

(b) Landlord's Obligation. Except for obligations arising from the negligent acts or omissions or willful misconduct of Tenant (or its agents, employees or

16

contractors), Landlord shall maintain all structural elements of the Premises (whether or not same serve only the Premises), including, without limitation, the roof, roof structure, floor slab, foundation, load bearing walls and exterior structural walls; provided that Landlord's obligation to maintain the floor slab is contingent upon Tenant having provided Landlord with reasonable notice prior to installation of same so as to permit Landlord and its project manager with the opportunity to observe and inspect such installation; provided further, that Landlord's failure to object in writing within thirty (30) days following such installation shall be deemed to be Landlord's irrevocable approval of such installation and acceptance of its maintenance obligations herein. In addition, Landlord agrees to maintain the Other Improvements immediately surrounding the Building, as well as sidewalks and landscaping.

(c)    Remedies. Should either party fail to perform its obligations under this paragraph 10, the other party may, at its option, effect such maintenance, replacements or repairs, provided that such curing party shall have given the nonperforming party thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required); but further provided that such thirty (30) day period (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as the party required to effect such cure has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. The nonperforming party shall reimburse the other party on demand for the reasonable and actual amount so expended (as evidenced by detailed invoice), plus interest at the lesser of twelve percent (12%) per annum or the highest rate permitted by State law (the "Default Rate") from the date such payment was due until the date paid. However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement.

(d)    Miscellaneous. All maintenance, repairs or replacements to the Premises shall be done by Tenant or Landlord lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. In order for Landlord and

17

Tenant to effectively perform their maintenance, repair and replacement obligations hereunder, Tenant and Landlord, as applicable, shall provide to the other party any and all manufacturers' and contractors' warranties relating to such work performed on behalf of the other party to the party who is required to maintain same under the Lease.

11. <u>Utility Service Provider; Payment of Utility Bills</u>. Landlord shall, at no expense to Tenant, provide Tenant with separate meters for all utilities and Tenant shall, to the extent possible, pay directly to the appropriate utility company or governmental agency providing such service, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. Tenant acknowledges that a portion of the utilities to be furnished to the Premises may be provided by Landlord on a submetered basis, and Tenant agrees to reimburse Landlord, within fifteen (15) days following demand therefor, for the costs of such utilities used by Tenant with regard to the Improvements. Landlord shall pay when due all utility charges incurred in the operation of the Common Areas and the Shopping Center. Tenant shall be entitled, subject to State law, to select its own telecommunications (e.g., telephones, internet, cable access) service for the Premises.

12. <u>Alterations</u>. During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent but subject to City approval if required, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores with respect to its branded features (i.e., those features which are part of a chain-wide store renovation or re-branding program) so long as the remainder of the exterior alterations or modifications are consistent with the colors and design of the then existing architecture of the Shopping Center, and so long as Tenant shall, in its reasonable business judgment, accommodate Landlord's suggestions relating to retaining building elevation features that are compatible with the overall aesthetic scheme of the Shopping Center) and (ii) any interior nonstructural alterations or modifications it may desire. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall otherwise have the right, at its sole cost, to otherwise alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements, provided that any alterations or modifications affecting the exterior or structural elements of the

Building shall be consistent with the colors and design of the then existing architecture of the Shopping Center and shall not materially impair the structural integrity, or materially diminish the value, of the Building. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord; provided, that Tenant shall supply such additional information as may be reasonably requested in writing by Landlord with respect to the proposed work, and such 15-day period shall be extended by a corresponding number of days. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes. As to any interior or exterior work done by Tenant pursuant to this paragraph 12 costing $25,000 or more, Tenant shall give Landlord not less than ten (10) days' written notice prior to commencing such work in order to permit Landlord to post on the Premises a notice of owner nonliability pursuant to State statute. Upon completion of any work done by Tenant pursuant to this paragraph 12 costing $25,000 or more, Tenant shall promptly deliver to landlord as-built drawings or record drawings (if prepared by Tenant) of the Premises, with a list and description of all work performed by the contractors, subcontractors and material suppliers.

13.   Mechanics' Liens.  Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises, the party on account of whose actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by

19

substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto.

14. <u>Insurance</u>.

(a) <u>Property Damage</u>. During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for not less than eighty percent (80%) of the full replacement value of all such construction. During the Main Term and all Option Periods, Tenant shall keep the Premises insured against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage in the amount of full replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than Tenant Improvement Allowance), with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and Landlord's first "Mortgagee" (as defined in paragraph 21 below), shall be named in such policy or policies as additional insureds as their respective interests may appear. Neither Landlord nor Tenant shall construct, or permit to be constructed, any improvement in the Shopping Center, nor conduct any activity, or permit the conduct of any activity, in the Shopping Center which will prevent the other party from being able to obtain insurance coverage at commercially reasonable rates. Should either party cause or permit any insurance rate increase to occur, such party will reimburse the other party for the additional premium required, subject to Tenant's right to self-insure (in which event Landlord will contribute to Tenant's self insurance fund to cover increased actuarial risks).

(b) <u>Liability Insurance</u>. During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and Landlord's first Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

20

(c) <u>Workers' Compensation Insurance</u>. To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d) <u>Self-Insurance</u>. Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided that, as of the end of the most recent quarterly reporting period, (i) the net worth of Tenant or Guarantor is not less than One Hundred Million Dollars ($100,000,000) and (ii) the net current assets of Tenant or Guarantor is not less than Twenty-Five Million Dollars ($25,000,000), and provided further that any program of self-insurance includes customary features governing the investigation, litigation, processing, funding of reserves, and payment of insurance claims.

(e) <u>Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction</u>. During the Term, Landlord shall keep in full force and effect, in commercially reasonable form, policies of (1) commercial general liability insurance, and (2) property insurance insuring against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (such areas here sometimes collectively referred to as the "Additional Areas"). The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center. Said policies shall name Tenant, and any lender, investor or other stakeholder which is designated by Tenant from time to time, as an additional insured to the fullest extent Tenant and such stakeholder have insurable interests. The limits of such policies shall be the same as those set forth in subparagraphs (a) and (b) above, as

21

applicable. The cost of the premiums for coverages relating to Common Areas shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage in excess of that coverage which is commercially reasonable among owners of comparable shopping centers in the Denver metropolitan area. Any deductible amount for Common Area insurance coverage shall be reasonable in amount given the nature of the risk insured and probable frequency of claims made under such coverage, but in no event shall such deductible amount exceed $10,000 for Common Area liability coverage. Landlord shall assure (through parallel lease provisions or otherwise) that at least the In-Line Stores (as such term is defined in paragraph 15(c) below) are insured with substantially similar coverages to those required for the Premises and the Common Areas, such that in the event of any destruction or damage thereto, Tenant may be assured that the In-Line Stores will be reconstructed in equal or superior condition under the conditions and within the time frame set forth in paragraph 15. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep, or cause its general contractor to keep, in full force and effect, with regard to the Shopping Center, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

1) Workers' Compensation – Statutory Limits;
   Employers Liability – $500,000;

2) Automobile Liability for all vehicles with limits of $3,000,000; and

3) Commercial General Liability to include premises operations and products/completed operations coverage with limits of $3,000,000.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured and such builder's risk policy shall name Tenant a loss payee.

(f) Policy Provisions. All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers admitted to do business in the State with a Best rating of not less than A-VIII. Any insurance coverage

22

enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 14. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall not be deemed to be self-insurance. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the limits required herein shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14.

(g) <u>Waiver of Right of Recovery and Subrogation</u>. To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h) <u>Evidence of Insurance</u>. Subject to Tenant's right to self-insure hereunder, (i) upon commencement of the Main Term (as to property insurance), (ii) upon Delivery of the Shell (as to liability insurance) and (iii) prior to expiration thereof, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that coverage shall not be cancelled without thirty (30) days notice to the certificate-holder (and any Mortgagee, if applicable). All policies of insurance (other than self-insurance) enumerated above

23

required to be maintained by Tenant shall contain a provision that the insurer will not cancel or refuse to renew the policy, or change in any material way the nature or extent of the coverage provided by such policy, without first giving Landlord at least thirty (30) days' prior written notice. In the event Tenant fails to procure, maintain and/or pay for the insurance required to be maintained by Tenant by this Lease (other than self-insurance), at the times and for the duration specified in this Lease, then, following Tenant's failure to procure, maintain and/or pay for such insurance within five (5) business days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured, Landlord shall have the right, but not the obligation, and without prejudice to any other rights or remedies of Landlord under this Lease, to procure such insurance an/or to pay the premiums for such insurance on behalf of Tenant, in which event shall all sums so paid by Landlord, together with interest thereon and any reasonable costs or expenses incurred by Landlord in connection therewith, shall be due and payable by Tenant within ten (10) days after receipt of written demand therefor, which demand shall be accompanied by reasonably supporting evidence of such costs and expenses.

(i)     <u>Indemnities</u>.  Except if arising from the negligent or willful acts of Landlord or its agents, contractors or employees (to the extent that paragraph 14(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from the use thereof by Tenant, its agents, contractors or employees.

Except if arising from the negligent or willful acts of Tenant or its agents, contractors or employees (to the extent that paragraph 14(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises, or other buildings within Landlord's Premises or resulting from the use thereof by Landlord, its agents, contractors or employees.

24

15. <u>Damages by Fire or Other Casualty</u>.

(a) <u>Insured Casualty</u>. In the event of a fire or other casualty, causing destruction or damage to the Premises for which insurance protection (or self-insurance) is required to be maintained under this Lease or is maintained (an "Insured Casualty"), the provisions of this paragraph 15(a) shall control. In the event that substantial completion of the restoration of the Premises cannot reasonably be expected to occur within two hundred forty (240) days from the date of the Insured Casualty, Tenant shall have the right upon thirty (30) days written notice to Landlord, to terminate this Lease, and Landlord shall receive the proceeds of any insurance (together with any applicable deductible, the amount of which deductible shall be paid by Tenant to Landlord) which are paid by the insurance carrier issuing the policy of insurance required to be maintained pursuant to paragraph 14(a) above, or, in the event Tenant self-insures for an Insured Casualty, the amount necessary for reconstruction of the Improvements. Landlord and Tenant shall meet and confer in good faith to estimate the time required to complete the restoration of the Improvements within sixty (60) days following the date of the Insured Casualty. If this Lease is not terminated as provided for above, then within a reasonable time after such casualty (subject to force majeure, applicable building codes, the procurement of building permits, which Tenant shall diligently pursue, and the receipt of insurance proceeds (unless self-insured), which Tenant shall diligently pursue), Tenant shall diligently complete reconstruction of the Premises to that condition existing immediately prior to such casualty. Notwithstanding the foregoing, in conjunction with the restoration of the Premises, Tenant may make such alterations as may be permitted under paragraph 12 hereof, subject to the provisions of paragraph 12.

(b) <u>Uninsured Casualty</u>. In the event of destruction or damage to the Premises for which insurance protection (or self-insurance) is not required to be maintained under this Lease (and in fact is not maintained) (an "Uninsured Casualty"), which (i) will have, in Tenant's reasonable estimation, a repair or reconstruction cost of ten percent (10%) of the replacement cost therefor or more, or (ii) substantial completion of the restoration of the Improvements cannot reasonably be expected to occur within two hundred forty (240) days from the date of such Uninsured Casualty (and Landlord and Tenant shall meet and confer in good faith to estimate the time required to complete the

25

restoration of the Improvements within sixty (60) days following the date of the Uninsured Casualty), Tenant shall have the right, at its option, to notify Landlord of the actual cost estimate of such repair or restoration, and Tenant's election to terminate this Lease. Tenant shall notify Landlord of its exercise of such option as soon as possible following such conference with Landlord. Notwithstanding the foregoing, in the event that Tenant elects to terminate this Lease as a result of such an Uninsured Casualty to the Improvements on the grounds that Tenant reasonably estimates that the cost will be in excess of ten percent (10%) of the replacement cost thereof to repair or reconstruct (but which may take less than two hundred forty (240) days from the date of such Uninsured Casualty to reconstruct), Landlord shall have the right, within thirty (30) days of receipt of Tenant's notice of termination, to provide Tenant with written notice of its intention to pay the cost of repairing or reconstructing the Premises in excess of such ten percent (10%) threshold, in which event, subject to Landlord in fact paying such excess, this Lease shall remain in full force and effect. In the event Tenant elects not to terminate this Lease as set forth above, then, subject to force majeure, Tenant shall diligently commence and pursue to completion the reconstruction of the Premises to their condition existing immediately prior to such damage, regardless of the amount of damage to same, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, subject to the provisions of paragraph 12.

   (c) <u>Reconstruction of Common Areas and In-Line Stores</u>. Should Tenant elect to maintain this Lease in full force and effect, Landlord shall promptly reconstruct all Common Areas and reconstruct (or cause to be reconstructed) at least 130,000 square feet of gross leasable area (excluding the Premises) within the in-line stores identified on the Site Plan as "SM-7", "SM-6", "SM-5", "SM-4", "SM-3", "Building #10", "Building #11", "SM-2" and "SM-1" (the "In-Line Stores") to the condition existing immediately prior to the casualty, regardless of the amount of damage to same; provided, however, that if such damage or destruction occurs within the last five (5) years of the Main Term or of any Option Period, Landlord shall have the option, to be exercised in writing by Landlord to Tenant within thirty (30) days after receipt of Tenant's notice of its election to maintain this Lease in full force and effect as provided above, not to reconstruct (or cause to be reconstructed) at least 130,000 square feet of

26

gross leasable area (excluding the Premises) within the In-Line Stores, and if Landlord makes such election, Tenant shall be under no obligation to restore the Premises, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d) <u>Last Two (2) Years of Main Term or Option Period</u>. Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Premises, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Landlord shall receive (i) the proceeds of any insurance (together with any applicable deductible) which are paid by the insurance carrier issuing the policy of insurance required to be maintained pursuant to paragraph 14(a) above, or (ii) if self-insured, an amount equal to the reconstruction costs of the Improvements or, if the Improvements are not being reconstructed, an amount equal to the actual value of the Improvements (not to exceed, however, an amount equal to the reconstruction costs of the Improvements), to the extent such amounts would have been payable under the insurance outlined in paragraph 14(a) above.

16. <u>Condemnation</u>.

(a) <u>Definition of Taking and Substantial Taking</u>. For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, the Shopping Center, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or Shopping Center and Common Areas as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such

27

Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of five (5) spaces (for full-sized automobiles) per 1000 square feet of ground-floor gross leasable area or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, or (iii) so much of the Common Area Easement described in paragraph 6 above that access to the Premises is impeded.

(b) <u>Tenant's Rights Upon Taking or Substantial Taking</u>. In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

(c) <u>Tenant's Rights Upon Less Than Substantial Taking</u>. In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award allocable to the Premises, which Landlord shall make available to Tenant for such restoration. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d) <u>Landlord's Obligations Upon Any Taking</u>. In the event of any Taking following which the Lease continues in effect, Landlord shall make or cause to be made all necessary restorations to all portions of the Common Areas and Additional

28

Areas such that they each constitute a complete architectural unit and serve the function originally intended, such that in the event of any condemnation of any portion of the Shopping Center whatsoever, and in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that the Shopping Center will be reconstructed to its former condition within reasonable time.

(e) <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding sixty (60) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(f) <u>Taking of the Pylon Sign(s)</u>. In the event of a taking, whether permanent or temporary, of any pylon or monument sign (as contemplated by paragraph 8) on which Tenant has installed identification panels, Landlord shall provide within ninety (90) days a substitute site (reasonably acceptable to Tenant) therefor, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center, and Landlord shall replace and/or rebuild any of such signage so taken at its sole cost.

(g) <u>Tenant's Right Upon Condemnation</u>. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the so-called "bonus value" of its leasehold interest in the Premises, if any, as well as such other amounts to which Tenant is entitled under applicable law.

17. <u>Assignment and Subletting</u>. Provided that (a) Tenant is not in default of a material provision of this Lease (including without limitation, a breach of any tenant

29

exclusives to which Tenant is subject pursuant to paragraph 18(b)(iii) below), following notice and the applicable opportunity to cure, and (b) in the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder, except to the extent this Lease has been changed, modified or amended in any respect by Landlord and any transferee (i.e., Tenant shall be released from liability hereunder only with respect to any such changes, modifications or amendments to which Tenant has not consented in writing), Tenant shall have the right to sublet, assign, transfer, reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent, so long as such transferee's intended use of the Premises (at the time of Transfer) does not violate any exclusive right restrictions granted to a tenant or occupant of the Shopping Center pursuant to a lease or other agreement executed prior to the Commencement Date. Transfers to Affiliates (as defined herein) and Transfers involving beneficial ownership interests in Tenant, shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent. For purposes of this paragraph 17, an "Affiliate" shall mean any entity (i) into or with which Tenant may be merged or consolidated, (ii) which is controlled by, controls, or is under common control of or with Tenant, or (iii) which acquires or controls the majority of the assets of Tenant. For purposes of this definition, the terms "controlled by," "controls" or "under common control with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of Tenant, whether through ownership, legally or beneficially, of voting securities, by contract or otherwise.

Following execution by Tenant and any such assignee, Tenant shall provide Landlord with a copy of the assignment and assumption agreement in form reasonably acceptable to Landlord; provided, that it shall be unreasonable for Landlord to withhold its approval if such assignment and assumption agreement contains the assignee's agreement to assume all of Tenant's obligations under this Lease arising after the date of such assignment. No such Transfer shall relieve Tenant of any of its obligations under this Lease.

Notwithstanding anything hereinabove to the contrary, if Tenant gives notice to Landlord that Tenant desires to assign this Lease or to sublet all or any part (but not less

30

than 3,400 square feet of gross leasable area) of the Premises to a party (or parties) that are not Affiliates for all or substantially all of the then remaining Term of this Lease, then Landlord may elect to cancel this Lease as to that portion of the Premises which is the subject of such Transfer.  For purposes of the foregoing, the granting of licenses or concessions by Tenant or the creation of departments by Tenant (as described below) shall not be deemed to be a Transfer.  In connection with such notice, Tenant shall provide Landlord with (a) the name and address of the proposed tenant, (b) the proposed business use, (c) financial information concerning the proposed tenant (to the extent reasonably available to Tenant), and (d) any other information reasonably requested by Landlord (to the extent reasonably available to Tenant).  In order to exercise its election to cancel, Landlord shall provide a written notice to Tenant, which notice shall be given no later than thirty (30) days after Landlord's receipt of Tenant's request for Landlord's consent to such assignment or subletting.  In the event of any such election to cancel by Landlord, Tenant may elect to either (a) nullify such cancellation by giving notice to Landlord within thirty (30) days after Tenant's receipt of Landlord's notice of cancellation that Tenant withdraws its request for Landlord's consent to such assignment or subletting; or (b) require that such cancellation be effective as to all of the Premises.  If Landlord's election to cancel is not vitiated by Tenant, then such cancellation shall be effective on the proposed effective date of the assignment or sublease by Tenant.  In the event of any such cancellation of this Lease, Landlord shall reimburse Tenant for the unamortized cost of the Improvements, including without limitation any alterations or additions thereto (or portion thereof as to which such cancellation is effective), in excess of the Tenant Improvement Allowance paid by Landlord attributable thereto.  Upon written request from Landlord (but not more than twice in any calendar year), Tenant shall provide Landlord with the then current unamortized cost of the Improvements as described in the immediately preceding sentence.

Notwithstanding the foregoing provisions of this paragraph 17, Tenant shall (without being subject to Landlord's cancellation right as set forth above) have the right, on prior written notice to Landlord but without Landlord's consent, (x) to license a portion of or a department in the Premises to a licensee or concessionaire doing business within the Building under Tenant's trade name and without a separate building entrance,

31

provided that the total space so licensed shall not exceed thirty-five percent (35%) of the gross leasable area of the Building; (y) to assign this Lease to a purchaser of all or substantially all of Tenant's stores in the State of Colorado. No license or concession pursuant to the provisions of clause (x) of this subparagraph or assignment of this Lease pursuant to the provisions of clause (y) of this subparagraph shall release Tenant from its continuing liability under this Lease.

18.    Use.

(a)    Tenant may initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular and wireless telephones and telecommunication devices, and other goods related to consumer, office and automotive electronics products as typically merchandised and sold in the majority of Tenant's stores in Colorado, and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)    Tenant shall also have the right to use the Premises for any lawful use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 19(a)(viii) below, (iii) in violation of the initial exclusive use restriction granted by Landlord pursuant to a letter of intent or lease executed within nine (9) months following the date hereof (provided that in the case of a letter of intent, the resultant lease must be executed by no later than July 21, 2005) to any tenant or occupant of the Shopping Center with a tangible net worth of not less than Twenty-Five Million Dollars ($25,000,000) and occupying more than 15,000 square feet of gross leasable area (the "Post-Execution Exclusives"), provided that in order for the Post-Execution Exclusive to be binding on Tenant, (1) such occupant must be a nationally or regionally recognized tenant (i.e., such occupant shall have at least forty (40) stores in the United States or at least ten (10) in the State of Colorado), (2) Tenant

32