completed, and Landlord shall reimburse Tenant for its actual costs thereof, including interest on such costs at the Default Rate. Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense. Landlord covenants, upon Tenant's request, to provide Tenant with duplicate sets of all plans, specifications and contracts prepared in connection with the construction of the Shopping Center, as well as schedules of all contractors, subcontractors and suppliers. If such costs are not reimbursed to Tenant prior to the Commencement Date, Tenant may offset such amounts against Base Rent and Additional Rent otherwise due until such costs and accrued interest are reimbursed in full, subject to the Offset Limitation.

In the event that Tenant has the right, and elects, to terminate this Lease as provided herein, Landlord shall promptly thereafter deliver to Tenant a sum equal to the actual out-of-pocket expenses and substantiated third-party legal, architectural and engineering costs incurred by Tenant to the date of termination, not to exceed One Hundred Thousand and No/100 Dollars ($100,000.00); provided, however, that the foregoing payment obligation shall not arise if Landlord has timely notified Tenant of its intent to postpone Delivery of the Shell to March 21, 2006 and the Outside Delivery Date to July 1, 2006, and as a result, Tenant has elected to terminate this Lease as provided above.

(d)     Exercise of Remedies. Notwithstanding the foregoing, a delay by Tenant in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by Landlord. All sums owing to Tenant under paragraph 29 hereof shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously therewith; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent and Additional Rent otherwise due hereunder.

(e)     Time is of the Essence. Notwithstanding anything contained herein to the contrary, Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule. In the event that Landlord fails to complete its construction and

delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth herein.

30. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease or seek redress for the breach of or default in any provision of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late or partial payment or performance by the other without waiving any Event of Default which may then have accrued. No act or thing done by Landlord or Landlord's agents during the term of this Lease will be deemed an acceptance of a surrender of the Premises, and no agreement to accept the surrender will be valid unless in writing, signed by Landlord.

31. <u>Compliance with Applicable Laws</u>. During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal, state and federal authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters (collectively, the "Lawful Requirements") respecting Tenant's use and occupancy of the Improvements, and Landlord shall comply with all Lawful Requirements otherwise relating to the Improvements. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and

54

Landlord shall pay the reasonable cost thereof plus interest at the Default Rate to Tenant within thirty (30) days after receipt by Landlord of a request for payment from Tenant, which request for payment shall be accompanied by invoices, lien waivers, work orders and other documentation reasonably evidencing the costs incurred. If Landlord fails to pay such amounts to Tenant within such thirty (30) day period, which failure continues for ten (10) days after written notice thereof by Tenant to Landlord, Tenant shall be entitled to offset such amounts against Base Rent and Additional Rent, subject to the Offset Limitation.

32.   <u>Notices</u>.  Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

| | |
|---|---|
| If to Tenant: | CIRCUIT CITY STORES WEST COAST, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Corporate Secretary |
| with a copy to: | CIRCUIT CITY STORES WEST COAST, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| If to Landlord: | JP THORNTON LLC<br>c/o Jordon Perlmutter & Co.<br>1601 Blake Street, Suite 600<br>Denver, Colorado 80202-1329<br>Attention: Jay Perlmutter |
| with a copy to: | CHAMBERS DANSKY & MULVIHILL LLC<br>1601 Blake Street, Suite 300<br>Denver, Colorado 80202<br>Attention: David J. Dansky, Esq. |

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

55

33. <u>Brokers</u>. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for The Equity Group, Sullivan Hayes and Millennium Retail Partners (collectively, "Tenant's Brokers") and Jordon Perlmutter & Co. ("Landlord's Broker" and collectively with Tenant's Brokers, the "Brokers"), each of which shall be paid a commission by Landlord pursuant to their separate written agreement. Landlord agrees that, if Landlord fails to pay either of such Brokers its commission when due, Tenant may pay same and offset such amount against the amounts then next becoming due from Tenant to Landlord hereunder, subject to the Offset Limitation. Landlord agrees that although the Tenant's Brokers are representing Tenant with respect to this leasing transaction, and, although Landlord is responsible for payment to such Tenant's Brokers of a commission, such Tenant's Brokers owe no fiduciary's, agent's or other duty whatsoever to Landlord. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

34. <u>Miscellaneous</u>.

(a) <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) <u>Relationship of Landlord–Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association

56

between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) <u>Entire Agreement; Merger</u>. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) <u>Attorneys' Fees</u>. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g) <u>Partial Invalidity</u>. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h) <u>Consents</u>. Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i) <u>Holidays</u>. If the day on which rent or any other payment due hereunder is payable falls on a Saturday, Sunday or on a legal holiday, it shall be payable on the following business day.

(j) <u>Applicable Law</u>. This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall be in the District Court in and for the County of Adams, State of Colorado.

(k) <u>Successors and Assigns</u>. All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party, except as specifically provided otherwise in this Lease.

(l) <u>Counterparts</u>. This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m) <u>Trademarks and Trade Names</u>. All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

(n) <u>Exhibits</u>. All of the exhibits to this Lease are hereby incorporated herein by reference for all purposes and are part of this Lease.

(o) <u>No Construction Against Either Party</u>. This Agreement shall be interpreted to give it fair meaning and shall not be construed against either party.

(p) <u>Effective Date</u>. This Lease shall be deemed executed on the date (the "Effective Date") on which it is fully executed by all parties.

(q) <u>Non-Merger</u>. If Landlord is or becomes the holder of any mortgage or deed of trust or other security instrument creating a lien on a leasehold estate of Tenant, or if Landlord shall acquire the Improvements or leasehold estate, or if Tenant, or any sublessee or assignee of Tenant, shall acquire the fee simple or any other estate in the underlying fee of the Premises, or if the holder of any mortgage or leasehold estate herein created acquires the fee title to the Premises (while such mortgage or deed of trust is in existence on the leasehold estate), no merger of any estate in the Premises shall occur and all estates shall always be kept separate and distinct, unless Landlord and Tenant specifically consent in writing to any such merger.

35. <u>Effectiveness of Lease; Tenant's Right to Terminate</u>. Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of each and all of the following conditions:

58

(a) Tenant's receipt, within ten (10) days of execution hereof, of (i) a commitment for leasehold policy of title insurance for the Shopping Center; (ii) copies of all underlying documents referred to in said commitment for title insurance; and (iii) within thirty (30) days of execution hereof, an ALTA survey of the Shopping Center, at Landlord's expense, in form and substance acceptable to Tenant, at a minimum identifying by metes and bounds or platted lot all of the real property within the Shopping Center and the Land, (iv) all instruments reasonably required by the title company issuing the commitment for leasehold policy of title insurance to issue a policy meeting Tenant's requirements, including, without limitation, an Owner's Affidavit and Indemnity in form acceptable to the title company; and (v) Tenant's approval of all of the foregoing in writing within thirty (30) days after receiving all of said documents.

(b) Landlord's delivery of subordination, non-disturbance and attornment agreements and estoppel letters executed by any and all existing Mortgagees and Ground Lessors in a form reasonably satisfactory to Tenant simultaneously with the execution hereof.

(c) Landlord's Delivery of the Shell by the date and in the condition specified in the Construction Provisions.

(d) Tenant's obtaining: (i) written confirmation from appropriate local authorities that current zoning and use regulations allow construction of the Improvements on the Premises; and (ii) the required City, County, State and other necessary governmental agency permits and approvals to construct said Improvements on the Premises no later than the Delivery Date. Tenant agrees to apply for such permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; provided, however, that the foregoing shall not be deemed to require Tenant to initiate litigation or to agree to any unreasonable conditions imposed upon issuance of any such permit or approval.

(e) Landlord's representations, warranties and covenants, including but not limited to those set forth in paragraph 19 herein, being true and accurate as of the Delivery Date.

(f) Prior to the Delivery Date, Tenant's obtaining from Landlord copies of soils and Hazardous Substances reports satisfactory to Tenant.

(g) Tenant's obtaining satisfactory assurances, prior to execution hereof, that adequate utility services (including gas, electricity, telephone, domestic water, fire protection water, storm sewer and sanitary sewer) are available for connection at the Premises or in close proximity thereto in amounts sufficient to support Tenant's operations.

(h) Tenant's obtaining satisfactory assurances that all necessary approvals and consents, including approvals or consents from other tenants in the Shopping Center, planned unit developmental boards and other necessary entities, and all necessary reciprocal use and easement agreements have been obtained prior to the date of execution hereof.

(i) Tenant's obtaining satisfactory written assurances that Landlord has obtained financing adequate to fund the Tenant Improvement Allowance and development of the remainder of the Shopping Center.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord. All conditions contained in this paragraph except subparagraphs (a) and (g) unless previously waived or satisfied shall expire as of the Commencement Date.

The delivery of this executed Lease by Tenant to Landlord constitutes the offer of Tenant to Landlord to bind Landlord and Tenant to the provisions of this Lease, subject

to the conditions set forth in this paragraph 35. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, Landlord execute and return same to Tenant within ten (10) days following receipt thereof by Landlord. In the event Landlord fails to execute and return the Lease within such ten (10) day period, Tenant may at any time after delivery of the Lease provide written notice to Landlord that Tenant revokes its delivery of the executed Lease and thereupon Landlord shall be immediately obligated to return to Tenant all executed original counterparts as well as any copies of this Lease in the possession of Landlord, and this Lease shall thereafter be null and void.

36.  Confidentiality. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use commercially reasonable efforts to preserve the confidentiality of this transaction (provided that the foregoing shall not restrict either party from publicly disclosing the existence of a lease by Tenant in the Shopping Center). This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting on behalf of the parties hereto.

37.  Loan Contingency. Tenant acknowledges that the effectiveness of this Lease is expressly conditioned upon the securing by Landlord of financing for the Shopping Center on terms and conditions, and at a rate of interest and in the loan amount, satisfactory to landlord in its sole and absolute discretion, on or before the Financing Deadline set forth below (the "Financing Contingency"). Landlord agrees to act diligently and in good faith to satisfy the Financing Contingency on or before October 10, 2004 (the "Financing Deadline"). The Financing Contingency is for Landlord's benefit only and, if not satisfied, may be waived by Landlord upon written notice to Tenant on or before the Financing Deadline. In the event that Landlord has not satisfied the Financing Contingency on or prior to the Financing Deadline (and has not waived the Financing Contingency in writing as aforesaid), then from and after such date, either party may elect to terminate this Lease upon thirty (30) days' prior written notice to the other party; provided, however, that if Tenant elects to terminate this Lease as aforesaid, Landlord shall have the right to satisfy or waive the Financing Contingency within such 30-day

61

period, in which event Tenant's election to terminate shall be vitiated and this Lease shall continue in full force and effect. In addition, in the event Landlord elects to terminate this Lease as aforesaid and thereafter satisfies the Financing Contingency within three (3) years flowing the date on which Landlord's termination notice is received by Tenant, then notwithstanding such termination, Tenant shall have the right to notify Landlord, within thirty (30) days following notification from Landlord of such satisfaction, that Tenant elects to reinstate this Lease, on the same terms and conditions set forth herein (with a corresponding adjustment in the performance schedule), in which event this Lease shall be deemed to be in full force and effect.

38. "For Rent" Signs. Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, in the parking lot of the Shopping Center. During said ninety (90) day period, Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

39. Cotenancy Requirement. Landlord acknowledges and agrees that notwithstanding anything else in this Lease to the contrary, Tenant shall not be required to open for business until at least (a) Home Depot (or a replacement tenant or occupant with a tangible net worth of not less than One Hundred Million Dollars ($100,000,000)) occupying at least 100,000 square feet of gross leasable area and (b) two (2) nationally recognized hard or soft goods retailers occupying at least 18,000 square feet of gross leasable area each, are open for business within Site A of the Shopping Center (the "Cotenancy Requirement"). If Tenant does not open for business because the Cotenancy Requirement has not been satisfied, Base Rent, Ground Rent or Additional Rent shall not commence until such time that Tenant opens for business. If Tenant elects to open for business notwithstanding that the Cotenancy Requirement remains unsatisfied, then Base Rent (or Ground Rent, as applicable) shall be reduced by fifty percent (50%) for so long

as the Cotenancy Requirement remains unsatisfied. If the Cotenancy Requirement remains unsatisfied for twelve (12) months after the Delivery Date, Landlord shall have the right to require Tenant to elect to either (i) terminate this Lease upon thirty (30) days written notice to Landlord, whereupon Landlord shall pay to Tenant on the date of termination set forth in Tenant's notice the amount of Tenant's then-unamortized costs of improvements to the Premises, or (ii) revert to paying full Base Rent (or Ground Rent, as applicable), effective as of the first day of the first full calendar month following the expiration of such twelve (12) month period.

40. <u>Lease Guaranty</u>. Concurrently with the execution and delivery of this Lease, Tenant shall cause Circuit City Stores, Inc. to execute and deliver to Landlord the Lease Guaranty in the form of <u>Exhibit "K"</u> attached hereto.

41. <u>Right of Entry</u>. Subject to the provisions of this Lease, Landlord reserves the right for itself or its duly authorized agents and representatives at all reasonable times during Tenant's business hours, but subject to reasonable advance written notice, to enter the Premises for the purpose of inspecting the same or to show the same to any prospective purchaser (or, during the last six (6) months of the Lease term, to any prospective tenant), and for the purpose of making any necessary repairs or modifications to the Premises, or if required in order to make necessary repairs to other portions of the Shopping Center.

WITNESS the following signatures and seals:

LANDLORD

JP THORNTON LLC, a Colorado limited liability company, by Jordon Perlmutter & Co., a Colorado corporation, Manager

By: _____
Name: Jay Perlmutter
Title: Vice President

TENANT

CIRCUIT CITY STORES WEST COAST, INC., a California corporation

By: _____
Thomas C. Nolan
Vice President

## LEASE GUARANTY

FOR VALUE RECEIVED, and in consideration for, and as an inducement to JP THORNTON LLC, a Colorado limited liability company, as Landlord, for entering into a certain Lease dated _May 28_, 2004 with CIRCUIT CITY STORES WEST COAST, INC., a California corporation, as Tenant, for certain premises in Thornton, Colorado, the undersigned's guaranty to Landlord, Landlord's heirs, executors, administrators, successors-in-interest and assigns, the full performance and observance of all of the covenants, conditions and agreements therein provided to be performed and observed (this Guaranty being both a guaranty of payment and performance and not only collectibility) by Tenant, Tenant's successors and assigns, and expressly agree that the validity of this agreement and the obligations of the Guaranty hereunder shall in no wise be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the within Lease, or by reason of the waiver by or the failure of Landlord to enforce any of the terms, covenants or conditions of said Lease, all of which may be given or done without notice to Guarantor. The undersigned waives notice of default in the payment of rent or additional rent or any other amount contained or reserved in said Lease or notice of the breach or non-performance of any of the covenants, conditions or agreements contained in said Lease. The undersigned further covenants and agrees that this Guaranty shall remain and continue in full force and effect as to renewal, extension, amendment or modification of the within Lease, provided that Guarantor's obligations under the Lease shall not be increased by any such renewal, extension, amendment or modification. The undersigned further agrees that its liability under this Guaranty shall be primary, and that in any right of action which shall accrue to the Landlord under the within Lease, the Tenant jointly or severally and may proceed against the undersigned without having commenced any action against or having obtained any judgment against the Tenant. Landlord shall not be required to make any demand on Tenant, apply any security deposit being held by Landlord on behalf of Tenant or any other credit in favor of Tenant, or

otherwise pursue or exhaust its remedies against Tenant before, simultaneously with, or after enforcing its rights and remedies hereunder against Guarantor.

If Tenant holds over beyond the term of the Lease, Guarantor's obligations hereunder shall extend and apply with respect to the full and faithful performance and observance of all of the covenants, terms and conditions of the Lease and of any such modification thereof.

No assignment or transfer of the within Lease shall operate to extinguish or diminish the liability of the undersigned.

The undersigned agrees that in the event the Tenant shall become insolvent or shall be adjudicated a bankrupt, or shall file a petition for reorganization, arrangement or similar relief under any present or future provision of the Bankruptcy Code, or if such petition filed by creditors of the Tenant shall be approved by a court, or if the Tenant shall seek a judicial readjustment of the rights of its creditors under any present or future Federal or State law, or if a receiver of all or part of its property and assets is appointed by any State or Federal Court, and in any such proceeding the aforesaid Lease shall be terminated or rejected, or the obligations of the Tenant thereunder shall be modified, the undersigned agrees that it will immediately pay to the Landlord or its successors or assigns (a) an amount equal to all fixed and additional rent accrued to the date of such termination, rejection or modification plus (b) an amount equal to the then cash value of the rent and additional rent which would have been payable under said Lease for the unexpired portion of the term thereby demised, less the then cash rental value of the leased premises for such unexpired portion of the term, together with interest on the amounts designated (a) and (b) above at a rate which is two per cent (2%) above the prime rate in effect at Wells Fargo Bank, Denver, Colorado, from the date of such termination, rejection or modification to the date of payment plus (c) any and all court costs and attorneys' fees provided for in the Lease.

Guarantor represents and warrants that this Guaranty has been duly authorized by all necessary corporate action on Guarantor's part, has been duly executed and delivered by a duly authorized officer, and constitutes Guarantor's valid and legally binding agreement in accordance with its terms.

Until all of Tenant's obligations under the Lease are fully performed, Guarantor: (i) waives any rights that Guarantor may have against Tenant by reason of any one or more payments or acts in compliance with the obligation of Guarantor under this Guaranty; and (ii) subordinate any liability or indebtedness of Tenant held by Guarantor to the obligations of Tenant to Landlord under the Lease.

Neither the undersigned's obligation to make payment in accordance with the terms of this agreement nor any remedy for the enforcement thereof shall be impaired, modified, changed, released or limited in any manner whatsoever by any Tenant or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the Bankruptcy Code or other statute, or from the decision of any court.

This Guaranty shall be governed by and construed in accordance with the laws of the State of Colorado applicable to agreements made and to be wholly performed within the State of Colorado. Guarantor hereby consents to the exclusive jurisdiction of the District Court, County of Adams, State of Colorado in any action relating to this Guaranty.

Guarantor agrees to pay all costs and expenses incurred by Landlord in enforcing this Guaranty, including without limitation, all legal fees and disbursements.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed by its duly authorized officer as of this 27th day of April, 2004.

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: Thomas C. Nolan
Title: Vice President

3