## EXHIBIT "F"

A. <u>Tenant exclusive uses</u>:

1. <u>Home Depot</u>: The branded business Circuit City may operate in the Shopping Center so long as Circuit City is not operating primarily as a home improvement center or other business which includes sales of lumber, sales of building materials and/or programs for in-store sales to building contractors.

2. <u>PETsMART</u>: No tenant or other occupant of any portion of the Shopping Center shall engage in the retail sale of (i) pets (including, but not limited to, fish, birds, reptiles, dogs, cats and other small animals); (ii) food, accessories and other products relating to pets and animals, including equestrian products and apparel related thereto; (iii) services related to pets and animals, such as grooming, boarding and veterinary services, except on a basis which is incidental to an otherwise permitted use. "Incidental" shall mean that the use occupies the lesser of (a) 1,000 square feet of Gross Floor Area, or (b) 5% of the sales area in the subject premises.

3. <u>Bed Bath & Beyond</u>: No other premises in the Shopping Center shall be used for the sale of linens and domestics, bathroom items, housewares, frames and wall art, window treatments and/or closet, shelving and storage items, except for incidental uses not to exceed the lesser of 5% or 2,000 square feet of any store space.

4. <u>Gunther Toody's</u>:   No other portion of the Shopping Center shall be used for a 50s-style-theme diner.

B. <u>Permitted Title Exceptions</u>:

1. The relinquishment of access rights to and from Highway I-25, aka State Highway No. 185, as conveyed by Deed recorded August 21, 1953 in Book 473 at Page 48, October 25, 1958 in Book 741 at Page 135, and March 26, 1973 in Book 1852 at Page 939.

2. Easement for utility lines, and other purposes, granted to Public Service Company of Colorado in instruments recorded August 22, 1955 in Book 565 at Page 122, and August 18, 1992 in Book 1815 at Page 347.

3. Easement for irrigation ditch, and other purposes, granted Farmers Reservoir and Irrigation Company, by instrument recorded January 15, 1988 in Book 3408 at Page 296.

4. The effect of annexation into the City of Thornton evidenced by mapping recorded August 4, 1992 in Reception No. B1082077, File 17, Map 79.

5. Easement for electrical transmission lines, and other purposes, granted to Public Service Company of Colorado in instrument recorded April 1, 1994 in Book 4288 at Page 899.

Notwithstanding anything contained in this Exhibit "F" to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to Tenant under the Lease, including but not limited to Tenant's exclusive use rights set forth in paragraph 18 of the Lease.

<u>EXHIBIT "G"</u>

<u>Prepared by and after recording return to</u>:
Kennerly, Lamishaw & Rossi LLP
Suite 1010
515 South Flower Street
Los Angeles, CA 90071
Attention: Matthew I. Lamishaw, Esq.

## **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**

(Mortgage)

This **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**, dated the _____ day of _____, 200_, between _____, a _____ ("Mortgagee"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Tenant"), having an address of Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233.

WITNESSETH:

(a) Tenant has entered into a certain lease (the "Lease") dated _____, _____ with JP THORNTON LLC, a Colorado limited liability company, ("Landlord"), covering premises located within that certain property known as Larkridge Shopping Center, located in the City of Thornton, Adams County, Colorado, and more particularly described in <u>Schedule A</u> hereto; and

(b) Mortgagee has made a loan to Landlord as evidenced and secured by a Deed of Trust recorded _____, 200_ in the land records of Adams County, Colorado, in Book _____ at page _____ (the "Mortgage"), encumbering the property described in <u>Schedule A</u>; and the parties hereto desire to set forth their agreement with regard to the priority of the Mortgage and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1. The Lease is and shall be subject and subordinate to the lien of the Mortgage insofar as it affects the real property of which the premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2. Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3. In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4. Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5. In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

    (a) liable for any act or omission of any prior lessor (including Landlord); or

    (b) liable for the return of any security deposits unless delivered to Mortgagee; or

    (c)    bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

    (d)    bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6. Notwithstanding the foregoing, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

7. Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Mortgagee acquires title to the Shopping Center by foreclosure or otherwise, Mortgagee shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

8. Mortgagee, Landlord and Tenant, respectively, represent and warrant to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee, Landlord and Tenant have been duly authorized and empowered to execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant shall inure to the benefit of the parties hereto, and their successors and assigns and shall inure to the benefit of Mortgagee.

9. Tenant hereby agrees that, upon the occurrence of an Event of Default (as defined in the Lease), Mortgagee shall have the same time period for cure of such default as is given Landlord in accordance with the terms of the Lease, following notice given by Tenant to Mortgagee at the following address, in the same method for notice as is required under the Lease:

_____
_____
_____

10. All notices between the parties hereto shall be in writing and comply with the terms of paragraph 34 of the Lease.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

CIRCUIT CITY STORES WEST COAST, INC., a California corporation

Witnesses:

_____   By:_____
Printed Name:_____   Thomas C. Nolan,
Vice President

MORTGAGEE NAME

Witnesses:

_____   By:_____
Printed Name:_____   Name:_____
Title:_____

**[Note: Attach appropriate notary block for the State]**

COMMONWEALTH OF VIRGINIA    )
                                                          ) ss.
COUNTY OF HENRICO    )

       I certify that on _____, 200__, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas C. Nolan, Vice President of CIRCUIT CITY STORES WEST COAST, INC., a California corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and on oath acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which he acted executed the instrument.

       WITNESS my hand and official seal.

                                                       Notary Public in and for the Commonwealth
                                                       of Virginia, residing at _____
                                                       My commission expires:_____

                                                       [Type or Print Notary Name]

<u>EXHIBIT "G"</u>

<u>Prepared by and after recording return to:</u>
Kennerly, Lamishaw & Rossi LLP
Suite 1010
515 South Flower Street
Los Angeles, CA 90071
Attention: Matthew I. Lamishaw, Esq.

## **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**

(Ground Lease)

This **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**, dated the \_\_\_\_\_ day of _____, 200\_, between _____, a _____ ("Ground Lessor"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Tenant"), having an address of Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233.

WITNESSETH:

(a) Tenant has entered into a certain lease (the "Lease") dated _____, _____ with JP THORNTON LLC, a Colorado limited liability company, ("Landlord"), covering premises located within that certain property known as Larkridge Shopping Center, located in the City of Thornton, Adams County, Colorado, and more particularly described in Schedule A hereto; and

(b) Ground Lessor has entered into a Lease with Landlord as evidenced and recorded _____, 200\_ in the land records of Adams County, Colorado, in Book \_\_\_\_\_ at page \_\_\_\_\_ (the "Ground Lease"), covering the property described in Schedule A; and the parties hereto desire to set forth their agreement with regard to the priority of the Ground Lease and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1. The Lease is a sublease and shall be subordinate to the Ground Lease insofar as it affects the real property of which the premises form a part thereof.

2. Tenant agrees that it will attorn to Ground Lessor and any successor to the Ground Lessor by deed or otherwise as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease, in the event of a termination of the Ground Lease.

3. In the event that it should become necessary to terminate the Ground Lease, Ground Lessor thereunder will not terminate the Lease nor join Tenant in summary proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4. Ground Lessor consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Ground Lease has been terminated.

5. In the event that Ground Lessor shall succeed to the interest of Landlord under the Lease, Ground Lessor shall not be:

    (a) liable for any act or omission of any prior lessor (including Landlord); or

    (b) liable for the return of any security deposits unless delivered to Ground Lessor; or

    (c) bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

2

(d) bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6. Notwithstanding the foregoing, Ground Lessor acknowledges and agrees that if Ground Lessor shall succeed to the interest of Landlord under this Lease, Ground Lessor shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

7. Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Ground Lessor terminates the Lease, Ground Lessor shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

8. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.

9. Tenant hereby agrees that, upon the occurrence of an Event of Default (as defined in the Lease), Ground Lessor shall have the same time period for cure of such default as is given Landlord in accordance with the terms of the Lease, following notice given by Tenant to Ground Lessor at the following address, in the same method for notice as is required under the Lease:

_____

_____

_____

10. All notices between the parties hereto shall be in writing and comply with the terms of paragraph 34 of the Lease.