

# United States Bankruptcy Court
### Eastern District of Virginia

In re Circuit City Stores, Inc.        Case No. 08-35653 (KRH)

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. §1111 (a). Transferee hereby gives evidence and notice pursuant to Rule 3001 (e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim references in this evidence and notice.

| | |
|---|---|
| The National Union Fire Insurance Company of Pittsburgh, PA | Onkyo USA Corp |
| Name of Transferee | Name of Transferor |
| Name and Address where notices to transferee should be sent: | Court Claim # (if known): 958<br>Amount of Claim: $977,716.50<br><br>Date Claim Filed: December 19, 2008 |
| National Union Fire Insurance<br>Company of Pittsburgh, PA<br>c/o SILVERMANACAMPORA, LLP<br>100 Jericho Quadrangle, Suite 300<br>Jericho, New York 11753<br>Attn: Adam L. Rosen, Esq. | |
| Phone: (516)-479-6300<br>Last Four Digits of Acct #:_____ | Phone:<br>Last Four Digits of Acct #:_____ |
| Name and Address where transferee payments should be sent (if different from above): | |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____        Date: April 12, 2010
Adam L. Rosen
SILVERMANACAMPORA LLP
Attorneys for National Union Fire Insurance
Company of Pittsburgh, PA

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# United States Bankruptcy Court
## Eastern District of Virginia

In re Circuit City Stores, Inc.     Case No. 08-35653 (KRH)

### NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

Claim No. 958 if known) was filed under U.S.C. §1111(a) in this case by the alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim Other than for Security in the clerk's office of this court on _____ (date).

Onkyo USA Corp.

Name of Alleged Transferor

National Union Fire Insurance
Company of Pittsburgh, PA
Name of Transferee

Address of Alleged Transferor:

Onkyo USA Corp
18 Park Way
Upper Saddle River, NJ 07458
Attn: Matthew Attanasio

Address of Transferee:

National Union Fire Insurance
Company of Pittsburgh, PA
c/o SILVERMANACAMPORA, LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn: Adam L. Rosen

---

~~DEADLINE TO OBJECT TO TRANSFER~~

The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.

Date: _____

_____
**CLERK OF THE COURT**

**Release and Assignment Agreement**
**Insured: Onkyo USA Corporation**
**Policy No. 147-7862**
**Claim No. 344-001709**

WHEREAS, the National Union Fire Insurance Company of Pittsburgh, PA (the "Company") issued a Domestic and Export Credit Risk Insurance Policy- Form No. 147-7862 effective April 1st, 2008 to April 1st, 2009 (the "Policy"), to Onkyo USA Corporation (the "Insured");

AND WHEREAS, the Insured did submit Claims under the Policy relating to certain of the Insured's transactions with Circuit City Stores, Inc. (hereafter the "Claims" and the "Buyer");

AND WHEREAS, the Loss is defined in the Policy as the invoice values unpaid by the Buyer and established as valid and legally sustainable obligations of the Buyer due to the Insured;

AND WHEREAS, the Qualifying Loss claimed by the Insured totals $6,478,350.53;

AND WHEREAS, the Administrative portion of the Claims totals $4,905,048.57 (the "Administrative Claim");

AND WHEREAS, the Policy contains an Insured Percentage of Ninety (90%) with respect to this Buyer, such amount to be borne by the Company;

AND WHEREAS, the Policy contains a Deductible of $100,000;

AND WHEREAS, the Policy contains a Buyer Limit of $2,500,000;

AND WHEREAS, the Insured purchased a Put Contract (the "Put") with Credit Suisse First Boston in the amount of $5.5 million to provide coverage for part of the Claims that are the subject of this agreement,

AND WHEREAS, the credit insurance provided under the Policy shall apply in excess of any proceeds that the Insured may recover from the Put;

AND WHEREAS, the Insured has yet to recover the proceeds from the exercise of the Put;

AND WHEREAS, the Insured has filed administrative and general unsecured claims in the Chapter 11 proceedings pending in the United States Bankruptcy Court for the Eastern District of Virginia, the Buyer has scheduled such claims as disputed in its schedules filed with such court, and the Insured has met with and corresponded with the Buyer to compromise and resolve any differences in the amount of the claim, as filed and the books and records of the Buyer so that the net amount due from the Buyer as so compromised and resolved is $6,478,350.53 rather than the amount set forth in the claims as filed;

AND WHEREAS, the Company has agreed to pay its excess share of the Loss in advance of the recovery of the Put proceeds;

NYC 324425.1

AND WHEREAS, the Insured reserves the right to amend its claim under the Policy at a later date if there is no recovery or a limited recovery on the Put for the full amount of the Buyer Limit;

AND WHEREAS, the Buyer has asserted in an email from its counsel that there may be preference claims against the Insured for approximately $2,600,000, as sums paid to the Insured within 90 days prior to the filing of the petition for relief under Chapter 11 of the Bankruptcy Code which the Company and the Insured acknowledge would be covered under the Policy when made ("Preference Claims");

NOW THEREFORE, the Company agrees to make an Advance Claim Payment of US $790,515.45 for the Claims made to date under the Policy, calculated as follows (hereafter the "Claim Payment"):

| | |
|---|---|
| Circuit City | $6,478,350.53 |
| Qualifying claim | |
| Put | $5,500,000 |
| Adjusted Claim | $978,350.50 |
| Deductible | $100,000 |
| **Total Eligible** | **$878,350.50** |
| Insured percentage | 90% |
| **Claim Payment** | **$790,515.45** |

NOW THEREFORE, in consideration of the Claim Payment to the Insured by the Company:

1) The Insured on behalf of itself and any of its parent or affiliated or subsidiary entities, agents, employees, owners, managers, representatives, predecessors, divisions, beneficiaries, insurers and attorneys hereby fully releases the Company, the Company's parent or affiliated or subsidiary entities, agents, employees, owners, managers, representatives, partners, joint venturers, members, directors, officers, shareholders, assignors, assignees, predecessors, successors, divisions, beneficiaries and reinsurers from any and all debts, claims, demands, damages, liabilities, obligations, and/or losses, actions and causes of action of whatsoever character and description whether known or unknown, direct or indirect, fixed or contingent, asserted or unasserted which the Insured ever had, now has or hereafter can, shall or may have, for, upon, or by reason of a loss arising out of the Claims made to date under the Policy, with the exception of the failure to collect upon the entire amount of the Put as described herein or the possible Preference Claims, if and when made by the Buyer or its estate or creditors;

2) The Insured does hereby assign, transfer and set over to the Company, their successor and assigns, all sums of money now due, or to become due from the Buyer identified herein on the claims identified to the Adjusted Claim in accordance with the schedule prepared by the Insured and attached hereto as Exhibit A, and any and all contracts, security and evidences of indebtedness relating thereto, to have and to hold the same, with full power to collect and enforce the same, for their own use and benefit by any action or proceeding in the name of the Insured or otherwise, and to take all legal steps as they deem proper or necessary in connection herewith, and will share recoveries as provided for in the terms and conditions of the Policy. The balance of the Insured's claims against the Buyer shall remain the property of the Insured and may be assigned to Credit Suisse or otherwise enforced or collected upon.

NYC 324425.1

Specifically, the Insured shall assign a portion of its Administrative Claims in the amount of the difference between the Loss and the Put (Adjusted Claim amount of $978,350.50) as set forth on Exhibit A to the Company. In addition, the Insured shall reserve an amount for the benefit of the Company of its Administrative Claims up to $1,521,000 (the Buyer Limit less the Claim Payment) in to the extent that the Put is not exercised and an additional Claim against the Policy is introduced. To the extent that the Put is exercised and no additional Claim is made under the Policy, the Insured shall not be required to reserve any such additional portion of the Administrative Claim for the benefit of the Company.

3) If any amount claimed and assigned as reflected on Exhibit A is not accepted by reason of a claim of a dispute or offset by a Buyer or its successor in bankruptcy (the "Unaccepted Amount"), upon written request of the Company, the Insured agrees to refund that part of the Claim Payment effected by the Unaccepted Amount within sixty (60) days of receipt of said written request by the Company.

Furthermore, the Insured agrees that if the final amount allowed by the Bankruptcy Court is lower than the Qualifying Loss then a revised calculation of the amount of Claim Payment may be made by the Company which may result in an additional Claim Payment or a refund of all or part of the Advance Claim Payment by the Insured to the Company. If an objection to the Insured Claim is made by the Buyer or its successors with respect to the portion of the claim assigned to the Company, and no Qualifying Loss is finally allowed by April 30, 2012, the Company may, at is discretion, in good faith, request and receive a pro rata refund of the Advance Claim Payment up to the amount of the disputed portion of the Advance Claim Payment within sixty (60) days of receipt of said written request by the Company.

4) All sums received from the Buyer or any other party as or toward payment of the portion of Buyer's indebtedness to the Insured reflected on Exhibit A, and all sums received from any other party to acquire the rights to the Buyer's indebtedness as reflected on Exhibit A, shall immediately be paid to the Company and shared at the Insured Percentage until the amount of the Company's Claim Payment and the Company's costs of recovery are fully reimbursed, all further sums to inure to the benefit of the Insured;

5) The Insured hereby agrees to provide all reasonable cooperation to the Company (at Company's expense) with respect to any attempt the Company may make to sell, collect and/or enforce the Buyer's indebtedness. The Insured shall do everything that may be reasonably necessary to allow the Company to sell, collect and/or enforce the Buyer's indebtedness, including, but not limited to, executing all papers furnished by the Company, the Buyer, or a third party which are required or necessary to enable the Company to effectively bring suit in the name of the Insured or sell the indebtedness, provided, however, the Company shall take no action that would adversely affect the ability of the Insured to collect upon the Put. By executing this release and assignment, the Insured hereby authorizes the Company to execute all documents that may be necessary to pursue said Buyer indebtedness or to assign, sell, or transfer the indebtedness;

6) The Insured hereby agrees to forward to the Company copies of the notice from the Buyer, the Buyer's Receiver(s), Trustee(s), the Court, or other duly constituted authority, of the acknowledgment of a Loss within Thirty (30) business days of receipt; regardless of whether or

NYC 324425.1

not these amounts are different from the amounts of accounts receivable that the Insured believes are owed or has filed as the Claims;

7) The Insured represents and warrants that as of the date that the Buyer filed for bankruptcy, no further accounts receivable in connection with the Buyer are included in or covered by the Policy other than as discussed in the Whereas paragraphs above;

8) The Insured hereby represents that it has not assigned, sold, or transferred in any way whatsoever any of its rights, privileges and claims with respect to the debts identified on Exhibit A;

9) The Insured hereby represents and warrants that it has good and valid legal title to the rights, privileges and claims which are the subject of this release and assignment, and that the claims of the Insured against the Buyer are not subject to offset or counter claim other than as set forth in the Whereas paragraphs above, and to the Preference Claims identified above, the Insured represents that to the best of its knowledge, after due investigation, it believes that it has credible defenses to the Preference Claim;

10) The Insured represents and warrants that as set forth in the Whereas clauses above, there has not been and that there is not outstanding and unsettled, any dispute or any issue raised by the Buyer regarding claims of the Insured against the Buyer;

11) The Insured certifies that it has not granted or paid, agreed to grant or pay or caused to be granted or paid to the Buyer or to any other person or entity any discount, allowance, rebate, commission, fee or other payment in connection with the Claims of the Insured against the Buyer up to the Buyer Limit except as set forth in the Whereas clauses above and Exhibit A;

This Release may not be changed orally.

IN WITNESS THEREOF, the Insured has caused this instrument to be signed and sealed this _31st_ Day of _April_, 2009.

Onkyo USA Corporation

By: _____
Authorized Representative

Title: _Credit Manager_

STATE OF _New Jersey_, COUNTY OF _Bergen_:

On _April 21st_, 2009, before me _MATTHEW ATHANASIO_

_____
Notarization  State of New Jersey
Attorney At Law

NYC 324425.1

## Schedule A

Circuit City Invoices Assigned to AIG

| Invoice # | Order # | Invoice Date | Due Date | Original $ | Balance $ |
|---|---|---|---|---|---|
| 1114832 | 2170020 | 10/21/2008 | 11/15/2008 | 16,575.00 | 16,575.00 |
| 1114958 | 2170025 | 10/22/2008 | 11/16/2008 | 123,296.00 | 123,296.00 |
| 1114848 | 2170026 | 10/22/2008 | 11/16/2008 | 95,958.00 | 95,958.00 |
| 1114879 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114880 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114881 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114882 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114883 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114898 | 2170019 | 10/22/2008 | 11/16/2008 | 73,680.00 | 73,680.00 |
| 1114959 | 2170018 | 10/22/2008 | 11/16/2008 | 45,743.00 | 45,743.00 |
| 1114951 | 2170018 | 10/22/2008 | 11/16/2008 | 31,025.00 | 31,025.00 |
| 1114956 | 2170019 | 10/22/2008 | 11/16/2008 | 27,937.00 | 27,937.00 |
| 1114850 | 2170020 | 10/22/2008 | 11/16/2008 | 25,375.00 | 25,375.00 |
| 1114960 | 2170024 | 10/22/2008 | 11/16/2008 | 23,156.00 | 23,156.00 |
| 1114849 | 2172121 | 10/22/2008 | 11/16/2008 | 15,080.00 | 15,080.00 |
| 1114955 | 2172120 | 10/22/2008 | 11/16/2008 | 13,050.00 | 13,050.00 |
| 1114954 | 2170018 | 10/22/2008 | 11/16/2008 | 5,278.00 | 5,278.00 |
| 1114851 | 2171716 | 10/22/2008 | 11/16/2008 | 4,350.00 | 4,350.00 |
| 1114957 | 2171716 | 10/22/2008 | 11/16/2008 | 3,675.00 | 3,675.00 |
| 1114950 | 2170019 | 10/22/2008 | 11/16/2008 | 2,975.00 | 2,975.00 |
| 1114847 | 2159560 | 10/22/2008 | 11/16/2008 | 1,919.50 | 1,919.50 |
| 1115183 | 2170023 | 10/24/2008 | 11/18/2008 | 82,786.00 | 82,786.00 |
| 1115177 | 2170017 | 10/24/2008 | 11/18/2008 | 17,458.00 | 17,458.00 |
| | | | | | 977,716.50 |

INSK

# SILVERMANACAMPORA LLP

BERLINDA PIERRE-LOUIS
PARALEGAL

DIRECT DIAL: 516.479.6305
DIRECT FAX: 516.945.6305
BPLOUIS@SILVERMANACAMPORA.COM

April 12, 2010

**Via Federal Express**
Clerk of the Court
United States Bankruptcy Court
Richmond Division
Eastern District of Virginia
701 E. Broad Street, Ste. 4000
Richmond, VA 23219

      Re:    **Circuit City Stores, Inc.**
                  **Chapter 11**
                  **Case No. 08-35653(KRH)**
                  **Our File No. 55476**

Dear Sir/Madam:

      We represent the National Union Fire Insurance Company of Pittsburgh, PA. Enclosed please find:

1. An original and one copy of a Transfer of Claim Other Than For Security in connection with the above referenced matter.

2. An original and one copy of a Notice of Withdrawal of Transfer of Claim Other Than For Security of Claim Nos. 128 and 2295.

      Kindly file the originals and return the time-stamped copies in the enclosed, postage paid addressed envelope.

      Thank you for your attention to this matter.

Very truly yours,

Berlinda Pierre-Louis

Enclosures

cc: Adam L. Rosen, Esq. (w/o encls.)
    Anthony C. Acampora, Esq. (w/o encls.)
    Kurzman Carson Consultants, LLC (w/ encls.)

BP/D303802v/F055476