UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


IN RE:                        . Case No.  08-35653 (KRH)
                              .
CIRCUIT CITY STORES, INC., .
et al.,                       .
                              . 701 East Broad Street
                              . Richmond, VA  23219
                              .
                              .
          Debtors.           . April 15, 2010
. . . . . . . . . . . . ..    2:08 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          McGuireWoods, LLP
                          By:  DOUGLAS M. FOLEY, ESQ.
                          One James Center
                          901 N. Cary Street
                          Richmond, VA  23219

                          Skadden Arps Slate Meagher & Flom LLP
                          By:  IAN S. FREDERICKS, ESQ.
                               GREGG M. GALARDI, ESQ.
                          One Rodney Square
                          Wilmington, DE  19899

                          Circuit City
                          By:  DEBRA MILLER, ESQ.


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (CONT'D):

| | |
|---|---|
| For Safeco Insurance<br>Company of America: | Gregory Kaplan, PLC<br>By:  LESLIE A. SKIBA, ESQ.<br>7 East Second Street<br>P.O. Box 2470<br>Richmond, VA  23224 |
| For Jacob Joffe: | By:  JACOB JOFFE, Pro Se Claimant |
| For the U.S. Trustee: | Office of the U.S. Trustee<br>By:  ROBERT VAN ARSDALE, ESQ.<br>U.S. Courthouse<br>701 East Broad Street, Suite 4304<br>Richmond, VA  23219 |
| For the Official<br>Committee of Unsecured<br>Creditors: | Tavenner & Beran PLC<br>By:  LYNN TAVENNER, ESQ.<br>20 North Eighth Street<br>Second Floor<br>Richmond, VA  23219 |
| For CC Investors: | Christian & Barton, LLP<br>By:  A.C. EPPS, JR., ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For CC Investors: | Rivkin Radler LLP<br>By:  MATTHEW V. SPERO, ESQ.<br>926 RXR Plaza<br>Uniondale, NY  11556<br>(Telephonic Appearance) |
| For Robert Gentry,<br>Jack Hernandez,<br>Jonathan Card and<br>Joseph Skaf: | Righetti Law Firm, P.C.<br>By:  MICHAEL RIGHETTI, ESQ.<br>456 Montgomery Street, Suite 1400<br>San Francisco, CA  94104<br>(Telephonic appearance) |
| For Robert Gentry,<br>Jack Hernandez,<br>Jonathan Card and<br>Joseph Skaf: | Fullerton & Knowles, P.C.<br>By:  RICHARD I. HUTSON, ESQ.<br>12642 Chapel Road<br>Clifton, VA  20124 |

**J&J COURT TRANSCRIBERS, INC.**

3

APPEARANCES (CONT'D):

For Creative Labs:          DLA Piper LLP
                            By:  JAMIE M. KONN, ESQ.
                            500 Eighth Street N.W.
                            Washington, D.C.  20004
                            (Telephonic appearance)

For Creative Labs:          DLA Piper LLP
                            By:  JODIE BUCHMAN, ESQ.
                            6225 Smith Avenue
                            Baltimore, MD  21209
                            Mt. Washington,
                            (Telephonic appearance)

For the Official            Pachulski, Stang, Ziehl & Jones
Committee of Unsecured      By:  JEFFREY N. POMERANTZ, ESQ.
Creditors:                  10100 Santa Monica Boulevard
                            11th Floor
                            Los Angeles, CA  90067
                            (Telephonic appearance)

For the Committee:          Whiteford Taylor Preston LLP
                            By:  CHRISTOPHER A. JONES, ESQ.
                            3190 Fairview Park Drive
                            Suite 300
                            Falls Church, VA  22042

**J&J COURT TRANSCRIBERS, INC.**

1             COURTROOM DEPUTY:  All rise.  The United States

2    Bankruptcy Court for the Eastern District of Virginia is now in

3    session, the Honorable Kevin R. Huennekens presiding.  Please

4    be seated and come to order.

5             THE CLERK:  In the matter of Circuit City Stores,

6    Incorporated, Items 1 through 50 as set out on debtors' agenda.

7             MR. FOLEY:  Good afternoon, Your Honor.  Doug Foley

8    with McGuireWoods on behalf of the debtors.

9             THE COURT:  Good afternoon.

10            MR. FOLEY:  With me at counsel table is Gregg Galardi

11   and Ian Fredericks from Skadden Arps.  From Circuit City today

12   here, Your Honor, is Katie Bradshaw, who is the vice

13   president/controller, as well as Debra Miller, who is the

14   acting general counsel.

15            THE COURT:  All right.

16            MR. FOLEY:  Your Honor, the agenda has 50 items on

17   it, but most of them have been resolved, or we're going to ask

18   that they be adjourned.  Just to take them in order, Your

19   Honor, the only one that we believe is going to go forward

20   today is Matter 39, which is the Rule 7023 motion filed by

21   Gentry, Card, Hernandez and Skaf.  We believe we may have a

22   resolution of Item Number 38, the Weidler class matter summary

23   judgment that Mr. Galardi will address with the Court.

24            Item Number 1, Your Honor, is the Sony motion for an

25   administrative claim.  We have -- we're pleased to report to

**J&J COURT TRANSCRIBERS, INC.**

1  the Court that we've resolved that matter at a stipulation

2  filed at Docket Number 7059.  The deadline for objections

3  expired yesterday, so that stipulation if final and can be

4  removed from the docket.

5           THE COURT:  All right.

6           MR. FOLEY:  Your Honor, Items Number 2 and 3, this is

7  the Motorola and General Instruments 503(b)(9) claim and

8  motions, we've been continuing to discuss with them as we get

9  closer to confirmation.  They've requested and we've agreed to

10  adjourn their motions until the May 20th hearing date at ten.

11           THE COURT:  All right.  That will be adjourned.

12           MR. FOLEY:  Item Number 4, Your Honor, this is the

13  motion by Town Square for a late claim.  We are in negotiations

14  with them.  We've exchanged offers back and forth to try to

15  resolve this to avoid litigating the excusable neglect issue.

16  We're waiting for a response back and some additional

17  information.  Mr. Miller is local counsel, I believe, for Town

18  Square, and he's out of town this week, so we've agreed to

19  adjourn this motion until the May 20th hearing date at ten.

20           THE COURT:  All right.

21           MR. FOLEY:  Your Honor, Item Number 5, this is the

22  Schimenti motion for a 2004 exam.  This one has some moving

23  parts to it.  There's a motion pending for a protective order

24  with respect to the location of a deposition that we've

25  noticed.  There is a motion for a protective order by Schimenti

1  for request to limit the scope of a Rule 30(b)(6) notice of

2  deposition that we have submitted.  This ultimately relates to

3  a 503(b)(9) claim which involves the goods versus services

4  issue, and we had that originally scheduled to go forward on

5  the merits on April 29th, but because of the potential

6  discovery disputes we've agreed with Schimenti that they can

7  file any objections to our outstanding written discovery until

8  April 19th, at which time they will file any objections they

9  have.  They will also respond, to the extent they're going to

10  respond.  And if there's any unresolved discovery disputes with

11  respect to those filings on April 19th we will have those heard

12  on April 29th, along with their motion for a protective order.

13  And we, subject to the Court's rulings on the discovery issues

14  on April 29th, we will ask the Court to go forward on the

15  merits on May 11th as to their claim as to whether or not it's

16  goods or services.  But that one is still in progress, Your

17  Honor, so we'll make sure that the next agenda notes everything

18  appropriately.

19          THE COURT:  All right.  Very good.

20          MR. FOLEY:  Item Number 6, Your Honor, this is the

21  motion by Slam Brands.  We have actually resolved that matter,

22  and counsel is here, but let me make sure I'm referring to the

23  right one -- the agenda provides that it's being adjourned to

24  the May 20th hearing date at ten, but if I could have one

25  minute to speak to counsel?

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  Yes.

2                     (Pause)

3           MR. FOLEY:  Your Honor, I apologize.  I was confused.

4  The Slam Brands matter is not resolved yet.  We are going to

5  adjourn that matter until the May 20th hearing date at ten.

6           THE COURT:  All right.  False hope, huh?

7           MR. FOLEY:  Yes.  Well, we have another that we're

8  going to resolve -- just confused which one was resolved.

9  Sorry, Your Honor.

10           Item Number 7, this is the Site A motion.  This is

11  their second amended motion for a late claim in which they're

12  also, this time, asserting an informal proof of claim.  They

13  have sent us some information to evaluate their argument, and

14  we're contemplating that and reviewing that with the company.

15  They have requested and we've agreed to adjourn their matter

16  until the May 20th hearing date at ten.

17           THE COURT:  All right.

18           MR. FOLEY:  Your Honor, Item Number 8, this is the

19  matter that I was referring to earlier.  This is our motion to

20  terminate certain surety bonds of Safeco.  We have submitted a

21  consent form of order for the Court's consideration.

22           THE COURT:  I believe I entered that.

23           MR. FOLEY:  I believe I saw it entered either today

24  or yesterday.  And counsel for the United States is here, Rob

25  McIntosh, who signed the order, and counsel is also here, as

1  well.

2           MS. SKIBA:  Good afternoon, Your Honor.  Leslie Skiba

3  on behalf of Safeco.  We would ask for entry of the order --

4  you're already entered it.  We're fine.  Thanks.

5           THE COURT:  All right.  Good.

6           MR. FOLEY:  Your Honor, Items Number 9 through 37 are

7  various claim objections and status of the same.  Some of

8  these, otherwise noted on the agenda, obviously are going

9  forward in part today.  Some of them are not.  But to go

10 through Exhibit A, Your Honor, to the agenda, is probably the

11 easiest way to advise the Court as to where we are.

12          THE COURT:  All right.

13          MR. FOLEY:  Item Number 9 on the agenda is the fifth

14 omnibus objection to claims, and with respect to Exhibit A,

15 Retail MDS, Inc., that one will be going forward on the merits

16 on April 29th, at the April 29th hearing, and we will file an

17 appropriate notice with respect to that as noted in Exhibit A.

18          Item Number 2 there, which is Graphic Communications,

19 Inc., we're going to setting out a notice that sets this for

20 final hearing on the merits on the June 8th omnibus hearing

21 date.  We're going to try to submit a factual stipulation and

22 supplement our objection and fully brief the matter so that the

23 Court should be able to make a clean legal ruling with respect

24 to Graphic Communications.

25          With respect to the balance of the matters under

**J&J COURT TRANSCRIBERS, INC.**

1 omnibus objection number five, those are all being adjourned to

2 the April 29th date at two for status, Your Honor.

3          THE COURT:   All right.  Very good.

4          MR. FOLEY:  Your Honor, Item Number 11 on the agenda

5 is the sixth omnibus objection to claim, and that is being

6 adjourned for status until May 20th at ten.

7          THE COURT:  All right.

8          MR. FOLEY:  Item Number 12 on the agenda is the

9 seventh omnibus objection to claims.  Those are being adjourned

10 until the May 20th hearing date at ten.  Item Number 13 on the

11 agenda is omnibus objection number 8.  Those matters are being

12 adjourned for status until May 20th at ten.  Item Number 14 on

13 the agenda is omnibus objection number nine.  Those objections

14 are being adjourned until the May 20th hearing date at ten.

15          THE COURT:  All right.

16          MR. FOLEY:  Item Number 15 on the agenda is the

17 nineteenth omnibus objection to claims, and except for

18 Arboretum of South Bennington and Inland U.S. Management, LLC,

19 which are being adjourned until the April 29th hearing date at

20 two, the balance of the claims that are unresolved in that

21 omnibus objection are being adjourned until May 20th at ten.

22          Item Number 16 on the agenda, Your Honor, is omnibus

23 objection number twenty.  These matters are all being adjourned

24 for status until the April 29th hearing date at two.

25          Item Number 17, which --

1          THE COURT:  In your notes you've got the Alliance

2  Entertainment One as being adjourned to May 20.  Is that a

3  typo?

4          MR. FOLEY:  No.  I apologize, Your Honor.  That's

5  actually correct because we're working on a stipulation with

6  Alliance and reconciling some additional information that they

7  recently provided us.  We hope that we're actually going to get

8  that one resolved by the May 20th hearing date.

9          THE COURT:  All right.  Very good.

10         MR. FOLEY:  Mr. Englander (phonetic) represents

11  Alliance.  They're in their own bankruptcy case in Delaware,

12  and there's some dueling bankruptcy issues that we have to deal

13  with.  But the balance of those are being adjourned until the

14  April 29th hearing date at two.

15         Item Number 17 on the agenda, this matter is being --

16  this claim is being adjourned until May 20th at ten.

17         Item Number 18 on the agenda, this is the twenty-

18  third omnibus objection to claims.  This one we've scheduled a

19  notice to go forward on the merits for Vonage Marketing at the

20  April 29th hearing at two, and we'll file an appropriate notice

21  regarding same with respect to them.

22         THE COURT:  All right.

23         MR. FOLEY:  The balance of the claims under omnibus

24  objection number twenty-three are being adjourned until May

25  20th at ten.

1            Item Number 19, Your Honor, on the agenda is the

2    twenty-fourth omnibus objection which has one claim remaining,

3    Enrico County, which was tied up with another omnibus

4    objection.  That is being adjourned until the May 20th hearing

5    date at ten.

6            Item Number 20 on the docket, Your Honor, is the

7    twenty-seventh omnibus objection to claims.  This one there's a

8    typo in the agenda versus -- or, the Exhibit A versus the

9    agenda.  These claims are being adjourned until the May 20th

10   hearing date at ten.  As the agenda says the typo in the

11   Exhibit A is that they're going forward today -- on today's

12   hearing.  The issue here is the basis for our objection to

13   these claims has changed somewhat since we've gotten some

14   additional information from these taxing authorities, and in

15   likelihood we will either resolve these claims consensually by

16   the May 20th hearing date or we'll actually withdraw the

17   pending objection and file a new one on the new grounds if we

18   can't resolve it.

19           Item Number 21 on the agenda, Your Honor, is omnibus

20   objection number thirty.  All of those matters are being

21   adjourned until the -- with the exception of Cervanyk, which

22   has been resolved, are being adjourned, Nicole Cervanyk, are

23   all being adjourned until May 20th at ten.

24           Item Number 22, Your Honor, on the agenda is the

25   thirty-first omnibus objection to claims.  With the exception

**J&J COURT TRANSCRIBERS, INC.**

1  of Jonathan Card, which as Your Honor is aware is part of the

2  7023 motion that's going forward today, all of the balance of

3  those claims are being adjourned for status until May 20th at

4  ten.  Also, Joseph Skaf, which is on the next page, Page 7,

5  Your Honor, that one obviously is involved in the motion that's

6  going forward today.

7        Item Number 23 on the agenda, Your Honor, is omnibus

8  objection number thirty-three.  These are all being adjourned

9  to the May 20th hearing date at ten.  We're hopeful to try to

10 resolve the Bell'O International Corp. matter definitely prior

11 to that time.

12       Item Number 24 on the agenda, Your Honor, is omnibus

13 objection number thirty-four, and all of those matters are

14 being adjourned -- Audiovox is being adjourned until April 29th

15 at two.  The balance are being adjourned until May 20th at ten.

16       Item Number 25, Your Honor, is the thirty-sixth

17 omnibus objection to claims.  All of these matters are being

18 adjourned for status until the May 20th hearing date at ten.

19       Item Number 26, Your Honor, this is one that has a

20 lot of unresolved claims, and I'll explain to the Court why.

21 This is our omnibus objection number thirty-seven to various

22 post-petition taxing authority claims.  We are in the process

23 of finalizing a summary judgment brief that should resolve some

24 preliminary issues with respect to whether or not the Court

25 should abstain from hearing the objection and what authority

13

1  the Court has under some new provisions of the Code that were

2  inserted as part of BAPCPA.  And so, we're hopeful we're going

3  to get that on file in the next week or so, but until we really

4  have those threshold issues determined we really can't resolve

5  the balance of the claims that are under objection under

6  omnibus thirty-seven, so that's why they're not showing that

7  many have been resolved so far, Your Honor.

8           THE COURT:  All right.

9           MR. FOLEY:  Item Number 27 on the agenda is one claim

10 remaining, which is Microsoft Corporation.  This is in the

11 omnibus objection number forty-one.  That's being adjourned for

12 status until the May 20th hearing date at ten, but we are

13 working with Microsoft to try to resolve that claim.

14          Item Number 28 on the agenda, Your Honor, is omnibus

15 objection number forty-three.  Both of those claims are being

16 adjourned until May 20th at ten for status.

17          Item Number 29 on the agenda, Your Honor, this

18 relates to the motion that was pending, as well.  That's being

19 adjourned to the similar date.  This is omnibus objection

20 number forty-four, General Instruments.  It's being adjourned

21 until May 20th at ten.

22          Item Number 30 on the agenda, Your Honor, is omnibus

23 objection number forty-eight.  All of those items are being

24 adjourned except for Averatec/Trigem USA until the May 20th

25 hearing date at ten.  Averatec is being adjourned until April

1  29th at ten.

2          Item Number 31 on the agenda is omnibus objection

3  number forty-nine.  Those three matters -- those three claims

4  are being adjourned for status until May 20th at ten.

5          Item Number 32 on the agenda is the fiftieth omnibus

6  objection to claims.  All of those matters, with the exception

7  of Audiovox, which is going forward, for status until April

8  29th, too, the balance of the claims under omnibus objection

9  number fifty are being adjourned until May 20th at ten.

10         Item Number 33 on the agenda, Your Honor, is omnibus

11 objection number fifty-four.  That matter and claim is being

12 adjourned until May 20th at ten.

13         Item Number 34 on the agenda, Your Honor, involves

14 the fifty-seventh omnibus objection to claim which has one

15 claim remaining, Snell Acoustics, and I believe we filed a

16 stipulation this morning resolving that one, so it can be

17 removed from the docket.

18         Item Number 35 on the agenda is omnibus objection

19 number fifty-eight, and the SanDisk Corp. claim has been

20 resolved by a supplemental order to reclassify the claim.  So

21 has the claim of THQ, Inc., Kelly Breitenbecher, James Wimmer,

22 and obviously Snell Acoustics.  Those are all resolved in

23 omnibus objection number fifty-eight.  The Weidler class

24 settlement -- settlement claim -- settlement class is one of

25 the matters that's on the agenda for today that Mr. Galardi

1  will address.

2          Omnibus objection number -- Agenda Item Number 36

3  involves the sixtieth omnibus objection to claims, and with the

4  exception of Jack Hernandez and Robert Gentry, which are both

5  part of the Rule 7023 motion that's on for today, the balance

6  of those matters are being adjourned until May 20th at ten.

7          Item Number 37 on the agenda, Your Honor, is omnibus

8  objection number sixty-seven, which involves Columbus dispatch.

9  That matter has been resolved by a supplemental order that

10  withdraws the claim.  And part of the Chase Bank -- Chase has

11  other claims, but this particular claim has been resolved with

12  respect to some procedural issues, so everything under omnibus

13  objection number 67 have been resolved.

14          And that concludes the claim matters, Your Honor.  If

15  we could just skip over for a moment Items Number 38 and 39

16  that Mr. Galardi will address, the next set of items is the

17  fifth interim fee applications for the debtors' professionals,

18  which include Skadden Arps, McQuireWoods, FTI Consulting, E&Y,

19  KPMG and DJM Asset Realty.  Items Number 26 -- I'm sorry -- 46,

20  47 and 48 involves the committee's professionals.  We have a

21  demonstrative exhibit, Your Honor, that we've handed up at

22  previous hearings on fee applications so that the Court can see

23  the total amounts that are being requested.  And I have two

24  copies for the Court.

25                         (Pause)


                    **J&J COURT TRANSCRIBERS, INC.**

 1          MR. FOLEY:  Your Honor, we've received no responses

 2  or objections to any of the pending fee applications, and we

 3  would ask the Court to approve the fifth interim fee

 4  applications for Skadden Arps, McQuireWoods, FTI Consulting,

 5  Ernst & Young, KPMG, DJM Realty Services, Inc.

 6          THE COURT:  All right.  Does any party wish to be

 7  heard in connection with any of these six fee applications?

 8  Yes, sir?

 9          MR. JOFFE:  My name is Jacob Joffe.  I had objected

10  to Item Number 12 with regard to a so-called late submission.

11          THE COURT:  Is this on a claim?

12          MR. JOFFE:  Yes, sir.

13          THE COURT:  And this is on the debtor's seventh

14  omnibus objection?

15          MR. JOFFE:  Right.  Omnibus Objection Number 7.  And

16  the objection has been thrown out because it is claimed that I

17  submitted duplicate claims, which in fact I did not.  It has

18  only been one claim.  So, I am representing myself.  I don't

19  know how else to object to it other than to come here and show

20  my case.

21          THE COURT:  All right.  And your name again is Mr.

22  Jaffe, you say?

23          MR. JOFFE:  Joffe, J-o-f-f-e.

24          THE COURT:  Okay.  And I don't see you listed on the

25  status for the items today.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. JOFFE:  Well, it has been listed on Exhibit A,

2   which apparently, in total, has been rejected.

3          THE COURT:  All right.  And you're saying that this

4   -- your claim has been rejected because it was a duplicate?

5          MR. JOFFE:  That was the rationale that was given.

6          THE COURT:  And you're saying it's not a duplicate?

7          MR. JOFFE:  It's not a duplicate.

8          THE COURT:  Okay.  Very good.  Let me hear from Mr.

9   Foley.

10          MR. FOLEY:  Your Honor, I'm not sure which omnibus

11   claim objection this relates to.

12          MR. JOFFE:  Omnibus --

13          THE COURT:  All right.  Well, what I would like to do

14   then, if you could, when we're done with all of the claims, if

15   you could go out into the hall and the two of you could talk to

16   each other about what the claim is and whether it's proper or

17   not.  If there is a dispute then I'll hear you.  If there's

18   not, then, you know, maybe we can resolve it one way or the

19   other.

20          MR. FOLEY:  We'll do that, Your Honor.

21          THE COURT:  Okay.  So, what we're going to do then,

22   sir, is Mr. Foley is going to finish with what he's got left on

23   the agenda, and then when Mr. Galardi comes up, then the two of

24   you can step outside in the conference room and discuss what

25   your claim is.  And then if there's still a dispute, at the end

1  of his argument then I'll hear you back again.  Okay?

2          MR. JOFFE:  Thank you.

3          THE COURT:  You're welcome, sir.  All right.  Now,

4  back to the objection -- the professional fees.  I've got

5  before me the fee applications of Skadden Arps, McGuireWoods,

6  FTI Consulting, Ernst & Young, KPMG, and DJM Realty Services.

7  Mr. Van Arsdale, did you wish to be heard?

8          MR. VAN ARSDALE:  Robert Van Arsdale for the U.S.

9  Trustee, Your Honor.  Just to report that we have, in fact,

10 reviewed all six of these and we have no objection to them.

11         THE COURT:  All right.  Thank you.  Does the

12 committee have any objection to these?

13         MS. TAVENNER:  Lynn Tavenner on behalf of the

14 committee.  No, Your Honor.

15         THE COURT:  All right.  Thank you.  All right.  The

16 Court has reviewed each of these six fee applications and I've

17 found them to be in order, and the Court will approve all six

18 of them and ask that, Mr. Foley, if you'd please submit orders

19 to that effect.

20         MR. FOLEY:  We will, Your Honor.  Before I sit down,

21 Your Honor, if we could skip to Items Number 49 and 50, which

22 are the two adversary proceedings that are pending?

23         THE COURT:  That would be appropriate, and then we

24 can address the other matter.

25         MR. FOLEY:  The CC Investors adversary proceeding,

1  Your Honor, this -- we're going to ask the Court to enter your

2  normal scheduling order and we'll probably need to pick a trial

3  date with respect to that.  This involves a sink hole in a

4  leased property in Bethlehem, Pennsylvania and some insurance

5  proceeds that -- and a lease interpretation issue as to whether

6  the funds go to the tenant or to the landlord.  We've finally

7  concluded that there's about a million dollars of insurance

8  proceeds that are going to be available to --

9           THE COURT:  Somebody.

10          MR. FOLEY:  -- to somebody, and that's the issue that

11  we need to resolve.  So, we'd like the Court to enter your

12  typical scheduling order.  I would expect if we go to trial and

13  we can't resolve this by summary judgment, which we hope we can

14  by summary judgment proceeding, that the trial will be no more

15  than a day and a half.

16          THE COURT:  All right.

17          MR. FOLEY:  So, if Your Honor can just pick a date, I

18  assume we're in the fall already.

19          THE COURT:  All right.

20          MR. EPPS:  Your Honor, A.C. Epps, Jr. on behalf of

21  the plaintiff in the adversary proceeding.  On the telephone

22  today is Mr. Matthew Spero, who is the chief counsel for the

23  plaintiff.

24          THE COURT:  All right.

25          MR. EPPS:  The Court has -- a motion has been filed,

20

1   and an order has been entered -- has not been entered, as far

2   as I know, but was in chambers allowing him to participate

3   telephonically.  Because we'll need his schedule I hope that

4   the Court would orally grant my motion so that we may hear from

5   Mr. Spero --

6             THE COURT:  Most certainly.  Yes.

7             MR. EPPS:  -- on this, because he's knowledgeable

8   about both how long it would take and what the proper time

9   would be, and I'm not the right person.

10            THE COURT:  All right.

11            MR. EPPS:  Thank you.

12            THE COURT:  Mr. Spero, are you on the phone?

13            MR. SPERO:  I am, Your Honor.

14            THE COURT:  All right.  Very good.  Do you agree with

15  Mr. Foley that this is going to take a day and a half to try?

16            MR. SPERO:  I think so, Your Honor.

17            THE COURT:  All right.  Well, the Court has available

18  October 4 and 5.  Is that --

19            MR. EPPS:  Your Honor, at Christian and Barton, we

20  will -- it's fine with us.  We have enough troops to make it

21  work.

22            THE COURT:  All right.  Mr. Spero, does that work for

23  you?

24            MR. SPERO:  Your Honor, I believe that it does.  I

25  would just ask, there is another attorney who is also working

**J&J COURT TRANSCRIBERS, INC.**

 1  on the matter, and I would like to clear it with his schedule,

 2  but I don't think it's going to be a problem.

 3          THE COURT:  All right.  Mr. Foley, does that work for

 4  the debtor?

 5          MR. FOLEY:  That's fine with us, Your Honor.

 6          THE COURT:  Okay.  So, the Court is going to set

 7  this, then, to begin at ten o'clock on Monday, October 4, and

 8  then continue on into October 5.  The Court will issue it's

 9  normal pretrial order, then, in connection with this matter.

10          MR. EPPS:  Thank you, Your Honor.

11          THE COURT:  All right.  Thank you all.

12          MR. SPERO:  Thank you, Your Honor.

13          THE COURT:  You're welcome.  All right.  So then that

14  concludes the pretrial conference in connection with Docket

15  Number 49, and we still have the pretrial conference for Item

16  Number 50?

17          MR. FOLEY:  That's our complaint against Creative

18  Labs for certain accounts receivable and avoidance of

19  preferential transfers.  We've been trying, over the last

20  several weeks, if not months, to resolve this consensually, and

21  the parties have exchanged settlement offers and have gotten

22  very close, but we're just not there yet, and at this point

23  counsel at DLA Piper has been retained, this is a Singapore

24  company, has been retained and has filed an answer.  At this

25  point we would ask the Court to issue its normal scheduling

1  order.  This one involves, it's pretty document intensive, we

2  would anticipate that it would take two days to try the case.

3         THE COURT:  All right.  Who is counsel for the

4  defendant?

5         MR. FOLEY:  They should be on the phone.  DLA Piper

6  is counsel for the defendant.

7         THE COURT:  All right.  Is counsel for Creative Labs

8  on the phone?

9         MR. KONN:  Yes, Your Honor.  This is Jamie Konn,

10  along with Jodie Buchman, with DLA Piper, counsel for Creative

11  Labs.

12         THE COURT:  All right.  Do you agree with the

13  debtors' assessment that it's going to take two days to try

14  this case?

15         MR. KONN:  Yes, that sounds right to us, Your Honor.

16         THE COURT:  All right.  And how much discovery is

17  going to be necessary?

18         MR. FOLEY:  We're going to try to get on that pretty

19  quickly, Your Honor.  Again, it's mostly documents, maybe a

20  couple of depositions, but I think we can do it within the time

21  frame that's normally provided by Your Honor's typical

22  scheduling order.

23         THE COURT:  All right.  Very good.  All right.  The

24  Court has available November 1 and 2.  Again, that's a Monday

25  and a Tuesday.

**J&J COURT TRANSCRIBERS, INC.**

23

1              MR. FOLEY:  That's fine with the plaintiffs, Your

2   Honor.

3              THE COURT:  All right.

4              MR. KONN:  November 1 and 2 will work for Creative

5   Labs as well, Your Honor.

6              THE COURT:  All right.  So, we'll set this down,

7   then, for November 1 and 2 for a two-day trial, and that will

8   commence at ten o'clock on Monday, November 1.  And the Court

9   will issue its normal pretrial order.

10             MR. FOLEY:  Thank you, Your Honor.  Yes, Your Honor.

11             MR. KONN:  Thank you, Your Honor.

12             MR. FOLEY:  And before Mr. Galardi stands up, I'll

13  defer to Ms. Tavenner.

14             THE COURT:  All right.

15             MS. TAVENNER:  For the record again, Your Honor, Lynn

16  Tavenner of the law firm of Tavenner and Beran, appearing on

17  behalf of the Official Committee of Unsecured Creditors.  Your

18  Honor, I believe that brings us back to Items 46, 47 and 48 on

19  the agenda, which are the fifth interim applications which were

20  filed by the professionals for the committee.  Your Honor, my

21  firm filed an omnibus notice for all three of those

22  applications.  Item Number 46 is the fifth interim application

23  for my firm, Tavenner & Beran, seeking approval of compensation

24  in the amount of $22,045.50, and reimbursement of expenses in

25  the amount of $591.25.  The period for all three applications

1  is November 1, 2009 through January 31, 2010.  Your Honor, Item

2  47 would be the application of Protiviti, Inc., which is the

3  financial advisor for the committee.  Protiviti is seeking

4  compensation in the amount of $403,598, reimbursement of

5  expenses in the amount of $5,227.15 for the same period.  Then,

6  Your Honor, there also is the application filed by Puchalski,

7  Stang, Ziehl & Jones.  Mr. Pomerantz is on the telephone, as

8  well, and his firm's application was in the amount of $182,516,

9  expenses in the amount of $2,265.49.  My firm did, Your Honor,

10  send out the notice with respect to all of these applications.

11  We have received no objections to any of the three and would

12  respectfully request that Your Honor enter an order approving

13  the same.

14          THE COURT:  All right.  Thank you.  Does any party

15  wish to be heard in connection with the applications?

16          MR. VAN ARSDALE:  Robert Van Arsdale for the U.S.

17  Trustee.  Your Honor, as to these applications also we have

18  reviewed them.  We have no objection to them.

19          THE COURT:  All right.  Thank you.  The Court had one

20  question with regard to the Protiviti application, and that had

21  to do with Protiviti's involvement with the claims

22  administration and such.  Why is the creditors' committee's

23  professionals so involved in that process?

24          MR. POMERANTZ:  Your Honor, this is Jeff Pomerantz.

25  Perhaps I can address that.


**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  That would be wonderful, Mr. Pomerantz.

2          MR. POMERANTZ:  As Your Honor may recall, one of the

3     conditions to the effective date was the committee becoming

4     comfortable that the estate would be administratively solvent.

5     As Your Honor may recall, the plan that's on file did not

6     contemplate reserves for disputed administrative claims.  So,

7     the committee asked the Protiviti firm, and our firm, to a

8     lesser extent, to become very involved in the claims process

9     and to make our own judgments so that we can do the sufficient

10    due diligence that would enable the committee to take a

11    position on that issue.  So, a lot of the information and

12    entries that you're seeing in the monthly invoices from

13    Protiviti is a direct response to the committee's direction,

14    which was necessitated by the provision we negotiated in the

15    plan and the committee's significant concerns of whether the

16    estate would be administratively solvent or not.

17         THE COURT:  All right, Mr. Pomerantz.  Thank you very

18    much for that explanation.  That satisfies the Court's

19    question.  All right.  The Court has reviewed the applications,

20    and with -- that explanation regarding the Protiviti

21    application.  The Court is satisfied with and finds them to be

22    entirely in order, and the Court will approve the applications.

23    Ms. Tavenner, if you would please submit orders to that effect.

24         MS. TAVENNER:  Yes, Your Honor, we will.  Thank you.

25         THE COURT:  Thank you.  All right.  So, I think that

 1  brings us back to Numbers 38 and 39, which are the last two we

 2  have on the agenda.

 3       MR. GALARDI:  Thank you, Your Honor.  For the record,

 4  Gregg Galardi on behalf of the debtors on 38.  Your Honor, we

 5  came anticipating an argument on 38, but I think at the last

 6  minute we may have -- we may get to a settlement that needs to

 7  be cleared by both the Weidler counsel as well as the

 8  committee.  So, what we would ask with respect to that is that

 9  we'd ask to move the hearing over to the May -- I think it's

10  the 11th day, if we have to argue it, but the hope would be

11  that if the committee can sign off on it and I think Mr.

12  Pomerantz was just advised before this hearing about the terms

13  of it, if they can sign of on it and Weidler can sign off on

14  it, the debtors are comfortable with it and it would resolve

15  litigation and litigation costs, so we always would like to do

16  that, and Your Honor wouldn't have to write another opinion,

17  perhaps, as well.

18       THE COURT:  Which would be wonderful.

19       MR. GALARDI:  Which would be wonderful, Your Honor.

20  So -- and actually it will help expedite -- I'm not trying to

21  put the rabbit in the hat on the settlement, but it would

22  expedite distributions and all of those sorts of things.  So,

23  we would ask for an adjournment to the 11th.  The hope would be

24  to come back on a consensual basis on the 29th with a

25  stipulation.  I understand that counsel for Weidler couldn't be

1   here, so if it's not consensual we've agreed to push it over to

2   the 11th and have the argument.  There would be no more

3   briefing or anything of that, but we're just going to hold up

4   on that one.

5           THE COURT:  Very good.  Mr. Jones?

6           MR. JONES:  Thank you.  Your Honor, Chris Jones for

7   the settlement class.  Mr. Galardi has accurately represented

8   the status of the matter.  I do need to consult with class

9   counsel out in California to obtain the requisite approval if

10  it is forthcoming, and also need to speak with Mr. Pomerantz.

11  He has not actually -- I haven't had a chance to talk to him

12  and tell him what the terms of the settlement would be, to make

13  sure that the committee is comfortable with that, as well.  I

14  anticipate that happening in the next day or two, so hopefully

15  we'll have this wrapped up in the next week.  If not, then Mr.

16  Galardi is correct, we've agreed to carry it over with no

17  additional briefing, for May 11th, to the extent we need to go

18  forward.

19          THE COURT:  All right.  Very good.  Well, hopefully I

20  will not hear from you on May 11, and you'll get this resolved.

21          MR. GALARDI:  Thank you, Your Honor.  Hopefully

22  you'll hear sooner with a stipulation.  Your Honor, that then

23  brings us to Matter 39, which is actually another person's

24  motion in support of filing a 7023 motion.

25          THE COURT:  All right.  Very good.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. GALARDI:  I'll respond afterwards.

2          MR. HUTSON:  Your Honor, Richard Hutson on behalf of

3  the class creditors Gentry, Hernandez, Card and Skaf.  Your

4  Honor, lead counsel, Michael Righetti, is on the phone right

5  now.  As Your Honor recalls, Mr. Righetti has been admitted on

6  motion, and also has received approval from the Court to appear

7  by phone.

8          THE COURT:  All right.  Thank you, Mr. Hutson.  Mr.

9  Righetti, are you on the phone?

10          MR. RIGHETTI:  I am, Your Honor.  Can you hear me?

11          THE COURT:  I can hear you just fine.  Thank you,

12  sir.  You may proceed.

13          MR. RIGHETTI:  Thank you, Your Honor, and good

14  afternoon.  Thank you for allowing me to appear by phone, as

15  we're out here in San Francisco.  I think I'll start off, Your

16  Honor, you know, we tried to get a reply to debtors' opposition

17  on file as soon as we could in light of, you know, only having

18  a day to do so, and hopefully the Court has had an opportunity

19  to take a look at some of our comments there.

20          THE COURT:  I've read your memorandum.  I've read the

21  debtors' response, and I've read your reply.

22          MR. RIGHETTI:  Thank you, Your Honor.  So, you know,

23  I think it's important to point out that, you know, the debtor

24  is really asking for the Court to create a sort of be all/end

25  all with <u>In Re Computer Learning Centers</u> in this district.

29

1   They want to establish a book end type policy where if you

2   don't move for your 7023 motion when you file your class proof

3   of claim, that's it, goodbye, you haven't done it timely.  And

4   to do so would be -- for the Court to hold in that regard would

5   be really a serious trap for creditors' counsel who aren't

6   perhaps aware, or who haven't come across that authority and

7   are relying on the Bankruptcy Code, which does not provide any

8   authority that you have to bring your motion within that period

9   of time.  You know, what happened in this case, Your Honor, was

10  we did receive some general omnibus objections, but we never

11  received any objection to our proofs of claim on the grounds

12  that they were filed as class proofs of claim.  We approached

13  debtors numerous times asking them, you know, what are we going

14  to do with these claims, and they kept telling us to wait.  You

15  have to wait.  We're not ready to deal with your claims yet.

16      They filed the nineteenth and the thirty-first

17  omnibus objection, and that's what we're on about today, but

18  none of those objections at all brought up that these were

19  class proofs of claim.  Now they filed a supplement to those

20  objections.  They didn't even file a new objection, Your Honor.

21  It's a supplement to the past objections saying for the first

22  time that we don't -- we won't stipulate to these because

23  they're class proofs of claim.

24      So, when we finally, at the Court's guidance, moved

25  for a 7023 motion, they come back and say, well, sorry, it's

1    not timely.  And I think that to -- for the Court to agree with

2    that would be to further distance itself from authorities that

3    have been put forth from the Seventh and the Eleventh Circuit,

4    and also to distance itself from the plain language of the

5    Bankruptcy Code itself.  So, that would be the creditors' first

6    comment, Your Honor.  I think another very important point is

7    to discuss the prejudice that the debtor --

8              THE COURT:  Before you move on from that point, the

9    Seventh Circuit authority upon which you're relying is the

10   American Reserve case?

11             MR. RIGHETTI:  Yes, Your Honor.  And the Eleventh

12   Circuit case, I have my -- it was quoted as well in the

13   American Reserve case, Your Honor -- the name is eluding me at

14   the moment.

15             THE COURT:  Okay.  Well, I've read the American

16   Reserve case.  I'm familiar with that.

17             MR. RIGHETTI:  Okay.  Thank you, Your Honor.  Any

18   other questions on that comment before I move on?

19             THE COURT:  No.  You may move on.

20             MR. RIGHETTI:  Thank you, Your Honor.  The second

21   point, then, is the prejudice to the debtor, and in thinking

22   about, you know, we haven't been able to find any prejudice to

23   the debtor.  They respond in their brief that there is

24   prejudice because we are essentially now filing a whole new

25   proof of claim after the bar date.  That argument could not be

1  more disingenuous, Your Honor, because the debtors have known

2  about these proofs of claim ever since creditors filed them

3  over 14 months ago now, and it was only two weeks ago that they

4  first objected to them on the grounds that they were class

5  proofs of claim.  They've known about these claims.  They're

6  nothing new to the debtors.  They haven't filed an objection to

7  them on those grounds.  And to allow them at this time would

8  really not change the status quo in any regard because you're

9  not allowing a new proof of claim.  These proofs of claim have

10 been filed for 13 months.

11         Additionally, Your Honor, the opposition that debtor

12 filed in response to our motion really is a smorgasbord of

13 arguments, and it appears that the debtor is just asking the

14 Court to pick and choose any one of them.  But when you look at

15 the arguments that debtor puts forth, you'll notice that they

16 are all very inconsistent, and they are most inconsistent with

17 one very important aspect of this case, and that is with

18 respect to class notice.  And I want to focus on class notice,

19 Your Honor, because all of the arguments that debtor puts forth

20 in its opposition relate to it in some way, shape or form,

21 whether it's that -- that the creditors' claims are not

22 appropriate for certification, or whether a class action is not

23 the more beneficial means to adjudicate this matter, all of

24 those arguments assume, Your Honor, that the unnamed claimants

25 have received notice of these proceedings, and debtors will

32

1  concede that they did not provide actual notice to the unnamed

2  claimants in these cases.  How could a class action be the --

3  excuse me, Your Honor, how could a bankruptcy be the more

4  appropriate means to adjudicate these matters when the unnamed

5  claimants don't even know about the proceedings in the first

6  place?  They have been relying on the class proofs of claim

7  ever since they were filed, and they never received actual

8  notice from Circuit City that these proceedings were even

9  taking place.

10         And, you know, it's really disingenuous for the

11 debtor to come into this Court and now say that we did not know

12 who these individuals were at the time that we mailed out

13 notice of the bar date.  They've known about who the class

14 members are in these cases since 2002 with respect to the

15 Gentry case, and since before the petition date with respect to

16 the other three class proofs of claim.

17         Those individuals, the unnamed claimants, were

18 entitled to actual mailed notice, and they did not receive that

19 notice, as conceded by the debtor.  And I think that is a very

20 important point because it is just simply illogical to expect

21 the unnamed claimants to have filed class -- to have filed any

22 claim whatsoever when they were not given notice of these

23 proceedings.

24         THE COURT:  Assuming that I agree with you on that

25 point, why wouldn't the remedy simply be to require the debtor

**J&J COURT TRANSCRIBERS, INC.**

1  to send out a supplemental notice?

2        MR. RIGHETTI:  Well, Your Honor, if the debtor did

3  so, and then -- and would agree that, you know, any claims

4  filed at this point in time would not be untimely, I suppose

5  that's one way to go about doing it.  I think that that would

6  be a more difficult way to do it when you have class counsel

7  here that have filed a timely proof of claim that asserts a

8  right on behalf of the entire class.  You know, we're ready to

9  proceed.  I think that it would take less time to move for

10 certification in this Court than it would to give notice to all

11 of these class members and provide them the opportunity to file

12 a proof of claim.

13        THE COURT:  And that's really what I would like you

14 to focus on because it seems to me from reading the American

15 Reserve cases, as well as the Computer Learning Centers case,

16 that the -- filing a class action in a bankruptcy case is

17 permitted, but it's not a matter of right, and there are

18 various factors the Court can consider, and one of the biggest

19 ones is the benefits and costs of the class litigation, and

20 whether the bankruptcy forum is sufficient in and of itself to

21 address those kinds of issues.  So, if you could address those

22 issues for me, please?

23        MR. RIGHETTI:  Sure, Your Honor.  You know, mailing a

24 class -- mailing a notice of bar date to the past employees of

25 the debtor in this case that they have to file proof -- that

1  they have to file any sort of proof of claim at this point I

2  think would not be a very productive way to address the claims

3  that have been put forth, the allegations that have been put

4  forth in plaintiff's complaint.  A lot of times the unnamed

5  class members in these types of cases aren't even aware, based

6  on the nature of California employment law, that they have a

7  claim, and that is because of the representations that their

8  employers provide them while they are working there.  The

9  allegations relate to entitlement to overtime for non-exempt

10 employees in California law that have been mis-classified as

11 exempt employees.

12         I think that if the Court was inclined to send notice

13 to all of those individuals and ask them to individually file

14 claims in this matter it would be very difficult for the Court

15 to adjudicate each individual claim and the tasks performed by

16 each individual employee while they did work for debtor in a

17 bankruptcy forum.  The way that these cases go down in

18 California is they are perfectly and ideally situated for class

19 treatment because you have a 50 percent threshold of -- that

20 looks at how the employee spent his or her time.  For the Court

21 to have to adjudicate each and every single one of those to

22 determine whether the individual is entitled to back overtime

23 wages I think would be burdensome for the Court, and therefore

24 way more appropriate for a class certification or a class

25 action.  But hopefully that helps address Your Honor's

1  question.

2          THE COURT:  Okay.  Thank you.

3          MR. RIGHETTI:  Your Honor, with that I would be

4  interested to hear debtors' comments and any other questions

5  that the Court has that I may respond to after debtor has

6  responded.

7          THE COURT:  All right, Mr. Righetti.  Thank you.

8  I'll hear now from Mr. Galardi.

9          MR. RIGHETTI:  Thank you, Your Honor.

10         MR. GALARDI:  Your Honor, let me take the easy points

11 first.  My understanding, and Mr. Foley can correct me or Your

12 Honor can correct me, to take one argument in the reply beyond

13 the 20-page brief, I don't think that District Court rule

14 applies to the Bankruptcy Court.  We would apologize otherwise,

15 but we don't think lopping off 20 of our pages, or 15 of our

16 pages, so we would ask that we be permitted to go forward on

17 the reply -- our objection as we responded.

18         THE COURT:  You may.

19         MR. GALARDI:  Next, Your Honor, he started the

20 argument with nothing precludes a class proof of claim, and I

21 guess that's not really true because if you look at the rules

22 for filing proofs of claim the only person authorized to file a

23 proof of claim is the creditor or the authorized representative

24 of a creditor.  Since these are unknown people that were not

25 represented by this law firm, technically speaking he could not

**J&J COURT TRANSCRIBERS, INC.**

1  file a proof of claim under the rules on behalf of these

2  people, thereby submitting them to the jurisdiction of this

3  Court.  And again, it's not a rule for the unwary.  It's a rule

4  of 2002.  So, that's how we always start these class action

5  proofs of claim, and I think that's why the cases come out and

6  say, no, nothing precludes it, but you've got to get some sort

7  of permission, because if you look at 2002, and you look at

8  501, it starts with a creditor can file a claim.  And then

9  creditors' representatives get to file claims.  And indeed, the

10 rules even contemplate that if you don't file a claim, the

11 debtor or a trustee could file a claim on your behalf, but it

12 doesn't say a class action plaintiff law firm who has never had

13 a representation letter who could submit somebody to

14 jurisdiction that never agreed to be submitted to jurisdiction

15 in Virginia and file a claim on their behalf.  And that is the

16 consequence of what would be the case in a class proof of

17 claim.  So, I start with the presumption that there's not a per

18 se rule by your case.  There's a per se rule by the statute of

19 501.  And there is Rule 2002 which restricts the ability to

20 file a claim to a creditor and authorized representative.  And

21 this counsel is neither.  So, I start with that presumption.

22         Now -- and I think he made a statement, and it may

23 have just been a mis-statement, no unnamed claimant could

24 possibly be relying on the class proof of claim since if they

25 didn't know it and it wasn't represented, you're not relying on

**J&J COURT TRANSCRIBERS, INC.**

1  it.

2          So now we talk about the proof of claim and the --

3  you know, the untimeliness.  Again, we're not trying to play a

4  gotcha 13 months later.  Your Honor knows how much claims work

5  we've been doing.  The question simply is whether this Court

6  should have a rule that -- and I think it's not that this Court

7  should have a rule, but whether you read the rules and the

8  statute requirements, that if you're going to step outside of

9  Section 501 and 2002, you should do something before the bar

10 date and say I'm going to try to step out of the rules and get

11 permission to do so.  And I thought that was the thrust of the

12 case law, that says if you're going to do something different,

13 ask for a motion or you are proceeding at your risk, whether

14 it's one day, ten days, or a year later, you're proceeding at

15 your own risk to do so and not ask for permission.  They didn't

16 ask for permission, so whether it was one day or 50 days, or 13

17 months, we'd still argue that it's a untimely request in any

18 event.  You've got to do it by the bar date because you had no

19 authority to file the claim in the first place.

20         Your Honor, leaving aside whether you had the

21 authority, we then get to, well, is this a more efficient way,

22 and was the notice adequate?  Your Honor, I think he says we

23 concede that didn't give notice to -- I think he represents

24 it's 1,000 people.  Your Honor, we concede that we gave notice

25 to people who were employed in the three-year period prior to

1  this.  We concede that we didn't go -- and I'm going to go to

2  the complaint in a second, go back to the complaint, look at

3  who they were trying to assert, go through our records, figure

4  out who would have been a person for those records, and go back

5  and then give specific notice to the people that they didn't

6  join in that complaint, give us notice that they wanted to --

7  we concede that we do that.  We think we're entitled under due

8  process, and we'll go through that argument, to have not done

9  so.

10         In this instance, Your Honor, you know, the standard

11  is pretty clear.  Even if you don't think -- even if you think

12  that it was a timely filing, let's assume they came in, we

13  don't think that this process is the most effective process.

14  First of all, had we given, and I think the gentleman has

15  conceded it, let's assume we mailed the notice.  Let's assume

16  we mailed the general bar date notice.  What he just said was

17  that notice wouldn't have done any good for them anyway because

18  they wouldn't have even known their claims.

19         THE COURT:  I heard that, too.

20         MR. GALARDI:  So, if that's the case it's not really

21  an argument about notice, it's an argument that -- what do we

22  want?  We want lawyers to go out and essentially, with no

23  disrespect, I happen to -- solicit a class action.  That's

24  really what he's asking permission to do.  If we had given the

25  notice and it was required, it would have been actual notice

**J&J COURT TRANSCRIBERS, INC.**

1 that he says wouldn't have even been effective.  And that's not

2 the law.  The law is a general notice, if we had mailed it to

3 them, was effected.

4          Your Honor, we're also going to lose sight of another

5 aspect of this.  Yes, you have to mail notice to known

6 creditors.  Yes, unknown creditors get publication notice.  But

7 there's a further defense.  Let's assume one of these

8 individuals came in tomorrow and said I want to assert this

9 claim, I'm late.  They're going to have prove something else,

10 they didn't have actual notice of the bar date.  We can have

11 that fight now, we can have that fight later, but I have a hard

12 time believing that every employee who used to be at Circuit

13 City in California, with the announcements that were out there,

14 didn't know about the bankruptcy case.  And then they can argue

15 we didn't get notice of the bar date, but it is 13 months.  I

16 don't have a lot of those people coming in, so again, I think

17 we're of the view that maybe they got actual notice.  Maybe

18 they were still employed within the last three years and got

19 the notice.  So, we don't know that.

20          Now, if we go to the complaint and we tried to figure

21 out who we would have to give the notice to, it's just not as

22 easy as he thinks it is.  Let me get the complaint out.  What

23 they've asked for is salaried customer services managers.

24 Okay?  So, I don't want to establish a precedent here because

25 that means every time -- and I do a lot of debtor work, a large

1    debtor work -- okay, so I have to go read the complaint.   If

2    the rule here is going to be now not only go to litigation, go

3    to every class action complaint you've ever received, now go

4    figure out when you're in the process of opposing class

5    certification in the first place go and look at the allegations

6    and give those people specific actual notice under the

7    following circumstances.   Well, you've got to find all those

8    salaried customer service employees.   Not only do have to find

9    all of them, they were working overtime, so I've got to now see

10   who were the overtime people that were not paid overtime.

11   Within the four years preceding the filing of the complaint,

12   the complaint was 2002, so I've got to go back to 1998, locate

13   a hundred locations in California, and mail notice.

14          Now, there's two ways to deal with this.   I give the

15   specific notice to only those people, or what do I do?   I give

16   notice to all people back to 1998.   As a debtor's lawyer that's

17   rarely done in a case this size.   Three years, we get pushed

18   back with three years, and we had 40,000 currently, so with

19   turnover it's an exceptionally large notice.

20          So, you have to ask yourself, is there a point in

21   time with due process that you can presume that these are

22   unknown creditors?   Or can you presume that they have abandoned

23   their claims if they had any in the first place?   Or can you

24   presume that your notice, by publication or by mailing

25   sufficiently notified people that they should file in a claim?

1 And what risk does a debtor take?  Again, if we were an

2 operating debtor, their claims don't get discharged.  This is a

3 little more difficult because it's a liquidation, and we're

4 sympathetic to that.  And I would argue in this instance I

5 think you could deny his motion, let him proceed, and if any

6 individual comes in it's without prejudice to their making the

7 argument about not getting actual notice, not getting mail

8 notice, and filing a claim.  And as we --

9      THE COURT:  Isn't it always without prejudice to

10 those folks that would come in --

11      MR. GALARDI:  To me it is anyway, and that's why I

12 say that.  So, again, it's a very easy concession for me, but

13 that's the case.  We're going to be here awhile.  We're going

14 to be here for distributing, and we can -- you know, we didn't

15 want to get into the factual of how hard it would be to go back

16 to 1998, but I want to go to the complaint because I know, Your

17 Honor, and we suggested it, if you really found this offensive,

18 what we did, and you thought we violated due process, or you

19 think that we need to give mailed notice, I'm not even sure we

20 can do it now to get it to the specific people, and we're

21 really doing a blanket notice because it's -- as he said,

22 salaried customer service managers.  That's not a title.  For

23 four years back to '98 -- 2000 to '98, they would have had to

24 have worked overtime, not been paid overtime wages, and then we

25 would have had to classify them improperly, so we'd have to

42

1 concede we classified them improperly, as I guess it's exempt

2 when they're not really exempt because they would have

3 regularly spent more than 50 percent of their time performing

4 exempt work, customarily and regularly exercised the discretion

5 and independent judgment, and have authority to hire and fire.

6 So, I can't really give that class specific notice.  So, okay,

7 what do I do?  Give everybody in California notice again, all

8 the way back to '98?  It's just not a practical solution.  And

9 due process is, I think, Robbins says it, it's a practical

10 notice under the circumstances, and with what we were under

11 those circumstances.  And we do take the risk.  It's a non-

12 discharge risk.  It's a risk that they may come in as unsecured

13 creditors eventually, and have claims.

14        So, Your Honor, we think, one, the notice is

15 adequate.  Two, we think they had a burden.  It's not that this

16 Court is creating a burden, we think that both 501, 2002, and

17 all of the sections of the Bankruptcy Code only allow a

18 creditor and its authorized representatives.  There is not an

19 authorized representative.  There is not counsel here today for

20 a potential creditor making the argument.  They haven't been

21 authorized representatives, and I know from asbestos cases,

22 which I do, they usually sign a piece of paper that says you

23 can file a proof of claim on my behalf, because it's one thing

24 to litigate in California, it's another thing to submit

25 yourself to jurisdiction, because that's the consequence of

1  their filing a proof of claim.  They will submit themselves to

2  jurisdiction in this Court because that's what the Supreme

3  Court said.  So, it's not as simple as any other case.

4          Your Honor, then going just simply to what this

5  means, again, Your Honor, we don't think, if you have class

6  certification, so let's assume you grant the motion, why is

7  that less efficient than going forward?  One, well, you have

8  two ways to go forward which we think would be efficient, the

9  old wait and see approach, see if anybody comes out of the

10 woodwork since we think the notice is adequate but reserve

11 rights to have that argument should somebody come out, or

12 direct us to give notice.  Well, if you direct us to give

13 notice it's certainly cheaper and less expensive than going

14 through a discovery to get a notice.

15         THE COURT:  Excuse me just a minute.

16         MR. GALARDI:  Sure.

17                        (Pause)

18         THE COURT:  Apparently our conference call has just

19 been disconnected.  Does that mean Mr. Righetti is not on the

20 phone anymore?

21         THE CLERK:  Correct.

22         THE COURT:  All right.  Let's -- I hate to do this in

23 the middle of your argument --

24         MR. GALARDI:  No, that's quite all right.

25         THE COURT:  -- but what I would like to do, let's

**J&J COURT TRANSCRIBERS, INC.**

1 take just a two or three-minute recess and see if we can't get

2 him back on the phone so that he can hear what you're saying?

3         MR. GALARDI:  Seems fair to me.

4         THE COURT:  All right.  Thank you, sir.

5         THE CLERK:  All rise.  Court is now in recess.

6                    (Recess)

7         THE CLERK:  All rise.  Court is now in session.

8 Please be seated and come to order.

9         THE COURT:  All right.  Do we have Mr. Righetti on

10 the phone now again?

11         MR. RIGHETTI:  Yes, Your Honor.  I'm here.

12         THE COURT:  All right.  Thank you.  Mr. Galardi, you

13 may proceed?

14         MR. GALARDI:  I guess I'll ask -- the question is I

15 don't know when he got cut off, so I'm not sure what I should

16 repeat.

17         MR. RIGHETTI:  That is a good question, and I -- a

18 lot of your last comments before I was cut off were interrupted

19 by some sort of phone ringing in the background, so I wasn't

20 able to hear much of what you said.  And I think a lot of

21 related to the due process you were making related to notice,

22 if that helps at all.

23         MR. GALARDI:  Sure.  I'll try to be even briefer this

24 time.  First is I started with, one, I think it's only a

25 creditor and authorized representative, so I'll stand on that

1  argument.  Two, with respect to notice, there are two

2  obligations.  One, we believe that they were unknown creditors,

3  or creditors that had abandoned claim, and two -- and then the

4  aspect of that was they may have well gotten actual notice.

5  So, the presumption that the class action is really making is

6  that these people were, one, not working in the three years

7  prior, so therefore didn't get mailed notice, two, did not get

8  publication notice, and three, did not have actual notice.  And

9  again, Your Honor, that would be a factual issue, but I think

10 you cannot presume that none of those is the case, and I

11 mentioned that even if they did not, there is no prejudice to

12 those individuals in some sense because they can file their

13 claims, and if they could prove those facts they would still

14 have a claim.

15       And again, though we may get to confirmation within

16 the next 20 days, or we may get to it in 50 days, the fact of

17 the matter is there will be proceeds for unsecured creditors in

18 reserves for quite some time as these cases go, so that is an

19 issue that we could take up with an authorized individual.

20       As I noted, and I think the gentleman heard, was the

21 general notice that would have been given had we failed to do

22 it, and mailing notice has been conceded by him to have been

23 inadequate in the first place, and I was going to add to that

24 point there is no obligation to say, just like when you give

25 notice to creditors who have equity claims, hey, by the way,

1 you may have a 510(b) claim, hey, you don't have to tell people

2 what their claims are.  I'm not their lawyers.  They have the

3 right to decide that.  So, the notice that we gave no one has

4 contended that it's not adequate, and I think the gentleman

5 wants to give specific notice.

6        So, we then turn to why is the bankruptcy process a

7 better process?  Well, first of all, as I said, one, we could

8 do nothing, which would have very little expense at this point,

9 and we could deal with it if and when an individual that

10 believes that they were prejudiced, and sufficiently prejudiced

11 to want to come to this Court in Virginia, submit themselves to

12 jurisdiction to make the argument, and then you could deal with

13 it at that point in time.  And there's still plenty of time for

14 doing that because, as I said, distributions to unsecured

15 creditors are not looming, and it's not at the end of this

16 case, and indeed we've been successful to get to, we believe, a

17 more than administratively solvent case, but there is still a

18 lot of claims work to do, indeed, over two billion of claims.

19        Second, Your Honor, with respect to another

20 alternative is if Your Honor was very concerned about this you

21 could direct us to supplement notice, but as I mentioned going

22 through the complaint it's not clear to me that anything other

23 than a broad notice to every employee in California that worked

24 at Circuit City locations since 1998 would be anything more

25 than adequate because I would be guessing at who these people

1  would get specific notice.  And again, I don't think they would

2  understand necessarily why that notice was.  But even assuming

3  they had claims, as I said, I think that they're -- they had

4  abandoned.

5        Next, if we let it go through the way in which the

6  class action plaintiffs' counsel asks, it's a discovery, which

7  obviously involved attorneys' costs.  It's a fight over, then,

8  even if you have these claimants, and even if they got notice,

9  and even if they agree to come in, then we have the argument is

10  that enough to say that joinder is not possible?  Because once

11  they've come in and once they've said it we could give them a

12  proof of claim and the bankruptcy process works just perfectly

13  fine.  We don't need to be contending with a law firm.

14        I understand that class action plaintiffs champion

15  the rights of the little person in often cases, and that's an

16  important right, but this class has not been certified, and in

17  this bankruptcy process when we don't even know what the

18  proceeds are that we're ultimately fighting over that may be a

19  decision that a creditor wants to make on his own.

20        With respect to the sending notice, we think it's a

21  lot less expensive, and again, Your Honor, we just think that

22  this process and the claims -- Your Honor has been very

23  friendly to the employees' claims, you let people participate

24  by phone.  We just don't think that the cost and expense of a

25  class action that we will contest and we have contested, and

1  just because we lost the right in the arbitration clause

2  doesn't mean that we won't, you know, challenge the class, or

3  that this counsel was appropriate to represent that class.  And

4  then, finally, I would just point out that the entire response

5  goes to Gentry, Your Honor.  It doesn't go to the other class

6  actions.  I haven't heard that the notice was inadequate, so

7  we're really not talking about all four or five of those, and

8  it's really just the Gentry one, which is the one that goes

9  back, which is the one I said we concede.  If they weren't

10  caught by any of the notice mechanisms we used we didn't give

11  them specific notice by mail, but I stand on the argument that

12  we think that we were entitled to either say they were unknown

13  creditors or that they had abandoned their claims, if any,

14  having not prosecuted, given us notice of anything or

15  intentions to pursue.  That was my argument, Your Honor.

16         THE COURT:  Thank you, Mr. Galardi.  Mr. Righetti,

17  anything further?

18         MR. RIGHETTI:  Yes, Your Honor.  Thank you again for

19  getting me back on the phone here.  You know, I really will

20  stress that it boggles my mind that the debtor is taking the

21  position that it can't figure out who is involved in this -- in

22  these four class action cases.  The allegations in the

23  complaint specify --

24         THE COURT:  Well, first -- let's talk about that

25  because are we talking about all four, or are we just talking

1  about the one?

2          MR. RIGHETTI:  All four, Your Honor.  All four are

3  alleged on behalf of different groups of employees, but they're

4  all very similar.  Every single one of the groups is a class of

5  individuals that received a salary, that was classified as

6  exempt from overtime under California law, and those

7  individuals that worked overtime hours weren't paid overtime.

8  We try and specify in the complaints the titles of the group of

9  employee, for example a customer service manager, or a store

10 manager, or an assistant manager.  For debtor to now come in

11 and say we don't know who held those positions, and we would

12 have to look at the merits of each person's claim to determine

13 if they worked more than 50 percent on exempt work or non-

14 exempt work, whether each individual had authority and

15 discretion, I mean, that is a completely bogus argument, Your

16 Honor.  They should -- every single individual that held that

17 position should be given notice under their due process right.

18          THE COURT:  I guess --

19          MR. RIGHETTI:  Or else they have absolutely no

20 knowledge whatsoever that these proceedings are even going on.

21          THE COURT:  Well, the question I guess I thought I

22 was asking was, for instance, in the Card case and the Skaf

23 case, those cases were filed late in 2008.

24          MR. RIGHETTI:  I'll address that point, Your Honor.

25 The statute of limitations period on all four of these

50

1   complaints dates back four years from the date it was filed.

2   With respect to the Skaf, the Card, and the Hernandez

3   complaints, there is still over a year-and-a-half of the

4   statutory period for employees who worked during that time

5   period that defendant concedes it did not even attempt to give

6   actual notice to those individuals.

7           THE COURT:  Okay.  So, it's not just the --

8           MR. RIGHETTI:  Now, for -- for -- I'm sorry.  Go

9   ahead, Your Honor.

10          THE COURT:  It's not just the Gentry case?  You're

11  saying that in all four of the cases there was some period of

12  time for which the notice was inadequate?

13          MR. RIGHETTI:  Absolutely, Your Honor.

14          THE COURT:  All right.  Fine.

15          MR. RIGHETTI:  And, Your Honor, if I may -- the next

16  point I'd like to address was debtors' comment that these

17  individuals have not been relying on class proofs of claim.  I

18  have been speaking with class members in these four cases for a

19  very long period of time now, Your Honor, and I have

20  represented to all of them that we have proofs of claim filed

21  in this bankruptcy case and that your rights are being asserted

22  in the bankruptcy.  I mean, and all of these people have said,

23  well, that's great, but I -- you know, I didn't learn about

24  this case.  I didn't know anything about it.  And even the

25  class representatives of these four cases are coming to me with

1  questions because they don't receive all of the -- they don't

2  know what's going on back here in Virginia.  You know?  It's

3  very disingenuous to say that these folks haven't been relying

4  on the class proofs of claim because this office has spoken to

5  numerous class members and informed them that we have class

6  proofs of claim filed, and that's protecting their rights to

7  recover their back wages.

8         You know, the arguments that the debtor seems to be

9  advancing are really attempting to have this Court distance

10 itself further and further from the Seventh Circuit.  It's

11 almost as if debtor is saying, well, you shouldn't even be able

12 to file a class proof of claim in Bankruptcy Court unless you

13 have a certified class, and we know that that's not the case.

14        THE COURT:  Well, let's drill down on that for just a

15 second, because I do want you to address the point that Mr.

16 Galardi raised, and that is that you don't have the authority

17 to file a claim on behalf of these unknown creditors because

18 Section 501 of the Bankruptcy Code and Rule 2002 of the Rules

19 of Bankruptcy Procedure say that only a creditor or an

20 authorized representative can file a claim.

21        MR. RIGHETTI:  Well, I mean, I think the response --

22 I'll respond to another question, Your Honor, and what is --

23 what is a putative class representative?  In what capacity does

24 a putative class representative fit within that definition of

25 the Bankruptcy Code, especially where, for instance in the

1  Gentry complaint, you have eight years of litigation up and

2  down in California Courts up to the California Supreme Court,

3  of a class action in a case where the debtor has still not

4  answered the complaint or communicated to class counsel that it

5  even disputes the allegations.  Why should a class that --

6         THE COURT:  Isn't that why you have to come into

7  Court and ask for permission, so that you would be then

8  authorized to file it on their behalf?

9         MR. RIGHETTI:  Well, Your Honor, if that is, in fact,

10 the way that Your Honor is reading the Code, then the creditors

11 are submitting that that is specifically a trap for the unwary,

12 where there's no specific deadline to bring a motion, to bring

13 their 7023 claim.  We believed we filed the procedure and filed

14 proofs of claim on behalf of all of these individuals as a

15 putative class action.  That has been litigated for eight

16 years, and --

17        THE COURT:  Well, 7023 only applies in adversary

18 proceedings, and then that's the other issue that the Computer

19 Learning Centers case addressed is that, well, you know, it's

20 not applicable in contested matters, and we get into all that.

21 But the question I thought -- and I thought it's a good one, is

22 what gives an individual that's not an authorized

23 representative the right to file a proof of claim on behalf of

24 other entities?

25        MR. RIGHETTI:  Your Honor, specifically on that point

**J&J COURT TRANSCRIBERS, INC.**

1  I don't think I have a response as to Bankruptcy Code 501 other

2  than to say that where you have a class action such as these,

3  you have a putative class representative, and you have a debtor

4  who refuses to respond to the allegations, you should be, and

5  it would only be equitable in light of how bankruptcy

6  proceedings are supposed to proceed, that a putative class

7  representative must be allowed to assert the rights of the

8  unnamed claimants, especially where they haven't been given

9  notice during the time period.

10         I mean, the specific proceeding is to protect not

11  only the debtors' interest, but it should be tilted, as well,

12  to protect the unnamed claimants.  I mean, they are the

13  individuals who have asserted a right to recover something in

14  these bankruptcy proceedings, and it seems as if debtor is just

15  waving that off completely, and asserting that it is okay not

16  to be able to even file a class proof of claim on behalf of

17  those individuals, and it's okay not to give notice to those

18  individuals.  It seems like the balances of equity are

19  completely tipped in the debtors' favor with respect to how

20  this procedure is set up.

21         THE COURT:  What prejudice can these individuals,

22  these unknown claimants, what prejudice could they suffer as a

23  result of this?  I mean, if they really did not get notice,

24  then why can't they come in and file their claim at this point

25  in time, or even a year from now?

**J&J COURT TRANSCRIBERS, INC.**

1          MR. RIGHETTI:  Your Honor, I think an even better

2    question is what prejudice has the debtor suffered that is

3    preventing them from finally coming forward and litigating some

4    of these issues?  They've had eight years now to respond to the

5    issues in the Gentry complaint, and another two years to

6    respond to the issues in the other complaints.  They haven't

7    even responded to the allegations in the first place.  They've

8    known about the class proofs of claim for 13 months.  What

9    prejudice is there to the debtor to address the complaints and

10   to perhaps conduct one month's worth of discovery in

11   preparation for a class certification motion?  That would one

12   way to respond to that.  And, Your Honor, the second response

13   that I have is to have each individual unnamed claimant come

14   before the Court and file a proof of claim.  That claim is

15   still going to have to be litigated unless debtor concedes that

16   every single one of the employees is owed overtime wages

17   because they were mis-classified as an exempt employee.  I

18   mean, I think it would certainly be way more time consuming for

19   the Court to adjudicate the merits of each and every individual

20   claim because each one of those is going to require witnesses,

21   and a brief Court trial in front of Your Honor with respect to

22   how the individual spent his time, what he did, who he

23   supervised, whether he did hire and fire.  These are all, you

24   know, very complicated issues of California law that would

25   consume a lot of the Court's time if we have close to, you

55

1  know, 500 or 1,000 individual members come in to adjudicate the

2  merits of their overtime claim.

3        THE COURT:  Doesn't the bankruptcy claims

4  administration process sort of mirror the same way that these

5  kinds of claims are resolved in class actions, and I'm thinking

6  it's almost duplicative to have two different kinds of

7  proceedings because we are set up in the bankruptcy process to

8  adjudicate large numbers of claims.  I mean, in this case we've

9  got over 15,000 claims that have been filed.

10        MR. RIGHETTI:  I mean, if Your Honor is insinuating

11  that it is prepared to adjudicate the merits of every single

12  class members' overtime claim, then I would just, you know,

13  warn the Court that this could be a very time consuming process

14  involving a one to two-day trial for each individual.  It seems

15  a lot more burdensome for the Court to do that when it could

16  resolve the claims of hundreds of these employees with one fell

17  swoop as a certified class action.  And that is why all the

18  Courts, even the Supreme Court in the Sav-On case, has

19  authorized and communicated to California employees that these

20  cases are ideally situated for class treatment because it does

21  take a very difficult and burdensome toll on the Courts to

22  require each individual to come forward and adjudicate the

23  merits of their claim where, you know, each individual's

24  recovery could be less than $10,000 or $20,000.

25        THE COURT:  All right.  But I can consolidate these

**J&J COURT TRANSCRIBERS, INC.**

1    hearings and do exactly the same kind of things that you're

2    talking about.  I'm just trying to figure out where the

3    efficiency is because it seems like we're sort of set up to do

4    exactly the same kind of thing.

5            MR. RIGHETTI:  Well, I mean, I think if the Court

6    were to do it that way it would be almost a proposed

7    stipulation to consolidate all of these, and then it does seem

8    as if we really are just having a class action in front of the

9    Court.  I guess my concern is that I'm not really clear on how

10   the Court would adjudicate each individual claim if presented

11   in front of Your Honor.  And maybe if the Court has some

12   comments on that I'd be able to respond to them.  But certainly

13   it appears to be much more burdensome to adjudicate the merits

14   of each individual's claim rather than proceed as a class

15   action with all of them in one fell swoop.

16           THE COURT:  All right.  Anything further?

17           MR. RIGHETTI:  Your Honor, there is one thing that I

18   heard Mr. Galardi say that I did take issue with, and that was,

19   I believe he insinuated that they have been in the process of

20   disputing class certifications, so we should have known all

21   along that this was a contested matter and that we should have

22   come before the Court with our 7023 motion a long time ago.

23   Your Honor, they have not responded to the allegations of the

24   complaint despite our repeated attempts to get them to do so,

25   and despite communicating with debtors' counsel over and over

**J&J COURT TRANSCRIBERS, INC.**

1  again with what they want to do with these claims.  They keep

2  telling us to wait.  They keep telling us to wait.  Now they

3  come into the Court and say that we've known all along that

4  they've disputed class certification?  I mean, that just simply

5  is not the case.  We have been asking them whether they

6  disputed certification or what they want to do with these

7  claims, and they keep putting us off.  Now all of a sudden when

8  it's timely for them to do so, when it's convenient for them to

9  do so, they file a supplement to an objection they filed months

10  ago and say, oh, sorry, now it's untimely to file your 7023

11  motion.  Goodbye.  And they're really asking the Court to, with

12  one fell swipe of a pen, to eliminate the bona fide claims of

13  hundreds of employees who have been denied overtime wages.

14        THE COURT:  Okay.  Well, I'm really not impressed

15  with debtors' argument along those lines.  I'm more concerned

16  about the authorization to file the proof of claim in the first

17  place under 501 of the Code and Rule 2002, as I had asked you

18  earlier.

19        MR. RIGHETTI:  Your Honor, with respect to that I

20  would ask perhaps for the opportunity to brief that issue in

21  detail for the Court.  I just don't feel like I'm prepared at

22  this point in time to provide specific oral argument on the

23  statutory scheme for that matter.  My comments, and I think I

24  would stand on them from before, in that just in the matter of

25  equity where you don't have a certified class action, what are

**J&J COURT TRANSCRIBERS, INC.**

58

1  you to do if your putative class representative is not able to

2  file a proof of claim on behalf of those individuals?

3  Specifically, if we look at Gentry, Your Honor, we went eight

4  years without any response to our class allegations, so what

5  are we to do when Circuit City files bankruptcy and we have

6  litigated for eight years the claims, since 1998 the claims of

7  unnamed individuals?  How are we to present that issue before

8  the Court without filing a class proof of claim?

9          THE COURT:  Well, you come in and you ask for

10  authority to be able to file the class proof of claim so that

11  there would then be an authorized representative of the unknown

12  class.

13          MR. RIGHETTI:  Your Honor, I feel as if the -- you

14  are an authorized class representative of a putative class of

15  individuals until you have some sort of communication from the

16  debtor or from the defendant that they dispute class

17  certification.  And Your Honor's comments at the last hearing,

18  you know, the creditor is allowed to rely on the allegations of

19  their complaint when they come into Court asking for 7023 to

20  apply to their claim.  I don't see why it would be any

21  different where you have a putative class representative

22  asserting a claim on behalf of unnamed individuals when they

23  file their proof of claim in the first place.  The material

24  allegations of the complaint are deemed to be true for the

25  purposes of filing the proof of claim, just in the same way as

**J&J COURT TRANSCRIBERS, INC.**

1  they are when you move for Rule 7023.  We still don't have any

2  response from the debtor as to whether a disputed -- a disputed

3  class certification until four weeks ago, so why shouldn't they

4  have the authority to file a class proof of claim on behalf of

5  these unnamed individuals when they've known about them for two

6  years, for three years, for eight years in the Gentry case.  It

7  seems that the debtor has waived his or her right to object to

8  these claims just by way of sitting on them for so long, and

9  that is where the equity is being completely tipped in debtors'

10  favor.

11          THE COURT:  All right.  Thank you.

12          MR. RIGHETTI:  Thank you, Your Honor.

13          MR. GALARDI:  Your Honor, if I may respond?

14          THE COURT:  You may, Mr. Galardi.

15          MR. GALARDI:  Yh1 again, there's a couple statements.

16  One, if notice was required to be given, we understand the

17  consequences.  So, no one has said that these people shouldn't

18  be required to give notice.  I want to point out one of the

19  actions was, in fact, filed after the petition date, which

20  we've noted as void ab initio, so that one is a class unto

21  itself.  Now, there may be a year and a half that I missed, but

22  I saw the brief and it was mostly Gentry.  I'm glad you

23  clarified that.

24          Again, trips for the unwary, trips why you -- you

25  know, maybe this is a plug for getting bankruptcy lawyers, but

1  5001 is clear, it says who can file a claim.  It's a creditor

2  or an indenture trustee.  And if a creditor doesn't, a person

3  who is liable with the creditor, and a claim with a specified

4   -- and it says that.  Now, we keep saying 2002.  I was

5  thinking the notice, and I think you caught it.  It's actually

6  3001.  3001 says who may file a claim.  302, 303, they go

7  through who is filing a claim, who must file a claim.  And then

8  there are, again, provisions -- filing claims by debtors or

9  trustee in 3004.  And so, there are rules about this.  So,

10 again, we question the authority.

11         So now we go to the putative, and the word is

12 putative class action representative.  First of all let's

13 realize, this is an opt out class, so even if they got class

14 certification people get opt out rights, so it's not clear that

15 just because you allege that there are John Does one through

16 fifty, and that these people represent them, we're not -- even

17 today we are not contesting whether there's a certifiable class

18 or not.  We haven't had to do that yet, and we may do that if

19 Your Honor says go ahead and proceed and get the information,

20 let's see what comes out.  Let's assume only ten people come

21 out of the woodwork and say they want to file claims.  We'll

22 say it can be joined.  Or let's say fifty.  No one knows right

23 now and there's not been a time frame by which to actually go

24 to the certified class.  So, the fact of the matter is you can

25 allege it.  You can assume it's true.  You can say that there's

1  this class of people.  We don't know until you get the facts.

2          Now, yes, we've contested, and maybe I spoke too

3  broadly, we've contested class certification in the sense that

4  we said there was an agreement that couldn't be certified.  We

5  haven't had the underlying facts of the class and all of the

6  things represented.

7          Let's now talk about something I think was

8  interestingly mentioned.  If there are people that he has

9  represented that they filed a claim on their behalf and they

10  have failed to file an individual proof of claim, again, that's

11  something that this Court can look at right away and say, okay,

12  did this counsel tell you this?  Is this your authorized

13  representative?  Are you prepared to submit a proof of claim?

14  To me that's excusable neglect if the individual didn't file

15  the claim.  But again, we're talking about the people who

16  didn't have that, didn't know it, and we still think due

17  process, they're not allowed to file a proof of claim.  They

18  could have taken a 2004 exam.  They could have objected to the

19  bar date and said we want you to go back further, we're worried

20  about this.

21          We gave him notice as to class.  There were many

22  steps.  Again, I'm not saying -- I don't think it's a trip for

23  the unwary, just like the Tax Code may be a trip for somebody

24  -- you know, a trip for me, and that's why I hire somebody that

25  knows the Tax Code.  You've got to hire somebody that has the

1   Bankruptcy Code.  The Bankruptcy Code is absolutely clear.  You

2   cannot file a claim unless you're the authorized representative

3   or the creditor, and he's neither.  And so, whether we did this

4   the day after, or the day before, we would take the same

5   position.  Why did we do the Weidler?  Again, they made the

6   motion before the bar date.  We wanted to get the settlement,

7   which was negotiated.  We agreed to the allegations.  And it

8   was all done before the bar date.  No surprise, nothing.  We

9   got that resolved.  Here, whether it was the day after, and I'm

10  not trying to trip them up on 13 months, we had time to object.

11  We would have objected the first instance had we thought about

12  it.  We would have objected now.  The fact of the matter is you

13  should have done something beforehand and unfortunately that's

14  what the Bankruptcy Code says.  So, we would stand on he's just

15  not authorized in a class claim.  If there are individuals that

16  he's made representations to, let them come in.  We would

17  probably stipulate with respect to excusable neglect if that is

18  true that they relied, and if they didn't get actual notice.

19  But we think there are many remedies, and we just don't see how

20  -- as Your Honor said, let's assume we get 50 more people that

21  he says, and if he wants to say he should represent them or

22  consolidate them in individual causes of action, again, Your

23  Honor, we're prepared to address that at the point when we know

24  the facts, but right now we think that the claims are simply,

25  with respect to the named plaintiffs, if there's other ones

**J&J COURT TRANSCRIBERS, INC.**

1  they can file claims, but there's no basis to proceed on a

2  class proof of claim, and it's prejudicial to us.

3            THE COURT:  All right.  Thank you.

4            MR. RIGHETTI:  Your Honor, if I may respond briefly?

5            THE COURT:  Just very briefly, please.

6            MR. RIGHETTI:  Thank you, Your Honor.  And only to

7  the last comment from Mr. Galardi.  But I think the question

8  becomes what is an authorized agent?  Or why shouldn't a class

9  representative be allowed to file on behalf of unnamed

10 claimants?  In California, as counsel pointed out, you do have

11 an opt out class.  The allegations of the complaint being

12 deemed to be true include all of the people similarly situated

13 to the named claimant.  Why should he not be able to proceed as

14 an authorized representative on behalf of those individuals

15 when we don't have any reason to believe that debtor disputes

16 the allegations in the first place?  The individuals that have

17 not opted out are automatically deemed to be part of the class

18 based on the allegations in and of itself.  And the class

19 representatives, therefore, are authorized representatives, are

20 authorized agents with the authority to file class proofs of

21 claim on behalf of the unnamed individuals, and perhaps there's

22 case law on this subject.  I have not researched it, but I

23 certainly will look at it, and if I find something that says,

24 you know, a class representative is not allowed to file a class

25 proof of claim on behalf of unnamed individuals, then maybe I

1  will, you know, back away into the shadows.  But I don't

2  believe that to be the case, and I don't think that equity

3  demands that that be the case.  I think that equity demands, in

4  fact, the opposite result, and that you do have a class action,

5  a class representative in an opt out class with the authority

6  to file a proof of claim on behalf of the unnamed individuals.

7  And I'll rest there, Your Honor.

8         THE COURT:  All right.  Thank you.  All right.  The

9  Court has before it the motion for an order requesting that

10  Bankruptcy Rule 7023 be applicable to class proofs of claim

11  that have been filed in this case.  The <u>American Reserve</u> case

12  out of the Seventh Circuit, as well as the <u>Computer Learning</u>

13  <u>Centers</u> case from this Court make clear that class proofs of

14  claims are permitted to be filed under the Bankruptcy Code, bu

15  they're not a matter of right, and that the Court has

16  discretion under Rule 9014 whether it's going to apply Rule

17  7023 to a contested matter.  And one of the reasons for that is

18  because there needs to be a request made to have 7023 become

19  applicable because a class proof of claim cannot be filed on

20  behalf of creditors under Section 501 or under Rule 3002 of the

21  Federal Rules of Bankruptcy Procedure by anyone other than an

22  authorized representative so that that representative would

23  have to get authorization from the Court to file that.  And so,

24  the Court finds that there was no authorization at the time

25  that these proofs of claim were filed.

1          Even if the Court was to find that it was timely, the

2     Court also has discretion about whether to make Rule 7023

3     applicable to a proof of claim, and there are certain things

4     that the Court can consider, according to the Computer Learning

5     Center case, the benefits and costs of a class litigation, of

6     whether the class proof of claim would unduly complicate or

7     delay the administration of the case, and in that context, you

8     know, taking into consideration the Bankruptcy Court's control

9     over the debtor and all of its property, which may very well

10    make class certification necessary, and the very efficient

11    claims adjudication process that we have in the Bankruptcy

12    Code, that, you know, might make the benefits of class

13    certification duplicative or just not necessary in a bankruptcy

14    case.

15         The Court finds in this case that the class

16    litigation would be inferior to the claims resolution process

17    afforded by the bankruptcy, and that the class proofs of claim

18    would unduly complicate the administration of these cases.  I

19    think that allowing the individuals to file their claims is

20    much more efficient.  As far as the notice provision is

21    concerned, these are unknown creditors.  The Court makes that

22    finding.  The Court finds that the notice that was sent out was

23    sufficiently sent to known creditors.  As far as unknown

24    creditors the case law is clear that that can be done by

25    publication notice, as it was in this case, pursuant to the

66

1   Court's earlier orders.  If there are, indeed, creditors that

2   are out there who did not have notice of these proceedings from

3   -- then due process would mandate that there's no prejudice to

4   them, they would be able to come in at any time and make that

5   claim.  So, for those reasons the Court is going to deny the

6   motion, requesting the order authorizing Rule 7023 to be

7   applicable to these cases.

8          Mr. Galardi, I would ask the debtor to please prepare

9   findings of fact and conclusions of law for the Court's

10  consideration in this matter.  Any questions regarding the

11  Court's ruling?

12         MR. RIGHETTI:  Yes, Your Honor, and I think the first

13  question is going to be -- and I think this issue really needs

14  to be looked at by the Court of Appeals more closely because it

15  certainly appears like this District is distancing itself from

16  other Court of Appeal decisions, so I assume that the order of

17  the Court is not without prejudice to take up an appeal?

18         THE COURT:  And I would certainly invite you to take

19  it up on appeal because we can use all the guidance we can get,

20  you know, down here in the Bankruptcy Courts.  And what I will

21  do when I get the findings of fact and conclusions of law as

22  proposed by debtor is I will issue a memorandum opinion and an

23  order, and at that time you'll be authorized, then, to take

24  that up on appeal.  And I think that the rule now is you have

25  14 days from the date of the entry of the Court's order to note

**J&J COURT TRANSCRIBERS, INC.**

1   the appeal, so make sure you get your notice of appeal timely

2   filed.  But, yes, you certainly have that right.

3            MR. RIGHETTI:  Thank you, Your Honor.

4            THE COURT:  Mr. Hutson?

5            MR. HUTSON:  If I may?  Again for the record, Richard

6   Hutson on behalf of the creditors.  Is the Court's ruling that

7   the four proofs of claims on behalf of -- those individuals are

8   disallowed?  Are we going to allow those four, but just not as

9   a class?

10            THE COURT:  I'm not going to allow it as a class.

11            MR. HUTSON:  Just as a class, but -- you know --

12            THE COURT:  With regard to the individuals that are

13   actually, you know, in the proof of claim, and so long as they

14   had authorized the proof of claim to be filed on their behalf,

15   then that's not disallowed.  It's just the class certification.

16            MR. HUTSON:  Thank you, Your Honor.

17            THE COURT:  You're welcome.

18            MR. GALARDI:  And to be clear, Your Honor, my

19   intention was to draft an order with the findings of fact and

20   conclusions of law, and then with respect to each of the

21   individuals do exactly what Your Honor said with respect to

22   those named plaintiffs.  I think we actually asked that relief

23   in our original objection, to restrict it to claims filed on

24   their behalf with the right to amend because the amounts will

25   be different.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  Right.

2              MR. GALARDI:  And then it's without prejudice, as I

3    said, with respect to anybody who, quote, was an unnamed

4    plaintiff, or to show circumstances to file a proof of claim

5    under -- I think it's 9006, excusable neglect, whatever it is.

6    That would be what I would intend to draft and put before Your

7    Honor as sort of the order on this and findings of fact.

8              THE COURT:  And that would be fine.  So, Mr. Hutson

9    and Mr. Righetti both, if there are other people out there that

10   you know of that didn't file a proof of claim because they had

11   relied on, you know, this class, they can come into this Court

12   and show excusable neglect, that they relied on that advice.

13   The Court will take that into consideration whether they should

14   be able to file a late filed proof of claim.

15             MR. GALARDI:  And, Your Honor --

16             MR. RIGHETTI:  What is the time period for that, Your

17   Honor?  Mike Righetti for the creditors.

18             THE COURT:  Well, they can't sit on their rights.

19   They would have to do that -- the longer the delay is going to

20   effect whether the Court will decide whether there is, in fact,

21   excusable neglect, so they can't sit on their rights, so they

22   would need to do something fairly promptly.

23             MR. RIGHETTI:  Your Honor, Mike Righetti again for

24   the creditors.  I think an important concern then is how are we

25   going to notify the unnamed claimants that they need to bring

                     **J&J COURT TRANSCRIBERS, INC.**

1  their claims before this Court in a timely manner when they

2  haven't --

3          THE COURT:  I think you misunderstood me.  I'm not

4  talking about unnamed or unknown claimants.  Their rights have

5  not been prejudiced.  If there is a known claimant that is not

6  filed because they relied on advices that were received,

7  relying on the class action, those are the people I was talking

8  about.

9          MR. RIGHETTI:  Okay.  So, the Court-specific findings

10  are that the class of employees, for example, Gentry, dating

11  back from 1998 up until debtor filed for bankruptcy, those

12  individuals have not been prejudiced by not receiving notice?

13          THE COURT:  If there is somebody out there that

14  actually did not receive notice and doesn't know about Circuit

15  City bankruptcy case, and can come in and say that they didn't

16  know that they needed to file a proof of claim, then the law is

17  pretty clear that under due process rights that they're not

18  prejudiced.

19          MR. RIGHETTI:  Well, then, that's my point, Your

20  Honor, is for those individuals there are a lot of people that

21  I don't know about that didn't receive notice because it goes

22  back to 1998.  How are we going to communicate to those folks

23  that they need to be able to come forward before the Court with

24  a proof of claim?

25          THE COURT:  The Court's finding specifically on that

70

1  point was that the notice that was issued in this case was

2  sufficient for purposes of bankruptcy law and under the

3  guidance of the Fourth Circuit.  And so, we don't need to issue

4  that notice.

5        MR. RIGHETTI:  Okay.  Thank you, Your Honor.

6        THE COURT:  All right.

7        MR. GALARDI:  Your Honor, I need to indulge.  But

8  just so that Mr. Righetti understands, my view would be is if

9  he gave me the names of people he actually knew who said to him

10 -- he said to them, don't worry, I've taken care of it, we'd

11 like that, because we can do that by stipulation if the facts

12 are what he said.  Otherwise we understand your ruling, and

13 that was what I was offering.

14       THE COURT:  All right.  Thank you.  Do we have any

15 further business, then, today, in Circuit City?

16       MR. FOLEY:  Oh, we do, I guess, Your Honor.  Mr.

17 Joffe and I met in the conference room.

18       THE COURT:  Oh, yes.  Yes.  Please tell me what the

19 result of that was.

20       MR. FOLEY:  We've resolved it.  We've cleared it up

21 to his satisfaction, I believe, but he can address the Court if

22 I'm incorrect.  But there were two omnibus objections that were

23 filed to his employee claim.  One was in omnibus objection

24 number seven as a late claim.  There were two claims docketed

25 with the KCC agent, one on the 30th of January, one on February

J&J COURT TRANSCRIBERS, INC.

1  2nd.  The original objection we filed in omnibus objection

2  number seven was to object to the second filed claim as late.

3  He says he only filed one claim.  It may have been a situation

4  of duplicates getting docketed twice.  And so what we did was

5  we withdrew from the objection in omnibus number seven the

6  objection of lateness and instead objected to it under omnibus

7  objection number sixty-seven as a duplicative claim, so the

8  order that he handed -- that he was concerned about we went

9  over in the conference room and it provides that, in omnibus

10 objection number sixty-seven which has been submitted to the

11 Court for entry, that the claim to be disallowed is claim

12 number 10306 in the amount of $20,412, and the surviving claim

13 is the original one that he filed and wishes to pursue, is

14 claim number 5686 in the same amount, $20,413.

15          THE COURT:  And that's not been disallowed?

16          MR. FOLEY:  That has not been disallowed.  It is

17 still alive, and it's unobjected to.

18          THE COURT:  All right.  Mr. Joffe, do you understand

19 that?

20          MR. JOFFE:  Yes, sir.

21          THE COURT:  All right.  Thank you.

22          MR. JOFFE:  Thank you.

23          MR. FOLEY:  That concludes the business today, Your

24 Honor.  Thank you.

25          THE COURT:  All right.  Thank you all.


**J&J COURT TRANSCRIBERS, INC.**

1

* * * * *

## C E R T I F I C A T I O N

       I, TAMMY DeRISI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter to the best of my ability.


/s/ Tammy DeRisi                Date:  April 19, 2010
TAMMY DeRISI
J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**