April 19, 2010

Honorable Kevin R. Huennekens
United States Bankruptcy Judge
United States Bankruptcy Court
701 East Broad Street – Room 4000
Richmond, VA 23219

RE: Circuit City Stores, Inc., et al., Case No. 08-35653, Claim No. 13896 –
Disallowance of Certain No Liability Human Resource Claims

Honorable Huennekens:

This letter is response to the objection filed by the lawyers representing Circuit City Stores, Inc. in their bankruptcy proceedings. They are asserting that certain benefit plans sponsored by Circuit City Stores, Inc. were not benefit plans falling under ERISA and that the plans were amended and that no plan assets remain.

I was employed by Circuit City at the time of the bankruptcy announcement and was part of the wind down team until July 2009. I have knowledge of the amount of the excess funds in the plan in addition to the approximate number of participants which is how I calculated the dollar amount of my claim.

The plans in which I am seeking reimbursement were plans sponsored by Circuit City Stores, Inc. The company did not contribute to the cost of these plans and the plans in question were fully funded by employee contributions. To keep the excess money contributed by employees and forwarding to creditors and paying lawyer fees is unjust. The participants should get a refund for their over-contributions and should not be punished by the unfortunate circumstances that unfolded.

Circuit City Stores, Inc. failed in their fiduciary obligations. Under ERISA, a Summary of Material Modification (SMM) apprises participants and beneficiaries of material changes to the plan or to the information required to be in the Summary Plan Description. The SMM or an updated SPD for a group health plan must be furnished automatically to participants within 210 days after the end of the plan year in which such material change was adopted. However, if the changes to the plan or changes to the required information in the SPD result in a material reduction in covered services or benefits, then the SMM must be distributed no later than 60 days from the date the change was adopted. A material reduction is any plan change that eliminates benefits, reduces benefits payable, increases premiums, deductibles, coinsurance or co-payments, reduces the service area covered by an HMO, or establishes new conditions or requirements (such as pre-authorization) for obtaining services or benefits. Circuit City did not at any time provide an SMM.

The Dependent Care Spending Account (DCSA) was modified and the Summary Plan Description written in December of 2008 with an effective date of March 1, 2009 is the most recent and communicated Plan Document. The plan was established and maintained by Circuit City Stores, Inc. for the exclusive benefit of the plan participants and with Circuit City Stores, Inc. paying the administrative costs of the plan. The most recent plan document states that you have 90 days from the date of the end of the Plan Year to submit claims for reimbursement – not 90 days from the date of termination. Furthermore, forfeitures are assets of the company but can only be used to offset administrative expenses for the plan in question. Since the plan is terminated and there are no more administrative fees to pay, the excess should be returned to the participants. Those participants that were denied benefits because they requested reimbursement prior to May 31, 2009, should also be paid benefits because they followed the procedures outlined in the Summary Plan Description and were not given an SMM to know that the plan was being terminated and that claims had to be filed before that date. A Summary Annual Report (SAR) is also supposed to be sent yearly to participants. Circuit City Stores, Inc. failed to send the SAR for Plan Years 2008 and 2009. Circuit City Stores, Inc. willfully violated ERISA's reporting and disclosure requirements.

It was also stated in the objection that the Vision Care Plan and the Health Care Spending Account plans were amended to permit the use of any remaining plan assets to provide benefits or pay expenses under one or more of the other employee benefit plans maintained by the debtor. An ERISA plan is one that is set up exclusively for the benefit of the participants in that plan. Each plan is separate ERISA plan and documented by separate plan numbers and cannot be combined even with an amendment. Also, an amendment of this type cannot be made after an amendment was made to terminate the plan(s).

I would also like to note the definition of a Prohibited party under ERISA. Prohibited parties (called parties in interest) include the employer, the union, plan fiduciaries, service providers, and statutorily-defined owners, officers, and relatives of parties in interest. There is a long list of prohibitions including those that relate to fiduciaries who use the plan's assets in their own interest or who act on both sides of a transaction involving a plan. Fiduciaries cannot receive money or any other consideration for their personal account from any party doing business with the plan related to that business. In this case those that are denying the payment of this type of claim are acting on both sides of the transaction and stand to gain from denying payment. They will be rewarded by the number and the dollar amount of the claims that are denied.

By denying my claim, there are several ERISA civil violations that are occurring including but not limited to:

- Failing to operate the plan prudently and for the exclusive benefit of participants.
- Using plan assets to benefit certain related parties to the plan, including the plan administrator, the plan sponsor, and parties related to these individuals.
- Failing to follow the terms of the plan (unless inconsistent with ERISA).

- Taking any adverse action against an individual for exercising his or her rights under the plan (e.g., being fired, fined, or otherwise being discriminated against).
- Willfully violating ERISA's reporting and disclosure requirements.

I would also like to assert that my HIPAA Privacy rights were violated by Circuit City Stores, Inc. and their counsel when they released my name, address and enrollment information in the Debtors' Seventieth Omnibus Objection to Claims. They did not have my authorization to disclose this information to the other claimants.

I respectfully request that the debtors and their attorneys reconsider their denial and grant my claim for reimbursement. As this response is timely filed, I am not required to attend the status conference scheduled for April 29th. Should my appearance be necessary, please provide notice of such.

Sincerely,

*Jean S Hamby*

Jeanne Hamby

8406 Dell Ray Drive

Mechanicsville, Virginia 23116

Ph: 804-723-5928


Cc: Gregg M. Galardi, Esq.

Ian S. Fredericks, Esq.

Chris L. Dickerson, Esq

Dion W. Hays

Douglas M. Foley


Enclosures

Following are pages from Circuit City's "2009 Summary Plan Description and Benefits Book Health and Welfare Plans" Effective March 1, 2009 highlighting that the plans were employee funded. The entire document of 157 pages can be provided upon request.

## Administrative Information

## Plan Information

| PLAN NAME | FUNDING | CONTRIBUTIONS |
|---|---|---|
| Circuit City Stores, Inc. Health Care Plan<br>Plan #: 503 | Self-funded* | Company & Associates |
| Circuit City Stores, Inc. Traditional Dental Care Plan<br>Plan #: 501 | Self-funded* | Company & Associates |
| Circuit City Stores, Inc. Vision Care Plan<br>Plan #: 512 | Self-funded* | Associates |
| Circuit City Stores, Inc. Health Care Spending Account Plan | Self-funded* | Associates |
| Circuit City Stores, Inc. Dependent Care Spending Account Plan | Self-funded* | Associates |
| Circuit City Stores, Inc. Short Term Disability Plan | Self-funded* | Company |
| Circuit City Stores, Inc. Long Term Disability Plan<br>Plan #: 502<br>60% Long Term Disability Policy No. – 810018-15-00001<br>40% Long Term Disability Policy No. – 810018-16-00002 | Insured through Aetna Life Insurance Company | Associates |
| Circuit City Stores, Inc. Life Insurance Plan<br>Plan #: 510<br>Life Plan Policy No. 810018-13-00001<br>AD&D Policy No. 810018-14-00001 | Insured through Aetna Life Insurance Company | Company & Associates |

*Self- funded means that Circuit City Stores, Inc. pays all benefits from its general assets. There is no insurance contract, trust fund, or other method where funds are set aside to provide these benefits.

**Agent for Service of Legal Process:**
Circuit City Stores, Inc.
Attn: Corporate Secretary
9950 Mayland Drive
Richmond, VA 23233
Phone: (804) 527-4000

**Plan Sponsor and Plan Administrator:**
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233
Phone: (804) 527-4000

**Associate Service Center:**
Hewitt Associates
Associate Service Center
P.O. Box 563986
Charlotte, NC 28256-3986
Phone: (800) 288-6353

**Type of Administration:** Circuit City Stores, Inc. has the authority to control and manage the operation and administration of all Plans listed above. For certain Plans, Circuit City Stores, Inc. may delegate administrative responsibilities to a third party, such as an insurance company or other service provider, or to an Associate or committee of Associates. Please see the appropriate section of this booklet for specific administrative information about a particular Plan.

**Employer Identification Number (EIN):** 54-0493875

**Plan Year:** The financial records of the Plans are kept on a March 1 through February 28/29 Plan Year. The Plan Year ends each February 28/29.

**Other:** In the event that relevant facts about the Associate's enrollment are inaccurate or administrative errors occur, an adjustment will be made. Additional contributions from the Participant or a refund to the Participant may be required to correct the situation. In any event, the terms of each Plan and/or Company policy will prevail. The benefits described in this booklet do not constitute or imply employment contracts or any other contractual obligations between the Company and its Associates and/or other individuals eligible to participate in the Plans. Circuit City Stores, Inc. retains the right to modify or terminate any of the Plans at any time.

*Special Enrollment Rights*

If you decline coverage or if you gain a new dependent, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) provides you with special enrollment rights in certain cases if you had declined coverage for the year, or if you gain a new dependent through marriage, birth or adoption. If you declined coverage for yourself or your Dependents (including your spouse or your domestic partner) because you or your Dependent have other health care coverage, you may be able to enroll yourself or your Dependents in the Plan if your other coverage ends. You must contact the Associate Service Center and make your enrollment election within 30 days of the date the other coverage ends. In addition, if you gain a new Dependent as a result of marriage, domestic partner eligibility, birth, adoption or placement for adoption, you may be able to enroll yourself and your Dependents if you request enrollment through the Associate Service Center within 30 days after the marriage, domestic partner eligibility, birth, adoption or placement for adoption. In the case of enrolling after a birth or adoption, the new coverage will be retroactive to the date of birth or placement for adoption if you make the election within the 30-day period. You may also make new elections consistent with the Qualified Family Status Change rules described above.

*After-tax Retroactive Coverage for a New Child Following Birth or Adoption*

If you fail to make a coverage election under the Plan within 30 days following a birth or placement for adoption, you may nevertheless elect to cover the child retroactive to the birth or placement for adoption, provided that you make the election no later than 12 months after the birth/adoption. However, you will have to pay your share of the cost for such coverage on an after-tax basis. Whether the prospective coverage for the child will be pre-tax or after-tax will depend on when you elect to add the child. If you do so by no later than the end of the annual enrollment period following the birth/adoption, then the prospective coverage will generally be provided on a pre-tax basis. If you wait until after the annual enrollment period (but no later than 12 months after the birth/adoption), then your share of the cost of coverage will generally be on an after-tax basis until the beginning of the next Plan Year.

## Costs and Contributions

Benefits are a valuable part of Circuit City's total compensation package. Circuit City pays a portion or, in some cases, all of the costs for the Plans. Costs are subject to change. The chart below outlines who contributes to each Plan.

| PLAN | CIRCUIT CITY PAYS | YOU PAY |
|---|---|---|
| Medical Plan | Partial | Partial |
| Dental Care Plan | Partial | Partial |
| Vision Care Plan |  | 100% |
| Health Care Spending Account |  | 100% |
| Dependent Care Spending Account |  | 100% |
| Short Term Disability | 100% |  |
| Long Term Disability |  | 100% |
| Basic Life Insurance | 100% |  |
| Supplemental Life Insurance |  | 100% |
| Spousal and Child Life Insurance |  | 100% |
| Accidental Death & Dismemberment |  | 100% |

Monthly contributions are automatically deducted bi-weekly from participating Associates' paychecks. The amount of the deduction varies according to each Plan's provisions and your coverage level. Visit www.mycircuitcityhr.com for a list of current monthly Associate contributions.

## Claims and Appeals Review

The Plan will review your claim and make a decision within the allowable timeframe listed below.

- *Your Spending Account* will notify you within 90 days of any denial or send written notice for a 90-day extension.
- The initial claim review cannot exceed 180 days.
- You will have 60 days following receipt of denial to request an appeal.
- Circuit City must make a decision on the appeal within 60 days or send written notice for a 60-day extension.
- *The appeals review cannot exceed 120 days.*

# When Participation Ends

Your participation in the DCSA Plan will end on the earliest of the following:

- The last day of the month in which your employment ends, including retirement
- The last day of the month in which eligibility stops
- When required contributions stop being made
- When your election to participate in the Plan terminates (each February 28/29 unless you re-enroll at annual enrollment)
- When the Plan ends

If your participation in the DCSA Plan ends for any of the above reasons, you will generally have 90 days following the end of the Plan Year to submit claims for reimbursement, but only for expenses incurred prior to the termination of your participation.

## Continuation of Coverage during a Leave of Absence

According to the Company's Associate Leave Standard Operating Policy, while you are on a leave of absence, your Dependent Care Spending Account Plan benefits will continue for the first six months of your leave as long as you remain eligible. If you are on Military Leave, you may elect to continue your active coverage for up to twelve months.

You may not change, drop or add to your Dependent Care Spending Account benefit during a leave of absence, unless you experience a Qualified Family Status Change. Then you must follow the guidelines for changing coverage depending on the type of event. Refer to the "Qualified Family Status Change" section at the beginning of this booklet for more information.

If you become eligible to participate in the Plan while you are on a medical leave of absence, you must still enroll within the applicable enrollment periods. Effective dates will also be the same as if you were actively working. If you fail to enroll within the applicable enrollment periods, then you must wait until the next annual enrollment unless you experience a Qualified Family Status Change or an event that qualifies for special enrollment.