8080840

administration and supervision in connection with the Project and to maintain at all times an adequate supply of workmen and materials and to use its best efforts to perform the Work in the best workmanlike manner and in the most expeditious and economical manner, consistent at all times with the best interest of Owner. Contractor shall meet with Owner and Owner's agents, at such time, and from time to time, as Owner requests to review the Work and the progress schedule, and for such other purposes as Owner desires.

2.2   Commencing with the execution of the Agreement, Contractor shall furnish Owner with information concerning costs, availability of materials and equipment, methods of construction and other pertinent information which Contractor may possess or obtain and which may be of value to Owner in completing the Project. Contractor shall report to the Owner and Architect, in writing, any inconsistencies, errors and omissions in the Construction Documents which Contractor may observe or which may come to its attention, and Contractor shall require its subcontractors to report to Contractor or the Owner and Architect, in writing, any such inconsistencies, errors and omissions which they may observe or which may come to their attention.

2.3   Contractor shall provide for the benefit of the Project a competent and skilled field organization containing at all times a sufficient number of personnel to perform the Work and to supervise such performance, including a project manager, project engineers, superintendents and assistants, foremen, engineers and detailers, timekeepers and clerks, cost accountants, material checkers, watchmen, skilled and common laborers and such other workmen and supervisory personnel as the Work may require. Both the number of persons from time to time employed in connection with the Project by Contractor, and the persons so employed, shall be subject to the approval of Owner, which approval shall not be unreasonably withheld. Contractor shall supervise all of the Work, including all Subcontracted Work, and shall prepare all schedules, estimates and reports as reasonably required by Owner.

   (a)   Contractor agrees to appoint a "Project Manager" for the Work, which Project Manager shall be responsible for the administration of this Agreement so long as he shall remain in the employ of Contractor or can be retained by Contractor.

   (b)   Notwithstanding the foregoing, Contractor agrees that, at the written request of Owner, the Project Manager and any successor(s) thereto shall be replaced by Contractor and another person acceptable to Owner shall be immediately engaged by Contractor as Project Manager. The Owner shall have the same right as it relates to the project superintendent, project engineer, and other supervisory project personnel.

2.4   Contractor shall provide and maintain a sufficient number of temporary buildings for the operation of its field organization and each of its subcontractors, Owner and the Architect, as well as for storage of all materials and housing of machinery, tools and equipment. Contractor shall provide such other temporary construction and facilities as may be required for the Work. Contractor further agrees to utilize staging areas, if designated by Owner.

2.5   Contractor at all times shall provide adequate and sufficient machinery, equipment, tools and supplies as may be required for the Work.

2.6   Contractor shall negotiate and award subcontracts and purchase orders subject to the terms of the Contract Documents. Owner shall have full access and rights to all information concerning the negotiation of all Subcontracted Work, purchase orders and all awards thereof in excess of Five Thousand Dollars ($5,000.00).

   (a)   All purchases shall be made utilizing standard written purchase order forms. Each purchase order shall set forth in detail the pertinent data as to its terms and conditions consistent with the Agreement.

8080840

(b)     If requested by Owner, Owner shall be furnished with two (2) executed copies of all purchase orders and subcontract awards in excess of $5,000.

(c)     Whenever reasonably requested by Owner in advance of the award of any subcontracts or purchase orders, Contractor shall establish unit prices ("Unit Prices") as part of the subcontracts or purchase orders. Such Unit Prices shall be established for additions as well as deletions.

2.7     Contractor shall have full and complete authority and responsibility for the performance of all Subcontracted Work, and for each of its subcontractors and material suppliers. Contractor shall be fully responsible to Owner for the acts and omissions of each of its subcontractors and material suppliers, and of persons employed either directly or indirectly by them, and for the acts and omissions of Contractor's own employees, which responsibility shall be unaffected by any bankruptcy proceedings affecting any of them or any other inability to perform their obligations. Contractor agrees that no portion of the Contract Documents, nor any contract entered into between Contractor and any of its subcontractors or material suppliers, shall create any direct contractual relationship between any of such subcontractors or material suppliers and Owner.

2.8     Contractor shall purchase all materials and services required for construction of the Project and as otherwise required to perform fully all of the Work.

2.9     Contractor shall cooperate with Owner's fixture contractor(s) in the coordination of the installation of store fixtures without additional compensation.

2.10    Contractor shall cooperate with Owner and Architect at all times in order to obtain all necessary permits, authorizations, bonds and licenses required by any governmental authority having jurisdiction over all or any part of the Work.

2.11    All Work performed for the Contractor by a subcontractor shall be pursuant to an appropriate agreement between the Contractor and the subcontractor (and where appropriate between subcontractors and sub-subcontractors), which agreements shall be subject to Owner's review and approval, and which shall contain provisions that:

(a)     Preserve and protect the rights of the Owner in accordance with the Contract Documents;

(b)     Make such subcontract subject to the terms of the Agreement and the other Contract Documents and require that such Work be performed in accordance with the requirements of the Contract Documents;

(c)     Require submission to the Contractor of applications for payment under each subcontract to which the Contractor is a part, in reasonable time to enable the Contractor to apply for payment in accordance with the Agreement;

(d)     Require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to Subcontracted Work shall be submitted to the Contractor (via any subcontractor or sub-subcontractor where appropriate) in sufficient time so that the Contractor may comply in the manner provided in the Contract Documents for similar claims by the Contractor upon the Owner;

(e)     Waive all rights the Contractor and subcontractor may have against one another or the Owner for damages caused by fire or other perils covered by the property insurance described in the Agreement, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee; and

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 6

8080840

(f)     Obligate each subcontractor specifically to consent to the provisions of this Paragraph 2.11. The Contractor shall make available to each proposed subcontractor, prior to the execution of the subcontract, copies of the Contract Documents to which the subcontractor will be bound by this Paragraph 2.11, and identify to the subcontractor any terms and conditions of the proposed subcontract which may materially vary from the terms and conditions of the Contract Documents. Each subcontractor shall similarly make copies of the Contract Documents available to his sub-subcontractors.

2.12    Contractor's Design Responsibilities shall include, but not be limited to the following:

2.12.1    Structural design of all temporary construction, equipment and appliances used in the performance of the Work and not a permanent part thereof, including, but not necessarily limited to, hoisting equipment, cribbing, shoring and the temporary bracing of structural steel, is the sole responsibility of the Contractor. All such items shall conform with the requirements of governing codes and all rules, regulations and orders of all authorities having jurisdiction.

2.12.2    Contractor shall not impose loading upon any part of the Work under construction or upon existing construction upon or adjacent to the site of the Work, in excess of safe limits, or loading which will damage the structural, architectural, mechanical, electrical or other components. All damage which occurs as a result of overloading shall be repaired or the damaged Work replaced at Contractor's sole expense, all as directed by the Owner.

2.13    Coordination by Contractor shall include, but not be limited to the following:

2.13.1    Contractor and each subcontractor shall be responsible for examining all Drawings, all sections of Specifications and all items of addenda and all modifications to inform themselves of requirements for their part of the Work. Owner assumes no responsibility for omission of an indication of an item or part of Work from a location on one Drawing which is indicated on any other Drawing. Specifications are divided into sections for convenience of Contractor. Items or parts of Work specified shall constitute the responsibility of Contractor regardless of where they are located in Specifications.

2.13.2    Contractor shall supervise all measurements taken in the field necessary to insure timely fabrication, delivery, and proper fitting together of the entire Work.

2.14    Contractor recognizes and agrees that certain items to be incorporated into the Work may be purchased and supplied by Owner (hereinafter "FBO Items"). Contractor shall be responsible for coordinating the delivery and receipt of all FBO Items for the Project to be incorporated into the Work. Contractor shall offload, handle, store and as appropriate, incorporate all FBO Items into the Work in accordance with the Contract Documents. In the event particular FBO Items are to be installed, hooked up or commissioned by others, Contractor shall prepare the necessary locations and adjoining elements of the Work to accept such items, and shall coordinate Contractor's activities so as to facilitate installation or incorporation of such FBO Items by Owner's other contractor or supplier.

3.0    **Owner Duties**

3.1    The Owner shall provide surveys showing the boundaries of the property, easements and location of underground utilities.

3.2    The Owner shall obtain and pay for all necessary easements.

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 7

8080840

3.3    Decisions and approvals required of the Owner shall be rendered with reasonable promptness, so as not to delay the Work.

3.4    The Owner shall provide the Contractor with soil and subsurface reports relating to the Project, to the extent such exist, and Contractor timely requests such information. Owner shall have no responsibility for the information contained therein or the accuracy thereof. All soil, geotechnical and related subsurface information is intended for Owner's benefit, and Contractor is not entitled to rely upon such information. In the event Contractor desires or requires soil, geotechnical or subsurface information, Contractor shall obtain such information at Contractor's sole expense.

3.5    The Owner shall pay all property taxes and property assessments levied against any portion of the Project.

3.6    The Owner shall appoint a Construction Manager as its full-time representative on the Project with whom the Contractor may consult and whose instructions and decisions shall be binding. No Change Order, Field Order or bulletin shall be valid or effective unless authorized on behalf of the Owner by the following appointed individuals within the limits shown:

| | |
|---|---|
| Richard Moore Construction Manager | Maximum $5,000 - Cumulative monthly |
| Thomas G. Drapac – Director Of Construction | Maximum $25,000.00 – Cumulative Monthly |
| John B. Mulleady - Vice President – Construction | Amounts in excess of $25,000.00 |

3.7    The Owner shall make all payments due Contractor in accordance with the Agreement.

3.8    The Owner's agreement with the Architect may provide for the Architect's obligation to:

(a)    Produce Construction Documents which comply with all applicable codes and regulations.

(b)    Review all shop drawings, samples and other submissions of Contractor and its subcontractors for conformance with the design requirements of the Project and for compliance with Construction Documents. Architect shall not be responsible for checking exact dimensions of shop drawings.

(c)    Interpret, as requested by Owner, the Construction Documents and coordinate the design and engineering of all systems and subsystems to assure that the architectural, structural and mechanical elements and components will be complete and compatible.

3.9    Owner retains the right to award separate contracts relating to portions of the Project as Owner, in its sole discretion, deems appropriate. Contractor agrees to sequence and coordinate the Work with such separate contracts at no additional cost to Owner.

3.9.1    Contractor shall afford other contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their portions of the Work, and shall properly connect and coordinate his Work with theirs.

3.9.2    If any part of Contractor's Work depends for proper execution or results upon the Work of any other separate contractor, Contractor shall inspect and promptly report to the Owner any apparent discrepancies or defects in such Work that render it impossible for such proper execution and results. Failure of Contractor to so inspect and

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 8

8080840

report shall constitute an acceptance of the other contractor's Work as fit and proper to receive his Work, except as to defects which may develop in the other separate contractor's work after the execution of the Contractor's Work.

3.9.3    Should Contractor cause damage to the work or property of any separate contractor on the Project, the Contractor shall, upon due notice, settle and resolve such dispute with such other contractor. If such separate contractor sues the Owner or initiates a dispute proceeding on account of any damage alleged to have been so sustained, Owner shall notify Contractor who shall defend such proceedings at Contractor's sole expense; and if any judgment or award against Owner arises from such proceedings, Contractor shall pay or satisfy it and shall reimburse Owner for all attorneys' fees and dispute resolution costs which Owner has incurred.

3.10    In accordance with Section 12.6 herein, the Owner may, at its election, decide all claims, disputes and other matters in question between the Contractor and the Owner relating to the performance of the Work or the interpretation of the Contract Documents. Such decision will be rendered in writing within a reasonable time. The Owner may refer any such claim or dispute to the Architect. The Owner's decision, or the Architect's, if referred by or from the Owner's Vice President - Construction, shall be final and binding on the parties.

**4.0    Contract Sum and Cost of Construction**

4.1    Notwithstanding anything to the contrary contained in the Contract Documents, Contractor shall fully, timely and completely perform the Work in accordance with the Contract Documents for the Contract Sum. The Contract Sum may be increased or decreased only as provided in the Agreement. Contractor shall be entitled to no other compensation for construction of the Work and Contractor's sole remuneration shall be the amount of the Contract Sum. Notwithstanding anything to the contrary contained in the Contract Documents, the Owner may withhold up to 150% of any payment to the Contractor under the Contract Documents in addition to retained amounts if and for so long as the Contractor fails to perform any of its obligations under the Contract Documents or otherwise is in default under any of the Contract Documents; provided, however, that any such holdback shall be limited to any amount sufficient in the reasonable opinion of the Owner to cure any such default or failure of performance by the Contractor. In the case of a contract containing a Guaranteed Maximum Price, all cost savings accrue to the Owner.

**5.    Changes in the Work**

5.1    "Change Order" shall mean (i) any written amendment or modification to the Agreement or the other Contract Documents signed by both Owner and Contractor and (ii) any change in the Work ordered by Owner pursuant to Paragraph 5.3 or requested by Contractor and agreed to by Owner pursuant to such provision.

5.2    "Field Order" shall mean a written instruction by the Owner instructing the Contractor to perform certain activities and to incorporate such labor, services, materials and equipment into the Work in accordance with Paragraphs 5.3 and 5.4 below. Field Orders may be issued by the Owner prior to agreement on adjustment, if any, in the Contract Sum or Contract Time.

5.3    Owner reserves the right to order in writing alterations, additions to or deletions from the Work from the Contract Documents at any time prior to completion and acceptance of the Work by Owner. Contractor shall comply with any and all such Field Orders, or as appropriate, Change Orders. Contractor may request or propose changes in the Work; provided, however, Owner shall be under no obligation to agree to or accept any such requested or proposed change. Contractor shall not make any change or deviation from the Construction Documents without Owner's prior written approval, and Contractor at all times shall be fully liable to Owner for any unauthorized changes in or deviations from the Construction Documents. Except where expressly provided in the Agreement, no Change Order shall be made, nor shall any adjustment in the Contract Sum or Contract Time

8080840

be recognized hereunder, unless Contractor shall have received a written Change Order or Field Order executed by Owner prior to making any such change.

5.4    In the event it is undetermined or it is disputed whether an order by Owner with respect to the Work constitutes a change in the Work, and thus, whether a Change Order is appropriate, Owner reserves the right to issue a Field Order concerning such labor, services, materials and equipment, and Contractor shall, without delay, fully and completely take, or cause to be taken, all such actions necessary to incorporate such labor, services, materials, and equipment into the Project. Contractor's compliance with a Field Order is without prejudice to Contractor's rights, provided that Contractor complies with all requirements of the Contract. In the event Contractor believes a Field Order, or some part thereof, constitutes a change in the Work, Contractor shall timely and completely follow the procedures associated with Change Orders set forth herein. In no event shall Contractor delay or stop the Work or cause any adverse impact to the Contract Schedule as a result of questions or disputes relating to the appropriateness or necessity for a Change Order.

5.5    Whenever the necessity for a change arises, and when so ordered by Owner in writing, Contractor shall take all steps necessary to halt any Work in the area of the change that might be affected by the change. Changes in the Work shall be performed fully and completely and in accordance with the Drawings and Specifications, except for the deviations specifically called for by the Change Order. Materials utilized in the changed Work shall be as specified in the Contract Documents insofar as the Contract Documents do not conflict with the conditions set forth in the Change Order.

5.6    Whenever a Field Order directing work is received by Contractor, or Contractor requests a change, Contractor shall prepare and submit to Owner a full and completely detailed estimate of the cost of the Work for such direction or change and, as applicable, an estimate of the additional time required by Contractor within which to perform which would extend the Date of Substantial Completion and/or of the reduction in costs and time due to the omission of Work which was to have been performed for the Contract Sum. Estimates of costs for added Work shall be based upon the cost to Contractor for such Work at market values current at the time the directed or changed Work is requested, unless otherwise covered by Unit Prices. Estimates of the amount to be deducted from the Contract Sum due to the omission of Work shall be based upon the cost of the Work to Contractor for the labor, materials and equipment which would have been used on such Work, using the same values thereof at the time the Contract Sum was established, unless otherwise covered by Unit Prices. Contractor shall include no more than Seven percent (7.0%) of the cost of such Work as full compensation for Contractor's field overhead, general conditions, main office overhead and profit. The same percentage used for Contractor's field overhead, general conditions, main office overhead and profit shall apply to both additive and deductive change orders.

5.7    The estimates to be provided by Contractor shall contain the following information:

(a)    For any portion of the directed or changed Work which shall be performed by a subcontractor, Contractor shall furnish Owner with a detailed estimate of the costs to the subcontractor for labor, materials and equipment to be used, and any other applicable costs charged by such subcontractor, including a markup by the subcontractor not to exceed fifteen percent (15%) on all direct labor and materials purchased. Subcontractor will be allowed five (5%) markup on all sub-subcontracted work only to cover the subcontractor's supervision, general conditions, general overhead and profit, unless otherwise approved in writing by Owner prior to award of the subcontract.

(b)    Sub-subcontractors' charges shall be limited to the terms of the preceding paragraph. A sub-subcontractor's markup on a lower tier sub-subcontractor's total charges shall not exceed five percent (5%) of the cost of such charges, unless approved in writing by Owner prior to award of the subcontract and shall specifically not include any other additional markup for overhead and profit.

Exhibit A                                                                                                                                PAGE 10
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

8080840

5.8     Except as otherwise provided below, Contractor's quotations, supported by detailed estimates, shall be submitted within ten (10) days after the Field Order directing the work or the change is received by Contractor, or Contractor requests a change. Contractor's quotation shall include the period of time allowed for approval by Owner, which shall be not less than ten (10) days. Any change which the Contractor feels will require additional time extension to achieve the dates set forth in Paragraph 7.2 shall be handled pursuant to Paragraph 7.5 herein as it relates to the requested time extension.

5.9     Changes in the Work required as a result of imminent peril to persons or property, discovery of errors in the Construction Documents requiring immediate clarification in order to avoid a serious work stoppage, changes of a kind where the extent of the Work involved cannot be determined until completed, and unexpected or unforeseen site conditions or changes under any other circumstance when deemed necessary by Owner may be authorized by Owner upon written notice thereof to Contractor or, in the case of imminent peril to persons or property, orally, where it is obvious that the change must be ordered immediately. Contractor shall commence performance of any such change immediately upon receiving such authorization. After commencing any such change, Contractor shall submit a detailed estimate within the same time and in the same manner set forth above for ordinary changes. Contractor also shall submit time and materials records for such Work until an agreement is reached upon the appropriate adjustment to the Contract Sum.

5.10    In the event that Owner and Contractor fail to agree on any adjustment in the Contract Sum for any change in the Work pursuant to a Change Order or a clarification of the Construction Documents which Contractor claims is a Change Order, Contractor, upon issuance of a Field Order from Owner, shall immediately proceed to perform the Work which is the subject of the Field Order or a Change Order dispute or discussion. Contractor shall create and maintain for each day's work a daily work sheet containing a detailed summary of the actual costs of the labor, materials and equipment used in the Work which is the subject of the Field Directive, in a form to be approved by Owner. Contractor similarly shall indicate all savings in labor, materials and equipment, as well as supervisory personnel, in connection with that portion of the Work which is the subject of the Field Order. Where Contractor performs Work subject to a Field Order at locations away from the job site, in lieu of such daily work sheet, Contractor shall furnish a detailed statement of labor, material and equipment used on such Work. In addition, upon completion of such Field Order Work, Contractor shall furnish Owner with a detailed time and materials statement of the cost of the Work as a result of such Field Order.

5.11    All of the information to be provided by Contractor pursuant to this Section 5 shall be provided in such detail that quantity, unit of work, labor, material, equipment and incidentals required to perform the Work are clearly identified and itemized either in assembly or unit prices, or as further the Owner may reasonably require. All statements and work sheets to be provided by Contractor with respect to changes in the Work shall be signed by Contractor, who shall certify, warrant and represent that to the best of Contractor's knowledge the information is true and correct, but such certification shall not preclude subsequent adjustment based upon a later audit.

5.12    For any additive changes in the Work, Contractor shall be entitled only to such adjustment in time by which the Date of Substantial Completion (as defined herein) is delayed due to performance of the added Work. Each estimate for an addition to the work submitted by Contractor shall state the amount of additional time that Contractor considers that the Date of Substantial Completion will be delayed as a result of the requested change. Failure to request additional time when submitting such estimates shall constitute a waiver by Contractor of any right to claim subsequently any adjustment in the time for the Date of Substantial Completion based upon such changed Work. In each instance the request for additional time shall include appropriate credit for time saved as a result of changes in or deletions to the Work. Appropriate changes in time for deductive changes to the Work shall be handled in the same manner. Contractor nonetheless shall have the right to request a Change Order extending the Date of Substantial Completion when the cumulative effect of several Change Orders, by the nature

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 11

8080840

of the Work described therein, reasonably causes the time of performance to exceed the aggregate of the time extensions already allowed in the same Change Orders. It is the Contractor's obligation to demonstrate to the Owner how any requested time extension has adversely impacted the Project's Critical Path Schedule. Only time extensions which have been demonstrated to adversely impact the Project's Critical Path Schedule shall constitute a valid time extension for extending the Date of Substantial Completion.

5.13 The cost or credit to the Owner resulting from a change in the Work shall be determined in one or more of the following ways:

(a) By mutual acceptance of a sum properly itemized and supported by sufficient substantiating data to permit evaluation;

(b) By unit prices stated in the Contract Documents or subsequently agreed upon;

(c) By cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

(d) If none of the methods set forth above in 5.13(a), 5.13(b) or 5.13(c) is agreed upon, the Contractor, provided he receives a Field Order, shall promptly proceed with the Work involved. The cost of such Work shall then be determined by the Owner on the basis of the reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Sum, a reasonable allowance for overhead and profit not to exceed the amounts set forth in Paragraphs 5.6 and 5.8 above, as appropriate. In such case, and also under 5.13(c) above, the Contractor shall keep and present, in such form as the Owner may prescribe, an itemized accounting together with appropriate supporting data for inclusion in a Change Order. All indirect costs whether incurred on or off the Project Site shall be included in the Contractor's overhead. Such indirect costs include, without limitation, insurance, taxes, bonds, salaries of Contractor's personnel unless the Work is performed with Contractor's own forces, local travel, and expenses of Contractor's principal and branch offices.

5.14 In the event Owner and Contractor are unable to reach agreement on issues relating to or concerning Field Orders, Change Orders, request for a Change Order, or any other aspect of the Work, such dispute and issues shall be decided in accordance with the provisions of Paragraph 12 herein.

6. **Payment By Owner**

6.1 Owner shall pay the Contract Sum in the manner and at the times hereinafter specified in the agreement. All applications for payments must be submitted on Owner's payment forms and be accompanied by waivers of claims and liens from Contractor and all "major" subcontractors and material suppliers for the portion of Work certified to be in place for which payment has been made. "Major" subcontractors and material suppliers will be regarded as those whose contract sum exceeds Ten Thousand Dollars ($10,000.00) for their respective portion of the Work.

6.2 On or about the 25th of the month the Contractor shall deliver to the Owner for its approval, , an itemized written statement on forms approved by Owner showing (i) the actual cost and the amount which is due and payable with respect thereto for Work completed and the projection of the work to be completed to the end of the month (in place and incorporated into the Work) and materials stored at the Project site or at Owner approved off-site storage areas, as itemized per Contractor's schedule thereof, during said month less all applicable retentions therefrom, (ii) the percentage of the Work completed during such month and the total percentage of the Work completed through such month, and (iii) an updated progress CPM schedule for the Work.

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 12

8080840

6.3     On or about the twenty-fifth (25th) calendar day of each month, Owner shall remit to Contractor with respect to the preceding month that portion of the Contract Sum that the Owner approved in its "Certificate of Payment" and excluding from such amount: (i) a retention equal to ten percent (10%) of the approved amount of such Work (including the General Contractor Work, the Subcontracted Work) as defined herein, (ii) any amount in excess of the cost of the Work performed by Contractor during such month, (iii) any portion of the cost of the Work for such month to the extent it exceeds the cost of the Work attributable to the percentage of the Work completed during such month, and as applicable, (iv) any additional amounts Owner is entitled to withhold pursuant to the terms of the Agreement.

6.4     Contractor shall at all times make available to Owner records and invoices of all disbursements made by Contractor for materials, labor, payments to subcontractors and other expenses incurred by Contractor. To the extent any discounts, rebates or other credits are due Owner on account of Owner's prepayments or otherwise, all such discounts, rebates and other credits shall appear in said statements as credits due to the Owner.

6.5     Owner may withhold payment to Contractor to the extent necessary to protect Owner upon the occurrence of any one or more of the following events:

   (a)     any failure of Contractor to comply fully with any requirement of the Contract Documents, including any failure of Contractor to make any payment to any subcontractor or material supplier without cause;

   (b)     any failure of Contractor to substantiate that previous payments made by Owner have been applied as provided by this Section 6, regardless of whether Contractor has a legitimate dispute with a subcontractor or material supplier;

   (c)     the filing, delivery or recordation of any claim, lien, stop notice or similar matter against Owner, Contractor, any subcontractor, sub-subcontractor, materials supplier or the Project, or the existence of any allegation or dispute concerning payment or performance between any of such parties, notwithstanding any failure of any of them to file, deliver or record any notice or similar required by law; provided, however, the amount which Owner may withhold pursuant to this subparagraph (c) shall be limited to payments to Contractor for General Contractor Work and payments with respect to the Work performed by the claimant involved, subject to the further limitation that the amount so withheld shall not exceed the greater of (i) the amount(s) claimed or in controversy or (ii) the face amount(s) of any and all bonds posted by the Owner to release any mechanics' or similar liens filed against the Project or any part of the Owner's property, plus twenty-five percent of such face amount(s) as reasonable attorneys' fees to defend any actions on such bonds; and provided further that if Contractor provides a bond for the benefit of Owner pursuant to Paragraph 8.5 hereof with respect to the amount claimed or in controversy, the Owner will not withhold payments with respect thereto; or

   (d)     any damage caused to any other contractor or subcontractor by reason of the negligent acts of Contractor, or persons or entities for whom Contractor is responsible.

7.     **Contract Time and Schedule**

7.1     Contractor shall commence the Work promptly after receipt of a Letter of Intent/Notice to Proceed in the form set forth in Exhibit F attached hereto issued by Owner and shall prosecute the Work diligently to completion. The Work (including the relevant portions thereof referred to below) shall be completed on the date(s) agreed upon by Owner and Contractor as set forth below. The "Date of Substantial Completion" of the

Exhibit A                                                                                                      PAGE 13
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

8080840

Work is the date when (i) the Work is sufficiently completed, in accordance with the Construction Documents, as modified by any Change Orders, so that the Owner can fully occupy the Project for the use for which it was intended, (ii) if the Project is located in a state which provides for the filing of a notice of completion or similar notice, a valid notice of completion or similar notice may be recorded, and (iii) the local governmental authority having jurisdiction over the Project has issued its final certificate of occupancy for all of the Work. The "Date of Final Completion" of the Work is the date when any and all corrective Work ordered by the Owner, after a semi-final inspection, has been consummated to the Owner's satisfaction. The "Certificate of Final Completion" shall be a document issued by the Owner after the Date of Final Completion and after final inspection has been made and shall not be unreasonably withheld. Notwithstanding the above, Owner may allow minor corrective Work to be completed after the Certificate of Final Completion is issued. Issuance of the Certificate of Final Completion fixes the Date of Final Completion and must be issued prior to final payment by the Owner, with exceptions contained in this Agreement.

    7.2    Ten (10) days following Owner's notice to proceed, Contractor shall provide to Owner the Critical Path Schedule, showing timely completion of the Work as required by the Agreement. Upon receipt of the initial Critical Path Schedule, Owner may accept same as submitted or reject and note deficiencies. If the schedule is rejected, the deficiencies noted shall be corrected and a new schedule shall be submitted within ten (10) days. In any case, the complete Critical Path Schedule must be approved by Owner prior to any payments being made. The Critical Path Schedule shall be in the form of a network using Critical Path Methodology (CPM), clearly showing construction activities, dependencies and durations. The critical path activities shall be highlighted and float time for non-critical activities shall be listed. Longer duration activities shall be broken into sub-activities when the Work can be completed in phases (i.e., south half, north half, etc.). Contractor will be allowed flexibility in schedule logic and content; however, the following activities must be included in all cases: (a) award of contract; (b) pad delivery and move on; (c) pour foundations; (d) underground utilities; (e) pour slabs (phase); (f) exterior walls (phase); (g) columns; (h) floor and roof structure (phase); (i) roof decking; (j) roofing (drying); (k) HVAC duct work; (l) fire sprinkler piping; (m) interior stud walls (phase); (n) drywall; (o) lathe and plaster (phase); (p) painting (phase); (q) delivery of long lead materials; (r) contract dates; and (s) anticipated weather delays. In the event Contractor falls behind the Critical Path Schedule, or otherwise fails to progress properly towards timely completion of the Work, Owner shall have the right to require Contractor, without cost or expense to Owner or change in the Contract Sum, to take all steps necessary to improve progress, including, without limitation, overtime work and additional days, and to submit for Owner's approval a revised Critical Path Schedule showing the manner in which the originally scheduled progress will be restored and the Work timely completed as required by the Agreement. Contractor shall keep the Critical Path Schedule current to reflect changes caused by delays permitted hereunder. A Critical Path Schedule showing the latest schedule and actual status of the Work shall, in any case, be submitted on a monthly basis with the pay request.

    7.3    Should Contractor, in the opinion of Owner, fail, refuse or neglect to supply a sufficient number of workmen, adequate equipment, or to deliver materials with such promptness as to prevent any delay in the progress of any portion of the Work resulting in Contractor's (or any of its subcontractors' or suppliers') failure to prosecute the Work to completion in a timely manner, then, in addition to any and all other rights and remedies of Owner, Owner shall have the right upon five (5) days' prior written notice, to direct Contractor to furnish additional labor, including overtime, and to expedite delivery of materials which shall be sufficient to accelerate and complete the Work, and the Contract Sum shall not be increased on account of such direction by Owner. Nothing contained herein shall be deemed to preclude Contractor's right, following completion of the Work, to contest by appropriate proceedings any determination by Owner that additional workmen or expedited deliveries were appropriate. Should Contractor neglect or refuse to comply with such directive, Owner shall have the right (but not the obligation) to obtain and pay for such goods and services directly, and the Contract Sum shall be reduced in a like amount, and, in addition thereto, Owner may exercise any other right or remedy granted by this Agreement (including termination hereof for cause) or granted by law. The payment thereof by Owner pursuant to the foregoing shall not be deemed to cure or waive Contractor's default.

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 14