8080840

  18.3.6  Reference to Specification section and Drawing sheet number.

 18.4 Upon approval, the samples will be stamped or labeled to indicate approval and one of the samples returned to Contractor. The approved sample retained by the Architect will constitute the standard of quality and appearance of all materials of the type represented by the samples to be installed. In the event samples are not approved, Contractor will be given the reasons for disapproval and shall re-submit samples until approval is obtained.

 18.5 At the option of Owner or Architect, samples will be subject to testing, and in such event such additional samples as may be required, shall be supplied by Contractor at no additional cost.

## 19. Record Drawings and Maintenance Instructions

 19.1 Contractor shall furnish Owner a CD with a complete set of electronic record drawings for the Work of each trade section where so required by the technical section, and one set of printed record drawings. Record drawings shall be prepared and submitted to Contractor by each of the subcontractors as required in compliance with the following Paragraphs.

 19.2 Each subcontractor shall provide and keep current a complete "as-built" record set of blueline prints, which shall be corrected daily and shall show every change from the original Drawings and Specifications, and shall show the exact "as-built" locations, sizes and kinds of equipment. Prints for this purpose may be obtained from the Architect at cost. This set of drawings shall be kept on the job site and shall be used only as a record set. The foregoing shall not be construed as authorization to Contractor to make changes in the layout without definite authorization in each case.

 19.3 At the completion of the Project, Contractor shall deliver to the Architect two (2) copies (or such number is otherwise specified elsewhere in the Contract Documents) of manufacturer's manuals providing for Owner's guidance full details of the suggested care and maintenance of all visible surfaces and equipment included in this Project.

 19.4 Contractor shall furnish all literature of each manufacturer relating to equipment, including motors or other manufactured equipment. He shall also submit cuts, wiring diagrams, instruction sheets and all other information pertaining to same that would be useful to Owner in the operation and maintenance of same, to the extent that this information is reasonably available from manufacturers and/or is not shown on the as-built drawings.

## 20. Materials and Equipment

 20.1 Contractor warrants to Owner that all materials and equipment furnished under the Contract Documents will be new and the best of their respective kinds, unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards may be considered defective. If required by Owner, Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. The warranty provided in this Section shall be in addition to and not in limitation of any other warranty or remedy required by law or by other portions of the Contract Documents.

 20.2 Especially manufactured or fabricated Work made to detail and delivered to the site with the intention of forming a part of the permanent structure, when accepted, shall be considered as the property of Owner, and the value thereof, upon acceptable substantiation, may be included in the periodic requests for payment. Form lumber and bulk building materials, including brick, aggregate and cement, shall be considered as the property of Contractor until actually incorporated into the Work, and the value thereof shall not be included in the periodic requests for payment.

8080840

20.3   Insofar as is practicable, material of one manufacture for each specific purpose shall be used throughout the Project, except where otherwise required, and where the nature of such allows, shall be delivered to the site in original and unbroken cases, cartons or containers with the name or brand of the manufacturer plainly marked thereon.

20.4   Owner reserves the right to purchase material or supplies directly and furnish them to Contractor for installation in compliance with the Contract Documents. Contractor agrees to accept all FBO materials and incorporate same into the Work as required by Owner.

20.5   Construction materials which do not become a permanent part of the construction and which have previously been used in the Work and are proposed to be re-used, shall be sorted as to class, size and kind and piled and stored in an orderly manner and kept readily accessible. Such materials may be re-used in the Work, provided they are structurally sound, clean, entirely suitable and approved for the intended use by Owner. Re-used form lumber for exposed concrete surfaces shall be of such quality so as to produce concrete surfaces of the same appearance and quality as the surfaces produced by the initial use of the forms.

20.6   Where installation of Work is required to be performed in accordance with the product manufacturer's instructions, Contractor shall, unless otherwise provided in the Contract Documents, procure and distribute the necessary copies of such instructions. Manufacturer's instructions shall be subject to approval and/or modification by the Owner. Unless otherwise required, Contractor shall obtain and deliver to the Owner two copies of such instructions at least two weeks prior to start of the Work involved.

21.   **Substitution of Material**

21.1   Where materials, equipment or process are specified in a Specification by patent, proprietary name or name of the manufacturer, such Specification shall, unless otherwise specified or restricted, be deemed to be used for the purpose of establishing a standard for that particular item and shall be deemed to be followed by the words "or other as approved by the Architect or Owner." Any bidder, manufacturer or distributor may offer for approval any material, item of equipment or process which he considers to be equal in every respect to that indicated or specified.

21.2   Requests for approval of materials, equipment or processes not named in the Specifications shall be submitted in writing as a part of the submission of proposals. Requests for approval shall be accompanied by such supplemental technical information and/or samples, where required, as may be necessary for evaluation of the product.

21.3   If, in the opinion of the Owner or Architect, the suggested substitution is equal to the material, equipment or process originally specified, or otherwise fulfills the requirements of the Project, the approval will be confirmed in writing to Owner and Contractor. Approval of proposed substitutions shall not be deemed to have relieved Contractor of responsibility for the proper execution of the Work nor from warranty and maintenance requirements imposed by the Contract Documents.

21.4   Where no substitutions are proposed or approved in conformity with the provisions of this Article, then no deviation from the materials, equipment or process specified will be allowed, excepting only the following cases and provided in each such case the substitution has been approved by the Owner or Architect:

21.4.1   The manufacture or production of the specified material, process or equipment has been discontinued.

21.4.2   The specified material, process or equipment is not available in sufficient quantity or quantities to complete the Work. Failure of Contractor to award subcontracts in sufficient time, or failure of Contractor or the subcontractor involved to place orders for materials so as to insure delivery without delaying the Work, will not constitute cause for approval of substitute materials.

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 31

8080840

21.4.3    Delays beyond the control of Contractor, such as strikes, lock-outs, storms, fires or acts of God, which preclude the procurement and delivery of materials or equipment for purposes of the Project, and for such other reasons as the Owner or Architect may deem to justify the substitution.

## 22.    Workers and Workmanship

22.1    Contractor and its subcontractors shall at all times enforce strict discipline and good order among their employees, and shall not employ on the Work any unfit person or anyone not skilled in the task assigned to him.

22.2    Contractor shall not employ any labor on its own payroll nor allow any subcontractor to employ any labor which may cause dissension with other workers on the premises.

22.3    The workmanship of apprentices and helpers shall not be allowed where that of journeymen and master mechanics is necessary to obtain the required standard of workmanship. Workmen employed shall be competent and skilled in the performance of their particular Work and shall be employed under the prevailing local working conditions and in the status customary in projects of the size and type involved. Workmen or supervisory personnel deemed incompetent or improperly employed, or whose Work on this Project could result in a work stoppage or unacceptable results, then or at any subsequent time during the Project, shall be dismissed forthwith and shall not be re-employed on the Project. The fact that journeymen or master mechanics were employed in the execution of sub-standard Work shall have no effect upon the acceptance or rejection of such Work.

22.4    In the hiring of employees for the performance of Work by Contractor or any subcontractor, neither Contractor nor any subcontractor shall by reason of race, religion or color discriminate against any citizen who is qualified and available to perform the Work to which the employment relates, nor shall Contractor or any subcontractor discriminate in any manner against or intimidate any employee on account of race, religion or color.

22.5    Workmanship shall be the best of its respective kind for each of the various trades and shall be executed in accordance with the Contract Documents and under direct supervision of competent representatives of Contractor and the various subcontractors, and of the manufacturer where so required.

22.6    Contractor and all of his subcontractors are responsible for complying with all aspects of United States Immigration law, including but not limited to the Immigration Reform and Control Act of 1986, and verifying employment eligibility for it's workforce.

## 23.    Inspection of Work and Testing of Materials

23.1    Except as may be modified in the various technical sections of the Specifications, the procedures for inspection of Work and testing of materials under this Section shall apply.

23.2    Materials and products to be incorporated in the Project shall, at Owner's decision, be subject to inspection and testing, both at the site and in the shops or plants of manufacture. Contractor shall give timely notice of the readiness of any Work, products or materials that are required by the Contract Documents or by public authority having jurisdiction to be inspected, tested or approved.

23.3    Access to the Work wherever it is in preparation or progress shall be permitted at all times and Contractor shall provide safe and proper facilities for such access and inspection.

23.4    Work required to be inspected shall be left exposed until inspected and approved. Should such Work be covered without approval, when directed by Owner it shall be uncovered for examination and recovered after approval

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 32

8080840

at no additional cost to Owner. Re-examination of questionable concealed Work may be ordered by Owner and/or governmental inspection authorities having jurisdiction.

23.5     If Owner determines that any Work requires special inspection, testing or approval which the preceding paragraphs do not include, he will instruct Contractor to order such special inspection, test or approval and Contractor shall give notice as noted in preceding paragraphs. If such special inspection or testing reveals a failure of the Work to comply with the requirements of the Contract Documents or with laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, Contractor shall bear all costs thereof, including the Architect's additional services made necessary by such failure and the cost of such testing or inspection; otherwise Owner shall bear such costs and an appropriate Change Order shall be issued.

23.6     Required inspections and tests and the reports shall be made by a qualified testing engineer or laboratory selected or approved by Owner. Certified copies of test reports shall be furnished as follows:

    23.6.1      One copy to Owner.

    23.6.2      One copy to Architect.

    23.6.3      One copy to consulting engineer.

    23.6.4      One copy to Contractor.

    23.6.5      One copy to the building department under whose jurisdiction the Project is constructed.

    23.6.6      One copy to the supplier of the material tested.

23.7     If Owner or Architect wishes to observe the inspections, tests or approvals required by this Section, they will do so promptly and, where applicable, at the source of supply.

23.8     Neither the observations of the Architect nor inspections, tests or approvals by persons other than Contractor, shall relieve Contractor from his obligations to perform the Work in accordance with the Contract Documents.

23.9     Preliminary inspection and approval of materials during the process of manufacture or at the time of delivery and intermediate inspection and approval of installed Work before covering shall be subject to the Contract Documents relating to final inspection and acceptance of the Work as a whole and to the provisions of the Contractor's warranty.

23.10    Except as otherwise provided herein, the cost of testing and inspection shall be paid by Owner.

24.     **Correction of Work**

241      Contractor shall promptly remove from the premises all Work determined by Owner prior to completion to fail to conform to the Contract Documents, whether or not incorporated into the improvements under construction, and Contractor shall promptly replace and re-execute or cause to be replaced and re-executed all such Work. Contractor shall not be entitled to reimbursement for the cost of such removal, replacement and re-execution.

24.2     If Contractor does not remove such non-conforming Work within a reasonable time, fixed by written notice from Owner, Owner may remove it and store the material at the expense of Contractor. If Contractor does not promptly pay the expenses of such removal and storage, Owner may at its election, deduct such expenses from any

8080840

payment due Contractor hereunder or bring such action as Owner may deem appropriate for the recovery of such expenses.

24.3    If Contractor does not replace and re-execute such non-conforming Work or cause it to be replaced and re-executed within a reasonable time, fixed by written notice from Owner, Owner may, without prejudice to any other remedy it may have, cause such Work to be replaced and re-executed at the expense of Contractor. If Contractor does not promptly pay the expense of such replacement and re-execution, Owner may at its election deduct such expenses from any payment due Contractor hereunder of bring such action as Owner may deem appropriate for the recovery of such expenses.

24.4    Contractor shall not stop the Work or any portion thereunder except as directly affected by removal of such condemned Work.

24.5    If any Work is covered contrary to the request of the Architect or Owner, it must, if required by Owner, be uncovered for his observation and replaced at Contractor's expense. If any other Work has been covered which the Architect or Owner has not specifically requested to observe prior to being covered, Owner may request to see such Work and it shall be uncovered by Contractor. If such Work be found in accordance with the Contract Documents, the cost of uncovering and replacement shall, by appropriate Change Order, be charged to Owner. If such Work be found to be not in accordance with the Contract Documents, Contractor shall pay such costs.

24.6    Neither the issuance of the Certificate of Final Completion nor payment of the final payment shall relieve Contractor of responsibility for faulty or defective materials and workmanship, and he shall remedy all defects due thereto and pay for damage which may appear within any warranty period to other Work resulting therefrom, all in a satisfactory and acceptable manner. Owner shall give notice of observed defects with reasonable promptness.

24.7    In addition to corrections required because of faulty or defective Work, the related requirements of these General Conditions are extended to include maintenance of a continuing service character, where required under various technical sections of the Specifications.

## 25.    Cutting and Patching

25.1    All trades shall perform and time their Work so as not to require unnecessary cutting. All Work shall be performed in accordance with information obtained from Drawings and Specifications, detail drawings or instructions from the various trades so as to avoid where possible, the necessity of cutting. Contractor or its subcontractors shall not endanger any Work by cutting, excavating or otherwise altering the Work and shall not cut or alter the Work of any other contractor without the consent of Owner.

25.2    All trades shall promptly install conduits, outlets, piping sleeves, boxes, inserts, anchors and other equipment into walls, floors and other construction to meet requirements of construction progress of all other trades. All subcontractors and trades shall cooperate freely under the coordinating direction of Contractor to the end that all parts of the Work may proceed advantageously and in complete harmony. If there is a need for cutting, then it and the resulting corrective patching shall be done at the expense of the trade requiring it. Any cost caused by defective or ill-timed Work shall be borne by the party responsible therefore, and not by Owner in any event. No indiscriminate cutting or patching shall be performed until Owner has been consulted for proper directions. Careless or avoidable cutting will not be tolerated.

25.3    Contractor shall do all cutting, fitting or patching of its Work that may be required to make its several parts fit together properly. In all cases, care shall be exercised in cutting operations. Contractor shall perform operations under supervision of competent mechanics skilled in applicable trades and shall cut openings as small as possible to avoid damage.

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 34

8080840

25.4 Wherever cutting, removal or alteration of existing Work is necessary to form connections with new Work, or otherwise meet the requirements of the Contract Documents, such Work shall be performed as necessary to avoid damaging the Work that is to remain in place, and patching and repairs shall be made in workmanlike manner, using materials, construction, details and finishes matching the existing Work.

## 26. Clean-Up

26.1 Contractor at all times shall keep the premises free from accumulation of waste materials or rubbish caused by his or his subcontractors' operations. Materials to be used shall be kept in an orderly manner, neatly stacked or piled.

26.2 Upon completion of the Work of any subcontractor, such subcontractor shall remove his surplus materials and debris from job site. At the completion of all the Work, Contractor shall remove all waste materials and rubbish from and about the Project, as well as all tools, construction equipment, machinery and surplus materials, and shall clean all glass surfaces and leave the Work "broom-clean" or its equivalent, except as otherwise specified. Subject to exceptions specified, Contractor and all subcontractors shall use materials and methods for cleaning and polishing as recommended by the applicable manufacturers. Soaps and cleaners shall be of types not injurious to surfaces on which they are used. Use of acids is prohibited except as specified.

26.3 All Work shall be left clean and free of dirt, splatterings of paint, plaster, concrete, mortar, fingerprints and foreign matter. Contractor shall leave the building and premises clean and orderly, ready for the occupancy for which it is intended, and in accordance with, but not limited to, the following, in addition to "broom-cleaning:"

26.3.1 Remove all stains from glass; wash and polish same inside and out. Do not scratch glass or glazing compound.

26.3.2 Clean fixtures and equipment, floors, wall and ceiling surfaces, doors and other surfaces exposed to view.

26.3.3 Clean and polish metal surfaces, including doors and hardware.

## 27. Protection of the Work

27.1 Protection of Work shall be continuously maintained by Contractor in such suitable form as will protect the Work as a whole and in part, and adjacent property and improvements from accidents, injury or damages. Contractor shall properly protect the Work with lights, guard rails, temporary covers and barricades; provide excavations with proper enclosures; brace and secure all parts of the Work against storm and accident and provide such additional forms of protection as may be necessary in the prevailing circumstances.

27.2 Should construction, materials or equipment become damaged, destroyed or stolen through negligence on the part of Contractor or any subcontractor or the agents or employees of any of them while the Work remains under Contractor's jurisdiction, Contractor shall repair or replace same to the satisfaction of Owner, without cost to Owner.

27.3 Contractor and all subcontractors shall provide protection for their own materials, tools and equipment employed in the Work including the tools of workmen. Except where otherwise expressly stipulated, Owner shall not be held to have incurred any liability for loss of or damage to materials, tools and equipment of Contractor or of those persons employed by him, by subcontractors or otherwise.

8080840

27.4     Contractor shall be solely responsible for the safety and condition of his and the various subcontractors' materials and implements stored in or about the building and the site. Should it become necessary during the Project to remove such materials and implements to facilitate and maintain scheduled progress of the Work, Contractor shall remove materials and implements to some new location and such moving shall be done without additional charge. Should Contractor fail, refuse or neglect to commence the Work of removal of materials and implements within two (2) days after notifications or to prosecute the Work of removal with due diligence, Owner may cause the materials or implements to be moved and the cost thereof shall be deducted and paid by Owner out of monies which may be due or may become due to Contractor.

27.5     Contractor shall be responsible for the patching and replacing of all damaged Work. Patching and replacing of damaged Work shall be done in accordance with the Contract Documents, and the cost shall be an obligation of Contractor. At completion of the Project, damage to the Project shall be satisfactorily repaired or replaced by Contractor at its sole cost and expense.

27.6     Rain, surface or subsurface water and other fluid shall not be allowed to accumulate in excavations or under or about the structures. Should such conditions develop or be encountered, the water shall be kept constantly controlled and legally disposed of by temporary pumps, piping, ditches, dams or other methods.

27.7     Carts, hand trucks, wheelbarrows and similar wheeled conveyances used on or in any portion of the structure shall be equipped with pneumatic tires, except where otherwise expressly authorized.

## 28.     Protection of Persons and Property

28.1     Contractor shall comply at all times with Federal OSHA and Local OSHA requirements. Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. Contractor shall designate a responsible member of his organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated in writing by Contractor to Owner.

28.2     Contractor shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority including OSHA, having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss. Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent properties.

28.3    Such protective measures as may be required to adequately protect the public from hazards of construction work and to exclude unauthorized persons from the Work shall be provided and maintained by Contractor. When regulated by local building code or other authority, such requirements for protection shall be considered as minimum requirements and Contractor shall be responsible for such protection in excess of minimum requirements as may be required hereby.

28.3.1     Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

28.3.2     All workmen and other employees of Contractor and subcontractors on the Project and all visitors and other persons who may be affected thereby;

28.3.3     All the Work and all materials and equipment to be incorporated therein, whether in storage on or off the site, as long as it is under the care, custody or control of Contractor or any subcontractors or sub-subcontractors; and

Exhibit A  
CIRCUIT CITY STORE #3809  
MANSFIELD, TX  
S. M. WILSON & COMPANY  
MARCH 14, 2008

PAGE 36

8080840

  28.3.4  Other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

  28.4  No part of the Work shall be performed, nor shall any of the material, supplies, articles or equipment be manufactured or fabricated in any plant, factory, building or surroundings, or under working conditions which are unsanitary, hazardous or dangerous to the health and safety of employees engaged therein. Precautions shall be exercised for the protection of all persons and property.

  28.5  Should the manufacturer of a specified material or product supply instructions, either by label on the container or by independently issued bulletin or instructions pertaining to the product, which refer to possible health and/or safety hazards in the use of the product, Contractor shall be responsible for the proper use and application of the product in conformity with such instructions, and shall be responsible for all damage or injury resulting from failure to comply with such instructions.

  28.6  When the use or storage of explosives or other hazardous materials or equipment is necessary for the execution of the Work, Contractor shall exercise the utmost care and shall conduct such activities under the supervision of properly qualified personnel.

  28.7  Internal combustion engines and compressors shall be equipped with mufflers to reduce noise to a minimum and shall not be operated in enclosed areas without adequate ventilation.

  28.8  Owner may provide such watchmen's service as he deems necessary to protect his interests during the progress of construction of the Project, but any protection so provided by Owner shall not in any way relieve Contractor of the responsibility for the safety and condition of the Work and material until the completion and acceptance thereof. Contractor shall employ such watchmen's service as he may deem necessary to properly protect and safeguard the Work and material. Owner shall not in any way be liable or responsible for damage or loss to the Work or material due to trespass or theft.

  28.9  All damage or loss to any property referred to herein and caused in whole or in part by Contractor, any subcontractor, any sub-subcontractor or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, shall be remedied by Contractor at its sole cost and expense.

  28.10  In any emergency affecting the safety of persons or property, Contractor shall act to prevent threatened damage, injury or loss. Any additional compensation or extension of time claimed by Contractor on account of emergency Work shall be determined as provided in the Agreement for Changes in the Work.

### 29.  Fire Precautions and Protection

  29.1  Contractor shall take necessary precautions to guard against and eliminate possible fire hazards and to prevent damage to the Work, building materials, equipment, temporary field offices, storage sheds and public and private property. Contractor shall be responsible for providing, maintaining and enforcing the following conditions and requirements during the entire construction period:

  29.1.1  Contractor's superintendent in charge shall inspect the entire Project at least once each week to make certain that the conditions and requirements of the Contract Documents and applicable law are being adhered to.

  29.1.2  An adequate number of outlets and supply of fire hose of required size and length to protect the construction area shall be provided by Contractor as soon as water is available or when construction starts. Installation

8080840

shall be in compliance with requirements of applicable codes and/or regulations established by public authorities having jurisdiction.

29.1.3   Contractor shall provide and maintain in working order during construction portable fire extinguishers, the number and locations of which shall be as required by applicable codes or the requirements of public authorities having jurisdiction. In the absence of such requirements, Contractor shall provide not less than four (4) fire extinguishers conveniently located for proper protection for each 25,000 sq. ft. of floor area. Fire extinguishers shall be either 2-1/2 gal. capacity water type gas cartridge expelled units or 5 gal. capacity pump type. Extinguishers shall have the approval of Fire Underwriter's Laboratory and shall be inspected at regular intervals and recharged as necessary. In areas of flammable liquids, asphalt or electrical hazards, extinguishers of the 15e lb. carbon dioxide type or 20-lb. dry chemical type shall be provided.

29.1.4   No open fires shall be permitted.

29.1.5   Only a reasonable working supply of flammable building material shall be located inside of, or on the roof of, the building(s) of the Project.

29.1.6   Tarpaulins used during the course of construction shall be of a flameproof type and secured in-place against damage or flapping from winds.

29.1.7   Oil-soaked rags, papers and other highly combustible materials shall be removed from the Project at the close of each day's work, and more often where necessary, and placed in metal containers with tight-hinged lids.

29.1.8   Gasoline, benzene or similar combustible materials, as well as flammable or waste materials subject to spontaneous combustion, shall not be poured into sewers, manholes or traps, but shall be safely disposed. Contractor shall make appropriate arrangements for storing these materials outside of the Project.

29.2   When public authorities or codes impose regulations relating to fire prevention and control, such regulations shall be considered as minimum requirements and not requirements in lieu of those set forth above.

30. **Environmental Control**

30.1   All materials and work procedures used on the Project shall comply with all air pollution, water pollution and other environmental pollution control regulations in effect at the site of the Project. Contractor shall be responsible for obtaining all necessary approvals and certification as to compliance of material and procedures.

30.2   Throughout the entire construction period, Contractor shall effectively dust-palliate the working area, unpaved roads used in the operations and involved portions of the site. Such palliation shall include chemical treatment or intermittent watering and sprinkling of such frequency as will satisfactorily allay the dust at all times during construction.

31. **Miscellaneous**

31.1   All notices and demands of any kind or nature which either party hereto may be required or desires to serve upon the other party hereto under the terms of the Agreement shall be in writing and shall be served upon such other party by personal service or by mailing a copy thereof by certified or registered mail, postage prepaid, with return receipt requested, or sending by overnight express courier, addressed to the party so to be served as follows:

Exhibit A
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

PAGE 38

8080840

If to Owner:	Circuit City Stores, Inc.
	9950 Mayland Drive
	Richmond, VA 23233
	Attn: Vice President - Construction

If to Contractor:	S. M. Wilson & Company
	2185 Hampton Avenue
	St. Louis, MO 63139
	Attn: Evan Chiles

In case of service by mail, notice shall be deemed given, unless it is sooner received, at the expiration of the third (3rd) business day after the date of mailing. If by overnight delivery, notice shall be deemed given one (1) business day after sending. If by personal service, notice shall be deemed given when delivered. The addresses to which and the persons to whom notice and demand shall be delivered may be changed from time to time by notice served as hereinabove provided.

31.2    Neither the rights nor the obligations of Contractor under the Agreement may be assigned or assumed by any other party except to the extent of duties assumed by subcontractors, and in any such case subject to the prior approval of Owner. In no event may Contractor assign any right to monies due or to become due to Contractor hereunder. The Agreement, and all warranties, guarantees and other obligations hereunder, may be assigned by Owner to any mortgagee, any affiliated entity, or any entity which now owns or hereafter may acquire the fee title to or leasehold interest in and to the property to which the Agreement relates.. Except as hereinabove specifically provided, the Agreement shall be binding upon and shall inure the benefit of the respective successors and assigns of the parties hereto.

31.3    The Agreement and the other Contract Documents, as and when prepared and added hereto, shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof, and supersede all prior agreements and understandings, including all correspondence, between the parties hereto with respect to the subject matter hereof, both oral and written.

31.4    No provision of the Agreement may be waived, changed or modified, or the termination or discharge thereof agreed to or acknowledged orally, but only by an agreement in writing signed by the party against whom the enforcement of any such waiver, change, modification, termination or discharge is sought.

31.5    The headings of the several paragraphs hereof are included herein solely for convenience of reference and are not intended to aid in the construction of or to govern the terms and provisions of this Agreement.

31.6    The Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

31.7    The Contractor hereby agrees to execute any and all documents which may be reasonably requested by a construction or permanent lender, including the assignment of the Contract, in whole or in part, and the Contractor shall be bound thereby.

Exhibit A								PAGE 39
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

8080840

31.8    Notwithstanding anything in the Contract Documents to the contrary, the Owner shall have, at all reasonable times, the right to enter the Project for the purpose of conducting marketing activities and inspecting the Work. The Contractor shall provide for such access.

31.9    The Agreement shall be governed and construed in accordance with the laws of the State of Virginia.

Initials:                                Owner: _____

                                         Contractor: _____
                                         S. M. Wilson & Company

Exhibit A                                                            PAGE 40
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

8080840

Date: 3/7/2008 1:27 PM

# EXHIBIT B

Specifications & List of Drawings Used to Prepare the Bid

Project Number: 3809     Project Name: Mansfield, TX
Contractor: S. M. Wilson & Co.

| Sheet | Title | | Latest Revision Date |
|---|---|---|---|
| | Project Manual (Specifications) | | 2/7/2008 |
| T1.0 | Title Sheet | | 2/20/2008 |
| S0.1 | General Notes | 2/7/08 | ~~12/14/2007~~ |
| S1.0 | Foundation Plan | | 1/22/2008 |
| S1.1 | Slab Plan | | 1/22/2008 |
| S1.2 | Foundation Details | | 1/22/2008 |
| S1.3 | Foundation Details | | 1/22/2008 |
| S1.4 | Wall Panel Details | 2/7/08 | ~~12/14/2007~~ |
| S1.5 | Wall Panel Elevations | | 1/22/2008 |
| S2.1 | Roof Framing Plan | | 1/22/2008 |
| S2.2 | Roof Framing Details | | 1/22/2008 |
| S2.3 | Roof Framing Details | 2/7/08 | ~~1/22/2008~~ |
| A2.0 | Life Safety Plan | | 1/22/2008 |
| A2.1 | Floor Plan | | 2/20/2008 |
| A2.2 | Fixture Plan | | 1/22/2008 |
| A2.3 | Roof Plan and Details | | 2/20/2008 |
| A2.4 | Room Finish Scheudle | | 2/20/2008 |
| A2.5 | Door Schedule and Details | | 2/20/2008 |
| A2.6 | Storefront Details | | 2/20/2008 |
| A2.7 | Interior Window Details | 2/7/08 | ~~12/14/2007~~ |
| A2.8 | Hardscape Plan | | 1/22/2008 |
| A3.1 | Exterior Elevations | | 2/20/2008 |
| A3.2 | Wall Sections and Details | | 2/20/2008 |
| A3.3 | Vestibule Section and Details | | 2/20/2008 |
| A3.4 | Sections and Details | | 1/22/2008 |
| A4.1 | Enlarged Plans and Elevations | | 2/20/2008 |
| A4.2 | Millwork Details and Sections | | 2/20/2008 |
| A5.1 | Interior Elevations | | 2/20/2008 |
| A5.2 | Interior Elevations | | 2/20/2008 |
| A6.1 | Reflected Ceiling Plan | | 2/20/2008 |
| M1.0 | HVAC Roof Plan and Schedules | | 1/21/2008 |
| M2.0 | HVAC Floor Plan and Details | | 1/21/2008 |
| P1.0 | Plumbing Plan | | 1/21/2008 |
| P2.0 | Plumbing Schedules and Details | | 1/21/2008 |
| E1.0 | Lighting Plan and Details | | 2/20/2008 |
| E2.0 | STS Plan | 2/27/08 | ~~2/20/2008~~ |
| E3.0 | Miscellaneous Details | | 2/20/2008 |
| E3.1 | Prefabricated STS Room (For Reference Only) | 2/7/08 | ~~12/14/2007~~ |
| E3.2 | Sales Area Details | | 1/22/2008 |
| E4.0 | Power Plan and Details | | 2/20/2008 |
| E5.0 | Rough-In Plan and Details | | 1/22/2008 |
| E5.1 | Lighting Dimension Plan | | 1/22/2008 |
| E6.0 | Panel Schedule and Riser Diagram | | 1/22/2008 |

Bid Proposal Form:

Page 9
04/03/2007

3684442

**Electronically Recorded**
Official Public Records

*Suzanne Henderson*

Tarrant County Texas
2009 Jan 15 03:44 PM
Fee: $ 60.00
Submitter: ACS INC

**D209011731**

12 Pages

## AFFIDAVIT FOR MECHANIC'S LIEN
Suzanne Henderson

BEFORE ME, the undersigned authority, personally appeared Michael Dohle, who upon his oath deposed and stated the following:

1.  My name is Michael Dohle. I am the authorized representative of S.M. Wilson & Co., hereinafter sometimes referred to as "Claimant". I am over 18 years of age, and am competent and authorized to make this affidavit.

2.  Claimant's business and mailing address is 2185 Hampton Avenue, St. Louis, MO 63139.

3.  Claimant furnished labor and materials for improvements to the real property described herein under a contract by and between Claimant and Circuit City Stores, Inc., the agent of Mansfield Seq 287 & Debbie, LTD, a Texas limited partnership, who is the owner or reputed owner of the real property described herein and whose last known address is 2525 McKinnon, Suite 700, Dallas, Texas 75201.

4.  The labor, materials, and work furnished by Claimant are generally described as follows:

    > New construction of a large commercial/retail building, requiring minor excavation for concrete footing and poured concrete slab; pouring and erecting site-case concrete tilt wall panels; erection of structural steel; coordination/scheduling of roof erection; erection of front and rear masonry facades, miscellaneous site work, including sidewalks and loading dock; installation of aluminum storefront system with automatic doors and all glazing; installation of EIFS system on main entryway; installation of all electrical and mechanical systems; coordination of fire protection system; installation of interior wall and drywall; installation of flooring; interior and exterior painting; installation of doors and hardware; and provision of other work, services and materials.

A copy of the contract between Claimant and Circuit City Stores, Inc., the agent of Mansfield Seq 287 & Debbie, LTD., and certain exhibits further describing such work are attached hereto as **Exhibit A**, which is incorporated herein for all purposes.

5.  The real property sought to be charged with a lien by Claimant is commonly known as 1551 N. Highway 287, Mansfield, Texas 76063, and further described as follows:

    > BEING a tract of land situated in the S.S. CALLENDER SURVEY, ABSTRACT No. 359, Tarrant County, Texas and being all those certain called 0.15 acre, 1.61 acre and 17.020 acre tracts of land described in deeds to Mansfield/SAM, LTD. as recorded in Volume 14798, at Pages 102, 103, 104, and 106, respectively, of the Deed Records of Tarrant County, Texas, containing approximately 18.783 acres, being more particularly described by metes and bounds in **Exhibit B** attached hereto and incorporated herein by reference.

3684442

6. Claimant is the original contractor for the improvements for which a lien is claimed.

7. After allowing all just credits, offsets, and payments, the amount of One Hundred Eighty-Six Thousand Nine Hundred Twenty-Four and 42/100 Dollars ($186,924.42) remains unpaid and is due and owing to Claimant under its contract with Circuit City Stores, Inc., the agent of Mansfield Seq 287 & Debbie, LTD., and more particularly stated in **Exhibit C**, which is attached hereto and incorporated herein for all purposes. Claimant claims a lien on such property and improvements under the provisions of Texas Property Code §53.001 *et seq.* to secure payment of such amount.

8. Claimant also claims a constitutional lien on such property pursuant to the provisions of Article 16, Section 37 of the Texas Constitution.

By: *[signature]*
Printed Name: Michael Dohle
Title: Chief Financial Officer


STATE OF MISSOURI            )
                             ) SS.
COUNTY OF THE CITY OF SAINT LOUIS  )

Subscribed and sworn to by Michael Dohle on this 14th day of January 2009, who acknowledges to me that he is the authorized representative of S.M. Wilson & Co. and that he has signed this Affidavit for Mechanic's Lien as the act of S.M. Wilson & Co. in his stated capacity with full authority to do so.

*[signature]*
Notary Public, State of Missouri
My Commission Expires: 2/28/09

AFTER RECORDING RETURN TO:

Mike Dohle
S.M. Wilson & Co.
2185 Hampton Avenue
St. Louis, MO 63139

COLEEN C. OLSON
Notary Public - Notary Seal
STATE OF MISSOURI
City of St. Louis
My commission expires 2/28/2009

3658720_1.DOC

2

3684442

080045 DOCUMENT
APR 1 6 2008

# Agreement Between Owner and Contractor - Stipulated Sum
REV. October 18, 2006
(CCSTIPSM)

RECEIVED
APR 2 2 2008
S.M. WILSON & CO.

| | |
|---|---|
| AGREEMENT # | made as of the 3rd day of March, in the year 2008. |
| BETWEEN the Owner:<br>*(Name and Address)* | Circuit City Stores, Inc.<br>9950 Mayland Drive<br>Richmond, Virginia 23233 |
| and the Contractor:<br>*(Name and Address)* | S. M. Wilson & Company<br>2185 Hampton Avenue<br>St. Louis, MO 63139 |
| The Project is:<br>*(Name and Location)* | 1551 N. Highway 287<br>Mansfield, TX 76063 |
| The Architect is:<br>*(Name and Address)* | WD Partners<br>909 Lake Carolyn Parkway, Suite 600<br>Irving, TX 75039 |



STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

Page 1



EXHIBIT A

3684442

The Owner and Contractor agree as set forth below.

## ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 7.

## ARTICLE 2
## THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

## ARTICLE 3
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1     The date of commencement is the date from which the Contract Time is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

### START OF CONSTRUCTION - 4/14/2008   /

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work.

3.2 The Contractor shall achieve substantial Completion of the entire Work (the "Date of Substantial Completion") not later than

### DATE OF SUBSTANTIAL COMPLETION (TURNOVER) - 8/19/2008    /

, subject to adjustments of this Contract Time as provided in the Contract Documents.

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

Page 2



3684442

## ARTICLE 4
## CONTRACT SUM

4.1   The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the fixed, stipulated Contract Sum of <u>Nine Hundred Fifty-One Thousand, Five Hundred Forty</u> Dollars ($ <u>951,540</u>), subject to additions and deductions as provided in the Contract Documents.

4.2   The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
See Exhibit G – Letter of Intent

4.3   Unit prices, if any, are as follows
See Exhibit D – Bid Breakdown

4.4   In the case of additive or deductive Work authorized under Article 12 of the General Conditions of the Contract for Construction, Contractor's markups shall be limited to <u>Seven</u> percent (<u>7</u>%) for profit and overhead, and Subcontractor's markups shall be limited to <u>Fifteen</u> percent (<u>15</u>%) for profit, and overhead in accordance with Article 5 of the General Conditions.

## ARTICLE 5
## PROGRESS PAYMENTS

5.1   Based upon Applications for Payment submitted to the Owner by the Contractor, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and in accordance with the General Conditions.

5.2   The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

5.3   Provided an Application for Payment is received by Owner, and such Application for Payment conforms in all respects to the requirements set forth in the General Conditions, Owner shall make payment to Contractor as provided in the General Conditions.

5.4   Each Application for Payment shall be based upon the Schedule of Values submitted by the Contractor in accordance with the Contract Documents. The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

5.5   Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

5.6   Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed in accordance with the General Conditions.

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

Page 3

3684442

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (l) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) Contractor has satisfied all other conditions precedent as set forth in the General Conditions. Final payment shall not be made any sooner than thirty (30) days after the Date of Final Completion of the Work as specified in the General Conditions. Contractor shall be solely responsible for assuring full compliance with all local laws, and Contractor agrees to defend and indemnify Owner from and against all actions, claims and demands relating to or arising out of Contractor's performance or failure to perform under this Agreement.

## ARTICLE 7
## ENUMERATION OF CONTRACT DOCUMENTS

7.1   The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

7.1.1   The Agreement is this executed Agreement Between Owner and Contractor - Stipulated Sum.

7.1.2   The General Conditions are the Circuit City Stores, Inc. General Conditions of the Contract for Construction August 30, 2006, Revision., Exhibit A, attached hereto.

7.1.3   The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated                and are as follows:

**SEE EXHIBIT B   DRAWINGS and SPECIFICATIONS**

7.1.4   The Specifications are those contained in the Project Manual dated as in Subparagraph 7.1.3, and are as follows:

**SEE EXHIBIT B   DRAWINGS and SPECIFICATIONS**

7.1.5   The Drawings are as follows, and are dated           unless a different date is shown below:

**SEE EXHIBIT B   DRAWINGS and SPECIFICATIONS**

7.1.6   The addenda, if any, are as follows:

**SEE EXHIBIT G – LETTER OF INTENT**

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

Page 4

3684442

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 7.

7.1.7 Other documents, if any, forming part of the Contract Documents are as follows:

| | |
|---|---|
| EXHIBIT B-1 | EXCLUSIONS and CLARIFICATIONS |
| EXHIBIT B-2 | PRE-BID MEETING MINUTES DATED 2/26/2008 |
| EXHIBT B-3 | ADDITIONAL PRICING AND CLARIFICATIONS, DATED 3/07/2008 |
| EXHIBIT D | BID FORM |
| EXHIBIT E | INSURANCE |
| EXHIBIT F | NOTICE TO PROCEED |
| EXHIBIT G | LETTER OF INTENT |
| EXHIBIT H | INVITATION TO BID |

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect, and the remainder to the Owner.

OWNER

CIRCUIT CITY STORES, INC.

_____
(Signature)

John Wilson
(Printed Name)

VP Plk of Const
(Title)

CONTRACTOR

S. M. Wilson & Company

_____
(Signature)

Scott J. Wilson
(Printed Name)

President
(Title)

STIPULATED SUM-CONTRACT
CIRCUIT CITY STORE #3809
MANSFIELD, TX
S. M. WILSON & COMPANY
MARCH 14, 2008

Page 5

3684442

## Bid Breakdown
Part of Exhibit D

Bidder: Evan Chiles - S. M. Wilson & Company
Status: Submitted
Submitted Date: 3/4/2008 3:46 PM EST

Bid Package Name: 3809 - Construction Contract
Due: 3/4/2008 4:00:00 PM EST

Qualifications and Exceptions: See Exhibit B-1

| Line Item Number | Total |
|---|---|
| ⊟ DIVISION 1 - GENERAL CONDITIONS | $188,962.00 |
| 1005 - General Conditions | $119,193.00 |
| 1010 - Overhead & Profit (Fee) | $69,769.00 |
| ⊟ DIVISION 2 -- SITEWORK | $1,500.00 |
| 2010 - Site Clearing & Erosion Control | $0.00 |
| 2020 - Demolition | $0.00 |
| 2030 - Excavation & Grading | $0.00 |
| 2040 - Site Storm Drainage | $0.00 |
| 2050 - Site Utilities | $0.00 |
| 2060 - Concrete Walks | $0.00 |
| 2070 - Precast Bollards | $0.00 |
| 2080 - Site Retaining Walls | $0.00 |
| 2090 - Curb & Gutter and Entrances | $0.00 |
| 2100 - Concrete Paving | $0.00 |
| 2110 - Asphalt Paving & Striping | $0.00 |
| 2120 - Exterior Fencing | $1,500.00 |
| 2130 - Landscaping & Irrigation | $0.00 |
| 2140 - Site Lighting from 5' out | $0.00 |
| 2999 - Sitework Other | $0.00 |
| ⊟ DIVISION 3 -- CONCRETE | $293,789.00 |
| 3010 - Concrete Foundations | $287,589.00 |
| 3020 - Concrete Slab | $0.00 |
| 3030 - Concrete Sidewalks, Steps, stoops, pads, etc. | $0.00 |
| 3060 - Building Excavation & Backfill | $6,200.00 |
| 3070 - Tilt Wall Panels | $0.00 |
| 3999 - Concrete Other | $0.00 |
| ⊟ DIVISION 4 -- MASONRY | $75,500.00 |
| 4050 - Unit Masonry | $75,500.00 |
| 4999 - Masonry - Other | $0.00 |
| ⊟ DIVISION 5 -- METALS | $21,190.00 |
| 5010 - Structural Metal | $21,190.00 |
| 5020 - Misc. & Ornamental Metal | $0.00 |
| 5999 - Metals - Other | $0.00 |
| ⊟ DIVISION 6 -- ROUGH CARPENTRY | $18,836.00 |
| 6010 - Rough Carpentry | $5,916.00 |
| 6020 - Finish Carpentry | $0.00 |
| 6030 - Millwork | $12,920.00 |
| 6999 - Carpentry Other | $0.00 |
| ⊟ DIVISION 7 -- MOISTURE CONTROL | $14,773.00 |
| 7010 - Waterproofing | $0.00 |
| 7020 - Building Insulation | $0.00 |
| 7040 - Sheetmetal Work | $0.00 |
| 7050 - Roofing & Roof Insulation | $0.00 |
| 7055 - Exterior Metals | $0.00 |
| 7060 - Roof Accessories | $0.00 |
| 7070 - Caulking & Sealants | $14,773.00 |
| 7999 - Moisture Control - Other | $0.00 |

Page 1 of 2