# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| IN RE: § <br> § <br> **CIRCUIT CITY STORES, INC.,** *et al*. § <br> § <br> Debtors. § | **Case No. 08-35653-KRH** <br> **(Chapter 11)** <br> **(Jointly Administered)** |

| | |
|---|---|
| **RYAN, INC. f/k/a RYAN &** § <br> **COMPANY,** § <br> § <br> Plaintiff, § <br> v. § <br> § <br> **CIRCUIT CITY STORES, INC.,** *et al*. § <br> § <br> Defendant. § | **Adv. Proc. No. 10-_____-KRH** |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff RYAN, INC. f/k/a RYAN & COMPANY, INC. ("**Ryan**") respectfully files its *Complaint for Declaratory, Injunctive and Other Relief* against Defendant CIRCUIT CITY STORES, INC. ("**Debtor**"), as states as follows:

## PARTIES

1. Plaintiff is a Delaware corporation with its principal place of business located in Dallas, Texas. Plaintiff is a creditor and party-in-interest in the above styled and referenced bankruptcy case (the "**Case**").

2. Debtor is a debtor in the Case which was commenced on November 10, 2008, and is a jointly administered chapter 11 proceeding. No trustee has been appointed in the Case.

Bruce W. Akerly, Esq. Texas Bar No. 00953200
Cantey Hanger LLP
1999 Bryan Street, Suite 3330
Dallas, Texas  75201
(214) 978-4129 Telephone
(214) 978-4150 Facsimile
ATTORNEYS FOR RYAN, INC.
f/k/a RYAN & COMPANY, INC.

Robert M. Marino, Esq. VSB #26076
REDMON PEYTON & BRASWELL LLP
510 King Street, Suite 301
Alexandria, Virginia 22314
(703) 684-2000 Telephone
(703) 684-5109 Facsimile
LOCAL ATTORNEYS FOR RYAN, INC.
f/k/a RYAN & COMPANY, INC.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 28 U.S.C. § 2201.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

5. Venue of this action is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

6. On June 8, 2005, Ryan and Defendant entered into a letter agreement (the "**Agreement**") whereby Ryan agreed to perform, for Debtor's benefit, a review of Debtor's Hawaii import tax payment records to identify tax refund and/or tax reduction opportunities. A true and correct copy of the Agreement is attached hereto as **Exhibit "1"** and incorporated herein by reference as if fully set forth. Ryan was working under the Agreement at the time Debtor filed bankruptcy.

7. Prior to entering into the Agreement, Ryan had been involved with tax litigation and refund proceedings in the State of Hawaii on behalf of number of clients, including CompUSA. Based on its unique personal knowledge, skill, and experience, Ryan developed a tax refund strategy. Ryan approached Debtor to determine whether Debtor would like to engage Ryan to obtain tax refunds from the State of Hawaii using Ryan's uniquely developed tax refund strategy. In fact, Ryan required Debtor to sign the Agreement before Ryan would inform Debtor of its tax refund strategies. But for Ryan approaching Debtor and Ryan's uniquely developed tax refund strategy, Debtor would not have sought a tax refund of the type at issue before the State of Hawaii.

8. After the Case was filed, Ryan continued to perform valuable services to Debtor under the Agreement, including but not limited to monitoring the proceedings at the state level, providing Debtor with monthly updates and communicating with the client, and keeping the client informed of developments.

9. Prior to the filing of bankruptcy, Ryan identified significant cash tax refund opportunities available to Debtor in an amount not less than $735,663.01. Ryan presented these refund opportunities to the appropriate authorities at the State of Hawaii for consideration. One request for refund was denied and is on appeal. Another request for refund was denied on the eve of Debtor filing bankruptcy.

10. Similar issues as those involved in Debtor's tax refund claims are presently pending before the Supreme Court of Hawaii in an appeal which Ryan is handling for CompUSA. Ryan has extensive experience negotiating with the State of Hawaii regarding tax refund issues. Ryan was specially engaged by Debtor to handle the tax refund.

11. The Agreement specifically provides:

- "In the event Ryan & Company obtains any tax refunds, credits, or reductions, Circuit City agrees to pay Ryan & Company and hereby assigns to Ryan & Company, as compensation for this service, thirty-three and one-third percent (33 1/3%) of any tax refunds, credits or reductions, including interest and penalties that Circuit City receives from taxing authorities and/or vendors." (Agreement at 2).

- "In the event Ryan & Company obtains any refunds, credits, or reductions as a result of an administrative hearing or other legal action, Circuit City agrees to pay Ryan & Company and hereby assigns to Ryan & Company, as compensation for its services, forty percent (40%) of any tax refund, credits, or reductions, including interest and penalties, that [it] receives as a result of such administrative hearing or other legal action." (*Id*. at 2).

- "Additionally, Circuit City agrees that Ryan & Company's work product, including specific engagement procedures, techniques, and tax saving strategies, constitute confidential, proprietary information

COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF – PAGE 3

and Circuit City agrees not to disclose such information to any third-party without obtaining prior written approval from Ryan & Company." (*Id*. At 3).

12. At the time Debtor filed this bankruptcy case, Ryan had completed its analysis and audit work in connection with the tax refund claim at issue, although Ryan was continuing to monitor the matter post-petition. But for the filing of the Case, the tax audit would have proceeded before the State of Hawaii.

13. On January 28, 2009, Debtor filed its *Debtors' Eighth Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contracts* (Case Dkt. No. 6416) (the "**Motion to Reject**") which includes the Agreement buried among multiple employment contracts sought to be rejected by Debtors.

14. On March 12, 2010, the Court entered its *Order Pursuant to Sections 105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contract with Ryan, Inc.* ("**Order Granting Motion to Reject**"). (Case Dkt. No. 6804)

**First Cause of Action – Declaratory Judgment, 28 U.S.C. § 2201**

15. Paragraphs 1-14 above are incorporated herein by reference as if repeated verbatim.

16. An actual controversy exists as to Ryan's right, title and interest in a portion of any tax refund, credit, and/or reduction arising out of its services rendered in connection with the State of Hawaii import tax liability audit to cover Ryan's contingent fee set forth in the Agreement. Debtor has indicated that it does not intend to compensate Ryan pursuant to the terms of the Agreement. Debtor has further indicated that it believes that Ryan has no right, title,

or interest in and to any refund which may ultimately be awarded Debtor or its successor under a plan of reorganization.

17. An actual controversy exists as to Ryan's right to return of its work product and other proprietary materials and/or Debtor's right to use those materials or permit third-parties access to such materials going forward. Debtor has made no indication that it intends to not use such materials and/or not provide a third-party use of these materials. In fact, on information and belief, Debtor's rights in any tax refund from the State of Hawaii will be retained, upon confirmation of Debtor's Plan of Reorganization, as amended, in this bankruptcy, by a Creditors' Trust. There is no limitation or disclosure with respect to the treatment of Ryan's work-product or proprietary materials by the Creditors' Trust.

18. Ryan seeks a declaration from this Court against Debtor (and other interested parties joined in this action) that: (a) Ryan owns and retains all right, title and interest in and to 33 and 1/3 percent (40% if obtained as the result of litigation or administrative action) of any tax refund, credits and/or reductions achieved and realized by Debtor and/or its assignees or transferees, as a result of services Ryan has performed in connection with the tax refund claim pending before the State of Hawaii; and (b) Ryan owns and is entitled to return of and neither the Debtor nor any third-party shall be entitled to possess or use any and all work-product and other proprietary property and materials of Ryan generated and maintained by Ryan in connection with services it performed under the Agreement.

## Second Cause of Action – Injunctive Relief

19. Paragraphs 1-18 above are incorporated herein by reference as if repeated verbatim.

COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF – PAGE 5

20. Debtor maintains that it will decide whether and under what circumstances it will pursue the tax refund claim from the State of Hawaii. Debtor has indicated that it may do so itself or through a third-party. This will require and necessarily involve the use by Debtor and/or such third-party of Ryan's unique tax refund and reduction strategies which constitutes Ryan's work-product, proprietary materials, and trade secrets-intellectual property, all of which are prohibited under the express terms of the Agreement. This is exactly why Ryan had Debtor sign the agreement before telling Debtor its strategy. The use of these materials without the express consent of Ryan is not only violative of the Agreement but will harm Ryan's interests in that the materials and knowledge are not intended to be disseminate to third-parties. Once Debtor retains control of the proceedings, there is nothing to prevent Debtor from using or disclosing Ryan's tax reduction strategy. If Debtor has no intention on engaging Ryan in connection with the work Ryan was performing under the Agreement, Debtor should not be able to use Ryan's proprietary strategy and should be required to immediately return all work product and other materials to Ryan.

21. It is also anticipated that, at some point Debtor or the Creditors' Trust contemplated under Debtor's Plan of Reorganization (including any supplements or amendments thereto) ("**Debtor's Plan**") may or will come into possession of the tax refund which is the subject of this action and the Agreement. Debtor and/or the Creditors' Trust contemplated under Debtor's Plan should not be entitled to use these funds or otherwise dissipate any funds received or otherwise use the potential refund to offset other tax liabilities which may be owing to the State of Hawaii unless and until Ryan is paid the entirety of its fee owing and due under the Agreement, together with interest thereon as permitted under the Agreement and/or applicable law. Pursuant to the Agreement Ryan owns all right title and interest in that maintains that is

owns that portion of any refund which may be received or due in the future to satisfy any and all fees earned by it under the Agreement for services rendered to date.  Ryan's efforts and labor have substantially established Debtor's right to refund which, if ultimately paid, should result in a fee paid to Ryan.  Debtor has indicated by its actions to date that it does not intend to pay this fee and/or will not reserve an amount necessary to pay this fee should a refund be received.

22. Debtor, as well as its officers, directors, employees, agents, attorneys, successors-in-interest, and/or assigns, should be enjoined temporarily, preliminarily and permanently from (a) using Ryan's work-product (including it tax refund strategy involving the State of Hawaii), proprietary materials, and trade secrets with respect to and in relation to the tax refund claim work conducted by Ryan pursuant to the Agreement and (b) using any portion of the tax refund ultimately received unless and until a sufficient sum has been reserved from such funds to pay Ryan its fees due under the Agreement.

### Third Cause of Action – Turnover

23. Paragraphs 1-22 above are incorporated herein by reference as if repeated verbatim.

24. Ryan seeks immediate accounting and turnover of all work-product, proprietary material and/or trade secrets in the possession of Debtor.

### Fourth Cause of Action – Attorneys' Fees and Costs

25. Paragraphs 1-24 above are incorporated herein by reference as if repeated verbatim.

26. Ryan seeks recovery of reasonable and necessary attorneys' fees and expenses incurred in prosecuting this action, to the extent permitted by applicable law.

27. Ryan seeks recovery of all costs of court as may be allowed by the Court in prosecuting this action.

WHEREFORE, Ryan respectfully requests entry of judgment in its favor, and against Debtor, as follows:

1. With respect to the First Cause of Action, declaratory relief as described in that Count;

2. With respect to the Second Cause of Action, injunctive relief as described in that Count;

3. With respect to Third Cause of Action, direction of turnover as described in that Count;

4. With respect to Fourth Cause of Action, award Ryan its reasonable and necessary attorneys' fees and expenses and costs of court as may be permitted under applicable law;

5. Award Ryan interest due on all sums awarded Ryan under this Complaint as permitted by the Agreement and/or applicable law; and

6. Such other and further relief as is just and proper, at law or in equity, under the circumstance.

[Counsel signatures on next page]

Dated: April 26, 2010.

Respectfully submitted,

/s/ Bruce W. Akerly
Bruce W. Akerly, Texas Bar No. 00953200
CANTEY HANGER LLP
1999 Bryan Street, Suite 3330
Dallas, Texas 75201-3100
(214) 978-1429 Telephone
(214) 978-4150 Facsimile
ATTORNEYS FOR RYAN, INC.
f/k/a RYAN & COMPANY, INC.

and

/s/ Robert M. Marino
Robert M. Marino, Esq. VSB #26076
REDMON PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000 Telephone
(703) 684-5109 Facsimile
LOCAL ATTORNEYS FOR RYAN, INC.
f/k/a RYAN & COMPANY, INC.