Gregg M. Galardi, Esq.  Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.  Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP  One James Center
One Rodney Square  901 E. Cary Street
PO Box 636  Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

           - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-1720
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                     :  Chapter 11
                           :
CIRCUIT CITY STORES, INC., :  Case No. 08-35653 (KRH)
et al.,                    :
                           :
            Debtors.       :  Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF THE
DEBTORS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
THIRTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (REDUCTION OF
CERTAIN PERSONAL PROPERTY TAX CLAIMS)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION............................................... 1

STATEMENT OF MATERIAL FACTS................................ 1

PRELIMINARY STATEMENT..................................... 3

ARGUMENT.................................................. 4

I.    A MOTION FOR SUMMARY JUDGMENT IS APPROPRIATE IN
      THE PRESENT CIRCUMSTANCES............................ 4

      A.    Standard For Summary Judgment.................. 4

      B.    Common Threshold Legal Issues Warrant
            Bifurcating The Proceedings On The Objection.... 6

II.   THIS COURT SHOULD NOT ABSTAIN FROM RULING ON THE
      OBJECTION........................................... 7

      A.    Standard For Discretionary Abstention.......... 8

      B.    All Of The Factors Weigh Heavily In Favor Of
            The Court Not Abstaining From Hearing The
            Objection..................................... 12

III.  RELIEF IS NOT BARRED BY SECTION 505(A)(2)(C)........ 17

      A.    Fundamental Principles Of Statutory
            Construction Establish That This Court May
            Determine The Amount Of Property Tax Claims.... 19

      B.    The Limited Legislative History Supports The
            Conclusion That This Court May Determine The
            Amount Of Property Tax Claims................. 26

CONCLUSION............................................... 29

## INTRODUCTION

The debtors and debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors"),[1]

pursuant to sections 105, 502, and 505 of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (as amended,

the "Bankruptcy Code"), Rules of 3007, 7056, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 56 of the Federal Rules of Civil Procedure

(the "Civil Rules"), submit this memorandum of law in

support of their motion for partial summary judgment (the

"Motion") with respect to the responses to the Thirty-

Seventh Omnibus Objection to Claims (Reduction of Certain

Personal Property Tax Claims (Docket No. 4613) (the

"Objection").

## STATEMENT OF MATERIAL FACTS

On November 10, 2008 (the "Petition Date"), the

Debtors filed voluntary petitions in this Court for relief

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company
of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353), Kinzer
Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,
LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
LLC (5512). The address for the Debtors is 4951 Lake Brook Drive,
Suite #500, Glen Allen, VA 23060.

under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

On April 1, 2009, this Court entered an Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections (Docket No. 2881) (the "Omnibus Objection Procedures Order").

On August 24, 2009, the Debtors filed the Objection to 120 proofs of claim (the "Property Tax Claims") asserting 2009 personal property taxes in the aggregate amount of $4,600,321.53 seeking to reduce the aggregate amount of such Property Tax Claims to no more than $2,355,096.95.  The deadline for responding to the Objection was September 25, 2009.  Ninety-four (94) claimants (collectively, the "Respondents") filed responses (collectively, the "Responses") to the Objection.  A list of Respondents and the docket number of the associated Response is attached hereto as Exhibit A.  On October 7, 2009, the Court conducted an initial status hearing on the Objection and adjourned the hearing on the Objection with respect to the Respondents.

### PRELIMINARY STATEMENT

As set forth in the Objection, the Debtors, with the assistance of Ernst & Young LLP ("E&Y"), determined the personal property tax value of the personal property assets located at each of the Debtors' stores in each Respondent's

3

jurisdiction as of that jurisdiction's respective 2009 assessment date.  As a result, the Debtors objected to the Property Tax Claims on the grounds that they were overstated.

In response, the Respondents contend that (i) the Court should abstain from hearing the Objection pursuant to section 505(a) of the Bankruptcy Code; and (ii) the relief is barred pursuant to section 505(a)(2)(C) of the Bankruptcy Code.[2]

By this Motion, the Debtors are seeking determinations that (i) abstention is not proper and (ii) the relief sought in the Objection is not barred by Bankruptcy Code section 505(a)(2)(C).  The Debtors are not now seeking a determination as to the allowed amount of the Property Tax Claims.

**ARGUMENT**

**I.    A MOTION FOR SUMMARY JUDGMENT IS APPROPRIATE IN THE PRESENT CIRCUMSTANCES.**

**A.    Standard For Summary Judgment.**

Pursuant to section 502(a), a party in interest, including the debtor, may object to claims. <u>See</u> 11 U.S.C. § 502(a).  In turn, Bankruptcy Rule 3007(a) provides that such

---

[2]    By this Motion, the Debtors are seeking relief only as to these issues.

objection must be in writing and filed with the Court.  Fed.
R. Bankr. P. 3007(a).

Claim objections are contested matters pursuant to
Bankruptcy Rule 9014.  In re IBIS Corp., 272 B.R. 883, 893
(Bankr. E.D. Va. 2001) ("Objections to proofs of claims are
contested matters governed by Fed. R. Bankr. P. 9014.").  As
in the case of all other contested matters, Bankruptcy Rule
7056, which incorporates Civil Rule 56, applies to claim
objections. See Fed. R. Bankr. P. 9014(c).

Pursuant to Civil Rule 56(b), "[a] party against
whom relief is sought may move at any time, with or without
supportive affidavits, for summary judgment on all or part
of the claim."  Fed. R. Civ. P. 56(b).  "Summary judgment is
appropriate if there is no genuine issue as to any material
fact and the moving party is entitled to judgment as a
matter of law."  In re US Airways, Inc., No. 1:06CV539, 2006
WL 2992495, at *4 (E.D. Va. 2006) (citing Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1985)).

Summary judgment is not a disfavored procedural
shortcut, but rather an integral part of the Civil Rules as
a whole, which are designed "to secure the just, speedy and
inexpensive determination of every action." Sibley v.
Lutheran Hosp. of Md., Inc., 871 F.2d 479, 483 n.9 (4th Cir.

1989) (citing Celotex, 477 U.S. at 327).  In this regard, a

court may properly grant summary judgment where,

> [a]lthough each side in its submissions has
> presented a different characterization of the
> facts . . . and has argued different conclusions
> which the court should draw from those facts,
> there is little dispute as to actual facts and no
> dispute of material facts relevant to the
> determination of the causes of action.

In re Conn. Pizza, Inc., 193 B.R. 217, 220 (Bankr. D. Md.

1996); see also Goodman v. Resolution Trust Corp., 7 F.3d

1123, 1124 (4th Cir. 1993) (finding that summary judgment is

appropriately granted where there are "no relevant disputes

of material fact").

**B.    Common Threshold Legal Issues Warrant Bifurcating
       The Proceedings On The Objection.**

As discussed above, all Respondents contend that

this Court should abstain and many contend that the relief

requested by the Objection is barred by Bankruptcy Code

section 505(a)(2)(C).  Thus, before this Court may proceed

to determine the allowed amount of any Property Tax Claim,

this Court should address the Respondents' threshold

challenges.  As this Court has previously determined,

bifurcating the claims' proceedings to address such issues

is both efficient and proper.  See In re Circuit City

Stores, Inc., 2010 Bankr. LEXIS 44, *14 (Bankr. E.D. Va.

Jan. 6, 2010)("Bifurcating the Hearing between a common

threshold legal issue that pertains to all the Claims

Objections and reserving for later determination the

underlying issues unique to each of the adversary

proceedings will create efficiencies in resolving the Claims

Objections as well as greater opportunity for all interested

parties to participate and be heard.").

## II.   THIS COURT SHOULD NOT ABSTAIN FROM RULING ON THE OBJECTION

The Respondents have not argued that Bankruptcy

Code section 505 (or any other applicable law) mandates that

this Court abstain from hearing the Objection.  In fact,

neither section 505, nor any other applicable law, mandates

abstention.  See, generally, 11 U.S.C. § 505; 28 U.S.C. §

1334(c)(2).  Consequently, the abstention argued for by the

Respondents is entirely within this Court's discretion.

See, e.g., Luan Investment S.E. v. Franklin 145 Corp. (In re

Petrie Retail Inc.), 304 F.3d 223, 232 (2d Cir. 2002)

("Permissive abstention from core proceedings under 28

U.S.C. § 1334(c)(1) is left to the bankruptcy court's

discretion."); In re RNI Wind Down Corp., 348 B.R. 286, 295

(Bankr. D. Del. 2006) (same); In re New Haven Projects Ltd.

Liability Co., 225 F.3d 283, 288 (2d Cir. 2000) (finding

that courts have discretion to determine whether to abstain under Bankruptcy Code section 505).

**A.    Standard For Discretionary Abstention.**

This Court may not abstain from exercising jurisdiction pursuant to section 505 of the Bankruptcy Code or 28 U.S.C. § 1334, unless the interests of the Debtors, their creditors, and other parties in interest would be served by abstention.  See In re Hospitality Ventures/Lavista, 314 B.R. 843 (Bankr. N.D. Ga. 2004); In re Cable & Wireless USA, Inc., 331 B.R. 568 (Bankr. D. Del. 2005); see also In re Smith, 122 B.R. 130 (Bankr. M.D. Fla. 1990).[3]  Indeed, a federal court should exercise the jurisdiction conferred upon it absent a compelling reason not to do so.  See In re Metromedia Fiber Network, Inc., 299 B.R. 251, 280-81 (Bankr. S.D.N.Y. 2003) (recognizing "the general precept that a federal court should exercise the jurisdiction conferred upon it absent a compelling reason not to do so").

In that regard, "'despite the discretionary nature of the decision whether to abstain' from hearing the Section

---

[3]    Some of the Respondents intimate that there may be a looser standard for this Court's abstention under section 505 of the Bankruptcy Code than under 28 U.S.C. § 1334.  Whether analyzed under section 505 of the Bankruptcy Code or 28 U.S.C. § 1334, this Court should not abstain if the interests of the parties would be best served by not abstaining.

505 adversary proceeding . . . the decision to abstain may not be arrived at 'as a matter of whim or personal disinclination.'"  Metromedia Fiber Network, Inc., 299 B.R. at 281 (quoting Federated Rural Elec. Ins. Corp. v. Arkansas Elect. Coops., Inc., 48 F.3d 294, 297 (8th Cir. 1995)). Instead, as one court has stated, "Supreme Court precedent suggests that federal courts should be sparing in the exercise of discretionary abstention."  Texaco Inc. v. Sanders (In re Texaco Inc.), 182 B.R. 937, 946 (Bankr. S.D.N.Y. 1995) (citing New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358 (1989) ("Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred.")).  Consequently, absent some strong or compelling reason, this Court should not abstain with respect to the Objection.  Here, the Respondents have not (and cannot) identify a strong or compelling reason to in favor of abstention.

To determine whether to abstain under section 505, a number of courts have relied on the following six-factor analysis:

(1)  the complexity of the tax issue;

(2)    the need to administer the
bankruptcy estate in an expeditious
fashion;

(3)    the burden on the bankruptcy court's
docket;

(4)    the length of time necessary to
conduct the hearing and to render a
decision thereafter;

(5)    the asset and liability structure of
the debtor; and

(6)    the potential prejudice to the
debtor, the taxing authority, and
creditors.

Id. at 289; see also In re Galvano, 116 B.R. 367, 372

(Bankr. E.D.N.Y. 1990); Northbrook Partners, LLP v. Hennepin

(In re Northbrook Partners, LLP), 245 B.R. 104, 118 (Bankr.

D. Minn. 2000); In re D'Alessio, 181 B.R. 756, 759-60

(Bankr. S.D.N.Y. 1995); In re AWB Assoc., 144 B.R. 270, 277-

78 (Bankr. E.D. Pa. 1992).[4]

---

[4]    In addition, other courts have looked to the following nonexhaustive
and, in some instances, overlapping factors:

Whether bankruptcy issues predominate; the complexity of the tax
issue; whether a bankruptcy purpose would be served; the need for
orderly, efficient, and expeditious administration of the case;
the legislative purpose of § 505; the length of time to resolve
the matter; the burden on the docket; the asset and liability
structure of the debtor; uniformity of assessment; potential
prejudice to the debtor, taxing authority, and creditors; and
other factors, such as judicial economy, fairness and convenience
to litigants, and the simplicity of the nonbankruptcy issues.

In re Lawrence Allen Dees, 369 B.R. 676, 677-68; see also In re
William J. Gilliam, 2009 U.S. Dist. LEXIS 102194, at *5 (D.S.C. Sept.
25 2009) (noting that bankruptcy court considered a number of factors
in determining whether to abstain under section 505).  For the reasons

Critically, in reviewing these factors, it is important to understand that abstention under section 505 is inappropriate unless the purposes of section 505 -- expediting the administration of the estate or reducing tax claims that dilute the recovery to other creditors -- would not be served by exercising jurisdiction over the proceeding.  In re Kopp, 355 B.R. 296, 300 (Bankr. N.D. Okla. 2006) (citing Shapiro v. United States (In re Shapiro), 188 B.R. 140, 144, 148-50 (Bankr. E.D. Pa. 1995)); see also In re New Haven, 225 F.3d at 288 (noting two predominant underlying purposes: (1) to protect creditors "from the dissipation of an estate's assets in the event that the debtor failed to contest the legality and amount of taxes assessed against it . . ."; and (2) to "afford an alternative forum for proceedings that might otherwise delay the orderly administration of the case and distribution to the debtor's creditors.").

As demonstrated below, the purposes of section 505 would be well-served if the Court were not to exercise its discretion to abstain.

---

discussed herein, the Debtors submit that these factors have been satisfied as well.

**B.    All Of The Factors Weigh Heavily In Favor Of The
Court Not Abstaining From Hearing The Objection.**

**(1)  The tax issues raised in the Objection
are not complicated.**

By the Objection, the Debtors seek to reduce the

amount of the Property Tax Claims because they are

overstated.  The underlying tax issue is not complicated and

not something with which this Court has no experience.  The

critical factual issue to be resolved is the value of the

personal property in each Respondent's jurisdiction as of

the respective 2009 assessment date.  Therefore, the issue

it not complex and this factor weighs against abstention.

**(2)  Resolving the Property Tax Claims
through the Objection is the most
efficient and expeditious means to
administer the Debtors' estates.**

As this Court is well aware, the Debtors have

liquidated their businesses and no longer operate stores in

any of Respondents' jurisdictions.  Indeed, the Debtors'

only remaining activities are entirely in this Court.  Thus,

unlike an individual or a reorganized company, the Debtors

have no ongoing involvement with the Respondents.

Proceeding to liquidate these claims through the

Objection, including by conducting evidentiary hearings (if

necessary) on the value of the Debtors' personal property,

is exceedingly efficient for all of the parties since there are common issues and there may be common evidence applicable to multiple claims.  Moreover, all of the Respondents filed proofs of claim subjecting themselves to the jurisdiction of this Court.  See  Metromedia Fiber Network, Inc., 299 B.R. at 273; 11 U.S.C. § 106(b) ("A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.").  Consequently, this Court has jurisdiction over all of the parties to the dispute, the Property Tax Claims, and the property to be used to satisfy any allowed Property Tax Claims.

Accordingly, proceeding to resolve the Property Tax Claims before this Court will be most efficient and expedient and this factor weighs against abstention.

> **(3)  Resolving the Property Tax Claims
> through the Objection would not place
> undue burden on the Bankruptcy Court's
> docket.**

Proceeding by means of the Objection would not place an undue burden on the Court, because, as noted above,

there are common issues and there may be common evidence applicable to multiple claims which would enable the Court to consolidate evidentiary hearings, to the extent such hearings prove necessary.  While the Debtors recognize that this Court has a consistently full docket, the Debtors respectfully submit that the net gains in judicial economy that will result from having all of the Property Tax Claims resolved in one forum -- a forum, moreover, that is very familiar with the Debtors and their cases -- outweigh the incremental additional burden that would be placed on the Court's docket.  Indeed, ultimately, the Property Tax Claims will need to be allowed or disallowed by this Court and paid under any confirmed plan.

Consequently, this factor weighs against abstention.

### (4) Resolving the Property Tax Claims through the Objection would not take an excessive amount of time.

Similarly, because there are likely to be common issues and evidence among various of the Property Tax Claims, thereby allowing for consolidated hearings, resolving the Property Tax Claims through the Objection is unlikely to take an unduly long time.  Indeed, as demonstrated below, proceeding by means of the Objection is

likely to be the most expeditious and efficient method for
resolving the Property Tax Claims and will certainly be far
faster than individual resolution of the Property Tax Claims
in state courts across the country.

Accordingly, this factor weighs against
abstention.

**(5) Resolving the Property Tax Claims
through the Objection is appropriate
given the asset and liability structure
of the Debtors.**

Here, the Debtors have liquidated substantially
all of their assets and are in the process of realizing
value on their remaining assets, primarily through
collection of accounts receivable and other causes of
action.  As a result, the Debtors' primary asset is cash,
all of which will ultimately be distributed under the Plan
to creditors.  Similarly, the Debtors are currently
reconciling all of their liabilities in order to distribute
their assets to the holders of allowed claims.  Given this
simple and straightforward asset and liability structure and
the fact that all of these activities are occurring before
this Court, this factor also weighs against abstention.

**(6)  Resolving the Property Tax Claims
outside the Bankruptcy Court would be
highly prejudicial to the Debtors.**

Finally, this factor weighs against abstention.

If this Court were to abstain, the Debtors would be forced
to litigate the value of the Property Tax Claims in
jurisdictions throughout the country.  That process would be
extremely costly and could result in inconsistent rulings on
common factual and legal disputes.  Comparatively, should
the Court proceed with the Objection, the Respondents will
merely have to deal with the minor inconvenience of
defending proofs of claim that they voluntarily filed with
this Court.  Consequently, as with the previous five
factors, this factor weighs against abstention.

Notwithstanding that the abstention favors all
weigh against abstention, many Respondents cite In re
Metromedia Fiber Network, Inc., supra, for the proposition
that this Court should abstain.  Any reliance on Metromedia
is misplaced.

In Metromedia, the debtor was a reorganized
company continuing to operate in the jurisdictions subject
to the action.  Furthermore, none of the taxing authorities
in those jurisdictions filed proofs of claim in the debtor's
bankruptcy case.  Notably, the court in Metromedia stated:

> If the state defendants in these adversary
> proceedings had filed proofs of claim for taxes
> owed by the debtors' estates, the states would
> have thereby subjected themselves to the <u>in rem</u>
> jurisdiction of this Court, at least to the extent
> of adjudicating all objections to such claims,
> including the objection that a state agency
> appraised property at excessive value for tax
> purposes. However, none of the state defendants
> has filed a proof of claim in the debtors'
> bankruptcy cases. Nor are the Section 505
> adversary proceedings objections to claims filed
> against the debtors' estates.

<u>Metromedia Fiber Network</u>, 299 B.R. at 273. As set forth

above, here, all of the Respondents filed proofs of claim

and have submitted to the jurisdiction of this Court.

Accordingly, as demonstrated above, all of the

relevant factors weigh heavily in favor of this Court not

abstaining and adjudicating the merits of the Objection.

**III. RELIEF IS NOT BARRED BY SECTION 505(A)(2)(C).**

Many of the Respondents argue that pursuant to

section 505(a)(2)(C) of the Bankruptcy Code, this Court is

precluded from determining the amount of a tax claim if the

non-bankruptcy based period for redetermination of a tax

assessment has expired, even if such a period expired after

the Petition Date. As demonstrated below, this

interpretation of section 505(a)(2)(C) should be rejected.

Section 505(a)(2)(C) of the Bankruptcy Code was

added as part of Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BACPA").  It provides in pertinent part that "[t]he court may not [] determine . . . the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired."  11 U.S.C. § 505(a)(2)(C) (emphasis added).  As the emphasized language makes clear, however, section 505(a)(2)(C) explicitly exempts "a bankruptcy law,"  11 U.S.C. § 505(a)(2)(C), and, thus, contemplates the situation in which applicable non-bankruptcy law would have expired, but for a bankruptcy law providing otherwise.  The Debtors maintain that Bankruptcy Code section 108(a) is an exception contemplated by Bankruptcy Code section 505(a)(2)(C).

Specifically, by including the language "other than a bankruptcy law" Congress intended to preserve the applicability of section 108(a) and its tolling of a state law appeal period that had not expired as of the Petition Date.  In particular, Bankruptcy Code section 108(a) provides, in relevant part:

> If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of

> – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a).  Section 108(a) effectively tolls the running of any state-law statute of limitations or appeals period so long as that period had not expired prior to the petition date.

Read together, section 505(a)(2)(C) and section 108(a) preserve the Debtors' ability to challenge and the Court's ability to determine the proper amount of the Property Tax Claims, as long as the applicable non-bankruptcy law period had not expired as of the Petition Date.  This interpretation is consistent with fundamental principles of statutory construction and the limited legislative history.

**A.   Fundamental Principles Of Statutory Construction Establish That This Court May Determine The Amount Of Property Tax Claims.**

It is beyond debate that "[i]f the language of the statute is unambiguous and there is no clear Congressional intent to the contrary, the language is conclusive." _In re McLean Square Associates, G.P._, 201 B.R. 436, 442 (Bankr E.D. Va. 1996) (citing _In re JKJ Chevrolet, Inc._, 26 F.3d 481, 483 (4th Cir. 1994)).  Thus, where a provision is

unambiguous, courts must give effect to the plain meaning of
the statutory language.  See Connecticut Nat. Bank v.
Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time
and again that courts must presume that a legislature says
in a statute what it means and means in a statute what it
says there. . . . When the words of a statute are
unambiguous, then, this first canon is also the last:
'judicial inquiry is complete.'" (internal citations
omitted)).  In that regard, the Court's objective is to give
meaning to all parts of the statute.  See FCC v. NextWave
Pers. Communs. Inc., 537 U.S. 293, 302 (2003) (holding that
a reading that renders statutory text superfluous "must be
rejected."); Ziegler Coal Co. v. Kleppe, 536 F.2d 398, 406
(D.C. Cir. 1976) ("[A] statute should not be construed in
such a way as to render certain provisions superfluous or
insignificant.").

        The Debtors' proposed interpretation gives meaning
to all of the words in section 505(a)(2)(C) and section
108(a) and, in particular, the phrase "other than a
bankruptcy law."  In contrast, the Respondents' proposed
interpretation reads that phrase out of section
505(a)(2)(C).  Consequently, the Respondents' interpretation

should be rejected in favor of the Debtors' straightforward
interpretation that gives meaning to the entire statute.

Not only is the Debtors' interpretation consistent
with the plain language of the statute, but it is also
consistent the statute's long-standing purpose.
Specifically, section 505(a)(2)(C)'s purpose is to protect
the estate from loss incurred because of the debtor's
failure to contest incorrect tax assessments when the period
to do so has not expired as of the petition date.  See,
e.g., In re East Coast Brokers & Packers, Inc., 142 B.R.
499, 501 (Bankr. M.D. Fla. 1992) (citing City Vending v.
Okla. Tax Comm'n, 898 F.2d 122, 125 (10th Cir.) (stating
that holding debtor to the time limitations created by state
law for challenging the assessment would subvert the clear
purpose and intent of section 505), cert. denied, 112
L.Ed.2d. 48 (1990)).  Under the Debtors' proposed
interpretation, that purpose may still be served.  Under the
Respondents' interpretation, a debtor must challenge the
assessment post-petition before expiration of the state law
period, as though no case had been filed, even if that
period expires during the first few weeks or months of a
complex case and even though the failure to do so could

undermine a debtor's reorganization efforts and "fresh start".

Moreover, in this Circuit, there is a general principle of statutory construction disfavoring repealing a statute by implication.  See United States v. Mitchell, 39 F.3d 465, 472 (4th Cir. 1994) (noting that "a 'strong presumption' exists against repeal by implication . . . and that it is 'a cardinal principle of statutory construction that repeals by implication are not favored'" (internal citations omitted)); Radzanower v. Touche Ross & Co., 426 U.S. 148, 154 (1976)("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.").[5]  Here, the Respondents have not cited and

---

[5]  "When two acts touch upon the same subject, both should be given effect if possible, United States v. Borden Co., 308 U.S. 188, 198, 84 L. Ed. 181, 60 S. Ct. 182 (1939), because the rationale of the presumption [against implied repeal] . . . is not that Congress is unlikely to change the law . . . but rather, that Congress 'legislates with knowledge of former related statutes,' and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction.  United States v. Hansen, 249 U.S. App. D.C. 22, 772 F.2d 940, 944-45 (D.C. Cir. 1985) (quoting Continental Ins. Co. v. Simpson, 8 F.2d 439, 442 (4th Cir. 1925)), cert. denied, 475 U.S. 1045 (1986).  Thus, a repeal by implication will only be found when there is clear legislative intent to support it.  United States v. Joya-Martinez, 947 F.2d 1141, 1144 (4th Cir. 1991).  Or, stated differently, a later act will not repeal an earlier one in the absence of a clear and manifest intention of Congress. Borden, 308 U.S. at 198.  A court may find the requisite degree of intent when (1) 'the two acts are in irreconcilable conflict,' or (2) 'the later act covers the whole subject of the earlier one and is clearly intended as a substitute.'  Radzanower, 426 U.S. at 154 (quoting Posadas v. National City Bank of New York, 296 U.S. 497, 503, 80 L. Ed. 351, 56 S. Ct. 349 (1936)).  Statutory

the Debtors are not aware of any Congressional statement (in the Bankruptcy Code or otherwise) evidencing an express intent to repeal or otherwise limit the application of Bankruptcy Code section 108(a) in the context of enacting section 505(a)(2)(C).

Rather, section 505(a)(2)(C) was enacted in response to the proverbial "second bite at the apple" cases with respect to tax claims that were not timely contested pre-petition.  C.f., Drake v. Raymark Industries, Inc., 772 F.2d 1007, 1017, n. 10 (1st Cir. 1985) (finding that "[i]t is likely that McCarthy [v. The Bark Peking, 716 F.2d 130 (2d Cir. 1983)] has been implicitly overruled by Congress in the 1984 Amendments to the Longshore Act"); Zahran ex rel. Zahran v. New York Dept. of Educ., 306 F.Supp.2d 204, 211 (N.D.N.Y. 2004) (noting that "Congress amended the [Education of the Handicapped Act] to implicitly overrule Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)").

---

provisions will not be considered to be in irreconcilable conflict unless there is a 'positive repugnancy' between them such that they 'cannot mutually coexist.'  Radzanower, 426 U.S. at 155. Determination of whether statutes may coexist requires an inquiry into the legislative history and the language of the statutes themselves.  See Morton v. Mancari, 417 U.S. 535, 550, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974); see also Joya-Martinez, 947 F.2d at 1144.

Specifically, prior to BAPCPA, several courts had determined that a debtor was permitted to seek reassessment of certain taxes even though the state law time period for challenging the assessment had expired prior to the petition date.  See, e.g., In re East Coast Brokers & Packers, Inc., 142 B.R. at 501; In re Piper Aircraft Corp., 171 B.R. 415, 418 (Bankr. S.D. Fla. 1994) (holding that the plain language of section 505 grants bankruptcy courts authority to "determine the amount or legality of any tax" despite the fact that the taxes had not been contested within the 60 day period provided under Florida state law); see also In re Ledgemere Land Corp., 135 B.R. 193, 196 (Bankr. D. Mass. 1991) (stating that "[i]f the default is binding upon the creditors [of a debtor], they, or course, have not had their day in court.  Absent bankruptcy, the creditors are not entitled to be heard but where bankruptcy ensues, they do have an interest that is deserving of some protection.").

In reaching this conclusion, these courts relied on the language of section 505(a)(2)(A) providing that the court could not determine tax liabilities if "such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before

24

the commencement of the case under this title." See, e.g.,

East Coast Brokers & Packers, Inc., 142 B.R. at 500-01

(citing 11 U.S.C. § 505(a)(2)(A)).  Specifically, courts

reasoned that the mere expiration of a statute of

limitations did not constitute a "contest" or "adjudication"

and that, as a result, the bankruptcy court was permitted to

reassess such a claim despite the expiration of the review

period under state law prior to the petition date.  Id. at

501 (citing Ledgemere Land Corp., 135 B.R. at 195-96).

        Notably, not all courts followed this approach.

In a pre-BAPCPA case, In re CGE Shattuck LLC, 2001 Bankr.

LEXIS 1674, at *7-8 (Bankr. D.N.H. 2001), the bankruptcy

court held that under section 108(a):

> [I]f nonbankruptcy law establishes a deadline for
> the debtor to commence an action and the time
> period has not expired prior to the filing of the
> bankruptcy petition, the debtor would have until
> the longer of the time period under the state
> statute of limitations or two years after the
> order for relief is entered in which to commence
> such an action.

Id. (citing 11 U.S.C. § 108(a)).  The In re CGE Shattuck

court went on to grant summary judgment to the tax claimant

for those taxes whose appeal period had expired prior to the

petition date and the court denied summary judgment and

25

refused to abstain from reviewing those tax claims whose appeal period had not expired by the petition date.  Id.

By amending section 505(a), Congress apparently intended to address this split in the courts.  Specifically, by including the language "other than a bankruptcy law" the statute appears to implicitly overrule the East Coast Brokers & Packers, Ledgemere Land, and Piper Aircraft cases, making it clear that if a debtor fails to contest a tax assessment within the relevant state-law appeal period for contesting such an assessment, and that appeal period expires *prior* to the petition date, the debtor is precluded from challenging the assessment in the bankruptcy court. The Debtors submit that this is the singular perceived ill that Congress intended to fix through section 505(a)(2)(C) in the statutory scheme.  That is, elimination of the proverbial "second bite at the apple" cases with respect to tax claims that were not timely contested pre-petition.

**B.   The Limited Legislative History Supports The Conclusion That This Court May Determine The Amount Of Property Tax Claims.**

Although the legislative history of section 505(a)(2)(C) is limited, the National Bankruptcy Review Commission ("NBRC") had previously rejected a proposal to limit the scope of the bankruptcy court's authority to the

review of only those claims that could be properly reviewed
by a state court. See Williams, Jack F., NATIONAL BANKRUPTCY
REVIEW COMMISSION TAX RECOMMENDATIONS: NOTICE, JURISDICTION, AND CORPORATE
DEBTORS, 14 Bank. Dev. J. 261, 283-85 (1998). Pursuant to
congressional mandate, the NBRC reported its recommendations
for modification of the Bankruptcy Code to the President,
Congress, and Chief Justice of the Supreme Court on October
20, 1997. Id.

In making its recommendations, the NBRC rejected
several proposals to limit bankruptcy court jurisdiction.
One such proposal had suggested that if the time for appeal
of an assessment to an administrative tribunal or appeal of
a tribunal's decision to a state court would otherwise have
expired, the bankruptcy court would similarly lack
jurisdiction to hear the matter. Likewise, if under state
law, the time for the filing of a tax refund or
redetermination of a property tax assessment had expired, no
such request for reconsideration could be made to the
bankruptcy court. Id. at 283. Members arguing against the
proposal reasoned that:

> Congress had addressed the issue carefully and
> thoughtfully when it enacted section 505(a).
> Cogent reasons existed and still exist for the
> continuation of present section 505(a), including
> the concern that some state law procedures do not

> permit a judicial determination of taxes.
> Moreover, taxes are often assessed without the
> thoughtful participation of the taxpayer. The
> experience of the tax practitioners on the [NRBC]
> is that claims arising from uncontested
> proceedings are grossly overstated. This proposal
> would eliminate one of the most valuable,
> equitable tools of the bankruptcy court to
> establish the correct balance due.

Id.

Accordingly, the limited legislative history also supports the conclusion that the changes to Bankruptcy Code section 505(a)(2)(C) were not intended to go as far as the Respondents' interpretation would have it. Instead, a bankruptcy court is still able to hear challenges when the state law time period for challenging assessments has not run as of the petition date.

**CONCLUSION**

For the reasons set forth herein, the Debtors respectfully request that this Court grant the Motion and order partial summary judgment.

Dated: Richmond, Virginia     SKADDEN, ARPS, SLATE, MEAGHER &
       April 29, 2010          FLOM, LLP
                               Gregg M. Galardi, Esq.
                               Ian S. Fredericks, Esq.
                               P.O. Box 636
                               Wilmington, Delaware 19899-0636
                               (302) 651-3000

                                        - and -

                               SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                               Chris L. Dickerson, Esq.
                               155 North Wacker Drive
                               Chicago, Illinois 60606-7120
                               (312) 407-0700

                                        - and -

                               MCGUIREWOODS LLP

                               _/s/ Douglas M. Foley_____
                               Douglas M. Foley (VSB No. 34364)
                               Sarah B. Boehm (VSB No. 45201)
                               One James Center
                               901 E. Cary Street
                               Richmond, Virginia 23219
                               (804) 775-1000

                               Counsel for Debtors and Debtors
                               in Possession

**EXHIBIT A**

**(Respondents)**

| Respondent | Response Docket Number |
|---|---|
| Ada County, Idaho | 5110 |
| Alameda County, California Treasurer | 5098 |
| Alief, Texas ISD | 5108 |
| Allen County, Indiana | 5120 |
| Arlington, Texas ISD | 5108 |
| Bell County, Texas | 5104 |
| Bexar County, Texas | 5115 |
| Boulder County, Colorado | N/A |
| Brazoria County, Texas MUD #6 | 5108 |
| Brazos County, City of College Station, College Station, Texas Independent School District | 5104 |
| Brevard County Florida Tax Collector | 5009 |
| Cameron County, Texas | 5115 |
| Carroll, Texas ISD | 5108 |
| Charles County, Maryland | 5066 |
| City of Brighton, Michigan | 5065 |
| City of Cedar Hill, Texas | 5115 |
| City of Chesapeake, Virginia | 5068 |
| City of Fredericksburg, Virginia | 5069 |
| City of Hurst, Texas | 5108 |
| City of Lake Worth, Texas | 5108 |
| City of Midland, Midland County Hospital District, Midland Independent School District, Texas | 5104 |
| City of Waco, Waco Independent School District, Texas | 5104 |
| Clear Creek, Texas ISD | 5108 |
| Comal County, City of New Braunfels, Comal Independent School District, Texas | 5104 |
| County of Denton, Texas | 5104 |
| County of Taylor, City of Abilene, Abilene Independent School District, Texas | 5104 |
| County of Williamson, Texas | 5104 |
| Cypress-Fairbanks, Texas ISD | 5115 |
| Dallas County, Texas | 5115 |

| | |
|---|---|
| Desoto County, Mississippi | 5092 |
| El Paso, Texas | 5115 |
| Escambia County, Florida Tax Collector | 5112 |
| Fort Bend County, Texas | 5115 |
| Fort Bend, Texas ISD | 5108 |
| Fort Bend, Texas LID #2 | 5108 |
| Fort Worth, Texas ISD | 5108 |
| Frisco, Texas | 5115 |
| Galena Park, Texas ISD | 5108 |
| Gaston County, North Carolina | 5152 |
| Gregg County, Texas | 5115 |
| Harlingen, Texas | 5115 |
| Harlingen, Texas CISD | 5115 |
| Harris County, Texas | 5115 |
| Henrico County, Virginia | 5109 |
| Hernando County, Florida | 4885 |
| Hidalgo, Texas | 5108 |
| Highlands County, Florida | 4886 |
| Humble, Texas ISD | 5108 |
| Irving, Texas ISD | 5115 |
| Jefferson County, Texas | 5115 |
| Kitsap County, Washington Treasurer | 5027/5036 |
| Lee County, Florida Tax Collector | 4888 |
| Lewisville, Texas Independent School District | 5089 |
| Longview, Texas Independent School District | 5104/5115 |
| Los Angeles County, California | 5113 |
| Loudoun County, Virginia | 5102 |
| Lubbock, Texas CAD | 5108 |
| Manatee County, Florida by Ken Burton, Jr., Tax Collector | 4993 |
| Marion County, Florida | 4891 |
| McAllen, Texas ISD | 5115 |
| McAllen, Texas, City of | 5115 |
| McLennan County, Texas | 5115 |
| Memphis, Tennessee | 5115 |
| Midland County, Texas Tax Office | 5108 |
| Monterey County, California | 5113 |
| Montgomery County, Texas | 5115 |
| Nueces County, Texas | 5115 |
| Okaloosa County Florida Tax Collector, Chris Hughes | 4920 |
| Orange County Florida Tax Collector, | 4976 |

| | |
|---|---|
| Honorable Earl K. Wood | |
| Osceola County, Florida | 4893 |
| Palm Beach County, Florida Tax Collector | 4883 |
| Pierce County, Washington | 5111 |
| Pima County, Arizona | 5100 |
| Pinellas County, Florida | 4892 |
| Placer County, California | 4788/4932 |
| Polk County Florida by Joe G. Tedder Tax Collector | 4997/5011 |
| Potter County, Texas Tax Office | 5108 |
| Prince George County, Maryland | 5067 |
| Rockwall, Texas CAD | 5115 |
| Rockwall County, Texas | 5115 |
| Round Rock, Texas ISD | 5115 |
| Shasta County, California | 5101 |
| Smith County, Texas | 5115 |
| Snohomish County, Washington Treasurer | 5028 |
| South Texas College, Texas | 5115 |
| South Texas, Texas ISD | 5115 |
| Spokane County, Washington | 5033 |
| Tarrant County, Texas | 5115 |
| Travis County, Texas | 5071 |
| Tyler, Texas ISD | 5108 |
| Wake County, North Carolina Revenue Director | 5037 |
| Wichita County, Texas | 5108 |
| Woodlands, Texas Metro Center MUD | 5108 |
| Woodlands, Texas RUD #1 | 5108 |