Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

            **DEBTORS' RESPONSE TO TEXAS COMPTROLLER'S**
              **MOTION TO COMPEL PAYMENT OF TAXES**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby file this response (the "Response")

---

[1]  The Debtors and the last four digits of their respective taxpayer
     identification numbers are as follows: Circuit City Stores,
     Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
     (0875), Ventoux International, Inc. (1838), Circuit City Purchasing
     Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company

                                                        *(cont'd)*

to Texas Comptroller's (the "Claimant") Motion to Compel

Payment of Taxes (the "Motion") (Docket No. 7170).  In

support of the Response, the Debtors respectfully represent:

## BACKGROUND

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"), the

Debtors filed voluntary petitions in this Court for relief

under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue as debtors in possession

pursuant to Bankruptcy Code sections 1107 and 1108.

3.    On November 12, 2008, the Office of the United

States Trustee for the Eastern District of Virginia

appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").  To date, no trustee or examiner

has been appointed in these chapter 11 cases.

4.    On January 16, 2009, the Court authorized the

Debtors, among other things, to conduct going out of

business sales at the Debtors' remaining 567 stores

_____
*(cont'd from previous page)*
   of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353),
   Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
   Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS,
   Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,
   LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
   LLC (5512). The address for the Debtors is 4951 Lake Brook Drive,
   Suite #500, Glen Allen, VA 23060.

pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going-out-of-business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  The going-out-of-business sales were concluded on or about March 8, 2009.

5.    On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan").  The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. A hearing on confirmation of the Plan is currently scheduled for June 8, 2010.

6.    Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

**B.    General Bar Date.**

7.    On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing and balloting agent for the Debtors in these chapter 11 cases, pursuant to 28 U.S.C. § 156(c).

8.   On December 10, 2008, the Court entered that certain Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order").

9.   Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009 (the "General Bar Date"). Pursuant to the Claims Bar Date Order, this Court further approved the form of the claims bar date notice, attached as Exhibit A to the Claims Bar Date Order (the "Claims Bar Date Notice"), and the manner of service thereof.

10.   On December 17 and 19, 2008, KCC served a copy of the Claims Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other parties, including all of the Debtors' current employees and former employees for the three years prior to the Petition Date (Docket No. 1314). In addition, the Debtors published the Claims Bar Date

Notice in <u>The Wall Street Journal</u> (Docket No. 1395) and <u>The Richmond Times-Dispatch</u> (Docket No. 1394).

**C.     Administrative Bar Date.**

11.   On May 15, 2009, the Court entered that certain Order Pursuant to Bankruptcy Code Sections 105 and 503 and Bankruptcy Rules 2002 and 9007 (I) Setting Administrative Bar Date and Procedures for Filing and Objecting to Administrative Expense Request and (II) Approving Form and Manner of Notice Thereof (Docket No. 3354) (the "Administrative Expense Bar Date Order").

12.   Pursuant to the Administrative Expense Bar Date Order, the deadline for filing all administrative expense requests arising before April 30, 2009 against the Debtors was 5:00 p.m. (Pacific) on June 30, 2009 (the "Administrative Bar Date").  Pursuant to the Administrative Expense Bar Date Order, this Court further approved the form of the administrative expense bar date notice, attached as Exhibit A to the Administrative Expense Bar Date Order (the "Administrative Expense Bar Date Notice"), and the manner of service thereof.

13.   On or before May 22, 2009, KCC served a copy of the Administrative Expense Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule

5

2002, all of the Debtors' scheduled creditors in these
cases, all taxing authorities, and certain other parties.
(Docket No. 4609).  In addition, on May 21, 2009, the
Debtors published the Administrative Expense Bar Date
Notice in The Wall Street Journal (Docket No. 3968), The
Financial Times (Docket No. 3970) and The Richmond Times-
Dispatch (Docket No. 3969).

**D.   Claim No. 14815.**

14.   On February 24, 2010, Claimant filed claim number
14815 well after the Administrative Bar Date asserting an
administrative expense claim in the principal amount of
$1,181,459.55 against the Debtors purportedly for 2009
taxes ("Claim No. 14815").

<strong>RESPONSE</strong>

**A.   Claim No. 14815 Is Late Because It Was Filed After the
      Administrative Bar Date.**

15.   As set forth above, Claim No. 14815 was filed late
on February 24, 2010 – nearly eight (8) months after the
Administrative Bar Date.  Claimant was served with a copy
of the Administrative Expense Bar Date Notice at not less
than seven (7) addresses.  See Docket No. 4609.
Accordingly, Claimant received actual notice of the
Administrative Bar Date.

16.   A bar date for claims in a chapter 11 bankruptcy case serves a very important purpose; "[t]he requirement of a Bar Date in Chapter 11 enables the debtor...to establish the universe of claims with which it must deal and the amount of those claims."  In re A.H. Robins Co., Inc., 129 B.R. 457, 459 (Bankr. E.D. Va. 1991); see also In re Circuit City Stores, Inc., Case No. 08-35653, Feb. 4, 2010, Docket No. 6465, p. 8..  Premised on the imperative purpose of finality of asserting claims against a debtor in chapter 11, courts have not allowed claims filed by creditors after the bar date, absent special circumstances.  See In re Provident Hosp., Inc., 122 B.R. 683, 685 (D. Md. 1990), aff'd, 943 F.2d 49 (4th Cir. 1991) (unpublished opinion) ("Because [the claimant] did not timely file his bankruptcy claim after having been given constitutionally sufficient notice, his claim is barred under well-settled authority, 11 U.S.C. 1141(d) and Bankruptcy Rule 3003(c)(2).").

17.   Despite actual and constructive notice, Claimant failed to file Claim No. 14815 by the Administrative Bar Date.  As a result of Claimant's failure to timely file the claim by the Administrative Bar Date, Claimant is "forever barred, estopped and permanently enjoined from asserting

any Administrative Expense against the Debtors . . ."

Administrative Expense Bar Date Order, ¶ 12.

**B.    Claim No. 14815 Remains Under Review By the Debtors**

18.   The Debtors continue to actively review all of the filed claims and reconcile them with their books and records.   To date, the Debtors have filed seventy omnibus objections to claims.   The deadline for objecting to claims has not passed and the date of the hearing  to consider confirmation of the Plan is currently scheduled for June 8, 2010.

19.   Claim No. 14815 purports to be claim asserting taxes for 2009.   Although the claim alleges that the debt was incurred from January 1, 2009 to December 31, 2009, the liability was actually calculated on returns that arise from transactions occurring between March 1, 2007 and February 28, 2008.   From the Debtors' books and records, this tax is attributable to Fiscal Year 2008.[2]   Accordingly, the taxes set forth in Claim No. 14815 appear to the Debtors to arise prior to the Petition Date.

---

[2]  In previous years, the Debtors followed the same protocol and referenced this by the fiscal year basis (i.e. taxes have dates of January 1, 2008, would have been Fiscal Year 2007 taxes).  The State of Texas audited the Debtors several times in previous years and never objected to the Debtors reporting on a fiscal year basis.

**C.   The Claimant Has Failed To Meet Its Burden Of
Establishing That The Claim Is An Administrative
Expense Under Bankruptcy Code Section 503.**

20.   Administrative expense claims under Bankruptcy
Code section 503(b)(1)(A) are limited to "the actual,
necessary costs and expenses of preserving the estate." 11
U.S.C. § 503(b)(1)(A).  To grant an expense administrative
priority under Bankruptcy Code section 503(b), the Court
must find that the expense was an actual expense of the
estate and that payment of the expense is necessary to
preserve the Debtors' estate.  See Ford Motor Credit Co. v.
Dobbins, 35 F.3d 860, 866 (4th Cir. 1994) ("The modifiers
'actual' and 'necessary' must be observed with scrupulous
care[.]" (citation omitted)).

21.   The party filing an administrative expense claim
bears the burden of proving, by a preponderance of the
evidence, that its claim is entitled to administrative
priority under Bankruptcy Code section 503.  See In re
Boling Group, L.L.C., 2002 WL 31812671, at *4. (Bankr.
M.D.N.C. 2002) (citing In re Merry-Go-Round Enterprises,
Inc., 180 F.3d 149, 157 (4th Cir. 1999))("The burden of
proof is on the claimant to establish by a preponderance of
the evidence its entitlement to an administrative expense
award under 11 U.S.C. § 503(b)."); see also Ford Motor

9

Credit, 35 F.3d at 866 (finding that the creditor had the
burden of showing that it incurred a cost post-petition
that was actual and necessary to preserving the debtor's
estate).

22.   In order to determine whether a claim qualifies as
an administrative expense, the Fourth Circuit has
established a two-part test: "(1) the claim must arise out
of a post-petition transaction between the creditor and the
debtor-in-possession (or trustee) and (2) the consideration
supporting the claimant's right to payment must be supplied
to and beneficial to the debtor-in-possession in the
operation of the business." Devan v. Simon DeBartolo Group,
L.P.(Merry-Go-Round), 180 F.3d at 157 (quoting Stewart
Foods v. Broecker (In re Stewart Foods), 64 F.3d 141, 145
n.2 (4th Cir. 1995)); see also In re Baseline Sports, Inc.,
393 B.R. 105, 130 (Bankr. E.D. Va. 2008).  The Claimant has
failed to prove both elements of this test.

23.   Requests for payment of administrative expenses
are not entitled to the presumption of correctness that is
accorded claims prepetition creditors assert through proofs
of claim.  See 4 COLLIER ON BANKRUPTCY, ¶ 503.04.  The
Claimant filed Claim No. 14815 and it is its burden to
establish that it meets the statutory requirements, which

it has failed to do.  Accordingly, the Motion should be

denied.

**D.  The Claimant Has Failed To Prove The Existence Of A
     Post-Petition Transaction With The Debtors.**

24.  To determine whether a claim relates to pre-

petition or post-petition transactions with the debtor, the

Fourth Circuit Court of Appeals applies the "conduct test."

See Grady v. A.H. Robins Co., 839 F.2d 198, 201-02 (4th Cir.

1988) (applying the "conduct test" to determine when a

claim arises).  Under the conduct test, a claim arises,

i.e., a transaction occurs, when the event or conduct

giving rise to the claim first occurs.  See, e.g., id. at

202-03; In re Camellia Food Stores, Inc., 287 B.R. 52, 57

(Bankr. E.D. Va. 2002)(noting that the Fourth Circuit, in

A.H. Robins, applied a conduct test whereby the events

giving rise to a pre-petition claim must occur pre-petition

for the claim to arise pre-petition); see also In re U.S.

Airways, 2007 WL 3231573, *3 (Bankr. E.D. Va. 2007) ("A

debt 'arises,' for bankruptcy purposes, not when the

effects are felt but when the act giving rise to the

liability occurs.").

25.  Claim No. 14815 appears to be a claim for

transactions or events that occurred before the Petition

Date and occurred with an entity other than the Debtors, as debtors in possession.  Under the "conduct test," this claim arose pre-petition, and, therefore, does not qualify for administrative expense priority.  Accordingly, the Claimant has failed to meet its burden on this element of the Fourth Circuit Court of Appeal's test.

26.   Moreover, the Fourth Circuit Court of Appeals has expressed a policy "not to saddle debtors with special post-petition obligations lightly or give preferential treatment to certain select creditors."  Dornier Aviation (North America), Inc., 2002 WL 31999222 at *6 (citing Ford Motor Credit, 35 F.3d at 866).  To the extent Claim No. 14815 is not otherwise late, reclassifying it to a priority claim for taxes is consistent with this policy.

**E.   The Claimant Has Failed To Establish That The Debtors And Their Estates Received A Post-Petition Benefit.**

27.   In addition to the foregoing, before an administrative claim will be allowed, the Claimant must establish that the Debtors and their estates received a benefit.  Merry-Go-Round, 180 F.3d at 156; Stewart Foods, 64 F.3d at 145 n.2.  As noted above, Claim No. 14815 does not appear to be based on any post-petition transactions with the Debtors or their estates.  As such, no post-

petition benefit could have been conferred upon the Debtors, as debtors-in-possession.

28.   Assuming, _arguendo_, that the Debtors received some post-petition benefit from the transactions associated with Claim No. 14815, this fact alone is insufficient to give rise to an administrative expense claim under Bankruptcy Code section 503(b)(1).  _Ford Motor Credit_, 35 F.3d at 866 (holding that the debtor must receive a "concrete" benefit).  Here, Claimant has not met its burden of proving that the pre-petition transactions with the Debtors led to a "concrete" benefit to their estates.

29.   Accordingly, Claimant has failed to prove the second element required to receive an administrative expense claim.  Consequently, to the extent it is not otherwise late, this Court should reclassify Claim No. 14815.

**F.    Federal Bankruptcy Law Determines When a Claim Arises Not Texas State Law.**

30.   Section 101(5) of the Bankruptcy Code defines a claim broadly as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. §

101(5).  By fashioning a single definition of "claim," it was intended to have the broadest available scope.  See FCC v. NextWave Personal Communications, Inc., 537 U.S. 293 (2003); Johnson v. Home State Bank, 501 U.S. 78, 83 (1991).  "Congress intended that the definition of claim in the Code be as broad as possible, noting that 'the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court.'"  Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 200 (4th Cir. 1988) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S. Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S. Code Cong. & Adm. News, 5787 at 5807-08 and 6266.  This broad definition of a claim ensures that "no matter how remote or contingent, [such claims] will be able to be dealt with in the bankruptcy case." O'Loghlin v. County of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (quoting Siegel v. Federal Home Loan Mortgage Corp., 143 F.3d 525, 532 (9th Cir. 1998)).  A "'claim' for the purposes of bankruptcy may arise before such a claim would be cognizable in a non-bankruptcy context." Kresmery v. Service America Corp., 227 B.R. 10, 13 (D. Ct. 1998).

31.   "Whether a claim arises requires consideration of
the substantive law from which the claim arises, not of the
bankruptcy code itself; but when a claim arises for
bankruptcy purposes is determined according to bankruptcy
law, not according to the substantive law creating the
claim.   Fourth Circuit precedent on this point is legion."
In re US Airways Group, Inc., 296 B.R. 673, 680 (E.D. Va.
2003) (citing In re Remington Rand Corp., 836 F.2d 825, 830
(3d Cir.1988) (holding that "unless state or federal law
independently creates obligations, the bankruptcy court is
not presented with a claim to either recognize or reject");
In re Credit Indus. Corp., 366 F.2d 402, 407 (2d Cir.1966)
(holding that "[b]ankruptcy serves only as a forum for the
recognition of rights already acquired"); Merry-Go-Round
Enterprises, 180 F.3d 149, 156-57 (4th Cir. 1999) (applying
bankruptcy law to question whether, for the purposes of an
administrative priority claim, damages resulting from a
breach of a post-petition lease arose from transaction
occurring post-petition); Adventure Resources Inc. v.
Holland, 137 F.3d 786, 794-95 & n. 11 (4th Cir. 1998)
(applying bankruptcy law to question of when liabilities
under the Coal Act accrue as priority taxes under the Code);
Butler v. NationsBank, N.A., 58 F.3d 1022, 1029 (4th Cir.

15

1995) (holding that "to determine when a claim arises for
bankruptcy purposes, reference is to be made to federal
bankruptcy law rather than to state law"); Grady v. A.H.
Robins Co., 839 F.2d 198, 201 (4th Cir. 1988) (holding that
"claim accrual for bankruptcy purposes must be determined
in light of bankruptcy law and not state law"); In re BCE
West, L.P., 319 F.3d 1166, 1172-73 (9th Cir. 2003)
(applying bankruptcy law to determine that an
administrative expense claim for attorneys' fees incurred
post-petition fails because, under the Code, these post-
petition costs arose out of pre-petition contractual
agreement); In re National Gypsum Co., 139 B.R. 397, 405
(N.D. Tex.1992) (examining CERCLA claims and holding that
"[w]hile non-bankruptcy law governs the existence of a
claim under the Code, it is not dispositive of the time at
which a claim arises under the Code.")).  See also Ogden v.
Big Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1200
(10th Cir. 2002) ("While federal law determines when a
claim arises for bankruptcy purposes, non-bankruptcy
substantive law usually determines the existence of a
claim.") (internal citations omitted).

    32.  For bankruptcy law purposes, Claim No. 14815 arose
when the underlying acts occurred, which took place in

calendar year 2007 and 2008.  The fact that Texas does not

assess these taxes for another calendar year is irrelevant.

**G.  As A Pre-Petition Claim, Claim No. 14815 Should Be
Disallowed Because It Was Filed After The Government
Bar Date.**

33.  As set forth above, although Claim No. 14815 was

filed as an administrative expense, it appears to have

arisen pre-petition and, accordingly, cannot be allowed as

an administrative expense.  If it were reclassified as pre-

petition priority claim, it would be subject to

disallowance because it was filed after the Government Bar

Date.

34.  Pursuant to the Claims Bar Date Order, all

creditors were required to file proofs of claim for claims

arising prior to the Petition Date.  In that regard, the

Claims Bar Date Order provides in relevant part:

> Pursuant to Bankruptcy Rule 3003(c)(3),
> all "entities" and "persons" (as defined
> respectively in 11 U.S.C. § 101(15) and
> (41)), except any governmental unit (as
> defined in 11 U.S.C. § 101(27)) that are
> creditors holding or wishing to assert
> "claims" (as defined in 11 U.S.C. §
> 101(5)) arising before the Petition Date
> against any of the Debtors are required
> to file with the Debtors' Claims Agent
> (as defined below), on or before 5:00 p.m.
> (Pacific) on January 30, 2009 (the
> "General Bar Date") a separate, completed,
> and executed proof of claim form
> (conforming substantially to Official

Bankruptcy Form No. 10) on account of any such claims in accordance with the procedures set forth below.

. . .

Pursuant to Bankruptcy Rule 3003(c) and Bankruptcy Code section 502(b)(9), any governmental units (as defined in 11 U.S.C. § 101(27)) that are creditors holding or wishing to assert "claims" (as defined in 11 U.S.C. § 101(5)) arising before the Petition Date against any of the Debtors are required to file, on or before 5:00 p.m. (Pacific) on May 11, 2009(the "Governmental Bar Date") a separate, completed, and executed proof of claim form (conforming substantially to Official Bankruptcy Form No. 10) on account of any such claims in accordance with the procedures set forth below.

. . .

Any creditor that is required to file but fails to file a proof of claim for its claim in accordance with the procedures set forth in this order on or before the General Bar Date, the Governmental Bar Date, or such other date established hereby (as applicable) shall be forever barred, estopped, and enjoined from: (a) asserting any Claim against the Debtors that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, noncontingent, and unliquidated or (ii) is of a different nature or in a different classification (any such claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim; and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order, ¶¶ 2, 3, 12

 35. Furthermore, the Claims Bar Date Notice provided

in relevant part:

> **CONSEQUENCES OF FAILURE TO FILE PROOF OF CLAIM Any creditor that is required to file but fails to file a proof of claim for its Claim in accordance with the procedures set forth herein on or before the General Bar Date, the Governmental Bar Date, or such other date established hereby (as applicable) shall be forever barred, estopped, and enjoined from: (a) asserting any Claim against the Debtors that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, noncontingent, and unliquidated or (ii) is of a different nature or in a different classification (any such claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim; and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim. If it is unclear from the Schedules and Statements whether your Claim is disputed, contingent or unliquidated as to amount or is otherwise properly listed and classified, you must file a proof of claim on or before the General Bar Date. Any Entity that relies on the Schedules and Statements bears responsibility for determining that its Claim is accurately listed therein.**

Claims Bar Date Notice, p. 5 (emphasis in original).

36.   Thus, pursuant to the Claims Bar Date Order and
Claims Bar Date Notice, should Claim No. 14815 be
reclassified as a pre-petition priority tax claim, it
should further be disallowed as late-filed.

37.   Bar dates for asserting claims in chapter 11
bankruptcy cases serve extremely important purposes. "The
requirement of a Bar Date in Chapter 11 enables the
debtor . . . to establish the universe of claims with which
it must deal and the amount of those claims." In re A.H.
Robins Co., Inc., 129 B.R. 457, 459 (Bankr. E.D. Va. 1991).
Premised on the imperative purpose of finality of asserting
claims against a debtor, courts have not allowed claims
filed by creditors after the bar date, absent special
circumstances.  See In re Provident Hosp., Inc., 122 B.R.
683, 685 (D. Md. 1990), aff'd, 943 F.2d 49 (4th Cir. 1991)
(unpublished opinion) ("Because Bean did not timely file
his bankruptcy claim after having been given
constitutionally sufficient notice, his claim is barred
under well-settled authority, 11 U.S.C. 1141(d) and
Bankruptcy Rule 3003(c)(2).").

## CONCLUSION

WHEREFORE, the Debtors respectfully request that

the Court deny the Motion and grant the Debtors such other

and further relief as may be just and proper.

Dated: May 4, 2010        SKADDEN, ARPS, SLATE, MEAGHER &
     Richmond, Virginia    FLOM, LLP
                                          Gregg M. Galardi, Esq.
                                          Ian S. Fredericks, Esq.
                                          P.O. Box 636
  Wilmington, Delaware 19899-0636
  (302) 651-3000

          - and -

  SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM, LLP
  Chris L. Dickerson, Esq.
  155 North Wacker Drive
  Chicago, Illinois 60606
  (312) 407-0700

          - and -

  MCGUIREWOODS LLP

  /s/ Douglas M. Foley_____
  Douglas Foley (VSB No. 34364)
  Sarah B. Boehm (VSB No. 45201)
  One James Center
  901 E. Cary Street
  Richmond, Virginia 23219
  (804) 775-1000

  Counsel for Debtors and
  Debtors in Possession

\11220223.1

21