Gregg M. Galardi, Esq.                Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.               Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &        MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-1720
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' SEVENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS
(RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES
ON ACCOUNT OF EMPLOYEE OBLIGATIONS)**

The debtors and debtors in possession in the

above-captioned jointly-administered cases (collectively,

the "Debtors"),[1] hereby object and move this Court, pursuant
to sections 105, 502 and 503 of title 11 of the United
States Code (the "Bankruptcy Code"), Rule 3007 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), and Rule 3007-1 of the Local Bankruptcy Rules for
the United States Bankruptcy Court for the Eastern District
of Virginia (the "Local Rules"), for an order, substantially
in the form attached hereto as Exhibit A, reclassifying the
Claims (as defined herein) to general unsecured claims.  In
support of the Objection, the Debtors respectfully represent
as follows:

## SUMMARY OF OBJECTION

1.   The Debtors object to each Claim (as defined
herein) because each Claim arose prior to the Petition Date
and did not arise out of a transaction with the Debtors as
debtors in possession.  As a result, the Claims are not

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company
of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353), Kinzer
Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,
LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
LLC (5512). The address for the Debtors is 4951 Lake Brook Drive,
Suite #500, Glen Allen, VA 23060.

entitled to administrative priority.  Thus, the Claims

should be reclassified as general unsecured claims.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction to consider this

Objection under 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding under 28 U.S.C. § 157(b).  Venue of these cases

and this Objection in this district is proper under 28

U.S.C. §§ 1408 and 1409.

3.    The statutory and legal predicates for the

relief requested herein are Bankruptcy Code sections 105,

502 and 503, Bankruptcy Rule 3007 and Local Rule 3007-1.

### BACKGROUND

**A.    The Bankruptcy Cases.**

4.    On November 10, 2008 (the "Petition Date"),

the Debtors filed voluntary petitions in this Court for

relief under chapter 11 of the Bankruptcy Code.

5.    Pursuant to Bankruptcy Code sections 1107 and

1108, the Debtors are continuing as debtors in possession.

6.    On November 12, 2008, the Office of the

United States Trustee for the Eastern District of Virginia

appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").  To date, no trustee or examiner

has been appointed in these chapter 11 cases.

7.    On January 16, 2009, the Court authorized the Debtors, among other things, to commence liquidation and conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  The going out of business sales concluded on or about March 8, 2009.

8.    On September 29, 2009, the Debtors and the Creditors' Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009, and confirmation on the Plan is currently scheduled for June 8, 2010.

9.    Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

4

**B.    The Award Programs.**

**1.    The Long-Term Incentive Program.**

10.    Prior to the Petition Date, on or about October 9, 2008, Circuit City Stores, Inc. ("Circuit City") implemented a long-term performance-based incentive program (the "Long-Term Incentive Program") pursuant to which certain employees (the "Long-Term Incentive Program Participants") were eligible to earn cash incentive awards staggered over the following two years beginning in 2009 (the "Long-Term Incentive Awards") based on certain company performance criteria.  A sample letter setting out the terms of the Long-Term Incentive Program (the "Long-Term Incentive Program Sample Letter"), is attached hereto as <u>Exhibit D</u>.

11.    Under the Long-Term Incentive Program, the Long-Term Incentive Awards were dated September 29, 2008. <u>See</u> Long-Term Incentive Program Sample Letter at p. 1.

12.    To become a Long-Term Incentive Program Participant, each eligible employee was required to sign and return the letter setting out the terms of the Long-Term Incentive Program by November 1, 2008, with such letter constituting a separate agreement between the Long-Term Incentive Program Participant and the Debtors (each, a

"Long-Term Incentive Program Agreement"). <u>See</u> Long-Term

Incentive Program Sample Letter at p. 4.

13.   In connection with the June 30, 2009,

deadline to file administrative expenses allegedly arising

on or before April 30, 2009 (the "Administrative Bar Date"),

certain Long-Term Incentive Program Participants filed

administrative expense requests on account of amounts

allegedly due under the Long-Term Incentive Program.

**2.   The Cash Retention Program And Long-Term Cash
      Award Program.**

Prior to the Petition Date, on or about January 3,

2008, the Debtors implemented a special cash retention award

program (the "Cash Retention Program"), pursuant to which

certain employees (the "Cash Retention Program

Participants") were eligible to earn cash retention awards

staggered over the following three years, beginning in 2009

(the "Cash Retention Awards").  A sample letter, setting out

the terms of the Cash Retention Program (the "Cash Retention

Program Sample Letter"), is attached hereto as <u>Exhibit E</u>.

Similarly, on or about January 4, 2008, the

Debtors implemented a long-term cash award program (the

"Long-Term Cash Award Program" and together with the Cash

Retention Program, the "Cash Award Programs") pursuant to

which certain non-management employees (the "Long-Term Cash Award Program Participants" and together with the Cash Retention Program Participants, the "Cash Award Program Participants") were eligible to earn cash awards staggered over the following three years, beginning in 2009 (the "Long-Term Cash Awards" and together with the Cash Retention Awards, the "Cash Awards"). A sample letter, setting out the terms of the Long-Term Cash Award Program (the "Long-Term Cash Award Program Sample Letter"), is attached hereto as Exhibit F.

14.  Under the Cash Award Programs, the Cash Awards were dated January 1, 2008.  See Cash Retention Program Sample Letter at 1; Long-Term Cash Award Program Sample Letter at 1.

15.  To become a Cash Award Program Participant, each eligible employee was required to sign and return the letter setting out the terms of the applicable Cash Award Programs by February 1, 2008, with such letter constituting a separate agreement between the Cash Award Program Participant and the Debtors (each, a "Cash Award Program Agreement").  See Cash Retention Program Sample Letter at 3; Long-Term Cash Award Program Sample Letter at 2.

16.   In connection with the Administrative Bar Date, certain of the Cash Award Program Participants filed administrative expense requests on account of amounts allegedly due under the Cash Award Programs.

**3.   The Short-Term Incentive Program.**

17.   Prior to the Petition Date, Circuit City had an annual short-term performance-based incentive program, which began most recently on March 1, 2008 (the "Short-Term Incentive Program"), pursuant to which certain employees (the "Short-Term Incentive Program Participants") were eligible to earn cash incentive awards (the "Short-Term Incentive Awards") based on company performance criteria and, except with respect to senior vice presidents and above, individual performance.   The presentation that was provided to all participants (the "Short-Term Incentive Program Presentation") is attached hereto as <u>Exhibit G</u>.

18.   Prior to the Petition Date, eligible employees were automatically enrolled in the Short-Term Incentive Program at the beginning of each fiscal year, which commenced on March 1 of the preceding calendar year. Accordingly, for fiscal year 2009, the Short-Term Incentive Program commenced on March 1, 2008.   The performance period with respect to individual performance likewise commenced on

March 1, 2008.  The company performance criteria were revised in September of 2008, and the performance period with respect to such goals commenced on October 1, 2008.

19.  In connection with the Administrative Bar Date, certain of the Short-Term Incentive Program Participants filed administrative expense requests on account of amounts allegedly due under the Short-Term Incentive Program.

### 4.  The Phantom Stock Program.

20.  On or about January 3, 2008, Circuit City implemented a phantom stock award program (the "Phantom Stock Program") pursuant to which certain employees (the "Phantom Stock Program Participants") were eligible to earn incentive awards staggered over the following three years, beginning in 2009, in the form of phantom stock units (the "Phantom Stock Awards").  A sample letter, setting out the terms of the Phantom Stock Program (the "Phantom Stock Program Sample Letter"), is attached hereto as Exhibit H.

21.  Under the Phantom Stock Program, the Phantom Stock Awards were dated January 1, 2008.  See Phantom Stock Program Sample Letter at p. 1.

22.  To become a Phantom Stock Program Participant, each eligible employee was required to sign and

return the letter setting out the terms of the Phantom Stock
Program by February 1, 2008, with such letter constituting a
separate agreement between the Phantom Stock Program
Participant and the Debtors (each, a "Phantom Stock Program
Agreement" and, together with the Long-Term Incentive
Program Agreements and the Cash Award Program Agreements,
the "Award Program Agreements").  <u>See</u> Phantom Stock Program
Sample Letter at 2.

23.  In connection with the Administrative Bar
Date, certain of the Phantom Stock Program Participants
filed administrative expense requests on account of amounts
allegedly due under the Phantom Stock Program.

**5.  Miscellaneous Store Bonus Programs.**

24.  On various dates prior to the Petition Date,
certain of the Debtors' retail stores implemented bonus
programs (the "Store Bonus Programs" and together with the
Long-Term Incentive Program, the Cash Award Programs, the
Short-Term Incentive Program and the Phantom Stock Program,
the "Award Programs") pursuant to which certain employees at
those stores (the "Store Bonus Program Participants" and
together with the Long-Term Incentive Program Participants,
the Cash Award Program Participants, the Short-Term
Incentive Program Participants and the Phantom Stock Program

Participants, the "Award Program Participants") were

eligible to earn cash bonuses (the "Store Bonus Awards" and

together with the Long-Term Incentive Awards, the Cash

Awards, the Short-Term Incentive Awards and the Phantom

Stock Awards, the "Awards") for performance of various tasks

or accomplishments.  For example, certain of the Store Bonus

Programs offered Store Bonus Awards to employees who

reported fraud, theft or drug use in the store.  Other Store

Bonus Programs offered Store Bonus Awards to employees who

had the best sales records.

   25.  In connection with the Administrative Bar

Date, certain Store Bonus Program Participants filed

administrative expense requests on account of amounts

allegedly due under the Store Bonus Programs for Store Bonus

Awards earned for tasks or accomplishments completed prior

to the Petition Date.

**C.   Unpaid Wages and Salaries.**

   26.  In connection with the Administrative Bar

Date, certain of the Debtors' employees filed administrative

expense requests on account of amounts allegedly due for

unpaid wages or salaries earned prior to the Petition Date

for services performed prior to the Petition Date.

## OBJECTION TO CLAIMS AND RELIEF REQUESTED

27.  By this Objection, the Debtors seek entry of
an order, in substantially the form annexed as <u>Exhibit A</u>,
reclassifying the claims listed on <u>Exhibit C</u> attached hereto
(collectively, the "Claims") as general unsecured claims.
For ease of reference, <u>Exhibit B</u> is organized as an
alphabetical listing by claimant (the "Claimants"), with a
cross-reference by claim number.

## BASIS FOR OBJECTION

28.  Each Claim was asserted as an administrative
expense for amounts allegedly owed under one of the Award
Programs or for unpaid pre-petition wages and salaries.  The
particular basis for each Claim -- <u>i.e.</u>, the specific Awards
or the period of employment for which wages are sought -- is
set forth on <u>Exhibit C</u>.  As demonstrated below, because the
Claims all arose pre-petition and did not arise out of a
transaction with the Debtors as debtors in possession, and
for the additional reasons set forth herein, the Claims are
not entitled to administrative priority and should be
reclassified to general unsecured claims.

29.  For the Court's reference, these Claims are
substantially similar to the claims that were the subject of
the Debtors' 56th omnibus objection and for which this Court

held three hearings on March 8, 2010, March 25, 2010, and
April 6, 2010.  At the conclusion of the April 6, 2010,
hearing, this Court reclassified each of the claims to
general unsecured, non-priority claims.  See Supplemental
Order Sustaining Debtors' Fifty-Sixth Omnibus Objection to
Claims (Disallowance of Certain Alleged Administrative
Expenses on Account of Employee Obligations) (D.I. 7081)
(reclassifying claims under the Award Programs from
administrative expense requests to general unsecured
claims); see also Order on Debtors' Fifty-Sixth Omnibus
Objection to Claims (Disallowance of Certain Alleged
Administrative Expenses on Account of Employee
Obligations) (D.I. 6071).  The Debtors submit that, for
substantially the same reasons, the Claims should be
reclassified to general unsecured non-priority claims.

**I.    THE CLAIMS ARE NOT ALLOWABLE AS ADMINISTRATIVE EXPENSE
        CLAIMS BECAUSE THEY AROSE PRIOR TO THE PETITION DATE.**

        30.   As this Court is well aware, the Fourth
Circuit Court of Appeals applies the "conduct test" to
determine when a claim arises.  See Grady v. A.H. Robins
Co., 839 F.2d 198 (4th Cir. 1988); In re Camellia Food
Stores, Inc., 287 B.R. 52, 57 (Bankr. E.D. Va. 2002).  Under
the conduct test, a claim arises when the event or conduct

giving rise to the claim first occurs.  See, e.g., A.H. Robins, 839 F.2d at 202-03; Camellia Food Stores, 287 B.R. at 57 (noting that Fourth Circuit, in A.H. Robins, applied a conduct test whereby the events giving rise to a pre-petition claim must occur pre-petition for the claim to arise pre-petition); see also In re U.S. Airways, Inc., 2007 WL 3231573, *3 (Bankr. E.D. Va. 2007) ("A debt 'arises,' for bankruptcy purposes, not when the effects are felt but when the act giving rise to the liability occurs.").

31.  It is well-established in this Circuit that, under the conduct test, claims arising under a pre-petition contract arise pre-petition.  See, e.g., Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 145 (4th Cir. 1995) ("[R]egardless of the nature of the contract, if at the time of the bankruptcy filing the debtor has an obligation under the contract to pay money to the non-debtor party, that obligation is handled as a pre-petition claim in the bankruptcy proceedings."); In re Dornier Aviation (North America), Inc., 2002 WL 31999222, *7 (Bankr. E.D. Va. 2002) ("The claim of a creditor arising under a prepetition contract is simply a general unsecured claim in the bankruptcy case. . . ." (citation omitted)).

32.   Under the conduct test, wages earned pre-petition for pre-petition services plainly arise pre-petition and thus are general unsecured claims.  <u>See</u>, <u>e.g.</u>, <u>Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)</u>, 536 F.2d 950, 955 (1st Cir. 1976) (finding that severance payments earned as a component of wages for pre-petition services arose pre-petition and were not entitled to administrative expense priority); <u>cf.</u> 11 U.S.C. § 503(b) (granting administrative expense priority to "actual, necessary costs and expenses of preserving the estate including -- (i) wages, salaries and commissions <u>for services rendered after the commencement of the case</u>" (emphasis added)); <u>In re Continental Airlines, Inc.</u>, 148 B.R. 207, 212 (D. Del. 2007) ("Congress was quite specific about which wage claims were to receive administrative priority. . . . Congress made it clear that the only wages which were to be given priority in § 503(b)(1)(A) were those for services rendered post-petition.").

33.   Accordingly, here, the Claims for wages and salaries arose pre-petition.  Specifically, with respect to the Claims for unpaid wages and salaries, such wages and salaries were earned on account of services performed prior to the Petition Date.  Thus, the Claims arose pre-petition

and should be reclassified as pre-petition general unsecured claims.

34.    Similarly, the Claims seeking amounts allegedly due under the Award Programs likewise arose pre-petition.  Specifically, section 101(5) of the Bankruptcy Code defines "claim" to include, among other things,

> (A) a right to payment, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . .

11 U.S.C. § 101(5)(A)(emphasis added).  As the Supreme Court has held and the highlighted words make clear, the definition of "claim" is to be broadly construed and applied.  See Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990) ("Congress chose expansive language" in defining "claim").

35.    Importantly, under section 101(5)(A), although a cause of action might not be ripe to bring suit, the holder of a potential cause of action may nonetheless still have a "claim" under section 101(5)(A).  In re National Gypsum Co., 139 B.R. 397, 405 (N.D. Tex. 1992) (citing In re Remington Rand Corp., 836 F.2d 825 (3d Cir. N.J. 1988)).  Specifically, as emphasized above, the definition of claim includes "contingent" claims, i.e.,

16

contingent rights of payment.  See id.; 11 U.S.C. §

101(5)(A).  Although the Bankruptcy Code does not define the

word "contingent", the Fourth Circuit Court of Appeals has

adopted a very broad definition of "contingent" for purposes

of Bankruptcy Code section 101(5)(A).  See A.H. Robins, 839

F.2d at 202 (adopting the definition found in BLACKS LAW

DICTIONARY 5th Ed., 1979).  In particular, in A.H. Robins,

the Fourth Circuit Court of Appeals defined "contingent" as:

> Possible, but not assured; doubtful or uncertain;
> conditioned upon the occurrence of some future
> event which is itself uncertain, or questionable.
> Synonymous with provisional. This term, when
> applied to a use, remainder, devise, bequest, or
> other legal right or interest, implies that no
> present interest exists, and that whether such
> interest or right ever will exist depends upon a
> future uncertain event.

A.H. Robins Co., 839 F.2d at 202 (emphasis added).

    36.  Thus, the Fourth Circuit has relied on the

inclusion of contingent claims in the definition of claim in

adopting the conduct test.  See id. at 202-03 (noting that

the Bankruptcy Code's definition of "claim" includes a

contingent right to payment and finding that a claim arose

pre-petition where it arose out of pre-petition events even

though it the right to payment did not become non-contingent

until post-petition).

37.   Indeed, applying the Fourth Circuit's conduct test, this Court has explicitly held that claims under an employee benefit program entered into prior to the petition date arise pre-petition.  <u>Thompson v. Board of Directors of Fairfax Cty. Police Officers Retirement Sys.</u>, 182 B.R. 140, 153 (Bankr. E.D. Va. 1995), <u>aff'd</u>, 92 F.3d 1182 (4th Cir. 1996).  Specifically, in <u>Thompson</u>, the employee-claimant became a participant in a retirement program when he commenced his employment, prior to the petition date.  <u>Id.</u> at 144.  The employee was not eligible to receive his retirement benefits unless or until he completed 25 years of service with his employer.  <u>Id.</u> at 145.  Although the employee did not reach the 25-year mark until after the petition date, this Court found that the employee's claim for retirement benefits arose prior to the petition date, at the time the employee became a participant in the retirement plan.  <u>Thompson</u>, 182 B.R. at 153.

38.  As the <u>Thompson</u> Court explained:

Following [<u>A.H. Robins</u>], we believe that Thompson's right to payment for retirement benefits arose when he joined the police department in 1969, and thus became a participant in the plan. To be sure, at the time Thompson filed his petition, his right to receive retirement benefits depended on his obtaining 25 years of creditable service. Yet this 25-year requirement was merely a contingency Thompson had

18

to meet in order to have an immediate right to payment.

Id.

39.  Similarly, here each Award Program commenced pre-petition and stated that the Award was effective prior to the Petition Date.  Moreover, each of the Award Program Agreements was entered into pre-petition.  Under the terms of the Award Programs, payment of the Awards was contingent upon satisfaction of the conditions for vesting for each Award -- generally, continued employment on the vesting date and, for the Long-Term and Short-Term Incentive Programs and Store Bonus Programs, satisfaction of performance conditions.  In other words, the claim was contingent upon satisfaction of the vesting requirements set forth by each program.  Accordingly, as of the Petition Date, each of the Claimants had a claim for the amount of the Award under the applicable program.

40.  Moreover, the fact that some or all of such Claims ultimately may have vested after the Petition Date does not render the claim post-petition.  See Thompson, 182 B.R. at 153 ("A debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events." (quoting United States v.

19

Gerth, 991 F.2d 1428, 1434 (8th Cir. 1993))); id. ("The

character of a claim is not transformed from prepetition to

postpetition simply because it is contingent, unliquidated,

or unmatured when the debtor's petition is filed." (quoting

Braniff Airways, Inc. v. Exxon Co., 814 F.2d 1030, 1036 (5th

Cir. 1987))).

        41.  By the same token, although the Award

Programs provide that the Awards will vest in full upon a

change of control, this does not affect the analysis.  Even

assuming, arguendo, a change in control has occurred -- a

fact the Debtors dispute -- the existence of a change of

control does not affect the classification of the Claims.

Instead, the existence of a change in control affects only

the date the Awards vest -- that is, become noncontingent;

it does not alter the day such Claims arose.

        42.  As this Court well knows, "[p]riority . . .

is not afforded a claim merely because the right to payment

arises post-petition.  Thus, where there is a pre-petition

contract or lease, and the consideration supporting the

claim is supplied pre-petition, court[s] have determined

that those claims are not entitled to administrative

priority, even if the right to payment arises post-

petition."  In re Old Carco LLC, f/k/a Chrysler LLC, 2010 WL

20

22426, *5 (Bankr. S.D.N.Y. Jan. 5, 2010) (internal citation omitted).  This principle has been reiterated by a number of courts, including courts in this Circuit.  See, e.g., Stewart Foods, 64 F.3d at 146 ("[T]he fact that the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations"); Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 48 (1st Cir. 2003) ("[A] contingent claim, however, is not entitled to priority simply because the right to payment arises during the reorganization when the contingency occurs.");  Bachmann v. Commercial Fin. Servs. Inc. (In re Commercial Fin. Servs. Inc.), 246 F.3d 1291, 1295 (10th Cir. 2001) ("[T]he liability must arise post-petition; it is not enough that the right to payment arose after the debtor in possession assumed control.");  Trustees of Amalgamated Ins. Fund v. McFarlin's Inc., 789 F.2d 98, 101 (2d Cir. 1986) ("A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate.");  In re Jartran, Inc., 732 F.2d 584, 587-88 (7th Cir. 1984) (denying administrative priority to claim for costs of advertising ordered before the petition date but published after the petition date); Dornier Aviation, 2002

21

WL 31999222 at *6 (finding that a claim for severance that became payable when the employee was terminated post-petition was a pre-petition claim where the employment contract under which the claim arose was entered into pre-petition).

43.   By that principle, here, all of the Claims under the Award Programs arose, in their entirety, pre-petition when the Award Programs were commenced, the Award Program Agreements were executed and the Awards were granted.

44.   In summary, to the extent the Claimants seek payment of wages, such wages were earned pre-petition.   And, each Award Program was instituted pre-petition, each Award was granted pre-petition, and each Award Program Agreement was executed pre-petition.   Consequently, the Claims arose in their entirety prior to the Petition Date.   Accordingly, the Debtors respectfully request that the Court sustain the Objection and reclassify the Claims to pre-petition general unsecured claims.

## II.   THE CLAIMS ARE NOT ALLOWABLE AS ADMINISTRATIVE EXPENSE CLAIMS UNDER BANKRUPTCY CODE SECTION 503(b).

45.   As the parties filing administrative claims, the Claimants bear the burden of proving that the Claims are

entitled to administrative priority under Bankruptcy Code
section 503.  See, e.g., Devan v. Simon DeBartolo Group,
L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157
(4th Cir. 1999) (holding that the creditor "has the burden
of proving that its administrative claim . . . is an actual
and necessary expense"); Ford Motor Credit Co. v. Dobbins,
35 F.3d 860, 866 (4th Cir. 1994) (same); In re Boling Group,
L.L.C., 2002 WL 31812671, at *4. (Bankr. M.D.N.C. 2002)
("The burden of proof is on the claimant to establish by a
preponderance of the evidence its entitlement to an
administrative expense award under 11 U.S.C. § 503(b)."
(citing Merry-Go-Round Enters., 180 F.3d at 157)).  Here,
Claimants have not, and indeed cannot, meet that burden.

     46.  In order to determine whether a claim
qualifies as an administrative expense, the Fourth Circuit
has established a two-part test: "(1) the claim must arise
out of a post-petition transaction between the creditor and
the debtor-in-possession (or trustee) and (2) the
consideration supporting the claimant's right to payment
must be supplied to and beneficial to the debtor-in-
possession in the operation of the business."  Merry-Go-
Round Enters., 180 F.3d at 157 (quoting Stewart Foods, 64

F.3d at 145 n.2); see also In re Baseline Sports, Inc., 393
B.R. 105, 130 (Bankr. E.D. Va. 2008).

47.   Here, the first requirement is plainly not
met.  In particular, the Long-Term Incentive Program, the
Cash Award Programs and the Phantom Stock Program provided
that employees became Award Program Participants by
executing and returning a copy of the Award Program
Agreements by a certain deadline.  In each case, this
deadline occurred prior to the Petition Date.  See id.  As
set forth above, Claimants were automatically enrolled in
the Short-Term Incentive Program on March 1, 2008.  In
addition, each of the Store Bonus Programs was commenced and
all of the Store Bonus Awards were fully earned, if at all,
prior to the Petition Date.  Finally, with respect to the
Claims for pre-petition wages, all such wages were earned by
Claimants' pre-petition services.  Therefore, the
transactions giving rise to the Claims occurred pre-
petition.

48.   In analogous circumstances, courts have
consistently held that post-petition contractual damage
claims arising from pre-petition contracts are not entitled
to administrative priority. See, e.g., Einstein/Noah Bagel
Corp. v. Smith (In re BCE West, L.P.), 319 F.3d 1166, 1173

24

(9th Cir. 2003) (holding that a breach of contract claim
resulting from post-petition conduct, but arising from a
pre-petition contract, did not arise from a post-petition
transaction with the debtor); In re Sheehan Mem. Hosp., 377
B.R. 63, 67 (Bankr. W.D.N.Y. 2007) (concluding that an
employment termination claim arose not from post-petition
conduct, but from the execution of a pre-petition contract).
Indeed, this Court previously recognized that this legal
principle was consistent with Fourth Circuit law. See In re
US Airways Group, Inc., 296 B.R. 673, 681 (E.D. Va. 2003)
(noting that the 9th Circuit Court of Appeals' decision in
Einstein was consistent with Fourth Circuit law); see also
In re Circuit City Stores, Inc., Case No. 08-35653(KRH)
(Bankr. E.D. Va. Apr. 1, 2010)(Docket No. 7081)
(reclassifying claims under the Award Programs from
administrative expense requests to general unsecured
claims).

        49.  Here, those Claims for amounts under the
Award Programs seek nothing more than post-petition
contractual damages arising from the pre-petition Award
Programs.  In the absence of a post-petition transaction,
the Claimants cannot satisfy their burden of demonstrating
that the Claims are entitled to administrative expense

25

priority.  Thus, the Claims are pre-petition general
unsecured claims.

50.   Moreover, this Court has noted that the
Fourth Circuit has expressed a policy "not to saddle debtors
with special post-petition obligations lightly or give
preferential treatment to certain select creditors."
Dornier Aviation (North America), Inc., 2002 WL 31999222 at
*6 (citing Ford Motor Credit Co., 35 F.3d at 866).
Consistent with that policy, as noted above, the Dornier
Court held that "[t]he claim of a creditor arising under a
prepetition contract is simply a general unsecured claim in
the bankruptcy case even if the time for performance -- and
hence, the breach -- occurs post-petition."  Dornier
Aviation (North America), Inc., 2002 WL 31999222 at *7
(citing Stewart Foods, 64 F.3d at 146)).  This is true
regardless of whether the contract is executory on the
petition date, so long as the contract has not been assumed
by the debtor in possession.  Id. ("Only if the prepetition
contract is assumed, or the party enters into a new contract
with the trustee or debtor in possession, are the claims for
its breach entitled to administrative expense status.").
Here, none of the agreements with respect to the Award

26

Programs have been assumed.[2]   Moreover, all of the Debtors'

remaining executory contracts will be rejected on the

effective date of the Plan.   See Plan at § VII.A.

Consequently, such Claims are not entitled to administrative

expense priority.

     51.  Accordingly, for the foregoing reasons, the

Debtors respectfully request that the Court sustain the

Objection and disallow the Claims.

_____

[2]   Indeed, on the Petition Date, the Debtors filed a motion
      seeking, among other things, authorization to continue
      certain employee programs and practices post-petition in the
      ordinary course (D.I. 6; the "Employee Practices Motion").
      Under the Employee Practices Motion, however, the Debtors did
      not seek to continue the Award Programs.  As stated in the
      Employee Practice Motion:

            [T]he Debtors have in place a number of other
            policies and programs, including, severance
            policies, certain additional short-term and
            long-term incentive plans and a board of
            directors deferred compensation plan. At this
            time, the Debtors are not requesting
            authorization to make payments on account of
            prepetition amounts owed in connection with
            such policies and plans. The Debtors are also
            not seeking authorization at this time to
            continue such programs in the ordinary course.
            The Debtors are currently evaluating their need
            and ability to continue such programs and will
            seek relief with respect to such programs in
            later motions, as needed.

      Employee Practices Motion at 38.  Thus, the Debtors did not
      seek, or obtain, authorization to continue the Award Programs
      after the Petition Date.

## RESERVATION OF RIGHTS

52.  At this time, the Debtors have not completed
their review of the validity of all claims/expenses filed
against their estates, including the Claims.  Accordingly,
the Claims may be the subject of additional subsequently
filed objections, including, without limitation, objections
to the Claims as untimely or duplicative.  To that end, the
Debtors reserve the right to further object to any and all
claims, whether or not the subject of this Objection, for
allowance, voting, and/or distribution purposes, and on any
grounds that bankruptcy or non-bankruptcy law permits.
Furthermore, the Debtors reserve the right to modify,
supplement and/or amend this Objection as it pertains to any
Claim or Claimant herein.

## NOTICE AND PROCEDURE

53.  Notice of this Objection has been provided to
all Claimants that are the subject to this Objection, as
identified on Exhibit B, and to parties in interest in
accordance with the Court's Supplemental Order Pursuant to
Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002
and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1
Establishing Certain Amended Notice, Case Management and
Administrative Procedures (Docket No. 6208) (the "Case

Management Order"). In particular, the Debtors have served

the Objection on the Claimants as follows: (a) to the extent

counsel for a Claimant is not known to the Debtors, by first

class mail, postage prepaid, on the signatory of the

Claimant's proof of claim form or other representative

identified in the proof of claim form or any attachment

thereto; or (b) to the extent counsel for a Claimant has

appeared on the Claimant's behalf in the Debtors' bankruptcy

cases, by first class mail, postage prepaid, on such

counsel. In each case, the Debtors served the Claimant or

their counsel, as the case may be, with this Objection and

the Exhibit(s) on which the Claimant's Claim is listed. The

Debtors submit that service as set forth herein constitutes

due and sufficient service of this Objection, including in

accordance with Bankruptcy Rules 3007, 7004 and 9006.

        54.   To the extent any Claimant files and properly

serves a response to this Objection by **4:00 p.m. (Eastern

Time) on June 1, 2010** (the "Objection Deadline"), as

required by the Case Management Order and under applicable

law, and the parties are unable to otherwise resolve the

Objection, the Debtors request that the Court conduct a

status conference with respect to any such responding

Claimant at **10:00 a.m. ET on June 8, 2010** and thereafter

schedule the matter for a future hearing as to the merits of such Claim.[3]

55.   However, to the extent any Claimant fails to timely file and properly serve a response to this Objection by the Objection Deadline, as required by the Case Management Order and applicable law, the Debtors request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, reclassifying the Claims to general unsecured claims.

### COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

56.   This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the Debtors submit that this Objection is filed in accordance with the Omnibus Objection Procedures Order.

### WAIVER OF MEMORANDUM OF LAW

57.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Objection, the Debtors request that the requirement that all motions be accompanied by a written memorandum of law be waived.

---

[3]   In accordance with the Omnibus Objection Procedures Order, Claimants who respond to the Objection do not need to appear at the status conference.

**NO PRIOR RELIEF**

58.  No previous request for the relief sought

herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors request the Court to enter an

Order sustaining this Objection and granting such other and

further relief as the Court deems appropriate.

Dated: Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
      May 6, 2010           FLOM, LLP
                         Gregg M. Galardi, Esq.
                         Ian S. Fredericks, Esq.
                         P.O. Box 636
                         Wilmington, Delaware 19899-0636
                         (302) 651-3000

                             - and -

                         SKADDEN, ARPS, SLATE, MEAGHER &
                           FLOM, LLP
                         Chris L. Dickerson, Esq.
                         155 North Wacker Drive
                         Chicago, Illinois 60606-7120
                         (312) 407-0700

                             - and -

                         MCGUIREWOODS LLP

                         /s/ Douglas M. Foley_____
                         Douglas M. Foley (VSB No. 34364)
                         Sarah B. Boehm (VSB No. 45201)
                         One James Center
                         901 E. Cary Street
                         Richmond, Virginia 23219
                         (804) 775-1000

                         Counsel for Debtors and Debtors
                         in Possession

**EXHIBIT A**

**(Proposed Order)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-7120
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
          Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER SUSTAINING DEBTORS' SEVENTY-FOURTH OMNIBUS OBJECTION TO
CLAIMS (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE
EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS)**

Upon the Debtors' Seventy-Fourth Omnibus Objection to

Claims (Reclassification of Certain Alleged Administrative

Expenses on Account of Employee Obligations) (the "Objection"),[1]

seeking, among other things, that, for those reasons set forth

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings
      ascribed to such terms in the Objection.

in the Objection, the Claims specifically identified on Exhibit
C attached to the Objection be reclassified to general unsecured
claims; and it appearing that notice and service of the
Objection as set forth therein was good and sufficient and that
no other further notice or service of the Objection need be
given; and it further appearing that no response was timely
filed or properly served by the Claimants being affected by this
Order; and it appearing that the relief requested in the
Objection is in the best interest of the Debtors, their estates
and creditors and other parties in interest; and after due
deliberation thereon; and good and sufficient cause appearing
therefore, it is hereby

                    **ORDERED ADJUDGED AND DECREED that:**

        1.    The Objection is SUSTAINED.

        2.    The claims identified on Exhibit A as attached
hereto and incorporated herein, are reclassified in their
entirety to general unsecured claims for all purposes in these
bankruptcy cases.

        3.    The Debtors' rights to object to any claim,
including (without limitation) the claims included in the
Objection, on any grounds that applicable law permits are not
waived and are expressly reserved.

        4.    The Debtors shall serve a copy of this Order on
the claimants included on Exhibit A to this Order on or before

seven (7) days from the entry of this Order.

5.    This Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: Richmond, Virginia
_____, 2010


_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

      - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-1720
(312) 407-0700

      - and -


_/s/ Douglas M. Foley_____
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors

and Debtors in Possession

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

__/s/ Douglas M. Foley____
Douglas M. Foley

**EXHIBIT B**

**(List of Claims and Claimants)**

In re: Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

Debtors' Seventy-Fourth Omnibus Objection to Claims
Reclassification of Certain Alleged Administrative Expenses on Account of Employee Obligations

Exhibit B - Claimants and Related Claims Subject To Seventy-Fourth Omnibus Objection to Claims

| Claim Holder | Claim | Exhibit |
|---|---|---|
| ABDEL K NDIAYE | 13668 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| ALSOBROOKS, JAMES PATRICK | 14375 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| CALABREE, LEONARD | 13823 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| CATHERINE M GILMOUR | 13858 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| CHAD KUBICA | 14436 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| DANIEL M POOLE | 14404 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| DONALD QUINTANA | 13270 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| ELIZABETH R WARREN | 13529 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| ELIZABETH R WARREN | 13486 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| JANE B ADAMS | 14968 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| JARRETT WARFIELD | 14969 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| JASON HORST | 14970 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| JESSE LEHMAN | 14655 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| KAREN L CRAIG | 14174 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| KENNETH R DUDA | 13402 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| KENNETH R DUDA | 13339 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| KOPINSKI, AARON | 14155 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| LAMBERT GAFFNEY, LAURIE | 14008 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| LINDA H CASTLE | 13804 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| MARK CUSTODIO | 14407 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| MELANIE FINCH | 13761 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| MIKE DOHRMANN | 14844 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| OLIVIA GELLER | 13843 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| PATRICIA C GIORDANO | 14338 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| PETER GRESENS | 13509 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| RAMSEY, DANIEL W | 13988 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| RICHARDSON, SUSAN | 13958 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| RIDGEWAY, GAIL CARLON | 13909 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| SEVERN M DEMOTT | 14329 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| STEVE SAUNDERS | 14031 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| SULER KRISTY MARIE | 13499 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| TAMMY C GOODE | 14108 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| THUMANN, ANNE L | 14097 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| WAIRFIELD, JARRETT | 14333 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |
| WILLIAM P CIMINO | 13665 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN ALLEGED ADMINISTRATIVE EXPENSES ON ACCOUNT OF EMPLOYEE OBLIGATIONS) |

**EXHIBIT C**

**(Claims To Be Reclassified)**

Debtors' Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED | CLAIM COMMENT |
|---|---|---|---|
| Claim: 13668<br>Date Filed: 05/29/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>ABDEL K NDIAYE<br>18404 BROKEN TIMBER WAY<br>BOYDS, MD 20841 | Claim Holder Name and Address<br>ABDEL K NDIAYE<br>18404 BROKEN TIMBER WAY<br>BOYDS, MD 20841<br><br>Case Number: 08-35653<br>Docketed Total: **UNL**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>UNL | Case Number: 08-35653<br>Modified Total: **$0.00**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$0.00 | Claim is for amounts allegedly due as final paycheck for employment in 2007. |
| Claim: 14375<br>Date Filed: 06/29/2009<br>Docketed Total: $493.68<br>Filing Creditor Name and Address:<br>ALSOBROOKS, JAMES PATRICK<br>9465 HURON RAPIDS DR<br>WHITMORE LAKE, MI 48189 | Claim Holder Name and Address<br>ALSOBROOKS, JAMES PATRICK<br>9465 HURON RAPIDS DR<br>WHITMORE LAKE, MI 48189<br><br>Case Number: 08-35653<br>Docketed Total: **$493.68**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$493.68 | Case Number: 08-35653<br>Modified Total: **$493.68**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$493.68 | Claim is for amounts allegedly due for stale payroll check issued in 2007. |
| Claim: 13823<br>Date Filed: 06/29/2009<br>Docketed Total: $22,195.87<br>Filing Creditor Name and Address:<br>CALABREE, LEONARD<br>176 WILLIAM FEATHER DR<br>VOORHEES, NJ 08043 | Claim Holder Name and Address<br>CALABREE, LEONARD<br>176 WILLIAM FEATHER DR<br>VOORHEES, NJ 08043<br><br>Case Number: 08-35653<br>Docketed Total: **$22,195.87**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$22,195.87 | Case Number: 08-35653<br>Modified Total: **$22,195.87**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$22,195.87 | Claim is for amounts allegedly due under the Short-Term Incentive Progam. |
| Claim: 13858<br>Date Filed: 06/29/2009<br>Docketed Total: $132,822.50<br>Filing Creditor Name and Address:<br>CATHERINE M GILMOUR<br>10801 SNOWMASS CT<br>GLEN ALLEN, VA 23060 | Claim Holder Name and Address<br>CATHERINE M GILMOUR<br>10801 SNOWMASS CT<br>GLEN ALLEN, VA 23060<br><br>Case Number: 08-35653<br>Docketed Total: **$132,822.50**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$132,822.50 | Case Number: 08-35653<br>Modified Total: **$132,822.50**<br><br>503(b)(9)   Admin   Secured   Priority   Unsecured<br>$132,822.50 | Claim is for amounts allegedly due under the Short-Term Incentive Program, Long-Term Incentive Program, Cash Retention Progam and Phantom Stock Program. |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al. Case 08-35653-KRH    Doc 7447    Filed 05/06/10    Entered 05/06/10 15:47:32    Desc Main

Case No. 08-35653 (KRH)    Document    Page 41 of 82    Seventeenth Omnibus Objection to Claims

(Reclassification Of Certain Alleged Administrative Expenses On Account Of Employee Obligations)

EXHIBIT C

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | | CLAIM AS MODIFIED | | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|---|---|
| Claim: 14436<br>Date Filed: 07/01/2009<br>Docketed Total: $117,147.50<br>Filing Creditor Name and Address:<br>CHAD KUBICA<br>24126 MATTHEW PL<br>SANTA CLARITA, CA 91321-4690 | Claim Holder Name and Address<br>CHAD KUBICA<br>24126 MATTHEW PL<br>SANTA CLARITA, CA 91321-4690 | Case Number: 08-35653<br>Docketed Total: **$117,147.50** | | | Case Number: 08-35653<br>Modified Total: **$117,147.50** | | | | Claim is for amounts allegedly due under the Long-Term Incentive Program, Cash Retention Program and Phantom Stock Program. |
| | 503(b)(9)<br>$117,147.50 | Admin | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$117,147.50 | |
| Claim: 14404<br>Date Filed: 07/01/2009<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>DANIEL M POOLE<br>200 E HOLLY OAK RD<br>WILMINGTON, DE 19809 | Claim Holder Name and Address<br>DANIEL M POOLE<br>200 E HOLLY OAK RD<br>WILMINGTON, DE 19809 | Case Number: 08-35653<br>Docketed Total: **$15,000.00** | | | Case Number: 08-35653<br>Modified Total: **$15,000.00** | | | | Claim is for amounts allegedly due under the Long-Term Cash Award Program. |
| | 503(b)(9)<br>$15,000.00 | Admin | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$15,000.00 | |
| Claim: 13270<br>Date Filed: 06/04/2009<br>Docketed Total: $220.00<br>Filing Creditor Name and Address:<br>DONALD QUINTANA<br>1076 DORSET AVE<br>POMONA, CA 91766 | Claim Holder Name and Address<br>DONALD QUINTANA<br>1076 DORSET AVE<br>POMONA, CA 91766 | Case Number: 08-35653<br>Docketed Total: **$220.00** | | | Case Number: 08-35653<br>Modified Total: **$220.00** | | | | Claim is for amounts allegedly due under store-specific bonus program offered in December 2007. |
| | 503(b)(9)<br>$220.00 | Admin | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$220.00 | |
| Claim: 13486<br>Date Filed: 06/24/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>ELIZABETH R WARREN<br>1824 HANOVER AVE<br>RICHMOND, VA 23220 | Claim Holder Name and Address<br>ELIZABETH R WARREN<br>1824 HANOVER AVE<br>RICHMOND, VA 23220 | Case Number: 08-35653<br>Docketed Total: **UNL** | | | Case Number: 08-35653<br>Modified Total: **$0.00** | | | | Claim is for amounts allegedly due under the Long-Term Incentive Program and Phantom Stock Program. |
| | 503(b)(9)<br>UNL | Admin | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$0.00 | |

\*    "UNL" denotes an unliquidated claim.

Case No. 08-35653 (KRH)

EXHIBIT C

Forty-Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | CLAIM AS MODIFIED | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|
| Claim: 13529<br>Date Filed: 06/19/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>ELIZABETH R WARREN<br>1824 HANOVER AVE<br>RICHMOND, VA 23220 | Claim Holder Name and Address<br>ELIZABETH R WARREN<br>1824 HANOVER AVE<br>RICHMOND, VA 23220 | Case Number: 08-35653<br>Docketed Total: **UNL** | 503(b)(9) / Admin UNL / Secured / Priority / Unsecured | Case Number: 08-35653<br>Modified Total: **$0.00** | 503(b)(9) / Admin / Secured / Priority / Unsecured $0.00 | | Claim is appears to be for the Cash Retention Program and/or the Short-term Incentive Program. |
| Claim: 14968<br>Date Filed: 03/30/2010<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>JANE B ADAMS<br>14843 CANE FIELD DR<br>CHARLOTTE, NC 28273 | Claim Holder Name and Address<br>JANE B ADAMS<br>14843 CANE FIELD DR<br>CHARLOTTE, NC 28273 | Case Number: 08-35653<br>Docketed Total: **$15,000.00** | 503(b)(9) / Admin $15,000.00 / Secured / Priority / Unsecured | Case Number: 08-35653<br>Modified Total: **$15,000.00** | 503(b)(9) / Admin / Secured / Priority / Unsecured $15,000.00 | | Claim is for amounts allegedly due under the Long-Term Cash Award Progam. |
| Claim: 14969<br>Date Filed: 03/30/2010<br>Docketed Total: $87.39<br>Filing Creditor Name and Address:<br>JARRETT WARFIELD<br>2750 HOLLY HALL NO 1801<br>HOUSTON, TX 77054 | Claim Holder Name and Address<br>JARRETT WARFIELD<br>2750 HOLLY HALL NO 1801<br>HOUSTON, TX 77054 | Case Number: 08-35653<br>Docketed Total: **$87.39** | 503(b)(9) / Admin $87.39 / Secured / Priority / Unsecured | Case Number: 08-35653<br>Modified Total: **$87.39** | 503(b)(9) / Admin / Secured / Priority / Unsecured $87.39 | | Claim is for amounts allegedly due for final paycheck for employment ending in or about May of 2008. |
| Claim: 14970<br>Date Filed: 03/30/2010<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>JASON HORST<br>4861 LAGO DR NO 203<br>HUNTINGTON BEACH, CA 92649 | Claim Holder Name and Address<br>JASON HORST<br>4861 LAGO DR NO 203<br>HUNTINGTON BEACH, CA 92649 | Case Number: 08-35653<br>Docketed Total: **$15,000.00** | 503(b)(9) / Admin $15,000.00 / Secured / Priority / Unsecured | Case Number: 08-35653<br>Modified Total: **$15,000.00** | 503(b)(9) / Admin / Secured / Priority / Unsecured $15,000.00 | | Claim is for amounts allegedly due under the Long-Term Cash Award Progam. |

\*    "UNL" denotes an unliquidated claim.

Thirty-Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED | CLAIM COMMENT |
|---|---|---|---|
| Claim: 14655<br>Date Filed: 09/14/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>JESSE LEHMAN<br>12 CONNELLY AVE<br>BUDD LAKE, NJ 07828 | Claim Holder Name and Address<br>JESSE LEHMAN<br>12 CONNELLY AVE<br>BUDD LAKE, NJ 07828<br><br>Case Number: 08-35653<br>Docketed Total: **UNL**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>UNL | Case Number: 08-35653<br>Modified Total: **$0.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$0.00 | Claim is for amounts allegedly due under the Phantom Stock Progam. |
| Claim: 14174<br>Date Filed: 06/30/2009<br>Docketed Total: $141,897.50<br>Filing Creditor Name and Address:<br>KAREN L CRAIG<br>4409 PLAYER RD<br>CORONA, CA 92883 | Claim Holder Name and Address<br>KAREN L CRAIG<br>4409 PLAYER RD<br>CORONA, CA 92883<br><br>Case Number: 08-35653<br>Docketed Total: **$141,897.50**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$141,897.50 | Case Number: 08-35653<br>Modified Total: **$141,897.50**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$141,897.50 | Claim is for amounts allegedly due under the Short-Term Incentive Program, Long-Term Incentive Program, Cash Retention Progam and Phantom Stock Program. |
| Claim: 13339<br>Date Filed: 06/11/2009<br>Docketed Total: $20,000.00<br>Filing Creditor Name and Address:<br>KENNETH R DUDA<br>12713 FOREST MILL DR<br>MIDLOTHIAN, VA 23112-7023 | Claim Holder Name and Address<br>KENNETH R DUDA<br>12713 FOREST MILL DR<br>MIDLOTHIAN, VA 23112-7023<br><br>Case Number: 08-35653<br>Docketed Total: **$20,000.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$20,000.00 | Case Number: 08-35653<br>Modified Total: **$20,000.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$20,000.00 | Claim is for amounts allegedly due under the Long-Term Incentive Progam. |
| Claim: 13402<br>Date Filed: 06/11/2009<br>Docketed Total: $20,000.00<br>Filing Creditor Name and Address:<br>KENNETH R DUDA<br>12713 FOREST MILL DR<br>MIDLOTHIAN, VA 23112-7023 | Claim Holder Name and Address<br>KENNETH R DUDA<br>12713 FOREST MILL DR<br>MIDLOTHIAN, VA 23112-7023<br><br>Case Number: 08-35653<br>Docketed Total: **$20,000.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$20,000.00 | Case Number: 08-35653<br>Modified Total: **$20,000.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$20,000.00 | Claim is for amounts allegedly due under the Cash Retention Progam. |

\*    "UNL" denotes an unliquidated claim.

First Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | | | CLAIM AS MODIFIED | | | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Claim: 14155<br>Date Filed: 06/30/2009<br>Docketed Total: $79,999.00<br>Filing Creditor Name and Address:<br>KOPINSKI, AARON<br>1870 WICKER WOODS DR<br>MAIDENS, VA 23102 | Claim Holder Name and Address<br>KOPINSKI, AARON<br>1870 WICKER WOODS DR<br>MAIDENS, VA 23102 | Case Number: 08-35653<br>Docketed Total: **$79,999.00** | | | | Case Number: 08-35653<br>Modified Total: **$79,999.00** | | | | | Claim is for amounts allegedly due under the Long-Term Incentive Progam and Cash Retention Program. |
| | 503(b)(9) | Admin<br>$79,999.00 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$79,999.00 | |
| Claim: 14008<br>Date Filed: 06/29/2009<br>Docketed Total: $270,000.00<br>Filing Creditor Name and Address:<br>LAMBERT GAFFNEY, LAURIE<br>2201 LIBBIE AVE STE 200<br>RICHMOND, VA 23230 | Claim Holder Name and Address<br>LAMBERT GAFFNEY, LAURIE<br>2201 LIBBIE AVE STE 200<br>RICHMOND, VA 23230 | Case Number: 08-35653<br>Docketed Total: **$270,000.00** | | | | Case Number: 08-35653<br>Modified Total: **$270,000.00** | | | | | Claim is for amounts allegedly due under the Long-Term Incentive Progam. |
| | 503(b)(9) | Admin<br>$270,000.00 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$270,000.00 | |
| Claim: 13804<br>Date Filed: 06/26/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>LINDA H CASTLE<br>5601 HUNTERS GLEN DR<br>GLEN ALLEN, VA 23059 | Claim Holder Name and Address<br>LINDA H CASTLE<br>5601 HUNTERS GLEN DR<br>GLEN ALLEN, VA 23059 | Case Number: 08-35653<br>Docketed Total: **UNL** | | | | Case Number: 08-35653<br>Modified Total: **$0.00** | | | | | Claim is for amounts allegedly due under the Phantom Stock Progam. |
| | 503(b)(9) | Admin<br>UNL | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$0.00 | |
| Claim: 14407<br>Date Filed: 07/01/2009<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>MARK CUSTODIO<br>15 POPULAR ST<br>PORT JEFFERSON STATION, NY 11776 | Claim Holder Name and Address<br>MARK CUSTODIO<br>15 POPULAR ST<br>PORT JEFFERSON STATION, NY 11776 | Case Number: 08-35653<br>Docketed Total: **$15,000.00** | | | | Case Number: 08-35653<br>Modified Total: **$15,000.00** | | | | | Claim is for amounts allegedly due under the Long-Term Cash Award Progam. |
| | 503(b)(9) | Admin<br>$15,000.00 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$15,000.00 | |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

Forty-Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

EXHIBIT C

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | CLAIM AS MODIFIED | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|
| Claim: 13761<br>Date Filed: 06/19/2009<br>Docketed Total: $4,565.00<br>Filing Creditor Name and Address:<br>MELANIE FINCH<br>22056 GILMORE ST<br>WOODLAND HILLS, CA 91303 | Claim Holder Name and Address<br>MELANIE FINCH<br>22056 GILMORE ST<br>WOODLAND HILLS, CA 91303 | Case Number: 08-35653<br>Docketed Total: $4,565.00 | | Case Number: 08-35653<br>Modified Total: $4,565.00 | | | Claim is for unpaid wages, salaries and bonuses allegedly due for work performed in January of 2008. |
| | 503(b)(9) | Admin<br>$4,565.00 | Secured    Priority    Unsecured | 503(b)(9)    Admin    Secured    Priority | | Unsecured<br>$4,565.00 | |
| Claim: 14844<br>Date Filed: 03/08/2010<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>MIKE DOHRMANN<br>34945 N KARAN SWISS CIR<br>SAN TAN VALLEY, AZ 85143 | Claim Holder Name and Address<br>MIKE DOHRMANN<br>34945 N KARAN SWISS CIR<br>SAN TAN VALLEY, AZ 85143 | Case Number: 08-35653<br>Docketed Total: $15,000.00 | | Case Number: 08-35653<br>Modified Total: $15,000.00 | | | Claim is for amounts allegedly due under the Long-Term Cash Award Progam. |
| | 503(b)(9) | Admin<br>$15,000.00 | Secured    Priority    Unsecured | 503(b)(9)    Admin    Secured    Priority | | Unsecured<br>$15,000.00 | |
| Claim: 13843<br>Date Filed: 06/29/2009<br>Docketed Total: $2,240.00<br>Filing Creditor Name and Address:<br>OLIVIA GELLER<br>5750 W CENTINELA AVE NO 424<br>LOS ANGELES, CA 90045 | Claim Holder Name and Address<br>OLIVIA GELLER<br>5750 W CENTINELA AVE NO 424<br>LOS ANGELES, CA 90045 | Case Number: 08-35653<br>Docketed Total: $2,240.00 | | Case Number: 08-35653<br>Modified Total: $2,240.00 | | | Claim is for unpaid wages and penalties allegedly due for work performed between June and October of 2007. |
| | 503(b)(9) | Admin<br>$2,240.00 | Secured    Priority    Unsecured | 503(b)(9)    Admin    Secured    Priority | | Unsecured<br>$2,240.00 | |
| Claim: 14338<br>Date Filed: 06/30/2009<br>Docketed Total: $64,375.00<br>Filing Creditor Name and Address:<br>PATRICIA C GIORDANO<br>760 DURHAM RD<br>PINEVILLE, PA 18946 | Claim Holder Name and Address<br>PATRICIA C GIORDANO<br>760 DURHAM RD<br>PINEVILLE, PA 18946 | Case Number: 08-35653<br>Docketed Total: $64,375.00 | | Case Number: 08-35653<br>Modified Total: $64,375.00 | | | Claim is for amounts allegedly due under the Short-Term Incentive Progam and Cash Retention Program. |
| | 503(b)(9) | Admin<br>$64,375.00 | Secured    Priority    Unsecured | 503(b)(9)    Admin    Secured    Priority | | Unsecured<br>$64,375.00 | |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

First Severed Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

EXHIBIT C

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | | | CLAIM AS MODIFIED | | | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Claim: 13509<br>Date Filed: 06/25/2009<br>Docketed Total: $40,000.00<br>Filing Creditor Name and Address:<br>PETER GRESENS<br>14306 POST MILL DR<br>MIDLOTHIAN, VA 23113 | Claim Holder Name and Address<br>PETER GRESENS<br>14306 POST MILL DR<br>MIDLOTHIAN, VA 23113 | Case Number: 08-35653<br>Docketed Total: **$40,000.00** | | | | Case Number: 08-35653<br>Modified Total: **$40,000.00** | | | | | Claim is for amounts allegedly due under the Long-Term Incentive Progam. |
| | 503(b)(9) | Admin<br>$40,000.00 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$40,000.00 | |
| Claim: 13988<br>Date Filed: 06/29/2009<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>RAMSEY, DANIEL W<br>7405 THREE CHOPT RD<br>RICHMOND, VA 23226 | Claim Holder Name and Address<br>RAMSEY, DANIEL W<br>7405 THREE CHOPT RD<br>RICHMOND, VA 23226 | Case Number: 08-35653<br>Docketed Total: **UNL** | | | | Case Number: 08-35653<br>Modified Total: **$0.00** | | | | | Claim is for amounts allegedly due under the Phantom Stock Progam. |
| | 503(b)(9) | Admin<br>UNL | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$0.00 | |
| Claim: 13958<br>Date Filed: 06/30/2009<br>Docketed Total: $20,000.00<br>Filing Creditor Name and Address:<br>RICHARDSON, SUSAN<br>4720 SADLER GREEN PL<br>GLEN ALLEN, VA 23060 | Claim Holder Name and Address<br>RICHARDSON, SUSAN<br>4720 SADLER GREEN PL<br>GLEN ALLEN, VA 23060 | Case Number: 08-35653<br>Docketed Total: **$20,000.00** | | | | Case Number: 08-35653<br>Modified Total: **$20,000.00** | | | | | Claim is for amounts allegedly due under the Cash Retention Progam. |
| | 503(b)(9) | Admin<br>$20,000.00 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$20,000.00 | |
| Claim: 13909<br>Date Filed: 06/30/2009<br>Docketed Total: $35,046.88<br>Filing Creditor Name and Address:<br>RIDGEWAY, GAIL CARLON<br>9505 PINE SHADOW DR<br>RICHMOND, VA 23238 | Claim Holder Name and Address<br>RIDGEWAY, GAIL CARLON<br>9505 PINE SHADOW DR<br>RICHMOND, VA 23238 | Case Number: 08-35653<br>Docketed Total: **$35,046.88** | | | | Case Number: 08-35653<br>Modified Total: **$35,046.88** | | | | | Claim is for amounts allegedly due under the Short-Term Incentive Program. |
| | 503(b)(9) | Admin<br>$35,046.88 | Secured | Priority | Unsecured | 503(b)(9) | Admin | Secured | Priority | Unsecured<br>$35,046.88 | |

\*    "UNL" denotes an unliquidated claim.

Case No. 08-35653 (KRH)

Forty-Seventh Omnibus Objection to Claims (Reclassification Of Certain Alleged Administrative Expenses On Account Of Employee Obligations)

EXHIBIT C

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | CLAIM AS MODIFIED | | | CLAIM COMMENT |
|---|---|---|---|---|---|---|---|
| Claim: 14329<br>Date Filed: 07/01/2009<br>Docketed Total: $135,710.00<br>Filing Creditor Name and Address:<br>SEVERN M DEMOTT<br>7702 SUNDERLAND RD<br>RICHMOND, VA 23229 | Claim Holder Name and Address<br>SEVERN M DEMOTT<br>7702 SUNDERLAND RD<br>RICHMOND, VA 23229 | Case Number: 08-35653<br>Docketed Total: **$135,710.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$135,710.00 | | Case Number: 08-35653<br>Modified Total: **$135,710.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$135,710.00 | | | Claim is for amounts allegedly due under the Short-Term Incentive Program, Long-Term Incentive Program, Cash Retention Progam and Phantom Stock Program. |
| Claim: 14031<br>Date Filed: 06/29/2009<br>Docketed Total: $142,128.50<br>Filing Creditor Name and Address:<br>STEVE SAUNDERS<br>2931 ROYAL VIRGINIA CT<br>LOUISA, VA 23093 | Claim Holder Name and Address<br>STEVE SAUNDERS<br>2931 ROYAL VIRGINIA CT<br>LOUISA, VA 23093 | Case Number: 08-35653<br>Docketed Total: **$142,128.50**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$142,128.50 | | Case Number: 08-35653<br>Modified Total: **$142,128.50**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$142,128.50 | | | Claim is for amounts allegedly due under the Short-Term Incentive Program, Long-Term Incentive Program, Cash Retention Progam and Phantom Stock Program. |
| Claim: 13499<br>Date Filed: 06/25/2009<br>Docketed Total: $127.00<br>Filing Creditor Name and Address:<br>SULER KRISTY MARIE<br>208 JUNIPER DR<br>N AURORA, IL 60542 | Claim Holder Name and Address<br>SULER KRISTY MARIE<br>208 JUNIPER DR<br>N AURORA, IL 60542 | Case Number: 08-35653<br>Docketed Total: **$127.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$127.00 | | Case Number: 08-35653<br>Modified Total: **$127.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$127.00 | | | Claim appears to be for unpaid wages, salaries and bonuses. The dates of the Claimant's alleged employment are unclear; however, the Claimant was not employed by the Debtors post-petition |
| Claim: 14108<br>Date Filed: 06/30/2009<br>Docketed Total: $15,000.00<br>Filing Creditor Name and Address:<br>TAMMY C GOODE<br>4537 MOCKINGBIRD LN<br>MAIDEN, NC 828-446-8572 | Claim Holder Name and Address<br>TAMMY C GOODE<br>4537 MOCKINGBIRD LN<br>MAIDEN, NC<br>828-446-8572 | Case Number: 08-35653<br>Docketed Total: **$15,000.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$15,000.00 | | Case Number: 08-35653<br>Modified Total: **$15,000.00**<br><br>503(b)(9) Admin Secured Priority Unsecured<br>$15,000.00 | | | Claim is for amounts allegedly due under the Long-Term Cash Award Progam. |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al.   Seventh Omnibus Objection to Claims
(Reclassification Of Certain Alleged Administrative
Expenses On Account Of Employee Obligations)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED | CLAIM COMMENT |
|---|---|---|---|
| Claim: 14097<br>Date Filed: 06/30/2009<br>Docketed Total: $61,444.92<br>Filing Creditor Name and Address:<br>THUMANN, ANNE L<br>7086 LIONSHEAD PKWY<br>LITTLETON, CO 80124 | Claim Holder Name and Address<br>THUMANN, ANNE L<br>7086 LIONSHEAD PKWY<br>LITTLETON, CO 80124<br><br>Case Number: 08-35654<br>Docketed Total: **$61,444.92**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$61,444.92 | Case Number: 08-35654<br>Modified Total: **$61,444.92**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$61,444.92 | Claim is for amounts allegedly due under the Short-Term Incentive Program and the Cash Retention Progam. |
| Claim: 14333<br>Date Filed: 07/01/2009<br>Docketed Total: $87.39<br>Filing Creditor Name and Address:<br>WAIRFIELD, JARRETT<br>2750 HOLLY HALL<br>1801<br>HOUSTON, TX 77054-0000 | Claim Holder Name and Address<br>WAIRFIELD, JARRETT<br>2750 HOLLY HALL<br>1801<br>HOUSTON, TX 77054-0000<br><br>Case Number: 08-35653<br>Docketed Total: **$87.39**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$87.39 | Case Number: 08-35653<br>Modified Total: **$87.39**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$87.39 | Claim is for amounts allegedly due for final paycheck for employment ending in or about May of 2008. |
| Claim: 13665<br>Date Filed: 06/26/2009<br>Docketed Total: $146,200.00<br>Filing Creditor Name and Address:<br>WILLIAM P CIMINO<br>15 ALBEMARLE AVE<br>RICHMOND, VA 23226 | Claim Holder Name and Address<br>WILLIAM P CIMINO<br>15 ALBEMARLE AVE<br>RICHMOND, VA 23226<br><br>Case Number: 08-35653<br>Docketed Total: **$146,200.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$146,200.00 | Case Number: 08-35653<br>Modified Total: **$146,200.00**<br><br>503(b)(9)  Admin  Secured  Priority  Unsecured<br>$146,200.00 | Claim is for amounts allegedly due under the Short-Term Incentive Program, Long-Term Incentive Program and Cash Retention Progam. |
| | | **Total Claims To Be Modified: 35**<br><br>**Total Amount As Docketed:** $1,546,788.13<br><br>**Total Amount As Modified:** $1,546,788.13 | |

\*    "UNL" denotes an unliquidated claim.

**EXHIBIT D**

**(The Long-Term Incentive Program Sample Letter)**





October 9, 2008



Dear 

    Congratulations!  The Compensation and Personnel Committee of the Board of Directors (the "Committee") has awarded you a long-term cash incentive award (the "Award") subject to the terms of this Award letter.  The purpose of this Award is to reward, motivate and retain associates who are key to our turnaround efforts and long term success of Circuit City Stores, Inc. (the "Company").  To accept this Award, please sign this letter, and fax it as instructed in Section 6 below.

    Subject to the requirements and limitations set forth in this Award letter, your Target Cash Incentive Award, Maximum Cash Incentive Award, and Award Date are as follows:

Target Cash Incentive Award:

Maximum Cash Incentive Award:

Award Date:                    September 29, 2008

    This Award is based on performance of the Company over time and the amount that you can earn at each Vest Date under the Award is subject to meeting the Performance Conditions as outlined below. For purposes of the Performance Conditions, the following definitions apply:

Minimum Availability:  maintaining excess availability under all of the Company's existing or future credit facilities in effect as of February 28, 2009, as such existing or future credit facilities may be amended, modified, superseded or supplemented, through February 28, 2009; and

Closing Stock Price:  closing stock price as reported by the exchange or market on which the Company's common stock generally has the greatest trading volume.

    The schedule of Vest Dates, the corresponding target amounts and Performance Conditions for each date are as follows:

1st Vest Date:                 July 1, 2009
Targeted Amount Vesting:
Performance Condition:         Minimum Availability

- 1 -

2nd Vest Date:                              January 1, 2010
Targeted Amount Vesting:          ████████
Performance Condition:               Total shareholder return based on the following
                                                     stock prices:

| Closing Stock Price on Dec. 31, 2009 | % Payout of Targeted Amount Vesting |
|---|---|
| less than $3.00 | 0% |
| $3.00–$3.99 | 75% |
| $4.00–$4.99 | 100% |
| $5.00–$5.99 | 125% |
| $6.00–$6.99 | 175% |
| $7.00–$7.99 | 200% |
| $8.00–$8.99 | 225% |
| $9.00 or greater | 250% |

3rd Vest Date:                              July 1, 2010
Targeted Amount Vesting:          ████████
Performance Condition:               Total shareholder return based on the following
                                                     stock prices:

| Closing Stock Price on Vest Date | % Payout of Targeted Amount Vesting |
|---|---|
| less than $4.00 | 0% |
| $4.00–$4.99 | 75% |
| $5.00–$5.99 | 100% |
| $6.00–$6.99 | 125% |
| $7.00–$7.99 | 175% |
| $8.00–$8.99 | 200% |
| $9.00–$9.99 | 225% |
| $10.00 or greater | 250% |

If on the specified Vest Date no amount is earned or an amount less than the Targeted Amount is earned, the unearned portion of the Targeted Cash Incentive Amount for that Vest Date will roll-forward to the next Vest Date and may be earned if the minimum Performance Condition for the next Vest Date is achieved. Any amounts that are rolled forward to the next Vest Date are not eligible for more than a Target (100%) payout.

For purposes of the vesting and forfeiture requirements that follow, your employment with the "Company" includes your employment with Circuit City Stores, Inc. or with a parent or subsidiary of Circuit City Stores, Inc. within the meaning of section 424(e) and (f) of the Internal Revenue Code of 1986, as amended.

Your right to receive the portion of your Award corresponding to each of the above Vest Dates is contingent on (i) your agreeing to the terms of this Award by signing and faxing this letter, and (ii) your remaining continuously employed on a full-time active basis with the Company through and including the corresponding Vest Date. If you satisfy these

- 2 -

requirements, the portion of your Award that becomes vested will be paid to you in a single lump sum cash payment within 75 days following the Vest Date. In the event that you are on a leave of absence on the Vest Date, the portion of your Award that would have vested on that date will not vest until you return to active full-time employment with the Company and will then be paid within 75 days after your return.

Forfeiture. If prior to becoming fully vested in your Award, (i) your employment with the Company terminates for any reason other than your death or permanent disability, or (ii) your employment status with the Company changes to part-time, or (iii) you retire from the Company, then the unvested portion of your Award will be forfeited as of the date of your termination, change in status, or retirement, as the case may be

If your employment with the Company terminates on or before a Vest Date because of death or permanent disability, then the portion of your Target Cash Incentive Award that is scheduled to vest on a future Vest Date will vest as of the date of your death or termination for disability (assuming you otherwise meet the requirements under this Award letter), and will be paid out in a lump sum cash payment within 75 days after your death or disability.

The Committee will determine whether a permanent disability exists for purposes of the foregoing, and such determination will be conclusive and binding.

Other terms relevant to this Award letter are set forth below.

1. **Modification**. The Committee may unilaterally modify the terms of this Award letter after the Award Date provided that your consent is obtained with respect to any modification that would be detrimental to your rights hereunder, except that your consent will not be required to the extent any such modification is to comply with applicable law.

2. **Change of Control**. If you remain continuously employed on a full-time active basis with the Company through and including the date on which a Change of Control of the Company occurs, then any unvested portion of your outstanding Target Cash Incentive Award will vest as of such date and will be paid to you in a lump sum cash payment within 75 days thereafter. For this purpose, "Change of Control" has the meaning set forth in the Circuit City Stores, Inc. 2003 Stock Incentive Plan, as amended and restated, effective December 14, 2006, and that definition is incorporated by reference, and made a part of this Award letter.

The following provides a brief summary of the definition of Change of Control under the 2003 Stock Plan. This is intended only as a summary, and any determination of whether a Change of Control has actually occurred will be subject to the full definition set forth in the 2003 Stock Plan. In general, a Change of Control will occur upon any of the following events: (i) a third party acquires 35% of the Company's outstanding stock; (ii) the incumbent members of the Company's Board of Directors cease to be a majority of the Board (for this purpose, "incumbent members" includes directors whose election was approved by a majority of the Board); (iii) a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company; or (iv) the consummation of a plan of complete liquidation or dissolution of the Company.

- 3 -

3. **Withholding Taxes**.  On the Vest Date, you will have taxable income equal to the amount of your vested Award, and the Company will withhold the amount of taxes required to be withheld or paid.

4. **Interpretation**.  The interpretation and construction of any provision or term of this Award letter by the Committee will be final and conclusive. The terms of this Award letter and all actions taken hereunder will be governed by the laws of the Commonwealth of Virginia, without regard to the conflict of law provisions of any jurisdiction.

5. **Miscellaneous**.

a.  This Award letter is the entire agreement between you and the Company concerning the Award granted hereunder.

b.  Nothing in this Award letter confers any right to continued employment with the Company, or affects the Company's right to terminate an associate's employment at any time, with or without notice, and with or without cause.

c.  The Company has no obligation to contribute any assets to a trust or other entity or otherwise to segregate any assets, or maintain separate accounts, for the purpose of satisfying the Award obligation hereunder.

6. **Acceptance of this Award**.  In order for your Award to become effective, you must accept it by signing this letter and faxing the entire letter as soon as possible, but in no event later than November 1, 2008 to **757-299-8412**.

Your signature will also constitute your agreement to the terms and conditions contained in this letter.

Sincerely,

Eric A. Jonas, Jr.
Senior Vice President
Human Resources

ACCEPTED:

_____
Associate Signature

_____
Printed Name

11/6/08
_____
Date

- 4 -

**EXHIBIT E**

**(Cash Retention Program Sample Letter)**





January 3, 2008

Dear

    Congratulations! The Compensation and Personnel Committee of the Board of Directors (the "Committee") has awarded you a special cash retention award (the "Award") subject to the terms of this Award letter. The purpose of this Award is to reward, motivate and retain management personnel who are key to the Company's turnaround efforts and long term success. To accept this Award, please sign the enclosed copy of this letter, and return it as indicated in item 6 below.

    Subject to the requirements and limitations set forth in this Award letter, your Award, Award Date, and Vesting Dates are as follows:

Total Cash Retention Award: 

Award Date:                    January 1, 2008

| Vesting Dates | Vesting % |
| --- | --- |
| January 1, 2009 | 50% |
| January 1, 2010 | 50% |

    For purposes of this Award letter, "Company" means Circuit City Stores, Inc. or a parent or subsidiary of Circuit City Stores, Inc. within the meaning of section 424(e) and (f) of the Internal Revenue Code of 1986, as amended.

    Your right to receive the portion of your Award corresponding to the above Vesting Dates is contingent on (i) your agreeing to the terms of this Award by signing and returning the enclosed copy of this letter, and (ii) your remaining continuously employed on a full-time active basis with the Company through and including the corresponding Vesting Date. If you satisfy these requirements, the portion of your Award that becomes vested will be paid to you in a single lump sum cash payment within 75 days following the Vesting Date. Your right to this Award is not contingent on corporate or individual performance.

    Forfeiture. If prior to becoming fully vested in your Award, (i) your employment with the Company terminates for any reason other than your death or permanent disability, or (ii) your employment status with the Company changes to part-time, or (iii) you retire from the Company, then the unvested portion of your Award will be forfeited as of the date of your termination, change in status, or retirement, as the case may be.

- 1 -

if your employment with the Company terminates on or before a Vesting Date because you die or become permanently disabled, then the portion of your Award scheduled to vest on such Vesting Date will vest as of the date of your death or termination for disability (assuming you otherwise meet the requirements under this Award letter), and any portion of your Award that would have vested on a subsequent Vesting Date will be forfeited. For example, if your employment terminates under these circumstances on or before January 1, 2009, the portion of your Award scheduled to vest on that date will vest, and any portion that would have vested on a subsequent Vesting Date will be forfeited.

The Committee will determine whether a permanent disability exists for purposes of the foregoing, and such determination will be conclusive and binding.

Other terms relevant to this Award letter are set forth below.

1. **Modification**. The Committee may unilaterally modify the terms of this Award letter after the Award Date provided that your consent is obtained with respect to any modification that would be detrimental to your rights hereunder, except that your consent will not be required to the extent any such modification is to comply with applicable law.

2. **Change of Control**. If you remain continuously employed on a full-time active basis with the Company through and including the date on which a Change of Control of the Company occurs, then notwithstanding any provision herein to the contrary, any restrictions hereunder on your outstanding Award shall lapse as of such date. For this purpose, "Change of Control" has the meaning set forth in the Circuit City Stores, Inc. 2003 Stock Incentive Plan, as amended and restated, effective December 14, 2006, and that definition is incorporated by reference into, and made a part of, this Award letter. Generally, a Change of Control will be deemed to occur upon any of the following events: (i) the acquisition by any person or entity of 35% or more of either the Company's outstanding shares or the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (but excluding certain acquisitions involving the Company or an affiliate, or by any benefit plan sponsored by the Company); (ii) the incumbent members of the Board of Directors of the Company (including any future directors whose election is approved by a majority of the incumbent members) cease to constitute a majority of the Board of Directors; (iii) the consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (with certain exceptions, as described in the 2003 Stock Incentive Plan); or (iv) the consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

3. **Withholding Taxes**. On the Vesting Date, you will have taxable income equal to the amount of your vested Award, and the Company will withhold the amount of taxes required to be withheld or paid.

4. **Interpretation**. The interpretation and construction of any provision or term of this Award letter by the Committee will be final and conclusive. The terms of this Award letter and all actions taken hereunder will be governed by the laws of the

Commonwealth of Virginia, without regard to the conflict of law provisions of any jurisdiction.

### 5. **Miscellaneous.**

a. This Award letter is the entire agreement between you and the Company concerning the Award granted hereunder. If you are a party to an Employment Agreement with the Company, you agree that in the case of a conflict between the Employment Agreement and this Award letter, the terms of this Award letter will control.

b. Nothing in this Award letter confers any right to continued employment with the Company, or affects the Company's right to terminate an associate's employment at any time, with or without notice, and with or without cause.

c. The Company has no obligation to contribute any assets to a trust or other entity or otherwise to segregate any assets, or maintain separate accounts for the purpose of satisfying the Award obligation hereunder.

### 6. **Acceptance of this Award.** In order for your Award to become effective, you must accept it by signing and faxing a copy of this entire letter as soon as possible, but in no event later than February 1, 2008 to **757-299-8412**.

Your signature will also constitute your agreement to the terms and conditions contained in this letter.

Sincerely,

Eric A. Jonas, Jr.
Senior Vice President
Human Resources

ACCEPTED:

_____
Associate Signature

_____
Printed Name

1-21-08
_____
Date

- 3 -

**EXHIBIT F**

**(Long-Term Cash Award Program Sample Letter)**





January 4, 2008



Dear 

Circuit City Stores, Inc. (the "Company") would like to support key associates through a cash award program that provides an incentive to work for the Company's long-term success. Accordingly, I am pleased to inform you that, effective January 1, 2008, you have been awarded the following long-term cash award, which will be payable upon vesting:

Long-Term Cash Award: 

Your award is subject to the conditions set forth in this letter and to your signing and faxing this letter as instructed further below.

This long-term incentive is a three-year program, with vesting at the end of each of the first, second, and third years. If you remain continuously employed by the Company in a full-time active position from January 1, 2008 through and including:

- January 1, 2009, you will be 33.3% vested in your award and entitled to an initial cash payment equal to 33.3% of your total long-term cash award;

- January 1, 2010, you will be 66.6% vested in your award and entitled to a second cash payment equal to 33.3% of your total long-term cash award;

- January 1, 2011, you will be 100% vested in your award and entitled to a third cash payment equal to 33.4% of your total long-term cash award.

The portion of your award that vests will be paid out following the end of the corresponding vesting period. The vesting of all or part of your award is a taxable event. Accordingly, upon distribution of each payment, the Company will withhold applicable federal, state, and local taxes from this payment.

If your active employment with the Company is terminated <u>for any reason</u> on or before a vesting date, or if you move to a part-time position on or before the vesting date, then the portion of your award that has not yet vested will be forfeited immediately upon the termination of your employment or upon your change to part-time status.

If you remain continuously employed in a full-time active position with the Company through and including the date on which a "Change of Control" of the Company occurs, then any portion of your award that has not yet vested will vest as of such Change of Control date. For this purpose, "Change of Control" has the meaning set forth in the

Circuit City Stores, Inc. 2003 Stock Incentive Plan, as amended and restated, effective December 14, 2006, and that definition is incorporated by reference into, and made a part of, this letter. Generally, a Change of Control will be deemed to occur upon any of the following events: (i) the acquisition by any person or entity of 35% or more of either the Company's outstanding shares or the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (but excluding certain acquisitions involving the Company or an affiliate, or by any benefit plan sponsored by the Company); (ii) the incumbent members of the Board of Directors of the Company (including any future directors whose election is approved by a majority of the incumbent members) cease to constitute a majority of the Board of Directors; (iii) the consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (with certain exceptions, as described in the 2003 Stock Incentive Plan); or (iv) the consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

Nothing in this letter confers any right to continued employment with the Company or affects the Company's right to terminate your employment at any time, with or without notice, and with or without cause.

You may not sell, give away or otherwise transfer your right to the award granted hereunder.

In order for your award to become effective, you must accept it by signing this letter and by faxing the entire letter as soon as possible, but in no event later than February 1, 2008, to 757-299-8412. Your signature will also constitute your agreement to the terms and conditions contained in this letter.

With this award, we express our confidence in your ability to help shape a Circuit City that will benefit our associates, our customers, and our shareholders for years to come.

Sincerely,

Eric A. Jonas, Jr.
Senior Vice President
Human Resources

ACCEPTED:

_____
Associate Signature

_____
Printed Name

_____1/4/08_____
Date

**EXHIBIT G**

**(The Short-Term Incentive Program Presentation)**

Circuit City Confidential



# Turnaround Incentive Program

## September 30, 2008



# Overview

**Leadership is refining and realigning our business, financial and compensation plans.**

- **Business Plan:** We are refining our turnaround plan.

- **Financial Plan:** We have partnered with the Board to revise the way we measure second half performance and will use the revised financial plan for our short term incentive plans.

- **Compensation Programs:** We have reviewed and modified many of our programs to ensure they encourage performance and align with our business and financial plans.

Circuit City Confidential

2



# Overview

**Recent changes to our compensation programs complement the changes we are now making.**

- **April:** We delivered merit increases to Directors and below.

- **March – September:** We finalized the Field Compensation Structure and approximately 2,800 associates received base salary increases.

- **Summer:** We provided increases to approximately 800 associates at Director level and below, at SSC and in the Field, to address competitiveness while taking into consideration performance.

- **Summer:** We removed manager level positions from long-term incentive awards. After taking into consideration market data and performance, the change for many was offset with base salary increases.

- **Summer:** We introduced the HE Incentive plan to all of our stores. Thousands of associates now participate in an incentive plan with significant upside. For the best performers, it provides the ability to double their pay.

- **September:** We modified the Call Center incentive plans creating significant upside for top revenue and attachment producers.

Circuit City Confidential



# Overview

## Additional Changes to our compensation programs as of September 29, 2008.

- **Short Term Incentive Plans**

  - **New Criteria/Financial Targets:** We modified performance criteria and targets for most Management, Retail, The City and Services incentive plans.

  - The changes to the Retail and The City incentive plans have already been communicated so the focus of this document will be on the SSC plan changes and how they have been aligned to support the Stores through the Holiday Season.

- **Long Term Incentive (LTI) Plan**

  - **Earlier Delivery:** We will deliver earlier to help align the team with the turnaround plan.

  - **VP, RVP, District Manager and Director level:**  Include in a  Long-Term Performance-Based Cash Plan vesting over a 21-month period.

**Circuit City Confidential**



# Short Term Incentive Plan – EVP/SVP Plan

**Prior plan:**

| | Performance Criteria |
|---|---|
| EVP/SVP Plan | 100% EBT as a % of Revenue |

**Revised plan:**

| | Performance Criteria |
|---|---|
| EVP/SVP Plan | 50% EBITDA |
| | 50% Minimum Availability |

**Minimum Availability:**

- Considered earned and payable as of February 28, 2009 if the Company has Minimum Availability under its then current credit facilities.

- This basically assesses whether we are successfully executing the turnaround plan.

- 100% payout for achieving the Minimum Availability terms. 0% payout for failing to successfully execute.

Circuit City Confidential

5



# Short Term Incentive Plan – VP and Below Plan

**Prior plan:**

| VP and Below Plan | Performance Criteria |
|---|---|
| | 50% EBT as a % of Revenue |
| | 50% Individual Performance |

**Revise plan:**

| VP and Below Plan | Performance Criteria |
|---|---|
| | 50% 2-3 Team Measures Divided Equally |
| | 50% Individual Performance |

## 50% of payout based on 2-3 team specific measures

- Measures vary by team and will have a significant impact on delivering EBITDA results and supporting the Stores through the Holiday Season.

- Payout will be based on partial year performance. Achieving the revised business plan target, associated with each of the measures, will translate to a 75% payout.

## 50% based on individual performance

- We have maintained the same payout levels based on performance rating: 0% for a 1 or 2 rating, 100% for a 3 rating, 110% for 4 rating and 120% for a 5 rating.

- You will have a chance in October to calibrate your objectives with the revised business plan.

- Recalibration must be in the PE system by October 31, 2008. Otherwise your payout may be calculated using your original objectives.

**Circuit City Confidential**



# VP and Below Plan: Measures by Team

Your cost center/department as defined in Peoplesoft (which is aligned with the financial planning and analysis systems) will determine which group you participate in below. There are a few departments where the mix of associates may fall into multiple groups. In these cases all associates in the department will be paid as one group based on how the Senior Executive assigned the group...if there is a discrepancy the department will default to participating in the Support Function plan.

Retail, The City, Multi-Channel and Services Teams

Company Gross Margin $

Company Expense Reduction

Merchandising Team

Company Gross Margin $

Payable Days

In Stock

Supply Chain and Inventory Team

Company Gross Margin $

Company Reduction in At Risk and Distressed Inventory

In Stock

Support Functions

Includes HR/IT/Legal/Marketing/Finance/Procurement/Internal Communications/Real Estate/Construction/Business Transformation/Asset Protection/Distribution

EBITDA

Company Expense Reduction

Circuit City Confidential



# EBITDA Incentive Grid

Domestic results for October through February.

| % Payout | EBITDA |
|----------|--------|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- All material unbudgeted events will be included or excluded at the discretion and approval of the Compensation Committee. This includes material one-time or non-recurring events (e.g. sale of Intertan) or material charges (e.g. restructure charge). A change or benefit is deemed to be a material nonrecurring event if it is classified as a discontinued operation or characterized as such in filings with the SEC or if the event would significantly alter the incentive payout calculation. Store openings/closings will be budgeted in accordance with the Real Estate Plan. Variances created by more/less openings/closings than planned may be adjusted so that they will not affect the payout.

Circuit City Confidential

Circuit City Confidential



# Company Gross Margin $

\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.

| % Payout | Company Gross Margin $ |
|----------|------------------------|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

Domestic Segment Gross Margin $ from Continuing Operations for the 5 month period from October - February FY09 excluding one-time or impairment charges, as reported by financial reporting.

9

Circuit City Confidential



# Company Expense Reduction

\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.

| % Payout | Company Expense Reduction |
|----------|---------------------------|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

Domestic Segment SG&A Expense $ from Continuing Operations for the 5 month period from October - February FY09 excluding one-time or impairment charges, as reported by financial reporting.

10

**Circuit City Confidential**

# In Stock

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | In Stock |
|----------|----------|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- Average In Stock Goals for October – February: 93.2%

- All calculations based on Base In Stock

- Base In Stock is defined as :

  Actual Display Units >= POG Display Units and

  Total CB On-Hand Units >= 1 Sellable Closed Box Unit

11

Circuit City Confidential



# At Risk/Distressed Inventory

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | At Risk/Distressed Inventory |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- At Risk/Distressed Inventory defined as On Planogram Not Replenished or Not on Planogram Not Replenished.

- Average Attainment Goal $$$ are based on five months of Planned At Risk/Distressed inventory levels divided by the attainment Range % in the following grid.

- Actual Data extracted from EDW inventory tables

12

Circuit City Confidential



# Payable Days

\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan.  We will provide detailed incentive grids as early as next week when we communicate plan documents.

| % Payout | Payable Days |
|----------|--------------|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

Domestic Merchandise Days Payables excluding one-time or impairment charges as calculated below:

$$\frac{\text{Average of BOP \& EOP MP}}{\text{Domestic COGS for period}} \times \# \text{ of Days}$$

13

Circuit City Confidential



# Short Term Incentive Plan – Retail/The City/Services

- Changes to the Retail, The City and the Services Incentive Plans have already been made and were communicated last week.  Changes are effective October 1, 2008.

- The RVP plan was modified to replace EBT as a % of Revenue with Gross Margin $.  Gross Margin $ will be based on Region performance.

- The threshold performance levels have been reduced so that payouts begin at 80% attainment instead of 90% for Sales Revenue, Gross Margin and Net Operating Profit measures.

- All payouts are being calculated based on targets from the revised business plan, which creates more attainable and aspirational goals.

14



# Long Term Incentive Plan – LT Cash Plan
## VPs, RVPS, District Managers and Directors

- A long-term cash plan, with performance vesting and the potential to earn up to 200% of the target amount based on achievements above targeted performance. The grant vests between now and 7/1/2010.

- A September 29, 2008 grant similar to past grant practices. This plan does not require shareholder approval.

| | CCS Count | InterTAN Count | Target LT Value |
|---|---|---|---|
| VP and RVP (Levels L13 and L14) | 52 | 3 | $135,000 |
| SSC Director (Levels L10–L12) and Field Positions (Levels S14–S15) | 263 | 13 | $40,000 |

- Vesting and performance measures
  - 1/3 vesting on July 1, 2009 – earned as far as vesting as of February 28, 2009 if the Company has Minimum Availability under its then current credit facilities (as such existing or new credit facilities have been amended, modified, superseded and supplements as of February 28, 2009). In other words, the first third of the award will be paid for successfully executing the turnaround plan.
  - 1/3 vesting on January 1, 2010 – total shareholder return based upon the increase in stock price from the grant date.
  - 1/3 vesting on July 1, 2010 – total shareholder return based upon the increase in stock price from the grant date.

- Future new hires and promotions will receive prorated grants.

- The next annual award for this group is targeted for May 1, 2010.

Circuit City Confidential



# Long-Term Cash Plan – Director Example

| Performance Period | 10/1/2008 – 7/1/2009 | 10/1/2008 – 1/1/2010 | 10/1/2008 – 7/1/2010 | Total |
|---|---|---|---|---|
| Target Payout $ (1) | $13,333 | $13,333 | $13,333 | $40,000 |
| Max Payout $ | $13,333 | $33,333 | $33,333 | $80,000 |
| Performance Measure | • Minimum Availability | Total Shareholder Return (TSR) (2) | Total Shareholder Return (TSR) (2) | |
| Payout Matrix (3) | Milestones:<br>Successful completion = 100% payout | $3 (100% TSR) – 75% payout<br>$4 (167% TSR) – 100% payout<br>$5 (233% TSR) – 125% payout<br>$6 (300% TSR) – 175% payout<br>$7 (367% TSR) – 200% payout<br>$8 (433% TSR) – 225% payout<br>$9 (500% TSR) – 250% payout | $4 (167% TSR) – 75% payout<br>$5 (233% TSR) – 100% payout<br>$6 (300% TSR) – 125% payout<br>$7 (367% TSR) – 175% payout<br>$8 (433% TSR) – 200% payout<br>$9 (500% TSR) – 225% payout<br>$10 (567% TSR) – 250% payout | |

(1) Payout amounts not earned can be made-up during future vesting periods.  Make-up amounts cannot exceed targeted amounts for the period missed (i.e. no upside can be applied to unearned amounts).

(2) TSR calculation is based off the percentage increase in share price from the date of award (10/1/08) to the date of vest.  For purposes of the payout matrix, it is assumed that the share price on the grant date is $1.50.

(3) The payout levels in the final vesting period may need to be assessed for modification depending on the share price at the 2nd vest on 1/1/2010.

Circuit City Confidential

16



# Long-Term Cash Plan – VP Example

| Performance Period | 10/1/2008 – 7/1/2009 | 10/1/2008 – 1/1/2010 | 10/1/2008 – 7/1/2010 | Total |
|---|---|---|---|---|
| Target Payout $ [1] | $45,000 | $45,000 | $45,000 | $135,000 |
| Max Payout $ | $45,000 | $112,500 | $112,500 | $270,000 |
| Performance Measure | Milestones:<br>• Minimum Availability | Total Shareholder Return (TSR) [2] | Total Shareholder Return (TSR) [2] | |
| Payout Matrix [3] | Successful completion = 100% payout | $3 (100% TSR) – 75% payout<br>$4 (167% TSR) – 100% payout<br>$5 (233% TSR) – 125% payout<br>$6 (300% TSR) – 175% payout<br>$7 (367% TSR) – 200% payout<br>$8 (433% TSR) – 225% payout<br>$9 (500% TSR) – 250% payout | $4 (167% TSR) – 75% payout<br>$5 (233% TSR) – 100% payout<br>$6 (300% TSR) – 125% payout<br>$7 (367% TSR) – 175% payout<br>$8 (433% TSR) – 200% payout<br>$9 (500% TSR) – 225% payout<br>$10 (567% TSR) – 250% payout | |

(1) Payout amounts not earned can be made-up during future vesting periods. Make-up amounts cannot exceed targeted amounts for the period missed (i.e. no upside can be applied to unearned amounts).

(2) TSR calculation is based off the percentage increase in share price from the date of award (10/1/08) to the date of vest. For purposes of the payout matrix, it is assumed that the share price on the grant date is $1.50.

(3) The payout levels in the final vesting period may need to be assessed for modification depending on the share price at the 2nd vest on 1/1/2010.

Circuit City Confidential

17



# Short & Long-Term Compensation Calendar
## VP & Director Levels

**Short-Term**

FY08 Annual Incentive Plan Payout

FY09 Annual Incentive Plan Payout

**Long-Term**

50% of time-based 2005 LTIP shares accelerated

1/3 of options and phantom units vest under 1/1/08 LTIP

100% of all shares under the 2005 LTIP are vested by this date.

1/3 of options and phantom units and 50% of restricted shares vest under 1/1/08 LTIP

**Retention**

50% of 1/1/08 Retention Award Vests

1/3 of 9/29/08 Cash Plan vests

1/3 of 9/29/08 Cash Plan vests

50% of 1/1/08 Retention Award Vests

| Jan 08 | Mar 08 | May 08 | Jul 08 | Sep 08 | Nov 08 | Jan 09 | Mar 09 | May 09 | Jul 09 | Sep 09 | Nov 09 | Jan 10 |

Circuit City Confidential

**EXHIBIT H**

**(Phantom Stock Program Sample Letter)**







January 3, 2008

Dear 

Circuit City Stores, Inc. (the "Company") would like to support our director-level associates through a "phantom stock" award program that provides an incentive to work for the Company's long-term success. A phantom stock award generally consists of units, each with a value equivalent to one share of a company's stock, which is paid out at the end of a specified time period.

I am pleased to inform you that, effective January 1, 2008, you have been awarded the following phantom stock units, each with a value equal to one share of Circuit City Common Stock, which will be payable in cash upon vesting:

Number of Units:

Your award is subject to the conditions set forth in this letter and to your signing and returning the enclosed copy of this letter as instructed further below.

This long-term incentive is a three-year program, with vesting at the end of each of the first, second, and third years. If you remain continuously employed by the Company in a full-time active position from January 1, 2008 through and including:

* January 1, 2009, you will be 33.3% vested in your award and entitled to an initial cash payment equal to 33.3% of the total units awarded hereunder multiplied by the closing share price of Circuit City Common Stock on December 31, 2008;

* January 1, 2010, you will be 66.6% vested in your award and entitled to a second cash payment equal to 33.3% of the total units awarded hereunder multiplied by the closing share price of Circuit City Common Stock on December 31, 2009;

* January 1, 2011, you will be 100% vested in your award and entitled to a third cash payment equal to 33.4% of the total units awarded hereunder multiplied by the closing share price of Circuit City Common Stock on December 31, 2010.

Units that vest will be paid out in cash following the end of the corresponding vesting period. The vesting of all or part of a phantom stock award is a taxable event. Accordingly, upon distribution of each payment, the Company will withhold applicable federal, state, and local taxes from this payment.

If your active employment with the Company is terminated for any reason on or before a vesting date, or if you move to a part-time position on or before the vesting date, then the portion of your award that has not yet vested will be forfeited immediately upon the termination of your employment or upon your change to part-time status.

In the event of a stock split or combination of shares, or other such change in the Company's capital stock, without the receipt of consideration by the Company, the number of phantom stock units awarded hereunder will be adjusted accordingly.

If you remain continuously employed in a full-time active position with the Company through and including the date on which a "Change of Control" of the Company occurs, then any portion of your award that has not yet vested will vest as of such Change of Control date. For this purpose, "Change of Control" has the meaning set forth in the Circuit City Stores, Inc. 2003 Stock Incentive Plan, as amended and restated, effective December 14, 2006, and that definition is incorporated by reference into, and made a part of, this Award letter. Generally, a Change of Control will be deemed to occur upon any of the following events: (i) the acquisition by any person or entity of 35% or more of either the Company's outstanding shares or the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (but excluding certain acquisitions involving the Company or an affiliate, or by any benefit plan sponsored by the Company); (ii) the incumbent members of the Board of Directors of the Company (including any future directors whose election is approved by a majority of the incumbent members) cease to constitute a majority of the Board of Directors; (iii) the consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (with certain exceptions, as described in the 2003 Stock Incentive Plan), or (iv) the consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

Nothing in this letter confers any right to continued employment with the Company or affects the Company's right to terminate your employment at any time, with or without notice, and with or without cause.

You may not sell, give away or otherwise transfer any of your units. Additionally, phantom stock units are not actual shares of stock and do not confer on you any rights as a shareholder of the Company. Consequently, you will not have the right to vote or receive dividends on the units.

In order for your award to become effective, you must accept it by signing and faxing a copy of this entire letter as soon as possible, but in no event later than February 1, 2008, to 757-299-8412. Your signature will also constitute your agreement to the terms and conditions contained in this letter.

With this award, we express our confidence in your ability to help shape a Circuit City that will benefit our associates, our customers, and our shareholders for years to come.

Sincerely,

Eric A. Jonas, Jr.
Senior Vice President
Human Resources

ACCESPTED

Associate Signature

Printed Name

Date