Gregg M. Galardi, Esq.    Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.    Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP    One James Center
One Rodney Square    901 E. Cary Street
PO Box 636    Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:      :  Chapter 11
      :
CIRCUIT CITY STORES, INC.,  :  Case No. 08-35653 (KRH)
et al.,      :
      :
      Debtors.  :  Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS
(RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT
RESTORATION PLAN)**

The debtors and debtors in possession in the above-
captioned jointly-administered cases (collectively, the
"Debtors")[1], hereby object and move this Court (the

---

[1]  The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.

*(cont'd)*

"Objection"), pursuant to sections 105, 502 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), for an order, substantially in the form attached hereto as Exhibit A, reclassifying the Claims (as defined herein) as set forth herein.  In support of the Objection, the Debtors respectfully represent as follows:

### SUMMARY OF OBJECTION

1.   As set forth more fully below and on Exhibit C attached hereto, the Debtors object to the claims on Exhibit C (the "Claims") because each of the Claims was improperly asserted as a priority claim under section 507(a)(5) of the Bankruptcy Code.  Accordingly, the Debtors seek to reclassify such Claims in their entirety to general unsecured non-

_____

*(cont'd from previous page)*

(0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen, VA 23060.

priority claims (preserving all of the Debtors' rights to further object to the Claims on any grounds).

## JURISDICTION AND VENUE

2.   This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.   The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105, 502 and 507, Bankruptcy Rule 3007 and Local Rule 3007-1.

## BACKGROUND

**A.   The Bankruptcy Cases.**

4.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5.   Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtors are continuing as debtors in possession.

6.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

3

7.    On January 16, 2009, the Court authorized the Debtors, among other things, to commence liquidation and conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  The going out of business sales concluded on or about March 8, 2009.

8.    On September 29, 2009, the Debtors and the Creditors' Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009, and confirmation on the Plan is currently scheduled for June 8, 2010.

9.    Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

10.   On April 1, 2009, this Court entered the Order Establishing Omnibus Objection Procedures and

Approving the Form and Manner of Notice of Omnibus

Objections (Docket No. 2881) (the "Omnibus Objection

Procedures Order").

**B.    The Benefit Restoration Plan.**

11.   Prior to the Petition Date, the Debtors had

offered the Circuit City Stores, Inc. Benefit Restoration

Plan (as amended and restated, the "Benefit Restoration

Plan") to certain employees.  The Benefit Restoration Plan

was intended, generally, to provide deferred compensation

for certain key employees of the Debtors with compensation

in excess of the limit on deferred compensation provided by

the Debtors' retirement plan.  The Benefit Restoration Plan

currently provides that "no individual may become, or resume

his or her status as, an Eligible Employee or as a

Participant after February 28, 2005."  Benefit Restoration

Plan at § 2.1.

12.   The Benefit Restoration Plan was amended on

February 29, 2008 (the "February 2008 Amendment").  A copy

of the Benefit Restoration Plan, together with the February

2008 Amendment, is attached hereto as Exhibit D.  That

amendment provided that "neither Participants nor Sustained

Participants shall be credited with any Benefit Service for

periods of employment with the Company or Affiliated Company

occurring after February 29, 2008." Accordingly, the

February 2008 Amendment provided that participants in the

Benefit Restoration Plan would not earn benefits under the

plan for services provided after February 29, 2008.

### RELIEF REQUESTED

13.   By this Objection, the Debtors seek entry of

an order, in substantially the form attached hereto as

Exhibit A, pursuant to Bankruptcy Code sections 105(a), 502

and 507, Bankruptcy Rule 3007 and Local Rule 3007-1,

reclassifying each of the Claims identified on Exhibit C in

their entirety to general unsecured non-priority claims.

14.   For ease of reference, attached as Exhibit B

is an alphabetical listing of all claimants whose Claims are

included in this Objection (the "Claimants"), with a cross-

reference by claim number.

15.   At this time, the Debtors have not completed

their review of the validity of all claims/expenses filed

against their estates, including the Claims.  Accordingly,

the Claims may be the subject of additional subsequently-

filed objections.  To that end, the Debtors reserve the

right to further object to any and all claims, whether or

not the subject of this Objection, for allowance, voting,

and/or distribution purposes, and on any other grounds.[2]
Furthermore, the Debtors reserve the right to modify,
supplement and/or amend this Objection as it pertains to any
Claim or Claimant herein.

### BASIS FOR RELIEF

16.   Currently, the Debtors are engaged in a
thorough review of all claims filed against their estates to
determine the validity of such claims.  As part of this
process, the Debtors are diligently reviewing claims
asserted by certain of the Debtors' former employees.

17.   After reviewing these claims, their
supporting documentation and the Debtors' books and records,
the Debtors have determined that the Claims identified on
Exhibit C should be reclassified to general, unsecured, non-
priority claims.

18.   In particular, the Claimants asserting the
Claims seek payment of amounts allegedly due under the
Benefit Restoration Plan.  These Claims are asserted as
priority claims under Bankruptcy Code section 507(a)(5). The
Claims, however, are not entitled to priority because they

---

[2]   Specifically (and without limitation), in the event the Court does not
sustain the Objection, the Debtors reserve the right to object to the
Claims on the grounds that the Claims exceed the cap imposed by
Bankruptcy Code section 507(a)(5).

arise from services rendered on or before February 29, 2008, rather than during the 180-day period prior to the Petition Date.

## APPLICABLE AUTHORITY

19.  Bankruptcy Code section 507(a)(5) provides fifth priority to "allowed unsecured claims for contributions to an employee benefit plan . . . arising from services rendered within 180 days before the date of the filing of the petition . . ."  11 U.S.C. § 507(a)(5).

20.  Importantly, section 507(a)(5) limits its grant of priority status to contributions "arising from services rendered within 180 days" before the Petition Date. Id.; see also 5 Collier on Bankruptcy ¶ 507.07[3][a] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. rev. 2005) ("It is clear [] that the claim must be based upon services rendered during the applicable period."); In re CirrusCorp, 196 B.R. 76, 77 (S.D. Tex. 1996) (finding that insurance company's claim would have to be prorated such that only the portion attributable to the 180 days prior to the petition date received section 507(a)(5) priority status).  Accordingly, where the contributions at issue were earned by, and thus, arose from, services rendered more than 180 days prior to the Petition Date, such contributions are

8

not entitled to priority under section 507(a)(5).  See In re Pittston Stevedoring Corp., 40 B.R. 424, 426 (Bankr. S.D.N.Y. 1984) ("It is abundantly clear from the language of the Code that the event which triggers priority status for a claim for contribution to an employee benefit plan is the performance of that employee's services . . . .  Because the services rendered which gave rise to the claims now in issue were clearly performed before the relevant 180-day period, these claims are not entitled to priority status as contributions to an employee benefit plan under Code Section 507(a)(4) [now section 507(a)(5)].")

21.  That is the case here.  As noted above, the February 2008 Amendment provided that participants in the Benefit Restoration Plan would not earn benefits under the plan for services provided after February 29, 2008.  Thus, Benefit Restoration Plan participants did not, in fact, earn any benefits for services rendered after that date.  As such, all amounts asserted in the Claims arise (if at all) from services provided by the Claimants prior to February 29, 2008.

22.  Because February 29, 2008 is more than 180 days before the Petition Date, the Claims under the Benefit Restoration Plan did not "aris[e] from services rendered

within 180 days before the [Petition Date]." 11 U.S.C. §

507(a)(5). Thus, such Claims are not entitled to priority

under Bankruptcy Code section 507(a)(5) and should be

reclassified to non-priority general unsecured claims. <u>See</u>

<u>Pittston Stevedoring Corp.</u>, 40 B.R. at 426.

     23. Accordingly, the Debtors object to the

priority classification of the Claims and respectfully

request that all the Claims be reclassified as general,

unsecured, non-priority claims.

## RESERVATION OF RIGHTS

     24. As noted above, the Debtors reserve their

rights to file objections to the Claims at a later time on

any grounds that bankruptcy or non-bankruptcy law permits,

including (but not limited to) the grounds that the Claims

should be reduced in accordance with the cap established by

Bankruptcy Code section 507(a)(5). The Debtors likewise

reserve the right to modify, supplement and/or amend this

Objection as it pertains to any Claim or Claimant herein.

## NOTICE AND PROCEDURE

     25. Notice of this Objection has been provided to

all Claimants with Claims that are the subject to this

Objection, as identified on <u>Exhibit B</u>, and to other parties

in interest in accordance with this Court's Supplemental

Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Amended Notice, Case Management and Administrative Procedures (Docket No. 6208) (the "Case Management Order").

26. In particular, the Debtors have served the Objection on the Claimants as follows: (a) to the extent counsel for a Claimant is not known to the Debtors, by first class mail, postage prepaid, on the signatory of the Claimant's proof of claim form or other representative identified in the proof of claim form or any attachment thereto; or (b) to the extent counsel for a Claimant has appeared on the Claimant's behalf in the Debtors' bankruptcy cases, by first class mail, postage prepaid, on such counsel. In each case, the Debtors served the Claimant or their counsel, as the case may be, with this Objection and the Exhibit(s) on which the Claimant's Claim is listed. The Debtors submit that service as set forth herein constitutes due and sufficient service of this Objection, including in accordance with Bankruptcy Rules 3007, 7004 and 9006.

27. To the extent any Claimant timely files and properly serves a response to this Objection by **June 1, 2010** (the "Response Deadline") as required by the Case Management

Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Debtors request that the Court conduct a status conference with respect to any such responding Claimant at **10:00 a.m. on June 8, 2010** and thereafter schedule the matter for a future hearing as to the merits of such Claim.[3]

28.   However, to the extent any Claimant fails to timely file and properly serve a response to this Objection by the Response Deadline as required by the Case Management Order and applicable law, the Debtors request that the Court enter an order, substantially in the form attached hereto as Exhibit A, reclassifying such Claimant's Claim for all purposes in these bankruptcy cases.

### COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

29.   This Objection complies with Bankruptcy Rule 3007(e) as modified by, and in accordance with, the Omnibus Objection Procedures Order.

### WAIVER OF MEMORANDUM OF LAW

30.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in

---

[3]   In accordance with the Omnibus Objection Procedures Order, Claimants who respond to the Objection do not need to appear at the status conference.

the Objection, the Debtors request that the requirement that
all motions be accompanied by a written memorandum of law be
waived.

## NO PRIOR RELIEF

31.  No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors request that the Court

enter the Order sustaining this Objection and granting such

other and further relief as the Court deems appropriate.

Dated: Richmond, Virginia
      May 6, 2010

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley _____
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

**EXHIBIT A**

**(Proposed Order)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
                            RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER SUSTAINING DEBTORS' SEVENTY-FIFTH OMNIBUS OBJECTION TO
CLAIMS (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT
                        RESTORATION PLAN)**

    Upon the Debtors' Seventy-Fifth Omnibus Objection to Claims

(Reclassification of Certain Claims Under the Benefit

Restoration Plan) (the "Objection")[1], seeking, among other

things, that, for those reasons set forth in the Objection, the

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings
     ascribed to such terms in the Objection.

Claims specifically identified on Exhibit C attached to the Objection be reclassified in their entirety to general unsecured non-priority claims; and it appearing that notice and service of the Objection was proper and sufficient and that no other further notice or service of the Objection need be given; and it further appearing that no response was timely filed or properly served by the Claimants being affected by this Order; and it appearing that the relief requested in the Objection is in the best interest of the Debtors, their estates and creditors and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Objection is SUSTAINED.

2.    The Claims identified on Exhibit A, as attached hereto and incorporated herein, are hereby reclassified in their entirety to general, unsecured, non-priority claims for all purposes in these bankruptcy cases.

3.    The Debtors' rights to object to any claim, including (without limitation) the Claims included in the Objection, on any grounds that applicable law permits are not waived and are expressly reserved.

4.    The Debtors shall serve a copy of this Order on the Claimants included on the exhibits to this Order on or before five (5) business days from the entry of this Order.

     5.    This Court shall retain jurisdiction to hear and

determine all matters arising from or relating to this Order.


Dated: Richmond, Virginia
           _____, 2010




_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and –

/s/ Douglas M. Foley_____
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby
certify that the foregoing proposed order has been endorsed by
or served upon all necessary parties.

                    __/s/ Douglas M. Foley_____
                    Douglas M. Foley

4

**EXHIBIT B**

**(List of Claims and Claimants)**

In re: Circuit City Stores, Inc, et al.

Debtors' Seventy-Fifth Omnibus Objection to Claims

Case No. 08-35653 (KRH)

Reclassification of Certain Claims Under the Benefit Restoration Plan

Exhibit B - Claimants and Related Claims Subject To Seventy-Fifth Omnibus Objection to Claims

| Claim Holder | Claim | Exhibit |
|---|---|---|
| CECIL, DAVID W | 4499 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| DENNEY, WILLIAM C | 5703 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| DOUGLAS, PETER A | 1761 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| LAWSON JERRY L | 4495 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| LUCAS RICHARD B | 8312 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| MIERENFELD GARY M | 4498 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| PASINI, GEORGE R | 2198 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |
| PHILIP J DUNN | 6309 | EXHIBIT C - (RECLASSIFICATION OF CERTAIN CLAIMS UNDER THE BENEFIT RESTORATION PLAN) |

**EXHIBIT C**

**(Claims To Be Reclassified)**

In re Circuit City Stores, Inc, et al. Case 08-35653-KRH Doc 7448 Filed 05/06/10 Entered 05/06/10 15:51:31 Desc Main
Case No. 08-35653 (KRH)
Document Page 23 of 42

Debtors' Sixty-Fourth Omnibus Objection to Claims
(Reclassification Of Certain Claims Under The Benefit
Restoration Plan)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | | | | | | CLAIM AS MODIFIED | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 4499<br>Date Filed: 01/23/2009<br>Docketed Total: $346,607.00<br>Filing Creditor Name and Address:<br>CECIL, DAVID W<br>2700 E BRIGSTOCK RD<br>MIDLOTHIAN, VA 23113-3901 | Claim Holder Name and Address    Case Number: 08-35653<br><br>CECIL, DAVID W    Docketed Total: **$346,607.00**<br>2700 E BRIGSTOCK RD<br>MIDLOTHIAN, VA 23113-3901<br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                                         $346,607.00 | Case Number: 08-35653<br><br>Modified Total: **$346,607.00**<br><br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                                     $346,607.00 |
| Claim: 5703<br>Date Filed: 01/27/2009<br>Docketed Total: $1,796,704.00<br>Filing Creditor Name and Address:<br>DENNEY, WILLIAM C<br>2904 NORTHLAKE DR<br>RICHMOND, VA 23233 | Claim Holder Name and Address    Case Number: 08-35653<br><br>DENNEY, WILLIAM C    Docketed Total: **$1,796,704.00**<br>2904 NORTHLAKE DR<br>RICHMOND, VA 23233<br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $1,796,704.00 | Case Number: 08-35653<br><br>Modified Total: **$1,796,704.00**<br><br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $1,796,704.00 |
| Claim: 1761<br>Date Filed: 12/18/2008<br>Docketed Total: $0.00<br>Filing Creditor Name and Address:<br>DOUGLAS, PETER A<br>5792 FAIRWOOD TRACE NW<br>ACWORTH, GA 30101 | Claim Holder Name and Address    Case Number: 08-35653<br><br>DOUGLAS, PETER A    Docketed Total: **UNL**<br>5792 FAIRWOOD TRACE NW<br>ACWORTH, GA 30101<br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $0.00 | Case Number: 08-35653<br><br>Modified Total: **$0.00**<br><br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $0.00 |
| Claim: 4495<br>Date Filed: 01/23/2009<br>Docketed Total: $1,281,794.00<br>Filing Creditor Name and Address:<br>LAWSON JERRY L<br>3021 NORTH LAKE DRIVE<br>RICHMOND, VA 23233 | Claim Holder Name and Address    Case Number: 08-35653<br><br>LAWSON, JERRY L    Docketed Total: **$1,281,794.00**<br>3021 NORTH LAKE DRIVE<br>RICHMOND, VA 23233<br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $1,281,794.00 | Case Number: 08-35653<br><br>Modified Total: **$1,281,794.00**<br><br><br>503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured<br>                          $1,281,794.00 |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

Debtors' Seventh Omnibus Objection to Claims
(Reclassification Of Certain Claims Under The Benefit Restoration Plan)

**EXHIBIT C**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|

| | | |
|---|---|---|
| Claim: 8312<br>Date Filed:  01/23/2009<br>Docketed Total:  $904,789.00<br>Filing Creditor Name and Address:<br> LUCAS RICHARD B<br> 139 SUMMER ST<br> NORWELL, MA 02061 | Claim Holder Name and Address    Case Number:    08-35653<br><br>LUCAS, RICHARD B    Docketed Total:    **$904,789.00**<br>139 SUMMER ST<br>NORWELL, MA 02061 | Case Number:    08-35653<br><br>Modified Total:    **$904,789.00** |

503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured     503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured
                                        $904,789.00                                                        $904,789.00

| | | |
|---|---|---|
| Claim: 4498<br>Date Filed:  01/23/2009<br>Docketed Total:  $904,288.10<br>Filing Creditor Name and Address:<br> MIERENFELD GARY M<br> 2724 STONEGATE COURT<br> MIDLOTHIAN, VA 23113 | Claim Holder Name and Address    Case Number:    08-35653<br><br>MIERENFELD, GARY M    Docketed Total:    **$904,288.10**<br>2724 STONEGATE COURT<br>MIDLOTHIAN, VA 23113 | Case Number:    08-35653<br><br>Modified Total:    **$904,288.10** |

503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured     503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured
                                        $904,288.10                                                        $904,288.10

| | | |
|---|---|---|
| Claim: 2198<br>Date Filed:  01/05/2009<br>Docketed Total:  $1,074.44<br>Filing Creditor Name and Address:<br> PASINI, GEORGE R<br> 415 LAMBIANCE DRIVE<br> BLDG 1 UNIT 405<br> LONGBOAT KEY, FL 34228 | Claim Holder Name and Address    Case Number:    08-35653<br><br>PASINI, GEORGE R    Docketed Total:    **$1,074.44**<br>415 LAMBIANCE DRIVE<br>BLDG 1 UNIT 405<br>LONGBOAT KEY, FL 34228 | Case Number:    08-35653<br><br>Modified Total:    **$1,074.44** |

503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured     503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured
                                        $1,074.44                                                          $1,074.44

| | | |
|---|---|---|
| Claim: 6309<br>Date Filed:  01/27/2009<br>Docketed Total:  $1,723,951.00<br>Filing Creditor Name and Address:<br> PHILIP J DUNN<br> 11465 BARRINGTON BRIDGE CT<br> RICHMOND, VA 23233 | Claim Holder Name and Address    Case Number:    08-35653<br><br>DUNN, PHILIP J    Docketed Total:    **$1,723,951.00**<br>11465 BARRINGTON BRIDGE CT<br>RICHMOND, VA 23233 | Case Number:    08-35653<br><br>Modified Total:    **$1,723,951.00** |

503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured     503(b)(9)  Reclamation  Admin  Secured  Priority  Unsecured
                                        $1,723,951.00                                                      $1,723,951.00

| | | |
|---|---|---|
| | | **Total Claims To Be Modified: 8**<br>**Total Amount As Docketed:**    **$6,959,207.54**<br>**Total Amount As Modified:**    **$6,959,207.54** |

\*    "UNL" denotes an unliquidated claim.

**EXHIBIT D**

**(Benefit Restoration Plan)**

# CIRCUIT CITY STORES, INC.
# BENEFIT RESTORATION PLAN

As Amended and Restated
Effective February 28, 2005
And Amended Through December 2005

# TABLE OF CONTENTS

Page

### Section I
### Purpose of the Plan

| | | |
|---|---|---|
| 1.1 | Purpose | 1 |
| 1.2 | Structure | 1 |
| 1.3 | Definitions | 1 |

### Section II
### Eligibility

| | | |
|---|---|---|
| 2.1 | Eligible Employees | 2 |
| 2.2 | Participation | 2 |
| 2.3 | No Duplication of Benefits | 2 |

### Section III
### Benefits

| | | |
|---|---|---|
| 3.1 | Minimum Service Requirement | 3 |
| 3.2 | Supplemental Benefit | 3 |
| 3.3 | Adjustment for Early or Late Commencement | 4 |
| 3.4 | Maximum Benefit | 4 |
| 3.5 | Additional Benefit Service | 5 |

### Section IV
### Computation and Payment of Retirement Benefit

| | | |
|---|---|---|
| 4.1 | Computation | 5 |
| 4.2 | Payment | 5 |
| 4.3 | Distribution of Accrued Benefit | 6 |
| 4.4 | Distribution to W. Alan McCollough | 6 |

### Section V
### Computation and Payment of Survivor Benefit

| | | |
|---|---|---|
| 5.1 | Pre-Retirement Survivor Benefit | 7 |
| 5.2 | Post-Retirement Survivor Benefit | 7 |
| 5.3 | Computation | 8 |
| 5.4 | Payment | 8 |

### Section VI
### Administration

| | | |
|---|---|---|
| 6.1 | Effective Date, Amendment and Termination | 8 |
| 6.2 | Plan Administrator | 8 |

6.3    Claims Procedure                                                          8

## Section VII
## Change of Control

7.1    Effect of Change of Control                                               9
7.2    Definition of Change of Control                                           9

## Section VIII
## Miscellaneous

8.1    Withholding                                                              11
8.2    Rights Under the Plan                                                    11
8.3    Effect on Employment                                                     11
8.4    Successors; Governing Law                                                11

## CIRCUIT CITY STORES, INC.
## BENEFIT RESTORATION PLAN

### Section I
### Purpose of the Plan

1.1    Purpose.  Circuit City Stores, Inc. (the "Company") maintains this Circuit City Stores, Inc. Benefit Restoration Plan (the "Plan") to provide deferred compensation for certain key employees of the Company and its Affiliated Companies who are expected to contribute significantly to the growth of the Company and its Affiliated Companies.  The Board of Directors of the Company (the "Board") has determined that the benefits to be provided under the Plan are reasonable and appropriate compensation for the services rendered and to be rendered.

1.2    Structure.  This Plan provides benefits as set forth in Sections III, IV and V below for a select group of management or highly compensated employees (and their Beneficiaries) with compensation in excess of the limit on compensation under Section 401(a)(17) of the Code, or whose benefits are limited under the Retirement Plan by the maximum benefit limit under Section 415 of the Code.

1.3    Definitions.  Whenever used in the Plan, the following terms shall have the meanings set forth below.

(a)    "Affiliated Company" means any company or business organization that is under common control with the Company and that has adopted the Retirement Plan as a Related Company.

(b)    "Code" means the Internal Revenue Code of 1986, as amended.

(c)    "Effective Date" means February 28, 1999.

(d)    "Maximum Benefit" means the maximum annual Supplemental Benefit payable from the Plan as determined under Section 3.4.

(e)    "Participant" means an individual who is eligible to participate in the Plan under Section II.

(f)    "Pre-Retirement Survivor Benefit" means the benefit payable under the Plan to a surviving Spouse of a Participant as determined under Section 5.1.

(g)    "Post-Retirement Survivor Benefit" means the benefit payable under the Plan to a Beneficiary of a Participant as determined under Section 5.2.

(h)    "Retirement Plan" means the Retirement Plan of Circuit City Stores, Inc. as in effect from time to time.

(i)    "Supplemental Benefit" means the benefit payable under the Plan as determined by Section 3.2, subject to adjustments as provided in the Plan.

(j)    "Tax Limits" means both (1) the limit on compensation under Section 401(a)(17) of the Code (as adjusted from time to time under the terms of the Retirement Plan), and (2) the maximum benefit limit under Section 415(b)(1)(A) of the Code (as adjusted from time to time under the terms of the Retirement Plan).

(k)    The following terms shall have the meanings provided in the Retirement Plan:  Actuarial Equivalent, Beneficiary, Benefit Service, Committee, Disability Pension, Early Retirement Date, Normal Retirement Date, Permanent Disability, Plan Year, Qualified Pre-Retirement Survivor Annuity, Related Company, and Spouse.

(l)    "Sustained Participant" means a Participant listed in Appendix A to this Plan.

Section II
Eligibility

2.1    Eligible Employees.  Each participant in the Retirement Plan who is an employee of the Company or an Affiliated Company on or after the Effective Date, and whose retirement benefits under the Retirement Plan are limited by either or both of the Tax Limits, shall be a Participant. Notwithstanding any provision of this Plan to the contrary, no individual may become, or resume his or her status as, an Eligible Employee or as a Participant after February 28, 2005.

2.2    Participation.  A Participant shall commence participation in the Plan on the later of the Effective Date or the first day of the Plan Year beginning after the Participant's future retirement benefits under the Retirement Plan are limited by either or both of the Tax Limits.  An individual shall cease to be a Participant when the individual's future retirement benefits under the Retirement Plan are no longer limited by either of the Tax Limits or when the individual and his or her Beneficiary have received all benefits payable under the Plan.

2.3    No Duplication of Benefits.  All benefits described in the Plan are subject to the provisions of Section 3.4.  Notwithstanding anything in the Plan to the contrary, there shall be no duplication of benefits under this Plan and the Retirement Plan.

Section III
Benefits

3.1    <u>Minimum Service Requirement</u>.  To receive a Supplemental Benefit, a Participant must commence benefits under the Retirement Plan (including a Disability Pension) and meet one or more of the following criteria:

      (a)    Have twenty-five (25) years of Benefit Service at termination of employment with the Company or an Affiliated Company (any Benefit Service credited after termination of employment during a period of Permanent Disability also shall be included in years of Benefit Service for this purpose),

      (b)    Either (i) have reached the Participant's Early Retirement Date at the date of termination of employment with the Company or an Affiliated Company or (ii) have reached the Participant's Early Retirement Date and have had a continuous Permanent Disability from the date of termination of employment until the Early Retirement Date, or

      (c)    Either (i) have reached the Participant's Normal Retirement Date at the date of termination of employment with the Company or an Affiliated Company or (ii) have reached the Participant's Normal Retirement Date and have had a continuous Permanent Disability from the date of termination of employment until the Normal Retirement Date.

3.2    <u>Supplemental Benefit</u>.  The Supplemental Benefit for Participants and Sustained Participants shall be determined in accordance with subsections 3.2(a), and 3.2(b), as applicable.

      (a)    If a Participant, other than a Sustained Participant, begins receiving a retirement benefit from the Retirement Plan, the Participant shall receive a Supplemental Benefit under the Plan equal to the amount (if any) determined as follows:

            (i)    The retirement benefit that would have been paid from the Retirement Plan (a) had the Participant's benefit not been limited by the Tax Limits and (b) additionally, if applicable, had the Participant actually earned any Benefit Service imputed under Section 3.5,

REDUCED BY

            (ii)    The total retirement benefit that is payable to the Participant under the Retirement Plan.

- 3 -

(b)    If a Sustained Participant begins receiving a retirement benefit from the Retirement Plan, the Participant shall receive a Supplemental Benefit under the Plan equal to the amount (if any) determined as follows:

(i)    The retirement benefit that would have been paid from the Retirement Plan (a) had the Sustained Participant's benefit not been limited by the Tax Limits, (b) had the Sustained Participant's Benefit Service included periods of employment with the Company or Affiliated Company occurring after February 28, 2005, and (c) additionally, if applicable, had the Participant actually earned any Benefit Service imputed under Section 3.5,

REDUCED BY

(ii)    The total retirement benefit that would have been payable to the Sustained Participant under the Retirement Plan had the Sustained Participant's Benefit Service included periods of employment with the Company or Affiliated Company occurring after February 28, 2005.

3.3    Adjustment for Early or Late Commencement. If a Supplemental Benefit commences before the Participant's Normal Retirement Date, the benefit under Sections 3.2(a) and 3.2(b)(i) shall be calculated in accordance with any early retirement reduction provided under the Retirement Plan. If a Supplemental Benefit commences after a Participant's Normal Retirement Date, the benefit under Sections 3.2(a) and 3.2(b)(i) shall be calculated in accordance with the provisions under the Retirement Plan for benefits commencing after Normal Retirement Date. If a Supplemental Benefit commences when a Participant starts a Disability Pension under the Retirement Plan, the benefit under Section 3.2(a)(i) and 3.2(b)(i) shall be calculated by including Benefit Service during the period of Permanent Disability in accordance with the provisions of the Retirement Plan for a Disability Pension.

3.4    Maximum Benefit.

(a)    Notwithstanding any other provision of the Plan to the contrary, the annual Supplemental Benefit payable to a Participant under this Plan shall not exceed (i) the Maximum Benefit reduced by (ii) the total annual retirement benefit that is payable to the Participant under the Retirement Plan. The Maximum Benefit is based on the payment of the Supplemental Benefit as a straight life annuity (with no ancillary benefits). If benefits are payable in any other form, the Maximum Benefit shall be actuarially reduced to be the Actuarial Equivalent of the Maximum Benefit payable as a straight life annuity (with no ancillary benefits).

- 4 -

(b)    The Maximum Benefit is an annual amount equal to $300,000, as adjusted below. The Maximum Benefit shall be subject to increase in the same percentage as the Section 415 dollar limit is adjusted under Section 415(d)(1)(A) of the Code from time to time. The adjustment will be made effective as of each March 1 beginning with March 1, 1997, based on the percentage adjustment applicable to that calendar year. If no adjustment is made under Section 415(d)(1)(A) of the Code for a calendar year, there shall be no adjustment in the Maximum Benefit for that year. In addition, the Maximum Benefit shall be proportionately adjusted for increases in the maximum dollar limit under Section 415(b)(1)(A). The Maximum Benefit is not actuarially increased or decreased if the Participant commences payments other than at Normal Retirement Date.

(c)    A Participant's Maximum Benefit shall be determined as of the commencement of payment of the Supplemental Benefit to the Participant and shall not be subject to future adjustment. The Supplemental Benefit shall not be reduced if additional benefits become payable from the Retirement Plan for any reason. A Participant's Supplemental Benefit shall not be increased if the Maximum Benefit is increased under Section 3.4(b) after the commencement of payments under the Plan.

3.5    <u>Additional Benefit Service</u>. At its discretion, the Board of Directors or the Executive Committee of the Board may provide that any Participant shall be credited with additional imputed Benefit Service for purposes of Section 3.2(a). The Board or Executive Committee shall have complete discretion to determine the amount of additional Benefit Service to be imputed and any other terms and conditions of the additional service crediting. Any imputed Benefit Service shall be treated the same as actual Benefit Service for purposes of this Plan.

Section IV
Computation and Payment of Retirement Benefit

4.1    <u>Computation</u>. The amount of the Supplemental Benefit described in Section III will initially be determined by assuming that the benefits payable under this Plan and the Retirement Plan are paid in the form of a single life annuity payable for the Participant's lifetime, beginning on the date on which payments actually begin to be made to the Participant from the Retirement Plan and ending at the Participant's death.

4.2    <u>Payment</u>. A Participant's Supplemental Benefit under this Plan will be paid at the same time and in the same form of payment as benefits for the Participant under the Retirement Plan, except as provided in Section 4.3. If the benefit is to be paid in a form other than the single life annuity form described above, the Supplemental Benefit described in Section III will be actuarially adjusted, using the actuarial assumptions then in effect under the Retirement Plan. Except as provided below, a Participant's Supplemental Benefit will begin to be paid on the date on which the Participant begins receiving benefits under the Retirement Plan and will be paid in cash or a cash equivalent.

- 5 -

4.3    Distribution of Accrued Benefit.

(a)    Notwithstanding anything in the Plan to the contrary, the Company may distribute, or cause to be distributed in a single lump sum, to a Participant (or, after his death, to his Beneficiary) the Actuarial Equivalent of the Supplemental Benefit of the Participant (or Beneficiary) under the Plan as of a specified date. The distribution may be made at any time deemed appropriate by the Company. The lump sum shall be distributed in cash or a cash equivalent. The Company shall indicate in writing that the distribution is intended to be a distribution of the Participant's (or Beneficiary's) accrued benefit under the Plan. The Company may take into account the tax consequences of the distribution when computing the amount to be distributed under this Section 4.3.

(b)    After a distribution under this Section 4.3, the Company shall have no further liability with respect to the Supplemental Benefit. The Company has the sole discretion to determine when and if a distribution is to be made under this Section 4.3, and to determine the amount of any distribution, and no Participant or Beneficiary shall have any right to receive a distribution under this Section 4.3.

4.4    Distribution to W. Alan McCollough. Notwithstanding any other provision of this Plan or the Retirement Plan to the contrary, W. Alan McCollough shall be permitted to make an election under this Plan, on behalf of himself and his Beneficiary, to receive the Actuarial Equivalent of his Supplemental Benefit in a single cash (or cash equivalent) lump sum as of the date which is six months after his Retirement Date (or the date of his death, if earlier). "Retirement Date," for purposes of this Section 4.4, means the date on which Mr. McCollough experiences a "separation from service" within the meaning of Prop. Treas. Regs. Section 1.409A-1(h). This election shall be valid only if received by the Committee on or before December 31, 2005, and shall be fixed and irrevocable after such date. If Mr. McCollough makes this election, the Actuarial Equivalent of his Supplemental Benefit shall be determined as of his Retirement Date, calculated (i) with any additional Benefit Service and years of age granted to Mr. McCollough under the terms of a separate contract or agreement; and (ii) as if he had begun receiving his retirement benefit under the Retirement Plan as of such date. A valid election pursuant to the terms of this Section 4.4 shall supersede any contrary payment and distribution terms of this Plan and shall replace any prior payment or distribution election by Mr. McCollough under the Retirement Plan as it might otherwise apply to his Supplemental Benefit. The timing of the payment of Mr. McCollough's Supplemental Benefit shall not be accelerated for any reason, at the discretion of the Company or otherwise, except as may be specifically permitted under Prop. Treas. Regs. Section 1.409A-3(h). If Mr. McCullough does not make a valid election pursuant to this Section 4.4., his Supplemental Benefit shall be paid in accordance with the otherwise applicable terms of this Plan.

Section V
Computation and Payment of Survivor Benefit

5.1     Pre-Retirement Survivor Benefit. A Pre-Retirement Survivor Benefit shall be payable to the surviving Spouse of a Participant if (i) the Participant had at least ten years of Benefit Service at death, and (ii) the Participant's surviving Spouse is entitled to a Qualified Pre-Retirement Survivor Annuity under the Retirement Plan.

(a)     The Spouse will be entitled to receive a Pre-Retirement Survivor Benefit from this Plan equal to the amount (if any) determined as follows:

(i)     The survivor benefit that would have been payable to the Spouse under the Retirement Plan had the Participant's Supplemental Benefit (as adjusted under Sections 3.3 and 3.4) and benefit from the Retirement Plan been paid entirely from the Retirement Plan,

REDUCED BY

(ii)     The total survivor benefit that is payable to the Spouse under the Retirement Plan.

(b)     A Pre-Retirement Survivor Benefit is payable in the same form as the survivor benefit is payable under the Retirement Plan, including benefit forms that may provide payments after the death of the surviving Spouse.

5.2     Post-Retirement Survivor Benefit. A Post-Retirement Survivor Benefit shall be payable to the surviving Beneficiary of a Participant if (i) the Participant is receiving a form of benefit under the Retirement Plan that provides for a survivor benefit, and (ii) a survivor benefit is payable to the Beneficiary under the Retirement Plan.

(a)     The Beneficiary will be entitled to receive a Post-Retirement Survivor Benefit from this Plan equal to the amount (if any) determined as follows:

(i)     The survivor benefit that would have been payable to the Beneficiary under the Retirement Plan had the Participant's Supplemental Benefit (as adjusted under Sections 3.3 and 3.4) and benefit from the Retirement Plan been paid entirely from the Retirement Plan,

REDUCED BY

(ii)     The total survivor benefit that is payable to the Beneficiary under the Retirement Plan.

(b)     A Post-Retirement Survivor Benefit is payable to a surviving Spouse or any other Beneficiary of a Participant who is receiving a survivor benefit under the Retirement Plan.

- 7 -

5.3    <u>Computation</u>. The Pre-Retirement Survivor Benefit described in Section 5.1 and the Post-Retirement Survivor Benefit described in Section 5.2 will be computed as if the survivor benefits under this Plan and the Retirement Plan were paid in the form payable under the Retirement Plan. The actuarial assumptions used for purposes of the Retirement Plan will be used to determine the benefits payable under this Plan.

5.4    <u>Payment</u>. Except as provided in Section 4.3, the Pre-Retirement Survivor Benefit and Post-Retirement Survivor Benefit will be paid at the same times and for the same duration as payments under the Retirement Plan, commencing at the time the benefits commence under the Retirement Plan. The Pre-Retirement Survivor Benefit and Post-Retirement Survivor Benefit will be paid in cash or a cash equivalent.

Section VI
Administration

6.1    <u>Effective Date, Amendment and Termination</u>. The Plan shall be effective as of February 28, 1999. The Board of the Company may amend or terminate the Plan at any time; provided, however, that no amendment or termination of the Plan shall reduce a Participant's accrued benefit under the Plan as of the date of the amendment or termination. For this purpose, a Participant's accrued benefit under the Plan shall be computed based on the formulas in this Plan and his accrued benefits under the Retirement Plan as of the date of the computation.

6.2    <u>Plan Administrator</u>. The Plan will be administered by one or more persons appointed by the Board to be responsible for administering the Plan (the "Plan Administrator"). Unless the Board determines otherwise, the Plan shall be administered by the Committee which administers the Retirement Plan. The decisions of the Plan Administrator shall be final and binding on all persons. The Plan Administrator will have the express discretionary authority to interpret and administer the Plan, and to make all decisions with respect to the interpretation and administration of the Plan.

6.3    <u>Claims Procedure</u>. Each Participant or Beneficiary of a deceased Participant shall be entitled to file with the Plan Administrator a written claim for benefits under the Plan. The Plan Administrator will review the claim, and, if the claim is denied, in whole or in part, the Plan Administrator will furnish the claimant, within 90 days after the Plan Administrator's receipt of the claim (or within 180 days after such receipt, if special circumstances require an extension of time), a written notice of denial of the claim containing the following:

(a)    Specific reasons for the denial,

(b)    Specific reference to the pertinent Plan provisions on which the denial is based,

(c)    A description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why the material or information is necessary, and

- 8 -

    (d)    An explanation of the claims review procedure.

The claimant may request a review of the claim by an appeals committee appointed by the Board. The review may be requested in writing at any time within 90 days after the claimant receives written notice of the denial of his claim. The appeals committee shall afford the claimant a full and fair review of the decision denying the claim and, if so requested, shall:

    (a)    Permit the claimant to review any documents that are pertinent to the claim,

    (b)    Permit the claimant to submit to the committee issues and comments in writing, and

    (c)    Afford the claimant an opportunity to meet with a quorum of the appeals committee as part of the review procedure.

The appeals committee's decision on review shall be made in writing and shall be issued within 60 days following receipt of the request for review. The period for decision may be extended to a date not later than 120 days after such receipt if the committee determines that special circumstances require an extension. The decision on review shall include specific reasons for the decision and specific references to the Plan provisions on which the decision of the committee is based.

## Section VII
## Change of Control

7.1    Effect of Change of Control. Immediately prior to a Change of Control as defined in Section 7.2, the Company shall immediately fund the Circuit City Stores, Inc. Benefit Restoration Plan Trust (the "Trust") with an amount equal to the then Actuarial Equivalent of the present value of the Supplemental Benefits of all Participants and the survivor benefits of all Beneficiaries payable as a single lump sum payment. The Trust shall be funded with cash or cash equivalents other than stock of the Company.

7.2    Definition of Change of Control. "Change of Control" means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

    (a)    The acquisition by any individual, entity, or group (a "Person"), including a "person" within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Exchange Act, of thirty-five percent (35%) or more of either: (i) the then outstanding shares of common stock of the Circuit City Group (the "Outstanding Common Stock"); or (ii) the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following: (A) any acquisition directly from the Company (excluding an acquisition resulting from the exercise of an option,

- 9 -

conversion right, or exchange privilege unless the security being so exercised, converted or exchanged was acquired directly from the Company); (B) any acquisition by the Company; (C) any acquisition by an employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; or (D) any acquisition by any corporation pursuant to a transaction which complies with clauses (i), (ii), and (iii) of subsection (c) of this Article 7.2;

(b)     Individuals who, as of the Effective Date, constitute the Board of Directors (the "Incumbent Board") cease for any reason to constitute at least a majority of such Board; provided that any individual who becomes a director of the Company subsequent to the Effective Date, whose election, or nomination for election by the Company's stockholders, was approved by the vote of at least a majority of the directors then comprising the Incumbent Board shall be deemed a member of the Incumbent Board; and provided further, that any individual who was initially elected as a director of the Company as a result of an actual or threatened election contest, as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or any other actual or threatened solicitation of proxies or consents by or on behalf of any Person other than the Board shall not be deemed a member of the Incumbent Board;

(c)     The consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (a "Corporate Transaction"); excluding, however, a Corporate Transaction pursuant to which: (i) all or substantially all of the individuals or entities who are the beneficial owners, respectively, of the Outstanding Common Stock and the Outstanding Voting Securities immediately prior to such Corporate Transaction will beneficially own, directly or indirectly, more than sixty percent (60%) of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such Corporate Transaction (including, without limitation, a corporation, which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or indirectly) in substantially the same proportions relative to each other as their ownership, immediately prior to such Corporate Transaction, of the Outstanding Common Stock and the Outstanding Voting Securities, as the case may be; (ii) no Person (other than: the Company; any employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; the corporation resulting from such Corporate Transaction; and any Person which beneficially owned, immediately prior to such Corporate Transaction, directly or indirectly, twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent (25%) or more of, respectively, the outstanding shares of common stock of the corporation resulting from such Corporate Transaction or the combined voting power of the

- 10 -

outstanding securities of such corporation entitled to vote generally in the election of directors; and (iii) individuals who were members of the Incumbent Board will constitute at least a majority of the members of the board of directors of the corporation resulting from such Corporate Transaction; or

(d)    The consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

For purposes of this Section 7.2, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

Section VIII
Miscellaneous

8.1    Withholding.  All benefits payable under this Plan will be reduced by any amounts that are required to be withheld on account of income or payroll tax withholding or other reasons.

8.2    Rights Under the Plan.  This Plan is an unfunded deferred compensation plan. Title to and beneficial ownership of all benefits described in the Plan shall at all times remain with the Company. Participation in the Plan and the right to receive payments under the Plan shall not give a Participant or Beneficiary any proprietary interest in the Company or any of its assets. Benefits under the Plan shall be payable from the general assets of the Company. No trust fund may be created in connection with the Plan (other than a trust that, under applicable law, does not affect the characterization of this Plan as an unfunded plan), and there shall be no required funding of amounts that may become payable under the Plan. A Participant and his Beneficiary shall, for all purposes, be general creditors of the Company. The interest of a Participant and his Beneficiary in the Plan cannot be assigned, anticipated, sold, encumbered or pledged and shall not be subject to the claims of their creditors.

8.3    Effect on Employment.  The Plan will not affect the right of the Company or an Affiliated Company to terminate an employee's employment at any time. Benefits payable under the Plan will not be considered compensation for purposes of other retirement or benefit plans maintained by the Company or an Affiliated Company.

8.4    Successors; Governing Law.  The Plan is binding on the Company and its successors and assigns and on Participants and their Beneficiaries, successors, estates, and distributees. The Plan will be administered according to the laws of the Commonwealth of Virginia.

WITNESS the following signature as of December 22, 2005

CIRCUIT CITY STORES, INC.

By_____

## APPENDIX A

### Sustained Participants

The following Participants are Sustained Participants for purposes of Plan Sections 1.3 and 3.2.

| Name | Employee/Social Security Number |
|---|---|
| Dennis Bowman | 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 |
| George D. Clark | 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 |
| Victor Engessor | 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 |
| Edward Fishburne | 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 |
| John W. Froman | 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 |
| Eric A. Jonas, Jr. | 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 |
| Michael L. Jones | 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 |
| Laurie Lambert-Gaffney | 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 |
| William E. McCorey, Jr. | 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 |
| Douglas T. Moore | 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 |
| Mark E. Oliver | 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 |
| David M. Urquidi | 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 |
| Robert T. Walker | 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 |

EX-10.25 2 dex1025.htm AMENDMENT

**Exhibit 10.25**

**AMENDMENT TO THE
CIRCUIT CITY STORES, INC. BENEFIT RESTORATION PLAN**

The Circuit City Stores, Inc. Benefit Restoration Plan is hereby amended as follows, effective as of February 29, 2008:

**FIRST,** Section 3.2, "Supplemental Benefit," is amended by adding the following new paragraph at the end thereof:

Notwithstanding any provisions of this Plan to the contrary, except as provided in Section 3.5 with respect to imputed Benefit Service, neither Participants nor Sustained Participants shall be credited with any Benefit Service for periods of employment with the Company or Affiliated Company occurring after February 29, 2008.

**SECOND,** Section 3.4(b), "Maximum Benefit," is amended by adding the following new sentence at the end thereof:

Effective February 29, 2008, no further adjustments shall be made to the Maximum Benefit under this Section 3.4(b) on and after March 1, 2008.