Gregg M. Galardi, Esq.                Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.               Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &        MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

             – and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - x
In re:                            :    Chapter 11
                                  :
CIRCUIT CITY STORES, INC.,        :    Case No. 08-35653 (KRH)
et al.,                           :
                                  :
            Debtors.              :    Jointly Administered
- - - - - - - - - - - - - - - - x

**ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF AN ORDER
IMPLEMENTING A PROCEDURAL PROTOCOL FOR THE ADMINISTRATION
OF CROSS-BORDER INSOLVENCY PROCEEDINGS**

Upon consideration of the motion (the "Motion")[1]

of the U.S. Debtors for entry of an order (the "Order")

approving and implementing a procedural protocol to

facilitate a coordinated administration of the Insolvency

---

[1]   All capitalized terms not otherwise defined herein shall have the
meaning set forth in the Motion.

Proceedings with respect to the Equity Distribution in the United States and Canada (the "Protocol"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.   The Motion is GRANTED.

2.   The Protocol annexed as Exhibit A hereto is

approved in all respects.

3.   The U.S. Debtors are authorized to take

all actions necessary to effectuate the relief granted

pursuant to this Order in accordance with the Motion.

4.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

5.   The Court retains jurisdiction with
respect to all matters arising from or related to the
interpretation or implementation of this Order.

Dated: _____ , 2010
     May 6 2010
    Richmond, Virginia

                  /s/ Kevin R. Huennekens
                  HONORABLE KEVIN R. HUENNEKENS
                  UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:
                  Entered on docket:  May 7 2010

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    – and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606-1720
(312) 407-0700

    – and –


 /s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

_/s/ Douglas M. Foley_
Douglas M. Foley

## EXHIBIT A

**The Protocol**

## CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol ("**Protocol**") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as defined below) with respect to the Equity Distribution (as defined below). The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "**Guidelines**") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol.   Where there is any discrepancy between this Protocol and the Guidelines, this Protocol shall prevail.

### A.     Background

1.     InterTAN Canada, Ltd. and Tourmalet Corporation (collectively, the "**Canadian Debtors**") have applied for protection from their creditors in Canada pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") (the cases commenced under the CCAA by the Canadian Debtors, the "**Canadian Proceedings**") in the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") in Court File No. 08-CL7841.  The Honourable Justice Morawetz presides over the Canadian Proceedings

2.     The Canadian Court has issued an "initial order" (the "**CCAA Initial Order**" as subsequently amended and extended) pursuant to which it, *inter alia*, granted the application of the Canadian Debtors for protection under the CCAA, imposed a stay of all proceedings against the Canadian Debtors and their property in Canada, created certain liens, appointed Alvarez & Marsal Canada ULC as the monitor (the "Monitor") in the Canadian Proceedings, and set forth certain other limitations and procedures for all parties in interest in the Canadian Proceedings. The Canadian Debtors have completed a court-approved sale of substantially all of their assets and businesses and, with the assistance of the Monitor, are in the process of concluding a claims

- 2 -

process and paying their creditors in full together with five percent interest from the date of their claims.

3.      Circuit City Stores Inc. ("**CCSI**") together with InterTAN Inc., the parent company of certain Canadian Debtors, and certain of their subsidiaries and affiliates[1] (collectively, the "**U.S. Debtors**") have commenced reorganization cases (collectively, the "**U.S. Proceedings**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**U.S. Court**"), and such cases have been consolidated for procedural purposes only under Case No.08-35653. The Honourable Judge Huennekens presides over the U.S. Proceedings.  The U.S. Debtors have all ceased to operate and their assets are in the process of being realized upon.

4.      None of the U.S. Debtors or Canadian Debtors are parties to or applicants in both the U.S. Proceedings and the Canadian Proceedings.

5.      For convenience, (a) the U.S. Debtors and the Canadian Debtors shall collectively be referred to herein as the "**Debtors**", (b) the U.S. Proceedings and the Canadian Proceedings shall collectively be referred to herein as the "**Insolvency Proceedings**", (c) the U.S. Court and the Canadian Court shall collectively be referred to herein as the "**Courts**", (d) the official committee of unsecured creditors appointed in the U.S. Proceedings shall be referred to herein as the "**Committee**", (e) any estate representative appointed in the U.S. Proceedings, including the Committee and any examiner or trustee appointed pursuant to section 1104 of the Bankruptcy

---

[1] Namely Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Stores PR, LLC, Circuit City Properties, LLC, Irbyx Electronics, LLC, Kinzer Technology, LLC, Courchevel, LLC, Abbott Advertising Agency, Inc., Mayland MN, LLC, Patapsco Designs, Inc., Sky Venture Corp., XSStuff, LLC and PRAHS, INC.

- 3 -

Code, shall collectively be referred to herein as the "**U.S. Representatives**", (f) the Monitor and its respective officers, directors, employees, counsel and agents, wherever located shall be collectively referred to herein as the "**Monitor Parties**", (g) the Monitor Parties and any other estate representatives appointed in the Canadian Proceedings shall collectively be referred to herein as the "**Canadian Representatives**", and (h) the U.S. Representatives and the Canadian Representatives shall collectively be referred to herein as the "**Representatives**".

## B.    Purpose and Goals

6.    While the Insolvency Proceedings are nearing a conclusion in both the United States and Canada, the implementation of basic administrative procedures is necessary to coordinate certain activities therein to effectuate an orderly and efficient distribution of surplus proceeds from the Canadian Debtors to their shareholders (the "**Equity Distribution**"), and to best maintain the Courts' respective independent jurisdiction and to give effect to the doctrine of comity.  This Protocol is intended to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

(a)    harmonize and coordinate activities between the Courts in the Insolvency Proceedings with respect to the Equity Distribution;

(b)    promote and facilitate an orderly and efficient Equity Distribution in the Insolvency Proceedings and to avoid the duplication of efforts, for the benefit of all of the Debtors' creditors, their estates, and other interested parties, wherever located;

(c)    honour the respective independence and integrity of the Courts and all other courts and tribunals of the United States and Canada; and

- 4 -

(d)    promote international cooperation and respect for comity among the Courts, the Debtors, the Representatives, and all creditors and other interested parties in the Insolvency Proceedings.

## C.    Comity and Independence of the Courts

7.    The approval and implementation of this Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively.    By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors, the Representatives, nor any creditor of the Debtors or other interested party in the Insolvency Proceedings, shall be deemed to have approved or engaged in any infringement on the sovereignty of either the United States or Canada.

8.    The U.S. Court shall have sole and exclusive jurisdiction and power over all aspects of the U.S. Proceedings.  The Canadian Court shall have sole and exclusive jurisdiction and power over all aspects of the Canadian Proceedings.  In accordance with the principles of comity and judicial independence, nothing contained herein shall be construed to:

(a)    increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the U.S. Court, the Canadian Court, or any other court or tribunal in the United States or Canada, including, but not limited to, the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

(b)    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

(c)    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

- 5 -

(d)     require the Debtors or the Representatives to take any action or refrain from taking any action that would result in a breach of any duty imposed on such parties by any applicable law;

(e)     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and hearing (except to the extent that such action is specifically described in this Protocol); or

(f)     preclude the Debtors, the Representatives, the Office of the United States Trustee (the "**U.S. Trustee**"), any creditor, or any other party-in-interest from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other jurisdiction including, without limitation, the rights of interested parties or affected persons to appeal from the decisions taken by one or both of the Courts.

9.     The Debtors, the Representatives, and their respective employees, members, agents, and professionals shall respect and comply with the independent, non-delegable duties imposed upon them by the Bankruptcy Code, the CCAA, and other applicable laws.

**D.     <u>Cooperation</u>**

10.     To assist in the efficient and orderly administration of the Equity Distribution, the Debtors shall, where appropriate, (i) cooperate with each other in connection with any actions they may take in the U.S. Court and the Canadian Court with a view to implementing the Equity Distribution, and (ii) take any other appropriate steps to coordinate the Equity Distribution within the Insolvency Proceedings for the benefit of the Debtors' respective estates and stakeholders.

- 6 -

11.    To harmonize and coordinate the Equity Distribution, the U.S. Court and the Canadian Court may each coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.  In addition:

(a)    the U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural or substantive matter relating to the steps required to implement the Equity Distribution;

(b)    if the issue of the proper jurisdiction or Court to determine an issue is raised by any interested party in either the Canadian Proceedings or the U.S. Proceedings with respect to a motion or application that has been filed in either Court in furtherance of the Equity Distribution, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which to determine the issue of jurisdiction; and

(c)    the Courts may, but are not required to, conduct a joint hearing (the "**Joint Hearing**") with respect to the steps or transactions required to implement the Equity Distribution.  With respect to any such Joint Hearing, unless otherwise ordered by both Courts, the following procedures will be followed:

(i)    a telephone or video link shall be established so that each Court will be able to simultaneously hear the proceedings in the other Court;

(ii)    submissions, motions, or applications (collectively, the "**Pleadings**") by any party that are or become the subject of the Joint Hearing shall be initially filed only with the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any Joint Hearing, the party submitting such Pleading to one Court shall file courtesy copies with the other Court.  In any event, Pleadings seeking relief from both Courts shall be filed with both Courts;

(iii)    any party intending to rely on written evidentiary materials (collectively, the "**Evidentiary Materials**") in support of a submission to either Court

- 7 -

in connection with any Joint Hearing shall submit such Evidentiary Materials in identical form to each Court.  To the fullest extent possible, the Evidentiary Materials filed in each Court shall be consistent with the procedural and evidentiary rules and requirements of each Court;

(iv)    if a party has not previously appeared in or attorned to the jurisdiction of either Court, it shall be entitled to submit Pleadings or Evidentiary Materials in connection with the Joint Hearing without, by the act of such filing alone, being deemed to have attorned to the jurisdiction of such Court, so long as such party does not request any affirmative relief from such Court;

(v)    the Judge of the U.S. Court and Justice of the Canadian Court who will hear the Joint Hearing may communicate with each other in advance of such Joint Hearing, with or without counsel being present, to: (1) establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and any other papers, and for the rendering of decisions; and (2) address any related procedural, administrative or preliminary matters; and

(vi)    the Judge of the U.S. Court and Justice of the Canadian Court who will hear the Joint Hearing may communicate with each other after such Joint Hearing, with or without counsel being present, for the purposes of: (1) determining whether consistent rulings can be made by both Courts; (2) coordinating the terms of the Courts' respective rulings; and (3) addressing any related procedural or administrative matters.

12.    Notwithstanding the terms of paragraphs 10 and 11 above, this Protocol recognizes that the U.S. Court and Canadian Court are independent courts.  Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith to the greatest extent possible, either of the Courts may at any time exercise its independent jurisdiction and authority with respect to: (i) the matters presented to and properly before such Court and (ii) the conduct of the parties appearing in such matters.

- 8 -

13.    If one Court has jurisdiction over a matter the determination of which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence on such law or seek the written advice of the other Court, which written advice will be made available to all parties in interest.

**E.    Recognition of Stays of Proceedings**

14.    The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**").  In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding: (i) the interpretation and application of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay; and (ii) the enforcement of the U.S. Stay in Canada.

15.    The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the CCAA and the CCAA Initial Order (the "**Canadian Stay**").  In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding: (i) the interpretation and applicability of the Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay; and (ii) the enforcement of the Canadian Stay in the United States.

16.    Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or non-applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located.

- 9 -

**F.**    <u>**The Right to Appear and Be Heard**</u>

17.    The Debtors, their creditors, the Representatives, and other interested parties in the Insolvency Proceedings, including, without limitation, the U.S. Trustee and the professionals and advisors for each of the foregoing, shall have the right and standing: (i) to appear and to be heard in either the U.S. Court or Canadian Court in the U.S. Proceedings or Canadian Proceedings, respectively, to the same extent as creditors and other interested parties domiciled in the forum country, subject to any local rules or regulations generally applicable to all parties appearing in the forum; and (ii) to file notices of appearance or other papers with the clerk of the U.S. Court or the Canadian Court in respect of the U.S. Proceedings or Canadian Proceedings, respectively; provided, however, that any appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in which the appearance or filing occurs; provided further, that an appearance by the Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in Canada over the members of the Committee.  Notwithstanding the foregoing, and in accordance with the policies set forth above, including, *inter alia*, paragraph 11 above: (i) the Canadian Court shall have jurisdiction over the U.S. Representatives solely with respect to the particular matters as to which the U.S. Representatives appear before the Canadian Court; and (ii) the U.S. Court shall have jurisdiction over the Canadian Representatives solely with respect to the particular matters as to which the Canadian Representatives appear before the U.S. Court.

**G.**    <u>**Retention and Compensation of Representatives and Professionals**</u>

18.    The Canadian Representatives shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters including:  (i) such Canadian Representatives' tenure in office; (ii) the retention and compensation of such Canadian Representatives; (iii) such Canadian Representatives' liability, if any, to any person or entity, including the Canadian

- 10 -

Debtors and any third parties, in connection with the Insolvency Proceedings; and (iv) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law. The Canadian Representatives, their Canadian and U.S. counsel and any other professionals retained therefor shall not be required to seek approval of their retention, compensation or reimbursement of out-of-pocket expenses in the U.S. Court. Additionally, the Canadian Representatives, their counsel and such other Canadian professionals: (a) shall be compensated for their services solely in accordance with the CCAA, the CCAA Initial Order and other applicable laws of Canada or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S. Court.

19.     The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Initial Order. In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Initial Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the CCAA Initial Order by the Monitor Parties, except any such liability arising from actions of the Monitor Party constituting gross negligence or wilful misconduct.

20.     Any U.S. Representatives shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (i) such U.S. Representative's appointment and tenure in office; (ii) the compensation and reimbursement of out-of-pocket costs of such U.S. Representative: (iii) such U.S. Representative's liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and (iv) the hearing and determination of any other matters relating to the U.S. Representatives arising in

- 11 -

the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States. The U.S. Representatives, their counsel and any other professionals retained therefor shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives, their counsel and such other professionals: (i) shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (ii) shall not be required to seek approval of their compensation in the Canadian Court.

21.     Any Canadian professionals, including, without limitation, the Canadian counsel and financial advisors retained by the Debtors (collectively, the "**Canadian Professionals**"), shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals: (i) shall be subject to the procedures and standards for the retention, compensation and reimbursement of out-of-pocket costs of professionals that are applicable in the Canadian Court under the CCAA, the CCAA Initial Order and any other applicable Canadian law or orders of the Canadian Court; and (ii) shall not be required to seek approval of their retention, compensation, or reimbursement of out-of-pocket costs in the U.S. Court.

22.     Any U.S. professionals, including, without limitation, counsel and financial advisors retained by the Debtors in the United States (collectively, the "**U.S. Professionals**") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the U.S. Professionals: (i) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court; and (ii) shall not be required to seek approval of their retention or compensation in the Canadian Court.

- 12 -

### H.    Notice Procedures

23.    Notice of any motion, application or other Pleading or paper filed in one or both of the Insolvency Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile, e-mail or other electronic forms of communication) to the following:  (i)(a)  in the U.S. Proceedings, to all parties-in-interest entitled to notice under the U.S. Court's Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative  Procedures (U.S. Court Docket No. 6208); and (b) in the Canadian Proceedings, to all creditors and other interested parties, including the Committee, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (ii) to the extent not otherwise entitled to receive notice under clause (i) of this paragraph 23, counsel to the Debtors, the U.S. Trustee, the Monitor, the Committee and such other parties as may be designated by either of the Courts from time to time. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors, the Canadian Debtors or the Monitor shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of all or any orders, decisions, opinions or similar papers issued by the other Court in the Insolvency Proceedings.  When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to herein.

- 13 -

## I.        Effectiveness; Modification

24.        This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

25.        This Protocol may not be supplemented, modified, terminated or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.   Notice of any legal proceedings to supplement, modify, terminate or replace this Protocol shall be given in accordance with paragraph 23 above.

## J.        Procedures for Resolving Disputes under this Protocol

26.        Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 23 above.   In rendering a determination in any such dispute, the Court to which the issue is addressed:  (i) shall consult with the other Court; and (ii) may, in its sole and exclusive discretion, either:  (a) render a binding decision after such consultation; (b) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (c) seek a Joint Hearing of both Courts in accordance with paragraph 23 above.   Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

27.        In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

- 14 -

(a)    the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

(b)    the Court issuing such advice or guidance shall provide it to the other Court in writing;

(c)    copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 23 above;

(d)    the Courts may jointly decide to invite the Debtors, the Committee, the Representatives, the U.S. Trustee and any other interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court; and

(e)    the provisions of this paragraph 27 shall not be construed to restrict the ability of either Court to confer with the other Court as provided in paragraph 23 above whenever it deems it appropriate to do so.

## K.    <u>Preservation of Rights</u>

28.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under this Protocol shall:  (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their respective estates, the Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law, including the Bankruptcy Code, the CCAA and the orders of the Courts; or (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

- 15 -

## SCHEDULE "A"


**(Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases)**


**[ATTACHED]**

\5831033

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001



The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org



The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency: Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE


All rights reserved

Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* were developed by The American Law Institute during and as part of its Transnational Insolvency Project and the use of the *Guidelines* in cross-border cases is specifically permitted and encouraged.

The text of the *Guidelines* is available in English and several other languages including Chinese, French, German, Italian, Japanese, Korean, Portuguese, Russian, Swedish, and Spanish on the website of the International Insolvency Institute at http://www.iiiglobal.org/international/guidelines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario  M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

ii

# Foreword by the Director of
# The American Law Institute

In May of 2000 The American Law Institute gave its final approval to the work of the ALI's Transnational Insolvency Project. This consisted of the four volumes eventually published, after a period of delay required by the need to take into account a newly enacted Mexican Bankruptcy Code, in 2003 under the title of *Transnational Insolvency: Cooperation Among the NAFTA Countries*. These volumes included both the first phase of the project, separate Statements of the bankruptcy laws of Canada, Mexico, and the United States, and the project's culminating phase, a volume comprising *Principles of Cooperation Among the NAFTA Countries*. All reflected the joint input of teams of Reporters and Advisers from each of the three NAFTA countries and a fully transnational perspective. Published by Juris Publishing, Inc., they can be ordered on the ALI website (www.ali.org).

A byproduct of our work on the Principles volume, these *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* appeared originally as Appendix B of that volume and were approved by the ALI in 2000 along with the rest of the volume. But the *Guidelines* have played a vital and influential role apart from the *Principles*, having been widely translated and distributed, cited and applied by courts, and independently approved by both the International Insolvency Institute and the Insolvency Institute of Canada. Although they were initially developed in the context of a project arrived at improving cooperation among bankruptcy courts within the NAFTA countries, their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests a pertinence and applicability that extends far beyond the ambit of NAFTA. Indeed, there appears to be no reason to restrict the *Guidelines* to insolvency cases; they should prove useful whenever sensible and coherent standards for cooperation among courts involved in overlapping litigation are called for. See, e.g., American Law Institute, International Jurisdiction and Judgments Project § 12(e) (Tentative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to the International Insolvency Institute for its continuing efforts to publicize the *Guidelines* and to make them more widely known to judges and lawyers around the world; to III Chair E. Bruce Leonard of Toronto, who as Canadian Co-Reporter for the Transnational Insolvency Project was the principal drafter of the Guidelines in English and has been primarily responsible for arranging and overseeing their translation into the various other languages in which they now appear; and to the translators themselves, whose work will make the *Guidelines* much more universally accessible. We hope that this greater availability, in these new English and bilingual editions, will help to foster better communication, and thus better understanding, among the diverse courts and legal systems throughout our increasingly globalized world.

LANCE LIEBMAN
*Director*
*The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*. The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

vi

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

E. BRUCE LEONARD
*Chairman*
*The International Insolvency Institute*

Toronto, Ontario
March 2004

## Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country. The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997. The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada. The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world. We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts. The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts. The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation. The *Guidelines*, however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country. Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

<table>
<tr>
<td align="center">Mr. Justice David Baragwanath<br>High Court of New Zealand<br>Auckland, New Zealand</td>
<td align="center">Chief Justice Donald I. Brenner<br>Supreme Court of British Columbia<br>Vancouver</td>
</tr>
<tr>
<td align="center">Hon. Sidney B. Brooks<br>United States Bankruptcy Court<br>District of Colorado<br>Denver</td>
<td align="center">Hon. Charles G. Case, II<br>United States Bankruptcy Court<br>District of Arizona<br>Phoenix</td>
</tr>
</table>

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
## Applicable to Court-to-Court Communications in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the
Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign
Court or from an authorized Representative of the foreign
Court or from a foreign Insolvency Administrator and should
respond directly if the communication is from a foreign Court
(subject to Guideline 7 in the case of two-way communica-
tions) and may respond directly or through an authorized
Representative of the Court or through a duly authorized
Insolvency Administrator if the communication is from a for-
eign Insolvency Administrator, subject to local rules concern-
ing ex parte communications.

### Guideline 6

Communications from a Court to another Court may take
place by or through the Court:

(a) Sending or transmitting copies of formal orders,
judgments, opinions, reasons for decision, endorse-
ments, transcripts of proceedings, or other docu-
ments directly to the other Court and providing ad-
vance notice to counsel for affected parties in such
manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency
Administrator to transmit or deliver copies of docu-
ments, pleadings, affidavits, factums, briefs, or other
documents that are filed or to be filed with the Court
to the other Court in such fashion as may be appropri-
ate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c) Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d)  The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a)  Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)  The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c)  Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c)   Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)   Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)   Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

### Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

### Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

### Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11

# CERTIFICATE OF NOTICE

```
District/off: 0422-7        User: frenchs          Page 1 of 1            Date Rcvd: May 07, 2010
Case: 08-35653             Form ID: pdforder       Total Noticed: 1

The following entities were noticed by first class mail on May 09, 2010.
aty         +Gregg M. Galardi,   Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636

The following entities were noticed by electronic transmission.
NONE.                                                                     TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                     TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: May 09, 2010**          **Signature:**   *Joseph Speetjens*