Kevin A. Lake, Esquire (VSB# 34286)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
P.O. Box 1558
Richmond, VA 23218-1558
Tel: 804.237.8811
Fax: 804.237.8801
klake@vanblk.com

McCREARY, VESELKA, BRAGG & ALLEN, P.C.
Michael Reed, Esquire
P. O. Box 1269
Round Rock, Texas 78680
(512) 323-3200
mreed@mvbalaw.com

Attorneys for Texas Tax Claimants

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN THE MATTER OF:                                           CASE NO. 08-35653

CIRCUIT CITY STORES, INC.

  DEBTOR                                                    CHAPTER 11

**RESPONSE TO DEBTORS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
THIRTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (REDUCTION
OF CERTAIN PERSONAL PROPERTY TAX CLAIMS)**

TO THE HONORABLE BANKRUPTCY JUDGE:

NOW COME Tax Appraisal District of Bell County (Cl# 13398)("Bell County"), County of Brazos, City of College Station, College Station Independent School District (Cl# 4553)("Brazos County"), County of Comal, City of New Braunfels, Comal Independent School District (Cl# 4551)("Comal County"), County of Denton (Cl# 4554), City of Waco, Waco Independent School District (Cl# 4558)("Waco City and ISD"), Longview Independent School District (Cl#

1

13198), City of Midland, Midland County Hospital District, Midland Independent School District (Cl# 4557)(Midland CAD"), County of Taylor, City of Abilene, Abilene Independent School District (Cl# 4550)("Taylor CAD"), County of Williamson (Cl# 13199)("Williamson County"), hereinafter referred to collectively as "Texas Tax Claimants", and file their Response to the Debtors' Motion for Partial Summary Judgment on the Thirty-Seventh Omnibus Objection to Claims (Reduction of Certain Personal Property Tax Claims), as follows:

I.

PROCEEDURAL BACKGROUND

These Texas Tax Claimants hold secured ad valorem tax claims for the 2009 tax year. Under the laws of the State of Texas, personal liability arose, and a statutory lien attached to the Debtors' property for these taxes on January 1, 2009. Texas Property Tax Code §§ 32.07, 32.01 *et seq* (Vernon, 1992). Thus these taxes are Administrative Expenses of the estate under 11 USC § 503.

Payment of these taxes was to have been made by January 31, 2010, for them to have been timely paid. They were not so paid and became delinquent on February 1, 2010, at which time penalties and interest began to accrue as provided under Texas Property Tax Code § 33.01.

The Debtors have failed to pay these taxes as required by 28 USC § 960(b):

> A tax under subsection (a) shall be paid on or before the due date of the tax under applicable non-bankruptcy law unless (1) the tax is a property tax secured by a lien against property that is abandoned…or (2) payment of the tax is excused under a specific provision of Title 11.
> - 28 USC § 960(b)

And not only is there no provision in Title 11 excusing the payment of post-petition taxes, but the failure to do so constitutes cause for conversion or dismissal of the Chapter 11 case under 11 USC § 1112(b)(4)(I).

These claims for taxes for the 2009 tax year were included in the Debtors' 37th Omnibus Objection to Claims, to which these Texas Tax Claimants timely responded.

II.

SUMMARY OF THE ARGUMENTS

The Debtors have raised two specific issues in their Summary Judgment Motion – 1) discretionary abstention, and 2) whether or not the Debtors' challenge to taxable value is barred by 11 USC § 505(a)(2)(C). First, the Debtors' analysis of the relevant factors weighing on the Court's decision whether or not to abstain from hearing these objections is erroneous, and the Court should choose to abstain from hearing the challenges to these taxes. And second, inasmuch as the taxes in question are post-petition, the extension of time provided in 11 USC § 108 is inapplicable, and does not in any manner affect the operation of 11 USC § 505(a)(2)(C). Furthermore, as to one of these Texas Tax Claimants, Brazos County, the Debtors failed to respond to the notification of the value placed on the Debtors' property in a timely manner, and therefore lost their right to challenge those values under the clear terms of 11 USC § 505(a)(2)(C).

III.

DISCRETIONARY ABSTENTION

Initially, the Debtors argue at length that discretionary abstention should only be exercised under the most extreme circumstances, when the relevant statute itself, 11 USC § 505(a) states that the Court "*may* determine the amount or legality of any tax…" The authority to

3

determine or re-determine taxes is purely discretionary in the statute granting that authority. Section 505 permits the Court to determine taxes, but does not require it to do so.

Furthermore, § 1334(c)(1) of the Judicial Code states that

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> - 28 USC § 1334(c)(1)

And while the Debtors make much of the language in *Metromedia Fiber Networks, Inc.*, 299 B.R. 251 (Bktcy.S.D.N.Y. 2003), noting the importance of Federal courts exercising the jurisdiction they are granted, they failed to acknowledge that the *Metromedia* court did choose to abstain, in a case remarkably similar to the Circuit City case, specifically as to multiple Texas ad valorem tax jurisdictions. In *Metromedia*, the Court was asked to re-determine the taxable value of largely personal property located in several different Texas counties, as well as in local tax jurisdictions from other states, each of which had its own tax value determination methodology.

### A.    Uniformity of Assessment

In *Metromedia*, the Court found that the uniformity of assessment required by Texas law, the requirement that each taxpayer's property be valued and taxed in the same manner as all other similarly situated taxpayers, made it virtually impossible for a Bankruptcy Court to appropriately undertake the task. Thus the *Metromedia* court concluded that "abstention is appropriate where uniformity of assessment is of significant importance". *Metromedia Fiber Networks, Inc.,* 299 B.R. 251, 282 - 284.

The Texas Constitution requires ad valorem taxation to be uniform and equal. Tex. Const. Art. VIII, § 1(a). The Texas Constitution's requirement of equality and uniformity in taxation has been held to apply only within the boundaries of the same taxing authority.

4

Taxation is "equal and uniform" when no person or class of persons in the territory taxed is taxed at a higher rate than are other persons in the same district upon the same value or thing, and when the objects of taxation are the same by whomsoever owned or whatever they be. *Norris v. City of Waco*, 57 Tex. 635 (1882); *Weatherly Independent School Dist. v. Hughes*, 41 S.W.2d 445, 447 (Tex.Civ.App. – Amarillo 1931, no writ); *City of Arlington v. Cannon*, 263 S.W.2d 299, 304-05 (Tex.Civ.App. – Fort Worth 1953, aff'd in part, rev'd in part 271 S.W.2d 414).

This concept has also been included by the Texas legislature in the Texas Property Tax Code. The Tax Code requires courts to remedy unequal appraisal when, "the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties *in the appraisal district*" or when, "the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties *in the appraisal district* consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as the property the subject to the appeal." Texas Property Tax Code § 42.26(a)(1) & (2)(emphasis added).

Thus, the magnitude and complexity of trying a Texas property tax challenge in light of the requirement of uniformity of taxation weighed heavily in the *Metromedia* court's decision to abstain. *Metromedia Fiber Networks, Inc.,* 299 B.R. 251, 284.

        B.      <u>Inapplicability of Liquidation Proceeds for Valuation of Property</u>

Although the Debtors have not yet made clearly known their theory for revaluation of the subject property, or provided any specific information as to why they assert that their tax values have been set too high, one approach that they could suggest would be entirely irrelevant under Texas law, and that is any argument asserting that the values are too high because the Debtors

sold their property in a liquidation process and therefore received less for that property than it was assessed for.

Under Texas law, property must be assessed at "Market value". "Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

>(A) Exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
>
>(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and
>
>(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.
>
>Texas Property Tax Code § 1.04(7); c*f Bailey County Appraisal Dist. v. Smallwood* 848 S.W.2d 822, 824 (Tex.App.-Amarillo 1993, no writ).

Texas Property Tax Code § 23.01 states that in determining market value for the purpose of tax appraisals, the "market value of property shall be determined by the application of generally accepted appraisal techniques, and the same or similar appraisal techniques shall be used in appraising the same or similar kinds of property." Texas Property Tax Code § 23.01.

Moreover, it is established that liquidation, distressed or forced sales are not competent evidence of market value. See *Technical Solutions. Inc. v. State of Texas,* 2001 WL 695527 (Tex.App. - El Paso 2001, no pet.) (not designated for publication) at * 1 ("comparable sales No. 3 and No. 4 were distress sales figures, which by definition were not market sales figures."); *SPT Federal Credit Union v. Big H Auto Auction, Inc.,* 761 S.W.2d 800, 801-02 (Tex.App. - Houston [1st Dist.] 1988, no writ), quoting *Price v. Gulf Atl. Life Ins. Co.,* 621 S.W.2d 185, 187

(Tex.Civ.App.. - Texarkana 1981, writ ref'd n.r.e.) ("evidence of what property sold for in foreclosure at an auction sale is not competent evidence of its fair market value, since the transaction is not a free one between a willing seller and a willing buyer."); *Wendlandt v. Wendlandt,* 596 S.W.2d 323, 325 (Tex.Civ.App. - Houston [1st Dist.] 1980, no writ) (The "appraisals were based, in part, upon prices that would be brought at a forced or distressed sale which is not a relevant criterion in determining either fair market value or actual value to the owner."); *Bradfield v. State of Texas,* 524 S.W.2d 438, 440 (Tex.Civ.App. - Austin 1975, writ ref'd n.r.e.) ("The sale of the property in question was not free and open and the testimony regarding that sale should not have been admitted into evidence. To do so was reversible error."); *Southwest Bank & Trust Co. v. Executive Sportsman Assoc.,* 477 S.W.2d 920, 926 (Tex.Civ.App. - Dallas 1972, writ ref'd n.r.e.) ("Moreover, since a sheriff's sale is not a free transaction between a willing seller and a willing buyer, the price received at such sale is not competent evidence of market value.").

Therefore any argument that the Debtors could easily determine new values for their property because the liquidation values of their property are known would be entirely irrelevant.

### C. Factors to be Considered Towards Discretionary Abstention

The Debtors referenced a widely recognized six factor test that is frequently used to consider discretionary abstention. *In re ANC Rental Corp.,* 316 B.R. 153 (Bktcy.D.Del. 2004). While numerous cases utilize this test, *ANC Rental* is instructive because in it Judge Walrath was considering abstention in the case of Texas ad valorem tax jurisdictions with facts very similar to the situation in Circuit City, and concluded that discretionary abstention was appropriate.

The factors to be considered are as follows:

1) <u>Complexity of the Issues</u>

Although the Debtors assert that these tax revaluations are simple issues, they are not. The Debtors are asking the Court to revaluate substantial personal property of ninety-six respondents in fourteen different states, each under the laws of their own state. While this Court certainly has the capability and experience to do so, it is unlikely that it constitutes the best use of the Court's time to undertake such a task.

Furthermore, the complexity of evaluating such property under the local standards necessary to retain the appropriate uniformity of taxation required by Texas law would be an enormous project in its own right. These proceedings are extremely fact intensive, and courts have concluded that it is appropriate to abstain where the issues are fact intensive. *In re Beisel*, 195 B.R. 378, 380 (Bankr.S.D.Ohio 1996); *ANC Rental* 316 B.R. 153, 159.

This factor weighs in favor of abstention.

2) <u>The Need to Administer the Bankruptcy Case in an Orderly and Efficient Manner</u>

With the tremendous number of issues before this Court, in this case as in others, efficient administration of the estate would not be helped by adding this many complex evidentiary hearings to the Court's agenda. Considering the relatively small amount of money at stake, in light of the size of this estate, the pendency of these issues before State courts could not be an impediment to confirmation or to the distribution of significant funds to other creditors. The Debtors can simply hold in reserve the amounts necessary to satisfy these claims once resolved.

This factor weighs for abstention.

3) and 4) <u>The Added Burden on the Court's Docket and Length of Time That Would Be Required for a Trial and Decision</u>

Considering the fact intensive nature of the issues surrounding these matters under Texas law, the Debtors are asking the Court to accept far more than an "incremental" additional burden on the Court's docket. The Court would need to hear evidence not only on the Debtors' assets, but on the proper methods of valuing such assets as practiced in each jurisdiction. *ANC Rental* 316 B.R. 153, 159. Because of the large quantities of information and data presented in these disputes, the trial of one such case in State court in Texas normally takes three to four days.

This factor weighs in favor of abstention.

5) The Asset and Liability Structure of the Debtor

While the Debtors assert that the simplicity of their asset structure, now mostly cash, argues in favor of this Court deciding not to abstain from hearing these tax challenges, that result is "simpler" neither for the Court nor for the various tax jurisdictions affected.

And while the assets of the Debtors are becoming centrally located in the form of cash, their liabilities are indeed far flung. The fact that they are no longer actively selling merchandise in various states does not alter the fact that much of the cash they now hold was generated while taking advantage of the opportunity to sell their wares within the boundaries and under the laws of numerous other states.

This factor weighs in favor of abstention.

6) Prejudice to the Debtors or to the Tax Jurisdictions

If this Court does not abstain, the prejudice to the Texas Tax Claimants would be great. These jurisdictions represent smaller Texas counties, whose limited resources would be severely strained by the necessity of defending their tax assessments in Virginia. As small

local governmental entities, their budgets are not designed anticipating legal actions carried on in, to them, far away parts of the country.

Furthermore, the burden on these local tax jurisdictions of sending appraisal and expert personnel to a distant forum to litigate these matters would strain both the financial and personnel resources of these small local governmental entities.

This factor also weighs in favor of abstention.

Finally, after concluding that each of the six factors weighed in favor of abstention, Judge Walrath, in *ANC Rental*, 316 B.R. 153, 159, again, pertaining to property taxed in Texas, concluded by returning to the uniformity of taxation issue under Texas law.

> Resolution of this dispute could affect the uniformity of assessment of property taxes imposed on other taxpayers who own rental property in Texas. This is a compelling reason to abstain.
>
> *In re ANC Rental Corp.,* 316 B.R. 153, 159

Her conclusion, then, was substantially based on the same issue that ultimately persuaded the *Metromedia* court to abstain from hearing the Texas ad valorem tax challenges in that case, uniformity of assessment.

Thus, for all of the above reasons, it is appropriate for this Court to abstain from hearing the objections to the claims of the Texas Tax Claimants, and to have them heard in the courts of the State of Texas.

IV.

BAR TO RELIEF UNDER 11 USC § 505(a)(2)(C)

As previously mentioned, the Debtors filed protests challenging the valuations placed on their property with the appropriate local authorities for each of the Texas Tax Claimants, except for Brazos County, Texas. In each of the jurisdictions where protests were filed, a hearing was

scheduled and the Debtors were notified of such hearing. Subsequent to each hearing an order was issued by the Appraisal Review Board, stating the value determined by that panel.

Upon issuance of that order, an appeal period began, during which period the 37th Omnibus Objection to Claims was filed by the Debtors.

However, as to Brazos County, no protest was filed, and a final Notice of Valuation was sent out on May 19. In that Notice, the Debtor was informed that it needed to file a protest, if any, no later than June 22, 2009. This deadline passed, and no protest was filed. Thus the valuation process, and any appeals to such process, ended, and the value was set for the 2009 tax year.

Under 11 USC § 505(a)(2)(C), the Bankruptcy Court may not determine the "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or re-determining that amount under any law (other than a bankruptcy law) has expired." 11 USC § 505(a)(2)(C).

Therefore, when the 37th Omnibus Objection to Claims was filed, on August 24, 2009, it was too late to sustain the challenge process for Brazos County, and the bar to challenge established by § 505(a)(2)(C) effectively precluded the Debtors' challenge to the taxable value, and therefore to the taxes assessed, by Brazos County.

A. <u>The Debtors' Position on 11 USC § 505(a)(2)(C)</u>

In the second issue of the Debtors' Summary Judgment Motion, regarding the meaning of 11 USC § 505(a)(2)(C), the Debtors have gone to extreme lengths to do away with the clear reading of this provision. Rather than recognizing the parenthetical "(other than a bankruptcy law)" as clarifying which law defines the point after which the Bankruptcy Court may no longer hear a challenge to taxes, the Debtors have tried to read the parenthetical as bringing 11 USC § 108 back into play rather than excluding it from consideration.

B. <u>Irrelevance of 11 USC § 108</u>

Most blatantly, 11 USC § 108 is erroneously asserted by the Debtors because that section is inapplicable to post-petition obligations such as these taxes for 2009.

Former 11 USCS § 29 applied to causes of action existing before bankruptcy but did not apply to suit on cause of action arising after bankruptcy in course of administration. *Stanolind Oil & Gas Co. v Logan,* 92 F2d 28 (CA5 (Tex) 1937), *cert den,* 302 US 763, 82 L Ed 592, 58 S Ct 409 (1937) and *cert den,* 303 US 636, 82 L Ed 1097, 58 S Ct 522 (1938).

And under the cases interpreting the current 11 USC § 108, that provision does not extend the prescription period for claims arising during period between filing of Chapter 11 petition and conversion of case to Chapter 7. *In re Phillip*, 948 F2d 985, (CA5 (La) 1991). Chapter 7 trustee's actions to recover minimum charges paid to utility company after closing of debtor's foundry, on grounds that charges should not be allowed as administrative expense under 11 USCS § 503 because debtor received no benefit from them, is not governed by statute of limitations under 11 USCS § 108(a) because action arose post-petition and could not have been filed prior to bankruptcy. *In re Central Foundry Co.,* 62 BR 52 (Bktcy. N.D. Ala 1985). 11 USCS § 108(a) does not extend time within which trustee or debtor in possession may commence suit alleging that certain parties were recipients of bulk sale, notice of which was not recorded as required by California law, because claim arose post-petition and § 108(a) does not apply to post-petition claims. *In re Northern Specialty Sales, Inc*., 57 B.R. 557 (DC Oregon 1986). 11 USC § 108(a) has no application to post-petition claims. *In re United Trucking, Inc.*, 91 B.R. 30 (Bktcy.E.D. Mich. 1988). 11 USC § 108 did not apply to extend creditor's time to file request for deficiency motion after post-petition foreclosure beyond 90-day time frame set forth

12

in state law because § 108(c) only extends such periods which exist prepetition, not post-petition. *In re Tyler*, 166 B.R. 21 (Bktcy.W.D. N.Y. 1994).

  C. Irrelevance of Secondary Sources

Furthermore, in their effort to obscure the plain meaning of § 505(a)(2)(C), the Debtors have gone far afield seeking secondary sources to buttress their interpretation. That is incorrect. "It is a well-settled principle that 'unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language.'" *In re Sours*, 350 B.R. 261, 266 (Bktcy.E.D.Va. 2006) citing *In re Silvus,* 329 B.R. 193, 214 (Bktcy.E.D.Va. 2005) (quoting *Hillman v. Internal Revenue Serv.,* 263 F.3d 338, 342 (4th Cir. 2001).

By § 505(a)(2)(C), Congress intended to set separate time limitations for a specific type of action – challenges to property taxes. Prior to this amendment, the open-endedness of challenges to taxes, even previously paid taxes, was a tremendous threat to local governmental finances. Cash strapped debtors could, and did, assert that the values were incorrect for years gone by, and that tremendous refunds were due to them from cities, schools and counties. So when the Bankruptcy Code was amended, this provision was inserted to assure that taxes could only be challenged within the time frames allowed under applicable State law.

  D. Statutory Construction

In attempting to assert its erroneous interpretation of § 505(a)(2)(C), the Debtors violate two important tenets of statutory construction:

First, the Debtors argue for the continuing effect of the general extensions of time provided to debtors in 11 USC § 108(a). But in all statutory interpretation, the specific prevails over the general. It is "a well-settled maxim that specific statutory provisions prevail over more general

provisions." *In re Philadelphia Newspapers, LLC,* 599 F.3d 298 (C.A.3 (Pa.) 2010), citing *In re Combustion Eng'g,* 391 F.3d 190, 237 n. 49 (3d Cir. 2004).

Section 505 is a section focused on bankruptcy court determinations of taxes. Section 505(a)(2)(C) is a section addressing not just taxes, in contrast to other types of claims, but even more specifically ad valorem property taxes. Thus to the extent that Congress chose to put provisions in this section that affect the time limitations for challenges to property taxes, this section would clearly take precedence over the general provisions of § 108.

Second, the Debtors ignore the context of § 505(a)(2)(C). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *In re Sours*, 350 B.R. 261, 266 (Bktcy.E.D.Va. 2006) citing *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (citing *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984)).

In terms of context, each of the three items in sub-section (a)(2) of § 505 are limitations on the authority of the Bankruptcy Court in tax matters. Sub-section (a)(2)(A) bars the re-litigation of matters previously adjudicated, (a)(2)(B) bars determination of entitlement to a refund before other appropriate avenues of recovery have been exhausted, and (a)(2)(C) bars challenges to specifically ad valorem taxes if timely challenges, under State law, have not been pursued. To interpret the parenthetical as the Debtors suggest would make the section pointless.

Section 505(a)(2)(C) states that the court will not have the authority to consider challenges to ad valorem taxes under certain circumstances. The circumstances are defined in terms of a time limitation. That time limitation is described as being the expiration of the "applicable period for contesting or re-determining that amount under any law (other than a bankruptcy law)." The

14

parenthetical is there to clarify what law is to be considered in deciding if the Debtor's option of challenging certain taxes in bankruptcy court remains open.

E. Purpose of the Provision

This provision, correctly read, is extremely important to cities, counties and schools. These entities rarely have any reserve funds. By and large they exist from hand to mouth, rendering important public services on very limited revenues. So for a big debtor to be able to decide outside the ordinary course of business that it wants to challenge its taxes leaves no ability for these types of governmental entities to plan, to budget, or to reasonably adjust to the subsequently announced challenge.

In the circumstance at hand, the Debtors did not challenge the tax valuation of Brazos County, Texas, and the amount of value on which the anticipated tax revenue would be based would have been finalized shortly after June 22nd, 2009. By the time the 37th Omnibus Objection was filed on August 24th, 2009, the city, county and school district would have normally approved their budget for the upcoming year based on the value of property from which they would be drawing revenue. While the upheaval from a change of the magnitude of the Circuit City taxes in Brazos County, Texas, is significant, the problem grows exponentially when the debtor is an electrical generator plant in a small county, or a refinery, or a factory.

Thus the cry of these local governmental entities to Congress was loud, and Congress responded by saying, in effect "Okay, we'll set the time limits for property tax challenges in bankruptcy to be the same as they are for everyone else."

Therefore this provision is intended to require of debtors that they initiate challenges within the time limits established by non-bankruptcy law, and those that do so will be heard. Those who do not do so will not be able to raise such challenges subsequently. This is the circumstance in

which these Debtors find themselves regarding the tax valuation and taxes assessed in Brazos County, Texas.

It is essential then for this Court to recognize that § 505(a)(2)(C) establishes a bar to Debtors who do not challenge their taxes within the specified time period, that time period being defined as the time period during which they could do so under State law, other bankruptcy provisions notwithstanding.

V.

WHEREFORE, these Texas Tax Claimants request that this Court (1) exercise its discretion to abstain from hearing the Debtors' challenges to the claims of these Texas Tax Claimants, (2) determine that the bar to challenges under 11 USC § 505(a)(2)(C) is based on the time limitations established under non-bankruptcy law, and (3) further request other and such relief as is just and proper.

Dated this 13th day of May, 2010

Respectfully submitted,

**VANDEVENTER BLACK LLP**

/s/ Kevin A. Lake
Kevin A. Lake, Esquire (VSB# 34286)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
P.O. Box 1558
Richmond, VA 23218-1558
Tel: 804.237.8811
Fax: 804.237.8801
klake@vanblk.com

/s/ Michael Reed
Michael Reed, Esquire
State Bar Number 16685400
McCREARY, VESELKA, BRAGG & ALLEN, P.C.
P. O. Box 1269
Round Rock, Texas 78680

(512) 323-3200
mreed@mvbalaw.com

Attorneys for Texas Tax Claimants, Tax Appraisal District of Bell County, Brazos County, Comal County, Denton County, City of Waco and Waco Independent School District, Longview Independent School District, Midland CAD, Taylor County, Williamson County

## CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of May, 2010, I caused to be served a true and correct copy of Response to Debtors' Motion for Partial Summary Judgment on the Thirty-seventh Omnibus Objection to Claims (Reduction of Certain Personal Property Tax Claims) to all parties receiving notice via ECF and via ECF and/or email on the following:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
P.O. Box 636
Wilmington, Delaware 19899-0636

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, Illinois 60606-7120

Douglas M. Foley
Dion W. Hayes
McGuireWoods, LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
    Attorneys for Debtors

                                      /s/ Kevin A. Lake
                                      Kevin A. Lake