Kevin A. Lake, Esquire (VSB# 34286)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
P.O. Box 1558
Richmond, VA  23218-1558
Tel: 804.237.8811
Fax: 804.237.8801
klake@vanblk.com


LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
Elizabeth Weller
Tex. Bar No. 00785514
2323 Bryan St. #1600
Dallas, TX 75201
(469)221-5075 phone
(469)221-5002 fax
BethW@publicans.com email

Attorneys for Local Texas Tax Authorities

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF VIRGINIA
RICHMOND DIVISION


IN THE MATTER OF:                              CASE NO. 08-35653 (KRH)

CIRCUIT CITY STORES, INC.,                     Jointly Administered
    et al.,
              DEBTORS.                          CHAPTER 11


**LOCAL TEXAS TAX AUTHORITIES' RESPONSE TO DEBTORS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE THIRTY-SEVENTH
OMNIBUS OBJECTION TO CLAIMS
(REDUCTION OF CERTAIN PERSONAL PROPERTY TAX CLAIMS)
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**


TO THE HONORABLE COURT:

    NOW COME Bexar County, Cameron County, City of Cedar Hill, Dallas County, El Paso,

Frisco, Gregg County, Harlingen, Harlingen CISD, Irving ISD, Jefferson County, Longview

ISD, McAllen, McAllen ISD, McLennan County, Nueces County, Rockwall CAD, Rockwall

County, Round Rock ISD, South Texas College, South Texas ISD, Tarrant County,  Harris County, Cypress-Fairbanks ISD, Fort Bend County, and Montgomery County (hereinafter the "Local Texas Tax Authorities") and City of Memphis (together the  "Local Tax Authorities" or "Tax Authorities") and respond to the Debtors' Motion for Partial Summary Judgment on the Thirty-Seventh Omnibus Objection to Claims (herinafter "theMotion"), and in support thereof the Local Tax Authorities would show the Court as follows:

1. The Local Texas Tax Authorities are political subdivisions of the State of Texas. The City of Memphis is a political subdivison of the State of Tennessee. The Local Tax Authorities have unpaid administrative expenses for 2009 ad valorem taxes on business personal property owned by the Debtors.

2. As of January 1, 2009 these taxes accrued and were secured by first priority liens that are unavoidable.  With respect to the Texas taxes, see the Texas Constitution, Article VIII, Section 15, and the Texas Property Tax Code, §§ 32.01, 32.05(b), and 32.07.   See also Stanford v. Butler, 826 F.2d 353 (5th Cir. 1987); Universal Seismic Associates, Inc., 288 F.3d 205 (5th Cir. 2002); In Re Winn's Stores, Inc. 177 B.R. 253 (Bktcy W.D. Tex 1995).  With respect to the Memphis taxes, see Tenn. Code Ann. § 67-5-2101.  These taxes were all incurred on January 1, 2009, and are now delinquent pursuant to applicable non-bankruptcy law.

3.  In their Response to the Debtors' Objection, the Tax Authorities requested that the Court abstain from hearing the matter and further asserted that the Court did not have authority to grant the relief requested.  Debtors have filed this Motion asking the Court to determine whether abstention is proper and whether the relief sought in the Objection is barred by 11 U.S.C. § 505(a)(2)(C).

### I.  Court Should Abstain from Hearing this Matter or Granting Relief Requested

### A.  Uniformity of Assessment

4.    The Debtors contend that the Court should not abstain because certain factors do not weigh in favor of abstention.  The Tax Authorities will address the Debtors' arguments, but first ask the Court to consider an issue raised in their Response but not addressed by the Debtors, the issue of  the importance of uniformity of assessment, which alone can stand as a basis for a court to abstain from determining whether relief is appropriate under § 505.  Where the uniformity of local assessment is at issue, it is proper for bankrutpcy courts to exercise their right to abstain.  *In re New Haven Projects Ltd. Liability Co.,* 225 F.3d 283, 287-288 (2nd Cir. 2000); *In re Anc Rental Corp.*, 316 B.R. 153, 159 (Bankr. D. Del. 2004) (where resolution of the dispute could affect the uniformity of assessment of property taxes imposed on other taxpayers, there is a compelling reason to abstain);  *In re Metromedia Fiber Network, Inc.,* 299 B.R. 251, 281-83 (Bankr. S.D. N.Y. 2003).

5.    The issues presented by this case go far beyond mere determination of tax liability. While the Objection is somewhat vague as to its basis, the Debtors are essentially asking the Court to impose a single national standard for valuing property for local tax purposes with respect to their property.  Rather than use the valuation methodology applied by each of the taxing jurisdictions in the many states, the Debtors propose one standard based upon "representative models"  and alleged replacement costs. The properties in question were valued in a similar manner as all other property of the same or similar nature in each of the jurisdictions. By seeking to impose a national standard on only certain local jurisdictions in contravention of their established practices, the Debtors are  putting at issue the uniformity of assessment of taxes within each of the jurisdictions.   So long as all owners of similar property within each

jurisdiction was assessed using a similar method,  the Local Tax Authorities ask the Court to

abstain from redetermining these taxes in the interest of preserving the uniformity of local tax

assessment.

6.  If this property is valued using a different method than other similarly situated property,

it could create havoc and set precedent for valuing such property into the future.   When a

Bankruptcy Court redetermines taxes pursuant to 11 U.S.C. § 505, it must apply substantive

applicable non-bankruptcy law. *In re Fairchild Aircraft Corp*.,124 B.R. 488, 492-93 (Bankr.

W.D. Tex. 1991);  *Metromedia Fiber Network*, 299 B.R. at 270. The Texas Constitution provides

that "taxation shall be equal and uniform."  See Article VIII §1.(a).  If a conflict exists between

taxation at "market value" and equal and uniform taxation, equal and uniform taxation must

prevail.  *See Harris County Appraisal District v. United Investors Realty Trust*, 47 S.W. 3d 648

(Tex. Civ. App. – Houston [14th Dist] 2001).   The requirement to apply applicable State law

encompasses not only the law concerning the method of valuation but also the type of evidence

which may be considered.  *In re Cable & Wireless U.S.A., Inc*., 331 B.R. 568, 578-80 (Bankr. D.

Del. 2005); *In re Quality Beverage Co., Ind.*, 170 B.R. 310 (Bankr. S.D. Tex. 1994).

7.  With respect to several of the Tax Authorities, the Debtors are asking the Court to

impose a different tax valuation methodology to find a different taxable value for some

jurisdictions while not challenging the taxes for other jurisdictions on the same property, and

which taxes were determined using the same value and methodology.  For example, with respect

to the Cities of Frisco and Memphis, the Debtors have not challenged the valuation methodology,

tax value or taxes assessed with respect to Collin County or Shelby County on the same property.

What would the effect of the Court's ruling be on these other entities with respect to their taxes

on the same property?  Or the effect of a ruling that with respect to this type of store, a different

methodology is appropriate other than that employed with respect to similar properties in the same jurisdictions?  The total amount at issue between the Debtors and the Local Tax Authorities is approximately $500,000.  The funds to pay these taxes are being held in a segregated account which may not be used for any other purpose until the taxes are paid.  This amount is sufficiently small, given the assets and liabilities of these Debtors, that whether or not the Debtors prevail will not impact the success of this case.  Where the effect of the Court's ruling on the uniformity of local tax assessment will be great and there is no appreciable benefit to the progress of the case from having the issue determined, abstention is warranted.  *In re Paolo*, 104 A.F.T.R.2d (RIA) 5788,  2009 U.S.Dist. Lexis 69158, Case no. 08-482ML (D. RI  July 23, 2009) (abstention appropriate where no bankruptcy purpose served which would outweigh uniformity of assessment).    As this Court is bound to apply applicable State law, including the requirement that taxation be uniform, it should abstain where its ruling would lead to inequitable taxation.

### B.  Analysis of other Factors

8.  Courts have found that abstention with respect to a proceeding under § 505 is appropriate in other circumstances besides when uniformity of assessment is an issue. *In re Mantz,* 343 F.3d 1207, 1215 (9th Cir. 2003) (even where not barred by res judicata, bankruptcy court can consider some or all of the reasons underlying the res judicata doctrine when determining whether to abstain); *New Haven Projects,* 225 F.3d at 288 (abstention appropriate where general creditors will not benefit from tax redetermination).  *See also  In re Elantic Telecom, Inc.*, 2005 Bankr. Lexis 2822, Case No. 04-36897-DOT ( Bankr. E.D. Va. Dec.2, 2005)(bankruptcy court abstained in part because tax issue was a local issue better resolved by the state); *In re Gilliam*, 2008 Bankr. Lexis 4135, Case no. 96-76468-JW (Bankr. D. S.C. October 22, 2008) (weighing

multiple factors, where purposes of § 505 will not be furthered, abstention is proper); *In re Williams*, 190 B.R. 225 (Bankr. W.D. Pa. 1995)(bankruptcy court abstained where general creditors would not benefit from tax determination and debtor had engaged in forum shopping); and *In re Swan*, 152 B.R. 28 (Bankr. W.D. N.Y. 1992) (where debtor had hired professional tax accountants to assist her but they failed to file documents correctly and redetermination would not benefit creditors, bankruptcy court found abstention appropriate).

9.   There are six factors usually considered when determining whether to abstain in a proceeding seeking relief under 11 U.S.C. § 505(a).  Those factors are (1) the complexity of the issues to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the court's docket; (4) the length of time which would be required for trial and decision; (5) the asset and liability structure of the debtor; and (6) any prejudice to the debtor and potential prejudice to the taxing authorities. *New Haven Projects.,* 225 F.3d  at 289; *In re Williams,* 190 B.R. at  228 (citations omitted). Other factors which may be considered include (7) whether bankruptcy issues predominate;  (8) whether a bankruptcy purpose would be served; and (9) the legislative purpose of § 505. *In re Gilliam*, 2008 Bankr. Lexis 4135, Case no. 96-76468-JW (Bankr. D. S.C. October 22, 2008), citing *In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001); *In re Dees*, 369 B.R. 676, 677-78 (Bankr. N.D. Fla. 2007); and *In re Fyfe*, 186 B.R. 290-92 (Bankr. N.D. Ga. 1995). Each of these factors weighs in favor of the Tax Authorities.

10.   Factors (1), (3), (4) and (7) weigh strongly in favor of abstention.  The issues to be decided are fact intensive and involve solely issues of State law. No issues of bankruptcy law are involved. Each property in each jurisdiction must be looked at separately and different law applied to each. With respect to each jurisdiction, first the applicable legal standard for tax valuation and methodology to be employed must be determined, then facts presented as to each

account.  The Debtors assert the tax issues are not complex, but fail to mention the fact they are requesting the Court, at least with respect to the Local Tax Authorities, to employ a valuation method wholly different than that routinely applied in the jurisdictions.   With respect to most of the Local Tax Authorities, they are not the party with which returns were filed or which maintain valuation records, nor are they parties to the valuation appeals, etc so evidence on these matter must be sought from the various county appraisal districts in Texas and the Shelby County Assessor in Tennessee.[1] The actual property owned by the Debtors on the tax valuation date is not at issue, but how such factors as depreciation, obsolesence, loss due to theft, etc are to be factored in are issues of State law which must be addressed with respect to each account. Based upon documents received from the Debtors, they will ask the Court to throw out the depreciation schedules used in Texas with respect to fixed assets and ask the Court to value this property using a different method.   Extensive discovery and testimony from non-parties will be required.

11.  Factors (2), (5), (6) and (8) also weigh in favor of abstention.  The amounts in issue need not be determined in order for the bankruptcy case to proceed. The amount in question is not of a nature to impair the ability of the Debtors to confirm a plan. There is no prejudice to the Debtors from following applicable non-bankruptcy law. Debtors in bankruptcy are expected to follow applicable State and local laws in the operation of their business, including tax laws.  28 U.S.C. §§ 959 and 960.  There exists a state law procedure and forum for protesting the 2009 taxes, and indeed in many instances the Debtors have already availed themselves of these forums.  However each of the tax authorities is unduly burdened by being dragged across the country to litigate these local matters.  They are forced to hire local counsel and assume costs which are not within their budgets.  Given that the Debtors have been pursuing relief through the

---

[1] The need to involve parties not otherwise a part of the bankruptcy is also a factor which weighs in favor of abstention.

applicable nonbankruptcy tax protest proceedings, it is not a burden to ask them to continue to do

so, and no bankruptcy purpose would be served by the Court hearing this Motion.  *In re Luongo,*

259 F.3d 323 (5th Cir. 2001) (abstention is appropriate when no bankruptcy issue at hand and

objectives of bankruptcy code are not impaired); *In re American Motor Club, Inc.*, 139 B.R. 578,

581 (Bankr. E.D. N.Y. 1992);  *In re Millsaps,* 133 B.R. 547, 554-555 (Bankr. M.D. Fla. 1991),

aff'd. 138 B.R. 87 (M.D. Fla. 1991).

   12.   Factor (9) also weighs in favor of abstention.  The legislative purpose behind § 505,

would not be served by deciding these issues in bankruptcy court.  The purpose of § 505 is

twofold: (1) affording a forum for the ready determination of tax claims, which determination if

left to other proceedings, might delay conclusion of the administration fo the bankruptcy estate,

and (2) providing an opportunity for the trustee/debtor-in-possession to contest the validity and

amount of a tax claim when the financial exigencies which lead to the bankruptcy prevented the

debtor from doing so to the detriment of the creditors of the estate.  *In re Luongo,* 259 F.3d at

330.  "Section 505 was enacted to protect creditors from the prejudice caused by an ailing

debtor's failure to contest tax assessments . . . It was not enacted to afford debtors a second bite

at the apple at the expense of outside creditors."  *In re New Haven Projects Ltd. Liab.*, 225 F.3d

283, 290 (2nd Cir. 2000). Section 505 does not function as an alternative forum for tax litigation

when such litigation would have no impact upon the administration of bankruptcy case.  *In re

Kohl*, 397 B.R. 840, 845-46 (Bankr. N.D. Oh. 2008).   As previously discussed, the states

provide alternative forums for this matter, and there is no indication that these matters must be

resolved in order for the case to progress to confirmation.  Many courts consider general

unsecured creditors, not the debtor, the intended beneficiary of § 505.  *In re Williams*, 190 B.R.

225, 227 (Bankr. W.D. Pa. 1995); *In re El Tropicano, Inc.,* 125 B.R. 153, 161 (Bankr. W.D. Tex.

1991). See also *In re Kearns*, 219 B.R. 823, 827 (8th Cir. 1998).   Instead, the intended

beneficiaries of the aims served by § 505(a) are the general body of unsecured creditors - that is,

the estate - not the debtor.   *In re Kohl*, 397 B.R. at 845-46*; In re Williams,* 190 B.R. at 227.   In

this case, the beneficiaries of the Objection would not be general unsecured creditors, but

secured creditors.   To the extent the funds held   subject to the tax liens of the Local Tax

Authorities are not used to pay the tax claims, they would be paid to secured creditors and not

available for distribution to general unsecured creditors or other costs of administration.   In

pursuing this relief, the Debtors are expending estate funds to prosecute an action which

essentially will favor one secured creditor over another with no tangible benefit to the general

unsecured creditors.   Further, the Debtors in this case were not unable to protect their rights in

the State process – with respect to at least 16 of the 27 Local Tax Authorities, the Debtors hired

experts and contested the tax values through the State process. Thus this case is similar to that in

*In re Swan*, 152 B.R. 28 (Bankr. W.D. N.Y. 1992), where the court found abstention appropriate

where debtor hired professional tax accountants and creditors would not benefit.   Where hearing

these matters in bankruptcy court will not aid in prompt administration of the overall bankruptcy

case, and indeed may delay it as the significant time required to hear these matters would keep

the Court from determining other issues which may be relevant to confirmation, and the general

unsecured creditors will not benefit from the determination of these matters, abstention is proper.

13.   Other factors courts have considered when granting requests for abstention include the

likelihood the commencement of the proceeding in the bankruptcy court involved forum-

shopping and the presence in the proceeding of non-debtor parties. *In re Coho Energy, Inc.*, 309

B.R. 217, 221-222 (Bankr. N.D. Tex. 2004);  *In re Williams*, 190 B.R. at 225 (court abstained

where creditors would not benefit from tax determination and debtor had engaged in forum

shopping). The Tax Authorities will show that the Debtors filed numerous valuation appeals and filed this Objection only after losing at the administrative level on the majority of these proceedings.  The Debtors' decision to file this Objection rather than continue their appeals through the available state court process demonstrates that forum shopping is certainly present in this case. The non-Debtor parties which will be involved in these matters include not only the taxing jurisdictions named, but the various appraising entities which, for the most part, are not creditors of the estate but independent government agencies.

14.   Debtors allege that "the Property Tax Claims will need to be allowed or disallowed by this Court and paid under any confirmed plan."  It is not correct that amounts owed for post-petition property taxes need be allowed or disallowed by the Court and a plan confirmed before they can be paid.  11 U.S.C. § 503(b)(1)(D) specifies that "a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense."  Further, 28 U.S.C. § 960(b) requires that post-petition taxes be paid timely, and failure to do so is cause for dismissal of the bankruptcy case.  11 U.S.C. §1112(b)(4)(I). The Debtors "must do business post-petition on the same terms as solvent businesses, with no bankruptcy subsidy."  *In re Coliseum cartage Company, Inc.*, 975 F.2d 1022, 1027 (4th Cir 1992) (dissent by Judge Wilkinson), citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 106 S.Ct. 755 (1986). Debtors continuing to do business "must obey the criminal laws, 11 U.S.C. § 362(b)(1), pay taxes, 28 U.S.C. § 960, comply with regulations, 28 U.S.C. § 959 – and bring suits within the time periods specified by statutes of limitations." *Id*. At 1027. These statutes provide that these taxes can and should be paid in the ordinary course of business by the Debtors without a hearing or allowance by this court being necessary. See *In re Gifaldi*, 207 B.R. 54 (Bankr. W.D. N.Y.

1997) (Chapter 11 Debtors could pay post-petition taxes without court order; debtors obliged to pay taxes as they became due and owing).  Through filing this Objection only against local tax authorities which filed administrative expense claims or requests for payment in an attempt to provide the Debtors with information to aid in their payment of the taxes, the Debtors ask this Court to punish creditors who are attempting to cooperate and facilitate the bankruptcy process.

15.  Debtors incorrectly recite the facts of  *In re Metromedia Fiber Network, Inc.,  supra*. Many of the Local Tax Authorities had filed claims in that case and participated in the hearings on the § 505 and abstention issues.  None argued they were entitled to sovereign immunity. Thus this case is more similar to *Metromedia* than the Debtors admit.  The only fact that was significantly different is that in *Metromedia* the claims were for pre-petition taxes that must be filed and paid pursuant to a plan, whereas in this case the taxes at issue are for post-petition taxes which the Debtors were required to have paid timely and were able to pay without further court authorization either pursuant to 28 U.S.C. § 960 or the terms of the Order approving the going out of business sale which established a segregated account for the payment of the tax claims. Indeed, the pre-petition claims of the Local Tax Authorities are all paid in full.

## II.  Relief is Barred Pursuant to 11 U.S.C. §505(a)(2)(C)

16. The Local Tax Authorities would show the Court that with respect to all of their 2009 taxes, the period for contesting the taxes on the basis presented by the Debtors has expired under applicable nonbankruptcy law, thus precluding granting the relief requested in the Objection.  11 U.S.C. § 505(a)(2)(C).  The filing of a bankruptcy does not toll the limitations period for protesting taxes.  *In re Armstrong*, 206 F.3d 465, 472 (5th Cir. 2000).  A bankruptcy court lacks jurisdiction over a debtor's previously adjudicated tax claims.  See  *In re Cody, Inc.,* 338 F.3d 89

(2nd Cir. 2003).    An administrative order may constitute an adjudication for purposes of application of 11 U.S.C. § 505.    *In re Teal,* 16 F.3d 619 (5th Cir. 1994).    See also *In re El Tropicano*, 128 Bankr. 153, 158-160 (Bankr. W.D. Tex. 1991) (negotiated settlements with tax jurisdictions from which taxpayer did not appeal precluded redetermination of the tax in bakruptcy court.).

17.    Debtors argue that § 108 of the Bankruptcy Code somehow applies to extend the period for filing causes of action or protests of post-petition taxes.    However they cite no authority for the proposition that § 108 is applicable to causes of action that arise  wholly post-petition.    With respect to the 2009 taxes owed the Local Tax Authorities, the liability and liens for the taxes arose on January 1, 2009. *In re Midland Industrial Service Corporation*, 35 F. 3d 164 (5th Cir. 1994) (January 1 is the date on which the tax lien and liability arise and thus is the date used for determining whether a tax is a pre- or post-petition claim). Any challenge to these taxes could not have existed as a cause of action prior to the assessment date of January 1, 2009, and the causes of action set forth in Debtors' Objection arose wholly post-petition.

18.    "In examining § 108, courts have uniformly held that § 108(a) tolls only those claims which have arisen prior to the filing of the petition and **not** those which accrued after the filing of the petition." *In re Hanna Coal Company*, 94-2 U.S. Tax Cas. (CCH) P50, 603; 74 A.F.T.R.2d (RIA) 6996, 1994 U.S.Dist. Lexis 16399 (W.D. Va. 1994) (emphasis original), citing *In re Tyler*, 166 B.R. 21, 26 (Bankr. W.D. N.Y. 1994) (§ 108(c) only extends periods which exist pre-petition); *In re United Trucking, Inc.,* 91 B.R. 30, 31 (E.D. Mich. 1988); *In re Northern Specialty Sales, Inc.*, 57 B.R. 557, 559 (Bankr. D. Or. 1986).    Additional courts which have considered the issue have also found that § 108 does not apply to causes of action or extend periods within which to act which arise post-petition. *In re Phillip*, 948 F.2d 985, 987 (5th Cir. 1991) (§ 108(a)

does not extend time to file suit for cause of action which arose after petition filed); *Quilling v. Compass Bank*, 54 U.C.C. Rep. Serv. 2d (Callaghan) 975, 2004 U.S. Dist. Lexis 18811 (N.D. Tex. 2004) (§ 108(a) does not protect debtor claims that arise post petition); *In re Ward*, 42 B.R. 946 (Bankr. M.D. Tenn.  1984) (by its terms § 108(a) only applies to extend time for actions which the debtor had o the date of filing the petition). See also, *In re Coliseum cartage Company, Inc.*, 975 F.2d 1022, 1027 (4th Cir 1992) (dissent by Judge Wilkinson).  Accordingly, § 108 does NOT extend the time to file tax protests as the Debtors allege.

19.  The interpretation of § 108 asserted by the Debtors would cause a conflict between it and the provisions of 28 U.S.C. §§ 959 and 960 which specifically state that debtors-in-possession are to operate subject to all applicable state and local laws, including tax laws.[2] Section 960 "specifically mandates compliance with state tax laws."  *In re Megafoods Stores*, 163 F.3d 1063, 1069 (9th Cir. 1998). Further, that interpertation would render the language added as § 505 (a)(2)(C) of the Bankruptcy Code in 2005 meaningless.

20.  The issue of whether § 108(a) applies to extend the time to contest pre-petition tax valuations was recently addressed by the court in *In re The Village at Oakwell Farms, Ltd.*, 2010 Bankr. Lexis 1248, Case No. 09-52932 (Bankr. W.D. Tex April 19, 2010).  The court's analysis of the interplay between § 108(a) and § 505(a)(2)(C) is instructive here:

> The new language should be read in such a way as not to render existing language surplusage. *See Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 837, 108 S. Ct. 2182, 100 L. Ed. 2d 836 & n. 11 (1988); (United States v. Menasche, 348 U.S. 528, 538-39, 75 S. Ct. 513, 99 L. Ed. 615 (1955).* Section 505(a)(2)(A) already bars redeterminations when the amount or legality of the tax has already been contested with finality before commencement of the case. *See 11 U.S.C. § 505(a)(2)(A); In re Luongo, supra.* Thus, it seems unlikely that the "has expired" language in subsection (C) should be confined to the time frame pre-petition, as that circumstance is

---

[2] An additional indication of Congressional intent that the filing of a bankruptcy should not interfere with the ordinary assessment of taxes is shown by its exception of the taxation process and imposition of the tax liens from the effects of the automatic stay pursuant to 11 U.S.C. §§ 362(b)(9) and (b)(18).

already addressed in subsection (A). If the phrase has a post-petition application, it will then conflict with section 108(a). The legislative history for section 505(a)(2)(C) is sparse. The House Report simply repeats the language of the statutory change. *See* H.R. REP. NO. 31, 109th Cong, 1st Sess 701 (2005). **[*19]** So we have no clear indication what Congress might have had in mind when it added this provision.

Another principle of statutory construction is helpful. *HN15*⬆In general, more specific provisions will control over more general provisions. *Nat'l Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co., 534 US 327, 335-36, 122 S. Ct. 782, 151 L. Ed. 2d 794 (2002).* Here, a more specific provision in section 505(a)(2)(C) can fairly be read to create an exception for a small subset of cases to which the more generic rule set out in section 108(a) would otherwise apply. Were there no new section 505(a)(2)(C), the interplay of sections 108 (a) and 505(a)(2)(A) would mean that bankruptcy courts can redetermine ARB determinations so long as the time for filing an action for *de novo* review has not yet run, *see* discussion *supra.* *HN16*⬆The addition of new section 505(a)(2)(C) assures that, notwithstanding section 108(a), the debtor must contest the ARB determination before the time period for seeking *de novo* review has expired. In other words, new section 505 (a)(2)(C) appears to reverse the holding in *CGE Shattuck*.

Following the principal that more specific provisions will control over general provisions, the specific requirements that Debtors comply with state and local laws in 28 U.S.C. §§ 959 and 960, as well as the jurisdictional limitation that courts may not grant relief where the time period to do so has expired under applicable non-bankruptcy law has expired, weigh against the Debtors' interpretation of § 108 and strongly in favor of the Court abstaining or dismissing the Objection and denying relief altogether.

21.  The Local Tax Authorities would show the Court that the period for filing appeals or protests with respect to the tax values has expired. In Texas, Tex. Prop. Tax Code § 41.44 provides that June 1 of each tax year or 30th day after notice is given is the deadline to file appeal. The deadline to appeal the valuation of the property in Memphis with the Shelby County Board of Equalization was July 31, 2009. The Tax Authorities will show the Court that with respect to many of the Local Texas Tax Authorities' jurisdictions, the Debtors filed a timely appeal or protest to the local appraisal district, and an administrative hearing was held.  The deadline to appeal the outcome of each of these administrative proceedings has expired and

further recourse is barred under applicable Texas law.  Texas Property Tax Code § 42.01 et seq.;

Tex. Prop. Tax Code § 42.21(a). Additionally, with respect to the Texas taxes, in order to

preserve the right for relief, the undisputed portion of the taxes had to have been paid timely, on

or before January 31, 2010. Tex. Prop. Tax Code § 42.08(b). The Debtors have wholly failed to

comply with this requirement that the undisputed portion of the tax be paid in order to preserve

their right of appeal.  Finally, upon information and belief, no appeal or protest with respect to

the valuation of the Memphis property was timely filed, and such appeal is now time-barred

pursuant to Tennessee law.

22.    With respect to the tax accounts were timely protests were filed with the Texas

appraisal districts, by failing to appeal the ARB orders to the State district courts, those orders

became final. *In re Teal,* 16 F.3d 619 (5th Cir. 1994).  The Debtors may not now seek to "appeal"

those decisions to this Court.  Section 505 (a)(2)(C) (as well as the Rooker-Feldman doctrine)

prevents adjudications under State law being appealed to federal courts where the time to do so

under applicable non-bankruptcy law has expired..  There is no authority to support the Debtors'

contention that § 108 extends the time period within which to bring a cause of action which arose

post-petition.  Accordingly this Court should find it is without jurisdiction and deny the relief

sought by the Debtors in their Objection.

### III.  Conclusion

23.    Filing bankuptcy is often characterized as giving debtors a "fresh start," but these

Debtors are seeking not only a "head start" but a whole different playing field from all other

taxpayers in each of the jurisdictions.  There is no support in the Bankruptcy Code or case law

for allowing the Debtors to proceed in this Court with these causes of action.  Specifically, 28

U.S.C. §§ 959 and 960 require that Debtors in possession operate subject to all applicable State

laws.).   Through the Tax Injection Act, all federal courts are prohibited from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under state law" if the state otherwise provides a speedy and efficient procedure for resolution of tax disputes. 28 U.S.C. § 1341.   The Debtors do not allege that such remedies do not exist in Texas and Tennessee, but instead simply state they do not wish to avail themselves of these procedures. This is not sufficient basis for this Court to interpose itself into the local taxation process.

24.   The Tax Injection Act is consistent with the purpose behind 11 USC § 505.   A bankruptcy court's ability to redetermine taxes was authorized to protect non-tax creditors of debtors which might be prejudiced due to a financially ailing debtor's inability or failure to contest its tax assessments.   *In re Mantz,* 343 F.3d 1207, 1211 (9th Cir. 2003); *In re New Haven Projects LTd., Liability Co.*, 225 F.3d 283, 289 (2nd Cir. 2000); *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n*, 898 F.2d 122, 125 (10th Cir. 1990).   Section 505 was not intended to provide a second chance to debtors who contested their taxes outside of bankruptcy and were dissatisfied with the result.   The legislative history of § 505 emphasizes that its purpose was to permit a bankruptcy court to determine the tax liability of a debtor "that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case" and to deny jurisdiction to the bankruptcy court when the claim had been contested.   *In re Quattrone*, 895 F.2d 921, 925 (3rd Cir. 1989), citing S. Rep. No. 989, 95th Cong., 2d Sess. 67, reprinted in 1978 U.S. Code Cong. & Admin News, 5787, 5853.

25.   Both 11 USC § 505 and  28 USC § 1341 balance the estate's need for relief for  a less-than-diligent debtor and the need of the federal system for deference to the needs of state and local governments for orderly and consistent treatment of tax disputes.   In the current case, the Debtors have employed professional tax representatives to prepare and file their tax

renditions or returns upon which their personal property was valued, and timely protests were

filed with respect to the value of many of the property tax accounts.  These are not the actions of

a financially constrained debtor whose other creditors need the relief offered under § 505 in

order to receive their fair share of the value of the company.  Under the facts herein presented,

the Local Tax Authorities request this Court to abstain and otherwise  deny the relief requested in

the Objection.

### IV.  Summary of the Facts and Argument with Respect Thereto

26.  Bexar County, Cameron County, City of Cedar Hill, Dallas County, El Paso,

Frisco, Gregg County, Harlingen, Harlingen CISD, Irving ISD, Jefferson County, Longview

ISD, McAllen, McAllen ISD, McLennan County, Nueces County,  Rockwall County, Round

Rock ISD, South Texas College, South Texas ISD, Tarrant County, Harris County, Cypress-

Fairbanks ISD, Fort Bend County, Montgomery County and the City of Memphis deny that they

valued the Debtors' property for tax purposes.  The property in each jurisdiction was valued by a

separate Central Appraisal District ("CAD")[3].  Each   CAD is a separate governmental agency

charged under the laws of the State of Texas with establishing and certifying the tax roll, which

consists of a list of property owners and the taxable value of their property. Upon information

and belief, the Debtors filed property tax returns (more properly called  "renditions" in Texas)

for its 2009 taxes with each of the CADs.  Upon information and belief, these renditions were

accepted, and the property was valued by each CAD in the same manner as  similar property

located in the same jurisdiction. With respect to many of the tax accounts, the Tax Authorities

will show that Debtors appealed or protested the CAD's initial valuation determination.  After an

administrative hearing or proceeding, the protests were decided by the CADs and, upon

---

[3] The property in the City of Memphis is valued for tax purposes by either the Shelby County Assessor's Office or
the State of Tennessee.  As these are also separate appraising entities from the City, for ease of reference, these
Tennessee appraising entities shall also be included in the reference to "CADs".

information and belief, the Debtors have not timely pursued their appeals to the next level, the

state courts.

27.   Counsel for the Local Tax Authorities has undertaken  extensive research as to the

status of the tax appraisal and appeal/protest process with respect to each of the Local Tax

Authorities.  Except for Rockwall CAD, none of the Local Tax Authorities was a party to the

appeal process, however Counsel has obtained and examined the relevant documents.  Within the

limitations of the availability of evidence, below is a brief description of the facts with respect to

each of the Tax Authorities to the best of their knowledge based upon information obtained

through informal discovery of the CADs.

28.   **Bexar County**, **Claim no. 5119:**   Bexar County's claim no. 5119 is based upon the

2008 taxes.  For 2009, one of the accounts included in 2008 is no longer on the roll, and a new

account, 000001126818[4], has been added based upon information provided by the Debtors to the

CAD. Based upon the 2009 values for the three accounts, Bexar County agrees to amend its

claim for 2009 base taxes to $133,921.70,[5] subject to further amendment when the final tax

assessment rates are determined by each of the taxing entities for which it collects taxes and

which are included in its claims.

Upon information and belief the Debtors filed timely renditions with Bexar CAD with

respect to all three active accounts.  They further filed timely appeals or protests of the 2009

values.  Hearings were held by the Appraisal Review Board ("ARB"), at which the Debtors

appeared and presented evidence by affidavit.  Orders Determining Protest were entered on or

about July 9, 2009.  These Orders denied the relief requested by the Debtors.  Further appeals of

---

[4] This account is not included in Bexar County's original estimated administrative expense claim because it was
added to the tax roll only for the 2009 year and was not available at the time the claim was prepared.  While Bexar
County does not think the Debtors' 505 affects this tax account, it is included out of an abundance of caution.
[5] All 2009 tax amounts referenced are for base taxes only.  They do not include the penalties and interest to which
the Tax Authorities are entitled pursuant to 11 U.S.C. § 503(b)(1)(C) due to the Debtors failing to pay these taxes
timely.  These amounts will be calculated at the time the taxes are paid.

the Orders were required to be filed within 45 days of receipt of the Orders.  Information

obtained from Bexar CAD shows that no appeal was filed to the state district court.  The records

of Bexar County show that none of the 2009 taxes on these accounts have been paid.

29. **Cameron County, Claim no. 10987:**  Cameron County's claim for 2009 taxes is for

two accounts.  Upon information and belief, with respect to each account, renditions were filed

and a timely protest of the original value was filed with Cameron Appraisal District. On July 1,

2009,  hearings before the Appraisal Review Board of Cameron County were conducted at which

the Debtors appeared and presented evidence.  As a result of the hearing, the values were

lowered.  The Orders Determining Protest were signed on July 10, 2009, and Debtors had 45

days from receipt of those Orders to appeal to the state district court.  The Debtors have not

appealed these Orders.

Cameron County agrees to amend its claims for 2009 taxes to reflect the reduced values

determined by the Cameron ARB.  The base amount owed for 2009 taxes is $31,959.45.


30**.  City of Cedar Hill, Claim no. 6533:**  The property located in Cedar Hilll is appraised

for tax purposes by the Dallas Central Appraisal District ("DCAD").  Debtors filed a timely

rendition with respect to this account.  The Debtors filed  a timely protest for this account, relief

was denied by DCAD, and the time for further appeal has expired.

31.   **El Paso, Claim no. 5118:** The Debtors' property located in El Paso was valued for tax

purposes by the El Paso Central Appraisal District.  The Debtors filed timely tax renditions, but

did <u>not</u> protest the tax values noticed by the CAD.  The time for protesting those values has

expired.  The 2009 taxes have not been paid.  The base taxes total $110,644.59 without penalties

or interest.

32.  **City of Frisco, Claim no. 7420:**  Collin County Appraisal District values the property

taxed by the City of Frisco.  Upon information and belief, the Debtors filed timly renditions with

the CAD, and subsequently filed timely protests of the noticed values.  On or about July 16,

2009, the Collin Appraisal Review Board conducted a hearing on the protest.  On or about July

23, 2009 an Order Determing Protest was entered which denied the relief sought.  Pursuant to the

Order, an appeal was required to be filed within 60 days of the receipt of the Order.  No appeal

has been filed.

33.  **City of Harlingen, Claim no. 10986:** The property assessed by the City of Harlingen is

appraised for tax purposed by the Cameron Appraisal District.  Pursuant to the rendition filed by

the Debtors, a new account was established for the 2009 tax year for the Debtors.  A timely

protest of the original value was filed with Cameron Appraisal District. On July 1, 2009,

hearings before the Appraisal Review Board of Cameron County were conducted at which the

Debtors appeared and presented evidence.  As a result of the hearing, the value was lowered.

The Order Determining Protest was signed on July 10, 2009, and Debtors had 45 days from

receipt of the Order to appeal to the state district court.  The Debtors have not appealed the

Order.  The base 2009 taxes are $8,255.14.

34.  **City of McAllen, Claim no. 5279:**   The property assessed by the City of McAllen is

appraised for tax purposes by Hidalgo County Appraisal District.  The Debtors filed a timely

rendition and subsequently timely appealed or protested the initial determination of value by the

CAD.  On or about July 14, 2009, the Hidalgo Appraisal Review Board heard the protest, the

Debtors presented evidence via affidavit,  and the ARB issued an Order Determining Protests

denying the relief requested.  No further appeal has been taken.

35.  **City of Memphis, Claim no. 7425:** Originally the City of Memphis filed its claim for

2009 taxes based upon the 2008 taxes owed on two accounts.  Current records show that only

one account was assessed for 2009.   The period for appealing the 2009 value of these taxes

expired on July 31, 2009.  To the knowledge of the City, no protest or appeal was timely filed.

The 2009 base tax amount is $1,872.317.  These taxes became delinquent on September 1, 2009,

and are accruing penalties and interest as permitted under the laws of the State of Tennessee and

11 U.S.C. § 503(b).

36. **Cypress-Fairbanks ISD, Claim no. 7143**: A timely rendition was filed for this tax account with Harris County Appraisal District.  Upon information and belief, no protest was filed on this tax account.

37. **Dallas County, Claim no. 10279: T**he Debtors filed timely renditions with respect to multiple accounts in Dallas County, which are appraised for tax purposes by Dallas Central Appraisal District.  Protests were timely filed on 5 of the accounts, but no protest was filed with respect to account no. 99930540000142000.  Relief was denied by the ARB and no appeals have been taken from the orders denying relief.  The base taxes owed Dallas County total $179,862.75.

38. **Fort Bend County, Claim no. 7144: A** timely rendition was filed with Fort Bend Central Appraisal District by the Debtors, the value was noticed, and no appeal or protest of the noticed value was filed with the CAD.  The base 2009 taxes are $33,595.97.

39. **Gregg County, Claim no. 12031:**  Upon information and belief, a timely rendition was filed with Gregg County Appraisal District by the Debtors, the value was noticed, an appeal was filed and relief was denied by the CAD.

40. **Harlingen CISD, Claim no. 10985**: The property assessed by Harlingen CISD is appraised for tax purposed by the Cameron Appraisal District.  Pursuant to the rendition filed by the Debtors, a new account was established for the 2009 tax year for the Debtors.  A timely protest of the original value was filed with Cameron Appraisal District. On July 1, 2009, hearings before the Appraisal Review Board of Cameron County were conducted at which the Debtors appeared and presented evidence.  As a result of the hearing, the value was lowered. The Order Determining Protest was signed on July 10, 2009, and Debtors had 45 days from receipt of the Order to appeal to the state district court.  The Debtors have not appealed the Order.  The 2009 base taxes owed are $15,714.77.

41. **Harris County, claim no. 14428**: Timely renditions were filed for these tax accounts with Harris County Appraisal District.  Timely appeals or protests of the tax values were filed with HCAD on 5 of the 9 accounts assessed for 2009.  Relief was denied with respect to all

accounts.  No appeals from the HCAD ARB determinations were filed in state court.  One account in Harris County has been paid for 2009.

42.  **Irving ISD, Claim no. 7414**:  Debtors filed a timely rendition with respect to this account in Dallas County, which is appraised for tax purposes by Dallas Central Appraisal District.  A protest was timely filed, but relief was denied by the ARB and no appeals have been taken from the order denying relief.

43.  **Jefferson County, Claim no. 11694:**  The accounts in Jefferson County are appraised for tax purposes by Jefferson County Appraisal District.  Timely renditions were filed by the Debtors with respect to each of the accounts in the claim, notice of value was sent out by the CAD, and the Debtors filed timely protests of these values.  On or about August 3, 2009, Orders Determining 2009 Protest were issued by the Appraisal Review Board of Jefferson County.  These Orders denied the relief sought.  The Debtors had 60 days from the receipt of these Orders to file further appeals pursuant to Texas law, but no such further appeals have been filed.

44.  **Longview ISD, Claim no. 13198: A** timely rendition was filed with Gregg County Appraisal District by the Debtors, the value was noticed and a timely appeal/protest was filed by the Debtors.  Relief was denied by the ARB and no appeal to the State district court was filed.

45.  **McAllen ISD, Claim no. 5263**:  The property assessed by McAllen ISD is appraised for tax purposes by Hidalgo County Appraisal District.  The Debtors filed a timely rendition and subsequently timely appealed or protested the initial determination of value by the CAD.  On or about July 14, 2009, the Hidalgo Appraisal Review Board heard the protest, the Debtors presented evidence via affidavit,  and the ARB issued an Order Determining Protests which reduced the taxable value.  No appeal from that order has been filed with the State court.

46.  **McLennan County, Claim no. 4167**:  The Debtors filed timely renditions with the McLennan County Appraisal District, the CAD noticed the proposed value and the Debtors filed a timely protest of that value.  On or about August 31, 2009, the ARB of McLennan County heard the protest by Ernst & Young LLP on behalf of the Debtors.  On the same date it issued an Order Determining Protest which denied the relief sought.  No further appeal has been taken.

47. **Montgomery County, Claim no. 7145:** Upon information and belief, the Debtors filed timely renditions with Montgomery CAD, the CAD noticed the proposed value and the Debtors appealed with respect to one account.  At the hearing before the ARB, the CAD recommended lowering the inventory value.  As a result of the protest and hearing, the value was lowered.  No further appeal has been filed with respect to either account.  One account has been paid but the other account is still owed.

48. **Nueces County, Claim no. 4845**: Upon information and belief the Debtors filed timely renditions with Nuecse County Appraisal District.  Timely protests were filed and a hearing was held September 29, 2009.  Relief was denied and no further appeal has been taken.

49. **Rockwall CAD, Claim no. 6940**:  The records of the CAD show the Debtors filed timely renditions.  They subsequently filed timely protests of the proposed values, and as a result,  the values were lowered from $1,578,830 to $1,387,040.  No appeal from the order lowering the value has been filed in State court.

50. **Rockwall County, Claim no. 7416**:  The Debtors filed timely renditions with Rockwall CAD.  They subsequently filed timely protests of the proposed values, and the values were lowered from $1,578,830 to $1,387,040.  No further appeals have been taken.

51. **Round Rock ISD, Claim no. 4850:** Property taxed by Round Rock ISD is appraised for tax purpsoses by Williamson Central Appraisal District.  The Debtors filed timely renditions with the CAD and subsequently filed timely protests to the proposed values.  The Appraisal Review Board of Williamson CAD held a hearing on July 7, 2009,  and on July 9, 2009, issued its Order Determining Protest wherein the ARB orded the CAD to reduce the tax value of the property for the 2009 tax year.  The Debtors had 45 days from receipt of that Order to file further appeal to the district court, but no such other or further appeal ahs been filed.

52. **South Texas College, Claim no. 5202:** The property assessed by South Texas College is appraised for tax purposes by Hidalgo County Appraisal District.  Upon information and belief, the Debtors filed a timely rendition and subsequently timely appealed or protested the initial determination of value by the CAD.  On or about July 14, 2009, the Hidalgo Appraisal

Review Board heard the protest, the Debtors presented evidence via affidavit,  and the ARB issued an Order Determining Protests denying the relief requested.  Upon information and belief, no further appeal has been taken.

54. **South Texas ISD, Claim no. 4861**: The property assessed by South Texas ISD is appraised for tax purposes by Hidalgo County Appraisal District.  Upon information and belief, the Debtors filed a timely rendition and subsequently timely appealed or protested the initial determination of value by the CAD.  On or about July 14, 2009, the Hidalgo Appraisal Review Board heard the protest, the Debtors presented evidence via affidavit,  and the ARB issued an Order Determining Protests denying the relief requested.  Upon information and belief, no further appeal has been taken.

55. **Tarrant County, Claim no. 10278**: Upon information and belief, the Debtors filed timely renditions with Tarrant Appraisal District on six accounts. One account was not assessed for 2009, timely appeals or protests were filed with respect to 4 accounts and no protest was filed on one account.   On the 4 accounts where protests were filed, relief was denied.  No further appeal has been filed with respect to any of the accounts.


    WHEREFORE, the Local Texas Tax Authorities and City of Memphis request this Court to enter an Order overruling the Debtors' Objection and granting such other and further relief to which the Court finds they are entitled.

Dated:  May 13, 2010

Respectfully submitted,

**VANDEVENTER BLACK LLP**

/s/ Kevin A. Lake
Kevin A. Lake, Esquire (VSB# 34286)
VANDEVENTER BLACK LLP
707 E. Main Street, Suite 1700
P.O. Box 1558
Richmond, VA  23218-1558
Tel: 804.237.8811

Fax: 804.237.8801
klake@vanblk.com

and

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
Elizabeth Weller
Tex. Bar No. 00785514
2323 Bryan St. #1600
Dallas, TX 75201
(469)221-5075 phone
(469)221-5002 fax
BethW@publicans.com email

Counsel to the Local Texas Tax Authorities

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2010 I caused to be served a true
and correct copy of the Foregoing Response to Debtors' Thirty-Seventh Omnibus
Objection to Claims to all parties receiving notice via ECF and via ECF and/or email on
the following:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
P.O. Box 636
Wilmington, Delaware 19899-0636

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, Illinois 60606-7120

Douglas M. Foley
Dion W. Hayes
McGuireWoods, LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Attorneys for Debtors


/s/ Kevin A. Lake
Kevin A. Lake