IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:  CIRCUIT CITY STORES, INC.,    Case No. 08-35653
    *et al.*,               Chapter 11
      Debtors.          Jointly Administered

**MEMORANDUM OPINION**

This is a Chapter 11 case filed by a national retailer. The Debtors have objected to a number of administrative claims filed by creditors under § 503(b)(9) of the Bankruptcy Code as not involving "goods" within the meaning of the section and, hence, should be reclassified as general unsecured claims. Hearing was conducted on August 27, 2009 (the "Hearing"), to consider the Debtors' request for partial summary judgment. The Debtors asked the Court to determine two legal issues: first, what definition of "goods" should be used to interpret §503(b)(9) of the Bankruptcy Code; and second, whether the "predominate purpose test" should be used to determine whether a claim will be treated as an administrative claim under the section. The Court concludes that the definition of "goods" set forth in the Uniform Commercial Code (the "UCC") should be employed in fashioning a federal definition for that term in § 503(b)(9). The Court also concludes that the "predominate purpose test," developed and applied by the majority of courts to determine whether the UCC is applicable to hybrid contracts calling for the delivery of both goods and services, should be used to determine whether a claim involves the selling of goods and is, therefore, entitled to an administrative priority under § 503(b)(9) of the Bankruptcy Code.

## Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Factual and Procedural Background

The Debtors, Circuit City Stores, Inc., *et al.*,[1] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. After filing its bankruptcy petition, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of Administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. On November 12, 2008, this Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for filing proofs of claim asserting a § 503(b)(9) administrative priority was 5:00 p.m. (PT) on December 19, 2008.

---

[1] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

2

On May 12, 2009 and June 18, 2009, the Debtors filed three omnibus objections[2] to certain timely filed claims asserting a § 503(b)(9) administrative priority. The Debtors maintain that the claims filed did not involve the sale of "goods" within the meaning of § 503(b)(9) and should be reclassified as general unsecured non-priority claims[3] (the "Objections"). A number of claimants responded to the Objections, arguing that their transactions should be classified as transactions in goods and entitled to administrative priority.[4] As to claims for which no response was filed to the Debtors' Objection, the Court entered an order dated July 8, 2009, sustaining the Objection and reclassifying the claims as general unsecured non-priority claims.[5]

---

[2] The Objections were filed as omnibus objections pursuant to Rule 3007(d)(8) of the Federal Rules of Bankruptcy Procedure on the grounds that they asserted a priority in an amount that exceeds the maximum amount under § 507 of the Bankruptcy Code.

[3] Debtors' Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(B)(9) Claims, filed on May 12, 2009 [Docket No. 3309]; Debtors' Sixth Omnibus Objection to Certain Misclassified Non-Goods 503(B)(9) Claims, filed on May 12, 2009 [Docket No. 3311]; Debtors' Fourteenth Omnibus Objection to Claims (Reclassification of Certain Non-Goods 503(b)(9) Claims to General Unsecured Non-Priority Claims), filed on June 18, 2009 [Docket No. 3672].

[4] Touchpoint Retail Design, Inc.'s Response to Sixth Omnibus Objection [Docket No. 3409]; E-Z Spread n' Lift Industries' Response to Sixth Omnibus Objection [Docket No. 3492]; Consumer Vision, LLC's Response to Sixth Omnibus Objection [Docket No. 3521] (claiming that its particular type of market research is a "good"); Winn Bus Lines, Inc.'s Response to Sixth Omnibus Objection [Docket No. 3522] (claiming that the physical placement of charter equipment entitles it to a 503(b)(9) claim); Charleston Newspapers' Response to Fifth Omnibus Objection [Docket No. 3561]; Retail MDS, Inc.'s Response to Fifth Omnibus Objection [Docket No. 3563]; Magnus Magnusson's Response to Fifth Omnibus Objection [Docket No. 3573]; Graphic Communications, Inc.'s Response to Fifth Omnibus Objection [Docket No. 3600]; Miner Fleet Management Group, Ltd.'s Response to Fifth Omnibus Objection [Docket No. 3608]; Vector Security, Inc.'s Response to Fifth Omnibus Objection [Docket No. 3612]; Schimenti Construction Company, LLC's Response to Fifth Omnibus Objection [Docket No. 3622]; U.S. Signs' Response to Fifth Omnibus Objection [Docket No. 3623]; AA Home Services, LLC's Response to Sixth Omnibus Objection [Docket No. 3634]; Performance Printing Corporation's Response to Sixth Omnibus Objection [Docket No. 3644]; Eastern Security Corp.'s Response to Sixth Omnibus Objection [Docket No. 4094]; I/O Magic Corp.'s Response to the Fourteenth Omnibus Objection [Docket No. 4368].

[5] The Fourth Circuit Court of Appeals has repeatedly held that the claimant has the burden of proof on all elements of an administrative expense claim. *See, e.g., Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 866 (4th Cir. 1994) (quoting *In re Mid Region Petroleum, Inc.,* 1 F.3d 1130, 1132 (10th Cir. 1993) ("the party claiming entitlement to administrative expense priority [under § 503(b)] has the burden of proof"). Local Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia requires a creditor served with an objection to claim to file a response to the objection within 30 days. If no response is filed, the court may treat the objection as conceded.

At the Hearing, the Debtors requested partial summary judgment on two legal issues: (i) what is the definition of goods for the purposes of § 503(b)(9), and (ii) whether the predominant purpose test should be used in cases in which mixed service and goods transactions are at issue. The Debtors requested that the factual inquiry of whether the individual claims fall within the scope of § 503(b)(9) be set for an evidentiary hearing. The Court agreed to hear arguments relating to the two legal issues and adjourned the questions of fact until October 15, 2009.

The Debtors argued that the Court should apply the UCC definition of goods as the correct definition for the term used by Congress in adopting § 503(b)(9). The Debtors argued further that the predominant purpose test, utilized in the majority of states, be applied in cases of hybrid goods and services transactions. Three creditors appeared at the Hearing, each generally accepting the UCC definition of goods as applicable, but disagreeing as to whether the predominant purpose test should be applied in cases of hybrid contracts.[6]

**Analysis**

Section 503(b)(9) provides for the allowance of an administrative claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 509(b)(9). Consistent with the plain language of the statute, allowed administrative expenses under § 503(b)(9) should only be for claims arising from the sale and delivery of goods to the Debtors, not from the provision of services. *See Brown & Cole Stores, LLC v. Associated Grocers, Inc.* (*In re Brown & Cole Stores, LLC*), 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) ("By the plain terms of the statute, a vendor's right to assert an

---

[6] Counsel for Schimenti Construction Company conceded that the UCC definition of goods may be applicable but argued that there was no reason to apply the predominate purpose test. Counsel for Graphic Communications and counsel for US Signs agreed that the UCC definition of goods was applicable but stated that they did not believe it was necessary to apply the predominate purpose test. They each contended, however, that if the predominate purpose test was applied, they would both satisfy it.

4

administrative claim is limited [in that] the vendor must have provided goods (not services)."); *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 135 (Bankr. D. Del. 2009) ("[B]ased upon the distinction between 'goods' and 'services' throughout in the Bankruptcy Code, a claim for an administrative expense under section 503(b)(9) cannot be a claim for services provided."); *In re Samaritan Alliance, LLC*, No. 07-50735, 2008 Bankr. LEXIS 1830, at *6-7 (Bankr. E.D. KY, June 20, 2008) (finding § 503(b)(9) inapplicable because claimant provided what was "more properly characterized as a 'service'").

In this case, the Debtors object that the claims grouped under omnibus objections five, six, and fourteen do not involve "goods" that "have been sold to the debtor," and, therefore, should be reclassified as general unsecured claims.

**The Definition of "Goods"**

The first issue for the Court to decide is what is the definition of "goods" under § 503(b)(9) of the Bankruptcy Code. The Bankruptcy Code does not define "goods" and there is no controlling case law directly on point. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). And "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense." *Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59 (1911).

The Fourth Circuit has instructed that state law should be used to define terms in the Bankruptcy Code not otherwise defined by Congress. *See In Re Price,* 562 F.3d 618, 624-25 (4th Cir. 2009) (applying North Carolina law, which had adopted the UCC, to define "purchase money security interest" in § 1325(a) of the Bankruptcy Code). This may prove to be impractical in large bankruptcy cases like this one, where there have been multiple transactions

5

in 48 states and Puerto Rico that implicate § 503(b)(9) of the Bankruptcy Code. The question arises what state law does the Court apply? It would be inefficient to look at each transaction that occurred in every state or territory that has an interest in the transaction, decide which state law may apply to the transaction, determine how the law of each applicable state or territory would individually construe the term "goods," and then apply that definition to the individual claim at hand. This approach could lead to inconsistent treatment for otherwise similar claims. The Court does not believe that Congress intended a disparate application of the term "goods," but rather contemplated a consistent, uniform approach to its interpretation. For this reason, the Court will adopt and apply a federal definition for the term "goods" for purposes of § 503(b)(9) of the Bankruptcy Code. "When a federal statute leaves terms undefined or otherwise has a 'gap,' we often borrow from state law in creating a federal common law rule." *In re Bassett*, 285 F.3d 882, 884 (9th Cir. 2002). Following the Fourth Circuit's guidance in *In re Price, supra*, the Court will look to state law generally for any well known meaning of the term in constructing this definition.

Forty-nine states have adopted some form of the Uniform Commercial Code. The UCC defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid. . . ." UCC. § 2-105(1). This definition is consistent with Black's Law Dictionary, which defines goods as "1. Tangible or movable personal property other than money. . . . The sale of goods is governed by Article 2 of the UCC." BLACK'S LAW DICTIONARY 714 (8th ed. 2004). This definition is also consistent with the term's ordinary and common usage. It is the definition

6

on which sellers have come to rely in their transactions[7] and is the "well-known meaning" of goods.

Section 503(b)(9) of the Bankruptcy Code was enacted as part of § 1227 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). This section was entitled "Reclamation." It appears to have been adopted as an attempt by Congress to enhance certain types of reclamation claims raised by creditors in bankruptcy cases. Reclamation allows sellers to take back goods delivered to buyers under certain circumstances. "The right to reclamation arises under § 2-702 of the UCC. That right is both protected and limited by 11 U.S.C. § 546." *Matter of Adventist Living Centers, Inc.*, 52 F.3d 159, 162 n.1 (7th Cir. 1995). "From its enactment it was commonly understood that former section 546(c) [of the Bankruptcy Code] was not the source of a right of reclamation, but simply allowed a seller to exercise a right of reclamation existing under non-bankruptcy law, subject to certain limitations." *In re Dana Corp.,* 367 B.R. 409, 414 (Bankr. S.D.N.Y. 2007).

Given that the remedy of reclamation arises from the UCC and given that Congress did not choose to lay out a different definition of "goods" in the Bankruptcy Code, it seems more likely than not that Congress intended for the UCC definition of "goods" to apply to § 546(c) of the Bankruptcy Code. Indeed, bankruptcy courts have generally applied the definition of the word "goods" contained in the UCC in determining the application of § 546(c) of the Bankruptcy Code. *See, e.g., In re GIC Government Sec.* 64 B.R. 161, 162 (Bankr. M.D. Fla. 1986). It is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Niklos Drilling Co.,* 505 U.S. 469, 479 (1992). Therefore, the word "goods"

---

[7] As the Bankruptcy Code does not define "goods," it seems likely that these very same sellers who have now become creditors in this and other bankruptcy cases would expect the same definition of "goods" to apply inside of bankruptcy as would apply in their ordinary transactions governed by the UCC. *Cf. Butner v. United States,* 440 U.S. 48, 57 (1979).

7

in § 503(b)(9) should be defined the same way as "goods" is defined in § 546(c). Based on § 546(c)'s purpose and origins, this should be the UCC definition. This is further supported by the fact that § 546(c)(2) directly references § 503(b)(9).[8]

Finally, the legislative history of § 503(b)(9) suggests that Congress was contemplating the general UCC definition of goods when it crafted the statute. Statutes should be interpreted consistent with Congressional intent. *See, e.g., U.S. v. Ron Pair Enter., Inc.*, 489 US. 235, 242-43 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. In such cases, the intention of the drafters, rather than the strict language controls."). It is instructive that new § 503(b)(9) and the amendments to § 546(c)(2) were both grouped under the title "Reclamation" in § 1227 of BAPCPA. When reading provisions in statutes and divining Congressional intent, courts commonly look to where those provisions are placed within the statute or amendment. For example, in *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326, 2334-39 (2008), the Supreme Court construed § 1146 based on its position in the subchapter entitled "Post-confirmation matters" of the Bankruptcy Code. *See also Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Based upon the placement of §§ 503(b)(9) and 546(c)(2) in § 1227 of BAPCPA under the heading "Reclamation," Congress appears to have intended for the UCC definition of goods applicable to reclamation to apply in both sections.

For all of these reasons, the Court will adopt the UCC definition of "goods" as the federal definition of goods for the purpose of interpreting § 503(b)(9) of the Bankruptcy Code. This

---

[8] "If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)." 11 U.S.C. § 546(c)(2).

ruling is consistent with the approach that has been taken by a number of other bankruptcy courts faced with the same question of interpreting the meaning of "goods" under § 503(b)(9). *See In re Goody's Family Clothing, Inc.,* 401 B.R. 131, 134- 36 (Bankr. D. Del. 2009); *In re Plastech Engineered Prods.*, 397 B.R. 828, 836 (Bankr. E.D. Mich. 2008); *In re Samaritan Alliance, LLC*, 2008 WL 2520107, at *3 (Bankr. E.D. KY. 2008).

**Adoption of the Primary Purpose Test**

Given that a number of the § 503(b)(9) claims involve "hybrid" transactions involving contracts for the delivery of both goods and services, the next question that arises is whether those transactions should be deemed "goods" transactions, entitling the claimants to § 503(b)(9) administrative priority status, or services transactions, relegating claimants to a general unsecured non-priority status.  The majority of courts across the country have adopted the predominant purpose test[9] to determine whether or not a transaction is in "goods" and, therefore, covered by the UCC.  *See, e.g., BMC Indus., Inc. v. Barth Indus., Inc.,* 160 F.3d 1322, 1329-30 (11th Cir. 1998) ("Most courts follow the 'predominant factor test' to determine whether such hybrid contracts are transactions in goods, and therefore covered by the UCC, or transactions in services, and therefore excluded.").

> [B]efore applying the U.C.C., courts generally examine the transaction to determine whether the sale of goods predominates. . . .  'The test for inclusion or exclusion is not whether they are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g. contract with artist for painting) or is a transaction of sale, with labor incidentally involved.'

*Princess Cruises, Inc. v. General Electric Co.,* 143 F.3d 828, 833 (4th Cir. 1998) (*quoting Bonebreak v. Cox*, 499 F.2d 951, 960 (8th Cir.1974)).  The Debtors ask the Court to adopt the predominant purpose test for purposes of determining whether a claim involves the selling of

---

[9] This test goes by a number of different names, including the "predominant factor test" and the "predominant aspect test," but regardless of its caption, the test is essentially the same.

9

"goods" and is therefore included in § 503(b)(9) of the Bankruptcy Code just as that same determination would be made for purposes of allowing reclamation under the UCC.

At least two Bankruptcy Courts have been asked by debtors to adopt the predominant purpose test for dealing with § 503(b)(9) claims involving hybrid contracts. In *In re Goody's Family Clothing, Inc.,* the Bankruptcy Court for the District of Delaware held that it did not need to decide the question of whether to apply the predominant purpose test. *See In re Goody's Family Clothing, Inc.,* 401 B.R. 131, 136 n.24 (Bankr. D. Del. 2009) (noting that no evidence relating to whether the transaction was one for goods or services had been presented by the creditor). The court reasoned that because the creditor at issue had clearly not *sold* any goods to the debtor, but rather had only *shipped* goods, the claim could not fall under § 503(b)(9). *Id.* at 136. In *In re Plastech Engineered Products, Inc., et al.*, the Bankruptcy Court for the Eastern District of Michigan declined to adopt the predominant purpose test, finding it "unnecessary" despite agreeing "that the adoption of a predominant purpose test might in some instances eliminate fact intensive evidentiary hearings." 397 B.R. 828, 837-38 (Bankr. E.D. Mich. 2008). The court emphasized the importance of the word "any" in § 503(b)(9) in justifying its conclusion that the value of "goods" provided to the debtor should be included in any § 503(b)(9) claim and the value of any "services" excluded. *See id.*, at 838. The court noted that "[b]ecause 503(b)(9) awards the administrative expense for the value of *any* goods, and does not require that a transaction be made up entirely or even predominantly of goods versus services, the Court concludes that the Debtor's objection . . . should be sustained only to $2400 for services." *Id.*

This Court does not find the argument in *Plastech* persuasive. The argument ignores entirely the second half of the sentence that comprises § 503(b)(9). Although an administrative

10

priority is accorded for "the value of any goods received by the debtor within 20 days" prior to the petition date, such priority is only for transactions in which *"goods have been sold to the debtor* in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (emphasis added). The explicit language of the statute does not say that an administrative priority exists for the value of "any materials provided to the debtor incident to the performance of certain services," but rather for the value of goods where "goods have been *sold* to the debtor." In order to be entitled to a claim under § 503(b)(9) of the Bankruptcy Code, the claimant must show that the transaction is one in which "goods have been sold to the debtor." Therefore, the Court must determine whether or not the transaction involved is one for the sale of goods.

To determine whether a transaction is deemed a contract for the sale of goods rather than a contract for the sale of services under the UCC, the majority of courts look to the predominant purpose test. *See, e.g., Princess Cruises, Inc. v. General Electric Co.,* 143 F.3d 828, 832-34 (4th Cir. 1998).[10] As the Court has adopted the definition of goods from the UCC for purposes of interpreting that term in § 503(b)(9), it makes sense to similarly adopt the manner in which courts have applied and interpreted that same term under the UCC for purposes of determining whether a contract is for the sale of goods under § 503(b)(9) of the Bankruptcy Code. For these reasons and for the reason that application of the test is consistent with the plain language of the Bankruptcy Code, the Court will adopt the predominant purpose test to distinguish between claims involving transactions in services, which would be treated as general unsecured claims, and claims involving the selling of goods, which would be entitled to an administrative priority under § 503(b)(9) of the Bankruptcy Code where the sale occurred within the 20 days prior to the filing of the bankruptcy petition and arose in the ordinary course of the debtor's business.

---

[10] *See also* Applicability of UCC Article 2 to mixed contracts for sale of goods and services, 5 A.L.R 4th 501 (1981).

11

**Conclusion**

For the above reasons, the Court concludes that the UCC definition of "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale," should be applied as the federal definition of the term "goods" for the purposes of interpreting § 503(b)(9) of the Bankruptcy Code. Further, in claims that contain hybrid transactions, the predominant purpose test, as enunciated in *Princess Cruises, supra*, should be used to determine whether a claim is for the selling of "goods" and, hence, correctly classified as a § 503(b)(9) claim, or for the selling of services and should be reclassified as a general unsecured claim.

A separate order shall be issued.

ENTERED: _____

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Kevin R. Huennekens
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE