Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
Circuit City Stores, Inc.,    :   Case No. 08-35653(KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO MOTION FOR ORDER REMOVING THE CAP
ON FEES IMPOSED BY THIS COURT'S JANUARY 20, 2009
RETENTION ORDER AUTHORIZING THE EMPLOYMENT OF GOWLING
LAFLEUR HENDERSON LLP AS CANADIAN COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby submit this objection (the

"Objection") to the Motion For Order Removing The Cap On

Fees Imposed By This Court's January 20, 2009 Retention

Order Authorizing The Employment Of Gowling Lafleur

Henderson LLP As Canadian Counsel To The Official

Committee Of Unsecured Creditors (the "Motion") (Docket

No. 7526).  In support of this Objection, the Debtors

respectfully state as follows:

**BACKGROUND**

**A.    The Debtors' Bankruptcy Cases And The Canadian
       Debtors' Insolvency Cases.**

1.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is For all other Debtors, the address was 9950
Mayland Drive, Richmond, Virginia 23233 and currently is 4951
Lake Brook Drive, Glen Allen, VA 23060.

(the "U.S. Proceedings").  On that same day, in
conjunction with the U.S. Proceedings, InterTAN Canada,
Ltd. ("InterTAN") and Tourmalet Corporation (together,
the "Canadian Debtors"), applied for protection from
their creditors in Canada pursuant to the Companies'
Creditors Arrangement Act, R.S.C. 1985, c. C-36, as
amended (the "CCAA") (the "Canadian Proceedings") in the
Ontario Superior Court of Justice (Commercial List) (the
"Canadian Court").

2.   On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia appointed a statutory committee of unsecured
creditors (the "Committee").  To date, no trustee or
examiner has been appointed in these chapter 11 cases.
Similarly, in connection with the commencement of the
Canadian Proceeding, the Canadian Court issued an
"initial order" pursuant to which it, inter alia,
appointed a monitor.

3.   As this Court is well aware, on January
16, 2009, the Debtors began liquidating their assets and,
since then, have been winding up their remaining affairs.
As part of that process, on or about March 10, 2009, the

Canadian Court entered an Order approving the sale of substantially all of the assets of InterTAN to 4458729 Canada Inc., a subsidiary of Bell Canada.  And, on or about March 20, 2009, this Court entered an Order (Docket No. 2711) approving the sale.

4.   On or about June 30, 2009, the Canadian Debtors closed the sale of substantially all of their assets and businesses and have been working to conclude the claims process, with the expectation that there will be sufficient proceeds from the sale to provide a substantial equity distribution to the Debtors for the benefit of their creditors, although such outcome is not assured.

5.   Since then, the Debtors and the Canadian Debtors have been working to maximize the value of the Debtors' potential equity distributions in the Canadian Proceedings and the potential recovery to the Debtors' estates from the repatriation of such distributions.

**B.    The Joint Plan of Liquidation.**

6.   On September 24, 2009, the Debtors and the Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its

Affiliated Debtors and Debtors In Possession and its
Official Committee of Creditors Holding General Unsecured
Claims (as amended, the "Plan").  Generally, the Plan
provides for the liquidation of the Debtors' remaining
assets and distributions to creditors through a
liquidating trust (the "Liquidating Trust").

7.   The disclosure statement (the "Disclosure
Statement") filed with respect to the Plan was approved
on September 24, 2009.

8.   No confirmation hearing has been held with
respect to the Plan, and the Plan has not yet been
confirmed.

**B.   The Retention of Gowlings.**

9.   On December 22, 2008, the Committee filed
its Application For Entry Of An Order Authorizing And
Approving The Employment Of Gowling Lafleur Henderson LLP
("Gowlings") As Canadian Counsel To The Official
Committee Of Unsecured Creditors Nunc Pro Tunc To
November 18, 2008 (the "Application") (Docket No. 1197).

10.   In the Application, the Committee sought
to retain Gowlings as its Canadian counsel to advise it
with respect to the Canadian Cases.  Specifically, the

Committee sought to retain Gowlings for the following

services:

- Representing the Committee in the Canadian Proceedings and any other related proceedings;

- Assisting the Committee and its advisors in analyzing the Debtors from a Canadian perspective and, if required, in negotiating with the Debtors;

- Assisting with the Committee's investigation of the assets, liabilities, and financial condition of the Canadian Debtors;

- Assisting the Committee's advisors from a Canadian perspective in their analysis of, and negotiations with, the Debtors or any third party concerning matters related to, among other things, formulating the terms of a plan or plans of reorganization for the Debtors;

- Assisting and advising the Committee's advisors with respect to any matters that they may request involving issues of Canadian law or practice;

- Reviewing and analyzing all pleadings, orders, statements of operations, schedules, and other legal documents in the Canadian Proceedings and any other proceedings in Canada related to the Debtors or their property, assets or businesses;

- Preparing, on the Committee's behalf, any pleadings, orders, reports and other legal documents as may be necessary in furtherance of the Committee's interests and objectives regarding Canadian matters; and

- Performing all other legal services as
  described by the Committee and its advisors
  which may be desirable, necessary and proper
  for the Committee to discharge its duties in
  the U.S. Proceedings.

11.   On January 9, 2009, the Debtors filed
their objection to the Application (the "Objection")
(Docket No. 1450).

12.   On January 20, 2009, this Court entered an
agreed order (the "Retention Order") (Docket No. 1667)
resolving the Objection and approving Gowlings' retention
subject to certain agreed upon terms and conditions.
Pursuant to the Retention Order, the Committee was
permitted to retain Gowlings as its Canadian counsel,
retroactive to November 18, 2008, for the services sought
by Gowlings in the Application.  As part of the agreement
with the Debtors, the Retention Order established a cap
on the compensation and reimbursement of Gowlings at the
amount of $150,000 (the "Cap Amount"), and required the
Committee to seek additional authorization for any
expenditures above the Cap Amount.

C.   **Gowlings' First Fee Application.**

13.   On December 14, 2009, after over one year
of being retained, Gowlings filed its First Interim

Application for compensation for services rendered as Canadian counsel to the Committee (the "First Fee Application") (Docket No. 6075), seeking approval and payment of compensation for services provided to the Committee from November 18, 2008 to October 31, 2009 (the "First Fee Period").  Thereafter, on January 27, 2010, the Court entered its Order Allowing Interim Compensation and Expense Reimbursement of Gowling Lafleur Henderson LLP (Docket No. 6375), approving payment to Gowlings of $104,456 in fees and $749.65 in expenses.

14.  To date, Gowlings has not filed any other interim fee applications and has not served any monthly invoices in accordance with the Court's Order Under Bankruptcy Code Sections 105(a) And 331 Establishing Procedures For Interim Compensation (the "Interim Compensation Order") (Docket No. 830).[2]

D.   **Events Subsequent to First Fee Period.**

15.  In or about late October 2009, the Debtors

---

[2]   As part of the Debtors' attempt to resolve issues regarding the present matter consensually, the Debtors requested and obtained invoices from Gowlings, but having failed to resolve a number of outstanding issues with the Committee reserved all rights with respect to objections thereto.

informed the Committee that proceeding to confirmation of the plan of liquidation in November of 2009, as then scheduled, could adversely affect the repatriation of the equity proceeds from InterTAN through possible negative Canadian tax consequences.  As a result, the Debtors and the Committee determined to delay the hearing on the confirmation of the Plan to attempt to address the Canadian tax issues.

16.  Confirmation was delayed, in part, to allow the Canadian Debtors, their professionals, and the Canadian monitor to pursue an advance tax revenue ruling from the Canadian Revenue Administration (the "CRA"), which, if issued, would limit Canadian taxes that may otherwise be attributable to any equity distribution.  In connection therewith, in or about November 2009, the Committee requested that Gowlings become involved with the analysis of the Canadian tax issues.  After Gowlings had an opportunity to review the issues, all parties agreed to submit a request for the proposed ruling.  That proposed ruling did not initially request a ruling on whether the Liquidating Trust would impact the CRA's analysis.

17.   In February 2010, the CRA provided the Canadian Debtors with a draft revenue ruling (the "Draft Ruling") that was consistent with the Canadian Debtors' submissions.  The Canadian Debtors, the Debtors, and the Committee all reviewed the Draft Ruling, and the Canadian Debtors and Debtors were prepared to request that the CRA issue the formal ruling, which ruling would have been issued within a week or so later.  Gowlings and the Committee, however, requested that the Draft Ruling be revised to take into account the formation of a the Liquidating Trust upon confirmation of the Joint Plan.

18.   Although the Canadian Debtors and the Debtors disagreed with this approach because of the fear that it might delay the ruling process, the Canadian Debtors and the Debtors agreed to proceed with Gowlings and the Committee's recommendation.  As a result, Gowlings took it upon itself to prepare a modified ruling request and a memorandum explaining, among other things, the nature of the Liquidating Trust and the Liquidating Trustee's anticipated role.  The modified ruling request has not been approved, and the CRA requested some additional information.

19.   On April 20, 2010, the Committee informed the Debtors via e-mail that, despite the Cap Amount set forth in the Retention Order, Gowlings accrued fees of approximately $450,000 to date -- approximately three times the Cap Amount -- of which $345,000 accrued from November 1, 2009 to April 20, 2010 on account of Gowlings' work on the Canadian tax issues.  The Committee requested that the Debtors immediately agree to a proposed consent order removing the Cap Amount from the Retention Order.  The Debtors did not agree to do so, but sought to review Gowlings' invoices and to resolve the Gowlings matter in the context of finally resolving a number of other outstanding issues, some of which bear on prosecution of the Joint Plan.  Unfortunately, to date the issues have not been resolved.

20.   On May 12, 2010, the Committee filed the Motion seeking to remove the Cap Amount and eliminating the Cap Amount as a basis for objecting to the fees and expenses incurred by Gowlings for period November 1, 2009 to March 31, 2010 and all fees and expenses incurred by Gowlings from and after April 1, 2010.

## OBJECTION

21.  By this Objection, the Debtors request
that this Court deny the Motion and thereby enforce the
Cap Amount with respect to any fees billed or expenses
incurred on or prior to April 20, 2010.  In addition,
although the Debtors do not object to the scope of
Gowlings' retention being expanded to include tax related
matters with respect to services rendered after April 20,
2010, the Debtors request that this Court direct Gowlings
to provide the Debtors and the United States Trustee a
budget for such work and then set a cap either consented
to by the Debtors and the United States Trustee or
approved by this Court.

## BASIS FOR OBJECTION

22.  By its own admission, in November 2009 --
more than six months ago, the Committee requested that
Gowlings become involved with the analysis of the
Canadian tax issues related to the repatriation of equity
proceeds of the sale of InterTAN (the "Tax Services").
Motion at 7 (stating that, in November 2009, the
Committee requested that "Gowlings investigate the nature
and extent of the Canadian tax concerns and work with the

12

Debtors' [and the Canadian Debtors'] various
professionals to develop a solution allowing for plan
confirmation to proceed and the [InterTAN] equity
proceeds to be distributed to the Debtors in a tax
efficient manner").  The Committee admits that the Tax
Services were not part of the scope of services for which
Gowlings was originally retained under the Retention
Order.  Motion at 8 (stating that the Cap Amount was set
when "it was anticipated that Gowlings' work would be
limited to monitoring the InterTAN Canada sale process
and Canadian insolvency proceedings" and admitting that
the "scope of Gowlings' services to the Committee
expanded significantly" due to the "Canadian tax issues").
Thus, by the Committee's own admission, Gowlings was not
previously retained to provide the Tax Services.
Consequently, the Committee was required to obtain this
Court's prior approval before expanding the scope of
Gowlings' retention and burdening the Debtors' estate
with additional fees.

23.  Through the Motion, the Committee is thus
seeking to retroactively expand the scope of Gowlings'
retention.  The Debtors submit that it is inappropriate

in these circumstances to grant the Committee's requested relief.

24.   Moreover, even assuming that Gowlings' scope of services in the Retention Order did include the Tax Services, by requesting that this Court remove the Cap Amount, the Committee is nonetheless seeking to retroactively retain Gowlings, albeit on different terms. Again, the Committee was required to seek this Court's pre-approval to change the terms of Gowlings' fee relationship.  Specifically, the Committee was required to seek this Court's approval to increase (or remove) the Cap Amount before Gowlings exceeded the Cap Amount. Indeed, the Retention Order plainly provided as much. Retention Order at 3 (stating that the Committee can "seek additional authorization for expenditures above the Cap Amount in the future").

25.   Instead, the Committee requested that the Debtors (and now this Court) consent to increasing (and removing) the Cap Amount only after Gowlings incurred fees and expenses well in excess of the Cap Amount. Again, the Debtors submit that it is inappropriate in

14

these circumstances to grant the Committee's requested
relief.

        26.   Finally, because Gowlings did not, and has
not, complied with the Interim Compensation Order, the
Debtors maintain that any expansion of Gowlings'
retention to include Tax Services rendered after April 20,
2010 should be expressly conditioned upon Gowlings
providing the Debtors and the United States Trustee with
an estimated budget for future services, which budget
will be used to set a cap for future fees and services
that Gowlings may not exceed without <u>prior</u> Court approval.

**APPLICABLE AUTHORITY**

**I.   GOWLINGS' RETENTION MAY NOT PROPERLY BE EXPANDED
        RETROACTIVELY.**

        **A.   Standard For Retroactive Retention.**

        27.   Under Bankruptcy Code section 1103(a), a
creditor's committee is permitted to employ professional
persons "with the court's approval."  11 U.S.C. § 1103(a).
This provision parallels Bankruptcy Code section 327(a),
which permits the trustee to employ professional persons
"with the court's approval."  <u>See</u> 11 U.S.C. § 327(a).
Federal Rule of Bankruptcy Procedure 2014(a) provides

15

than an "order approving the employment" of professional

persons "shall be made only on application of the trustee

or committee[.]"  Fed. R. Bankr. P. 2014(a).

        28.   In construing these provisions, courts

have consistently held that "retention of a professional

must be approved by the court in advance of the services

to be performed."  In re Renaissance Residential of

Countryside, LLC, 423 B.R. 848, 858 (Bankr. N.D. Ill.

2010) (emphasis added).  This pre-approval requirement

applies not only for trustees and debtors under

Bankruptcy Code section 327(a), but also for committees

under Bankruptcy Code section 1103.  See In re Arkansas

Co., 55 B.R. 384, 385 (D. N.J. 1985) (discussing official

committee's failure to seek court approval before work,

which was "required by 11 U.S.C. § 1103 and other

sections of the Bankruptcy Code"); see also In re Fleeman,

73 B.R. 579, 582 (Bankr. M.D. Ga. 1987) (denying

compensation for counsel to unsecured creditors'

Committee for "professional services rendered prior to

his court appointment").  Indeed, as this Court recently

concluded, "[a] professional who performs services . . .

without first securing an order approving employment will

16

be treated as a volunteer notwithstanding that the
services rendered may have been beneficial to the
bankruptcy estate."  In re Rennie Petroleum Corporation,
384 B.R. 412, 415 (Bankr. E.D. Va. 2008) (Huennekens, J.).

     29.  Upon a showing of "extraordinary
circumstances", however, a court "may permit retroactive
employment[.]"  In re Southeastern Materials, Inc., Case
No. 09-52606, 2010 WL 521121, *1 (Bankr. M.D.N.C. Feb. 12,
2010) (emphasis added); see also In re Torrence Company,
Inc., Case No. 067-30637, 2007 Bankr. LEXIS 167, *4
(Bankr. E.D. Va. Jan. 11, 2007) ("Retroactive employment
can be authorized only when" extraordinary circumstances
exist).  This Court generally applies a two-part test to
determine whether "extraordinary circumstances" exist.
Rennie, 384 B.R. at 416 (discussing a "two-part test for
determining when extraordinary circumstances would permit
retroactive employment").  "That test requires (1) the
professional to satisfactorily explain the failure to
obtain prior approval of employment and (2) the
professional to meet the requirements set forth in § 327
and Rule 2014(a), aside from that of obtaining timely
court appointment."  Id.  (citing In re Tidewater

Memorial Hospital, Inc., 110 B.R. 221, 226 (Bankr. E.D.
Va. 1990)); see also Torrence, 2007 Bankr. LEXIS 167 at
*4; In re Tamojira, Inc., 210 B.R. 702, 706 (Bankr. E.D.
Va. 1995).  In certain circumstances, this Court has also
considered additional factors: "(3) whether notice was
provided to creditors and other parties in interest, (4)
whether there are objections to retroactive entry of the
order, and (5) whether harm will befall the estate or
other parties in interest."  In re Don's Trucking, Inc.,
Case No. 96-36286-S, 1997 WL 33807881, *2 (Bankr. E.D. Va.
Sep. 29, 1997).

      30.  Finally, the proponent of the motion for
retroactive approval, here, the Committee, "bears the
burden to establish that the test has been met."  Rennie,
384 B.R. at 416.

    **B.**   **The Committee Has Failed To Meet Its Burden To
Establish That Extraordinary Circumstances
Exist.**

      31.  As previously discussed, the Committee
admits that the Tax Services were not part of the scope
of Gowlings' retention under the Retention Order.
Despite the limits on Gowlings' retention, the Committee
requested that Gowlings provide the Tax Services without

seeking the Court's approval for such expanded retention
in advance.  Through the Motion, the Committee is seeking
to expand the scope of services and remove the Cap Amount
almost six months after Gowlings started performing the
Tax Services and after Gowlings already exceeded the Cap
Amount.  Thus, the Committee is seeking this Court's
retroactive approval of the retention of Gowlings for the
Tax Services.

32.  As set forth above and discussed below, to
do so, the Committee must satisfy five factors.  The
Committee has not, and cannot do, demonstrate that these
factors are satisfied.

**1.    Gowlings has not satisfactorily explained
its failure to seek prior Court approval.**

33.  To date, neither Gowlings nor the
Committee has provided a satisfactory explanation for
Gowlings' failure to obtain prior court approval of the
Tax Services.  In the Motion, the Committee argues that
"changed circumstances necessitated an increase in the
scope of services the Committee has requested that
Gowlings render in connection with resolution of
important Canadian tax issues . . . ."  Motion at 6.

This does not, however, address why neither the Committee
nor Gowlings sought a court order approving Gowlings'
retention for the Tax Services in November 2009, when the
Committee first realized these changed circumstances and
requested that Gowlings perform the Tax Services.  Nor
does it address why Gowlings and the Committee waited an
additional six months, until after Gowlings generated
fees and expenses well in excess of the Cap Amount, to
request that the Court remove the Cap Amount.  Thus, the
Court must conclude that there is no satisfactory
explanation for the Committee's failure to make a timely
request to either expand Gowlings' services or raise the
Cap Amount. See, e.g., Southeastern Materials, 2010 WL
521121 at *1-2 (no satisfactory explanation where debtor
waited 33 days to file an application for employment);
Don's Trucking, 1997 WL 33807881 at *2 (finding that
special counsel "has not satisfactorily explained why
there has been such a large gap between the time she
commenced working, and the time she sought approval from
this Court" where the professional waited over a month to
seek retroactive approval).

20

34.  Nor is a satisfactory explanation provided
by the Committee's assertion that "Gowlings has provided
valuable services to the Committee that has materially
enhanced the Debtors' and Committee's ability to move
forward with the confirmation of the Plan."  Motion at 8.
While the Debtors may well dispute the benefits of the
services provided by Gowlings,[3] the fact that some
benefit may have been conferred on the Debtors, the
Committee or the estates does not establish a
satisfactory explanation for the Committee's failure to
obtain prior court approval.  See, e.g., Torrence, 2007
Bankr. LEXIS 167 at *5 ("The court does not question that
the services rendered by [counsel] were beneficial to the
debtor" but "it is impossible for the court to find
satisfactory counsel's explanations for failure to timely
file an employment application.").

35.  As admitted by the Committee, "Gowlings
recognizes that it should have promptly informed the

---

[3]  As discussed above, Gowlings and the Committee elected to proceed
with a process in Canada that has not yielded any revenue ruling
from the CRA.  All revised rulings that have been submitted have
been met with considerable resistance and have required
additional analysis by all parties and the CRA.  More importantly,
perhaps, at this point, there is no assurance that the CRA will
issue the revised ruling that Gowlings has prepared.

Committee when it exceeded the Cap Amount so that the
Committee could seek further Court authorization for
amounts in excess of the Cap Amount." Motion at 8.  The
fact that Gowlings was aware that it needed to seek court
approval, yet failed to do so or inform the Committee
until months afterwards, further indicates the lack of a
satisfactory explanation.

36.   Indeed, in Don's Trucking, this Court
found against a satisfactory explanation in similar
circumstances.  1997 WL 33807881 at *2.  In finding no
satisfactory explanation, the court noted that the
special counsel "ignored her duty to communicate with
Debtor's counsel until being notified" of court approval
requirements, "more than a month elapsed between that
explicit notification and the filing of the application,"
and it was "Debtor's counsel, not [special counsel], who
eventually sought approval for her application."  Id.
Based on the foregoing, the court found "negligence [that]
does not excuse the failure to seek court approval for
employment."  Id.

37.   For these reasons, Gowlings and the
Committee have failed to satisfy the first element.

**2.   Gowlings has failed to meet the requirements set forth in Rule 2014(a).**

38.   While the Debtors do not contest that Gowlings meets the requirements set forth in Bankruptcy Code section 327 aside from the failure to timely obtain the Court's approval for Gowlings to provide the Tax Services, Gowlings has failed to meet two important requirements of Bankruptcy Rule 2014(a) -- an application identifying the change in approved scope of Gowlings' services and the change in the nature of Gowlings' fee arrangement.  <u>See</u> Fed. Bankr. R. 2014(a).  Specifically, since November 2009, Gowlings and the Committee failed to disclose to the Debtors, other parties in interest, and the Court that Gowlings had not been previously retained to provide Tax Services and that the Committee would seek an alternate fee arrangement with the Gowlings.

39.   Moreover, with respect to Gowlings' fee arrangement, in mid-December, the Committee was put on notice when Gowlings filed the First Interim Fee Application that Gowlings fee arrangement may need to be altered.  Yet, neither the Committee nor Gowlings took any action for more than four months after the First

23

Interim Fee Application was filed.  In addition, Gowlings compounded the problem by not submitting monthly invoices in accordance with the Interim Compensation Order.

40. Accordingly, the Committee and Gowlings have failed to satisfy the second element.

### 3. Gowlings did not provide notice to creditors and other parties in interest.

41. Gowlings failed to provide notice to the Debtors, creditors, and other parties in interest that the Tax Services exceeded the scope of its original retention.  Indeed, the Committee even acknowledges that Gowlings waited until April 2010, almost six months after originally being requested to provide the Tax Services, to notify the Committee that it had exceeded the scope of its original retention.  See Motion at 5 ("In the middle of April 2010, Gowlings informed the Committee that it had exceeded the Cap Amount").  And it was at that time that the Committee first informed the Debtors.

42. Accordingly, Gowlings and the Committee have failed to satisfy the third element.

### 4. The Debtors have objected to Gowlings' retroactive retention.

43.  By this Objection, the Debtors are
objecting to the Motion.  Consequently, Gowlings and the
Committee have failed to meet the fourth element.

**5.    Retroactive retention of Gowlings will
         harm the Debtors' estates and parties in
         interest.**

44.  If the Motion were granted, the Debtors,
their estates, and parties in interest will be prejudiced.
Gowlings and the Committee waited until six months after
Gowlings started to perform the Tax Services to file the
Motion and notify the Debtors and other parties in
interest that the Tax Services exceeded the scope of
Gowlings' original retention.  By that point, Gowlings
had generated fees and expenses approximately three times
the Cap Amount without this Court's approval or the
Debtors' consent.

45.  If the Motion were granted, the Debtors'
estates will be liable for these fees and expenses, which
were not expected.  Indeed, during the almost year-long
First Fee Period, Gowlings only generated approximately
$105,000 in fees and expenses, yet generated
approximately $345,000 in the six months since November
2009 on account of the Tax Services.  Consequently, the

25

Debtors could not have reasonably expected that Gowlings
would incur approximately $345,000 during half the time
period it took Gowlings to incur $105,000.

46.  Moreover, the inability to enforce the
Retention Order and Cap Amount after they have already
been violated will result in forcing the Debtors' estates
to sustain such costs, diminishing the value of their
estates and thus the potential recovery of parties in
interest.  While the Committee asserts in the motion that
the Debtors and other parties may "object to the
allowance and payment of fees and expenses" on grounds
other than the Cap Amount, <u>Motion</u> at 7, such parties will
still be harmed by having to sustain the burden of
objecting to the individual elements of Gowlings' fees
and expenses, after the fact, rather than being able to
enforce the Retention Order and Cap Amount previously set
by this Court.

47.  Moreover, the pre-approval requirement is
"designed so as to permit parties in interest to
understand . . . the extent to which the estate may be
depleted by the employment of the proposed professional."
<u>Rennie Petroleum</u>, 384 B.R. at 417.  Pre-approval "affords

the Court as well as parties in the case the opportunity
to assess the wisdom or propriety of using estate assets
in the manner proposed."  Id. at 416.  If the Motion is
granted, however, the Debtors and parties in interest
will be deprived of these safeguards as to the
retroactively approved Tax Services.

48.    Accordingly, Gowlings and the Committee
have failed to satisfy the fifth and final element.  As a
result, the Motion should be denied.

## II.   INCREASING OR REMOVING THE CAP AMOUNT SHOULD NOT BE RETROACTIVELY APPROVED.

49.    Even if the Tax Services were part of
Gowlings' original employment scope, the Committee would
still have been required to seek pre-approval to increase
the Cap Amount.  In that regard, the terms of a retained
professional's compensation are governed by Bankruptcy
Code section 328(a), which provides that professionals
may be retained "on any reasonable terms and conditions
of employment" as long as it is done "with the court's
approval."  11 U.S.C. § 328(a).  The Court may approve
compensation of such professionals, after notice and a

hearing, either on a final or interim basis.  See 11

U.S.C. §§ 330, 331.

50.   Pursuant to these provisions, courts have

generally denied compensation to professionals who fail

to obtain prior court approval.  "A professional person

may be compensated from the bankruptcy estate in a

Chapter 11 case only if the professional's employment was

properly authorized by the court pursuant to 11 U.S.C. §§

327 or 1103."  Rennie, 384 B.R. at 415; see also Torrence,

2007 Bankr. LEXIS 167 at *2-3 ("when read together, §§

330, 327 and Rule 2014(a) clearly require that in order

for an attorney or other professional to be awarded fees

or costs . . . the attorney or professional's employment

must have been previously approved by the bankruptcy

court . . . .") (citations omitted); Tidewater, 110 B.R.

at 224 (Bankr. E.D. Va. 1990) ("an attorney or other

professional may not be compensated in a bankruptcy case

unless appointed by order of the court").

51.   This general rule has a narrow and limited

exception.  Indeed, as is the case with retroactive

retention, "[t]he court may . . . award retroactive fees

and costs when 'extraordinary circumstances' exist."

28

_Torrence_, 2007 Bankr. LEXIS at *3; _see also_ _Rennie_, 384

B.R. at 416 ("courts may award compensation

notwithstanding the failure to comply with the clear

requirements of § 327 of the Bankruptcy Code, but only in

extraordinary circumstances").  The factors governing

whether "extraordinary circumstances" exist for purposes

of awarding retroactive fees and costs are the same as

for retroactively approving retention of professionals.

_See_, _e.g._, _Torrence_, 2007 Bankr. LEXIS at *3-5 (denying

counsel's application for retroactive fees and costs

because of failure to meet the extraordinary

circumstances test); _Tidewater_, 110 B.R. at 226-29

(denying law firm's application for retroactive

compensation due to failure to meet the extraordinary

circumstances test).

        52.  By the Motion, the Committee is asking the

Court to remove the Cap Amount set in the Retention Order

and to eliminate the Cap Amount as a basis for objecting

to the fees and expenses that Gowlings already generated,

in excess of the Cap Amount, through its provision of the

Tax Services.  Such relief will retroactively alter the

fee structure that was approved in the Retention Order,

as parties may no longer rely on the Cap Amount as a
basis for objecting to the fees and expenses generated by
Gowlings in excess of the Cap Amount.  This is tantamount
to retroactive approval of the fees and expenses
generated by Gowlings in excess of the Cap Amount.

53.  For substantially similar reasons to those
discussed above in regard to retroactive retention,
neither the Committee nor Gowlings have satisfied the
five elements necessary to establish the existence of
extraordinary circumstances.  Accordingly, the Motion
should be denied.

**III.  THE COURT SHOULD SET A NEW CAP AMOUNT AND RELATED
RESTRICTIONS.**

54.  Bankruptcy Code section 328(a) provides in
relevant part that, "a committee appointed under section
1102 of this title, with the court's approval, may employ
or authorize the employment of a professional person . . .
on any reasonable terms and conditions of
employment . . . ." 11 U.S.C. § 328(a).  Under this
provision, "courts have recognized their ability to alter
the terms and conditions of a professional retention
agreement prior to the 'conclusion of such employment.'"

In re Gander Mountain, Inc., 202 B.R. 613, 614 (Bankr.

E.D. Wisc. 1996); In re Allegheny International, Inc.,

100 B.R. 244, 246 (Bankr. W.D.Pa. 1989) ("Although

section 328(a) specifically refers to altering

professional compensation 'after the conclusion of such

employment,' it would be absurd to conclude that we must

wait until the conclusion of such employment, when the

court realizes that it has acted improvidently in

approving the terms and conditions of such employment").

55.  In addition, Bankruptcy Code section 105(a)

provides that "[t]he court may issue any order, process,

or judgment that is necessary or appropriate to carry out

the provisions of this title."  11 U.S.C. § 105(a).  This

section "authorizes the courts to use fee caps" on the

compensation of professionals.  Gander, 202 B.R. at 614

(setting "caps for all professionals seeking employment

and/or payment pursuant to 11 U.S.C. §§ 327-330" which

"shall not be exceeded without prior court order").

Moreover, the Court may require professionals to perform

in accordance with budgets.  See, e.g., In re Pilgrim's

Pride Corp., 407 B.R. 211, 214, 222 (Bankr. N.D. Tex.

2009) (court requested that ad hoc shareholders group

31

"propose a budget for an official committee of equity

holders" after which it determined a budget on the

committee's expenses).

56.    Here, the Debtors submit that a new fee

cap and budget are appropriate given that Gowlings

provided the Tax Services for which it was not previously

retained, incurred fees nearly three times the Cap Amount

without this Court's approval, and failed to file monthly

fee applications in accordance with the Interim

Compensation Procedures.

57.    Accordingly, the Debtors do not object to

the scope of Gowlings' retention being expanded to

include Tax Services rendered after April 20, 2010, but

request that the Court (i) require Gowlings to provide

the Debtors and the United States Trustee with a budget

for its future fees and expenses; (ii) set a cap on

future fees and expenses at an amount that is either (x)

consented to by the Debtors and the United States Trustee

or (y) fixed by the Court; and (iii) require Gowlings to

submit monthly invoices in accordance with the Interim

Compensation Order no later than 45 days following month

end.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request
that the Court (i) sustain this Objection, (ii) deny the
Motion and (iii) grant the Debtors such other and further
relief as is just and proper.

```
Dated: June 1, 2010          SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia    FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

                                     - and -

                             SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Chris L. Dickerson, Esq.
                             155 North Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                                     - and -

                             MCGUIREWOODS LLP


                             /s/ Douglas M. Foley          .
                             Douglas M. Foley (VSB No. 34364)
                             Sarah B. Boehm (VSB No. 45201)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                             Counsel for Debtors and Debtors
                             in Possession
```