**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al.,[1] | Case No. 08-35653-KRH |
| Debtors. | (Jointly Administered) |

**OFFICIAL COMMITTEE OF CREDITORS' RESPONSE TO DEBTORS' MOTION FOR ORDER DIRECTING MEDIATION WITH RESPECT TO FIRST AMENDED JOINT PLAN OF LIQUIDATION OF CIRCUIT CITY STORES, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION AND ITS OFFICIAL COMMITTEE OF CREDITORS HOLDING GENERAL UNSECURED CLAIMS**

The Committee supports mediation. In fact, before the Committee received a copy of the Motion, the Committee informed the Debtors that the Committee consented to appointment of a mediator to attempt to resolve outstanding disputes between the Debtors and the Committee that have bogged down what should be, other than the Canadian tax issues, a straightforward plan of liquidation. As discussed below, the Committee decided to file its own plan only after months of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City West Coast is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

| | |
|---|---|
| Richard M. Pachulski (CA Bar No. 90073) | Lynn L. Tavenner (VA Bar No. 30083) |
| Robert J. Feinstein (NY Bar No. RF – 2836) | Paula S. Beran (VA Bar No. 34679) |
| Jeffrey N. Pomerantz (CA Bar No. 143717) | Tavenner & Beran, PLC |
| Pachulski Stang Ziehl & Jones LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard, 11th Floor | Richmond, VA 23219 |
| Los Angeles, CA 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy: (804) 783-0178 |
| Telecopy: (310) 201-0760 | |
| | |
| Counsel for the Official | Co-Counsel for the Official |
| Committee of Unsecured Creditors | Committee of Unsecured Creditors |

12304-002\DOCS_LA:220852.2

never-ending negotiations with the Debtors during which the Debtors continuously raised new issues, some unrelated to the plan process itself, that made an ultimate agreement with the Debtors a moving target. The Debtors' intransigence with respect to certain fundamental issues regarding post effective date liquidating trust governance issues makes the Committee question whether mediation will be productive. The Committee is, however, willing to participate in the process provided it can occur expeditiously and will encompass all outstanding issues between the parties regarding the plan process and not be limited to the Joint Plan.

The Committee does not believe it will be useful at the June 8 hearing to engage in a point and counterpoint discussion of the parties' positions. Mediation will afford both sides ample opportunity to present their respective views. The Committee, however, feels compelled to submit this statement to provide the Court with its perspective of the events that have led to the parties' request for judicial intervention to resolve their disputes which differ markedly from the Debtors' perspective set forth in the Motion.

After the Debtors ceased business operations and commenced liquidating their assets, the Committee's goal was to seek prompt confirmation of a liquidating plan. Thereafter, and over the next few months, the Debtors and the Committee proceeded to negotiate the terms of a plan of liquidation. The plan was rather unremarkable and contained provisions that can be found in hundreds of liquidating plans filed throughout the United States. Essentially the plan contemplated transferring all of the Debtors' assets to a liquidating trust upon confirmation of the plan. The liquidating trustee, under the supervision of an oversight committee, was charged with liquidating remaining assets, pursuing causes of action, resolving claims and distributing available cash to creditors pursuant to the priority scheme provided for in the Bankruptcy Code. As is customary with liquidating plans, the Committee negotiated the right to identify the

liquidating trustee. Even so, the Committee agreed and received the consent of the Debtors of the Committee's choice of liquidating trustee. In addition, after extensive negotiation, the Debtors and the Committee agreed that the oversight committee would be comprised of six members of the Committee and one member to be chosen by the Debtors with the Committee's consent. The Debtors' and the Committee's joint plan was filed with the Court in August 2009.

The Committee believed – in retrospect wrongly – that, except for the identity of the seventh member of the oversight committee it and the Debtors had agreed to all material terms of the plan when the plan was filed with the Court in August 2009. While the Committee was amenable to providing the Debtors with proposed by laws which would govern the oversight committee's post effective date operation, it expected – again wrongly – that such by laws would be mundane and non controversial. As the plan confirmation process was placed on hold by the Canadian tax issues from November 2009 through the first quarter of 2010, the Committee felt no urgency to circulate the by laws just as the Debtors and the Committee saw no urgencies to address the pending plan confirmation objections or make technical amendments to the plan or the liquidating trust agreement.

As a path towards confirmation which addressed the Canadian tax issues began to take shape in the Spring of 2010, the parties refocused on the plan confirmation process. As such discussions progressed, it became evident to the Committee that the Debtors were erecting further roadblocks to confirmation and introducing new issues, some of which were extraneous to the plan process itself. Each time the Committee thought that it reached agreement on all material plan confirmation issues, the Debtors would introduce new issues which required resolution before the Debtors would agree to proceed.

The principal dispute between the Debtors and the Committee has been regarding the post effective date governance of the liquidating trustee and oversight committee. Even though there is no chance of equity holders receiving any distribution under a plan, the Debtors' board of directors elected by the equity holders insisted on exerting control over the post effective date operation of the liquidating trust and oversight committee that are extraordinary, unwarranted and unprecedented for a straightforward, albeit large, liquidating case. The Committee has been provided no justifiable reason for the Debtors' continued attempts to control the liquidation process which impinges on the oversight committee's role in supervising the liquidating trustee's conduct. The Committee's position is clear – as the equity holders are out of the money, the post effective date administration of the Debtors' estate should be left to the discretion of the liquidating trustee under the supervision of an oversight committee comprised mostly of creditor representatives operating by simply majority vote. The Debtors' conduct has resulted in the estates incurring substantial unnecessary professional fees and now threatens to cause protracted litigation over competing plans.

The Committee filed its proposed plan and related governance documents on June 1, 2010 and is prepared to move expeditiously towards confirmation of its plan. The Committee's decision to file its own plan was not made lightly. The Committee believed that in light of their efforts to resolve the matter and the Debtors' intransigence, continued negotiations with the Debtors would be futile and that the creditors, and ultimately the Court, should decide which

plan of liquidation is in the best interests of the estates.  The Committee is, however, willing, to attempt to resolve all outstanding issues regarding the plan process through mediation provided that the mediation can occur quickly so as to not further delay the plan confirmation process.

OFFICIAL COMMITTEE OF CREDITORS
HOLDING GENERAL UNSECURED CLAIMS


*/s/ Paula S. Beran*
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: 804-783-8300
Facsimile: 804-783-0178
Email: ltavenner@tb-lawfirm.com
       pberan@tb-lawfirm.com

-and-

Richard M. Pachulski (CA Bar No. 90073)
Robert J. Feinstein (NY Bar No. RF-2836)
Jeffrey N. Pomerantz (CA Bar No. 143717)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 805-123-4567
Facsimile: 310/201-0760
E-mail:rfeinstein@pszjlaw.com
       jpomerantz@pszjlaw.com

Counsel for Official Committee of
Unsecured Creditors Holding Unsecured Claims

CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on June 1, 2010, a true and correct copy of the above and foregoing Response was served on all parties receiving notice through the Court's ECF system.

         */s/ Paula S. Beran*
        Lynn L. Tavenner (VA Bar No. 30083)
        Paula S. Beran (VA Bar No. 34679)
        TAVENNER & BERAN, PLC
        20 North Eighth Street, 2nd Floor
        Richmond, Virginia 23219
        Telephone: 804-783-8300
        Facsimile: 804-783-0178