| | |
|---|---|
| Gregg M. Galardi, Esq. | Douglas M. Foley (VSB No. 34364) |
| Ian S. Fredericks, Esq. | Sarah B. Boehm (VSB No. 45201) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

  - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                         :   Chapter 11
                               :
Circuit City Stores, Inc.,     :   Case No. 08-35653(KRH)
et al.,                        :
                               :
           Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' LIMITED OBJECTION TO APPLICATION
FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE
EMPLOYMENT OF ARSENE TAXAND AS SPECIAL FRENCH TAX
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS NUNC PRO TUNC TO APRIL 28, 2010**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby submit this limited objection (the "Objection") to the Application For Entry Of An Order Authorizing And Approving The Employment Of Arsene Taxand As Special French Counsel To The Official Committee Of Unsecured Creditors Nunc Pro Tunc To April 28, 2010 (the "Application") (Docket No. 7624).  In support of this Objection, the Debtors respectfully state as follows:

## BACKGROUND

**A.    The Debtors' Bankruptcy Cases And The Canadian Debtors' Insolvency Cases.**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  On that same day, in

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

conjunction with the filing of the Chapter 11 Cases, InterTAN Canada, Ltd. ("InterTAN Canada") and Tourmalet Corporation (together, the "Canadian Debtors"), applied for protection from their creditors in Canada pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "CCAA") (the "Canadian Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

2.  On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.  Similarly, in connection with the commencement of the Canadian Proceedings, the Canadian Court issued an "initial order" pursuant to which it, inter alia, appointed a monitor (the "Canadian Monitor").

3.  As this Court is well aware, on January 16, 2009, the Debtors began liquidating their assets and, since then, have been winding up their remaining affairs.  As part of that process, on or about March 10, 2009, the Canadian Court entered an Order approving the sale of

substantially all of the assets of InterTAN Canada to 4458729 Canada Inc., a subsidiary of Bell Canada. In conjunction therewith, on March 20, 2009, this Court entered an order approving the Canadian sale (Docket No. 2711).

4. On or about June 30, 2009, the Canadian Debtors closed the sale of substantially all of their assets and businesses and have been working to conclude the claims process. The Canadian Debtors and the Debtors expect that there will be sufficient proceeds from the sale to pay Canadian creditors' claims in full and with interest. Additionally, the Canadian Debtors expect to provide a substantial return of capital to the Debtors. Such outcome is not assured, however, as the return of capital to the Debtors may only be made if all claims in the Canadian Proceedings are paid in full.

5. To facilitate the return of capital to the Debtors, the Canadian Debtors and Monitor, the Debtors and the Committee have been working together to address potential liabilities and legal issues associated therewith.

**B.    The Plans Of Liquidation.**

6.    On September 24, 2009, the Debtors and the Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as amended, the "Joint Plan").  Generally, the Joint Plan provides for the liquidation of the Debtors' remaining assets and distributions to creditors through a liquidating trust (the "Liquidating Trust").

7.    The disclosure statement (the "Disclosure Statement") filed with respect to the Joint Plan was approved on September 24, 2009.

8.    On June 1, 2010, the Committee filed the Plan of Liquidation Proposed by the Official Committee of Creditors of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession (the "Committee Plan"). Generally, the Committee Plan provides for the liquidation of the Debtors' remaining assets and distributions to creditors through the Liquidating Trust, but on different terms from the Joint Plan.

9. No confirmation hearing has been held with respect to the Joint Plan or Committee Plan, and neither plan has yet been confirmed.

**C. The Relationship Between The Debtors And Certain Foreign Subsidiaries.**

10. Circuit City Stores, Inc. ("Circuit City") is the direct or indirect parent of all of the other Debtors. As the result of a multi-step transaction in May 2004, Circuit City, through various subsidiaries, acquired the InterTAN Canada and its subsidiaries, including InterTAN Canada's 99.9% of interest in a dormant French partnership -- InterTAN France SNC ("InterTAN France").[2]

11. Specifically, on or about March 30, 2004, Circuit City and a wholly-owned subsidiary, Winston Acquisition Corporation ("Winston") entered into an Acquisition Agreement and Plan of Merger with InterTAN, Inc. ("Old InterTAN") (the "Acquisition Agreement") pursuant to which Winston would purchase all the outstanding shares of Old InterTAN's common stock and,

---

[2] The remaining .1% ownership interest is held by InterTAN Canada's subsidiary 587225 Ontario Ltd.

6

thereafter, merge with Old InterTAN to form InterTAN, Inc. -- the Debtor ("New InterTAN").  At that time, Old InterTAN was parent of InterTAN Canada and indirectly the parent of InterTAN Canada's affiliates and subsidiaries.

12.   To facilitate the merger, Circuit City also caused two other subsidiaries -- Ventoux International, Inc. ("Ventoux") and Tourmalet -- to be formed.

13.   Once the merger and related transactions were completed, from top to bottom, the corporate structure was as follows:  Circuit City wholly owned Ventoux; Ventoux wholly owned Tourmalet and owned all of the outstanding common shares of New InterTAN; Tourmalet owned all of the preferred shares of New InterTAN; New InterTAN owned InterTAN Canada; InterTAN Canada continued to own 99.9% of the partnership interests in InterTAN France; and 587225 Ontario Ltd. continued to own 0.1% of the partnership interests in InterTAN France.

**D.   Events Subsequent To The Merger.**

14.   At the time of the merger, InterTAN Canada had ceased doing business in France and its "French permanent establishment" had been judicially liquidated

in France, but had not been officially dissolved.  In addition, InterTAN France had ceased doing business and had been judicially liquidated in France, but had not been officially dissolved.

15.   In connection with the close of Circuit City's 2007 fiscal year and in furtherance of changes in U.S. GAAP under FIN 48, Circuit City established a reserve on account of a potential French tax liability associated with the dissolution and liquidation of InterTAN Canada and InterTAN France.

16.   As part of the ongoing claim reconciliation and wind down in Canada, the Debtors, the Canadian Debtors, the Canadian Monitor, the Committee, and their professionals, have been investigating the validity and extent of any potential French tax liability. If InterTAN Canada is liable to France for any taxes, that liability will likely adversely affect the return of capital to the Debtors and their estates.

**E.    The Retention of Arsene Taxand.**

17.    As part of the Canadian Proceedings, the Canadian Debtors have retained French tax counsel.  In addition to the Canadian Debtors' French tax counsel, recently, the Canadian Monitor elected to retain French counsel to analyze potential French tax liabilities and to work in conjunction with the Canadian Debtors' French counsel.  Consequently, there are currently two French professionals analyzing potential French tax liabilities.

18.    On April 28, 2010, the Committee elected to retain Arsene Taxand as its special French tax counsel in order to review the potential French tax liabilities.  On May 21, 2010, the Committee filed the Application, seeking to retain Arsene Taxand, <u>nunc pro tunc</u> to April 28, 2010.

19.    At this time, the Debtors have not retained separate French counsel.

**OBJECTION**

20.    Although the Debtors believe the retention of Arsene Taxand may be premature, the Debtors do not object to the retention of Arsene Taxand on a limited basis.  Accordingly, by this Objection, the Debtors

9

request that the Court impose reasonable restrictions on Arsene Taxand's retention.

**BASIS FOR OBJECTION**

21. The Committee seeks to retain Arsene Taxand as special French tax counsel to assist the Committee with understanding a potential French tax liability that could be due by InterTAN Canada, an entity that is not a Debtor in the Chapter 11 Cases. Since the potential French tax liability became an issue, the Canadian Debtors and their professionals and the Canadian Monitor and its professionals have been actively involved in the process of understanding the potential French tax liability. As part of that process, the Canadian Debtors and the Canadian Monitor have kept the Debtors and the Committee informed. Until that process is concluded, the Debtors believe that it may be premature to retain Arsene Taxand as Arsene Taxand's services may duplicative and unnecessary.

22. The Debtors do, however, realize that the Debtors' creditors have an ultimate interest in recoveries from the Canadian Debtors' estates. And the Committee, as one representative for certain of the

Debtors' creditors, has expressed an interest in remaining informed and developing a better understanding of the issues. Consequently, the Debtors do not have an objection to the Committee's retention of Arsene Taxand at this time on the condition that this Court impose certain reasonable restrictions on Arsene Taxand's retention. Specifically, the Debtors request that (i) Arsene Taxand provide the Debtors and the U.S. Trustee with a proposed budget; (ii) Arsene Taxand advise the Debtors of any material deviation from the budget as soon as practicable; (iii) Arsene Taxand timely submit fee applications in accordance with this Court's rules and orders; (iv) this Court impose a cap on Arsene Taxand's fees and expenses in the amount of $25,000; and (v) Arsene Taxand seek the Debtors and the U.S. Trustee's consent or court approval to exceed the cap prior to incurring any fees and expenses in excess of the cap.

23. The Debtors arrived at the $25,000 cap amount based on the fact that the Canadian Debtors' French tax counsel has billed the Canadian Debtors fees and expenses totaling €26,720.50 or approximately $32,155.64 through March 30, 2010. Because Arsene Taxand

11

would be working on the same French tax issues as the Canadian Debtors' French tax counsel, the Debtors submit that a $25,000 cap is appropriate.

24. In light of the foregoing, the Debtors submit that these restrictions are reasonable and appropriate and should be approved.

**APPLICABLE AUTHORITY**

25. Bankruptcy Code section 328(a) provides in relevant part that, "a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person . . . on any reasonable terms and conditions of employment . . . ." 11 U.S.C. § 328(a). Under this provision, "courts have recognized their ability to alter the terms and conditions of a professional retention agreement prior to the 'conclusion of such employment.'" In re Gander Mountain, Inc., 202 B.R. 613, 614 (E.D. Wisc. 1996); In re Allegheny International, Inc., 100 B.R. 244, 246 (Bkrtcy. W.D.Pa. 1989) ("Although section 328(a) specifically refers to altering professional compensation 'after the conclusion of such employment,' it would be absurd to conclude that we must wait until the conclusion

of such employment, when the court realizes that it has acted improvidently in approving the terms and conditions of such employment").

26.  In addition, Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This section "authorizes the courts to use fee caps" on the compensation of professionals.  Gander, 202 B.R. at 614 (setting "caps for all professionals seeking employment and/or payment pursuant to 11 U.S.C. §§ 327-330" which "shall not be exceeded without prior court order").  Moreover, the Court may require professionals to perform in accordance with budgets.  See, e.g., In re Pilgrim's Pride Corporation, 407 B.R. 211, 214, 222 (Bankr. N.D. Tex. 2009) (court requested that ad hoc shareholders group "propose a budget for an official committee of equity holders" after which it determined a budget on the committee's expenses).

27.  As discussed above, the Debtors believe that Arsene Taxand's retention may be premature.  Moreover, it is possible that Arsene Taxand's services

will be duplicative of the Canadian Debtors' and Canadian Monitor's professionals and therefore unnecessary. To ensure that Arsene Taxand avoids unnecessary duplication, the Debtors submit that this Court should impose the reasonable restrictions discussed above on Arsene Taxand's retention. The Debtors believe that the restrictions strike the appropriate balance between the Committee's desire to stay informed and avoiding duplicative services. Thus, the Debtors submit that the restrictions are in the best interests of their estates.

28. For the foregoing reasons, the Debtors submit that this Court limit Arsene Taxand's retention to the extent set forth herein.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: June 4, 2010
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley_____
Douglas Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession