IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., *et al.*, Debtors. | Case No. 08-35653 Chapter 11 Jointly Administered |

**MEMORANDUM OPINION**

Hearing was conducted on April 29, 2010 (the "Hearing") to consider the motion of Ryan, Inc. f/k/a Ryan & Company, Inc. ("Ryan") to Reconsider the Order Denying Motion of Ryan to Compel Debtor to Assume Executory Contract and the Order Pursuant to Bankruptcy Code Sections 1015(a) and 365(A) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contract with Ryan (the "Motion to Reconsider"), and the Debtors' response thereto (the "Response"). The Motion to Reconsider requests that the Court reconsider its order denying Ryan's Motion to Compel and its order granting Debtors' Motion to Reject (collectively, the "Orders") in accordance with Rule 59 of the Federal Rules of Civil Procedure (the "Civil Procedure Rules") as made applicable herein by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). At the conclusion of the Hearing, the Court announced its decision to deny the Motion to Reconsider, and it entered an order to that effect on May 11, 2010 [Docket No. 7521]. Thereafter, Ryan noted its appeal to the entry of the Court's order [Docket No. 7640]. This Memorandum Opinion supplements the Court's findings of fact and conclusions of law set forth on the record at the conclusion of the Hearing pursuant to Bankruptcy Rule 7052[1] in support of the order denying the Motion to Reconsider.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

**Jurisdiction**

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

**Procedural Background**

The Debtors, Circuit City Stores, Inc., *et al.*, ("Circuit City")[2] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date").  Circuit City was a national retailer of consumer electronics.  As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee" ).

On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 stores.  As of March 8, 2009, the going out of business sales had been completed.  On September 29, 2009, the Debtors and the Creditors Committee filed their First Amended Joint Plan of Liquidation (the "Plan").  The disclosure statement was approved by order entered September 24, 2009.  The confirmation hearing is currently scheduled for status on June 16, 2010.  Generally, the Plan provides for the liquidation of the Debtors under Chapter 11 of the Bankruptcy Code.

---

[2] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.  The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

**Relevant Facts**

On June 8, 2005, the Debtors and Ryan entered into a letter agreement wherein Ryan contracted to represent the Debtors with respect to certain tax matters in the State of Hawaii on a contingency fee arrangement (the "Ryan Contract"). Pursuant to the Ryan Contract, Ryan undertook a Hawaii import tax credit review on behalf of the Debtors in order to identify and pursue available tax refund opportunities for the Debtors. Ultimately, the State of Hawaii denied the refund claim made by Ryan on behalf of the Debtors. The Debtors appealed the state's decision to deny their refund claim to the Hawaii Supreme Court, which took the tax appeal under review prior to the Petition Date.[3]

Ryan's employment as a professional person has not been approved by the Court pursuant to 11 U.S.C. § 327. Nor has Ryan been retained as an ordinary course professional by the Debtors.[4] Ryan ignores the nearly insurmountable problem surrounding its failure to be properly employed as a professional for the fiduciary in these cases. Instead it focuses on its prepetition contract. Ryan alleges that, if the Debtors were to assume the Ryan Contract and if the Supreme Court of Hawaii ultimately allows the refund, the Debtors' estate would benefit therefrom to the extent of $735,663.01, less Ryan's contingency fee of $245,196.48. Because Ryan's fee is to be earned on a contingency basis, Ryan argues that there is no down side to the Debtors if the Debtors were to assume the Ryan Contract. If the Supreme Court of Hawaii denies the Debtors' refund, Ryan will receive nothing for its services.

---

[3] The Debtors argue that since the Petition Date, Ryan has not provided any material services to the Debtors under the Ryan Contract.

[4] The Court entered its Order Granting Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 327, 330 and 331 Authorizing Debtors to Employ Professionals Utilized in the Ordinary Course of Business [Docket No. 1279]. Ryan failed to file the required affidavit to be retained as a professional pursuant to such order.

3

On November 13, 2009, Ryan filed its motion to compel the Debtors to assume the Ryan Contract (the "Motion to Compel"). On January 28, 2010, the Debtors filed their Eighth Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contracts, which included the Ryan Contact (the "Motion to Reject"). Ryan filed a response to the Motion to Reject on February 10, 2010. A final hearing on the Motion to Compel and the Motion to Reject was conducted on March 8, 2010, after which the Court entered Orders denying the Motion to Compel [Docket no. 6796] and granting the Motion to Reject [Docket No. 6804]. Pursuant to the Order granting the Motion to Reject, Ryan had thirty days to file a rejection damages claim. On March 24, 2010, Ryan filed instead its Motion to Reconsider.

**Analysis**

The Fourth Circuit Court of Appeals (the "Fourth Circuit") recognizes three grounds for reconsideration under Fed. R. Civ. P. 59: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993); *see also Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006). Nothing in the Motion to Reconsider suggests that there has been any intervening change in controlling law. Ryan has also not alleged that there is any new evidence that would not have been available at the March 8, 2010 hearing.[5] Therefore, Ryan appears to be proceeding on the third prong, arguing that the Orders were either the result of a clear error of law or should be reconsidered to prevent

---

[5] Ryan, though, does argue that it should be allowed to put on new evidence because it did not consider the March 8, 2010 hearing to be a final hearing on the Motion to Compel or the Motion to Reject and because Ryan and the Debtors were continuing to negotiate and therefore, Ryan did not expect the March 8, 2010 hearing to be dispositive. Given that these two issues were not raised by Ryan at the March 8, 2010 hearing and that the agenda filed for the March 8, 2010 omnibus hearing [Docket No. 6696] reflected that the hearings on the two motions would be going forward, the Court finds these two arguments unpersuasive.

4

manifest injustice. In support of this argument, Ryan alleges that no evidence was introduced at the March 8, 2010 hearing. Ryan claims that, as a result thereof, Ryan was denied the opportunity to present evidence to the Court in support of its belief that the Ryan Contract should be assumed rather than rejected.

Ryan's Motion to Compel seeks to force the Debtors to assume the Ryan Contract. Ryan relies purportedly on § 365(d)(2) of the Bankruptcy Code. Section 365(d)(2) of the Bankruptcy Code allows a trustee or debtor-in-possession to assume or reject an executory contract "at any time before the confirmation of a plan," but provides that "the court, on the request of any party to such contract or lease, may order the trustee *to determine* within a specified period of time whether to *assume or reject* such contract or lease." 11 U.S.C. § 365(d)(2) (emphasis added). The purpose of this exception to the general rule that an executory contract may be assumed or rejected at any time prior to plan confirmation is to accommodate situations where the non-debtor party to a contract needs to know whether the contract will be assumed or rejected "in order for the [non-debtor] party to take actions either to perform its end of the contract or to mitigate its damages." 3 *Collier on Bankruptcy*, ¶ 365.05[2][b] at 365-30 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.). This subsection does not exist to allow a non-debtor party to a contract to substitute its business judgment or particular desires for that of the debtor. Rather, it exists to allow the Court, in appropriate circumstances, to compel the trustee or debtor-in-possession to make a decision to assume or reject an executory contract under the exercise of the trustee's business judgment when the non-debtor party would be significantly impacted by having to wait until the plan confirmation date to find out whether its contract will be assumed or rejected. There is no authority supporting Ryan's position that the non-debtor party to an executory contract should be able compel the Debtors to assume the Ryan Contract. The Court

5

is hard pressed to see how denying a motion that is supported by no authority whatsoever is a clear error of law or results in manifest injustice.[6]

Ryan argues that even conceding that it has no authority upon which to rely for its Motion to Compel, the Court erred in granting the Motion to Reject because the Debtors did not meet their evidentiary burden. The Court disagrees. There was sufficient evidentiary support for the Debtors' rejection of the Ryan Contract. Section 365(a) of the Bankruptcy Code states that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Unlike many other sections of the Bankruptcy Code, § 365(a) of the Bankruptcy Code does not require a showing of "cause" to support a Debtors decision to assume or reject an executory contract. Rather, the debtor's determination to reject an executory contract is governed by the "business judgment" standard. *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985). Once the Debtors articulate a valid business justification, "[t]he business judgment rule becomes 'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y.) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). The Court should defer to the business judgment of the Debtors, unless "the decision of the [Debtors] that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol*, 756 F.3d at 1047.

---

[6] The Court also notes that during the March 8, 2010 hearing, Ryan never attempted to cross examine the Debtors' principal or present evidence in support of its Motion to Assume.

At the March 8, 2010 hearing, Debtors' counsel expressly communicated on the record that Debtors believed that the Ryan Contract provided no economic benefit to the Debtors, the Debtors' estate, or the creditors as a whole. By rejecting the Ryan Contract, the Debtors sought to avoid any potential postpetition administrative liability on account of Ryan's contingency fee arrangement. The Debtors believed that Ryan wanted the Ryan Contract to be assumed simply to elevate the priority of Ryan's contingent claim for work it had performed prepetition.[7]

The Court had before it the Ryan Contract and the Debtors' espoused reasons for rejecting the Ryan Contract. The Debtors' principal was in the courtroom for the March 8, 2010 hearing and was available for questions from the Court and for cross examination by Ryan. The Creditors Committee supported the rejection of the Ryan Contract.[8] No other creditor or party in interest objected to the rejection of the Ryan Contract. As evidenced by the Court's own review of the Ryan Contract, the rationale for rejection of such contracts and the unqualified support of the Creditors Committee, the decision to reject was far from "manifestly unreasonable." The Court concluded that the Debtors did not need Ryan's services postpetition.[9] Given that the Court had never approved Ryan's postpetition employment as a professional person, the Court was entirely satisfied that the Debtors were exercising their sound business judgment in rejecting the contract and that there was good business reason for the contract to be rejected.

---

[7] Section 101(5)(A) of the Bankruptcy code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Ryan's claim for its contingency fee is a "contingent" claim.

[8] The Plan that had been submitted by the Debtors and the Creditors Committee contemplated the rejection of the Ryan Contract before either the Motion to Reject or the Motion to Compel were filed, and was the impetus for the Motion to Compel in the first place.

[9] Should the Debtors or the Liquidating Trustee later desire to hire Ryan or another professional in connection with the Hawaii tax matter, they are not precluded from doing so, but rather would have to negotiate a new contract and seek employment approval from this Court.

The Court's approval of the Debtors' decision to reject the Ryan Contract was not a clear error of law. Reconsideration under Civil Procedure Rule 59 "is not permitted when parties are attempting to 'raise arguments which could have been raised prior to the issuance of judgment,' nor to 'enable a party to complete presenting his case after the court has ruled against him.'" *Puller v. Unisource Worldwide, Inc.*, 2009 U.S. Dist. LEXIS 27306, at *3-5 (E.D. Va. Mar. 31, 2009) (quoting *In re Reese*, 91 F.3d 37, 39) (7th Cir. 1996)). Ryan is seeking to raise arguments that it could have raised at the March 8, 2010 hearing. For these reasons, the Court holds that reconsideration would be inappropriate.

**Conclusion**

For all of the foregoing reasons, the Court holds that the Motion to Reconsider should be denied. The order denying the Motion to Compel was not the result of a clear error of law because the Bankruptcy Code does not give creditors the power to force a debtor-in-possession or a trustee to assume an executory contract. The order granting the Motion to Reject was not the result of a clear error of law because the Debtors were exercising their sound business judgment in deciding to reject the Ryan Contract.

ENTERED: _____

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE