**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Case Nos. 08-35653 (KRH) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**SIXTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**
**FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF**
**EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE**
**PERIOD FROM FEBRUARY 1, 2010 THROUGH AND INCLUDING APRIL 30, 2010**

Name of Applicant:                    FTI Consulting, Inc.

Authorized to provide
professional services to:             Circuit City Stores, Inc., et al.

Date of retention:                    December 23, 2008 *nunc pro tunc to* November 10, 2008

Period for which compensation
and reimbursement are sought:         February 1, 2010 through and including April 30, 2010

Amount of compensation
sought as actual, reasonable and
necessary:                            $444,678.50

Amount of expense reimbursement
sought as actual, reasonable and
necessary:                            $2,902.96

This is a/an: _____ Monthly __X__ Interim _____ Final Application

This Application does not request compensation at this time for services rendered in preparing this
Application.  FTI Consulting intends to seek such compensation at a later date.

1

## SIXTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE PERIOD FROM FEBRUARY 1, 2010 THROUGH AND INCLUDING APRIL 30, 2010

**Summary of Fees by Professional**
**FTI Consulting, Inc.**
**February 1, 2010  through and including April 30, 2010**

| Name | Title | Total Hours | Rate | | Total Fees |
|---|---|---|---|---|---|
| Coulombe, Stephen L | Sr Managing Dir | 34.0 | $ | 885 | $    30,090.00 |
| Duffy, Robert J | Sr Managing Dir | 22.0 | | 885 | 19,470.00 |
| Weinsten, Mark | Sr Managing Dir | 8.4 | | 885 | 7,434.00 |
| Chin, Gregory | Managing Dir | 50.7 | | 710 | 35,997.00 |
| Lee, Geon | Managing Dir | 14.0 | | 710 | 9,940.00 |
| Nighswander, Jonathan C | Managing Dir | 3.0 | | 710 | 2,130.00 |
| Robinson, Joshua M. | Managing Dir | 93.6 | | 675 | 63,180.00 |
| Cashman, Brian | Managing Dir | 125.0 | | 655 | 81,875.00 |
| Murphy, Mark | Sr Consultant | 74.5 | | 485 | 36,132.50 |
| Stegenga, Scott | Sr Consultant | 0.6 | | 485 | 291.00 |
| Nemerov, Lara | Consultant | 242.8 | | 350 | 84,980.00 |
| O'Loughlin, Morgan | Consultant | 194.5 | | 350 | 68,075.00 |
| Schaefer, Karl | Consultant | 13.8 | | 305 | 4,209.00 |
| Hellmund-Mora, Marili | Professional Assistant | 3.5 | | 250 | 875.00 |
| **Total** | | **880.4** | | $ | **444,678.50** |

**SIXTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE
PERIOD FROM FEBRUARY 1, 2010 THROUGH AND INCLUDING APRIL 30, 2010**

**Summary of Fees by Task Code
FTI Consulting, Inc.
February 1, 2010  through and including April 30, 2010**

| Task Code | Total Hours | Total Fees |
|---|---|---|
| Attendance at Bankruptcy Court Hearings | 4.2 | $      3,234.00 |
| Bankruptcy Reporting and Post-petition Accounting | 129.7 | 57,659.00 |
| Canadian Matters | 139.2 | 82,069.50 |
| Claims Management | 268.2 | 116,827.00 |
| General Duties and Case Administration | 68.2 | 41,538.50 |
| Liquidation Analysis/Wind down | 167.8 | 93,983.00 |
| Preference Analysis | 91.1 | 40,507.50 |
| Travel* | 12.0 | 8,860.00 |
| **Total** | **880.4** | **$      444,678.50** |

\* Billed at 50% of actual time incurred for traveling

**Summary of Actual and Necessary Expenses by Expense Category
FTI Consulting, Inc.
February 1, 2010  through and including April 30, 2010**

| Expense Category | Total Expenses |
|---|---|
| Transportation | $      2,404.72 |
| Lodging | 354.99 |
| Business Meals | 143.25 |
| **Total** | **$      2,902.96** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Case Nos. 08-35653 (KRH) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors.[1] | ) |
| | ) |

**SIXTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**
**FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF**
**EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE**
**PERIOD FROM FEBRUARY 1, 2010 THROUGH AND INCLUDING APRIL 30, 2010**

FTI Consulting, Inc., (collectively, "FTI Consulting", "FTI" or the "Applicant") as financial advisors for Circuit City Stores, Inc. in the above-captioned cases (collectively, "Circuit City", the "Company", the "Debtors" or the "Estate") submit this application (the "Sixth Interim Fee Application" or the "Application") seeking allowance of interim compensation and reimbursement of expenses under section 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") for the period from February 1, 2010 through and including April 30, 2010 (the "Sixth Interim Fee Application Period" or "Application Period") and represent as follows:

**JURISDICTION**

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. sections 157 and 1334. This is a core proceeding under 28 U.S.C. section 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. sections 1408 and 1409.

---

[1]     The Debtors are the following entities: The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

4

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 330 and 331.

## BACKGROUND

3.      On November, 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this court for relief pursuant to chapter 11 of the Bankruptcy Code.

4.      On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a sale or sales of the Debtor's business as a going concern or for liquidation.

5.      At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC; Hudson Capital Partners, LLC; SB Capital Group, LLC; and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores.  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.  The going out of business sales concluded on or about March 8, 2009.

6.      On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan is adjourned to a date and time to be determined in the future.  Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

## RETENTION OF FTI CONSULTING

7.      FTI Consulting is a financial advisory services firm with numerous offices throughout the country and was retained by the Debtors as Financial Advisors.  The Retention Order authorized the retention of FTI Consulting to render to the Debtors the following essential services, which include, but are not limited to:

**Store Footprint Analysis**

- •      Analyze liquidity and earnings impact of potential store closures.
- •      Provide assistance with contract terms for disposition of leases.

- Develop informational materials to support store closing processes.

- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.

- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.

- Prepare information package for landlord conference calls and participate in lease termination discussions.

- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

**Liquidity Forecasting**

- Evaluate current liquidity position and expected future cash flows.

- Assist with management and control of cash disbursements.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**

- Assist with development of an out-of-court restructuring plan and related financial projections.

- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.

- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.

- Assist with working capital management and liquidity forecasting.

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.

- Assist management with development of employee retention and communications programs.

- Assist management in developing strategy relating to merchandise and other vendors.

- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.

- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.

- Provide weekly status and fee updates to management personnel designated by the Company.

- Provide other services as requested by management.

6

**Asset Sales**

- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture, fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.
  - Prepare "bid packages" for Liquidators and manage selection process.
  - Solicit potential inventory Liquidators for going-out-of-business sale process.
  - Assist the Company in the negotiation of an Agency agreement.
  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.
  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.
- Assist with data collection and information gathering related to third party due diligence.
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**

- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.
- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.
- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.

- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**

- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing DIP financing and assist the Company in preparing a collateral package in support of such financing.

**Other**

- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

8.      FTI Consulting's retention as Financial Advisors to assist the Debtors in the performance of their duties as Debtors-in-Possession was approved on December 23, 2008 by this Court *nunc pro tunc* to November 10, 2008 (the "Retention Order").  A copy of said order, dated December 23, 2008, is attached hereto as Exhibit E and incorporated herein by reference.

9.      On December 9, 2008, this Court entered an Administrative Order under Bankruptcy Code Section 105(a) and 331 establishing procedures for interim compensation (the "Administrative Order").

10.     This Application is made by FTI Consulting in accordance with Local Rule 9013-1(G), the Guidelines adopted by the Executive Office for the United States Trustee and the Administrative Order.

11.     Pursuant to the terms of the Administrative Order, if no objection is filed to a Monthly Fee Request within twenty (20) days of the date of the filing of that request , then the respective professionals may be paid eighty-five percent (85%) of the fees and one hundred percent (100%) of expenses set forth in the applicable Monthly Fee Request.

12.     Every three (3) months beginning with the period ending January 31, 2009, this Court will then make a determination, after hearing, if the remaining fifteen percent (15%) of fees sought in the preceding three (3) months will be paid.

8

13.    FTI Consulting has received from the Debtors and holds as of the Petition Date, "on account" cash in the amount of $695,574.52 (the "On Account Cash").

14.    Subsequent to the Petition Date and pursuant to the Administrative Order, FTI Consulting has served a Monthly Fee Request, including time and expenses detail on (i) Circuit City Stores, Inc. (ii) McGuireWoods, LLP (iii) Skadden, Arps, Slate, Meagher & Flom, LLP, (iv) the Office of the United States Trustee and (v) Pachulski, Stang, Ziehl & Jones LLP for each of the months in the Application Period.

15.    On March 12, 2010, FTI Consulting served its Monthly Fee Request for the period from February 1, 2010 through and including February 28, 2010 for the amount of $216,559.95 consisting of $215,634.50 for professional fees and $925.45 for expenses.  The 20 day period for objections expired on April 1, 2010 without any objections, at which time FTI Consulting was paid 85% of the requested professional fees and 100% of the requested expenses, in the aggregate amount of $184,214.77.

16.    On April 13, 2010, FTI Consulting served its Monthly Fee Request for the period from March 1, 2010 through and including March 31, 2010 for the amount of $154,119.00 for professional fees.  The 20 day period for objections expired on May 3, 2010 without any objections, FTI Consulting was paid 85% of the requested professional fees and 100% of the requested expenses, in the aggregate amount of $131,001.15.

17.    On May 11, 2010, FTI Consulting served its Monthly Fee Request for the period from April 1, 2010 through and including April 30, 2010 for the amount of $76,902.51 consisting of $74,925.00 for professional fees and $1,977.51 for expenses.  The 20 day period for objections expires on May 31, 2010.  As of the Interim Filing date, FTI has not been paid 85% of Fees and 100% of Expenses.

18.    Pursuant to the Administrative Order, FTI Consulting is filing this Application for compensation for professional services rendered and reimbursement of expenses made in these cases during the Application Period.

**RELIEF REQUESTED**

19.     By this Application, the Debtors request approval and payment of interim compensation and reimbursement of expenses for FTI Consulting, financial advisors to the Debtors,

pursuant to Bankruptcy Code sections 330 and 331 for the period of February 1, 2010 through and including April 30, 2010.

20.    At this time, FTI Consulting is seeking allowance of compensation equal to $444,678.50 in fees for professional services rendered by FTI Consulting during the Application Period as financial advisors to the Debtors in these chapter 11 cases.  This amount is derived solely from the applicable hourly billing rates of the firm's personnel who rendered such services to the Debtors.  Of this amount, FTI Consulting has already been paid $314,290.47, eighty-five percent (85%) of fees billed from February 1, 2010 through and including March 31, 2010 pursuant to the Administrative Order.  Accordingly, through this Application, FTI Consulting requests payment of the remaining fees billed from February 1, 2010 through and including March 31, 2010 of $55,463.03.

21.    FTI Consulting also requests allowance of reimbursement of one hundred percent (100%) of the actual and necessary out-of-pocket disbursements and charges incurred in the Application Period for the month of April equal to $76,902.51 consisting of $74,925.00 for professional fees and $1,977.51.

22.    This Application is made without prejudice to FTI Consulting's right to seek further interim allowances and/or a final allowance of compensation in the future in accordance with the Retention Order and the Administrative Order.

23.    FTI Consulting has received no promise of payment for professional services rendered or to be rendered in these cases other than in accordance with the provisions of the Bankruptcy Code.

**BASIS FOR RELIEF**

24.    It is not practical to describe every phone call made, meeting attended, document generated, or other service provided in the Debtors' cases during the Application Period.  Thus, this Application highlights the most significant services performed by FTI Consulting for the Debtors during the Application Period and the attached time records in Exhibit C contain the detail of each task performed.

25.    FTI Consulting submits that the financial advisory services that it rendered to the Debtors in connection with their chapter 11 cases during the Application Period were necessary and

beneficial to the Debtors, their creditors, and their estate.  During the Application Period, FTI Consulting devoted substantial time to the matters related to the disposition of the Debtors' remaining assets, including (without limitation) defective inventory, furniture, fixtures and equipment and intellectual property.  FTI Consulting worked with the Debtors' in managing the winddown of their operations, their store closings and claims administations among other things.

26.    During the Application Period, FTI Consulting devoted a total of 880.4 hours to assisting the Debtors in their chapter 11 cases.  Schedules showing the name and position of each professional, hours worked during the Application Period, and hourly billing rate are provided at the front of this Application.  Exhibit C provides the detail by matter of the time billed for such services.

27.    Set forth in Exhibit D attached hereto are the detailed expenses incurred during the Application Period in the amount of $2,902.96.

## DESCRIPTION OF SERVICES RENDERED

28.    FTI Consulting maintains contemporaneous records of the time expended for the professional services and expenses related hereto performed in connection with these Chapter 11 cases and such records are maintained in the ordinary course of its business.  These records provide a detailed description of the services rendered and expenses incurred during the period for which this Sixth Interim Fee Application is being made.

29.    All services for which FTI Consulting requests compensation were performed for, or on behalf of, the Debtors.

30.    This Sixth Interim Fee Application is divided into eight narrative sections based on the activity descriptions listed below.  Each narrative section describes the more significant services rendered by FTI Consulting for each of the activity categories and its benefit to the Estate.  FTI Consulting is charging only on an hourly basis for these services.  The fees applied for herein are based on the hourly rates that reflect the usual and customary fees charged to all clients of FTI Consulting and are commensurate with the usual and customary rates charged for services performed by accountants and financial advisors in bankruptcy cases of this nature.

31.    In March 2010, the Debtors retained Al Siegel of Crowe Horwath LLP as Chief Restructuring Officer (CRO) to the Debtors.  Mr. Siegel is expected to be the liquidating trustee post bankruptcy confirmation.  As a result, FTI Consulting has begun the process of transitioning certain

tasks and responsibilities to either Crowe Horwath or the Debtors' finance team.  For example, FTI Consulting at the request of the Debtors transitioned the responsibility of preparing the weekly cash flow to the Debtors' finance team.  This transition process is expected to continue as Mr. Siegel becomes more familiar with the work required and resources available.

### Attendance at Bankruptcy Court Hearings

32.    During the Application Period, at the request of the Debtors' counsel and the Debtors' management, FTI Consulting prepared for and attended the Twenty-Eighth Omnibus Hearing.  FTI Consulting was instrumental in providing informational support to the Debtors and Debtors' counsel as needed on management incentive matters.

33.    During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 4.2 hours on matters related to Attendance at Bankruptcy Court Hearings for which compensation is sought with the time value of $3,234.00.  The detailed time entries for this task are attached hereto as Exhibit C.

### Bankruptcy Reporting and Postpetition Accounting

34.    During the Application Period, FTI Consulting assisted the Debtors with required weekly reporting and postpetition accounting activities.

35.    FTI Consulting prepared a weekly cash flow report to the lending group and the Committee's financial advisors and was responsible for coordinating the aggregation of data required to populate the financial reporting package that were sourced from various areas of the Debtors' functional areas.  FTI Consulting reviewed the weekly cash flow report with the Debtors' treasury team to confirm the accuracy of the numbers and subsequently reviewed the reports with Debtors' management.  During the Application Period, FTI Consulting at the request of the Debtors transitioned the responsibility of preparing the weekly cash flow to the Debtors' finance team.

36.    Second, FTI Consulting updated periodically a claims waterfall report incorporating summary claims data from the CMSi system.  FTI Consulting prepared this report on a weekly basis as requested by the Debtors and their counsel.  FTI Consulting prepared a bridge analysis to track the progress of the claims reconciliation process.  The claims waterfall was updated for (i) total claims filed; (ii) ordered claims; (iii) withdrawn claims; (iv) claims settled through court stipulation; (v) filed omnibus objections; (vi) adjourned claims and (vii) allowed claims.  Updating the claims

waterfall report included reviewing and summarizing omnibus objections, court stipulations, supplemental orders, withdrawn claims and other court documents to ensure accurate reporting of remaining claims.

37.    During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 129.7 hours on matters related to bankruptcy reporting and postpetition accounting which compensation is sought with the time value of $57,659.00.  The detailed time entries for this task are attached hereto as Exhibit C.

**Canadian Matters**

38.    During the Application Period, the Debtors' management requested that FTI Consulting continue to assist them in analyzing the working capital adjustment on the closing date balance sheet prepared by Bell Canada who purchased the assets of the Canadian subsidiary of the Debtor.  The working capital adjustment proposed by Bell Canada would reduce the purchase price for the Canadian subsidiary.  FTI Consulting used resources from our Transaction Advisory Services to assist in this matter.  The primary remaining item in dispute was the collectability of certain accounts receivable and the impact on the accounts receivable reserve.  Therefore, the Debtor's management requested FTI assist in monitoring and analysis of collections.

39.    First, FTI continued to analyze Bell's assessment of collectability on outstanding accounts receivable and related off-sets.  In February, FTI participated in weekly conference calls with Bell local management and the Monitor to review the status of claims and the accounts receivable confirmation process.

40.    Second, FTI updated the analysis of accounts receivable reserves on a vendor-by-vendor basis, based on information provided by InterTAN and the Monitor.  FTI prepared an updated reserve analysis for comparison with Bell's additional provision request.  As a result, FTI identified errors in Bell's provision calculation to further support the Debtor's challenge to Bell's additional provision request.

41.    Third, FTI Consulting has been a key contributor in the negotiations with Bell Canada regarding the working capital adjustment on the closing balance sheet.  FTI participated in conference calls with the Debtors and Debtors' legal counsel on status and approach for negotiations.  FTI also had calls directly with Bell, on behalf of the Debtor, regarding the Debtor's

13

position on specific adjustments.  As a result of FTI's analysis and negotiations, Bell's original purchase price adjustment of $18.1 million was reduced by $8.8 million down to $9.3 million.

42.    Fourth, at the Debtor's request, FTI prepared the final closing date financial statement, which reflects the final working capital adjustments resulting from the transaction

43.    During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 139.2 hours on matters related to Canadian matters for which compensation is sought with the time value of $82,069.50.  The detailed time entries for this task are attached hereto as Exhibit C.

*Claims Management*

44.    During the Application Period, at the request of the Debtors, FTI Consulting assisted in the claims management process.  To date, creditors have filed over 15,000 proofs of claim in these cases that require reconciliation.  These claims, which consist of secured, 503(b)(9), administrative, reclamation, priority and unsecured have a stated value in excess of $13.1 billion.  At the request of the Debtors', FTI Consulting has been assisting the Debtors' personnel in providing guidance and assistance in the efficient and effective reconciliation of this population of claims.

45.    First, during the Application Period, FTI Consulting's assistance focused on: (i) loading docketed proofs of claim into CMS for the Debtor's use in the claims reconciliation and resolution process; (ii) performing various analysis regarding claims including searching for duplicates and superseding scheduled liabilities to proofs of claim; (iii) assisting the Debtors with the completion and generation of claim objection exhibits for omnibus objections sixty-six through seventy; (iv) designing and compiling on demand management reports accessible to all users of CMS to detail claims reconciliation progress;

46.    Second, FTI Consulting assisted the Debtors' claims resolution team in their efforts to reconcile, object to, settle and resolve proofs of claims filed against the Debtors in these Chapter 11 proceedings.  The Debtors' claims resolution team was comprised of Debtors' personnel, supported by professionals from the Debtors' counsel and FTI Consulting.  Due to the complexity of these cases, the large number of creditors who filed proofs of claim against the Debtors and a high number of complex claims including over 1,300 claims filed under section 503(b)(9),  FTI Consulting assembled a team of professionals with significant experience in complex bankruptcy claims reconciliation to assist the Debtors in this area.

47.     Third, FTI Consulting's assistance in the claims management area included all aspects of claims management and claims resolution.  Utilizing proprietary bankruptcy software called the Claims Management System ("CMS"), FTI Consulting established a multi-user, computer information system environment designed to manage the Debtors' scheduled liabilities and proofs of claim.  The Debtors use and rely on CMS to track the progress and status of each proof of claim, perform analysis of claims, object to claims and generate various management reports.  The CMS database server and software is available via a secure internet protected environment that provides the Debtors and their advisors access to claims related information and enables the Debtors to increase personnel resources as necessary to meet the requirements and deadlines of the cases.  During the Application Period, FTI Consulting loaded proof of claim data into CMS received from the claims agent to establish a baseline system for the Debtors to continue the reconciliation process.

48.     Fourth, in addition to maintaining CMS for the Debtors, FTI Consulting also assisted the Debtors in establishing and managing the claims resolution process.  This included: (i) assisting in the preparation of and modification to claims resolution protocols and training materials describing in detail the claims resolution process and resolution tasks to be completed; and (ii) participating in working sessions with the Debtors and counsel to resolve issues and develop strategies regarding case specific complexities and to advise the Debtors with respect to timing and resource needs.  In addition, FTI Consulting assisted the Debtors in establishing procedures for identifying and reviewing claims for omnibus objections including objections for duplicate or amended claims, late claims, no liability, reclassification and non-good 503(b)(9) claims.  The Debtors filed omnibus objections sixty-six through seventy during the Application Period which sought disallowance or modification of claims with a reduction of claim amounts totaling approximately $69.2 million.

49.     Fifth, FTI Consulting was requested by the Debtors to attend their claims review meetings which were held periodically and lasted for several hours.  During these meetings, employees of the Debtors would review open items and questions about specific claims in such areas as tax, human resources, landlords and vendors.  FTI Consulting along with the Debtors' counsel would provide guidance to help resolve any items, answer any questions and bring to resolution with a defined action plan regarding the claim being reviewed.

50.     Sixth, FTI Consulting at the request of the Debtors and their counsel prepared numerous reports such as stratification of claims by class, landlord claims cross guaranty analysis, reclamation claim analysis, unliquidated claims, among others.

51.     During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 268.2 hours on matters related to claims management for which compensation is sought with the time value of $116,827.00.  The detailed time entries for this task are attached hereto as Exhibit C.

**_General Duties and Case Administration_**

52.     In any complex bankruptcy case, it is necessary for professionals to perform certain administrative tasks that support the overall advisory effort.

53.     During the Application Period, these tasks included but were not limited to: (i) development and revision of work plans and subsequent meetings to assign tasks to complete the work plan; (ii) teleconferences and meetings with Debtors' management, legal and financial advisors to discuss case status, open items, creation of work plans, distribution of responsibilities, and strategies to be implemented to ensure efficiencies in executing defined objectives; and (iii) performance of administrative tasks such as distribution of information to management, and Debtors' counsel and other parties-in-interest.

54.     Second, during the Application Period, FTI Consulting prepared its fifth interim fee application and monthly fee statements which required FTI Consulting to review time records of its professionals and summarize the work that had been done on each matter.

55.     During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 68.2 hours on matters related to general duties and case administration which compensation is sought with the time value of $41,538.50.  The detailed time entries for this task are attached hereto as Exhibit C.

**_Liquidation Analysis/Wind Down_**

56.     During the Application Period, FTI Consulting at the direction of the Debtors' management, continued to assist in wind down matters and the liquidation analysis.

57.     FTI Consulting updated the detailed liquidation analysis with actual cash activity as well as estimated recoveries to the various classes of creditors and provided the analysis to the Debtors' board of directors, Debtors' management and the Committee's financial advisors and

counsel.    FTI Consulting worked with the Debtors' management and Debtors' counsel to continue to identify all possible receivables, payables, revenues and expenses.

58.    Examples of the inflow categories included, but were not limited to, the following estimates: (i) net recovery on store closing inventory; (ii) corporate aircraft; (iii) furniture and fixtures; (iv) owned real estate; (v) leases; (vi) income tax receivables; (vii) intellectual property; (viii) credit card holdback; (ix) salvage inventory; (x) vendor receivables, among others.    Examples of the outflow categories included, but were not limited to, the following estimates: (i) store closing expenses; (ii) distribution wind down expenses; (iii) corporate office wind down expenses; (iv) accruals; (v) employee vacation; (vi) gift cards; (vii) November stub rent; (viii) customer deposits; (ix) merchandise accounts payable; (x) expense accounts payable, among others.

59.    Second, FTI Consulting updated periodically a claims waterfall report incorporating summary claims data from the CMSi system.    FTI Consulting prepared this report on a bi-weekly basis through December and on a weekly basis during January.    FTI Consulting prepared a bridge analysis to track the progress of the claims reconciliation process.    The claims waterfall was updated for (i) total claims filed; (ii) ordered claims; (iii) withdrawn claims; (iv) claims settled through court stipulation; (v) filed omnibus objections; (vi) adjourned claims and (vii) allowed claims.    Updating the claims waterfall report included reviewing and summarizing omnibus objections, court stipulations, supplemental orders, withdrawn claims and other court documents to ensure accurate reporting of remaining claims.    For the months of February and March, time spent on the claims waterfall was categorized in the Bankruptcy Reporting and Postpetition Accounting section of the fee application.

60.    Third, FTI Consulting, at the request of the Debtors' management and the Debtors' counsel, prepared a sources and uses analysis that was updated weekly for actual results and changes in assumptions.

61.    Fourth, FTI Consulting, at the request of the Debtors' management, prepared presentations to the Board of Directors which were case updates and covered such areas as liquidation analysis, wind down plan, asset recoveries, claims management and claims waterfall analyses.

62.    Fifth, FTI Consulting assisted the Debtors in the calculation of management incentive plan bonus of the CEO associated with the incentive tasks that had been achieved to date.

63.     During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 167.8 hours on matters related to the liquidation analysis/wind down for which compensation is sought with the time value of $93,983.00.  The detailed time entries for this task are attached hereto as Exhibit C.

*Preference Analysis*

64.     During the Application Period, FTI Consulting, at the request of the Debtors, continued to assist with the preference analysis.  FTI consulting assisted the Debtors and counsel in providing preference data support to respondents related to omnibus objections fifty-one and fifty-two.  Additionally, at the debtor's request, FTI Consulting assisted the Debtors and counsel in preparing preference data exhibits to be used in preparation of demand letters to select vendors.

65.     Second, at the request of the Debtors, FTI Consulting also led the efforts in coordinating the reconciliation of accounts and performance of preference analyses necessary in negotiating the resolution of claims.  This included gathering the necessary payment and receipt information by check or invoice for the 24 months subsequent to the Petition Date and loading the information into the claims management software and calculating preferences under various scenarios assuming various defenses available to vendors.   The process and calculation was reviewed with the Debtors and the Debtors' counsel to ensure agreement in the approach.  FTI Consulting also assisted the Debtors and counsel in responding to preference inquiries and preparing exhibits to be used in demand letters.

66.     During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 91.1 hours on matters related to the Preference Analysis which compensation is sought with the time value of $40,507.50.  The detailed time entries for this task are attached hereto as Exhibit C.

*Travel*

67.     During the Application Period, FTI Consulting traveled from their home offices to various locations as required by the demands of the case.  Non-working travel time is charged at one-half of the actual time incurred for traveling.

68.     During the Sixth Interim Fee Application Period, FTI Consulting's professionals spent 12.0 hours on travel which compensation is sought with the time value of $8,860.00.  The detailed time entries for this task are attached hereto as Exhibit C.

## ALLOWANCE OF COMPENSATION

69.    FTI Consulting respectfully submits that the amounts applied for herein for professional services rendered on behalf of the Debtors in this proceeding to date are fair and reasonable given: (i) the time expended; (ii) the nature and extent of the services performed at the time at which such services were rendered; (iii) the value of such services; and (iv) the costs of comparable services other than in a Chapter 11 case.

70.    The time and labor expended by FTI Consulting has been commensurate with the size and complexity of the case.  In rendering these services, FTI Consulting made every effort to maximize the benefit to the Estate, to work efficiently with the other professionals employed in the case, and to leverage staff appropriately in order to minimize duplication of effort.  The complex issues of the case required staff professionals to confer and collaborate at certain times to ensure the efficient allocation of resources and to plan strategies effectively.  While essential to the effective administration of the engagement, to the extent possible these conferences were kept to a minimum. Compensation is sought for participation by more than one professional only in instances where joint participation was necessary because of the significant impact of a particular meeting, the complexity of the problem involved, and the specialization required or the need to preserve continuity of representation.  At times, it may have been necessary for more than one professional to attend a meeting to facilitate communication of information rather than to relay the information from individual to individual.

71.    During the Application Period, FTI Consulting provided a focused range of professional services as requested by the Debtors.  FTI Consulting respectfully submits that these services were necessary and beneficial to the successful and prompt administration of this case; and have been provided in a cost efficient manner.

72.    FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed and expenses incurred for the benefit of the Debtors.  FTI Consulting has carefully reviewed all of its time records and has elected to make certain voluntary reductions to the fees it is requesting which results primarily from the application of FTI Consulting's firm-wide policy which requires professional personnel to exercise reasonable billing judgment on a daily basis.  Chargeable hours are recorded on a daily basis, at which time professional staff members make informed judgments as to the quality and

productivity of time spent on the engagement.  The exercise of reasonable billing judgment, at the professional staff level, effectively considers the quality of time charged to the Debtors.  In this regard, non-productive time has not been billed to the Debtors' Estate.

73.     The services that have been provided by FTI Consulting during these proceedings have been wholly consistent with the Debtors' intentions and have been undertaken with specific direction and guidance from the Debtors' senior management.  These cases have necessitated the use of experienced advisors with specialized expertise in bankruptcy issues and financial analysis to timely and thoroughly address the needs of the Debtors in performing their duties as Debtors-in-Possession.  The persons who have worked on this case have demonstrated the skill in their respective areas of expertise required to provide the services necessary to assist the Debtors.

74.     Other than as provided in Section 504(b) of the Bankruptcy Code, FTI Consulting has not shared, or agreed to share, any compensation received as a result of this case with any person, firm or entity.  No promises concerning compensation have been made to FTI Consulting by any firm, person or entity.  The sole and exclusive source of compensation shall be funds of the Estate.

75.     This Application has been prepared in accordance with the United States Trustee Guidelines for Compensation and Reimbursement of Expenses Filed under U.S.C. section 330 and the Guidelines for Compensation and Expense Reimbursement of Professionals set forth by the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division.  FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed and expenses incurred for the benefit of the Debtors.

76.     FTI Consulting reserves the right to supplement this Application prior to a hearing.  Further, FTI Consulting specifically reserves the right to file subsequent applications for, and to seek final approval of, the fees and expenses requested herein.

77.     In accordance with the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation (the "Administrative Order"), FTI Consulting has submitted to the Court its Sixth Interim Fee Application requesting compensation for the period February 1, 2010 through and including April 30, 2010.

78.     Taking into consideration the skill and experience of FTI Consulting, the benefits to the Debtors, the nature of the assignment, and the time expended, FTI Consulting believes that fair

and reasonable compensation for the services rendered and expenses incurred during the Application Period is $447,581.46.

THEREFORE, FTI Consulting respectfully requests that the Court enter an Order allowing interim compensation for the period from February 1, 2010 through and including April 30, 2010 in the sum of one hundred percent (100%) of the amount incurred by FTI Consulting of $444,678.50 in fees and reimbursement of one hundred percent (100%) of actual expenses in the amount of $2,902.96 and directing prompt payment to FTI Consulting in the amount of $447,581.46 and granting such other and further relief as may be just and proper.

Respectfully submitted,

FTI Consulting, Inc.

_____                    6/2/2010
Robert J. Duffy                                   Date

_____                    6/2/10
Notary Public                                     Date


Robert J. Duffy
FTI Consulting, Inc.
200 State Street
Boston, MA 02109
(617) 897-1501

21

Dated: June 14, 2010          Respectfully submitted by:
       Richmond, Virginia

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                      - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                      - and -

                              MCGUIREWOODS LLP

                              /s/ Douglas M. Foley          .
                              Douglas M. Foley (VSB No. 34364)
                              Sarah B. Boehm (VSB No. 45201)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors in
                              Possession

EXHIBIT A

CIRCUIT CITY STORES, INC., et al.,

SUMMARY OF FEES

BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit A - Summary of Fees by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Coulombe, Stephen L | Sr. Managing Dir | $885.00 | 34.0 | 30,090.00 |
| Duffy, Robert J | Sr. Managing Dir | $885.00 | 22.0 | 19,470.00 |
| Weinsten, Mark | Sr. Managing Dir | $885.00 | 8.4 | 7,434.00 |
| Chin, Gregory | Managing Dir | $710.00 | 50.7 | 35,997.00 |
| Lee, Geon | Managing Dir | $710.00 | 14.0 | 9,940.00 |
| Nighswander, Jonathan C | Managing Dir | $710.00 | 3.0 | 2,130.00 |
| Robinson, Joshua M. | Managing Dir | $675.00 | 93.6 | 63,180.00 |
| Cashman, Brian | Managing Dir | $655.00 | 125.0 | 81,875.00 |
| Murphy, Mark | Senior Consultant | $485.00 | 74.5 | 36,132.50 |
| Stegenga, Scott | Senior Consultant | $485.00 | 0.6 | 291.00 |
| Nemerov, Lara | Consultant | $350.00 | 242.8 | 84,980.00 |
| O'Loughlin, Morgan | Consultant | $350.00 | 194.5 | 68,075.00 |
| Schaefer, Karl | Consultant | $305.00 | 13.8 | 4,209.00 |
| Hellmund-Mora, Marili | Consultant | $250.00 | 3.5 | 875.00 |
| **Total** | | | **880.4** | **$444,678.50** |

EXHIBIT B

CIRCUIT CITY STORES, INC., et al.,

SUMMARY OF FEES BY TASK CODE

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit B - Summary of Fees by Task Code*
*For the Period 2/1/2010 through and including 4/30/2010*

| Task Code | Hours | Fees |
|---|---|---|
| Attendance at Bankruptcy Court Hearings | 4.2 | 3,234.00 |
| Bankruptcy Reporting and Post-petition Accounting | 129.7 | 57,659.00 |
| Canadian Matters | 139.2 | 82,069.50 |
| Claims Management | 268.2 | 116,827.00 |
| General Duties and Case Administration | 68.2 | 41,538.50 |
| Liquidation Analysis/Wind down | 167.8 | 93,983.00 |
| Preference Analysis | 91.1 | 40,507.50 |
| Travel | 12.0 | 8,860.00 |
| *Total* | **880.4** | **$444,678.50** |

EXHIBIT C


CIRCUIT CITY STORES, INC., et al.,


COMPLETE ACCOUNTING OF TIME EXPENDED BY DAY BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Attendance at Bankruptcy Court Hearings** | | | |
| Weinsten, Mark | 3/8/2010 | 2.1 | Attend 28th omnibus court hearing in anticpation of possible testimony regarding CEO incentive. |
| Cashman, Brian | 3/8/2010 | 2.1 | Listen to 28th Omnibus Hearing. |
| **Subtotal - Attendance at Bankruptcy Court Hearings** | | **4.2** | |
| **Bankruptcy Reporting and Post-petition Accounting** | | | |
| O'Loughlin, Morgan | 2/1/2010 | 0.9 | Update claims waterfall with supplemental order on omnibus objection #9. |
| O'Loughlin, Morgan | 2/1/2010 | 0.7 | Update claims waterfall with supplemental order on omnibus objection #22. |
| Cashman, Brian | 2/2/2010 | 0.9 | Review updated claims waterfall prepared by M. O'Loughlin (FTI). |
| Cashman, Brian | 2/2/2010 | 0.7 | Participate in meeting with M. O'Loughlin (FTI) to review updated claims waterfall. |
| Cashman, Brian | 2/2/2010 | 0.5 | Review weekly cash flow report prepared by M. O'Loughlin (FTI). |
| Cashman, Brian | 2/2/2010 | 0.2 | Research change in admin claims on claims waterfall at request of I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 2/2/2010 | 1.2 | Create new bridge for claims waterfall from 1/26/10 to 2/2/10 version with new language for each section of waterfall. |
| O'Loughlin, Morgan | 2/2/2010 | 0.8 | Break out ordered, adjourned and withdrawn claims for updating claims waterfall with order on omnibus objection #62. |
| O'Loughlin, Morgan | 2/2/2010 | 0.8 | Research Plum choice claim #13105 ($3.8M administrative claim) and exchange emails with L. Nemerov (FTI) regarding treatment of this claim in waterfall. |
| O'Loughlin, Morgan | 2/2/2010 | 0.7 | Participate in meeting with B. Cashman (FTI) to review updated claims waterfall. |
| O'Loughlin, Morgan | 2/2/2010 | 0.7 | Break out ordered, adjourned and withdrawn claims for updating claims waterfall with order on omnibus objection #60. |
| O'Loughlin, Morgan | 2/2/2010 | 0.6 | Break out ordered, adjourned and withdrawn claims for updating claims waterfall with order on omnibus objection #64. |
| O'Loughlin, Morgan | 2/2/2010 | 0.5 | Update total claims filed line in claims waterfall. |
| O'Loughlin, Morgan | 2/2/2010 | 0.4 | Update claims waterfall for withdrawn claim #1848. |
| O'Loughlin, Morgan | 2/2/2010 | 0.3 | Finalize and distribute the claims waterfall to the Company. |
| O'Loughlin, Morgan | 2/3/2010 | 0.9 | Review weekly cash flow report prepared by K. Bradshaw (CC) for week ending 1/30/10 and ensure proper classification of proceeds, disbursements and tie ending balance back to bank balance. |
| O'Loughlin, Morgan | 2/3/2010 | 0.6 | Finalize weekly cash report with actuals through week ending 1/30/10 and send to the Company for review before distribution to the Company. |
| O'Loughlin, Morgan | 2/4/2010 | 0.8 | Exchange emails with L. Nemerov (FTI) regarding treatment of claim #13685 in claims waterfall and make adjustment to adjourned claims listing. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Bankruptcy Reporting and Post-petition Accounting** | | | |
| O'Loughlin, Morgan | 2/4/2010 | 0.7 | Update claims waterfall to properly classify Delink and IRS claims per email from L. Nemerov (FTI). |
| O'Loughlin, Morgan | 2/8/2010 | 1.1 | Create outstanding check roll forward that automatically updated the cash flow report and send to K. Bradshaw (CC) for use in next weeks cash report preparation. |
| O'Loughlin, Morgan | 2/8/2010 | 0.8 | Update claims waterfall with supplemental order to omnibus objection #23 and tie back to ordered document. |
| O'Loughlin, Morgan | 2/8/2010 | 0.7 | Update claims waterfall with supplemental order to omnibus objection #21 and tie back to ordered document. |
| O'Loughlin, Morgan | 2/8/2010 | 0.6 | Review weekly cash flow report prepared by K. Bradshaw (CC) for week ending 2/6/10 and ensure proper classification of proceeds, disbursements and tie ending balance back to bank balance. |
| O'Loughlin, Morgan | 2/8/2010 | 0.4 | Update cash report for week ending 2/6/10 and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/8/2010 | 0.4 | Exchange emails with K. Bradshaw (CC) to discuss cash report preparation. |
| O'Loughlin, Morgan | 2/9/2010 | 1.0 | Update claims waterfall with supplemental order to omnibus objection #28 and tie back to ordered document. |
| O'Loughlin, Morgan | 2/9/2010 | 0.4 | Update total claims filed line in claims waterfall as of 2/9/10. |
| O'Loughlin, Morgan | 2/10/2010 | 0.9 | Finalize claims waterfall and send to the Company and I. Fredericks (SASMF) with general summary of changes to prior version. |
| O'Loughlin, Morgan | 2/10/2010 | 0.9 | Make updates to claims waterfall per comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/10/2010 | 0.7 | Create new bridge for claims waterfall from 2/2/10 to 2/9/10 version with new language for each section of waterfall. |
| O'Loughlin, Morgan | 2/10/2010 | 0.6 | Withdraw unsecured CarMax claims for claims waterfall. |
| Duffy, Robert J | 2/12/2010 | 0.6 | Review updated claims waterfall prepared by M. O'Loughlin (FTI) and provide comments regarding the bridge analysis. |
| O'Loughlin, Morgan | 2/12/2010 | 0.8 | Update claims waterfall with supplemental order on omnibus objection #34. |
| O'Loughlin, Morgan | 2/16/2010 | 0.8 | Finalize claims waterfall for 2/17/10 version and send to the Company and I. Fredericks (SASMF) with general summary of changes to prior version. |
| Cashman, Brian | 2/17/2010 | 0.8 | Review cash flow report prepared by M. O'Loughlin (FTI). |
| Cashman, Brian | 2/17/2010 | 0.7 | Review claims waterfall report updated by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 2/17/2010 | 1.4 | Create detailed listing of claims and update claims waterfall with the effect of filed omnibus objection #66. |
| O'Loughlin, Morgan | 2/17/2010 | 1.3 | Update bridge in claims waterfall to show changes from 2/9/10 version to 2/17/10 version and comments section to explain these changes. |
| O'Loughlin, Morgan | 2/17/2010 | 0.9 | Update total claims filed line in claims waterfall with recently amended CarMax unsecured claim for $21.4M. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| | | | |

### Bankruptcy Reporting and Post-petition Accounting

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| O'Loughlin, Morgan | 2/17/2010 | 0.5 | Review weekly cash flow report prepared by K. Bradshaw (CC) for the week ending 2/13/10 and ensure proper classification of proceeds, disbursements and tie ending balance back to bank balance. |
| O'Loughlin, Morgan | 2/18/2010 | 0.9 | Update notes to weekly cash report for the week ending 2/13/10 and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/18/2010 | 0.7 | Finalize claims waterfall as of 2/17/10 and email to the Company and I. Fredericks (SASMF) with summary of major changes to 2/9/10 version. |
| O'Loughlin, Morgan | 2/18/2010 | 0.6 | Exchange emails with K. Bradshaw (CC) to discuss Georgetown professional fees in weekly cash report. |
| O'Loughlin, Morgan | 2/18/2010 | 0.4 | Finalize weekly cash report for the week ending 2/13/10 and send to the Company for review. |
| Duffy, Robert J | 2/19/2010 | 1.0 | Review claims waterfall analysis as of 2/17/10 and compare to sources and uses analysis provided by B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/19/2010 | 0.3 | Finalize weekly cash report for the week ending 2/13/10 and send to I. Fredericks (SASMF) for distribution to the Committee. |
| O'Loughlin, Morgan | 2/22/2010 | 1.3 | Set up detailed supporting schedule and claims waterfall for filed omnibus objection #69. |
| O'Loughlin, Morgan | 2/22/2010 | 1.2 | Set up detailed supporting schedule and claims waterfall for filed omnibus objection #68. |
| O'Loughlin, Morgan | 2/22/2010 | 1.1 | Set up detailed supporting schedule and claims waterfall for filed omnibus objection #67. |
| O'Loughlin, Morgan | 2/22/2010 | 0.4 | Exchange emails with B. Stark (MGW) regarding claims waterfall support page for claims ordered by court stipulation. |
| O'Loughlin, Morgan | 2/22/2010 | 0.3 | Review treatment of claim #9067 in claims waterfall per email from S. Boehm (MGW). |
| O'Loughlin, Morgan | 2/23/2010 | 1.1 | Compare listing of adjourned claims by omnibus objection from L. Nemerov (FTI) to claims waterfall and exchange emails regarding exceptions. |
| O'Loughlin, Morgan | 2/23/2010 | 0.8 | Compare list of ordered claims by omnibus objection report from L. Nemerov (FTI) to claims waterfall and reconcile any variances. |
| O'Loughlin, Morgan | 2/23/2010 | 0.7 | Review weekly cash flow report prepared by K. Bradshaw (CC) for the week ending 2/20/10 and ensure proper classification of proceeds, disbursements and tie ending balance back to bank balance. |
| O'Loughlin, Morgan | 2/23/2010 | 0.5 | Update notes in weekly cash report for the week ending 2/20/10 and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/23/2010 | 0.3 | Finalize weekly cash report for the week ending 2/20/10 and send to I. Fredericks (SASMF) for distribution to the Committee. |
| Coulombe, Stephen L | 2/24/2010 | 0.3 | Review claims waterfall report prepared by M. O'Loughlin (FTI) and compare to sources and uses analysis assumptions. |
| Cashman, Brian | 2/24/2010 | 0.8 | Listen to omnibus hearing via phone. |
| Cashman, Brian | 2/24/2010 | 0.4 | Review claims waterfall report updated by M. O'Loughlin (FTI). |
| Cashman, Brian | 2/24/2010 | 0.4 | Review cash flow report prepared by M. O'Loughlin (FTI). |

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| *Bankruptcy Reporting and Post-petition Accounting* | | | |
| O'Loughlin, Morgan | 2/24/2010 | 1.2 | Update claims waterfall for supplemental orders on omnibus objections #30 #33, #34, #42,#43, #48, #50 #54, #57, #60. |
| O'Loughlin, Morgan | 2/24/2010 | 0.9 | Update bridge in claims waterfall to show changes from 2/17/10 version to 2/24/10 version and comments section to explain these changes. |
| O'Loughlin, Morgan | 2/24/2010 | 0.9 | Update claims waterfall for supplemental orders on omnibus objections #2, #3, #7, #8, #9 #16, #27, #29. |
| O'Loughlin, Morgan | 2/24/2010 | 0.6 | Email K. Bradshaw (CC) regarding $118K FDIC fees from Bank of America account. |
| O'Loughlin, Morgan | 2/24/2010 | 0.5 | Exchange emails with H. Ferguson (CC) regarding future objections file for claims waterfall and treatment of claims expunged through substantive consolidation. |
| Cashman, Brian | 3/1/2010 | 0.2 | Respond to I. Fredericks (SASMF) request regarding support for adjourned claims in claims waterfall. |
| Duffy, Robert J | 3/2/2010 | 0.6 | Review BOD deck draft from B. Cashman (FTI) and M. Mosier (CC). |
| Cashman, Brian | 3/2/2010 | 1.4 | Review supporting documentation for adjourned claims per claims waterfall in response to request from Skadden. |
| Cashman, Brian | 3/2/2010 | 0.1 | Discuss request from Skadden for support of adjourned claims with M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 3/2/2010 | 1.3 | Prepare listing of adjourned claims sorted by class per request from Skadden. |
| O'Loughlin, Morgan | 3/2/2010 | 0.9 | Prepare listing of future objections sorted by class per request from Skadden. |
| O'Loughlin, Morgan | 3/2/2010 | 0.7 | Review weekly cash flow report prepared by K. Bradshaw (CC). |
| O'Loughlin, Morgan | 3/2/2010 | 0.1 | Discuss request from Skadden for support of adjourned claims with B. Cashman (FTI). |
| Duffy, Robert J | 3/3/2010 | 0.3 | Review claims waterfall. |
| Cashman, Brian | 3/3/2010 | 1.5 | Review updated claims waterfall report. |
| Cashman, Brian | 3/3/2010 | 0.6 | Review weekly cash flow report. |
| Cashman, Brian | 3/3/2010 | 0.3 | Update BOD deck for M. Mosier (CC) changes. |
| O'Loughlin, Morgan | 3/3/2010 | 1.3 | Make updates to ordered per court stipulation page for the effect of  stipulations for Onkyo, TiVo, DirecTV and Winn. |
| O'Loughlin, Morgan | 3/3/2010 | 1.1 | Update bridge in claims waterfall as of 3/4/10 to show changes compared to 2/24/10 version sent to Skadden. |
| O'Loughlin, Morgan | 3/3/2010 | 0.9 | Format claims waterfall and add to BOD deck for M. Mosier (CC). |
| O'Loughlin, Morgan | 3/3/2010 | 0.8 | Update claims waterfall as of 3/4/10 with the effects of supplemental order on Omni #6. |
| O'Loughlin, Morgan | 3/3/2010 | 0.8 | Update total claims filed by class as of 3/4/10 for claims waterfall and tie back to detail. |
| Cashman, Brian | 3/4/2010 | 1.1 | Review CEO incentive plan information. |
| Cashman, Brian | 3/4/2010 | 1.0 | Participate on BOD call. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Bankruptcy Reporting and Post-petition Accounting** | | | |
| Cashman, Brian | 3/4/2010 | 0.9 | Review BOD package. |
| O'Loughlin, Morgan | 3/4/2010 | 2.3 | Create listing of remaining claims by class per request from Skadden. |
| O'Loughlin, Morgan | 3/4/2010 | 1.4 | Format and finalize claims waterfall as of 3/4/10 and send email to Skadden and the Company with summary of major updates since 2/28/10. |
| O'Loughlin, Morgan | 3/4/2010 | 1.2 | Edit claims waterfall with comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 3/4/2010 | 1.2 | Update claims waterfall as of 3/4/10 with withdrawn claims since prior version. |
| Cashman, Brian | 3/5/2010 | 2.0 | Review Protiviti's claims waterfall report and compare to debtors. |
| Cashman, Brian | 3/5/2010 | 1.0 | Review Protiviti's effective date analysis and compare to debtors version. |
| O'Loughlin, Morgan | 3/5/2010 | 1.0 | Review version provided by Protiviti for claims waterfall report and note variances to the debtors version. |
| Cashman, Brian | 3/9/2010 | 1.3 | Review updated claims waterfall report prepared by M. O'Loughlin (FTI). |
| Cashman, Brian | 3/9/2010 | 1.1 | Review weekly cash flow report prepared by K. Bradshaw (CC) and research questions on proceeds and disbursements. |
| O'Loughlin, Morgan | 3/9/2010 | 1.6 | Set up bridge to track updates for claims waterfall from 3/4/10 version. |
| Coulombe, Stephen L | 3/10/2010 | 0.8 | Participate on call with G. Galardi (SASMF) and R. Duffy (FTI) to discuss needs for claims waterfall reporting. |
| Duffy, Robert J | 3/10/2010 | 0.8 | Participate on call with G. Galardi (SASMF) and S. Coulombe (FTI) to discuss needs for claims waterfall reporting. |
| Duffy, Robert J | 3/10/2010 | 0.2 | Review updated one page summary of claims waterfall from M. O'Loughlin (FTI). |
| Cashman, Brian | 3/10/2010 | 0.9 | Participate on call with I. Fredericks (SASMF), G. Galardi (SASMF) and M. O'Loughlin (FTI) to review updated claims waterfall. |
| Cashman, Brian | 3/10/2010 | 0.4 | Review changes to claims waterfall for comments from SASMF. |
| O'Loughlin, Morgan | 3/10/2010 | 1.9 | Set up new one page summary for claims waterfall with comments from G. Galardi (SASMF). |
| O'Loughlin, Morgan | 3/10/2010 | 1.7 | Create logic in claims waterfall for new section for future objections per buckets established by I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 3/10/2010 | 1.3 | Reclassify and add certain claims to reclamation per guidance from SASMF. |
| O'Loughlin, Morgan | 3/10/2010 | 0.9 | Update claims waterfall with effect of recently ordered omnibus objection #65. |
| O'Loughlin, Morgan | 3/10/2010 | 0.9 | Update claims waterfall to capture secured, 503(b)(9), priority and unsecured claims filed post 3/4/10 as late. |
| O'Loughlin, Morgan | 3/10/2010 | 0.9 | Participate on call with I. Fredericks (SASMF), G. Galardi (SASMF) and B. Cashman (FTI) to review updated claims waterfall. |
| O'Loughlin, Morgan | 3/10/2010 | 0.8 | Update claims waterfall with effect of recently ordered omnibus objection #63. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Bankruptcy Reporting and Post-petition Accounting** | | | |
| O'Loughlin, Morgan | 3/10/2010 | 0.6 | Participate on call with I. Fredericks (SASMF) to discuss classification of future objections based on unique listing per H. Ferguson (CC). |
| Cashman, Brian | 3/11/2010 | 0.4 | Review listing of future objections by class prepared by M. O'Loughlin (FTI) as requested by I. Fredericks (SASMF). |
| Cashman, Brian | 3/11/2010 | 0.3 | Review updated claims waterfall for changes to reclamation claims. |
| Cashman, Brian | 3/11/2010 | 0.3 | Review updated claims waterfall for further changes to reclamation claims. |
| O'Loughlin, Morgan | 3/11/2010 | 1.6 | Bridge 3/4/10 version to 3/11/10 version of claims waterfall to treat reclassification of adjourned claims appropriately. |
| O'Loughlin, Morgan | 3/11/2010 | 1.6 | Review stipulation on Alliance Entertainment claims and update claims waterfall appropriately. |
| O'Loughlin, Morgan | 3/11/2010 | 1.3 | Make changes to the layout of the claims waterfall per comments from I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 3/11/2010 | 1.1 | Review stipulation order on reclamation claims being reclassified to unsecured and update claims waterfall appropriately. |
| O'Loughlin, Morgan | 3/11/2010 | 0.9 | Update total claims filed by class as of 3/11/10 for claims waterfall and tie back to detail and footnote $19M IBM claim. |
| O'Loughlin, Morgan | 3/11/2010 | 0.8 | Exchange emails with L, Nemerov (FTI) to ensure that the claims waterfall ties out to the CMSi database. |
| O'Loughlin, Morgan | 3/11/2010 | 0.7 | Update listing of future objections by class per request from I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 3/12/2010 | 1.1 | Update listing of adjourned claims support for claims waterfall based on supplemental omnibus objection for 15, 16 and 19. |
| O'Loughlin, Morgan | 3/12/2010 | 0.7 | Add Alliance claims to 'eliminated by substantive consolidation' per guidance from SASMF. |
| Cashman, Brian | 3/15/2010 | 0.4 | Review waterfall report incorporating changes from call with Skadden. |
| O'Loughlin, Morgan | 3/15/2010 | 1.6 | Update claims waterfall to incorporate changes from call with Skadden and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 3/15/2010 | 1.3 | Review email from S. Baker (SASMF) regarding recently ordered stipulations and update claims waterfall. |
| O'Loughlin, Morgan | 3/15/2010 | 0.6 | Segregate claims filed post 3/4/10 for priority and unsecured per comments from Skadden. |
| Cashman, Brian | 3/16/2010 | 0.5 | Review claims waterfall supporting detail report in new format proposed by Skadden. |
| O'Loughlin, Morgan | 3/16/2010 | 1.9 | Make updates to the court stipulation page based on email from S. Baker (SASMF). |
| O'Loughlin, Morgan | 3/16/2010 | 1.4 | Tie back the adjourned claims listing in claims waterfall to listing per CMSi reporting. |
| O'Loughlin, Morgan | 3/16/2010 | 1.2 | Review recently ordered stipulations and update the adjourned claims listing accordingly. |
| O'Loughlin, Morgan | 3/16/2010 | 0.7 | Review new claims listing from L. Nemerov (FTI) and update claims waterfall. |
| Coulombe, Stephen L | 3/17/2010 | 1.3 | Review claims waterfall and sources and uses analysis. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Bankruptcy Reporting and Post-petition Accounting** | | | |
| Duffy, Robert J | 3/17/2010 | 0.3 | Review latest sources and uses analysis. |
| Cashman, Brian | 3/17/2010 | 0.7 | Update sources and uses analysis. |
| Cashman, Brian | 3/17/2010 | 0.3 | Review weekly cash flow prepared by K. Bradshaw (CC) and distribute. |
| Coulombe, Stephen L | 3/18/2010 | 1.0 | Participate on call with G. Galardi (SASMF) to discuss sources and uses analysis. |
| Cashman, Brian | 3/18/2010 | 1.0 | Update sources and uses analysis for review comments from Skadden. |
| Duffy, Robert J | 3/19/2010 | 0.6 | Participate on call with G. Galardi (SASMF) to discuss timing of confirmation. |
| Duffy, Robert J | 3/23/2010 | 0.7 | Participate on call with G. Galardi (SASMF) to discuss reserve amounts for administrative claims. |
| Cashman, Brian | 3/24/2010 | 1.3 | Review updated claims waterfall prepared by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 3/24/2010 | 2.3 | Update claims waterfall with the effect of supplemental orders on omnibus objection 23, 46, 51, and 52. |
| O'Loughlin, Morgan | 3/24/2010 | 1.6 | Review waterfall reports from L. Nemerov (FTI) for resolved, adjourned, and ordered and tie back CMSi to claims waterfall. |
| O'Loughlin, Morgan | 3/24/2010 | 1.4 | Bridge the 3/11/10 version to the 3/24/10 version of the claims waterfall and update the notes to explain changes. |
| O'Loughlin, Morgan | 3/24/2010 | 1.0 | Finalize the claims waterfall as of 3/24/10 and send summary email to Skadden and the Company. |
| O'Loughlin, Morgan | 3/24/2010 | 0.7 | Update claims waterfall with the effect of Photoco stipulation per email from L. Nemerov (FTI). |
| O'Loughlin, Morgan | 3/24/2010 | 0.6 | Update the allowed claims backup schedule for the claims waterfall as of 3/24/10. |
| O'Loughlin, Morgan | 3/25/2010 | 0.8 | Update the claims waterfall with the effect of recently filed omnibus objection #70. |
| O'Loughlin, Morgan | 3/25/2010 | 0.5 | Make updates to the sources and uses analysis with the most recent changes to the claims waterfall. |
| O'Loughlin, Morgan | 3/25/2010 | 0.4 | Review the claims waterfall and sources and uses analysis with S. Coulombe (FTI). |
| Cashman, Brian | 3/31/2010 | 0.9 | Review updated claims waterfall prepared by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 3/31/2010 | 1.2 | Bridge the 3/24/10 version to the 3/31/10 version of the claims waterfall and update the notes to explain changes. |
| O'Loughlin, Morgan | 3/31/2010 | 1.1 | Make updates to the claims waterfall as of 3/31/10 based on comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 3/31/2010 | 0.7 | Update withdrawn claims detailed schedule per emails from S. Baker (SASMF). |
| **Subtotal - Bankruptcy Reporting and Post-petition Accounting** | | **129.7** | |

*Canadian Matters*

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 2/1/2010 | 1.5 | Prepare CDFS. |
| Lee, Geon | 2/1/2010 | 1.0 | Review Bell's AR reserve calculation for InterTAN. |
| Chin, Gregory | 2/1/2010 | 0.8 | Analyze AR reserve. |
| Lee, Geon | 2/1/2010 | 0.6 | Participate in meeting with M. Murphy (FTI), G. Chin (FTI) to discuss AR Reserve adjustments from the closing date argument. |
| Chin, Gregory | 2/1/2010 | 0.6 | Participate in meeting with M. Murphy (FTI), G. Lee (FTI) to discuss AR Reserve adjustments from the closing date argument. |
| Chin, Gregory | 2/1/2010 | 0.4 | Participate on call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI), G. Lee (FTI). |
| Lee, Geon | 2/1/2010 | 0.4 | Participate on call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI), G. Chin (FTI). |
| Murphy, Mark | 2/1/2010 | 2.5 | Trace the updated Claim figures back to the post-filing AR offset to Stayed AP. |
| Murphy, Mark | 2/1/2010 | 2.5 | Recalculate the Bell A/R provision using updated claims figures. |
| Murphy, Mark | 2/1/2010 | 2.0 | Trace the pre-filing AP debits back to the AP debit reserve set-up by The Source to correct their calculation, which included pre-file AR. |
| Murphy, Mark | 2/1/2010 | 0.6 | Participate in meeting with G. Lee (FTI), G. Chin (FTI) to discuss AR Reserve adjustments from the closing date argument. |
| Murphy, Mark | 2/1/2010 | 0.4 | Participate on call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), G. Chin (FTI), G. Lee (FTI). |
| Lee, Geon | 2/2/2010 | 1.5 | Review AR reserve calculation and support. |
| Lee, Geon | 2/2/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI), G. Chin (FTI). |
| Chin, Gregory | 2/2/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI), G. Lee (FTI). |
| Murphy, Mark | 2/2/2010 | 3.0 | Update the closing date balance sheet from November with YTD information as of 2/2/10. |
| Murphy, Mark | 2/2/2010 | 2.0 | Recalculate the confirmed AR reserve affect based on Bell's McCaw reserve methodology. |
| Murphy, Mark | 2/2/2010 | 1.5 | Calculate the post-filing AR offset realization was as of 2/2/10. |
| Murphy, Mark | 2/2/2010 | 1.0 | Break out the individual receivables that were specifically reserved for on the CDFS and quantified the outstanding receivable. |
| Murphy, Mark | 2/2/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Moser (InterTAN), G. Taber (Osler), S. Moore (A&M), G. Chin (FTI), G. Lee (FTI). |
| Chin, Gregory | 2/5/2010 | 0.7 | Prepare and review adjusted closing data financial statement and escrow summary. |
| Lee, Geon | 2/5/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), M. Moser (InterTAN), J. Marcum (CC) G. Taber (Osler), S. Moore (A&M), G. Chin (FTI), M. Murphy (FTI). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 2/5/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), M. Moser (InterTAN), J. Marcum (CC) G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI), G. Lee (FTI). |
| Chin, Gregory | 2/5/2010 | 0.5 | Partake in weekly claims call with B. McCartney (The Source), J. Carson (The Source), S. Moore (A&M), M. Murphy (FTI). |
| Murphy, Mark | 2/5/2010 | 2.0 | Review Garmin invoice detail behind post-filing set-off to ensure it was not being double counted within the Garmin adjustment per The Source Reconciliation. |
| Murphy, Mark | 2/5/2010 | 1.1 | Create a schedule summarizing the agreed upon BS and the corresponding Working Capital effect on the escrow amount. |
| Murphy, Mark | 2/5/2010 | 1.0 | Review Garmin pre-paid inventory re-class at a PO level to ensure it wasn't included in the post-filing AR setoff. |
| Murphy, Mark | 2/5/2010 | 0.7 | Review The Source reconciliation schedule. |
| Murphy, Mark | 2/5/2010 | 0.6 | Flow the updated AR information into the CDFS. |
| Murphy, Mark | 2/5/2010 | 0.6 | Update the AR collections with the information provided by The Source. |
| Murphy, Mark | 2/5/2010 | 0.5 | Participate in call with J. Murray (Osler), H. Arthurs (Goodman's), M. Moser (InterTAN), J. Marcum (CC) G. Taber (Osler), S. Moore (A&M), G. Chin (FTI), G. Lee (FTI). |
| Murphy, Mark | 2/5/2010 | 0.5 | Partake in weekly claims call with B. McCartney (The Source), J. Carson (The Source), S. Moore (A&M), G. Chin (FTI). |
| Murphy, Mark | 2/8/2010 | 2.0 | Research and record the invoice level detail making up the Garmin portion of Post-file AR offset to verify that the $945k pre-paid inventory reclass was not included. |
| Murphy, Mark | 2/8/2010 | 1.0 | Update the AR collections and Closing Date Financial Statement with the information provided by The Source on Friday's (5-Feb) call. |
| Murphy, Mark | 2/8/2010 | 0.7 | Draft meeting minutes from Friday's (5-Feb) weekly claims call with The Source. |
| Murphy, Mark | 2/9/2010 | 2.5 | Review specific reserve detail for several Category 4 vendors, to determined if several of the specific reserves were in fact in excess of AR and AP Debits. |
| Murphy, Mark | 2/9/2010 | 2.0 | Compare the Category 2-3 Recovery Summary as of 8-Feb to the CDFS by-vendor for Category 1 (Net Stayed AP). |
| Murphy, Mark | 2/9/2010 | 1.7 | Review InterTAN - Status worksheets for Category 1-3 Vendor responses as at 8-Feb to determine what has been updated since the call with The Source on Friday 5-Feb. |
| Murphy, Mark | 2/9/2010 | 0.9 | Reconcile variances in Category 2 Net AR between A&M summary and FTI summary. |
| Murphy, Mark | 2/9/2010 | 0.5 | Transcribe and format email update from The Source regarding Category 2-3 Recovery Summary into the current CDFS workbook. |
| Murphy, Mark | 2/9/2010 | 0.1 | Draft email to S. Moore (A&M) to determine reason for Category 2 Net AR variances. |
| Murphy, Mark | 2/10/2010 | 2.0 | Add the post-file AP to the Specific Reserve detail to try and reconcile to The Source's AR figures. |
| Murphy, Mark | 2/10/2010 | 1.3 | Create a reconciliation worksheet for the Specific Reserves to adjust each provision as a result of FTI's analysis. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 2/12/2010 | 1.8 | Analyze AR reconciliation variances. |
| Chin, Gregory | 2/12/2010 | 1.6 | Analyze AR reserves. |
| Lee, Geon | 2/12/2010 | 1.0 | Participate on call with Curtis, Ruby (Bell), Stikeman, Deloitte, J. Carson (The Source), J. Marcum (CC), M. Mosier (CC), G. Tabor (Osler), S. Moore (A&M), G. Chin (FTI), M. Murphy (FTI) to discuss AR reserve. |
| Chin, Gregory | 2/12/2010 | 1.0 | Participate on call with Curtis, Ruby (Bell), Stikeman, Deloitte, J. Carson (The Source), J. Marcum (CC), M. Mosier (CC), G. Tabor (Osler), S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss AR reserve. |
| Chin, Gregory | 2/12/2010 | 0.7 | Participate on call with J. Marcum (CC), M. Mosier (CC), S. Moore (A&M), G. Taber (Osler), M. Murphy (FTI) to discuss AR reserve and negotiations. |
| Chin, Gregory | 2/12/2010 | 0.6 | Participate on call with. J. Carson (The Source), R. McCartney (The Source), S. Moore (A&M), M. Murphy (FTI) to discuss AR collection and confirmation status. |
| Chin, Gregory | 2/12/2010 | 0.4 | Participate on call with S. Moore (A&M), M. Murphy (FTI) to discuss AR variances. |
| Lee, Geon | 2/12/2010 | 0.3 | Research Bell's receivable variances to the CDFS build-up. |
| Chin, Gregory | 2/12/2010 | 0.3 | Participate on call with S. Moore (A&M) and M. Murphy (FTI) to discuss AR collections and confirmations. |
| Chin, Gregory | 2/12/2010 | 0.2 | Participate on call with S. Moore (A&M) and M. Murphy (FTI) to discuss AR reserves. |
| Lee, Geon | 2/12/2010 | 0.2 | Participate on call with G. Tabor (Osler), G. Lee (FTI), M. Mosier (CC), S. Moore (A&M), M. Murphy (FTI) to discuss AR reserve. |
| Chin, Gregory | 2/12/2010 | 0.2 | Participate on call with G. Tabor (Osler), G. Lee (FTI), M. Mosier (CC), S. Moore (A&M), M. Murphy (FTI) to discuss AR reserve. |
| Chin, Gregory | 2/12/2010 | 0.1 | Participate on call with M. Mosier (CC), S. Moore (A&M), J. Murray (Osler), M. Murphy (FTI) to discuss AR reserve settlement. |
| Murphy, Mark | 2/12/2010 | 2.1 | Aggregate and summarize outstanding Category 3 AR with no response, some vendor discussion, and excess AR. |
| Murphy, Mark | 2/12/2010 | 1.7 | Aggregate and create schedule showing potentially recoverable AR related to The Sources discontinued vendors. |
| Murphy, Mark | 2/12/2010 | 1.0 | Participate on call with Curtis, Ruby (Bell), Stikeman, Deloitte, J. Carson (The Source), J. Marcum (CC), M. Mosier (CC), G. Tabor (Osler), S. Moore (A&M), G. Lee (FTI), G. Chin (FTI) to discuss AR reserve. |
| Murphy, Mark | 2/12/2010 | 0.7 | Create schedule showing the reconciliation variances between the CDFS, Appendix C, The Source Reconciliations, and Vendor Confirmations. |
| Murphy, Mark | 2/12/2010 | 0.7 | Participate on call with J. Marcum (CC), M. Mosier (CC), S. Moore (A&M), G. Taber (Osler), G. Chin (FTI) to discuss AR reserve and negotiations. |
| Murphy, Mark | 2/12/2010 | 0.6 | Participate on call with. J. Carson (The Source), R. McCartney (The Source), S. Moore (A&M), G. Chin (FTI) to discuss AR collection and confirmation status. |
| Murphy, Mark | 2/12/2010 | 0.4 | Participate on call with S. Moore (A&M), G. Chin (FTI) to discuss AR variances. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Murphy, Mark | 2/12/2010 | 0.3 | Participate on call with S. Moore (A&M) and C. Chin (FTI) to discuss AR collections and confirmations. |
| Murphy, Mark | 2/12/2010 | 0.2 | Participate on call with S. Moore (A&M) and G. Chin (FTI) to discuss AR reserves. |
| Murphy, Mark | 2/12/2010 | 0.2 | Participate on call with G. Tabor (Osler), G. Lee (FTI), M. Mosier (CC), S. Moore (A&M), G. Chin (FTI) to discuss AR reserve. |
| Murphy, Mark | 2/12/2010 | 0.1 | Participate on call with M. Mosier (CC), S. Moore (A&M), J. Murray (Osler), C. Chin (FTI) to discuss AR reserve settlement. |
| Murphy, Mark | 2/16/2010 | 2.4 | Create a category 3 Gross AR balance workbook from the data sent to FTI in November from The Source as of June 30, 2009. |
| Chin, Gregory | 2/17/2010 | 2.1 | Review and analyze AR reserves. |
| Murphy, Mark | 2/17/2010 | 1.8 | Begin to reconcile variances to Appendix C and Confirmation Letters by including Pre-paid Inventory balances and the Clearing Account balances by vendor. |
| Murphy, Mark | 2/17/2010 | 1.5 | Create a category 1&2 Net Stayed Payable and Net AR workbook from the data sent to FTI from The Source as of June 30, 2009. |
| Chin, Gregory | 2/18/2010 | 1.7 | Review and analyze AR reserves. |
| Lee, Geon | 2/18/2010 | 1.5 | Conduct AR analysis for CC Canadian working capital dispute. |
| Chin, Gregory | 2/18/2010 | 0.3 | Participate on call with J. Murray (Osler), S. Moore (A&M), M. Murphy (FTI), G. Lee (FTI). |
| Murphy, Mark | 2/18/2010 | 2.0 | Create AR Reserve fluctuation analysis schedule for InterTAN. |
| Murphy, Mark | 2/18/2010 | 1.2 | Prepare specific Reserve collections, adjustment, offset analysis. |
| Murphy, Mark | 2/18/2010 | 0.3 | Participate on call with J. Murray (Osler), S. Moore (A&M), G. Chin (FTI), G. Lee (FTI). |
| Chin, Gregory | 2/19/2010 | 1.8 | Review and analyze Bell AR provision analysis. |
| Lee, Geon | 2/19/2010 | 0.9 | Participate on call with S. Moore (A&M), M. Murphy (FTI), G. Tabor (Osler), J. Marcum (The Source), A. Hutchens (A&M), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Mosier (The Source), G. Chin (FTI). |
| Chin, Gregory | 2/19/2010 | 0.9 | Participate on call with S. Moore (A&M), M. Murphy (FTI), G. Tabor (Osler), J. Marcum (The Source), A. Hutchens (A&M), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Mosier (The Source), G. Lee (FTI). |
| Lee, Geon | 2/19/2010 | 0.5 | Participate on call with G. Taber (Osler), J. Murray (Osler), G. Chin (FTI), M. Murphy (FTI), S. Moore (A&M). |
| Chin, Gregory | 2/19/2010 | 0.5 | Participate on call with G. Taber (Osler), J. Murray (Osler), G. Chin (FTI), G. Lee (FTI), S. Moore (A&M). |
| Lee, Geon | 2/19/2010 | 0.1 | Prepare for conference call. |
| Murphy, Mark | 2/19/2010 | 2.4 | Prepare a provision fluctuation analysis for the provision negotiation. |
| Murphy, Mark | 2/19/2010 | 2.2 | Reconcile Net AR balances to the AR and AP sub ledgers from the CDFS. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Murphy, Mark | 2/19/2010 | 2.0 | Review the Source's AR master reconciliation schedule. |
| Murphy, Mark | 2/19/2010 | 0.9 | Participate on call with S. Moore (A&M), G. Chin (FTI), G. Tabor (Osler), J. Marcum (The Source), A. Hutchens (A&M), H. Arthurs (Goodman's), J. Latham (Goodman's), M. Mosier (The Source), G. Lee (FTI). |
| Murphy, Mark | 2/19/2010 | 0.5 | Participate on call with G. Taber (Osler), J. Murray (Osler), G. Chin (FTI), G. Lee (FTI), S. Moore (A&M). |
| Chin, Gregory | 2/20/2010 | 2.2 | Analyze additional provision analysis - recoverability assessment. |
| Chin, Gregory | 2/20/2010 | 1.8 | Analyze additional provision analysis - collected and confirmed. |
| Chin, Gregory | 2/20/2010 | 0.6 | Analyze additional provision analysis - roll forward AR balances. |
| Lee, Geon | 2/22/2010 | 2.0 | Participate on call with A. Baril (Deloitte), S. Moore (A&M), M. Murphy (FTI), G. Chin (FTI), J. Carson (The Source). |
| Chin, Gregory | 2/22/2010 | 2.0 | Participate on call with A. Baril (Deloitte), S. Moore (A&M), M. Murphy (FTI), G. Lee (FTI), J. Carson (The Source). |
| Chin, Gregory | 2/22/2010 | 1.8 | Categorize AR reserves by reason. |
| Chin, Gregory | 2/22/2010 | 1.7 | Prepare and review detail report of AR reserves. |
| Lee, Geon | 2/22/2010 | 0.5 | Review of The Source and A&M's receivable collection ledger. |
| Chin, Gregory | 2/22/2010 | 0.5 | Participate on call with M. Mosier (CC), J. Murray (Osler), G. Taber, S. Moore, G. Lee, M. Murphy (FTI) to discuss AR reserves. |
| Chin, Gregory | 2/22/2010 | 0.2 | Participate on call with S. Moore to discuss AR reserves. |
| Chin, Gregory | 2/22/2010 | 0.2 | Participate on call with J. Murray (Osler) to discuss AR reserve analysis. |
| Murphy, Mark | 2/22/2010 | 2.3 | Create FTI adjustments to each vendor AR balance in regards to the call with The Source. |
| Murphy, Mark | 2/22/2010 | 2.0 | Participate on call with A. Baril (Deloitte), S. Moore (A&M), G. Chin (FTI), G. Lee (FTI), J. Carson (The Source). |
| Murphy, Mark | 2/22/2010 | 1.8 | Create summary of by-vendor AR categories. |
| Murphy, Mark | 2/22/2010 | 1.0 | Review notes/discussions from the call with The Source. |
| Murphy, Mark | 2/22/2010 | 0.5 | Participate on call with S. Moore (A&M), G. Chin (FTI), G. Tabor (Osler), J. Latham (Goodman's), M. Mosier (The Source), G. Lee (FTI), J. Murray. |
| Murphy, Mark | 2/22/2010 | 0.2 | Participate on call with S. Moore (A&M), G. Chin (FTI). |
| Murphy, Mark | 2/22/2010 | 0.2 | Participate on call with S. Moore (A&M), G. Chin (FTI), M. Mosier (The Source). |
| Chin, Gregory | 2/23/2010 | 1.9 | Analyze and review AR reserve detail report. |
| Chin, Gregory | 2/24/2010 | 2.0 | Analyze Bell proposal for final working capital adjustment. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 2/24/2010 | 0.8 | Participate on call with J. Marcum (CC), M. Mosier (CC), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss working capital settlement. |
| Chin, Gregory | 2/24/2010 | 0.8 | Prepare closing date financial statement. |
| Chin, Gregory | 2/24/2010 | 0.2 | Participate on call with J. Marcum, M. Mosier, G. Lee (FTI), J. Murray, G. Taber, S. Moore to discuss Bell proposal to settle. |
| Chin, Gregory | 2/24/2010 | 0.2 | Participate on call with M. Mosier (CC) to discuss working capital adjustment. |
| Murphy, Mark | 2/24/2010 | 0.8 | Participate on call with J. Marcum (CC), M. Mosier (CC), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), G. Lee (FTI), G. Chin (FTI) to discuss working capital settlement. |
| Chin, Gregory | 2/25/2010 | 1.2 | Analyze CDFS and final working capital adjustments, including Garmin and Lorex offsets. |
| Chin, Gregory | 2/26/2010 | 1.7 | Prepare and review final closing date financial statement. |
| Chin, Gregory | 2/26/2010 | 1.6 | Analyze AR offsets, including Garmin and Lorex. |
| Lee, Geon | 2/26/2010 | 0.8 | Participate on call with M. Mosier (CC), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI) to discuss Garmin and Lorex adjustments. |
| Chin, Gregory | 2/26/2010 | 0.8 | Participate on call with M. Mosier (CC), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), M. Murphy (FTI) to discuss Garmin and Lorex adjustments. |
| Chin, Gregory | 2/26/2010 | 0.7 | Prepare adjusted CDFS. |
| Lee, Geon | 2/26/2010 | 0.7 | Participate on call with R. McCartney (The Source), J. Carson (The Source), Deloitte, S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss AR offsets, including Garmin and Lorex. |
| Chin, Gregory | 2/26/2010 | 0.7 | Participate on call with R. McCartney (The Source), J. Carson (The Source), Deloitte, S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss AR offsets, including Garmin and Lorex. |
| Lee, Geon | 2/26/2010 | 0.5 | Review Garmin and Lorex adjustments from the Notice of Dispute support. |
| Chin, Gregory | 2/26/2010 | 0.4 | Prepare AR offset reconciliation. |
| Chin, Gregory | 2/26/2010 | 0.4 | Review final working capital adjustments. |
| Murphy, Mark | 2/26/2010 | 0.8 | Participate on call with M. Mosier (CC), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss Garmin and Lorex adjustments. |
| Murphy, Mark | 2/26/2010 | 0.7 | Participate on call with R. McCartney (The Source), J. Carson (The Source), Deloitte, S. Moore (A&M), G. Lee (FTI), M. Murphy (FTI) to discuss AR offsets, including Garmin and Lorex. |
| Chin, Gregory | 2/28/2010 | 0.5 | Prepare adjusted AR recovery reconciliation. |
| Chin, Gregory | 3/1/2010 | 1.9 | Prepare and review AP offset reconciliation for CDFS. |
| Chin, Gregory | 3/1/2010 | 0.8 | Reconcile offset adjustments and CDFS. |
| Chin, Gregory | 3/1/2010 | 0.4 | Participate on call with S. Moore (A&M) to discuss CDFS adjustment. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 3/1/2010 | 0.2 | Participate on call with S. Moore (A&M) to discuss offset recoveries. |
| Chin, Gregory | 3/2/2010 | 0.4 | Participate on call with C. Millen (Bell) to discuss working capital adjustments. |
| Chin, Gregory | 3/2/2010 | 0.3 | Participate on call with J. Marcum (The Source), M. Mosier (The Source), J. Murray (Osler), G. Taber (Osler), S. Moore (A&M), J. Latham (Goodmans) to discuss final working capital adjustment. |
| Chin, Gregory | 3/2/2010 | 0.3 | Update CDFS. |
| Chin, Gregory | 3/3/2010 | 0.2 | Review final closing date financial statement. |
| Chin, Gregory | 3/12/2010 | 0.6 | Review detail of Kodak set-off. |
| Chin, Gregory | 3/12/2010 | 0.5 | Participate on call with S. Moore (A&M), J. Murray (Osler), G. Lee (FTI), G. Chin (FTI), B. McCartney (The Source), J. Carson (The Source), Alex (D&T) to discuss Kodak set-off. |
| Lee, Geon | 3/12/2010 | 0.5 | Participate on call with S. Moore (A&M), J. Murray (Osler), G. Lee (FTI), G. Chin (FTI), B. McCartney (The Source), J. Carson (The Source), Alex (D&T). |
| Chin, Gregory | 3/12/2010 | 0.5 | Participate on call with S. Moore (A&M), J. Murray (Osler), M. Murphy (FTI) to discuss Kodak claim. |
| Murphy, Mark | 3/12/2010 | 0.5 | Participate on call with S. Moore (A&M), J. Murray (Osler), G. Chin (FTI). |
| Murphy, Mark | 3/12/2010 | 0.5 | Participate on call with S. Moore (A&M), J. Murray (Osler), G. Lee (FTI), G. Chin (FTI), B. McCartney (The Source), J. Carson (The Source), Alex (D&T). |
| Murphy, Mark | 3/12/2010 | 0.3 | Prepare Kodak support for a Participate on call with The Source regarding the Kodak set-off. |
| **Subtotal - Canadian Matters** | | **139.2** | |
| **Claims Management** | | | |
| Nemerov, Lara | 2/1/2010 | 2.0 | Prepare Omni 66 exhibits c-g. |
| Nemerov, Lara | 2/1/2010 | 1.1 | Prepare exhibit b for Omni 66. |
| Nemerov, Lara | 2/1/2010 | 1.0 | Review claims within Omni 66 to be filed. |
| Nemerov, Lara | 2/1/2010 | 1.0 | Communicate new claims data with team as of 12/14/09. |
| Nemerov, Lara | 2/1/2010 | 0.9 | Prepare Omni 67 exhibits c-d. |
| Schaefer, Karl | 2/1/2010 | 0.5 | Load claim images into CMS per request of L. Nemerov (FTI). |
| Robinson, Joshua M. | 2/2/2010 | 0.8 | Work with L. Nemerov (FTI) to begin to prepare next round of objections. |
| Nemerov, Lara | 2/2/2010 | 2.3 | Prepare supplemental order exhibits for Omni 20 withdrawing claim 501 and ordering claim 423. |
| Nemerov, Lara | 2/2/2010 | 0.8 | Prepare claims waterfall data for M. O'Loughlin (FTI). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 2/2/2010 | 0.8 | Work with J. Robinson (FTI) to begin to prepare next round of objections. |
| Nemerov, Lara | 2/2/2010 | 0.7 | Continue to prepare claims waterfall data for M. O'Loughlin (FTI). |
| Robinson, Joshua M. | 2/3/2010 | 0.7 | Read and respond to email questions. |
| Nemerov, Lara | 2/3/2010 | 2.0 | Prepare Omni 68 exhibits c-f. |
| Nemerov, Lara | 2/3/2010 | 1.5 | Review claims that I have generated a supplemental order for but have never been posted to the docket. |
| Nemerov, Lara | 2/3/2010 | 1.0 | Prepare supplemental order exhibit for Omni 21 per request of B. Stark (MGW). |
| Nemerov, Lara | 2/3/2010 | 0.7 | Prepare supplemental order exhibit for Omni 34 per request of B. Stark (MGW). |
| Nemerov, Lara | 2/3/2010 | 0.6 | Review claims within Omni 68 to be filed. |
| Nemerov, Lara | 2/3/2010 | 0.5 | Provide Omni 23 exhibit a supplemental order for FUJI to H. Ferguson (CC). |
| Nemerov, Lara | 2/4/2010 | 2.5 | Review claims waterfall detailed ordered claims and provide changes, including claim #13685 to M. O'Loughlin (FTI). |
| Nemerov, Lara | 2/4/2010 | 1.5 | Check multiple claim report for claims waterfall and ensure correct reporting. |
| Nemerov, Lara | 2/4/2010 | 1.1 | Create outstanding exhibits objection tracker - update claim 6193 per B. Stark (MGW). |
| Nemerov, Lara | 2/4/2010 | 0.4 | Review claim 7969 reconciled amounts per request of K. Barksdale (CC). |
| Robinson, Joshua M. | 2/5/2010 | 0.8 | Answer questions from L. Nemerov (FTI) related to objections. |
| Robinson, Joshua M. | 2/5/2010 | 0.8 | Review draft objection orders prepared by L. Nemerov (FTI). |
| Nemerov, Lara | 2/5/2010 | 2.2 | Revise Omni 68 exhibits c-f. |
| Nemerov, Lara | 2/5/2010 | 0.8 | Create data files for Omnis 15, 16, 30, 32, 35 and provide to I. Panziles (KCC). |
| Robinson, Joshua M. | 2/8/2010 | 2.0 | Work with L. Nemerov (FTI) to adjust claims in database resolved by stipulation. |
| Nemerov, Lara | 2/8/2010 | 2.0 | Work with J. Robinson (FTI) to adjust claims in database resolved by stipulation. |
| Nemerov, Lara | 2/8/2010 | 0.4 | Update claims expunged by PBGC settlement agreement. |
| Nemerov, Lara | 2/8/2010 | 0.2 | Send POC copies to S. Boehm (MGW) for claims to be filed on Omni 68. |
| Nemerov, Lara | 2/8/2010 | 0.2 | Communicate new claims data with team as of 12/14/09. |
| Schaefer, Karl | 2/8/2010 | 0.8 | Load claim images into CMS per request of L. Nemerov (FTI). |
| Robinson, Joshua M. | 2/9/2010 | 0.6 | Answer questions from L. Nemerov (FTI) related to claims. |
| Nemerov, Lara | 2/9/2010 | 0.6 | Prepare supplemental order exhibit for Omni 25 per request of B. Stark (MGW). |
| Nemerov, Lara | 2/9/2010 | 0.2 | Communicate new claims data with team as of 12/14/09. |
| Nemerov, Lara | 2/9/2010 | 0.2 | Update new claim amounts per request of K. Barksdale (CC). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Robinson, Joshua M. | 2/10/2010 | 1.1 | Review draft objection orders prepared by L. Nemerov (FTI). |
| Nemerov, Lara | 2/10/2010 | 2.0 | Revise exhibit pages for Alliance stipulation agreement per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 2/10/2010 | 1.0 | Continue to revise exhibit pages for Alliance stipulation agreement per request of P. Dangelo (SASMF). |
| Robinson, Joshua M. | 2/11/2010 | 2.5 | Continue to participate on claims status call. |
| Robinson, Joshua M. | 2/11/2010 | 2.0 | Participate on claims status call. |
| Cashman, Brian | 2/11/2010 | 0.8 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and J. McDonald (CC) to discuss tax related claims. |
| Cashman, Brian | 2/11/2010 | 0.7 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and K. Bradshaw (CC) to discuss insurance and other claims. |
| Cashman, Brian | 2/11/2010 | 0.7 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and B. Fose (CC) to discuss vendor receivables and other claims. |
| Cashman, Brian | 2/11/2010 | 0.7 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and A. Pietrantoni (CC) to discuss HR claims. |
| Cashman, Brian | 2/11/2010 | 0.5 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and H. Ferguson (CC) to discuss claims. |
| Nemerov, Lara | 2/11/2010 | 1.0 | Revise supplemental order exhibit for Omni 23 per request of B. Stark (MGW). |
| Robinson, Joshua M. | 2/12/2010 | 0.6 | Answer questions related to rebate checks from S. Baker. |
| Robinson, Joshua M. | 2/12/2010 | 0.4 | Work with L. Nemerov (FTI) in reviewing claims for objection. |
| Nemerov, Lara | 2/12/2010 | 1.1 | Review claims to be filed on Omnis 66-68 and communicate proposed Omnis with team. |
| Nemerov, Lara | 2/12/2010 | 0.7 | Prepare supplemental order exhibit for Omni 33 per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 2/12/2010 | 0.6 | Revise exhibit pages for Alliance stipulation agreement per request of P. Dangelo (SASMF). |
| Robinson, Joshua M. | 2/16/2010 | 1.2 | Work with L. Nemerov (FTI) to prepare objection exhibits. |
| Nemerov, Lara | 2/16/2010 | 2.1 | Prepare multiple supplemental order exhibits to withdraw debtors' objection to claims per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/16/2010 | 1.9 | Continue to prepare multiple supplemental order exhibits to withdraw debtors' objection to claims per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/16/2010 | 1.1 | Prepare exhibit c-e for Omni 67 and send to team. |
| Nemerov, Lara | 2/16/2010 | 0.9 | Prepare exhibit c-e for Omni 68 and send to team. |
| Nemerov, Lara | 2/16/2010 | 0.6 | Prepare supplemental order exhibit to withdraw debtors' objection to claim 4747 on Omni 30 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/16/2010 | 0.5 | Prepare exhibit c for Omni 66 and send to team. |
| Nemerov, Lara | 2/16/2010 | 0.4 | Prepare supplemental order exhibit for Omni 29 per request of D. Blanks (MGW). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 2/16/2010 | 0.2 | Prepare supplemental order exhibit for Omni 42 per request of S. Boehm (MGW). |
| Schaefer, Karl | 2/16/2010 | 2.0 | Prepare claims for Omnibus 68. Load data into CMS. |
| Robinson, Joshua M. | 2/17/2010 | 2.3 | Begin to prepare objection exhibits for Omnis 67-70. |
| Robinson, Joshua M. | 2/17/2010 | 0.4 | Read and respond to email questions. |
| Nemerov, Lara | 2/17/2010 | 0.9 | Coordinate exhibits (dupes, amends, etc) to be included in each future objection and review notes from B. Stark (MGW). |
| Nemerov, Lara | 2/17/2010 | 0.8 | Prepare supplemental order exhibit for Omni 54 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/17/2010 | 0.8 | Revise supplemental order exhibit for Omni 8 and 9 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/17/2010 | 0.5 | Create data files for Omni 66 and provide to T. Kelsey (KCC). |
| Nemerov, Lara | 2/17/2010 | 0.5 | Create new claims listing processing instructions for K. Schaefer (FTI). |
| Nemerov, Lara | 2/17/2010 | 0.4 | Prepare supplemental order exhibit for Omni 60 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/17/2010 | 0.2 | Revise supplemental order exhibit for Omni 54 per request of S. Boehm (MGW). |
| Robinson, Joshua M. | 2/18/2010 | 2.2 | Continue to process and prepare claims for Omnis 67. |
| Robinson, Joshua M. | 2/18/2010 | 2.1 | Continue to process and prepare claims for Omnis 69. |
| Robinson, Joshua M. | 2/18/2010 | 1.8 | Continue to process and prepare claims for Omnis 68. |
| Robinson, Joshua M. | 2/18/2010 | 0.9 | Read and respond to email questions. |
| Schaefer, Karl | 2/18/2010 | 1.3 | Generate exhibits for omni 67, 68, 69. |
| Schaefer, Karl | 2/18/2010 | 1.1 | Create supplemental orders on objections 48, 57. |
| Schaefer, Karl | 2/18/2010 | 0.3 | Make updates to claims 13161, 7671. |
| Robinson, Joshua M. | 2/19/2010 | 2.3 | Process changes per review for Omnis 68. |
| Robinson, Joshua M. | 2/19/2010 | 1.8 | Process changes per review for Omnis 69. |
| Robinson, Joshua M. | 2/19/2010 | 1.6 | Process changes per review for Omnis 67. |
| Robinson, Joshua M. | 2/19/2010 | 1.5 | Adjust claims from multiple Omni's to a new Omni 70 Per request from Counsel. |
| Robinson, Joshua M. | 2/19/2010 | 0.8 | Create mail files for omnibus objections and send to KCC. |
| Schaefer, Karl | 2/19/2010 | 2.5 | Generate various omnibus objection exhibits per request S. Baker (SASMF). |
| Schaefer, Karl | 2/19/2010 | 2.2 | Update exhibits per request of J. Robinson (FTI). |
| Schaefer, Karl | 2/19/2010 | 2.0 | Create exhibit B files and mail files for omnibus objections 67, 68, 69. |
| Schaefer, Karl | 2/19/2010 | 0.6 | Run updated exhibits for omnibus objection 67,68, 69 for J. Robinson (FTI). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Robinson, Joshua M. | 2/22/2010 | 1.3 | Reconcile claims database to ensure new Omni's are evented properly in the system. |
| Cashman, Brian | 2/22/2010 | 0.2 | Review email from S. Boehm (MGW) regarding claims. |
| Nemerov, Lara | 2/22/2010 | 0.7 | Provide claim detail to M. O'Loughlin (FTI) for Omnis 66-69 for waterfall reporting purposes. |
| Nemerov, Lara | 2/22/2010 | 0.6 | Create adjourned claim detail for M. O'Loughlin (FTI) for waterfall reporting purposes. |
| Nemerov, Lara | 2/22/2010 | 0.4 | Create data files for Omni 8,3,7,2,60 and provide to T. Kelsey (KCC). |
| Nemerov, Lara | 2/22/2010 | 0.4 | Create ordered claim detail for M. O'Loughlin (FTI) for waterfall reporting purposes. |
| Nemerov, Lara | 2/22/2010 | 0.4 | Review claims on Omni 67 and address possible issues with K. Schaefer (FTI). |
| Robinson, Joshua M. | 2/23/2010 | 2.3 | Mark and create additional claim exhibits for Omnis 70. |
| Robinson, Joshua M. | 2/23/2010 | 0.8 | Run and QC exhibit for Omni 70 and send to H. Fergusson (CC) for review. |
| Robinson, Joshua M. | 2/23/2010 | 0.6 | Read and respond to email questions. |
| Nemerov, Lara | 2/23/2010 | 1.0 | Answer various claim questions from FTI team including responding to any issues on the waterfall from M. O'Loughlin (FTI). |
| Nemerov, Lara | 2/24/2010 | 1.8 | Revise claims chart for court hearing for S. Boehm (MGW). |
| Nemerov, Lara | 2/24/2010 | 1.0 | Review claim 14588 and 14707 per request of H. Ferguson (CC). |
| Nemerov, Lara | 2/24/2010 | 0.9 | Prepare supplemental order exhibit for Omni 46 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/24/2010 | 0.6 | Provide S. Boehm (MGW) adjourned claim detail for reconciling differences. |
| Cashman, Brian | 2/25/2010 | 1.4 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and B. Fose (CC) to discuss vendor receivables and other claims. |
| Cashman, Brian | 2/25/2010 | 1.3 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and J. McDonald (CC) to discuss tax related claims. |
| Cashman, Brian | 2/25/2010 | 0.8 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and A. Pietrantoni (CC) to discuss HR claims. |
| Cashman, Brian | 2/25/2010 | 0.5 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and K. Bradshaw (CC) to discuss insurance and other claims. |
| Cashman, Brian | 2/25/2010 | 0.5 | Participate in claims review meeting with Skadden, McGuire Woods, M. Mosier (CC) and D. Miller (CC) to discuss real estate/landlord claims. |
| Nemerov, Lara | 2/26/2010 | 1.0 | Prepare order exhibits for Omnis 63 and 65 per request of S. Boehm (MGW). |
| Nemerov, Lara | 2/26/2010 | 0.3 | Provide PNY claim summary to S. Sidhu (SASMF). |
| Nemerov, Lara | 2/26/2010 | 0.2 | Review KCC docket for Omni 70 filed exhibits - confirm with J. Knopke (CC). |
| Robinson, Joshua M. | 3/1/2010 | 0.7 | Review email claim question from S. Sidhu (SASMF). |
| Robinson, Joshua M. | 3/2/2010 | 1.3 | Answer questions from L. Nemerov (FTI) related to Claims. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Robinson, Joshua M. | 3/2/2010 | 0.8 | Review question from J. Knopke (CC) related to tax claim status. |
| Robinson, Joshua M. | 3/2/2010 | 0.3 | Review stip for Onkyo with L. Nemerov (FTI). |
| Nemerov, Lara | 3/2/2010 | 2.0 | Generate supplemental order for Omnis 5,6,33 per request of P. Dangelo (SASMF). |
| Robinson, Joshua M. | 3/3/2010 | 0.8 | Review and send listing of payments made after filing date to H. Ferguson (CC). |
| Robinson, Joshua M. | 3/3/2010 | 0.5 | Reconcile FTI adjourned claims vs. MGW adjourned claims from L. Nemerov (FTI). |
| Nemerov, Lara | 3/4/2010 | 2.1 | Find claims necessary for updating based on Skadden adjourned claims listing. |
| Nemerov, Lara | 3/4/2010 | 1.9 | Review discrepancies between KCC and CMS claims database. |
| Nemerov, Lara | 3/4/2010 | 1.0 | Create waterfall reports: resolved, adjourned, total claims filed. |
| Nemerov, Lara | 3/4/2010 | 0.5 | Review Seagate analysis as request by S. Sidhu (SASMF). |
| Robinson, Joshua M. | 3/8/2010 | 1.1 | Review questions from L. Nemerov (FTI) related to handing of various stipulations. |
| Robinson, Joshua M. | 3/8/2010 | 1.0 | Prepare supplemental order for Omni 50 and send to S. Baker (SASMF). |
| Nemerov, Lara | 3/8/2010 | 1.9 | Create data files for Omnis 15, 16, 63, and 65 per request of T. Kelsey (KCC). |
| Nemerov, Lara | 3/8/2010 | 1.4 | Update claims waterfall reporting for the docketing of supplemental orders on Omnis 15, 16, 63, and 65. |
| Nemerov, Lara | 3/8/2010 | 1.1 | Communicate new claims data with team as of 3/8/10. |
| Nemerov, Lara | 3/8/2010 | 0.9 | Review stipulation on docket number 6600 and update claims database accordingly. |
| Nemerov, Lara | 3/8/2010 | 0.7 | Generate supplemental order for Omnis 23 per request of B. Stark (SASMF). |
| Nemerov, Lara | 3/8/2010 | 0.4 | Generate supplemental order on Omni 65 per request of S. Boehm (MGW). |
| Robinson, Joshua M. | 3/9/2010 | 0.3 | Update claims database based on email from S. Baker (SASMF). |
| Nemerov, Lara | 3/9/2010 | 1.3 | Communicate with E. Gershbein (KCC) potential claim amount issues based on Omnibus Objections . |
| Nemerov, Lara | 3/9/2010 | 1.0 | Generate supplemental order on Omni 42 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/9/2010 | 0.4 | Update claims database to reflect docketing error on claim 13072 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/9/2010 | 0.3 | Update claims database to reflect Omni 44 for claim 13693. |
| Nemerov, Lara | 3/9/2010 | 0.2 | Check for any claims filed by Certegy based on the settlement within KCC docket. |
| Nemerov, Lara | 3/10/2010 | 2.0 | Review stipulations recently posted on docket and confirm updates with S. Boehm (MGW). |
| Nemerov, Lara | 3/10/2010 | 2.0 | Make claim updates within CMS in preparation for weekly waterfall report. |
| Nemerov, Lara | 3/10/2010 | 1.9 | Create waterfall reports: resolved, adjourned, total claims filed. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 3/10/2010 | 0.8 | Update claims based on triage file from K. Barksdale (CC). |
| Nemerov, Lara | 3/10/2010 | 0.3 | Generate supplemental order on Omni 42 per request of L. Scott (MGW). |
| Robinson, Joshua M. | 3/11/2010 | 1.2 | Answer questions from L. Nemerov (FTI) related to claims. |
| Robinson, Joshua M. | 3/11/2010 | 0.3 | Answer email from H. Ferguson (CC). |
| Nemerov, Lara | 3/11/2010 | 2.0 | Generate corrected order on Omni 23 per request of B. Stark (MGW). |
| Nemerov, Lara | 3/11/2010 | 1.2 | Modify corrected order on Omni 23 per request of B. Stark (MGW). |
| Nemerov, Lara | 3/11/2010 | 1.1 | Review claims modified via memorandum opinion and confirm with S. Baker (SASMF). |
| Nemerov, Lara | 3/11/2010 | 1.0 | Modify supplemental order on Omni 42 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/11/2010 | 1.0 | Generate corrected order on Omni 23 per request of B. Stark (MGW) (cont.). |
| Nemerov, Lara | 3/11/2010 | 1.0 | Review potential claims reporting issues as listed by H. Ferguson (CC). |
| Nemerov, Lara | 3/11/2010 | 0.7 | Update omnibus objection report (claims history) to reflect Omni 69 per request of K. Barksdale(CC). |
| Robinson, Joshua M. | 3/12/2010 | 1.1 | Answer questions from L. Nemerov (FTI) related to claims. |
| Nemerov, Lara | 3/12/2010 | 1.8 | Review resolved claims listing from M. O'Loughlin (FTI) for any potential errors within waterfall report. |
| Nemerov, Lara | 3/12/2010 | 0.7 | Enter claim updates into CMS per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/12/2010 | 0.5 | Review claim 244 for Envision in CMS per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/15/2010 | 1.2 | Generate supplemental order for Omni 24 per request of D. Blanks (MGW). |
| Nemerov, Lara | 3/15/2010 | 1.0 | Generate supplemental order for Omnis 10,19 per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 3/15/2010 | 0.8 | Generate supplemental order for Omnis 27 per request of D. Blanks (MGW). |
| Nemerov, Lara | 3/15/2010 | 0.5 | Modify supplemental order on Omni 23 per request of B. Stark (MGW). |
| Robinson, Joshua M. | 3/16/2010 | 0.6 | Review claims questions from Skadden with L. Nemerov (FTI). |
| Robinson, Joshua M. | 3/16/2010 | 0.4 | Review stipulation questions from L. Nemerov (FTI). |
| Nemerov, Lara | 3/16/2010 | 1.0 | Communicate new claims data with team as of 3/16/10. |
| Nemerov, Lara | 3/16/2010 | 0.9 | Review stipulation settling claims with FM and update claims database accordingly. |
| Nemerov, Lara | 3/16/2010 | 0.6 | Review Onkyo claims within stipulation and update appropriately per request of K. Barksdale (CC). |
| Robinson, Joshua M. | 3/17/2010 | 0.7 | Compose email question to D. Blanks (MGW) to clarify supplemental orders to claims. |
| Robinson, Joshua M. | 3/17/2010 | 0.5 | Begin to prepare Omnibus Claims summary. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 3/17/2010 | 0.3 | Review claim 330 and confirm updates with P. Dangelo (SASMF). |
| Robinson, Joshua M. | 3/18/2010 | 0.7 | Begin to prepare Omnibus Objection 70. |
| Robinson, Joshua M. | 3/18/2010 | 0.3 | Review questions from L. Nemerov (FTI) related to supplemental orders. |
| Nemerov, Lara | 3/18/2010 | 1.9 | Create demonstrative claims chart for hearing per request of D. Blanks (MGW). |
| Robinson, Joshua M. | 3/19/2010 | 1.8 | Finalize Omni 70 and send to J. Liberia (SASMF) for review. |
| Nemerov, Lara | 3/19/2010 | 1.0 | Generate filed exhibits on Omni 70 per request of J. Robinson (FTI). |
| Nemerov, Lara | 3/19/2010 | 0.6 | Enter claim updates into CMS per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/19/2010 | 0.5 | Generate supplemental order on Omni 4 per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 3/19/2010 | 0.3 | Update claims based on triage file from K. Barksdale (CC). |
| Nemerov, Lara | 3/19/2010 | 0.2 | Modify supplemental order on Omni 4 per request of P. Dangelo (SASMF). |
| Robinson, Joshua M. | 3/22/2010 | 1.5 | Process additions and changes to Omni 70 per request from J. Liberia (SASMF). |
| Nemerov, Lara | 3/22/2010 | 1.1 | Search for files sent to myself from claims team for purposes of generating Omni 70. |
| Nemerov, Lara | 3/22/2010 | 0.7 | Enter claim updates into CMS per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/22/2010 | 0.5 | Generate filed exhibits on Omni 70 per request of J. Robinson (FTI). |
| Nemerov, Lara | 3/22/2010 | 0.4 | Generate supplemental order for Omni 39 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/22/2010 | 0.4 | Generate supplemental order for Omni 20 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/22/2010 | 0.3 | Confirm status of Miner Fleet claims with S. Baker (SASMF) and update CMS appropriately. |
| Nemerov, Lara | 3/22/2010 | 0.2 | Update claim 1385 in CMS per request of K. Barksdale (CC). |
| Robinson, Joshua M. | 3/23/2010 | 2.5 | Process additions and changes to Omni 70 per request from J. Liberia (SASMF). |
| Nemerov, Lara | 3/23/2010 | 1.9 | Review CMS reporting system per request of K. Barksdale (CC) for any potential errors created within database. |
| Nemerov, Lara | 3/23/2010 | 1.0 | Review claims recently modified within stipulations and update appropriately per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/23/2010 | 1.0 | Communicate new claims data with team as of 3/22/10. |
| Robinson, Joshua M. | 3/24/2010 | 0.6 | Send excel version of comments for adjustment related to Omni 70 to S. Sidhu (SASMF). |
| Nemerov, Lara | 3/24/2010 | 2.0 | Make claim updates within CMS in preparation for weekly waterfall report. |
| Nemerov, Lara | 3/24/2010 | 1.9 | Generate orders for Omnis 66 and 68 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/24/2010 | 1.3 | Create waterfall reports: resolved, adjourned, total claims filed. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 3/24/2010 | 0.2 | Review Photoco stipulation per request of M. O'Loughlin (FTI) and update database accordingly. |
| Nemerov, Lara | 3/24/2010 | 0.2 | Respond to inquiry from M. O'Loughlin (FTI) regarding Omnis 46, 23, 51, and 52. |
| Robinson, Joshua M. | 3/25/2010 | 2.4 | Process additions and changes to Omni 70 per request from J. Liberia (SASMF). |
| Robinson, Joshua M. | 3/25/2010 | 1.6 | Continue to process changes to Omni 70 from Skadden. |
| Nemerov, Lara | 3/25/2010 | 1.6 | Review discrepancies between M. O'Loughlin and myself for our ordered claims listing. |
| Nemerov, Lara | 3/25/2010 | 1.2 | Revise exhibits for Omnis 66,68, and 69 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/25/2010 | 0.4 | Generate detail list of ordered claims per request of M. O'Loughlin (FTI) for waterfall report. |
| Nemerov, Lara | 3/26/2010 | 0.7 | Modify crystal report for Omni 70 to accommodate large comments within exhibit e. |
| Nemerov, Lara | 3/26/2010 | 0.7 | Generate exhibit b on Omni 70 for filed exhibit. |
| Nemerov, Lara | 3/26/2010 | 0.6 | Modify exhibits on Omni 70 to reflect claim changes for filed exhibit. |
| Nemerov, Lara | 3/26/2010 | 0.5 | Generate data file on Omni 70 for filed exhibit to send to KCC. |
| Nemerov, Lara | 3/26/2010 | 0.5 | Review any potential claims modified to be filed under InterTAN per request of E. Gershbein (KCC). |
| Nemerov, Lara | 3/29/2010 | 1.2 | Review claims modified on Omni 34 and verify all are being correctly exhibited within CMS per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/29/2010 | 1.1 | Communicate new claims data with team as of 3/29/10. |
| Nemerov, Lara | 3/29/2010 | 0.8 | Generate orders for Omni 67 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/29/2010 | 0.6 | Generate supplemental order for Omni 65 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/29/2010 | 0.4 | Generate supplemental order for Omni 4 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/30/2010 | 1.7 | Make claim updates within CMS in preparation for weekly waterfall report. |
| Nemerov, Lara | 3/30/2010 | 0.7 | Enter claim updates into CMS per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/30/2010 | 0.6 | Generate supplemental order for Omni 19 per request of D. Blanks (MGW). |
| Nemerov, Lara | 3/30/2010 | 0.4 | Review Credit Suisse claims on Omni 23 within KCC and confirm status with B. Stark (MGW). |
| Nemerov, Lara | 3/31/2010 | 0.6 | Review proposed settlement between Debtors, Navarre, Symantec and update CMS accordingly. |
| Nemerov, Lara | 3/31/2010 | 0.4 | Enter claim updates into CMS per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/31/2010 | 0.3 | Generate supplemental order for Omni 56 per request of S. Boehm (MGW). |
| Nemerov, Lara | 3/31/2010 | 0.2 | Respond to inquiry from M. O'Loughlin (FTI) regarding Omni 23. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 4/1/2010 | 1.0 | Generate supplemental order for Omni 56 per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 4/1/2010 | 0.7 | Generate supplemental order for Omni 27 per request of B. Stark (MW). |
| Nemerov, Lara | 4/2/2010 | 1.9 | Continue to reconcile KCC to CMS claims. |
| Nemerov, Lara | 4/2/2010 | 0.5 | Make claim updates per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/2/2010 | 0.3 | Reconcile KCC to CMS claims. |
| Nemerov, Lara | 4/2/2010 | 0.3 | Contact E. Gershbein (KCC) regarding potential reclamation claims. |
| Robinson, Joshua M. | 4/5/2010 | 0.5 | Review adjustments to CMSi made by L. Nemerov (FTI). |
| Cashman, Brian | 4/5/2010 | 0.7 | Review updated claims waterfall analysis. |
| Nemerov, Lara | 4/5/2010 | 0.9 | Make any claim waterfall updates per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 4/5/2010 | 0.5 | Make claim updates per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/5/2010 | 0.5 | Update claim docketing issues in CMS per request of K. Barksdale (CC). |
| Nemerov, Lara | 4/6/2010 | 1.5 | Rerun Schimenti Construction analysis with new check clear dates per request of B. Stark (MW). |
| Nemerov, Lara | 4/6/2010 | 1.3 | Review CMS for any recent changes to be incorporated into the claims waterfall. |
| Nemerov, Lara | 4/6/2010 | 1.0 | Communicate new claims data with team as of 4/6/10. |
| Nemerov, Lara | 4/6/2010 | 0.8 | Communicate claim changes to M. O'Loughlin (FTI) with Omnis 56 and 66. |
| Nemerov, Lara | 4/6/2010 | 0.4 | Update new claim docketing issues per request of K. Barksdale (CC). |
| Nemerov, Lara | 4/6/2010 | 0.3 | Contact H. Ferguson (CC) for missing check clear dates for Schimenti Construction per request of B. Stark (MW). |
| Nemerov, Lara | 4/6/2010 | 0.3 | Confirm claims that are reclamation have been correctly docketed in KCC/CMS. |
| Nemerov, Lara | 4/7/2010 | 1.7 | Rerun Vector Security analysis with new check clear dates per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 4/7/2010 | 1.0 | Generate supplemental order for Omni 58 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/7/2010 | 0.7 | Make claim updates per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/7/2010 | 0.4 | Contact H. Ferguson for missing check clear dates for Vector Security per request of P. Dangelo (SASMF). |
| Cashman, Brian | 4/8/2010 | 1.0 | Review future objections and adjourned claims listing prepared by M. O'Loughlin (FTI) at request of Skadden. |
| O'Loughlin, Morgan | 4/8/2010 | 1.3 | Create listing of all adjourned claims by class per request of Skadden. |
| O'Loughlin, Morgan | 4/8/2010 | 1.2 | Create listing of all future objections by class per request of Skadden. |
| Nemerov, Lara | 4/8/2010 | 1.0 | Generate supplemental order for Omni 30 per request of S. Boehm (MW). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| O'Loughlin, Morgan | 4/8/2010 | 0.5 | Set up file for FTI March fee statement. |
| Robinson, Joshua M. | 4/9/2010 | 1.0 | Review supplemental order for omnibus objection #30 created by L. Nemerov (FTI) and provide comments. |
| Nemerov, Lara | 4/9/2010 | 2.0 | Generate remaining claims analysis and tie out to current waterfall per request of S. Sidhu (SASMF). |
| Nemerov, Lara | 4/9/2010 | 2.0 | Generate remaining claims analysis and tie out to current waterfall per request of S. Sidhu (SASMF) (continued). |
| Nemerov, Lara | 4/9/2010 | 1.5 | Generate remaining claims analysis and tie out to current waterfall per request of S. Sidhu (SASMF) (continued). |
| Robinson, Joshua M. | 4/12/2010 | 0.6 | Exchange emails with S. Sidhu (SASMF) regarding remaining secured claims after section III of the waterfall. |
| Cashman, Brian | 4/12/2010 | 0.3 | Respond to question from TACM group regarding claims. |
| Nemerov, Lara | 4/12/2010 | 1.5 | Review claims waterfall and ensure supplemental orders are correctly updated. |
| Nemerov, Lara | 4/12/2010 | 0.8 | Generate supplemental order for Omni 67 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/12/2010 | 0.7 | Generate remaining claims analysis and tie out to current waterfall per request of S. Sidhu (SASMF) (continued). |
| Nemerov, Lara | 4/12/2010 | 0.5 | Review claims 14991 and 14994 per request of J. Knopke (CC). |
| Nemerov, Lara | 4/13/2010 | 0.7 | Compile listing of ordered claims (omnibus objections) for claims waterfall. |
| Nemerov, Lara | 4/14/2010 | 1.0 | Review claim 14896 per request of J. Knopke (CC) and discuss with E. Gershbein (KCC). |
| Nemerov, Lara | 4/15/2010 | 1.7 | Maintain and update claim history report for K. Barksdale (CC). |
| Nemerov, Lara | 4/15/2010 | 0.8 | Review claims waterfall and summary changes from previous week waterfall. |
| Nemerov, Lara | 4/15/2010 | 0.3 | Compile Omni 67 claim detail for waterfall updating. |
| Nemerov, Lara | 4/15/2010 | 0.2 | Review credit suisse claims on Omni 23 and update CMS appropriately. |
| Nemerov, Lara | 4/20/2010 | 1.3 | Rerun Universal Pictures and Display analysis with new check clear dates per request of J. Liberi (SASMF). |
| Nemerov, Lara | 4/20/2010 | 0.2 | Contact M. Smithson (CC) for missing check clear dates for Universal Pictures and display per request of J. Liberi (SASMF). |
| Robinson, Joshua M. | 4/21/2010 | 1.7 | Participate in meeting with D. Gottleib (CH) and H., Ferguson (CC) to discuss claims process. |
| Nemerov, Lara | 4/23/2010 | 1.4 | Write data load process memo. |
| Nemerov, Lara | 4/23/2010 | 1.1 | Generate supplemental order for Omni 23 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/23/2010 | 1.0 | Generate supplemental order for Omni 5 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/23/2010 | 0.5 | Make claim updates per request of S. Baker (SASMF). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 4/26/2010 | 1.7 | Generate remaining claims analysis and tie out to current waterfall per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 4/27/2010 | 2.0 | Generate remaining claims analysis and tie out to current waterfall per request of I. Fredericks (SASMF) (continued). |
| Nemerov, Lara | 4/27/2010 | 1.2 | Generate supplemental order for Omni 20 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/27/2010 | 0.5 | Generate remaining claims analysis and tie out to current waterfall per request of I. Fredericks (SASMF) (continued). |
| Nemerov, Lara | 4/27/2010 | 0.5 | Review claims 14991 and 14994 per request of J. Knopke (CC) and discuss with E. Gershbein (KCC). |
| Nemerov, Lara | 4/28/2010 | 1.0 | Communicate new claims data with team as of 4/28/10. |
| Nemerov, Lara | 4/28/2010 | 0.5 | Update claims on supplemental order for Omni 20 and confirm with S. Baker (SASMF) and E. Gershbein (KCC). |
| Nemerov, Lara | 4/28/2010 | 0.3 | Make claim updates per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/29/2010 | 0.5 | Further evaluate possible ordinary course differences between CC and Onkyo per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 4/30/2010 | 2.0 | Generate order and adjourn exhibits for Omni 70 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/30/2010 | 0.7 | Generate supplemental order for Omni 5 per request of S. Boehm (MW). |
| Nemerov, Lara | 4/30/2010 | 0.6 | Update ordered and adjourned claims for Omni 70 in CMS per request of S. Boehm (MW). |
| Nemerov, Lara | 4/30/2010 | 0.2 | Contact M. Smithson (CC) for missing check clear dates for US Signs and display per request of J. Liberi (SASMF). |
| **Subtotal - Claims Management** | | **268.2** | |

**General Duties and Case Administration**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| Duffy, Robert J | 2/1/2010 | 0.3 | Review FTI work plan and send comments to B. Cashman (FTI) for update. |
| Coulombe, Stephen L | 2/8/2010 | 0.3 | Review updated FTI work plan and budgeted hours and send comments to B. Cashman (FTI). |
| Cashman, Brian | 2/9/2010 | 0.7 | Review Jan fee statement. |
| O'Loughlin, Morgan | 2/9/2010 | 1.6 | Update January fee statement for detailed time and expenses and send to B. Cashman (FTI) for review. |
| Cashman, Brian | 2/11/2010 | 0.8 | Review Jan fee statement. |
| O'Loughlin, Morgan | 2/11/2010 | 1.4 | Make updates to January fee statement and send to B. Cashman (FTI) for review of updated file. |
| Duffy, Robert J | 2/12/2010 | 0.4 | Review FTI work plan and send comments to S. Coulombe (FTI) and B. Cashman (FTI) regarding transition plan to the Company. |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 2/1/2010 through and including 4/30/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|

### General Duties and Case Administration

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| O'Loughlin, Morgan | 2/12/2010 | 1.2 | Finalize January fee statement and send to S. Coulombe (FTI) for review. |
| Coulombe, Stephen L | 2/16/2010 | 1.0 | Review FTI January fee statement prepared by B. Cashman (FTI) and M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 2/18/2010 | 0.8 | Finalize FTI fee statement for January and notice. |
| Hellmund-Mora, Marili | 2/18/2010 | 1.1 | Review fee statement, reconcile variances, process bill, generate invoice and correspond regarding approvals and reconciliation. |
| O'Loughlin, Morgan | 2/19/2010 | 0.4 | Set up FTI's 5th interim fee application. |
| Coulombe, Stephen L | 2/22/2010 | 1.0 | Participate on call with G. Galardi (SASMF) and R. Duffy (FTI) to discuss status of claims management, sale of Canadian assets and general case matters. |
| Duffy, Robert J | 2/22/2010 | 1.0 | Participate on call with G. Galardi (SASMF) and S. Coulombe (FTI) to discuss status of claims management, sale of Canadian assets and general case matters. |
| Cashman, Brian | 2/22/2010 | 0.5 | Discuss case update with M. Mosier (CC) regarding claims review, Canada sale and other matters. |
| Cashman, Brian | 2/22/2010 | 0.3 | Discuss open items on 5th interim fee application with M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 2/22/2010 | 1.4 | Continue to update FTI's 5th interim fee application and narratives. |
| O'Loughlin, Morgan | 2/22/2010 | 0.3 | Discuss open items on 5th interim fee application with B. Cashman (FTI). |
| Coulombe, Stephen L | 2/23/2010 | 0.3 | Review draft of FTI's 5th interim fee application. |
| Cashman, Brian | 2/23/2010 | 2.0 | Prepare 5th interim fee application. |
| O'Loughlin, Morgan | 2/23/2010 | 1.1 | Continue to update narratives to FTI's 5th interim fee application and send to B. Cashman (FTI) for review. |
| Cashman, Brian | 2/24/2010 | 2.7 | Prepare 5th interim fee application. |
| O'Loughlin, Morgan | 2/24/2010 | 0.7 | Finalize exhibits for FTI's 5th interim fee application and send to B. Cashman (FTI). |
| Cashman, Brian | 2/25/2010 | 0.5 | Discuss case update with M. Mosier (CC). |
| Duffy, Robert J | 2/26/2010 | 0.7 | Participate on call with G. Galardi (SASMF) to discuss potential transition plans for claims management and other FTI involvement. |
| Duffy, Robert J | 2/26/2010 | 0.3 | Review and respond to various emails from J. Robinson (FTI) regarding claims management transition plan for CMSi. |
| Cashman, Brian | 2/26/2010 | 2.0 | Prepare 5th interim fee application. |
| Cashman, Brian | 3/1/2010 | 2.5 | Prepare 5th interim fee application. |
| Cashman, Brian | 3/1/2010 | 0.3 | Discuss request for more information with Skadden. |
| Duffy, Robert J | 3/2/2010 | 0.4 | Review 5th interim fee application draft from B. Cashman (FTI). |
| O'Loughlin, Morgan | 3/4/2010 | 1.9 | Set up begin compiling detailed time for February fee statement. |
| Cashman, Brian | 3/8/2010 | 2.3 | Update Fifth Interim Fee Application for review comments. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **General Duties and Case Administration** | | | |
| O'Loughlin, Morgan | 3/8/2010 | 1.1 | Update narrative for Fifth Interim Fee Application based on comments from B. Cashman (FTI). |
| Hellmund-Mora, Marili | 3/8/2010 | 0.6 | Generate Circuit City February proforma, download into Word and Excel, format and correspond re: same. |
| Coulombe, Stephen L | 3/9/2010 | 1.2 | Review draft to CRO including current work streams and transition plan and provide comments to B. Cashman (FTI. |
| Coulombe, Stephen L | 3/9/2010 | 0.4 | Review outline of CRO memo with B. Cashman (FTI). |
| Cashman, Brian | 3/9/2010 | 1.7 | Draft memo to CRO detailing current work streams and proposed transition plan as requested by SASMF. |
| Cashman, Brian | 3/9/2010 | 1.4 | Draft outline of memo to CRO detailing current work streams and proposed transition plan as requested by SASMF. |
| Cashman, Brian | 3/9/2010 | 0.6 | Update Canadian Matters narrative in fifth interim fee application with assistance of G. Chin (FTI) and M. Murphy (FTI). |
| Cashman, Brian | 3/9/2010 | 0.4 | Review outline of CRO memo with S. Coulombe (FTI). |
| O'Loughlin, Morgan | 3/9/2010 | 1.4 | Finalize draft of February fee statement and send to B. Cashman (FTI) for review. |
| Coulombe, Stephen L | 3/10/2010 | 1.2 | Provide detailed edits to B. Cashman (FTI) regarding draft of CRO memo. |
| Cashman, Brian | 3/10/2010 | 1.5 | Update memo to CRO detailing current work streams and proposed transition plan for review comments. |
| Cashman, Brian | 3/10/2010 | 1.5 | Review time detail for February fee statement compiled by M. O'Loughlin (FTI). |
| Cashman, Brian | 3/10/2010 | 0.2 | Review draft of CRO memo with edits from S. Coulombe (FTI). |
| Cashman, Brian | 3/11/2010 | 1.5 | Review February fee statement. |
| Cashman, Brian | 3/12/2010 | 1.0 | Review final version of 5th interim fee application. |
| O'Loughlin, Morgan | 3/12/2010 | 1.2 | Make final updates to the 5th interim fee application and send to B. Cashman (FTI). |
| Coulombe, Stephen L | 3/15/2010 | 1.4 | Send final comments to B. Cashman (FTI) regarding memo to CRO. |
| Nighswander, Jonathan C | 3/15/2010 | 1.0 | Review memo to CRO for work streams and transition plans and provide comments to S. Coulombe (FTI). |
| Cashman, Brian | 3/15/2010 | 0.4 | Review final version of 5th interim fee application and send to McGuireWoods. |
| Cashman, Brian | 3/15/2010 | 0.3 | Notice February fee statement. |
| Cashman, Brian | 3/15/2010 | 0.2 | Prepare detailed time and expenses in excel format for US Trustee. |
| Duffy, Robert J | 3/16/2010 | 1.0 | Review transition memo to CRO. |
| Coulombe, Stephen L | 3/16/2010 | 0.9 | Review final draft of memo to CRO. |
| Nighswander, Jonathan C | 3/16/2010 | 2.0 | Continue to review memo to CRO for work streams and transition plans. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **General Duties and Case Administration** | | | |
| Cashman, Brian | 3/16/2010 | 1.4 | Update transition memo. |
| Duffy, Robert J | 3/17/2010 | 0.7 | Participate in meeting with S. Coulombe (FTI) to review transition memo. |
| Coulombe, Stephen L | 3/17/2010 | 0.7 | Participate in meeting with R. Duffy (FTI) to review transition memo. |
| Cashman, Brian | 3/17/2010 | 1.0 | Update transition memo. |
| Duffy, Robert J | 3/19/2010 | 0.4 | Review transition memo to CRO. |
| Duffy, Robert J | 3/23/2010 | 0.3 | Review FTI work plan.. |
| Duffy, Robert J | 3/29/2010 | 0.4 | Participate on call with G. Galardi (SASMF) to discuss. |
| Hellmund-Mora, Marili | 3/29/2010 | 0.3 | Correspond with the FTI team regarding Circuit City approval for the January 2010 invoice. |
| Hellmund-Mora, Marili | 4/6/2010 | 0.6 | Generate Circuit City March 2010 WIP, download into Word and Excel, format and correspond regarding same. |
| O'Loughlin, Morgan | 4/9/2010 | 0.4 | Update March fee statement. |
| Cashman, Brian | 4/12/2010 | 1.3 | Review March fee statement. |
| Cashman, Brian | 4/12/2010 | 0.4 | Update march fee statement for review comments. |
| O'Loughlin, Morgan | 4/12/2010 | 1.8 | Finalize March fee statement and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 4/12/2010 | 0.7 | Update March fee statement exhibits and send to B. Cashman (FTI) for review. |
| Coulombe, Stephen L | 4/14/2010 | 0.6 | Review March fee statement and send comments to team. |
| Hellmund-Mora, Marili | 4/14/2010 | 0.9 | Review the Circuit City March 2010 fee statement, reconcile variances, process bill, generate invoice and correspond regarding approvals and reconciliation. |
| **Subtotal - General Duties and Case Administration** | | **68.2** | |
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 2/1/2010 | 0.7 | Review BOD deck from B. Cashman (FTI) and provide comments on executive summary language. |
| Cashman, Brian | 2/1/2010 | 0.9 | Update BOD deck for M. Mosier's (CC) comments. |
| Cashman, Brian | 2/1/2010 | 0.7 | Review email from Protiviti with requests for information and send email to I. Fredericks (SASMF) with responses. |
| Cashman, Brian | 2/1/2010 | 0.7 | Distribute updated sources and uses analysis and liquidation analysis with commentary to G. Galardi (SASMF). |
| Cashman, Brian | 2/1/2010 | 0.4 | Provide latest update from Canadian monitor on InterTAN bankruptcy proceedings to I. Fredericks (SASMF). |
| Cashman, Brian | 2/1/2010 | 0.4 | Review emails from UCC advisors regarding case update. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 2/1/2010 | 0.4 | Provide copy of BOD deck with update on InterTAN to I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 2/1/2010 | 1.1 | Update sources and uses analysis with cash activity through the week ending 1/30/10 and send to B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/1/2010 | 0.7 | Update executive summary to BOD deck per email from M. Mosier (CC). |
| O'Loughlin, Morgan | 2/1/2010 | 0.6 | Finalize and distribute the final February BOD deck to the Company. |
| Coulombe, Stephen L | 2/2/2010 | 1.4 | Participate on conference call with I. Fredericks (SASMF), G. Galardi (SASMF) and B. Cashman (FTI) to review sources and uses analysis. |
| Coulombe, Stephen L | 2/2/2010 | 1.2 | Review updated sources and uses analysis prepared by B. Cashman (FTI) and provide comments regarding treatment of priority claims. |
| Coulombe, Stephen L | 2/2/2010 | 0.4 | Review supporting schedule for professional fees forecast for pre-confirmation and provide comments to B. Cashman (FTI). |
| Cashman, Brian | 2/2/2010 | 1.8 | Update sources and uses analysis for comments from G. Galardi (SASMF) during conference call. |
| Cashman, Brian | 2/2/2010 | 1.4 | Participate on conference call with I. Fredericks (SASMF), G. Galardi (SASMF) and S. Coulombe (FTI) to review sources and uses analysis. |
| Cashman, Brian | 2/2/2010 | 0.6 | Update professional fees on sources and uses analysis. |
| Cashman, Brian | 2/2/2010 | 0.4 | Update sources and uses analysis for comments from I. Fredericks (SASMF). |
| Coulombe, Stephen L | 2/3/2010 | 1.0 | Participate on call with G. Galardi (SASMF) and R. Duffy (FTI) to discuss updated sources and uses analysis. |
| Duffy, Robert J | 2/3/2010 | 1.0 | Participate on call with G. Galardi (SASMF) and S. Coulombe (FTI) to discuss updated sources and uses analysis. |
| Cashman, Brian | 2/3/2010 | 0.5 | Review updated Canadian waterfall for inclusion in BOD deck. |
| Cashman, Brian | 2/3/2010 | 0.5 | Review updated liquidation analysis. |
| O'Loughlin, Morgan | 2/3/2010 | 1.4 | Create updated Canadian proceeds waterfall analysis with.93 CAD FX rate and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/3/2010 | 1.2 | Update liquidation analysis with actuals through week ending 1/30/10 and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/3/2010 | 0.9 | Participate on various calls with I. Fredericks (SASMF) to discuss updated sources and uses analysis with actuals through the week ending 1/30/10. |
| Coulombe, Stephen L | 2/4/2010 | 0.6 | Review updated sources and uses analysis from M. O'Loughlin (FTI) and provide comments. |
| Coulombe, Stephen L | 2/4/2010 | 0.4 | Participate on call with G. Galardi (FTI) to discuss sources and uses analysis. |
| Cashman, Brian | 2/4/2010 | 0.9 | Review sources and uses changes with M. O'Loughlin (FTI) and then distribute to SASMF. |
| Cashman, Brian | 2/4/2010 | 0.6 | Respond to questions regarding sources and uses analysis. |
| O'Loughlin, Morgan | 2/4/2010 | 0.9 | Review sources and uses changes with B. Cashman (FTI) and then distribute to SASMF. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 2/4/2010 | 0.8 | Update notes and comments to sources and uses analysis with comments per email from I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 2/4/2010 | 0.7 | Finalize Canadian proceeds waterfall and send to M. Mosier (CC) for update regarding working capital adjustments and stayed payables amount. |
| O'Loughlin, Morgan | 2/4/2010 | 0.4 | Participate on call with I. Fredericks (SASMF) to discuss sources and uses analysis. |
| O'Loughlin, Morgan | 2/4/2010 | 0.4 | Send updated liquidation analysis to M. Mosier (CC) with actual cash activity through week ending 1/30/10. |
| O'Loughlin, Morgan | 2/4/2010 | 0.3 | Address comments in email to I. Fredericks (SASMF) for sources and uses analysis. |
| Coulombe, Stephen L | 2/5/2010 | 1.0 | Participate on call with G. Galardi (FTI) and R. Duffy (FTI) to discuss key work streams prior to effective date and FTI involvement. |
| Duffy, Robert J | 2/5/2010 | 1.0 | Participate on call with G. Galardi (FTI) and S. Coulombe (FTI) to discuss key work streams prior to effective date and FTI involvement. |
| Coulombe, Stephen L | 2/8/2010 | 0.7 | Review latest liquidation analysis from M. O'Loughlin (FTI) and compare to sources and uses analysis. |
| Coulombe, Stephen L | 2/9/2010 | 1.0 | Review liquidation analysis and sources and uses analysis in meeting with B. Cashman (FTI). |
| Cashman, Brian | 2/9/2010 | 1.0 | Review liquidation analysis and sources and uses analysis in meeting with S. Coulombe (FTI). |
| Cashman, Brian | 2/9/2010 | 0.4 | Discuss adjustment to outstanding checks amount. |
| Cashman, Brian | 2/9/2010 | 0.4 | Review weekly cash flow report prepared by M. O'Loughlin (FTI). |
| Duffy, Robert J | 2/10/2010 | 1.0 | Participate in meeting with S. Coulombe (FTI) to review most current recovery analyses and case status. |
| Coulombe, Stephen L | 2/10/2010 | 1.0 | Participate in meeting with R. Duffy (FTI) to review most current recovery analyses and case status. |
| Cashman, Brian | 2/10/2010 | 1.1 | Review updated liquidation analysis. |
| Cashman, Brian | 2/10/2010 | 0.6 | Update liquidation analysis for updated assumptions and distribute. |
| Cashman, Brian | 2/10/2010 | 0.5 | Update sources and uses and send to I. Fredericks (SASMF). |
| Cashman, Brian | 2/10/2010 | 0.3 | Send Canadian waterfall to M. Mosier (CC) and request comments. |
| O'Loughlin, Morgan | 2/10/2010 | 0.9 | Update liquidation analysis with actuals through week ending 2/6/10 and send to B. Cashman (FTI) for review. |
| Cashman, Brian | 2/11/2010 | 0.8 | Listen to omnibus hearing. |
| O'Loughlin, Morgan | 2/11/2010 | 0.6 | Update low side to liquidation analysis to include the anticipated receipt for $102M for the NOL carry back extension. |
| Cashman, Brian | 2/12/2010 | 2.0 | Update liquidation analysis for updated assumptions. |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 2/1/2010 through and including 4/30/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 2/15/2010 | 0.6 | Participate on call with G. Galardi (SASMF) to discuss proposed incentive payments for CEO. |
| Duffy, Robert J | 2/15/2010 | 0.4 | Review analysis of proposed CEO incentive and provide comments to B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/16/2010 | 0.9 | Pull together support for Task II of management incentive plan showing savings greater than 10% compared to budget through GOB period and send to J. Kumar (SASMF). |
| O'Loughlin, Morgan | 2/16/2010 | 0.8 | Pull together support for Task XVI of management incentive plan which details out actual receipts from other proceeds exceeding $100M and send to J. Kumar (SASMF). |
| Duffy, Robert J | 2/17/2010 | 0.6 | Review liquidation analysis and remaining proceeds to be collected prior to confirmation. |
| Duffy, Robert J | 2/17/2010 | 0.4 | Participate on call to review the analysis of proposed CEO incentive payment with G. Galardi (SASMF). |
| Cashman, Brian | 2/17/2010 | 0.8 | Participate in conference call with M. O'Loughlin (FTI) and J. Kumar (SASMF) to discuss coo incentive analysis and answer questions. |
| Cashman, Brian | 2/17/2010 | 0.6 | Review analysis prepared by M. O'Loughlin (FTI) in response to questions from J. Kumar (SASMF) regarding coo incentive analysis. |
| Cashman, Brian | 2/17/2010 | 0.5 | Review updated liquidation analysis. |
| Cashman, Brian | 2/17/2010 | 0.3 | Reply to questions from J. Kumar (SASMF) regarding coo incentive analysis. |
| Cashman, Brian | 2/17/2010 | 0.3 | Distribute analysis of proposed coo incentive to G. Galardi (SASMF). |
| O'Loughlin, Morgan | 2/17/2010 | 1.1 | Create updated professional fee forecast through confirmation and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 2/17/2010 | 0.8 | Participate in conference call with B. Cashman (FTI) and J. Kumar (SASMF) to discuss coo incentive analysis and answer questions. |
| O'Loughlin, Morgan | 2/18/2010 | 1.3 | Set up template for presentation regarding potential claims management transition plan and next steps. |
| O'Loughlin, Morgan | 2/18/2010 | 0.8 | Update key work streams and FTI fees from November through February for claims management transition plan presentation. |
| O'Loughlin, Morgan | 2/18/2010 | 0.5 | Make edits to claims management transition plan per comments from R. Duffy (FTI). |
| O'Loughlin, Morgan | 2/19/2010 | 1.3 | Make updates to claims management transition plan presentation with comments from J. Robinson (FTI). |
| Coulombe, Stephen L | 2/23/2010 | 0.7 | Review presentation on claims management transition plan and provide comments to B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/23/2010 | 1.9 | Make updates to claims management transition plan slides per comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 2/23/2010 | 0.6 | Integrate final comments from J. Robinson (FTI) and B. Cashman (FTI) for claims management transition presentation and send to R. Duffy (FTI) for review. |
| Coulombe, Stephen L | 2/24/2010 | 0.7 | Review liquidation analysis with inclusion of $102M NOL carry back extension from IRS and recoveries to unsecured claims. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 2/24/2010 | 0.5 | Review updated liquidation analysis. |
| Cashman, Brian | 2/24/2010 | 0.2 | Update BOD deck for M. Mosier (CC). |
| O'Loughlin, Morgan | 2/24/2010 | 1.3 | Update liquidation analysis with actuals through week ending 2/20/10 to include actual receipt of $102M IRS refund. |
| O'Loughlin, Morgan | 2/24/2010 | 0.5 | Finalize liquidation analysis with actuals through 2/20/10 and send to the Company for review. |
| O'Loughlin, Morgan | 2/24/2010 | 0.4 | Make edits to comments in liquidation analysis per conversation with B. Cashman (FTI). |
| Cashman, Brian | 2/25/2010 | 1.0 | Review reports with K. Bradshaw (CC). |
| Duffy, Robert J | 3/3/2010 | 0.7 | Review liquidation analysis and provide comments to B. Cashman (FTI). |
| Cashman, Brian | 3/3/2010 | 0.6 | Review liquidation analysis. |
| O'Loughlin, Morgan | 3/3/2010 | 1.3 | Update liquidation analysis with actuals as of 2/27/10 and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 3/3/2010 | 0.8 | Format liquidation analysis and add to BOD deck for M. Mosier (CC). |
| Cashman, Brian | 3/5/2010 | 1.5 | Review Protiviti's liquidation analysis report and compare to debtors. |
| Weinsten, Mark | 3/8/2010 | 1.1 | Prepare for possible testimony regarding CEO incentive at the 28th omnibus court hearing. |
| Duffy, Robert J | 3/8/2010 | 0.8 | Review documents for management incentive plan and CEO incentive prior to hearing. |
| Weinsten, Mark | 3/8/2010 | 0.6 | Discuss CEO incentive calculation with B. Cashman (FTI) in anticipation of court hearing. |
| Duffy, Robert J | 3/8/2010 | 0.2 | Participate on call with M. Weinstein (FTI) to discuss management incentive plan and CEO incentive prior to hearing. |
| Weinsten, Mark | 3/8/2010 | 0.2 | Participate on call with R. Duffy (FTI) to discuss management incentive plan and CEO incentive prior to hearing. |
| Cashman, Brian | 3/8/2010 | 0.6 | Discuss CEO incentive calculation with M. Weinsten (FTI) in anticipation of court hearing. |
| O'Loughlin, Morgan | 3/8/2010 | 0.9 | Update professional fee schedule to split fees incurred post January 2010 in support of liquidation analysis forecast. |
| Weinsten, Mark | 3/9/2010 | 0.4 | Participate in follow up discussion regarding incentive calculation with S. Coulombe (FTI). |
| Coulombe, Stephen L | 3/9/2010 | 0.4 | Participate in follow up discussion regarding incentive calculation with M. Weinsten (FTI). |
| O'Loughlin, Morgan | 3/11/2010 | 1.0 | Update liquidation analysis with actuals as of 3/6/10 along with notes and send to B. Cashman (FTI). |
| Coulombe, Stephen L | 3/15/2010 | 0.6 | Participate in call with I. Fredericks (SASMF), G. Galardi (SASMF), M. O'Loughlin (FTI) and B. Cashman (FTI) to review claims waterfall and liquidation analysis. |
| Cashman, Brian | 3/15/2010 | 0.6 | Participate in call with I. Fredericks (SASMF), G. Galardi (SASMF), S. Coulombe (FTI) and M. O'Loughlin (FTI) to review claims waterfall and liquidation analysis. |
| Cashman, Brian | 3/15/2010 | 0.4 | Review liquidation analysis incorporating changes from call with Skadden. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 3/15/2010 | 0.2 | Distribute the claims waterfall report and liquidation analysis to Skadden. |
| O'Loughlin, Morgan | 3/15/2010 | 1.4 | Update liquidation analysis to incorporate changes from call with Skadden and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 3/15/2010 | 0.6 | Participate in call with I. Fredericks (SASMF), G. Galardi (SASMF), S. Coulombe (FTI) and B. Cashman (FTI) to review claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 3/15/2010 | 0.5 | Update notes to the liquidation analysis per comments from SASMF. |
| Coulombe, Stephen L | 3/16/2010 | 1.1 | Review updated claims waterfall and liquidation analysis and provide comments before sending to Skadden. |
| Cashman, Brian | 3/16/2010 | 0.6 | Update liquidation analysis for review comment. |
| Cashman, Brian | 3/16/2010 | 0.3 | Update liquidation analysis for review comments and distribute to Skadden. |
| Cashman, Brian | 3/16/2010 | 0.2 | Distribute liquidation analysis and claims waterfall to BOD and CRO. |
| O'Loughlin, Morgan | 3/16/2010 | 0.8 | Finalize liquidation analysis and ensure claim ranges tie to the 3/11/10 claims waterfall. |
| Cashman, Brian | 3/24/2010 | 0.7 | Review updated liquidation analysis prepared by M. O'Loughlin (FTI). |
| Cashman, Brian | 3/24/2010 | 0.5 | Review updated sources and uses analysis prepared by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 3/24/2010 | 1.4 | Update sources and uses analysis with cash balance as of 3/20/10. |
| Duffy, Robert J | 3/25/2010 | 1.0 | Participate on call with G. Galardi (SASMF) to review sources and uses analysis prior to sending to the Company. |
| Coulombe, Stephen L | 3/25/2010 | 0.6 | Review liquidation analysis and provide comments to M. O'Loughlin (FTI). |
| Coulombe, Stephen L | 3/25/2010 | 0.4 | Review the claims waterfall and sources and uses analysis with M. O'Loughlin (FTI). |
| Cashman, Brian | 3/25/2010 | 1.0 | Review final versions of claims waterfall, liquidation analysis and sources and uses and send to Skadden. |
| O'Loughlin, Morgan | 3/25/2010 | 1.3 | Make final updates to the sources and uses analysis to tie back to the 3/24/10 claims waterfall. |
| Cashman, Brian | 3/26/2010 | 1.0 | Review Canadian waterfall with K. Bradshaw (CC) and M Mosier (CC) and send to Skadden to send to Protiviti. |
| Duffy, Robert J | 3/29/2010 | 0.6 | Review Canadian waterfall analysis and send comments to B. Cashman (FTI). |
| Cashman, Brian | 3/29/2010 | 1.0 | Update Canadian waterfall analysis and distribute for review. |
| Coulombe, Stephen L | 3/30/2010 | 1.1 | Review GOB and R/E comparison of proceeds earned to appraised value from S. Stegenga (FTI). |
| Duffy, Robert J | 3/30/2010 | 1.0 | Participate on call with G. Galardi (SASMF) to discuss FTI involvement in claims management process and CMSi. |
| Coulombe, Stephen L | 3/30/2010 | 0.9 | Review updated Canadian waterfall and provide comments to B. Cashman (FTI). |
| Cashman, Brian | 3/30/2010 | 0.8 | Update Canadian waterfall analysis for comments from Skadden. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 3/30/2010 | 0.7 | Participate on call with I. Fredericks (SASMF) to review Canadian waterfall. |
| Stegenga, Scott | 3/30/2010 | 0.6 | Create GOB and R/E comparison of proceeds earned to appraised value. |
| Coulombe, Stephen L | 3/31/2010 | 0.9 | Review claims waterfall. |
| Coulombe, Stephen L | 3/31/2010 | 0.8 | Review liquidation analysis and compare to sources and uses analysis. |
| Coulombe, Stephen L | 3/31/2010 | 0.3 | Provide comments to B. Cashman (FTI) regarding draft of April BOD deck. |
| Cashman, Brian | 3/31/2010 | 1.1 | Update BOD deck for new liquidation analysis and new claims waterfall and update executive summary accordingly. |
| Duffy, Robert J | 4/2/2010 | 0.5 | Review BOD deck prior to call. |
| Duffy, Robert J | 4/2/2010 | 0.5 | Participate on BOD call. |
| Cashman, Brian | 4/2/2010 | 0.5 | Participate on BOD call. |
| O'Loughlin, Morgan | 4/2/2010 | 1.3 | Update bridge to claims waterfall as of 4/2/10 to show changes compared to 3/24/10 version sent to Skadden. |
| O'Loughlin, Morgan | 4/2/2010 | 0.7 | Update the claims waterfall as of 4/2/10 with recently ordered reclassification of $148M in priority claims to unsecured. |
| O'Loughlin, Morgan | 4/2/2010 | 0.6 | Finalize 4/2/10 version of the claims waterfall and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 4/2/2010 | 0.4 | Make update to adjourned claims in waterfall with supplemental on omnibus objection #56. |
| Cashman, Brian | 4/5/2010 | 0.7 | Update sources and uses analysis. |
| Cashman, Brian | 4/5/2010 | 0.6 | Review updated liquidation analysis. |
| O'Loughlin, Morgan | 4/5/2010 | 1.4 | Update liquidation analysis with actuals activity through the W/E 3/27. |
| O'Loughlin, Morgan | 4/5/2010 | 0.9 | Make updates to the liquidation analysis comments section. |
| O'Loughlin, Morgan | 4/5/2010 | 0.7 | Update liquidation analysis with updated claims waterfall ranges and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 4/5/2010 | 0.6 | Create claims paid by debtor backup page for claims waterfall. |
| O'Loughlin, Morgan | 4/5/2010 | 0.4 | Update footnotes to claims waterfall as of 4/2/10. |
| Cashman, Brian | 4/6/2010 | 1.0 | Update sources and uses and liquidation analysis for review comments from Skadden. |
| Coulombe, Stephen L | 4/8/2010 | 1.2 | Review listing of future objections and adjourned claims by class prepared by M. O'Loughlin (FTI). |
| Coulombe, Stephen L | 4/8/2010 | 0.8 | Review listing of future objections and adjourned claims by class prepared by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 4/9/2010 | 1.5 | Tie out the claims waterfall to listing of remaining claims after section IV in the claims waterfall per Skadden request. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 4/9/2010 | 0.6 | Format and finalize listing of remaining claims after section IV in the claims waterfall per Skadden request. |
| O'Loughlin, Morgan | 4/12/2010 | 1.3 | Finalize listing of secured claims after section III in claims waterfall. |
| O'Loughlin, Morgan | 4/12/2010 | 0.7 | Tie claims waterfall count out to listing of remaining secured claims after section III. |
| Cashman, Brian | 4/13/2010 | 1.2 | Review updated claims waterfall analysis requested by Skadden. |
| Cashman, Brian | 4/13/2010 | 0.7 | Update sources and uses analysis as requested by Skadden. |
| Cashman, Brian | 4/13/2010 | 0.6 | Update liquidation analysis as requested by Skadden. |
| O'Loughlin, Morgan | 4/13/2010 | 1.4 | Update bridge to claims waterfall as of 4/12/10 to show changes compared to 4/2/10 version sent to Skadden. |
| O'Loughlin, Morgan | 4/13/2010 | 1.1 | Make updates to the adjourned claims listing per supplemental orders on omnibus objections #19 and #27. |
| O'Loughlin, Morgan | 4/13/2010 | 0.9 | Make updates to the ordered per court stipulation page with stipulation on SDI Tech, Old Republic. |
| O'Loughlin, Morgan | 4/13/2010 | 0.6 | Update total filed claims for claims waterfall as of 4/12/10. |
| Coulombe, Stephen L | 4/14/2010 | 0.4 | Review updated bridge to claims waterfall. |
| Cashman, Brian | 4/14/2010 | 0.8 | Discuss with M. O'Loughlin (FTI) next steps and review supporting documents on future objections. |
| Cashman, Brian | 4/14/2010 | 0.8 | Participate on call with I. Fredericks (SASMF) and M. O'Loughlin (FTI) to discuss future objections file on claims waterfall. |
| Cashman, Brian | 4/14/2010 | 0.4 | Review adversary proceedings worksheet. |
| O'Loughlin, Morgan | 4/14/2010 | 0.8 | Discuss with B. Cashman (FTI) next steps and review supporting documents on future objections. |
| O'Loughlin, Morgan | 4/14/2010 | 0.8 | Order Panasonic single claim objection in claims waterfall which reclassifies $9.8M to unsecured. |
| O'Loughlin, Morgan | 4/14/2010 | 0.8 | Participate on call with I. Fredericks (SASMF) and B. Cashman (FTI) to discuss future objections file on claims waterfall. |
| O'Loughlin, Morgan | 4/14/2010 | 0.6 | Create new adversary proceedings worksheet with data from S. Baker (SASMF). |
| Cashman, Brian | 4/15/2010 | 1.2 | Review updated claims waterfall analysis requested by Skadden to include adversary proceedings. |
| Cashman, Brian | 4/15/2010 | 0.7 | Update liquidation analysis as requested by Skadden for new claims ranges. |
| Cashman, Brian | 4/15/2010 | 0.6 | Update sources and uses analysis as requested by Skadden for new claims ranges from updated waterfall. |
| O'Loughlin, Morgan | 4/15/2010 | 1.2 | Ensure that there is no double counting for adversary proceedings worksheet in claims waterfall and make adjustments as necessary. |
| O'Loughlin, Morgan | 4/15/2010 | 1.0 | Update the claims waterfall with recently ordered omnibus objection #67. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 4/15/2010 | 0.8 | Update the claims waterfall with recently ordered Sony stipulation. |
| O'Loughlin, Morgan | 4/20/2010 | 1.4 | Update the future objections page and back out late claims filed post 3/4 in claims waterfall. |
| O'Loughlin, Morgan | 4/20/2010 | 0.6 | Participate on call with I. Fredericks (SASMF) and H. Ferguson (CC) to discuss future objections in waterfall. |
| Cashman, Brian | 4/21/2010 | 1.5 | Review updated claims waterfall analysis requested by Skadden. |
| O'Loughlin, Morgan | 4/21/2010 | 1.9 | Update the claims waterfall with latest file from H. Ferguson (CC) and create logic around reclassifications. |
| O'Loughlin, Morgan | 4/21/2010 | 1.2 | Update bridge to claims waterfall as of 4/21/10 to show changes compared to 4/2/10 version sent to Skadden. |
| O'Loughlin, Morgan | 4/21/2010 | 1.0 | Summarize changes to the claims waterfall and liquidation in an email to B. Cashman (FTI). |
| O'Loughlin, Morgan | 4/21/2010 | 0.9 | Update the total claims filed line in the waterfall as of 4/21/10. |
| Cashman, Brian | 4/22/2010 | 1.1 | Update liquidation analysis as requested by Skadden. |
| Cashman, Brian | 4/22/2010 | 0.9 | Communicate with Company regarding liquidation analysis assumptions. |
| Cashman, Brian | 4/23/2010 | 0.7 | Update sources and uses analysis as requested by Skadden. |
| Cashman, Brian | 4/23/2010 | 0.6 | Update sources and uses analysis as requested by Skadden for new claims ranges from updated waterfall. |
| Cashman, Brian | 4/23/2010 | 0.6 | Update liquidation analysis as requested by Skadden. |
| Cashman, Brian | 4/23/2010 | 0.6 | Review updated claims waterfall analysis requested by Skadden. |
| Cashman, Brian | 4/23/2010 | 0.5 | Participate on call with I. Fredericks (SASMF) and M. O'Loughlin (FTI) to discuss claims waterfall. |
| O'Loughlin, Morgan | 4/23/2010 | 1.6 | Update the claims waterfall based on call with I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 4/23/2010 | 0.9 | Update the liquidation analysis with comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 4/23/2010 | 0.5 | Participate on call with I. Fredericks (SASMF) and B. Cashman (FTI) to discuss claims waterfall. |
| Cashman, Brian | 4/26/2010 | 0.4 | Review updated liquidation analysis. |
| Cashman, Brian | 4/26/2010 | 0.4 | Discuss forecasted items on liquidation analysis with K. Bradshaw (CC). |
| Cashman, Brian | 4/26/2010 | 0.2 | Distribute updated claims waterfall, liquidation analysis and sources and uses to SASMF. |
| O'Loughlin, Morgan | 4/26/2010 | 1.9 | Create listing of top 100 future objections by class per request from I. Fredericks (SASMF) and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 4/26/2010 | 1.2 | Create listing of claims filed post 3/4/10 that are not captured in H. Ferguson (CC) future objections file. |
| O'Loughlin, Morgan | 4/26/2010 | 0.7 | Update the comments to the liquidation per guidance from B. Cashman (FTI). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 4/26/2010 | 0.4 | Format and finalize liquidation and send to B. Cashman (FTI). |
| O'Loughlin, Morgan | 4/26/2010 | 0.3 | Participate on call with H. Ferguson (CC) and I. Fredericks (SASMF) to discuss variance in future objections file. |
| Coulombe, Stephen L | 4/27/2010 | 1.0 | Review top list of remaining claims from M. O'Loughlin (FTI). |
| Cashman, Brian | 4/27/2010 | 1.5 | Review listing of remaining claims reports prepared by M. O'Loughlin (FTI) at the request of Skadden. |
| O'Loughlin, Morgan | 4/27/2010 | 2.4 | Create new listing of top 100 remaining claims after section V in the claims waterfall by class per request from I. Fredericks (SASMF) and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 4/27/2010 | 1.3 | Tie the listing of top 100 claims after section V of the waterfall back to the claims waterfall per request of I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 4/27/2010 | 0.7 | Update the claims waterfall and bridge to reflect change regarding claim #1254. |
| O'Loughlin, Morgan | 4/27/2010 | 0.6 | Investigate variance in claims waterfall regarding 503(b)(9) claim and communicate update to I. Fredericks (SASMF). |
| Coulombe, Stephen L | 4/28/2010 | 0.6 | Review claims waterfall analysis from M. O'Loughlin (FTI) prior to distributing to SASMF. |
| Coulombe, Stephen L | 4/28/2010 | 0.4 | Review latest liquidation analysis and sources and uses from B. Cashman (FTI) prior to distributing to SASMF. |
| Cashman, Brian | 4/28/2010 | 0.5 | Update liquidation analysis and sources and uses for new estimated claims ranges from remaining claims reports. |
| Cashman, Brian | 4/29/2010 | 0.5 | Review updated claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 4/29/2010 | 1.2 | Update liquidation with actuals through week ending 4/24/10. |
| O'Loughlin, Morgan | 4/29/2010 | 1.1 | Update bridge to claims waterfall as of 4/29/10 to show changes compared to 4/21/10 version sent to Skadden. |
| O'Loughlin, Morgan | 4/29/2010 | 0.7 | Update the adjourned claims listing based on supplemental omnibus objections on #9, #30, #57 and #67. |
| Cashman, Brian | 4/30/2010 | 0.6 | Prepare sources and uses. |
| Cashman, Brian | 4/30/2010 | 0.4 | Distribute updated claims waterfall, liquidation analysis and sources and uses to SASMF. |
| O'Loughlin, Morgan | 4/30/2010 | 0.9 | Make changes to the claims waterfall and liquidation analysis based on call with I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 4/30/2010 | 0.6 | Participate in call with I. Frederick (SASMF) to discuss most recent version of claims waterfall. |

**Subtotal - Liquidation Analysis/Wind down**   **167.8**

*Preference Analysis*

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 2/1/2010 | 1.0 | Merge preference analysis for 70223 and 693 - two Samsung entities for I. Fredericks (SASMF). |
| Robinson, Joshua M. | 2/2/2010 | 0.7 | Work with L. Nemerov (FTI) to prepare preference exhibits for company. |
| Nemerov, Lara | 2/2/2010 | 1.9 | Prepare multiple preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 2/2/2010 | 1.8 | Continue to prepare multiple preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 2/2/2010 | 0.7 | Work with J. Robinson (FTI) to prepare preference exhibits for company. |
| Robinson, Joshua M. | 2/3/2010 | 1.7 | Continue to assist L. Nemerov (FTI) with preference exhibits. |
| Robinson, Joshua M. | 2/3/2010 | 0.8 | Answer questions from L. Nemerov (FTI) related to particular preference exhibits. |
| Nemerov, Lara | 2/3/2010 | 0.9 | Prepare BB&T preference exhibit per request of B. Fose (CC). |
| Nemerov, Lara | 2/3/2010 | 0.7 | Prepare LG and Samsung preference exhibits per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 2/3/2010 | 0.6 | Prepare Phillips and China trust preference exhibit per request of B. Fose (CC). |
| Nemerov, Lara | 2/8/2010 | 0.8 | Create preference exhibits for multiple vendors per request of K. Barksdale (CC). |
| Nemerov, Lara | 2/8/2010 | 0.4 | Continue to create preference exhibits for multiple vendors per request of K. Barksdale (CC). |
| Nemerov, Lara | 2/12/2010 | 1.8 | Create preference exhibits for Sony Computer per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 2/12/2010 | 0.8 | Search for preference exhibits sent for demand letters to reconcile preference data requests. |
| Robinson, Joshua M. | 2/16/2010 | 1.1 | Extract preference data for select vendors and send to B. Fose (CC). |
| Nemerov, Lara | 2/16/2010 | 0.3 | Create preference exhibits for South peak interactive per request of B. Fose (CC). |
| Robinson, Joshua M. | 2/17/2010 | 0.8 | Extract preference data for select vendors and send to S. Baker (SASMF). |
| Nemerov, Lara | 2/17/2010 | 0.9 | Create preference exhibits for Vonage/Jack of All games and provide claims summary. |
| Schaefer, Karl | 2/19/2010 | 0.5 | Compile preference data at request of J. Robinson (FTI). |
| Robinson, Joshua M. | 2/22/2010 | 2.3 | Provide Preference exhibits to S. Baker (SASMF). |
| Robinson, Joshua M. | 2/22/2010 | 1.9 | QC all preference exhibits pulled for data errors. |
| Robinson, Joshua M. | 2/23/2010 | 2.5 | Pull select vendor preference exhibits and send to K. Bradshaw (CC). |
| Nemerov, Lara | 2/24/2010 | 0.7 | Send South peak interactive preference data to B. Stark (MGW). |
| Nemerov, Lara | 2/26/2010 | 1.0 | Create preference exhibits for Signature Home Furnishings/PNY Tech per request of K. Barksdale (CC). |
| Robinson, Joshua M. | 3/1/2010 | 0.9 | Review email question related to preference from S. Sidhu (SASMF). |
| Robinson, Joshua M. | 3/1/2010 | 0.9 | Answer questions from L. Nemerov (FTI) related to preference. |

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Robinson, Joshua M. | 3/1/2010 | 0.8 | Review preference analysis submitted from Vendor and report findings to B. Stark (MGW). |
| Nemerov, Lara | 3/1/2010 | 2.0 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/1/2010 | 0.5 | Generate several preference exhibits per request of K. Barksdale (CC) (cont.). |
| Nemerov, Lara | 3/2/2010 | 2.0 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Robinson, Joshua M. | 3/5/2010 | 3.0 | Review and prepare preference exhibits per email from S. Baker. |
| Robinson, Joshua M. | 3/5/2010 | 0.6 | Review question from K. Barksdale (CC) related to preference. |
| Robinson, Joshua M. | 3/7/2010 | 2.0 | Prepare preference exhibits per list from K. Barksdale (CC). |
| Robinson, Joshua M. | 3/8/2010 | 1.2 | Prepare preference exhibit per email from H. Ferguson. |
| Nemerov, Lara | 3/8/2010 | 1.5 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/8/2010 | 0.9 | Review preference detail for Antonio Precise Products and verify disbursements with K. Barksdale (CC). |
| Robinson, Joshua M. | 3/9/2010 | 1.0 | Review preference questions from H. Ferguson (CC). |
| Nemerov, Lara | 3/9/2010 | 2.0 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/9/2010 | 1.5 | Generate several preference exhibits per request of K. Barksdale (CC) (cont.). |
| Nemerov, Lara | 3/9/2010 | 0.8 | Generate preference exhibit for Simpletech per request of D. Blanks (MGW) (cont.). |
| Nemerov, Lara | 3/9/2010 | 0.5 | Generate preference exhibit for Samsung per request of S. Baker (SASMF). |
| Robinson, Joshua M. | 3/12/2010 | 1.0 | Review preference exhibit prepared by L. Nemerov (FTI). |
| Robinson, Joshua M. | 3/15/2010 | 0.9 | Review and answer preference email question from D. Blanks (FTI). |
| Nemerov, Lara | 3/15/2010 | 0.5 | Generate preference exhibit for Linksys per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/16/2010 | 0.5 | Generate preference exhibit for LG per request of J. Liberi (SASMF). |
| Nemerov, Lara | 3/17/2010 | 0.8 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/17/2010 | 0.4 | Generate preference exhibit for THQ per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/18/2010 | 1.1 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/19/2010 | 0.9 | Generate preference exhibit for Kensington per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/22/2010 | 0.7 | Generate preference exhibit for Seagate per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/22/2010 | 0.7 | Generate preference exhibit for Monster cable per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/23/2010 | 1.1 | Generate several preference exhibits per request of S. Sindhu (SASMF). |
| Nemerov, Lara | 3/24/2010 | 1.5 | Review discrepancies between FTI and opposing counsel's preference analysis for Samsung per request of S. Baker(SASMF). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 3/24/2010 | 1.1 | Generate several preference exhibits per request of S. Sindhu (SASMF). |
| Nemerov, Lara | 3/24/2010 | 0.8 | Generate preference exhibit for Envision per request of S. Baker (SASMF). |
| Nemerov, Lara | 3/25/2010 | 0.8 | Generate preference exhibit for Epson per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 3/26/2010 | 1.0 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/29/2010 | 1.9 | Generate several preference exhibits per request of K. Barksdale (CC). |
| Nemerov, Lara | 3/30/2010 | 1.1 | Generate preference exhibit for Polk Audio per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/1/2010 | 0.3 | Send S. Sidhu (SASMF) updated preference files for Apex, Mitsubishi, Onkyo. |
| Nemerov, Lara | 4/5/2010 | 1.1 | Review Sharp preference detail analysis per request of B. Stark (MW). |
| Nemerov, Lara | 4/6/2010 | 1.0 | Generate preference analysis for Acer per request of J. Liberi (SASMF). |
| Nemerov, Lara | 4/6/2010 | 0.4 | Search database for any Gateway preference vendors per request of  J. Liberi (SASMF). |
| Nemerov, Lara | 4/7/2010 | 1.2 | Generate Griffin Technology preference exhibits per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/7/2010 | 1.0 | Generate Vtech preference exhibits per request of S. Baker (SASMF). |
| Nemerov, Lara | 4/12/2010 | 1.7 | Generate Imation/Memorex preference exhibits per request of D. Blanks (MW). |
| Nemerov, Lara | 4/12/2010 | 0.8 | Generate MTX preference exhibits per request of S. Baker (SASMF). |
| Robinson, Joshua M. | 4/13/2010 | 0.8 | Answer questions from L. Nemerov (FTI) regarding preference data website. |
| Nemerov, Lara | 4/13/2010 | 1.5 | Build and design MP preference data website for team's use. |
| Nemerov, Lara | 4/13/2010 | 0.8 | Generate MTX preference exhibits per request of S. Baker (SASMF). |
| Robinson, Joshua M. | 4/14/2010 | 0.4 | Answer questions from L. Nemerov (FTI) regarding preference data website (continued). |
| Nemerov, Lara | 4/14/2010 | 2.0 | Build and design MP preference data website for team's use (continued). |
| Robinson, Joshua M. | 4/22/2010 | 0.5 | Review audiovox preference per request from H. Ferguson (CC). |
| Robinson, Joshua M. | 4/22/2010 | 0.3 | Research preference questions raised by I. Fredericks (SASMF). |
| Nemerov, Lara | 4/22/2010 | 2.0 | Generate several preference exhibits per request of B. Fose (CC). |
| Nemerov, Lara | 4/22/2010 | 1.0 | Analyze Audivox ordinary course data for preference. |
| Robinson, Joshua M. | 4/23/2010 | 0.5 | Participate in conversation with H. Ferguson (CC) regarding select vendor preference. |
| Nemerov, Lara | 4/26/2010 | 2.0 | Compile list of strongest preference demand targets without claims per request of B. Fose (CC). |
| Nemerov, Lara | 4/26/2010 | 1.0 | Compile list of strongest preference demand targets without claims (continued) per request of B. Fose (CC). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 4/27/2010 | 2.0 | Generate ordinary course data for the list of strongest preference demand targets without claims (continued) per request of B. Fose (CC). |
| Nemerov, Lara | 4/27/2010 | 1.3 | Review differences between CC preference data and Onkyo preference data per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 4/27/2010 | 1.3 | Update Apex Digital preference analysis per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 4/28/2010 | 0.7 | Participate in preference call with B. Fose (CC), D. Foley (MW), B. Stark (MW). |
| **Subtotal - Preference Analysis** | | **91.1** | |
| **Travel** | | | |
| Cashman, Brian | 2/25/2010 | 2.0 | Travel from Boston to Richmond (50% of actual time incurred). |
| Cashman, Brian | 2/26/2010 | 2.0 | Travel from Richmond to Boston (50% of actual time incurred). |
| Weinsten, Mark | 3/8/2010 | 2.0 | Travel from Richmond to Boston(50% of actual time incurred). |
| Weinsten, Mark | 3/8/2010 | 2.0 | Travel from Boston to Richmond (50% of actual time incurred). |
| Robinson, Joshua M. | 4/20/2010 | 2.0 | Travel from Chicago to Richmond (50% of actual time incurred). |
| Robinson, Joshua M. | 4/21/2010 | 2.0 | Travel from Richmond to Chicago (50% of actual time incurred). |
| **Subtotal - Travel** | | **12.0** | |
| **Total** | | **880.4** | |

EXHIBIT D


CIRCUIT CITY STORES, INC., , et al.,


DETAIL OF ACTUAL AND NECESSARY EXPENSES INCURRED BY EXPENSE CATEGORY

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit D - Detail of Actual and Necessary Expenses Incurred by Expense Category*

*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Amount | Narrative |
|---|---|---|---|
| **Business Meals** | | | |
| Cashman, Brian | 2/25/2010 | $99.05 | Dinner for M. Mosier (CC) and B. Cashman (FTI) |
| Weinsten, Mark | 3/8/2010 | $21.00 | Dinner for M. Weinstein (FTI) |
| Robinson, Joshua M. | 4/20/2010 | $23.20 | Dinner for J. Robinson (FTI) |
| *Subtotal - Business Meals* | | **$143.25** | |
| **Lodging** | | | |
| Cashman, Brian | 2/26/2010 | $171.93 | Hotel in Richmond for 1 night |
| Robinson, Joshua M. | 4/20/2010 | $183.06 | Hotel in Richmond for 1 night |
| *Subtotal - Lodging* | | **$354.99** | |
| **Transportation** | | | |
| Cashman, Brian | 1/29/2010 | $125.44 | Rental car |
| Cashman, Brian | 2/26/2010 | $104.63 | Rental car |
| Cashman, Brian | 2/26/2010 | $369.40 | Roundtrip airfare Boston to Richmond |
| Cashman, Brian | 2/26/2010 | $36.00 | Parking at airport |
| Cashman, Brian | 2/26/2010 | $19.00 | Parking at office |
| Weinsten, Mark | 3/8/2010 | $16.00 | Parking at court |
| Weinsten, Mark | 3/8/2010 | $718.40 | Round trip airfare Boston/Richmond |
| Weinsten, Mark | 3/8/2010 | $73.10 | Rental Car |
| Weinsten, Mark | 3/8/2010 | $29.00 | Parking at airport |
| Robinson, Joshua M. | 4/20/2010 | $40.00 | Taxi to aiprort |
| Robinson, Joshua M. | 4/20/2010 | $400.70 | One way airfare Chicago/Richmond |
| Robinson, Joshua M. | 4/21/2010 | $371.70 | One way airfare Richmond/Chicago |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*
*Exhibit D - Detail of Actual and Necessary Expenses Incurred by Expense Category*
*For the Period 2/1/2010 through and including 4/30/2010*

| Professional | Date | Amount | Narrative |
|---|---|---|---|
| Robinson, Joshua M. | 4/21/2010 | $38.00 | Taxi airport to home |
| Robinson, Joshua M. | 4/21/2010 | $63.35 | Rental Car |
| **Subtotal - Transportation** | | $2,404.72 | |
| **Total** | | **$2,902.96** | |

EXHIBIT E


CIRCUIT CITY STORES, INC., et al.,


COPY OF THE RETENTION ORDER AUTHORIZING EMPLOYMENT OF THE

APPLICANT

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :   Jointly Administered
            Debtors.          :   **Hrg. Date: December 5, 2008**
                              :   **at 10:00 a.m. (ET)**
                              :   **Obj. Due: December 3, 2008 at**
                              :   **4:00 p.m. (ET)**
- - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ORDER UNDER BANKRUPTCY CODE
SECTIONS 105(a), 327(a), 328 AND 1107 AND BANKRUPTCY
RULE 2014(a), AUTHORIZING THE EMPLOYMENT AND RETENTION
OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE
DEBTORS EFFECTIVE AS OF THE PETITION DATE**

      The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1]

seek entry of an order, under sections 105(a), 327(a),

328 and 1107 of title 11 of the United States Code (the

"Bankruptcy Code"), as supplemented by Rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2014-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy

Court for the Eastern District of Virginia (the "Local

Rules"), authorizing the employment and retention of FTI

Consulting, Inc., together with its wholly owned

subsidiaries, agents and independent contractors

(collectively "FTI"), as financial advisors and

consultants for the Debtors effective as of the date of

the filing of these bankruptcy cases, November 10, 2008

---

[1]    The Debtors are the following entities: The Debtors and the
last four digits of their respective taxpayer identification
numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx
Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512).  The address for Circuit City Stores West Coast, Inc.
is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For
all other Debtors, the address is 9950 Mayland Drive,
Richmond, Virginia 23233.

(the "Petition Date").   In support of the Application,

the Debtors rely upon the Affidavit of Robert J. Duffy,

sworn to on November 17, 2008 (the "Duffy Affidavit"), a

copy of which is attached hereto as Exhibit A.   In

further support of this Application, the Debtors

respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Application under 28 U.S.C. §§ 157 and 1334.   This

is a core proceeding under 28 U.S.C. § 157(b).   Venue of

these cases and this Application in this district is

proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105(a),

327(a), 328 and 1107, as supplemented by Bankruptcy Rule

2014 and Local Rule 2014-1.

### BACKGROUND

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy

Code.

4.    The Debtors continue to manage and

operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia (the "United States Trustee") appointed a
statutory committee of unsecured creditors.   To date, no
trustee or examiner has been appointed in these chapter
11 cases.

6.   Based in Richmond, Virginia, Debtors are
a leading specialty retailer of consumer electronics and
operate large nationwide electronics stores throughout
the United States and Puerto Rico that sell, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

7.   Despite significant revenues, the Debtors
have suffered two consecutive years of losses.   While
the Debtors made every effort to improve their financial
performance and implement a global turnaround strategy,
they were ultimately unable to consummate a successful
restructuring outside of bankruptcy.   In large part, the

4

Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8.    Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including closing 154 stores.  In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

### RELIEF REQUESTED

9.    By this Application, the Debtors seek entry of an order, under Bankruptcy Code sections 105(a), 327(a), 328 and 1107 authorizing the employment and retention of FTI as their financial advisors and consultants in these chapter 11 cases, effective as of the Petition Date.

### BASIS FOR RELIEF REQUESTED

10.    FTI commenced its engagement with the Debtors on August 15, 2008 pursuant to an engagement

letter (the "Engagement Letter"), a copy of which is
attached to the Duffy Affidavit as Exhibit 1A.  Pursuant
to the Engagement Letter, the Debtors retained FTI to
provide financial advisory and consulting services.  FTI
and the Debtors executed a revised restructuring
engagement letter on November 5, 2008 (together with the
Engagement Letter, the "Engagement Letters"), a copy of
which is attached to the Duffy Affidavit as Exhibit 1B.
The Debtors and FTI have worked closely with respect to
the matters set forth in both Engagement Letters.  FTI
has assisted the Debtors in the financial aspects of
their restructuring efforts and in the Debtors'
preparation of these bankruptcy cases.

    11.   The Debtors are familiar with the
professional standing and reputation of FTI.  Indeed,
the consideration of this professional standing and
reputation was a critical element in the Debtors'
decision to enter into the Engagement Letters between
the Debtors and FTI.  Among other things, the Debtors
understand that FTI has a wealth of experience in
providing financial advisory and consulting services in
restructurings and reorganizations and enjoys an

excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12.  Since the time FTI was first engaged by the Debtors, FTI has developed a great deal of institutional knowledge regarding the Debtors' operations, finance and systems.  The Debtors believe that this institutional experience and knowledge will be valuable to the Debtors in their efforts to reorganize.

13.  The Debtors believe that the services of FTI will be critical to the Debtors' efforts to maximize the value of their estates and to reorganize successfully.  Further, the Debtors believe that FTI is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

14.  Accordingly, the Debtors wish to retain FTI to provide assistance during these bankruptcy cases pursuant to the terms of the Engagement Letters.

## SCOPE OF SERVICES

15.  Pursuant to the terms of the Engagement Letters, FTI has provided, is providing and will continue to provide such consulting and advisory

7

services[2] as FTI and the Debtors deem appropriate and
feasible in order to advise the Debtors in the course of
these chapter 11 cases.  Specifically, FTI will render
various services to the Debtors including, but not
limited to, the following:

### Store Footprint Analysis

- Analyze liquidity and earnings impact of potential store closures.
- Provide assistance with contract terms for disposition of leases.
- Develop informational materials to support store closing processes.
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.
- Prepare information package for landlord conference calls and participate in lease termination discussions.
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

### Liquidity Forecasting

- Evaluate current liquidity position and expected future cash flows.
- Assist with management and control of cash disbursements.

---

[2]   Capitalized terms not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Engagement Letters.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections.
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.
- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.
- Assist with working capital management and liquidity forecasting.
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.
- Assist management with development of employee retention and communications programs.
- Assist management in developing strategy relating to merchandise and other vendors.
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture

9

fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.

- Prepare "bid packages" for Liquidators and manage selection process.
- Solicit potential inventory Liquidators for going-out-of-business sale process.
- Assist the Company in the negotiation of an Agency agreement.
- Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.
- Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.

- Assist with data collection and information gathering related to third party due diligence.
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

10

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.
- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.
- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing.

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

11

## FTI'S DISINTERESTEDNESS

16.   FTI has informed the Debtors that, except as may be set forth in the Duffy Affidavit, it (i) has no connection with the Debtors, its creditors or other parties in interest in this case; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Bankruptcy Code section 101(14).

17.   FTI has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts, connections or relationships are discovered or arise, FTI will supplement its disclosure to the Court.

18.   FTI has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

19.   The Debtors believe that FTI is not owed any amounts with respect to its prepetition fees and expenses.

## TERMS OF RETENTION

20.   The Debtors understand that FTI intends
to apply to the Court for allowances of compensation and
reimbursement of expenses for financial advisory and
consultants support services in accordance with the
applicable provisions of the Bankruptcy Code, the
Bankruptcy Rules, corresponding Local Rules, orders of
this Court and guidelines established by the United
States Trustee.  The customary hourly rates, subject to
periodic adjustments, charged by FTI's professionals
anticipated to be assigned to this case are as follows:

**Standard Hourly Rates**

| | |
|---|---|
| Senior Managing Directors | $650 - $715 |
| Directors/Managing Directors | $475 - $620 |
| Consultants/Senior Consultants | $235 - $415 |
| Administrative/Paraprofessionals | $95  - $190 |

**Completion Fee**

21.   The Company, in its sole and absolute
discretion, may pay FTI (i) a fee (a "Completion Fee")
in the event a restructuring or sale transaction is
consummated to the satisfaction of the Company and (ii)
a fee (a "Financing Fee") in the event additional
financing is obtained.  The Completion Fee may be paid

to FTI under the following scenarios:

- In the event the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.

- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

The Financing Fee may be paid to FTI under the following

scenarios:

**Financing Fee**

   **Second Lien Financing**

- A total Financing Fee of 1.0% of the commitment of second lien DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

   **Senior Loan Financing**

- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a financing fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.
- A total financing fee of 0.25% of the commitment of senior DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

14

22.  FTI has requested that it be engaged
under a general retainer.  The Debtors believe that FTI
should be employed under a general retainer because of
the variety and complexity of the services that will be
required during these proceedings.

23.  FTI has received from the Debtors total
"on account" cash in the amount of $750,000 (the "On-
Account Cash"), which was increased from $550,000 on
November 5, 2008.  Attached as Exhibit 4 to the Duffy
Affidavit is a list of the invoices sent by FTI and the
payments made by the Company.  As set forth on such
Exhibit 4, since commencing the engagement, FTI has
invoiced the Company in the aggregate amount of
$3,228,924, which amount reflects $2,336,490 billed to
the Company for professional services, $142,434 for out
of pocket expense reimbursement and the $750,000 held as
On-Account Cash.  As also shown on Exhibit 4, prior to
the Petition Date, FTI applied $0 of its initial
$750,000 cash on account for estimated fees and
expenses.

24.  FTI has informed the Debtors that as
promptly as practicable after all fees and charges

accrued prior to the Petition Date have been finally
posted within FTI's computerized billing system, FTI
will issue a final billing statement to the Company for
the actual fees, charges, and disbursements incurred for
the period prior to the Petition Date (the "Final
Prepetition Bill Amount").  Pursuant to the Engagement
Letters, and subject to any orders of the Court, FTI
will deduct the Final Prepetition Bill Amount from the
On-Account Cash.  To the extent that the Final
Prepetition Bill Amount is less than the On-Account
Cash, FTI has indicated that it will hold the full
amount of the difference as a post-petition retainer to
be applied against any amounts approved by the Court in
connection with FTI's final fee application.  In the
event that the Final Prepetition Bill Amount exceeds the
On-Account Cash, FTI has agreed to waive any claim
against the Debtors for payment with respect to the
amount by which the Final Prepetition Bill Amount
exceeds the On-Account Cash.  FTI has further informed
the Debtors that the On-Account Cash will not be
segregated by FTI in a separate account.

**NOTICE**

25.   Notice of this Application has been
provided to those parties entitled to notice under this
Court's Order Pursuant to Bankruptcy Code Sections 102
and 105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(D.I. 136).  The Debtors submit that, under the
circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

26.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Application and all applicable
authority is set forth in the Application, the Debtors
request that the requirement that all applications be
accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

27.   No previous request for the relief sought
herein has been made to this Court or any other court.

17

**CONCLUSION**

WHEREFORE, the Debtors respectfully request
that the Court enter an order, substantially in the form
annexed hereto, granting the relief requested in the
Application and such other and further relief as may be
just and proper.

Dated:     Richmond, Virginia
           November 18, 2008

                    Circuit City Stores, Inc.



                    /s/ Bruce H. Besanko
                    Bruce H. Besanko
                    Executive Vice President and Chief
                    Financial Officer

Dated: November 18, 2008
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

**<u>EXHIBIT A</u>**
Duffy Affidavit

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - x
                          :
In re:                    :   Chapter 11
                          :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                   :
                          :
              Debtors.    :   Jointly Administered
- - - - - - - - - - - - - x

**AFFIDAVIT IN SUPPORT OF THE DEBTORS' APPLICATION
FOR AN ORDER AUTHORIZING EMPLOYMENT AND
RETENTION OF FTI CONSULTING, INC. AS
FINANCIAL ADVISOR FOR THE DEBTORS**

STATE OF MASSACHUSETTS   )
                         )  ss.
COUNTY OF SUFFOLK        )

I, Robert J. Duffy, being duly sworn, depose and
say:

1.   I am a Senior Managing Director with FTI
Consulting, Inc. (together with its wholly owned
subsidiaries, agents, independent contractors and
employees, "FTI"), a financial advisory services firm
with offices located at numerous locations around the
world.  I submit this Affidavit on behalf of FTI (the
"Affidavit")and in support of the application (the
"Application") of Circuit City Stores, Inc., the debtors
and debtors in possession in the above-captioned cases
(collectively, the "Debtors"), for an order authorizing
the employment and retention of FTI as Financial
Advisors under the terms and conditions set forth in the
Application. Except as otherwise noted,[1] I have personal
knowledge of the matters set forth herein.

### DISINTERESTEDNESS AND ELIGIBILITY

2.   In connection with the preparation of this
Affidavit, FTI's professionals conducted a review of its
professional contacts with the Debtors, their affiliates,
and other parties in interest that were reasonably known

---

[1]     Certain of the disclosures herein relate to matters within the
personal knowledge of other professionals at FTI and are based
on information from them.

2

to us.  Our review, completed under my supervision,

consisted of queries of an internal computer database

containing names of individuals and entities that are

present or recent former clients of FTI in order to

identify potential relationships.  FTI's search included

the following types of entities: the Debtors and its

subsidiaries, non-debtor affiliates, the Debtors'

directors and officers, secured lenders, significant

merchandise creditors, significant vendors, significant

real and personal property lessors, significant

shareholders, consignors, third party administrators,

potential liquidators, litigation parties, banks,

attorneys and professionals. A listing of the parties

reviewed is reflected on Exhibit 2 to this Affidavit.  A

summary of such relationships that FTI identified during

this process is set forth on Exhibit 3 to this Affidavit.

If any new relevant facts or relationships are

discovered or arise, FTI will promptly file a Bankruptcy

Rule 2014(a) Supplemental Affidavit.

        3.   FTI has initiated ethical walls relating to

two matters to ensure that FTI's representation of

another party does not have a materially adverse impact

3

on the Debtors.   First, FTI is currently engaged by

Syntax Brillian and the Debtors are a party to

litigation with Syntax Brillian.   The ethical wall was

established on September 3, 2008.   Second, FTI is

currently engaged by Magellan and Magellan is a

potential creditor of the Debtors.   The ethical wall

was established October 28, 2008.

4.   From the results of such review, we were not

made aware of any conflicts of interest or additional

relationships that we believe would preclude us from

performing our services.   No FTI personnel working on

this engagement performed any services for either Syntax

Brillian or Magellan following the date of execution of

the ethical wall agreements.   FTI personnel working

under my direction have been subject to ethical walls to

avoid any leakage of information or engagement-related

communications with FTI personnel assigned to assist

Syntax Brillian or Magellan.   These ethical walls remain

in effect as of the date of this Affidavit.   As part of

the ethical wall, FTI has instituted information

blocking systems to prevent the exchange of information

regarding the Debtors between the groups involved within

FTI.

5.     Financial Dynamics ("FD"), a division of FTI,

is employed by the Debtors to provide communications

services.   FD is not a creditor and these services are

being provided in the ordinary course of business.

6.     Otherwise, based on the results of its review

of parties-in-interest associated with the Debtors, FTI

does not have a relationship with any of the parties on

the Exhibit 2 in matters related to these proceedings.

FTI has provided and could reasonably be expected to

continue to provide services unrelated to the Debtors'

cases for the various entities shown on Exhibit 3.

FTI's assistance to these parties has been related to

providing various financial, restructuring, litigation

support and/or engineering and scientific investigation

consulting services.   To the best of my knowledge, no

services have been provided to the parties-in-interest

which involve their rights in the Debtors' cases, nor

does FTI's involvement in this case compromise its

ability to continue such consulting services.

7.    Further, as part of its diverse practice, FTI
appears in numerous cases, proceedings and transactions
that involve many different professionals, including
attorneys, accountants and financial consultants, who
may represent claimants and parties-in-interest in the
Debtors' chapter 11 cases.  Also, FTI has performed in
the past, and may perform in the future, advisory
consulting services for various attorneys and law firms,
and has been represented by several attorneys and law
firms, some of whom may be involved in these proceedings.
In addition, FTI has in the past, may currently and will
likely in the future be working with or against other
professionals involved in these cases in matters
unrelated to the Debtors and these cases. Based on our
current knowledge of the professionals involved, and to
the best of my knowledge, none of these relationships
create interests materially adverse to the Debtors in
matters upon which FTI is to be employed, and none are
in connection with these cases.

8.    FTI does not believe it is a "Creditor" of any
of the Debtors within the meaning of Bankruptcy Code
section 101(10).  Further, neither I nor any other FTI

6

partner or principal, to the best of my knowledge, is a holder of any shares of the Debtors' stock.

9.   Based on the results of the relationship search conducted to date as described above, FTI has no known significant connection to the above-captioned Debtors, their creditors, equity security holders, other parties-in-interest (as reasonably known to us) or their respective attorneys, except as disclosed or otherwise described herein.  Further, to the best of my knowledge, no one involved in this case or in FTI's practice generally has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

10.  As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), in that FTI

(1)   is not a creditor, equity security holder or insider of the Debtors;

(2)   is not and was not within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors.

In addition, to the best of my knowledge and based upon the results of the relationship search described above, FTI neither holds nor represents an interest adverse to the Debtors within the meaning of Bankruptcy Code section 327(a).

11.    It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest.  If any new relevant facts or relationships are discovered or arise, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Affidavit.

### PROFESSIONAL COMPENSATION

12.    Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable U.S. Trustee guidelines and the local rules of this District, FTI will seek payment for compensation on an hourly basis for the financial and other consulting services outlined in the application, and reimbursement of actual and necessary expenses incurred by FTI.  FTI's customary hourly rates as charged to both bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the

8

Application for the employment of FTI. These hourly
rates are adjusted annually.

13.   Further, according to FTI's books and records,
during the ninety days prior to the Debtors' petition
date, FTI received $3,228,924 as set forth on Exhibit 4,
which amount reflects $2,336,490 billed to the Company
for professional services, $142,434 for out of pocket
expense reimbursement and the $750,000 held as On-
Account Cash.

14.   No commitments have been made or received by
FTI, nor any partner or employee associate thereof, as
to compensation or payment in connection with these
cases other than in accordance with the provisions of
the Bankruptcy Code.   FTI has no agreement with any
other entity to share with such entity any compensation
received by FTI in connection with these chapter 11
cases.


                              FURTHER AFFIANT SAYETH NOT.


                              /s/ Robert J. Dufffy
                              Robert J. Duffy


                                      9

Subscribed and sworn to
before me this 14th day of
November 2008.


/s/ Sandra M. Raabe
Notary Public # 7045899

## Exhibit 1A & 1B
### FTI Engagement Letters



FTI Consulting
125 High Street
Suite 1402
Boston. MA 02110
617.897.1500 telephone
617.897.1510 facsimile
www.fticonsulting.com

PRIVATE & CONFIDENTIAL

August 15, 2008

Phil Schoonover
Chairman, President, CEO
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

Re: Retention of FTI Consulting, Inc.

Dear Mr. Schoonover:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below.  This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at the direction of the Executive Committee of the Company's Board of Directors (the "Executive Committee") and its management, are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning and analysis of an "out of court" restructuring that is intended to maximize shareholder value and minimize disruption to the Company's operations.

**Phase I Scope:**

Store Footprint Analysis
- Evaluate performance of individual stores by format and region
- Analyze four wall profitability of each store
- Analyze allocated expenses such as advertising, field operations and distribution costs
- Review fixed/variable nature of non four wall costs to assess impact of potential store closings

Circuit City Stores, Inc.
August 15, 2008

- Analyze liquidity and earnings impact of store closures
    - Evaluate likely range of lease buyout costs based on situation
    - Assess impact of store closing sales on a cash and GAAP basis
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing process
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Liquidity Forecasting
- Evaluate the Company's current weekly forecasting models
    - Assess functionality of the model and suggest/develop enhancements
    - Create flexible model to evaluate impact on liquidity of critical assumptions
- Validate assumptions included in forecast including, without limitation:
    - Comparable store sales and margin
    - Inventory levels and trade credit support
    - Store closing impact including inventory liquidation and lease termination costs
    - Other issues as identified by the Executive Committee, management or FTI

Additional Phase I Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Coordination of and participation in a "kick-off" meeting and subsequent in-person meetings at the Company's headquarters on such date as the Company determines
- Provide an initial timeline and staffing requirements within five business days of the execution date of this letter
- Provide an initial report, recommendations and a proposed work plan (including a proposed timeline and staffing requirements) on or before September 8, 2008
- Develop and present FTI's Phase I analysis and subsequent recommendations at a meeting of the Executive Committee currently scheduled for the week of September 15, 2008
- Provide other services as requested by management or the Executive Committee
- The parties agree that Phase I will be concluded in approximately 3 - 4 weeks unless the Company, in its sole discretion agrees to an alternative schedule

**Phase II Scope:**

Business/Out-of-Court Restructuring Plan
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting

Circuit City Stores, Inc.
August 15, 2008

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring

Additional Phase II Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management or the Executive Committee.

Financing Services
- The Services set forth in this Engagement Contract do not include financing or capital raising activities. In the event the Company requests that FTI perform such activities, the parties agree to execute an addendum to this Engagement Contract that describes such additional services and any related fees.

Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the Executive Committee. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other-parties, including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code")*, are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a

Circuit City Stores, Inc.
August 15, 2008

general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|  | Per Hour |
|---|---|
| Senior Managing Directors | $650 - $715 |
| Directors / Managing Directors | $475 - $620 |
| Consultants/Senior Consultants | $235 - $415 |
| Administrative / Paraprofessionals | $95 - $190 |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Executive Committee, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.
- In the event the Company files for bankruptcy protection and the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

-4-

Circuit City Stores, Inc.
August 15, 2008

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on your behalf during this Engagement provided that FTI shall present to the Company invoices and other supporting detail that may be reasonably requested by the Company. Direct expenses are reasonable and customary out-of-pocket expenses which are billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other out-of-pocket expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of outside counsel) with respect thereto as provided herein.

**Cash on Account:**

Initially, the Company will forward to us the amount of $100,000, which funds will be held "on account" to be applied to our professional fees, expenses and disbursements for the Engagement (as replenished or supplemented from time to time, the "Initial Cash on Account"). To the extent that this amount exceeds our fees, expenses and disbursements upon the completion or termination of the Engagement, we will immediately refund to the Company any portion of the Initial Cash on Account and the Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and expenses and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

Circuit City Stores, Inc.
August 15, 2008

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.    **Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

Circuit City Stores, Inc.
August 15, 2008

**5.    Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

**6.    Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
August 15, 2008

Yours faithfully,

FTI CONSULTING, INC.

By

Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
August 15, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____
Phil Schoonover
Chairman, President, CEO

Date: August 27, 2008

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Circuit City Stores, Inc. dated August 15, 2008 (the "Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1.      **Reports and Advice**

1.1     **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party (other than to your attorneys, investment bankers, financial advisors, auditors and other representatives), or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2.      **Information and Assistance**

2.1     **Provision of information and assistance**—Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     **No assurance on financial data**—While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information**—In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.  Additional Services**

3.1    **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2    **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

**4.    Confidentiality**

4.1    **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

    4.1.2    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.3    is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

    4.1.4    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3    **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.  Termination**

5.1    **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party.  Upon receipt of such notice, we will stop all work immediately.  You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2     **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3     **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.  **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1     **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2     **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3     **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4     **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5     **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7. **Independent Contractors** — The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By: _____
Phil Schoonover
Chairman, President, CEO

Date: _____Auivst 27, 2008_____

F  T  I

PRIVATE & CONFIDENTIAL

November 05, 2008

Bruce H. Besanko
Chief Financial Officer
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

Re: Retention of FTI Consulting, Inc.

Dear Mr. Besanko:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at the direction of the Company and are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning, analysis of and execution of a restructuring that is intended to maximize value for all constituents and minimize disruption to the Company's operations.

**Store Footprint Analysis**
- Analyze liquidity and earnings impact of potential store closures
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing processes
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Circuit City Stores, Inc.
November 5, 2008

**Liquidity Forecasting**
- Evaluate current liquidity position and expected future cash flows
- Assist with management and control of cash disbursements
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction
  - Prepare "bid packages" for Liquidators and manage selection process
  - Solicit potential inventory Liquidators for going-out-of-business sale process
  - Assist the Company in the negotiation of an Agency agreement
  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business
  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies
- Assist with data collection and information gathering related to third party due diligence
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units

Circuit City Stores, Inc.
November 5, 2008

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee
- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.


Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other parties,

Circuit City Stores, Inc.
November 5, 2008

including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code")*, are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3. **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|                                       | Per Hour       |
| ------------------------------------- | -------------- |
| Senior Managing Directors             | $650 -  $715   |
| Directors / Managing Directors        | $475 -  $620   |
| Consultants/Senior Consultants        | $235 -  $415   |
| Administrative / Paraprofessionals    | $95 -  $190    |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Company, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.

Circuit City Stores, Inc.
November 5, 2008

- In the event the Company files for bankruptcy protection and the Company consummates
  a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee
  of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale
  transaction not described above, a Completion Fee of up to $1 million.

**Financing Fee**

Second Lien Financing
- A total fee of 1.0% of the commitment of second lien financing will be earned by FTI
  whether outside of a chapter 11 proceeding or as part of a DIP financing. Such fees will
  be earned and paid upon interim court approval or closing of such financing.

Senior Loan Financing
- In the event the Company seeks to refinance its existing senior debt outside of a chapter
  11 proceeding or secure senior debt as part of a DIP financing, a fee of .25% of the
  commitment amount will be earned and paid upon interim court approval or closing of
  such financing.

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are
incurred on your behalf during this Engagement provided that FTI shall present to the
Company invoices and other supporting detail that may be reasonably requested by the
Company. Direct expenses are reasonable and customary out-of-pocket expenses which are
billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel,
meals, accommodations and other out-of-pocket expenses specifically related to the
Engagement. Further, if FTI and/or any of its employees are required to testify or provide
evidence at or in connection with any judicial or administrative proceeding relating to the
Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for
reasonable direct expenses (including reasonable, documented fees of outside counsel) with
respect thereto as provided herein.

**Cash on Account:**

The Company will forward to us a total amount of $750,000, which funds will be held "on
account" to be applied to our professional fees, expenses and disbursements for the
Engagement (as replenished or supplemented from time to time, the "Cash on Account"). FTI
acknowledges that it is holding $200,000 Initial Cash on Account relating to its engagement
letter with the Company dated August 15, 2008. To the extent that this amount exceeds our
fees, expenses and disbursements upon the completion or termination of the Engagement, we
will immediately refund to the Company any portion of the Initial Cash on Account and the
Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI.
The Company agrees to increase or supplement the Initial Cash on Account from time to time
during the course of the Engagement in such amounts as the Company and we mutually shall
agree are reasonably necessary to increase the Initial Cash on Account to a level that will be
sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services
rendered and expenses and disbursements incurred on the basis discussed above, and in certain

Circuit City Stores, Inc.
November 5, 2008

circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph

-6-

Circuit City Stores, Inc.
November 5, 2008

may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

**4.    Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

**5.    Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in a potential Chapter 11 case. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in a potential Chapter 11 in matters unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Company in matters upon which FTI is to be employed, and none are in connection with these cases.

FTI has initiated ethical walls relating to two matters to ensure that FTI's representation of another party does not have a materially adverse impact on the Company. First, FTI is currently engaged by Syntax Brillian and Circuit City is a party to litigation with Syntax Brillian. Second, FTI is currently engaged by Magellan and Magellan is a potential creditor of the Company in any Chapter 11 case.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

Circuit City Stores, Inc.
November 5, 2008

**6.      Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
November 5, 2008

Yours faithfully,

FTI CONSULTING, INC.

By: _____

Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
November 5, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____
     Bruce H. Besanko
     Chief Financial Officer

Date: NOV 5, 2008

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Circuit City Stores, Inc. dated November 5, 2008 (the "Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.**    **Reports and Advice**

1.1    **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party (other than to your attorneys, investment bankers, financial advisors, auditors and other representatives), or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.**    **Information and Assistance**

2.1    **Provision of information and assistance**—Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data**—While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information**—In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

### 3.  Additional Services

3.1    **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2    **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

### 4.  Confidentiality

4.1    **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

   4.1.2    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

   4.1.3    is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

   4.1.4    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3    **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

### 5.  Termination

5.1    **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2    **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3    **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.    **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1    **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2    **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3    **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4    **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5    **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7.   **Independent Contractors** -- The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By:   Bruce H. Besanko
      Chief Financial Officer

Date:   Nov 5, 2008

## EXHIBIT 2
### Listing of Parties-in-Interest
### Reviewed for Current Relationships

**Debtors**
Abbott Advertising Agency, Inc.
CC Aviation, LLC
CC Distribution Company of
Virginia, Inc.
Circuit City Properties, LLC
Circuit City Purchasing Company,
LLC
Circuit City Stores PR, LLC
Circuit City Stores West Coast,
Inc.
Circuit City Stores, Inc.
Courcheval, LLC
Digital Video Express, LP
InterTAN, Inc.
Kinzer Technology, LLC
Mayland MN, LLC
Northern National Insurance, Ltd
Orbyx Electronics, LLC
Patapsco Designs, Inc.
Prahs, Inc.
Sky Venture Corporation
Tourmalet Corp.
Ventoux International, Inc.
XS Stuff, LLC

**Non-Debtor Affiliates**
587255 Ontario Ltd.
American Computer Development Inc.
Asian Sourcing & Procurement
Services Co. Ltd.
Cicuit City Global Sourcing Limited
Early Adopter Fund, LLC
InterTAN Canada, Ltd
InterTAN France SNC
InterTAN Ontario Ltd.
PlumChoice, Inc.
Sixth Street Marketplace, LP
St. Tammany Oaks Subdivision
Association LLC
Theater Xtreme Entertainment Group,
Inc.

**Current and Former Officers and
Directors**
Appleby Corporate Services, Ltd.

Lisa Baldyga
Henry P. Barretta
Bruce H. Besanko
Alan Bossin
Brian S. Bradley
Kelly E. Breitenbecher
Ronald M. Brill
Carolyn H. Byrd
Consec Services Limited (HK)
Ron Cuthbertson
Ean Daoust
Philip J. Dunn
Ursula O. Fairbairn
Timothy C. Faries
Barbara S. Feigin
Michael E. Foss
Jacqueline Grove
James F. Hardymon
John T. Harlow
Reginald D. Hedgebeth
Lyle G. Heidemann
Eric A. Jonas, Jr.
Alan Kane
John J. Kelly
Allen B. King
Don R. Kornstein
Jeric Ma
James A. Marcum
Jeffrey A McDonald
Michelle Mosier
John Mulleady
John A. Oakey, III
Linda M. Owen
Steven P. Pappas
Danny W. Ramsey
Mikael Salovaara
Philip J. Schoonover
Marlies A. Smith
J. Patrick Spainhour
Richard D. Spurling
Jeffrey S. Stone
Gerald L. Swider
Ronald L. Turner
Elliott Wahle
Mark J. Wong
Carolyn Y. Woo

## Secured Lenders

Ableco Finance LLC
Bank of America, N.A.
Burdale Finance Ltd.
Capital One Leverage Finance Corp.
Crystal Capital
Fifth Third Bank
General Electric Capital
Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
National City Business Credit, Inc.
PNC Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UPS Capital Corporation
Wachovia Capital Finance
Corporation
Webster (Webster Bank/Webster
Financial Corporation)
Wells Fargo Retail Finance, LLC

## Significant Merchandise Creditors

Alliance Entertainment
Apple
Audiovox
Belkin Logistics Inc
Buena Vista Home Video
Columbia Tristar Home Video
Dlink Systems
Eastman Kodak Co
Electronic Arts
Epson America Inc
Fox Home Entertainment
Fuji Photo Film Usa
Garmin International Inc
Hewlett-Packard  US Operations
Hisense USA Corporation
Kingston Technologies
Klipsch Audio Technologies LLC
Lenovo, Inc.
Lexmark International Inc
Linksys
Logitech Inc
Magellan
Microsoft Corp
Microsoft Xbox
Mitsubishi Digital Electronics

Monster Cable Products
Nikon Inc
Olympus Corporation
Omnimount Systems Inc
Oncorp US, Inc
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Paramount Home Video
Pioneer Electronics (USA) Inc
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Stillwater Designs Inc
THQ Inc
Tomtom Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div
Universal Distribution Records
Vizio
Warner Home Video
Western Digital Technologies
Zenith Electronics Corp

## Significant Vendors

Alpha Security Products
American Systems Corp
Andrews Electronics Inc.
Bailiwick Data Systems Inc
CDW Direct LLC
Clay Inc, Bruce
Clickit Inc
Cormark Inc
Corporate Express
Corporate Facilities Group
Cosco
DC Power Solutions
Eastern Security Corp
Eleets Logistics
Ereplacements LLC
Fire Materials Group LLC
Gorilla Nation Media
Graphic Communications
Illinois Wholesale Cash Register
Innerworkings LLC
J&F Mfg Inc
JLG Industries Inc
Nextag

NFL Enterprises LLC
North American Roofing Sys Inc
Northern Wire Productions
Orbis Corporation
Pricegrabber Com LLC
PTR Compactor & Baler Co
Quebecor World KRI
Retail Maintenance Services LLC
Samsung Electronics America
Shopping.Com Inc
Shopzilla Inc
Sony
Specificmedia Inc
Standard Electric
Streater Inc
Swiff Train Company
Trane
Tremor Media
Universal Fixtures & Display
US Signs
USIS Commercial Services Inc
Vance Baldwin
Vanguard Products Group Inc
Vector Security
Virginia Electronic Components
Wayne Dalton Corp
Weather Channel Interactive, The

### Consignment Vendors
ValuSoft (THQ, Inc.)
foneGear
INTUIT Inc.
Pinnacle Systems, Inc. (Avid Tech, Inc.)
Memorex Products, Inc.
Panasonic Consumer Electronics Company
Navarre Corporation

### 5% or Greater Shareholders
J Richard Atwood
Classic Fund Management Aktiengesellschaft
First Pacific Advisors LLC
HBK Investments LP
HBK Management LLC
HBK Master Fund
HBK Master Fund LP
HBK Partners II LP
HBK Services LLC
Robert L Rodriguez

Mark J Wattles

### Third Party Administrators
Aetna Life Insurance Company
Alliance Entertainment Corporation
American Express Travel Related Services Co
American Express Trust Co
Aon
Assurant
Avista Advantage, Inc
Beecher Carlson Insurance Services
CTSI
E-Count
Empire Blue Cross Blue Shield
Hewitt Associates LLC
International Business Machines, Inc
Jardine Lloyd Thompson Canada
Kaiser Permanente
Marsh USA, Inc.
Medco Health Solutions
Mercer Insurance Group
Mid-Atlantic Vision Service Plan, Inc.
Navigant Consulting, Inc
Specialty Risk Services
Tangoe, Inc
Triple-S Management Corporation
Vision Service Plan
Wachovia Bank, N.A.

### Significant Real Property Lessors (Landlords)
Benderson Development Co
Cardinal Capital Partners
Circuit Investors #2 Ltd
Developers Diversified Realty Corp
Forest City Ratner Co
Immobilien Verwaltung Gmbh
Inland American Retail Management
Kamin Realty Co
Kimco Relaty Corp
Lucknow Associates
New Plan Excel Realty Trust
One Liberty Properties
Red Mountain Retail Group
Saunders Hotel Group
Simon Property Group
Terra Enterprises
Vornado Realty Trust

Weingarten Realty Investors
Wilmington Trust Co

**Significant Personal Property Lessors**
Avaya Financial Services
GE Fleet Services
IBM
Hewlett Packard Company
Service Pwer
Toshiba

**Professionals**
Bingham McCutchen LLP
Ernst & Young
Goldman Sachs
Kirkland & Ellis LLP
Kurtzman Cardon Consultants LLC
LeClairRyan
McGuireWoods, LLP
Ogilvy Renault LLP
Osler, Hoskin & Hardcourt LLP
Rothschild, Inc
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering Hale, & Dorr LLP

**Litigation Parties**
Ada Alicea (class action)
Andrew Foss
Audiobahn
Betty Ibrahim (class action)
Christopher Murphy (class action)
Christopher Snow (class action)
Citigroup
Clayton P. Voegtle (class action)
Daniel Weidler (class action)
Davis (class action)
Dealtree
Donald Moxley
Federal Communications Commission
Floyd Edward Temple Jr. (class action)
Govani (class action)
Harper
Hernandez (class action)
Hilgenberg (class action)
Internal Revenue Service
Iowa AG

Jamal Booker (class action)
Kenneth Donnelly (class action)
Kobra Properties
Latia Holloman
Location 4500 Eastlake LA
Location 6946 Whitney Bank
Mad Rhino
Maria Moncayo (class action)
Massachusetts Department of Revenue
Mastercard
Michael Banker (class action)
Michael DiPirro (class action)
Micro Electronics
Millennium Retail Partners
Monster Cable
RealSource
Roberty Gentry (class action)
Securities and Exchange Commission
State of Iowa
Syntax Brillian
Tennesee Department of Revenue
Unical
Visa
William Harris (class action)

**Banks**
American Savings
Amsouth/Regions
Banco Popular
Bank of America
Bank of America/CRP Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.
Lehman Brothers
Merrill Lynch Global Institutional Advisory Division
RBC Dain Rauscher
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

**Potential Liquidators**
Gordon Bros Retail Partners, LLC
Great American Group
Hilco Merchant Resources, LLC
Hudson Capital Partners, LLC
SB Capital Group, LLC
Tiger Capital Group, LLC

## EXHIBIT 3
## Parties-in-Interest Noted for Court Disclosure

**Current and Former Officers and Directors**
Ronald L Turner

**Secured Lenders**
Bank of America, N.A.
Fifth Third Bank
General Electric Capital Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UBS Capital Corporation
Wachovia Capital Finance Corporation
Wells Fargo Retail Finance, LLC

**Significant Merchandise Creditors**
Belkin Logistics Inc
Eastman Kodak Co
Epson America Inc
Hewlett-Packard US Operations
Lexmark International Inc
Linksys
Microsoft Corp
Microsoft Xbox
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div

**Significant Vendors**
American Express Travel Related Services Co
Corporate Express
Innerworkings LLC
Kaiser Permanente
Magellan*
Medco
Samsung Electronics America
Sony

**Significant Real Property Lessors**
Developers Diversified Realty Corp
Kimco Realty Corp
New Plan Excel Realty Trust
Vornado Realty Trust

**Significant Personal Property Lessors**
Hewlett Packard Company
Toshiba

**Professionals**
Bingham McCutcheon LLP
Ernst & Young LLP
Kirkland & Ellis LLP
LeClair Ryan
McGuire Woods
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering, Hale & Dorr LLP

**Third Party Administrators**
Aon
Assurant
International Business Machines, Inc.
Jardine Lloyd Thompson Canada
Navigant Consulting
Triple-S Management Corporation

**Litigation Parties**
Citigroup
Internal Revenue Service
Keystone Automotive
Mastercard
Securities & Exchange Commission
Syntax Brillian*
Visa

**Banks**
Banco Popular
Bank of America
Bank of America/Crp Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.

Lehman Brothers
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

*Ethical walls have been
established between these parties-
in-interest and FTI personnel
working on this engagement as
discussed in the affidavit

**EXHIBIT 4**
List of Invoices and Payments

| Invoice Date | Payment Date | Description | Fees | | Expenses | | Total Amount | |
|---|---|---|---|---|---|---|---|---|
| 8/28/08 | 9/9/08 | Invoice | $ | 76,365 | $ | 6,900 | $ | 83,265 |
| 8/31/08 | 9/17/08 | Invoice | | 95,700 | | 8,600 | | 104,300 |
| 9/12/08 | 9/17/08 | Invoice | | 130,195 | | 8,600 | | 138,795 |
| 9/18/08 | 9/23/08 | Invoice | | 149,335 | | 10,361 | | 159,696 |
| 9/26/08 | 10/2/08 | Invoice | | 162,965 | | 7,250 | | 170,215 |
| 9/30/08 | 10/8/08 | Invoice | | 183,378 | | 7,250 | | 190,628 |
| 10/9/08 | 10/22/08 | Invoice | | 173,895 | | 7,250 | | 181,145 |
| 10/17/08 | 10/27/08 | Invoice | | 187,235 | | 7,250 | | 194,485 |
| 10/23/08 | 10/30/08 | Invoice | | 262,667 | | 10,500 | | 273,167 |
| 10/28/08 | 11/4/08 | Invoice | | 263,347 | | 12,750 | | 276,097 |
| 11/5/08 | 11/7/08 | Invoice | | 334,871 | | 35,623 | | 370,494 |
| 11/5/08 | 11/7/08 | Invoice | | 316,537 | | 20,100 | | 336,637 |
| | | **Total** | **$** | **2,336,490** | **$** | **142,434** | **$** | **2,478,924** |
| **Cash on Account:** | | | | | | | | |
| 8/27/08 | 9/9/08 | Cash on Account | $ | 100,000 | $ | - | $ | 100,000 |
| 8/27/08 | 9/22/08 | Cash on Account | | 100,000 | | - | | 100,000 |
| 10/31/08 | 11/5/08 | Cash on Account | | 550,000 | | - | | 550,000 |
| | | **Total** | **$** | **750,000** | **$** | **-** | **$** | **750,000** |
| | | **Total** | **$** | **3,086,490** | **$** | **142,434** | **$** | **3,228,924** |

Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION
- - - - - - - - - - - - - - X
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
327(a), 328 AND 1107 AND BANKRUPTCY RULE 2014(a),
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

            Upon the application (the "Application")[1] of

the Debtors for an order, pursuant to Bankruptcy Code

sections 105(a), 327(a), 328 and 1107, authorizing them

---

[1]     Capitalized terms not otherwise defined herein shall have the
        meanings ascribed to such terms in the Application.

to retain FTI Consulting, Inc. as financial advisors,

effective as of the Petition Date; and the Court having

reviewed the Application and the Duffy Affidavit in

Support of the Application (the "Duffy Affidavit"); and

due and adequate notice of the Application having been

given; and it appearing that no other notice need be

given; and it appearing that FTI Consulting, Inc.

neither holds nor represents any interest adverse to the

Debtors' estates; and it appearing that FTI Consulting,

Inc. is "disinterested," as that term is defined in

Bankruptcy Code section 101(14); and it appearing that

the relief requested in the Application is in the best

interest of the Debtors, their estates and their

creditors; after due deliberation thereon and sufficient

cause appearing therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.    The Application is GRANTED.

2.    In accordance with Bankruptcy Code

sections 327(a) and 328, the Debtors are authorized to

employ and retain FTI Consulting, Inc. effective as of

the Petition Date as their financial advisors on the

2

terms set forth in the Application and the Engagement
Letters.

3.    The Engagement Letters are hereby
approved and, to the extent not inconsistent with this
Order, shall govern the Debtors' and FTI Consulting,
Inc.'s respective rights and obligations.

4.    FTI Consulting, Inc. shall be compensated
in accordance with the Engagement Letters, procedures
set forth in Bankruptcy Code sections 330 and 331 and
such Bankruptcy and Local Rules as may then be
applicable, from time to time, and such procedures as
may be fixed by order of this Court; provided, however,
any and all "Completion Fee" and/or "Financing Fee" (as
described in the Engagement Letters) that may become due
and payable to FTI Consulting, Inc. during these chapter
11 cases are hereby approved under Bankruptcy Code
section 328(a) and shall only be subject to review
thereunder.

5.    FTI Consulting, Inc. is authorized to
apply the amounts presently held as On-Account Cash to
pay any fees, charges, and disbursements relating to
services rendered to the Debtors prior to the Petition

Date that remain unpaid as of such date (the "Final

Prepetition Billed Amount").  Any amount of the On-

Account Cash remaining after such payment of the Final

Prepetition Billed Amount may be held until the

conclusion of the Debtors' cases and shall be applied by

FTI Consulting, Inc. against its final fee application.

6.    The relief granted herein shall be

binding upon any chapter 11 trustee appointed in these

chapter 11 cases, or upon any chapter 7 trustee

appointed in the event of a subsequent conversion of

these chapter 11 cases to cases under chapter 7.

7.    The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

8.    This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
        [__], 2008


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order
has been endorsed by or served upon all necessary
parties.


    /s/ Douglas M. Foley