Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :    Jointly Administered
            Debtors.          :
                              :    **Obj. Deadline: June 28, 2010 at**
- - - - - - - - - - - - - - x    **5:00 p.m. (ET)**

**NOTICE OF PROPOSED SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE DEBTORS, ALLIANCE ENTERTAINMENT LLC, NOW KNOWN AS SOURCE INTERLINK DISTRIBUTION, LLC, AND SOURCE INTERLINK MEDIA, LLC RESOLVING DEBTORS' OMNIBUS OBJECTIONS TO CLAIMS AND OTHER RELATED MATTERS**

        PLEASE TAKE NOTICE that, on August 10, 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") entered the Order Pursuant To 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 2002, 9006, and 9019 Authorizing the Establishment of Procedures to Settle Certain Pre-Petition and Post-Petition

Claims and Causes of Action Without Further Court Approval
(the "Settlement Procedures Order") (Docket No. 4401).[1]   A
copy of the Settlement Procedures Order (without exhibits)
is annexed as Exhibit 1.

PLEASE TAKE FURTHER NOTICE that, pursuant to the
Settlement Procedures Order, the above-captioned debtors
and debtors in possession (collectively, the "Debtors")[2] are
authorized to negotiate and enter into stipulation and
settlement agreements with third parties, subject to the
procedures set forth in the Settlement Procedures Order and
outlined herein.

PLEASE TAKE FURTHER NOTICE that, at this time,
the Debtors have entered into a stipulation and settlement
agreement (the "Settlement Agreement") with Alliance
Entertainment LLC, now known as Source Interlink
Distribution, LLC ("Alliance"), and Source Interlink Media,
LLC ("SIM"), a copy of which is annexed as Exhibit 2.

## SUMMARY OF SETTLEMENT AGREEMENT TERMS[3]

---

[1]   Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Settlement Agreement (defined
below) or the Settlement Procedures Order.

[2]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution
Company of Virginia, Inc. (2821), Circuit City Properties, LLC
(3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency,
Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311),
PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),
Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit
City Stores PR, LLC (5512).  The address for Circuit City Stores
West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado
80031.  For all other Debtors, the address was 9950 Mayland Drive,
Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive,
Glen Allen, VA 23060.

[3]   This section of the notice constitutes a summary of the material
terms of the Settlement Agreement and is being provided for
convenience only and should not be relied upon in any way.  All
parties are strongly encouraged to review the Settlement Agreement
in its entirety.  In the event there is a conflict between the

*(cont'd)*

PLEASE TAKE FURTHER NOTICE that, in accordance with paragraph 10(b) of the Settlement Procedures Order, the material terms of the Settlement Agreement are as follows:

(i)     This a Tier II Settlement.

(ii)    The Parties agree that (i) the Alliance 503(b)(9) Claim shall be valued at $3,728,611.45, (ii) the Alliance Secured Claim shall be valued at and allowed in the face amount of $1,028,153 (the "Allowed Alliance Secured Claim"), and (iii) the Alliance General Unsecured Claim shall be valued at $16,075,599.63.

(iii)   The Parties agree that the Debtors' Alleged Receivables shall be valued at $10,880,866.77 (the "Receivables").

(iv)    In full satisfaction and settlement of the Alleged Receivables and the Receivables, the Receivables shall be netted against (i) the Alliance 503(b)(9) Claim such that the 503(b)(9) Claim shall be reduced to and is hereby allowed as a priority claim under Bankruptcy Code section 503(b)(9) in amount of $500,000 (the "Allowed Alliance 503(b)(9) Claim"), and (ii) the Alliance General Unsecured Claim such that the Alliance General Unsecured Claim shall be reduced to and is hereby allowed as a general unsecured non-priority claim in the amount of $8,423,344.31 (the "Allowed Alliance General Unsecured Claim").

(v)     To the extent required, the automatic stay of 11 U.S.C. § 362 is lifted to permit the netting set forth in Paragraph (iv) above.

(vi)    The Parties further agree that (i) the SIM 503(b)(9) Claim shall be valued at and is hereby allowed in the face amount of $354,693.30 as a priority claim under Bankruptcy Code section 503(b)(9) (the "Allowed SIM 503(b)(9) Claim"), (ii) the SIM General Unsecured Claim shall be valued at and is hereby allowed in the face amount of $518,217.10 as a general unsecured non-priority claim (the "Allowed SIM General Unsecured Claim"), and (iii) the SIM

_____

*(cont'd from previous page)*
notice and the Settlement Agreement, the Settlement Agreement shall control in all respects.

3

Administrative Expense Claim shall be valued at and
is hereby allowed in the face amount of $40,540.38
as an administrative expense pursuant to Bankruptcy
Code Section 503(b)(1) (the "Allowed SIM
Administrative Expense Claim").

(vii)   The Allowed Alliance 503(b)(9) Claim, the Allowed
SIM 503(b)(9) Claim, and the Allowed SIM
Administrative Expense Claim shall be deemed
"allowed" claims against Circuit City Stores, Inc.
and its estate in case number 08-35653 (KRH) for all
purposes, including with respect to any confirmed
plan of liquidation or in any chapter 7 case of such
Debtor, shall be paid on the "effective date" of any
plan or as required under any chapter 7 liquidation
(as applicable), and shall not be subject to further
objection, offset, reduction, discount, impairment
or subordination.

(viii)  The Allowed Alliance Secured Claim shall be and
hereby is deemed an "allowed" secured claim against
Circuit City Stores, Inc. and its estate in case
number 08-35653 (KRH) for all purposes as a secured
claim pursuant to Bankruptcy Code Section 506(a),
including with respect to any confirmed plan of
liquidation or in any chapter 7 case of such Debtor,
shall be paid in full on the "effective date" of any
plan or as required under any chapter 7 liquidation
(as applicable), and shall not (i) accrue interest
or (ii) be subject to enhancement on account of
interest or otherwise, or objection, offset,
reduction, discount, impairment or subordination.
The Adequate Protection Order and Replacement Lien
shall remain in full force and effect unless and
until payment in full is made on account of the
Alliance Secured Claim.

(ix)    The Allowed Alliance General Unsecured Claim and the
Allowed SIM General Unsecured Claim shall be and
hereby are deemed "allowed" claims in case number
08-35653 (KRH) for all purposes, including with
respect to any confirmed plan or as required under
any chapter 7 liquidation (as applicable), and shall
not be subject to further objection, offset,
reduction, discount, impairment or subordination.

(x)     The Parties agree that the Circuit City Claim filed
in the Source Bankruptcies shall be and hereby is
deemed fully, finally and completely satisfied and
is hereby disallowed in its entirety.  Circuit City
has no right (now or hereafter) to collect on the
Circuit City Claim.

(xi)    The Parties agree that the Alternative Alliance
        503(b)(9) Claims, the Alternative Alliance Secured
        Claims, and the Alternative Alliance General
        Unsecured Claims shall be and hereby are deemed
        disallowed in their entirety.

(xii)   The Parties agree that the Alternative SIM 503(b)(9)
        Claim, the Alternative SIM General Unsecured Claim,
        and the Alternative SIM Administrative Expense Claim
        shall be deemed and hereby are disallowed in their
        entirety.

(xiii)  For the avoidance of doubt and notwithstanding
        anything to the contrary in the Settlement Agreement,
        (i) the Allowed Alliance 503(b)(9) Claim, the
        Allowed Alliance Secured Claim, and the Allowed
        Alliance General Unsecured Claim (collectively, the
        "Allowed Alliance Claims") shall constitute
        Alliance's full and final allowed claims in the
        Debtors' cases and Alliance shall not file or be
        entitled to recover on account of any other claims,
        (ii) the Debtors shall not be entitled to recover
        any further credits, rebates, receivables, setoffs,
        netting, or discounts, including (without limitation)
        the Alleged Receivables, from Alliance and (iii) all
        objections to the Alliance Claims shall be deemed
        resolved.

(xiv)   Additionally, and notwithstanding anything to the
        contrary in the Settlement Agreement, (i) the
        Allowed SIM 503(b)(9) Claim, the Allowed SIM General
        Unsecured Claim, and the Allowed SIM Administrative
        Expense Claim (collectively, the "Allowed SIM
        Claims") shall constitute SIM's full and final
        allowed claims in the Debtors' cases and SIM shall
        not file or be entitled to recover on account of any
        other claims, (ii) the Debtors shall not be entitled
        to recover any further credits, rebates, receivables,
        setoffs, netting, or discounts, including (without
        limitation) the Alleged Receivables, from SIM and
        (iii) all objections to the SIM Claims shall be
        deemed resolved.

(xv)    Upon the Effective Date (defined hereafter),
        Alliance and SIM, on behalf of themselves, and their
        respective successors and assigns (collectively, the
        "Source Parties"), and the Debtors, on behalf of
        themselves, and each on behalf of their respective
        estates, successors, and assigns (including but not
        limited to any trustee appointed in any of these
        chapter 11 cases or any successor or subsequent
        bankruptcy cases, any receivers and/or other
        custodians appointed in any action or proceeding

involving the Debtors' property and the liquidating trustee under the Plan) (collectively, the "Debtor Parties"), hereby irrevocably and fully release one another from and against any and all claims or causes of action, whether now existing or later arising (including, but not limited to, causes of action under Bankruptcy Code sections 502, 542, 543, 544, 546, 547, 548, 549, 550, 553 and 558) arising from, in connection with, or relating to the Alliance Claims, the SIM Claims, the Alliance Product, the SIM Product, the Circuit City Claim, the Debtors' Alleged Receivables, the Receivables, and/or the Alliance and SIM Agreements (this paragraph, the "Releases").

(xvi)   For the avoidance of doubt and notwithstanding anything to the contrary in the Settlement Agreement, (1) the Releases are not intended as general releases or waivers and nothing in the Settlement Agreement shall be construed as such, (2) the Releases do not release the Debtors from the Allowed Alliance Claims, the Allowed SIM Claims, their obligations under the Adequate Protection Order and (3) Alliance, SIM and the Debtors specifically acknowledge and agree that the Settlement Agreement is not intended to, and does not, release or otherwise affect in any way any actual claims or causes of action (or potential claims or causes of action similar in nature or type to such actual claims or causes of action) now or hereinafter asserted in, based on, or relating to the multi-district litigation captioned In re: TFT-LCD (Flat Panel) Antitrust Litigation, MDL No. 1827 (N.D. Cal.) and the actions consolidated therein (the "MDL Proceeding").

(xvii)  The Alliance Agreements shall be deemed terminated and rejected as of the Effective Date, and no Party shall have any liability or obligation under the Alliance Agreements.

(xviii) The SIM Agreement shall be deemed terminated and rejected as of the Effective Date, and no Party shall have any liability or obligation under the SIM Agreements.

(xix)   The Parties further agree that upon the Effective Date, the Source Plan Objection shall be deemed withdrawn.

(xx)    The Parties agree that the Settlement Agreement finally resolves the Alliance Claims, the SIM Claims, the Omnibus Objections, the Responses, the Circuit

City Claim, the Source Plan Objection, and the
Debtors' Alleged Receivables in their entirety.

**TIME AND PLACE FOR FILING OBJECTIONS TO THE PROPOSED
AGREEMENT OR REQUESTING ADDITIONAL INFORMATION OR TIME TO
CONSIDER THE SETTLEMENT AGREEMENT**

PLEASE TAKE FURTHER NOTICE that, in accordance
with paragraph 10(c) of the Settlement Procedures Order,
any Notice Party may object (each an "Objection") to or
request additional time or information (each a "Request")
to evaluate the Settlement Agreement.

PLEASE TAKE FURTHER NOTICE that all Objections
and Requests must be in writing and received by counsel to
the Debtors and counsel to the Official Committee of
Unsecured Creditors (see information below) by no later
**June 28, 2010 at 5:00 p.m. (ET)** (the "Objection Deadline").
Each Objection or Request must be served on (i) the
attorneys for the Debtors, (a) Skadden, Arps, Slate,
Meagher & Flom, LLP, One Rodney Square, P.O. Box 636,
Wilmington, DE  19899, Attn: Gregg M. Galardi
(gregg.galardi@skadden.com) and Ian S. Fredericks
(ian.fredericks@skadden.com) and (b) McGuireWoods LLP, One
James Center, 901 E. Cary Street, Richmond, VA  23219, Attn:
Douglas M. Foley (dfoley@mcguirewoods.com) and Daniel F.
Blanks (dblanks@mcguirewoods.com), and (ii)(a) Pachulski
Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th
Floor, Los Angeles, California 90067-4100, Attn: Jeff
Pomerantz (jpomerantz@pszjlaw.com) and (b) 780 Third Avenue,
36th Floor, New York, NY 10017-2024, Attn: Robert Feinstein
(rfeinstein@pszjlaw.com).

PLEASE TAKE FURTHER NOTICE that if you object to
the Settlement Agreement and you do not want the Debtors to
proceed with the Settlement Agreement or you want the Court
to consider your views concerning the Settlement Agreement,
you or you attorney must also:

file in writing with the Court, Clerk of Court,
United States Bankruptcy Court, 701 East Broad
Street, Suite 4000, Richmond, Virginia 23219, or
electronically (www.vaeb.uscourts.gov), a written
Objection pursuant to Local Bankruptcy Rule 9013-
1(H). If you mail your Objection to the Court for

filing, you must mail it early enough so the
Court will **receive it on or before June 28, 2010
at 5:00 p.m. (ET)**.

**Any Objection to the Settlement Agreement must be submitted
by the method described in the foregoing sentence.
Objections will be deemed filed only when actually received
at the address listed above.**

PLEASE TAKE FURTHER NOTICE that, pursuant to
paragraph 10(d) of the Settlement Procedures Order, if a
Notice Party submits a Request, only such Notice Party
shall have the later of (i) an additional five (5) days to
object to the Agreement or (ii) in the case of a Request
for additional information, three (3) days after receipt by
the Notice Party of the additional information requested.
Each Notice Party may only make one Request for additional
time per Settlement Agreement, unless otherwise agreed to
by the Debtors in their sole discretion.

[Remainder of page intentionally left blank]

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 10(c) of the Settlement Procedures Order, if no Objection or Request is filed and served upon counsel for the Debtors and counsel for the Committee of Unsecured Creditors or counsel to the Debtors and counsel for the Committee of Unsecured Creditors do not receive a Request prior to the expiration of the Objection Deadline (as may be extended by Requests, if any, the **Debtors shall be authorized to enter into and consummate the Settlement Agreement without further order of the Court or any other action by the Debtors**.

Dated: June 14, 2010
Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

9

**EXHIBIT 1**

**(Settlement Procedures Order w/out Exhibit(s))**

Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                :
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    1Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 105 AND 363, AND FED. R. BANKR.
P. 2002, 9006, AND 9019 AUTHORIZING THE ESTABLISHMENT OF
PROCEDURES TO SETTLE CERTAIN PRE-PETITION AND POST-
PETITION CLAIMS AND CAUSES OF ACTION WITHOUT FURTHER COURT
APPROVAL**

          Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to sections 105 and 363

---

[1]   Each capitalized term not otherwise defined herein shall have the
      meaning ascribed to it in the Motion.

of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 9006 and 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for entry of an order authorizing the establishment of

procedures to settle certain pre-petition and post-

petition claims and causes of action without further

court approval; and the Court having reviewed the

Motion; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby:

**FOUND, DETERMINED, AND CONCLUDED that:**

1.    Based on the affidavits of service filed,

due, proper and adequate notice of the Motion has been

given in accordance with the Case Management Order and

that no other or further notice is necessary;

2.    The Notice Procedures are fair,

reasonable, and appropriate.

3.    The Settlement Procedures are fair

reasonable, and appropriate.

4.    The Notice and Settlement Procedures were

proposed in good faith.

5.   Pursuant to Bankruptcy Rule 9006, cause exists to shorten the applicable notice period in Bankruptcy Rule 2002(a)(3) with respect to each Settlement.

6.   Upon the expiration of the applicable Notice Period without an objection or upon resolution of any filed objection after the applicable Notice Period, each Settlement that complies with the Notice and Settlement Procedures shall be deemed (i) fair and reasonable and (ii) to have satisfied the standards under Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 9019.

7.   The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**ORDERED, ADJUDGED, AND DECREED that:**

8.   The Motion is GRANTED.

9.   The Debtors are authorized, but not directed, to compromise and settle Disputed Claims and Cause of Action and Receivable Claims in accordance with the Settlement Procedures.

10.  The Debtors shall provide key parties in interest with notice of each proposed Settlement.  The Notice Procedures are as follows:

(a)   The Debtors shall give written notice, by email or facsimile, if available, or overnight courier if email or facsimile are not available, of each proposed Settlement (the "Settlement Notice") to (i) the United States Trustee, (ii) counsel for the Committee of Unsecured Creditors, (iii) any party to the Settlement, and (iv) the Core Group and 2002 List (collectively, the "Notice Parties").

(b)   The Settlement Notice (or the Settlement Agreement) shall specify (i) the identity of the other party to the Settlement, (ii) a summary of the dispute with such other party, including a statement of the Debtors' reasonable estimate of the Settlement Claim amount and the basis for the controversy, (iii) an explanation of why the Settlement of such Settlement Claim is favorable to the Debtors, their estates, and their creditors, and (iv) a copy of the proposed settlement agreement ("Settlement Agreement").

(c)   The Notice Parties may object to or request additional time to evaluate the proposed Settlement in writing by no later than 5:00 p.m. (ET) (i) five (5) days for both Tier I Disputed Claims and Tier I Cause of Action and Receivable Claims or (ii) ten (10) days for both Tier II Disputed Claims and Tier II Cause of Action and Receivable Claims (each an individual "Notice Period") and serve such objection or request on counsel to the Debtors and counsel for the Creditors' Committee on or before the

expiration of the applicable Notice.  If the
Debtors are compromising more than one
Disputed Claim and/or Cause of Action and
Receivable Claim, the Tier II Notice Period
shall apply to such Settlement.  If no
objection or written request is filed and
served upon counsel for the Debtors and
counsel for the Creditors' Committee or
counsel to the Debtors does not receive a
written request for additional information
and/or additional time prior to the
expiration of the applicable Notice Period,
the Debtors shall be authorized to enter
into and consummate the Settlement Agreement
without further order of the Court or any
other action by the Debtors.

(d)    If a Notice Party provides a written
request to counsel for the Debtors for
additional information or time to evaluate
the proposed Settlement, only such Notice
Party shall have the later of (i) an
additional five (5) days to object to the
proposed Settlement or (ii) in the case of a
request for additional information, three
days after receipt by the Notice Party of
the additional information requested.  Each
Notice Party may only make one request for
additional time per Settlement Agreement,
unless otherwise agreed to by the Debtors in
their sole discretion.

(e)    If a Notice Party objects to the
proposed Settlement within the defined
Notice Period for that particular Tier of
Disputed Claim or Cause of Action and
Receivable Claim, (or the additional period
in the case of a Notice Party that has
timely requested additional time or
information to evaluate the proposed
Settlement) (the "Objection Deadline") and
the Debtors and such objecting Notice Party
are unable to reach a consensual resolution,

the Debtors will not take any further action
to consummate the proposed settlement
without first obtaining Court approval for
that specific Settlement.  The Debtors are
authorized to schedule the Settlement for a
hearing at the next scheduled omnibus
hearing following the Objection Deadline (or
any subsequent hearing) without filing a
separate motion or other pleading.

(f)    If the Objection Deadline has passed
and no objection has been filed with the
Court or request for additional time or
information has been received by the
Debtors, the Debtors are authorized, but not
directed, to file a "Certificate of No
Objection" with the Court; provided,
further, that each such Certificate shall
set forth a statement that no objection was
filed or received (or if any objection was
filed or received, such objection has been
resolved) and no request for additional time
or information was received or, if such
request was received, the additional period
of review has expired.

(g)    An objection will be considered
properly filed and served only if it is
filed with the Court, and actually received
by the following parties on or before the
Objection Deadline: (i) Clerk of the
Bankruptcy Court, United States Bankruptcy
Court, 701 East Broad Street – Room 4000,
Richmond, VA  23219, (ii) the attorneys for
the Debtors, (a) Skadden, Arps, Slate,
Meagher & Flom, LLP, One Rodney Square, P.O.
Box 636, Wilmington, DE  19899, Attn: Gregg
M. Galardi (gregg.galardi@skadden.com) and
Ian S. Fredericks
(ian.fredericks@skadden.com) and (b)
McGuireWoods LLP, One James Center, 901 E.
Cary Street, Richmond, VA  23219, Attn:
Douglas M. Foley (dfoley@mcguirewoods.com)

and Daniel F. Blanks
(dblanks@mcguirewoods.com), and (iii)(a)
Pachulski Stang Ziehl & Jones LLP, 10100
Santa Monica Blvd., 11th Floor, Los Angeles,
California 90067-4100, Attn: Jeff Pomerantz
(jpomerantz@pszjlaw.com) and (b) 780 Third
Avenue, 36th Floor, New York, NY 10017-2024,
Attn: Robert Feinstein
(rfeinstein@pszjlaw.com).

(h)    All time periods set forth in the
Notice Procedures shall be calculated in
accordance with Bankruptcy Rule 9006.

11.  Subject to the Notice Procedures, the
Debtors are authorized to compromise and settle Disputed
Claims as follows:

(a)    Tier I With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
of an agreed upon priority or administrative
expense claim, as applicable, in an amount
not to exceed $500,000.

(b)    Tier II With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
(priority or non-priority, as the case may

be) or administrative expense claim, as
applicable, in an amount greater than
$500,000.

12.   Subject to the Notice Procedures, the

Debtors are authorized to compromise and settle Cause of

Action and Receivable Claims as follows:

(a)   Tier I With respect to pre- and post-
petition Cause of Action and Receivable
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with third parties that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Cause of
Action and Receivable Claims, compromise or
settle a Cause of Action and Receivable
Claim resulting in a cash payment to the
Debtors' estates of a value (i) equal to or
greater than seventy-five percent (75%) of
the Debtors' original reasonable estimate of
the Cause of Action and Receivable Claim
amount and (ii) equal to or less than
$1,000,000.

(b)   Tier II With respect to pre- and
post-petition Cause of Action and Receivable
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with third parties that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Cause of
Action and Receivable Claims, compromise or
settle a Cause of Action and Receivable
Claim resulting in a cash payment to the
Debtors' estates of a value equal to (i)
more than $1,000,000 or (ii) less than

8

seventy-five percent (75%) of the Debtors'
original reasonable estimate of the Cause of
Action and Receivable Claim amount.

13.   To memorialize the Settlements, the

Debtors are authorized in their sole discretion, but not

directed, to enter into Settlement Agreements

substantially in the form of Exhibit A attached hereto;

provided, further, that the material terms of each

Settlement Agreement may vary depending upon the

specific facts and circumstances of each Settlement and

nothing herein or therein shall be construed as

impairing the Debtors' ability to tailor the form of the

Settlement Agreement to each specific Settlement.

14.   The Debtors are authorized, but not

directed, to resolve all of the Disputed Claims and

Cause of Action and Receivable Claims of a single party

in a single Settlement Agreement.

15.   The Debtors shall provide written notice

to Kurtzman Carson Consultants LLC ("KCC"), the Debtors'

authorized claims and noticing agent, with respect to

any proof of claim settled pursuant to these Settlement

Procedures; provided, further, that, if applicable, KCC

is authorized and directed to amend the claims register
accordingly without further order of the Court.

16.  Following entry of this Order, unless
otherwise agreed to between the Debtors and the
Creditors' Committee, the Debtors' advisors shall
provide weekly updates concerning ongoing settlement
discussions to the Creditors' Committee's advisors.
These updates shall include, without limitation, non-
privileged information mutually agreed to among the
parties' advisors.  Once the Debtors reach an agreement
in principle with a third party, the Debtors shall share
the material terms of the Settlement with the Creditors'
Committee's advisors.  All information shared with the
Creditors' Committee's advisors shall be deemed shared
subject to the existing confidentiality agreement with
the Debtors.

17.  Assuming no objection has been filed by
the applicable Objection Deadline, immediately after the
expiration of the Notice Period (or, in the case of a
filed objection that has been resolved, upon filing of a
Certificate of No Objection) the Settlement Agreement

10

shall be deemed to be a final order of this Court for
all purposes, including for purposes of any appeal.

18.   In the event there is an inconsistency
between the Motion and this Order, this Order shall
control.

19.   The requirement under Local Rule 9013-
1(G) of the Local Rules for the United States Bankruptcy
Court for the Eastern District of Virginia to file a
memorandum of law in connection with the Motion is
hereby waived.

20.   This Court retains jurisdiction to hear and determine all matters arising from or related to the Motion, this Order or any Settlement.

Dated:  Richmond, Virginia
_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

      - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

      - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

12

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

**EXHIBIT 2**

**(Settlement Agreement)**

Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
<u>et al.</u>,               :
                             :
         Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE
DEBTORS, ALLIANCE ENTERTAINMENT LLC, NOW KNOWN AS SOURCE
INTERLINK DISTRIBUTION, LLC, AND SOURCE INTERLINK MEDIA,
LLC RESOLVING DEBTORS' OMNIBUS OBJECTIONS TO CLAIMS AND
OTHER RELATED MATTERS**

This settlement agreement and stipulation

(this "Agreement") is entered into by and among the

above-captioned debtors and debtors in possession (the

"Debtors"),[1] on the one hand, and Alliance Entertainment
LLC, now known as Source Interlink Distribution, LLC
("Alliance"), and Source Interlink Media, LLC ("SIM" and
together with Alliance "Source"), on the other hand.
For purposes of this Agreement, Alliance, SIM, and the
Debtors are each referred to as a "Party" and are
collectively referred to as the "Parties".

### GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition
Date"), the Debtors each filed a voluntary petition in
the United States Bankruptcy Court for the Eastern
District of Virginia (the "Court") under chapter 11 of
title 11 of the United States Code (the "Bankruptcy
Code"); and

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen,
      VA 23060.

WHEREAS, the Debtors have continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"); and

WHEREAS, to date, no trustee or examiner has been appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded; and

WHEREAS, on September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc.

3

and its Affiliated Debtors and Debtors In Possession and
its Official Committee of Creditors Holding General
Unsecured Claims (the "Plan"); and

WHEREAS, the associated disclosure statement
(the "Disclosure Statement") was approved on September
24, 2009, and confirmation on the Plan has been
adjourned and a status conference is scheduled for June
8, 2010; and

WHEREAS, generally, the Plan provides for the
liquidation of the Debtors under chapter 11 of the
Bankruptcy Code; and

WHEREAS, the Debtors are authorized under the
Court's Order Under 11 U.S.C. §§ 105 and 363, and Fed. R.
Bankr. P. 2002, 9006, and 9019 Authorizing the
Establishment of Procedures to Settle Certain Pre-
Petition and Post-Petition Claims and Causes of Action
Without Further Court Approval, dated August 7, 2009
(Docket No. 4401, the "Settlement Procedures Order")[2] to
enter into this Settlement Agreement, subject to the
Notice Procedures.

---

[2]  All capitalized terms not otherwise defined herein shall have the
     meaning ascribed to such terms in the Settlement Procedures Order.

**SETTLEMENT BACKGROUND**

**A.    The Alliance Claims.**

WHEREAS, Circuit City Stores, Inc. ("Circuit City") and Alliance were parties to that certain Retail Product Services and Supply Agreement, dated June 15, 2007, as amended by Amendment No. 1, dated April 29, 2008, and Amendment No. 2, dated September 15, 2008 (collectively, the "Alliance Agreements").  Pursuant to the Alliance Agreements, the Debtors, among other things, purchased certain Alliance products, including but not limited to, compact discs, digital video discs, and video games (collectively, the "Alliance Product"), for resale in their retail stores; and

WHEREAS, on December 17, 2008, Alliance filed proof of claim number 1442 against Circuit City's bankruptcy estate pursuant to Bankruptcy Code section 503(b)(9) (the "Alliance 503(b)(9) Claim").  Therein, Alliance alleged that it delivered in the ordinary course of business $4,010,658.44 worth of Alliance Product to the Debtors within the twenty (20) days before the Petition Date for which Alliance had not been paid; and

5

WHEREAS, on December 17, 2008, Alliance filed proof of claim number 928 against Circuit City Stores West Coast, Inc.'s bankruptcy estate and claim number 1202 against Circuit City Stores PR, LLC's bankruptcy estate (Claim number 928 and Claim number 1202, collectively, the "Alternative Alliance 503(b)(9) Claims").  Both of these claims were filed pursuant to Bankruptcy Code section 503(b)(9).  In each of the Alternative Alliance 503(b)(9) Claims, Alliance alleged that it delivered in the ordinary course of business $4,010,658.44 worth of Alliance Product to the Debtors within the twenty (20) days before the Petition Date for which Alliance had not been paid; and

WHEREAS, on January 30, 2009, Alliance filed claim number 8960, a secured proof of claim against the Debtors' bankruptcy estates (the "Alliance Secured Claim").  Therein, Alliance claimed that it provided services to the Debtors worth $1,028,153.34 before the Petition Date.  Alliance alleged that this claim was secured by a state law carriers and warehousemen lien; and

6

WHEREAS, on January 30, 2009, Alliance filed
proof of claim number 8315 against Circuit City Stores
West Coast, Inc.'s bankruptcy estate and claim number
9833 against Circuit City Stores PR, LLC's bankruptcy
estate (Claim number 8315 and Claim number 9833,
collectively, the "Alternative Alliance Secured Claims").
In each of the Alternative Alliance Secured Claims,
Alliance alleged that it provided services to the
Debtors worth $1,028,153.34 before the Petition Date.
Alliance alleged that the Alternative Alliance Secured
Claims were secured by state law carriers and
warehousemen liens; and

WHEREAS, on January 30, 2009, Alliance filed
claim number 9640, a general unsecured proof of claim
against the Debtors' bankruptcy estates (the "Alliance
General Unsecured Claim").  The Alliance General
Unsecured Claim was filed in the aggregate amount of
$11,646,519.  Therein, Alliance claimed that it shipped
in the ordinary course of business $10,996,107 worth of
Alliance Product to the Debtors before the Petition Date.
Moreover, Alliance alleged that it was entitled to (1)
an additional $600,000 for contract damages in

connection with the Alliance Agreements, and (2) an additional $50,412 comprised of legal fees and other costs associated with a particular lawsuit involving Circuit City and Alliance; and

WHEREAS, on January 30, 2009, Alliance filed proof of claim number 9033 against Circuit City Stores West Coast, Inc.'s bankruptcy estate and claim number 8387 against Circuit City Stores PR, LLC's bankruptcy estate (Claim number 9033 and Claim number 8387, collectively, the "Alternative Alliance General Unsecured Claims" and together with the Alliance 503(b)(9) Claim, the Alternative Alliance 503(b)(9) Claims, the Alliance Secured Claim, the Alternative Alliance Secured Claims, the Alliance General Unsecured Claim, and the Alternative Alliance General Unsecured Claims, the "Alliance Claims").  In each of the Alternative Alliance General Unsecured Claims, Alliance claimed that it shipped in the ordinary course of business $10,996,107 worth of Alliance Product to the Debtors before the Petition Date for which it had not been paid; and

8

**B.    The SIM Claims.**

WHEREAS, Circuit City Stores, Inc. ("Circuit City") and SIM were parties to that certain agreement, dated July, 2006, (the "SIM Agreement").  Pursuant to the SIM Agreement, the Debtors purchased certain SIM products, including but not limited to, books and magazines, (collectively, the "SIM Product"), for resale in their retail stores; and

WHEREAS, on December 17, 2008, SIM filed proof of claim number 1345 against Circuit City's bankruptcy estate pursuant to Bankruptcy Code section 503(b)(9) (the "SIM 503(b)(9) Claim").  Therein, SIM alleged that it delivered in the ordinary course of business $360,345.31 worth of SIM Product to the Debtors within the twenty (20) days before the Petition Date for which SIM had not been paid; and

WHEREAS, on December 17, 2008, SIM filed proof of claim number 1204 against Circuit City Stores West Coast, Inc.'s bankruptcy estate pursuant to Bankruptcy Code section 503(b)(9) (the "Alternative SIM 503(b)(9) Claim").  Therein, SIM alleged that it delivered in the ordinary course of business $360,345.31 worth of SIM

9

Product to the Debtors within the twenty (20) days
before the Petition Date for which SIM had not been paid;
and

WHEREAS, on January 30, 2009, SIM filed claim
number 9637, a general unsecured proof of claim against
the Debtors' bankruptcy estates (the "SIM General
Unsecured Claim").  Therein SIM claimed that it shipped
in the ordinary course of business $875,724.31 worth of
SIM Product to the Debtors before the Petition Date for
which SIM had not been paid; and

WHEREAS, on January 30, 2009, SIM filed proof
of claim number 8308 against Circuit City Stores West
Coast, Inc.'s bankruptcy estate (the "Alternative SIM
General Unsecured Claim").  Therein, SIM alleged that it
shipped in the ordinary course of business $875,724.31
worth of SIM Product to the Debtors before the Petition
Date for which SIM had not been paid; and

WHEREAS, on June 26, 2009, SIM filed an
administrative expense claim numbered 13767 against
Circuit City's bankruptcy estate (the "SIM
Administrative Expense Claim").  Therein, SIM claimed
that it was owed $40,540.38 for SIM Product provided to

the Debtors on and after the Petition Date pursuant to
11 U.S.C. § 503(b)(1) of the Bankruptcy Code; and

WHEREAS, on June 26, 2009, SIM filed an
administrative expense claim numbered 13765 against
Circuit City Stores West Coast, Inc.'s bankruptcy estate
(the "Alternative SIM Administrative Expense Claim" and
together with the SIM 503(b)(9) Claim, the Alternative
SIM 503(b)(9) Claim, the SIM General Unsecured Claim,
the Alternative SIM General Unsecured Claim, and the SIM
Administrative Expense Claim, the "SIM Claims").
Therein, SIM claimed that it was owed $40,540.38 for SIM
Product provided to the Debtors on and after the
Petition Date pursuant to 11 U.S.C. § 503(b)(1) of the
Bankruptcy Code; and

**C.    The Omnibus Objections.**

WHEREAS, the Debtors have objected to the
Alliance Claims and the SIM Claims in various omnibus
objections; and

WHEREAS, in the Debtors' Tenth Omnibus
Objection to Certain Duplicate Claims (D.I. 3513) (the
"Tenth Omnibus Objection") the Debtors objected to claim
8315 as duplicative of claim 8960, the Alliance Secured

Claim.  The Debtors asserted that claim 8315 should be

disallowed.  The Debtors also objected to the

Alternative Alliance Unsecured Claims as duplicative of

the Alliance Unsecured Claim.  The Debtors sought to

disallow the Alternative Alliance Unsecured Claims; and

WHEREAS, in the Tenth Omnibus Objection, the

Debtors also objected to the Alternative SIM General

Unsecured Claim as duplicative of the SIM General

Unsecured Claim.  The Debtors sought to disallow the

Alternative SIM General Unsecured Claim; and

WHEREAS, in the Debtors' Twentieth Omnibus

Objection to Claims (Reclassification to Unsecured

Claims of Certain Claims Filed as 503(b)(9) Claims for

Goods Received by the Debtors Not Within Twenty Days of

the Commencement of the Cases) (D.I. 3704) (the

"Twentieth Omnibus Objection"), the Debtors objected to

the Alliance 503(b)(9) Claim on the basis that certain

Alliance Product comprising a portion of the claim was

received by Circuit City more than twenty days before

the Petition Date.  Consequently, the Debtors asserted

that the Alliance 503(b)(9) Claim should be reduced by

$290,088.68, which portion should be reclassified to a

general unsecured, non-priority claim.  Consequently,

the Debtors alleged that the amount of the Alliance

503(b)(9) Claim should be reduced to $3,720,569.76; and

WHEREAS, in the Debtors' Twenty-Second Omnibus

Objection to Claims (Disallowance of Certain Claims

Filed Against the Wrong Debtor) (D.I. 3710) (the

"Twenty-Second Omnibus Objection"), the Debtors objected

to certain claims because, among other reasons, the

amounts and basis of the claims were filed against the

wrong Debtors.  More precisely, the Debtors identified

creditors who filed two (2) or more proofs of claim

against different Debtors, in essentially the same

amount, asserting essentially the same liability, based

upon the same underlying basis and claim, and asserting

the same classification.  The Debtors sought to disallow

the claims filed against the wrong Debtor entity.  As to

Alliance, the Debtors sought to disallow the Alternative

503(b)(9) Claims on the basis that they were filed

against the wrong Debtor entities.  The Debtors

identified the Alliance 503(b)(9) Claim as the surviving

claim.  The Debtors also objected to claim 928 as having

been filed against the wrong Debtor entity.  In that

13

instance, the Debtors identified the Alliance 503(b)(9)
Claim as the appropriate surviving claim; and

WHEREAS, in the Debtors' Twenty-Third Omnibus
Objection to Claims (Modification of Certain Duplicate
503(b)(9) Claims) (D.I. 3711) (the "Twenty-Third Omnibus
Objection"), the Debtors objected to the SIM General
Unsecured Claim on the basis that it was partially
duplicative of the SIM 503(b)(9) Claim.  Accordingly,
the Debtors sought to reduce the SIM General Unsecured
Claim by $354,693; and

WHEREAS, in the Debtors' Twenty-Eighth Omnibus
Objection to Claims (Disallowance of Certain Amended
Claims) (D.I. 4277) (the "Twenty-Eighth Omnibus
Objection") the Debtors objected to the Alternative SIM
503(b)(9) Claim on the basis that it was amended and/or
superseded by the SIM 503(b)(9) Claim.  The Debtors
sought to disallow the Alternative SIM 503(b)(9) Claim;
and

WHEREAS, in the Debtors' Thirty-Fourth Omnibus
Objection to Claims (Modification of Certain Duplicate
503(b)(9) Claims) (D.I. 4598) (the "Thirty-Fourth
Omnibus Objection", and together with the Tenth Omnibus

14

Objection, the Twentieth Omnibus Objection, the Twenty-Second Omnibus Objection, the Twenty-Third Omnibus Objection, and the Twenty-Eighth Omnibus Objection, the "Omnibus Objections") the Debtors objected to the Alliance General Unsecured Claim on the basis that it was partially duplicative of the Alliance 503(b)(9) Claim.  Consequently, the Debtors asserted that the Alliance General Unsecured Claim should be reduced by $3,720,569.76; and

WHEREAS, pursuant to the Court's Order dated February 23, 2009 (the "Adequate Protection Order") (D.I. 1940), Alliance received a replacement lien for its unpaid storage and carrier services that are the subject of the Alliance Secured Claim in the amount of $1,028,153.34 (the "Replacement Lien") to replace the asserted warehouseman's lien in the Debtor's products stored by Alliance; and

**D.    The Responses.**

WHEREAS, on June 29, 2009, Alliance and SIM filed their joint response to the Debtors' Tenth Omnibus Objection (D.I. 3844) (the "Tenth Omnibus Response"); and

WHEREAS, on July 16, 2009, Alliance and SIM filed their joint response to the Debtors' Twentieth, Twenty-Second, and Twenty-Third Omnibus Objections (D.I. 4135) (the "Twentieth, Twenty-Second, and Twenty-Third Omnibus Response"); and

WHEREAS, on August 20, 2009, SIM filed its response to the Debtors' Twenty-Eighth Omnibus Objection (D.I. 4579) (the "Twenty-Eighth Omnibus Response"); and

WHEREAS, on September 15, 2009, Alliance filed its response to the Debtors' Thirty-Fourth Omnibus Objection (D.I. 4902) (the "Thirty-Fourth Omnibus Response", and together with the Tenth Omnibus Response and the Twentieth, Twenty-Second, and Twenty-Third Omnibus Response, and the Twenty-Eighth Omnibus Response, the "Responses"); and

WHEREAS, in each of the Responses, Alliance and SIM contended that the Debtors' Omnibus Objections

16

were premature and that the Parties needed to engage in

a complete reconciliation of all claims before the

relief sought by the Debtors could be sustained.

Moreover, Alliance and SIM asserted that they did not

intend to receive multiple recoveries for the same

liabilities owed by the Debtors, however, more

information was needed before the Bankruptcy Court

should disallow, reclassify, or consolidate any of the

Alliance and/or SIM Claims as multiple theories of

recovery existed.  Because Alliance and SIM filed

Responses to the Omnibus Objections, the Omnibus

Objections were adjourned as to them; and

WHEREAS, on March 11, 2010, the Parties filed

the Notice of Proposed Settlement and Stipulation by and

Among the Debtors, Alliance Entertainment LLC, Now Known

as Source Interlink Distribution, LLC, and Source

Interlink Media, LLC Resolving the Debtors' Tenth,

Twenty-Second, and Twenty-Eighth Omnibus Objections (D.I.

6798) (the "Initial Settlement Agreement").  Therein,

the Parties agreed that upon the happening of specific

defined conditions as set forth in the Initial

Settlement Agreement, certain of the Alliance Claims and

SIM Claims would be disallowed.  The purpose of the

Initial Settlement Agreement was to eliminate multiple

recoveries by Alliance and SIM with respect to any

single underlying liability; and

**E.    The Memorandum Opinion and Order.**

WHEREAS, on October 13, 2009, the Debtors

filed the Debtors' Forty-Eighth, Forty-Ninth, and

Fiftieth Omnibus Objection to Certain Administrative

Expenses and 503(b)(9) Claims (the "Forty-Eighth, Forty-

Ninth, and Fiftieth Omnibus Objections") (D.I. 5211,

5212 & 5213); and

WHEREAS, as set forth in the Forty-Eighth,

Forty-Ninth, and Fiftieth Omnibus Objections, Circuit

City alleged that it became entitled to certain pre- and

post-petition amounts, including receivables, charge-

backs, returns, and other amounts, which amounts are

currently due and owing to Circuit City by various

claimants but for which Circuit City had not yet

received payment (the "Alleged Receivables").  Therein,

the Debtors sought to setoff the Alleged Receivables

from the section 503(b) administrative expense and

section 503(b)(9) claims held by the claimants before

setting off against any general unsecured, non-priority claims; and

WHEREAS, Alliance and SIM filed a joint response to the Forty-Eighth, Forty-Ninth, and Fiftieth Omnibus Objections.[3]  Therein, Alliance and SIM argued, for various reasons, that the Debtors could not setoff Alleged Receivables against administrative expense or 503(b)(9) claims; and

WHEREAS, on December 3, 2009, the Court issued its Memorandum Opinion (Docket No. 5963) and Order (Docket No. 5964) with respect to the Debtors' Forty-Eighth, Forty-Ninth and Fiftieth Omnibus Objections to Claims.  Pursuant to the Court's Order, the Court held that, subject to its further consideration and determination regarding applicable facts, the Debtors would be authorized to setoff all of their pre- and/or post-petition Receivables against Administrative Expenses (as defined in the Objections), including claims arising under Bankruptcy Code section 503(b)(9),

---

[3]   Neither Alliance nor SIM were subject to the Forty-Eighth, Forty-Ninth, or Fiftieth Omnibus Objections.

before setting off against any general unsecured claims;
and

WHEREAS, the Debtors have informally asserted
that they possess Alleged Receivables in an amount
exceeding $10,000,000, which Alleged Receivables the
Debtors assert they are authorized to setoff against the
Alliance and SIM Claims pursuant to the Court's
Memorandum Opinion and Order; and

WHEREAS, Alliance disputed the amount of the
Debtors' Alleged Receivables.  Moreover, Alliance
asserted that it already took into account and/or
recouped approximately $5,000,000 of the Alleged
Receivables in determining the amount of the Alliance
General Unsecured Claim, as Alliance had the ability to
link returns to each outstanding invoice comprising its
General Unsecured Claim; and

**F.    The Source Bankruptcies.**

WHEREAS, on April 27, 2009, Source Interlink
Companies, Inc. and certain of its subsidiaries and
affiliates, including Alliance and SIM (the "Source

Debtors"[4]), filed voluntary petitions for relief under

Chapter 11 of title 11 of the United States Code in the

United States Bankruptcy Court for the District of

Delaware (the "Source Bankruptcies"). <u>See</u> Suggestion of

Bankruptcy for Source Interlink Companies, Inc., et al.

(D.I. 3390); and

WHEREAS, on or around, August 26, 2009,

Circuit City filed Claim Number 222, a secured claim in

the amount of $3,887,327 in the Source Bankruptcies (the

"Circuit City Claim"). Therein, Circuit City alleged

that the Circuit City Claim was secured by a right of

setoff and/or recoupment against outstanding balances

allegedly owed by Circuit City to the Source Debtors;

and

**G.    The Source Plan Objection.**

WHEREAS, on November 16, 2009, Alliance and

SIM filed the Limited Objection of Alliance

---

[4]    The "Source Debtors" are Source Interlink Companies, Inc.; AEC
Direct, LLC; Automotive.com, LLC; Canoe & Kayak, Inc.; Directtou,
Inc.; Enthusiast Media Subscription Company, Inc.; Motor Trend
Auto Shows, LLC; RDS Logistics, LLC; Source-Chestnut Display
Systems, Inc.; Source Home Entertainment, Inc.; Source Interlink
Distribution, LLC; Source Interlink International, Inc.; Source
Interlink Magazines, LLC; Source Interlink Manufacturing, LLC;
Source Interlink Media, LLC; Source Interlink Retail Services,
LLC; Source Mid Atlantic News, LLC; and The Interlink Companies,
Inc.

Entertainment LLC, Now Known as Source Interlink
Distribution, LLC, and Source Interlink Media, LLC to
Confirmation of the Debtors' First Amended Joint Plan of
Liquidation (D.I. 5750) (the "Source Plan Objection").
Therein, Alliance and SIM maintained that the Debtors
should confirm that they would maintain a segregated
escrow account for the Alliance Secured Claim and that
the escrow account would remain in place through the
effective date of the Plan.  Moreover, Alliance and SIM
asserted that the Plan should be clarified to assure
that appropriate reserve treatment is required for any
portion of any Alliance or SIM administrative expense
claims subject to objection or treated as unliquidated
for purposes of the Plan; and

WHEREAS, rather than proceed with litigation
concerning the Alliance Claims, the SIM Claims, the
Omnibus Objections, the Responses, the Circuit City
Claim, the Source Plan Objection, and the Debtors'
Alleged Receivables, the parties engaged in good faith,
arms' length reconciliation and negotiations to resolve
the foregoing in their entirety.  As part of the
reconciliation, Alliance asserted that it was able to

22

link additional Alleged Receivables to its Unsecured

Claim and thus was authorized to recoup such amounts;

and

NOW THEREFORE, subject to and in accordance

with the Settlement Procedures Order, for good and

valuable consideration the receipt and sufficiency of

which is hereby acknowledged, the Parties hereby

STIPULATE AND AGREE AND IT IS HEREBY ORDERED that:

1.   The Parties agree that (i) the Alliance

503(b)(9) Claim shall be valued at $3,728,611.45, (ii)

the Alliance Secured Claim shall be valued at and

allowed in the face amount of $1,028,153 (the "Allowed

Alliance Secured Claim"), and (iii) the Alliance General

Unsecured Claim shall be valued at $16,075,599.63.[5]

2.   The Parties agree that the Debtors'

Alleged Receivables shall be valued at $10,880,866.77

(the "Receivables").

---

[5]   The value of the Alliance General Unsecured Claim as set forth in
¶ 1 is the agreed upon gross amount of the claimed invoices that
comprise the Alliance General Unsecured Claim without including
any reductions, discounts, or setoffs that Alliance may have
provided for in filing its proof of claim.

3.    In full satisfaction and settlement of
the Alleged Receivables and the Receivables, the
Receivables shall be netted against (i) the Alliance
503(b)(9) Claim such that the 503(b)(9) Claim shall be
reduced to and is hereby allowed as a priority claim
under Bankruptcy Code section 503(b)(9) in amount of
$500,000 (the "Allowed Alliance 503(b)(9) Claim"), and
(ii) the Alliance General Unsecured Claim such that the
Alliance General Unsecured Claim shall be reduced to and
is hereby allowed as a general unsecured non-priority
claim in the amount of $8,423,344.31 (the "Allowed
Alliance General Unsecured Claim").

4.    To the extent required, the automatic
stay of 11 U.S.C. § 362 is lifted to permit the netting
set forth in Paragraph 3 above.

5.    The Parties further agree that (i) the
SIM 503(b)(9) Claim shall be valued at and is hereby
allowed in the face amount of $354,693.30 as a priority
claim under Bankruptcy Code section 503(b)(9) (the
"Allowed SIM 503(b)(9) Claim"), (ii) the SIM General
Unsecured Claim shall be valued at and is hereby allowed
in the face amount of $518,217.10 as a general unsecured

24

non-priority claim (the "Allowed SIM General Unsecured

Claim"), and (iii) the SIM Administrative Expense Claim

shall be valued at and is hereby allowed in the face

amount of $40,540.38 as an administrative expense

pursuant to Bankruptcy Code Section 503(b)(1) (the

"Allowed SIM Administrative Expense Claim").

6.   The Allowed Alliance 503(b)(9) Claim, the

Allowed SIM 503(b)(9) Claim, and the Allowed SIM

Administrative Expense Claim shall be deemed "allowed"

claims against Circuit City Stores, Inc. and its estate

in case number 08-35653 (KRH) for all purposes,

including with respect to any confirmed plan of

liquidation or in any chapter 7 case of such Debtor,

shall be paid on the "effective date" of any plan or as

required under any chapter 7 liquidation (as applicable),

and shall not be subject to further objection, offset,

reduction, discount, impairment or subordination.

7.   The Allowed Alliance Secured Claim shall

be and hereby is  deemed an "allowed" secured claim

against Circuit City Stores, Inc. and its estate in case

number 08-35653 (KRH) for all purposes as a secured

claim pursuant to Bankruptcy Code Section 506(a),

including with respect to any confirmed plan of

liquidation or in any chapter 7 case of such Debtor,

shall be paid in full on the "effective date" of any

plan or as required under any chapter 7 liquidation (as

applicable), and shall not (i) accrue interest or (ii)

be subject to enhancement on account of interest or

otherwise, or objection, offset, reduction, discount,

impairment or subordination.  The Adequate Protection

Order and Replacement Lien shall remain in full force

and effect unless and until payment in full is made on

account of the Alliance Secured Claim.

    8.    The Allowed Alliance General Unsecured

Claim and the Allowed SIM General Unsecured Claim shall

be and hereby are deemed "allowed" claims in case number

08-35653 (KRH) for all purposes, including with respect

to any confirmed plan or as required under any chapter 7

liquidation (as applicable), and shall not be subject to

further objection, offset, reduction, discount,

impairment or subordination.

    9.    The Parties agree that the Circuit City

Claim filed in the Source Bankruptcies shall be and

hereby is deemed fully, finally and completely satisfied

26

and is hereby disallowed in its entirety.  Circuit City

has no right (now or hereafter) to collect on the

Circuit City Claim.

     10.  The Parties agree that the Alternative

Alliance 503(b)(9) Claims, the Alternative Alliance

Secured Claims, and the Alternative Alliance General

Unsecured Claims shall be and hereby are deemed

disallowed in their entirety.[6]

     11.  The Parties agree that the Alternative

SIM 503(b)(9) Claim, the Alternative SIM General

Unsecured Claim, and the Alternative SIM Administrative

Expense Claim shall be deemed and hereby are disallowed

in their entirety.[7]

     12.  For the avoidance of doubt and

notwithstanding anything to the contrary in this

Settlement Agreement, (i) the Allowed Alliance 503(b)(9)

Claim, the Allowed Alliance Secured Claim, and the

Allowed Alliance General Unsecured Claim (collectively,

the "Allowed Alliance Claims") shall constitute

---

[6]  For the avoidance of doubt, claim numbers 928, 1202, 8315, 8387, 9033, and 9833 shall be disallowed.

[7]  For the avoidance of doubt, claim numbers 1204, 8308, and 13765 shall be disallowed.

Alliance's full and final allowed claims in the Debtors'
cases and Alliance shall not file or be entitled to
recover on account of any other claims, (ii) the Debtors
shall not be entitled to recover any further credits,
rebates, receivables, setoffs, netting, or discounts,
including (without limitation) the Alleged Receivables,
from Alliance and (iii) all objections to the Alliance
Claims shall be deemed resolved.

13.   Additionally, and notwithstanding
anything to the contrary in this Settlement Agreement,
(i) the Allowed SIM 503(b)(9) Claim, the Allowed SIM
General Unsecured Claim, and the Allowed SIM
Administrative Expense Claim (collectively, the "Allowed
SIM Claims") shall constitute SIM's full and final
allowed claims in the Debtors' cases and SIM shall not
file or be entitled to recover on account of any other
claims, (ii) the Debtors shall not be entitled to
recover any further credits, rebates, receivables,
setoffs, netting, or discounts, including (without
limitation) the Alleged Receivables, from SIM and (iii)
all objections to the SIM Claims shall be deemed
resolved.

28

14.   Upon the Effective Date (defined
hereafter), Alliance and SIM, on behalf of themselves,
and their respective successors and assigns
(collectively, the "Source Parties"), and the Debtors,
on behalf of themselves, and each on behalf of their
respective estates, successors, and assigns (including
but not limited to any trustee appointed in any of these
chapter 11 cases or any successor or subsequent
bankruptcy cases, any receivers and/or other custodians
appointed in any action or proceeding involving the
Debtors' property and the liquidating trustee under the
Plan) (collectively, the "Debtor Parties"), hereby
irrevocably and fully release one another from and
against any and all claims or causes of action, whether
now existing or later arising (including, but not
limited to, causes of action under Bankruptcy Code
sections 502, 542, 543, 544, 546, 547, 548, 549, 550,
553 and 558) arising from, in connection with, or
relating to the Alliance Claims, the SIM Claims, the
Alliance Product, the SIM Product, the Circuit City
Claim, the Debtors' Alleged Receivables, the Receivables,

and/or the Alliance and SIM Agreements (this paragraph, the "Releases").

15.  For the avoidance of doubt and notwithstanding anything to the contrary in this Settlement Agreement, (1) the Releases are not intended as general releases or waivers and nothing in this Settlement Agreement shall be construed as such, (2) the Releases do not release the Debtors from the Allowed Alliance Claims, the Allowed SIM Claims, their obligations under the Adequate Protection Order and (3) Alliance, SIM and the Debtors specifically acknowledge and agree that this Settlement Agreement is not intended to, and does not, release or otherwise affect in any way any actual claims or causes of action (or potential claims or causes of action similar in nature or type to such actual claims or causes of action) now or hereinafter asserted in, based on, or relating to the multi-district litigation captioned In re: TFT-LCD (Flat Panel) Antitrust Litigation, MDL No. 1827 (N.D. Cal.) and the actions consolidated therein (the "MDL Proceeding").

16.   The Alliance Agreements shall be deemed terminated and rejected as of the Effective Date, and no Party shall have any liability or obligation under the Alliance Agreements.

17.   The SIM Agreement shall be deemed terminated and rejected as of the Effective Date, and no Party shall have any liability or obligation under the SIM Agreements.

18.   The Parties further agree that upon the Effective Date, the Source Plan Objection shall be deemed withdrawn.

19.   The Parties agree that this Settlement Agreement finally resolves the Alliance Claims, the SIM Claims, the Omnibus Objections, the Responses, the Circuit City Claim, the Source Plan Objection, and the Debtors' Alleged Receivables in their entirety.

20.   Neither this Settlement Agreement (including, without limitation, the terms and statements made herein), nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or

31

administrative proceeding among or between the Parties,
other than as may be necessary (a) to obtain approval of
and to enforce this Settlement Agreement or (b) to seek
damages or injunctive relief in connection with such
approval and enforcement.

21.   Each Party shall execute and deliver any
and all additional papers, documents and other
assurances, and shall do any and all acts and things
reasonably necessary or appropriate in conjunction with
the performance of their respective obligations
hereunder.

22.   No provision of this Settlement Agreement
is intended to confer any rights, benefits, remedies,
obligations or liabilities hereunder upon any person
other than the Parties, their respective successors and
assigns.

23.   Except where preempted by applicable
Federal law, this Settlement Agreement shall be governed
by and construed in accordance with the internal laws of
the Commonwealth of Virginia without regard to any
choice of law provisions.

24.   This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

25.   This Settlement Agreement constitutes the entire agreement and understanding of the parties regarding the Agreement and the subject matter thereof.

26.   The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

27.   Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.   The representations and

33

warranties set forth in this paragraph shall survive

execution of this Settlement Agreement.

28.   This Settlement Agreement shall not be

modified, altered, amended or vacated without the

written consent of all parties hereto or order of the

Bankruptcy Court.

29.   This Settlement Agreement and all of its

terms shall be effective upon the later of (i) execution

by all Parties and (ii) the expiration of the applicable

Notice Period (the "Effective Date").

30.   This Settlement Agreement shall inure to

the benefit of and be binding upon the successors and

assigns of the Parties, including without limitation any

Chapter 7 trustee or the Liquidating Trustee under the

Plan.

34

        IN WITNESS WHEREOF, this Agreement is hereby

executed as of the later of the dates set forth below.

ACCEPTED AND AGREED TO BY:

CIRCUIT CITY STORES, INC.

By:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Circuit City Stores, Inc.,
et al., Debtors and Debtors in Possession

Dated:  June 14, 2010

35

ALLIANCE ENTERTAINMENT LLC, NOW KNOWN AS SOURCE
INTERLINK DISTRIBUTION, LLC AND SOURCE INTERLINK MEDIA,
LLC
By:


/s/ Bradford F. Englander
Bradford F. Englander, Esq. (VSB No. 36221)
3190 Fairview Park Drive, Suite 300
Falls Church, VA  22042
(703) 280-9081

Dated:  June 14, 2010

Attorneys for Alliance Entertainment LLC, now known as
Source Interlink Distribution, LLC and Source Interlink
Media, LLC