UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                       .     Case No. 08-35653 (KRH)
                             .
CIRCUIT CITY STORES,         .
INC.,                        .
                             .
                             .     701 East Broad Street
                             .     Richmond, VA 23219
        Debtor.             .
                             .     June 8, 2010
. . . . . . . . . . . . ..         2:05 p.m.


TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          McGuire Woods, LLP
                         By:  DOUGLAS FOLEY, ESQ.
                              ERIN Q. ASHCROFT, ESQ.
                         9000 World Trade Center
                         101 W. Main Street
                         Norfolk, VA 23510


                         McGuire Woods, LLP
                         By:  SARAH BECKETT BOEHM, ESQ.
                         One James Center
                         901 East Cary Street
                         Richmond, VA 23219


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Contd'):
For the Debtor:          Skadden Arps Slate Meagher & Flom, LLP
                         By:  GREGG M. GALARDI, ESQ.
                              IAN S. FREDERICKS, ESQ.
                         One Rodney Square
                         Wilmington, DE 19899


Acting General Counsel:  By:  DEBORAH MILLER


For the Committee:       Pachulski, Stang, Ziehl & Jones, LLP
                         By:  ROBERT J. FEINSTEIN, ESQ.
                         780 Third Avenue
                         New York, NJ 10017

For PNY:                 Spotts Fain PC
                         By:  NEIL E. McCULLAGH, ESQ.
                         411 East Franklin Street, Suite 600
                         Richmond, VA 23219

For Schimenti           LeClair Ryan
Construction:            By:  KIRK VOGEL, ESQ.
                         Riverfront Plaza - East Tower
                         951 East Byrd Street - Eighth Floor
                         Richmond, VA 23219

For Signature:           Christian & Barton, LLP
                         By:  AUGUST C. EPPS, ESQ.
                         909 E. Main Street
                         Suite 1200
                         Richmond, VA 23219

                              ---


                    J&J COURT TRANSCRIBERS, INC.

3

1              COURT CLERK:  In the matter of Circuit City Stores,

2    Incorporated, hearing on Items 1 through 32 as set out on

3    debtors' agenda.

4              MR. FOLEY:  Good afternoon, Your Honor, Doug Foley

5    with McGuire Woods on behalf of the debtors.

6              THE COURT:  Good afternoon, Mr. Foley, and I thank

7    everybody for accommodating the change in schedule that I

8    needed to make today in this hearing.

9              MR. FOLEY:  Absolutely, Your Honor.  We appreciate

10   that and, fortunately we think we will be brief today, as well.

11             Your Honor, with me at counsel table is Gregg Galardi

12   and Ian Fredericks from Skadden Arps, and Sarah Boehm and Erin

13   Ashcroft are here from my firm.  Also, present in the courtroom

14   is Katie Bradshaw, who's the Vice President and Controller of

15   Circuit City, as well as Deborah Miller who's the acting

16   general counsel.

17             Your Honor, there's 32 items on the agenda today,

18   Your Honor.  Mr. -- Ms. Boehm will be addressing the claims

19   matters which are items on the agenda, Items 6 through 16.  Mr.

20   Galardi will be addressing matters pertaining to some of the

21   professional employment applications, as well as the

22   confirmation issues and the mediation motion that we filed.

23   Those are Items 24 through 32.

24             I'm advised by the committee which is dealing with

25   Item Number 23 which is Deloitte Lambert Gaffney (phonetic)

**J&J COURT TRANSCRIBERS, INC.**

4

1  motion that they're working on a scheduling order with opposing

2  counsel with respect to that, and that that matter should be

3  carried over to the June 24th omnibus hearing date.

4        Your Honor, the rest of the items on the agenda are

5  either resolved or are being adjourned to a future date.  Item

6  Number 1 which is -- in the adversary proceedings we'll do some

7  scheduling orders -- but, Item Number 1 which is the

8  Sennheisser late claim motion, we're pleased to report to the

9  Court that we were able to resolve that consensually.  The

10 stipulation's been filed.  There's been no objections, so that

11 can be removed from the docket.

12       THE COURT:  All right.

13       MR. FOLEY:  Item Number 2 which is the Archez motion

14 to reconsider the 48th omnibus objection to claims, that too

15 has also been resolved and can be removed from the docket.

16       Items Number 3 and 4, these are the longstanding

17 motions of Motorola and General Instruments with respect to

18 compelling payment of 503(b)(9) claims.  They have agreed --

19 they have requested, and we've agreed, to adjourn their motions

20 until the July 22nd omnibus hearing date at ten.

21       THE COURT:  All right.

22       MR. FOLEY:  Your Honor, if we could just skip down to

23 Item Number 17, which is the adversary proceeding that we have

24 pending against LG.  We're still trying to negotiate a global

25 resolution with LG, so we would ask that that pretrial

1   conference be adjourned until the July 12th hearing date.

2              THE COURT:  July 12th?

3              MR. FOLEY:  Yes, Your Honor.

4              THE COURT:  Okay.

5              MR. FOLEY:  Your Honor, Item Number 18.  This is our

6   adversary proceeding against the U.S. Debt Recovery and

7   Signature.  Mr. Epps is here on behalf of Signature, who has

8   lodged an answer, as well as a response to the default motion.

9   He has some documentation with respect to the remaining issues

10  that are -- we raise in the complaint and we're going to talk

11  over the next couple of weeks about a potential settlement

12  given the amounts at issue.  And so we would ask that the

13  motion for default, as well as the pretrial conference, be

14  adjourned until the June 24th hearing date so that we can

15  hopefully try to resolve the matter before that time.

16             THE COURT:  All right.

17             MR. FOLEY:  As to USDR, Your Honor, we've already

18  resolved matters with respect to them in the adversary

19  proceedings, so the only issue is the issue with Signature.

20             THE COURT:  All right.

21             MR. FOLEY:  Your Honor, Item Number 19 is our

22  adversary proceeding against PNY Technologies.  Counsel is

23  here.  We need a trial date.  We estimate two days for that

24  trial.

25             MR. McCULLAGH:  Good afternoon, Your Honor, Neil

6

1  McCullagh here for PNY.  Your Honor, if we could go -- I think

2  there could be a considerable amount of discovery that needs to

3  be done on this one -- I was hoping we could go into the later

4  part of the year.

5          THE COURT:  And you need two days?

6          MR. McCULLAGH:  Yes, sir.

7          THE COURT:  The Court has November 29 and 30

8  available.

9          MR. FOLEY:  That's fine with us, Your Honor.

10         MR. McCULLAGH:  I don't see a conflict.

11         THE COURT:  That's a Monday and a Tuesday.

12         MR. McCULLAGH:  Okay.

13         THE COURT:  And we'll start at ten o'clock on Monday

14 the 29th.  Do you need any special accommodation other than the

15 Court's regular scheduling order?

16         MR. FOLEY:  Regular scheduling order is fine, Your

17 Honor.

18         THE COURT:  All right.  The Court will enter its

19 order then.

20         MR. FOLEY:  Thank you, Your Honor.  Item Number 20 on

21 the agenda is our adversary proceeding against Mitsubishi.

22 We're still in negotiations with them about a potential global

23 resolution.  So, we would ask that the pretrial conference,

24 with respect to that adversary proceeding, be adjourned until

25 the July 12th hearing date, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

7

1            THE COURT:  All right.

2            MR. FOLEY:  Your Honor, Items Number 21 and 22 are

3   two adversary proceedings involving Circuit City and Schimenti

4   Construction.   Item Number 22 is -- 21 is Schimenti's adversary

5   proceeding against Circuit City.  We have pending in that

6   adversary proceeding a Rule 12 motion which we originally

7   scheduled for June 24th.  Mr. Perkins, counsel for Schimenti,

8   requested additional time to respond.  We have agreed that

9   provided they file their response by the July 2nd date, we

10  could have the motion to dismiss heard on the July 12th hearing

11  date.  And we would ask that the pretrial conference be

12  continued to that date, by agreement of the parties, so the

13  Court can consider the Rule 12 motion on the 12th.

14            THE COURT:  All right.

15            MR. FOLEY:  Your Honor, with respect to Item Number

16  22, this is Circuit City's adversary proceeding complaint

17  against Schimenti with respect to preferential transfers.  And

18  the issues, I think, were pretty clean in that, counsel is here

19  and he can address that, we think that the trial would take no

20  more than a day.  It really involves mostly one payment, so we

21  would ask that the Court's standard scheduling order be

22  entered.  And we have one-day trial set with respect to that

23  matter.

24            MR. VOGEL:  Good afternoon, Your Honor, Kirk Vogel

25  with LeClairRyan here on behalf of Schimenti Construction.

**J&J COURT TRANSCRIBERS, INC.**

8

1 Your Honor, we propose that the pretrial on this matter be

2 continued, as well, to the same date as the Schimenti

3 Construction adversary proceeding.

4          THE COURT:  Why?

5          MR. VOGEL:  Just for efficiency purposes and to

6 continue discussions for possible global settlement if

7 possible.

8          THE COURT:  Will be the Court's preference, go ahead

9 and calendar a trial date, just so that we can get that going.

10 It's been my experience that by scheduling a trial date that

11 sort of entices everyone to speak a little bit more clearly

12 when they're discussing settlement.

13          MR. VOGEL:  That's understandable.  Yes, sir.  That's

14 fine with us.

15          THE COURT:  All right.  Let's go ahead and schedule a

16 date.  Is there much discovery that needs to be done in this

17 matter?

18          MR. FOLEY:  Not with respect to the preference

19 matter, Your Honor.

20          THE COURT:  Okay.  The Court has Tuesday, September

21 28 available?

22          MR. FOLEY:  That's fine with us, Your Honor.

23          MR. VOGEL:  Your Honor, I apologize, I only have a

24 void date starting in November, if it's possible to start there

25 if that's a problem.

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  This is The Eastern District of Virginia.

2  I would have expected you would know better than that.

3           MR. VOGEL:  Yes, sir.  I apologize and I think we can

4  work with any date that the Court has to offer.

5           MR. FOLEY:  Your Honor, I would suggest that if

6  counsel could check when he gets back to his office whether

7  September 28 works.

8           THE COURT:  That's what I was going to --

9           MR. FOLEY:  If it doesn't then we can bring it up

10  again on the 24th.

11           THE COURT:  If it doesn't, contact the courtroom

12  deputy and she'll give you an alternative date.

13           MR. FOLEY:  Okay.

14           MR. VOGEL:  Thank you, Your Honor.  I'm sure we can

15  make that work.

16           THE COURT:  All right.

17           MR. VOGEL:  Thank you.

18           MR. FOLEY:  Thanks.  Your Honor, that leaves Items 6

19  through 16, which Ms. Boehm will address, and Items 5 through

20  24 through 32 which Mr. Galardi will address.

21           THE COURT:  All right.  Thank you.

22           MS. BOEHM:  Good afternoon, Your Honor.  Sarah Boehm

23  on behalf of the debtors.

24           Item 6 on the agenda is the 19th omnibus objection

25  which was set for a continued status hearing today, solely with

1 respect to Inland U.S. Management, LLC and Inland Continental

2 Property Management Corporation.  These are landlord claims

3 that are being worked by a location.  We have agreed to adjourn

4 this matter to June 24th for further status at that time, as

5 they continue to work through the -- all claims for that

6 location.

7        THE COURT:  All right.  To be continued to June 24.

8        MS. BOEHM:  Item 7 is the 20th omnibus objection,

9 which was continued today for a status hearing on Averatech and

10 Trigem's claim which is also Item 8 in the 48th omnibus

11 objection.  They had claim objections in Omni 20 and Omni 48

12 and we are pleased to report that that matter has been settled

13 in principal, and subject to completing the settlement

14 documentation we have agreed to adjourn for further status on

15 July 12th at 10 a.m.

16        THE COURT:  July 12th.  And what was the other

17 matter, it's also on the 48th?

18        MS. BOEHM:  Items 7 and 8.

19        THE COURT:  All right.  Very good.

20        MS. BOEHM:  Omni 20 and Omni 48.

21        THE COURT:  All right.  Thank you.

22        MS. BOEHM:  Item Number 9 is the debtors' 71st

23 omnibus objection.  This is up for the first time today.  This

24 with respect to certain mis-classified non-goods under

25 503(b)(9).  It included 13 claims that we received no

11

1   responses.  We would like to submit an order reclassifying all

2   13 of those claims.

3          THE COURT:  All right.  That's acceptable.

4          MS. BOEHM:  Item 10 is the 72nd omnibus objection

5   which is the disallowance of certain duplicative and amended

6   claims.  This included 33 duplicative claims and 50 amended

7   claims.  We received three responses.  We've been able to

8   resolve two of them to date, and we would just like to adjourn

9   the one remaining unresolved claim to July 22nd at ten o'clock

10  for further status.

11         THE COURT:  And who is that?

12         MS. BOEHM:  That is -- it is a pro se claimant, Amad

13  Paul Whitney.

14         THE COURT:  All right.  Very good.

15         MS. BOEHM:  Item 11 is the debtors' of 73rd omnibus

16  objection which seeks to reclassify unsecured claims filed as

17  503(b)(9) claims for goods received by the debtors outside of

18  20 days.  This included 12 claims.  We received zero responses

19  and we would propose to submit an order reclassifying all 12

20  claims.

21         THE COURT:  All right.

22         MS. BOEHM:  Item 12 is the 74th omnibus objection

23  which seeks the reclassification of certain alleged admin

24  expenses on account of employee obligations.  This included 35

25  claims and we have received three responses that we're seeking

**J&J COURT TRANSCRIBERS, INC.**

12

1   to adjourn for further status to July 22nd at 10 a.m.

2              THE COURT:  All right.

3              MS. BOEHM:  And we would propose to submit an order

4   reclassifying any claim for which no response was filed.

5              THE COURT:  That would be fine.

6              MS. BOEHM:  Item 13 is the 75th omnibus objection

7   which is the reclassification of certain claims under the

8   benefit restoration plan.  This included eight claims.  We

9   received no responses, and we would propose to submit an order

10  reclassifying all late claims.

11             THE COURT:  All right.

12             MS. BOEHM:  Item 14 is the 76th omnibus objection

13  which seeks the disallowance of certain mis-classified

14  administrative claims.  This included nine claims.  We received

15  two responses.  One has been resolved and we would propose to

16  adjourn the one remaining claim of a pro se claimant -- I'm

17  sorry, it's not a pro se claimant, it' a litigation claimant,

18  Yu Liang Lee, to July 22nd at 10 a.m. for further status.

19             THE COURT:  All right.  That will be continued.  And

20  you'll submit and order with regard to the others.

21             MS. BOEHM:  Item 15 is the 77th omnibus objection

22  that is the disallowance of certain no-liability claims.  This

23  included nine administrative claims.  We received no responses.

24  We propose to submit an order disallowing all nine claims.

25             THE COURT:  That would be fine.  The Court will look

1 forward to your order.

2          MS. BOEHM:   Item 16 is the 78th omnibus objection

3 which seeks a disallowance of certain late claims.   This

4 included 13 claims that were filed after the first

5 administrative expense bar date.   We received three responses

6 that we propose to adjourn to July 22nd at 10 a.m. for further

7 status and submit an order disallowing the other ten claims.

8          THE COURT:   July 22?

9          MS. BOEHM:   Yes.

10          THE COURT:   All right.   Very good.

11          MS. BOEHM:   That's all I have, Your Honor.

12          THE COURT:   All right.   Thank you.

13          MS. BOEHM:   Thank you.

14          MR. GALARDI:   Good afternoon, Your Honor.   For the

15 record Gregg Galardi on behalf of the debtors.

16          Your Honor, I'm going to handle matters 525 and then

17 I guess it's the rest is (indiscernible) as well as one of the

18 claims objections.   Your Honor, first, why don't I go to really

19 beyond this objection which is Number 37 on the agenda, which

20 is the Texas taxing authorities, as that's not wrapped up in

21 many of the other matters.

22          THE COURT:   All right.

23          MR. GALARDI:   That's Matter 24 on the agenda, Your

24 Honor.   Your Honor --

25          THE COURT:   Number 24, okay.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. GALARDI:  Matter 24 was the debtors' 37th omnibus

2    objection to claims.  As Your Honor may know, we objected to

3    and sought a reduction of certain personal property tax claims,

4    including taxing authorities from Texas, Henrico County and

5    other counties based upon, one, a change in the law.  We had

6    filed briefs.  That motion had been -- that objection had been

7    on file.  Each and every taxing authority opposed that relief.

8    And it was previously scheduled for hearing, I believe it was

9    at least one or two omnibus hearings ago.

10          Since then, we had entered into conversations with

11   the parties regarding resolution of those tax claims and I'm

12   pleased to say that with respect to -- I think, Ms. Weller and

13   Mr. Reed are on the phone, as well as, Henrico's counsel is

14   either here or on the phone -- we had resolved their objection

15   and our response, coming up with a compromise, and we have

16   submitted specific orders with respect to those settlements

17   which go back to when we sold the assets they had put in

18   estimated claims we had money in reserve.  I'm pleased to say

19   that we're settling all of these claims, (1) for less than the

20   amount that they filed those claims, (2) for less than the

21   amount of the reserves of those claims.

22          And, in addition, it was critical to the taxing

23   authorities because of their own fiscal budgets, the taxing

24   authorities insisted that if we were going to settle and

25   compromise those claims, that we'd be authorized to pay those

1 claims, immediately.  Some of those claims may be secured

2 claims, if Your Honor may be familiar a lot of the Texas taxing

3 authorities have secured claims and we -- I've fought that

4 fight in the past.

5          In any event, these are the sorts of claims that

6 penalties and interest generally accrue even post-bankruptcy

7 for failure to pay.  And then many of these were asserted as

8 administrative claims.  So, as part of the settlement what was

9 critical to the taxing authorities that we've so far settled

10 with, and we haven't settled all of them, but will be the

11 format for going forward with a number of the other ones that

12 are still outstanding, was that we would fix and reduce the

13 claim for the tax amount.  That there would be certain

14 compromises, and not every jurisdiction is the same, but part

15 of the compromises were on the interest and penalties that

16 would have accrued post-petition as an administrative claim.

17          There were certain issues with respect to our appeal

18 rights and whether they were waived or not waived.  If you've

19 looked at the briefs, those are all resolved.  And, critically,

20 that we would seek to be able to pay as soon as Your Honor

21 enters the order, pay to these counties, these taxing agencies

22 or authorities, immediately make payment on those, so as to

23 stop an accrual of further interest penalties that were

24 accruing every day or every month at a certain rate.

25          We would ask Your Honor to approve those orders that

1 settle those claims and we understand that in this instance we

2 are outside of a plan paying certain claims prior to the

3 effective date of a plan.  There were concerns raised by the

4 committee with respect to that, which I'll get to in a second,

5 but that we believed that it was, nonetheless, because of the

6 way in which they accrue interest and penalties on a

7 post-petition base in these administrative claims, and since

8 these are ordinary taxes in that context and because your DIP

9 order already provided us with authority to make the payments

10 once we settled these amounts, we thought it was prudent and

11 advisable for the unsecured creditors to make the payment

12 before further interest and penalties accrue.

13        So, we would ask Your Honor to approve that.  We

14 understand that the committee has no objection.  But, Your

15 Honor, I did want to note that one of the things that we are,

16 in fact, doing and this will end up going into some of the

17 post-confirmation matters, but I did want to let Your Honor

18 know that we are filing -- in fact, we filed immediately before

19 this hearing -- a motion to pay administrative claims, the

20 ordinary course administrative claims, such that we've been

21 allowed, say 503(b)(9) claims, we have some of those

22 settlements, to pay those prior to an effective date of the

23 plan.

24        Again, that some -- maybe somewhat unusual relief,

25 but in this instance given what we make on money anyway, and

1  given where we are, and given the delays that we have had with

2  respect to the plan, we and the committee discussed the issue

3  and we've agreed to file that motion, which will be on for June

4  24th.  We're not asking Your Honor to rule on that matter, but

5  I can't say that it is not related somewhat to this, but I

6  don't need to go into the details.  We think this relief stands

7  on its own.  We have filed the motion.  You'll see that cross

8  your desk.  We'll have that motion heard on the 24th.

9       The debtors have importantly agreed not to withdraw

10  that motion.  It is a motion that is supported by the

11  creditor's committee.  And with that, we would ask Your Honor

12  to approve the settlements with respect to the personal

13  property taxes.

14       Ms. Katie Bradshaw is in the courtroom today and

15  could verify any of the facts or proffer any of the evidence

16  with respect to what I've just related to Your Honor.  With

17  respect to the settlements of the amount, we think it's in the

18  best interest of the estate and we have received no objections.

19  I think the Texas taxing authorities may be on and counsel for

20  Henrico may be here.

21       THE COURT:  Which are the ones, Mr. Galardi, that you

22  are settling and which are the ones that remain open?

23       MR. GALARDI:  I was afraid you were going to ask me

24  those specific letters, so let me see if I can get that.  It's

25  on the exhibit.

**J&J COURT TRANSCRIBERS, INC.**

1          There's an exhibit attached to the agenda Your Honor

2  and which refers to 37 and it's --

3          THE COURT:  This is Exhibit B?

4          MR. GALARDI:  Well, actually, I have it as Exhibit A

5  on mine, but it's Exhibit A and then there are -- it lists,

6  starting on first page of that exhibit, you'll see Omnibus

7  Objection 37 listed on the left side, and --

8          THE COURT:  Oh, yes.  Okay.  This is the same one I

9  was using with previous --

10         MR. GALARDI:  Correct.  And then it starts with

11 Boulder and it goes all the way for quite a number of pages,

12 all the way through, the last one being Polk County, Florida on

13 Page 11.  So, it actually has 10 pages of objections that we

14 have resolved.  That those --

15         UNIDENTIFIED SPEAKER:  They haven't all been

16 resolved.  Some of them were adjourned.

17         MR. GALARDI:  Oh, they haven't -- some of them were

18 adjourned.  I'm sorry, Your Honor.  The one that's been

19 resolved all the way to Page 9, it looks like, and then top of

20 10, they're resolved, all the way down to -- it looks like the

21 Tarrant County is the last one resolved.  And then we begin,

22 again, with Allen County, Indiana, is being adjourned to the

23 July 12th.  Gaston County, Placer County and Polk County,

24 Florida, those are the ones that are adjourned.  But, the ones

25 prior to that have been resolved.

19

1          THE COURT:  All right.  Very good.  Does any party

2    wish to be heard in connection with the debtors' motion to

3    approve the settlements in these matters?

4          MR. FEINSTEIN:  Briefly, Your Honor, Robert Feinstein

5    Pachulski, Stang, Ziehl & Jones for the official creditor's

6    committee.

7          Your Honor, as the agenda noted, the committee had

8    expressed concerns.  We had been presented with a settlement --

9    a proposed settlement with Henrico County in recent days and

10   we're asked the committee's view and the response was, that we

11   had some concern about selectively paying allowed

12   administrative claimants.  And our response to the debtor was,

13   either pay none of them or pay all of them, but let's not, you

14   know, take one at a time.

15         So, the debtors' response was to file the motion that

16   was filed today, which we were supportive of and on that basis

17   we support the settlements that are on the calendar today.

18   Thank you.

19         THE COURT:  All right.  Does any other party wish to

20   be heard?  Ms. South, you wish to be heard?

21         MS. SOUTH:  No, Your Honor.

22         THE COURT:  All right.  Thank you.  All right, Mr.

23   Galardi, the Court will approve the settlements and grant the

24   motions that you've filed to resolve those matters.

25         MR. GALARDI:  Thank you, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  And we'll adjourn the others to the date

2   indicated, July 12 it looks like.

3           MR. GALARDI:  Thank you, Your Honor.  It's also --

4   Your Honor, we could hand up the notice there -- the ones that

5   are, in fact, agreed are attached to that notice, if that

6   helps, as well.

7           THE COURT:  All right.

8           MR. GALARDI:  Thank you.  Your Honor, then I'd like

9   to turn to Matters 5 and 25, though they're not my motions.

10  What I think is, it's best to take them in the context.

11  Although, I don't want to suggest that they are necessarily

12  related to confirmation matters, they are matters that we are

13  working with the committee with regard to.

14          Your Honor, first there is the motion to remove the

15  cap on the Gowlings Law Firm which is Canandian counsel for the

16  official committee, that's Number 5.  There is then Matter 25,

17  I believe is the number, that the committee filed a motion to

18  retain the counsel of Arsene Taxand as Special French counsel.

19  Both of these matters the debtors objected to, and in the

20  context of, I guess we'll say last week's breakup for a short

21  period of time on the plans.  We had filed an objection.  We've

22  put them in the hopper of things that we're discussing with the

23  committees now as a consensual way to resolve that.

24          Which then makes --lets me turn to the confirmation

25  matters, Your Honor.  To give a status update, we had filed --

1  the committee had filed an alternative plan last week.  We had

2  filed a motion for expedited relief and we're going to seek

3  mediation today.  We have had conversations, myself and Mr.

4  Pachulski of the Pachulski Firm, as well as other counsels,

5  trying to resolve our differences, and actually avoid both

6  dueling plans and even the cost of mediation.  I would say

7  we're cautiously optimistic in what we would come to the Court

8  today with respect to 525 and confirmation matters and in

9  particular that mediation motion filed by the debtors, is to

10 ask Your Honor if you had time available on June 16th.

11         What we would propose to do is to push those matters

12 over to June 16th with the idea, hopefully, that we can get a

13 consensual resolution and not really have to provide -- have to

14 be in front of Your Honor with respect to those matters at that

15 time.  The hope is that we will, in fact, be able to mediate

16 our own differences without a third party on the plan issues.

17 Whether that will also resolve the professional fee issues is

18 something that is an open question, but we thought it would be

19 better because we've actually made some progress over the

20 weekend and we're cautiously optimistic that we can resolve

21 them ourselves without the need for a third party and to do so

22 by the 16th.  In fact, we've exchanged documents today with

23 respect to that and hope to have cause and do that.

24         So, we -- but, should things break down, going back

25 to the administrative claim motion, there is a need to move

**J&J COURT TRANSCRIBERS, INC.**

1 forward as quickly as possible.  So, instead of waiting until

2 the 24th, which is two weeks, which always builds in another

3 two weeks, we thought maybe if Your Honor had time on that

4 16th, it would be good to schedule time now with the hope that

5 we don't use it at all, or just give Your Honor a status report

6 at that point.

7          THE COURT:  All right.  Why the 16th?

8          MR. GALARDI:  Well, I guess there's a couple reasons.

9 I know Mr. Feinstein's calendar is a little busy and mine is

10 busy on the 14th and 15th, so we just thought that that was

11 essentially seven days or eight days.  I know Your Honor had

12 some openings on the 15th, but I'm unfortunately at a partner's

13 meeting.  I'm wondering if the 16th works.

14          THE COURT:  My condolences.

15                    (Laughter)

16          MR. GALARDI:  I feel the same.  I actually offered to

17 come, notwithstanding, but I think there was a little bit of

18 disagreement with my partners.

19          THE COURT:  The -- how much time do you think you're

20 going to need on the 16th?

21          MR. FEINSTEIN:  I would -- no.  You probably can

22 confirm to this, Your Honor, I would say 60 to 90 minutes.  We

23 will adjourn Arsene, the retention application until then.  If

24 we haven't resolved our differences we may go forward in that,

25 we may ask for that to be mediated, but we should probably

23

1  allow ourselves enough time to deal with that and the plan

2  issues.

3           THE COURT:  All right.  Hold to a higher authority.

4           MR. FEINSTEIN:  The higher authority is mentioned,

5  you might have a window there, Your Honor.

6           THE COURT:  Okay, we've got Mr. Heimann's out that

7  day.  Do you want to do it in the morning?  I don't have an

8  updated calendar, so that's why you have to do this.

9           MR. FEINSTEIN:  I will also note that I think you and

10 I have a call on that claims matter that we could probably move

11 around, too.

12          THE COURT:  All right.  So, I can accommodate that,

13 so let's set it for two o'clock on the 16th.

14          MR. GALARDI:  That's much appreciated, Your Honor.

15 And to just give Your Honor an update, I think with respect to

16 going forward on confirmation at that time, what I would do is

17 expect if we have resolved it, to set dates for the

18 confirmation hearing.  Again, we still are having our tax

19 issues, as I've mentioned, and the Canadian issues which is

20 partially why the Gowlings cap is being increased and why

21 Arsene.  But, to try and resolve those matters and then we'll

22 actually be able to give you even a further update at that time

23 on confirmation.  So, I don't want to schedule a new

24 confirmation date at this point, but I think the 16th will be

25 our target for doing so.

24

1          THE COURT:  All right.  With respect to the French

2    Counsel -- tax counsel issue, is that something that would

3    inure generally to the benefit of the estate, so we just need

4    to engage one tax counsel in France, or what is the issue

5    there?

6          MR. GALARDI:  Well, let's answer the first question.

7    Yes, having tax counsel in France that reviews this inures to

8    the benefit of the estate.  There is already French -- again,

9    the French subsidiary that's causing us, I'll call it agida, to

10   think of a better word, there is French counsel retained by the

11   Canadian entity because that is a Canadian sub.

12         THE COURT:  That's right.  Okay.

13         MR. GALARDI:  The committee has Canadian counsel, but

14   there is a unique issue of dissolution in France, so they're

15   wanting their counsel and, obviously, Skadden has French

16   counsel in its French office.  So, it really comes to, how do

17   we coordinate what might be three or two counsel, as opposed to

18   just one and what's the benefit to the estate?

19         We have suggested the French counsel come in for the

20   committee.  We haven't opposed that.  Really, it's just a --

21   it's an economic budget matter and hope to resolve that.

22         THE COURT:  All right.  Very good.  Well, I hope that

23   you'll have all these issues resolved by the 16th and then we

24   can get this moving and get it back on track.

25         MR. GALARDI:  Yes.  I agree, Your Honor.  I think,

**J&J COURT TRANSCRIBERS, INC.**

1  actually, notwithstanding what I'll call a DIP, we're still,

2  you know, a sort of break up for a short period of time.  I

3  think everything is still moving.  I don't think it's actually

4  going to delay things because tax issues and other things are

5  moving forward, but that's at least my view of it, so.  And

6  hopefully the committee will agree when we get back on the

7  16th.

8        THE COURT:  All right.  Mr. Feinstein?

9        MR. FEINSTEIN:  Yes, Your Honor.  We're in basic

10  agreement with -- when the -- in the wake of our filing of our

11  own plan, the mediation motion.  There have been the beginnings

12  of a constructive dialog.  We think the time will be well-spent

13  in the run up to the 16th.  We hope that they can be resolved

14  by then.  If not, we'll be back in front of you in a week's

15  time to take a different direction, but our hope is that this

16  can all be resolved, and that would include not just the plan

17  matters, but a variety of professional retention and

18  compensation matters.

19        THE COURT:  So, the filing of the competing plan had

20  the desired effect?

21        MR. FEINSTEIN:  Well, the log jam seems to be open,

22  Your Honor, and I think both sides are making concessions and

23  talking.

24        THE COURT:  Excellent.  Okay.  Well, I'm encouraged

25  by that.

1      MR. FEINSTEIN:  Thank you.

2      THE COURT:  All right.  Well --

3      MR. GALARDI:  I will bite my tongue on the desired

4  effect comment.

5      THE COURT:  I understand.

6      MR. GALARDI:  So, that really concludes our matters

7  for today, Your Honor.  I appreciate your time and making time

8  on the 16th.

9      THE COURT:  All right.  I'll see you back around the

10  16th.

11      MR. GALARDI:  Thank you.

12                        *  *  *  *  *

13

14                 **C E R T I F I C A T I O N**

15      I, ANNE MARIE DeANGELO, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter, and to the best of my ability.

19

20  /s/ Annemarie DeAngelo

21  ANNEMARIE DeANGELO

22  J&J COURT TRANSCRIBERS, INC.    DATE:  June 21, 2010

23

24

25

**J&J COURT TRANSCRIBERS, INC.**