```
 1

 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF QUEENS
 3    ------------------------------------------X
      ANNA THOMAS,
 4
                                      PLAINTIFF,
 5
                    -against-          Index No:
 6                                     20767/07

 7    CIRCUIT CITY STORES, INC., "JOHN DOES",
      said named being fictitious and is intended
 8    to represent the unknown employees of the
      defendant.
 9
                                      DEFENDANTS.
10    ------------------------------------------X

11                    DATE:  April 4, 2008

12                    TIME:  10:30 a.m.

13

14

15         EXAMINATION BEFORE TRIAL of the

16    Plaintiff, ANNA THOMAS, taken by the Defendant,

17    pursuant to a Court Order, held at the offices

18    of SHAEVITZ & SHAEVITZ, ESQS., 148-55 Hillside

19    Avenue, Jamaica, New York, before a Notary

20    Public of the State of New York.

21

22

23

24

25
```

```
 1

 2     A P P E A R A N C E S:

 3

 4     SHAEVITZ & SHAEVITZ, ESQS.
            Attorneys for the Plaintiff
 5          148-55 Hillside Avenue
            Jamaica, New York 11435
 6
       BY:   STUART SEARS, ESQ.
 7

 8

 9     RENDE, RYAN & DOWNES, LLP
            Attorneys for the Defendant
10          CIRCUIT CITY STORES, INC.
            202 Mamaroneck Avenue
11          White Plains, New York 10601

12     BY:   CHRISTOPHER J. WHITTON, ESQ.
       File #:   S-125
13

14

15     ALSO PRESENT:

16     ELLIE KOTEAS, GREEK INTERPRETER

17

18              *           *           *

19

20

21

22

23

24

25
```

```
 1
 2              221. UNIFORM RULES FOR THE
                   CONDUCT OF DEPOSITIONS
 3
       221.1 Objections at Depositions
 4           (a) Objections in general. No objections
       shall be made at a deposition except those
 5     which, pursuant to subdivision (b), (c) or (d)
       of Rule 3115 of the Civil Practice Law and
 6     Rules, would be waived if not interposed, and
       except in compliance with subdivision (e) of
 7     such rule.  All objections made at a
       deposition shall be noted by the officer before
 8     whom the deposition is taken, and the answer
       shall be given and the deposition shall proceed
 9     subject to the objections and to the right of a
       person to apply for appropriate relief pursuant
10     to Article 31 of the CPLR.
             (b) Speaking objections restricted.
11     Every objection raised during a deposition
       shall be stated succinctly and framed so as not
12     to suggest an answer to the deponent and, at
       the request of the questioning attorney, shall
13     include a clear statement as to any defect in
       form or other basis of error or irregularity.
14     Except to the extent permitted by CPLR Rule
       3115 or by this rule, during the course of the
15     examination persons in attendance shall not
       make statements or comments that interfere with
16     the questioning.

17     221.2 Refusal to answer when objection is made
             A deponent shall answer all questions at
18     a deposition, except (i) to preserve a
       privilege or right of confidentiality, (ii) to
19     enforce a limitation set forth in an order of
       the court, or (iii) when the question is
20     plainly improper and would, if answered, cause
       significant prejudice to any person.   An
21     attorney shall not direct a deponent not to
       answer except as provided in CPLR Rule 3115 or
22     this subdivision.  Any refusal to answer or
       direction not to answer shall be accompanied by
23     a succinct and clear statement of the basis
       therefor.  If the deponent does not answer a
24     question, the examining party shall have the
       right to complete the remainder of the
25     deposition.
```

1

2          **221. UNIFORM RULES FOR THE
              CONDUCT OF DEPOSITIONS**
3
       **221.3 Communication with the deponent**
4          An attorney shall not interrupt the
       deposition for the purpose of communicating
5      with the deponent unless all parties consent or
       the communication is made for the purpose of
6      determining whether the question should not be
       answered on the grounds set forth in section
7      221.2 of these rules and, in such event, the
       reason for the communication shall be stated
8      for the record succinctly and clearly.

9

10

11         IT IS FURTHER STIPULATED AND AGREED that
       the transcript may be signed before any Notary
12     Public with the same force and effect as if
       signed before a clerk or a Judge of the court.
13

14         IT IS FURTHER STIPULATED AND AGREED that
       the examination before trial may be utilized
15     for all purposes as provided by the CPLR.

16
           IT IS FURTHER STIPULATED AND AGREED that
17     all rights provided to all parties by the CPLR
       cannot be deemed waived and the appropriate
18     sections of the CPLR shall be controlling with
       respect hereto.
19

20         IT IS FURTHER STIPULATED AND AGREED by
       and between the attorneys for the respective
21     parties hereto that a copy of this examination
       shall be furnished, without charge, to the
22     attorneys representing the witness testifying
       herein.
23

24

25

```
 1
 2    E L L I E     K O T E A S,
 3       a Greek interpreter, solemnly swore to
 4       translate the following questions from
 5       English to Greek and answers from Greek to
 6       English:
 7
 8    A N N A     T H O M A S,
 9       called as a witness, having been first duly
10       sworn, through an interpreter, by a Notary
11       Public of the State of New York, was
12       examined and testified as follows:
13
14    EXAMINATION BY
15    MR. WHITTON
16         Q.    Please state your name for the
17    record.
18         A.    Anna Thomas.
19         Q.    Where do you reside?
20         A.    99-10 60th Avenue, Apartment 5J,
21    Corona, New York 11368.
22         Q.    Good morning, ma'am.  My name is
23    Christopher Whitton.  I represent Circuit City.
24               I'm going to have some questions
25    for you today.
```

```
 1                     Thomas
 2        A.   Okay.
 3        Q.   Before we begin just some ground
 4   rules.  Please, wait for me to fully ask my
 5   question and for the interpreter to interpret
 6   it before you respond.
 7        A.   Until you finish the questions.
 8        Q.   Very good.
 9             If you don't understand the
10   question, will you, please, tell me?
11        A.   Okay.
12        Q.   The address that you provided in
13   Corona, how long have you lived there?
14        A.   Thirty-six years.
15        Q.   Presently, do you live there with
16   anyone?
17        A.   With my husband and son.
18        Q.   What is your husband's name?
19        A.   Raymond Thomas.
20        Q.   Your son, what is his name and
21   approximate age?
22        A.   Tony Thomas.
23        Q.   Tony?
24        A.   Thomas.
25        Q.   How old is Tony?
```

```
 1                     Thomas
 2      A.    Forty-three.
 3      Q.    Back in December of 2006, was your
 4 husband and son living with you at that
 5 address?
 6      A.    Yes.
 7      Q.    Ma'am, do you work right now out of
 8 the home?
 9      A.    No.  I'm on pension.
10      Q.    When was the last time you worked
11 outside of the home?
12      A.    In 1996 I worked in a bank,
13 Crossland Savings in accounting in Brooklyn.
14      Q.    It was in the accounting department
15 that you worked?
16      A.    Yes.
17      Q.    How long did you work there at that
18 bank?
19      A.    Ten years.  Previously I worked at
20 a different bank.  Wells Fargo in 40 Wall
21 Street that was 1972 up until 1988.
22      Q.    And now you are retired collecting
23 a pension?
24      A.    Yes.
25            Do you want to know how much?
```

```
 1                      Thomas
 2        Q.    No.
 3              Thank you.
 4              MR. SEARS:  Just tell her she has
 5        to worry about the questions.
 6              MR. WHITTON:  Off the record.
 7              (Discussion held off the record.)
 8        Q.    You had an incident that occurred
 9   back in December of 2006 that occurred at
10   Circuit City Stores; is that correct?
11        A.    Yes.  They injured me.
12              MR. WHITTON:  Move to strike the
13        non-responsive portion.
14        Q.    Do you remember what date that was?
15        A.    I don't recall, but I have the
16   receipt from the stuff that I purchased which
17   might have the date.
18        Q.    Were you there that day by yourself
19   or did you go with someone?
20        A.    With my husband.  We were shopping.
21        Q.    Did you drive there or go by train
22   or something else?
23        A.    By foot because we don't live far.
24        Q.    Where is this store?
25        A.    Queens Boulevard near Sears.
```

```
1                     Thomas
2        Q.    This is the Rego Park area?
3        A.    Right.
4        Q.    Before this day, had you ever been
5   inside that Circuit City?
6        A.    No.
7        Q.    So this was the first time you were
8   visiting the Rego Park Circuit City store?
9        A.    It wasn't the first time.  We had
10  previously purchased stuff, but that hadn't
11  happened to me.
12       Q.    All I want to know is:  Before the
13  day of this incident, had you ever visited this
14  Circuit City store?
15       A.    No.
16       Q.    Had you visited other Circuit City
17  Stores?
18       A.    No.  Because it's close to me.
19       Q.    So is my understanding, right, that
20  before the day that you were hurt you had never
21  been to a Circuit City store?
22       A.    No.
23       Q.    How many times have you ever been
24  to a Circuit City store?
25       A.    My husband used to buy, you know
```

```
 1                      Thomas
 2    recorder. Stuff like that. I don't remember.
 3    Sometimes he used to go by himself.
 4         Q.    Does the date December 28th, 2006
 5    refresh your memory as the day of this
 6    incident?
 7         A.    Yes.
 8               I will never forget it because I'm
 9    in pain.
10               MR. WHITTON: Move to strike the
11         non-responsive portions.
12         Q.    Before December 28th, 2006, did you
13    ever go to the Rego Park Circuit City store?
14         A.    No.
15         Q.    Do you remember what time you got
16    to the Circuit City store on December 28th,
17    2006?
18         A.    Around two, to 2:30 because it was
19    a nice, sunny day, so we decided to walk up
20    there.
21         Q.    What was the reason why you were
22    going to the store?
23         A.    My husband, he buy -- I'm sorry.
24    My husband has a small recorder from there and
25    I wanted to purchase a recorder for my
```

|  |  |
|---|---|
| 1 | Thomas |

2 daughter-in-law's baby. A little one. Just
3 like that (indicating).
4     Q.    How many children do you have?
5     A.    I have four. Four boys.
6     Q.    Do they live in the area?
7     A.    No. One of my sons is married in
8 California. My other son is married in
9 Georgia. Then -- George lives in Bayside and
10 Antonio, the younger one, lives with me.
11     Q.    Do you know if your son --
12     A.    Because he's disabled.
13     Q.    Tony is disabled?
14     A.    Yes.
15     Q.    Do you know if your son, Tony, had
16 ever been to this Circuit City store?
17     A.    No.
18     Q.    Your son, George, has he ever been
19 to this Circuit City store?
20     A.    I have no idea because -- I don't
21 know because he does not live with me. He
22 shops at Best Buy. I don't know. I don't get
23 involved in what they buy.
24     Q.    When you arrived at the Circuit
25 City store this day, did you speak with anyone

```
 1                     Thomas
 2   that worked there?
 3        A.    No.  We -- only at the cashier
 4   where we paid.
 5        Q.    When you paid for the things that
 6   you were buying, was that before this incident
 7   or after this incident?
 8        A.    Before.  Prior to getting injured.
 9        Q.    During the time that you were
10   shopping in the store before this incident, did
11   you observe any commotions going on?
12        A.    I didn't notice because we just buy
13   and then we leave.
14        Q.    When you went to pay for the things
15   you were buying, was that at the front counter
16   towards the entrance of the store?
17        A.    No.  It was in the back because it
18   was empty.
19        Q.    Can you describe for me where in
20   the back the counter was that you purchased
21   your items at?
22        A.    Well, I went this way to the -- I
23   went this way to go to the door and my husband
24   was walking in front of me and it was at this
25   point that they pushed me and I knocked into
```