```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
------------------------------------------------X
ANNA THOMAS,

                              PLAINTIFF,

     -against-              Index No.: 20767/07

CIRCUIT CITY STORES, INC., AND "JOHN DOES,"
SAID NAMES BEING FICTITIOUS AND INTENDED TO
REPRESENT EMPLOYEES OF THE DEFENDANT,

                              DEFENDANTS.
------------------------------------------------X
```

　　　　　　　　　　DATE: August 27, 2008

　　　　　　　　　　TIME: 10:15 A.M.



　　　　　　EXAMINATION BEFORE TRIAL of the Defendant, by a witness: JOSEPHINE TRAPANI, taken by the Plaintiff, pursuant to a Court Order, held at the Law Offices of Shaevitz & Shaevitz, Esqs., 148-55 Hillside Avenue, Jamaica, New York, before a Notary Public of the State of New York.

```
 1

 2    A P P E A R A N C E S:

 3

 4    SHAEVITZ & SHAEVITZ, ESQS.
            Attorneys for the Plaintiff
 5          148-55 Hillside Avenue
            Jamaica, New York 11435
 6          BY: STUART SEARS, ESQ.

 7

 8
      RENDE, RYAN & DOWNES, LLP
 9          Attorneys for the Defendants
            202 Mamaroneck Avenue
10          White Plains, New York 10601
            BY: CHRISTOPHER WHITTON, ESQ.
11          File #: S-125-CW

12
                *             *              *
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2              221. UNIFORM RULES
         FOR THE CONDUCT OF DEPOSITIONS
 3     221.1 Objections at Depositions
          (a) Objections in general.  No
 4     objections shall be made at a deposition
       except those which, pursuant to subdivision
 5     (b), (c) or (d) of Rule 3115 of the Civil
       Practice Law and Rules, would be waived if
 6     not interposed, and except in compliance
       with subdivision (e) of such rule.  All
 7     objections made at a deposition shall be
       noted by the officer before whom the
 8     deposition is taken, and the answer shall be
       given and the deposition shall proceed
 9     subject to the objections and to the right
       of a person to apply for appropriate relief
10     pursuant to Article 31 of the CPLR.
          (b) Speaking objections restricted.
11     Every objection raised during a deposition
       shall be stated succinctly and framed so as
12     not to suggest an answer to the deponent
       and, at the request of the questioning
13     attorney, shall include a clear statement as
       to any defect in form or other basis of
14     error or irregularity.  Except to the extent
       permitted by CPLR Rule 3115 or by this rule,
15     during the course of the examination persons
       in attendance shall not make statements or
16     comments that interfere with the
       questioning.
17     221.2 Refusal to answer when objection is
       made.  A deponent shall answer all questions
18     at a deposition, except (i) to preserve a
       privilege or right of confidentiality, (ii)
19     to enforce a limitation set forth in an
       order of the court, or (iii) when the
20     question is plainly improper and would, if
       answered, cause significant prejudice to any
21     person.  An attorney shall not direct a
       deponent not to answer except as provided in
22     CPLR Rule 3115 or this subdivision.  Any
       refusal to answer or direction not to answer
23     shall be accompanied by a succinct and clear
       statement of the basis therefor.  If the
24     deponent does not answer a question, the
       examining party shall have the right to
25     complete the remainder of the deposition.
```

```
 1

 2              221. UNIFORM RULES FOR THE
                 CONDUCT OF DEPOSITIONS
 3
       221.3 Communication with the deponent
 4          An attorney shall not interrupt the
       deposition for the purpose of communicating
 5     with the deponent unless all parties consent
       or the communication is made for the purpose
 6     of determining whether the question should
       not be answered on the grounds set forth in
 7     section 221.2 of these rules and, in such
       event, the reason for the communication
 8     shall be stated for the record succinctly
       and clearly.
 9

10            IT IS FURTHER STIPULATED AND AGREED
       that the transcript may be signed before any
11     Notary Public with the same force and effect
       as if signed before a clerk or a Judge of
12     the court.

13
              IT IS FURTHER STIPULATED AND AGREED
14     that the examination before trial may be
       utilized for all purposes as provided by the
15     CPLR.

16
              IT IS FURTHER STIPULATED AND AGREED
17     that all rights provided to all parties by
       the CPLR cannot be deemed waived and the
18     appropriate sections of the CPLR shall be
       controlling with respect hereto.
19

20            IT IS FURTHER STIPULATED AND AGREED by
       and between the attorneys for the respective
21     parties hereto that a copy of this
       examination shall be furnished, without
22     charge, to the attorneys representing the
       witness testifying herein.
23

24

25
```

```
 1
 2     J O S E P H E I N E   T R A P A N I, called
 3     as a witness, having been first duly sworn
 4     by a Notary Public of the State of New York,
 5     was examined and testified as follows:
 6     EXAMINATION BY
 7     MR. SEARS:
 8          Q.     Please state your name for the
 9     record.
10          A.     Josephine Trapani.
11          Q.     Where do you reside?
12          A.     89-23 63rd Avenue, Rego Park,
13     New York 11374.
14          Q.     Good morning, Ms. Trapani.
15          A.     Good morning.
16          Q.     My name is Stuart Sears.  I'm
17     from the law offices of Shaevitz & Shaevitz,
18     who represent a plaintiff named Anna Thomas
19     involving an alleged incident that occurred
20     back on December 28, 2006.  I'm going to ask
21     that you answer verbally so the reporter can
22     take it down rather than gesturing.  If you
23     don't understand the question that I'm
24     saying, say so and I will try to rephrase
25     it.  At any time you want to take a break
```

```
 1                           TRAPANI
 2    let your attorney know we will do so at your
 3    convenience.
 4         A.    Okay.
 5         Q.    How long have you resided at the
 6    address that you previous gave us?
 7         A.    All of my life.
 8         Q.    Who do you presently reside
 9    there with?
10         A.    Excuse me?
11         Q.    Who do you live with?
12         A.    My mother and brothers.
13         Q.    Back on December 28, 2006 you
14    resided at the same address?
15         A.    Yes.
16         Q.    What is your date of birth?
17         A.    1/31/64.
18         Q.    Are you presently employed?
19         A.    Yes.
20         Q.    By whom?
21         A.    T-Mobile.
22         Q.    Where is T-Mobile located?
23         A.    Right now I'm between stores.
24         Q.    What store are you working at
25    now?
```

```
 1                           TRAPANI
 2        A.      Five Towns in Rosedale.
 3        Q.      What do you do presently for
 4  T-Mobile?
 5        A.      I'm in training.
 6        Q.      Training to do what?
 7        A.      Retail store manager.
 8        Q.      Have you held any other
 9  positions with T-Mobile?
10        A.      No.
11        Q.      Prior to T-Mobile, where was
12  your last employment?
13        A.      Circuit City.
14        Q.      When did you start working for
15  Circuit City?
16        A.      1999.
17        Q.      Was there a specific location
18  you started working in 1999?
19        A.      The Rego Park location.
20        Q.      Is that the location located at
21  9605 Queens Boulevard?
22        A.      Yes.
23        Q.      When you were hired by Circuit
24  City, what was your position in 1999?
25        A.      Customer service associate.
```

```
 1                          TRAPANI
 2        Q.      How long all together did you
 3   work at Circuit City?
 4        A.      About nine years.
 5        Q.      Until approximately this year?
 6        A.      Yes.
 7        Q.      When did you stop working for
 8   them, January of '08, February, something
 9   else?
10        A.      June of '08.
11        Q.      Your whole time in Circuit City,
12   was it at that specific location?
13        A.      No.
14        Q.      Many stores?
15        A.      Yes.
16        Q.      Back in December of '06, were
17   you working at the Rego Park store?
18        A.      Yes.
19        Q.      Were there any other stores that
20   you were working at in December of '06?
21        A.      Not that I remember.
22        Q.      Did you hold any other
23   employment other than Circuit City on
24   December 28, 2006?
25        A.      No.
```

```
 1                              TRAPANI
 2        Q.      Was it a full-time position?
 3        A.      Yes.
 4        Q.      If you could just explain what
 5   your duties were as a customer service
 6   associate back in December of '06?
 7                MR. WHITTON:  Note my
 8        objection.  At that time it was not her
 9        title.
10        Q.      When you were hired as a
11   customer service associate in 1999, did you
12   then have other positions with that company?
13        A.      Yes.
14        Q.      What other positions, what was
15   the next position that you held?
16        A.      Customer service manager.
17        Q.      When was that?
18        A.      That was about a year and a half
19   after.
20        Q.      After that, did you hold any
21   other position?
22        A.      Operations manager.
23        Q.      After that, did you hold any
24   other positions with them?
25        A.      No.
```

```
 1                          TRAPANI
 2        Q.      Back in December of '06, were
 3   you an operations manager at the Rego Park
 4   location?
 5        A.      Yes.
 6        Q.      If you could just briefly
 7   explain to me your duties and
 8   responsibilities at that position?
 9        A.      Making sure that the inventory
10   was current.  Customer service issues.
11        Q.      Were you operations manager at
12   that location only or also an operations
13   manager to other locations?
14        A.      Just that location.
15        Q.      Did you have an immediate
16   supervisor back in December of '06?
17        A.      Yes.
18        Q.      Who was your immediate
19   supervisor?
20        A.      I believe it was Mike Spell.
21        Q.      S-P-E-L-L?
22        A.      Yes.
23        Q.      What was his position?
24        A.      Store manager.
25        Q.      Do you know if Mr. Spell is
```

```
 1                    TRAPANI
 2   still employed by Circuit City?
 3       A.    He is not.
 4       Q.    Did you undergo any training to
 5   become an operations manager at Circuit
 6   City?
 7       A.    Yes.
 8       Q.    What type of training was that?
 9       A.    They sent us to the corporate
10   office in Virginia for about a week training
11   and then on-hand training.
12       Q.    Was part of your duties to hire
13   personnel as well?
14       A.    Yes.
15       Q.    What about security personnel,
16   did you hire security personnel?
17       A.    No.
18       Q.    Who was responsible for hiring
19   security personnel back in '06?
20       A.    I don't remember.
21       Q.    Was it somebody from Circuit
22   City though?
23       A.    Yes.
24       Q.    Was it somebody higher up than
25   you?
```

```
 1                        TRAPANI
 2      A.      Yes.
 3      Q.      Would that be Mr. Spell?
 4      A.      No.
 5      Q.      What would be the title of the
 6  person to hire security back in '06?
 7      A.      Loss prevention district
 8  manager.
 9      Q.      Do you know who that was or any
10  of them in 2006?
11              MR. WHITTON:  The manager or the
12      personnel?
13      Q.      The loss prevention district
14  manager?
15      A.      I believe it was Mark Camerot.
16      Q.      Do you know how to spell that?
17      A.      C-A-M-E-R-O-T.
18      Q.      Do you know if Mr. Camerot is
19  still employed by Circuit City?
20      A.      I believe so.
21      Q.      Was he assigned the Rego park
22  store location or his job encompassed
23  different locations?
24      A.      Many stores.
25      Q.      Were you familiar with the Rego
```

```
 1                            TRAPANI
 2     Park store back in December of '06?
 3           A.     Yes.
 4           Q.     Do you recall what your days
 5     that you worked or shifts that you had back
 6     in December of '06?
 7           A.     Most of the time it was
 8     mornings.
 9           Q.     Would you arrive there before
10     the store opened to the general public?
11           A.     Yes.
12           Q.     What time would you normally
13     arrive?
14           A.     Anywhere between 4:30 on.
15           Q.     4:30 in the morning?
16           A.     Yes.
17           Q.     What would your shift normally
18     go to?
19           A.     It would all depend.
20           Q.     Depend on what, if there were
21     issues to deal with, just the day of the
22     week, something else?
23           A.     It would be depending on the
24     schedule and the day.
25           Q.     Would you normally work Monday
```

```
 1                           TRAPANI
 2    to Friday or something else?
 3         A.    It varied.
 4         Q.    Were you actually at the store
 5    on December 28, 2006?
 6         A.    Yes.
 7         Q.    Do you have an independent
 8    recollection of being there that day?
 9         A.    Yes.
10         Q.    Do you recall what time you
11    started that day?
12         A.    It had to be about 4:30, five
13    o'clock in the morning.
14         Q.    When you started, was there any
15    other personnel with you from Circuit City?
16         A.    Yes.
17         Q.    Do you recall who that would be?
18         A.    No.
19         Q.    When you got there in the
20    morning, did you have to sign in, check in,
21    do something else to indicate that you were
22    there?
23         A.    No.
24         Q.    Did the other employees have to
25    check in, sign in or check with you to let
```

```
 1                      TRAPANI
 2   you know that they were there when they got
 3   there?
 4         A.     They would have to log into
 5   their time sheet.
 6         Q.     Was their time sheet on a wall,
 7   computer?
 8         A.     Computer.
 9         Q.     The store itself, is it part of
10   a mall?
11         A.     Yes.
12         Q.     Is there a name for that mall?
13         A.     Rego Park Mall.
14         Q.     To your knowledge, was that
15   store still there today?
16         A.     Yes.
17         Q.     The Rego Park Mall in December
18   of '06, do you remember how many stores
19   encompassed that mall about?
20         A.     Five.
21         Q.     About five?
22         A.     Yes.
23         Q.     It was on Queens Boulevard?
24         A.     Yes.
25         Q.     Was it in between two streets,
```

```
 1                          TRAPANI
 2   two other streets, if it was on Queens
 3   Boulevard do you know what the other streets
 4   were?
 5        A.    No, I don't.
 6        Q.    Were there more than one floor
 7   to this mall?
 8        A.    Yes.
 9        Q.    How many floors?
10        A.    I believe it was three.
11        Q.    Which floor was Circuit City on
12   back in December of '06?
13        A.    The top.
14        Q.    The third floor?
15        A.    Yes.
16        Q.    How many different entrances for
17   the public were there back in December of
18   '06?
19        A.    Just one.
20        Q.    Was that facing Queens Boulevard
21   or some other location?
22        A.    I don't know.
23        Q.    Was it an entrance that had, in
24   other words, you had to pull doors, doors
25   open by itself?
```

DIAMOND REPORTING   (718) 624-7200  info@diamondreporting.com