IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al. | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtor. | ) | Jointly Administered |

**RESPONSE OF GRAPHIC COMMUNICATIONS HOLDINGS, INC. TO DEBTORS' SUPPLEMENTAL OBJECTION TO CLAIM 1053**

Graphic Communications Holdings, Inc. ("Graphic"), by counsel, hereby responds to Debtors' Supplemental Objection to Claim 1053 of Graphic Communications ("Supplemental Objection"),[1] as follows:

Graphic timely filed its Section 503(b)(9) administrative priority claim in the amount of $175,195.74 (Claim No. 1053) for goods received by Circuit City. Specifically, Graphic's claim is for necessary charges associated with the production of more than 10,000,000 of Circuit City's November 16, 2008 promotional flyers.

Graphic accepts Circuit City's representations regarding the applicability of the Uniform Commercial Code (UCC) in defining "goods" and the relevance of the predominant purpose test -- this Court's having recently adopted and applied the test in this debtor's bankruptcy. *See In re: Circuit City Stores, Inc.*, 416 B.R. 531 (Bankr. E.D. Va. 2009). Nor does Graphic take issue with the UCC's application with regard to the goods having been "received" as that term applies here. Contrary to Debtor's assertions, however, Graphic's promotional flyers are, in fact, goods deemed

---

[1] Graphic previously responded to Debtors' Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(b)(9) Claims ("Fifth Omnibus Objection") (Docket Nos. 3310 and 3600, respectively) in the name "Graphic Communications, Inc." To the extent Circuit City is by this Supplemental Objection supplementing its Fifth Omnibus Objection, Graphic is hereby supplementing and amending its Response to the Fifth Omnibus Objection to correct the inadvertent misnomer.

1

to have been received by Circuit City.

### I. Promotional Flyers as "Goods"

The goods produced and provided by Graphic to Circuit City for which it claims administrative priority are properly classified as "goods" as that terms is used in Section 503(b)(9) and the UCC. Circuit City complains that Graphic's role in the production process was necessarily a service with goods only "incidentally involved." (Supplemental Objection at 9.) Nevertheless, Circuit City is forced to cite to *Erin Printing* which concludes that a contract for printing catalogues was a contract for goods. *See Erin Printing and Promotional Mktg, Inc. v. Convum*, LLC No. M2003-01449-COA-R3-CV, 2005 WL 366895 (Tenn. Ct. App. 2005); *see also Gross Valentino Print Co. v. Clarke*, 458 N.E.2d 1027 (Ill. App. Ct. 1983) (agreement for printing of magazines is one for "goods" subject to UCC), cited with approval in *Directory Publishers Inc. v. Lake Country Hearth & Leisure*, 193 Misc.2d 799, 800-01 (N.Y. City Ct. 2002) (distinguishing newspaper insert-type advertising from Yellow Book type advertising); *Lake Wales Publishing, Inc. v. Florida Visitor, Inc.*, 335 So. 2d 335 (Fla. Dist. Ct. App. 2d 1976) (applying UCC to contract to compile, edit, and publish pamphlets and other printed materials).[2] *Cf. Mail Concepts Inc. v. Foote and Davies Inc.*, 409 S.E.2d 567 (Ga. Ct. Appl. 1991) (concluding as services contract an agreement to ready magazines for shipment and sale).

In its initial Fifth Omnibus Objection to Graphic's claim Circuit City sought to distinguish the predominant purpose (without calling it as such) of Graphic's contract as one for advertising services. In doing so, Circuit City relied at that time exclusively on a case from the Southern

---

[2] In *Colony Press, Inc. v. M.J. Fleeman*, 308 N.E.2d 78 (Ill. App. Ct. 1st 1974), a case involving the same form of printed advertising at issue here, the Illinois court discussed printed advertising inserts in an Ohio newspaper as "goods" within the meaning and application of the UCC. The court, which ruled on the issue of whether Ohio had jurisdiction to hear the case, used the word "goods" to describe the newspaper inserts eleven times throughout the four-page opinion. *Colony Press*, 308 N.E.2d at 78.

District of Mississippi, *In re Deer*, 2007 Bankr. LEXIS 4676 (S.D. Miss. June 14, 2007) (denying advertising claims as non-goods). Applying the relevant UCC provisions, the *Deer* court was persuaded that the advertising in dispute, one for advertising within a "Yellow Book" directory, did not qualify as goods within the plain language of the UCC. *See In re Deer*, 2007 Bankr. LEXIS 4676 at *5-6. Apparently abandoning the comparison now,[3] Circuit City no longer looks to cast Graphic's role as a provider of advertising as opposed to a producer of newspaper inserts because courts called upon to draw such a distinction have held that the UCC does apply where, as here, the "primary subject" of the contract was the tangible printed magazines and not "printing services." *See, e.g.*, *Gross Valentino Printing Co. v. Clarke*, 458 N.E.2d 1027, 1029-30 (Ill. App. Ct. 1983).

For instance, in the *Lake Wales Publishing* case (another early precursor to the "predominant purpose" test cases), the Florida state court considering a contract for the production of advertising pamphlets stressed the concept of movability in the definition of goods, holding that the pamphlets were goods because they were "specifically produced or manufactured and were movable." 335 So.2d at 336. Any services rendered in relation to the production of the pamphlets were covered as goods under the UCC as they "were of necessity directed at publication of the items." 335 So.2d at 336.

The parties' Master Services Agreement (MSA) speaks in terms of "Supplier Deliverables" (i.e. "items or work prepared for, or delivered by" Graphic to Circuit City under a Statement of Work (SOW)). (Stipulated Facts ¶ 29; Ex. G, MSA, §3.1(a) at 2.) In addition, the MSA called upon Graphic to "provide its Deliverables" pursuant to a particular schedule to be provided by Circuit City which then had the right to "evaluate a Deliverable" within specified

---

[3] Circuit City fails even to cross-reference the Fifth Omnibus Objection which they now "supplement."

timeframes prior to accepting and "verify that such Deliverable" met Circuit City's requirements and specifications." (Stipulated Facts, Ex. G, MSA, §4.5(a) at 3.) While it is true that pursuant to the parties' SOW 1 Graphic undertook principally management and coordination responsibilities with regard to Circuit City's paper and printing programs, Graphic actually supplied the paper and produced the inserts under SOW 2 (Puerto Rico) and SOW 3 (stateside). (*See* Stipulated Facts, Ex. I, SOW 2, §3(d) and (e) at 2; Ex. J, SOW 3, §3(d) and (e) at 2.) As noted in the 12/18/07 Circuit City memo incorporated by Circuit City as part of the statement of work document, SOW 2 supports "paper, print and logistics for newspaper inserts." As noted in SOW 3, the pricing set forth in that statement of work was for the "product specified" therein and included pricing for a list of charges incidental to the "finished product for delivery to the newspapers." (Stipulated Facts, Ex. I, SOW 3 §6 at 3.) SOW 3 goes on to ascribe liabilities during the lifecycle of the inserts noting that Graphic remained liable for loss during storage and prior to delivery of the "finished product." (*Id.*)

Circuit City seeks to compare the total amount of the invoices to the miscellaneous materials coincidentally included on the particular invoices subject to the claim. Circuit City acknowledges that the charges at issue with this claim are only a portion of the total charges for the newspaper inserts to which they relate – the paper portion of the total cost of the flyers having been separately invoiced and paid. (Stipulated Facts, Exs. K and L.) The mere separation of billing for the acknowledged "product" or "event," i.e. the "11/16/08 Promotion," as that term is defined by the parties, *see* Stipulated Facts ¶15), does not render the incidentals non-goods. The fact that there are incidental material charges included on the same invoices is a "course of dealing" issue that hardly serves to define the relevant percentage of "intrinsic worth" of the printing versus non-printing portion of the overall event charges. In fact, applying Circuit City's "intrinsic

4

worth" logic to the overall costs of the 11/16/08 Promotion, including the paper costs, it becomes clear that it is, rather, the printing costs that are rendered "small in comparison."  (*Compare* Stipulated Facts, Ex. K ($441,321.01, $311,247.33 and $137,966.48) *with* Stipulated Facts, Exs. B and C ($175,195.74)).

In circumstances such as this, Section 503(b)(9) applies to the provision of advertising or printing related thereto as "goods."  Where, as here, the primary purpose is to produce newspaper flyer inserts for distribution and printing was "of necessity directed at publication of the items", the printing itself is subsumed under the UCC within the "goods" printed and, therefore, included under Section 503(b)(9) as well.

## II.    Goods "Received" Under UCC

This Court has already ruled in the context of this bankruptcy proceeding that the UCC's definition of "receipt" governs for purposes of Section 503(b)(9) as to whether goods are "received" by a debtor within the requisite time period.  (Docket No. 7149; Stipulated Facts ¶ 20.)

Specifically, pursuant to Section 2-103(1), "'receipt of goods' means taking physical possession of goods."  The Court further held based on this definition that "received for the purposes of § 503(b)(9) means having taken into physical possession."  *In re Circuit City Stores, Inc.*, 2010 WL 1451338 at *4 (Bankr. E.D. Va. Apr. 8, 2010).  This definition does not specifically address the question of who must take physical possession of goods for a buyer to be deemed to have received them.  While it may otherwise be presumed that the Debtor is the "recipient" intended to be the one taking physical possession in this context, it need not be the Debtor that takes actual possession for these purposes.

The court in *In re Plastech Engineered Products, Inc.*, No. 08-42417, 2008 WL 5233014 (Bankr. E.D. Mich. Oct. 7, 2008), upon which Circuit City relied heavily in pursuing acceptance of

5

the "predominant purpose" test, was asked to consider this very question of constructive possession but passed due to what it determined to be an insufficiently developed record. The question for the *Plastech* court was whether the third party had taken physical possession of the goods in question in some representative capacity for the debtor. *See Plastech*, 2008 WL 5233014 at *4. As it turns out, the UCC itself provides the answer.

Where, as in this situation, the buyer of goods designates a third party to receive purchased goods, actual physical receipt by the buyer's designated receiver is deemed to be constructive receipt by the buyer. *See* UCC § 2-705, official cmt. 2 ("'Receipt by the buyer' includes receipt by the buyer's designated representative, the sub-purchaser, when shipment is made direct to him and the buyer himself never receives the goods.") Circuit City emphasizes the use of Eleets as a common carrier in denial of any constructive possession through its agent or bailee. (Supplemental Objection ¶ 22.) However, as set forth in Official Comment 2 to Section 2-705, the relevant question here became the status of the various newspapers to whom Circuit City acknowledges having designated as the ultimate recipients of the Newspaper Inserts.

Circuit City's Transportation Agreement with Eleets is meticulously drafted to assure specific allocation of risk with presumed knowledge of governing UCC provisions.[4] In defining Eleets' responsibilities, the Transportation Agreement specifies that Eleets "shall deliver each shipment in good order and condition to the designated receiver(s)." (Stipulated Facts, Ex. E § 2.2 at 1.) Elsewhere within Circuit City's Transportation Agreement with Eleets, Circuit City refers to its designated recipients as the "newspaper inserters," (*see id*. § 2.10), and "CCS's receivers," (*see id*. § 8.1 at 5).

---

4 The Transportation Agreement is governed by Virginia law. (*See* Stipulated Facts, Ex. E § 8.5.) Virginia has codified the relevant UCC section and comment at Virginia Code §8.2-705, official cmt 2.

Graphic was not itself responsible for the actual delivery of the Newspaper Inserts to the various newspapers for distribution. In fact, it had nothing to do with it. For that service, Circuit City engaged its own independent agent, Eleets Logistics, Inc. d/b/a Eleets Transportation ("Eleets") to pick up the Newspaper Inserts from the various printers and deliver them as Circuit City instructed in accordance with a distribution schedule it prepared and provided to Eleets pursuant to the Transportation Agreement between Circuit City and Eleets. (*See* Stipulated Facts ¶¶ 21-27.)[5] Graphic had no involvement in the Transportation Agreement and was not a party thereto. As a consequence, Graphic had no input or involvement in the delivery process. (*Id.* ¶ 27.) Specifically, Graphic had no control over the time, place or manner of delivery of the Newspaper Inserts by Eleets or the equipment, personnel or insurance coverage selected by Eleets. (*Id.* ¶¶ 23, 24, 26.)

WHEREFORE, in light of the foregoing, Graphic's claim is properly entitled to priority treatment under Section 503(b)(9) and should be deemed allowed as such, and Circuit City's request to reclassify Graphic's administrative claim as a general unsecured claim should be denied. Graphic requests entry of an order to this effect and granting such further or alternative relief as to the Court seems just and proper.

    Respectfully submitted,
    Graphic Communications Holdings, Inc.
    By counsel,

    */s/ Thomas W. Repczynski*
    Thomas W. Repczynski (VSB No. 39967)
    trepczynski@offitkurman.com
    Offit Kurman, P.A.
    4800 Montgomery Lane, 9th Floor
    Bethesda, Maryland 20814
    (240) 507-1700; (240) 507-1735 (Fax)

---

[5] Another third party, Vertis, was responsible for delivery services in Puerto Rico pursuant to SOW 2.

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010, the foregoing Response of Graphic Communications Holdings, Inc. to Debtors' Supplemental Claim Objection to Claim 1053 is being filed with the Court using the Court's CM/ECF system and is to be served electronically upon all receiving notice thereby.

*/s/ Thomas W. Repczynski*
Thomas W. Repczynski