| | |
|---|---|
| Gregg M. Galardi, Esq. | Douglas M. Foley (VSB No. 34364) |
| Ian S. Fredericks, Esq. | Sarah B. Boehm (VSB No. 45201) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - - x
```

**DEBTORS' REPLY IN SUPPORT OF DEBTORS' SUPPLEMENTAL
OBJECTION TO CLAIM 1053 OF GRAPHIC COMMUNICATIONS**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City
*(cont'd)*

1

hereby file this reply (the "Reply") to the Response Of Graphic Communications Holdings, Inc. (the "Response") To Debtors' Supplemental Objection To Claim 1053 (the "Supplemental Objection"). In support of this Reply, the Debtors rely upon and hereby incorporate by reference the Stipulated Facts With Respect To Debtors' Objection To Claim Number 1053 (Docket No. 7963) (the "Stipulated Facts").[2]  In further support of this Reply, the Debtors

**ARGUMENT**

As demonstrated in the Supplemental Objection (and not contested in the Response), Graphic has the burden of proof with respect to all aspects of the Claim.  <u>Supplemental Objection</u> at 4.  As demonstrated in the Supplemental Objection and below, Graphic has not met its burden of establishing that printing the

---

*(cont'd from previous page)*
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulated Facts or the Supplemental Objection.

2

Newspaper Inserts was a sale of goods or that Circuit City, a Debtor, "received" the Newspaper Inserts.

I. **GRAPHIC HAS FAILED TO ESTABLISH THAT THE PREDOMINANT PURPOSE OF THE MSA AND THE SOWS WAS THE PROVISION GOODS.**

In the Supplemental Objection, the Debtors demonstrated that the MSA and the relevant SOWs are agreements for which the predominant factor, thrust, and purpose, reasonably stated, is the rendition of service, with goods incidentally involved. In support, the Debtors demonstrated that (1) the language of the MSA and the SOWs, (2) the nature of Graphic's business, and (3) the intrinsic worth of the Newspaper Inserts all weigh in favor of concluding that Graphic provided services to the Debtors. Supplemental Objection ¶ 12.

In response, Graphic concedes that the predominant purpose test applies, but argues that the test is satisfied because the predominant factor, thrust, and purpose of the MSA and the SOWs is providing goods. Response at 1. In support, Graphic discusses the first and third factors announced in Princess Cruises, Inc. v. Gen. Elec. Co., 143 F.3d 828, 833 (4th

3

Cir. 1998), but fails to address second factor.  As discussed below, Graphic's arguments fail.

    **A.**    **The Express Language Of The MSA And The SOWs Demonstrates That Their Predominant Purpose Is Providing Services.**

As demonstrated in the Supplemental Objection, the express language of the MSA and SOWs reflects that Circuit City contracted with Graphic to provide "Services".  Graphic attempts to rebut this conclusion by relying on certain discrete words in the MSA and SOWs and cases that are distinguishable.  Graphic's reliance on the foregoing is insufficient to satisfy its burden.

First, Graphic relies on the use of the words "Supplier Deliverables" in the MSA.  Although "Supplier Deliverables" is used and defined in the MSA, the words are irrelevant because neither the words "Supplier Deliverables" nor any variation thereof were used in SOW 2 or SOW 3 -- the SOWs under which the Newspaper Inserts were printed.  Instead, in SOWs 2 and 3, Circuit City contracted with Graphic for additional servicesby expanding the definition of "Services" used in the MSA. MSA at § 3.3 (defining Services as "[a]ny reasonable

4

effort expended by the Parties or their Personnel to perform the work described in a SOW").

Specifically, pursuant to SOWs 2 and 3, "Circuit City desire[d] to engage [Graphic], and [Graphic] agree[d] to such engagement, relating to the Services more particularly described herein." SOW 2 at Preamble (emphasis added); SOW 3 at Preamble (same). More specifically, under the heading "Description Of Services", Graphic and Circuit City agreed that Circuit City would provide "digital art files" containing instructions on how to proceed with a given advertising program. Graphic would take those instructions and format, print, and package the Newspaper Inserts. SOW 2 at § 3; SOW 3 at § 3. Thus, with respect to the Newspaper Inserts, the parties clearly intended that Graphic would provide Circuit City with services.

Second, Graphic relies on the use of the words "finished product" or "product specified" in the SOWs. Although Circuit City and Graphic may have used the words "finished product" and "product specified" in SOWs 2 and 3, the words should not be analyzed in a vacuum, as suggested by Graphic. C.f., United States v.

5

Williams, 553 U.S. 285, 294 (2008) (stating that "[w]hen taken in isolation, the two remaining verbs -- 'promotes' and 'presents' -- are susceptible of multiple and wide-ranging meanings.  In context, however, those meanings are narrowed by the commonsense canon of noscitur a sociis -- which counsels that a word is given more precise content by the neighboring words with which it is associated."); Res. Bank v. Progressive Cas. Ins. Co., 503 F. Supp. 2d 789, 796 (E.D. Va. 2007) (interpreting a contract by relying upon "canon [of] noscitur a sociis") (citing Andrews v. Am. Health & Life Ins. Co., 372 S.E.2d 399, 401 (Va. 1988)).  Instead, this Court should analyze the MSA and the SOWs as a whole. State Farm Fire & Cas. Co. v. Nationwide Mut. Ins. Co., 596 F. Supp. 2d 940, 945 (E.D. Va. 2009) (applying Virginia law and recognizing that a "contract must be read as a whole").

The MSA and the SOWs as a whole demonstrate that Circuit City and Graphic intended for "printing" to be a service.  For example, in the section described "Project Scope", the parties stated that "[Graphic] will provide . . . print services . . . ." SOW 3 at § 2; see

6

also SOW 2 at § 2 ("[Graphic] will provide . . . print[] and logistical services . . . ."). Thus, it is evident that Circuit City and Graphic intended for printing to be a "service", notwithstanding the use of the general words "finished product" and "product specified" in other places in SOW 2 and SOW 3.

  Third, Circuit City and Graphic distinguished between the supply of "paper", which is a "good", and the "printing" of the Newspaper Inserts, which is a "service". See SOW 2 at § 6; see also SOW 3 at § 6. Indeed, attachment A to SOW 3 states that it is the pricing "for Circuit City flexi program printing of approximately 10,600,000 copies . . . #30 Newsprint . . . ." SOW 3 attachment A (emphasis added). And, attachment B to SOW 3 plainly states that the paper -- #30 Newsprint -- was purchased separately and would be provided by Circuit City to Graphic. SOW 3 Attachment B ("30# Newsprint -- supplied by Circuit City (Brian Hargrove orders this)"); see also SOW 2 Attachment A (identifying separate charges for paper and printing). Moreover, as Graphic admits, Circuit City was invoiced separately for the paper and printing services.

Stipulated Facts at ¶ 39 ("Graphic sold paper to Circuit City separately and invoiced Circuit City separately for such paper . . . .").

Nor are the cases upon which Graphic relies persuasive. Critically, each case is distinguishable because the courts did not apply the predominant purpose test announced in Princess Cruises and adopted by this Court. Moreover, there is ample authority supporting the Debtors' position that printing is a "service". See, e.g., For Children, Inc. v. Graphics Int'l, Inc., 352 F. Supp. 1280 (S.D.N.Y. 1972) (contract for publishing of books was not a "good" covered by the UCC); Filmservice Labs., Inc. v. Harvey Bernhard Enters., Inc., 256 Cal. Rptr. 735 (1989) (contract to manufacture release prints of a motion picture held to be one for services); Mail Concepts Inc. v. Foote and Davies Inc., 409 S.E.2d 567 (Ga. Ct. Appl. 1991)(holding contract for imprinting, packaging, labeling, and shipping of magazines was contract for services); Incomm., Inc. v Thermo-Spa Inc., 595 A.2d 954 (Conn. Super. Ct 1991) (contract to produce brochures held to be one for services).

8

Based on the foregoing, and as more specifically demonstrated in the Supplemental Objection, it is evident that the parties intended the printing performed by Graphic to be a "service" rather than a "good". Accordingly, this factor weighs in favor of concluding that the predominant purpose of the MSA and the SOWs was providing services.

    **B.    The Intrinsic Worth Of The Non-Paper "Goods" Was Small In Comparison To Intrinsic Worth Of Services.**

In the Supplemental Objection, the Debtors demonstrated that the intrinsic worth of the materials supplied by Graphic was small in comparison to the printing charges. See Supplemental Objection at ¶ 17 (noting that the "charges for printing services total $173,527.44 [while] the only materials identified on the invoices . . . make up a mere $1,668.30 or approximately 1% of the Claim."). Graphic criticizes the Debtors' approach to determining the intrinsic worth because Graphic argues that the Court should take into consideration the paper that was purchased and paid for separately. Response at 4-5.

9

Specifically, Graphic argues that this Court must analyze the total value of the Newspaper Inserts, including the paper, to determine the Newspaper Inserts' intrinsic worth. Response at 4-5. In support, Graphic argues that separate billing and payment for the paper and printing is irrelevant. Response at 4-5. To the contrary, separate billing is not only relevant for purposes of calculating intrinsic worth, but also evidences the intent of the parties to keep the "printing services" separate from the sale of "paper goods." See United States v. Royal Ins. Co. of Am., 76 F.3d 574, 576 (4th Cir. 1996)("When interpreting contracts, courts are compelled to give effect to the intent of the parties, which is measured first and foremost by the language of the contract itself." (internal quotation omitted)). Thus, the Debtors' proposed approach is proper.

Based on the foregoing, and as more specifically demonstrated in the Supplemental Objection, the intrinsic worth of the materials is small in comparison to the services provided and included as part of the Claim. Accordingly, Graphic has failed to

satisfy its burden of proving that it sold "goods" to the Debtors.

**II. EVEN ASSUMING, <u>ARGUENDO</u>, THE PREDOMINANT PURPOSE OF THE CONTRACT WAS TO PROVIDE GOODS, GRAPHIC HAS FAILED TO MEET ITS BURDEN OF PROVING THAT THE "DEBTOR" "RECEIVED" THE NEWSPAPER INSERTS.**

In the Supplemental Objection, the Debtors demonstrated that they did not take physical possession of the Newspapers Inserts. Graphic does not dispute (and indeed admits) this fact. <u>Stipulated Facts</u> at ¶ 51 ("Circuit City did not take actual physical possession of the Newspaper Inserts"). Because neither Circuit City nor any other Debtor took physical possession of the Newspaper Inserts, the Debtors demonstrated that they had not "received" the Newspaper Inserts for purposes of Bankruptcy Code section 503(b)(9).

Graphic argues, however, that Circuit City took "constructive" possession of the Newspaper Inserts. In support, Graphic notes that the definition of "received" "does not specifically address the question of who must take physical possession of goods for a buyer to be deemed to have received them." <u>Response</u> at 5. Graphic posits that although "it may otherwise be

11

presumed that the Debtor is the 'recipient' intended to be the one taking physical possession in this context, it need not be the Debtor that takes actual possession for these purposes." Response at 5.  As discussed below, Graphic's argument fails because Graphic's statement that "it need not be the Debtor that takes actual possession for these purposes" is contrary to express, clear, and unambiguous language of Bankruptcy Code section 503(b)(9).

      Bankruptcy Code section 503(b)(9) provides that "there shall be allowed administrative expenses . . . [including] the value of any goods received by the debtor within 20 days [of the petition date] . . . ." 11 U.S.C. § 503(b)(9) (emphasis added).  As discussed in the Supplemental Objection, in interpreting section 503(b)(9), there is a "presumption in bankruptcy cases [] that the debtor's limited resources will be equally distributed among the creditors." Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994).  Thus, this Court should interpret section 503(b)(9) narrowly and in accordance with its plain meaning. See Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S.

1, 6 (2000) ("Congress says in a statute what it means and means in a statute what it says there." )(internal quotations omitted); <u>In re NVR, LP</u>, 189 F.3d 442, 457 (4th Cir. 1999) (holding that the Bankruptcy Code must be interpreted in accordance with its plain meaning using the ordinary understanding of words).

For purposes of the Claim, to determine whether section 503(b)(9) has been satisfied, the Court must interpret "received" and "debtor". Here, the Court has already interpreted the word "received" to mean taking physical possession and Graphic has accepted the Court's interpretation. <u>Response</u> at 1. The Court has not, however, interpreted the word "debtor".

The Court need not do so because Congress has expressly defined the word "debtor" in Bankruptcy Code section 101(13). Pursuant to Bankruptcy Code section 101(13), "debtor" is defined as a "person or municipality concerning which a case under [the Bankruptcy Code] has been commenced." 11 U.S.C. § 503(b)(9). Graphic has not suggested that the word "debtor" or its use in section 503(b)(9) is ambiguous. Nor is there a dispute that Circuit City is the

"debtor". Stipulated Facts at ¶ 9. Consequently, for purposes of establishing a claim under Bankruptcy Code section 503(b)(9), Circuit City had to take physical possession of the Newspaper Inserts.

Because Graphic has admitted that Circuit City did not take physical possession of the Newspaper Inserts, Graphic has failed to satisfy its burden. Consequently, the Claim should be reclassified to a non-priority, general unsecured claim.

Notwithstanding the express statutory language of Bankruptcy Code sections 101(13) and 503(b)(9), Graphic contends that constructive possession of the Newspaper Inserts is sufficient under Bankruptcy Code section 503(b)(9). In support, Graphic relies on the bankruptcy court's decision in In re Plastech Engineered Prods., Inc., 2008 Bankr. LEXIS 3130 (Bankr. E.D. Mich. Oct. 7, 2008), and UCC § 2-705 and its Official Comment.

Graphic's reliance on Plastech, is misplaced because, as Graphic admits, the court did not decide the issue presently before this Court. Thus, the decision is inapposite.

14

Similarly, Graphic's reliance on UCC § 2-705 and its Official Comment are misplaced. UCC § 2-705 addresses a seller's ability to stop delivery of goods in transit and the relevant text of the Official Comment provides an interpretation of the phrase "receipt by the buyer." UCC § 2-705, official cmt. 2 (emphasis added). It does not, however, address priorities under the Bankruptcy Code or the meaning of the word "debtor". To the extent it did, it would be superseded by the Bankruptcy Code. In re Williams, 2007 Bankr. LEXIS 2472, *30 (Bankr. E.D. Va. 2007) ("[w]hen a conflict exists between state law and bankruptcy laws enacted by Congress, the state law is superseded.")

Thus, Graphic's reliance on Plastech and UCC § 2-705 and its Official Comment are misplaced. Consequently, Graphic's argument that constructive receipt is sufficient for purposes of Bankruptcy Code section 503(b)(9) fails.

Even assuming, arguendo, that "debtor" could be interpreted to mean Circuit City or its "designated representative" and, thus, constructive receipt is sufficient to satisfy section 503(b)(9), Graphic has

15

failed to meet its burden by demonstrating that the newspaper companies themselves were Circuit City's designated representatives, i.e., agents or bailees.[3]

To establish constructive possession by Circuit City, Graphic must establish that the newspaper companies were either Circuit City's agents or bailees. See, e.g., Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.), 740 F.2d 220, 226 (3d Cir. 1984). As both parties agree that Virginia law governs, under Virginia law, an agency is a "relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." Raney v. Barnes Lumber Corp., 81 S.E. 2d 578, 584 (Va. 1954). "Bailee", on the other hand, is defined as "the person who by warehouse receipt, bill of lading or other document acknowledges possession of goods and contracts to deliver them." Va. Code. Ann. § 8.7-102 (2010). In

---

[3] For the reasons set forth in the Supplemental Objection, Eleets and Vertis, as common carriers, were neither the Debtors' agents nor bailees. Graphic appears to concede that possession by Eleets and Vertis, as common carriers, was not sufficient to establish constructive possession.

both instances, Graphic, as the party alleging the existence of the relationships, bears the burden of proof.  Raney, 81 S.E. 2d at 584

Here, Graphic has presented no evidence of the relationship between Circuit City and the newspaper companies.  Thus, Graphic has failed to demonstrate the existence of an agency or bailee relationship between Circuit City and the newspaper companies.  Consequently, Graphic has failed to meet its burden under Bankruptcy Code section 503(b)(9) and Virginia law.

Accordingly, the Claim should be reclassified to a general unsecured non-priority claim.

**CONCLUSION**

WHEREFORE, the Debtors request the Court to enter an Order sustaining the Supplemental Objection and granting such other and further relief as the Court deems appropriate.

Dated: Richmond, Virginia  SKADDEN, ARPS, SLATE, MEAGHER &
      July 21, 2010      FLOM, LLP
                                    Gregg M. Galardi, Esq.
                                    Ian S. Fredericks, Esq.
                                    P.O. Box 636
                                    Wilmington, Delaware 19899-0636
                                    (302) 651-3000

                                         - and -

                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                       FLOM, LLP
                                    Chris L. Dickerson, Esq.
                                    155 North Wacker Drive
                                    Chicago, Illinois 60606
                                    (312) 407-0700

                                         - and -

                                    MCGUIREWOODS LLP

                                    /s/ Douglas M. Foley_____
                                    Douglas M. Foley (VSB No. 34364)
                                    Sarah B. Boehm (VSB No. 45201)
                                    One James Center
                                    901 E. Cary Street
                                    Richmond, Virginia 23219
                                    (804) 775-1000

                                    Counsel for Debtors and Debtors
                                    in Possession