07-13-2006  13:28    From-

T-503  P.001/004  F-571

PO BOX 190670
Atlanta, Georgia 31119-0110
Phone:800-932-4464 x13071
Fax: 770-901-3153
mgrogan@sedgwickcms.com

**SedgwickCMS**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Attn: Erica | **From:** | Melisha Grogan |
| **Fax:** | 305-858-8084 | **Pages:** | 4    (including cover sheet) |
| **Phone:** | | | |
| **Re:** | | **cc:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

**EXHIBIT**

tabbies

B



# Sedgwick CMS

*Sedgwick Claims Management Services, Inc.*
*1117 Perimeter Center West, Suite 500E, Atlanta, GA 30338*
*Telephone 800-932-4464 ext.13071   Facsimile 770-901-3153*

July 10, 2006

Acosta & Strommen
Attention: Julio Acosta
455 Douglas Ave. Suite #2155-11
Altamonte Springs, FL 32714

| | |
|---|---|
| Our Client: | CIRCUIT CITY |
| Claim Number: | 20031202927 |
| Plaintiffs : | Jeanne and Gary Hoffman |
| Date of Incident: | December 03, 2003 |

Dear Mr. Acosta:

Sedgwick Management Services, Inc. handles general liability claims on behalf of CIRCUIT CITY. All future inquiries should be sent to the undersigned for handling. Please accept this letter as a request for your services.

We are in receipt of a summons and complaint, and Circuit City has approved your firm to be used as defense counsel for the above captioned claim.

Should you accept this assignment, please review the enclosed file materials and information and advise the examiner and Circuit City Risk Management accordingly.

I look forward to working with you to resolve this matter.

Sincerely,

*Melisha Grogan*

Melisha Grogan
Liability Claims Examiner III

07-13-2006   13:27   From-

T-503   P.003/004   F-571

---

Circuit City Stores, Inc.
Risk Management Department

Outside Counsel Guidelines

---

## A.    Summary

The need to maximize efficiency and mitigate costs extends to every Circuit City department and function, including the Risk Management Department and the use of outside counsel. The guidelines within summarize the expectations of Circuit City Stores, Inc. regarding the handling of litigated cases.

## B.    Contact Information

When the Risk Management Department retains a law firm, it is because we seek to work with a particular attorney at that firm, and not because we seek to retain other lawyers in the firm with whom we may or may not be acquainted. Unless we agree otherwise, we expect the retained attorney to stay involved in the matter. At a minimum, he or she should help manage the relationship with the Risk Management Department in order to meet the expectations set forth in these guidelines.

Unless informed to the contrary, Circuit City's Risk Management Analyst will be the primary contact for all matters concerning reporting and correspondence. All questions should be directed to that individual. All contact with Circuit City locations and associates should initially come through Circuit City's Risk Management Department. The Risk Management Supervisor is Christian Florence. Contact with our claims administrator, Sedgwick CMS, should be directed to Melisha Grogan.

A.
Richard Meador
Risk Management Analyst
9954 Mayland Drive
Richmond, VA 23233-1464
804-527-4000 Ext. 3055

B.
Melisha Grogan
Sedgwick CMS
PO Box 190670
Atlanta, GA 31119
770-901-3071 Phone
770-901-3153 Fax
mgrogan@sedgwickcms.com

## C.    Legal Expenses and Costs

The outside managing attorney should make certain that legal services are delivered as efficiently and economically as possible. Excessive lawyering compounds the familiarization cost as well as the cost of coordination. It is essential that every effort be made to hold down legal fees and expenses.

07-13-2006   13:27   From-                                    T-503   P.004/004   F-571

All work assignments should be carefully reviewed in advance by the outside managing attorney to make sure that they are well conceived and likely to make a significant contribution to the law firm's handling of the matter.

D.    Requests For Information

Requests for information, including Answers to Interrogatories, should be directed to both A and B, above, who will coordinate responses to alleviate duplication of efforts. If there are any jurisdictional restrictions that prevent this process, you should submit an explanation to both A and B outlining such restrictions.

E.    Reporting in Litigation Matters

Absent specific authorization from the Risk Management Department that this requirement be waived, outside counsel must provide the following:

1.    Within forty-five (45) days after the assignment, the attorney should prepare a written report, and address, at a minimum, the following:

      (a) Summary of liability
      (b) A breakdown of damages
      (c) Important discovery dates, trial dates, etc
      (d) Evaluation of the case (i.e. Judges, Attorneys, Venue)
      (e) Estimate of settlement and jury ranges
      (f) Plan of action for the next 90 days
      (g) Litigation budget forecast

2.    At a minimum, a written quarterly evaluation of the status of the case should be provided to the Risk Management Supervisor by:

      (a) June 1
      (b) September 1
      (c) December 1
      (d) March 1

3.    Forty-five (45) days before the close of discovery, a written report covering the same items as D (1) should be provided to assess the progress of the case and any final discovery that needs to be completed.

4.    As developments occur, counsel should report, in writing, all significant developments, which may affect the case. Key issues outside of reporting, such as attorneys leaving the firm that affect Circuit City should be brought to our attention immediately.

---

Circuit City Stores, Inc.
Risk Management Department

Outside Counsel Guidelines

---

**A.     Summary**

The need to maximize efficiency and mitigate costs extends to every Circuit City department and function, including the Risk Management Department and the use of outside counsel. The guidelines within summarize the expectations of Circuit City Stores, Inc. regarding the handling of litigated cases.

**B.     Contact Information**

When the Risk Management Department retains a law firm, it is because we seek to work with a particular attorney at that firm, and not because we seek to retain other lawyers in the firm with whom we may or may not be acquainted. Unless we agree otherwise, we expect the retained attorney to stay involved in the matter. At a minimum, he or she should help manage the relationship with the Risk Management Department in order to meet the expectations set forth in these guidelines.

Unless informed to the contrary, Sedgwick CMS will be the primary contact for all matters concerning reporting and correspondence. All questions should be directed to that individual. All contact with Circuit City locations and associates should initially come through Circuit City's Risk Management Department. The Risk Management Analyst is Richard Meador. Contact with our claims administrator, Sedgwick CMS, should be directed to Melisha Grogan.

A.                                              B.

Richard Meador                                  Melisha Grogan
Risk Management Analyst                          Sedgwick CMS
9954 Mayland Drive                              PO Box 190670
Richmond, VA 23233-1464                          Atlanta, GA 31119
804-527-4000 Ext. 3055                          770-901-3071 Phone
804-527-4187 Fax                                770-901-3153 Fax

Richard_Meador@CircuitCity.com
Mgrogan@sedgwickcms.com

C.    **Legal Expenses and Costs**

The outside managing attorney should make certain that legal services are delivered as efficiently and economically as possible.  Excessive lawyering compounds the familiarization cost as well as the cost of coordination.  It is essential that every effort be made to hold down legal fees and expenses.
All work assignments should be carefully reviewed in advance by the outside managing attorney to make sure that they are well conceived and likely to make a significant contribution to the law firm's handling of the matter.

D.    **Requests For Information**

Requests for information, including Answers to Interrogatories, should be directed to both A and B, above, who will coordinate responses to alleviate duplication of efforts.  If there are any jurisdictional restrictions that prevent this process, you should submit an explanation to both A and B outlining such restrictions.

E.    **Reporting in Litigation Matters**

Absent specific authorization from the Risk Management Department that this requirement be waived, outside counsel must provide the following:

1.    Within forty-five (45) days after the assignment, the attorney should prepare a written report, and address, at a minimum, the following:

(a) Summary of liability
(b) A breakdown of damages
(c) Important discovery dates, trial dates, etc
(d) Evaluation of the case (i.e. Judges, Attorneys, Venue)
(e) Estimate of settlement and jury ranges
(f) Plan of action for the next 90 days
(g) Litigation budget forecast

2.     At a minimum, a written quarterly evaluation of the status of the case should be provided to the Risk Management Analyst by:

      (a) June 1
      (b) September 1
      (c) December 1
      (d) March 1

3.     Forty-five (45) days before the close of discovery, a written report covering the same items as E (1) should be provided to assess the progress of the case and any final discovery that needs to be completed.

4.     As developments occur, counsel should report, in writing, all significant developments, which may affect the case.  Key issues outside of reporting, such as attorneys leaving the firm that affect Circuit City should be brought to our attention immediately.



# Sedgwick CMS

# Sedgwick Claims Management Services, Inc.

# Litigation Management Guidelines

# Practice makes *perfect*

**EXHIBIT**

*C*



Practice makes *perfect*

# Table of Contents

Table of Contents ........................................................................................................... 2

Sedgwick CMS Litigation Management Guidelines Overview .......................................... 4

Sedgwick CMS Litigation Expectations of Defense Counsel ........................................... 6

  Introduction ................................................................................................................. 6
  I.    Conflict of Interest ............................................................................................. 6
  II.   Assignment ........................................................................................................ 6
     A.   *Suit/file assignment to counsel* ............................................................................6
     B.   *Acknowledgement of receipt of assignment* ..........................................................7
     C.   *Initial case evaluation & budget* ..........................................................................7
     D.   *Pleadings, including third party complaints, cross-claims and counterclaims* ..................7
     E.   *Defaults* .....................................................................................................7
     F.   *Punitive damages and bad faith* ...........................................................................8
     G.   *Coverage* ....................................................................................................8
  III.  Reporting, Discovery, and Case Management ........................................................ 8
     A.   *Required documentation* ...................................................................................8
     B.   *Mutual action plan (MAP)* ................................................................................9
     C.   *Propounding written discovery* .........................................................................9
     D.   *Responding to discovery requests* ......................................................................9
     E.   *Experts and independent medical exams* .............................................................10
     F.   *Medical records* .........................................................................................10
     G.   *Depositions* ...............................................................................................11
     H.   *Dispositive motions & legal research* ..................................................................11
  IV.  Resolution and Trial ......................................................................................... 12
     A.   *Arbitrations/alternative dispute resolutions* ..........................................................12
     B.   *Settlement conference and pretrial conference, including attendance by a representative* ..........12
     C.   *Negotiation, settlement and structured settlement* ..................................................12
     D.   *Trial* ........................................................................................................13
     E.   *Appeal* ......................................................................................................13
     F.   *Closing the file* ............................................................................................13

Summary of Deadlines and Timeframes ..................................................................... 14

Counsel Billing, Retention, and Assignment Policy for Liability & Workers' Compensation Cases
........................................................................................................................... 16

  Sedgwick CMS Counsel Billing, Retention, and Assignment Policy ............................. 16
  Third Party Administrator ........................................................................................ 16
  Insurance and Other Information ............................................................................. 16
  The Billing Procedure ............................................................................................. 16
  The Billable Amount ............................................................................................... 17
     A.   *Fees* ..........................................................................................................17
     B. Staffing ...................................................................................................17
     C. Experts and consultants ..............................................................................18
     D. Expenses .................................................................................................18
  Billing Format ........................................................................................................ 20



*Practice makes perfect*

Termination of the Counsel Relationship/Transfer of Files.................................................... 21
Additional Information and Electronic Bill Review.................................................................. 21
Audits ...................................................................................................................................... 21
VI.    Attachments .................................................................................................................... 22

Attachment A(1) .......................................................................................................................... 23
   Suit Assignment Letter – Liability ........................................................................................ 23

Attachment A(2) .......................................................................................................................... 26
   Counsel Assignment Letter – Workers' Compensation......................................................... 26

Attachment B ............................................................................................................................... 29
   Initial Case Evaluation............................................................................................................ 29

Attachment C ............................................................................................................................... 31
   Mutual Action Plan (MAP)...................................................................................................... 31

Attachment D ............................................................................................................................... 33
   Deposition Report................................................................................................................... 33

Attachment E ............................................................................................................................... 35
   Arbitration/Court Conference Report.................................................................................... 35

Attachment F................................................................................................................................ 37
   Pre-Trial Report ..................................................................................................................... 37



Practice makes perfect

# Sedgwick CMS Litigation Management Guidelines Overview

It is the mission of the Sedgwick CMS team to partner with our clients and counsel to efficiently, proactively, and resourcefully manage liability and workers' compensation matters to obtain the best results, within budget and within the parameters of all applicable laws, codes, and regulations. Sedgwick CMS prides itself on providing customized, innovative claim services to obtain better results. Therefore, while these guidelines serve as a framework, they define the minimum and not the limits of our efforts. Sedgwick CMS' goal is to exceed our clients' expectations for a full and quality defense. Sedgwick CMS recognizes counsel's ethical duty to provide independent and vigorous representation and legal advice to their clients. Nothing contained herein is intended to limit those duties. At the same time, it is our goal to be an integral and active participant in that process.

It is expected that communication between Sedgwick CMS, counsel, and the client will lead to a mutually agreed strategy for each case. Sedgwick CMS will not abandon cases to counsel, but instead actively and aggressively manage assignments to counsel.

Sedgwick CMS is committed to taking the appropriate cases to trial and verdict. However, industry wide statistical analysis shows that the vast majority of cases are resolved by other means (i.e. settlement, dispositive motion, tender to another party). Therefore, litigation management should focus, as early as possible, on the preferred method of resolution and a strategy in order to achieve closure in the most efficient, timely, and economical manner. This would include identifying what questions exist to reach a decision point and a mutual strategy to have those questions answered as quickly and inexpensively as possible.

Sedgwick CMS expects counsel to employ state-of-the-art technology and that counsel will use e-mail and electronic transmission of documents, taking the necessary steps to protect confidentiality and allowable privileges.

Because Sedgwick CMS customizes its services, counsel should make every effort to be aware of and comply with litigation related Claim Service Instructions (CSI's) unique to each client.

Counsel will submit litigation budgets at the outset and throughout the life of a case. This budget will provide an estimate of the costs and expenses involved in performing litigation tasks and handling a case to its conclusion.

Counsel will report and communicate in a timely manner with Sedgwick CMS at designated points during the life of the case. This will be done within set time frames and formats as specified within the Litigation Expectations of Defense Counsel & Counsel Billing, Retention, and Assignment Policy.

Counsel will promptly provide copies of the appropriate documentation to both Sedgwick CMS and/or the client, as the matter requires, so that informed and timely decisions can be made in each case.

Counsel is retained in each case due to their specialized training, experience, and knowledge. It is expected that counsel will provide opinions on liability, damages, strategy, and resolution at the earliest appropriate time.

It is expected that counsel will not incur costs or make significant decisions without discussion, approval, and mutual agreement with Sedgwick CMS.





*Practice makes perfect*

Counsel is expected to follow and comply with the Sedgwick CMS billing policy.  This includes assigning the appropriate person to perform each task and having an appropriate division of labor to minimize expense.

Counsel should be aware of all possible methods of risk transfer and be prepared to aggressively pursue them taking into account the client's special business relationships.

While this document provides an overview, the details and backup information are contained in the attached:

- Sedgwick CMS Litigation Expectations of Defense Counsel
- Counsel Billing, Retention, and Assignment Policy



Practice makes perfect

# Sedgwick CMS Litigation Expectations of Defense Counsel

## Introduction

Sedgwick CMS' Litigation Expectations of Defense Counsel are guidelines for handling matters assigned to counsel. These guidelines are applicable to both workers' compensation and liability cases. Therefore, throughout this document, references to "suits" also are intended to include those files sent to counsel in both workers' compensation and liability matters where a lawsuit has been filed, as well as those matters that are not formally in suit or that involve administrative proceedings unless counsel is otherwise instructed. Limited assignments (drawing up settlement papers, appearing at isolated hearings, etc.) or designated assignments may be exempt from these procedures if so agreed in advance. Sedgwick CMS prides itself on providing customized, innovative claim services to obtain better results and it is therefore intended that it may be more cost-effective to provide the flexibility to handle certain matters outside of this program if deemed appropriate by Sedgwick CMS. Furthermore, if counsel believes that any part of these guidelines are inappropriate, inapplicable, or would not be in the best interest of our mutual client/customer, immediately address your concerns with a Sedgwick CMS representative. To be valid, any exceptions and/or changes must be agreed to and confirmed in writing with a Sedgwick CMS representative.

This document is one part of the overall Sedgwick CMS litigation management program, and is to read in conjunction with the Sedgwick CMS Counsel Billing, Retention, and Assignment Policy.

## I.   Conflict of Interest

Sedgwick CMS expects counsel to represent our shared clients with the utmost loyalty and honesty, and to avoid even the appearance of impropriety in the counsel-client relationship. At the outset, we expect our clients' law firms to have an accurate system in place to screen for potential conflicts of interest. If a conflict of interest becomes apparent or develops at any point in the litigation, please inform us immediately so that, if necessary, we may manage the smooth transfer of the lawsuit to another uncompromised law firm. Our paramount concern is that the quality of our clients' defense is not jeopardized at any time or for any reason. Requests to waive any conflict of interest must be made in writing to the Sedgwick CMS claims examiner, who will confer with the client before providing a response.

## II. Assignment

### A.  Suit/file assignment to counsel

In every new suit assignment to counsel the Sedgwick CMS representative will provide counsel with an assignment letter. The letter will at a minimum provide a summary of the pleadings, a brief description of the facts and investigation known to date, a summary of the damages claimed, a preliminary evaluation of both the liability and damages, a preliminary resolution strategy for the case with specific issues which need to be resolved so that case can be ready for resolution, a listing of any specific CSI's that affect litigation, and a request for a budget. The assignment letter will follow the format contained in Attachment A(1) for liability matters or Attachment A(2) for workers' compensation matters.





*Practice makes perfect*

### B. Acknowledgement of receipt of assignment

Within 10 business days the assigned counsel should email the Sedgwick CMS representative to acknowledge receipt of the case.

### C. Initial case evaluation & budget

Within 10 business days of the receipt of the lawsuit, the assigned counsel will contact the Sedgwick CMS representative by telephone to have an initial case discussion.  This discussion will include, at the outset, an initial evaluation of whether the case should settle or try based upon information currently known.  Any unique facts or circumstances that may differentiate this case from others should also be discussed.  Based upon this initial discussion both parties will agree upon future actions, who will accomplish the actions, deadlines for completion, and a timeframe to reconvene and reevaluate the claim.

As soon as practical, but no later than  10  business days after the initial phone discussion, counsel will provide a concise Initial Case Evaluation (ICE), following the format contained in Attachment B.  The ICE shall summarize activities to occur during the first 90 days of the file, unless a different period is agreed to with the Sedgwick CMS representative.

At the same time the ICE is submitted counsel will submit a budget of estimated legal fees and expenses.  The initial budget shall be in two parts.  The first part will contain an estimate of legal fees and expenses to be incurred during the first 6 months of the litigation.  The second part will contain counsel's best estimate of the total legal fees and expenses that would be incurred during the life of the litigation, up to (but not including) the start of trial.  Both budgets should include activities not only to be conducted by counsel but also by other counsel or third party, and activities mandated by the court.  Any foreseeable legal cost or expense not included within the 6 month budget will not be reimbursed to counsel.

### D. Pleadings, including third party complaints, cross-claims and counterclaims

Respond to pleadings pursuant to the rules in your jurisdiction.  However, do not pursue any third party complaint, cross-claim, or counterclaim without the express authority of the Sedgwick CMS representative.  The client may have special business relationships to consider before making a legal claim against an individual or entity.

If we do approve the pursuit of such a claim, we will want counsel's recommendation on whether to pursue the claim in the same action and forum in which the original complaint is filed, whether to pursue the claim separately and, if so, where and when to move forward.

Often we will suggest an initial attempt to resolve the dispute on an informal basis (such as by producing an indemnity agreement or contract).  If that is not successful, provide an advance courtesy copy of the pleading you intend to file if an agreement cannot be reached.

### E. Defaults

In the unlikely event that a default against a client occurs, immediately notify the Sedgwick CMS representative so that we can alert the client.  We will want your recommendation on procedure and strategy for opening a default in your jurisdiction.





*Practice makes perfect*

## F. Punitive damages and bad faith

Where punitive damages are alleged in the complaint, every effort will be made to dispose of them as early in the litigation as possible. We prefer this to be completed through a voluntary withdrawal by opposing counsel or, if need be, by way of motion to dismiss or by summary judgment.

When punitive damages are alleged, counsel will at the outset, assess the issue in your initial evaluation. The evaluation should also outline the procedural process in your jurisdiction (e.g., does the jury consider punitive damages in the plaintiff's case-in-chief?; does the judge consider punitive damages after the jury renders a verdict?), your analysis of what conduct may give rise to punitive damages in your jurisdiction, plus your initial evaluation of plaintiff's success in recovering punitive damages based on a percentage (e.g., 50-50%).

Any allegations of bad faith also require the above analysis. When an allegation of bad faith has been raised, discuss with the Sedgwick CMS representative to determine what, if any, steps should be taken by defense counsel and if counsel identifies any conflict of interest in defending that allegation.

## G. Coverage

On those litigated cases where coverage issues arise, promptly identify concerns to the Sedgwick CMS representative, as permitted based on counsel's ethical obligation to your client. If it is believed that there is a conflict of interest and need to withdraw representation, we will count on counsel to promptly identify the conflict and work with us to ensure the smooth transition of the file to new counsel if required.

# III. Reporting, Discovery, and Case Management

Your clients and Sedgwick CMS representatives need sufficient advance notice of key events and deadlines in order to make sound decisions. We operate with a teamwork approach to litigation under a partnership with our client and your law firm. Therefore, we will often need to consult with several people on a decision. We therefore require full compliance with the reporting requirements set forth herein.

Sedgwick CMS expects counsel to employ state-of-the-art technology, and expects that counsel will use e-mail and electronic transmission of documents whenever possible, taking steps to protect confidentiality and allowable privileges.

While Sedgwick CMS will make every effort to respond timely to all correspondence, it is the responsibility of counsel to diary and follow-up for responses to time-sensitive communications.

## A. Required documentation

Counsel shall, as a matter of course, provide copies of the following documents to the Sedgwick CMS representative (and to the client if so instructed), unless otherwise agreed:

- Answers, amended pleadings, cross-claims, counterclaims, and 3rd party complaints
- Dispositive motions filed by or against the client with replies and responses
- Medical or liability expert reports by any party
- Medical records and significant damage documentation
- Answers to interrogatories/bill of particulars





*Practice makes perfect*

- All court orders and judgments

- Settlement/closing documents, including releases, stipulations of dismissal, notice of discontinuance, etc.

- All documents required by these guidelines

## B. Mutual action plan (MAP)

Within 90 days of the suit assignment, counsel and the Sedgwick CMS representative shall discuss the case, and counsel shall prepare a Mutual Action Plan (MAP), which may follow the suggested format contained in Attachment C. MAPs should be amended whenever there is a substantial change in the facts, the liability or the valuation of the case, but in no instance shall it be longer than 6 months from the date of the preceding MAP. Each MAP shall be accompanied by a budget containing counsel's estimated costs and expenses to be incurred during the following 6 months. If counsel believes that the "overall" budget previously submitted had changed due to circumstances, discovery, etc., counsel should resubmit that "overall" budget as well.

## C. Propounding written discovery

Sedgwick CMS prides itself in customizing its approach to each client's litigation to provide the best results at the most reasonable expense. We expect the same customized approach to litigation from our clients' law firms.

If you determine, as you frequently will, that a particular case requires you to propound written discovery, we expect that you will tailor your standard interrogatories and document request to the case at hand, as appropriate.

No less than 30 days before the expiration of the discovery deadline, contact the Sedgwick CMS representative to recommend any further discovery needs and any possible extensions of discovery that may be necessary.

## D. Responding to discovery requests

The Sedgwick CMS representative should be the starting point for direction and assistance in drafting proposed responses, since in most cases we will have already investigated the claim.

Discovery requests including initial, supplemental, and informal requests, together with your proposed responses in final draft form, should be sent to either the Sedgwick CMS representative or to the client, depending on the specific case and based on a discussion with the Sedgwick CMS representative. Counsel should make every effort to supply and prepare draft responses to all discovery requests, as completely as possible, utilizing the file materials and investigation conducted to date, before sending. If counsel is producing documents, please specify a description of the documents, as opposed to "see attached."

Please allow Sedgwick CMS and/or the client at least 14 days before the discovery response deadline to respond to your request.





*Practice makes perfect*

## E. Experts and independent medical exams

### 1. Experts

Counsel must receive prior authority from the Sedgwick CMS representative to retain an expert, consultant, or investigator. Counsel will discuss the desirability of and necessity for retaining a particular type of expert early in the life of the file, particularly in those jurisdictions with a "fast track" court system. As long as we are incurring the expense of the retention, it may be advisable to retain the expert early on in the litigation to assist in the discovery process.

In addition to having our own expert database, we will look to your firm to provide us with a recommendation for the best available expert in a cost range appropriate to a particular file. Additionally, many of our clients have experience with certain types of claims, so they should also be included in the expert selection process. We will schedule the expert, copy and forward the documents, and pay the bills for services directly unless the firm must do so directly to protect a privilege or unless otherwise agreed.

### 2. Independent Medical Examinations

Independent Medical Examinations (IMEs) are a subset of expert opinions. As with any expert, counsel must receive prior authority from the Sedgwick CMS representative to retain a medical expert. Prior to our scheduling a medical review of records or defense medical examination, counsel and the Sedgwick CMS representative will coordinate to ensure that all relevant medical information is sent to the IME, preferably by the Sedgwick CMS representative. If allowed by local practice and in the appropriate case, after the expert reviews the documents and prior to scheduling the examination, counsel and the expert should discuss whether an examination would be strategically helpful, with a report to the Sedgwick CMS representative on the outcome of that discussion.

We will schedule the expert examination or review, copy, and forward the documents and pay the bills for services directly unless the firm must do so directly to protect a privilege, or unless otherwise agreed.

Regardless of the type of expert witness, within 14 days of an expert's written evaluation, provide a written report to Sedgwick CMS with a copy and overview of the expert's opinion and, most importantly, how that will effect outcome and necessary next steps.

## F. Medical records

Many cases involve medical and injury issues that require the procurement and review of plaintiff's medical records. As with every other aspect of the litigation, we want to gather and review the records in the most efficient and economical fashion. The following are some general guidelines. For exceptions, contact your Sedgwick CMS representative.

- Use authorizations signed by the plaintiff, when appropriate

- We rely on counsel to ensure that we are obtaining records in the most economical manner possible, appropriate to the litigation issue

- We are only interested in detailed summaries of the medical records to buttress counsel's analysis of what the records mean in terms of case evaluation or necessary further action (e.g., take surveillance, obtain IME, etc.)



*Practice makes perfect*

- If obtained medical records add nothing new to the evaluation of the case, that fact should be noted without the necessity of re-summarizing or resending the information

## G.  Depositions

It is expected that a there will be a strategic approach to depositions.  For example, all depositions taken will have add value to the case and should being taken to further the agreed upon case strategy.  Provide recommendations to the Sedgwick CMS representative whether to take a deposition.  Ordinarily, the plaintiff's deposition will be necessary, with proper timing being critical.  We will want counsel's evaluation of the plaintiff as a witness and to lock in plaintiff's version of the accident early in the litigation.  However, we also will want to ensure that we can update ongoing injury and damage information.  If allowed by local rules, counsel will stipulate with opposing counsel to allow an updating deposition as appropriate.

Counsel will discuss beforehand with the Sedgwick CMS representative any special circumstances, such as an out-of-town or videotape deposition.  We prefer counsel to take depositions in person, where practical, rather than on the telephone.  We consider the ability to assess the credibility of the witness and how well they will likely present at trial an essential element of every deposition.

If the deposition testimony materially changes the liability or damage issues in the case, telephone the Sedgwick CMS representative within 3 business days to discuss the testimony and necessary next steps.  Within 10 business days of a deposition, provide a written report to Sedgwick CMS with an overview of the deposition, an evaluation of the witnesses testifying, and most importantly, how the testimony effects the case evaluation, the case outcome, and any necessary next steps.  The deposition report may be prepared in the suggested format contained in Attachment D.

The Sedgwick CMS representative may want a copy of deposition transcripts, on a case by case basis.  If the transcripts are requested, counsel should supply them in mini-transcript format.  We rely on counsel to select the most accurate court reporters at the best rate.

## H.  Dispositive motions & legal research

Dispositive motions, such as motions for judgment on the pleadings, 12(b)6 motions, summary judgment motions, and the like should be pursued as early in the litigation as is strategic and practicable.  If counsel recommends such a motion, discuss the grounds for the motion with the Sedgwick CMS representative.  No less than 30 days before the expiration of the discovery deadline, contact the Sedgwick CMS representative to discuss strategy regarding filing a dispositive motion.

Counsel must obtain approval to conduct legal research that will exceed two (2) hours in total time.  Sedgwick CMS expects that counsel is familiar with the case law in the applicable area of expertise and will not agree to pay for researching issues with which counsel should already be familiar, except to ensure that case law is current.  We also expect the use of a brief bank, and will only pay to extend or revise prior research to make it current.

Copies of all dispositive motions should be promptly forwarded to the Sedgwick CMS representative.

If a court hearing results in rulings which materially affect the client's position in the case, contact should be made with Sedgwick CMS immediately.  Within 10 business days after a hearing, provide a written report to Sedgwick CMS with an overview of the hearing and, most importantly, how that will affect outcome and necessary next steps.





Practice makes perfect

# IV. Resolution and Trial

## A. Arbitrations/alternative dispute resolutions

Sedgwick CMS supports the Alternative Dispute Resolution (ADR) concept. ADR should be explored whenever the case can be heard and resolved more quickly or economically than via the traditional court system, or whenever ADR may prove to be strategically sound. Consideration should be given to ADR methods which will result in a cap of damages where there is a possibility of a potentially excessive verdict or where it is particularly difficult to prevail in a given forum.

In no event should counsel propose or agree to ADR, high/low agreements, or damage caps with opposing counsel, the court, or the client without prior approval from the Sedgwick CMS representative. Counsel should be prepared to recommend proposed selection of the arbitrator/mediator and discuss the fees involved. In situations where ADR is mandatory, please immediately advise the Sedgwick CMS representative upon scheduling of the proceeding.

At least 60 days before the first settlement conference, mediation, or arbitration discuss with the Sedgwick CMS representative a plan for proceeding, with a revised MAP, if needed. Within 10 business days after a hearing/award, provide a written report to Sedgwick CMS with an overview of the hearing/award, and most importantly, how that will affect outcome and necessary next steps. This report may be prepared in the suggested format contained in Attachment E.

## B. Settlement conference and pretrial conference, including attendance by a representative

The Sedgwick CMS representative can personally handle many of the less serious cases by participating on the telephone or on telephone standby. For those cases where the rules or the court require or the potential exposure or facts of the case warrants, a Sedgwick CMS representative may participate in person. In the alternative, a client representative with appropriate settlement authority may attend as deemed appropriate. Counsel will discuss this issue on a case-by-case basis with the Sedgwick CMS representative.

Within 10 business days of a settlement or pretrial conference, provide a written report to Sedgwick CMS with an overview of the hearing, any settlement figure placed on the case, necessary next steps, and how the outcome may be affected. This report may follow the format contained in Attachment E.

## C. Negotiation, settlement and structured settlement

Sedgwick CMS believes that only one person should negotiate settlement with the plaintiff. For the majority of cases, the Sedgwick CMS representative will be the negotiator. For those cases where we agree that a case will be better served by counsel negotiating settlement, it is imperative that counsel never conduct negotiations or imply an offer or settlement amount until obtaining prior authorization, confirmed in writing, from the Sedgwick CMS representative.

The use of structured settlements is encouraged in appropriate cases. Sedgwick CMS and many of the insurance carriers we deal with have relationships with structure brokers who have associations with national A+ rated companies. If counsel is considering a structure, discuss it with the Sedgwick CMS representative. In no instance should a structured settlement broker be retained without first obtaining the authority of the Sedgwick CMS representative.





*Practice makes perfect*

Regardless of who negotiates settlement, counsel will be responsible for confirming in writing the settlement amount, handling the execution of the appropriate release, ascertaining the correct identity of the proper payee (including any lien holders, i.e. Medicare, workers' compensation, etc.), obtaining all tax identification information, jurisdiction specific information, requesting a settlement check from us, and closing out the docket.  We will forward the settlement check to counsel for safe keeping until all necessary paperwork is received.  It is expected that cases will be closed by counsel as soon as practicable.

## D.  Trial

As soon as a case is first listed for trial, or within 90 days before trial (whichever is less), give notice to the Sedgwick CMS representative with a pre-trial report in the format contained in Attachment F.  The timing of the report may be modified based on jurisdictional requirements/timeframes, with written agreement of the Sedgwick CMS representative and counsel.

We will want to discuss the decision regarding which counsel will try the case and whether a case requires multiple counsels at trial.

As appropriate during trial, pursue motions for non-suit at the end of plaintiff's case-in-chief, motions for directed verdict, motions for judgment notwithstanding the verdict, etc.

When a case is on trial and to the extent possible, counsel will make an oral report twice a day to the Sedgwick CMS representative on what transpired in court that day.  For example, counsel should state the trail's effect on strategy or outcome, counsel's recommendation on whether to continue with trial or attempt settlement with valuation, or if the case has concluded, a report on the verdict.  If the presence of a Sedgwick CMS representative would be helpful to the overall trial or evaluation of the case, recommend specific portions of the trial which would be the most beneficial to observe.

Immediately upon entry of a verdict, counsel shall notify the Sedgwick CMS representative and, within 24 hours of a verdict, counsel shall submit a written report on the trial outcome and the initial evaluation on the existence of any appealable issues.

## E.  Appeal

Within 24 hours of an adverse verdict, counsel will make the initial recommendation on whether to appeal.  Do not take any appeal without prior approval from the Sedgwick CMS representative.  We will make a decision, along with the client, regarding whether to continue with the litigation, to pay the verdict, or further pursue settlement, taking into account counsel's recommendation regarding chance of success on appeal, effect of precedent on future cases, and additional anticipated cost.

Counsel will notify the Sedgwick CMS representative within 24 hours of an appeal by another counsel.

## F.  Closing the file

Within 45 days, counsel will complete closure of files that have settled or have received a final judgment (whether by verdict, dismissal, order, etc.) and send the final bill.  In some instances exceptions to the 45 days requirement will exist, such as where there is a dispute over language in the release, inability to locate the plaintiff to sign the release, etc.  If a case will not close within 45 days, counsel will discuss the reasons with the Sedgwick CMS representative.





Practice makes perfect

# Summary of Deadlines and Timeframes

The following is a summary of many of the various deadlines and timeframes set forth in this document, unless otherwise agreed.

- Within 10 business days of receipt assignment from the Sedgwick CMS representative, counsel will acknowledge receipt via e-mail

- Within 10 business days of receipt of the assignment, counsel will initiate a telephone discussion with the Sedgwick CMS representative to discuss the case and establish an initial plan

- Within 10 business days of the initial telephone discussion, counsel will prepare and submit the initial case evaluation and budget

- Within 90 days of the assignment, counsel will discuss and prepare a Mutually Agreed Plan (MAP) and budget

- No longer than every 6 months, a new discussion must take place between counsel and the Sedgwick CMS representative and a MAP with budget will be submitted

- Within 30 days of the expiration of discovery, counsel is to contact the Sedgwick CMS representative to discuss and recommend:

  - future discovery needs

  - additional depositions

  - filing dispositive motions

- Allow Sedgwick CMS representatives and/or client a minimum of 14 days to respond to any discovery requests or deadlines

- Within 14 days of expert's written evaluation, counsel will provide a written report along with a copy of the expert report and an evaluation on how it affects the case

- Within 3 business days of any deposition which materially changes a liability or damage issue, counsel will telephone and discuss with the Sedgwick CMS representative

- Within 10 business days of deposition, counsel will provide a written deposition report

- Within 10 business days of any hearing on a dispositive motion, counsel will provide a written report on the outcome

- At least 60 days before a settlement conference, mediation, or arbitration counsel will discuss a plan with the Sedgwick CMS representative and counsel shall prepare a new MAP if needed

- Within 10 business days of a hearing or ADR, counsel will provide a written report to Sedgwick CMS

- As soon as a case is listed for trial or within 90 days (whichever is less), counsel will prepare and submit a pre-trial report, unless agreed otherwise

- Immediately upon entry of a verdict, counsel will notify the Sedgwick CMS representative

- Within 24 hours of a verdict, counsel will notify the Sedgwick CMS representative in writing of the outcome





*Practice makes perfect*

- Counsel will notify the Sedgwick CMS representative within 24 hours of another party taking an appeal

- Within 45 days of a settlement or judgment, counsel will complete closure of the file



*Practice makes perfect*

# Counsel Billing, Retention, and Assignment Policy for Liability & Workers' Compensation Cases

## Sedgwick CMS Counsel Billing, Retention, and Assignment Policy

The Sedgwick CMS Counsel Billing, Retention, and Assignment Policy establishes the boundaries of legal representation, in keeping with our goal to manage the highest quality legal services, commensurate with the severity of the case, and within an agreed upon budget. The policy is intended to encourage counsel to zealously represent the interests of the client, our customer, by proactively providing all reasonable and necessary legal representation.

In keeping with our flexibility to customize our work for each client, this policy may be modified, where necessary, to adequately represent the interests of the client/customer. If you believe, in any matter assigned to your firm, that any part of this policy is inappropriate and/or would not be in the best interest of our mutual client/ customer, immediately address your concerns with a Sedgwick CMS representative. To be valid, any changes must be agreed to in writing with a Sedgwick CMS representative. However, changes to previously agreed to billing rates or alternative billing arrangements must be approved by the Sedgwick CMS National Litigation Practice Leader or his designee, which may be a Sedgwick CMS representative in a local office.

The Sedgwick CMS claim representative and counsel work together to ensure efficiently delivered quality legal services. By accepting an assignment from Sedgwick CMS, your firm agrees to abide by the provisions of this policy or obtain a written waiver as indicated above.

## Third Party Administrator

By accepting the assignment, the law firm acknowledges that Sedgwick CMS is acting solely as the third party administrator for the client in retention of the firm's services and payment of their legal bills. Sedgwick CMS assumes no independent responsibility nor makes any guarantees for payment of any fees or expenses incurred in defense of the litigation.

## Insurance and Other Information

By agreeing to accept assignments, the law firm agrees to carry appropriate professional, general liability, and automobile insurance in acceptable amounts naming Sedgwick CMS as an additional insured, and also agrees to provide to Sedgwick CMS proof of insurance and certificates of insurance verifying the above requirements.

## The Billing Procedure

Submit to the file handler all invoices on a **quarterly** basis **from the date of the assignment**, unless otherwise agreed or allowed by CSI's. We will reject bills submitted more frequently or by calendar quarter. We will not pay for time or expense entries over six months old. Within 45 days of file closure you must send your final bill. Bills submitted more than 45 days after file closure will be rejected.



*Practice makes perfect*

## The Billable Amount

We pay for actual time spent in .1 intervals (no minimums).

### A. Fees

Sedgwick CMS will pay only the hourly rates or alternative fee arrangements that we have pre-approved in writing. Any rate increase that we approve will only apply to cases assigned after the date of the approval. We will not pay rates or arrangements in excess of the most favorable rate that you charge to similarly situated clients. We will not honor unilateral rate increases. We will not allow increased billing rates for cases in litigation. We invite you to submit proposals for alternative billing arrangements beyond the traditional hourly billing concept. We are happy to explore flat fees per case, flat fees per task, etc. so long as the arrangement does not jeopardize our goal to achieve quality, efficient, and cost-effective legal services for our customers.

### B. Staffing

It is expected that the vast majority of cases will be handled by one counsel. If you believe that a case warrants more than one counsel and one paralegal to work it, you must obtain pre-approval.

Although we assign cases to a specific counsel rather than to the firm as a whole, we will permit a counsel who bills at a lower rate, such as an associate, to perform routine tasks, as appropriate, unless a Sedgwick CMS representative states otherwise.

We expect that the counsel to whom we assign the case will handle key events, such as key depositions and key hearings, as well as take the lead at trial, depending on the magnitude of the case. However, we recognize that unavoidable situations may arise when the assigned counsel will be unavailable. Permission should be sought from a Sedgwick CMS representative before the substitution of another counsel takes place. Assigned staff must remain on the matter until conclusion, unless we authorize a change. Staff must have the necessary experience and skills for the matter assigned. Staff must perform tasks appropriate to their experience and billing rate.

**<u>Sedgwick CMS will not pay for:</u>**

- Staffing inefficiencies caused by the unavailability of personnel, including but not limited to review time by substitute counsel
- More than one attendee charging for an event, such as a deposition, trial, etc.
- More than one attendee charging for interoffice conferencing
- Form discovery or templates for pleadings, discovery or motions, however we will pay for a biller's time actually spent customizing them to the file at hand
- Trial preparation undertaken when trial is not imminent
- Paralegal work performed by counsels and associate work performed by partners
- Time spent organizing a file
- Reworking a less than adequate work product, as opposed to adding new ideas





Practice makes perfect

- Summer associate time, unless at an agreed upon substantially reduced rate and then only for pre-approved specific tasks, with your assurance as to appropriateness, quality of work, and fiscal responsibility. In no event will we pay to educate a summer associate

- The use of temporary or per-diem counsels without prior approval

- Review time necessitated by the departure or reassignment of a handling counsel

## C. Experts and consultants

We must pre-approve the retention of experts, independent medical examiners, consultants, and the like, as well as their fee structure. We will pay the bills for such services directly, unless the firm must pay the bills directly to protect a privilege.

## D. Expenses

Counsel is expected to pay small expense items (i.e., $100 and less) and should include those in normal quarterly billing. However, counsel may submit a billing to us when expenses exceed $500.00 in the aggregate.

Sedgwick CMS will reimburse actual costs for expenses without premiums or mark-ups. You must include supporting documentation with your bill for any expense over $50.00.

**We will not reimburse the following amounts unless the claim representative specifically agrees in advance:**

- Overhead including, but not limited to, rent; conference rooms; equipment rental; utilities; computer equipment; software; books/periodicals; seminars; refreshments during meetings; local telephone or faxes; postage; office supplies; incoming or outgoing faxes; non-counsel/ non-paralegal staff; secretarial services; time spent proofreading; date stamping; collating; vela binding; copying; faxing; scheduling; calendaring; making travel arrangements; opening/ closing matters; managing clerical work; staff overtime; meals while not traveling

- Secretarial/ clerical functions. These functions include, but are not limited to, typing and transcribing; scheduling and arranging for meetings, depositions, examinations; taking telephone messages and placing calls for counsels; calendaring, conflict checking, date-stamping, setting up files; arranging for pick-ups and deliveries; organizing material for storage; updating lists; filing and re-filing; making travel arrangements; preparation of record copy service forms; copying time; and organizing mailings

- Secretarial work performed by a paralegal

  - Paralegal work performed by counsel will only be reimbursed at the paralegal billing rate

- Word processing

- Case management/ litigation systems

- Local telephone, long distance telephone, facsimile charges, and long distance fax charges (incoming or outgoing)

- Air freight, couriers, and messengers unless essential to meet a deadline and with justification provided in the invoice. Last minute work should not become the routine





Practice makes *perfect*

- Routine postage

- Goodwill meetings to market your firm's services, rather than to perform actual legal work on pending matters

- Photocopy charges in excess of the best available rate, whether by a national copy service, a local copy service or your firm. In no event is it permissible to mark up copying charges. It is our expectation that copying costs will not exceed $.10 per page

- General claim inquiries not related to a specific claim, without prior approval

- Budget overruns, unless approved by claim representative

- More than one biller at an internal conference

- Use of multiple personnel at a function unless pre-authorized

- Excessive review, proofing, or editing of written documents, such as motions, memoranda, etc.

- Time spent billing, preparing invoices, negotiating billing, or processing third-party invoices

- Reviewing and analyzing conflicts

- Reviews by a new counsel if the case is internally transferred or higher rates for a replacement counsel, unless pre-approved

- More than the appropriate lengths of time for each task, and in no event will we pay to "groom" a junior counsel or new employee

- Local travel (defined as less than 50 miles roundtrip)

- Deposition and expert witness expenses, if not pre-approved, except that the deposition of the plaintiff is a key event and is pre-approved

- More than two hours of cumulative research per topic (including computerized research) without advance approval, with the research results (cases, memoranda, etc.) forwarded to a Sedgwick CMS representative, but in no event will we pay for elementary research on topics that should be within the areas of expertise of an experienced defense firm

- Fees for on-line research services (i.e., Westlaw, Lexis), although we will pay the counsel time spent performing such research.

- Non-local travel time, unless pre-approved and a separate billing entry details destination and duration of travel

- Non-local travel, unless pre-approved by a Sedgwick CMS representative

In addition:

- Time and travel charges should be pro-rated, if for multiple clients or cases

- Air travel should be coach class

- Hotel and meal charges should be reasonable





*Practice makes perfect*

## Billing Format

The billing format is designed to ensure that the legal services you render and bill are in a format with sufficient detail to allow us to review and, if appropriate, pay the bill easily and quickly.

We cannot stress enough the importance of detail. The more that we understand about the work that you performed, the less likely we are to have time-consuming, payment-delaying questions. Detailed entries and expense explanations reduce the necessity for adjustments. However, we recognize that your law firm may already utilize time and billing software programs, which generally will provide billing information acceptable to us, so long as the requirements regarding specificity are followed. Additionally, to the extent possible, bills should utilize the Uniform Task Based Management System (UTBMS) codes and format.

All invoices must include:

- Name of Sedgwick CMS claim examiner, case name, and claim number

- The firm's address and federal tax identification number

- The billing period involved

- The name or initials of the professional performing the service

- A detailed description of each task performed in single-activity time entries, including the date it was performed, who performed it, that person's billable rate, the time spent and the charge for each task

- A detailed description of all work including, but not limited to:

    - The purpose of the court hearing/ conference and name(s) of attendees;

    - Name of Deponent/ interviewee;

    - The specific issue researched

    - The specific non-deposition discovery worked on and the nature of the work performed

    - The specific motion worked on and the nature of the work performed

    - Identity of the materials/ documents reviewed

    - The purpose of extensive review of transcripts (i.e. upcoming deposition or trial)

    - The specific trial preparation performed

    - For office or third-party communications (telephone calls, correspondence, meetings), the identity of the other participant(s) and subject matter(s)

    - Generic descriptions, (including but not limited to review case and issue, phone conversation, meeting, etc) **must** be accompanied by additional specific and detailed explanations, or the bill will be rejected in its entirety

- Accurate billable time in .1 hour increments. Group together activities taking less than .1 hour to accurately reflect total time spent

- For fees or expenses requiring pre-approval, the name of the authorizer and date of the authorization

- For expenses, a detailed itemization of each expense, listed separately, with a copy of the invoice for all expenses over $100.00





Practice makes perfect

- The bill totals should include a summary of the number of hours billed, broken down by biller, the hourly rate, the rank (e.g., associate or paralegal) and the total amount for services rendered

In the event that we dispute a charge, the bill reviewer will notate the reason and amount of any adjustment and send the annotated bill to you.  We will make payment on the portion of the bill that is approved.  Should your firm dispute the adjustment, counsel may make a written request for reconsideration to the file handler, with an explanation of why you believe we should restore the adjustment.  We will make every effort to respond to written requests for reconsideration within 30 days of receipt.  We cannot consider oral requests for reconsideration.

## Termination of the Counsel Relationship/Transfer of Files

In the event that Sedgwick CMS, acting on behalf of the client, requests either a termination of the counsel relationship or a transfer of files to another law firm,  counsel will make the file transfer as quickly and expeditiously as possible.   Unless otherwise agreed in writing, we will not reimburse counsel for any costs or fees associated with the file transfer, including but not limited to fees or expenses for file organization, photocopying of file materials, etc.

## Additional Information and Electronic Bill Review

Sedgwick CMS reserves the right to require additional information with your invoice and/ or that you reorganize the information presented.  For example, we may request that you submit your invoices electronically to Sedgwick CMS or to a vendor of the client's choosing, or that you convert your invoice information so that our systems or the systems of a vendor, can electronically receive it.  When you represent Sedgwick CMS and/ or our customers, you agree to cooperate and comply with such requests at your own expense.

## Audits

With five (5) days' notice, Sedgwick CMS may audit our customer's legal files and/ or your billing records.  If it is your belief that, in your jurisdiction, our audit may destroy a privilege, counsel-client or otherwise, please bring your concern to our attention so that we may arrive at an acceptable solution after consultation with our customer, your client.

To be valid, exceptions to this retention, assignment and billing policy must be in writing and authorized by a Sedgwick CMS representative, however exceptions to billing rates or billing arrangements must be in writing and authorized by the Sedgwick CMS National Litigation Practice Leader or his designee, which may be a Sedgwick CMS representative in a local office.



*Practice makes perfect*

# VI.  Attachments

Attachment A:  Assignment Letters

        (1) Liability

        (2) Workers' Compensation

Attachment B:  Initial Case Evaluation

Attachment C:  Mutual Action Plan

Attachment D:  Deposition Report

Attachment E:  Arbitration/Court Conference Report

Attachment F:  Pre-Trial Report

# Attachment A(1)

## Suit Assignment Letter – Liability

**Name & Address of Counsel**
**Date:**

| | | | |
|---|---|---|---|
| **Claimant Name:** | | **Claim Number:** | |
| **Jurisdiction:** | | **Date Prepared** | |
| **Docket Number:** | | **Claimant Age:** | |
| **Date of Loss:** | | **Claim Type:** | |
| **Client Name:** | | **Claims Examiner:** | |
| **State of Loss:** | | **Client Location:** | |
| **Date Claim Reported:** | | **Sedgwick CMS Office:** | |
| **Opposing Counsel:** (Name, Address, Phone) | | | |

**(The above information is automatically populated from the main screen in JURIS)**

Please find enclosed a copy of suit papers and our file in the above captioned matter. This matter is to be handled according to the Sedgwick CMS Litigation Management Guidelines. If you require a copy of those guidelines, please contact me immediately. You will not be reimbursed for work that is not approved in accordance with those guidelines.

If you have not already done so, please e-mail your acknowledgment of receipt of this suit within 24 hours. Please contact me within 10 days to discuss the assignment and to establish your initial case evaluation.

### Pleadings & Service:

Please file an answer and appear on behalf of _____. Service was made as follows: _____ (*indicate personal service/certified mail/registered agent, etc.*) The pleadings allege _____ (*this should be a concise summary of the pleadings, not a verbatim repetition of what they contain.*)

## Facts & Investigation:

(*This will contain a concise summary of the underlying facts as they are known to this point, based on information from the client, from investigation already conducted, from letters of representation, etc.*)

## Damages/Injuries:

(*This will contain a concise summary of the damages as they are known to this point, including name and age of claimant, injuries claimed, prior medical issues, if known, causation issues, etc.*)

## Preliminary Evaluation of Liability and Damages:

At this point, we estimate the likelihood of liability on the part of our client to be (*likely, possible, remote, probable, etc.*) and include the basis for the opinion, legal theories, etc.

## Preliminary Resolution Strategy:

At this early stage, this appears to be a case to be targeted for (*settlement, mediation, arbitration, trial, etc.*) In order to get this matter to a point of resolution, we need to focus on the following issues for prompt resolution:

1.

2.

3.

4.

(*Here list both the liability and damage questions that must be answered in order to get the case to a decision point. Questions should be specific, and not overly broad, i.e., "Is the client liable?"*)

## Budget:

Please provide, within 10 business days, a proposed budget of legal fees and expenses. Your budget should contain two components:

1. Six month estimate of fees & expenses

2. Estimated fees & expenses up to, but not including, trial

(Your budget should provide some breakdown of expected activities, i.e. discovery, correspondence, motions, etc, or they may use the ABA's UTBMS activity codes)

**Client Service Instructions (CSI):**

(*Here include any specific CSIs that counsel must comply with i.e., who is to be copied, contact information, what is to be sent to the client, etc.*)

**Next Planning Conference:**

We will discuss this matter in order to formulate a Mutual Action Plan (MAP) within the next 90 days.

To the extent possible, all written communication should be through e-mail and documents should be transmitted electronically.  All steps should be taken to protect confidentiality and allowable privileges.

If you have any questions, please contact me immediately.


Very Truly Yours,

# Attachment A(2)

## Counsel Assignment Letter – Workers' Compensation

**Name & Address of Counsel**

**Date:**

| | | | |
|---|---|---|---|
| **Claimant Name** | | **Claim Number:** | |
| **Jurisdiction:** | | **Date Prepared** | |
| **Docket Number:** | | **Claimant Age:** | |
| **Date of Loss:** | | **Claim Type:** | |
| **Client Name:** | | **Claims Examiner:** | |
| **State of Loss:** | | **Client Location:** | |
| **Date Claim Reported:** | | **Sedgwick CMS Office:** | |
| **Average Weekly Wage (AWW):** | | **Compensation Rate (CR):** | |
| **Opposing Counsel: (Name, Address, Phone)** | | | |

Please find enclosed a copy of the pertinent file material in the above captioned matter. This matter is to be handled according to the Sedgwick CMS Litigation Management Guidelines. If you require a copy of those guidelines, please contact me immediately. You will not be reimbursed for work that is not approved in accordance with those guidelines.

If you have not already done so, please e-mail your acknowledgment of receipt of this suit within 24 hours. Please contact me within 10 days to discuss the assignment and to establish your initial case evaluation. Please also place any appropriate state agencies on notice of your representation in this matter.

**Nature of Assignment:**

___ Hearing representation

If checked, please file an answer on behalf of _____ by _____. Service was made as follows: _____

__ Settlement document preparation

__ Other (*provide nature of counsel assignment*)

## Description of Accident:

(*This will contain a detailed description of the accident alleged*)

## Description of Injury:

(*This will contain a detailed description of all injuries alleged including medical diagnosis, treatment, etc.*)

## Facts & Investigation:

(*This will contain a concise summary of the underlying facts as they are known to this point based on information derived from investigative efforts already conducted including determinations regarding compensability on all injuries alleged, subrogation/second injury fund potential, witness information, index information, and pertinent prior claims, medical history, or concurrent medical conditions, etc.*)

## Wage Information:

AWW: $

CR: $

Method of Wage Determination: _____.

## Financial Information:

Total of indemnity payments made to date: $_____-

Dates and type of compensation for which indemnity was paid: _____.

Total medical payments made to date: $_____.

## Opposing Counsel Name, Address and Phone Number:

## Client Service Instructions (CSI):

(*Here include any specific CSIs that counsel must comply with, i.e., who is to be copied, contact information, what is to be sent to the client, etc.*)

## Specific Instructions to Counsel:

(*Any specific instructions to counsel should be recorded here including listing any questions that need be resolved in order to get the case to a decision point.*)

**Subrogation/Third Party Liability:**

(*Counsel is expected to take no action, but identify any subrogation or third party potential, identifying parties, theories of liability, etc.*)

**Budget:**

Please provide, within 10 business days, a proposed budget of legal fees and expenses.  Your budget should contain two components:

1. Six month estimate of fees & expenses:

2. Estimated fees & expenses up to, but not including, trial

(*Your budget should provide some breakdown of expected activities i.e., discovery, correspondence, motions, etc, or they may use the ABA's UTBMS activity codes.*)

**Next Planning Conference:**

We will discuss this matter in order to formulate a Mutual Action Plan (MAP) within the next 90 days.

To the extent possible, all written communication should be through e-mail and documents should be transmitted electronically.  All steps should be taken to protect confidentiality and allowable privileges.

If you have any questions, please contact me immediately.

Very Truly Yours,

# Attachment B

## Initial Case Evaluation

(*To be completed by counsel within 10 days of receipt of initial case discussion.*)

**Sedgwick CMS Claim#:**

**Caption/Case Name:**

**Client Name:**

**Name of Claimant:**

**Venue/Court/Docket #:**

**Date of Loss:**


Dear _____,

This will confirm our initial discussion of _____ regarding this matter.  Please accept the following as our initial case evaluation of the above captioned matter.

**Brief Statement of Facts:**

**Venue/Jurisdiction/Opposing Counsel:** (*Unique facts about the venue, judge, local timeframes, reputation/skill/experience with all opposing counsel, is venue transfer appropriate, is ADR mandatory/ optional, etc.*)

**Liability Analysis:** (*Theories available to plaintiff, counsel's opinion as to probable liability expressed as a percentage including liability on other parties and experts*)

**Available Defenses:** (*Factual/legal defenses available, summary judgment potential, defenses available among/between codefendants/third parties, experts, and comparative/contributory negligence*)

**Injuries/Damages:** (*Claimed injuries and damages, mitigating or aggravating factors, medical specials, lost wages, collateral source issues, credibility of medical experts, issues of causation, etc.*)

**Valuation:** (*Likelihood of liability on the client and other parties, full value of the case, jury verdict value, settlement value for the client, potential for contribution/indemnity/risk transfer, assessment of liability/insurance coverage of other parties, joint & several liability, etc.*)

**Preliminary Resolution Strategy:**  At this early stage, we agree that this appears to be a case to be targeted for (*settlement, mediation, arbitration, trial, etc.*)  In order to get this matter to a point of resolution, we need to focus on the following issues for prompt resolution: (*Here list both the liability and damage questions that must be answered in order to get the case to a "decision point."*)

1.

2.

3.

4.

**Initial Activities to Be Completed:**

| Activity | Due Date | To Be Completed By (claims, counsel, etc.) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Budget:**

1. Six month estimate of fees & expenses:

2. Estimated fees & expenses up to, but not including, trial

(*The budget should provide some breakdown of expected activities, i.e., discovery, correspondence, motions, etc, or they may use the ABA's UTBMS activity codes*)

**Next Conference:**  As agreed, we will discuss this matter in order to formulate a Mutual Action Plan (MAP) within 90 days, or as required.