Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

             - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
             Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363, 365 AND 503 AND BANKRUPTCY RULES 2002, 6004 AND 6006 AUTHORIZING AND APPROVING SALE OF CERTAIN REAL PROPERTY LOCATED IN RICHMOND, VIRGINIA AND THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1

debtors and debtors in possession in the above-captioned
jointly administered cases, the "Debtors") for an order
pursuant to Bankruptcy Code sections 105, 363, 365 and
503 and Bankruptcy Rules 2002, 6004 and 6006
(A) authorizing the Seller to enter into the Agreement
with the Purchaser for Sale of the Property subject to
higher or otherwise better proposals, (B) approving the
Termination Fee in connection therewith, (C) approving
the Bidding Procedures in connection therewith,
(D) approving the Sale and of the Property free and
clear of all Liens; (E) approving Assignment of the
Leases associated with the Property free and clear of
all Liens and (F) granting related relief; and upon the
record of the hearing held on August 4, 2010 (the "Sale
Hearing"); and after due deliberation thereon, and
sufficient cause appearing therefor,

   **IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

   A.     The Court has jurisdiction to hear and
determine the Motion and to grant the relief requested

---

[2]   Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

2

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.     Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.     The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, 365 and 503 and Bankruptcy Rules 2002, 6004 and 6006.

D.     The notice of the Motion and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.     The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property and the Leases.

F.     A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities, including Berkadia and Children's Discovery (together, the "Tenants").

3

G.     The Seller and its professionals marketed the Property and the Leases and conducted a sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Property.

H.     The Termination Fee is fair and reasonable and provides a benefit to the Seller's estate and creditors.

I.     The Seller's payment of the Termination Fee under the conditions set forth in the Motion and the Agreement is (a) an actual and necessary cost of preserving the Seller's estate, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Seller's estate and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that the Purchaser will continue to pursue the Agreement to undertake the Sale of the Property.

J.     The Seller has demonstrated good, sufficient, and sound business purpose and justification

4

for the Sale because, among other things, the Seller and
its advisors diligently and in good faith analyzed all
other available options in connection with the
disposition of the Property and determined that (a) the
terms and conditions set forth in the Agreement, (b) the
transfer to the Purchaser of the Property pursuant
thereto and (c) the purchase price agreed to by the
Purchaser, $2.75 million, is fair and reasonable and
constitutes the highest or otherwise best value
obtainable for the Property.

K.     The Seller has full power and authority
to execute the agreement submitted by DRCC Properties,
LLC (the "Purchaser"), a copy of which is annexed hereto
as Exhibit A, (the "Agreement") and all other applicable
documents contemplated thereby.  The transfer and
conveyance of the Property by the Seller have been duly
and validly authorized by all necessary action of the
Seller.  The Seller has all of the power and authority
necessary to consummate the transactions contemplated by
the Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or

5

approvals, other than those expressly provided for in the Agreement, are required for the Seller to consummate such transactions.

L.    The Agreement and the sale of the Property thereunder were negotiated and undertaken by the Seller and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Seller and the Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

M.    Neither the Seller nor the Purchaser engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

N.    The consideration provided by the Purchaser for the Property is the highest and best offer received by the Seller, and the consideration constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent

6

Conveyance Act, and (c) reasonably equivalent value,
fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Property.

O.    The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

P.    The transfer of the Property to the
Purchaser is a legal, valid, and effective transfer of
the Property, and shall vest the Purchaser with all
right, title, and interest of the Seller to the Property
and the Leases free and clear of all liens, claims and
encumbrances (collectively, the "Liens"), except for
those items defined in the Agreement (and which are
referred to hereinafter) as the "Permitted Encumbrances".

Q.    If the Sale of the Property and
Assignment of the Leases by the Seller were not free and
clear of any Liens, except for the Permitted
Encumbrances, or if the Purchaser would, or in the
future could, be liable for any of the Liens, the
Purchaser would not have entered into the Agreement and

7

would not consummate the Sale, thus adversely affecting the Seller, its estate, and its stakeholders.

R.   The Seller may sell its interest in the Property and the Leases free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale and Assignment are deemed to have consented to the Sale and Assignment pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale and Assignment.

S.   Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, 365(b)(3), the Seller and the Purchaser have demonstrated adequate assurance of future performance by the Purchaser under the Leases.

8

T.    There are no cure obligations due and owing on the Leases under section 365 of the Bankruptcy Code.

U.    There are no outstanding defaults of the Debtors and their estates under the Leases.

V.    Upon the assignment to the Purchaser, the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any further liability thereunder, including for any breach of the Leases.

W.    Based on the foregoing findings of fact and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise

---

[3]    Statements made by the Court from the bench at the hearing on the Motion shall constitute additional conclusions of law and findings of fact as appropriate.

9

resolved herein are hereby overruled on the merits and denied with prejudice.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    The Sellers are further authorized, pursuant to Bankruptcy code section 503, to pay the Purchaser $75,000 as reimbursement of its expenses and costs incurred in connection with the Agreement (the "Termination Fee") in accordance with and subject to the terms and conditions of the Agreement.  Should the Termination Fee be payable under the terms of the Agreement, such Termination Fee shall be Purchaser's sole recourse and remedy in the event of such termination.

5.    Pursuant to Bankruptcy Code section 363(b), the Seller is authorized to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale and Assignment in accordance with and subject to the terms and conditions of the Agreement.

6.    The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property and the Leases as contemplated by the Agreement.

7.    This Sale Order and the Agreement shall be binding in all respects upon the Seller, all stakeholders (whether known or unknown) of the Seller, all affiliates and subsidiaries of the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.  To the extent that any provision of this Sale Order is inconsistent with the terms of the Agreement, this Sale Order shall govern.

8.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing

11

signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

9.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Successful Bidder free and clear of all Liens except the Permitted Encumbrances, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

10.    If any person or entity which has filed financing statements, mortgages, mechanic's liens, <u>lis pendens</u>, or other documents or agreements evidencing Liens on or against the Property shall not have

12

delivered to the Seller prior to the Closing of the Sale,
in proper form for filing and executed by the
appropriate parties, termination statements, instruments
of satisfaction, releases of all Liens that the person
or entity has with respect to the Property, or otherwise,
then (a) the Seller is hereby authorized to execute and
file such statements, instruments, releases, and other
documents on behalf of the person or entity with respect
to the Property and (b) the Purchaser is hereby
authorized to file, register, or otherwise record a
certified copy of this Sale Order, which, once filed,
registered, or otherwise recorded, shall constitute
conclusive evidence of the release of all Liens on or
against the Property of any kind or nature whatsoever
except for the Permitted Encumbrances.

    11.  This Sale Order (a) shall be effective as
a determination that, upon the Closing of the Sale, all
Liens of any kind or nature whatsoever existing as to
the Seller or the Property prior to the Closing of the
Sale, except for the Permitted Encumbrances, have been
unconditionally released, discharged, and terminated
(other than any surviving obligations), and that the

conveyances described herein have been effected and
(b) shall be binding upon and shall govern the acts of
all entities including, without limitation, all filing
agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars
of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and
local officials, and all other persons and entities who
may be required by operation of law, the duties of their
office, or contract, to accept, file, register, or
otherwise record or release any documents or instruments,
or who may be required to report or insure any title or
state of title in or to any of the Property.

12.   All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other
stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)

14

arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of
violation of environmental laws and regulations prior to
Closing.

C.    Assumption, Assignment and Sale of the Leases.

13.   Under section 365 of the Bankruptcy Code, the Seller is authorized to assume the Leases and to assign the Leases to the Purchaser, which assumption and assignment shall take place on Closing.

14.   Under Bankruptcy Code section 363, the Seller is authorized to sell the Leases to the Purchaser.

15.   The Debtors are authorized to execute the assignment agreements, in substantially the form attached as exhibits to the Agreement.

16.   Upon Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Seller's rights and obligations in the Leases due, accruing, arising or attributable to the time period occurring on or after Closing and shall have the rights of the landlord thereunder.

17.   Upon Closing, neither the Purchaser, the Debtors, nor the Debtors' estates shall have liability for cure claims of, from, or related to the Leases for any defaults or monetary obligations thereunder.

18.   Upon the entry of this Sale Order, (i) all defaults under the Leases through Closing shall

16

be deemed cured, (ii) no other amounts will be owed by
Debtors or their estates with respect to the Leases,
(iii) no amounts will be owed by the Purchaser with
respect to the Leases for obligations relating or
attributable to the period prior to Closing, (iv) any
and all persons or entities shall be forever barred and
estopped from asserting a claim against the Debtors or
their estates that any additional amounts are due or
defaults exist under the Leases, and (v) any and all
persons or entities shall be forever barred and estopped
from asserting a claim against the Debtors, their
estates, and the Purchaser that any additional amounts
are due or defaults exist under the Leases that arose or
accrued, relate to or are attributable to the period
prior to Closing.

19.    The Purchaser takes each of the Leases
"as is."

20.    Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision to the
contrary in the Leases, or in applicable nonbankruptcy
law, that prohibits, restricts, or conditions the

17

assignment of the Leases, the Seller may assign the Leases to the Purchaser.

21.   Upon Closing, subject to the provisions of this Sale Order, the Purchaser shall assume all obligations under the Leases attributable to, or arising or accruing during, the time period occurring on or after Closing or related to the period subsequent to Closing.

22.   Upon the Assignment authorized herein, and under section 365(k) of the Bankruptcy Code, the Debtors and their estates shall have no further liability under the Leases.

23.   Upon the Assignment to the Purchaser, the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order.

24.   Pursuant to Bankruptcy Code section 363(f), the sale and corresponding assumption and assignment of the Leases authorized hereunder shall be free and clear of all Liens, with all such Liens attaching only to the amount paid under the Agreement for the Leases and the related premises on which such

18

Liens had been attached previously, in the same order
and priority, and with the same validity and
enforceability, as same may have had prior to the sale,
assumption and assignment of the Leases, subject to any
and all available defenses.

25.   Any mechanic's lien filed against the
Seller with respect to the premises associated with the
Leases is hereby released, discharged, and terminated,
and the Purchaser is hereby authorized to file, register,
or otherwise record a certified copy of this Sale Order
and each and every federal, state, and local
governmental agency or department is hereby directed to
accept a certified copy of this Sale Order as conclusive
evidence of the release, discharge, and termination of
any mechanic's lien filed against the Seller with
respect to the premises associated with the Leases and
shall remove such mechanic's lien from record.  Any
interest released, discharged and/or terminated under
this paragraph shall attach solely to the amount paid
under the Agreement for the Leases and the related
premises on which such interest had previously attached,
subject to any and all available defenses.

19

26.   Except for the Seller with respect to its rights under the Agreement and this Order, all parties to the Leases, and to any other agreements relating to the Leases, other than the Agreement, are forever barred from raising or asserting against the Debtors or their estates any default or breach under, or any claim or pecuniary loss, arising under or related to, the Leases or such other agreements.

27.   Any obligations arising under the Leases which arise, accrue, are incurred or relate to periods on or subsequent to Closing, including but not limited to any tax, utility, common area charges or insurance payments, shall be the obligation of the Purchaser, and no party (including the Purchaser) shall have a claim against the Debtors or their estates for such obligations.

28.   The Tenants and any governmental agency shall accept and honor the assignment of the Leases to the Purchaser in accordance with the Agreement and this Sale Order.  No party shall have any claim against Purchaser for any obligations arising under the Leases

20

which arise, accrue, are incurred or relate to periods prior to Closing .

29.   The Tenants shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, installation of signage, opening and operating of the premises associated with the Leases.

**D.   Additional Provisions**

30.   The consideration provided by the Purchaser for the Property and the Leases under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

21

31.    The consideration provided by the Purchaser for the Property and the Leases under the Agreement is fair and reasonable and the Sale and Assignment may not be avoided under section 363(n) of the Bankruptcy Code.

32.    Upon the Closing, this Sale Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all the Property or a bill of sale transferring good and marketable title in to the Purchaser pursuant to the terms of the Agreement.

33.    The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser at arm's-length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Property and assignment of the Leases shall not affect the validity of the Sale and Assignment to the Purchaser, unless such authorization is duly stayed pending such appeal.  The Purchaser is a purchaser in good faith, within the meaning of section

22

363(m) of the Bankruptcy Code, of the Property and the
Leases, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

34.   The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

35.   If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of Seller and Seller is
not in default of its obligations under such Agreement,
then Seller's counsel shall file with the Court and
serve upon the Purchaser, the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the
Property and assignment of the Leases with the Alternate
Bidder on ten (10) days' advance written notice to the

23

Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale
agreement with the Seller, without the necessity of
further order of this Court.

36.   All deposits submitted to the Seller for
the Property and the Leases shall be returned to the
bidder that submitted them no later than (i) five
business days after the closing of the sale with the
Purchaser (or the Alternate Bidder, as the case may be)
except in the case of a bidder who closed on the sale of
the Property or who was required to close in accordance
with the terms of this Sale Order but failed to do so in
breach of its contractual obligations through no fault
of the Seller.

37.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

38.   This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property and the Leases to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Seller pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, the Alternate Bid, and any deposit delivered to Seller by a bidder for the Property and the Leases, (d) interpret, implement, and enforce the provisions of this Sale Order, and (e) protect the Purchaser against any Lien against the Seller or the Property or the Leases of any kind or nature whatsoever, except for Permitted Encumbrances, which Liens, valid and timely perfected, shall attach to the proceeds of the Sale.

39.   This Order shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Rules 6004(h) and 6006.

25

Dated:  Richmond, Virginia
        <u>Aug 6 2010</u>        , 2010

                              /s/ Kevin R. Huennekens
                              _____
                              UNITED STATES BANKRUPTCY JUDGE
WE ASK FOR THIS:
                              Entered on docket:  August 6 2010

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

     Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                              /s/ Douglas M. Foley
                              _____

**Exhibit A**

**(Agreement)**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of June 21, 2010, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and DRCC PROPERTIES, LLC, a Virginia limited liability company ("Purchaser").

### RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.   PURCHASE AND SALE

1.1   Purchase and Sale.   Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, that certain real property located in the County of Henrico, Virginia and being more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land, including, without limitation, all of Seller's right, title, and interest in and to the Subject Leases (as defined below), but expressly excluding any improvements thereon which, pursuant to the terms of the Subject Leases, are owned by the tenants under the Subject Leases (herein collectively called the "Property").

2.   PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1   Purchase Price.   The purchase price (the "Purchase Price") for the Property shall be TWO MILLION SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($2,750,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's (as defined below) escrow account in cash by Purchaser by wire transfer in accordance with wire

1

transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.    DEPOSIT

    3.1    <u>Deposit</u>.  Concurrently with execution of this Agreement, Purchaser shall deliver to Midtown Agency, Inc. ("<u>Escrow Agent</u>"), P.O. Box 250, 1430 Cardwell Road, Crozier, Virginia 23039, Attention: Pope Reed, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to TWO HUNDRED SEVENTY FIVE THOUSAND AND NO/100 DOLLARS ($275,000.00) (which amount, together with all interest accrued thereon, is herein called the "<u>Deposit</u>") to be held by Escrow Agent in an interest-bearing account in a federally-insured financial institution in the Richmond, Virginia metropolitan area.  Interest on the Deposit shall be added to the Deposit and applied with the Deposit in accordance with Section 3.2 of this Agreement.

    3.2    <u>Application of Deposit</u>.        If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price. If this Agreement is terminated for any reason other than termination by Seller in accordance with Section 8.2 or Section 10.11, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "<u>Survival Obligations</u>").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. If Purchaser terminates this Agreement in accordance with Section 4.3, Purchaser agrees, upon Seller's written request and the payment to Purchaser of one-half of the out-of-pocket costs thereof, to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given. Seller shall be under no obligation to pay to Purchaser any of the out-of-pocket costs of the Reports unless Seller has requested copies of such Reports from Purchaser in accordance with the foregoing sentence. The obligation to deliver the Reports shall survive the termination of this Agreement.

4.    PREPURCHASE MATTERS

    4.1    <u>Intentionally Omitted</u>.

    4.2    <u>Intentionally Omitted</u>.

    4.3    <u>Property Inspection.</u>  Purchaser shall have until the date that is twenty one (21) days from and after the date of this Agreement (the "<u>Due Diligence Period</u>") to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser.  Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason or no reason, in which event Escrow Agent shall promptly return the Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations.  If Purchaser does not give a notice of termination pursuant to this Section 4.3 at or prior to 5 p.m. (local time in Richmond, Virginia) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to this Section 4.3 shall expire and be of no further force or effect.

    Subject to the conditions set out in this Section 4.3 and to the rights of the tenants under the Subject Leases, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense.  If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test.  Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be unreasonably withheld or delayed.  Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller, including, without limitation, any claims made by the tenants under the Subject Leases, for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors.  Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain comprehensive general liability (occurrence) insurance in an amount of not less than $1,000,000 and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that such insurance is being maintained.

3

    4.4   Reports.      All third party reports obtained by Purchaser after the date of this Agreement relating to the Property in the course of Purchaser's due diligence investigation are collectively referred to as the "Reports". The Reports and all information obtained by Purchaser from Seller in the course of Purchaser's due diligence investigation shall be treated as confidential information and shall not be disclosed to any third parties except: (a) Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein; (b) to the extent required by any applicable court order, statute, law, regulation, or governmental authority; and (c) in connection with any litigation that may arise between the parties in connection with the transactions contemplated by this Agreement. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall not be applicable to matters of public record or to information otherwise publicly available. This Section 4.4 shall not survive the Closing, but shall survive the termination of this Agreement, as applicable.

    4.5   Purchaser's Representations and Warranties.     Purchaser represents and warrants to Seller that (a) Purchaser is a limited liability company, duly organized and in good standing under the laws of the Commonwealth of Virginia and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this

4

Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement for a period of six (6) months.

4.6    Seller's Representations and Warranties.    Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined below) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances (as defined below). The representations and warranties contained in this Section 4.6 shall survive the Closing or termination of this Agreement for a period of six (6) months.

4.7    Further Assurances.    Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1    Disclaimer.    PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN AS SET OUT IN THE DEED, AS DEFINED BELOW, AND THE OTHER DOCUMENTS TO BE DELIVERED BY SELLER AT THE CLOSING), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A

5

PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN EXCEPT AS SET FORTH HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN OR IN ANY DOCUMENTS TO BE DELIVERED BY SELLER AT THE CLOSING. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND EXCEPT AS SET FORTH HEREIN AND IN ANY DOCUMENTS TO BE DELIVERED BY SELLER AT THE CLOSING AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION

AND BASIS WITH ALL FAULTS EXCEPT AS SET FORTH HEREIN AND IN ANY DOCUMENTS TO BE DELIVERED BY SELLER AT THE CLOSING.  IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING.  THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

     5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

     5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

     5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with



7

adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

6.1    Closing.    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is twenty (20) days after the date of entry by the Bankruptcy Court of the Sale Order (the date on which the Closing occurs is referred to as the "Closing Date").

6.2    Possession.    Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights of record as of the date of this Agreement, (iv) the Subject Leases, and (v) any and all matters that would be shown by a physical inspection of the Property (collectively, the "Permitted Encumbrances").

6.3    Prorations.    All (i) collected rent, (ii) real estate taxes, and (iii) assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available. Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment. Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive for a period of one (1) year after the Closing.

6.4    Closing Costs.    Purchaser shall pay all title examination costs, title insurance premiums, survey costs, environmental and engineering costs, and any and all other due diligence costs. Purchaser shall also pay the grantee's tax imposed on the Deed (as defined below) pursuant to the Virginia Code, any other recording fees associated with the recordation of the Deed, and any recording fees associated with the recordation

8

of the Assignment and Assumption of Leases (as defined below). Seller shall pay the grantor's tax imposed on the Deed pursuant to the Virginia Code. Except as otherwise provided herein, each party shall pay its own attorneys' fees. The parties shall each pay one-half (1/2) of any escrow fee charged by Escrow Agent; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the Commonwealth of Virginia.

6.5    Seller's Obligations at the Closing.    At the Closing, Seller shall deliver to Escrow Agent the following:

(a)    Deed. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject only to the Permitted Encumbrances (the "Deed").

(b)    Assignment and Assumption of Leases.    A counterpart copy of an assignment and assumption of leases, duly executed by Seller, pursuant to which Seller assigns to Purchaser (without representation or warranty) all of Seller's right, title and interest in and to the Subject Leases and Purchaser assumes the same from Seller, as contemplated by the Sale Order (the "Assignment and Assumption of Leases").

(c)    Foreign Person.    An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

(d)    Virginia Form R-5E. A Virginia form R-5E;

(e)    Form 1099.    An IRS Form 1099-S Information Reporting Form; and

(f)    Other Documents.    Such other documents that may reasonably be required by Purchaser's title company in connection with the issuance of an owner's policy of title insurance for the Property to Purchaser, including, but not limited to, such affidavits required for deletion of the parties in possession and mechanics' lien exceptions appearing on an owner's policy of title insurance, provided, however, that all such other documents shall be in a form and substance reasonably satisfactory to Seller.

6.6    Purchaser's Obligations at the Closing.    At the Closing, Purchaser shall deliver to Escrow Agent the following:

      (a)   <u>Purchase Price.</u>    The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller), by wire transfer of immediately available funds.

      (b)   <u>Assignment and Assumption of Leases.</u>    A counterpart copy of the Assignment and Assumption of Leases, duly executed by Purchaser.

      (c)   <u>Evidence of Authority.</u>    Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

      (d)   <u>Taxpayer I.D. Certificate.</u>    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer Identification Number and consenting to Seller's release of this information to any governmental authority.

    6.7   <u>Commission.</u> Seller represents that it has not engaged any real estate brokers or agents of record in this transaction other than DJM Realty (the "<u>Seller's Broker</u>"), and upon Closing, Seller shall pay the Seller's Broker a commission pursuant to a separate written agreement. Purchaser represents that it has not engaged any real estate brokers or agents of record in this transaction other than Thalhimer of Richmond (the "<u>Purchaser's Broker</u>"), and upon Closing, Purchaser shall pay the Purchaser's Broker a commission pursuant to a separate written agreement. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

7.     RISK OF LOSS

    7.1   <u>Condemnation / Casualty.</u>    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price. If prior to the Closing any casualty occurs and gives rise to the payment of any insurance proceeds to Seller as Landlord under the Subject Leases, such proceeds shall be paid to Purchaser at Closing.

8.    DEFAULT

    8.1    <u>Breach by Seller</u>.    In the event that Seller shall fail to consummate the
transactions contemplated by this Agreement for any reason, except Purchaser's default
or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so
under the provisions hereof, Purchaser, as its sole and exclusive remedies, may terminate
this Agreement and demand the return of the Deposit from Escrow Agent, or seek
specific performance of this Agreement (subject the approval of the Bankruptcy Court).
In no event shall Purchaser be entitled to any remedies other than the return of the
Deposit from Escrow Agent or specific performance of this Agreement (subject to the
approval of the Bankruptcy Court), and Seller shall not be liable to Purchaser for any
actual, punitive, speculative or consequential damages.

    8.2    <u>Breach by Purchaser</u>. In the event that Purchaser shall fail to consummate
the transactions contemplated by this Agreement for any reason, except Seller's default
or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so
under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this
Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent
as liquidated damages.  Seller and Purchaser have made this provision for liquidated
damages because it would be impossible to estimate more precisely, on the date hereof,
the amount of actual damages for such breach, and because the parties believe that the
Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of
Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2
shall not limit or affect any of Purchaser's indemnities as provided in any other Section
of this Agreement.

9.    BANKRUPTCY ISSUES

    9.1    <u>Generally</u>.    Notwithstanding any other provision of this Agreement, the
provisions of this Article 9 shall apply to the sale of the Property.

    9.2    <u>Filing a Sale Motion</u>. The obligation of Seller to sell and convey the
Property to Purchaser, and the obligation of Purchaser to purchase the Property from
Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered
an order in the Bankruptcy Case (the "<u>Sale Order</u>") (i) approving this Agreement and the
sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other
than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions
contemplated by this Agreement, including the assignment and assumption of the Subject
Leases as contemplated in Section 9.5 below.  Within seven (7) business days following
the expiration of the Due Diligence Period, Seller will file with the Bankruptcy Court a
motion pursuant to section 363 and section 365 of the Bankruptcy Code seeking approval

11

of, among other things, this Agreement and the consummation of the transactions contemplated hereby, Seller's treatment of the right of first refusal contained in the CRA Lease (as defined below), bidding procedures, and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement and shall be in a form and substance reasonably satisfactory to Seller and Purchaser and shall contain the bid procedures in the form set forth on Schedule 1 attached hereto and made a part hereof. Seller shall be responsible for serving and providing notice of the Sale Motion. Notwithstanding anything contained in this Section 9.2 to the contrary, Seller shall be under no obligation to file the Sale Motion with the Bankruptcy Court until the form and substance of the Sale Motion are finalized in accordance with the preceding sentence.

9.3     Entry of Sale Order.  The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above. Purchaser and Seller shall cooperate in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4     Termination.  Purchaser acknowledges that the Seller intends to solicit "higher or otherwise better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees (subject to the approval of the Bankruptcy Court and the tenants under the Subject Leases) to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $2,875,000.00 shall be required; (b) each initial overbid must be accompanied by a deposit in an amount equal to the amount of the Deposit plus ten percent (10%) of the amount by which such overbid exceeds the Purchase Price; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction. The last day for submission of "higher or otherwise better" offers will be set forth in the Sale Motion and subject to the approval of the Bankruptcy Court. Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or otherwise better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to September 13, 2010. Subject to the approval of the Bankruptcy Court, if this Agreement is terminated by Seller in order to permit Seller to accept a "higher or otherwise better" offer for the Property, and (x) Purchaser has not terminated this Agreement; (y) Purchaser is not in default under any provision of this Agreement;

12

and (z) Seller consummates the sale of the Property to the offeror of a "higher or otherwise better" bidder within one hundred fifty (150) days after the date of this Agreement, then Seller shall pay Purchaser a fee of $75,000.00 as a "break-up" fee and reimbursement for all costs and expenses incurred by Purchaser in connection with this Agreement, which fee shall be Purchaser's sole recourse and remedy in the event of such termination. The foregoing shall be set forth in the Sale Motion.

        9.5    <u>Assumption and Assignment of Subject Leases</u>.    Purchaser and Seller acknowledge that the Property is subject to (a) that certain Ground Lease and Agreement, dated as of February 28, 1990, between Seller as "Landlord" and Bank of America, N.A. (successor-by-merger to LaSalle Bank National Association), as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2000-WF1, acting by and through Berkadia Commercial Mortgage LLC, its special servicer, as successor-in-interest to CRA Acquisition Corp. as "Tenant", as amended by that certain First Amendment to Ground Lease dated April 14, 2010 (the "<u>CRA Lease</u>"), and (b) that certain Ground Lease, dated February [undated], 2000, between Seller as "Landlord" and Children's Discovery Centers of America, Inc. as "Tenant", as amended by that certain Commencement Date Agreement, dated May 31, 2000, between Seller as "Landlord" and Children's Discovery Centers of America, Inc. as "Tenant" (the "<u>CDC Lease</u>"; the CDC Lease, together with the CRA Lease, as subsequently amended or modified from time to time, are hereinafter collectively referred to as the "<u>Subject Leases</u>"). The Sale Motion shall seek approval from the Bankruptcy Court for (i) the assumption by Seller of the Subject Leases in the Bankruptcy Case, and (ii) the assignment by Seller to Purchaser (without representation or warranty) of all of Seller's right, title and interest in and to the Subject Leases.

        9.6    <u>Adequate Assurance of Future Performance</u>. Upon execution of this Agreement, Purchaser shall provide to Seller information demonstrating Purchaser's ability to satisfy the requirements under section 365(b)(1)(C) and section 365(f)(2)(B) of the Bankruptcy Code, if applicable (collectively, the "<u>Adequate Assurance Information</u>"). Purchaser expressly agrees that the Adequate Assurance Information may be disclosed to, among other parties in interest in the Bankruptcy Case, (a) the lessees under the Subject Leases upon the request of such lessees; (b) the Official Committee of Unsecured Creditors in the Bankruptcy Case; (c) the Office of the United States Trustee in the Bankruptcy Case; and (d) the Bankruptcy Court; provided, however, that disclosure to parties other than the Bankruptcy Court shall be subject to confidentiality agreements and/or protective orders in a form and substance reasonably acceptable to Seller and Purchaser.

10.    MISCELLANEOUS

13

10.1   Notices.        All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below.   For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

| | |
|---|---|
| If to Purchaser: | DRCC PROPERTIES, LLC<br>1801 Bayberry Court, Suite 100<br>Richmond, Virginia 23226<br>Attention: Michael G. Pruitt |
| with a copy to: | WILLIAMS MULLEN<br>Williams Mullen Center<br>200 South 10th Street, Suite 1600<br>Richmond, Virginia 23219<br>Attention: Steven D. Delaney, Esq. |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention:  General Counsel |
| and a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Matthew T. Gunlock, Esq. |

14

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment,    This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4    Headings.    The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5    Time of Essence,    Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the jurisdiction in which the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6    Governing Law.    This Agreement shall be governed by the laws of the Commonwealth of Virginia.

10.7    Successors and Assigns; Assignment.    This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining the prior written consent of Seller; provided, however, that no assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement and any assignee shall be subject to the terms and conditions of the Sale Motion and the Sale Order.  This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid

15

or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9   Attorneys' Fees.   In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10   Multiple Counterparts.   This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11   No Recordation.   Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12   Merger Provision.   Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13   Brokers.   Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   Consent to Jurisdiction of Bankruptcy Court.   THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

16

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

17

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Cathi. W. Bradshaw_
Name: _Catherine W. Bradshaw_
Title: _VP & Controller_

PURCHASER

DRCC PROPERTIES, LLC.,
a Virginia limited liability company

By: Deep Run I Acquisition, LLC, Managing Member

By: _____
Name: _____
Title: _____

18

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

PURCHASER

DRCC PROPERTIES, LLC,
a Virginia limited liability company

By:  Deep Run I Acquisition, LLC, Managing Member

By: _____
Name: MICHAEL G. PRUSTI
Title: Manager

18

The escrow terms and conditions of this Agreement are agreed to and accepted this 23rd day of June 2010.

ESCROW AGENT:

MIDTOWN AGENCY, INC.

By: _Poul C Reed_

Name: _Poulson C. Reed_

Title: _President_

Mailing Address:

Midtown Agency, Inc.
P.O. Box 250
1430 Cardwell Road
Crozier, Virginia 23039
Attention: Pope Reed

19

EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

The land comprising Henrico County, Virginia Tax Parcels 750-758-3831, 750-757-2337, 751-758-2817, 750-758-0974, 750-758-7092, 750-758-9070, and 751-758-4556 (provided, however, that Tax Parcels 750-758-9070 and 751-758-4556 are included only to the extent that such Tax Parcels continue to exist and Seller owns any interest in such Tax Parcels).

<u>SCHEDULE 1</u>

BID PROCEDURES

[FOLLOWS THIS PAGE]

\10613989.7 [EXECUTION VERSION]

## CIRCUIT CITY STORES, INC.
## RICHMOND, VIRGINIA PROPERTY BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the proposed sale (the "**Sale**") of certain real property of Circuit City Stores, Inc. ("**Circuit City**" or the "**Seller**") located in Henrico County, Virginia (as more specifically defined in the Agreement, the "**Property**"). On [_____], 2010, the Seller executed that certain Purchase and Sale Agreement (together with any amendments thereto, the "**Agreement**") with DRCC Properties, LLC (the "**Purchaser**"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and certain other closing conditions. Additionally, the transaction and these Bidding Procedures are subject to entry of an order (the "**Sale Order**") by the Bankruptcy Court, pursuant to sections 363 and 365 of title 11 of the United States Code, (the "**Bankruptcy Code**") authorizing and approving such transaction and Bidding Procedures as shall be requested by motion of the Seller (the "**Sale Motion**").

All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the manner in which bidders and bids become Qualified, the receipt of bids submitted, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "**Bidding Process**"). The Seller intends to consult with, among others, the official committee of unsecured creditors (the "**Creditors' Committee**") throughout the Bidding Process. In the event that the Seller and any other party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### <u>Bid Deadline</u>

A Qualified Bidder (as defined below), other than the Purchaser, which desires to make a bid must deliver written copies of its bid to each of the following parties by [_____], 2010 at 4:00 p.m. (ET) (the "**Bid Deadline**"):

> (1) Circuit City Stores, Inc., 4951 Lake Brook Drive, P.O. Box 5695, Glen Allen, VA 23060, Attn: Katie Bradshaw (Katie_bradshaw@ccswinddown.com);

> (2) Chief Restructuring Officer to the Seller, Alfred Siegel, Crowe Horwath LLP, 15233 Ventura Blvd., Ninth Floor, Sherman Oaks, CA 91403-2250 (Al.siegel@crowehorwarth.com);

> (3) Counsel to the Seller, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801 (gregg.galardi@skadden.com and ian.fredericks@skadden.com) and Kellan Grant, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Dr., Chicago, IL 60606 (t.kellan.grant@skadden.com);



(4) Counsel to the Creditors' Committee, Jeff Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100, (jpomerantz@pszjlaw.com) and John Morris, Pachulski Stang Ziehl & Jones LLP, 380 3rd Ave., 36th Floor, New York, NY 10017 (jmorris@pszjlaw.com); and

(5) DJM Realty Services, LLC, 445 Broadhollow Road, Suite 225, Melville, New York 11747, Attn: James Avallone, Fax: (631) 752-1231 (javallone@djmrealty.com).

The Seller may extend the Bid Deadline once or successively, but is not obligated to do so. If the Seller extends the Bid Deadline, it must promptly notify all Qualified Bidders of such extension.

## Auction

If the Seller receives any Qualified Bids (as defined below) prior to the Bid Deadline, the Seller would hold an auction (the **"Auction"**) on [_____], 2010 at [_____] at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, in Wilmington, Delaware or telephonically, at the Seller's discretion. The Seller will advise the Purchaser and all other parties that submitted a Qualified Bid of the Auction. The Seller, in consultation with its advisors (and representatives of the Creditors' Committee) shall have the right to employ and announce at the Auction additional procedural rules as it deems appropriate, including, without limitation, bid increments and time intervals between bids, provided that such rules are not inconsistent with these Bidding Procedures, the Agreement or applicable law.

At the conclusion of any Auction, the Seller, in consultation with its advisors (and representatives of the Creditors' Committee), would determine the highest or otherwise best bid (the "**Successful Bid**").

## The Sale Hearing

Following the Auction, if any, the Seller intends to proceed with a hearing to approve the Sale of the Property on [_____], 2010 at [_____] (the **"Sale Hearing"**).

If no Qualified Bids other than the bid of the Purchaser are received prior to the Bid Deadline, the Seller would proceed with the Sale to the Purchaser pursuant to the Agreement following entry of the Sale Order. If the Seller receives additional Qualified Bids prior to the Bid Deadline, then at the Sale Hearing, the Seller would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the **"Alternate Bid,"** and such bidder, the **"Alternate Bidder"**). A bid would not be deemed accepted by the Seller unless and until approved by the Court.

Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Seller would be permitted to effectuate a sale to the Alternate Bidder without further order of the Court.

2



## Bid Requirements

To ensure that only bidders with a serious interest in the purchase of the Property participate in the Bidding Process, the Seller will only consider the "**Qualified Bids**" of "**Qualified Bidders.**" To be considered a "Qualified Bid" and a "Qualified Bidder," the person or entity submitting the bid would be required to submit an offer by the Bid Deadline that includes:

(a) an executed copy of the Agreement, marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes (such modified Agreement, a "**Marked Agreement**"), including modifications to the Purchase Price in the Agreement, which price must be at least $2.875 million (the "**Initial Minimum Overbid**") recognizing Purchaser's expenditure of time, energy and resources; the bid shall have terms and conditions that are substantially identical to those set forth in the Agreement (except that no bid shall provide for any due diligence period or property inspection period);

(b) the name, address and relevant contact information of the potential bidder and the name(s) and title(s) of the officer(s) or authorized agent(s) who will appear on behalf of such bidder;

(c) a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency;

(d) a good faith deposit (the "**Good Faith Deposit**") in an amount equal to $275,000 plus ten (10) percent of the amount by which the bid exceeds the Purchase Price which deposit will be in the form of a certified check, bank check, other readily available funds or other reasonable form in a form reasonably satisfactory to the Seller, its advisors and the other parties described in Paragraph 3 above;

(e) an acknowledgement that the bid is irrevocable until two (2) business days after the closing of the Sale of the Property; and

(f) an acknowledgement that, in the event the bidder is the Alternate Bidder, the bidder will proceed with the purchase of the Property pursuant to the terms the Marked Agreement.

Notwithstanding the foregoing, the Seller reserves the right to waive the requirements of any of the bidding procedures with respect to a potential or Qualified Bidder if the Seller determines in its business judgment (after consultation with representatives of the Creditors' Committee and the Purchaser) it is in the best interests of its estate and creditors.

## Waiver of Right of First Refusal

Purchaser and Seller acknowledge that the Property is subject to a ground lease, dated February 28, 1990, between Seller, as landlord, and Bank of America, N.A. (successor-by-merger to LaSalle Bank National Association), as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates,

3

Series 2000-WF1, acting by and through Berkadia Commercial Mortgage LLC, its special servicer, as successor-in-interest to CRA Acquisition Corp. ("**Berkadia**"), as tenant (as may have been amended from time to time, the "**CRA Lease**"). With respect to any sale pursuant to the Sale Motion, Berkadia has agreed not to, and in any event shall not be entitled or permitted to, exercise the right of first refusal (the "**Right of First Refusal**") in favor of Berkadia set forth in the CRA Lease. Notwithstanding the foregoing, the Right of First Refusal shall survive the sale and shall be enforceable in any subsequent sale of the Property by Berkadia and/or its successor or assigns pursuant to the terms of the CRA Lease, and nothing in these Bidding Procedures shall be construed to have amended the CRA Lease or effected a temporary or permanent waiver of any of Berkadia's or any subsequent tenant's rights thereunder, except as expressly set forth in this paragraph. No party shall record any instrument among the land records of Henrico County, Virginia in connection with the temporary waiver or other agreements set forth herein that shall have any adverse effect upon Berkadia's and/or its successor's or assign's interest in or future enjoyment of the Right of First Refusal.

## Reservations Of Rights

The Seller reserves the right to (i) determine in its reasonable discretion (after consultation with representatives of the Creditors' Committee) which offer is the highest or otherwise best offer; (ii) reject at any time prior to the closing of a Sale, without liability, any offer that the Seller in its reasonable discretion (after consultation with representatives of the Creditors' Committee) deems to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the bidding procedures or applicable law or (z) contrary to the best interests of the Seller and its estate; (iii) re-open the Auction (after consultation with representatives of the Creditors' Committee) at any time prior to entry of the Sale Order; and (iv) withdraw the Property from the Auction if the Seller determines in its business judgment (after consultation with representatives of the Creditors' Committee) it is in the best interests of its estate and creditors.

4

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: frenchs          Page 1 of 1              Date Rcvd: Aug 06, 2010
Case: 08-35653               Form ID: pdforder      Total Noticed: 1

The following entities were noticed by first class mail on Aug 08, 2010.
aty          +Gregg M. Galardi,   Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636

The following entities were noticed by electronic transmission.
NONE.                                                                        TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Aug 08, 2010**                    **Signature:**        *Joseph Speetjens*