Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

           IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS
105 AND 363 AND 365 AND BANKRUPTCY RULE 2002
(A) AUTHORIZING SELLER TO ENTER INTO AGREEMENT FOR SALE
OF CERTAIN REAL PROPERTY IN SARASOTA, FLORIDA SUBJECT TO
HIGHER OR OTHERWISE BETTER BIDS, (B) APPROVING BIDDING
PROCEDURES IN CONNECTION THEREWITH, (C) APPROVING SALE
FREE AND CLEAR OF ALL INTERESTS, (D) APPROVING
ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN UNEXPIRED
LEASE OF NON-RESIDENTIAL REAL PROPERTY FREE AND CLEAR OF
ALL INTERESTS, AND (E) GRANTING RELATED RELIEF**

        Circuit City Stores, Inc. (the "Seller," and

collectively with the debtors and debtors in possession

in the above-captioned jointly administered cases, the

"Debtors")[1] hereby moves (the "Motion"), pursuant to

sections 105, 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 2002 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for entry of an order (A) authorizing the

Seller to enter into an agreement with the Purchaser (as

defined below) for the sale (the "Sale") of certain of

the Seller's real property located on 4708 South Tamiami

Trail in Sarasota, Florida (the "Property"), a copy of

which is attached as Exhibit A to the Sale Order (the

"Agreement"), subject to higher or otherwise better

proposals, (B) approving the Bidding Procedures (as

defined below) in connection therewith, (C) approving

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen,
VA 23060.

the Sale free and clear of all Liens (as defined below),

(D) approving the assumption, assignment and sale (the

"Assignment") of the Lease (as defined below) associated

with the Property free and clear of all Liens, and

(E) granting related relief.  In support of the Motion,

the Seller respectfully represents as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105, 363,

and 365 and Bankruptcy Rule 2002.

### BACKGROUND

**A.    The Bankruptcy Cases.**

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going-out-of-business sales pursuant to the Agency Agreement at the Debtors' remaining stores.  The going-out-of-business sales were concluded on or about March 8, 2009.

7.   On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its

4

Affiliated Debtors and Debtors In Possession and its

Official Committee of Creditors Holding General

Unsecured Claims (the "First Amended Plan").  The

associated disclosure statement (the "Disclosure

Statement") was approved on September 24, 2009.

8.    On August 6, 2010, the Debtors and the

Creditors Committee filed the Second Amended Joint Plan

of Liquidation of Circuit City Stores, Inc. and its

Affiliated Debtors and Debtors In Possession and its

Official Committee of Creditors Holding General

Unsecured Claims (the "Plan"). Confirmation of the Plan

is currently scheduled for September 8, 2010.

9.    Generally, the Plan provides for the

liquidation of the Debtors' remaining assets and

distributions to creditors through a liquidating trust.

**RELIEF REQUESTED**

10.    By this Motion, the Seller seeks an

order (A) authorizing the Seller to enter into the

Agreement in connection with the Sale of the Property,

subject to higher or otherwise better proposals,

(B) approving the Bidding Procedures in connection

therewith, (C) approving the Sale of the Property free

and clear of all Liens, (D) approving the Assignment of
the Lease free and clear of all Liens, and (E) granting
related relief (the "Sale Order").

**BASIS FOR RELIEF**

11.  As more fully set forth below, after a
comprehensive review, the Seller believes that the Sale
of the Property and the Assignment of the Lease
represent its best opportunity under the circumstances
to maximize the value of the Property and the Lease.
Therefore, the Sale of the Property and Assignment of
the Lease are in the best interests of its estate and
stakeholders.

**A.    The Property and the Lease.**

12.  The Property is a small parcel located
between two commercial properties, one being a former
retail store leased by Seller.  The Property includes a
billboard being leased by Seller to CBS Outdoor,
Inc.("Tenant") pursuant to a lease dated July 15, 2008
(as modified and amended, the "Lease").  Accordingly,
the Sale of the Property would be subject to the Lease,
which would be assigned to any purchaser of the Property.

**B.     Events Leading To The Sale.**

13.   In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Seller has been left with various assets -- including the Property -- for which it has no remaining use.  In contrast, the sale of such assets, including the Sale of the Property, would result in significant proceeds for the Seller's estate and creditors.

14.   Since at or about the time the going-out-of-business sales were commenced, the Seller, along with its real estate advisor, DJM Realty, LLC ("DJM"), has been marketing the Property and the Lease.  As a result of these marketing efforts, the Seller received multiple proposals to purchase the Property.  Upon reviewing these proposals, the Seller determined that the proposal submitted by the Purchaser was considerably higher or otherwise better than the alternate proposals received. Thus, the Seller elected to proceed with the Sale of the Property to the Purchaser.

**C.    The Agreement.**

15.   On June 30, 2010, the Seller entered into the Agreement[2] by and between the Seller and Rodney Dessberg (the "Purchaser").

16.   Pursuant to the Agreement, the Seller has agreed to sell the Property and assign the Lease to the Purchaser for $45,000(the "Purchase Price"), subject to higher or otherwise better proposals.

17.   The significant terms of the Agreement are as follows:[3]

(a)   <u>General Terms</u>.  The Purchaser would acquire the Property, consisting solely of the Seller's right, title and interest in and to the property located at 4708 South Tamiami Trail, Sarasota, Florida, together with all rights and appurtenances pertaining to such land, including, without limitation, all of Seller's rights, title and interest in and to the Lease, but expressly excluding any improvements thereon which, pursuant to the terms of the Lease, are owned by Tenant. Seller would assign the Lease to Purchaser.

(b)   <u>Sale and Assignment</u>.  Possession of the Property would be delivered "AS IS, WHERE IS".  The Property would be sold free and clear of all liens (including the liens of the Seller's post-petition lenders and liens for past-due real property taxes),

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

[3]   In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

claims and encumbrances (collectively, the "Liens"),
except for (i) liens for real property taxes and
assessments that are not yet due and payable,
(ii) zoning ordinances, building codes and other land
use laws and applicable governmental regulations,
(iii) all covenants, agreements, conditions, easements,
restrictions and rights, whether of record or otherwise,
(iv) the Lease, and (v) any and all matters that would
be shown by a physical inspection of the Property
(collectively, the "Permitted Encumbrances").

     (c) <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding
Procedures.

     (d) <u>Documentation</u>.  The Sale would be
effected pursuant to the Agreement and related
documentation.

     (e) <u>Purchase Price</u>.  The Purchase Price to be
paid by the Purchaser for the Property would be $45,000.

     (f) <u>Deposit Escrow</u>.  In accordance with the
Agreement, the Purchaser has placed $4,500 into an
escrow account with Chelsea Title Company (the
"Deposit").  If the Sale is consummated under the
Agreement, the Deposit shall be applied to the Purchase
Price.  Upon closing of the Sale (the "Closing"), or if
the Agreement is terminated prior to Closing because of
the Purchaser's breach of the Agreement (on the terms as
provided in the Agreement), the Seller would be entitled
to the Deposit.

     (g) <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain
standard representations and warranties relating to the
Sale of the Property and the Purchaser would provide
representations and warranties generally standard in a
transaction of this type.  The representations and
warranties of the Purchaser shall survive the Closing or
termination of the Agreement.  The representations and
warranties of the Seller shall expire and be
extinguished at the Closing.

9

(h)  <u>Closing</u>.  The Closing shall occur on the date which is thirty (30) days following entry  by the Court of the Sale Order, or any other date mutually agreed on by the Parties.

18.  <u>Termination</u>.  The Agreement could be terminated prior to Closing in the following circumstances:  (i) by Purchaser, if an action is initiated to take any material portion of the Property by eminent domain proceedings, (ii) by Purchaser or Seller if either other party is in breach of the Agreement, or (iii) by the Seller, in order to permit the Seller to accept a higher or better offer for the Property pursuant to the Bidding Procedures.

**D.   The Bidding Procedures.**

19.   To ensure the Seller receives the highest or otherwise best proposal for the Property, the Seller will entertain alternate proposals for the Sale of the Property.  The Seller accordingly requests that this Court order that any parties, including those parties that previously submitted proposals, who wish to submit an alternate proposal for consideration by the Debtors be required to do so by August 31, 2010 at 4:00 p.m. (ET) (the "Bid Deadline").  All bids are to be sent to the following parties:

(1) Circuit City Stores, Inc., 4951 Lake Brook Drive, P.O. Box 5695, Glen Allen, VA 23058, Attn: Katie Bradshaw ([katie_bradshaw@ccswinddown.com](mailto:katie_bradshaw@ccswinddown.com));
(2) Counsel to the Seller, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington,

DE 19801 (gregg.galardi@skadden.com and
ian.fredericks@skadden.com), Kellan Grant, Skadden, Arps,
Slate, Meagher & Flom LLP, 155 North Wacker Dr., Chicago,
IL 60606 (t.kellan.grant@skadden.com), and Douglas M.
Foley, McGuireWoods, LLP, One James Center, 901 East
Cary St., Richmond, VA 23219 (dfoley@mcguirewoods.com);
        (3) Counsel to the Creditors' Committee, Jeff
Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100
Santa Monica Blvd., 11th Floor, Los Angeles, California
90067-4100, (jpomerantz@pszjlaw.com) and John Morris,
Pachulski Stang Ziehl & Jones LLP, 380 3rd Ave., 36th
Floor, New York, NY 10017 (jmorris@pszjlaw.com); and
        (4) DJM Realty Services, LLC, 445 Broadhollow
Road, Suite 225, Melville, New York 11747, Attn: James
Avallone, Fax: (631) 752-1231 (javallone@djmrealty.com).

        20.   If the Seller receives any Qualified

Bids (as defined herein), the Seller would hold a

telephonic auction (the "Auction") on September 2, 2010

at 2:00 p.m. (ET).  The Seller will advise the Purchaser

and all other parties that submitted a Qualified Bid (as

defined below) of the Auction.

        21.   At the conclusion of any Auction, the

Seller, in consultation with its advisors (and

representatives of the Creditors' Committee), would

determine the highest or otherwise best bid (the

"Successful Bid").

        22.   Following the Auction, if any, the

Seller intends to proceed with a hearing to approve the

Sale of the Property on September 8, 2010 at 2:00 p.m.
(ET) (the "Sale Hearing").

23.   If no Qualified Bids other than the bid
of the Purchaser are received, the Seller would proceed
with the Sale to the Purchaser following entry of the
Sale Order.  If the Seller receives additional Qualified
Bids, then at the Sale Hearing, the Seller would seek
approval of the Successful Bid, as well as the second
highest or best Qualified Bid (the "Alternate Bid," and
such bidder, the "Alternate Bidder").  A bid would not
be deemed accepted by the Seller unless and until
approved by the Court.

24.   Following approval of the Sale to the
Successful Bidder, if the Successful Bidder fails to
consummate the sale for specified reasons, then the
Alternate Bid would be deemed to be the Successful Bid
and the Seller would be permitted to effectuate a sale
to the Alternate Bidder without further order of the
Court.

25.   To ensure that only bidders with a
serious interest in the purchase of the Property
participate in the bidding process, the Seller would

only consider the "Qualified Bids" of "Qualified

Bidders."  To be considered a "Qualified Bid" and a

"Qualified Bidder" for purposes of the Auction, the

person or entity submitting the bid would be required to

submit an offer by the Bid Deadline that includes:

> (a) an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes (such modified Agreement, a "Marked Agreement"), including modifications to the Purchase Price, which price must be at least $49,500 (the "Initial Minimum Overbid");

> (b) the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder;

> (c) a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency;

> (d) a good faith deposit (the "Good Faith Deposit") in an amount equal to $4,500 plus ten (10) percent of the amount the bid exceeds the Purchase Price;

> (e) an acknowledgement that the bidder's offer is irrevocable until two (2) business days after the closing of the Sale of the Property; and

> (f) an acknowledgement that, in the event the bidder is the Alternate Bidder, the bidder will proceed with the purchase of the Property pursuant to the terms the Marked Agreement.

26.   The Seller reserves the right to
(i) determine in its reasonable discretion (after
consultation with representatives of the Creditors'
Committee) which offer is the highest or otherwise best
offer; (ii) reject at any time prior to the closing of a
Sale and Assignment, without liability, any offer that
the Seller in its reasonable discretion (after
consultation with representatives of the Creditors'
Committee) deems to be (x) inadequate or insufficient,
(y) not in conformity with the requirements of the
bidding procedures or applicable law or (z) contrary to
the best interests of the Seller and its estate; (iii)
re-open the Auction at any time prior to entry of the
Sale Order, (iv) withdraw the Property from the Auction,
and (v) waive the requirements of any of the bidding
procedures with respect to a potential or Qualified
Bidder if the Seller determines in its business judgment
(after consultation with representatives of the
Creditors' Committee) it is in the best interests of its
estate and creditors.

27.  Objections to the Sale, if any, shall be filed and served no later than 4:00 p.m. (ET) on September 1, 2010.

**APPLICABLE AUTHORITY**

**I.   APPROVAL OF THE TRANSACTIONS FOR THE SALE OF THE PROPERTY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

28.  As set forth above, Bankruptcy Code section 363(b)(1) authorizes a  trustee to "use, sell, or lease" property of the estate with the Court's approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

29.  To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable;

and (4) adequate and reasonable notice of the sale has been provided.  In re WBQ P'ship, 189 B.R. at 102.

30.  Based upon the results of their analysis, the Seller's management and advisors have concluded that the Sale of the Property pursuant to the Agreement or a higher or otherwise better offer would maximize the value of the Property for the Seller's estate. Maximizing asset value is a sound business purpose that warrants authorizing the proposed Sale.

31.  The Sale of the Property will be subject to competing bids, thereby enhancing the Seller's ability to receive the highest or otherwise best value for the Property.  Consequently, the fairness and reasonableness of the consideration to be received by the Seller will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

32.  Moreover, the Seller proposes to provide adequate notice of the Auction and the Sale Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and

adequate notice to the Seller's major creditor
constituencies, those parties most interested in these
cases, those parties potentially interested in bidding
on the Property and others whose interests are
potentially implicated by the proposed Sale and
Assignment.

## II. THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

33.   Bankruptcy Code section 363(b)(1)
provides that "[t]he trustee, after notice and a hearing,
may use, sell, or lease, other than in the ordinary
course of business, property of the estate."  11 U.S.C.
§ 363(b)(1).  Moreover, Bankruptcy Code section 105(a)
provides that "[t]he Court may issue any order, process,
or judgment that is necessary or appropriate to carry
out the provisions of this title."  11 U.S.C. § 105(a).

34.   The disposition of the Property and Lease
pursuant to the terms reflected in the Agreement
resulted from the bids submitted for the Property,
pursuant to a marketing process led by DJM.  Conducting
a marketing process through a third party broker
represents an accepted method of selling property.
Similar marketing processes have been approved in other

chapter 11 cases.  See, e.g., Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see also In re Reading Broadcasting, Inc., 386 B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

35.   In addition, bid procedures similar to those Bid Procedures outlined above have been approved by this Court in this case.  See, e.g., In re Circuit City Stores, Inc., Case No. 08-35653 (KRH)(Bankr. E.D. Va. Sept. 1, 2009) (D.I. 4735).

36.   Finally, the other interested parties are provided with an opportunity to submit a higher or otherwise better proposal and, if necessary, the Seller will conduct an auction.

37.   In light of the foregoing, the Seller submits that the Sale process is reasonable and appropriate.

**III. THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE BANKRUPTCY CODE AND THE TRANSACTIONS CONTEMPLATED BY THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF SECTION 363(n) OF THE BANKRUPTCY CODE.**

38.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of
> an authorization under subsection (b) or
> (c) of this section of a sale or lease of
> leases does not affect the validity of a
> sale or lease under such authorization to
> an entity that purchased or leased such
> property in good faith, whether or not
> such entity knew of the pendency of the
> appeal, unless such authorization and
> such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not

define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that

has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'"  Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

    39.  Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

19

40.   The Seller submits that the Agreement reflects an negotiated, arm's length transaction. Throughout the negotiations, the Purchaser has at all times acted in good faith.   Moreover, to the extent that the assets are sold to a Successful Bidder, it will be because of a well-planned competitive process and negotiations at arm's length to be conducted at an auction.   As a result of the foregoing, the Seller requests that the Court make a finding that the Purchase Price to be paid by the Purchaser or the Successful Bidder constitutes reasonably equivalent value and fair consideration under any applicable law.

41.   The Seller, therefore, requests that this Court make a finding that the Purchaser or the Successful Bidder, as the case may be, has purchased the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code.   Further, the Seller requests that this Court make a finding that the Agreement or any purchase agreement reached as a result of the bidding procedures necessarily will comprise an arm's length, negotiated transaction entitled to the protections of section 363(m) of the Bankruptcy Code.

20

Because the Seller has shown that the Purchaser's or
Successful Bidder's bid is not the product of fraud or
collusion between the Purchaser or Successful Bidder and
other bidders or the trustee, or an attempt to take
grossly unfair advantage of other bidders, the Seller
furthers request that this Court make a finding that the
transactions contemplated by the Agreement are not
avoidable under section 363(n) of the Bankruptcy Code.

**IV.   THE SALE OF THE PROPERTY FREE AND CLEAR OF ANY
INTEREST SHOULD BE AUTHORIZED UNDER BANKRUPTCY CODE
SECTION 363(f).**

42.   To facilitate a sale of the Property, the
Seller requests authorization to sell the Property and
the Lease free and clear of any and all Liens that may
be asserted against such property.

43.   Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

(1) applicable nonbankruptcy law permits sale
of such property free and clear of such
interest;

(2) such entity consents;

21

> (3) such interest is a lien and the price at
> which such property is sold is greater than
> the aggregate value of all liens on such
> property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal
> or equitable proceeding, to accept a money
> satisfaction of such interest.

11 U.S.C. § 363(f).

44.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.   See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

45.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.   See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more

situations than just sales involving liens."). Moreover,
courts have noted that the purpose of the "free and
clear" language is to allow the debtor to obtain a
maximum recovery on its assets in the marketplace. <u>See</u>
<u>In re TWA, Inc.</u>, 2001 Bankr. LEXIS 723, at *8-*10 (Bankr.
D. Del. Mar. 27, 2001).

46. Accordingly, this Court should authorize
the Seller to sell the Property and the Lease free and
clear of any and all Liens that may be asserted by any
parties, with any such Liens attaching to the net
proceeds of the sale of the Property and the Lease in
the same order and priority and subject to the same
defenses as they exist against the Property and the
Lease.

## V.   APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASE IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.

47. Under section 365(a) of the Bankruptcy
Code a debtor, "subject to the court's approval, may
assume or reject any executory contract or unexpired
lease of the debtor." 11 U.S.C. § 365(a). Section
365(b)(1) of the Bankruptcy Code, in turn, codifies the

requirements for assuming an unexpired lease or

executory contract of a debtor.  It provides:

> If there has been a default in an
> executory contract or unexpired lease of
> the debtor, the trustee may not assume
> such contract or lease unless, at the
> time of the assumption of such contract
> or lease, the trustee –
>
> (A)  cures, or provides adequate
> assurance that the trustee will promptly
> cure, such default;
>
> (B)  compensates, or provides adequate
> assurance that the trustee will promptly
> compensate, a party other than the debtor
> to such contract or lease, for any actual
> pecuniary loss to such party resulting
> from such default; and
>
> (C)  provides adequate assurance of
> future performance under such contract or
> lease.

11 U.S.C. § 365(b)(1).

48.  Section 365(f)(2) of the Bankruptcy Code

provides that:

> The trustee may assign an executory contract
> or unexpired lease of the debtor only if –
>
> (A)  the trustee assumes such contract or
> lease in accordance with the provisions
> of this section; and
>
> (B)  adequate assurance of future
> performance by the assignee of such
> contract or lease is provided, whether or

> not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

49.  First, the Seller does not believe it is
in default under the Lease.  However, to the extent that
any defaults exist under the Lease, the Seller (or the
Successful Bidder) would cure any such default.

50.  Second, Courts give the phrase "adequate
assurance of future performance" a "practical, pragmatic
construction."  EBG Midtown S. Corp. v. Mcharen/Hart
Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139
B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d
Cir. 1993) (presence of adequate assurance should be
"determined under the facts of each particular case").
Adequate assurance does not require a debtor to provide
a guarantee of future performance; assurance is deemed
adequate as long as performance is more probable than
not.  See Cinicola v. Scharffenberger, 248 F.3d 110, 120
n. 10 (3d Cir. 2001) ("Although no single solution will
satisfy every case, the required assurance will fall
considerably short of an absolute guarantee of
performance." (quotations and citations omitted)); In re

25

<u>Weirton Steel Corp.</u>, 2007 WL 2021896 at *5 (Bankr. N.D.

W. Va. July 6, 2007) ("Assurance is adequate if

performance is likely; that is more probable than not.").

51.   Adequate assurance is generally

associated with assurance that the assignee, as tenant,

will perform payment obligations under the lease being

assigned.  Here however, the Purchaser will be assigned

the obligations of the Seller as lessor, which are far

more limited than those of assignee as tenant.  There

will be little practical change under the Lease as far

as the Tenant is concerned.  Consequently, the financial

wherewithal and diligence required to negotiate and

enter into the Agreement for the Sale of the Property

and the Assignment of the Lease, combined with the

Purchaser's agreement to perform all obligations under

the Lease on and after the date of the Sale, satisfy the

standard set by the Bankruptcy Code.

**NOTICE**

52.   Notice of this Motion has been provided

to those parties entitled to notice under the

Supplemental Order Pursuant to Bankruptcy Code Sections

102 and 105, Bankruptcy Rules 2002 and 9007, and Local

Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain

Notice, Case Management and Administrative Procedures

(D.I. 6208; the "Case Management Order"), as well as

(a) all entities known to have expressed an interest in

a transaction regarding the Property during the past

three (3) months; (b) all entities reasonably known to

have a Lien on the Property; (c) all federal, state, and

local regulatory or taxing authorities or recording

offices that have a reasonably known interest in the

relief requested by the Motion; and (d) Tenant under the

Lease.   The Seller submits that, under the circumstances,

no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

53.   Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is

set forth in the Motion, the Seller requests that the

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

54.   No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Seller respectfully request

that the Court (i) enter an Order, substantially in the

form annexed hereto, granting the relief requested

herein, and (ii) such other and further relief as may be

just and proper.

Dated: August 18, 2010
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
                           FLOM, LLP
                           Gregg M. Galardi, Esq.
                           Ian S. Fredericks, Esq.
                           P.O. Box 636
                           Wilmington, Delaware 19899-0636
                           (302) 651-3000

                                    - and -

                           SKADDEN, ARPS, SLATE, MEAGHER &
                           FLOM, LLP
                           Chris L. Dickerson, Esq.
                           155 North Wacker Drive
                           Chicago, Illinois 60606
                           (312) 407-0700

                                    - and -

                           MCGUIREWOODS LLP

                           /s/ Douglas M. Foley
                           Douglas M. Foley (VSB No. 34364)
                           Sarah B. Boehm (VSB No. 45201
                           One James Center
                           901 E. Cary Street
                           Richmond, Virginia 23219
                           (804) 775-1000

                           Counsel for Debtors and Debtors
                           in Possession

Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365
AND BANKRUPTCY RULE 2002 AUTHORIZING AND APPROVING SALE
OF CERTAIN REAL PROPERTY LOCATED IN SARASOTA, FLORIDA
AND THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN
UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY FREE
AND CLEAR OF LIENS AND INTERESTS**

        Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

_____

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

1

debtors and debtors in possession in the above-captioned

jointly administered cases, the "Debtors") for an order

pursuant to Bankruptcy Code sections 105, 363 and 365

and Bankruptcy Rule 2002 (A) authorizing the Seller to

enter into an agreement with the Purchaser for Sale of

the Property, subject to higher or otherwise better

proposals, (B) approving the Bidding Procedures in

connection therewith, (C) approving the Sale and of the

Property free and clear of all Liens; (D) approving

Assignment of the Lease associated with the Property

free and clear of all Liens and (E) granting related

relief; and upon the record of the hearing held on

September 8, 2010 (the "Sale Hearing"); and after due

deliberation thereon, and sufficient cause appearing

therefor,

　　　　**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

　　　　　　A.　　The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rule 2002.

D.    The notice of the Motion and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property and the Lease.

F.    A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities, including CBS Outdoor, Inc. ("Tenant").

G.    The Seller and its professionals marketed the Property and the Lease and conducted a sale

3

process as set forth in and in accordance with the
Motion.  Based upon the record of these proceedings, all
creditors and other parties in interest and all
prospective purchasers have been afforded a reasonable
and fair opportunity to bid for the Property and the
Lease.

       H.     The Seller has demonstrated good,
sufficient, and sound business purpose and justification
for the Sale and Assignment because, among other things,
the Seller and its advisors diligently and in good faith
analyzed all other available options in connection with
the disposition of the Property and Lease and determined
that (a) the terms and conditions set forth in the
Agreement, (b) the transfer to the Purchaser of the
Property and Lease pursuant thereto and (c) the purchase
price agreed to by the Purchaser, $45,000 is fair and
reasonable and constitutes the highest or otherwise best
value obtainable for the Property and the Lease.

       I.     The Seller has full power and authority
to execute the agreement submitted by Rodney Dessberg
(the "Purchaser"), a copy of which is annexed hereto as
Exhibit A (the "Agreement") and all other applicable

documents contemplated thereby.  The transfer and

conveyance of the Property by the Seller have been duly

and validly authorized by all necessary action of the

Seller.  The Seller has all of the power and authority

necessary to consummate the transactions contemplated by

the Agreement and has taken all action necessary to

authorize and approve the Agreement and to consummate

the transactions contemplated thereby.  No consents or

approvals, other than those expressly provided for in

the Agreement, are required for the Seller to consummate

such transactions.

J.    The Agreement and the sale of the

Property and assignment of the Lease thereunder were

negotiated and undertaken by the Seller and the

Purchaser at arms' length without collusion or fraud,

and in good faith within the meaning of Sections 363(m)

of the Bankruptcy Code.  As a result of the foregoing,

the Seller and the Purchaser are entitled to the

protections of Section 363(m) of the Bankruptcy Code.

K.    Neither the Seller nor the Purchaser

engaged in any conduct that would cause or permit the

Agreement or the consummation of the Sale or Assignment

5

to be avoided, or costs or damages to be imposed, under

Section 363(n) of the Bankruptcy Code.

L.   The consideration provided by the

Purchaser for the Property and the Lease is the highest

and best offer received by the Seller, and the

consideration constitutes (a) reasonably equivalent

value under the Bankruptcy Code and Uniform Fraudulent

Transfer Act, (b) fair consideration under the Uniform

Fraudulent Conveyance Act, and (c) reasonably equivalent

value, fair consideration and fair value under any other

applicable laws of the United States, any state,

territory or possession, or the District of Columbia,

for the Property and the Lease.

M.   The Sale and Assignment must be approved

and consummated promptly to obtain the value provided

under the terms of the Agreement.

N.   The transfer of the Property to the

Purchaser is a legal, valid, and effective transfer of

the Property, and shall vest the Purchaser with all

right, title, and interest of the Seller to the Property

and the Lease free and clear of all liens, claims and

encumbrances (collectively, the "Liens"), except for

those items defined in the Agreement (and which are referred to hereinafter) as the "Permitted Encumbrances".

O.   If the Sale of the Property and Assignment of the Lease by the Seller were not free and clear of any Liens, except for the Permitted Encumbrances, or if the Purchaser would, or in the future could, be liable for any of the Liens, the Purchaser would not have entered into the Agreement and would not consummate the Sale and Assignment contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.   The Seller may sell its interest in the Property and the Lease free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale and Assignment are deemed to have consented to the Sale and Assignment pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale and

7

Assignment ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale and Assignment.

Q.   Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, 365(b)(3), the Seller and the Purchaser have demonstrated adequate assurance of future performance by the Purchaser under the Lease.

R.   There is no cure obligation due and owing on the Lease under section 365 of the Bankruptcy Code.

S.   There are no outstanding defaults of the Debtors and their estates under the Lease.

T.   Upon the assignment to the Purchaser, the Lease shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any further liability thereunder, including for any breach of the Lease.

U.    Based on the foregoing findings of fact and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled on the merits and denied with prejudice.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to Bankruptcy Code section 363(b), the Seller is authorized to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale and Assignment in accordance with and subject to the terms and conditions of the Agreement.

---

[3]    Statements made by the Court from the bench at the hearing on the Motion shall constitute additional conclusions of law and findings of fact as appropriate.

9

5.   The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property and the Lease as contemplated by the Agreement.

6.   This Sale Order and the Agreement shall be binding in all respects upon the Seller, all stakeholders (whether known or unknown) of the Seller, all affiliates and subsidiaries of the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.  To the extent that any provision of this Sale Order is inconsistent with the terms of the Agreement, this Sale Order shall govern.

7.   The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing

10

signed by such parties, and in accordance with the terms
thereof, without further order of the Court; <u>provided</u>
that any such modification, amendment, or supplement is
disclosed to the Creditors' Committee and does not have
a material adverse effect on the Seller's estate, in the
good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

8.    Pursuant to Bankruptcy Code sections
363(b) and 363(f), upon the consummation of the
Agreement, the Seller's right, title, and interest in
the Property shall be transferred to the Successful
Bidder free and clear of all Liens except the Permitted
Encumbrances, with all such Liens to attach to the cash
proceeds of the Sale in the order of their priority,
with the same validity, force, and effect which they had
as against the Property immediately before such transfer,
subject to any claims and defenses the Seller may
possess with respect thereto.

9.    If any person or entity which has filed
financing statements, mortgages, mechanic's liens, <u>lis</u>
<u>pendens</u>, or other documents or agreements evidencing
Liens on or against the Property shall not have

11

delivered to the Seller prior to the Closing of the Sale,

in proper form for filing and executed by the

appropriate parties, termination statements, instruments

of satisfaction, release of all Liens that the person or

entity has with respect to the Property, or otherwise,

then (a) the Seller is hereby authorized to execute and

file such statements, instruments, release, and other

documents on behalf of the person or entity with respect

to the Property and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a

certified copy of this Sale Order, which, once filed,

registered, or otherwise recorded, shall constitute

conclusive evidence of the release of all Liens on or

against the Property of any kind or nature whatsoever

except for the Permitted Encumbrances.

      10.   This Sale Order (a) shall be effective as

a determination that, upon the Closing of the Sale, all

Liens of any kind or nature whatsoever existing as to

the Seller or the Property prior to the Closing of the

Sale, except for the Permitted Encumbrances, have been

unconditionally released, discharged, and terminated

(other than any surviving obligations), and that the

conveyances described herein have been effected and

(b) shall be binding upon and shall govern the acts of

all entities including, without limitation, all filing

agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and

local officials, and all other persons and entities who

may be required by operation of law, the duties of their

office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments,

or who may be required to report or insure any title or

state of title in or to any of the Property.

        11.  All persons and entities, including, but

not limited to, all debt security holders, equity

security holders, governmental, tax, and regulatory

authorities, lenders, trade stakeholders, and other

stakeholders, holding Liens of any kind or nature

whatsoever against or in the Seller or the Property,

except the Permitted Encumbrances (whether legal or

equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated)

13

arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement release or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of
violation of environmental laws and regulations prior to
Closing.

**C.    Assumption, Assignment and Sale of the Lease.**

12.   Under section 365 of the Bankruptcy Code, the Seller is authorized to assume the Lease and to assign the Lease to the Purchaser, which assignment shall take place on Closing.

13.   Under Bankruptcy Code section 363, the Seller is authorized to sell the Lease to the Purchaser.

14.   The Debtors are authorized to execute the assignment agreement, in substantially the form attached as <u>Exhibit C</u> to the Agreement (the "Assignment Agreement").

15.   Upon Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Seller's rights and obligations in the Lease due, accruing, arising or attributable to the time period occurring on or after Closing and shall have the rights of the landlord thereunder.

16.   Upon Closing, neither the Purchaser, the Debtors, nor the Debtors' estates shall have liability for cure claims of, from, or related to the Lease for any defaults or monetary obligations thereunder.

17.   Upon the entry of this Sale Order,
(i) all defaults under the Lease through Closing shall
be deemed cured, (ii) no other amounts will be owed by
Debtors or their estates with respect to the Lease,
(iii) no amounts will be owed by the Purchaser with
respect to the Lease for obligations relating or
attributable to the period prior to Closing, (iv) any
and all persons or entities shall be forever barred and
estopped from asserting a claim against the Debtors or
their estates that any additional amounts are due or
defaults exist under the Lease, and (v) any and all
persons or entities shall be forever barred and estopped
from asserting a claim against the Debtors, their
estates, and the Purchaser that any additional amounts
are due or defaults exist under the Lease that arose or
accrued, relate to or are attributable to the period
prior to Closing.

18.   The Purchaser takes the Lease "as is."

19.   Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision to the
contrary in the Lease, or in applicable nonbankruptcy
law, that prohibits, restricts, or conditions the

16

assignment of the Lease, the Seller may assign the Lease
to the Purchaser.

20.   Upon Closing, subject to the provisions
of this Sale Order, the Purchaser shall assume all
obligations under the Lease attributable to, or arising
or accruing during, the time period occurring on or
after Closing or related to the period subsequent to
Closing.

21.   Upon the Assignment authorized herein,
and under section 365(k) of the Bankruptcy Code, the
Debtors and their estates shall have no further
liability under the Lease.

22.   Upon the Assignment to the Purchaser, the
Lease shall be deemed valid and binding, in full force
and effect in accordance with their terms, subject to
the provisions of this Sale Order.

23.   To the extent that any of the Debtors
acts as a guarantor of the Lease (a "Debtor-Guarantor"),
the Debtor-Guarantor(s) shall have no obligations with
respect to the Lease after the Closing.

24.   Pursuant to Bankruptcy Code section
363(f), the sale and corresponding assumption and

17

assignment of the Lease authorized hereunder shall be
free and clear of all Liens, with all such Liens
attaching only to the amount paid under the Agreement
for the Lease and the related premises on which such
Liens had been attached previously, in the same order
and priority, and with the same validity and
enforceability, as same may have had prior to the sale,
assumption and assignment of the Lease, subject to any
and all available defenses.

   25. Any mechanic's lien filed against the
Seller with respect to the premises associated with the
Lease is hereby released, discharged, and terminated,
and the Purchaser is hereby authorized to file, register,
or otherwise record a certified copy of this Sale Order
and each and every federal, state, and local
governmental agency or department is hereby directed to
accept a certified copy of this Sale Order as conclusive
evidence of the release, discharge, and termination of
any mechanic's lien filed against the Seller with
respect to the premises associated with the Lease and
shall remove such mechanic's lien from record.  Any
interest released, discharged and/or terminated under

this paragraph shall attach solely to the amount paid
under the Agreement for the Lease and the related
premises on which such interest had previously attached,
subject to any and all available defenses.

26.  Except for the Seller with respect to
their rights under the Agreement and this Sale Order,
all parties to the Lease, and to any other agreements
relating to the Lease, other than the Agreement, are
forever barred from raising or asserting against the
Purchaser any default or breach under, or any claim or
pecuniary loss arising under or related to the Lease or
such other agreements, arising, accruing or incurred
prior to Closing.

27.  Except for the Seller with respect to its
rights under the Agreement and this Order, all parties
to the Lease, and to any other agreements relating to
the Lease, other than the Agreement, are forever barred
from raising or asserting against the Debtors or their
estates any default or breach under, or any claim or
pecuniary loss, arising under or related to, the Lease
or such other agreements.

19

28.   Any obligations arising under the Lease which arise, accrue, are incurred or relate to periods on or subsequent to Closing, including but not limited to any tax, utility, common area charges or insurance payments, shall be the obligation of the Purchaser, and no party (including the Purchaser) shall have a claim against the Debtors or their estates for such obligations.

29.   The Tenant and any governmental agency shall accept and honor the assignment of the Lease to the Purchaser in accordance with the Agreement and this Sale Order.

30.   The Tenant shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, installation of signage, opening and operating of the premises associated with the Lease.

20

**D.    Additional Provisions**

31.    The consideration provided by the
Purchaser for the Property and the Lease under the
Agreement is hereby deemed to constitute reasonably
equivalent value and fair consideration under the
Bankruptcy Code, the Uniform Fraudulent Conveyance Act,
the Uniform Fraudulent Transfer Act, and under the laws
of the United States, and any state, territory, or
possession thereof, or the District of Columbia.

32.    The consideration provided by the
Purchaser for the Property and the Lease under the
Agreement is fair and reasonable and the Sale and
Assignment may not be avoided under section 363(n) of
the Bankruptcy Code.

33.    Upon the Closing, this Sale Order shall
be construed as and shall constitute for any and all
purposes a full and complete general assignment,
conveyance, and transfer of all the Property or a bill
of sale transferring good and marketable title in to the
Purchaser pursuant to the terms of the Agreement.

34.    The transactions contemplated by the
Agreement are undertaken by the Seller and the Purchaser

21

at arm's-length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the sale of the Property and assignment of
the Lease shall not affect the validity of the Sale and
Assignment to the Purchaser, unless such authorization
is duly stayed pending such appeal.  The Purchaser is a
purchaser in good faith, within the meaning of section
363(m) of the Bankruptcy Code, of the Property and the
Lease, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

35.  The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

36.  If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of Seller and Seller is

not in default of its obligations under such Agreement,
then Seller's counsel shall file with the Court and
serve upon the Purchaser, the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the
Property and assignment of the Lease with the Alternate
Bidder on ten (10) days' advance written notice to the
Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale
agreement with the Seller, without the necessity of
further order of this Court.

37.   All deposits submitted to the Seller for
the Property and the Lease shall be returned to the
bidder that submitted them no later than (i) two
business days after the closing of the sale with the
Purchaser (or the Alternate Bidder, as the case may be)

23

except in the case of a bidder who closed on the sale of the Property or who was required to close in accordance with the terms of this Sale Order but failed to do so in breach of its contractual obligations through no fault of the Seller.

38. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

39. This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property and the Lease to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Seller pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, the Alternate Bid, and any deposit delivered to Seller by a bidder for the Property and the Lease, (d) interpret, implement, and enforce the provisions of

24

this Sale Order, and (e) protect the Purchaser against

any Lien against the Seller or the Property or the Lease

of any kind or nature whatsoever, except for Permitted

Encumbrances, which Liens, valid and timely perfected,

shall attach to the proceeds of the Sale.

Dated:  Richmond, Virginia
        _____, 2010


        _____
        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of June 30, 2010, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and RODNEY DESSBERG ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain real property located in Sarasota, Florida and being more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land, including, without limitation, all of Seller's right, title, and interest in and to the Billboard Lease (as defined below), but expressly excluding any improvements thereon which, pursuant to the terms of the Billboard Lease, are owned by the tenant under the Billboard Lease (herein collectively called the "Property").

2.    PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be FORTY FIVE THOUSAND AND NO/100 DOLLARS ($45,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's (as defined below) escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

1

3.    DEPOSIT

3.1    Deposit.    Concurrently with execution of this Agreement, Purchaser shall deliver to Chelsea Title Company ("Escrow Agent"), 189 Center Road, Venice, Florida 34285, Attention: Cheryl Vogt,  Phone: (941) 493-4600, Fax: (941) 493-2021, Email: cheryl.vogt@chelseatitle.net, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FOUR THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($4,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit") to be held by Escrow Agent in a non-interest-bearing account in a federally-insured financial institution in the Sarasota, Florida metropolitan area, or in such other non-interest-bearing account or investment as the parties hereto shall direct.

3.2    Application of Deposit.    If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 4.1(b) or Section 9.4 hereof, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given.  The obligation to deliver the Reports shall survive the termination of this Agreement. Purchaser shall not be entitled to the return of the Deposit from Escrow Agent until all Reports have been delivered to Seller.

4.    PREPURCHASE MATTERS

4.1    Items Delivered.

(a)    Seller has delivered or will deliver to Purchaser, within five (5) days following Seller's execution of this Agreement, all title policies and commitments (including copies of all underlying title documents referenced therein), surveys, environmental reports, zoning reports and tax bills regarding the Property that are in Seller's possession or control, if any.

2

(b)     Purchaser has previously delivered or will deliver to Seller within five (5) days after the date of this Agreement proof of available funds adequate to purchase the Property. In the event that Purchaser fails to deliver such proof within the foregoing specified period, Seller shall have the right to terminate this Agreement, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement, except for the Survival Obligations.

4.2     Title Examination.     Within five (5) days after the date of this Agreement, Purchaser shall order from Escrow Agent, as agent for Chicago Title Insurance Company, a commitment for an owner's policy of title insurance (the "Title Commitment"). Within ten (10) days after Purchaser's receipt of the Title Commitment, Purchaser shall give written notice (the "Title Objections Notice") to Seller of any objections thereto; provided, however, that Seller shall have no obligation to satisfy any such objections. Seller shall give written notice (the "Seller's Response") within ten (10) business days after receipt of the Title Objections Notice of whether it agrees to cure such objections prior to Closing. Failure of Seller to send the Seller's Response within such period shall conclusively be deemed to be Seller's election not to cure such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period (as defined below), one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly return the Deposit to Purchaser as Purchaser's sole and exclusive remedy and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations; provided, however, if Seller has agreed to cure or satisfy each such objection specified in the Title Objections Notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement; provided, further, if Purchaser does not send the Title Objections Notice within the period specified herein, or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this Agreement.

4.3     Property Inspection.     Purchaser shall have until the date that is thirty (30) days from and after the date of this Agreement (the "Due Diligence Period") to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser. Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the

3

Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations. If Purchaser does not give a notice of termination pursuant to Section 4.2 or this Section 4.3 at or prior to 5 p.m. (local time in Sarasota, Florida) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to Section 4.2 and this Section 4.3 shall expire and be of no further force or effect.

Subject to the conditions set out in this Section 4.3 and to the rights of the tenant under the Billboard Lease, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller, including, without limitation, any claims made by the tenant under the Billboard Lease, for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

4.4    Reports.    All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence investigation, whether before or after the date of this Agreement (collectively, the "Reports"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the

4

confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

4.5    Purchaser's Representations and Warranties.    Purchaser represents and warrants to Seller that (a) Purchaser is an individual, is authorized to do business in the State of Florida, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.    Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6    Seller's Representations and Warranties.    Seller    represents    and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined below) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted

5

Encumbrances (as defined below). The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

4.7   Further Assurances.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.   DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1   Disclaimer.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR

6

BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

7

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

8

6.    CLOSING

     6.1    <u>Closing</u>.    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "<u>Closing</u>") shall be conducted by mail or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is thirty (30) days after the date of entry by the Bankruptcy Court of the Sale Order (the date on which the Closing occurs is referred to as the "<u>Closing Date</u>").

     6.2    <u>Possession</u>.    Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, (iv) the Billboard Lease; and (v) any and all matters that would be shown by a physical inspection of the Property (collectively, the "<u>Permitted Encumbrances</u>").

     6.3    <u>Prorations</u>.    All real estate taxes and assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available.    Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.  Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

     The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

     6.4    <u>Closing Costs</u>.    Purchaser shall pay all title examination costs, title insurance premiums, survey costs, environmental and engineering costs, and any and all other due diligence costs.  Purchaser shall also pay all transfer taxes and recording fees imposed on the Deed (as defined below) and the Assumption of Lease (as defined below) pursuant to applicable law. Except as otherwise provided herein, each party shall pay its own attorneys' fees.  The parties shall each pay one-half (1/2) any escrow fee charged by Escrow Agent, such one-half not to exceed Two Hundred and No/100 Dollars ($200.00); and, with regard to any other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the State of Florida.

     6.5    <u>Seller's Obligations at the Closing</u>.    At the Closing, Seller shall deliver to Escrow Agent the following:

9

(a)    Deed. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances (the "Deed").

(b)    Assignment and Assumption of Lease.    A counterpart copy of an assignment and assumption of lease, duly executed by Seller, pursuant to which Seller assigns to Purchaser (without representation or warranty) all of Seller's right, title, and interest in and to the Billboard Lease, and Purchaser assumes the same from Seller, as contemplated by the Sale Order (the "Assignment and Assumption of Lease").

(c)    Foreign Person.    An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

6.6    Purchaser's Obligations at the Closing.    At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)    Purchase Price.    The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller), by wire transfer of immediately available funds.

(b)    Assignment and Assumption of Lease.    A counterpart copy of the Assignment and Assumption of Lease, duly executed by Purchaser.

(c)    Evidence of Authority.    Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(d)    Taxpayer I.D. Certificate.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer Identification Number and consenting to Seller's release of this information to any governmental authority.

6.7    Commission. Seller represents that it has not engaged any real estate brokers or agents of record in this transaction, other than DJM Realty (the "Seller's Broker"), and upon Closing, Seller shall pay the Seller's Broker a commission pursuant to a separate written agreement. Purchaser represents that it has not engaged any real estate brokers or agents of record in this transaction other than Wagner Realty (the "Purchaser's Broker"), and upon Closing, Purchaser shall pay the Purchaser's Broker a commission of One Thousand Three Hundred Fifty and No/100 Dollars ($1,350.00). Neither Seller nor Purchaser shall be responsible for any other real estate commissions or

fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS

7.1    <u>Condemnation</u>.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

8.    DEFAULT

8.1    <u>Breach by Seller</u>.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy, may terminate this Agreement and demand the return of the Deposit from Escrow Agent. In no event shall Purchaser be entitled to any remedy other than the return of the Deposit from Escrow Agent and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

8.2    <u>Breach by Purchaser</u>. In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent as liquidated damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

11

9.    BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement, including the assignment and assumption of the Billboard Lease as contemplated by Section 9.5 below.    Promptly following the expiration of the Due Diligence Period, Seller will file with the Bankruptcy Court a motion pursuant to Section 363 and Section 365 of the Bankruptcy Code seeking approval of, among other things, this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement and shall be in a form and substance reasonably satisfactory to Purchaser.  Seller shall be responsible for serving and providing notice of the Sale Motion.

9.3    Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.  Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4    Auction Procedures.   Purchaser acknowledges that the Seller intends to solicit "higher or otherwise better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees (subject to the approval of the Bankruptcy Court and the tenant under the Billboard Lease) to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $49,500.00 shall be required; (b) each initial overbid must be accompanied by a deposit in an amount equal to the amount of the Deposit plus ten percent (10%) of the amount by which such overbid exceeds the Purchaser Price; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing offer is received by Seller, Seller shall conduct an auction (the "Auction") to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the Auction.  The last day for submission of "higher or otherwise better" offers will be August 24, 2010, or such other date established

12

by order of the Bankruptcy Court. In the event that Purchaser is the highest or otherwise best bidder at the Auction, this Agreement shall be deemed to be amended to reflect the terms offered by Purchaser at such Auction, and Purchaser and Seller shall proceed to Closing on such terms.

Notwithstanding any other provision of this Agreement, Seller shall have the right to suspend this Agreement in order to permit Seller to accept a "higher or otherwise better" offer for the Property from a participant in the Auction other than Purchaser. In the event that Purchaser is not the highest or otherwise best bidder at the Auction, but is the next highest or otherwise best bidder at the Auction, Purchaser agrees to keep Purchaser's highest or otherwise best bid open until the closing of a transaction with the highest or otherwise best bidder, and close with Seller if Seller does not close with such highest or otherwise best bidder (subject to Seller's right to terminate this Agreement in accordance with the last sentence of this Section 9.4). If (i) Seller closes the transaction with the highest or otherwise best bidder, or (ii) Purchaser is not the next highest or otherwise best bidder at the Auction, then this Agreement shall be deemed terminated, the Deposit shall be returned to Purchaser, and neither party shall have any further right or obligation hereunder except for the Survival Obligations. Each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to the date that is ninety (90) days following the expiration of the Due Diligence Period.

9.5    Assumption and Assignment of Billboard Lease.    Purchaser and Seller acknowledge that the Property is subject to that certain Sign Panel Agreement, dated as of July 15, 2008, between Seller as "Lessor" and CBS Outdoor, Inc. as "Lessee" (the "Billboard Lease"). The Sale Motion shall seek approval from the Bankruptcy Court for (i) the assumption by Seller of the Billboard Lease in the Bankruptcy Case, and (ii) the assignment by Seller to Purchaser (without representation or warranty) of all of Seller's right, title and interest in and to the Billboard Lease.

9.6    Adequate Assurance of Future Performance. Upon    execution    of    this Agreement, Purchaser shall provide to Seller information demonstrating Purchaser's ability to satisfy the requirements under Section 365(b)(1)(C) and Section 365(f)(2)(B) of the Bankruptcy Code, if applicable (collectively, the "Adequate Assurance Information"). Purchaser expressly agrees that the Adequate Assurance Information may be disclosed to, among other parties in interest in the Bankruptcy Case, (a) the tenant under the Billboard Lease upon the request of such tenant; (b) the Official Committee of Unsecured Creditors in the Bankruptcy Case; (c) the Office of the United States Trustee in the Bankruptcy Case; and (d) the Bankruptcy Court.

10.    MISCELLANEOUS

10.1    Notices.    All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below.  For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

|  |  |
|---|---|
| If to Purchaser: | RODNEY DESSBERG<br>3935 N. Washington Boulevard<br>Sarasota, Florida 34234 |
| with a copy to: | KIRK PINKERTON, P.A.<br>50 Central Avenue, Suite 700<br>Sarasota, Florida 34236<br>Attention: Tim Shaw, Esq. |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President and Controller |
| with a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Matthew T. Gunlock, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written

14

agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3   Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4   Headings. The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence. Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the jurisdiction in which the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law. This Agreement shall be governed by the laws of the State of Florida.

10.7   Successors and Assigns; Assignment. This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall not assign Purchaser's rights under this Agreement without obtaining the prior written consent of Seller. No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8   Invalid Provision. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9   Attorneys' Fees. In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party

15

prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10  <u>Multiple Counterparts.</u>    This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature. Signatures transmitted by facsimile or electronic mail shall be deemed to be originals.

10.11  <u>No Recordation.</u>    Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12  <u>Merger Provision.</u>    Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  <u>Brokers.</u>    Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  <u>Consent to Jurisdiction of Bankruptcy Court.</u>    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set

16

forth above.   Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

17

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Cathi W. Bradshaw_
Name: _Catherine W. Bradshaw_
Title: _VP & Controller_

PURCHASER

Rodney Dessberg

18

The escrow terms and conditions of this Agreement are agreed to and accepted this $\underline{24}$ day of June 2010.

ESCROW AGENT:

CHELSEA TITLE COMPANY

By: _Golda Radefeld_
Name: _Golda Radefeld_
Title: _Assistant Vice President_

Mailing Address:

189 Center Road
Venice, Florida 34285
Attention: Cheryl Vogt

18

<u>EXHIBIT A</u>

LEGAL DESCRIPTION OF PROPERTY

Begin at the NE corner of Lot 2, Block C, WHIT-ACRES, recorded in Plat Book 4, Page 17, of the Public Records of Sarasota County, Florida; thence South along the East line of said Lot 2, 129.4 feet to the SE corner of said Lot 2; thence East along the South line of said Block C, 342.00 feet to the West right of way line of Tamiami Trail; thence North along the West line of said Trail 50.00 feet; thence West and parallel to said South line of Block C, 292.00 feet; thence North and parallel to East line of said Lot 2, Block C, 139.4 feet to the South line of Block B of said WHIT-ACRES; thence West along South line of Block B, 955.00 feet to the West line of said WHIT-ACRES SUBDIVISION; thence South along the West line of subdivision, 60.00 feet to the North line of Block C of said WHIT-ACRES; thence East along the North line of said Block C, 905.00 feet to the Point of Beginning.

Solely existing as a 50.00 foot wide private right of way known as Fiesta Drive, Whit-Acres Subdivision, Per plat thereof recorded in Plat Book 4, Page 17 of the Public Records of Sarasota County, Florida, reserved for purpose of ingress and egress for property owners therein between Whit-Acres subdivision and the Tamiami Trail (U.S. 41).

\11743260.3