Gordon S. Woodward, Esquire (VSB No. 42449)
Schnader Harrison Segal & Lewis LLP
750 9th Street, N.W.
Washington, D.C. 20006
Phone:  202-419-4215
Facsimile:  202-419-3454

*Attorneys for Commerce Technologies, Inc.*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653-KRH<br>Jointly Administered<br>Judge Kevin R. Huennekens |

## RESPONSE OF COMMERCE TECHNOLOGIES, INC. TO DEBTORS' EIGHTIETH OMNIBUS OBJECTION TO CLAIMS

Commerce Technologies, Inc., d/b/a CommerceHub ("CTI"), by and through its undersigned counsel, hereby files this response in opposition to the Debtors' Eightieth Omnibus Objection to Claims [Docket No. 8185] (the "Objection"), and in support thereof, respectfully states as follows:

### BACKGROUND

1. CTI provides services that enable retailers (such as Circuit City) and their suppliers to electronically exchange and process data relating to online customer orders.

2. On February 26, 2004, CTI and Circuit City Stores, Inc., one of the above-captioned debtors, (the "Debtor") entered into a Retailer Agreement (the "Retailer Agreement").

On January 31, 2008, CTI and the Debtors executed an Amendment to the Retailer Agreement (the "<u>Amendment</u>").

3. Under the Retailer Agreement, as amended, CTI agreed to provide the Debtors with certain services, including data mapping of documents, business rule analysis, testing, communications setup, web interface setup, custom packing slip creation, and system integration for purchase orders, shipment confirmation, retailer-branded packing slips, other invoices, inventory availability advice and item setup, returns processing and functional acknowledgements.

4. Under the Retailer Agreement, as amended, CTI and the Debtors agreed that the term of the agreement would extend to February 25, 2011. Moreover, the Amendment provided a fee structure for the services rendered by CTI, as set forth on Appendix A to the Amendment.

5. One such fee is a monthly licensing fee of $13,000.00 due on the first day of each month.

6. On November 10, 2008 (the "<u>Petition Date</u>"), Debtor filed a voluntary petition for Chapter 11 protection.

7. As of the date hereof, the Debtors have not rejected the Retailer Agreement.

8. On May 7, 2009, CTI filed a protective proof of claim (the "<u>Protective Claim</u>"), subsequently designated Claim No. 12886, in an unliquidated amount for anticipated rejection damages.

9. On May 15, 2009, the Court entered an Order [Docket No. 3354] setting June 30, 2009 at 5:00 p.m. (the "<u>First Administrative Bar Date</u>") as the deadline for filing administrative expense requests arising from the Petition Date through April 30, 2009.

10. On June 30, 2009, CTI filed its first Application for Payment of Administrative Expense Claim (the "First Administrative Claim Application"), subsequently designated Claim No. 14282, seeking allowance and payment of its administrative claim in the amount of $67,795.07 (the "First Administrative Claim") representing amounts due under the Retailer Agreement for the months of November 2008, February 2009, March 2009, April 2009 and May 2009.

11. On February 19, 2010, the Court entered an Order [Docket No. 6555] setting March 31, 2010 at 5:00 p.m. as the deadline for filing administrative expense requests arising from June 2009 through December 2009 (the "Second Administrative Bar Date").

12. On March 25, 2010, CTI filed its second Application for Payment of Administrative Expense Claim (the "Second Administrative Claim Application"), subsequently designated Claim No. 14889, seeking allowance and payment of its second administrative claim in the amount of $91,000.00 (the "Second Administrative Claim") representing amounts due under the Retailer Agreement for the months of June 2009 through December 2009.

13. CTI contends that an additional $182,000.00 is due under the Retailer Agreement from January 2010 through the end of the term of the Retailer Agreement.

14. On July 30, 2010, the Debtors filed their Objection to CTI's First Administrative Claim and Second Administrative Claim, seeking to reclassify such claims as $2,701.86 administrative and $156,093.21 unsecured, arguing that the Debtors ceased using CTI's services on January 17, 2010 and therefore the CTI's First Administrative Claim and Second Administrative Claim do not constitute actual and necessary costs of preserving the estate.

15. The Debtors have not objected to CTI's Protective Claim.

**RELIEF REQUESTED**

16.    Section 503 of the Bankruptcy Code provides, in relevant part:

(a) An entity may timely file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—

(1)(A)  the actual, necessary costs and expenses of preserving the estate

17.    Together, Section 507(a) and 503(b) "afford first priority to administrative expenses 'to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate.'" *Bonapfel v. Nalley Motor Trusts* (*In re Carpet Ctr. Leasing Co.*), 991 F.2d 682 (11th Cir. 1993) (internal citations omitted).

18.    "For a claim to qualify as an administrative expense, (1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business." *Stewart Foods, Inc. v. Broecker* (*In re Stewart Foods, Inc.*), 64 F.3d 141, 145 n.2 (4th Cir. 1995) (citations omitted); see also *Devan v. Simon DeBartolo Group, L.P.* (*In re Merry-Go Round Enters., Inc*), 180 F.3d 149, 157 (4th Cir. 1999) ("test to determine actual expense is whether the claim arose out of a post-petition transaction" and "test to determine necessary expense is whether [the creditor's] consideration supporting its right to payment was 'supplied to and beneficial to' [the bankruptcy estate]").

19.    "If the debtor-in-possession elects to receive benefits from the other party to an executory contract pending a decision to reject or assume a contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *NLRB v. Bildisco and Bildisco*, 465

U.S. 513 (1984) (noting that the reasonable value of those services often is the amount specified in the applicable contract).

20. CTI agrees that the Debtors ceased using CTI's services on or around January 17, 2009.

21. CTI further agrees that the $2,701.86 for postpetition order fees and inventory services, as set forth in the Objection, constitutes an administrative claim, and that amounts due and owing under the Retailer Agreement from February 2009 until the expiration of the term constitute an unsecured claim.

22. However, because the Debtors used CTI's services during the period from the Petition Date through the end of November 2008, the $13,000.00 monthly licensing fee should be prorated for that month, and CTI should therefore be entitled to an additional administrative claim in the amount of $9,100.00.

23. In the context of leases of non-residential real property, this Court has recently adopted the accrual method for determining when an obligation to pay rent under a lease arises for the purposes of differentiating between pre-petition and post-petition obligations. *In re Circuit City Stores, Inc.*, 2009 Bankr. LEXIS 672, at *6 (Bankr. E.D. Va. 2009). As such, this Court held that claims for stub rent for the period from the Petition Date through November 30, 2008 are entitled to administrative priority. *Id*. at *17.

24. Here, the monthly license fee at issue is no different than stub rent. Although the November 2008 license fee of $13,000.00 was due ten days prior to the Petition Date on November 1, 2008, application of the accrual method requires that $9,100.00 of such fee be afforded administrative priority based upon the Debtors' continued used of CTI's services from the Petition Date through November 30, 2008.

**RESERVATION OF RIGHTS**

25.     CTI expressly reserves any and all of its rights under the Retailer Agreement, Amendment, any and all other agreements between the Debtors and CTI, and applicable law, including the right to amend its Protective Claim to include damages resulting from subsequent rejection of the Retailer Agreement.  Nothing contained herein shall operate as a waiver of any of CTI's claims, rights and remedies.

WHEREFORE, CTI respectfully requests that this Court enter an Order:

(a)     Overruling the Debtors' Objection to CTI's Claim;

(b)     Allowing CTI an administrative claim in the amount of $11,801.86;

(c)     Allowing CTI a general unsecured claim in the amount of $338,093.21;

(d)     Granting CTI such other and further relief as the Court deems just and proper under the circumstances.

SCHNADER HARRISON SEGAL & LEWIS LLP

Dated:  August 25, 2010                By:  /s/ Gordon S. Woodward
                                       Gordon S. Woodward (VSB No. 42449)
                                       750 9th Street, NW,  Suite 550
                                       Washington, DC 20001-4534
                                       Phone:  202-419-4200
                                       Fax:  202-419-3454
                                       gwoodward@schnader.com

                                       Attorneys for Commerce Technologies, Inc.