Gina Baker Hantel
Senior Counsel
Office of the Tennessee Attorney General
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 532-8928
Facsimile: (615) 741-3334
Gina.Hantel@ag.tn.gov

Counsel for the State of Tennessee
Department of Treasury, Division of
Unclaimed Property

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CIRCUIT CITY STORES, INC., et al., | ) ) | Case No. 08-35653 (KRH) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

**SUPPLEMENTAL RESPONSE BY THE TENNESSEE DEPARTMENT OF TREASURY UNCLAIMED PROPERTY DIVISION TO DEBTORS' FORTY THIRD OMNIBUS OBJECTION TO CLAIMS**

Comes now the Tennessee Attorney General, Robert E. Cooper, through undersigned counsel, on behalf of the Tennessee Department of Treasury, Unclaimed Property Division ("Treasury"), and respectfully files this supplemental response to Debtors' Forty-Third Omnibus Objection to Claims. In support of this response and the Proof of Claim filed by Treasury (Claim No. 14567), Treasury states as follows:

1.  The Debtors filed for Chapter 11 Bankruptcy relief on November 10, 2008. The governmental claims bar date was established as May 11, 2009.

1

2. On or about April 19, 2009, Treasury forwarded information to the Bankruptcy Division of the Tennessee Attorney General's Office ("Office") that would enable creation of a proof of claim in the amount of $200,545.51 (general unsecured) to be filed in Debtors' bankruptcy. However, this Office did not discover the claim information until August 19, 2009, at which point the claim was sent by overnight mail service for filing on August 20, 2009.

3. On or about August 24, 2009, Debtors filed their Disclosure Statement. On or about September 29, 2009, Debtors filed their Plan. It is undisputed that Debtors had constructive knowledge of Treasury's proof of claim before the Disclosure Statement and Plan were filed. The Plan has not been confirmed.

4. On or around September 21, 2009, Debtors filed their Forty-third Omnibus Objection to Claims. The Debtors objected to Claim No. 14567 as being late-filed. Treasury urges this Court to find excusable neglect by reviewing all the facts and circumstances surrounding the late filing.

5. Bankruptcy Rule 9006(b)(1) governs the enlargement of periods of time set by the Bankruptcy Rules. The Court has the power to enlarge the time, in order to permit a late filing due to the movant's failure to comply with an earlier deadline, as a result of "excusable neglect." The Rule states:

> . . . when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

6.  The United States Supreme Court has provided a working definition of excusable neglect. *Pioneer Inv. Servs. Co. V. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489 (1993). Excusable neglect consists of five elements, including (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the movant, and (5) whether the movant acted in good faith. *Id.* at 395. *See also In re Alexander's, Inc.*, 176 B.R. 715 (Bankr. S.D.N.Y. 1995), *Chateaugay Corp. v. LTV Steel Co. Inc. (In re Chateaugay Corp.)*, 1993 WL 127180 (S.D.N.Y. 1993) (both including adequacy of notice as a factor in determining excusable neglect). The Court also held that Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late claims caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the movant's control. *Pioneer,* 507 U.S. at 388. In determining the existence of excusable neglect a court must take into account all circumstances related to the late filing. *Id.* at 395.

7.  The burden of proving excusable neglect rests with the movant. *In re Keene*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). For the reasons set forth below, the Treasury's proof of claim should be accepted as a timely-filed claim, because allowing the claim will not unduly prejudice the Debtors, and because Treasury and this Office have acted in good faith to correct an avoidable, but nonetheless understandable, mistake.

**A.     The Delay Was Not Prejudicial to the Debtors**

8.  In exercising broad equitable powers to balance the interests of the affected parties, the courts are to be guided by the overriding goal of ensuring the success of the reorganization. *Pioneer*, 507 U.S. at 389. Prejudice to the debtor is more complex than a dollar-

for-dollar depletion of assets otherwise available for timely filed claims. *In re R. H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y. 1994). Determination of prejudice to the debtor depends on consideration of the circumstances. *Id.* The pertinent circumstances include the size of the late claim in relation to the estate, the possible disruptive effect the late filing would have on a plan close to completion, *id.*, and the expectation that a creditor would file a claim. *In re Alexander's, Inc.*, 176 B.R. at 722, see also *In re Keene Corp.*, 188 B.R. at 910.

9. Treasury's general unsecured claim in this case is $200,545.51. While this is no small amount standing alone, it pales in comparison to Debtors' total unsecured liabilities which total almost $2 billion as described in the Petition Schedule of Assets and Liabilities.

10. Treasury's claim stems from an audit regarding unclaimed property, or rebate holders. The audit began in 2007. At that time, Circuit City engaged the law firm of Alston & Bird to advise with respect to the impending audit. The audit results were forwarded to Treasury on or around April 19, 2009. The audit was not based on a sampling, but rather on actual rebate checks issued, dates, check numbers, and consumer names. Furthermore, Debtors scheduled Treasury's claim three times on Schedule F, which was filed in December 2008. Under these circumstances, it is indisputable that Debtors had knowledge of Treasury's audit not only prior to the bar date, but also prior to the filing of the Disclosure Statement, prior to the Plan, and prior to the bankruptcy filing, and should have expected that the Treasury would file a claim in the bankruptcy. Consequently, there can be no prejudice to Debtors of this comparatively small, general unsecured and anticipated claim.

**B.     The Length of the Delay Did Not Negatively Impact Court Proceedings**

4

11.     Factors applicable to determining the impact of the delay include the reason for the delay and prejudice to the other party. *Kearney & Trecker Corp. v. Liberty Mut. Ins. Co.*, 1993 WL 525491, *2 (S.D.N.Y. 1993). Delay can have a negative impact on judicial proceedings where the debtor has confirmed or accepted a plan, and the introduction of a late claim would require recomputation and recasting. *In re Keene*, 188 B.R. at 912-913; *In re Alexander's Inc.*, 176 B.R. at 722. That is not the case here.

12.     As discussed before, the Treasury's claim was filed prior to the filing of a disclosure statement and plan of liquidation. In addition, the Debtors should have had prior knowledge of the claim before the preparation of a disclosure statement and plan. Under these circumstances, the Treasury asserts that its late-filed claim did not negatively impact this Court's proceedings.

**C.     Treasury Has Acted in Good Faith**

13.     Good faith is a long-standing legal concept, usually equated with honesty of intention and acting equitably. *American Home Assurance Co. v. Baltimore Gas & Elec. Co.*, 187 WL 4928, *5 (mem.) (S.D.N.Y. 1987), see also *In re Arlco, Inc.*, 239 B.R. 261, 268 (mem.) (Bankr. S.D.N.Y. 1999). Good faith implies honest and reasonable conduct in the circumstances. *Id.* at *4. In determining good faith, the Court must review each case on the merits, using a sense of what is equitable in a given case. *Matter of Bellgraph*, 4 B.R. 421, 423 (mem.) (Bankr. W.D.N.Y. 1980).

14.     The Treasury acted in good faith when it filed its proof of claim in this case. There is no evidence that suggests otherwise. There was also no improper basis for the filing of

the claim past the bar date. Treasury gained no benefit from delaying the filing of its proof of claim. Undisputedly, it was in the best interests of Treasury to file its claim timely.

**D.      Treasury's Failure to File the Proof of Claim Before the Bar Date Is Excusable Neglect**

15.      The reason for the delay, including whether it was within the reasonable control of the movant is very important. *Jin v. Metro. Life Ins. Co.*, 2003 WL 21436211, *3 (S.D.N.Y. 2003), citing *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994); *Active Glass Corp. v. Architect & Ornamental Iron Workers Local*, 899 F.Supp. 1228, 1231 (S.D.N.Y. 1995) (Leisure, J); *Mason v. Schriver*, 1999 WL 498221, *2-3 (S.D.N.Y. 1999) (Preska, J). However, excusable neglect is not limited to omissions caused by circumstances beyond control of the movant. *Raymond v. International Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (per curiam), see also *Au Coton, Inc.*, 171 B.R. 16, 17 (S.D.N.Y. 1994). The Court is permitted, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the movant's control. *In re Hills Stores Co.*, 197 B.R. 348, 351 (Bankr. S.D.N.Y. 1994). Mere inadvertence alone, can be enough to constitute excusable neglect. *Raymond*, 148 F.3d at 66.

16.      In considering the reason for the delay, Treasury respectfully urges the Court to consider all of the facts and circumstances, including Debtors' culpability in the process. Debtors listed Treasury three times on Schedule F (docket #1130). They were fully aware of the multi-state unclaimed property audit since 2007. On the matrix, it is apparent that notices went out to many state treasury departments. From the inception of the case, Debtors have deliberately tried to exclude consumers with potential rebate claims. In Feb. 2010, Debtors filed a motion with the Court seeking retroactive sanctioning of their conscious decision at the

6

beginning of the case not to serve notice of the case on potential rebate claim holders. Debtors withdrew the motion. While the substance of those claims is not before the Court, Treasury urges the Court to give it the opportunity to defend the claim on the merits as the only representative, at least the Tennessee claimants, will have. Here again, Treasury's claim is a small portion. Treasury respectfully suggests to the Court that if the claim is disallowed, that the Debtors be required to notice all potential rebate holders. Otherwise, an entire class of creditors is denied due process.

17. While courts generally do not look on office procedural inadequacies as excusable neglect, there are fact specific differences that distinguish this case: First, the sheer volume of work, second, the changes that were being implemented that align the mistake with more technical mistakes, and third, the fact that Treasury is not a usual client. The inadvertently misplaced proof of claim can be understandably attributed to the sheer number of papers and claims handled by this Office's bankruptcy division in its role as bankruptcy counsel for the various departments and agencies of the State of Tennessee. In addition to all of the other pleadings and documents that it handles, the Office filed approximately 4,162 proofs of claim in 2009. Of these, 589 were out of state claims. Only one of these came from Treasury. From January 2010 to July 31, 2010, this Office filed approximately 2,271 claims, 338 of which are out of state proofs of claim, and none of which are for Treasury. In the past 20 months, only one claim has been for Treasury.

18. As of August 27, 2010, the Office had 15,184 active case files shared among 10 attorneys and 17 support staff. During the four months including April 2009-August 2009, the Office opened 42,151 pieces of paper mail. The Office received and processed approximately

102,610 pieces of paper mail in 2009. In addition to the heavy load of paper mail, the attorneys received approximately 219,026 pieces of electronic mail from May-December 2009.

19. The matter is additionally complicated by changes in the processing of bankruptcy cases in the Office, from paper files to electronic in 2009. Claim information coming into the Office in paper form had to be routed electronically. Needless to say, considering the sheer task of operating this bankruptcy claim filing operation in the first place, it was made considerably more difficult given the disruptiveness of transferring paper to electronic data. Thus, while this mistake was admittedly not beyond the control of this Office and may have been avoidable, it was certainly not due to purposeful or reckless neglect. Treasury submits that the volume and circumstances rise to the level of excusable neglect.

20. The delay of the filing of the Treasury's proof of claim was not prejudicial to the Debtors, since they had actual knowledge of Treasury's audit prior to the bankruptcy filing and had knowledge of Treasury's claim before the filing of a disclosure statement and plan, and had scheduled the claim three times in filing Schedule F in December 2008. The length of the delay did not significantly or negatively impact the Court's proceedings. The Treasury and this Office filed its late claim in good faith, and due to the high numbers of proofs of claim, open cases, pieces of mail, and the change in procedure at the time the claim was processed, the delay was certainly not purposeful or reckless, nor was it prejudicial. Under these circumstances, and based on evidence to be presented at a hearing on this objection, Treasury submits that its late-filed claim should be allowed as timely due to excusable neglect.

WHEREFORE, Treasury prays that the Court enter an Order denying Debtors' objection to Claim No. 14567 filed by Treasury, specifying that Treasury's claim shall be classified as a

timely filed claim, to be paid according to the Debtors' Plan of Liquidation, that in the alternative, the Court order the Debtors to allow a proper period of notice and additional claim bar date for any potential rebate claim holder, and granting such other relief that the Court deems appropriate.

        Respectfully Submitted,

        ROBERT E. COOPER, Jr.
        Attorney General & Reporter

        By: /s/ Gina Baker Hantel
        GINA BAKER HANTEL (TN BPR # 018019)
        Senior Counsel
        Tennessee Attorney General's Office
        Bankruptcy Division
        P.O. Box 20207
        Nashville, TN 37202
        Tel: (615) 532-8928
        Fax: (615) 741-3334
        E-mail: Gina.Hantel@ag.tn.gov

        Attorney for the Tennessee Department of Treasury

## CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been forwarded electronically and/or by first class U.S. postage prepaid to the following:

Gregg M. Galardi
Ian S. Fredericks,
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square

PO Box 636
Wilmington, DE 19899-0636

Chris L. Dickerson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Dr.
Chicago, IL 60606

Douglas M. Foley
Sarah B. Boehm
MAGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219                                    On  this  the  30th  day  of  August,  2010