Gregg M. Galardi, Esq.            Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.           Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION, PURSUANT TO BANKRUPTCY CODE SECTION 105 AND BANKRUPTCY RULE 9019, FOR ORDER APPROVING SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE DEBTORS AND THE POST-PETITION DIRECTORS AND OFFICERS OF INTERTAN, INC. AND VENTOUX INTERNATIONAL, INC.**

Circuit City Stores, Inc. ("Circuit City") and its subsidiary debtors and debtors in possession in the above-captioned jointly administered cases (collectively with

Circuit City, the "Debtors")[1] hereby move (the "Motion"),

pursuant to section 105 of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of

an order (the "Order") approving the settlement agreement

and stipulation (the "Settlement Agreement"), substantially

in the form attached hereto as <u>Exhibit A</u>, by and among the

Debtors and the Post-Petition Officers and Directors (as

defined herein) of InterTAN, Inc. ("InterTAN") and Ventoux

International, Inc. ("Ventoux"), solely in their capacity as

post-petition officers and directors of InterTAN and Ventoux.

In support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider this

Motion under 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding under 28 U.S.C. § 157(b).  Venue of these cases

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company
of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer
Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,
LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
LLC (5512).  The address for the Debtors is 4951 Lake Brook Drive,
Suite #500, Glen Allen, VA 23060.

and this Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.

    2.    The statutory and legal predicates for the

relief requested herein are Bankruptcy Code section 105 and

Bankruptcy Rule 9019.

                          **BACKGROUND**

**A.    General Case Background.**

    3.    On November 10, 2008 (the "Petition Date"),

the Debtors filed voluntary petitions in this Court for

relief under chapter 11 of the Bankruptcy Code.

    4.    The Debtors continue to manage and operate

their businesses as debtors in possession pursuant to

Bankruptcy Code sections 1107 and 1108.

    5.    On November 12, 2008, the Office of the

United States Trustee for the Eastern District of Virginia

appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").  To date, no trustee or examiner

has been appointed in these chapter 11 cases.

    6.    On January 16, 2009, the Court authorized the

Debtors, among other things, to conduct going out of

business sales at the Debtors' remaining 567 stores pursuant

to an agency agreement (the "Agency Agreement") between the

Debtors and a joint venture, as agent (the "Agent").  On

3

January 17, 2009, the Agent commenced going out of business
sales pursuant to the Agency Agreement at the Debtors
remaining stores.  As of March 8, 2009, the going out of
business sales at the Debtors' remaining stores had been
completed.

7.   On September 29, 2009, the Debtors and the
Creditors Committee (together, the "Plan Proponents") filed
the First Amended Joint Plan of Liquidation of Circuit City
Stores, Inc. and its Affiliated Debtors and Debtors In
Possession and its Official Committee of Creditors Holding
General Unsecured Claims (the "Plan").

8.   The associated disclosure statement (the
"Disclosure Statement") was approved on September 24, 2009.
Confirmation of the First Amended Plan was originally
scheduled for November 23, 2009, but has been adjourned from
time to time.

9.   On June 1, 2010, the Creditors' Committee
filed the Plan of Liquidation Proposed by the Official
Committee of Creditors of Circuit City Stores, Inc. and its
Affiliated Debtors and Debtors in Possession (the "Committee
Plan") (D.I. 7678).  The Committee Plan is substantially
similar to the First Amended Plan, as the Committee Plan
provides for the liquidation of the Debtors' remaining

4

assets and distributions to creditors through a liquidating
trust.

10.   On June 2, 2010, the Debtors filed the
Debtors' Motion for Order Directing Mediation with Respect
to First Amended Joint Plan of Liquidation of Circuit City
Stores, Inc. and Its Affiliated Debtors and Debtors in
Possession and Its Official Committee of Creditors Holding
General Unsecured Claims (the "Mediation Motion") (D.I.
7687), pursuant to which the Debtors requested that the
Bankruptcy Court order the Debtors and the Creditors'
Committee to mediate their differences with respect to the
First Amended Plan and the Committee Plan.

11.   The Creditors' Committee supported the
Mediation Motion and, following a hearing on June 24, 2010,
the Bankruptcy Court entered an order granting the Mediation
Motion (D.I. 7912, the "Mediation Order").

12.   Pursuant to the Mediation Order, mediation
commenced on July 14, 2010 before the Honorable Frank J.
Santoro (the "Mediator").

13.   Following extensive negotiations during the
mediation, the Plan Proponents reached an agreement on the
outstanding issues (the "Mediation Agreement").

14.   On August 9, 2010, the Debtors and the
Creditors' Committee filed the Second Amended Joint Plan of
Liquidation of Circuit City Stores, Inc. and its Affiliated
Debtors and Debtors In Possession and its Official Committee
of Creditors Holding General Unsecured Claims (the "Plan").

15.   Generally, the Plan provides for the
liquidation of the Debtors' remaining assets under chapter
11 of the Bankruptcy Code and distribution of the proceeds
thereof to the Debtors' creditors.

## RELIEF REQUESTED

16.   By this Motion, the Debtors, with the support
of the Creditors' Committee, request that the Court approve
the Settlement Agreement under Bankruptcy Code section 105,
as well as Bankruptcy Rule 9019.

## BASIS FOR RELIEF

**B.   The Canadian Bankruptcy Cases.**

17.   On the same day that the Debtors filed their
Chapter 11 bankruptcy petitions, InterTAN Canada Ltd.
("InterTAN Canada"), a wholly owned subsidiary of InterTAN,
and Tourmalet Corporation, a wholly owned subsidiary of
Ventoux ("Tourmalet" and together with InterTAN Canada, the
"Canadian Debtors") commenced insolvency cases (the
"Canadian Bankruptcy Cases") in the Ontario Superior Court

of Justice under the Companies' Creditors Arrangement Act in Canada (the "CCAA").

18.   In connection with the Canadian Bankruptcy Cases, the Canadian Court issued an "initial order", which, among other things, imposed a stay of all proceedings against InterTAN Canada and Tourmalet and their property in Canada.

19.   The initial order also appointed Alvarez & Marsal Canada ULC as the monitor (the "Monitor") in the Canadian Bankruptcy Cases.

20.   Prior to and following the Petition Date, Circuit City and the Canadian Debtors were attempting to sell the Canadian operations.  On or about March 10, 2009, the Canadian Court entered an order approving the sale of substantially all of InterTAN Canada's assets to 4458729 Canada Inc., a subsidiary of Bell Canada (the "Canadian Sale").

21.   On or about March 20, 2009, the Bankruptcy Court entered an order (Docket No. 2711) approving the Canadian Sale.

22.   Since the closing of the Canadian Sale, the Canadian Debtors and the Monitor, with the assistance of officers of the Debtors, have been working to reconcile

7

claims filed in the Canadian Bankruptcy Cases and distribute the sale proceeds from the Canadian Sale in accordance with the priority scheme set forth in the CCAA.

23.   As of July 1, 2010, nearly all claims filed in the Canadian Cases had been reconciled and paid in full with interest.

24.   As a result of the purchase price received in the Canadian Sale, the Canadian Debtors, the Debtors, the Monitor and the Creditors' Committee have been operating under the assumption that there would be certain sale and other liquidation proceeds that would be available to repatriate to InterTAN and ultimately to the creditors of the Debtors.

**C.   InterTAN Canada's French Operations And Liquidation.**

25.   In the mid-1980s, InterTAN Canada conducted business in France through a "permanent establishment" in France and a subsidiary, InterTAN France SNC ("InterTAN France").

26.   InterTAN Canada owns 99.99% of the shares in InterTAN France.   The remaining shares are owned by 587225 Ontario Ltd -- a wholly owned subsidiary of InterTAN Canada.

27.   In 1993, InterTAN Canada made the decision to cease its business operations in Europe.   InterTAN France's

8

business operations were completely shutdown by May 31,
1994.

28.  On February 13, 1995, InterTAN Canada's
French permanent establishment was placed in judicial
liquidation in France.

29.  On July 18, 1997, the judicial liquidation of
InterTAN Canada's French permanent establishment was
expanded to include InterTAN France.

30.  Between 1997 and 2000, a judicial liquidator
sold the assets of InterTAN Canada's French permanent
establishment and InterTAN France and used the proceeds to
satisfy claims of their creditors.

31.  On January 21, 2000, a judgment of the
Commercial Court of Pontoise found that the liquidator had
been able to pay all of the debts of InterTAN Canada's
French permanent establishment and InterTAN France.  As a
result, the judicial liquidation of InterTAN France and the
French permanent establishment of InterTAN Canada was
closed.

32.  Neither InterTAN Canada (through a French
permanent establishment or otherwise) nor InterTAN France
carries out business activities or maintains offices or
employees in France.

33.   Based on the foregoing, InterTAN Canada and InterTAN France might potentially be indebted to France on account of one or more taxes (the "Potential Liability").

**D.   The 2004 Merger.**

34.   Circuit City is the direct or indirect parent of all of the other Debtors.  In addition, as the result of a multi-step transaction in May 2004, Circuit City, through various subsidiaries, acquired the InterTAN Canada and its subsidiaries, including InterTAN Canada's 99.9% of interest in InterTAN France.

35.   Specifically, on or about March 30, 2004, Circuit City and a wholly-owned subsidiary, Winston Acquisition Corporation ("Winston") entered into an Acquisition Agreement and Plan of Merger with InterTAN, Inc. ("Old InterTAN") (the "Acquisition Agreement") pursuant to which Winston would purchase all the outstanding shares of Old InterTAN's common stock and, thereafter, merge with Old InterTAN to form InterTAN – one of the Debtors.  At that time, Old InterTAN was parent of InterTAN Canada and indirectly the parent of InterTAN Canada's affiliates and subsidiaries.

36.  To facilitate the merger, Circuit City also caused two other subsidiaries -- Ventoux and Tourmalet -- to be formed.

37.  Once the merger and related transactions were completed, from top to bottom, the corporate structure was as follows:  Circuit City wholly owned Ventoux; Ventoux wholly owned Tourmalet and owned all of the outstanding common shares of InterTAN; Tourmalet owned all of the preferred shares of InterTAN; InterTAN owned InterTAN Canada; InterTAN Canada continued to own 99.9% of the partnership interests in InterTAN France; and 587225 Ontario Ltd. continued to own 0.1% of the partnership interests in InterTAN France.

**E.   Notice(s) Of Circumstances.**

38.  Based on the Potential Liability, the Debtors and the Creditors' Committee provided a "notice of circumstances" to Old InterTAN's prior director and officer liability insurers of facts and circumstances that may give rise to one or more claims under such insurance policies.

39.  Based on the Potential Liability, the Debtors and the Creditors' Committee are also evaluating whether to provide a notice of circumstances to the Debtors' pre- and post-petition directors and officers liability insurers of

11

facts and circumstances that may give rise to one or more
claims under such insurance policies.

**F.   InterTAN's And Ventoux's Post-Petition Directors And Officers And Their Potential Claims.**

40.   Bruce H. Besanko, Catherine W. Bradshaw, Heather M. Ferguson, Reginald D. Hedgebeth, Jeffrey A. McDonald, Michelle O. Mosier, John M. Oakey, III, and Danny W. Ramsey have served as post-petition officers and directors of InterTAN and Ventoux (collectively, and solely in their capacity as post-petition officers and directors of InterTAN and Ventoux, the "Post-Petition Officers and Directors") during the Debtors' Chapter 11 cases.

41.   InterTAN's and Ventoux's articles of incorporation and/or bylaws provide for indemnification of the Post-Petition Officers and Directors in accordance with the terms and conditions thereof and applicable state law.

42.   The Post-Petition Officers and Directors may have administrative claims for indemnification.

**G.   The Debtors And The Creditors' Committee's Settlement Concerning The Plan.**

43.   Under the First Amended Plan, the Debtors and the Creditors' Committee had included provisions exculpating and releasing the Post-Petition Officers and Directors for

12

their post-petition conduct relating to the First Amended

Plan and the Chapter 11 Cases; and

44.   Pursuant to the Mediation Agreement, the

Debtors and the Creditors' Committee removed the Potential

Liability from the exculpation and release provisions in the

Plan.

45.   Pursuant to the Mediation Agreement, the

Debtors and the Creditors' Committee further agreed that the

Debtors would enter into and seek Court approval of a

settlement agreement between the Debtors and the Post-

Petition Directors and Officers with respect to the

Potential Liability insofar as the post-petition period is

concerned, the terms of which are set forth in the

Settlement Agreement.

46.   Finally, pursuant to the Mediation Agreement,

the Plan provides that it is a condition to the Effective

Date (as defined in the Plan) that the Court enter an order

approving the Settlement Agreement.

**THE SETTLEMENT AGREEMENT[2]**

47. Pursuant to the terms of the Settlement Agreement, which is attached hereto as <u>Exhibit A</u>, the Debtors and the Post-Petition Officers and Directors agree as follows:

(a) <u>Release of Post-Petition Officers' and Directors' Claims</u>: The Post-Petition Officers and Directors hereby waive any administrative claims against InterTAN and Ventoux and their bankruptcy estates for indemnification and contribution arising from, relating to, or arising out of any tax liability under French law relating to InterTAN Canada, the French permanent establishment of InterTAN Canada, and InterTAN France, or any aspect thereof.

(b) <u>Release of the Debtors' Claims</u>: InterTAN and Ventoux hereby waive and release the Post-Petition Officers and Directors from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities in connection with, relating to, or arising from and after the Petition Date in connection with their role as post-petition officers and directors of InterTAN and Ventoux, including (without limitation) any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities arising from, relating to, or arising out of any tax liability under French law relating to InterTAN Canada, the French permanent establishment of InterTAN Canada, or InterTAN France, or any aspect thereof.

---

[2] This section of the Motion is intended as a summary of the Settlement Agreement and is qualified in all respects by the terms of the Settlement Agreement. To the extent that any description of the Settlement Agreement contained herein conflicts with the terms of the Settlement Agreement, the Settlement Agreement shall control in all respects.

**APPLICABLE AUTHORITY**

I.    **THE SETTLEMENT AGREEMENT SHOULD BE APPROVED UNDER
      BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE SECTION 105.**

          48.   Bankruptcy Rule 9019 provides that the Court
"may approve a compromise or settlement."  Compromises are
tools for expediting the administration of the case and
reducing administrative costs and are favored in bankruptcy.
See In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir.
1994)("To minimize litigation and expedite the
administration of a bankruptcy estate, 'compromises are
favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960
(7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir.
1996).  Various courts have endorsed the use of Bankruptcy
Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc.,
196 B.R. 268 (S.D.N.Y. 1996).

          49.   The standards by which a court should
evaluate a settlement are well established.  In addition to
considering the proposed terms of the settlement, the court
should consider the following factors:

          (a)  the probability of success in litigation;

          (b)  the difficulty in collecting any judgment that may
               be obtained;

          (c)  the complexity of the litigation involved, and the
               expense inconvenience and delay necessarily
               attendant to it; and

(d)  the interest of creditors and stockholders and a
proper deference to their reasonable views of the
settlement.

See Protective Comm. for Indep. Stockholders of TMT Trailer

Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); In re

Frye, 216 B.R. 166, 174 (E.D. Va. 1997); United States ex.

Rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 152 (D.

Md. 2001).

       50.  The decision to approve a settlement or

compromise is within the discretion of the court and is

warranted where the settlement is found to be reasonable and

fair in light of the particular circumstances of the case.

See TMT Trailer Ferry, 390 U.S. at 424-25.  The settlement

need not be the best that the debtor could have achieved,

but need only fall "within the reasonable range of

litigation possibilities."  In re Telesphere Communications,

Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994).  In making

its determination, a court should not substitute its own

judgment for that of the debtor and should defer to the

debtor so long as there is a reasonable business

justification.  See In re Martin, 91 F.3d at 395; In re

Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000).  The court

should exercise its discretion "in light of the general

public policy favoring settlements." <u>In re Hibbard Brown &</u>
<u>Co., Inc.</u>, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); <u>Nellis v.</u>
<u>Shugrue</u>, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("[T]he general
rule [is] that settlements are favored and, in fact,
encouraged by the approval process outlined above.").

51.    Here, approval of the Settlement Agreement is
warranted because each factor in <u>TMT Trailer Ferry</u> weighs in
favor of approving the Settlement Agreement or is neutral.
In particular, the Debtors believe that the Settlement
Agreement is in the best interests of all of the Debtors'
estates for several reasons.

52.    First, the Debtors maintain that the
Potential Liability, if it exists at all, is very small.  In
addition, the Debtors believe that any Potential Liability
was fixed prior to the Petition Date and, thus, that there
are no valid claims that may be asserted against the Post-
Petition Officers and Directors of InterTAN and Ventoux.
Specifically, to the extent any such liability exists, it
has increased minimally, if at all, during the post-petition
period, or for that matter since the merger in 2004.

53.    Second, litigation concerning the Potential
Liability could be very complex because the Potential
Liability, if it exists, is not a liability at either

17

InterTAN or Ventoux.  Instead, it is a liability, if at all, at InterTAN Canada, InterTAN's direct subsidiary.

54.   Third, the Debtors believe that collecting any judgment that may be obtained against the Post-Petition Officers and Directors of InterTAN and Ventoux could be difficult and time consuming.  Moreover, the mere assertion of such claims against the Post-Petition Officers and Directors would inevitably give rise to claims for indemnification, which would undermine the benefit of any recovery on account of litigation against the Post-Petition Officers and Directors.

55.   Finally, claims against the Post-Petition Officers and Directors will likely also trigger claims for indemnification and reimbursement by certain officers and directors of the Canadian Debtors.  Consequently, the claim process that is now nearly complete in the Canadian Bankruptcy Cases would likely be reopened and the repatriation of any cash from the Canadian Sale to the domestic Debtors' bankruptcy estates would be delayed.

56.   Based on the foregoing, the Debtors submit that the proposed Settlement Agreement, which releases both any indemnification claims by the Post-Petition Officers and Directors against the Debtors and any claims by the Debtors

18

against the Post-Petition Officers and Directors, is beneficial to and in the best interests of their estates and their creditors.  The Settlement Agreement represents a compromise that is fair and equitable, falls well within the range of reasonableness, and satisfies the standards for approval under applicable law.

57.  Accordingly, for the reasons detailed herein, approval of the Settlement Agreement is warranted under Bankruptcy Rule 9019.

58.  Finally, Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As noted above, approval of the relief requested herein furthers the Debtors' efforts to minimize the risk of litigation and to resolve claims in a manner that benefits the Debtors and is fair and equitable to other parties in interest.  Accordingly, approval of the Settlement Agreement is further justified under Bankruptcy Code section 105.

## NOTICE

59.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Supplemental Order Pursuant to Bankruptcy Code Sections 102

19

and 105, Bankruptcy Rules 2002 and 9007, and Local

Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain

Amended Notice, Case Management and Administrative

Procedures (Docket No. 6208) and to the Post-Petition

Officers and Directors.  The Debtors submit that, under the

circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

60.  Pursuant to Local Bankruptcy Rule 9013-1(G),

and because there are no novel issues of law presented in

the Motion and all applicable authority is set forth in the

Motion, the Debtors request that the requirement that all

motions be accompanied by a separate memorandum of law be

waived.

### NO PRIOR REQUEST

61.  No previous request for the relief sought

herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as may be just and proper.

Dated: September 3, 2010    SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia     FLOM, LLP
    Gregg M. Galardi, Esq.
    Ian S. Fredericks, Esq.
    P.O. Box 636
    Wilmington, Delaware 19899-0636
    (302) 651-3000

          - and -

    SKADDEN, ARPS, SLATE, MEAGHER &
     FLOM, LLP
    Chris L. Dickerson, Esq.
    155 North Wacker Drive
    Chicago, Illinois 60606
    (312) 407-0700

          - and -

    MCGUIREWOODS LLP

    /s/ Douglas M. Foley       .
    Douglas M. Foley (VSB No. 34364)
    Sarah B. Boehm (VSB No. 45201)
    One James Center
    901 E. Cary Street
    Richmond, Virginia 23219
    (804) 775-1000

    Counsel for Debtors and Debtors
    in Possession

## EXHIBIT A

**(Settlement Agreement)**

Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
        Debtors.              :    Jointly Administered
- - - - - - - - - - - - - - x

**SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE
DEBTORS AND THE POST-PETITION DIRECTORS AND OFFICERS OF
INTERTAN, INC. AND VENTOUX INTERNATIONAL, INC.**

This settlement agreement and stipulation (this

"Settlement Agreement") is entered into by and among the

above-captioned debtors and debtors in possession (the

"Debtors")[1], on the one hand, and the Post-Petition Officers

and Directors (as defined herein) of InterTAN, Inc.

("InterTAN") and Ventoux International, Inc. ("Ventoux")

solely in their capacity as post-petition officers and

directors of InterTAN and Ventoux, on the other hand.  The

Debtors and the Post-Petition Officers and Directors are

sometimes referred to herein collectively as the "Parties"

or individually as a "Party".

**BACKGROUND**

**A.    The Debtors' Bankruptcy Cases.**

WHEREAS, on November 10, 2008 (the "Petition

Date"), the Debtors each filed a voluntary petition in the

United States Bankruptcy Court for the Eastern District of

Virginia (the "Court") under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"); and

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company
of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer
Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval,
LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
LLC (5512).  The address for the Debtors is 4951 Lake Brook Drive,
Suite #500, Glen Allen, VA 23060.

WHEREAS, the Debtors have continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded; and

WHEREAS, on September 29, 2009, the Debtors and the Creditors' Committee (together, the "Plan Proponents") filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "First Amended Plan"); and

3

WHEREAS, the associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the First Amended Plan was originally scheduled for November 23, 2009, but has been adjourned from time to time; and

WHEREAS, on June 1, 2010, the Creditors' Committee filed the Plan of Liquidation Proposed by the Official Committee of Creditors of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession (the "Committee Plan") (D.I. 7678). The Committee Plan is substantially similar to the First Amended Plan, as the Committee Plan provides for the liquidation of the Debtors' remaining assets and distributions to creditors through a liquidating trust; and

WHEREAS, on June 2, 2010, the Debtors filed the Debtors' Motion for Order Directing Mediation with Respect to First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (the "Mediation Motion") (D.I. 7687), pursuant to which the Debtors requested that the Bankruptcy Court order the Debtors and the Creditors'

4

Committee to mediate their differences with respect to the
First Amended Plan and the Committee Plan; and

WHEREAS, the Creditors' Committee supported the
Mediation Motion and, following a hearing on June 24, 2010,
the Bankruptcy Court entered an order granting the Mediation
Motion (D.I. 7912, the "Mediation Order"); and

WHEREAS, pursuant to the Mediation Order,
mediation commenced on July 14, 2010 before the Honorable
Frank J. Santoro (the "Mediator"); and

WHEREAS, following extensive negotiations during
the mediation, the Plan Proponents reached an agreement on
the outstanding issues (the "Mediation Agreement"); and

WHEREAS, on August 9, 2010, the Debtors and the
Creditors' Committee filed the Second Amended Joint Plan of
Liquidation of Circuit City Stores, Inc. and its Affiliated
Debtors and Debtors In Possession and its Official Committee
of Creditors Holding General Unsecured Claims (the "Plan");
and

WHEREAS, generally, the Plan provides for the
liquidation of the Debtors' remaining assets under chapter
11 of the Bankruptcy Code and distribution of the proceeds
thereof to the Debtors' creditors; and

5

**B.    The Canadian Bankruptcy Cases.**

WHEREAS, on the same day that the Debtors filed

their chapter 11 bankruptcy petitions, InterTAN Canada Ltd.

("InterTAN Canada"), a wholly owned subsidiary of InterTAN,

and Tourmalet Corporation, a wholly owned subsidiary of

Ventoux ("Tourmalet" and together with InterTAN Canada, the

"Canadian Debtors") commenced insolvency cases (the

"Canadian Bankruptcy Cases") in the Ontario Superior Court

of Justice under the Companies' Creditors Arrangement Act in

Canada (the "CCAA"); and

WHEREAS, in connection with the Canadian

Bankruptcy Cases, the Canadian Court issued an "initial

order", which, among other things, imposed a stay of all

proceedings against InterTAN Canada and Tourmalet and their

property in Canada; and

WHEREAS, the initial order also appointed Alvarez

& Marsal Canada ULC as the monitor (the "Monitor") in the

Canadian Bankruptcy Cases; and

WHEREAS, prior to and following the Petition Date,

Circuit City and the Canadian Debtors pursued a sale of the

Canadian operations.  On or about March 10, 2009, the

Canadian Court entered an order approving the sale of

substantially all of InterTAN Canada's assets to 4458729

6

Canada Inc., a subsidiary of Bell Canada (the "Canadian Sale"); and

WHEREAS, on or about March 20, 2009, the Bankruptcy Court entered an order (Docket No. 2711) approving the Canadian Sale; and

WHEREAS, since the closing of the Canadian Sale, the Canadian Debtors and the Monitor, with the assistance of officers of the Debtors, have been working to reconcile claims filed in the Canadian Bankruptcy Cases and distribute the sale proceeds from the Canadian Sale in accordance with the priority scheme set forth in the CCAA; and

WHEREAS, as of July 1, 2010, nearly all claims filed in the Canadian Cases had been reconciled and paid in full with interest; and

WHEREAS, as a result of the purchase price received in the Canadian Sale, the Canadian Debtors, the Debtors, the Monitor and the Creditors' Committee have been operating under the assumption that there would be certain sale and other liquidation proceeds that would be available to repatriate to InterTAN, as sole shareholder of InterTAN Canada, and ultimately to the creditors of the Debtors; and

7

**C.   InterTAN Canada's French Operations And Liquidation.**

WHEREAS, in the mid-1980s, InterTAN Canada conducted business in France through a "permanent establishment" in France and a subsidiary, InterTAN France SNC ("InterTAN France"); and

WHEREAS, InterTAN Canada owns 99.99% of the shares in InterTAN France.  The remaining shares are owned by 587225 Ontario Ltd -- a wholly owned subsidiary of InterTAN Canada; and

WHEREAS, in 1993, InterTAN Canada made the decision to cease its business operations in Europe.  InterTAN France's business operations were completely shutdown by May 31, 1994; and

WHEREAS, on February 13, 1995, InterTAN Canada's French permanent establishment was placed in judicial liquidation in France; and

WHEREAS, on July 18, 1997, the judicial liquidation of InterTAN Canada's French permanent establishment was expanded to include InterTAN France; and

WHEREAS, between 1997 and 2000, a judicial liquidator sold the assets of InterTAN Canada's French permanent establishment and InterTAN France and used the proceeds to satisfy claims of their creditors; and

8

WHEREAS, on January 21, 2000, a judgment of the
Commercial Court of Pontoise found that the liquidator had
been able to pay all of the debts of InterTAN Canada's
French permanent establishment and InterTAN France.  As a
result, the judicial liquidation of InterTAN France and the
French permanent establishment of InterTAN Canada was
closed; and

WHEREAS, neither InterTAN Canada (through a French
permanent establishment or otherwise) nor InterTAN France
carries out business activities or maintains offices or
employees in France; and

WHEREAS, based on the foregoing, InterTAN Canada
and InterTAN France might potentially be indebted to France
on account of one or more taxes (the "Potential Liability");
and

**D.    The 2004 Merger.**

WHEREAS, Circuit City is the direct or indirect
parent of all of the other Debtors.  In addition, as the
result of a multi-step transaction in May 2004, Circuit City,
through various subsidiaries, acquired the InterTAN Canada
and its subsidiaries, including InterTAN Canada's 99.9% of
interest in InterTAN France; and

WHEREAS, specifically, on or about March 30, 2004, Circuit City and a wholly-owned subsidiary, Winston Acquisition Corporation ("Winston") entered into an Acquisition Agreement and Plan of Merger (the "Acquisition Agreement") with InterTAN, Inc. ("Old InterTAN") pursuant to which Winston would purchase all the outstanding shares of Old InterTAN's common stock and, thereafter, merge with Old InterTAN to form InterTAN – one of the Debtors.  At that time, Old InterTAN was parent of InterTAN Canada and indirectly the parent of InterTAN Canada's affiliates and subsidiaries; and

WHEREAS, to facilitate the merger, Circuit City also caused two other subsidiaries -- Ventoux and Tourmalet -- to be formed; and

WHEREAS, once the merger and related transactions were completed, from top to bottom, the corporate structure was as follows:  Circuit City wholly owned Ventoux; Ventoux wholly owned Tourmalet and owned all of the outstanding common shares of InterTAN; Tourmalet owned all of the preferred shares of InterTAN; InterTAN owned InterTAN Canada; InterTAN Canada continued to own 99.9% of the partnership interests in InterTAN France; and 587225 Ontario Ltd.

continued to own 0.1% of the partnership interests in
InterTAN France; and

**E.    Notice(s) Of Circumstances.**

WHEREAS, based on the Potential Liability, the
Debtors and the Creditors' Committee provided a "notice of
circumstances" to Old InterTAN's prior director and officer
liability insurers of facts and circumstances that may give
rise to one or more claims under such insurance policies;
and

WHEREAS, based on the Potential Liability, the
Debtors and the Creditors' Committee are also evaluating
whether to provide a notice of circumstances to the Debtors'
pre- and post-petition directors and officers liability
insurers of facts and circumstances that may give rise to
one or more claims under such insurance policies; and

**F.    InterTAN's And Ventoux's Post-Petition Directors And
       Officers And Their Potential Claims.**

WHEREAS, Bruce H. Besanko, Catherine W. Bradshaw,
Heather M. Ferguson, Reginald D. Hedgebeth, Jeffrey A.
McDonald, Michelle O. Mosier, John M. Oakey, III, and Danny
W. Ramsey have served as post-petition officers and
directors of InterTAN and Ventoux (collectively, and solely
in their capacity as post-petition officers and directors of

11

InterTAN and Ventoux, the "Post-Petition Officers and

Directors") during the Debtors' chapter 11 cases; and

WHEREAS, InterTAN's and Ventoux's articles of

incorporation and/or bylaws provide for indemnification of

the Post-Petition Officers and Directors in accordance with

the terms and conditions thereof and applicable state law;

and

WHEREAS, the Post-Petition Officers and Directors

may have administrative claims for indemnification; and

**G.    The Debtors And The Creditors' Committee's Settlement
       Concerning The Plan.**

WHEREAS, under the First Amended Plan, the Debtors

and the Creditors' Committee had included provisions

exculpating and releasing the Post-Petition Officers and

Directors for their post-petition conduct relating to the

First Amended Plan and the chapter 11 cases; and

WHEREAS, pursuant to the Mediation Agreement, the

Debtors and the Creditors' Committee removed the Potential

Liability from the exculpation and release provisions in the

Plan; and

WHEREAS, pursuant to the Mediation Agreement, the

Debtors and the Creditors' Committee further agreed that the

Debtors would enter into and seek Court approval of a

12

settlement agreement between the Debtors and the Post-Petition Directors and Officers with respect to the Potential Liability insofar as the post-petition period is concerned, the terms of which are set forth herein; and

WHEREAS, pursuant to the Mediation Agreement, the Plan provides that it is a condition to the Effective Date (as defined in the Plan) that the Court enter an order approving this Settlement Agreement;

NOW THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties hereby STIPULATE AND AGREE that:

1.    The Post-Petition Officers and Directors hereby waive any administrative claims against InterTAN and Ventoux and their bankruptcy estates for indemnification and contribution arising from, relating to, or arising out of any tax liability under French law relating to InterTAN Canada, the French permanent establishment of InterTAN Canada, and InterTAN France, or any aspect thereof.

2.    InterTAN and Ventoux hereby waive and release the Post-Petition Officers and Directors from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities in connection with, relating to, or arising from and after the

13

Petition Date in connection with their role as post-petition officers and directors of InterTAN and Ventoux, including (without limitation) any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities arising from, relating to, or arising out of any tax liability under French law relating to InterTAN Canada, the French permanent establishment of InterTAN Canada, or InterTAN France, or any aspect thereof.

3.     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the parties hereto, other than as may be necessary (a) to obtain approval of and to enforce this Settlement Agreement or (b) to seek damages or injunctive relief in connection with such approval and enforcement.

4.     Each Party hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

14

5.    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors and assigns.

6.    Except where preempted by applicable Federal law, this Settlement Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Virginia without regard to any choice of law provisions.

7.    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

8.    This Settlement Agreement constitutes the entire agreement and understanding of the parties regarding the Settlement Agreement and the subject matter thereof.

9.    The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or

15

enforce the terms and provisions of, this Settlement
Agreement.

10.  Each person or entity who executes this
Settlement Agreement on behalf of another person or entity
represents and warrants that he, she, or it is duly
authorized to execute this Settlement Agreement on behalf of
such person or entity, has the requisite authority to bind
such person or entity, and such person or entity has full
knowledge of and has consented to this Settlement Agreement.
The representations and warranties set forth in this
paragraph shall survive execution of this Settlement
Agreement.

11.  This Settlement Agreement shall not be
modified, altered, amended or vacated without the written
consent of all Parties hereto or order of the Bankruptcy
Court.

12.  This Settlement Agreement shall inure to the
benefit of and be binding upon the successors and assigns of
the Parties hereto, including any Chapter 7 trustee or the
Liquidating Trustee under the Plan.

16

IN WITNESS WHEREOF, this Settlement Agreement is

hereby executed as of the later of the dates set forth below.

ACCEPTED AND AGREED TO BY:

CIRCUIT CITY STORES, INC.

By:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Circuit City Stores, Inc.,
et al., Debtors and Debtors in Possession

Dated:  September 3, 2010

CATHERINE W. BRADSHAW


/s/ Catherine W. Bradshaw
Catherine W. Bradshaw


Dated: September 2, 2010

HEATHER M. FERGUSON


/s/ Heather M. Ferguson
Heather M. Ferguson


Dated: September 2, 2010

JEFFREY A. MCDONALD


/s/ Jeffrey A. McDonald
Jeffrey A. McDonald


Dated: September 2, 2010

MICHELLE O. MOSIER


/s/ Michelle O. Mosier
Michelle O. Mosier


Dated: August 31, 2010

BRUCE H. BESANKO


/s/ Bruce H. Besanko
Bruce H. Besanko


Dated: September 1, 2010

REGINALD D. HEDGEBETH


/s/ Reginald D. Hedgebeth
Reginald D. Hedgebeth


Dated: September 3, 2010

JOHN M. OAKEY, III


/s/ John M. Oakey, III
John M. Oakey, III


Dated: September 3, 2010

DANIEL W. RAMSEY


/s/ Daniel W. Ramsey
Daniel W. Ramsey


Dated: September 1, 2010