```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF VIRGINIA


IN RE:                         .    Case No. 08-35653 (KRH)
                               .
                               .
                               .
CIRCUIT CITY STORES,           .    701 East Broad Street
INC.,                          .    Richmond, VA 23219
                               .
                               .
         Debtor.               .    August 23, 2010
. . . . . . . . . . . . . . .       10:04 a.m.


                       TRANSCRIPT OF HEARING
               BEFORE HONORABLE KEVIN R. HUENNEKENS
                UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          McGuire Woods, LLP
                         By:  SARAH B. BOEHM, ESQ.
                         One James Center
                         901 E. Cary Street
                         Richmond, VA 23219

                         Skadden Arps Slate Meagher & Flom, LLP
                         By:  IAN FREDERICKS, ESQ.
                         One Rodney Square
                         Wilmington, DE 19899

For the Committee:       Tavenner & Beran, LLC
                         By:  LYNN TAVENNER, ESQ.
                         701 East Broad Street
                         Richmond, VA 23219




Proceedings recorded by electronic sound recording, transcript
              produced by transcription service
```
───────────────────────────────────────────────────────────────

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com
Website:  www.jjcourt.com

(609) 586-2311    Fax No. (609) 587-3599

1          COURTROOM DEPUTY:  All rise.  The United States
2 Bankruptcy Court for the Eastern District of Virginia is now in
3 session.  The Honorable Kevin R. Huennekens presiding.  Please
4 be seated and come to order.
5          In the matter of Circuit City Stores, Incorporated,
6 hearing on Items 1 through 27 as set out on today's agenda.
7          THE COURT:  Before we get started I just wanted to
8 make an announcement.  Seated to my left next to Ms. Ross is my
9 new law clerk Aaron Bachman who will be with me for the next
10 year.  Aaron has accepted a position with McGuire Woods when
11 he's done clerking for me this year.  So, he will not be
12 working on the Circuit City case, and he's in here only to
13 observe for today.  You may proceed.
14          MS. BOEHM:  Thank you, Your Honor, Sarah Boehm from
15 McGuire Woods on behalf of the debtors.  Items 1 and 2 on the
16 agenda today are Madcow's motions for payment of administrative
17 expenses in 503(b)(9) claim.  These matters were resolved by
18 settlement agreement and stipulation which was filed when the
19 objection deadline ran on August 9th.  So, they can be marked
20 as resolved.
21          THE COURT:  All right.
22          MS. BOEHM:  Item Number 3 is the debtor's objection
23 to the claim of the New York State Department of Taxation and
24 Finance.  This has been resolved, and a settlement agreement
25 was filed.  The objection deadline does not run until August

1  30th, and if there are no objections it will be resolved at
2  that time.
3            THE COURT:  All right.
4            MS. BOEHM:  Item 4 is the debtor's objection to the
5  claim of Quebecor World (USA).  This matter is being adjourned
6  to August 31st at 10 a.m.
7            THE COURT:  Okay.
8            MS. BOEHM:  Items 5 through 25 are status hearings on
9  the various omnibus claim objection matters on behalf of the
10 debtors.  I'm just going to briefly go through these, Your
11 Honor.  Items 5 through 19, all of the claims are included in
12 those omnibus objections set forth in Items 5 through 19 are
13 being further adjourned for a status hearing on September 27th
14 at two o'clock.
15           Item Number 20 was the debtor's 60th omnibus
16 objection.  We had notice for a hearing on the merits.  One
17 response to that objection that was filed by Phillip Lee Seale.
18 That matter has been resolved, and an order will be submitted
19 disallowing that claim in accordance with the omnibus
20 objection.  The other items in omnibus -- the 60th omnibus
21 objection will be further adjourned for status on September
22 27th at two o'clock.
23           THE COURT:  All right.
24           MS. BOEHM:  Items 21 through 25 are the remaining
25 omnibus objections that were scheduled for status.  And all the

1  claims included in those objections are further adjourned to
2  September 27th at two o'clock.
3         THE COURT:  All right, very good.
4         MS. BOEHM:  Item 26 and 27 deal with a Mitsubishi
5  adversary proceeding, and Mr. Fredericks is here to address
6  those today.
7         THE COURT:  Very good.
8         MS. BOEHM:  Thank you.
9         MR. FREDERICKS:  Good afternoon, Your Honor, Ian
10 Fredericks of Skadden Arps on behalf of the debtors.
11        The remaining two matters, Matter 26 and 27, relate
12 to the Mitsubishi adversary proceeding.  One is a motion to
13 dismiss, and one is the debtor's motion to dismiss one count of
14 the complaint, and one is the debtor's motion for summary
15 judgment.  They are set -- we've adjourned them to the next
16 omnibus hearing on the 31st and our intention is to go forward
17 with them unless we are able to reach a resolution -- a global
18 resolution with Mitsubishi before that.
19        We are in settlement discussions.  We are pretty far
20 apart right now, but are trying to exchange information
21 consensually.  And if we can get it done before the hearing we
22 will and we'll certainly let Your Honor know.
23        THE COURT:  All right.  But, otherwise we're going to
24 hear those on the 31st.
25        MR. FREDERICKS:  Correct.

5

1  THE COURT: All right, very good. I'll be ready for
2 that then.
3  MR. FREDERICKS: Thank you, Your Honor. Unless Your
4 Honor has any questions that's all the matters on --
5  THE COURT: I do.
6  MR. FREDERICKS: Okay.
7  THE COURT: Which is where are we standing as far as
8 the 8th of September, are we still on track? Have we heard
9 anything with regard to the tax letter?
10  MR. FREDERICKS: As far as -- I'll take that in two
11 parts. As far as being on track, we're on track as far as
12 everything that's within our control. We've filed all the plan
13 documents. I believe we filed them all and served them on the
14 9th. So, there was an agreement reached on all of those and
15 everything was filed.
16  With respect to the revenue ruling over the last
17 several weeks -- and I don't know if anybody from Pachulski
18 firm is on the phone -- over the last couple of weeks we've --
19 the Canadian debtor's tax advisors and the committee's tax
20 advisors have had multiple discussions with Canada Revenue
21 ruling. They've raised a number of questions, asked for
22 additional information, and my understanding is that they are
23 currently exchanging information. As of right now we do not
24 have kind of an updated timing on when we might receive the
25 ruling or when they might be satisfied with the additional

1  submissions we've made.  We are filing the notice to formally
2  set the hearing on September 8th, but I would venture to guess
3  that most likely confirmation would be adjourned from the 8th.
4           THE COURT:  And that's because you don't anticipate
5  getting the revenue ruling prior to that day?
6           MR. FREDERICKS:  Well, I mean, we're at the 23rd now,
7  so we're looking at roughly, you know, 17 days for them to
8  issue the ruling.  It's certainly possible.  I just don't want
9  to -- you know, we could give you probably a better update on
10 the 31st.  But, given that we're almost essentially two weeks
11 away from that hearing and there isn't an obvious date in
12 sight, I would say more than likely it'll be adjourned from the
13 8th.  But, we can certainly give you more of an update on the
14 31st.
15          THE COURT:  The information that was requested by the
16 committee and authorities, is that -- was that unanticipated,
17 or was that something that was initiated by the company, or how
18 did that come about?
19          MR. FREDERICKS:  A bit of history will probably help
20 with this.  I mean, if you go back to when the process started
21 with the Canadian Revenue Administration it started with there
22 being no mention of a liquidating trust for fear that it might
23 -- they don't have a similar concept in Canada under the law,
24 so for fear that it might further complicate the matters, and
25 at the time there wasn't the French tax issue out there, so we

1  submitted that ruling and had no mention of a liquidating
2  trust.  Since we've introduced the liquidating trust it's, you
3  know, various rulings I think either two or three iterations of
4  the ruling have been submitted to the CRA.  Each time we've
5  submitted it they have come back with questions being that it's
6  a concept that they're not familiar with.  So they've raised
7  questions.  And issues, we've tried to address those.

8        As we've tried to address those I think that kind of
9  new tangential issues have arisen that we've introduced into
10 the ruling to make sure that it comes back in the most tax
11 efficient way.  And sometimes those issues or sometimes the way
12 we've answered Canada's prior questions have just given rise to
13 new issues.  To say that they aren't expected by us, I frankly
14 can't answer that question totally.  Some of them probably are
15 unexpected.  Some of them are things that we always thought may
16 have been a risk that the CRA might raise.  And as a result
17 we're just trying to work through those with them.

18        THE COURT:  I guess the reason I asked the question
19 is, the last time we were here Mr. Galardi had indicated that
20 sort of the ruling was imminent and we were sort waiting for it
21 any day.  And so I was surprised to hear that there was an
22 exchange of new information back and forth which would suggest
23 to me that maybe there was some problem or some additional
24 concerns with the ability to issue the ruling in the time frame
25 within which the parties have expected.

1          MR. FREDERICKS:  At the time when Mr. Galardi made
2   that it was -- the information we had received from the
3   committee's tax professional that was the indication we got was
4   that they were going to issue the ruling.  They thought it may
5   come as early as the end of the month, end of July, and that
6   the person was going on vacation and we expected to receive it
7   thereafter.  When the person returned from vacation -- the
8   person within the CRA returned from vacation that's when we
9   started receiving a lot of inquiries and a lot more questions.
10  And I think you're referring to the August 4th hearing.  I
11  think that was the period where the person was on vacation.
12  So, these came as a bit of surprise to the debtors and I'm sure
13  to the committee, as well.
14         THE COURT:  All right.  At this point have all the
15  inquiries been answered, or do you anticipate additional
16  inquiries?
17         MR. FREDERICKS:  I do not believe -- I believe some
18  of the inquiries -- most of the inquiries, to my understanding,
19  have been answered.  There are somewhere -- previously one of
20  the issues that came up was whether or not an acquisition of
21  control would occur.  The most analogous situation in the U.S.
22  would be a change in control of a company and whether or not a
23  liquidating trust would trigger that.  That's probably raised
24  the most questions, you know, from Canada.  And Canada's
25  actually requesting that we take a position on that which

1  requires us to before where it was a possibility at some point
2  in the future that Canada may take that position, now they're
3  asking potentially for us to take a position down on the front
4  end which would have -- which now the Canadian debtors and I
5  believe the committee's counsel want to work through all of the
6  potential negative implications from that, if there are any.
7  There may be none.  But, they need to now work through that
8  entire analysis on the front end as opposed to on the back end
9  where it would occur kind of during an audit period.
10         THE COURT:  All right.  Has the committee been in the
11 loop on all of this?
12         MR. FREDERICK:  I'll certainly let them speak, but my
13 understanding is, yes, that the Canadian debtors -- it's PWC
14 who's been handling it primarily for the Canadian debtors have
15 been in pretty constant communications with the committees, the
16 representatives from Gallings (phonetic).  And Gallings has
17 also been on the phone, those phone calls were there available
18 with the CRA, but I'll certainly let --
19         THE COURT:  All right.
20         MS. TAVENNER:  Good afternoon, Your Honor, Lynn
21 Tavenner appearing on behalf of the committee.  I do not anyone
22 from Pachulski is on the phone.
23         THE COURT:  Okay.
24         MS. TAVENNER:  But, just to let Your Honor know
25 everything that Mr. Fredericks said we certainly know about,

1  have heard about.  The one thing that I did want to alert the
2  Court to is, we still are hopeful that September 8th can occur,
3  and very much want to keep that date and the notice is going
4  out today, I believe, to put that on the docket.  Whether or
5  not that can occur, I don't know, but we certainly are hopeful
6  that it will and are doing everything within our power to
7  provide any information to make that happen.
8           THE COURT:  All right.
9           MR. FREDERICKS:  And as of the debtors, Your Honor, I
10 certainly didn't want to imply that -- we're hopeful September
11 8th happens, too.  I'm just trying to be as forthright with the
12 Court as possible.
13          THE COURT:  All right.  I appreciate that.  The Court
14 shares the desire to try to get this confirmed on the 8th.  And
15 so I hope that we can move toward that date.  I do understand
16 and appreciate your very initial comment which was everything
17 in our power, and I realize there's certain things that are not
18 in your power and control.
19          MR. FREDERICKS:  And just by way, you know, to also
20 give you an update, one of the things -- having filed the
21 revised plan we've been reaching out to all the parties that
22 filed the objections to the original plan.  One of the things
23 we tried to do and revise the plan was to address as many of
24 those objections as we could.  We're now reaching out to them
25 by e-mail to confirm that their objections have either been

11

1  resolved, or some of their objections have been resolved and
2  others they want to continue to push just to try to narrow the
3  issues for ultimately when we do go to confirmation.  So, we're
4  proceeding right now on the basis that we're going forward on
5  September 8th and we're trying to get as much done,
6  consensually, before that.
7          THE COURT:  All right.  Thank you very much.  Is
8  there any other matter that we need to take up in Circuit City
9  this afternoon?
10         MR. FREDERICKS:  None from the debtors, Your Honor.
11         THE COURT:  All right.  Then we'll be adjourned.
12                          * * * * *
13                      **C E R T I F I C A T I O N**
14         I, KIMBERLY UPSHUR, court approved transcriber,
15 certify that the foregoing is a correct transcript from the
16 official electronic sound recording of the proceedings in the
17 above-entitled matter, and to the best of my ability.
18
19 /s/ Kimberly Upshur
20 KIMBERLY UPSHUR
21 J&J COURT TRANSCRIBERS, INC.    DATE:  September 8, 2010
22
23
24
25