**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Case Nos. 08-35653 (KRH) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**SEVENTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.
FOR COMPENSATION FOR SERVICES RENDERED AS FINANCIAL ADVISORS
TO THE DEBTORS INCURRED FOR THE PERIOD FROM
MAY 1, 2010 THROUGH AND INCLUDING JULY 31, 2010**

Name of Applicant:                    FTI Consulting, Inc.

Authorized to provide
professional services to:             Circuit City Stores, Inc., et al.

Date of retention:                    December 23, 2008 *nunc pro tunc to* November 10, 2008

Period for which compensation
is sought:                            May 1, 2010 through and including July 31, 2010

Amount of compensation
sought as actual, reasonable and
necessary:                            $197,838.00

This is a/an: _____ Monthly __X__ Interim _____ Final Application

This Application does not request compensation at this time for services rendered in preparing this Application. FTI Consulting intends to seek such compensation at a later date.

**SEVENTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**
**FOR COMPENSATION FOR SERVICES RENDERED AS FINANCIAL ADVISORS**
**TO THE DEBTORS INCURRED FOR THE PERIOD FROM**
**MAY 1, 2010 THROUGH AND INCLUDING JULY 31, 2010**

**Summary of Fees by Professional**
**FTI Consulting, Inc.**
**May 1, 2010 through and including July 31, 2010**

| Name | Title | Total Hours | | Rate | | Total Fees |
|------|-------|-------------|---|------|---|-----------|
| Coulombe, Stephen L | Sr Managing Dir | 13.0 | $ | 885 | $ | 11,505.00 |
| Duffy, Robert J | Sr Managing Dir | 23.7 | | 885 | | 20,974.50 |
| Regan, Kevin | Sr Managing Dir | 9.1 | | 820 | | 7,462.00 |
| Chin, Gregory | Managing Dir | 3.6 | | 710 | | 2,556.00 |
| Lee, Geon | Managing Dir | 2.0 | | 710 | | 1,420.00 |
| Robinson, Joshua M. | Managing Dir | 28.1 | | 675 | | 18,967.50 |
| Cashman, Brian | Managing Dir | 71.6 | | 655 | | 46,898.00 |
| Nemerov, Lara | Consultant | 111.3 | | 350 | | 38,955.00 |
| O'Loughlin, Morgan | Consultant | 134.5 | | 350 | | 47,075.00 |
| Hellmund-Mora, Marili | Professional Assistant | 8.1 | | 250 | | 2,025.00 |
| **Total** | | **405.0** | | | $ | **197,838.00** |

**Summary of Fees by Task Code**
**FTI Consulting, Inc.**
**May 1, 2010 through and including July 31, 2010**

| Task Code | Total Hours | | Total Fees |
|-----------|-------------|---|-----------|
| Canadian Matters | 5.6 | $ | 3,976.00 |
| Claims Management | 95.1 | | 43,275.00 |
| General Duties and Case Administration | 35.7 | | 17,630.50 |
| Liquidation Analysis/Wind down | 138.1 | | 69,358.00 |
| Plan of Liquidation/Disclosure Statement | 72.8 | | 37,683.50 |
| Preference Analysis | 57.7 | | 25,915.00 |
| **Total** | **405.0** | $ | **197,838.00** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case Nos. 08-35653 (KRH) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

**SEVENTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**
**FOR COMPENSATION FOR SERVICES RENDERED AS FINANCIAL ADVISORS TO**
**THE DEBTORS INCURRED FOR THE PERIOD FROM**
**MAY 1, 2010 THROUGH AND INCLUDING JULY 31, 2010**

FTI Consulting, Inc., (collectively, "FTI Consulting", "FTI" or the "Applicant") as financial advisors for Circuit City Stores, Inc. in the above-captioned cases (collectively, "Circuit City", the "Company", the "Debtors" or the "Estate") submit this application (the "Seventh Interim Fee Application" or the "Application") seeking allowance of interim compensation under section 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") for the period from May 1, 2010 through and including July 31, 2010 (the "Seventh Interim Fee Application Period" or "Application Period") and represent as follows:

**JURISDICTION**

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. sections 157 and 1334. This is a core proceeding under 28 U.S.C. section 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. sections 1408 and 1409.

---

[1]    The Debtors are the following entities: The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 330 and 331.

## BACKGROUND

3.      On November, 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this court for relief pursuant to chapter 11 of the Bankruptcy Code.

4.      On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a sale or sales of the Debtor's business as a going concern or for liquidation.

5.      At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC; Hudson Capital Partners, LLC; SB Capital Group, LLC; and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores.  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.  The going out of business sales concluded on or about March 8, 2009.

6.      On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan is adjourned to a date and time to be determined in the future.  Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

## RETENTION OF FTI CONSULTING

7.      FTI Consulting is a financial advisory services firm with numerous offices throughout the country and was retained by the Debtors as Financial Advisors.  The Retention Order authorized the retention of FTI Consulting to render to the Debtors the following essential services, which include, but are not limited to:

**Store Footprint Analysis**

- •      Analyze liquidity and earnings impact of potential store closures.
- •      Provide assistance with contract terms for disposition of leases.

4

- Develop informational materials to support store closing processes.

- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.

- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.

- Prepare information package for landlord conference calls and participate in lease termination discussions.

- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

**Liquidity Forecasting**

- Evaluate current liquidity position and expected future cash flows.

- Assist with management and control of cash disbursements.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**

- Assist with development of an out-of-court restructuring plan and related financial projections.

- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.

- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.

- Assist with working capital management and liquidity forecasting.

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.

- Assist management with development of employee retention and communications programs.

- Assist management in developing strategy relating to merchandise and other vendors.

- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.

- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.

- Provide weekly status and fee updates to management personnel designated by the Company.

- Provide other services as requested by management.

**Asset Sales**

- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture, fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.

  - Prepare "bid packages" for Liquidators and manage selection process.

  - Solicit potential inventory Liquidators for going-out-of-business sale process.

  - Assist the Company in the negotiation of an Agency agreement.

  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.

  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.

- Assist with data collection and information gathering related to third party due diligence.

- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**

- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.

- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.

- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.

- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.

- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.

- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.

- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**

- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing DIP financing and assist the Company in preparing a collateral package in support of such financing.

**Other**

- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

8.     FTI Consulting's retention as Financial Advisors to assist the Debtors in the performance of their duties as Debtors-in-Possession was approved on December 23, 2008 by this Court *nunc pro tunc* to November 10, 2008 (the "Retention Order").  A copy of said order, dated December 23, 2008, is attached hereto as Exhibit E and incorporated herein by reference.

9.     On December 9, 2008, this Court entered an Administrative Order under Bankruptcy Code Section 105(a) and 331 establishing procedures for interim compensation (the "Administrative Order").

10.     This Application is made by FTI Consulting in accordance with Local Rule 9013-1(G), the Guidelines adopted by the Executive Office for the United States Trustee and the Administrative Order.

11.     Pursuant to the terms of the Administrative Order, if no objection is filed to a Monthly Fee Request within twenty (20) days of the date of the filing of that request , then the respective professionals may be paid eighty-five percent (85%) of the fees and one hundred percent (100%) of expenses set forth in the applicable Monthly Fee Request.

12.     Every three (3) months beginning with the period ending January 31, 2009, this Court will then make a determination, after hearing, if the remaining fifteen percent (15%) of fees sought in the preceding three (3) months will be paid.

13.    FTI Consulting has received from the Debtors and holds as of the Petition Date, "on account" cash in the amount of $695,574.52 (the "On Account Cash").

14.    Subsequent to the Petition Date and pursuant to the Administrative Order, FTI Consulting has served a Monthly Fee Request, including time and expenses detail on (i) Circuit City Stores, Inc. (ii) McGuireWoods, LLP (iii) Skadden, Arps, Slate, Meagher & Flom, LLP, (iv) the Office of the United States Trustee and (v) Pachulski, Stang, Ziehl & Jones LLP for each of the months in the Application Period.

15.    On June 11, 2010, FTI Consulting served its Monthly Fee Request for the period from May 1, 2010 through and including May 31, 2010 for the amount of $76,692.00 for professional fees.  The 20 day period for objections expired on July 1, 2010 without any objections, at which time FTI Consulting was paid 85% of the requested professional fees in the aggregate amount of $65,188.20.

16.    On July 19, 2010, FTI Consulting served its Monthly Fee Request for the period from June 1, 2010 through and including June 30, 2010 for the amount of $55,967.50 for professional fees.  The 20 day period for objections expired on August 8, 2010 without any objections, FTI Consulting was paid 85% of the requested professional fees in the aggregate amount of $47,572.38.

17.    On August 10, 2010, FTI Consulting served its Monthly Fee Request for the period from July 1, 2010 through and including July 31, 2010 for the amount of $65,178.50 for professional fees.  The 20 day period for objections expires on August 30, 2010.  As of the Interim Filing date, FTI has not been paid.

18.    Pursuant to the Administrative Order, FTI Consulting is filing this Application for compensation for professional services rendered in these cases during the Application Period.

**RELIEF REQUESTED**

19.    By this Application, the Debtors request approval and payment of interim compensation for FTI Consulting, financial advisors to the Debtors, pursuant to Bankruptcy Code sections 330 and 331 for the period of May 1, 2010 through and including July 31, 2010.

20.    At this time, FTI Consulting is seeking allowance of compensation equal to $197,838.00 in fees for professional services rendered by FTI Consulting during the Application Period as financial advisors to the Debtors in these chapter 11 cases.  This amount is derived solely

8

from the applicable hourly billing rates of the firm's personnel who rendered such services to the Debtors.  Of this amount, FTI Consulting has already been paid $112,760.58, eighty-five percent (85%) of fees billed from May 1, 2010 through and including June 30, 2010 pursuant to the Administrative Order.  Accordingly, through this Application, FTI Consulting requests payment of the remaining fees billed from May 1, 2010 through and including June 30, 2010 of $19,898.92.

21.    FTI Consulting also requests allowance of reimbursement of one hundred percent (100%) of the actual and necessary charges incurred in the Application Period for the month of August, 2010 equal to $65,178.50.

22.    This Application is made without prejudice to FTI Consulting's right to seek further interim allowances and/or a final allowance of compensation in the future in accordance with the Retention Order and the Administrative Order.

23.    FTI Consulting has received no promise of payment for professional services rendered or to be rendered in these cases other than in accordance with the provisions of the Bankruptcy Code.

**BASIS FOR RELIEF**

24.    It is not practical to describe every phone call made, meeting attended, document generated, or other service provided in the Debtors' cases during the Application Period.  Thus, this Application highlights the most significant services performed by FTI Consulting for the Debtors during the Application Period and the attached time records in Exhibit C contain the detail of each task performed.

25.    FTI Consulting submits that the financial advisory services that it rendered to the Debtors in connection with their chapter 11 cases during the Application Period were necessary and beneficial to the Debtors, their creditors, and their estate.  FTI Consulting worked with the Debtors' in managing the winddown of their operations and claims administistations among other things.

26.    During the Application Period, FTI Consulting devoted a total of 405.0 hours to assisting the Debtors in their chapter 11 cases.  Schedules showing the name and position of each professional, hours worked during the Application Period, and hourly billing rate are provided at the front of this Application.  Exhibit C provides the detail by matter of the time billed for such services.

## DESCRIPTION OF SERVICES RENDERED

27.     FTI Consulting maintains contemporaneous records of the time expended for the professional services related hereto performed in connection with these Chapter 11 cases and such records are maintained in the ordinary course of its business.  These records provide a detailed description of the services rendered during the period for which this Seventh Interim Fee Application is being made.

28.     All services for which FTI Consulting requests compensation were performed for, or on behalf of, the Debtors.

29.     This Seventh Interim Fee Application is divided into six narrative sections based on the activity descriptions listed below.  Each narrative section describes the more significant services rendered by FTI Consulting for each of the activity categories and its benefit to the Estate.  FTI Consulting is charging only on an hourly basis for these services.  The fees applied for herein are based on the hourly rates that reflect the usual and customary fees charged to all clients of FTI Consulting and are commensurate with the usual and customary rates charged for services performed by accountants and financial advisors in bankruptcy cases of this nature.

### *Canadian Matters*

30.     During the Application Period, FTI Consulting responded to follow up questions from the Debtors' management regarding the working capital adjustment on the closing date balance sheet prepared by Bell Canada who purchased the assets of the Canadian subsidiary of the Debtor.  The working capital adjustment proposed by Bell Canada would reduce the purchase price for the Canadian subsidiary.  FTI Consulting used resources from our Transaction Advisory Services to assist in this matter.

31.     During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 5.6 hours on matters related to Canadian matters for which compensation is sought with the time value of $3,976.00.  The detailed time entries for this task are attached hereto as Exhibit C.

### *Claims Management*

32.     During the Application Period, at the request of the Debtors, FTI Consulting assisted in the claims management process.  To date, creditors have filed over 15,000 proofs of claim in these cases that require reconciliation.  These claims, which consist of secured, 503(b)(9), administrative,

10

reclamation, priority and unsecured have a stated value in excess of $13.1 billion.  At the request of the Debtors', FTI Consulting has been assisting the Debtors' personnel in providing guidance and assistance in the efficient and effective reconciliation of this population of claims.

33.    First, during the Application Period, FTI Consulting focused on loading docketed proofs of claim into CMS for the Debtor's use in the claims reconciliation and resolution process and assisting the Debtors with the completion and generation of claim objection exhibits for omnibus objections seventy-one through eighty-one.

34.    Second, FTI Consulting assisted the Debtors' claims resolution team in their efforts to reconcile, object to, settle and resolve proofs of claims filed against the Debtors in these Chapter 11 proceedings.  The Debtors' claims resolution team was comprised of Debtors' personnel, supported by professionals from the Debtors' counsel and FTI Consulting.  Due to the complexity of these cases, the large number of creditors who filed proofs of claim against the Debtors and a high number of complex claims including over 1,300 claims filed under section 503(b)(9),  FTI Consulting assembled a team of professionals with significant experience in complex bankruptcy claims reconciliation to assist the Debtors in this area.

35.    Third, FTI Consulting assisted in the claims management area including all aspects of claims management and claims resolution.  Utilizing proprietary bankruptcy software called the Claims Management System ("CMS"), FTI Consulting established a multi-user, computer information system environment designed to manage the Debtors' scheduled liabilities and proofs of claim.  The Debtors use and rely on CMS to track the progress and status of each proof of claim, perform analysis of claims, object to claims and generate various management reports.  The CMS database server and software is available via a secure internet protected environment that provides the Debtors and their advisors access to claims related information and enables the Debtors to increase personnel resources as necessary to meet the requirements and deadlines of the cases.  During the Application Period, FTI Consulting loaded proof of claim data into CMS received from the claims agent to establish a baseline system for the Debtors to continue the reconciliation process.

36.    Fourth, in addition to maintaining CMS for the Debtors, FTI Consulting also assisted the Debtors in establishing and managing the claims resolution process.  This included: (i) participating in working sessions with the Debtors and counsel to resolve issues and develop strategies regarding case specific complexities and to advise the Debtors with respect to timing and

resource needs.  In addition, FTI Consulting assisted the Debtors in establishing procedures for identifying and reviewing claims for omnibus objections including objections for duplicate or amended claims, late claims, no liability, reclassification, modification and non-good 503(b)(9) claims.  The Debtors filed omnibus objections seventy-one through eighty-one during the Application Period which sought disallowance or modification of claims with a reduction of claim amounts totaling approximately $140 million.  During the Application Period, at the request of the Debtors, FTI Consulting assisted in the claims management process.  To date, creditors have filed over 15,000 proofs of claim in these cases that require reconciliation.  These claims, which consist of secured, 503(b)(9), administrative, reclamation, priority and unsecured have a stated value in excess of $13.1 billion.  At the request of the Debtors', FTI Consulting has been assisting the Debtors' personnel in providing guidance and assistance in the efficient and effective reconciliation of this population of claims.

37.    Fifth, FTI Consulting was requested by the Debtors' management and their counsel to provide expert testimony relating to litigation surrounding filed claims.  FTI Consulting prepared an expert witness report in anticipation of providing expert testimony at a future date.

38.    Sixth, FTI Consulting at the request of the Debtors and their counsel prepared ad hoc reports.

39.    During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 95.1 hours on matters related to claims management for which compensation is sought with the time value of $43,275.00.  The detailed time entries for this task are attached hereto as Exhibit C.

***General Duties and Case Administration***

40.    In any complex bankruptcy case, it is necessary for professionals to perform certain administrative tasks that support the overall advisory effort.

41.    During the Application Period, these tasks included but were not limited to: (i) development and revision of work plans and subsequent meetings to assign tasks to complete the work plan; (ii) teleconferences and meetings with Debtors' management, legal and financial advisors to discuss case status, open items, creation of work plans, distribution of responsibilities, and strategies to be implemented to ensure efficiencies in executing defined objectives; and (iii) performance of administrative tasks such as distribution of information to Debtors' management, Debtors' counsel, and other parties-in-interest.

12

42.    Second, during the Application Period, FTI Consulting prepared its sixth interim fee application and monthly fee statements which required FTI Consulting to review time records of its professionals and summarize the work that had been done on each matter.

43.    During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 35.7 hours on matters related to general duties and case administration which compensation is sought with the time value of $17,630.50.  The detailed time entries for this task are attached hereto as Exhibit C.

***Liquidation Analysis/Wind Down***

44.    During the Application Period, FTI Consulting at the direction of the Debtors' management, continued to assist in wind down matters and the liquidation analysis.

45.    FTI Consulting updated the detailed liquidation analysis with actual cash activity as well as estimated recoveries to the various classes of creditors and provided the analysis to the Debtors' board of directors, Debtors' management and the Committee's financial advisors and counsel.    FTI Consulting worked with the Debtors' management and Debtors' counsel to continue to identify all possible receivables, payables, revenues and expenses.

46.    Second, FTI Consulting updated weekly a claims waterfall report incorporating summary claims data from the CMSi system.  FTI Consulting prepared a bridge analysis to track the progress of the claims reconciliation process.  The claims waterfall was updated for (i) total claims filed; (ii) ordered claims; (iii) withdrawn claims; (iv) claims settled through court stipulation; (v) filed omnibus objections; (vi) adjourned claims and (vii) allowed claims.  Updating the claims waterfall report included reviewing and summarizing omnibus objections, court stipulations, supplemental orders, withdrawn claims and other court documents to ensure accurate reporting of remaining claims.

47.    Third, FTI Consulting, at the request of the Debtors' management and the Debtors' counsel, prepared a sources and uses analysis that was updated weekly for actual results and changes in assumptions.

48.    Fourth, FTI Consulting, at the request of the Debtors' management, prepared slides to be included in presentations to the Board of Directors which were case updates and covered such areas as liquidation analysis and claims waterfall analyses.

49.     During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 138.1 hours on matters related to the liquidation analysis/wind down for which compensation is sought with the time value of $69,358.00.  The detailed time entries for this task are attached hereto as Exhibit C.

**_Plan of Liquidation/Disclosure Statement_**

50.     During the Seventh Interim Fee Application Period, at the request of the Debtors, FTI Consulting continued to work with the Debtors' management, its counsel and the Committee to update the substantive consolidation analysis and related reporting in the disclosure statement.

51.     As part of the updating of the substantive consolidation analysis, FTI Consulting updated the liquidation analysis segregated by each of the eighteen debtors.  As part of this analysis, FTI Consulting assigned proceeds and disbursements during the wind down period among the eighteen debtors.  Next, FTI Consulting included claims information by debtor.  Lastly, an intercompany matrix was developed to show the prepetition and postpetition payables and receivables of the eighteen debtors.  This was integral to the substantive consolidation analysis to gain understanding on: the claim class of the intercompany claim; (i) the affect of the Automatic Intercompany Balancing Entry (AIBE); (ii) the impact to remaining proceeds for each debtor after intercompany claims; (iii) and the ultimate redistribution to the parent company.  Along with claims, FTI Consulting and the Debtors worked together to update the proceeds by debtor to calculate the recovery percentage to the unsecured claimants by debtor.

52.     During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 72.8 hours on matters related to the Plan of Liquidation/Disclosure Statement which compensation is sought with the time value of $37,683.50.  The detailed time entries for this task are attached hereto as Exhibit C.

**_Preference Analysis_**

53.     Prior to the Application Period, at the request of the Debtors, FTI Consulting led the efforts in coordinating the reconciliation of accounts and performance of preference analyses necessary in negotiating the resolution of claims.  This included gathering the necessary payment and receipt information by check or invoice for the 24 months subsequent to the Petition Date and loading the information into the claims management software and calculating preferences under

14

various scenarios assuming various defenses available to vendors.   The process and calculation was reviewed with the Debtors and the Debtors' counsel to ensure agreement in the approach.

54.     During the Application Period, FTI Consulting, at the request of the Debtors, continued to assist with the preference analysis.  FTI Consulting assisted the Debtors and counsel in preparing preference data exhibits to be used in preparation of demand letters to select vendors. Additionally, FTI consulting assisted the Debtors and counsel with interpreting responses to demand letters, providing modifications to the preference analysis and research into specific transactional data as needed.

55.     Additionally, at the debtor's request, FTI Consulting assisted the Debtors and counsel in preparing preference data exhibits to be used in preparation of demand letters to select vendors. FTI Consulting also assisted the Debtors and counsel in responding to preference inquiries and preparing exhibits to be used in demand letters.

56.     During the Seventh Interim Fee Application Period, FTI Consulting's professionals spent 57.7 hours on matters related to the Preference Analysis which compensation is sought with the time value of $25,915.00.  The detailed time entries for this task are attached hereto as Exhibit C.

## ALLOWANCE OF COMPENSATION

57.     FTI Consulting respectfully submits that the amounts applied for herein for professional services rendered on behalf of the Debtors in this proceeding to date are fair and reasonable given: (i) the time expended; (ii) the nature and extent of the services performed at the time at which such services were rendered; (iii) the value of such services; and (iv) the costs of comparable services other than in a Chapter 11 case.

58.     The time and labor expended by FTI Consulting has been commensurate with the size and complexity of the case.  In rendering these services, FTI Consulting made every effort to maximize the benefit to the Estate, to work efficiently with the other professionals employed in the case, and to leverage staff appropriately in order to minimize duplication of effort.  The complex issues of the case required staff professionals to confer and collaborate at certain times to ensure the efficient allocation of resources and to plan strategies effectively.  While essential to the effective administration of the engagement, to the extent possible these conferences were kept to a minimum. Compensation is sought for participation by more than one professional only in instances where joint participation was necessary because of the significant impact of a particular meeting, the complexity

15

of the problem involved, and the specialization required or the need to preserve continuity of representation.  At times, it may have been necessary for more than one professional to attend a meeting to facilitate communication of information rather than to relay the information from individual to individual.

59.    During the Application Period, FTI Consulting provided a focused range of professional services as requested by the Debtors.  FTI Consulting respectfully submits that these services were necessary and beneficial to the successful and prompt administration of this case; and have been provided in a cost efficient manner.

60.    FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed for the benefit of the Debtors.  FTI Consulting has carefully reviewed all of its time records and has elected to make certain voluntary reductions to the fees it is requesting which results primarily from the application of FTI Consulting's firm-wide policy which requires professional personnel to exercise reasonable billing judgment on a daily basis.  Chargeable hours are recorded on a daily basis, at which time professional staff members make informed judgments as to the quality and productivity of time spent on the engagement.  The exercise of reasonable billing judgment, at the professional staff level, effectively considers the quality of time charged to the Debtors.  In this regard, non-productive time has not been billed to the Debtors' Estate.

61.    The services that have been provided by FTI Consulting during these proceedings have been wholly consistent with the Debtors' intentions and have been undertaken with specific direction and guidance from the Debtors' senior management.  These cases have necessitated the use of experienced advisors with specialized expertise in bankruptcy issues and financial analysis to timely and thoroughly address the needs of the Debtors in performing their duties as Debtors-in-Possession.  The persons who have worked on this case have demonstrated the skill in their respective areas of expertise required to provide the services necessary to assist the Debtors.

62.    Other than as provided in Section 504(b) of the Bankruptcy Code, FTI Consulting has not shared, or agreed to share, any compensation received as a result of this case with any person, firm or entity.  No promises concerning compensation have been made to FTI Consulting by any firm, person or entity.  The sole and exclusive source of compensation shall be funds of the Estate.

63.    This Application has been prepared in accordance with the United States Trustee Guidelines for Compensation and Reimbursement of Expenses Filed under U.S.C. section 330 and the Guidelines for Compensation and Expense Reimbursement of Professionals set forth by the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division.

64.    FTI Consulting reserves the right to supplement this Application prior to a hearing. Further, FTI Consulting specifically reserves the right to file subsequent applications for, and to seek final approval of, the fees requested herein.

65.    In accordance with the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation (the "Administrative Order"), FTI Consulting has submitted to the Court its Seventh Interim Fee Application requesting compensation for the period May 1, 2010 through and including July 31, 2010.

66.    Taking into consideration the skill and experience of FTI Consulting, the benefits to the Debtors, the nature of the assignment, and the time expended, FTI Consulting believes that fair and reasonable compensation for the services rendered during the Application Period is $197,838.00.

THEREFORE, FTI Consulting respectfully requests that the Court enter an Order allowing interim compensation for the period from May 1, 2010 through and including July 31, 2010 in the sum of one hundred percent (100%) of the amount incurred by FTI Consulting of $197,838.00 in fees and directing prompt payment to FTI Consulting in the amount of $197,838.00 and granting such other and further relief as may be just and proper.

Respectfully submitted,

FTI Consulting, Inc.

_____          _____
Robert J. Duffy                                              Date

_____          _____
Notary Public                                                Date



Robert J. Duffy

FTI Consulting, Inc.

200 State Street

Boston, MA 02109

(617) 897-1501

18

Dated: September 14, 2010   SKADDEN, ARPS, SLATE, MEAGHER &
      Richmond, Virginia   FLOM, LLP
                      Gregg M. Galardi, Esq.
                      Ian S. Fredericks, Esq.
                      P.O. Box 636
                      Wilmington, Delaware 19899-0636
                      (302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley     .
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in
Possession

EXHIBIT A

CIRCUIT CITY STORES, INC., et al.,

SUMMARY OF FEES

BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit A - Summary of Fees by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Coulombe, Stephen L | Sr. Managing Dir | $885.00 | 13.0 | 11,505.00 |
| Duffy, Robert J | Sr. Managing Dir | $885.00 | 23.7 | 20,974.50 |
| Regan, Kevin | Sr. Managing Dir | $820.00 | 9.1 | 7,462.00 |
| Chin, Gregory | Managing Dir | $710.00 | 3.6 | 2,556.00 |
| Lee, Geon | Managing Dir | $710.00 | 2.0 | 1,420.00 |
| Robinson, Joshua M. | Managing Dir | $675.00 | 28.1 | 18,967.50 |
| Cashman, Brian | Managing Dir | $655.00 | 71.6 | 46,898.00 |
| Nemerov, Lara | Consultant | $350.00 | 111.3 | 38,955.00 |
| O'Loughlin, Morgan | Consultant | $350.00 | 134.5 | 47,075.00 |
| Hellmund-Mora, Marili | Consultant | $250.00 | 8.1 | 2,025.00 |
| **Total** | | | **405.0** | **$197,838.00** |

EXHIBIT B


CIRCUIT CITY STORES, INC., et al.,


SUMMARY OF FEES BY TASK CODE

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit B - Summary of Fees by Task Code*
*For the Period 5/1/2010 through and including 7/31/2010*

| Task Code | Hours | Fees |
|---|---|---|
| Canadian Matters | 5.6 | 3,976.00 |
| Claims Management | 95.1 | 43,275.00 |
| General Duties and Case Administration | 35.7 | 17,630.50 |
| Liquidation Analysis/Wind down | 138.1 | 69,358.00 |
| Plan of Liquidation/Disclosure Statement | 72.8 | 37,683.50 |
| Preference Analysis | 57.7 | 25,915.00 |
| **Total** | **405.0** | **$197,838.00** |

EXHIBIT C


CIRCUIT CITY STORES, INC., et al.,


COMPLETE ACCOUNTING OF TIME

EXPENDED BY DAY BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Canadian Matters** | | | |
| Chin, Gregory | 5/27/2010 | 2.0 | Research support for AR adjustments and provide support to PwC. |
| Lee, Geon | 5/27/2010 | 2.0 | Provide supporting documentation for tax return. |
| Chin, Gregory | 5/28/2010 | 1.6 | Continue to research support for AR adjustments and provide support to PwC. |
| **Subtotal - Canadian Matters** | | **5.6** | |
| **Claims Management** | | | |
| Robinson, Joshua M. | 4/30/2010 | 0.5 | Respond to questions from I. Fredericks (SASMF) regarding CMS data. |
| Nemerov, Lara | 5/3/2010 | 0.3 | Communicate with H. Ferguson (CC) regarding updates on Omni 42 second supp order. |
| Nemerov, Lara | 5/4/2010 | 2.0 | Prepare exhibits for Omni 72. |
| Nemerov, Lara | 5/4/2010 | 2.0 | Prepare exhibits for Omni 73. |
| Nemerov, Lara | 5/4/2010 | 2.0 | Prepare exhibits for Omni 71. |
| Nemerov, Lara | 5/5/2010 | 1.8 | Prepare exhibits for Omni 74. |
| Nemerov, Lara | 5/5/2010 | 1.6 | Update exhibits for Omni 73. |
| Nemerov, Lara | 5/5/2010 | 1.4 | Prepare exhibits for Omni 75. |
| Nemerov, Lara | 5/5/2010 | 1.4 | Update exhibits for Omni 72. |
| Nemerov, Lara | 5/6/2010 | 0.8 | Prepare exhibits for Omni 77. |
| Nemerov, Lara | 5/6/2010 | 0.7 | Prepare mail files for KCC for Omnis 71-74. |
| Nemerov, Lara | 5/6/2010 | 0.7 | Prepare exhibits for Omni 78. |
| Nemerov, Lara | 5/6/2010 | 0.6 | Prepare exhibits for Omni 76. |
| Nemerov, Lara | 5/6/2010 | 0.6 | Prepare exhibit b for Omnis 76-78. |
| Nemerov, Lara | 5/6/2010 | 0.6 | Prepare exhibit b for Omnis 71-75. |
| Nemerov, Lara | 5/6/2010 | 0.4 | Prepare waterfall analysis for Omnis 71-78. |
| Nemerov, Lara | 5/6/2010 | 0.3 | Update exhibits for Omni 77. |
| Nemerov, Lara | 5/6/2010 | 0.3 | Update exhibits for Omni 74. |
| Nemerov, Lara | 5/7/2010 | 0.7 | Provide all finalized exhibits to Skadden for Omnis 71-78. |
| Nemerov, Lara | 5/7/2010 | 0.4 | Review KCC docket to ensure correct exhibits got filed. |
| Nemerov, Lara | 5/10/2010 | 0.6 | Provide exhibit b for Omnis 71-78 for H. Ferguson (CC). |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 5/1/2010 through and including 7/31/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 5/10/2010 | 0.4 | Prepare Omni 27 5th supplemental order for S. Boehm (MGW). |
| Robinson, Joshua M. | 5/14/2010 | 1.2 | Answer various questions from L. Nemerov (FTI). |
| Robinson, Joshua M. | 5/17/2010 | 0.6 | Respond to email questions from I. Fredericks (SASMF). |
| Nemerov, Lara | 5/17/2010 | 1.0 | Make claim updates based on recent stipulations on claims docket. |
| Nemerov, Lara | 5/17/2010 | 0.6 | Prepare Omni 19 5th supplemental order for S. Boehm (MGW). |
| Nemerov, Lara | 5/18/2010 | 1.0 | Communicate new claims data with team as of 5/18/10. |
| Nemerov, Lara | 5/18/2010 | 0.4 | Make updates to the claim owner per request of K. Barksdale (CC). |
| Nemerov, Lara | 5/19/2010 | 3.0 | Generate omnibus objection claims chart per request of S. Boehm (MGW). |
| Nemerov, Lara | 5/19/2010 | 2.0 | Update CMS to appropriately reflect resolved claims. |
| Nemerov, Lara | 5/19/2010 | 0.5 | Prepare Omni 70 supplemental order exhibit. |
| Nemerov, Lara | 5/20/2010 | 3.0 | Continue to review KCC and FTI claims database and identify any potential issues. |
| Nemerov, Lara | 5/20/2010 | 3.0 | Review KCC and FTI claims database and identify any potential issues. |
| Nemerov, Lara | 5/20/2010 | 0.5 | Generate Omni 33 supplemental order. |
| Nemerov, Lara | 5/21/2010 | 2.5 | Update CMS to reflect all transferred claims. |
| Nemerov, Lara | 5/21/2010 | 1.0 | Continue to review KCC and FTI claims database and identify any potential issues. |
| Robinson, Joshua M. | 5/28/2010 | 0.8 | Respond to email questions from I. Fredericks (SASMF). |
| Nemerov, Lara | 5/28/2010 | 0.2 | Update Zenith liability to be superseded. |
| Nemerov, Lara | 6/2/2010 | 0.5 | Make claim updates based on recent stipulations on claims docket. |
| Nemerov, Lara | 6/3/2010 | 1.0 | Communicate new claims data with team as of 6/3/10. |
| Nemerov, Lara | 6/7/2010 | 3.0 | Generate new analysis for all EP vendors per request of H. Ferguson (CC). |
| Nemerov, Lara | 6/7/2010 | 0.5 | Generate new analysis for all EP vendors per request of H. Ferguson (CC) (cont.). |
| Nemerov, Lara | 6/8/2010 | 3.0 | Generate new analysis for all EP vendors per request of H. Ferguson (CC) (cont.). |
| Robinson, Joshua M. | 6/9/2010 | 0.8 | Exchange emails with SAMSF regarding draft Omnis  71-78. |
| Nemerov, Lara | 6/9/2010 | 1.0 | Generate new analysis for all EP vendors per request of H. Ferguson (CC) (cont.). |
| Nemerov, Lara | 6/10/2010 | 3.0 | Prepare order exhibits on Omnis  71-78. |
| Nemerov, Lara | 6/10/2010 | 0.9 | Prepare order exhibits on Omnis  71-78 (cont.). |
| Nemerov, Lara | 6/11/2010 | 1.2 | Update order exhibits for Omnis  76. |
| Nemerov, Lara | 6/11/2010 | 0.5 | Review comments from KCC regarding the data transfer file. |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 5/1/2010 through and including 7/31/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Robinson, Joshua M. | 6/14/2010 | 1.0 | Review the order on Omni 74-76 and provide comments to L. Nemerov (FTI). |
| Nemerov, Lara | 6/14/2010 | 0.5 | Review the order on Omni 74. |
| Nemerov, Lara | 6/15/2010 | 1.0 | Review comments from KCC regarding the data transfer file and communicate claim status with S. Baker (SASMF). |
| Nemerov, Lara | 6/18/2010 | 0.5 | Prepare omnibus objection supplemental orders. |
| Nemerov, Lara | 6/21/2010 | 1.8 | Prepare order exhibits on Omni 79. |
| Nemerov, Lara | 6/21/2010 | 0.5 | Generate IBM historical AP data per request of I.Fredericks (SASMF) for H. Ferguson (CC)'s review. |
| Nemerov, Lara | 6/21/2010 | 0.5 | Prepare mail file on Omni 79. |
| Nemerov, Lara | 6/24/2010 | 1.0 | Make claim updates based on recent stipulations on claims docket. |
| Nemerov, Lara | 6/28/2010 | 1.0 | Make claim updates based on recent stipulations on claims docket. |
| Nemerov, Lara | 6/29/2010 | 0.5 | Make claim updates based on recent stipulations on claims docket. |
| Nemerov, Lara | 6/30/2010 | 2.0 | Generate secured claim listing per request of I. Fredericks (SASMF). |
| Regan, Kevin | 7/1/2010 | 0.3 | Review notes on inventory involving Circuit City for next scheduled call. |
| Regan, Kevin | 7/1/2010 | 0.2 | Participate on a phone call with D. Blanks (MGW). |
| Regan, Kevin | 7/6/2010 | 1.2 | Review background materials prior to call with D. Blanks (MGW) and B. Fosse (CC) prior to conference call. |
| Regan, Kevin | 7/6/2010 | 0.3 | Participate on a conference call with B. Fosse (CC) and D. Blanks (MGW) on expert report. |
| Regan, Kevin | 7/7/2010 | 3.3 | Draft expert report after discussions with B. Fosse (CC) and aid of CC reports. |
| Regan, Kevin | 7/7/2010 | 0.7 | Participate on call with B. Fosse (CC) on the detail processes and procedures of inventory accounting. |
| Regan, Kevin | 7/8/2010 | 0.5 | Edit the draft expert report after emails and a phone discussion with B. Fosse (CC). |
| Regan, Kevin | 7/8/2010 | 0.5 | Finalize the draft expert report and circulate it to D. Blanks (MGW) and B. Fosse (CC). |
| Regan, Kevin | 7/9/2010 | 0.3 | Forward draft materials of the expert report on inventory and updated biography. |
| Regan, Kevin | 7/12/2010 | 1.5 | Put expert witness package together, including qualifications, and forward same to counsel. |
| Nemerov, Lara | 7/13/2010 | 1.0 | Load new claims and distribute new claims information to team. |
| Nemerov, Lara | 7/14/2010 | 1.0 | Prepare Omnibus exhibits for omnibus objections #80 and #81. |
| Regan, Kevin | 7/15/2010 | 0.3 | Participate in discussion with D. Blanks (SASMF) on expert witness package. |
| Robinson, Joshua M. | 7/15/2010 | 1.5 | Assist L. Nemerov (FTI) with exhibits for Omni 80 and 81. |
| Coulombe, Stephen L | 7/21/2010 | 2.3 | Review the expert witness package from K. Regan (FTI) and provide comments. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| Nemerov, Lara | 7/22/2010 | 3.0 | Revise Omnibus exhibits for omnibus objections #80 and #81. |
| Duffy, Robert J | 7/26/2010 | 2.0 | Review the expert witness document and provide comments to K. Regan (FTI). |
| Nemerov, Lara | 7/28/2010 | 0.5 | Make revisions to the order on Omni #79 per request of S. Boehm (MGW). |
| Robinson, Joshua M. | 7/29/2010 | 2.7 | Assist L. Nemerov (FTI) with exhibits for Omni 80 and 81. |
| Nemerov, Lara | 7/29/2010 | 0.5 | Prepare omnibus objections #80 and #82. |
| Robinson, Joshua M. | 7/30/2010 | 1.4 | Make revisions to Omni's 80 and 81 and review with L. Nemerov (FTI). |
| Nemerov, Lara | 7/30/2010 | 3.0 | Prepare Omnibus exhibits for omnibus objections 80 and 81 to reflect changes from S. Sidhu (Skadden )as well as provide data files to KCC. |

**Subtotal - Claims Management**    **95.1**

**General Duties and Case Administration**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| Duffy, Robert J | 4/13/2010 | 0.4 | Provide comments to the team on FTI's March fee statement. |
| O'Loughlin, Morgan | 5/4/2010 | 0.6 | Set up FTI 's April fee statement. |
| O'Loughlin, Morgan | 5/6/2010 | 2.0 | Pull together the first draft of FTI's April fee statement for detailed time and expenses. |
| Cashman, Brian | 5/11/2010 | 2.0 | Review and update April fee statement. |
| O'Loughlin, Morgan | 5/11/2010 | 1.4 | Review and finalize the April fee statement draft and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 5/11/2010 | 0.7 | Make update to the April fee statement per comments from B. Cashman (FTI). |
| Hellmund-Mora, Marili | 5/11/2010 | 0.6 | Confirm and process the payment of invoice 7221171. |
| Hellmund-Mora, Marili | 5/13/2010 | 1.3 | Review the Circuit City April 2010 fee statement, run the WIP , reconcile variances, process bill, generate invoice and approve and reconcile. |
| O'Loughlin, Morgan | 5/20/2010 | 1.4 | Pull together the first draft of FTI's 6th interim fee application and send to B. Cashman (FTI). |
| Cashman, Brian | 5/21/2010 | 2.5 | Prepare Sixth Interim Fee Application. |
| O'Loughlin, Morgan | 5/21/2010 | 1.2 | Make edits to the draft of FTI's 6th interim fee application based on comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 5/21/2010 | 0.8 | Create updated exhibits for the 6th interim fee application. |
| Coulombe, Stephen L | 5/27/2010 | 1.0 | Review and provide comments to B. Cashman (FTI) on FTI's draft of Sixth Interim Fee Application. |
| Cashman, Brian | 5/27/2010 | 1.0 | Review draft of Sixth Interim Fee Application. |
| Cashman, Brian | 5/28/2010 | 1.0 | Review final draft of 6th Interim Fee Application. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **General Duties and Case Administration** | | | |
| Cashman, Brian | 6/1/2010 | 0.3 | Complete review of 6th interim fee application. |
| Hellmund-Mora, Marili | 6/1/2010 | 0.8 | Attend to internal billing matters regarding November Circuit City Expenses. |
| Cashman, Brian | 6/2/2010 | 0.8 | Review 6th interim fee application with S. Coulombe (FTI) and clear comments. |
| Cashman, Brian | 6/2/2010 | 0.2 | Notice 6th interim fee application and provide detailed time and expenses in excel file to US Trustee. |
| O'Loughlin, Morgan | 6/2/2010 | 0.4 | Complete final 6th interim fee application. |
| Hellmund-Mora, Marili | 6/2/2010 | 0.6 | Generate Circuit May WIP, download into Word and Excel, format and correspond regarding same. |
| O'Loughlin, Morgan | 6/4/2010 | 2.0 | Complete the FTI May fee statement. |
| Coulombe, Stephen L | 6/8/2010 | 0.4 | Review May fee statement and provide comments to B. Cashman (FTI). |
| Cashman, Brian | 6/8/2010 | 1.5 | Review May fee statement. |
| Hellmund-Mora, Marili | 6/8/2010 | 0.9 | Process November 09 Invoice adjustment and correspond regarding same. |
| Cashman, Brian | 6/9/2010 | 1.0 | Review May fee statement and clear review comments. |
| Hellmund-Mora, Marili | 6/23/2010 | 0.3 | Correspond regarding May Circuit City Fee application and invoice approval. |
| Hellmund-Mora, Marili | 6/24/2010 | 0.2 | Correspond regarding May Circuit City Fee application and invoice approval. |
| Hellmund-Mora, Marili | 6/30/2010 | 1.0 | Review Circuit City fee statement, reconcile variances, process bill, generate invoice and correspond regarding approvals and reconciliation. |
| Hellmund-Mora, Marili | 7/6/2010 | 0.6 | Generate Circuit City June WIP, download into Word and Excel, format and correspond regarding same. |
| Hellmund-Mora, Marili | 7/9/2010 | 0.4 | Remove time entry from WIP. |
| Duffy, Robert J | 7/16/2010 | 0.4 | Review the June fee statement and provide comments to B. Cashman (FTI). |
| O'Loughlin, Morgan | 7/16/2010 | 1.0 | Prepare the June fee statement and send to B. Cashman (FTI) for review. |
| Cashman, Brian | 7/17/2010 | 1.0 | Prepare June fee statement and review detailed time exhibit. |
| Coulombe, Stephen L | 7/21/2010 | 0.7 | Review June fee statement. |
| Cashman, Brian | 7/21/2010 | 0.3 | Notice June fee statement. |
| Hellmund-Mora, Marili | 7/21/2010 | 0.9 | Review Circuit City fee statement, reconcile variances, process bill, generate invoice and correspond regarding approvals. |
| Hellmund-Mora, Marili | 7/21/2010 | 0.5 | Generate and review Circuit City June WIP, download into Excel, format and correspond regarding same. |
| Coulombe, Stephen L | 7/29/2010 | 0.9 | Review settlement details. |
| Coulombe, Stephen L | 7/30/2010 | 0.7 | Review settlement details from SASMF. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **General Duties and Case Administration** | | | |
| **Subtotal - General Duties and Case Administration** | | **35.7** | |
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 4/6/2010 | 0.6 | Review sources and uses for review comments from Skadden. |
| Duffy, Robert J | 4/6/2010 | 0.4 | Review liquidation analysis from B. Cashman (FTI). |
| Duffy, Robert J | 4/13/2010 | 0.6 | Review claims waterfall and provide comments to B. Cashman (FTI). |
| Duffy, Robert J | 4/26/2010 | 0.8 | Review updated analyses prior to distribution to SASMF. |
| Cashman, Brian | 5/3/2010 | 0.7 | Update BOD presentation with claims waterfall and liquidation as requested by K. Bradshaw (CC). |
| Cashman, Brian | 5/3/2010 | 0.3 | Review and email support for benefits calculation to SASMF. |
| O'Loughlin, Morgan | 5/3/2010 | 1.0 | Update the BOD deck with the latest waterfall and liquidation analysis. |
| Cashman, Brian | 5/4/2010 | 0.6 | Incorporate review comments into reports. |
| Cashman, Brian | 5/4/2010 | 0.5 | Review updated waterfall analysis. |
| Cashman, Brian | 5/4/2010 | 0.4 | Review updated liquidation analysis. |
| Cashman, Brian | 5/4/2010 | 0.4 | Participate on call with K. Bradshaw (CC) and I. Fredericks (SASMF) to review BOD presentation. |
| Cashman, Brian | 5/4/2010 | 0.4 | Participate on call with SASMF to discuss reports. |
| Cashman, Brian | 5/4/2010 | 0.4 | Update sources and uses analysis. |
| Cashman, Brian | 5/4/2010 | 0.3 | Update BOD presentation with updated waterfall and liquidation analysis and send to K. Bradshaw (CC). |
| O'Loughlin, Morgan | 5/4/2010 | 0.4 | Make updates to the claims waterfall with comments from I. Fredericks (SASMF). |
| Cashman, Brian | 5/5/2010 | 0.5 | Participate on BOD call. |
| O'Loughlin, Morgan | 5/5/2010 | 1.2 | Update the claims waterfall as of 5/5/10 with the future objections file from H. Ferguson (CC). |
| O'Loughlin, Morgan | 5/5/2010 | 1.1 | Format and finalize the claims waterfall based on comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 5/5/2010 | 0.7 | Update the reduction to priority claims per single claim objection with State of NY. |
| Duffy, Robert J | 5/7/2010 | 0.6 | Review the liquidation analysis and sources and uses. |
| Duffy, Robert J | 5/7/2010 | 0.4 | Provide comments to B. Cashman (FTI) regarding the claims waterfall. |
| Cashman, Brian | 5/7/2010 | 1.0 | Review updated waterfall report. |
| O'Loughlin, Morgan | 5/7/2010 | 0.6 | Update the liquidation analysis with actuals through week ending 5/1/10. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 5/7/2010 | 0.4 | Update the claims ranges for the liquidation analysis per the 5/5/10 claims waterfall. |
| O'Loughlin, Morgan | 5/8/2010 | 1.7 | Update the claims waterfall with effect of filed omnibus objections #71-78. |
| O'Loughlin, Morgan | 5/8/2010 | 0.7 | Update the claims waterfall with future objections file from H. Ferguson (CC) and back out reduction from recently filed objections. |
| O'Loughlin, Morgan | 5/8/2010 | 0.6 | Update the claims waterfall with effect of ordered omnibus objection #70. |
| Duffy, Robert J | 5/10/2010 | 1.0 | Review the claims waterfall, liquidation analysis and sources and uses prior to sending to Skadden. |
| Cashman, Brian | 5/10/2010 | 1.5 | Review updated waterfall analysis. |
| Cashman, Brian | 5/10/2010 | 0.8 | Update liquidation analysis. |
| Cashman, Brian | 5/10/2010 | 0.7 | Update sources and uses analysis. |
| O'Loughlin, Morgan | 5/10/2010 | 1.3 | Update the sources and uses analysis with the latest claims waterfall and actual cash through week ending 5/8/10. |
| O'Loughlin, Morgan | 5/10/2010 | 1.1 | Review and finalize the claims waterfall, liquidation analysis and sources and uses analysis per request of Skadden. |
| O'Loughlin, Morgan | 5/10/2010 | 0.9 | Create verbiage in the claims waterfall bridge to explain decrease in future objections. |
| O'Loughlin, Morgan | 5/10/2010 | 0.8 | Update the liquidation analysis with actuals through week ending 5/8/10. |
| O'Loughlin, Morgan | 5/10/2010 | 0.4 | Make change to the future objection file and summaries per email from H. Ferguson (CC). |
| O'Loughlin, Morgan | 5/11/2010 | 0.9 | Format and finalize the liquidation analysis and sources and uses. |
| Cashman, Brian | 5/12/2010 | 0.3 | Research and respond to questions regarding management incentive plan. |
| Duffy, Robert J | 5/18/2010 | 0.3 | Review sources and uses analysis. |
| O'Loughlin, Morgan | 5/19/2010 | 1.6 | Update the claims waterfall with stipulations on Slam Brands and Signature Home Furnishings. |
| O'Loughlin, Morgan | 5/19/2010 | 1.3 | Update bridge to claims waterfall as of 5/19/10 to show changes compared to 5/8/10 version sent to Skadden. |
| O'Loughlin, Morgan | 5/19/2010 | 0.7 | Update the claims waterfall with the total claims filed line as of 5/19/10. |
| O'Loughlin, Morgan | 5/19/2010 | 0.4 | Format and finalize the claims waterfall based on comments from B. Cashman (FTI). |
| Cashman, Brian | 5/20/2010 | 1.0 | Review updated waterfall analysis. |
| Cashman, Brian | 5/20/2010 | 0.8 | Update liquidation analysis. |
| Cashman, Brian | 5/20/2010 | 0.7 | Update sources and uses analysis. |
| Cashman, Brian | 5/20/2010 | 0.5 | Prepare liquidation analysis bridge. |
| O'Loughlin, Morgan | 5/20/2010 | 1.2 | Update the claims waterfall with future objections file from H. Ferguson (CC) which shows effect of landlord objections. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 5/20/2010 | 0.4 | Make updates to the claims waterfall per email from S. Baker (SASMF) regarding supplemental omnibus objection #27. |
| Duffy, Robert J | 5/21/2010 | 0.6 | Review updated analyses prior to distribution to Skadden. |
| Cashman, Brian | 5/21/2010 | 1.0 | Review final versions and distribute reports to Skadden. |
| Duffy, Robert J | 5/24/2010 | 1.0 | Review the claims waterfall analysis and provide comments to B. Cashman (FTI). |
| O'Loughlin, Morgan | 5/24/2010 | 1.0 | Update the claims waterfall based on emails from S. Baker (SASMF) regarding recently ordered stipulations. |
| Duffy, Robert J | 5/25/2010 | 0.6 | Provide guidance to the team regarding updates of analyses and timing. |
| Duffy, Robert J | 5/25/2010 | 0.4 | Review email requests from Skadden regarding updated analyses. |
| O'Loughlin, Morgan | 5/25/2010 | 1.9 | Update the claims waterfall with latest stipulations with Apex Digital, Signature Home Furnishings, First Industrial Realty Trust, City of Fredericksburg. |
| O'Loughlin, Morgan | 5/25/2010 | 1.1 | Update bridge to claims waterfall as of 5/26/10 to show changes compared to 5/19/10 version sent to Skadden. |
| O'Loughlin, Morgan | 5/25/2010 | 0.5 | Update the total claims filed as of 5/25/10. |
| Cashman, Brian | 5/26/2010 | 0.6 | Review updated waterfall analysis. |
| Cashman, Brian | 5/26/2010 | 0.6 | Update sources and uses analysis. |
| Cashman, Brian | 5/26/2010 | 0.6 | Update liquidation analysis. |
| Cashman, Brian | 5/26/2010 | 0.6 | Prepare liquidation analysis bridge. |
| Cashman, Brian | 5/26/2010 | 0.6 | Review final versions and distribute reports to Skadden. |
| Cashman, Brian | 5/26/2010 | 0.5 | Update BOD presentation with updated waterfall and liquidation analysis and send to K. Bradshaw (CC). |
| Cashman, Brian | 5/26/2010 | 0.5 | Review cash report prepared by K. Bradshaw (CC) and discuss presentation of cash in reserve accounts with CC and SASMF.  Update liquidation analysis accordingly. |
| O'Loughlin, Morgan | 5/26/2010 | 1.1 | Update the sources and uses analysis with the latest claims waterfall and actual cash through week ending 5/22/10. |
| O'Loughlin, Morgan | 5/26/2010 | 0.9 | Update the liquidation analysis with actuals through week ending 5/22/10. |
| O'Loughlin, Morgan | 5/26/2010 | 0.6 | Update claim ranges in liquidation analysis per claims waterfall as of 5/26/10. |
| O'Loughlin, Morgan | 5/26/2010 | 0.4 | Format and make updates for analyses requested by Skadden. |
| O'Loughlin, Morgan | 6/2/2010 | 1.1 | Update the claims waterfall analysis for recently filed claims and stipulations. |
| Coulombe, Stephen L | 6/3/2010 | 1.0 | Review latest claims waterfall and liquidation analysis. |
| Cashman, Brian | 6/3/2010 | 1.0 | Review claims waterfall and ensure supporting documents agree to summary. |
| O'Loughlin, Morgan | 6/3/2010 | 0.8 | Update the liquidation analysis with actuals. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 6/3/2010 | 0.7 | Continue to update the claims waterfall with email summaries from S. Baker (SASMF). |
| Coulombe, Stephen L | 6/8/2010 | 0.6 | Review liquidation analysis. |
| O'Loughlin, Morgan | 6/8/2010 | 2.3 | Update the claims waterfall with stipulations with Samsung, Weidler Settlement Class, Prince George's Station Retail, CA Tax Collector, Cousins Properties, Hartman, Fijitsu and Qwest. |
| O'Loughlin, Morgan | 6/8/2010 | 1.4 | Update the future objections in the claims waterfall with file from H. Ferguson (CC). |
| O'Loughlin, Morgan | 6/8/2010 | 0.7 | Update the bridge in the claims waterfall. |
| O'Loughlin, Morgan | 6/8/2010 | 0.6 | Create supporting schedule for new claims filed since 6/2 waterfall. |
| Duffy, Robert J | 6/9/2010 | 1.0 | Review current waterfall, liquidation analysis and sources and uses. |
| Cashman, Brian | 6/9/2010 | 2.0 | Review updated waterfall, liquidation analysis and sources and uses and distributed to SASMF. |
| O'Loughlin, Morgan | 6/9/2010 | 1.7 | Finalize the claims waterfall, liquidation analysis and sources and uses analysis. |
| O'Loughlin, Morgan | 6/9/2010 | 1.3 | Update the sources and uses analysis. |
| Duffy, Robert J | 6/16/2010 | 0.6 | Review sources and uses analysis. |
| Duffy, Robert J | 6/16/2010 | 0.4 | Review latest claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 6/21/2010 | 3.0 | Update the claims waterfall with recently ordered omnibus objections #71-78. |
| O'Loughlin, Morgan | 6/21/2010 | 1.8 | Update the claims waterfall with Stipulations with FCMA, Actiontec and Bell O International. |
| O'Loughlin, Morgan | 6/21/2010 | 0.7 | Review emails from S. Baker (SASMF) and email regarding Henrico county claims. |
| O'Loughlin, Morgan | 6/21/2010 | 0.5 | Update claims watrerfall with ordered omnibus objection #79. |
| O'Loughlin, Morgan | 6/22/2010 | 1.6 | Reference H. Ferguson (CC) future objection file to udpate the claims waterfall. |
| O'Loughlin, Morgan | 6/22/2010 | 1.0 | Update the bridge in the claims waterfall. |
| O'Loughlin, Morgan | 6/22/2010 | 0.4 | Follow up with H. Ferguson (CC) regarding adjustments to future objections file. |
| Duffy, Robert J | 6/23/2010 | 0.4 | Review the claims waterfall, liquidation analysis and sources and uses analysis. |
| O'Loughlin, Morgan | 6/23/2010 | 1.6 | Update the liquidation analysis with actuals and claims waterfall ranges. |
| O'Loughlin, Morgan | 6/23/2010 | 1.5 | Review the Henrico county stipulated claims to properly account for claims paid in the waterfall. |
| O'Loughlin, Morgan | 6/23/2010 | 0.8 | Send the claims waterfall, liquidation analysis and sources and uses analysis and send to B. Cashman (FTI) with summary of changes to prior version. |
| O'Loughlin, Morgan | 6/23/2010 | 0.6 | Update the sources and uses analysis with actuals and claims waterfall ranges. |
| Cashman, Brian | 6/24/2010 | 2.5 | Review claims waterfall report, liquidation analysis, and sources and uses and provide review comments on claims paid to date among other items. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 6/24/2010 | 0.3 | Distribute claims waterfall, liquidation analysis and sources and uses to Skadden with synopsis. |
| O'Loughlin, Morgan | 6/24/2010 | 2.2 | Create summaries in claims waterfall for each detailed backup schedule. |
| O'Loughlin, Morgan | 6/24/2010 | 1.9 | Make updates to claims waterfall, liquidation analysis and sources and uses and send to B. Cashman (FTI). |
| O'Loughlin, Morgan | 6/24/2010 | 0.9 | Update the actual to date column in the liquidation analysis with claims paid to date. |
| Coulombe, Stephen L | 6/25/2010 | 0.7 | Participate on conference call with G. Galardi (SASMF), I. Fredericks (SASMF), R. Duffy (FTI) and B. Cashman (FTI) to discuss case update. |
| Coulombe, Stephen L | 6/25/2010 | 0.3 | Review updated CC analyses. |
| Cashman, Brian | 6/25/2010 | 0.7 | Participate on conference call with G. Galardi (SASMF), I. Fredericks (SASMF), R. Duffy (FTI) and S. Coulombe (FTI) to discuss case update. |
| Coulombe, Stephen L | 6/28/2010 | 0.6 | Review the updated liquidation analysis. |
| Coulombe, Stephen L | 6/28/2010 | 0.4 | Review the latest claims waterfall. |
| O'Loughlin, Morgan | 6/28/2010 | 1.6 | Review the Alliance Entertainment stipulation and update the claims waterfall accordingly. |
| O'Loughlin, Morgan | 6/28/2010 | 1.6 | Update the claims waterfall based on stipulations with Microsoft, Alliance Entertainment, IBM, LG, Onkyo, Averatec, Uniden. |
| O'Loughlin, Morgan | 6/28/2010 | 1.4 | Update the liquidation analysis with actuals and claims waterfall ranges. |
| O'Loughlin, Morgan | 6/28/2010 | 1.2 | Update the bridge in the claims waterfall. |
| O'Loughlin, Morgan | 6/28/2010 | 1.1 | Update the sources and uses analysis with actuals and claims waterfall ranges. |
| O'Loughlin, Morgan | 6/28/2010 | 1.1 | Review the future objections file from H. Ferguson (CC) and update the claims waterfall. |
| Cashman, Brian | 6/29/2010 | 1.8 | Review claims waterfall, liquidation analysis and sources and uses. |
| Cashman, Brian | 6/29/2010 | 0.7 | Participate in call with I. Fredericks (SASMF) and M. O'Loughlin (FTI) to review claims waterfall and liquidation analysis. |
| Cashman, Brian | 6/29/2010 | 0.5 | Review BOD deck with updated liquidation analysis and claims waterfall and distribute to K. Bradshaw (CC). |
| O'Loughlin, Morgan | 6/29/2010 | 2.1 | Update the July BOD presentation with the latest claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 6/29/2010 | 1.9 | Finalize the claims waterfall, liquidation analysis and sources and uses analysis with comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 6/29/2010 | 0.8 | Create listing of remaining secured claims after section II in the claims waterfall. |
| O'Loughlin, Morgan | 6/29/2010 | 0.7 | Participate in call with I. Fredericks (SASMF) and B. Cashman (FTI) to review claims waterfall and liquidation analysis. |
| Duffy, Robert J | 6/30/2010 | 1.0 | Review BOD deck with FTI liquidation analysis and claims waterfall/. |
| O'Loughlin, Morgan | 6/30/2010 | 1.3 | Finalize listing of secured claims after section II in the claims waterfall. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 6/30/2010 | 1.2 | Review the listing of secured claims and synch with the latest claims waterfall. |
| Duffy, Robert J | 7/6/2010 | 1.0 | Review latest claims waterfall. |
| Cashman, Brian | 7/7/2010 | 0.2 | Discuss claims eliminated by substantive consolidation analysis with H. Ferguson (CC) and M. O'Loughlin (FTI) for claims waterfall. |
| O'Loughlin, Morgan | 7/7/2010 | 1.6 | Update the remaining secured claims after section II of the claims waterfall and send to I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 7/7/2010 | 0.2 | Discuss claims eliminated by substantive consolidation analysis with H. Ferguson (CC) and B. Cashman (FTI) for claims waterfall. |
| O'Loughlin, Morgan | 7/8/2010 | 0.4 | Make updates to the claims waterfall and send to B. Cashman (FTI) for review. |
| Duffy, Robert J | 7/9/2010 | 1.0 | Review the latest claims waterfall, liquidation analysis and sources and uses analysis. |
| Cashman, Brian | 7/9/2010 | 1.3 | Review updated claims waterfall, liquidation analysis and sources and uses and provide review comments. |
| Cashman, Brian | 7/10/2010 | 0.3 | Review updated claims waterfall and liquidation analysis and distribute to Skadden. |
| Cashman, Brian | 7/10/2010 | 0.2 | Update liquidation analysis for changes proposed by SASMF and redistribute. |
| Cashman, Brian | 7/13/2010 | 0.4 | Communicate questions on liquidation analysis forecast to K. Bradshaw (CC) and update accordingly. |
| Duffy, Robert J | 7/16/2010 | 0.6 | Review the latest claims waterfall and liquidation analysis and compare to substantive consolidation. |
| O'Loughlin, Morgan | 7/16/2010 | 2.0 | Update the claims waterfall for recently ordered stipulations per email from S. Baker (SASMF). |
| O'Loughlin, Morgan | 7/18/2010 | 1.5 | Make updates to the claims waterfall with stipulations with Santengelo, Kitsap County Treasurer and withdrawn claim from Manufacturers and Traders Trust Co. |
| O'Loughlin, Morgan | 7/19/2010 | 0.6 | Look up recently filed $13.0M priority claim and send to I Fredericks (SASMF). |
| Duffy, Robert J | 7/20/2010 | 0.4 | Review the liquidation analysis and provide comments to the team. |
| Duffy, Robert J | 7/23/2010 | 0.7 | Review the updated liquidation analysis and provide comments to the team. |
| Duffy, Robert J | 7/23/2010 | 0.3 | Review latest claims waterfall. |
| Cashman, Brian | 7/23/2010 | 1.3 | Review cash reports, update liquidation analysis and distribute. |
| O'Loughlin, Morgan | 7/27/2010 | 0.6 | Review recently ordered stipulations for updating the claims waterfall. |
| O'Loughlin, Morgan | 7/27/2010 | 0.4 | Set up the bridge to prior claims waterfall. |
| Cashman, Brian | 7/28/2010 | 1.7 | Update liquidation analysis including review of weekly cash report. |
| Cashman, Brian | 7/28/2010 | 1.2 | Review claims waterfall. |
| O'Loughlin, Morgan | 7/28/2010 | 1.8 | Update the claims waterfall for stipulations with Motorola, Otoma, City of Chesapeake, Schimento Construction, Greg Nagy. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 7/28/2010 | 1.7 | Update the claims waterfall for future objections, withdrawn claims and bridge and send to B. Cashman (FTI) for review. |
| Cashman, Brian | 7/29/2010 | 0.8 | Participate on call with Skadden to review liquidation analysis, make changes and distribute. |
| Cashman, Brian | 7/29/2010 | 0.3 | Review listing of adjourned claims bifurcated into procedural and substantive prior to distribution to Skadden. |
| O'Loughlin, Morgan | 7/29/2010 | 0.7 | Update the BOD deck with latest claims waterfall and liquidation analysis and send to K. Bradshaw (CC). |
| Duffy, Robert J | 7/30/2010 | 0.7 | Review updated liquidation analysis. |
| Cashman, Brian | 7/31/2010 | 1.2 | Update liquidation analysis per the disclosure statement and send to Skadden for review. |
| Cashman, Brian | 7/31/2010 | 0.4 | Update liquidation analysis for updated unsecured claims per claims waterfall. |
| **Subtotal - Liquidation Analysis/Wind down** | | **138.1** | |
| **Plan of Liquidation/Disclosure Statement** | | | |
| Cashman, Brian | 5/30/2010 | 1.5 | Update substantive consolidation analysis. |
| O'Loughlin, Morgan | 5/30/2010 | 2.1 | Update substantive consolidation analysis with disbursements per liquidation analysis as of 5/27/10. |
| O'Loughlin, Morgan | 5/30/2010 | 1.8 | Update substantive consolidation analysis with proceeds per liquidation analysis as of 5/27/10. |
| O'Loughlin, Morgan | 5/30/2010 | 0.6 | Make updates to the substantive consolidation model and send first draft to B. Cashman (FTI) for review. |
| Cashman, Brian | 5/31/2010 | 1.5 | Review substantive consolidation analysis. |
| Cashman, Brian | 5/31/2010 | 1.5 | Update proceeds section of substantive consolidation analysis. |
| Cashman, Brian | 5/31/2010 | 1.5 | Update claims section of substantive consolidation analysis. |
| Cashman, Brian | 5/31/2010 | 1.5 | Update disbursements section of substantive consolidation analysis. |
| Cashman, Brian | 5/31/2010 | 0.5 | Review substantive consolidation analysis with SASMF. |
| Cashman, Brian | 5/31/2010 | 0.5 | Review substantive consolidation analysis based on comments from S. Coulombe (FTI). |
| O'Loughlin, Morgan | 5/31/2010 | 1.6 | Create bridge from 8/19/09 to 5/31/10 version for proceeds available to unsecured creditors line. |
| O'Loughlin, Morgan | 5/31/2010 | 1.6 | Create detailed backup of ordered claims by legal entity and claim class. |
| O'Loughlin, Morgan | 5/31/2010 | 1.2 | Create summary of three scenarios for final distribution to Skadden. |
| O'Loughlin, Morgan | 5/31/2010 | 1.1 | Make the substantive consolidation analysis dynamic for low, mid and high cases with toggle. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|

### *Plan of Liquidation/Disclosure Statement*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| O'Loughlin, Morgan | 5/31/2010 | 0.8 | Break circularity in substantive consolidation model using excel logic. |
| O'Loughlin, Morgan | 5/31/2010 | 0.8 | Make updates to substantive consolidation analysis based on comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 5/31/2010 | 0.4 | Format and finalize substantive consolidation analysis packet and send to B. Cashman (FTI). |
| Coulombe, Stephen L | 6/1/2010 | 0.5 | Review substantive consolidation analysis and provide comments to B. Cashman (FTI). |
| Coulombe, Stephen L | 6/1/2010 | 0.5 | Review substantive consolidation with B. Cashman (FTI). |
| Cashman, Brian | 6/1/2010 | 1.1 | Update substantive consolidation analysis. |
| Cashman, Brian | 6/1/2010 | 0.8 | Clear review comments from S. Coulombe (FTI). |
| Cashman, Brian | 6/1/2010 | 0.5 | Review substantive consolidation with S. Coulombe (FTI). |
| Cashman, Brian | 6/1/2010 | 0.3 | Distribute substantive consolidation to I. Fredericks (SASMF) including low, mid and high scenarios and corresponding bridge to prior version. |
| O'Loughlin, Morgan | 6/1/2010 | 1.6 | Create summary of high, mid and low cases for substantive consolidation analysis. |
| O'Loughlin, Morgan | 6/1/2010 | 0.9 | Make updates to substantive consolidation analysis with comments from B. Cashman (FTI). |
| Duffy, Robert J | 6/2/2010 | 1.2 | Review updated substantive consolidation analysis from B. Cashman (FTI). |
| Duffy, Robert J | 6/2/2010 | 0.8 | Review and provide comments to team regarding substantive consolidation analysis bridge from prior version. |
| Duffy, Robert J | 6/23/2010 | 0.6 | Review the latest substantive consolidation analysis. |
| Cashman, Brian | 7/7/2010 | 0.7 | Participate in conference call with I. Fredericks (SASMF) and M. O'Loughlin (FTI) to review substantive consolidation analysis. |
| O'Loughlin, Morgan | 7/7/2010 | 0.7 | Participate in conference call with I. Fredericks (SASMF) and B. Cashman (FTI) to review substantive consolidation analysis. |
| O'Loughlin, Morgan | 7/8/2010 | 1.1 | Reconcile remaining claims in high, mid and low cases per Skadden to remaining claims in substantive consolidation analysis. |
| Cashman, Brian | 7/10/2010 | 0.2 | Discuss with I. Fredericks (SASMF) request for bridge from liquidation analysis prepared during disclosure statement and current version. |
| Cashman, Brian | 7/11/2010 | 1.5 | Prepare liquidation bridge from liquidation per disclosure statement to current version. |
| O'Loughlin, Morgan | 7/12/2010 | 3.0 | Update the substantive consolidation analysis to move certain entities as part of substantive consolidation. |
| Cashman, Brian | 7/13/2010 | 2.0 | Review updated substantive consolidation which reflects changes requested by SASMF. |
| O'Loughlin, Morgan | 7/13/2010 | 1.9 | Continue to update the substantive consolidation and tie out intercompany balances. |
| O'Loughlin, Morgan | 7/13/2010 | 1.5 | Update the substantive consolidation analysis based on comments from SASMF. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Plan of Liquidation/Disclosure Statement** | | | |
| O'Loughlin, Morgan | 7/13/2010 | 1.1 | Tie the substantive consolidation analysis back to the liquidation and send to B. Cashman (FTI) for review. |
| Duffy, Robert J | 7/14/2010 | 1.0 | Review the latest substantive consolidation analysis prior to sending to SASMF. |
| Cashman, Brian | 7/14/2010 | 1.5 | Review updated substantive consolidation which reflects changes requested by SASMF and distribute. |
| O'Loughlin, Morgan | 7/14/2010 | 1.4 | Synch the claims in the high, mid and low scenarios per the ranges provided by SASMF. |
| O'Loughlin, Morgan | 7/14/2010 | 0.6 | Make changes to substantive consolidation analysis and send to B. Cashman (FTI). |
| O'Loughlin, Morgan | 7/19/2010 | 0.9 | Make updates to the substantive consolidation analysis based on comments from SASMF. |
| Duffy, Robert J | 7/20/2010 | 0.6 | Review the substantive consolidation analysis and provide comments to the team. |
| O'Loughlin, Morgan | 7/21/2010 | 0.5 | Make updates to the substantive consolidation analysis based on comments from SASMF. |
| Coulombe, Stephen L | 7/29/2010 | 1.1 | Review the latest substantive consolidation analysis and provide comments to B. Cashman (FTI). |
| O'Loughlin, Morgan | 7/29/2010 | 1.3 | Bifurcate listing of adjourned claims into substantive and procedural per request from I. Fredericks (SASMF). |
| Duffy, Robert J | 7/30/2010 | 1.3 | Review substantive consolidation analysis. |
| Coulombe, Stephen L | 7/30/2010 | 1.3 | Review the latest liquidation analysis and compare to substantive consolidation analysis. |
| Cashman, Brian | 7/30/2010 | 2.8 | Update substantive consolidation for changes per Skadden. |
| Cashman, Brian | 7/30/2010 | 2.3 | Participate on call with G. Galardi (SASMF), I. Fredericks (SASMF), M. O'Loughlin (FTI) and Company management to review the substantive consolidation. |
| Cashman, Brian | 7/30/2010 | 0.3 | Review substantive consolidation in anticipation of call with Skadden. |
| O'Loughlin, Morgan | 7/30/2010 | 2.8 | Make updates to the substantive consolidation analysis based on call with SASMF and the Company. |
| O'Loughlin, Morgan | 7/30/2010 | 2.3 | Participate on call with G. Galardi (SASMF), I. Fredericks (SASMF), B. Cashman (FTI) and Company management to review the substantive consolidation. |
| O'Loughlin, Morgan | 7/30/2010 | 2.1 | Create separate lines in the substantive consolidation analysis to reclassify unsecured claims to 503(b)(9) claims for product sent to CCSWC and PR. |
| O'Loughlin, Morgan | 7/30/2010 | 1.3 | Update the substantive consolidation analysis with estimate for 502(b)(6) claims in Puerto Rico entity. |
| Cashman, Brian | 7/31/2010 | 1.1 | Review intercompany activity reflected in the substantive consolidation for accuracy. |
| Cashman, Brian | 7/31/2010 | 0.8 | Review CC West Coast version of substantive consolidation. |
| O'Loughlin, Morgan | 7/31/2010 | 1.8 | Create new substantive consolidation scenario with CCSWC included in the substantive consolidation. |
| O'Loughlin, Morgan | 7/31/2010 | 0.7 | Review and finalize substantive consolidation analysis with CCSWC as part of substantive consolidation. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Plan of Liquidation/Disclosure Statement** | | | |
| **Subtotal - Plan of Liquidation/Disclosure Statement** | | **72.8** | |
| **Preference Analysis** | | | |
| Robinson, Joshua M. | 4/27/2010 | 0.7 | Answer email questions from L. Nemerov (FTI) in preparation of preference exhibits. |
| Robinson, Joshua M. | 4/28/2010 | 1.1 | Assist L. Nemerov (FTI) with questions related to preference. |
| Robinson, Joshua M. | 5/3/2010 | 0.5 | Answer questions from I. Fredericks (SASMF) related to preference. |
| Nemerov, Lara | 5/3/2010 | 1.0 | Update Onkyo preference analysis per request of I. Fredericks (SASMF). |
| Robinson, Joshua M. | 5/4/2010 | 1.0 | Answer questions from L. Nemerov (FTI) in preparation of preference exhibits. |
| Nemerov, Lara | 5/4/2010 | 1.0 | Prepare Samsung preference analysis per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 5/4/2010 | 1.0 | Prepare Metra Electronics preference analysis per request of D. Blanks (MGW). |
| Nemerov, Lara | 5/5/2010 | 1.0 | Assist L. Nemerov (FTI) with questions related to preference. |
| Robinson, Joshua M. | 5/6/2010 | 1.2 | Continue to run preference analysis on select vendors. |
| Nemerov, Lara | 5/6/2010 | 0.8 | Review Mitsubishi preference analysis per request of S. Baker (SASMF). |
| Nemerov, Lara | 5/6/2010 | 0.4 | Prepare Microsoft preference analysis per request of B. Fose (CC). |
| Robinson, Joshua M. | 5/7/2010 | 1.2 | Assist L. Nemerov (FTI) with questions related to preference. |
| Robinson, Joshua M. | 5/7/2010 | 1.0 | Continue to assist L. Nemerov (FTI) with questions related to preference. |
| Robinson, Joshua M. | 5/7/2010 | 0.8 | Run preference analysis on select vendors. |
| Nemerov, Lara | 5/7/2010 | 2.0 | Prepare updated preference analysis summary per request of H. Ferguson (CC). |
| Nemerov, Lara | 5/7/2010 | 1.2 | Update Mitsubishi preference analysis based on refreshed ordinary course data. |
| Nemerov, Lara | 5/7/2010 | 1.0 | Communicate with S. Baker (SASMF) regarding Monster preference analysis. |
| Nemerov, Lara | 5/7/2010 | 0.5 | Update Metra Electronics preference analysis - EP per request of D. Blanks (MGW). |
| Nemerov, Lara | 5/7/2010 | 0.4 | Continue to prepare updated preference analysis summary per request of H. Ferguson (CC). |
| Nemerov, Lara | 5/12/2010 | 0.7 | Review Gamer Graffix preference per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 5/12/2010 | 0.3 | Prepare Motorola preference analysis per request of J. Liberi (SASMF). |
| Nemerov, Lara | 5/17/2010 | 0.6 | Prepare Performance Printing preference analysis per request of P. Dangelo (SASMF). |
| Nemerov, Lara | 5/18/2010 | 2.6 | Combine Microsoft Preference analysis per request of I. Fredericks (SASMF). |
| Robinson, Joshua M. | 5/19/2010 | 0.7 | Assist L. Nemerov (FTI) with questions related to preference. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 5/19/2010 | 1.0 | Combine Navarre Preference analysis per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 5/25/2010 | 1.0 | Prepare Alliance and Source Interlink preference analysis per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 5/26/2010 | 1.3 | Prepare FMCA preference analysis. |
| Nemerov, Lara | 6/1/2010 | 1.0 | Prepare IBM preference analysis per request of J. Kumar (SASMF). |
| Nemerov, Lara | 6/2/2010 | 1.0 | Prepare Audiovox preference analysis per request of D. Blanks (SASMF). |
| Nemerov, Lara | 6/3/2010 | 1.0 | Review Mad Catz preference analysis. |
| Nemerov, Lara | 6/3/2010 | 0.4 | Prepare Imagination preference analysis per request of S. Baker (SASMF). |
| Nemerov, Lara | 6/10/2010 | 1.6 | Review Acer preference analysis. |
| Nemerov, Lara | 6/11/2010 | 2.3 | Prepare preliminary 503(b)(9) preference summary per request of I. Fredericks (SASMF) and share with H. Ferguson (CC). |
| Nemerov, Lara | 6/14/2010 | 0.5 | Review Acer preference analysis. |
| Robinson, Joshua M. | 6/16/2010 | 0.8 | Review Navarre preference analysis and provide comments to L. Nemerov (FTI). |
| Nemerov, Lara | 6/16/2010 | 1.5 | Break out IBM preference analysis into two entities per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 6/16/2010 | 1.0 | Combine Navarre preference analysis per request of H. Ferguson (CC). |
| Robinson, Joshua M. | 6/18/2010 | 2.1 | Review and provide comments to L. Nemerov (FTI) on updated 503(b)(9) preference summary per request of I. Fredericks (SASMF). |
| Robinson, Joshua M. | 6/18/2010 | 1.4 | Review request from I. Fredericks (SASMF) regarding 503(b)(9) summary. |
| Nemerov, Lara | 6/18/2010 | 2.2 | Prepare updated 503(b)(9) preference summary per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 6/18/2010 | 1.8 | Prepare updated 503(b)(9) preference summary per request of I. Fredericks (SASMF) (cont.). |
| Nemerov, Lara | 6/18/2010 | 1.1 | Update IBM preference analysis into two entities per request of I. Fredericks (SASMF). |
| Nemerov, Lara | 6/18/2010 | 0.9 | Review Simon preference analysis. |
| Robinson, Joshua M. | 6/21/2010 | 1.7 | Work with L. Nemerov (FTI) to provide follow-up files analysis as requested by I. Fredrick's (SASMF). |
| Robinson, Joshua M. | 6/21/2010 | 0.6 | Participate on call with I. Fredrick's (SASMF) to discuss certain preference vendors. |
| Robinson, Joshua M. | 6/25/2010 | 1.0 | Research questions and respond to email from I. Fredrick's (SASMF) regarding preference. |
| Nemerov, Lara | 7/13/2010 | 1.0 | Review Ameriwood preference analysis and update per request of H. Ferguson (CC). |
| Nemerov, Lara | 7/13/2010 | 1.0 | Perform Shopping.com preference analysis per request of S. Baker (SASMF). |
| Robinson, Joshua M. | 7/22/2010 | 1.0 | Research questions and respond to email from B. Stark (MGW) regarding preference. |
| Robinson, Joshua M. | 7/26/2010 | 0.8 | Read and respond to questions from B. Stark (MGW) regarding preference. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 5/1/2010 through and including 7/31/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 7/26/2010 | 1.0 | Review Schmenti preference analysis as requested by B. Stark (MGW). |
| Nemerov, Lara | 7/29/2010 | 2.0 | Review Netgear's preference defense per request of S. Baker (SASMF). |
| Nemerov, Lara | 7/29/2010 | 1.0 | Perform Puntoaparte preference analysis per request of S. Baker (SASMF). |
| **Subtotal - Preference Analysis** | | **57.7** | |
| **Total** | | **405.0** | |

EXHIBIT D


CIRCUIT CITY STORES, INC., et al.,


COPY OF THE RETENTION ORDER AUTHORIZING

EMPLOYMENT OF THE APPLICANT

Gregg M. Galardi, Esq.           Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.          Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                         :    Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :    Case No. 08-35653 (KRH)
et al.,                        :
                               :    Jointly Administered
            Debtors.           :    **Hrg. Date: December 5, 2008**
                               :    **at 10:00 a.m. (ET)**
                               :    **Obj. Due: December 3, 2008 at**
                               :    **4:00 p.m. (ET)**
- - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ORDER UNDER BANKRUPTCY CODE
SECTIONS 105(a), 327(a), 328 AND 1107 AND BANKRUPTCY
RULE 2014(a), AUTHORIZING THE EMPLOYMENT AND RETENTION
OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE
DEBTORS EFFECTIVE AS OF THE PETITION DATE**

        The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1]

seek entry of an order, under sections 105(a), 327(a),

328 and 1107 of title 11 of the United States Code (the

"Bankruptcy Code"), as supplemented by Rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2014-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy

Court for the Eastern District of Virginia (the "Local

Rules"), authorizing the employment and retention of FTI

Consulting, Inc., together with its wholly owned

subsidiaries, agents and independent contractors

(collectively "FTI"), as financial advisors and

consultants for the Debtors effective as of the date of

the filing of these bankruptcy cases, November 10, 2008

---

[1]   The Debtors are the following entities: The Debtors and the
last four digits of their respective taxpayer identification
numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx
Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512).  The address for Circuit City Stores West Coast, Inc.
is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For
all other Debtors, the address is 9950 Mayland Drive,
Richmond, Virginia 23233.

(the "Petition Date").  In support of the Application,
the Debtors rely upon the Affidavit of Robert J. Duffy,
sworn to on November 17, 2008 (the "Duffy Affidavit"), a
copy of which is attached hereto as Exhibit A.  In
further support of this Application, the Debtors
respectfully represent as follows:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider
this Application under 28 U.S.C. §§ 157 and 1334.  This
is a core proceeding under 28 U.S.C. § 157(b).  Venue of
these cases and this Application in this district is
proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105(a),
327(a), 328 and 1107, as supplemented by Bankruptcy Rule
2014 and Local Rule 2014-1.

### BACKGROUND

3.   On November 10, 2008 (the "Petition
Date"), the Debtors filed voluntary petitions in this
Court for relief under chapter 11 of the Bankruptcy
Code.

4.   The Debtors continue to manage and

3

operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

　　　　5.　　On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia (the "United States Trustee") appointed a
statutory committee of unsecured creditors.　To date, no
trustee or examiner has been appointed in these chapter
11 cases.

　　　　6.　　Based in Richmond, Virginia, Debtors are
a leading specialty retailer of consumer electronics and
operate large nationwide electronics stores throughout
the United States and Puerto Rico that sell, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

　　　　7.　　Despite significant revenues, the Debtors
have suffered two consecutive years of losses.　While
the Debtors made every effort to improve their financial
performance and implement a global turnaround strategy,
they were ultimately unable to consummate a successful
restructuring outside of bankruptcy.　In large part, the

4

Debtors' chapter 11 filings were due to an erosion of
vendor confidence, decreased liquidity and the global
economic crisis.

8.    Thus, the Debtors commenced these cases
with the immediate goals of obtaining adequate
postpetition financing and continuing their
restructuring initiatives commenced prior to the
Petition Date, including closing 154 stores.  In
addition, the Debtors will continue to evaluate their
business, work closely with their vendors, and enhance
customer relations with a goal of emerging from chapter
11 as a financially stable going concern.

**RELIEF REQUESTED**

9.    By this Application, the Debtors seek
entry of an order, under Bankruptcy Code sections
105(a), 327(a), 328 and 1107 authorizing the employment
and retention of FTI as their financial advisors and
consultants in these chapter 11 cases, effective as of
the Petition Date.

**BASIS FOR RELIEF REQUESTED**

10.    FTI commenced its engagement with the
Debtors on August 15, 2008 pursuant to an engagement

5

letter (the "Engagement Letter"), a copy of which is attached to the Duffy Affidavit as Exhibit 1A.  Pursuant to the Engagement Letter, the Debtors retained FTI to provide financial advisory and consulting services.  FTI and the Debtors executed a revised restructuring engagement letter on November 5, 2008 (together with the Engagement Letter, the "Engagement Letters"), a copy of which is attached to the Duffy Affidavit as Exhibit 1B. The Debtors and FTI have worked closely with respect to the matters set forth in both Engagement Letters.  FTI has assisted the Debtors in the financial aspects of their restructuring efforts and in the Debtors' preparation of these bankruptcy cases.

11.  The Debtors are familiar with the professional standing and reputation of FTI.  Indeed, the consideration of this professional standing and reputation was a critical element in the Debtors' decision to enter into the Engagement Letters between the Debtors and FTI.  Among other things, the Debtors understand that FTI has a wealth of experience in providing financial advisory and consulting services in restructurings and reorganizations and enjoys an

6

excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12.   Since the time FTI was first engaged by the Debtors, FTI has developed a great deal of institutional knowledge regarding the Debtors' operations, finance and systems.  The Debtors believe that this institutional experience and knowledge will be valuable to the Debtors in their efforts to reorganize.

13.   The Debtors believe that the services of FTI will be critical to the Debtors' efforts to maximize the value of their estates and to reorganize successfully.  Further, the Debtors believe that FTI is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

14.   Accordingly, the Debtors wish to retain FTI to provide assistance during these bankruptcy cases pursuant to the terms of the Engagement Letters.

## SCOPE OF SERVICES

15.   Pursuant to the terms of the Engagement Letters, FTI has provided, is providing and will continue to provide such consulting and advisory

7

services[2] as FTI and the Debtors deem appropriate and

feasible in order to advise the Debtors in the course of

these chapter 11 cases.  Specifically, FTI will render

various services to the Debtors including, but not

limited to, the following:

### Store Footprint Analysis
- Analyze liquidity and earnings impact of potential store closures.
- Provide assistance with contract terms for disposition of leases.
- Develop informational materials to support store closing processes.
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.
- Prepare information package for landlord conference calls and participate in lease termination discussions.
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

### Liquidity Forecasting
- Evaluate current liquidity position and expected future cash flows.
- Assist with management and control of cash disbursements.

---

[2] Capitalized terms not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Engagement Letters.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections.
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.
- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.
- Assist with working capital management and liquidity forecasting.
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.
- Assist management with development of employee retention and communications programs.
- Assist management in developing strategy relating to merchandise and other vendors.
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture

9

fixtures and equipment other tangible assets)
to inventory disposition firms including
conducting a 363 sale process, contacting
potential buyers, facilitating due diligence
requests, negotiating asset purchase
agreement(s) and conducting a final auction.
- Prepare "bid packages" for Liquidators and
  manage selection process.
- Solicit potential inventory Liquidators
  for going-out-of-business sale process.
- Assist the Company in the negotiation of
  an Agency agreement.
- Manage the process to liquidate stores and
  conduct going-out-business sales in the
  ordinary course of business.
- Solicit bids from real estate consulting
  firms to evaluate lease mitigation
  strategies.
- Assist with data collection and information
  gathering related to third party due diligence.
- Advise and assist the Company and other
  professionals retained by the Company in
  developing, negotiating and executing plan of
  reorganization scenarios, 363 sales or other
  potential sales of assets or business units.

**Contingency Planning**
- Assist management and the Board of Directors in
  contingency planning including the evaluation,
  planning and execution of a potential Chapter
  11 filing.
- Assist Company personnel with the
  communications and negotiations, at your
  request and under your guidance, with lenders,
  creditors, and other parties-in-interest
  including the preparation of financial
  information for distribution to such parties-
  in-interest.
- Advise and assist the Company in the
  compilation and preparation of financial
  information necessary due to requirements of
  the Bankruptcy Court and/or Office of the US
  Trustee.

10

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.
- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.
- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing.

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

11

**FTI'S DISINTERESTEDNESS**

16.   FTI has informed the Debtors that, except
as may be set forth in the Duffy Affidavit, it (i) has
no connection with the Debtors, its creditors or other
parties in interest in this case; (ii) does not hold or
represent any interest adverse to the Debtors' estates;
and (iii) believes it is a "disinterested person" as
defined within Bankruptcy Code section 101(14).

17.   FTI has further informed the Debtors that
it will conduct an ongoing review of its files to ensure
that no conflicts or other disqualifying circumstances
exist or arise.  If any new material facts, connections
or relationships are discovered or arise, FTI will
supplement its disclosure to the Court.

18.   FTI has also agreed not to share with any
person or firm the compensation to be paid for
professional services rendered in connection with these
cases.

19.   The Debtors believe that FTI is not owed
any amounts with respect to its prepetition fees and
expenses.

## TERMS OF RETENTION

20.    The Debtors understand that FTI intends to apply to the Court for allowances of compensation and reimbursement of expenses for financial advisory and consultants support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee.  The customary hourly rates, subject to periodic adjustments, charged by FTI's professionals anticipated to be assigned to this case are as follows:

**Standard Hourly Rates**

| | |
|---|---|
| Senior Managing Directors | $650 - $715 |
| Directors/Managing Directors | $475 - $620 |
| Consultants/Senior Consultants | $235 - $415 |
| Administrative/Paraprofessionals | $95  - $190 |

**Completion Fee**

21.    The Company, in its sole and absolute discretion, may pay FTI (i) a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company and (ii) a fee (a "Financing Fee") in the event additional financing is obtained.  The Completion Fee may be paid

to FTI under the following scenarios:

- In the event the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.

- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

The Financing Fee may be paid to FTI under the following

scenarios:

**Financing Fee**

   **Second Lien Financing**

- A total Financing Fee of 1.0% of the commitment of second lien DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

   **Senior Loan Financing**

- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a financing fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.
- A total financing fee of 0.25% of the commitment of senior DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

14

22.  FTI has requested that it be engaged under a general retainer.  The Debtors believe that FTI should be employed under a general retainer because of the variety and complexity of the services that will be required during these proceedings.

23.  FTI has received from the Debtors total "on account" cash in the amount of $750,000 (the "On-Account Cash"), which was increased from $550,000 on November 5, 2008.  Attached as Exhibit 4 to the Duffy Affidavit is a list of the invoices sent by FTI and the payments made by the Company.  As set forth on such Exhibit 4, since commencing the engagement, FTI has invoiced the Company in the aggregate amount of $3,228,924, which amount reflects $2,336,490 billed to the Company for professional services, $142,434 for out of pocket expense reimbursement and the $750,000 held as On-Account Cash.  As also shown on Exhibit 4, prior to the Petition Date, FTI applied $0 of its initial $750,000 cash on account for estimated fees and expenses.

24.  FTI has informed the Debtors that as promptly as practicable after all fees and charges

accrued prior to the Petition Date have been finally
posted within FTI's computerized billing system, FTI
will issue a final billing statement to the Company for
the actual fees, charges, and disbursements incurred for
the period prior to the Petition Date (the "Final
Prepetition Bill Amount").  Pursuant to the Engagement
Letters, and subject to any orders of the Court, FTI
will deduct the Final Prepetition Bill Amount from the
On-Account Cash.  To the extent that the Final
Prepetition Bill Amount is less than the On-Account
Cash, FTI has indicated that it will hold the full
amount of the difference as a post-petition retainer to
be applied against any amounts approved by the Court in
connection with FTI's final fee application.  In the
event that the Final Prepetition Bill Amount exceeds the
On-Account Cash, FTI has agreed to waive any claim
against the Debtors for payment with respect to the
amount by which the Final Prepetition Bill Amount
exceeds the On-Account Cash.  FTI has further informed
the Debtors that the On-Account Cash will not be
segregated by FTI in a separate account.

**NOTICE**

25.   Notice of this Application has been
provided to those parties entitled to notice under this
Court's Order Pursuant to Bankruptcy Code Sections 102
and 105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(D.I. 136).   The Debtors submit that, under the
circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

26.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Application and all applicable
authority is set forth in the Application, the Debtors
request that the requirement that all applications be
accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

27.   No previous request for the relief sought
herein has been made to this Court or any other court.

17

**CONCLUSION**

WHEREFORE, the Debtors respectfully request
that the Court enter an order, substantially in the form
annexed hereto, granting the relief requested in the
Application and such other and further relief as may be
just and proper.

Dated:     Richmond, Virginia
           November 18, 2008

                    Circuit City Stores, Inc.



                    /s/ Bruce H. Besanko
                    Bruce H. Besanko
                    Executive Vice President and Chief
                    Financial Officer

Dated: November 18, 2008
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

          - and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

          - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

## EXHIBIT A
**Duffy Affidavit**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - x
                          :
In re:                    :   Chapter 11
                          :
CIRCUIT CITY STORES, INC.,:   Case No. 08-35653 (KRH)
et al.,                   :
                          :
                Debtors.  :   Jointly Administered
- - - - - - - - - - - - - x

**AFFIDAVIT IN SUPPORT OF THE DEBTORS' APPLICATION
FOR AN ORDER AUTHORIZING EMPLOYMENT AND
RETENTION OF FTI CONSULTING, INC. AS
FINANCIAL ADVISOR FOR THE DEBTORS**

STATE OF MASSACHUSETTS    )
                          )   ss.
COUNTY OF SUFFOLK         )

    I, Robert J. Duffy, being duly sworn, depose and

say:

1.    I am a Senior Managing Director with FTI

Consulting, Inc. (together with its wholly owned

subsidiaries, agents, independent contractors and

employees, "FTI"), a financial advisory services firm

with offices located at numerous locations around the

world.  I submit this Affidavit on behalf of FTI (the

"Affidavit")and in support of the application (the

"Application") of Circuit City Stores, Inc., the debtors

and debtors in possession in the above-captioned cases

(collectively, the "Debtors"), for an order authorizing

the employment and retention of FTI as Financial

Advisors under the terms and conditions set forth in the

Application. Except as otherwise noted,[1] I have personal

knowledge of the matters set forth herein.

### DISINTERESTEDNESS AND ELIGIBILITY

2.    In connection with the preparation of this

Affidavit, FTI's professionals conducted a review of its

professional contacts with the Debtors, their affiliates,

and other parties in interest that were reasonably known

---

[1]     Certain of the disclosures herein relate to matters within the
        personal knowledge of other professionals at FTI and are based
        on information from them.

2

to us.  Our review, completed under my supervision,

consisted of queries of an internal computer database

containing names of individuals and entities that are

present or recent former clients of FTI in order to

identify potential relationships.  FTI's search included

the following types of entities: the Debtors and its

subsidiaries, non-debtor affiliates, the Debtors'

directors and officers, secured lenders, significant

merchandise creditors, significant vendors, significant

real and personal property lessors, significant

shareholders, consignors, third party administrators,

potential liquidators, litigation parties, banks,

attorneys and professionals. A listing of the parties

reviewed is reflected on Exhibit 2 to this Affidavit.  A

summary of such relationships that FTI identified during

this process is set forth on Exhibit 3 to this Affidavit.

If any new relevant facts or relationships are

discovered or arise, FTI will promptly file a Bankruptcy

Rule 2014(a) Supplemental Affidavit.

    3.   FTI has initiated ethical walls relating to

two matters to ensure that FTI's representation of

another party does not have a materially adverse impact

on the Debtors.  First, FTI is currently engaged by
Syntax Brillian and the Debtors are a party to
litigation with Syntax Brillian.  The ethical wall was
established on September 3, 2008.  Second, FTI is
currently engaged by Magellan and Magellan is a
potential creditor of the Debtors.  The ethical wall
was established October 28, 2008.

4.  From the results of such review, we were not
made aware of any conflicts of interest or additional
relationships that we believe would preclude us from
performing our services.  No FTI personnel working on
this engagement performed any services for either Syntax
Brillian or Magellan following the date of execution of
the ethical wall agreements.  FTI personnel working
under my direction have been subject to ethical walls to
avoid any leakage of information or engagement-related
communications with FTI personnel assigned to assist
Syntax Brillian or Magellan.  These ethical walls remain
in effect as of the date of this Affidavit.  As part of
the ethical wall, FTI has instituted information
blocking systems to prevent the exchange of information

4

regarding the Debtors between the groups involved within

FTI.

5.     Financial Dynamics ("FD"), a division of FTI,

is employed by the Debtors to provide communications

services.   FD is not a creditor and these services are

being provided in the ordinary course of business.

6.     Otherwise, based on the results of its review

of parties-in-interest associated with the Debtors, FTI

does not have a relationship with any of the parties on

the Exhibit 2 in matters related to these proceedings.

FTI has provided and could reasonably be expected to

continue to provide services unrelated to the Debtors'

cases for the various entities shown on Exhibit 3.

FTI's assistance to these parties has been related to

providing various financial, restructuring, litigation

support and/or engineering and scientific investigation

consulting services.   To the best of my knowledge, no

services have been provided to the parties-in-interest

which involve their rights in the Debtors' cases, nor

does FTI's involvement in this case compromise its

ability to continue such consulting services.

7.    Further, as part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

8.    FTI does not believe it is a "Creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10).  Further, neither I nor any other FTI

6

partner or principal, to the best of my knowledge, is a holder of any shares of the Debtors' stock.

9.    Based on the results of the relationship search conducted to date as described above, FTI has no known significant connection to the above-captioned Debtors, their creditors, equity security holders, other parties-in-interest (as reasonably known to us) or their respective attorneys, except as disclosed or otherwise described herein. Further, to the best of my knowledge, no one involved in this case or in FTI's practice generally has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

10.   As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), in that FTI

(1)    is not a creditor, equity security holder or insider of the Debtors;

(2)    is not and was not within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors.

7

In addition, to the best of my knowledge and based upon the results of the relationship search described above, FTI neither holds nor represents an interest adverse to the Debtors within the meaning of Bankruptcy Code section 327(a).

11.  It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest.  If any new relevant facts or relationships are discovered or arise, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Affidavit.

### PROFESSIONAL COMPENSATION

12.  Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable U.S. Trustee guidelines and the local rules of this District, FTI will seek payment for compensation on an hourly basis for the financial and other consulting services outlined in the application, and reimbursement of actual and necessary expenses incurred by FTI.  FTI's customary hourly rates as charged to both bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the

Application for the employment of FTI. These hourly

rates are adjusted annually.

13. Further, according to FTI's books and records,

during the ninety days prior to the Debtors' petition

date, FTI received $3,228,924 as set forth on Exhibit 4,

which amount reflects $2,336,490 billed to the Company

for professional services, $142,434 for out of pocket

expense reimbursement and the $750,000 held as On-

Account Cash.

14. No commitments have been made or received by

FTI, nor any partner or employee associate thereof, as

to compensation or payment in connection with these

cases other than in accordance with the provisions of

the Bankruptcy Code. FTI has no agreement with any

other entity to share with such entity any compensation

received by FTI in connection with these chapter 11

cases.

FURTHER AFFIANT SAYETH NOT.

/s/ Robert J. Dufffy
Robert J. Duffy

9

Subscribed and sworn to
before me this 14th day of
November 2008.


/s/ Sandra M. Raabe
Notary Public # 7045899

**Exhibit 1A & 1B**
FTI Engagement Letters



FTI Consulting
125 High Street
Suite 1402
Boston, MA 02110
617.897.1500 telephone
617.897.1510 facsimile
www.fticonsulting.com

**PRIVATE & CONFIDENTIAL**

August 15, 2008

Phil Schoonover
Chairman, President, CEO
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

Re: <u>Retention of FTI Consulting, Inc.</u>

Dear Mr. Schoonover:

**1.    Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

**2.    Scope of Services**

The Services, to be performed at the direction of the Executive Committee of the Company's Board of Directors (the "Executive Committee") and its management, are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning and analysis of an "out of court" restructuring that is intended to maximize shareholder value and minimize disruption to the Company's operations.

**Phase I Scope:**

<u>Store Footprint Analysis</u>
- Evaluate performance of individual stores by format and region
- Analyze four wall profitability of each store
- Analyze allocated expenses such as advertising, field operations and distribution costs
- Review fixed/variable nature of non four wall costs to assess impact of potential store closings

Circuit City Stores, Inc.
August 15, 2008

- Analyze liquidity and earnings impact of store closures
  - Evaluate likely range of lease buyout costs based on situation
  - Assess impact of store closing sales on a cash and GAAP basis
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing process
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Liquidity Forecasting
- Evaluate the Company's current weekly forecasting models
  - Assess functionality of the model and suggest/develop enhancements
  - Create flexible model to evaluate impact on liquidity of critical assumptions
- Validate assumptions included in forecast including, without limitation:
  - Comparable store sales and margin
  - Inventory levels and trade credit support
  - Store closing impact including inventory liquidation and lease termination costs
  - Other issues as identified by the Executive Committee, management or FTI

Additional Phase I Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Coordination of and participation in a "kick-off" meeting and subsequent in-person meetings at the Company's headquarters on such date as the Company determines
- Provide an initial timeline and staffing requirements within five business days of the execution date of this letter
- Provide an initial report, recommendations and a proposed work plan (including a proposed timeline and staffing requirements) on or before September 8, 2008
- Develop and present FTI's Phase I analysis and subsequent recommendations at a meeting of the Executive Committee currently scheduled for the week of September 15, 2008
- Provide other services as requested by management or the Executive Committee
- The parties agree that Phase I will be concluded in approximately 3 - 4 weeks unless the Company, in its sole discretion agrees to an alternative schedule

**Phase II Scope:**

Business/Out-of-Court Restructuring Plan
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting

-2-

Circuit City Stores, Inc.
August 15, 2008

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring

Additional Phase II Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management or the Executive Committee.

Financing Services
- The Services set forth in this Engagement Contract do not include financing or capital raising activities. In the event the Company requests that FTI perform such activities, the parties agree to execute an addendum to this Engagement Contract that describes such additional services and any related fees.

Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the Executive Committee. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other parties, including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code")*, are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a

-3-

Circuit City Stores, Inc.
August 15, 2008

general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|                                        | Per Hour        |
| -------------------------------------- | --------------- |
| Senior Managing Directors              | $650 - $715     |
| Directors / Managing Directors         | $475 - $620     |
| Consultants/Senior Consultants         | $235 - $415     |
| Administrative / Paraprofessionals     | $95 - $190      |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Executive Committee, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.
- In the event the Company files for bankruptcy protection and the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

Circuit City Stores, Inc.
August 15, 2008

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on your behalf during this Engagement provided that FTI shall present to the Company invoices and other supporting detail that may be reasonably requested by the Company. Direct expenses are reasonable and customary out-of-pocket expenses which are billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other out-of-pocket expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of outside counsel) with respect thereto as provided herein.

**Cash on Account:**

Initially, the Company will forward to us the amount of $100,000, which funds will be held "on account" to be applied to our professional fees, expenses and disbursements for the Engagement (as replenished or supplemented from time to time, the "Initial Cash on Account"). To the extent that this amount exceeds our fees, expenses and disbursements upon the completion or termination of the Engagement, we will immediately refund to the Company any portion of the Initial Cash on Account and the Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and expenses and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

Circuit City Stores, Inc.
August 15, 2008

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.    **Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

-6-

Circuit City Stores, Inc.
August 15, 2008

5.    **Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
August 15, 2008

Yours faithfully,

FTI CONSULTING, INC.

By

Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
August 15, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____

Phil Schoonover
Chairman, President, CEO

Date: August 27, 2008

# FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Circuit City Stores, Inc. dated August 15, 2008 (the "Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1    **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party (other than to your attorneys, investment bankers, financial advisors, auditors and other representatives), or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1    **Provision of information and assistance**—Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data**—While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information**—In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.  Additional Services**

3.1  **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2  **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

**4.  Confidentiality**

4.1  **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

4.1.2  is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.3  is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

4.1.4  is or has been independently developed by the recipient.

4.2  **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3  **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4  **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5  **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.  Termination**

5.1  **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2     **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3     **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.   **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1     **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2     **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3     **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4     **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5     **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7.  **Independent Contractors** — The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By: _____

Phil Schoonover
Chairman, President, CEO

Date: _____Auqust 27, 2008_____

F T I

PRIVATE & CONFIDENTIAL

November 05, 2008

Bruce H. Besanko
Chief Financial Officer
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

Re: Retention of FTI Consulting, Inc.

Dear Mr. Besanko:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at the direction of the Company and are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning, analysis of and execution of a restructuring that is intended to maximize value for all constituents and minimize disruption to the Company's operations.

**Store Footprint Analysis**
- Analyze liquidity and earnings impact of potential store closures
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing processes
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Circuit City Stores, Inc.
November 5, 2008

**Liquidity Forecasting**
- Evaluate current liquidity position and expected future cash flows
- Assist with management and control of cash disbursements
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction
  - Prepare "bid packages" for Liquidators and manage selection process
  - Solicit potential inventory Liquidators for going-out-of-business sale process
  - Assist the Company in the negotiation of an Agency agreement
  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business
  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies
- Assist with data collection and information gathering related to third party due diligence
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units

Circuit City Stores, Inc.
November 5, 2008

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee
- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.


Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other-parties,

-3-

Circuit City Stores, Inc.
November 5, 2008

including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code")*, are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|                                      | Per Hour        |
| ------------------------------------ | --------------- |
| Senior Managing Directors            | $650 - $715     |
| Directors / Managing Directors       | $475 - $620     |
| Consultants/Senior Consultants       | $235 - $415     |
| Administrative / Paraprofessionals   | $95 - $190      |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Company, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.

Circuit City Stores, Inc.
November 5, 2008

- In the event the Company files for bankruptcy protection and the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

**Financing Fee**

Second Lien Financing

- A total fee of 1.0% of the commitment of second lien financing will be earned by FTI whether outside of a chapter 11 proceeding or as part of a DIP financing. Such fees will be earned and paid upon interim court approval or closing of such financing.

Senior Loan Financing

- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on your behalf during this Engagement provided that FTI shall present to the Company invoices and other supporting detail that may be reasonably requested by the Company. Direct expenses are reasonable and customary out-of-pocket expenses which are billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other out-of-pocket expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of outside counsel) with respect thereto as provided herein.

**Cash on Account:**

The Company will forward to us at total amount of $750,000, which funds will be held "on account" to be applied to our professional fees, expenses and disbursements for the Engagement (as replenished or supplemented from time to time, the "Cash on Account"). FTI acknowledges that it is holding $200,000 Initial Cash on Account relating to its engagement letter with the Company dated August 15, 2008. To the extent that this amount exceeds our fees, expenses and disbursements upon the completion or termination of the Engagement, we will immediately refund to the Company any portion of the Initial Cash on Account and the Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and expenses and disbursements incurred on the basis discussed above, and in certain

Circuit City Stores, Inc.
November 5, 2008

circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph

-6-

Circuit City Stores, Inc.
November 5, 2008

may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

**4.    Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

**5.    Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in a potential Chapter 11 case. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in a potential Chapter 11 in matters unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Company in matters upon which FTI is to be employed, and none are in connection with these cases.

FTI has initiated ethical walls relating to two matters to ensure that FTI's representation of another party does not have a materially adverse impact on the Company. First, FTI is currently engaged by Syntax Brillian and Circuit City is a party to litigation with Syntax Brillian. Second, FTI is currently engaged by Magellan and Magellan is a potential creditor of the Company in any Chapter 11 case.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

Circuit City Stores, Inc.
November 5, 2008

**6.      Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing
both the confirmation below and the Standard Terms and Conditions and returning a copy of
each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not
hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
November 5, 2008

Yours faithfully,

FTI CONSULTING, INC.

By: _____

Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
November 5, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____

Bruce H. Besanko
Chief Financial Officer

Date: Nov 5, 2008

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth
within the attached letter of engagement with Circuit City Stores, Inc. dated November 5, 2008 (the
"Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and
these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire
agreement between us relating to the Services and replace and supersede any previous proposals, letters of
engagement, undertakings, agreements, understandings, correspondence and other communications, whether
written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make
it easier to read but do not form part of the Engagement Contract.

1.    **Reports and Advice**

1.1    **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely
for your use and benefit and only in connection with the purpose in respect of which the Services are
provided. Unless required by law, you shall not provide any advice given or report issued by us to any
third party (other than to your attorneys, investment bankers, financial advisors, auditors and other
representatives), or refer to us or the Services, without our prior written consent. In no event, regardless
of whether consent has been provided, shall we assume any responsibility to any third party to which
any advice or report is disclosed or otherwise made available.

2.    **Information and Assistance**

2.1    **Provision of information and assistance**—Our performance of the Services is dependent upon your
providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that
all information we may reasonably require is provided on a timely basis and is accurate and complete
and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn
that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data**—While our work may include an analysis of financial and accounting
data, the Services will not include an audit, compilation or review of any kind of any financial
statements or components thereof. Company management will be responsible for any and all financial
information they provide to us during the course of this Engagement, and we will not examine or
compile or verify any such financial information. Moreover, the circumstances of the Engagement may
cause our advice to be limited in certain respects based upon, among other matters, the extent of
sufficient and available data and the opportunity for supporting investigations in the time period.
Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on
financial statements of the Company.

2.4    **Prospective financial information**—In the event the Services involve prospective financial
information, our work will not constitute an examination or compilation, or apply agreed-upon
procedures, in accordance with standards established by the American Institute of Certified Public
Accountants or otherwise, and we will express no assurance of any kind on such information. There
will usually be differences between estimated and actual results, because events and circumstances
frequently do not occur as expected, and those differences may be material. We will take no
responsibility for the achievability of results or events projected or anticipated by the management of
the Company.

**3. Additional Services**

3.1  **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2  **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

**4. Confidentiality**

4.1  **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

4.1.2  is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.3  is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

4.1.4  is or has been independently developed by the recipient.

4.2  **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3  **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4  **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5  **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5. Termination**

5.1  **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2     **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3     **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.    Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1     **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2     **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3     **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4     **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII:  (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5     **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7.  **Independent Contractors** -- The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By: _____
Bruce H. Besanko
Chief Financial Officer

Date: _____Nov 5, 2008_____

## EXHIBIT 2
### Listing of Parties-in-Interest
### Reviewed for Current Relationships

**Debtors**
Abbott Advertising Agency, Inc.
CC Aviation, LLC
CC Distribution Company of
Virginia, Inc.
Circuit City Properties, LLC
Circuit City Purchasing Company,
LLC
Circuit City Stores PR, LLC
Circuit City Stores West Coast,
Inc.
Circuit City Stores, Inc.
Courcheval, LLC
Digital Video Express, LP
InterTAN, Inc.
Kinzer Technology, LLC
Mayland MN, LLC
Northern National Insurance, Ltd
Orbyx Electronics, LLC
Patapsco Designs, Inc.
Prahs, Inc.
Sky Venture Corporation
Tourmalet Corp.
Ventoux International, Inc.
XS Stuff, LLC

**Non-Debtor Affiliates**
587255 Ontario Ltd.
American Computer Development Inc.
Asian Sourcing & Procurement
Services Co. Ltd.
Cicuit City Global Sourcing Limited
Early Adopter Fund, LLC
InterTAN Canada, Ltd
InterTAN France SNC
InterTAN Ontario Ltd.
PlumChoice, Inc.
Sixth Street Marketplace, LP
St. Tammany Oaks Subdivision
Association LLC
Theater Xtreme Entertainment Group,
Inc.

**Current and Former Officers and
Directors**
Appleby Corporate Services, Ltd.

Lisa Baldyga
Henry P. Barretta
Bruce H. Besanko
Alan Bossin
Brian S. Bradley
Kelly E. Breitenbecher
Ronald M. Brill
Carolyn H. Byrd
Consec Services Limited (HK)
Ron Cuthbertson
Ean Daoust
Philip J. Dunn
Ursula O. Fairbairn
Timothy C. Faries
Barbara S. Feigin
Michael E. Foss
Jacqueline Grove
James F. Hardymon
John T. Harlow
Reginald D. Hedgebeth
Lyle G. Heidemann
Eric A. Jonas, Jr.
Alan Kane
John J. Kelly
Allen B. King
Don R. Kornstein
Jeric Ma
James A. Marcum
Jeffrey A McDonald
Michelle Mosier
John Mulleady
John A. Oakey, III
Linda M. Owen
Steven P. Pappas
Danny W. Ramsey
Mikael Salovaara
Philip J. Schoonover
Marlies A. Smith
J. Patrick Spainhour
Richard D. Spurling
Jeffrey S. Stone
Gerald L. Swider
Ronald L. Turner
Elliott Wahle
Mark J. Wong
Carolyn Y. Woo

**Secured Lenders**
Ableco Finance LLC
Bank of America, N.A.
Burdale Finance Ltd.
Capital One Leverage Finance Corp.
Crystal Capital
Fifth Third Bank
General Electric Capital
Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
National City Business Credit, Inc.
PNC Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UPS Capital Corporation
Wachovia Capital Finance
Corporation
Webster (Webster Bank/Webster
Financial Corporation)
Wells Fargo Retail Finance, LLC

**Significant Merchandise Creditors**
Alliance Entertainment
Apple
Audiovox
Belkin Logistics Inc
Buena Vista Home Video
Columbia Tristar Home Video
Dlink Systems
Eastman Kodak Co
Electronic Arts
Epson America Inc
Fox Home Entertainment
Fuji Photo Film Usa
Garmin International Inc
Hewlett-Packard  US Operations
Hisense USA Corporation
Kingston Technologies
Klipsch Audio Technologies LLC
Lenovo, Inc.
Lexmark International Inc
Linksys
Logitech Inc
Magellan
Microsoft Corp
Microsoft Xbox
Mitsubishi Digital Electronics

Monster Cable Products
Nikon Inc
Olympus Corporation
Omnimount Systems Inc
Oncorp US, Inc
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Paramount Home Video
Pioneer Electronics (USA) Inc
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Stillwater Designs Inc
THQ Inc
Tomtom Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div
Universal Distribution Records
Vizio
Warner Home Video
Western Digital Technologies
Zenith Electronics Corp

**Significant Vendors**
Alpha Security Products
American Systems Corp
Andrews Electronics Inc.
Bailiwick Data Systems Inc
CDW Direct LLC
Clay Inc, Bruce
Clickit Inc
Cormark Inc
Corporate Express
Corporate Facilities Group
Cosco
DC Power Solutions
Eastern Security Corp
Eleets Logistics
Ereplacements LLC
Fire Materials Group LLC
Gorilla Nation Media
Graphic Communications
Illinois Wholesale Cash Register
Innerworkings LLC
J&F Mfg Inc
JLG Industries Inc
Nextag

NFL Enterprises LLC
North American Roofing Sys Inc
Northern Wire Productions
Orbis Corporation
Pricegrabber Com LLC
PTR Compactor & Baler Co
Quebecor World KRI
Retail Maintenance Services LLC
Samsung Electronics America
Shopping.Com Inc
Shopzilla Inc
Sony
Specificmedia Inc
Standard Electric
Streater Inc
Swiff Train Company
Trane
Tremor Media
Universal Fixtures & Display
US Signs
USIS Commercial Services Inc
Vance Baldwin
Vanguard Products Group Inc
Vector Security
Virginia Electronic Components
Wayne Dalton Corp
Weather Channel Interactive, The

## Consignment Vendors
ValuSoft (THQ, Inc.)
foneGear
INTUIT Inc.
Pinnacle Systems, Inc. (Avid Tech, Inc.)
Memorex Products, Inc.
Panasonic Consumer Electronics Company
Navarre Corporation

## 5% or Greater Shareholders
J Richard Atwood
Classic Fund Management Aktiengesellschaft
First Pacific Advisors LLC
HBK Investments LP
HBK Management LLC
HBK Master Fund
HBK Master Fund LP
HBK Partners II LP
HBK Services LLC
Robert L Rodriguez

Mark J Wattles

## Third Party Administrators
Aetna Life Insurance Company
Alliance Entertainment Corporation
American Express Travel Related Services Co
American Express Trust Co
Aon
Assurant
Avista Advantage, Inc
Beecher Carlson Insurance Services
CTSI
E-Count
Empire Blue Cross Blue Shield
Hewitt Associates LLC
International Business Machines, Inc
Jardine Lloyd Thompson Canada
Kaiser Permanente
Marsh USA, Inc.
Medco Health Solutions
Mercer Insurance Group
Mid-Atlantic Vision Service Plan, Inc.
Navigant Consulting, Inc
Specialty Risk Services
Tangoe, Inc
Triple-S Management Corporation
Vision Service Plan
Wachovia Bank, N.A.

## Significant Real Property Lessors (Landlords)
Benderson Development Co
Cardinal Capital Partners
Circuit Investors #2 Ltd
Developers Diversified Realty Corp
Forest City Ratner Co
Immobilien Verwaltung Gmbh
Inland American Retail Management
Kamin Realty Co
Kimco Relaty Corp
Lucknow Associates
New Plan Excel Realty Trust
One Liberty Properties
Red Mountain Retail Group
Saunders Hotel Group
Simon Property Group
Terra Enterprises
Vornado Realty Trust

Weingarten Realty Investors
Wilmington Trust Co

**Significant Personal Property Lessors**
Avaya Financial Services
GE Fleet Services
IBM
Hewlett Packard Company
Service Pwer
Toshiba

**Professionals**
Bingham McCutchen LLP
Ernst & Young
Goldman Sachs
Kirkland & Ellis LLP
Kurtzman Cardon Consultants LLC
LeClairRyan
McGuireWoods, LLP
Ogilvy Renault LLP
Osler, Hoskin & Hardcourt LLP
Rothschild, Inc
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering Hale, & Dorr LLP

**Litigation Parties**
Ada Alicea (class action)
Andrew Foss
Audiobahn
Betty Ibrahim (class action)
Christopher Murphy (class action)
Christopher Snow (class action)
Citigroup
Clayton P. Voegtle (class action)
Daniel Weidler (class action)
Davis (class action)
Dealtree
Donald Moxley
Federal Communications Commission
Floyd Edward Temple Jr. (class action)
Govani (class action)
Harper
Hernandez (class action)
Hilgenberg (class action)
Internal Revenue Service
Iowa AG

Jamal Booker (class action)
Kenneth Donnelly (class action)
Kobra Properties
Latia Holloman
Location 4500 Eastlake LA
Location 6946 Whitney Bank
Mad Rhino
Maria Moncayo (class action)
Massachusetts Department of Revenue
Mastercard
Michael Banker (class action)
Michael DiPirro (class action)
Micro Electronics
Millennium Retail Partners
Monster Cable
RealSource
Roberty Gentry (class action)
Securities and Exchange Commission
State of Iowa
Syntax Brillian
Tennesee Department of Revenue
Unical
Visa
William Harris (class action)

**Banks**
American Savings
Amsouth/Regions
Banco Popular
Bank of America
Bank of America/CRP Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.
Lehman Brothers
Merrill Lynch Global Institutional Advisory Division
RBC Dain Rauscher
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

**Potential Liquidators**
Gordon Bros Retail Partners, LLC
Great American Group
Hilco Merchant Resources, LLC
Hudson Capital Partners, LLC
SB Capital Group, LLC
Tiger Capital Group, LLC

## EXHIBIT 3
### Parties-in-Interest Noted for Court Disclosure

**Current and Former Officers and Directors**
Ronald L Turner

**Secured Lenders**
Bank of America, N.A.
Fifth Third Bank
General Electric Capital Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UBS Capital Corporation
Wachovia Capital Finance Corporation
Wells Fargo Retail Finance, LLC

**Significant Merchandise Creditors**
Belkin Logistics Inc
Eastman Kodak Co
Epson America Inc
Hewlett-Packard US Operations
Lexmark International Inc
Linksys
Microsoft Corp
Microsoft Xbox
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div

**Significant Vendors**
American Express Travel Related Services Co
Corporate Express
Innerworkings LLC
Kaiser Permanente
Magellan*
Medco
Samsung Electronics America
Sony

**Significant Real Property Lessors**
Developers Diversified Realty Corp
Kimco Realty Corp
New Plan Excel Realty Trust
Vornado Realty Trust

**Significant Personal Property Lessors**
Hewlett Packard Company
Toshiba

**Professionals**
Bingham McCutcheon LLP
Ernst & Young LLP
Kirkland & Ellis LLP
LeClair Ryan
McGuire Woods
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering, Hale & Dorr LLP

**Third Party Administrators**
Aon
Assurant
International Business Machines, Inc.
Jardine Lloyd Thompson Canada
Navigant Consulting
Triple-S Management Corporation

**Litigation Parties**
Citigroup
Internal Revenue Service
Keystone Automotive
Mastercard
Securities & Exchange Commission
Syntax Brillian*
Visa

**Banks**
Banco Popular
Bank of America
Bank of America/Crp Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.

Lehman Brothers
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

*Ethical walls have been
established between these parties-
in-interest and FTI personnel
working on this engagement as
discussed in the affidavit

**EXHIBIT 4**
List of Invoices and Payments

| Invoice Date | Payment Date | Description | Fees | | Expenses | | Total Amount |
|---|---|---|---|---|---|---|---|
| 8/28/08 | 9/9/08 | Invoice | $ | 76,365 | $ | 6,900 | $ | 83,265 |
| 8/31/08 | 9/17/08 | Invoice | | 95,700 | | 8,600 | | 104,300 |
| 9/12/08 | 9/17/08 | Invoice | | 130,195 | | 8,600 | | 138,795 |
| 9/18/08 | 9/23/08 | Invoice | | 149,335 | | 10,361 | | 159,696 |
| 9/26/08 | 10/2/08 | Invoice | | 162,965 | | 7,250 | | 170,215 |
| 9/30/08 | 10/8/08 | Invoice | | 183,378 | | 7,250 | | 190,628 |
| 10/9/08 | 10/22/08 | Invoice | | 173,895 | | 7,250 | | 181,145 |
| 10/17/08 | 10/27/08 | Invoice | | 187,235 | | 7,250 | | 194,485 |
| 10/23/08 | 10/30/08 | Invoice | | 262,667 | | 10,500 | | 273,167 |
| 10/28/08 | 11/4/08 | Invoice | | 263,347 | | 12,750 | | 276,097 |
| 11/5/08 | 11/7/08 | Invoice | | 334,871 | | 35,623 | | 370,494 |
| 11/5/08 | 11/7/08 | Invoice | | 316,537 | | 20,100 | | 336,637 |
| | | **Total** | $ | **2,336,490** | $ | **142,434** | $ | **2,478,924** |
| **Cash on Account:** | | | | | | | | |
| 8/27/08 | 9/9/08 | Cash on Account | $ | 100,000 | $ | - | $ | 100,000 |
| 8/27/08 | 9/22/08 | Cash on Account | | 100,000 | | - | | 100,000 |
| 10/31/08 | 11/5/08 | Cash on Account | | 550,000 | | - | | 550,000 |
| | | **Total** | $ | **750,000** | $ | **-** | $ | **750,000** |
| | | **Total** | $ | **3,086,490** | $ | **142,434** | $ | **3,228,924** |

631574-Chicago Server 1A - MSW

Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

             - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - X
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
327(a), 328 AND 1107 AND BANKRUPTCY RULE 2014(a),
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[1] of

the Debtors for an order, pursuant to Bankruptcy Code

sections 105(a), 327(a), 328 and 1107, authorizing them

---

[1]    Capitalized terms not otherwise defined herein shall have the
       meanings ascribed to such terms in the Application.

to retain FTI Consulting, Inc. as financial advisors,
effective as of the Petition Date; and the Court having
reviewed the Application and the Duffy Affidavit in
Support of the Application (the "Duffy Affidavit"); and
due and adequate notice of the Application having been
given; and it appearing that no other notice need be
given; and it appearing that FTI Consulting, Inc.
neither holds nor represents any interest adverse to the
Debtors' estates; and it appearing that FTI Consulting,
Inc. is "disinterested," as that term is defined in
Bankruptcy Code section 101(14); and it appearing that
the relief requested in the Application is in the best
interest of the Debtors, their estates and their
creditors; after due deliberation thereon and sufficient
cause appearing therefore, it is hereby

       **ORDERED, ADJUDGED AND DECREED that:**

    1.    The Application is GRANTED.

    2.    In accordance with Bankruptcy Code
sections 327(a) and 328, the Debtors are authorized to
employ and retain FTI Consulting, Inc. effective as of
the Petition Date as their financial advisors on the

terms set forth in the Application and the Engagement
Letters.

3.     The Engagement Letters are hereby
approved and, to the extent not inconsistent with this
Order, shall govern the Debtors' and FTI Consulting,
Inc.'s respective rights and obligations.

4.     FTI Consulting, Inc. shall be compensated
in accordance with the Engagement Letters, procedures
set forth in Bankruptcy Code sections 330 and 331 and
such Bankruptcy and Local Rules as may then be
applicable, from time to time, and such procedures as
may be fixed by order of this Court; provided, however,
any and all "Completion Fee" and/or "Financing Fee" (as
described in the Engagement Letters) that may become due
and payable to FTI Consulting, Inc. during these chapter
11 cases are hereby approved under Bankruptcy Code
section 328(a) and shall only be subject to review
thereunder.

5.     FTI Consulting, Inc. is authorized to
apply the amounts presently held as On-Account Cash to
pay any fees, charges, and disbursements relating to
services rendered to the Debtors prior to the Petition

3

Date that remain unpaid as of such date (the "Final

Prepetition Billed Amount").  Any amount of the On-

Account Cash remaining after such payment of the Final

Prepetition Billed Amount may be held until the

conclusion of the Debtors' cases and shall be applied by

FTI Consulting, Inc. against its final fee application.

6.   The relief granted herein shall be

binding upon any chapter 11 trustee appointed in these

chapter 11 cases, or upon any chapter 7 trustee

appointed in the event of a subsequent conversion of

these chapter 11 cases to cases under chapter 7.

7.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

8.   This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
        **[__]**, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
        hereby certify that the foregoing proposed order
has been endorsed by or served upon all necessary
parties.


                        /s/ Douglas M. Foley


5

631570-Chicago Server 1A - MSW