Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - -  x
In Re:                       :    Chapter 11
                             :
Circuit City Stores, Inc., et :   Case No. 08-35653 (KRH)
al.,                         :
          Debtors.      x    x    Jointly Administered
- - - - - - - - - - - - - -  x
Circuit City Stores, Inc.,   :
                             :
          Plaintiff,         :
                             :
     v.                      :    Adv. Pro. No.: 09-03232
                             :
Active Media Services, Inc., :
          Defendant.         :    **Obj. Deadline: September 29,**
- - - - - - - - - - - - - -  :    **2010 at 5:00 p.m. (Eastern)**
                             x

### NOTICE OF PROPOSED SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE DEBTORS AND ACTIVE MEDIA SERVICES, INC. RESOLVING ADVERSARY PROCEEDING 09-03232 <u>AND RESOLVING CLAIM NO. 3895</u>

        PLEASE TAKE NOTICE that, on August 10, 2009, the
United States Bankruptcy Court for the Eastern District of
Virginia (the "Bankruptcy Court") entered the Order
Pursuant To 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P.
2002, 9006, and 9019 Authorizing the Establishment of
Procedures to Settle Certain Pre-Petition and Post-Petition

Claims and Causes of Action Without Further Court Approval
(the "Order") (Docket No. 4401).[1]  A copy of the Order
(without exhibits) is annexed as <u>Exhibit 1</u>.

PLEASE TAKE FURTHER NOTICE that, pursuant to the
Order, the above-captioned debtors and debtors in
possession (collectively, the "Debtors")[2] are authorized to
negotiate and enter into stipulation and settlement
agreements with third parties, subject to the procedures
set forth in the Order and outlined herein.

PLEASE TAKE FURTHER NOTICE that, at this time,
the Debtors have entered into a settlement agreement and
stipulation (the "Settlement") with Active Media Services,
Inc. (the "Claimant"), a copy of which is annexed as
<u>Exhibit 2</u>.

### SUMMARY OF SETTLEMENT TERMS[3]

PLEASE TAKE FURTHER NOTICE that, in accordance
with paragraph 10(b) of the Order, the material terms of
the Settlement are as follows:

---

[1]   Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Order or the Settlement
Agreement.

[2]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[3]   This section of the notice constitutes a summary of the material
terms of the Settlement and is being provided for convenience
only and should not be relied upon in any way.  All parties are
strongly encouraged to review the Settlement in its entirety.  In
the event there is a conflict between the notice and the
Settlement, the Settlement shall control in all respects.

(i)    The Settlement is a Tier II Settlement.

(ii)    The Claimant will wire to the Debtors the sum of $3,100,000.00.

(iii)    The Debtors may assign the unused portion of the Trade Credits in the amount of $7,025,876.909 to any assignee subject to Claimant's consent, which consent will not be unreasonably withheld.

(iv)    Claim No. 3895 is hereby disallowed in its entirety for all purposes in these bankruptcy cases.

(v)    Any and all objections to confirmation of the Plan, if any, are hereby withdrawn with prejudice.

(vi)    On the Effective Date, the Adversary Proceeding shall be dismissed with prejudice and without costs.

(vii)    Any and all contracts by and between the Parties not previously terminated or rejected shall be deemed rejected as of the Effective Date.

(viii)    The Settlement resolves all matters of dispute or potential dispute arising out of claims related to or asserted in the Adversary Proceeding and any other claims by and between the Parties.

(ix)    The Debtors shall be deemed to have generally released Claimant and its affiliates from any and all actions relating to events occurring before the Effective Date, including claims relating to the subject matter of the Adversary Proceeding or Claim 3898.

(x)    The Claimant shall be deemed to have generally released the Debtors and its affiliates from any and all actions relating

3

to events occurring before the Effective Date, including claims relating to the subject matter of the Adversary Proceeding or Claim 3898.

(xi)    The Parties acknowledge that the Settlement does not release or otherwise affect any actual claims or causes of action asserted in or relating to the MDL Proceeding that either the Debtors or the Claimant may have against named parties in the MDL Proceeding.

(xii)    The Settlement is not an admission by the Parties of any allegations contained in Claim 3895 or the Adversary Proceeding.

**TIME AND PLACE FOR FILING OBJECTIONS OR REQUESTING ADDITIONAL INFORMATION OR TIME TO CONSIDER THE SETTLEMENT**

PLEASE TAKE FURTHER NOTICE that, in accordance with paragraph 10(c) of the Order, any Notice Party may object (each an "Objection") to or request additional time or information (each a "Request") to evaluate the Settlement.

PLEASE TAKE FURTHER NOTICE that all Objections and Requests must be in writing and received by counsel to the Debtors and counsel to the Official Committee of Unsecured Creditors (see information below) by no later than **September 29, 2010 at 5:00 p.m. (Eastern)** (the "Objection Deadline").  Each Objection or Request must be served on (i) the attorneys for the Debtors, (a) Skadden, Arps, Slate, Meagher & Flom, LLP, One Rodney Square, P.O. Box 636, Wilmington, DE  19899, Attn: Gregg M. Galardi (gregg.galardi@skadden.com) and Ian S. Fredericks (ian.fredericks@skadden.com) and (b) McGuireWoods LLP, One James Center, 901 E. Cary Street, Richmond, VA  23219, Attn: Douglas M. Foley (dfoley@mcguirewoods.com) and Daniel F. Blanks (dblanks@mcguirewoods.com), and (ii)(a) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100, Attn: Jeff Pomerantz (jpomerantz@pszjlaw.com) and (b) 780 Third Avenue, 36th Floor, New York, NY 10017-2024, Attn: Robert Feinstein (rfeinstein@pszjlaw.com).

PLEASE TAKE FURTHER NOTICE that if you object to the Settlement and you do not want the Debtors to proceed with Settlement or you want the Court to consider your views concerning such Settlement, you or you attorney must also:

file in writing with the Court, Clerk of Court, United States Bankruptcy Court, 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, or electronically (www.vaeb.uscourts.gov), a written Objection pursuant to Local Bankruptcy Rule 9013-1(H). If you mail your Objection to the Court for filing, you must mail it early enough so the Court will **receive it on or before September 29, 2010 at 5:00 p.m. (Eastern).**

Any Objection to a Settlement must be submitted by the method described in the foregoing sentence.  Objections will be deemed filed only when actually received at the address listed above.

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 10(d) of the Order, if a Notice Party submits a Request, only such Notice Party shall have the later of (i) an additional five (5) days to object to the Settlement or (ii) in the case of a Request for additional information, three (3) days after receipt by the Notice Party of the additional information requested.  Each Notice Party may only make one Request for additional time per Settlement Agreement, unless otherwise agreed to by the Debtors in their sole discretion.

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 10(c) of the Order, if no Objection or Request is filed and served upon counsel for the Debtors and counsel for the Committee of Unsecured Creditors or counsel to the Debtors and counsel for the Committee of Unsecured Creditors do not receive a Request prior to the expiration of the Objection Deadline (as may be extended by Requests, if any), the **Debtors shall be authorized to enter into and consummate the Settlement without further order of the Court or any other action by the Debtors**.

Dated: September 15, 2010          SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia          FLOM LLP
                                   Gregg M. Galardi, Esq.
                                   Ian S. Fredericks, Esq.
                                   P.O. Box 636
                                   Wilmington, Delaware 19899-0636
                                   (302) 651-3000

                                        - and -

                                   SKADDEN, ARPS, SLATE, MEAGHER &
                                   FLOM LLP
                                   Chris L. Dickerson, Esq.
                                   155 North Wacker Drive
                                   Chicago, Illinois 60606
                                   (312) 407-0700

                                        - and -

                                   MCGUIREWOODS LLP

                                   _____/s/ Douglas M. Foley_____
                                   Douglas M. Foley (VSB No. 34364)
                                   Sarah B. Boehm (VSB No. 45201)
                                   One James Center
                                   901 E. Cary Street
                                   Richmond, Virginia 23219
                                   (804) 775-1000

                                   Counsel for Debtors and Debtors
                                   in Possession

**EXHIBIT 1**

**(Order w/out Exhibit(s))**

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   1Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 105 AND 363, AND FED. R. BANKR.
P. 2002, 9006, AND 9019 AUTHORIZING THE ESTABLISHMENT OF
PROCEDURES TO SETTLE CERTAIN PRE-PETITION AND POST-
PETITION CLAIMS AND CAUSES OF ACTION WITHOUT FURTHER COURT
APPROVAL**

        Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to sections 105 and 363

---

[1]   Each capitalized term not otherwise defined herein shall have the
      meaning ascribed to it in the Motion.

of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 9006 and 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for entry of an order authorizing the establishment of

procedures to settle certain pre-petition and post-

petition claims and causes of action without further

court approval; and the Court having reviewed the

Motion; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby:

> **FOUND, DETERMINED, AND CONCLUDED that:**

1.   Based on the affidavits of service filed,
due, proper and adequate notice of the Motion has been
given in accordance with the Case Management Order and
that no other or further notice is necessary;

2.   The Notice Procedures are fair,
reasonable, and appropriate.

3.   The Settlement Procedures are fair
reasonable, and appropriate.

4.   The Notice and Settlement Procedures were
proposed in good faith.

5.    Pursuant to Bankruptcy Rule 9006, cause exists to shorten the applicable notice period in Bankruptcy Rule 2002(a)(3) with respect to each Settlement.

6.    Upon the expiration of the applicable Notice Period without an objection or upon resolution of any filed objection after the applicable Notice Period, each Settlement that complies with the Notice and Settlement Procedures shall be deemed (i) fair and reasonable and (ii) to have satisfied the standards under Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 9019.

7.    The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**ORDERED, ADJUDGED, AND DECREED that:**

8.    The Motion is GRANTED.

9.    The Debtors are authorized, but not directed, to compromise and settle Disputed Claims and Cause of Action and Receivable Claims in accordance with the Settlement Procedures.

10.   The Debtors shall provide key parties in interest with notice of each proposed Settlement.  The Notice Procedures are as follows:

(a)    The Debtors shall give written notice, by email or facsimile, if available, or overnight courier if email or facsimile are not available, of each proposed Settlement (the "Settlement Notice") to (i) the United States Trustee, (ii) counsel for the Committee of Unsecured Creditors, (iii) any party to the Settlement, and (iv) the Core Group and 2002 List (collectively, the "Notice Parties").

(b)    The Settlement Notice (or the Settlement Agreement) shall specify (i) the identity of the other party to the Settlement, (ii) a summary of the dispute with such other party, including a statement of the Debtors' reasonable estimate of the Settlement Claim amount and the basis for the controversy, (iii) an explanation of why the Settlement of such Settlement Claim is favorable to the Debtors, their estates, and their creditors, and (iv) a copy of the proposed settlement agreement ("Settlement Agreement").

(c)    The Notice Parties may object to or request additional time to evaluate the proposed Settlement in writing by no later than 5:00 p.m. (ET) (i) five (5) days for both Tier I Disputed Claims and Tier I Cause of Action and Receivable Claims or (ii) ten (10) days for both Tier II Disputed Claims and Tier II Cause of Action and Receivable Claims (each an individual "Notice Period") and serve such objection or request on counsel to the Debtors and counsel for the Creditors' Committee on or before the

expiration of the applicable Notice.  If the
Debtors are compromising more than one
Disputed Claim and/or Cause of Action and
Receivable Claim, the Tier II Notice Period
shall apply to such Settlement.  If no
objection or written request is filed and
served upon counsel for the Debtors and
counsel for the Creditors' Committee or
counsel to the Debtors does not receive a
written request for additional information
and/or additional time prior to the
expiration of the applicable Notice Period,
the Debtors shall be authorized to enter
into and consummate the Settlement Agreement
without further order of the Court or any
other action by the Debtors.

(d)    If a Notice Party provides a written
request to counsel for the Debtors for
additional information or time to evaluate
the proposed Settlement, only such Notice
Party shall have the later of (i) an
additional five (5) days to object to the
proposed Settlement or (ii) in the case of a
request for additional information, three
days after receipt by the Notice Party of
the additional information requested.  Each
Notice Party may only make one request for
additional time per Settlement Agreement,
unless otherwise agreed to by the Debtors in
their sole discretion.

(e)    If a Notice Party objects to the
proposed Settlement within the defined
Notice Period for that particular Tier of
Disputed Claim or Cause of Action and
Receivable Claim, (or the additional period
in the case of a Notice Party that has
timely requested additional time or
information to evaluate the proposed
Settlement) (the "Objection Deadline") and
the Debtors and such objecting Notice Party
are unable to reach a consensual resolution,

the Debtors will not take any further action
to consummate the proposed settlement
without first obtaining Court approval for
that specific Settlement.  The Debtors are
authorized to schedule the Settlement for a
hearing at the next scheduled omnibus
hearing following the Objection Deadline (or
any subsequent hearing) without filing a
separate motion or other pleading.

(f)   If the Objection Deadline has passed
and no objection has been filed with the
Court or request for additional time or
information has been received by the
Debtors, the Debtors are authorized, but not
directed, to file a "Certificate of No
Objection" with the Court; provided,
further, that each such Certificate shall
set forth a statement that no objection was
filed or received (or if any objection was
filed or received, such objection has been
resolved) and no request for additional time
or information was received or, if such
request was received, the additional period
of review has expired.

(g)   An objection will be considered
properly filed and served only if it is
filed with the Court, and actually received
by the following parties on or before the
Objection Deadline: (i) Clerk of the
Bankruptcy Court, United States Bankruptcy
Court, 701 East Broad Street – Room 4000,
Richmond, VA  23219, (ii) the attorneys for
the Debtors, (a) Skadden, Arps, Slate,
Meagher & Flom, LLP, One Rodney Square, P.O.
Box 636, Wilmington, DE  19899, Attn: Gregg
M. Galardi (gregg.galardi@skadden.com) and
Ian S. Fredericks
(ian.fredericks@skadden.com) and (b)
McGuireWoods LLP, One James Center, 901 E.
Cary Street, Richmond, VA  23219, Attn:
Douglas M. Foley (dfoley@mcguirewoods.com)

and Daniel F. Blanks
(dblanks@mcguirewoods.com), and (iii)(a)
Pachulski Stang Ziehl & Jones LLP, 10100
Santa Monica Blvd., 11th Floor, Los Angeles,
California 90067-4100, Attn: Jeff Pomerantz
(jpomerantz@pszjlaw.com) and (b) 780 Third
Avenue, 36th Floor, New York, NY 10017-2024,
Attn: Robert Feinstein
(rfeinstein@pszjlaw.com).

(h)    All time periods set forth in the
Notice Procedures shall be calculated in
accordance with Bankruptcy Rule 9006.

11.    Subject to the Notice Procedures, the

Debtors are authorized to compromise and settle Disputed

Claims as follows:

(a)    Tier I With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
of an agreed upon priority or administrative
expense claim, as applicable, in an amount
not to exceed $500,000.

(b)    Tier II With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
(priority or non-priority, as the case may

be) or administrative expense claim, as
applicable, in an amount greater than
$500,000.

12.   Subject to the Notice Procedures, the

Debtors are authorized to compromise and settle Cause of

Action and Receivable Claims as follows:

(a)    Tier I With respect to pre- and post-
petition Cause of Action and Receivable
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with third parties that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Cause of
Action and Receivable Claims, compromise or
settle a Cause of Action and Receivable
Claim resulting in a cash payment to the
Debtors' estates of a value (i) equal to or
greater than seventy-five percent (75%) of
the Debtors' original reasonable estimate of
the Cause of Action and Receivable Claim
amount and (ii) equal to or less than
$1,000,000.

(b)    Tier II With respect to pre- and
post-petition Cause of Action and Receivable
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with third parties that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Cause of
Action and Receivable Claims, compromise or
settle a Cause of Action and Receivable
Claim resulting in a cash payment to the
Debtors' estates of a value equal to (i)
more than $1,000,000 or (ii) less than

seventy-five percent (75%) of the Debtors'
original reasonable estimate of the Cause of
Action and Receivable Claim amount.

13.   To memorialize the Settlements, the
Debtors are authorized in their sole discretion, but not
directed, to enter into Settlement Agreements
substantially in the form of Exhibit A attached hereto;
provided, further, that the material terms of each
Settlement Agreement may vary depending upon the
specific facts and circumstances of each Settlement and
nothing herein or therein shall be construed as
impairing the Debtors' ability to tailor the form of the
Settlement Agreement to each specific Settlement.

14.   The Debtors are authorized, but not
directed, to resolve all of the Disputed Claims and
Cause of Action and Receivable Claims of a single party
in a single Settlement Agreement.

15.   The Debtors shall provide written notice
to Kurtzman Carson Consultants LLC ("KCC"), the Debtors'
authorized claims and noticing agent, with respect to
any proof of claim settled pursuant to these Settlement
Procedures; provided, further, that, if applicable, KCC

9

is authorized and directed to amend the claims register
accordingly without further order of the Court.

16.  Following entry of this Order, unless
otherwise agreed to between the Debtors and the
Creditors' Committee, the Debtors' advisors shall
provide weekly updates concerning ongoing settlement
discussions to the Creditors' Committee's advisors.
These updates shall include, without limitation, non-
privileged information mutually agreed to among the
parties' advisors.  Once the Debtors reach an agreement
in principle with a third party, the Debtors shall share
the material terms of the Settlement with the Creditors'
Committee's advisors.  All information shared with the
Creditors' Committee's advisors shall be deemed shared
subject to the existing confidentiality agreement with
the Debtors.

17.  Assuming no objection has been filed by
the applicable Objection Deadline, immediately after the
expiration of the Notice Period (or, in the case of a
filed objection that has been resolved, upon filing of a
Certificate of No Objection) the Settlement Agreement

shall be deemed to be a final order of this Court for all purposes, including for purposes of any appeal.

18.   In the event there is an inconsistency between the Motion and this Order, this Order shall control.

19.   The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

20.    This Court retains jurisdiction to hear

and determine all matters arising from or related to the

Motion, this Order or any Settlement.

Dated:  Richmond, Virginia
        _____, 2009

        _____
        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

12

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

      Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                                    /s/ Douglas M. Foley
                                    Douglas M. Foley

**EXHIBIT 2**

**(Settlement)**

\17958229.1

Douglas M. Foley (VSB No. 34364)
Bryan A. Fratkin (VSB No. 38933)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and
Debtors in Possession

```
           IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION
- - - - - - - - - - - - - - x
In Re:                       :   Chapter 11
                             :
Circuit City Stores, Inc.,   :   Case No. 08-35653 (KRH)
et al.,                      :
             Debtors.    x       Jointly Administered
- - - - - - - - - - - - - - x
Circuit City Stores, Inc.,   :
                             :
             Plaintiff,      :
                             :
             v.              :   Adv. Pro. No.: 09-03232
                             :
Active Media Services,       :
Inc.,                        :
                             :
             Defendant.      :
- - - - - - - - - - - - - - x
```

**SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE
DEBTORS AND ACTIVE MEDIA SERVICES**

This settlement agreement and stipulation

(this "Agreement") is entered into by and among the

above-captioned debtors and debtors in possession (the

"Debtors")[1], on the one hand, and Active Media Services, Inc. ("Active" and together with the Debtors, the "Parties" and each of which is a "Party"), on the other hand.

## GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, the Debtors have continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen, Virginia 23060.

WHEREAS, on November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"); and

WHEREAS, to date, no trustee or examiner has been appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores. As of on or about March 8, 2009, the going out of business sales concluded; and

WHEREAS, on September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "First Amended Plan"). The

3

associated disclosure statement (the "Disclosure

Statement") was approved on September 24, 2009.

Confirmation of the First Amended Plan was originally

scheduled for November 23, 2009, but has been adjourned

from time to time; and

WHEREAS, on August 9, 2010, the Debtors and

the Creditors' Committee filed the Second Amended Joint

Plan of Liquidation of Circuit City Stores, Inc. and its

Affiliated Debtors and Debtors In Possession and its

Official Committee of Creditors Holding General

Unsecured Claims (the "Plan"); and

WHEREAS, the Plan provides for the liquidation

of the Debtors' remaining assets under chapter 11 of the

Bankruptcy Code and distribution of the proceeds thereof

to the Debtors' creditors; and

WHEREAS, the Debtors are authorized under the

Court's Order Under 11 U.S.C. §§ 105 and 363, and Fed. R.

Bankr. P. 2002, 9006, and 9019 Authorizing the

Establishment of Procedures to Settle Certain Pre-

Petition and Post-Petition Claims and Causes of Action

Without Further Court Approval, dated August 7, 2009

4

(Docket No. 4401, the "Settlement Procedures Order")[2] to enter into this Agreement, subject to the Notice Procedures.

### SETTLEMENT BACKGROUND

WHEREAS, Circuit City and Active engaged in business in the ordinary course prior to the Petition Date wherein Active provided the Debtors with certain advertising services; and

WHEREAS, on January 13, 2009, Active filed a proof of claim asserting a general unsecured claim in the amount of $2,129,242.12 against the Debtors for certain "media and travel services" ("Claim No. 3895"); and

WHEREAS, on December 11, 2009, the Debtors filed a complaint against Active asserting claims against Active in the aggregate amount of $19,178,522.73 (the "Adversary Proceeding");

WHEREAS, rather than proceed with litigation concerning the Adversary Proceeding and Claim No. 3895, the Parties engaged in good faith, arms' length

---

[2]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Procedures Order.

negotiations to resolve the Adversary proceeding and

Claim No. 3895 in their entirety; and

NOW THEREFORE, subject to and in accordance

with the Settlement Procedures Order, for good and

valuable consideration the receipt and sufficiency of

which is hereby acknowledged, the Parties hereby

STIPULATE AND AGREE that:

1.    **Settlement Amount.** On or before the fifth

(5) business day from the date this Agreement is deemed

a final order of the Court, Active shall wire to the

Debtors the total sum of three million one hundred

thousand dollars and zero cents ($3,100,000.00) (the

"Cash Settlement Amount") in full and complete

settlement of the Adversary Proceeding, subject to the

following paragraphs herein, including attorneys' fees

and costs, and all other matters of dispute or potential

dispute between the Parties, past and present, whether

or not known or asserted by either Party at the time of

signing this Agreement.  The date of actual receipt of

payment in full, shall be the "Effective Date."  For

purposes of this Paragraph, the Effective Date shall be

deemed to be the last date the Settlement Amount would

be deemed to be made pursuant to 11 U.S.C. § 547.  The

Settlement Amount shall be wired to the Debtors as

follows:

    Wiring Instructions:
    Account Name: Circuit City Stores, Inc.
    ABA/Routing Number: 051400549
    Account Number:2055275431509
    Bank: Wachovia Bank
    10401 Deerwood Park Blvd, Building 1
    Jacksonville, Florida 32256

    2.   **Trade Credits.**  The Debtors may assign

the unused portion of the Trade Credits (as defined in

the Adversary Proceeding) in the amount of $7,025,876.09

to any person or entity (each an "assignee"), subject to

Active's consent, which consent will not be unreasonably

withheld.  In order to effect an assignment, the Debtors,

Active and the Assignee shall sign an Assignment

Agreement in the form attached as Exhibit A and made a

part hereof (the "Assignment Agreement").  The Trade

Credits can be used only in accordance with Active's

standard terms and conditions, which are attached to the

Assignment Agreement as Schedule 1.  The expiration date

of the Trade Credits is hereby extended for three (3)

years from the date of this Agreement.

3.   **Claim No. 3895.**  Claim No. 3895 is hereby disallowed in its entirety for all purposes in these bankruptcy cases.

4.   **Plan Objection.**  Any and all objections to confirmation of the Plan, if any, are hereby withdrawn with prejudice.

5.   **Adversary Proceeding.**  On the Effective Date, the Adversary Proceeding shall be dismissed with prejudice and without costs.

6.   **Contracts.**  Any and all contracts by and between the Parties not previously terminated or rejected shall be deemed rejected as of the Effective Date.

7.   **Resolution of All Claims and Disputes.** Subject to Paragraph 10 herein, the Parties are entering into this Agreement to resolve all matters of dispute or potential dispute arising out of claims related to or asserted in the Adversary Proceeding and any other claims by and between the Parties, whether or not such claims are known or unknown to the Parties, and whether or not such claims have been asserted by the Parties. Any and all other Claims (as defined in 11 U.S.C. 101(5))

against the Debtors and/or their estates, collectively
or individually, by or on behalf of Active are hereby
irrevocably withdrawn, disallowed, and expunged in their
entirety.  Any and all other claims against Active,
collectively or individually, by or on behalf of the
Debtors and their estates are hereby irrevocably
withdrawn, released, and expunged in their entirety.

8.    **Debtors' Release.**  Subject to Paragraph
10 herein, effective on the Effective Date, the Debtors,
without the need for additional documentation or the
entry of any additional orders, except as expressly
provided in this Agreement, on behalf of themselves and
their estates, together with each of their affiliates,
parents, agents, subsidiaries, and the successors and
assigns of any of them, and any other person or entity
that claims or might claim through, on behalf of or for
the benefit of any of the foregoing (collectively, the
"Debtors Releasors"), shall be deemed to have
irrevocably and unconditionally, fully, finally and
forever waived, released, acquitted and discharged
Active, its past or present affiliates, attorneys,
directors, employees, officers, parents, agents,

9

subsidiaries, and the successors and assigns of any of
them (the "Active Releasees"), from any and all manner
of actions, causes of action, suits, costs, debts,
liabilities, obligations, dues, sums of money, accounts,
reckonings, bonds, bills, specialties, covenants,
contracts, controversies, agreements, promises,
variances, trespasses, damages, judgments, executions,
claims and demands whatsoever, of whatever kind or
nature, whether known or unknown, suspected or
unsuspected, in law or equity, which the Debtors
Releasors, or any of them, from the beginning of time
through the Effective Date, have, have had, may have or
may claim to have against any Active Releasee, including,
without limitation, any and all claims asserted in or
which could have been asserted in, or that relate to the
subject matter of, Claim No. 3895 or the Adversary
Proceeding as well as any and all claims that may have
arisen or may relate to any other events, activities, or
occurrences that have taken place or take place on or
before the Effective Date (collectively, the "Debtors'
Released Claims").  The Parties intend that this release
shall be a general release, subject only to any

exclusions set forth herein and Paragraph 10 herein, and
the inclusion of the foregoing specifically included
released matters shall not be construed as detracting
from the purposefully general nature of this release.

9.   **Active's Release.**   Subject to Paragraph
10 herein, effective on the Effective Date, Active,
without the need for additional documentation or the
entry of any additional orders, except as expressly
provided in this Agreement, on behalf of itself and each
of its affiliates, parents, agents, subsidiaries, and
the successors and assigns of any of them, and any other
person or entity that claims or might claim through, on
behalf of or for the benefit of any of the foregoing
(collectively, the "Active Releasors"), shall be deemed
to have irrevocably and unconditionally, fully, finally
and forever waived, released, acquitted and discharged
the Debtors, their past or present affiliates, attorneys,
directors, employees, officers, parents, agents
subsidiaries, and the successors and assigns of any of
them (collectively, the "Debtors Releasees"), from any
and all manner of actions, causes of action, suits,
costs, debts, liabilities, obligations, dues, sums of

11

money, accounts, reckonings, bonds, bills, specialties,
covenants, contracts, controversies, agreements,
promises, variances, trespasses, damages, judgments,
executions, claims and demands whatsoever, of whatever
kind or nature, whether known or unknown, suspected or
unsuspected, in law or equity, which the Active
Releasors, or any of them, from the beginning of time
through the Effective Date, have, have had, may have or
may claim to have against any Debtors Releasee,
including, without limitation, any and all claims
asserted in or which could have been asserted in, or
which relate to the subject matter of Claim 3895 or the
Adversary Proceeding as well as any and all claims that
may have arisen or may relate to any other events,
activities, or occurrences that have taken place or take
place on or before the Effective Date (collectively, the
"Active Released Claims").  The Parties intend that this
release shall be a general release, subject only to any
exclusions set forth herein and Paragraph 10 herein, and
the inclusion of the foregoing specifically included
released matters shall not be construed as detracting
from the purposefully general nature of this release.

12

10.   **MDL Proceeding.**  Notwithstanding anything
to the contrary in this Agreement, Active and the
Debtors specifically acknowledge and agree that this
Agreement is not intended to, and does not, release or
otherwise affect in any way any actual claims or causes
of action (or potential claims or causes of action
similar in nature or type to such actual claims or
causes of action) now or hereinafter asserted in or
relating to the multi-district litigation captioned In
re: TFT-LCD (Flat Panel) Antitrust Litigation, MDL No.
1827 (N.D. Cal.) and the actions consolidated therein
(the "MDL Proceeding") that (i) the Debtors, on behalf
of themselves, and each on behalf of their respective
estates, successors, and assigns, have or may have
against the now named or hereinafter named parties in
the MDL Proceeding and (ii) Active and its subsidiaries
and affiliates and each on behalf of their respective
successors, and assigns, have or may have against the
now named or hereinafter named parties in the MDL
Proceeding.

11.   **No Admissions.**  This Agreement is not and
shall not in any way be construed as an admission by the

13

Parties of any allegations contained in Claim 3895 or the Adversary Proceeding.

12. **Expenses.**  The Parties shall bear their own costs, expenses and attorneys' fees incurred in connection with the Adversary Proceeding, the Debtors Released Claims, the Active Released Claims and this Agreement.  In the event of any dispute in connection with the enforcement of this Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by this Court.

13. **No Other Obligations.**  The Parties agree that the Parties have no obligation to one another other than as set forth herein.

14. **Severability.**  The Parties agree that if any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Agreement.  The legality, validity and enforceability of the remaining provisions shall not be

14

affected by a provision of this Agreement that is
illegal, invalid or unenforceable.

     15. **Miscellaneous.**

     (a) Nothing contained herein shall be
deemed an admission of liability on the part of the
Debtors or Active.

     (b) Neither this Agreement, nor any
statement made or action taken in connection with the
negotiation of this Agreement, shall be offered or
received in evidence or in any way referred to in any
legal action or administrative proceeding among or
between the parties hereto, other than as may be
necessary (i) to obtain approval of and to enforce this
Agreement (including the mutual releases contained
herein) or (ii) to seek damages or injunctive relief in
connection therewith.

     (c) Each of the parties hereto shall
execute and deliver any and all additional papers,
documents and other assurances, and shall do any and all
acts and things reasonably necessary or appropriate in
conjunction with the performance of their respective
obligations hereunder.

15

(d) No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(e) This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any choice of law provisions.

(f) This Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed and so delivered, shall constitute a single original.

(g) The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Agreement.

(h) Each person or entity who executes this Agreement on behalf of another person or entity

16

represents and warrants that he, she, or it is duly
authorized to execute this Agreement on behalf of such
person or entity, has the requisite authority to bind
such person or entity, and such person or entity has
full knowledge of and has consented to this Agreement.
The representations and warranties set forth in this
Paragraph shall survive execution of this Agreement.

(i) This Agreement and all of its terms
shall be effective upon the later of (i) execution by
both Parties and (ii) the expiration of the applicable
Notice Period (the "Effective Date").

(j) This Agreement shall not be modified,
altered, amended or vacated without the written consent
of all parties hereto or order of the Bankruptcy Court.

(k) This Agreement shall inure to the
benefit of and be binding upon the successors and
assigns of the Parties hereto, including any Chapter 7
trustee or the Liquidating Trustee under the Plan.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]


17

IN WITNESS WHEREOF, this Agreement is hereby

executed as of September 14, 2010.

ACCEPTED AND AGREED TO BY:

CIRCUIT CITY STORES, INC., et al.

By:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley          __
Douglas M. Foley (VSB No. 34364)
Bryan A. Fratkin (VSB No. 38933)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Attorneys for Circuit City Stores, Inc.,
et al., Debtors and Debtors in Possession

ACTIVE MEDIA SERVICES

By:

__/s/ James E. Anklam_____
James E. Anklam (VSB No. 27976)
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1700

Harvey A. Strickon [admitted pro hac vice]
Michael M. Bruso [admitted pro hac vice]
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
75 East 55th Street
New York, NY  10022
(212) 318-6000

Attorney for Active Media Services, Inc.


\16444299.1



ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (the "Assignment Agreement") is made as of _____ and is by and among ACTIVE MEDIA SERVICES, INC. D/B/A ACTIVE INTERNATIONAL ("ACTIVE"); CIRCUIT CITY STORES, INC. ("ASSIGNOR"); and _____ ("ASSIGNEE").

RECITALS

WHEREAS, ASSIGNOR possesses certain trade credit issued by ACTIVE (the "Trade Credit"); and

WHEREAS, ASSIGNOR wishes to assign _____ Dollars ($_____) of the Trade Credit (the "Assigned Trade Credit") to ASSIGNEE; and

WHEREAS, ASSIGNEE wishes to accept the assignment of the Assigned Trade Credit, subject to the terms and conditions set forth in this Assignment Agreement.

WHEREAS, ACTIVE is willing to consent to the assignment of the Assigned Trade Credit; provided that ASSIGNEE agrees to use the Assigned Trade Credit solely in accordance with the terms and conditions set forth in this Assignment Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and other good and valuable consideration hereinafter contained, the parties hereto agree as follows:

1.      ASSIGNOR hereby assigns, and ASSIGNEE hereby accepts the assignment of, the Assigned Trade Credit in the amount of _____ Dollars ($_____), which assignment shall reduce ASSIGNOR's Trade Credit balance by a like amount.

2.      ASSIGNEE hereby agrees to use the Assigned Trade Credit with ACTIVE solely in accordance with the terms and conditions set forth in the Trade Credit Usage Agreement attached hereto as Schedule 1 and made a part hereof, which shall be executed by ASSIGNEE and ACTIVE (the "Trade Credit Usage Agreement").

3.      ACTIVE hereby consents to the assignment of the Assigned Trade Credit to ASSIGNEE in accordance with the terms and conditions set forth in this Assignment Agreement.

4.      The parties hereto agree that upon receipt of this Assignment Agreement and the Trade Credit Usage Agreement fully executed by all parties, ACTIVE shall establish a trade credit account in the amount of _____ Dollars ($_____) for ASSIGNEE.

**ACTIVE MEDIA SERVICES, INC.**
**AN INTERNATIONAL TRADING COMPANY**


      IN WITNESS WHEREOF, the parties have duly executed this Assignment Agreement as of the date first set out above.

                        CIRCUIT CITY STORES, INC.

                        By: _____
                            Name:
                            Title:


                        _____


                        By: _____
                            Name:
                            Title:


ACCEPTED AND APPROVED:

ACTIVE MEDIA SERVICES, INC.
D/B/A ACTIVE INTERNATIONAL

By: _____
      Name:
      Title:

2

**ACTIVE MEDIA SERVICES, INC.**
**AN INTERNATIONAL TRADING COMPANY**

SCHEDULE 1

TRADE CREDIT USAGE AGREEMENT

THIS TRADE CREDIT USAGE AGREEMENT (the "Agreement") dated as of _____ is by and between ACTIVE MEDIA SERVICES, INC. D/B/A ACTIVE INTERNATIONAL ("ACTIVE") and _____ ("ASSIGNEE").

1.    General Terms. The trade credit in the amount of _____ Dollars ($_____) assigned by Circuit City Stores, Inc. to ASSIGNEE (the "Trade Credit") with the consent of ACTIVE pursuant to the Assignment Agreement of even date herewith (the "Assignment Agreement") shall be utilized solely in accordance with the terms and conditions of this Agreement in connection with the purchase by ASSIGNEE of media, goods and/or services reasonably available to ACTIVE as a trading company and shall not be redeemable for cash.  The Trade Credit shall be valid for use until _____, 2013 (the "Term").  Thereafter, the Trade Credit shall expire and ACTIVE shall have no further obligation to ASSIGNEE with respect to the Trade Credit hereunder. ASSIGNEE acknowledges that ACTIVE has made no and expressly disclaims all representations or warranties concerning ASSIGNEE's ability to utilize the Trade Credit.

2.    Purchase of Media.

2.1.    In order to utilize the Trade Credit in connection with the purchase of media, ASSIGNEE shall submit its media buying plan or plans (the "Media Buying Plan") to ACTIVE prior to submitting the Media Buying Plan to any other party for placement or purchase and within the following lead times. In the case of broadcast and/or electronic media, ASSIGNEE shall submit to ACTIVE the Media Buying Plan no less than ninety (90) days prior to the first date of the quarter that the media is anticipated to run.  In the case of print media, ASSIGNEE shall submit to ACTIVE the Media Buying Plan at least four (4) weeks prior to the respective closing dates of the publications requested.  In the case of outdoor media, ASSIGNEE shall submit to ACTIVE the Media Buying Plan at least ninety (90) days prior to the flight date of the outdoor media requested.  In the case of digital media, ASSIGNEE shall submit to ACTIVE a buying plan or plans at least thirty (30) days prior to the start date of the online campaign;

2.2.    ACTIVE shall review ASSIGNEE's submitted Media Buying Plan and shall advise ASSIGNEE as to whether ACTIVE is able to provide ASSIGNEE with the requested media.  In each instance where ACTIVE advises ASSIGNEE that ACTIVE is able to provide ASSIGNEE with the requested media, ASSIGNEE shall authorize ACTIVE to purchase the requested media by promptly executing purchasing schedules acceptable to both ACTIVE and ASSIGNEE.  The purchasing schedules shall contain the applicable "Trade Credit Requirement" and "Cash Payment Requirement" (as such terms are defined in Section 4.1).  Thereafter, ACTIVE shall purchase the requested media in accordance with the approved purchasing schedules;

2.3.    Upon request, ASSIGNEE shall supply ACTIVE with copies of all media buys purchased by ASSIGNEE during the previous year with copies of original media purchase plans, station affidavits and other applicable proof of performance;

2.4.    The cost to ASSIGNEE of media shall be net and mutually agreed to by ACTIVE and ASSIGNEE.  All placements, insertions and/or postings of the media shall be subject to availability, market conditions and each media provider's rules on trade eligibility, which shall be at the discretion of the provider. In addition, ASSIGNEE acknowledges that all media purchased by ASSIGNEE through ACTIVE hereunder shall be subject to each media provider's standard terms and conditions and ASSIGNEE agrees to be bound by such terms and conditions. Placement and billing of media by ACTIVE

3

**ACTIVE MEDIA SERVICES, INC.**
**AN INTERNATIONAL TRADING COMPANY**

will be on a non-disclosed cost basis. ACTIVE shall provide ASSIGNEE with proof of performance consisting of copies of invoices/affidavits edited to protect ACTIVE's non-disclosed status. ACTIVE shall not be responsible for trafficking of media, which shall be the sole responsibility of ASSIGNEE (or ASSIGNEE's advertising agency);

2.5.    ASSIGNEE agrees to cause its in-house advertising department, and shall require its outside advertising agency, to fully cooperate with ACTIVE in connection with the purchase of media by ASSIGNEE hereunder, including, without limitation, fully supporting and taking no action to interfere with ACTIVE's efforts to secure media placements hereunder on a trade and non-disclosed basis;

2.6.    ASSIGNEE represents and warrants that each and every element of any commercial advertising campaign delivered by ASSIGNEE or ASSIGNEE's advertising agency directly or indirectly to ACTIVE and/or any media provider pursuant to this Agreement, including, without limitation, content and placement, does not and shall not infringe upon or violate the rights of any third party, including, without limiting the generality of the foregoing, any copyrights, trademarks, servicemarks, literary, music performance and synchronization rights, or other intellectual property rights, any rights of privacy and publicity, any private, civil or property rights, or any other applicable law, including, without limitation, the law of unfair trade practices..

3.    Purchase of Other Goods and/or Services.

3.1.    In order to utilize the Trade Credit in connection with the purchase of goods and/or services (other than media), ASSIGNEE shall submit a buying plan or plans reasonably in advance of the requested purchase.  ACTIVE shall review ASSIGNEE's submitted buying plan or plans and shall advise ASSIGNEE as to whether ACTIVE can provide ASSIGNEE with the requested goods and/or services and as to the applicable Trade Credit Requirement and Cash Payment Requirement. In each instance where ACTIVE advises ASSIGNEE that it is able to provide ASSIGNEE with the requested goods and/or services at ASSIGNEE's benchmark costs and specifications, ASSIGNEE shall authorize ACTIVE to purchase the requested goods and/or services by promptly executing purchasing authorizations acceptable to both ACTIVE and ASSIGNEE, which shall contain the Trade Credit Requirement and the Cash Payment Requirement. Thereafter, ACTIVE shall purchase the goods and/or services in accordance with the approved purchasing authorization.

3.2.    In the case of goods and/or services (other than media), which are subject to trade availability to ACTIVE: (i) a benchmark for the costs and specifications of such goods and/or services must be established by ASSIGNEE in arms length negotiations with a vendor or supplier and as agreed to by ACTIVE; (ii) such costs and specifications must be verifiable by ACTIVE; and (iii) ASSIGNEE shall provide ACTIVE with invoices or contracts evidencing such costs and specifications, or if no such invoices or contracts exist, with proposals ASSIGNEE has received from vendors or suppliers evidencing such costs and specifications.

4.    Payment of Active's Invoices.

4.1    ACTIVE shall advise ASSIGNEE of the portion of its invoices for media, goods and/or services purchased by ASSIGNEE hereunder that ACTIVE will require to be paid by application of Trade Credit in order to effectuate a particular purchasing schedule (the "Trade Credit Requirement"). The remaining portion of ACTIVE's invoices will be paid by ASSIGNEE in cash (the "Cash Payment Requirement").  In the event there is insufficient Trade Credit to pay the Trade Credit Requirement of any of ACTIVE's invoices, ASSIGNEE shall pay cash to the extent of such insufficiency.  Payment terms for ACTIVE's invoices will be in accordance with ACTIVE's standard credit policies and procedures.

4.2    ACTIVE shall place ASSIGNEE's media on an "in care of" basis.  This means

**ACTIVE MEDIA SERVICES, INC.**
**AN INTERNATIONAL TRADING COMPANY**

that the payment obligation for all placements, insertions and/or postings of media shall remain the obligation of ASSIGNEE until ACTIVE has been paid in full as required under this Agreement. Thereafter, ACTIVE will be responsible to pay the applicable media vendor.

4.3    In the event ASSIGNEE utilizes the services of an agent in connection with the payment of ACTIVE's invoices, then ASSIGNEE shall be solely responsible for the performance of such agent and shall remain liable to ACTIVE pursuant to the terms of this Agreement until such agent has fully performed ASSIGNEE's payment obligations hereunder.  ACTIVE shall have no obligation to pay any agency commission, service or brokers commissions, sales and use taxes, import/export charges or demurrage charges, freight or delivery charges or any other similar "add on" impositions.

5.    Indemnification.

5.1    Subject to the limitation set out in Section 5.2 below, ACTIVE, on the one hand, and ASSIGNEE on the other, (each an "Indemnitor") each indemnifies and agrees to defend and hold harmless the other, its successors, assigns, shareholders, officers, directors, agents, representatives, employees and/or each of them (collectively referred to herein as the "Indemnified Party") from and against any and all claims, liabilities, costs, expenses, suits, losses, damages, recoveries (including, without limitation, reasonable attorney's fees and disbursements), including interest, incurred by the Indemnified Party in any action or proceeding between Indemnitor and the Indemnified Party  (but only if the Indemnified Party is the prevailing party) or between the Indemnified Party and any third party or otherwise, arising out of any breach or alleged breach of any warranty, representation or agreement made by the Indemnitor.  The indemnification obligations contained herein shall survive the expiration or termination of this Agreement.

5.2    Neither party shall be liable to the other party for any consequential, special or punitive damages of any kind or nature, regardless of whether either party has warned or been warned of the possibility of any such loss or damage.

6.    Miscellaneous.

6.1    This Agreement will not be effective to bind either party until and unless executed and delivered by both parties.  Subject to the foregoing sentence, this Agreement shall be binding upon the successors of both ASSIGNEE and ACTIVE.

6.2    The undersigned hereby warrant that they have the express and unqualified authority to bind their respective companies to this Agreement.

6.3    This Agreement and the Assignment Agreement contain the entire understanding between the parties and supersede all prior and contemporaneous agreements and understandings, written or oral, with respect to the subject matter herein and no representations, warranties, inducements, promises or agreements, oral or otherwise, by or between the parties not contained herein or incorporated herein by reference shall be of any force or effect. This Agreement may not be modified except by a writing signed by both parties nor may it be assigned by either party hereto without the prior written consent of the other party hereto.  Any assignment made in violation of this Agreement shall be void. ACTIVE retains the right to determine and modify payment terms in accordance with its standard credit policies and procedures and to request and review credit references, histories and reports of ASSIGNEE. No waiver of any provision of this Agreement shall be deemed or shall constitute a continuing waiver of such provision or a waiver of any other provision, unless otherwise expressly provided for in a writing signed by both parties.

6.4    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without reference to principles of choice of

**ACTIVE MEDIA SERVICES, INC.**
**AN INTERNATIONAL TRADING COMPANY**

laws.  In the event of any litigation, action or other proceeding relating to or arising out of this Agreement, or the performance and enforcement of this Agreement, the parties hereto irrevocably consent and submit to the exclusive personal jurisdiction of the federal and state courts of the State of New York.  Each of the parties consents that service of process may be made on them by registered mail or overnight courier (with delivery confirmed), to their respective addresses set forth herein.  Each of the parties hereto irrevocably waives any objection to services of process so made or to jurisdiction or venue in such courts of the State of New York, including without limitation any objection based on the grounds of forum non conveniens.

6.5    This Agreement may be executed in counterparts, including by facsimile or exchange of electronically scanned documents, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have duly signed this Agreement as of the date first set out above.

ACTIVE MEDIA SERVICES, INC.

By: _____
    Name:
    Title:


_____


By: _____
    Name:
    Title: