Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                         :    Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :    Case No. 08-35653 (KRH)
et al.,                        :
                               :
            Debtors.           :    Jointly Administered
- - - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365 AND BANKRUPTCY RULE 2002 AUTHORIZING AND APPROVING SALE OF CERTAIN REAL PROPERTY LOCATED IN SARASOTA, FLORIDA AND THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

_____

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

1

debtors and debtors in possession in the above-captioned
jointly administered cases, the "Debtors") for an order
pursuant to Bankruptcy Code sections 105, 363 and 365
and Bankruptcy Rule 2002 (A) authorizing the Seller to
enter into an agreement with the Purchaser for Sale of
the Property, subject to higher or otherwise better
proposals, (B) approving the Bidding Procedures in
connection therewith, (C) approving the Sale and of the
Property free and clear of all Liens; (D) approving
Assignment of the Lease associated with the Property
free and clear of all Liens and (E) granting related
relief; and upon the record of the hearing held on
September 8, 2010 (the "Sale Hearing"); and after due
deliberation thereon, and sufficient cause appearing
therefor,

   **IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

        A.      The Court has jurisdiction to hear and
determine the Motion and to grant the relief requested

---

[2]  Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

2

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rule 2002.

D.    The notice of the Motion and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property and the Lease.

F.    A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities, including CBS Outdoor, Inc. ("Tenant").

G.    The Seller and its professionals marketed the Property and the Lease and conducted a sale

3

process as set forth in and in accordance with the
Motion.  Based upon the record of these proceedings, all
creditors and other parties in interest and all
prospective purchasers have been afforded a reasonable
and fair opportunity to bid for the Property and the
Lease.

H.     The Seller has demonstrated good,
sufficient, and sound business purpose and justification
for the Sale and Assignment because, among other things,
the Seller and its advisors diligently and in good faith
analyzed all other available options in connection with
the disposition of the Property and Lease and determined
that (a) the terms and conditions set forth in the
Agreement, (b) the transfer to the Purchaser of the
Property and Lease pursuant thereto and (c) the purchase
price agreed to by the Purchaser, $45,000 is fair and
reasonable and constitutes the highest or otherwise best
value obtainable for the Property and the Lease.

I.     The Seller has full power and authority
to execute the agreement submitted by Rodney Dessberg
(the "Purchaser"), a copy of which is annexed hereto as
Exhibit A (the "Agreement") and all other applicable

4

documents contemplated thereby.  The transfer and
conveyance of the Property by the Seller have been duly
and validly authorized by all necessary action of the
Seller.  The Seller has all of the power and authority
necessary to consummate the transactions contemplated by
the Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Agreement, are required for the Seller to consummate
such transactions.

J.    The Agreement and the sale of the
Property and assignment of the Lease thereunder were
negotiated and undertaken by the Seller and the
Purchaser at arms' length without collusion or fraud,
and in good faith within the meaning of Sections 363(m)
of the Bankruptcy Code.  As a result of the foregoing,
the Seller and the Purchaser are entitled to the
protections of Section 363(m) of the Bankruptcy Code.

K.    Neither the Seller nor the Purchaser
engaged in any conduct that would cause or permit the
Agreement or the consummation of the Sale or Assignment

5

to be avoided, or costs or damages to be imposed, under
Section 363(n) of the Bankruptcy Code.

L.    The consideration provided by the
Purchaser for the Property and the Lease is the highest
and best offer received by the Seller, and the
consideration constitutes (a) reasonably equivalent
value under the Bankruptcy Code and Uniform Fraudulent
Transfer Act, (b) fair consideration under the Uniform
Fraudulent Conveyance Act, and (c) reasonably equivalent
value, fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Property and the Lease.

M.    The Sale and Assignment must be approved
and consummated promptly to obtain the value provided
under the terms of the Agreement.

N.    The transfer of the Property to the
Purchaser is a legal, valid, and effective transfer of
the Property, and shall vest the Purchaser with all
right, title, and interest of the Seller to the Property
and the Lease free and clear of all liens, claims and
encumbrances (collectively, the "Liens"), except for

6

those items defined in the Agreement (and which are referred to hereinafter) as the "Permitted Encumbrances".

O.    If the Sale of the Property and Assignment of the Lease by the Seller were not free and clear of any Liens, except for the Permitted Encumbrances, or if the Purchaser would, or in the future could, be liable for any of the Liens, the Purchaser would not have entered into the Agreement and would not consummate the Sale and Assignment contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.    The Seller may sell its interest in the Property and the Lease free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale and Assignment are deemed to have consented to the Sale and Assignment pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale and

Assignment ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale and Assignment.

Q.   Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, 365(b)(3), the Seller and the Purchaser have demonstrated adequate assurance of future performance by the Purchaser under the Lease.

R.   There is no cure obligation due and owing on the Lease under section 365 of the Bankruptcy Code.

S.   There are no outstanding defaults of the Debtors and their estates under the Lease.

T.   Upon the assignment to the Purchaser, the Lease shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any further liability thereunder, including for any breach of the Lease.

8

U.    Based on the foregoing findings of fact and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled on the merits and denied with prejudice.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to Bankruptcy Code section 363(b), the Seller is authorized to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale and Assignment in accordance with and subject to the terms and conditions of the Agreement.

---

[3]    Statements made by the Court from the bench at the hearing on the Motion shall constitute additional conclusions of law and findings of fact as appropriate.

9

5.    The Seller is authorized, but not
directed, to execute and deliver, and empowered to
perform under, consummate, and implement, the Agreement,
together with all additional instruments and documents
as may be reasonably necessary or desirable to implement
the Agreement, and to take all further actions as may be
requested by the Purchaser for the purpose of assigning,
transferring, granting, conveying, and conferring to the
Purchaser or reducing to possession the Property and the
Lease as contemplated by the Agreement.

6.    This Sale Order and the Agreement shall
be binding in all respects upon the Seller, all
stakeholders (whether known or unknown) of the Seller,
all affiliates and subsidiaries of the Seller, and any
subsequent trustees appointed in the Seller's chapter 11
case or upon a conversion to chapter 7 under the
Bankruptcy Code.  To the extent that any provision of
this Sale Order is inconsistent with the terms of the
Agreement, this Sale Order shall govern.

7.    The Agreement and any related agreements,
documents, or other instruments may be modified, amended,
or supplemented by the parties thereto, in a writing

10

signed by such parties, and in accordance with the terms

thereof, without further order of the Court; <u>provided</u>

that any such modification, amendment, or supplement is

disclosed to the Creditors' Committee and does not have

a material adverse effect on the Seller's estate, in the

good faith business judgment of the Seller.

**B.   Sale And Transfer Of The Property.**

8.   Pursuant to Bankruptcy Code sections

363(b) and 363(f), upon the consummation of the

Agreement, the Seller's right, title, and interest in

the Property shall be transferred to the Successful

Bidder free and clear of all Liens except the Permitted

Encumbrances, with all such Liens to attach to the cash

proceeds of the Sale in the order of their priority,

with the same validity, force, and effect which they had

as against the Property immediately before such transfer,

subject to any claims and defenses the Seller may

possess with respect thereto.

9.   If any person or entity which has filed

financing statements, mortgages, mechanic's liens, <u>lis</u>

<u>pendens</u>, or other documents or agreements evidencing

Liens on or against the Property shall not have

delivered to the Seller prior to the Closing of the Sale,
in proper form for filing and executed by the
appropriate parties, termination statements, instruments
of satisfaction, release of all Liens that the person or
entity has with respect to the Property, or otherwise,
then (a) the Seller is hereby authorized to execute and
file such statements, instruments, release, and other
documents on behalf of the person or entity with respect
to the Property and (b) the Purchaser is hereby
authorized to file, register, or otherwise record a
certified copy of this Sale Order, which, once filed,
registered, or otherwise recorded, shall constitute
conclusive evidence of the release of all Liens on or
against the Property of any kind or nature whatsoever
except for the Permitted Encumbrances.

        10.   This Sale Order (a) shall be effective as
a determination that, upon the Closing of the Sale, all
Liens of any kind or nature whatsoever existing as to
the Seller or the Property prior to the Closing of the
Sale, except for the Permitted Encumbrances, have been
unconditionally released, discharged, and terminated
(other than any surviving obligations), and that the

12

conveyances described herein have been effected and
(b) shall be binding upon and shall govern the acts of
all entities including, without limitation, all filing
agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars
of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and
local officials, and all other persons and entities who
may be required by operation of law, the duties of their
office, or contract, to accept, file, register, or
otherwise record or release any documents or instruments,
or who may be required to report or insure any title or
state of title in or to any of the Property.

11.   All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other
stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)

13

arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement release or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of
violation of environmental laws and regulations prior to
Closing.

**C.    Assumption, Assignment and Sale of the Lease.**

12.    Under section 365 of the Bankruptcy Code, the Seller is authorized to assume the Lease and to assign the Lease to the Purchaser, which assignment shall take place on Closing.

13.    Under Bankruptcy Code section 363, the Seller is authorized to sell the Lease to the Purchaser.

14.    The Debtors are authorized to execute the assignment agreement, in substantially the form attached as Exhibit C to the Agreement (the "Assignment Agreement").

15.    Upon Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Seller's rights and obligations in the Lease due, accruing, arising or attributable to the time period occurring on or after Closing and shall have the rights of the landlord thereunder.

16.    Upon Closing, neither the Purchaser, the Debtors, nor the Debtors' estates shall have liability for cure claims of, from, or related to the Lease for any defaults or monetary obligations thereunder.

17.   Upon the entry of this Sale Order,
(i) all defaults under the Lease through Closing shall
be deemed cured, (ii) no other amounts will be owed by
Debtors or their estates with respect to the Lease,
(iii) no amounts will be owed by the Purchaser with
respect to the Lease for obligations relating or
attributable to the period prior to Closing, (iv) any
and all persons or entities shall be forever barred and
estopped from asserting a claim against the Debtors or
their estates that any additional amounts are due or
defaults exist under the Lease, and (v) any and all
persons or entities shall be forever barred and estopped
from asserting a claim against the Debtors, their
estates, and the Purchaser that any additional amounts
are due or defaults exist under the Lease that arose or
accrued, relate to or are attributable to the period
prior to Closing.

18.   The Purchaser takes the Lease "as is."

19.   Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision to the
contrary in the Lease, or in applicable nonbankruptcy
law, that prohibits, restricts, or conditions the

16

assignment of the Lease, the Seller may assign the Lease to the Purchaser.

20.   Upon Closing, subject to the provisions of this Sale Order, the Purchaser shall assume all obligations under the Lease attributable to, or arising or accruing during, the time period occurring on or after Closing or related to the period subsequent to Closing.

21.   Upon the Assignment authorized herein, and under section 365(k) of the Bankruptcy Code, the Debtors and their estates shall have no further liability under the Lease.

22.   Upon the Assignment to the Purchaser, the Lease shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order.

23.   To the extent that any of the Debtors acts as a guarantor of the Lease (a "Debtor-Guarantor"), the Debtor-Guarantor(s) shall have no obligations with respect to the Lease after the Closing.

24.   Pursuant to Bankruptcy Code section 363(f), the sale and corresponding assumption and

17

assignment of the Lease authorized hereunder shall be free and clear of all Liens, with all such Liens attaching only to the amount paid under the Agreement for the Lease and the related premises on which such Liens had been attached previously, in the same order and priority, and with the same validity and enforceability, as same may have had prior to the sale, assumption and assignment of the Lease, subject to any and all available defenses.

25. Any mechanic's lien filed against the Seller with respect to the premises associated with the Lease is hereby released, discharged, and terminated, and the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order and each and every federal, state, and local governmental agency or department is hereby directed to accept a certified copy of this Sale Order as conclusive evidence of the release, discharge, and termination of any mechanic's lien filed against the Seller with respect to the premises associated with the Lease and shall remove such mechanic's lien from record. Any interest released, discharged and/or terminated under

18

this paragraph shall attach solely to the amount paid under the Agreement for the Lease and the related premises on which such interest had previously attached, subject to any and all available defenses.

26.    Except for the Seller with respect to their rights under the Agreement and this Sale Order, all parties to the Lease, and to any other agreements relating to the Lease, other than the Agreement, are forever barred from raising or asserting against the Purchaser any default or breach under, or any claim or pecuniary loss arising under or related to the Lease or such other agreements, arising, accruing or incurred prior to Closing.

27.    Except for the Seller with respect to its rights under the Agreement and this Order, all parties to the Lease, and to any other agreements relating to the Lease, other than the Agreement, are forever barred from raising or asserting against the Debtors or their estates any default or breach under, or any claim or pecuniary loss, arising under or related to, the Lease or such other agreements.

28. Any obligations arising under the Lease which arise, accrue, are incurred or relate to periods on or subsequent to Closing, including but not limited to any tax, utility, common area charges or insurance payments, shall be the obligation of the Purchaser, and no party (including the Purchaser) shall have a claim against the Debtors or their estates for such obligations.

29. The Tenant and any governmental agency shall accept and honor the assignment of the Lease to the Purchaser in accordance with the Agreement and this Sale Order.

30. The Tenant shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, installation of signage, opening and operating of the premises associated with the Lease.

20

**D.    Additional Provisions**

31.   The consideration provided by the
Purchaser for the Property and the Lease under the
Agreement is hereby deemed to constitute reasonably
equivalent value and fair consideration under the
Bankruptcy Code, the Uniform Fraudulent Conveyance Act,
the Uniform Fraudulent Transfer Act, and under the laws
of the United States, and any state, territory, or
possession thereof, or the District of Columbia.

32.   The consideration provided by the
Purchaser for the Property and the Lease under the
Agreement is fair and reasonable and the Sale and
Assignment may not be avoided under section 363(n) of
the Bankruptcy Code.

33.   Upon the Closing, this Sale Order shall
be construed as and shall constitute for any and all
purposes a full and complete general assignment,
conveyance, and transfer of all the Property or a bill
of sale transferring good and marketable title in to the
Purchaser pursuant to the terms of the Agreement.

34.   The transactions contemplated by the
Agreement are undertaken by the Seller and the Purchaser

21

at arm's-length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the sale of the Property and assignment of
the Lease shall not affect the validity of the Sale and
Assignment to the Purchaser, unless such authorization
is duly stayed pending such appeal.  The Purchaser is a
purchaser in good faith, within the meaning of section
363(m) of the Bankruptcy Code, of the Property and the
Lease, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

35.  The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

36.  If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of Seller and Seller is

not in default of its obligations under such Agreement,
then Seller's counsel shall file with the Court and
serve upon the Purchaser, the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the
Property and assignment of the Lease with the Alternate
Bidder on ten (10) days' advance written notice to the
Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale
agreement with the Seller, without the necessity of
further order of this Court.

37.   All deposits submitted to the Seller for
the Property and the Lease shall be returned to the
bidder that submitted them no later than (i) two
business days after the closing of the sale with the
Purchaser (or the Alternate Bidder, as the case may be)

23

except in the case of a bidder who closed on the sale of

the Property or who was required to close in accordance

with the terms of this Sale Order but failed to do so in

breach of its contractual obligations through no fault

of the Seller.

38.    The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

39.    This Court retains exclusive jurisdiction

to interpret, construe, enforce, and implement the terms

and provisions of this Sale Order, the Agreement, all

amendments thereto, any waivers and consents thereunder,

and of each of the agreements executed in connection

therewith in all respects, including, but not limited to,

retaining jurisdiction to (a) compel delivery of the

Property and the Lease to the Purchaser, (b) compel

delivery of the purchase price or performance of other

obligations owed to the Seller pursuant to the Agreement,

(c) resolve any disputes arising under or related to the

Agreement, the Alternate Bid, and any deposit delivered

to Seller by a bidder for the Property and the Lease,

(d) interpret, implement, and enforce the provisions of

this Sale Order, and (e) protect the Purchaser against
any Lien against the Seller or the Property or the Lease
of any kind or nature whatsoever, except for Permitted
Encumbrances, which Liens, valid and timely perfected,
shall attach to the proceeds of the Sale.

Dated:   Richmond, Virginia
         _Sep 10 2010_____ , 2010


         /s/ Kevin Huennekens
         _____
         UNITED STATES BANKRUPTCY JUDGE

         Entered on docket:  September 14 2010

25

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                            /s/ Douglas M. Foley


26

**Exhibit A**

**(Agreement)**

PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of June 30, 2010, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and RODNEY DESSBERG ("Purchaser").

RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain real property located in Sarasota, Florida and being more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land, including, without limitation, all of Seller's right, title, and interest in and to the Billboard Lease (as defined below), but expressly excluding any improvements thereon which, pursuant to the terms of the Billboard Lease, are owned by the tenant under the Billboard Lease (herein collectively called the "Property").

2.    PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be FORTY FIVE THOUSAND AND NO/100 DOLLARS ($45,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's (as defined below) escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

1

3.    DEPOSIT

3.1    <u>Deposit</u>.  Concurrently with execution of this Agreement, Purchaser shall deliver to Chelsea Title Company ("<u>Escrow Agent</u>"), 189 Center Road, Venice, Florida 34285, Attention: Cheryl Vogt,  Phone: (941) 493-4600, Fax: (941) 493-2021, Email: cheryl.vogt@chelseatitle.net, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FOUR THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($4,500.00) (which amount, together with all interest accrued thereon, is herein called the "<u>Deposit</u>") to be held by Escrow Agent in a non-interest-bearing account in a federally-insured financial institution in the Sarasota, Florida metropolitan area, or in such other non-interest-bearing account or investment as the parties hereto shall direct.

3.2    <u>Application of Deposit</u>.    If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 4.1(b) or Section 9.4 hereof, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "<u>Survival Obligations</u>").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given.  The obligation to deliver the Reports shall survive the termination of this Agreement. Purchaser shall not be entitled to the return of the Deposit from Escrow Agent until all Reports have been delivered to Seller.

4.    PREPURCHASE MATTERS

4.1    <u>Items Delivered</u>.

(a)    Seller has delivered or will deliver to Purchaser, within five (5) days following Seller's execution of this Agreement, all title policies and commitments (including copies of all underlying title documents referenced therein), surveys, environmental reports, zoning reports and tax bills regarding the Property that are in Seller's possession or control, if any.

2

(b)     Purchaser has previously delivered or will deliver to Seller within five (5) days after the date of this Agreement proof of available funds adequate to purchase the Property. In the event that Purchaser fails to deliver such proof within the foregoing specified period, Seller shall have the right to terminate this Agreement, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement, except for the Survival Obligations.

4.2     Title Examination.     Within five (5) days after the date of this Agreement, Purchaser shall order from Escrow Agent, as agent for Chicago Title Insurance Company, a commitment for an owner's policy of title insurance (the "Title Commitment"). Within ten (10) days after Purchaser's receipt of the Title Commitment, Purchaser shall give written notice (the "Title Objections Notice") to Seller of any objections thereto; provided, however, that Seller shall have no obligation to satisfy any such objections. Seller shall give written notice (the "Seller's Response") within ten (10) business days after receipt of the Title Objections Notice of whether it agrees to cure such objections prior to Closing. Failure of Seller to send the Seller's Response within such period shall conclusively be deemed to be Seller's election not to cure such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period (as defined below), one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly return the Deposit to Purchaser as Purchaser's sole and exclusive remedy and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations; provided, however, if Seller has agreed to cure or satisfy each such objection specified in the Title Objections Notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement; provided, further, if Purchaser does not send the Title Objections Notice within the period specified herein, or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this Agreement.

4.3     Property Inspection.     Purchaser shall have until the date that is thirty (30) days from and after the date of this Agreement (the "Due Diligence Period") to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser.  Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the

3

Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations. If Purchaser does not give a notice of termination pursuant to Section 4.2 or this Section 4.3 at or prior to 5 p.m. (local time in Sarasota, Florida) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to Section 4.2 and this Section 4.3 shall expire and be of no further force or effect.

Subject to the conditions set out in this Section 4.3 and to the rights of the tenant under the Billboard Lease, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller, including, without limitation, any claims made by the tenant under the Billboard Lease, for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

4.4   <u>Reports</u>.      All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence investigation, whether before or after the date of this Agreement (collectively, the "<u>Reports</u>"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the

4

confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

4.5   Purchaser's Representations and Warranties.   Purchaser represents and warrants to Seller that (a) Purchaser is an individual, is authorized to do business in the State of Florida, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.   Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6   Seller's Representations and Warranties.   Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined below) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted

5

Encumbrances (as defined below). The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

    4.7   Further Assurances.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

    5.1   Disclaimer.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR

6

BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

7

5.2   Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3   Environmental Requirements.   "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4   Purchaser's Independent Investigations.   For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

8

6.    CLOSING

6.1    <u>Closing.</u>    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "<u>Closing</u>") shall be conducted by mail or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is thirty (30) days after the date of entry by the Bankruptcy Court of the Sale Order (the date on which the Closing occurs is referred to as the "<u>Closing Date</u>").

6.2    <u>Possession.</u>    Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, (iv) the Billboard Lease; and (v) any and all matters that would be shown by a physical inspection of the Property (collectively, the "<u>Permitted Encumbrances</u>").

6.3    <u>Prorations.</u>    All real estate taxes and assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available.    Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.    Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    <u>Closing Costs.</u>    Purchaser shall pay all title examination costs, title insurance premiums, survey costs, environmental and engineering costs, and any and all other due diligence costs.    Purchaser shall also pay all transfer taxes and recording fees imposed on the Deed (as defined below) and the Assumption of Lease (as defined below) pursuant to applicable law. Except as otherwise provided herein, each party shall pay its own attorneys' fees.    The parties shall each pay one-half (1/2) any escrow fee charged by Escrow Agent, such one-half not to exceed Two Hundred and No/100 Dollars ($200.00); and, with regard to any other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the State of Florida.

6.5    <u>Seller's Obligations at the Closing.</u>    At the Closing, Seller shall deliver to Escrow Agent the following:

9

(a)    <u>Deed</u>. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances (the "<u>Deed</u>").

(b)    <u>Assignment and Assumption of Lease</u>.    A counterpart copy of an assignment and assumption of lease, duly executed by Seller, pursuant to which Seller assigns to Purchaser (without representation or warranty) all of Seller's right, title, and interest in and to the Billboard Lease, and Purchaser assumes the same from Seller, as contemplated by the Sale Order (the "<u>Assignment and Assumption of Lease</u>").

(c)    <u>Foreign Person</u>.    An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

6.6    <u>Purchaser's Obligations at the Closing</u>.    At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)    <u>Purchase Price</u>.    The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller), by wire transfer of immediately available funds.

(b)    <u>Assignment and Assumption of Lease</u>.    A counterpart copy of the Assignment and Assumption of Lease, duly executed by Purchaser.

(c)    <u>Evidence of Authority</u>.    Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(d)    <u>Taxpayer I.D. Certificate</u>.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer Identification Number and consenting to Seller's release of this information to any governmental authority.

6.7    <u>Commission</u>. Seller represents that it has not engaged any real estate brokers or agents of record in this transaction, other than DJM Realty (the "<u>Seller's Broker</u>"), and upon Closing, Seller shall pay the Seller's Broker a commission pursuant to a separate written agreement. Purchaser represents that it has not engaged any real estate brokers or agents of record in this transaction other than Wagner Realty (the "<u>Purchaser's Broker</u>"), and upon Closing, Purchaser shall pay the Purchaser's Broker a commission of One Thousand Three Hundred Fifty and No/100 Dollars ($1,350.00). Neither Seller nor Purchaser shall be responsible for any other real estate commissions or

10

fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

## 7.    RISK OF LOSS

7.1    <u>Condemnation</u>.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

## 8.    DEFAULT

8.1    <u>Breach by Seller</u>.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy, may terminate this Agreement and demand the return of the Deposit from Escrow Agent. In no event shall Purchaser be entitled to any remedy other than the return of the Deposit from Escrow Agent and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

8.2    <u>Breach by Purchaser</u>. In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent as liquidated damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

11

9.    BANKRUPTCY ISSUES

    9.1    <u>Generally</u>.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

    9.2    <u>Filing a Sale Motion</u>.  The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "<u>Sale Order</u>") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement, including the assignment and assumption of the Billboard Lease as contemplated by Section 9.5 below.   Promptly following the expiration of the Due Diligence Period, Seller will file with the Bankruptcy Court a motion pursuant to Section 363 and Section 365 of the Bankruptcy Code seeking approval of, among other things, this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "<u>Sale Motion</u>"). The Sale Motion shall be in form and substance consistent with this Agreement and shall be in a form and substance reasonably satisfactory to Purchaser.  Seller shall be responsible for serving and providing notice of the Sale Motion.

    9.3    <u>Entry of Sale Order</u>.  The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.  Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

    9.4    <u>Auction Procedures</u>.  Purchaser acknowledges that the Seller intends to solicit "higher or otherwise better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees (subject to the approval of the Bankruptcy Court and the tenant under the Billboard Lease) to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $49,500.00 shall be required; (b) each initial overbid must be accompanied by a deposit in an amount equal to the amount of the Deposit plus ten percent (10%) of the amount by which such overbid exceeds the Purchaser Price; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing offer is received by Seller, Seller shall conduct an auction (the "<u>Auction</u>") to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the Auction.  The last day for submission of "higher or otherwise better" offers will be August 24, 2010, or such other date established

12

by order of the Bankruptcy Court. In the event that Purchaser is the highest or otherwise best bidder at the Auction, this Agreement shall be deemed to be amended to reflect the terms offered by Purchaser at such Auction, and Purchaser and Seller shall proceed to Closing on such terms.

Notwithstanding any other provision of this Agreement, Seller shall have the right to suspend this Agreement in order to permit Seller to accept a "higher or otherwise better" offer for the Property from a participant in the Auction other than Purchaser. In the event that Purchaser is not the highest or otherwise best bidder at the Auction, but is the next highest or otherwise best bidder at the Auction, Purchaser agrees to keep Purchaser's highest or otherwise best bid open until the closing of a transaction with the highest or otherwise best bidder, and close with Seller if Seller does not close with such highest or otherwise best bidder (subject to Seller's right to terminate this Agreement in accordance with the last sentence of this Section 9.4). If (i) Seller closes the transaction with the highest or otherwise best bidder, or (ii) Purchaser is not the next highest or otherwise best bidder at the Auction, then this Agreement shall be deemed terminated, the Deposit shall be returned to Purchaser, and neither party shall have any further right or obligation hereunder except for the Survival Obligations. Each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to the date that is ninety (90) days following the expiration of the Due Diligence Period.

9.5    Assumption and Assignment of Billboard Lease.    Purchaser and Seller acknowledge that the Property is subject to that certain Sign Panel Agreement, dated as of July 15, 2008, between Seller as "Lessor" and CBS Outdoor, Inc. as "Lessee" (the "Billboard Lease"). The Sale Motion shall seek approval from the Bankruptcy Court for (i) the assumption by Seller of the Billboard Lease in the Bankruptcy Case, and (ii) the assignment by Seller to Purchaser (without representation or warranty) of all of Seller's right, title and interest in and to the Billboard Lease.

9.6    Adequate Assurance of Future Performance. Upon    execution    of    this Agreement, Purchaser shall provide to Seller information demonstrating Purchaser's ability to satisfy the requirements under Section 365(b)(1)(C) and Section 365(f)(2)(B) of the Bankruptcy Code, if applicable (collectively, the "Adequate Assurance Information"). Purchaser expressly agrees that the Adequate Assurance Information may be disclosed to, among other parties in interest in the Bankruptcy Case, (a) the tenant under the Billboard Lease upon the request of such tenant; (b) the Official Committee of Unsecured Creditors in the Bankruptcy Case; (c) the Office of the United States Trustee in the Bankruptcy Case; and (d) the Bankruptcy Court.

13

10.   MISCELLANEOUS

      10.1   <u>Notices</u>.         All notices, demands and requests which may be given or
which are required to be given by either party to the other, and any exercise of a right of
termination provided by this Agreement, shall be in writing and shall be deemed effective
either: (a) on the date personally delivered to the address below, as evidenced by written
receipt therefore, whether or not actually received by the person to whom addressed; (b)
on the third (3rd) business day after being sent, by certified or registered mail, return
receipt requested, addressed to the intended recipient at the address specified below; or
(c) on the first (1st) business day after being deposited into the custody of a nationally
recognized overnight delivery service such as Federal Express, addressed to such party at
the address specified below.   For purposes of this Section 10.1, the addresses of the
parties for all notices are as follows:

|  |  |
|---|---|
| If to Purchaser: | RODNEY DESSBERG<br>3935 N. Washington Boulevard<br>Sarasota, Florida 34234 |
| with a copy to: | KIRK PINKERTON, P.A.<br>50 Central Avenue, Suite 700<br>Sarasota, Florida 34236<br>Attention: Tim Shaw, Esq. |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President and Controller |
| with a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Matthew T. Gunlock, Esq. |

      The addresses to which notices and demands shall be delivered or sent may be
changed from time to time by notice served, as hereinbefore provided, by either party
upon the other party.

      10.2   <u>Entire Agreement</u>.      This Agreement embodies the entire agreement
between the parties relative to the subject matter hereof, and there are no oral or written

14

agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3   Amendment.   This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4   Headings.   The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence.   Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the jurisdiction in which the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law.   This Agreement shall be governed by the laws of the State of Florida.

10.7   Successors and Assigns; Assignment.   This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall not assign Purchaser's rights under this Agreement without obtaining the prior written consent of Seller. No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8   Invalid Provision.   If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9   Attorneys' Fees.   In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party

prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10  <u>Multiple Counterparts.</u>    This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature. Signatures transmitted by facsimile or electronic mail shall be deemed to be originals.

10.11  <u>No Recordation.</u>    Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12  <u>Merger Provision.</u>    Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  <u>Brokers.</u>    Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  <u>Consent to Jurisdiction of Bankruptcy Court.</u>    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set

16

forth above.   Each of Buyer and Seller irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

17

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

<u>SELLER</u>

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Cathi W. Bradshaw_
Name: _Catherine W. Bradshaw_
Title: _VP & Controller_

<u>PURCHASER</u>

Rodney Dessberg

18

☑ 020/021

The escrow terms and conditions of this Agreement are agreed to and accepted this 24 day of June 2010.

ESCROW AGENT:

CHELSEA TITLE COMPANY

By: _Golda Radzfeld_
Name: _Golda Radzfeld_
Title: _Assistant Vice President_

Mailing Address:

189 Center Road
Venice, Florida 34285
Attention: Cheryl Vogt

18

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

Begin at the NE corner of Lot 2, Block C, WHIT-ACRES, recorded in Plat Book 4, Page 17, of the Public Records of Sarasota County, Florida; thence South along the East line of said Lot 2, 129.4 feet to the SE corner of said Lot 2; thence East along the South line of said Block C, 342.00 feet to the West right of way line of Tamiami Trail; thence North along the West line of said Trail 50.00 feet; thence West and parallel to said South line of Block C, 292.00 feet; thence North and parallel to East line of said Lot 2, Block C, 139.4 feet to the South line of Block B of said WHIT-ACRES; thence West along South line of Block B, 955.00 feet to the West line of said WHIT-ACRES SUBDIVISION; thence South along the West line of subdivision, 60.00 feet to the North line of Block C of said WHIT-ACRES; thence East along the North line of said Block C, 905.00 feet to the Point of Beginning.

Solely existing as a 50.00 foot wide private right of way known as Fiesta Drive, Whit-Acres Subdivision, Per plat thereof recorded in Plat Book 4, Page 17 of the Public Records of Sarasota County, Florida, reserved for purpose of ingress and egress for property owners therein between Whit-Acres subdivision and the Tamiami Trail (U.S. 41).

\1 1743260.3

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: frenchs          Page 1 of 1          Date Rcvd: Sep 14, 2010
Case: 08-35653                Form ID: pdforder      Total Noticed: 1

The following entities were noticed by first class mail on Sep 16, 2010.
aty          +Gregg M. Galardi,    Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636

The following entities were noticed by electronic transmission.
NONE.                                                                     TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                     TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Sep 16, 2010**          **Signature:**          *Joseph Speetjens*