```
                    UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF VIRGINIA


IN RE:                       .     Case No. 08-35653 KRH
                             .
                             .
                             .
CIRCUIT CITY STORES,         .     701 East Broad Street
INC., et. al.,               .     Richmond, VA 23219
                             .
                             .
            Debtors.         .     September 8, 2010
. . . . . . . . . . . . ..          10:00 a.m.

               TRANSCRIPT OF OMNIBUS HEARING
            BEFORE HONORABLE KEVIN R. HUENNEKENS
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          McGuire Woods, LLP
                          By:  DOUGLAS M. FOLEY, ESQ.
                               SARAH B. BOEHM, ESQ.
                          901 E. Cary Street
                          Richmond, VA 23219

                          Skadden, Arps, Slate, Meagher &
                          Flom, LLP
                          By:  GREGG M. GALARDI, ESQ.
                               IAN S. FREDERICKS, ESQ.
                          One Rodney Square
                          Wilmington, DE 19899

                          Skadden, Arps, Slate, Meagher &
                          Flom, LLP
                          By:  CHRIS L. DICKERSON, ESQ.
                          155 N. Wacker Drive, Suite 2700
                          Chicago, IL 60606

For Creditors Committee: Pachulski, Stang, Ziehl & Jones, LLP
                          By:  JEFFREY N. POMERANTZ, ESQ.
                          10100 Santa Monica Blvd., 11th Floor
                          Los Angeles, CA 90067-4100


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service
```

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311   Fax No. (609) 587-3599**

2

```
APPEARANCES
(Contd'):
For Pima County:           Vandeventer & Black, LLP
                           By:  JERRELL WILLIAMS, ESQ.
                           Eight & Main Building
                           707 East Main Street, Suite 1700
                           Richmond, VA 23218


For Safeco:                George Kaplan, PLC
                           By:  TROY SAVENKO, ESQ.
                           7 East Second Street
                           Richmond, VA 23224


For Mitsubishi:            Sands Anderson, PC
                           By:  PHILLIP C. BAXA, ESQ.
                           1111 East Main Street, Suite 2400
                           Richmond, VA 23219


For Warner Home Video:     By:  MICHAEL MUELLER, ESQ.


TELEPHONIC APPEARANCES:

For Eastman Kodak:         Hirschler Fleischer
                           By:  ROBERT WESTERMANN, ESQ.
                           The Edgeworth Building
                           2100 East Cary Street
                           Richmond, VA 23223
```

- - -

3

1          COURT CLERK:  In the matter of Circuit City Stores,

2   Inc., hearing on Items 1 through 10 is set out on debtors'

3   proposed agenda.

4          MR. FOLEY:  Good morning, Your Honor.  Doug Foley

5   with McGuire Woods on behalf of the debtors.

6          THE COURT:  Good morning, Mr. Foley.

7          MR. FOLEY:  With me at counsel table is Gregg Galardi

8   and Ian Fredericks from Skadden, Arps.  Your Honor, also in the

9   courtroom today is Katie Bradshaw, Vice President and

10  Controller of the company.  Also in the courtroom today is

11  Brian Cashman from FTI, who's the financial advisor for the

12  debtor, as well as Evan Gershbine who is with KCC, he's the

13  claims, noticing and balloting agent for the debtor with

14  respect to the plan.  Your Honor, my understanding is that Al

15  Siegel the proposed liquidating trustee under the liquidating

16  trust is on the phone, as well as Jim Avalon who is with DJM

17  Asset Management and helped with the sale process with respect

18  to Item Number 1 that's on the agenda, Your Honor.

19          THE COURT:  All right.

20          MR. FOLEY:  Your Honor, there's only 10 items on the

21  agenda today, the most important of which obviously are the

22  plan related matters that we're finally going to present to the

23  Court, but just to begin the agenda, Your Honor, Item Number 1

24  is the sale of a small piece of property in Sarasota, Florida,

25  located 4708 South Tamiami Trail.  The proposed purchase price

1  is $45,000.  Your Honor, the motion provides for bid procedures

2  that are laid out in the motion, as well as a sale process that

3  was conducted by DJM Asset Management and the company.  I would

4  proffer the testimony of both Katie Bradshaw and Jim Avalon

5  with respect to that sale process as delineated in the motion,

6  and that it was fair and reasonable and that the transaction

7  reached -- was at arm's length, specified in Paragraph 40 of

8  the motion, and that it was reasonable.

9       Your Honor, this is a transaction involving a piece

10  of fee real estate transaction to an individual named Rodney

11  Desbur (phonetic).  Also, what's being transferred, Your Honor,

12  is a lease that's on the property with CBS Outdoor Inc. under

13  Section 365.  Your Honor, we believe that the motion satisfies

14  Section 363 and 365 and there's been no objections to the

15  motion and we would ask the Court to approve it.

16       THE COURT:  All right.  Does any party wish to

17  examine the proffered witnesses?

18                     (No audible response)

19       THE COURT:  All right.  The proffer is accepted.

20  Does any party wish to be heard in connection with the debtors'

21  motion?

22                     (No audible response)

23       THE COURT:  All right.  That motion will be granted,

24  Mr. Foley.

25       MR. FOLEY:  Thank you, Your Honor.  Item Number 2 is

1  a motion by counsel to withdraw as counsel for Faber Brothers,

2  so, there's been no objection to it.  I don't know if counsel

3  is here to address the motion, but we would ask the Court to --

4          THE COURT:  I think we'd let counsel know that they

5  did not need to appear for that.

6          MR. FOLEY:  Okay.

7          THE COURT:  And an order would be entered granting

8  that motion.

9          MR. FOLEY:  Great.  Thank you, Your Honor.  Item

10 Number 3, Your Honor, and 4 are procedural motions that address

11 some of the substantive motions that are on today.  Item Number

12 3 is a motion to schedule an expedited hearing with respect to

13 Item Numbers 6 and Items Numbers 5 which are a consent

14 stipulation with the U.S. Customs and Border Protection

15 Service, as well as the motion by the debtors, 9019 motion by

16 the debtors, with respect to the post petition officers and

17 directors of Ventoux and Intertan, and we would ask the Court

18 to grant that expedited hearing request.

19         THE COURT:  Does any party object to the debtor

20 proceeding on expedited basis?

21                 (No audible response)

22         THE COURT:  All right.  The expedited hearing is

23 granted.

24         MR. FOLEY:  Your Honor, Item Number 4, similarly, is

25 a motion to shorten time with respect to both Items Number 5

1  and 6, the settlement motion with respect to the post petition

2  officers, directors of Ventoux and Intertan, as well as the

3  U.S. Customs and Border Protection stipulation.  We would --

4          THE COURT:  Does any party wish to be heard in

5  connection with the debtors' motion.

6                    (No audible response)

7          THE COURT:  That motion is granted as well.

8          MR. FOLEY:  Thank you, Your Honor.  Item Number 5 is

9  our consent stipulation resolving certain claims that the U.S.

10  Custom Border Protection Service.  The amount of the claim is

11  relatively small, Your Honor.  The stipulation provides that

12  the -- to the extent necessary the automatic stay will be

13  lifted so that an assessment of $38,648.92 can be assessed by

14  the U.S. Custom and Border Protection Service, as well as

15  providing for their ability to set off a refund in the amount

16  of $10,186.93 against the assessment.  It also finds, Your

17  Honor, that the Custom Border Protection is deemed a quote

18  "taxing authority" under Section 6(H)2 of the plan.  There's

19  been no objection to that stipulation and I would ask the Court

20  to approve it.

21          THE COURT:  Does any party wish to be heard in

22  connection with the debtors' motion?

23                    (No audible response)

24          THE COURT:  That motion is granted.

25          MR. FOLEY:  Thank you, Your Honor.  Mr. Galardi will

1  address Items 6 through 10 on the agenda, Your Honor.

2           THE COURT:  Thank you.

3           MR. GALARDI:  Good morning, Your Honor.  First moving

4  to Item Number 6 on the agenda, Your Honor, it's the debtors'

5  motion to approve a settlement under 9019 with respect to the

6  debtors' post-petition directors and officers of Intertan and

7  Ventoux.  Just by way of background, Your Honor, there are no

8  objections.  This arose out of -- Your Honor may recall the

9  original plan that we had filed, the second amended plan, had

10 was subsequently consolidating Intertan and Ventoux with all of

11 the other debtors.  There came a time where we were not going

12 to consolidate it for the tax reasons I'll talk about later.

13 So, Intertan and Ventoux were carved out of that plan.

14          As Your Honor is all too familiar, we also had then

15 the dispute with the committee regarding going forward on the

16 plan and then the draft the plan that the committee had given

17 there was no exculpation.  We then had mediation with respect

18 to that and as a result of settlements reached in the

19 mediation, and one of the settlements reached was that

20 exculpation for the officers and directors of Intertan and

21 Ventoux would become not pursuant to the plan, but by separate

22 motion under 9019 for various reasons.  The settlement is

23 essentially that they will be exculpated solely with respect to

24 post-petition activities that they have taken, and that really

25 -- the directors and officers fall into really two categories.

1          First, there were directors and officers of those

2   companies, former employees and officers of the company, such

3   as Mr. Hedgebeth, Mr. Besanko who Your Honor may recall from

4   the early days of the case, as they left Circuit City then we

5   had people such as Jeff McDonald, Katie Bradshaw and other

6   people take on those positions.  It was the debtors' view that

7   in reviewing -- and I mean -- let me say this, Skadden, Arps

8   did an investigation with respect to claims, we had not

9   represented any of these parties prior to that.  We identified

10  the only types of potential causes of action that we think

11  could have possibly been raised with respect to these officers

12  and directors, Your Honor, and in that whole scope really the

13  only thing that we thought would be a possible concern may

14  relate to that French tax liability which Your Honor is

15  familiar with and it's a sub of a sub of a sub.  With respect

16  to that, we then had the conversations with the committee who

17  also had -- did, you know, went through with us with respect to

18  the negotiations.

19          Once we went through that and distinguished say, for

20  example, Ms. Bradshaw who was sort of thrust into that position

21  by resignations, everybody stepped backwards, she had to step

22  forward versus Mr. Hedgebeth and Mr. Basanko, we drew a line in

23  the sand with respect to given the indemnification and

24  corporate governance issues to bring a claim against those

25  individuals, given what we believe was the long shot of the

1   claim, given that we believe that there -- these claims were

2   contingent claims and would actually upset perhaps confirmation

3   today.   We believed it was in the best interest of both the

4   Ventoux estates, as well as the Circuit City estates and the

5   Intertan estates to give a post-petition exculpation to these

6   directors and officers which served on the petition date and

7   after.   That doesn't release any claims with respect to those

8   officers and directors that served the day immediately before

9   the petition or prior to that period of time.

10         Then when we reached our settlement with the

11   committee, the committee agreed to such exculpation, and we

12   agreed that the proper way to bring that kind of exculpation,

13   as opposed to a plan provision, was to seek separate relief

14   under 9019.   This motion is a condition precedent to going

15   effective under the plan.   We believe that the estates are

16   getting adequate consideration in the sense that these

17   directors and officers are agreeing to give up any

18   administrative claims that they have with respect to this in

19   exchange for the exculpation.

20         Again, we think that the claims, any claims, were

21   probably long shot claims in our estimate with respect to

22   post-petition.   With respect to the French tax liability, we

23   think it would be a minimal liability, it may be interest on

24   interest, not worth pursuing, and, so, we, along with the

25   committee who supported our filing this motion, believe that

1 this motion should be granted and it is a condition to the

2 effectiveness.

3        Ms. Bradshaw is in the courtroom today, obviously,

4 she is the beneficiary of this, so, it would be somewhat

5 conflicted testimony, but with respect to the facts, the

6 negotiation, the mediation, Your Honor, she participated in all

7 of this, as did the committee with respect to our discussions.

8 We believe it's a fair settlement under 9019, and as a

9 condition precedent to the confirmation of the plan we would

10 ask Your Honor to approve that settlement with those officers

11 and directors.

12        THE COURT:  All right.  Thank you, Mr. Galardi.  Does

13 any party wish to be heard in connection with the debtors'

14 motion to enter into the settlement agreement?

15        MR. POMERANTZ:  Yes, Your Honor.  Jeff Pomerantz,

16 Pachulski, Stang, Ziehl & Young on behalf of the Creditors

17 Committee.  We support the motion as it relates to the

18 post-petition conduct of the officers and directors of Ventoux

19 and Intertan.  The Committee has not completed its

20 investigation of the pre-petition conduct of officers and

21 directors.  We hope that such investigation will not have to

22 result in bringing a claim because that French tax liability

23 will end up being a nullity.  As part of the confirmation, we

24 did agree it was appropriate for -- with respect to the

25 post-petition conduct, but I don't want anything on the record

1  to be construed that there's any determination made as to the

2  pre-petition conduct or any characterization as to what claims

3  the estate may have in at least the committee's view.

4        THE COURT:  All right.  Thank you.  Any other party

5  wish to be heard?

6                    (No audible response)

7        THE COURT:  All right.  That motion will be granted.

8        MR. GALARDI:  Thank you, Your Honor.  Moving now to

9  matter 7 on the agenda, it is the claimant Marlon Mondragon's

10 motion for continuance of the objection to the plan.  I don't

11 know if there's anybody in the courtroom with respect to that

12 motion.  The debtors do oppose the motion, but I'll see if they

13 have any affirmative argument they'd like to make first.

14       THE COURT:  All right.  Is there any party in the

15 courtroom on behalf of Marlon Mondragon's motion?

16                   (No audible response)

17       THE COURT:  Okay.  Is there anybody on the phone in

18 connection with the claimant Marlon Mondragon's motion?

19                   (No audible response)

20       THE COURT:  All right.  It doesn't appear that Mr.

21 Mondragon intends to pursue to that motion, Mr. Galardi.  I've

22 reviewed the objection that the debtors have lodged to the

23 motion for a continuance and I don't think that the motion for

24 continuance has merit.  So, you don't need to respond at this

25 point.  I'm going to deny the motion for continuance.

1          MR. GALARDI:  And would you like us to submit an

2     order denying that, Your Honor?

3          THE COURT:  Yes, please.

4          MR. GALARDI:  Thank you.  Your Honor, the next matter

5     on the agenda has sat since the very first day, it is the

6     debtors' motion establishing notice hearing, and sell-down

7     procedures for trading in equity securities and claims against

8     the debtors.  We had received two informal objections and had

9     carried this motion and we have an interim order with respect

10    to the motion.  The two informal responses/objections were by

11    the Securities and Exchange Commission and the Official

12    Committee of Unsecured Creditors.

13         Your Honor, what we would like to do is simply on

14    this day submit a final order that is substantially in the form

15    of the interim order that would simply not have further notice

16    provisions.  As Your Honor may recall the interim order had

17    notice provisions, we've satisfied those notice provisions.  We

18    understand from the Securities and Exchange Commission they

19    have no objection with that order going final, and we

20    understand at this point that the Official Committee no longer

21    has any informal objection to that order going final.  So, as a

22    housekeeping measure, we'd like to just submit to Your Honor an

23    order that reads final with all of the same findings that we

24    had gotten from the first day and just no further notice.

25         THE COURT:  Does the Committee wish to be heard?

1          UNIDENTIFIED ATTORNEY:  No, Your Honor.

2          THE COURT:  Okay.  That is satisfactory to the Court.

3   You can submit that order.

4          MR. GALARDI:  Thank you, Your Honor.  We now move to

5   matter 9 which is the motion of Pioneer Electronics under

6   Federal Rule Bankruptcy Procedure 3020(a) for an order

7   requiring confirmation deposits and Your Honor will see a list

8   of numerous, up to J it looks like, requests.  These motions

9   all dealt with an earlier plan pretty much, but they were

10  objections to the original plan that did not require the

11  posting of deposits.

12         As I have advised the Court previously and as set

13  forth in the amended plan, we are now setting aside funds for

14  503(b)9 claims that we may still dispute, and, so, our

15  understanding is that all of these objections have been

16  resolved by the amended plan, by the posting of the deposits,

17  either some -- I don't think Mitsubishi is on here, we'll get

18  to that on the confirmation, but there will be deposits posted.

19  We think that that moots any of these objections or has

20  resolved the objections.  However Your Honor wants to proceed,

21  but I don't believe that there's anybody still prosecuting that

22  in light of the plan.

23         THE COURT:  All right.  Is any of the parties in

24  connection with the motion of Pioneer Electronics requesting an

25  order requiring a confirmation deposit either in the courtroom

1 | or on the phone that wants to be heard on this motion?

2 | (No audible response)

3 | THE COURT: All right. Mr. Galardi, it appears that

4 | your amendments to the plan have resolved these objections.

5 | The Court has obviously reviewed those provisions and is

6 | comfortable with them, and I agree that the amended plan moots

7 | the objections and, so, they will be overruled.

8 | MR. GALARDI: Thank you, Your Honor. That then moves

9 | to really the biggest event of today and the conclusion of the

10 | case for the debtor-in-possession, it is the second amended

11 | joint plan of liquidation. We're seeking confirmation of that

12 | plan. Your Honor, we have gone through a number of iterations

13 | and it's been over a year, I guess, now since we had filed the

14 | amended plan. First, Your Honor, what I'd like to note which,

15 | I guess, when we file the amended agenda it got stricken, we

16 | would move into evidence or ask Your Honor to take judicial

17 | notice of the following additional documents that are not

18 | listed.

19 | First, Your Honor, we have affidavits of mailing

20 | notice with respect to the notice of the disclosure statement,

21 | the confirmation hearing and voting, that is at Docket Number

22 | 5309. We also had publication notice at Dockets 5218, 5219,

23 | and 5324, and we'd ask Your Honor to accept into evidence those

24 | dockets. I don't think anybody has challenged service, Your

25 | Honor, but if they needed to challenge it those people, we

1  could -- the affidavits are there, and we would ask Your Honor

2  to move that into evidence for this hearing.

3         THE COURT:  Does any party object to the Court's

4  receipt of those documents?

5                    (No audible response)

6         THE COURT:  All right.  There -- the Court will take

7  judicial notice of those documents.

8         MR. GALARDI:  Thank you, Your Honor.  Then we'd also

9  -- and he is in the courtroom today, Evan Gershbein of KCC, we

10 have Docket Number 6188 which is the declaration of Evan

11 Gershbein regarding tabulation of ballots with respect to the

12 vote on the first amended joint plan of liquidation of Circuit

13 Cities.  As set forth in that, it sets forth that these were

14 mailed and that the tabulation of the vote was -- and we set it

15 forth in our brief, Your Honor, that the vote was there was

16 convenience class claim, Class 3, and I think the vote there

17 was 96 percent to four percent, 96 percent accepting, four

18 percent not accepting, and the total number was -- the class

19 carried and the total of people votes to accept was 122 and

20 those that were rejected was five.

21        And then with respect to the much broader class of

22 general unsecured claims, Your Honor, we carried both the

23 acceptance versus the rejection 950 to 207 and the amount of

24 76.85 percent to 23.15 percent.  We would ask Your Honor to

25 admit into evidence the declaration of Mr. Gershbein, he is in

1 the courtroom today and could testify if asked to -- or will

2 respond to any cross examination.

3 　　　　　THE COURT:  Does any party wish to examine the

4 proffered witness?

5 　　　　　　　　　　(No audible response)

6 　　　　　THE COURT:  All right.  The proffer is accepted and

7 the declaration will be received by the Court.

8 　　　　　MR. GALARDI:  Your Honor, two other witnesses that

9 are in the courtroom today with respect to confirmation are Ms.

10 Katherine Bradshaw, she is the Vice President and Controller of

11 Circuit Cities, an officer of the Circuit City subsidiary,

12 she's also director of the subsidiaries as I've mentioned

13 earlier, she is familiar with the operations, the capital

14 structure has reviewed the plan and we also have in the

15 courtroom Mr. Brian Cashman today who is a Managing Director of

16 FTI Consulting who did, in fact, prepare the liquidation

17 analysis and could testify to the liquidation analysis.

18 　　　　　Your Honor, depending upon your preference I could

19 read a proffer in, but I can also tell you that both Ms.

20 Bradshaw would verify of all the facts in both the disclosure

21 statement in the plan, as well as in the supplemental

22 disclosure statement.  She would affirm that with respect to

23 the requirements of the plan that we have satisfied those

24 requirements, separate classification, I don't know if you need

25 to go into detail with that.  I think, importantly, Ms.

1  Bradshaw perhaps the most controversial point, although no one

2  really has challenged this, is with respect to substantive

3  consolidation, Your Honor.  We have as I mentioned not

4  consolidated Intertan U.S., not consolidated Ventoux, that is

5  for two reasons, one, there is no prejudice to any creditors at

6  those companies, indeed we have dealt with the claims at

7  Intertan U.S. and we have dealt with the Ventoux claims.

8          There is one claim outstanding which is an insurance

9  claim that has a reserve, but the reserve is greater than the

10 amount of the claim.  So, it's a secured credit, it will be

11 paid in full.  With respect to any other claims there is no

12 prejudice to those parties.  So, because of the way in which

13 the money has to come back up as we've described, those two

14 entities have been carved out as substantive consolidation.

15         In addition, Ms. Bradshaw would confirm what's set

16 forth in the supplemental disclosure.  As we went through and

17 did -- were successful with claims, we then took a new look

18 recently and this went to the mediation as well with respect

19 substantive consolidation.  There are really two entities that

20 gave us pause, the first one was the West Coast and the other

21 one was Puerto Rico.

22         After taking a close look at the West Coast, Your

23 Honor, the grounds that we set forth in the disclosure

24 statement originally with respect to substantive consolidation,

25 we still found to be compelling and accurate, and therefore we

1  didn't think there needed to be a supplemental disclosure, that

2  there were some inter-company claims that had not been

3  registered, but there was a significant litigation risk and

4  indeed that the only creditors that we thought could arguably

5  be prejudiced by this substantive consolidation were the

6  landlords and we built into the plan that 150 percent

7  settlement.  So, that instead of two bites at the apple, they

8  get the 150 percent which we calculated to be roughly the same.

9  They could have also, had they have pushed the substantive --

10  non substantive consolidation, could have ended up with a much

11  less recovery.  So, we thought that that was appropriate.

12      I do want to note for the record that we did, in

13  fact, Ms. Bradshaw sat on the board.  There is a board for each

14  of the subsidiaries, they sat on it and they were not part of

15  the Circuit City board.  They had independent board meetings.

16  They did make the independent judgment with respect to going

17  forward on the substantive consolidated plan.  We did advise

18  them as to their fiduciary obligations to maximize value for

19  those creditors.  We did advise them of the risks with respect

20  to that and they determined to go forward with substantive

21  consolidation in light of those and in light of the positive

22  and negatives in the settlement, and that the potential

23  downside for them was much greater than the potential upside

24  with respect to West Coast.

25      We did exactly the same thing and that same board sat

19

1  with respect to Puerto Rico, though, Your Honor, as we went

2  through we did determine that there needed to be supplemental

3  disclosure with respect to Puerto Rico after consulting with

4  the committee.  Again, we did do that supplemental disclosure.

5  We did not have anybody object to it, and, again, what the

6  board determined with respect to Puerto Rico was that we would

7  leave it to creditors to raise the objection, but we did

8  disclose facts adequate for any creditor of Puerto Rico to make

9  the objection.

10        When we also analyzed the claims of Puerto Rico,

11  again, I think roughly 80 or 90 percent of the claims were

12  landlord claims.  So, again, we thought that any party that

13  really had an economic interest in raising that objection, (1)

14  was given adequate notice for it, (2) was being compensated in

15  any event under our global settlement with reflect to

16  landlords.  I think three of the four claims were what had been

17  a double counting claim and it's getting a 150 percent.

18        So, we take it as a sign that there are no objections

19  with adequate supplemental disclosure that there really is no

20  objection to substantive consolidation.  That board, again,

21  without Circuit City's board, you know, forcing them or

22  otherwise directing them, that board determined that with

23  adequate disclosure that it was appropriate to move for

24  substantive consolidation.

25        Obviously, the committee has agreed to the

1  substantive consolidation with respect to protecting all of the

2  creditors.  So, we believe that Ms. Bradshaw if called to the

3  stand would testify to those facts and that substantive

4  consolidation is appropriate and warranted under the

5  circumstance.

6        The other thing that I'd like to bring out, Your

7  Honor, is the status of the CRA ruling and how that all works

8  because it does influence what we've done today.  The first

9  news is the good news.  Last night we did, in fact, receive the

10 CRA ruling in the form that we had amended and sought for that.

11 So, we do have that condition to the effectiveness in our

12 possession today.  It came in last night and we have the

13 ruling.

14       Your Honor, just to give Your Honor some facts about

15 that because I think it's important and, again, I know we

16 talked about the Canadian Court having to take certain steps

17 subsequent to this to go effective.  I thought it might be just

18 very quickly helpful and, again, Ms. Bradshaw can testify with

19 respect to this, Your Honor, currently the corporate structure

20 -- and I'm going to leave out every debtor other than Ventoux,

21 Intertan, and Tourmalet because I think that's the -- Circuit

22 City is the wholly -- let me start from the bottom, Intertan

23 Canada, which is currently in the CCAA proceedings and which

24 has a lot of cash after reconciling its claims, is a wholly

25 owned subsidiary of Intertan United States which is a U.S.

1  debtor.   Intertan U.S. has preferred shareholder Tourmalet

2  which is again in the Canadian proceedings, a Canadian debtor,

3  and the common stock is held by Ventoux which is a U.S. debtor.

4  And then the common stock, all of the common stock of Circuit

5  City -- Ventoux is held by Circuit.

6          So, what we were concerned about and what, you know,

7  is in large part responsible for the delay of the confirmation

8  was that in light of the closing of the sale in Canada there

9  seemed -- there was significant cash, about $100 million of

10  cash, that we hoped to be able to repatriate to the United

11  States and to Circuit City and to the substantive consolidation

12  plan.  So, let me take an aside on substantive consolidation.

13  Because of consolidation the creditors of Puerto Rico and West

14  Coast do get a benefit from these extra proceeds if they come.

15  So, one of the other reasons is we think that will be helpful

16  for them.

17          We have been in discussions with the monitor and

18  Canadian counsel.  With respect to the CRA ruling, the CRA

19  ruling contemplates the following steps which are embodied in

20  our plan.  First, that if Your Honor confirms the plans for

21  Intertan, Ventoux and the Circuit City entities what will

22  happen is there -- the -- there will be a trade -- trading

23  agreement whereby Tourmalet, which is a Canadian debtor, will

24  be the sole shareholder of Intertan U.S.  Intertan U.S. will

25  then dissolve which will make Intertan Canada the sole -- the

1   subsidiary of Tourmalet, that's an important step.  So, our

2   plan for Intertan U.S. is you confirm and then you'll

3   ultimately dissolve after the share transfer.  There'll be

4   essentially a straight line up, Your Honor, Intertan Canada to

5   Tourmalet, Ventoux will then own the stocks of Tourmalet and

6   Circuit City will own the stock.

7          So, the first step that we would take after

8   confirmation and beginning effective and subject to the

9   Canadian Court approving a transaction is that the shares, all

10  of the shares, of Intertan U.S. will held by Tourmalet, Ventoux

11  will be the stockholder of Tourmalet, and then Intertan U.S.

12  will dissolve with Tourmalet assuming all of the assets and

13  liabilities of Intertan U.S.

14         As we sit here today, Your Honor, the only asset

15  that we are aware of of Intertan U.S. is the potential recovery

16  as a stockholder of Intertan Canada which is still contingent

17  upon French tax issues and all of those other, but we're also

18  not aware of any liabilities currently at Intertan U.S. and why

19  we wanted to go to confirmation was we've had claims objection.

20  We've resolved all of the claims.  We think they've either been

21  paid by Intertan Canada or they've been otherwise disallowed.

22  So, we don't think that there are liabilities that Tourmalet is

23  assuming, but that said, Tourmalet currently has no assets and

24  liabilities.  So, it's really not to its detriment, as we will

25  advise the Canadian Court, for it to assume whatever there is

1   because its -- again, everybody's contingent upon a recovery

2   coming up.  So, our first step will be doing that.  If Intertan

3   Canada is consensually resolved, and we'll talk about the

4   French tax issue, then money will slowly -- will then flow up.

5   They'll be an amalgamation which would be the final step

6   between the Canadian entities and then all of the assets and

7   liabilities will be in one place, then a repatriation of the

8   cash.

9          Your Honor, with respect to the CRA ruling we did get

10  asked for one modification with respect to the CRA ruling that

11  I think is worth the Court being aware of that the ruling is

12  good through March 2011.  Now, that may -- and because of the

13  way in which the French tax issue may take three or four years

14  it did give us some pause for concern, but I wanted to advise

15  the Court that we are not concerned and after discussing it

16  with the Committee we were really forced with two choices here,

17  one was to not to confirm this plan and go effective for three

18  years which no one found acceptable, especially the Committee,

19  and, two, go effective and then begin the process even though

20  we know we will need extensions.

21         We've been advised by PWC and the Canadian counsel

22  has also advised us that as a matter of course the CRA only

23  gives you six month rulings.  So, we think it is a minimal or

24  negligible risk to be getting extensions.  So, even though we

25  have a March 30th date we will be filing extensions because the

1    Canadian -- the French tax issue may take as many as two or

2    three years.  Given that the debtors' board, especially with

3    the Creditors Committee supporting it, believe that it was wise

4    to go effective today, not wait the three years even though the

5    tax could be substantial and it is disclosed that it could be a

6    substantial tax, but we think that that risk is minimal, that

7    we think that we'll get the extensions and we don't think

8    there's going to be a law change, there's nothing in that.  So,

9    given all of the considerations we decided to go effective --

10   we'll go effective as soon as the Canadian Court blesses it.

11           In addition, Your Honor, I think we're also in the

12   good fortune that when we originally disclosed and got the

13   votes we ranged zero to ten percent.  Even if we didn't get any

14   of the cash up from Canada we're beyond where we were when we

15   first did the disclosure statement in all creditors.  So, we

16   believe that it is the appropriate decision to go forward

17   subject to the Canadian Court approving its transaction.

18           We believe that Tourmalet will be not assuming

19   liabilities when it takes on its action and we would make such

20   representations to the Canadian Court.  We believe that then

21   once the French tax issue gets resolved the amalgamation would

22   be appropriate and the tax ruling which is very critical is

23   after steps one, namely, the share transfer, and step two, the

24   dissolution of U.S., then we will go effective on the

25   liquidating trust without an adverse tax consequence which was

1  the major part of the CRA ruling.

2           So, Your Honor, we think that it is absolutely

3  appropriate for us to be getting a confirmation today.  We

4  think we would go effective as soon as we can get the Canadian

5  ruling which I believe the Court will be available not next

6  week, but the week after, and once that goes -- that Court

7  blesses the transaction, assuming it does, then we would be

8  prepared to go effective before the end of the month if not in

9  the third week of September.

10          Your Honor, I don't know if there were other issues,

11 I can go through the objections.  Mr. Cashman, as I said, is in

12 the courtroom, he would affirm that, you know, again, it's

13 always a close call when you have a liquidating debtor versus a

14 Chapter 7, but in light of some of the rulings on amended

15 claims and late claims, Your Honor, and given the uncertainty

16 of being able to realize certain of the assets, we believe that

17 we satisfied the standards with respect to confirmation

18 including the standard that people will get more under this

19 Chapter 11 plan than they would get in a liquidating Chapter 7,

20 and we would ask for confirmation.

21          I can go to the objections or I can put on more

22 evidence, but I don't think anybody's really, who's outstanding

23 on the objections, objects to the standards and I can deal with

24 each objection in order because I think we resolve -- we've

25 resolved most of them.  I will introduce to the Court now Sarah

1   Baker and Jessica Kumar in the back of courtroom who are

2   actually the people who have done all the work to get all the

3   resolves and they've not actually been here before, so, my

4   thanks to them.  I can go through, give more evidence if Your

5   Honor thinks it's necessary or just begin dealing with the

6   objections one by one.

7           THE COURT:  All right.  Well, let's see if anybody

8   wants to examine the proffered witnesses.  Does any party

9   either in the courtroom or on the phone wish to examine Ms.

10  Bradshaw or Mr. Cashman?

11                     (No audible response)

12          THE COURT:  All right.  It does not appear that

13  there's anyone who wants to examine or take issue with the

14  proffer.  So, the Court will accept the proffer and you may now

15  proceed to -- with the objections.

16          MR. GALARDI:  Your Honor, then I'll turn to the

17  agenda in the order that it's written and go through, resolve,

18  there are additional ones that were said going forward that

19  have been resolved and then I'll deal with each of the

20  unresolved ones in the order that they come up in the agenda.

21          The first objection which is of Steven Saunders that

22  my understanding is that has been resolved, as has (b) which is

23  Karen L. Craig's objection, and (c) which is the Treasurer of

24  Douglas County, Your Honor, is not resolved, but I'll leave it

25  till we get to tab (mmm) towards the back.  The next one is the

1 | Texas Controller's objection, we will - that's tabs (jjj) and
2 | (kkk) and we will deal with that at the back as well.
3 |        Which brings us to objection by Bruce Senator, his
4 | objection, Your Honor, has not been resolved.  He is
5 | incarcerated, what -- his objection is -- I've read it, is
6 | really a claim objection with respect to a matter that he
7 | wanted to get a rebate, he didn't cash his check in 90 days.
8 | We don't see it as a plan objection.  It does say it's a
9 | priority claim, we obviously disagree with that, Your Honor.
10 | It is a claims matter.  We would ask that you overrule his
11 | objection and if and when we object to the claim, and I'm
12 | assuming that we will, that all of his rights are reserved with
13 | respect to prosecute his contention, it's a priority claim or
14 | otherwise.  I understand that Mr. Senator files a lot of these
15 | claims in a lot these cases, but I'll leave it for claims
16 | objection.
17 |        THE COURT:  All right.  Does any party wish to be
18 | heard in connection with the objection of Bruce Senator?
19 |                    (No audible response)
20 |        THE COURT:  All right.  The Court has reviewed the
21 | objection that Bruce Senator has filed.  The Court agrees that
22 | it's a claim objection and it's more appropriately dealt with
23 | in that context, certainly it has nothing to do with
24 | confirmation of the plan and, so, the objection's overruled.
25 |        MR. GALARDI:  Thank you.  Your Honor, the next

1   objection is Prince George's County has been resolved by

2   settlement agreement.  (g) Charles County has been resolved by

3   settlement agreement.  The State of Connecticut, Department of

4   Revenue, objection has been resolved.  The Florida Tax

5   Collectors objection has been resolved.  I'm now up to (j), the

6   Commonwealth of Virginia Departments of Taxation has been

7   resolved.  (k) Maricopa County has been resolved.

8           And then we're up to (l) which is Certain Texas

9   Taxing Authorities objection to confirmation of Circuit City's

10  plans.  As we mentioned in the status, Your Honor, before we

11  filed the agenda we had resolved the Arlington ISD, there are

12  other counties involved there, I believe we have now resolved

13  those objections or I think it's better to say, they are not

14  prosecuting the objection.  In light of our amendments to the

15  plan which do go from the petition date and the interest, my

16  understanding is there is counsel here who is no longer

17  prosecuting it.  I don't think he has authority to say, it's

18  resolved, but we think in light of the plan, Your Honor can

19  overrule the objection and understand that they are not

20  prosecuting it at this point.

21          THE COURT:  All right.  Does anybody wish to proceed

22  on behalf of any of the Texas Taxing Authorities objection to

23  confirmation?

24                  (No audible response)

25          THE COURT:  All right.  It appears that you're

1  correct in that regard, Mr. Galardi, and so the Court will

2  overrule the objection.

3          MR. GALARDI:  Your Honor, with respect to (m) that

4  objection of Lewisville Independent School District has been

5  withdrawn.  Your Honor, Nancy and Charles Booth's objection to

6  confirmation has been withdrawn.  With respect to (o) the Ryan,

7  Inc. objection, Your Honor, they are not prosecuting it.  I

8  think Your Honor has had a hearing on this, we've included

9  language in the plan with respect to what Your Honor had

10  already said was acceptable in light of the fact that Your

11  Honor has already said that that language was acceptable for

12  the plan.  They are not prosecuting it.  I think counsel may be

13  here, but that is my understanding.

14          THE COURT:  Okay.  Does anyone wish to appear on

15  behalf of Ryan, Inc.?

16                      (No audible response)

17          THE COURT:  All right.  It appears and the Court is

18  quite familiar with that language and that issue and you're

19  exactly correct, I have previously approved that language, and,

20  so, that objection to the extent it's still outstanding is

21  overruled.

22          MR. GAGLARDI:  Thank you.  We're now to objection (p)

23  which is the LG Electronics confirmation objection, that has

24  been resolved by a settlement agreement already approved at

25  Docket Number 7814.  Eastman Kodak's objection to confirmation

1   was amended and we'll take it up at tab (lll) which was (q).

2   (r) the Commissioner of Massachusetts, the objection has been

3   resolved.  (s) Envision Peripherals, the objection has been

4   resolved.  (t) Your Honor has approved the settlement with the

5   Customs and Border Protection objection which moots this

6   objection.  So, we can deem that to be resolved which is (t).

7   (u) is the objection of the Internal Revenue Service which has

8   been resolved.

9        And with respect to Pima County's objection, and I

10   may have messed up my taxing authorities, Pima County is in the

11   courtroom, my understanding is that they are not able to say

12   it's resolved, but they are not prosecuting the objection in

13   light of our plan amendments, I believe that's the same issue.

14   We would therefore ask Your Honor to the extent that there is

15   still an outstanding objection that it be overruled and I think

16   Pima County may actually have counsel here today.

17        THE COURT:  All right.  Does anyone wish to appear on

18   behalf of Pima County?  Yes, sir.

19        MR. WILLIAMS:  Yes, Your Honor, Jerrell William of

20   with Vandeventer and Black.

21        THE COURT:  Okay.

22        MR. WILLIAMS:  On behalf of Pima County.  For the

23   most part that is accurate, Your Honor.  We do not have -- the

24   Board of Supervisor for Pima County has not yet been able to

25   take a vote on this matter to be able to withdraw the motion.

1 So, basically we are not authorized to withdraw it.  We're not

2 really even authorized to say that we are not prosecuting it.

3 So, at most, we're just authorized to say that we are standing

4 on the motion as it is.

5       THE COURT:  All right.  Very good.  I've reviewed the

6 plan amendments, I think that it does address the issues raised

7 by Pima County and so to the extent you were offering vigorous

8 objection the Court will overrule that.

9       MR. GALARDI:  I don't think it was quite vigorous,

10 Your Honor, but we're okay.

11       THE COURT:  I said, if.

12       MR. GALARDI:  That's true.  (w) is Paramount Home

13 Entertainment's objection, that matter has been resolved.  (x)

14 is Monterey County, that objection has been resolved.  Travis

15 County which is (y), that objection has been resolved.  The

16 objection of THQ, Inc. Limited objection, that objection has

17 been resolved.

18       Now, we are to the double letters, DeSoto County,

19 that objection has been resolved.  (bb) Samsung, that objection

20 has been resolved.  (cc) Henrico County, that objection has

21 been resolved by a settlement agreement docketed at 7591.  The

22 Joinder of Apex Digital to Eastman Kodaks, that objections has

23 been resolved, even though I think we've not yet resolved

24 Eastman Kodak.  Florida Tax Collector, that objection has been

25 resolved.

32

1          Vincent Rhynes objection to confirmation, that

2   objection is going forward.  Your Honor, that objection I think

3   related to a claims objection 32 and had some vague reference

4   to 547(a) and (b) in it.

5          THE COURT:  I couldn't figure out what the objection

6   was about.

7          MR. GALARDI:  I couldn't either.

8          THE COURT:  So, I was hoping you could tell me.

9          MR. GALARDI:  Well, Your Honor, we've reached out to

10  Mr. Rhynes and, I guess, giving it the kindest interpretation,

11  (1) maybe he thinks that he was sold stock and that was a

12  fraudulent conveyance to him as opposed to us.  I -- that was

13  one of the ways I read it and I don't think that's a

14  confirmation objection, and with respect to overruling the

15  claims objection which I think was in the 32 omnibus which we

16  already have an order with respect to -- I don't think he's

17  ever sought reconsideration.  So, I guess, I've -- I don't have

18  really a confirmation objection.  I'd try to classify it as a

19  claims objection where preserving his right to assert that we

20  had a fraudulent conveyance against him and he's got a claim

21  for that perhaps.

22         THE COURT:  All right.

23         MR. GALARDI:  I can't figure it out, but it's not a

24  confirmation objection.  So, to the extent to there's anything

25  whether vigorously or not, we would ask that it be overruled.

33

1           THE COURT:  You're saying that the claim that he

2  filed in this case has already been dealt with and that I have

3  sustained your objection.

4           MR. GALARDI:  Correct.  You've already reclassified

5  his claim to an equity claim.

6           THE COURT:  I do recall that.  Okay.

7           MR. GALARDI:  And, so, the only thing I could figure

8  out with references to 547 is maybe he was trying to piggyback

9  a claim.  Now, it'd still be a purchase and sale of security,

10  it'd still be subordinate, it'd still get zero, and even if

11  it's a fraudulent conveyance I don't think you can piggyback

12  it, and I'm giving a lot of credit to a pro se person thinking

13  the way I would think if I were him.  It's still not a

14  confirmation objection.

15           THE COURT:  All right.  Does anyone wish to be heard

16  in connection with the objection filed by Vincent Rhynes?

17                (No audible response)

18           THE COURT:  All right.  That objection is overruled.

19           MR. GALARDI:  Your Honor, (gg) is DIRECTV, I think

20  that objection has been resolved.  (hh) is the Joinder of

21  Olympus Corporation, that objection has been resolved.  (ii) is

22  the Texas Ad Valoram Tax Claimants, that objection has been

23  resolved by settlement agreement, docketed at 7800.  Bethesda

24  Softworks, the objection has been resolved by settlement

25  agreement at 8424.

1          And we're now to (kk) which is the Village of Mount

2    Pleasant, Racine, Wisconsin objection to discharge.  Your

3    Honor, I don't think this is resolved.  I think the plan speaks

4    to this, there is no discharge in the liquidating case.  So,

5    that would be my first point, and I think that, you know, it

6    may just be a county authority or a village thinking that it's

7    a discharge like an individual case, filing it, we did not seek

8    a discharge for the liquidating debtors.  It is at the

9    liquidating debtors' case and, so, I think our plan is clear

10   there is an injunction, but it's not a discharge, and, so, we

11   would ask that that objection be overruled.

12          THE COURT:  Any party wish to be hear in connection

13   with the Mount Pleasant, Racine, Wisconsin objection to

14   discharge?

15               (No audible response)

16          THE COURT:  All right.  Mr. Galardi, I've reviewed

17   the objection, I agree with you and the plan does not contain

18   discharge.  So, it's overruled.

19          MR. GALARDI:  Thank you, Your Honor.  On matter (ll)

20   is the Local Texas Tax Authorities, again, the objection has

21   been resolved by settlement agreement, docketed 7800.  Lee

22   County, Mississippi, the objection has been resolved.

23          Safeco, Your Honor, this objection we had listed as

24   going forward.  I will make the representation that nothing in

25   this plan is a finding that this contract is executory or not

1 executory.  To the extent it is executory we've rejected it

2 under the plan, but, Your Honor, there's no finding and I think

3 with that Safeco will withdraw the objection.  I think counsel

4 is here.  No finding with respect to executory or not and all

5 rights are reserved on that issue should it ever come up in any

6 context.  They have filed a proof of claim, Your Honor, on the

7 belief it was not executory.

8         THE COURT:  All right.  So, it's either a claim or

9 it's an executory contract.  It's got to be one or the other,

10 right?

11         MR. GALARDI:  That's right, Your Honor, and since

12 they filed a claim I don't think they're really worried about

13 the 30 extra days for a rejection of a claim, but we're

14 confirming that by this order and nothing in the confirmation

15 order is a finding that somehow it's executory.

16         THE COURT:  All right.  Thank you.

17         MR. SAVENKO:  Good morning, Your Honor.  Troy Savenko

18 on behalf of Safeco.  Based on the representation here today,

19 Safeco is withdrawing its objection and appreciate the

20 representation by the debtors.

21         THE COURT:  Okay, very good.  So, that objection be

22 deemed withdrawn.

23         MR. GALARDI:  Thank you, Your Honor.  The next one is

24 a Joinder of Mitsubishi Digital, this objection was listed as

25 going forward.  We have resolved it with me reading into the

1  record the following language, notwithstanding anything to the

2  contrary in the plan or the confirmation order, all funds held

3  for the exclusive benefit of Mitsubishi pursuant to that

4  certain order approving settlement agreement and stipulation by

5  and among the debtors and Mitsubishi Digital Electronics

6  America, Inc., dated May 11th, 2010, shall continue to be held

7  by the liquidating trustee subject to the terms of such order

8  following the effective date.  Your Honor, essentially, we've

9  established a reserve and the reserve will continue post

10  confirmation in the hands of Mr. Siegel, the liquidating

11  trustee, and we agree to that and with that we have resolved

12  the objection with the Joinder of Mitsubishi at (oo).

13          THE COURT:  Okay.  Mr. Baxa, you wish to be heard?

14          MR. BAXA:  Yes, Your Honor.  Phil Baxa for

15  Mitsubishi.  That is the agreement, we appreciate the debtors'

16  consideration on that and with the reading of that language our

17  objection has resolved.

18          THE COURT:  Okay.  So, that objection will be deemed

19  resolved.

20          MR. GALARDI:  Your Honor, we then are at (pp) which

21  is the Joinder of Vonage Marketing, that objection has been

22  resolved.  The Joinder of Nyko Technology, that objection has

23  been resolved.  The Joinder of Slam Brands, Inc. which is (rr),

24  that objection has been withdrawn.  The Joinder of Take-Two

25  Interactive Software, that objection has been resolved.  The

1    Joinder of Stillwater Designs and Audio, Inc., that objection

2    has been resolved.  I'm now up to (uu), it is the Schimenti

3    Construction Company, that objection has been resolved.  (vv)

4    Chatham County, that objection has been resolved.  (ww) Joinder

5    of Paramount Home, that objection has been resolved.  Joinder

6    of SouthPeak Interactive, that objection has been resolved.

7    Joinder of Cokem, that objection has been resolved, which now

8    brings us to the Marlon Mondragon objection to confirmation,

9    Your Honor, there may be a couple of these on this, but I think

10   the time has come to address this.

11            Your Honor may recall that -- and they're also the

12   parties that sought the continuance, I know Your Honor is too

13   familiar with this, Your Honor, you may recall that originally

14   there was briefing on there being a pre-petition or

15   post-petition claim under the WARN Act for the termination.  I

16   think Your Honor ruled that it was a pre-petition claim and

17   there was no need for an adversary proceeding.  They have

18   objected to confirmation on the grounds that it should be a

19   post-petition claim.  There is as Your Honor is familiar from

20   the request for the continuance there may be a motion for

21   reconsideration.

22            At the same time, they have argued that if it's a

23   pre-petition claim it should be in an adversary proceeding.  We

24   don't see that as either a confirmation objection.  There is a

25   paragraph at the end of the confirmation objection that I'll

1  say is a confirmation objection which is really that the

2  exculpation clause is too broad.  With respect to that, Your

3  Honor, I'm not sure what they're concern is cause -- and I'll

4  -- we've check our law on this one, (1) nothing in the

5  exculpation would relieve the debtors of paying their claim.

6  If they're trying to say that there's officer and director

7  liability for perhaps a post-petition right because exculpation

8  -- it's our research that says that the WARN Act does not have

9  personal liability for directors and officers.  So, we don't

10 think it's a valid objection to exculpation clause.

11         So, we would ask Your Honor to overrule it to the

12 extent that it is an objection to the exculpation clause with

13 respect to post-petition conduct.  If it's pre-petition conduct

14 as Your Honor argued we're not waiving -- there is no

15 exculpation for that, it's -- the exculpation clause is

16 post-petition plus matters taken in advance of the bankruptcy.

17 So, we think that -- actually I can't say that it can't

18 possibly apply because one of things in the pre-petition

19 conduct was the store closing sales and if this was in effect

20 there is exculpation for that.  But, again, Your Honor, our

21 understanding of the WARN Act is there's no personal liability

22 for that event.  We haven't found cases that suggest it.

23         I may be giving Mr. Mondragon more than what he said

24 in the objection, but I did want to address it with the Court

25 and we think the exculpation clause is appropriate, and we

1  think the other objections are really claims reconsideration

2  which there's not a proper motion.  So, we'd ask that you

3  overrule the objection.

4         THE COURT:  Okay.  Now, does this objection -- is it

5  the same as the objection that (nnn), it's all the way at the

6  end.

7         MR. GALARDI:  I believe it is except that they have

8  been a little bit more precise on that exculpation clause.  It

9  is the same as (nnn), I just didn't see a tab to go to.  So, I

10 think we're dealing with this one and (nnn) at the same time.

11        THE COURT:  That's what my question was really.

12        MR. GALARDI:  Yes, let's just deal with them both at

13 the same time, Your Honor, because I didn't see any substantive

14 difference.

15        THE COURT:  Because they look the same to me.

16        MR. GALARDI:  Yeah.  I think it may have had an extra

17 sentence or two, but it was the same substance.

18        THE COURT:  All right.  Very good.  Does any party

19 wish to be heard in connection with the objection to

20 confirmation of Marlon Mondragon?

21                  (No audible response)

22        THE COURT:  All right.  Mr. Galardi, it does not

23 appear that there's anyone that wants to speak to the

24 objection.  The Court has reviewed the objection at Docket

25 Number 5745, as well as the objection at Docket Number 8432 and

1  to the extent they are objections to confirmation of the plan

2  those objections are overruled.

3          MR. GALARDI:  Thank you, Your Honor.  Now, we're

4  moving to the triple letters.  (aaa) is BISSELL Homecare, that

5  objection's been resolved.  (bbb) is FM Facility Maintenance,

6  that's been resolved.  (ccc) is Alliance Entertainment, that

7  objection's been resolved.  (ddd) is Twentieth Century Fox,

8  that objection's been resolved.  (eee) is Joinder of Toshiba,

9  that objection's been resolved.

10          (fff) is the objection of Warner Home Video, it is

11  listed as an objection that is going forward, Your Honor, but

12  we did receive confirmation that that objection has been

13  resolved.  I'd also note that it was a joinder to LG Paramount

14  and THQ, all of which were resolved.  So, even as a joinder it

15  probably couldn't be prosecuted, but we understand that it is

16  been resolved.

17          THE COURT:  I was going to ask you how that works,

18  but that's fine.

19          MR. GALARDI:  My view is that if it's a joinder they

20  don't get the benefit of it.  But, my understand it's been

21  resolved, so.

22          THE COURT:  All right, very good.  Does any party

23  wish to be heard in connection with Warner Home Video?

24          MR. MUELLER:  Your Honor, Mike Mueller of behalf of

25  Warner Home Video.  Mr. Galardi's representations to the Court

1  are accurate.

2        THE COURT:  All right.  Thank you, Mr. Mueller.

3        MR. MUELLER:  Thank you, Your Honor.

4        MR. GALARDI:  It's resolved, not that you --

5        MR. MUELLER:  Yes.

6        MR. GALARDI:  (ggg) is the Paramount Home, that

7  objection has been resolved.  (hhh) is Lexmark, that's been

8  resolved.  (iii) is Macerich and a number of other companies

9  with respect to real estate matters, that objection was listed

10 as going forward, but we confirmed last night that that

11 objection has been resolved, and we confirmed on the record

12 that by filing the objection they have their right of setoff

13 prior to confirmation.  So, whatever rights of setoff they've

14 preserved them.

15        THE COURT:  All right, very good.  Does any party

16 wish to be heard in connection with any of those real estate

17 matters?

18              (No audible response)

19        THE COURT:  All right.  So, that's been deemed

20 resolved.

21        MR. GALARDI:  Thank you.  (jjj), Your Honor, is

22 superceded by (kkk), (kkk) has been resolved, it's the Texas

23 Comptroller's objection.  Your Honor, that brings up to (lll)

24 which is Eastman Kodak's objection that the -- that, I guess,

25 the effective date is so amorphous or ill-defined that it's a

1   confirmation objection.  Your Honor, we don't believe that that

2   actually is a valid basis for objecting to confirmation, that

3   said in light of the CRA ruling, in light of the steps, in

4   light of the fact that the only real other conditions that I

5   know of to going effective are that we get the appropriate

6   Canadian order to allow the steps to go forward in Canada.

7        We believe that we will be going effective I'd say by

8   the end of the month at the latest, and consequently though we

9   don't agree that the conditions were so ill-defined that we

10  could not go effective, we believe that we will go effective in

11  that date.  We will send a notice and clearly if we don't go

12  effective they will have the right to come back and say we

13  haven't gone effective or something of that sort.  We'd ask

14  that you overrule that objection.  I'd don't know if counsel is

15  here for Eastman Kodak.

16       THE COURT:  Okay, and you should know and everyone in

17  the courtroom should know that as I indicated last time I have

18  had communications with Canadian Court and I am comfortable

19  with the procedures there and what's going to be going on there

20  in coordination with what we're doing here.

21       MR. GALARDI:  Okay.  Thank you.

22       MR. WESTERMANN:  Good morning, Your Honor.  May it

23  please the Court, Robbie Westermann on behalf of Eastman Kodak

24  Company.  Your Honor, that was precisely the two points we

25  raised in our objection were the -- some of the uncertainties

1  about the conditions for the plan to become effective.  We

2  certainly understand all plans have conditions to become

3  effective.  So, we were considered as to whether (a) the plan

4  would become effective and when it would become effective.  I

5  certainly appreciate counsel's representations to the Court

6  about those matters.  I don't have the authority to withdraw

7  the objection.  I certainly understand if Your Honor overrules

8  the objection because I believe that representations have

9  addressed the concerns that we raised, but I'd -- we'll stand

10  on our objection, but certainly understand if it's overruled.

11        THE COURT:  Well, and if I understood your objection

12  correctly it was basically with regard to conditions (h)

13  through (n) all of which had to do with coordinating the

14  Canadian Intertan proceedings and the ruling that we've now

15  received.  In the way the Court looked at that is it's the only

16  alternative to doing it this way was to hold those hearings

17  simultaneously, which after consulting with my colleague on the

18  Canadian bench I don't think is necessary given where those

19  proceedings are at this point in time which basically are

20  resolved and as I understand it they're looking more toward

21  procedurally just winding up those affairs there consistent

22  with what we're doing here.

23        MR. WESTERMANN:  Absolutely, and that's all -- some

24  of that information was made available to creditors and some of

25  it was not and I think when the objection was filed --

44

1  certainly we've learned a lot today, so, again, I certainly

2  understand if the objection will be overruled because our

3  points have been addressed.

4          THE COURT:  All right.  Thank you, Mr. Westermann.

5          MR. WESTERMANN:  Thank you.

6          THE COURT:  All right.  So, the Court is going to

7  overrule that objection.

8          MR. GALARDI:  Thank you, Your Honor, and then the --

9  since we've done (nnn) the Mondragon one, the only remaining

10  objection is the Douglas County Treasurer, Colorado objection

11  to confirmation.  Your Honor, again, this was an objection that

12  I think was adequately addressed in the plan with the

13  modifications to the plan to provide that, in fact, that there

14  would be the provisions with respect to priority tax claims.

15  We have not gotten confirmation from Douglas County that those

16  were, in fact, adequate and we would ask that this objection be

17  overruled on the grounds that the plan has --

18          MR. CLARK:  Your Honor, this is Robert Clark,

19  assistant Douglas County attorney.

20          THE COURT:  Would you please introduce yourself

21  again, I missed your name, sir.

22          MR. CLARK:  Yes, Robert Clark, C-l-a-r-k.

23          THE COURT:  All right.  Thank you, Mr. Clark.  You

24  may proceed.

25          MR. CLARK:  We are not satisfied that the

1  arrangements in the liquidating trust will actually at the end

2  of the day have enough money to pay our claim, and we ask very

3  simply that our super priority be acknowledged and that the

4  plan or the confirmation order provide that the miscellaneous

5  secured claims be paid in the order of their lien priority.

6  It's a pretty simple remedy.  I think it's required by the code

7  1129(b)(2)(A)(i)(I).

8        THE COURT:  Mr. Clark, let me catch up with you,

9  okay.  I've got my code open and if you could get me to that

10 passage once again, please.

11       MR. CLARK:  Okay.  It's 1129(b)(2)(A)(i) and then

12 another parenthesis, small 2.  The condition that a plan be

13 fair and equitable includes with respect to a class of secured

14 claims the plan provides that each holder of a claim of such

15 class receive on account of such claim deferred payments

16 totaling at least the allowed amount of the claim of a value as

17 to the effective date of the plan of at least a value of such

18 holder's interest and the estate's interest in such property.

19 That basically says that you have to pay out in the order of

20 lien priority, and the plan does not provide that miscellaneous

21 secured claims be paid out in the order of lien priority,

22 that's all we're asking for.

23       THE COURT:  Okay, and before I move back to Mr.

24 Galardi, let me ask you this, what assets do you have a lien

25 upon?

1          MR. CLARK:  We have a lien upon all of the -- and the

2   proceeds thereof of all the commercial personal property of the

3   debtor that was located in the State of Colorado and in Douglas

4   County on the petition date and the proceeds thereof and it's a

5   fairly small claim, it's $8,000.

6          THE COURT:  How much is the claim, sir?

7          MR. CLARK:  8,000.

8          THE COURT:  Okay.

9          MR. CLARK:  That's a round figure.

10          THE COURT:  All right.  Mr. Galardi --

11          MR. CLARK:  It's a 2008 commercial personal property

12   taxes.

13          THE COURT:  All right, and that was a pre-petition

14   claim?

15          MR. CLARK:  Yes, sir.

16          THE COURT:  All right, thank you.  All right, Mr.

17   Galardi, you wish to respond?

18          MR. GALARDI:  Your Honor, we have established

19   reserves for all miscellaneous secured claims in the full of

20   amount of the claims on the face amount.  So, we don't -- with

21   respect to the lien priority it makes really no difference if

22   there's 100 percent put aside for all of these claims, and we

23   have put 100 percent aside including for the miscellaneous

24   secured claims.

25          THE COURT:  You would say that you've satisfied that

1 | requirement under 1129(b)(2)(A)(iii)?

2 |        MR. GALARDI:  Correct because we've actually set

3 | aside adequate proceeds as of the date of confirmation for the

4 | full amount of the claim to be able to pay the claim whether

5 | it's the first claim, the second claim, reserving all rights

6 | obviously to argue whether it was actually secured or not and

7 | whether there was proceeds, leaving that aside, we've taken the

8 | face amount of that claim and set aside proceeds.  Now, I can't

9 | just say there's an $8,000 number for him particularly, but we

10 | have on the face amount of claims pursuant to our plan reserved

11 | for all of those claims.

12 |        THE COURT:  So, what you've done is you've taken all

13 | of the secured claims and the aggregate and you've reserved an

14 | amount that is sufficient to pay all of them.  So, that this

15 | $8,000 claim from Colorado is necessarily included in that

16 | amount.

17 |        MR. GALARDI:  Correct, on the affirmative claims.  I

18 | just want to be really careful on one thing.  If it was secured

19 | by a setoff there's not a set aside because that means they've

20 | already got the money held.  But, with respect to anybody such

21 | as these taxing authorities which is what we've resolved,

22 | anybody that has an affirmative claim to cash on the argument

23 | that we liquidated collateral in their jurisdiction and that

24 | their lien rode through to the proceeds, that cash is actually

25 | being set aside and bonded, according to the U.S. Trustee, so,

48

1  that the liquidating trustee will be bonded for that, but

2  that's cash set aside to pay all of those claims in full and on

3  the effective date they're there.  Now, that'll reserve rights

4  to object under the plan.  So, we think we've satisfied it.

5        THE COURT:  All right.  Mr. Clark, you wish to

6  respond to that?

7        MR. CLARK:  Looking at the various pleadings

8  including the plan and the supplemental disclosure statement I

9  can't tell whether that representation will actually pan out to

10  be true at the end of the day, whether indeed there is enough

11  cash, and the way that you eliminate that credit risk for me is

12  you follow the code and pay the miscellaneous secured claims in

13  the order of lien priority.  Then I don't have to worry about

14  whether there's really going to be enough money there or not.

15        THE COURT:  Well, Mr. Clark, if they've set aside the

16  cash in a reserve with a liquidating trustee who's bonded, why

17  isn't -- in the full amount of your claim, why aren't you

18  getting the indubitable equivalent of your claim pursuant to

19  1129(b)(2)(A)(iii)?

20        MR. CLARK:  If indeed that's true, Your Honor, then I

21  do get the indubitable equivalent.

22        THE COURT:  All right, and, Mr. Galardi, can you

23  point me to the specific provision, I've got the modified plan

24  in front of me?

25        MR. GALARDI:  Well, I'm looking for that, but I can

1 tell that the proceeds are in the liquidation analysis of 521

2 and 468, but let me see if I can find that specific provision.

3 Excuse me one second, Your Honor.

4          THE COURT:  Yes.

5          MR. GALARDI:  We will find that provision in the

6 plan, Your Honor.

7                    (Pause)

8          MR. GALARDI:  Your Honor, I'm going to turn to Plan

9 Page 27, it's Section 8, miscellaneous secured claims reserve

10 and it says, On the effective date the liquidating trustee

11 shall fund the miscellaneous secured claims reserve in the

12 amount of the aggregate miscellaneous secured claims estimate,

13 a defined term, and it shall not segregate and shall not

14 co-mingle the cash held therein and subject to the terms and

15 conditions pay each allowed miscellaneous secured claimants

16 provided in Article 2(b)1 and if there's excess cash then it

17 goes back to them.  But, that's a provision that says that it

18 will fund it and if we get the definition -- the liquidated

19 face amount of the miscellaneous secured claim which is

20 definition 1.116 means as of the effective date the liquidated

21 face amount of all miscellaneous secured claims that have not

22 been paid by the debtors.

23          MR. CLARK:  Your Honor, I think that works for us.

24          THE COURT:  All right, very good, and the Court's

25 satisfied with that too.  I'm looking at that language as we

50

1  all are.  All right.  Thank you, Mr. Clark.  then I'm going to

2  mark this as resolved then.

3          MR. CLARK:  Thank you, Your Honor.  May I be excused?

4          THE COURT:  You may be excused, Mr. Clark, and thank

5  you.

6          MR. CLARK:  Thank you.

7          MR. GALARDI:  Your Honor, that -- and then we've

8  already dealt with objection (nnn), so, Your Honor, with

9  respect to the objections, we think they've all been overruled

10  or resolved.  And with respect to the evidence, we believe the

11  confirmation is in the best interest that we've satisfied 1129

12  and we would ask that Your Honor confirm the plan and, again,

13  obviously the effective date being subject to our getting the

14  appropriate orders in Canada with the idea that we will be

15  effective by the end of this month.

16          THE COURT:  All right.  Does any party wish to be

17  heard in connection with the motion to confirm the debtors --

18          MR. GALARDI:  Well, it's --

19          THE COURT:  -- the joint plan of liquidation?  Thank

20  you, Mr. Galardi.

21          MR. POMERANTZ:  Yes, Your Honor.  Jeff Pomerantz,

22  Pachulski, Stang, Ziehl & Young -- Ziehl & Jones on behalf of

23  the Creditors Committee.  We support confirmation of the plan.

24  This, as Your Honor knows, has been a long process that

25  everyone has worked extremely hard to get to where we've gotten

1   to.  We are confident with the status of matters in Canada as

2   represented by obtaining the ruling.  We have been in close

3   contact with the monitor, tax counsel, and bankruptcy counsel

4   for the monitor, and are comfortable that the conditions to the

5   effective date will occur swiftly.

6         We are looking forward to the effective date of the

7   plan and expediting distributions to creditors who have waited

8   a long time, and on behalf of the Committee and I'm sure on

9   behalf of the debtor I wanted to thank Your Honor for your

10  indulgence throughout this process.  There have been many

11  continuances, you've pushed us along when we've needed to be

12  pushed, and we are pleased that we have gotten to this day.

13        THE COURT:  All right.  Thank you, Mr. Pomerantz.

14  Does any other party wish to be heard in connection with the

15  motion to confirm the joint plan?

16                    (No audible response)

17        THE COURT:  All right.  The Court is certainly very

18  familiar with the joint plan with the process that has gotten

19  us here, all of the fits and starts that we've had, and the

20  Court is going to confirm this plan.  The Court is very pleased

21  that we're here today.  I commend the parties in the courtroom

22  for the hard work that they've done in making this happen.  I

23  have a great appreciation for the efforts that went into making

24  this day occur and I think that this is, as Mr. Pomerantz says,

25  the best way of getting cash to creditors as quickly as we

52

1  possibly can, and I look forward to this plan going effective

2  as soon as we can make that -- through all the coordinating

3  with our Canadian brethren happen.

4        Mr. Galardi, you had mentioned that you had two

5  associates that you had brought with you today who had worked

6  on getting all of these objections resolved, could you ask them

7  to stand so I can see who they are and tell me who they are

8  again?

9        MR. GALARDI:  You can ask them to stand better than I

10 can, but I'll --

11       THE COURT:  And what are your names again?

12       MS. KUMAR:  I'm Jessica Kumar.

13       MS. BAKER:  Sarah Baker.

14       THE COURT:  All right.  Well, thank you very much for

15 your great efforts in getting this done.  Going through that

16 list of objections was daunting and Mr. Galardi did it as you

17 saw within an hour to -- thanks to your great efforts in

18 getting those matters resolved, and I, you know, having lived

19 on the other side of the bench for most of my career know how

20 difficult that is.  So, I commend you on that, and I -- as I

21 say I thank all of you for your hard work.  I'm very pleased

22 we're here today and that we're able to get this confirmed and

23 I'm going to look forward to receiving the confirmation order

24 from you.  Is there any other business we have today, Mr.

25 Galardi?

53

1          MR. GALARDI:  Not on business, thanking you as well,

2  Your Honor.

3          THE COURT:  All right.  Well, thank you all.

4                    * * * * *

5              **C E R T I F I C A T I O N**

6          I, COLETTE MEHESKI, court approved transcriber,

7  certify that the foregoing is a correct transcript to the best

8  of my ability from the official electronic sound recording of

9  the proceedings in the above-entitled matter, and to the best

10  of my ability.

11

12  /s/ Colette Meheski

13  COLETTE MEHESKI

14  J&J COURT TRANSCRIBERS, INC.   DATE:  September 22, 2010

15

16

17

18

19

20

21

22

23

24

25

**WWW.JJCOURT.COM**