UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                          .      Case No. 08-35653(KRH)
                                .
                                .
CIRCUIT CITY STORES,            .
INC., et al.,                   .      701 East Broad Street
                                .      Richmond, VA 23219
                                .
          Debtors.       .      September 27, 2010
. . . . . . . . . . . . . ..     2:04 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:           McGuire Woods, LLP
                           By:  SARAH H. BOEHM, ESQ.
                           One James Center
                           901 East Cary Street
                           Richmond, VA 23219

                           Skadden Arps Slate Meagher & Flom LLP
                           By:  GREGG M. GALARDI, ESQ.
                           One Rodney Square
                           Wilmington, DE 19899

For Marlon Mondragon:      Kantrowitz, Goldhamer & Graifman, PC
                           By:  GARY S. GRAIFMAN, ESQ.
                           747 Chestnut Ridge Road
                           Chestnut Ridge, NJ 10977

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1        COURT CLERK:  All rise.  United States Bankruptcy

2   Court for the Eastern District of Virginia is now in session.

3   The Honorable Kevin R. Huennekens is presiding.  Please be

4   seated and come to order.

5        COURTROOM DEPUTY:  In the matter of Circuit City

6   Stores, Incorporated, hearing on Items 1 through 29 as set out

7   on today's agenda.

8        MS. BOEHM:  Good afternoon, Your Honor.

9        THE COURT:  Good afternoon.

10       MS. BOEHM:  Sarah Boehm from McGuire Woods on behalf

11  of the debtors.  Just go through the agenda?

12       THE COURT:  You may.

13       MS. BOEHM:  Item Number 1 is Site A's motion to allow

14  a late claim.  This matter's being adjourned to October 27th at

15  2 p.m.

16       THE COURT:  All right.

17       MS. BOEHM:  Item 2 is Metra Electronics' motion to

18  allow a late claim which is also being adjourned to October

19  27th at 2 p.m.

20       THE COURT:  All right.

21       MS. BOEHM:  Item Number 3 is the debtors' objection

22  to Quebecor's claim.  And this is being adjourned to October

23  27th at 2 p.m.

24       THE COURT:  All right.

25       MS. BOEHM:  Items 4 and 5 will be addressed by Mr.

1 Galardi.

2            THE COURT:  Okay.

3            MS. BOEHM:  If we could skip to Item 6 which is the

4 omnibus claim objections matters.

5            THE COURT:  All right.

6            MS. BOEHM:  Item Number 6 is the debtors' seventh

7 omnibus objection to late claims.  The -- at the last hearing

8 we did advise that a stipulation had been filed.  The objection

9 deadline has run.  No objections were filed and so Omni 7 is

10 fully resolved.

11           THE COURT:  Excellent.

12           MS. BOEHM:  Items Number 7 through 9 on the agenda

13 are the debtors' eighth, ninth and nineteenth omnibus

14 objections.  Those are being adjourned to October 27th at 2

15 p.m.

16           THE COURT:  All right.

17           MS. BOEHM:  Item Number 10 is the debtors' twentieth

18 omnibus objection.  There was only one remaining claim left in

19 this objection.  It was with Audiovox.  I'm happy to report

20 that Mr. Blanks was able to settle this matter with Audiovox.

21 It's in the twentieth and the thirty-fourth omnibus objection.

22 They anticipate a settlement being filed within the next week

23 or so, so the objection deadline should run before the next

24 omnibus hearing.  But, at this time, subject to the settlement

25 documentation, we would ask that this Omni 20 as to Audiovox be

4

1  adjourned to October 27th.

2          THE COURT:  All right.  So, we'll continue that over

3  to the 27th in anticipation of having it resolved prior to that

4  time.

5          MS. BOEHM:  Thank you, Your Honor.  Items 11 through

6  15 are the debtors' twenty-second, twenty-third, thirtieth,

7  thirty-first and thirty-third omnibus objections.  Those are

8  all being adjourned to October 27th at two o'clock.

9          THE COURT:  All right.

10          MS. BOEHM:  Item 16 is the thirty-fourth omnibus

11  objection.  Again, the only remaining claimant was Audiovox, so

12  the same is with Omni 20.

13          THE COURT:  All right.  It'll be -- and we anticipate

14  resolution --

15          MS. BOEHM:  Yes.

16          THE COURT:  -- but we'll carry it over to the 27th.

17          MS. BOEHM:  Thank you.  Then the remaining claim

18  items, 17 through 28, which is the debtors' thirty-sixth,

19  thirty-seventh, forty-nine, fifty, sixty, seventy,

20  seventy-four, seventy-six, seventy-eight, seventy-nine, eighty

21  and eighty-first omnibus objections, all remaining claims are

22  being adjourned to October 27th at two o'clock.

23          THE COURT:  All right.  Now, we're continuing all of

24  these matters over to the 27th, that's for continued status --

25          MS. BOEHM:  That's correct, Your Honor.

1          THE COURT:  -- and you'll notice separately if

2    there's anything that we're going to actually hear on that

3    date.

4          MS. BOEHM:  That's correct.

5          THE COURT:  All right.  Very good.

6          MS. BOEHM:  Item 29 relates to an adversary

7    proceeding that was filed by Carmax against Circuit City.  We

8    have reached an agreement with Carmax and we're waiting on the

9    settlement documentation to be filed.  So, you'll see that the

10   answer has not been filed.  We agreed to a standstill while the

11   settlement was going on.  At this time we would ask that it be

12   adjourned to October 27th, but again, we would anticipate it

13   being resolved prior to that time.

14         THE COURT:  All right.  Excellent.  And we'll do

15   that.

16         MS. BOEHM:  Thank you, Your Honor.  That's all I

17   have.  I'll turn it over to Mr. Galardi for Items 4 and 5.

18         THE COURT:  All right.  Thank you, Ms. Boehm.

19         MS. BOEHM:  Thank you.

20         MR. GALARDI:  Good afternoon, Your Honor.  For the

21   record Gregg Galardi on behalf of the debtors.  Your Honor, the

22   fourth matter is an administrative claim filed by the Crowe

23   Horwath firm that had applied -- that had Mr. Al Siegel

24   appointed as the liquidating trustee under the plan.

25         As Your Honor may recall Your Honor entered an order

6

1  approving him as a CRO.  The fees and expenses that this

2  relates to is the period of time from which we first contacted

3  Mr. Siegel to serve in the liquidating trustee capacity through

4  the date of that order.

5        Your order provided for -- without prejudice that he

6  could seek fees with respect to that time.  During that period

7  of time as you can see from the application Mr. Siegel and

8  members of his firm were in contact with us regarding the plan,

9  the formulation of the plan as well as the committee.

10       We had agreed and it set forth in the plan that we

11  would allow an administrative expense as part of the mediation.

12  One of the things that we resolved with respect to all of the

13  professionals were the FTI that -- the Crow application.  The

14  debtors have reviewed the time and believe that it is a

15  reasonable, necessary and administrative expense under 503(b).

16  We had no objection and I believe the committee has --

17  similarly there's been no objections filed.

18       I know that it had been circulated to the U.S.

19  Trustee and my understanding is there's no objection there.  No

20  objections have been filed and, Your Honor, we would ask that

21  Your Honor approve the Crowe Horwath fee application as an

22  administrative expense in the amount set forth in that

23  application.

24       THE COURT:  All right.  Does any party wish to be

25  heard in connection with this application?

1       (No audible response)

2       THE COURT:  All right, Mr. Galardi, there being no

3  objection, the Court has reviewed the application and found it

4  to be entirely in order.  The Court will approve it and I ask

5  you to please submit an order to that effect.

6       MR. GALARDI:  Thank you, Your Honor.  Your Honor,

7  that then brings us to Matter 5 on the agenda which is, I

8  believe, Mr. Mondragon's motion for reconsideration, so I'd

9  cede the podium to him.

10       THE COURT:  All right.  Thank you.

11       MR. GRAIFMAN:  Good afternoon, Your Honor.

12       THE COURT:  Good afternoon.

13       MR. GRAIFMAN:  Good to be here.  Gary Graifman from

14  Kantrowitz, Goldhamer & Graifman, one of the counsel for the

15  movants here.  This is a motion for leave to file a class proof

16  of claim and to vacate the granting of a prior objection to the

17  individual claim which had been granted on default on the

18  twentieth omnibus objection of the debtor.

19       Plaintiffs initially filed here an adversary

20  proceeding in March of 2009 claiming violations of the WARN

21  Act.  It was a class action, or styled as a class action in the

22  form of an adversary proceeding.  That claim was litigated

23  before Your Honor as I believe Your Honor recalls up until

24  January of 2010.  And on January 11, 2010, Your Honor granted

25  the motion to dismiss and held that the matter should proceed

1 through the claims administration process in January of 2010.

2       We certainly believe that the adversary proceeding

3 when we filed it was a viable way to proceed, and indeed there

4 are cases that have allowed the WARN Act claims to go forward

5 in class adversary proceedings such as the <u>In re Protected</u>

6 <u>Vehicles</u> matter.  But, nonetheless, this matter, Your Honor

7 indicated, should go forward as a claims administration -- in

8 the claims administration process.

9       As a result of that we filed the motion for leave to

10 file a class proof of claim and to vacate the prior objection

11 which had only been an individual objection.  We believe that

12 the time for filing the class proof of claim could only have

13 arisen after the adversary proceeding was determined, otherwise

14 we would be seeking leave to file the class proof of claim when

15 we have a proceeding already pending which would've made no

16 sense.

17       We believe that a class proof of claim is indeed

18 warranted here for the same reasons we initially thought an

19 adversary proceeding perhaps would be the method of proceeding

20 with a class claim.  First of all, the course of conduct is a

21 single course of conduct on the part of the defendant which is

22 that they either provided the WARN Act notice that is required

23 for the 60 days prior to terminating their employees or pay

24 them for the 60 days or they did not within the facilities that

25 had 50 or more employees.

1   The WARN Act as passed by congress, contemplates

2 notice.  It's essentially a notice provision so that if these

3 class members did not receive notice then essentially it was a

4 violation of the WARN Act and they should've been paid.  For

5 the defendants to suggest as they may that the bankruptcy

6 notice is sufficient is not WARN Act notice.

7   If they were entitled to the WARN Act notice they

8 should receive some notice that tells that the WARN Act has, in

9 fact, been violated and they may have rights under that federal

10 act.  Right now most of the people who are in that situation do

11 not or would not know that, nor would their claims be large

12 enough for them to litigate and come before Your Honor and

13 litigate the issues as I'm sure the defendants would want to

14 litigate them.

15   THE COURT:  But, each one of them did receive notice

16 of the bankruptcy filing and they each received notice that

17 they needed to file a proof of claim, and in fact they were

18 supplied with a form for filing a proof of claim which they

19 could do even without counsel in this case.

20   MR. GRAIFMAN:  That would be the notice that the

21 bankruptcy court would allow to be disseminated.  That is not

22 the WARN Act notice.  If they have not received their WARN Act

23 notice then they should be advised of the fact that they may

24 have a WARN Act claim.  And the only way to do that is through

25 filing the class claim.

1         There would be no other way -- it's kind of -- does

2    the bankruptcy notice substitute for the actual type of notice

3    that is required under the WARN Act and we would suggest that

4    it would not.  That's why we think that a class claim in

5    addition to the fact that there's a single course of conduct

6    here which, you know, would be sufficiently and superior -- a

7    class method would be superior here.

8         I also want to note, though, that the debtors do not

9    object substantively.  They have filed an objection, but

10   there's nothing in the objection that substantively contests

11   the WARN Act process going forward as a class claim.  They make

12   some technical arguments which I'll get to in a minute, but

13   they themselves in November of 2008 before Your Honor indicated

14   that they may have WARN Act obligations and Your Honor, I

15   believe, set aside a reserve at that time at the beginning of

16   this case to comply or to make payments with respect to WARN

17   Act claims.

18        So, the defendants -- the debtors, I'm sorry, do not

19   suggest that there may not be a WARN Act claim here, at least

20   not in their objection to this motion.  And we think that that

21   should therefore require it go forward.  There's no prejudice

22   to the defendant -- to the debtors, sorry.  They have

23   indicated, I believe, that the claims process has only about

24   halfway completed so that we are in the midst of the claims

25   process right now.

1          In addition, they have told us that they have

2   information on each store and how many employees are in each

3   store and they've even offered to give us that originally back

4   at the beginning of our adversary proceeding.  And we in turn

5   have affidavits from some employees who were at facilities that

6   had more than 50 employees.

7          So, as a practical matter we think that this process,

8   if it were certified to go forward as a class claim, could be

9   done relatively quickly because of the information that we have

10  at hand and that they have at hand and that we've already

11  talked previously about exchanging.  So, I think as a practical

12  matter it could proceed.

13         The one objection that they do make is that they say

14  the prior objection was a final judgment by this Court.  And I

15  would suggest that the Court's own -- that is that the October

16  2009 granting of the omnibus objection which included one

17  objection of many with Mr. Mondragon in which they said that

18  they don't owe him any wages or salary.  They made no mention

19  or claim with respect to the WARN Act which at the time is

20  being litigated in the adversary proceeding.

21         So, we were proceeding before Your Honor in the

22  adversary proceeding.  The objection did not mention the WARN

23  Act.  Did not really by its own precise terms object to it.  It

24  was nonetheless granted.  We think that Your Honor then

25  subsequently in January of 2010 when you dealt with the

12

1  adversary proceeding and said proceed through the claims

2  process, implicitly if not explicitly overruled or modified or

3  vacated that prior generic order, if you will, with respect to

4  Mr. Mondragon by saying that the WARN Act claim, and in

5  particular should go through the claims process.

6           So, we think that certainly Your Honor would not have

7  entered that January 11th order and so stated if, in fact, the

8  October 2009 order on the omnibus objections was a, quote final

9  order, which the defendants rely on in their objection, and

10 that's essentially what their objection is.  They say it's a

11 final order and we have to meet the higher standards of

12 vacating a final order.

13          We contest and the record clearly shows this is an

14 interlocutory order and Your Honor can, even if you had not

15 implicitly overruled, vacated or modified your order in January

16 when you said proceed through the claims process, the Court

17 always has the right to do that.  And I think that, you know,

18 we have now made that application.  It's kind of a belt and

19 suspenders application just in case the January 11th, 2010

20 order is not explicitly overruling or vacating or modifying it,

21 we would ask that you do that as well as part of the order

22 granting leave to file the class claim.

23          THE COURT:  Well, the motion that you filed is one to

24 reconsider my October 8 order.  Do I have that correct,

25 disallowing Mr. Mondragon's claim that he filed back on January

1 30th of 2009?

2        MR. GRAIFMAN:  It's two parts.  It's to file a class

3 claim in accordance with Your Honor's January 11th order, and

4 it is to vacate the objection to the omnibus objections insofar

5 as it granted the objection to Mr. Mondragon's proof of claim,

6 yes.  We'd like to reinstate that proof of claim as a class

7 claim.

8        THE COURT:  You want to reinstate Mr. Mondragon's

9 claim.  Okay.  So --

10        MR. GRAIFMAN:  As a proof of --

11        THE COURT:  Let's take them in two parts --

12        MR. GRAIFMAN:  Okay.

13        THE COURT:  -- because it seems to me that there's

14 two parts to this question.  First of all, should I vacate the

15 October 8 order, and second, you know, whether there should be

16 a class, you know, certification.  And you're asking for both

17 if I understand you correctly.

18        MR. GRAIFMAN:  Correct.

19        THE COURT:  All right.  So, now, with regard to the

20 October 8 order, why are -- because you filed this motion to

21 vacate that in April.  It was like April 21st or so --

22        MR. GRAIFMAN:  Right.

23        THE COURT:  -- of this year which is about six months

24 after I entered that order, why -- number one, why didn't you

25 respond to the thirteenth omni objection to begin with, and

14

1  second, why did it take six months to come back and say, oh, by

2  the way, we'd like you to reconsider that?

3        MR. GRAIFMAN:  Well, the motion was actually prompted

4  after Your Honor determined the motion on the adversary

5  proceeding.  That's why -- which was in January when --

6  adversary proceeding that Mr. Mondragon brought for the WARN

7  Act claim was dismissed.  And Your Honor said go through the

8  claims process --

9        THE COURT:  Which he was going through at the time.

10        MR. GRAIFMAN:  Individually, but not as a -- not in

11  the class context.

12        THE COURT:  Right.

13        MR. GRAIFMAN:  Because we couldn't file by the bar

14  date the class claim for two reasons, first we had an adversary

15  proceeding pending and we needed that determined before we

16  would file --

17        THE COURT:  Well, that's a different issue.  Your

18  adversary proceeding wasn't filed until I think on St.

19  Patrick's Day of 2009.

20        MR. GRAIFMAN:  March.

21        THE COURT:  Right, March 17th.

22        MR. GRAIFMAN:  Right.

23        THE COURT:  And on that day the bar date had already

24  passed at that time, hadn't it?

25        MR. GRAIFMAN:  Yes, the bar date had passed, yes.

1           THE COURT:  Because what I adjudicated in your

2   adversary proceeding was the question about, wait a second, is

3   this a prepetition claim or a post-petition claim?  That was

4   the ultimate issue that I had to decide in that case because if

5   it was a post-petition claim then the adversary proceeding

6   would've been entirely appropriate and you could've gone

7   forward on those grounds.  If it was a prepetition claim then I

8   said, wait a second, no, we have a claims resolution process

9   here, and we ought to use that mechanism in order to resolve

10  it.

11          And, in fact, it looked to me like Mr. Mondragon had

12  recognized that because he had done both.  He had filed the

13  adversary and he had filed his proof of claim.  But, then at

14  some point in time he allowed his claim that he had to, you

15  know, not to contest that, and he allowed it just to be

16  dismissed.  And I guess that's my question is why did he do

17  that?

18          MR. GRAIFMAN:  I think what happened was, in all

19  candor, when the objection came out it simply said objection to

20  salary and wages and we didn't see it as a claim attacking or

21  addressing or challenging the WARN Act claim at that time, so

22  we did not address it as a challenge to the WARN Act claim

23  because we were litigating with them, the WARN Act claim, in

24  the adversary proceeding.  So -- and that was the reason that

25  we did not respond there until after Your Honor determined the

1  adversary proceeding.

2          In retrospect perhaps we should've done both, but we

3  had chosen our forum as the adversary proceeding forum, and

4  until Your Honor, as you just indicated, you ruled that it was

5  a prepetition claim and it should go forward in the claims

6  process, we focused on prosecuting it in the adversarial

7  proceeding.

8          THE COURT:  All right.

9          MR. GRAIFMAN:  That's really the --

10         THE COURT:  Well, I guess -- okay.  Because I have to

11  get this on some sort of procedural track as far as what I'm

12  going to be doing or such.  That's why I'm asking these

13  questions.

14         MR. GRAIFMAN:  Certainly.

15         THE COURT:  Because your adversary proceeding, if I

16  treat that as an informal proof of claim, all right, that was

17  filed, it would nevertheless been a late filed claim.

18         MR. GRAIFMAN:  Right.  And we would still need leave

19  to file it nonetheless.

20         THE COURT:  But, then you'd have to show excusable

21  neglect and all of that which you haven't done in your papers.

22  That's one of the things that counsel point out for the debtor.

23         MR. GRAIFMAN:  Well, I think we did because -- and I

24  would like to address why I think we did.

25         THE COURT:  Okay.

17

1          MR. GRAIFMAN:  First of all, the reasonable,

2    excusable neglect, I think in the <u>Computer Learning Center</u> case

3    the Court goes to great lengths to indicate that the timing of

4    when the leave to file a class proof of claim should be made

5    should relate to some contested matter.  And in this case,

6    certainly filing it three months after the determination on the

7    adversary proceeding would be the time by which it would be

8    appropriate.  And I think that would constitute -- the

9    excusable neglect is that we were waiting for a determination

10   on the adversary proceeding and when we got that we filed it.

11         THE COURT:  Okay, but that's a good point that you

12   just raised and I want to -- why three months, and where is

13   that in the code that says you'd get a three-month, you know,

14   time period to now bring it even if we're going to say it's the

15   termination of the adversary proceeding?  You know, why didn't

16   you do it, a motion to reconsider right then within ten days

17   like -- or 14 now as the rules would allow as opposed to

18   waiting the three months?  Where in the rules do you see three

19   months?

20         MR. GRAIFMAN:  Well, I think the rules don't limit

21   the time period if -- the way I read them under the <u>Computer</u>

22   <u>Learning</u> case.  I think it says that the Court may grant it,

23   you know, at any time.  You can't delay it so that it

24   prejudices the debtor is the way the case discusses it.

25         And I think as Your Honor knows in the <u>Computer</u>

18

1    Learning case it was filed four years after the bar date, and

2    it was filed years after the estate actually closed.  And the

3    Court mentions that the debtor has thrown away all its papers.

4    It doesn't have any identification of its employees or any

5    other contacts or witnesses.  Clearly there is prejudice.

6         I think the standard is whether there's prejudice,

7    and certainly three months would not give the defendants here

8    grounds to raise the prejudice for the 90-day difference or

9    100-day difference, whatever it was.  Here the claims process

10   is still proceeding.  They are well-aware of the fact that we

11   had -- this did not come out of nowhere.  We had been

12   litigating the adversary proceeding.  They were aware that this

13   claim was on the table.

14        There's no way -- by the way, their papers don't even

15   assert that they are asserting prejudice.  They do not even --

16   I don't believe they used that word.  They cannot assert that

17   they are prejudiced by the delay in this case of a mere 90 or

18   100 or whatever it was days after the order.

19        In hindsight we'd like to bring claims as soon as we

20   can, and in this case I think we had to regroup to figure out

21   what our next step was given -- do we bring the motion for

22   relief for class claim or do we also add the motion to vacate

23   the objection because we had that other little issue to deal

24   with?  So, you know, I think that given the issues and the

25   complexity, I would submit that that would not prejudice the

19

1  defendants -- excuse me, the debtor, in any manner in this

2  case.

3       THE COURT:  All right.  Well, now, the other thing

4  I'd like you to address now is the class certification issue.

5  The -- I assume that you're familiar with the memorandum

6  opinion that I entered in this case in May of this year, I

7  think it was on May 28th, that denied class certification for a

8  number of California plaintiffs.  And I went through sort of

9  three reasons that I announced there, one of which is not

10 applicable to your case because in your case everybody got

11 actual notice, and in there we were dealing with an issue of

12 perhaps some -- when we got publication notice.

13      But, in that case I refused to certify a class,

14 saying that, you know, number one, it was late filed because

15 they missed the bar date, and number two, that the claims

16 resolution process in bankruptcy was far superior to the class

17 litigation process that they were asking me to implement there.

18 And I'd like you to address both of those issues in the context

19 of your case if you would, please.

20      MR. GRAIFMAN:  Yes.  I think that that -- in that

21 case you were dealing with a California statute, if I recall.

22 Here we're dealing with the Federal WARN Act which, as I

23 mentioned before, first of all, has -- it's essentially a

24 notice provision that requires a certain type of notice which

25 we think has been violated here.

1          So, I think that the issue is notice and what kind of

2     notice and we think that the general notice in the bankruptcy

3     court would not constitute the type of notice that would allow

4     people to understand that they have WARN Act claims here.

5     However, the claim in the other case where they missed the bar

6     date as I indicated here, we have been actively litigating this

7     in the adversarial proceeding and I think that's also a

8     difference between our case and their case where Your Honor has

9     in the January 11, 2010 order indicated we should go through

10    the claims process, and that's when we turned the prosecution

11    of this case to the claims process.  So, I think that there's

12    an important distinction between our case and that case.

13         THE COURT:  Well, when I say that, and I say go

14    through the claims resolution process, why doesn't that mean on

15    an individual basis that each individual can file its claim and

16    pursue its WARN Act claim?  Because each individual has that

17    claim and they can do it without counsel.  They can just file

18    their claim in the ordinary course.  It'll be either allowed or

19    disallowed for whatever reason in the bankruptcy context.

20         MR. GRAIFMAN:  Right.  I was just dealing with the

21    actively litigated aspect of it, but you're correct.  I think

22    that there's a few differences with regard to this.  First of

23    all, the WARN Act, I don't -- I have to say I don't know the

24    California statute or law that was at issue in that case, but I

25    know that the --

21

1          THE COURT:  I can't help you.  I don't know that I

2   remember it anymore either, but at one time I read it.

3          MR. GRAIFMAN:  But, the WARN Act is a complicated

4   statute and I think that the class members here would not be

5   able to determine themselves whether they have a basis for a

6   WARN Act claim, what constitutes a basis for a WARN Act claim

7   and that they should file for it or how it's computed.  It's a

8   little more complicated than just your normal kind of, you

9   know, I work these number of days and I'm entitled to salary.

10         It's based on the statute and I think that as the

11  Court in the Protected Vehicles case found in the South

12  Carolina Bankruptcy Court, that it lends itself to a class

13  filing, be it in an adversary proceeding as there or here and a

14  class proof of claim, because of the complexity of the claim an

15  individual is not likely to be able to understand it, compute

16  it or know that he has a claim under the WARN Act without some

17  sort of class mechanism here.  That's the way the cases in my

18  understanding seem to go where there have been class claims,

19  they have been able to file them.  Without them they have not.

20         The other thing is that these claims -- I don't

21  believe each individual will have a very large claim here, and

22  I don't know if -- the size of the claim I believe here would

23  be small on an individual basis, and therefore I don't know if

24  an individual would have the economic ability or wherewithal to

25  file the claim without aggregating these claims at least to --

1  you know, to one larger claim.

2          So, I think that that is a difference as to why this

3  case should proceed where the other one hadn't.  As far as the

4  technical bases for a class claim, I think we do set that out

5  in our brief with, you know, numerosity, typicality and all of

6  those other things.  Unless Your Honor wants me to -- I won't

7  necessarily go into them, but you asked a specific question --

8          THE COURT:  I've read all of your papers.

9          MR. GRAIFMAN:  Yes, about why this is different than

10  the other Circuit City class issue before you which I had read

11  and understood and believe there is a distinction as I

12  indicated.

13          THE COURT:  Okay.  Anything further?

14          MR. GRAIFMAN:  No, unless Your Honor has any other

15  questions.

16          THE COURT:  All right.  Thank you very much.

17          MR. GRAIFMAN:  Thank you very much.

18          MR. GALARDI:  Your Honor, what I'd like to do is just

19  start with a chronology of some events and then address why I

20  think why this claim should be denied.

21          Your Honor, just for the record, the bar date was set

22  as -- on January 30th, 2009.  They filed a claim on January

23  30th, 2009.  Now, the document that I got from the gentleman

24  only had a proposed class action claim, so I'd like to hand up

25  to Your Honor and introduce into evidence.

23

1          THE COURT:  Thank you.

2          MR. GALARDI:  So, I don't know if Your Honor had

3     reviewed this, but the first thing I'd like to do is to move

4     into evidence the actual claim filed by Mr. Mondragon by the

5     bar date which is filed as Claim 8381.  You'll see that number

6     at the top.  You'll see the signature of his attorney, but most

7     importantly if you look at the total amount of the claim in

8     Line 4 it's asserted as a priority claim in the statutory cap

9     of $10,440.  It also says it's a claim for wages, salaries,

10    commissions, and nowhere in this proof of claim does it say

11    anything about a WARN Act liability or a claim on behalf of

12    anybody or anything else.  It's simply an individual claim for

13    wages.  That was filed on January 30th.

14          Your Honor, as Your Honor mentioned I think it was

15    St. Patrick's Day.  On March 17th, '09 they filed the adversary

16    proceeding.  Your Honor can take judicial notice of the date.

17    That was two and a half months after the bar date.  Your Honor

18    may recall that we moved to dismiss for a more definite

19    statement with respect to that.  And then on 7/8/09 they filed

20    an amended complaint asserting the same class action.

21          After that was filed, Your Honor, on August 20th of

22    '09 we filed the thirtieth omnibus objection on the basis that

23    this particular claim, Claim Number 8381, we did not have any

24    liability for wages or anything else with respect to Mr.

25    Mondragon.  Our records were such that there was no wage claim

1  that he had.

2         Important date was, that was August 20th, '09.  Four

3  days later on August 24th, '09 we moved to dismiss the

4  adversary complaint at the same time.  They filed an answering

5  brief with respect to the motion to dismiss on September 11th,

6  and the deadline for objecting to the omnibus objection was

7  September 15th, four days after they filed the answering brief,

8  and they did not respond to the thirtieth omnibus objection.

9  We filed a reply brief in the adversary proceeding on September

10  25th.

11         And, Your Honor, it is important that we contested

12  both their ability to proceed as a -- on a post-petition claim,

13  but we also disputed the underlying liability and actually made

14  a motion to dismiss saying they couldn't state the grounds for

15  the WARN Act.  Your Honor decided it on a different matter, but

16  we've always contested the WARN Act liability.

17         THE COURT:  And I was aware of that.  I had made

18  reference actually in my memorandum opinion to alleged

19  liability --

20         MR. GALARDI:  Right.

21         THE COURT:  -- that -- but for purposes of my ruling

22  I had to assume it was correct and the motions were dismissed.

23         MR. GALARDI:  Correct, Your Honor.  So, all of the

24  briefing was done on the adversary proceeding, and then on

25  October 8th Your Honor entered an order on the thirtieth

25

1  omnibus objection.  Moreover, Your Honor, seven days later it

2  is required.  10/15/09 we served the omnibus order on Mr.

3  Mondragon.  That could be found at Docket Number 5225 and we'd

4  ask Your Honor to take judicial notice of that certificate of

5  service of the omnibus order.

6       Nonetheless, Your Honor, and then -- so that's

7  October 15th.  There's an October 8th order on the objection to

8  the individual claim, the only claim that was on file.  Your

9  Honor then had pending before it from September 25th all the

10 briefing, and on 1/11/10, I think actually 1/11/9 (sic) you

11 filed it and then you filed a corrected memorandum opinion with

12 dates.  On 1/11/10 you entered the memorandum opinion on the

13 adversary proceeding, and notwithstanding that Your Honor got

14 the date right.  On April 21st, 2010 they seek reconsideration

15 of the thirtieth omnibus objection and the right to file a

16 class proof of claim.

17       Your Honor, with respect to all of this -- so let's

18 take first the proof claim.  The original proof of claim did

19 not assert a WARN Act claim.  So, it only asserted an

20 individual claim with respect to the individual.  It simply

21 asserted a priority claim.  Didn't say whether it was

22 prepetition or post-petition, but it did say it was entitled to

23 priority, and again, that's --

24       THE COURT:  Which you had assumed would be a

25 prepetition claim, and why couldn't that be for a WARN Act type

26

1 of damages?

2         MR. GALARDI:  Well, it could've been --

3         THE COURT:  I mean, because through damages that you

4 would get paid under the WARN Act would be for wages, salaries

5 or commissions, and if -- you know, if they were only claiming

6 it up to the priority amount maybe that's all they wanted or

7 they thought that it was within that range.

8         MR. GALARDI:  Well, Your Honor, there's two problems

9 with that.

10         THE COURT:  Okay.

11         MR. GALARDI:  One, as you may recall, Mr. Mondragon

12 continued to be employed post-petition.

13         THE COURT:  Yes, he was terminated on the 31st.

14         MR. GALARDI:  So, around December 31st.  So, if it

15 was really a prepetition claim I'm not sure how he would've had

16 outstanding at that time, such an amount of ten, four, four,

17 zero and be a priority unless he was already conceding it was

18 prepetition which we know from his complaint that he didn't.

19 But again --

20         THE COURT:  But, I held later on it was prepetition

21 and that, you know, if he was entitled to notice, you know,

22 maybe the -- because I think that the parties had stipulated

23 that notice was given on November 2 --

24         MR. GALARDI:  November 2 we made the announcement.

25         THE COURT:  -- and so he missed it by one day.  So,

27

1  you know, and maybe one day was less than $10,000 worth of

2  damages.

3          MR. GALARDI:  And, Your Honor, if it were just his

4  individual claim for a Warren liability, yes, I think you could

5  construe this to be his individual claim for a WARN Act claim,

6  prepetition, subject to priority in a maximum amount of ten,

7  four, four, zero.  That I think you can do.

8          THE COURT:  Well, how else could I construe that?  I

9  mean --

10          MR. GALARDI:  Well, I mean, I did construe this claim

11 as simply that he thought he had additional payments that were

12 not paid as wages that we missed, just a part of an accrual.  I

13 mean, that's what normally employees file.  But, it wouldn't

14 matter.  Our records show we didn't have a liability, so if we

15 wanted to reinstate it.

16          So, the first aspect is, he filed a proof of claim.

17 He did not contest the objection.  And on the individual claim

18 which we think we have no notice of this being a class claim,

19 that that was disallowed.  So, then we go to the adversary

20 proceeding, and the adversary proceeding clearly did assert a

21 class claim.

22          Your Honor's ruling is -- believe quite clear with

23 respect to the <u>Gentry</u> matter, even if you construed it as an

24 informal proof of claim, one, as Your Honor's already pointed

25 out, it's late by three months, two and a half months, second,

1   as Your Honor ruled in the <u>Gentry</u> matter, in order to file a

2   class proof of claim you have to be the authorized

3   representative to file the claim.

4          And then there comes the timing which I happen to be

5   now briefing in the district court as to when do you file a

6   7023 motion.  Your Honor has ruled, as has other courts, that

7   quote, The contested matter, the stage at which to apply a 7023

8   is the date on which you file the proof of claim.  There was

9   no -- and again, I'm just sort of rehearsing my <u>Gentry</u> brief

10  for the district court affirming your decision, but it's the

11  following.

12         It says, "If you're the authorized representative

13  there's only two ways to be an authorized representative under

14  the law."  You could have the express authorization, and I

15  could see two ways.  They could've given him an agency

16  agreement.  We don't have that.  They could've been certified

17  as the class action plaintiff ahead of time by another court

18  and we'd have to recognize that.

19         But, if you don't have those two ways then to file a

20  claim at that stage of the proceedings you had to be the

21  authorized representative.  There's only other one avenue, a

22  motion under 7023.  They didn't file a motion under 7023.  They

23  didn't file it before the bar date.  Indeed they haven't filed

24  it to date, but unless -- even if you wanted to construe the

25  adversary proceeding as a -- not only an informal proof of

29

1  claim, but an informal request to file a 7023 motion, it's

2  still not at the stage of the proceeding and there was not a

3  request to proceed under 7023 and file the claim, so it's

4  untimely on that basis, as well.

5           Your Honor, also let's take now -- so the first thing

6  is it's untimely.  There's no excusable neglect, Your Honor,

7  and we do, in fact -- we have always asserted prejudice, Your

8  Honor, as Your Honor has ruled, to now certify a class, and I'm

9  not even getting through the sections on certifying classes.

10 The prejudice is, you would -- if -- let's -- and in this case

11 better than the Gentry, as Your Honor has already pointed out,

12 all of these employees were employees as of the petition date,

13 so they all got notice of the bar date.

14           THE COURT:  So, we don't have that issue like we did

15 in Gentry?

16           MR. GALARDI:  We don't have a notice issue.  They've

17 got actual notice.  They got notice that this Court approved as

18 adequate notice for people to file proofs of claim.

19           THE COURT:  What Mr. Mondragon's counsel says is

20 that, well, yes, but that's not the WARN Act notice which they

21 were required to receive and that they were entitled to some

22 other notice and that this notice therefore was somehow

23 defective.

24           MR. GALARDI:  Well, they slip between two issues.

25 The whole claim is that we didn't give WARN Act notice, so to

30

1 now give WARN Act notice, we're never trying to do that.  The

2 question is, is the notice of a bar date adequate to say if you

3 think you have a claim for the failure to receive WARN Act

4 notice please submit your claim now.

5        What his argument is, is not only do we have to give

6 the generic proof of claim notice, but we have to tell you, oh,

7 by the way, this group of employees, you may have a claim under

8 the WARN Act for a failure to give what you think is adequate

9 notice, and therefore you should put in a claim.  That's not

10 the proof of claim law.  You don't go out to potential

11 plaintiffs and say, by the way I think you might have a claim

12 here, you might have a claim here, you might have a claim

13 there.  And --

14        THE COURT:  And, in fact, we address that in <u>Gentry</u>

15 if I recall.

16        MR. GALARDI:  We address that in <u>Gentry</u>, we're

17 addressing it here, and again, one of the objections that we

18 have here is that that's essentially a collateral attack on the

19 bar date notice which is why you need to make these motions and

20 seek such relief prior to the bar date because if there was an

21 objection that the notice should be more specific we could deal

22 with it, but now your bar date order which is not under

23 reconsideration or appeal is a notice that they would've had to

24 have challenged.

25        Again, we think we would've met the constitutionally

31

1   adequate standard because we gave actual notice.  Indeed I can

2   argue that it would be quite confusing to give all the

3   employees -- well, you may get WARN Act notice and you may have

4   the statutory time and labor and there may be somebody else out

5   here.  The whole point of the bar date notice is to give

6   specific date that if you have any claim, and claim is defined

7   as any contingent or possible right to payment, whatever it is,

8   put it in.

9          So, there will be prejudice here because if they do

10  proceed and they were to have 7023 relief and we don't say that

11  there's a class that can be certified, but even if Your Honor

12  went to 7023 and looked at it, there's clearly prejudice at

13  this point because we don't believe the employees -- two

14  things; (1) if they already put in a claim for this sort of

15  thing it's already before us and we can address it.  If they

16  haven't put in a claim it's prejudicial because it'll be a late

17  filed claim and Your Honor has already said, in again, the

18  Gentry opinion, that by essentially extending the bar date for

19  individuals in the class that didn't file the proof of claim.

20  And that is prejudicial to the debtor.  So, either they've

21  already met the standard or not.

22         So again, we come back to the simple fact that if

23  they sought to file a class claim or pursue this, (1) they

24  should've done it before the bar date to be the authorized

25  representative or had this Court designate them to do that, and

1  then (2) had they done that they could've given whatever notice

2  they thought was appropriate and addressed it in this matter.

3  They didn't do that.  We have had a class action here and we

4  addressed that claim and we settled it and it's one of our

5  unsecured creditors.  Everyone else we have actually opposed.

6        So, Your Honor, we think based on all of the

7  standards that Your Honor has, (1) already ruled on, (2) on the

8  fact that no answer for excusable neglect has been given with

9  respect to not responding to the objection, no standard on 7023

10 as to why that motion was not filed timely before the bar date,

11 Your Honor, we would ask that Your Honor deny the request for

12 reconsideration of disallowance of the claim.

13        There's been no answer adequate to why this

14 particular individual claim was not timely, sought for

15 reconsideration or reviewed.  We served the order.  They had

16 the objection.  They never responded.  And in addition we see

17 no basis for granting the belated request to have a 7023 motion

18 for a class now granted when there wasn't even an adversary

19 proceeding.

20        And I understand the informal proof of claim, but the

21 adversary proceeding was not before the bar date.  And in

22 formal proofs of claim you do try to bootstrap it in, but

23 they're always before the bar date.  This is still two and a

24 half months after.  So, even as an informal proof of claim and

25 even as an informal request under 7023, there is simply no

1   grounds to allow a class proof of claim to be bootstrapped back

2   to the bar date.

3        THE COURT:  All right.  Now, if you would address for

4   just a moment this proof of claim that you've handed up, the

5   individual proof of claim.  And let's put aside the whole issue

6   of class certification because this proof of claim does not ask

7   for that, deal with it or anything of that sort.

8        But, if we look at just Mr. Mondragon's proof of

9   claim, and he asks for priority up to $10,440, and I disallowed

10  that claim back in October, but then in the memorandum opinion

11  that I issued in January of this year, I said, wait a second.

12  He should pursue his claim under Part 3 of the bankruptcy

13  rules.

14        And of course now his counsel is saying, well, that

15  gave him the right then to resurrect this proof of claim and I

16  should reconsider for that reason, even applying the standard

17  under Rule 60 incorporated by Rule 9024 or by 2000 Section

18  502(j), this individual proof of claim, and allow him to

19  proceed forward.  Why can't I do that?

20        MR. GALARDI:  Well, I guess I'm going to -- I hate to

21  ask the Court a question to answer your question, but I will

22  anyway.  Are you --

23        THE COURT:  Maybe I'm confused, so go ahead.

24        MR. GALARDI:  Well, the first question is, are you

25  asking why can't this Court, or why do I believe the Court

34

1 should not take the memorandum opinion and say, I said that

2 they could pursue it in an individual claims process.  And now,

3 do you mean proceeding on the 10,440 claim or proceeding on a

4 class action proof of --

5         THE COURT:  Just the 10,440 claim.  And the reason I

6 say that is, when I wrote the memorandum opinion, and I don't

7 have any specific recollection of this at this point in time,

8 but, you know, it seems to me that obviously I thought the

9 claim was still there.  I was aware that a proof of claim had

10 been filed by Mr. Mondragon and that it had been filed timely

11 in its individual capacity.  And I thought that that's what I

12 was addressing and that he needed to go forward with that proof

13 of claim.  I wasn't aware -- I don't think I was aware when I

14 wrote the memorandum opinion --

15         MR. GALARDI:  No, Your Honor --

16         THE COURT:  -- that his claim had already been

17 disallowed.

18         MR. GALARDI:  Well, and I think in fairness to Your

19 Honor that's why I wanted to go through the time frame because

20 I figured Your Honor would ask me exactly that question and I

21 wanted to go through in my own mind.  The briefing was done,

22 but because it was the end of the year, Your Honor, at the time

23 we left the hearing and all the briefing, he had a live claim.

24 So, I understand why Your Honor, in the opinion, never thought

25 that maybe an order had been entered, and again, omnibus order

1  disallowing it.

2          So, Your Honor, the question I have in your own mind

3  is really one, when you put in your memorandum opinion go forth

4  on the proof of claim, I'm sure Your Honor didn't consider it,

5  but you could correct me, well, I don't know what his actual

6  proof of claim is, but I know we've talked about it in a

7  certain matter, then, you know, were you intending to say it

8  doesn't matter?

9          Let's assume he had no proof of claim or let's assume

10 it was disallowed, that he didn't have to protect his rights

11 with respect to that underlying proof of claim and that he

12 didn't have to do anything after October 8th.  It would be my

13 view that what Your Honor was saying is, okay, let the chips

14 fall where you may on your proof of claim.  If you've protected

15 it go forth on it.  If you didn't protect it, don't go forth on

16 it.

17          So, I come back to, was there from October 8th or

18 even after 1/11/10, the first -- when your opinion entered, is

19 there excusable neglect to wait three months and ten days from

20 the first to come back and say now I need to reconsider that?

21 And what's the reason he's giving to reconsider it?  Well,

22 three months isn't that long.  That's not excusable neglect.

23          So, even if on 1/11 Your Honor said go ahead and do

24 that.  Let's assume by happenstance the order that we had on

25 the omnibus objection was entered on 1/12.  He waits three

36

1  months.  I leave it to Your Honor to determine whether that's

2  excusable neglect.

3        He's given no reason for why he did not come back and

4  seek reconsideration.  He's given nothing other than, well, we

5  didn't think we had to.  That's not excusable neglect under the

6  standard that this Court has applied, so I could understand it.

7  If he had acted promptly -- would I have a different matter if

8  he had acted by the end of January?  Yes.

9        I could say, okay, maybe you didn't understand, maybe

10 he's not sophisticated in bankruptcy, maybe your claim was

11 disallowed, maybe you thought we'd wait here.  I can see it.

12 But, I can't see three months, ten days through a confirmation

13 hearing now, you know, and then waiting to have the hearing and

14 we know we had the objection, but 4/21?  Again, if it was an

15 unrepresented party I'd feel more sympathy.  I'm sorry.  I just

16 don't -- with a lawyer who's been litigating in the court,

17 waiting three months, ten days after an order and six months,

18 13 days since an actual order was entered and served on the law

19 firm to have waited, I just don't see a case for excusable

20 neglect.

21        Your Honor, would pursuing a $10,440 claim in this

22 case cripple the estate?  No, if that's all it was.  But again,

23 Your Honor has disallowed many claims in this case that were

24 late filed.  And just because I may be sympathetic to the

25 individual and just because procedurally there may have been

37

1  other things going on, I don't see any excusable neglect after

2  January 11th, 2010 to avoid it three months and ten days to

3  seek reconsideration.  And it's not just reconsideration, it's

4  filing a class proof of claim, and that clearly would be

5  prejudicial to us.

6          THE COURT:  All right.  Thank you.

7          MR. GALARDI:  Thank you, Your Honor.

8          THE COURT:  Do you wish to respond?

9          MR. GRAIFMAN:  (Indiscernible)?

10          THE COURT:  You may.

11          MR. GRAIFMAN:  First of all, counsel says that filing

12  of the 723 motion should've been made by the bar date.  I beg

13  to differ.  The case <u>Certified Class v. Charter Company</u> which

14  is an 11th Circuit case which was cited with approval by the

15  <u>Computer Learning Center</u>'s case specifically said that, "Until

16  and unless there's a contested matter the 723 motion should not

17  be made," that is relief from filing a class claim.

18          And in <u>Computer Learning Center</u>, the Court in citing

19  that case, says "Rule 9014 establishes no deadline for the

20  filing of a Rule 7023 motion."  In fact, it provides that quote

21  within quote, The Court may at any stage in a particular matter

22  direct that one or more of the other rules in Part 7 shall

23  apply.  Period, close quote, close double quote.

24          So, for counsel to stand up here and say that the bar

25  date is the date that the motion should've been filed, it's

38

1  contrary to the law.  That is not the way the law reads.  When

2  Your Honor decided the motion on the adversary proceeding, a

3  contested matter, that was the time for filing the class proof

4  of claim.  So, we vehemently beg to differ on counsel's

5  characterization of the timing of that.

6       With regard to the prejudice, again, I haven't heard

7  any prejudice.  In fact, I almost heard counsel concede that,

8  well, with respect to Mr. Mondragon's case it would not cripple

9  the estate if his claim was allowed.  So, certainly with regard

10  to Mr. Mondragon's claim there was an admission up here just

11  now that there is no prejudice for filing that claim now.

12       With regard to the class claim, I mean he did say,

13  well, we would be prejudiced, but I didn't hear any basis --

14  real basis for saying that.  I mean, how many people are we

15  talking about that may have a class claim here?  There are

16  eight facilities with, you know, at most 50 people in each of

17  these -- about 50 people in each of these stores, so, I mean,

18  that would be the maximum number.  I do not believe that the

19  class claim here would in any way prejudice the debtor, and I

20  haven't heard anything from counsel on that when he was up

21  here.

22       THE COURT:  I don't have any claim that was filed

23  within -- before the bar date with regard to the class claim.

24  I mean, you know, in the Gentry case --

25       MR. GRAIFMAN:  Yes.  Right.

1          THE COURT:  -- I had people that had filed class

2     claims -- who purported to file class claims without bringing

3     on the 7023 motion before the bar date.  They actually filed

4     the class claims with the Court.  And there I said, well, wait

5     a second, you weren't authorized to file the class claims

6     because you never got your 7023 authorization.

7          MR. GRAIFMAN:  Right.  You need the 7023

8     authorization before you can do that.

9          THE COURT:  Right.

10         MR. GRAIFMAN:  Yes.

11         THE COURT:  But, you -- nevertheless you -- and I

12    said that it was untimely there because the bar date had

13    passed.  Here we have no claim that was filed within the bar

14    date.

15         MR. GRAIFMAN:  But, as I believe the cases say, the

16    date by which you can bring the 7023 motion is not the bar date

17    for filing proofs of claim.  It is the date by which a

18    contested matter is determined, and that would be in this case

19    the adversary proceeding.  I don't know if the Gentry case had

20    an adversary proceeding.  It was dismissed before Your Honor.

21    I don't know the procedure, but it would seem to me that that

22    would be the timing in this case by which the 7023 motion

23    should be made.

24         And I agree with counsel to the extent he says that

25    before we can file the class claim we need to get the 7023

1  motion determined.  The cases are clear on that that we need to

2  have leave to file a class proof of claim in order to be

3  authorized, if you will, to do so.  But, when is the time to

4  bring that claim?  And obviously we have a big difference and

5  I'm relying on the <u>Computer Learning Center</u> discussion and the

6  circuit court cases that it relies on.

7          I don't know what counsel's relying on because I

8  haven't heard any cases that he cited, but it seems to me the

9  cases I've cited are very clear, and I've used them as my

10 instruction as to when to file this claim.  And that's why we

11 did not file the WARN Act class claim while the adversary

12 proceeding was pending because we needed to have that

13 determined before we can make the 7023 motion to get the

14 authorization.

15         And we believe we followed Your Honor's instruction

16 when you said to proceed through the claims allowance process.

17 We didn't assume that you would grant the motion to file a

18 class claim, but we certainly believed that was the time to

19 file it.  We shouldn't be barred because of the timing issue.

20         THE COURT:  All right.  So --

21         MR. GRAIFMAN:  If Your Honor finds no merits to the

22 claim that's another story obviously.

23         THE COURT:  So, what you're saying is that you don't

24 think that the bar date is applicable to class claims?

25         MR. GRAIFMAN:  Yes, I don't believe it is applicable

to a 7023 motion for relief to file a class claim as in the

Class v. Charter case and the Computer Learning Center courts

have held.

THE COURT:  Okay.  Anything further?

MR. GRAIFMAN:  No, Your Honor.

THE COURT:  All right.  Thank you.

MR. GALARDI:  Your Honor, just three brief comments?

THE COURT:  You can't help yourself?

MR. GALARDI:  I can't just because I want to make --

even if Your Honor sees fit to reinstate let's call the

individual claim, obviously we don't agree with the amount, so

it can't be reinstated and allowed as the gentleman said, and I

just wanted to make that clear.  Given that Your Honor's

already teased me about can't help myself I'll sit down with

that.

THE COURT:  Thank you.  All right.  The -- as Judge

Merhige whom this courthouse is named used to say, "Snatching

defeat from the jaws of victory," the Court's going to deny the

motion of the -- of Mr. Mondragon to reconsider his claim in

the Court's order of October 8, 2009.  The Court's going to

also -- and I'm going to do that just from the -- on the basis

that I don't find that there's any excusable neglect nor any

other reason under Rule 9024 incorporating Rule 60.

And I don't think there's any grounds under Section

502(j) which -- courts have applied that same standard in

1  determining whether to vacate a previous order allowing or

2  disallowing a claim.  So, finding that there is no excusable

3  neglect or any other reason to do it the Court's going to deny

4  that.  With regard to the certification of a class or class

5  action the Court finds that there is no proof of claim, class

6  or otherwise that would relate to that.

7         And most definitely the bar date -- the claim had to

8  be filed before the bar date and we would stand bankruptcy

9  jurisprudence on its head if I were to rule otherwise.  We've

10 got to have an orderly process for resolving these claims in

11 the bankruptcy case.  And for all I know we've got all of these

12 claims already in the pipeline that we're going to address one

13 way or the other because all of these parties received actual

14 notice of the claim.

15        I don't think that there was any other notice that

16 they were entitled to receive or anything else.  The Court has

17 already approved the form of the notice, that is a final order

18 that has not been appealed, and so the form -- the notice was

19 served on all of these individuals pursuant to that order.  So,

20 for all of those reasons the Court is going to deny the relief

21 that's been requested here today and I'm going to ask Mr.

22 Galardi if you would please prepare the order and submit that

23 for the Court's consideration.

24        If Mr. Mondragon wants to appeal the Court's ruling

25 today he's certainly entitled to do that.  He has 14 days from

1 the date that the order is entered in order to note the appeal.

2 And I say that just because we've missed some dates critical in

3 this case.  I think we need to be aware of what the dates are.

4       If you are going to appeal then I would ask you to

5 please give the Court the courtesy of letting me know just so

6 that I can prepare a memorandum opinion for the district court

7 to let the district court know the Court's reasoning and I'll

8 make formal findings and conclusions pursuant to Rule 7052.

9 Otherwise I don't intend to write a memorandum opinion on this

10 matter and the Court's oral statements will suffice for my

11 findings and conclusions.

12       Any questions regarding the Court's ruling in this

13 regard?

14                (No audible response)

15       THE COURT:  All right.  And I thank you both for your

16 very capable presentations.  Mr. Galardi, if you could come

17 back to the podium.  I do have other questions I wanted to ask.

18 You probably know what it is.

19       MR. GALARDI:  Your Honor wanted to know why I'm here

20 and the effective date has not occurred.

21       THE COURT:  Well, I knew that just for the fact that

22 you were here and you're making the arguments and it's always

23 good to see you back in the courtroom, but the question that I

24 had was, when do we expect this to go effective?

25       MR. GALARDI:  Your Honor, we had actually hoped that

44

1   it would be effective now.  It's a little bit unclear and I

2   don't know if Mr. Pomerantz or Mr. Feinstein is on the call.

3   Here is my understanding.  They're having -- they're trying to

4   get to Justice Morawetz a date.

5           There is no impediment to going effective other than

6   getting the Canadian monitor to be able to put the report in

7   and actually get a date.  Judge Morawetz was on vacation.  His

8   calendar has been booked.  I spoke to Canadian counsel this

9   morning.  They said they would try to take care of it.  There

10  is not a concern that we would be going effective, it's simply

11  a matter of when they can get time with the Court so that the

12  monitor can put in the report.

13          I was hopeful that it would be the end of this month.

14  I'm not as hopeful as I would.  It looks like October.  We're

15  all pushing for whatever the date is, but judge's calendars are

16  what they are and -- but there is nothing to be concerned about

17  other than making sure they get on the Court's calendar.

18  That's the only thing of which I know.  As I reported we have

19  the CRA ruling.  There is no other condition to effectiveness

20  that is causing the concern.

21          THE COURT:  All right.  That's excellent news.  I was

22  aware of Justice Morawetz's calendar and I just wanted to make

23  sure that that was the only reason that -- and so that is

24  encouraging to hear.

25          MR. GALARDI:  And that's all we've heard, but we'll

45

1  report back if we hear anything else.  I'm hopeful that on

2  October -- by October 27th hearing we will have been -- we will

3  be effective.

4        THE COURT:  I figured that's why you're continuing

5  everything off and just get it off of your plate and onto

6  somebody else's.

7        MR. GALARDI:  That and other reasons, but yes.

8        THE COURT:  Okay.  Very good.

9        MR. GALARDI:  All right?

10       THE COURT:  All right.  Is there any other business

11 we need to tie up today?

12       MR. GALARDI:  There is no other business, Your Honor.

13       THE COURT:  Thank you very much.

14       MR. GALARDI:  Thank you.

15       COURT CLERK:  All rise.  Court is now adjourned.

16                    * * * * *

17           **C E R T I F I C A T I O N**

18       I, KATHLEEN BETZ, court approved transcriber,

19 certify that the foregoing is a correct transcript from the

20 official electronic sound recording of the proceedings in the

21 above-entitled matter, and to the best of my ability.

22

23 /s/ Kathleen Betz              DATE:  October 7, 2010

24 KATHLEEN BETZ

25 J&J COURT TRANSCRIBERS, INC.


**WWW.JJCOURT.COM**