Gregg M. Galardi, Esq.          Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.         Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :   Jointly Administered
            Debtors.          :   **Obj. Deadline: October 29, 2010**
- - - - - - - - - - - - - - x     **at 5:00 p.m. (ET)**

**NOTICE OF PROPOSED SETTLEMENT AGREEMENT AND STIPULATION BY
AND AMONG: THE DEBTORS; MONSTER, LLC; AND MONSTER CABLE
PRODUCTS, INC.**

PLEASE TAKE NOTICE that, on August 10, 2009, the
United States Bankruptcy Court for the Eastern District of
Virginia (the "Bankruptcy Court") entered the Order
Pursuant To 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P.
2002, 9006, and 9019 Authorizing the Establishment of
Procedures to Settle Certain Pre-Petition and Post-Petition
Claims and Causes of Action Without Further Court Approval

(the "Settlement Procedures Order") (Docket No. 4401).[1]  A copy of the Settlement Procedures Order (without exhibits) is annexed as Exhibit 1.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Settlement Procedures Order, the above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] are authorized to negotiate and enter into stipulation and settlement agreements with third parties, subject to the procedures set forth in the Settlement Procedures Order and outlined herein.

PLEASE TAKE FURTHER NOTICE that, at this time, the Debtors have entered into a stipulation and settlement agreement (the "Agreement") with Monster, LLC ("Monster LLC"), and Monster Cable Products, Inc. ("Monster Cable" and together with Monster LLC, "Monster" and, together with the Debtors, the "Parties" and each of which is a "Party"), a copy of which is annexed as Exhibit 2.

## SUMMARY OF AGREEMENT TERMS[3]

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement (defined below) or the Settlement Procedures Order.

[2]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[3]  This section of the notice constitutes a summary of the material terms of the Agreement and is being provided for convenience only and should not be relied upon in any way.  All parties are strongly encouraged to review the Agreement in its entirety.  In the event there is a conflict between the notice and the Agreement, the Agreement shall control in all respects.

PLEASE TAKE FURTHER NOTICE that, in accordance with paragraph 10(b) of the Settlement Procedures Order, the material terms of the Agreement are as follows:

(i)   This is a Tier II Settlement.

(ii)  Monster LLC filed proof of claim number 1349 on December 19, 2008 in the amount of $159,122.52 as a claim allegedly entitled to priority under Bankruptcy Code section 503(b)(9) ("Claim No. 1349").

(iii) Monster LLC filed proof of claim number 7807 on January 29, 2009 as a general unsecured claim in the amount of $2,118,299.31 ("Claim No. 7807").

(iv)  Monster LLC filed proof of claim number 8714 on January 30, 2009 as a general unsecured claim in the amount of $239,970.00 ("Claim No. 8714").

(v)   Monster LLC filed an administrative expense claim numbered 14054 on June 29, 2009 in the amount of $1,162,796.64 ("Claim No. 14054", and together with Claim No. 1349, Claim No. 7807, and Claim No. 8714, the "Monster LLC Claims").

(vi)  The Debtors filed numerous objections to the Monster LLC Claims, and Monster LLC responded to those objections.

(vii) On December 3, 2009, the Parties filed the Notice of Proposed Settlement and Stipulation by and Among the Debtors and Monster, LLC Resolving the Debtors' Twentieth and Twenty-Third Omnibus Objections to Claim Nos. 1349 and 7807 (D.I. 5962). Therein, the Parties agreed that the Twentieth Omnibus Objection would be deemed withdrawn as to Claim No. 1349, and Claim No. 7807 would be reduced to $1,959,176.79.

(viii) Monster Cable filed proof of claim
       number 7805 on January 29, 2009 as a
       general unsecured claim in the amount of
       $4,479,395.72 ("Claim No. 7805").

(ix) Monster LLC filed an administrative
     expense claim numbered 13877 on June 29,
     2009 in the amount of $952,118.06 ("Claim
     No. 13877", and together with Claim No.
     7807, the "Monster Cable Claims").
     Therein, Monster claimed that the sums it
     was owed by the Debtors pursuant to Claim
     No. 13877 and Claim No. 14054 could be
     reduced to the sum of $8,205.08, after
     application of a $2,123,119.78 post-
     petition deposit ("Deposit") jointly paid
     to Monster LLC and Monster Cable by
     Circuit City.

(x)  On April 23, 2010, the Debtors sent a
     letter to Monster LLC (the "Monster LLC
     Demand Letter").  Therein, the Debtors
     disputed the amount of Claim No. 7807 and
     Claim No. 14054 based upon information
     contained in their books and records.  The
     Debtors also alleged that they had
     identified $342,562.69 in receivables,
     chargebacks, returns, and other amounts
     (collectively, the "Alleged Monster LLC
     Receivables") that were currently due,
     owing, and payable by Monster LLC to the
     Debtors.  The Debtors alleged that they
     were authorized to setoff the Alleged
     Monster LLC Receivables from the Monster
     LLC Claims.  The Debtors also asserted
     that Monster LLC received certain
     transfers that may be avoidable under
     Bankruptcy Code sections 547 and 550 (the
     "Monster LLC Preference Action Claims").

(xi) Monster LLC disputed the Debtors'
     allegations in the Monster LLC Demand
     Letter.

4

(xii) On April 23, 2010, the Debtors sent a
      letter to Monster Cable (the "Monster
      Cable Demand Letter" and together with the
      Monster LLC Demand Letter, the "Demand
      Letter").  Therein, the Debtors disputed
      the amount of Claim No. 7805, Claim No.
      8714, and Claim No. 13877 based upon
      information contained in their books and
      records.  The Debtors also alleged that
      they had identified $2,216,863.04 in
      receivables, chargebacks, returns, and
      other amounts (collectively, the "Alleged
      Monster Cable Receivables" and together
      with the Alleged Monster LLC Receivables,
      the "Alleged Receivables") that were
      currently due, owing, and payable by
      Monster Cable to the Debtors.  The Debtors
      alleged that they were authorized to
      setoff the Alleged Monster Cable
      Receivables from the Monster Cable Claims.
      The Debtors also asserted that Monster
      Cable received certain transfers that may
      be avoidable under Bankruptcy Code
      sections 547 and 550 (the "Monster Cable
      Preference Action Claims" and together
      with the Monster LLC Preference Action
      Claims, the "Preference Action Claims").

(xiii) Monster Cable disputed the Debtors'
       allegations in the Monster Cable Demand
       Letter.

(xiv) Rather than proceed with litigation
      concerning the Monster LLC Claims, the
      Monster Cable Claims, the Demand Letters,
      the Deposit, the Alleged Receivables, and
      the Preference Action Claims, the parties
      engaged in good faith, arms' length
      negotiations to resolve the foregoing in
      their entirety.

(xv) Upon the occurrence of the Effective Date,
     (i) the Monster LLC Claims, Claim Nos.
     1349, 7807, 8714 and 14054 will be reduced
     to $0 and disallowed in their entirety for

all purposes in the Debtors' bankruptcy proceedings, (ii) Monster Cable Claim No. 13877 will be reduced to $0 and disallowed in its entirety for all purposes in the Debtors' bankruptcy proceedings, (iii) Monster Cable Claim No. 7805 shall be modified and allowed in the face amount of $5,263,173.47 as a general unsecured, non-priority claim (the "Allowed General Unsecured Claim") without need for further action by Monster, and (iv) Monster shall pay the Debtors' estates the sum of $950,000 (the "Settlement Payment").

(xvi) The Allowed General Unsecured Claim shall be deemed an "allowed" claim in case number 08-35653 (KRH) for all purposes, including with respect to the Plan or as required under any chapter 7 liquidation (as applicable), and shall not be subject to enhancement or amendment, or further objection, offset, reduction, discount, impairment or subordination.

(xvii)  The Settlement Payment shall be made by Monster to the Debtors' bankruptcy estates in two installments.  The first installment of $325,000 (the "Initial Installment") will occur on or before November 30, 2010.  The second installment (the "Final Installment") will occur on or before December 31, 2010.

**TIME AND PLACE FOR FILING OBJECTIONS TO THE PROPOSED AGREEMENT OR REQUESTING ADDITIONAL INFORMATION OR TIME TO CONSIDER THE AGREEMENT**

PLEASE TAKE FURTHER NOTICE that, in accordance with paragraph 10(c) of the Settlement Procedures Order, any Notice Party may object (each an "Objection") to or request additional time or information (each a "Request") to evaluate the Agreement.

PLEASE TAKE FURTHER NOTICE that all Objections and Requests must be in writing and received by counsel to

the Debtors and counsel to the Official Committee of
Unsecured Creditors (see information below) by no later
than **October 29, 2010 at 5:00 p.m. (ET)** (the "Objection
Deadline").  Each Objection or Request must be served on (i)
the attorneys for the Debtors, (a) Skadden, Arps, Slate,
Meagher & Flom, LLP, One Rodney Square, P.O. Box 636,
Wilmington, DE  19899, Attn: Gregg M. Galardi
(gregg.galardi@skadden.com) and Ian S. Fredericks
(ian.fredericks@skadden.com) and (b) McGuireWoods LLP, One
James Center, 901 E. Cary Street, Richmond, VA  23219, Attn:
Douglas M. Foley (dfoley@mcguirewoods.com) and Daniel F.
Blanks (dblanks@mcguirewoods.com), and (ii)(a) Pachulski
Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th
Floor, Los Angeles, California 90067-4100, Attn: Jeff
Pomerantz (jpomerantz@pszjlaw.com) and (b) 780 Third Avenue,
36th Floor, New York, NY 10017-2024, Attn: Robert Feinstein
(rfeinstein@pszjlaw.com).

PLEASE TAKE FURTHER NOTICE that if you object to
the Agreement and you do not want the Debtors to proceed
with the Agreement or you want the Court to consider your
views concerning the Agreement, you or you attorney must
also:

file in writing with the Court, Clerk of Court,
United States Bankruptcy Court, 701 East Broad
Street, Suite 4000, Richmond, Virginia 23219, or
electronically (www.vaeb.uscourts.gov), a written
Objection pursuant to Local Bankruptcy Rule 9013-
1(H). If you mail your Objection to the Court for
filing, you must mail it early enough so the
Court will **receive it on or before October 29,
2010 at 5:00 p.m. (ET)**.

**Any Objection to an Agreement must be submitted by the
method described in the foregoing sentence.  Objections
will be deemed filed only when actually received at the
address listed above.**

PLEASE TAKE FURTHER NOTICE that, pursuant to
paragraph 10(d) of the Settlement Procedures Order, if a
Notice Party submits a Request, only such Notice Party
shall have the later of (i) an additional five (5) days to
object to the Agreement or (ii) in the case of a Request
for additional information, three (3) days after receipt by

the Notice Party of the additional information requested.
Each Notice Party may only make one Request for additional
time per Agreement, unless otherwise agreed to by the
Debtors in their sole discretion.

        [Remainder of page intentionally left blank]

PLEASE TAKE FURTHER NOTICE that, pursuant to paragraph 10(c) of the Settlement Procedures Order, if no Objection or Request is filed and served upon counsel for the Debtors and counsel for the Committee of Unsecured Creditors or counsel to the Debtors and counsel for the Committee of Unsecured Creditors do not receive a Request prior to the expiration of the Objection Deadline (as may be extended by Requests, if any, the **Debtors shall be authorized to enter into and consummate the Agreement without further order of the Court or any other action by the Debtors**.

Dated: October 15, 2010      SKADDEN, ARPS, SLATE, MEAGHER &
Richmond, Virginia           FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware
                             19899-0636
                             (302) 651-3000

                             - and –

                             SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Chris L. Dickerson, Esq.
                             155 North Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                             - and –

                             MCGUIREWOODS LLP

                             /s/ Douglas M. Foley_____
                             Douglas M. Foley
                             (VSB No. 34364)
                             Sarah B. Boehm
                             (VSB No. 45201)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                             Counsel for Debtors and Debtors in
                             Possession

**EXHIBIT 1**

**(Settlement Procedures Order w/out Exhibit(s))**

Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

             IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    1Case No. 08-35653 (KRH)
et al.,                     :
                            :
              Debtors.      :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 105 AND 363, AND FED. R. BANKR.
P. 2002, 9006, AND 9019 AUTHORIZING THE ESTABLISHMENT OF
PROCEDURES TO SETTLE CERTAIN PRE-PETITION AND POST-
PETITION CLAIMS AND CAUSES OF ACTION WITHOUT FURTHER COURT
APPROVAL**

         Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to sections 105 and 363

---

[1]   Each capitalized term not otherwise defined herein shall have the
      meaning ascribed to it in the Motion.

of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 9006 and 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for entry of an order authorizing the establishment of

procedures to settle certain pre-petition and post-

petition claims and causes of action without further

court approval; and the Court having reviewed the

Motion; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby:

**FOUND, DETERMINED, AND CONCLUDED that:**

1.    Based on the affidavits of service filed,

due, proper and adequate notice of the Motion has been

given in accordance with the Case Management Order and

that no other or further notice is necessary;

2.    The Notice Procedures are fair,

reasonable, and appropriate.

3.    The Settlement Procedures are fair

reasonable, and appropriate.

4.    The Notice and Settlement Procedures were

proposed in good faith.

5.    Pursuant to Bankruptcy Rule 9006, cause exists to shorten the applicable notice period in Bankruptcy Rule 2002(a)(3) with respect to each Settlement.

6.    Upon the expiration of the applicable Notice Period without an objection or upon resolution of any filed objection after the applicable Notice Period, each Settlement that complies with the Notice and Settlement Procedures shall be deemed (i) fair and reasonable and (ii) to have satisfied the standards under Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 9019.

7.    The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**ORDERED, ADJUDGED, AND DECREED that:**

8.    The Motion is GRANTED.

9.    The Debtors are authorized, but not directed, to compromise and settle Disputed Claims and Cause of Action and Receivable Claims in accordance with the Settlement Procedures.

10.   The Debtors shall provide key parties in
interest with notice of each proposed Settlement.   The
Notice Procedures are as follows:

(a)   The Debtors shall give written
notice, by email or facsimile, if available,
or overnight courier if email or facsimile
are not available, of each proposed
Settlement (the "Settlement Notice") to (i)
the United States Trustee, (ii) counsel for
the Committee of Unsecured Creditors, (iii)
any party to the Settlement, and (iv) the
Core Group and 2002 List (collectively, the
"Notice Parties").

(b)   The Settlement Notice (or the
Settlement Agreement) shall specify (i) the
identity of the other party to the
Settlement, (ii) a summary of the dispute
with such other party, including a statement
of the Debtors' reasonable estimate of the
Settlement Claim amount and the basis for
the controversy, (iii) an explanation of why
the Settlement of such Settlement Claim is
favorable to the Debtors, their estates, and
their creditors, and (iv) a copy of the
proposed settlement agreement ("Settlement
Agreement").

(c)   The Notice Parties may object to or
request additional time to evaluate the
proposed Settlement in writing by no later
than 5:00 p.m. (ET) (i) five (5) days for
both Tier I Disputed Claims and Tier I Cause
of Action and Receivable Claims or (ii) ten
(10) days for both Tier II Disputed Claims
and Tier II Cause of Action and Receivable
Claims (each an individual "Notice Period")
and serve such objection or request on
counsel to the Debtors and counsel for the
Creditors' Committee on or before the

4

expiration of the applicable Notice.  If the
Debtors are compromising more than one
Disputed Claim and/or Cause of Action and
Receivable Claim, the Tier II Notice Period
shall apply to such Settlement.  If no
objection or written request is filed and
served upon counsel for the Debtors and
counsel for the Creditors' Committee or
counsel to the Debtors does not receive a
written request for additional information
and/or additional time prior to the
expiration of the applicable Notice Period,
the Debtors shall be authorized to enter
into and consummate the Settlement Agreement
without further order of the Court or any
other action by the Debtors.

(d)    If a Notice Party provides a written
request to counsel for the Debtors for
additional information or time to evaluate
the proposed Settlement, only such Notice
Party shall have the later of (i) an
additional five (5) days to object to the
proposed Settlement or (ii) in the case of a
request for additional information, three
days after receipt by the Notice Party of
the additional information requested.  Each
Notice Party may only make one request for
additional time per Settlement Agreement,
unless otherwise agreed to by the Debtors in
their sole discretion.

(e)    If a Notice Party objects to the
proposed Settlement within the defined
Notice Period for that particular Tier of
Disputed Claim or Cause of Action and
Receivable Claim, (or the additional period
in the case of a Notice Party that has
timely requested additional time or
information to evaluate the proposed
Settlement) (the "Objection Deadline") and
the Debtors and such objecting Notice Party
are unable to reach a consensual resolution,

the Debtors will not take any further action
to consummate the proposed settlement
without first obtaining Court approval for
that specific Settlement.  The Debtors are
authorized to schedule the Settlement for a
hearing at the next scheduled omnibus
hearing following the Objection Deadline (or
any subsequent hearing) without filing a
separate motion or other pleading.

(f)   If the Objection Deadline has passed
and no objection has been filed with the
Court or request for additional time or
information has been received by the
Debtors, the Debtors are authorized, but not
directed, to file a "Certificate of No
Objection" with the Court; provided,
further, that each such Certificate shall
set forth a statement that no objection was
filed or received (or if any objection was
filed or received, such objection has been
resolved) and no request for additional time
or information was received or, if such
request was received, the additional period
of review has expired.

(g)   An objection will be considered
properly filed and served only if it is
filed with the Court, and actually received
by the following parties on or before the
Objection Deadline: (i) Clerk of the
Bankruptcy Court, United States Bankruptcy
Court, 701 East Broad Street – Room 4000,
Richmond, VA  23219, (ii) the attorneys for
the Debtors, (a) Skadden, Arps, Slate,
Meagher & Flom, LLP, One Rodney Square, P.O.
Box 636, Wilmington, DE  19899, Attn: Gregg
M. Galardi (gregg.galardi@skadden.com) and
Ian S. Fredericks
(ian.fredericks@skadden.com) and (b)
McGuireWoods LLP, One James Center, 901 E.
Cary Street, Richmond, VA  23219, Attn:
Douglas M. Foley (dfoley@mcguirewoods.com)

6

and Daniel F. Blanks
(dblanks@mcguirewoods.com), and (iii)(a)
Pachulski Stang Ziehl & Jones LLP, 10100
Santa Monica Blvd., 11th Floor, Los Angeles,
California 90067-4100, Attn: Jeff Pomerantz
(jpomerantz@pszjlaw.com) and (b) 780 Third
Avenue, 36th Floor, New York, NY 10017-2024,
Attn: Robert Feinstein
(rfeinstein@pszjlaw.com).

(h)    All time periods set forth in the
Notice Procedures shall be calculated in
accordance with Bankruptcy Rule 9006.

11.  Subject to the Notice Procedures, the
Debtors are authorized to compromise and settle Disputed
Claims as follows:

(a)    Tier I With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
of an agreed upon priority or administrative
expense claim, as applicable, in an amount
not to exceed $500,000.

(b)    Tier II With respect to Disputed
Claims, the Debtors, in their sole
discretion, may negotiate, execute and
consummate written Settlement Agreements
with the Claimants that will be binding on
the Debtors and their estates without
further action by this Court.  The Debtors
may, in full settlement of such Disputed
Claims, grant any Claimant an allowed claim
(priority or non-priority, as the case may

be) or administrative expense claim, as applicable, in an amount greater than $500,000.

12.    Subject to the Notice Procedures, the

Debtors are authorized to compromise and settle Cause of

Action and Receivable Claims as follows:

(a)    Tier I With respect to pre- and post-petition Cause of Action and Receivable Claims, the Debtors, in their sole discretion, may negotiate, execute and consummate written Settlement Agreements with third parties that will be binding on the Debtors and their estates without further action by this Court.  The Debtors may, in full settlement of such Cause of Action and Receivable Claims, compromise or settle a Cause of Action and Receivable Claim resulting in a cash payment to the Debtors' estates of a value (i) equal to or greater than seventy-five percent (75%) of the Debtors' original reasonable estimate of the Cause of Action and Receivable Claim amount and (ii) equal to or less than $1,000,000.

(b)    Tier II With respect to pre- and post-petition Cause of Action and Receivable Claims, the Debtors, in their sole discretion, may negotiate, execute and consummate written Settlement Agreements with third parties that will be binding on the Debtors and their estates without further action by this Court.  The Debtors may, in full settlement of such Cause of Action and Receivable Claims, compromise or settle a Cause of Action and Receivable Claim resulting in a cash payment to the Debtors' estates of a value equal to (i) more than $1,000,000 or (ii) less than

seventy-five percent (75%) of the Debtors'
original reasonable estimate of the Cause of
Action and Receivable Claim amount.

13.   To memorialize the Settlements, the
Debtors are authorized in their sole discretion, but not
directed, to enter into Settlement Agreements
substantially in the form of Exhibit A attached hereto;
provided, further, that the material terms of each
Settlement Agreement may vary depending upon the
specific facts and circumstances of each Settlement and
nothing herein or therein shall be construed as
impairing the Debtors' ability to tailor the form of the
Settlement Agreement to each specific Settlement.

14.   The Debtors are authorized, but not
directed, to resolve all of the Disputed Claims and
Cause of Action and Receivable Claims of a single party
in a single Settlement Agreement.

15.   The Debtors shall provide written notice
to Kurtzman Carson Consultants LLC ("KCC"), the Debtors'
authorized claims and noticing agent, with respect to
any proof of claim settled pursuant to these Settlement
Procedures; provided, further, that, if applicable, KCC

is authorized and directed to amend the claims register
accordingly without further order of the Court.

16.   Following entry of this Order, unless
otherwise agreed to between the Debtors and the
Creditors' Committee, the Debtors' advisors shall
provide weekly updates concerning ongoing settlement
discussions to the Creditors' Committee's advisors.
These updates shall include, without limitation, non-
privileged information mutually agreed to among the
parties' advisors.  Once the Debtors reach an agreement
in principle with a third party, the Debtors shall share
the material terms of the Settlement with the Creditors'
Committee's advisors.  All information shared with the
Creditors' Committee's advisors shall be deemed shared
subject to the existing confidentiality agreement with
the Debtors.

17.   Assuming no objection has been filed by
the applicable Objection Deadline, immediately after the
expiration of the Notice Period (or, in the case of a
filed objection that has been resolved, upon filing of a
Certificate of No Objection) the Settlement Agreement

shall be deemed to be a final order of this Court for
all purposes, including for purposes of any appeal.

18.   In the event there is an inconsistency
between the Motion and this Order, this Order shall
control.

19.   The requirement under Local Rule 9013-
1(G) of the Local Rules for the United States Bankruptcy
Court for the Eastern District of Virginia to file a
memorandum of law in connection with the Motion is
hereby waived.

20.   This Court retains jurisdiction to hear
and determine all matters arising from or related to the
Motion, this Order or any Settlement.

Dated:  Richmond, Virginia
        _____, 2009

                      _____
                      UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

12

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                         /s/ Douglas M. Foley
                         Douglas M. Foley

**EXHIBIT 2**

**(Settlement Agreement)**

Gregg M. Galardi, Esq.            Douglas M. Foley (VSB No. 34364)
Ian S. Fredericks, Esq.           Sarah B. Boehm (VSB No. 45201)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
        Debtors.             :   Jointly Administered
- - - - - - - - - - - - - - x

   **SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG: THE
   DEBTORS; MONSTER, LLC; AND MONSTER CABLE PRODUCTS, INC.**

            This settlement agreement and stipulation

(this "Settlement Agreement") is entered into by and

among the above-captioned debtors and debtors in

possession (the "Debtors"),[1] on the one hand, and Monster,

LLC ("Monster LLC"), and Monster Cable Products, Inc.

("Monster Cable" and together with Monster LLC,

"Monster"), on the other hand.  For purposes of this

Settlement Agreement, Monster LLC, Monster Cable,

Monster, and the Debtors are each referred to as a

"Party" and are collectively referred to as the

"Parties".

### GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition

Date"), the Debtors each filed a voluntary petition in

the United States Bankruptcy Court for the Eastern

District of Virginia (the "Court") under chapter 11 of

title 11 of the United States Code (the "Bankruptcy

Code"); and

---

[1]  The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for the Debtors is 4951 Lake Brook Drive, Suite #500, Glen Allen,
VA 23060.

WHEREAS, the Debtors have continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"); and

WHEREAS, to date, no trustee or examiner has been appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded; and

WHEREAS, on September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc.

3

and its Affiliated Debtors and Debtors In Possession and
its Official Committee of Creditors Holding General
Unsecured Claims (the "First Amended Plan").  The
associated disclosure statement (the "Disclosure
Statement") was approved on September 24, 2009.
Confirmation of the First Amended Plan was originally
scheduled for November 23, 2009, but has been adjourned
from time to time; and

WHEREAS, on August 9, 2010, the Debtors and
the Creditors Committee filed the Second Amended Joint
Plan of Liquidation of Circuit City Stores, Inc. and its
Affiliated Debtors and Debtors In Possession and its
Official Committee of Creditors Holding General
Unsecured Claims (the "Plan").  The Plan was confirmed
on September 8, 2010; and

WHEREAS, generally, the Plan provides for the
liquidation of the Debtors' remaining assets and
distributions to creditors through a liquidating trust;
and

WHEREAS, the Debtors are authorized under the
Court's Order Under 11 U.S.C. §§ 105 and 363, and Fed. R.
Bankr. P. 2002, 9006, and 9019 Authorizing the

4

Establishment of Procedures to Settle Certain Pre-
Petition and Post-Petition Claims and Causes of Action
Without Further Court Approval, dated August 7, 2009
(Docket No. 4401, the "Settlement Procedures Order")[2] to
enter into this Settlement Agreement, subject to the
Notice Procedures.

## SETTLEMENT BACKGROUND

**A.    The Monster LLC Claims.**

WHEREAS, Circuit City Stores, Inc. ("Circuit
City") and Monster LLC engaged in business in the
ordinary course prior to and after the Petition Date
wherein the Debtors purchased certain Monster LLC
products (the "Monster LLC Product") for sale in their
retail stores; and

WHEREAS, on December 19, 2008, Monster LLC
filed proof of claim number 1349 against the Debtors'
bankruptcy estates pursuant to Bankruptcy Code section
503(b)(9) ("Claim No. 1349").  Therein, Monster LLC
alleged that it delivered in the ordinary course of
business $159,122.52 worth of Monster LLC Product to the

---

[2]  All capitalized terms not otherwise defined herein shall have the
meaning ascribed to such terms in the Settlement Procedures Order.

Debtors within the twenty (20) days before the Petition

Date for which Monster LLC had not been paid; and

WHEREAS, on January 29, 2009, Monster LLC

filed proof of claim number 7807, a general unsecured

proof of claim against the Debtors' bankruptcy estates

("Claim No. 7807").  Therein, Monster LLC claimed that

it delivered in the ordinary course of business

$2,118,299.31 worth of Monster LLC Product before the

Petition Date for which Monster LLC had not been paid;

and

WHEREAS, on January 30, 2009, Monster LLC

filed proof of claim number 8714 against the Debtors'

bankruptcy estates ("Claim No. 8714").  Therein, Monster

LLC alleged that it shipped in the ordinary course of

business $239,970.00 worth of Monster LLC Product to the

Debtors before the Petition Date for which Monster LLC

had not been paid; and

WHEREAS, on June 29, 2009, Monster LLC filed

an administrative expense claim numbered 14054 against

Debtors' bankruptcy estates ("Claim No. 14054", and

together with Claim No. 1349, Claim No. 7807, and Claim

No. 8714, the "Monster LLC Claims").  Therein, Monster

LLC claimed that it was owed $1,162,796.64 for Monster

LLC Product provided to the Debtors on and after the

Petition Date pursuant to 11 U.S.C. § 503(b)(1) of the

Bankruptcy Code; and

        WHEREAS, the Debtors objected to the Monster

LLC Claims in various omnibus objections; and

        WHEREAS, the Debtors objected to Claim No.

1349 in the Debtors' Twentieth Omnibus Objection to

Claims (Reclassification to Unsecured Claims of Certain

Claims Filed as 503(b)(9) Claims for Goods Received by

the Debtors Not Within Twenty Days of the Commencement

of the Cases) (D.I. 3704) (the "Twentieth Omnibus

Objection").  Therein, the Debtors objected to Claim No.

1349 on the basis that certain Monster LLC Product

comprising a portion of the claim was received by the

Debtors more than twenty days before the Petition Date;

and

        WHEREAS, Monster LLC filed a response to the

Twentieth Omnibus Objection (D.I. No. 4110) arguing that

the full amount of Claim No. 1349 is entitled to

priority pursuant to Bankruptcy Code section 503(b)(9);

and

7

WHEREAS, in the Debtors' Twenty-Third Omnibus Objection to Claims (Modification of Certain Duplicate 503(b)(9) Claims) (D.I. 3711) (the "Twenty-Third Omnibus Objection"), the Debtors objected to Claim No. 7807 on the basis that it was partially duplicative of Claim No. 1349; and

WHEREAS, Monster LLC filed a response to the Twenty-Third Omnibus Objection (D.I. 4129) agreeing that Claim No. 7807 contained the amount sought in Claim No. 1349, but Monster LLC stated that the Court should deny the relief sought in the Twenty-Third Omnibus Objection until the Twentieth Omnibus Objection was resolved; and

WHEREAS, on December 3, 2009, the Parties filed the Notice of Proposed Settlement and Stipulation by and Among the Debtors and Monster, LLC Resolving the Debtors' Twentieth and Twenty-Third Omnibus Objections to Claim Nos. 1349 and 7807 (D.I. 5962). Therein, the Parties agreed that the Twentieth Omnibus Objection would be deemed withdrawn as to Claim No. 1349, and Claim No. 7807 would be reduced to $1,959,176.79; and

**B.    The Monster Cable Claims.**

WHEREAS, Circuit City and Monster Cable engaged in business in the ordinary course prior to and after the Petition Date wherein the Debtors purchased certain Monster Cable products (the "Monster Cable Product") for sale in their retail stores; and

WHEREAS, on January 29, 2009, Monster Cable filed proof of claim number 7805, a general unsecured proof of claim against the Debtors' bankruptcy estates ("Claim No. 7805").  Therein Monster Cable claimed that it shipped in the ordinary course of business $4,479,395.72 worth of Monster Cable Product to the Debtors before the Petition Date for which Monster Cable had not been paid; and

WHEREAS, on June 29, 2009, Monster Cable filed an administrative expense claim numbered 13877 against the Debtors' bankruptcy estate ("Claim No. 13877", and together with Claim No. 7805, the "Monster Cable Claims").  Therein, Monster Cable claimed that it was owed $952,118.06 for Monster Cable Product provided to the Debtors on and after the Petition Date pursuant to 11 U.S.C. § 503(b)(1) of the Bankruptcy Code. Therein,

Monster claimed that the sums it was owed by the Debtors
pursuant to Claim No. 13877 and Claim No. 14054 could be
reduced to the sum of $8,205.08, after application of a
$2,123,119.78 post-petition deposit ("Deposit") jointly
paid to Monster LLC and Monster Cable Products by
Circuit City; and

**C.    The Monster LLC Demand Letter.**

WHEREAS, on April 23, 2010, the Debtors sent a
letter to Monster LLC (the "Monster LLC Demand Letter").
Therein, the Debtors asserted that Claim No. 7807 was
overstated by $153,806.15 based on the Debtors' books
and records such that the appropriate amount of the
claim is $1,805,370.64; and

WHEREAS, in the Monster LLC Demand Letter, the
Debtors also stated that Claim No. 14054 was overstated
by $1,162,796.64 based on the Debtors' books and records
such that the appropriate amount of the claim is $0; and

WHEREAS, in the Monster LLC Demand Letter, the
Debtors asserted that they had identified $342,562.69 in

10

receivables, chargebacks, returns, and other amounts[3]

(collectively, the "Alleged Monster LLC Receivables")

that were due, owing and payable by Monster LLC to

Circuit City.[4]  The Debtors asserted that they were

authorized to setoff the Alleged Monster LLC Receivables

from Monster LLC's Claims pursuant to the Bankruptcy

Court's Memorandum Opinion (Docket Nos. 5963 & 5964),

such that Claim No. 1349 would be reduced to $0, Claim

No. 7807 would be reduced to $1,621,930.47, and the

Alleged Monster LLC Receivables would be reduced to $0;

and

        WHEREAS, the Debtors also claimed that Monster

LLC was the recipient of transfers made during the 90-

day period prior to the Petition Date that may be

avoided and recovered by the Debtors under section 547

and 550 of the Bankruptcy Code (the "Monster LLC

Preference Action Claims"); and

---

[3]   The "other amounts" referred to in the Monster LLC Demand Letter
      may have also included, but was not limited to credits, rebates,
      discounts, incentives, promotions, pricing guarantees, setoffs,
      and netting.

[4]   Based on the Debtors' review of the Monster LLC Claims, it
      appears that Monster LLC setoff certain of the Alleged Monster
      LLC Receivables from the amount claimed on Claim No. 7807 before
      filing its proof of claim form.

11

WHEREAS, Monster LLC specifically disputed the issues raised in the Monster LLC Demand Letter. Specifically, Monster LLC disputed the Debtors' proposed reductions to the Monster LLC Claims.  Moreover, Monster LLC disputed the amount of the Alleged Monster LLC Receivables based on information contained in its books and records and also disputed the Debtors' proposed setoff.  Finally, Monster LLC claimed that it had a defense to the Monster LLC Preference Action Claims; and

**D.    The Monster Cable Demand Letter.**

WHEREAS, on April 23, 2010, the Debtors sent a letter to Monster Cable (the "Monster Cable Demand Letter" and together with the Monster LLC Demand Letter, the "Demand Letters").  Therein, the Debtors asserted that Claim No. 7805 was overstated by $253,167.74 based on the Debtors' books and records such that the appropriate amount of the claim is $4,226,227.98; and

WHEREAS, in the Monster Cable Demand Letter, the Debtors also stated that Claim No. 8714 was

12

overstated by $239,970.00[5] based on the Debtors' books and records such that the appropriate amount of the claim is $0; and

WHEREAS, in the Monster Cable Demand Letter, the Debtors also stated that Claim No. 13877 was overstated by $952,118.06 based on the Debtors' books and records such that the appropriate amount of the claim is $0; and

WHEREAS, in the Monster Cable Demand Letter, the Debtors asserted that they had identified $2,216,863.04 in receivables, chargebacks, and other amounts[6] (collectively, the "Alleged Monster Cable Receivables" and together with the Alleged Monster LLC Receivables, the "Alleged Receivables") that were due,

---

[5]  The Monster Cable Demand Letter incorrectly identified Claim No. 8714 as a Claim filed by Monster Cable, when in fact it was filed by Monster LLC.  Had the Monster Cable Demand Letter included Claim No. 8714, it would have stated that Claim No. 8714 was overstated and based on the Debtors' books and records such that the appropriate amount of the claim is $0.

[6]  The "other amounts" referred to in the Monster Cable Demand Letter may have also included, but was not limited to returns, credits, rebates, discounts, incentives, promotions, pricing guarantees, setoffs, and netting.

owing and payable by Monster Cable to Circuit City.[7]  Of

that sum, $1,537,851.69 arose pre-petition (the "Pre-

Petition Monster Cable Receivables"), and $679,011.35

arose post-petition (the "Post-Petition Monster Cable

Receivables"); and

WHEREAS, the Debtors asserted that they were

authorized to setoff the Pre-Petition Monster Cable

Receivables from Monster Cable's Claims pursuant to the

Bankruptcy Court's Memorandum Opinion (Docket Nos. 5963

& 5964), such that Claim No. 7982 would be reduced to

$2,688,376.29, and the Pre-Petition Monster Cable

Receivables would be reduced to $0; and

WHEREAS, the Debtors sought turnover of the

Post-Petition Monster Cable Receivables pursuant to

Bankruptcy Code section 542; and

WHEREAS, the Debtors also claimed that Monster

Cable was the recipient of transfers made during the 90-

day period prior to the Petition Date that may be

avoided and recovered by the Debtors under section 547

---

[7]  Based on the Debtors' review of the Monster Cable Claims, it
appears that Monster Cable setoff certain of the Alleged Monster
Cable Receivables from the amount claimed on Claim Nos. 7805 and
8714 before filing its proof of claim forms.

and 550 of the Bankruptcy Code (the "Monster Cable
Preference Action Claims" and together with the Monster
LLC Preference Action Claims, the "Preference Action
Claims"); and

WHEREAS, Monster Cable also contested the
issues raised in the Monster Cable Demand Letter.
Specifically, Monster Cable disputed the Debtors'
alleged deductions to its claims.  Moreover, Monster
Cable disputed the amount of the Alleged Monster Cable
Receivables based on information contained in its books
and records and also disputed the Debtors' proposed
setoff.  Finally, Monster Cable claimed that it had a
defense to the Monster Cable Preference Action Claims;
and

WHEREAS, rather than proceed with litigation
concerning the Monster LLC Claims, the Monster Cable
Claims, the Demand Letters, the Deposit, the Alleged
Receivables, and the Preference Action Claims, the
Parties engaged in good faith, arms' length negotiations
to resolve the foregoing in their entirety; and

NOW THEREFORE, subject to and in accordance
with the Settlement Procedures Order, for good and

15

valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties hereby STIPULATE AND AGREE AND IT IS HEREBY ORDERED that:

1.   Upon the Effective Date (as defined herein), in full satisfaction and settlement of the Monster LLC Claims, the Monster Cable Claims, the Alleged Receivables, the Demand Letters, the Deposit and the Preference Action Claims, the Parties agree that (i) the Monster LLC Claims, Claim Nos. 1349, 7807, 8714 and 14054 will be reduced to $0 and disallowed in their entirety for all purposes in the Debtors' bankruptcy proceedings, (ii) Monster Cable Claim No. 13877 will be reduced to $0 and disallowed in its entirety for all purposes in the Debtors' bankruptcy proceedings, (iii) Monster Cable Claim No. 7805 shall be modified and allowed in the face amount of $5,263,173.47 as a general unsecured, non-priority claim (the "Allowed General Unsecured Claim") without need for further action by Monster, and (iv) Monster shall pay the Debtors' estates the sum of $950,000 (the "Settlement Payment") on the dates and in the amounts set forth in Paragraph 4 below.

16

       2.   To the extent required, the automatic stay of 11 U.S.C. § 362 is lifted to permit the netting set forth in Paragraph 1 above.

       3.   The Allowed General Unsecured Claim shall be deemed an "allowed" claim in case number 08-35653 (KRH) for all purposes, including with respect to the Plan or as required under any chapter 7 liquidation (as applicable), and shall not be subject to enhancement, amendment, further objection, offset, reduction, discount, impairment or subordination by any party in interest.

       4.   The Settlement Payment shall be made by Monster to the Debtors' bankruptcy estates in two installments.  The first installment of $325,000 (the "Initial Installment") will occur on or before November 30, 2010.  The second installment (the "Final Installment") will occur on or before December 31, 2010.

       5.   The Parties agree that Monster shall wire or cause to be wired both the Initial Installment and the Final Installment to the Debtors pursuant to wire instructions provided by the Debtors to Monster.

17

6.    The Parties agree (1) to toll and suspend
the running of any and all statutes of limitations and
other deadlines, including but not limited to any
statutes of limitations and other deadlines governed by
11 U.S.C. § 108 and 11 U.S.C. § 546, and statutes or
periods of repose applicable to any and all possible or
potential claims, remedies, or causes of action that may
be asserted by the Debtors or their successors
(including (without limitation) the Liquidating Trustee
(as defined in the Plan)) against Monster thereof from
the date of this Settlement Agreement through and
including January 31, 2011, and (2) the Parties agree
that Monster waives the benefit of, and agrees not to
assert as a defense or otherwise, to the extent so
tolled, any statute of limitations or other deadline,
including (without limitation) those governed by 11
U.S.C. § 108 and 11 U.S.C. § 546, statutes or periods of
repose, or laches in any action commenced against it by
the Debtors or their successors (including (without
limitation) the Liquidating Trustee) on or before
January 31, 2011 (this paragraph, the "Tolling
Agreement"); provided, however, that nothing in the

18

Tolling Agreement (a) precludes Monster from asserting a

defense, nor the Debtors' or the Liquidating Trustee's

right to contest such defense, based on statutes of

limitations, statutes or periods of repose, or laches,

but only to the extent such defense(s) were available to

Monster before October 15, 2010, or (b) precludes

Monster from asserting any defenses (other than those

tolled by the Tolling Agreement), claims, counterclaims,

or rights of setoff against the Debtors, the Liquidating

Trustee (solely in such capacity), the Liquidating Trust

(as defined in the Plan), or the Debtors' post-

confirmation estates nor precludes the Debtors, the

Liquidating Trustee, the Liquidating Trust or the

Debtors' post-confirmation estates from opposing

Monster's assertion of defenses, claims, counterclaims,

or rights of setoff against the Debtors, the Liquidating

Trustee, the Liquidating Trust or the Debtors' post-

confirmation estates.

7.    Upon receipt by the Debtors (or their

successors) of the Initial Installment and the Final

Installment of the Settlement Payment (the "Settlement

Finality Date"), Monster, on behalf of itself and its

19

successors and assigns, and the Debtors, on behalf of

themselves, and each on behalf of their respective

estates, successors, and assigns (including but not

limited to any trustee appointed in any of these chapter

11 cases or any successor or subsequent bankruptcy cases,

any receivers and/or other custodians appointed in any

action or proceeding involving the Debtors' property,

the Liquidating Trustee, the Liquidating Trust and any

other liquidating trustee under the Plan), hereby

irrevocably and fully release one another from and

against any and all claims or causes of action

(including, but not limited to, causes of action under

Bankruptcy Code sections 502, 542, 543, 544, 546, 547,

548, 549, 550, 553 and 558) arising from, in connection

with, or related to the Monster LLC Claims, the Monster

Cable Claims, the Alleged Receivables, the Demand

Letters, the Deposit and the Preference Action Claims

(this paragraph, the "Releases"), but excluding the

Allowed General Unsecured Claim and the Settlement

Payment. Upon the occurrence of the Settlement Finality

Date, the Tolling Agreement shall expire and any tolled

claims, remedies, or causes of action, if actually filed

by the Debtors, the Liquidating Trustee, the Liquidating
Trust or the Debtors' post-confirmation estates, shall
be dismissed with prejudice.

8.   For the avoidance of doubt and
notwithstanding anything to the contrary in this
Settlement Agreement, (i) the Releases are not intended
as general releases or waivers and nothing in this
Settlement Agreement shall be construed as such, (ii)
with the exception of the Allowed General Unsecured
Claim, Monster shall not file nor be entitled to recover
on account of any claims in the Debtors' cases, (iii)
with the exception of the Settlement Payment, the
Debtors, their estates, the Liquidating Trustee, the
Liquidating Trust, and the Debtors' post-confirmation
estates shall not be entitled to recover any further
receivables, chargebacks, returns, credits, rebates,
incentives, promotions, pricing guarantees, setoffs,
netting, discounts or any other amounts from Monster,
and (iv) the Parties specifically acknowledge and agree
that this Settlement Agreement is not intended to, and
does not, release or otherwise affect in any way any
actual claims or causes of action (or potential claims

21

or causes of action similar in nature or type to such
actual claims or causes of action) now or hereinafter
asserted in, based on, or relating to the multi-district
litigation captioned In re: TFT-LCD (Flat Panel)
Antitrust Litigation, MDL No. 1827 (N.D. Cal.) and the
actions consolidated therein (the "MDL Proceeding").

9.   The Parties agree that this Settlement
Agreement finally resolves the Monster LLC Claims, the
Monster Cable Claims, the Demand Letters, the Alleged
Receivables, the Deposit and the Preference Action
Claims in their entirety.

10.   Neither this Settlement Agreement
(including, without limitation, the terms and statements
made herein), nor any statement made or action taken in
connection with the negotiation of this Settlement
Agreement, shall be offered or received in evidence or
in any way referred to in any legal action or
administrative proceeding among or between the Parties,
other than as may be necessary (a) to obtain approval of
and to enforce this Settlement Agreement or (b) to seek
damages or injunctive relief in connection with such
approval and enforcement.

22

11.   Each Party shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

12.   No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties, their respective successors and assigns.

13.   Except where preempted by applicable Federal law, this Settlement Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Virginia without regard to any choice of law provisions.

14.   This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

15.   This Settlement Agreement constitutes the entire agreement and understanding of the parties

23

regarding the Settlement Agreement and the subject
matter thereof.

16.   The United States Bankruptcy Court for
the Eastern District of Virginia shall retain exclusive
jurisdiction (and the parties consent to such retention
of jurisdiction) with respect to any disputes arising
from or related to, or other actions to interpret,
administer or enforce the terms and provisions of, this
Settlement Agreement.

17.   Each person or entity who executes this
Settlement Agreement on behalf of another person or
entity represents and warrants that he, she, or it is
duly authorized to execute this Settlement Agreement on
behalf of such person or entity, has the requisite
authority to bind such person or entity, and such person
or entity has full knowledge of and has consented to
this Settlement Agreement.  The representations and
warranties set forth in this paragraph shall survive
execution of this Settlement Agreement.

18.   This Settlement Agreement shall not be
modified, altered, amended or vacated without the

24

written consent of all parties hereto or order of the
Bankruptcy Court.

19.    This Settlement Agreement and all of its
terms shall be effective upon the later of (i) execution
by all Parties, (ii) the expiration of the applicable
Notice Period, or (iii) the resolution of any objection
properly filed in accordance with the terms of the
Settlement Procedures Order (the "Effective Date").

20.    This Settlement Agreement shall inure to
the benefit of and be binding upon the successors and
assigns of the Parties, including without limitation any
Chapter 7 trustee or the Liquidating Trustee under the
Plan.

IN WITNESS WHEREOF, this Settlement Agreement

is hereby executed as of October 15, 2010.

ACCEPTED AND AGREED TO BY:

CIRCUIT CITY STORES, INC.

By:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

MCGUIREWOODS LLP

/s/ Sarah B. Boehm
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Circuit City Stores, Inc.,
et al., Debtors and Debtors in Possession

26

MONSTER, LLC AND MONSTER CABLE PRODUCTS, INC.

By:

/s/ Gregg S. Kleiner
Gregg S. Kleiner
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2034

Attorney for Monster, LLC and Monster Cable Products, Inc.