**B104 (FORM 104) (08/07)**                                                                              **EDVA**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) ||

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

B104 (FORM 104) (08/07), Page 2

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | | |
|---|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Robert J. Feinstein, Esq.
John A. Morris, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to Alfred H. Siegel, as Trustee of the
Circuit City Stores, Inc. Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel to Alfred H. Siegel, as Trustee of the
Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST, | ) Adv. Pro. No. 10-_____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SUSAN COMBS, as Comptroller of Public Accounts of the State of Texas, and GREG ABBOTT, as Attorney General of the State of Texas, | ) |
| Defendant. | |

**THE LIQUIDATING TRUST'S COMPLAINT FOR TURNOVER, UNJUST
ENRICHMENT, TO AVOID AND RECOVER PREFERENTIAL AND POST-
PETITION TRANSFERS, AVOIDANCE OF SETOFF, AND OBJECTION TO
CLAIMS**

DOCS_NY:22058.11

The Circuit City Stores, Inc. Liquidating Trust (the "Trust"), established pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), for its complaint and for objection to claims (the "Complaint") against Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. The Trust brings this action against Defendant to recover amounts due and owing from Defendant arising out of tax overpayments by Circuit City. The Trustee asserts various theories of recovery, including unjust enrichment, avoidance and recovery of preferential transfers that occurred during the 90-day period prior to the commencement of Circuit City's bankruptcy proceedings, and turnover of property of the bankruptcy estates. Finally, the Trust objects to Defendant's proofs of claim filed against the Debtors' estates.

## THE PARTIES

2. The Trustee ("Trustee" or "Plaintiff") is the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Trust"). Pursuant to Articles II and III of the Trust, the Trustee has the sole authority to pursue claims transferred to the Trust by the Debtors through the Plan, and to litigate objections to claims asserted against the Debtors' estates.

3. Prior to the Effective Date of the Plan, Circuit City Stores, Inc. and its affiliated debtors in possession (collectively "Circuit City" or the "Debtors")[1] were corporations that maintained their respective principal places of business in the locations set forth below, and were the debtors in the above-captioned chapter 11 bankruptcy cases.

4. Upon information and belief, Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, are the official representative of the applicable State of Texas taxing authority with respect to the matters set forth herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding under 28 U.S.C. § 157(b).

7. Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory and legal predicates for the relief requested by the Complaint are sections 105, 502, 503, 541, 542, 547, 550, 553 and 558 of title

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

## PERTINENT FACTS

### A. General Case Background

9. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code, and until the effective date of the Plan, continued to operate as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

10. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

11. On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales at the Stores pursuant to the Agency Agreement. As of March 8, 2009, the going out of business sales at the Debtors' stores were completed.

12. On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan. The Plan became effective on November 1, 2010 (the "Effective Date").

B. **The Relationship Between Circuit City And Defendant, the July, 2008 lien, and the September, 2008 "Setoff"**

13. Prior to the commencement of these bankruptcy cases, the Debtors were a leading specialty retailer of consumer electronics and operated large nationwide electronics stores that sold, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

14. The Debtors operated a number of retail stores in the State of Texas, and incurred liability to the state for sales and use taxes on retail sales and purchases occurring within the State. As required by Defendant, the Debtors routinely calculated and made estimated sales/use tax payments for the upcoming month based on liabilities from prior periods. These estimated payments were then "trued up" when actual figures became available, and final monthly sales tax returns were filed. If the estimates were less than the actual liability, then additional payment was made. If the estimates were more than the actual liability, the excess prepayments were refunded.

15. During the ordinary course of the Debtors' business, the Debtors maintained books and records of their transactions with Defendant (the "Books and Records"). The Debtors' sales and use tax returns were based on the Books and Records of their transactions in the state.

16. On July 25, 2008, Defendant filed a lien in the amount of $616,369.31 against the Debtors' properties for alleged sales and use tax liability stemming from an audit for the period March 1, 2000 through February 28, 2004. At

the time the lien was placed, there was an ongoing sales and use tax audit for this time period. The Debtors had timely protested and properly appealed the assessed liability, had made a $500,000 prepayment for possible liabilities arising from the audit, and were engaged with the Defendant in the process of redetermination of the assessment.

17. The Debtors' objections to the assessment were well taken, having found several improprieties including improper (a) extrapolation of samples on tax-exempt transactions involving "*pedimento de importaciones documents*" (a process where sales tax is refunded to customers who produce proof of having transported their purchases out of the country within a limited time), and (b) extrapolation of a remodeling expense sample that contained extraordinary costs.

18. Removal of the lien was critical for the Debtors given the tenuous credit relationships that the Debtors had with their lenders as they approached peak borrowing season. The Debtors protested the lien in a conference call shortly after the lien was placed, in response to which Defendant's representatives admitted that they placed the lien to protect the state "because they had been burned by the Linens N Things bankruptcy, and they had heard rumors that Circuit City might file for protection."

19. When Defendant refused to remove the lien, the Debtors were coerced to agree to allow Defendant to retain $325,00 of an outstanding monthly overpayment (at that point an overpayment by virtue of estimated payments) as a "setoff" to "settle" the audit for the March 1, 2000 to February 28, 2004 time period.

This agreement was reached on or about September 10, 2008, as documented by emails of that date.

### C. The October/November, 2008 lien

20. During the same July-September, 2008 time period, Defendant had scheduled the start of a new audit for the time period from March 1, 2004 through June 30, 2008. Due to delay caused solely by Defendant's inability to staff the audit, Defendant had not commenced the audit as of the beginning of October, 2008. Nonetheless, on October 2, 2008, Defendant issued a "jeopardy assessment" for the new audit and filed two additional liens in the amounts of $1,559,232.74 and $1,558,407.43. Notice of the liens was issued by Defendant on November 13, 2008; according to the Notices, the liens were recorded on October 6, 2008 and October 3, 2008, respectively.

21. The October assessment for the March 1, 2004 through June 30, 2008 time period was purportedly based on data from the audit for the four years prior, and was without any basis in fact. Indeed, the Defendant had not even begun its audit for the applicable time period.

22. The unforeseen and unwarranted liens were purportedly based on a "jeopardy assessment" under Texas state law. Defendant could not, however, establish the requisite facts to support a jeopardy assessment because at the time (1) the Controller did not have a reasonable belief that the tax collection was in jeopardy, (2) there was no tax due (the assessment was issued without an audit and

was based on a previous audit cycle), and (3) collection of sales tax due would not have been jeopardized by delay.

### D.      **Defendant's Proofs Of Claim**

23.     Defendant has filed the following claims with the Bankruptcy Court.

| Date Filed | Claim Number[2] | Claim Amount | Nature |
|---|---|---|---|
| 1/28/2009 | 7473 | $2,465.26 | Priority (507(a)(8)), 1/1/2008-12/31/2008 |
| 10/20/2009 | 14687 | $2,445.55 | Admin Priority (503(b)), 1/1/2009 – 12/31/2009 |
| 1/28/2009 | 10106 | $1,690,627.18 | Priority (507(a)(8)), 3/1/2004-6/30/2008 |
| 2/24/2010 | 14815 | $1,181,459.55 | Admin Priority (503(b)), 1/1/2009-12/31/2009 |

### COUNT I

**AVOIDANCE OF PREFERENTIAL TRANSFERS
PURSUANT TO 11 U.S.C. § 547(b)**

24.     The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

25.     During the 90 days prior to the Petition Date (the "Preference Period"), Defendant was a creditor of one or more of the Debtors based on alleged sales and use tax liability.

26.     During the Preference Period, Defendant received two transfers of property of the Debtors (the "Preferential Transfers").  First, on or about

---

[2] As designated by the court-appointed claims agent.

September 10, 2008, Defendant coerced the Debtors to agree to a $325,000 payment or "setoff" against an overpayment of estimated taxes previously paid by the Debtors to the Defendant, and at the time, due and owing from Defendant to the Debtors. The $325,000 payment was for alleged taxes owing for the time period from March 1, 2000 to February 28, 2004. Defendant's claim for these alleged taxes would not be entitled to any priority under Section 507 of the Bankruptcy Code.

27. Second, the Defendant filed the October, 2008 liens in an attempt to improve and secure its position with respect to alleged taxes due from the Debtors for the time period from March 1, 2004 to June 30, 2008. The recordation of each of the October, 2008 liens constituted a transfer of the Debtors' property rights by asserting a security interest in and encumbering the Debtors' property.

28. The Preferential Transfers were made to or for the benefit of Defendant for purported tax liability.

29. The Preferential Transfers were made for or on account of an antecedent debt or debts allegedly owed by one or more of the Debtors before the Preferential Transfer was made, according to assessments alleged by Defendant for tax periods prior to the Transfers.

30. The Preferential Transfers were made while the Debtors were insolvent.

31. Each of the Preferential Transfers enabled Defendant to receive more than Defendant would have received if (i) the Debtors' chapter 11 cases were instead cases under chapter 7 of the Bankruptcy Code; (ii) the transfers and/or payments had not been made; and (iii) Defendant received payment on account of

the debt paid by the Preferential Transfers to the extent provided by the Bankruptcy Code.

32. Each of the Preferential Transfers constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b).

## COUNT II

### RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 550

33. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein

34. Defendant was the initial transferee of the Preferential Transfers and the entity for whose benefit the Preferential Transfers were made.

35. Each Preferential Transfer that is avoided under Section 547(b) is recoverable pursuant to Bankruptcy Code section 550.

36. The Trust is entitled to recover the value of the Preferential Transfers pursuant to Bankruptcy Code section 550(a).

## COUNT III

### TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542

37. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

38. Defendant is in possession, custody, and control of $325,000 of the Debtors' estimated tax overpayment, which it coerced the Debtors to agree to release although it was based on a tax assessment that had no basis in fact, and was under appeal and in question (the "Overpayment").

39. Defendant is not a custodian for the Overpayment.

40. The Overpayment constitutes a valid and existing debt, due and owing by Defendant to the Debtors.

41. The Overpayment is property of the Debtors' estates under section 541 of the Bankruptcy Code, and constitutes a debt that are matured, payable on demand, or payable on order.

42. Accordingly, pursuant to Bankruptcy Code section 542, Defendant should be compelled to immediately turn over and deliver to the Trustee the Overpayment in an amount not less than $325,000.

## COUNT IV

### UNJUST ENRICHMENT

43. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

44. In the alternative to Count III, but without waiving any allegation with respect thereto, the Trustee makes the following additional allegations in support of Count IV.

45. The Debtors conferred a benefit upon Defendant pursuant to the Overpayments, which were coerced and wrongly withheld by Defendant as described above, and for which Defendant knowingly accepted the benefit conferred by the Debtors.

46. The Debtors reasonably expected to be compensated by Defendant in an amount not less than $325,000 on account of the Overpayments conferred upon Defendant.

47. Defendant's receipt of benefit without just compensation to the Debtors has unjustly enriched Defendant in an amount not less than $325,000.

48. The Trust has no adequate remedy at law to recover the Overpayments. Accordingly, as a result of Defendant's unjust enrichment at the Debtors' expense, the Trust is entitled to restitution from the Defendant in an amount not less than $325,000.

## COUNT V

### OBJECTION TO CLAIM NO. 7473 AS UNWARRANTED

49. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

50. After a thorough review of the Debtors' Books and Records, the Trustee has determined that Claim No. 7473 has no basis in fact, as the Books and Records do not reflect any activity that would support the Claim. Defendant did not submit any documents or analyses in support of Claim No. 7473, only a face page proof of claim.

51. As a result, Defendant's Claim No. 7473 should be disallowed in its entirety.

## COUNT VI

### OBJECTION TO CLAIM NO. 14687 AS UNWARRANTED

52. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

53. After a thorough review of the Debtors' Books and Records, the Trustee has determined that Claim No. 14687 has no basis in fact, as the Books

and Records do not reflect any activity that would support the Claim. Defendant did not submit any documents or analyses in support of Claim No. 14687, only a face page proof of claim.

54. As a result, Defendant's Claim No. 14687 should be disallowed in its entirety.

## COUNT VII

### OBJECTION TO CLAIM NO. 10106 AS OVERSTATED

55. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

56. After a thorough review of the Debtors' Books and Records, the Trustee has determined that Claim No. 10106 is vastly overstated. Defendant did not submit any documents or analyses in support of Claim No. 10106, only a face page proof of claim. As noted above, Defendant never conducted an audit for the 2004-2008 time period that is the subject of Claim No. 10106, and thus, there can be no basis for the asserted liability. Based on their calculations of the potential liability during this period, the Debtors' suggest that their tax liability is no more than $196,266.00, and that since the Claim is based on a use tax, it is not entitled to any priority under Bankruptcy Code section 507(a).

57. As a result, Defendant's Claim No. 10106 should be reduced to no more than $196,266.00, and allowed only as a general unsecured claim.

## COUNT VIII

### OBJECTION TO CLAIM NO. 14815 AS UNWARRANTED

58. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

59. After a thorough review of the Debtors' Books and Records, the Trustee has determined that Claim No. 14815 has no basis in fact, as the Debtors already paid the assessment for which this claim is based.

60. As a result, Defendant's Claim No. 14815 should be disallowed in its entirety.

## COUNT IX

### AVOIDANCE OF POST-PETITION LIEN PURSUANT TO 11 U.S.C. § 549

61. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

62. In the alternative to Count II with respect to the liens asserted by Defendant in October/November, 2008, but without waiving any allegation with respect thereto, the Trust makes the following additional allegations in support of Count IX.

63. As noted above, Defendant sent a Notice of Lien to the Debtors on November 13, 2008, 3 days after the Petition Date. The Notice stated that the liens had been filed by Defendant on October 3, 2008, and 6, 2008, in an attempt to encumber the Debtors' property and restrict their property rights under Bankruptcy Code section 541.

64. If the lien is deemed to have occurred on November 13, 2008, then it constitutes an unauthorized post-petition transfer of property of the Debtors (the "Post-Petition Transfer"), and the Trust is entitled to a judgment avoiding the lien pursuant to 11 U.S.C. § 549.

## COUNT X

### RECOVERY OF POST-PETITION TRANSFER PURSUANT TO 11 U.S.C. § 550

65. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

66. Defendant was the initial transferee of the Post-Petition Transfer described above through liens to encumber and restrict the Debtors' property rights.

67. The Post-Petition Transfer that is avoided under Section 549 is recoverable pursuant to Bankruptcy Code section 550.

68. The Trust is entitled to recover the value of the Post-Petition Transfer pursuant to Bankruptcy Code section 550(a).

## COUNT XI

### AVOIDANCE OF PRE-PETITION SETOFF PURSUANT TO 11 U.S.C. § 553(b)

69. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein

70. If and to the extent that Defendant is deemed to have offset a mutual debt owing to the Debtors against a claim against Defendant on or within 90 days before the Petition Date, the insufficiency, as defined in 11 U.S.C. § 553(b)(2),

on the date of any such setoff was less than the insufficiency on the later of (A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

71.  Pursuant to 11 U.S.C. § 553(b)(1), the Trust is entitled to recover the amount by which such insufficiency on the date of any such setoff was less than the insufficiency on the later of (A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

### **PRAYER FOR RELIEF**

WHEREFORE, the Trust respectfully requests and prays that the Court:

i.  Pursuant to Counts I and II, enter judgment against Defendant under 11 U.S.C. §§ 547 and 550 and allow the Trust to avoid and recover the Preferential Transfers; and

ii.  Pursuant to Count III, enter judgment against Defendant under 11 U.S.C. § 542, and order Defendant to immediately turn over and deliver to the Trust an amount not less than $325,000; and

iii.  Pursuant to Count IV, enter judgment against Defendant for unjust enrichment and award the Trust damages on account of Defendant's unjust enrichment in an amount not less than $325,000; and

iv.  Pursuant to Counts V, VI and VIII, disallow Claim Nos. 7473, 14687, 14815 in their entirety; and

v.  Pursuant to Count VII, reduce Claim No. 10106 to the proper amount of $196,266.00, disallow the balance of the claim, and allow the claim only as a general unsecured claim; and

vi.  In the alternative to Count I and II, pursuant to Counts IX and X, enter judgment against Defendant under 11 U.S.C. §§ 549 and 550, and allow the Trust to avoid and recover the Post-Petition Transfer; and

    vii. Pursuant to Count XI, enter judgment against Defendant under 11 U.S.C. § 553(b) and allow the Trust to avoid and recover the Pre-Petition Setoff; and

    viii. Award the Trustee prejudgment interest at the legally allowed applicable rate;

    ix. Award the Trustee costs, and expenses of suit herein; and

    x. Grant the Trustee such other and further relief the Court deems just and appropriate.

Dated: Richmond, Virginia   TAVENNER & BERAN, PLC
   November 9, 2010

           __/s/ Lynn L. Tavenner_____
           Lynn L. Tavenner (VA Bar No. 30083)
           Paula S. Beran (VA Bar No. 34679)
           20 North Eighth Street, 2nd Floor
           Richmond, Virginia 23219
           (804) 783-8300

           - and -

           PACHULSKI STANG ZIEHL & JONES LLP
           Jeffrey N. Pomerantz, Esq.
           Andrew W. Caine, Esq.
           10100 Santa Monica Boulevard
           Los Angeles, California 90067-4100
           (310) 277-6910

           - and –

           Robert J. Feinstein, Esq.
           John A. Morris, Esq.
           PACHULSKI STANG ZIEHL & JONES LLP
           780 Third Avenue, 36th Floor
           New York, New York 10017
           (212) 561-7700

           *Counsel to the Circuit City Stores, Inc.*
           *Liquidating Trust*