# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

RYAN, INC. )
f/k/a RYAN & COMPANY, INC., )
 )
Appellant, )
 )
v. ) Civil Action No. 3:10CV496-HEH
 )
CIRCUIT CITY STORES, INC. et al., )
 )
Appellees. )

RICHMOND DIVISION
FILED
NOV 1 8 2010
CLERK
US BANKRUPTCY COURT

## ORDER

THIS MATTER is before the Court on appeal from Bankruptcy Court's Order Denying Motion of Ryan, Inc. f/k/a Ryan & Company, Inc. to Compel Debtor to Assume Executory Contract; Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contract with Ryan, Inc.; and Order Denying Verified Motion to Reconsider (A) Order Denying Motion of Ryan, Inc. f/k/a Ryan & Company, Inc. to Compel Debtor to Assume Executory Contract and (B) Order Pursuant to Bankruptcy Code Sections 105(A) and 365(A) and Bankruptcy Rule 6006 Authorizing Rejection of Certain Executory Contract with Ryan, Inc. For the reasons stated in the accompanying Memorandum Opinion, all three orders are hereby AFFIRMED.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 15, 2010
Richmond, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RYAN, INC. )
f/k/a RYAN & COMPANY, INC., )
)
Appellant, )
)
v. ) Civil Action No. 3:10CV496–HEH
)
CIRCUIT CITY STORES, INC. et al., )
)
Appellees. )

RICHMOND DIVISION
FILED
NOV 1 8 2010
CLERK
US BANKRUPTCY COURT

## MEMORANDUM OPINION
(Affirming Order of the Bankruptcy Court)

This matter is before the Court on appeal from three Orders of the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court"). Specifically, Ryan, Inc. f/k/a Ryan & Company, Inc. ("Ryan") challenges the Bankruptcy Court's Orders denying Ryan's motion to compel Circuit City Stores, Inc. ("Debtors") to assume an executory contract; authorizing Debtors' rejection of that contract; and denying Ryan's verified motion to reconsider those two orders.

Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. Based on an extensive review of the record in this case and for the reasons set forth below, the Court will affirm the Orders of the Bankruptcy Court.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY_____
DEPUTY CLERK

## I. BACKGROUND

On June 8, 2005, Debtors and Ryan entered into a letter agreement (the "Ryan Contract") wherein Ryan contracted to represent Debtors with respect to certain tax matters in Hawaii on a contingency-fee arrangement. Pursuant to the Ryan Contract, Ryan reviewed Hawaiian import tax credits to identify and pursue tax refund opportunities for Debtors. In connection with that representation, Ryan presented to Hawaiian authorities two tax refund requests totaling $735,663.01. Both requests were denied. Debtors appealed the denial to the Hawaii Supreme Court, which took the matter under advisement.

On November 10, 2008, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. According to Debtors, Ryan has not provided any material services to Debtors since the petition date.[1]

On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors ("the Creditors' Committee") to administer the estate in bankruptcy. To date, no trustee or examiner has been appointed.

On January 16, 2009, the Bankruptcy Court authorized Debtors to conduct going out of business sales at their remaining stores. The sales concluded on or about March 8,

---

[1] The Bankruptcy Court did not approve Ryan's employment as a professional person pursuant to 11 U.S.C. § 327, and Debtors did not employ Ryan as an ordinary course professional because Ryan failed to file the requisite affidavits. An ordinary course professional is a disinterested person or entity employed to represent or assist the trustee in carrying out the trustee's duties under the Bankruptcy Code. 11 U.S.C. § 327(a). Pursuant to 11 U.S.C. § 328(a), such professionals may be compensated for their post-petition services.

2009. On September 29, 2009, Debtors and the Creditors' Committee filed their First Amended Joint Plan of Liquidation. The plan provided for liquidation of Debtors under Chapter 11 of the Bankruptcy Code. Additionally, the plan provided that all executory contracts not previously assumed or rejected would be rejected upon confirmation of the plan.

In order to prevent Debtors from rejecting the Ryan Contract pursuant to the plan, Ryan filed a motion to compel Debtors to assume the Ryan Contract ("Motion to Compel") on November 13, 2009. Debtors opposed the motion, asserting that Ryan lacked the authority to compel assumption. On January 28, 2010, Debtors filed a motion asking the Bankruptcy Court to approve the rejection of certain executory contracts, including the Ryan Contract ("Motion to Reject"), because Debtors deemed those contracts to be of no value. Ryan opposed rejection of the Ryan Contract because, in Ryan's view, the Contract was of value to Debtors. A hearing on the Motion to Compel was originally set for December 7, 2009. A hearing on the Motion to Reject was set for February 11, 2010. By agreement of the parties, the hearings were continued to March 8, 2010 ("the March 8 hearing").

At the March 8 hearing, Debtors stated on the record their reasons for rejecting the Ryan Contract—namely, that they deemed it to be of no value, they sought to avoid post-petition administrative claims, and they believed Ryan simply sought to elevate the priority of its pre-petition claim. Ryan, who appeared by telephone, presented no evidence to contradict Debtors' stated rationale. Accordingly, the Bankruptcy Court

3

entered orders denying Ryan's Motion to Compel and granting Debtors' Motion to Reject ("the March Orders").

Ryan filed a verified motion to reconsider the March Orders ("Motion to Reconsider") on March 24, 2010. Following a hearing on the matter ("the April 29 hearing"), the Bankruptcy Court denied Ryan's Motion to Reconsider.

Ryan appealed to this Court on May 25, 2010. This Court entered a consent order extending the briefing schedule on appeal. On June 9, 2010, before any briefs had been filed on appeal, the Bankruptcy Court entered a memorandum opinion to supplement its findings of fact and conclusions of law regarding Ryan's Motion to Reconsider.

Ryan filed its opening brief on August 25, 2010. Meanwhile, Debtors filed a Second Amended Joint Plan of Liquidation on August 9, 2010, which was confirmed by the Bankruptcy Court on September 14, 2010. Debtors filed their brief in opposition to Ryan's opening brief on September 27, 2010. Ryan filed its reply brief on October 6, 2010.

This Court must now determine whether the Bankruptcy Court erred in denying the Motion to Compel, granting Debtors' Motion to Reject, and denying Ryan's verified Motion to Reconsider.

## II. STANDARD OF REVIEW

On appeal, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. This Court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th

Cir. 2004). When reviewing for clear error, the "court will affirm the Bankruptcy Court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)).

### III. ANALYSIS

#### A. *Ryan's Motion to Compel Assumption*

Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).[2] As a general rule, an executory contract may be assumed or rejected any time prior to plan confirmation. 11 U.S.C. § 365(d)(2). However, Section 365(d)(2) provides that "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." *Id.*

This subsection permits the Court to compel the trustee or debtor-in-possession to make a decision. It does not, however, permit the non-debtor party to dictate whether the contract should be assumed or rejected. As the Bankruptcy Court correctly explained,

> The purpose of this exception . . . is to accommodate situations where the non-debtor party to a contract needs to know whether the contract will be assumed or rejected "in order for the [non-debtor] party to take actions either to perform its end of the contract or to mitigate its damages."

---

[2] Although Section 365(a) speaks in terms of trustees' powers, the Bankruptcy Code also grants Section 365(a) powers to the debtor-in-possession in a Chapter 11 case. *In re Harborview Dev.*, 152 B.R. 897, 899 n.3 (D.S.C. 1993) (citing 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.")).

5

(App. 87 (quoting 3 *Collier on Bankruptcy*, P 365.05[2][b], at 365-30 (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev.)).)

In this case, Ryan did not file a motion merely to compel a *decision*; it filed a motion to compel *assumption*. As the Bankruptcy Court correctly concluded, "[t]here is no authority supporting Ryan's position that the non-debtor party to an executory contract should be able [to compel] the Debtors to assume the Ryan Contract."[3] (App. 87.) Indeed, Ryan conceded at the April 29 hearing before the Bankruptcy Court that it had not found any authority supporting its position. (App. 166.)

Moreover, Section 365 of the Bankruptcy Code leaves the decision whether to assume or reject to the debtor's sound business judgment. *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert denied sub nom.*, *Lubrizol Enters., Inc. v. Canfield*, 475 U.S. 1057 (1986). Permitting the non-debtor to compel a certain result would conflict with the Fourth Circuit's firmly established precedent that the debtor's decision must "be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Id.* Accordingly, the Bankruptcy Court's Order denying Ryan's Motion to Compel will be affirmed.

---

[3] Ryan's assertion that "[t]he Bankruptcy Court misconstrued Ryan's Motion to Assume" (Br. Appellant 15) is without merit. The Bankruptcy Court read Ryan's motion for what it was—a "Motion . . . to Compel Debtor to Assume Executory Contract." Whether Ryan in fact sought to compel assumption or merely "wanted Circuit City to consider assumption" (Br. Appellant 16) makes no difference, because the decision to assume or reject an executory contract rests in the sound business judgment of the *debtor*.

6

**B.** *Debtors' Motion to Reject*

As noted above, a debtor's determination to reject an executory contract is governed by the business judgment rule. *See Lubrizol*, 756 F.2d at 1046–47; *In re Extraction Techs. of Va., L.L.C.*, 296 B.R. 393, 399 (Bankr. E.D. Va. 2001). "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Courts should not interfere with a debtor's decision unless that decision "is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol*, 756 F.2d at 1047.

Under this standard, a debtor's decision to reject a contract is presumed rational. *See In re Pilgrim's Pride Corp.*, 403 B.R. 413, 428 (Bankr. N.D. Tex. 2009). The party opposing a debtor's proposed exercise of business judgment bears the burden of rebutting the presumption. *Integrated Res.*, 147 B.R. at 656. Only if the non-debtor shows that the debtor chose to reject the contract for an "irrational reason" does the debtor bear the "additional burden" of proving that they selected the contract for rejection in a rational manner. *Pilgrim's Pride*, 403 B.R. at 428. "Irrational bases of decision-making include racial and gender discrimination and retaliatory animus," *In re Old Carco LLC*, 406 B.R. 180, 193 (Bankr. S.D.N.Y. 2009), or, for example, making a decision "through use of an Ouija Board," *Pilgrim's Pride*, 403 B.R. at 427.

7

In this case, Ryan has not alleged, let alone adduced evidence tending to establish, any such irrational basis for Debtors' decision. Rather, Ryan contends that the simple act of objecting to Debtors' Motion to Reject "created a contested matter, rebutting the presumption of business judgment" (Br. Appellant 20), and requiring Debtors to put on evidence establishing that the Ryan Contract was "a burden to the bankruptcy estate" (App. 150). In Ryan's view, the Bankruptcy Court erred in approving rejection because the Ryan Contract is in fact of value to Debtors.

Ryan misunderstands the purpose and effect of the business judgment rule in the context of a motion to reject. "A motion to . . . reject 'should be considered a summary proceeding, intended to efficiently review the . . . debtor's decision to . . . reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.'" *Old Carco*, 406 B.R. at 188 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99 (2d Cir. 1993)).

As several courts have remarked,

> [C]ourt approval under [§] 365(a) . . . except in extraordinary situations, should be granted as a matter of course. To begin, this rule places responsibility for administering the estate with the trustee [or debtor-in-possession], not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the [Bankruptcy] Code. Second, this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements.

8

*In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. Utah 1981) (quoted in *Old Carco*, 406 B.R. at 188 n.5; *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987)).

For these reasons,

> [Where] [t]here is nothing in the record from which it could be concluded that the debtor's decision . . . could not have been reached by the exercise of sound (*though possibly faulty*) business judgment in the normal process of evaluating alternative courses of action . . . the business judgment rule *require[s]* that the debtor's factual evaluation be accepted by the court[.]

*Lubrizol*, 756 F.2d at 1047–48 (emphasis added).

Several courts have echoed the *Lubrizol* view that the debtor's decision need not be factually correct in order to pass muster under the business judgment rule. *See, e.g.*, *Old Carco*, 406 B.R. at 196 (noting that the court's role is not to "evaluat[e] . . . whether the Debtors made the *best or even a good* business decision," but merely to determine whether "the decision was made in an exercise of the Debtors' business judgment") (emphasis in original); *Wheeling-Pittsburgh*, 72 B.R. at 849 ("[W]hether the debtor is making the best or even a good business decision is not a material issue of fact under the business judgment test."); *Pilgrim's Pride*, 403 B.R. at 430 ("[W]hatever authority a bankruptcy court has to question the business judgment of a debtor in possession, the court may not go so far as to second guess a choice of business strategy.").

For example, the non-debtor in *Wheeling-Pittsburgh* opposed rejection where rejection would have resulted in a 4.5 million dollar unsecured claim against the debtor's estate. 72 B.R. at 850. The court nevertheless approved rejection, reasoning that, "[p]resumably, the debtor weighed the potential increase in unsecured claims against the

9

savings resulting from rejection of the Contract, and made its decision in light of that analysis." *Id.* The court found it significant that the official committee of unsecured creditors supported the debtor's decision, because "[i]t cannot be supposed that the committee of unsecured creditors, which is duty bound to act in the best interests of unsecured creditors, would support a decision which is inimical to the best interests of the debtor's estate and unsecured creditors." *Id.*

In this case, Debtors stated on the record that they sought to reject the Ryan Contract because they believed (1) that the Ryan Contract provided no economic benefit to their estate or general creditors, and (2) that Ryan sought assumption to elevate the priority of its contingent unsecured claim for pre-petition work to an administrative claim entitled to priority under Section 503 of the Bankruptcy Code.[4]

Ryan has not offered—nor does it contend that it could offer on remand—evidence showing that Debtors did not reject the contract for the reasons stated.[5] At best,

---

[4] At the April 29 hearing, Debtors explicitly proffered that it was their business judgment "not to elevate a prepetition, general unsecured claim for prepetition work . . . to the post-petition arena, because there was no work to be done," and they did not think it responsible to "tie the trustee's hands" by retaining professionals for services which could be negotiated after plan confirmation. (App. 162.)

[5] Ryan contends that it did not present evidence at the March 8 hearing because it did not believe that the hearing would be a "final" hearing at which evidence could have been taken. In an attempt to justify this belief, Ryan points to its Motion to Appear by Phone, which stated:

> The parties agree that any issues presented at the March 8 Omnibus Hearing with respect to Ryan's Plan Objection, the Motion to Compel, and the Motion to Reject will be confined to legal argument, with the understanding that if there are any evidentiary issues that they will be deferred to another date subject to entry of a scheduling order by the Court.

(Mot. Appear Phone ¶ 6.)

This Court is not persuaded that Ryan justifiably believed the hearing would be limited to legal argument. As Ryan clarified at the April 29 hearing, Debtors never in fact agreed—as Ryan had represented in its Motion—that the hearing would not be evidentiary in nature. (*See*

Ryan questions whether Debtors' determination was factually correct, which is not the proper focus under the business judgment standard.[6]

Moreover, the undisputed facts support Debtors' decision. Debtors' requests for tax refunds—the recovery of which formed the basis for the Ryan Contract—had already been denied by Hawaiian authorities, and the Creditors' Committee—a statutory body created to faithfully administer the estate in bankruptcy—supported rejection of the contract.[7] (*See* App. 163.)

As to Debtors' concern that Ryan simply sought to elevate the priority of its pre-petition claim, several courts have recognized that

> [t]he assumption of an executory contract has the effect of making the debtors' obligations an administrative expense of the estate. "Rejection" is

---

App. 147.) To the contrary, the agenda for the March 8 hearing explicitly provided that the Motion to Compel and Motion to Reject were "Contested Matters—Going forward." (App. 98–100.) To the extent that Ryan argues it had insufficient notice of the hearing, Ryan's own Motion to Appear by Phone clearly shows that Ryan knew for several weeks that a hearing on these contested matters would be held on March 8.

In any event, the evidence Ryan would apparently have offered amounts to a mere disagreement with Debtors' business decision, which is insufficient to rebut the business judgment rule's presumption.

[6] To the extent that Ryan argues rejection may harm Ryan, any such harm is also not a proper consideration for this Court. "Under the business judgment standard, 'the effect of rejection on other entities is not a material fact to be weighed.'" *Old Carco*, 406 B.R. at 188 (quoting *Wheeling-Pittsburgh*, 72 B.R. at 848); *see also Lubrizol*, 756 F.2d at 1048.

Similarly, Ryan's argument that the contract costs Debtors nothing misses the mark, because "'[b]urdensome property' is not the relevant test under the business judgment standard[.]" *Old Carco*, 406 B.R. at 192 (quoting *In re Stable Mews Assocs., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984)). Whereas the burdensome property test permits rejection of an executory contract only when continued performance results in an actual loss to the estate, "[t]he business judgment test provides considerably more flexibility to a trustee." *Stable Mews*, 41 B.R. at 596 (internal citations omitted).

[7] It is unclear from the record whether the Bankruptcy Court knew of the Creditors' Committee's support when it ruled initially on Debtors' Motion to Reject. Nevertheless, the Creditors' Committee unambiguously stated its support of rejection at the April 29 hearing (*see* App. 163), and this Court must examine the "entire evidence" when reviewing for clear error, *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948).

11

> merely the trustee's business judgment that the estate should not assume the burden of an executory contract as an administrative expense. Thus, the nondebtor party has an unsecured claim for such nonperformance instead of an administrative expense claim. It is often not advisable for a trustee or debtor-in-possession to assume [executory contracts].

*In re Ortiz*, 400 B.R. 755, 763 (C.D. Cal. 2009) (quoting *In re Bergt*, 214 B.R. 17, 22 (Bankr. D. Alaska 1999)). The fact that Ryan has filed an administrative-expense claim against Debtor in the amount of $175,014.19 appears to buttress Debtors' stated rationale.

In short, the business judgment standard requires only "that logic . . . be applied to the facts facing the decision maker to reach a sound business decision." *Pilgrim's Pride*, 403 B.R. at 427 n.33. Mere disagreement with the debtor's decision is not enough to rebut the business judgment presumption. *See Old Carco*, 406 B.R. at 199. The Bankruptcy Court concluded that Debtors' decision was not in bad faith or manifestly unreasonable, and this Court is not left with the "definite and firm conviction," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948), that the Bankruptcy Court erred in this regard. *Cf. In re Harborview Dev.*, 152 B.R. 897, 898–99 (D.S.C. 1993) (affirming approval of rejection because trustee believed he used sound business judgment in rejecting lease, and "[n]o evidence was submitted to show that the trustee was exercising bad faith, whim or caprice").

For these reasons, the Bankruptcy Court's Order approving rejection will be affirmed.

### C. *Ryan's Motion for Reconsideration*

Because this Court finds that the Bankruptcy Court properly denied Ryan's Motion to Compel and authorized Debtors' rejection of the Ryan Contract in the first

12

instance, the Court need not address whether the Bankruptcy Court erred in denying Ryan's Motion to Reconsider.

## IV. CONCLUSION

Finding neither legal nor factual error in the Bankruptcy Court's ruling, this Court will affirm the Bankruptcy Court's decision.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/

                                    Henry E. Hudson
                                    United States District Judge

Date: Nov. 15, 2010
Richmond, VA