UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:               .   Case No. 08-35653 (KRH)
                 .
                 .   Chapter 11
                 .   Jointly Administered
CIRCUIT CITY STORES,    .
INC., et al.,         .   701 East Broad Street
                 .   Richmond, VA 23219
                 .
        Debtor.     .
                 .   November 4, 2010
. . . . . . . . . . . . ..   1:30 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Tavenner and Beran, PLC
                 By:  PAULA S. BERAN, ESQ.
                      LYNN L. TAVENNER, ESQ.
                 20 North Eighth Street, 2nd Floor
                 Richmond, VA 23219

                 Pachulski Stang Ziehl and Jones LLP
                 By:  ANDREW W. CAINE, ESQ.
                 10100 Santa Monica Boulevard
                 Los Angeles, CA  90067-4100

For Kimco Realty Group  Christian and Barton LLP
and Inland Groups:     By:  A.C. EPPS, JR., ESQ.
                 909 East Main Street, Suite 1200
                 Richmond, VA 23219-3095

For DIRECTV:          Williams Mullen
                 By:  W. ALEXANDER BURNETT, ESQ.
                 200 South 10th Street, Suite 1600
                 Richmond, VA 23219

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311   Fax No. (609) 587-3599

1          COURTROOM DEPUTY:  All rise.  United States

2     Bankruptcy Court for the Eastern District of Virginia is now in

3     session.  The Honorable Kevin R. Huennekens presiding.  Please

4     be seated and come to order.

5          COURT CLERK:  In the matter of Circuit City Stores,

6     Incorporated, hearing on matters as set out in proposed amended

7     agenda.

8          THE COURT:  All right, Ms. Beran.  Let me apologize

9     to you for that interruption.  Apparently, the recording system

10    had stopped completely.  So, unfortunately, everything you've

11    already said is not on the record and you may want to start

12    over.  I'll let you repeat anything you think you really want

13    on the record.  Obviously, I heard what you said and so I'll

14    leave it to your discretion, you know, how you want to restart

15    this matter.

16         MS. BERAN:  Thank you, Your Honor.  May it please the

17    Court.  Once again, for the record, Paula Beran of the law firm

18    of Tavenner and Beran, as well as Lynn Tavenner of Tavenner and

19    Beran.  We are here before Your Honor as counsel for the

20    Circuit City Stores, Inc. Liquidating Trust acting through its

21    trustee, Alfred H. Siegel.  Also with us today from a counsel's

22    perspective on the telephone is Mr. Andrew Caine of Pachulski

23    Stang law firm.

24         There is one matter in these bankruptcy cases before

25    Your Honor this afternoon and that's the motion for an order

1  establishing procedures for avoidance action adversary

2  procedures.  In connection with that, Your Honor, there were

3  four responses filed.  As previously indicated to the Court, I

4  will address the concerns raised in each of those responses in

5  connection with my context of explaining to the Court the

6  procedures as proposed, the basis for the same, and any slight

7  modifications that we would represent to the Court and would

8  address in connection with the order, and the modifications

9  really go more to misinterpretations and/or unclarity based on

10  reading responses of that's not really what was intended kind

11  of modifications.

12        To start off with though, Your Honor, we -- the trust

13  does want to let the Court, as well as all parties in interest

14  in these bankruptcy cases, know that the trust doesn't believe

15  that there's just one set of correct procedures.  Furthermore,

16  the trust is very sympathetic to the concerns raised by the

17  respondents and/or are there any other concerns that may be out

18  there.  In fact, you know, till about Sunday evening, many of

19  these respondents were constituents of the counsel for the

20  committee who was on the line, as well as standing before you.

21  So, we're sympathetic.

22        We're trying to accommodate but at the same time the

23  trustee acting on behalf of the trust does have fiduciary

24  duties to these estates and in connection with the same, the

25  trust does believe that the set of procedures before Your Honor

4

1  makes the most sense subject to the modifications I will talk

2  about, under the circumstances of these cases.  That's not to

3  say that they were the best in other cases and that other

4  procedures haven't worked in other cases.  We're confident they

5  have and, in fact, both my law firm and our co-counsel's firm

6  has been involved under different procedures, but we tried to

7  modify and/or adjust accordingly, given the circumstances of

8  these cases.

9        With that being said, Your Honor, first and foremost,

10  we would make it clear that all of these procedures would be

11  without prejudice for a defendant to come in and seek

12  modifications for cause.  But, given the very fact of these

13  fiduciary duties of the trustee that I speak of, as well as

14  that, at this point in time, Your Honor, it looks like there

15  could be up to or even over 600 adversary proceedings.  We

16  believe it more appropriate to have procedures in place for all

17  and then let the exceptions come back to Your Honor for -- to

18  seek additional relief.

19        Briefly, Your Honor, the procedures provide for a

20  case-specific summons as Your Honor's well-aware.  Summonses

21  that are normally issued in this Court provide a pretrial, as

22  well as some other things.  We would propose that has been used

23  -- a summons that has been used in other cases where there have

24  been a number of adversary proceedings filed -- what commonly

25  we practitioners refer to as a case-specific summons.  In

1  addition, Your Honor, given the volume of the cases, the

2  procedures propose that there will be additional time in which

3  to serve the summonses.  And then in connection with service of

4  the summons, to be fair to the defendants, the procedures

5  provide that the answer period would be based upon the issuance

6  of the summons and not -- I mean, the service of the summons

7  and not the issuance of the summons.

8        Similarly, Your Honor, the procedures provide that

9  the parties can stipulate to an extension of time for the

10  defendants to respond to the complaint without having to come

11  in to Your Honor and seek leave of Court each and every

12  instance.  But, it's a set period of time because in all fair

13  candor to the Court, we recognize that we are proceeding in the

14  Eastern District and the fact that the Eastern District is

15  notorious and think that it -- for good reason -- to move cases

16  along.

17        In connection with these procedures, Your Honor,

18  there is also a stay of requirement to conduct scheduling

19  conferences under the Rule 26(f), as well as the requisite

20  local rules.  I think that makes sense in connection with the

21  next phase of the procedures that I will discuss, specifically

22  the mediation procedures.  Similarly, Your Honor, there is a

23  provision that stays discovery for a period of time to allow

24  mediation to move forward and, thereafter, if mediation is not

25  successful or if the cases are not otherwise settled, then

6

1  under certain triggers, they're -- the discovery is then

2  triggered.

3          Once again, Your Honor, we are not standing before

4  you saying there will never be an exception to that rule.

5  There could be instances where there may be a need to have some

6  discovery, but what we're saying, this is all once again

7  without prejudice for a party to come in and, for cause, seek

8  modification.

9          The mandatory mediation procedures, Your Honor,

10 they're -- we tried to balance the need for specificity, as

11 well as recognize that flexibility is beneficial, as well.

12 But, we did want all parties to know, in essence, the rules of

13 the game, but with the hopes that everybody would be flexible

14 and do it in a manner that was mutually beneficial to the

15 parties so that mediation either could be successful on a

16 cost-effective basis and/or at a point in time when mediation

17 was not, we could move to the other stages of litigation.

18         So, in connection with the same, Your Honor, within

19 60 days after the defendant has filed its response, there needs

20 to be mediation having been commenced, specifically that would

21 be agreeing to a mediator.  And the counsel has proposed a list

22 to Your Honor but we would respectfully submit to the Court

23 that, you know, that list is a proposed list.  It is a

24 Court-approved list.  We do believe that the list is

25 representative of all parties' interests.  Your Honor, I think,

1  is aware of most of the people, if not all the people, on that

2  list.  We tried to get people from smaller firms, as well as

3  larger firms.  Nonetheless, we believe everybody on that list

4  does have significant experience in the avoidance action area

5  and believe that any and all of them would be excellent

6  mediators in connection with the adversary proceedings that we

7  intend to file here and starting more than likely this

8  afternoon.

9          There is a -- our drafting does seem to have let a

10  bit of misinterpretation, specifically where it says, "If any

11  defendant does not timely select a mediator, then the plaintiff

12  shall promptly assign a mediator to the case and so notify the

13  defendant."  That was really addressed at, Your Honor -- to the

14  extent, the defendant -- we hadn't heard from a defendant.  So,

15  to make it abundantly clear, that would be the case if we don't

16  hear from a defendant.  However, if it's an instance where the

17  defendant wants one mediator and the plaintiff believes that

18  another mediator would be beneficial, we would submit we'll

19  agree to the defendant's mediator because I just represented to

20  your Court and surely believe it, all the mediators on the

21  proposed list are excellent mediators and we'd be happy with

22  any one of them.  So, that would be one thing that we would

23  want to make clear.

24          In addition, Your Honor, then there are additional

25  procedures for mediation.  At least ten days prior to the

8

1   scheduled mediation, the parties shall exchange position

2   statements and shall submit the statements to the mediator.

3   The position statements have a specific length to them and the

4   mediator at his or her discretion may require additional

5   information after receiving the papers.  The mediator's fee

6   shall be split equally by the parties and payment arrangement

7   satisfactory to the mediator must be completed prior to the

8   commencement of the mediation.

9          The mediator will preside over the mediation with the

10  full authority to determine the nature and order of the

11  parties' presentations.  In addition, once again, in the need

12  to try and be flexible, the mediator may implement additional

13  procedures which are reasonable and practical under the

14  circumstances, recognizing that there isn't one fit for

15  everything.  We've tried to have some flexibility in connection

16  with the same.

17         The parties will participate in the mediation as

18  scheduled and presided over by the mediator in good faith and

19  with a view towards reaching a consensual resolution.  In

20  connection with the same, we want to make it clear that there

21  shall be people with authority to settle at the mediations.

22  However, to the extent the mediator believes that it's

23  necessary and/or appropriate, once again building in some

24  flexibility, the mediator at his or her discretion may allow a

25  party represented to appear telephonically.

9

1          The -- once again, Number 6 just provides for some
2  flexibility as it relates to the mediator's conduct of the
3  respective mediation.  All proceedings and writings incident to
4  the mediation will be considered privileged and confidential
5  and should not be reported or admitted into evidence.  We want
6  to encourage openness and candor in connection with trying to
7  get to a resolution.

8          The mediation must be concluded no later than 120
9  days after the date in which the debtor -- excuse me -- the
10 defendant has filed its response to the complaint.  And
11 similarly, Your Honor, then there is Number 9, provides certain
12 mechanisms to the extent anybody's abusing the process to come
13 in before Your Honor and seek some type of summary judgment
14 and/or a motion to dismiss.  Within ten days after the
15 completion of the mediation, we have a trigger mechanism
16 proposed so the mediator will file a report and that report
17 then can trigger some other events, specifically the scheduling
18 of pretrial conferences and other things associated with
19 discovery and the like.

20         That concludes specifically the mediation-type
21 procedures that are being requested today.  In addition, Your
22 Honor, there are some additional procedures related to these
23 adversary proceedings, specifically that pretrial scheduling
24 conferences and motion hearing dates will be on dates that are
25 omni dates established with the Court's scheduling clerk, so

1 that all parties know that up front and aren't anticipating

2 having to come in at some other date.

3      In addition, Your Honor, we do seek the relief that a

4 motion affecting all adversary proceedings may be filed in the

5 main case, as opposed to in each individual adversary

6 proceeding, with the caveat that notwithstanding that it's

7 filed in the main case, all defendants shall receive notice of

8 that pending motion.  In addition, Your Honor, they want to

9 make it abundantly clear that the Court's -- unless

10 specifically overridden by these procedures, the Court's case

11 management order as amended will still remain in full force and

12 effect.  And finally, Your Honor, we have a requirement that

13 these procedures -- notice of these procedures and the

14 procedures themselves must be served with -- served on each

15 defendant with the summons and complaint in each adversary

16 proceeding so that everybody knows the rules of the game.

17      In connection with the responses, Your Honor, and

18 instead of going through each response, because some of them

19 have overlapping issues, I've kind of tried to lump them

20 together to address each accordingly.  In connection with the

21 mediation, when it wasn't explicitly clear in that -- it is

22 contemplated, Your Honor, for the most part, that these

23 mediations will take place in Richmond.  In connection with

24 that, we -- the trust believes that's the appropriate.  These

25 cases are pending here.  The trust representatives are many of

1   the former employees of the debtor -- not -- most of the trust

2   representatives are former employees of the debtor so they're

3   here in Richmond.  Your Honor, we've also in discussing with

4   the proposed mediators -- there's an agreement that they will

5   not be charging for actual travel time.  So, for those reasons,

6   we are contemplating that most of them will be in Richmond.

7            Once again, though, Your Honor, we would emphasize

8   that we are flexible and we will work -- and if it makes sense

9   and it's in the best interest of the estate to agree on a

10  one-off basis to have these mediations held someplace else, we

11  represent to Your Honor that we will do that.  But, it has to

12  be in the best interest of the estate.  I would also add, Your

13  Honor --

14           THE COURT:  Well, the party -- when you were talking

15  about earlier that these procedures would be without prejudice

16  to any party seeking modification for cause, if there was a

17  disagreement between the trust and the party, would the party

18  be free to file a motion with the Court to ask that the

19  mediation be conducted in some other place?

20           MS. BERAN:  Absolutely, Your Honor.  At that point in

21  time, if there was an agreement on that, absolutely.  And I

22  would note for Your Honor in connection with that, one of the

23  mediators on the list, whether he -- if he's an approved

24  mediator -- did let us know that he does have offices in

25  California.  And he would not charge for his travel time if it

 1  makes sense to do it out on the west coast.  In addition --

 2          THE COURT:  Which one was that?

 3          MS. BERAN:  That is Mr. Wasserman --

 4          THE COURT:  Okay.

 5          MS. BERAN:  -- of the Venable firm.

 6          THE COURT:  Very good.  Thank you.

 7          MS. BERAN:  But, he specifically contacted us and

 8  informed us of that and asked -- indicated that we would make

 9  the same representation to the Court.

10          THE COURT:  Thank you.

11          MS. BERAN:  Based on that, Your Honor, we believe

12  we've addressed the concerns and either addressed them and/or

13  have taken consideration of them and believe that the

14  procedures we've proposed are appropriate under the

15  circumstances and -- but are, of course, willing to modify as

16  the Court deems appropriate.

17          Similarly, Your Honor, and I guess this is maybe the

18  overlapping -- most overlapping issue is the proposed cost

19  sharing with this kind of overlying theme that these are

20  -- it's being proposed as a leverage issue.  In fair candor,

21  Your Honor, it was not contemplated as a leverage issue.  We

22  don't believe it is a leverage issue.  At the end of the day,

23  if it ultimately does play a role, it was not the intended

24  role.  The reason why we did that, Your Honor, is -- proposed

25  it or suggested it, is the trust -- the trustee acting on

13

1  behalf of the trust has a fiduciary duty now to maximize return

2  to creditors.  And part of that is minimizing costs.

3          It's not like the trust, through the trustee, is

4  going to go out there and sue on frivolous causes of action.

5  Unfortunately, whether we like it or not, Congress has said

6  under certain circumstances, this is a preference and they

7  should be looked at, examined, and if it makes a cost benefit

8  to the estate to pursue, they should be pursued.  So, yes, we

9  concede -- I don't think there would be anything other than

10  conceding -- that we will be the ones -- the plaintiff will be

11  the one suing, but nonetheless it's suing based on something

12  that Congress thought appropriate.

13          I can also represent to Your Honor here -- and while

14  this is not in the pleadings, I can represent it myself as

15  having reviewed a substantial number of these pleadings now, as

16  well as then, in discussions with co-counsel, as well and

17  representatives of the trust -- that the suits that will be

18  filed here, starting shortly.  There is a $20,000 combined

19  exposure.  And when I say 20,000 combined exposure, it's

20  preference plus AR of 25 of exposure.  And specifically, when

21  we say preference, that has been vetted for new value, so it's

22  net of new value.

23          So, the concerns that we may be suing for something

24  just over the statutory limit provided by Congress in a manner

25  that isn't cost efficient or cost effective is, while I

1  understand, may have been a concern without information or

2  knowledge, I -- based on the representation, that's not going

3  to happen.  It's not like there's going to be a 10,000 suit

4  where there's 9,000 of potential new value and we're trying to

5  extract something for something more.

6       Your Honor, in fair candor, we will concede that in

7  other jurisdictions and other cases that there isn't the

8  sharing.  There are -- there is sharing in other jurisdictions

9  and we believe under the circumstances before Your Honor and

10  under these cases that this sharing makes the most sense.

11       Many of the -- I think it's three of the four

12  respondents indicated that there should be some type of opt-out

13  procedures, and I think there were really two categories of

14  opt-out procedures suggested, one for smaller matters.  There

15  should be a threshold of which the mediation is not required.

16       Well, in all fair candor, I think we could stand up

17  here before Your Honor and argue back and forth.  In some

18  respects, it's those cases that even need mediation sometimes

19  more so than the larger ones because unfortunately in those

20  situations, you're dealing with a client maybe who doesn't

21  understand the nuances associated with preference law, who says

22  this is wrong.  What are you telling me?  I'm owed money from

23  this entity and now I have to give some money back?  I mean,

24  Your Honor has experienced that, I've experienced -- everyone

25  in this courtroom has experienced that.  And sometimes, it is

1  just beneficial for an independent third party to look at your

2  client and say, unfortunately, although it's unfair that is

3  what the bankruptcy code provides.  So, we respectfully submit

4  that there really doesn't need to be specific out-out or a

5  threshold issue for the smaller matters, especially given what

6  my representation of those suits that are going to be filed in

7  general.

8            Similarly, Your Honor, there is some concern that

9  there should be opt-out procedures for larger, more complicated

10 cases that might not all otherwise be amenable for mediation.

11 Once again, Your Honor, we're here before you saying we want to

12 come up with procedures and establish procedures for the

13 majority of the cases.  We recognize that there may be unusual

14 circumstances where mediation just is not going to work, and

15 under those circumstances, once again, Your Honor, we've said

16 this is without prejudice for a party to come back in to Your

17 Honor and explain why it just doesn't make sense in this one

18 instance.

19            Another category of concern and/or objection is the

20 concept of staying discovery and the procedures really do

21 intend or try to encourage informal discovery, informal

22 exchange of information.  And from the plaintiff's perspective,

23 that's the only way mediation works, is that that information

24 is exchanged voluntarily.  Let's get it before we have a lot of

25 expenses associated with depositions, drafting of

16

1  interrogatories, request for admissions.  Let's informally

2  exchange the information and that, kind of, is the concept

3  behind Rule 26.  It's the concept -- this concept of good

4  faith, good faith, exchange that information.  Rule 26 provides

5  for that.  Our local Rule 726 provides for that, as well as our

6  local Rule 9013.  All of those rules talk about this concept of

7  good faith.  And we represent to Your Honor that the plaintiff

8  absolutely will stand before you in every instance, exercising

9  that same good faith and that's what these procedures are

10  intended to encourage and facilitate.

11         But, finally, Your Honor -- and I don't mean to keep

12  beating a dead horse -- once again, though, if under

13  appropriate circumstances it makes sense for there to be some

14  formal discovery before the mediation, it's without prejudice

15  to any party to come back in before Your Honor and explain

16  those -- the circumstances which would warrant the same.

17         In addition, Your Honor, there was a concern that the

18  exchange of the position statement should be not just to the

19  mediator but should be shared between the parties.

20  Understanding that's done in other mediations, understanding

21  that sometimes mediators prefer that, we would respectfully

22  submit in all humble experience when you have that exchange,

23  the document becomes more of a posturing statement and you're

24  not as willing to show that you recognize your weaknesses

25  and/or strengths and it's mainly -- we have all these

1  strengths.  And we would respectfully submit that parties may

2  be more -- and their counsel may be more inclined to get to the

3  heart of the matter by exchanging those between counsel and the

4  parties, as opposed to just submitting them to the mediator for

5  his or her eyes only.

6         There were concerns that some of these procedures may

7  be premature.  We would respectfully submit once again that

8  they're not premature.  In fact, Your Honor, more than likely

9  as soon as an order is entered, there will be adversary

10 proceedings starting to be filed.  And we need procedures in

11 place before the adversaries are filed, for example, and, you

12 know, like we discussed of the summons.  If procedures aren't

13 in place, the normal Court's procedures are going to issue the

14 summons pre-trial until we have a modified summons, a modified

15 answer.  The trustee, asking on behalf of the trust, thought it

16 was inefficient to address certain of the procedures now and

17 others of the procedures after the filing of the complaints,

18 and therefore, we respectfully submit that the procedures are

19 not premature, that they're actually ripe and should be

20 considered and approved by Your Honor.

21        Finally, Your Honor, I think -- and I'm summarizing

22 -- I mean, I'm happy to address any concerns raised after each

23 of the respondents stands up, but I think the last category of

24 issues raised in the responses were that there appeared to be a

25 short timetable to accomplish all the mediations that needed to

1  happen.  The 60-day window was too short and that something

2  more along the time line of 90 was necessary.

3         Your Honor, we recognize it's a short timetable.

4  We're cognizant of that.  While we all would like more time, in

5  fair candor to the Court, we recognize these cases are going to

6  be pending in the Eastern District and the Eastern District

7  does like to maintain control over the docket and move the

8  docket along.  And we thought it appropriate given the fact

9  that there have been extensions to otherwise normal rules in

10  the Eastern District that a 60-day time line was appropriate.

11  I can tell you this, that the mediators -- we have discussed

12  with all of the mediators except one but we spoke with someone

13  in his office and they are ready, willing and able so we

14  believe we have enough mediators in place to handle the volume.

15  The trust representatives will be available and counsel from

16  the plaintiff's perspective will be available to answer

17  questions, return calls and the like to make this process be as

18  efficient as possible.

19         But, under the extraordinary circumstance, once

20  again, if there needs to be some additional flexibility for

21  whatever reason, the mediation hasn't occurred, it's without

22  prejudice for either the plaintiff or the defendant to come

23  back in -- or maybe both -- to come back in before Your Honor

24  and explain why additional time may be necessary to finalize

25  and/or conclude mediation.

1          With those addressed, Your Honor, we respectfully

2   submit that based -- with the modifications as proposed to

3   clarify intent on procedures and make sure everyone's on board,

4   that the procedures before Your Honor are warranted and the

5   best under the circumstances currently before Your Honor.

6          THE COURT:  All right.  Before you sit down, one of

7   the things I would like you to address, you -- when you were

8   talking about the fee splitting requirement and some of the

9   objections been raised there, too.  I believe it was the Inland

10  Managing and the entities had proposed in the alternative that

11  if the defendant was the ultimate prevailing party in any

12  subsequent adversary proceeding trial that they get the

13  mediation fees reimbursed.  What would the estate's position be

14  on that type of a modification?

15         MS. BERAN:  Well, first and foremost, Your Honor,

16  from the estate's perspective is the estate through, you know

17  -- its professionals are analyzing these.  Now, in connection

18  with the actual causes of action, you can analyze that.  In

19  addition, as Your Honor knows, you can analyze some of the

20  affirmative defenses but you can't completely analyze all of

21  the affirmative defenses.

22         And so, from the first -- for the first perspective,

23  it would seem that if it was on an affirmative defense that

24  wasn't otherwise known or should have been known to the estate,

25  that would seem to be -- of course, establishing up front that

1  there is a basis to have the cost splitting be the procedure

2  -- that would seem to cut across the rationale.  But,

3  nonetheless, I can represent to Your Honor that, to the extent

4  that -- we're here.  We're trying to meet fiduciary duties and

5  make sure that the trust acting on -- trustee acting on behalf

6  of the trust is meeting his fiduciary duties.  If it's -- the

7  Court believes it's appropriate that there be that type of

8  provision, the trustee absolutely would agree to the same,

9  because -- but at least at that point in time, he has at least

10  exercised fiduciary duty and has been told by an appropriate

11  authority that now there will be some type of cost sharing.

12          THE COURT:  All right.  Thank you.

13          MS. BERAN:  Mm-mm.

14          THE COURT:  All right.  Does any party wish to be

15  heard in connection with the motion?  Mr. Epps?

16          MR. EPPS:  Good afternoon, Your Honor.  A.C. Epps,

17  Jr. -- excuse me -- on behalf of two different groups of

18  objectors.  I am here for the Kimco Realty Group.  I am also

19  here on behalf of my associate, Jennifer McLemore, with regard

20  to the Inland Group which was filed by her.

21          Your Honor, I will try not to be scattershot in my

22  approach about this, although to a certain extent by necessity

23  the pleadings themselves were somewhat scattershot, picking and

24  choosing things that we wanted the Court to refer to.  I hope

25  the Court will understand that if I skip something in the oral

1  argument that is in our pleading it is mostly out of time

2  pressure and not because I have laid it by the side of the road

3  because there are a couple of things I particularly want to

4  talk about.

5       First and foremost, Your Honor, a fundamental problem

6  with these procedures is the mediation costs.  I don't blame

7  the trustee for giving this a go, to try not only to sue 600

8  people in a week, but -- and not only to require that they go

9  to mediation which I'm not necessarily against, but to say, and

10  by the way, I'm suing you and you will have to pay half of the

11  mandatory mediation and you will have to make satisfactory

12  arrangements for payment with the mediator before you have a

13  mediation and if the mediation doesn't occur in a given period

14  of time, we're going to seek a default judgment against you.

15       I think that while bankruptcy is -- has many judges

16  in many courts and I suspect it's true that the trustee may be

17  able to find a Court -- indeed I think Mr. Schwarzschild's

18  pleading has a Court.  I think Collins and Aikman did this and

19  split the mediation cost.  The overwhelming weight of cases has

20  said what Judge Walrath's general order in Delaware says, which

21  is you debtor, you liquidating trust, you owner of the rights

22  to bring these avoidance suits are bringing them, you're doing

23  the weighing of them, and you will pay the mediation costs.  I

24  think that that is appropriate but I think it's fair and I

25  don't think the other approach is fair.  They're the ones who

1  need to weigh the cases and decide which ones to bring and if a

2  case is worth bringing and it needs to be mediated, they should

3  pay the mediation fee.

4          I realize this is not Delaware.  There's only one

5  Delaware, but they sure do have a lot of experience in things

6  like this.  But, in case the Court wants to refer to a

7  non-Delaware case with hundreds of these cases filed at the

8  relative last minute that isn't a Delaware case, I refer the

9  Court to the <u>Tousa</u> case with Judge Olson in the Southern

10 District of Florida in which I don't know how many hundred

11 cases that were brought in that case.  The number 1200 sticks

12 with me but I don't have the number.  But, he was not buying a

13 ticket to this sharing half and half.  Indeed, the debtor in

14 that case actually didn't even have the nerve to ask for it,

15 because the logic is overwhelming, that the evaluation process

16 is improved by only bringing cases where the plaintiff believes

17 enough to pay for the mediation.

18         And I don't think that this Court needs to set some

19 unfortunate precedent in this particular case.  The other

20 procedures work perfectly well.  That -- it doesn't take a

21 rocket scientist to know that the evaluation process would be

22 more thorough if that were the case.  It also -- this Court has

23 practiced law.  The Court really knows that if the barriers

24 raised in your defense is higher, then the leverage for

25 settlement on the plaintiff's side is greater.

1          THE COURT:  What kind of evaluation process do you

2   want the trustee to do?  I mean, he came into existence on

3   Monday of this week.

4          MR. EPPS:  Well, Your Honor, this case is in a hurry

5   now, because the two-year anniversary is coming.

6          THE COURT:  And a lot of that was delayed because of

7   the Canadian proceedings and having to coordinate with Oran

8   proceedings and the like.  That's not right at the trustee's

9   doorstep, is it?

10          MR. EPPS:  I don't disagree.  It's not the trustee's

11   fault, necessarily.  But, we -- I think it was a ten-month

12   break.  It certainly was nine or ten months.  And I have a hard

13   time thinking that the debtor -- remember the debtor plan might

14   not have been confirmed and the debtor might have to have

15   brought these things -- that it isn't appropriate to think that

16   someone would have thought of these cases during the ten-month

17   period between when the plan was proposed and when we finally

18   went to confirmation in this case.  They are the debtor's

19   causes of action until a plan assigns them to someone else.

20          Now, it is perfectly possible that we could be here

21   today instead of on this, we could be here on the confirmation

22   date, because Canada wasn't sorted out yet.  And I don't think

23   it's appropriate to say that the debtor shouldn't have been

24   doing this.  Someone should have been doing this and indeed I

25   think someone was doing this.

24

1        But, nonetheless, I think that there is no particular

2   reason to change what I believe to be the established rule in

3   these cases, although there's an exception to almost

4   everything, which is that the trust, that the estate, that the

5   debtor pays the mediation cost.

6        THE COURT:  Well, Ms. McLemore suggested in her

7   pleading that maybe the better way of doing it would be that

8   those expenses would be reimbursed if, in fact, the plaintiff

9   -- or the defendant was the prevailing party in the adversary

10  proceeding.  Why wouldn't that be a more appropriate backstop

11  in order to resolve this?  It's basically the same question I

12  asked Ms. Beran.

13        MR. EPPS:  Well, I think that the -- that situation

14  does -- has two problems.  One is as this Court knows five

15  percent of these go to trial, four percent, six percent, some

16  very small number.  Any negotiation, even where it is proved

17  that the trust has essentially, I won't say no case, but their

18  defense is to cover the entire case so that the liability is

19  zero, is going to be settled out and that's going -- a waiver

20  of that clause is going to be part of the settlement.

21  Otherwise, the trust is going to say, let's go.  We have

22  nothing to lose at that point.  They're getting paid.  They've

23  got nothing to lose if someone on our side says we're down to

24  zero and we want you to pay the cost of mediation.  Absolutely

25  nothing to lose.

1          And while both of those pleadings were filed by us

2   -- one with our local counsel and the second one with mine -- I

3   don't think that it's appropriate to wait till the end of the

4   line to determine that.  I think that's maybe a fall back

5   position but I don't think it's the right position.  The right

6   position is Judge Walrath's position, which is they're bringing

7   the case, they're picking and choosing, they pay the mediation.

8          Now, settlements may say you're going to pay 20

9   percent of your liability and the settlement is going to add to

10  it as the required term, half of the mediation cost.  That

11  could be a subject for settlement discussions.  But, you're

12  clearly talking about leverage here and I think the leverage

13  platform needs to be level.  I don't think it's appropriate for

14  the Court to go off and give this extra bonus which most Courts

15  don't.

16         I'd like to go ahead with the others.  I'm happy to

17  answer all the questions the Court has but I -- that's the

18  strongest objection we have and I think it's a big, big thing.

19  And I do direct the Court to Judge Olson's order in which

20  -- it's non-Delaware if the Court doesn't want to read the

21  little -- saying if Delaware does it, we must do it.  There are

22  others that are doing it too and I recommend Judge Olson in

23  that respect.

24         Your Honor, I appreciate Ms. Beran's representation

25  as to the de minimis exception to the mediation requirement.

1  Whether it's at the right level or not is something that I

2  haven't exactly been able to react to because I just heard

3  about it.  But, I do want to point out what the costs of

4  mediation are going to be to a defendant.  Now, if I represent

5  a defendant who is sued for a net preference of $21,000, I

6  think it's fair to say that the mediation cost including the

7  statement and so forth while it might cost less than $5,000 to

8  get ready for the mediation and do it, the Court knows that it

9  very easily might not.  So, I have picked $5,000 as a

10  reasonable effort for purposes of my discussion today.

11       There needs to be someone here from out of town

12  unless there's a waiver, someone who can make a decision not to

13  mention that person is out of the office for that day.  I

14  realize that you can apply to the mediator for a waiver from

15  that and I would hope that the mediators would be reasonable in

16  that regard.  But, there's no requirement that the mediator

17  agreed to that.

18       THE COURT:  Well, according to Ms. Beran, you get to

19  pick which one of the mediators you want.

20       MR. EPPS:  But, I can't ask him that question before

21  I pick him.  I can't take a poll to see who will let my person

22  stay in Pocatello, Idaho, but I'll have to take my chances.

23       THE COURT:  But, I assume you know all of the six --

24  the bulk on that list, as well as I do.

25       MR. EPPS:  Well, I do.  But, I don't know the answer

1    to that question.  I do know all the mediators and I have no

2    objection to the mediation list, at all.  I'm quite pleased

3    with the mediation list.  But, I have attributed to that the

4    cost of someone being here for day and someone traveling here

5    for the day and so forth, another $2,000.  I have not added

6    half the cost of the mediator in the hopes that the Court will

7    not adopt the trustee's approach in that respect.  But, I think

8    it is inconceivable that half a share of a mediation is going

9    to be less than $1500 and it could be a great deal more.  Some

10   of the people on that list are quite expensive and I would hope

11   the smaller cases would not get the most expensive mediators.

12            But, nonetheless, even the numbers that I have given

13   you, now we have a $21,000 case and its $8,000 should get past

14   the mediation.  Well, the trustee calls you up and said you've

15   got to go to mediation but I'll take five to let you off the

16   hook.  Now, that's even without evaluation of the underlying

17   merits of the case.  You know, you've got a $21,000 case and

18   you've got 8,000 some to go through a mandatory mediation.  I

19   think the level is too low.  These smaller cases are not going

20   to be that hard.  There may be a hundred of them.  We haven't

21   seen them but there may be a bunch of them that are small.

22   But, they're not that hard.  And the barriers to get to a

23   decision there are very, very high as I think I've outlined.  I

24   don't think I've used inappropriate numbers for that, at all.

25            So, I suggest to the Court that it suggest to the

28

1 trustee maybe the mediator -- the de minimis level is too low.

2 But, I appreciate the gesture on their part and I -- we may get

3 somewhere with that.

4          Your Honor, I note that the Delaware order requires

5 that documents be submitted -- the initial documents under Rule

6 26 before the mediation.  I worry about going to mediation

7 without knowing what's in the other side's briefcase.  It just

8 makes the mediation harder.  I realize there can be under these

9 restriction -- I mean, under these procedures, a voluntary

10 swap.  I don't know what that's going to mean in real life.  I

11 trust Ms. Beran on that completely but I really don't know what

12 that means.

13          THE COURT:  Well, with all these cases being filed,

14 doesn't it make much more sense to let the parties try to, you

15 know, resolve the matter through mediation without having to

16 incur all the expense of the discovery process?  Because that

17 -- the discovery is what makes litigation so very, very

18 expensive and let's avoid that.  Let's let people do it on a

19 voluntary basis.  If it's not working, then in the exceptional

20 case, the parties can come back and come to the Court and say,

21 Judge, we want you to order -- you know, to allow discovery in

22 our particular case because we're not getting what we need and

23 then I can do that on an expedited basis, whatever's necessary

24 in order to move the matter along.  But, why isn't that the

25 better approach --

29

1              MR. EPPS:  It may be --

2              THE COURT:  -- so that you don't add to your $8,000?

3              MR. EPPS:  It may be, as long as there is flexibility

4    in that case on the back end of when we have to be finished by.

5    I think that may be perfectly acceptable as a way to deal with

6    it.  Once again, I am a little worried about the 26(a)

7    documentary disclosures in the small case may actually get rid

8    of your small case.  And I would hope if it's going to be

9    voluntary only, which is, as I say, contrary to the way some

10   Courts do it, that it's freely volunteered because otherwise we

11   won't know sometimes what it is until we have to go to the

12   mediation and as I said the barriers to getting through that

13   mediation are quite high for someone with a 20 to $30,000 claim

14   situation.

15              That's the only reason I think we ought to get

16   documents beforehand as a matter of procedure.  Now, if the

17   Court is going to see us really quickly and without briefs and

18   long pleadings on this -- remember, once again, we're talking

19   about the small and medium-size cases -- I think that would

20   work.

21              But, I think that the Court needs to understand the

22   problem.  And the problem is that the mediation is very

23   expensive compared to a small claim.  And the more we can learn

24   about it, if we've got to do it at a given level, at least we

25   will know.  You don't want to go in the other room not knowing

1   what the other side has in its briefcase.  It just doesn't

2   prepare your client for what he needs to do among other things.

3           A couple of other things, Your Honor.  The

4   requirement that the mediation be -- commence 60 days after the

5   responsive pleading is filed, it is fine as far as it goes.

6   This Court likes to keep its docket going.  We -- I like to

7   keep dockets going.  We like to keep working.  It isn't going

8   to happen that way.  The other side has got, as they've said, I

9   think 600 pleadings that they're -- I've forgotten the number

10  but it's many hundred.  It isn't really going to happen that

11  way.  Indeed, you know, it's not this Court's case but in the

12  first Movie Gallery case, two years later they weren't done

13  yet.  This stuff takes time on the side of the party that has

14  all the cases and what will happen if we don't have flexibility

15  at the beginning is that the other side, the defendants, will

16  be crowded by the mandatory time limits.

17          THE COURT:  Mr. Epps, I want to avoid exactly what

18  happened in Movie Gallery.  I want these cases to be resolved

19  and not two years from now.

20          MR. EPPS:  I, too.  I want the defendants --

21          THE COURT:  Because the quicker we --

22          MR. EPPS:  -- to have some chance to react.  That's

23  all.  I'm worried about plaintiff delay.

24          THE COURT:  The quicker we can get this stuff done,

25  the cheaper it's going to be for everybody.

1          MR. EPPS:  I agree.

2          THE COURT:  And I am a strong proponent of that and

3    to ask for the additional 30 days, you're just, you know

4    -- it's falling on deaf ears up here.

5          MR. EPPS:  All right.  No desire to speak to deaf

6    ears.

7          THE COURT:  Good.

8          MR. EPPS:  Your Honor, everything else that I have to

9    say is in the pleadings but I ask the Court not to do the

10   sharing of the mediation, to do what most other Courts do with

11   these mass preference cases.  It's the plaintiff's charge and

12   the plaintiff should pay it.  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         MR. BURNETT:  Good afternoon, Your Honor.  For the

15   record, Alex Burnett, on behalf of DIRECTV.  We had essentially

16   just two points in our limited objection, and again, it's

17   limited because we don't object to the procedures -- to the

18   concept of the procedures.  We just had two limited points that

19   we wanted to make.

20         First was that mediation should not commence -- it

21   should not be forced on the defendants until all preliminary

22   motions have been resolved and decided.  In other words, if

23   there's a 12(b) type motion, then we don't think that the

24   mediation should commence until that motion has been resolved

25   because it's unfair to force a party over which there is no

1  jurisdiction or where a complaint fails to state a claim to be

2  forced into mediation until that issue has been resolved.

3        THE COURT:  Why can't that issue, though, be some

4  -- you know, resolved through mediation?  I mean, these

5  mediators are going to be -- they've all argued 12(b)(6)

6  motions and why wouldn't they be capable of saying, you know,

7  there's no way that the Court's going to throw this case out as

8  soon as it gets through the front door?  And just dispose of it

9  again without having to go through the judicial process of

10 arguing the -- of the motion practice?

11       MR. BURNETT:  So, you're suggesting that the mediator

12 could make a decision that the case -- that the complaint fails

13 to state a claim and therefore mediation's not necessary?

14       THE COURT:  Well, I would assume that if your client

15 is sued and there's no jurisdiction that you're going to raise

16 that issue with the mediator and get, you know, the mediator to

17 try to resolve the case based on that issue, as well as any

18 other issue that might be available to you.  But, why not do it

19 through that process, you know, rather than going through the

20 motions process, you know, which can, you know, again add time

21 and expense to the case, especially if it's a slam dunk?

22       MR. BURNETT:  Well, what if there's an issue like a

23 12(b)(6) kind of issue, where the complaint fails to state a

24 claim or fails to give sufficient detail for the claim?  It's

25 possible that it may -- that, in fact, there may not be a valid

1  claim against the defendant, yet the defendant is still forced

2  into a situation like Mr. Epps just described where they're

3  spending maybe $8,000 in a mediation when, in fact, there's

4  really no -- the plaintiff still hasn't stated a valid cause of

5  action against the defendant.

6      THE COURT:  And I suspect every one of these cases

7  there's going to be some sort of _Iqbal_-type of reply saying, oh

8  yes, we don't have enough specificity now under preference

9  complaints to know what, you know, we're being sued for and all

10  the rest of it.  And you know we can litigate you know 600

11  times those issues and go on six, seven months resolving all

12  those issues, get it all done, and then the parties will have

13  spent well past the $8,000 that Mr. Epps is concerned about

14  when he came up here before we've even gotten to mediation.

15  And how does that move everybody's ball down the court?

16      MR. BURNETT:  Well, if the plaintiff has to amend

17  pleadings or include additional claims, then they ought to do

18  that prior to the mediation so that everybody knows going into

19  the mediation what the claims are against the defendants, not

20  after mediation is concluded.

21      THE COURT:  All right.

22      MR. BURNETT:  The second point that we had in our

23  objection, and to some extent it may have been resolved by the

24  comments that Ms. Beran made, but we just wanted to ensure that

25  number one, there was -- that there is going to be some sort of

34

1  good faith exchange of information between the parties so that

2  the defendants aren't walking into a mediation only to get

3  sandbagged by the plaintiff with -- because it's not only

4  conceivable but it's very likely in these cases that the trust

5  would have information that the defendants wouldn't have, such

6  as details about when payments were -- you know, when payments

7  cleared, financial details that may not be available to both

8  sides.

9        And in that type of situation, number one, we would

10 like there to be a good faith exchange of information and if

11 circumstances arise where the parties believe that there ought

12 to be -- or one of the parties believes that it, in good faith,

13 needs some formal discovery, the door shouldn't be closed on

14 them to come back to the Court to ask for that.  And I

15 understand it from Ms. Beran's comments that this is without

16 prejudice to be able to come back to the Court and ask for

17 that, so you know I think that we would just on our second

18 point we would just ask number one, that the order and the

19 procedures that are approved by the Court reflect that the

20 plaintiff is going to exercise a good faith exchange of

21 information premediation, and secondly, that if circumstances

22 require formal discovery, that the parties are without

23 prejudice to come back and ask the Court for it.

24        THE COURT:  And I think you heard my responses to Mr.

25 Epps that you know the Court certainly stands ready to

1  entertain those types of motions, if necessary.  But, I would

2  like that to be the exception, then, not the rule.

3          MR. BURNETT:  I understand, Your Honor.  I think

4  that's okay.  Thank you.

5          THE COURT:  All right.  Thank you, sir.  Does any

6  other party wish to be heard in connection with the proposed

7  procedures in connection with these avoidance actions?

8                    (No verbal response)

9          All right.  Ms. Beran, anything further on your part?

10         MS. BERAN:  Your Honor, just in conclusion, there are

11  no ulterior motives here.  We thought that mediation and the

12  procedures proposed, which in some instances this Court has

13  successfully used in this case and other cases pending Your

14  Honor, would be the most efficient manner to address these

15  proceedings and avoid a potential logjam on this Court's

16  already busy docket, as well as on the cases themselves and the

17  -- all parties and interests so that there can be a quicker

18  administration of these estates and a quicker distribution to

19  creditors because that's what the ultimate goal is, is to

20  maximize the value so that there can be a larger distribution

21  to creditors who Congress has said are entitled to

22  distributions under the (indiscernible) by Congress.

23         We are not wed to anything in particular or there's

24  no pride of authorship.  We proposed these procedures in good

25  faith.  The trust acting -- the trustee acting on behalf of the

36

1  trust believes he has fiduciary duties.  Albeit some of them

2  may at times be unpopular, he comes before Your Honor with

3  plain hands proposed them in good faith and we respectfully

4  request that the Court establish appropriate procedures to

5  address the volume of adversary proceedings that are going to

6  be pending here shortly.

7        THE COURT:  All right.  Thank you.  All right.  The

8  Court has before it the motion for an order to establish

9  procedures for the avoidance action in adversary proceedings in

10 connection with the Circuit City Stores bankruptcy case.  The

11 Court is going to substantially adopt the proposed procedures

12 that have been suggested by the liquidating trustee.  The -- in

13 adopting these, the Court notes that the procedures are adopted

14 without prejudice to any party to seek modification for cause

15 for any of the provisions on a case by case basis.  But, these

16 will be the procedures that will be applied generally to all

17 cases and then the exceptions, as Ms. Beran pointed out, can

18 come back to the Court on a one by one basis and that would

19 include requests for discovery if it was necessary in a

20 particular case because the parties weren't able to agree to do

21 it on some sort of voluntary basis.  But, I really don't think

22 that that's going to be the case.

23        With regard to a number of the objections, especially

24 with regard to the fee splitting, that is something that the

25 Court looked at very carefully when I saw the pleadings come in

1  initially.  I saw the responses come in and I have analyzed

2  that and I think that the fee sharing is actually a very good

3  proposal.  And while it's not what Delaware does, let me

4  explain my rationale for that.  And that is that it gives the

5  defendants in these cases a very vested interest in these cases

6  at the front end which I want them to be able to have.  I want

7  them to be engaged.  I want them to know that Mr. Epps's $8,000

8  or whatever it is, is really what's at stake, so that if the

9  case can be resolved for something substantially less than

10  that, that's a good thing.  And let's get that done.  But, all

11  parties then know there's going to be something at play here

12  that's going to get this done and I want the parties to be

13  firmly engaged in the process to make the mediation work.  And

14  so, if they have to pay half of it, they're going to be much

15  more inclined to try to do that.  And hopefully, Mr. Epps is

16  right and they're only going to be two percent of these cases

17  that we actually try and if that's the case, that would be a

18  wonderful thing.

19        I don't want these cases languishing for another two

20  years.  I want to see them done quickly.  In the Eastern

21  District of Virginia, we do have a policy of trying to get

22  cases through quickly and the concept behind that being that

23  the longer the case goes on, the more expensive it is to all of

24  the parties.  And so, I'm not going to extend any of the time

25  periods.  I want to see these cases moved promptly.  I want the

1 mediation in these cases to move promptly.  And I want the

2 parties to be seriously engaged in those mediations and try to

3 get the cases resolved.  But, in any event, I want to see if

4 the cases do need to be tried and be brought back here that

5 things would be working on a fast-track basis.

6        With regard to the objection to not allowing motions

7 to be filed prior to the mediation, I reject that proposal.  I

8 think that the mediator can address issues that would be raised

9 under, you know, 12(b)(6) or 12(b)(1) or whatever other motions

10 or affirmative defenses the parties may want to seek and that

11 the mediator can resolve those much less expensively -- if

12 they're valid concerns being raised -- than if the parties were

13 to come here and we were to engage in extensive motions

14 practice at the front end.

15        And I think that the mediator's going to be able to

16 ferret out if there's some, you know, amendment to a pleading

17 or something that's going to happen in a case by cutting down

18 the issues.  That's something that the mediation process is

19 very good at doing.  And yes, we may have to amend pleadings in

20 a number of cases but that may be as a result of the good faith

21 mediation as opposed to then having to go through that process

22 after an expensive motions practice.  So, that objection will

23 be overruled.

24        The -- you know, for all of those reasons the Court

25 is going to adopt the procedures as they have been set forth.

1 Do I have before me the motion to approve the list of

2 mediators?  Is that part of what I have or does that have to be

3 done separately?

4          MS. BERAN:  Your Honor, we -- in all fair candor, we

5 had believed that it was part of the original motion and --

6          THE COURT:  I did, too, as I went through.  I just

7 wanted to make sure --

8          MS. BERAN:  -- it was just a subsequent --

9          THE COURT:  -- because I've looked at the list of

10 mediators and they are all very experienced practitioners that

11 are very familiar to the Court and I'm very pleased with them.

12 We did have one objection and that's what I wanted to speak to

13 you about having no west coast mediators, and the fact that Mr.

14 Wasserman has a California office and is willing to travel

15 there at his own expense, the -- if a case -- on a case by case

16 basis.  And also, you know, with regard to the situs of any

17 mediation that again if the parties can't agree on that, they

18 can come and seek, you know, some direction from the Court, if

19 necessary.  But, I would agree with what counsel said

20 originally that I would expect most of these mediations be

21 conducted in this jurisdiction.

22          MS. BERAN:  Thank you, Your Honor.  Your Honor, I did

23 want to apologize if I misspoke and/or misrepresented

24 something.  The -- what we've discussed with the mediators and

25 which all of them have agreed to is that they won't charge for

40

1  travel time.

2            THE COURT:  Travel time is what I meant, obviously,

3  the airline ticket.  But, that airline ticket's the least of

4  anybody's problems and, you know -- as far as the expense

5  element is concerned.  But, I understand so I misspoke when I

6  said that.

7            MS. BERAN:  Okay.  Well, thank you.  And I just

8  wanted to make that clear.  I didn't want to --

9            THE COURT:  And I thank you for that clarification.

10 So, these procedures will be approved.  I would ask that you

11 put something in the procedures that specifically says, as I

12 believe it was Mr. Burnett that suggested, that it be pointed

13 out in the procedures that it is without prejudice to any party

14 to seek a modification of the procedures in their particular

15 case for cause.  And so that they know that they have that

16 right.

17           MS. BERAN:  Absolutely, Your Honor.  That's actually

18 already written on my draft of the procedures, and we'll add

19 that immediately to the order that we submit to Your Honor.

20           THE COURT:  Okay.  Very good.  Obviously, you want to

21 get this order entered as quickly as possible and -- because I

22 know that you have an awful lot on your plate and there are all

23 of two of you and so I will look forward to receiving your

24 order and I will enter it as soon as I get it.  Mr. Epps, you

25 have a question?

41

1            MR. EPPS:  I did have a question, Your Honor.  If a

2  cause language is what we're just talking about given that

3  fairly strict time frame, would the language -- could the

4  language have on expedited basis (indiscernible)?

5            THE COURT:  Oh, the Court's open 24-7.

6            MR. EPPS:  No, but I meant the language that goes

7  -- as opposed to the usual 14-day motion (indiscernible),

8  that's all.

9            THE COURT:  Yes.  Let's go ahead and put that in

10  there so that everybody understands that they can request it on

11  an expedited basis.  I think that's a good suggestion.

12            MR. EPPS:  Thank you.

13            THE COURT:  All right.  All right.  Anything further,

14  Ms. Beran?

15            MS. BERAN:  No, Your Honor.

16            THE COURT:  All right.

17            MS. BERAN:  Thank you very much for your time this

18  afternoon.

19            THE COURT:  All right.  Very good.  We've got another

20  matter immediately following yours, so what I'd like to do is

21  just take a very, very brief recess for the other parties to

22  get set up, and then we'll call the next matter.  Thank you.

23            COURT CLERK:  All rise.  Court is now in recess.

24                      * * * * *

25

42

# **C E R T I F I C A T I O N**

   I, STEPHANIE SCHMITTER, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Stephanie Schmitter

STEPHANIE SCHMITTER

J&J COURT TRANSCRIBERS, INC.   DATE:   November 18, 2010