**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Case Nos. 08-35653 (KRH) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I) INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER 1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND INCLUDING NOVEMBER 1, 2010**

Name of Applicant:      FTI Consulting, Inc.

Authorized to provide
professional services to:      Circuit City Stores, Inc., et al.

Date of retention:      December 23, 2008 *nunc pro tunc to* November 10, 2008

Interim period for which compensation
and reimbursement are sought:      August 1, 2010 through and including November 1, 2010

Amount of interim compensation sought as
actual, reasonable and necessary:      $316,442.50

Amount of interim expense reimbursement sought as
actual, reasonable and necessary:      $1,778.26

Final period for which compensation
and reimbursement are sought:      November 10, 2008 through and including November 1, 2010

Amount of final compensation sought as
actual, reasonable and necessary:      $11,106,354.00

Amount of final expense reimbursement sought as
actual, reasonable and necessary:      $411,109.95

This is the Eighth Interim and Final Fee Application. This Application requests compensation at this time for services rendered in preparing this Application.

1

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I) INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER 1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND <u>INCLUDING NOVEMBER 1, 2010</u>**

**Summary of Fees by Professional**
**FTI Consulting, Inc.**
**August 1, 2010  through and including November 1, 2010**

| Name | Title | Total Hours | Rate | Total Fees |
|------|-------|------------|------|-----------|
| Duffy, Robert J | Sr Managing Dir | 18.5 | $ 885 | $ 16,372.50 |
| Regan, Kevin | Sr Managing Dir | 14.0 | 820 | 11,480.00 |
| Robinson, Joshua M. | Managing Dir | 43.7 | 675 | 29,497.50 |
| Cashman, Brian | Managing Dir | 61.3 | 655 | 40,151.50 |
| Nemerov, Lara | Consultant | 221.4 | 350 | 77,490.00 |
| O'Loughlin, Morgan | Consultant | 82.5 | 350 | 28,875.00 |
| Byrnes, Kevin | Consultant | 145.1 | 270 | 39,177.00 |
| Dorfman, Daniel | Consultant | 13.1 | 270 | 3,537.00 |
| Park, Yohan | Consultant | 255.6 | 270 | 69,012.00 |
| Hellmund-Mora, Marili | Professional Assistant | 3.4 | 250 | 850.00 |
| **Total** | | **858.6** | | **$ 316,442.50** |

**Summary of Fees by Task Code**
**FTI Consulting, Inc.**
**August 1, 2010  through and including November 1, 2010**

| Task Code | Total Hours | Total Fees |
|-----------|------------|-----------|
| Attendance at Bankruptcy Court Hearings | 3.5 | $ 2,292.50 |
| Claims Management | 34.4 | 18,824.00 |
| General Duties and Case Administration | 26.3 | 13,792.50 |
| Liquidation Analysis/Wind down | 100.9 | 50,067.50 |
| Plan of Liquidation/Disclosure Statement | 29.8 | 16,414.50 |
| Preference Analysis | 655.7 | 209,151.50 |
| Travel* | 8.0 | 5,900.00 |
| **Total** | **858.6** | **$ 316,442.50** |

* Billed at 50% of actual time incurred for traveling

**Summary of Actual and Necessary Expenses by Expense Category**
**FTI Consulting, Inc.**
**August 1, 2010  through and including November 1, 2010**

| Expense Category | Total Expenses |
|------------------|---------------|
| Transportation | $ 1,417.65 |
| Lodging | 335.61 |
| Business Meals | 25.00 |
| **Total** | **$ 1,778.26** |

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I)
INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER
1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND
<u>INCLUDING NOVEMBER 1, 2010</u>**

**Summary of Fees and Expenses
FTI Consulting, Inc.
November 10, 2008 through and including November 1, 2010**

| Period Covered | Fees Requested | Fees Paid | Fees Outstanding | Expenses Requested | Expenses Paid |
|---|---|---|---|---|---|
| November 10, 2008 - November 30, 2008 | $     625,699.50 | $     625,699.50 | $          - | $     38,103.61 | $     38,103.61 |
| December 1, 2008 - December 31, 2008 | 900,654.50 | 900,654.50 | - | 52,787.28 | 52,787.28 |
| January 1, 2009 - January 31, 2009 | 949,512.00 | 949,512.00 * | - | 47,683.50 | 47,683.50 |
| February 1, 2009 - February 28, 2009 | 981,141.50 | 981,141.50 | - | 59,330.59 | 59,330.59 |
| March 1, 2009 - March 31, 2009 | 572,514.00 | 572,514.00 | - | 29,153.35 | 29,153.35 |
| April 1, 2009 - April 30, 2009 | 371,699.00 | 371,699.00 | - | 15,021.05 | 15,021.05 |
| May 1, 2009 - May 31, 2009 | 398,893.50 | 398,893.50 | - | 17,353.54 | 17,353.54 |
| June 1, 2009 - June 30, 2009 | 405,441.50 | 405,441.50 | - | 20,445.49 | 20,445.49 |
| July 1, 2009 - July 31, 2009 | 391,352.50 | 391,352.50 | - | 21,067.83 | 21,067.83 |
| August 1, 2009 - August 31, 2009 | 428,100.00 | 428,100.00 | - | 30,352.68 | 30,352.68 |
| September 1, 2009 - September 30, 2009 | 543,690.50 | 543,690.50 | - | 13,638.22 | 13,638.22 |
| October 1, 2009 - October 31, 2009 | 569,252.50 | 569,252.50 | - | 27,536.48 | 27,536.48 |
| November 1, 2009 - November 30, 2009 | 391,835.50 | 391,835.50 | - | 19,441.69 | 19,441.69 |
| December 1, 2009 - December 31, 2009 | 145,094.00 | 145,094.00 | - | 11,810.68 | 11,810.68 |
| January 1, 2010 - January 31, 2010 | 204,176.50 | 204,176.50 | - | 2,702.74 | 2,702.74 |
| February 1, 2010 - February 28, 2010 | 215,634.50 | 215,634.50 | - | 925.45 | 925.45 |
| March 1, 2010 - March 31, 2010 | 154,119.00 | 154,119.00 | - | - | - |
| April 1, 2010 - April 30, 2010 | 74,925.00 | 74,925.00 | - | 1,977.51 | 1,977.51 |
| May 1, 2010 - May 31, 2010 | 76,692.00 | 76,692.00 | - | - | - |
| June 1, 2010 - June 30, 2010 | 55,967.50 | 55,967.50 | - | - | - |
| July 1, 2010 - July 31, 2010 | 65,178.50 | 65,178.50 | - | - | - |
| **Approved Interim Fee Applications** | **8,521,573.50** | **8,521,573.50** | **-** | **409,331.69** | **409,331.69** |
| August 1, 2010 - August 31, 2010 | 80,095.00 | 68,080.75 | 12,014.25 | 1,088.44 | 1,088.44 |
| September 1, 2010 - September 30, 2010 | 85,973.50 | 73,077.48 | 12,896.02 | 689.82 | 689.82 |
| October 1, 2010 - November 1, 2010 | 150,374.00 | - | 150,374.00 | - | - |
| **Eighth Interim Fee Application** | **316,442.50** | **141,158.23** | **175,284.27** | **1,778.26** | **1,778.26** |
| Preparation of October, 2010 Monthly Fee Request and Final Fee Application | 18,338.00 | | 18,338.00 | | |
| **Subtotal** | **8,856,354.00** | **8,662,731.73** | **193,622.27** | **411,109.95** | **411,109.95** |
| **Additional Fees and Expenses:** | | | | | |
| Restructuring Fee | 500,000.00 | 500,000.00 | - | - | - |
| Completion Fee | 1,750,000.00 | 1,250,000.00 | 500,000.00 | - | - |
| **Total** | **$  11,106,354.00** | **$  10,412,731.73** | **$   693,622.27** | **$   411,109.95** | **$   411,109.95** |

\* Included in Fees Paid is a concession of $20,000.00

3

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I)
INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER
1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND
INCLUDING NOVEMBER 1, 2010**

**Summary of Fees by Professional**
**FTI Consulting, Inc.**
**November 10, 2008  through and including November 1, 2010**

| Name | Title | Total Hours | Rate | Total Fees |
|------|-------|-------------|------|------------|
| Bibby, Thomas | Senior Managing Director | 285.9 | 750.00 | 214,425.00 |
| Coulombe, Stephen | Senior Managing Director | 60.0 | 885.00 | 53,100.00 |
| Coulombe, Stephen | Senior Managing Director | 604.0 | 825.00 | 498,300.00 |
| Coulombe, Stephen | Senior Managing Director | 261.0 | 665.00 | 173,565.00 |
| Duffy, Robert | Senior Managing Director | 82.2 | 885.00 | 72,747.00 |
| Duffy, Robert | Senior Managing Director | 593.0 | 825.00 | 489,225.00 |
| Duffy, Robert | Senior Managing Director | 201.0 | 715.00 | 143,715.00 |
| Regan, Kevin | Senior Managing Director | 1.0 | 825.00 | 825.00 |
| Regan, Kevin | Senior Managing Director | 23.1 | 820.00 | 18,942.00 |
| Regan, Kevin | Senior Managing Director | 298.5 | 765.00 | 228,352.50 |
| Regan, Kevin | Senior Managing Director | 60.8 | 715.00 | 43,472.00 |
| Weinsten, Mark | Senior Managing Director | 8.4 | 885.00 | 7,434.00 |
| Weinsten, Mark | Senior Managing Director | 93.3 | 825.00 | 76,972.50 |
| Weinsten, Mark | Senior Managing Director | 0.5 | 665.00 | 332.50 |
| Behnke, Thomas | Managing Director | 396.8 | 675.00 | 267,840.00 |
| Behnke, Thomas | Managing Director | 385.2 | 620.00 | 238,824.00 |
| Cashman, Brian | Managing Director | 315.4 | 655.00 | 206,587.00 |
| Cashman, Brian | Managing Director | 1,835.0 | 550.00 | 1,009,250.00 |
| Cashman, Brian | Managing Director | 290.0 | 480.00 | 139,200.00 |
| Chin, Gregory | Managing Director | 87.8 | 710.00 | 62,338.00 |
| Chin, Gregory | Managing Director | 147.8 | 645.00 | 95,331.00 |
| Lee, Geon | Managing Director | 17.0 | 710.00 | 12,070.00 |
| Lee, Geon | Managing Director | 260.5 | 645.00 | 168,022.50 |
| Nighswander, Jonathan | Managing Director | 3.0 | 710.00 | 2,130.00 |
| Rinaldi, Scott | Managing Director | 114.5 | 685.00 | 78,432.50 |
| Robinson, Joshua | Managing Director | 196.6 | 675.00 | 132,705.00 |
| Robinson, Joshua | Managing Director | 981.0 | 625.00 | 613,125.00 |
| Robinson, Joshua | Managing Director | 3.4 | 535.00 | 1,819.00 |

(Continued on next page)

4

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I) INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER 1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND INCLUDING NOVEMBER 1, 2010**

**Summary of Fees by Professional**
**FTI Consulting, Inc.**
**November 10, 2008 through and including November 1, 2010**

| Name | Title | Total Hours | Rate | Total Fees |
|------|-------|------------:|-----:|-----------:|
| Summers, Joseph | Managing Director | 0.8 | 655.00 | 524.00 |
| Summers, Joseph | Managing Director | 8.6 | 585.00 | 5,031.00 |
| Summers, Joseph | Managing Director | 14.3 | 505.00 | 7,221.50 |
| Ehrenhofer, Jodi | Director | 37.0 | 535.00 | 19,795.00 |
| Greanias, Jennifer | Director | 83.5 | 550.00 | 45,925.00 |
| Greanias, Jennifer | Director | 280.9 | 475.00 | 133,427.50 |
| Lewandowski, Douglas | Director | 46.4 | 520.00 | 24,128.00 |
| Waiting, Mark | Director | 602.0 | 550.00 | 331,100.00 |
| Waiting, Mark | Director | 332.0 | 475.00 | 157,700.00 |
| Cartwright, Emily | Senior Consultant | 56.3 | 380.00 | 21,394.00 |
| Cartwright, Emily | Senior Consultant | 7.7 | 305.00 | 2,348.50 |
| Chew, Katherine | Senior Consultant | 67.0 | 420.00 | 28,140.00 |
| Chew, Katherine | Senior Consultant | 268.0 | 350.00 | 93,800.00 |
| McKeighan, Erin | Senior Consultant | 183.1 | 380.00 | 69,578.00 |
| McKeighan, Erin | Senior Consultant | 247.5 | 305.00 | 75,487.50 |
| Murphy, Mark | Senior Consultant | 115.9 | 485.00 | 56,211.50 |
| Murphy, Mark | Senior Consultant | 199.0 | 420.00 | 83,580.00 |
| Reeves, John | Senior Consultant | 29.0 | 455.00 | 13,195.00 |
| Rimpel, Christopher | Senior Consultant | 6.5 | 455.00 | 2,957.50 |
| Ryba, Lauren | Senior Consultant | 914.0 | 455.00 | 415,870.00 |
| Ryba, Lauren | Senior Consultant | 239.0 | 385.00 | 92,015.00 |
| Stegenga, Scott | Senior Consultant | 0.6 | 485.00 | 291.00 |
| Stegenga, Scott | Senior Consultant | 338.6 | 420.00 | 142,212.00 |
| Stegenga, Scott | Senior Consultant | 106.8 | 350.00 | 37,380.00 |
| Byrnes, Kevin | Consultant | 145.1 | 270.00 | 39,177.00 |
| Dorfman, Daniel | Consultant | 13.1 | 270.00 | 3,537.00 |
| Fowler, Douglas | Consultant | 0.5 | 315.00 | 157.50 |
| Gilleland, Jeffrey | Consultant | 15.3 | 335.00 | 5,125.50 |
| Gilleland, Jeffrey | Consultant | 98.2 | 265.00 | 26,023.00 |
| Goldberg, Kristina | Consultant | 2.0 | 225.00 | 450.00 |

(Continued on next page)

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I)
INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER
1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND
<u>INCLUDING NOVEMBER 1, 2010</u>**

**Summary of Fees by Professional
FTI Consulting, Inc.
November 10, 2008  through and including November 1, 2010**

| Name | Title | Total Hours | Rate | Total Fees |
|---|---|---|---|---|
| Hellmund-Mora, Marili | Consultant | 20.1 | 250.00 | 5,025.00 |
| Koch, Ashley | Consultant | 311.5 | 255.00 | 79,432.50 |
| Lai, Stephanie | Consultant | 408.0 | 335.00 | 136,680.00 |
| Nemerov, Lara | Consultant | 641.5 | 350.00 | 224,525.00 |
| Nemerov, Lara | Consultant | 529.0 | 290.00 | 153,410.00 |
| O'Loughlin, Morgan | Consultant | 499.7 | 350.00 | 174,895.00 |
| O'Loughlin, Morgan | Consultant | 1,845.3 | 290.00 | 535,137.00 |
| O'Loughlin, Morgan | Consultant | 301.8 | 235.00 | 70,923.00 |
| Park, Yohan | Consultant | 255.6 | 270.00 | 69,012.00 |
| Sajdak, Catherine | Consultant | 10.2 | 225.00 | 2,295.00 |
| Schaefer, Karl | Consultant | 37.0 | 305.00 | 11,285.00 |
| Schaefer, Karl | Consultant | 239.7 | 255.00 | 61,123.50 |
| Torres, Diego | Consultant | 766.7 | 290.00 | 222,343.00 |
| Torres, Diego | Consultant | 291.8 | 235.00 | 68,573.00 |
| Volsky, Hannah | Consultant | 102.1 | 235.00 | 23,993.50 |
| Burke, Samantha | Intern | 73.0 | 125.00 | 9,125.00 |
| Carolla, Alyssa | Intern | 1.0 | 125.00 | 125.00 |
| Flynn-Kasuba, Ryan | Intern | 58.0 | 125.00 | 7,250.00 |
| **Subtotal** | | **18,457.4** | | **8,838,016.00** |
| Preparation of October, 2010 Monthly Fee Request | | | | |
| and Final Fee Application | | 33.1 | | 18,338.00 |
| **Subtotal** | | **18,490.5** | | **8,856,354.00** |
| Restructuring Fee | | | | 500,000.00 |
| Completion Fee | | | | 1,750,000.00 |
| **Subtotal - Fees** | | | | **11,106,354.00** |
| Expenses | | | | 411,109.95 |
| **Subtotal - Fees and Expenses** | | | | **11,517,463.95** |
| Less: Payments Received/Concessions (including $20,000.00 concession) | | | | (10,823,841.68) |
| **Subtotal** | | | | **693,622.27** |
| Less: Completion Fee Holdback | | | | (500,000.00) |
| **Total Fees and Expenses Due** | | | $ | **193,622.27** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case Nos. 08-35653 (KRH) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

**EIGHTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS INCURRED FOR THE (I) INTERIM PERIOD FROM AUGUST 1, 2010 THROUGH AND INCLUDING NOVEMBER 1, 2010 AND (II) FINAL PERIOD FROM NOVEMBER 10, 2008 THROUGH AND INCLUDING NOVEMBER 1, 2010**

FTI Consulting, Inc., (collectively, "FTI Consulting", "FTI" or the "Applicant") as financial advisors for Circuit City Stores, Inc. and its subsidiaries in the above-captioned cases (collectively, "Circuit City", the "Company", the "Debtors" or the "Estates") submit this application (the "Final Fee Application" or the "Application") seeking allowance and payment of (i) interim compensation and reimbursement of expenses under section 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") for the period from August 1, 2010 through and including November 1, 2010 (the "Eighth Interim Fee Application Period") and (ii) final compensation and reimbursement of expenses under sections 328, 330 and 331 of title 11 of the United States Code

---

[1]    The Debtors are the following entities: The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

(the "Bankruptcy Code") for the period from November 10, 2008 through and including November 1, 2010 (the "Final Fee Application Period") and represent as follows:

## JURISDICTION

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C.  sections 157 and 1334.  This is a core proceeding under 28 U.S.C. section 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. sections 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 328, 330 and 331.

## BACKGROUND

3.     On November, 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief pursuant to chapter 11 of the Bankruptcy Code.

4.     On January 12, 2009, this Court entered an order authorizing the Debtors to conduct auctions for a sale or sales of the Debtors' business as a going concern or for liquidation.

5.     At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC; Hudson Capital Partners, LLC; SB Capital Group, LLC; and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, this Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores.  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.  The going out of business sales concluded on or about March 8, 2009.

6.     On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors-In-Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan became effective on November 1, 2010.  Generally, the Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code.

## RETENTION OF FTI CONSULTING

7.     FTI Consulting is a financial advisory services firm with numerous offices throughout the country and was retained by the Debtors as Financial Advisors.

8.      Pursuant to this Court's order dated December 23, 2008  (the "Retention Order"), FTI Consulting was retained as Financial Advisors to assist the Debtors in the performance of their duties as debtors-in-possession pursuant to the terms of an engagement letter with the Debtors, which was modified by the Retention Order in certain respects (as modified, the "Engagement Letter").  FTI Consulting's retention was approved *nunc pro tunc* to November 10, 2008. Thereafter, on September 16, 2010, this Court entered the Supplemental Order Regarding Retention of FTI Consulting, Inc. as Financial Advisors and Authorizing Payment of the Completion Fee.  The Supplemental Order modified the Retention Order in certain respects related to the Completion Fee (the "Supplemental Order").  Copies of Retention Order and the Supplemental Order are attached hereto as Exhibit E and incorporated herein by reference.

9.      The Retention Order authorized the retention of FTI Consulting to render to the Debtors certain essential services, which include, but are not limited to, the following:

**Store Footprint Analysis**

- Analyze liquidity and earnings impact of potential store closures.

- Provide assistance with contract terms for disposition of leases.

- Develop informational materials to support store closing processes.

- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.

- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.

- Prepare information package for landlord conference calls and participate in lease termination discussions.

- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

**Liquidity Forecasting**

- Evaluate current liquidity position and expected future cash flows.

- Assist with management and control of cash disbursements.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**

- Assist with development of an out-of-court restructuring plan and related financial projections.

9

- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.

- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.

- Assist with working capital management and liquidity forecasting.

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.

- Assist management with development of employee retention and communications programs.

- Assist management in developing strategy relating to merchandise and other vendors.

- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.

- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.

- Provide weekly status and fee updates to management personnel designated by the Company.

- Provide other services as requested by management.

**Asset Sales**

- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture, fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.

  - Prepare "bid packages" for Liquidators and manage selection process.

  - Solicit potential inventory Liquidators for going-out-of-business sale process.

  - Assist the Company in the negotiation of an Agency agreement.

  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.

  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.

- Assist with data collection and information gathering related to third party due diligence.

- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**

- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.

- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.

- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.

- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.

- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.

- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.

- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.

- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**

- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or Debtors-In-Possession ("DIP") financing in a Chapter 11 filing.

- Advise the Company in the process of identifying and reviewing DIP financing and assist the Company in preparing a collateral package in support of such financing.

**Other**

- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

10.    FTI Consulting has received from the Debtors and held as of the Petition Date, "on account" cash in the amount of $695,574.52 (the "On Account Cash").  Pursuant to the Retention Order, FTI Consulting was authorized to retain the On Account Cash as a post-petition retainer with such amount to be applied against FTI Consulting's final fee application.

11

## THE ADMINISTRATIVE ORDER

11.     On December 9, 2008, this Court entered an Administrative Order under Bankruptcy Code Section 105(a) and 331 establishing procedures for interim compensation (the "Administrative Order").

12.     Pursuant to the terms of the Administrative Order, following each calendar month all professionals were required to serve monthly fee statements (each a "Monthly Fee Request") on (i) Circuit City Stores, Inc. (ii) McGuireWoods, LLP (iii) Skadden, Arps, Slate, Meagher & Flom, LLP, (iv) the Office of the United States Trustee and (v) Pachulski, Stang, Ziehl & Jones LLP, counsel to the Creditors Committee (collectively, the "Notice Parties").  Thereafter, if no objection is filed to a Monthly Fee Request within twenty (20) days of the date of the filing of that request, then the respective professionals may be paid eighty-five percent (85%) of the fees and one hundred percent (100%) of expenses set forth in the applicable Monthly Fee Request.

13.     Also, pursuant to the Administrative Order, every three (3) months beginning with the period ending January 31, 2009, this Court will then make a determination, after hearing, if the remaining fifteen percent (15%) of fees sought in the preceding three (3) months will be paid.

14.     Subsequent to the Petition Date and pursuant to the Administrative Order, FTI Consulting has served a Monthly Fee Request for each calendar month beginning with November, 2008 and ending on November 1, 2010.

## THE EIGHTH INTERIM FEE APPLICATION PERIOD

15.     On September 15, 2010, FTI Consulting served its Monthly Fee Request for the period from August 1, 2010 through and including August 31, 2010 for the amount of $81,183.44 consisting of $80,095.00 for professional fees and $1,088.44 for expenses.  The 20 day period for objections expired on October 5, 2010 without any objections, at which time FTI Consulting was paid 85% of the requested professional fees and 100% of the requested expenses, in the aggregate amount of $69,169.19.

16.     On October 12, 2010, FTI Consulting served its Monthly Fee Request for the period from September 1, 2010 through and including September 30, 2010 for the amount of $86,663.32 consisting of $85,973.50 for professional fees and $689.82 for expenses.  The 20 day period for objections expired on November 1, 2010 without any objections, FTI Consulting was paid 85% of

12

the requested professional fees and 100% of the requested expenses, in the aggregate amount of $73,767.29.

17.    On November 17, 2010, FTI Consulting served its Monthly Fee Request for the period from October 1, 2010 through and including November 1, 2010, which was the effective date of the Plan's confirmation, for the amount of $150,374.00 consisting of $150,374.00 for professional fees and $0 for expenses.  The 20 day period for objections expired on December 7, 2010 without any objections.  As of the filing of this Application, FTI Consulting has not been paid.

18.    Pursuant to the Administrative Order, FTI Consulting is filing this Application for compensation for professional services rendered and reimbursement of expenses made in these cases during the Eighth Interim Fee Application Period.

### THE FINAL FEE APPLICATION PERIOD

19.    For the Final Fee Application Period, FTI Consulting is seeking four elements of compensation.  First, FTI Consulting requests final approval of compensation for services rendered on behalf of the Debtors for the period of November 10, 2008 through and including November 1, 2010, totaling 18,490.5 hours and $8,856,354.00 in fees.

20.    Second, of the total fees sought, FTI Consulting is seeking approval of compensation for services relating to preparing the October, 2010 Monthly Fee Request and Final Fee Application. For this Court's convenience, below is a summary of such fees.

**Summary of Fees by Professional Incurred in Preparing October, 2010 Monthly Fee Request and Final Fee Application**
**FTI Consulting, Inc.**
**November 2, 2010  through and including December 16, 2010**

| Name | Title | Total Hours | Rate | Total Fees |
|------|-------|-------------|------|------------|
| Duffy, Robert J | Sr Managing Dir | 2.0 | $  885 | $  1,770.00 |
| Coulombe, Stephen | Sr Managing Dir | 2.4 | 885 | 2,124.00 |
| Cashman, Brian | Managing Dir | 15.8 | 655 | 10,349.00 |
| O'Loughlin, Morgan | Consultant | 8.7 | 350 | 3,045.00 |
| Hellmund-Mora, Marili | Professional Assistant | 4.2 | 250 | 1,050.00 |
| **Total** | | **33.1** | | **$  18,338.00** |

21.    Third, as this Court previously ordered in the Retention Order, FTI Consulting has fulfilled all of the requirements to earn the Restructuring Fee of $500,000.00 set forth in the

13

Engagement Letter with the Debtors, and in connection therewith, requests a final allowance of $500,000.00.

22.    Fourth, with the exception of Tranche 4 of the Completion Fee, FTI Consulting has fulfilled all of the requirements to earn $1,250,000.00 of the Completion Fee, as approved by the Retention Order and modified by the Supplemental Order.  In respect of Tranche 4, pursuant to the Supplemental Order, FTI Consulting shall be paid $500,000 on or as soon as reasonably practicable after distribution(s) to one or more members of a class of general unsecured creditors of the Debtors under a confirmed plan of liquidation equal to 10% or more of the allowed amount of such member(s) general unsecured claim(s) (the "Tranche 4 Payment").  To FTI Consulting's knowledge, to date, no payment has been made to unsecured creditors.  But, based on the projections in supplemental disclosure documents filed with this Court, it is very likely that the members of a class of unsecured creditors will receive 10% or more of the allowed amount of the claims in such class. Accordingly, FTI Consulting submits that it has satisfied (or will satisfy) all of the requirements for payment of the full Completion Fee and the Completion Fee should be allowed in the full amount of $1,750,000.00.

**RELIEF REQUESTED**

**The Eighth Interim Fee Application Period**

23.    By this Application, FTI Consulting requests approval and payment of interim compensation and reimbursement of expenses pursuant to Bankruptcy Code sections 328, 330 and 331 for the Eighth Interim Fee Application Period.

24.    At this time, FTI Consulting is seeking allowance of compensation equal to $316,442.50 in fees for professional services rendered by FTI Consulting during the Eighth Interim Fee Application Period as financial advisors to the Debtors in these chapter 11 cases.  This amount is derived solely from the applicable hourly billing rates of the firm's personnel who rendered such services to the Debtors.    Additionally, FTI Consulting is seeking reimbursement of actual and necessary costs and expenses of $1,778.26.  Of this amount, FTI Consulting has already been paid compensation of $141,158.23, eighty-five percent (85%) of fees billed from August 1, 2010 through and including September 30, 2010 pursuant to the Administrative Order, and reimbursed for expenses of $1,778.26, one hundred percent (100%) of expenses billed from August 1, 2010 through and including September 30, 2010.  Accordingly, through this Application, FTI Consulting requests

payment of the remaining fees billed from August 1, 2010 through and including November 1, 2010 of $175,284.27 and reimbursement of remaining expenses billed from August 1, 2010 through and including November 1, 2010 of $0.

## Final Fee Application Period

25.    By this Application, FTI Consulting also requests approval and payment of final compensation and reimbursement of expenses pursuant to Bankruptcy Code sections 328, 330 and 331 for the Final Fee Application Period.

26.    At this time, FTI Consulting is seeking allowance of compensation equal to $8,856,354.00 in fees for professional services rendered by FTI Consulting during the Final Fee Application Period as financial advisors to the Debtors in these chapter 11 cases.  This amount is derived solely from the applicable hourly billing rates of the firm's personnel who rendered such services to the Debtors.  Additionally, FTI Consulting is seeking allowance of actual and necessary costs and expenses of $411,109.95.  Of this amount, FTI Consulting has already been (i) paid $8,662,731.73 less concessions of $20,000.00, which is 100% of fees billed from November 10, 2008 through and including July 31, 2010 and eighty-five percent (85%) of fees billed from August 1, 2010 through and including September 30, 2010 pursuant to the Administrative Order, and (ii) reimbursed for expenses of $411,109.95, one hundred percent (100%) of expenses billed from November 10, 2008 through and including September 30, 2010.  Accordingly, through this Application, FTI Consulting requests payment of the remaining fees of $193,622.27 and reimbursement of remaining expenses of $0.

27.    In addition, FTI Consulting is seeking final allowance of the Restructuring and Completion Fees for which FTI Consulting has been paid $1,750,000.00 to date and for which FTI Consulting may be paid an additional $500,000 under Tranche 4.

28.    FTI Consulting has received no promise of payment for professional services rendered or to be rendered in these cases other than in accordance with the provisions of the Bankruptcy Code.

## BASIS FOR RELIEF

## THE EIGHTH INTERIM FEE APPLICATION PERIOD

29.     It is not practical to describe every phone call made, meeting attended, document generated, or other service provided in the Debtors' cases.  Thus, this Application highlights the most significant services performed by FTI Consulting for the Debtors during the Eighth Interim Fee Application Period and the attached time records in Exhibit C contain the detail of each task performed from August 1, 2010 through and including November 1, 2010.

30.     FTI Consulting submits that the financial advisory services that it rendered to the Debtors in connection with their chapter 11 cases during the Eighth Interim Fee Application Period were necessary and beneficial to the Debtors, their creditors, and their estates.  During the Eighth Interim Fee Application Period, FTI Consulting devoted a total of 858.6 hours to assisting the Debtors in their chapter 11 cases.  Schedules showing the name and position of each professional, hours worked during the Eighth Interim Fee Application Period, and hourly billing rate are provided at the front of this Application.  Exhibit C provides the detail by matter of the time billed for such services.

31.     Set forth in Exhibit D attached hereto are the detailed expenses incurred during the Eighth Interim Fee Application Period in the amount of $1,778.26.

### Summary Description Of Services Rendered

32.     FTI Consulting maintains contemporaneous records of the time expended for the professional services and expenses related hereto performed in connection with these Chapter 11 cases and such records are maintained in the ordinary course of its business.  These records provide a detailed description of the services rendered and expenses incurred during the period for which this Application is being made.

33.     All services for which FTI Consulting requests compensation were performed for, or on behalf of, the Debtors.

34.     This portion of the Application is divided into seven narrative sections based on the activity descriptions listed below.  Each narrative section describes the more significant services rendered by FTI Consulting for each of the activity categories and its benefit to the Debtors.  FTI Consulting is charging only on an hourly basis for these services.  The fees applied for herein are

based on the hourly rates that reflect the usual and customary fees charged to all clients of FTI
Consulting and are commensurate with the usual and customary rates charged for services performed
by accountants and financial advisors in bankruptcy cases of this nature.

***Attendance at Bankruptcy Court Hearings***

35.    During the Eighth Interim Fee Application Period, at the request of the Debtors'
counsel and the Debtors' management, FTI Consulting prepared for and attended the confirmation
hearing on September 8, 2010.  FTI Consulting's testimony relating to the liquidation analysis and
claims waterfall was proffered by Debtors' counsel.

36.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals
spent 3.5 hours on matters related to Attendance at Bankruptcy Court Hearings for which
compensation is sought with the time value of $2,292.50.  The detailed time entries for this task are
attached hereto as Exhibit C.

***Claims Management***

37.    During the Eighth Interim Fee Application Period, at the request of the Debtors, FTI
Consulting assisted in the claims management process.  To date, creditors have filed over 15,000
proofs of claim in these cases that require reconciliation.  These claims, which consist of secured,
503(b)(9), administrative, reclamation, priority and unsecured have a stated value in excess of $13.1
billion.  At the request of the Debtors, FTI Consulting has been assisting the Debtors' personnel in
providing guidance and assistance in the efficient and effective reconciliation of this population of
claims.

38.    First, FTI Consulting assisted in the claims management area including all aspects of
claims management and claims resolution.  Utilizing proprietary bankruptcy software called the
Claims Management System ("CMS"), FTI Consulting established a multi-user, computer
information system environment designed to manage the Debtors' scheduled liabilities and proofs of
claim.  The Debtors use and rely on CMS to track the progress and status of each proof of claim,
perform analysis of claims, object to claims and generate various management reports.  The CMS
database server and software is available via a secure internet protected environment that provides
the Debtors and their advisors access to claims related information and enables the Debtors to
increase personnel resources as necessary to meet the requirements and deadlines of the cases.

39.    Second, FTI Consulting at the request of the Debtors and Debtors' counsel prepared ad hoc reports related to the various omnibus claim objections filed, resolved and/or prosecuted during the Eight Interim Fee Application Period.

40.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 34.4 hours on matters related to claims management for which compensation is sought with the time value of $18,824.00.  The detailed time entries for this task are attached hereto as Exhibit C.

### General Duties and Case Administration

41.    In any complex bankruptcy case, it is necessary for professionals to perform certain administrative tasks that support the overall advisory effort.

42.    During the Eighth Interim Fee Application Period, these tasks included but were not limited to: (i) development and revision of work plans and subsequent meetings to assign tasks to complete the work plan; (ii) teleconferences and meetings with Debtors' management, legal and financial advisors to discuss case status, open items, creation of work plans, distribution of responsibilities, and strategies to be implemented to ensure efficiencies in executing defined objectives; and (iii) performance of administrative tasks such as distribution of information to management, and Debtors' counsel and other parties-in-interest.

43.    In addition, during the Eighth Interim Fee Application Period, FTI Consulting prepared its seventh interim fee application and monthly fee statements which required FTI Consulting to review time records of its professionals and summarize the work that had been done on each matter.

44.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 26.3 hours on matters related to general duties and case administration which compensation is sought with the time value of $13,792.50.  The detailed time entries for this task are attached hereto as Exhibit C.

### Liquidation Analysis/Wind Down

45.    During the Eighth Interim Fee Application Period, FTI Consulting, at the direction of the Debtors' management, continued to assist in wind down matters and update the liquidation analysis.

46.    First, FTI Consulting updated the detailed liquidation analysis with actual cash activity as well as estimated recoveries to the various classes of creditors and provided the analysis to the Debtors' board of directors, Debtors' management and the Committee's financial advisors and counsel.   FTI Consulting worked with the Debtors' management and Debtors' counsel to continue to identify all possible receivables, payables, revenues and expenses.

47.    Second, FTI Consulting updated periodically a claims waterfall report incorporating summary claims data from the CMS system.   FTI Consulting prepared a bridge analysis to track the progress of the claims reconciliation process.   The claims waterfall was updated for (i) total claims filed; (ii) ordered claims; (iii) withdrawn claims; (iv) claims settled through court stipulation; (v) filed omnibus objections; (vi) adjourned claims and (vii) allowed claims.   Updating the claims waterfall report included reviewing and summarizing omnibus objections, court stipulations, supplemental orders, withdrawn claims and other court documents to ensure accurate reporting of remaining claims.

48.    Third, FTI Consulting, at the request of the Debtors' management and the Debtors' counsel, prepared a sources and uses analysis that was updated periodically for actual results and changes in assumptions.

49.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 100.9 hours on matters related to the liquidation analysis/wind down for which compensation is sought with the time value of $50,067.50.   The detailed time entries for this task are attached hereto as Exhibit C.

**Plan of Liquidation/Disclosure Statement**

50.    During the Eighth Interim Fee Application Period, at the request of the Debtors, FTI Consulting worked with the Debtors' management, Debtors' counsel and the Committee to update the substantive consolidation analysis and related reporting and also updated the liquidation analysis under a Chapter 7 assumption as an exhibit to the supplemental disclosure document filed with this Court.

51.    As part of the process to update the substantive consolidation analysis, FTI Consulting updated the liquidation analysis for each of the debtors.   As part of this analysis, FTI Consulting assigned proceeds and disbursements during the wind down period among the eighteen debtors. Next, FTI Consulting updated claims information by debtor.   In addition, intercompany balances

among the debtors were updated.  Moreover, time was spent analyzing the allocation of the royalty charge, interest, and corporate overhead to the debtors.  Along with claims, FTI Consulting and the Debtors worked together to separate proceeds by debtor to calculate the recovery percentage to the unsecured claimants by debtor.

52.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 29.8 hours on matters related to store closing activities for which compensation is sought with the time value of $16,414.50.  The detailed time entries for this task are attached hereto as Exhibit C.

### Preference Analysis

53.    Prior to the Eighth Interim Fee Application Period, at the request of the Debtors, FTI Consulting led the efforts in coordinating the reconciliation of accounts and performance of preference analyses necessary in negotiating the resolution of potential litigation and prosecuting other litigation.  This included gathering the necessary payment and receipt information by check or invoice for the 24 months subsequent to the Petition Date and loading the information into the claims management software and calculating preferences under various scenarios assuming various defenses available to vendors.   The process and calculation was reviewed with the Debtors and the Debtors' counsel to ensure agreement in the approach.

54.    During the Eighth Interim Fee Application Period, FTI Consulting, at the request of the Debtors, continued to assist with the preference analysis.  FTI Consulting assisted the Debtors and Debtors' counsel in preparing preference data exhibits to be used in preparation of demand letters to select vendors.  Additionally, FTI Consulting assisted the Debtors and Debtors' counsel with interpreting responses to demand letters, providing modifications to the preference analysis and research into specific transactional data as needed.  Finally, FTI Consulting assisted the Debtors and Debtors' counsel with preparing exhibits to the hundreds of complaints that were filed on or before November 10, 2010.

55.    During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 655.7 hours on matters related to the Preference Analysis which compensation is sought with the time value of $209,151.50.  The detailed time entries are attached hereto as Exhibit C.

### Travel

56.     During the Eighth Interim Fee Application Period, FTI Consulting traveled from their home offices to various locations as required by the demands of the case.  Non-working travel time is charged at one-half of the actual time incurred for traveling.

57.     During the Eighth Interim Fee Application Period, FTI Consulting's professionals spent 8.0 hours on travel which compensation is sought with the time value of $5,900.00.  The detailed time entries for this task are attached hereto as Exhibit C.

### Allowance Of Compensation And Reimbursement Of Expenses For The Eighth Interim Fee Application Period

58.     During the Eighth Interim Fee Application Period, FTI Consulting provided a focused range of professional services as requested by the Debtors.  FTI Consulting respectfully submits that these services were necessary and beneficial to the successful and prompt administration of this case and have been provided in a cost efficient manner.  As discussed more fully below, FTI Consulting respectfully submits that the amounts applied for herein for professional services rendered on behalf of the Debtors in this proceeding to date are fair and reasonable given: (i) the time expended; (ii) the nature and extent of the services performed at the time at which such services were rendered; (iii) the value of such services; and (iv) the costs of comparable services other than in a Chapter 11 case.  Additionally, FTI Consulting submits that the expenses for which reimbursement is sought were incurred in connection with providing services to the Debtors and are actual and necessary.

59.     The time and labor expended by FTI Consulting has been commensurate with the size and complexity of the case.  In rendering these services, FTI Consulting made every effort to maximize the benefit to the Debtors, to work efficiently with the other professionals employed in the case, and to leverage staff appropriately in order to minimize duplication of effort.  The complex issues of the case required staff professionals to confer and collaborate at certain times to ensure the efficient allocation of resources and to plan strategies effectively.  While essential to the effective administration of the engagement, to the extent possible, these conferences were kept to a minimum.  Compensation is sought for participation by more than one professional only in instances where joint participation was necessary because of the significant impact of a particular meeting, the complexity of the problem involved, and the specialization required or the need to preserve continuity of representation.  At times, it may have been necessary for more than one professional to attend a meeting to facilitate communication of information rather than to relay the information from individual to individual.

21

60.     FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed and expenses incurred for the benefit of the Debtors.  FTI Consulting has carefully reviewed all of its time records and has elected to make certain voluntary reductions to the fees it is requesting which results primarily from the application of FTI Consulting's firm-wide policy which requires professional personnel to exercise reasonable billing judgment on a daily basis.  Chargeable hours are recorded on a daily basis, at which time professional staff members make informed judgments as to the quality and productivity of time spent on the engagement.  The exercise of reasonable billing judgment, at the professional staff level, effectively considers the quality of time charged to the Debtors.  In this regard, non-productive time has not been billed to the Debtors.

61.     The services that have been provided by FTI Consulting during these proceedings have been wholly consistent with the Debtors' intentions and have been undertaken with specific direction and guidance from the Debtors' management.  These cases have necessitated the use of experienced advisors with specialized expertise in bankruptcy issues and financial analysis to timely and thoroughly address the needs of the Debtors in performing their duties as Debtors-in-Possession.  The persons who have worked on this case have demonstrated the skill in their respective areas of expertise required to provide the services necessary to assist the Debtors.

62.     Consistent with FTI Consulting's policy with respect to its other clients, FTI Consulting is seeking reimbursement for charges and disbursements incurred as out-of-pocket expenses in the rendition of necessary services to the Debtors.  These charges and disbursements include, among other things, transportation, lodging and meals.

63.     Taking into consideration the skill and experience of FTI Consulting, the benefits to the Debtors, the nature of the assignment, and the time expended, FTI Consulting believes that fair and reasonable compensation for the services rendered and expenses incurred during the Eighth Interim Fee Application Period is $318,220.76 consisting of compensation of services rendered of $316,442.50 and reimbursement of actual and necessary expenses of $1,778.26.

### RESTRUCTURING AND COMPLETION FEES

64.     In addition to the services rendered on an hourly basis for which compensation is sought, FTI Consulting is also seeking final allowance of the Restructuring Fee and the Completion Fee.

65.     As described above, on November 18, 2008, the Debtors filed an application authorizing them to retain FTI Consulting as financial advisors, effective as of the Petition Date. After the Application was filed, the Creditors Committee informally objected to certain aspects of FTI Consulting's retention, including the Restructuring Fee and the Completion Fee.  To avoid a contested hearing with respect to FTI Consulting's retention, FTI Consulting and the Debtors agreed to modify certain aspects of FTI Consulting's retention to resolve the Creditors Committee's informal objection. The terms of that resolution were incorporated in FTI Consulting's Retention Order, which was entered on December 12, 2008.

66.     At this time, the Court has previously approved the Restructuring Fee and FTI Consulting has received payment of the Restructuring Fee totaling $500,000.00.  FTI Consulting submits that all of the requirements for payment of the Restructuring Fee have been satisfied and the terms and conditions of payment thereof are not improvident as there have been no developments that were not capable of being anticipated at the time FTI Consulting's Retention Order was entered.

67.     Earlier this year, the Creditors Committee again informally objected to the Completion Fee.  To avoid further litigation, FTI Consulting again agreed to voluntarily modify the Completion Fee.  Thereafter, on September 16, 2010, this Court entered the Supplemental Order, which modified and further approved the Completion Fee.

68.     According to the Supplemental Order, the Completion Fee shall be paid as follows:

69.     In respect of Tranche 1, FTI Consulting shall be paid $250,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases (the "Tranche 1 Payment").

70.     In respect of Tranche 2, FTI Consulting shall be paid $500,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases (the "Tranche 2 Payment").

71.     In respect of Tranche 3, FTI Consulting shall be paid $500,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases (the "Tranche 3 Payment")

72.     In respect of Tranche 4, FTI Consulting shall be paid $500,000 on or as soon as reasonably practicable after distribution(s) to one or more members of a class of general unsecured creditors of the Debtors under a confirmed plan of liquidation equal to 10% or more of the allowed amount of such member(s) general unsecured claim(s) (the "Tranche 4 Payment").

73.     On the Effective Date of the Plan, the Liquidating Trustee was required to deposit $500,000 into the Professional Fee Reserve, which shall be held for FTI Consulting's exclusive benefit. The Tranche 4 Payment shall be paid from the Professional Fee Reserve.

74.     At this time, FTI Consulting has received payment of Tranches 1-3, totaling $1,250,000.00, but has not received payment of Tranche 4 totaling $500,000.00.  FTI Consulting submits that all of the requirements for payment of Tranches 1-3 have been satisfied and the terms and conditions of payment thereof are not improvident as there have been no developments that were not capable of being anticipated at the time FTI Consulting's Retention Order was entered.   FTI Consulting also submits that the terms and conditions of payment of Tranche 4 are not improvident as there have been no developments that were not capable of being anticipated at the time FTI Consulting's Retention Order was entered and modified by the Supplemental Order.   FTI Consulting submits that payment of Tranche 4 must be made as soon as reasonably practicable after the conditions for payment in the Supplemental Order are satisfied.

75.     Based on the foregoing, FTI Consulting submits that the terms and conditions of the Restructuring Fee are fair and reasonable under section 328(a) and final allowance of the Restructuring Fee and the Completion Fee are warranted.

**FINAL ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

76.     During the Final Fee Application Period, FTI Consulting provided a broad range of professional services as requested by the Debtors.  FTI Consulting respectfully submits that these services were necessary and beneficial to the successful and prompt administration of this case; and have been provided in a cost efficient manner.  As discussed more fully below, FTI Consulting respectfully submits that the amounts applied for herein for professional services rendered on behalf of the Debtors in this proceeding to date are fair and reasonable given: (i) the time expended; (ii) the nature and extent of the services performed at the time at which such services were rendered; (iii) the value of such services; and (iv) the costs of comparable services other than in a Chapter 11 case. Additionally, FTI Consulting submits that the expenses for which reimbursement is sought were incurred in connection with providing services to the Debtors and are actual and necessary.

77.     As required by the Interim Compensation Procedures Order, beginning with the period ended January 31, 2009, FTI Consulting filed interim fee applications.  As with this Application, each interim fee application included detailed time entries and expense itemizations, as well as

24

summary descriptions of professional services rendered to and expenses incurred, for the applicable interim period. Rather, than attach the detailed reports and reiterate those descriptions in this Application, FTI Consulting hereby incorporates by reference the interim fee applications and all exhibits as if fully set forth herein and provides the following summary.

78.    The time and labor expended by FTI Consulting has been commensurate with the size and complexity of the case. In rendering these services, FTI Consulting made every effort to maximize the benefit to the Debtors, to work efficiently with the other professionals employed in the case, and to leverage staff appropriately in order to minimize duplication of effort. The complex issues of the case required staff professionals to confer and collaborate at certain times to ensure the efficient allocation of resources and to plan strategies effectively. While essential to the effective administration of the engagement, to the extent possible these conferences were kept to a minimum. Compensation is sought for participation by more than one professional only in instances where joint participation was necessary because of the significant impact of a particular meeting, the complexity of the problem involved, and the specialization required or the need to preserve continuity of representation. At times, it may have been necessary for more than one professional to attend a meeting to facilitate communication of information rather than to relay the information from individual to individual.

79.    FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed and expenses incurred for the benefit of the Debtors. FTI Consulting has carefully reviewed all of its time records and has elected to make certain voluntary reductions to the fees it is requesting which results primarily from the application of FTI Consulting's firm-wide policy which requires professional personnel to exercise reasonable billing judgment on a daily basis. Chargeable hours are recorded on a daily basis, at which time professional staff members make informed judgments as to the quality and productivity of time spent on the engagement. The exercise of reasonable billing judgment, at the professional staff level, effectively considers the quality of time charged to the Debtors. In this regard, non-productive time has not been billed to the Debtors.

80.    The services that have been provided by FTI Consulting during these proceedings have been wholly consistent with the Debtors' intentions and have been undertaken with specific direction and guidance from the Debtors' management. The case has necessitated the use of experienced advisors with specialized expertise in bankruptcy issues, retail matters and financial

analysis to timely and thoroughly address the need of the Debtors in performing its duty as a Debtors-in-Possession.  The persons who have worked on this case have demonstrated the skill in their respective areas of expertise required to provide the services necessary to assist the Debtors.

81.    Consistent with FTI Consulting's policy with respect to its other clients, FTI Consulting is seeking reimbursement for charges and disbursements incurred as out-of-pocket expenses in the rendition of necessary services to the Debtors.  These charges and disbursements include, among other things, transportation, lodging and meals.

82.    Other than as provided in Section 504(b) of the Bankruptcy Code, FTI Consulting has not shared, or agreed to share, any compensation received as a result of this case with any person, firm or entity.  No promises concerning compensation have been made to FTI Consulting by any firm, person or entity.  The sole and exclusive source of compensation shall be funds of the Estates.

83.    This Application is made by FTI Consulting in accordance with the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia, the Guidelines adopted by the Executive Office for the United States Trustee and the Administrative Order.  FTI Consulting has exercised reasonable billing judgment and has either reduced its fees or not sought reimbursement in relation to a number of tasks performed and expenses incurred for the benefit of the Debtors.

84.    Taking into consideration the skill and experience of FTI Consulting, the benefits to the Debtors, the nature of the assignment, and the time expended, FTI Consulting believes that fair and reasonable compensation for the services rendered of $11,106,354.00 and actual and necessary expenses incurred of $411,109.95 during the Final Fee Application Period.

85.    FTI Consulting reserves the right to supplement this Application prior to a hearing.   In addition, this Application is made without prejudice to FTI Consulting's right to seek further allowance of compensation in the future in accordance with the Retention Order and the Administrative Order.  FTI Consulting reserves the right to return to this Court seeking payment of or reimbursement for amounts related to work performed or expenses incurred during the Final Fee Application Period, but not yet reflected in the firm's time records or to amend the amounts listed herein to correct any bookkeeping errors.  In the event a subsequent review reveals that additional professional services have been rendered or expenses have been incurred on behalf of the Debtors during the Final Fee Application Period, which were not processed by the firm's accounting system

before the time of this Application, FTI Consulting reserves the right to seek such additional fees and expenses by subsequent application to this Court.

86.    The undersigned has read this application and to the best of the undersigned's knowledge, information and belief formed after reasonable inquiry, certify that the fees and disbursements sought are billed at rates in accordance with practices customarily employed by FTI Consulting and generally accepted by our clients.

WHEREFORE, FTI Consulting respectfully requests that this Court enter an Order (i) allowing interim compensation for the period from August 1, 2010 through and including November 1, 2010 in the sum of one hundred percent (100%) of the amount incurred by FTI Consulting of $316,442.50 in fees and reimbursement of one hundred percent (100%) of actual expenses in the amount of $1,778.26, (ii) allowing final compensation for services rendered by Applicant, including the Restructuring Fee and Completion Fee, in the total amount of $11,106,354.00 and reimbursement of certain expenses incurred by FTI Consulting in the amount of $411,109.95 for the Final Fee Application Period, (iii) directing prompt payment to FTI Consulting in the amount of $694,249.27 less $500,000.00 holdback for Tranche 4 of the Completion Fee, and (iv) granting such other and further relief as may be just and proper.

Respectfully submitted,

FTI Consulting, Inc.

_____          _____
Robert J. Duffy                                            12/16/10
                                                           Date


FTI Consulting, Inc.
200 State Street
Boston, MA 02109
(617) 897-1501

_____          _____
Notary Public                                            12/16/10
                                                          Date
My Commission Expires
9/28/2017

EXHIBIT A


CIRCUIT CITY STORES, INC., et al.,


SUMMARY OF FEES

BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit A - Summary of Fees by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Duffy, Robert J | Sr. Managing Director | $885.00 | 18.5 | 16,372.50 |
| Regan, Kevin | Sr. Managing Director | $820.00 | 14.0 | 11,480.00 |
| Robinson, Joshua M. | Managing Director | $675.00 | 43.7 | 29,497.50 |
| Cashman, Brian | Managing Director | $655.00 | 61.3 | 40,151.50 |
| Nemerov, Lara | Consultant | $350.00 | 221.4 | 77,490.00 |
| O'Loughlin, Morgan | Consultant | $350.00 | 82.5 | 28,875.00 |
| Byrnes, Kevin | Consultant | $270.00 | 145.1 | 39,177.00 |
| Dorfman, Daniel | Consultant | $270.00 | 13.1 | 3,537.00 |
| Park, Yohan | Consultant | $270.00 | 255.6 | 69,012.00 |
| Hellmund-Mora, Marili | Consultant | $250.00 | 3.4 | 850.00 |
| **Total** | | | **858.6** | **$316,442.50** |

EXHIBIT B


CIRCUIT CITY STORES, INC., et al.,


SUMMARY OF FEES BY TASK CODE

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit B - Summary of Fees by Task Code*
*For the Period 8/1/2010 through and including 11/1/2010*

| Task Code | Hours | Fees |
|---|---|---|
| Attendance at Bankruptcy Court Hearings | 3.5 | 2,292.50 |
| Claims Management | 34.4 | 18,824.00 |
| General Duties and Case Administration | 26.3 | 13,792.50 |
| Liquidation Analysis/Wind down | 100.9 | 50,067.50 |
| Plan of Liquidation/Disclosure Statement | 29.8 | 16,414.50 |
| Preference Analysis | 655.7 | 209,151.50 |
| Travel | 8.0 | 5,900.00 |
| **Total** | **858.6** | **$316,442.50** |

EXHIBIT C


CIRCUIT CITY STORES, INC., et al.,


COMPLETE ACCOUNTING OF TIME EXPENDED BY DAY BY PROFESSIONAL

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Attendance at Bankruptcy Court Hearings** | | | |
| Cashman, Brian | 9/7/2010 | 1.0 | Prepare for confirmation court hearing by reviewing documents. |
| Cashman, Brian | 9/8/2010 | 2.5 | Attend confirmation court hearing. |
| **Subtotal - Attendance at Bankruptcy Court Hearings** | | **3.5** | |
| **Claims Management** | | | |
| Regan, Kevin | 8/8/2010 | 2.5 | Review materials for next day's deposition. |
| Duffy, Robert J | 8/9/2010 | 1.2 | Review materials for K. Regan's (FTI) deposition. |
| Regan, Kevin | 8/9/2010 | 2.5 | Participate in deposition. |
| Regan, Kevin | 8/9/2010 | 2.0 | Prepare for deposition. |
| Regan, Kevin | 8/9/2010 | 1.5 | Prepare for B. Fose's (CC) ensuing deposition. |
| Robinson, Joshua M. | 8/10/2010 | 1.0 | Read and respond to email questions from H. Fergusson regarding CMSi (CC). |
| Nemerov, Lara | 8/11/2010 | 3.0 | Update various claims due to settlements on docket per request of S. Baker (SASMF) and confirm changes with I. Fredericks (SASMF). |
| Nemerov, Lara | 8/12/2010 | 0.5 | Prepare supplemental order to Omni 60 per request of S. Boehm (MGW). |
| Robinson, Joshua M. | 8/13/2010 | 0.3 | Read and respond to email questions from H. Fergusson (CC). |
| Regan, Kevin | 8/16/2010 | 1.5 | Review the draft deposition, make edits and sign off and return to SASMF. |
| Nemerov, Lara | 8/19/2010 | 0.2 | Identify Quebecor checks. |
| Nemerov, Lara | 8/24/2010 | 1.5 | Perform Quebecor analysis per request of S. Boehm (MGW). |
| Nemerov, Lara | 8/25/2010 | 0.7 | Prepare supplemental order on Omni 60 per request of S. Boehm (MGW). |
| Robinson, Joshua M. | 8/26/2010 | 2.4 | Review supplemental order on Omni 60 per request of S. Boehm (MGW). |
| Nemerov, Lara | 9/1/2010 | 3.0 | Make claim updates based on recent stipulations on claims docket. |
| Robinson, Joshua M. | 9/2/2010 | 1.5 | Assist L. Nemerov (FTI) with orders for Omni's 80 and 81. |
| Nemerov, Lara | 9/3/2010 | 3.0 | Prepare the orders on Omni 80/81 exhibit preparation. |
| Nemerov, Lara | 9/3/2010 | 1.0 | Communicate new claims data with team as of 9/3/10. |
| Nemerov, Lara | 9/7/2010 | 2.0 | Prepare the orders on Omni 80/81 exhibit preparation and modifications. |
| Dorfman, Daniel | 9/27/2010 | 2.0 | Compile New Claims Report and distribution to team. |
| Dorfman, Daniel | 9/28/2010 | 1.1 | Compile supplemental data files for Jack of All Games, Western Digital, Vonage Holdings, Warner Home Video, SanDisk Corporation, PNY Technologies, Parrot, Linksys. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Claims Management** | | | |
| **Subtotal - Claims Management** | | **34.4** | |

### General Duties and Case Administration

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| O'Loughlin, Morgan | 8/2/2010 | 1.7 | Prepare July fee statement. |
| Cashman, Brian | 8/3/2010 | 0.8 | Prepare July fee statement. |
| O'Loughlin, Morgan | 8/3/2010 | 1.4 | Continue to prepare July fee statement and send draft to B. Cashman (FTI). |
| Hellmund-Mora, Marili | 8/3/2010 | 0.6 | Generate Circuit City July WIP, download into Word and Excel, format and correspond regarding the same. |
| Cashman, Brian | 8/4/2010 | 0.8 | Prepare July fee statement. |
| Cashman, Brian | 8/4/2010 | 0.4 | Update and finalize July fee statement. |
| Duffy, Robert J | 8/9/2010 | 0.8 | Review draft of the 7th interim fee application. |
| O'Loughlin, Morgan | 8/9/2010 | 1.0 | Prepare exhibits for the 7th interim fee application. |
| Hellmund-Mora, Marili | 8/9/2010 | 0.6 | Review July Circuit City fee statement, process bill, generate invoice and correspond regarding the same. |
| Duffy, Robert J | 8/10/2010 | 0.3 | Review and sign off on July fee statement. |
| Cashman, Brian | 8/10/2010 | 0.2 | Notice fee statement. |
| Cashman, Brian | 8/11/2010 | 0.8 | Review exhibits for 7th fee application and prepare summary of fees for inclusion in the report. |
| Duffy, Robert J | 8/13/2010 | 0.3 | Review the updated 7th interim fee application. |
| Cashman, Brian | 8/13/2010 | 1.5 | Update 7th fee application for new dates and fee amounts and distribute narratives for updates. |
| Cashman, Brian | 8/15/2010 | 2.5 | Update 7th interim fee application including tables and narratives. |
| Cashman, Brian | 8/16/2010 | 0.5 | Update 7th interim fee application. |
| O'Loughlin, Morgan | 8/16/2010 | 0.4 | Make updates to the 7th interim exhibits. |
| Cashman, Brian | 8/18/2010 | 1.6 | Complete drafting 7th interim fee application and submit for review. |
| O'Loughlin, Morgan | 9/7/2010 | 1.8 | Prepare August fee statement draft and send to B. Cashman (FTI). |
| Hellmund-Mora, Marili | 9/7/2010 | 0.5 | Generate Circuit City WIP, download, format in Excel. |
| Cashman, Brian | 9/8/2010 | 0.4 | Prepare and submit detailed time of 7th fee application in excel format to U.S. Trustee. |
| Cashman, Brian | 9/8/2010 | 0.3 | Finalize and submit 7th fee application. |
| Cashman, Brian | 9/13/2010 | 1.7 | Prepare August fee statement. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **General Duties and Case Administration** | | | |
| Hellmund-Mora, Marili | 9/29/2010 | 0.7 | Review fee statement, reconcile variances, process bill, generate invoice and correspond re: approvals and reconciliation. |
| O'Loughlin, Morgan | 10/8/2010 | 1.5 | Prepare the September fee statement time detail. |
| Cashman, Brian | 10/11/2010 | 2.2 | Prepare and notice September fee statement. |
| Hellmund-Mora, Marili | 10/13/2010 | 1.0 | Review fee statement, reconcile variances, process bill, generate invoice and correspond re: approvals and reconciliation. |
| **Subtotal - General Duties and Case Administration** | | **26.3** | |
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 8/3/2010 | 0.4 | Provide comments to team regarding the liquidation analysis. |
| Cashman, Brian | 8/3/2010 | 1.5 | Update liquidation analysis and notes from comments from conference call. |
| Cashman, Brian | 8/3/2010 | 1.1 | Review detailed time for July. |
| Cashman, Brian | 8/3/2010 | 0.3 | Respond to questions from Skadden regarding liquidation analysis. |
| O'Loughlin, Morgan | 8/3/2010 | 2.4 | Compile summary and listing of late claim add backs for support of the chapter 7 scenario. |
| O'Loughlin, Morgan | 8/3/2010 | 1.9 | Update the claims waterfall analysis with filed omnibus objection #80 and #81. |
| Cashman, Brian | 8/4/2010 | 0.6 | Update liquidation analysis for changes from conf call. |
| Cashman, Brian | 8/4/2010 | 0.3 | Update liquidation analysis for tax proceeds assumptions and unsecured claims. |
| Cashman, Brian | 8/4/2010 | 0.2 | Update Note 12 of liquidation analysis. |
| Cashman, Brian | 8/4/2010 | 0.2 | Review scheduled liabilities for Ventoux. |
| O'Loughlin, Morgan | 8/4/2010 | 1.4 | Update the claims waterfall with ordered omnibus objection #79. |
| O'Loughlin, Morgan | 8/4/2010 | 1.2 | Create the bridge for the claims waterfall to prior version and add comments for each section. |
| O'Loughlin, Morgan | 8/4/2010 | 1.1 | Create summary off of listing of remaining priority tax versus non tax claims. |
| O'Loughlin, Morgan | 8/4/2010 | 0.9 | Finalize claims waterfall and send to B. Cashman (FTI) for review. |
| O'Loughlin, Morgan | 8/4/2010 | 0.9 | Make updates to the claims waterfall based on stipulations with Lexmark, EEOC, and Gaston County. |
| O'Loughlin, Morgan | 8/4/2010 | 0.8 | Pull listing of three scheduled claims against Ventoux. |
| Duffy, Robert J | 8/5/2010 | 1.0 | Provide comments to team regarding the claims waterfall and liquidation analysis prior to distribution. |
| Cashman, Brian | 8/5/2010 | 1.1 | Review weekly cash report, update liquidation analysis and distribution to Skadden. |

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Cashman, Brian | 8/5/2010 | 0.4 | Review analysis breaking out tax and non-tax priority claims. |
| O'Loughlin, Morgan | 8/5/2010 | 1.1 | Prepare listing of the remaining secured claims after section II in the claims waterfall. |
| O'Loughlin, Morgan | 8/5/2010 | 0.9 | Prepare listing of the remaining priority claims after section II in the claims waterfall. |
| O'Loughlin, Morgan | 8/5/2010 | 0.5 | Review the latest listing of class 3 claims where claimants voted down. |
| O'Loughlin, Morgan | 8/6/2010 | 0.7 | Finalize the listing of remaining priority claims and send to SASMF for review. |
| Duffy, Robert J | 8/10/2010 | 0.7 | Provide comments to the team on the updated liquidation analysis. |
| O'Loughlin, Morgan | 8/10/2010 | 1.0 | Filter out the intercompany scheduled liabilities and send listing to B. Cashman (FTI). |
| Cashman, Brian | 8/11/2010 | 0.9 | Review weekly cash report, update liquidation analysis and forecast and distribute along with claims waterfall to Skadden. |
| Cashman, Brian | 8/11/2010 | 0.4 | Discuss with I. Fredericks (SASMF) the liquidation analysis and notes. |
| Cashman, Brian | 8/11/2010 | 0.4 | Review updated claims waterfall prepared by M. O'Loughlin (FTI). |
| O'Loughlin, Morgan | 8/11/2010 | 1.2 | Update the claims waterfall with stipulation for Allen County, Indiana. |
| O'Loughlin, Morgan | 8/11/2010 | 1.1 | Use the updated future objection file from H. Ferguson (CC) to update the claims waterfall. |
| O'Loughlin, Morgan | 8/11/2010 | 0.7 | Set up the bridge for the claims waterfall and provide comments for changes to prior version. |
| Cashman, Brian | 8/12/2010 | 0.2 | Distribute adjourned claims listing to Skadden as requested. |
| O'Loughlin, Morgan | 8/12/2010 | 0.9 | Prepare listing of adjourned claims in excel spreadsheet and send to SASMF. |
| O'Loughlin, Morgan | 8/12/2010 | 0.6 | Finalize the claims waterfall and send to B. Cashman (FTI). |
| Duffy, Robert J | 8/13/2010 | 0.7 | Provide comments to the team on the updated liquidation analysis. |
| Cashman, Brian | 8/13/2010 | 0.8 | Review updated claims waterfall reflecting changes for adjourned items and prepared comparison. |
| Cashman, Brian | 8/16/2010 | 0.4 | Review BOD presentation slides of claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 8/16/2010 | 1.6 | Format the latest liquidation analysis and claims waterfall for BOD presentation. |
| Duffy, Robert J | 8/17/2010 | 1.0 | Review the updated liquidation analysis and claims waterfall. |
| O'Loughlin, Morgan | 8/17/2010 | 1.4 | Update the claims waterfall with stipulations with Madcow, PNY, Harris County, Travis County, Visiontek. |
| O'Loughlin, Morgan | 8/17/2010 | 1.4 | Update the claims waterfall with certain tax claims paid from escrow account. |
| O'Loughlin, Morgan | 8/17/2010 | 0.7 | Make updates to the claims for future objection based on recently ordered stipulations. |
| O'Loughlin, Morgan | 8/18/2010 | 1.5 | Finalize the claims waterfall and bridge and send to B. Cashman (FTI). |
| Cashman, Brian | 8/19/2010 | 1.1 | Update liquidation analysis and claims waterfall and distribute to Skadden. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 8/23/2010 | 0.4 | Review BOD presentation slides. |
| Cashman, Brian | 8/24/2010 | 0.5 | Review cash report and BOD slides of liquidation analysis and claims waterfall. |
| O'Loughlin, Morgan | 8/24/2010 | 1.0 | Update the BOD deck with the latest liquidation analysis and claims waterfall. |
| Cashman, Brian | 8/25/2010 | 0.5 | Review claims waterfall. |
| O'Loughlin, Morgan | 8/25/2010 | 1.1 | Update the claims waterfall for stipulation with KEIC/Scoggin. |
| O'Loughlin, Morgan | 8/25/2010 | 0.8 | Update the claims waterfall for withdrawn claims Empire Healthchoice. |
| O'Loughlin, Morgan | 8/25/2010 | 0.6 | Finalize the claims waterfall and bridge and send to B. Cashman (FTI). |
| Cashman, Brian | 8/26/2010 | 1.0 | Update liquidation analysis and bridge and distribute. |
| Cashman, Brian | 8/26/2010 | 0.5 | Respond to emails from Skadden regarding claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 8/31/2010 | 1.4 | Update the claims waterfall with recent stipulations. |
| O'Loughlin, Morgan | 8/31/2010 | 1.2 | Tie out the claims paid to date in the waterfall to the liquidation analysis. |
| O'Loughlin, Morgan | 8/31/2010 | 0.9 | Review the listing of administrative claims with landlords to update the claims waterfall accordingly. |
| O'Loughlin, Morgan | 8/31/2010 | 0.5 | Update the bridge to the claims waterfall to prior version. |
| Cashman, Brian | 9/1/2010 | 0.6 | Update liquidation analysis for new claims ranges. |
| Cashman, Brian | 9/1/2010 | 0.4 | Review updated claims waterfall. |
| O'Loughlin, Morgan | 9/1/2010 | 1.4 | Update the claims waterfall bridge for the 9/1 version and send to B. Cashman (FTI). |
| O'Loughlin, Morgan | 9/1/2010 | 1.1 | Tie out the claims paid in the prior week for the claims waterfall update. |
| Cashman, Brian | 9/2/2010 | 0.5 | Update notes to liquidation analysis. |
| Duffy, Robert J | 9/6/2010 | 1.0 | Review the updated liquidation analysis and claims waterfall and provide comments. |
| O'Loughlin, Morgan | 9/7/2010 | 1.2 | Update the total claims filed line in the claims waterfall and prepare supporting schedule. |
| O'Loughlin, Morgan | 9/8/2010 | 1.7 | Update the claims waterfall based on ordered stipulations with Desoto County, Mimms, Boulder County, Convergys. |
| O'Loughlin, Morgan | 9/8/2010 | 1.2 | Update the claims waterfall with recently agreements on administrative claims with landlords. |
| O'Loughlin, Morgan | 9/8/2010 | 0.6 | Update the claims waterfall based on supplemental omnibus objections on Omni #43 and #60. |
| O'Loughlin, Morgan | 9/8/2010 | 0.5 | Finalize the bridge and comments for the claims waterfall. |
| Cashman, Brian | 9/13/2010 | 1.3 | Review updated claims waterfall, updated liquidation analysis and bridge. |
| Duffy, Robert J | 9/16/2010 | 0.6 | Review the latest claims waterfall. |

Circuit City Stores, Inc.

FTI Consulting, Inc.

Exhibit C - Complete Accounting of Time Expended by Day by Professional

For the Period 8/1/2010 through and including 11/1/2010

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| Duffy, Robert J | 9/16/2010 | 0.4 | Review the latest liquidation analysis and bridge to prior version. |
| Duffy, Robert J | 9/21/2010 | 1.0 | Provide comments to the team regarding the weekly analysis updates. |
| O'Loughlin, Morgan | 9/22/2010 | 1.7 | Update the claims paid supporting schedule in the claims waterfall for Arlington, K&G, Schnomish, Brevard, Hernando. |
| O'Loughlin, Morgan | 9/22/2010 | 1.6 | Update the claims waterfall with ordered omnibus objection #80. |
| O'Loughlin, Morgan | 9/22/2010 | 0.8 | Review future objection file from H. Ferguson (CC) and update the claims waterfall appropriately. |
| O'Loughlin, Morgan | 9/22/2010 | 0.4 | Finalize the bridge and comments for the claims waterfall. |
| Cashman, Brian | 9/23/2010 | 0.6 | Review claims waterfall. |
| Cashman, Brian | 9/23/2010 | 0.4 | Update liquidation analysis and bridge. |
| Cashman, Brian | 9/24/2010 | 1.0 | Complete updating liquidation analysis and bridge and distribute. |
| Cashman, Brian | 9/28/2010 | 1.0 | Review allowed claims file and respond to question from SASMF. |
| O'Loughlin, Morgan | 9/28/2010 | 1.5 | Provide the allowed claims and allowed unpaid claims schedules to I. Fredericks (SASMF). |
| O'Loughlin, Morgan | 9/29/2010 | 0.5 | Make update to the allowed claims listing and send updated waterfall to B. Cashman (FTI). |
| Duffy, Robert J | 9/30/2010 | 1.0 | Review the updated claims waterfall report and liquidation analysis/bridge. |
| Cashman, Brian | 9/30/2010 | 1.2 | Update liquidation analysis. |
| Cashman, Brian | 9/30/2010 | 0.5 | Review weekly cash report. |
| Cashman, Brian | 9/30/2010 | 0.4 | Review updated claims waterfall report. |
| Cashman, Brian | 10/6/2010 | 1.2 | Calculate and distribute Jefferies success fee with K. Bradshaw (CC). |
| O'Loughlin, Morgan | 10/6/2010 | 1.6 | Update the claims waterfall with recent stipulations with Export Development Canada, General Growth and Active Media. |
| O'Loughlin, Morgan | 10/6/2010 | 1.3 | Finalize the bridge and comments for the claims waterfall. |
| O'Loughlin, Morgan | 10/6/2010 | 0.6 | Update the total claims filed line in the claims waterfall and prepare supporting schedule. |
| Cashman, Brian | 10/7/2010 | 1.2 | Update liquidation analysis and bridge and distribute to SASMF. |
| Cashman, Brian | 10/7/2010 | 0.4 | Review updated claims waterfall and weekly cash report prepared by K. Bradshaw (CC). |
| Duffy, Robert J | 10/14/2010 | 0.3 | Review updated claims waterfall. |
| Duffy, Robert J | 10/14/2010 | 0.2 | Review latest liquidation analysis. |
| Duffy, Robert J | 10/18/2010 | 0.5 | Review the waterfall and liquidation analysis and provide updates to team. |
| O'Loughlin, Morgan | 10/19/2010 | 1.2 | Update the claims waterfall for stipulation with Digital Innovations LLC. |

Circuit City Stores, Inc.

FTI Consulting, Inc.

Exhibit C - Complete Accounting of Time Expended by Day by Professional

For the Period 8/1/2010 through and including 11/1/2010

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Liquidation Analysis/Wind down** | | | |
| O'Loughlin, Morgan | 10/19/2010 | 0.8 | Finalize the bridge and comments for the claims waterfall and send to B. Cashman (FTI). |
| Duffy, Robert J | 10/20/2010 | 0.4 | Review bridge to prior version for liquidation analysis. |
| Duffy, Robert J | 10/20/2010 | 0.1 | Compare the disclosure statement to the latest liquidation analysis. |
| Cashman, Brian | 10/20/2010 | 0.8 | Review updated claims waterfall. |
| Cashman, Brian | 10/20/2010 | 0.7 | Update liquidation analysis and bridge. |
| Duffy, Robert J | 10/26/2010 | 0.5 | Review the order on the plan confirmation and effective date. |
| Duffy, Robert J | 10/28/2010 | 0.3 | Review the updated claims waterfall. |
| Duffy, Robert J | 10/28/2010 | 0.2 | Review the liquidation analysis bridge. |
| Cashman, Brian | 10/28/2010 | 0.5 | Participate on call with I. Fredericks (SASMF) and M. O'Loughlin (FTI) to review claims waterfall. |
| O'Loughlin, Morgan | 10/28/2010 | 1.1 | Update the claims waterfall for recently ordered stipulations with Mitsubishi, Hitachi, Schimenti, Active Media, Fujifilm, Samsung, Acco, Olympus, Monster, CC Investors. |
| O'Loughlin, Morgan | 10/28/2010 | 0.9 | Update the claims waterfall for recently ordered omnibus objection #81. |
| O'Loughlin, Morgan | 10/28/2010 | 0.5 | Participate on call with I. Fredericks (SASMF) and B. Cashman (FTI) to review claims waterfall. |
| Cashman, Brian | 10/29/2010 | 1.3 | Review claims waterfall, provide review comments and then discuss with SASMF. |
| Cashman, Brian | 10/29/2010 | 1.2 | Review weekly cash report and update liquidation analysis and distribute. |
| Cashman, Brian | 10/29/2010 | 0.4 | Review updated claims waterfall reports. |
| Cashman, Brian | 10/29/2010 | 0.3 | Update liquidation analysis. |
| Cashman, Brian | 10/29/2010 | 0.3 | Participate on call with SASMF to review claims waterfall. |
| O'Loughlin, Morgan | 10/29/2010 | 1.1 | Update the claims waterfall with the latest future objections file from H. Ferguson (CC). |
| O'Loughlin, Morgan | 10/29/2010 | 0.9 | Update the allowed claims listing per discussion with SASMF. |
| Cashman, Brian | 10/30/2010 | 0.4 | Review updated claims waterfall reflecting changes as requested by SASMF. |
| Cashman, Brian | 10/30/2010 | 0.3 | Update liquidation analysis for changes to claims waterfall as requested by SASMF. |
| Cashman, Brian | 10/30/2010 | 0.3 | Respond to emails from FTI and SASMF regarding changes to claims waterfall and liquidation analysis. |
| O'Loughlin, Morgan | 10/30/2010 | 1.0 | Update the claims waterfall for recent stipulation with Stillwater and distribute to SASMF. |
| O'Loughlin, Morgan | 11/1/2010 | 2.0 | Prepare updated allowed, unpaid claims listing and send to H. Ferguson (CC). |
| **Subtotal - Liquidation Analysis/Wind down** | | **100.9** | |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|

### Plan of Liquidation/Disclosure Statement

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| Cashman, Brian | 8/1/2010 | 1.2 | Update substantive consolidation for updated proceeds and disbursements. |
| Duffy, Robert J | 8/2/2010 | 1.0 | Review the substantive consolidation analysis and provide comments to the team. |
| Cashman, Brian | 8/2/2010 | 1.2 | Participate on call with Skadden and UCC to review substantive consolidation. |
| O'Loughlin, Morgan | 8/2/2010 | 1.9 | Update the substantive consolidation analysis based on the call with SASMF. |
| O'Loughlin, Morgan | 8/2/2010 | 1.2 | Prepare and review listing of claims for CC Puerto Rico to support substantive consolidation analysis. |
| O'Loughlin, Morgan | 8/2/2010 | 1.2 | Participate on call with Skadden and UCC to review substantive consolidation. |
| Duffy, Robert J | 8/3/2010 | 0.6 | Review the updated liquidation analysis for the disclosure statement. |
| Cashman, Brian | 8/3/2010 | 0.6 | Participate on call with G. Galardi (SASMF) to discuss the liquidation analysis for disclosure statement. |
| O'Loughlin, Morgan | 8/3/2010 | 1.2 | Update the chapter 7 scenario liquidation analysis for the disclosure statement. |
| O'Loughlin, Morgan | 8/3/2010 | 0.6 | Exchange emails regarding disclosure statement requests. |
| Duffy, Robert J | 8/4/2010 | 1.0 | Review the updated liquidation analysis for the disclosure statement and provide comments to B. Cashman (FTI). |
| Cashman, Brian | 8/4/2010 | 0.7 | Update liquidation analysis for disclosure statement for comments from Skadden on format. |
| Cashman, Brian | 8/4/2010 | 0.4 | Prepare comparison between liquidation analysis in a Ch 11 scenario and Ch 7 scenario. |
| Cashman, Brian | 8/4/2010 | 0.4 | Participate on call with Skadden to review liquidation analysis for disclosure statement in Ch 7 scenario. |
| O'Loughlin, Morgan | 8/4/2010 | 1.3 | Create a schedule to compare the variances between the Ch 7 and Ch 11 scenarios and comment for each line item. |
| O'Loughlin, Morgan | 8/4/2010 | 0.4 | Participate on call with Skadden to review liquidation analysis for disclosure statement in Ch 7 scenario. |
| Duffy, Robert J | 8/6/2010 | 0.7 | Compare the updated Ch 7 scenario to the latest liquidation analysis for reasonableness. |
| Duffy, Robert J | 8/6/2010 | 0.3 | Review the Ch 7 and Ch 11 liquidation analyses for the disclosure statement. |
| Cashman, Brian | 8/6/2010 | 1.5 | Review substantive consolidation intercompany activity. |
| Cashman, Brian | 8/6/2010 | 1.4 | Update liquidation analysis for both Ch 7 and Ch 11 for new tax forecasts. |
| O'Loughlin, Morgan | 8/6/2010 | 1.3 | Make updates to the substantive consolidation analysis based on comments from B. Cashman (FTI). |
| Cashman, Brian | 8/9/2010 | 0.8 | Update liquidation analysis for disclosure statement for UCC changes and distribute. |
| Cashman, Brian | 8/9/2010 | 0.4 | Discuss with Skadden questions from Protiviti regarding claims ranges in liquidation analysis in disclosure statement. |
| Cashman, Brian | 8/10/2010 | 0.4 | Review scheduled liabilities listing for reasonableness and agree to substantive consolidation. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Plan of Liquidation/Disclosure Statement** | | | |
| O'Loughlin, Morgan | 8/19/2010 | 1.8 | Make updates to the substantive consolidation analysis based on comments from B. Cashman (FTI). |
| O'Loughlin, Morgan | 8/19/2010 | 0.7 | Update the scheduled liabilities line in the substantive consolidation analysis. |
| O'Loughlin, Morgan | 8/20/2010 | 1.3 | Simplify the prepetition intercompany balance support schedule for the substantive consolidation. |
| O'Loughlin, Morgan | 8/20/2010 | 1.2 | Update the notes section for the substantive consolidation analysis. |
| Duffy, Robert J | 8/23/2010 | 0.6 | Review the latest substantive consolidation analysis and provide comments. |
| Duffy, Robert J | 8/30/2010 | 1.0 | Provide comments to team regarding reporting coming into confirmation. |
| Cashman, Brian | 9/2/2010 | 1.0 | Update liquidation analysis for disclosure statement. |
| Cashman, Brian | 9/2/2010 | 0.5 | Update liquidation analysis for disclosure statement. |
| **Subtotal - Plan of Liquidation/Disclosure Statement** | | **29.8** | |
| **Preference Analysis** | | | |
| Robinson, Joshua M. | 8/5/2010 | 0.4 | Participate on preference call with B. Stark (MGW). |
| Nemerov, Lara | 8/13/2010 | 1.5 | Update various preference analyses per request of H. Ferguson (CC). |
| Robinson, Joshua M. | 8/16/2010 | 1.1 | Participate on various calls with I. Fredrick's (SAMSF) regarding select preference defendants. |
| Nemerov, Lara | 8/16/2010 | 3.0 | Participate in discussions with S. Baker (SASMF) and I. Fredericks (SASMF) regarding preference analysis. |
| Nemerov, Lara | 8/16/2010 | 2.8 | Make updates to the preference analyses. |
| Nemerov, Lara | 8/16/2010 | 2.4 | Continue to make updates to the preference analyses based on comments from I. Fredericks (SASMF). |
| Robinson, Joshua M. | 8/18/2010 | 1.1 | Participate on call with B. Stark (MGW) regarding research into certain preference transactions. |
| Robinson, Joshua M. | 8/19/2010 | 0.6 | Instruct L. Nemerov (FTI) on additional analysis requested by B. Stark (MGW) regarding select preference vendors. |
| Nemerov, Lara | 8/19/2010 | 2.0 | Perform Sharp preference analysis per request of B. Stark (MGW). |
| Nemerov, Lara | 8/19/2010 | 1.0 | Perform LowePro preference analysis per request of S. Baker (SASMF). |
| Robinson, Joshua M. | 8/20/2010 | 0.8 | Review preference analysis for Quebecor from L. Nemerov (FTI). |
| Nemerov, Lara | 8/20/2010 | 1.0 | Respond to various emails and questions regarding preference analysis. |
| Nemerov, Lara | 8/20/2010 | 1.0 | Perform Schimenti and Sharp preference analysis per request of B. Stark(MGW). |
| Nemerov, Lara | 8/23/2010 | 3.0 | Perform various preference analysis per request of S. Baker (SASMF). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 8/24/2010 | 1.0 | Perform SAP retail preference analysis per request of S. Baker (SASMF). |
| Nemerov, Lara | 8/25/2010 | 0.5 | Respond to several preference questions from H. Ferguson (CC). |
| Nemerov, Lara | 8/26/2010 | 3.0 | Assemble various preference analysis per H. Fergusons (CC) requests. |
| Nemerov, Lara | 8/27/2010 | 3.0 | Assemble various preference analyses per H. Fergusons (CC) request. |
| Nemerov, Lara | 8/30/2010 | 1.8 | Make updates to the preference analyses. |
| Nemerov, Lara | 8/30/2010 | 1.7 | Continue to make updates to the preference analyses. |
| Nemerov, Lara | 8/30/2010 | 1.0 | Update preference parent vendors per request of H. Ferguson (CC). |
| Robinson, Joshua M. | 8/31/2010 | 1.2 | Review preference analysis for Sharp from L. Nemerov (FTI). |
| Nemerov, Lara | 8/31/2010 | 3.0 | Update preference analysis per request of H. Ferguson (CC). |
| Robinson, Joshua M. | 9/1/2010 | 3.2 | Analyze select vendor preference data. |
| Robinson, Joshua M. | 9/1/2010 | 2.3 | Work with L. Nemerov (FTI) regarding questions on preference. |
| Nemerov, Lara | 9/1/2010 | 3.0 | Rerun preference analysis for all vendors per request of H. Ferguson (CC). |
| Nemerov, Lara | 9/1/2010 | 3.0 | Rerun preference analysis for all vendors per request of H. Ferguson (CC) (continued). |
| Robinson, Joshua M. | 9/2/2010 | 1.9 | Assist L. Nemerov (FTI) regarding questions on preference. |
| Nemerov, Lara | 9/2/2010 | 2.0 | Rerun preference analysis for all vendors per request of H. Ferguson (CC) (continued). |
| Robinson, Joshua M. | 9/7/2010 | 1.5 | Answer questions from L. Nemerov (FTI) regarding preference. |
| Nemerov, Lara | 9/7/2010 | 1.0 | Review Mizco preference analysis per request of S. Baker (SASMF). |
| Nemerov, Lara | 9/8/2010 | 1.0 | Prepare Monster cable preference analysis per request of H. Ferguson (CC). |
| Nemerov, Lara | 9/9/2010 | 0.3 | Prepare Bruce Clay preference analysis. |
| Nemerov, Lara | 9/10/2010 | 2.0 | Compile preference analysis summary for all vendors per request of H. Ferguson (CC). |
| Park, Yohan | 9/10/2010 | 3.0 | Manually match the demand file from H. Ferguson (CC) to vendor IDs in the summary file generated by L. Nemerov (FTI) in order to finalize preference exhibits per request of D. Blanks (MGW). |
| Byrnes, Kevin | 9/10/2010 | 3.0 | Manually match the demand file from H. Ferguson (CC) to vendor IDs in the summary file generated by L. Nemerov (FTI) in order to finalize preference exhibits per request of D. Blanks (MGW). |
| Robinson, Joshua M. | 9/13/2010 | 1.2 | Process list of consolidated preference vendors. |
| Nemerov, Lara | 9/13/2010 | 3.0 | Provide various preference analyses to H. Ferguson (CC) and S. Baker (SASMF). |
| Nemerov, Lara | 9/13/2010 | 3.0 | Provide various preference analyses to H. Ferguson (CC) and S. Baker (SASMF) (continued). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 9/13/2010 | 2.0 | Provide various preference analyses to H. Ferguson (CC) and S. Baker (SASMF) (continued). |
| Robinson, Joshua M. | 9/14/2010 | 3.2 | Run preference for newly consolidated vendors based on comments from I. Fredericks (SASMF) and H. Ferguson (CC). |
| Nemerov, Lara | 9/14/2010 | 3.0 | Create documentation for Circuit City preference procedures, analysis and exhibits. |
| Nemerov, Lara | 9/14/2010 | 2.0 | Create documentation for Circuit City preference procedures, analysis and exhibits (continued). |
| Robinson, Joshua M. | 9/15/2010 | 2.0 | Work with L. Nemerov (FTI) regarding questions on preference. |
| Nemerov, Lara | 9/15/2010 | 3.0 | Provide various preference analysis to S. Baker (SASMF) and H. Ferguson (CC). |
| Nemerov, Lara | 9/16/2010 | 2.0 | Prepare Navarre preference analysis. |
| Nemerov, Lara | 9/16/2010 | 2.0 | Generate several queries and exhibits for new preference analysis to distribute to preference team. |
| Nemerov, Lara | 9/16/2010 | 0.5 | Provide assistance to D. Dorfman (FTI) on preference exhibits. |
| Dorfman, Daniel | 9/16/2010 | 0.8 | Review all Accounts Payable data for preparation of USHE preference analysis and distribution of exhibits to H. Ferguson (CC) and D. Blanks (MGW). |
| Dorfman, Daniel | 9/18/2010 | 0.8 | Review all Accounts Payable data for preparation of Western Digital preference analysis. |
| Dorfman, Daniel | 9/19/2010 | 1.0 | Review all Accounts Payable data for preparation of Linksys preference analysis. |
| Dorfman, Daniel | 9/19/2010 | 0.8 | Review all Accounts Payable data for preparation of Jack of All Games preference analysis. |
| Dorfman, Daniel | 9/19/2010 | 0.6 | Review all Accounts Payable data for preparation of Vonage preference analysis. |
| Dorfman, Daniel | 9/19/2010 | 0.5 | Review all Accounts Payable data for preparation of Parrot preference analysis and distribution of exhibits to H. Ferguson (CC) and D. Blanks (MGW). |
| Nemerov, Lara | 9/20/2010 | 1.0 | Prepare Envision preference analysis. |
| Nemerov, Lara | 9/22/2010 | 2.0 | Prepare APCC and Digital Lifestyle Outfitters preference analysis. |
| Nemerov, Lara | 9/23/2010 | 1.0 | Perform preference analysis training for staff. |
| Robinson, Joshua M. | 9/24/2010 | 1.2 | Pull preference for select vendors based on comments from H. Ferguson(CC). |
| Nemerov, Lara | 9/24/2010 | 1.5 | Review Mitsubishi preference analysis and prepare Logitech preference analysis. |
| Robinson, Joshua M. | 9/27/2010 | 1.2 | Pull preference for select vendors based on comments from H. Ferguson(CC). |
| Nemerov, Lara | 9/27/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC). |
| Nemerov, Lara | 9/27/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC) (continued). |
| Nemerov, Lara | 9/27/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC) (continued). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 9/27/2010 | 1.2 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 9/27/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |
| Dorfman, Daniel | 9/27/2010 | 1.0 | Review all Accounts Payable data for preparation of PNY Technologies preference analysis. |
| Park, Yohan | 9/27/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 9/27/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 9/27/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 9/27/2010 | 0.9 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 9/27/2010 | 0.8 | Run query to generate data file. |
| Park, Yohan | 9/27/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/27/2010 | 0.8 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 9/27/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 9/27/2010 | 0.6 | Insert data into final preference table. |
| Park, Yohan | 9/27/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 9/27/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 9/27/2010 | 0.5 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 9/27/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 9/27/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 9/27/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 9/27/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Insert data into final preference table. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/27/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Robinson, Joshua M. | 9/28/2010 | 1.5 | Pull preference for select vendors based on comments from H. Ferguson(CC). |
| Nemerov, Lara | 9/28/2010 | 3.0 | Perform further preference analysis training for staff. |
| Nemerov, Lara | 9/28/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC) (continued). |
| Nemerov, Lara | 9/28/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC) (continued). |
| Nemerov, Lara | 9/28/2010 | 3.0 | Prepare various preference analyses and exhibits per request of H. Ferguson (CC) (continued). |
| Dorfman, Daniel | 9/28/2010 | 1.7 | Review all Accounts Payable data for preparation of Warner preference analysis. |
| Park, Yohan | 9/28/2010 | 1.5 | Perform analysis and create exhibits for respective vendors. |
| Dorfman, Daniel | 9/28/2010 | 1.3 | Review all Accounts Payable data for preparation of Simpletech preference analysis. |
| Park, Yohan | 9/28/2010 | 1.2 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 9/28/2010 | 1.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 9/28/2010 | 1.1 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 9/28/2010 | 1.0 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/28/2010 | 0.9 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/28/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 9/28/2010 | 0.8 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 9/28/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/28/2010 | 0.7 | Run query to generate data file. |
| Byrnes, Kevin | 9/28/2010 | 0.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/28/2010 | 0.6 | Insert data into final preference table. |
| Park, Yohan | 9/28/2010 | 0.6 | Run query to generate data file. |
| Park, Yohan | 9/28/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 9/28/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 9/28/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 9/28/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/28/2010 | 0.4 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/28/2010 | 0.2 | Insert data into final preference table. |
| Robinson, Joshua M. | 9/29/2010 | 1.1 | Pull preference for select vendors based on comments from H. Ferguson(CC). |
| Byrnes, Kevin | 9/29/2010 | 1.2 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 9/29/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 9/29/2010 | 1.0 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 9/29/2010 | 1.0 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/29/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/29/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 9/29/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/29/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 9/29/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 9/29/2010 | 0.7 | Run query to generate data file. |
| Park, Yohan | 9/29/2010 | 0.7 | Insert data into final preference table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 9/29/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 9/29/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 9/29/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 9/29/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 9/29/2010 | 0.5 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 9/29/2010 | 0.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 9/29/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 9/29/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/29/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/29/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 9/29/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/29/2010 | 0.3 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/29/2010 | 0.3 | Insert data into final preference table. |
| Byrnes, Kevin | 9/29/2010 | 0.3 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 9/29/2010 | 0.2 | Check unpaid invoices data for vendor name. |
| Robinson, Joshua M. | 9/30/2010 | 2.0 | Pull preference for select vendors based on comments from H. Ferguson(CC). |
| Robinson, Joshua M. | 9/30/2010 | 2.0 | Work with L. Nemerov (FTI) regarding questions on preference. |
| Byrnes, Kevin | 9/30/2010 | 1.5 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 9/30/2010 | 1.0 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 9/30/2010 | 1.0 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 9/30/2010 | 1.0 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 9/30/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 9/30/2010 | 0.9 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 9/30/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 9/30/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 9/30/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/30/2010 | 0.7 | Run query to generate data file. |
| Park, Yohan | 9/30/2010 | 0.7 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 9/30/2010 | 0.7 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 9/30/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 9/30/2010 | 0.6 | Insert data into final preference table. |
| Byrnes, Kevin | 9/30/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/30/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 9/30/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 9/30/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 9/30/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 9/30/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Insert data into final preference table. |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 9/30/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Robinson, Joshua M. | 10/1/2010 | 1.3 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Park, Yohan | 10/1/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/1/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/1/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/1/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/1/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/1/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/1/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/1/2010 | 0.7 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/1/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/1/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/1/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/1/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/1/2010 | 0.5 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/1/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/1/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/1/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/1/2010 | 0.5 | Run query to generate data file. |
| Byrnes, Kevin | 10/1/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/1/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/1/2010 | 0.3 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/1/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/1/2010 | 0.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/1/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/1/2010 | 0.2 | Insert data into final preference table. |
| Byrnes, Kevin | 10/1/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/1/2010 | 0.2 | Run query to generate data file. |
| Park, Yohan | 10/2/2010 | 0.3 | Perform analysis and create exhibits for respective vendors. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/2/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/2/2010 | 0.2 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/2/2010 | 0.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/2/2010 | 0.2 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/2/2010 | 0.2 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/2/2010 | 0.2 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/2/2010 | 0.1 | Insert data into final preference table. |
| Park, Yohan | 10/2/2010 | 0.1 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/2/2010 | 0.1 | Run query to generate data file. |
| Park, Yohan | 10/2/2010 | 0.1 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/2/2010 | 0.1 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/2/2010 | 0.1 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Robinson, Joshua M. | 10/4/2010 | 1.3 | Meet with team to review select vendors and answer outstanding questions. |
| Robinson, Joshua M. | 10/4/2010 | 0.7 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Byrnes, Kevin | 10/4/2010 | 1.2 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/4/2010 | 1.0 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/4/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/4/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/4/2010 | 0.7 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/4/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/4/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/4/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/4/2010 | 0.7 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/4/2010 | 0.7 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 8/1/2010 through and including 11/1/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/4/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/4/2010 | 0.6 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/4/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/4/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/4/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/4/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 10/4/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/4/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/4/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/4/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/4/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/4/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/4/2010 | 0.3 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/4/2010 | 0.3 | Insert data into final preference table. |
| Byrnes, Kevin | 10/4/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/4/2010 | 0.2 | Run query to generate data file. |
| Nemerov, Lara | 10/5/2010 | 2.0 | Review preference exhibits for Logitech. |
| Byrnes, Kevin | 10/5/2010 | 1.9 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/5/2010 | 1.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/5/2010 | 1.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/5/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/5/2010 | 1.1 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/5/2010 | 0.9 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/5/2010 | 0.8 | Check historical data for outliers in days between invoice and payment. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/5/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/5/2010 | 0.7 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/5/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/5/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/5/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/5/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/5/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/5/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/5/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/5/2010 | 0.5 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/5/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Park, Yohan | 10/5/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/5/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/5/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/5/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/5/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 10/5/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/5/2010 | 0.5 | Insert data into final preference table. |
| Byrnes, Kevin | 10/5/2010 | 0.3 | Run query to generate data file. |
| Robinson, Joshua M. | 10/6/2010 | 1.2 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Nemerov, Lara | 10/6/2010 | 3.0 | Review preference exhibits for the following vendors: Syntax, weeknight, wonders, toy ax, side, razor, solutions 2 go, Paris business, Logitech. |
| Nemerov, Lara | 10/6/2010 | 3.0 | Review preference exhibits for the following vendors: Syntax, weeknight, wonders, toy ax, side, razor, solutions 2 go, Paris business, Logitech (cont.). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 10/6/2010 | 1.0 | Review preference exhibits for the following vendors: Syntax, weeknight, wonders, toy ax, side, razor, solutions 2 go, Paris business, Logitech (cont.). |
| Byrnes, Kevin | 10/6/2010 | 0.5 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/6/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/6/2010 | 0.3 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/6/2010 | 0.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/6/2010 | 0.3 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/6/2010 | 0.3 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/6/2010 | 0.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/6/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/6/2010 | 0.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/6/2010 | 0.2 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Park, Yohan | 10/6/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/6/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/6/2010 | 0.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/6/2010 | 0.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/6/2010 | 0.2 | Insert data into final preference table. |
| Park, Yohan | 10/6/2010 | 0.2 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/6/2010 | 0.2 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/6/2010 | 0.1 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/6/2010 | 0.1 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/6/2010 | 0.1 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/6/2010 | 0.1 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/6/2010 | 0.1 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/6/2010 | 0.1 | Insert data into final preference table. |
| Park, Yohan | 10/6/2010 | 0.1 | Run query to generate data file. |
| Byrnes, Kevin | 10/6/2010 | 0.1 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/6/2010 | 0.1 | Run query to generate data file. |
| Nemerov, Lara | 10/7/2010 | 3.0 | Review and make modifications to preference analysis for the following vendors: Imation, Sony, Alco, seagate,comcast, wonders industrial. |
| Nemerov, Lara | 10/7/2010 | 1.0 | Review and make modifications to preference analysis for the following vendors: Imation, Sony, Alco, seagate,comcast, wonders industrial (cont.). |
| Byrnes, Kevin | 10/7/2010 | 1.4 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/7/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/7/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/7/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/7/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/7/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/7/2010 | 0.8 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/7/2010 | 0.8 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/7/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/7/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/7/2010 | 0.7 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/7/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/7/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Park, Yohan | 10/7/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/7/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 10/7/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/7/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/7/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/7/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/7/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/7/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/7/2010 | 0.4 | Run query to generate data file. |
| Byrnes, Kevin | 10/7/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/7/2010 | 0.4 | Insert data into final preference table. |
| Byrnes, Kevin | 10/7/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/7/2010 | 0.3 | Check for duplicate invoices and make necessary corrections. |
| Nemerov, Lara | 10/8/2010 | 3.0 | Review preference exhibits for the following vendors: Sony, Toshiba, planet replay. |
| Nemerov, Lara | 10/8/2010 | 1.0 | Review preference exhibits for the following vendors: Sony, Toshiba, planet replay (cont.). |
| Nemerov, Lara | 10/8/2010 | 1.0 | Make claim updates based on recent stipulations on claims docket. |
| Byrnes, Kevin | 10/8/2010 | 1.7 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/8/2010 | 1.4 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/8/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/8/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/8/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/8/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/8/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/8/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/8/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/8/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Park, Yohan | 10/8/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/8/2010 | 0.6 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/8/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/8/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/8/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 10/8/2010 | 0.5 | Run query to generate data file. |
| Byrnes, Kevin | 10/8/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/8/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/8/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/8/2010 | 0.5 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/8/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/8/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/8/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/8/2010 | 0.4 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/8/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/8/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Nemerov, Lara | 10/11/2010 | 3.0 | Review preference exhibits for the following vendors: Ion, Lexmark, IROBOT, Pinnacle, Tocad, Alco, Paramount. |
| Nemerov, Lara | 10/11/2010 | 3.0 | Review preference exhibits for the following vendors: Ion, Lexmark, IROBOT, Pinnacle, Tocad, Alco, Paramount (cont.). |
| Nemerov, Lara | 10/11/2010 | 0.5 | Review preference exhibits for the following vendors: Ion, Lexmark, IROBOT, Pinnacle, Tocad, Alco, Paramount (cont.). |
| Nemerov, Lara | 10/12/2010 | 3.0 | Review preference exhibits for the following vendors: Coca Cola, Gyration, Electro Source, Warner, Hauppauge, Pinnacle. |
| Nemerov, Lara | 10/12/2010 | 3.0 | Review preference exhibits for the following vendors: Lasershield, Interactive Toy, Imation, Toshiba, Warner. |
| Park, Yohan | 10/12/2010 | 1.0 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/12/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/12/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/12/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/12/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/12/2010 | 0.8 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/12/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/12/2010 | 0.7 | Insert data into final preference table. |
| Park, Yohan | 10/12/2010 | 0.7 | Run query to generate data file. |
| Byrnes, Kevin | 10/12/2010 | 0.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/12/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/12/2010 | 0.6 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/12/2010 | 0.6 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/12/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/12/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/12/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/12/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/12/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/12/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/12/2010 | 0.3 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/12/2010 | 0.3 | Insert data into final preference table. |
| Byrnes, Kevin | 10/12/2010 | 0.3 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/12/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/12/2010 | 0.2 | Run query to generate data file. |
| Byrnes, Kevin | 10/12/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/12/2010 | 0.1 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Nemerov, Lara | 10/13/2010 | 3.0 | Revise preference analysis for Panasonic (consignment invoices). |
| Nemerov, Lara | 10/13/2010 | 1.0 | Provide assistance to Y. Park (FTI) for preference analysis. |
| Park, Yohan | 10/13/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/13/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/13/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/13/2010 | 0.8 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/13/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/13/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/13/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/13/2010 | 0.7 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/13/2010 | 0.6 | Run query to generate data file. |
| Park, Yohan | 10/13/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/13/2010 | 0.6 | Insert data into final preference table. |
| Park, Yohan | 10/13/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/13/2010 | 0.6 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/13/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/13/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/13/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/13/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/13/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/13/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/13/2010 | 0.4 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/13/2010 | 0.3 | Run query to generate data file. |
| Byrnes, Kevin | 10/13/2010 | 0.3 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/13/2010 | 0.3 | Insert data into final preference table. |
| Byrnes, Kevin | 10/13/2010 | 0.2 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/13/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/13/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Nemerov, Lara | 10/14/2010 | 3.0 | Review preference exhibits for the following vendors: Zoo Games, Polk, Atlantic, Disney. |
| Nemerov, Lara | 10/14/2010 | 2.0 | Prepare Hunton Williams preference analysis. |
| Nemerov, Lara | 10/14/2010 | 2.0 | Revise preference analysis for USHE. |
| Nemerov, Lara | 10/14/2010 | 2.0 | Continue to review preference exhibits for the following vendors: Zoo Games, Polk, Atlantic, Disney. |
| Byrnes, Kevin | 10/14/2010 | 1.6 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/14/2010 | 1.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/14/2010 | 0.8 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/14/2010 | 0.7 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/14/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/14/2010 | 0.7 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/14/2010 | 0.7 | Insert data into final preference table. |
| Byrnes, Kevin | 10/14/2010 | 0.7 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/14/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/14/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/14/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/14/2010 | 0.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/14/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/14/2010 | 0.6 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/14/2010 | 0.5 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/14/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/14/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/14/2010 | 0.5 | Run query to generate data file. |
| Byrnes, Kevin | 10/14/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/14/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/14/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Park, Yohan | 10/14/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/14/2010 | 0.4 | Run query to generate data file. |
| Byrnes, Kevin | 10/14/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Park, Yohan | 10/14/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/14/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Nemerov, Lara | 10/15/2010 | 2.0 | Perform various cleanup analyses on several vendors for purposes of preference analysis. |
| Park, Yohan | 10/15/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/15/2010 | 0.6 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/15/2010 | 0.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/15/2010 | 0.5 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/15/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/15/2010 | 0.5 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/15/2010 | 0.5 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/15/2010 | 0.4 | Run query to generate data file. |
| Park, Yohan | 10/15/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/15/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/15/2010 | 0.4 | Insert data into final preference table. |
| Park, Yohan | 10/15/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/15/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Nemerov, Lara | 10/18/2010 | 3.0 | Review preference exhibits for the following vendors: Allsop, Bassett, Bissell, Case Logic, CE Interactive, Cosmi, CT Global, Cyberpower, Dennco, Dura Micro, Dynamic Control, Kodak, Emusic, Etoys, Franklin electronic, Griffin, DSI. |

**Circuit City Stores, Inc.**

**FTI Consulting, Inc.**

**Exhibit C - Complete Accounting of Time Expended by Day by Professional**

**For the Period 8/1/2010 through and including 11/1/2010**

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Nemerov, Lara | 10/18/2010 | 3.0 | Continue to review preference exhibits for the following vendors: Allsop, Bassett, Bissell, Case Logic, CE Interactive, Cosmi, CT Global, Cyberpower, Dennco, Dura Micro, Dynamic Control, Kodak, Emusic, Etoys, Franklin electronic, Griffin, DSI. |
| Nemerov, Lara | 10/18/2010 | 2.0 | Continue to review preference exhibits for the following vendors: Allsop, Bassett, Bissell, Case Logic, CE Interactive, Cosmi, CT Global, Cyberpower, Dennco, Dura Micro, Dynamic Control, Kodak, Emusic, Etoys, Franklin electronic, Griffin, DSI. |
| Nemerov, Lara | 10/18/2010 | 1.0 | Provide assistance to Y. Park (FTI) for USHE preference analysis. |
| Park, Yohan | 10/18/2010 | 1.1 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/18/2010 | 0.9 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/18/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/18/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/18/2010 | 0.8 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/18/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/18/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/18/2010 | 0.6 | Run query to generate data file. |
| Park, Yohan | 10/18/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/18/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/18/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/18/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/18/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Nemerov, Lara | 10/19/2010 | 3.0 | Review preference exhibits for the following vendors: Virgin Mobile, DXG, First Capital, Heritage, Imperial, Intec, kais, Midway, Motion Systems. |
| Nemerov, Lara | 10/19/2010 | 2.0 | Compile file of needed check clear dates and send to M. Smithson (CC). |
| Nemerov, Lara | 10/19/2010 | 1.5 | Revise Sony preference analysis. |
| Nemerov, Lara | 10/19/2010 | 1.0 | Provide A. Cain (PSZJ) Hunton Williams historical data. |
| Nemerov, Lara | 10/19/2010 | 0.5 | Review preference exhibits for the following vendors: Starlight, US Robotics, Horizon. |
| Park, Yohan | 10/19/2010 | 1.4 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/19/2010 | 1.0 | Check for duplicate invoices and make necessary corrections. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/19/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/19/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/19/2010 | 0.9 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/19/2010 | 0.9 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/19/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/19/2010 | 0.7 | Insert data into final preference table. |
| Park, Yohan | 10/19/2010 | 0.7 | Run query to generate data file. |
| Park, Yohan | 10/19/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/19/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/19/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/19/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Nemerov, Lara | 10/20/2010 | 3.0 | Review preference exhibits for the following vendors: Mio, Mobile Edge, Owlink, Portable USA, Premier Mounts, RDS Industries, Sherwood. |
| Nemerov, Lara | 10/20/2010 | 2.0 | Manually assign new value amounts for each invoice for all Corporate Express vendor IDs. |
| Nemerov, Lara | 10/20/2010 | 2.0 | Review preference exhibits for the following vendors: Southern Audio, Ubi Soft, Klaussner, Stampede, P3, Slash Support. |
| Nemerov, Lara | 10/20/2010 | 1.0 | Review preference exhibits for the following vendors: Koch, Laurier, I Touchless, Venetian, Masterbuilt Manufacturing. |
| Park, Yohan | 10/20/2010 | 1.2 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/20/2010 | 0.9 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/20/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/20/2010 | 0.8 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/20/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/20/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/20/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/20/2010 | 0.7 | Insert data into final preference table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/20/2010 | 0.6 | Run query to generate data file. |
| Park, Yohan | 10/20/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/20/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/20/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/20/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Nemerov, Lara | 10/21/2010 | 3.0 | Review preference exhibits for the following vendors: Majesco, Corporate Express, Philips, JOAG, Tamrac, CT Group. |
| Nemerov, Lara | 10/21/2010 | 3.0 | Review preference exhibits for the following vendors: Teledynamics, US Luggage, Petra, Amcor, BDI Laguna, Bello, Directed Electronics. |
| Nemerov, Lara | 10/21/2010 | 2.0 | Review preference exhibits for the following vendors: DirecTV, Elite Screens, Hamilton Beach, Incomm, Jasco, Konami, Midland. |
| Park, Yohan | 10/21/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/21/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/21/2010 | 0.7 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/21/2010 | 0.7 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/21/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/21/2010 | 0.6 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/21/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/21/2010 | 0.6 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/21/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/21/2010 | 0.5 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/21/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/21/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/21/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/21/2010 | 0.5 | Insert data into final preference table. |

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/21/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/21/2010 | 0.5 | Run query to generate data file. |
| Byrnes, Kevin | 10/21/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/21/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/21/2010 | 0.3 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/21/2010 | 0.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/21/2010 | 0.2 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/21/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/21/2010 | 0.2 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/21/2010 | 0.2 | Insert data into final preference table. |
| Byrnes, Kevin | 10/21/2010 | 0.1 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/21/2010 | 0.1 | Run query to generate data file. |
| Nemerov, Lara | 10/22/2010 | 2.0 | Review preference exhibits for the following vendors: Klipsch, Almo, Ashley Furniture, Buffalo, Bush, Centon, Dreamgear. |
| Nemerov, Lara | 10/22/2010 | 2.0 | Review preference exhibits for the following vendors: MTX, Nyco, Altec, Datel, Duracell, Eagle Industries, Fonegear, Mizco, SVG. |
| Park, Yohan | 10/22/2010 | 0.7 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/22/2010 | 0.5 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/22/2010 | 0.5 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/22/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/22/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/22/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/22/2010 | 0.4 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/22/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/22/2010 | 0.3 | Insert data into final preference table. |
| Park, Yohan | 10/22/2010 | 0.3 | Check unpaid invoices data for vendor name. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/22/2010 | 0.3 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/22/2010 | 0.3 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/22/2010 | 0.3 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/22/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/22/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/22/2010 | 0.3 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Park, Yohan | 10/22/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/22/2010 | 0.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/22/2010 | 0.3 | Run query to generate data file. |
| Byrnes, Kevin | 10/22/2010 | 0.2 | Insert data into final preference table. |
| Byrnes, Kevin | 10/22/2010 | 0.2 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/22/2010 | 0.2 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 10/22/2010 | 0.1 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/22/2010 | 0.1 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/22/2010 | 0.1 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/22/2010 | 0.1 | Run query to generate data file. |
| Park, Yohan | 10/23/2010 | 0.5 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/23/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/23/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/23/2010 | 0.4 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/23/2010 | 0.3 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/23/2010 | 0.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/23/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/23/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/23/2010 | 0.3 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/23/2010 | 0.2 | Run query to generate data file. |
| Park, Yohan | 10/23/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/23/2010 | 0.2 | Insert data into final preference table. |
| Park, Yohan | 10/23/2010 | 0.2 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/24/2010 | 0.5 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/24/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/24/2010 | 0.4 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/24/2010 | 0.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/24/2010 | 0.3 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/24/2010 | 0.3 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/24/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/24/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/24/2010 | 0.3 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/24/2010 | 0.2 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/24/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/24/2010 | 0.2 | Insert data into final preference table. |
| Park, Yohan | 10/24/2010 | 0.2 | Run query to generate data file. |
| Nemerov, Lara | 10/25/2010 | 3.0 | Review preference exhibits for the following vendors: Fourstar, Hauppauge, hot an, Ching Wei, Fujikon, Mad Catz, Minwa. |
| Nemerov, Lara | 10/25/2010 | 3.0 | Review preference exhibits for the following vendors: Konami, Newmen, PAQ, Procare, Stephen Gould, Vizio, Yamaha, Pure Digital, Saitek. |
| Nemerov, Lara | 10/25/2010 | 2.0 | Review preference exhibits for the following vendors: Skullcandy, Targus, Texas Instruments, Velocity, vetch, universal remote control. |
| Park, Yohan | 10/25/2010 | 1.9 | Perform analysis and create exhibits for respective vendors. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/25/2010 | 1.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/25/2010 | 1.4 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/25/2010 | 1.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/25/2010 | 1.2 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/25/2010 | 1.1 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/25/2010 | 1.0 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/25/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/25/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/25/2010 | 0.8 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/25/2010 | 0.8 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/25/2010 | 0.8 | Run query to generate data file. |
| Park, Yohan | 10/25/2010 | 0.7 | Insert data into final preference table. |
| Byrnes, Kevin | 10/25/2010 | 0.7 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/25/2010 | 0.7 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/25/2010 | 0.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/25/2010 | 0.6 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/25/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/25/2010 | 0.5 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/25/2010 | 0.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/25/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/25/2010 | 0.4 | Run query to generate data file. |
| Byrnes, Kevin | 10/25/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/25/2010 | 0.4 | Insert data into final preference table. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/25/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/25/2010 | 0.3 | Check unpaid invoices data for vendor name. |
| Nemerov, Lara | 10/26/2010 | 3.0 | Review preference exhibits for the following vendors: Tentronics, AJ Padelford, Advertising.com, AMC, Sanyo, Boston Acoustics, Genius Products. |
| Nemerov, Lara | 10/26/2010 | 3.0 | Review preference exhibits for the following vendors: Griffin, JOAG, In Focus, Sakar, Take Two, Eye-Fi. |
| Nemerov, Lara | 10/26/2010 | 2.0 | Review preference exhibits for the following vendors: D&H, Hong Kong, I Lehroff, New Age, Proview, Simpletech, Ultmost, World Richman. |
| Park, Yohan | 10/26/2010 | 2.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/26/2010 | 2.2 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/26/2010 | 1.9 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Dorfman, Daniel | 10/26/2010 | 1.5 | Review Accounts Payable data for preparation of preference analysis. |
| Park, Yohan | 10/26/2010 | 1.3 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/26/2010 | 1.3 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/26/2010 | 1.3 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/26/2010 | 1.2 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/26/2010 | 1.2 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/26/2010 | 1.1 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/26/2010 | 1.1 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/26/2010 | 0.9 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/26/2010 | 0.9 | Insert data into final preference table. |
| Park, Yohan | 10/26/2010 | 0.8 | Run query to generate data file. |
| Park, Yohan | 10/26/2010 | 0.8 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/26/2010 | 0.8 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/26/2010 | 0.8 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Run query to generate data file. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/26/2010 | 0.7 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Insert data into final preference table. |
| Byrnes, Kevin | 10/26/2010 | 0.7 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/26/2010 | 0.6 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/26/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/26/2010 | 0.5 | Check for duplicate invoices and make necessary corrections. |
| Robinson, Joshua M. | 10/27/2010 | 1.2 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Nemerov, Lara | 10/27/2010 | 3.0 | Review and re-run Sony preference analysis. |
| Nemerov, Lara | 10/27/2010 | 3.0 | Research on Sony preference analysis issues. |
| Nemerov, Lara | 10/27/2010 | 2.0 | Continue to review and re-run Sony preference analysis. |
| Park, Yohan | 10/27/2010 | 1.6 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/27/2010 | 1.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/27/2010 | 1.4 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/27/2010 | 1.4 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/27/2010 | 1.2 | Insert data into final preference table. |
| Park, Yohan | 10/27/2010 | 1.1 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/27/2010 | 1.0 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/27/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/27/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/27/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/27/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/27/2010 | 0.8 | Run query to generate data file. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 10/27/2010 | 0.7 | Run query to generate data file. |
| Byrnes, Kevin | 10/27/2010 | 0.7 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/27/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/27/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/27/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Park, Yohan | 10/27/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/27/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/27/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/27/2010 | 0.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/27/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/27/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/27/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/27/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/27/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Nemerov, Lara | 10/28/2010 | 3.0 | Review preference exhibits for the following vendors: Andrews, B R Fries, beeline, CBS, CDW, Cormark, Discovery Channel, Imagitas. |
| Nemerov, Lara | 10/28/2010 | 3.0 | Review preference exhibits for the following vendors: Nintendo, Energizer, Chase Card, Cyber Power, Performance Card. |
| Nemerov, Lara | 10/28/2010 | 2.0 | Perform Buena Vista unpaid receipt cleanup and rerun preference analysis. |
| Park, Yohan | 10/28/2010 | 1.5 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/28/2010 | 1.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/28/2010 | 1.3 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/28/2010 | 1.3 | Insert data into final preference table. |
| Byrnes, Kevin | 10/28/2010 | 1.1 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/28/2010 | 1.1 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/28/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |

*Circuit City Stores, Inc.*
*FTI Consulting, Inc.*
*Exhibit C - Complete Accounting of Time Expended by Day by Professional*
*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/28/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/28/2010 | 0.9 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/28/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/28/2010 | 0.8 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/28/2010 | 0.8 | Run query to generate data file. |
| Byrnes, Kevin | 10/28/2010 | 0.6 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/28/2010 | 0.6 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/28/2010 | 0.6 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/28/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/28/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/28/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Byrnes, Kevin | 10/28/2010 | 0.5 | Insert data into final preference table. |
| Park, Yohan | 10/28/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/28/2010 | 0.5 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/28/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/28/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 10/28/2010 | 0.4 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/28/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/28/2010 | 0.3 | Run query to generate data file. |
| Robinson, Joshua M. | 10/29/2010 | 1.0 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Byrnes, Kevin | 10/29/2010 | 1.4 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/29/2010 | 1.3 | Perform analysis and create exhibits for respective vendors. |
| Byrnes, Kevin | 10/29/2010 | 1.3 | Format exhibits in excel spreadsheets to ensure consistency. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/29/2010 | 1.1 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/29/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/29/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/29/2010 | 0.9 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/29/2010 | 0.8 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/29/2010 | 0.8 | Insert data into final preference table. |
| Park, Yohan | 10/29/2010 | 0.8 | Format exhibits in excel spreadsheets to ensure consistency. |
| Byrnes, Kevin | 10/29/2010 | 0.8 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/29/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/29/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/29/2010 | 0.6 | Run query to generate data file. |
| Byrnes, Kevin | 10/29/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/29/2010 | 0.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Byrnes, Kevin | 10/29/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/29/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Byrnes, Kevin | 10/29/2010 | 0.5 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/29/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/29/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 10/29/2010 | 0.4 | Insert data into final preference table. |
| Byrnes, Kevin | 10/29/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 10/29/2010 | 0.4 | Run query to generate data file. |
| Byrnes, Kevin | 10/29/2010 | 0.4 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 10/29/2010 | 0.4 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Robinson, Joshua M. | 10/30/2010 | 0.7 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Park, Yohan | 10/30/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/30/2010 | 0.7 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/30/2010 | 0.4 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/30/2010 | 0.4 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/30/2010 | 0.4 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 10/30/2010 | 0.4 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/30/2010 | 0.3 | Insert data into final preference table. |
| Park, Yohan | 10/30/2010 | 0.3 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/30/2010 | 0.3 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/30/2010 | 0.3 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/30/2010 | 0.2 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/30/2010 | 0.2 | Run query to generate data file. |
| Park, Yohan | 10/30/2010 | 0.2 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Robinson, Joshua M. | 10/31/2010 | 0.8 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Robinson, Joshua M. | 10/31/2010 | 0.8 | Review select preference vendors received from Y. Park (FTI) and forward to H. Ferguson (CC) for review. |
| Park, Yohan | 10/31/2010 | 0.9 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 10/31/2010 | 0.8 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 10/31/2010 | 0.7 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 10/31/2010 | 0.7 | Insert data into final preference table. |
| Park, Yohan | 10/31/2010 | 0.7 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 10/31/2010 | 0.7 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 10/31/2010 | 0.6 | Check for duplicate invoices and make necessary corrections. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Park, Yohan | 10/31/2010 | 0.6 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 10/31/2010 | 0.5 | Run query to generate data file. |
| Park, Yohan | 10/31/2010 | 0.5 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 10/31/2010 | 0.5 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 10/31/2010 | 0.4 | Check unpaid invoices data for vendor name. |
| Park, Yohan | 10/31/2010 | 0.4 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 11/1/2010 | 1.6 | Perform analysis and create exhibits for respective vendors. |
| Park, Yohan | 11/1/2010 | 1.5 | Validate payment dates in preference and accounts payable records. (Update accordingly). |
| Park, Yohan | 11/1/2010 | 1.3 | Insert data into final preference table. |
| Park, Yohan | 11/1/2010 | 1.1 | Format exhibits in excel spreadsheets to ensure consistency. |
| Park, Yohan | 11/1/2010 | 0.9 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Park, Yohan | 11/1/2010 | 0.9 | Check historical data for outliers in days between invoice and payment. |
| Park, Yohan | 11/1/2010 | 0.8 | Cross check terms within previous preference table with accounts payable records. (Update accordingly). |
| Park, Yohan | 11/1/2010 | 0.8 | Run query to generate data file. |
| Park, Yohan | 11/1/2010 | 0.8 | Check for duplicate invoices and make necessary corrections. |
| Park, Yohan | 11/1/2010 | 0.6 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 11/1/2010 | 0.6 | Search accounts payable data for respective vendors and cross check with H. Ferguson's (CC) consolidation table. |
| Park, Yohan | 11/1/2010 | 0.6 | Compare unpaid invoices and receipts from the previous preference data and unpaid invoices table. |
| Park, Yohan | 11/1/2010 | 0.5 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Calculate new straight averages and standard deviations from accounts payable data. (Update accordingly). |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Check unpaid invoices data for vendor name. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Insert data into final preference table. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Format exhibits in excel spreadsheets to ensure consistency. |

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit C - Complete Accounting of Time Expended by Day by Professional*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Hours | Description of Activity |
|---|---|---|---|
| **Preference Analysis** | | | |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Search accounts payable data for respective vendors and cross check with H. Ferguson's consolidation table. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Confirm parent vendor ID in previous preference data in comparison to H. Ferguson's consolidation table. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Cross check terms within previous preference table with accounts payable records (Update accordingly). |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Check for duplicate invoices and make necessary corrections. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Check historical data for outliers in days between invoice and payment. |
| Byrnes, Kevin | 11/1/2010 | 0.1 | Validate payment dates in preference and accounts payable records (Update accordingly). |
| **Subtotal - Preference Analysis** | | **655.7** | |
| | | | |
| **Travel** | | | |
| Regan, Kevin | 8/8/2010 | 2.0 | Travel from New York to Richmond (50% of actual time incurred). |
| Regan, Kevin | 8/9/2010 | 2.0 | Travel from Richmond to New York (50% of actual time incurred). |
| Cashman, Brian | 9/7/2010 | 2.0 | Travel from Boston to Richmond (50% of actual time incurred). |
| Cashman, Brian | 9/8/2010 | 2.0 | Travel from Richmond to Boston (50% of actual time incurred). |
| **Subtotal - Travel** | | **8.0** | |
| | | | |
| *Total* | | **858.6** | |

EXHIBIT D


CIRCUIT CITY STORES, INC., , et al.,


DETAIL OF ACTUAL AND NECESSARY EXPENSES INCURRED BY EXPENSE CATEGORY

*Circuit City Stores, Inc.*

*FTI Consulting, Inc.*

*Exhibit D - Detail of Actual and Necessary Expenses Incurred by Expense Category*

*For the Period 8/1/2010 through and including 11/1/2010*

| Professional | Date | Amount | Narrative |
|---|---|---|---|
| **Business Meals** | | | |
| Regan, Kevin | 8/9/2010 | $25.00 | Dinner for K. Regan (FTI). |
| **Subtotal - Business Meals** | | **$25.00** | |
| **Lodging** | | | |
| Regan, Kevin | 8/13/2010 | $178.54 | Hotel in Richmond for one night. |
| Cashman, Brian | 9/8/2010 | $157.07 | Hotel in Richmond for one night. |
| **Subtotal - Lodging** | | **$335.61** | |
| **Transportation** | | | |
| Regan, Kevin | 8/8/2010 | $17.50 | Mileage from home to airport. |
| Regan, Kevin | 8/8/2010 | $34.00 | Taxi airport to hotel. |
| Regan, Kevin | 8/8/2010 | $54.00 | Parking at airport. |
| Regan, Kevin | 8/9/2010 | $34.00 | Taxi hotel to airport. |
| Regan, Kevin | 8/13/2010 | $745.40 | Roundtrip airfare New York, NY to Richmond, VA. |
| Cashman, Brian | 9/7/2010 | $198.50 | One-way airfare Richmond, VA to Boston, MA . |
| Cashman, Brian | 9/8/2010 | $63.35 | Car rental for one day. |
| Cashman, Brian | 9/8/2010 | $270.90 | One-way airfare Boston, MA to Richmond, VA. |
| **Subtotal - Transportation** | | **$1,417.65** | |
| **Total** | | **$1,778.26** | |

EXHIBIT E


CIRCUIT CITY STORES, INC., et al.,


COPY OF THE RETENTION ORDER AUTHORIZING EMPLOYMENT OF THE

APPLICANT

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :    Jointly Administered
            Debtors.            :    **Hrg. Date: December 5, 2008**
                                :    **at 10:00 a.m. (ET)**
                                :    **Obj. Due: December 3, 2008 at**
                                :    **4:00 p.m. (ET)**
- - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ORDER UNDER BANKRUPTCY CODE
SECTIONS 105(a), 327(a), 328 AND 1107 AND BANKRUPTCY
RULE 2014(a), AUTHORIZING THE EMPLOYMENT AND RETENTION
OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE
DEBTORS EFFECTIVE AS OF THE PETITION DATE**

        The debtors and debtors in possession in the

0835653081118000000000011

above-captioned cases (collectively, the "Debtors"),[1]

seek entry of an order, under sections 105(a), 327(a),

328 and 1107 of title 11 of the United States Code (the

"Bankruptcy Code"), as supplemented by Rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2014-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy

Court for the Eastern District of Virginia (the "Local

Rules"), authorizing the employment and retention of FTI

Consulting, Inc., together with its wholly owned

subsidiaries, agents and independent contractors

(collectively "FTI"), as financial advisors and

consultants for the Debtors effective as of the date of

the filing of these bankruptcy cases, November 10, 2008

---

[1]    The Debtors are the following entities: The Debtors and the
last four digits of their respective taxpayer identification
numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx
Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512).  The address for Circuit City Stores West Coast, Inc.
is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For
all other Debtors, the address is 9950 Mayland Drive,
Richmond, Virginia 23233.

(the "Petition Date").  In support of the Application,

the Debtors rely upon the Affidavit of Robert J. Duffy,

sworn to on November 17, 2008 (the "Duffy Affidavit"), a

copy of which is attached hereto as Exhibit A.  In

further support of this Application, the Debtors

respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Application under 28 U.S.C. §§ 157 and 1334.  This

is a core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Application in this district is

proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105(a),

327(a), 328 and 1107, as supplemented by Bankruptcy Rule

2014 and Local Rule 2014-1.

### BACKGROUND

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy

Code.

4.    The Debtors continue to manage and

operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia (the "United States Trustee") appointed a
statutory committee of unsecured creditors.  To date, no
trustee or examiner has been appointed in these chapter
11 cases.

6.    Based in Richmond, Virginia, Debtors are
a leading specialty retailer of consumer electronics and
operate large nationwide electronics stores throughout
the United States and Puerto Rico that sell, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

7.    Despite significant revenues, the Debtors
have suffered two consecutive years of losses.  While
the Debtors made every effort to improve their financial
performance and implement a global turnaround strategy,
they were ultimately unable to consummate a successful
restructuring outside of bankruptcy.  In large part, the

4

Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8.    Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including closing 154 stores.  In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

### RELIEF REQUESTED

9.    By this Application, the Debtors seek entry of an order, under Bankruptcy Code sections 105(a), 327(a), 328 and 1107 authorizing the employment and retention of FTI as their financial advisors and consultants in these chapter 11 cases, effective as of the Petition Date.

### BASIS FOR RELIEF REQUESTED

10.    FTI commenced its engagement with the Debtors on August 15, 2008 pursuant to an engagement

letter (the "Engagement Letter"), a copy of which is
attached to the Duffy Affidavit as Exhibit 1A.  Pursuant
to the Engagement Letter, the Debtors retained FTI to
provide financial advisory and consulting services.  FTI
and the Debtors executed a revised restructuring
engagement letter on November 5, 2008 (together with the
Engagement Letter, the "Engagement Letters"), a copy of
which is attached to the Duffy Affidavit as Exhibit 1B.
The Debtors and FTI have worked closely with respect to
the matters set forth in both Engagement Letters.  FTI
has assisted the Debtors in the financial aspects of
their restructuring efforts and in the Debtors'
preparation of these bankruptcy cases.

    11.   The Debtors are familiar with the
professional standing and reputation of FTI.  Indeed,
the consideration of this professional standing and
reputation was a critical element in the Debtors'
decision to enter into the Engagement Letters between
the Debtors and FTI.  Among other things, the Debtors
understand that FTI has a wealth of experience in
providing financial advisory and consulting services in
restructurings and reorganizations and enjoys an

6

excellent reputation for services it has rendered in
large and complex chapter 11 cases on behalf of debtors
and creditors throughout the United States.

12.  Since the time FTI was first engaged by
the Debtors, FTI has developed a great deal of
institutional knowledge regarding the Debtors'
operations, finance and systems.  The Debtors believe
that this institutional experience and knowledge will be
valuable to the Debtors in their efforts to reorganize.

13.  The Debtors believe that the services of
FTI will be critical to the Debtors' efforts to maximize
the value of their estates and to reorganize
successfully.  Further, the Debtors believe that FTI is
well qualified and able to represent the Debtors in a
cost-effective, efficient and timely manner.

14.  Accordingly, the Debtors wish to retain
FTI to provide assistance during these bankruptcy cases
pursuant to the terms of the Engagement Letters.

**SCOPE OF SERVICES**

15.  Pursuant to the terms of the Engagement
Letters, FTI has provided, is providing and will
continue to provide such consulting and advisory

7

services[2] as FTI and the Debtors deem appropriate and

feasible in order to advise the Debtors in the course of

these chapter 11 cases.  Specifically, FTI will render

various services to the Debtors including, but not

limited to, the following:

### Store Footprint Analysis

- Analyze liquidity and earnings impact of potential store closures.
- Provide assistance with contract terms for disposition of leases.
- Develop informational materials to support store closing processes.
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.
- Prepare information package for landlord conference calls and participate in lease termination discussions.
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

### Liquidity Forecasting

- Evaluate current liquidity position and expected future cash flows.
- Assist with management and control of cash disbursements.

---

[2]    Capitalized terms not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Engagement Letters.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections.
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.
- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.
- Assist with working capital management and liquidity forecasting.
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.
- Assist management with development of employee retention and communications programs.
- Assist management in developing strategy relating to merchandise and other vendors.
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture

9

fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.

- Prepare "bid packages" for Liquidators and manage selection process.
- Solicit potential inventory Liquidators for going-out-of-business sale process.
- Assist the Company in the negotiation of an Agency agreement.
- Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.
- Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.

- Assist with data collection and information gathering related to third party due diligence.
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.
- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.
- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing.

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

**FTI'S DISINTERESTEDNESS**

16.  FTI has informed the Debtors that, except as may be set forth in the Duffy Affidavit, it (i) has no connection with the Debtors, its creditors or other parties in interest in this case; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Bankruptcy Code section 101(14).

17.  FTI has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts, connections or relationships are discovered or arise, FTI will supplement its disclosure to the Court.

18.  FTI has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

19.  The Debtors believe that FTI is not owed any amounts with respect to its prepetition fees and expenses.

### TERMS OF RETENTION

20.   The Debtors understand that FTI intends
to apply to the Court for allowances of compensation and
reimbursement of expenses for financial advisory and
consultants support services in accordance with the
applicable provisions of the Bankruptcy Code, the
Bankruptcy Rules, corresponding Local Rules, orders of
this Court and guidelines established by the United
States Trustee.   The customary hourly rates, subject to
periodic adjustments, charged by FTI's professionals
anticipated to be assigned to this case are as follows:

**Standard Hourly Rates**

| | |
|---|---|
| Senior Managing Directors | $650 - $715 |
| Directors/Managing Directors | $475 - $620 |
| Consultants/Senior Consultants | $235 - $415 |
| Administrative/Paraprofessionals | $95  - $190 |

**Completion Fee**

21.   The Company, in its sole and absolute
discretion, may pay FTI (i) a fee (a "Completion Fee")
in the event a restructuring or sale transaction is
consummated to the satisfaction of the Company and (ii)
a fee (a "Financing Fee") in the event additional
financing is obtained.   The Completion Fee may be paid

to FTI under the following scenarios:

- In the event the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.

- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

The Financing Fee may be paid to FTI under the following

scenarios:

**Financing Fee**

   **Second Lien Financing**

- A total Financing Fee of 1.0% of the commitment of second lien DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

   **Senior Loan Financing**

- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a financing fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.
- A total financing fee of 0.25% of the commitment of senior DIP financing will be earned by FTI.  Such fees will be earned and paid upon interim court approval or closing of such financing.

14

22.  FTI has requested that it be engaged
under a general retainer.  The Debtors believe that FTI
should be employed under a general retainer because of
the variety and complexity of the services that will be
required during these proceedings.

23.  FTI has received from the Debtors total
"on account" cash in the amount of $750,000 (the "On-
Account Cash"), which was increased from $550,000 on
November 5, 2008.  Attached as Exhibit 4 to the Duffy
Affidavit is a list of the invoices sent by FTI and the
payments made by the Company.  As set forth on such
Exhibit 4, since commencing the engagement, FTI has
invoiced the Company in the aggregate amount of
$3,228,924, which amount reflects $2,336,490 billed to
the Company for professional services, $142,434 for out
of pocket expense reimbursement and the $750,000 held as
On-Account Cash.  As also shown on Exhibit 4, prior to
the Petition Date, FTI applied $0 of its initial
$750,000 cash on account for estimated fees and
expenses.

24.  FTI has informed the Debtors that as
promptly as practicable after all fees and charges

15

accrued prior to the Petition Date have been finally
posted within FTI's computerized billing system, FTI
will issue a final billing statement to the Company for
the actual fees, charges, and disbursements incurred for
the period prior to the Petition Date (the "Final
Prepetition Bill Amount").  Pursuant to the Engagement
Letters, and subject to any orders of the Court, FTI
will deduct the Final Prepetition Bill Amount from the
On-Account Cash.  To the extent that the Final
Prepetition Bill Amount is less than the On-Account
Cash, FTI has indicated that it will hold the full
amount of the difference as a post-petition retainer to
be applied against any amounts approved by the Court in
connection with FTI's final fee application.  In the
event that the Final Prepetition Bill Amount exceeds the
On-Account Cash, FTI has agreed to waive any claim
against the Debtors for payment with respect to the
amount by which the Final Prepetition Bill Amount
exceeds the On-Account Cash.  FTI has further informed
the Debtors that the On-Account Cash will not be
segregated by FTI in a separate account.

**NOTICE**

25.   Notice of this Application has been
provided to those parties entitled to notice under this
Court's Order Pursuant to Bankruptcy Code Sections 102
and 105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(D.I. 136).  The Debtors submit that, under the
circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

26.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Application and all applicable
authority is set forth in the Application, the Debtors
request that the requirement that all applications be
accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

27.   No previous request for the relief sought
herein has been made to this Court or any other court.

17

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated:     Richmond, Virginia
           November 18, 2008

                    Circuit City Stores, Inc.

                    /s/ Bruce H. Besanko
                    Bruce H. Besanko
                    Executive Vice President and Chief
                    Financial Officer

Dated: November 18, 2008
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

             - and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

             - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

## EXHIBIT A
**Duffy Affidavit**

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

                 - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - x
                          :
In re:                    :    Chapter 11
                          :
CIRCUIT CITY STORES, INC., :   Case No. 08-35653 (KRH)
et al.,                   :
                          :
              Debtors.     :    Jointly Administered
- - - - - - - - - - - - - x


        **AFFIDAVIT IN SUPPORT OF THE DEBTORS' APPLICATION
            FOR AN ORDER AUTHORIZING EMPLOYMENT AND
              RETENTION OF FTI CONSULTING, INC. AS
                FINANCIAL ADVISOR FOR THE DEBTORS**

STATE OF MASSACHUSETTS     )
                           )  ss.
COUNTY OF SUFFOLK          )

     I, Robert J. Duffy, being duly sworn, depose and

say:

1.   I am a Senior Managing Director with FTI

Consulting, Inc. (together with its wholly owned

subsidiaries, agents, independent contractors and

employees, "FTI"), a financial advisory services firm

with offices located at numerous locations around the

world.  I submit this Affidavit on behalf of FTI (the

"Affidavit")and in support of the application (the

"Application") of Circuit City Stores, Inc., the debtors

and debtors in possession in the above-captioned cases

(collectively, the "Debtors"), for an order authorizing

the employment and retention of FTI as Financial

Advisors under the terms and conditions set forth in the

Application. Except as otherwise noted,[1] I have personal

knowledge of the matters set forth herein.

### DISINTERESTEDNESS AND ELIGIBILITY

2.   In connection with the preparation of this

Affidavit, FTI's professionals conducted a review of its

professional contacts with the Debtors, their affiliates,

and other parties in interest that were reasonably known

---

[1]   Certain of the disclosures herein relate to matters within the
personal knowledge of other professionals at FTI and are based
on information from them.

2

to us. Our review, completed under my supervision,
consisted of queries of an internal computer database
containing names of individuals and entities that are
present or recent former clients of FTI in order to
identify potential relationships. FTI's search included
the following types of entities: the Debtors and its
subsidiaries, non-debtor affiliates, the Debtors'
directors and officers, secured lenders, significant
merchandise creditors, significant vendors, significant
real and personal property lessors, significant
shareholders, consignors, third party administrators,
potential liquidators, litigation parties, banks,
attorneys and professionals. A listing of the parties
reviewed is reflected on Exhibit 2 to this Affidavit.  A
summary of such relationships that FTI identified during
this process is set forth on Exhibit 3 to this Affidavit.
If any new relevant facts or relationships are
discovered or arise, FTI will promptly file a Bankruptcy
Rule 2014(a) Supplemental Affidavit.

       3.   FTI has initiated ethical walls relating to
two matters to ensure that FTI's representation of
another party does not have a materially adverse impact

on the Debtors.  First, FTI is currently engaged by

Syntax Brillian and the Debtors are a party to

litigation with Syntax Brillian.  The ethical wall was

established on September 3, 2008.  Second, FTI is

currently engaged by Magellan and Magellan is a

potential creditor of the Debtors.   The ethical wall

was established October 28, 2008.

     4.   From the results of such review, we were not

made aware of any conflicts of interest or additional

relationships that we believe would preclude us from

performing our services.  No FTI personnel working on

this engagement performed any services for either Syntax

Brillian or Magellan following the date of execution of

the ethical wall agreements.  FTI personnel working

under my direction have been subject to ethical walls to

avoid any leakage of information or engagement-related

communications with FTI personnel assigned to assist

Syntax Brillian or Magellan.  These ethical walls remain

in effect as of the date of this Affidavit.  As part of

the ethical wall, FTI has instituted information

blocking systems to prevent the exchange of information

regarding the Debtors between the groups involved within FTI.

5.    Financial Dynamics ("FD"), a division of FTI, is employed by the Debtors to provide communications services.  FD is not a creditor and these services are being provided in the ordinary course of business.

6.    Otherwise, based on the results of its review of parties-in-interest associated with the Debtors, FTI does not have a relationship with any of the parties on the Exhibit 2 in matters related to these proceedings. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Exhibit 3. FTI's assistance to these parties has been related to providing various financial, restructuring, litigation support and/or engineering and scientific investigation consulting services.  To the best of my knowledge, no services have been provided to the parties-in-interest which involve their rights in the Debtors' cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

7.   Further, as part of its diverse practice, FTI
appears in numerous cases, proceedings and transactions
that involve many different professionals, including
attorneys, accountants and financial consultants, who
may represent claimants and parties-in-interest in the
Debtors' chapter 11 cases.  Also, FTI has performed in
the past, and may perform in the future, advisory
consulting services for various attorneys and law firms,
and has been represented by several attorneys and law
firms, some of whom may be involved in these proceedings.
In addition, FTI has in the past, may currently and will
likely in the future be working with or against other
professionals involved in these cases in matters
unrelated to the Debtors and these cases. Based on our
current knowledge of the professionals involved, and to
the best of my knowledge, none of these relationships
create interests materially adverse to the Debtors in
matters upon which FTI is to be employed, and none are
in connection with these cases.

8.   FTI does not believe it is a "Creditor" of any
of the Debtors within the meaning of Bankruptcy Code
section 101(10).  Further, neither I nor any other FTI

6

partner or principal, to the best of my knowledge, is a
holder of any shares of the Debtors' stock.

9.    Based on the results of the relationship
search conducted to date as described above, FTI has no
known significant connection to the above-captioned
Debtors, their creditors, equity security holders, other
parties-in-interest (as reasonably known to us) or their
respective attorneys, except as disclosed or otherwise
described herein.  Further, to the best of my knowledge,
no one involved in this case or in FTI's practice
generally has any connection to the U.S. Trustee or any
person employed in the Office of the U.S. Trustee in
this District.

10.    As such, to the best of my knowledge, FTI is a
"disinterested person" as that term is defined in
Bankruptcy Code section 101(14), as modified by
Bankruptcy Code section 1107(b), in that FTI

(1)    is not a creditor, equity security
       holder or insider of the Debtors;

(2)    is not and was not within 2 years
       before the date of the filing of the
       petition, a director, officer, or
       employee of the Debtors.

7

In addition, to the best of my knowledge and based upon
the results of the relationship search described above,
FTI neither holds nor represents an interest adverse to
the Debtors within the meaning of Bankruptcy Code
section 327(a).

11.   It is FTI's policy and intent to update and
expand its ongoing relationship search for additional
parties in interest.   If any new relevant facts or
relationships are discovered or arise, FTI will promptly
file a Bankruptcy Rule 2014(a) Supplemental Affidavit.

## PROFESSIONAL COMPENSATION

12.   Subject to Court approval and in accordance
with the applicable provisions of the Bankruptcy Code,
the Federal Rules of Bankruptcy Procedure, applicable
U.S. Trustee guidelines and the local rules of this
District, FTI will seek payment for compensation on an
hourly basis for the financial and other consulting
services outlined in the application, and reimbursement
of actual and necessary expenses incurred by FTI.   FTI's
customary hourly rates as charged to both bankruptcy and
non-bankruptcy matters of this type by the professionals
assigned to this engagement are outlined in the

Application for the employment of FTI. These hourly rates are adjusted annually.

13. Further, according to FTI's books and records, during the ninety days prior to the Debtors' petition date, FTI received $3,228,924 as set forth on Exhibit 4, which amount reflects $2,336,490 billed to the Company for professional services, $142,434 for out of pocket expense reimbursement and the $750,000 held as On-Account Cash.

14. No commitments have been made or received by FTI, nor any partner or employee associate thereof, as to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.

FURTHER AFFIANT SAYETH NOT.

/s/ Robert J. Dufffy
Robert J. Duffy

9

Subscribed and sworn to
before me this 14th day of
November 2008.


/s/ Sandra M. Raabe
Notary Public # 7045899

## Exhibit 1A & 1B
**FTI Engagement Letters**



FTI Consulting
125 High Street
Suite 1402
Boston, MA 02110
617.897.1500 telephone
617.897.1510 facsimile
www.fticonsulting.com

<u>PRIVATE & CONFIDENTIAL</u>

August 15, 2008

Phil Schoonover
Chairman, President, CEO
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

Re: <u>Retention of FTI Consulting, Inc.</u>

Dear Mr. Schoonover:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at the direction of the Executive Committee of the Company's Board of Directors (the "Executive Committee") and its management, are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning and analysis of an "out of court" restructuring that is intended to maximize shareholder value and minimize disruption to the Company's operations.

**Phase I Scope:**

<u>Store Footprint Analysis</u>
- Evaluate performance of individual stores by format and region
- Analyze four wall profitability of each store
- Analyze allocated expenses such as advertising, field operations and distribution costs
- Review fixed/variable nature of non four wall costs to assess impact of potential store closings

Circuit City Stores, Inc.
August 15, 2008

- Analyze liquidity and earnings impact of store closures
  - Evaluate likely range of lease buyout costs based on situation
  - Assess impact of store closing sales on a cash and GAAP basis
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing process
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Liquidity Forecasting
- Evaluate the Company's current weekly forecasting models
  - Assess functionality of the model and suggest/develop enhancements
  - Create flexible model to evaluate impact on liquidity of critical assumptions
- Validate assumptions included in forecast including, without limitation:
  - Comparable store sales and margin
  - Inventory levels and trade credit support
  - Store closing impact including inventory liquidation and lease termination costs
  - Other issues as identified by the Executive Committee, management or FTI

Additional Phase I Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Coordination of and participation in a "kick-off" meeting and subsequent in-person meetings at the Company's headquarters on such date as the Company determines
- Provide an initial timeline and staffing requirements within five business days of the execution date of this letter
- Provide an initial report, recommendations and a proposed work plan (including a proposed timeline and staffing requirements) on or before September 8, 2008
- Develop and present FTI's Phase I analysis and subsequent recommendations at a meeting of the Executive Committee currently scheduled for the week of September 15, 2008
- Provide other services as requested by management or the Executive Committee
- The parties agree that Phase I will be concluded in approximately 3 - 4 weeks unless the Company, in its sole discretion agrees to an alternative schedule

**Phase II Scope:**

Business/Out-of-Court Restructuring Plan
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting

-2-

Circuit City Stores, Inc.
August 15, 2008

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring

Additional Phase II Services
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management or the Executive Committee.

Financing Services
- The Services set forth in this Engagement Contract do not include financing or capital raising activities. In the event the Company requests that FTI perform such activities, the parties agree to execute an addendum to this Engagement Contract that describes such additional services and any related fees.

Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the Executive Committee. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other parties, including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code"),* are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a

Circuit City Stores, Inc.
August 15, 2008

general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|                                    | Per Hour        |
| ---------------------------------- | --------------- |
| Senior Managing Directors          | $650 - $715     |
| Directors / Managing Directors     | $475 - $620     |
| Consultants/Senior Consultants     | $235 - $415     |
| Administrative / Paraprofessionals | $95 - $190      |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Executive Committee, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.
- In the event the Company files for bankruptcy protection and the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

Circuit City Stores, Inc.
August 15, 2008

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on your behalf during this Engagement provided that FTI shall present to the Company invoices and other supporting detail that may be reasonably requested by the Company. Direct expenses are reasonable and customary out-of-pocket expenses which are billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other out-of-pocket expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of outside counsel) with respect thereto as provided herein.

**Cash on Account:**

Initially, the Company will forward to us the amount of $100,000, which funds will be held "on account" to be applied to our professional fees, expenses and disbursements for the Engagement (as replenished or supplemented from time to time, the "Initial Cash on Account"). To the extent that this amount exceeds our fees, expenses and disbursements upon the completion or termination of the Engagement, we will immediately refund to the Company any portion of the Initial Cash on Account and the Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and expenses and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

-5-

Circuit City Stores, Inc.
August 15, 2008

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.    **Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

Circuit City Stores, Inc.
August 15, 2008

**5.    Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

**6.    Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
August 15, 2008

Yours faithfully,

FTI CONSULTING, INC.

By
Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
August 15, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____

       Phil Schoonover
       Chairman, President, CEO

Date: August 27, 2008

-9-

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Circuit City Stores, Inc. dated August 15, 2008 (the "Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.     Reports and Advice**

1.1     **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party (other than to your attorneys, investment bankers, financial advisors, auditors and other representatives), or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.     Information and Assistance**

2.1     **Provision of information and assistance**—Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     **No assurance on financial data**—While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information**—In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.   Additional Services**

3.1   **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2   **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

**4.   Confidentiality**

4.1   **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

    4.1.2   is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.3   is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

    4.1.4   is or has been independently developed by the recipient.

4.2   **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3   **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4   **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5   **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.   Termination**

5.1   **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2     **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3     **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.  **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1     **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2     **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3     **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4     **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5     **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7.   **Independent Contractors** — The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**


**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By: _____
Phil Schoonover
Chairman, President, CEO

Date: _____Avust 27, 2008_____

FTI

PRIVATE & CONFIDENTIAL

November 05, 2008

Bruce H. Besanko
Chief Financial Officer
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA, 23233

     Re: Retention of FTI Consulting, Inc.

Dear Mr. Besanko:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI", "we" or "us"), have been retained by you, Circuit City Stores, Inc. (the "Company" or "you"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement" or "Engagement Letter") and the Standard Terms and Conditions attached hereto (the terms of which are incorporated herein by reference) constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at the direction of the Company and are expected to include the following:

**Objective:**

To assist the Company, in a cost effective manner, in the planning, analysis of and execution of a restructuring that is intended to maximize value for all constituents and minimize disruption to the Company's operations.

**Store Footprint Analysis**
- Analyze liquidity and earnings impact of potential store closures
- Provide assistance with contract terms for disposition of leases
- Develop informational materials to support store closing processes
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition
- Prepare information package for landlord conference calls and participate in lease termination discussions
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations

Circuit City Stores, Inc.
November 5, 2008

**Liquidity Forecasting**
- Evaluate current liquidity position and expected future cash flows
- Assist with management and control of cash disbursements
- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives
- Analyze long term capital need to effectuate potential out-of-court restructuring and capital structure alternatives
- Assist with working capital management and liquidity forecasting
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring
- Assist management with development of employee retention and communications programs
- Assist management in developing strategy relating to merchandise and other vendors
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction
  - Prepare "bid packages" for Liquidators and manage selection process
  - Solicit potential inventory Liquidators for going-out-of-business sale process
  - Assist the Company in the negotiation of an Agency agreement
  - Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business
  - Solicit bids from real estate consulting firms to evaluate lease mitigation strategies
- Assist with data collection and information gathering related to third party due diligence
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units

Circuit City Stores, Inc.
November 5, 2008

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee
- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.


Robert J. Duffy and Stephen L. Coulombe shall have primary and ongoing responsibility for all Services provided pursuant to this Engagement. Except as otherwise provided herein, the Services may be performed by FTI or by any subsidiary of FTI as FTI shall determine and FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as provided herein, are subject to change as mutually agreed by the Company and FTI.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and the board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders, creditors or other parties.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiations with the Company's shareholders, creditors or other-parties,

Circuit City Stores, Inc.
November 5, 2008

including with respect to a potential out-of-court restructuring. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code, *11 U.S.C. § 101–1532 (the "Bankruptcy Code")*, are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors-in-possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The *Services* we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of *Engagement* that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our *Engagement*.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees, Expenses and Cash on Account**

**Standard Hourly Rates:**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates applicable in the United States, summarized as follows:

|                                         | Per Hour      |
| --------------------------------------- | ------------- |
| Senior Managing Directors               | $650 - $715   |
| Directors / Managing Directors          | $475 - $620   |
| Consultants/Senior Consultants          | $235 - $415   |
| Administrative / Paraprofessionals      | $95 - $190    |

Hourly rates are generally revised periodically; provided that FTI shall provide the Company with at least 10 days' prior written notice of any rate adjustments (and the amount of any such rate adjustments). To the extent this Engagement requires services of our International divisions or personnel, the time incurred providing the Services will be multiplied by our standard hourly rates applicable on International engagements which rates shall be provided to the Company in writing, prior to the assignment of such divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

**Completion Fee**

The Company, in its sole and absolute discretion, may pay FTI a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company. The Completion Fee may be paid to FTI under various scenarios as follows:

- In the event a restructuring or sale transaction is completed and the Company does not file for bankruptcy protection, a Completion Fee of up to $5 million.

Circuit City Stores, Inc.
November 5, 2008

- In the event the Company files for bankruptcy protection and the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.
- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

**Financing Fee**

Second Lien Financing
- A total fee of 1.0% of the commitment of second lien financing will be earned by FTI whether outside of a chapter 11 proceeding or as part of a DIP financing. Such fees will be earned and paid upon interim court approval or closing of such financing.

Senior Loan Financing
- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.

**Expenses:**

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on your behalf during this Engagement provided that FTI shall present to the Company invoices and other supporting detail that may be reasonably requested by the Company. Direct expenses are reasonable and customary out-of-pocket expenses which are billed directly to the Engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other out-of-pocket expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the Engagement, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of outside counsel) with respect thereto as provided herein.

**Cash on Account:**

The Company will forward to us at total amount of $750,000, which funds will be held "on account" to be applied to our professional fees, expenses and disbursements for the Engagement (as replenished or supplemented from time to time, the "Cash on Account"). FTI acknowledges that it is holding $200,000 Initial Cash on Account relating to its engagement letter with the Company dated August 15, 2008. To the extent that this amount exceeds our fees, expenses and disbursements upon the completion or termination of the Engagement, we will immediately refund to the Company any portion of the Initial Cash on Account and the Additional Cash on Account (as defined herein) in excess of all fees and expenses due FTI. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, expenses and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and expenses and disbursements incurred on the basis discussed above, and in certain

-5-

Circuit City Stores, Inc.
November 5, 2008

circumstances, an invoice may be for estimated fees, expenses and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. After 2 business days following transmittal of the invoice, we may draw upon the Initial Cash on Account in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account at any time subject to (and without prejudice to) the Company's opportunity to review and dispute our invoices, fees, expenses or disbursements.

Neither party shall actively solicit for employment or hire any employee of the other party during the term of this Engagement and for a period of one (1) year following the date of termination or completion of this engagement without the prior written consent of the other party.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of fees and reimbursement of expenses on an interim basis during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, expenses and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, expenses and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, expenses and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, expenses and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, expenses and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. The Company understands that while the arrangement in this paragraph

-6-

Circuit City Stores, Inc.
November 5, 2008

may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. It is agreed and understood that the unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

**4.      Terms and Conditions**

The Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

**5.      Conflicts of Interest**

Based on the list of potentially interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and Bank of America, N.A., the administrative agent for the Company's existing credit facility (the "Administrative Agent"). As you may be aware, FTI is regularly retained by the Administrative Agent and/or other members of your credit facility (or law firms retained by the administrative agent or members of your credit facility). However, such representations are in matters unrelated to this Engagement.

FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in a potential Chapter 11 case. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in a potential Chapter 11 in matters unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Company in matters upon which FTI is to be employed, and none are in connection with these cases.

FTI has initiated ethical walls relating to two matters to ensure that FTI's representation of another party does not have a materially adverse impact on the Company. First, FTI is currently engaged by Syntax Brillian and Circuit City is a party to litigation with Syntax Brillian. Second, FTI is currently engaged by Magellan and Magellan is a potential creditor of the Company in any Chapter 11 case.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

Circuit City Stores, Inc.
November 5, 2008

**6.      Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the Standard Terms and Conditions, please do not hesitate to contact Robert J. Duffy at 617-897-1501.

Circuit City Stores, Inc.
November 5, 2008

Yours faithfully,

FTI CONSULTING, INC.

By:     _____

Robert J. Duffy
Senior Managing Director

Attachment – As stated

Circuit City Stores, Inc.
November 5, 2008

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and upon the Standard Terms and Conditions.**

Circuit City Stores, Inc.

By: _____
     Bruce H. Besanko
     Chief Financial Officer

Date: NOV 5, 2008

FTI CONSULTING, INC.

STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Circuit City Stores, Inc. dated November 5, 2008 (the "Engagement Letter"), the terms of which are incorporated herein by reference. The Engagement Letter and these Standard Terms and Conditions set forth herein (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1    **Use and purpose of advice and reports**—Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party (other than to your attorneys, investment bankers, financial advisors, auditors and other representatives), or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1    **Provision of information and assistance**—Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information**—You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data**—While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information**—In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.  Additional Services**

3.1     **Responsibility for other parties**—You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

3.2     **Facilities** -- To the extent necessary to perform the services, the Company will provide FTI with the workspace, facilities and supplies reasonably required to perform the services contemplated hereunder. The Company shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing us with workspace, facilities and supplies in connection with the Services, except to the extent caused by the grossly negligent or willful acts or omissions of the Company.

**4.  Confidentiality**

4.1     **Restrictions on confidential information**—Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's prior written consent. Confidential information shall not include information that:

         4.1.2    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

         4.1.3    is acquired from a third party who, to the recipient party's knowledge after receiving prior advice from counsel, owes no obligation of confidence in respect of the information; or

         4.1.4    is or has been independently developed by the recipient.

4.2     **Disclosing confidential information**—Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3     **Citation of Engagement**—Subject to Clause 4.1 and Clause 4.2 above, to the extent the Engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4     **Internal quality reviews**—Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5     **Maintenance of workpapers**—Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.  Termination**

5.1     **Termination of Engagement with notice**—Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all undisputed fees and expenses incurred by us through the date notice of termination is received.

5.2    **Effect of Termination** -- If, at any time prior to twelve months after the effective date of termination without cause of this Engagement, a restructuring or sale transaction, as described in the Engagement Letter, is consummated, the Company may pay FTI a Completion Fee subject to the terms specified in Clause 3 of the Engagement Letter. Company shall have the discretion to pay FTI a Completion Fee whether or not the Company has then engaged the services of a third party firm.

5.3    **Continuation of terms**—The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.    **Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1    **Indemnification** - Each party agrees to indemnify and hold harmless the other party and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of the acts or omissions of the indemnifying party, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2    **Limitation of liability**—Each party agrees that no Indemnified Person shall have any liability as a result of this Engagement, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.3    **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER ARISING FROM THE ENGAGEMENT CONTRACT.

6.4    **Insurance** -- FTI shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $10,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $2,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (b), (c) and (d) above shall name the Company as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Engagement Contract as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to the Company (i) upon execution of this Engagement Letter, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

6.5    **Governing Law and Jurisdiction**—The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the

appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it; provided that if the Company or any of its affiliates has sought relief under the Bankruptcy Code, the parties consent to the exclusive jurisdiction of the bankruptcy court in which such case or cases are pending over any and all matters arising from or related to the Engagement Contract. The parties submit to the jurisdiction of such courts and irrevocably waive any right to object to any action being brought in such courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction.

7.  **Independent Contractors** -- The parties to this Engagement Contract are independent of one another. This Engagement Contract does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. The Company shall not be responsible for payment of FTI's employees' or contractors' salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, FTI shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with FTI's employees' and contractors compensation.

**FTI CONSULTING, INC**

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

**CIRCUIT CITY STORES, INC.**

By:   _____
        Bruce H. Besanko
        Chief Financial Officer

Date:   _____Nov 5, 2008_____

## EXHIBIT 2
### Listing of Parties-in-Interest
### Reviewed for Current Relationships

**Debtors**
Abbott Advertising Agency, Inc.
CC Aviation, LLC
CC Distribution Company of
Virginia, Inc.
Circuit City Properties, LLC
Circuit City Purchasing Company,
LLC
Circuit City Stores PR, LLC
Circuit City Stores West Coast,
Inc.
Circuit City Stores, Inc.
Courcheval, LLC
Digital Video Express, LP
InterTAN, Inc.
Kinzer Technology, LLC
Mayland MN, LLC
Northern National Insurance, Ltd
Orbyx Electronics, LLC
Patapsco Designs, Inc.
Prahs, Inc.
Sky Venture Corporation
Tourmalet Corp.
Ventoux International, Inc.
XS Stuff, LLC

**Non-Debtor Affiliates**
587255 Ontario Ltd.
American Computer Development Inc.
Asian Sourcing & Procurement
Services Co. Ltd.
Cicuit City Global Sourcing Limited
Early Adopter Fund, LLC
InterTAN Canada, Ltd
InterTAN France SNC
InterTAN Ontario Ltd.
PlumChoice, Inc.
Sixth Street Marketplace, LP
St. Tammany Oaks Subdivision
Association LLC
Theater Xtreme Entertainment Group,
Inc.

**Current and Former Officers and
Directors**
Appleby Corporate Services, Ltd.

Lisa Baldyga
Henry P. Barretta
Bruce H. Besanko
Alan Bossin
Brian S. Bradley
Kelly E. Breitenbecher
Ronald M. Brill
Carolyn H. Byrd
Consec Services Limited (HK)
Ron Cuthbertson
Ean Daoust
Philip J. Dunn
Ursula O. Fairbairn
Timothy C. Faries
Barbara S. Feigin
Michael E. Foss
Jacqueline Grove
James F. Hardymon
John T. Harlow
Reginald D. Hedgebeth
Lyle G. Heidemann
Eric A. Jonas, Jr.
Alan Kane
John J. Kelly
Allen B. King
Don R. Kornstein
Jeric Ma
James A. Marcum
Jeffrey A McDonald
Michelle Mosier
John Mulleady
John A. Oakey, III
Linda M. Owen
Steven P. Pappas
Danny W. Ramsey
Mikael Salovaara
Philip J. Schoonover
Marlies A. Smith
J. Patrick Spainhour
Richard D. Spurling
Jeffrey S. Stone
Gerald L. Swider
Ronald L. Turner
Elliott Wahle
Mark J. Wong
Carolyn Y. Woo

**Secured Lenders**
Ableco Finance LLC
Bank of America, N.A.
Burdale Finance Ltd.
Capital One Leverage Finance Corp.
Crystal Capital
Fifth Third Bank
General Electric Capital
Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
National City Business Credit, Inc.
PNC Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UPS Capital Corporation
Wachovia Capital Finance
Corporation
Webster (Webster Bank/Webster
Financial Corporation)
Wells Fargo Retail Finance, LLC

**Significant Merchandise Creditors**
Alliance Entertainment
Apple
Audiovox
Belkin Logistics Inc
Buena Vista Home Video
Columbia Tristar Home Video
Dlink Systems
Eastman Kodak Co
Electronic Arts
Epson America Inc
Fox Home Entertainment
Fuji Photo Film Usa
Garmin International Inc
Hewlett-Packard  US Operations
Hisense USA Corporation
Kingston Technologies
Klipsch Audio Technologies LLC
Lenovo, Inc.
Lexmark International Inc
Linksys
Logitech Inc
Magellan
Microsoft Corp
Microsoft Xbox
Mitsubishi Digital Electronics

Monster Cable Products
Nikon Inc
Olympus Corporation
Omnimount Systems Inc
Oncorp US, Inc
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Paramount Home Video
Pioneer Electronics (USA) Inc
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Stillwater Designs Inc
THQ Inc
Tomtom Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div
Universal Distribution Records
Vizio
Warner Home Video
Western Digital Technologies
Zenith Electronics Corp

**Significant Vendors**
Alpha Security Products
American Systems Corp
Andrews Electronics Inc.
Bailiwick Data Systems Inc
CDW Direct LLC
Clay Inc, Bruce
Clickit Inc
Cormark Inc
Corporate Express
Corporate Facilities Group
Cosco
DC Power Solutions
Eastern Security Corp
Eleets Logistics
Ereplacements LLC
Fire Materials Group LLC
Gorilla Nation Media
Graphic Communications
Illinois Wholesale Cash Register
Innerworkings LLC
J&F Mfg Inc
JLG Industries Inc
Nextag

NFL Enterprises LLC
North American Roofing Sys Inc
Northern Wire Productions
Orbis Corporation
Pricegrabber Com LLC
PTR Compactor & Baler Co
Quebecor World KRI
Retail Maintenance Services LLC
Samsung Electronics America
Shopping.Com Inc
Shopzilla Inc
Sony
Specificmedia Inc
Standard Electric
Streater Inc
Swiff Train Company
Trane
Tremor Media
Universal Fixtures & Display
US Signs
USIS Commercial Services Inc
Vance Baldwin
Vanguard Products Group Inc
Vector Security
Virginia Electronic Components
Wayne Dalton Corp
Weather Channel Interactive, The

**Consignment Vendors**
ValuSoft (THQ, Inc.)
foneGear
INTUIT Inc.
Pinnacle Systems, Inc. (Avid Tech, Inc.)
Memorex Products, Inc.
Panasonic Consumer Electronics Company
Navarre Corporation

**5% or Greater Shareholders**
J Richard Atwood
Classic Fund Management
Aktiengesellschaft
First Pacific Advisors LLC
HBK Investments LP
HBK Management LLC
HBK Master Fund
HBK Master Fund LP
HBK Partners II LP
HBK Services LLC
Robert L Rodriguez

Mark J Wattles

**Third Party Administrators**
Aetna Life Insurance Company
Alliance Entertainment Corporation
American Express Travel Related
Services Co
American Express Trust Co
Aon
Assurant
Avista Advantage, Inc
Beecher Carlson Insurance Services
CTSI
E-Count
Empire Blue Cross Blue Shield
Hewitt Associates LLC
International Business Machines, Inc
Jardine Lloyd Thompson Canada
Kaiser Permanente
Marsh USA, Inc.
Medco Health Solutions
Mercer Insurance Group
Mid-Atlantic Vision Service Plan, Inc.
Navigant Consulting, Inc
Specialty Risk Services
Tangoe, Inc
Triple-S Management Corporation
Vision Service Plan
Wachovia Bank, N.A.

**Significant Real Property Lessors (Landlords)**
Benderson Development Co
Cardinal Capital Partners
Circuit Investors #2 Ltd
Developers Diversified Realty Corp
Forest City Ratner Co
Immobilien Verwaltung Gmbh
Inland American Retail Management
Kamin Realty Co
Kimco Relaty Corp
Lucknow Associates
New Plan Excel Realty Trust
One Liberty Properties
Red Mountain Retail Group
Saunders Hotel Group
Simon Property Group
Terra Enterprises
Vornado Realty Trust

Weingarten Realty Investors
Wilmington Trust Co

**Significant Personal Property Lessors**
Avaya Financial Services
GE Fleet Services
IBM
Hewlett Packard Company
Service Pwer
Toshiba

**Professionals**
Bingham McCutchen LLP
Ernst & Young
Goldman Sachs
Kirkland & Ellis LLP
Kurtzman Cardon Consultants LLC
LeClairRyan
McGuireWoods, LLP
Ogilvy Renault LLP
Osler, Hoskin & Hardcourt LLP
Rothschild, Inc
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering Hale, & Dorr LLP

**Litigation Parties**
Ada Alicea (class action)
Andrew Foss
Audiobahn
Betty Ibrahim (class action)
Christopher Murphy (class action)
Christopher Snow (class action)
Citigroup
Clayton P. Voegtle (class action)
Daniel Weidler (class action)
Davis (class action)
Dealtree
Donald Moxley
Federal Communications Commission
Floyd Edward Temple Jr. (class action)
Govani (class action)
Harper
Hernandez (class action)
Hilgenberg (class action)
Internal Revenue Service
Iowa AG

Jamal Booker (class action)
Kenneth Donnelly (class action)
Kobra Properties
Latia Holloman
Location 4500 Eastlake LA
Location 6946 Whitney Bank
Mad Rhino
Maria Moncayo (class action)
Massachusetts Department of Revenue
Mastercard
Michael Banker (class action)
Michael DiPirro (class action)
Micro Electronics
Millennium Retail Partners
Monster Cable
RealSource
Roberty Gentry (class action)
Securities and Exchange Commission
State of Iowa
Syntax Brillian
Tennesee Department of Revenue
Unical
Visa
William Harris (class action)

**Banks**
American Savings
Amsouth/Regions
Banco Popular
Bank of America
Bank of America/CRP Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.
Lehman Brothers
Merrill Lynch Global Institutional Advisory Division
RBC Dain Rauscher
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

**Potential Liquidators**
Gordon Bros Retail Partners, LLC
Great American Group
Hilco Merchant Resources, LLC
Hudson Capital Partners, LLC
SB Capital Group, LLC
Tiger Capital Group, LLC

## EXHIBIT 3
### Parties-in-Interest Noted for Court Disclosure

**Current and Former Officers and Directors**
Ronald L Turner

**Secured Lenders**
Bank of America, N.A.
Fifth Third Bank
General Electric Capital Corporation
GMAC Commercial Finance LLC
JPMorgan Chase Bank, N.A.
SunTrust Bank
Textron Financial Corporation
UBS Loan Finance LLC
UBS Capital Corporation
Wachovia Capital Finance Corporation
Wells Fargo Retail Finance, LLC

**Significant Merchandise Creditors**
Belkin Logistics Inc
Eastman Kodak Co
Epson America Inc
Hewlett-Packard US Operations
Lexmark International Inc
Linksys
Microsoft Corp
Microsoft Xbox
Onkyo USA Corp
Panasonic Company National Acct
Panasonic North America
Samsung Electronics Amer Inc.
Samsung Opto Electronics Inc
Sandisk Corporation
Sharp Electronics Corp
Sony Computer Entertainment
Sony Electronics Inc
Toshiba America Consumer Products
Toshiba Computer Systems Div

**Significant Vendors**
American Express Travel Related Services Co
Corporate Express
Innerworkings LLC
Kaiser Permanente
Magellan*
Medco
Samsung Electronics America
Sony

**Significant Real Property Lessors**
Developers Diversified Realty Corp
Kimco Realty Corp
New Plan Excel Realty Trust
Vornado Realty Trust

**Significant Personal Property Lessors**
Hewlett Packard Company
Toshiba

**Professionals**
Bingham McCutcheon LLP
Ernst & Young LLP
Kirkland & Ellis LLP
LeClair Ryan
McGuire Woods
Schulte Roth & Zabel LLP
Skadden, Arps, Slate, Meagher & Flom, LLP
Wilmer, Cutler, Pickering, Hale & Dorr LLP

**Third Party Administrators**
Aon
Assurant
International Business Machines, Inc.
Jardine Lloyd Thompson Canada
Navigant Consulting
Triple-S Management Corporation

**Litigation Parties**
Citigroup
Internal Revenue Service
Keystone Automotive
Mastercard
Securities & Exchange Commission
Syntax Brillian*
Visa

**Banks**
Banco Popular
Bank of America
Bank of America/Crp Securities, LLC
Chase
Fifth Third Bank
Fifth Third Securities, Inc.
J.P. Morgan Securities, Inc.

Lehman Brothers
Suntrust
UBS Financial Services, Inc.
Wachovia Bank & Securities
Wells Fargo

*Ethical walls have been
established between these parties-
in-interest and FTI personnel
working on this engagement as
discussed in the affidavit

**EXHIBIT 4**
## List of Invoices and Payments

| Invoice Date | Payment Date | Description | Fees | | Expenses | | Total Amount | |
|---|---|---|---|---|---|---|---|---|
| 8/28/08 | 9/9/08 | Invoice | $ | 76,365 | $ | 6,900 | $ | 83,265 |
| 8/31/08 | 9/17/08 | Invoice | | 95,700 | | 8,600 | | 104,300 |
| 9/12/08 | 9/17/08 | Invoice | | 130,195 | | 8,600 | | 138,795 |
| 9/18/08 | 9/23/08 | Invoice | | 149,335 | | 10,361 | | 159,696 |
| 9/26/08 | 10/2/08 | Invoice | | 162,965 | | 7,250 | | 170,215 |
| 9/30/08 | 10/8/08 | Invoice | | 183,378 | | 7,250 | | 190,628 |
| 10/9/08 | 10/22/08 | Invoice | | 173,895 | | 7,250 | | 181,145 |
| 10/17/08 | 10/27/08 | Invoice | | 187,235 | | 7,250 | | 194,485 |
| 10/23/08 | 10/30/08 | Invoice | | 262,667 | | 10,500 | | 273,167 |
| 10/28/08 | 11/4/08 | Invoice | | 263,347 | | 12,750 | | 276,097 |
| 11/5/08 | 11/7/08 | Invoice | | 334,871 | | 35,623 | | 370,494 |
| 11/5/08 | 11/7/08 | Invoice | | 316,537 | | 20,100 | | 336,637 |
| | | **Total** | $ | **2,336,490** | $ | **142,434** | $ | **2,478,924** |
| **Cash on Account:** | | | | | | | | |
| 8/27/08 | 9/9/08 | Cash on Account | $ | 100,000 | $ | - | $ | 100,000 |
| 8/27/08 | 9/22/08 | Cash on Account | | 100,000 | | - | | 100,000 |
| 10/31/08 | 11/5/08 | Cash on Account | | 550,000 | | - | | 550,000 |
| | | **Total** | $ | **750,000** | $ | **-** | $ | **750,000** |
| | | **Total** | $ | **3,086,490** | $ | **142,434** | $ | **3,228,924** |

631574-Chicago Server 1A - MSW

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - X
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
327(a), 328 AND 1107 AND BANKRUPTCY RULE 2014(a),
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[1] of

the Debtors for an order, pursuant to Bankruptcy Code

sections 105(a), 327(a), 328 and 1107, authorizing them

---

[1]    Capitalized terms not otherwise defined herein shall have the
       meanings ascribed to such terms in the Application.

to retain FTI Consulting, Inc. as financial advisors,

effective as of the Petition Date; and the Court having

reviewed the Application and the Duffy Affidavit in

Support of the Application (the "Duffy Affidavit"); and

due and adequate notice of the Application having been

given; and it appearing that no other notice need be

given; and it appearing that FTI Consulting, Inc.

neither holds nor represents any interest adverse to the

Debtors' estates; and it appearing that FTI Consulting,

Inc. is "disinterested," as that term is defined in

Bankruptcy Code section 101(14); and it appearing that

the relief requested in the Application is in the best

interest of the Debtors, their estates and their

creditors; after due deliberation thereon and sufficient

cause appearing therefore, it is hereby

        **ORDERED, ADJUDGED AND DECREED that:**

    1.    The Application is GRANTED.

    2.    In accordance with Bankruptcy Code

sections 327(a) and 328, the Debtors are authorized to

employ and retain FTI Consulting, Inc. effective as of

the Petition Date as their financial advisors on the

2

terms set forth in the Application and the Engagement
Letters.

3.   The Engagement Letters are hereby
approved and, to the extent not inconsistent with this
Order, shall govern the Debtors' and FTI Consulting,
Inc.'s respective rights and obligations.

4.   FTI Consulting, Inc. shall be compensated
in accordance with the Engagement Letters, procedures
set forth in Bankruptcy Code sections 330 and 331 and
such Bankruptcy and Local Rules as may then be
applicable, from time to time, and such procedures as
may be fixed by order of this Court; provided, however,
any and all "Completion Fee" and/or "Financing Fee" (as
described in the Engagement Letters) that may become due
and payable to FTI Consulting, Inc. during these chapter
11 cases are hereby approved under Bankruptcy Code
section 328(a) and shall only be subject to review
thereunder.

5.   FTI Consulting, Inc. is authorized to
apply the amounts presently held as On-Account Cash to
pay any fees, charges, and disbursements relating to
services rendered to the Debtors prior to the Petition

Date that remain unpaid as of such date (the "Final

Prepetition Billed Amount").  Any amount of the On-

Account Cash remaining after such payment of the Final

Prepetition Billed Amount may be held until the

conclusion of the Debtors' cases and shall be applied by

FTI Consulting, Inc. against its final fee application.

      6.   The relief granted herein shall be

binding upon any chapter 11 trustee appointed in these

chapter 11 cases, or upon any chapter 7 trustee

appointed in the event of a subsequent conversion of

these chapter 11 cases to cases under chapter 7.

      7.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

      8.   This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
       **[\_\_]**, 2008


                                          _____
                                          UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -


/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
    hereby certify that the foregoing proposed order
has been endorsed by or served upon all necessary
parties.


    /s/ Douglas M. Foley
    _____

631570-Chicago Server 1A - MSW

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

              - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION
- - - - - - - - - - - - - - X
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    1Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

       **ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),**
    **327(a), 328 AND 1107 AND BANKRUPTCY RULE 2014(a),**
       **AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
       **FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO**
      **THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

            Upon the application (the "Application")[1] of

the Debtors for an order, pursuant to Bankruptcy Code

sections 105(a), 327(a), 328 and 1107, authorizing them

_____

[1]          Capitalized terms not otherwise defined herein shall
        have the meanings ascribed to such terms in the Application.


0835653081224000000000003

to retain FTI Consulting, Inc. ("FTI") as financial
advisors, effective as of the Petition Date; and the
Court having reviewed the Application and the Duffy
Affidavit in Support of the Application (the "Duffy
Affidavit"); and due and adequate notice of the
Application having been given; and it appearing that no
other notice need be given; and it appearing that FTI
neither holds nor represents any interest adverse to the
Debtors' estates; and it appearing that FTI is
"disinterested," as that term is defined in Bankruptcy
Code section 101(14); and it appearing that the relief
requested in the Application is in the best interest of
the Debtors, their estates and their creditors; after
due deliberation thereon and sufficient cause appearing
therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED that**:

1.     The Application is GRANTED, as modified
hereby.

2.     In accordance with Bankruptcy Code
sections 327(a) and 328, the Debtors are authorized to
employ and retain FTI effective as of the Petition Date

as their financial advisors on the terms set forth in
the Application, the Engagement Letters and this Order.

3.     Except to the extent set forth herein,
the Engagement Letters are hereby approved and, to the
extent not inconsistent with this Order, shall govern
the Debtors' and FTI's respective rights and
obligations.

4.     Notwithstanding anything to the contrary
in the Engagement Letters, to resolve the informal
objection of the Official Committee of Unsecured
Creditors, FTI consensually agreed to and this Court
hereby approves the following modifications to the
Engagement Letters:

>
> (a)   FTI shall not be entitled to a
>       "Senior Financing Fee";
>
> (b)   FTI shall be entitled to payment of a
>       "Restructuring Fee" in the amount of
>       $500,000; provided, further, that the
>       Debtors are hereby authorized and
>       directed to pay such Restructuring
>       Fee to FTI upon entry of this Order;
>
> (c)   the "Second Lien Financing Fee" of 1%
>       of the commitment of second lien
>       financing shall be earned and paid
>       upon interim court approval or
>       closing of such second lien
>       financing; provided, that such Second
>       Lien Financing Fee shall only be

earned if such second lien financing
is obtained from third parties other
than the parties to the Debtors'
post-petition debtor in possession
financing facility; <u>provided</u>,
<u>further</u>, in the event such second
lien financing is obtained from one
or more third parties who purchase
all or substantially all of the
Debtors' assets or sponsor a plan of
reorganization, the amount of the
Second Lien Financing Fee paid to FTI
shall be credited against and reduce
the Completion Fee;

(d)   the Completion Fee is hereby modified
as follows:  FTI shall be entitled to
payment of a Completion Fee of up to
$2 million as follows:  (1)  $500,000
on (a) the effective date of any plan
of reorganization or plan of
liquidation (a "Plan Transaction") or
(b) the closing date of any sale
pursuant to Bankruptcy Code section
363 (a "Sale Transaction"); <u>provided</u>,
that such Plan Transaction value or
such Sale Transaction value, as the
case may be, exceeds the appraised
value of the Debtors' assets at the
time of the closing of the Plan
Transaction or the Sale Transaction;
(2) $500,000 on the effective date of
a Plan Transaction that, pursuant to
the approved disclosure statement
related to such Plan Transaction,
purports to result in payment in full
of the estimated allowed amount of
administrative claims under
Bankruptcy Code section 503(b); (3)
$500,000 on the effective date of a
Plan Transaction that, pursuant to
the approved disclosure statement
related to such Plan Transaction,

purports to result in distributions
on account of general unsecured
claims of a value greater than $0.00
and less than 10% of the estimated
allowed amount of general unsecured
claims; and (4) $500,000 on the
effective date of a Plan Transaction
that, pursuant to the approved
disclosure statement related to such
Plan Transaction, purports to result
in distributions on account of
general unsecured claims of a value
greater than 10% of the estimated
allowed amount of such claims; and

(e)   the "Limitation of Liability"
provisions set forth in section 6.2
of the "Standard Terms and
Conditions" attached to the
Engagement Letters are hereby
modified to provide that, in the
event FTI is found liable for any act
or omission, FTI's liability shall be
capped at twice the amount of fees
FTI is actually paid under the
Engagement Letters and this Order.

5.    FTI shall be compensated in accordance

with the Engagement Letters, procedures set forth in

Bankruptcy Code sections 330 and 331 and such Bankruptcy

and Local Rules as may then be applicable, from time to

time, and such procedures as may be fixed by order of

this Court; provided, however, that any and all

"Completion Fee" and/or "Financing Fee" (as described in

the Engagement Letters and modified by this Order) that

may earned by and become due or payable to FTI during
these chapter 11 cases are hereby approved under
Bankruptcy Code section 328(a) and shall only be subject
to review thereunder; _provided_, _further_, that, to the
extent set forth herein, all such Financing Fees and
Completion Fees shall be paid in accordance with this
Order and without the need for filing separate
applications for payment.

6.    FTI is authorized to apply the amounts
presently held as Cash on Account to pay any fees,
charges, and disbursements relating to services rendered
to the Debtors prior to the Petition Date that remain
unpaid as of such date (the "Final Prepetition Billed
Amount").  Any amount of the Cash on Account remaining
after such payment of the Final Prepetition Billed
Amount may be held until the conclusion of the Debtors'
cases and shall be applied by FTI against its final fee
application.

7.    The relief granted herein shall be
binding upon any chapter 11 trustee appointed in these
chapter 11 cases, or upon any chapter 7 trustee

appointed in the event of a subsequent conversion of

these chapter 11 cases to cases under chapter 7.

8.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

9.   This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:     Richmond, Virginia
           December ____, 2008

Dec 23 2008

/s/ Kevin Huennekens
_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

Entered on docket:  12/24/08

7

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

       - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

       - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


SEEN AND NO OBJECTION:

/s/ Robert B. Van Arsdale (with permission per
electronic mail dated 12/19/08)
Robert B. Van Arsdale, Esq.
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond VA  23219
(804) 771-2327

## <u>LOCAL BANKRUPTCY RULE 9022-1(C) CERTIFICATION</u>

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

<u>/s/ Douglas M. Foley</u>
Douglas M. Foley

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP
Douglas Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in
Possession

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski, Esq.
Jeffrey N. Pomerantz, Esq.
10100 Santa Monica Boulevard, 11th
Floor
Los Angeles, California 90067-4100

– and -

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, NY 10017-2024

– and –

TAVENNER & BERAN, PLC
Lynn L. Tavenner, Esq. (VSB
No. 30083)
Paula S. Beran, Esq. (VSB No. 34679)
20 North Eighth Street
Second Floor
Richmond, Virginia 23219

Counsel for the Creditors' Committee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   1Case No. 08-35653 (KRH)
et al.,                    :
                           :
              Debtors.     :   Jointly Administered
- - - - - - - - - - - - - - x
```

**SUPPLEMENTAL ORDER REGARDING RETENTION OF FTI CONSULTING, INC. AS
FINANCIAL ADVISORS AND AUTHORIZING PAYMENT OF THE COMPLETION FEE**

0835653100916000000000006

Upon the application (Docket No. 195, the "Application")[1] of the Debtors for entry of an order, pursuant to Bankruptcy Code sections 105(a), 327(a), 328 and 1107, authorizing them to retain FTI Consulting, Inc. ("FTI") as financial advisors, effective as of the Petition Date; and the Court having reviewed the Application and the Duffy Affidavit in Support of the Application (the "Duffy Affidavit"); and the Court having entered the Order Under Bankruptcy Code Sections 105(a), 327(a), 328 and 1107 and Bankruptcy Rule 2014(a), Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisors to the Debtors Effective as of the Petition Date (Docket No. 1296, the "FTI Retention Order") approving the Application; and it appearing that the payment of the Completion Fee as set forth herein is in the best interest of the Debtors, their estates and creditors and other parties in interest; after due deliberation thereon and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   On November 18, 2008, the Debtors filed the Application.  After the Application was filed, the Creditors'

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

Committee informally objected to certain aspects of FTI's retention.

B.   To avoid a contested hearing with respect to FTI's retention, FTI and the Debtors agreed to modify certain aspects of FTI's retention, including the terms of payment of the Completion Fee of up to $2,000,000, to resolve the Creditors' Committee's informal objection.  The terms of that resolution were incorporated in the FTI Retention Order, which was entered on December 12, 2008.

C.   On September 29, 2009, the Debtors and the Creditors' Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (as may be modified or amended, the "Plan").  The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. The Plan has not yet been confirmed.

D.   In January of 2010, counsel to the Debtors advised counsel to the Creditors' Committee that, in connection with confirmation of the Plan, the Debtors would need to make arrangements to pay FTI its Completion Fee as provided in the FTI Retention Order and requested confirmation from the Creditors' Committee concerning the amount due.  At that time, counsel to the Creditors' Committee advised the Debtors that it

3

disagreed with the amount calculated and the provisions of the FTI Retention Order.

E.   The Debtors and FTI have reached an agreement with the Creditors' Committee with respect to payment of the Completion Fee to FTI.  This Order reflects the terms of that agreement.

F.   The existing terms and conditions of the Completion Fee are not improvident as there have been no developments that were not capable of being anticipated at the time the FTI Retention Order was entered.

G.   The terms and conditions the Completion Fee, as revised by this Order, are fair and reasonable under section 328(a) and are in the best interests of the Debtors, their estates and creditors.

H.   Based on the foregoing findings of fact and conclusions of law,[3] it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   Notwithstanding anything to the contrary in the FTI Retention Order, the FTI Retention Order is modified and amended as set forth herein.

2.   The Completion Fee shall be paid as follows:

---

[3]   Statements made by the Court from the bench at the hearing on the Application shall constitute additional conclusions of law and findings of fact as appropriate.

4

(a) In respect of Tranche 1, FTI shall be paid $250,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases (the "Tranche 1 Payment");

(b) In respect of Tranche 2, FTI shall be paid $500,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases(the "Tranche 2 Payment");

(c) In respect of Tranche 3, FTI shall be paid $500,000 on the effective date of a confirmed plan of liquidation in the Debtors' chapter 11 cases (the "Tranche 3 Payment"); and

(d) In respect of Tranche 4, FTI shall be paid $500,000 on or as soon as reasonably practicable after distribution(s) to one or more members of a class of general unsecured creditors of the Debtors under a confirmed plan of liquidation equal to 10% or more of the allowed amount of such member(s) general unsecured claim(s) (the "Tranche 4 Payment").

3.   On the Effective Date of the Plan, the Liquidating Trustee shall deposit $500,000 into the Professional Fee Reserve, which shall be held for FTI's exclusive benefit. The Tranche 4 Payment shall be paid from the Professional Fee Reserve.

5

4.    Pursuant to an agreement between the Debtors, FTI and the Creditors' Committee, on the Effective date of the Plan or any confirmed plan of liquidation, for good and valuable consideration, the adequacy of which is hereby confirmed, FTI shall not have or incur any liability for any claim, action, proceeding, cause of action, Avoidance Action,[4] suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or Claim (as defined in Bankruptcy Code Section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to the Debtors, the Creditors' Committee or to any Claimholder or Interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission originating or occurring (i) on or after the Petition Date through and including the Effective Date of the Plan or any confirmed plan of liquidation in the Debtors' chapter 11 cases, in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and

---

[4]    All capitalized terms in this paragraph 6 not otherwise defined shall have the meanings ascribed to such terms in the Plan, as amended from time to time.

6

filing of the Plan, the Disclosure Statement or any prior plans
of reorganization or liquidation, the filing of the Chapter 11
Cases, the pursuit of confirmation of the Plan or any prior
plans of reorganization or liquidation, the consummation of the
Plan, the administration of the Plan, or the property to be
liquidated and/or distributed under the Plan, (ii) in connection
with, relating to, or arising out of the Initial Store Closings
and/or the negotiation of the DIP Agreements or the DIP Facility
or (iii) in connection with, relating to, or arising out of the
going out of business sales, except for their willful misconduct
or gross negligence as determined by a Final Order of a court of
competent jurisdiction,

        5.    Pursuant to an agreement between the Debtors, FTI
and the Creditors' Committee, on the Effective Date of the Plan
or any confirmed plan of liquidation, for good and valuable
consideration, the adequacy of which is hereby confirmed, the
Creditors' Committee hereby waives and releases any and all
objections to (i) payment of the Completion Fee, as modified by
this Order, (ii) payment of the Restructuring Fee and (iii)
payment of any fees or expenses of FTI as set forth in (a) any
fee application filed with this Court on or prior to the date of
entry of this Order and (b) any monthly fee request transmitted
in accordance with the Order Under Bankruptcy Code Sections

7

105(a) and 331 Establishing Procedures for Interim Compensation

(Docket No. 830) prior to the date of entry of this Order.

6.   In consideration of the foregoing, including

(without limitation) the payment of the Completion Fee as set

forth in paragraph 2 hereof, the exculpation set forth in

paragraph 4 hereof and the release and waiver set forth in

paragraph 5 hereof, (i) FTI hereby waives any right to the

remaining $250,000 payable under Tranche 1, as set forth in the

FTI Retention Order and (ii) the Debtors and the Committee agree

not to take any action or omit from taking any action that is

contrary to, inconsistent with, or in derogation of this Order,

including (without limitation) paragraphs 2, 4, and 5, prior to

the Effective Date of the Plan or any confirmed plan of

liquidation.

7.   The requirement under Local Bankruptcy Rule 9013-

1(G) to file a memorandum of law in connection with the Motion

is hereby waived.

8.   This Court retains exclusive jurisdiction to hear

and determine all disputes concerning this Order and any and all

matters arising from or related to the implementation or

interpretation of this Order, to the fullest extent permitted by

law.

Dated:   Richmond, Virginia
         _____, 2010

8

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

           - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Douglas M. Foley (VSB No. 34364)
Sarah B. Boehm (VSB No. 45201)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

10

```
PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski, Esq.
Jeffrey N. Pomerantz, Esq.
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067-4100

            - and -

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, NY 10017-2024

            - and -

TAVENNER & BERAN, PLC

/s/ Lynn L. Tavenner
Lynn L. Tavenner, Esq. (VSB No. 30083)
Paula S. Beran, Esq. (VSB No. 34679)
20 North Eighth Street, Second Floor
Richmond, Virginia 23219

Counsel for the Creditors' Committee
```

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

```
                           /s/ Douglas M. Foley
                           Douglas M. Foley
```

11