W. Alexander Burnett (VSB No. 68000)
WILLIAMS MULLEN
Williams Mullen Center
200 South 10th Street, Suite 1600
Post Office Box 1320
Richmond, Virginia  23218-1320
Tel:  804.420.6481
Fax:  804.420.6507
aburnett@williamsmullen.com

*Counsel for Cyber Acoustics, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., ) | |
|  et al., ) | Case No. 08-35653-KRH |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**MOTION OF CYBER ACOUSTICS, LLC
FOR LEAVE TO FILE LATE ADMINISTRATIVE EXPENSE CLAIM**

Cyber Acoustics, LLC ("Cyber Acoustics"), a creditor in the above-captioned case, by

and through its counsel, hereby files its Motion for Leave to File Late Administrative Expense

Claim (this "Motion"), and respectfully states as follows:

**I.  JURISDICTION**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.

2.      Cyber Acoustics seeks relief pursuant to Rules 3003(c)(3) and 9006(b)(1) of the

Federal Rules of Bankruptcy Procedure.

**II.  BACKGROUND**

3.      On March 1, 2005, Circuit City Stores, Inc. ("Circuit City") entered into a Product

Addendum Agreement, as amended by that certain Circuit City Terms of Sale dated July 2007,

as further amended by that certain Circuit City Terms of Sale dated October 2007, and as further

amended by that certain Circuit City Terms of Sale dated October 2008 (collectively, the

"Agreement") with Cyber Acoustics, whereby Cyber Acoustics agreed to supply Circuit City

with certain retail merchandise pursuant to the payment terms of the Agreement.  A copy of the

Agreement is attached as Exhibit A.

4.       Pursuant to the Circuit City Terms of Sale dated October 2008 (amending the

payment terms of the Agreement), Cyber Acoustics agreed to supply Circuit City with goods on

net 60 day payment terms on and after October of 2008, which included for the most part post-

petition transactions.

5.       On November 10, 2008 (the "Petition Date"), the above-captioned debtor and

debtor-in-possession (collectively, the "Debtor") filed a petition for reorganization under Chapter

11 of the Bankruptcy Code and continued the management of its business and properties as

debtor-in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.       The Debtor received goods from Cyber Acoustics pursuant to the terms of the

Agreement and in the ordinary course of the Debtor's business during the 20-day period prior to

the Petition Date.

7.       On or about December 1, 2008, Cyber Acoustics filed a claim under 11 U.S.C. §

503(b)(9) in the amount of $223,961.06 (Claim No. 423) for the unpaid invoices issued for the

retail merchandise received by the Debtor in the ordinary course of its business within the 20-day

period prior to the Petition Date (the "503(b)(9) Claim").

8.       After negotiating the 503(b)(9) Claim, Cyber Acoustics and the Debtor agreed to

reduce the 503(b)(9) Claim from $223,961.06 to $77,089.92, with the remaining $146,871.14 to

be classified as a general unsecured claim.

9.       From November 18, 2008 through January 6, 2009 (the "Post-Petition Period"),

2

Cyber Acoustics supplied the Debtor with beneficial and valuable retail merchandise in the amount of $337,536.24 in the ordinary course of business to help preserve the Debtor's estate. A copy of an invoice summary along with all of the invoices issued during this Post-Petition Period is attached as Exhibit B.

10.     The Debtor has failed to pay any of the invoices issued during the Post-Petition Period.

11.     During the negotiations of the 503(b)(9) Claim between Cyber Acoustics and the Debtor, Cyber Acoustics made reference to a post-petition administrative claim in the amount of approximately $337,000 numerous times through email correspondence with Circuit City accounting representatives and the Debtor's counsel from February 2009 through January 2010.

12.     On May 1, 2009, the Debtor filed its Motion for Order Pursuant to Bankruptcy Code Sections 105 and 503, and Bankruptcy Rules 2002 and 9007 (I) Setting Administrative Bar Date and Procedures for Filing and Objecting to Administrative Expense Requests and (II) Approving Form and Manner of Notice Thereof (Docket No. 3247) (the "Debtor's Bar Date Motion").

13.     The Debtor's Bar Date Motion was granted by the Court on May 14, 2009 (Docket No. 3354) and the administrative claims bar date for administrative claims from and after November 10, 2008 through and including April 30, 2009 was set as June 30, 2009 (the "Administrative Bar Date").

14.     Cyber Acoustics was not represented by legal counsel until after the Administrative Bar Date, and was unaware of the Debtor's Bar Date Motion or the Administrative Bar Date. In fact, Cyber Acoustics was under the mistaken belief that its post-petition sales to the Debtor would be paid in the ordinary course of business and that no

additional claims needed to be filed with regard to the post-petition sales.

15.    Additionally, because Cyber Acoustics was already corresponding directly with Circuit City representatives and the Debtor's counsel about the 503(b)(9) Claim and had discussed its administrative claim with the Debtor, Cyber Acoustics did not file its administrative claim before the Administrative Bar Date.

### III.  MOTION FOR LEAVE TO FILE LATE CLAIM

**A.      The Court Should Find that Cyber Acoustics Filed an Informal Administrative Claim Before the Administrative Bar Date.**

16.    By this Motion, Cyber Acoustics requests that this Court enter an order allowing it to file a late administrative claim in the amount of $337,536.24 pursuant to Sections 364(a), 503(b)(1) and 507(a)(2) of the Bankruptcy Code for the actual and necessary post-petition costs and expenses of preserving the Debtor's estate and the unpaid post-petition debt incurred by the estate in the ordinary course of its business after the Petition Date.  Cyber Acoustics extended unsecured credit in the ordinary course of business to the post-Petition Debtor in order to help preserve the estate by supplying beneficial and valuable retail merchandise to the Debtor.  A copy of Cyber Acoustics' administrative claim is attached as Exhibit C.

17.    Cyber Acoustics asks the Court to allow its administrative claim because the administrative claim was filed informally as part of email correspondence between Cyber Acoustics, Circuit City accounting representatives and the Debtor's counsel prior to the Administrative Bar Date.

18.    For a document (including correspondence) to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable. *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 815 (9th Cir. 1985).

19.     Through email correspondence, Cyber Acoustics expressly referenced the nature and approximate amount of its administrative claim to Circuit City representatives and the Debtors' counsel.  Cyber Acoustics also emphasized its intent to hold the Debtor liable for payment of such claim by demanding payment numerous times.

20.     The reason for an equitable rule such as this one is elemental. Bankruptcy courts are courts of equity, and must assure "that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 305, (1939); *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985). The rule reflects the courts' preference for resolution on the merits, as against strict adherence to formalities.

21.     Additionally, courts have held that creditors may file an "informal proof of claim for purposes of meeting the administrative bar date for filing claims."  *In re Com 21*, Case No. C-04-03396 RMW, 2005 U.S. Dist. LEXIS 34339, at *29-30 (N.D. Ca. July 6, 2005).  Unlike a proof of claim, which according to Rule 3001(a) must "conform substantially to the appropriate Official Form," an administrative claim need not take any particular form under the Code or Rules. *In re Fas Mart Convenience Stores, Inc.*, 320 B.R. 587, 593 (E.D. Va. Bankr. 2004).

22.     In this case, Cyber Acoustics specifically addressed the nature and amount of its administrative claim through email correspondence when discussing a resolution to the 503(b)(9) Claim with the Debtor's counsel, and the Debtor's counsel expressly recognized the reference.

23.     Stephen Murphy of Cyber Acoustics emailed a summary report of Cyber Acoustics' administrative claim to Douglas M. Foley of McGuire Woods, counsel for the Debtor. Mr. Foley in responding to Mr. Murphy's demand for payment, acknowledged the amount of Cyber Acoustics' claim by writing, "I was not referring to your alleged postpetition claim of

5

approximately $337,000. . . . Are you saying that Cyber Acoustics is willing to accept payment

of $337,000 (less $16,000) in full and final satisfaction of all its claims?"

24.    In agreeing to the re-classification of the 503(b)(9) Claim, Stephen Murphy of

Cyber Acoustics wrote in an email to Lori Michelle Scott of McGuire Woods, counsel for the

Debtor, "Cyber Acoustics agrees that the $77,089.92 claim be treated as a priority claim pursuant

to 503(b)(9) with the balance of $146,871.14 be treated as a general unsecured claim and that the

additional invoices submitted for goods provide [sic] to debtors post-petition (i.e., after

November 10, 2008) are not affected by this decision."

25.    Lori Michelle Scott at McGuire Woods, counsel for the Debtor, responded by

email to Stephen Murphy that "[y]our agreement to our objection to claim number 423 does not

impact your rights under other claims (stemming from different transactions) you may have

against Circuit City Stores, Inc. or its affiliate debtors . . . ."  Ms. Scott went on to write, "On a

separate note, I have submitted an inquiry to the company as to any information it has on the

post-petition transactions you referenced."

26.    The Debtor, through its counsel, was sufficiently put on notice of the

administrative nature and amount of Cyber Acoustics' administrative claim.

**B.    Alternatively, Cyber Acoustics' Failure to File Its Administrative Claim Was the Result of Excusable Neglect.**

27.    In the alternative, Cyber Acoustics asks the Court to allow its administrative

claim because its failure to file an administrative expense claim was the result of excusable

neglect.

28.    Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file

a request for payment of an administrative expense, or may tardily file such request if permitted

by the court for cause." 11 U.S.C. § 503(a).  Pursuant to Rule 9006(b)(1) of the Federal Rules of

Bankruptcy Procedure, the Court may enlarge the time for filing a proof of claim where the failure to file a proof of claim was "the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1); *see also In re Enron Corp.* 298 B.R. 513, 521 (S.D.N.Y. 2003) (holding that the Court may "allow the late filing of [a] claim after [the] bar date has expired if the claimant's failure was [the] result of excusable neglect").

29.     The Supreme Court in *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd.,* sets out four factors that a court must consider in determining whether the neglect at issue will be excusable. 507 U.S. 380, 395 (1993). These include (i) "the danger of prejudice to the debtor, [(ii)] the length of the delay and its potential impact on judicial proceedings, [(iii)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(iv)] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. "Not all factors need to favor the [the] moving creditor to warrant acceptance of [the] creditor's late-filed proof of claim on [the] 'excusable neglect' theory." *Enron*, 298 B.R. at 525. The four-factor test has a "necessarily elastic quality," requiring the Court to look to "the totality of the circumstances." *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998); *In re Kmart Corp.,* 381 F.3d 709, 714 (7th Cir. 2004) ("court may consider 'all relevant circumstances' in its excusable neglect analysis").

30.     For the first factor, danger of prejudice, the Court must consider the impact of the relief requested on (i) the debtor in administering its bankruptcy in a timely fashion and (ii) on the creditors' interest in the finality of the calculation of their claims. *In re Drexel Burnham Lambert Group, Inc.,* 146 B.R. 84, 88 (Bankr. S.D.N.Y. 1992) (bar dates are imposed "so that the bankruptcy case can be administered"); *In re JWP Information Services, Inc.*, 231 B.R. 209, 213 (Bankr. S.D.N.Y. 1999).

31.     Cyber Acoustics' late filed claim totals $337,536.24, a relatively small amount when viewed in the context of the estate's total assets and liabilities.

32.     Additionally, the final administrative claims bar date for administrative claims after January 1, 2010 is set for January 3, 2011.  Thus, the Debtor is currently working through other administrative claims, so there will be no prejudice to the Debtor, to the estate, or to other creditors if Cyber Acoustics' late claim is allowed at this time.

33.     In *Pioneer,* the Supreme Court explained that "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392.  The debtor argued that Rule 9006(b)(1) required a showing that the movant's failure to comply with the court's deadline was caused by circumstances beyond its reasonable control.  *Id*. at 388.  The Supreme Court disagreed, however, because "the Rule grants a reprieve to out-of-time filings that were delayed by 'neglect.'"  *Id*.  The Court found that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *Id*.

34.     In this case, Cyber Acoustics' failure to timely file an administrative claim is understandable and excusable.  Cyber Acoustics was in direct correspondence with Circuit City representatives and the Debtor's counsel and had discussed its administrative claim with them in an attempt to resolve the matter.  Furthermore, during this time, Cyber Acoustics was never aware of the Administrative Bar Date.

35.     As for the final factor to be considered by the Court, Cyber Acoustics has acted in good faith in filing this Motion. Again, Cyber Acoustics was unaware of the Administrative Bar Date until after the date had long passed.

## IV.  WAIVER OF MEMORANDUM OF LAW

36.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because all applicable authority is set forth in this motion, Cyber Acoustics requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

WHEREFORE, Cyber Acoustics prays that this Court grant it leave to file its administrative claim (attached hereto as Exhibit C) late as though it had been timely filed prior to the expiration of the Administrative Bar Date in this case; and granting Cyber Acoustics such other and further relief, at law or in equity, to which Cyber Acoustics show itself justly entitled.

Respectfully submitted,

CYBER ACOUSTICS, LLC

*/s/ W. Alexander Burnett*

By:     _____

Counsel

W. Alexander Burnett (VSB No. 68000)
WILLIAMS MULLEN
Williams Mullen Center
200 South 10th Street, Suite 1600
Post Office Box 1320
Richmond, Virginia  23218-1320
Tel:  804.420.6481
Fax:  804.420.6507
aburnett@williamsmullen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30th, 2010, a true and complete copy of the foregoing was filed and served electronically using the Court's ECF System and a copy was mailed to the following recipients:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219

Richard M. Pachulski, Esq.
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100

Robert J. Feinstein, Esq.
John A. Morris, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017

Office of the United States Trustee for the
Eastern District of Virginia
Attn: Robert B. Van Arsdale
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

*/s/ W. Alexander Burnett*

_____

12980895_2.DOC