Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

           - and –

Robert J. Feinstein, Esq.
John A. Morris, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., <u>et al</u>., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## TRUSTEE'S MOTION FOR AN ORDER UNDER BANKRUPTCY RULE 9024 TO CORRECT CLERICAL MISTAKES OR MISTAKES ARISING FROM OVERSIGHT OR OMISSION

Alfred H. Siegel, the duly appointed trustee (the "Trustee") of the Circuit City Stores, Inc.

Liquidating Trust (the "Trust" and/or the "Liquidating Trust"), pursuant to the Second Amended

Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in

Possession and its Official Committee of Creditors Holding General Unsecured Claims (the

"Plan"), hereby moves (the "Motion") for entry of an order, pursuant to Rule 9024 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 60(a) of the Federal Rules of

Civil Procedure (the "Rules of Civil Procedure") correcting two clerical mistakes or mistakes

arising from oversight or omission.  In support of the Motion, the Trustee respectfully represents

as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157 (b).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The Predicates for the relief requested here are Bankruptcy Code section 105 (a)

and Bankruptcy Rules 9006 and 9027.

## BACKGROUND

3.      On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions

in this Court for relief under chapter 11 of the Bankruptcy Code, and until the effective date of

the Plan, continued to operate as debtors in possession pursuant to Bankruptcy Code § s 1107

and 1108.

4.      On November 12, 2008, the Office of the United States Trustee for the Eastern

District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors'

Committee").

5.      On January 16, 2009, the Court authorized the Debtors to, among other things,

conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant

to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as

agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales at

the Stores pursuant to the Agency Agreement.  As of March 8, 2009, the going out of business

sales at the Debtors' stores were completed.

6.      On August 9, 2010, the Debtors and the Creditors' Committee filed the Plan,

which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof

under chapter 11 of the Bankruptcy Code.

7.      The Plan provides for, among other things, the appointment of Alfred H. Siegel to

serve as the Trustee of the Circuit City Stores, Inc. Liquidating Trust, as of the effective date.

8.      On September 10, 2010, the United States Bankruptcy Court, Eastern District of

Virginia, signed an Order confirming the Plan (the "Confirmation Order").

9.      On November 21, 2010, the Creditors Committee filed a Motion For An Order

Establishing Procedures For Avoidance Action Adversary Proceedings (the "Adversary

Proceeding Procedures Motion").

10.     The Plan became effective on November 1, 2010.

11.     On November 4, 2010, the Court heard argument in support of and in opposition

to aspects of the Adversary Proceeding Procedures Motion (the "Hearing").  The Court indicated

that it would grant the relief sought in the Adversary Proceeding Procedures Motion as modified

by representations of the Trustee's counsel at the Hearing.  A copy of the transcript of the

Hearing is attached hereto as Exhibit A.  Thereafter, the Court entered an order approving the

Adversary Proceeding Procedures Motion (the "Adversary Proceeding Procedures Order").

**RELIEF REQUESTED**

12.     By this Motion, the Trustee requests the entry of an order pursuant to Rule 9024

of the Bankruptcy Rules and Rule 60(a) of the Rules of Civil Procedure correcting two clerical

mistakes or mistakes arising from oversight or omission in the Adversary Proceeding Procedures

Order.  Specifically, the Trustee requests that the Court clarify that (a) the reference in paragraph

B of Exhibit A to Rule 4(m) of the Rules of Civil Procedure instead should have referenced Rule

4(e) and (b) any hearing on the pretrial motions referenced in paragraph G of Exhibit A shall

occur only after the filing of the Mediator's Report.

## BASIS FOR RELIEF

13.     Pursuant to Rule 60(a) of the Rules of Civil Procedure, as incorporated into adversary proceedings by Bankruptcy Rule 9024, the Court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

## Applicable Authority

14.     The type of error addressed by Rule 60(a) of the Rules of Civil Procedure includes oversights and omissions as well as unintended acts or failures to act that result in a record that does not properly reflect the parties' and/or court's intention. *Pruzinsky v. Gianetti (In re Walter),* 282 F.3d 434 (6th Cir. 2002)(bankruptcy court entered order that was not in accordance with the court's intention; motion to modify the order under Rule 60(a) granted); *see also* 12 Moore's Federal Practice, §§ 60.10, 60.11 (Matthew Bender 3d ed.).

15.     As the Sixth Circuit has explained,

> Stated differently, a court properly acts under **Rule 60(a)** when it is necessary to correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial. In that regard, when a court has undertaken to make the judgment or record speak the truth rather than something other than what was originally pronounced the court has not abused its discretion in granting relief under **Rule 60(a)**.

*In re Walter*, 282 F.3d at 440-41.

16.     The Sixth Circuit has also indicated that it's the intent of the court ruling on the requisite order, at the time of the original decision, that controls whether the modification corrects a mere clerical error. *Id.* at 441.

17.     This Court has already indicated that it intended for the Adversary Proceeding Procedures Order to reference Rule 4(e) of Rules of Civil Procedure and not 4(m).  Specifically in a hearing in these cases on December 21, 2010, when counsel for the Trustee alerted the Court of the issue, the Court stated "Yes, I understand that.  So, we can get that taken care of because

that certainly was not the intention, and obviously I missed that when I entered the order."

Hearing Transcript, p. 18.   A true and correct copy of the relevant portions of that hearing

transcript are attached hereto as Exhibit B.

18.      Furthermore, based upon the Court's comments at the Hearing on November 4,

2010, the Trust submits that the Court also intended that any hearing on the pretrial motions

referenced in paragraph G of Exhibit A shall occur only after mediation.  For example, the Court

stated that the mediator who will handle mediation of a given adversary proceeding "can address

issues that would be raised under [motions to dismiss] . . . and that the mediator can resolve

those much less expensively – if they're valid concerns being raised – than if the parties were to

come here and we were to engage in extensive motions practice at the front end."  Hearing

Transcript, p. 38.  A true and correct copy of the relevant portions of that hearing transcript are

attached hereto as Exhibit A.  Furthermore, the Court acknowledged the likelihood that

defendants would file motions to dismiss and that mediators could resolve the issues involved in

motions to dismiss less expensively than could the Court "if the parties were to come here [to

Court] and we were to engage in extensive motions practice. . . ."  *See* Hearing Transcript (at

Exhibit A), p. 38.

19.      To the extent the Court, at the Hearing and upon entry of the Adversary

Proceeding Procedures Order, intended that (a) the reference in paragraph B of Exhibit A to Rule

4(m) of the Federal Rules of Bankruptcy Procedure instead should have referenced Rule 4(e) and

(b) hearing on the pretrial motions referenced in paragraph G of Exhibit A shall occur only after

mediation, the Trust respectfully requests that the Court correct the mistakes as permissible

under Rule 60(a).   Furthermore, to the extent the order attached hereto as Exhibit C reflects the

Court's intent, the Trustee respectfully requests that the Court enter the same.

**NOTICE**

20.      Notice of this Motion has been provided to those parties who have requested

notice pursuant to Bankruptcy Rule 2002, the core group (as defined in the Supplemental Order

Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local

Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and

Administrative Procedures (Docket No. 6208; the "Case Management Order").  The Trustee

submits that, under the circumstances, no other further notice need be given.

**CONCLUSION**

21.      WHEREFORE, the Trustee respectfully requests that the Court enter an order

substantially in the form annexed hereto, granting the relief requested herein and such other

relief as is just and proper.

Dated: Richmond, Virginia
January 26, 2011

TAVENNER & BERAN, PLC


_____/s/ Paula S. Beran_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

- and –

Robert J. Feinstein, Esq.
John A. Morris, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 08-35653 (KRH) |
| | . | |
| | . | Chapter 11 |
| | . | Jointly Administered |
| CIRCUIT CITY STORES, | . | |
| INC., et al., | . | 701 East Broad Street |
| | . | Richmond, VA 23219 |
| | . | |
| Debtor. | . | |
| | . | November 4, 2010 |
| . . . . . . . . . . . . .. | | 1:30 p.m. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Tavenner and Beran, PLC
                         By:  PAULA S. BERAN, ESQ.
                              LYNN L. TAVENNER, ESQ.
                         20 North Eighth Street, 2nd Floor
                         Richmond, VA 23219

                         Pachulski Stang Ziehl and Jones LLP
                         By:  ANDREW W. CAINE, ESQ.
                         10100 Santa Monica Boulevard
                         Los Angeles, CA  90067-4100

For Kimco Realty Group   Christian and Barton LLP
and Inland Groups:       By:  A.C. EPPS, JR., ESQ.
                         909 East Main Street, Suite 1200
                         Richmond, VA 23219-3095

For DIRECTV:             Williams Mullen
                         By:  W. ALEXANDER BURNETT, ESQ.
                         200 South 10th Street, Suite 1600
                         Richmond, VA 23219

Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311   Fax No. (609) 587-3599**

1          COURTROOM DEPUTY:  All rise.  United States

2     Bankruptcy Court for the Eastern District of Virginia is now in

3     session.  The Honorable Kevin R. Huennekens presiding.  Please

4     be seated and come to order.

5          COURT CLERK:  In the matter of Circuit City Stores,

6     Incorporated, hearing on matters as set out in proposed amended

7     agenda.

8          THE COURT:  All right, Ms. Beran.  Let me apologize

9     to you for that interruption.  Apparently, the recording system

10    had stopped completely.  So, unfortunately, everything you've

11    already said is not on the record and you may want to start

12    over.  I'll let you repeat anything you think you really want

13    on the record.  Obviously, I heard what you said and so I'll

14    leave it to your discretion, you know, how you want to restart

15    this matter.

16         MS. BERAN:  Thank you, Your Honor.  May it please the

17    Court.  Once again, for the record, Paula Beran of the law firm

18    of Tavenner and Beran, as well as Lynn Tavenner of Tavenner and

19    Beran.  We are here before Your Honor as counsel for the

20    Circuit City Stores, Inc. Liquidating Trust acting through its

21    trustee, Alfred H. Siegel.  Also with us today from a counsel's

22    perspective on the telephone is Mr. Andrew Caine of Pachulski

23    Stang law firm.

24         There is one matter in these bankruptcy cases before

25    Your Honor this afternoon and that's the motion for an order

1  establishing procedures for avoidance action adversary

2  procedures.   In connection with that, Your Honor, there were

3  four responses filed.   As previously indicated to the Court, I

4  will address the concerns raised in each of those responses in

5  connection with my context of explaining to the Court the

6  procedures as proposed, the basis for the same, and any slight

7  modifications that we would represent to the Court and would

8  address in connection with the order, and the modifications

9  really go more to misinterpretations and/or unclarity based on

10 reading responses of that's not really what was intended kind

11 of modifications.

12         To start off with though, Your Honor, we -- the trust

13 does want to let the Court, as well as all parties in interest

14 in these bankruptcy cases, know that the trust doesn't believe

15 that there's just one set of correct procedures.   Furthermore,

16 the trust is very sympathetic to the concerns raised by the

17 respondents and/or are there any other concerns that may be out

18 there.   In fact, you know, till about Sunday evening, many of

19 these respondents were constituents of the counsel for the

20 committee who was on the line, as well as standing before you.

21 So, we're sympathetic.

22         We're trying to accommodate but at the same time the

23 trustee acting on behalf of the trust does have fiduciary

24 duties to these estates and in connection with the same, the

25 trust does believe that the set of procedures before Your Honor

4

1   makes the most sense subject to the modifications I will talk

2   about, under the circumstances of these cases.  That's not to

3   say that they were the best in other cases and that other

4   procedures haven't worked in other cases.  We're confident they

5   have and, in fact, both my law firm and our co-counsel's firm

6   has been involved under different procedures, but we tried to

7   modify and/or adjust accordingly, given the circumstances of

8   these cases.

9        With that being said, Your Honor, first and foremost,

10  we would make it clear that all of these procedures would be

11  without prejudice for a defendant to come in and seek

12  modifications for cause.  But, given the very fact of these

13  fiduciary duties of the trustee that I speak of, as well as

14  that, at this point in time, Your Honor, it looks like there

15  could be up to or even over 600 adversary proceedings.  We

16  believe it more appropriate to have procedures in place for all

17  and then let the exceptions come back to Your Honor for -- to

18  seek additional relief.

19       Briefly, Your Honor, the procedures provide for a

20  case-specific summons as Your Honor's well-aware.  Summonses

21  that are normally issued in this Court provide a pretrial, as

22  well as some other things.  We would propose that has been used

23  -- a summons that has been used in other cases where there have

24  been a number of adversary proceedings filed -- what commonly

25  we practitioners refer to as a case-specific summons.  In

1  addition, Your Honor, given the volume of the cases, the

2  procedures propose that there will be additional time in which

3  to serve the summonses.  And then in connection with service of

4  the summons, to be fair to the defendants, the procedures

5  provide that the answer period would be based upon the issuance

6  of the summons and not -- I mean, the service of the summons

7  and not the issuance of the summons.

8        Similarly, Your Honor, the procedures provide that

9  the parties can stipulate to an extension of time for the

10  defendants to respond to the complaint without having to come

11  in to Your Honor and seek leave of Court each and every

12  instance.  But, it's a set period of time because in all fair

13  candor to the Court, we recognize that we are proceeding in the

14  Eastern District and the fact that the Eastern District is

15  notorious and think that it -- for good reason -- to move cases

16  along.

17        In connection with these procedures, Your Honor,

18  there is also a stay of requirement to conduct scheduling

19  conferences under the Rule 26(f), as well as the requisite

20  local rules.  I think that makes sense in connection with the

21  next phase of the procedures that I will discuss, specifically

22  the mediation procedures.  Similarly, Your Honor, there is a

23  provision that stays discovery for a period of time to allow

24  mediation to move forward and, thereafter, if mediation is not

25  successful or if the cases are not otherwise settled, then

6

1 under certain triggers, they're -- the discovery is then

2 triggered.

3      Once again, Your Honor, we are not standing before

4 you saying there will never be an exception to that rule.

5 There could be instances where there may be a need to have some

6 discovery, but what we're saying, this is all once again

7 without prejudice for a party to come in and, for cause, seek

8 modification.

9      The mandatory mediation procedures, Your Honor,

10 they're -- we tried to balance the need for specificity, as

11 well as recognize that flexibility is beneficial, as well.

12 But, we did want all parties to know, in essence, the rules of

13 the game, but with the hopes that everybody would be flexible

14 and do it in a manner that was mutually beneficial to the

15 parties so that mediation either could be successful on a

16 cost-effective basis and/or at a point in time when mediation

17 was not, we could move to the other stages of litigation.

18      So, in connection with the same, Your Honor, within

19 60 days after the defendant has filed its response, there needs

20 to be mediation having been commenced, specifically that would

21 be agreeing to a mediator.  And the counsel has proposed a list

22 to Your Honor but we would respectfully submit to the Court

23 that, you know, that list is a proposed list.  It is a

24 Court-approved list.  We do believe that the list is

25 representative of all parties' interests.  Your Honor, I think,

7

1  is aware of most of the people, if not all the people, on that

2  list.  We tried to get people from smaller firms, as well as

3  larger firms.  Nonetheless, we believe everybody on that list

4  does have significant experience in the avoidance action area

5  and believe that any and all of them would be excellent

6  mediators in connection with the adversary proceedings that we

7  intend to file here and starting more than likely this

8  afternoon.

9         There is a -- our drafting does seem to have let a

10  bit of misinterpretation, specifically where it says, "If any

11  defendant does not timely select a mediator, then the plaintiff

12  shall promptly assign a mediator to the case and so notify the

13  defendant."  That was really addressed at, Your Honor -- to the

14  extent, the defendant -- we hadn't heard from a defendant.  So,

15  to make it abundantly clear, that would be the case if we don't

16  hear from a defendant.  However, if it's an instance where the

17  defendant wants one mediator and the plaintiff believes that

18  another mediator would be beneficial, we would submit we'll

19  agree to the defendant's mediator because I just represented to

20  your Court and surely believe it, all the mediators on the

21  proposed list are excellent mediators and we'd be happy with

22  any one of them.  So, that would be one thing that we would

23  want to make clear.

24         In addition, Your Honor, then there are additional

25  procedures for mediation.  At least ten days prior to the

1    scheduled mediation, the parties shall exchange position

2    statements and shall submit the statements to the mediator.

3    The position statements have a specific length to them and the

4    mediator at his or her discretion may require additional

5    information after receiving the papers.  The mediator's fee

6    shall be split equally by the parties and payment arrangement

7    satisfactory to the mediator must be completed prior to the

8    commencement of the mediation.

9         The mediator will preside over the mediation with the

10   full authority to determine the nature and order of the

11   parties' presentations.  In addition, once again, in the need

12   to try and be flexible, the mediator may implement additional

13   procedures which are reasonable and practical under the

14   circumstances, recognizing that there isn't one fit for

15   everything.  We've tried to have some flexibility in connection

16   with the same.

17        The parties will participate in the mediation as

18   scheduled and presided over by the mediator in good faith and

19   with a view towards reaching a consensual resolution.  In

20   connection with the same, we want to make it clear that there

21   shall be people with authority to settle at the mediations.

22   However, to the extent the mediator believes that it's

23   necessary and/or appropriate, once again building in some

24   flexibility, the mediator at his or her discretion may allow a

25   party represented to appear telephonically.

1          The -- once again, Number 6 just provides for some

2   flexibility as it relates to the mediator's conduct of the

3   respective mediation.  All proceedings and writings incident to

4   the mediation will be considered privileged and confidential

5   and should not be reported or admitted into evidence.  We want

6   to encourage openness and candor in connection with trying to

7   get to a resolution.

8          The mediation must be concluded no later than 120

9   days after the date in which the debtor -- excuse me -- the

10  defendant has filed its response to the complaint.  And

11  similarly, Your Honor, then there is Number 9, provides certain

12  mechanisms to the extent anybody's abusing the process to come

13  in before Your Honor and seek some type of summary judgment

14  and/or a motion to dismiss.  Within ten days after the

15  completion of the mediation, we have a trigger mechanism

16  proposed so the mediator will file a report and that report

17  then can trigger some other events, specifically the scheduling

18  of pretrial conferences and other things associated with

19  discovery and the like.

20         That concludes specifically the mediation-type

21  procedures that are being requested today.  In addition, Your

22  Honor, there are some additional procedures related to these

23  adversary proceedings, specifically that pretrial scheduling

24  conferences and motion hearing dates will be on dates that are

25  omni dates established with the Court's scheduling clerk, so

1  that all parties know that up front and aren't anticipating

2  having to come in at some other date.

3          In addition, Your Honor, we do seek the relief that a

4  motion affecting all adversary proceedings may be filed in the

5  main case, as opposed to in each individual adversary

6  proceeding, with the caveat that notwithstanding that it's

7  filed in the main case, all defendants shall receive notice of

8  that pending motion.  In addition, Your Honor, they want to

9  make it abundantly clear that the Court's -- unless

10 specifically overridden by these procedures, the Court's case

11 management order as amended will still remain in full force and

12 effect.  And finally, Your Honor, we have a requirement that

13 these procedures -- notice of these procedures and the

14 procedures themselves must be served with -- served on each

15 defendant with the summons and complaint in each adversary

16 proceeding so that everybody knows the rules of the game.

17         In connection with the responses, Your Honor, and

18 instead of going through each response, because some of them

19 have overlapping issues, I've kind of tried to lump them

20 together to address each accordingly.  In connection with the

21 mediation, when it wasn't explicitly clear in that -- it is

22 contemplated, Your Honor, for the most part, that these

23 mediations will take place in Richmond.  In connection with

24 that, we -- the trust believes that's the appropriate.  These

25 cases are pending here.  The trust representatives are many of

1  the former employees of the debtor -- not -- most of the trust

2  representatives are former employees of the debtor so they're

3  here in Richmond.  Your Honor, we've also in discussing with

4  the proposed mediators -- there's an agreement that they will

5  not be charging for actual travel time.  So, for those reasons,

6  we are contemplating that most of them will be in Richmond.

7       Once again, though, Your Honor, we would emphasize

8  that we are flexible and we will work -- and if it makes sense

9  and it's in the best interest of the estate to agree on a

10  one-off basis to have these mediations held someplace else, we

11  represent to Your Honor that we will do that.  But, it has to

12  be in the best interest of the estate.  I would also add, Your

13  Honor --

14       THE COURT:  Well, the party -- when you were talking

15  about earlier that these procedures would be without prejudice

16  to any party seeking modification for cause, if there was a

17  disagreement between the trust and the party, would the party

18  be free to file a motion with the Court to ask that the

19  mediation be conducted in some other place?

20       MS. BERAN:  Absolutely, Your Honor.  At that point in

21  time, if there was an agreement on that, absolutely.  And I

22  would note for Your Honor in connection with that, one of the

23  mediators on the list, whether he -- if he's an approved

24  mediator -- did let us know that he does have offices in

25  California.  And he would not charge for his travel time if it

 1  makes sense to do it out on the west coast.  In addition --

 2          THE COURT:  Which one was that?

 3          MS. BERAN:  That is Mr. Wasserman --

 4          THE COURT:  Okay.

 5          MS. BERAN:  -- of the Venable firm.

 6          THE COURT:  Very good.  Thank you.

 7          MS. BERAN:  But, he specifically contacted us and

 8  informed us of that and asked -- indicated that we would make

 9  the same representation to the Court.

10          THE COURT:  Thank you.

11          MS. BERAN:  Based on that, Your Honor, we believe

12  we've addressed the concerns and either addressed them and/or

13  have taken consideration of them and believe that the

14  procedures we've proposed are appropriate under the

15  circumstances and -- but are, of course, willing to modify as

16  the Court deems appropriate.

17          Similarly, Your Honor, and I guess this is maybe the

18  overlapping -- most overlapping issue is the proposed cost

19  sharing with this kind of overlying theme that these are

20  -- it's being proposed as a leverage issue.  In fair candor,

21  Your Honor, it was not contemplated as a leverage issue.  We

22  don't believe it is a leverage issue.  At the end of the day,

23  if it ultimately does play a role, it was not the intended

24  role.  The reason why we did that, Your Honor, is -- proposed

25  it or suggested it, is the trust -- the trustee acting on

13

1  behalf of the trust has a fiduciary duty now to maximize return

2  to creditors.  And part of that is minimizing costs.

3        It's not like the trust, through the trustee, is

4  going to go out there and sue on frivolous causes of action.

5  Unfortunately, whether we like it or not, Congress has said

6  under certain circumstances, this is a preference and they

7  should be looked at, examined, and if it makes a cost benefit

8  to the estate to pursue, they should be pursued.  So, yes, we

9  concede -- I don't think there would be anything other than

10 conceding -- that we will be the ones -- the plaintiff will be

11 the one suing, but nonetheless it's suing based on something

12 that Congress thought appropriate.

13        I can also represent to Your Honor here -- and while

14 this is not in the pleadings, I can represent it myself as

15 having reviewed a substantial number of these pleadings now, as

16 well as then, in discussions with co-counsel, as well and

17 representatives of the trust -- that the suits that will be

18 filed here, starting shortly.  There is a $20,000 combined

19 exposure.  And when I say 20,000 combined exposure, it's

20 preference plus AR of 25 of exposure.  And specifically, when

21 we say preference, that has been vetted for new value, so it's

22 net of new value.

23        So, the concerns that we may be suing for something

24 just over the statutory limit provided by Congress in a manner

25 that isn't cost efficient or cost effective is, while I

1  understand, may have been a concern without information or

2  knowledge, I -- based on the representation, that's not going

3  to happen.  It's not like there's going to be a 10,000 suit

4  where there's 9,000 of potential new value and we're trying to

5  extract something for something more.

6       Your Honor, in fair candor, we will concede that in

7  other jurisdictions and other cases that there isn't the

8  sharing.  There are -- there is sharing in other jurisdictions

9  and we believe under the circumstances before Your Honor and

10 under these cases that this sharing makes the most sense.

11      Many of the -- I think it's three of the four

12 respondents indicated that there should be some type of opt-out

13 procedures, and I think there were really two categories of

14 opt-out procedures suggested, one for smaller matters.  There

15 should be a threshold of which the mediation is not required.

16      Well, in all fair candor, I think we could stand up

17 here before Your Honor and argue back and forth.  In some

18 respects, it's those cases that even need mediation sometimes

19 more so than the larger ones because unfortunately in those

20 situations, you're dealing with a client maybe who doesn't

21 understand the nuances associated with preference law, who says

22 this is wrong.  What are you telling me?  I'm owed money from

23 this entity and now I have to give some money back?  I mean,

24 Your Honor has experienced that, I've experienced -- everyone

25 in this courtroom has experienced that.  And sometimes, it is

1    just beneficial for an independent third party to look at your

2    client and say, unfortunately, although it's unfair that is

3    what the bankruptcy code provides.  So, we respectfully submit

4    that there really doesn't need to be specific out-out or a

5    threshold issue for the smaller matters, especially given what

6    my representation of those suits that are going to be filed in

7    general.

8            Similarly, Your Honor, there is some concern that

9    there should be opt-out procedures for larger, more complicated

10   cases that might not all otherwise be amenable for mediation.

11   Once again, Your Honor, we're here before you saying we want to

12   come up with procedures and establish procedures for the

13   majority of the cases.  We recognize that there may be unusual

14   circumstances where mediation just is not going to work, and

15   under those circumstances, once again, Your Honor, we've said

16   this is without prejudice for a party to come back in to Your

17   Honor and explain why it just doesn't make sense in this one

18   instance.

19           Another category of concern and/or objection is the

20   concept of staying discovery and the procedures really do

21   intend or try to encourage informal discovery, informal

22   exchange of information.  And from the plaintiff's perspective,

23   that's the only way mediation works, is that that information

24   is exchanged voluntarily.  Let's get it before we have a lot of

25   expenses associated with depositions, drafting of

1    interrogatories, request for admissions.  Let's informally

2    exchange the information and that, kind of, is the concept

3    behind Rule 26.  It's the concept -- this concept of good

4    faith, good faith, exchange that information.  Rule 26 provides

5    for that.  Our local Rule 726 provides for that, as well as our

6    local Rule 9013.  All of those rules talk about this concept of

7    good faith.  And we represent to Your Honor that the plaintiff

8    absolutely will stand before you in every instance, exercising

9    that same good faith and that's what these procedures are

10   intended to encourage and facilitate.

11           But, finally, Your Honor -- and I don't mean to keep

12   beating a dead horse -- once again, though, if under

13   appropriate circumstances it makes sense for there to be some

14   formal discovery before the mediation, it's without prejudice

15   to any party to come back in before Your Honor and explain

16   those -- the circumstances which would warrant the same.

17           In addition, Your Honor, there was a concern that the

18   exchange of the position statement should be not just to the

19   mediator but should be shared between the parties.

20   Understanding that's done in other mediations, understanding

21   that sometimes mediators prefer that, we would respectfully

22   submit in all humble experience when you have that exchange,

23   the document becomes more of a posturing statement and you're

24   not as willing to show that you recognize your weaknesses

25   and/or strengths and it's mainly -- we have all these

1 strengths.  And we would respectfully submit that parties may

2 be more -- and their counsel may be more inclined to get to the

3 heart of the matter by exchanging those between counsel and the

4 parties, as opposed to just submitting them to the mediator for

5 his or her eyes only.

6          There were concerns that some of these procedures may

7 be premature.  We would respectfully submit once again that

8 they're not premature.  In fact, Your Honor, more than likely

9 as soon as an order is entered, there will be adversary

10 proceedings starting to be filed.  And we need procedures in

11 place before the adversaries are filed, for example, and, you

12 know, like we discussed of the summons.  If procedures aren't

13 in place, the normal Court's procedures are going to issue the

14 summons pre-trial until we have a modified summons, a modified

15 answer.  The trustee, asking on behalf of the trust, thought it

16 was inefficient to address certain of the procedures now and

17 others of the procedures after the filing of the complaints,

18 and therefore, we respectfully submit that the procedures are

19 not premature, that they're actually ripe and should be

20 considered and approved by Your Honor.

21          Finally, Your Honor, I think -- and I'm summarizing

22 -- I mean, I'm happy to address any concerns raised after each

23 of the respondents stands up, but I think the last category of

24 issues raised in the responses were that there appeared to be a

25 short timetable to accomplish all the mediations that needed to

18

1  happen.  The 60-day window was too short and that something

2  more along the time line of 90 was necessary.

3         Your Honor, we recognize it's a short timetable.

4  We're cognizant of that.  While we all would like more time, in

5  fair candor to the Court, we recognize these cases are going to

6  be pending in the Eastern District and the Eastern District

7  does like to maintain control over the docket and move the

8  docket along.  And we thought it appropriate given the fact

9  that there have been extensions to otherwise normal rules in

10 the Eastern District that a 60-day time line was appropriate.

11 I can tell you this, that the mediators -- we have discussed

12 with all of the mediators except one but we spoke with someone

13 in his office and they are ready, willing and able so we

14 believe we have enough mediators in place to handle the volume.

15 The trust representatives will be available and counsel from

16 the plaintiff's perspective will be available to answer

17 questions, return calls and the like to make this process be as

18 efficient as possible.

19        But, under the extraordinary circumstance, once

20 again, if there needs to be some additional flexibility for

21 whatever reason, the mediation hasn't occurred, it's without

22 prejudice for either the plaintiff or the defendant to come

23 back in -- or maybe both -- to come back in before Your Honor

24 and explain why additional time may be necessary to finalize

25 and/or conclude mediation.

1           With those addressed, Your Honor, we respectfully

2     submit that based -- with the modifications as proposed to

3     clarify intent on procedures and make sure everyone's on board,

4     that the procedures before Your Honor are warranted and the

5     best under the circumstances currently before Your Honor.

6           THE COURT:  All right.  Before you sit down, one of

7     the things I would like you to address, you -- when you were

8     talking about the fee splitting requirement and some of the

9     objections been raised there, too.  I believe it was the Inland

10    Managing and the entities had proposed in the alternative that

11    if the defendant was the ultimate prevailing party in any

12    subsequent adversary proceeding trial that they get the

13    mediation fees reimbursed.  What would the estate's position be

14    on that type of a modification?

15          MS. BERAN:  Well, first and foremost, Your Honor,

16    from the estate's perspective is the estate through, you know

17    -- its professionals are analyzing these.  Now, in connection

18    with the actual causes of action, you can analyze that.  In

19    addition, as Your Honor knows, you can analyze some of the

20    affirmative defenses but you can't completely analyze all of

21    the affirmative defenses.

22          And so, from the first -- for the first perspective,

23    it would seem that if it was on an affirmative defense that

24    wasn't otherwise known or should have been known to the estate,

25    that would seem to be -- of course, establishing up front that

1   there is a basis to have the cost splitting be the procedure

2   -- that would seem to cut across the rationale.  But,

3   nonetheless, I can represent to Your Honor that, to the extent

4   that -- we're here.  We're trying to meet fiduciary duties and

5   make sure that the trust acting on -- trustee acting on behalf

6   of the trust is meeting his fiduciary duties.  If it's -- the

7   Court believes it's appropriate that there be that type of

8   provision, the trustee absolutely would agree to the same,

9   because -- but at least at that point in time, he has at least

10  exercised fiduciary duty and has been told by an appropriate

11  authority that now there will be some type of cost sharing.

12              THE COURT:  All right.  Thank you.

13              MS. BERAN:  Mm-mm.

14              THE COURT:  All right.  Does any party wish to be

15  heard in connection with the motion?  Mr. Epps?

16              MR. EPPS:  Good afternoon, Your Honor.  A.C. Epps,

17  Jr. -- excuse me -- on behalf of two different groups of

18  objectors.  I am here for the Kimco Realty Group.  I am also

19  here on behalf of my associate, Jennifer McLemore, with regard

20  to the Inland Group which was filed by her.

21              Your Honor, I will try not to be scattershot in my

22  approach about this, although to a certain extent by necessity

23  the pleadings themselves were somewhat scattershot, picking and

24  choosing things that we wanted the Court to refer to.  I hope

25  the Court will understand that if I skip something in the oral

1 argument that is in our pleading it is mostly out of time

2 pressure and not because I have laid it by the side of the road

3 because there are a couple of things I particularly want to

4 talk about.

5         First and foremost, Your Honor, a fundamental problem

6 with these procedures is the mediation costs.  I don't blame

7 the trustee for giving this a go, to try not only to sue 600

8 people in a week, but -- and not only to require that they go

9 to mediation which I'm not necessarily against, but to say, and

10 by the way, I'm suing you and you will have to pay half of the

11 mandatory mediation and you will have to make satisfactory

12 arrangements for payment with the mediator before you have a

13 mediation and if the mediation doesn't occur in a given period

14 of time, we're going to seek a default judgment against you.

15         I think that while bankruptcy is -- has many judges

16 in many courts and I suspect it's true that the trustee may be

17 able to find a Court -- indeed I think Mr. Schwarzschild's

18 pleading has a Court.  I think Collins and Aikman did this and

19 split the mediation cost.  The overwhelming weight of cases has

20 said what Judge Walrath's general order in Delaware says, which

21 is you debtor, you liquidating trust, you owner of the rights

22 to bring these avoidance suits are bringing them, you're doing

23 the weighing of them, and you will pay the mediation costs.  I

24 think that that is appropriate but I think it's fair and I

25 don't think the other approach is fair.  They're the ones who

22

1  need to weigh the cases and decide which ones to bring and if a

2  case is worth bringing and it needs to be mediated, they should

3  pay the mediation fee.

4          I realize this is not Delaware.  There's only one

5  Delaware, but they sure do have a lot of experience in things

6  like this.  But, in case the Court wants to refer to a

7  non-Delaware case with hundreds of these cases filed at the

8  relative last minute that isn't a Delaware case, I refer the

9  Court to the <u>Tousa</u> case with Judge Olson in the Southern

10 District of Florida in which I don't know how many hundred

11 cases that were brought in that case.  The number 1200 sticks

12 with me but I don't have the number.  But, he was not buying a

13 ticket to this sharing half and half.  Indeed, the debtor in

14 that case actually didn't even have the nerve to ask for it,

15 because the logic is overwhelming, that the evaluation process

16 is improved by only bringing cases where the plaintiff believes

17 enough to pay for the mediation.

18         And I don't think that this Court needs to set some

19 unfortunate precedent in this particular case.  The other

20 procedures work perfectly well.  That -- it doesn't take a

21 rocket scientist to know that the evaluation process would be

22 more thorough if that were the case.  It also -- this Court has

23 practiced law.  The Court really knows that if the barriers

24 raised in your defense is higher, then the leverage for

25 settlement on the plaintiff's side is greater.

1            THE COURT:  What kind of evaluation process do you

2    want the trustee to do?  I mean, he came into existence on

3    Monday of this week.

4            MR. EPPS:  Well, Your Honor, this case is in a hurry

5    now, because the two-year anniversary is coming.

6            THE COURT:  And a lot of that was delayed because of

7    the Canadian proceedings and having to coordinate with Oran

8    proceedings and the like.  That's not right at the trustee's

9    doorstep, is it?

10            MR. EPPS:  I don't disagree.  It's not the trustee's

11    fault, necessarily.  But, we -- I think it was a ten-month

12    break.  It certainly was nine or ten months.  And I have a hard

13    time thinking that the debtor -- remember the debtor plan might

14    not have been confirmed and the debtor might have to have

15    brought these things -- that it isn't appropriate to think that

16    someone would have thought of these cases during the ten-month

17    period between when the plan was proposed and when we finally

18    went to confirmation in this case.  They are the debtor's

19    causes of action until a plan assigns them to someone else.

20            Now, it is perfectly possible that we could be here

21    today instead of on this, we could be here on the confirmation

22    date, because Canada wasn't sorted out yet.  And I don't think

23    it's appropriate to say that the debtor shouldn't have been

24    doing this.  Someone should have been doing this and indeed I

25    think someone was doing this.

24

1         But, nonetheless, I think that there is no particular

2    reason to change what I believe to be the established rule in

3    these cases, although there's an exception to almost

4    everything, which is that the trust, that the estate, that the

5    debtor pays the mediation cost.

6         THE COURT:  Well, Ms. McLemore suggested in her

7    pleading that maybe the better way of doing it would be that

8    those expenses would be reimbursed if, in fact, the plaintiff

9    -- or the defendant was the prevailing party in the adversary

10   proceeding.  Why wouldn't that be a more appropriate backstop

11   in order to resolve this?  It's basically the same question I

12   asked Ms. Beran.

13        MR. EPPS:  Well, I think that the -- that situation

14   does -- has two problems.  One is as this Court knows five

15   percent of these go to trial, four percent, six percent, some

16   very small number.  Any negotiation, even where it is proved

17   that the trust has essentially, I won't say no case, but their

18   defense is to cover the entire case so that the liability is

19   zero, is going to be settled out and that's going -- a waiver

20   of that clause is going to be part of the settlement.

21   Otherwise, the trust is going to say, let's go.  We have

22   nothing to lose at that point.  They're getting paid.  They've

23   got nothing to lose if someone on our side says we're down to

24   zero and we want you to pay the cost of mediation.  Absolutely

25   nothing to lose.

25

1           And while both of those pleadings were filed by us

2   -- one with our local counsel and the second one with mine -- I

3   don't think that it's appropriate to wait till the end of the

4   line to determine that.  I think that's maybe a fall back

5   position but I don't think it's the right position.  The right

6   position is Judge Walrath's position, which is they're bringing

7   the case, they're picking and choosing, they pay the mediation.

8           Now, settlements may say you're going to pay 20

9   percent of your liability and the settlement is going to add to

10  it as the required term, half of the mediation cost.  That

11  could be a subject for settlement discussions.  But, you're

12  clearly talking about leverage here and I think the leverage

13  platform needs to be level.  I don't think it's appropriate for

14  the Court to go off and give this extra bonus which most Courts

15  don't.

16          I'd like to go ahead with the others.  I'm happy to

17  answer all the questions the Court has but I -- that's the

18  strongest objection we have and I think it's a big, big thing.

19  And I do direct the Court to Judge Olson's order in which

20  -- it's non-Delaware if the Court doesn't want to read the

21  little -- saying if Delaware does it, we must do it.  There are

22  others that are doing it too and I recommend Judge Olson in

23  that respect.

24          Your Honor, I appreciate Ms. Beran's representation

25  as to the de minimis exception to the mediation requirement.

1  Whether it's at the right level or not is something that I

2  haven't exactly been able to react to because I just heard

3  about it.  But, I do want to point out what the costs of

4  mediation are going to be to a defendant.  Now, if I represent

5  a defendant who is sued for a net preference of $21,000, I

6  think it's fair to say that the mediation cost including the

7  statement and so forth while it might cost less than $5,000 to

8  get ready for the mediation and do it, the Court knows that it

9  very easily might not.  So, I have picked $5,000 as a

10 reasonable effort for purposes of my discussion today.

11        There needs to be someone here from out of town

12 unless there's a waiver, someone who can make a decision not to

13 mention that person is out of the office for that day.  I

14 realize that you can apply to the mediator for a waiver from

15 that and I would hope that the mediators would be reasonable in

16 that regard.  But, there's no requirement that the mediator

17 agreed to that.

18        THE COURT:  Well, according to Ms. Beran, you get to

19 pick which one of the mediators you want.

20        MR. EPPS:  But, I can't ask him that question before

21 I pick him.  I can't take a poll to see who will let my person

22 stay in Pocatello, Idaho, but I'll have to take my chances.

23        THE COURT:  But, I assume you know all of the six --

24 the bulk on that list, as well as I do.

25        MR. EPPS:  Well, I do.  But, I don't know the answer

27

1    to that question.  I do know all the mediators and I have no

2    objection to the mediation list, at all.  I'm quite pleased

3    with the mediation list.  But, I have attributed to that the

4    cost of someone being here for day and someone traveling here

5    for the day and so forth, another $2,000.  I have not added

6    half the cost of the mediator in the hopes that the Court will

7    not adopt the trustee's approach in that respect.  But, I think

8    it is inconceivable that half a share of a mediation is going

9    to be less than $1500 and it could be a great deal more.  Some

10   of the people on that list are quite expensive and I would hope

11   the smaller cases would not get the most expensive mediators.

12           But, nonetheless, even the numbers that I have given

13   you, now we have a $21,000 case and its $8,000 should get past

14   the mediation.  Well, the trustee calls you up and said you've

15   got to go to mediation but I'll take five to let you off the

16   hook.  Now, that's even without evaluation of the underlying

17   merits of the case.  You know, you've got a $21,000 case and

18   you've got 8,000 some to go through a mandatory mediation.  I

19   think the level is too low.  These smaller cases are not going

20   to be that hard.  There may be a hundred of them.  We haven't

21   seen them but there may be a bunch of them that are small.

22   But, they're not that hard.  And the barriers to get to a

23   decision there are very, very high as I think I've outlined.  I

24   don't think I've used inappropriate numbers for that, at all.

25           So, I suggest to the Court that it suggest to the

28

1   trustee maybe the mediator -- the de minimis level is too low.

2   But, I appreciate the gesture on their part and I -- we may get

3   somewhere with that.

4           Your Honor, I note that the Delaware order requires

5   that documents be submitted -- the initial documents under Rule

6   26 before the mediation.  I worry about going to mediation

7   without knowing what's in the other side's briefcase.  It just

8   makes the mediation harder.  I realize there can be under these

9   restriction -- I mean, under these procedures, a voluntary

10  swap.  I don't know what that's going to mean in real life.  I

11  trust Ms. Beran on that completely but I really don't know what

12  that means.

13          THE COURT:  Well, with all these cases being filed,

14  doesn't it make much more sense to let the parties try to, you

15  know, resolve the matter through mediation without having to

16  incur all the expense of the discovery process?  Because that

17  -- the discovery is what makes litigation so very, very

18  expensive and let's avoid that.  Let's let people do it on a

19  voluntary basis.  If it's not working, then in the exceptional

20  case, the parties can come back and come to the Court and say,

21  Judge, we want you to order -- you know, to allow discovery in

22  our particular case because we're not getting what we need and

23  then I can do that on an expedited basis, whatever's necessary

24  in order to move the matter along.  But, why isn't that the

25  better approach --

1          MR. EPPS:  It may be --

2          THE COURT:  -- so that you don't add to your $8,000?

3          MR. EPPS:  It may be, as long as there is flexibility

4   in that case on the back end of when we have to be finished by.

5   I think that may be perfectly acceptable as a way to deal with

6   it.  Once again, I am a little worried about the 26(a)

7   documentary disclosures in the small case may actually get rid

8   of your small case.  And I would hope if it's going to be

9   voluntary only, which is, as I say, contrary to the way some

10  Courts do it, that it's freely volunteered because otherwise we

11  won't know sometimes what it is until we have to go to the

12  mediation and as I said the barriers to getting through that

13  mediation are quite high for someone with a 20 to $30,000 claim

14  situation.

15         That's the only reason I think we ought to get

16  documents beforehand as a matter of procedure.  Now, if the

17  Court is going to see us really quickly and without briefs and

18  long pleadings on this -- remember, once again, we're talking

19  about the small and medium-size cases -- I think that would

20  work.

21         But, I think that the Court needs to understand the

22  problem.  And the problem is that the mediation is very

23  expensive compared to a small claim.  And the more we can learn

24  about it, if we've got to do it at a given level, at least we

25  will know.  You don't want to go in the other room not knowing

30

1  what the other side has in its briefcase.  It just doesn't

2  prepare your client for what he needs to do among other things.

3         A couple of other things, Your Honor.  The

4  requirement that the mediation be -- commence 60 days after the

5  responsive pleading is filed, it is fine as far as it goes.

6  This Court likes to keep its docket going.  We -- I like to

7  keep dockets going.  We like to keep working.  It isn't going

8  to happen that way.  The other side has got, as they've said, I

9  think 600 pleadings that they're -- I've forgotten the number

10  but it's many hundred.  It isn't really going to happen that

11  way.  Indeed, you know, it's not this Court's case but in the

12  first Movie Gallery case, two years later they weren't done

13  yet.  This stuff takes time on the side of the party that has

14  all the cases and what will happen if we don't have flexibility

15  at the beginning is that the other side, the defendants, will

16  be crowded by the mandatory time limits.

17         THE COURT:  Mr. Epps, I want to avoid exactly what

18  happened in Movie Gallery.  I want these cases to be resolved

19  and not two years from now.

20         MR. EPPS:  I, too.  I want the defendants --

21         THE COURT:  Because the quicker we --

22         MR. EPPS:  -- to have some chance to react.  That's

23  all.  I'm worried about plaintiff delay.

24         THE COURT:  The quicker we can get this stuff done,

25  the cheaper it's going to be for everybody.

1          MR. EPPS:  I agree.

2          THE COURT:  And I am a strong proponent of that and

3    to ask for the additional 30 days, you're just, you know

4    -- it's falling on deaf ears up here.

5          MR. EPPS:  All right.  No desire to speak to deaf

6    ears.

7          THE COURT:  Good.

8          MR. EPPS:  Your Honor, everything else that I have to

9    say is in the pleadings but I ask the Court not to do the

10   sharing of the mediation, to do what most other Courts do with

11   these mass preference cases.  It's the plaintiff's charge and

12   the plaintiff should pay it.  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         MR. BURNETT:  Good afternoon, Your Honor.  For the

15   record, Alex Burnett, on behalf of DIRECTV.  We had essentially

16   just two points in our limited objection, and again, it's

17   limited because we don't object to the procedures -- to the

18   concept of the procedures.  We just had two limited points that

19   we wanted to make.

20         First was that mediation should not commence -- it

21   should not be forced on the defendants until all preliminary

22   motions have been resolved and decided.  In other words, if

23   there's a 12(b) type motion, then we don't think that the

24   mediation should commence until that motion has been resolved

25   because it's unfair to force a party over which there is no

32

1  jurisdiction or where a complaint fails to state a claim to be

2  forced into mediation until that issue has been resolved.

3           THE COURT:  Why can't that issue, though, be some

4  -- you know, resolved through mediation?  I mean, these

5  mediators are going to be -- they've all argued 12(b)(6)

6  motions and why wouldn't they be capable of saying, you know,

7  there's no way that the Court's going to throw this case out as

8  soon as it gets through the front door?  And just dispose of it

9  again without having to go through the judicial process of

10 arguing the -- of the motion practice?

11          MR. BURNETT:  So, you're suggesting that the mediator

12 could make a decision that the case -- that the complaint fails

13 to state a claim and therefore mediation's not necessary?

14          THE COURT:  Well, I would assume that if your client

15 is sued and there's no jurisdiction that you're going to raise

16 that issue with the mediator and get, you know, the mediator to

17 try to resolve the case based on that issue, as well as any

18 other issue that might be available to you.  But, why not do it

19 through that process, you know, rather than going through the

20 motions process, you know, which can, you know, again add time

21 and expense to the case, especially if it's a slam dunk?

22          MR. BURNETT:  Well, what if there's an issue like a

23 12(b)(6) kind of issue, where the complaint fails to state a

24 claim or fails to give sufficient detail for the claim?  It's

25 possible that it may -- that, in fact, there may not be a valid

1  claim against the defendant, yet the defendant is still forced

2  into a situation like Mr. Epps just described where they're

3  spending maybe $8,000 in a mediation when, in fact, there's

4  really no -- the plaintiff still hasn't stated a valid cause of

5  action against the defendant.

6      THE COURT:  And I suspect every one of these cases

7  there's going to be some sort of Iqbal-type of reply saying, oh

8  yes, we don't have enough specificity now under preference

9  complaints to know what, you know, we're being sued for and all

10 the rest of it.  And you know we can litigate you know 600

11 times those issues and go on six, seven months resolving all

12 those issues, get it all done, and then the parties will have

13 spent well past the $8,000 that Mr. Epps is concerned about

14 when he came up here before we've even gotten to mediation.

15 And how does that move everybody's ball down the court?

16     MR. BURNETT:  Well, if the plaintiff has to amend

17 pleadings or include additional claims, then they ought to do

18 that prior to the mediation so that everybody knows going into

19 the mediation what the claims are against the defendants, not

20 after mediation is concluded.

21     THE COURT:  All right.

22     MR. BURNETT:  The second point that we had in our

23 objection, and to some extent it may have been resolved by the

24 comments that Ms. Beran made, but we just wanted to ensure that

25 number one, there was -- that there is going to be some sort of

34

1  good faith exchange of information between the parties so that

2  the defendants aren't walking into a mediation only to get

3  sandbagged by the plaintiff with -- because it's not only

4  conceivable but it's very likely in these cases that the trust

5  would have information that the defendants wouldn't have, such

6  as details about when payments were -- you know, when payments

7  cleared, financial details that may not be available to both

8  sides.

9        And in that type of situation, number one, we would

10 like there to be a good faith exchange of information and if

11 circumstances arise where the parties believe that there ought

12 to be -- or one of the parties believes that it, in good faith,

13 needs some formal discovery, the door shouldn't be closed on

14 them to come back to the Court to ask for that.  And I

15 understand it from Ms. Beran's comments that this is without

16 prejudice to be able to come back to the Court and ask for

17 that, so you know I think that we would just on our second

18 point we would just ask number one, that the order and the

19 procedures that are approved by the Court reflect that the

20 plaintiff is going to exercise a good faith exchange of

21 information premediation, and secondly, that if circumstances

22 require formal discovery, that the parties are without

23 prejudice to come back and ask the Court for it.

24        THE COURT:  And I think you heard my responses to Mr.

25 Epps that you know the Court certainly stands ready to

35

1 entertain those types of motions, if necessary.  But, I would

2 like that to be the exception, then, not the rule.

3          MR. BURNETT:  I understand, Your Honor.  I think

4 that's okay.  Thank you.

5          THE COURT:  All right.  Thank you, sir.  Does any

6 other party wish to be heard in connection with the proposed

7 procedures in connection with these avoidance actions?

8                    (No verbal response)

9          All right.  Ms. Beran, anything further on your part?

10          MS. BERAN:  Your Honor, just in conclusion, there are

11 no ulterior motives here.  We thought that mediation and the

12 procedures proposed, which in some instances this Court has

13 successfully used in this case and other cases pending Your

14 Honor, would be the most efficient manner to address these

15 proceedings and avoid a potential logjam on this Court's

16 already busy docket, as well as on the cases themselves and the

17 -- all parties and interests so that there can be a quicker

18 administration of these estates and a quicker distribution to

19 creditors because that's what the ultimate goal is, is to

20 maximize the value so that there can be a larger distribution

21 to creditors who Congress has said are entitled to

22 distributions under the (indiscernible) by Congress.

23          We are not wed to anything in particular or there's

24 no pride of authorship.  We proposed these procedures in good

25 faith.  The trust acting -- the trustee acting on behalf of the

1   trust believes he has fiduciary duties.  Albeit some of them

2   may at times be unpopular, he comes before Your Honor with

3   plain hands proposed them in good faith and we respectfully

4   request that the Court establish appropriate procedures to

5   address the volume of adversary proceedings that are going to

6   be pending here shortly.

7          THE COURT:  All right.  Thank you.  All right.  The

8   Court has before it the motion for an order to establish

9   procedures for the avoidance action in adversary proceedings in

10  connection with the Circuit City Stores bankruptcy case.  The

11  Court is going to substantially adopt the proposed procedures

12  that have been suggested by the liquidating trustee.  The -- in

13  adopting these, the Court notes that the procedures are adopted

14  without prejudice to any party to seek modification for cause

15  for any of the provisions on a case by case basis.  But, these

16  will be the procedures that will be applied generally to all

17  cases and then the exceptions, as Ms. Beran pointed out, can

18  come back to the Court on a one by one basis and that would

19  include requests for discovery if it was necessary in a

20  particular case because the parties weren't able to agree to do

21  it on some sort of voluntary basis.  But, I really don't think

22  that that's going to be the case.

23         With regard to a number of the objections, especially

24  with regard to the fee splitting, that is something that the

25  Court looked at very carefully when I saw the pleadings come in

37

1  initially.  I saw the responses come in and I have analyzed

2  that and I think that the fee sharing is actually a very good

3  proposal.  And while it's not what Delaware does, let me

4  explain my rationale for that.  And that is that it gives the

5  defendants in these cases a very vested interest in these cases

6  at the front end which I want them to be able to have.  I want

7  them to be engaged.  I want them to know that Mr. Epps's $8,000

8  or whatever it is, is really what's at stake, so that if the

9  case can be resolved for something substantially less than

10  that, that's a good thing.  And let's get that done.  But, all

11  parties then know there's going to be something at play here

12  that's going to get this done and I want the parties to be

13  firmly engaged in the process to make the mediation work.  And

14  so, if they have to pay half of it, they're going to be much

15  more inclined to try to do that.  And hopefully, Mr. Epps is

16  right and they're only going to be two percent of these cases

17  that we actually try and if that's the case, that would be a

18  wonderful thing.

19          I don't want these cases languishing for another two

20  years.  I want to see them done quickly.  In the Eastern

21  District of Virginia, we do have a policy of trying to get

22  cases through quickly and the concept behind that being that

23  the longer the case goes on, the more expensive it is to all of

24  the parties.  And so, I'm not going to extend any of the time

25  periods.  I want to see these cases moved promptly.  I want the

1  mediation in these cases to move promptly.  And I want the

2  parties to be seriously engaged in those mediations and try to

3  get the cases resolved.  But, in any event, I want to see if

4  the cases do need to be tried and be brought back here that

5  things would be working on a fast-track basis.

6       With regard to the objection to not allowing motions

7  to be filed prior to the mediation, I reject that proposal.  I

8  think that the mediator can address issues that would be raised

9  under, you know, 12(b)(6) or 12(b)(1) or whatever other motions

10 or affirmative defenses the parties may want to seek and that

11 the mediator can resolve those much less expensively -- if

12 they're valid concerns being raised -- than if the parties were

13 to come here and we were to engage in extensive motions

14 practice at the front end.

15      And I think that the mediator's going to be able to

16 ferret out if there's some, you know, amendment to a pleading

17 or something that's going to happen in a case by cutting down

18 the issues.  That's something that the mediation process is

19 very good at doing.  And yes, we may have to amend pleadings in

20 a number of cases but that may be as a result of the good faith

21 mediation as opposed to then having to go through that process

22 after an expensive motions practice.  So, that objection will

23 be overruled.

24      The -- you know, for all of those reasons the Court

25 is going to adopt the procedures as they have been set forth.

1 Do I have before me the motion to approve the list of

2 mediators?  Is that part of what I have or does that have to be

3 done separately?

4        MS. BERAN:  Your Honor, we -- in all fair candor, we

5 had believed that it was part of the original motion and --

6        THE COURT:  I did, too, as I went through.  I just

7 wanted to make sure --

8        MS. BERAN:  -- it was just a subsequent --

9        THE COURT:  -- because I've looked at the list of

10 mediators and they are all very experienced practitioners that

11 are very familiar to the Court and I'm very pleased with them.

12 We did have one objection and that's what I wanted to speak to

13 you about having no west coast mediators, and the fact that Mr.

14 Wasserman has a California office and is willing to travel

15 there at his own expense, the -- if a case -- on a case by case

16 basis.  And also, you know, with regard to the situs of any

17 mediation that again if the parties can't agree on that, they

18 can come and seek, you know, some direction from the Court, if

19 necessary.  But, I would agree with what counsel said

20 originally that I would expect most of these mediations be

21 conducted in this jurisdiction.

22        MS. BERAN:  Thank you, Your Honor.  Your Honor, I did

23 want to apologize if I misspoke and/or misrepresented

24 something.  The -- what we've discussed with the mediators and

25 which all of them have agreed to is that they won't charge for

40

1    travel time.

2           THE COURT:  Travel time is what I meant, obviously,

3    the airline ticket.  But, that airline ticket's the least of

4    anybody's problems and, you know -- as far as the expense

5    element is concerned.  But, I understand so I misspoke when I

6    said that.

7           MS. BERAN:  Okay.  Well, thank you.  And I just

8    wanted to make that clear.  I didn't want to --

9           THE COURT:  And I thank you for that clarification.

10   So, these procedures will be approved.  I would ask that you

11   put something in the procedures that specifically says, as I

12   believe it was Mr. Burnett that suggested, that it be pointed

13   out in the procedures that it is without prejudice to any party

14   to seek a modification of the procedures in their particular

15   case for cause.  And so that they know that they have that

16   right.

17          MS. BERAN:  Absolutely, Your Honor.  That's actually

18   already written on my draft of the procedures, and we'll add

19   that immediately to the order that we submit to Your Honor.

20          THE COURT:  Okay.  Very good.  Obviously, you want to

21   get this order entered as quickly as possible and -- because I

22   know that you have an awful lot on your plate and there are all

23   of two of you and so I will look forward to receiving your

24   order and I will enter it as soon as I get it.  Mr. Epps, you

25   have a question?

41

1           MR. EPPS:  I did have a question, Your Honor.  If a

2  cause language is what we're just talking about given that

3  fairly strict time frame, would the language -- could the

4  language have on expedited basis (indiscernible)?

5           THE COURT:  Oh, the Court's open 24-7.

6           MR. EPPS:  No, but I meant the language that goes

7  -- as opposed to the usual 14-day motion (indiscernible),

8  that's all.

9           THE COURT:  Yes.  Let's go ahead and put that in

10  there so that everybody understands that they can request it on

11  an expedited basis.  I think that's a good suggestion.

12           MR. EPPS:  Thank you.

13           THE COURT:  All right.  All right.  Anything further,

14  Ms. Beran?

15           MS. BERAN:  No, Your Honor.

16           THE COURT:  All right.

17           MS. BERAN:  Thank you very much for your time this

18  afternoon.

19           THE COURT:  All right.  Very good.  We've got another

20  matter immediately following yours, so what I'd like to do is

21  just take a very, very brief recess for the other parties to

22  get set up, and then we'll call the next matter.  Thank you.

23           COURT CLERK:  All rise.  Court is now in recess.

24                        * * * * *

25

42

# C E R T I F I C A T I O N

I, STEPHANIE SCHMITTER, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Stephanie Schmitter

STEPHANIE SCHMITTER

J&J COURT TRANSCRIBERS, INC.   DATE:   November 18, 2010

14

1         MS. BERAN:  Thank you, Your Honor.  Item Number 23,

2    debtors' seventy-ninth omnibus objection to claims.  As it

3    relates to that, Your Honor, there have been -- as identified

4    there, there have been certain resolutions, but there are still

5    a couple claims that are still pending, and we'd respectfully

6    request that this matter be adjourned to January 13th at two

7    for those, as well.

8         THE COURT:  It will be continued.

9         MS. BERAN:  Thank you, Your Honor.  On Item Number

10   24, debtors' eighteenth omnibus objection to claims, in

11   connection with that there is still one claim for which the

12   objection is still pending, and we'd respectfully request for

13   that one claim as identified in Exhibit A that the hearing be

14   continued until January 13th.

15        THE COURT:  It'll be continued.

16        MS. BERAN:  Thank you, Your Honor.  And then the last

17   remaining item is Item Number 25, debtors' eighty-first omnibus

18   objection.  In connection with that, Your Honor, similarly

19   there is one claim for which the objection is still pending.

20   We'd respectfully request that the matter be adjourned to

21   January 13th at two o'clock p.m.

22        THE COURT:  It'll be adjourned.

23        MS. BERAN:  Thank you, Your Honor.  Your Honor, that

24   concludes the items that are officially on the Court's docket

25   today.  I would like to report one unfortunate situation to the

1   Court and then basically suggest two remedies for the

2   situation.

3           In connection with the procedures that were

4   previously approved by Your Honor addressing these adversary

5   proceedings it has come to light by -- not by any of the

6   defendants, but by actually consultation between myself and one

7   of the other lawyers from one of the other law firms who have

8   been handling this that there actually was a typo in the

9   procedures, and it is a significant typo, and that deals with

10  the procedures, and specifically dealing with 7004.  As Your

11  Honor is aware, 7004(e) is what addresses the 14 day

12  requirement to serve a summons, and I think even when I stood

13  before Your Honor I referenced (e) and we are talking about

14  extending the 14 days by an additional 30 days.

15          The procedures actually have (m) as in Mary as

16  opposed to (e) as in Edward.  And as Your Honor is aware, (m)

17  as in Mary extends the 120 day deadline to file the complaint,

18  not the summons perspective.  In connection with the same, I

19  think under a motion to reconsider it clearly is a clerical

20  error on the part of the trust's counsel, and we would

21  respectfully submit that the Court could grant a motion to

22  amend and simply correct the (m) to (e).  We're happy to either

23  do that by motion notice and have it heard before the Court or

24  we're happy to submit an amended order which basically would

25  just change (e) -- (m) to (e) in connection with the previously

1 | entered order.

2 |         THE COURT:  Well, I think that there should be a

3 | motion.  I think you can just do a motion and an order.  I

4 | don't think it needs to be noticed to everybody in the whole

5 | wide world if everybody wants to object to that.  I think it is

6 | just a clerical error.  But, I think just so that we have it

7 | clear on the record why we're amending the order the motion

8 | should be included.

9 |         MS. BERAN:  Certainly, Your Honor.  And we're happy

10 | to do that.  We regret that that happened and I don't think it

11 | prejudices anybody to make that change other -- unfortunately

12 | if that change wasn't made the only entity or party that would

13 | -- the only party -- person in interest would be the clerk's

14 | office because in essence what would have to happen is we would

15 | file a request and -- 565 requests for alias summonses to be

16 | issued and that would be unfortunate.

17 |         THE COURT:  Yes, I understand that.  So, we can get

18 | that taken care of because that certainly was not the

19 | intention, and obviously I missed that when I entered the

20 | order.

21 |         MS. BERAN:  And I apologize, Your Honor.  I mean,

22 | that went through several eyes and it wasn't picked up on.  I

23 | think actually there was a drafter who was trying to be

24 | thorough and went in and added it after it had already been

25 | reviewed by several eyes, and we apologize for that error being

1  submitted to the Court.

2         THE COURT:  All right.  Is there any other business

3  we need to take up today?

4         MS. BERAN:  Your Honor, I believe that's all there

5  is, and hopefully for the rest of this year.

6         THE COURT:  All right.  Let me revisit with you for

7  just a moment your request for the continuance of the trial

8  date with PNY Technologies.  I do want a motion requesting

9  mediation, but if it's a joint motion by the parties I would be

10 inclined to look favorably upon it provided that the mediation

11 would take place, you know, on or before the scheduled trial

12 date.  And then we'd schedule a pretrial conference in the PNY

13 adversary proceeding for whatever's the next omnibus date that

14 Circuit City would have the -- where I would reset a trial date

15 if the parties have not been able to successfully mediate the

16 case at the mediation conference.

17        MS. BERAN:  Your Honor, and I -- let me make sure I'm

18 clear here.  It'd be subject to a joint motion, which if

19 agreeable by both parties, and the mediation would be on or

20 before the January 24th date.  And to the extent the status

21 would be --

22        THE COURT:  The idea being that you can actually use

23 the 24th because that date is obviously one that you've got

24 blocked off.  If -- but you could do it before then if you

25 thought that it was better to do it beforehand.

18

1            MS. BERAN:  Thank you, Your Honor.  And then also --

2    the request for the -- a pretrial conference to be scheduled at

3    the next omnibus, and that's a February -- I don't --

4            THE COURT:  Whatever it is.

5            MS. BERAN:  There's one early February.  It's --

6    February 24th I know is one, but there's an earlier February, a

7    couple of weeks earlier, that we would request that this matter

8    be -- the status be continued over until.

9            THE COURT:  That's right.

10           MS. BERAN:  Okay.  Certainly, Your Honor.  I

11   appreciate that.

12           THE COURT:  And then as far as the mediator is

13   concerned, you can use one of the mediators that we have that

14   we've appointed in the other matters.  And you don't have to

15   say who it's going to be in your motion, but just that the

16   parties will agree and use those procedures to select a

17   mediator and go forward.

18           MS. BERAN:  Certainly, Your Honor.

19           THE COURT:  All right.  Is there anything else then?

20           MS. BERAN:  No, Your Honor, that's all that I'm aware

21   of.

22           THE COURT:  Okay.

23           MS. BERAN:  Thank you very much for your time.

24           THE COURT:  Have a very pleasant holiday.

25           MS. BERAN:  Thank you.  You, too.

19

1       COURT CLERK:  All rise.  Court is now adjourned.

2                       * * * * *

3                **C E R T I F I C A T I O N**

4       I, KATHLEEN BETZ, court approved transcriber,

5  certify that the foregoing is a correct transcript from the

6  official electronic sound recording of the proceedings in the

7  above-entitled matter, and to the best of my ability.

8

9  /s/ Kathleen Betz                    DATE:  January 8, 2011

10  KATHLEEN BETZ

11  J&J COURT TRANSCRIBERS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| | : Case No. 08-35653-KRH |
| | : |
| CIRCUIT CITY STORES, INC., <u>et</u> <u>al</u>.,[1] | : (Jointly Administered) |
| | : |
| Debtors. | : |

## AMENDED ORDER ESTABLISHING PROCEDURES FOR
## AVOIDANCE ACTION ADVERSARY PROCEEDINGS

Upon the Motion (the "<u>Motion</u>")[2] of the Official Committee of Unsecured Creditors (the "<u>Committee</u>")[3] for an Order Establishing Procedures for Avoidance Action Adversary Proceedings and the Trustee's Motion For An Order Under Bankruptcy Rule 9024 To Correct Clerical Mistakes Or Mistakes Arising From Oversight Or Omission (the "<u>Clarification</u> <u>Motion</u>"), and the Court having reviewed the Motion and the Clarification Motion and the four responses filed in connection with the Motion (collectively, the "<u>Responses</u>"); and the Court having determined that the relief requested in the Motion and the Clarification Motion is in the best interests of the Trust, the Debtors, their estates, their creditors, and other parties in interest;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City West Coast is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]    Capitalized terms not otherwise defined herein shall have the meanings and definitions ascribed to such terms in the Motion and/or the Clarification Motion.

[3]    The Motion was filed by the Committee with the anticipation that the relief would inure to the benefit of the Circuit City Stores, Inc. Liquidating Trust established upon the Effective Date in these cases.  The Effective Date was November 1, 2010.

8

and it appearing that proper and adequate notice of the Motion and the Clarification Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.      The Motion and the Clarification Motion are GRANTED, and the procedures set forth in Exhibit A to this Order (the "Avoidance Action Adversary Proceeding Procedures") are hereby approved and shall govern the Adversary Proceedings, effective as of the date of the Adversary Proceeding Procedures Order.

2.      Each of those referenced on the proposed mediators list filed in connection with the Motion is hereby approved as an authorized Mediator.

3.      The establishment of the Avoidance Action Adversary Proceeding Procedures is without prejudice for any party, on a case-by-case basis, to seek relief for cause from the same on an expedited basis.

4.      The Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules shall apply to the Adversary Proceedings, except to the extent that they conflict with the Avoidance Action Adversary Proceeding Procedures.

5.      The time periods set forth in this Order and the Avoidance Action Adversary Proceeding Procedures shall be calculated in accordance with Bankruptcy Rule 9006(a).

6.      The requirement under Local Bankruptcy Rule 9013-1 (G) to file a memorandum of law in connection with the Motion is hereby waived.

7.      Adequate notice of the relief sought in the Motion and the Clarification Motion have been given and no further notice is required.

9

8.      The Court retains jurisdiction to hear and determine all matters arising from or

related to the implementation or interpretation of this Order.


Dated: February __, 2011                    _____
           Richmond, Virginia                    The Honorable Kevin R. Huennekens
                                                 United States Bankruptcy Judge



**WE ASK FOR THIS:**


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178

-and-

Richard M. Pachulski (CA Bar No. 90073)
Robert J. Feinstein (NY Bar No. RF-2836)
Jeffrey N. Pomerantz (CA Bar No. 143717)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.  11th Floor
Los Angeles, California  90067-4100
Telephone: 310-227-6910
Facsimile:  310-201-0760
E-mail:rfeinstein@pszjlaw.com
jpomerantz@pszjlaw.com

*Co-Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## <u>CERTIFICATION</u>

I hereby certify that the foregoing proposed Order has been either served on or endorsed by all necessary parties.

_____

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

Exhibit A

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

- and –

Robert J. Feinstein, Esq.
John A. Morris, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | **:** Chapter 11 |
| | **:** |
| | **:** Case No. 08-35653-KRH |
| CIRCUIT CITY STORES, INC., <u>et al.</u>,[1] | **:** |
| | **:** (Jointly Administered) |
| | **:** |
| Debtors. | **:** |

## AVOIDANCE ACTION ADVERSARY PROCEEDINGS AMENDED PROCEDURES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC  (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

These Avoidance Action Adversary Proceedings Procedures have been approved by the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") in the above-captioned bankruptcy case.  Capitalized terms used but not defined herein shall have the meanings ascribed to the terms in the Motion of  the Official Committee of Unsecured Creditors for an order establishing procedures for avoidance action adversary proceedings (the "Motion")[Docket # 8789].  The Court approved these Procedures by order dated November 4, 2010, entitled *Order Establishing Procedures for Avoidance Action Adversary Proceedings* (the "Order") as clarified in *Amended Order Establishing Procedures For Avoidance Action Adversary Proceedings.*

These procedures apply to all of the several hundred Adversary Proceedings that the Liquidating Trust filed between November 4, 2010 and November 10, 2010.  The procedures will not be applicable to actions filed by the Liquidating Trust after November 10, 2010, unless the Court orders otherwise after application therefore by the Liquidating Trust.

A.      **Case-Specific Summons.**  The summons issued for each Adversary Proceeding will vary from the Court's standard form and will be an "Answer Only" summons.  The summons will inform the defendant that it has thirty days from the date of service of the summons (rather than the date of issuance) to respond to the complaint.  The summons will not set a pretrial conference date; any pretrial or other scheduling conference will be set only after the completion of the mediation procedures described below unless otherwise ordered by the Court.

B.      **Extension of Time by Which Plaintiff must Serve the Summons.**  The time period under Federal Rule of Civil Procedure 4(e), made applicable to the Adversary Proceedings pursuant to Bankruptcy Rule 7004, by which the plaintiff must serve the summonses and complaints in the Adversary Proceedings on defendants in the United States shall be

13

extended by 30 days, without prejudice to the plaintiff to seek further extensions of time for cause shown.  The Liquidating Trust should, however, endeavor to serve the summons and complaints as promptly as practicable after issuance of the summons.

       C.      **Stipulation to Extend time for Defendants to Respond to the Complaint.**

Without further order of the Court, the parties may stipulate to one extension of the time by no more than thirty (30) days within which a defendant must respond to a complaint.  The stipulation must be in writing to be binding on the plaintiff.  Any further or longer extensions of time will require Court approval.

       D.      **Stay of Requirement to Conduct Scheduling Conference.**  Federal Rule of Civil Procedure 26(f), applicable to the Adversary Proceedings pursuant to Bankruptcy Rule 7026 (mandatory meeting before scheduling conference/discovery plan) shall be stayed with respect to the Adversary Proceedings.  Upon the filing of the Mediator's Report (as described below) with respect to each Adversary Proceeding that is not resolved through the Mediation Process (as described below) or otherwise, the parties shall conduct a  Rule 26(f) conference and submit a discovery scheduling order (the "Scheduling Order") to the Court prior to the date set for the Pretrial Scheduling Conference (as described below).

       E.      **Stay of Discovery.**  The parties' obligations to conduct formal discovery in each Adversary Proceeding shall be stayed until the Scheduling Order is entered provided that the stay of discovery shall in no way preclude the parties from informally exchanging documents and information in an attempt to resolve an Adversary Proceeding in advance of, or during, the Mediation Process.

       F.      **Mandatory Mediation Process (the "Mediation Process").**  Mediation will be required in all Adversary Proceedings in accordance with the following procedures and timetable:

14

1.      Within sixty (60) days after the defendant has filed its response to the complaint, the parties must have commenced the mediation process by having (a) selected a mutually agreeable mediator from the list of mediators attached hereto as Exhibit A, (b) agreed in writing to the terms of the mediator, including as to compensation, and (c) scheduled a date for the mediation.  If any defendant does not timely select a mediator, then the plaintiff shall promptly (i) assign a mediator to the case and (ii) so notify the defendant.  If the parties cannot agree on a mediator, the defendant's selection shall be the mediator.  Each mediator selected by this process shall hereafter be referred to as the "<u>Mediator.</u>"

2.      At least ten (10) days prior to the scheduled mediation, the parties shall exchange position statements and submit the statements to the Mediator.  The parties may submit a confidential position statement to the Mediator, which statement shall not be shared with opposing counsel.  Unless agreed in writing by both parties and the Mediator, the position statements shall not exceed seven (7) pages double-spaced (exclusive of exhibits and schedules). The Mediator may also require the parties to provide to the Mediator any relevant papers and exhibits, and a settlement proposal.

3.      The Mediator's fees shall be split equally by the parties, and payment arrangements satisfactory to the Mediator must be completed prior to the commencement of the mediation.

4.      The Mediator will preside over the mediation with full authority to determine the nature and order of the parties' presentations.  The Mediator may implement additional procedures which are reasonable and practical under the circumstances.

5.      The parties will participate in the mediation, as scheduled and presided over by the Mediator, in good faith and with a view toward reaching a consensual resolution.  At least one counsel for each party and a representative of each party having full settlement authority

15

shall attend the mediation in person; provided, however, that a Mediator, in his or her discretion, may allow a party representative to appear telephonically.

      6.     The length of time necessary to effectively complete the mediation will be within the Mediator's discretion. The Mediator may also adjourn a mediation that has been commenced if the Mediator determines that an adjournment is in the best interests of the parties.

      7.     All proceedings and writings incident to the mediation will be considered privileged and confidential, and shall not be reported or admitted in evidence for any reason whatsoever.  Nothing stated or exchanged during a mediation shall operate as an admission of liability, wrongdoing or responsibility.

      8.     The mediation must be concluded no later than 120 days after the date on which the defendant has filed its response to the complaint.

      9.     If a party (a) fails to submit the required submissions as provided in these Mediation Procedures or as may be agreed to by the mediator or ordered by the Court, or (b) fails to attend the mediation as required, then the non-defaulting party may file a motion for default judgment or a motion to dismiss the Adversary Proceeding.

      10.     Within ten (10) days after the conclusion of the mediation, the Mediator will file a report, drafted with the caption of the Adversary Proceeding, which need only state (a) the date that the mediation took place, (b) the names of the parties and counsel that appeared at the mediation, and (c) whether or not the applicable Adversary Proceeding settled (the "Mediator's Report").

      11.     If an Adversary Proceeding has not settled, then the plaintiff must file with the Court, and serve on the defendant, a notice of Pretrial Scheduling Conference to take place in the Adversary Proceeding at the next scheduled Omnibus Hearing, provided however, that a minimum of fourteen (14) days notice of the Pre-Trial Scheduling Conference is required.

     **G.**     <u>**Pretrial Scheduling Conferences/Motion Hearing Dates**</u>**.**  The Court will schedule regular Omnibus Hearing dates in the bankruptcy case, on which dates any post-mediation Pretrial scheduling conferences in the Adversary Proceedings will take place.  Any pretrial motions filed by the parties in the Adversary Proceedings must be set for hearing on one of the Omnibus hearing dates after the filing of the Mediator's Report or unless otherwise ordered by the Court.

     **H.**     <u>**Motions affecting all Adversary Proceedings**</u>**.** Any motions filed by the Liquidating Trust that affect all of the Adversary Proceedings may and should be filed in the bankruptcy case, and not in each separately docketed Adversary Proceeding provided, however, that each defendant shall receive notice of the filing of the same.

     **I.**     <u>**Application of Existing Case Management Orders**</u>**.**  The Court's November 13, 2008 *Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9001, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures*, and its December 30, 2009 *Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9001, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures* [Docket No. 6208] (the "<u>Case Management Order</u>")*,* remain in full force and effect.

     **J.**     <u>**Notice of these Special Procedures**</u>**.**  A copy of these Procedures will be served on each defendant with the summons and complaint in each Adversary Proceeding; provided however, if a copy of the Procedures attached to the Order was previously served on a defendant, these Procedures do not need to be served on said defendant.

Dated:  January __, 2011

TAVENNER & BERAN, P.L.C.


_____/s/ Paula S. Beran_____


**EXHIBIT A TO AVOIDANCE
ACTION ADVERSARY
PROCEEDING PROCEDURES**

**<u>LIST OF MEDIATORS</u>**

Karen M. Crowley, Esquire
Crowley, Liberatore & Ryan, P.C.
Chesapeake, Virginia


Lawrence D. Coppel, Esquire
Gordon, Feinblatt, Rothman Hoffberger & Hollander, LLC
Baltimore, Maryland


Morton A. Faller, Esquire
Shulman Rogers Gandal Pordy Ecker, P.A.
Potomac, Maryland


Richard M. Meth, Esquire
Fox Rothschild LLP
Roseland, New Jersey


Keith L. Phillips, Esquire
Phillips & Fleckenstein, P.C.
Richmond, Virginia


Eric Lopez Schnabel, Esquire
Dorsey & Whitney LLP
Wilmington, Delaware


Richard L. Wasserman, Esquire
Venable LLP
Baltimore, Maryland