# EXHIBIT B

i09   Capital Title
I 96669 4R GF# 06-030269-CC
10pgs

This instrument prepared by
and should be returned to:                              Doc# 20070061797

Kathleen McGuire, Assistant Counsel
The Inland Real Estate Group, Inc.
2901 Butterfield Road
Oak Brook, Illinois 60523

---

ABOVE SPACE IS FOR RECORDING PURPOSES ONLY

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS (the "**Assignment**"), is made as of
June __, 2007 by CDB FALCON SUNLAND PLAZA, L.P., a Texas limited partnership,
("**Assignor**") in favor of INLAND MORTGAGE CAPITAL CORPORATION, a Maryland
corporation, (hereinafter called "**Assignee**").

### W I T N E S S E T H :

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged,
Assignor does hereby grant, bargain, convey, sell, assign, transfer, set over and deliver unto
Assignee all leases and subleases, written or oral, tenancies and all agreements for use or
occupancy of any portion of the premises and/or any of the buildings and improvements existing
or to be constructed thereon during the term hereof, situated in the City of El Paso, County of El
Paso, State of Texas, and more particularly described in Exhibit A attached hereto and in the
Deed of Trust hereinafter identified (such premises, and all the buildings and improvements
existing or to be constructed thereon during the term hereof hereinafter collectively called the
"**Premises**");

TOGETHER with any and all modifications, amendments, extensions, renewals and
replacements thereof and any and all further leases, lettings or agreements (including subleases
thereof and tenancies following attornment) upon or covering use or occupancy of all or any part
of the Premises (all such leases, subleases, tenancies and agreements, and tenancies heretofore
mentioned are hereinafter collectively called the "**Leases**");

TOGETHER with any and all guaranties of lessee's performance under any of the Leases,
and

TOGETHER with the immediate and continuing right to collect and receive all of the
rents, additional rents, income, receipts, revenues, issues, proceeds, profits, escrows, deposits and
security deposits now due or which may become due or to which Assignor now or shall hereafter
(including the period of redemption, if any) may become entitled or may demand or claim,
arising or issuing from or out of the Leases or from or out of the Premises or any part thereof,
including but not by way of limitation: minimum rents, additional rents, percentage rents,
parking maintenance, tax and insurance contributions, deficiency rents and liquidated damages
following default, the premium payable by any lessee upon the exercise of a cancellation

*DAL 76185156v4 6/26/2007*

privilege originally provided in any Lease, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Premises together with any and all rights and claims of any kind which Assignor may have against any lessee under the Leases or any subtenants or occupants of the Premises (all such moneys, rights and claims in this paragraph described being hereinafter called "**Rents**");

This is an absolute, present and unconditional assignment of the Leases and Rents, and shall be immediately effective, and is not for collateral purposes only nor intended only as security.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever, or for such shorter period as hereinafter may be indicated; subject, however, to a license hereby granted by Assignee to Assignor, but limited as hereinafter provided, to collect and receive all of the Rents.

This Assignment is made in connection with and as a portion of the consideration for the indebtedness evidenced by that certain Promissory Note ("**Note**") bearing even date herewith in the principal sum of $6,771,000.00 made by Assignor payable to the order of Assignee, and presently held by Assignee, including any amendments, modifications, extensions and renewals thereof and any note or notes supplemental thereto, as well as the payment, observance, performance and discharge of all other obligations, covenants, conditions, representations and warranties contained in the First Deed of Trust, Assignment of Rents and Security Agreement ("**Deed of Trust**") of even date herewith from Assignor to Arthur Rendak, Trustee for the benefit of Assignee and any Other Loan Documents, as defined in the Note, and in any amendments, modifications, extensions, supplements, renewals, replacements and consolidations thereof, covering the Premises and securing the Note or (hereinafter collectively called, the "**Note, Deed of Trust and Other Loan Documents**").

TO PROTECT THE SECURITY OF THIS ASSIGNMENT, IT IS COVENANTED AND AGREED AS FOLLOWS:

1.    That Assignor represents and warrants: That Assignor is the owner in fee simple absolute of the Premises and that Assignor has good title to the Leases and Rents hereby assigned and good right to assign the same, free from any act or other instrument that might limit Assignor's right to make this Assignment or Assignee's rights hereunder, and that no other person, firm or corporation has or will be allowed to have (without Assignee's prior written consent) any right, title or interest therein; and that Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Rents or assigned the Leases from the Premises, whether now due, or hereafter to become due.

2.    That Assignor covenants and agrees as follows:  To observe, perform and discharge, duly and punctually, all and singular the obligations, terms, covenants, conditions and warranties of the existing Leases and of all future Leases affecting the Premises, on the part of the Assignor to be kept, observed and performed, and to give prompt notice to Assignee of any failure on part of Assignor to observe, perform and discharge same; to enforce or secure the performance of each and every obligation, term, covenant, condition and agreement in the Leases by any lessee to be performed; to appear in and defend any action or proceeding arising under,

2

occurring out of, or in any manner connected with the Leases or the obligations, duties or liabilities of the Assignor and any lessee thereunder, and, upon request by Assignee, will do so in the name and behalf of the Assignee but at the expense of the Assignor, and to pay all costs and expenses of the Assignee, including attorney's fees, in any action or proceeding in which the Assignor and/or Assignee may appear.

3.     That Assignor further covenants and agrees as follows: not to receive or collect any Rents from any present or future lessee of the Premises or any part thereof for a period of more than one month in advance of the date on which such payment is due (whether in cash or by promissory note), nor pledge, transfer, mortgage or otherwise encumber or assign any of the Leases or future payments of said Rents or incur any indebtedness, liability or other obligation to any lessee.

4.     That in the event any representation or warranty herein of Assignor shall be found to be untrue or Assignor shall default in the observance or performance of any obligation, term, covenant, condition, representation or warranty herein, then, in each such instance, the same shall constitute and be deemed to be a default under the Note, Deed of Trust and Other Loan Documents hereby entitling Assignee, at its option, to declare all sums secured thereby and hereby immediately due and payable and to exercise any and all of the rights and remedies provided thereunder and hereunder as well as by law.

5.     That so long as there shall exist no default by Assignor in the payment of any indebtedness secured hereby or in the observance or performance of any obligation, term, covenant, condition, representation or warranty herein or in the Note, Deed of Trust or Other Loan Documents or in the Leases beyond any applicable grace or cure period, Assignor shall have the right under a license granted hereby (but limited as provided in the following paragraph) to collect upon, but not prior to accrual, all Rents, arising from or out of the Leases or any renewals, extensions or replacements thereof, or from or out of the Premises or any part thereof, and Assignor shall receive such Rents, and shall hold same, as well as the right and license to receive same, as a trust fund to be applied, and Assignor hereby covenants to so apply same before using any part of the same for any other purposes, in such order as Assignee may direct, to the payment of interest and principal becoming due on the Note; to the payment of taxes and assessments upon the Premises before penalty or interest is due thereon; to the cost of insurance, utilities, maintenance, repairs, replacements and renovation, which is due as required by the terms of the Note, Deed of Trust and Other Loan Documents; to the required funding of reserves for real estate taxes, insurance costs and deferred maintenance; and to the satisfaction of all obligations due as specifically set forth in the Leases.

6.     That upon or at any time after default in the payment of any indebtedness secured hereby or in the observance or performance of any obligation, term, covenant, condition, representation or warranty herein or in the Note, Deed of Trust or Other Loan Documents or in the Leases contained, continuing after the expiration of any applicable grace or cure period, Assignee, at its option, shall have the complete right, power and authority hereunder then or thereafter without notice to exercise and enforce any or all of the following rights and remedies at any time: (a) to terminate the license herein granted to Assignor to collect the Rents, and then and thereafter, without taking possession, and in Assignee's own name, to demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances

therefor, and after deducting all necessary costs and expenses of operation and collection, as determined by Assignee, including attorneys' fees, to apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, upon any indebtedness secured hereby and in such order as Assignee may determine and this Assignment shall constitute a direction to and full authority to any lessee, tenant or other third party who has heretofore dealt or may hereafter deal with Assignor or Assignee, at the request and direction of Assignee, to pay all Rents owing under any Lease to Assignee without proof of the default relied upon, and any such lessee, tenant or third party is hereby irrevocably authorized to rely upon and comply with (and shall be fully protected by Assignor in so doing) any request, notice or demand by Assignee for the payment to Assignee of any Rents or other sums which may be or may thereafter become due under its lease or other agreement, or for the performance of any undertakings under any such lease or other agreement, and shall have no duty to inquire as to whether any default hereunder or under the Note, Deed of Trust or Other Loan Documents has actually occurred or is then existing; (b) to declare all sums secured hereby immediately due and payable and, at its option, exercise all of the rights and remedies contained in the Note, Deed of Trust and Other Loan Documents; (c) without regard to the adequacy of the security or the solvency of Assignor, with or without any action or proceeding, through any person or by agent, or by the trustee(s) under the Deed of Trust secured hereby, or by a receiver to be appointed by court and irrespective of Assignor's possession, then or thereafter, to enter upon, take possession of, manage and operate the Premises or any part thereof, make, modify, enforce, cancel or accept surrender of any Lease now in effect or hereafter in effect on the Premises or any part thereof; remove and evict any lessee; increase or reduce Rents; clean, maintain, repair or remodel the Premises; and otherwise do any act or incur any costs or expense as Assignee shall deem proper to protect the security hereof, as fully and to the same extent as Assignor could do if in possession, and to apply the Rents so collected in such order as Assignee shall deem proper to the payment of costs and expenses incurred by Assignee in enforcing its rights and remedies hereunder, including court costs and attorneys' fees, and to the payment of costs and expenses incurred by Assignee in connection with the operation and management of the Premises, including management and brokerage fees and commissions, and to the payment of the indebtedness under the Note, Deed of Trust and Other Loan Documents, and maintenance, without interest thereon, of a reserve for replacement; and (d) require Assignor to transfer all security deposits to Assignee or an amount equal to all security deposits, if security deposits are not separately held by Assignor, together with all records evidencing these deposits, and to deliver to Assignee all the Leases affecting the Premises.   For the purposes of this paragraph, Assignor does hereby irrevocably constitute and appoint Assignee the true and lawful attorney of Assignor, coupled with an interest, with full power of substitution for Assignor and in Assignor's name, place and stead to ask, demand, collect, receive, receipt for, use for, compound and give acquittance for, any and all sums due or to become due under any Lease, with full power to settle, adjust or compromise any claim thereunder as fully as Assignor could do, and to endorse the name of Assignor or any of them on all commercial paper given in payment or in part payment thereof, and in the Assignee's discretion to file any claim or take any other action or proceeding, either in the Assignee's name or in the name of Assignor or any of them or otherwise, which the Assignee may deem necessary or appropriate to protect and preserve the right, title and interest of the Assignee in and to such sums and the security intended to be afforded hereby.   This appointment is to be irrevocable and continuing, and these rights, powers and privileges shall be exclusive in Assignee, its successors and assigns as long as any part of the indebtedness secured hereby shall remain unpaid.

4

Provided, however, that the acceptance by Assignee of this Assignment, with all of the rights, powers, privileges and authority so created, shall not, prior to entry upon and taking of possession of the Premises by Assignee, be deemed or construed to constitute Assignee a mortgagee in possession nor thereafter or at any time or in any event obligate the Assignee to appear in or defend any action or proceeding relating to the Leases or to the Premises, or to take any action hereunder, or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Assignor by any lessee thereunder and not assigned and delivered to Assignee, nor shall Assignee be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the Premises.  Neither this Assignment nor the receipt of any Rents by Assignee shall effect a *pro tanto* payment of any indebtedness and Assignee shall not be deemed to have received any Rents until the money constituting Rents has been delivered to Assignee.

And provided further that the collection of the Rents and their application as aforesaid and/or the entry upon and taking possession of the Premises shall not cure or waive any default or waive, modify or affect any notice of default under the Note, Deed of Trust or Other Loan Documents or invalidate any act done pursuant to such notice.  The rights, powers, remedies and recourse conferred on Assignee hereunder (a) shall be cumulative and concurrent with and not in lieu of any other rights, powers and remedies granted Assignee hereunder or under the Note, Deed of Trust and Other Loan Documents; (b) may be pursued separately, successively or concurrently against any Assignor or the Premises; (c) may be exercised as often as occasion therefor shall arise, it being agreed by Assignor that the exercise or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, power, remedy or recourse and the enforcement of such right, power, remedy or recourse by Assignee; (d) once exercised, shall continue for so long as Assignee shall elect, notwithstanding that the collection and application aforesaid of Rents may have cured for the time the original default; and (e) are intended to be, and shall be non-exclusive.  If Assignee shall elect to discontinue the exercise of any such right, power, remedy, or recourse, the same or any other right, power, remedy or recourse hereunder may be reasserted at any time and from time to time following any subsequent default.

And provided further that the right of Assignee to collect and receive the Rents assigned hereunder or to exercise any of the rights, powers, remedies or recourse herein granted to the Assignee shall, to the extent not prohibited by law, extend also to the period from and after the filing of any suit to foreclose the lien of the Deed of Trust, including any period allowed by law for the redemption of Premises after any foreclosure sale.

7.    Assignee shall have the right and option at any time and from time to time, in its sole discretion (but under no circumstances shall it be required or obligated), to take in its name or in the name of Assignor such action as Assignee may determine to be necessary to cure any default of Assignor under any of the Leases, whether or not any applicable cure or grace period has expired.  Assignor agrees to protect, defend, indemnify and hold Assignee harmless from and against any and all liability, loss, damage, cost or expense (including but not limited to, attorneys' fees and expenses) in connection with Assignee's exercise of its rights, powers, remedies and recourse hereunder (except in the event and to the extent of gross negligence or willful misconduct by Assignee), with interest thereon at the default rate set forth in the Note and

5

Deed of Trust, and any such obligation shall be payable by Assignor immediately without demand, and shall be secured hereby and by the Deed of Trust and the Other Loan Documents.

8.      That Assignor hereby agrees to indemnify, defend and hold Assignee harmless of and from any and all liability, loss, damage, cost or expense that Assignee may or might incur under or by reason of this Assignment, or for any action taken by the Assignee hereunder, or by reason or in defense of any and all claims and demands whatsoever which may be asserted against Assignee arising out of the Leases, including, but not limited to any claims by any lessees of credit for rental paid to and received by Assignor, but not delivered to Assignee, for any period under any Lease more than one month in advance of the due date thereof and any claim which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to be performed or discharged under any of the terms and conditions contained in the Leases (except in the event and to the extent of gross negligence or willful misconduct by Assignee); should the Assignee incur any such liability, loss, damage, cost or expense, the amount thereof, including attorney's fees and expenses, with interest thereon at the default rate set forth in Note and Deed of Trust shall be payable by Assignor immediately without demand, and shall be secured hereby and by said Deed of Trust and Other Loan Documents.

9.      That until the indebtedness secured hereby shall have been  paid in full, Assignor will upon request deliver to Assignee executed copies of any and all Leases and any and all future Leases upon all or any part of the Premises and will, if Assignee requests, specifically transfer and assign such Leases upon the same terms and conditions as herein contained, but Assignor acknowledges and agrees that such specific assignment and transfer shall not be required to make this Assignment operative with respect to such future Leases. Assignor hereby covenants and agrees to make, execute and deliver unto Assignee upon demand and at any time or times, any and all further assignments and other instruments and records, including but not limited to rent rolls and books of account, sufficient for the purposes that the Assignee may deem to be necessary or advisable for carrying out the purposes and intent of, or otherwise to effectuate, this Assignment (including assignment of the Rent under any Lease with the United States Government after allowance of the rental claim, ascertainment of the amount due and issuance of the warranty for payment thereof).

10.     That the failure of the Assignee to avail itself of any of the terms, covenants and conditions of this Assignment for any period of time or at any time or times, shall not be construed or deemed to be a waiver of such right by Assignee, and nothing herein contained nor anything done or omitted to be done by Assignee pursuant thereto shall be deemed a waiver by Assignee, of any of its rights, powers, remedies and recourse under the Note, Deed of Trust and Other Loan Documents, or under the laws of the state in which the Premises are situated. The rights of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor, or to enforce any other right, power, remedy or recourse hereunder, may be exercised by Assignee, either prior to, simultaneously with, or subsequent to any action taken hereunder and shall not be deemed an election of remedies.

11.     That as of the date hereof, Assignee has not received nor been transferred any security deposited by any lessee with the lessor under the terms of any Lease; that Assignee assumes no responsibility or liability for any security so deposited and that Assignee shall be accountable only for such cash as it actually receives under the terms of this Assignment.

6

12.     That upon payment in full of all of the indebtedness secured by the Note, Deed of Trust and Other Loan Documents and of all sums payable hereunder, this Assignment shall be and become void and of no effect. No judgment or decree entered as to said indebtedness shall operate to abrogate or lessen the effect of this Assignment until the indebtedness has actually been paid. The affidavit, certificate, letter or statement of any officer of Assignee showing any part of said indebtedness to remain unpaid shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment, and any person, firm or corporation, may and is hereby authorized to rely thereon. A demand on any lessee made by Assignee for payment of rents by reason of any default claimed by Assignee beyond any applicable grace or cure period shall be sufficient warrant to said lessee to make future payments of rents to Assignee without the necessity for further consent by or notice to Assignor. This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents to secure said indebtedness contained in the Deed of Trust or Other Loan Documents.

13.     Assignor agrees that this Assignment is primary in nature to the obligation evidenced and secured by the Note, Deed of Trust and Other Loan Documents, and any other document given to secure and collateralize the indebtedness secured hereby. Assignor further agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; however, nothing herein contained shall prevent Assignee from successively or concurrently suing on the Note, foreclosing the Deed of Trust, or exercising any other right, power, remedy or recourse under any other document collateralizing the Note.

14.     The fact that the Leases or the leasehold estates created thereby may be held, directly or indirectly, by or for the account of any person or entity which shall have any interest in the fee estate of the Premises; the operation of law; or any other event shall not merge any Leases or the leasehold estates created thereby with the fee estate in the Premises as long as any of the indebtedness secured hereby and by the Note, Deed of Trust and Other Loan Documents shall remain unpaid, unless Assignee shall consent in writing to such merger.

15.     That all notices, demands or instruments of any kind which Assignee may be required or may desire to serve upon Assignor hereunder shall be sufficiently served by delivering same to Assignor as provided and at the address appearing in the Deed of Trust for the service of notice.

16.     That the terms, covenants, conditions, representations and warranties contained herein and the rights, powers, remedies and recourse granted hereby shall run with the land, shall inure to the benefit of and bind all parties hereto and their respective heirs, executors, administrators, successors and assigns, and all lessees, subtenants and assigns of same, and all occupants and subsequent owners of the Premises, and all successors, transferees and assignees of Assignee and all subsequent holders of the Note, Deed of Trust and Other Loan Documents.

17.     In addition to, but not in lieu of, any other rights, powers, remedies and recourse hereunder, Assignee shall have the right to institute suit and obtain a protective or mandatory injunction against Assignor to prevent a breach or default, or to enforce the observance, of the agreements, covenants, terms and conditions contained herein, as well as the right to ordinary and punitive damages occasioned by any breach or default by Assignor.

7

18.    Assignor hereby irrevocably constitutes and appoints Assignee its true and lawful attorney, coupled with an interest, with full power of substitution for Assignor, so that in the name, place and stead of Assignor, the Assignee may subordinate, at any time and from time to time, any Leases affecting the Premises or any part thereof to the lien of the Deed of Trust, any other mortgage or deed of trust encumbering the Premises, or any ground lease of the Premises, and request or require such subordination where such option or authority was reserved to Assignor under any such Leases, or in any case where Assignor otherwise would have the right, power or privilege so to do. This appointment is irrevocable and continuing, and these rights, powers and privileges shall be exclusive in Assignee, its successors and assigns as long as any part of the indebtedness secured hereby shall remain unpaid. Assignor further agrees that Assignee, and not Assignor, shall be and be deemed to be the creditor of tenants in respect of assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution, or receivership proceedings affecting such tenants (without obligation on the part of Assignee, however, to file or make timely filings of claims in such proceedings or otherwise to pursue creditor's rights therein), with an option to Assignee to apply any money received by Assignee as such creditor in reduction of the indebtedness secured hereby.

19.    If any provision of this Assignment or the application thereof to any entity, person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Assignment and the application of its provisions to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

20.    It is expressly agreed by Assignor that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

21.    This document contains the entire agreement concerning the assignment of Leases and Rents between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by, or on behalf of, such party.

22.    Whenever used herein and whenever the context requires it, the singular shall include the plural, the plural, the singular. and any gender shall include all genders. All obligations of each Assignor hereunder shall be joint and several.

23.    The parties agree that the provisions of Article 57 (Legal Construction and Choice of Law) of the Deed of Trust are incorporated herein by reference thereto.

24.    In the event of any inconsistency between the provisions hereof and any provisions in any of the Other Loan Documents or within this Assignment, the provisions selected by the Assignor in its sole discretion as the controlling provisions shall control.

IN WITNESS WHEREOF, this Assignment has been duly executed by the Assignor as of the day and year first above written.

ASSIGNOR:

CDB FALCON SUNLAND PLAZA, L.P., a Texas limited partnership

By:    CDB Sunland Plaza GP, Inc., a Texas corporation, its co-general partner

By: _Sue Shelton_
Sue Shelton, Executive Vice President

By:    Falcon Sunland Genpar, Inc., a Texas corporation, its co-general partner

By: _Timothy Hughes_
Timothy Hughes, President

STATE OF TEXAS          )
                        ) SS
COUNTY OF Dallas )

This instrument was acknowledged before me on June 27 , 2007 by Sue Shelton, Executive Vice President of CDB Sunland Plaza GP, Inc., a Texas corporation, on behalf of said company, in its capacity as co-general partner of CDB Falcon Sunland Plaza, L.P., a Texas limited partnership.

_Kristen Mitchell_
Notary Public, State of Texas

KRISTEN N MITCHELL
My Commission Expires
February 22, 2009

STATE OF TEXAS          )
                        ) SS
COUNTY OF Dallas )

This instrument was acknowledged before me on June 27 , 2007 by Timothy Hughes, President of Falcon Sunland Genpar, Inc., a Texas corporation, on behalf of said company, in its capacity as co-general partner of CDB Falcon Sunland Plaza, L.P., a Texas limited partnership.

_Kristen Mitchell_
Notary Public, State of Texas

KRISTEN N MITCHELL
My Commission Expires
February 22, 2009

Property Address: See Exhibit A
P.I.N. No.  See Exhibit A

9

DAL 76185156v4 6/26/2007

## EXHIBIT A

## LEGAL DESCRIPTION

The parcel of land herein described is a 4.371-acre portion of Lot 1, Block 1, Coronado Del Sol (Book 61, Pages 4 – 4C, Plat Records, El Paso County, Texas), El Paso, El Paso County, Texas, and is more particularly described by metes and bounds as follows:

COMMENCING at a city monument at a centerline P.T. of South Mesa Hills Drive (120-foot right-of-way; Coronado Del Sol); from which a city monument at the centerline intersection of South Mesa Hills Drive and Bluff Ridge Drive (70-foot right-of-way; Coronado Del Sol) bears South 88°29'31" East, a distance of 1614.61 feet; Thence, 431.48 feet along the centerline of South Mesa Hills Drive and along the arc of a curve to the left, having a radius of 600.00 feet, a central angle of 41°12'11", and a chord which bears South 57°44'22" East, a distance of 422.24 feet; Thence, South 11°39'32" West, a distance of 59.21 feet to a 5/8" rebar with cap marked "Conde TX 2665" found on the southerly right-of-way of South Mesa Hills and the POINT OF BEGINNING of this description;

THENCE, 129.91 feet along said right-of-way and along the arc of a curve to the left, having a radius of 621.64 feet, a central angle of 11°58'26", and a chord which bears South 83°38'10" East, a distance of 129.68 feet to a found 1/2" rebar with cap marked "SLI TX 2998";

THENCE, 107.40 feet continuing along said right-of-way and along the arc of a curve to the left, having a radius of 660.00 feet, a central angle of 09°19'24", and a chord which bears North 85°42'55" East, a distance of 107.28 feet to a chiseled "X" set on the westerly boundary of that certain parcel of land described December 23, 1991, in Book 2383, Page 1059, Deed Records, El Paso County, Texas;

THENCE, South 10°14'55" East, along said boundary, a distance of 630.92 feet to a concrete nail and shiner found on the southerly boundary of that certain parcel of land described July 14, 2006, in Clerk's File No. 20060067480, El Paso County Clerk's Records, El Paso County, Texas;

THENCE, South 75°44'21" West, along said boundary, a distance of 117.66 feet to a set 5/8" rebar with cap marked "RPLS 4178";

THENCE, South 74°23'36" West, continuing along said boundary, a distance of 96.46 feet to a 1/2" rebar with cap marked "SLI TX 2998" found on the easterly boundary of that certain parcel of land described June 30, 1995, in Book 2922, Page 1125, Deed Records, El Paso County, Texas;

THENCE, North 37°08'17" West, along said boundary, a distance of 177.52 feet to a found PK nail;

THENCE, North 52°51'43" East, continuing along said boundary, a distance of 70.11 feet to a found 5/8" rebar with cap marked "Conde TX 2665";

THENCE, North 37°08'17" West, continuing along said boundary, a distance of 298.61 feet to a found PK nail;

THENCE, North 19°09'11" East, continuing along said boundary, a distance of 275.51 feet to the POINT OF BEGINNING of this description.

Said parcel of land contains 4.371 acres (190,405 square feet) of land more or less.

DAL 76185156v4 6/26/2007

# EXHIBIT C

Inland Mortgage Servicing Corporation
2901 Butterfield Road
Oak Brook, Illinois 60523
630-218-8000   Fax: 630-218-5278
www.inlandgroup.com

August 4, 2009

To the Entities and Individuals
On the Attached Mailing List

## NOTICE OF DEFAULT AND DEMAND FOR REPAYMENT OF THE LOAN

Re:   Promissory Note (the "Note") dated June 29, 2007 in the original principal
amount of $6,771,000.00 from CDB Falcon Sunland Plaza, L.P. (the
"Borrower")  to Inland Mortgage Capital Corporation (the "Lender") which
said Note is secured by a First Deed of Trust, Assignment of Rents and
Security Agreement (the "Mortgage"), a Loan Guaranty Agreement given
by W. Eric Brauss, Brandon Ventures, Inc., Timothy Hughes and Scott
Muller (collectively, the "Guarantors") bearing even date therewith
covering the property commonly known as Sunland Plaza, Sunland Plaza
Drive, El Paso, Texas (the "Property"). Loan No. 1465

Reference is made to that certain $6,771,000.00 loan (the "Loan") made on June
29, 2007 by Lender to Borrower, evidenced and/or secured by, among other
things, the Note and the Mortgage (The Note and the Mortgage together with any
and all other documents executed and delivered by the Borrower and/or the
Guarantors, or any of them are collectively referred to herein as the "Loan
Documents"). Lender is the current owner and holder of the Note and beneficiary
under the Mortgage.   Notice is hereby given that the Borrower is in default
inasmuch as the Borrower failed to repay the entire amount of principal, all
accrued, unpaid interest (including, but not limited to, the unpaid interest
that is past due as you have been previously advised and the resulting
default interest) and any other fees, costs and/or expenses due under or in
connection with the Loan on or before the Maturity Date.   The Note and other
Loan Documents clearly provide that the Loan was to mature on June 30, 2009
(the "Maturity Date"). This letter confirms and advises that the Maturity Date has
passed and the Loan has come due. The Borrower currently owes the following:

| | |
|---|---|
| Principal Balance | $6,598,732.46 |
| Balance May Interest Payment | 28,717.02 |
| Total June Interest Payment | 47,276.25 |
| Interest 06/01/09 through 06/30/09 | 45,751.21 |
| Default Interest 04/01/09 through 06/30/09 | 133,483.93 |
| April, May & June Late Charges | 7,441.90 |
| Sub Total | $6,861,402.77 |

THE INLAND NAME AND LOGO ARE REGISTERED TRADEMARKS BEING USED UNDER LICENSE

Inland Mortgage Servicing Corporation
2901 Butterfield Road
Oak Brook, Illinois 60523
630-218-8000   Fax: 630-218-5278
www.inlandgroup.com

| | |
|---|---:|
| Default Interest 07/01/09 through 08/04/09 | 107,807.70 |
| Balloon Late Charge | 336,023.85 |
| Less: Reserve Account | (15,000.00) |
| Less: Tax Escrow | (14,223.90) |
| Less: Unapplied funds | (14,562.00) |
| Total Amount Due 08/04/09 | $7,261,448.41 |

Per Diem after August 4, 2009 is $3,080.22.

In addition to the foregoing, to the extent the Loan Documents so provide, Borrower may be obligated to pay fees, costs and expenses (including, without limitation, attorneys fees) incurred by Lender in connection with efforts to collect on amounts due under the Loan and enforce the rights to the security granted under the Mortgage and other Loan Documents.

Be advised that if the entire outstanding balance of the Loan is not paid immediately, we intend (at our option and without prejudice to or election of our rights) to take any and all action necessary to collect such amounts. We intend to:

(i)     Invoke, with respect to the Property, the power of sale existing pursuant to the terms of the Mortgage, and in connection therewith will direct the trustee (and/or any duly appointed substitute trustee) thereunder to sell the Property as prescribed by applicable law and by the Mortgage; and

(ii)    Pursue any other remedies permitted by the terms of the Mortgage and other Loan Documents or otherwise provided by law or available in equity.

Nothing contained in this letter, nor the prior or future collection of any sums by us or Lender with respect to the Loan, whether or not at the default interest rate, shall be construed (i) to limit our right to receive any and all other sums which may be or become due or payable under the Loan, or otherwise, including without limitation, costs of collection, costs of enforcement and late payment charges; (ii) to waive any other default whether or not known to us; or (iii) to waive, limit, prejudice or otherwise adversely affect any of our rights, remedies or powers as Lender under the documents evidencing the Loan, by statute, at law or in equity, all of which rights, remedies and powers are expressly reserved.

As reflected in the applicable Loan Documents, under no circumstances or contingencies shall the interest accrued, charged or collected under, or in connection with, the Note exceed the maximum amount of interest permitted by applicable law. In addition, all of the Lender's claim, demand and accruals

THE INLAND NAME AND LOGO ARE REGISTERED TRADEMARKS BEING USED UNDER LICENSE

Inland Mortgage Servicing Corporation
2901 Butterfield Road
Oak Brook, Illinois 60523
630-218-8000   Fax: 630-218-5278
www.inlandgroup.com

regarding or arising under the Note, the Mortgage or any other loan documents or instruments whenever made, and whether for principal, interest, or otherwise are intended to comply in all respects both independently and collectively, with all applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

If any entity and/or person receiving this letter or notice is in bankruptcy or has been discharged from the indebtedness as a result of such person's bankruptcy proceedings, then this letter or notice is not intended, and shall not be construed, as a demand upon such person and is sent for informational purposes only pursuant to applicable provisions of the Texas Property Code. This letter is not an act to collect, assess or recover a claim against you, nor it this letter intended to violate any provisions of the United States Bankruptcy Code (Title 11 of the United States Code) (the "Code"). Any and all claims that the Lender asserts against you will be properly asserted in compliance with the Code in your respective bankruptcy proceedings.

Cordially,

INLAND MORTGAGE SERVICING
CORPORATION, as Agent

*Frances C. Panico*

Frances C. Panico
President

Cc: Raymond E. Petersen
    Kathleen H. McGuire, Esq.
    Ed Fishman, Esq.

THE INLAND NAME AND LOGO ARE REGISTERED TRADEMARKS BEING USED UNDER LICENSE

Inland Mortgage Servicing Corporation
2901 Butterfield Road
Oak Brook, Illinois 60523
630-218-8000   Fax: 630-218-5278
www.inlandgroup.com

## MAILING LIST

### VIA UPS OVERNIGHT MAIL

CDB Falcon Sunland Plaza, L.P.
c/o CDB Sunland Plaza GP, Inc.
17400 N. Dallas Parkway, Suite 216
Dallas, TX 75287
Attn: Sue Shelton

### VIA UPS OVERNIGHT MAIL

Brandon Ventures, Inc.
16000 N. Dallas Parkway, Suite 225
Dallas, TX 75248

### VIA UPS OVERNIGHT MAIL

Timothy Hughes
16000 N. Dallas Parkway, Suite 225
Dallas, TX 75248

### VIA UPS OVERNIGHT MAIL

Scott Muller
16000 N. Dallas Parkway, Suite 225
Dallas, TX 75248

### VIA UPS OVERNIGHT MAIL

W. Eric Brauss
17400 Dallas Parkway, Suite 216
Dallas, TX 75287

THE INLAND NAME AND LOGO ARE REGISTERED TRADEMARKS BEING USED UNDER LICENSE

# EXHIBIT D

Doc# 00000000387
#Pages 1    #NFPages 1
8/11/2009 2:41:41 PM
Filed & Recorded in
Official Records of
County County
Delia Briones
County Clerk
Fees $8.00

## NOTICE OF SALE BY SUBSTITUTE TRUSTEE

STATE OF TEXAS    )
                  )
COUNTY OF EL PASO  )

WHEREAS, on June 29, 2007, CDB Falcon Sunland Plaza, L.P., a Texas limited partnership, executed a Deed of Trust conveying to Arthur Rendak, as Trustee, the real property hereinafter described to secure Inland Mortgage Capital Corporation, a Maryland corporation, as Beneficiary, in the payment of that certain Promissory Note dated June 29, 2007, in the original principal sum of $6,771,000.00, and all renewals and extensions thereof, said Deed of Trust is recorded as Document No. 20070061798, Real Property Records of El Paso County, Texas; and

WHEREAS, in accordance with the Deed of Trust the Beneficiary appointed Taffy Bagley, Esq. to act as Substitute Trustee; and

WHEREAS, default has occurred in the payment of the above referenced Note and the principal of said Note plus accrued interest thereon is now wholly due, and Inland Mortgage Capital Corporation, a Maryland corporation, as Beneficiary, has requested the undersigned to sell the property described in said Deed of Trust and hereinafter described to satisfy said indebtedness.

NOW, THEREFORE, notice is hereby given that on Tuesday, the 1st day of September, 2009 between 10:00 a.m. and 1:00 p.m. of that day, I will sell said property inside the first floor lobby of the El Paso County Courthouse located at 500 East San Antonio Avenue, El Paso, El Paso County, Texas, to the highest bidder for cash. Said

real property is described on Exhibit A which is attached hereto and incorporated herein for all purposes.

EXECUTED this _____11_____ day of August, 2009.

Taffy Bagley, Esq., Substitute Trustee

STATE OF TEXAS                    )
                                  )
COUNTY OF EL PASO                 )

This instrument was acknowledged before me on   August _11_, 2009, by Taffy Bagley, Esq., as Substitute Trustee.



NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:

BRENDA H OVERTON
NOTARY PUBLIC
State of Texas
Comm. Exp. 03/17/2013

# EXHIBIT A

## LEGAL DESCRIPTION

The parcel of land herein described is a 4.371-acre portion of Lot 1, Block 1, Coronado Del Sol (Book 61, Pages 4 – 4C, Plat Records, El Paso County, Texas), El Paso, El Paso County, Texas, and is more particularly described by metes and bounds as follows:

COMMENCING at a city monument at a centerline P.T. of South Mesa Hills Drive (120-foot right-of-way; Coronado Del Sol), from which a city monument at the centerline intersection of South Mesa Hills Drive and Bluff Ridge Drive (70-foot right-of-way; Coronado Del Sol) bears South 88°29'31" East, a distance of 1614.61 feet; Thence, 431.48 feet along the centerline of South Mesa Hills Drive and along the arc of a curve to the left, having a radius of 600.00 feet, a central angle of 41°12'11", and a chord which bears South 57°44'22" East, a distance of 422.24 feet; Thence, South 11°39'32" West, a distance of 59.21 feet to a 5/8" rebar with cap marked "Conde TX 2665" found on the southerly right-of-way of South Mesa Hills and the POINT OF BEGINNING of this description;

THENCE, 129.91 feet along said right-of-way and along the arc of a curve to the left, having a radius of 621.64 feet, a central angle of 11°58'26", and a chord which bears South 83°38'10" East, a distance of 129.68 feet to a found 1/2" rebar with cap marked "SLI TX 2998";

THENCE, 107.40 feet continuing along said right-of-way and along the arc of a curve to the left, having a radius of 660.00 feet, a central angle of 09°19'24", and a chord which bears North 85°42'55" East, a distance of 107.28 feet to a chiseled "X" set on the westerly boundary of that certain parcel of land described December 23, 1991, in Book 2383, Page 1059, Deed Records, El Paso County, Texas; .

THENCE, South 10°14'55" East, along said boundary, a distance of 630.92 feet to a concrete nail and shiner found on the southerly boundary of that certain parcel of land described July 14, 2006, in Clerk's File No. 20060067480, El Paso County Clerk's Records, El Paso County, Texas;

THENCE, South 75°44'21" West, along said boundary, a distance of 117.66 feet to a set 5/8" rebar with cap marked "RPLS 4178";

THENCE, South 74°23'36" West, continuing along said boundary, a distance of 96.46 feet to a 1/2" rebar with cap marked "SLI TX 2998" found on the easterly boundary of that certain parcel of land described June 30, 1995, in Book 2922, Page 1125, Deed Records, El Paso County, Texas;

THENCE, North 37°08'17" West, along said boundary, a distance of 177.52 feet to a found PK nail;

THENCE, North 52°51'43" East, continuing along said boundary, a distance of 70.11 feet to a found 5/8" rebar with cap marked "Conde TX 2665";

THENCE, North 37°08'17" West, continuing along said boundary, a distance of 298.61 feet to a found PK nail;

THENCE, North 19°09'11" East, continuing along said boundary, a distance of 275.51 feet to the POINT OF BEGINNING of this description.

Said parcel of land contains 4.371 acres (190,405 square feet) of land more or less.

# EXHIBIT E



*NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.*

## SUBSTITUTE TRUSTEE'S DEED

THE STATE OF TEXAS      §
                                 §

COUNTY OF EL PASO     §

WHEREAS, IMCC SUNLAND, L.L.C., a Delaware limited liability company ("Noteholder"), is the present owner and holder of (i) that certain Promissory Note dated June 29, 2007 (the "Note"), executed by CDB FALCON SUNLAND PLAZA, L.P., a Texas limited partnership ("Borrower"), and payable to the order of INLAND MORTGAGE CAPITAL CORPORATION, A MARYLAND CORPORATION, in the original principal amount of $6,771,000.00, as therein provided, and (ii) any and all liens and security interests securing the Note, including, without limitation, the following described Deed of Trust; and

WHEREAS, the payment of the Note is secured by that certain Deed of Trust ("Deed of Trust") dated June 29, 2007 and being recorded under file No. 20070061798, Real Property Records of El Paso County, Texas; and

WHEREAS, the Deed of Trust covers the following described property and all improvements located thereon ("Mortgaged Property"), to wit:

A 4.371-acre portion of Lot 1, Block 1, CORONADO DEL SOL (Book 61, Pages 4 – 4C, Plat Records, El Paso County, Texas) being more particularly described by metes and bounds in Exhibit A attached hereto and made a part hereof.

WHEREAS, the noteholder at the time of the appointment, pursuant to the Deed of Trust, appointed Taffy Bagley, Esq. as Substitute Trustee, to act under the Deed of Trust in place of the original Trustee named therein;

WHEREAS, default has been made in the payment of the Note and the Noteholder has declared the Note to be fully due and payable; and

**WHEREAS**, Noteholder has demanded payment under said Note and has directed the undersigned to enforce the power of sale granted under the Deed of Trust and to sell the Mortgaged Property, pursuant to the authority conferred upon the undersigned by the Deed of Trust, all in accordance with the terms of the Deed of Trust and the laws of the State of Texas; and

**WHEREAS**, Noteholder did timely cause to be served upon each debtor who, according to the records of the Noteholder, is obligated to pay the Note, written notice of said sale in accordance with the requirements of Section 51.002 of the Texas Property Code, as amended and in accordance with the terms of the Deed of Trust; and

**WHEREAS**, Noteholder did timely post notices of the sale and record with the County Clerk of El Paso County, Texas written notice of said sale in accordance with Section 51.002 of the Texas Property Code.

## NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS:

THAT THE UNDERSIGNED, **TAFFY BAGLEY, Esq.** as Substitute Trustee, in performance of her duty under the Deed of Trust, at the request of Noteholder, after advertising the time and place and terms of sale of the Mortgaged Property in accordance with the terms of the Deed of Trust as required by law, and by posting up written notice of such sale (hereinafter referred to as "Notice") at the El Paso County Courthouse, being the county in which the Mortgaged Property is located, said Notice having been posted more than twenty-one (21) days successively before the date of sale, and said Notice specifying the time, place and terms of such sale of the Mortgaged Property, and with said Notice containing a full description of the Mortgaged Property to be sold, and after full compliance with all the terms of the Deed of Trust and Section 51.002 of the Texas Property Code, did, on the first Tuesday in the month of September, being September 1, 2009, at 12:45 p.m. offer for sale and sell at public venue the Mortgaged Property in accordance with the Notice and at the designated area at the El Paso County Courthouse located in El Paso, Texas, to **IMCC SUNLAND, L.L.C.**, a Delaware limited liability company (hereinafter referred to as "Purchaser"), whose address is 2901 Butterfield Road, Oak Brook Illinois 60523, the Purchaser being the highest and best bidder therefor as purchaser of the Mortgaged Property and sold to Purchaser by the undersigned for the sum of FOUR MILLION ($4,000,000.00) DOLLARS being hereby acknowledged. The undersigned, **TAFFY BAGLEY, Esq.** as Substitute Trustee, under the authority conferred upon her under the Deed of Trust, has GRANTED, SOLD and CONVEYED, and by these presents does hereby GRANT, SELL and CONVEY unto the Purchaser all of the Mortgaged Property, HOWEVER, without

V:\FH\Inland Mortgage Capital Corporation\Substitute Trustee's Deed - IMCC Sunland, LLC 090209.doc

covenants or warranties, expressed or implied, or any liabilities whatsoever on the undersigned personally.

TO HAVE AND TO HOLD the Mortgaged Property unto the Purchaser, its successors and assigns forever; and the undersigned, **TAFFY BAGLEY, Esq.** as Substitute Trustee, by virtue of the authority vested in her by the Deed of Trust, does hereby bind Borrower and Borrower's successors and assigns to WARRANT and FOREVER DEFEND the title to the Mortgaged Property unto Purchaser and Purchaser's successors and assigns forever, against any person whomsoever lawfully claiming or to claim the same or any part thereof as fully as the undersigned, **TAFFY BAGLEY, Esq.** as Substitute Trustee, lawfully can do; HOWEVER, without covenants or warranties, expressed or implied, or any liabilities whatsoever on the undersigned personally.

EXECUTED to be effective the 1st day of September, 2009.

_____
TAFFY BAGLEY, Esq.
Substitute Trustee

**THE STATE OF TEXAS** §
§
**COUNTY OF EL PASO** §

This instrument was acknowledged before me on this the _17th_ day of September, 2009, by **TAFFY BAGLEY, Esq.** as Substitute Trustee under the above described Deed of Trust.

RAUL O. ISSA
NOTARY PUBLIC
In and for the State of Texas
My commission expires
11-10-2010

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

My Commission Expires:

V:\FH\inland Mortgage Capital Corporation\Substitute Trustee's Deed - IMCC Sunland, LLC 090209.doc

# EXHIBIT A

**Address:** Sunland Plaza, Sunland Park Drive, El Paso, Texas

## LEGAL DESCRIPTION

The parcel of land herein described is a 4.371-acre portion of Lot 1, Block 1, Coronado Del Sol (Book 61, Pages 4 – 4C, Plat Records, El Paso County, Texas), El Paso, El Paso County, Texas; and is more particularly described by metes and bounds as follows:

**COMMENCING** at a city monument at a centerline P.T. of South Mesa Hills Drive (120-foot right-of-way; Coronado Del Sol), from which a city monument at the centerline intersection of South Mesa Hills Drive and Bluff Ridge Drive (70-foot right-of-way; Coronado Del Sol) bears South 88°29'31" East, a distance of 1614.61 feet; Thence, 431.48 feet along the centerline of South Mesa Hills Drive and along the arc of a curve to the left, having a radius of 600.00 feet, a central angle of 41°12'11", and a chord which bears South 57°44'22" East, a distance of 422.24 feet; Thence, South 11°39'32" West, a distance of 59.21 feet to a 5/8" rebar with cap marked "Conde TX 2665" found on the southerly right-of-way of South Mesa Hills and the **POINT OF BEGINNING** of this description;

**THENCE**, 129.91 feet along said right-of-way and along the arc of a curve to the left, having a radius of 621.64 feet, a central angle of 11°58'26", and a chord which bears South 83°38'10" East, a distance of 129.68 feet to a found 1/2" rebar with cap marked "SLI TX 2998";

**THENCE**, 107.40 feet continuing along said right-of-way and along the arc of a curve to the left, having a radius of 660.00 feet, a central angle of 09°19'24", and a chord which bears North 85°42'55" East, a distance of 107.28 feet to a chiseled "X" set on the westerly boundary of that certain parcel of land described December 23, 1991, in Book 2383, Page 1059, Deed Records, El Paso County, Texas;

**THENCE**, South 10°14'55" East, along said boundary, a distance of 630.92 feet to a concrete nail and shiner found on the southerly boundary of that certain parcel of land described July 14, 2006, in Clerk's File No. 20060067480, El Paso County Clerk's Records, El Paso County, Texas;

**THENCE**, South 75°44'21" West, along said boundary, a distance of 117.66 feet to a set 5/8" rebar with cap marked "RPLS 4178";

**THENCE**, South 74°23'36" West, continuing along said boundary, a distance of 96.46 feet to a 1/2" rebar with cap marked "SLI TX 2998" found on the easterly boundary of that certain parcel of land described June 30, 1995, in Book 2922, Page 1125, Deed Records, El Paso County, Texas;

**THENCE**, North 37°08'17" West, along said boundary, a distance of 177.52 feet to a found PK nail;

**THENCE**, North 52°51'43" East, continuing along said boundary, a distance of 70.11 feet to a found 5/8" rebar with cap marked "Conde TX 2665";

**THENCE**, North 37°08'17" West, continuing along said boundary, a distance of 298.61 feet to a found PK nail;

**THENCE**, North 19°09'11" East, continuing along said boundary, a distance of 275.51 feet to the **POINT OF BEGINNING** of this description.

Said parcel of land contains 4.371 acres (190,405 square feet) of land more or less.

EXHIBIT A

Doc# 2009006596<br>
#Pages 4  #NFPages 1<br>
Filed & Recorded in<br>
Official Records of<br>
El Paso County<br>
Delia Briones<br>
County Clerk<br>
Fees $28.00

# EXHIBIT F

Doc# 20090065963

This instrument prepared by
and after recordation return to:
Pamela Stein, Esq.
Greenberg Traurig, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201

## ASSIGNMENT AND ASSUMPTION OF NOTE AND LIENS

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS THAT: |
| COUNTY OF EL PASO | § | |

THIS ASSIGNMENT AND ASSUMPTION OF NOTE AND LIENS (this "*Assignment*") is entered and made effective as of August 31, 2009, by and between INLAND MORTGAGE CAPITAL CORPORATION, a Maryland corporation ("*Inland Mortgage*"), and IMCC SUNLAND, L.L.C., a Delaware limited liability company ("*IMCC Sunland*").

WITNESSETH:

WHEREAS, Inland Mortgage extended a loan to CDB Falcon Sunland Plaza, L.P., a Texas limited liability company ("*Borrower*"), in the maximum principal amount of $6,771,000.00 (the "*Loan*"), as evidenced by that certain Promissory Note dated June 29, 2007, payable by Borrower to the order of Inland Mortgage in said principal amount, together with interest thereon as set forth therein (the "*Note*");

WHEREAS, as security for the Note, Borrower executed and delivered to Arthur Rendak as trustee for the benefit of Inland Mortgage, among other things, that certain First Deed of Trust, Assignment of Rents and Security Agreement dated June 29, 2007, and recorded as Instrument No. 20070061798 of the Real Property Records of El Paso County, Texas (together with any and all modifications or amendments, collectively hereinafter referred to as the "*Deed of Trust*"), encumbering certain real and personal property located El Paso County, Texas (as more particularly described on Exhibit A attached hereto and incorporated herein, the "*Property*"), to secure repayment of the Note;

WHEREAS, Borrower failed to pay the Note upon maturity and, as a consequence thereof, all accrued and unpaid interest on and the principal amount of the Note is currently due and payable;

122831-2

WHEREAS, at the direction of Inland Mortgage, the substitute trustee (*"Trustee"*) under the Deed of Trust posted the Property for foreclosure in accordance with the requirements of the Deed of Trust and the laws of the State of Texas, including without limitation Section 51.002 of the Texas Property Code, as amended from time to time (the *"Property Code"*), and made such filings and gave such notices as are required by the Property Code;

WHEREAS, a non-judicial foreclosure sale of the Property is scheduled to be conducted by the Trustee within between the hours of 10:00 a.m. and 1:00 p.m. on September 1, 2009 at the County Courthouse of El Paso County, Texas in the location designated by the applicable commissioners court for foreclosures sales to be held and otherwise in compliance with the procedures and requirements of Section 51.002 of the Property Code;

WHEREAS, IMCC Sunland desires to assume, and Inland Mortgage desires to assign to IMCC Sunland, all rights of Inland Mortgage under the Note, the Deed of Trust, the Construction Loan Agreement, the Assignment of Leases and Rents and the other loan documents evidencing and/or securing the Loan as more fully described in the Construction Loan Agreement (all of the foregoing, collectively, the *"Loan Documents"*), including, without limitation, the right to direct the actions of the Trustee under the Deed of Trust;

NOW, THEREFORE, therefore and in consideration of Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties do hereby agree as follows:

1.      Assignment of Loan Documents.  Inland Mortgage does hereby grant, bargain, sell, convey, alien, transfer, remise, quitclaim, and assign unto IMCC Sunland, its successors and assigns, and IMCC does hereby assume, all the right, title, interest, and benefit, and all obligations, which Inland Mortgage has or may have in, to, and under the Note, the Deed of Trust, and the other Loan Documents.

2.      Continuation of Title Insurance Coverage. IMCC Sunland is a wholly-owned subsidiary of Inland Mortgage, and it is the express intent of Inland Mortgage and IMCC Sunland that the coverage afforded by Mortgagee Policy of Title Insurance No. 7210143-154130 (issued in lieu of No. 7210143-74035480) by Chicago Title Insurance Company in favor of Inland Mortgage, and its successors and/or assigns, as their interest may appear, shall continue in force following the acquisition of title to the Property by IMCC Sunland.

3.      Representations and Warranties of Inland Mortgage. Inland Mortgage hereby represents, warrants, covenants and agrees, as of the date hereof, as follows:

(a)      Loan Documents. Inland Mortgage is the secured party under the Loan Documents. Except for the Modification Agreement dated February 18, 2009, and recorded as instrument number 201090025587 in the Real Property Records of El Paso County, Texas, Inland Mortgage has not entered into any modification of the Loan Documents. Inland Mortgage has not made any prior assignment of its rights and obligations under the Loan Documents except for certain Collateral Assignments made to JP Morgan

Chase Bank, N.A. (as successor by merger to Bank One, N.A.(Main Office Chicago)), a national banking association, as Agent for the Lenders (as such terms are defined in the Collateral Assignments) and recorded under Instrument Number 20070073988 and Instrument Number 20090032678 of the Real Property Records of El Paso County, Texas (collectively, the "JP Morgan Chase Collateral Assignments").

(b)    No Conflicts. The execution, delivery and performance of this Assignment and such other agreements or instruments by Inland Mortgage and the consummation of the transactions contemplated hereby and thereby will not, with or without the giving of notice or the lapse of time, or both, (i) violate any provision of law, statute, rule or regulation to which Inland Mortgage is subject, (ii) violate any order, judgment or decree applicable to Inland Mortgage, (iii) conflict with, result in a breach or default under, or cause the termination of (with or without the giving of notice or the passage of time or both), any court order, trust document, agreement, document or other instrument to which Inland Mortgage is a party or by which Inland Mortgage may be bound, or (iv) result in the creation or imposition of any lien, claim, charge, restriction, security interest or encumbrance of any kind whatsoever upon the Note, Loan Documents or the liens securing the Note.

4.    Non-recourse. The conveyance described in this Assignment is made without recourse against Inland Mortgage and is without warranty except as expressly set forth in Section 3, above.

5.    Binding Effect. This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

6.    Governing Law. This Assignment shall be governed by and construed and enforced in accordance with the internal substantive laws of the State of Texas, without giving effect to the conflict of law provisions thereof.

*[Signature page follows]*

122831-2

IN WITNESS WHEREOF, Inland Mortgage and IMCC Sunland have executed this Assignment to be effective as of the date first above written.

INLAND MORTGAGE CAPITAL
CORPORATION, a Maryland corporation

By: _____

Arthur H. Rendak
Vice President

IMCC SUNLAND, L.L.C.,
a Delaware limited liability company

By:    **Inland Mortgage Capital
Corporation,** a Maryland
corporation, its sole Member

By: _____

Arthur H. Rendak
Vice President

STATE OF ILLINOIS        §
                         §
COUNTY OF DuPage         §

This instrument was acknowledged before me, on the 15th day of September, 200 9, by Arthur H. Rendak in the capacity as the vice president of Inland Mortgage Capital Corporation, a Maryland corporation, on behalf of said corporation.

_____
Notary Public, State of Illinois

[ S E A L ]
My Commission Expires:
10-28-11        _____
Printed Name of Notary Public

OFFICIAL SEAL
LAURA RAZO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/28/11

122831-2

STATE OF ILLINOIS      §
                        §
COUNTY OF DuPage    §

    This instrument was acknowledged before me, on the 15th day of September, 2009, by Arthur N. Rendak, in the capacity as the Vice President of Inland Mortgage Capital Corporation, a Maryland corporation, the sole Member of IMCC Sunland, LLC, a Delaware limited liability company, on behalf of said company.

                                     *Laura Razo*
                                Notary Public, State of Illinois

[ S E A L ]
My Commission Expires:
10-28-11

                                   *Laura Razo*
                                   Printed Name of Notary Public

OFFICIAL SEAL
LAURA RAZO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/28/11

122831-2

## CONSENT

The undersigned, on behalf of JP Morgan Chase Bank, N.A. (successor by merger to Bank One, N.A..(Main Office Chicago)), a national banking association, as Agent for the Lenders, hereby consents to the foregoing Assignment and Assumption of Note and Liens from Inland Mortgage Capital Corporation to IMCC Sunland, L.L.C. and agrees that IMCC Sunland, L.L.C. shall have the right to conduct a foreclosure with respect to the lien created by the Deed of Trust with respect to the Property. This Consent is effective as of the date first set forth above in the Assignment.

JP Morgan Chase Bank, N.A. (successor by merger to Bank One, N.A. (Main Office Chicago)), a national banking association, as administrative agent

By: _____
Its: Vice President

EXHIBIT "A"

LEGAL DESCRIPTION

The parcel of land herein described is a 4.371-acre portion of Lot 1, Block 1, Coronado Del Sol (Book 61, Pages 4 – 4C, Plat Records, El Paso County, Texas), El Paso, El Paso County, Texas, and is more particularly described by metes and bounds as follows:

COMMENCING at a city monument at a centerline P.T. of South Mesa Hills Drive (120-foot right-of-way; Coronado Del Sol), from which a city monument at the centerline intersection of South Mesa Hills Drive and Bluff Ridge Drive (70-foot right-of-way; Coronado Del Sol) bears South 88°29'31" East, a distance of 1614.61 feet; Thence, 431.48 feet along the centerline of South Mesa Hills Drive and along the arc of a curve to the left, having a radius of 600.00 feet, a central angle of 41°12'11", and a chord which bears South 57°44'22" East, a distance of 422.24 feet; Thence, South 11°39'32" West, a distance of 59.21 feet to a 5/8" rebar with cap marked "Conde TX 2665" found on the southerly right-of-way of South Mesa Hills and the POINT OF BEGINNING of this description;

THENCE, 129.91 feet along said right-of-way and along the arc of a curve to the left, having a radius of 621.64 feet, a central angle of 11°58'26", and a chord which bears South 83°38'10" East, a distance of 129.68 feet to a found 1/2" rebar with cap marked "SLI TX 2998";

THENCE, 107.40 feet continuing along said right-of-way and along the arc of a curve to the left, having a radius of 660.00 feet, a central angle of 09°19'24", and a chord which bears North 85°42'55" East, a distance of 107.28 feet to a chiseled "X" set on the westerly boundary of that certain parcel of land described December 23, 1991, in Book 2383, Page 1059, Deed Records, El Paso County, Texas;

THENCE, South 10°14'55" East, along said boundary, a distance of 630.92 feet to a concrete nail and shiner found on the southerly boundary of that certain parcel of land described July 14, 2006, in Clerk's File No. 20060067480, El Paso County Clerk's Records, El Paso County, Texas;

THENCE, South 75°44'21" West, along said boundary, a distance of 117.66 feet to a set 5/8" rebar with cap marked "RPLS 4178";

THENCE, South 74°23'36" West, continuing along said boundary, a distance of 96.46 feet to a 1/2" rebar with cap marked "SLI TX 2998" found on the easterly boundary of that certain parcel of land described June 30, 1995, in Book 2922, Page 1125, Deed Records, El Paso County, Texas;

THENCE, North 37°08'17" West, along said boundary, a distance of 177.52 feet to a found PK nail;

THENCE, North 52°51'43" East, continuing along said boundary, a distance of 70.11 feet to a found 5/8" rebar with cap marked "Conde TX 2665";

THENCE, North 37°08'17" West, continuing along said boundary, a distance of 298.61 feet to a found PK nail;

THENCE, North 19°09'11" East, continuing along said boundary, a distance of 275.51 feet to the POINT OF BEGINNING of this description.

Said parcel of land contains 4.371 acres (190,405 square feet) of land more or less.



SCANNED

Doc# 20090065963
#Pages 7 #NFPages 1
9/17/2009 3:27:12 PM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $40.00

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

EL PASO COUNTY, TEXAS