Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | **:** Chapter 11 |
| | **:** |
| CIRCUIT CITY STORES, INC., et al., | **:** Case No. 08-35653-KRH |
| | **:** |
| Debtors. | **:** (Jointly Administered) |
| | **:** |
| | **:** |

## NOTICE OF LIQUIDATING TRUST'S TENTH OMNIBUS
## OBJECTION TO DISALLOW CERTAIN CLAIMS
## (<u>SHORT-TERM INCENTIVE PROGRAM</u>)

   **PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the *Liquidating Trust's Tenth Omnibus Objection to Disallow Certain Claims (Short-Term Incentive Program)* (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as <u>Exhibit 1</u>.  By the Objection, the Liquidating Trust is seeking to disallow certain claims.

   **PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively, the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

| | Claim Number | Claim Amount | Reference Objection |
|---|---|---|---|
| TO: | | | |

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION.  YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION. THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE AND A REQUEST FOR A HEARING ARE FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY 4:00 P.M. (EASTERN TIME) ON APRIL 7, 2011, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

**Critical Information for Claimants
Choosing to File a Response to the Objection**

Who Needs to File a Response:  If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

Response Deadline:  The Response Deadline is **4:00 p.m. (Eastern Time) on April 7, 2011 (the "Response Deadline")**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED AND RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street – Room 4000
Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083 |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:  (804) 783-0178 |
| Telecopy:  (310) 201-0760 | |

The status hearing on the Objection will be held at **2:00 p.m. (Eastern Time) on April 14, 2011 at:**

United States Bankruptcy Court
701 East Broad Street – Courtroom 5000
Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do <u>not</u> need to appear at the status hearing on the Objection.

<u>**Procedures for Filing a Timely Response and
Information Regarding the Hearing on the Objection**</u>

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

    a.    a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;

    b.    the claimant's name and an explanation for the amount of the Claim;

    c.    a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts that support the Response, setting forth the reasons why the Bankruptcy Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the

specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d.     a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e.     a declaration of a person with personal knowledge of the relevant facts that support the Response;

f.     the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address").  If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g.     to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses").  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**.  To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf.  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**.  If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy

4

Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

## Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.


Dated:    February 27, 2011

*/s/ Paula S. Beran*

Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, P.L.C.
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
      pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile: 310/201-0760
E-mail: jpomerantz@pszjlaw.com
      acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

Jeffrey N. Pomerantz, Esq.

Andrew W. Caine, Esq.

(admitted *pro hac vice*)

PACHULSKI STANG ZIEHL & JONES LLP

10100 Santa Monica Boulevard

Los Angeles, California 90067-4100

Telephone: (310) 277-6910

Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)

Paula S. Beran, Esq. (VA Bar No. 34679)

TAVENNER & BERAN, PLC

20 North Eighth Street, 2nd Floor

Richmond, Virginia 23219

Telephone: (804) 783-8300

Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## LIQUIDATING TRUST'S TENTH OMNIBUS OBJECTION
## TO DISALLOW CERTAIN CLAIMS
## (SHORT-TERM INCENTIVE PROGRAM)

### CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES

### AND CLAIMS IN THE EXHIBITS ATTACHED TO THIS OBJECTION

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second*

*Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and*

*Debtors in Possession and its Official Committee of Creditors Holding General Unsecured*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

*Claims* (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's Tenth Omnibus Objection to Disallow Certain Claims (Short-Term Incentive Program)* (the "Objection"), and hereby moves this court (the "Court"), pursuant to sections 105 and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for entry of an order in the form attached hereto as **Exhibit A**, granting the relief sought by this Objection, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502, Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## SUMMARY OF RELIEF REQUESTED

2.      Each claim subject to this Objection (the "STIP Claims") asserts the right to payment under a short-term incentive program (the "Short-Term Incentive Program") that Circuit City Stores, Inc. ("Circuit City") had offered to certain eligible employees (the "Short-Term Incentive Program Participants").  The STIP Claims assert the right to payment on a priority basis pursuant to section 507(a) of the Bankruptcy Code.  This Objection is based on a review of the STIP Claims and of the books and records of the debtors in the above-captioned cases (the "Debtors").

3.    The Liquidating Trustee has divided the STIP Claims into two categories. All of the STIP Claims are listed in alphabetical order on **Exhibit B**, attached hereto.  The two categories are as follows:

(a)  STIP Claims that should be denied because the holder of the STIP Claim (the "<u>STIP Claimant</u>") was not employed by Circuit City on the first pay-out date (the "<u>Conditioned STIP Claims</u>").  The Conditioned STIP Claims are listed on **Exhibit C**, attached hereto.

(b)  STIP Claims that should be denied because the STIP Claimant has not provided sufficient evidence to establish a *prima facie* claim (the "<u>Insufficient STIP Claims</u>").  The Insufficient STIP Claims are listed on **Exhibit D**, attached hereto.

A.    <u>**The Conditioned STIP Claims**</u>

4.    Circuit City's obligation to make payments pursuant to the Short-Term Incentive Program was conditioned on a variety of company performance criteria and in some cases also on individual performance criteria.  In addition, the eligible employee had to continue to be employed through the applicable pay-out date, as described more fully below.  As part of the Debtors' liquidation of its assets, closing of its stores, and wind down of its business operations, none of the holders of the Conditioned STIP Claims remained employed with the Debtors as of the applicable pay-out date.[2]  Therefore, a necessary condition to the obligation to

---

[2] The Liquidation Trust reserves the right to amend and/or supplement this Objection to establish either that none of the financial or individual performance criteria were met with respect to any of the STIP Clams or that the holders of the STIP Claims have not otherwise established a claim.  However, to conserve limited resources, with respect to the Conditioned STIP Claims, the Liquidation Trust limits this Objection to the fact that all holders of Conditioned STIP

make a payment to the Conditioned STIP Claims pursuant to the Short-Term Incentive Program

was not met.  Accordingly, the Liquidating Trust requests an Order, in the form set forth on

**Exhibit A,** disallowing the Conditioned STIP Claims, in their entirety.

> ### B.    The Insufficient STIP Claims

5.    Each Short-Term Incentive Program Participant was assigned a set of the

company-wide and individual performance goals that had to be achieved before the Short-Term

Incentive Program Participant would be entitled to a Short-Term Incentive Award (defined

below).  These criteria were placed in a performance evaluation online program.  The Debtors

cancelled this online program after the Debtors had finished their going out of business sales and

had closed the remaining set of stores in March 2009.  It was standard procedure for each Short-

Term Incentive Program Participant to print out the applicable goals.  The Insufficient STIP

Claims fail to identify the criteria that the holders of such Claims were required to meet in order

to be entitled to a Short-Term Incentive Award (defined below).  Despite a good faith search, the

Liquidating Trustee has been unable to identify these specific criteria.

6.    Given this lack of evidence, the Insufficient STIP Claims cannot be treated

as *prima facie* valid.  Further, given the difficulty in achieving these goals, coupled with Circuit

City's financial failure, it is unlikely that any of the criteria were met.  This may explain why the

holders of the Insufficient STIP Claims have failed to identify the criteria and show that they

were met.

---

Claims had been laid off prior to the pay-out date as part of the Debtors' liquidation.  On this ground alone, each
Conditioned STIP Claim must be disallowed in its entirety.

7.     Based on the foregoing, the Liquidating Trust requests an Order, in the

form set forth on **Exhibit A,** disallowing the Insufficient STIP Claims, in their entirety.

## FACTUAL BACKGROUND

A.     **The Bankruptcy Cases**

8.     On November 10, 2008 (the "Petition Date"), the debtors in the above-

captioned cases (the "Debtors") filed voluntary petitions in this Court for relief under chapter 11

of the Bankruptcy Code.

9.     On November 12, 2008, the Office of the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").

10.     On November 12, 2008, the Court appointed Kurtzman Carson

Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these

chapter 11 cases pursuant to 28 U.S.C. § 156(c).

11.     On December 10, 2008, the Court entered that certain *Order Pursuant to*

*Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I)*

*Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form*

*and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

12.     Pursuant to the Claims Bar Date Order, the deadline for filing all "claims"

(as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any

non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for

governmental units to file claims that arose before November 10, 2008 was 5:00 p.m. (Pacific)

on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and

manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date

Order (the "Claims Bar Date Notice").

13.    On December 17 and 19, 2008, KCC served a copy of the Claims Bar

Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all

of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other

parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The

Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

14.    On January 16, 2009, the Court authorized the Debtors, among other

things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an

agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent

(the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant

to the Agency Agreement at the Debtors remaining stores.

15.    As of March 8, 2009, the going out of business sales at the Debtors'

remaining stores had been completed.

16.    On April 1, 2009, this Court entered an *Order Establishing Omnibus

Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections*

(Docket No. 2881) (the "Omnibus Objection Procedures Order").

17.    As of May 15, 2009, the holders of Conditioned STIP Claims no longer

worked for the Debtors.  The Debtors' remaining stores were closed and their business

operations had ceased.

18.    On August 9, 2010, the Debtors and the Creditors' Committee filed a plan (the "Plan"), which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

19.    On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan.

20.    The Plan became effective on November 1, 2010 (the "Effective Date"), and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors, including objections to claims.  Under the Plan, objections to priority claims must be filed within 120 days of the Effective Date.

## B.    The Short-Term Incentive Program

21.    Prior to the Petition Date, Circuit City had an annual short-term performance-based incentive program (the "Short-Term Incentive Program), which began each year in March, and pursuant to which certain employees, previously defined in this Objection as the Short-Term Incentive Program Participant, were eligible to earn cash incentive awards ("Short-Term Incentive Award") based on (1) company performance criteria, (2) individual performance, in certain cases, and (3) continued employment by Circuit City through the date on which Circuit City was obligated to make a Short-Term Incentive Award (the "Pay-Out Date").  The company performance criteria and the applicability of individual performance criteria depended on the Short-Term Incentive Program Participant's position at Circuit City.  However,

the requirement to remain employed with Circuit City through the Pay-Out Date applied to each

Short-Term Incentive Program Participant.

22.     In the case of each STIP Claim listed on **Exhibit B**, the Short-Term

Incentive Program ran from March 1, 2008 through February 28, 2009 and the Pay-Out Date was

May 15, 2009.  A sample copy of the terms (the "Plan Terms") of the Short-Term Incentive

Program is attached hereto as **Exhibit E**.  The Plan Terms state, "[A]s a condition of receiving

an incentive pay out, an associate must remain employed with the Company [Circuit City] on a

full-time basis through and including the date of pay out."  *See* Plan Terms, **Exh. E** at 5.  The

Plan Terms also clarified that while the company was encouraging Short-Term Incentive

Program Participants to stay with Circuit City, each Participant's "employment with the

Company [Circuit City] is at will and is terminable at any time, with or without cause, and with

or without notice.  The plan shall not be construed to create a contract of employment for a

specified period of time between the Company and the participant."  *See* Plan Terms, **Exh. E** at

5.

23.     Despite a good faith effort, the Liquidating Trust has not located the

specific performance criteria that apply to the Insufficient STIP Claims.  They were listed in an

online performance evaluation program that the Debtors cancelled after the completion of their

store closings in March, 2009.  However, the Liquidating Trustee has determined that these

criteria were developed in conjunction with the holders of the Insufficient STIP Claims and that

it was standard for the Short-Term Incentive Program Participant to print out these goals.

24.     The Liquidating Trust has also determined that the performance criteria –
both company-wide and individual – were intended to be "stretch" criteria that had a less than
50% percent chance of being met.  The challenging nature of these criteria was communicated to
the Short-Term Program Participants.

## **OBJECTION**

### A.     **Burden of Proof**

25.     Pursuant to 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly
filed and complete proof of claim is *prima facie* evidence of the validity of the claim, which
raises a presumption of the claim's validity.  However, when an objection to a proof of claim
raises sufficient evidence, the burden of proof shifts to the claimant to establish that the claim is
allowable.  *See In re Garvida*, 347 B.R. 697 (9th Cir. BAP 2006); *In re Stoecker*, 143 B.R. 879,
883 (N.D. Ill. 1992).  Moreover, the holder of a claim always bears the burden of persuasion.  *Id.*

26.     Furthermore, if a claim does not comply with Bankruptcy Rule 3001(f),
then it is not presumptively valid and the burden of proof remains initially with the claimant.  *See*
*In re Plourde*, 397 B.R. 207 (Bankr. D. N.H. 2008):

> Rule 3001 . . . provides an evidentiary benefit to creditors who
> comply with the Rule and withholds that benefit from creditors
> who do not comply with the Rule.  If the Creditors have not
> substantially complied with the requirements of Rule 3001, the
> Claims are not entitled to the evidentiary benefit under Rule
> 3001(f).

*Id.*, at 218, *overruled on other grounds in In re Plourde*, 418 B.R. 495 (BAP 1st Cir. 2009).  To
comply with Rule 3001:

> A proof of claim is required to conform substantially to Official
> Form 10; must be signed by the creditor or the creditor's authorized

agent; and, when the claim is based on a writing, must have a copy
of the writing attached.

*In re US Airways, Inc.*, 2007 WL 3231573 *2 (Bankr. E.D. Va. 2007). Thus, where a claim is

based on a writing, but no such writing is attached, the claim is not entitled to *prima facie*

validity and "both the burden of initially producing evidence and the ultimate burden of

persuasion therefore falls squarely" on the claimant. *Id.*

27.     With respect to the Conditioned STIP Claims, this Objection rebuts any

*prima facie* validity of the Conditioned STIP Claims by pointing out that a condition necessary

to Circuit City's obligation to pay has not been met.[3]

28.     With respect to the Insufficient STIP Claims, the Insufficient STIP Claims

are not *prima facie* valid and are not entitled to any presumption of validity. Therefore, the

Liquidating Trustee does not have to come forward with any evidence that the applicable criteria

were not met. Instead, the holders of the Insufficient STIP Claims must present evidence

identifying the criteria and establishing that those criteria were met. They will not be able to do

so given the fact that the criteria were tied to the success of Circuit City's business and that this

business was liquidated. '

29.     Based on the foregoing, the STIP Claimants bear both the burden of proof

and the burden of persuasion. The STIP Claimants will not be able to meet these burdens.

Accordingly, the STIP Claims should be disallowed in their entirety.

---

[3] The Liquidating Trustee does not concede that the Conditioned STIP Claims are *prima facie* valid. However, with respect to the Conditioned STIP Claims, to conserve resources, this Objection is limited to the fact that the holder of each Conditioned STIP Claim is not entitled to payment because they were not employed by Circuit City on the applicable payment dates.

**B.** **A Condition Necessary to Allowance of the Conditioned STIP Claims Has Not Been Met.**

30.     As set forth above, the obligation to make payment to the Short-Term Incentive Program Participants depended on the continued employment of the Participant through the Pay-Out Date.  With respect to the Conditioned STIP Claims, this condition was not met because as of the Pay-Out Date none of the holders of the Conditioned STIP Claims remained employed by the Debtors.  Accordingly, each Conditioned STIP Claim should be disallowed in its entirety.

**C.** **The Insufficient STIP Claims Are Not Prima Facie Valid**

31.     As set forth above, it was standard procedure for the Short-Term Incentive Program Participants to print out for from the on-line performance evaluation tool, the list of the company-wide and individual performance goals that they had to meet in order to be entitled to a Short-Term Incentive Award.  Nonetheless, the Insufficient STIP Claims fail to identify the specific performance criteria that had to be met and fail to show that these criteria were met.

32.     The Liquidating Trust has not been able to locate the performance criteria particular to each STIP Claimant, despite a good faith effort to do so.  However, the performance criteria – both company-wide and individual – were ambitious and would have been difficult to meet even under the best of circumstances.  The circumstances, however, were quite poor.  By the Pay-Out Date, May, 2009, the Debtors had liquidated their assets and closed their stores.  It is, therefore, extremely unlikely that any of the performance criteria applicable to the Insufficient STIP Claims were met.  This near certain fact may explain why the holders of the Insufficient STIP Claims fail to identify the criteria or allege that they had met the criteria.

33.     Accordingly, the Insufficient STIP Claims should be disallowed in their

entirety.

### RESERVATION OF RIGHTS

34.     The Liquidating Trust reserves the right to file objections to the STIP

Claims at a later time on any grounds that bankruptcy or non-bankruptcy law permits.  The

Liquidating Trust likewise reserves the right to modify, supplement and/or amend this Objection

as it pertains to any claim or claimant herein.

### NOTICE AND PROCEDURE

35.     Notice of this Objection has been provided to the STIP Claimants

identified on **Exhibit B**, and to parties-in-interest in accordance with the Court's *Supplemental*

*Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007,*

*and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management*

*and Administrative Procedures* (entered on December 30, 2009 at Docket No. 6208) (the "Case

Management Order").  The Liquidating Trust submits that the following methods of service upon

the STIP Claimants should be deemed by the Court to constitute due and sufficient service of this

Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the

applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for the STIP

Claimants is not known to the Liquidating Trust, by first class mail, postage prepaid, on the

signatory of the STIP Claimant's proof of claim form or other representative identified in the

proof of claim form or any attachment thereto; or (c) by first class mail, postage prepaid, on any

counsel that has appeared on a STIP Claimant's behalf in the Debtors' bankruptcy cases.  The

Liquidating Trust is serving the STIP Claimants with this Objection and with the exhibit on which the STIP Claim is listed.

36.     To the extent any STIP Claimant timely files and properly serves a response to this Objection **by 4:00 P.M. (Eastern) on April 7, 2011** as required by the Case Management Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Liquidating Trust requests that the Court conduct a status conference with respect to any such responding claimant **at 2:00 P.M. (Eastern) on April 14, 2011** and thereafter schedule the matter for a future hearing as to the merits of such claim.  However, to the extent any STIP Claimant fails to timely file and properly serve a response to this Objection as required by the Case Management Order and applicable law, the Liquidating Trust requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, disallowing the STIP Claims in their entirety.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

37.     This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

38.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion, the Liquidating Trust requests that the requirement that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

39.     No previous request for the relief sought herein has been made to this

Court or any other court.

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an Order

sustaining this Objection and granting such other and further relief as the Court deems

appropriate.

Dated: Richmond, Virginia          TAVENNER & BERAN, PLC
      February 27, 2011


          */s/ Paula S. Beran*
      Lynn L. Tavenner (VA Bar No. 30083)
      Paula S. Beran (VA Bar No. 34679)
      20 North Eighth Street, 2nd Floor
      Richmond, Virginia 23219
      (804) 783-8300

          - and -

      PACHULSKI STANG ZIEHL & JONES LLP
      Jeffrey N. Pomerantz, Esq.
      Andrew W. Caine, Esq.
      10100 Santa Monica Boulevard
      Los Angeles, California 90067-4100
      (310) 277-6910

          - and –

      PACHULSKI STANG ZIEHL & JONES LLP
      Robert J. Feinstein, Esq.
      780 Third Avenue, 36th Floor
      New York, New York 10017
      (212) 561-7700

      *Counsel to the Circuit City Stores, Inc.*
      *Liquidating Trust*

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER SUSTAINING LIQUIDATING TRUST'S TENTH
## OMNIBUS OBJECTION TO DISALLOW CERTAIN CLAIMS
## (SHORT-TERM INCENTIVE PROGRAM)

THIS MATTER having come before the Court on the *Liquidating Trust's Tenth*

*Omnibus Objection to Disallow Certain Claims (Short-Term Incentive Program)* (the

"Objection"),[2] which requested, among other things, that the claims specifically identified on

Exhibit B attached to the Objection be disallowed for those reasons set forth in the Objection;

and it appearing that due and proper notice and service of the Objection as set forth therein was

good and sufficient and that no other further notice or service of the Objection need be given;

and it further appearing that no response was timely filed or properly served by the STIP

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

Claimants being affected by this Order; and it appearing that the relief requested on the

Objection is in the best interest of the Liquidating Trust, the Debtors' estates and creditors and

other parties-in-interest; and after due deliberation thereon good and sufficient cause exists for

the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.     The Objection is SUSTAINED.

2.     The Conditioned STIP Claims identified on <u>Exhibit C</u> as attached hereto

and incorporated herein are forever disallowed in their entirety for all purposes in these

bankruptcy cases.

3.     The Insufficient STIP Claims identified on <u>Exhibit D</u> as attached hereto

and incorporated herein are forever disallowed in their entirety for all purposes in these

bankruptcy cases.

4.     The Liquidating Trust's rights to object to any claim including (without

limitation) the STIP Claims subject to the Objection, on any grounds that applicable law permits,

are not waived and are expressly reserved.

5.     The Liquidating Trust shall serve a copy of this Order on the STIP

Claimants included on the exhibits to this Order on or before five (5) business days from the

entry of this Order.

6.    This Court shall retain jurisdiction to hear and determine all matters

arising from or relating to this Order.


Dated: Richmond, Virginia
                _____, 2010


                _____
                HONORABLE KEVIN R. HUENNEKENS
                UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

TAVENNER & BERAN, PLC


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                                    - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
                                    - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.
Liquidating Trust*



**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing
proposed order has been endorsed by or served upon all necessary parties.

                                    /_____
                                    Lynn L. Tavenner

In re Circuit City Stores, et al.
Case No. 08-35653 (KRH)
**Exhibit B**
ALPHABETICAL LISTING OF CLAIMANTS

| Claim Holder | Claim | Exhibit |
|---|---|---|
| ASH, SCOTT D<br>10284 BRICKERTON DR<br>MECHANICSVILLE, VA 23116 | 6926 | EXHIBIT C - DISALLOW IN ENTIRETY<br>NOT EMPLOYED ON PAY-OUT DATE |
| Chi T Thornton<br>9104 Brookwood Glen Dr<br>Glen Allen, VA 23060 | 14922 | EXHIBIT D - DISALLOW IN ENTIRETY<br>NO PROOF |
| Christina L Sparks<br>2134 Mountain View Rd<br>Powhaton, VA 23139 | 14923 | EXHIBIT D - DISALLOW IN ENTIRETY<br>NO PROOF |
| DRISCOLL, VERONICA L<br>12730 MILL SHED DRIVE<br>MIDLOTHIAN, VA 23112-7020 | 7870 | EXHIBIT C - DISALLOW IN ENTIRETY<br>NOT EMPLOYED ON PAY-OUT DATE |
| Kara Su<br>307 S Rudolph St<br>Richmond, VA 23220 | 9298 | EXHIBIT D - DISALLOW IN ENTIRETY<br>NO PROOF |
| Olive, Joel<br>12 Big Meadows Ct<br>Richmond, VA 23236 | 7430 | EXHIBIT C - DISALLOW IN ENTIRETY<br>NOT EMPLOYED ON PAY-OUT DATE |
| REICH, EDWARD J<br>1500 BIRCH AVE<br>HANOVER PARK, IL 60133 | 4771 | EXHIBIT C - DISALLOW IN ENTIRETY<br>NOT EMPLOYED ON PAY-OUT DATE |
| ROSS, ANGELA P<br>4413 WYTHE AVE<br>RICHMOND, VA 23221 | 8763 | EXHIBIT C - DISALLOW IN ENTIRETY<br>NOT EMPLOYED ON PAY-OUT DATE |
| Williams, Deborah A<br>5101 Little Creek Ln<br>Richmond, VA 23234 | 7401 | EXHIBIT D - DISALLOW IN ENTIRETY<br>NO PROOF |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT C**
**STIP Claims (Disallow in Entirety -- Not Employed on Pay-Out Date)** *See* **p. 3, para. 3(a), p. 11, para. 30 of Omnibus Objection.**

| | | STIP Claims (Disallow in Entirety -- Not Employed on Pay-Out Date) See p. 3, para. 3(a), p. 11, para. 30 of Omnibus Objection. | | | | |
|---|---|---|---|---|---|---|
| Date Filed | Claim Number | Claimant Name and Address | Additional Notice Address | Classification as Filed | Claim Amount as filed (Claim Disallowed) | Debtor |
| 1/28/2009 | 6926 | ASH, SCOTT D<br>10284 BRICKERTON DR<br>MECHANICSVILLE, VA 23116 | | General Unsecured<br>Priority | $11,246.00<br>UNLIQUIDATED | Circuit City Stores, Inc. |
| 1/29/2009 | 7870 | DRISCOLL, VERONICA L<br>12730 MILL SHED DRIVE<br>MIDLOTHIAN, VA 23112-7020 | | General Unsecured<br>Priority | $1,920.00<br>$10,950.00 | Circuit City Stores, Inc. |
| 1/28/2009 | 7430 | Olive, Joel<br>12 Big Meadows Ct<br>Richmond, VA 23236 | | Priority | UNLIQUIDATED | Circuit City Stores, Inc. |
| 1/22/2009 | 4771 | REICH, EDWARD J<br>1500 BIRCH AVE<br>HANOVER PARK, IL 60133 | | Priority | $5,383.50 | Circuit City Stores, Inc. |
| 1/30/2009 | 8763 | ROSS, ANGELA P<br>4413 WYTHE AVE<br>RICHMOND, VA 23221 | | General Unsecured<br>Priority | $12,300.00<br>$10,950.00 | Circuit City Stores, Inc. |

In re Circuit City Stores, Inc. et al.
Case No. 08-35653 (KRH)
**EXHIBIT D**

**STIP Claims (Disallow in Entirety -- No Proof)** *See* **p. 3, para. 3(b), pp. 11-12 of Omnibus Objection.**

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | STIP Claims (Disallow in Entirety -- No Proof)  See p. 3,  para. 3(b), pp. 11-12 of Omnibus Objection. | | | |
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed (Claim  Disallowed)** | **Debtor** |
| 3/31/2010 | 14922 | Chi T Thornton<br>9104 Brookwood Glen Dr<br>Glen Allen, VA 23060 | | Admin Priority | $2,047.25 | Circuit City Stores, Inc. |
| 3/31/2010 | 14923 | Christina L Sparks<br>2134 Mountain View Rd<br>Powhaton, VA 23139 | | Admin Priority | $1,110.25 | Circuit City Stores, Inc. |
| 1/30/2009 | 9298 | Kara Su<br>307 S Rudolph St<br>Richmond, VA 23220 | | Priority | $4,500.00 | Circuit City Stores, Inc. |
| 1/28/2009 | 7401 | Williams, Deborah A<br>5101 Little Creek Ln<br>Richmond, VA 23234 | | Priority | UNLIQUIDATED | Circuit City Stores, Inc. |

<u>**EXHIBIT F**</u>

**(The Short Term Incentive Program Presentation)**



# Turnaround Incentive Program

# September 30, 2008

**Circuit City Confidential**



# Overview

**Leadership is refining and realigning our business, financial and compensation plans.**

- **Business Plan:** We are refining our turnaround plan.

- **Financial Plan**: We have partnered with the Board to revise the way we measure second half performance and will use the revised financial plan for our short term incentive plans.

- **Compensation Programs**: We have reviewed and modified many of our programs to ensure they encourage performance and align with our business and financial plans.

**Circuit City Confidential**

2



# Overview

Recent changes to our compensation programs complement the changes we are now making.

- **April:** We delivered merit increases to Directors and below.

- **March – September:** We finalized the Field Compensation Structure and approximately 2,800 associates received base salary increases.

- **Summer:** We provided increases to approximately 800 associates at Director level and below, at SSC and in the Field, to address competitiveness while taking into consideration performance.

- **Summer:** We removed manager level positions from long-term incentive awards. After taking into consideration market data and performance, the change for many was offset with base salary increases.

- **Summer:** We introduced the HE Incentive plan to all of our stores. Thousands of associates now participate in an incentive plan with significant upside. For the best performers, it provides the ability to double their pay.

- **September:** We modified the Call Center incentive plans creating significant upside for top revenue and attachment producers.

**Circuit City Confidential**

3



# Overview

**Additional Changes to our compensation programs as of September 29, 2008.**

- **Short Term Incentive Plans**

    - **New Criteria/Financial Targets:** We modified performance criteria and targets for most Management, Retail, The City and Services incentive plans.

    - The changes to the Retail and The City incentive plans have already been communicated so the focus of this document will be on the SSC plan changes and how they have been aligned to support the Stores through the Holiday Season.

- **Long Term Incentive (LTI) Plan**

    - **Earlier Delivery:** We will deliver earlier to help align the team with the turnaround plan.

    - **VP, RVP, District Manager and Director level:** Include in a Long-Term Performance-Based Cash Plan vesting over a 21-month period.

4

**Circuit City Confidential**



# Short Term Incentive Plan – EVP/SVP Plan

**Prior plan:**

|  | Performance Criteria |
|---|---|
| EVP/SVP Plan | 100% EBT as a % of Revenue |

**Revised plan:**

|  | Performance Criteria |
|---|---|
| EVP/SVP Plan | 50% EBITDA<br>50% Minimum Availability |

**Minimum Availability:**

- Considered earned and payable as of February 28, 2009 if the Company has Minimum Availability under its then current credit facilities.

- This basically assesses whether we are successfully executing the turnaround plan.

- 100% payout for achieving the Minimum Availability terms.  0% payout for failing to successfully execute.

5



# Short Term Incentive Plan – VP and Below Plan

|  | Performance Criteria |
|---|---|
| **Prior plan:** VP and Below Plan | 50% EBT as a % of Revenue<br>50% Individual Performance |

|  | Performance Criteria |
|---|---|
| **Revise plan:** VP and Below Plan | 50% 2-3 Team Measures Divided Equally<br>50% Individual Performance |

**50% of payout based on 2-3 team specific measures**

- Measures vary by team and will have a significant impact on delivering EBITDA results and supporting the Stores through the Holiday Season.

- Payout will be based on partial year performance. Achieving the revised business plan target, associated with each of the measures, will translate to a 75% payout.

**50% based on individual performance**

- We have maintained the same payout levels based on performance rating: 0% for a 1 or 2 rating, 100% for a 3 rating, 110% for a 4 rating and 120% for a 5 rating.

- You will have a chance in October to calibrate your objectives with the revised business plan.

- Recalibration must be in the PE system by October 31, 2008. Otherwise your payout may be calculated using your original objectives.

6

**Circuit City Confidential**



# VP and Below Plan: Measures by Team

Your cost center/department as defined in Peoplesoft (which is aligned with the financial planning and analysis systems) will determine which group you participate in below. There are a few departments where the mix of associates may fall into multiple groups. In these cases all associates in the department will be paid as one group based on how the Senior Executive assigned the group...if there is a discrepancy the department will default to participating in the Support Function plan.

Retail, The City, Multi-Channel and Services Teams

Company Gross Margin $

Company Expense Reduction

Merchandising Team

Company Gross Margin $

Payable Days

In Stock

Supply Chain and Inventory Team

Company Gross Margin $

Company Reduction in At Risk and Distressed Inventory

In Stock

Support Functions

Includes HR/IT/Legal/Marketing/Finance/Procurement/Internal Communications/Real Estate/Construction/Business Transformation/Asset Protection/Distribution

EBITDA

Company Expense Reduction

7

**Circuit City Confidential**



# EBITDA Incentive Grid

Domestic results for October through February.

| % Payout | EBITDA |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- All material unbudgeted events will be included or excluded at the discretion and approval of the Compensation Committee.  This includes material one-time or non-recurring events (e.g. sale of Intertan) or material charges (e.g. restructure charge).  A change or benefit is deemed to be a material nonrecurring event if it is classified as a discontinued operation or characterized as such in filings with the SEC or if the event would significantly alter the incentive payout calculation.  Store openings/closings will be budgeted in accordance with the Real Estate Plan.  Variances created by more/less openings/closings than planned may be adjusted so that they will not affect the payout.

8



# Company Gross Margin $

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | Company Gross Margin $ |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

**Domestic Segment Gross Margin $ from Continuing Operations for the 5 month period from October - February FY09 excluding one-time or impairment charges, as reported by financial reporting.**

9

**Circuit City Confidential**



# Company Expense Reduction

\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.

| % Payout | Company Expense Reduction |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

**Domestic Segment SG&A Expense $ from Continuing Operations for the 5 month period from October – February FY09 excluding one-time or impairment charges, as reported by financial reporting.**

10

**Circuit City Confidential**



# In Stock

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan.  We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | In Stock |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- Average In Stock Goals for October – February: 93.2%

- All calculations based on Base In Stock

- Base In Stock is defined as :

    Actual Display Units >= POG Display Units and

    Total CB On-Hand Units >= 1 Sellable Closed Box Unit

11

**Circuit City Confidential**



# At Risk/Distressed Inventory

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan.  We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | At Risk/Distressed Inventory |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

- At Risk/Distressed Inventory defined as On Planogram Not Replenished or Not on Planogram Not Replenished.

- Average Attainment Goal $$$  are based on five months of Planned At Risk/Distressed inventory levels divided by the attainment Range % in the following grid.

- Actual Data extracted from EDW inventory tables

12

**Circuit City Confidential**



# Payable Days

**\* Targets are in the process of being reviewed with the Committee to ensure calibration with the final revised business plan. We will provide detailed incentive grids as early as next week when we communicate plan documents.**

| % Payout | Payable Days |
|---|---|
| 25% | Below Business Plan |
| 50% | Below Business Plan |
| 75% | Revised Business Plan |
| 100% | Above Business Plan |
| 125% | Above Business Plan |

**Domestic Merchandise Days Payables excluding one-time or impairment charges as calculated below:**

$$\frac{\text{Average of BOP \& EOP MP}}{\text{Domestic COGS for period}} \; \text{x} \; \text{\# of Days}$$

13

**Circuit City Confidential**



# Short Term Incentive Plan – Retail/The City/Services

- Changes to the Retail, The City and the Services Incentive Plans have already been made and were communicated last week. Changes are effective October 1, 2008.

  - The RVP plan was modified to replace EBT as a % of Revenue with Gross Margin $. Gross Margin $ will be based on Region performance.

  - The threshold performance levels have been reduced so that payouts begin at 80% attainment instead of 90% for Sales Revenue, Gross Margin and Net Operating Profit measures.

  - All payouts are being calculated based on targets from the revised business plan, which creates more attainable and aspirational goals.

14

**Circuit City Confidential**



# Long Term Incentive Plan – LT Cash Plan
# VPs, RVPS, District Managers and Directors

- A long-term cash plan, with performance vesting and the potential to earn up to 200% of the target amount based on achievements above targeted performance. The grant vests between now and 7/1/2010.

- A September 29, 2008 grant similar to past grant practices. This plan does not require shareholder approval.

| | CCS Count | InterTAN Count | Target LT Value |
|---|---|---|---|
| VP and RVP (Levels L13 and L14) | 52 | 3 | $135,000 |
| SSC Director (Levels L10-L12) and Field Positions (Levels S14-S15) | 263 | 13 | $40,000 |

- Vesting and performance measures
    - 1/3 vesting on July 1, 2009 – earned as far as vesting as of February 28, 2009 if the Company has Minimum Availability under its then current credit facilities (as such existing or new credit facilities have been amended, modified, superseded and supplements as of February 28, 2009). In other words, the first third of the award will be paid for successfully executing the turnaround plan.
    - 1/3 vesting on January 1, 2010 – total shareholder return based upon the increase in stock price from the grant date.
    - 1/3 vesting on July 1, 2010 – total shareholder return based upon the increase in stock price from the grant date.

- Future new hires and promotions will receive prorated grants.

- The next annual award for this group is targeted for May 1, 2010.

15

Circuit City Confidential



# Long-Term Cash Plan – Director Example

| Performance Period | 10/1/2008 – 7/1/2009 | 10/1/2008 – 1/1/2010 | 10/1/2008 – 7/1/2010 | Total |
|---|---|---|---|---|
| Target Payout $ [1] | $13,333 | $13,333 | $13,333 | $40,000 |
| Max Payout $ | $13,333 | $33,333 | $33,333 | $80,000 |
| Performance Measure | Milestones:<br>• Minimum Availability | Total Shareholder Return (TSR) [2] | Total Shareholder Return (TSR) [2] | |
| Payout Matrix [3] | Successful completion = 100% payout | $3 (100% TSR) – 75% payout<br>$4 (167% TSR) – 100% payout<br>$5 (233% TSR) – 125% payout<br>$6 (300% TSR) – 175% payout<br>$7 (367% TSR) – 200% payout<br>$8 (433% TSR) – 225% payout<br>$9 (500% TSR) – 250% payout | $4 (167% TSR) – 75% payout<br>$5 (233% TSR) – 100% payout<br>$6 (300% TSR) – 125% payout<br>$7 (367% TSR) – 175% payout<br>$8 (433% TSR) – 200% payout<br>$9 (500% TSR) – 225% payout<br>$10 (567% TSR) – 250% payout | |

(1) Payout amounts not earned can be made-up during future vesting periods. Make-up amounts cannot exceed targeted amounts for the period missed (i.e. no upside can be applied to unearned amounts).

(2) TSR calculation is based off the percentage increase in share price from the date of award (10/1/08) to the date of vest. For purposes of the payout matrix, it is assumed that the share price on the grant date is $1.50.

(3) The payout levels in the final vesting period may need to be assessed for modification depending on the share price at the 2nd vest on 1/1/2010.

16



# Long-Term Cash Plan – VP Example

| Performance Period | 10/1/2008 – 7/1/2009 | 10/1/2008 – 1/1/2010 | 10/1/2008 – 7/1/2010 | Total |
|---|---|---|---|---|
| Target Payout $ [1] | $45,000 | $45,000 | $45,000 | $135,000 |
| Max Payout $ | $45,000 | $112,500 | $112,500 | $270,000 |
| Performance Measure | Milestones:<br>• Minimum Availability | Total Shareholder Return (TSR) [2] | Total Shareholder Return (TSR) [2] | |
| Payout Matrix [3] | Successful completion = 100% payout | $3 (100% TSR) – 75% payout<br>$4 (167% TSR) – 100% payout<br>$5 (233% TSR) – 125% payout<br>$6 (300% TSR) – 175% payout<br>$7 (367% TSR) – 200% payout<br>$8 (433% TSR) – 225% payout<br>$9 (500% TSR) – 250% payout | $4 (167% TSR) – 75% payout<br>$5 (233% TSR) – 100% payout<br>$6 (300% TSR) – 125% payout<br>$7 (367% TSR) – 175% payout<br>$8 (433% TSR) – 200% payout<br>$9 (500% TSR) – 225% payout<br>$10 (567% TSR) – 250% payout | |

(1) Payout amounts not earned can be made-up during future vesting periods. Make-up amounts cannot exceed targeted amounts for the period missed (i.e. no upside can be applied to unearned amounts).

(2) TSR calculation is based off the percentage increase in share price from the date of award (10/1/08) to the date of vest. For purposes of the payout matrix, it is assumed that the share price on the grant date is $1.50.

(3) The payout levels in the final vesting period may need to be assessed for modification depending on the share price at the 2nd vest on 1/1/2010.

17



# Short & Long-Term Compensation Calendar
# VP & Director Levels



| Jan 08 | Mar 08 | May 08 | Jul 08 | Sep 08 | Nov 08 | Jan 09 | Mar 09 | May 09 | Jul 09 | Sep 09 | Nov 09 | Jan 10 |

**Short-Term**

FY08 Annual Incentive Plan Payout

FY09 Annual Incentive Plan Payout

**Long-Term**

50% of time-based 2005 LTIP shares accelerated

1/3 of options and phantom units vest under 1/1/08 LTIP

100% of all shares under the 2005 LTIP are vested by this date.

1/3 of options and phantom units and 50% of restricted shares vest under 1/1/08 LTIP

1/3 of 9/29/08 Cash Plan vests

1/3 of 9/29/08 Cash Plan vests

**Retention**

50% of 1/1/08 Retention Award Vests

50% of 1/1/08 Retention Award Vests

18

**Circuit City Confidential**