Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | **:**  Chapter 11 |
| | **:** |
| CIRCUIT CITY STORES, INC., et al., | **:**  Case No. 08-35653-KRH |
| | **:** |
| Debtors. | **:**  (Jointly Administered) |
| | **:** |
| | **:** |

## NOTICE OF LIQUIDATING TRUST'S THIRTEENTH OMNIBUS OBJECTION TO CERTAIN PRIORITY CLAIMS: ALLOW UP TO THE STATUTORY CAP, RECLASSIFY, DISALLOW AS APPLICABLE (EMPLOYMENT CONTRACT SEVERANCE CLAIMS)

**PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the *Liquidating Trust's Thirteenth Omnibus Objection to Certain Priority Claims:  Allow Up to the Statutory Cap, Reclassify, Disallow as Applicable (Employment Contract Severance Claims)* (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as Exhibit 1.  By the Objection, the Liquidating Trust is seeking to allow up to the statutory cap, reclassify, or disallow as applicable the Severance Claims (as defined in the Objection).

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively,

the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

| TO: | | Claim Number | Claim Amount | Reference Objection |
|---|---|---|---|---|

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION.  YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION. THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE AND A REQUEST FOR A HEARING ARE FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY 4:00 P.M. (EASTERN TIME) ON APRIL 7, 2011, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

**Critical Information for Claimants
Choosing to File a Response to the Objection**

Who Needs to File a Response:  If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

Response Deadline:  The Response Deadline is **4:00 p.m. (Eastern Time) on April 7, 2011 (the "Response Deadline")**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED AND RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

>           Clerk of the Bankruptcy Court
>           United States Bankruptcy Court
>           701 East Broad Street – Room 4000
>           Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083 |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:   (804) 783-0178 |
| Telecopy:   (310) 201-0760 | |

The status hearing on the Objection will be held at  **2:00 p.m. (Eastern Time) on April 14, 2011 at:**

>           United States Bankruptcy Court
>           701 East Broad Street – Courtroom 5000
>           Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do <u>not</u> need to appear at the status hearing on the Objection.

### Procedures for Filing a Timely Response and<br>Information Regarding the Hearing on the Objection

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

>     a.    a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;

>     b.    the claimant's name and an explanation for the amount of the Claim;

>     c.    a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts

that support the Response, setting forth the reasons why the Bankruptcy Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d.    a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e.    a declaration of a person with personal knowledge of the relevant facts that support the Response;

f.    the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address").  If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g.    to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses").  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**.  To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf.  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**.  If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

4

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

## Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.

Dated:    February 27, 2011

/s/ Paula S. Beran

Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, P.L.C.
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
        pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
        acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

Jeffrey N. Pomerantz, Esq.

Andrew W. Caine, Esq.

(admitted *pro hac vice*)

PACHULSKI STANG ZIEHL & JONES LLP

10100 Santa Monica Boulevard

Los Angeles, California 90067-4100

Telephone: (310) 277-6910

Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)

Paula S. Beran, Esq. (VA Bar No. 34679)

TAVENNER & BERAN, PLC

20 North Eighth Street, 2nd Floor

Richmond, Virginia 23219

Telephone: (804) 783-8300

Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## LIQUIDATING TRUST'S THIRTEENTH OMNIBUS OBJECTION TO CERTAIN PRIORITY CLAIMS: ALLOW UP TO THE STATUTORY CAP, RECLASSIFY, DISALLOW AS APPLICABLE (EMPLOYMENT CONTRACT SEVERANCE CLAIMS)

## CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES

## AND CLAIMS IN THE EXHIBITS ATTACHED TO THIS OBJECTION.

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second*

*Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and*

*Debtors in Possession and its Official Committee of Creditors Holding General Unsecured*

*Claims* (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's Thirteenth*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

*Omnibus Objection to Certain Priority Claims:  Allow Up to the Statutory Cap, Reclassify,*

*Disallow as Applicable (Employment Contract Severance Claims)* (the "<u>Objection</u>"), and hereby

moves this court (the "<u>Court</u>"), pursuant to sections 105 and 502 of title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (as amended, the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Bankruptcy Rule 3007-1,

for entry of an order in the form attached hereto as **Exhibit A**, granting the relief sought by this

Objection, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Objection under 28 U.S.C. §§

157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and

legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502,

Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## SUMMARY OF RELIEF REQUESTED

2.      Each claim subject to this Objection (the "<u>Severance Claims</u>") asserts the

right to severance payment on a priority basis pursuant to section 507(a)(4) of the Bankruptcy

Code.  This Objection is based on a review of the Severance Claims and of the books and records

of the debtors in the above-captioned cases (the "<u>Debtors</u>").

3.      Each holder of a Severance Claim ("<u>Severance Claimant</u>") was a party to a

pre-petition employment agreement (the "<u>Employment Contract</u>") with Circuit City Stores, Inc.

("Circuit City") pursuant to which Circuit City agreed to make a payment to the employee if Circuit City terminated the employee, subject to the terms of the Employment Contract.

4.    The Liquidating Trustee has divided the Severance Claims into four categories.  All of the Severance Claims are listed in alphabetical order on **Exhibit B**, attached hereto.  The four categories are as follows:

(a)  Severance Claims asserted pursuant to the "change in control provision" of the Employment Contract after the Debtor terminated the Severance Claimant's employment post-petition (the "Change-in-Control Severance Claims").  The Change-in-Control Severance Claims are listed on **Exhibit C**, attached hereto.

(b)  Severance Claims asserted pursuant to the "termination without cause" provision of the Employment Contract after the Debtors terminated the Severance Claimant's employment within 180 days of the commencement of these cases (the "Priority Period Severance Claims").  The Priority Period Severance Claims are listed on **Exhibit D**, attached hereto.

(c)  Severance Claims asserted pursuant to the "termination without cause" provision of the Employment Contract after the Debtors terminated the Severance Claimant's employment more than 180 days before the commencement of these cases (the "Pre-Priority Period Severance Claims").  The Pre-Priority Period Severance Claims are listed on **Exhibit E**, attached hereto.

(d)  Severance Claims asserted after the Severance Claimants resigned

post-petition (the "<u>Invalid Severance Claims</u>").  The Invalid Severance Claims are

listed on **Exhibit F**, attached hereto.

A.      <u>**The Change-in-Control Severance Claims Should Be Allowed on a Priority Basis in the Amount of the Statutory Cap, Less Other 507(a)(4) Payments, and Reclassified as General Unsecured Claims for the Balance**</u>

5.      The Liquidating Trustee requests that the Change-in-Control Severance

Claims be allowed on a priority basis in the amount of the statutory cap of $10,950, less any

other payments made to the holder of such Claim pursuant to section 507(a)(4), and reclassified

as general unsecured claims to the extent the Claim exceeds the statutory cap.

6.      The Debtors terminated the employment of the holders of the Change-in-

Control Severance Claims after the Debtors had completed their going-out-of-business sales and

closed the last set of their remaining stores.  Pursuant to the Employment Contract, this

termination entitled the employee to a severance payment.  Under case law decided by this

Court, the Change-in-Control Severance Claims are deemed to have arisen as of the petition date,

which is during the priority period set forth in 11 U.S.C. § 507(a)(4).  Accordingly, the Change-

in-Control Severance Claims should be allowed on a priority basis up to the statutory cap set

forth in section 507(a)(4), less any other priority payments received pursuant to section

507(a)(4).  The remaining portion of the Change-in-Control Severance Claims should be

reclassified as general unsecured claims.

**B.**     **The Priority Period Severance Claims Should Be Allowed on a Priority Basis in the Amount of the Statutory Cap, Less Other 507(a)(4) Payments, and Reclassified as General Unsecured Claims for the Balance**

7.     The Debtors terminated the employment of the holders of the Priority Period Severance Claims during the period that is 180 days before the commencement of these bankruptcy cases (the "Priority Period").  Under case law decided by this Court, the Priority Period Severance Claims should be allowed on a priority basis up to the statutory cap set forth in section 507(a)(4), less any other priority payments received pursuant to section 507(a)(4).  The remaining portion of the Priority Period Severance Claims should be reclassified as general unsecured claims.

**C.**     **The Pre-Priority Period Severance Claims Should Be Reclassified In Their Entirety as General Unsecured Claims**

8.     The Debtors terminated the employment of the holders of the Pre-Priority Period Severance Claims before the Priority Period.  Therefore, severance was not "earned" during the Priority Period and no part of the claim is entitled to priority pursuant to 11 U.S.C. § 507(a)(4).  Accordingly, the Pre-Priority Period Severance Claims should be reclassified in their entirety as general unsecured claims.

**D.**     **The Invalid Severance Claims To Be Disallowed in Their Entirety**

9.     The holders of the Invalid Severance Claims voluntarily resigned. Pursuant to the Employment Contract, there is no obligation to pay any severance to an employee who resigned.  Accordingly, the Invalid Severance Claims should be disallowed in their entirety.

10.     The Liquidating Trust is continuing its review of claims and of its books and records and reserves the right to further object on any ground to the Severance Claims to the extent they are reclassified as general unsecured claims.

## BACKGROUND

11.     On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

12.     On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

13.     On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

14.     On December 10, 2008, the Court entered that certain *Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

15.     Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for governmental units to file claims that arose before November 10, 2009 was 5:00 p.m. (Pacific) on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and

manner of the claims bar date notice, which was attached as <u>Exhibit A</u> to the Claims Bar Date

Order (the "<u>Claims Bar Date Notice</u>").

16.     On December 17 and 19, 2008, KCC served a copy of the Claims Bar

Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all

of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other

parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The

Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

17.     On January 16, 2009, the Court authorized the Debtors, among other

things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an

agency agreement (the "<u>Agency Agreement</u>") between the Debtors and a joint venture, as agent

(the "<u>Agent</u>").  On January 17, 2009, the Agent commenced going out of business sales pursuant

to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of

business sales at the Debtors' remaining stores had been completed.

18.     On April 1, 2009, this Court entered an *Order Establishing Omnibus

Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections*

(Docket No. 2881) (the "<u>Omnibus Objection Procedures Order</u>").

19.     On August 9, 2010, the Debtors and the Creditors' Committee filed the

Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds

thereof under chapter 11 of the Bankruptcy Code.

20.     On September 10, 2010, the United States Bankruptcy Court, Eastern

District of Virginia, signed an Order confirming the Plan.

21.     The Plan became effective on November 1, 2010 (the "Effective Date"),

and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating

Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and

distribute the proceeds to creditors, including objections to claims.  Under the Plan, objections to

priority claims must be filed within 120 days of the Effective Date.

A.     **The Employment Agreement, Employee Terminations and Employee
       Resignations**

22.     Before the Petition Date, Circuit City entered into the Employment

Contracts with the Severance Claimants.  The Employment Contracts are identical with respect

to Circuit City's obligations to pay severance to the Severance Claimants.  A sample agreement

setting forth the terms of the Employment Contracts is attached hereto as **Exhibit G**.

23.     Section 9.3 of the Employment Contract entitled an employee to a certain

severance package if Circuit City terminated the employment as a result of a "change in control."

A "change in control" included the liquidation of Circuit City's assets and the closing of its

stores.  *Id*.  Circuit City terminated the employment of the holders of the Change-in-Control

Severance Claims post-petition after the completion of the Debtors' going out of business sales

and store closings, pursuant to section 9.3 of the Employment Contract.

24.     Section 7.4 of the Employment Contract entitled an employee to a certain

severance package if Circuit City terminated the employment involuntarily "without cause."  *Id*.

Circuit City terminated the employment of the holders of the Priority Period Severance Claims

during the Priority Period, pursuant to section 7.4 of the Employment Contract.  Circuit City

terminated the employment of the holders of the Pre-Priority Period Severance Claims before the

Priority Period, pursuant to section 7.4 of the Employment Contract.

25.     The Employment Agreement also addressed employee resignation.  If the

employee provided 30-days written notice of an intent to resign, then Circuit City had the right to

require the employee to not work during the notice period and to pay the employee the salary

that would have been earned during that notice period, plus other benefits, as set forth more fully

in the Employment Contract at section 7.3.  With respect to a resignation, the Employment

Contract added, "The Company [Circuit City] thereafter *shall have no further obligations under*

*this Agreement*."  Employment Contract, **Exh. G**, at ¶ 7.3.  (Emphasis added.)

26.     The holders of the Invalid Severance Claims resigned after the Petition

Date.

27.     The Employment Contracts were rejected by Orders entered on December

23, 2008 [Docket No. 1260] and on March 4, 2010 [Docket No. 6686].

**B.     Other Priority Payments to the Holders of the Severance Claims**

28.     Certain holders of the Severance Claims have or will receive other priority

payments from the Debtors pursuant to section 507(a)(4) of the Bankruptcy Code.  For example,

certain Severance Claim holders are or were entitled to payment for wages, salary, commissions,

or vacation pay earned during the Priority Period.  In the exhibit in which the applicable

Severance Claims are listed, a column has been added to show the amount that has been or is

expected to be paid to the holder of such Claim.  The net amount that should be allowed on a

priority basis is included in an additional column in the applicable exhibit.  In no event should

the holder of a Severance Claim receive on account of such Claim more than the statutory cap set forth in section 507(a)(4).

## OBJECTION

### A.    Burden of Proof

29.    Pursuant to 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly filed proof of claim is *prima facie* evidence of the validity of the claim.  However, when an objection to a proof of claim raises sufficient evidence, the burden of proof shifts to the claimant to establish that the claim is allowable.  *See In re Garvida*, 347 B.R. 697 (9th Cir. BAP 2006); *In re Stoecker*, 143 B.R. 879, 883 (N.D. Ill. 1992).  Moreover, the holder of a claim always bears the burden of persuasion.  *Id.*

30.    As demonstrated below, this Objection rebuts the *prima facie* validity of the Severance Claims.  Therefore, the holders of the Severance Claims bear both the burden of proof and the burden of persuasion to establish such Claims.  Those burdens cannot be met.

### A.    Priority Claims and the Statutory Cap Pursuant to Section 507(a)(4) of the Bankruptcy Code

31.    Section 507(a)(4) of the Bankruptcy Code accords priority status to "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" within 180 days before the filing date.  The amount payable on a priority basis is capped by the statute and this cap is changed every three years.  In this case, the capped priority amount is $10,950.  *See* 11 U.S.C. § 104 (providing for adjustments in the section 507(a)(4) statutory cap every three years); 72 FR 7082 (priority cap under 11 U.S.C. § 507(a)(4) adjusted to $10,950 for cases filed on or after April 1, 2007); 75 FR 8747 (priority cap under 11 U.S.C. §

507(a)(4) adjusted to $11,725 for cases filed on or after April 1, 2010).  These cases were commenced on November 10, 2008.  Therefore, the applicable statutory cap is $10,950.

**B.**     **The Change-In-Control Severance Claims Should Be Allowed Up to the Statutory Cap, Less Other 507(a)(4) Priority Payments Received, With the Remaining Portion of the Claim Reclassified as General Unsecured**

32.     This Court has held that an employee terminated post-petition holds a pre-petition claim for severance when the severance claim is based on a pre-petition employment agreement that the debtor has not assumed.  *In re Dornier Aviation (North America), Inc.,* 2002 WL 31999222  (Bankr. E.D. VA 2002).  The Court in *Dornier* added that the severance claim was entitled to priority up to the statutory cap set forth in section 507(a)(4).  *Id.,* 2002 WL 31999222 at *8, n. 11.

33.     The Court in *Dornier* reasoned that the employment agreement was an executory contract that the debtor rejected when it failed to pay severance pursuant to the employment agreement's terms.  Citing the rule that rejection of an executory contract gives rise to a claim as of the petition date, the Court stated that the severance claim arose within 180 days of the petition date and, therefore, would be entitled to priority up to the statutory cap set forth in section 503(a)(4).  *Id.*, at 8, n. 11.

34.     The Change-in-Control Severance Claims should receive the same treatment as the severance claims considered in *Dornier Aviation.*  The holders of the Change-in-Control Severance Claims were terminated post-petition, like the holders of the severance claims in *Dornier Aviation*.  The Change-in-Control Severance Claims arise from pre-petition employment agreements, like the severance claims in *Dornier Aviation*.  The Employment Contracts in this case were rejected – like the employment agreement in *Dornier Aviation*.

Accordingly, consistent with the ruling in *Dornier Aviation*, the Change-in-Control Severance

Claims should be reduced to $10,950, less any amounts received on a priority basis pursuant to

section 507(a)4.  Any remaining claim above the $10,950 cap should be reclassified as a general

unsecured claim.

        C.       **The Priority Period Severance Claims Should Be Reduced to the Statutory
Cap, Less Other Priority Payments Received, and Reclassified as General
Unsecured to the Extent the Remaining Claim Exceeds the Cap**

        35.      In *In re LandAmerica Financial Group*, 435 B.R. 343 (Bankr. E.D. VA

2010), this Court held that a severance claim arising from a termination during the Priority

Period is entitled to priority up to the cap set forth in section 507(a)(4):

> [T]he Severance Claims will remain priority claims for each
> Claimant up to the amount capped by § 507(a)(4) of the
> Bankruptcy Code, less any amounts for which any such Claimant
> may already have been given § 507(a)(4) priority treatment.  Any
> remaining claim amounts above the $10,960 cap for each Claimant
> shall be reclassified as a general unsecured claim.

*Id*., 435 B.R. at 352.  The Court added, "In lieu of imposing a narrow construction to the statute

[11 U.S.C. § 507(a)(4)], Congress created a cap of $10,950 on each individual employee's

claim."  *LandAmerica*, 435 B.R. at 350.

        36.      The Priority Period Severance Claims fall squarely within *LandAmerica*.

Accordingly, the Priority Period Severance Claim should be allowed on a priority basis up to the

cap of $10,950, less any other section 507(a)(4) payments made to the holders of the Priority

Period Severance Claims.  The balance of the Priority Period Severance Claims should be

reclassified as general unsecured claims.

**D.**     **The Pre-Priority Period Severance Claims Should Be Reclassified in Their Entirety as General Unsecured Claims.**

37.     Section 507(a)(4) only affords priority treatment to severance claims that were "earned" within 180 days of the petition date.  As this Court stated in *LandAmerica*, "[S]everance pay is 'earned' on the day that an employee shows up to work and is terminated by the company without cause." *Id.*, 435 B.R. at 351.  Because the holders of the Pre-Priority Period Severance Claims were terminated more than 180 days before the Petition Date, they did not "earn" their severance pay during the Priority Period and therefore are not entitled to the priority payment set forth in section 507(a)(4).  Accordingly, the Pre-Priority Period Severance Claims should be reclassified in their entirety as general unsecured claims.

**E.**     **The Invalid Severance Claims Should be Disallowed in Their Entirety.**

38.     The holders of the Invalid Severance Claims resigned post-petition.  The Employment Contract did not create any obligation on the part of the Debtors to pay any severance to any employee who quit.  Accordingly, each Invalid Severance Claim should be disallowed in its entirety.

**RESERVATION OF RIGHTS**

39.     As noted above, the Liquidating Trust reserves the right to file objections to these Claims at a later time on any grounds that bankruptcy or non-bankruptcy law permits.  The Liquidating Trust likewise reserves the right to modify, supplement and/or amend this Objection as it pertains to any claim or claimant herein.

**NOTICE AND PROCEDURE**

40.     Notice of this Objection has been provided to the Severance Claimants identified on **Exhibits C**, **D**, **E**, and **F** and to parties-in-interest in accordance with the Court's

*Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* (entered on December 30, 2009 at Docket No. 6208) (the "Case Management Order").  The Liquidating Trust submits that the following methods of service upon the Severance Claimants should be deemed by the Court to constitute due and sufficient service of this Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for the Severance Claimants is not known to the Liquidating Trust, by first class mail, postage prepaid, on the signatory of the Severance Claimant's proof of claim form or other representative identified in the proof of claim form or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Severance Claimant's behalf in the Debtors' bankruptcy cases.  The Liquidating Trust is serving the Severance Claimant with this Objection and the exhibit on which the CRP Claimant's claim is listed.

41.    To the extent any Severance Claimant timely files and properly serves a response to this Objection by **4:00 P.M. (Eastern) on April 7, 2011** as required by the Case Management Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Liquidating Trust requests that the Court conduct a status conference  with respect to any such responding claimant at **2:00 P.M. (Eastern) on April 14, 2011** and thereafter schedule the matter for a future hearing as to the merits of such claim.  However, to the extent any Severance Claimant fails to timely file and properly serve a response to this Objection as

required by the Case Management Order and applicable law, the Liquidating Trust requests that

the Court enter an order, substantially in the form attached hereto as **Exhibit A**, reclassifying the

Severance Claims as general unsecured claims as set forth in **Exhibits C**, **D**, **E**, and **F**, attached

hereto.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND
## THE OMNIBUS OBJECTION PROCEDURES ORDER

42.     This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the

Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection

Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

43.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no

novel issues of law presented in the Motion, the Liquidating Trust requests that the requirement

that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

44.     No previous request for the relief sought herein has been made to this

Court or any other court.

*[This Objection continues on the next page.]*

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an

Order sustaining this Objection and granting such other and further relief as the Court deems

appropriate.

Dated: Richmond, Virginia
February 27, 2011

TAVENNER & BERAN, PLC


____/s/ Paula S. Beran_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

- and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.
Liquidating Trust*

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER SUSTAINING LIQUIDATING TRUST'S THIRTEENTH OMNIBUS OBJECTION TO CERTAIN PRIORITY CLAIMS: ALLOW UP TO THE STATUTORY CAP, RECLASSIFY, DISALLOW AS APPLICABLE (EMPLOYMENT CONTRACT SEVERANCE CLAIMS)

THIS MATTER having come before the Court on the *Liquidating Trust's*

*Thirteenth Omnibus Objection to Certain Priority Claims: Allow Up to the Statutory Cap,*

*Reclassify, Disallow as Applicable (Employment Contract Severance Claims)* (the "Objection"),[2]

which requested, among other things, that the claims specifically identified on Exhibit C, Exhibit

D, Exhibit E, and Exhibit F attached to the Objection be allowed up to the statutory cap,

reclassified, or disallowed, as applicable,  for those reasons set forth in the Objection; and it

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

appearing that due and proper notice and service of the Objection as set forth therein was good

and sufficient and that no other further notice or service of the Objection need be given; and it

further appearing that no response was timely filed or properly served by the Severance

Claimants being affected by this Order; and it appearing that the relief requested on the

Objection is in the best interest of the Liquidating Trust, the Debtors' estates and creditors and

other parties-in-interest; and after due deliberation thereon good and sufficient cause exists for

the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.      The Objection is SUSTAINED.

2.      The Change-in-Control Severance Claims identified on <u>Exhibit C</u> as

attached hereto and incorporated herein are allowed on a priority basis in the amount of the

statutory cap of $10,950, less any other payments made to the holders of such Change-in-Control

Severance Claims pursuant to section 507(a)(4), in the amount set forth in <u>Exhibit C</u>, and

reclassified as general unsecured claims to the extent the Change-in-Control Severance Claim

exceeds the statutory cap, as set forth in <u>Exhibit C</u>.

3.      The Priority Period Severance Claims, identified on <u>Exhibit D</u> as attached

hereto and incorporated herein, are allowed on a priority basis in the amount of the section

507(a)(4) statutory cap of $10,950, as set forth in <u>Exhibit D</u>, less any other payments made to the

holders of such Priority Period Severance Claims, and are reclassified as general unsecured

claims to the extent the Priority Period Severance Claim exceeds the statutory cap, as set forth in

<u>Exhibit D</u>.

4.      The Pre-Priority Period Severance Claims identified on <u>Exhibit E</u> as attached hereto and incorporated herein are reclassified in their entirety as general unsecured claims.

5.      The Invalid Severance Claims identified on <u>Exhibit F</u> as attached hereto and incorporated herein are forever disallowed in their entirety for all purposes in these bankruptcy cases.

6.      The Liquidating Trust's rights to object, on any grounds that applicable law permits, to any claim, including (without limitation) the Severance Claims, are not waived and are expressly reserved.

7.      The Liquidating Trust shall serve a copy of this Order on the Severance Claimants included on the exhibits to this Order on or before five (5) business days from the entry of this Order.

8.      This Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: Richmond, Virginia

_____, 2010


_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE



WE ASK FOR THIS:

TAVENNER & BERAN, PLC


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                         - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
                         - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/
_____
Lynn L. Tavenner

In re Circuit City Stores, et al.
Case No. 08-35653 (KRH)
**Exhibit B**
ALPHABETICAL LISTING OF CLAIMANTS

| Claim Holder | Claim | Exhibit |
|---|---|---|
| Botelho IV, Antone C<br>Antone C Botelho<br>131 4th Ave<br>Holtsville, NY 11742 | 1838 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Bruce H Besanko<br>191 Farmington Rd<br>Longmeadow, MA 01106 | 14990 | EXHIBIT F<br>DISALLOW - INVALID SEVERANCE |
| Charles, David Lee<br>1800 Blue Forest Dr<br>Prosper, TX 75078 | 538 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Cobbs Jr, Michael W<br>Michael Cobbs<br>4063 Shinault Cove<br>Olive Branch, MS 38654 | 1776 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Curtis W Etheridge<br>19419 Red Sky Ct<br>Land O Lakes, FL 34638 | 14638 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Dawn vonBechmann<br>Neil E McCullagh Esq<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | 14999 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Dunn, Philip J<br>11465 Barrington Bridge Ct<br>Richmond, VA 23233 | 6303 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Ebner, Scott P<br>110 Fieldstone Estates Dr<br>Wentzville, MO 63385 | 8446 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Falconer, Carin E<br>Michael P Cooley Esq<br>Gardere Wynne Sewell LLP<br>1601 Elm St Ste 3000<br>Dallas, TX 75201 | 9826 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Freeman, James M<br>10307 Sageglow<br>Houston, TX 77089 | 6683 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |

| Claim Holder | Claim | Exhibit |
|---|---|---|
| Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | 9054 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | 9056 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | 9150 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Groneck, Kelli A<br>5202 Highberry Wood Rd<br>Midlothian, VA 23112 | 6971 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| Grosse, Andrew<br>1884 Red Oak Ln<br>Spring Grove, IL 60081 | 369 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| James A Marcum<br>55 Wentworth Cove Rd<br>Laconia, NH 03246 | 14989 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| KELLY, JOHN<br>428 GROUNDHOG COLLEGE RD<br>WEST CHESTER, PA 19382 | 6439 | EXHIBIT F<br>DISALLOW - INVALID SEVERANCE |
| Leigh Ann Moore<br>13808 Long Cone Ct<br>Midlothian, VA 23112 | 15092 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| MALIK, ALI I<br>68 MARK SMITH DR<br>MANDEVILLE, LA 70471 | 5851 | EXHIBIT F<br>DISALLOW - INVALID SEVERANCE |
| MCGAUGH, DAMIEN H<br>1805 PORTGLEN<br>LEAGUE CITY, TX 77573 | 7754 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |
| MONTELEONE, JACK T<br>39W374 GRAND AVE<br>ELGIN, IL 60124 | 8640 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-<br>CONTROL SEVERANCE |

| Claim Holder | Claim | Exhibit |
|---|---|---|
| Patrick S Longood<br>Harry Shaia Jr Esq<br>c o Spinella Owings & Shaia PC<br>8550 Mayland Dr<br>Richmond, VA 23294 | 14637 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Patrick S Longood<br>Harry Shaia Jr Esq<br>c o Spinella Owings & Shaia PC<br>8550 Mayland Dr<br>Richmond, VA 23294 | 14772 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| SCHMIDT, GARY<br>830 CARNELLIAN LANE<br>PEACHTREE CITY, GA 30269 | 13062 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-CONTROL SEVERANCE |
| SIDDONS, DEREK J<br>1689 LENOX DR<br>WACONIA, MN 55387 | 6697 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-CONTROL SEVERANCE |
| STEINBACH, DAVID<br>32002 N 19TH LN<br>PHOENIX, AZ 85085 | 2544 | EXHIBIT D<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - PRIORITY<br>PERIOD SEVERANCE |
| Steven P Pappas<br>4413 Chartwell Rd<br>Midlothian, VA 23113 | 13065 | EXHIBIT E<br>RECLASSIFY TO GUC - PRE-PRIORITY PERIOD SEVERANCE |
| vonBechmann, Dawn<br>Neil E McCullagh<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | 8652 | EXHIBIT C<br>REDUCE AND RECLASSIFY<br>REMAINDER TO GUC - CHANGE-IN-CONTROL SEVERANCE |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT C**
**Change-in-Control Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC).**   *See* page 3,  para. 4(a),  p. 4, and pp. 11-12 of Omnibus Objection.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| colspan=9: **Change-in-Control Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC).  See page 3,  para. 4(a),  p. 4, and pp. 11-12 of Omnibus Objection.** | | | | | | | | |
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed** | **Debtor** | **Allowed Priority Claim (Reduced)** | **Reclassified General Unsecured Claim (subj. to further objection)** |
| 9/18/2009 | 14638 | Curtis W Etheridge<br>19419 Red Sky Ct<br>Land O Lakes, FL 34638 | | Priority | $113,968.00 | Circuit City Stores, Inc. | $6,418.00 | $107,550.00 |
| 4/2/2010 | 14999 | Dawn vonBechmann<br>Neil E McCullagh Esq<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | | General Unsecured<br>Priority | $407,946.00<br>$10,950.00 | Circuit City Stores, Inc. | $0.00 | $418,896.00 |
| 1/29/2009 | 8446 | Ebner, Scott P<br>110 Fieldstone Estates Dr<br>Wentzville, MO 63385 | | Priority | $105,000.00 | Circuit City Stores, Inc. | $6,554.00 | $98,446.00 |
| 1/30/2009 | 9826 | Falconer, Carin E<br>Michael P Cooley Esq<br>Gardere Wynne Sewell LLP<br>1601 Elm St Ste 3000<br>Dallas, TX 75201 | Carin E Falconer<br>5904 Old Greenway Dr<br>Glen Allen, VA 23059 | General Unsecured<br>Priority | $214,050.00<br>$10,950.00 | Circuit City Stores, Inc. | $373.00 | $224,627.00 |
| 1/27/2009 | 6683 | Freeman, James M<br>10307 Sageglow<br>Houston, TX 77089 | | Priority | $57,075.00 | Circuit City Stores, Inc. | $4,702.00 | $52,373.00 |
| 1/30/2009 | 9054 | Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | | General Unsecured<br>Priority | $94,050.00<br>$10,950.00 | Circuit City Stores, Inc. | $6,506.00 | $98,494.00 |
| 1/30/2009 | 9056 | Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | | Priority | $10,950.00 | Circuit City Stores, Inc. | $0.00 | $10,950.00 |
| 1/30/2009 | 9150 | Godbout, David Jr<br>1611 Summer St<br>Hudson, WI 54016 | | Priority | $10,950.00 | Circuit City Stores, Inc. | $0.00 | $10,950.00 |
| 1/28/2009 | 6971 | Groneck, Kelli A<br>5202 Highberry Wood Rd<br>Midlothian, VA 23112 | | Priority | $60,000.00 | Circuit City Stores, Inc. | $5,815.00 | $54,185.00 |
| 4/1/2010 | 14989 | James A Marcum<br>55 Wentworth Cove Rd<br>Laconia, NH 03246 | | General Unsecured<br>Priority | $1,339,050.00<br>$10,950.00 | Circuit City Stores, Inc. | $8,065.00 | $1,341,935.00 |
| 1/29/2009 | 7754 | MCGAUGH, DAMIEN H<br>1805 PORTGLEN<br>LEAGUE CITY, TX 77573 | | Priority | $60,000.00 | Circuit City Stores, Inc. | $5,484.00 | $54,516.00 |
| 1/29/2009 | 8640 | MONTELEONE, JACK T<br>39W374 GRAND AVE<br>ELGIN, IL 60124 | | Priority | $130,743.00 | Circuit City Stores, Inc. | $5,685.00 | $125,058.00 |
| 5/28/2009 | 13062 | SCHMIDT, GARY<br>830 CARNELLIAN LANE<br>PEACHTREE CITY, GA 30269 | | General Unsecured<br>Priority | $128,050.00<br>$10,950.00 | Circuit City Stores, Inc. | $5,425.00 | $133,575.00 |
| 1/28/2009 | 6697 | SIDDONS, DEREK J<br>1689 LENOX DR<br>WACONIA, MN 55387 | | Priority | $152,702.50 | Circuit City Stores, Inc. | $6,131.00 | $146,571.50 |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT C**
**Change-in-Control Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC).**    *See* page 3,  para. 4(a),  p. 4, and pp. 11-12 of Omnibus Objection.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| over | | | **Change-in-Control Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC).  See page 3,  para. 4(a),  p. 4, and pp. 11-12 of Omnibus Objection.** | | | | | |
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed** | **Debtor** | **Allowed Priority Claim (Reduced)** | **Reclassified General Unsecured Claim (subj. to further objection)** |
| 1/29/2009 | 8652 | vonBechmann, Dawn<br>Neil E McCullagh<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | Dawn vonBechmann<br>36 Countryside Ln<br>Richmond, VA 23229 | General Unsecured<br>Priority | $407,946.00<br>$10,950.00 | Circuit City Stores, Inc. | $9,892.00 | $409,004.00 |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT D**
**Priority Period Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC).**    *See* **p. 3, para. 4(b), p. 5, and p. 12 of Omnibus Objection.**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Priority Period Severance Claims (Reduce and Allow Priority up to 507(a)(4) Statutory Cap; Reclassify Remainder as GUC). See p. 3, para. 4(b), p. 5, and p. 12 of Omnibus Objection. | | | | | | | | |
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed** | **Debtor** | **Allowed Priority Claim (Reduced)** | **Reclassified General Unsecured Claim (subj. to further objection)** |
| 12/22/2008 | 1838 | Botelho IV, Antone C<br>Antone C Botelho<br>131 4th Ave<br>Holtsville, NY 11742 | | General Unsecured<br>Priority | $57,300.00<br>$10,950.00 | Circuit City Stores, Inc. | $0.00 | $68,250.00 |
| 11/25/2008 | 538 | Charles, David Lee<br>1800 Blue Forest Dr<br>Prosper, TX 75078 | | Priority | $260,000.00 | Circuit City Stores, Inc. | $0.00 | $260,000.00 |
| 12/18/2008 | 1776 | Cobbs Jr, Michael W<br>Michael Cobbs<br>4063 Shinault Cove<br>Olive Branch, MS 38654 | | Priority | $25,905.60 | Circuit City Stores, Inc. | $0.00 | $25,905.60 |
| 1/27/2009 | 6303 | Dunn, Philip J<br>11465 Barrington Bridge Ct<br>Richmond, VA 23233 | Troutman Sanders LLP<br>Vivieon E Kelley<br>Bank of America Plaza<br>600 Peachtree St NE Ste 5200<br>Atlanta, GA 30308-2216 | General Unsecured<br>Priority | $1,215,717.00<br>$10,950.00 | Circuit City Stores, Inc. | $0.00 | $1,226,667.00 |
| 11/24/2008 | 369 | Grosse, Andrew<br>1884 Red Oak Ln<br>Spring Grove, IL 60081 | | Priority | $111,538.46 | Circuit City Stores, Inc. | $0.00 | $111,538.46 |
| 9/9/2010 | 15092 | Leigh Ann Moore<br>13808 Long Cone Ct<br>Midlothian, VA 23112 | | Priority | $58,994.99 | Circuit City Stores, Inc. | $10,950.00 | $48,044.99 |
| 1/29/2009 | 14637 | Patrick S Longood<br>Harry Shaia Jr Esq<br>c o Spinella Owings & Shaia PC<br>8550 Mayland Dr<br>Richmond, VA 23294 | | Priority | $290,238.00 | Circuit City Stores, Inc. | $0.00 | $290,238.00 |
| 10/14/2009 | 14772 | Patrick S Longood<br>Harry Shaia Jr Esq<br>c o Spinella Owings & Shaia PC<br>8550 Mayland Dr<br>Richmond, VA 23294 | | General Unsecured<br>Priority | $279,839.00<br>$10,399.00 | Circuit City Stores, Inc. | $0.00 | $290,238.00 |
| 1/5/2009 | 2544 | STEINBACH, DAVID<br>32002 N 19TH LN<br>PHOENIX, AZ 85085 | | Priority | $26,176.12 | Circuit City Stores, Inc. | $10,950.00 | $15,226.12 |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT E**

**Pre- Priority Period Severance Claims (Disallow as Priority; Reclassify as GUC** *See*  **pp. 3-4,  para. 4(c), p. 5, and p. 13 of Omnibus Objection.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| header: **Pre- Priority Period Severance Claims (Disallow as Priority; Reclassify as GUC).  See pp. 3-4,  para. 4(c), p. 5, and p. 13 of Omnibus Objection.** | | | | | | | |
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed (Disallowed as Priority)** | **Debtor** | **Reclassified General Unsecured Claim (subj. to further objection)** |
| 5/28/2009 | 13065 | Steven P Pappas<br>4413 Chartwell Rd<br>Midlothian, VA 23113 | | General Unsecured<br>Priority | $241,049.98<br>$10,950.00 | Circuit City Stores, Inc. | |

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT F**


**Invalid Severance Claims (Disallow in Entirety)** *See*  **p. 4,  para. 4(d), p. 5, and p. 13 of Omnibus Objection.**


| | | | Invalid Severance Claims (Disallow in Entirety)  See p. 4,  para. 4(d), p. 5, and p. 13 of Omnibus Objection. | | | |
|---|---|---|---|---|---|---|
| **Date Filed** | **Claim Number** | **Claimant Name and Address** | **Additional Notice Address** | **Classification as Filed** | **Claim Amount as filed (Claim Disallowed)** | **Debtor** |
| 4/1/2010 | 14990 | Bruce H Besanko<br>191 Farmington Rd<br>Longmeadow, MA 01106 | Christian & Barton LLP<br>Attn Michael D Mueller<br>909 E Main St Ste 1200<br>Richmond, VA 23219-3095 | General Unsecured<br>Priority | $2,192,718.00<br>$10,950.00 | Circuit City Stores, Inc. |
| 1/26/2009 | 6439 | KELLY, JOHN<br>428 GROUNDHOG COLLEGE RD<br>WEST CHESTER, PA 19382 | | Priority | $1,536,000.00 | Circuit City Stores, Inc. |
| 1/27/2009 | 5851 | MALIK, ALI I<br>68 MARK SMITH DR<br>MANDEVILLE, LA 70471 | | Priority | $168,884.32 | Circuit City Stores, Inc. |



Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233

# Circuit City Stores, Inc.
# Employment Agreement for ▓▓▓▓ 6/10/05   July 18, 2005 ▓▓▓▓

This **EMPLOYMENT AGREEMENT** ("Agreement") is made, entered into, and is effective as of the _16_ day of July 2005 (the "Effective Date"), by and between **Circuit City Stores, Inc.** (the "Company") and ▓▓▓▓▓▓ (the "Executive").

WHEREAS, the Company desires to employ the Executive as Vice President, Internal Audit of Circuit City Stores, Inc.;

WHEREAS, the Company recognizes the Executive's intimate knowledge and experience in the business of the Company, and desires to secure the employment of the Executive in the role of Vice President, Internal Audit of the Company; and

WHEREAS, the Executive will develop and/or come in contact with the Company's proprietary and confidential information which is not readily available to the public, and which is of great importance to the Company and is treated by the Company as secret and confidential information.

NOW, THEREFORE, in consideration of the mutual covenants and agreements of the parties set forth in this Agreement, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## Article 1.  Term of Employment

The Company hereby agrees to employ the Executive and the Executive hereby accepts employment as Vice President, Internal Audit of the Company, in accordance with the terms and conditions set forth herein, for an initial period of one (1) year, commencing as of the Effective Date of this Agreement as indicated above (the "Initial Term"); subject, however, to earlier termination as expressly provided herein. ·

The Initial Term shall automatically be renewed for additional periods of one (1) year each at the end of the Initial Term, and then again after each successive year thereafter (collectively, the "Renewal Periods," which, together with the Initial Term, constitute the "Term" of this Agreement). However, either party may terminate this Agreement at the end of the Initial Term, or at the end of any Renewal Period, by giving the other party written notice of intent not to renew, delivered at least thirty (30) days prior to the end of the Initial Term or any Renewal Period. For purposes of this Agreement, an "Employment Year" shall mean any twelve (12) month period during the Term of this Agreement beginning on the Effective Date or on any anniversary thereof.

## Article 2.  Position and Responsibilities

During the Term of this Agreement, the Executive agrees to serve as Vice President, Internal Audit of the Company. In his capacity as Vice President, Internal Audit of the Company, the Executive shall report directly to the Executive Vice President and Chief Financial Officer, and shall have the

 Initials

Employment Agreement
Page 2 of 15

duties and responsibilities of Vice President, Internal Audit of the Company and such other duties and responsibilities not inconsistent with the performance of his duties as Vice President, Internal Audit of the Company.

## Article 3.  Standard of Care

During the term of this Agreement, the Executive agrees to devote substantially his full-time attention and energies to the Company's business.  The Executive covenants, warrants, and represents that he shall:

    (a)    Devote his full and best efforts and talents full time to the performance of his employment obligations and duties for the Company;

    (b)    Exercise the highest degree of loyalty and the highest standards of conduct in the performance of his duties;

    (c)    Comply with all rules, regulations, and policies established or issued by the Company; and

    (d)    Refrain from taking advantage, for himself or others, of any corporate opportunities of the Company.

## Article 4.  Other Employment.

The Executive shall not, during the term hereof, be interested directly or indirectly, in any manner, as partner, officer, director, investor, stockholder, advisor, employee, or in any other capacity, in any other business similar to Company's business for the Executive's personal advantage or benefit or that of others. Any other employment or position which might reasonably be deemed contrary to the best interests of the Company is prohibited.  During the term of employment hereunder, the Executive agrees to obtain the Company's written consent prior to entering into any other occupation, even if dissimilar to that of the Company.  Such consent may be granted or withheld, in the Company's absolute discretion.  Nothing herein contained shall be deemed to prevent or limit the right of the Executive to invest in the capital stock or other securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent the Executive from investing in real estate for his own benefit (so long as such investment (a) is not related to or in support of any entity engaged in a business similar to that of the Company or (b) does not detract from the Executive's performance of his duties and obligations hereunder).

## Article 5.  Compensation and Benefits

As remuneration for all services to be rendered by the Executive during his employment, and as consideration for complying with the covenants herein, the Company shall pay and provide to the Executive the following:

    **5.1.  Base Salary.**  During the Term of this Agreement, the Company shall pay the Executive a Base Salary in an amount which shall be established and approved by the Compensation Committee of the Board of Directors; provided, however, that such Base Salary shall be established at a rate of $265,000 per year.  In addition, the Company shall not be obligated to maintain, increase, or refrain from



Initials

Employment Agreement
Page 3 of 15

reducing or amending such Base Salary. This Base Salary shall be subject to all appropriate federal and state withholding taxes and payable in accordance with the normal payroll practices of the Company. The Base Salary shall be reviewed at least annually following the Effective Date of this Agreement, while the Term of this Agreement is in force, to ascertain whether, in the judgment of the Compensation Committee, such Base Salary should be changed. If changed, the Base Salary as stated above shall, likewise, be changed for all purposes of this Agreement.

**5.2.    Annual Bonus.**  In addition to his Base Salary, the Executive shall be entitled to participate in the Company's short-term incentive program, as such program may exist from time to time during the Term of this Agreement.

Under the Company's short-term incentive plan, the Executive has the opportunity to earn an annual bonus with respect to any fiscal year of the Company ("Annual Bonus"). The Annual Bonus, if earned, with respect to any fiscal year, will generally be in an amount that is not less than thirty percent (35%) of the Executive's Base Salary for the fiscal year with respect to which the Annual Bonus is being paid (the "Minimum Bonus Rate"). Such Annual Bonus is commensurate with the position of Vice President, Internal Audit of the Company.

The award and amount of any Annual Bonus shall be determined under the Company's short-term incentive plan, at the sole discretion of the Company's Compensation Committee. If the Minimum Bonus Rate is changed, it shall, likewise, be changed for all purposes of this Agreement.

**5.3.    Long-Term Incentives.**  During the Term of this Agreement, the Executive shall be eligible to participate in the Company's long-term incentive plan, to the extent that the Board of Directors of the Company or the Compensation Committee, in their discretion, determines is appropriate.

**5.4.    Retirement Benefits.**  During the Term of this Agreement, the Company shall provide to the Executive the opportunity for participation in all Company retirement, insurance, fringe benefit, and executive compensation plans and programs, subject to the eligibility and participation requirements of such plans.

**5.5.    Employee Benefits.**  During the Term of this Agreement, the Company shall provide the Executive all benefits, as commensurate with the position of Vice President, Internal Audit of the Company, subject to the eligibility requirements and other provisions of such arrangements. Such benefits may include group term life insurance, comprehensive health and major medical insurance, dental and life insurance, and short-term and long-term disability.

**5.6.    Perquisites.**  During the Term of this Agreement, the Company shall provide to the Executive, at the Company's cost, all perquisites, which are commensurate with the position of Vice President, Internal Audit of the Company.

**5.7.    Right to Change Plans.**  By reason of Articles 5.5 and 5.6 herein, the Company shall not be obligated to institute, maintain, or refrain from changing, amending, or discontinuing any benefit plan or perquisite.



Initials



Employment Agreement
Page 4 of 15

## Article 6.  Expenses

During the Term of this Agreement, the Company shall pay or reimburse the Executive for all ordinary and necessary expenses, in a reasonable amount, which the Executive incurs in performing his duties under this Agreement including, but not limited to, travel, entertainment, professional dues and subscriptions, and all dues, fees, and expenses associated with membership in various professional, business, and civic associations and societies in which the Company finds that the Executive's participation is in the best interests of the Company.  The payment of reimbursement of expenses shall be subject to such rules concerning documentation of expenses and the type or magnitude of such expenses as the Compensation Committee of the Board of Directors may establish from time to time.

## Article 7.  Employment Termination

**7.1.  Termination Due to Retirement or Death.**  In the event the Executive's employment ends by reason of Retirement or the Executive's death during the term of this Agreement, the Executive's benefits shall be determined in accordance with the Company's retirement, survivor's benefits, insurance, and/or other applicable programs of the Company then in effect.  In addition, all stock grants, except performance-based grants in the case of Retirement, will become immediately vested and may be exercised by the Executive, the Executive's personal representatives, distributees, legatees, or estate at any time before the expiration date of the grant.

The Effective Date of Termination due to Retirement or death shall be (a) ninety (90) days following the date the Executive provides the Company with written notice that the Executive is ending employment by reason of Retirement or (b) on the Executive's date of death, as the case may be.  Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive or, if applicable, the Executive's estate; (a) any Base Salary or Annual Bonus that was accrued but not yet paid as of the Effective Date of Termination; and (b) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

**7.2.  Termination Due to Disability.**  The Company shall have the right to terminate the Executive's employment for disability.  For the purposes of this Agreement, disability shall mean any physical or mental illness or injury that causes the Executive to be unable to substantially perform the Executive's normal duties; provided however that the Executive shall not be considered disabled until: (i) the Executive has been so disabled for 180 days during any period of twelve (12) consecutive months; (ii) the Executive's attending physician shall have furnished to the Company certification that the return of the Executive to his normal duties is impossible or improbable; or (iii) the Executive is determined to be totally disabled by the disability insurer then insuring the Executive, if any.

The Effective Date of Termination due to Disability shall be specified, in a written notice, by the Executive's immediate manager, and such written notice shall be delivered to the Executive, but shall be no less than thirty (30) calendar days after the delivery of such written notice to the Executive.  Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive [or, if applicable, the Executive's estate]:  (a) any salary that was accrued but not yet paid as of the Effective Date of Termination; (b) the unpaid Annual Bonus, if any, with respect to the fiscal year preceding the Effective Date of Termination (such Annual Bonus, if any, to be determined in the manner it would have been determined and payable at the time it would have been payable under Article 5.2 had there been no



Initials

termination of the Employment Period); and (c) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

It is expressly understood that the Disability of the Executive for a period of one hundred eighty (180) calendar days or less in the aggregate during any period of twelve (12) consecutive months, in the absence of any reasonable expectation that his Disability will exist for more than such a period of time, shall not constitute a failure by him to perform his duties hereunder and shall not be deemed a breach or default, and the Executive shall receive full compensation for any such period of Disability or for any other temporary illness or incapacity during the term of this Agreement.

If the employment of the Executive terminates because of Disability, all of the Executive's outstanding stock grants, excluding restricted stock grants issued under a performance based plan, will become immediately vested, effective as of the date of the Executive's Disability. Then, the Executive, the Executive's personal representatives, distributees, or legatees may exercise the Executive's grants at any time before the expiration date of the grant.

**7.3. Voluntary Termination by the Executive.** The Executive may terminate his employment and this Agreement at any time by giving the Company at least thirty (30) days written notice. The Company reserves the right to require the Executive not to work during the notice period but shall pay the Executive his full Base Salary, at the rate then in effect as provided in Article 5.1 herein, through the notice period plus all other benefits to which the Executive has a vested right on the last day of employment (for purposes of this paragraph, the Executive shall not be paid any Annual Bonus with respect to the fiscal year in which voluntary termination under this Article 7.3 occurs). The Company thereafter shall have no further obligations under this Agreement.

**7.4 Involuntary Termination by the Company Without Cause.** The Company may terminate the Executive's employment, at any time, for any reason other than death, Disability, Retirement, or for "Cause", by providing the Executive with at least thirty (30) days written notice; provided, however, that for purposes of this Article 7.4, no variation, alteration, modification, cancellation, change or amendment made to this Agreement pursuant to Article 12.3 or 12.4 shall be deemed an involuntary termination without Cause.

(a)  Upon the Effective Date of Termination specified by the Company for termination by the Company without cause, the Company shall pay to the Executive, an amount equal to the product of six (6) months of the Executive's Base Salary for the fiscal year in which the Executive's Effective Date of Termination occurs according to the Company's regularly scheduled payroll practices, or as otherwise determined by the Company. In addition, the Company shall pay to the Executive an amount equal to the product of the Executive's earned Annual Bonus established for the fiscal year in which the Executive's Effective Date of Termination occurs according to the Company's regularly scheduled bonus payment practices or as otherwise determined by the Company. In addition, the Company shall continue, at the same cost to the Executive as existed as of the Effective Date of Termination, all health and welfare benefit plan participation, as permitted by law, for one (1) full year following the Executive's termination of employment; provided, however, that the applicable COBRA "period of coverage" under any plan subject to Section 4980B of the Internal Revenue Code of 1986, as amended (the "Code"), or Sections 601 through 609 of the Employee Retirement Income Security Act of 1974 (ERISA) shall begin as of the Effective Date of Termination.



Initials

Employment Agreement
Page 6 of 15

(b)    The Company shall also provide the Executive with three (3) months of outplacement services.

(c)    Any unvested stock options or any outstanding restricted stock, excluding restricted stock grants issued under a performance based plan, that would become vested (that is, transferable and non-forfeitable) if the Executive remained an employee through the Initial Term or the then current Renewal Period of this Agreement will become vested as of the date of the Executive's termination of employment. The Executive must satisfy the tax withholding requirements.

The Company thereafter shall have no further obligations under this Agreement.

**7.5.  Termination For Cause.** Nothing in this Agreement shall be construed to prevent the Company from terminating the Executive's employment under this Agreement, without notice or liability for doing so, for "Cause."

For purposes of this Agreement, "Cause" means:

(a)    The Executive's material breach of this Agreement, which breach is not cured within ten (10) days of receipt by the Executive of written notice from the Company specifying the breach;

(b)    The Executive's gross negligence in the performance of his material duties hereunder, intentional nonperformance or intentional misperformance of such duties, misconduct or refusal to abide by or comply with the directives of the Board, his superior officers, or the Company's policies and procedures, which actions continue for a period of ten (10) days after receipt by the Executive of written notice of the need to cure or cease;

(c)    Conviction of a felony or any crime involving moral turpitude;

(d)    The Executive engaging in illegal conduct, dishonesty or fraud with respect to the business or affairs of the Company that in the reasonable judgment of the Company materially and adversely affects the operations or reputation of the Company;

(e)    Failure of the Executive to disclose to the Executive's manager a conflict of interest, of which the Executive knew or, with reasonable diligence, would have known, in connection with any transaction entered into on behalf of the Company; or

(f)    Failure of the Executive to agree to a modification of this Agreement, pursuant to paragraph 12.3 below, when the purpose of the modification is to comply with applicable federal, state and/or local laws or regulations, or when such modification is designed to further define the restrictions of Article 8 or otherwise enhance the enforcement of Article 8 without increasing the scope of the Article 8 restrictions.

In the event this Agreement is terminated for Cause, the Company shall pay the Executive his Base Salary through the Effective Date of Termination for cause and the Executive shall immediately thereafter forfeit all rights and benefits (other than vested benefits) he would otherwise have been



Initials



Employment Agreement
Page 7 of 15

entitled to receive under this Agreement. The Company thereafter shall have no further obligations under this Agreement.

### Article 8. Noncompetition and Confidentiality

#### 8.1. Noncompetition.

(a)     During the Executive's employment and for a period of one (1) year following the last day of the Executive's employment, the Executive shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business that is engaged in the same or similar business of the Company in one or more Metropolitan Statistical Areas ("MSAs"), specifically including Best Buy, Radio Shack, Wal-Mart and CompUSA, in which the Company is doing business on the last day of the Executive's employment. A business will not be considered to be in competition with the Company for purposes of this paragraph 8.1(a) or paragraph 8.1(b) below if:

(i)     The business or the operating unit of the business in which the Executive is employed or with which the Executive is associated (collectively the "Business Unit") is not engaged in the retail sales of consumer electronics;

(ii)     If sales of the Business Unit's products or services in the retail sales and service of consumer electronics constitute less than ten percent (10%) of such Business Unit's sales; or

(iii)     If the sales of the Business Unit in the retail sales and service of consumer electronics do constitute more than ten percent (10%) of the sales of the Business Unit, but the Business Unit solely operates outside of North America.

Notwithstanding the foregoing, nothing herein shall be deemed to prevent or limit the right of the Executive to invest in the capital stock or other securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent Employee from investing in real estate for his own benefit (as long as such investment is not related to or in support of any entity engaged in the same or similar business as the Company in competition with the Company in one or more MSA's in which the Company is doing business during the Executive's employment).

(b)     During the Executive's employment and for a period of one (1) year following the last day of the Executive's employment, the Executive shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business engaged in the same or similar business of the Company in one or more MSAs where, on the last day of the Executive's employment, the Company is engaged in real estate site selection or has taken further steps toward the commencement of operations in the future, of which the Executive is aware.

(c)     The Executive agrees that competition, as set forth in Article 8.1(a) above, shall include, but not be limited to, engaging in competitive activity, as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity.



Initials

(d)     It is the specific intent of the parties that the Executive shall be restricted from competing directly or indirectly with any segment of the Company's business in which the Executive engaged prior to the last day of his employment and from any segment of the Company's business about which the Executive acquired proprietary or confidential information during the course of his employment.

(e)     If any provision of this Article 8.1 relating to the time period, geographic area or scope of restricted activities shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope of activities, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope of activities shall be deemed to be, and thereafter shall become, the maximum time period, scope of activities or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(f)     The Executive and the Company have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon the Executive is reasonable in light of the legitimate interests of the Company, and it is not unduly harsh upon the Executive's ability to earn a livelihood.

**8.2. Non-Solicitation of Employees.** The Executive agrees that during the Executive's employment with the Company and for a period of one (1) year following the last day of the Executive's employment, the Executive shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever or hire any individual employed by the Company. For purposes of this Article 8.2, employee shall mean any individual employed by the Company on the last day of the Executive's employment or within the three-month period prior to the last day of the Executive's employment.

**8.3. Confidentiality.** The Company has advised the Executive and the Executive acknowledges that it is the policy of the Company to maintain as secret and confidential all Protected Information (as defined below), and that Protected Information has been and will be developed at substantial cost and effort to the Company. The Executive agrees to hold in strict confidence and safeguard any information of or about the Company gained by the Executive in any manner or from any source during the Executive's employment. The Executive shall not, without the prior written consent of the Company, at any time, directly or indirectly, divulge, furnish, use, disclose or make accessible to any person, firm, corporation, association, or other entity (otherwise than as may be required in the regular course of the Executive's employment), either during the Executive's employment with the Company or subsequent to the last day of the Executive's employment, any Protected Information, or cause any such information of the Company to enter the public domain.

The Executive understands and agrees that any information, data and/or trade secrets about Company or its suppliers and/or distributors is the property of the Company and is essential to the protection of the Company's goodwill and to the maintenance of the Company's competitive position and accordingly should be kept secret. For purposes of this Agreement, "Protected Information" means trade secrets, confidential and proprietary business information of or about the Company, and any other information of the Company, including, customer lists (including potential customers), sources of supply, processes, plans, materials, pricing information, internal memoranda, marketing plans, promotional plans,

 Initials



Employment Agreement
Page 9 of 15

internal policies, research, purchasing, accounting and financial information, computer programs, hardware, software, and products and services which may be developed from time to time by the Company and its agents or employees, including the Executive; provided, however, that information that is in the public domain (other than as a result of a breach of this Agreement), approved for release by the Company or lawfully obtained from third parties who are not bound by a confidentiality agreement with the Company, is not Protected Information.

Nothing contained in this Article is intended to reduce in any way protection available to the Company pursuant to the Uniform Trade Secrets Act as adopted in Virginia or any other state or other applicable laws which prohibit the misuse or disclosure of confidential or proprietary information.

**8.4. Acknowledgement of Covenants.** The parties hereto acknowledge that the Executive's services are of a special, extraordinary, and intellectual character which gives him unique value, and that the business of the Company and its subsidiaries is highly competitive, and that violation of any of the covenants provided in this Article 8 would cause immediate, immeasurable, and irreparable harm, loss, and damage to the Company not adequately compensable by a monetary award. The Executive acknowledges that the time, scope of activities and geographical area restrained by the provisions of this Article 8 are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the Company's business. The Executive further acknowledges that he and the Company have negotiated and bargained for the terms of this Agreement and that the Executive has received adequate consideration for entering into this Agreement. In the event of any such breach or threatened breach by the Executive of any one or more of such covenants, the Company shall be entitled to such equitable and injunctive relief as may be available to restrain the Executive from violating the provisions hereof. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or in equity for such breach or threatened breach, including the recovery of damages and the immediate termination of the employment of the Executive hereunder for cause.

## Article 9. Change in Control

**9.1. Change in Control.** This Article 9 shall not become effective, and the Company shall have no obligation hereunder, if the employment of the Executive with the Company shall terminate prior to a Change in Control (as defined in Article 9.2 below) of the Company.

**9.2. Definition of Change in Control.** Change in Control of the Company means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

(a)     The acquisition by any individual, entity, or group (a "Person"), including a "person" within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Exchange Act, of thirty-five percent (35%) or more of either: (i) the then outstanding shares of common stock of Circuit City (the "Outstanding Common Stock"); or (ii) the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following: (A) any acquisition directly from the Company (excluding an acquisition resulting from the exercise of an option, conversion right, or exchange privilege unless the security being so exercised, converted or exchanged was acquired directly from the Company); (B) any acquisition by the


Initials



Employment Agreement
Page 10 of 15

Company; (C) any acquisition by an employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; or (D) any acquisition by any corporation pursuant to a transaction which complies with clauses (i), (ii), and (iii) of subsection (c) of this Article 9.2;

(b) Individuals who, as of the Effective Date, constitute the Board of Directors (the "Incumbent Board") cease for any reason to constitute at least a majority of such Board; provided that any individual who becomes a director of the Company subsequent to the Effective Date, whose election, or nomination for election by the Company's stockholders, was approved by the vote of at least a majority of the directors then comprising the Incumbent Board shall be deemed a member of the Incumbent Board; and provided further, that any individual who was initially elected as a director of the Company as a result of an actual or threatened election contest, as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or any other actual or threatened solicitation of proxies or consents by or on behalf of any Person other than the Board shall not be deemed a member of the Incumbent Board;

(c) The consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (a "Corporate Transaction"); excluding, however, a Corporate Transaction pursuant to which: (i) all or substantially all of the individuals or entities who are the beneficial owners, respectively, of the Outstanding Common Stock and the Outstanding Voting Securities immediately prior to such Corporate Transaction will beneficially own, directly or indirectly, more than sixty percent (60%) of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such Corporate Transaction (including, without limitation, a corporation, which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or indirectly) in substantially the same proportions relative to each other as their ownership, immediately prior to such Corporate Transaction, of the Outstanding Common Stock and the Outstanding Voting Securities, as the case may be; (ii) no Person (other than: the Company; any employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; the corporation resulting from such Corporate Transaction; and any Person which beneficially owned, immediately prior to such Corporate Transaction, directly or indirectly, twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent (25%) or more of, respectively, the outstanding shares of common stock of the corporation resulting from such Corporate Transaction or the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors; and (iii) individuals who were members of the Incumbent Board will constitute at least a majority of the members of the board of directors of the corporation resulting from such Corporate Transaction; or

(d) The consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

 Initials



Employment Agreement
Page 11 of 15

For purposes of this Article 9, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

**9.3.    Change-in-Control Severance Benefits.** If at any time during the Term of this Agreement there is a Change in Control of the Company and the Executive's employment is terminated for any reason other than death, Disability, Retirement, Voluntary Termination, or Involuntary Termination for Cause within the one (1) year period following the Change in Control, the Company shall provide to the Executive the following:

(a)    Base Salary and all other benefits due him as if he had remained an employee pursuant to Article 5 through the remainder of the month in which the termination occurs, less applicable withholding taxes and other authorized payroll deductions;

(b)    A lump-sum severance allowance in an amount that is equal to the product of one (1) times both the Executive's Base Salary at the rate in effect immediately prior to the termination and the Executive's target Annual Bonus established for the fiscal year in which the Executive's termination of employment occurs;

(c)    Continuation at the same cost to the Executive as existed as of the Effective Date of Termination of Agreement of all health, welfare, and benefit plan participation for one (1) full year following employment termination;

(d)    Provision of outplacement services for a period of three (3) months for the Executive;

(e)    A lump-sum payment equal to the one (1) year cost of perquisites outlined in Article 5.6 above; and

(f)    Any unvested stock options or any outstanding restricted stock, excluding restricted stock grants issued under a performance based plan, that would become vested (that is, transferable and non-forfeitable) if the Executive remained an employee through the Initial Term or the then current Renewal Period of this Agreement will become vested as of the date of the Executive's termination of employment. The Executive must satisfy the tax withholding requirements.

**9.4.    Excise Tax Equalization Payment.** In the event that the Executive becomes entitled to severance benefits under this Agreement or any other agreement with or plan of the Company (in the aggregate, the "Total Payments"), if any of the Total Payments will [be subject to the tax (the "Excise Tax") imposed by Section 4999 of the Code] or any similar excise tax that may hereafter be imposed), the Company shall pay to the Executive in cash an additional amount (the "Gross-Up Payment"), such that the net amount retained by the Executive after deduction of any Excise Tax upon the Total Payments and any federal, state, and local income tax and Excise Tax upon the Gross-Up Payment provided for by this Article 9.4 (including FICA and FUTA), shall be equal to the Total Payments. The Company shall



Initials



Employment Agreement
Page 12 of 15

make such payment to the Executive as soon as practicable following the Effective Date of Termination, but in no event beyond thirty (30) days from such date.

For purposes of determining the amount of the Gross-Up Payment, the Executive shall be deemed to pay federal income taxes at the highest marginal rate of federal income taxation in the calendar year in which the Gross-Up Payment is to be made, and state and local income taxes at the highest marginal rate of taxation in the state and locality of the Executive's residence on the Effective Date of Termination, net of the maximum reduction in federal income taxes which could be obtained from deduction of such state and local taxes.

The Company's Compensation Committee shall determine, based upon the advice of the Company's independent certified public accountants, whether any payments or benefits hereunder are subject to the Excise Tax.

**9.5. Subsequent Recalculation.** In the event the Internal Revenue Service adjusts the computation of the Company under Article 9.4 herein so that the Executive did not receive the greatest net benefit, the Company shall reimburse the Executive for the full amount necessary to make the Executive whole, plus a market rate of interest, as determined by the Compensation Committee.

**Article 10. Assignment**

**10.1. Assignment by Company,** This Agreement may and shall be assigned or transferred to, and shall be binding upon and shall inure to the benefit of, any successor of the Company, and any such successor shall be deemed substituted for all purposes of the "Company" under the terms of this Agreement. As used in this Agreement, the term "successor" shall mean any person, firm, corporation, or business entity which, at any time, whether by merger, purchase, or otherwise, acquires all or substantially all of the assets or the business of the Company. In addition, the obligations of the Executive under Articles 8 and 12 of this Agreement shall continue after the termination of the Executive's employment and shall be binding on the Executive's heirs, executors, legal representatives and assigns.

Failure of the Company to obtain the agreement of any successor to be bound by the terms of this Agreement prior to the effectiveness of any such succession shall be a breach of this Agreement, and shall immediately entitle the Executive to compensation from the Company in the same amount and on the same terms as the Executive would be entitled in the event of an Involuntary Termination of Employment without Cause as provided by Article 7.4. Except as provided herein, the Company may not otherwise assign this Agreement.

**10.2. Assignment by Executive.** The services to be provided by the Executive to the Company hereunder are personal to the Executive, and the Executive's duties may not be assigned by the Executive; provided, however, that this Agreement shall inure to the benefit of and be enforceable by the Executive's personal or legal representatives, executors, and administrators, successors, heirs, distributees, devisees, and legatees. If the Executive dies while any amounts payable to the Executive hereunder remain outstanding, all such amounts, unless otherwise provided herein, shall be paid in accordance with the terms of this Agreement to the Executive's devisee, legatee, or other designee or, in the absence of such designee, to the Executive's estate.



Initials



Employment Agreement
Page 13 of 15

## Article 11.  Dispute Resolution and Notice

**11.1.  Issue Resolution.**  Except for actions initiated by the Company to enjoin a breach by, and/or recover damages from the Executive related to violation of any of the restrictive covenants in Article 8 of this Agreement, which Company may bring in an appropriate court of law or equity, any disagreement between the Executive and the Company concerning anything covered by this Agreement or concerning other terms or conditions of the Executive's employment or the termination of the Executive's employment will be settled by final and binding arbitration pursuant to the Company's Associate Issue Resolution Program.  The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures are incorporated herein by reference as if set forth in full in this Agreement.  The decision of the arbitrator will be final and binding on both the Executive and the Company and may be enforced in a court of appropriate jurisdiction.

**11.2.  Notice.**  Any notices, requests, demands, or other communications provided for by this Agreement shall be sufficient if in writing, and if sent by registered or certified mail to the Executive at the last address he has filed in writing with the Company or, in the case of the Company, at its principal offices.

## Article 12.  Miscellaneous

**12.1.  Entire Agreement.**  This Agreement supersedes any prior agreements or understandings, oral or written, between the parties hereto, with respect to the subject matter hereof, and constitutes the entire agreement of the parties with respect thereto.  Without limiting the generality of the foregoing sentence, this Agreement completely supersedes any and all prior employment agreements entered into by and between the Company, and the Executive, and all amendments thereto, in their entirety.

**12.2.  Return of Materials.**  Upon the termination of the Executive's employment with the Company, however such termination is effected, the Executive shall promptly deliver to Company all property, records, materials, documents, and copies of documents concerning the Executive's business and/or its customers (hereinafter collectively "Company Materials") which the Executive has in his possession or under his control at the time of termination of his employment.  The Executive further agrees not to take or extract any portion of Company Materials in written, computer, electronic or any other reproducible form without the prior written consent of the Executive's immediate manager.

**12.3.  Modification.**  This Agreement shall not be varied, altered, modified, canceled, changed, or in any way amended except by mutual agreement of the parties in a written instrument executed by the parties hereto or their legal representatives.

**12.4.  Severability.**  It is the intention of the parties that the provisions of the restrictive covenants herein shall be enforceable to the fullest extent permissible under the applicable law.  If any clause or provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, then the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid or unenforceable, there shall be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and as may be legal, valid, and enforceable.



Initials



Employment Agreement
Page 14 of 15

**12.5. Counterparts.** This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.

**12.6. Tax Withholding.** The Company may withhold from any benefits payable under this Agreement all federal, state, city, or other taxes as may be required pursuant to any law or governmental regulation or ruling.

**12.7. Restrictive Covenants of the Essence.** The restrictive covenants of the Executive set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement; and the existence of any claim or cause of action of the Executive against the Company, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by the Company of the restrictive covenants contained herein. The Company shall at all times maintain the right to seek enforcement of these provisions whether or not the Company has previously refrained from seeking enforcement of any such provision as to the Executive or any other individual who has signed an agreement with similar provisions.

**12.8 Beneficiaries.** The Executive may designate one (1) or more persons or entities as the primary and/or contingent beneficiaries of any amounts to be received under this Agreement. Such designation must be in the form of a signed writing acceptable to the Executive's immediate manager. The Executive may make or change such designation at any time.

**12.9. Payment Obligation Absolute.** The Company's obligation to make the payments and the arrangement provided for herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, counterclaim, recoupment, defense, or other right which the Company may have against the Executive or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from the Executive or from whomsoever may be entitled thereto, for any reasons whatsoever.

The Executive shall not be obligated to seek other employment in mitigation of the amounts payable or arrangements made under any provision of this Agreement, and the obtaining of any such other employment shall in no event effect any reduction of the Company's obligations to make the payments and arrangements required to be made under this Agreement; provided, however, that continued health, welfare, and benefit plan participation pursuant to Article 7.4 or Article 9.3 herein shall be discontinued in the event the Executive becomes eligible to receive substantially similar benefits from a successor employer.

**12.10. Contractual Rights to Benefits.** This Agreement establishes and vests in the Executive a contractual right to the benefits to which he is entitled hereunder. However, nothing herein contained shall require or be deemed to require, or prohibit or be deemed to prohibit, the Company to segregate, earmark, or otherwise set aside any funds or other assets, in trust or otherwise, to provide for any payments to be made or required hereunder.



Initials



Employment Agreement
Page 15 of 15

### Article 13.  Governing Law

To the extent not preempted by federal law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without reference to Virginia's choice of law statutes or decisions.

IN WITNESS WHEREOF, the Executive and the Company have executed this Agreement as of the Effective Date.

**CIRCUIT CITY STORES, INC.**

By: _____
      Eric A. Jonas, Jr.
      Senior Vice President, Human Resources

**EXECUTIVE:**



**ATTEST:**

_____


Initials