Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | **:** Chapter 11 |
| | **:** |
| CIRCUIT CITY STORES, INC., <u>et al.</u>, | **:** Case No. 08-35653-KRH |
| | **:** |
| Debtors. | **:** (Jointly Administered) |
| | **:** |
| | **:** |

### NOTICE OF LIQUIDATING TRUST'S NINETEENTH OMNIBUS
### OBJECTION TO CERTAIN EMPLOYEE PRIORITY CLAIMS:
### NO LIABILITY; NOT ENTITLED TO PRIORITY; ALLOW UP TO THE
### STATUTORY CAP; AND RECLASSIFY, AS APPLICABLE
### (<u>MISCELLANEOUS HR PRIORITY CLAIMS</u>)

**PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the *Liquidating Trust's Nineteenth Omnibus Objection to Certain Employee Priority Claims:  No Liability; Not Entitled to Priority; Allow up to the Statutory Cap; and Reclassify, as Applicable (Miscellaneous HR Priority Claims)* (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as <u>Exhibit 1</u>.  By the Objection, the Liquidating Trust is seeking to reclassify certain claims, reduce certain claims and disallow certain claims.

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively,

the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

| TO: | Claim<br>Number | Claim<br>Amount | Reference<br>Objection |
|-----|-----------------|-----------------|------------------------|

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION. YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION. THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE AND A REQUEST FOR A HEARING ARE FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY 4:00 P.M. (EASTERN TIME) ON APRIL 7, 2011, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

**Critical Information for Claimants
Choosing to File a Response to the Objection**

Who Needs to File a Response:  If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

Response Deadline:  The Response Deadline is **4:00 p.m. (Eastern Time) on April 7, 2011 (the "Response Deadline")**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED AND RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

> Clerk of the Bankruptcy Court
> United States Bankruptcy Court
> 701 East Broad Street – Room 4000
> Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:  (804) 783-0178 |
| Telecopy:  (310) 201-0760 | |

The status hearing on the Objection will be held at  **2:00 p.m. (Eastern Time) on April 14, 2011 at:**

> United States Bankruptcy Court
> 701 East Broad Street – Courtroom 5000
> Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do <u>not</u> need to appear at the status hearing on the Objection.

### Procedures for Filing a Timely Response and Information Regarding the Hearing on the Objection

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

> a.     a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;
>
> b.     the claimant's name and an explanation for the amount of the Claim;
>
> c.     a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts

that support the Response, setting forth the reasons why the Bankruptcy Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d.      a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e.      a declaration of a person with personal knowledge of the relevant facts that support the Response;

f.      the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address").  If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g.      to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses").  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**.  To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf.  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**.  If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

## Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.


Dated:    February 28, 2011

/s/ Paula S. Beran
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, P.L.C.
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
        pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
        acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.
Liquidating Trust*

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## LIQUIDATING TRUST'S NINETEENTH OMNIBUS OBJECTION TO CERTAIN EMPLOYEE PRIORITY CLAIMS:  NO LIABILITY; NOT ENTITLED TO PRIORITY; ALLOW UP TO THE STATUTORY CAP; AND RECLASSIFY, AS APPLICABLE (MISCELLANEOUS HR PRIORITY CLAIMS)

### CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES

### AND CLAIMS IN THE EXHIBITS ATTACHED TO THIS OBJECTION.

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second*

*Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and*

*Debtors in Possession and its Official Committee of Creditors Holding General Unsecured*

*Claims* (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

*Nineteenth Omnibus Objection to Certain Employee Priority Claims:  No Liability; Not Entitled to Priority; Allow up to the Statutory Cap; and Reclassify, as Applicable (Miscellaneous HR Priority Claims)* (the "Objection"), and hereby moves this court (the "Court"), pursuant to sections 105 and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for entry of an order in the form attached hereto as **Exhibit A**, granting the relief sought by this Objection, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502, Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## SUMMARY OF RELIEF REQUESTED

2.    This Objection is based on a review of the claims set forth in **Exhibit B**, attached hereto, (the "Employee Priority Claims") and of the books and records of the debtors in the above-captioned cases (the "Debtors").  The Employee Priority Claims are listed in alphabetical order by claim number in **Exhibit B**.

3.    With the exceptions identified in footnote 2, hereof, each Employee Priority Claim is brought by an employee or former employee of Circuit City Stores, Inc.

("Circuit City") and asserts the right to payment on a priority basis pursuant to section 507(a)(4)

of the Bankruptcy Code. [2]

        4.     The Liquidating Trustee has divided the Employee Priority Claims into the

categories set forth below.

        **A.**      **The Multiple Category Claims**

        5.     Certain Employee Priority Claims assert multiple grounds for priority

payment in one proof of claim (the "Multiple Category Claims").  The Multiple Category Claims

include, but are not limited to, demands for paid time off ("PTO"), wages, severance, bonuses

pursuant to various incentive programs offered by Circuit City, and equity holdings.  The

specific basis for each Multiple Category Claim is listed in the last column of **Exhibits C**, **D**, and

**E**, attached hereto.

        6.     The Liquidating Trustee has determined that certain of the Multiple

Category Claims should be disallowed in their entirety because no amount is owing (the "No

Liability Multiple Category Claims").  The No Liability Multiple Category Claims are listed on

**Exhibit C**, attached hereto.  The nature of each No-Liability Multiple Category Claim and the

specific reason for disallowance is set forth in the last column of **Exhibit C**.  Accordingly, the

Liquidating Trustee requests that the No Liability Multiple Category Claims be disallowed in

their entirety.

---

[2] A small number of Employee Priority Claims assert the right to payment on a general unsecured basis, secured basis or administrative basis.  They are included in this Objection because they are asserted by employees and are otherwise similar to the remaining Employee Priority Claims.  The attached exhibits state the basis on which each Employee Priority Claim asserts payment.

7.      The Liquidating Trustee has determined that certain of the Multiple Category Claims should be allowed on a priority basis, but in an amount that is less than the amount asserted in the claim (the "Reduced and Reclassified Multiple Category Claims").  The Reduced and Reclassified Multiple Category Claims are listed on **Exhibit D**, attached hereto. The nature of each Reduced and Reclassified Multiple Category Claim and the specific reason for allowing the priority portion of the Claim in a reduced amount and reclassifying the remainder is set forth in the last column of **Exhibit D**.  Accordingly, the Liquidating Trustee requests that the Reduced and Reclassified Multiple Category Claims be reduced to the statutory cap set forth in section 507(a)(4) of the Bankruptcy Code, less other priority amounts received, with the remainder reclassified to general unsecured status.

8.      The Liquidating Trustee has determined that certain of the Multiple Category Claims are not entitled to priority status, but that they may, subject to further review, be entitled to payment on a general unsecured basis (the "Reclassified Multiple Category Claims").  The Reclassified Multiple Category Claims are listed on **Exhibit E**, attached hereto. The nature of each Reclassified Multiple Category Claim and the specific reason for its reclassification is set forth in the last column of **Exhibit E**.  Accordingly, the Liquidating Trustee requests that the Reclassified Multiple Category Claims be reclassified in their entirety to general unsecured status, with a reservation of right by the Liquidating Trustee to further object to any payment of the Reclassified Multiple Category Claims.

B.    **The Pennsylvania Service Center Claims**

9.    Certain Employee Priority Claims assert the right to payment on a priority basis for a retention bonus, severance and/or PTO relating to a retention program initiated by Circuit City when it planned to close its Philadelphia Service Center (the "PA Service Center Claims").  The PA Service Center Claims are listed on **Exhibit F**, attached hereto.

10.    The Liquidating Trustee has determined that the holders of the PA Service Center Claims are not entitled to payment of a retention bonus on a priority basis because the retention bonus was "earned" within the meaning of section 507(a)(4) of the Bankruptcy Code more than 180 days before the Petition Date (defined below).  However, the Liquidating Trustee has determined that the holders of the PA Service Center Claims are entitled to all or a portion of the requested severance and PTO on a priority basis, up to the statutory cap, less pre-petition priority wage payments received post-petition.  Accordingly, the Liquidating Trustee requests that the PA Service Center Claims be allowed on a priority basis in the amounts set forth on **Exhibit F**, attached hereto, and that the remainder of each PA Service Center Claim be reclassified as a general unsecured claim.

C.    **Non-Categorized Employee Priority Claims**

11.    Certain Non-Categorized Employee Priority Claims do not fall within any of the categories of other claims brought by employees (the "Non-Categorized Employee Priority Claims").

12.    The Liquidating Trustee has determined that certain of the Non-Categorized Employee Priority Claims fail to show any entitlement to payment on any basis and that the Debtors' books and records show no amount owing (the "Disallowed Non-Categorized

Employee Priority Claims"). The Disallowed Non-Categorized Employee Priority Claims are listed on **Exhibit G**, attached hereto. The nature of the claim and the reason for the disallowance is listed in the last column of **Exhibit G**, attached hereto. Accordingly, the Liquidating Trustee requests that the Disallowed Non-Categorized Employee Priority Claims be disallowed in their entirety.

13.    The Liquidating Trustee has determined that certain of the Non-Categorized Employee Priority Claims are entitled to priority payment in a reduced amount with the remainder reclassified to general unsecured claims and subject to further objection (the "Reduced and Reclassified Non-Categorized Employee Priority Claims"). The Reduced and Reclassified Non-Categorized Employee Priority Claims are listed on **Exhibit H**, attached hereto. The specific nature of each Reduced and Reclassified Non-Categorized Employee Priority Claim and the specific reason for the reduction are listed in the last column of **Exhibit H**. Accordingly, the Liquidating Trustee requests that the Reduced and Reclassified Non-Categorized Employee Priority Claims be allowed on a priority basis in a reduced amount and that the remainder each Reduced and Reclassified Non-Categorized Employee Priority Claim be reclassified as a general unsecured claim.

14.    The Liquidating Trustee has determined that certain of the Non-Categorized Employee Priority Claims are not entitled to payment on a priority basis, but may, subject to further review, be entitled to payment on a general unsecured basis (the "Reclassified Non-Categorized Employee Priority Claims"). The Reclassified Non-Categorized Employee Priority Claims are listed on **Exhibit I**, attached hereto. The specific nature of each Reclassified

Non-Categorized Employee Priority Claim and the specific reason for the reclassification are

listed in the last column of **Exhibit I**.  Accordingly, the Liquidating Trustee requests that the

Reclassified Non-Categorized Employee Priority Claims be reclassified as general unsecured

claims, with a reservation of right by the Liquidating Trustee to object to any payment on the

Reclassified Non-Categorized Employee Priority Claims.

> **D.**    **PTO Claims**

15.    Certain Employee Priority Claims assert the right to payment of PTO on a

priority basis pursuant to section 507(a)(4) of the Bankruptcy Code (the "PTO Claims").

16.    The Liquidating Trustee has determined that certain holders of PTO

Claims are not entitled to PTO (the "Disallowed PTO Claims").  The Disallowed PTO Claims

are listed on **Exhibit J,** attached hereto.  The holders of the Disallowed PTO Claims are salaried

employees who do not qualify for PTO or hourly associates who did not provide support for their

claims.  Accordingly, the Liquidating Trustee requests that the Disallowed PTO Claims be

disallowed in their entirety.

17.    The Liquidating Trustee has determined that certain holders of PTO

Claims are entitled to payment of their PTO Claims on a priority basis in a reduced amount (the

"Reduced PTO Claims").  The Reduced PTO Claims are listed on **Exhibit K**, attached hereto.

The Debtors' books and records reveal an amount owing on the Reduced PTO Claims.

However, that amount is less than the amount asserted in the Reduced PTO Claims.

Accordingly, the Liquidating Trustee requests that the Reduced PTO Claims be allowed on a

priority basis in a reduced amount and that the balance of each Reduced PTO Claim be denied.

E.      <u>**Wage Claims**</u>

18.      Certain Employee Priority Claims assert the right to payment of wages on a priority basis (the "<u>Wage Claims</u>").

19.      The Liquidating Trustee has determined that certain of the Wage Claims should be disallowed (the "<u>Disallowed Wage Claims</u>") in their entirety because, according to the Debtors' books and records, the Debtors have paid all pre-petition wages that were owing to the holders of the Disallowed Wage Claims.  The Disallowed Wage Claims are listed on **Exhibit L**, attached hereto.  Accordingly, the Liquidating Trustee requests that the Disallowed Wage Claims be disallowed in their entirety.

20.      The Liquidating Trustee has determined that certain of the Wage Claims should be reclassified to general unsecured claims (the "<u>Reclassified Wage Claims</u>").  The Reclassified Wage Claims are listed on **Exhibit M**, attached hereto.  According to the Debtors' books and records, and as set forth more fully below, the wages asserted in the Reclassified Wage Claims were earned more than 180 days before the Petition Date (defined below).  Accordingly, the Liquidating Trustee requests that the Reclassified Wage Claims be reclassified as general unsecured claims, with a reservation of right to further object to such Reclassified Wage Claims.

F.      <u>**Equity Interests**</u>

21.      Certain of the Employee Priority Claims assert the right to payment based on equity interests (the "<u>Equity Interests</u>").  The Equity Interests are listed on **Exhibit N**, attached hereto.  All equity in the Debtors has been extinguished.  Accordingly, the Equity Interests should be disallowed in their entirety.

G.    <u>Retirement Claims</u>

22.    Certain of the Employee Priority Claims assert the right to retirement

payments (the "<u>Retirement Claims</u>") under either the *Retirement Plan of Circuit City Stores, Inc.*

(as amended, the "<u>Qualified Pension Plan</u>") or the *Circuit City Stores, Inc. 401(k) Plan* (as

amended, the "<u>401(k) Plan</u>").  The Retirement Claims are listed on **Exhibit O**, attached hereto.

23.    As further discussed below, the Qualified Pension Plan assets and the

401(k) Plan assets are held by trust funds which are separate legal entities distinct from the

Debtors' estates and the Liquidating Trust.  Thus, the qualified pension plan assets and the

401(k) plan assets were not assets of the Debtors' estates and did not vest in the Liquidating

Trust upon confirmation of the Plan.  Moreover, on or about May 26, 2009, the Pension Benefit

Guaranty Corporation ("<u>PBGC</u>") assumed responsibility for the Qualified Pension Plan and only

the PBGC can assert claims with respect to benefits under the Qualified Pension Plan.  In

addition, the Debtors' books and records show that no employer matching contributions are

owing with respect to the 401(k) Plan.

24.    Notably, the disallowance of the Retirement Claims will not prejudice or

eliminate the employees' or former employees' Qualified Pension Plan benefits or 401(k) Plan

benefits.  It will simply clarify that the holders of the Retirement Claims cannot recover these

benefits from the Liquidating Trust.

25.    Accordingly, the Court should disallow the Retirement Claims in their

entirety.

## BACKGROUND FACTS

26.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

27.    On the Petition Date, the Court entered the *Order Pursuant to Bankruptcy*

*Code Section 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rule 6003 Authorizing*

*Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits* (the "Wage Order")

[Docket No. 6].  Pursuant to the Wage Order, the Debtors paid to certain employees pre-petition

wages that were earned within 180 days of the Petition Date (the "Priority Period").

28.    On November 12, 2008, the Office of the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").

29.    On November 12, 2008, the Court appointed Kurtzman Carson

Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these

chapter 11 cases pursuant to 28 U.S.C. § 156(c).

30.    On December 10, 2008, the Court entered that certain *Order Pursuant to*

*Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I)*

*Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form*

*and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

31.    Pursuant to the Claims Bar Date Order, the deadline for filing all "claims"

(as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any

non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for

governmental units to file claims that arose before November 10, 2008 was 5:00 p.m. (Pacific)

on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and

manner of the claims bar date notice, which was attached as <u>Exhibit A</u> to the Claims Bar Date

Order (the "<u>Claims Bar Date Notice</u>").

   32. On December 17 and 19, 2008, KCC served a copy of the Claims Bar

Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all

of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other

parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The

Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

   33. On January 16, 2009, the Court authorized the Debtors, among other

things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an

agency agreement (the "<u>Agency Agreement</u>") between the Debtors and a joint venture, as agent

(the "<u>Agent</u>").  On January 17, 2009, the Agent commenced going out of business sales pursuant

to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of

business sales at the Debtors' remaining stores had been completed.

   34. On April 1, 2009, this Court entered an *Order Establishing Omnibus

Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections*

(Docket No. 2881) (the "<u>Omnibus Objection Procedures Order</u>").

   35. On August 9, 2010, the Debtors and the Creditors' Committee filed the

Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds

thereof under chapter 11 of the Bankruptcy Code.

36.     On September 10, 2010, the United States Bankruptcy Court, Eastern

District of Virginia, signed an Order confirming the Plan.  [Docket No. 8555][3]

37.     The Plan became effective on November 1, 2010 (the "<u>Effective Date</u>"),

and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating

Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and

distribute the proceeds to creditors, including objections to claims.  Under the Plan, objections to

priority claims must be filed within 120 days of the Effective Date.

38.     Additional facts relevant to the Employee Priority Claims are presented

below.

## <u>OBJECTION</u>

### A.     <u>Burden of Proof</u>

39.     Pursuant to 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly

filed and complete proof of claim is *prima facie* evidence of the validity of the claim, which

raises a presumption of the claim's validity.  However, when an objection to a proof of claim

raises sufficient evidence, the burden of proof shifts to the claimant to establish that the claim is

allowable.  *See In re Garvida*, 347 B.R. 697 (9th Cir. BAP 2006); *In re Stoecker*, 143 B.R. 879,

883 (N.D. Ill. 1992).  Moreover, the holder of a claim always bears the burden of persuasion.  *Id.*

40.     Furthermore, if a claim does not comply with Bankruptcy Rule 3001(f),

then it is not presumptively valid and the burden of proof remains initially with the claimant.  *See*

*In re Plourde*, 397 B.R. 207 (Bankr. D. N.H. 2008):

---

[3] A copy of the Plan may be obtained without charge from the KCC website:  http:\\www.kccllc.net.

> Rule 3001 . . . provides an evidentiary benefit to creditors who
> comply with the Rule and withholds that benefit from creditors
> who do not comply with the Rule.  If the Creditors have not
> substantially complied with the requirements of Rule 3001, the
> Claims are not entitled to the evidentiary benefit under Rule
> 3001(f).

*Id.*, at 218, *overruled on other grounds in In re Plourde*, 418 B.R. 495 (BAP 1st Cir. 2009).  To

comply with Rule 3001:

> A proof of claim is required to conform substantially to Official
> Form 10; must be signed by the creditor or the creditor's
> authorized agent; and, when the claim is based on a writing, must
> have a copy of the writing attached.

*In re US Airways, Inc.*, 2007 WL 3231573 *2 (Bankr. E.D. Va. 2007).  Thus, where a claim is

based on a writing, but no such writing is attached, the claim is not entitled to *prima facie*

validity and "both the burden of initially producing evidence and the ultimate burden of

persuasion therefore falls squarely" on the claimant.  *Id.*

### B.    Priority Claims and the Statutory Cap Pursuant to Section 507(a)(4) of the Bankruptcy Code

41.    Section 507(a)(4) of the Bankruptcy Code accords priority status to

"wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an

individual" within 180 days before the filing date.  The amount payable on a priority basis

pursuant to section 507(a)(4) of the Bankruptcy Code is capped by the statute and this cap is

changed every three years.  In this case, the capped priority amount is $10,950.  *See* 11 U.S.C.

§ 104 (providing for adjustments in the section 507(a)(4) statutory cap every three years); 72 FR

7082 (priority cap under 11 U.S.C. § 507(a)(4) adjusted to $10,950 for cases filed on or after

April 1, 2007); 75 FR 8747 (priority cap under 11 U.S.C. § 507(a)(4) adjusted to $11,725 for

cases filed on or after April 1, 2010).  These cases were commenced on November 10, 2008.

Therefore, the applicable statutory cap is $10,950.

42.     An individual may not receive more than the statutory cap on account of any claims that are allowed under section 507(a)(4).  *See In re LandAmerica Financial Group*, 435 B.R. 343 (Bankr. E.D. VA 2010) (this court allowed section 507(a)(4) priority claim up to the statutory cap, less priority amounts previously received); *In re Share Bldg. Products, Inc.,* 2010 WL 2402882 (June 10, 2010 Bankr. E.D. WI) (individual's claims for wages and commissions were reduced so that aggregate claim did not exceed $10,950; remaining claims in excess of this amount were reclassified as general unsecured basis).  *See also* 4 COLLIER ON BANKRUPTCY ¶ 507.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The maximum dollar limit on the priority is [$10,950][4] for each individual and corporation.  Any excess claim for wages, salaries and commissions will be a general unsecured claim.").

### C.     Multiple Category Claims

43.     Each holder of a Multiple Category Claims asserts the right to priority payment on a variety of theories, including entitlements under multiple incentive plans offered by the Debtors.  The Liquidating Trustee has recently filed a set of omnibus objections that discuss claims asserted under these incentive plans.  Rather than repeat those facts and arguments in this Objection, the Liquidating Trustee will summarize the various programs and incorporate by reference the facts and argument set forth in the applicable omnibus objections.  Furthermore, the Liquidating Trustee has described the specific allegations of the Multiple Category Claims and the Liquidating Trustee specific responses thereto in the last column of **Exhibits C**, **D**, and **E**.

---

[4] As set forth herein, the statutory cap adjusts every three years.

a.      **The Short-Term Incentive Program**

44.      Several holders of Multiple Category Claims assert the right to payment

on a priority basis under a short-term incentive program (the "Short-Term Incentive Program")

that Circuit City had offered to certain eligible employees.[5]  On February 27, 2011, the

Liquidating Trustee filed an omnibus objection to materially similar claims.  *See Liquidating*

*Trust's Tenth Omnibus Objection to Disallow Certain Claims (Short-Term Incentive Program)*

(the "STIP Omnibus Objection") [Docket No. 10048].  A copy of the STIP Omnibus Objection

(without the claim exhibits) is attached hereto as **Exhibit P**.

45.      The assertions in the Multiple Category Claims relating to the Short-Term

Incentive Program are substantively identical to the assertions made in the claims that were the

subject of the STIP Omnibus Objection.  To conserve resources, and avoid the unnecessary

repetition of identical facts and arguments, the Liquidating Trustee incorporates by reference the

facts and arguments set forth in the STIP Omnibus Objection, as if fully set forth herein.

46.      Those portions of the Multiple Category Claims that seek payment under

the Short-Term Incentive Program should be disallowed because, like the STIP Claims addressed

in the STIP Omnibus Objection, they fail to present any evidence that the company-wide and

individual performance criteria necessary to be entitled to an award under the Short-Term

Incentive Program were met.  These criteria were specific to each associate and placed in an

online tool relating to performance evaluations.  It was standard procedure for the employee to

print out the specific criteria applicable to each Short-Term Incentive Program Participant.  After

---

[5] As set forth above, each holder of a Multiple Category Claims asserts the right to payment under more than on
theory.

completing their going-out-of-business sales and closing their last set of stores in March, 2009, the Debtors cancelled this online tool.

47.    As set forth in the STIP Omnibus Objection, the Multiple Category Claims should not be considered *prima facie* valid because they do not list or summarize the applicable criteria that had to be met before a STIP Program Participant would be entitled to any payment. As further set forth in the STIP Omnibus Objection, the criteria were intended to be very difficult to meet and given Circuit City's liquidation, it is unlikely that the holders of the Disallowed Multiple Category Claims met the company-wide and individual performance criteria.  These facts may explain why the criteria are not included or summarized in the Multiple Category Claims.

48.    Based on the foregoing, the Multiple Category Claims should be disallowed to the extent they request payment under the Short-Term Incentive Program.  Such Multiple Category Claims are identified in the last column of Exhibits **C**, **D**, and **E**.

### b.    The Special Cash Retention Program

49.    Certain of the Multiple Category Claims assert the right to payment on a priority basis under a special cash retention award program (the "Cash Retention Program") that the Debtors implemented pre-petition.  These Multiple Category Claims are identified in the last column of **Exhibits C**, **D**, and **E**, attached hereto.  On February 27, 2011, the Liquidating Trustee filed an omnibus objection to materially similar claims.  *See Liquidating Trust's Eleventh Omnibus Objection to Claims: Reclassify to General Unsecured Claims, Reduce to Statutory Cap, or Disallow, as Applicable (Special Cash Retention Program)* [Docket No. 10049] ( the

"CRP Omnibus Objection").  A copy of the CRP Omnibus Objection (without the claim

exhibits) is attached hereto as **Exhibit Q**.

50.     The Multiple Category Claims relating to the Cash Retention Program are

substantively identical to the claims that were the subject of the CRP Omnibus Objection.  To

conserve resources, and avoid the unnecessary repetition of identical facts and arguments, the

Liquidating Trustee incorporates by reference the facts and arguments set forth in the CRP

Omnibus Objection as if fully set forth herein.

51.     Certain of the Multiple Category Claims should be reclassified as general

unsecured claims to the extent that they seek payment under the Cash Retention Program.  The

Liquidating Trustee has determined that the holders of these Multiple Category Claims accepted

the terms of the Cash Retention Program before the Priority Period.  Therefore, they are not

entitled to priority payment of any awards pursuant to the Cash Retention Program

52.     Based on the foregoing, the Multiple Category Claims that seek payment

under the Cash Retention Program should be reclassified as general unsecured claims, all as set

forth more specifically in **Exhibits C**, **D**, and **E**.  The specific grounds of each of these claims

and the Liquidation Trustee's position is set forth in the last column of **Exhibits C**, **D**, and **E**.

### c.        The Long-Term Incentive Program

53.     Several holders of the Multiple Category Claims assert the right to

payment on a priority basis under a long-term incentive program (the "Long-Term Incentive

Program") that the Debtors had offered to certain eligible employees.  These Multiple Category

Claims are identified in the last column of **Exhibits C**, **D**, and **E** , attached hereto.  On February

27, 2011, the Liquidating Trustee filed an omnibus objection to materially similar claims.  *See*

*Liquidating Trust's Twelfth Omnibus Objection to Disallow Certain Claims (Long-Term*

*Incentive Program)* [Docket No. 10050] ( the "<u>LTIP Omnibus Objection</u>").  A copy of the LTIP

Omnibus Objection (without the claim exhibits) is attached hereto as **Exhibit R**.

54.    The assertions in the Multiple Category Claims relating to the Long-Term

Incentive Program are substantively identical to the assertions made in the claims that were the

subject of the LTIP Omnibus Objection.  To conserve resources, and avoid the unnecessary

repetition of identical facts and arguments, the Liquidating Trustee incorporates by reference the

facts and arguments set forth in the LTIP Omnibus Objection as if fully set forth herein.

55.    The Multiple Category Claims should be denied to the extent they seek

payment pursuant to the Long-Term Incentive Program because, like the holders of the LTIP

Claims, none of the holders of the Multiple Category Claims met any of the conditions necessary

to payment under the Long-Term Incentive Program.  Those criteria are explained extensively in

the LTIP Omnibus Objection attached hereto as **Exhibit R** and will not be repeated here.

56.    Based on the foregoing, the Multiple Category Claims should be

disallowed to the extent they seek payment under the Long-Term Incentive Program.

### d.    Severance Pursuant to Employment Contract

57.    Several holders of the Multiple Category Claims and Non-Categorized

Employee Priority Claims assert the right to payment of severance on a priority basis pursuant to

employment contracts with Circuit City (the "<u>Employment Contracts</u>").  The specific claims that

request severance and the Liquidating Trustee's proposed treatment thereof are identified on the

last column of **Exhibits C**, **D**, **E** (relating to Multiple Category Claims) and **Exhibits G**, **H**, and **I**
(listing Non-Categorized Employee Priority Claims).

58.    On February 27, 2011, the Liquidating Trustee filed an omnibus objection
to materially similar claims.  *See Liquidating Trust's Thirteenth Omnibus Objection to Certain
Priority Claims:  Allow Up to the Statutory Cap, Reclassify, Disallow, as Applicable* [Docket
No. 10051] (the "<u>Employment Contracts Omnibus Objection</u>").  A copy of the Employment
Contracts Omnibus Objection (without the claim exhibits) is attached hereto as **Exhibit S**.

59.    The assertions in the Multiple Category Claims and Non-Categorized
Employee Priority Claims relating to the Employment Contracts are substantively identical to the
assertions made in the claims that were the subject of the Employment Contracts Omnibus
Objection.  To conserve resources, and avoid the unnecessary repetition of identical facts and
arguments, the Liquidating Trustee incorporates by reference the facts and arguments set forth in
the Employment Contracts Omnibus Objection as if fully set forth herein.

60.    Those Multiple Category Claims and Non-Categorized Employee Priority
Claims that seek severance based either on a "change in control," as described more fully in the
Employment Contracts Omnibus Objection, or on a termination within the Priority Period,
should have that portion of the Claims allowed on a priority basis up to the statutory cap set forth
in section 507(a)(4), less any pre-petition priority wages previously paid pursuant to the Wage
Order.

61.    Those Multiple Category Claims and Non-Categorized Employee Priority
Claims that seek severance based on a termination that occurred before the Priority Period should

have the severance portion of these Claims reclassified as general unsecured claims.  As set forth

in the Employment Contract Omnibus Objection, a termination that occurred before the Priority

Period does not trigger a priority right to severance pay.

62.    Those Multiple Category Claims and Non-Categorized Employee Priority

Claims that seek severance, even though the claimant voluntarily resigned, should have the

severance portion of these Claims disallowed.

63.    Each of the foregoing claims are identified in the last column of **Exhibits

C**, **D**, **E** (listing Multiple Category Claims) and **Exhibits G**, **H**, and **I** (listing Non-Categorized

Employee Priority Claims).

e.    **Severance Pursuant to Policy – No Employment Contract**

64.    Several holders of Multiple Category Claims and Non-Categorized

Employee Priority Claims assert the right to severance payments on a priority basis under the

*Circuit City Stores, Inc. Severance Plan* (the "Severance Plan") that was adopted by Circuit City

before the Petition Date.  A copy of the Severance Plan is attached hereto as **Exhibit T**.  These

holders assert the right to payment on a priority basis pursuant to section 507(a)(4) of the

Bankruptcy Code.  The specific claims that request severance and the Liquidating Trustee's

proposed treatment thereof are identified in the last column of **Exhibits C**, **D**, and **E** (Multiple

Category Claims) and **Exhibits G, H, and I** (Non-Categorized Employee Priority Claims).

65.    The Severance Plan states:

There is, however, no legal requirement that the Company pay any
Severance Pay and the Company reserves the right not to pay
Severance Pay or to pay a lesser amount of Severance Pay than is
set forth in these guidelines.  Rather, these guidelines confirm the
Company's general philosophy of assisting its employees in
difficult circumstances wherever it reasonably can.

Severance Plan, p. 1, Introduction, **Exh. T**.  The Severance Plan adds:

> Notwithstanding anything in this Plan to the contrary, the company
> expressly reserves the right not to pay Severance Pay or to pay a
> lesser amount of Severance Pay than is set forth in this Plan.

Severance Plan, p. 5, section 2.6, **Exh. T**.

66.     The Severance Plan also required an employee to sign a written release of

all claims against Circuit City in order to be eligible for severance.  *See* Severance Plan, p. 5,

section 2.3.

67.     The Court should disallow the portion of these Multiple Category Claims

and Non-Categorized Employee Priority Claims that seek severance under the Severance Plan

because the Plan stated that it was a goodwill gesture – not an enforceable promise to pay

severance.  Moreover, this is no evidence that the holders of these Multiple Category Claims

signed the required release agreement.

**f.        The Phantom Stock Awards Program**

68.     Several holders of the Multiple Category Claims assert the right to

payment on a priority basis pursuant to a phantom stock award program (the "Phantom Stock

Program") that the Debtors implemented before the Petition Date.  These Multiple Category

Claims are identified in the last column of **Exhibits C**, **D**, and **E**.  On February 27, 2011, the

Liquidating Trustee filed an omnibus objection to materially similar claims.  *See Liquidating*

*Trust's Sixteenth Omnibus Objection to Certain HR Claims:  Reclassify Reduce (Phantom Stock*

*Program)* [Docket No. 10054] (the "Phantom Stock Omnibus Objection").

69.     The assertions in the Multiple Category Claims relating to the Phantom

Stock Program are substantively identical to the assertions made in the claims that were the

subject of the Phantom Stock Omnibus Objection.  To conserve resources, and avoid the

unnecessary repetition of identical facts and arguments, the Liquidating Trustee incorporates by

reference the facts and arguments set forth in the Phantom Stock Omnibus Objection as if fully

set forth herein.  A copy of the Phantom Stock Omnibus Objection (without the claim exhibits) is

attached hereto as **Exhibit U**.

70.     Certain of the Multiple Category Claims that seek payment under the

Phantom Stock Program are not entitled to priority payment because these holders of the

Multiple Category Claims joined the Phantom Stock Program before the Priority Period.  As set

forth in the Phantom Stock Program Omnibus Objection, a right to payment is not entitled to

priority payment unless it was "earned," within the meaning of section 507(a), during the Priority

Period.  Accordingly, these Multiple Category Claims should be reclassified as general

unsecured to the extent they seek priority payment under the Phantom Stock Program.

71.     The balance of these Multiple Category Claims should be denied.

**D.      PA Service Center Claims**

72.     The holders of the PA Service Center Claims assert the right to retention

bonuses, PTO, and severance on a priority basis pursuant to section 507(a)(4) of the Bankruptcy

Code.  The PA Service Center Claims are listed on **Exhibit F**, attached hereto.

**a.      Facts Relevant to the PA Service Center Claims**

73.     More than 180 days before the Petition Date, Circuit City implemented a

program (the "PA Service Center Program") pursuant to which eligible employees (the "PA

Service Center Program Participants") were offered a retention bonus (the "Retention Bonus")

and severance.  The Retention Bonus and severance were payable when the PA Service Center

closed.  Sample letters outlining the terms of the PA Service Center Program (the "Retention

Agreement" and the "Severance Agreement") are attached hereto as **Exhibit V**.

74.    The employment of the PA Service Center Program Participants was

terminated in March 2009 when the Debtors closed the PA Service Center.

### b.    The Retention Bonuses Are Not Payable on a Priority Basis

75.    Section 507(a)(4) accords priority status to "wages, salaries, or

commissions . . . *earned*" within 180 days before the filing date.  (Emphasis added.)  *See In re*

*Cardinal Indus. Inc.*, 160 B.R. 83 (Bankr. S.D. Ohio 1993) (for purposes of priority under

section 507(a), a bonus is "earned" when the right to the bonus is established, even though the

bonus is not payable until a later date).  *See also* 4 COLLIER ON BANKRUPTCY ¶ 507.06[5] (Alan

N. Resnick & Henry J. Sommer eds., 16th ed.) ("The general rule is that wages, salaries and

commissions are earned when the employee obtains a right to payment under the employment

contract rather than at the time that payment is to be made.").  As Collier further states with

respect to whether a bonus is "earned" within the 180 days prior to a petition date as required by

section 507(a)(4) of the Bankruptcy Code, "If a bonus is awarded in December, but not payable

until the following March, the bonus was earned in December."  4 COLLIER ON BANKRUPTCY at ¶

507.06[5].

76.    In this case, the Retention Bonuses were awarded and the Retention

Agreements were signed before the Priority Period.  Therefore, the Retention Bonuses were

earned, within the meaning of section 507(a)(4), before the Priority Period and are not entitled to

priority.

77.    Cases construing when a claim arises bolster the point that the Retention

Bonus portion of the PA Service Center Claims arose before the Priority Period and are not

entitled to priority payment.  The definition of "claim" in section 101(5) of the Bankruptcy Code

includes "a right to payment" that is "contingent."  11 U.S.C. § 101(5)(A).  *See Grady v. A.H.

Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988), *cert. dismissed sub nom. Joynes v. A.H. Robins

Co.*, 487 US 1260 (1988) (defining "contingent" as "conditioned upon the occurrence of some

future event which is itself uncertain, or questionable.").  The PA Service Center Claims for the

Retention Bonus were contingent because the right to payment was conditioned upon the PA

Service Center Participant remaining employed with the Debtors until the PA Service Center

closed.

78.    In the Fourth Circuit, a contingent claim arises when the event or conduct

underlying the claim first occurs.  *See A.H. Robins Co.*, 839 F.2d at 201-02; *In re U.S. Airways,*

2007 WL 3231573, *3 (Bankr. E.D. Va. 2007) ("A debt 'arises,' for bankruptcy purposes, not

when the effects are felt but when the act giving rise to the liability occurs.").  *See also In re*

*Bentley Funding Group, LLC,* 2001 WL 34054525 (Bankr. E.D. Va. Feb. 2, 2001) (surety's right

to indemnity existed as a contingent claim from the date the indemnity agreement was executed);

*Thompson v. Board of Trustees of Fairfax Cty. Police Officers Retirement Sys. (In re Thompson),*

182 B.R. 140, 153 (Bankr. E.D. Va. 1995), *aff'd*, 92 F.3d 1182 (4th Cir. 1996) (claim for

retirement benefits arose when the employee first joined the program– not when the retirement

payments became due in 25-years).  As the *Thompson* court explained, the "25-year requirement

was merely a contingency [that] Thompson had to meet in order to have an immediate right to payment." *Id.*

79.     With respect to the Retention Bonus portion of the PA Service Center Claims, the Debtors incurred a contingent liability when the PA Service Center Participant signed the Retention Agreement.  Each PA Service Center Participant signed the Retention Agreement before the Priority Period.  Therefore, the claims for a Retention Bonus arose before the Priority Period and are not entitled to priority under section 507(a).  Accordingly, the PA Service Center Claims should be reclassified as general unsecured claims to the extent they seek the Retention Bonus.

c.     **The Severance and PTO Are Payable on a Priority Basis in a Reduced Amount**

80.     The Liquidating Trustee has determined that the severance and PTO portions of the PA Service Center Claims are entitled to payment on a priority basis.  As set forth in the Employment Contracts Omnibus Objection, attached hereto as **Exhibit S**, the post-petition failure to pay severance pursuant to an employment contract is treated as a rejection of an executory contract which triggers a rejection damages claim as of the Petition Date.  Severance claims arising on the Petition Date arise within the Priority Period and are, therefore, entitled to priority treatment.  However, the priority portion of these claims should only be allowed up to the statutory cap, less amounts that the Debtor previously paid to the holders of these PA Service Center Claims.  After the Petition Date, the Debtors paid pre-petition priority wages to the holders of the PA Service Center Claims, pursuant to the Wage Order.  These wages accrued

shortly before the Petition Date and, therefore, were entitled to priority pursuant to section 507(a)(4) of the Bankruptcy Code.

81.     If the PA Service Center Claims for severance and PTO are allowed without any reduction for these earlier priority payments, then the holders of the PA Service Center Claims will receive more than $10,950 on account of their section 507(a)(4) claims and in excess of the statutory cap set forth in section 507(a)(4) of the Bankruptcy Code.  Therefore, to the extent the PA Service Center Claims seek severance and PTO, they should be allowed up to the statutory cap, less any amounts paid in wages pursuant to the Wage Order, as set forth in **Exhibit F**, attached hereto.  As set forth above, any remaining claim for PTO and severance should be allowed as a general unsecured claim.

82.     Accordingly, the Liquidating Trustee requests an Order (a) reclassifying the PA Service Center Claims as general unsecured claims to the extent they request payment of the Retention Bonus, (b) allowing the PA Service Center Claims as priority claims up to the statutory cap, less priority payments previously received, to the extent they request payment of severance and PTO, and (c) allowing the PA Service Center Claims on a general unsecured basis for the remaining portions of the requests for severance and PTO, all as set forth in **Exhibit F**, attached hereto.

E.     **Non-Categorized Employee Priority Claims**

a.     **Disallowed Non-Categorized Employee Priority Claims**

83.     Certain Disallowed Non-Categorized Employee Priority Claims, listed on **Exhibit G** (and identified in the last column of that exhibit), assert damages on an administrative priority basis based on an alleged violation of the Workers' Adjustment and Retraining

Notification Act (the "WARN Act").  Specifically, these claims assert damages resulting from

the Debtors' requirement that the employees continue to come to work for 60 days after the

Debtors had issued a notice of plant closing or lay offs pursuant to the WARN Act.  These Non-

Categorized Employee Priority Claims should be disallowed in their entirety.

       84.    The WARN Act requires that employers provide sixty days notice of any

plant closing or mass layoff, subject to the requirements of that statute.  29 U.S.C. § 2102(a)

(Supp. 1993); 20 C.F.R. § 639.1(a) (1989) (final regulations).  Neither the WARN Act nor the

applicable regulations require employers to provide sixty days pay before the plant or mass

layoff <u>and</u> to allow the employees to stop coming to work.  *See* 54 FR 16042, 16048

(Department of Labor stated, "[N]either WARN nor the regulations dictate the nature of work to

be performed—or whether work must be performed—during a period of employment after notice

of an impending plant closing or mass layoff has been given.").  In fact, if a worker refuses to

come to work after receiving a 60-day notice issued under the WARN Act, that worker can

forfeit any right to payment or damages under the WARN Act.  *See* 54 Fed. Reg. 16042 (The

"[Department of Labor] does not . . . agree that a worker who, after the announcement of a plant

closing or mass layoff, decides to leave early has necessarily been constructively discharged or

quit involuntarily.") (internal quotation marks omitted).  In *Long v. Dunlop Sports Group*

*Americas, Inc.,* 506 F.3d 299 (4th Cir. 2007), the Court of Appeals for the Fourth Circuit issued

an opinion that illustrates the employer's right to require employees to either continue coming to

work or to stay home (with pay) after a WARN Act notice has been issued.  The Court  stated:

      [I]n the WARN Act, Congress sought to protect employees'
      expectation of wages and benefits, not their expectation of
      performing work.")  The Act requires an employer to compensate

employees for back pay and employee benefits when the employer fails to provide the required 60-day notice period.  See 29 U.S.C. § 2104(a).  But nothing in the Act suggests that Congress sought to protect an individual's ability to continue performing labor during the 60-day period, as the Employees contend.

*Id.*, at 303.

85.     Under these authorities, an employer can either ask the employees to continue coming to work or ask them to stay home.  If the employer requires the employees to continue coming to work for sixty days and pays the employees for that work, no claim arises.  Accordingly, the Disallowed Non-Categorized Employee Priority Claim that seeks damages for being required to continue coming to work for pay, should be disallowed in its entirety.  The foregoing claim is identified in the last column of **Exhibit G**.

86.     Other Disallowed Non-Categorized Employee Priority Claims seek payment of wages and other items on a priority basis.  These Claims should be disallowed because the Debtors' books and records do not show any amount owing to the holders of these Disallowed Non-Categorize Claims.  These Disallowed Non-Categorized Employee Priority Claims are identified in **Exhibit G**, last column thereof.

87.     Another Disallowed Non-Categorized Employee Priority Claim seeks payment of a "shrink bonus."  However, awards of a shrink bonus were conditioned on the continued employment of the eligible employee through the projected pay out date.  In the case of the holder of the Disallowed Non-Categorized Claim set forth on **Exhibit G**, that employee was terminated before the pay-out date and therefore is not entitled to any payment.

88.     Based on the foregoing, each of the Disallowed Non-Categorized Employee Priority Claims should be disallowed in their entirety.

**b.    The Reduced and Reclassified Non-Categorized Employee Priority Claims**

89.    As set forth in the last column of **Exhibit H**, the Reduced and Reclassified Non-Categorized Employee Priority Claims should be allowed on a priority basis in a reduced amount because either the Debtors' books and records show a lesser amount owing or the holder of the Reduced and Reclassified Non-Categorized Employee Priority Claim has received pre-petition wages pursuant to the Wage Order.  Allowing the holders of the Reduced and Reclassified Non-Categorized Employee Priority Claims to receive the full amount of the claims without any deduction for previously paid priority wages will cause the holders of the claims to receive more than the $10,950 statutory cap.  The authorities in support of this point are set forth *supra* and, to conserve space, will not be repeated here.

90.    For the foregoing reasons, the Reduced and Reclassified Non-Categorized Employee Priority Claims, set forth on **Exhibit H**, should be disallowed in their entirety.

**c.    The Reclassified Non-Categorized Employee Priority Claims**

91.    The Liquidating Trustee has determined that the Reclassified Non-Categorized Employee Priority Claims, listed on **Exhibit I**, attached hereto, are not entitled to payment on a priority basis, but may, subject to further review, be entitled to payment on a general unsecured basis   The specific nature of each Reclassified Non-Categorized Employee Priority Claim and the specific reason for the reclassification are listed in the last column of **Exhibit I**.

**F.    PTO Claims**

92.    The Liquidating Trustee has determined that the Disallowed PTO Claims, listed on **Exhibit J**, should be disallowed in their entirety because the holders of the Disallowed

PTO Claims were salaried employees or hourly associates who did not provide support for their

claim who, according to Circuit City's practice, were not entitled to paid time off for hours

worked.

93.     The Liquidating Trustee has determined that the Reduced PTO Claims,

listed on **Exhibit K**, should be allowed on a priority basis in the reduced amount set forth in

**Exhibit K**.  According to the Debtors' books and records, the amounts owing to the holders of

the Reduced PTO Claims are less than the amounts set forth in the Reduced PTO Claims.

94.     Accordingly, the Liquidating Trustee requests an Order disallowing the

Disallowed PTO Claims in their entirety, as set forth in **Exhibit J**, and allowing the Reduced

PTO Claims on a priority basis in a reduced amount, pursuant to section 507(a)(4) of the

Bankruptcy Code, as set forth in **Exhibit K**.

### G.    Wage Claims

95.     The Disallowed Wage Claims, listed on **Exhibit L**, attached hereto, seek

wages that were allegedly earned within the Priority Period.  However, pursuant to the Wage

Order, the Debtors paid all pre-petition wages that were earned during the Priority Period.

Therefore, the Disallowed Wage Claims should be disallowed in their entirety.

96.     The Reclassified Wage Claims, listed on **Exhibit M**, seek wages that were

earned before the Priority Period.  Prior to the Petition Date, the Debtors sent payroll checks to

the holders of the Reclassified Wage Claims.  Those checks have not been cashed.  However,

each of those checks is dated before the Priority Period.  Based on this fact, the Liquidating

Trustee has determined that the wages relating to these checks were earned before the Priority

Period.  Accordingly, the Reclassified Wage Claims should be reclassified as general unsecured

claims.

### H. The Equity Interests Should Be Disallowed

97.  The Equity Interests, listed on **Exhibit N**, attached hereto seek payment on

account of an "Interest"[6] as defined in the Plan.

98.  The Equity Interests should be denied because, pursuant to the Plan, all

"Interests" in the Debtors were cancelled.  Plan at p. 20, Article III, section (c) [Docket No.

8555].  The Plan further provided that each holder of an Interest "shall not be entitled to, and

shall not receive or retain any property or interest in property on account of, such Interests."  *Id.*

[Docket No. 8555].

99.  Accordingly, the Equity Interests should be denied in their entirety.

### I. Retirement Claims

100.  The Liquidating Trustee seeks the disallowance of the Retirement Claims

that are listed on **Exhibit O**, attached hereto.

101.  On September 15, 2009, the Debtors filed an omnibus objection to claims

that are substantively identical to the Retirement Claims.  *Debtors' Thirty-Eighth Omnibus*

*Objection to Claims (Disallowance of Certain Qualified Pension and 401(k) Claims)* (the

"Thirty-Eighth Omnibus Objection") [Docket No. 4880].  The grounds of the Thirty-Eighth

Omnibus Objection are substantively identical to the grounds of this Objection with respect to

the Retirement Claims and are incorporated herein by reference das though set forth fully herein.

---

[6] 39.    Interests are defined in the Plan as "the legal, equitable, contractual, and other rights of any Entity with
respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and all options,
warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or
other equity security in any Debtor . . . ."  Plan at Article I, section 1.94, p. 9.

102.     On November 12, 2009, the Court entered an order (the "<u>Pension Benefits</u>

<u>Rulings</u>") sustaining the Thirty-Eighth Omnibus Objection. [Docket 5777].  The Liquidating

Trustee requests that the Court deny the Retirement Claims for the same reasons as set forth in

the Pension Benefits Ruling.

103.     More specifically, and as set forth more fully below, claims asserted under

the Qualified Pension Plan (defined below) should be disallowed for two reasons.  First, the

assets of the Qualified Pension Plan were never assets of the Debtors' estates, but instead were

held in trust.  Second, the PBGC is the sole entity that can assert claims with respect to the

Qualified Pension Plan and the Debtors have resolved those claims.

104.     As set forth more fully below, claims asserted under the 401(k) Plan

(defined below) must be disallowed for two reasons.  First, the assets of the 401(k) Plan were

held in trust and, therefore, were not property of the estate.  Second, the Debtor's obligation to

the 401(k) Plan have been fully met.[7]

a.      **The Qualified Pension Plan Was Held in Trust**

105.     The Debtors previously maintained the Retirement Plan of Circuit City

Stores, Inc. (as amended, the "<u>Qualified Pension Plan</u>") to provide retirement benefits for certain

of its employees.  The Qualified Pension Plan was established effective September 1, 1980, and

was amended and restated as of March 1, 2001.  The Qualified Pension Plan is an employee

pension benefit plan to which 29 U.S.C. § 1321(a) applies and is not exempt under 29 U.S.C.

§ 1321(b).  The Qualified Pension Plan is therefore covered by Title IV of the Employee

---

[7] In many instances, it is not clear whether the Retirement Claims seek recovery under the Qualified Pension Plan or
the 401(k) Plan or both.  However, this ambiguity is immaterial because the Liquidating Trust has no liability under
either Plan.

Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA").

Accordingly, the Qualified Pension Plan is a separate legal entity distinct from the Debtors'

estates.

106.    The Qualified Pension Plan provided that, "The Employer has entered into

a trust agreement with the Trustee under which the Trustee will receive, invest and administer

the Trust Fund."  Qualified Pension Plan at § 8.2.  It also provided that, "Upon termination or

partial termination of the Plan, each affected Participant's Accrued Benefit shall become fully

vested and nonforfeitable; provided, however, *that a Participant shall not have any recourse*

*towards satisfaction of his nonforfeitable benefits from other than the Plan assets or the Pension*

*Benefit Guaranty Corporation*." (Emphasis added).  Qualified Pension Plan at § 10.4

107.    The foregoing establishes that the Qualified Pension Plan's assets were not

assets of the Debtors' estates, but instead were held in trust.  Furthermore, participants had no

recourse other than against the Qualified Pension Plan assets.  Accordingly, the Qualified

Pension Plan participants cannot properly assert claims against the Liquidating Trust relating to

the Qualified Pension Plan and the Retirement Claims should, therefore, be denied.

### b.    Claims Relating to the Qualified Pension Plan Belong to the PBGC and Were Settled by the PBGC

108.    On April 20, 2009, the PBGC provided the Debtors with a Notice of

Determination stating that, under section 4042 of the ERISA, 29 U.S.C. § 1342(a)(2), the PBGC

had determined that the Qualified Pension Plan would be unable to pay benefits when due.

Accordingly, the PBGC determined to terminate the plan under ERISA § 4042(c) and to appoint

itself as statutory trustee under ERISA § 4048, effective March 31, 2009.

109.    On May 21, 2009, Circuit City entered into the Agreement for
Appointment of Trustee and Termination of Plan (the "PBGC Agreement"), pursuant to which
the Qualified Pension Plan was terminated, effective March 31, 2009, and the PBGC was
appointed trustee of the Qualified Pension Plan.

110.    Once a defined benefit plan has been terminated, only the PBGC, and not
the plan participants, has a claim against the Debtors for the unfunded benefit liabilities under
plan, including liabilities for nonguaranteed benefits.  29 U.S.C. § 1362(b).

111.    On January 30, 2009, the PBGC filed its claims against the Debtors with
respect to the Qualified Pension Plan.  The Debtor settled these claims by paying the PBGC
$33.5 million.  *See Order Pursuant to Bankruptcy Code Section 105 and 363 and Bankruptcy
Rule 9019, for Order Approving Settlement Agreement and Stipulation By and Among the
Debtors and the Pension Benefit Guaranty Corporation*, entered on October 26, 2009 [Docket
No. 5350].

112.    The holders of the Retirement Claims cannot now also assert claims with
respect to the Qualified Pension Plan.  *See, e.g., In re Lineal Group, Inc.,* 226 B.R. 608 (Bankr.
M.D. Tenn. 1998) (retirees' claims against debtor for non-guaranteed benefits under terminated
pension plan are preempted by ERISA); *In re Adams Hard Facing Co.,* 129 B.R. 662 (W.D.
Okla. 1991) (based on statutory scheme requiring PBGC to pay portion of its recovery to
participants under 29 U.S.C. § 1322(c), participants have no direct claim against debtor for
nonguaranteed benefits; claim belongs to PBGC); *see also McMahon v. McDowell*, 794 F.2d
100, 108 (3d Cir. 1986) (finding that ERISA preempted employees' ability to directly sue

12304-003\DOCS_SF:76069.3                          34

employer for unpaid pension liabilities when the applicable pension plan was terminated and the

PBGC was in place as successor trustee).

113.    Accordingly, to the extent the Retirement Claims are asserted under the

Qualified Pension Plan, they should be disallowed in their entirety.

c.    **The Liquidating Trust Is Not Liable With Respect to the 401(k) Plan**

114.    The Debtors maintained the Circuit City Stores, Inc. 401(k) Plan (as

amended, the "401(k) Plan") to provide retirement benefits for certain of its employees.  The

401(k) Plan was established effective August 1, 1999, and was amended and restated as of

November 1, 2006.

115.    The 401(k) Plan is intended to be a qualified plan with a cash or deferred

arrangement pursuant to Sections 401(a) and 401(k) of the Internal Revenue Code of 1986 (as

amended, the "Internal Revenue Code").  The 401(k) Plan is also intended to qualify as a Section

404(c) plan  for purposes of ERISA.  *See* 401(k) Plan, at p. 1 ("Background").  The 401(k) Plan

provided that, "The Company has entered into a trust agreement with the Trustee under whom

the Trustee will receive, invest, and administer the Trust Fund."  401(k) Plan at § 9.02.

Accordingly, the 401(k) Plan assets are held in trust and are not property of the estate.

116.    The Debtors' books and records also reflect that there are no delinquent

employer-matching contributions due and owing.  The Debtors' employer-matching obligations

were terminated effective January 28, 2009,[8] and any carryover pre-petition obligations or post-

---

[8] The 401(k) Plan itself has not yet been terminated, but the 401(k) Plan participants have received notice that they must determine whether to roll-over or otherwise transfer their assets out of the 401(k) Plan currently held at, and administered by, Wachovia Financial Services.

petition obligations of the Debtors' regarding employer-matching 401(k) Plan contributions were paid in the ordinary course of business and/or in accordance with the *Order Pursuant to Bankruptcy Code Sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rule 6003 Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits* [Docket No. 80], entered November 10, 2008.

117.    Therefore, there is no valid basis for recovering employer matching contributions under the 401(k) Plan and to the extent the Retirement Claims seek such contributions, they should be disallowed in their entirety.

118.    Based on the foregoing, the Retirement Claims should be disallowed in their entirety.

## RESERVATION OF RIGHTS

119.    As noted above, the Liquidating Trust reserves the right to file objections to these Employee Priority Claims at a later time on any grounds that bankruptcy or non-bankruptcy law permits.  The Liquidating Trust likewise reserves the right to modify, supplement and/or amend this Objection as it pertains to any claim or claimant herein.

## NOTICE AND PROCEDURE

120.    Notice of this Objection has been provided to the holders of the Employee Priority Claims (the "Employee Priority Claimants") identified on **Exhibits B** and to parties-in-interest in accordance with the Court's *Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures*

(entered on December 30, 2009 at Docket No. 6208) (the "Case Management Order").  The

Liquidating Trust submits that the following methods of service upon the Employee Priority

Claimants should be deemed by the Court to constitute due and sufficient service of this

Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the

applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for the

Employee Priority Claimants is not known to the Liquidating Trust, by first class mail, postage

prepaid, on the signatory of the  Employee Priority Claimant's proof of claim form or other

representative identified in the proof of claim form or any attachment thereto; or (c) by first class

mail, postage prepaid, on any counsel that has appeared on the Employee Priority Claimant's

behalf in the Debtors' bankruptcy cases.  The Liquidating Trust is serving the Employee Priority

Claimant with this Objection and the exhibit on which the Employee Priority Claimant's claim is

listed.

   121. To the extent any Employee Priority Claimant timely files and properly

serves a response to this Objection by **4:00 P.M. (Eastern) on April 7, 2011** as required by the

Case Management Order and under applicable law, and the parties are unable to otherwise

resolve the Objection, the Liquidating Trust requests that the Court conduct a status conference

with respect to any such responding claimant at **2:00 P.M. (Eastern) on April 14, 2011** and

thereafter schedule the matter for a future hearing as to the merits of such claim.  However, to the

extent any Employee Priority Claimant fails to timely file and properly serve a response to this

Objection as required by the Case Management Order and applicable law, the Liquidating Trust

requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND
## THE OMNIBUS OBJECTION PROCEDURES ORDER

122.    This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the

Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection

Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

123.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no

novel issues of law presented in the Motion, the Liquidating Trust requests that the requirement

that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

124.    No previous request for the relief sought herein has been made to this

Court or any other court.

[*This Objection continues on the next page.*]

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an

Order sustaining this Objection and granting such other and further relief as the Court deems

appropriate.

Dated: Richmond, Virginia   TAVENNER & BERAN, PLC
   February 28, 2011

           _____ */s/ Paula S. Beran* _____
           Lynn L. Tavenner (VA Bar No. 30083)
           Paula S. Beran (VA Bar No. 34679)
           20 North Eighth Street, 2nd Floor
           Richmond, Virginia 23219
           (804) 783-8300

              - and -

           PACHULSKI STANG ZIEHL & JONES LLP
           Jeffrey N. Pomerantz, Esq.
           Andrew W. Caine, Esq.
           10100 Santa Monica Boulevard
           Los Angeles, California 90067-4100
           (310) 277-6910

              - and –

           PACHULSKI STANG ZIEHL & JONES LLP
           Robert J. Feinstein, Esq.
           780 Third Avenue, 36th Floor
           New York, New York 10017
           (212) 561-7700

           *Counsel to the Circuit City Stores, Inc.*
           *Liquidating Trust*

Jeffrey N. Pomerantz, Esq.  
Andrew W. Caine, Esq.  
(admitted *pro hac vice*)  
PACHULSKI STANG ZIEHL & JONES LLP  
10100 Santa Monica Boulevard  
Los Angeles, California 90067-4100  
Telephone: (310) 277-6910  
Telecopy:  (310) 201-0760  

Lynn L. Tavenner, Esq. (VA Bar No. 30083)  
Paula S. Beran, Esq. (VA Bar No. 34679)  
TAVENNER & BERAN, PLC  
20 North Eighth Street, 2nd Floor  
Richmond, Virginia 23219  
Telephone: (804) 783-8300  
Telecopy:  (804) 783-0178  

*Counsel to the Circuit City Stores, Inc.*  
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*  
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
|  | ) |  |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER SUSTAINING LIQUIDATING TRUST'S NINETEENTH OMNIBUS OBJECTION TO CERTAIN EMPLOYEE PRIORITY CLAIMS:  NO LIABILITY; NOT ENTITLED TO PRIORITY; ALLOW UP TO THE STATUTORY CAP, AND RECLASSIFY, AS APPLICABLE
## (MISCELLANEOUS HR PRIORITY CLAIMS)

THIS MATTER having come before the Court on the *Liquidating Trust's*

*Nineteenth  Omnibus Objection to Certain Employee Priority Claims:  No Liability; Not Entitled*

*to Priority; Allow Up to the Statutory Cap; and Reclassify, as Applicable (Miscellaneous HR*

*Priority Claims)* (the "Objection"),[2] which requested, among other things, that the claims

specifically identified on Exhibit B attached to the Objection be disallowed for those reasons set

forth in the Objection; and it appearing that due and proper notice and service of the Objection as

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

set forth therein was good and sufficient and that no other further notice or service of the

Objection need be given; and it further appearing that no response was timely filed or properly

served by the holders of the Employee Priority Claims being affected by this Order; and it

appearing that the relief requested on the Objection is in the best interest of the Liquidating

Trust, the Debtors' estates and creditors and other parties-in-interest; and after due deliberation

thereon good and sufficient cause exists for the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.      The Objection is SUSTAINED.

2.      The No Liability Multiple Category Claims identified on <u>Exhibit C</u> as

attached hereto and incorporated herein are forever disallowed in their entirety for all purposes in

these bankruptcy cases.

3.      The Reduced and Reclassified Multiple Category Claims identified on

<u>Exhibit D</u> as attached hereto and incorporated herein are allowed on a priority basis in the

amount of the section 507(a)(4) statutory cap of $10,950, as set forth in <u>Exhibit D</u>, less any other

payments made to the holders of such Reduced and Reclassified Multiple Category Claims, and

are reclassified as general unsecured claims to the extent the Reduced and Reclassified Multiple

Category Claim exceeds the statutory cap, as set forth in <u>Exhibit D</u>.

4.      The Reclassified Multiple Category Claims identified on <u>Exhibit E</u> as

attached hereto and incorporated herein are reclassified in their entirety as general unsecured

claims.

5.     The PA Service Center Claims identified on Exhibit F as attached hereto and incorporated herein are (a) reclassified as general unsecured claims to the extent they request payment of the Retention Bonus, (b) allowed as priority claims up to the section 507(a)(4) statutory cap of $10,950, less priority payments previously received, to the extent they request payment of severance and PTO, and (c) allowed on a general unsecured basis for the remaining portions of the requests for severance and PTO, all as set forth in Exhibit F, attached hereto.

6.     The Disallowed Non-Categorized Employee Priority Claims identified on Exhibit G as attached hereto and incorporated herein are forever disallowed in their entirety for all purposes in these bankruptcy cases.

7.     The Reduced and Reclassified Non-Categorized Employee Priority Claims identified on Exhibit H as attached hereto and incorporated herein are allowed on a priority basis in the amount of the section 507(a)(4) statutory cap of $10,950, as set forth in Exhibit H, less any other payments made to the holders of such Reduced and Reclassified Non-Categorized Employee Priority Claims, and are reclassified as general unsecured claims to the extent the Reduced and Reclassified Non-Categorized Employee Priority Claim exceeds the statutory cap, as set forth in Exhibit H.

8.     The Reclassified Non-Categorized Employee Priority Claims identified on Exhibit I as attached hereto and incorporated herein are reclassified in their entirety as general unsecured claims.

9.      The Disallowed PTO Claims identified on <u>Exhibit J</u> as attached hereto and
incorporated herein are forever disallowed in their entirety for all purposes in these bankruptcy
cases.

10.     The Reduced PTO Claims identified on <u>Exhibit K</u> as attached hereto and
incorporated herein are allowed on a priority basis in the amount of the section 507(a)(4)
statutory cap of $10,950, as set forth in <u>Exhibit K</u>, less any other payments made to the holders
of such Reduced PTO Claims.

11.     The Disallowed Wage Claims identified on <u>Exhibit L</u> as attached hereto
and incorporated herein are forever disallowed in their entirety for all purposes in these
bankruptcy cases.

12.     The Reclassified Wage Claims identified on <u>Exhibit M</u> as attached hereto
and incorporated herein are reclassified in their entirety as general unsecured claims.

13.     The Equity Interests identified on <u>Exhibit N</u> as attached hereto and
incorporated herein are forever disallowed in their entirety for all purposes in these bankruptcy
cases.

14.     The Retirement Claims identified on <u>Exhibit O</u> as attached hereto and
incorporated herein are forever disallowed in their entirety for all purposes in these bankruptcy
cases.

15.     The Liquidating Trust's rights to object to any claim including (without
limitation) the Employee Priority Claims subject to the Objection, on any grounds that applicable
law permits, are not waived and are expressly reserved.

16.    The Liquidating Trust shall serve a copy of this Order on the holders of

the Employee Priority Claims included on the exhibits to this Order on or before five (5)

business days from the entry of this Order.

17.    This Court shall retain jurisdiction to hear and determine all matters

arising from or relating to this Order.


Dated: Richmond, Virginia
              _____, 2010


                        _____
                        HONORABLE KEVIN R. HUENNEKENS
                        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

TAVENNER & BERAN, PLC


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
     - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
     - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*



**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

  Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

     /_____
     Lynn L. Tavenner