Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al.,. | : | Case No. 08-35653-KRH |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

### NOTICE OF LIQUIDATING TRUST'S TWENTY-SECOND OMNIBUS OBJECTION TO CERTAIN HR PRIORITY CLAIMS:  RECLASSIFY AS GENERAL UNSECURED (<u>DEFERRED COMPENSATION CLAIMS – TOP HAT</u>)

**PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the *Liquidating Trust's Twenty-Second Omnibus Objection to Certain HR Priority Claims: Reclassify as General Unsecured (Deferred Compensation Claims – Top Hat)* (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as <u>Exhibit 1</u>.  By the Objection, the Liquidating Trust is seeking to reclassify certain claims.

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively, the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

| TO: | Claim Number | Claim Amount | Reference Objection |
|---|---|---|---|

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION. <u>YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION.</u> THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE AND A REQUEST FOR A HEARING ARE FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY <u>4:00 P.M. (EASTERN TIME) ON APRIL 7, 2011</u>, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

<u>**Critical Information for Claimants
Choosing to File a Response to the Objection**</u>

<u>Who Needs to File a Response</u>: If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

<u>Response Deadline</u>: The Response Deadline is **<u>4:00 p.m. (Eastern Time) on April 7, 2011 (the "Response Deadline")</u>**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED <u>AND</u> RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **<u>actually</u> <u>received</u>** on or before the Response Deadline by the Bankruptcy Court at the following address:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street – Room 4000
Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083 |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:  (804) 783-0178 |
| Telecopy:  (310) 201-0760 | |

The status hearing on the Objection will be held at  **2:00 p.m. (Eastern Time) on April 14, 2011 at:**

United States Bankruptcy Court
701 East Broad Street – Courtroom 5000
Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do not need to appear at the status hearing on the Objection.

### Procedures for Filing a Timely Response and
### Information Regarding the Hearing on the Objection

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

> a.   a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;

> b.   the claimant's name and an explanation for the amount of the Claim;

> c.   a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts that support the Response, setting forth the reasons why the Bankruptcy Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the

3

specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d.      a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e.      a declaration of a person with personal knowledge of the relevant facts that support the Response;

f.      the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address").  If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g.      to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses").  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**.  To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf.  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**.  If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy

Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

### Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.


Dated:    February 28, 2011

*/s/ Paula S. Beran*
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, P.L.C.
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
        pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
        acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:  (804) 783-0178 |
| Telecopy:  (310) 201-0760 | |

*Counsel to the Circuit City Stores, Inc.*          *Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*                                *Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## LIQUIDATING TRUST'S TWENTY-SECOND OMNIBUS OBJECTION TO CERTAIN HR PRIORITY CLAIMS:  RECLASSIFY AS GENERAL UNSECURED (DEFERRED COMPENSATION CLAIMS – TOP HAT)

## CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES

## AND CLAIMS IN THE EXHIBITS ATTACHED TO THIS OBJECTION.

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second*

*Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and*

*Debtors in Possession and its Official Committee of Creditors Holding General Unsecured*

*Claims* (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's Twenty-*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

*Second Omnibus Objection to Certain HR Priority Claims: Reclassify as General Unsecured*

*(Deferred Compensation Claims – Top Hat)* (the "Objection"), and hereby moves this court (the

"Court"), pursuant to sections 105 and 502 of title 11 of the United States Code, 11 U.S.C. §§

101 et seq. (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for entry of an order in

the form attached hereto as **Exhibit A**, granting the relief sought by this Objection, and in

support thereof states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Objection under 28 U.S.C. §§

157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and

legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502,

Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## SUMMARY OF RELIEF REQUESTED

2.    Each claim subject to this Objection (the "Deferred Compensation

Claims") seeks to recover compensation that was deferred pursuant to the *Circuit City Stores,*

*Inc. Supplemental 401(k) Plan* (the "Deferred Compensation Plan").  The Deferred

Compensation Claims assert the right to priority pursuant to section 507(a)(5) of the Bankruptcy

Code.  The Deferred Compensation Claims are listed in **Exhibit B** in alphabetical order by name

of claimant.  A copy of the Deferred Compensation Plan is attached hereto as **Exhibit C**.

3.      This Objection is based on a review of the Deferred Compensation Claims and of the books and records of the debtors in the above-captioned cases (the "Debtors").  Based on the foregoing review, the Liquidating Trustee has determined that the Deferred Compensation Claims should be denied as priority claims and reclassified as general unsecured claims, in their entirety.  The Deferred Compensation Plan is "a top hat plan" pursuant to which top management and highly compensated individuals (the "Top Hat Participants") of Circuit City Stores, Inc. ("Circuit City" or the "Company") took advantage of provisions of the Employee Retirement Income Security Act of 1974 (the "ERISA") that allow sophisticated parties to defer a greater percentage of their compensation than other employees and to gain a potentially greater tax benefit when the money is withdrawn upon retirement or termination at a presumably lower tax bracket.

4.      In order to receive this special tax break, however, the Top Hat Participants had to assume a risk.  In the event the Company became insolvent, the Top Hat Participants' claim to the deferred salary would be general unsecured.  The Top Hat Participant would have no special or priority claim to the deferred salary.  These are ERISA-mandated risks. Courts agree that section 507(a)(5) of the Bankruptcy Code is not a "safe haven" from these risks.

5.      Moreover, the Deferred Compensation Claims do not meet the statutory requirements of section 507(a)(5) of the Bankruptcy Code.  First, the Deferred Compensation Plan is not an "employee benefit plan" within the meaning of section 507(a)(5).  The Deferred Compensation Plan is instead a "mere promise" to pay compensation at a later date.  Second, the

deferral of contribution is not a contribution within the meaning of the statute.  It is instead an

agreement to defer income in exchange for a tax break and assumption of the risk, in the event of

insolvency, that the Top Hat Participant will never receive the deferred compensation.

6.      Third, the Deferred Compensation Claims are not tied to any services

rendered within 180 days from the Petition Date, as required by section 507(a)(5).  The election

to defer compensation was made in December 2007, eleven months before Circuit City filed

bankruptcy.  Therefore, the Deferred Compensation Claims should be reclassified in their

entirety as general unsecured claims.

7.      Accordingly, the Liquidating Trustee requests an Order, substantially in

the form attached hereto as **Exhibit A**, reclassifying the Deferred Compensation Claims as

general unsecured claims in their entirety.

## BACKGROUND

8.      On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

9.      On November 12, 2008, the Office of the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").

10.      On November 12, 2008, the Court appointed Kurtzman Carson

Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these

chapter 11 cases pursuant to 28 U.S.C. § 156(c).

11.     On December 10, 2008, the Court entered that certain *Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

12.     Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for governmental units to file claims that arose before November 10, 2008 was 5:00 p.m. (Pacific) on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date Order (the "Claims Bar Date Notice").

13.     On December 17 and 19, 2008, KCC served a copy of the Claims Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

14.     On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant

to the Agency Agreement at the Debtors remaining stores.  As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

15.    On April 1, 2009, this Court entered an *Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections* (Docket No. 2881) (the "Omnibus Objection Procedures Order").

16.    On August 9, 2010, the Debtors and the Creditors' Committee filed the Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

17.    On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan.

18.    The Plan became effective on November 1, 2010 (the "Effective Date"), and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors, including objections to claims.  Under the Plan, objections to priority claims must be filed within 120 days of the Effective Date.

## OBJECTION

### A.    Burden of Proof

19.    Pursuant to 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly filed proof of claim is *prima facie* evidence of the validity of the claim.  However, when an objection to a proof of claim raises sufficient evidence, the burden of proof shifts to the claimant to establish that the claim is allowable.  *See In re Garvida*, 347 B.R. 697 (9th Cir. BAP 2006); *In*

*re Stoecker*, 143 B.R. 879, 883 (N.D. Ill. 1992).  Moreover, the holder of a claim always bears

the burden of persuasion.  *Id.*

20.     As demonstrated below, this Objection rebuts the *prima facie* validity of

the Deferred Compensation Claims.  Therefore, the holders of the Deferred Compensation

Claims bear both the burden of proof and the burden of persuasion to establish such Claims.

Those burdens cannot be met.

### B.     The Deferred Compensation Plan Is a Top Hat Plan

21.     Effective March 1, 2005, Circuit City established the Deferred

Compensation Plan to provide "a select group of management or highly compensated

employees" of the Company with supplemental benefits through salary deferrals and matching

employer contributions.  Deferred Compensation Plan, Introduction, **Exh. C.**

22.     The Deferred Compensation Plan is a "top hat" plan.  A "top hat" plan is a

"a plan which is unfunded and is maintained by an employer primarily for the purpose of

providing deferred compensation for a select group of management or highly compensated

employees*."  In re The Colonial BancGroup, Inc.,* 436 B.R. 695, 704 (Bankr. M.D. Ala. 2010)

(quotations and citation omitted).  The Deferred Compensation Plan meets these requirements by

its express terms.

### a.     The Deferred Compensation Plan Is Unfunded

23.     As set forth above, the Deferred Compensation Plan states, "The Plan is

unfunded and covers a select group of management or highly compensated employees."

Deferred Compensation Plan, Introduction, **Exh. C**.  This language tracks the language of

ERISA set forth in 29 U.S.C. § 1051(2) that relates to top hat plans (although the statute does not

use the term, "top hat plan").  *See also* Deferred Compensation Plan, at Article VII, section

7.01(a) at 13, **Exh. C**, "It is the intention of the Company that the Plan be considered *unfunded*

for tax purposes."  (Emphasis added.)

      24.    "Unfunded" means that the assets of the applicable deferred compensation

plan are available to the creditors of the employer and that participants in the deferred

compensation plan have no greater claim against the employer than a general unsecured creditor.

As the Court stated in *Colonial BancGroup*:

> A plan is unfunded if the corporation has not set aside funds,
> separate from its general assets, for payment of plan benefits and if
> *the beneficiaries have no legal right greater to those assets than
> that of a general, unsecured creditor.*  By definition, amounts
> deferred into an unfunded plan remain part of the general assets of
> the company subject to the claims of general unsecured creditors.

*Id.,* 436 B.R. at 712. (Emphasis added.)

      25.    The Deferred Compensation Plan by its express terms stated that the Top

Hat Participants would only have the rights of general unsecured creditors

> All Participants and Beneficiaries *are general unsecured creditors*
> of [Circuit City] with respect to the benefits due hereunder and the
> Plan constitutes *a mere promise* by the Company to make benefit
> payments in the future.

Deferred Compensation Plan, § 7.01(a) at 13, **Exh. C** (Emphasis added).  The Deferred

Compensation Plan also provided:

> The Company may, but is not required to establish a grantor trust
> which may be used to hold assets of the Company which are
> maintained as reserves against the Company's unfunded,
> unsecured obligations under the Plan.  Such reserves shall at all
> times be subject to the claims of the Company's creditors.

Deferred Compensation Plan § 7.01(c) at 13, **Exh. C**.

26.     This Court has already held that the funds in the Deferred Compensation

Plan were property of the estate and available to general unsecured creditors.  *See Order*

*Granting Debtors' Motion for Entry of an Order Directing Wachovia Bank, N.A. as Custodian of*

*Circuit City Stores, Inc., Supplemental 401(k) Plan to Deliver Assets of the Plan to the Debtors'*

*Estates*, entered on March 19, 2010 [Docket No. 6907].  Accordingly, the Deferred

Compensation Plan is "unfunded" and meets the first element of a top hat plan.

**b.**     **The Deferred Compensation Plan Is Available to a Select**
**Group of Individuals**

27.     The second requirement of a top hat plan is that it is offered only to "a

select group of management or highly compensated employees."  *Colonial BancGroup*, 436 B.R.

at 704.  The Deferred Compensation Plan contains this exact language.  Deferred Compensation

Plan, Introduction, **Exh. C**; 29 U.S.C. § 1051(2).  Eligibility to participate in the Deferred

Compensation Plan was determined annually based on compensation and IRS limits for highly

compensated executives.

28.     Accordingly, the Deferred Compensation Plan is a top hat plan.

**C.**     **Claims With Respect to Top Hat Plans Are General Unsecured Claims**

29.     ERISA offers a statutory *quid pro quo*.  In exchange for the tax and other

benefits of participating in a top hat plan,[2] the participants in a top hat plan have to assume the

risk that their claims to the deferred compensation will be general unsecured.  *See Goodman v.*

*Resolution Trust Corp.*, 7 F.3d, 1123, 1130 (4th Cir. 1993) ("Federal tax law conditions the

---

[2] These benefits include exemption "from the participation and vesting provisions of ERISA, 29 U.S.C. §§ 1051-61, its funding provisions, 29 U.S.C. §§ 1081-1086, and its fiduciary responsibility provisions, 29 U.S.C. §§ 1101-11114."  *Silicon Graphics, Inc. v. Merrill Lynch Trust Co. of California* (In re *Silicon Graphics*, Inc.), 363 B.R. 690 (Bankr. S.D. N.Y. 2007).

beneficial tax treatment of a rabbi trust[3] on the requirement that the trust fund remains subject to

the claims of the employer's creditors as if the assets were the general assets of the employer.");

*Accardi v. IT Litigation Trust (In re IT Group),* 448 F.3d 661, 669 (3rd Cir. 2006) ("[D]eferred

compensation is not taxable as current income only where the future payment of the

compensation *is somehow uncertain*, i.e., where the assets used to pay participants' claims are

also subject to other creditors' claims."). (Emphasis added.) As the Third Circuit added:

> The employee is not subject to tax on the compensation until he or
> she actually receives the deferred amount *because the employee
> may never receive the money if the company becomes insolvent.*

*IT Group,* 448 F.3d at 665 (citations omitted) (emphasis added).

30.    If the Top Hat Participants were certain that their deferred compensation

would be paid or if they were entitled to priority ahead of other creditors on the Deferred

Compensation Claims, then they would not be entitled to the tax breaks and other benefits that

ERISA affords to top hat plans. Status as a general unsecured creditor with respect to the

deferred compensation is a statutory requirement imposed on all top hat plans. In *Colonial

BancGroup*, 436 B.R. at 712, the court held that top hat funds were property of the estate and

stated that holding otherwise would:

> fly in the face of the very purpose, structure and function of a top
> hat plan. It would place 11 U.S.C. § 541(b)(7) at odds with ERISA
> and essentially nullify a top hat plan in the bankruptcy context. It
> would upend the policy of ERISA and the tax law that the deferred

---

[3] A rabbi trust enables the employer to place "top hat" deferred compensation into a fund or trust while still keeping the unfunded status under ERISA by providing that the employer's creditors can reach the fund if the employer goes bankrupt or insolvent. *See IT Group,* 844 F.3d at 665; *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 111 (Bankr. D. Del. 2008). The Deferred Compensation Plan either keeps the deferred compensation with the Company, i.e. unfunded, or in a grantor trust subject to the Company's creditors, i.e. a rabbi trust. *See* Deferred Compensation Plan, § 7.01(c), **Exh. C.**

> amounts in a top hat plan are part of the general assets of the
> company subject to the claims of its general creditors.

*Colonial BancGroup, Inc.*, 436 B.R. at 712.

31.     Finally, Congress allowed high level executives to assume the risk of

general unsecured status.  *See e.g., Silicon Graphics, Inc. v. Merrill Lynch Trust Co. of*

*California (In re Silicon Graphics, Inc.),* 363 B.R. 690 (Bankr. S.D.N.Y. 2007):

> Congress exempted "top hat" plans from ERISA's substantive
> protections because it believed that, unlike other employees,
> management and highly compensated employees have sufficient
> bargaining power to negotiate favorable deferred compensation
> plans and are capable of taking the risks attendant to such plans
> into account.

*Id.*, 363 B.R. at 697 (citations omitted).  *See also Holloman v. Mail-Well Corp.*, 443 F.3d 832,

837 (11th Cir. 2006):

> [T]op hat plans are excluded from many individual ERISA
> provisions on the basic assumption that high-level employees are
> in a strong bargaining position relative to their employers and thus
> do not require the same substantive protections that are necessary
> for other employees.

*Id.*, 443 F.3d at 837 (quotations omitted).

**D.     Section 507(a)(5) Is Not a Safe Harbor From the Risks of a Top Hat Plan**

32.     Section 507(a)(5) of the Bankruptcy Code accords fifth priority status to

allowed secured claims for:

> [C]ontributions to an employee benefit plan – (A) arising from
> services rendered within the 180 days before the filing of the
> petition.

11 U.S.C. § 507(a)(5).

33.     This provision does not accord priority status to any contribution to any

employee benefit plan.  In *Howard Delivery Service, Inc. v. Zurich American Insurance Co.*, 547

U.S. 651 (2006), the U.S. Supreme Court held that, although a workers' compensation plan is an

employee benefit plan within the meaning of ERISA, a workers' compensation insurance

carrier's claim was not entitled to priority status under section 507(a)(5), since workers'

compensation coverage is not "a wage substitute." Similarly, top hat plans are not a wage

substitute – but an agreement between an employer and its highly paid, high level employees,

pursuant to which the employee waives the right to immediate compensation in exchange for a

promise of payment in the future. This promise is no different than any other promise made to

any other creditor of the employer and therefore is not entitled to section 507(a)(5) priority.

###    E.    <u>The Top Hat Plans Do Not Fit Within the Protections of Section 507(a)(5)</u>

34.    The history of section 507(a)(5) demonstrates that it does not intend to

create a safe harbor for top hat plan participants. Two decisions of the U.S. Supreme Court

prompted the enactment of section 507(a)(5). In the first case, the Supreme Court held that a

debtor-employer's unpaid contributions to a union welfare fund – which provided life insurance,

weekly sick benefits, hospital and surgical benefits, and other advantages – did not qualify for

the "wages" priority set forth in what is now section 507(a)(4) of the Bankruptcy Code. *United

States v. Embassy Restaurant, Inc.*, 359 U.S. 29, (1959). In the second case, the Supreme Court

held that bargained-for contributions to an employees' annuity plan did not qualify as "wages"

entitled to priority under what is now section 507(a)(4) of the Bankruptcy Code. *Joint Industry

Board. of Elec. Industry v. United States*, 391 U.S. 224 (1968). "To provide a priority for fringe

benefits of the kind at issue in *Embassy Restaurant* and *Joint Industry Board*, Congress added

what is now section 507(a)(5)." *Howard Delivery Service,* 547 U.S. at 658. Justice Ginsburg

has noted that section 507(a)(5) "manifests Congress' comprehension that fringe benefits

generally complement, or 'substitute' for, hourly pay." *Id.*, at 659.  *See In re Saco Local

Development Corp.*, 711 F.2d 441, 449 (1st Cir. 1983) (substitution of fringe benefits for wages

"can normally be assumed, unless the employer is a philanthropist").

      35.    The election to defer compensations pursuant to the Deferred

Compensation Plan is qualitatively different than the "wage substitutes" of *Embassy Restaurant*

and *Joint Industry Board*.  The Top Hat Participants took advantage of ERISA provisions that

allow "select" individuals within a company to defer a greater percentage of their salary than

"less select" individuals.  This offers a highly compensated professional the opportunity to build

tax-deferred savings at a greater rate than the general population.  However, ERISA imposed a

limitation on this advantage.  In exchange for relaxed vesting, funding, and other requirements

applicable to deferred compensation, the Top Hat Participant must assume the risk that in the

event of insolvency, he have no will be no greater rights than any other general unsecured

creditor.  Thus, rather than reflecting a substitute of "wages" for a fringe benefit, such as health

care or life insurance, the Deferred Compensation Plan reflects a financial strategy that ERISA

offers to a select, highly compensated group of high level managers who are in a position to

calculate and assume risks.

    **F.**    **The Deferred Contributions Are Not Contributions Within the Meaning of
Section 507(a)(5)**

      36.    A line of cases hold that the funds of a top hat plan are property of the

estate, despite section 541(b)(7) which states that contributions to a deferred compensation plan

that are "withheld" or "received" by an employer are not property of the estate.

37.     In *Synovus Trust Co. v. Bill Heard Enterprises, Inc. (In re Bill Heard Enterprises, Inc.),* 419 B.R. 858 (Bankr. N.D. Ala. 2009), the Court held that "a deferral of income is neither a withholding by an employer nor an amount received by an employer from employees." *Id.* at 868. The Court stated that income is "withheld" when an employee has a present entitlement to the income, but for some reason the employer declines to give it to the employee." *Id.* at 867. The Court concluded that because the employees deferred funds in the plan, they had no present entitlement to the income. *Accord Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.),* 387 B.R. 95 (Bankr. D. Del. 2008):

> An annual deferral of income strikes this Court as potentially very different from a "withholding" or an "amount received by an employer from employees." The latter two categories imply that the employee possessed the income at some point, whereas a deferral of income implies that the employee agreed to receive the income at a later date and never actually possessed it.

*Id.*, 387 B.R. at 114.

38.     This line of cases informs the analysis here. Section 507(a)(5) gives priority to "contributions" to an employee benefit plan. However, the election to defer compensation is not a contribution to an employee benefit plan, but an agreement to waive immediate payment of salary in exchange for the unsecured promise to be paid later when, presumably, the Top Hat Participant would be in a lower tax bracket. Accordingly, section 507(a)(5) does not apply to the Deferred Compensation Claims.

### G.     The Deferred Compensation Does Not Arise From Services Rendered Within 180 days of the Petition Date

39.     Section 507(a)(5) grants priority to certain claims that "aris[e] from services rendered within 180 days" before the Petition Date. Pursuant to Article III, section 3.01

of the Deferred Compensation Plan, the Top Hat Participants would elect to defer salary "no later than the December 31 preceding such Plan Year." Deferred Compensation Plan, p. 8, **Exh. C**. Thus, the Top Hat Participants elected to defer their salary eleven months before the Petition Date. As such, the Deferred Compensation Claims are not covered by section 507(a)(5). Accordingly, the Deferred Compensation Plans are not entitled to priority and should be reclassified in their entirety as general unsecured claims.

## RESERVATION OF RIGHTS

40.     As noted above, the Liquidating Trust reserves the right to file objections to these Deferred Compensation Claims at a later time on any grounds that bankruptcy or non-bankruptcy law permits. The Liquidating Trust likewise reserves the right to modify, supplement and/or amend this Objection as it pertains to any claim or claimant herein, including, but. not limited to. subjecting the Deferred Compensation Claims to the aggregate cap set forth in section 507(a)(6) of the Bankruptcy Code.

## NOTICE AND PROCEDURE

41.     Notice of this Objection has been provided to the holders of the Deferred Compensation Claims (the "Deferred Compensation Claimants") listed on **Exhibit B** and to parties-in-interest in accordance with the Court's *Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* (entered on December 30, 2009 at Docket No. 6208) (the "Case Management Order"). The Liquidating Trust submits that the following methods of service upon the Deferred

Compensation Claimants should be deemed by the Court to constitute due and sufficient service

of this Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004

and the applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for

the Deferred Compensation Claimants is not known to the Liquidating Trust, by first class mail,

postage prepaid, on the signatory of the Deferred Compensation Claimant's  proof of claim form

or other representative identified in the proof of claim form or any attachment thereto; or (c) by

first class mail, postage prepaid, on any counsel that has appeared on the Deferred Compensation

Claimant's behalf in the Debtors' bankruptcy cases.  The Liquidating Trust is serving the

Deferred Compensation Claimants with this Objection and the exhibits on which the Deferred

Compensation Claimant's claim is listed.

    42.    To the extent any Deferred Compensation Claimant timely files and

properly serves a response to this Objection by **4:00 P.M. (Eastern) on April 7, 2011** as

required by the Case Management Order and under applicable law, and the parties are unable to

otherwise resolve the Objection, the Liquidating Trust requests that the Court conduct a status

conference with respect to any such responding claimant at **2:00 P.M. (Eastern) on April 14,**

**2011** and thereafter schedule the matter for a future hearing as to the merits of such claim.

However, to the extent any Deferred Compensation Claimant fails to timely file and properly

serve a response to this Objection as required by the Case Management Order and applicable

law, the Liquidating Trust requests that the Court enter an order, substantially in the form

attached hereto as **Exhibit A**, reclassifying the Deferred Compensation Claims as general

unsecured claims as set forth in **Exhibit B**, attached hereto.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND
## THE OMNIBUS OBJECTION PROCEDURES ORDER

43.     This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the

Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection

Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

44.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no

novel issues of law presented in the Motion, the Liquidating Trust requests that the requirement

that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

45.     No previous request for the relief sought herein has been made to this

Court or any other court.

[*This Objection continues on the next page.*]

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an

Order sustaining this Objection and granting such other and further relief as the Court deems

appropriate.

Dated: Richmond, Virginia       TAVENNER & BERAN, PLC
      February 28, 2011


      ___*/s/ Paula S. Beran*_____
      Lynn L. Tavenner (VA Bar No. 30083)
      Paula S. Beran (VA Bar No. 34679)
      20 North Eighth Street, 2nd Floor
      Richmond, Virginia 23219
      (804) 783-8300

      - and -

      PACHULSKI STANG ZIEHL & JONES LLP
      Jeffrey N. Pomerantz, Esq.
      Andrew W. Caine, Esq.
      10100 Santa Monica Boulevard
      Los Angeles, California 90067-4100
      (310) 277-6910

      - and –

      PACHULSKI STANG ZIEHL & JONES LLP
      Robert J. Feinstein, Esq.
      780 Third Avenue, 36th Floor
      New York, New York 10017
      (212) 561-7700

      *Counsel to the Circuit City Stores, Inc.*
      *Liquidating Trust*

Jeffrey N. Pomerantz, Esq.

Andrew W. Caine, Esq.

(admitted *pro hac vice*)

PACHULSKI STANG ZIEHL & JONES LLP

10100 Santa Monica Boulevard

Los Angeles, California 90067-4100

Telephone: (310) 277-6910

Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)

Paula S. Beran, Esq. (VA Bar No. 34679)

TAVENNER & BERAN, PLC

20 North Eighth Street, 2nd Floor

Richmond, Virginia 23219

Telephone: (804) 783-8300

Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER SUSTAINING LIQUIDATING TRUST'S TWENTY-SECOND OMNIBUS OBJECTION TO CERTAIN HR PRIORITY CLAIMS: RECLASSIFY  AS GENERAL UNSECURED (<u>DEFERRED COMPENSATION CLAIMS – TOP HAT</u>)

THIS MATTER having come before the Court on the *Liquidating Trust's Twenty-*

*Second Omnibus Objection to Certain HR Priority Claims:  Reclassify as General Unsecured*

*(Deferred Compensation Claims – Top Hat)* (the "Objection"),[2] which requested, among other

things, that the claims specifically identified on <u>Exhibit B</u> attached to the Objection be

reclassified, reduced or disallowed, as applicable, for those reasons set forth in the Objection;

and it appearing that due and proper notice and service of the Objection as set forth therein was

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

good and sufficient and that no other further notice or service of the Objection need be given;

and it further appearing that no response was timely filed or properly served by the holders of the

Deferred Compensation Claims being affected by this Order; and it appearing that the relief

requested in the Objection is in the best interest of the Liquidating Trust, the Debtors' estates and

creditors and other parties-in-interest; and after due deliberation thereon good and sufficient

cause exists for the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.      The Objection is SUSTAINED.

2.      The Deferred Compensation Claims identified on <u>Exhibit B</u> as attached

hereto and incorporated herein are reclassified as general unsecured claims, for all purposes in

these bankruptcy cases.

3.      The Liquidating Trust's rights to object to any claim including (without

limitation) the Deferred Compensation Claims subject to the Objection, on any grounds that

applicable law permits, are not waived and are expressly reserved.

4.      The Liquidating Trust shall serve a copy of this Order on the holders of

the Deferred Compensation Claims included on the exhibits to this Order on or before five (5)

business days from the entry of this Order.

5.      This Court shall retain jurisdiction to hear and determine all matters

arising from or relating to this Order.


Dated: Richmond, Virginia
_____, 2010


_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

TAVENNER & BERAN, PLC


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                    - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
                    - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*



### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                              /_____
                              Lynn L. Tavenner

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)
**EXHIBIT B**
Supplemental 401(k) Claims (Disallow as Priority; Reclassify as GUC).  See p. 2,  para. 2, and pp. 6-15 of Omnibus Objection.

| Supplemental 401(k) Claims (Disallow as Priority; Reclassify as GUC). See p. 2,  para. 2, and pp. 6-15 of Omnibus Objection. | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date Filed | Claim Number | Claimant Name and Address | Additional Notice Address | Classification as Filed | Claim Amount as filed (Disallowed as Priority) | Debtor | Reclassified General Unsecured Claim (subj. to further objection) |
| 1/16/2009 | 3821 | BESANKO, BRUCE H<br>191 FARMINGTON RD<br>LONGMEADOW, MA 01106 | | Priority | UNLIQUIDATED | Circuit City Stores, Inc. | UNLIQUIDATED |
| 1/29/2009 | 8138 | BRADLEY, BRIAN<br>3036 LEANNE CT<br>CLEARWATER, FL 33759 | | Priority | $48,777.08 | Circuit City Stores, Inc. | $48,777.08 |
| 1/23/2009 | 5176 | DEASON, STEPHEN N<br>2701 E BRIGSTOCK ROAD<br>MIDLOTHIAN, VA 23113 | | Priority | $4,392.93 | Circuit City Stores, Inc. | $4,392.93 |
| 12/16/2008 | 1743 | Engesser, Victor M<br>5216 Willane Rd<br>Glen Allen, VA 23059-5352 | | General Unsecured<br>Priority | $316,101.63<br>$10,323.18 | Circuit City Stores, Inc. | $326,424.81 |
| 1/22/2009 | 4368 | FALCONER, CARIN ELAINE<br>5904 OLD GREENWAY DR<br>GLEN ALLEN, VA 23059 | | Priority | $3,958.12 | Circuit City Stores, Inc. | $3,958.12 |
| 1/27/2009 | 6037 | HEDGEBETH, REGINALD D<br>PO BOX 6768<br>HOUSTON, TX 77265-6768 | | General Unsecured<br>Priority | $1,357,143.00<br>$10,776.28 | Circuit City Stores, Inc. | $1,367,919.28 |
| 1/23/2009 | 6528 | JONAS JR, ERIC A<br>10 S 20TH ST UNIT 709<br>RICHMOND, VA 23223 | JONAS JR, ERIC A<br>2 ANNETT AVE<br>EDGEWATER, NJ 07020 | Priority | $62,213.91 | Circuit City Stores, Inc. | $62,213.91 |
| 1/22/2009 | 5120 | KELLY, JOHN<br>428 GROUNDHOG COLLEGE RD<br>WEST CHESTER, PA 19382 | | Priority | $44,869.44 | Circuit City Stores, Inc. | $44,869.44 |
| 1/15/2009 | 3858 | MACKAY, IRYNNE V<br>402 NORTH MEADOW ST<br>RICHMOND, VA 23220 | IRYNNE V MACKAY<br>317 TARPON DR<br>FT LAUDERDALE, FL 33301-2469 | Priority | $5,546.20 | Circuit City Stores, Inc. | $5,546.20 |
| 1/13/2009 | 3413 | MCCOREY JR , WILLIAM<br>124 TEMPSFORD LANE<br>RICHMOND, VA 23226 | | General Unsecured<br>Priority | $3,139.45<br>UNLIQUIDATED | Circuit City Stores, Inc. | UNLIQUIDATED |
| 9/10/2009 | 14620 | Miller Jr, Richard T<br>Neil E McCullagh<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | Richard T Miller Jr<br>1507 Sawtimber Trl<br>West Chester, PA 19380 | General Unsecured<br>Priority | $25,156.96<br>$10,950.00 | Circuit City Stores, Inc. | $36,106.96 |
| 12/30/2008 | 2135 | MULLEADY, JOHN<br>9 WOOD RD<br>SHERBORN, MA 01770-1004 | John Mulleady<br>38 Page Farm Rd<br>Sherborn, MA 01770 | Priority | $24,832.00 | Circuit City Stores, Inc. | $24,832.00 |
| 1/15/2009 | 4780 | STRAUSS, DAVID ROBERT<br>5204 DAVENPORT PL<br>ROSWELL, GA 30075 | | Priority | UNLIQUIDATED | Circuit City Stores, Inc. | UNLIQUIDATED |
| 1/29/2009 | 8654 | vonBechmann, Dawn<br>Neil E McCullagh<br>Spotts Fain PC<br>411 E Franklin St Ste 600<br>Richmond, VA 23219 | Dawn vonBechmann<br>36 Countryside Ln<br>Richmond, VA 23229 | General Unsecured<br>Priority | $32,498.82<br>$2,873.10 | Circuit City Stores, Inc. | $35,371.92 |

EXHIBIT C

# CIRCUIT CITY STORES, INC.

# SUPPLEMENTAL 401(k) PLAN

**Effective  March 1, 2005**

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005


# TABLE OF CONTENTS

Page

INTRODUCTION .............................................................................................................1

ARTICLE I DEFINITIONS .............................................................................................2

| | | |
|---|---|---|
| 1.01 | Account | 2 |
| 1.02 | Affiliate | 2 |
| 1.03 | Beneficiary | 2 |
| 1.04 | Board of Directors | 2 |
| 1.05 | Change in Control | 2 |
| 1.06 | Code | 4 |
| 1.07 | Committee | 4 |
| 1.08 | Company | 4 |
| 1.09 | Compensation | 4 |
| 1.10 | Disabled | 4 |
| 1.11 | Employee | 4 |
| 1.12 | ERISA | 4 |
| 1.13 | 401(k) Plan | 5 |
| 1.14 | Investment Fund | 5 |
| 1.15 | Matching Contribution | 5 |
| 1.16 | Participant | 5 |
| 1.17 | Plan | 5 |
| 1.18 | Plan Year | 5 |
| 1.19 | Salary Deferral Contribution | 5 |
| 1.20 | Salary Deferral Election | 5 |
| 1.21 | Unforeseen Emergency | 6 |
| 1.22 | Valuation Date | 6 |

ARTICLE II ELIGIBILITY AND PARTICIPATION ......................................................7

| | | |
|---|---|---|
| 2.01 | Eligibility Requirements | 7 |
| 2.02 | Participation in the Plan | 7 |

ARTICLE III DEFERRAL ELECTIONS............................................................................8

| | | |
|---|---|---|
| 3.01 | Election of Deferrals | 8 |
| 3.02 | Election, Revocation and Modification of Deferrals | 8 |

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE IV ACCOUNTS

4.01  Establishment of Accounts ........................................................................................9
4.02  Crediting of Salary Deferral Contributions ...............................................................9
4.03  Matching Contributions.............................................................................................9

## ARTICLE V  INVESTMENTS AND VALUATIONS

5.01  Investment of Accounts ...........................................................................................10
5.02  Valuation of Bookkeeping Accounts .......................................................................10

## ARTICLE VI  DISTRIBUTIONS AND WITHDRAWALS

6.01  Termination of Employment for Reasons Other than Death or Disability .............11
6.02  Death or Disability ..................................................................................................11
6.03  Hardship ...................................................................................................................11
6.04  Form of Distribution ................................................................................................11
6.05  Federal Income Tax Withholding .............................................................................12

## ARTICLE VII  FUNDING

7.01  Funding ....................................................................................................................13
7.02  Change in Control ....................................................................................................13

## ARTICLE VIII ADMINISTRATION ..........................................................................14

8.01  Appointment of Administrator .................................................................................14
8.02  Duties.......................................................................................................................14
8.03  Benefit Claims Review Procedure ...........................................................................14
8.04  Fiduciary Discretion ................................................................................................15

## ARTICLE IX AMENDMENT AND TERMINATION OF THE PLAN

9.01  Amendment of the Plan ...........................................................................................16
9.02  Termination of the Plan ...........................................................................................16

## ARTICLE X GENERAL PROVISIONS

10.01  No Guaranty of Employment ..................................................................................17
10.02  Payments to Minors and Incompetents ...................................................................17
10.03  Non-Alienation of Benefits .....................................................................................17
10.04  Headings and Subheadings .....................................................................................17
10.05  Use of Masculine and Feminine; Singular and Plural ...........................................17
10.06  Beneficiary Designation...........................................................................................17
10.07  Errors and Omissions...............................................................................................18

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

10.08   Governing Law ........................................................................................................18
10.09   Binding Effect ........................................................................................................18
10.10   Effect on Other Plans ............................................................................................18
10.11   Other Benefits and Agreements ...........................................................................18

ARTICLE XI ADOPTION OF PLAN .......................................................................................22

## INTRODUCTION

The Circuit City Stores, Inc. Supplemental 401(k) Plan (the "Plan") is adopted effective March 1, 2005. The purpose of the Plan is to supplement the benefits payable to certain employees of Circuit City Stores, Inc. (the "Company") by supplementing benefits that would be available to such employees through salary deferrals and matching employer contributions. The Company has determined that the adoption of the Plan will assist it in attracting and retaining those employees whose abilities and experience will contribute to the Company's continued success.

The Company intends for the  Plan to be an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 as amended. The Plan is unfunded and covers a select group of management or highly compensated employees. The Company also intends the Plan to comply with the requirements of Section 409A of the Internal Revenue Code of 1986. All questions arising in the construction and administration of the Plan must be resolved in a manner that is consistent with that intent.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE I

## DEFINITIONS

### 1.01   Account

Account means the account or bookkeeping record reflecting a Participant's interest in the Plan.  A Participant may have several Accounts in the Plan.

### 1.02   Affiliate

Affiliate means any corporation which, when considered with Circuit City Stores, Inc., would constitute a controlled group of corporations within the meaning of Code section 1563(a), determined without regard to Code sections 1563(a)(4) and 1563(e)(3)(C) or any entity, whether or not incorporated which, when considered with Circuit City Stores, Inc. would constitute a controlled group in accordance with Code section 414(c) and regulations promulgated thereunder.

### 1.03   Beneficiary

Beneficiary means the the person or entity specified by a Participant on forms prescribed by the Company for that purpose.  If a Participant does not designate a Beneficiary or if the designated Beneficiary predeceases the Participant or is not in existence on the date of the Participant's death, then Beneficiary means the Participant's surviving spouse, or if there is no surviving spouse, the executor(s)or administrator(s)of the Participant's estate.

### 1.04   Board of Directors

Board of Directors means the Board of Directors of Circuit City Stores, Inc.

### 1.05   Change in Control

Change of Control means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

(a)     The acquisition by any individual, entity, or group (a "Person"), including a "person" within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Exchange Act, of thirty-five percent (35%) or more of either:  (i) the then outstanding shares of common stock of the Circuit City Group (the "Outstanding Common Stock"); or (ii) the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following:  (A) any acquisition directly from the Company (excluding an acquisition resulting from the exercise of an option, conversion right, or exchange privilege unless the

2

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

security being so exercised, converted or exchanged was acquired directly from the Company);
(B) any acquisition by the Company; (C) any acquisition by an employee benefit plan (or related
trust) sponsored or maintained by the Company or any corporation controlled by the Company;
or (D) any acquisition by any corporation pursuant to a transaction which complies with clauses
(i), (ii), and (iii) of subsection (c) of this Section 1.05;

(b)      Individuals who, as of the Effective Date, constitute the Board of Directors (the
"Incumbent Board") cease for any reason to constitute at least a majority of such Board; provided
that any individual who becomes a director of the Company subsequent to the Effective Date,
whose election, or nomination for election by the Company's stockholders, was approved by the
vote of at least a majority of the directors then comprising the Incumbent Board shall be deemed
a member of the Incumbent Board; and provided further, that any individual who was initially
elected as a director of the Company as a result of an actual or threatened election contest, as
such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or
any other actual or threatened solicitation of proxies or consents by or on behalf of any Person
other than the Board shall not be deemed a member of the Incumbent Board;

(c)      The consummation of a reorganization, merger or consolidation of the Company
or sale or other disposition of all or substantially all of the assets of the Company (a "Corporate
Transaction"); excluding, however, a Corporate Transaction pursuant to which:   (i) all or
substantially all of the individuals or entities who are the beneficial owners, respectively, of the
Outstanding Common Stock and the Outstanding Voting Securities immediately prior to such
Corporate Transaction will beneficially own, directly or indirectly, more than sixty percent
(60%) of, respectively, the outstanding shares of common stock, and the combined voting power
of the outstanding securities of such corporation entitled to vote generally in the election of
directors, as the case may be, of the corporation resulting from such Corporate Transaction
(including, without limitation, a corporation, which as a result of such transaction owns the
Company or all or substantially all of the Company's assets either directly or indirectly) in
substantially the same proportions relative to each other as their ownership, immediately prior to
such Corporate Transaction, of the Outstanding Common Stock and the Outstanding Voting
Securities, as the case may be; (ii) no Person (other than:  the Company; any employee benefit
plan (or related trust) sponsored or maintained by the Company or any corporation controlled by
the Company; the corporation resulting from such Corporate Transaction; and any Person which
beneficially owned, immediately prior to such Corporate Transaction, directly or indirectly,
twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting
Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent
(25%) or more of, respectively, the outstanding shares of common stock of the corporation
resulting from such Corporate Transaction or the combined voting power of the outstanding
securities of such corporation entitled to vote generally in the election of directors; and
(iii) individuals who were members of the Incumbent Board will constitute at least a majority of
the members of the board of directors of the corporation resulting from such Corporate
Transaction; or

(d)      The consummation of a plan of complete liquidation, dissolution, or sale of
substantially all the assets of the Company.

3

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

For purposes of this Section 1.05, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

1.06   **Code**

Code means the Internal Revenue Code of 1986, as amended. References to specific sections of the Code includes those sections and any comparable sections of future legislation that modify, amend, supplement, supersede or recodify such sections.

1.07   **Committee**

Committee means the Administrative Committee appointed by the Board to administer the Plan.

1.08   **Company**

Company means Circuit City Stores, Inc. and all of its Affiliates that have adopted the Plan.

1.09   **Compensation**

Compensation means compensation as defined in Section 1.10 of the 401(k) Plan without regard to the limit on compensation that may be recognized under Code section 401(a)(17) and with the inclusion of compensation deferred by the Participant pursuant to Plan section 3.01 for any relevant period.

1.10   **Disabled**

Disabled means the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months.

1.11   **Employee**

Employee means an individual who is an employee of Circuit City Stores, Inc. or an affiliate who has adopted the Plan and who is a member of a select group of management or highly compensated employees of the Company.

1.12   **ERISA**

4

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

ERISA means the Employee Retirement Income Security Act of 1974, as amended. References to specific sections of ERISA shall include those sections and any comparable sections of future legislation that modify, amend, supplement, supersede or recodify such sections.

1.13   **401(k) Plan**

401(k) Plan means the Circuit City Stores, Inc. 401(k) Plan, as now and hereafter amended.

1.14   **Investment Fund**

Investment Fund means any of the investment funds designated under the 401(k) Plan pursuant to Article VI thereof.

1.15   **Matching Contribution**

Matching Contribution means the Company's Matching Contribution which matches Salary Deferral Contributions made to the Plan on behalf of a Participant as described in section 4.02 of the Plan.

1.16   **Participant**

Participant means an eligible Employee who satisfies the requirements of Article II.  A Participant is considered an active Participant if such Participant has an election to make a Salary Deferral Election in effect.  A Participant who does not have a Salary Deferral Election in effect or who is no longer an Employee is considered an inactive Participant.

1.17   **Plan**

Plan means the Circuit City Stores, Inc. Supplemental 401(k) Plan.

1.18   **Plan Year**

Plan Year means the annual period beginning on January 1st and ending on the following December 31st.  The Plan has a short Plan Year commencing March 1, 2005, and ending December 31, 2005.

1.19   **Salary Deferral Contribution**

Salary Deferral Contribution means a Participant's pre-tax salary deferrals made under the Plan in accordance with Plan section 3.01.

1.20   **Salary Deferral Election**

Salary Deferral Election means the Employee's election in writing to defer amounts under

5

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

the Plan.

1.21    **Unforeseen Emergency**

Unforeseen Emergency means a Participant's severe financial hardship resulting from an illness or accident of the Participant, the Participant's spouse or of a dependent (as defined in Code section 152), loss of the Participant's property due to casualty or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant.  The amount of the distribution on account of an Unforeseen Emergency may not exceed the amounts necessary to satisfy such emergency plus amounts necessary to pay taxes reasonably anticipated as a result of the distribution.  Payment may not be made to the extent an Unforeseen Emergency is or may be relieved (a) through reimbursement or compensation by insurance or otherwise, or (b) by liquidation of the Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship.  Any determination of the existence of an Unforeseen Emergency and the amount to be distributed on account thereof shall be made by the Plan Administrator (or such other person as may be required to make such decisions) in accordance with rules applied in a uniform and nondiscriminatory manner.

1.22    **Valuation Date**

Valuation Date means each business day of the Plan Year.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE II

## ELIGIBILITY AND PARTICIPATION

2.01    **Eligibility Requirements**

An Employee shall be eligible to participate in the Plan as of later of a) the date such Employee is designated by the Committee to participate in the Plan, and b) is eligible to participate in the 401(k) Plan.

2.02    **Participation in the Plan**

(a)    An eligible Employee becomes a Participant upon his completion of a Salary Deferral Election pursuant to Article III.    Each Employee and Participant must correctly disclose to the Administrator all requested information necessary for the administration of the Plan.

(b)    A Participant shall continue to be a Participant of the Plan until the date that he is no longer entitled to benefits under the Plan.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE III

## DEFERRAL ELECTIONS

3.01    **Election of Deferrals**

(a)    In order to become an Active Participant, an eligible Employee must file with the Administrator a Salary Deferral Election, in accordance with its terms and the terms and conditions of this section 3.01.  Such Salary Deferral Election must be filed no later than the December 31 preceding such Plan Year and at such earlier time as may be set by the Committee in its sole discretion.

(b)    The maximum Salary Deferral Contribution for a Plan Year shall be forty percent (40%) of the Participant's Compensation for such Year.  A Participant's election must be made in  one percent (1%) increments.

(c)    Each Salary Deferral Election shall be made on a form provided by the Administrator and shall specify any such information as the Administrator may require.

3.02    **Election, Revocation and Modification of Deferrals**

A Participant's election to defer under the Plan shall be irrevocable for the Plan Year and thereafter as of the December 31 of the preceding year, but may be revoked or modified by the Participant prior the beginning of any subsequent Plan Year.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE IV

## ACCOUNTS

4.01    **Establishment of Accounts**

The Administrator shall establish and maintain separate Accounts and for each Participant of the Plan to credit a Participant's Salary Deferral Contributions and Matching Contributions. As required for appropriate record-keeping, the Administrator may establish and name additional Accounts or sub-accounts for each Participant.

4.02    **Crediting of Salary Deferral Contributions**

(a)     Salary Deferral Contributions shall be credited to the Participant's Account as of the last day of the payroll period in which such Compensation would otherwise be paid to the Participant.

(b)     A Participant's interest in his Account attributable to Salary Deferral Contributions and any earnings therein shall be fully vested and nonforfeitable.

4.03    **Matching Contributions**

(a)     As soon as practicable after the end of each calendar quarter, the Company shall credit to each Participant's Matching Contribution Account an amount equal to (i) minus (ii) below where:

(i)     equals the Company Safe Harbor Contribution (as defined in the 401(k) Plan) the Participant would have received under the 401(k) Plan based on the formula set forth in the 401(k) Plan and the percentage of Compensation deferred under this Plan, and ー (17)?

(ii)     equals the amount of Company Safe Harbor Matching Contribution (as defined in the 401(k) Plan) credited to the Participant under the 401(k) Plan for the Plan Year assuming the Participant deferred at least five percent (5%) of his Compensation (taking into account the limit under Code Section 401(a)(7) under the 401(k) Plan).

(b)     A Participant's interest in his Account attributable to Matching Contributions and any earnings thereon shall be fully vested and nonforfeitable.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE V

## INVESTMENTS AND VALUATION

5.01    **Investment of Accounts**

(a)      A Participant may direct the investment of his Account among one or more of the Investment Funds.    Such direction shall be in writing on a form provided by the Administrator and in accordance with procedures established by the Administrator.    The investment of a Participant's Account is hypothetical and solely for the purpose of crediting earnings on such Account.

(b)      The investment of a Participant's Account shall be made in multiples of ten percent (10%). An investment election shall remain in force until changed.    Participants may change the investment of their Account with respect to the balance in their Account and with respect to any future Salary Deferral Contributions and Matching Contributions in accordance with procedures established by the Administrator.

5.02    **Valuation of Bookkeeping Accounts**

Each Participant's Account shall be valued as of the last day of each calendar quarter and adjusted as of such date to reflect any gains and  losses in the Investment Funds and any other expenses or charges attributable to the Account or Investment Fund.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE VI

## DISTRIBUTIONS AND WITHDRAWALS

6.01    <u>Termination of Employment for Reasons Other than Death or Disability</u>

(a)    In the event of a Participant's termination of employment, the Plan shall pay the Participant the total value of the Participant's Account as of the Participant's termination of employment.

(b)    Subject to subsection (c) below, a Participant's Account shall be distributed as soon as practicable following his termination of employment.

(c)    In the event the Participant is a key employee (as defined in Code section 416(i) without regard to paragraph (5) thereof) on the date of his termination of employment, the distribution of his Account shall be made no earlier than the six-month anniversary of his termination of employment.

6.02    <u>Death or Disability</u>

In the event of a Participant's death or Disability, the Plan shall pay the Participant, or his Beneficiary, as the case may be, the total value of the Participant's Account as of his death or Disability.

6.03    <u>Hardship</u>

(a)    No withdrawals or distributions are permitted from the Plan while the Participant remains employed by the Company except upon an Unforeseeable Emergency.

(b)    A distribution of up to 50% of the Participant's Account because of an Unforeseeable Emergency will be permitted only to the extent required by the Participant to satisfy the emergency need. Whether an Unforeseeable Emergency has occurred will be determined solely by the Administrator. Distributions in the event of an Unforeseeable Emergency may be made by and with the approval of the Administrator upon written request by a Participant.

6.04    <u>Form of Distribution</u>

Payment shall be made from the Plan to a Participant or Beneficiary in a single lump sum in cash.

11

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

6.05    <u>**Federal Income Tax Withholding**</u>

The Company shall withhold from any payment made by it under the Plan such amount or amounts as may be required for purposes of complying with the tax withholding or other provisions of the Code, the Social Security Act, as amended, or any federal, state or local income or employment tax provision, or otherwise.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE VII

## FUNDING

7.01    **Funding**

(a)    All Participants and Beneficiaries are general unsecured creditors of the Company with respect to the benefits due hereunder and the Plan constitutes a mere promise by the Company to make benefit payments in the future.  It is the intention of the Company that the Plan be considered unfunded for tax purposes.

(b)    The Company may, but is not required to, purchase life insurance in amounts sufficient to provide some or all of the benefits provided under this Plan or may otherwise segregate assets for such purpose.

(c)    Except as provided in Plan section 7.02 below, the Company may, but is not required to establish a grantor trust which may be used to hold assets of the Company which are maintained as reserves against the Company's unfunded, unsecured obligations under the Plan. Such reserves shall at all times be subject to the claims of the Company's creditors.  To the extent such trust or other vehicle is established, and assets contributed for the purpose of fulfilling the Company's obligation hereunder, then such obligation of the Company shall be reduced to the extent such assets are utilized to meet its obligations hereunder.

7.02    **Change in Control**

Effective upon a Change in Control, the Company shall contribute to a  grantor trust an amount equal to the aggregate Account balances of all Participants in the Plan.  The trust shall be funded with cash or cash equivalents other than stock of the Company.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE VIII

## ADMINISTRATION

### 8.01   Appointment of Administrator

The Committee shall serve as the Plan Administrator and shall be responsible for the operation and administration of the Plan except to the extent its duties are allocated to and assumed by persons or entities hereunder.

### 8.02   Duties

(a)     The Committee shall make such rules and regulations as it deems necessary for operation of the Plan, shall determine all questions arising in the administration, interpretation and application of the Plan, review claims for benefits which have been denied, and shall perform all other functions which may be assigned to it by the Board.

(b)     The Committee or its delegate shall maintain, on a plan or calendar year basis, employee and other such records as are necessary for the successful operation of the Plan and shall supply such full and timely information for all matters relating to the Plan as the Committee may require for the effective discharge of its duties.

(c)     The Committee or its delegate shall receive all applications for benefits and shall establish rules and procedures to be followed by Participants and Beneficiaries in filing such applications and for furnishing and verifying all data which may be required in order to establish their rights to benefits in accordance with the Plan.  Upon receipt of an application for benefits, the Committee or its delegate shall determine all facts which are necessary to establish the right of an applicant to benefits and the amount thereof.  All approved benefits shall be paid at the direction of the Committee or its delegate.  Such payments shall be made in accordance with the Committee's or its delegate's written directions setting forth the amount of such payments and the specific manner in which such payments are to be made.

### 8.03   Benefit Claims Review Procedure

(a)     Claims for benefits under the Plan may be submitted to the Committee or such person as the Committee may designate in writing who shall have the initial responsibility for determining the eligibility of any Participant or Beneficiary for benefits.  Such claims for benefits shall be made in writing and shall set forth the facts which such Participant or Beneficiary believes to be sufficient to entitle him to the benefit claimed.  The Committee may adopt forms for the submission of claims for benefits in which case all claims for benefits shall be filed on such forms.

(b)     Upon receipt of a claim, the Committee or its delegate must respond in writing within 90 days.  If necessary, the Committee or its delegate's first notice must indicate any special circumstances requiring an extension of time for the Committee or its delegate's decision.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

The extension notice must indicate the date by which the Committee or its delegate expects to give a decision. An extension of time for processing may not exceed 90 days after the end of the initial 90 day period.

(c)     If the written claim for a Plan benefit is wholly or partially denied or the claimant has had no response, the claimant or his duly authorized representative, at the sole expense of the claimant, may appeal the denial within 60 days of the date of the denial or the expiration of the time period provided in subsection (b) to the Committee. An adverse notice must be written in a manner calculated to be understood by the claimant and must include (i) each reason for denial; (ii) specific references to the pertinent provisions of the Plan or related documents on which the denial is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why that material or information is needed; and (iv) appropriate information about the steps to be taken if the claimant wishes to submit the claim for review.

(d)     In pursuing his appeal the claimant or his representative:

(i)     may request in writing that the Committee review the denial;

(ii)     may review pertinent documents; and

(iii)     may submit issues and comments in writing.

(e)     The decision on review shall be made within 60 days; provided that the 60 day period may be extended for an additional 60 days by written notice to the claimant setting forth the reasons for the extension. The decision on review shall be made in writing, shall include specific reasons for the decision, shall be written in a manner calculated to be understood by the claimant and shall contain specific references to the pertinent Plan provisions on which the decision is based.

8.04     **Fiduciary Discretion**

In discharging the duties assigned to it under the Plan, the Committee and each other fiduciary with respect to the Plan has the discretion to interpret the Plan; adopt, amend and rescind rules and regulations pertaining to its duties under the Plan; and to make all other determinations necessary or advisable for the discharge of its duties under the Plan. Each fiduciary's discretionary authority is absolute and exclusive if exercised in a uniform and nondiscriminatory manner with respect to similarly situated individuals. The express grant in the Plan of any specific power to a fiduciary with respect to any duty assigned to it under the Plan must not be construed as limiting any power or authority of the fiduciary to discharge its duties. A fiduciary's decision is final and conclusive unless it is established that the fiduciary's decision constituted an abuse of its discretion.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

# ARTICLE IX

## AMENDMENT AND TERMINATION OF THE PLAN

9.01    **Amendment of the Plan**

The Company shall have the right by action of the Board of Directors or its delegate to modify, alter or amend the Plan in whole or in part prospectively or retroactively; provided, however, that any such action shall not, in any way, adversely affect the benefits of individuals who have terminated their employment under the Plan prior to the effective date of such action, or of their Beneficiaries, nor shall it adversely affect amounts credited to Participants prior to the effective date of such action.

9.02    **Termination of the Plan**

The Company reserves the right to terminate the Plan at any time by action of its Board of Directors or its delegate, provided, however, that any such action shall not, in any way, adversely affect the benefits of individuals who have terminated their employment under the Plan prior to the effective date of such action, or of their Beneficiaries, nor shall it adversely affect amounts credited to Participants prior to the effective date of such action.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE X

### GENERAL PROVISIONS

#### 10.01  No Guaranty of Employment

The Plan shall not be deemed to constitute a contract between the Company and any Participant or to be consideration or an inducement for the employment of any Participant of the Company.  Nothing contained in the Plan shall be deemed to give any Participant the right to be retained in the service of the Company or to interfere with the rights of the Company to discharge or to terminate the service of any Participant at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

#### 10.02  Payments to Minors and Incompetents

If a Participant or Beneficiary entitled to receive any benefits hereunder is a minor or is deemed so by the Administrator or is adjudged to be legally incapable of giving valid receipt and discharge for such benefits, benefits will be paid to such person as the Administrator might designate.  Such payments shall, to the extent made, be deemed a complete discharge of any liability for such payment under the Plan.

#### 10.03  Non-Alienation of Benefits

To the extent permitted by law, no benefit payable under the Plan will be subject in any manner to anticipation, assignment, garnishment, or pledge; and any attempt to anticipate, assign, garnish or pledge the same will be void and no such benefits will be made in any manner liable for or subject to the debts, liabilities, engagements or torts of any Participants.

#### 10.04  Headings and Subheadings

The headings and subheadings in this Plan have been inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

#### 10.05  Use of Masculine and Feminine; Singular and Plural

In the construction of the Plan the masculine shall include the feminine and the singular the plural in all cases where such meanings are indicated by the context.

#### 10.06  Beneficiary Designation

At the time of enrollment in the Plan, each Participant, if applicable, must designate a Beneficiary to receive settlement of his Plan account in the event of his death during employment.  A Participant may, from time to time, change a Beneficiary or Beneficiaries under the Plan.  In the event that no designated Beneficiary is surviving at the time of the Participant's death, settlement under the Plan will be made as provided in Plan section 1.03.

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

10.07  **Errors and Omissions**

It shall be the responsibility of those individuals and entities charged with the administration of the Plan to see that it is administered in accordance with its terms. In the event an innocent error or omission is discovered in the operation or administration of the Plan, then the Committee may correct such error as it deems necessary or desirable in a manner consistent with the goodwill intended to be engendered by the Plan and to put Participants in the same relative position they would have been in but for such error or omission.

10.08  **Governing Law**

The Plan shall be construed, enforced and administered in accordance with the laws of the Commonwealth of Virginia.

10.09  **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Company, its successors and assigns, and the Participant and his heirs, executors, administrators and legal representatives.

10.10  **Effect on Other Plans**

The amount of Compensation deferred under the Plan and the crediting of any Matching Contribution shall not be deemed to be earnings or compensation for the purpose of calculating a Participant's benefits or contribution under a retirement or deferral plan of the Company or the basis for determining benefits under any other benefit plan provided by the Company, except to the extent provided in any such plan. No amount distributed under this Plan shall be deemed to be earnings or a part of the Participant's total Compensation when determining a Member's benefit under any benefit plan established by a Company, unless otherwise provided in such plan.

10.11  **Other Benefits and Agreements**

The benefits provided for a Participant under the Plan are not intended to duplicate any other benefits available to such Participant under any other plan or program of the Corporation for its employees, and, except as may otherwise be expressly provided for, the Plan shall not duplicate, supersede, modify or amend any other plan or program of the Company in which a Participant is participating.

18

Circuit City Stores, Inc.
Supplemental 401(k) Plan
Effective March 1, 2005

## ARTICLE XI

## ADOPTION OF PLAN

As evidence of its adoption of the Plan herein constituted, Circuit City Stores, Inc. has caused this instrument to be signed by its duly authorized officer this ___28th___ day of October, 2004.

**CIRCUIT CITY STORES, INC.**

By: _____

Title _Chairman, President & Chief Executive Officer_