IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. 08-35653-KRH |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**IMCC SUNLAND, L.L.C.'S MOTION TO COMPEL LIQUIDATING TRUST TO (I) COMPLY WITH CERTAIN TERMS OF THE SECOND AMENDED JOINT PLAN OF LIQUIDATION OF CIRCUIT CITY STORES, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION AND ITS OFFICIAL COMMITTEE OF CREDITORS HOLDING GENERAL UNSECURED CLAIMS, AND (II) RECOGNIZE AND EFFECTUATE TRANSFERS OF CLAIMS OTHER THAN FOR SECURITY AND MEMORANDUM IN SUPPORT THEREOF**

IMCC Sunland, L.L.C. ("IMCC Sunland"), by and through its undersigned counsel, hereby moves ("Motion") the Court to enter an order compelling the Circuit City Stores, Inc. Liquidating Trust ("Liquidating Trust") to (i) comply with certain terms of the *Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims* (D.I. 8252) ("Plan"); and (ii) recognize and effectuate the *Transfers of Claims Other Than for Security* (D.I. 9891 and 9892) ("Transfers") filed by IMCC Sunland in the above-captioned debtors' ("Debtors") chapter 11 bankruptcy cases by revoking the rejection of the Transfers and directing its agent, Kurtzman Carson Consultants LLC ("KCC"), to prepare and send out notice of the

| | |
|---|---|
| Augustus C. Epps, Jr., Esquire (VSB 13254) | Karen C. Bifferato, Esquire |
| Michael D. Mueller, Esquire (VSB 38216) | Kelly M. Conlan, Esquire |
| Jennifer M. McLemore, Esquire (VSB 47164) | CONNOLLY BOVE LODGE & HUTZ LLP |
| CHRISTIAN & BARTON, LLP | The Nemours Building |
| 909 East Main Street, Suite 1200 | 1007 North Orange Street |
| Richmond, Virginia 23219 | Wilmington, Delaware 19899 |
| Telephone: (804) 697-4100 | Telephone: (302) 658-9141 |
| | |
| Counsel for IMCC Sunland, L.L.C. | Counsel for IMCC Sunland, L.L.C. |

Transfers as required by Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedures ("FRBP"). In support of the Motion, IMCC Sunland respectfully states as follows:

## BACKGROUND

1. On November 10, 2008 ("Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. On November 12, 2008, the Court appointed KCC as claims, noticing, and balloting agent for the Debtors in these chapter 11 cases pursuant to 11 U.S.C. § 156(c).

3. Prior to the Petition Date, Inland Mortgage Capital Corporation, a Maryland Corporation ("IMCC") loaned $6,771,000.00 to CDB Falcon Sunland Plaza, L.P. ("CDB Falcon"), pursuant to that certain Construction Loan Agreement (and related documents) ("Loan"), which CDB Falcon then used to purchase and construct buildings on certain property located in El Paso, Texas ("Property").

4. In order to secure the indebtedness under the Loan, IMCC and CDB Falcon executed the *First Deed of Trust, Assignment of Rents and Security Agreement* ("Deed of Trust"). Paragraph 22.A of the Deed of Trust provides IMCC with the right and power to foreclose upon the occurrence of an Event of Default.[1] IMCC and CDB Falcon also executed an *Assignment of Leases and Rents* ("Assignment"), which entitles IMCC to "any and all rights and claims of any kind which [CDB Falcon] may have against any lessee under the Lease[] or any subtenants or occupants of the Premises."[2] *Assignment*, p. 2.

5. Upon information and belief, CDB Falcon, as landlord, leased a portion of the Property to Debtor Circuit City Stores, Inc. pursuant to that certain lease agreement, dated April 5, 2007 ("Lease"), for premises located at Sunland Plaza Shopping Center, I-10 and Sunland

---

[1] All terms not defined herein shall have the meanings ascribed to such terms in the Deed of Trust and/or Assignment.
[2] Copies of the Deed of Trust and Assignment are attached hereto as Exhibits A and B, respectively.

2

Park Drive, El Paso, Texas. Upon information and belief, the Debtors rejected the Lease effective as of March 10, 2009.

6. On January 28, 2009, CDB Falcon timely filed (i) proof of claim number 8607 ("Claim 8607"), which asserts an unsecured claim in the amount of $592,784.18 and an administrative claim in the amount of $110,996.45, and (ii) proof of claim number 13905 ("Claim 13905", and together with Claim 8607, hereinafter referred to as the "Claims"), which asserts an administrative claim in the amount of $110,996.45.

7. Subsequently, CDB Falcon defaulted on the Loan.[3] Pursuant to the Deed of Trust and related documents, IMCC posted the Property for foreclosure in accordance with the requirements of the Deed of Trust and the laws of the State of Texas. Prior to the non-judicial foreclosure sale of the Property, IMCC assigned all of its right, title and interest in the Loan, including the Deed of Trust and the Assignment, to IMCC Sunland pursuant to that certain Assignment and Assumption of Note and Liens dated as of August 31, 2009. IMCC Sunland, as the successful bidder at the foreclosure sale, became the owner of the Property[4] by virtue of that certain Substitute Trustee's Deed dated September 1, 2009. In addition, IMCC Sunland is now the rightful owner of the Claims and is entitled to any distributions that CDB Falcon may receive on account of the Claims.

8. Accordingly, on January 31, 2011, IMCC Sunland filed the Transfers with respect to the Claims. Shortly thereafter, on February 3, 2011, IMCC Sunland received two *Notices of Rejection of Notice of Transfer* ("Rejection Notices") from KCC. The Rejection Notices are attached hereto as Exhibit G. The Rejection Notices state that KCC could not "accept and

---

[3] IMCC Sunland has commenced litigation in Illinois against CDB Falcon and the guarantor of the Loan for a deficiency.
[4] Copies of the (i) Notice of Default and Demand for Repayment of the Loan; (ii) Notice of Sale by Substitute Trustee; (iii) Substitute Trustee's Deed; and (iv) Assignment and Assumption of Notice and Liens are attached hereto as Exhibits C through F, respectively.

3

process" the Transfers as they were "filed after the Distribution Record Date[5] and [are] therefore untimely pursuant to Articles VI.L and I.B 1.59" of the Plan.

9. The Plan became effective on November 1, 2010 ("Effective Date"), and pursuant to the terms thereof, the Liquidating Trust was established and became effective on the Effective Date. The Liquidating Trust was granted the authority to engage professionals and experts as it deemed necessary including, but not limited to, those professionals retained by the Debtors prior to the Effective Date. Moreover, the Liquidating Trust assumed the right and responsibility to, *inter alia*, object to claims. Upon information and belief, KCC is currently acting as the Liquidating Trust's agent, and takes direction from the Liquidating Trust.

### RELIEF REQUESTED

10. IMCC Sunland respectfully requests that the Court enter an order that compels the Liquidating Trust to (i) comply with Article VI, Paragraph L of the Plan as written; and (ii) to recognize and effectuate the Transfers by revoking the Rejection Notices and directing KCC to comply with Rule 3001(e)(2) of the FRBP.

11. Article VI, Paragraph L of the Plan states as follows:

> The Disbursing Agents will have no obligation to recognize the transfer of or sale of any participation in any *Allowed Claim* that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize, deal with and distribute only to those Holders of Allowed Claims who are record Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date, as stated on the official claims register.

*Plan*, Art. VI, ¶ L (emphasis added). However, this section of the Plan expressly applies to "Allowed Claims" only, which are defined as

> a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Liquidating

---

[5] September 14, 2010 was established as the Distribution Record Date.

4

>Trustee and the Holders of any such Claim agree may adjudicate such Claim and any objections thereto), (b) that either (x) has been Scheduled as a liquidated, noncontingent, and undisputed Claim in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly allowed in a liquidated amount in this Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtors, or any other party in interest (x) has not interposed a timely objection or (y) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; provided, further, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or this Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Plan Proponents and/or the Liquidating Trustee as being an Allowed Claim.

*Plan*, § 1.6.

12.    IMCC Sunland is well aware that the filing of the Transfers came after the Distribution Record Date.  However, the Claims are not "Allowed Claims" as that term is defined in the Plan, and therefore, the Transfers should not have been rejected.

13.    As of the date the Transfers were filed, the Claims had not yet been objected to and the deadline for the Liquidating Trust to object to the Claims had not yet expired.  Thus, under section 1.6 of the Plan, the Claims were not Allowed Claims.

14.    Moreover, on February 28, 2011, the Liquidating Trust filed its *Twentieth Omnibus Objection to Landlord Claims (Reduction of Partially Invalid Claims, Reclassification*

5

*of Certain Misclassified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, Disallowance of Certain Duplicate Claims, and Disallowance of Certain Amended Claims* (D.I. 10072) ("Claims Objection"), in which the Liquidating Trust is objecting to both Claim 8607 and Claim 13905. The filing of the Claims Objection alone is enough to remove the Claims from the scope of "Allowed Claims" as that term is defined by the Plan. *See also Plan*, § 1.53(b)(iii) (defining a "Disputed Claim" as one that has not been allowed by the Plan or by final order and to which any party in interest has filed an objection that has not been withdrawn or determined by a final order).

15. Deadlines such as the Distribution Record Date are typically established to enhance the ease of administration with respect to distributions made on allowed proofs of claim. However, the Claims are not allowed yet and so there is no harm in the Liquidating Trust or its agents recognizing the transfers of the Claims. In addition, no distributions have yet been made on the Claims (nor will any be made until the Claims Objection is resolved and the Claims are deemed "allowed"). Accordingly, rejection of the Transfers does not further the policy behind establishing such deadlines.

16. Simply put, the Claims are not "Allowed Claims" as that term is defined in the Plan, which excepts them from the requirement that the Transfers had to have been filed prior to the Distribution Record Date. The Transfers were timely filed, and should be recognized by the Liquidating Trust and its agents. In order to rectify this mistake, the Liquidating Trust should be compelled to comply with Article VI, Paragraph L of the Plan and revoke or withdraw the Rejection Notices. In addition, the Liquidating Trustee should be directed to compel KCC to send out the notices with respect to the Transfers that are required by Rule 3001(e)(2) of the FRBP.

WHEREFORE, for all of the foregoing reasons, IMCC Sunland respectfully requests that this Court enter an order that (i) compels the Liquidating Trust to (a) comply with Article VI, Paragraph L of the Plan as written; and (b) to recognize and effectuate the Transfers as requested above, and (ii) grants such other and further relief as is just and proper.

Dated: March 15, 2011    **CHRISTIAN & BARTON, LLP**

By:    /s/ Jennifer M. McLemore
Augustus C. Epps, Jr., Esquire (VSB 13254)
Michael D. Mueller, Esquire (VSB 38216)
Jennifer M. McLemore, Esquire (VSB 47164)
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

-and-

Karen C. Bifferato, Esquire (No. 3279)
Kelly M. Conlan, Esquire (No. 4786)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141

*Attorneys for IMCC Sunland, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March, 2011, a true and correct copy of the foregoing Objection was served by electronic mail to all parties receiving service through the Court's ECF system.

                                          /s/ Jennifer M. McLemore
                                          Jennifer M. McLemore

1136388