# iTouchless®  iTouchless Housewares and Products, Inc.
777 Mariners Island Blvd, Suite 125, San Mateo, CA 94404, USA
Tel: 1-650-578-0578   Fax: 1-650-578-1363

March 25, 2011

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street – Room 4000
Richmond, Virginia, 23219

```
RICHMOND DIVISION
F                    F
I                    I
L    APR  4 2011     L
E                    E
D      CLERK         D
    US BANKRUPTCY COURT
```

To Whom It May Concern,

RE: Circuit City Stores, Inc. Chapter 11 Case# 08-35653
<u>Subject: Objection to notice of seventh omnibus objection to claims (reduction of certain partially invalid claims, disallowance of certain invalid claims and reclassification of certain incorrectly classified claims)</u>

We, iTouchless Housewares & Products Inc, are writing to response the object to notice with the amounted $12,277.50.00. Circuit City Stores Inc ("Circuit City) and iTouchless Housewares & Products Inc ("Vendor") entered into Direct Ship vendor agreement (agreement # v1-1-08) on 6/9/2008. Circuit City confirmed that iTouchless Housewares shall ship ordered products to Circuit City's customers DIRECTLY and Circuit City should be responsible for paying all invoices which iTouchless billed to Circuit City according to this agreement.

Please find the following subtracts from the agreement,

1. <u>In the agreement page 2 under term 1.5 Direct Ship Order Fulfillment</u>
    It states,
    "After the receipt of a Purchase Order from Circuit City, Vendor shall ship the ordered Products directly to Circuit City 's customer in accordance with the shipment procedures set forth in Section 2 below".
    " Simultaneously with issuance of the shipment confirmation, Vendor will provide Circuit City with an invoice for the Product(s) ordered by the Circuit City customer (the "Invoice")".

2. <u>In the agreement page 2 under term 3. Payment Terms</u>
    It states,
    " 3.1. Payment to Vendor. Circuit City shall make payment to Vendor net sixty-three (63) days of Circuit City's receipt of notification of Circuit City's carriers' receipt of goods."

Best Regards,

*[signature]*

Vivian Jin
Senior Manager
iTouchless Housewares & Products, Inc.
Tel: 650-578-0578 ext: 310
Cell: 650-619-9302
Fax: 650-578-0509
e-mail : VivianJ@itouchless.net

Execution Copy

# DIRECT SHIP
# VENDOR AGREEMENT

This Direct Ship Vendor Agreement ("Direct Ship Agreement") is entered into as of May 20, 2008 ("Effective Date") by and between **CIRCUIT CITY STORES, INC.**, a Virginia corporation, with its principal office located at 9950 Mayland Drive, Richmond, VA 23233, and its affiliates and subsidiaries ("Circuit City") and **iTOUCHLESS HOUSEWARES AND PRODUCTS, INC.**, a California corporation, with its principal office located at 551 Foster City Boulevard, Unit M, Foster City, CA 94404 ("Vendor").

## Recitals

A.  Under the terms and conditions of this Direct Ship Agreement, Circuit City agrees to sell Vendor's products more particularly described herein through Circuit City's catalog, telephone call center and/or Internet website sales channels.

B.  This Direct Ship Agreement specifically does not apply to purchases and sales of Vendor's products made by Circuit City for resale in its retail store locations.

## Direct Ship Agreement

NOW, THEREFORE, in consideration of the mutual promises contained herein, Vendor and Circuit City hereby agree as follows:

1.  **DIRECT SHIP TRANSACTIONS.**

    1.1  General; Products. Circuit City will offer certain of Vendor's products (the "Products") for sale to its customers through Circuit City's catalog, telephone call center and/or Internet website sales channels ("CCDirect Sales Channels"). The Products subject to this Direct Ship Agreement are set forth in one or more Product Addenda that is/are may be entered into from time to time by the parties (each a "Product Addendum"). Each such Product Addendum shall be incorporated herein by this reference. Notwithstanding anything to the contrary herein, Circuit City may at any time cease to order from Vendor any or all Products under this Direct Ship Agreement.

    1.2  Price and Terms of Sale. Vendor will sell and Circuit City will purchase the Products upon the terms and at the prices specified in the applicable Product Addendum and subject to this Direct Ship Agreement. Vendor shall provide Circuit City with at least sixty (60) days' advance notice of any proposed price increase and obtain Circuit City's written consent. Vendor shall provide Circuit City with at least thirty (30) days' advance notice of any proposed price decrease and obtain Circuit City's written consent. Circuit City will unilaterally establish its own prices and terms for the resale of the Products to the public, and Vendor will not advise, instruct or in any way interfere with Circuit City's independent establishment of its retail prices.

    1.3  CommerceHub. Circuit City utilizes the services offered by Commerce Technologies, Inc., a corporation doing business as "CommerceHub" ("CommerceHub") in connection with fulfillment of orders through CCDirect Sales Channels under this Direct Ship Agreement. Vendor shall be required to execute and maintain an agreement with CommerceHub, substantially in the form attached as Exhibit A hereto, as a condition to fulfillment of orders through CCDirect Sales Channels under this Direct Ship Agreement. Throughout the Term (as defined herein), Vendor shall pay CommerceHub a per order transaction fee and such other fees as may be charged by CommerceHub. The parties agree that CommerceHub will bill the Vendor directly for these fees. Only Products approved by Circuit City in accordance with this Direct Ship Agreement and any Product Addendum hereunder shall be eligible for order fulfillment under the CommerceHub arrangement. Notwithstanding the above, Vendor acknowledges and agrees that Circuit City may fulfill orders of consumer electronics and related products through the CCDirect Sales Channels under conventional purchase and sale vendor relationships (i.e. without using CommerceHub), and that such sales shall not be subject to the terms of this Direct Ship Agreement.

1.4    Circuit City Customer Orders.  Vendor shall provide Circuit City with a photographic sample of each Product, which sample shall be posted via the appropriate CCDirect Sales Channels for viewing by Circuit City's customers.  Upon receipt of an order for Product(s) by its customer through a CCDirect Sales Channel, Circuit City will transmit a purchase order ("Purchase Order") to Vendor by electronic transfer containing among other things the order number and Product information.  Vendor shall contact Circuit City within one (1) business day of receipt of the Purchase Order if Vendor is unable to fulfill the customer's order due to an error or insufficient information on the Purchase Order.

1.5    Direct Ship Order Fulfillment.  After the receipt of a Purchase Order from Circuit City, Vendor shall ship the ordered Products directly to Circuit City's customer in accordance with the shipment procedures set forth in Section 2 below.  All Products shipped by Vendor to Circuit City's customers must be identical to the photographic sample that was presented by the Vendor to Circuit City and posted via the appropriate CCDirect Sales Channels.  Vendor shall not substitute other items or models for any Products ordered by Circuit City's customer.  Contemporaneously with shipment of the Products, Vendor will provide to Circuit City a shipment confirmation which shall contain without limitation the following: (i) date of shipment, (ii) order number, (iii) item number, (iv) Circuit City's cost of the Product(s), and (v) the price paid by Circuit City's customer for the Product(s).  Shipment confirmations with inaccurate information may be subject to compliance charges as set forth by Circuit City from time to time.  Simultaneously with issuance of the shipment confirmation, Vendor will provide Circuit City with an invoice for the Product(s) ordered by the Circuit City customer (the "Invoice").

2.    **SHIPPING TERMS**.

2.1    Order Fulfillment Period.  Orders received by the Vendor by 2:00 PM EST on behalf of Circuit City must be filled by the Vendor and shipped on the same day.  Orders received by the Vendor after 2:00 PM EST shall be filled by the end of the next business day.  Any orders that cannot be filled by the end of the next business day shall not be subject to backorder under any circumstance.  Vendor agrees to provide Product item level inventory to Circuit City upon request in order to ensure Product availability for all Products available through CCDirect Sales Channels.

2.2    Method of Delivery.  Vendor shall ship all customer orders using only Circuit City's approved carriers.  Circuit City shall absorb all shipping costs through the authorization of the Vendor to use Circuit City's shipping accounts.  Title to all goods shipped passes to Circuit City when Vendor places such goods in the hands of the freight carrier for shipment.  Circuit City will be the shipper of record regardless of the carrier used and will bear the risk of loss during shipment unless any damage is conclusively shown to be the result of negligent packing by Vendor.

3.    **PAYMENT TERMS**.

3.1    Payments to Vendor.  Circuit City shall make payment to Vendor net sixty-three (63) days of Circuit City's receipt of notification of Circuit City's carrier's receipt of goods.  Circuit City will have the right to set off any amounts Vendor owes to it against any amount it owes to Vendor.  In addition, in the event Vendor is ever in a debit balance with Circuit City, Vendor will remit payment of any such amounts to Circuit City by certified check or wire transfer within thirty (30) days of demand by Circuit City.

3.2    Disputed Amounts.  In the event Circuit City disputes the accuracy of an invoice, payment will be withheld for the disputed amount only.  Circuit City will make reasonable efforts to notify Vendor within thirty (30) business days of any dispute.  At the quarterly meeting described in Section 13.2 the parties will make a good faith effort to reconcile any disputed invoices.

4.    **WARRANTIES**.

4.1    General.  Vendor represents and warrants (i) good and marketable title to the Products free of any lien or encumbrance; (ii) that the Products are merchantable; (iii) that the Products are free from defects in workmanship and materials, including, without limitation, such defects as could create a

hazard to life or property in accordance with the terms and conditions of Vendor's limited warranty; (iv) that the Products are free from defects in design; (v) that the Products are fit and sufficient for the purpose intended; (vi) that the Products are fit for resale to retail customers; and (vii) that the Products are manufactured and packaged in accordance with all applicable federal, state and local laws and all orders and regulations promulgated thereunder, including the Consumer Product Safety laws of the United States and the several states.

4.2    Intellectual Property. Additionally, Vendor represents and warrants that (i) it is the owner or valid licensee of any and all intellectual property or other proprietary rights pertaining to the Products, Product images, and Vendor's and Product trademarks and/or trade names; and (ii) it has the full and sufficient right, power and authority to sell the Products to Circuit City and grant the rights and licenses granted under this Direct Ship Agreement. Vendor further represents and warrants that the Products, Product images, and Vendor's and Product trademarks and/or trade names do not and will not (i) infringe, misappropriate or otherwise violate any United States patent, copyright, trademark, trade secret or other United States proprietary right of any third party; or (ii) violate any other rights of third parties. Vendor will comply with all applicable Federal, state and local laws and regulations in performing its obligations under this Direct Ship Agreement.

4.3    Manufacturer's Warranty. Vendor agrees to comply in all respects with the Magnuson-Moss Warranty Act [15 U.S.C. Sections 2301 et seq.] and the regulations issued thereunder, as the same may be amended from time to time. Prior to the initial delivery of each Product purchased under this Direct Ship Agreement, Vendor agrees to deliver to Circuit City at least one copy of all written warranty documents covering each Product. In the event a Product is not covered by a written warranty, Vendor agrees to deliver to Circuit City a written statement that Vendor offers no such warranty for that specified Product. In the event any existing Product warranty is amended, updated or modified, Vendor agrees to deliver to Circuit City at least one copy of any amended, updated or modified warranty document within a reasonable time prior to the effective date of the change.

5.    **CUSTOMER RETURNS**. Circuit City may return to Vendor any Product returned by a customer in accordance with Circuit City's return policies as they may exist from time to time (collectively, "Customer Returns"). Customer Returns will be accepted by Vendor for at least ninety (90) days from the date of Vendor's invoice to Circuit City for the related Product. All Customer Returns will be returned at Vendor's expense in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. All Customer Returns will be consolidated and processed through Circuit City's Product Return Centers. No return authorizations will be required; however, Vendor will, upon request by Circuit City, provide a blanket authorization for the same. Without limiting the generality of the foregoing, Customer Returns will be packed by Circuit City to avoid damage in transit, but the Customer Returns' original packaging is not required. No deduction or credit memo will be taken by Vendor for any missing parts. In the event the return of any Customer Returns creates a debit balance, such amounts will be payable via check within thirty (30) days of demand from Circuit City. Customer Return amounts will be deducted from Circuit City's Vendor accounts payable balance based on 100% of the invoice price paid for such Customer Returns. In the event Customer Returns result in a debit balance, such amounts will be payable via check within thirty (30) days of demand from Circuit City.

6.    **CONFIDENTIALITY**. To the extent necessary to perform the obligations related to this Direct Ship Agreement, a party (the "Disclosing Party") may share with the other party (the "Receiving Party") certain documents and information, including, but not limited to, information pertaining to products, business practices, schedules, services, methods, data, processes, advertising plans, sales, financial information and operating procedures which the Disclosing Party considers to be, and treats as, confidential ("Confidential Information"), whether or not specifically identified as such. Information shared under the terms of any confidentiality agreement executed by the parties in contemplation of the relationship set forth herein is also deemed to be "Confidential Information" subject to this Section 6. The Receiving Party shall maintain the Disclosing Party's Confidential Information in confidence, shall protect it with the same degree of care which it uses to protect its own Confidential Information (which shall be not less than reasonable care), and shall use it for the sole purpose of performing under this Direct Ship

Execution Copy

Agreement. Confidential Information shall not be distributed, disclosed, conveyed or in any other manner made available to any consultant, subcontractor or any third party unless such third party is bound by confidentiality restrictions or agreements sufficient to enable the Receiving Party to comply with its obligations hereunder. For purposes of this Section, the term "Confidential Information" shall not include any information which: (i) is in the public domain at the time of disclosure or enters the public domain following disclosure through no fault of the Receiving Party; (ii) the Receiving Party can demonstrate was already in its possession prior to disclosure hereunder or is subsequently disclosed to the Receiving Party with no obligation of confidentiality by a third party having the right to disclose it; or (iii) is independently developed by the Receiving Party without reference to the Disclosing Party's Confidential Information, provided that the Receiving Party can clearly demonstrate such independent development through contemporaneous records showing such development. The Receiving Party may disclose the Disclosing Party's Confidential Information upon the order of any court of competent jurisdiction or as otherwise required by law or legal process, provided that prior to such disclosure the Receiving Party shall inform the Disclosing Party of such order if permitted by law, in order to provide the Disclosing Party with an opportunity to contest such order or to seek such other protective action as the Disclosing Party may elect. Vendor and Circuit City agree that the confidentiality covenants in this Section 6 apply to all Confidential Information disclosed to it during the term of this Direct Ship Agreement (including any renewal terms) and for a period of three (3) years after termination. In the event of a violation of this Section 6, because of the unique nature of the Confidential Information, the Disclosing Party would suffer irreparable harm, and money damages and other remedies at law available in the event of a breach or a threatened breach would not be adequate to compensate for the harm caused by the breach or the threatened breach. Accordingly, in addition to any other remedies it may have hereunder or at law or in equity, the Disclosing Party shall have the right to obtain injunctive relief for violation of this Section 6.

7.    **CUSTOMER INFORMATION**. In addition to the Confidential Information as provided in Section 6 above, Vendor acknowledges that any personally identifiable information regarding Circuit City customers ("Customer Information") obtained by Vendor in connection with direct fulfillment of orders for Products hereunder is solely the property of Circuit City. Vendor shall use industry standard data security and physical security measures and procedures to protect Customer Information, which measures and procedures shall be documented and provided to Circuit City from time to time upon reasonable request. Circuit City shall have the right to audit Vendor's procedures at reasonable times and with reasonable notice. Vendor agrees that neither Vendor nor its subcontractors (if any) shall use any Customer Information for any purpose except in connection with this Direct Ship Agreement without the express written consent of Circuit City. Vendor acknowledges that its use of the Customer Information as provided herein shall not create in Vendor any right, title or interest in the Customer Information and that such use of the Customer Information and the goodwill symbolized by and connected with such use of the Customer Information will inure solely to the benefit of Circuit City. Without limiting the generality of the foregoing, Vendor specifically agrees that it shall not (i) do or cause to be done or omit to do anything which the doing, causing or omitting of would contest or in any way impair or tend to impair the rights of Circuit City in the Customer Information; (ii) represent to any third party that Vendor has any ownership or rights with respect to the Customer Information other than the specific right to use the Customer Information as provided herein; or (iii) use any Customer Information for the purpose of soliciting Circuit City customers. Vendor acknowledges and agrees that any use of Customer Information by Vendor except as expressly authorized herein shall constitute a breach of this Direct Ship Agreement. In the event of a violation of this Section 7, because of the unique nature of the Customer Information, Circuit City would suffer irreparable harm, and money damages and other remedies at law available in the event of a breach or a threatened breach would not be adequate to compensate for the harm caused by the breach or the threatened breach. Accordingly, in addition to any other remedies it may have hereunder or at law or in equity, Circuit City shall have the right to obtain injunctive relief for violation of this Section 7.

8.    **INTELLECTUAL PROPERTY**. Circuit City acknowledges that it has no ownership right in or to Vendor's trademarks and/or trade names. Circuit City is hereby licensed to use Vendor's Product images, trademarks and/or trade names as it may deem necessary or advisable in conjunction with the marketing and sale of the Products, and in accordance with the instructions, if any, provided by Vendor to Circuit City. Vendor acknowledges that it has no ownership right in or to Circuit City's trademarks and/or trade names and that Circuit City has a vested interest in protecting its trademarks and/or trade names

Direct Ship Vendor Agreement    4
(v1-1-08)

Execution Copy

and all other aspects of its brand, including all rights and benefits attendant thereto. Vendor will not use Circuit City's trademarks and/or trade names either in connection with the Products or for any other reason whatsoever without obtaining Circuit City's prior written consent, and in the event such consent is obtained, such use will be subject to such restrictions or limitations as Circuit City may impose and in accordance with such instructions as Circuit City may provide.

9.  **INDEMNIFICATION**. Vendor agrees to defend (through counsel reasonably satisfactory to Circuit City), indemnify and hold harmless Circuit City and its affiliates, and their respective directors, officers, employees, agents, successors, and assigns from and against any and all third party actions, judgments, claims, losses, damages, expenses or costs (including attorneys' fees and costs and expenses of defense) and liabilities which arise out of, relate to or are in any way connected with (i) the sale, resale and/or use or failure of the Products, including without limitation, liability based upon death or injury to any person (including Circuit City employees) or damage to property resulting or arising from or alleged to result or arise from or out of the sale, resale, use and/or failure of the Products; (ii) Vendor's actual or alleged breach of this Direct Ship Agreement, including without limitation actual or alleged breach of any Product Addendum hereunder; (iii) Vendor's actual or alleged violation of any of the laws of any governmental entity applicable to the Products; (iv) any representations made by Vendor to Circuit City which Circuit City uses and incorporates into its advertising or upon which Circuit City relies when selling the Products under this Direct Ship Agreement; or (v) any actual or alleged infringement, misappropriation or other violation by Vendor of any United States patent, copyright, trademark, trade secret or other United States proprietary or intellectual property rights of any third party.

10. **INSURANCE**. Vendor will maintain a policy of commercial general liability insurance, including products-completed operations coverage, with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category rating of at least Class VIII, with limits of no less than US$2,000,000.00 per occurrence and with limits of no less than US$4,000,000.00 aggregate. Products-completed operations coverage will be maintained during the Term of this Direct Ship Agreement and for at least five (5) years after termination of this Direct Ship Agreement. Such policies will name "Circuit City Stores, Inc." as an additional insured. All certificates will provide for at least thirty (30) days' written notice prior to cancellation of any insurance referred to under this Direct Ship Agreement. Certificates of insurance meeting the above requirements will be delivered to Circuit City (i) prior to the initial shipment of the Products, (ii) upon renewal of each insurance policy described hereunder and annually thereafter, and (iii) upon reasonable request.

11. **LIMITATION OF LIABILITY**. IN NO EVENT SHALL CIRCUIT CITY BE LIABLE TO VENDOR FOR ANY LOSS OF PROFITS OR REVENUE OR FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES RESULTING FROM ANY PERFORMANCE, NON-PERFORMANCE, BREACH OR TERMINATION OF THIS DIRECT SHIP AGREEMENT.

12. **TERM AND TERMINATION**.

    12.1  Term. The term of this Direct Ship Agreement will commence on the Effective Date and will continue until February 28, 2009 (the "Initial Term"). Thereafter, this Direct Ship Agreement shall automatically renew for successive terms of one (1) year each (each, a "Renewal Term"). The Initial Term, as extended by any Renewal Term hereunder, shall be collectively referred to herein as the "Term."

    12.2  Termination. Either party may terminate this Direct Ship Agreement, with or without cause, upon thirty (30) days' written notice to the other party. Either party may terminate this Direct Ship Agreement immediately without liability or obligation upon written notice to the other party if the other party (i) breaches Section 6 (or, in the case of Vendor, if Vendor breaches Section 7) of this Direct Ship Agreement, (ii) breaches any other term of this Direct Ship Agreement and fails to cure such breach within ten (10) days of such notice, (iii) becomes insolvent, files a petition in bankruptcy, makes an assignment for the benefit of creditors or ceases normal business operations, or (iv) assigns or attempts to assign this Direct Ship Agreement or any of the rights and obligations hereunder without first obtaining consent as required herein. The foregoing termination rights will be in addition to and will not be

Execution Copy

construed to limit or restrict any other rights Circuit City may have with regard to cancellation, termination, refusal, return or rejection of any order of Products pursuant to this Direct Ship Agreement.

12.3    Obligations Upon Termination.    Upon termination, Vendor agrees to:    (i) deliver all customer orders received within two (2) business days after termination; (ii) process all customer returns for items sold by Vendor ninety (90) days from the date of termination; (iii) meet, as needed, to satisfy all outstanding disputes; and (iv) upon request, return any Circuit City Confidential Information and/or Customer Information in its possession or destroy such items and certify their destruction.

13.    **VENDOR SUPPORT.**

13.1    Account Executive.    Vendor shall appoint an account executive, or executives, familiar with Circuit City to handle all obligations under this Direct Ship Agreement.   Such individual(s) will facilitate and monitor the Product selection process and order fulfillment and be available on a daily basis to solve all issues posed by Circuit City related to this program. It shall be the responsibility of the named account executive(s) to provide all relevant Vendor contact information for the corresponding department heads at Circuit City.

13.2    Quarterly Business Reviews.    Vendor and Circuit City shall conduct quarterly business reviews that effectively measure quality and detail of the Products and order fulfillment service provided to Circuit City. In the event that a quarterly business review shows that Products and/or the order fulfillment service is not meeting Circuit City's reasonable requirements, the Vendor will provide Circuit City a corrective action plan within fifteen (15) days of such quarterly business review to resolve the deficiencies.

14.    **AUDIT.**   For so long as Circuit City purchases Products from Vendor hereunder and for two (2) years thereafter, Vendor shall keep full and accurate books and records of account and all documents and other materials relating to the Products and transactions hereunder. During that period Circuit City shall have the right to audit and inspect such books, documents and other materials during Vendor's regular business hours at its business location(s) upon reasonable prior written notice.   Such audit may be conducted by Circuit City alone or together with qualified accountants, and Circuit City shall ensure that such accountants and/or individuals safeguard Confidential Information in accordance with Section 6 of this Direct Ship Agreement.   Circuit City shall bear the cost of the audit, except that in the event that the audit reveals that Vendor has incorrectly charged Circuit City Five Hundred Dollars ($500.00) or more then Vendor shall reimburse Circuit City for its direct expenses incurred in connection with such audit.   As applicable, Vendor shall have ninety (90) days to dispute the results of any such audit.

15.    **NOTICES.**   Any notice required or permitted under this Direct Ship Agreement or any Product Addendum hereunder and not otherwise addressed pursuant to specific instructions relating to contact information shall be in writing and shall be sent to the address given below of the party to be notified, unless such party has previously notified the other of a change of address, in which case notice shall be sent to such changed address.

If to Circuit City:
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464
Attention: Vendor Relations

With a copy to:
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464
Attention: Legal Department -- Commercial

If to Vendor:
iTouchless Housewares and Products, Inc.
551 Foster City Blvd., Unit M
Foster City, CA 94404
Attention: Michael Shek

With a copy to:
iTouchless Housewares and Products, Inc.
551 Foster City Blvd., Unit M
Foster City, CA 94404
Attention: Vivian Jin

Execution Copy

Any notice shall be sent by prepaid registered or certified United States mail, return receipt requested, or via any national overnight mail service, and shall be deemed to have been duly given or rendered five (5) days after mailing, or upon delivery, whichever is earlier.

16.     **MISCELLANEOUS**.  Neither party may assign this Direct Ship Agreement or any of its rights or duties hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned, or delayed.  This Direct Ship Agreement, along with all Product Addenda hereto, will be governed by the laws of the Commonwealth of Virginia (other than its conflicts of laws provisions).  Neither party will be deemed to have waived any right, power, privilege or remedy unless the waiver is in writing and duly executed by it.  For purposes of clarity, all references to the United States herein shall include all fifty (50) states and its territories.  For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day.  If any provision of this Direct Ship Agreement is determined by a court of competent jurisdiction to be unenforceable, the provision will be deemed to be severed, and the remaining provisions of this Direct Ship Agreement will remain in full force and effect.  The headings in this Direct Ship Agreement are for convenience of reference only and will not affect its interpretation or construction.  The terms of Sections 3 through 11, 12.3, and 14 through 16 shall survive the termination of this Direct Ship Agreement.  This Direct Ship Agreement, including any documents incorporated or referenced under this Direct Ship Agreement, constitutes the entire agreement between the parties with respect to sales and purchases of Products for resale through CCDirect Sales Channels using the CommerceHub service, and supersedes any prior agreements between the parties with respect to such subject matter.  Circuit City and Vendor may enter or may have entered into separate agreement(s) for the sale and purchase of Products in Circuit City's retail store locations and/or CCDirect Sales Channels which does not use the CommerceHub service.

**IN WITNESS WHEREOF**, the parties have caused this Direct Ship Agreement to be executed by their respective duly-authorized representatives as of the date first above written.

| **Circuit City:** | **Vendor:** |
|---|---|
| **CIRCUIT CITY STORES, INC.** | **iTOUCHLESS HOUSEWARES AND PRODUCTS, INC.** |
| By: *(signature)* | By: *(signature)* |
| Name:  Allen McClard | Name: Michael Shek |
| Title: VP, Multi-Channel Merchandising, Web | Title: Director of Marketing |
| Date:  6/19/08 | Date:  5/20/2008 |

Direct Ship Vendor Agreement
(v1-1-08)

7



iTouchless Housewares and Products, Inc.

777 Mariners Island Blvd, Ste 125, San Mateo, CA 94404

Tel: 1-650-578-0578   Fax: 1-650-578-1363

January 24, 2011

## Important Change to Corporate Office Address

Dear Valued Dealers,

The corporate office of iTouchless Housewares & Products, Inc will be moved from Foster City, CA to San Mateo, CA on January 28, 2011. Please update our mailing and billing address to the following address.

**The new corporate office location:**
777 Mariners Island Blvd, Suite 125, San Mateo, CA 94404.

**Effective date:**
**January 28, 2011**


Our phone numbers and fax number will remain the same. Also, our warehouse and distribution center will remain at the original address.

**Warehouse/ Distribution Center/ Product Return Center: (remains unchanged)**
3151 Diablo Ave,
Hayward, CA 94545

**Current phone number: (remains unchanged)**
650-578-0578

**Current fax number: (remains unchanged)**
650-578-1363

Please send any future correspondence to our new address.


Thank you for your attention!

Management Team
iTouchless Housewares & Products, Inc