# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

## EEL MCKEE LLC'S OMNIBUS OPPOSITION TO LIQUIDATING TRUST'S FIFTH OMNIBUS OBJECTION TO LANDLORD CLAIMS [CLAIM NOS. 8262, 8278, 12687, 12849, 13719, 13722]; SUPPORTING DECLARATION OF GARY M. KAPLAN

## I.    INTRODUCTION AND SUMMARY OF RESPONSE

Eel McKee LLC ("EM" or "Landlord"), a creditor and party in interest in the above-captioned case, hereby files its opposition (the "Opposition") to the Liquidating Trust's Fifth Omnibus Objection to Landlord Claims (the "Objection") with respect to Claim Nos. 8262, 8278, 12687, 12849, 13719 and 13722 (the "EM Claims") filed herein by EM.  The basis for the Opposition, which is discussed in more detail below can be summarized as follows:

| Claim No. | Filed Claim Amount, Classif. | Proposed Claim Amount, Classif. | Objection Basis | Opposition Basis |
|---|---|---|---|---|
| 8262 | $91,996 (priority) $28,069 (unsec.) | $61,996 (priority) $28,069 (unsec.) | $30,000 attorneys' fees not permitted. | Lease expressly provides for attorneys' fee recovery. |
| 8262 | $91,996 (priority) $28,069 (unsec.) | $61,996 (priority) $58,069 (unsec.) | Reclassify Nov. stub rent to. admin. priority | Alleged reclassification relief inconsistent (Objection improperly seeks to |

Augustus C. Epps, Jr., Esquire, VSB No. 13254
Michael D. Mueller, , Esquire, VSB No. 38216
Jennifer M. McLemore, Esquire, VSB No. 47164
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA  23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

Counsel for Creditor Eel McKee LLC

Gary M. Kaplan (State Bar No. 155530)
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480
Email:  gkaplan@fbm.com

Counsel for Creditor Eel McKee LLC

|  |  |  |  | reduce rather than increase admin. priority claim). |
|---|---|---|---|---|
| 8278 | $91,996 (priority) $28,069 (unsec.) | Disallowed | Duplicate of Claim No. 8262 | Not duplicative— separate guaranty and lease claims. Disallowance subject to 150% allowance of Claim No. 8262 pursuant to Debtor's confirmed Plan. |
| 12687 | $1,146,835 (unsec) | Disallowed | Amended by Claim No. 12849 | Not amended— separate guaranty and lease claims. Disallowance subject to 150% allowance of Claim No. 12849 pursuant to Debtors' confirmed Plan. |
| 12849 | $1,146,835 (unsec) | $910,588 (unsec.) | $39,248 rejection damages not supported by Debtors' books. $60,00 attorneys' fees not permitted under lease. $130,000 brokers fees not permitted under lease. $7,000 damages not permitted under lease | Amounts of all rejection damages specifically supported in Claim. Lease expressly provides for recovery of attorneys' fees, brokers fees and damages to premises. |
| 13719 | $132,590 (admin.) | Disallowed | Duplicate of Claim No. 13722 | Not duplicative— separate guaranty and lease claims. (As acknowledged by Debtors withdrawing prior objection on same basis.) |
| 13722 | $132,590 (admin.) | Disallowed | Invalid-covered by Claim Nos. 8262 and. 12849 | Not covered by Claim Nos. 8262 and 12849; discrete claims against different Debtors based on distinct liabilities. |

## II.    SPECIFIC RESPONSES TO OBJECTIONS

### A.    The Liquidating Trust's Objection To Claim No. 8262 Should Be Overruled As The Lease Expressly Entitles Claimant to Recover Attorneys' Fees And November 2008 "Stub Rent" Is Entitled To Administrative Priority

The Liquidating Trust objects to EM's Claim No. 8262 (Objection, Ex. C) on the following grounds: "Reduce by $30,000 for attorneys fees not permitted." In fact, EM's recovery of attorneys' fees is expressly authorized pursuant to Section 34.6 of the subject Lease (attached to Claim No. 8262 as Exhibit A), which provides:

> In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way in connection with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all level of proceedings."

As reflected in Claim No. 8262 (and the other EM Claims), EM has been required to expend attorneys' fees and expenses to enforce its rights under the Lease, including with respect to the Debtors' acknowledged breaches thereof in the payment of rent and other charges due under the Lease. EM is the prevailing party with respect to such matters, as reflected by the Debtors' recognition of the allowability of EM's Claim No. 8262 (except for the attorneys' fee portion) in the amount of $90,065. Supporting documentation for EM's attorneys' fees and expenses is included with the Claim, as supplemented by Exhibit A attached hereto. Accordingly, the Objection with respect to the $30,000 portion of Claims No. 8262 for EM's attorneys' fees and expenses should be overruled.

The Objection also seeks to reclassify a portion of EM's Claim No. 8262, asserted in the aggregate amount of at least $120,064.68 (with $91,996,18 asserted as an administrative priority claim, and $28,068.50 asserted as a general unsecured claim) as follows: "$61,996.18; (administrative); $58,068.50 (general unsecured)" (in column entitled "Proposed Reclassified

Claim Amount and Classification") on the following grounds:  "Reclassify Nov stub rent and

postpetition taxes to administrative priority" (in column entitled "Comments").  *Id.* Ex. D.

The Objection is internally inconsistent in this regard, because the proposed

reclassification of the claim (in the "Reclassification Claim Amount" column) would *decrease*

the administrative priority portion of Claim No. 8862 (by $30,000, from $91,996,18 to

$61,996,18), while increasing the general unsecured portion of Claim No. 8862 (by $30,000,

from $28,068.50 to $58,068.50), rather than reclassifying a portion of the claim from general

unsecured to administrative priority, as stated in the "Comments" column.

In any event, there is no basis to reclassify EM's Claim No. 8262 for November 2008

"stub rent" and postpetition taxes as a general unsecured claim, as such amounts should be

allowed as an administrative priority claim pursuant to Bankruptcy Code Sections 365(d)(3),

503(b)(1) and 507(a)(2), as set forth in the Claim.

**B.**    **The Objection To Claim No. 8278 Should Be Overruled As It Is Not Duplicative Of Claim No. 8262 But Is Owed By A Different Debtor Under A Guaranty; Further, Any Disallowance Of Such Claim Would Require 150% Allowance Of Claim No. 8262 Pursuant To Debtors' Chapter 11 Plan**

The Liquidating Trust seeks disallowance of Claim No. 8278 (Objection, Ex. G) on the

grounds that it is duplicative of Claim No. 8262.  In fact, Claim No. 8278 was filed against

Circuit City Stores, Inc. ("CCSI"), based on the Guaranty of Lease discussed in and attached

thereto, while Claim No. 8262 was filed against Circuit City Stores West Coast, Inc.

("CCSWCI"), based on the Lease discussed in and attached thereto.  Thus, the two claims are

distinct and not duplicative.

To the extent that the Liquidating Trust asserts that Claim No. 8278 is subject to

disallowance pursuant to the Global Plan Settlement set forth in the Second Amended Joint Plan

of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession

and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan") on the

grounds that Claim No. 8262 is a "Landlord Guaranteed Claim" (as defined in Section 1.103 of

the Plan)[1] then, pursuant to Section 1.104 of the Plan, Claim No. 8262 must be allowed in an

amount equal to 150% of the asserted amount of such Claim as a "Landlord Guaranteed Claim

Consolidation Amount" (as set forth in Section 1.104 of the Plan)[2].  This is consistent with

Section V.A.1. of the Plan, which provides, in relevant part:

> On the Effective Date, in accordance with the terms of this Plan,
> including the Global Plan Settlement, and the consolidation of the
> Assets and liabilities of the Consolidated Debtors, all Claims based
> upon guarantees of collection, payment, or performance made by
> any Consolidated Debtor as to the obligations of another
> Consolidated Debtor, including the Landlord Guaranty Claims,
> shall be released and of no further force and effect.  On the
> Effective Date, the Global Plan Settlement further provides that an
> Allowed Landlord Guaranteed Claim shall be deemed to have a
> value equal to the Landlord Guaranteed Claim Consolidation
> Amount.

**C.    The Objection To Claim No. 12687 Should Be Overruled As This Claim Is
Not Duplicative But Is Owed By A Different Debtor Under A Guaranty;
Further Any Disallowance Of Such Claim Would Require 150% Allowance
Of Claim No. 12849 Pursuant To Debtors' Confirmed Chapter 11 Plan**

The Liquidating Trust seeks disallowance of Claim No. 12687 (Objection, Ex. H) on the

grounds that it is duplicative of Claim No. 12849.  In fact, Claim No. 12687 was filed against

CCSI, based on the Guaranty of Lease discussed in and attached thereto, while Claim No. 12849

was filed against CCSWCI, based on the Lease discussed in and attached thereto.  Thus, the two

claims are distinct and not duplicative.

To the extent that the Liquidating Trust asserts that Claim No. 12687 is subject to

disallowance pursuant to the Global Plan Settlement set forth in the Plan on the grounds that

Claim No. 12849 is a "Landlord Guaranteed Claim" (as defined in Section 1.103 of the Plan)

then, pursuant to Section 1.104 of the Plan, Claim No. 12849 must be allowed in an amount

---

[1] Section 1.103 of the Plan provides as follows: "***Landlord Guaranteed Claim*** means a General Unsecured Claim
under Bankruptcy Code section 502(b)(6) against a Consolidated Debtor and for which a valid, timely Proof of
Claim has been filed (i) arising under a nonresidential real property lease with any of the Consolidated Debtors and
for which any liability of such Consolidated Debtor arising under the lease is guaranteed by Circuit City or (ii) under
a nonresidential real property lease originally entered into with Circuit City as tenant, which lease was assigned to
West Coast by Circuit City and pursuant to which both West Coast and Circuit City are obligors for any liability
arising under the lease."
[2] Section 1.104 of the Plan provides as follows: "***Landlord Guaranteed Claim Consolidation Amount*** means an
amount equal to 150% of the Allowed amount of a Landlord Guaranteed Claim."

equal to 150% of the asserted amount of such Claim as a "Landlord Guaranteed Claim Consolidation Amount" (as set forth in Section 1.104 of the Plan). This is consistent with Section V.A.1. of the Plan, as quoted in Section II.C. above.

**D.     The Objection To Claim No. 12849 Should Be Overruled As The Lease Expressly Authorizes Recovery Of All Of The Lease Rejection Damages Asserted In The Claim**

The Liquidating Trust objects to Claim No. 12849 (arising from the Debtors' rejection of the subject Lease), asserted in the amount of no less than $1,146,835.36, and seeks to reduce its allowed amount to $910,587.72 (Objection, Ex. C) on the following grounds:  "Reduce by $39,247.64 in rejection damages not supported by the Debtors' books and records.  Reduce by $60,000 in attorneys' fees, $7,000.00 in damages and $130,000.00 in brokers fees not permitted under the lease."

In fact, as expressly noted in Claim No. 12849, EM's recovery of each of the items included in Claim No. 12849 is expressly authorized pursuant to the Lease (a copy of which is attached to the Claim as Exhibit A) and applicable law, including the following:

(1) Recovery of EM's attorneys' fees and expenses are authorized pursuant to Section 34.6 of the Lease (quoted in Section II.A. above).  As noted in Claim No. 12849 (and the other EM Claims), EM has been required to expend attorneys' fees and expenses to enforce its rights under the Lease, including with respect to the Debtors' acknowledged breaches thereof in the payment of rent and other charges due under the Lease, and subsequent rejection of the Lease pursuant to its Notice Of Rejection Of Unexpired Leases And Abandonment Of Personal Property filed herein on March 3, 2009.  EM is the prevailing party with respect to such matters, as reflected by the Debtors' recognition that the vast majority of EM's Claim No. 12849 should be allowed (at least $910,588 of $1,146,835 asserted), even if the Court sustains the Objection to the remaining portions of Claim No. 12849 totaling $176,248 (excluding the attorneys' fee portion), which, as discussed below, EM disputes.  Supporting documentation for EM's attorneys' fees and expenses is included with the Claim, as supplemented by Exhibit A attached

- 6 -

hereto.    Accordingly, the Court should overrule the Objection with respect to EM's attorneys' fees and expenses of $60,000 in Claim No. 12849.[3]

(2) EM's recovery of its brokerage fees related to re-letting the subject Property are authorized pursuant to Section 28.2 of the Lease, which provides, that in the event of termination of the Lease, EM may recover from the Debtor "any other amount necessary to compensate [EM] for all the detriment proximately caused by [Debtor]'s failure to perform [Debtor]'s obligations under this Lease, or which in the ordinary course of things would be likely to result therefrom.[4]"   EM's brokerage fees for re-letting the premises constitute amounts for detriment proximately caused by the Debtors' failure to perform its obligations under the Lease (as reflected by its rejection of the Lease prior to the end of the specified term) which are recoverable pursuant to Section 28.2 of the Lease (supporting documentation included with the Claim, as supplemented by Exhibit B attached hereto).   Accordingly, the Court should overrule the Objection with respect to EM's $130,000 of brokerage fees.[5]

(3) EM's recovery of its other rejection damages (asserted in the aggregate amount of $46,247.64) are likewise authorized pursuant to Section 28.2 of the Lease, as well as Sections 7.1, 10.1 and 25, which provide, in relevant part:

> From and after the Commencement Date, [Debtor] (at its cost and
> expense) shall: (a) maintain the Common Area located on the Land
> as required by the terms of the REA[6], and (b) shall carry that
> insurance specified by the REA relative to the Common Area

---

[3] In fact, as reflected by the supporting documentation, EM's actual attorneys' fees and expenses have exceeded $100,000 to date in this matter.

[4] Likewise, pursuant to California Civil Code Section 1951.2 (a)(4) (the governing law pursuant to Section 34.10 of the Lease), upon termination of a lease, "the lessor may recover from the lessee . . . any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom."

[5] As reflected by the supporting documentation, the leasing commissions actually aggregated $129,400.

[6] Pursuant to Section 2.1 of the Lease, the "REA" is defined as that certain "Operation and Reciprocal Easement Agreement dated September 20, 1980 . . ." with respect to the Property.  Section 2.1 further provides that "[Debtor] agrees to perform, from and after the Commencement Date and during the Term of this Lease, [EM]'s non-delinquent obligations (as of the Commencement Date) under the REA and [Debtor] shall be responsible for the repair of any damage to the Common Area from and after the Delivery of the Land."

located on the Land which is noted in the REA as being the obligation of the [EM].

*Id.* §7.1.

[Debtor] shall maintain the Improvements and the Common Area located on the Land in operating condition and repair to the standards and conditions specified in the Master Lease[7] and REA. [Debtor] agrees to perform [EM]'s obligations thereunder to the extent the same relate to the Land and are due from and after the Commencement Date.

*Id.* §10.1.

At the expiration or earlier termination of the Lease, [Debtor] shall surrender the Premises in broom clean condition.

*Id.* §25.

Accordingly, the Court should overrule the Objection with respect to EM's recovery of such rejection damages (supporting documentation for which is included with the Claim, as supplemented by Exhibit C attached hereto), including:   property and casualty insurance expenses; maintenance and repair expenses (including common area maintenance charges, security expenses, alarm monitoring and parking lot cleaning); and tenant improvements required for securing a replacement tenant.[8]  Indeed, EM's actual lease rejection damages (including the $647,000 of tenant improvements required for the replacement tenant) actually were substantially in excess of the rejection damages of $46,247.64 asserted in the Claim and should be fully allowed in the amounts incurred.

### E. The Objection To Claim No. 13719 Should Be Overruled As This Claim Is Not Duplicative But Is Owed By A Different Debtor Under A Different Agreement (Lease vs. Guaranty), As Debtors Previously Acknowledged In Withdrawing Their Objection Made On The Same Grounds

The Liquidating Trust seeks disallowance of Claim No. 13719 (Objection, Ex. H) on the grounds that it is duplicative of Claim No. 13722.  In fact, Claim No. 13722 was filed against CCSI, based on the Guaranty of Lease discussed in and attached thereto, while Claim No. 13719 was filed against CCSWCI, based on the Lease discussed in and attached thereto.  Thus, the two

---

[7] Pursuant to Section 1 of the Lease, the "Master Lease" is defined as "that certain Ground Lease dated as of September 30, 1980 . . ." with respect to the Property, a copy of which is attached as Exhibit B to the Claim.

[8] As reflected by the supporting documentation, such tenants improvement expenses aggregated $647,000.00.

claims are distinct and not duplicative.

Indeed, the Debtors previously acknowledged this in withdrawing their objection to these same claims as allegedly duplicative pursuant to their 44th Omnibus Objection to Claims, as reflected in the Order thereon (Docket No. 5830), which provides, in relevant part:

> The Objection to the claims identified on Exhibit C as attached hereto and incorporated herein is withdrawn; provided, however, that the Debtors' rights and abilities to object to the claims identified on Exhibit C on any grounds and bases are hereby preserved in their entirety.

*Id.* at 3 & Ex. C (listing EM's Claim No. 13722).

Thus, Claim Nos. 13719 and 13722 are distinct and not duplicative, and the Objection asserting that these claims are duplicative should be overruled.[9]

**F.    The Objection To Claim No. 13722 Should Be Overruled As This Claim Is Not Covered By Claim Nos. 8262 and 12849, Which Are Claims Against Different Debtors For Distinct Liabilities**

The Liquidating Trust seeks disallowance of Claim No. 13722 (Objection, Ex. E) on the grounds that "these amounts are covered on claims 8262 and 12849." In fact, the amounts in Clam No. 13722 are distinct from those in Claim Nos. 8262 and 12849, which are asserted against a different Debtor with respect to distinct liabilities, as expressly set forth in the Claim.

As discussed above, Claim No. 13722 is an administrative expense claim in the amount of $132,590.20 asserted against CCSI based on the Guaranty of Lease, comprising: "stub" base rent of $49,588.88 for the period 11/10-11/30/08; stub master (ground) lease rent of $1,543.19 for the period 11/10-11/30/08; stub master (ground) lease rent of $2,204.55 for the period 2/1/09-2/28/09; real property taxes of $11,345.92 for the period 11/10/08-3/10/09 (the effective date of the Debtor's rejection of the Lease); insurance expense of $3,840.33 for the period 11/10/08-3/10/09; CAM charges of $3,840.33 for the period 11/10/08-3/10/09; and attorney fees and

---

[9] To the extent that the Liquidating Trust asserts that Claim No. 13722 is subject to disallowance pursuant to the Global Plan Settlement set forth in the Plan on the grounds that Claim No. 13719 is a "Landlord Guaranteed Claim" (as defined in Section 1.103 of the Plan) then, pursuant to Section 1.104 of the Plan, Claim No. 13719 must be allowed in an amount equal to 150% of the asserted amount of such Claim as a "Landlord Guaranteed Claim Consolidation Amount" (as set forth in Section 1.104 of the Plan). This is consistent with Section V.A.1. of the Plan, as quoted in Section II.C. above.

expenses of $60,000.00 for the period 11/10/08-3/10/09.

By contrast, each of Claim Nos. 8262 and 12849 are asserted against CCSWCI based on

the Lease (rather than against CCSI based on the Guaranty of Lease).   In addition, unlike Claim

No. 13722, Claim No. 12849 is a claim for rejection of the Lease, rather an administrative claim,

and accordingly is not asserted for expenses accruing postpetition and pre-rejection.[10]

Furthermore, unlike Claim No. 8262, Claim No. 13722 includes expenses accrued under the

Lease through the March 10, 2009 rejection date.

## III.    OTHER MATTERS RAISED BY THE OBJECTION

In response to the requests sought in the Notice of the Objection, EM provides the

following additional information:

(1) Notice Address: Counsel for EM, listed on first page of this Opposition.

(2) Additional Addresses: None

(3) Contact information of person with authority to resolve the Objection on EM's behalf:

Counsel for EM, listed on first page of this Opposition.

(4) NOTE: Notwithstanding the references herein to exhibits being attached hereto,

because of the voluminous nature of the exhibits, they are not attached but have been provided to

counsel to the Liquidating Trust under separate cover.  They will be provided to other parties

upon request.

## IV.    CONCLUSION

Based on the foregoing, EM respectfully requests that the Court enter its Order:

1.   Overruling the Objection.

2.   Allowing each of the EM Claims in the amounts asserted therein.

3.   Providing for such other and further relief as is just and appropriate.

---

[10] Indeed, as noted in Claim No. 13722:  "In addition to the foregoing amounts, the Debtor remains liable for amounts owed pursuant to the Lease prior to the Rejection Date, as set forth in the Initial Lease Claim."  *Id.* Addendum ¶4.

Dated:  April 6, 2011                          **EEL McKEE LLC**

                                               By:/s/ Augustus C. Epps, Jr.
                                                        Counsel


Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia  23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

and

Gary M. Kaplan (State Bar No. 155530)
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480
Email:  gkaplan@fbm.com

Counsel for Eel McKee LLC


## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April 2011, a true and correct copy of Eel McKee

LLC's Omnibus Opposition to Liquidating Trust's Fifth Omnibus Objection to Landlord Claims

(Claim Nos. 8262, 8278, 12687, 12849, 13719, 13722) and Supporting Declaration of Gary M.

Kaplan has been served electronically using the ECF system on all registered users of the

CM/ECF system who have filed notices of appearance in this matter.


                                               /s/ Augustus C. Epps, Jr.
                                               Augustus C. Epps, Jr.

**DECLARATION OF GARY M. KAPLAN IN SUPPORT OF EEL MCKEE LLC'S
OMNIBUS OPPOSITION TO LIQUIDATING TRUST'S
FIFTH OMNIBUS OBJECTION TO LANDLORD CLAIMS
[CLAIM NOS. 8262, 8278, 12687, 12849, 13719, 13722]**

I, Gary M. Kaplan, hereby declare as follows:

1.      I am an attorney at the law firm of Farella Braun + Martel LLP, counsel for Eel McKee LLC ("EM"), a creditor and party in interest in the above-captioned Chapter 11 case.  I am an attorney duly licensed to practice in the State of California and admitted pro hac vice before this Court.  All statements in this Declaration are based on my personal knowledge (except those stated on information and belief, which I am informed and believe to be true) and/or my review of relevant information and documents provided to me by EM and/or its representatives, and if called upon as a witness, I could and would testify competently thereto.

2.      I make this Declaration in support of EM's foregoing opposition (the "Opposition") to the Liquidating Trust's Fifth Omnibus Objection to Landlord Claims with respect to Claim Nos. 8262, 8278, 12687, 12849, 13719 and 13722 (collectively, the "EM Claims") filed herein by EM.

3.      I am informed and believe that the factual statements made in each of the EM Claims and in the Opposition are accurate, based on information and documentation provided to me by EM and/or its representatives.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 5th day of April, 2011, in San Francisco, California.

/s/ Gary M. Kaplan
GARY M. KAPLAN

1142112

- 12 -