# **EXHIBIT A**

BROKERAGE SERVICES

**CBRE | Louisville**
CB RICHARD ELLIS

6060 Dutchmans Lane
Suite 100
Louisville, KY 40205
502.429.6700 TEL
502.423.1849 FAX

www.cbrelouisville.com

Lisa M. Schoenbachler
Transaction Coordinator
(502) 412-7630
lschoenbachler@cbrelouisville.com

October 23, 2008

Mr. Tom Maroney
Circuit City Stores, Inc.
9950 Mayland Drive
DRIII, 5th Floor
Richmond, VA  23233

Re: *Genpak, LLC sublease agreement, 7300 Intermodal Drive, Louisville, KY*

Dear Mr. Maroney:

In accordance with the exclusive Listing Agreement between Circuit City Stores, Inc. and CB Richard Ellis|Louisville, enclosed please find an invoice for the leasing commission on the above referenced property.

We appreciate the opportunity to work with you on the marketing of this property and look forward to filling the balance of the space. Thank you for your continued confidence in our firm!

Please contact Kevin Grove at 502-412-7615 with any questions you may have.

Sincerely,

Lisa M. Schoenbachler

Enclosure

CC: Kevin Grove
     Doug Butcher
     Paul Silver

# CBRE | Louisville
CB RICHARD ELLIS

# INVOICE

6060 Dutchmans Lane
Suite 100
Louisville, KY 40205

(502) 429-6700 Tel
(502) 423-1849 Fax
www.cbrelouisville.com

| | |
|---|---|
| INVOICE # | 3-7058 |
| DATE | 10/23/08 |

## BILL TO

Circuit City Stores Inc.
Mr. Tom Maroney
9950 Mayland Drive
Richmond, VA 23233

## TRANSACTION INFORMATION

| Property | 7300 Intermodal Drive
Louisville, KY 40258 | Square Feet | 362,304 |
|---|---|---|---|
| Tenant | Circuit City - Genpak sublease | | |

## CONSIDERATION

| Sq Feet | Monthly Lease Rate $ | Term (Months) | Consideration $ | Commission % | Commission $ |
|---|---|---|---|---|---|
| 362,304 | - | 2.5 | - | 5.00% | - |
| 362,304 | 67,932.00 | 12.0 | 815,184.00 | 5.00% | 40,759.20 |
| 362,304 | 69,441.60 | 12.0 | 833,299.20 | 5.00% | 41,664.96 |
| 362,304 | 75,480.00 | 12.0 | 905,760.00 | 5.00% | 45,288.00 |
| 362,304 | | | - | | - |
| 362,304 | | | - | | - |
| 362,304 | | | - | | - |
| | | TOTALS | $2,554,243.20 | | $127,712.16 |

Reimburseable Expenses    -
**Total Commission Amount**    **$127,712.16**

# Installments   2

## BILLING HISTORY

Payments made to date:

| Date | Installment # | Amount Paid | Check # | Current Outstanding Balance |
|---|---|---|---|---|
| | | | | $127,712.16 |

## BILLING AND REMITTANCE

**TOTAL AMOUNT DUE NOW TO CBRE/LOUISVILLE**    Invoice #    3-7058

| Please make your check payable to | Billing Terms | 50% Upon Signing & 50% Upon Rent Commencement |
|---|---|---|
| CB Richard Ellis/Louisville, LLC
FEIN 31-1488530 | Date Due | Due Upon Receipt |
| OR    You may remit funds electronically to:
Republic Bank & Trust Company
661 S Hurstbourne Parkway, Louisville, KY 40222
CB Richard Ellis/Louisville, LLC, Operating Account    ABA # 083001314 Account # 56577184
with e-mail notification of payment to CColvin@cbrelouisville.com | Installment #    1 of 2 | $63,856.08 |

*Please include the invoice number shown above on your remittance*

*Thank You for your Business!*

# LISTING AGREEMENT

October 11, 2005

Mr. Kevin Grove
Senior Vice President, Industrial Services
CB Richard Ellis/Louisville
6060 Dutchmans Lane, Suite 100
Louisville, KY 40205

> RE:  Lease of 554,189 Sq Ft (No.0361)
> 7300-A & B Intermodal Dr., Louisville, KY("Property")

This Agreement ("Agreement") is made this 1st day of September, 2005 between Circuit City Stores, Inc., ("Circuit City") and CB Richard Ellis/Louisville ("Broker") in connection with the proposed leasing of the Property.

I.   Exclusive Right to Lease.

   Broker hereby agrees to list the Property for lease and, in further consideration of Broker's services and efforts to find a tenant, is hereby granted the exclusive right from the execution hereof until the expiration of February 28, 2006 to lease the Property, except as otherwise noted herein. The Property is to be listed for $3.10 per square foot net rental to Circuit City or for such other price, terms and conditions as may be agreed upon. Circuit City would like to lease the Property for a base term not to exceed expiration of the master lease on June 30, 2015. Broker acknowledges that Circuit City currently operates in the Property and may continue to occupy and utilize the Property unless a suitable sublease or master lease termination is obtained, as determined by Circuit City in its sole discretion.

II.  Broker Responsibilities.

   In consideration of this exclusive listing, Broker agrees:

   A. To use reasonably commercial efforts to prevent Circuit City's employees at the property from learning of Broker's services pursuant to this agreement; and

Kevin Grove
October 27, 2005
Page 2

    B. To use its best efforts and due diligence in accordance with aggressive commercial real estate leasing standards to procure a tenant for the Property; and

    C. At such time as deemed appropriate by Circuit City, to aggressively advertise the Property locally, regionally and nationally, and to make and maintain appropriate contact with area redevelopment agencies regarding the Property; and

    D. At such time as deemed appropriate by Circuit City, to develop a marketing brochure at its cost. Broker agrees to feature one 5x7 color photo, location map, site or floor plan and building features; brochure proof to be approved by Circuit City. The mailing cost will be Broker's expense; and

    E. Every six (6) months, it will make an inspection of the Property's interior and exterior condition and fill out and return promptly to Circuit City the attached inspection reports; provided, however, inspections shall not be required during such time as Circuit City continues to occupy the building; and

    F. To keep Circuit City informed in writing on the enclosed activity report form not less frequently than on a monthly basis as to the progress being made toward the consummation of a lease; and

    G. At Circuit City's request, to cooperate with it in accommodating temporary, short-term subleasing of the Property. "Short-Term" shall mean the subleasing of the Property for periods of less than 12 months; and

    H. At such time as deemed appropriate by Circuit City, to enter the Property on appropriate commercial real estate Internet websites.

III.    <u>Broker Warranties and Representations</u>.

    A. Broker is a duly licensed real estate broker in the State of Kentucky, and Broker shall maintain such brokerage license in good standing during the term of this Agreement and as it may be extended.

    B. Broker shall not assign any of its rights, duties, obligations, or interests under this Agreement.

    C. Broker shall keep confidential any and all information it may acquire from or through Circuit City or acquire or develop in the course of any transactions contemplated hereby and may not disclose any such information to a third party, either during or after the term of this Agreement, without the express prior written consent of Circuit City, which Circuit City may withhold in its sole discretion. Such confidential information includes, but is not limited to, all confidential or proprietary information concerning Circuit City's business, strategies, service, or any other

Case 08-35653-KRH    Doc 10308-1    Filed 04/06/11    Entered 04/06/11 15:02:36    Desc
                    Exhibit(s) A    Page 6 of 13

Kevin Grove
October 27, 2005
Page 3

information concerning the business of Circuit City. This obligation shall survive termination of this Agreement regardless of the method of that termination.

D. Broker understands and agrees that all business information, files, research, records, memoranda, books, lists and other documents and tangible materials, including computer disks, and other hardware and software that Broker receives from Circuit City in the performance of its duties under this Agreement, whether confidential or not, are the property of Circuit City. Upon termination of this Agreement, regardless of the reason, Broker will deliver, upon request, to Circuit City all such materials, including copies thereof, in Broker's possession or under its control.

E. Broker agrees that during the term of this Agreement, it will not, directly or indirectly, for itself or on behalf of others, provide brokerage services to Prime Landlord, (as hereinafter defined), or any business or entity associated with the Prime Landlord.

IV. Circuit City Approvals and Authorizations.

A. At such time as deemed appropriate by Circuit City, and to the extent permitted under the master lease, Circuit City authorizes and directs Broker to place and maintain a "Building Available for Lease" sign on the Property. Circuit City must approve a proof of such sign before installation. Broker shall promptly remove any such signs from the Property at the expiration or earlier termination of this Agreement.

B. Any proposed leasing of the Property shall be conditioned upon, *inter alia*; (a) Circuit City's approval of the proposed tenant's financial condition; (b) Circuit City's approval of the proposed tenant's plans for the use and development of the Property; (c) Circuit City's approval of any improvements to the Property by the prospective tenant, including the size and location of signage to be situated upon the Property; and (d) the proposed transaction's compliance with any applicable zoning ordinance.

Any proposed buyout resulting in the termination of the master lease shall be upon terms and conditions satisfactory to Circuit City in its absolute and sole discretion.

C. Circuit City agrees to cooperate with Broker in its efforts to lease the Property and to immediately refer to Broker all inquiries of anyone interested in the Property. Circuit City retains the right to arrange temporary, short-term subleasing of the Property at its sole discretion. Broker is authorized to accept a deposit from any prospective tenant on Circuit City's behalf, but Broker is not authorized to execute any letter of intent, purchase contract or other document purporting to bind Circuit City without Circuit City's express prior written authorization.

Kevin Grove
October 27, 2005
Page 4

V.    Compensation of Broker for Sublease.

   A. Circuit City agrees to pay Broker, a leasing commission in accordance with the following schedule:

   (i)   If not co-brokered, the following commission structure applies, excluding option periods and Short-Term sublease rents, to be paid 50% upon lease execution and 50% after tenant's first months rent is collected. Taxes and any other pass-thru expenses payable to Circuit City shall be excluded from the calculation of "total base rent".

   (a) Years 1-3 of Sublease Term, 5% of the total base rent payable by tenant.
   (b) Years 4-5 of Sublease Term, 4% of the total base rent payable by tenant.
   (c) Years 5-10, 2% of the total base rent payable by tenant.
   (d) No commission paid on lease term after 10 years.

   (ii)  If co-brokered, the following commission structure applies, excluding option periods and Short-Term Sublease Rents, to be paid 50% upon lease execution and 50% after tenant's first months rent is collected. Taxes and any other pass-thru expenses payable to Circuit City shall be excluded from the calculation of "total base rent".

   (a) Years 1-3 of Sublease Term, 6% of the total base rent payable by tenant.
   (b) Years 4-5 of Sublease Term, 5% of the total base rent payable by tenant.
   (c) Years 5-10, 3% of the total base rent payable by tenant.
   (d) No commission paid on lease term after 10 years.

   (iii) In no event shall the commission payable by Circuit City be greater than $300,000.

   B. This commission shall be earned if, during the term of this exclusive Listing Agreement, any or all of the Property is leased to a tenant (procured by Broker, Circuit City or anyone else, excluding short-term sublease rents) and (1) said tenant satisfies the requirements to obtain possession of the property pursuant to the terms of the sublease and (2) tenant's first month's rent is collected.

   C. In the event of a monetary default by tenant, Circuit City's obligation to pay any outstanding commission to Broker shall cease.

Kevin Grove
October 27, 2005
Page 5

D. In the event that any other broker or brokers shall be entitled to a commission, or partial commission, in connection with a lease of the Property, the total of all commissions paid by Circuit City shall not exceed one full commission as computed in accordance with the rates set forth in this Listing Agreement. It shall be the responsibility of Broker to make arrangements with such other broker or brokers for a mutually agreeable apportionment of the commission.

E. All of said Commission in any such transaction shall be paid to Broker and Broker will make the required payments to such other broker or brokers.

F. Broker shall be entitled to a commission if Circuit City leases the property within sixty (60) days after the expiration or sooner termination of this Agreement to a person or entity that (i) submitted a written offer to lease the property during the term of this Agreement, which offer was submitted to Circuit City during the term of this Agreement, and (ii) physically toured the property during the term of this Agreement, and (iii) is listed on a written registration list submitted to Circuit City by Broker within ten (10) days after the expiration or earlier termination of this Agreement. Any entity that controls, is controlled by, or is under common control with a person or entity listed on such registration list shall be deemed to be listed on the registration list.

VI. <u>Compensation of Broker for Master Lease Termination.</u>

A. In the event that (1) Broker shall procure a tenant that enters into a direct lease for the Property with Bond C.C. I Delaware Business Trust ("Prime Landlord") and (2) the master lease between Circuit City and Prime Landlord is terminated, Broker shall be paid a commission on or about the effective date of such termination in accordance with the provisions of Section V of this agreement. Delivery by Broker to Circuit City of a fully-executed copy of the lease between tenant and the Prime Landlord shall be a condition precedent to Circuit City's payment obligation to Broker under this paragraph.

B. In the event that Broker shall assist in the termination of the master lease between Circuit City and Bond C.C.I. Delaware Business Trust ("Prime Landlord") and such termination is not the result of Broker procuring a tenant that enters into a direct lease with Prime Landlord, Broker shall be paid a commission in the amount of $150,000 within 30 days of the effective date of such termination.

VII. <u>Indemnification by Broker.</u>

Broker will indemnify and hold Circuit City harmless from and against any and all losses or damages which Circuit City may suffer (excluding consequential damages) arising out of the negligence or willful misconduct of Broker, including without limitation, claims of brokers other than Broker, and Broker will, upon receipt of

Kevin Grove
October 27, 2005
Page 6

written notice from Circuit City, assume the defense thereof at Broker's sole cost and expense. This provision shall survive the expiration or earlier termination of this Listing Agreement.

VIII.   Termination.

Either party without cause may terminate this Agreement with thirty days prior written notice. Circuit City may terminate this agreement for any breach of the warranties contained in Section III.

IX.   Prevailing Party.

In the event of litigation, including appeals, the prevailing party shall be entitled to reasonable and actual attorneys' fees and litigation costs.

X.   Non Discrimination.

It is agreed that, as required by law, discrimination because of race, color, religion, national origin, sex, familial status, marital status, age or physical disability by the parties with respect to the sale or leasing of the Property is prohibited.

Sincerely,

*[signature]*

Brenda Beerman Trickey
Director of Dispositions & Property Management

BBT:lf

cc:    Paul Silver

AGREED TO AND ACCEPTED THIS  26th  DAY OF  October , 2005  10:00 AM
        Name:  K. A. Grove
        By:    Kevin A. Grove
        Its:   SVP/Partner



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

# FIRST AMENDMENT TO LISTING AGREEMENT

This First Amendment ("First Amendment") is made and entered into as of this 1st day of March 2006, by and between Circuit City Stores, Inc. ("Owner") and **CB Richard Ellis/Louisville** ("Broker") for the real property described as 554,189 square feet located at **7300-A & B Intermodal Drive, Louisville KY**. As used herein, the term "Owner" shall be deemed to include sublessor, assignor or seller as the case may be.

WHEREAS, Owner and Broker entered into that certain Listing Agreement ("Listing") dated October 11, 2005.

WHEREAS, Owner and Broker hereby agree to amend the Listing as follows:
- To extend the exclusive Listing to February 28, 2007.

Except as otherwise amended herein, Owner and Broker agree that the Listing is hereby affirmed and continues in full force and effect.

The undersigned hereby acknowledges receipt of a copy of this First Amendment.

**CIRCUIT CITY STORES, INC.**                **CB RICHARD ELLIS/LOUISVILLE**

By: _____                By: _____
   Steven E. Jackson

Its: Vice President, Real Estate              Its: _____SVP/Partner_____

Date: 2/20/06                                Date: 2/6/06



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

## SECOND AMENDMENT TO LISTING AGREEMENT

This Second Amendment ("Second Amendment") is made and entered into as of this 1st day of March 2007, by and between Circuit City Stores, Inc. ("Owner") and **CB Richard Ellis/Louisville** ("Broker") for the real property described as 554,189 square feet located at **7300-A & B Intermodal Drive, Louisville KY**. As used herein, the term "Owner" shall be deemed to include sublessor, assignor or seller as the case may be.

WHEREAS, Owner and Broker entered into that certain Listing Agreement ("Listing") dated October 11, 2005.

WHEREAS, Owner and Broker hereby agree to amend the Listing as follows:
- To extend the exclusive Listing to December 31, 2007.

Except as otherwise amended herein, Owner and Broker agree that the Listing is hereby affirmed and continues in full force and effect.

The undersigned hereby acknowledges receipt of a copy of this Second Amendment.

**CIRCUIT CITY STORES, INC.**                **CB RICHARD ELLIS/LOUISVILLE**

By: _Tom Maroney_                             By: _K.4. Enoue_
    Tom Maroney

Its: Manager, Real Estate Disposition         Its: _SVP/Partner_

Date: _3/2/07_                                Date: _2/23/07_

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

## THIRD AMENDMENT TO LISTING AGREEMENT

This Third Amendment ("Third Amendment") is made and entered into as of this 1st day of March 2008, by and between Circuit City Stores, Inc. ("Owner") and **CB Richard Ellis/Louisville** ("Broker") for the real property described as 554,189 square feet located at **7300-A & B Intermodal Drive, Louisville KY**. As used herein, the term "Owner" shall be deemed to include sublessor, assignor or seller as the case may be.

WHEREAS, Owner and Broker entered into that certain Listing Agreement ("Listing") dated October 11, 2005.

WHEREAS, Owner and Broker hereby agree to amend the Listing as follows:
- To extend the exclusive Listing to May 31, 2008.

Except as otherwise amended herein, Owner and Broker agree that the Listing is hereby affirmed and continues in full force and effect.

The undersigned hereby acknowledges receipt of a copy of this Third Amendment.

**CIRCUIT CITY STORES, INC.**

By: _Maureen Olson_
Maureen Olson

Its: Manager, Surplus Properties

Date: 3-6-08

**CB RICHARD ELLIS/LOUISVILLE**

By: _____

Its: SVP/Partner

Date: 2/16/08



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

# FOURTH AMENDMENT TO LISTING AGREEMENT

This Fourth Amendment ("Fourth Amendment") is made and entered into as of this 1st day of June 2008, by and between Circuit City Stores, Inc. ("Owner") and **CB Richard Ellis/Louisville** ("Broker") for the real property described as 554,189 square feet located at **7300-A & B Intermodal Drive, Louisville KY**. As used herein, the term "Owner" shall be deemed to include sublessor, assignor or seller as the case may be.

WHEREAS, Owner and Broker entered into that certain Listing Agreement ("Listing") dated October 11, 2005.

WHEREAS, Owner and Broker hereby agree to amend the Listing as follows:
- To extend the exclusive Listing to December 31, 2008.

Except as otherwise amended herein, Owner and Broker agree that the Listing is hereby affirmed and continues in full force and effect.

The undersigned hereby acknowledges receipt of a copy of this Fourth Amendment.

**CIRCUIT CITY STORES, INC.**

By: _Maureen Olson_
Maureen Olson

Its: Manager, Surplus Properties

Date: 6-16-08

**CB RICHARD ELLIS/LOUISVILLE**

By: _Ke A. Trove_

Its: SVP/Partner

Date: 6/10/08