by a senior financial officer of Tenant; (ii) within 90 days of the end of each fiscal year, annual balance sheets, income and cash flow statements for Tenant named herein, certified by an independent public accountant. Quarterly 10Qs as filed with the Securities and Exchange Commission shall satisfy the requirements contained in (i) herein. Copies of the 10Ks filed with the Securities and Exchange Commission will satisfy the requirement contained in (ii) herein. The obligations of Tenant named herein shall continue whether or not this Lease shall have been assigned.

29. No Usury. The intention of the parties being to conform strictly to the usury laws now in force in the State, whenever any provision herein provides for payment by Tenant to Landlord of interest at a rate in excess of the legal rate permitted to be charged, such rate herein provided to be paid shall be deemed reduced to such legal rate.

30. Broker. Landlord and Tenant represent and warrant to each other that neither party negotiated with any broker in connection with this Lease and that this Lease was negotiated directly by Landlord and Tenant. Each party hereby agrees to indemnify the other against all claims, damages, costs and expenses incurred by the indemnified party as a result of the breach of the foregoing representation or warranty by the indemnifying party.

31. Waiver of Landlord's Lien. Landlord hereby waives any right to distrain Trade Fixtures or any property of Tenant and any Landlord's lien or similar lien upon Trade Fixtures and any other property of Tenant regardless of whether such lien is created or otherwise. Landlord agrees, at the request of Tenant, to execute a waiver of any Landlord's or similar lien for the benefit of any present or future holder of a security interest in or lessor of any of Trade Fixtures or any other personal property of Tenant. Landlord acknowledges and agrees in the future to acknowledge (in a written form reasonably satisfactory to Tenant) to such persons and entities at such times and for such purposes as Tenant may reasonably request that Trade Fixtures are Tenant's property and not part of Improvements (regardless of whether or to what extent such Trade Fixtures are affixed to the Improvements) or otherwise subject to the terms of this Lease.

32. No Waiver. No delay or failure by either party to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.

33. <u>Separability</u>. If any term or provision of this Lease or the application thereof to any provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to person or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

34. <u>Indemnification</u>. Tenant agrees to defend, pay, protect, indemnify, save and hold harmless Landlord and Lender from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising from any of the Leased Premises or Adjoining Property or the use, non-use, occupancy, condition, design, construction, maintenance, repair or rebuilding of any of or otherwise relating to, the Leased Premises or Adjoining Property, and any injury to or death of any person or persons or any loss of or damage to any property, real or personal, in any manner arising therefrom connected therewith or occurring thereon (collectively, "Losses"), whether or not Landlord has or should have knowledge or notice of the defect or conditions, if any, causing or contributing to said Loss. In case any action or proceeding is brought against Landlord or Lender by reason of any such Loss, Tenant covenants upon notice from Landlord or Lender to defend Landlord or Lender in such action, with the expenses of such defense paid by Tenant, and Landlord or Lender will cooperate and assist in the defense of such action or proceeding if reasonably requested so to do by Tenant. The obligations of Tenant under this Paragraph 34 shall survive any termination of this Lease with respect to Losses identified in reasonable detail, by the Claim Deadline, as defined below, of the intent to make a claim upon Tenant under such indemnity. The "Claim Deadline" shall be:

(a) to the extent of any indemnification obligation arising as a result of the claim by a third party against Landlord or Lender, or the claim of a third party against the Leased Premises, the date that is 30 days after the later of (i) the expiration of the period during which such third party claim may be brought under the applicable statute of limitations or (ii) the date which is two (2) years after the expiration or earlier termination of this Lease;

7763\circuit\ccp8\lease.nc

(b) with respect to any indemnification obligation of Tenant not described in subparagraph (a) above, the day that is two years after the expiration or earlier termination of this Lease.

35. <u>Tenant to Comply With Reciprocal Easement Agreement</u>. Tenant agrees that Tenant is obligated to and shall perform all obligations of the owner of the Leased Premises and pay all expenses which the owner of the Leased Premises may be required to pay in accordance with any reciprocal easement agreement or any other agreement or document of record now affecting the Leased Premises, herein referred to collectively as "REA", and that Tenant shall comply with all of the terms and conditions of the REA during the term of this Lease. Tenant shall be deemed the "Owner" of the Leased Premises for purposes of the REA. Tenant further covenants and agrees to indemnify, defend and hold harmless Landlord and Lender against any claim, loss or damage suffered by Landlord or Lender by reason of Tenant's failure to perform any obligations or pay any expenses as required under any REA or comply with the terms and conditions of any REA as hereinabove provided during the term of this Lease.

36. <u>Headings</u>. The paragraph headings in this Lease are used only for convenience in finding the subject matters and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease.

37. <u>Modifications</u>. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought. Each of Tenant and Landlord agrees that it will not modify this Lease without the written consent of Lender within any period during which there is a Lender hereunder.

38. <u>Successors, Assigns</u>. The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributees, personal representatives, successors and permitted assigns of Tenant and all present and subsequent encumbrances and subtenants of any of the Leased Premises, and shall inure to the benefit of and bind Landlord, its successors and assigns. In the event there is more than one Tenant, the obligation of each shall be joint and several. The term "Landlord" as used in this Lease, so far as covenants or obligations on the part of

Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

39.  Counterparts. This Lease may be executed in several counterparts, which together shall be deemed one and the same instrument.

40.  Governing Law.  This Lease shall be governed by and construed according to the laws of the State.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

LANDLORD:

CC - INVESTORS 1995-1

By _____
Title: Gil J. Besing, not in his individual capacity but solely as trustee

TENANT:

CIRCUIT CITY STORES, INC.

By: _____

/circuit/ccp8/lease.nc

7763\circuit\ccp8\lease.nc

EXHIBIT A

COMMENCING at an existing NCGS monument entitled "Econo 1985" and having N.C. Grid Values of North 377,724.206 and Eastern values of 2,482,751.053; and running thence from the said existing NCGS monument North 42 degrees 34 minutes 10 seconds West and having a grid distance of 1189.51 feet to an existing iron stake; thence South 48 degrees 03 minutes 42 seconds West and having a grid distance of 100.12 feet to an existing iron stake; thence North 38 degrees 58 minutes 05 seconds West and having a grid distance of 1059.45 feet to an existing iron stake located along the Southwestern right of way of NCSR 1470 (commonly known as Western Boulevard - 200 foot right of way); and running thence along the said Southwestern right of way of NCSR 1470 North 38 degrees 58 minutes 05 seconds West 256.80 feet to an iron stake located along the Northern margin of a 20 foot utility easement and the Northern right of way of Circuit Lane (60 foot right of way), said iron stake also being THE TRUE POINT OF BEGINNING: thence from the described and leaving the said southwestern right of way of NCSR 1470 and the said Northern margin of the 20 foot utility easement and running along the Northern right of way of Circuit Lane South 51 degrees 01 minutes 55 seconds West 292.39 feet to an iron stake; thence leaving the said Northern right of way of Circuit Lane and running along a curve to the right having a radius of 279.35 feet and a chord bearing and distance of South 50 degrees 42 minutes 15 seconds East 69.87 feet to an iron stake located along the Southern margin of a 50 foot ingress, egress, drainage and utility easement; thence running along the said Southern margin of the 50 foot ingress, egress, drainage and utility easement the following courses and distances: thence along a curve to the left having a radius of 20.00 feet and a chord bearing and distance of North 86 degrees 14 minutes 38 seconds West 27.14 feet to an iron stake; thence South 51 degrees 01 minutes 55 seconds West 69.88 feet to an iron stake; thence along a curve to the right having a radius of 100.00 feet and a chord bearing and distance of North 83 degrees 58 minutes 05 seconds West 141.42 feet to an iron stake; thence North 38 degrees 58 minutes 05 seconds West 265.00 feet to an iron stake; thence leaving the Southern margin of the 50 foot ingress, egress, drainage and utility easement and running North 51 degrees 01 minutes 55 seconds East 50.00 feet to a point located along the centerline of a 20 foot drainage and utility easement and to Northern margin of the said 50 foot ingress, egress, drainage and utility easement; thence leaving the said Northern margin of the said 50 foot ingress, egress, drainage and utility easement and running along the centerline of a 20 foot drainage and utility easement North 51 degrees 01 minutes 55 seconds East 418.00 feet to an iron stake located in the Southwestern right of way of NCSR 1470 and the Northern margin of a 20 foot utility easement; thence leaving the said centerline of the 20 foot drainage and utility easement and running along the Southwestern right of way of NCSR 1470 and the Northern margin of a 20 foot utility easement South 38 degrees 58 minutes 05 seconds East

315.00 feet to the point and place of beginning. Containing 3.55 acres/154,465.71 square feet and being described as Lot 1 of Walnut Plaza and being a portion of the property described in Deed Book 941, Page 652 of the Onslow County Registry. The courses contained herein are correct in angular relationship and is referenced to N.C. Grid North.

Also being described as:

BEING all of Lot 1 as shown on a map entitled "Walnut Plaza" dated October 18, 1994, prepared by John L. Pierce-Surveying and recorded in Map Book 31, page 171, Slide H-159, Onslow County Registry.

SAVE AND EXCEPT the reservation by Grantor and future owners and occupants (together with their agents, customers, invitees, licensees and employees) of the balance of the 40.35 acre tract as shown on a map recorded in Map Book 26, Page 155, Slide E-183, Onslow County Registry, the perpetual, non-exclusive right and easement for vehicular and pedestrian ingress and egress and drainage and utilities over, across and upon the 50 foot ingress, egress, drainage and utility easement as shown on the map entitled "Walnut Plaza" dated October 18, 1994, prepared by John L. Pierce-Surveying and recorded in Map Book 31, Page 171, Slide H-159, Onslow County Registry.

This right and easement of ingress and egress shall be subject to Grantor's and such future owner's and occupant's of the balance of the 40.35 acre tract described above, payment to Grantee of their equitable share of the cost of maintenance, repair and replacement, from time to time, of the Service Road to be constructed thereon. The equitable share of the cost of maintenance, repair and replacement of the Service Road shall be determined based upon the portion of the land area developed by such future owners' of the balance of the 40.35 acre tract described in Map Book 26, Page 155, Slide E-183 of the Onslow County Registry compared to the total land area developed out of said 40.35 acre tract.

SUBJECT TO AND TOGETHER with a drainage easement and easement for enlargement of retention pond, said drainage easement being more particularly described on the above referenced map and the terms of said easements being set forth in a Drainage Easement Agreement recorded in Book 1219, Page 722, Onslow County Registry.

\circuit\ccp8\legal.nc

## EXHIBIT B

1. Basic Rent for the initial term shall be at the annual rate of Three Hundred Forty Three Thousand Twenty Four and 50/100 Dollars ($343,024.50).

2. Basic Rent for the first renewal term shall be at the annual rate of Three Hundred Seventy Seven Thousand Three Hundred Twenty Six and 84/100 Dollars ($377,326.84).

3. Basic Rent for the second renewal term shall be at the annual rate of Four Hundred Eleven Thousand Six Hundred Twenty Nine and 40/100 Dollars ($411,629.40).

7763\circuit\ccp8\lease.nc

## EXHIBIT C

Rejectable Offer Schedule

7763\circuit\ccp8\lease.nc

EXHIBIT C - JACKSONVILLE

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 10/1/95 | 3,502,221.96 | 10/1/00 | 3,124,061.46 | 10/1/05 | 2,572,810.35 |
| 11/1/95 | 3,502,221.96 | 11/1/00 | 3,116,413.98 | 11/1/05 | 2,561,831.44 |
| 12/1/95 | 3,496,876.95 | 12/1/00 | 3,108,720.07 | 12/1/05 | 2,550,786.41 |
| 1/1/96 | 3,491,499.23 | 1/1/01 | 3,100,979.49 | 1/1/06 | 2,539,674.90 |
| 2/1/96 | 3,486,088.64 | 2/1/01 | 3,093,191.96 | 2/1/06 | 2,528,496.53 |
| 3/1/96 | 3,480,645.06 | 3/1/01 | 3,085,357.19 | 3/1/06 | 2,517,250.89 |
| 4/1/96 | 3,475,168.18 | 4/1/01 | 3,077,474.88 | 4/1/06 | 2,505,937.58 |
| 5/1/96 | 3,469,657.88 | 5/1/01 | 3,069,544.81 | 5/1/06 | 2,494,556.27 |
| 6/1/96 | 3,464,113.94 | 6/1/01 | 3,061,566.62 | 6/1/06 | 2,483,106.46 |
| 7/1/96 | 3,458,536.13 | 7/1/01 | 3,053,540.08 | 7/1/06 | 2,471,587.79 |
| 8/1/96 | 3,452,924.30 | 8/1/01 | 3,045,464.87 | 8/1/06 | 2,459,999.89 |
| 9/1/96 | 3,447,278.20 | 9/1/01 | 3,037,340.71 | 9/1/06 | 2,448,342.31 |
| 10/1/96 | 3,441,597.59 | 10/1/01 | 3,029,167.31 | 10/1/06 | 2,436,614.65 |
| 11/1/96 | 3,435,882.38 | 11/1/01 | 3,020,944.39 | 11/1/06 | 2,424,816.53 |
| 12/1/96 | 3,430,132.24 | 12/1/01 | 3,012,671.67 | 12/1/06 | 2,412,947.49 |
| 1/1/97 | 3,424,346.99 | 1/1/02 | 3,004,348.80 | 1/1/07 | 2,401,007.15 |
| 2/1/97 | 3,418,526.52 | 2/1/02 | 2,995,975.51 | 2/1/07 | 2,388,995.03 |
| 3/1/97 | 3,412,670.49 | 3/1/02 | 2,987,551.53 | 3/1/07 | 2,376,910.83 |
| 4/1/97 | 3,406,778.77 | 4/1/02 | 2,979,076.53 | 4/1/07 | 2,364,754.01 |
| 5/1/97 | 3,400,851.11 | 5/1/02 | 2,970,550.22 | 5/1/07 | 2,352,524.24 |
| 6/1/97 | 3,394,887.29 | 6/1/02 | 2,961,972.28 | 6/1/07 | 2,340,220.98 |
| 7/1/97 | 3,388,887.08 | 7/1/02 | 2,953,342.40 | 7/1/07 | 2,327,843.90 |
| 8/1/97 | 3,382,850.34 | 8/1/02 | 2,944,660.30 | 8/1/07 | 2,315,392.53 |
| 9/1/97 | 3,376,776.79 | 9/1/02 | 2,935,925.67 | 9/1/07 | 2,302,866.43 |
| 10/1/97 | 3,370,666.18 | 10/1/02 | 2,927,138.15 | 10/1/07 | 2,290,265.20 |
| 11/1/97 | 3,364,518.35 | 11/1/02 | 2,918,297.49 | 11/1/07 | 2,277,588.33 |
| 12/1/97 | 3,358,333.04 | 12/1/02 | 2,909,403.34 | 12/1/07 | 2,264,835.42 |
| 1/1/98 | 3,352,110.09 | 1/1/03 | 2,900,455.39 | 1/1/08 | 2,252,006.03 |
| 2/1/98 | 3,345,849.16 | 2/1/03 | 2,891,453.34 | 2/1/08 | 2,239,099.73 |
| 3/1/98 | 3,339,550.11 | 3/1/03 | 2,882,396.83 | 3/1/08 | 2,226,116.02 |
| 4/1/98 | 3,333,212.70 | 4/1/03 | 2,873,285.57 | 4/1/08 | 2,213,054.48 |
| 5/1/98 | 3,326,836.67 | 5/1/03 | 2,864,119.24 | 5/1/08 | 2,199,914.66 |
| 6/1/98 | 3,320,421.82 | 6/1/03 | 2,854,897.50 | 6/1/08 | 2,186,696.09 |
| 7/1/98 | 3,313,967.95 | 7/1/03 | 2,845,619.99 | 7/1/08 | 2,173,398.32 |
| 8/1/98 | 3,307,474.73 | 8/1/03 | 2,836,286.45 | 8/1/08 | 2,160,020.89 |
| 9/1/98 | 3,300,942.00 | 9/1/03 | 2,826,896.51 | 9/1/08 | 2,146,563.31 |
| 10/1/98 | 3,294,369.49 | 10/1/03 | 2,817,449.84 | 10/1/08 | 2,133,025.10 |
| 11/1/98 | 3,287,756.99 | 11/1/03 | 2,807,946.07 | 11/1/08 | 2,119,405.87 |
| 12/1/98 | 3,281,104.26 | 12/1/03 | 2,798,384.95 | 12/1/08 | 2,105,705.09 |
| 1/1/99 | 3,274,411.02 | 1/1/04 | 2,788,766.07 | 1/1/09 | 2,091,922.29 |
| 2/1/99 | 3,267,677.08 | 2/1/04 | 2,779,089.10 | 2/1/09 | 2,078,056.96 |
| 3/1/99 | 3,260,902.15 | 3/1/04 | 2,769,353.69 | 3/1/09 | 2,064,108.71 |
| 4/1/99 | 3,254,086.03 | 4/1/04 | 2,759,559.55 | 4/1/09 | 2,050,076.95 |
| 5/1/99 | 3,247,228.46 | 5/1/04 | 2,749,706.30 | 5/1/09 | 2,035,961.25 |
| 6/1/99 | 3,240,329.16 | 6/1/04 | 2,739,793.52 | 6/1/09 | 2,021,761.11 |
| 7/1/99 | 3,233,387.92 | 7/1/04 | 2,729,821.02 | 7/1/09 | 2,007,476.07 |
| 8/1/99 | 3,226,404.47 | 8/1/04 | 2,719,788.28 | 8/1/09 | 1,993,105.60 |
| 9/1/99 | 3,219,378.57 | 9/1/04 | 2,709,695.04 | 9/1/09 | 1,978,649.18 |
| 10/1/99 | 3,212,309.98 | 10/1/04 | 2,699,540.92 | 10/1/09 | 1,964,106.39 |
| 11/1/99 | 3,205,198.40 | 11/1/04 | 2,689,325.58 | 11/1/09 | 1,949,476.67 |
| 12/1/99 | 3,198,043.63 | 12/1/04 | 2,679,048.63 | 12/1/09 | 1,934,759.47 |
| 1/1/00 | 3,190,845.38 | 1/1/05 | 2,668,709.70 | 1/1/10 | 1,919,954.40 |
| 2/1/00 | 3,183,603.37 | 2/1/05 | 2,658,308.45 | 2/1/10 | 1,905,060.86 |
| 3/1/00 | 3,176,317.38 | 3/1/05 | 2,647,844.55 | 3/1/10 | 1,890,078.35 |
| 4/1/00 | 3,168,987.16 | 4/1/05 | 2,637,317.57 | 4/1/10 | 1,875,006.40 |
| 5/1/00 | 3,161,612.39 | 5/1/05 | 2,626,727.13 | 5/1/10 | 1,859,844.40 |
| 6/1/00 | 3,154,192.84 | 6/1/05 | 2,616,072.90 | 6/1/10 | 1,844,591.90 |
| 7/1/00 | 3,146,728.26 | 7/1/05 | 2,605,354.46 | 7/1/10 | 1,829,248.36 |
| 8/1/00 | 3,139,218.33 | 8/1/05 | 2,594,571.50 | 8/1/10 | 1,813,813.27 |
| 9/1/00 | 3,131,662.84 | 9/1/05 | 2,583,723.60 | 9/1/10 | 1,798,286.08 |

*[handwritten annotation: See condemnation section]*

## EXHIBIT C - JACKSONVILLE

| Date | Amount | Date | Amount |
|---|---|---|---|
| 10/1/10 | 1,782,666.21 | 10/1/15 | 643,360.88 |
| 11/1/10 | 1,766,953.18 | 11/1/15 | 619,970.24 |
| 12/1/10 | 1,751,146.43 | 12/1/15 | 596,395.78 |
| 1/1/11 | 1,735,245.43 | 1/1/16 | 572,636.08 |
| 2/1/11 | 1,719,249.65 | 2/1/16 | 548,689.66 |
| 3/1/11 | 1,703,158.48 | 3/1/16 | 524,555.06 |
| 4/1/11 | 1,686,971.41 | 4/1/16 | 500,230.80 |
| 5/1/11 | 1,670,687.87 | 5/1/16 | 475,715.39 |
| 6/1/11 | 1,654,307.33 | 6/1/16 | 451,007.34 |
| 7/1/11 | 1,637,829.20 | 7/1/16 | 426,105.12 |
| 8/1/11 | 1,621,252.95 | 8/1/16 | 401,007.21 |
| 9/1/11 | 1,604,577.93 | 9/1/16 | 375,712.07 |
| 10/1/11 | 1,587,803.65 | 10/1/16 | 350,218.16 |
| 11/1/11 | 1,570,929.51 | 11/1/16 | 324,523.90 |
| 12/1/11 | 1,553,954.95 | 12/1/16 | 298,627.74 |
| 1/1/12 | 1,536,879.36 | 1/1/17 | 272,528.07 |
| 2/1/12 | 1,519,702.17 | 2/1/17 | 246,223.30 |
| 3/1/12 | 1,502,422.81 | 3/1/17 | 219,711.82 |
| 4/1/12 | 1,485,040.64 | 4/1/17 | 192,992.00 |
| 5/1/12 | 1,467,555.11 | 5/1/17 | 166,062.21 |
| 6/1/12 | 1,449,965.63 | 6/1/17 | 138,920.80 |
| 7/1/12 | 1,432,271.56 | 7/1/17 | 111,566.10 |
| 8/1/12 | 1,414,472.34 | 8/1/17 | 83,996.43 |
| 9/1/12 | 1,396,567.31 | 9/1/17 | 56,210.12 |
| 10/1/12 | 1,378,555.91 | 10/1/17 | 28,205.45 |
| 11/1/12 | 1,360,437.51 | | |
| 12/1/12 | 1,342,211.49 | | |
| 1/1/13 | 1,323,874.80 | | |
| 2/1/13 | 1,305,422.59 | | |
| 3/1/13 | 1,286,854.14 | | |
| 4/1/13 | 1,268,168.72 | | |
| 5/1/13 | 1,249,365.63 | | |
| 6/1/13 | 1,230,444.13 | | |
| 7/1/13 | 1,211,403.48 | | |
| 8/1/13 | 1,192,242.96 | | |
| 9/1/13 | 1,172,961.81 | | |
| 10/1/13 | 1,153,559.31 | | |
| 11/1/13 | 1,134,034.69 | | |
| 12/1/13 | 1,114,387.20 | | |
| 1/1/14 | 1,094,616.07 | | |
| 2/1/14 | 1,074,720.56 | | |
| 3/1/14 | 1,054,699.88 | | |
| 4/1/14 | 1,034,541.68 | | |
| 5/1/14 | 1,014,225.07 | | |
| 6/1/14 | 993,748.80 | | |
| 7/1/14 | 973,111.63 | | |
| 8/1/14 | 952,312.28 | | |
| 9/1/14 | 931,349.48 | | |
| 10/1/14 | 910,221.95 | | |
| 11/1/14 | 888,928.39 | | |
| 12/1/14 | 867,467.50 | | |
| 1/1/15 | 845,837.96 | | |
| 2/1/15 | 824,038.45 | | |
| 3/1/15 | 802,067.64 | | |
| 4/1/15 | 779,924.17 | | |
| 5/1/15 | 757,606.69 | | |
| 6/1/15 | 735,113.83 | | |
| 7/1/15 | 712,444.21 | | |
| 8/1/15 | 689,596.45 | | |
| 9/1/15 | 666,569.14 | | |