B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT **EASTERN** DISTRICT OF **VIRGINIA** | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Circuit City Stores, Inc. | Case Number:<br>08-35653 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Colorado Structures, Inc. dba CSI Construction Co.

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
c/o André K. Campbell, Esq.
McDonough Holland & Allen PC
555 Capitol Mall, 9ᵗʰ Floor, Sacramento, CA 95814-4692
Telephone number: (916) 444-3900

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 82,409.48

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim:** Tenant improvements to debtor's retail facility.
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: Leasehold premises at Monrovia, CA

Value of Property:$ 0.00 _____ **Annual Interest Rate** 10%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ 1,003.63 _____ **Basis for perfection:** Mechanic's lien _____

Amount of Secured Claim: $ 82,409.48 _____ Amount Unsecured: $ _____

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

**Amount entitled to priority:**

$ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 1/28/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>McDonough Holland & Allen PC<br>By: *André K. Campbell*    André K. Campbell | FOR COURT USE ONLY<br>**RECEIVED**<br><br>JAN 29 2009<br><br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of*

1162594v1 31830/0027



0835653090129000000000484

ind5571
American LegalNet, Inc.
www.FormsWorkflow.com



DEVELOPMENT

FEB 2 6 2008

EXHIBIT G

February 22, 2008

Mr Joe Hall
Colorado Structures, Inc. - CA
5060 Robert J. Mathews Parkway, Suite 110
El Dorado, CA 95762

RE:    **LETTER OF INTENT**
       **Circuit City Store # 4176**
       **Monrovia, CA/CompUSA**

Dear Mr Hall:

The purpose of this Letter of Intent is to award your firm a general construction contract for the construction of a Circuit City Store in Monrovia, CA/CompUSA.

1.    You are authorized to commence with the awarding of sub-contracts and purchase orders so as not to delay the project in order to meet the construction schedule described within this document.

2.    The Stipulated Sum price per your proposal dated February 14, 2008, is as follows:

| Base Bid | $ 687,577 |
|---|---|
| Alternates | NONE |
| Subtotal Alternates | $         000 |
| **TOTAL** | **$ 687,577** |

3.    It is understood that a formal Stipulated Sum Contract for the performance of the work, similar to the one that was included in the project specification, will be executed. The contract will be sent once this Letter of Intent is signed and returned to our office with all required exhibits.

4.    If, for any reason, the Owner should not execute the formal contract, you will be compensated for all sums due you under this Letter of Intent, which will include your actual direct purchase and fabrication costs up to such time as it shall be determined by the Owner that such formal contract/agreement will not be executed by the Owner.

5.    Time is of the essence. Work under your contract shall be performed to meet the following contractual time frames. Exact dates to be outlined in Notice to Proceed.

a)    Start of Construction:                                    3/3/2008
b)    Available for Start of Store Fixturing:                   5/12/2008

**Exhibit A**

0003

LETTER OF INTENT
Circuit City Store # 4176 Monrovia, CA/CompUSA
Page 2

| | | | |
|---|---|---|---|
| c) | Ready For Exterior Sign Installation | | 4/28/2008 |
| d) | Available for Start of Warehouse Racking: | | 5/5/2008 |
| e) | Ready for Telephone Equipment Room Installation: | | 4/28/2008 |
| f) | Ready for NOVAR/Entec Startup: | | 5/12/2008 |
| g) | Flextray Installation Complete: | | 4/21/2008 |
| h) | Fixturing Complete/ Certificate of Occupancy | | 5/29/2008 |
| i) | Ready for Turnover to Merchandising/Punchlist | | |
| | Complete/ Substantial Completion: | | 6/3/2008 |

The total duration for the above is 93 calendar days.

6.     Provide Builders Risk Insurance Certificate, as well as evidence of insurance to Circuit City before commencing construction. Please note requirements of contract Section 9, pertaining to Certificate of Insurance (Attachment A).

7.     The Building Permit is ready to be picked up, you are responsible for picking up the permit and invoicing us for the direct cost of the permit fees.

8.     It is understood that Circuit City will contract a construction testing firm. It will be your responsibility to see to it that an inspector is on the job when testing is required.

9.     Chuck Reed will serve as Construction Manager for Circuit City. He will contact you regarding a pre-construction meeting to be attended by all of your major sub-contractors. Specific construction administration requirements will be discussed at this meeting.

10.    You will need to upload your preliminary Microsoft Project 98 schedule within (10) days of this Letter of Intent to Expesite, Folder E01 – Project Schedule. Notify the Construction Manager when your Schedule is uploaded.

11.    The construction documents include Addendums #1 - Dated 1/21/2008; #2 - Dated 1/28/2008; #3 - Dated 2/7/2008; #4 - Dated 2/11/2008.

12.    A list of the drawings is attached, Exhibit "B".

13.    A list of the Clarifications/Qualifications to the bid, if any, is attached, Exhibit "B-1".

14.    The Notice to Proceed will be issued upon notification that the Building Permit has been uploaded to Expesite, Folder C10.1 – Permits. Upload the certificate of insurance and Builders Risk to Expesite Folder E05.3 Certificate of Insurance. Notify Dave Bennett and the Construction Manager when the Permit and The Certificate of Insurance and Builders Risk has been uploaded to Expesite

15.    A copy of the bid form, Sections 00300, 00400 and 00450 from the specifications, is required to be returned with this Letter of Intent.

16.    General Contractor's Project Manager will be    ANDY SNEDEKER .

0004

17.    <u>DELETED</u>

18.    The general contractor fee on change orders is to be <u>7.0%</u> combined main office overhead and profit.

19.    Labor Burden Breakdown form (Exhibit J) is enclosed, please complete and return with this Letter of Intent.

20.    A Project Information Sheet is enclosed, please complete and return with this Letter of Intent.

21.    Written documentation is attached regarding the procedure for field orders, change orders and pay requests.

22.    Requests for Information (RFI's), to the Architect, are to be submitted through Expesite. Instructions attached

23.    The General Contractor is required to upload weekly progress photographs to Expesite. Instructions attached.

24.    It is the responsibility of the General Contractor to coordinate with gas, power, water, sewer and communication utilities to ensure that all work is completed and that all services, including meters, are available, installed and operating when needed. The General Contractor shall notify Circuit City of any Impact Fees, Meter Fees or Utility Connection Fees needed to facilitate timely utility service. If it becomes necessary to expedite the process, the General Contractor may be directed to pay these fees and submit detailed invoices to Circuit City for reimbursement.

25.    The general contractor is to provide detailed weekly updates on the status of the buyout of the project and to complete buyout within 2 weeks of this letter of intent.

26.    Circuit City may receive the pad earlier than the date specified in the schedule above. The general contractor acknowledges that they will hold themselves ready to mobilize and begin construction on the dates above or within one week of receiving the notice to proceed if an earlier start is possible.

27.    The general contractor and all of his subcontractors are exclusively responsible for complying with all aspects of United States immigration law, including but not limited to the Immigration Reform and Control Act of 1986, and verifying employment eligibility for its workforce.

28.    It is expressly understood that the current unit pricing and hourly rates for additional work performed on a time and material basis stated in your bid form are not approved. Detailed backup including union rate cards and subcontractor backup will be required before these items can be agreed upon.

29.    A photograph, clearly identifying the site and showing the "Coming Soon" sign, must accompany the first pay application for this project in order for the application to be

LETTER OF INTENT
Circuit City Store #4176 Monrovia, CA/CompUSA
Page 4

processed.  Shipping of the "Coming Soon" sign(s) is to be coordinated with Kellee Jackson, Circuit City Purchasing, Ph: 804-486-8633, e-mail: Kellee_Jackson@CircuitCity.com.

30.     The exhibits listed below, the receipt of which is acknowledged, are included in this contract.

31.     It is expressly understood that an Excel Spreadsheet will be provided to you electronically and is to be completed and forwarded by e-mail to Dave Bennett for approval. Once approved the Construction Manger will forward the spreadsheet to Ashley Brown for processing. Please contact Carl Brandt (ext. 2412) in order to receive the electronic format for submitting your pay requests. This is a mandatory requirement for payments to be made.

Circuit City Stores, Inc. is looking forward to a successful building project with Colorado Structures, Inc. - CA.

Yours truly,

CIRCUIT CITY STORES, INC.

John B. Mulleady
Vice President of Construction

JBM/wdb

cc:     Tom Drapac – Director Of Construction
        Chuck Reed
        Frank Domurat
        Brad Hoskins, Architectural Group International

ACCEPTED: _____

BY: _____Joe Hall_____

TITLE: _____Vice President_____

Attachments:
Exhibit B     List of Drawings Used to Prepare Bid
Exhibit B-1  Clarifications & Qualifications to the Bid
Exhibit B-2  Pre-Bid Meeting Minutes, Dated 2/08/2008
Exhibit D    Bid Form

0006

Circuit City Stores, Inc.
9950 Mayland Dr.
Richmond, VA 23233

Friday, January 18, 2008

TO ALL BIDDERS

RE: INVITATION TO BID FOR: Monrovia, CA/CompUSA #4176

NOTE: This letter is a part of the contract documents. Information contained in this Invitation To Bid supersedes that found in the plans and specifications and can not be changed except by direct communication from this office. If an addenda or clarification from another party is in conflict with instructions contained herein, contact me at 804/486 - 2410 immediately.

You have been included on our invited bidders list for the above referenced project. Accordingly, one (1) complete set of plans and specifications (on CD) is scheduled to be sent via overnight delivery to you under separate cover, directly from our architect, Architectural Group International, on or about 1/9/2008. Please notify me upon receipt to confirm the bid date.

Your bid will be submitted electronically via the Internet through Expesite. If you have not received your Username and Password from Expesite prior to bid date, please call Dave Bennett at 804/486-2410.

Your bid is to be phoned in to Dave Bennett no later than 2:00 p.m. local project time, on 2/14/2008, at 804/486-2410. Complete the Bid Form through Expesite, attach the Bid Proposal Form, and SUBMIT your bid no later than 4:00 p.m. local project time, on 2/14/2008. For your records, be sure to print a copy of the Bid Form and the electronic verification which you will receive upon submission.

All applicable Unit Price blanks on your Bid Proposal Form (Attached to the Bid form) must be completed, attached and submitted at the same time as your Bid. For items not in your scope of work, leave blank. Also, provide with your bid a list of the drawings showing sheet numbers, titles and latest revision dates, the specifications, showing title and latest revision date (Bid Proposal Form – Attached to the Bid form).

The building permit process has started and should be available soon. The successful contractor will be required to pick up the permit and invoice Circuit City Stores, Inc. the direct cost. Do not include the cost of the permit in you bid unless otherwise directed. Circuit City's Construction Manager, Chuck Reed, will contact you to schedule a pre-bid meeting.

Circuit City intends to award a construction contract within two (2) weeks after the bids are received. Your bid should reflect a construction schedule as follows:

A - Start of Construction                                         3/3/2008

B - Available for Installation of Store Fixturing              5/12/2008

I - Ready for Turnover to Merchandising/Punchlist Complete – Substantial

Completion

6/3/2008

The definition of store ready for merchandising is per **Attachment A.**

Included in your proposal should be the cost of providing Circuit City Stores, Inc. with a Construction schedule. This schedule must be prepared using Microsoft Project. The schedules are to be submitted to the construction manager twice a month on a diskette and must be in Project 98 or later format.

Requests for Information (RFI's) are to be submitted to the Architect only, Brad Hoskins during bidding.

We look forward to receiving your bid.

Yours truly,

CIRCUIT CITY STORES, INC.

Dave Bennett
Construction Contract Specialist

cc:John Mulleady
         Chuck Reed

Enclosures

rev 4/3/07

0008

### Circuit City Store
### ATTACHMENT "A"

Time is of the essence of this Agreement as to all obligations of Contractor hereunder. Contractor recognizes and agrees that Owner may incur substantial financial losses in the event the Work, or the relevant portions thereof, are not completed by the following dates:

| | | |
|---|---|---|
| a) | Start of Construction: | 3/3/2008 |
| b) | Available To Start of Store Fixtures: | 5/12/2008 |
| c) | Ready For Exterior Sign Installation: | 4/28/2008 |
| d) | Available for start of Warehouse Racking: | 5/5/2008 |
| e) | Ready for Telephone Equipment Room Installation: | 4/28/2008 |
| f) | Ready for NOVAR/Entec Startup: | 5/12/2008 |
| g) | Flextray Installation Complete: | 4/21/2008 |
| h) | Fixturing Complete/ Certificate of Occupancy: | 5/29/2008 |
| l) | Ready for Turnover to Merchandising/Punchlist Complete | |
| | Substantial Completion: | 6/3/2008 |

The date of availability for start of store fixturing shall be the day when all of the following have been properly performed:  i) all floor coverings (carpeting, rubber tile, and sheet vinyl) shall be in place, clean and protected; ii) the store shall be enclosed, with all exterior doors in place and lockable (or in lieu thereof, Contractor's expense appropriate security guards or watchmen) and roof hatch or other roof access to the store shall be lockable; iii) gypsum board shall be completed and painted, all required backing shall be in place; and iv) adequate lighting and power for all interior fixture trades shall be installed and completed; v) ceiling shall be complete including acoustic grid, lighting and fire sprinklers trimmed and under pressure; vi) HVAC system shall be operational; vii) wire shall be pulled and trimmed for floor boxes and wall electrical shall be in place; viii) all area shall be clear of debris and broom clean; and ix) concrete floors shall be sealed where specified.  All of the foreing shall be performed in accordance with the requirements of the Contract Documents.   Contractor shall consult with Owner and the Architect to make provision for the proper sequencing, coordination and scheduling of this portion of the Work.

The date the telephone equipment room is ready shall be the date when the requirements for fixturization as set forth in the previous paragraph have been satisfied and continuous permanent power is available to the telephone equipment room.

The date the store is ready for merchandising shall be the date i) the Work is completed to an extend satisfactory to all governmental departments (including fire department) and agencies having jurisdiction over the Project so as to allow Owner to bring employees into the building and ii) all electrical work in the sales floor has been completed.

### END ATTACHMENT "A"



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

March 11, 2008

Mr Joe Hall
Colorado Structures, Inc. - CA
5060 Robert J. Mathews Parkway, Suite 110
El Dorado, CA 95762

RE:    CIRCUIT CITY STORE #4176
       Monrovia, CA/CompUSA

Dear Mr Hall:

Enclosed please find a fully executed copy of the Monrovia, CA/CompUSA contract.

We look forward to a timely completion of this project.

Best regards.

Sincerely,

CIRCUIT CITY STORES, INC.

Dave Bennett
Construction Contract Specialist

cc:    Chuck Reed

DEVELOPMENT

MAR 0 5 2008

# Agreement Between
# Owner and Contractor -
# Stipulated Sum
### REV. October 18, 2006
#### (CCSTIPSM)

**AGREEMENT #**          made as of the 22nd day of February, in the year 2008.

**BETWEEN the Owner:**          Circuit City Stores, Inc.
*(Name and Address)*          9950 Mayland Drive
Richmond, Virginia 23233

**and the Contractor:**          Colorado Structures, Inc. - CA
*(Name and Address)*          5060 Robert J. Mathews Parkway, Suite 110
El Dorado, CA  95762

**The Project is:**          745 West Huntington Dr
*(Name and Location)*          Monrovia, CA  91016

**The Architect is:**          Architectural Group International
*(Name and Address)*          15 West Seventh Street
Covington, KY  41011



STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

Page 1

The Owner and Contractor agree as set forth below.

## ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 7.

## ARTICLE 2
## THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

## ARTICLE 3
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1**    The date of commencement is the date from which the Contract Time is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

**START OF CONSTRUCTION - 3/3/2008**

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work.

**3.2** The Contractor shall achieve substantial Completion of the entire Work (the "Date of Substantial Completion") not later than

**DATE OF SUBSTANTIAL COMPLETION (TURNOVER) - 6/3/2008**

, subject to adjustments of this Contract Time as provided in the Contract Documents.

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

Page 2

0012

## ARTICLE 4
## CONTRACT SUM

**4.1**    The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the fixed, stipulated Contract Sum of <u>Six Hundred. Eigthy-Seven Thousand, Five Hundred Seventy-Seven</u> Dollars ($ <u>687,577</u>), subject to additions and deductions as provided in the Contract Documents.

**4.2**    The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
See Exhibit G – Letter of Intent

**4.3**    Unit prices, if any, are as follows
See Exhibit D – Bid Breakdown

**4.4**    In the case of additive or deductive Work authorized under Article 12 of the General Conditions of the Contract for Construction, Contractor's markups shall be limited to <u>Seven</u> percent (<u>7</u>%) for profit and overhead, and Subcontractor's markups shall be limited to <u>Fifteen</u> percent (<u>15</u>%) for profit, and overhead in accordance with Article 5 of the General Conditions.

## ARTICLE 5
## PROGRESS PAYMENTS

**5.1**    Based upon Applications for Payment submitted to the Owner by the Contractor, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and in accordance with the General Conditions.

**5.2**    The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.3**    Provided an Application for Payment is received by Owner, and such Application for Payment conforms in all respects to the requirements set forth in the General Conditions, Owner shall make payment to Contractor as provided in the General Conditions.

**5.4**    Each Application for Payment shall be based upon the Schedule of Values submitted by the Contractor in accordance with the Contract Documents.  The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require.  This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.5**    Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.6**    Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed in accordance with the General Conditions.

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

Page 3

0013

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (l) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) Contractor has satisfied all other conditions precedent as set forth in the General Conditions. Final payment shall not be made any sooner than thirty (30) days after the Date of Final Completion of the Work as specified in the General Conditions. Contractor shall be solely responsible for assuring full compliance with all local laws, and Contractor agrees to defend and indemnify Owner from and against all actions, claims and demands relating to or arising out of Contractor's performance or failure to perform under this Agreement.

## ARTICLE 7
## ENUMERATION OF CONTRACT DOCUMENTS

**7.1**    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**7.1.1**    The Agreement is this executed Agreement Between Owner and Contractor - Stipulated Sum.

**7.1.2**    The General Conditions are the Circuit City Stores, Inc. General Conditions of the Contract for Construction August 30, 2006, Revision., Exhibit A, attached hereto.

**7.1.3**    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated                    and are as follows:

### SEE EXHIBIT B  DRAWINGS and SPECIFICATIONS

**7.1.4**    The Specifications are those contained in the Project Manual dated as in Subparagraph 7.1.3, and are as follows:

### SEE EXHIBIT B  DRAWINGS and SPECIFICATIONS

**7.1.5**    The Drawings are as follows, and are dated                    unless a different date is shown below:

### SEE EXHIBIT B  DRAWINGS and SPECIFICATIONS

**7.1.6**    The addenda, if any, are as follows:

### SEE EXHIBIT G – LETTER OF INTENT

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMFUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

Page 4

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 7.

7.1.7    Other documents, if any, forming part of the Contract Documents are as follows:

| EXHIBIT B-1 | EXCLUSIONS and CLARIFICATIONS |
| EXHIBIT B-2 | PRE-BID MEETING MINUTES 2/8/2008 |
| EXHIBT  B-3 | BIDDING PHASE RFI's |
| EXHIBIT D | BID FORM |
| EXHIBIT E | INSURANCE |
| EXHIBIT F | NOTICE TO PROCEED |
| EXHIBIT G | LETTER OF INTENT |
| EXHIBIT H | INVITATION TO BID |

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect, and the remainder to the Owner.

OWNER

CIRCUIT CITY STORES, INC.

_____
(Signature)

John B. Mulleady
Vice President
(Printed Name) Real Estate & Construction

_____
(Title)

CONTRACTOR

_____
Colorado Structures, Inc. - CA

_____
(Signature)

JOE HALL
(Printed Name)

VICE PRESIDENT
(Title)

STIPULATED SUM CONTRACT
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

Page 5

0015

# EXHIBIT A

# GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

dated FEBRUARY 22, 2008, between

CIRCUIT CITY STORES, INC. ("Owner"),

and Colorado Structures, Inc. - CA ("Contractor")

# REV. January 31, 2007



Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 1

# TABLE OF CONTENTS

1. WORK TO BE PERFORMED, DOCUMENTS FORMING THE AGREEMENT, AND DEFINITIONS..........2
2. DUTIES OF CONTRACTOR.................................................................................................4
3. DUTIES OF OWNER .......................................................................................................7
4. CONTRACT SUM AND COST OF CONSTRUCTION ...............................................................8
5. CHANGES IN THE WORK ................................................................................................8
6. PAYMENT BY OWNER...................................................................................................10
7. TIME OF THE WORK .....................................................................................................12
8. CONTRACTOR'S DEFENSE, INDEMNIFICATION, WARRANTIES AND GUARANTEES......................14
9. INSURANCE. ............................................................................................................... 17
10. OWNERSHIP OF THE WORK.........................................................................................20
11. ACCOUNTING, INSPECTION AND AUDIT ........................................................................20
12. DISPUTE RESOLUTION................................................................................................21
13. TERMINATION OF AGREEMENT....................................................................................22
14. TEMPORARY CONSTRUCTION FACILITIES .....................................................................23
15. USE OF SITE AND PREMISES .......................................................................................24
16. SUBMITTALS TO OWNER............................................................................................25
17. SHOP DRAWINGS .....................................................................................................26
18. SAMPLES ...............................................................................................................27
19. RECORD DRAWINGS AND MAINTENANCE INSTRUCTIONS................................................28
20. MATERIALS AND EQUIPMENT .....................................................................................28
21. SUBSTITUTION OF MATERIAL..................................................................................... 29
22. WORKERS AND WORKMANSHIP ..................................................................................30
23. INSPECTION OF WORK AND TESTING OF MATERIALS .....................................................30
24. CORRECTION OF WORK .............................................................................................31
25. CUTTING AND PATCHING ...........................................................................................32
26. CLEAN-UP ..............................................................................................................33
27. PROTECTION OF THE WORK. ...................................................................................... 33
28. PROTECTION OF PERSONS AND PROPERTY ..................................................................34
29. FIRE PRECAUTIONS AND PROTECTION.........................................................................35
30. ENVIRONMENTAL CONTROL.......................................................................................36
31. MISCELLANEOUS......................................................................................................36

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 2

0017

1.    <u>Work To Be Performed, Documents Forming The Agreement, and Definitions</u>

    1.1    Contractor shall provide, perform and/or cause to be provided or performed all of the "Work," set forth in Article 2 of the Agreement.  The "Work" includes the following:

        (a)    All of the labor, materials (including associated purchase orders and subcontracts), equipment and services necessary for the proper management, construction and completion of the Project in accordance with the Contract Documents and the "Construction Documents" (as defined below);

        (b)    All work shown on the Drawings;

        (c)    All improvements in connection with the Project and all site work for the Project;

        (d)    The "Subcontracted Work" and the "General Contractor Work," both as defined below;

        (e)    All other items to be performed or provided under the terms hereof by the Contractor or designated herein as included in the Work; and

        (f)    All other work necessary or appropriate to construct the Project in accordance with the Contract Documents, excluding only work marked "NIC" on the Drawings and Specifications and the items listed as "Exclusions" on Exhibit B-1 attached to and made a part of the Agreement.

    1.2    The terms "Subcontracted Work" and "General Contractor Work" shall have the following meanings:

        (a)    "Subcontracted Work" shall mean all Work not performed by Contractor's own personnel.

        (b)    "General Contractor Work" shall mean all Work to be performed, supervised or directed by Contractor's own personnel of whatever nature; purchase orders for General Contractor Work; all Work recognized as being the responsibility of the general contractor under the Agreement; the payment and performance by General Contractor of all of its obligations under the Agreement including those set forth in Section 4 hereof; and such other work as shall be necessary for the proper management, layout, direction and supervision of all Subcontracted Work.

    1.3    Any written change to this Agreement shall be in writing and signed by Owner and Contractor and, when so signed, shall constitute a "Change Order" binding on the parties hereto, shall be become part of this Agreement and, where inconsistent herewith, shall amend the Agreement.  Changes in the Work and "Change Orders" shall be handled as set forth in Section 5, herein.

    1.4    The "Contract Documents" are those documents set forth in Article 1 of the Agreement, and further enumerated in Article 7 of the Agreement.

    1.5    The "Architect" is the person or organization licensed to practice architecture and identified in the Agreement, and shall be deemed to include the Architect's duly authorized representatives, including engineers on the Architect's staff and consultants and engineers employed by the Architect.  The Architect shall at all times have access to the Work wherever it is in preparation and progress.  The Contractor shall provide access so the Architect may perform his functions under his agreement with the Owner.  The Architect will review shop drawings, samples and other construction data, and may, as requested by Owner, render decisions regarding the design and other elements specified by or within the Architect's area of expertise.  Nothing contained in the Contract Documents shall create any contractual relationship between the Architect and the Contractor.  The Architect will not be responsible for the acts or omissions of the Contractor, any subcontractors, any of their agents or employees or any other persons performing any

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 3

0018

of the Work. The Architect will not be responsible for construction means, methods, techniques, sequences or procedures, nor for safety precautions, including requirements of OSHA or programs in connection with the Work, and he will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.

1.6    A "subcontractor" is a person or organization who has a direct contract with the Contractor to perform any of the Work on the Project. A sub-subcontractor is a person or organization who has a direct or indirect contract with a subcontractor to perform any of the Work on the Project. Where the context so requires or suggests, the term "subcontractor" shall also be deemed to refer to sub-subcontractors. The terms subcontractor and sub-subcontractor are referred to throughout the Contract Documents as if singular in number and masculine in gender, and mean a subcontractor or sub-subcontractor, as the case may be, and its respective authorized representatives.

1.7    Contractor agrees, with respect to any items or trades treated as an allowance under the "Contract Sum", as hereinafter defined, (i) to work closely with Owner and the Architect to reduce any allowance quotation submitted by Contractor, (ii) to re-bid major trades and subcontracts when requested by Owner, (iii) to suggest to Owner changes which Contractor believes will result in a lower cost for such allowance items and (iv) to provide Owner and its representatives (including the Architect) with full access to all information underlying Contractor's calculation of such allowance.

1.8    In general, Drawings shall show dimensions, positions, materials and kinds of construction. Specifications shall describe quality of materials, workmanship and methods. Work called for on the Drawings and not mentioned in the Specifications, or vice versa, shall be performed as though fully set forth in both. Work not particularly detailed, marked or specified shall be the same as similar parts that are detailed, marked or specified. Should Contractor become aware of an error in the Specifications or Drawings, or in work by others affecting this Work, the Contractor shall at once notify in writing the Owner who will issue instructions as to procedure. If the Contractor proceeds with the Work based on any such error of which Contractor is aware, of if which in the exercise of reasonable care and diligence should be aware, without instructions from the Owner, the Contractor shall correct, at no cost to Owner, any resulting damage or defects. This includes Specification typographical errors and Drawing notational errors where the intent is doubtful. Figured dimensions on scale Drawings and on full-size Drawings shall govern. In the event of a conflict between the Specifications and the Drawings, regarding material, quality, size, shape or dimension, the Specifications shall govern.

1.8.1    Contractor shall visit the site, familiarize himself with the local conditions under which the Work is to be performed and correlate his observations with the requirements of the Contract Documents.

1.8.2    The Contract Documents are complementary and what is required by any one shall be as binding as if required by all. The intention of the Contract Documents is to include all labor, materials, equipment and other items as provided herein necessary for the proper execution and completion of the Project. It is intended that Work not covered under any heading, section, branch, class or trade of the Specifications shall be supplied if it is required elsewhere in the Contract Documents or is reasonably inferable as being necessary to produce the intended results. Words which have well-known technical or trade meanings are used herein in accordance with such recognized meanings.

1.9    As used herein, the terms "days" shall mean calendar days.

## 2.    Contractor Duties

2.1    The relationship of Contractor with Owner shall be that of an independent contractor. However, Contractor recognizes the relationship of trust and confidence established by the Agreement and agrees to furnish its best skill and judgment and to cooperate with Owner, the Architect and such other consultants as may be engaged by Owner in pursuing the best interests of Owner. Contractor agrees to furnish efficient business

Exhibit A                                                                                              PAGE 4
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

administration and supervision in connection with the Project and to maintain at all times an adequate supply of workmen and materials and to use its best efforts to perform the Work in the best workmanlike manner and in the most expeditious and economical manner, consistent at all times with the best interest of Owner. Contractor shall meet with Owner and Owner's agents, at such time, and from time to time, as Owner requests to review the Work and the progress schedule, and for such other purposes as Owner desires.

2.2    Commencing with the execution of the Agreement, Contractor shall furnish Owner with information concerning costs, availability of materials and equipment, methods of construction and other pertinent information which Contractor may possess or obtain and which may be of value to Owner in completing the Project. Contractor shall report to the Owner and Architect, in writing, any inconsistencies, errors and omissions in the Construction Documents which Contractor may observe or which may come to its attention, and Contractor shall require its subcontractors to report to Contractor or the Owner and Architect, in writing, any such inconsistencies, errors and omissions which they may observe or which may come to their attention.

2.3    Contractor shall provide for the benefit of the Project a competent and skilled field organization containing at all times a sufficient number of personnel to perform the Work and to supervise such performance, including a project manager, project engineers, superintendents and assistants, foremen, engineers and detailers, timekeepers and clerks, cost accountants, material checkers, watchmen, skilled and common laborers and such other workmen and supervisory personnel as the Work may require. Both the number of persons from time to time employed in connection with the Project by Contractor, and the persons so employed, shall be subject to the approval of Owner, which approval shall not be unreasonably withheld. Contractor shall supervise all of the Work, including all Subcontracted Work, and shall prepare all schedules, estimates and reports as reasonably required by Owner.

(a)    Contractor agrees to appoint a "Project Manager" for the Work, which Project Manager shall be responsible for the administration of this Agreement so long as he shall remain in the employ of Contractor or can be retained by Contractor.

(b)    Notwithstanding the foregoing, Contractor agrees that, at the written request of Owner, the Project Manager and any successor(s) thereto shall be replaced by Contractor and another person acceptable to Owner shall be immediately engaged by Contractor as Project Manager. The Owner shall have the same right as it relates to the project superintendent, project engineer, and other supervisory project personnel.

2.4    Contractor shall provide and maintain a sufficient number of temporary buildings for the operation of its field organization and each of its subcontractors, Owner and the Architect, as well as for storage of all materials and housing of machinery, tools and equipment. Contractor shall provide such other temporary construction and facilities as may be required for the Work. Contractor further agrees to utilize staging areas, if designated by Owner.

2.5    Contractor at all times shall provide adequate and sufficient machinery, equipment, tools and supplies as may be required for the Work.

2.6    Contractor shall negotiate and award subcontracts and purchase orders subject to the terms of the Contract Documents. Owner shall have full access and rights to all information concerning the negotiation of all Subcontracted Work, purchase orders and all awards thereof in excess of Five Thousand Dollars ($5,000.00).

(a)    All purchases shall be made utilizing standard written purchase order forms. Each purchase order shall set forth in detail the pertinent data as to its terms and conditions consistent with the Agreement.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 5

0020

(b)     If requested by Owner, Owner shall be furnished with two (2) executed copies of all purchase orders and subcontract awards in excess of $5,000.

(c)     Whenever reasonably requested by Owner in advance of the award of any subcontracts or purchase orders, Contractor shall establish unit prices ("Unit Prices") as part of the subcontracts or purchase orders. Such Unit Prices shall be established for additions as well as deletions.

2.7     Contractor shall have full and complete authority and responsibility for the performance of all Subcontracted Work, and for each of its subcontractors and material suppliers. Contractor shall be fully responsible to Owner for the acts and omissions of each of its subcontractors and material suppliers, and of persons employed either directly or indirectly by them, and for the acts and omissions of Contractor's own employees, which responsibility shall be unaffected by any bankruptcy proceedings affecting any of them or any other inability to perform their obligations. Contractor agrees that no portion of the Contract Documents, nor any contract entered into between Contractor and any of its subcontractors or material suppliers, shall create any direct contractual relationship between any of such subcontractors or material suppliers and Owner.

2.8     Contractor shall purchase all materials and services required for construction of the Project and as otherwise required to perform fully all of the Work.

2.9     Contractor shall cooperate with Owner's fixture contractor(s) in the coordination of the installation of store fixtures without additional compensation.

2.10     Contractor shall cooperate with Owner and Architect at all times in order to obtain all necessary permits, authorizations, bonds and licenses required by any governmental authority having jurisdiction over all or any part of the Work.

2.11     All Work performed for the Contractor by a subcontractor shall be pursuant to an appropriate agreement between the Contractor and the subcontractor (and where appropriate between subcontractors and sub-subcontractors), which agreements shall be subject to Owner's review and approval, and which shall contain provisions that:

(a)     Preserve and protect the rights of the Owner in accordance with the Contract Documents;

(b)     Make such subcontract subject to the terms of the Agreement and the other Contract Documents and require that such Work be performed in accordance with the requirements of the Contract Documents;

(c)     Require submission to the Contractor of applications for payment under each subcontract to which the Contractor is a part, in reasonable time to enable the Contractor to apply for payment in accordance with the Agreement;

(d)     Require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to Subcontracted Work shall be submitted to the Contractor (via any subcontractor or sub-subcontractor where appropriate) in sufficient time so that the Contractor may comply in the manner provided in the Contract Documents for similar claims by the Contractor upon the Owner;

(e)     Waive all rights the Contractor and subcontractor may have against one another or the Owner for damages caused by fire or other perils covered by the property insurance described in the Agreement, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee; and

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 6

0021

(f)       Obligate each subcontractor specifically to consent to the provisions of this Paragraph 2.11. The Contractor shall make available to each proposed subcontractor, prior to the execution of the subcontract, copies of the Contract Documents to which the subcontractor will be bound by this Paragraph 2.11, and identify to the subcontractor any terms and conditions of the proposed subcontract which may materially vary from the terms and conditions of the Contract Documents. Each subcontractor shall similarly make copies of the Contract Documents available to his sub-subcontractors.

2.12      Contractor's Design Responsibilities shall include, but not be limited to the following:

2.12.1     Structural design of all temporary construction, equipment and appliances used in the performance of the Work and not a permanent part thereof, including, but not necessarily limited to, hoisting equipment, cribbing, shoring and the temporary bracing of structural steel, is the sole responsibility of the Contractor. All such items shall conform with the requirements of governing codes and all rules, regulations and orders of all authorities having jurisdiction.

2.12.2     Contractor shall not impose loading upon any part of the Work under construction or upon existing construction upon or adjacent to the site of the Work, in excess of safe limits, or loading which will damage the structural, architectural, mechanical, electrical or other components. All damage which occurs as a result of overloading shall be repaired or the damaged Work replaced at Contractor's sole expense, all as directed by the Owner.

2.13      Coordination by Contractor shall include, but not be limited to the following:

2.13.1     Contractor and each subcontractor shall be responsible for examining all Drawings, all sections of Specifications and all items of addenda and all modifications to inform themselves of requirements for their part of the Work. Owner assumes no responsibility for omission of an indication of an item or part of Work from a location on one Drawing which is indicated on any other Drawing. Specifications are divided into sections for convenience of Contractor. Items or parts of Work specified shall constitute the responsibility of Contractor regardless of where they are located in Specifications.

2.13.2     Contractor shall supervise all measurements taken in the field necessary to insure timely fabrication, delivery, and proper fitting together of the entire Work.

2.14      Contractor recognizes and agrees that certain items to be incorporated into the Work may be purchased and supplied by Owner (hereinafter "FBO Items"). Contractor shall be responsible for coordinating the delivery and receipt of all FBO Items for the Project to be incorporated into the Work. Contractor shall offload, handle, store and as appropriate, incorporate all FBO Items into the Work in accordance with the Contract Documents. In the event particular FBO Items are to be installed, hooked up or commissioned by others, Contractor shall prepare the necessary locations and adjoining elements of the Work to accept such items, and shall coordinate Contractor's activities so as to facilitate installation or incorporation of such FBO Items by Owner's other contractor or supplier.

## 3.0      Owner Duties

3.1      The Owner shall provide surveys showing the boundaries of the property, easements and location of underground utilities.

3.2      The Owner shall obtain and pay for all necessary easements.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 7

0022

3.3     Decisions and approvals required of the Owner shall be rendered with reasonable promptness, so as not to delay the Work.

3.4     The Owner shall provide the Contractor with soil and subsurface reports relating to the Project, to the extent such exist, and Contractor timely requests such information.  Owner shall have no responsibility for the information contained therein or the accuracy thereof.  All soil, geotechnical and related subsurface information is intended for Owner's benefit, and Contractor is not entitled to rely upon such information.  In the event Contractor desires or requires soil, geotechnical or subsurface information, Contractor shall obtain such information at Contractor's sole expense.

3.5     The Owner shall pay all property taxes and property assessments levied against any portion of the Project.

3.6     The Owner shall appoint a Construction Manager as its full-time representative on the Project with whom the Contractor may consult and whose instructions and decisions shall be binding.  No Change Order, Field Order or bulletin shall be valid or effective unless authorized on behalf of the Owner by the following appointed individuals within the limits shown:

Chuck Reed Construction Manager                   Maximum $5,000 - Cumulative monthly
Thomas G. Drapac -- Director Of Construction      Maximum $25,000.00 -- Cumulative Monthly
John B. Mulleady - Vice President -- Construction  Amounts in excess of $25,000.00

3.7     The Owner shall make all payments due Contractor in accordance with the Agreement.

3.8     The Owner's agreement with the Architect may provide for the Architect's obligation to:

        (a)     Produce Construction Documents which comply with all applicable codes and regulations.

        (b)     Review all shop drawings, samples and other submissions of Contractor and its subcontractors for conformance with the design requirements of the Project and for compliance with Construction Documents.  Architect shall not be responsible for checking exact dimensions of shop drawings.

        (c)     Interpret, as requested by Owner, the Construction Documents and coordinate the design and engineering of all systems and subsystems to assure that the architectural, structural and mechanical elements and components will be complete and compatible.

3.9     Owner retains the right to award separate contracts relating to portions of the Project as Owner, in its sole discretion, deems appropriate.  Contractor agrees to sequence and coordinate the Work with such separate contracts at no additional cost to Owner.

3.9.1     Contractor shall afford other contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their portions of the Work, and shall properly connect and coordinate his Work with theirs.

3.9.2     If any part of Contractor's Work depends for proper execution or results upon the Work of any other separate contractor, Contractor shall inspect and promptly report to the Owner any apparent discrepancies or defects in such Work that render it impossible for such proper execution and results.  Failure of Contractor to so inspect and

Exhibit A                                                                                    PAGE 8
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

report shall constitute an acceptance of the other contractor's Work as fit and proper to receive his Work, except as to defects which may develop in the other separate contractor's work after the execution of the Contractor's Work.

    3.9.3   Should Contractor cause damage to the work or property of any separate contractor on the Project, the Contractor shall, upon due notice, settle and resolve such dispute with such other contractor  If such separate contractor sues the Owner or initiates a dispute proceeding on account of any damage alleged to have been so sustained, Owner shall notify Contractor who shall defend such proceedings at Contractor's sole expense; and if any judgment or award against Owner arises from such proceedings, Contractor shall pay or satisfy it and shall reimburse Owner for all attorneys' fees and dispute resolution costs which Owner has incurred.

    3.10  In accordance with Section 12.6 herein, the Owner may, at its election, decide all claims, disputes and other matters in question between the Contractor and the Owner relating to the performance of the Work or the interpretation of the Contract Documents.  Such decision will be rendered in writing within a reasonable time.  The Owner may refer any such claim or dispute to the Architect.  The Owner's decision, or the Architect's, if referred by or from the Owner's Vice President - Construction, shall be final and binding on the parties.

**4.0**    __Contract Sum and Cost of Construction__

    4.1    Notwithstanding anything to the contrary contained in the Contract Documents, Contractor shall fully, timely and completely perform the Work in accordance with the Contract Documents for the Contract Sum.  The Contract Sum may be increased or decreased only as provided in the Agreement.  Contractor shall be entitled to no other compensation for construction of the Work and Contractor's sole remuneration shall be the amount of the Contract Sum.  Notwithstanding anything to the contrary contained in the Contract Documents, the Owner may withhold up to 150% of any payment to the Contractor under the Contract Documents in addition to retained amounts if and for so long as the Contractor fails to perform any of its obligations under the Contract Documents or otherwise is in default under any of the Contract Documents; provided, however, that any such holdback shall be limited to any amount sufficient in the reasonable opinion of the Owner to cure any such default or failure of performance by the Contractor.  In the case of a contract containing a Guaranteed Maximum Price, all cost savings accrue to the Owner.

**5.**    __Changes in the Work__

    5.1    "Change Order" shall mean (i) any written amendment or modification to the Agreement or the other Contract Documents signed by both Owner and Contractor and (ii) any change in the Work ordered by Owner pursuant to Paragraph 5.3 or requested by Contractor and agreed to by Owner pursuant to such provision.

    5.2    "Field Order" shall mean a written instruction by the Owner instructing the Contractor to perform certain activities and to incorporate such labor, services, materials and equipment into the Work in accordance with Paragraphs 5.3 and 5.4 below.  Field Orders may be issued by the Owner prior to agreement on adjustment, if any, in the Contract Sum or Contract Time.

    5.3    Owner reserves the right to order in writing alterations, additions to or deletions from the Work from the Contract Documents at any time prior to completion and acceptance of the Work by Owner.  Contractor shall comply with any and all such Field Orders, or as appropriate, Change Orders.  Contractor may request or propose changes in the Work; provided, however, Owner shall be under no obligation to agree to or accept any such requested or proposed change.  Contractor shall not make any change or deviation from the Construction Documents without Owner's prior written approval, and Contractor at all times shall be fully liable to Owner for any unauthorized changes in or deviations from the Construction Documents.  Except where expressly provided in the Agreement, no Change Order shall be made, nor shall any adjustment in the Contract Sum or Contract Time

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 9

0024

be recognized hereunder, unless Contractor shall have received a written Change Order or Field Order executed by Owner prior to making any such change.

5.4    In the event it is undetermined or it is disputed whether an order by Owner with respect to the Work constitutes a change in the Work, and thus, whether a Change Order is appropriate, Owner reserves the right to issue a Field Order concerning such labor, services, materials and equipment, and Contractor shall, without delay, fully and completely take, or cause to be taken, all such actions necessary to incorporate such labor, services, materials, and equipment into the Project.  Contractor's compliance with a Field Order is without prejudice to Contractor's rights, provided that Contractor complies with all requirements of the Contract.  In the event Contractor believes a Field Order, or some part thereof, constitutes a change in the Work, Contractor shall timely and completely follow the procedures associated with Change Orders set forth herein.  In no event shall Contractor delay or stop the Work or cause any adverse impact to the Contract Schedule as a result of questions or disputes relating to the appropriateness or necessity for a Change Order.

5.5    Whenever the necessity for a change arises, and when so ordered by Owner in writing, Contractor shall take all steps necessary to halt any Work in the area of the change that might be affected by the change. Changes in the Work shall be performed fully and completely and in accordance with the Drawings and Specifications, except for the deviations specifically called for by the Change Order.  Materials utilized in the changed Work shall be as specified in the Contract Documents insofar as the Contract Documents do not conflict with the conditions set forth in the Change Order.

5.6    Whenever a Field Order directing work is received by Contractor, or Contractor requests a change, Contractor shall prepare and submit to Owner a full and completely detailed estimate of the cost of the Work for such direction or change and, as applicable, an estimate of the additional time required by Contractor within which to perform which would extend the Date of Substantial Completion and/or of the reduction in costs and time due to the omission of Work which was to have been performed for the Contract Sum.  Estimates of costs for added Work shall be based upon the cost to Contractor for such Work at market values current at the time the directed or changed Work is requested, unless otherwise covered by Unit Prices.  Estimates of the amount to be deducted from the Contract Sum due to the omission of Work shall be based upon the cost of the Work to Contractor for the labor, materials and equipment which would have been used on such Work, using the same values thereof at the time the Contract Sum was established, unless otherwise covered by Unit Prices.  Contractor shall include no more than Seven percent (7.0%) of the cost of such Work as full compensation for Contractor's field overhead, general conditions, main office overhead and profit.  The same percentage used for Contractor's field overhead, general conditions, main office overhead and profit shall apply to both additive and deductive change orders.

5.7    The estimates to be provided by Contractor shall contain the following information:

(a)    For any portion of the directed or changed Work which shall be performed by a subcontractor, Contractor shall furnish Owner with a detailed estimate of the costs to the subcontractor for labor, materials and equipment to be used, and any other applicable costs charged by such subcontractor, including a markup by the subcontractor not to exceed fifteen percent (15%) on all direct labor and materials purchased.  Subcontractor will be allowed five (5%) markup on all sub-subcontracted work only to cover the subcontractor's supervision, general conditions, general overhead and profit, unless otherwise approved in writing by Owner prior to award of the subcontract.

(b)    Sub-subcontractors' charges shall be limited to the terms of the preceding paragraph. A sub-subcontractor's markup on a lower tier sub-subcontractor's total charges shall not exceed five percent (5%) of the cost of such charges, unless approved in writing by Owner prior to award of the subcontract and shall specifically not include any other additional markup for overhead and profit.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 10

0025

5.8    Except as otherwise provided below, Contractor's quotations, supported by detailed estimates, shall be submitted within ten (10) days after the Field Order directing the work or the change is received by Contractor, or Contractor requests a change. Contractor's quotation shall include the period of time allowed for approval by Owner, which shall be not less than ten (10) days. Any change which the Contractor feels will require additional time extension to achieve the dates set forth in Paragraph 7.2 shall be handled pursuant to Paragraph 7.5 herein as it relates to the requested time extension.

5.9    Changes in the Work required as a result of imminent peril to persons or property, discovery of errors in the Construction Documents requiring immediate clarification in order to avoid a serious work stoppage, changes of a kind where the extent of the Work involved cannot be determined until completed, and unexpected or unforeseen site conditions or changes under any other circumstance when deemed necessary by Owner may be authorized by Owner upon written notice thereof to Contractor or, in the case of imminent peril to persons or property, orally, where it is obvious that the change must be ordered immediately. Contractor shall commence performance of any such change immediately upon receiving such authorization. After commencing any such change, Contractor shall submit a detailed estimate within the same time and in the same manner set forth above for ordinary changes. Contractor also shall submit time and materials records for such Work until an agreement is reached upon the appropriate adjustment to the Contract Sum.

5.10    In the event that Owner and Contractor fail to agree on any adjustment in the Contract Sum for any change in the Work pursuant to a Change Order or a clarification of the Construction Documents which Contractor claims is a Change Order, Contractor, upon issuance of a Field Order from Owner, shall immediately proceed to perform the Work which is the subject of the Field Order or a Change Order dispute or discussion. Contractor shall create and maintain for each day's work a daily work sheet containing a detailed summary of the actual costs of the labor, materials and equipment used in the Work which is the subject of the Field Directive, in a form to be approved by Owner. Contractor similarly shall indicate all savings in labor, materials and equipment, as well as supervisory personnel, in connection with that portion of the Work which is the subject of the Field Order. Where Contractor performs Work subject to a Field Order at locations away from the job site, in lieu of such daily work sheet, Contractor shall furnish a detailed statement of labor, material and equipment used on such Work. In addition, upon completion of such Field Order Work, Contractor shall furnish Owner with a detailed time and materials statement of the cost of the Work as a result of such Field Order.

5.11    All of the information to be provided by Contractor pursuant to this Section 5 shall be provided in such detail that quantity, unit of work, labor, material, equipment and incidentals required to perform the Work are clearly identified and itemized either in assembly or unit prices, or as further the Owner may reasonably require. All statements and work sheets to be provided by Contractor with respect to changes in the Work shall be signed by Contractor, who shall certify, warrant and represent that to the best of Contractor's knowledge the information is true and correct, but such certification shall not preclude subsequent adjustment based upon a later audit.

5.12    For any additive changes in the Work, Contractor shall be entitled only to such adjustment in time by which the Date of Substantial Completion (as defined herein) is delayed due to performance of the added Work. Each estimate for an addition to the work submitted by Contractor shall state the amount of additional time that Contractor considers that the Date of Substantial Completion will be delayed as a result of the requested change. Failure to request additional time when submitting such estimates shall constitute a waiver by Contractor of any right to claim subsequently any adjustment in the time for the Date of Substantial Completion based upon such changed Work. In each instance the request for additional time shall include appropriate credit for time saved as a result of changes in or deletions to the Work. Appropriate changes in time for deductive changes to the Work shall be handled in the same manner. Contractor nonetheless shall have the right to request a Change Order extending the Date of Substantial Completion when the cumulative effect of several Change Orders, by the nature

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 11

0026

of the Work described therein, reasonably causes the time of performance to exceed the aggregate of the time extensions already allowed in the same Change Orders. It is the Contractor's obligation to demonstrate to the Owner how any requested time extension has adversely impacted the Project's Critical Path Schedule. Only time extensions which have been demonstrated to adversely impact the Project's Critical Path Schedule shall constitute a valid time extension for extending the Date of Substantial Completion.

5.13   The cost or credit to the Owner resulting from a change in the Work shall be determined in one or more of the following ways:

(a)   By mutual acceptance of a sum properly itemized and supported by sufficient substantiating data to permit evaluation;

(b)   By unit prices stated in the Contract Documents or subsequently agreed upon;

(c)   By cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

(d)   If none of the methods set forth above in 5.13(a), 5.13(b) or 5.13(c) is agreed upon, the Contractor, provided he receives a Field Order, shall promptly proceed with the Work involved. The cost of such Work shall then be determined by the Owner on the basis of the reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Sum, a reasonable allowance for overhead and profit not to exceed the amounts set forth in Paragraphs 5.6 and 5.8 above, as appropriate. In such case, and also under 5.13(c) above, the Contractor shall keep and present, in such form as the Owner may prescribe, an itemized accounting together with appropriate supporting data for inclusion in a Change Order. All indirect costs whether incurred on or off the Project Site shall be included in the Contractor's overhead. Such indirect costs include, without limitation, insurance, taxes, bonds, salaries of Contractor's personnel unless the Work is performed with Contractor's own forces, local travel, and expenses of Contractor's principal and branch offices.

5.14   In the event Owner and Contractor are unable to reach agreement on issues relating to or concerning Field Orders, Change Orders, request for a Change Order, or any other aspect of the Work, such dispute and issues shall be decided in accordance with the provisions of Paragraph 12 herein.

**6.   Payment By Owner**

6.1   Owner shall pay the Contract Sum in the manner and at the times hereinafter specified in the agreement. All applications for payments must be submitted on Owner's payment forms and be accompanied by waivers of claims and liens from Contractor and all "major" subcontractors and material suppliers for the portion of Work certified to be in place for which payment has been made. "Major" subcontractors and material suppliers will be regarded as those whose contract sum exceeds Ten Thousand Dollars ($10,000.00) for their respective portion of the Work.

6.2   On or about the 25th of the month the Contractor shall deliver to the Owner for its approval, , an itemized written statement on forms approved by Owner showing (i) the actual cost and the amount which is due and payable with respect thereto for Work completed and the projection of the work to be completed to the end of the month (in place and incorporated into the Work) and materials stored at the Project site or at Owner approved off-site storage areas, as itemized per Contractor's schedule thereof, during said month less all applicable retentions therefrom, (ii) the percentage of the Work completed during such month and the total percentage of the Work completed through such month, and (iii) an updated progress CPM schedule for the Work.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 12

0027

6.3    On or about the twenty-fifth (25th) calendar day of each month, Owner shall remit to Contractor with respect to the preceding month that portion of the Contract Sum that the Owner approved in its "Certificate of Payment" and excluding from such amount: (i) a retention equal to ten percent (10%) of the approved amount of such Work (including the General Contractor Work, the Subcontracted Work) as defined herein, (ii) any amount in excess of the cost of the Work performed by Contractor during such month, (iii) any portion of the cost of the Work for such month to the extent it exceeds the cost of the Work attributable to the percentage of the Work completed during such month, and as applicable, (iv) any additional amounts Owner is entitled to withhold pursuant to the terms of the Agreement.

6.4    Contractor shall at all times make available to Owner records and invoices of all disbursements made by Contractor for materials, labor, payments to subcontractors and other expenses incurred by Contractor. To the extent any discounts, rebates or other credits are due Owner on account of Owner's prepayments or otherwise, all such discounts, rebates and other credits shall appear in said statements as credits due to the Owner.

6.5    Owner may withhold payment to Contractor to the extent necessary to protect Owner upon the occurrence of any one or more of the following events:

(a)    any failure of Contractor to comply fully with any requirement of the Contract Documents, including any failure of Contractor to make any payment to any subcontractor or material supplier without cause;

(b)    any failure of Contractor to substantiate that previous payments made by Owner have been applied as provided by this Section 6, regardless of whether Contractor has a legitimate dispute with a subcontractor or material supplier;

(c)    the filing, delivery or recordation of any claim, lien, stop notice or similar matter against Owner, Contractor, any subcontractor, sub-subcontractor, materials supplier or the Project, or the existence of any allegation or dispute concerning payment or performance between any of such parties, notwithstanding any failure of any of them to file, deliver or record any notice or similar required by law; provided, however, the amount which Owner may withhold pursuant to this subparagraph (c) shall be limited to payments to Contractor for General Contractor Work and payments with respect to the Work performed by the claimant involved, subject to the further limitation that the amount so withheld shall not exceed the greater of (i) the amount(s) claimed or in controversy or (ii) the face amount(s) of any and all bonds posted by the Owner to release any mechanics' or similar liens filed against the Project or any part of the Owner's property, plus twenty-five percent of such face amount(s) as reasonable attorneys' fees to defend any actions on such bonds; and provided further that if Contractor provides a bond for the benefit of Owner pursuant to Paragraph 8.5 hereof with respect to the amount claimed or in controversy, the Owner will not withhold payments with respect thereto; or

(d)    any damage caused to any other contractor or subcontractor by reason of the negligent acts of Contractor, or persons or entities for whom Contractor is responsible.

7.    **Contract Time and Schedule**

7.1    Contractor shall commence the Work promptly after receipt of a Letter of Intent/Notice to Proceed in the form set forth in Exhibit F attached hereto issued by Owner and shall prosecute the Work diligently to completion. The Work (including the relevant portions thereof referred to below) shall be completed on the date(s) agreed upon by Owner and Contractor as set forth below. The "Date of Substantial Completion" of the

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 13

0028

Work is the date when (i) the Work is sufficiently completed, in accordance with the Construction Documents, as modified by any Change Orders, so that the Owner can fully occupy the Project for the use for which it was intended, (ii) if the Project is located in a state which provides for the filing of a notice of completion or similar notice, a valid notice of completion or similar notice may be recorded, and (iii) the local governmental authority having jurisdiction over the Project has issued its final certificate of occupancy for all of the Work. The "Date of Final Completion" of the Work is the date when any and all corrective Work ordered by the Owner, after a semi-final inspection, has been consummated to the Owner's satisfaction. The "Certificate of Final Completion" shall be a document issued by the Owner after the Date of Final Completion and after final inspection has been made and shall not be unreasonably withheld. Notwithstanding the above, Owner may allow minor corrective Work to be completed after the Certificate of Final Completion is issued. Issuance of the Certificate of Final Completion fixes the Date of Final Completion and must be issued prior to final payment by the Owner, with exceptions contained in this Agreement.

7.2     Ten (10) days following Owner's notice to proceed, Contractor shall provide to Owner the Critical Path Schedule, showing timely completion of the Work as required by the Agreement. Upon receipt of the initial Critical Path Schedule, Owner may accept same as submitted or reject and note deficiencies. If the schedule is rejected, the deficiencies noted shall be corrected and a new schedule shall be submitted within ten (10) days. In any case, the complete Critical Path Schedule must be approved by Owner prior to any payments being made. The Critical Path Schedule shall be in the form of a network using Critical Path Methodology (CPM), clearly showing construction activities, dependencies and durations. The critical path activities shall be highlighted and float time for non-critical activities shall be listed. Longer duration activities shall be broken into sub-activities when the Work can be completed in phases (i.e., south half, north half, etc.). Contractor will be allowed flexibility in schedule logic and content; however, the following activities must be included in all cases: (a) award of contract; (b) pad delivery and move on; (c) pour foundations; (d) underground utilities; (e) pour slabs (phase); (f) exterior walls (phase); (g) columns; (h) floor and roof structure (phase); (i) roof decking; (j) roofing (drying); (k) HVAC duct work; (l) fire sprinkler piping; (m) interior stud walls (phase); (n) drywall; (o) lathe and plaster (phase); (p) painting (phase); (q) delivery of long lead materials; (r) contract dates; and (s) anticipated weather delays. In the event Contractor falls behind the Critical Path Schedule, or otherwise fails to progress properly towards timely completion of the Work, Owner shall have the right to require Contractor, without cost or expense to Owner or change in the Contract Sum, to take all steps necessary to improve progress, including, without limitation, overtime work and additional days, and to submit for Owner's approval a revised Critical Path Schedule showing the manner in which the originally scheduled progress will be restored and the Work timely completed as required by the Agreement. Contractor shall keep the Critical Path Schedule current to reflect changes caused by delays permitted hereunder. A Critical Path Schedule showing the latest schedule and actual status of the Work shall, in any case, be submitted on a monthly basis with the pay request.

7.3     Should Contractor, in the opinion of Owner, fail, refuse or neglect to supply a sufficient number of workmen, adequate equipment, or to deliver materials with such promptness as to prevent any delay in the progress of any portion of the Work resulting in Contractor's (or any of its subcontractors' or suppliers') failure to prosecute the Work to completion in a timely manner, then, in addition to any and all other rights and remedies of Owner, Owner shall have the right upon five (5) days' prior written notice, to direct Contractor to furnish additional labor, including overtime, and to expedite delivery of materials which shall be sufficient to accelerate and complete the Work, and the Contract Sum shall not be increased on account of such direction by Owner. Nothing contained herein shall be deemed to preclude Contractor's right, following completion of the Work, to contest by appropriate proceedings any determination by Owner that additional workmen or expedited deliveries were appropriate. Should Contractor neglect or refuse to comply with such directive, Owner shall have the right (but not the obligation) to obtain and pay for such goods and services directly, and the Contract Sum shall be reduced in a like amount, and, in addition thereto, Owner may exercise any other right or remedy granted by this Agreement (including termination hereof for cause) or granted by law. The payment thereof by Owner pursuant to the foregoing shall not be deemed to cure or waive Contractor's default.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 14

7.4     If Contractor is delayed at any time in the progress of the Work by (a) any act or omission of Owner, the Architect or any separate contractor or consultant employed by Owner (but not resulting from or based on any default by Contractor or any of its subcontractors, or any failure by Contractor or its subcontractors to comply with the Contract Documents); (b) labor disputes (provided same are not occasioned by Contractor's failure to pay its employees or subcontractors); (c) fire, extraordinarily severe inclement weather, earthquake, extraordinarily unusual delay in transportation, inability to obtain necessary materials, equipment or labor or by any act or lack of action by governmental authority through no fault of Contractor; or (d) any cause beyond the reasonable control of Contractor and its subcontractors, then the dates set forth in Paragraph 7.2 may be extended for a period equal to the time by which the completion of the Work or the relevant portions thereof is delayed by reason of such causes, provided in each instance that the Critical Path Schedule is affected and a timely and proper claim is made as set forth in Paragraph 7.5 below.  For purposes hereof, "extraordinarily severe inclement weather" shall mean weather patterns that may not reasonably be anticipated during the period of construction of the Work, and which at a minimum, exceed the thirty (30) year return interval for such events according to the National Oceanographic and Atmospheric Administration (NOAA) for the Project area.

7.5     All claims for extensions of time shall be made in writing to Owner not more than ten (10)  days after the occurrence of the cause for delay of which Contractor is aware, or in the exercise of reasonable care should have been aware, by which Contractor seeks to extend the dates set forth in Paragraph 7.2 pursuant to Paragraph 7.4 above.  Failure to request such extensions of any such dates by Contractor in accordance with the foregoing shall constitute a waiver of any right to claim subsequently any adjustment in any such dates based upon any of such causes.  It will be the Contractor's obligation to demonstrate to the Owner how any requested time extension has adversely impacted the Project's Critical Path Schedule.  Only time extensions which have been demonstrated to impact the Project's Critical Path Schedule shall constitute a valid time extension for extending such date.

7.6     In the event that Owner desires to accelerate Contractor's performance of the Work (for reasons other than those set forth in Paragraph 7.3 above) with greater speed than contemplated by Paragraph 7.2, Contractor shall, upon written notice thereof from Owner, employ overtime labor and expedite delivery of materials as directed by Owner.  Such notice shall be deemed a Change Order and the Contract Sum shall be adjusted on account of such Change Order as provided elsewhere herein.

7.7     Notwithstanding the fact that a dispute, controversy or question shall have arisen relating to (i) the interpretation of any provision of the Agreement, (ii) the performance of any Work, (iii) payments which Owner claims it is entitled to withhold pursuant to Paragraphs 4.1 or 6.5 hereof or (iv) otherwise, the Contractor agrees that it will not directly or indirectly stop or delay any Work required to be performed or stop or delay the delivery of any materials required to be furnished hereunder, pending the outcome of such dispute or controversy.

7.8     Owner shall have the right to occupy portions of the Project as and when completed, but prior to Date of Final Completion, only if Owner accepts such portions as substantially complete (subject to punch list corrections) and Owner agrees to the commencement of warranties and guarantees as to such occupied portions.

**8.     Contractor's Defense, Indemnification, Warranties and Guarantees**

8.1     Contractor agrees to indemnify and hold harmless Owner and, in cases where Owner is a tenant of the real property on which the Project is being constructed, Owner's landlord, their subsidiaries and affiliated companies and their respective officers, directors, agents, representatives, consultants and employees, from and against any and all loss, liability, claim, damage, demand, cost and expense of every kind and nature whatsoever (including reasonable attorneys' fees) arising out of or resulting from the performance of the Work, or caused by any act or omission on the part of Contractor, any of its subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether such act is caused in part by a party indemnified hereunder.  Contractor shall have no obligation to indemnify or hold harmless Owner or

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 15

0030

Owner's landlord, their subsidiaries and affiliated companies and their respective officers, directors, agents, representatives, consultants and employees from losses, liabilities, claims, damages, demands, costs and expenses caused by the proven sole negligence of such entity.

8.2     Contractor agrees that if any legal action or other proceeding of any nature is brought against Owner, Owner's landlord where applicable, or Contractor, or any of their respective officers, directors, agents, representatives, consultants or employees, the Architect, or any of them (whether or not any other party defendant shall be joined in the action), because of any of the foregoing matters against which Contractor agrees to indemnify Owner or Owner's landlord, Contractor shall at its own cost and expense, settle or defend such action, paying all costs, expenses and attorneys' fees involved therein. Notwithstanding the foregoing, in any action of the nature described above in which Owner or Owner's landlord is named as a party, Contractor agrees that its selection of legal counsel in connection with any such action shall be subject to Owner's prior written approval, and Owner shall have the right to participate in the defense of any such action at no cost to Owner. The obligations of Contractor under this paragraph shall not extend to the liability of the Architect, its agents, consultants or employees, arising out of (i) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, Drawings or Specifications, or (ii) the giving of or the failure to give directions or instructions by the Architect, its agents or employees, provided that the giving or failure to give any such directions or instructions is the primary cause of the injury or damage, unless Contractor in exercise of reasonable care should have known, as appropriate, that the giving of such instruction was improper or that such direction or instruction should have been given.

8.3     Contractor shall defend all suits and claims for infringement of any patent, copyright, trademark or other intellectual property rights and shall hold the Owner and Owner's landlord free and harmless from and against any and all loss, liability, claim, damage, demand, cost and expense on account thereof, except that Owner, or Owner's landlord where applicable, shall be responsible for all such loss, liability, claim, damage, demand, cost and expense when a particular design, process or product of a particular manufacturer is specified by Owner. If Contractor has reason to believe that the design, process or product specified by Owner is an infringement of a patent, Contractor shall be responsible for such loss unless Contractor promptly provides such information in writing to the Architect and Owner.

8.4     Owner, or Owner's landlord where applicable, shall have no obligation to pay or reimburse Contractor with respect to any of the costs and expenses incurred by Contractor in accordance with paragraphs 8.1 through 8.3 above. In the event any such loss, liability, claim, damage, demand, cost or expense is asserted against or incurred by Owner or Owner's landlord or their agents, representatives, consultants, or employees, or the Architect in connection with the foregoing, Owner, in addition to all other rights and remedies it may have with respect thereto, may withhold and offset from any payment then or thereafter due to Contractor under the terms of this Agreement an amount sufficient in Owner's judgment to protect and indemnify against any such matter.

8.5     In addition to Contractor's warranty and any guarantees or warranties of Contractor set forth herein or in any other Contract Documents, all of the Work, including all of the materials and equipment incorporated therein, is guaranteed by Contractor against failure due to defects in workmanship, materials and improper installation for a period of one (1) year following the date on which the completed Work is accepted by the Owner or the Date of Substantial Completion, whichever is earlier, unless in each case a longer period of time is specifically provided for in the Contract Documents or is implied by law ("Contractor's Guarantee"). If, within such one year period, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. This period of one year shall be extended with respect to portions of Work first performed after the Date of Substantial Completion by the period of time between the Date of Substantial Completion and the actual performance of the Work. This

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 16

0031

obligation shall survive acceptance of the Work under the Contract and termination of the Contract. The Owner shall give such notice after discovery of the condition.

8.5.1     Any Work performed following the issuance of the Certificate of Final Completion and the replacement of any Work, including any of the materials and equipment incorporated therein, pursuant to the foregoing guarantee of Contractor, also shall be unconditionally guaranteed in accordance with the foregoing for a period of one (1) year after completion of replacement, as the case may require, of each such item of Work.

8.5.2     Nothing contained in Paragraphs 8.5 and 8.5.1 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the time period of one year as described in Paragraphs 8.5 and 8.5.1 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

8.5.3     Contractor shall cause all guarantees and warranties from subcontractors, materialmen and equipment suppliers to be made directly to Owner as well as Contractor and Contractor shall furnish Owner with written evidence of such guarantees and warranties. All of such guarantees and warranties (including Contractor's warranties and guarantees under the Contract Documents) shall include the cost of all labor, materials and other costs required to replace defective, unsound or improper Work and materials, including damage to adjacent equipment or materials and the replacement or refinishing of same. As part of the Work, Contractor promptly shall enforce all of said guarantees and warranties for Owner's benefit if Owner shall request Contractor so to do. Neither payment hereunder, including the final payment to Contractor, nor Owner's use and occupancy of the Project or any part thereof, shall release Contractor from liability to Owner for workmanship, materials and equipment incorporated into the Work which are found to be defective, unsound or improper or otherwise covered by any such guarantees or warranties.

8.6     Contractor warrants to Owner and Architect that the Work will be free from defects not inherent in the quality required or permitted and that the Work will conform with the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved or authorized, may be considered defective. Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by Contractor, improper or insufficient maintenance, improper operation or normal wear and tear under normal usage.

8.7     The Contractor's warranties (including Contractor's Guarantee) shall cover all Work in the Contract Documents, whether or not any portion or trade has been assigned or sublet. In the event any portion of the Work is performed by assignees or subcontractors, their written warranty to Owner covering their respective portions of the Work for the periods required shall be collected by Contractor, who shall deliver them, together with his own warranty, to Owner. Assignees' and subcontractors' warranties shall expressly provide that the same may be enforced directly by Owner, if he so elects, and shall run concurrently with the Contractor's warranties. All such warranties shall be secured by the Contractor's performance bond when such bond is required. No warranties by subcontractors shall in any way relieve Contractor of his warranty obligations or obligate Owner to proceed under any subcontractor warranty in lieu of or before proceeding against Contractor's warranties.

8.8     Where any material, process or method of operation or application procedure is required which, in the opinion of Contractor, would render the finished Work unsuitable for the required warranty, then before any Work is started, such matter shall be objected to in writing to the Owner stating reasons therefore and recommending a substitute so that the Work, when completed, will be suitable for the required warranty. In the event the Contractor's

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 17

0032

recommendation is approved, the Work shall be installed in accordance therewith and at no change in the Contract Document price unless otherwise authorized.

8.9    Defective materials, equipment and workmanship occurring within any warranty period may be repaired where such repair produces results in conformity to Contract Documents requirements relating to appearance, performance and reliability.  Where the nature of the defective materials, equipment and workmanship is such that acceptable results cannot be obtained by repair, such defective items shall be removed and replaced with new materials, equipment and workmanship complying with Contract Documents.  All remedial Work shall be subject to Owner's approval.

8.10    Payment and performance bonds shall be provided by Contractor at the request of Owner.  It is expressly understood that the cost of the bond is to only include the direct cost, to the Contractor, from the bonding company; those items not to be included in bond cost are mark-up and/or general administrative expenses of the contractor's home office.

8.11    Contractor shall not have, and hereby waives, any right to file any mechanic's lien, or claim of any sort or kind, against the premises of Owner or any part thereof, unless Contractor shall have given Owner ten (10) days' prior written notice of Contractor's intention to file such lien or claim and a statement of the basis of such lien or claim.  Contractor agrees that providing such notice shall be a condition precedent to its rights to file any such lien or claim.  Contractor shall not permit or suffer any mechanic's or other similar lien filed by any subcontractor, material vendor, laborer or materialman to remain upon the premises of Owner and shall satisfy and have discharged any lien so filed within fifteen (15) days of its filing or such earlier period as may be necessary to avoid enforcement thereof.  Contractor shall have the right to bond off or provide other satisfactory security against any unreasonable and improper lien which Contractor desires to contest.  Contractor agrees to indemnify and hold Owner, and Owner's landlord where applicable, free and harmless from and against any and all loss, liability, claim, damage, cost and expense from any lien on the Project which is placed on or remains on the Project in connection with the Work, or any stop notice or similar action on the part of any subcontractor, material vendor, laborer or materialman, and Contractor shall at its sole cost and expense save and defend Owner, and Owner's landlord where applicable, from any and all cost and expense in connection therewith.  In the event Contractor should neglect or refuse to cause any such mechanic's or other similar lien promptly to be discharged or bonded off as required above, Owner, after giving Contractor seven (7) days' written notice of its intention so to do, shall have the right, but not the obligation, to bond off such lien and such payment incurred by Owner shall be credited to the account of the Owner.  Owner shall be entitled to offset one hundred percent of the amounts so bonded, plus twenty-five percent of such amounts as reasonable attorneys' fees, against payments thereafter becoming due to Contractor hereunder.  Owner may exercise any other right or remedy granted by the Agreement (including termination hereof for cause) or granted by law.  The bonding off of any lien by Owner pursuant to the foregoing shall not be deemed to cure or waive Contractor's default.

8.12    Should Contractor neglect or refuse to pay promptly when due any legitimate or undisputed expense incurred by it pursuant to the Agreement, Owner, after giving Contractor seven (7) calendar day's written notice of its intention so to do, shall have the right but not the obligation, to pay such expense directly and such payments shall be credited to the account of the Owner.  Owner shall be entitled to offset the amounts so paid against payments thereafter becoming due to Contractor hereunder.  Owner may exercise any other right or remedy granted by the Agreement (including termination hereof for cause) or granted by law.  The payment of any expense by Owner pursuant to the foregoing shall not be deemed to cure or waive Contractor's default.  Owner will not make any such payment, however, without prior consultation with Contractor or an explanation of Contractor's reason for refusing to pay promptly such expense as and when due.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 18

0033

9.    **Insurance**

9.1    Prior to the commencement of any Work or the performance of any service hereunder by Contractor or any of its subcontractors, Contractor shall procure the following insurance coverage and maintain such insurance in full force and effect until all of the Work is completed and accepted for final payment, unless otherwise specified herein. All such insurance shall be for the benefit and protection of Owner and Contractor and shall name Owner, its subsidiaries and affiliated companies, and their respective officers, directors, Owner's landlord and any party who owns a fee interest in and to the real property to be improved by the Project, or any construction lender for such project, as an additional insured. All insurance companies, the form of all policies and the provisions thereof shall be subject to Owner's prior approval. The insurance to be procured and maintained by Contractor as hereinabove provided shall consist of the following:

(a)    Statutory worker's compensation and occupational disease insurance and employer's liability insurance, as required by the Worker's Compensation Act of the state in which the Project is located, and employer's liability insurance with minimum limits of not less than $500,000.

(b)    Commercial General Liability Insurance, such policy to include the following provisions:

(i)    Coverage and Limits of Liability:

General Aggregate Limit (other than products/completed operations).............................................. $4,000,000
Products Completed Operations Aggregate Limit .... $4,000,000
Personal & Advertising Injury Limit......................... $4,000,000
Each Occurrence Limit.............................................. $3,000,000
Fire Damage Limit (any one fire)............................... $100,000
Medical Expense Limit (any one person)....................... $5,000

(ii)    Designated Construction Projects General Aggregate Limit

(iii)    Products-Completed Operations Insurance to remain in force for a minimum of two years after completion of the job, or the length of the guarantee, whichever is greater.

(iv)    Contractual Liability:

(1)    Specifically insuring the liability assumed under the Contract Documents entered into between the Contractor and Circuit City Stores, Inc.

(2)    With respect to the contractual obligation of Contractor to provide liability insurance to Circuit City Stores, Inc., this policy shall apply to any loss or claim before any contribution by the insurance of Circuit City Stores, Inc.

(v)    XCU Coverage (delete exclusions if present)

(vi)    Waiver of Subrogation in favor of Owner

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 19

0034

(vii)    Coverage to be written on an occurrence basis policy form.

(viii)    Primary Insurance - This policy is to be primary coverage, and any other insurance in force for the Owner shall act as excess coverage only and not contribute in the payment of any claim made hereunder to the extent of the limits of liability afforded hereunder.

(ix)    Notice of Occurrence - The failure to give timely notice to the insurance company of any occurrence giving rise to a claim hereunder shall not be construed as late notice unless an executive officer of the named insured had actual knowledge of the occurrence and then failed to notify the insurance company in accordance with the policy conditions.

(x)    Cancellation - In the event of cancellation, material change or non-renewal, sixty (60) days advance written notice by certified mail will be sent to Owner and Contractor.

(xi)    The insurance shall not contain any exclusions other than exclusions forming a part of the standard liability insurance policy as currently in use by the Insurance Services Office, except that all exclusions otherwise contained therein that are in conflict with the conditions and coverage as required by this Agreement shall be void; provided, however, in no event shall such insurance prohibit cross-liability of other insured parties covered by such insurers (severability of interest).

(c)    Commercial Automobile Liability - Including all owned, non-owned and hired vehicles, with limits of liability not less than $1,000,000 combined single limit (CSL).

(d)    Umbrella Excess Liability with limits of not less than $1,000,000 providing coverage over primary insurance coverage, written on a following form basis.

(e)    Such other insurance and coverage as Owner may reasonably request.

(f)    Certificates of Insurance applicable to this section, shall be provided as follows on AIA Document G705 or Accord Form 25-S, Accord Form 27, as applicable, and shall specifically set forth evidence of all coverage required by this Paragraph 9.1 and shall reference job site by location and address.

(i)    Certificate or signed binder to be issued and addressed to:

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  Construction Department

(ii)    Certificate must provide sixty (60) days notice of any material change or cancellation.  Any wording limiting notice to "best efforts, endeavor to advise, not responsible to notify, etc." WILL RESULT IN CERTIFICATE BEING REJECTED.

(g)    In the event that Contractor fails to procure or maintain any of the insurance required pursuant to this Section, Owner, at its election, but without any obligation to do so, may obtain such insurance for the benefit of Owner and Contractor and may either reduce the Contract Sum in a like amount or deduct the cost thereof from any payment then or thereafter due to Contractor.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 20

0035

9.2    Contractor shall obtain builder's risk and physical damage insurance naming Owner as an additional insured and Loss Payee, for the following items on standard "All Risk" or, "Cause of Loss – Special Form", forms, subject to the standard terms, conditions, and exclusions therein set forth, in an amount not less than One Hundred Percent (100%) of the completed value thereof, subject to standard exclusions and deductible limitations satisfactory to Owner (not to exceed $10,000), but any net loss incurred by Contractor as a result of such standard exclusions or deductible limitations shall be reimbursed by Owner. Such insurance shall include coverage at least with respect to the following:

(a)    The structures upon and in which the Work shall be performed (to the extent that it includes the premises hereinabove described).

(b)    All insurable items of the Work and materials once such materials are incorporated into the Work, are located upon the premises of the Project or are located at off-site storage areas approved by Owner.

(c)    Owner, Contractor, and all subcontractors waive all rights each against the others for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 9.2, except such rights as they may have to the proceeds of such insurance. Similar waivers will be included in all subordinate contracts of Owner, Contractor and subcontractors where legally required for validity.

(d)    Such insurance shall contain a loss payable endorsement in favor of the Owner or its order, as their interests may appear.

(e)    Valuation - Shall be the replacement cost at time of loss with new material of like kind and quality.

(f)    Subrogation - In all cases of loss, all rights of subrogation by the insurance company for loss caused by Owner, Contractor or any subcontractor are waived.

(g)    Cancellation - In the event of cancellation, material change or non-renewal, sixty (60) days advance written notice by certified mail will be sent to the Owner and contractor.

(h)    Transit coverage applicable to Work and Materials transported to and from any off-site storage area.

9.3    All sums insured under Contractor's property insurance shall be made payable jointly to Contractor and Owner as insureds, subject to the requirements of any applicable mortgagee clause. The Contractor shall pay the subcontractors their proportionate shares of insurance proceeds to which the Contractor is entitled hereunder.

9.4    Prior to obtaining the insurance required by Paragraph 9.2, Contractor shall inform Owner in writing of the cost to Contractor of obtaining such insurance. At Owner's option, Owner shall thereafter have the right to obtain such insurance on Contractor's behalf and the Contract Sum shall be reduced by the insurance costs so avoided by Contractor.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

0036

10.    **Ownership of the Work**

10.1    Subject to Contractor's obligations to obtain insurance as aforesaid, ownership of all and each part of the Work as and when completed and incorporated in the Work, and to each and all of the materials as and when affixed to the Project and incorporated therein, shall be in the Owner.  Ownership of all materials and equipment delivered to the Project site or approved off-site storage areas, but not affixed to the Project and incorporated therein, shall become the property of Owner at such time that such materials are paid for by Owner, and under no circumstances shall material which has been delivered to the Project site or storage areas be removed without Owner's prior written approval.

10.2    The Contractor hereby agrees to hold Owner and Owner's landlord harmless from any claims or damage of any type including consequential damages on account of loss of use, to any personal property belonging to the Contractor, its subcontractors, suppliers, employees or representatives regardless of whether Contractor is deemed responsible in whole or in part for such damage and whether caused in whole or in part by Contractor's negligence.

11.    **Accounting, Inspection and Audit**

11.1    Contractor shall check all materials, equipment, labor and services of any type involved with or incorporated into the Work and shall keep full, detailed and accurate records and accounts thereof, showing the actual net costs to Contractor of all items of labor, materials, supplies, services and other expenditures of whatever nature for which payment or reimbursement is authorized or required under the terms of the Agreement, as may be necessary for proper financial management under the Agreement, and the system of accounting shall be satisfactory to Owner or to an auditor appointed by Owner.  Contractor shall retain and preserve all such records for a period satisfactory to Owner (but not less than three (3) years) after final payment hereunder.  Owner and its representatives, employees and agents shall be afforded complete access at all reasonable times to all of the Contractor's books, records, correspondence, instructions, drawings, receipts, vouchers, accounts, memoranda and all other materials with respect to the cost of the Work for any Change Order or disputed sum hereunder.  The foregoing obligations shall survive any expiration or termination of the Agreement and the completion of the Work contemplated hereby.

11.2    Contractor's records, including but not limited to accounting records (hard copy, as well as computer readable data), written policies and procedures, subcontract files (including proposals of successful and unsuccessful bidders, bid recaps, etc.), original estimates, estimating work sheets, correspondence, Change Order files (including documentation covering negotiated settlements), back charge logs and supporting documentation, general ledger entries detailing cash and trade discounts earned, insurance rebates and dividends, and any other supporting evidence deemed necessary by the Owner to substantiate charges related to the Agreement (all foregoing hereinafter referred to as "records") shall be open to inspection and subject to audit and reproduction by Owner's agents or its authorized representative to adequately permit evaluation and verification of costs of the Work, and any invoices, Change Orders, payments or claims submitted by the Contractor or any of his payees pursuant to the execution of the Contract Documents.

11.3    Such audits may require inspection and copying from time to time and at reasonable times and places of any and all information, materials and data of every kind and character, including without limitation, records, books, papers, documents, subscriptions, recordings, agreements, purchase orders, leases, contracts, commitments, arrangements, notes, daily diaries, superintendent reports, drawings, receipts, vouchers and memoranda, and any and all other agreements, sources of information and matters that may in Owner's judgment have any bearing on or pertain to any matters, rights, duties or obligations under or covered by any Contract Document.  Such records subject to audit shall also include, but not be limited to, those records necessary to

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 22

0037

evaluate and verify direct and indirect costs (including overhead allocations), as they may apply to costs associated with the Agreement.

11.4     Contractor shall require all subcontractors, sub-subcontractors, insurance agents and material suppliers to comply with the provisions of this Section by insertion of the requirements hereof in a written contract agreement between Contractor and such party.  Contractor will cooperate fully and will cause all of its officers, directors, agents, representatives and successors and all of its subcontractors (including those entering into lump sum subcontracts) to cooperate fully in furnishing or in making available to Owner from time to time whenever requested in an expeditious manner any and all such information, materials and data.

11.5     Owner's agent or its authorized representative shall have access to the Contractor's facilities, shall have access to all necessary records and shall be provided adequate and appropriate work space in order to conduct audits in compliance with this Article.

11.6     If an audit inspection or examination in accordance with this Article discloses overcharges of any nature by the Contractor to the Owner in excess of one percent (1%) of the total contract billings, the actual cost of the Owner's audit shall be reimbursed to the Owner by the Contractor.  Any adjustments or payments which must be made as a result of any such audit or inspection of the Contractor's invoices or records shall be made within a reasonable amount of time (not to exceed ninety (90) days) from presentation of Owner's findings to Contractor.

## 12.    Dispute Resolution

12.1     All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, may, at the sole option of the Owner, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.  This provision shall be specifically enforceable in any court of competent jurisdiction.  Nothing in this Section 12 shall be deemed to require the Owner to subject disputes under the Contract Documents to arbitration.  If the Owner does not opt for arbitration, claims, disputes, and other matters in question between the parties arising out of or relating to this Agreement shall be resolved in accordance with Section 12.2 herein.  Sections 12.1 and 12.2 are subject to the Owner's right to render a final and binding decision pursuant to Section 12.6.

12.2     All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof or relating thereto which Owner does not elect to subject to arbitration shall be decided a court in litigation, and any civil action in furtherance thereof shall be brought exclusively in either the U.S. District Court for the Eastern District of Virginia, Richmond Division, or the Circuit Court of Henrico County, Virginia.

12.3     As a condition precedent to the institution of any action (lawsuit, arbitration, etc.) hereunder, all disputes shall be submitted to mediation before a professional mediator mutually selected by the parties.  Such mediations shall be conducted at a mutually agreed time and place, shall not be less than one day in length, and the costs and expenses of the mediator shall be split equally between the parties.  Only upon the unsuccessful completion of such mediations shall either party have the right to pursue further resolution of outstanding issues hereunder.

12.4     When the Owner has opted for arbitration, the following will apply:

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 23

0038

12.4.1    Arbitration arising out of or relating to this Agreement may include, by consolidation, joinder or any other manner, any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration.  Consolidation shall be decided by an arbitrator in accordance with AAA rules.  The arbitrator(s) shall decide procedural and substantive issues regarding arbitrability and whether conditions precedent have been satisfied.

12.4.2    Notice of demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association Regional Office of Atlanta, Georgia.  The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen.  In no event shall the demand for arbitration be made after the date when the applicable statute of limitations would bar institution of a legal or equitable proceeding based on such claim, dispute or other matter in question.

12.4.3    The award rendered by arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction.

12.4.4    The Federal Arbitration Act shall apply and govern disputes submitted to arbitration.

12.4.5    If the amount in controversy is in excess of $250,000, then the matter shall be decided by a panel of three arbitrators selected in accordance with the applicable rules of the AAA.  All other matters shall be decided by a single arbitrator.  If it becomes apparent that the amount in controversy exceeds $250,000 after the selection of a single arbitrator, the AAA shall either add two more arbitrators to the panel or select a new panel of three arbitrators, whichever it deems more appropriate and efficient under the circumstances.

12.5    This Section 12 shall survive the expiration or earlier termination of this Contract.  Unless otherwise agreed in writing, Contractor shall carry on the Work and shall maintain the Project Schedule during any and all disputes, including but not limited to mediation, trial, or as applicable, arbitration proceedings, and the Owner shall continue to make payments not in dispute to the Contractor in accordance with this Agreement.

12.6    Claims, disputes and other matters in question between the Contractor and the Owner relating to the performance of the Work or the interpretation of the Contract Documents may be decided by the Owner's Vice President - Construction which decision will be rendered in writing within a reasonable time.  The Owner may refer any such claim or dispute to the Architect.  The Owner's decision, or the Architect's, if referred by or from the Owner's Vice President - Construction, shall be final and binding on the parties.

13.    **Termination of Agreement**

13.1    Owner shall have the right to terminate the Agreement at any time without cause and without liability to Contractor by giving Contractor fifteen (15) days' prior written notice; provided, however, Owner shall reimburse Contractor for that portion of the Contract Sum for which Contractor is obligated to pay prior to the effective date of such termination, less all payments previously made by Owner.  All subcontracts shall contain provisions permitting termination on the same basis as the Agreement.  If the Agreement is terminated after construction has commenced, Owner shall pay to Contractor an amount equal to that which would be payable under Paragraph 13.3 hereof.

13.2    If Contractor persistently or repeatedly refuses or fails to supply sufficient properly skilled workmen or proper materials required for the Work, if Contractor fails to make prompt payment to subcontractors or for

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 24

materials or labor, if Contractor persistently or repeatedly disregards laws, ordinances, rules, regulations or orders of any governmental authority having jurisdiction over the Project, or if Contractor otherwise is in violation of a material provision of any of the Contract Documents, then Owner may, without prejudice to any right or remedy, and after giving Contractor and its surety, if any, fifteen (15) days' prior written notice, terminate the Agreement and take possession of the Project and all materials, equipment, tools, construction equipment and machinery thereon owned by Contractor and any materials stored at off site areas and Owner may complete the Work by whatever method Owner may deem expedient. In any such case, Contractor shall not be entitled to receive any further payment until the Work is completed. If the unpaid balance of the Contract Sum exceeds the cost to Owner of completing the Work, including compensation for the Architect's additional services, Owner shall reimburse Contractor (to the extent of said difference) for costs incurred but not previously paid to Contractor. If the cost to Owner of finishing the Work exceeds the unpaid balance of the Contract Sum, Contractor shall pay the difference to Owner.

13.3    If the Work is stopped for a period of ninety (90) days under order of any court or any governmental authority having jurisdiction over the Project, through no fault or act or neglect of Contractor or any of its subcontractors, or any of their agents or employees, or any other person performing any of the Work under a contract with Contractor, or if Owner is guilty of a breach of any material provision of the Agreement and a cure for such breach is not commenced within fifteen (15) days after written notice from Contractor, then in any such event Contractor may, upon seven (7) days' prior written notice to Owner terminate the Agreement and recover from Owner payment for that portion of the Contract Sum payable to the effective date of such termination as defined elsewhere herein.

13.4    Contractor shall use its best efforts to make all contracts, subcontracts, purchase orders and other commitments entered into by Contractor in connection with the performance of the Work hereunder in a form assignable to Owner. In the event of any termination of the Agreement for any reason, as a condition to any payments to Contractor, Contractor shall, at the request of Owner, assign to Owner any such contracts, subcontracts, purchase orders and commitments as Owner designates, and Contractor shall use its best efforts to obtain consent to the assignment of any such contract, subcontract, purchase order and commitment not otherwise assignable in accordance with its terms and to assist in an orderly transition. All of the Owner's rights and obligations hereunder may be assigned by Owner to any party who owns a fee interest in and to the real property to be improved by the Project, Owner's landlord or any other party who is a construction lender therefor.

13.5    In the event of any termination of this Agreement, Contractor shall provide Owner with a detailed description of the costs and expenses incurred by Contractor within sixty (60) days after written notice of termination has been provided as herein required.

## 14.    Temporary Construction Facilities

14.1    Contractor shall provide and maintain hoists, bunkers, scaffolds and other temporary construction facilities (including the dual-gate system), excepting only such as are specifically required to be provided by others. Temporary hoists, bunkers and other temporary construction facilities (including the dual-gate system) shall be located in or about the Project in such a position as is practicable and where it will not interfere with the progress of the Work.

14.2    Contractor shall protect the construction site and surrounding public areas in compliance with the requirements of applicable codes and regulations of public agencies having jurisdiction. The obtaining and paying for all required permits and inspections in connection therewith shall be the responsibility of the Contractor. Where so required Contractor shall provide and maintain in working order at all times warning lights and pay all costs in connection therewith.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 25

0040

14.3     Upon completion of the Project, or prior thereto when so authorized or required to maintain job progress, protective fence and canopy and related construction shall be removed by the Contractor and the space occupied thereby restored to its original condition as approved by authorities having jurisdiction.

14.4     Contractor shall provide and maintain, in compliance with local custom and applicable codes and regulations of authorities having jurisdiction, complete temporary toilet facilities.

14.5     Upon completion of the Project, or prior thereto when so authorized, temporary toilet facilities shall be disconnected and all equipment and temporary construction connected therewith removed from the site.

14.6     Contractor shall arrange for connections and pay for water and electric service for power and light, including temporary connections used by subcontractors during the progress of the Work and until final acceptance. Should Contractor fail to settle claims for water, electric power or other material used in the Work, the Owner may reserve from the monies due or to become due to the Contractor a sum sufficient to satisfy such claims, and should any such claim remain unsettled for thirty (30) days after notice thereof has been given the Contractor, the Owner may settle such claim or claims out of the monies reserved and the amount expended for such purposes shall be deducted from monies due or to become due to the Contractor.

14.7     In the event of partial occupancy by the Owner or a tenant with Owner's written permission prior to final acceptance, the payment of charges for water, electricity and fuel for the portion of the Project occupied shall be the responsibility of the Owner or the tenant involved and the account name for the applicable utility service shall be changed accordingly to reflect the responsible party.

14.8     The Contractor shall provide two (2) independent telephones in the construction trailer and a computer with internet connection for the field supervision to communicate via the internet and/or email.. One telephone shall be a cellular telephone. The superintendent shall carry this telephone with him when he is on the job site away from the trailer. The Contractor shall subscribe to the optional features of "call waiting" and "call hold" for both construction telephones.

14.9     Signs furnished by the Owner shall be erected on the site as and where required by the Owner. Contractor shall not place or allow to be placed any signs, billboards or posters on any portion of the site or the Project, except upon written permission from the Owner and then only of a size, material, color and type and at a location approved by the Owner.

14.10     Elevators may be used during the course of construction by Contractor once the elevators are declared operable by the elevator subcontractor, provided that the Contractor shall adequately protect all parts of the equipment, machinery, controls and cabs from damage or harm of any nature; and elevators shall be available to all other separate contractors and subcontractors as may be required by the Owner.

## 15.    Use of Site and Premises

15.1     The working area outside of the building lines for use of storage of materials, for equipment operations and for temporary buildings is the area bounded by the limiting streets and property lines, unless otherwise restricted by the Drawings or Specifications. Such other space, including public sidewalks and roadways as may be permitted for temporary use by the applicable building codes or public authorities at the place of construction, may be used and the cost, if any, shall be borne solely by Contractor. Disturbed public areas shall be put back into their original state at completion of use, as approved and accepted by public authorities having jurisdiction.

15.2     Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not encumber the site with any extraneous materials or equipment.

Exhibit A
CIRCUIT CITY STORE #4176
MONROVIA, CA/COMPUSA
COLORADO STRUCTURES, INC. - CA
FEBRUARY 22, 2008

PAGE 26