**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., <u>et al</u>. | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtors | ) | Jointly Administered |

**RESPONSE OF**
**PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD**
**TO SEVENTH OMNIBUS OBJECTION TO CLAIMS**
**(REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS,**
**DISALLOWANCE OF CERTAIN INVALID CLAIMS AND**
**RECLASSIFICATION OF CERTAIN INCORRECTLY CLASSIFIED CLAIMS)**

The Public Company Accounting Oversight Board (the "Board" or "PCAOB")

hereby files its objection (the "Response") to the Seventh Omnibus Objection to Claims

(Reduction of Certain Partially Invalid Claims, Disallowance of Certain Invalid Claims

and Reclassification of Certain Incorrectly Classified Claims) (the "Omnibus

Objection").  In support of its Response, the PCAOB respectfully states as follows:

**BASIS FOR RESPONSE**

1.     The PCAOB sent two invoices, dated April 29, 2009, to Circuit City Stores,

Inc. for $4,700.00 combined, representing the company's assessed shares of

Jason W. Harbour (VSB No. 68220)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Telecopier:  (804) 788-8218

John W. Hazard, Jr. (VSB No. 19795)
Webster, Chamberlain & Bean
1747 Pennsylvania Avenue, N.W., #1000
Washington, D.C.  20006-4693
(202) 785-9500

Counsel for Claimant

the PCAOB and FASB accounting support fees.[1]  Copies of each invoice are

attached as Exhibit 1.

2.       Section 109 of the Sarbanes-Oxley Act of 2002, as amended (the "Act"), 15

U.S.C. § 7219, provides that funds to cover the Board's annual budget (less

registration and annual fees paid by public accounting firms) and the FASB's

annual budget are to be collected from "issuers," as defined in the Act.[2]  The

amount due from such companies is referred to in the Act as the annual

"accounting support fee" for both the Board and the FASB, respectively.

3.       Following the United States Securities and Exchange Commission's (the

"SEC") approval of the Board's budget and annual accounting support fee and

the SEC's review of the FASB's budget, the Board computed the allocation of

the accounting support fees to issuers pursuant to its funding rules.[3]  For 2009,

the accounting support fee was calculated on March 27, 2009.[4]  Under the

---

[1]       Of the $4,700.00 invoiced amount, $4,000.00 represents the accounting support fee for
the PCAOB (Invoice # P-103016-092) and $700.00 represents the accounting support fee for the FASB
(Invoice # F-103016-093).  The Financial Accounting Foundation ("FAF"), which is responsible for the
oversight, administration, and finance of the FASB, has designated the PCAOB as the collection agent with
respect to FASB's accounting support fee pursuant to a Collection Agent Agreement, dated August 1,
2003, by and between the PCAOB and the FAF.

[2]       Section 982 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the
"Dodd-Frank Act") granted the Board oversight of the audits of brokers and dealers registered with the
U.S. Securities and Exchange Commission.  To provide funds for the Board's oversight of those audits, the
Dodd-Frank Act amended Section 109 of the Act to require that the Board allocate a portion of the
accounting support fee among brokers and dealers, or classes of brokers and dealers.  The amendments to
Section 109 of the Act as a result of the Dodd-Frank Act do not impact the shares of accounting support
fees assessed Circuit City Stores, Inc. in 2009.

[3]       The Board's funding rules, which are located on the Board's web site at
http://pcaobus.org/Rules/PCAOBRules/Pages/Section_7.aspx, were approved by the SEC on August 1,
2003.  See SEC Release No. 34-48278 (August 1, 2003).  As contemplated in Section 109(e) of the Act, the
FASB has designated the allocation formula set forth in PCAOB Rule 7101 as the allocation to be used for
the FASB accounting support fee.

[4]       See Questions 2 and 10, Frequently Asked Questions on The Accounting Support Fee and the
Funding Process (April 29, 2009), attached as Exhibit 2.

PCAOB's funding rules, all companies that were "issuers," as that term is
defined in the Act and the Board's rules, as of that date were subject to the
accounting support fee if they had average monthly equity market
capitalization, based on all classes of common stock, greater than $25 million
during the prior calendar year.

4.     Section 13(b)(2)(C) of the Securities Exchange Act of 1934, as amended by
Section 109(h) of the Act, 15 U.S.C. § 78m(b)(2)(C), also requires all issuers
to pay their allocable share of the PCAOB and FASB accounting support fees.

5.     As of March 27, 2009, Circuit City Stores, Inc. was an "issuer", as that term is
defined in the Act and the Board's Rules.  Based on market capitalization
information obtained by the Board from a third-party data provider, Circuit
City Stores, Inc. had average monthly equity market capitalization of greater
than $25 million during 2008.  A copy of Circuit City Stores, Inc.'s average
monthly equity market capitalization for 2008 is attached as Exhibit 3.

6.     The Board filed a Request for Payment, dated June 29, 2009, for the PCAOB
and FASB accounting support fees assessed to Circuit City Stores, Inc. with
Kurtzman Carson Consultants LLC's Claims Processing Department, pursuant
to the Notice of Deadline for Filing Administrative Expense Request.  A copy
of the Board's Request for Payment, dated June 29, 2009, and all associated
attachments to that request, are attached as Exhibit 4.

7.     On December 11, 2009, the PCAOB, on behalf of itself and FASB, filed an
objection to the Sixth Omnibus Objection to Claims (Disallowance of Certain
(i) no liability (Legal Claims); (ii) no liability (Miscellaneous Claims); and

(iii) no liability (Subcontractor Claims)) ("December 2009 Objection").  In the

response to the December 2009 Objection, the PCAOB stated that the invoices

sent to Circuit City Stores, Inc. were proper and that, pursuant to the Act and

the Board's funding rules, Circuit City Stores, Inc. is liable for the PCAOB

and FASB accounting support fees reflected in the two invoices.

8.     On February 12, 2010, in response to the PCAOB's response to the December

2009 Objection, counsel for Circuit City Stores, Inc. contacted Ms. Nina

Mojiri-Azad, Assistant General Counsel, PCAOB, and asserted that as Circuit

City Stores, Inc. is not required to file audited financial statements pursuant to

SEC Staff Legal Bulletin No. 2 ("SLB No. 2"), attached as Exhibit 5, the

company should not have been assessed a share of the 2009 accounting

support fees pursuant to PCAOB Rule 7101(a)(3).  Ms. Mojiri-Azad informed

counsel that in situations where a company is asserting compliance with the

conditions set forth in SLB No. 2 but for which the company has not obtained

a no-action letter from SEC staff, the PCAOB requests that the company

provide an analysis of how the company satisfied each of the conditions set

forth under SLB No. 2 or an opinion of counsel to that effect.  See Question

No. 14, Frequently Asked Questions: The Accounting Support Fee and the

Funding Process, dated March 15, 2010, a copy of which is attached as

Exhibit 6.

9.     On June 23, 2010, counsel for Circuit City Stores, Inc. provided Ms. Mojiri-

Azad an analysis from Circuit City Stores, Inc. describing the company's

compliance with certain requirements set forth in SLB No. 2 ("Circuit City

SLB No. 2 Analysis").   A copy of the Circuit City SLB No. 2 Analysis is attached as Exhibit 7.

10.    Based on review of the Circuit City SLB No. 2 Analysis, Ms. Mojiri-Azad orally informed counsel for Circuit City Stores, Inc. that the Circuit City SLB No. 2 Analysis provided was incomplete.  Ms. Mojiri-Azad noted to counsel that the Circuit City SLB No. 2 Analysis only includes information concerning Circuit City Stores, Inc.'s compliance with the requirements set forth under Section III.A., Information Regarding Disclosure of Financial Condition, of SLB No. 2 and does not contain information concerning compliance with the requirements set forth under Section III.B., Information Regarding the Market for the Issuer's Securities, of SLB No. 2.  Ms. Mojiri-Azad informed counsel that a complete analysis of how Circuit City Stores, Inc. satisfied all of the requirements under SLB No. 2 would be needed before the PCAOB would be able to make a determination as to whether the company should not have been assessed a share of the 2009 accounting support fees.

11.    As of April 7, 2011, the PCAOB has not received any additional analysis from Circuit City Stores, Inc. or its counsel concerning how Circuit City Stores, Inc. satisfied all of the requirements under SLB No. 2 from Circuit City Stores, Inc.

12.    In the Omnibus Objection, The Circuit City Stores, Inc. Liquidating Trust, explains its objection by noting that the company was exempt from the 2009 accounting support fees by filing Form 8-Ks.  Filing Form 8-Ks, in and of

itself, however, does not demonstrate that Circuit City Stores, Inc. met the criteria of SLB No. 2.

13.     On December 28, 2010, the PCAOB provided a completed Form W-9, "Request for Tax Identification Number and Certification," to Circuit City Liquidating Trust in response to a request from Ms. Katie Bradshaw, Senior Liquidating Trust Manager for Circuit City Stores, Inc. Liquidating Trust.  A copy of this correspondence is attached as <u>Exhibit 8</u>.

14.     As Circuit City Stores, Inc. has not provided a complete analysis as to how it satisfied all the requirements of SLB No. 2, the PCAOB continues to assert that the invoices sent to Circuit City Stores, Inc. were proper pursuant to the Act and the Board's funding rules.  Therefore, Circuit City Stores, Inc. is liable for the PCAOB and FASB accounting support fees reflected in the two invoices.

15.     Accordingly, the Board objects to the Omnibus Objection, which disputes the debtor's liability for such claim.

16.     Replies to this Response should be sent to Nina Mojiri-Azad, Assistant General Counsel, Public Company Accounting Oversight Board, 1666 K Street, NW, Washington, DC  20006, Telephone:  202-207-9035, facsimile: 866-422-2389.  Ms. Mojiri-Azad also is identified as the individual with personal knowledge of the relevant facts that support the Response.

17.     To facilitate a resolution to this Response, Debtor's attorneys may contact J. Gordon Seymour, General Counsel, Public Company Accounting Oversight Board, 1666 K Street, NW, Washington, DC  20006, Telephone:  202-207-

9100, facsimile:  202-862-8430, or Nina Mojiri-Azad, Assistant General

Counsel, Public Company Accounting Oversight Board, 1666 K Street, NW,

Washington, DC  20006, Telephone:  202-207-9035, facsimile:  866-422-

2389, who have authority to resolve this matter.

## **CONCLUSION**

WHEREFORE, the Board respectfully requests that this Court sustain the

PCAOB's objection to the Omnibus Objection and grant such other and further relief as

is just and proper.

Dated: April 7, 2011                          Respectfully submitted,

*/s/  Jason W. Harbour*
Jason W. Harbour (VSB No. 68220)
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Telecopier:  (804) 788-8218

and

John W. Hazard, Jr. (VSB No. 19795)
Webster, Chamberlain & Bean
1747 Pennsylvania Avenue, N.W., #1000
Washington, D.C.  20006-4693
(202) 785-9500

Counsel for Claimant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2011, a copy of the foregoing RESPONSE OF PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD TO SEVENTH OMNIBUS OBJECTION TO CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS AND RECLASSIFICATION OF CERTAIN INCORRECTLY CLASSIFIED CLAIMS) was sent via FEDEX and by electronic mail to the following parties:

<u>*Circuit City Stores, Inc. Liquidating Trust's attorneys*</u>

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
Los Angeles, California  90067-4100
Attn:  Jeffrey N. Pomerantz, Esq.
Attn:  Andrew W. Caine, Esq.
jpomerantz@pszjlaw.com
acaine@pszjlaw.com

Tavenner & Beran, PLC
20 North Eight Street, 2nd Floor
Richmond, Virginia  23219
Attn: Lynn L. Tavenner, Esq.
Attn: Paula S. Beran, Esq.
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com

 */s/ John W. Hazard, Jr.*
John W. Hazard, Jr.

Exhibit 1


FINANCIAL ACCOUNTING STANDARDS BOARD

P.O. Box 630420
Baltimore, MD 21263-0420

# 2009 FASB ACCOUNTING SUPPORT FEE INVOICE

**ISSUER:**

|  |  |
|---|---|
| **DATE:** | 04/29/2009 |

Bruce H. Besanko,  C.F.O
CIRCUIT CITY STORES INC
9950 MAYLAND DR
RICHMOND, VA  23233-1463

|  |  |
|---|---|
| **ISSUER #:** | 103016 |
| **INVOICE #:** | F-103016-093 |
| **CONFIRMATION CODE:** | Arru27+ZU |

| | |
|---|---|
| Issuer's FASB Accounting Support Fee for Calendar Year 2009 | $700.00 |
| **Total Due** | **$700.00** |

Pursuant to Section 109 of the Sarbanes-Oxley Act of 2002, the issuer's share of the FASB total Accounting Support Fee has been calculated as follows:

| | |
|---|---|
| ISSUER'S CLASS: | 1 |
| TOTAL FASB ACCOUNTING SUPPORT FEE: | $28,883,200 |
| ISSUER'S MARKET CAPITALIZATION OR NET ASSET VALUE SUBJECT TO FEE: | $443,421,648 |
| TOTAL MARKET CAPITALIZATION AND NET ASSET VALUE OF ALL ISSUERS: | $17,538,206,396,507 |
| ISSUER'S PERCENTAGE OF FASB ACCOUNTING SUPPORT FEE: | 0.00253% |
| ISSUER'S SHARE OF ACCOUNTING SUPPORT FEE: | $700 |

STD    500290

### Payment should be made via ACH debit at https://payments.pcaobus.org
(BEFORE attempting to process the transactions online, please verify that your banking institution allows ACH debit.)

Information required to process your payment: the above confirmation code, invoice number,
your bank account number, and the associated ABA Number.

For billing questions, please call 1-866-606-3982 (9:00am-5:00pm EST) or email BillingFAQ@pcaobus.org.

PCAOB has been authorized as the collection agent for the FASB.

All fees are in **U.S. Dollars.**  Payment is due within 30 days after the notice is sent.
Overdue accounts are subject to interest at 6% per annum.

STD    500290

**Overview.** Since 1973, the Financial Accounting Standards Board ("FASB") has been the designated organization in the private sector for establishing standards of financial accounting and reporting. Pursuant to Section 108 of the Sarbanes-Oxley Act of 2002 (the "Act"), on April 25, 2003 the U.S. Securities and Exchange Commission ("Commission") recognized FASB as the standard-setting body whose accounting principles are "generally accepted" for purposes of the securities laws. In conjunction with this recognition, Section 109 of the Act provides that funds to cover FASB's annual budget are to be collected from "issuers," as that term is defined in the Act. The amount due from issuers is referred to in the Act as FASB's "accounting support fee." As contemplated in Section 109(c) of the Act, FASB has designated the Public Company Accounting Oversight Board ("PCAOB") as its collection agent for the purpose of assessing and collecting the FASB accounting support fee and has designated the allocation formula set forth in PCAOB Rule 7101 as the allocation to be used for the FASB accounting support fee. As explained in more detail below, under the PCAOB's funding rules, the portion of the accounting support fee allocated to, and payable by, equity issuers with average monthly market capitalizations of greater than $25 million and registered investment companies with average monthly market capitalization or net asset value of greater than $250 million is determined by a formula based on U.S. market capitalization.

**Issuers Subject to the Fee.** Under Section 109(d) of the Act, the FASB accounting support fee is to be allocated, assessed and collected "among issuers." "Issuer" is defined in Section 2(a)(7) of the Act as "an issuer (as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)), the securities of which are registered under section 12 of that Act (15 U.S.C. 78l), or that is required to file reports under section 15(d) (15 U.S.C. 78o(d)), or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 (15 U.S.C. 77a et seq.), and that it has not withdrawn." Under the PCAOB's funding rules, a company's status as an issuer (or as a class of issuer, as described below) will be determined as of the date on which the allocation of the annual FASB accounting support fee among subject issuers is set. Companies that are not issuers on that date will not be required to pay any fee during that year.

**Allocation.** PCAOB Rule 7101 governs the allocation of the accounting support fee among issuers. Under paragraph (a) of this rule, all issuers are divided into four classes:

(1)    <u>Equity Issuers class.</u> The publicly-traded companies with average monthly equity market capitalization, based on all classes of common stock, greater than $25 million during the prior calendar year. The PCAOB uses market capitalization information from nationally-recognized market data sources.

(2)    <u>Investment Company Issuers class.</u> The registered investment companies and issuers that have elected to be regulated as business development companies with average monthly market capitalization or net asset value greater than $250 million during the prior calendar year. The Board uses market capitalization and net asset value information from nationally recognized market-data sources.

(3)    <u>Issuers Permitted Not to File class.</u> All issuers that have a basis under a Commission rule, or pursuant to other action of the Commission or

its staff, not to file audited financial statements with the Commission or to file modified financial statements.

(4)    <u>All Other Issuers class.</u> Issuers that do not fall in classes (1), (2), or (3).

PCAOB Rule 7101(b) governs the allocation of the accounting support fee among the issuers in the four classes. That paragraph of the rule provides that:

(1)    Each company in the Equity Issuers and Investment Company Issuers classes will be allocated an amount equal to the accounting support fee, multiplied by a fraction. The numerator of the fraction will be the issuer's average monthly U.S. market capitalization during the preceding calendar year (AMMC). The denominator will be the sum of the average monthly U.S. market capitalizations of all Equity and Investment Company Issuers (TAMMC). For purposes of this allocation, however, the market capitalization of an investment company issuer will be ten percent of the investment company's net asset value. This reduction reflects the fact that investment company audits are relatively less complex than audits of publicly-traded companies.

(2)    All issuers in the other two classes – issuers permitted not to file and all other issuers – are allocated a share of zero.

**Assessment.** PCAOB Rule 7102 provides that each year, after the allocation of the accounting support fee is determined, issuers will be assessed for their share of the accounting support fee, rounded to the nearest hundred. If an issuer's share of the accounting support fee is less than $50, that issuer will not be assessed.

**Collection.** PCAOB Rule 7103 governs the collection of the accounting support fee. Unless the PCAOB directs otherwise, payment is due on the 30th day after transmittal, after which interest will accrue at a rate equal to 6 percent per annum. If an issuer has not paid its bill by the 60th day, the PCAOB may send a second notice by certified mail. If the bill still remains unpaid after 90 days, the PCAOB may report the issuer's non-payment to the Commission. In addition, PCAOB Rule 7103(b) provides that no registered public accounting firm may sign an unqualified audit opinion with respect to an issuer's financial statements without ascertaining that the issuer has outstanding no past-due share of the accounting support fee.

**Disputes.** PCAOB Rule 7102(c) provides a procedure for an issuer to contest the class in which it was placed or the calculation by which its share of the accounting support fee was determined. Any issuer who disagrees with the class in which it has been placed, or with the calculation by which its share of the accounting support fee was determined, may petition the PCAOB for a correction of the share of the accounting support fee it was allocated. Any such petition must include an explanation of the nature of the claimed mistake in classification or calculation, in writing, on or before the 30th day after the notice is sent.



**PCAOB**
Public Company Accounting Oversight Board

P.O. Box 631116
Baltimore, MD 21263-1116

# 2009 ACCOUNTING SUPPORT FEE INVOICE

**SUBJECT ISSUER:**

|  |  |
|---|---|
| **DATE:** | 04/29/2009 |

Bruce H. Besanko, C.F.O
CIRCUIT CITY STORES INC
9950 MAYLAND DR
RICHMOND, VA 23233-1463

| | |
|---|---|
| **ISSUER #:** | 103016 |
| **INVOICE #:** | P-103016-092 |
| **CONFIRMATION CODE:** | U5nPgPqJC |

| DESCRIPTION | SUBJECT ISSUER'S SHARE OF TOTAL PCAOB ACCOUNTING SUPPORT FEE |
|---|---|
| PCAOB Accounting Support Fee for Calendar Year 2009 | $4,000.00 |
| **Total Due** | **$4,000.00** |

Pursuant to Section 109 of the Sarbanes-Oxley Act of 2002 and PCAOB Rule 7101, the subject issuer's share of the total Accounting Support Fee has been calculated as follows:

| | |
|---|---|
| SUBJECT ISSUER'S CLASS: | 1 |
| TOTAL PCAOB ACCOUNTING SUPPORT FEE (TPASF - Based upon SEC approved budget): | $157,364,180 |
| SUBJECT ISSUER'S MARKET CAPITALIZATION OR NET ASSET VALUE SUBJECT TO FEE (AMMC): | $443,421,648 |
| TOTAL MARKET CAPITALIZATION AND NET ASSET VALUE OF ALL SUBJECT ISSUERS (TAMMC): | $17,538,206,396,507 |
| SUBJECT ISSUER'S ACCOUNTING SUPPORT FEE CALCULATION (AMMC/TAMMC): | 0.00253% |
| SUBJECT ISSUER'S SHARE OF ACCOUNTING SUPPORT FEE (AMMC/TAMMC * TPASF): | $4,000 |

STD   500290

### Payment should be made via ACH debit at https://payments.pcaobus.org
(BEFORE attempting to process the transactions online, please verify that your banking institution allows ACH debit.)

Information required to process your payment: the above confirmation code, invoice number,
your bank account number, and the associated ABA Number.

For billing questions, please call 1-866-606-3982 (9:00am-5:00pm EST) or email BillingFAQ@pcaobus.org.

For more information regarding this invoice, the Sarbanes-Oxley Act of 2002, and the Public Company Accounting
Oversight Board, please go to our website at www.pcaobus.org.

All fees are in U.S. Dollars. Payment is due within 30 days after the notice is sent.
Overdue accounts are subject to interest at 6% per annum.

### NOTICE
Pursuant to Section 109(h) of the Sarbanes-Oxley Act of 2002 and PCAOB Rule 7103(c), an
issuer's failure to pay its share of the accounting support fee is a violation of Section 13(b)(2) of
the Securities Exchange Act of 1934 and could, like any other Exchange Act violation, result in
administrative, civil, or criminal sanctions (see Sections 21C(a), 21(d), and 32(a) of the
Exchange Act, 15 U.S.C. §§ 78u-3(a), 78u(d), and 78ff(a)).

STD   500290

**Overview.** The Public Company Accounting Oversight Board ("PCAOB" or "Board") is a private-sector, non-profit corporation, created by the Sarbanes-Oxley Act of 2002 (the "Act"), to oversee the auditors of public companies in order to protect the interests of investors and further the public interest in the preparation of informative, fair, and independent audit reports. Pursuant to the Act, the Board has been charged with the authority to register, inspect, discipline and establish auditing and related professional practice standards to be followed by public accounting firms that audit issuers and by persons associated with such firms. Section 109 of the Act provides that funds for the Board's annual budget (less registration and annual fees paid by public accounting firms) are to be collected from "issuers," as that term is defined in the Act. The amount due from issuers is referred to in the Act as the Board's "accounting support fee." As explained in more detail below, under the Board's funding rules, the portion of the accounting support fee allocated to, and payable by, the equity issuers with average monthly market capitalizations of greater than $25 million and registered investment companies with average monthly market capitalization or net asset value of greater than $250 million is determined by a formula based on U.S. market capitalization.

**PCAOB Funding Rules.** Section 109(d) of the Act provides that "[t]he rules of the Board ... shall provide for the equitable allocation, assessment, and collection by the Board" of its accounting support fee. Pursuant to this directive, the Board proposed rules governing the allocation, assessment and collection of its accounting support fee on March 13, 2003. See PCAOB Release No. 2003-002 (Mar. 14, 2003), available at www.pcaobus.org. After receiving and considering public comments, the Board adopted PCAOB Rules 7100 through 7104, plus related definitions, on April 16, 2003. See PCAOB Release No. 2003-003 (Apr. 18, 2003), available at www.pcaobus.org. Pursuant to Section 107(b) of the Act, the Board filed these rules with the U.S. Securities and Exchange Commission ("Commission") for approval on April 17, 2003. After soliciting public comment, see 68 Fed. Reg. 38406 (June 27, 2003), the Commission approved these rules on August 1, 2003, see SEC Rel. No. 34-48278, available at www.sec.gov. In addition, the Commission annually approves the Board's budget and the accounting support fee.

**Issuers Subject to the Fee.** Under Section 109(d) of the Act, the accounting support fee is to be allocated, assessed and collected "among issuers." "Issuer" is defined in Section 2(a)(7) of the Act as "an issuer (as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)), the securities of which are registered under section 12 of that Act (15 U.S.C. 78l), or that is required to file reports under section 15(d) (15 U.S.C. 78o(d)), or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 (15 U.S.C. 77a et seq.), and that it has not withdrawn." Under the Board's funding rules, a company's status as an issuer (or as a class of issuer, as described below) will be determined as of the date on which the allocation of the annual accounting support fee among subject issuers is set. Companies that are not issuers on that date will not be required to pay any fee during that year.

**Allocation.** PCAOB Rule 7101 governs the allocation of the accounting support fee among issuers. Under paragraph (a) of this rule, all issuers are divided into four classes:

(1)     Equity Issuers class. The publicly-traded issuers with average monthly equity market capitalization, based on all classes of common stock, greater than $25 million during the prior calendar year. The Board uses market capitalization information from nationally-recognized market data sources.

(2)     Investment Company Issuers class. The registered investment companies and issuers that have elected to be regulated as business

development companies with average monthly market capitalization or net asset value greater than $250 million during the prior calendar year. The Board uses market capitalization and net asset value information from nationally recognized market-data sources.

(3)     Issuers Permitted Not to File class. All issuers that have a basis under a Commission rule, or pursuant to other action of the Commission or its staff, not to file audited financial statements with the Commission or to file modified financial statements.

(4)     All Other Issuers class. Issuers that do not fall in classes (1), (2), or (3).

PCAOB Rule 7101(b) governs the allocation of the accounting support fee among the issuers in the four classes. That paragraph of the rule provides that:

(1)     Each company in the Equity Issuers and Investment Company Issuers classes will be allocated an amount equal to the accounting support fee, multiplied by a fraction. The numerator of the fraction will be the issuer's average monthly U.S. market capitalization during the preceding calendar year (AMMC). The denominator will be the sum of the average monthly U.S. market capitalizations of all Equity and Investment Company Issuers (TAMMC). For purposes of this allocation, however, the market capitalization of an investment company issuer will be ten percent of the investment company's net asset value. This reduction reflects the fact that investment company audits are relatively less complex than audits of publicly-traded companies.

(2)     All issuers in the other two classes – issuers permitted not to file and all other issuers – are allocated a share of zero.

**Assessment.** PCAOB Rule 7102 provides that each year, after the allocation of the accounting support fee is determined, issuers will be assessed for their share of the accounting support fee, rounded to the nearest hundred. If an issuer's share of the accounting support fee is less than $50, that issuer will not be assessed.

**Collection.** PCAOB Rule 7103 governs the collection of the accounting support fee. Unless the Board directs otherwise, payment is due on the 30th day after transmittal, after which interest will accrue at a rate equal to 6 percent per annum. If an issuer has not paid its bill by the 60th day, the Board may send a second notice by certified mail. If the bill still remains unpaid after 90 days, the Board may report the issuer's non-payment to the Commission. In addition, PCAOB Rule 7103(b)(1) provides that, subject to the exception in Rule 7103(b)(2), no registered public accounting firm may sign an unqualified audit opinion with respect to an issuer's financial statements without ascertaining that the issuer has outstanding no past-due share of the accounting support fee.

**Disputes.** PCAOB Rule 7102(c) provides a procedure for an issuer to contest the class in which it was placed or the calculation by which its share of the accounting support fee was determined. Any issuer who disagrees with the class in which it has been placed, or with the calculation by which its share of the accounting support fee was determined, may petition the Board for a correction of the share of the accounting support fee it was allocated. Any such petition must include an explanation of the nature of the claimed mistake in classification or calculation, in writing, on or before the 30th day after the notice is sent.

## Accounting Support Fee Instruction Sheet
### (Please read the following)

Enclosed are the invoice(s) for your company's share(s) of the accounting support fees related to the funding of the Public Company Accounting Oversight Board ("PCAOB") and the Financial Accounting Standards Board ("FASB"), respectively.

Please pay these invoices electronically at **https://payments.pcaobus.org**

BEFORE attempting to process the transactions online, please verify that your banking institution allows **ACH debit** transactions.

In making the payments, you will be required to provide the confirmation code, the invoice number, the payment amount, your company's name, your bank account number, and the associated routing (ABA) number.

Questions regarding billing and payment should be directed to our help line:

|  |  |
|---|---|
| **Phone:** | 1 (866) 606-3982 (9:00am-5:00pm EST) |
| **E-mail:** | BillingFAQ@pcaobus.org |

Unless the Board directs otherwise, payment is due on the 30th day after the invoice date. Beginning on the 31st day, payment shall be deemed past due and interest shall accrue at a rate of 6 percent per annum.

For additional information, please see the back page of the enclosed invoice(s) or visit the PCAOB's website at www.pcaobus.org.

* * *

The PCAOB is a private-sector, non-profit corporation, created by the Sarbanes-Oxley Act of 2002, to oversee the auditors of public companies in order to protect the interests of investors and further the public interest in the preparation of informative, fair, and independent audit reports.

Since 1973, the FASB has been the designated organization in the private sector for establishing standards of financial accounting and reporting. Pursuant to the Sarbanes-Oxley Act of 2002, the Securities and Exchange Commission recognized FASB as the standard-setting body whose accounting principles are "generally accepted" for purposes of the securities laws. The Financial Accounting Foundation has designated PCAOB as collection agent for FASB's accounting support fee.

## Frequently Asked Questions (FAQ)

1. **What issuers are subject to the accounting support fee?**
   **Equity Issuers:** Publicly-traded companies with average monthly equity market capitalization, based on all classes of common stock, greater than $25 million during the prior calendar year. The Board uses market capitalization information from a nationally-recognized market data source.
   **Investment Company Issuers:** Registered investment companies and issuers that have elected to be regulated as business development companies with average monthly market capitalization or net asset value greater than $250 million during the prior calendar year.

2. **How is the accounting support fee calculated?**
   Equity issuers and investment company issuers are allocated a share of the accounting support fee based on their relative average monthly U.S. market capitalizations. The issuer's share is its average monthly U.S. market capitalization during the preceding calendar year, divided by the sum of the average monthly U.S. market capitalization of all equity and investment company issuers. For the purposes of this allocation, however, the market capitalization of an investment company issuer will be 10 percent of the investment company's actual market capitalization or net asset value.

3. **What period do these invoices cover?**
   Accounting support fees are calculated on an annual basis. The enclosed invoices are for the 2009 accounting support fees.

4. **If I pay on-line via ACH debit, is the payment processing system secure?**
   The payment processing system utilizes a third party payment provider to process payment transactions. The payment provider's system was created to address issues of confidentiality, data integrity, non-repudiation, and auditability utilizing industry standard 128-bit encryption, data integrity checking and logging.

5. **Will a receipt or payment confirmation be provided?**
   The payment website provides an Accounting Support Fee Payment Receipt page that provides the amount paid, a transaction number, and the date paid. Please note that these transactions may take 3-4 business days to clear your bank account. This receipt, assuming it is for the full amount invoiced, along with proof of debit from your bank account constitutes confirmation of your payment.

6. **My company is unable to process payment online by ACH debit. How can we pay?**
   Your company can issue separate check payments to the PCAOB and FASB. Check payments should be sent to the PO Box number listed in the top right-hand corner of each respective invoice, and should reference the invoice number on each check. The PCAOB and FASB do not offer ACH credit or credit card as payment options.

7. **What are the Federal Tax IDs for the PCAOB and FASB?**
   You may find the tax ID number for each organization on their respective W-9 form(s), which can be printed from the "Support Fees" section of the PCAOB website (www.pcaobus.org).

Please refer to the back of the enclosed invoice(s) for more detailed information concerning the PCAOB and FASB accounting support fees.



PCAOB
Public Company Accounting Oversight Board

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

## Frequently Asked Questions
## The Accounting Support Fee and the Funding Process

### April 29, 2009

These frequently asked questions set forth the staff's opinions on issues related to the implementation of the Public Company Accounting Oversight Board's ("PCAOB" or "Board") funding rules.  The statements contained in these frequently asked questions are not rules of the Board, nor have they been approved by the Board.

➢ *General FAQs*

➢ *Payment FAQs*

➢ *Issuer-Specific FAQs*

➢ *Confirmation FAQs*

### General FAQs

**1.    How can I obtain a copy of the PCAOB's funding rules?**

The full text of the PCAOB's rules is available under "Rules of the Board" at http://www.pcaobus.org/Rules/Rules_of_the_Board/index.aspx.  The funding rules are in Section 7 of the Rules.

**2.    What issuers are subject to the accounting support fee?**

Pursuant to PCAOB Rule 7101, Equity Issuers and Investment Company Issuers are subject to the accounting support fee.  Equity Issuers are publicly traded companies with average monthly equity market capitalization, based on all classes of common stock, greater than $25 million during the prior calendar year.  Investment Company Issuers are registered investment companies and issuers that have elected to be regulated as business development companies with average monthly market capitalization or net asset value greater than $250 million during the prior calendar year.



**PCAOB**

Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 2

## FAQs

The Board uses market capitalization and net asset value information from nationally recognized market-data sources.

**3.    How is the accounting support fee calculated?**

Equity Issuers and Investment Company Issuers are allocated a share of the accounting support fee based on their relative average monthly market capitalizations.  The issuer's share is its average monthly market capitalization during the preceding calendar year, divided by the sum of the average monthly market capitalization of all Equity and Investment Company Issuers.  For the purposes of this allocation, however, the market capitalization of an Investment Company Issuer will be 10 percent of the Investment Company Issuer's actual market capitalization or net asset value.

**4.    If my company's market capitalization decreased in the prior calendar year, should its share of the accounting support fee also decrease?**

Not necessarily.  An issuer's share of the accounting support fee is based on its average monthly market capitalization during the preceding calendar year *relative* to the total average monthly market capitalization of all Equity and Investment Company Issuers.  Therefore, if other Equity and Investment Company Issuers also experienced a decrease in their market capitalizations, resulting in a lower total average monthly market capitalization, an issuer's share of the accounting support fee may not change significantly.   In addition, due to economic downturn, the number of issuers with average monthly market capitalizations greater than the threshold to be billed ($25 million for Equity Issuers and $250 million for Investment Company Issuers) decreased and the Board invoiced more than 800 fewer issuers in 2009 than it did in 2008.  As a result, some issuers' shares of the accounting support fee increased even though their market capitalizations were lower for calendar year 2008 than for calendar year 2007.

**5.    How can my company dispute its share of the accounting support fee?**

PCAOB Rule 7102(c) allows an issuer that disagrees with the class in which it was placed for billing purposes or with the calculation by which its share of the fee was determined to petition the Board for a correction.   Petitions must: (1) include an explanation of why the company believes the classification or calculation was in error, (2) be in writing, and (3) be received on or before the 30th day after the invoice date.



**PCAOB**

Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 3

## FAQs

The Board will notify the issuer of its decision on the petition in writing. Depending on the circumstances, and in its discretion, the Board may consider a petition that is not received within the required time period.

### *Payment FAQs*

**6.    If I pay my invoices online, is the payment processing system secure?**

The payment processing system utilizes a third-party payment provider to process payment transactions. The payment provider's system was created to address issues of confidentiality, data integrity, non-repudiation, and auditability utilizing industry standard 128-bit encryption, data integrity checking, and logging.

**7.    If I pay my invoices online, will a receipt or confirmation of payment be provided?**

Yes. The payment Web site provides an Accounting Support Fee Payment Receipt page that provides the amount paid, a transaction number and date. Please note that these transactions may take 3-4 business days to clear your bank account. This receipt, assuming it is for the full amount invoiced, along with proof of debit from your bank account, constitutes confirmation of your payment. Please see Questions 16 through 25 for issues relating to confirmation of payment of the accounting support fee by registered accounting firms.

### *Issuer-Specific FAQs*

**8.    I believe the records maintained by my company regarding my company's shares outstanding are more accurate than those used by the PCAOB. If I provide that data to the PCAOB, may I have my company's share of the accounting support fee recalculated using that data?**

No. Because the accounting support fee is allocated among more than 10,000 issuers, the PCAOB uses market capitalization and net asset value information from nationally recognized market-data sources. These market-data sources primarily obtain the number of shares outstanding from issuers' filings with the Securities and Exchange Commission. This is a reliable source of data for calculating the accounting support fee

# PCAOB
Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 4

## FAQs

allocation because the data it contains is both readily available and required to be truthful under penalty of law. In addition, it provides a common basis among the issuer population for determining the combined market capitalization of all issuers.

**9.    My company became an "issuer" during the preceding calendar year. Will its monthly market capitalization be considered $0 for those months prior to the becoming an "issuer"?**

No. As required by the PCAOB's funding rules, the PCAOB uses issuers' average monthly market capitalization during the preceding calendar year as a proxy for determining the size of an issuer for purposes of allocating the current year's accounting support fee. Accordingly, the PCAOB uses the monthly market capitalization for only those months of the preceding calendar year that the company was an "issuer" and therefore, had shares outstanding and public share price data available. Therefore, in some situations, the average monthly market capitalization of an issuer will be based on fewer than the full 12 months.

**10.    My company ceased being an "issuer" *after the date the accounting support fee was calculated.*  Do we still have to pay?**

Yes. For 2009, the accounting support fee was calculated on March 27, 2009. Under the PCAOB's funding rules, all companies that were "issuers," as that term is defined in PCAOB Rule 1001(i)(iii), as of that date were subject to the accounting support fee (assuming they met the average monthly market capitalization threshold and were not otherwise a type of issuer that is exempt from the fee). The fact that an entity ceases to be an "issuer" after that date does not relieve the issuer of its responsibility for a share of the accounting support fee.

**11.    My company ceased being an "issuer" *before the date the accounting support fee was calculated.*  Do we still have to pay?**

No. For 2009, the accounting support fee was calculated on March 27, 2009. For purposes of allocating the accounting support fee among issuers, only those entities that were "issuers," as that term is defined in PCAOB Rule 1001(i)(iii), as of that date were allocated a share of the fee pursuant to the formula set forth in Rule 7101(b). If



# PCAOB

Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 5

## FAQs

you believe your company was not an "issuer" on that date and received an invoice in error, please contact the PCAOB at BillingFAQ@pcaobus.org.

**12.   If an entity files periodic reports with the Securities and Exchange Commission on a strictly voluntary basis, will it be considered an "issuer" under the Sarbanes-Oxley Act and the rules of the Board for purposes of determining whether it must pay a share of the accounting support fee?**

No.   If an entity voluntarily files periodic reports with the SEC, the entity is not an "issuer" for purposes of allocating the accounting support fee and will not, therefore, be allocated a portion of the fee.   An entity that makes periodic filings with the Commission only pursuant to a requirement contained in its bond indenture would be an example of such a voluntary filer.   This situation is distinguished from one in which a company *voluntarily registers* securities with the SEC.   In this situation, the issuer is required to file periodic reports and may, if it otherwise satisfied the requirements of PCAOB Rule 7101, be allocated a share of the accounting support fee.

**13.   If an issuer was subject to the jurisdiction of a bankruptcy court on the date the accounting support fee was calculated and satisfied the modified reporting requirements of Commission Staff Legal Bulletin No. 2, must it pay a share of the accounting support fee?**

No.   Under PCAOB Rule 7101(a)(3), any issuer that was, as of the date the accounting support fee was calculated, subject to the jurisdiction of the bankruptcy court and that satisfied the modified reporting requirements of *Securities and Exchange Commission Staff Legal Bulletin No. 2* was placed into a class of issuers that is allocated a share of the accounting support fee equal to $0.   For 2009, the accounting support fee was calculated on March 27, 2009.   If you believe your company satisfied these criteria on that date and received an invoice in error, please contact the PCAOB at BillingFAQ@pcaobus.org.



# PCAOB
Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 6

## FAQs

**14.    For an issuer of "global shares," will the average monthly market capitalization calculation include all of the global shares outstanding?**

Yes.  Global shares are a single class of shares registered with the Securities and Exchange Commission and traded in both the issuer's home country (typically Germany) and in the United States.  Accordingly, for each global share issuer, the PCAOB included all of the issued and outstanding global shares, regardless of where they were actually held or traded, in its calculation, consistent with the calculation methodology used for all domestic U.S. equity issuers.

**15.    For a Canadian issuer, will the average monthly market capitalization calculation include all of its shares outstanding in both the United States and Canada?**

Yes.  A number of Canadian companies have a single class of equity securities registered with the Securities and Exchange Commission that are listed for trading in both Canada and in the United States.  For these issuers, the PCAOB's funding rules include all issued and outstanding shares of the class of equity securities that are listed for trading in the United States — regardless of whether the individual shares within that class were actually held or traded in the United States — in the calculation of the average monthly issuer market capitalization.  Accordingly, the PCAOB calculated the share of the accounting support fees based on the total market capitalization of this class of equity securities, consistent with the calculation methodology used for issuers of "global shares."

### *Confirmation FAQs*

**16.    What do the PCAOB's rules require an auditor to do with respect to an issuer's share of the accounting support fee?**

PCAOB Rule 7103(b)(1) provides that a registered public accounting firm generally may not sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, unless the registered public accounting firm has ascertained that the issuer has no outstanding past-due share of the accounting support fee.



Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 7

## FAQs

**17.    Are there any exceptions to the auditor's requirement under Rule 7103(b)?**

There are three exceptions.

First, PCAOB Rule 7102(c) allows an issuer, under certain circumstances, to petition for correction of its share of the accounting support fee.  Rule 7103(b)(1) does not prohibit a registered public accounting firm from signing an unqualified opinion, or issuing a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer who has an outstanding past-due share of the accounting support fee if that issuer has a petition for correction pending as to that outstanding share.

Second, PCAOB Rule 7103(b)(2) creates a one-time exception to take account of a situation in which an issuer may have a past-due share of the accounting support fee – including possibly through mistake, inadvertence, or confusion – at a time when the issuer needs to access or to preserve its ability to access the capital markets in a timely manner.  To avoid unnecessarily preventing issuers in these situations from submitting a report to, or making a filing with, the Securities and Exchange Commission or from issuing securities, Rule 7103(b)(2) creates a one-time, time-limited exception to the prohibition in Rule 7103(b)(1).[1]  This exception may be invoked only once per assessment.

Third, until further notice, the Board will not enforce Rule 7103(b) against a registered public accounting firm that signs an unqualified audit opinion, or issues a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer whose outstanding past-due shares of the accounting support fees of the PCAOB or the Financial Accounting Standards Board ("FASB") total less than $50 each.

---

[1]     More details on how an issuer avails itself of this exception are in PCAOB Rule 7103(b)(2) and Note 2 to PCAOB Rule 7103(b).  The exception provided by Rule 7103(b)(2) does not in any way modify the issuer's legal obligation to pay its assessed share of the accounting support fee.



## FAQs

**18.   If an issuer has paid its original share of the accounting support fee, but not interest due under the PCAOB's rules, may the auditor sign an unqualified opinion?**

Interest, which accrues from the date payment is past due, represents the time-value of the share of the accounting support fee that should have been paid and is therefore treated, for purposes of Rule 7103, as part of the assessed share of the accounting support fee.   Accordingly, unless one of the exceptions described in the answer to Question No. 17 above applies, the auditor may not sign an unqualified opinion or issue a consent even if the only outstanding amount due relates to interest charged on the original amount due.   For issuers that owe only interest, auditors should consider whether the third exception noted in the answer to Question No. 17 above applies. Under that exception, until further notice, the Board will not enforce Rule 7103(b) against a registered public accounting firm that signs an unqualified audit opinion, or issues a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer whose outstanding past-due shares of the accounting support fees of the PCAOB or the FASB total less than $50 each.

**19.   How may an auditor ascertain that an issuer has no outstanding past-due share of the accounting support fee?**

Note 1 to PCAOB Rule 7103(b)(2) provides that a "registered public accounting firm may ascertain that an issuer has no outstanding past-due share of the accounting support fee by obtaining a representation from the issuer or a confirmation from the Board that no past-due share of the accounting support fee is outstanding."

**20.   How may I obtain a confirmation from the PCAOB?**

For issuers that have paid their accounting support fee invoices in full, the quickest way to obtain confirmation is through the Board's Web site.   The PCAOB posts a list of issuers that have no outstanding past-due share of the accounting support fees of the PCAOB     and     the     FASB.     The     list     is     available     at http://www.pcaobus.org/Support_Fees/Issuers_Paid.pdf.   The PCAOB confirms, for purposes of Note 1 to PCAOB Rule 7103(b), that the issuers on this list have no outstanding past-due share of the accounting support fee.   If an issuer is not on the list,



**PCAOB**
Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
April 29, 2009
Page 9

## FAQs

you may still be able to obtain a confirmation from the PCAOB. <u>See</u> Question No. 23 below.

**21.    Is being listed on the confirmation list on the PCAOB's Web site sufficient to not preclude an auditor from signing an unqualified report under the PCAOB's rules?**

Yes.  A registered public accounting firm may take the inclusion of an issuer on this list as PCAOB confirmation pursuant to Note 1 to PCAOB Rule 7103(b).

**22.    If an issuer is not on the list on the Web site, does that mean it has a past-due share of the accounting support fee?**

Not necessarily.  Many issuers are not allocated a share of the accounting support fee of the PCAOB or of the FASB under the Board's funding rules and, therefore, would not be on this list, even though they have no outstanding past-due share of the accounting support fee.  In addition, a brief period of time may pass between when a payment is received by the PCAOB and when the list is updated to reflect that payment.

**23.    What can I do to ascertain payment if the issuer is not on the Web site list?**

If a registered public accounting firm cannot obtain a representation from the issuer or cannot confirm from the list on the Board's Web site that the issuer has no outstanding past-due share of the accounting support fee, the registered public accounting firm may contact the PCAOB by e-mail at confirm@pcaobus.org.

**24.    Is a management representation sufficient to not preclude the auditor from signing an unqualified report?**

Yes.  For a registered public accounting firm to comply with Rule 7103(b)(1), obtaining a representation from the issuer that the issuer has no outstanding past-due share of the accounting support fee is sufficient; the registered public accounting firm need not also obtain a confirmation from the Board that no past-due share of the accounting support fee is outstanding.  The mere fact that an issuer is not on the Board's Web site confirmation list is not, in and of itself, a reason for a registered public accounting firm to believe that an issuer's representation is inaccurate.



# PCAOB
Public Company Accounting Oversight Board

**FAQs**

**25.    If an issuer has received an invoice for a share of an accounting support fee, but that share is not yet due, may its auditor sign an unqualified audit report for that issuer?**

Yes, so long as there is no past-due share outstanding from a prior year. PCAOB Rule 7103(b)(1) provides that a registered public accounting firm generally may not sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, unless the registered public accounting firm has ascertained that the issuer has no outstanding past-due share of the accounting support fee. If an issuer's invoice for a share of the accounting support fee is not yet due, then the issuer has no outstanding past-due share of that year's accounting support fee.

Exhibit 3

# CIRCUIT CITY STORES INC (2009)

### Issuer Details

| | | | |
|---|---|---|---|
| Issuer ID | **103016** | | |
| Billing Address | ATTN: BRUCE H. BESANKO, C.F.O<br>9950 MAYLAND DR<br>RICHMOND, VA 23233-1463 | SEC Listed Address | 9950 MAYLAND DRIVE<br>RICHMOND , VA 23233 |
| Issuer Class | 1 | Issuer Type | Equity Company |

| | |
|---|---|
| **Funding Year** | **2009** |
| CIK | 104599 |
| PCAOB Invoice Amount ($) | 4,000 |
| FASB Invoice Amount ($) | 700 |
| Market Cap /NAV ($) | 443,421,648 |

CCTYQ|CUSIP: 172737108|Exchg: Other-OTC|Descr: COM USD.5

| Year | Month | Price ($) | Shares | Mkt Cap / NAV ($) |
|---|---|---|---|---|
| 2008 | JAN | 5.4400 | 168,366,000 | 915,911,040 |
| 2008 | FEB | 4.4200 | 168,366,000 | 744,177,720 |
| 2008 | MAR | 3.9800 | 168,366,000 | 670,096,680 |
| 2008 | APR | 4.7400 | 168,806,000 | 800,140,440 |
| 2008 | MAY | 4.9100 | 168,806,000 | 828,837,460 |
| 2008 | JUN | 2.8900 | 168,806,000 | 487,849,340 |
| 2008 | JUL | 2.0200 | 168,512,000 | 340,394,240 |
| 2008 | AUG | 1.8000 | 168,512,000 | 303,321,600 |
| 2008 | SEP | 0.7600 | 168,125,000 | 127,775,000 |
| 2008 | OCT | 0.2600 | 168,125,000 | 43,712,500 |
| 2008 | NOV | 0.2200 | 168,125,000 | 36,987,500 |
| 2008 | DEC | 0.1300 | 168,125,000 | 21,856,250 |
| Average | | | | 443,421,648 |

| | |
|---|---|
| Average Issuer Market Cap. | 443,421,648 |



**PCAOB**

Public Company Accounting Oversight Board

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

June 29, 2009

Circuit City Stores, Inc., <u>et al.</u>
Claims Processing Dept.
Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

   Re: Request for payment of Administrative Expense incurred by Circuit
     City Stores, Inc.

Dear Sir or Madam,

   The purpose of this letter is to submit a request for payment on behalf of
the Public Company Accounting Oversight Board (the "Board" or "PCAOB") and
the Financial Accounting Standards Board ("FASB") of Administrative Expenses
from Circuit City Stores, Inc. pursuant to the Notice of Deadline for Filing
Administrative Expense Request. The PCAOB sent two invoices, dated April 29,
2009, to Circuit City Stores, Inc. for $4,700.00 combined representing the
company's assessed shares of the PCAOB and FASB accounting support fees.[1]
We believe that the assessed shares of the accounting support fees represent
Administrative Expenses as that term is defined in the Notice of Deadline for
Filing Administrative Expense Request and arose after November 10, 2008,
through and including April 30, 2009. The following sets forth the legal and
factual basis for the amounts invoiced to Circuit City Stores, Inc. by the Board
and the Board's request for payment of this amount.

   The PCAOB is a private, non-profit corporation established by the
Sarbanes-Oxley Act of 2002 (the "Act"), 15 U.S.C. §§ 7201 <i>et seq.</i>, to oversee
the auditors of public companies in order to protect the interests of investors and
further the public interest in the preparation of informative, fair and independent
audit reports. The FASB, since 1973, has been the designated organization in
the private sector for establishing standards of financial accounting and reporting.
Pursuant to Section 108 of the Act, 15 U.S.C. § 7218, on April 25, 2003, the U.S.

---

   [1] Of the $4,700.00 invoiced amount, $4,000.00 represents the accounting support fee for
the PCAOB (Invoice # P-103016-092) and $700.00 represents the accounting support fee for the FASB
(Invoice # F-103016-093). The Financial Accounting Foundation ("FAF"), which is responsible for the
oversight, administration, and finance of the FASB, has designated the PCAOB as the collection agent with
respect to FASB's accounting support fee pursuant to a Collection Agent Agreement, dated August 1,
2003, by and between the PCAOB and the FAF.


Public Company Accounting Oversight Board

Circuit City Stores
June 29, 2009
Page 2

Securities and Exchange Commission ("SEC") recognized the FASB as the standard-setting body whose accounting principles are "generally accepted" for purposes of the securities laws.

Section 109 of the Act, 15 U.S.C. § 7219, provides that funds to cover the Board's annual budget (less registration and annual fees paid by public accounting firms) and the FASB's annual budget are to be collected from "issuers," as defined in the Act. The amount due from such companies is referred to in the Act as the annual "accounting support fee" for both the Board and the FASB, respectively. Pursuant to Section 109, the PCAOB's budget must be approved by the SEC, including the annual accounting support fee, and the FASB's budget is subject to review by the SEC.

Once the Board's budget and annual accounting support fee is approved by and the FASB's budget is reviewed by the SEC, the Board computes the allocation of the accounting support fees to issuers pursuant to its funding rules.[2] Invoices are sent to each issuer assessed a share, respectively, of the Board's and/or the FASB's accounting support fee reflecting that issuer's share of the respective accounting support fee based on that issuer's average monthly market capitalization during the preceding calendar year relative to the total average monthly market capitalization of all equity and investment company issuers during the same period. Accordingly, Circuit City Stores, Inc.'s assessed share of the PCAOB accounting support fee of $4,000.00 and assessed share of the FASB accounting support fee of $700.00 were based on its average monthly market capitalization during the 2008 calendar year relative to the total average monthly market capitalization of all equity and investment company Issuers during the same period. Invoices, dated April 29, 2009, were sent to Circuit City Stores, Inc. informing it of its assessed share of the Board's accounting support fee of $4,000.00 and its assessed share of the FASB's accounting support fee of $700.00.

In furtherance of the Board's request for payment of Circuit City Stores, Inc.'s assessed shares of the respective accounting support fees, which we believe represent Administrative Expenses, please find enclosed (i) a copy of the invoices, dated April 29, 2009, and all related material provided with the invoices;

---

[2]        The Board's funding rules were approved by the SEC on August 1, 2003. *See* SEC Release No. 34-48278 (August 1, 2003). As contemplated in Section 109(e) of the Act, the FASB has designated the allocation formula set forth in PCAOB Rule 7101 as the allocation to be used for the FASB accounting support fee.


**PCAOB**
Public Company Accounting Oversight Board

Circuit City Stores
June 29, 2009
Page 3

(ii) a copy of the PCAOB funding rules; and (iii) Section 109 of the Act.  We
would be happy to provide additional information as requested.


      Please contact Ms. Nina Mojiri-Azad, Assistant General Counsel, at (202)
207-9035 or Ms. Mary Peters, Assistant General Counsel, at (202) 207-9042 if
you have any questions or require further information regarding the Board's
payment request.

                              Sincerely,

                              J. Gordon Seymour
                              General Counsel


Enclosures

**Public Company Accounting Oversight Board
Bylaws and Rules – Rules – Funding**

## SECTION 7.  FUNDING

**Rule 7000.   [Reserved]**

[Reserved]

**Rule 7100.   Accounting Support Fee.**

The Board shall calculate an accounting support fee each year. The accounting support fee shall equal the budget of the Board, as approved by the Commission, less the sum of all registration fees and annual fees received during the preceding calendar year from public accounting firms, pursuant to Section 102(f) of the Act and the Rules of the Board.

[Effective pursuant to SEC Release No. 34-48278, File No. PCAOB-2003-02 (August 1, 2003)]

**Rule 7101.   Allocation of Accounting Support Fee.**

**(a)      Classes of Issuers**

For purposes of allocating the accounting support fee, those entities that are issuers as of the date the accounting support fee is calculated under Rule 7100 shall be divided into four classes:

**(1)      Equity Issuers**

All issuers whose average, monthly issuer market capitalization during the preceding calendar year is greater than $25 million, other than those described in paragraphs (a)(2) and (a)(3) of this Rule, and whose share price on a monthly, or more frequent, basis is publicly available.

Note:  Average, monthly market capitalization will be based on closing stock prices on the closest trading day on or before the last day of each calendar month measured.

**(2)      Investment Company Issuers**

All issuers (i) who, as of the date the accounting support fee is calculated under Rule 7100, are registered under Section 8 of the Investment Company Act or have elected to be regulated as business development companies pursuant to Section 54 of the Investment Company Act, other than those described in paragraph (a)(3), (ii) whose average, monthly issuer market capitalization during the preceding calendar year is greater than $250 million, and (iii) whose share price (or net asset value) on a monthly, or more frequent, basis is publicly-available.

**Public Company Accounting Oversight Board**
**Bylaws and Rules – Rules – Funding**

Note:  Average, monthly market capitalization will be based on closing stock prices on the closest trading day on or before the last day of each calendar month measured.

### (3)    Issuers Permitted Not to File Audited Financial Statements and Bankrupt Issuers that File Modified Reports

All issuers that, as of the date the accounting support fee is calculated under Rule 7100, (i) have a basis, under a Commission rule or pursuant to other action of the Commission or its staff, not to file audited financial statements, (ii) are employee stock purchase, savings and similar plans, interests in which constitute securities registered under the Securities Act, or (iii) are subject to the jurisdiction of a bankruptcy court and satisfy the modified reporting requirements of Commission Staff Legal Bulletin No. 2.

Note: As of April 16, 2003, issuers within paragraph (a)(3)(i) of this Rule include (A) asset-backed issuers, (B) unit investment trusts, as defined in Section 4(2) of the Investment Company Act, that have not filed or updated a registration statement that became effective during the preceding year, and (C) Small Business Investment Companies registered on Form N-5 under the Investment Company Act, that have not filed or updated a registration statement that became effective during the preceding year.

### (4)    All Other Public Company Issuers

All issuers other than those described in paragraphs (a)(1), (a)(2) or (a)(3) of this Rule.

### (b)    Allocation of Accounting Support Fee Among Issuers

The accounting support fee shall be allocated among the classes in paragraph (a) of this Rule as follows:

### (1)    Equity and Investment Company Issuers

Each issuer described in paragraph (a)(1) and (a)(2) of this Rule shall be allocated a share of the accounting support fee in an amount equal to the accounting support fee multiplied by a fraction –

(i)    the numerator of which is the average, monthly market capitalization of the issuer during the preceding calendar year, except that for issuers described in paragraph (a)(2) of this Rule, the numerator is one-tenth of the average, monthly market capitalization of the issuer; and

As of August 25, 2009

**Public Company Accounting Oversight Board**
**Bylaws and Rules – Rules – Funding**

(ii)    the denominator of which is the sum of the average, monthly market capitalizations of the issuers described in paragraph (a)(1) of this Rule and one-tenth of the average, monthly market capitalizations of the issuers described in paragraph (a)(2) of this Rule.

### (2)    All Other Classes

Each issuer described in paragraphs (a)(3) and (a)(4) of this Rule shall be allocated a share of the accounting support fee equal to $0.

### (c)    Adjustments

After the accounting support fee is calculated under Rule 7100 and allocated under this Rule, any adjustment to the share allocated to an issuer shall not affect the share allocated to any other issuer.

[Effective pursuant to SEC Release No. 34-48278, File No. PCAOB-2003-02 (August 1, 2003)]

## Rule 7102.    Assessment of Accounting Support Fee.

### (a)    Amount of Assessment

Each issuer is required to pay its share of the accounting support fee, as allocated under Rule 7101, rounded to the nearest hundred.

Note:  If an issuer's share of the accounting support fee is less than $50, that issuer will not be assessed. If the issuer's share of the accounting support fee is exactly $50 more than a multiple of $100, then the share will be rounded up to the nearest $100.

### (b)    Notice of Assessment

The Board will use its best efforts to send a notice to each issuer, either electronically or by first-class mail, at the address shown on such issuer's most recent periodic report filed with the Commission, at the address submitted to the Commission's EDGAR system, or at such other address as the issuer provides to the Board. The Board's failure to send an issuer a notice, or the issuer's failure to receive a notice sent by the Board, shall not constitute a waiver of the Board's right to assess such issuer for its share of the accounting support fee or of the issuer's responsibility to pay its share of the accounting support fee.

### (c)    Petition for Correction

Any issuer who disagrees with the class in which it has been placed, or with the calculation by which its share of the accounting support fee was determined, may

**Public Company Accounting Oversight Board**
**Bylaws and Rules – Rules – Funding**

petition the Board for a correction of the share of the accounting support fee it was allocated.   Any such petition shall include an explanation of the nature of the claimed mistake in classification or calculation, in writing, on or before the 30th day after the notice is sent.   After a review of such a petition, the Board will determine whether the allocation is consistent with Section 109 of the Act and the Board's rules thereunder and provide the issuer a written explanation of its decision.   The provisions of Rule 7103 shall be suspended while such a petition is pending before the Board.

[Effective pursuant to SEC Release No. 34-48278, File No. PCAOB-2003-02 (August 1, 2003)]

**Rule 7103.   Collection of Accounting Support Fee.**

**(a)      Accounting Support Fee Payment Due Date**

Unless the Board directs otherwise, payment shall be due on the 30th day after the notice is sent. Beginning on the 31st day, payment shall be deemed past due and interest shall accrue at a rate of 6 percent per annum.

**(b)      Confirmation of Payment of Accounting Support Fee by Registered Accounting Firm**

(1)      Except as provided in paragraph (b)(2) of this Rule, no registered public accounting firm shall sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, unless the registered public accounting firm has ascertained that the issuer has outstanding no past-due share of the accounting support fee or has a petition pursuant to Rule 7102(c) pending.

(2)      A registered public accounting firm may sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, even though the issuer has outstanding a past-due share of the accounting support fee and has not filed a petition under Rule 7102(c), if the issuer needs the report or consent in order to submit a report to, or make a filing with, the Commission or to issue securities.   The issuer shall submit to the Board a notice of the signing of the opinion or issuance of the consent not later than the next business day after the filing is made with the Commission. This exception to paragraph (b)(1) of this Rule shall not continue longer than 15 business days after the earlier of the date of the notice's submission or the filing of the report with the Commission, and may not be invoked for more than one such period with respect to any share of the accounting support fee that the issuer is assessed under Rule 7102.

Note 1:  A registered public accounting firm may ascertain that an issuer has no outstanding past-due share of the accounting support fee by obtaining a representation from the issuer or a confirmation from the Board that no past-due share of the accounting support fee is outstanding.

**Public Company Accounting Oversight Board**
**Bylaws and Rules – Rules – Funding**

Note 2:  A notice pursuant to paragraph (b)(2) of this Rule must be submitted electronically by email to rule7103stay@pcaobus.org.

(c)    **Report to the Commission of Non-payment of an Accounting Support Fee**

If an issuer has not paid its share of the accounting support fee by the 60th day after the notice was sent, and the issuer does not have a petition pursuant to Rule 7102(c) pending, the Board may send a second notice to such issuer by certified mail. If the Board has sent such a second notice and has not been paid by the 90th day after the original notice was sent, the Board may report the issuer's nonpayment to the Commission.

Note:  Section 13(b)(2) of the Exchange Act provides, in part, that: "Every issuer which has a class of securities registered pursuant to section 12 of this title and every issuer which is required to file reports pursuant to section 15(d) of this title shall – * * * (C) notwithstanding any other provision of law, pay the allocable share of such issuer of a reasonable accounting support fee or fees, determined in accordance with Section 109 of the Sarbanes-Oxley Act of 2002."

(d)    **Excess Fees**

If in any Board fiscal year, the Board receives fees in excess of the budget for that fiscal year, the Board shall hold those excess fees in escrow. Such escrowed excess fees shall be released to the Board at the beginning of the next fiscal year and shall reduce the Board's accounting support fee in that next fiscal year.

[Effective pursuant to SEC Release No. 34-48278, File No. PCAOB-2003-02 (August 1, 2003)]

**Rule 7104.    Service as Designated Collection Agent.**

If the Board is designated to serve as collection agent for an accounting support fee of a standard-setting body designated by the Commission pursuant to Section 19(b) of the Securities Act, the assessment and collection of the accounting support fee shall be governed by Rules 7102 and 7103 as if the accounting support fee of the standard-setting body were the accounting support fee of the Board.

[Effective pursuant to SEC Release No. 34-48278, File No. PCAOB-2003-02 (August 1, 2003)]

H. R. 3763

# One Hundred Seventh Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Wednesday,*
*the twenty-third day of January, two thousand and two*

## An Act

To protect investors by improving the accuracy and reliability of corporate disclosures
made pursuant to the securities laws, and for other purposes.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Sarbanes-
Oxley Act of 2002".

(b) TABLE OF CONTENTS.—The table of contents for this Act
is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Definitions.
Sec. 3. Commission rules and enforcement.

TITLE I—PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD

Sec. 101. Establishment; administrative provisions.
Sec. 102. Registration with the Board.
Sec. 103. Auditing, quality control, and independence standards and rules.
Sec. 104. Inspections of registered public accounting firms.
Sec. 105. Investigations and disciplinary proceedings.
Sec. 106. Foreign public accounting firms.
Sec. 107. Commission oversight of the Board.
Sec. 108. Accounting standards.
Sec. 109. Funding.

TITLE II—AUDITOR INDEPENDENCE

Sec. 201. Services outside the scope of practice of auditors.
Sec. 202. Preapproval requirements.
Sec. 203. Audit partner rotation.
Sec. 204. Auditor reports to audit committees.
Sec. 205. Conforming amendments.
Sec. 206. Conflicts of interest.
Sec. 207. Study of mandatory rotation of registered public accounting firms.
Sec. 208. Commission authority.
Sec. 209. Considerations by appropriate State regulatory authorities.

TITLE III—CORPORATE RESPONSIBILITY

Sec. 301. Public company audit committees.
Sec. 302. Corporate responsibility for financial reports.
Sec. 303. Improper influence on conduct of audits.
Sec. 304. Forfeiture of certain bonuses and profits.
Sec. 305. Officer and director bars and penalties.
Sec. 306. Insider trades during pension fund blackout periods.
Sec. 307. Rules of professional responsibility for attorneys.
Sec. 308. Fair funds for investors.

TITLE IV—ENHANCED FINANCIAL DISCLOSURES

Sec. 401. Disclosures in periodic reports.
Sec. 402. Enhanced conflict of interest provisions.
Sec. 403. Disclosures of transactions involving management and principal stock-
holders.

H. R. 3763—25

"(2) ANNUAL REPORT.—A standard setting body described in paragraph (1) shall submit an annual report to the Commission and the public, containing audited financial statements of that standard setting body.".

(b) COMMISSION AUTHORITY.—The Commission shall promulgate such rules and regulations to carry out section 19(b) of the Securities Act of 1933, as added by this section, as it deems necessary or appropriate in the public interest or for the protection of investors.

(c) NO EFFECT ON COMMISSION POWERS.—Nothing in this Act, including this section and the amendment made by this section, shall be construed to impair or limit the authority of the Commission to establish accounting principles or standards for purposes of enforcement of the securities laws.

(d) STUDY AND REPORT ON ADOPTING PRINCIPLES-BASED ACCOUNTING.—

(1) STUDY.—

(A) IN GENERAL.—The Commission shall conduct a study on the adoption by the United States financial reporting system of a principles-based accounting system.

(B) STUDY TOPICS.—The study required by subparagraph (A) shall include an examination of—

(i) the extent to which principles-based accounting and financial reporting exists in the United States;

(ii) the length of time required for change from a rules-based to a principles-based financial reporting system;

(iii) the feasibility of and proposed methods by which a principles-based system may be implemented; and

(iv) a thorough economic analysis of the implementation of a principles-based system.

(2) REPORT.—Not later than 1 year after the date of enactment of this Act, the Commission shall submit a report on the results of the study required by paragraph (1) to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives.

## SEC. 109. FUNDING.

(a) IN GENERAL.—The Board, and the standard setting body designated pursuant to section 19(b) of the Securities Act of 1933, as amended by section 108, shall be funded as provided in this section.

(b) ANNUAL BUDGETS.—The Board and the standard setting body referred to in subsection (a) shall each establish a budget for each fiscal year, which shall be reviewed and approved according to their respective internal procedures not less than 1 month prior to the commencement of the fiscal year to which the budget pertains (or at the beginning of the Board's first fiscal year, which may be a short fiscal year). The budget of the Board shall be subject to approval by the Commission. The budget for the first fiscal year of the Board shall be prepared and approved promptly following the appointment of the initial five Board members, to permit action by the Board of the organizational tasks contemplated by section 101(d).

(c) SOURCES AND USES OF FUNDS.—

H. R. 3763—26

(1) RECOVERABLE BUDGET EXPENSES.—The budget of the
Board (reduced by any registration or annual fees received
under section 102(e) for the year preceding the year for which
the budget is being computed), and all of the budget of the
standard setting body referred to in subsection (a), for each
fiscal year of each of those 2 entities, shall be payable from
annual accounting support fees, in accordance with subsections
(d) and (e). Accounting support fees and other receipts of the
Board and of such standard-setting body shall not be considered
public monies of the United States.

(2) FUNDS GENERATED FROM THE COLLECTION OF MONETARY
PENALTIES.—Subject to the availability in advance in an appro-
priations Act, and notwithstanding subsection (i), all funds
collected by the Board as a result of the assessment of monetary
penalties shall be used to fund a merit scholarship program
for undergraduate and graduate students enrolled in accredited
accounting degree programs, which program is to be adminis-
tered by the Board or by an entity or agent identified by
the Board.

(d) ANNUAL ACCOUNTING SUPPORT FEE FOR THE BOARD.—

(1) ESTABLISHMENT OF FEE.—The Board shall establish,
with the approval of the Commission, a reasonable annual
accounting support fee (or a formula for the computation
thereof), as may be necessary or appropriate to establish and
maintain the Board. Such fee may also cover costs incurred
in the Board's first fiscal year (which may be a short fiscal
year), or may be levied separately with respect to such short
fiscal year.

(2) ASSESSMENTS.—The rules of the Board under paragraph
(1) shall provide for the equitable allocation, assessment, and
collection by the Board (or an agent appointed by the Board)
of the fee established under paragraph (1), among issuers,
in accordance with subsection (g), allowing for differentiation
among classes of issuers, as appropriate.

(e) ANNUAL ACCOUNTING SUPPORT FEE FOR STANDARD SETTING
BODY.—The annual accounting support fee for the standard setting
body referred to in subsection (a)—

(1) shall be allocated in accordance with subsection (g),
and assessed and collected against each issuer, on behalf of
the standard setting body, by 1 or more appropriate designated
collection agents, as may be necessary or appropriate to pay
for the budget and provide for the expenses of that standard
setting body, and to provide for an independent, stable source
of funding for such body, subject to review by the Commission;
and

(2) may differentiate among different classes of issuers.

(f) LIMITATION ON FEE.—The amount of fees collected under
this section for a fiscal year on behalf of the Board or the standards
setting body, as the case may be, shall not exceed the recoverable
budget expenses of the Board or body, respectively (which may
include operating, capital, and accrued items), referred to in sub-
section (c)(1).

(g) ALLOCATION OF ACCOUNTING SUPPORT FEES AMONG
ISSUERS.—Any amount due from issuers (or a particular class of
issuers) under this section to fund the budget of the Board or
the standard setting body referred to in subsection (a) shall be
allocated among and payable by each issuer (or each issuer in

H. R. 3763—27

a particular class, as applicable) in an amount equal to the total
of such amount, multiplied by a fraction—

> (1) the numerator of which is the average monthly equity
> market capitalization of the issuer for the 12-month period
> immediately preceding the beginning of the fiscal year to which
> such budget relates; and

> (2) the denominator of which is the average monthly equity
> market capitalization of all such issuers for such 12-month
> period.

(h) CONFORMING AMENDMENTS.—Section 13(b)(2) of the Securi-
ties Exchange Act of 1934 (15 U.S.C. 78m(b)(2)) is amended—

> (1) in subparagraph (A), by striking "and" at the end;
> and

> (2) in subparagraph (B), by striking the period at the
> end and inserting the following: "; and

> "(C) notwithstanding any other provision of law, pay the
> allocable share of such issuer of a reasonable annual accounting
> support fee or fees, determined in accordance with section 109
> of the Sarbanes-Oxley Act of 2002.".

(i) RULE OF CONSTRUCTION.—Nothing in this section shall be
construed to render either the Board, the standard setting body
referred to in subsection (a), or both, subject to procedures in
Congress to authorize or appropriate public funds, or to prevent
such organization from utilizing additional sources of revenue for
its activities, such as earnings from publication sales, provided
that each additional source of revenue shall not jeopardize, in
the judgment of the Commission, the actual and perceived independ-
ence of such organization.

(j) START-UP EXPENSES OF THE BOARD.—From the unexpended
balances of the appropriations to the Commission for fiscal year
2003, the Secretary of the Treasury is authorized to advance to
the Board not to exceed the amount necessary to cover the expenses
of the Board during its first fiscal year (which may be a short
fiscal year).

# TITLE II—AUDITOR INDEPENDENCE

## SEC. 201. SERVICES OUTSIDE THE SCOPE OF PRACTICE OF AUDITORS.

(a) PROHIBITED ACTIVITIES.—Section 10A of the Securities
Exchange Act of 1934 (15 U.S.C. 78j–1) is amended by adding
at the end the following:

"(g) PROHIBITED ACTIVITIES.—Except as provided in subsection
(h), it shall be unlawful for a registered public accounting firm
(and any associated person of that firm, to the extent determined
appropriate by the Commission) that performs for any issuer any
audit required by this title or the rules of the Commission under
this title or, beginning 180 days after the date of commencement
of the operations of the Public Company Accounting Oversight
Board established under section 101 of the Sarbanes-Oxley Act
of 2002 (in this section referred to as the 'Board'), the rules of
the Board, to provide to that issuer, contemporaneously with the
audit, any non-audit service, including—

> "(1) bookkeeping or other services related to the accounting
> records or financial statements of the audit client;

> "(2) financial information systems design and implementa-
> tion;

DIVISION OF CORPORATION FINANCE
SECURITIES AND EXCHANGE COMMISSION


Staff Legal Bulletin No. 2 (CF)

ACTION:  Publication of CF Staff Legal Bulletin

DATE:  April 15, 1997

SUMMARY:  This staff legal bulletin provides the Division of
Corporation Finance's views on requests to modify the Securities
Exchange Act of 1934 periodic reporting of issuers that are
either reorganizing or liquidating under the provisions of the
United States Bankruptcy Code.

SUPPLEMENTARY INFORMATION:  The statements in this legal bulletin
represent the views of the Division's staff.  This bulletin is
not a rule, regulation, or statement of the Securities and
Exchange Commission.  Further, the Commission has neither
approved nor disapproved its content.

CONTACT PERSON:  For further information please contact Anne M.
Krauskopf, Special Counsel, at (202) 942-2900.

I.    Background

        Issuers are required to file current and periodic reports
with the Commission pursuant to Sections 13(a) /1 or 15(d) /2 of
the Exchange Act /3 if they have:

> *    securities listed on a national securities
> exchange; /4
>
> *    securities registered under Section 12(g) /5 of
> the Exchange Act; or
>
> *    a registration statement that has become effective
> under the Securities Act of 1933. /6

        In June 1972, the Commission published Exchange Act Release
No. 9660, which addressed how the Exchange Act reporting
requirements apply to "[i]ssuers which have ceased or severely
curtailed their operations."  In the release, the Commission
emphasized the importance of Exchange Act reporting in preserving
free, fair, and informed securities markets.  The Commission
stated, however, that "when not inconsistent with the protection
of investors, [it] would modify the reporting requirements as

they apply to particular issuers."

Companies in bankruptcy are not relieved of their reporting obligations.  Neither the United States Bankruptcy Code /7 nor the federal securities laws provide an exemption from Exchange Act periodic reporting for issuers that have filed for bankruptcy.  In the release, however, the Commission expressed the general position that, with respect to issuers subject to the jurisdiction of the Bankruptcy Court, it generally would accept reports which "differ in form or content from reports required to be filed under the Exchange Act."

The release also states that, in deciding whether to accept modified Exchange Act reports, the Commission will consider the following:  (1) how difficult it is for the issuer to obtain the information necessary to complete those reports; /8 (2) the issuer's financial condition; (3) the issuer's efforts to advise its security holders and the public of its financial condition and activities; and (4) the nature and extent of the trading in the issuer's securities.

The release provides the Commission's general position on accepting modified Exchange Act reports from issuers subject to the jurisdiction of the Bankruptcy Court.  An issuer relying on that general interpretive guidance should take all steps possible to inform its security holders and the market of its on-going financial condition and the status of its bankruptcy proceedings, including filing any available information with the Commission.

II.   Requests for Modified Exchange Act Reporting

An issuer in bankruptcy may request a "no-action" position from the Division that applies the positions in the release to the issuer's facts. /9  In providing a no-action position, the Division determines whether modified reporting is consistent with the protection of investors.  In its request, the issuer should present a clear demonstration of its inability to continue reporting, its efforts to inform its security holders and the market, and the absence of a market in its securities.

Requests often do not provide all of the information necessary for the Division's analysis.  This staff legal bulletin identifies factors the Division considers when acting on these requests.  This guidance will help issuers prepare requests and make the process more efficient and less costly.
III. Information Required in Requests

      A.    Information Regarding Disclosure of Financial
      Condition

The first factor the Division considers is whether the
issuer made efforts to inform its security holders and the market
of its financial condition.  The Division also looks at the
issuer's Exchange Act reporting history.  The request should
include the following information.

>   1.   Whether the issuer complied with its
>   Exchange Act reporting obligations before its
>   Bankruptcy Code filing

Because the issuer's efforts to inform the market of its
financial condition are important, an issuer submitting a request
should have been current in its Exchange Act reports for the 12
months before its Bankruptcy Code filing. /10  Accordingly, the
issuer should discuss its Exchange Act reporting history for that
period.

>   2.   When the issuer filed its Form 8-K
>   announcing its bankruptcy filing; whether the
>   issuer made any other efforts to advise the market
>   of its financial condition

The Division considers the timeliness of the issuer's Form 8-
K announcing its bankruptcy filing when determining whether to
grant the request. /11  The Division does not have a specific,
objective test concerning the timing of the Form 8-K filing.
However, the issuer should state the date the Form 8-K was due
and filed.  If the issuer filed the Form 8-K after the due date,
it should explain why.  The issuer also should discuss any other
efforts that it made to inform its security holders and the
market of its financial condition.

>   3.   Whether the issuer is able to continue
>   Exchange Act reporting; whether the information in
>   modified reports is adequate to protect investors

The issuer should discuss the reasons why it is unable to
continue Exchange Act reporting.  The request should discuss
specifically:  (1) whether the issuer has ceased its operations
or the extent to which the issuer has curtailed operations; (2)
why filing periodic reports would present an undue hardship to
the issuer; (3) why the issuer cannot comply with the disclosure
requirements; and (4) why the issuer believes granting the
request is consistent with the protection of investors.

Management of the issuer also should represent, if true,
that:  (1) the filing of periodic reports would present an undue
hardship; and (2) the information contained in the reports filed
with the Bankruptcy Court pursuant to the Bankruptcy Code is

sufficient for the protection of investors while the issuer is
subject to the jurisdiction of the Bankruptcy Court.

> B.   Information Regarding the Market for the Issuer's
> Securities

The Division also considers the nature and extent of trading
in the issuer's securities.  The issuer should discuss in detail
the market for its securities.  Trading of the issuer's
securities on a national securities exchange or the Nasdaq Stock
Market is, by itself, sufficient evidence that there is an active
market for those securities.  The Division will not issue a
favorable response to a request for modification of Exchange Act
reporting for those securities. /12

Issuers that do not have securities traded on a national
securities exchange or the Nasdaq Stock Market should quantify
the effect of the Bankruptcy Code filing on the trading in the
issuer's securities. /13  This information should demonstrate that
there is minimal trading in the securities. /14

The issuer should state the number of market makers for its
securities.  The issuer also should provide detailed information
regarding the number of shares traded and the number of trades
per month for each of the three months before the issuer's
Bankruptcy Code filing and each month after that filing. /15

General statements in the request that trading has been
"minimal" or "insignificant" are not sufficient to enable the
Division to reach a conclusion on the request.  An unequivocal
statement that there is "no trading" in the issuer's securities
is sufficient. /16

> C.   The Timing of the Issuer's Request for Modified
> Reporting

An issuer should submit its request promptly after it has
entered bankruptcy, not when it is preparing to emerge from
bankruptcy. /17  The Division will consider a request as submitted
"promptly" if it is filed before the date the issuer's first
periodic report is due following the issuer's filing for
bankruptcy. /18

IV.  Positions Taken by the Division in Granting Requests

> A.   Reports Required While Bankruptcy Proceedings are
> Pending

Generally, the Division will accept, instead of Form 10-K
and 10-Q filings, the monthly reports an issuer must file with
the Bankruptcy Court under Rule 2015. /19  The issuer must file

each monthly report with the Commission on a Form 8-K within 15
calendar days after the monthly report is due to the Bankruptcy
Court.

Notably, the relief given applies only to filing Forms 10-K
and 10-Q. /20  The issuer still must satisfy all other provisions
of the Exchange Act, including filing the current reports
required by Form 8-K and satisfying the proxy, issuer tender
offer and going-private provisions. /21

Issuers reorganizing under the jurisdiction of the
Bankruptcy Court must file a Form 8-K to disclose any material
events relating to the reorganization.  Issuers liquidating under
the jurisdiction of the Bankruptcy Court must file a Form 8-K to
disclose whether any liquidation payments will be made to
security holders, the amount of any liquidation payments, the
amount of any expenses incurred, and any other material events
relating to the liquidation. /22

B.    Reports Required Upon Emergence From Bankruptcy

1.    An issuer that is reorganized under its
bankruptcy plan

When an issuer's reorganization plan becomes effective, the
issuer must file an appropriate Form 8-K.  That Form 8-K should
include the issuer's audited balance sheet.  From then on, the
issuer must file Exchange Act periodic reports for all periods
that begin after the plan becomes effective. /23

Any post-reorganization filings under the Securities Act or
the Exchange Act must include audited financial statements
prepared in accordance with generally accepted accounting
principles for all periods for which audited financial statements
are required even though the issuer may have been subject to
bankruptcy proceedings during some portion of those periods. /24

2.    An issuer that is liquidated under its
bankruptcy plan

After the issuer's liquidation plan becomes effective, the
issuer must continue to disclose material events relating to the
liquidation on Form 8-K.  At the time the liquidation is
complete, the issuer must file a final Form 8-K to report that
event. /25

C.    Effect on Short-Form Registration, Rule 144 and
Regulation S

An issuer that has filed modified reports would not be
considered "current" in its Exchange Act reporting, with respect

to those reports due while its bankruptcy proceedings were
pending, for purposes of:  (1) determining eligibility to use
Securities Act Form S-2 or S-3; (2) satisfying the current public
information requirement of Securities Act Rule 144(c)(1); or (3)
satisfying the reporting issuer definition of Rule 902(l) of
Regulation S.

     D.   Availability of Rule 12h-3

    Exchange Act Rule 12h-3 provides a means to suspend an
issuer's obligation to file periodic reports under Section 15(d)
of the Exchange Act.  The Division has taken the position that
modified Exchange Act reporting in accordance with a grant of a
request would be sufficient for purposes of meeting the reporting
requirement of Rule 12h-3. /26  Accordingly, an issuer that
otherwise satisfies the conditions of Rule 12h-3 may suspend
reporting upon emergence from its bankruptcy proceedings if it
has been granted relief in response to a request and has
satisfied the conditions of that grant.

------

1/   15 U.S.C. 78m(a).

2/   15 U.S.C. 78o(d).

3/   15 U.S.C. 78a et seq.

4/   See Section 12(b) of the Exchange Act (15 U.S.C. 78l(b)).

5/   15 U.S.C. 78l(g).

6/   15 U.S.C. 77a et seq.

7/   11 U.S.C. 101 et seq.

8/   See Exchange Act Rule 12b-21.

9/   The Division has granted nine no-action requests since
     January 1995.  E.g., Comptronix Corporation (April 4, 1997);
     Cray Computer Corporation
     (May 16, 1996); I.C.H. Corporation (May 10, 1996); F&M
     Distributors, Inc. (May 1, 1996).

10/  Focus Surgery, Inc. (October 3, 1996).

11/  Item 3 of Form 8-K requires the issuer to file a current
     report on that form within 15 calendar days of specified
     events related to a bankruptcy filing.

12/  If the issuer remains current in its Exchange Act reporting
     requirements until trading on a national securities exchange

or the Nasdaq Stock Market stops, it may then request
modified reporting.  F&C International, Inc.
(October 15, 1993).

13/    An issuer's securities are not considered to be "traded" on
a national securities exchange or the Nasdaq Stock Market
if:  (1) those securities have been delisted; or (2) trading
in those securities on those markets has formally been
suspended.

14/    E.g., Sea Galley Stores, Inc. (March 24, 1995) (tabular
presentation demonstrated decreased trading volume in the
issuer's securities).

15/    If national securities exchange or Nasdaq Stock Market
trading stopped during one of these months, the issuer
should show separately within that month the information for
the periods before and after trading stopped.

16/    E.g., Numerica Financial Corporation (April 1, 1996) (noting
that no transfers of issuer stock occurred for a two-year
period and that transfer agent was given instructions to
prohibit further transfers); F&M Distributors, Inc., supra,
and Focus Surgery, Inc., supra (stating there was no trading
in the issuer's stock).

17/    Selectors, Inc. (September 18, 1990) and AorTech, Inc.
(September 14, 1990).

18/    Focus Surgery, Inc., supra.  The staff also will consider a
request to be submitted "promptly" if the issuer is current
in its Exchange Act reporting after filing its Bankruptcy
Code petition and through the date of its request.  United
Merchants and Manufacturers, Inc. (November 19, 1996).

19/    Fed. R. Bankr. P. 2015.

20/    If, as a result of a "hardship," an issuer wants to file in
paper format rather than electronically on EDGAR, it should
contact the Division's Office of Edgar Policy at (202) 942-
2940.

21/    Transactions in the issuer's securities also continue to be
subject to the requirements of the Exchange Act, including
the tender offer and short-swing profit provisions.

22/    BSD Bancorp, Inc. (March 30, 1994); Cray Computer Company,
supra; I.C.H. Corporation, supra.

23/    Famous Restaurants, Inc. (June 4, 1993); Sea Galley Stores,

Inc., supra; Diversified Industries, Inc., supra.

24/   Any requests for relief from financial statement obligations
should be sent to the Division's Office of Chief Accountant.

25/   E.g., Cray Computer Company, supra; I.C.H. Corporation,
supra.

26/   Union Valley Corporation (November 2, 1993).



1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

## Frequently Asked Questions
## The Accounting Support Fee and the Funding Process

### March 15, 2010

These frequently asked questions set forth the staff's opinions on issues related to the implementation of the Public Company Accounting Oversight Board's ("PCAOB" or "Board") funding rules. The statements contained in these frequently asked questions are not rules of the Board, nor have they been approved by the Board.

> ➢ *General FAQs*

> ➢ *Payment FAQs*

> ➢ *Issuer-Specific FAQs*

> ➢ *Confirmation FAQs*

### General FAQs

1.    **How can I obtain a copy of the PCAOB's funding rules?**

The full text of the PCAOB's rules is available under "Rules of the Board" at http://pcaobus.org/Rules/PCAOBRules/Pages/default.aspx.   The funding rules are in Section 7 of the Rules.

2.    **What issuers are subject to the accounting support fee?**

Pursuant to PCAOB Rule 7101, equity issuers and investment company issuers are subject to the accounting support fee.  Equity issuers are publicly traded companies with average monthly equity market capitalization during the preceding calendar year of greater than $25 million based on all classes of common stock.  Investment company issuers are entities registered under Section 8 of the Investment Company Act of 1940 and issuers that have elected to be regulated as business development companies pursuant to Section 54 of the Investment Company Act of 1940 with average monthly market capitalization or net asset value during the preceding calendar year of greater



**PCAOB**

Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
March 15, 2010
Page 2

## FAQs

than $250 million.   The Board uses market capitalization and net asset value information from nationally recognized market-data sources.

**3.    How is the accounting support fee calculated?**

Per PCAOB Rule 7101(b), equity issuers and investment company issuers are allocated a share of the accounting support fee based on their relative average monthly market capitalizations.  The issuer's share is its average monthly market capitalization during the preceding calendar year, divided by the sum of the average monthly market capitalization of all equity and investment company issuers during the preceding calendar year.  For the purposes of this allocation, however, the average monthly market capitalization of an investment company issuer will be 10 percent of the investment company issuer's actual average monthly market capitalization or net asset value.

**4.    On what date did the PCAOB calculate the allocation of the accounting support fee for 2010?**

The calculation date is the date as of which the allocation of the accounting support fee is determined for equity issuers and investment company issuers.  For 2010, the PCAOB calculated the accounting support fee as of February 23, 2010 ("the 2010 Calculation Date").  Under the Board's funding rules, companies that are issuers as of the 2010 Calculation Date are eligible to be assessed a share of the 2010 accounting support fee.

**5.    If my company's market capitalization increased or decreased in the prior calendar year, should its share of the accounting support fee correspondingly increase or decrease?**

Not necessarily.  An issuer's share of the accounting support fee is based on its average monthly market capitalization during the preceding calendar year *relative* to the total average monthly market capitalization of all equity and investment company issuers.  Therefore, if other equity and investment company issuers also experienced a change in their market capitalizations, resulting in a higher or lower total average monthly market capitalization, an issuer's share of the accounting support fee may increase, decrease, or remain approximately the same.  In addition, due to current



## FAQs

economic conditions, the number of issuers with average monthly market capitalizations greater than the threshold to be billed ($25 million for equity issuers and $250 million for investment company issuers) decreased and the PCAOB invoiced more than 900 fewer issuers in 2010 than it did in 2009. As a result, some issuers' shares of the accounting support fee increased even though their market capitalizations were lower for calendar year 2009 than for calendar year 2008.

**6.    How can my company dispute its share of the accounting support fee?**

PCAOB Rule 7102(c) allows an issuer that disagrees with the class in which it was placed for billing purposes or with the calculation by which its share of the fee was determined to petition the Board for a correction. Petitions must: (1) include an explanation of why the company believes the classification or calculation was in error, (2) be in writing, and (3) be received on or before the 30th day after the invoice date. The Board will notify the issuer of its decision on the petition in writing. Depending on the circumstances, and in its discretion, the Board may consider a petition that is not received within the required time period.

### *Payment FAQs*

**7.    If I pay my invoices online, is the payment processing system secure?**

The payment processing system utilizes a third-party payment provider to process payment transactions. The payment provider's system was created to address issues of confidentiality, data integrity, non-repudiation, and auditability utilizing industry standard 128-bit encryption, data integrity checking, and logging.

**8.    If I pay my invoices online, will a receipt or confirmation of payment be provided?**

Yes. The payment Web site provides an Accounting Support Fee Payment Receipt page that provides the amount paid, a transaction number and date. Please note that these transactions may take 3-4 business days to clear your bank account. This receipt, assuming it is for the full amount invoiced, along with proof of debit from your bank account, constitutes confirmation of your payment. Please see Questions 17



**Public Company Accounting Oversight Board**

The Accounting Support Fee
and the Funding Process
March 15, 2010
Page 4

## FAQs

through 26 for issues relating to confirmation of payment of the accounting support fee by registered accounting firms.

### *Issuer-Specific FAQs*

**9.    I believe the records maintained by my company regarding my company's shares outstanding are more accurate than those used by the PCAOB.   If I provide that data to the PCAOB, may I have my company's share of the accounting support fee recalculated using that data?**

No.  Because the accounting support fee is allocated among more than 9,200 issuers, the PCAOB uses market capitalization and net asset value information from nationally recognized market-data sources.   These market-data sources primarily obtain the number of shares outstanding from issuers' filings with the Securities and Exchange Commission ("SEC").  This is a reliable source of data for calculating the accounting support fee allocation because the data it contains is both readily available and required to be truthful under penalty of law.  In addition, it provides a common basis among the issuer population for determining the combined average monthly market capitalization of all issuers.

**10.    My company became an "issuer" during the preceding calendar year.  If it did not have any market capitalization for the months prior to becoming an "issuer", how will those months be considered when calculating the company's average monthly market capitalization?**

As required by the PCAOB's funding rules, the PCAOB uses issuers' average monthly market capitalization during the preceding calendar year as a proxy for determining the size of an issuer for purposes of allocating the current year's accounting support fee. Accordingly, the PCAOB uses the monthly market capitalization for only those months of the preceding calendar year that the company had shares outstanding and public share price data available.  Therefore, in some situations, the average monthly market capitalization of an issuer will be based on fewer than the full 12 months.



## FAQs

**11.    My company ceased being an "issuer"** *after* **the 2010 Calculation Date, which was February 23, 2010. Do we still have to pay?**

Yes.  Under the PCAOB's funding rules, all companies that were "issuers," as that term is defined in PCAOB Rule 1001(i)(iii) and the Sarbanes-Oxley Act, as of the 2010 Calculation Date were subject to the accounting support fee (assuming they met the average monthly market capitalization threshold and were not otherwise a type of issuer that is exempt from the fee).  The fact that an entity ceases to be an "issuer" after that date does not relieve the issuer of its responsibility for a share of the accounting support fee.

**12.    My company ceased being an "issuer"** *before* **the 2010 Calculation Date, which was February 23, 2010. Do we still have to pay?**

No.  Under the PCAOB's funding rules, all companies that were "issuers," as that term is defined in PCAOB Rule 1001(i)(iii) and the Sarbanes-Oxley Act, as of the 2010 Calculation Date were subject to the accounting support fee (assuming they met the average monthly market capitalization threshold and were not otherwise a type of issuer that is exempt from the fee).  If you believe your company was not an "issuer" on that date and received an invoice in error, please contact the PCAOB at BillingFAQ@pcaobus.org.

**13.    If an entity files periodic reports with the SEC on a voluntary basis, will it be considered an "issuer" under the Sarbanes-Oxley Act and the rules of the Board for purposes of determining whether it is allocated a share of the accounting support fee?**

No.  If an entity voluntarily files periodic reports with the SEC, the entity is not an "issuer" for purposes of allocating the accounting support fee and will not, therefore, be allocated a portion of the fee.  An entity that makes periodic filings with the SEC only pursuant to a requirement contained in its indenture would be an example of such a voluntary filer.  This situation is distinguished from one in which a company *voluntarily registers* securities under Section 12 of the Securities Exchange Act of 1934.  In this situation, the issuer is required to file periodic reports and may, if it otherwise satisfied the requirements of PCAOB Rule 7101, be allocated a share of the accounting support fee.



**Public Company Accounting Oversight Board**

## FAQs

**14.    If an issuer was subject to the jurisdiction of a bankruptcy court on the 2010 Calculation Date, which was February 23, 2010, and satisfied the modified reporting requirements of Commission Staff Legal Bulletin No. 2, must it pay a share of the accounting support fee?**

No.  Under PCAOB Rule 7101(a)(3), any issuer that was, as of the 2010 Calculation Date, subject to the jurisdiction of a bankruptcy court and that satisfied the modified reporting requirements of *Securities and Exchange Commission Staff Legal Bulletin No. 2* ("SLB No. 2") was placed into a class of issuers that is allocated a share of the accounting support fee equal to $0.  The PCAOB staff determines whether an issuer has satisfied the modified reporting requirements of SLB No. 2 by reviewing no-action letters issued by the staff of the SEC with respect to SLB No. 2.  If your company did not receive a no-action letter from the staff of the SEC with respect to SLB No. 2, but you believe your company satisfied the SLB No. 2 criteria as of the 2010 Calculation Date and therefore received an invoice in error, please contact the PCAOB at BillingFAQ@pcaobus.org.  You will be asked to provide an analysis demonstrating your company's compliance with the conditions set forth in SLB No. 2 and/or an opinion of counsel that the company meets the conditions set forth in SLB No. 2

**15.    For an issuer of "global shares," will the average monthly market capitalization calculation include all of the global shares outstanding?**

Yes.  Global shares are a single class of shares registered with the SEC and traded in both the issuer's home country (typically Germany) and in the United States. Accordingly, for each global share issuer, the PCAOB included all of the issued and outstanding global shares, regardless of where they were actually held or traded, in its calculation of the issuer's average monthly market capitalization, consistent with the calculation methodology used for U.S. equity issuers.

**16.    For a Canadian issuer, will the average monthly market capitalization calculation include all of its shares outstanding in both the United States and Canada?**

Yes.  A number of Canadian companies have a single class of equity securities registered with the SEC that are listed for trading in both Canada and in the United



## FAQs

States. For these issuers, all issued and outstanding shares of the class of equity securities that are listed for trading in the United States — regardless of whether the individual shares within that class were actually held or traded in the United States — are included in the calculation of the average monthly issuer market capitalization. Accordingly, the PCAOB calculated these issuers' shares of the accounting support fees based on the total market capitalization of this class of equity securities, consistent with the calculation methodology used for issuers of "global shares."

### *Confirmation FAQs*

**17.    What do the PCAOB's rules require an auditor to do with respect to an issuer's share of the accounting support fee?**

PCAOB Rule 7103(b)(1) provides that a registered public accounting firm generally may not sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, unless the registered public accounting firm has ascertained that the issuer has no outstanding past-due shares of the accounting support fees of the PCAOB or the Financial Accounting Standards Board ("FASB").

**18.    Are there any exceptions to the auditor's requirement under PCAOB Rule 7103(b)?**

There are three exceptions.

First, PCAOB Rule 7102(c) allows an issuer, under certain circumstances, to petition for correction of its share of the accounting support fee. Rule 7103(b)(1) does not prohibit a registered public accounting firm from signing an unqualified opinion, or issuing a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer who has an outstanding past-due share of the accounting support fee if that issuer has a petition for correction pending as to that outstanding share.

Second, PCAOB Rule 7103(b)(2) creates a one-time exception to take account of a situation in which an issuer may have a past-due share of the accounting support fee – including possibly through mistake, inadvertence, or confusion – at a time when the



The Accounting Support Fee
and the Funding Process
March 15, 2010
Page 8

**FAQs**

issuer needs to access or to preserve its ability to access the capital markets in a timely manner.  To avoid unnecessarily preventing issuers in these situations from submitting a report to, or making a filing with, the SEC or from issuing securities, Rule 7103(b)(2) creates a one-time, time-limited exception to the prohibition in Rule 7103(b)(1).[1/]  This exception may be invoked only once per assessment.

Third, until further notice, the Board will not enforce Rule 7103(b) against a registered public accounting firm that signs an unqualified audit opinion, or issues a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer whose outstanding past-due shares of the accounting support fees of the PCAOB or the FASB total less than $50 each.

**19.    If an issuer has paid its original share of the accounting support fee, but not interest due under the PCAOB's rules, may the auditor sign an unqualified opinion?**

Interest, which accrues from the date payment is past due, represents the time-value of the share of the accounting support fee that should have been paid and is therefore treated, for purposes of PCAOB Rule 7103, as part of the assessed share of the accounting support fee.  Accordingly, unless one of the exceptions described in the answer to Question No. 18 above applies, the auditor may not sign an unqualified opinion or issue a consent even if the only outstanding amount due relates to interest charged on the original amount due.  For issuers that owe only interest, auditors should consider whether the third exception noted in the answer to Question No. 18 above applies.  Under that exception, until further notice, the Board will not enforce Rule 7103(b) against a registered public accounting firm that signs an unqualified audit opinion, or issues a consent to include an audit opinion issued previously, with respect to the financial statements of an issuer whose outstanding past-due shares of the accounting support fees of the PCAOB or the FASB total less than $50 each.

---

[1/]    More details on how an issuer avails itself of this exception are in PCAOB Rule 7103(b)(2) and Note 2 to PCAOB Rule 7103(b).  The exception provided by Rule 7103(b)(2) does not in any way modify the issuer's legal obligation to pay its assessed share of the accounting support fee.



## FAQs

**20.    How may an auditor ascertain that an issuer has no outstanding past-due share of the accounting support fee?**

Note 1 to PCAOB Rule 7103(b)(2) provides that a "registered public accounting firm may ascertain that an issuer has no outstanding past-due share of the accounting support fee by obtaining a representation from the issuer or a confirmation from the Board that no past-due share of the accounting support fee is outstanding."

**21.    How may I obtain a confirmation from the PCAOB?**

For issuers that have paid their accounting support fee invoices in full, the quickest way to obtain confirmation is through the Board's Web site.  The PCAOB posts a list of issuers that have no outstanding past-due share of the accounting support fees of the PCAOB and the FASB.  The list is available at http://pcaobus.org/About/Ops/Documents/Support%20Fee/Issuers_Paid.pdf.    The PCAOB confirms, for purposes of Note 1 to PCAOB Rule 7103(b), that the issuers on this list have no outstanding past-due share of the accounting support fee.  If an issuer is not on the list, you may still be able to obtain a confirmation from the PCAOB.  See Question No. 24 below.

**22.    Is being listed on the confirmation list on the PCAOB's Web site sufficient to not preclude an auditor from signing an unqualified report under the PCAOB's rules?**

Yes.  A registered public accounting firm may take the inclusion of an issuer on this list as PCAOB confirmation pursuant to Note 1 to PCAOB Rule 7103(b).

**23.    If an issuer is not on the list on the Web site, does that mean it has a past-due share of the accounting support fee?**

Not necessarily.  Many issuers are not allocated a share of the accounting support fee of the PCAOB or of the FASB under the Board's funding rules and, therefore, would not be on this list, even though they have no outstanding past-due share of the accounting support fee.  In addition, a brief period of time may pass between when a payment is received by the PCAOB and when the list is updated to reflect that payment.



Public Company Accounting Oversight Board

The Accounting Support Fee
and the Funding Process
March 15, 2010
Page 10

## FAQs

**24.    What can I do to ascertain payment if the issuer is not on the Web site list?**

If a registered public accounting firm cannot obtain a representation from the issuer or cannot confirm from the list on the Board's Web site that the issuer has no outstanding past-due share of the accounting support fee, the registered public accounting firm may contact the PCAOB by e-mail at confirm@pcaobus.org.

**25.    Is a management representation sufficient to not preclude the auditor from signing an unqualified report?**

Yes.  For a registered public accounting firm to comply with PCAOB Rule 7103(b)(1), obtaining a representation from the issuer that the issuer has no outstanding past-due share of the accounting support fee is sufficient; the registered public accounting firm need not also obtain a confirmation from the Board that no past-due share of the accounting support fee is outstanding.  The mere fact that an issuer is not on the Board's Web site confirmation list is not, in and of itself, a reason for a registered public accounting firm to believe that an issuer's representation is inaccurate.

**26.    If an issuer has received an invoice for a share of an accounting support fee, but that share is not yet due (payment is due on the 30th day after the invoice is sent), may its auditor sign an unqualified audit report for that issuer?**

Yes, so long as there is no past-due share outstanding from a prior year.  PCAOB Rule 7103(b)(1) provides that a registered public accounting firm generally may not sign an unqualified audit opinion with respect to an issuer's financial statements, or issue a consent to include an audit opinion issued previously, unless the registered public accounting firm has ascertained that the issuer has no outstanding past-due share of the accounting support fee.  If an issuer's invoice for a share of the accounting support fee is not yet due, then the issuer has no outstanding past-due share of that year's accounting support fee.

**Circuit City Stores, Inc.**
P.O. Box 5695
Glen Allen, VA  23058-5695


VIA ELECTRONIC MAIL

Public Company Accounting Oversight Board
Attn: Nina Mojiri-Azid
1666 K Street N.W.
Washington, DC 20006
mojiriazidn@pcaobus.org

      Re:    In re Circuit City Stores, Inc., et al., Chapter 11 Case No. 08-35653
                Proof of Claim #14216

Dear Ms. Mojiri-Azid,

      We have received your administrative claim for Public Company Accounting
Oversight Board ("PCAOB") accounting support fees and Financial Accounting
Standards Board ("FASB") accounting support fees in the amount of $4,700.

      We understand that for 2009, the accounting support fee was calculated on March
27, 2009.  Circuit City Stores, Inc. ("the company") acknowledges that it was an issuer
on March 27, 2009, but believes that it should be placed into the class of issuers that is
allocated a share of the accounting support fee equal to $0.  Under PCAOB Rule
7101(a)(3), any issuer that was, as of the date the accounting support fee was calculated,
subject to the jurisdiction of the bankruptcy court and that satisfied the modified
reporting requirements of *Securities and Exchange Commission Staff Legal Bulletin No. 2*
("the Bulletin") was placed into a class of issuers that is allocated a share of the
accounting support fee equal to $0.  The company has been under the jurisdiction of the
United States Bankruptcy Court for the Eastern District of Virginia since November 10,
2008, when it filed a voluntary petition for relief under Chapter 11 of the United States
Bankruptcy Code.  Additionally, while it did not request a no-action letter from the
SEC's Division of Corporate Finance, the company complied with the substantive
reporting requirements outlined in the Bulletin.  The company has taken the following
actions to comply with the Bulletin's reporting requirements:


- Prior to its bankruptcy filing, the company provided information to its
  security holders and the market regarding its financial condition on Form
  10-Q for the quarter ended August 31, 2008.
- The company complied with its Exchange Act reporting obligations
  before its bankruptcy filing in November 2008 and was current in its
  reporting obligations for a period of at least 12 months prior to such
  filing.

**Circuit City Stores, Inc.**
P.O. Box 5695
Glen Allen, VA  23058-5695

- The company filed its Form 8-K announcing the bankruptcy filing on a timely basis within the applicable time period prescribed by the Form 8-K regulations.
- The company also issued a press release on day of its bankruptcy filing in order to further advise the market of its financial condition and bankruptcy filing.
- Following its liquidation announcement in January 2009, the company advised the market on a timely-filed Form 8-K that it did not anticipate that there would be any remaining value for its security holders.
- The company continues to provide information about its financial condition to its security holders and the market during its bankruptcy proceedings.  In accordance with the Bulletin, the company files its monthly operating report as an exhibit to Form 8-K on a timely basis.
- In addition to the monthly operating reports, the company has filed other current reports on Form 8-K for events that require disclosure (e.g. entry into material definitive agreements, the filing of a plan of liquidation with the Bankruptcy Court).  Since there were no annual shareholder meetings subsequent to the bankruptcy filing, the company did not file any annual proxy statement during this period.
- The company plans to continue to file its monthly operating reports on Form 8-K and to disclose other material information relating to the liquidation.

The factors above indicate that the company has complied with the substantive reporting requirements outlined in the Bulletin and has made sufficient efforts to inform its security holders of relevant, material information.  These factors, along with the company's bankruptcy filing in November 2008, allow the company to fall under the PCAOB Rule 7101(a)(3) exception for accounting support fees.

The foregoing was the basis for the company's objection to proof of claim number 14216, as it is not liable for these fees.  If you need additional information, please feel free to contact me.  Otherwise, please contact our bankruptcy counsel, Sarah Boehm at 804-775-7487, to discuss the entry of an order disallowing the claim for the foregoing reasons.

Sincerely,

*Michelle Mosier*

Michelle O. Mosier
VP & Controller
Circuit City Stores, Inc.

Exhibit 8



Public Company Accounting Oversight Board

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

December 28, 2010

Circuit City Liquidating Trust
c/o Kurtzman Carson Consultants
2335 Alaska Avenue
El Segundo, CA  90245

RE:   In re Circuit City Stores, Inc., et al., Ch. 11
      Case No. 08-35653 (KRH) (Bankr. E.D. Va. 2008)

Dear Sir or Madam:

As requested, enclosed please find a completed Form W-9, "Request for Tax Identification Number and Certification." We provide this Form W-9 in response to a request from Ms. Katie Bradshaw, Senior Liquidating Trust Manager for Circuit City Stores, Inc. Liquidating Trust. We understand that this information is being provided to Ms. Bradshaw because the Circuit City Liquidating Trust has determined that we may hold one or more claims against the debtor's estate.

If you have any questions or require further information, please contact Nina Mojiri-Azad, Assistant General Counsel, at (202) 207-9035.

Sincerely,

J. Gordon Seymour
General Counsel

Enclosure

Form **W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

**Name (as shown on your income tax return)**
Public Company Accounting Oversight Board

**Business name, if different from above**

**Check appropriate box:** ☐ Individual/Sole proprietor ☒ Corporation ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ . . . . . . .
☐ Other (see instructions) ▶

☐ Exempt payee

**Address (number, street, and apt. or suite no.)**
1666 K Street NW, 8th Floor

**Requester's name and address (optional)**

**City, state, and ZIP code**
Washington, DC 20006

**List account number(s) here (optional)**

*Print or type*
*See Specific Instructions on page 2.*

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**or**

**Employer identification number**
74 : 3073065

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**   Signature of
U.S. person ▶    Date ▶ 3/16/10

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester), and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

● An estate (other than a foreign estate), or

● A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X                Form **W-9** (Rev. 10-2007)

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al. | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtors | ) | Jointly Administered |

## DECLARATION OF NINA MOJIRI-AZAD
## TO RESPONSE OF
## PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD
## TO SEVENTH OMNIBUS OBJECTION TO CLAIMS
## (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS,
## DISALLOWANCE OF CERTAIN INVALID CLAIMS AND
## RECLASSIFICATION OF CERTAIN INCORRECTLY CLASSIFIED CLAIMS)

In connection with the objection of Public Company Accounting Oversight Board (the "Response") to the Debtor's Seventh Omnibus Objection to Claims (Reduction of Certain Partially Invalid Claims, Disallowance of Certain Invalid Claims and Reclassification of Certain Incorrectly Classified Claims), I declare under penalty of perjury that I have personal knowledge of the relevant facts that are set out in and support the Response.

Nina Mojiri-Azad
Assistant General Counsel
Public Company Accounting Oversight Board
1666 K Street, NW
Washington, DC 20006
Telephone: 202-207-9035
facsimile: 866-422-2389