*TAX INFORMATION*
*Sec. - 24.13*
*BIK. - 5*
*LOT: 3*
*TOWN OF CORTLANDT*
*COUNTY OF WESTCHESTER*

This instrument was prepared by, and the
recorded original should be returned to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Sidney M. Ruthenberg, Esq.

*CTIC - 9710 - 26074*

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS (this "Assignment") made as of the 29th day of May, 1998, by CORTLANDT B, LLC, a New York limited liability company, having its principal place of business at 557 Blooming Grove Turnpike, New Windsor, New York 12553 ("Assignor"), to GMAC COMMERCIAL MORTGAGE CORPORATION, a California corporation having its principal place of business at 650 Dresher Road, Horsham, Pennsylvania 19044-8015 ("Assignee").

WITNESSETH:

THAT Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and assigns to Assignee the entire lessor's interest in and to all leases, subleases and other agreements affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit "A" annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "Property").

TOGETHER WITH all other leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Property now or hereafter made affecting the Property or any portion thereof, together with any extension, renewal, replacement or modification of the same, this Assignment of other present and future leases, subleases and present and future agreements being effective without further or supplemental assignment;

The leases, subleases and other agreements described above together with all other present and future leases and present and future agreements and any extension, renewal, replacement or modification of the same are hereinafter collectively referred to as the "Leases";

TOGETHER WITH:

(a) all deposits (whether for security or otherwise), rents, income, issues and profits arising from the Leases and renewals thereof and together with all rents, revenues,

NYFS02...:\12\38012\0150\1831\ASN1278M.40B



EXHIBIT A

income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property whether paid or accruing before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code (hereinafter defined) (hereinafter collectively referred to as the "Rents").

(b)   all of Assignor's claims and rights (the "Bankruptcy Claims") to (i) the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, 11 U.S.C. §101 et seq., as the same may be amended (the "Bankruptcy Code") and (ii) any award or other payment which Assignor may hereafter become entitled to receive with respect to any Lease as a result of or pursuant to any bankruptcy, insolvency or reorganization or similar proceedings involving the lessee under such Lease.

(c)   all of Assignor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Assignor (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(d)   all proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

THIS ASSIGNMENT is made in consideration of that certain mortgage loan made by Assignee to Assignor evidenced by that certain note made by Assignor to Assignee, dated the date hereof, in the principal sum of $5,559,000 (the "Note"), and secured by that certain Leasehold Mortgage and Security Agreement given by Assignor to Assignee, dated the date hereof, covering the Property and intended to be duly recorded (the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument and the Other Security Documents (hereinafter defined) are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Assignor and/or others and by or in favor of Assignee which wholly or partially secure or guarantee payment of the Debt are hereinafter referred to as the "Other Security Documents."

ASSIGNOR WARRANTS that except as disclosed in the rent roll for the Property delivered to and approved by Assignee, (a) Assignor is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid and enforceable; (c) the terms of all alterations, modifications and amendments to the Leases are reflected in the certified rent roll delivered to and approved by Assignee; (d) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated (except to Assignee); (e) none of the

Rents have been collected for more than one (1) month in advance (provided that a security deposit shall not be deemed rent collected in advance); (f) the premises demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; (g) there exist no offsets or defenses to the payment of any portion of the Rents; (h) Assignor has received no notice from any tenant challenging the validity or enforceability of any Lease; (i) there are no agreements with the tenants under the Leases other than expressly set forth in each Lease; (j) the Leases are valid and enforceable against Assignor and the tenants set forth therein; (k) no Lease contains an option to purchase, right of first refusal to purchase, or any other similar provision; (l) no person or entity has any possessory interest in, or right to occupy, the Property except under and pursuant to a Lease; (m) each Lease is subordinate to this Security Instrument, either pursuant to its terms or a recorded subordination agreement; (n) no Lease has the benefit of a non-disturbance agreement that would be considered unacceptable to prudent institutional lenders; and (o) no brokerage commissions or finders fees are due and payable regarding any Lease.

ASSIGNOR COVENANTS with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases if the failure to perform or observe the same would materially and adversely affect the value of the Property taken as a whole and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall promptly send copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce in a commercially reasonable manner all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed; provided, however, with respect to multifamily residential property, a residential Lease may be terminated in the event of a default by the tenant thereunder; (d) shall not collect any of the Rents more than one (1) month in advance, (provided that a security deposit shall not be deemed rent collected in advance); (e) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (f) shall not (i) materially alter, modify or change the terms of the Leases without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed if the alteration, modification or change does not materially and adversely affect the value of the Property taken as a whole and provided further that such Lease, as altered, modified or changed, is otherwise in compliance with the requirements of this Security Instrument, or (ii) cancel or terminate any Lease (except for defaults thereunder) of more than ten (10%) percent of the rentable space of the Property or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Land or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (g) shall not alter, modify or change the terms of any Lease Guaranty or cancel or terminate such Lease Guaranty without the prior written consent

3

of Assignee; and (h) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Assignee. Notwithstanding the foregoing, subdivisions (b), (f), (g) and (h) shall not apply to residential Leases for space in a multifamily residential property.

ASSIGNOR FURTHER COVENANTS with Assignee that (a) except as otherwise consented to by Assignee, all Leases shall be written on the standard form of lease which shall have been approved by Assignee; (b) upon request, Assignor shall furnish Assignee with executed copies of all Leases; (c) no material changes may be made to the Assignee-approved standard lease without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed; (d) all proposed Leases and renewals of existing Leases (other than residential Leases relating to a residential multifamily property) shall be subject to the prior approval of Assignee, except as otherwise provided in the Security Instrument.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

## PART I

## GENERAL PROVISIONS

1.  PRESENT ASSIGNMENT. Assignor does hereby absolutely and unconditionally assign to Assignee Assignor's right, title and interest in all current and future Leases and Rents, Lease Guaranties, and Bankruptcy Claims, it being intended by Assignor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Assignee shall not be construed to bind Assignee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Assignee. Assignor agrees to execute and deliver to Assignee such additional instruments, in form and substance satisfactory to Assignee, as may hereafter be requested by Assignee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph 1, Assignee grants to Assignor a revocable license to operate and manage the Property and to collect the Rents and other sums due under the Lease Guaranties and Bankruptcy Claims. Assignor shall hold the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Assignee for use in the payment of such sums. Upon an Event of Default, as defined in the Note and the Security Instrument, the license granted to Assignor herein shall automatically be revoked without notice to Assignor, and Assignee shall immediately be

4

entitled to possession of all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, whether or not Assignee enters upon or takes control of the Property. Assignee is hereby granted and assigned by Assignor the right, at its option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims. Any Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Assignee in its discretion shall deem proper.

2. **REMEDIES OF ASSIGNEE.** (a) Upon or at any time after an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Property and have, hold, manage, lease and operate the Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option, may either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, the fair and reasonable rental value for the use and occupation of such part of the Property as may be in possession of Assignor or may require Assignor to vacate and surrender possession of the Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. For purposes of this paragraph 2, Assignor grants to Assignee its irrevocable

5

power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property. The exercise by Assignee of the option granted it in this paragraph 2 and the collection of the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents.

(b)    Upon or at any time after the occurrence of an Event of Default, Assignee shall have the right in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(c)    If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignee not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease. Assignee shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Assignee demands that Assignor assume and assign the Lease to Assignee pursuant to Section 365 of the Bankruptcy Code and (ii) Assignee covenants to cure or provide adequate assurance of future performance under the Lease. If Assignee serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignee of the covenant provided for in clause (ii) of the preceding sentence.

3.    NO LIABILITY OF ASSIGNEE. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after an Event of Default or from any other act or omission of Assignee in managing the Property after default unless such loss is caused by the willful misconduct or bad faith of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged

6

NYFS02...:\12\38012\0150\1831\ASN1278M.40B

obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the Default Rate (as defined in the Security Instrument) shall be secured hereby and by the Security Instrument and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby and the Security Instrument and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including, without limitation, the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

4. **NOTICE TO LESSEES.** Assignor hereby authorizes and directs the lessees named in the Leases or any other or future lessees or occupants of the Property upon receipt from Assignee of written notice to the effect that Assignee is then the holder of the Security Instrument and that a default exists thereunder or under this Assignment, the Note or the Other Security Documents to pay over to Assignee all Rents and all sums under any Lease Guaranty and to continue so to do until otherwise notified by Assignee. Assignor hereby agrees that each such lessee and any other or future lessee and occupant may rely upon such written notice from Assignee to so pay the Rents and other sums without any inquiry into whether there exists a default hereunder or under the Security Instrument, the Note or the Other Security Documents or whether Assignee is otherwise entitled to the Rents and other sums. Assignor hereby waives any right, claim or demand which Assignor may now or hereafter have against any present or future lessee or occupant by reason of such payment of Rents and other sums to Assignee, and any such payment shall discharge such lessee's or occupant's obligation to make such payment to Assignor.

5. **OTHER SECURITY.** Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor, may grant extensions, renewals or indulgences with respect thereto and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

7

6. **OTHER REMEDIES.** Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

7. **NO MORTGAGEE IN POSSESSION.** Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor and Assignee shall be obligated to account only for such Rents as are actually collected or received by Assignee.

8. **CONFLICT OF TERMS.** In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

9. **NO ORAL CHANGE.** This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10. **CERTAIN DEFINITIONS.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Property" shall include any portion of the Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding

8

masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11. **NON-WAIVER.** The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

12. **INAPPLICABLE PROVISIONS.** If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

13. **DUPLICATE ORIGINALS.** This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

14. **GOVERNING LAW.** This Assignment shall be governed and construed in accordance with the laws of the state in which the Property is located.

15. **TERMINATION OF ASSIGNMENT.** Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Assignee, this Assignment shall become and be void and of no effect.

16. **TRANSFER BY ASSIGNEE.** No consent by Assignor shall be required for any assignment or reassignment of the rights of Assignee under this Assignment. All references to "Assignee" hereunder shall be deemed to include the assigns of Assignee.

17. **EXCULPATION.** Notwithstanding anything to the contrary contained in this Assignment, the liability of Assignor, and of any general partner or member of Assignor to pay the Debt and for the performance of the other agreements, covenants and obligations contained herein and in the Note, the Security Instrument and the Other Security Documents shall be limited as set forth in Article 15 of the Security Instrument.

18. **NOTICES.** All notices or other written communications hereunder shall be given and become effective as provided in the Security Instrument.

**THIS ASSIGNMENT,** together with the covenants and warranties therein contained, shall inure to the benefit of Assignee and any subsequent holder of the Security Instrument and shall be binding upon Assignor, his heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

[Remainder of the Page Intentionally Left Blank]

Exhibit(s) A    Page 11 of 14

IN WITNESS WHEREOF, Assignor has executed this instrument as of the date first above written.

ASSIGNOR:

Cortlandt B, LLC,
a New York limited liability company

By: AGCB, INC.
a New York corporation, its manager

By: _____
Name: Adrian C. P. Goddard
Title: President

11

State of New York        )
                         ss.:
County of New York       )

       On this 14th day of May, 1998 before me, the subscriber, personally appeared Adrian C.P. Goddard to me personally known, who being duly sworn, did depose and say that he resides at 557 Blooming Grove Turnpike, New Windsor, New York 12553, that he is the President of AGCB, Inc., a New York corporation, the manager of Cortlandt B, LLC, a New York limited liability company and that he executed the above instrument for and on behalf of said corporation and by the order of the Board of Directors of said corporation.

*Stephanie Novick*
Notary Public

STEPHANIE NOVICK
Notary Public, State of New York
No. 01NO5035998
Qualified in New York County
Commission Expires November 14, 1998

12

NYF302...\\2080120150\1831\ASN127834.408

# EXHIBIT A
## LEGAL DESCRIPTION

ALL that plot, piece or parcel of land, situate and being in the Town of CORTLANDT, County of WESTCHESTER and State of NEW YORK bounded and described as follows:

BEGINNING at a point at the northwesterly highway boundary of US ROUTE 6, said point being the southwesterly corner of lands of YORKCON PROPERTIES, INC., the southwesterly corner of the herein described parcel and the southeasterly corner of lands of DUNKIN DONUTS, described in Liber 8211 of Deed at Page 191;

thence along lands of DUNKIN DONUTS,
North 8° 16' 20" East 113.33 feet and
South 48° 09' 40" 175.61 feet to a point;

thence along lands of WILLNER et al, described in Liber 7174 of Deeds at Page 264,
North 53° 23' 50" West 141.85 feet and
North 53° 26' 20" West 101.70 feet to a point;

thence continuing along lands of WILLNER and along lands of SELTZER et al, described in Liber 7525 of Deeds at page 265,
North 7° 03' 50" West 480.34 feet to a point;

thence along lands of DANETZ, described in Liber 6729 of Deeds at Page 546,
North 82° 56' 10" East 166.19 feet to a point;

thence through lands of YORKCON PROPERTIES, INC.,
South 53° 43' 00" East 141.77 feet,
South 36° 17' 00" West 100.00 feet,
South 53° 43' 00" East 400.00 feet to a point at the northeasterly highway boundary of US ROUTE 6;

thence along the same,
South 36° 17' 00" West 292.88 feet to the point or place of BEGINNING.

TOGETHER WITH the Easements, Rights of Way and other benefits of a certain CROSS EASEMENT AGREEMENT between CORTLANDT B, LLC and THE CALDOR CORPORATION dated July 14, 1997, recorded in the Office of County Clerk, Westchester County, Division of Land Records on May 7, 1998 in Liber 11989 cp 302.

TOGETHER WITH the Easements, right of Way and other benefits including but not limited to those affecting "Bank Common Areas", all as set forth in "First Amendment to Ground Lease and Memorandum of Lease between YORKCON PROPERTIES, INC., as Landlord and CORTLANDT B, LLC, as Tenant dated May 14, 1998 and recorded in the Office of County Clerk, Westchester County, Division of Land Records ~~on~~ _____, ~~1998 in Liber ___ cp ___~~. SimulTAneously heRewiTh

## 255 AFFIDAVIT FOR ASSIGNMENT OF LEASES AND RENTS

STATE OF NEW YORK  }
                   :ss.:
COUNTY OF ORANGE   }

Adrian Goddard, being duly sworn, deposes and says:

That he is the President of AGCB, Inc., the manager of Cortlandt B, LLC, the Borrower with respect to the Leasehold Mortgage and Security Agreement, dated as of May 29, 1998, from Cortlandt B, LLC to GMAC Commercial Mortgage Corporation in the principal amount of $5,559,000 and on which mortgage tax in the amount of $55,590 has been paid, which mortgage is a lien on premises situated at the Caldor (Route 6) Shopping Center, Town of Cortlandt, County of Westchester, State of New York.

That the Assignment of Leases and Rents herewith tendered for recording is given for the purpose of further securing the same principal indebtedness of the mortgage referred to above and said Assignment of Leases and Rents does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by said mortgage and, that there have been no readvances on said mortgage.

WHEREFORE, deponent respectfully requests that the Assignment of Leases and Rents tendered herewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

_____
Adrian Goddard

Sworn to before me this 28th day
of May, 1998.

_____
Notary Public

Mary Lou Foertsch
Notary Public, State of NY
Regis. #01FO4668981
Comm. Expires 03/30/2000

TOTAL P.02