24-5092

6405113

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by CIRCUIT INVESTORS #4-OKLAHOMA CITY LIMITED PARTNERSHIP, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

1. Purpose

This Assignment is made in connection with a loan in the original principal amount of up to FOUR MILLION EIGHT HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FIFTY-NINE and 00/100 ($4,862,959.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing:

    a. Payment of the indebtedness evidenced by that certain promissory note of even date in the maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 1001 Plymouth Road, Minnetonka, Minnesota (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

    b. Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

    c. The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

2. Grant

FOR VALUE RECEIVED, Assignor hereby absolutely grants, transfers and assigns to Assignee all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits and tenant security deposits arising from said leases and any extensions and renewals thereof; and together with all rents, income, issues and profits due or to become due

Minnetonka, Minnesota



No Mtge. Registration Tax Due
Taxpayer Services

part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute, present and unconditional assignment from Assignor to Assignee and not merely the passing of a security interest. All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

3. Authorization to Lease

Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4. Assignor's Agreements

Assignor hereby represents, covenants and agrees:

a. Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

b. There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

c. None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

d. Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring. Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any

other monetary inducements must be noted on the rent roll. Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

    e.    Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed. Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period. The Leases shall be approved upon the satisfaction of the following requirements:

    (i)    The Leases must be in form and substance satisfactory to Assignee.

    (ii)    The tenants thereunder must be satisfactory to Assignee.

    (iii)    The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

    f.    Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

    g.    Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed. Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

    h.    No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

    i.    Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

    j.    This Assignment is irrevocable.

k.  Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.  Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder. Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.  All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.  Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.  The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.  <u>Assignee's Remedies Upon Default</u>

Upon or at any time during the continuance of an Event of Default (as such term is defined in the Mortgage), including, but not limited to, failure of the Assignor to pay any of the items set forth in Subsections 5(i)-(v) below, or if any material representation or warranty herein proves to be untrue, then the Assignee, without regard to waste, adequacy of the security or solvency of the Assignor, may declare all Indebtedness (as defined in the Mortgage) immediately due and payable, may revoke the privilege granted the Assignor hereunder to collect the Rents, and may, at its option, without notice, either:

(a)  In person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, give, or require the Assignor to give, notice to the tenants under the Leases authorizing and directing the tenants to pay all Rents directly to the Assignee; collect all of the Rents; enforce the payment thereof and exercise all of the rights of the Assignor under the Leases and all of the rights of the Assignee hereunder; and may enter upon, take possession of, manage and operate the Property, or any part thereof; may cancel, enforce or modify the Leases, and fix or modify Rents, and do any acts which the Assignee deems proper to protect the security hereof; or

(b)  Apply for appointment of a receiver in accordance with the statutes and law made and provided for, which receivership the Assignor hereby consents to, who shall collect the Rents; manage the Property so as to prevent waste; execute Leases

within or beyond the period of receivership; perform the terms of this Assignment and apply the Rents as hereinafter provided.

The entering upon and taking possession of such Property, the appointment of a receiver, the collection of such Rents and the application thereof as aforesaid shall not cure or waive any default or waive, modify or affect notice of default under the Mortgage or invalidate any act done pursuant to said notice, nor in any way operate to prevent the Assignee from pursuing any remedy which now or hereafter it may have under the terms and conditions of the Mortgage or the Note secured thereby or any other instruments securing the same. The rights and powers of the Assignee hereunder shall remain in full force and effect both prior to and after any foreclosure of the Mortgage and any sale pursuant thereto and until expiration of the period of redemption from said sale, regardless of whether a deficiency remains from said sale. The purchaser at any foreclosure sale, including the Assignee, shall have the right, at any time and without limitation as provided in Minn. Stat. Section 582.03, to advance money to any receiver appointed hereunder to pay any part or all of the items which the receiver would otherwise be authorized to pay if cash were available from the Property and the sum so advanced, with interest at the Default Rate, as defined in the Note, shall be a part of the sum required to be paid to redeem from any foreclosure sale.

Any Rents shall be applied in the following order: (i) to payment of all fees of any receiver appointed hereunder, (ii) to application of the tenant's security deposits as required by Minn. Stat. Section 504.20, (iii) to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due, (iv) to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due, and (v) to payment of all expenses for normal maintenance of the Property. Any Rents remaining after application of the above items shall be applied to the Indebtedness if the Property shall be foreclosed and sold pursuant to a foreclosure sale, then:

(i) If the Assignee is the purchaser at the foreclosure sale, the Rents shall be paid to the Assignee to be applied to the extent of any deficiency remaining after the sale, the balance to be retained by the Assignee, and if the Property be redeemed by the Assignor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess Rents to be paid to the Assignor, provided, if the Property not be redeemed, any remaining excess Rents to belong to the Assignee, whether or not a deficiency exists;

(ii) If the Assignee is not the purchaser at the foreclosure sale, the Rents shall be paid to the Assignee to be applied first, to the extent of any deficiency remaining after the sale, the balance to be retained by the purchaser, and if the Property be redeemed by the Assignor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess Rents to be paid to the Assignor, provided, if the Property not be redeemed any remaining excess

Rents shall be paid first, to the purchaser at the foreclosure sale in an amount equal to the interest accrued upon the sale price pursuant to Minn. Stat. Section 580.23 or Section 581.10, then to the Assignee to the extent of any deficiency remaining unpaid and the remainder to the purchaser.

6.   No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.   Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.   Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require

Minnetonka, Minnesota                          -6-

the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9. Cross Default and Cross Collateralization

   a. A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10. Certain Definitions

   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11. Notices. All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

    Assignee:        The Paul Revere Life Insurance Company
                          c/o The Paul Revere Investment Management Corporation
                          18 Chestnut Street
                          Worcester, Massachusetts 01608-1528
                          Attention: Real Estate Investments

|  |  |
|---|---|
| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention: Timothy J. Boyce, Esq. |
| Assignor: | Circuit Investors #4 - Oklahoma City Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention: Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

12. Miscellaneous

a. Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

b. In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

c. This Assignment shall be governed and construed under the internal laws of the State in which the Property is located.

d. Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder. The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

Minnetonka, Minnesota

-8-

e.  The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment. In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.  If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.  Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.  All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.  All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.  Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.  Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder. Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage. In no event shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.  If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

m.  This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party

against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

n.  This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor as of this 27th day of February, 1995.

ASSIGNOR:

CIRCUIT INVESTORS #4-OKLAHOMA CITY LIMITED PARTNERSHIP, a Texas limited partnership

By:  CIRCUIT GENERAL PARTNER #4, INC., a Texas corporation, General Partner

By: _____

Title: President

STATE OF Texas        )
                      ) ss.
COUNTY OF Dallas      )

The foregoing instrument was acknowledged before me this 27th day of February, 1995, by Bill Q. Bering, President of Circuit General Partner #4, Inc., a Texas corporation as general partner of Circuit Investors #4-Oklahoma City Limited Partnership, a Texas limited partnership, on behalf of the Partnership.

[Seal: PAMELA McFERRIN, Notary Public, State of Texas, My Commission Expires JAN. 25, 1997]

Pamela McFerrin
Notary Public

(Seal, if any)

My Commission Expires: 1-25-97

This document was drafted by:

Pepe & Hazard
Goodwin Square
Hartford, CT 06103-4302
(203) 522-5175

i:\afz\270981\6-060.assn\022695\lb

# EXHIBIT A

Lot 1, Block 1, Circuit City, according to the recorded plat thereof on file and of record, Hennepin County, Minnesota.

AND ALSO DESCRIBED AS FOLLOWS:

Beginning at the northeast corner of Lot 1, Block 1, CIRCUIT CITY; thence of an assumed bearing of South 0 degrees 29 minutes 10 seconds East along the east line of said Lot 1 a distance of 451.93 feet; thence South 74 degrees 02 minutes 39 seconds West along the southerly line of said Lot 1 a distance of 275.78 feet; thence North 48 degrees 09 minutes 02 seconds West along the southwesterly line of said Lot 1 a distance of 22.15 feet; thence North 6 degrees 46 minutes 58 seconds West along the westerly line of said Lot 1 a distance of 225.13 feet; thence South 89 degrees 30 minutes 25 seconds West a distance of 0.39 feet; thence North 2 degrees 15 minutes 53 seconds East along the westerly line of said Lot 1 a distance of 252.75 feet; thence along a tangential curve, concave west, having a radius of 921.47 feet, a central angle of 2 degrees 09 minutes 31 seconds, a distance of 34.72 feet; thence North 89 degrees 35 minutes 03 seconds East along the north line of said Lot 1 a distance of 294.10 feet to the point of beginning.

\circuit\ccp7\legal.mn

i\afz\27098\6-073.exh\022495\1b

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc. as tenant, dated February 22, 1995.

i:\afz\27098\6-060.assn\022595\b

Minnetonka, Minnesota

