CLERK OF COURT
LAFAYETTE, LA
FILED AND RECORDED
95 APR -4 PM 3:08

FILE NO.
95-010879

O.C. "DAR" GUILLIOT
CLERK OF
COURT & RECORDER

109007
Legal
N/D

## ASSIGNMENT OF LEASES AND RENTS  TAB

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by **CIRCUIT INVESTORS -MATTESON LIMITED PARTNERSHIP**, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation (T.I.N. 04-1768571) having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

### 1.   Purpose

This Assignment is made in connection with a loan in the original principal amount of up to THREE MILLION SIX HUNDRED SEVENTY-FOUR THOUSAND SIX HUNDRED SEVENTY-NINE and 00/100 ($3,674,679.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing the following obligations and indebtedness, up to a maximum principal amount outstanding at any one or more times, from time to time, not to exceed U.S. $50,000,000.00 (the "Maximum Amount").

a.   Payment of the indebtedness evidenced by that certain promissory note of even date in the aggregate maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 5264 Johnson Street, Lafayette, Louisiana (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

b.   Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

c.   The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

### 2.   Grant

FOR VALUE RECEIVED, and in order to secure the payment and performance of said obligations and indebtedness, up to the Maximum Amount, to the fullest extent permitted by La. R.S. 9:4401, Assignor hereby assigns, transfers, pledges and hereby grants to Assignee a continuing security interest in and to all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any

Lafayette, Louisiana

EXHIBIT
D

tabbies®

portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits, revenues, royalties, bonuses, accounts receivable, advance rentals and tenant security deposits arising from said leases and any extensions and renewals thereof, further including Assignor's rights to enforce such leases and to receive and collect payments and proceeds thereunder; and together with all rents, income, issues and profits due or to become due from the Property, and from any and all leases for the use and occupancy of the Property or any part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in <u>Exhibit B</u> are made subject to this Assignment and are herein referred to as "Leases").  Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent.  This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby.  Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute assignment from Assignor to Assignee upon the occurrence of an Event of Default (as such term is defined in the Mortgage).  All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents."  A description of each Lease now in effect is attached as <u>Exhibit B</u>.

3.    <u>Authorization to Lease</u>

Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4.    <u>Assignor's Agreements</u>

Assignor hereby represents, covenants and agrees:

a.    Each Lease set forth on <u>Exhibit B</u> has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

b.    There is no default under any of the Leases set forth on <u>Exhibit B</u>, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on <u>Exhibit B</u>, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

c.    None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

Lafayette, Louisiana

d.    Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring.  Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any other monetary inducements must be noted on the rent roll.  Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

e.    Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed.  Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period.  The Leases shall be approved upon the satisfaction of the following requirements:

(i)    The Leases must be in form and substance satisfactory to Assignee.

(ii)    The tenants thereunder must be satisfactory to Assignee.

(iii)    The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

f.    Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

g.    Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed.  Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

h.    No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

i.    Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything

to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

j.      This Assignment is irrevocable.

k.      Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.      Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder. Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.      All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.      Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.      The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.      Assignee's Remedies Upon Default

Upon or at any time after an Event of Default (as such term is defined in the Mortgage) by Assignor, or a default by Assignor as lessor under any Lease beyond any applicable cure and grace period, Assignee, without in any way waiving such default, may at its option, enter and take possession of the Property to the fullest extent allowed by law, in which event Assignee shall have the right to have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may seem proper to Assignee, and to do all things required of or permitted to the landlord under said Leases (including the right to demand, sue for and otherwise collect all Rents), and to apply such Rents (to the extent required of or permitted to the landlord under the Leases) to the payment of: (a) the cost of such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, and keeping the same properly insured and (b) all taxes, charges, claims, assessments, water rents and any other liens which may be prior to this Assignment or the Loan Documents, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby, together with all costs and reasonable attorneys' fees, in such order of priority as to any of such items, as

Lafayette, Louisiana

-4-

Assignee in its sole discretion may determine, statute, law, custom or use to the contrary notwithstanding. Assignee shall have the additional right, at any time and for any reason, whether or not an Event of Default exists, to directly collect and receive the benefit of all obligations and all proceeds and/or payments assigned to Assignee under this Assignment, as such amounts and/or obligations become due and payable. In order to permit the foregoing, from and after an Event of Default Assignor unconditionally agrees to deliver to Assignee, immediately following demand, any and all records and other documentation, in the form requested by Assignee, with regard to the Leases. Assignee shall have the further right, where appropriate and within Assignee's sole discretion, to file suit, either in its own name or in the name of Assignor, to enforce any obligations and/or to collect any and all such proceeds and payments that may now and in the future be due and owing under the Leases. Assignor hereby grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.

Assignee's remedies upon any Event of Default shall be cumulative in nature and nothing under this Assignment shall be construed as to limit or restrict the options and remedies otherwise available to Assignee following an Event of Default, or to in any way limit or restrict the rights and ability of Assignee to proceed directly against Assignor and/or against any co-makers, guarantors, sureties and/or endorsers of the Notes, and/or to proceed against any other collateral directly or indirectly securing said indebtedness.

6.   No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the

Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan.  Assignee may further require the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9.    Cross Default

A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.    Certain Definitions

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Lafayette, Louisiana                                    -6-

11.    <u>Notices</u>.  All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

| | |
|---|---|
| Assignee: | The Paul Revere Life Insurance Company<br>c/o The Paul Revere Investment Management Corporation<br>18 Chestnut Street<br>Worcester, Massachusetts 01608-1528<br>Attention:  Real Estate Investments |
| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention:  Timothy J. Boyce, Esq. |
| Assignor: | Circuit Investors-Matteson Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention:  Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

12.    <u>Miscellaneous</u>

a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

b.    In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

Lafayette, Louisiana

c.      This Assignment shall be governed and construed under the internal laws of the State of Louisiana, without giving effect to the conflicts of law provisions thereof.

d.      Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder.  The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

e.      The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment.  In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.      If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.      Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee.  In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.      All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.      All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.      Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.      Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder.  Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage.  In no event

Lafayette, Louisiana                                                    -8-

shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.      If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

.m.      This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

n.      This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor on this 27th day of February, 1995.

ASSIGNOR:

CIRCUIT INVESTORS-MATTESON LIMITED PARTNERSHIP, a Texas limited partnership

By:     CIRCUIT GENERAL PARTNER #4, INC., a Texas corporation, General Partner

By: _____

        Title: _President_____

STATE OF _Texas_
COUNTY OF _Dallas_

BE IT KNOWN, that on this _27_ day of February, 1995, before me, the undersigned Notary Public, duly commissioned, qualified and sworn within and for the State and County aforesaid, personally came and appeared _Gill. Besing_ to me known to be the identical person who executed the above and foregoing instrument, who declared and acknowledged to me, Notary, in the presence of the undersigned competent witnesses, that he is the _President_ of Circuit General Partner #4, Inc., a Texas corporation as general partner of Circuit Investors-Matteson Limited Partnership, a Texas limited partnership, that as such duly authorized officer, by and with the authority of the Board of Directors of said Corporation, he signed and executed the foregoing instrument, as his free and voluntary act and deed of said Corporation, for and on behalf of said Corporation, for the uses, purposes and benefits therein expressed.

WITNESSES:



_Terie L. Rasmussen_
NOTARY PUBLIC
MY COMMISSION EXPIRES: _3-12-98_

TERIE L. RASMUSSEN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-12-98

ñafx\27098\6-059.ASG\022695\lb

Lafayette, Louisiana                          -10-

EXHIBIT A

MAIN PARCEL

A certain tract of land containing 3.504 acres, known as Lot 2B,
Acadiana Square Shopping Center, located in Section 68, Township
10 South, Range 4 East, City of Lafayette, Lafayette Parish,
Louisiana, being more fully described as follows:

Commencing at the projected intersection of the more easterly
right-of-way of Fountainhead Drive and the more northerly right-
of-way of Johnston Street (U.S. Highway 167), proceed along said
right-of-way of Johnston Street a bearing of North 41 degrees 36
minutes 31 seconds East, a distance of 704.00 feet to a point;
thence continue along said right-of-way of Johnston Street a
bearing of North 41 degrees 35 minutes 16 seconds East, a
distance of 646.20 feet to a point; thence proceed along a
bearing of North 48 degrees 25 minutes 04 seconds West, a
distance of 247.67 feet to a point; thence proceed along a
bearing of North 13 degrees 41 minutes 34 seconds West, a
distance 23.34 feet to a point, said point hereinafter to be
known as the Point of Beginning; thence proceed along a bearing
of South 74 degrees 26 minutes 08 seconds West, a distance of
248.86 feet to a point; thence proceed along a bearing of North
15 degrees 33 minutes 52 seconds West a distance of 225.06 feet
to a point; thence proceed along a bearing of South 74 degrees 26
minutes 08 seconds East a distance of 8.15 feet to a point;
thence proceed along a bearing of North 15 degrees 33 minutes 52
seconds West, a distance of 379.64 feet to a point on the
southerly right-of-way of Target Loop; thence proceed along the
southerly right-of-way of Target Loop a bearing of North 75
degrees 32 minutes 27 seconds East a distance of 260.35 feet to a
point; thence proceed along a bearing of South 13 degrees 41
minutes 34 seconds East a distance of 600.00 feet to the Point of
Beginning; all as shown on the current Replat of Acadiana Square
Shopping Center, dated February 13, 1994, last revised December
12, 1994, by C. H. Fenstermaker & Associates, Inc., a copy of
which is recorded under Act No. 94-045525 in the Lafayette Parish
Court House, Lafayette, Louisiana.

SERVITUDE PARCEL

That certain non-exclusive servitude interest acquired pursuant
to Reciprocal Easement and Operation Agreement executed by CAP-
Lafayette Investors Limited Partnership, Toys "R" Us, Inc. and
Lowe's Home Center, Inc., dated April 25, 1990, recorded as File
No. 90-12433; as amended by First Amendment to Reciprocal
Easement and Operation Agreement, dated January 20, 1993,
recorded as File No. 93-003289; as further amended by Second
Amendment to Reciprocal Easement and Operation Agreement, dated
January 31, 1994, recorded as File No. 94-010707.

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc., as tenant, dated February 22, 1995.

Rafz\Z7098\6-059.ASG\022695\lb

Lafayette, Louisiana