98A003255

Filed for record on ~May-18~ 19~94~ ~4:09~ ~P~ M in Boone Co. Mo.
Document ~10282~ recorded... Book ~7082~ Page ~128~ ... Betty Johnson, Recorder of Deeds

68

## ASSIGNMENT OF LEASES AND RENTS

(Future Advances Secured Hereby Pursuant to Section
443.055 Revised Statutes of Missouri up to
a Maximum Principal Amount of $7,000,000.00)

I4

THIS ASSIGNMENT OF LEASES AND RENTS, made as of the date last below written by COLUMBIA PLAZA SHOPPING CENTER VENTURE, a general partnership organized and existing under the laws of the State of Missouri, (hereinafter referred to as the "Borrower"), having its principal place of business at c/o Walters Properties, 2101 West Broadway, Columbia, Missouri 65203 to FIRST BANK A SAVINGS BANK, a savings bank (hereinafter referred to as "Lender"), having an office at 135 North Meramec, St. Louis, Missouri 63105;

WITNESSETH:

WHEREAS, Borrower and Lender have executed a Construction Loan Agreement of even date herewith (the "Loan Agreement") pursuant to which Lender has agreed to make a loan to Borrower in the aggregate principal amount of Five Million Four Hundred Fifty Thousand Dollars ($5,450,000.00) (the "Loan") on the terms and conditions set forth in the Loan Agreement and for the purposes set forth therein;

WHEREAS, as evidence of the indebtedness incurred under the Loan, Borrower has executed and delivered to Lender a Note of even date herewith, payable to Lender in the original principal amount of Five Million Four Hundred Fifty Thousand Dollars ($5,450,000.00) (the "Note"), payment of which is secured by a Deed of Trust and Security Agreement of even date herewith (the "Mortgage") from Borrower covering the real estate described in Exhibit A, attached hereto and incorporated hereto (the "Property"), as well as other security; and

WHEREAS, the execution and delivery of this Assignment is a condition precedent to the performance by the Lender of its obligations under the Loan Agreement;

NOW, THEREFORE, in consideration of the recitals set forth above and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower hereby covenants agrees as follows:

1. **Assignment.** Borrower hereby sells, assigns, transfers, conveys, and sets over unto Lender, its successors and assigns, all of the right, title, and interest of Borrower in, to and under (i) any and all leases or agreements for the use or occupancy of the whole or any part of the Property, whether such leases and agreements are now or at any time hereafter existing (such Leases or agreements being hereinafter collectively called "Leases" or singularly a "Lease"), together with all amendments and supplements

V:\093\09336\COLLEA2.AGR



EXHIBIT E

69

to and renewals and extensions of the Leases at any time made, and (ii) all rents, earnings, issues, income, and profits arising from the Property and/or from said Leases and all other sums due or to become due under and pursuant thereto, and (iii) any and all guarantees under any of said Leases, and (iv) any and all proceeds payable under any policy of insurance covering loss of rents for any cause, and (v) any and all rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases, including, but not by way of limitation:

1.1. The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, moneys, and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

1.2. The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

1.3. The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to the Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Borrower;

1.4. The right to make all waivers and agreements, to give and receive all notices, consents, and releases, and to take such action upon the happening of a default under any Lease as Borrower might have taken, including the right to commence, conduct, and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

1.5. To do any and all other things whatsoever which the Borrower is or may become entitled to do under or by virtue of the Leases or any of them;

ALL OF THE ABOVE BEING SUBJECT, however, to the right and license hereinafter granted by Lender to Borrower.

This Assignment is made for the purpose of securing: (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest and charges as may accrue thereon, either before or after maturity thereof, of the Note; (b) the full and prompt payment and performance of any and all obligations of Borrower to Lender hereunder and under the Loan Agreement, the Mortgage, and any other agreements, documents, or instruments now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note (the Note, the Loan Agreement, the Mortgage and said other agreements, documents or instruments, together with all renewals, amendments, extensions, consolidations and modifications thereof, are hereinafter collectively referred to as the "Loan Documents" and individually referred to as a "Loan

V:\093\093336\COLLEA2.AGR           -2-

1081

Document"); and (c) any and all other indebtedness, however incurred, which may now or hereafter be due and owing from Borrower to Lender now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether expressed or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations and extensions thereof. The foregoing amounts, obligations, and indebtedness shall not be deemed extinguished by virtue of the fact that the Note may at any time not evidence a debt actually outstanding. This Assignment shall remain in full force and effect until (A) the payment in full of all advances of principal and interest on the Note, and (B) the payment and performance and observance by Borrower of all of Borrower's duties, obligations, and indebtedness under this Assignment, the Mortgage, the Loan Agreement and the others of the Loan Documents.

2. <u>Representations and Warranties</u>.

Borrower represents and warrants to Lender that:

2.1. Borrower has good right and authority to make this Assignment;

2.2. Borrower has not heretofore alienated, assigned, pledged, or otherwise disposed of or encumbered any Leases, or any of the sums due or to become due thereunder or otherwise assigned hereunder;

2.3. Borrower has not performed any acts or executed any other instruments which might prevent Lender from deriving the full benefits of any of the terms and conditions of this Assignment or which would limit Lender in enjoying such benefits;

2.4. Borrower has not accepted, anticipated, or collected rent or any other payments due or to become due under any existing Lease for any period subsequent to the month in which such rent or other payment has become due and payable;

2.5. Borrower has not executed or granted any amendment or modification of any existing Lease, either orally or in writing, except as has been disclosed in writing to Lender; and

2.6. There is no default under any Lease now existing and no event has occurred and is continuing which, with the lapse of time or the giving of notice or both, would constitute an event of default under any Lease.

3. <u>Covenants</u>. Borrower hereby covenants and agrees:

3.1. Promptly to observe, perform, and discharge the obligations and conditions of this Assignment and any and all

V:\093\093336\COLLEA2.AGR            -3-

1081

71

Leases and also the Loan Agreement, the Note, the Mortgage, and the others of the Loan Documents;

3.2. To enforce the performance of each and every obligation, term, covenant, condition, and agreement to be performed by any tenant pursuant to the Leases;

3.3. To appear in and defend any action or proceeding arising under or in any manner connected with the Leases, or the obligations, duties, or liabilities of Borrower and any tenant thereunder and upon request by Lender, to do so in the name and behalf of Lender, but at the expense of Borrower; and

3.4. To provide Lender with a copy of each new Lease or sublease executed by Borrower and copies of all extensions, renewals, or modifications of any Lease.

4. **Negative Covenants**. Borrower also covenants and agrees that it will not, without in each instance obtaining the prior written consent of Lender:

4.1. Enter into, renew, extend, or modify any Lease for space for a term of five (5) years or more;

4.2. Cancel any Lease nor accept a surrender thereof;

4.3. Reduce the rent payable under any Lease or accept payment of any installment of rent in advance of the due date thereof;

4.4. Change, amend, alter, or modify any Lease or any of the terms or provisions thereof, nor grant any concession in connection therewith; provided that, if Borrower notifies Lender of any such proposed change, amendment, alteration, or modification, and Lender does not respond within thirty (30) days after receipt of such notice by Lender, then Lender shall be deemed to have consented to such change, amendment, alteration, or modification;

4.5. Consent to the release of the obligations of a tenant or guarantor under any Lease;

4.6. Assign, pledge, encumber, or otherwise transfer any Lease or Borrower's right thereunder except to the Lender;

4.7. Consent to an assignment of any tenant's interest under any Lease or to a subletting of the premises described therein;

4.8. Incur any indebtedness for borrowed money or otherwise to any tenant or guarantor of any Lease if such indebtedness may under any circumstances be availed of by such tenant or guarantor as an offset against the rent or other payments due thereunder.

V:\093\09338\COLLEA2.AGR              -4-

1081

72

Any of the above acts, if done without the consent of Lender, shall be, at the option of Lender, without any force or effect as against Lender.

5. <u>Further Assurances</u>. Borrower also covenants and agrees that Borrower will, upon the request of Lender, execute and deliver to Lender such further instruments and do and perform such other acts and things as Lender may deem necessary or appropriate to make this Assignment and the various covenants of Borrower herein contained effective and to more effectively vest in and secure to Lender the sums due or hereafter to become due under the Leases. This covenant and agreement shall include, without limitation, the execution of such additional assignments as shall be deemed necessary by Lender to effectively vest in and secure to Lender all rents, income, and profits from any and all Leases. Borrower further agrees that it will, from time to time, upon demand therefor, deliver to Lender an executed counterpart of each and every Lease then affecting all or any portion of the Property.

6. <u>Events of Default</u>. The term "Event of Default," whenever used in this Assignment, shall mean any one or more of the following conditions or events:

6.1. Failure by Borrower to pay as and when due any payable any interest on or principal of or other sum payable under the Note subject to applicable notice and cure provisions provided therein; or

6.2. Failure by Borrower to observe, perform, or discharge any obligation, covenant, condition, or agreement of this Assignment, and the continuance of such failure for a period of thirty (30) days after written notice thereof from Lender or such longer period not to exceed seventy-five (75) days so long as Borrower promptly commences and diligently pursues the cure to completion; or

6.3. Any representation or warranty of Borrower in this Assignment shall prove to have been false or incorrect in any material respect upon the date when made; or

6.4. The occurrence of any "Event of Default" as defined in any of the Loan Documents.

7. <u>Payment of Rents</u>. Borrower hereby consents to and irrevocably authorizes and directs the tenants under the Leases and any successor to the interest of said tenants, upon demand and notice from Lender of Lender's right to receive the rents and other amounts under such Leases, to pay to Lender the rents and other amounts due or to become due under the Leases, and said tenants shall have the right to rely upon such demand and notice from Lender and shall pay such rents and other amounts to Lender without any obligation or right to determine the actual existence of any

V:\093\09338\COLLEA2.AGR

-5-

1081

73

Event of Default or event claimed by Lender as the basis for Lender's right to receive such rents and other amounts, notwithstanding any notice from or claim of Borrower to the contrary. Borrower shall have no right or claim against any tenant for any such rents and other amounts so paid by a tenant to Lender.

Notwithstanding the foregoing provisions, which shall be construed as making and establishing a present and absolute transfer and assignment of the Leases and the rents, earnings, issues, income, and profits arising therefrom, so long as no Event of Default shall exist and so long as no event shall exist which by lapse of time or service of notice, or both, has or would become an Event of Default thereunder or hereunder, Borrower shall have the right and license to occupy the Property as landlord or otherwise, and to collect, use, and enjoy the rents, issues, and profits and other sums, only as the same become due under the provisions of such Lease, and to enforce the covenants of the Leases.

8. <u>Remedies</u>. Upon the occurrence of an Event of Default, Lender, at its option, shall have the complete right, power, and authority:

8.1. To terminate the right and license granted to Borrower in the paragraph immediately preceding and thereafter, without taking possession, to demand, collect, and receive and sue for the rents and other sums payable under the Leases and, after deducting all necessary and proper costs and expenses (including attorneys' fees) of collection as determined by Lender, to apply the net proceeds thereof upon any indebtedness secured hereby;

8.2. To declare all sums secured hereby immediately due and payable, and, at its option, to exercise all of the rights and remedies contained herein, in the Loan Agreement, the Note, in the Mortgage and in any of the other Loan Documents;

8.3. Without regard to the adequacy of the security, with or without process of law, personally or by agent or attorney, or under the Mortgage, or by a receiver to be appointed by court, then and thereafter to enter upon, take and maintain possession of and operate the Property, or any part thereof, together with all documents, books, records, papers, and accounts relating thereto and hold, operate, manage, and control the Property, or any part thereof, as fully and to the same extent as Borrower could do if in possession and in such event, without limitation and at the expense of Borrower, from time to time, cause to be made all necessary or proper repairs, renewals, replacements, useful alterations, additions, betterments, and improvements to the Property, or any part thereof, and insure and reinsure the same, and lease the Property, or any part thereof, for such times and on such terms as Lender deems desirable, including leases for terms expiring beyond the maturity of the indebtedness secured by the Mortgage, and cancel any lease or sublease for any cause or on any ground which would entitle Borrower to cancel the same.

V:\093\09336\COLLEA2.AGR                    -6-

1031

74

Should Lender exercise the rights granted herein as specified upon the occurrence of an Event of Default, thereafter payment of all proper reasonable charges and expenses, including the just and reasonable compensation for the services of Lender's attorneys and agents in connection with the operation, management, and control of the Property and the conduct of the business thereof, and such further sums as may be sufficient to indemnify Lender from and against any liability, loss, or damage on account of any matter or thing done in good faith in pursuance of the rights and powers of Lender hereunder, Lender may, at its option, credit the net amount of income which Lender may receive by virtue of this Assignment and from the Property to any and all amounts due or owing to Lender under the terms and provisions of the Loan Agreement, the Note, this Agreement, the Mortgage and the others of the Loan Documents. The balance of such net income shall be released to or upon the order of Borrower. The manner of the application of such net income and the item which shall be credited shall be within the sole discretion of the Lender.

9. **Construction**. The acceptance by Lender of this Assignment, with all of the rights, powers, privileges, and authority so created, shall not, prior to entry upon and taking possession of the Property by Lender, be deemed or construed to constitute Lender a mortgagee in possession nor thereafter or in any event to impose any obligation whatsoever upon Lender to appear in or defend any action or proceeding relating to the Leases or the Property, or to take any action hereunder, or to expend any money or incur any expenses, or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Borrower by any tenant and not assigned and delivered to Lender or render Lender liable in any way for any injury or damage to person or property sustained by any person, firm, or corporation in or about the Property.

10. **No Waiver**. Borrower agrees that neither the collection of rents and the application thereof as provided for herein or the entry upon and taking of possession of the Property, or any part thereof, by Lender shall cure or waive any Event of Default or waive, modify, or affect any notice of the occurrence of an Event of Default hereunder or under the Loan Agreement, the Note, the Mortgage or the others of the Loan Documents, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Lender, once exercised, shall continue for so long as Lender shall elect. If Lender shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time upon the occurrence of any subsequent Event of Default.

11. **Remedies Cumulative**. The rights and remedies of Lender hereunder are cumulative and not in lieu of, but are in addition

V:\093\09336\COLLEA2.AGR    -7-

1031

75

to, any rights or remedies which Lender shall have under the Loan Agreement, the Note, the Mortgage, the others of the Loan Documents, or at law or in equity, and said rights and remedies may be exercised by Lender either prior to, simultaneously with, or subsequent to, any action taken hereunder. Said rights and remedies of Lender may be exercised from time to time and as often as such exercise is deemed expedient by Lender in its absolute discretion, and the failure of Lender to avail itself of any of the terms, provisions, and conditions of this Assignment or any rights granted herein for any period of time, at any time or times, shall not be construed or deemed to be a waiver of any rights under the terms hereof.

12. **Effectiveness**. The right of Lender to collect and receive the rents assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Lender shall, to the extent not prohibited by law, also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

13. **Indemnity**. Borrower agrees to indemnify and hold Lender harmless of and from and against any and all liability, loss, damage, or expense, which Lender may or might incur under or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking on the part of Lender to perform or discharge any of the terms, covenants or agreements contained in the Leases other than demands or claims arising out of the gross negligence or intentional misconduct of the Lender. Should Lender incur any such liability, loss, or damage under or by reason of this Assignment, or in the defense against any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the rate provided for in the Note subsequent to the occurrence of an Event of Default, shall be secured by this Assignment and by the Mortgage, and Borrower shall reimburse Lender therefor immediately upon demand, and upon failure of Borrower so to do, Lender may declare all sums secured hereby immediately due and payable.

14. **Notice**. Any provision in this Assignment requiring or permitting notice or demand or request shall be deemed satisfied by written notice personally served on Borrower or Lender (Attn: Ronald D. Koch, Senior Vice President), as the case may be, or when mailed by registered or certified mail, postage prepaid, addressed to the principal business address of Borrower or Lender, as the case may be, as set forth on the first page of this Assignment or as hereafter designated in writing as address for notice hereunder by the one party to the other. Provided, however, that any notice given by Borrower to Lender electing to terminate the operation of this Assignment as security for future advances or future obligations pursuant to Subsection 443.055.6 of the Revised

V:\093\09336\COLLEA2.AGR                    -8-

1331

76

Statutes of Missouri shall be deemed received by Lender for purposes thereof only upon actual receipt of such notice by the Lender, or three (3) days after mailing of such notice as certified matter, postage prepaid to the Lender.

15. **Future Advances**. This Assignment is to be governed by Section 443.055 of the Revised Statutes of Missouri. In the event Borrower shall at any time deliver or cause to be delivered to Lender a notice pursuant to Subsection 443.055.6 of the Revised Statutes of Missouri electing to terminate the operation of this Assignment as security for future advances or future obligations made or incurred after the date of such notice, then upon receipt of such notice, Lender shall have no further obligation under the Loan Agreement, the Note, the Mortgage, this Assignment, or the others of the Loan Documents to advance monies to or for the account of Borrower, notwithstanding anything in the Loan Agreement, Note, the Mortgage, this Assignment, or the others of the Loan Documents to the contrary. Moreover, any request by Borrower for an advance under the Note shall constitute a certification that no such notice of lien termination has been given by Borrower.

16. **Governing Law**. This Assignment shall be governed by the laws of the State of Missouri.

17. **Assignment**. This Assignment shall be assignable by Lender and all representations, warranties, obligations, covenants, powers, and rights herein contained shall be binding upon, and inure to the benefit of, Borrower and Lender and their respective successors and assigns.

IN WITNESS WHEREOF, Borrower has caused these presents to be duly executed as of the 22nd day of April, 1994.

                          COLUMBIA  PLAZA  SHOPPING  CENTER
                          VENTURE,   a   Missouri   general
                          partnership

                          By: Walters Acquisitions, Inc. d/b/a
                              Walters Investments, Inc.,
                              General Partner

(Seal)

                          By: _____
                              Raul J. Walters, President

V:\093\093336\COLLEA2.AGR        -9-

1081

                              By:  Midland-Columbia Development         77
                                   Company, L.P., General Partner

           (seal)              By: Columbia Equities, Inc.
                                   General Partner

                               By: /s/ Lee S. Wielansky
                                   Lee S. Wielansky
                                   President

STATE OF MISSOURI       )
                        ) SS.
COUNTY OF ~~ST. LOUIS~~ Boone )

On this 12 day of May, 1994, before me appeared Raul J. Walters, to me personally known, who, by me being duly sworn did say that he is the President of Walters Acquisitions, Inc., d/b/a Walters Investments, Inc., a corporation and the said seal affixed to the foregoing instrument is the corporate seal of said corporation, and the said corporation is a general partner of Columbia Plaza Shopping Center, a general partnership and said Raul J. Walters acknowledged that he executed and sealed the same in behalf of said corporation and said general partnership by authority of the Board of Directors of the corporation and said Raul J. Walters acknowledged said instrument to be the free act and deed of said corporation and said general partnership.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the county or city and state aforesaid, the day and year last above written.

                              /s/ Wendy Nichols Breckle
                              Notary Public WENDY NICHOLS BRECKLE

My Term Expires: April 22, 1998


STATE OF MISSOURI   )
                    ) SS.
COUNTY OF ST. LOUIS )

On this 11th day of May, 1994, before me appeared Lee S. Wielansky, to me personally known, who, by me being duly sworn did say that he is the President of Columbia Equities, Inc., a corporation, and that said seal affixed to the foregoing is the corporate seal of said corporation, and that the said

V:\093\09336\COLLEAS.AGR              -10-

1031

78

corporation is the General Partner of Midland-Columbia Development Company, L.P., a limited partnership, and that said Midland-Columbia Development Company, L.P. is a general partner of Columbia Plaza Shopping Center Venture, a general partnership, and said Lee S. Wielansky acknowledged that he executed and sealed the same on behalf of said corporation, said limited partnership, and said general partnership, by authority of the Board of Directors of the corporation and said Lee S. Wielansky acknowledged said instrument to be the free act and deed of said corporation, said limited partnership, and said general partnership.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the County and State aforesaid, the day and year last above written.

_____ Jane E. Kelly _____
Notary Public

My Term Expires:

JANE E. KELLY
NOTARY PUBLIC, STATE OF MISSOURI
MY COMMISSION EXPIRES 10/4/96
ST. LOUIS COUNTY

V:\093\09336\COLLEA2.AGR        -11-

1031

EXHIBIT A                                        79

LOT THREE (3) OF COLUMBIA PLAZA NORTH SUBDIVISION AS SHOWN BY THE
PLAT RECORDED IN PLAT BOOK 27, PAGE 74, RECORDS OF BOONE COUNTY,
MISSOURI

STATE OF MISSOURI)
COUNTY OF BOONE  ) SS.                           Document No. 10781

I, the undersigned Recorder of Deeds for said county and state do
hereby certify that the foregoing instrument of writing was filed for record
in my office on the 18th day of May, 1994 at 4 o'clock and 09:31
minutes PM and is truly recorded in Book 1081 Page 68.

Witness my hand and official seal on the day and year aforesaid.

BETTIE JOHNSON, RECORDER OF DEEDS

by _____ deputy
   Lisa Wyatt

V:\093\09336\COL.LGL

1081