MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street, Room 5-223
New York, New York 10007
Attorneys for the New York City
Department of Finance
Gabriela P. Cacuci, Esq.
Tel. 212-788-0688
gcacuci@law.nyc.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

------------------------------------------------x

In re:

CIRCUIT CITY STORES, INC., et al.,

Debtors.

------------------------------------------------x

Chapter 11

Case No. 08-35653 (KRH)

Response Deadline: 4/7/2011, 4:00 p.m.
Hearing Date: 4/14/2010 at 2 p.m.

**RESPONSE OF THE NEW YORK CITY DEPARTMENT OF FINANCE ("DOF") TO THE LIQUIDATING TRUST'S OBJECTION TO DOF CLAIM NO. 2297 FOR PRE-PETITION EXCISE TAXES**

TO: THE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

The New York City Department of Finance ("DOF") by its counsel, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, hereby submits its Response and Cross-Motion to the Liquidating Trust's Objection to Claim No. 2297 filed by DOF (the "Objection"). In support thereof, DOF states as follows:

## BACKGROUND

1. On November 10, 2008 (the "Petition Date"), the debtors (the "Debtors") in the above-captioned cases filed voluntary petitions before this Court for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, et seq.).

2. On December 10, 2008, the Court entered the Claims Bar Date Order[1] which set January 30, 2009 as the General Bar Date. The deadline for governmental units, such as DOF, to file claims arising prior to November 10, 2009, was May 11, 2009 (the "Governmental Bar Date").

3. On January 16, 2009, the Court authorized the Debtors to conduct going out of business ("GOB") sales at the Debtors' remaining 567 stores pursuant to the Agency Agreement between the Debtors and a joint venture as Agent. On January 17, 2009, the Agent commenced GOB sales pursuant to the Agency Agreement. The GOB sales at the Debtors' remaining stores were completed as of March 8, 2009.

4. On August 9, 2010, the Debtors and the Creditors Committee filed the Plan of Liquidation (the "Plan"), which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under Chapter 11.

5. On September 10, 2010, this Court entered an Order confirming the Plan.

6. The Plan became effective on November 1, 2010 (the "Effective Date"). Pursuant to the Plan and Liquidating Trust Agreement approved pursuant to the Plan, the Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors, including the prosecution of Causes of Action and objections to claims.

---

[1] All terms capitalized but not defined herein shall have the same meanings assigned to such terms in the Liquidating Trust's Objection.

**DOF's Claim No. 2297**

7. On December 30, 2008, DOF – a New York City governmental unit -- filed a timely unsecured priority tax claim in the total amount of $715,000 (the "DOF Claim") for unpaid New York City Commercial Rent Tax ("CRT") in the amount of $110,000.00 for the period 6/1/92-5/31/96, unpaid CRT in the amount of $385,000.00 for the period 6/1/96-11/10/08, and unpaid New York City General Corporation Tax ("GCT") in the amount of $220,000.00 for the period 1/1/05-11/10/08.

**The Liquidating Trust's Objection**

8. By the Objection, the Liquidating Trust objects to the DOF CRT and GCT Claims on the grounds that such claims are "not reflected in the Debtors' books and records", are "nothing more than an estimate" and "not based on actual data", that "upon information and belief" such claims may be "based on improper or erroneous calculations", and because New York City allegedly "does not provide any basis or support" for its claims. (See Objection at pp. 7-8, ¶¶ 23 and 24.) The Liquidating Trust requests that the DOF Claim be disallowed in its entirety or, alternatively, that such Claim be set off against the amount of $131,202 (the "Refund Amount") with respect to which the Debtors sought a refund which has so far been denied by DOF. The Liquidation Trust's Objection is totally without merit for the reasons set forth below.

**DOF'S Tax Claims are Prima Facie Valid**

9. The DOF Claim is prima facie valid. See Fed. R. Bankr. P. 3001(f). Rule 3001(f) "commands that a properly filed proof of claim constitutes prima facie evidence of the claim's validity." In re St. Johnsbury Trucking Co., 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), aff'd 221 B.R. 692 (S.D.N.Y. 1998), aff'd 173 F.3d 846 (2d Cir. 1999); In re Pinnacle Brands, Inc., 259 B.R. 46, 49-50 (Bankr. D. Del. 2001); In re Finova Capital Corp., 356 B.R. 609, 623

(Bankr. D.Del. 2006). Supporting documentation is not required since the DOF Claims are based on a statutory obligation for taxes. In re Los Angeles Int'l Airport Hotel Assocs., 196 B.R. 134 (9th Cir. BAP 1996) (failure to attach documentation to support a claim based on a statute does not deprive the claim of prima facie validity), aff'd, 106 F.3d 1479 (9th Cir. 1997); In re Pan, 209 B.R. 152, 156-57 (D. Mass. 1997) (a properly filed proof of claim constitutes prima facie evidence of the government's claim even though no documentary evidence of the claim is provided).

10. The DOF Claim (consisting of unpaid GCT and unpaid CRT for the pre-Petition period) is accorded an unsecured priority status pursuant to section 507(a)(8)(E) of the Bankruptcy Code as excise taxes.

11. New York City imposes a GCT tax on domestic and foreign corporations that do business in New York City, or have a taxable connection with the City, unless they are specifically exempted. See New York City Administrative Code ("NYC Code") § 11-603(1); Allied-Signal, Inc. v. Commissioner of Finance, 79 N.Y.2d 73 (1991). Generally, the tax is based on the entire net income allocated to the City. However, if a higher payment will result, one of three alternative bases must be used: (1) business and investment capital; (2) income plus certain salaries; or (3) a flat-rate minimum. See NYC Code §11-604. GCT fits squarely within the ambits of § 507(a)(8)(A) of the Bankruptcy Code as a tax based on the business income or gross receipts of a corporation.

12. CRT is imposed on the rental of commercial real property and is measured by and calculated as a percentage of the consideration paid for the use of the premises, for which the tenant is liable. See NYC Code §§ 11-701 & 702. Thus, where the debtors fail to file the required NYC CRT tax returns but filed at least some NYC GCT tax returns and/or federal tax

returns. DOF has no other way of attempting to determine the tax due for CRT except by using the information and amounts disclosed in the GCT and/or the federal tax returns filed, if any. CRT is an excise tax on the use of property for consideration, not one on mere ownership. Ampco Print-Adv. Corp. v. City of New York, 14 N.Y.2d 11, 19-22 (1964). Consequently, CRT is an "excise tax on a transaction" under section 507(a)(8)(E) of the Bankruptcy Code.

13. Since DOF has established its prima facie case, the burden of going forward shifts to the Trust to produce evidence sufficient to negate the prima facie validity of the filed claim. See In re Make Meat Corp, 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. 1999; Johnsbury, supra, 206 B.R. 318 at **15; In re Finova Capital Corp., 356 B.R. at 623; In re Mariner Post-Acute Network, Inc., 2005 U.S. Dist. LEXIS 13673, 4-5 (D.Del. 2005); In re Touch America Holdings, Inc., 2007 Bankr. LEXIS 4167 (Bankr. Del. 2007). "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim" In re Minbatiwalla, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) citing Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (citations omitted).

14. The Liquidating Trust's assertion that the DOF Claim is not reflected in the Debtors' "books and records", is not only untrue, as will be explained below, but such argument has been rejected by courts as being insufficient to rebut the presumption of a claim's validity. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3rd Cir. 1992) (objector must produce evidence equal in force to the prima facie case); In re King Street Investments, Inc., 219 B.R. 848 (9th Cir. BAP 1998) (objector must produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves). See Johnsbury, supra, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), aff'd 221 B.R. 692 (S.D.N.Y.

1998), aff'd 173 F.3d 846 (2d Cir. 1999), where despite a similar assertion made by the debtors, the trial proved the correctness of the taxing authority's deficiency claim against the debtors; In re Minbatiwalla, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).

15. As the Liquidating Trust reluctantly acknowledges, "where a claim is made against a debtor by a taxing authority, the taxpayer bears the ultimate burden of proof." (See Objection at ¶ 21.) Indeed, the landmark Supreme Court case of Raleigh v. Illinois. Dep't of Revenue (In re Stoecker), 530 U.S. 15, 120 S. Ct. 1951, 147 L.Ed.2d 13 (2000) settled the existing conflict among the various circuits concerning the burden of proof in bankruptcy tax cases.[2] The Supreme Court held that bankruptcy does not alter the burden imposed by the substantive state law creating the tax obligation which puts the burden on the taxpayer. It stated:

> Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.... "Unless some federal interest requires a different result, there is no reason why [the state] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." [citing Butner v. United States, 440 U.S. at 55].

Id. at 20-21. Since New York law places the burden of proof on the taxpayer, the Disbursing Agent has the burden of providing evidence disproving the amount of DOF's presumptively valid Claim.

16. The Supreme Court in Raleigh recognized that the burden of proof is "critical" in tax cases (whether or not in the bankruptcy context) and that there are "powerful

---

[2] The bankruptcy court in Johnsbury noted the conflict among circuits regarding the burden of proof in bankruptcy cases but found it "unnecessary" to "register with either camp." The Johnsbury decisions preceded Raleigh.

justifications" for leaving the burden on the taxpayer, where the state law places it. Former Justice Souter stated as follows:

> [T]he burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it.
>
> Tax law is no candidate for exception from this general rule, for the very fact that the burden of proof has often been placed on the taxpayer indicates how critical the burden rule is, and reflects several compelling rationales: the vital interest of the government in acquiring its lifeblood, revenue; the taxpayer's readier access to the relevant information; and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute . . . These are powerful justifications not to be taken lightly.

Id. at 21. (Internal citations omitted, emphasis added.)

17. Post-Raleigh decisions in bankruptcy tax cases have all placed the burden on the debtor/taxpayer to disprove the validity of the governmental tax claims. See e.g., Neilson as Ch. 7 Trustee v. United States of America (In re Olshan), 356 F.3d 1078 (9th Cir. 2004) (holding that the bankruptcy court erred in shifting the burden of proof and rejecting IRS's claims which should have been presumed correct if supported by a minimal factual foundation); Moser v. United States of America (In re Moser), 2002 U.S. App. Lexis 463, 2002-1 U.S. Tax cas. (CCH) P50,170 (4th Cir. 2002) (affirming the bankruptcy court's finding that the debtors had failed to produce sufficient evidence to rebut the presumption of correctness that attached to the IRS's proof of claim for deficiencies); Industrial Commercial Electrical, Inc. v. Official Committee of Unsecured Creditors (In re Industrial Commercial Electrical, Inc.), 319 B.R. 35 (D. Mass. 2004) (reversing the bankruptcy court's decision and remanding with direction that the court allow the IRS's administrative claim in the full amount and noting, inter alia, that the

debtors' tactical choice of placing primary reliance on their argument that the burden of proof rested with the IRS proved incorrect); Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2nd Cir. B.A.P. 2000); In re Minbatiwalla, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Accordingly, the Debtors must provide legal and factual support for the Objection in order to overcome the prima facie validity of the DOF Claims.

**The Liquidating Trust's Objection Must Be Overruled**

18. DOF will address each of the Liquidating Trust's arguments seriatim and show why such arguments are invalid and contradict both established precedent and the Debtors' own past conduct with respect to their tax obligations to New York City.

**DOF Claim Is Not Reflected in the Debtors' "Books and Records" And Is Only an Estimate, Not Based on Actual Data**

**Commercial Rent Tax**

*PRE-PETITION, PRE-AUDIT -- FY 6/1/92-5/31/01.*

19. When companies, such as the Debtors, ignore their tax obligations under non-bankruptcy law and choose not to report their rental income and not to file tax returns even though they are fully aware of their obligations, they should not be heard to complain, primarily in a court of equity, such as the Bankruptcy Court, that their "books and records" do not reflect the very obligations they sought to avoid or that the taxing authorities are not using actual data, i.e., the very data the Debtors refused to disclose. The Liquidating Trust is not claiming, nor could it, that the Debtors did not operate several large stores within New York City during the pre-Petition period. The Debtors' tax advisor provided DOF with a list of the store locations. It logically follows that the Debtors paid rent for such stores and that CRT was due on such rental income within New York City.

20. In these cases, for many years pre-Petition, the Debtors were non-filers, which means that they did not report their business operations and their tax liabilities are not dischargeable under 11 U.S.C. §§ 727(a)(3), 727(d)(4) and 1141(d)(6). The Liquidating Trust pretty much concedes the Debtors' lack of adequate records. It states in paragraph 14 of the Objection: "The Liquidating Trust has been unable to determine whether CCSI timely filed Commercial Rent Tax Returns with New York City for tax periods prior to May 31, 2001." Obviously, if the Debtors had filed CRT tax returns for the period prior to May 31, 2001, they would have been able to provide DOF with copies thereof or DOF would have been able to obtain such copies. This is not the case.[3]

21. DOF asserts that the Debtors owe it $110,000 in CRT for the period 6/1/92 to 5/31/96 and $385,000 in CRT for the period 6/1/96 to 11/10/08. Claim 2297 was filed before DOF had the benefit of the documents subsequently provided by the Debtors pursuant to DOF's first information document request issued on August 7, 2009 (the "**First IDR**", a copy of which is annexed as **Exhibit A** hereto). With respect to CRT, the First IDR requested copies of all NYC leases for the pre-Petition and administration periods covered by the DOF's pre-Petition and Administration Claims.[4] It took the Debtors more than six months to provide some of the documents requested by DOF. (See **Letter from Debtors' counsel dated February 8, 2010** enclosing certain information, annexed hereto as **Exhibit B**.)

---

[3] Paragraphs 14-16 of the Objection at p. 5 are notable in this respect. Nowhere is the Liquidating Trust claiming that the Debtors filed CRT or GCT returns for the pre-Petition, pre-audit years of 1992-2001. It only refers to CRT returns being filed for 2004-2009 and GCT returns being filed for 2005-2008.

[4] DOF's Administration Claim is not subject of the Liquidation Trust's Objection.

22. Following DOF's review and analysis of the records provided by the Debtors in response to the first IDR, DOF prepared a Schedule of Commercial Rent Tax owed by the Debtors for the pre-Petition and post-Petition Period, with statutory interest calculated through the November 10, 2008 Petition Date (the "**CRT Schedule**"). (A copy of the CRT Schedule is annexed hereto as **Exhibit C**.) However, since the Debtors did not file New York City CRT tax returns, DOF could only extrapolate and estimate the CRT due from the GCT schedules provided by the Debtors. The CRT Schedule reflects CRT due of $1.1 million.

23. Specifically with reference to the CRT Schedule, the CRT due for the FY year ending 1992 was derived from the New York City's portion of the Debtors' Schedule H of their GCT return. Similarly, the amounts DOF calculated for CRT for the FY ending 1994-1997 had to be based on the GCT return filed for FY ending in 1993 because no CRT returns were filed by the Debtors. Also, for the FY ending 1998, DOF used the New York City portion of the Debtors' Schedule H of their GCT return for that year. While this method is undoubtedly less than perfect, it is the only method DOF could use considering the absence of the CRT returns. As previously noted, considering the Debtors' "unclean hands" as non-filers, they should not be the ones benefiting from their own wrongdoing by asserting that DOF's calculation is only an "estimate" and not based on "actual data." Had the Debtors complied with their tax obligations and provided "actual data", such data would have been used to calculate the CRT amount owed, as opposed to extrapolating amounts from the Debtors' sporadic GCT filings.

24. For ease of understanding, the CRT Schedule should be divided among: (a) the Pre-Petition, pre-audit years (FY 6/92-5/31/01) discussed in this section of the Response; (b) the Pre-Petition audit period (FY 6/1/01-5/31/04) discussed at pages 11-12; and (c) the Pre-Petition, post-audit period (FY 6/1/04-5/31/08) discussed at pages 12-13 of this Response.

Significantly, and as noted below, DOF accepted the Debtors' returns as filed for the audit years (2001-2003) and, as a result, the CRT Schedule showing an amount owed of $1.1 million does not include the $818,863.41 Audit Amount (as defined in ¶ 27 below).[5] A review of the CRT Schedule reveals that, even without interest, the Debtors' CRT obligation for the pre-Petition, pre-audit years from 6/1/92 to 5/31/01 amounts to approximately $500,141. The interest for those years is an additional $590,706, for a total amount (P+I) of $1,090,847.

25. As noted above, the CRT Schedule was prepared based on the records finally provided to DOF by the Debtors subsequent to the filing of the DOF Claim. Therefore, even though extrapolated from the GCT schedules provided by the Debtors, the CRT Schedule is a more accurate reflection of the CRT amounts actually owed than the DOF Claim which appears to have significantly underestimated the Debtors' CRT obligation. The amount of $495,000 in CRT demanded in the DOF Claim for the period 6/1/92-11/10/08, i.e., for the periods (a), (b) and (c) combined (see ¶ 24 above) is slightly less than the principal amount actually owed by the Debtors for the pre-audit period, i.e., 6/1/92-5/31/01, in accordance with the CRT Schedule.

26. Therefore, the CRT demanded in the DOF Claim is clearly less than what the Debtors owe and even if allowed in full, the Debtors would in fact be paying not even half of their tax obligation based on the records they themselves provided to DOF.

*PRE-PETITION AUDIT - FY 6/1/01-5/31/04.*

27. The Liquidating Trust acknowledges that the Debtors' pre-Petition tax obligations for the period 6/1/01-5/31/04 "were settled pursuant to an agreed upon audit by New

---

[5] The CRT Schedule does include, however, the amount of $28,398.00 which is in part post-Petition.

York City." (See Objection at p.5, ¶ 14). As a result of the audit, the Debtors paid in 2004 $818,863.41 in taxes, penalties and interest (the "Audit Amount"). (See **DOF Audit Case Summary Report** annexed as **Exhibit D** hereto). As can be observed from a review of the proof of claim and of the CRT Schedule, the Audit Amount is not encompassed by either, having been agreed to and paid by the Debtors. In other words, the amounts listed as owed with respect to the CRT both in the proof of claim and in the CRT Schedule are IN ADDITION to, not in lieu of, the Audit Amount.

28. Indeed, there is no reason to believe that the Debtors' business was not doing well in the pre-Audit years. The Debtors only filed for Chapter 11 in 2008 and as far as DOF can tell, the Debtors did not file CRT returns for twelve (12) years pre-Petition and/or GCT returns for most of that period, except for one or two GCT returns, as discussed above. Considering the size of the Audit Amount which covers only two (2) pre-Petition fiscal years, DOF is most likely still underestimating the total amount the Debtors owe for CRT for the pre-Petition, pre-Audit years, even as reflected in the CRT Schedule. The CRT Claim, however, seeks only a small portion of the amount listed in the CRT Schedule.

*PRE-PETITION, POST-AUDIT - FY 6/1/04-11/10/08.*

29. Even though the Liquidating Trust seeks to disallow the CRT claim in its entirety, the Debtors' tax advisor seemed in substantial agreement with DOF's calculations of the CRT due for the pre-Petition, post-audit period, from 6/1/04 through the Petition Date of 11/10/08. As reflected in the CRT Schedule, DOF claims that approximately $100,000 is owed, without interest, for this period and the Debtors' tax advisor (PricewaterhouseCoopers) claims that $105,854 is owed, as can be seen from the **April 14, 2010 email** correspondence annexed as **Exhibit E** hereto. In addition, there is no reason why DOF should not be entitled to any interest

for this period. According to DOF, the interest for the pre-Petition, post-audit period is approximately $12,000.

30. In sum, the Liquidating Trust was unable to bring any evidence in its Objection to overcome the prima facie validity of DOF's Claim and to support its position that no CRT is due. All the facts before this Court support DOF's position, including the following:

-- the Debtors' status as non-filers for twelve (12) years pre-Petition;

-- the fact that Schedule H to their sporadic GCT returns reflects a CRT liability higher than originally estimated by DOF in the absence of such schedule;

-- the fact that the Debtors were audited pre-Petition, albeit only for a two-year period, and that the audit resulted in a tax liability higher than previously estimated by DOF;

-- the fact that the Debtors agreed with DOF's audit results and paid CRT in the Audit Amount;

-- the fact that the Debtors started filing CRT and GCT returns more regularly after the Audit was completed;

-- the fact that the Debtors' tax advisor seems in agreement with DOF with respect to the amount of CRT due for the pre-Petition, post-Audit period;

-- the fact that, even though not presently before the Court, the Debtors' tax advisor is in agreement with DOF with respect to the amount of CRT due for the administration period ($10,694, inclusive of interest, for the period 11/11/08-4/30/09).

31. Accordingly, since the Liquidating Trust has failed to meet its burden of proof by not presenting any support for the Objection to the CRT portion of the DOF Claim, it is respectfully submitted that the CRT Claim should be allowed in full, as filed. The DOF Claim requests payment of $485,000 in CRT for the entire pre-Petition Period, in addition to the settled

Audit Amount which is not covered by the Claim. However, as explained above, the Debtors' CRT liability based on records provided to DOF post-Petition, in response to DOF's first IDR, is $1.1 million, inclusive of interest for the 12 pre-Petition years covered by the Claim. If the Liquidating Trust is refusing to pay the DOF Claim as filed, even though it is less than half the Debtors' actual tax liability, DOF requests leave to amend its Claim pursuant to its Cross-Motion for Leave to Amend filed contemporaneously herewith so that it can increase the amount owed to that reflected in the CRT Schedule.

**II. General Corporation Tax**

32. As shown above, DOF asserted its $220,000 GCT claim for the pre-Petition period 1/105-11/10/08. At that time, the Debtors had not filed GCT tax returns for those tax years, which caused DOF to issue its First IDR on August 7, 2009. (See **Exhibit A** hereto). With respect to GCT, the First IDR requested copies of NYC-3L tax returns and Federal Form 1120, including supporting schedules for 2008 and 2009. Those returns were produced to undersigned counsel for DOF only in February, 2010. (See **Exhibit B** hereto). At about the same time, the Debtors filed a claim (No. 012815745 S) for an alleged refund in the amount of $131,202 for the period ending 2/28/06 (the "Refund Claim"). DOF issued a Notice of Disallowance on March 4, 2010 with respect to the Refund Claim. (A copy of the **Notice of Disallowance** is annexed as **Exhibit F** hereto).[6]

33. In its Objection, the Liquidating Trust argues that "**any** amounts owed to New York City should be setoff by the amounts owed by New York City to Debtors". (See

[6] The Notice of Disallowance advised the Debtors/taxpayers that they have a right to file a Request for Conciliation Conference or a Petition for a Hearing within 2 years from the mailing of the Notice of Disallowance. Thus, the Debtors' time to take such action has not expired.

Objection at p. 9, ¶ 25, emphasis added.) Such argument is untenable. First, any alleged refund that may or may not be owed the Debtors for GCT should not be confused with the large amounts the Debtors owe DOF for over 12 years of unpaid CRT when the Debtors' business operations were successful. As shown in part I (Commercial Rent Tax), the Liquidating Trust has failed to challenge the validity and amount of the CRT Claim which, as filed, is not even half of the actual CRT due DOF, as reflected in the CRT Schedule (**Exhibit C** hereto).

34. Second, the Liquidating Trust claims entitlement to the refund just because the Debtors had allegedly filed a "timely tax return" for the FY ending 2/28/06. While conceding that it was subject to taxation within New York City, the Trust fails to mention that the Debtors had failed to file GCT returns for the following two years and that such returns were filed late and only in response to DOF's First IDR.

35. Moreover, the information provided by the Debtors so far is insufficient for DOF to determine if the Refund is in fact due as a result of alleged Net Operating Losses ("NOL") incurred by the Debtors. It is for this reason that, after raising this issue with the Debtors' tax advisor, DOF issued its second IDR on January 24, 2011 (the "Second IDR"). **The Second IDR** (a copy of which is annexed hereto as **Exhibit G**), requested (1) copies of detailed supporting schedules used to calculate certain NYC-3L schedules (Schedule B – Computation of Entire Net Income; Schedule E – Computation and allocation of Capital; and Schedule H – Business Allocation), (2) a detailed analysis of Net Operating Loss schedule; and copies of any completed Federal and/or NYS changes for the period 1/1/05-4/30/09. No documents have so far been provided by the Debtors and/or the Liquidating Trust in response to the Second IDR.

36. Thus, as with the CRT Claim, the Liquidating Trust has failed to carry its burden of proving that the DOF GCT Claim is invalid or incorrect with respect to the amount

asserted. It is also inequitable for the Trust to seek to disallow the GCT Claim on the pretext that "it is entitled" to the Refund while, at the same time, refusing to provide the records that would enable DOF to determine if in fact the Refund is owed. Like any taxing authority, DOF has the right to audit tax returns and review the methodology used to take certain deductions or claim certain depreciation. The Debtors and/or Liquidating Trust's attempts to avoid responding to the Second IDR should not be encouraged by expunging DOF's Claim. Instead, the Liquidating Trust should be directed to comply with the Second IDR and pending such compliance, this Court should reject the Trust's argument that "it is entitled" to the Refund or that all amounts due DOF - $1.1 according to the CRT Schedule – should be "set off" against the Refund Claim of $131.202.

37. Accordingly, DOF respectfully requests that its GCT Claim be allowed in the amount asserted pending the Liquidating Trust's production of the additional documents DOF requested in the Second IDR.

WHEREFORE, DOF respectfully requests that the DOF Claim (both CRT and GCT) be allowed in full as filed or, in the alternative, if not so allowed, that DOF's Motion for Leave to Amend Its Claim to Increase the Amount of Claim 2297, filed contemporaneously herewith, be granted so that Claim 2297 is increased to the $1.1 million reflected as due in accordance with the CRT Schedule prepared to DOF subsequent to and based on the records furnished by the Debtors to DOF after the bar date.

Dated: New York, New York
April 6, 2011

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for the New York City
Department of Finance
100 Church Street, Room 5-223
New York, New York 10007
Tel. (212) 788-0688
Fax: (212) 788-0937
gcacuci@law.nyc.gov

By: /s/Gabriela P. Cacuci
Gabriela P. Cacuci (GC-4791)

**CERTIFICATE OF SERVICE**

I, Gabriela P. Cacuci, an attorney admitted to practice before the courts of the State of New York with an Application for Admission Pro Hac Vice pending before this Court, do hereby certify that on April 6, 2011, I served true copies of the foregoing Response of the New York City Department of Finance ("DOF") to the Liquidating Trust's Objection to Claim No. 2297 ForPre-Petition Excise Taxes dated April 6, 2011, by facsimile and/or electronic transmission on the parties listed below:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100
Tel. (310) 277-6910
Fax: (310) 201-0760
jpomerantz@pszjlaw.com
acaine@pszjlaw.com

TAVENNER & BERAN, PLC
Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Tel. (804) 783-8300
Fax: (804) 783-0178
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com

*Counsel for the Circuit City Stores, Inc. Liquidating Trust*

Office of the US Trustee
Robert B. Van Arsdale
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Fax: (804) 771-2330

Dated: New York, New York
April 6, 2011