IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| | | |
|---|---|---|
| In re: | § | |
| | §. | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | §. | |
| | §. | Case No 08-35653 (KRH) |
| Debtors. | §. | |
| | § | Jointly Administered |

**RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S
FIFTEENTH OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF
CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN
MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID
CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS,
AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)'**

Capmark Finance, Inc. ("Capmark") on behalf of Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A. (f/k/a) Northwest Bank Minnesota, N.A.) as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL (Trustee"), by and through its counsel Bryan Cave LLP, hereby files this Response and Request for Hearing to Liquidating Trust's Fifteenth Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

6135184.1PGDocs

1. The Trustee for Debtors has objected to proof of claim numbers 9741, 9441 and 9450, ( the "Claims") filed by Capmark.

2. Capmark filed the Claims on January 30, 2009. Proof of claim 9450 was filed to recover $1,419,755.11 plus unpaid prepetition rent plus unpaid prepetition additional rent. Proof of Claim 9741 was filed to recover $812,334.91 plus unpaid prepetition rent plus unpaid prepetition additional rent. Proof of claim 9441 was filed to recover $1,229.478.60 plus unpaid prepetition rent and unpaid prepetition additional rent.

## Proof of Claim 9741

3. With regard to proof of claim 9741, Trustee for Debtors states that "Claim 9741 is a single line item claim for rejection damages and appears to be filed by a lender to which the debtor does not acknowledge as entitled to make a claim."

4. Trustee is entitled to make proof of claim 9741.

5. As stated in proof of claim 9741, the Trustee holds a mortgage on the real property commonly known as 7320 Market Street, Boardman, OH 44512 (Store No. 3629). The mortgagor on the property Bond-Circuit V Delaware Business Trust, a Delaware business trust (the "Borrower") leased the property to Circuit City Stores, Inc. ("Circuit City") pursuant to a written lease (the "Lease") dated December 30, 1996 between Borrower, as Landlord, and Circuit City, as Tenant, as it may have been amended. The Lease and the rents thereunder were assigned by the Borrower to its lender in an Assignment of Leases and Rents, effective as of December 30, 1997 (the "Assignment"). The Assignment was subsequently conveyed by the lender to the Trustee.

6. Circuit rejected the Lease and the landlord on the property has no rights in the rents or leases.

7. The Assignment provides that, upon occurrence of default, Trustee is entitled to all rents under the lease.

8. The assignment gives all rights to the property in question to Trustee, and thus Trustee is entitled to make proof of claim 9741.

### Proof of Claims 9441 and 9450

9. Trustee for Debtors has listed proof of claim 9441 and 9450 on Exhibit G as Amended Claims to be Expunged.

10. For proof of claim 9441 Trustee for Debtors states that the face amount of the surviving claim is $2,479,902.78 (general unsecured) and that the surviving claim is 13440.

11. For proof of claim 9450, Trustee for Debtors states that the face amount of the surviving claim is $2,78,854.61 (general unsecured) and that the surviving claim is 13426.

12. Although the Trustee for Debtors' objections to claims 9441 and 9450 are unclear, it appears that the Trustee for Debtors is attempting to expunge Capmark's claims in favor of the landlord's claims.

13. However, the landlords on the property that are the subject of proofs of claim 9441 and 9450 have no rights in the rents or leases.

14. Circuit City has rejected the lease regarding both properties. Further, the property that is the subject of proof of claim 9441 was foreclosed on by Wells Fargo.

15. The Trustee was assigned the relevant leases and rents for the properties that are the subject of proof of claims 9441 and 9450.

16. Section 1.A. of the Assignment for proof of claim 9450 provides that:

"Assignee hereby grants to Assignor a revocable license to exercise any and all rights of landlord under the Lease with respect to the Mortgaged Property (including those set forth in subparagraphs (b) (c) and (d) of paragraph 1 above) in order to enable Assignor to take all actions necessary for the proper management and operation of the Mortgaged Property except for (i) the right to make claim for, receive, collect and receipt for any Rents, insurance proceeds, condemnation awards, and any other sums payable or receivable under the Lease or pursuant thereto, whether denominated as rent, other expenses, other payments or as the purchase price of the Mortgaged Property or any portion thereof or otherwise, or any proceeds from any of the above, ii) the right to appear in any proceeding, claim, suit, or action in connection with the rejection of the Lease, or the right to file or prosecute any claim for damages arising from the rejection of the Lease under the Bankruptcy Code, without having first obtained Assignee's prior written consent to do any of the foregoing.

(See Exhibit A).

17. Since the leases and rents for the properties that are the subject of proof of claim 9441 and 9450 were assigned to Trustee, it is improper for the Trustee for Debtors to deal with any landlords regarding the properties that are the subject of proof of claims 9441 and 9450.

Dated: April 6, 2011

                                                          BRYAN CAVE LLP

                                                          / s / P.J. Meitl
                                                          P.J. Meitl (VA Bar No. 73215)
                                                          1155 F Street, NW, Suite 700
                                                          Washington, DC 20004
                                                          (202) 508-6043 (phone)
                                                          (202) 220-7343 (facsimile)
                                                          pj.meitl@bryancave.com

                                                          Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

                                                       */ s / P.J. Meitl*
P.J. Meitl (VA Bar No. 73215)
1155 F Street, NW, Suite 700
Washington, DC 20004
(202) 508-6043 (phone)
(202) 220-7343 (facsimile)
pj.meitl@bryancave.com

Attorney for Capmark, Inc.

6135184.1PGDocs

Loan #: 99-9000007

RECORDER OF DEEDS
ALLEGHENY COUNTY, PA
JAN 6  3 45 PM '97

# BOND-CIRCUIT VI DELAWARE BUSINESS TRUST
as Assignor

to

# LEGG MASON REAL ESTATE SERVICES, INC.
as Assignee

## ASSIGNMENT OF LEASE AND RENTS

Dated as of December 27, 1996

PREPARED BY AND UPON RECORDATION RETURN TO:
Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn: Vaughan K. Weikel, Esq.
CTIC #96-1179 JWH

VKW089-6.ALR
December 22, 1996

ALR VI Monroeville, PA

DB 0 9 8 6 1 PG 2 6 9


EXHIBIT A

ASSIGNMENT OF LEASE AND RENTS (herein, together with all modifications, supplements and amendments hereto, called this "__Assignment__"), dated as of December 27, 1996 made by BOND-CIRCUIT VI DELAWARE BUSINESS TRUST, a Delaware business trust, having an address for notice at c/o Bond-Circuit L.P., 2901 Butterfield Road, Oak Brook, Illinois 60521 ("__Assignor__") to LEGG MASON REAL ESTATE SERVICES, INC., a Pennsylvania corporation maintaining an office at Mellon Bank Center, 1735 Market Street, 12th Floor, Philadelphia, Pennsylvania 19103 ("__Assignee__").

### WITNESSETH:

WHEREAS, Assignor and Circuit City Stores, Inc. ("__Lessee__") are parties to that certain Lease, dated as of December 30, 1996 (herein, as it may from time to time be modified, supplemented or amended, is called the "__Lease__") covering the lands and premises more particularly described in Schedule A and all buildings and other improvements now or hereafter located thereon (collectively, the "__Premises__"); and

WHEREAS, simultaneously with the execution and delivery of this Assignment, Assignee is making a mortgage loan to Assignor in the principal amount of $9,763,251.54 (the "__Loan__") as evidenced by a Mortgage Note dated as of the date hereof by Assignor to Assignee (the "__Note__") and secured by a Mortgage, of even date herewith by Assignor to Assignee, covering the Premises (the "__Mortgage__"); and

WHEREAS, Assignor has agreed to execute and deliver this Assignment for the purpose of securing the following (collectively, the "__Obligations__"): (i) the payment of the principal of, interest on, premium (if any) and all other amounts payable in respect of the Note and the Mortgage and (ii) the performance of the covenants and agreements contained herein and in the Note and the Mortgage;

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Assignor, as security for the Obligations, has absolutely assigned, transferred, conveyed and set over, and by these presents does hereby presently, unconditionally and irrevocably assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of Assignor, as the lessor under the Lease, including, without limitation, the immediate and continuing right:

(a) to make claim for, receive and collect (and to apply the same to the payment of the Obligations) all rents (including all basic rent and additional rent), income, revenues, issues, profits, insurance proceeds, condemnation proceeds, moneys, security deposits, and damages payable or receivable under the Lease or pursuant to any of the provisions thereof (such rents, income, revenues, issues, profits, proceeds, moneys, security deposits or damages, collectively, the "Rents");

(b) to accept any offer regarding any condemnation proceeds or insurance proceeds payable in connection with a loss or destruction thereof;

(c) to make all waivers and agreements of any kind and make any appointments of appraisers or other determinations of any kind; and

(d) to give all notices, consents, approvals, releases and other instruments.

1.A. Assignee hereby grants to Assignor a revocable license to exercise any and all rights of landlord under the Lease with respect to the Mortgaged Property (including those set forth in subparagraphs (b) (c) and (d) of paragraph 1 above) in order to enable Assignor to take all actions necessary for the proper management and operation of the Mortgaged Property except for (i) the right to make claim for, receive, collect and receipt for any Rents, insurance proceeds, condemnation awards, and any other sums payable or receivable under the Lease or pursuant thereto, whether denominated as rent, other expenses, other payments or as the purchase price of the Mortgaged Property or any portion thereof or otherwise, or any proceeds from any of the above, (ii) the right to take any action upon the happening of a default under the Lease, including, without limitation, the commencement, conduct and consummation of proceedings at law or in equity, or (iii) the right to appear in any proceeding, claim, suit or action in connection with the rejection of the Lease, or the right to file or prosecute any claim for damages arising from the rejection of the Lease under the Bankruptcy Code, without having first obtained Assignee's prior written consent to do any of the foregoing. Notwithstanding anything herein to the contrary, (i) in no event shall Assignor be permitted to amend or modify the terms of the Lease without the prior written consent of Assignee, (ii) in no event shall Assignor, without the prior written consent of Assignee, in the exercise of any rights under the Lease or otherwise, take any action in connection with the management and operation of the property which would (a) have a material adverse effect on the rights and benefits of the landlord under the Lease, (b) in any way affect the Rents payable, or any other amount payable, or the term under, the Lease, or (c) in any way reduce the obligations of Tenant under the Lease, and (iii) in no event shall Assignor be permitted to take any action which, under any provision of the Lease, the Mortgage or any Other Security Documents, requires the consent, approval or joinder by Assignee, without first obtaining the consent, approval or joinder of Assignee required by such provision. Upon or at any time after the occurrence of an Event of Default (as defined in the Mortgage), the license granted to Assignor herein may be revoked by Assignee.

2. The rights provided the Assignee by this Assignment of Lease and Rents are primary and not secondary and are of equal parity to and arise and exist separately and independently of the Assignee's rights as mortgagee under the Mortgage. The assignment made

hereby is neither collateral nor for additional security. This Assignment and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the Lease, nor shall any of the obligations contained in the Lease be imposed upon Assignee. Upon the payment of the Obligations, this Assignment and all rights herein assigned to Assignee shall cease and terminate and all estate, right, title and interest of Assignor in and to the Lease shall revert to Assignor, and Assignee shall, at the request and at the expense of Assignor, deliver to Assignor an instrument in recordable form canceling this Assignment and reassigning the Lease without recourse, representation or warranty, to Assignor.

       3.     Assignor hereby presently, unconditionally and irrevocably designates Assignee to receive, and directs Lessee to pay to Assignee, all payments, payable or receivable under the Lease (including, without limitation, all payments of basic rent and additional rent, and other sums payable to the lessor under the Lease) and no such payment by Lessee under the Lease shall be effective to discharge the obligation of Lessee under the Lease to make such payment unless made to Assignee in accordance with such designation and direction. All such payments shall be applied as provided in the Mortgage. Assignor hereby designates Assignee to receive duplicate original copies of all notices, undertakings, demands, statements, offers, documents and other instruments and communications which Lessee is or may be required or permitted to give, make, deliver to or serve upon Assignor under the Lease. Assignor shall direct Lessee to deliver to Assignee, at its address set forth below or at such other address as Assignee shall designate, duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications and no delivery thereof by Lessee shall be of any force or effect unless made to Assignee and Assignor.

       4.     Assignor represents and warrants to Assignee that (a) the Lease is in full force and effect and no default by Assignor, and to Assignor's knowledge no default by Tenant, exists thereunder; (b) Assignor is the sole owner of the entire lessor's interest in the Lease; (c) Assignor has delivered to Assignee a true, correct and complete copy of the Lease as amended to the date hereof; (d) Assignor has full power and authority to execute and deliver this Assignment; (e) Assignor has not executed any other assignment of the subject matter of this Assignment, except in connection with construction financing repaid with proceeds of the Loan; (f) none of the Rents reserved in the Lease have been assigned or otherwise pledged or hypothecated; (g) none of the Rents have been collected for more than one (1) month in advance; and (h) to Assignor's knowledge there exist no offsets or defenses to the payment of any portion of the Rents.

       5.     Assignor shall not take any action as the lessor under the Lease or otherwise which is inconsistent with this Assignment, or make any other assignment, designation or direction inconsistent therewith, and any assignment, designation or direction inconsistent therewith shall be void. Assignor shall, from time to time upon the request of Assignee, execute all instruments of further assurance and all such supplemental instruments with respect to the transactions contemplated hereby as Assignee may specify.

       6.     Assignor further agrees with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything to impair the value of the Lease as security for the Obligations; (b) shall promptly send

copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Lease upon the part of the Lessee thereunder to be observed or performed, short of termination thereof; (d) shall not execute any other assignment of lessor's interest in the Lease (except as part of a mortgage expressly permitted pursuant to paragraph 9(g) of the Mortgage and subject to all terms, conditions and restrictions applicable to such a mortgage); (e) shall not alter, modify or change the terms of the Lease without the prior consent of Assignee, or cancel or terminate the Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or termination or diminution of the obligations of Lessee thereunder; (f) shall not alter, modify or change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without the prior consent of Assignee; and (g) shall not consent to any assignment of or subletting under the Lease not in accordance with the Lease terms, without the prior consent of Assignee.

7. Upon or at any time after an Event of Default (as defined in the Mortgage), Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent or servicer, with or without bringing any action or proceeding, or by a receiver appointed by a court, enforce its interest in the Lease and Rents and take possession of the Mortgaged Property (as defined in the Mortgage) and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Mortgaged Property; and (b) the Debt, together with all costs and attorneys' fees. For purposes of this paragraph, Assignor grants to Assignee and the designee of Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Mortgaged Property. The exercise by Assignee of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Mortgage, the Lease, this Assignment or the Other Security Documents (as defined in the Mortgage).

8. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Mortgaged Property after an Event of Default or from any other act or omission of Assignee in managing the Mortgaged Property after default unless such loss is

VKW00061.3
December 23, 1996 (1)

4

DB0986 PG273

caused by the willful misconduct or gross negligence of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Mortgage and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby, the Note, the Mortgage and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgaged Property by the Lessee or any other parties, or for any dangerous or defective condition of the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

9. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

10. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

11. Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

12. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note

VKW00061.3
December 23, 1996 (1)

5

and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage and all other sums due pursuant to the Note, the Mortgage, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

13. The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Mortgage, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

14. [Reserved]

15. If any term or provision of this Assignment or any application hereof shall be invalid or unenforceable, the remainder of this Assignment and any other application of such term or provision shall not be affected thereby.

16. Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Assignment, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

To Assignee:

At its address shown on
the first page of this Assignment

VKW00061.3
December 23, 1996 (1)

6

DB 0 9 8 6 1 PG 2 7 5

with a copy concurrently to:

Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn: Vaughan K. Weikel, Esquire

To Assignor:

At its address shown on
the first page of this Assignment

with a copy concurrently to:

Bond-Circuit L.P.
2901 Butterfield Road
Oak Brook, Illinois 60521
Attn: Joseph P. Cosenza

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, or (iii) if sent by certified mail, three (3) days after such notice has been sent by Assignor or Assignee.

17. This Assignment cannot be modified, changed or discharged except by an agreement in writing, duly acknowledged in form for recording, signed by the party against whom enforcement of such modification, change or discharge is sought.

18. This Assignment shall bind and inure to the benefit of the parties hereto and their respective successors and assigns and shall run with the Premises.

19. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

20. This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

21. IT IS EXPRESSLY UNDERSTOOD AND AGREED BY ASSIGNOR AND ASSIGNEE THAT (A) THIS INSTRUMENT IS EXECUTED AND DELIVERED BY WILMINGTON TRUST COMPANY, NOT INDIVIDUALLY OR PERSONALLY BUT SOLELY AS TRUSTEE OF ASSIGNOR, A DELAWARE BUSINESS TRUST (THE "TRUST"), IN THE EXERCISE OF THE POWER AND AUTHORITY CONFERRED AND VESTED IN IT; (B) EACH OF THE REPRESENTATIONS, UNDERTAKINGS AND AGREEMENTS HEREIN MADE ON THE PART OF THE TRUST IS MADE AND INTENDED NOT AS PERSONAL REPRESENTATIONS, UNDERTAKINGS AND AGREEMENTS BY WILMINGTON TRUST COMPANY, INDIVIDUALLY OR PERSONALLY, TO PERFORM ANY COVENANT, EITHER EXPRESSED OR IMPLIED, CONTAINED HEREIN, ALL SUCH LIABILITY, IF ANY, BEING EXPRESSLY WAIVED BY ASSIGNEE AND BY ANY OTHER PERSON CLAIMING BY, THROUGH OR UNDER THIS INSTRUMENT; AND (C) UNDER NO CIRCUMSTANCES SHALL WILMINGTON TRUST COMPANY BE PERSONALLY LIABLE FOR THE PAYMENT OF ANY INDEBTEDNESS OR EXPENSES OF THE TRUST OR BE LIABLE FOR THE BREACH OR FAILURE OF ANY OBLIGATION, REPRESENTATION, WARRANTY OR COVENANT MADE OR UNDERTAKEN BY THE TRUST UNDER THIS INSTRUMENT OR OTHER RELATED DOCUMENTS.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed and delivered under seal as of the date first above written.

ASSIGNOR:

BOND-CIRCUIT VI DELAWARE BUSINESS TRUST, a Delaware business trust

By: Wilmington Trust Company, not in its individual capacity, but solely as trustee

By: _____ (SEAL)
Name: JOHN M. BEESON, JR.
Title: Vice President

ATTEST:

By: _____
Name: Thomas P Laskaris
Title: V.P.

Case 08-35653-KRH    Doc 10501    Filed 04/07/11    Entered 04/11/11 12:15:52    Desc
Main Document    Page 16 of 20

## ACKNOWLEDGMENTS

State of Maryland
City of Baltimore

On this, the 27th day of December, 1996, before me _Marybeth Metz_ the undersigned officer, personally appeared _John M. Beeson, Jr._ who acknowledged himself to be the _Vice President_ of Wilmington Trust Company, a corporation, and that he as such _Vice President_, being authorized to do so, executed the foregoing instrument in the capacity therein stated by signing the name of the corporation by himself as _Vice President_ for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Marybeth Metz_
_Notary Public_
Title of Officer

MARYBETH METZ
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 21, 1998

VKW089-6.ALR
December 22, 1996                          4                          ALR VI Monroeville, PA
DB 0 9 8 6 1 PG 2 7 9

Wilkins Township, Pennsylvania

SCHEDULE 

ALL that certain parcel of land situate in the Township of Wilkins, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described as follows:

BEGINNING at a point on the northerly right of way line of Legislative Route 187 (William Penn Highway) at the dividing line of lands of Repulio Service Stations, Inc. and the land herein described; thence along lands of Repulio Service Stations, Inc. N 02 degrees 42 minutes 03 seconds W 313.78 feet to a point; thence still along same in a westerly direction by a curve to the right having a radius of 2546.09 feet for an arc distance of 176.49 feet (chord S 71 degrees 14 minutes 02 seconds W 176.46') to a point; thence along lands of George and May Beech N 02 degrees 42 minutes 03 seconds W 246.41 feet to a point; thence along lands of the Eastmont Plan of Lots No. 4 N 02 degrees 42 minutes 03 seconds W 93.91 feet to a point; thence still along same by a curve to the right having a radius of 1187.16 feet for an arc distance of 207.16 feet (chord N 02 degrees 17 minutes 54 seconds E 206.90') to a point; thence still along same N 07 degrees 17 minutes 50 seconds E 320.94 feet to a point; thence still along same N 81 degrees 19 minutes 37 seconds E 20.35 feet to a point; thence still along same S 33 degrees 24 minutes 25 seconds E 77.01 feet to a point; thence still along same by a curve to the left having a radius of 700.00 feet for an arc distance of 128.98 feet (chord S 38 degrees 41 minutes 08 seconds E 128.80') to a point; thence still along same S 43 degrees 57 minutes 53 seconds E 206.42 feet to a point; thence still along same S 65 degrees 07 minutes 45 seconds W 133.73 feet to a point; thence still along same S 24 degrees 52 minutes 15 seconds E 294.27 feet to a point; thence still along same and lands of the Township of Wilkins N 65 degrees 07 minutes 45 seconds E 835.10 feet to a point; thence along lands of the Union Railroad S 11 degrees 56 minutes 15 seconds W 499.60 feet to a point; thence along the northerly right of way line of Legislative Route 187 (William Penn Highway) S 65 degrees 07 minuets 45 seconds W 566.72 feet to a point; thence still along same by a curve to the right having a radius of 2846.09 feet for an arc distance of 301.85 feet (chord S 68 degrees 10 minutes 03 seconds W 301.71') to a point at the place of beginning.

Containing a total area of 12.75 acres.

BEING designated as Block 542-C, Lot 250 in the Deed Registry Office of Allegheny County, Pennsylvania.

A:\LEGB-PA.WPD

DB09861 PG280

I hereby CERTIFY that this document is recorded in a Deed Volume in the Recorder's Office of Allegheny County, Pennsylvania

*Michael A. Della Vecchia*
MICHAEL A. DELLA VECCHIA
RECORDER OF DEEDS

JAN 6 9/00/2017

ASSIGNMENT OF LEASE AND RENTS

BY AND BETWEEN

BOND-CIRCUIT VI DELAWARE
BUSINESS TRUST
(Assignor)

AND

LEGG MASON REAL ESTATE
SERVICES, INC.
(Assignee)

AFTER RECORDING, PLEASE RETURN TO:
CHICAGO TITLE INSURANCE COMPANY
ATTENTION J. W. HUBER
1220 GRANT BUILDING
PITTSBURGH, PA 15219

CTIC NO. 96-1179

DB 09861 PG 281

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

## CAPMARK FINANCE, INC.'S REQUEST FOR HEARING

Capmark Finance, Inc. ("Capmark"), on behalf of Wells Fargo, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A. (f/k/a) Northwest Bank Minnesota, N.A. as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL ("Trustee"), by and through its counsel Bryan Cave LLP, hereby files its Request for Hearing on its Response to Liquidating Trust's Fifteenth Omnibus Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Late Filed Claims, And Disallowance of certain Amended Claims) (the "Response").

Capmark filed the Response on April 6, 2011. As set forth in the Response, the objection to proof of claim 9741, 9441, 9450 (the "Claims") should be denied and the Claims should be allowed in its entirety.

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a hearing on its Response for 2:00 p.m. on May 11, 2011 and grant such other and further relief as the Court deems just and proper.

Dated this 6th day of April, 2011.

        Respectfully submitted,

**BRYAN CAVE LLP**

By: P.J. Meitl (VA Bar No. 73215)
1155 F Street, NW, Suite 700
Washington, DC 20004
(202) 508-6043 (phone)
(202) 220-7343 (facsimile)
pj.meitl@bryancave.com

Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a true and correct copy of the foregoing was served through the Court's ECF system to all parties consenting to service through same, and on all parties listed on the attached service list by overnight mail.

        /s/Philip J. Meitl
        Philip J. Meitl

Case 08-35653-KRH    Doc 10501    Filed 04/07/11    Entered 04/11/11 12:15:52    Desc
Main Document    Page 20 of 20