IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

RICHMOND DIVISION
F                    F
I                    I
L   APR  7 2011      L
E                    E
D       CLERK        D
US BANKRUPTCY COURT

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

## RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S FIFTEENTH OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS, AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)

Capmark Finance, Inc. ("Capmark") on behalf of Bank of America National Association (Bank of America), by and through its counsel Bryan Cave LLP, hereby files this Response and Request for Hearing to Liquidating Trust's Fifteenth Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

1.      The Trustee for Debtors  has objected to proof of claim numbers 9721, 9704, and 9488 ( the "Claims") filed Capmark on behalf of  filed by Bank of America, National Association, successor by merger to LaSalle Bank, National Association (f/k/a LaSalle National Bank), as Trustee (the "Trustee") for the Registered Holders of GMAC Commercial Mortgage Securities, Inc. Mortgage Pass-Through Certificates, Series 1998-C2.

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

2.       Capmark filed the Claims on January 30, 2009. Proof of claim 9704 was filed to recover $968,160.44 unpaid prepetition rent plus unpaid prepetition additional rent. Proof of Claim 9721 was filed to recover $256, 520.40 plus unpaid prepetition rent plus unpaid prepetition additional rent. Proof of claim 9488 was filed to recover $256,520.40 plus unpaid prepetition rent and unpaid prepetition additional rent.

3.       Proof of claims 9721 and 9704 are both listed on Exhibit G as amended claims to be expunged.

Proof of Claim 9721

4.       With regard to proof of claim 9721, Trustee for Debtors states that the face amount of the surviving claim is $842,991.27 (general unsecured) and that the surviving claim is 12911.

5.       Although the Trustee for Debtors' objection to the claims 9721 is unclear, it appears that the Trustee for Debtors is attempting to expunge Capmark's claims in favor of the landlord's claims.

6.       However, the landlord on the property that is the subject to the proof of claim 9721 has no rights in the rents or leases.

7.       Circuit City rejected the lease regarding the property that is subject to proof of claim 9721. Further, the property has been foreclosed upon by Bank of America.

8.       The Trustee was assigned the relevant lease and rents for the property that is the subject of proof of claim 9721. (See Assignment, attached as Exhibit A).

9.       Section 31 of the Assignment, provides that: "Upon or at any time after the occurrence of a default under this Assignment or an even of Default..., the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease or Lease Guaranties, whether or not Lender enters upon or takes control of the Property. ...and for such time as Lender may deem proper and either with or without taking possession of the Property in

its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Leases and Lease Guaranties.."

10.    The assignment gives all rights to claim rents to Trustee, and thus it is improper for the Trustee for Debtors to deal with any landlords regarding the property that is the subject of proof of claim 9721.

Proof of Claim 9704

11.    With regard to proof of claim 9704, Trustee for Debtors states that the face amount of the surviving claim is $953,700.09 (general unsecured) and that the surviving claim is 11573.

12.    Although the Trustee for Debtors' objection to the claims 9704 is unclear, it appears that the Trustee for Debtors is attempting to expunge Capmark's claims in favor of landlord's claims.

13.    However, the landlord on the property that is the subject of proofs of claim 9704 has no rights in the rents or leases.

14.    Circuit City has rejected the lease regarding the property that is subject to proof of claim 9704. Further, the property has been foreclosed upon by Bank of America.

15.    The Trustee was assigned the relevant lease and rents for the property that is the subject of proof of claims 9704 (See Assignment, attached as Exhibit B).

16.    The Section 4.7 of the Assignment provides that:

Upon issuance of any deed or deed pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the Leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor. Assignor hereby irrevocable appoints Assignee and its successors and assigns as its agent and attorney in fact, after an Event of Default, to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

17.    In addition, Section 4.8 of the Assignment provides that:

"In the event any lessee under any of the Leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state, or local statute which provides for the possible termination or rejection of the Leases assigned hereby, Assignor covenants and agrees that if any of the Leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of the Assignee, in each instance, and any check in payment of damages for termination or rejection of any such Lease shall be made payable to the Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that Assignor will duly endorse to the order of Assignee any such check which is made payable to Assignor, the proceeds of which shall be applied to the indebtedness secured by this Assignment.   Assignor hereby irrevocably appoints Assignee and its successors and assigns as its attorney-in-fact, which power is coupled with an interest, after an Event of Default, to so endorse any such checks if Assignor does not do so"

18.    The assignment gives all rights to claim rents to Trustee, and thus it is improper for the Trustee for Debtors to deal with any landlords regarding the property that is the subject of proof of claim 9721.

Proof of Claim 9488

19.    Capmark filed proof of claim 9488 on January 30, 2009 in the amount of $514,620.00 plus unpaid prepetition rent and unpaid prepetition additional rent based on lease rejection damages.

20.    Trustee for Debtors has objected to proof of claim 9488 by stating that:

"Claimant is the lender to landlord and Debtors are addressing claim 9647 with landlord."

21.    The landlord on the property that is the subject to the proof of claim 9721 has no rights in the rents or leases to that property.

22.    Circuit City has rejected the lease regarding the property that is subject to proof of claim 9488. Further, the property that is the subject of proof of claim 9488 has been foreclosed upon by Bank of America.

23.     The Trustee was assigned the relevant lease and rents for the property that is the subject of proof of claims 9488. (See Assignment, attached as Exhibit C).

24.     Section 4.3 of the Assignment provides that:

"Upon or after an Event of Default, the Assignee, without in any way waiving such Event of Default, at its option, without further notice, and without regard to waste, the adequacy of the security for the Obligations secured hereby and by the Mortgage, or solvency of the Assignor, may declare all Obligations to be immediately due and payable, may revoke the license described in Section 4.2 above, and may either in person or by agent, with or without bringing any action or proceedings or by a receiver appointed by a court, take possession of the Property and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and either with or without taking possession of the Property in its own name, demand, sue for, or otherwise collect and receive, all rents income and profits of the Property not already collected by Assignee, including those past due and unpaid..."

25.     The assignment gives all rights to claim rents to Trustee, and thus it is improper for the Trustee for Debtors to deal with any landlords regarding the property that is the subject of proof of claim 9488.

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the proof of claims 9721, 9704 and 9488; (b) allow the Claims as provided in Capmark's proof of claims; and (c) grant Capmark such other and further relief as this Court deems appropriate under the circumstances.

Dated: April 6, 2011

BRYAN CAVE LLP

By:     /s/ Phillip J. Meitl_____
        Philip J. Meitl (VA Bar No. 73215)
        Bryan Cave LLP
        1155 F Street NW, Suite 700,
        Washington DC 20004
        (202) 508-6000 (phone)

        Attorney for Capmark Finance Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

*/s/ Philip J. Meitl*_____
Phillip J. Meitl

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of the *21ˢᵗ* day of May, 1998, by Grandview Center Limited Partnership, a/k/a Grand View Center, a Wisconsin Limited Partnership, having its principal place of business at 1215 Doctors Drive, Neenah, Wisconsin 54956, as assignor ("Borrower") to BELGRAVIA CAPITAL CORPORATION, a California Corporation, c/o Midland Loan Services, L.P., 210 West Tenth Street, Kansas City, Missouri 64105, Attention: Lyle Shapland, as assignee ("Lender").

### R E C I T A L S :

Borrower by its promissory note of even date herewith given to Lender is indebted to Lender in the principal sum of $2,880,000.00 in lawful money of the United States of America (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note.

Borrower desires to secure the payment of the Debt (defined below) and the performance of all of its obligations under the Note and the Other Obligations as defined in Article 2 of the Security Instrument (defined below).

### ARTICLE 1 - ASSIGNMENT

**Section** 1.1    <u>Property Assigned</u>.  Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:

(a)    <u>Leases</u>.  All existing and future leases affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit A annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (collectively, the "Property") and the right, title and interest of Borrower, its successors and assigns, therein and thereunder.

(b)    <u>Other Leases and Agreements</u>.  All other leases, subleases and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, whether made before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §§ 101 *et seq.*, as the same may be amended from time to time (the "Bankruptcy Code") together with any extension, renewal or replacement of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment.  The leases described in subsection 1.1(a) and the leases and other agreements described in this subsection 1.1(b), together with all other present and future leases and present and future agreements and any extension or renewal of the same are collectively referred to as the "Leases".

-3-



(c)   Rents.  All rents, additional rents, revenues, income, issues and profits arising from the Leases and renewals and replacements thereof and any cash or security deposited in connection therewith and together with all rents, revenues, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "Rents").

(d)   Bankruptcy Claims.  All of Borrower's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code.

(e)   Lease Guaranties.  All of Borrower's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Borrower (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(f)   Proceeds.  All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(g)   Other.  All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(h)   Entry.  The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

(i)   Power of Attorney.  Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(j)   Other Rights and Agreements.  Any and all other rights of Borrower in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Section 1.2   Consideration.  This Assignment is made in consideration of that certain loan made by Lender to Borrower evidenced by the Note and secured by that certain mortgage and security agreement, deed of trust and security agreement, deed to secure debt and security agreement or similar real estate security instrument given by Borrower to or for the benefit of Lender, dated the date hereof, in the principal sum of $2,880,000.00, covering the Property and intended to be duly recorded (the "Security Instrument").  The principal sum,

-4-

interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (defined below) are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender which wholly or partially secure or guarantee payment of the Debt are referred to herein as the "Other Security Documents".

        Section 1.3    Termination of Assignment.  Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

## ARTICLE 2 - TERMS OF ASSIGNMENT

        Section 2.1    Present Assignment and License Back.  It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Borrower a revocable license to collect and receive the Rents and other sums due under Leases and the Lease Guaranties.  Borrower shall hold the Rents and all sums received pursuant to any Lease or Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

        Section 2.2    Notice to Lessees.  Borrower hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease or Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of the Security Instrument and that a Default (defined below) exists, and to continue so to do until otherwise notified by Lender.

        Section 2.3    Incorporation by Reference.  All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - REMEDIES

        Section 3.1    Remedies of Lender.  Upon or at any time after the occurrence of a default under this Assignment or an Event of Default (as defined in the Security Instrument) (a "Default"), the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease or Lease Guaranties, whether or not Lender enters upon or takes control of the Property.  In addition, Lender may, at its option, without waiving such Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts

C2/WL981350.030/(ASSIGN)/GH/F2872-037/05-15-98/tem

relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Leases and Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender and may apply the Rents and sums received pursuant to any Lease or Lease Guaranties to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of a Default, Lender, at its option, may (1) complete any construction on the Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Borrower, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease or Lease Guaranties, (3) either require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (4) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

Section 3.2    Other Remedies.  Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

Section 3.3    Other Security.  Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply

-6-

any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

Section 3.4    Non-Waiver.  The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and sums due under any Lease or the Lease Guaranties and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents.  The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents.  Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment.  The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

Section 3.5    Bankruptcy.

(a)    Upon or at any time after the occurrence of a Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)    If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease.  Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease.  If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

-7-

## ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

Section 4.1    <u>No Liability of Lender</u>.  This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after a Default or from any other act or omission of Lender in managing the Property after a Default unless such loss is caused by the willful misconduct and bad faith of Lender.  Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties.  Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the Other Security Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the Other Security Documents immediately due and payable.  This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2    <u>No Mortgagee in Possession</u>.  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender.  In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

Section 4.3    <u>Further Assurances</u>.  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

-8-

## ARTICLE 5 - MISCELLANEOUS PROVISIONS

Section 5.1    Conflict of Terms. In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

Section 5.2    No Oral Change. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 5.3    Certain Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower " shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include  any portion of the Property and any interest therein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 5.4    Authority. Borrower represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

Section 5.5    Inapplicable Provisions. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 5.6    Duplicate Originals; Counterparts. This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

C2/WL981350.030/(ASSIGN)/GH/F2872-037/05-15-98/tcm

Section 5.7    Choice of Law.  This Assignment shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located.

Section 5.8    Notices.  All notices required or permitted hereunder shall be given as provided in the Security Instrument.

Section 5.9    **WAIVER OF TRIAL BY JURY.  BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.**

Section 5.10    Liability.  If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 5.11    Headings, etc.  The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 5.12    Number and Gender.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 5.13    Sole Discretion of Lender.  Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

Section 5.14    Costs and Expenses of Borrower.  Wherever pursuant to this Assignment it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement of the expenses for in-house staff or otherwise.

THIS ASSIGNMENT, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the Security Instrument and shall be binding upon Borrower, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

C2/WL981350.030/(ASSIGN)/GH/F2872-037/05-15-98/tem

IN WITNESS WHEREOF, Borrower has executed this instrument as of the day and year first above written.

BORROWER:

Grand View Center, a Wisconsin Limited
Partnership
By Grand View Center, Inc., a Wisconsin
Corporation
Its General Partner

By: _____
Its: _____

C2/WL981350.030/(ASSIGN)/GH/F2872-037/05-15-98/tem

STATE OF WISCONSIN            )
                             ) ss.
COUNTY OF Winnebego          )


    This instrument was acknowledged before me this 16 day of May , 1998, by _Laurence Langolv_ as _Vice President_ of Grand View Center, Inc., a Wisconsin Corporation as general partner of Grand View Center, a Wisconsin Limited Partnership.

                      _Astra R. Miller_ (SEAL)
                      Print Name: ASTRA K. MILLER
                      Notary Public, Winnebego County
                      State of Wisconsin
                      My commission: expires 1/14/2007.

-12-

## EXHIBIT A

### DESCRIPTION OF LAND

Parcel I:

Lot Three (3), of Certified Survey Map No. 1817, filed in the office of the Register of Deeds for Outagamie County, Wisconsin in Volume 10 of Certified Survey Maps on Page 1817, as Document No. 1107495, being part of the Northeast ¼ of Section 30, Township 21 North, Range 17 East of the 4th. P.M., Town of Grand Chute, Outagamie County, Wisconsin.

Tax Key No. 10-1-1242-07-0

Parcel II:

Easement for the benefit of Parcel I created by Declaration of Cross Easement by Grand View Center, a Wisconsin Limited Partnership, dated May 11, 1993 and recorded on May 18, 1993, in Jacket 13967, Image 16, as Document No. 1078388

**1273132**

Document Number                              Assignment of Leases and Rents

**OUTAGAMIE COUNTY**
**RECEIVED FOR RECORD**

**MAY 26 1998**

AT |:32 O'CLOCK A.M. P.M.
GRACE HERB
REGISTER OF DEEDS

Recording Area

Name and Return Address

Gerben Hoeksma, Esq.
Allen, Matkins, Leck, Gamble & Mallory LL
1999 Avenue Of The Stars, Suite 1800
Los Angeles, California  90067-6050

Personal Identification Number (PIN)

-1-

C2/WL981350.030/(ASSIGN)GH/F2872-037/05-15-98/tem

1067/1/53

9 8 0 0 5 5 4 6       LIBER 3 4 2 4 PAGE 8 6 2

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of November 27, 1996 by WEC 96D FLINT INVESTMENT TRUST, a Delaware business trust, having a principal place of business at 6750 Lyndon B. Johnson Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter called the "Assignor" and the expression "Assignor" shall include, wherever the context permits, its successors and assigns) to FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City - Staubach Pass Through Trust, Series 1996-A, having an address at 79 South Main Street, Salt Lake City, Utah 84111, Attention: Corporate Trust Services (hereinafter called the "Assignee").

This Assignment is granted pursuant to the provisions of a Loan Agreement dated as of even date herewith between Assignor, as borrower, and Assignee, as lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement.

### WITNESSETH THAT:

1.    **Grant of Assignment.** The Assignor, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, hereby sells, grants, transfers, conveys, sets over and assigns to the Assignee, Assignor's right, title and interest in, to and under all leases, rental agreements, licenses and occupancy agreements (excluding Permitted Subleases, defined below) (the "Leases"), including but not limited to that certain Lease (the "Principal Lease") dated of even date herewith between Assignor, as landlord, and Circuit City Stores, Inc., ("Tenant") as tenant, a memorandum or notice of which is or will be recorded in the appropriate records in the county in which the Property is located, together with all renewals, extensions, replacements, amendments and modifications thereof now or hereafter in existence, with respect to the property described on Exhibit "A" annexed hereto ("Property"); Assignor is the owner of the Property. The term "Leases" (including the Principal Lease) shall not include any Permitted Sublease (defined below) and the term "tenant" shall not include any tenant under a Permitted Sublease, and the term "Rents" (defined below) shall not include sums payable to Tenant pursuant to Permitted Subleases except to the extent that Borrower is a party to, or has rights to proceeds under, any such sublease or occupancy arrangement. For purposes of this Assignment, "Permitted Subleases" shall mean the subleases and subtenancies entered into by Tenant in accordance with Section 17 of the Principal Lease. Assignor agrees that all tenants under the Leases are hereby expressly and irrevocably authorized and directed to pay any and all Rents accruing from and after the date hereof directly to Assignee. In the event the Assignor receives any Rents directly from its tenant(s) from and after the date hereof in violation of the terms of this Agreement or the Loan Agreement, Assignor shall immediately remit such Rents to Assignee to be applied in accordance with the requirements of the Loan Agreement.

TOGETHER with all rents, earnings, issues, income and profits arising from said Leases and any renewals, extensions, replacements, amendments or modifications thereof and together with all rents, earnings, issues, income and profits payable to Assignor for the use and occupation of all or any portion of the Property and from all other leases or occupancy agreements with respect to the Property or any portion thereof which may have heretofore been executed by or for the benefit of Assignor or which may be executed by or for the benefit of Assignor in the future during the term of this Assignment ("Rents");

TOGETHER with all of Assignor's interest in all guaranties of Leases;

TOGETHER with all of Assignor's right, title and interest in, to and under any and all rights, powers, privileges, options and other benefits of Assignor as lessor or grantor of an option under the Leases, including, but not by way of limitation:

(1)    The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, refunds, rebates, surrender payments, cancellation payments, damages, monies and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

(2)    The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

ASSIGNMENT OF LEASES AND RENTS - Page 1       78570



GRECO TITLE

25

LIBER 3424 PAGE 863

(3)    The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to a Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Assignor; notwithstanding the foregoing, Assignee will not accept any offer made by Tenant pursuant to Section 12(b) of the Principal Lease sooner than five (5) days prior to the last day on which Assignor may accept or reject such offer under the Principal Lease, and Assignee agrees to join with Assignor in rejecting such offer if Assignor notifies Assignee prior to the date specified above of its intention to reject such offer and deposits with Assignee an amount equal to the full amount of the Obligations then outstanding or reasonably expected to be outstanding at the time of termination of the Principal Lease, to be applied to repay the full amount of the Obligations at the time of termination of the Principal Lease.

(4)    The right to make all waivers and agreements, to give and receive all notices, consents and releases, and to take such action upon the happening of a default under any Lease as Assignor might have taken, including the right to commence, conduct and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

(5)    To do any and all other things whatsoever which the Assignor is or may become entitled to do under or by virtue of the Leases or any of them.

Together with full power and authority, in the name of Assignor or otherwise, to demand, receive, enforce, collect or receipt for any or all of the foregoing, to endorse or execute any checks or other instruments or orders, to file any claims and to take any action which Assignee may deem necessary or advisable in connection therewith, Assignor hereby irrevocably constituting Assignee the attorney-in-fact of Assignor for such purposes, which appointment is coupled with an interest and is irrevocable. No exercise by Assignee of any rights of Assignor shall release Assignor from its obligations under the Lease.

This Assignment is a perfected present, absolute, direct and unconditional assignment and transfer of all Assignor's right, title and interest in and to the Leases and the Rents made in consideration of the Loan by Assignee to Assignor and as additional security for the repayment of the Obligations (as hereinafter defined).

2.    **Obligations Secured.** The Term "Obligations" shall have the meaning set forth in the Loan Agreement and shall include, without limitation, the following matters:

(1)    The payment and performance of all obligations set forth in that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, increases, consolidations, replacements, modifications and amendments thereof, in the original amount of $6,719,978.14 and a Maturity Date of December 1, 2018, given by the Assignor, as maker, to the order of the Assignee;

(2)    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by the Assignor under and pursuant to the Loan Agreement and each of the other Loan Documents;

(3)    The payment of all costs, expenses, legal fees and liabilities incurred by Assignee in connection with the enforcement of any of Assignee's rights or remedies under this Assignment and the other Loan Documents;

(4)    The payment, performance, discharge and satisfaction of every obligation of the Assignor to Assignee under and pursuant to the Mortgage Security Agreement and Fixture Financing Statement (referred to herein as the "Mortgage") of even date given to Assignee to be recorded and filed herewith;

(5)    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and obligation of the Assignor to the Assignee under this Assignment; and

(6)    The payment, performance, discharge and satisfaction of all other liabilities and obligations of the Assignor to the Assignee, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each such liability and obligation of the Assignor under any of the Loan Documents and each

ASSIGNMENT OF LEASES AND RENTS - Page 2

LIBER 3424 PAGE 864

amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

3.     **Warranties and Representations.** The Assignor WARRANTS AND REPRESENTS that it is and shall be in the future the sole owner of the entire lessor's interest in the Leases and that no rent reserved in said Leases has been or will be in the future otherwise assigned or anticipated (except as may be provided in the Loan Agreement).

The Assignor further WARRANTS AND REPRESENTS that as of the date hereof: (a) the Principal Lease and the Permitted Subleases are the only Leases or occupancy agreements affecting any or all of the Property; (b) the Principal Lease is in full force and effect and a true and complete copy thereof together with all amendments and modifications have been previously delivered to the Assignee; (c) no default exists on the part of the Tenant or the landlord in the performance of any of the terms, covenants, provisions or agreements in the Principal Lease; (d) Assignor knows of no condition which with the giving of notice or the passage of time or both would constitute a default on the part of the Tenant or the landlord under the Principal Lease; (e) no security deposit or advance rental payment has been made by Tenant under the Principal Lease; and (f) Assignor has good right and authority to make this Assignment.

4.     **Covenants.** The Assignor covenants with the Assignee as follows:

4.1     **Perform Lease Obligations.** Assignor shall observe and perform all the material obligations imposed upon the lessor under every Lease and not do or permit to be done anything to impair the security thereof; not collect any of the rent, income and profits arising or accruing under said Leases or from the Property in violation of the Lease or Assignee's rights hereunder or under the Loan Agreement or other Loan Documents; not execute any other assignment of lessor's interest in said Leases or assignment of Rents arising or accruing from said Leases or from the Property; not alter, modify, amend or change the terms of said Leases or cancel or terminate the same or accept a surrender or assignment or subletting thereof without the prior written consent of the Assignee in each instance; not subordinate any such Lease to any mortgage or other encumbrance, or permit, consent or agree to such subordination, without Assignee's prior written consent in each instance; not convey or transfer or suffer or permit a conveyance or transfer of the premises demised by any such Lease or of any interest therein so as to effect directly or indirectly a merger of the estates and rights, or a termination or diminution of the obligations, of any lessee thereunder; not alter, modify or change the terms of any guaranty of any Lease or cancel or terminate any such guaranty without the prior written consent of Assignee in each instance; not consent to any assignment of or subleasing under any Lease (except for Permitted Subleases pursuant to Section 17 of the Principal Lease), without the prior written consent of the Assignee in each instance; not enter into any future Leases without the Assignee's prior written consent in each instance (provided that nothing herein shall be deemed to prohibit the valid exercise by Tenant of any options it may have under the Principal Lease as approved by Assignee as of the date hereof); upon the execution of any new Leases, assign and transfer to the Assignee any and all subsequent Leases upon all or any part of the Property and to execute and deliver at the request of the Assignee all such further assurances and assignments in the Property as the Assignee shall from time to time require to evidence such assignments or otherwise; promptly (but in any event within five (5) business days from Assignor's receipt or sending thereof) deliver to Assignee a copy of any notice from any tenant and any notice from Assignor to any tenant alleging a default under any Lease; promptly (but in any event within five (5) business days from the time Assignor has actual knowledge thereof) notify Assignee if Assignor believes it or any tenant will be unable to fulfill its obligations under any Lease.

4.2     **License to Operate.** Assignee shall have the right to enter the Property for the purpose of enforcing its interest in the Leases and the Rents, and any income and profits arising therefrom, this Assignment constituting a present, absolute assignment thereof. Assignee grants to Assignor a revocable license to operate and manage the Property; provided, however, Assignee may revoke such license upon and during the continuation of an Event of Default (as such term is defined in the Loan Agreement); provided, further, that such license shall be deemed automatically revoked upon the occurrence of any Bankruptcy Event as that term is defined in the Loan Agreement.

4.3     **After Default; Remedies.** Upon or at any time after an Event of Default, the Assignee, without in any way waiving such Event of Default, at its option, without further notice, and without regard to waste, the adequacy of the security for the Obligations secured hereby and by the Mortgage, or solvency of the Assignor, may declare all Obligations to be immediately due and payable, may revoke the license described in Section 4.2 above, and may, either in person or by agent, with or without bringing any action or proceedings, or by a receiver appointed by a

ASSIGNMENT OF LEASES AND RENTS - Page 3

LIBER 3424 PAGE 865

court, take possession of the Property and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and, either with or without taking possession of the Property in its own name, demand, sue for, or otherwise collect and receive, all Rents, income and profits of the Property not already collected by Assignee, including those past due and unpaid, with full power (to the extent permitted by the Principal Lease) to make from time to time all improvements, alterations, renovations, repairs and replacements thereto or thereof as may seem proper to the Assignee, and to apply such Rents, income and profits in the following priority:

(a)     to payment of all reasonable fees of any receiver appointed hereunder,

(b)     to application of tenant's security deposits as required by applicable law in the state in which the Property are located (the "State"),

(c)     to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due,

(d)     to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due,

(e)     to payment of all expenses for normal maintenance of the Property including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees as the Assignee may deem necessary or desirable, and all expenses of operating and maintaining the Property, including, without being limited thereto, the cost of all improvements, alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and

(f)     any Rents remaining after application of the above items shall be applied to all sums which the Assignor is responsible to pay under the Mortgage, and the principal sum, interest and indebtedness secured hereby and by the Mortgage, and all other Obligations together with all reasonable costs and reasonable attorneys' fees.

The exercise by the Assignee of the right granted it in this Assignment and the collection of the Rents, income and profits and the application thereof as herein provided shall not be considered a waiver by the Assignee of any default under the other Loan Documents or under said Leases, or this Assignment.

Without limiting the foregoing, the right and license granted to Assignor above to operate and manage the Property shall, at Assignee's option, be revoked and terminated upon the occurrence of an Event of Default. During the continuance of an Event of Default, Assignor shall have no further right to function as lessor under any of the Leases.

In any and all circumstances, the parties hereby acknowledge and explicitly express their intent that the Assignee shall have a perfected security interest in the Leases and Rents upon recordation of this Assignment and notification to any of the tenants under the Leases to pay rent directly to the Assignee.

The right of Assignee to collect and receive the rents and the proceeds of any right assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Assignee shall, to the extent not prohibited by law also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

4.4     Continuing Effect; Direction to Lessees.  Upon payment in full to the Assignee of the principal sum, interest, and other Obligations, this Assignment shall become and be void and of no effect, but the affidavit of any officer, agent, or attorney of the Assignee made in good faith showing any part of said principal, interest, or other Obligations to remain unpaid or unperformed shall be and constitute prima facie evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon. The discharge of record of the Mortgage shall constitute a discharge of this Assignment and a release of the Assignee's interest in the Leases and Rents assigned hereby and the reassignment thereof (without recourse to the Assignee) to the Assignor and

ASSIGNMENT OF LEASES AND RENTS - Page 4

MASTER
LIBER 3424 PAGE 866

all those claiming of record by, through or under the Assignor. The Assignor hereby authorizes and directs the lessees named in said Leases or any other or future lessees or occupants of the Property (except under Permitted Subleases), to pay over to the Assignee all Rents, income and profits arising or accruing under said Leases or from the Property from and after the date hereof and to continue so to do until otherwise notified by the Assignee, or until discharge of this Assignment, whichever is earlier. Subject to the applicable provisions of the Principal Lease, the Assignor further directs such lessees under Leases to pay over to the Assignee any amounts which would be owed by such lessees under Leases to Assignor as a result of a casualty or condemnation or otherwise.

4.5    No Waiver; Concurrent Rights.  Nothing contained in this Assignment and no act done or omitted by the Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Assignee of its rights and remedies hereunder or any one or more of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms of any of the other Loan Documents. The right of the Assignee to collect said principal sums, interest and indebtedness and to enforce any other security therefor held by it may be exercised by the Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Assignee shall be entitled to all of the rights and remedies accorded a mortgagee by the statutes of the State of Michigan in effect from time to time.

4.6    No Liability.  Nothing herein contained shall be construed as constituting Assignee a mortgagee-in-possession in the absence of the taking of actual possession of the Property. In the exercise of powers herein granted to Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor, except for Assignee's gross negligence or willful misconduct. Without limiting the generality of the foregoing, the Assignee shall not be liable for any loss sustained by the Assignor resulting from any act or omission of the Assignee in managing the Property after a default unless such loss is caused by the gross negligence or willful misconduct of the Assignee. The Assignee shall not be obligated to perform or discharge, nor does the Assignee hereby undertake to perform or discharge, any obligation, duty or liability under said Leases, or under or by reason of this Assignment, and the Assignor shall, and does hereby agree to, indemnify the Assignee for, and to hold the Assignee harmless from, any and all liability, loss or damage which is incurred under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said Leases; provided, however, that Assignor shall not indemnify and hold Assignee harmless from liability, loss or damage arising solely from the gross negligence or willful misconduct of the Assignee and incurred either (i) after Assignee has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Assignee was actually in possession of the Property at the time such action arose, (ii) after Assignee has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Assignee has acquired the Property by deed-in-lieu of foreclosure. Should the Assignee incur any such liability under said Leases or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and by the Mortgage and by the other collateral for the Obligations and the Assignor shall reimburse the Assignee therefor immediately upon demand and upon the failure of the Assignor so to do, the Assignee may, at its option, declare all sums secured hereby immediately due and payable. It is further understood that this Assignment shall not operate to place responsibility for the control, care, management or repair of said Property upon the Assignee, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make the Assignee responsible or liable for any waste committed on the Property by tenants or any other parties, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of said Property resulting in loss or injury or death to any tenant, licensee, employee or stranger, except as provided above.

4.7    Effect of Foreclosure.  Upon the issuance of any deed or deed pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the Leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its agent and attorney in fact, after an Event of Default, to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

4.8    Upon Termination of Lease in Bankruptcy.  In the event any lessee under any of the Leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other

ASSIGNMENT OF LEASES AND RENTS - Page 5

LIBER 3424 PAGE 867

federal, state or local statute which provides for the possible termination or rejection of the Leases assigned hereby, Assignor covenants and agrees that if any of the Leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, in each instance, and any check in payment of damages for termination or rejection of any such Lease shall be made payable to the Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that Assignor will duly endorse to the order of Assignee any such check which is made payable to Assignor, the proceeds of which shall be applied to the indebtedness secured by this Assignment. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its attorney-in-fact, which power is coupled with an interest, after an Event of Default, to so endorse any such checks if Assignor does not do so.

**5.     General Provisions.**

**5.1     Conflicts.** This Assignment is intended to be supplementary to, and not in substitution for, or in derogation of, any assignment of Rents to secure the Obligations contained in the Mortgage or in any other Loan Document. In the event of any conflict or inconsistency in any matters contained in this Assignment and the Loan Agreement or Mortgage, the terms and provisions of the Loan Agreement (or Mortgage) shall govern.

**5.2     Notices.** Any notice or communications in connection herewith shall be sufficiently given if given in the manner provided for in the Loan Agreement.

**5.3     Successors and Assigns.** All of the rights, powers, privileges and immunities herein granted and assigned to the Assignee shall also inure to its successors and assigns, including all holders, from time to time, of the Note and all of the burdens created herein shall be binding upon Assignor and its successors and assigns.

**5.4     Governing Law.** This Assignment and all agreements and instruments executed by Assignor in connection herewith shall be governed by and construed in accordance with the internal laws of the State of New York, except that the laws of the State of Michigan shall govern the exercise of remedies by the Assignee to the extent specified in the Loan Agreement.

**5.5     Limited Recourse Provisions.** The liability of the Assignor and its partners, trustees and beneficiaries, or shareholders (as applicable) with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

**5.6     Severability.** In case any one or more of the provisions of this Assignment, the Note, the Mortgage, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Assignee to the fullest extent now or hereafter permitted by law.

**5.7     Headings.** Headings and captions in this Assignment are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

**5.8     Time of Essence.** Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Assignment and each of the other Loan Documents.

**5.9     No Partnership or Joint Venture.** No provision of this Assignment or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Assignor and Assignee, it being intended that the only relationship created by this Assignment, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.]

ASSIGNMENT OF LEASES AND RENTS - Page 6

LIBER 3424 PAGE 868

IN WITNESS WHEREOF, the said Assignor executed these presents under seal the day and year first above written.

Signed in the presence of:

_____
Witness

Kimberly Daly
[Print Name]

_____
Witness

Brett L. Landes.
[Print Name]

ASSIGNOR:

WEC 96D FLINT INVESTMENT TRUST, a
Delaware business trust

By: WOLVERINE EXCHANGE CORPORATION,
a Delaware corporation, its sole Trustee

By: _____
Name:   Greg L. England
Title:   Vice President

THE STATE OF NEW YORK      §
                           §
COUNTY OF NEW YORK         §

The foregoing instrument was acknowledged before me this the 27 day of November, 1996, by GREG L. ENGLAND, the Vice President of WOLVERINE EXCHANGE CORPORATION, a Delaware corporation, as the Trustee of WEC 96D FLINT INVESTMENT TRUST, a Delaware business trust, on behalf of said business trust.

[SEAL]

MARIANNA M. ESPOSITO
Notary Public, State of New York
No. 30-4827074
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 1998

_____
Notary Public in and for the State of   NY

MARIANNA M. ESPOSITO
Printed Name of Notary

My Commission Expires:

9/30/98

This instrument was prepared by and after recording should be returned to:

John M. Vasily, Esq.
Debevoise & Plimpton
875 Third Avenue
22nd Floor
New York, New York 10022

20299083-01
112396 v4
481-14795-16

ASSIGNMENT OF LEASES AND RENTS - Page 7

LIBER 3424 PAGE 869

Flint, Michigan

## EXHIBIT A

SITUATED IN THE TOWNSHIP OF FLINT, GENESEE COUNTY, MICHIGAN,
DESCRIBED AS:

THAT PART OF KETZLER ESTATES REPLAT AS RECORDED IN LIBER 19 OF PLATS,
PAGE 58 OF THE GENESEE COUNTY RECORDS; BEL-NOR GARDENS AS RECORDED
IN LIBER 29 OF PLATS, PAGE 40 OF THE GENESEE COUNTY RECORDS; AND THE
EAST 1/2 OF SECTION 28, TOWNSHIP 7 NORTH, RANGE 6 EAST, FLINT TOWNSHIP,
GENESEE COUNTY, MICHIGAN, DESCRIBED AS: COMMENCING AT THE EAST 1/4
CORNER OF SECTION 28; THENCE NORTH 00 DEGREES 21 MINUTES 28 SECONDS
EAST 145.44 FEET ALONG THE EAST LINE OF THE NORTHEAST 1/4 OF SECTION 28
TO THE POINT OF BEGINNING OF THE FOLLOWING DESCRIBED PARCEL; THENCE
SOUTH 65 DEGREES 19 MINUTES 09 SECONDS WEST, 446.01 FEET; THENCE NORTH
26 DEGREES 11 MINUTES 00 SECONDS WEST, 416.42 FEET; THENCE NORTH 63
DEGREES 49 MINUTES 00 SECONDS EAST, 1.95 FEET; THENCE NORTH 26 DEGREES
11 MINUTES 00 SECONDS WEST, 224.03 FEET; THENCE NORTH 63 DEGREES 49
MINUTES 00 SECONDS EAST, 148.94 FEET TO THE SOUTHWESTERLY LINE OF LOT
9; THENCE NORTH 26 DEGREES 12 MINUTES 10 SECONDS WEST, 231.00 FEET
ALONG SAID SOUTHWESTERLY LINE OF LOT 9 TO THE SOUTHEASTERLY RIGHT
OF WAY LINE OF MILLER ROAD; THENCE NORTH 63 DEGREES 49 MINUTES 00
SECONDS EAST, 100.00 FEET ALONG THE SOUTHEASTERLY RIGHT OF WAY LINE
OF MILLER ROAD; THENCE SOUTH 26 DEGREES 03 MINUTES 15 SECONDS EAST,
19.53 FEET; THENCE NORTH 63 DEGREES 49 MINUTES 00 SECONDS EAST, 54.43
FEET; THENCE SOUTH 26 DEGREES 11 MINUTES 00 SECONDS EAST, 257.08 FEET;
THENCE NORTH 75 DEGREES 39 MINUTES 37 SECONDS EAST, 32.31 FEET; THENCE
SOUTH 26 DEGREES 11 MINUTES 00 SECONDS EAST, 216.69 FEET; THENCE SOUTH
63 DEGREES 49 MINUTES 00 SECONDS WEST, 64.81 FEET; THENCE SOUTH 26
DEGREES 11 MINUTES 00 SECONDS EAST, 243.50 FEET; THENCE NORTH 63
DEGREES 49 MINUTES 00 SECONDS EAST, 192.76 FEET; THENCE SOUTH 89
DEGREES 38 MINUTES 32 SECONDS EAST, 45.51 FEET TO THE EAST LINE OF THE
NORTHEAST 1/4 OF SECTION 28; THENCE SOUTH 00 DEGREES 21 MINUTES 28
SECONDS WEST, 133.44 FEET ALONG THE EAST LINE OF THE NORTHEAST 1/4 OF
SECTION 28 TO THE POINT OF BEGINNING

TOGETHER WITH EASEMENTS OF INGRESS AND EGRESS CREATED BY (A)
DECLARATION OF EASEMENTS AND RESTRICTIONS RECORDED IN LIBER 2588 OF
DEEDS, PAGES 711 TO 746, GENESEE COUNTY RECORDS; AND AMENDED AND
RESTATED DECLARATION OF EASEMENTS AND RESTRICTIONS RECORDED IN
LIBER 3290, PAGES 609 TO 646 OF DEEDS, GENESEE COUNTY RECORDS; AND FIRST
AMENDMENT TO AMENDED AND RESTATED DECLARATION OF EASEMENTS AND

MASTER LIBER 3424 PAGE 870

Flint, Michigan

RESTRICTIONS RECORDED IN LIBER 3321, PAGE 479 OF DEEDS, GENESEE COUNTY RECORDS AND (B) EASEMENT AGREEMENT RECORDED SEPTEMBER 11, 1996, IN LIBER 3375, PAGE 25 OF DEEDS, GENESEE COUNTY RECORDS.

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of November 27, 1996 by WEC 96D NILES INVESTMENT TRUST, a Delaware business trust, having a principal place of business at 6750 Lyndon B. Johnson Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter called the "Assignor" and the expression "Assignor" shall include, wherever the context permits, its successors and assigns) to FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City - Staubach Pass Through Trust, Series 1996-A, having an address at 79 South Main Street, Salt Lake City, Utah 84111, Attention: Corporate Trust Services (hereinafter called the "Assignee").

This Assignment is granted pursuant to the provisions of a Loan Agreement dated as of even date herewith between Assignor, as borrower, and Assignee, as lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement.

### WITNESSETH THAT:

1.    **Grant of Assignment.** The Assignor, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, hereby sells, grants, transfers, conveys, sets over and assigns to the Assignee, Assignor's right, title and interest in, to and under all leases, rental agreements, licenses and occupancy agreements (excluding Permitted Subleases, defined below) (the "Leases"), including but not limited to that certain Lease (the "Principal Lease") dated of even date herewith between Assignor, as landlord, and Circuit City Stores, Inc., ("Tenant") as tenant, a memorandum or notice of which is or will be recorded in the appropriate records in the county in which the Property is located, together with all renewals, extensions, replacements, amendments and modifications thereof now or hereafter in existence, with respect to the property described on Exhibit "A" annexed hereto ("Property"); Assignor is the owner of the Property. The term "Leases" (including the Principal Lease) shall not include any Permitted Sublease (defined below) and the term "tenant" shall not include any tenant under a Permitted Sublease, and the term "Rents" (defined below) shall not include sums payable to Tenant pursuant to Permitted Subleases except to the extent that Borrower is a party to, or has rights to proceeds under, any such sublease or occupancy arrangement. For purposes of this Assignment, "Permitted Subleases" shall mean the subleases and subtenancies entered into by Tenant in accordance with Section 17 of the Principal Lease. Assignor agrees that all tenants under the Leases are hereby expressly and irrevocably authorized and directed to pay any and all Rents accruing from and after the date hereof directly to Assignee. In the event the Assignor receives any Rents directly from its tenant(s) from and after the date hereof in violation of the terms of this Agreement or the Loan Agreement, Assignor shall immediately remit such Rents to Assignee to be applied in accordance with the requirements of the Loan Agreement.

TOGETHER with all rents, earnings, issues, income and profits arising from said Leases and any renewals, extensions, replacements, amendments or modifications thereof and together with all rents, earnings, issues, income and profits payable to Assignor for the use and occupation of all or any portion of the Property and from all other leases or occupancy agreements with respect to the Property or any portion thereof which may have heretofore been executed by or for the benefit of Assignor or which may be executed by or for the benefit of Assignor in the future during the term of this Assignment ("Rents");

TOGETHER with all of Assignor's interest in all guaranties of Leases;

TOGETHER with all of Assignor's right, title and interest in, to and under any and all rights, powers, privileges, options and other benefits of Assignor as lessor or grantor of an option under the Leases, including, but not by way of limitation:

(1)    The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, refunds, rebates, surrender payments, cancellation payments, damages, monies and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

(2)    The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

ASSIGNMENT OF LEASES AND RENTS - Page 1

EXHIBIT

*C*

(3)    The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to a Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Assignor; notwithstanding the foregoing, Assignee will not accept any offer made by Tenant pursuant to Section 12(b) of the Principal Lease sooner than five (5) days prior to the last day on which Assignor may accept or reject such offer under the Principal Lease, and Assignee agrees to join with Assignor in rejecting such offer if Assignor notifies Assignee prior to the date specified above of its intention to reject such offer and deposits with Assignee an amount equal to the full amount of the Obligations then outstanding or reasonably expected to be outstanding at the time of termination of the Principal Lease, to be applied to repay the full amount of the Obligations at the time of termination of the Principal Lease.

(4)    The right to make all waivers and agreements, to give and receive all notices, consents and releases, and to take such action upon the happening of a default under any Lease as Assignor might have taken, including the right to commence, conduct and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

(5)    To do any and all other things whatsoever which the Assignor is or may become entitled to do under or by virtue of the Leases or any of them.

Together with full power and authority, in the name of Assignor or otherwise, to demand, receive, enforce, collect or receipt for any or all of the foregoing, to endorse or execute any checks or other instruments or orders, to file any claims and to take any action which Assignee may deem necessary or advisable in connection therewith, Assignor hereby irrevocably constituting Assignee the attorney-in-fact of Assignor for such purposes, which appointment is coupled with an interest and is irrevocable.  No exercise by Assignee of any rights of Assignor shall release Assignor from its obligations under the Lease.

This Assignment is a perfected present, absolute, direct and unconditional assignment and transfer of all Assignor's right, title and interest in and to the Leases and the Rents made in consideration of the Loan by Assignee to Assignor and as additional security for the repayment of the Obligations (as hereinafter defined).

2.    **Obligations Secured.**  The Term "Obligations" shall have the meaning set forth in the Loan Agreement and shall include, without limitation, the following matters:

(1)    The payment and performance of all obligations set forth in that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, increases, consolidations, replacements, modifications and amendments thereof, in the original amount of $5,336,453.56 and a Maturity Date of December 1, 2018, given by the Assignor, as maker, to the order of the Assignee;

(2)    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by the Assignor under and pursuant to the Loan Agreement and each of the other Loan Documents;

(3)    The payment of all costs, expenses, legal fees and liabilities incurred by Assignee in connection with the enforcement of any of Assignee's rights or remedies under this Assignment and the other Loan Documents;

(4)    The payment, performance, discharge and satisfaction of every obligation of the Assignor to Assignee under and pursuant to the Open-End Mortgage, Security Agreement and Fixture Financing Statement (referred to herein as the "Mortgage") of even date given to Assignee to be recorded and filed herewith;

(5)    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and obligation of the Assignor to the Assignee under this Assignment; and

(6)    The payment, performance, discharge and satisfaction of all other liabilities and obligations of the Assignor to the Assignee, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each such liability and obligation of the Assignor under any of the Loan Documents and each

ASSIGNMENT OF LEASES AND RENTS - Page 2

amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

3.    **Warranties and Representations.** The Assignor WARRANTS AND REPRESENTS that it is and shall be in the future the sole owner of the entire lessor's interest in the Leases and that no rent reserved in said Leases has been or will be in the future otherwise assigned or anticipated (except as may be provided in the Loan Agreement).

The Assignor further WARRANTS AND REPRESENTS that as of the date hereof: (a) the Principal Lease and the Permitted Subleases are the only Leases or occupancy agreements affecting any or all of the Property; (b) the Principal Lease is in full force and effect and a true and complete copy thereof together with all amendments and modifications have been previously delivered to the Assignee; (c) no default exists on the part of the Tenant or the landlord in the performance of any of the terms, covenants, provisions or agreements in the Principal Lease; (d) Assignor knows of no condition which with the giving of notice or the passage of time or both would constitute a default on the part of the Tenant or the landlord under the Principal Lease; (e) no security deposit or advance rental payment has been made by Tenant under the Principal Lease; and (f) Assignor has good right and authority to make this Assignment.

4.    **Covenants.** The Assignor covenants with the Assignee as follows:

4.1    **Perform Lease Obligations.** Assignor shall observe and perform all the material obligations imposed upon the lessor under every Lease and not do or permit to be done anything to impair the security thereof; not collect any of the rent, income and profits arising or accruing under said Leases or from the Property in violation of the Lease or Assignee's rights hereunder or under the Loan Agreement or other Loan Documents; not execute any other assignment of lessor's interest in said Leases or assignment of Rents arising or accruing from said Leases or from the Property; not alter, modify, amend or change the terms of said Leases or cancel or terminate the same or accept a surrender or assignment or subletting thereof without the prior written consent of the Assignee in each instance; not subordinate any such Lease to any mortgage or other encumbrance, or permit, consent or agree to such subordination, without Assignee's prior written consent in each instance; not convey or transfer or suffer or permit a conveyance or transfer of the premises demised by any such Lease or of any interest therein so as to effect directly or indirectly a merger of the estates and rights, or a termination or diminution of the obligations, of any lessee thereunder; not alter, modify or change the terms of any guaranty of any Lease or cancel or terminate any such guaranty without the prior written consent of Assignee in each instance; not consent to any assignment of or subleasing under any Lease (except for Permitted Subleases pursuant to Section 17 of the Principal Lease), without the prior written consent of the Assignee in each instance; not enter into any future Leases without the Assignee's prior written consent in each instance (provided that nothing herein shall be deemed to prohibit the valid exercise by Tenant of any options it may have under the Principal Lease as approved by Assignee as of the date hereof); upon the execution of any new Leases, assign and transfer to the Assignee any and all subsequent Leases upon all or any part of the Property and to execute and deliver at the request of the Assignee all such further assurances and assignments in the Property as the Assignee shall from time to time require to evidence such assignments or otherwise; promptly (but in any event within five (5) business days from Assignor's receipt or sending thereof) deliver to Assignee a copy of any notice from any tenant and any notice from Assignor to any tenant alleging a default under any Lease; promptly (but in any event within five (5) business days from the time Assignor has actual knowledge thereof) notify Assignee if Assignor believes it or any tenant will be unable to fulfill its obligations under any Lease.

4.2    **License to Operate.** Assignee shall have the right to enter the Property for the purpose of enforcing its interest in the Leases and the Rents, and any income and profits arising therefrom, this Assignment constituting a present, absolute assignment thereof. Assignee grants to Assignor a revocable license to operate and manage the Property; provided, however, Assignee may revoke such license upon and during the continuation of an Event of Default (as such term is defined in the Loan Agreement); provided, further, that such license shall be deemed automatically revoked upon the occurrence of any Bankruptcy Event as that term is defined in the Loan Agreement.

4.3    **After Default; Remedies.** Upon or at any time after an Event of Default, the Assignee, without in any way waiving such Event of Default, at its option, without further notice, and without regard to waste, the adequacy of the security for the Obligations secured hereby and by the Mortgage, or solvency of the Assignor, may declare all Obligations to be immediately due and payable, may revoke the license described in Section 4.2 above, and may, either in person or by agent, with or without bringing any action or proceedings, or by a receiver appointed by a

ASSIGNMENT OF LEASES AND RENTS - Page 3

court, take possession of the Property and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and, either with or without taking possession of the Property in its own name, demand, sue for, or otherwise collect and receive, all Rents, income and profits of the Property not already collected by Assignee, including those past due and unpaid, with full power (to the extent permitted by the Principal Lease) to make from time to time all improvements, alterations, renovations, repairs and replacements thereto or thereof as may seem proper to the Assignee, and to apply such Rents, income and profits in the following priority:

       (a)     to payment of all reasonable fees of any receiver appointed hereunder,

       (b)     to application of tenant's security deposits as required by applicable law in the state in which the Property are located (the "State"),

       (c)     to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due,

       (d)     to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due,

       (e)     to payment of all expenses for normal maintenance of the Property including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees as the Assignee may deem necessary or desirable, and all expenses of operating and maintaining the Property, including, without being limited thereto, the cost of all improvements, alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and

       (f)     any Rents remaining after application of the above items shall be applied to all sums which the Assignor is responsible to pay under the Mortgage, and the principal sum, interest and indebtedness secured hereby and by the Mortgage, and all other Obligations together with all reasonable costs and reasonable attorneys' fees.

The exercise by the Assignee of the right granted it in this Assignment and the collection of the Rents, income and profits and the application thereof as herein provided shall not be considered a waiver by the Assignee of any default under the other Loan Documents or under said Leases, or this Assignment.

Without limiting the foregoing, the right and license granted to Assignor above to operate and manage the Property shall, at Assignee's option, be revoked and terminated upon the occurrence of an Event of Default. During the continuance of an Event of Default, Assignor shall have no further right to function as lessor under any of the Leases.

In any and all circumstances, the parties hereby acknowledge and explicitly express their intent that the Assignee shall have a perfected security interest in the Leases and Rents upon recordation of this Assignment and notification to any of the tenants under the Leases to pay rent directly to the Assignee.

The right of Assignee to collect and receive the rents and the proceeds of any right assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Assignee shall, to the extent not prohibited by law also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

       4.4    **Continuing Effect; Direction to Lessees.**  Upon payment in full to the Assignee of the principal sum, interest, and other Obligations, this Assignment shall become and be void and of no effect, but the affidavit of any officer, agent, or attorney of the Assignee made in good faith showing any part of said principal, interest, or other Obligations to remain unpaid or unperformed shall be and constitute prima facie evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon. The discharge of record of the Mortgage shall constitute a discharge of this Assignment and a release of the Assignee's interest in the Leases and Rents assigned hereby and the reassignment thereof (without recourse to the Assignee) to the Assignor and

ASSIGNMENT OF LEASES AND RENTS - Page 4

all those claiming of record by, through or under the Assignor. The Assignor hereby authorizes and directs the lessees named in said Leases or any other or future lessees or occupants of the Property (except under Permitted Subleases), to pay over to the Assignee all Rents, income and profits arising or accruing under said Leases or from the Property from and after the date hereof and to continue so to do until otherwise notified by the Assignee, or until discharge of this Assignment, whichever is earlier. Subject to the applicable provisions of the Principal Lease, the Assignor further directs such lessees under Leases to pay over to the Assignee any amounts which would be owed by such lessees under Leases to Assignor as a result of a casualty or condemnation or otherwise.

        **4.5**    **No Waiver; Concurrent Rights.** Nothing contained in this Assignment and no act done or omitted by the Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Assignee of its rights and remedies hereunder or any one or more of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms of any of the other Loan Documents. The right of the Assignee to collect said principal sums, interest and indebtedness and to enforce any other security therefor held by it may be exercised by the Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

        **4.6**    **No Liability.** Nothing herein contained shall be construed as constituting Assignee a mortgagee-in-possession in the absence of the taking of actual possession of the Property. In the exercise of powers herein granted to Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor, except for Assignee's gross negligence or willful misconduct. Without limiting the generality of the foregoing, the Assignee shall not be liable for any loss sustained by the Assignor resulting from any act or omission of the Assignee in managing the Property after a default unless such loss is caused by the gross negligence or willful misconduct of the Assignee. The Assignee shall not be obligated to perform or discharge, nor does the Assignee hereby undertake to perform or discharge, any obligation, duty or liability under said Leases, or under or by reason of this Assignment, and the Assignor shall, and does hereby agree to, indemnify the Assignee for, and to hold the Assignee harmless from, any and all liability, loss or damage which is incurred under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said Leases; provided, however, that Assignor shall not indemnify and hold Assignee harmless from liability, loss or damage arising solely from the gross negligence or willful misconduct of the Assignee and incurred either (i) after Assignee has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Assignee was actually in possession of the Property at the time such action arose, (ii) after Assignee has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Assignee has acquired the Property by deed-in-lieu of foreclosure. Should the Assignee incur any such liability under said Leases or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and by the Mortgage and by the other collateral for the Obligations and the Assignor shall reimburse the Assignee therefor *immediately upon demand and upon the failure of the Assignor so to do, the Assignee may, at its option, declare all sums secured hereby immediately due and payable.* It is further understood that this Assignment shall not operate to place responsibility for the control, care, management or repair of said Property upon the Assignee, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make the Assignee responsible or liable for any waste committed on the Property by tenants or any other parties, or for any dangerous or defective condition of the Property, *or for any negligence in the management, upkeep, repair or control of said Property resulting in loss or injury or death to any tenant, licensee, employee or stranger, except as provided above.*

        **4.7**    **Effect of Foreclosure Deed.** Upon the issuance of any deed or deed pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the Leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its agent and attorney in fact, after an Event of Default, to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

        **4.8**    **Upon Termination of Lease in Bankruptcy.** In the event any lessee under any of the Leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state or local statute which provides for the possible termination or rejection of the Leases assigned hereby,

ASSIGNMENT OF LEASES AND RENTS - Page 5

Assignor covenants and agrees that if any of the Leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, in each instance, and any check in payment of damages for termination or rejection of any such Lease shall be made payable to the Assignee.  Assignor hereby assigns any such payment to Assignee and further covenants and agrees that Assignor will duly endorse to the order of Assignee any such check which is made payable to Assignor, the proceeds of which shall be applied to the indebtedness secured by this Assignment.  Assignor hereby irrevocably appoints Assignee and its successors and assigns as its attorney-in-fact, which power is coupled with an interest, after an Event of Default, to so endorse any such checks if Assignor does not do so.

5.    **General Provisions.**

5.1    **Conflicts.**  This Assignment is intended to be supplementary to, and not in substitution for, or in derogation of, any assignment of Rents to secure the Obligations contained in the Mortgage or in any other Loan Document.  In the event of any conflict or inconsistency in any matters contained in this Assignment and the Loan Agreement or Mortgage, the terms and provisions of the Loan Agreement (or Mortgage) shall govern.

5.2    **Notices.**  Any notice or communications in connection herewith shall be sufficiently given if given in the manner provided for in the Loan Agreement.

5.3    **Successors and Assigns.**  All of the rights, powers, privileges and immunities herein granted and assigned to the Assignee shall also inure to its successors and assigns, including all holders, from time to time, of the Note and all of the burdens created herein shall be binding upon Assignor and its successors and assigns.

5.4    **Governing Law.**  This Assignment and all agreements and instruments executed by Assignor in connection herewith shall be governed by and construed in accordance with the internal laws of the State of New York, except that the laws of the State where the Property are located shall govern the exercise of remedies by the Assignee to the extent specified in the Loan Agreement.

5.5    **Limited Recourse Provisions.**  The liability of the Assignor and its partners, trustees and beneficiaries, or shareholders (as applicable) with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

5.6    **Severability.**  In case any one or more of the provisions of this Assignment, the Note, the Mortgage, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof.  Each of the provisions of every such agreement, document or instrument shall be enforceable by Assignee to the fullest extent now or hereafter permitted by law.

5.7    **Headings.**  Headings and captions in this Assignment are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

5.8    **Time of Essence.**  Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Assignment and each of the other Loan Documents.

5.9    **No Partnership or Joint Venture.**  No provision of this Assignment or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Assignor and Assignee, it being intended that the only relationship created by this Assignment, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.]

ASSIGNMENT OF LEASES AND RENTS - Page 6

IN WITNESS WHEREOF, the said Assignor executed these presents under seal the day and year first above written.

Signed in the presence of:

**ASSIGNOR:**

WEC 96D NILES INVESTMENT TRUST,
a Delaware business trust

_____
Witness

By:   WOLVERINE EXCHANGE CORPORATION,
      a Delaware corporation, its sole Trustee

___Kimberly Daly___
[Print Name]

_____
Witness

By: _____
Name:   Greg L. England
Title:  Vice President

_____
[Print Name]   Bret L. Landes.

THE STATE OF New York   §
                        §
COUNTY OF New York      §

Before me, a Notary Public in and for said county and state personally appeared the above named WEC 96D NILES INVESTMENT TRUST, a Delaware business trust, by GREG L. ENGLAND, Vice President of WOLVERINE EXCHANGE CORPORATION, a Delaware corporation, its Trustee who acknowledged that he did sign the foregoing instrument and the same is the free act and deed of said Trust and of said Trustee.

IN WITNESS WHEREOF I have hereunto set my hand and official seal this 27 day of November, 1996, at New York, NY

[SEAL]
MARIANNA M. ESPOSITO
Notary Public, State of New York
No. 30-4827074
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 199_

_____
Notary Public

THIS INSTRUMENT PREPARED BY AND AFTER RECORDING RETURN TO:

John M. Vasily, Esq.
Debevoise & Plimpton
875 Third Avenue
22nd Floor
New York, New York 10022

20299897.01
112396 v6
481:14785-16

ASSIGNMENT OF LEASES AND RENTS - Page 7

Niles, Ohio

## EXHIBIT A

### PARCEL I

SITUATED IN THE CITY OF NILES, COUNTY OF TRUMBULL, STATE OF OHIO, AND KNOWN AS BEING A PART OF SECTION 41 OF ORIGINAL HOWLAND TOWNSHIP, AND MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS THE CENTERLINE INTERSECTION OF YOUNGSTOWN WARREN ROAD (U.S. 422) AND HEATON-NORTH ROAD, 50' WIDE;

THENCE S 16 DEGREES 58 MINUTES 00 SECONDS W ALONG THE CENTERLINE OF SAID HEATON-NORTH ROAD A DISTANCE OF 306.07 FEET TO A POINT WHICH IS THE TRUE PLACE OF BEGINNING FOR THE PARCEL OF LAND HEREIN DESCRIBED;

THENCE S 73 DEGREES 02 MINUTES 00 SECONDS E (PASSING OVER A RAILROAD SPIKE SET AT 25.00 FEET) A DISTANCE OF 265.00 FEET TO A P.K. NAIL SET;

THENCE S 16 DEGREES 58 MINUTES 00 SECONDS WEST A DISTANCE OF 18.69 FEET TO A DRILL HOLE SET;

THENCE S 73 DEGREES 02 MINUTES 00 SECONDS E A DISTANCE OF 174.66 FEET TO A P.K. NAIL SET;

THENCE S 17 DEGREES 03 MINUTES 27 SECONDS W A DISTANCE OF 350.82 FEET TO A POINT;

THENCE N 85 DEGREES 47 MINUTES 00 SECONDS W (PASSING OVER A 5/8" IRON BAR FOUND AT 424.57 FEET) A DISTANCE OF 450.20 FEET TO A POINT;

THENCE N 16 DEGREES 58 MINUTES 00 SECONDS E ALONG THE CENTERLINE OF SAID HEATON-NORTH ROAD A DISTANCE OF 468.87 FEET TO A POINT WHICH IS THE TRUE PLACE OF BEGINNING AND CONTAINING 4.1532 ACRES OF LAND, MORE OR LESS.

### PARCEL II

TOGETHER WITH CERTAIN NON-EXCLUSIVE EASEMENTS AND RIGHTS SET FORTH IN THAT CERTAIN AMENDED AND RESTATED RECIPROCAL EASEMENT AND OPERATION AGREEMENT, DATED MARCH 7TH, 1996 MADE AND ENTERED INTO BY AND AMONG CIRCUIT CITY STORES, INC., A VIRGINIA CORPORATION, DANIEL

U:\CIRCUIT\STAUBAC\LEGAL.OH                    1

Niles, Ohio

P. AND DEBORAH A. SCHIAVONE, INDIVIDUALS, AND WALTER R. AND MARILYN J.
SAMUELS, INDIVIDUALS, RECORDED MARCH 7TH, 1996, DOCUMENT NO. 394364,
VOLUME 999, BEGINNING AT PAGE 333, OF THE OFFICIAL RECORDS OF
TRUMBULL COUNTY, OHIO. OVER, UNDER AND ACROSS THAT PORTION OF
PARCEL II-B NOT CONTAINED WITHIN THE DESCRIPTION OF PARCEL I

**PARCEL II-B**

SITUATED IN THE CITY OF NILES, COUNTY OF TRUMBULL, STATE OF OHIO, AND
KNOWN AS BEING PART OF SECTION 41 OF ORIGINAL HOWLAND TOWNSHIP, AND
MORE FULLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS THE CENTERLINE INTERSECTION OF
YOUNGSTOWN WARREN ROAD (U.S. 422) AND HEATON-NORTH ROAD, 50' WIDE;

THENCE S 16 DEGREES 58 MINUTES 00 SECONDS W ALONG THE CENTERLINE OF
SAID HEATON-NORTH ROAD A DISTANCE OF 190.29 FEET TO A POINT WHICH IS
THE TRUE PLACE OF BEGINNING FOR THE PARCEL OF LAND HEREIN DESCRIBED;

THENCE S 78 DEGREES 09 MINUTES 00 SECONDS E (PASSING OVER A 5/8" CAPPED
REBAR SET) A DISTANCE OF 189.17 FEET TO A POINT;

THENCE N 11 DEGREES 35 MINUTES 00 SECONDS E A DISTANCE OF 150.09 FEET TO
AN IRON PIN FOUND;

THENCE ALONG THE SOUTHERLY LINE OF SAID YOUNGSTOWN WARREN ROAD
WHICH IS THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A CENTRAL
ANGLE OF 0 DEGREES 38 MINUTES 36 SECONDS, A RADIUS OF 11,419.16 FEET, A
TANGENT OF 64.11 FEET, A CHORD OF 128.21 FEET, A CHORD BEARING S 77
DEGREES 40 MINUTES 13 SECONDS E, AND AN ARC LENGTH OF 128.21 FEET TO A
5/8" CAPPED REBAR FOUND;

THENCE S 71 DEGREES 21 MINUTES 57 SECONDS E ALONG THE SOUTHERLY LINE
OF SAID YOUNGSTOWN WARREN ROAD A DISTANCE OF 100.11 FEET TO A 5/8"
CAPPED REBAR FOUND;

THENCE S 76 DEGREES 48 MINUTES 07 SECONDS E ALONG THE SOUTHERLY LINE
OF SAID YOUNGSTOWN WARREN ROAD A DISTANCE OF 18.67 FEET TO A 5/8"
CAPPED REBAR FOUND;

THENCE ALONG THE SOUTHERLY LINE OF SAID YOUNGSTOWN WARREN ROAD
WHICH IS THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A CENTRAL

Niles, Ohio

ANGLE OF 01 DEGREES 43 MINUTES 50 SECONDS, A RADIUS OF 11,409.16, A TANGENT OF 172.32, A CHORD OF 344.60, A CHORD BEARING S 75 DEGREES 53 MINUTES 23 SECONDS E, AND AN ARC LENGTH OF 344.61 FEET TO A 5/8" CAPPED REBAR FOUND:

THENCE S 16 DEGREES 58 MINUTES 00 SECONDS W A DISTANCE OF 294.37 FEET TO A POINT:

THENCE S 73 DEGREES 02 MINUTES 00 SECONDS E A DISTANCE OF 130.00 FEET TO A 5/8" CAPPED REBAR FOUND:

THENCE N 16 DEGREES 58 MINUTES 00 SECONDS E A DISTANCE OF 273.14 FEET TO A 5/8" CAPPED REBAR FOUND:

THENCE ALONG THE SOUTHERLY LINE OF YOUNGSTOWN WARREN ROAD WHICH IS THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A CENTRAL ANGLE OF 02 DEGREE 31 MINUTES 08 SECONDS, A RADIUS OF 11,384.16 FEET, A TANGENT OF 250.27 FEET, A CHORD OF 500.42 FEET, A CHORD BEARING S 73 DEGREES 06 MINUTES 53 SECONDS E AND AN ARC LENGTH OF 500.46 FEET TO A POINT (A 5/8" CAPPED REBAR WAS ALSO FOUND ON THE SOUTHERLY LINE OF SAID YOUNGSTOWN WARREN ROAD AN ARC LENGTH OF 85.00 FEET WEST OF SAID POINT):

THENCE S 23 DEGREES 20 MINUTES 30 SECONDS W A DISTANCE OF 130.66 FEET TO A POINT IN THE CENTER OF MOSQUITO CREEK:

THENCE S 08 DEGREES 16 MINUTES 00 SECONDS E A DISTANCE OF 101.26 FEET TO A POINT IN THE CENTER OF MOSQUITO CREEK:

THENCE S 01 DEGREES 27 MINUTES 10 SECONDS E A DISTANCE OF 109.51 FEET TO A POINT IN THE CENTER OF MOSQUITO CREEK:

THENCE S 16 DEGREES 50 MINUTES 36 SECONDS E A DISTANCE OF 105.43 FEET TO A POINT IN THE CENTER OF MOSQUITO CREEK;

THENCE N 85 DEGREES 47 MINUTES 00 SECONDS W A DISTANCE OF 1555.70 FET TO A POINT (PASSING OVER A 5/8" CAPPED REBAR SET AT 85.00 FEET AND A 5/8" CAPPED REBAR FOUND AT 1530.07 FEET);

THENCE N 16 DEGREES 58 MINUTES 00 SECONDS E, ALONG THE CENTERLINE OF SAID HEATON NORTH ROAD A DISTANCE OF 584.65 FEET TO A POINT WHICH IS THE TRUE PLACE OF BEGINNING AND CONTAINING 18.1274 ACRES OF LAND,

Niles, Ohio

MORE OR LESS.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

## CAPMARK FINANCE, INC.'S REQUEST FOR HEARING

Capmark Finance, Inc. ("Capmark"), on behalf of Bank of America National
Association (Bank of America), by and through its counsel Bryan Cave LLP, hereby files
its Request for Hearing on its Response to Liquidating Trust's Fifteenth Omnibus
Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims,
Reclassification of Certain Misclassified Claims, Disallowance of Certain Late Filed
Claims, and Disallowance of Certain Late Filed Claims, And Disallowance of certain
Amended Claims) (the "Response").

Capmark filed the Response on April 6, 2011. As set forth in the Response, the
objection to proof of claims 9721,9704, and 9488 (the "Claims") should be denied and
the Claims should be allowed in their entirety.

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a
hearing on its Response for 2:00 p.m. on May 11, 2011 and grant such other and further
relief as the Court deems just and proper.

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

Dated this 6th day of April, 2011.

Respectfully submitted,

**BRYAN CAVE LLP**

By:  P.J. Meitl (VA Bar No. 73215)
1155 F Street, NW, Suite 700
Washington, DC 20004
(202) 508-6043 (phone)
(202) 220-7343 (facsimile)
pj.meitl@bryancave.com

Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a true and correct copy of the foregoing was served through the Court's ECF system to all parties consenting to service through same, and on all parties listed on the attached service list by overnight mail.

_/s/Philip J. Meitl_____
Philip J. Meitl



GPD Separator Sheet

# Folder: Q
# File: 050







IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

**RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S TWENTY-FIRST OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS, AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)**

Capmark Finance, Inc. ("Capmark"), on behalf of Bank of America, National Association ("Bank of America"), by and through its counsel, hereby files this Response and Request for Hearing to Liquidating Trust's Twenty-First Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

Proof of Claim 14589

1.      The Trustee for Debtors has objected to proof of claim number 14589 (the "Claim") filed by Capmark on behalf of Bank of America, National Association, as successor by merger to LaSalle Bank, National Association (f/k/a LaSalle National Bank), as Trustee (the

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

Inc. 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence"); In re Harford Sands, Inc. 372 F.3d 637,640-41 (4th Cir. 2004) (Creditor's filing of proof of claim constitutes prima facie evidence of amount and validity of claim, and burden is on debtor to object to claim and to introduce evidence to rebut its presumptive validity); In re Gran, 964 F.2d 882, 827 (8th Cir. 1992) ("The objection party must then produce evidence rebutting the claimant or else the claimant will prevail.")

8.    In this case, the Claim was filed prior to the Bar Date and in accordance with the Federal Rules of Bankruptcy Procedure and provides sufficient documentary support for the Claim and the calculation of the Claim amount. The objection does not challenge the basis for the Claim or provide any evidence whatsoever to supports its objection to the calculation of the Claim amount.

9.    The Debtors bears the burden of proof for the disallowance of any portion of the Claims. See In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y 1995) Because Trustee has produced no evidence whatsoever in support of the proposed reduction, he has failed to meet his burden of proof.

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the Claim; (b) allow the Claim as provided in the proof of claim; and (c) grant Capmark such other and further relief as this Court deems appropriate under the circumstances.

Dated: April 6, 2011

BRYAN CAVE LLP

By:    */s/ Phillip J Meitl*_____
        Philip J. Meitl (VA Bar No. 73215)
        Bryan Cave LLP
        1155 F Street NW, Suite 700,
        Washington DC 20004
        (202) 508-6000 (phone)

        *Attorney for Capmark Finance Inc.*

## CERTIFICATE OF SERVICE

        The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

                                    */s/ Phillip J. Meitl*_____
                                    Phillip J. Meitl

*TAX INFORMATION*
*Sec. · 24.13*
*BIK.· 5*
*LoT: 3*
*TOWN OF CORTLANDT*
*COUNTY OF WESTCHESTER*

This instrument was prepared by, and the
recorded original should be returned to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Sidney M. Ruthenberg, Esq.
*CTIC· 9710-26074*

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS (this "Assignment") made as of
the 29th day of May, 1998, by CORTLANDT B, LLC, a New York limited liability
company, having its principal place of business at 557 Blooming Grove Turnpike, New
Windsor, New York 12553 ("Assignor"), to GMAC COMMERCIAL MORTGAGE
CORPORATION, a California corporation having its principal place of business at 650
Dresher Road, Horsham, Pennsylvania 19044-8015 ("Assignee").

### WITNESSETH:

THAT Assignor for good and valuable consideration, receipt whereof is hereby
acknowledged, hereby grants, transfers and assigns to Assignee the entire lessor's interest in
and to all leases, subleases and other agreements affecting the use, enjoyment, or occupancy
of all or any part of that certain lot or piece of land, more particularly described in **Exhibit
"A"** annexed hereto and made a part hereof, together with the buildings, structures, fixtures,
additions, enlargements, extensions, modifications, repairs, replacements and improvements
now or hereafter located thereon (hereinafter collectively referred to as the "Property").

TOGETHER WITH all other leases, subleases and other agreements affecting the
use, enjoyment or occupancy of the Property now or hereafter made affecting the Property or
any portion thereof, together with any extension, renewal, replacement or modification of the
same, this Assignment of other present and future leases, subleases and present and future
agreements being effective without further or supplemental assignment;

The leases, subleases and other agreements described above together with all other
present and future leases and present and future agreements and any extension, renewal,
replacement or modification of the same are hereinafter collectively referred to as the
"Leases";

TOGETHER WITH:

(a)    all deposits (whether for security or otherwise), rents, income, issues and
profits arising from the Leases and renewals thereof and together with all rents, revenues,

NYFS02....\12\38012\0150\1131\ASN1278M.40B


EXHIBIT
A
tabbies

income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property whether paid or accruing before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code (hereinafter defined) (hereinafter collectively referred to as the "Rents").

(b)      all of Assignor's claims and rights (the "Bankruptcy Claims") to (i) the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, 11 U.S.C. §101 et seq., as the same may be amended (the "Bankruptcy Code") and (ii) any award or other payment which Assignor may hereafter become entitled to receive with respect to any Lease as a result of or pursuant to any bankruptcy, insolvency or reorganization or similar proceedings involving the lessee under such Lease.

(c)      all of Assignor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Assignor (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(d)      all proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

THIS ASSIGNMENT is made in consideration of that certain mortgage loan made by Assignee to Assignor evidenced by that certain note made by Assignor to Assignee, dated the date hereof, in the principal sum of $5,559,000 (the "Note"), and secured by that certain Leasehold Mortgage and Security Agreement given by Assignor to Assignee, dated the date hereof, covering the Property and intended to be duly recorded (the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument and the Other Security Documents (hereinafter defined) are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Assignor and/or others and by or in favor of Assignee which wholly or partially secure or guarantee payment of the Debt are hereinafter referred to as the "Other Security Documents."

ASSIGNOR WARRANTS that except as disclosed in the rent roll for the Property delivered to and approved by Assignee, (a) Assignor is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid and enforceable; (c) the terms of all alterations, modifications and amendments to the Leases are reflected in the certified rent roll delivered to and approved by Assignee; (d) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated (except to Assignee); (e) none of the

2

Rents have been collected for more than one (1) month in advance (provided that a security deposit shall not be deemed rent collected in advance); (f) the premises demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; (g) there exist no offsets or defenses to the payment of any portion of the Rents; (h) Assignor has received no notice from any tenant challenging the validity or enforceability of any Lease; (i) there are no agreements with the tenants under the Leases other than expressly set forth in each Lease; (j) the Leases are valid and enforceable against Assignor and the tenants set forth therein; (k) no Lease contains an option to purchase, right of first refusal to purchase, or any other similar provision; (l) no person or entity has any possessory interest in, or right to occupy, the Property except under and pursuant to a Lease; (m) each Lease is subordinate to this Security Instrument, either pursuant to its terms or a recorded subordination agreement; (n) no Lease has the benefit of a non-disturbance agreement that would be considered unacceptable to prudent institutional lenders; and (o) no brokerage commissions or finders fees are due and payable regarding any Lease.

ASSIGNOR COVENANTS with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases if the failure to perform or observe the same would materially and adversely affect the value of the Property taken as a whole and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall promptly send copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce in a commercially reasonable manner all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed; provided, however, with respect to multifamily residential property, a residential Lease may be terminated in the event of a default by the tenant thereunder; (d) shall not collect any of the Rents more than one (1) month in advance, (provided that a security deposit shall not be deemed rent collected in advance); (e) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (f) shall not (i) materially alter, modify or change the terms of the Leases without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed if the alteration, modification or change does not materially and adversely affect the value of the Property taken as a whole and provided further that such Lease, as altered, modified or changed, is otherwise in compliance with the requirements of this Security Instrument, or (ii) cancel or terminate any Lease (except for defaults thereunder) of more than ten (10%) percent of the rentable space of the Property or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Land or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (g) shall not alter, modify or change the terms of any Lease Guaranty or cancel or terminate such Lease Guaranty without the prior written consent

3

of Assignee; and (h) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Assignee. Notwithstanding the foregoing, subdivisions (b), (f), (g) and (h) shall not apply to residential Leases for space in a multifamily residential property.

ASSIGNOR FURTHER COVENANTS with Assignee that (a) except as otherwise consented to by Assignee, all Leases shall be written on the standard form of lease which shall have been approved by Assignee; (b) upon request, Assignor shall furnish Assignee with executed copies of all Leases; (c) no material changes may be made to the Assignee-approved standard lease without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed; (d) all proposed Leases and renewals of existing Leases (other than residential Leases relating to a residential multifamily property) shall be subject to the prior approval of Assignee, except as otherwise provided in the Security Instrument.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

## PART I

## GENERAL PROVISIONS

1. **PRESENT ASSIGNMENT.** Assignor does hereby absolutely and unconditionally assign to Assignee Assignor's right, title and interest in all current and future Leases and Rents, Lease Guaranties, and Bankruptcy Claims, it being intended by Assignor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Assignee shall not be construed to bind Assignee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Assignee. Assignor agrees to execute and deliver to Assignee such additional instruments, in form and substance satisfactory to Assignee, as may hereafter be requested by Assignee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph 1, Assignee grants to Assignor a revocable license to operate and manage the Property and to collect the Rents and other sums due under the Lease Guaranties and Bankruptcy Claims. Assignor shall hold the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Assignee for use in the payment of such sums. Upon an Event of Default, as defined in the Note and the Security Instrument, the license granted to Assignor herein shall automatically be revoked without notice to Assignor, and Assignee shall immediately be

4

entitled to possession of all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, whether or not Assignee enters upon or takes control of the Property. Assignee is hereby granted and assigned by Assignor the right, at its option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims. Any Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Assignee in its discretion shall deem proper.

2.    **REMEDIES OF ASSIGNEE.** (a) Upon or at any time after an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Property and have, hold, manage, lease and operate the Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option, may either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims, the fair and reasonable rental value for the use and occupation of such part of the Property as may be in possession of Assignor or may require Assignor to vacate and surrender possession of the Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. For purposes of this paragraph 2, Assignor grants to Assignee its irrevocable

5

power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property. The exercise by Assignee of the option granted it in this paragraph 2 and the collection of the Rents and all sums received pursuant to any Lease Guaranty and Bankruptcy Claims and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents.

(b)    Upon or at any time after the occurrence of an Event of Default, Assignee shall have the right in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(c)    If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignee not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease. Assignee shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Assignee demands that Assignor assume and assign the Lease to Assignee pursuant to Section 365 of the Bankruptcy Code and (ii) Assignee covenants to cure or provide adequate assurance of future performance under the Lease. If Assignee serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignee of the covenant provided for in clause (ii) of the preceding sentence.

3.    NO LIABILITY OF ASSIGNEE.    Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after an Event of Default or from any other act or omission of Assignee in managing the Property after default unless such loss is caused by the willful misconduct or bad faith of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged

6

## 255 AFFIDAVIT FOR ASSIGNMENT OF LEASES AND RENTS

STATE OF NEW YORK        }
                          :ss.:
COUNTY OF ORANGE         }

Adrian Goddard, being duly sworn, deposes and says:

That he is the President of AGCB, Inc., the manager of Cortlandt B, LLC, the Borrower with respect to the Leasehold Mortgage and Security Agreement, dated as of May 29, 1998, from Cortlandt B, LLC to GMAC Commercial Mortgage Corporation in the principal amount of $5,559,000 and on which mortgage tax in the amount of $55,590 has been paid, which mortgage is a lien on premises situated at the Caldor (Route 6) Shopping Center, Town of Cortlandt, County of Westchester, State of New York.

That the Assignment of Leases and Rents herewith tendered for recording is given for the purpose of further securing the same principal indebtedness of the mortgage referred to above and said Assignment of Leases and Rents does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by said mortgage and, that there have been no readvances on said mortgage.

WHEREFORE, deponent respectfully requests that the Assignment of Leases and Rents tendered herewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

_____
Adrian Goddard

Sworn to before me this 28th day
of May, 1998.

_____
Notary Public

Mary Lou Foertsch
Notary Public, State of NY
Regis. #01FO4668981
Comm. Expires 03/30/2000

TOTAL P.02

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re:                 §
                      §    Chapter 11
CIRCUIT CITY STORES, INC., et al.,   §
                      §    Case No 08-35653 (KRH)
        Debtors.        §
                      §    Jointly Administered

## CAPMARK FINANCE, INC.'S REQUEST FOR HEARING

Capmark Finance, Inc. ("Capmark"), on behalf of Bank of America, National Association (Bank of America), by and through its counsel Bryan Cave LLP, hereby files its Request for Hearing on its Response to Liquidating Trust's Twenty First Omnibus Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Late Filed Claims, And Disallowance of certain Amended Claim) (the "Response").

Capmark filed the Response on April 6, 2011. As set forth in the Response, the objection to proof of claim 14859 should be denied and the claim should be allowed in its entirety.

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a hearing on its Response for 2:00 p.m. on May 11, 2011 and grant such other and further relief as the Court deems just and proper.

_____

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

Dated this 6th day of April, 2011.

Respectfully submitted,

**BRYAN CAVE LLP**

By:  P.J. Meitl (VA Bar No. 73215)
1155 F Street, NW, Suite 700
Washington, DC 20004
(202) 508-6043 (phone)
(202) 220-7343 (facsimile)
pj.meitl@bryancave.com

Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a true and correct copy of the foregoing was served through the Court's ECF system to all parties consenting to service through same, and on all parties listed on the attached service list by overnight mail.

_/s/Philip J. Meitl_
Philip J. Meitl