IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

RICHMOND DIVISION
FILED APR 7 2011
CLERK
US BANKRUPTCY COURT

**RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S TWENTY-FIRST OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS, AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)**

Capmark Finance, Inc. ("Capmark") on behalf of Wells Fargo Bank, N.A., by and through its counsel Bryan Cave LLP, hereby files this Response and Request for Hearing to Liquidating Trust's Twenty-First Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

Proof of Claim 9444

1. The Trustee for Debtors has objected to the proof of claim number 9444 (the "Claim") filed by Capmark as special servicer for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Minnesota, N.A. (f/k/a Northwest Bank Minnesota, N.A.), as Trustee (the

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

PGDocs\6132870.1

"Trustee") for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL.

2. Wells Fargo holds a mortgage on the real property commonly known as 3424 Clemson Boulevard, Suite B, Anderson, South Carolina 29621 (Store No. 1616). As stated in proof of claim 9444, The mortgagor on the property, Bond-Circuit II Delaware Business Trust, a Delaware business trust, (the "Borrower"), leased the property to Circuit City Stores, Inc. ("Circuit City") pursuant to a written lease (the "Lease") dated December 30, 1997, between Borrower, as Landlord, and Circuit City, as Tenant, as it may have been amended. The Lease and the rents thereunder were assigned by the Borrower to its lender in an Assignment of Leases and Rents, effective as of December 30, 1996 (the "Assignment"). The Assignment was subsequently conveyed by the lender to the Trustee. A true and correct copy of the Assignment of Leases and Rents is attached hereto and incorporated herein as Exhibit A.

3. Circuit City rejected the Lease.

4. With regard to proof of claim 9444, Trustee states that:

"Expunge as unsupported by debtors books and records."

5. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr P. 3001(f).

6. After a creditor has timely and properly filed a proof of claim, the Debtor must produce substantial evidence to rebut this prima facie evidence. See in re Hemingway Transp. Inc. 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence"); In re Harford Sands, Inc. 372 F.3d 637, 640-41 (4th Cir. 2004) (Creditor's filing of

proof of claim constitutes prima facie evidence of amount and validity of claim, and burden is on debtor to object to claim and to introduce evidence to rebut its presumptive validity); In re Gran, 964 F.2d 882, 827 (8th Cir. 1992) ("The objection party must then produce evidence rebutting the claimant or else the claimant will prevail.")

7. In this case, the Claim was filed prior to the Bar Date and in accordance with the Federal Rules of Bankruptcy Procedure and provides sufficient documentary support for the Claim and the calculation of the Claim amount. The Objection does not challenge the basis for the Claim or provide any evidence whatsoever to supports its objection to the calculation of the Claim amount.

8. The Debtor bears the burden of proof for the disallowance of any portion of the Claims. See In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y 1995) Because Trustee for Debtors has produced no evidence whatsoever in support of the proposed reduction, he has failed to meet his burden of proof.

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the Claim; (b) allow the Claim as provided in Wells Fargo's proof of claim; and (c) grant Wells Fargo such other and further relief as this Court deems appropriate under the circumstances.

Dated: April 6, 2011

                                        BRYAN CAVE LLP

                                        By:   /s/ Phillip J. Meitl
                                                Philip J. Meitl (VA Bar No. 73215)
                                                Bryan Cave LLP
                                                1155 F Street NW, Suite 700,
                                                Washington DC 20004
                                                (202) 508-6000 (phone)
                                                *Attorney for Capmark Finance Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

/s/ Phillip J. Meitl
Phillip J. Meitl

4 of 7

Loan #: 98-900008

97000178 01/03/1997 B2521 P345

# BOND-CIRCUIT II DELAWARE BUSINESS TRUST
as Assignor

to

# LEGG MASON REAL ESTATE SERVICES SOUTH, INC.
as Assignee

## ASSIGNMENT OF LEASE AND RENTS

Dated as of December 30, 1996

**PREPARED BY AND UPON RECORDATION RETURN TO:**
Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn: Vaughan K. Weikel, Esq.

VKW089-2.ALR
December 26, 1996


EXHIBIT A

ALR II Anderson, SC

97000178  01/03/1997  B2521  P346

ASSIGNMENT OF LEASE AND RENTS (herein, together with all modifications, supplements and amendments hereto, called this "Assignment"), dated as of December 30, 1996 made by BOND-CIRCUIT II DELAWARE BUSINESS TRUST, a Delaware business trust, having an address for notice at c/o Bond-Circuit L.P., 2901 Butterfield Road, Oak Brook, Illinois 60521 ("Assignor") to LEGG MASON REAL ESTATE SERVICES SOUTH, INC., a Florida corporation maintaining an office at 255 South Orange Street, Suite 1540, Orlando, Florida 32801 ("Assignee").

### WITNESSETH:

WHEREAS, Assignor and Circuit City Stores, Inc. ("Lessee") are parties to that certain Lease, dated as of December 30, 1996 (herein, as it may from time to time be modified, supplemented or amended, is called the "Lease") covering the lands and premises more particularly described in Schedule A and all buildings and other improvements now or hereafter located thereon (collectively, the "Premises"); and

WHEREAS, simultaneously with the execution and delivery of this Assignment, Assignee is making a mortgage loan to Assignor in the principal amount of $3,415,934.42 (the "Loan") as evidenced by a Mortgage Note dated as of the date hereof by Assignor to Assignee (the "Note") and secured by a Mortgage, of even date herewith by Assignor to Assignee, covering the Premises (the "Mortgage"); and

WHEREAS, Assignor has agreed to execute and deliver this Assignment for the purpose of securing the following (collectively, the "Obligations"): (i) the payment of the principal of, interest on, premium (if any) and all other amounts payable in respect of the Note and the Mortgage and (ii) the performance of the covenants and agreements contained herein and in the Note and the Mortgage;

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.  Assignor, as security for the Obligations, has absolutely assigned, transferred, conveyed and set over, and by these presents does hereby presently, unconditionally and irrevocably assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of Assignor, as the lessor under the Lease, including, without limitation, the immediate and continuing right:

97000178 01/03/1997 B2521 P347

    (a)    to make claim for, receive and collect (and to apply the same to the payment of the Obligations) all rents (including all basic rent and additional rent), income, revenues, issues, profits, insurance proceeds, condemnation proceeds, moneys, security deposits, and damages payable or receivable under the Lease or pursuant to any of the provisions thereof (such rents, income, revenues, issues, profits, proceeds, moneys, security deposits or damages, collectively, the "Rents");

    (b)    to accept any offer regarding any condemnation proceeds or insurance proceeds payable in connection with a loss or destruction thereof;

    (c)    to make all waivers and agreements of any kind and make any appointments of appraisers or other determinations of any kind; and

    (d)    to give all notices, consents, approvals, releases and other instruments.

1.A.    Assignee hereby grants to Assignor a revocable license to exercise any and all rights of landlord under the Lease with respect to the Mortgaged Property (including those set forth in subparagraphs (b) (c) and (d) of paragraph 1 above) in order to enable Assignor to take all actions necessary for the proper management and operation of the Mortgaged Property except for (i) the right to make claim for, receive, collect and receipt for any Rents, insurance proceeds, condemnation awards, and any other sums payable or receivable under the Lease or pursuant thereto, whether denominated as rent, other expenses, other payments or as the purchase price of the Mortgaged Property or any portion thereof or otherwise, or any proceeds from any of the above, (ii) the right to take any action upon the happening of a default under the Lease, including, without limitation, the commencement, conduct and consummation of proceedings at law or in equity, or (iii) the right to appear in any proceeding, claim, suit or action in connection with the rejection of the Lease, or the right to file or prosecute any claim for damages arising from the rejection of the Lease under the Bankruptcy Code, without having first obtained Assignee's prior written consent to do any of the foregoing. Notwithstanding anything herein to the contrary, (i) in no event shall Assignor be permitted to amend or modify the terms of the Lease without the prior written consent of Assignee, (ii) in no event shall Assignor, without the prior written consent of Assignee, in the exercise of any rights under the Lease or otherwise, take any action in connection with the management and operation of the property which would (a) have a material adverse effect on the rights and benefits of the landlord under the Lease, (b) in any way affect the Rents payable, or any other amount payable, or the term under, the Lease, or (c) in any way reduce the obligations of Tenant under the Lease, and (iii) in no event shall Assignor be permitted to take any action which, under any provision of the Lease, the Mortgage or any Other Security Documents, requires the consent, approval or joinder by Assignee, without first obtaining the consent, approval or joinder of Assignee required by such provision. Upon or at any time after the occurrence of an Event of Default (as defined in the Mortgage), the license granted to Assignor herein may be revoked by Assignee.

2.    The rights provided the Assignee by this Assignment of Lease and Rents are primary and not secondary and are of equal parity to and arise and exist separately and independently of the Assignee's rights as mortgagee under the Mortgage. The assignment made

VKW00061.3
December 23, 1996 (1)

2

97000178  01/03/1997  B2521 P348

hereby is neither collateral nor for additional security. This Assignment and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the Lease, nor shall any of the obligations contained in the Lease be imposed upon Assignee. Upon the payment of the Obligations, this Assignment and all rights herein assigned to Assignee shall cease and terminate and all estate, right, title and interest of Assignor in and to the Lease shall revert to Assignor, and Assignee shall, at the request and at the expense of Assignor, deliver to Assignor an instrument in recordable form canceling this Assignment and reassigning the Lease without recourse, representation or warranty, to Assignor.

3. Assignor hereby presently, unconditionally and irrevocably designates Assignee to receive, and directs Lessee to pay to Assignee, all payments, payable or receivable under the Lease (including, without limitation, all payments of basic rent and additional rent, and other sums payable to the lessor under the Lease) and no such payment by Lessee under the Lease shall be effective to discharge the obligation of Lessee under the Lease to make such payment unless made to Assignee in accordance with such designation and direction. All such payments shall be applied as provided in the Mortgage. Assignor hereby designates Assignee to receive duplicate original copies of all notices, undertakings, demands, statements, offers, documents and other instruments and communications which Lessee is or may be required or permitted to give, make, deliver to or serve upon Assignor under the Lease. Assignor shall direct Lessee to deliver to Assignee, at its address set forth below or at such other address as Assignee shall designate, duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications and no delivery thereof by Lessee shall be of any force or effect unless made to Assignee and Assignor.

4. Assignor represents and warrants to Assignee that (a) the Lease is in full force and effect and no default by Assignor, and to Assignor's knowledge no default by Tenant, exists thereunder; (b) Assignor is the sole owner of the entire lessor's interest in the Lease; (c) Assignor has delivered to Assignee a true, correct and complete copy of the Lease as amended to the date hereof; (d) Assignor has full power and authority to execute and deliver this Assignment; (e) Assignor has not executed any other assignment of the subject matter of this Assignment, except in connection with construction financing repaid with proceeds of the Loan; (f) none of the Rents reserved in the Lease have been assigned or otherwise pledged or hypothecated; (g) none of the Rents have been collected for more than one (1) month in advance; and (h) to Assignor's knowledge there exist no offsets or defenses to the payment of any portion of the Rents.

5. Assignor shall not take any action as the lessor under the Lease or otherwise which is inconsistent with this Assignment, or make any other assignment, designation or direction inconsistent therewith, and any assignment, designation or direction inconsistent therewith shall be void. Assignor shall, from time to time upon the request of Assignee, execute all instruments of further assurance and all such supplemental instruments with respect to the transactions contemplated hereby as Assignee may specify.

6. Assignor further agrees with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything to impair the value of the Lease as security for the Obligations; (b) shall promptly send

VKW00061.3
December 23, 1996 (1)

3

copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Lease upon the part of the Lessee thereunder to be observed or performed, short of termination thereof; (d) shall not execute any other assignment of lessor's interest in the Lease (except as part of a mortgage expressly permitted pursuant to paragraph 9(g) of the Mortgage and subject to all terms, conditions and restrictions applicable to such a mortgage); (e) shall not alter, modify or change the terms of the Lease without the prior consent of Assignee, or cancel or terminate the Lease or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or termination or diminution of the obligations of Lessee thereunder; (f) shall not alter, modify or change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without the prior consent of Assignee; and (g) shall not consent to any assignment of or subletting under the Lease not in accordance with the Lease terms, without the prior consent of Assignee.

      7.     Upon or at any time after an Event of Default (as defined in the Mortgage), Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent or servicer, with or without bringing any action or proceeding, or by a receiver appointed by a court, enforce its interest in the Lease and Rents and take possession of the Mortgaged Property (as defined in the Mortgage) and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Mortgaged Property; and (b) the Debt, together with all costs and attorneys' fees. For purposes of this paragraph, Assignor grants to Assignee and the designee of Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Mortgaged Property. The exercise by Assignee of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Mortgage, the Lease, this Assignment or the Other Security Documents (as defined in the Mortgage).

      8.     Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Mortgaged Property after an Event of Default or from any other act or omission of Assignee in managing the Mortgaged Property after default unless such loss is

VKW00061.3
December 23, 1996 (1)                     4

97000178  01/03/1997  B2521  P350

caused by the willful misconduct or gross negligence of Assignee. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Mortgage and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby, the Note, the Mortgage and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgaged Property by the Lessee or any other parties, or for any dangerous or defective condition of the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

9. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

10. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

11. Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

12. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note

VKW00061.3
December 23, 1996 (1)

5

97000178  01/03/1997  B2521  P351

and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage and all other sums due pursuant to the Note, the Mortgage, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

13. The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Mortgage, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

14. [Reserved]

15. If any term or provision of this Assignment or any application hereof shall be invalid or unenforceable, the remainder of this Assignment and any other application of such term or provision shall not be affected thereby.

16. Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Assignment, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

To Assignee:

At its address shown on
the first page of this Assignment

VKW00061.3
December 23, 1996 (1)

6

97000178 01/03/1997 B2521 P352

with a copy concurrently to:

Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn: Vaughan K. Weikel, Esquire

To Assignor:

At its address shown on
the first page of this Assignment

with a copy concurrently to:

Bond-Circuit L.P.
2901 Butterfield Road
Oak Brook, Illinois 60521
Attn: Joseph P. Cosenza

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, or (iii) if sent by certified mail, three (3) days after such notice has been sent by Assignor or Assignee.

17. This Assignment cannot be modified, changed or discharged except by an agreement in writing, duly acknowledged in form for recording, signed by the party against whom enforcement of such modification, change or discharge is sought.

18. This Assignment shall bind and inure to the benefit of the parties hereto and their respective successors and assigns and shall run with the Premises.

19. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

20. This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

VKW00061.3
December 23, 1996 (1)

7

97000178 01/03/1997 B2521 P353

21. IT IS EXPRESSLY UNDERSTOOD AND AGREED BY ASSIGNOR AND ASSIGNEE THAT (A) THIS INSTRUMENT IS EXECUTED AND DELIVERED BY WILMINGTON TRUST COMPANY, NOT INDIVIDUALLY OR PERSONALLY BUT SOLELY AS TRUSTEE OF ASSIGNOR, A DELAWARE BUSINESS TRUST (THE "TRUST"), IN THE EXERCISE OF THE POWER AND AUTHORITY CONFERRED AND VESTED IN IT; (B) EACH OF THE REPRESENTATIONS, UNDERTAKINGS AND AGREEMENTS HEREIN MADE ON THE PART OF THE TRUST IS MADE AND INTENDED NOT AS PERSONAL REPRESENTATIONS, UNDERTAKINGS AND AGREEMENTS BY WILMINGTON TRUST COMPANY, INDIVIDUALLY OR PERSONALLY, TO PERFORM ANY COVENANT, EITHER EXPRESSED OR IMPLIED, CONTAINED HEREIN, ALL SUCH LIABILITY, IF ANY, BEING EXPRESSLY WAIVED BY ASSIGNEE AND BY ANY OTHER PERSON CLAIMING BY, THROUGH OR UNDER THIS INSTRUMENT; AND (C) UNDER NO CIRCUMSTANCES SHALL WILMINGTON TRUST COMPANY BE PERSONALLY LIABLE FOR THE PAYMENT OF ANY INDEBTEDNESS OR EXPENSES OF THE TRUST OR BE LIABLE FOR THE BREACH OR FAILURE OF ANY OBLIGATION, REPRESENTATION, WARRANTY OR COVENANT MADE OR UNDERTAKEN BY THE TRUST UNDER THIS INSTRUMENT OR OTHER RELATED DOCUMENTS.



SIGNATURE BLOCKS ON FOLLOWING PAGE

VKW089-2.ALR
December 22, 1996

ALR H Anderson, SC

97000178  01/03/1997  B2521  P354

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed and delivered as of the date first above written.

WITNESSES:                          BOND-CIRCUIT II DELAWARE BUSINESS
                                    TRUST

                                    By: Wilmington Trust Company, not in its
                                        individual capacity, but solely as trustee

By: _____     By: _____
                                    Name: __JOHN M. BEESON, JR._____
                                    Title: _____· Vice President_____

VKW089-2.ALR
December 22, 1996                                           ALR II Anderson, SC

97000178 01/03/1997 B2521 P355

## ACKNOWLEDGMENTS

STATE OF _Maryland_ )
)   ACKNOWLEDGMENT
~~COUNTY~~ ~~OF~~ _Baltimore_ )

I, _MaryBeth Metz_, a Notary Public for _State of Maryland_, do hereby certify that _John M. Beeson, Jr._, personally appeared before me and acknowledged being the _Vice President_ and duly authorized officer of Wilmington Trust Company, and acknowledged the due execution of the foregoing instrument on behalf of Wilmington Trust Company, not in its individual capacity, but solely as trustee of Bond-Circuit II Delaware Business Trust this _27th_ day of December, 1996.

Witness my hand and (where an official seal is required by law) official seal this _27th_ day of _December_, 1996.

_Marybeth Metz_ [SEAL]
Signature of Notary Public
My commission expires: _11/21/98_

MARYBETH METZ
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 21, 1998

VKW089-2.ALR
December 22, 1996

ALR II Anderson, SC

97000178  01/03/1997  B2521  P356

Anderson, South Carolina

SCHEDULE A
~~EXHIBIT~~

ALL that certain piece, parcel or lot of land lying and being in the City of Anderson, County of Anderson, State of South Carolina, and being more fully shown and designated on an "ALTA/ACSM As-Built Survey for Circuit City Stores, Inc.", by Farmer & Simpson Engineers, and dated December 6, 1996, and having the following metes and bounds, to-wit:

BEGINNING by starting at the intersection of the southeastern Right-of-Way (R/W) of Beltline Blvd. and the southwestern R/W of U.S. Highway 76 & 178, Clemson Blvd., and proceeding in a southeasterly direction along said U.S. Highway 76 & 178 R/W for 712.29' to a point; thence leaving said R/W and running S 62 degrees 31 minutes 00 seconds W for a distance of 163.00' to a PK nail, the P.O.B. (Point of Beginning); thence running S 27 degrees 37 minutes 00 seconds E for a distance of 23.70' to a PK nail; thence running S 10 degrees 55 minutes 00 seconds E for a distance of 26.10' to an "X" on concrete curb; thence running S 27 degrees 37 minutes 00 seconds E for a distance of 174.00' to a PK nail; thence running S 16 degrees 05 minutes 46 seconds E for a distance of 37.14' to an "X" on concrete; thence running in the cavity of the wall between Office Depot and Circuit City 0.08' East of Circuit City wall S 27 degrees 37 minutes 03 seconds E 242.81' to an iron pin; thence running S 62 degrees 25 minutes 13 seconds W for a distance of 206.98' to an iron pin; thence running N 27 degrees 37 minutes 00 seconds W for a distance of 88.09' to a PK nail; thence running N 62 degrees 23 minutes 00 seconds E for a distance of 33.16' to an unmarked corner at face of wall; thence running along the face of wall N 27 degrees 34 minutes 29 seconds W for a distance of 148.30' to an unmarked corner at corner of building; thence running N 67 degrees 38 minutes 53 seconds W for a distance of 55.77' to a PK nail; thence running N 27 degrees 37 minutes 00 seconds W for a distance of 223.20' to a PK nail; thence running N 62 degrees 31 minutes 00 seconds E for a distance of 224.50' to the P.O.B., and containing 2.32 acres. Said property is bounded on the northwest by Lot 2-A, on the east by Lot 4, and on the south by Haynes Dodge, Inc.

TOGETHER with all the rights as shown in that certain Operation and Easement Agreement between William E. Epstein, Circuit City Stores, Inc., and Office Depot, Inc. as recorded in the RMC Office of Anderson County, South Carolina on February 21, 1996, in Book 2285, at page 104, as amended by that First Amendment to Operation Easement Agreement entered into as of November 27, 1996 between William E. Epstein, Circuit City Stores, Inc., Office Depot, Inc., and Credit Suisse Leasing 92A, L.P. as recorded in the RMC Office of Anderson County, South Carolina in Deed Book 2499 at page 39.

A:LEGAL-SC.WPD

```
97000178
FILED, RECORDED, INDEXED
01/03/1997    03:55P
Bk:2521  Pg:345
RecFee:18.00        St Fee:0.00
Co Fee:0.00           Pages:12
R M C DEPARTMENT ANDERSON CO
Montez Burton, Director
Register of Mesne Conveyance
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., § | |
| § | Case No 08-35653 (KRH) |
| Debtors. § | |
| § | Jointly Administered |

## CAPMARK FINANCE, INC.'S REQUEST FOR HEARING

Capmark Finance, Inc. ("Capmark"), on behalf of Wells Fargo Bank, N.A., by and through its counsel Bryan Cave LLP, hereby files its Request for Hearing on its Response to Liquidating Trust's Twenty-First Omnibus Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Late Filed Claims, And Disallowance of certain Amended Claims.) (the "Response")

Capmark filed the Response on April 6, 2011. As set forth in the Response, the objection to proof of claim 9444 should be denied and the claim should be allowed in its entirety.

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a hearing on its Response for 2:00 p.m. on May 11, 2011 and grant such other and further relief as the Court deems just and proper.

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

Dated this 6th day of April, 2011.

                    Respectfully submitted,

                    **BRYAN CAVE LLP**

                    By: P.J. Meitl (VA Bar No. 73215)
                    1155 F Street, NW, Suite 700
                    Washington, DC 20004
                    (202) 508-6043 (phone)
                    (202) 220-7343 (facsimile)
                    pj.meitl@bryancave.com

                    Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a true and correct copy of the foregoing was served through the Court's ECF system to all parties consenting to service through same, and on all parties listed on the attached service list by overnight mail.

                    */s/Philip J. Meitl*
                    Philip J. Meitl