IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

**RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S
FIFTEENTH OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF
CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN
MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID
CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS,
AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)**

Capmark Finance, Inc. ("Capmark") on behalf of Bank of America, National Association

(Bank of America), by and through its counsel Bryan Cave LLP, hereby files this Response and

Request for Hearing to Liquidating Trust's Fifteenth Omnibus Objection To Landlord Claims

(Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims,

Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and

Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

1.      The Trustee for Debtors  has objected to proof of claim numbers 9449, 10030,

9899, 9050, 9734, 9707,  (the "Claims") filed Capmark on behalf of  filed by Bank of America,

National Association, successor by merger to LaSalle Bank, National Association (f/k/a LaSalle

National Bank), as Trustee (the "Trustee") for the Registered Holders of GMACCM Mortgage

Pass-Through Certificates Series 1997-C1.

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

Proof of Claim 9449

2.      Capmark filed its proof of claim 9449 on January 30, 2009 in the amount of $350,432.06 plus unpaid prepetition rent and unpaid prepetition additional rent for lease rejection damages.

3.      With regard to proof of claim 9449, Trustee for Debtors states:

"Reduce to $350,432.06 in accordance with the Debtors' books and records."

4.      Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr P. 3001(f).

5.      The Trustee for Debtors fails to offer any evidentiary support for his assertions.

6.      After a creditor has timely and properly filed a proof of claim, the Debtor must produce substantial evidence to rebut this prima facie evidence. See in re Hemingway Transp. Inc. 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence"); In re Harford Sands, Inc. 372 F.3d 637,640-41 (4th Cir. 2004) (Creditor's filing of proof of claim constitutes prima facie evidence of amount and validity of claim, and burden is on debtor to object to claim and to introduce evidence to rebut its presumptive validity); In re Gran, 964 F.2d 882, 827 (8th Cir. 1992) ("The objection party must then produce evidence rebutting the claimant or else the claimant will prevail.")

7.      In this case, the proof of claim 9449 was filed prior to the Bar Date and in accordance with the Federal Rules of Bankruptcy Procedure and provides sufficient documentary support for the Claims and the calculation of the Claims amounts. The Objection does not

provide any evidence whatsoever to supports its objection to the calculation of the Claims amounts.

8.    The Trustee for Debtors bears the burden of proof for the disallowance of any portion of the Claims. See In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y 1995) Because the Trustee for Debtors has produced no evidence whatsoever in support of the proposed reductions, he has failed to meet his burden of proof and Claim 9449 should be allowed in its entirety.

Proof of Claim 10030

9.    Capmark filed its proof of claim 10030 on January 30, 2009 in the amount of $618, 051.65 plus unpaid prepetition rent plus prepetition additional rent for lease rejection damages.

10.    As stated the proof of claim 10030, Trustee holds a mortgage on the real property commonly known as 1001 Plymouth Road, Minnetonka, MN 55305 (Store No. 3139). The mortgagor on the property, Priscilla J. Rietz L.L.C., a Minnesota limited liability company ("Borrower"), leased the property to Circuit City pursuant to a written lease (the "Lease") dated February 22, 1995 between its predecessor in interest, Circuit Investors #4- Oklahoma City Limited Partnership, a Texas limited partnership, as Landlord and Circuit City, as Tenant, as it may have been amended. The Lease and the rents thereunder were assigned by the Borrower to its lender in an Assignment of Leases and Rents, effective as of February 27, 2995 (the "Assignment"). The Assignment was subsequently conveyed by the lender to the Trustee, attached as Exhibit A.

11.    Circuit City rejected the lease and Bank of America subsequently foreclosed on the property.

PGDocs\6132868.1

12.     With regard to proof of claim 10030, Trustee for Debtors states: "This claim is
made by or on behalf of a lender for rejection damages. Claim no. 9424 was made by landlord
for same item. Expunge as not supported by Debtors books and records."

13.     Trustee for Debtors should not be addressing the prepetition claims for this
property with the landlord because the Property was foreclosed on by Bank of America and the
landlord no longer owns the property.

14.     Minnesota law, the governing law under the loan documents,  provides that a
lease is terminated upon foreclosure. Mutual Ben. Life Ins. Co. v. Frantz Kludt & Sons, Inc.,
237 N.W.2d 350, 353 (Minn. 1975).

15.     Further, Section 5 of the Assignment provides that upon default:

"...Assignee... may revoke the privilege granted the Assignor hereunder to collect the
Rents and may, at its option, without notice, either: In person or by agent, with or
without taking possession of or entering the Property with or without bringing any action
or proceeding, give or require the Assignor to give, notice to the tenants under the Leases
authorizing and directing the tenants to pay all Rents directly to the Assignee, collect all
of the Rents; enforce the payment thereof and exercise all of the rights of the Assignee
hereunder; and may enter upon, take possession of, manage and operate the Property, or
any part thereof; may cancel enforce, or modify the Leases, and fix or modify Rents, and
do any acts which the Assignee deems proper to protect the security hereof"

16.     Since the lease and rents were assigned to the Trustee, Bank of America, and not
the landlord, has the right to pursue claim 10030. Accordingly, claim 10030 should survive.

Proof of Claims 9050, 9734, 9707, 9899

17.     Trustee for Debtors lists claims 9050, 9734, 9708 on Exhibit G as "Amended
Claims to be Expunged."

18.     Trustee for Debtors for Debtors  lists claim 9899 on Exhibit H as "Duplicate
Claims to Be Expunged."

19.    With regard to proof of claim 9050, Trustee for Debtors states the face amount of
the surviving claim is "1,170,300.25 (general unsecured) and that the surviving claim is 14529.

20.    With regard to proof of claim 9734, Trustee for Debtors states that the face
amount of the surviving claim is $491,842.00 (general unsecured) and that the surviving claim is
9413.

21.    With regard to proof of claim 9707, Trustee for Debtors states that the face
amount of the surviving claim is $432,829.47 (general unsecured) and that the surviving claim is
9407.

22.    With regard to proof of claim 9899, Trustee for Debtor states that the face amount
of the surviving claim is $50,000 (general unsecured) and that the surviving claim is 12152.

23.    Although the Trustee for Debtors objection to the listed claims is unclear, it
appears that the Trustee Debtors is attempting to expunge Capmark's claims in favor of
landlord's claims.

24.    However, the landlords on all the properties that are subject to the proofs of
claims listed have no rights in the rents or leases.

25.    Circuit City has rejected all the leases regarding the properties that are subject to
proofs of claims 9050, 9734, 9707, and 9899. Further, all of the properties that are the subject to
proofs of claims 9050, 9734, 9707, and 9899 have been foreclosed upon by Bank of America.

26.    The Trustee was assigned the relevant leases and rents for the properties that are
the subject of proof of claims 9050, 9734, 9707, and 9899 (See Assignments, attached as Exhibit
B through ) and the Assignments provide that Trustee has the right to assert the claim for the
properties in question.

27.     Section 5 of the Assignments for proof of claims 9050, 9734, and 9707 all provide, in part, that:

> "...Assignee shall have the right to have, hold, manage, lease, and operate the same of such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements, thereto as may seem proper to Assignee , and to do all the things required of or permitted to the landlord under said Leases (including the right to demand, sue for, and otherwise collect all Rents..."

28.     Section 7 of the Assignment for proof of claim 9899 provides that:

> "Borrower hereby consents to and irrevocable authorizes and directs the tenants under the Leases and any successor to the interest of said tenants, upon demand and notice from Lender of Lender's rights to receive the rents and other amounts under such Leases, to pay to Lender the rents and other amounts due or to become due, and said tenants shall have the right to rely upon such demand and notice from Lender and shall pay such rents and other amounts to Lender without any obligations or right to determine the actual existence of any Event of Default or event claimed by Lender as the basis for Lender's right to receive such rents and other amounts, notwithstanding any notice from or claim of Borrower to the contrary. Borrower shall have no right or claim against any tenant for any such rents and other amounts so paid by a tenant to Lender."

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the Claims; (b) allow the Claims as provided in Capmark's proof of claims; and (c) grant Capmark such other and further relief as this Court deems appropriate under the circumstances.

Dated: April 6, 2011

BRYAN CAVE LLP

By:     /s/ Philip J. Meitl
        Philip J. Meitl (VA Bar No. 73215)
        Bryan Cave LLP
        1155 F Street NW, Suite 700,
        Washington DC 20004
        (202) 508-6000 (phone)

        *Attorney for Capmark Finance Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

                                        /s/ Phillip J. Meitl
                                        Phillip J. Meitl

24 -5092

6405113

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by CIRCUIT INVESTORS #4-OKLAHOMA CITY LIMITED PARTNERSHIP, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

1.   Purpose

This Assignment is made in connection with a loan in the original principal amount of up to FOUR MILLION EIGHT HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FIFTY-NINE and 00/100 ($4,862,959.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing:

a.    Payment of the indebtedness evidenced by that certain promissory note of even date in the maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 1001 Plymouth Road, Minnetonka, Minnesota (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

b.    Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

c.    The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

2.   Grant

FOR VALUE RECEIVED, Assignor hereby absolutely grants, transfers and assigns to Assignee all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits and tenant security deposits arising from said leases and any extensions and renewals thereof; and together with all rents, income, issues and profits due or to become due

Minnetonka, Minnesota

No Mtge. Registration Tax Due
Taxpayer Services
Henn[...]



EXHIBIT

A

part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute, present and unconditional assignment from Assignor to Assignee and not merely the passing of a security interest. All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

3.      Authorization to Lease

Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4.      Assignor's Agreements

Assignor hereby represents, covenants and agrees:

a.      Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

b.      There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

c.      None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

d.      Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring. Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any

Minnetonka, Minnesota                    -2-

other monetary inducements must be noted on the rent roll. Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

e.    Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed. Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period. The Leases shall be approved upon the satisfaction of the following requirements:

(i)     The Leases must be in form and substance satisfactory to Assignee.

(ii)    The tenants thereunder must be satisfactory to Assignee.

(iii)   The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

f.    Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

g.    Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed. Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

h.    No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

i.    Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

j.    This Assignment is irrevocable.

Minnetonka, Minnesota                              -3-

k.    Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.    Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder.  Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.    All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.    Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.    The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.    <u>Assignee's Remedies Upon Default</u>

Upon or at any time during the continuance of an Event of Default (as such term is defined in the Mortgage), including, but not limited to, failure of the Assignor to pay any of the items set forth in Subsections 5(i)-(v) below, or if any material representation or warranty herein proves to be untrue, then the Assignee, without regard to waste, adequacy of the security or solvency of the Assignor, may declare all Indebtedness (as defined in the Mortgage) immediately due and payable, may revoke the privilege granted the Assignor hereunder to collect the Rents, and may, at its option, without notice, either:

(a)    In person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, give, or require the Assignor to give, notice to the tenants under the Leases authorizing and directing the tenants to pay all Rents directly to the Assignee; collect all of the Rents; enforce the payment thereof and exercise all of the rights of the Assignor under the Leases and all of the rights of the Assignee hereunder; and may enter upon, take possession of, manage and operate the Property, or any part thereof; may cancel, enforce or modify the Leases, and fix or modify Rents, and do any acts which the Assignee deems proper to protect the security hereof; or

(b)    Apply for appointment of a receiver in accordance with the statutes and law made and provided for, which receivership the Assignor hereby consents to, who shall collect the Rents; manage the Property so as to prevent waste; execute Leases

Minnetonka, Minnesota                                                -4-

within or beyond the period of receivership; perform the terms of this Assignment and apply the Rents as hereinafter provided.

The entering upon and taking possession of such Property, the appointment of a receiver, the collection of such Rents and the application thereof as aforesaid shall not cure or waive any default or waive, modify or affect notice of default under the Mortgage or invalidate any act done pursuant to said notice, nor in any way operate to prevent the Assignee from pursuing any remedy which now or hereafter it may have under the terms and conditions of the Mortgage or the Note secured thereby or any other instruments securing the same. The rights and powers of the Assignee hereunder shall remain in full force and effect both prior to and after any foreclosure of the Mortgage and any sale pursuant thereto and until expiration of the period of redemption from said sale, regardless of whether a deficiency remains from said sale. The purchaser at any foreclosure sale, including the Assignee, shall have the right, at any time and without limitation as provided in Minn. Stat. Section 582.03, to advance money to any receiver appointed hereunder to pay any part or all of the items which the receiver would otherwise be authorized to pay if cash were available from the Property and the sum so advanced, with interest at the Default Rate, as defined in the Note, shall be a part of the sum required to be paid to redeem from any foreclosure sale.

Any Rents shall be applied in the following order: (i) to payment of all fees of any receiver appointed hereunder, (ii) to application of the tenant's security deposits as required by Minn. Stat. Section 504.20, (iii) to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due, (iv) to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due, and (v) to payment of all expenses for normal maintenance of the Property. Any Rents remaining after application of the above items shall be applied to the Indebtedness if the Property shall be foreclosed and sold pursuant to a foreclosure sale, then:

(i)     If the Assignee is the purchaser at the foreclosure sale, the Rents shall be paid to the Assignee to be applied to the extent of any deficiency remaining after the sale, the balance to be retained by the Assignee, and if the Property be redeemed by the Assignor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess Rents to be paid to the Assignor, provided, if the Property not be redeemed, any remaining excess Rents to belong to the Assignee, whether or not a deficiency exists;

(ii)    If the Assignee is not the purchaser at the foreclosure sale, the Rents shall be paid to the Assignee to be applied first, to the extent of any deficiency remaining after the sale, the balance to be retained by the purchaser, and if the Property be redeemed by the Assignor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess Rents to be paid to the Assignor, provided, if the Property not be redeemed any remaining excess

Minnetonka, Minnesota

Rents shall be paid first, to the purchaser at the foreclosure sale in an amount equal to the interest accrued upon the sale price pursuant to Minn. Stat. Section 580.23 or Section 581.10, then to the Assignee to the extent of any deficiency remaining unpaid and the remainder to the purchaser.

6.    No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require

Minnetonka, Minnesota                    -6-

the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9.   <u>Cross Default and Cross Collateralization</u>

a.   A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.   <u>Certain Definitions</u>

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.   <u>Notices</u>.  All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

Assignee:        The Paul Revere Life Insurance Company
c/o The Paul Revere Investment Management Corporation
18 Chestnut Street
Worcester, Massachusetts 01608-1528
Attention:  Real Estate Investments

with a copy to:       Pepe & Hazard
                        Goodwin Square
                        Hartford, Connecticut 06103-4302
                        Attention:  Timothy J. Boyce, Esq.

Assignor:             Circuit Investors #4 - Oklahoma City Limited Partnership
                        c/o Cardinal Capital Partners, Inc.
                        8411 Preston Road, 8th Floor
                        Dallas, Texas 75225
                        Attention:  Gil Besing

with a copy to:       Goldfarb & Fleece
                        345 Park Avenue
                        New York, New York 10154
                        Attention: Steven Shore

12.    Miscellaneous

    a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

    b.    In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

    c.    This Assignment shall be governed and construed under the internal laws of the State in which the Property is located.

    d.    Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder.  The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

Minnetonka, Minnesota

-8-

e.     The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment. In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.     If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.     Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.     All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.     All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.     Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.     Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder. Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage. In no event shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.     If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

m.     This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party

against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

     n.     This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

     IN WITNESS WHEREOF, this Assignment has been executed by Assignor as of this 27th day of February, 1995.

                ASSIGNOR:

                CIRCUIT INVESTORS #4-OKLAHOMA CITY LIMITED PARTNERSHIP, a Texas limited partnership

                By:    CIRCUIT GENERAL PARTNER #4, INC., a Texas corporation, General Partner

                By: _____

                    Title: _Presoen_____

STATE OF _Texas_ )
                                  ) ss.
COUNTY OF _Dallas_ )


     The foregoing instrument was acknowledged before me this 27ᵗʰ day of February, 1995, by _Sid J. Reamy President_ of Circuit General Partner #4, Inc., a Texas corporation as general partner of Circuit Investors #4-Oklahoma City Limited Partnership, a Texas limited partnership, on behalf of the Partnership.



PAMELA McFERRIN
Notary Public, State of Texas
My Commission Expires
JAN. 25, 1997

(Seal, if any)

Notary Public

My Commission Expires: _1-25-97_


This document was drafted by:

Pepe & Hazard
Goodwin Square
Hartford, CT 06103-4302
(203) 522-5175

\\afz\27098\6-060.assn\022695\lb

Minnetonka, Minnesota

-11-

## EXHIBIT A

Lot 1, Block 1, Circuit City, according to the recorded plat thereof on file and of record, Hennepin County, Minnesota.

AND ALSO DESCRIBED AS FOLLOWS: .

Beginning at the northeast corner of Lot 1, Block 1, CIRCUIT CITY; thence of an assumed bearing of South 0 degrees 29 minutes 10 seconds East along the east line of said Lot 1 a distance of 451.93 feet; thence South 74 degrees 02 minutes 39 seconds West along the southerly line of said Lot 1 a distance of 275.78 feet; thence North 48 degrees 09 minutes 02 seconds West along the southwesterly line of said Lot 1 a distance of 22.15 feet; thence North 6 degrees 46 minutes 58 seconds West along the westerly line of said Lot 1 a distance of 225.13 feet; thence South 89 degrees 30 minutes 25 seconds West a distance of 0.39 feet; thence North 2 degrees 15 minutes 53 seconds East along the westerly line of said Lot 1 a distance of 252.75 feet; thence along a tangential curve, concave west, having a radius of 921.47 feet, a central angle of 2 degrees 09 minutes 31 seconds, a distance of 34.72 feet; thence North 89 degrees 35 minutes 03 seconds East along the north line of said Lot 1 a distance of 294.10 feet to the point of beginning.

\circuit\ccp7\legal.mn

i\afz\27098\6-073.exh\022495\1b

## EXHIBIT B

    Lease between Assignor, as landlord, and Circuit City Stores, Inc. as tenant, dated February 22, 1995.

Rafx\27098\6-060.assn\022595\lb

Minnetonka, Minnesota

BX/91-NC 5

EIEO0O.9IO1EO

6405113

6405113

6405113

8MAR9513-39   B6405113   SC0   $4.50
8MAR9513-39   B6405113   DOC   $15.00

OFFICE OF THE RECORDER
HENNEPIN COUNTY, MINNESOTA
CERTIFIED FILED AND OR
INDEXED ON

1995 MAR -8 PM 1:40

AS DOCUMENT # 6405113

CO. RECORDER

DEPUTY

13415

()

95160768

# ASSIGNMENT OF LEASES AND RENTS

- DEPT-01 RECORDING            $43.00
- T#0012  TRAN 2941 03/09/95 11:00:00
- #5562 # JM *-95-160768
- COOK COUNTY RECORDER

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by CIRCUIT INVESTORS - CARMAX LIMITED PARTNERSHIP, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

1.    Purpose

This Assignment is made in connection with a loan in the original principal amount of up to SIX MILLION ONE HUNDRED NINETY-ONE THOUSAND THIRTY-SIX and 00/100 ($6,191,036.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing:

a.    Payment of the indebtedness evidenced by that certain promissory note of even date in the maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 9950 Joliet Road, Countryside, Illinois (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

Countryside, Illinois



BOX 333-CTI

EXHIBIT
B

b.     Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

c.     The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

## 2.     Grant

FOR VALUE RECEIVED, Assignor hereby absolutely grants, transfers and assigns to Assignee all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits and tenant security deposits arising from said leases and any extensions and renewals thereof; and together with all rents, income, issues and profits due or to become due from the Property, and from any and all leases for the use and occupancy of the Property or any part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute, present and unconditional assignment from Assignor to Assignee and not merely the passing of a security interest. All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

## 3.     Authorization to Lease

Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

Countryside, Illinois                            -2-

4.    Assignor's Agreements

Assignor hereby represents, covenants and agrees:

a.    Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

b.    There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

c.    None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

d.    Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring. Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any other monetary inducements must be noted on the rent roll. Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

e.    Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed. Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period. The Leases shall be approved upon the satisfaction of the following requirements:

(i)    The Leases must be in form and substance satisfactory to Assignee.

(ii)    The tenants thereunder must be satisfactory to Assignee.

(iii)    The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

f.    Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

Countryside, Illinois                                    -3-

95160768

g.      Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed.  Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

h.      No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

i.      Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

j.      This Assignment is irrevocable.

k.      Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.      Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder.  Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.      All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.      Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.      The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

Countryside, Illinois                                    -4-

5.    Assignee's Remedies Upon Default

Upon or at any time after an Event of Default (as such term is defined in the Mortgage) by Assignor, or a default by Assignor as lessor under any Lease beyond any applicable cure and grace period, Assignee, without in any way waiving such default, may at its option, enter and take possession of the Property, in which event Assignee shall have the right to have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may seem proper to Assignee, and to do all things required of or permitted to the landlord under said Leases (including the right to demand, sue for and otherwise collect all Rents), and to apply such Rents (to the extent required of or permitted to the landlord under the Leases) to the payment of: (a) the cost of such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, and keeping the same properly insured and (b) all taxes, charges, claims, assessments, water rents and any other liens which may be prior to this Assignment or the Loan Documents, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby, together with all costs and reasonable attorneys' fees, in such order of priority as to any of such items, as Assignee in its sole discretion may determine, statute, law, custom or use to the contrary notwithstanding. Assignor hereby grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.

6.    No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property,

Countryside, Illinois                                    -5-

including without limitation the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9.    Cross Default

A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.    Certain Definitions

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.    Notices

All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

| | |
|---|---|
| Assignee: | The Paul Revere Life Insurance Company<br>c/o The Paul Revere Investment Management Corporation<br>18 Chestnut Street<br>Worcester, Massachusetts 01608-1528<br>Attention:  Real Estate Investments |
| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention:  Timothy J. Boyce, Esq. |
| Assignor: | Circuit Investors - Carmax Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention:  Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

12.    Miscellaneous

a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

b.    In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account

Countryside, Illinois

-7-

to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

c.    This Assignment shall be governed and construed under the internal laws of the State in which the Property is located.

d.    Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder.  The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

e.    The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment.  In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.    If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.    Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee.  In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.    All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.    All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.    Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.    Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder.  Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent

Countryside, Illinois                                    -8-

is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage.  In no event shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.   ·  If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

m.    This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

n.    This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor as of the 27th day of February, 1995.

ASSIGNOR:

CIRCUIT INVESTORS-CARMAX LIMITED PARTNERSHIP,
a Texas limited partnership

By:    CIRCUIT GENERAL PARTNER #4, INC.,
       a Texas corporation, General Partner

       By: _____
           Gil J. Besing, President

STATE OF Texas            )
                         ) ss.
COUNTY OF Dallas         )

The foregoing instrument was acknowledged before me the 3 day of February, March
1995, by GIL J. BESING, President of Circuit General Partner #4, Inc., a Texas corporation,
general partner on behalf of Circuit Investors-Carmax Limited Partnership, a Texas limited
partnership.

_____
Notary Public

(Seal, if any)

TERIE L. RASMUSSEN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-12-98

_____
Title (and Rank)

My Commission Expires: 3 12 98

This document was prepared by
and after recording return to:

Adam F. Zweifler, Esq.
Pepe & Hazard
One Goodwin Square
Hartford, CT 06103
(203) 522-5175

I:\af\1270956-061.ASG

95160768

EXHIBIT A

A PORTION OF LOT 10 IN SCHOOL TRUSTEES' SUBDIVISION OF SECTION
16, TOWNSHIP 38 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY, ILLINOIS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF A LINE THAT IS 484.00 FEET EAST
OF THE WEST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION, WITH A
LINE THAT IS 672.65 FEET SOUTH OF AND PARALLEL WITH THE NORTH
LINE OF SAID LOT 10; THENCE SOUTH 89 DEGREES 51 MINUTES 00
SECONDS EAST ON SAID PARALLEL LINE, 428.00 FEET TO A POINT IN A
LINE THAT IS 912.00 FEET EAST OF SAID WEST LINE OF THE SOUTHEAST
QUARTER; THENCE SOUTH 00 DEGREES 00 MINUTES 17 SECONDS EAST ON
SAID LINE 466.49 FEET TO A POINT IN THE NORTHWESTERLY LINE OF
JOLIET ROAD, SAID LINE BEING 33 FEET NORTHWESTERLY OF AND
PARALLEL WITH THE CENTERLINE THEREOF; THENCE SOUTH 60 DEGREES 55
MINUTES 17 SECONDS WEST ON SAID LINE, 343.31 FEET TO A POINT IN
THE LINE THAT IS 612 FEET EAST OF AND PARALLEL WITH SAID WEST
LINE OF THE SOUTHEAST QUARTER; THENCE NORTH 00 DEGREES 00 MINUTES
SECONDS 00 SECONDS EAST ON SAID PARALLEL LINE 404.91 FEET TO A
POINT IN A LINE THAT IS 901.87 FEET SOUTH OF AND PARALLEL WITH
THE SAID NORTH LINE OF LOT 10; THENCE NORTH 89 DEGREES 51 MINUTES
00 SECONDS WEST ON SAID LINE 128.00 FEET TO A POINT IN A LINE
THAT IS 484.00 FEET EAST OF AND PARALLEL WITH THE WEST LINE OF
THE SOUTHEAST QUARTER; THENCE NORTH 00 DEGREES 00 MINUTES 00
SECONDS EAST ON SAID LINE, 229.22 FEET TO THE POINT OF BEGINNING,
IN COOK COUNTY, ILLINOIS.

STREET ADDRESS:        9950 JOLIET ROAD
                       COUNTRYSIDE, IL

                       P.I.N. 18-16-400-0000

I\AF2\27098\6-067.EXHA\022595\1b

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc., as tenant, dated February 22, 1995.

Ref:\27098\6-061_ASG\030295\lb

Countryside, Illinois

*I95-0332* (4)

**11330926**

**12664P1895**

\109006

1995 MAR -6 P 3:44.5
12664P1895
RECORDED BOOK   PAGE
DIRECTOR OF RECORDS

## ASSIGNMENT OF LEASES AND RENTS

FILE TYPE *Lgmt FG*

TAB *Misc (FGR Dis)*

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by **CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP**, a Pennsylvania limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608-1528 ("Assignee").

1.     Purpose

       This Assignment is made in connection with a loan in the original principal amount of up to Three Million Eight Hundred Fifty-Four Thousand Four Hundred Nineteen and 00/100 ($3,854,419.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing:

       a.     *Payment of the indebtedness evidenced by that certain promissory note of even* date in the maximum principal amount as indicated above (the "Note") and secured by a deed of trust, assignment of leases and security agreement of even date (the "Deed of Trust") which encumbers Assignor's interest in a certain parcel of land located at 18701 E. 39th Street, Independence, Missouri (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

       b.     Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Deed of Trust and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Deed of Trust and this Assignment, being collectively referred to herein as the "Loan Documents").

       c.     The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

2.     Grant

       FOR VALUE RECEIVED, Assignor hereby absolutely grants, transfers and assigns to Assignee all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits and tenant security deposits arising from said leases and any extensions and renewals thereof; and together with all rents, income, issues and profits due or to become due from the Property, and from any and all leases for the use and occupancy of the Property or any

Independence, Missouri

EXHIBIT
**C**

I2664P1896

not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute, present and unconditional assignment from Assignor to Assignee and not merely the passing of a security interest. All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

3.      Authorization to Lease

        Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4.      Assignor's Agreements

        Assignor hereby represents, covenants and agrees:

        a.      Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

        b.      There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

        c.      None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

        d.      Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring. Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any other monetary inducements must be noted on the rent roll. Assignee has previously received

Independence, Missouri                              -2-

I2664P1897

a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

   e. Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed. Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period. The Leases shall be approved upon the satisfaction of the following requirements:

     (i) The Leases must be in form and substance satisfactory to Assignee.

     (ii) The tenants thereunder must be satisfactory to Assignee.

     (iii) The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

   f. Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

   g. Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed. Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

   h. No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

   i. Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

   j. This Assignment is irrevocable.

   k. Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict

Independence, Missouri            -3-

I2664P1898

with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.     Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder.  Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.     All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.     Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.     The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.     Assignee's Remedies Upon Default

Upon or at any time after an Event of Default (as such term is defined in the Deed of Trust) by Assignor, or a default by Assignor as lessor under any Lease beyond any applicable cure and grace period, Assignee, without in any way waiving such default, may at its option, enter and take possession of the Property, in which event Assignee shall have the right to have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may seem proper to Assignee, and to do all things required of or permitted to the landlord under said Leases (including the right to demand, sue for and otherwise collect all Rents), and to apply such Rents (to the extent required of or permitted to the landlord under the Leases) to the payment of: (a) the cost of such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, and keeping the same properly insured and (b) all taxes, charges, claims, assessments, water rents and any other liens which may be prior to this Assignment or the Loan Documents, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby, together with all costs and reasonable attorneys' fees, in such order of priority as to any of such items, as Assignee in its sole discretion may determine, statute, law, custom or use to the contrary notwithstanding.  Assignor hereby grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.

I2664P1899

6.    No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the Deed of Trust), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

I2664P190n

9.   Cross Default and Cross Collateralization

a.   A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.   Certain Definitions

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Deed of Trust," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Deed of Trust," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Deed of Trust, this Assignment and the Loan Documents. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.   Notices.  All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

        Assignee:        The Paul Revere Life Insurance Company
                        c/o The Paul Revere Investment Management Corporation
                        18 Chestnut Street
                        Worcester, Massachusetts 01608-1528
                        Attention:  Real Estate Investments

I2664P1901

| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention: Timothy J. Boyce, Esq. |
|---|---|
| Assignor: | Circuit Investors #5 - Montgomeryville Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention: Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

## 12.   Miscellaneous

a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

b.    In the event of foreclosure of the Deed of Trust by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Deed of Trust; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

c.    This Assignment shall be governed and construed under the internal laws of the State in which the Property is located.

d.    Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder.  The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Deed of Trust shall not cure such default nor affect such proceedings or any sale pursuant thereto.

Independence, Missouri

I2664P1902

e.     The full payment of the Note secured by the Deed of Trust and full performance of the Deed of Trust and the duly recorded release and discharge of the Deed of Trust shall constitute simultaneous release and discharge of this Assignment. In case of any conflict between the terms of this Assignment and the terms of the Deed of Trust, the terms of the Deed of Trust shall prevail.

f.     If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.     Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.     All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.     All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.     Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.     Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder. Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Deed of Trust. In no event shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.     If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Deed of Trust.

m.     This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Independence, Missouri                    -8-

I2664P1903

n.    This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor on this 27th day of February, 1995.

ASSIGNOR:
CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED
PARTNERSHIP, a Pennsylvania limited partnership

By:    CIRCUIT GENERAL PARTNER #5-PENNSYLVANIA,
INC., a Pennsylvania corporation, General Partner

By:
Name:    Gil J. Besing

STATE OF Texas    )
    ) ss.
COUNTY OF Dallas    )

On this 27 day of February, 1995, before me, the undersigned, a Notary Public in and for said state, personally appeared Gil J. Besing, who being by me duly sworn did say that he is the President of Circuit General Partner #5-Pennsylvania, Inc., a Pennsylvania corporation as general partner of Circuit Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership, and that the within Assignment of Leases and Rents was signed in behalf of said corporation by authority of its board of directors, and acknowledged said instrument to be the free act and deed of said corporation and said partnership for the purposes therein stated and that said corporation has no corporate seal.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.

Lisa Wooldridge
Printed Name:
Notary Public in and for said State
Commissioned in _____ County

[SEAL]

My commission expires:

_____

LISA WOOLDRIDGE
Notary Public, State of Texas
My Commission Expires
MAY 23, 1996

Independence, Missouri    -9-

I2664P1904

## EXHIBIT A

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri.

AND ALSO DESCRIBED AS FOLLOW:

ALL OF LOT 2, <u>INDEPENDENCE CENTER</u>, A SUBDIVISION IN INDEPENDENCE, JACKSON COUNTY, MISSOURI, BEING DESCRIBED USING STATE PLANE BEARINGS AT KANSAS CITY CONTROL MONUMENT NO. JA-66, AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 2; THENCE S 02 DEGREES 14 MINUTES 30 SECONDS W, ALONG THE EAST LINE OF SAID LOT, 142.05 FEET; THENCE SOUTHWESTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 20.00 FEET AND TANGENT TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 26.73 FEET; THENCE SOUTHWESTERLY, ALONG THE SOUTHERLY LINE OF SAID LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 677.00 FEET AND TANGENT TO THE LAST DESCRIBED CURVE, AN ARC DISTANCE OF 550.29 FEET; THENCE N 57 DEGREES 45 MINUTES 30 SECONDS W, CONTINUING ALONG SAID LINE, 51.05 FEET; THENCE NORTHERLY, ALONG THE WESTERLY LINE OF SAID LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 231.00 FEET, AND AN INITIAL TANGENT BEARING OF N 14 DEGREES 26 MINUTES 45 SECONDS E, AN ARC DISTANCE OF 49.20 FEET; THENCE N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 319.29 FEET; THENCE NORTHEASTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 95.00 FEET, AND TANGENT TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 79.48 FEET (PLAT = 80.20 FEET); THENCE S 89 DEGREES 40 MINUTES 03 SECONDS E, ALONG THE NORTH LINE OF SAID LOT, 219.84 FEET (PLAT = 219.85 FEET); THENCE N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 10.00 FEET; THENCE S 87 DEGREES 45 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 232.36 FEET TO THE POINT OF BEGINNING.

CONTAINING 134.714 SQ.FT. OR 3.0926 ACRES.

\circuit\ccp7\legal.mo

I2664P1905

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc., as tenant, dated February 22, 1995.

Rafx\27098\6-057.assn\022695\lc

Independence, Missouri

11330926

CHICAGO TITLE INSURANCE COMPANY
ATTN: DEAN A. HUTCHISON
P. O. BOX 26370
KANSAS CITY, MISSOURI 64196

● ● *109007*

*Legal*

CLERK OF COURT
LAFAYETTE, LA
FILE NO.          FILED AND RECORDED      *TAB*    *N/D*
95-010879         95 APR -4 ... 3:38

## ASSIGNMENT OF LEASES AND RENTS

O.C. "DAN" GUILLIOT

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made as of the date hereinafter set forth by CIRCUIT INVESTORS -MATTESON LIMITED PARTNERSHIP, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation (T.I.N. 04-1768571) having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

1.    Purpose

This Assignment is made in connection with a loan in the original principal amount of up to THREE MILLION SIX HUNDRED SEVENTY-FOUR THOUSAND SIX HUNDRED SEVENTY-NINE and 00/100 ($3,674,679.00) Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing the following obligations and indebtedness, up to a maximum principal amount outstanding at any one or more times, from time to time, not to exceed U.S. $50,000,000.00 (the "Maximum Amount").

a.    Payment of the indebtedness evidenced by that certain promissory note of even date in the aggregate maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 5264 Johnson Street, Lafayette, Louisiana (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

b.    Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

c.    The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

2.    Grant

FOR VALUE RECEIVED, and in order to secure the payment and performance of said obligations and indebtedness, up to the Maximum Amount, to the fullest extent permitted by La. R.S. 9:4401, Assignor hereby assigns, transfers, pledges and hereby grants to Assignee a continuing security interest in and to all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any

Lafayette, Louisiana

EXHIBIT
D

portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits, revenues, royalties, bonuses, accounts receivable, advance rentals and tenant security deposits arising from said leases and any extensions and renewals thereof, further including Assignor's rights to enforce such leases and to receive and collect payments and proceeds thereunder; and together with all rents, income, issues and profits due or to become due from the Property, and from any and all leases for the use and occupancy of the Property or any part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute assignment from Assignor to Assignee upon the occurrence of an Event of Default (as such term is defined in the Mortgage). All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

3.      Authorization to Lease

        Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4.      Assignor's Agreements

        Assignor hereby represents, covenants and agrees:

        a.      Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

        b.      There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

        c.      None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

Lafayette, Louisiana                          -2-

d.      Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring.  Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any other monetary inducements must be noted on the rent roll.  Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

e.      Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed.  Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period.  The Leases shall be approved upon the satisfaction of the following requirements:

(i)      The Leases must be in form and substance satisfactory to Assignee.

(ii)     The tenants thereunder must be satisfactory to Assignee.

(iii)    The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

f.      Except as already provided on **Exhibit B**, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

g.      Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed.  Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

h.      No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

i.      Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything

to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

  j.    This Assignment is irrevocable.

  k.    Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

  l.    Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder. Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

  m.    All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

  n.    Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

  o.    The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.    <u>Assignee's Remedies Upon Default</u>

  Upon or at any time after an Event of Default (as such term is defined in the Mortgage) by Assignor, or a default by Assignor as lessor under any Lease beyond any applicable cure and grace period, Assignee, without in any way waiving such default, may at its option, enter and take possession of the Property to the fullest extent allowed by law, in which event Assignee shall have the right to have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may seem proper to Assignee, and to do all things required of or permitted to the landlord under said Leases (including the right to demand, sue for and otherwise collect all Rents), and to apply such Rents (to the extent required of or permitted to the landlord under the Leases) to the payment of: (a) the cost of such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, and keeping the same properly insured and (b) all taxes, charges, claims, assessments, water rents and any other liens which may be prior to this Assignment or the Loan Documents, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby, together with all costs and reasonable attorneys' fees, in such order of priority as to any of such items, as

Lafayette, Louisiana                    -4-

Assignee in its sole discretion may determine, statute, law, custom or use to the contrary notwithstanding. Assignee shall have the additional right, at any time and for any reason, whether or not an Event of Default exists, to directly collect and receive the benefit of all obligations and all proceeds and/or payments assigned to Assignee under this Assignment, as such amounts and/or obligations become due and payable. In order to permit the foregoing, from and after an Event of Default Assignor unconditionally agrees to deliver to Assignee, immediately following demand, any and all records and other documentation, in the form requested by Assignee, with regard to the Leases. Assignee shall have the further right, where appropriate and within Assignee's sole discretion, to file suit, either in its own name or in the name of Assignor, to enforce any obligations and/or to collect any and all such proceeds and payments that may now and in the future be due and owing under the Leases. Assignor hereby grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.

Assignee's remedies upon any Event of Default shall be cumulative in nature and nothing under this Assignment shall be construed as to limit or restrict the options and remedies otherwise available to Assignee following an Event of Default, or to in any way limit or restrict the rights and ability of Assignee to proceed directly against Assignor and/or against any co-makers, guarantors, sureties and/or endorsers of the Notes, and/or to proceed against any other collateral directly or indirectly securing said indebtedness.

6.    No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the

Lafayette, Louisiana                    -5-

Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9.    Cross Default

A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.    Certain Definitions

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.    Notices.  All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

| | |
|---|---|
| Assignee: | The Paul Revere Life Insurance Company<br>c/o The Paul Revere Investment Management Corporation<br>18 Chestnut Street<br>Worcester, Massachusetts 01608-1528<br>Attention:  Real Estate Investments |
| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention:  Timothy J. Boyce, Esq. |
| Assignor: | Circuit Investors-Matteson Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention:  Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

12.    Miscellaneous

       a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

       b.    In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

Lafayette, Louisiana                                -7-

c.    This Assignment shall be governed and construed under the internal laws of the State of Louisiana, without giving effect to the conflicts of law provisions thereof.

d.    Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder. The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

e.    The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment. In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.    If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.    Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.    All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.    All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.    Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.    Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder. Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage. In no event

Lafayette, Louisiana                          -8-

shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.      If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

m.      This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

n.      This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor on this 27th day of February, 1995.

ASSIGNOR:

CIRCUIT INVESTORS-MATTESON LIMITED PARTNERSHIP,
a Texas limited partnership

By:    CIRCUIT GENERAL PARTNER #4, INC., a Texas
       corporation, General Partner

       By: _____

       Title: _Pher̄sipenb_____

STATE OF _Texas_
COUNTY OF _Dallas_

BE IT KNOWN, that on this _27_ day of February, 1995, before me, the undersigned Notary Public, duly commissioned, qualified and sworn within and for the State and County aforesaid, personally came and appeared _Gilil. Besing_ to me known to be the identical person who executed the above and foregoing instrument, who declared and acknowledged to me, Notary, in the presence of the undersigned competent witnesses, that he is the _President_ Circuit General Partner #4, Inc., a Texas corporation as general partner of Circuit Investors-Matteson Limited Partnership, a Texas limited partnership, that as such duly authorized officer, by and with the authority of the Board of Directors of said Corporation, he signed and executed the foregoing instrument, as his free and voluntary act and deed of said Corporation, for and on behalf of said Corporation, for the uses, purposes and benefits therein expressed.

WITNESSES:



Terie L. Rasmussen

NOTARY PUBLIC
MY COMMISSION EXPIRES: _3-12-98_

TERIE L. RASMUSSEN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-12-98

Ref:\27098\6-059.ASG\022695\lb

Lafayette, Louisiana                    -10-

## EXHIBIT A

### MAIN PARCEL

A certain tract of land containing 3.504 acres, known as Lot 2B, Acadiana Square Shopping Center, located in Section 68, Township 10 South, Range 4 East, City of Lafayette, Lafayette Parish, Louisiana, being more fully described as follows:

Commencing at the projected intersection of the more easterly right-of-way of Fountainhead Drive and the more northerly right-of-way of Johnston Street (U.S. Highway 167), proceed along said right-of-way of Johnston Street a bearing of North 41 degrees 36 minutes 31 seconds East, a distance of 704.00 feet to a point; thence continue along said right-of-way of Johnston Street a bearing of North 41 degrees 35 minutes 16 seconds East, a distance of 646.20 feet to a point; thence proceed along a bearing of North 48 degrees 25 minutes 04 seconds West, a distance of 247.67 feet to a point; thence proceed along a bearing of North 13 degrees 41 minutes 34 seconds West, a distance 23.34 feet to a point, said point hereinafter to be known as the Point of Beginning; thence proceed along a bearing of South 74 degrees 26 minutes 08 seconds West, a distance of 248.86 feet to a point; thence proceed along a bearing of North 15 degrees 33 minutes 52 seconds West a distance of 225.06 feet to a point; thence proceed along a bearing of South 74 degrees 26 minutes 08 seconds East a distance of 8.15 feet to a point; thence proceed along a bearing of North 15 degrees 33 minutes 52 seconds West, a distance of 379.64 feet to a point on the southerly right-of-way of Target Loop; thence proceed along the southerly right-of-way of Target Loop a bearing of North 75 degrees 32 minutes 27 seconds East a distance of 260.35 feet to a point; thence proceed along a bearing of South 13 degrees 41 minutes 34 seconds East a distance of 600.00 feet to the Point of Beginning; all as shown on the current Replat of Acadiana Square Shopping Center, dated February 13, 1994, last revised December 12, 1994, by C. H. Fenstermaker & Associates, Inc., a copy of which is recorded under Act No. 94-045525 in the Lafayette Parish Court House, Lafayette, Louisiana.

### SERVITUDE PARCEL

That certain non-exclusive servitude interest acquired pursuant to Reciprocal Easement and Operation Agreement executed by CAP-Lafayette Investors Limited Partnership, Toys "R" Us, Inc. and Lowe's Home Center, Inc., dated April 25, 1990, recorded as File No. 90-12433; as amended by First Amendment to Reciprocal Easement and Operation Agreement, dated January 20, 1993, recorded as File No. 93-003289; as further amended by Second Amendment to Reciprocal Easement and Operation Agreement, dated January 31, 1994, recorded as File No. 94-010707.

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc., as tenant, dated
February 22, 1995.

Ref:\2709816-059.ASG\022695\lb

Lafayette, Louisiana

982003255

Filed for record on ~~May 18~~ 19 94 @ 4:09 P  M in Boone Co. Mo.
Document 10782 recorded ... book 1052 page 628  Betty Johnson, Recorder of Deeds

68

I4

## ASSIGNMENT OF LEASES AND RENTS

(Future Advances Secured Hereby Pursuant to Section
443.055 Revised Statutes of Missouri up to
a Maximum Principal Amount of $7,000,000.00)

THIS ASSIGNMENT OF LEASES AND RENTS, made as of the date last
below written by COLUMBIA PLAZA SHOPPING CENTER VENTURE, a general
partnership organized and existing under the laws of the State of
Missouri, (hereinafter referred to as the "Borrower"), having its
principal place of business at c/o Walters Properties, 2101 West
Broadway, Columbia, Missouri 65203 to FIRST BANK A SAVINGS BANK, a
savings bank (hereinafter referred to as "Lender"), having an
office at 135 North Meramec, St. Louis, Missouri 63105;

WITNESSETH:

WHEREAS, Borrower and Lender have executed a Construction Loan
Agreement of even date herewith (the "Loan Agreement") pursuant to
which Lender has agreed to make a loan to Borrower in the aggregate
principal amount of Five Million Four Hundred Fifty Thousand
Dollars ($5,450,000.00) (the "Loan") on the terms and conditions
set forth in the Loan Agreement and for the purposes set forth
therein;

WHEREAS, as evidence of the indebtedness incurred under the
Loan, Borrower has executed and delivered to Lender a Note of even
date herewith, payable to Lender in the original principal amount
of Five Million Four Hundred Fifty Thousand Dollars ($5,450,000.00)
(the "Note"), payment of which is secured by a Deed of Trust and
Security Agreement of even date herewith (the "Mortgage") from
Borrower covering the real estate described in Exhibit A, attached
hereto and incorporated hereto (the "Property"), as well as other
security; and

WHEREAS, the execution and delivery of this Assignment is a
condition precedent to the performance by the Lender of its
obligations under the Loan Agreement;

NOW, THEREFORE, in consideration of the recitals set forth
above and incorporated herein, and for other good and valuable
consideration, the receipt and sufficiency of which is hereby
acknowledged, Borrower hereby covenants agrees as follows:

1.   Assignment.   Borrower hereby sells, assigns, transfers,
conveys, and sets over unto Lender, its successors and assigns, all
of the right, title, and interest of Borrower in, to and under (i)
any and all leases or agreements for the use or occupancy of the
whole or any part of the Property, whether such leases and
agreements are now or at any time hereafter existing (such Leases
or agreements being hereinafter collectively called "Leases" or
singularly a "Lease"), together with all amendments and supplements

V:\097\09334\COLLEAC.AGR

:::01



69

to and renewals and extensions of the Leases at any time made, and (ii) all rents, earnings, issues, income, and profits arising from the Property and/or from said Leases and all other sums due or to become due under and pursuant thereto, and (iii) any and all guarantees under any of said Leases, and (iv) any and all proceeds payable under any policy of insurance covering loss of rents for any cause, and (v) any and all rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases, including, but not by way of limitation:

1.1.    The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, moneys, and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

1.2.    The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

1.3.    The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to the Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Borrower;

1.4.    The right to make all waivers and agreements, to give and receive all notices, consents, and releases, and to take such action upon the happening of a default under any Lease as Borrower might have taken, including the right to commence, conduct, and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

1.5.    To do any and all other things whatsoever which the Borrower is or may become entitled to do under or by virtue of the Leases or any of them;

ALL OF THE ABOVE BEING SUBJECT, however, to the right and license hereinafter granted by Lender to Borrower.

This Assignment is made for the purpose of securing: (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest and charges as may accrue thereon, either before or after maturity thereof, of the Note; (b) the full and prompt payment and performance of any and all obligations of Borrower to Lender hereunder and under the Loan Agreement, the Mortgage, and any other agreements, documents, or instruments now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note (the Note, the Loan Agreement, the Mortgage and said other agreements, documents or instruments, together with all renewals, amendments, extensions, consolidations and modifications thereof, are hereinafter collectively referred to as the "Loan Documents" and individually referred to as a "Loan

V:\093\093341COLLEA2.AGR                -2-

1081

70

Document"); and (c) any and all other indebtedness, however incurred, which may now or hereafter be due and owing from Borrower to Lender now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether expressed or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations and extensions thereof. The foregoing amounts, obligations, and indebtedness shall not be deemed extinguished by virtue of the fact that the Note may at any time not evidence a debt actually outstanding. This Assignment shall remain in full force and effect until (A) the payment in full of all advances of principal and interest on the Note, and (B) the payment and performance and observance by Borrower of all of Borrower's duties, obligations, and indebtedness under this Assignment, the Mortgage, the Loan Agreement and the others of the Loan Documents.

2.   Representations and Warranties.

Borrower represents and warrants to Lender that:

2.1.   Borrower has good right and authority to make this Assignment;

2.2.   Borrower has not heretofore alienated, assigned, pledged, or otherwise disposed of or encumbered any Leases, or any of the sums due or to become due thereunder or otherwise assigned hereunder;

2.3.   Borrower has not performed any acts or executed any other instruments which might prevent Lender from deriving the full benefits of any of the terms and conditions of this Assignment or which would limit Lender in enjoying such benefits;

2.4.   Borrower has not accepted, anticipated, or collected rent or any other payments due or to become due under any existing Lease for any period subsequent to the month in which such rent or other payment has become due and payable;

2.5.   Borrower has not executed or granted any amendment or modification of any existing Lease, either orally or in writing, except as has been disclosed in writing to Lender; and

2.6.   There is no default under any Lease now existing and no event has occurred and is continuing which, with the lapse of time or the giving of notice or both, would constitute an event of default under any Lease.

3.   Covenants.   Borrower hereby covenants and agrees:

3.1.   Promptly to observe, perform, and discharge the obligations and conditions of this Assignment and any and all

1081

71

Leases and also the Loan Agreement, the Note, the Mortgage, and the others of the Loan Documents;

3.2.  To enforce the performance of each and every obligation, term, covenant, condition, and agreement to be performed by any tenant pursuant to the Leases;

3.3.  To appear in and defend any action or proceeding arising under or in any manner connected with the Leases, or the obligations, duties, or liabilities of Borrower and any tenant thereunder and upon request by Lender, to do so in the name and behalf of Lender, but at the expense of Borrower; and

3.4.  To provide Lender with a copy of each new Lease or sublease executed by Borrower and copies of all extensions, renewals, or modifications of any Lease.

4.  Negative Covenants.  Borrower also covenants and agrees that it will not, without in each instance obtaining the prior written consent of Lender:

4.1.  Enter into, renew, extend, or modify any Lease for space for a term of five (5) years or more;

4.2.  Cancel any Lease nor accept a surrender thereof;

4.3.  Reduce the rent payable under any Lease or accept payment of any installment of rent in advance of the due date thereof;

4.4.  Change, amend, alter, or modify any Lease or any of the terms or provisions thereof, nor grant any concession in connection therewith; provided that, if Borrower notifies Lender of any such proposed change, amendment, alteration, or modification, and Lender does not respond within thirty (30) days after receipt of such notice by Lender, then Lender shall be deemed to have consented to such change, amendment, alteration, or modification;

4.5.  Consent to the release of the obligations of a tenant or guarantor under any Lease;

4.6.  Assign, pledge, encumber, or otherwise transfer any Lease or Borrower's right thereunder except to the Lender;

4.7.  Consent to an assignment of any tenant's interest under any Lease or to a subletting of the premises described therein;

4.8.  Incur any indebtedness for borrowed money or otherwise to any tenant or guarantor of any Lease if such indebtedness may under any circumstances be availed of by such tenant or guarantor as an offset against the rent or other payments due thereunder.

V:\093\09334\COLLEA2.AGR                    -4-

1081

72

Any of the above acts, if done without the consent of Lender,
shall be, at the option of Lender, without any force or effect as
against Lender.

5.  Further Assurances.  Borrower also covenants and agrees that
Borrower will, upon the request of Lender, execute and deliver to
Lender such further instruments and do and perform such other acts
and things as Lender may deem necessary or appropriate to make this
Assignment and the various covenants of Borrower herein contained
effective and to more effectively vest in and secure to Lender the
sums due or hereafter to become due under the Leases.   This
covenant and agreement shall include, without limitation, the
execution of such additional assignments as shall be deemed
necessary by Lender to effectively vest in and secure to Lender all
rents, income, and profits from any and all Leases.   Borrower
further agrees that it will, from time to time, upon demand
therefor, deliver to Lender an executed counterpart of each and
every Lease then affecting all or any portion of the Property.

6.  Events of Default.  The term "Event of Default," whenever used
in this Assignment, shall mean any one or more of the following
conditions or events:

    6.1.  Failure by Borrower to pay as and when due any payable
any interest on or principal of or other sum payable under the Note
subject to applicable notice and cure provisions provided therein;
or

    6.2.  Failure by Borrower to observe, perform, or discharge
any obligation, covenant, condition, or agreement of this
Assignment, and the continuance of such failure for a period of
thirty (30) days after written notice thereof from Lender or such
longer period not to exceed seventy-five (75) days so long as
Borrower promptly commences and diligently pursues the cure to
completion; or

    6.3.  Any representation or warranty of Borrower in this
Assignment shall prove to have been false or incorrect in any
material respect upon the date when made; or

    6.4.  The occurrence of any "Event of Default" as defined in
any of the Loan Documents.

7.  Payment of Rents.  Borrower hereby consents to and irrevocably
authorizes and directs the tenants under the Leases and any
successor to the interest of said tenants, upon demand and notice
from Lender of Lender's right to receive the rents and other
amounts under such Leases, to pay to Lender the rents and other
amounts due or to become due under the Leases, and said tenants
shall have the right to rely upon such demand and notice from
Lender and shall pay such rents and other amounts to Lender without
any obligation or right to determine the actual existence of any

V:\09J\091\96COLLEA2.AGR                       -5-

1081

73

Event of Default or event claimed by Lender as the basis for
Lender's right to receive such rents and other amounts,
notwithstanding any notice from or claim of Borrower to the
contrary. Borrower shall have no right or claim against any tenant
for any such rents and other amounts so paid by a tenant to Lender.

Notwithstanding the foregoing provisions, which shall be
construed as making and establishing a present and absolute
transfer and assignment of the Leases and the rents, earnings,
issues, income, and profits arising therefrom, so long as no Event
of Default shall exist and so long as no event shall exist which by
lapse of time or service of notice, or both, has or would become an
Event of Default thereunder or hereunder. Borrower shall have the
right and license to occupy the Property as landlord or otherwise,
and to collect, use, and enjoy the rents, issues, and profits and
other sums, only as the same become due under the provisions of
such Lease, and to enforce the covenants of the Leases.

8.  **Remedies.**  Upon the occurrence of an Event of Default, Lender,
at its option, shall have the complete right, power, and authority:

8.1.  To terminate the right and license granted to Borrower
in the paragraph immediately preceding and thereafter, without
taking possession, to demand, collect, and receive and sue for the
rents and other sums payable under the Leases and, after deducting
all necessary and proper costs and expenses (including attorneys'
fees) of collection as determined by Lender, to apply the net
proceeds thereof upon any indebtedness secured hereby;

8.2.  To declare all sums secured hereby immediately due and
payable. and, at its option. to exercise all of the rights and
remedies contained herein, in the Loan Agreement, the Note, in the
Mortgage and in any of the other Loan Documents;

8.3.  Without regard to the adequacy of the security, with or
without process of law, personally or by agent or attorney, or
under the Mortgage, or by a receiver to be appointed by court, then
and thereafter to enter upon, take and maintain possession of and
operate the Property, or any part thereof, together with all
documents, books, records, papers, and accounts relating thereto
and hold, operate, manage, and control the Property, or any part
thereof, as fully and to the same extent as Borrower could do if in
possession and in such event, without limitation and at the expense
of Borrower, from time to time, cause to be made all necessary or
proper repairs, renewals, replacements, useful alterations,
additions, betterments, and improvements to the Property, or any
part thereof, and insure and reinsure the same, and lease the
Property, or any part thereof, for such times and on such terms as
Lender deems desirable, including leases for terms expiring beyond
the maturity of the indebtedness secured by the Mortgage, and
cancel any lease or sublease for any cause or on any ground which
would entitle Borrower to cancel the same.

V:\093\09336\COLLEAL.AGR                    -6-

1031

74

Should Lender exercise the rights granted herein as specified upon the occurrence of an Event of Default, thereafter payment of all proper reasonable charges and expenses, including the just and reasonable compensation for the services of Lender's attorneys and agents in connection with the operation, management, and control of the Property and the conduct of the business thereof, and such further sums as may be sufficient to indemnify Lender from and against any liability, loss, or damage on account of any matter or thing done in good faith in pursuance of the rights and powers of Lender hereunder, Lender may, at its option, credit the net amount of income which Lender may receive by virtue of this Assignment and from the Property to any and all amounts due or owing to Lender under the terms and provisions of the Loan Agreement, the Note, this Agreement, the Mortgage and the others of the Loan Documents. The balance of such net income shall be released to or upon the order of Borrower. The manner of the application of such net income and the item which shall be credited shall be within the sole discretion of the Lender.

9.  Construction.  The acceptance by Lender of this Assignment, with all of the rights, powers, privileges, and authority so created, shall not, prior to entry upon and taking possession of the Property by Lender, be deemed or construed to constitute Lender a mortgagee in possession nor thereafter or in any event to impose any obligation whatsoever upon Lender to appear in or defend any action or proceeding relating to the Leases or the Property, or to take any action hereunder, or to expend any money or incur any expenses, or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Borrower by any tenant and not assigned and delivered to Lender or render Lender liable in any way for any injury or damage to person or property sustained by any person, firm, or corporation in or about the Property.

10.  No Waiver.  Borrower agrees that neither the collection of rents and the application thereof as provided for herein or the entry upon and taking of possession of the Property, or any part thereof, by Lender shall cure or waive any Event of Default or waive, modify, or affect any notice of the occurrence of an Event of Default hereunder or under the Loan Agreement, the Note, the Mortgage or the others of the Loan Documents, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Lender, once exercised, shall continue for so long as Lender shall elect.  If Lender shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time upon the occurrence of any subsequent Event of Default.

11.  Remedies Cumulative.  The rights and remedies of Lender hereunder are cumulative and not in lieu of, but are in addition

V:\093\09338\COLLA\AC.AGR          -7-

1031

75

to, any rights or remedies which Lender shall have under the Loan Agreement, the Note, the Mortgage, the others of the Loan Documents, or at law or in equity, and said rights and remedies may be exercised by Lender either prior to, simultaneously with, or subsequent to, any action taken hereunder. Said rights and remedies of Lender may be exercised from time to time and as often as such exercise is deemed expedient by Lender in its absolute discretion, and the failure of Lender to avail itself of any of the terms, provisions, and conditions of this Assignment or any rights granted herein for any period of time, at any time or times, shall not be construed or deemed to be a waiver of any rights under the terms hereof.

12.  **Effectiveness.**  The right of Lender to collect and receive the rents assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Lender shall, to the extent not prohibited by law, also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

13.  **Indemnity.**  Borrower agrees to indemnify and hold Lender harmless of and from and against any and all liability, loss, damage, or expense, which Lender may or might incur under or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking on the part of Lender to perform or discharge any of the terms, covenants or agreements contained in the Leases other than demands or claims arising out of the gross negligence or intentional misconduct of the Lender. Should Lender incur any such liability, loss, or damage under or by reason of this Assignment, or in the defense against any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the rate provided for in the Note subsequent to the occurrence of an Event of Default, shall be secured by this Assignment and by the Mortgage, and Borrower shall reimburse Lender therefor immediately upon demand, and upon failure of Borrower so to do, Lender may declare all sums secured hereby immediately due and payable.

14.  **Notice.**  Any provision in this Assignment requiring or permitting notice or demand or request shall be deemed satisfied by written notice personally served on Borrower or Lender (Attn: Ronald D. Koch, Senior Vice President), as the case may be, or when mailed by registered or certified mail, postage prepaid, addressed to the principal business address of Borrower or Lender, as the case may be, as set forth on the first page of this Assignment or as hereafter designated in writing as address for notice hereunder by the one party to the other. Provided, however, that any notice given by Borrower to Lender electing to terminate the operation of this Assignment as security for future advances or future obligations pursuant to Subsection 443.055.6 of the Revised

1081

76

Statutes of Missouri shall be deemed received by Lender for
purposes thereof only upon actual receipt of such notice by the
Lender, or three (3) days after mailing of such notice as certified
matter, postage prepaid to the Lender.

15.  Future Advances.  This Assignment is to be governed by Section
443.055 of the Revised Statutes of Missouri.  In the event Borrower
shall at any time deliver or cause to be delivered to Lender a
notice pursuant to Subsection 443.055.6 of the Revised Statutes of
Missouri electing to terminate the operation of this Assignment as
security for future advances or future obligations made or incurred
after the date of such notice, then upon receipt of such notice,
Lender shall have no further obligation under the Loan Agreement,
the Note, the Mortgage, this Assignment, or the others of the Loan
Documents to advance monies to or for the account of Borrower,
notwithstanding anything in the Loan Agreement, Note, the Mortgage,
this Assignment, or the others of the Loan Documents to the
contrary.  Moreover, any request by Borrower for an advance under
the Note shall constitute a certification that no such notice of
lien termination has been given by Borrower.

16.  Governing Law.  This Assignment shall be governed by the laws
of the State of Missouri.

17.  Assignment.  This Assignment shall be assignable by Lender and
all representations, warranties, obligations, covenants, powers,
and rights herein contained shall be binding upon, and inure to the
benefit of, Borrower and Lender and their respective successors and
assigns.

     IN WITNESS WHEREOF, Borrower has caused these presents to be
duly executed as of the 22nd day of April, 1994.

                    COLUMBIA   PLAZA   SHOPPING   CENTER
                    VENTURE,   a   Missouri   general
                    partnership

                    By: Walters Acquisitions, Inc. d/b/a
                        Walters Investments, Inc.,
                        General Partner

                    By: _____
                        Raul J. Walters, President

V:\093\093336\COLLEA2.AGR           -9-

77

```
                              By: Midland-Columbia Development
          ( SEAL )                 Company, L.P., General Partner

                              By: Columbia Equities, Inc.
                                  General Partner

                              By: _____
                                  Lee S. Wielansky
                                  President
```

STATE OF MISSOURI        )
                         )  SS.
COUNTY OF ~~ST. LOUIS~~ Boone )

    On this 12 day of ___May___, 1994, before me appeared
Raul J. Walters, to me personally known, who, by me being duly
sworn did say that he is the President of Walters Acquisitions,
Inc., d/b/a Walters Investments, Inc., a corporation and the said
seal affixed to the foregoing instrument is the corporate seal of
said corporation, and the said corporation is a general partner of
Columbia Plaza Shopping Center, a general partnership and said Raul
J. Walters acknowledged that he executed and sealed the same in
behalf of said corporation and said general partnership by
authority of the Board of Directors of the corporation and said
Raul J. Walters acknowledged said instrument to be the free act and
deed of said corporation and said general partnership.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed
my official seal at my office in the county or city and state
aforesaid, the day and year last above written.

                              _____
                              Notary Public WENDY NICHOLS BRECKLE

My Term Expires: April 22, 1998

STATE OF MISSOURI   )
                    )  SS.
COUNTY OF ST. LOUIS )

    On this 11th day of ___May___, 1994, before me
appeared Lee S. Wielansky, to me personally known, who, by me being
duly sworn did say that he is the President of Columbia Equities,
Inc., a corporation, and that said seal affixed to the foregoing is
the corporate seal of said corporation, and that the said

V:\091\09933\COLLEAL.AGR                -10-

1081

78

corporation is the General Partner of Midland-Columbia Development Company, L.P., a limited partnership, and that said Midland-Columbia Development Company, L.P. is a general partner of Columbia Plaza Shopping Center Venture, a general partnership, and said Lee S. Wielansky acknowledged that he executed and sealed the same on behalf of said corporation, said limited partnership, and said general partnership, by authority of the Board of Directors of the corporation and said Lee S. Wielansky acknowledged said instrument to be the free act and deed of said corporation, said limited partnership, and said general partnership.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the County and State aforesaid, the day and year last above written.

_____
Notary Public

JANE E. KELLY
NOTARY PUBLIC, STATE OF MISSOURI
MY COMMISSION EXPIRES 10/4/96
ST. LOUIS COUNTY

My Term Expires:

V:\093\09334\COLLEA2.AGR          -11-

1081

**79**

**EXHIBIT A**

LOT THREE (3) OF COLUMBIA PLAZA NORTH SUBDIVISION AS SHOWN BY THE
PLAT RECORDED IN PLAT BOOK 27, PAGE 74, RECORDS OF BOONE COUNTY,
MISSOURI

STATE OF MISSOURI)
COUNTY OF BOONE  )  SS.                                    Document No. '10781

I, the undersigned Recorder of Deeds for said county and state do
hereby certify that the foregoing instrument of writing was filed for record
in my office on the 18th day of May        , 1984 at  4 o'clock and 09:31
minutes PM and is truly recorded in Book  1081 Page  68.

Witness my hand and official seal on the day and year aforesaid.

BETTIE JOHNSON, RECORDER OF DEEDS

by                                                            deputy

1081

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | x | |
| | . | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | . | |
| | . | Case No 08-35653 (KRH) |
| Debtors. | . | |
| | x | Jointly Administered |

## CAPMARK FINANCE, INC.'S REQUEST FOR HEARING

Capmark Finance, Inc. ("Capmark"), on behalf of Bank of America National Association (Bank of America), by and through its counsel Bryan Cave LLP, hereby files its Request for Hearing on its Response to Liquidating Trust's Fifteenth Omnibus Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Late Filed Claims, And Disallowance of certain Amended Claims.) (the "Response")

Capmark filed the Response on April 6, 2011. As set forth in the Response, the objection to proof of claim 9449, 10030, 9899, 9050, 9734, 9707 (the "Claims") should be denied and the Claims should be allowed in their entirety. .

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a hearing on its Response for 2:00 p.m. on May 11, 2011 and grant such other and further relief as the Court deems just and proper.

Dated this 6th day of April, 2011.

Respectfully submitted,

**BRYAN CAVE LLP**

By:  P.J. Meitl (VA Bar No. 73215)
1155 F Street, NW, Suite 700
Washington, DC 20004
(202) 508-6043 (phone)
(202) 220-7343 (facsimile)
pj.meitl@bryancave.com

Attorney for Capmark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a true and correct copy of the foregoing was served through the Court's ECF system to all parties consenting to service through same, and on all parties listed on the attached service list by United States First Class Mail, postage prepaid.

_/s/Philip J. Meitl_____
Philip J. Meitl