IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
RICHMOND DIVISION
F                          F
I                          I
L        APR  7 2011       L
E                          E
D          CLERK           D
    US BANKRUPTCY COURT
```

In re:                          §
                                §       Chapter 11
                                §
CIRCUIT CITY STORES, INC., et al.,   §
                                §       Case No 08-35653 (KRH)
        Debtors.               §
                                §       Jointly Administered
                                §


### RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S SEVENTEENTH OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, RECLASSIFICATION OF CERTAIN MISCLASSIFIED CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS, AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)

Capmark Finance, Inc. ("Capmark") on behalf of Bank of America, National Association

(Bank of America), by and through its counsel Bryan Cave LLP, hereby files this Response and

Request for Hearing to Liquidating Trust's Seventeenth Omnibus Objection To Landlord Claims

(Reduction of Certain Partially Invalid Claims, Reclassification of Certain Misclassified Claims,

Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and

Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

1.      The Trustee for Debtors has objected to the proof of claim number 12663 (the

"Claim") filed by Capmark as special servicer for Bank of America, National Association, as

successor by merger to LaSalle Bank, National Association (f/k/a LaSalle National Bank), as

Trustee (the 'Trustee') for the Registered Holders of GMAC Commercial Mortgage Securities,

Inc., Mortgage Pass-Through Certificates, Series 1997-C1.

---

Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700, Washington DC 20004
(202) 508-6000 (phone)
*Attorney for Capmark Finance Inc.*

2.    The Claim was filed for the amount of $1,316,782,37.

3.    The Trustee holds a mortgage on the real property commonly known as 24244

U.S. Highway 19, Clearwater, Florida, 33763 (Store No. 891). The mortgagor on the property,

CHK, LLC, a California limited liability company (the "Borrower"), leased the property to

Circuit City Stores, Inc. ("Circuit City") pursuant to a written lease (the "Lease"), dated May 2,

1995, between its predecessor in interest, Harrison Bennett Properties, Inc., a Florida

corporation, as Landlord and Circuit City, as Tenant, as it may have been amended. The Lease

and the rents thereunder were assigned by the Borrower to its lender in an Absolute Assignment

of Leases and Rents, effective as of March 29, 1996 (the "Assignment of Leases and Rents").

The Assignment of Leases and Rents was subsequently conveyed by the lender to the Trustee. A

true and correct copy of the Assignment of Leases and Rents is attached hereto and incorporated

herein as Exhibit A.

4.    Circuit City rejected the Lease.

5.    With regard to proof of claim 12663 Trustee states that:

"Reduce by following amounts not supported by Debtor's books and records: (1)
$55,983.38 pre-petition rent (out of 75,778.56 claimed); (2) $50,333.47 rejection
damages (out of 1,212,453.44 claimed); (3) $10,850.15 other insurance (out of
$10,850.15 claimed); (4) 2,442.67 other damages (out of $2,442.67 claimed).

Reduce by the following amounts which were amended by subsequent claims that are
separately objected to: (1) $15,257.55 attorneys fees amended by claim #14346 and re-
classified as administrative."

6.    Claim 14346, however, is not a valid claim because it was filed after CHK, LLC

transferred its claim to Bank of America. (Ex. B).

7.    Accordingly, Trustee's objection is insufficient.

8.      Trustee's objection is further insufficient because it states in a conclusive manner that certain amounts should be reduced because it is not supported by Debtor's books and records.

9.      Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr P. 3001(f).

10.     After a creditor has timely and properly filed a proof of claim, the Debtor must produce substantial evidence to rebut this prima facie evidence. See in re Hemingway Transp. Inc. 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence"); In re Harford Sands, Inc. 372 F.3d 637,640-41 (4th Cir. 2004) (Creditor's filing of proof of claim constitutes prima facie evidence of amount and validity of claim, and burden is on debtor to object to claim and to introduce evidence to rebut its presumptive validity); In re Gran, 964 F.2d 882, 827 (8th Cir. 1992) ("The objection party must then produce evidence rebutting the claimant or else the claimant will prevail.")

11.     In this case, the Claim was filed prior to the Bar Date and in accordance with the Federal Rules of Bankruptcy Procedure and provides sufficient documentary support for the Claim and the calculation of the Claim amount. The Objection does not challenge the basis for the Claim or provide any evidence whatsoever to supports its objection to the calculation of the Claim amount.

12.     The Debtors bears the burden of proof for the disallowance of any portion of the Claims. See In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y

1995) Because Trustee for Debtors has produced no evidence whatsoever in support of the proposed reductions, he has failed to meet his burden of proof.

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the Claim; (b) allow the Claim as provided in Capmark's proof of claim; and (c) grant Capmark such other and further relief as this Court deems appropriate under the circumstances.

Dated: April 6, 2011

                                        BRYAN CAVE LLP

                            By:    /s/  Philip J. Meitl_____
                                   Philip J. Meitl (VA Bar No. 73215)
                                   Bryan Cave LLP
                                   1155 F Street NW, Suite 700,
                                   Washington DC 20004
                                   (202) 508-6000 (phone)

                                   *Attorney for Capmark Finance Inc.*

                    **CERTIFICATE OF SERVICE**

The undersigned hereby states that on the 6th day of April, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC

20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

_/s/ _Philip J. Meitl_____
Philip J. Meitl



I C 3 0 8 3 3

**Doc Type Group**



L e g a l    D o c u m e n t s

**Document Type**



A s s i g n m e n t    o f    L e a s e s    a n d    R e n t s

**Loan Number**



9 8 2 0 0 3 7 2 6

**Library**



A

**Doc Date**



0 3 / 2 9 / 9 6

**Class**



S e r v i c i n g

**HEADER**



EXHIBIT

**A**



N

User : FISLAM

INST # 96-095165

AP~   , 1996   3:35PM

PINELLAS COUNTY FLA.
OFF.REC.BK 9302   PG 1148

This Instrument was prepared by
and should be returned to:
Michael J. Sullivan, Esquire
Honigman Miller Schwartz and Cohn
390 North Orange Avenue, Suite 1300
Post Office Box 2471
Orlando, Florida 32802-2471

/109032

FILE TYPE

TB3

```
2C059162 SSS   04-05-1996 15:22:15
01 AGM-HARRISON BENNETT PROP
RECORDING          1         $46.50

                       TOTAL:      $46.50
           CHECK AMT. TENDERED:    $46.50
                      CHANGE:       $.00
```

01 RECORD
REC  46.50
DS
INT
FEES
MTF
P/C
REV
TOTAL 46.50

## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

**KNOW ALL MEN BY THESE PRESENTS THAT:**

On this 29th day of March, 1996, HARRISON BENNETT PROPERTIES, INC., a Florida corporation, whose address is 14502 North Dale Mabry, Suite 200, Tampa, Florida 33618, ("Assignor"), in consideration of Ten Dollars ($10.00) paid by THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, whose address is 18 Chestnut Street, Worcester, Massachusetts 01608 (the "Assignee"), hereby conveys, transfers and assigns unto Assignee, its successors and assigns, all the rights, interest and privileges (a) which Assignor as lessor has and may have in that certain Lease dated May 2, 1995, by and between Circuit City Stores, Inc., as Tenant and Harrison Bennett Properties, Inc., a Florida corporation, as Landlord (the "Circuit City Lease"), and all other leases now existing or hereafter made and affecting the real property described below or any part thereof, as such leases may have been, or may from time to time be hereafter modified, extended and renewed, with all rents, income and profits due and becoming due therefrom (collectively the "Leases"); and (b) which Assignor has and may have by virtue of any guaranty or surety agreement with respect to the tenant's obligations under any of the Leases, as such guaranties or surety agreements may have been, or may from time to time be hereafter modified and extended. Assignor will, on request of Assignee, execute assignments of any future leases affecting any part of such real property and assignments of any guaranties or surety agreements made in connection therewith.

This Assignment is made as additional security for the payment of a certain Promissory Note of even date herewith (the "Note") made by Assignor to Assignee in the sum of Five Million One Hundred Thousand and No/100 Dollars ($5,100,000) with interest, and the performance by Assignor of its obligations under that certain Mortgage and Security Agreement of even date herewith (the "Mortgage") from Assignor to Assignee given to secure payment of the Note and covering real property situated in Pinellas County, Florida and described in Exhibit "A" attached hereto (the "Property"), and various other documents evidencing and securing the obligations of Assignor to Assignee (which documents are hereinafter collectively referred to as the "Loan Documents"). This Assignment shall secure the Loan Documents as they may from time to time be hereafter modified, extended and renewed, and shall be security for all increases,

ORLANDO/59937.1
03/27/96 at 4:42pm



extensions, amendments or modifications of the Loan Documents, and all additional loans made hereafter, if any, by Assignee to Assignor or its successors and assigns and secured by the Property, upon the following terms and conditions:

1.   The acceptance of this Assignment and the collection of rents or the payments under the Leases or any sums under the guaranties or surety agreements hereby assigned shall not constitute a waiver of any rights of Assignee under the terms of the Loan Documents. Notwithstanding anything contained herein and within the Loan Documents to the contrary, it is expressly understood and agreed by the parties hereto that this is a direct and absolute assignment of all rents, issues and profits from the Leases and that Assignor shall immediately instruct Tenant and any other lessees of the Property to pay all rent and other sums due under the Leases directly to Assignee. Upon receipt of such rents, issues and profits, Assignee shall apply the same only against the principal, interest and late charges then owing under the Loan Documents, and shall remit any remaining sums (the "Remaining Sums") to Assignor. Assignee shall have five (5) days after its receipt of rents, issues and profits to forward any such Remaining Sums to Assignor. In the event Assignee fails to remit such Remaining Sums to Assignor within such five (5) day period, Assignor shall be entitled to interest on the Remaining Sums equal to 12% per annum beginning on the fourth (4th) day following Assignors written demand to the Assignee for return of such Remaining Sums .

2.   Assignor shall not execute an assignment of the income, rents, issues or profits, or any part thereof, from the Property.

3.   Assignor shall furnish to Assignee, beginning ninety (90) days after the close of Assignor's fiscal year, annual operating reports consisting of a sworn statement setting forth, as applicable, the names of all lessees and tenants of the Property, the space occupied, and the rental payable thereunder, and stating whether any defaults, off-sets or defenses are known to Assignor under or in connection with any of said leases, tenant contracts or rental agreements.

4.   Each lease, tenant contract and rental agreement pertaining to the Property, or any part thereof, entered into after the date of this Assignment, shall provide that, in the event of the enforcement by Assignee of the remedies provided by law, by the Mortgage or by this Assignment, the lessee or tenant thereunder will, upon request of Assignee or any other person or entity succeeding to the interest of Assignee as a result of such enforcement, automatically become the lessee or tenant of Assignee or said successor in interest, without change in the terms or other provisions of said lease, tenant contract or rental agreement; provided, however, that neither Assignee nor any such successor in interest shall be bound by (i) any payment of rental or additional rental for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee or tenant of its obligations under said lease, tenant contract or rental agreement (and then only if such prepayments have been deposited with and are under the control of Assignee); or (ii) with respect to any present lease, or any lease entered into after the date of this Assignment, any amendment or modification of said lease, tenant contract or rental agreement made without the express written consent of Assignee or said successor in interest. Each lease, tenant contract and rental agreement pertaining to the Property

entered into after the date of this Assignment shall also provide that, upon request by said successor in interest, the lessee or tenant thereunder shall deliver an instrument or instruments confirming such attornment.

5.    Notwithstanding any other provisions of this Assignment, Assignor shall not hereafter modify the Circuit City Lease without the prior written consent of Assignee after Assignee's review and approval of such modification.

6.    Assignor may not enter into any new lease, tenant contract or rental agreement affecting the Property, or any part thereof, without the prior written consent of Assignee after Assignee's review and approval of such lease, which approval shall not be unreasonably withheld.

7.    Anything contained herein to the contrary notwithstanding, and subject to Assignor's license from Assignee to collect the same, absent a Default under the Loan Documents, Assignor hereby assigns to Assignee any award made hereafter to it in any court procedure involving Circuit City Stores, Inc. or, as applicable, any other lessees of the Property in any state or federal court; and any and all payments made by lessees in lieu of rent. Assignor hereby appoints Assignee as its irrevocable attorney-in-fact to appear in any action and/or to collect any such award or payment.

8.    In the event of a Default in the performance of any of the terms and conditions of the Loan Document, or a monetary default hereunder which has not been cured within five (5) days from the date of performance or a nonmonetary default hereunder which has not been cured within thirty (30) days after written notice thereof from Assignee or in the event such nonmonetary default cannot be cured within such thirty (30) day period, Assignor fails to commence to cure such nonmonetary default and thereafter diligently proceeds to cure such nonmonetary default, Assignor hereby authorizes Assignee, at its option, to enter and take possession of the Property and to manage and operate the same, to collect all or any rents accruing therefrom and from such Leases, to collect all or any sums due or becoming due under such guaranties and surety agreements, to let or relet the Property or any part thereof, to cancel and modify leases, guaranties and surety agreements, evict tenants, bring or defend any suits in connection with the possession of the Property in its own name or Assignor's name, to make such repairs as Assignee deems appropriate, and to perform such other acts in connection with the management and operation of the Property as Assignee, in its sole discretion, may deem proper.

9.    The receipt by Assignee of any rents, issues or profits pursuant to this instrument, after the institution of foreclosure or sale proceedings under the Mortgage, shall not cure such default or affect such proceedings or any sale pursuant thereto.

10.    Assignee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any of the Leases, and Assignor hereby agrees to indemnify Assignee for, and to save it harmless from, any and all liability arising from any of the Leases, guaranties, surety agreements or from this Assignment, and this Assignment shall not place responsibility for the control, care, management or repair of the Property upon Assignee,

PINELLAS COUNTY FLA.
OFF. REC. BK 9302  PG 1151

or make Assignee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

11.   Assignor covenants and represents that: Assignor has title to, and full right to assign the Leases, guaranties, surety agreements and the rents, income and profits due or to become due thereunder; no other assignment of any interest therein has been made by Assignor, except as set forth herein; there are no existing defaults under the provisions thereof; and that Assignor will not hereafter cancel, surrender or terminate any of the Leases, guaranties and surety agreements, or change, alter or modify them, or consent to the release of any party liable thereunder or to the assignment of the lessees interest under the Leases or guaranties or surety agreements without the prior written consent of Assignee.

12.   Assignor hereby authorizes Assignee to give notice in writing of this Assignment at any time to Tenant under the Circuit City Lease or, as applicable, any other tenant under any other lease and, as applicable, any guarantor of such lease.

13.   Violation of any of the covenants, representations and provisions contained herein by Assignor shall be deemed a default under the terms of the Loan Documents.

14.   Default by Assignor under any of the terms of the Leases assigned herein shall be deemed a default under the terms of the Loan Documents. Any expenditures made by Assignee in curing such a default on Assignor's behalf, with interest thereon at twelve percent (12%) per annum shall become part of the debt secured by this Assignment.

15.   Assignee shall not be deemed to be an agent, partner or joint venturer of either Assignor or any other person, and nothing herein contained shall be construed to impose any liability upon Assignee by reason of the assignment granted hereby.

16.   When the content so requires, the use of the singular herein shall include the plural and conversely, and the use of any gender herein shall include all genders.

17.   This Assignment shall be governed by and construed in accordance with the laws of the State of Florida. Whenever possible, each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law; but if any provision of this Assignment shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Assignment.

18.   This Assignment cannot be modified or terminated orally.

19.   All communications required under this Assignment shall be in writing, and shall be sent by registered or certified mail, postage prepaid, addressed to Assignor at the address set forth in the heading of this Assignment, and addressed to Assignee at the address set forth in the

ORLANDO/59937.1
03/27/96 at 4:42pm                                              4

PINELLAS COUNTY FLA.
OFF.REC.BK 9302  PG 1152

heading of this Assignment, or to such other address as either party may designate from time to time by notice to the other in the manner set forth herein, and shall be effective as of the date of delivery or attempted delivery.

20.     The full and complete performance of all the Loan Documents, as evidenced by the duly recorded satisfaction or release of the Property described in the Mortgage, shall render this Assignment automatically void with respect to the Property or portion thereof described in any such satisfaction or release. Upon the full and complete performance of all of the Loan Documents, Lender shall execute such documentation as Borrower may reasonably request to evidence the release an satisfaction of the Loan Documents.

21.     The net proceeds collected by Assignee, after reimbursement of reasonable expenses incurred by Assignee under the terms of this Assignment, shall be applied in reduction of the entire indebtedness from time to time outstanding and secured by the Mortgage.

22.     This Assignment applies to and binds the parties hereto and their respective heirs, administrators, executors, successors and assigns, as well as any subsequent owner of the Property described herein and any assignee of the Mortgage referred to herein.

23.     The Assignee, as the holder of the Note, by its acceptance thereof, agrees that it shall not seek, be entitled to or enforce any deficiency or other personal judgment against the Assignor, or the shareholders, officers or directors of Assignor except as provided in the Mortgage.

24.     THE ASSIGNOR AND THE ASSIGNEE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE ASSIGNMENT, THE RENEWAL NOTE, THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE ASSIGNEE ENTERING INTO THE LOAN EVIDENCED BY THIS AGREEMENT.

PINELLAS COUNTY FLA.
O.REC.BK 9302    PG 1153

IN WITNESS WHEREOF, this Absolute Assignment of Leases and Rents has been executed this _____ day of March, 1996.

Signed, sealed and delivered
in the presence of:

**ASSIGNOR:**

HARRISON BENNETT PROPERTIES, INC., a Florida corporation

Print Name: PEGGY WELLS FUENTE

By: _____
Print Name: _____    David H. Freeman, President


**ASSIGNEE:**

THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation

Print Name: _____

By: _____
Print Name: _____
Title: _____
Print Name: _____

PINELLAS COUNTY FLA.
REC.BK 9302   PG 1154

IN WITNESS WHEREOF, this Absolute Assignment of Leases and Rents has been executed this _____ day of March, 1996.

Signed, sealed and delivered
in the presence of:

ASSIGNOR:

HARRISON BENNETT PROPERTIES, INC., a Florida corporation

Print Name:_____

Print Name:_____

By:_____
    David H. Freeman, President

ASSIGNEE:

THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation

Print Name: _Karen C. Jessey_

Print Name: _Susan C. MacMahon_

By:_____
Print Name: _Daniel Kerns_
Title:_____ 2nd VP _____

ORLANDO/59937.1
03/27/96 at 4:42pm                                                6

PINELLAS COUNTY FLA.
.REC.BK 9302   PG 1155

STATE OF _Florida_ )
COUNTY OF _Hillsborough_ )

 The foregoing instrument was acknowledged before me this 29th of _March_, 1996, by DAVID H. FREEMAN of HARRISON BENNETT PROPERTIES, INC., a Florida corporation, on behalf of the corporation. He is personally known to me or has produced _____/ /_____ as identification.

Notary Public
Print Name: _PEGGY WELLS FUENTE_
My commission expires:

OFFICIAL NOTARY SEAL
PEGGY WELLS FUENTE
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC313877
MY COMMISSION EXP. OCT. 17,1997

STATE OF _____
COUNTY OF _____

 The foregoing instrument was acknowledged before me this ___ day of _____, 1996, by _____, as _____ of THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, on behalf of the corporation. He/she is personally known to me or has produced _____ as identification.

Print Name:_____
Notary Public, State of _____
My Commission Expires:

PINELLAS COUNTY FLA.
REC.BK 9302  PG 1156

STATE OF _____ )
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this ____ of _____,
1996, by DAVID H. FREEMAN of HARRISON BENNETT PROPERTIES, INC., a Florida
corporation, on behalf of the corporation. He is personally known to me or has produced
_____ as identification.

Notary Public
Print Name: _____
My commission expires:


STATE OF MASSACHUSETTS
COUNTY OF WORCESTER

The foregoing instrument was acknowledged before me this 3rd day of APRIL, 1996,
by DANIEL KERNER, as 2nd Vice President of THE PAUL REVERE LIFE
INSURANCE COMPANY, a Massachusetts corporation, on behalf of the corporation. He/she
is personally known to me or has produced _____ as
identification.

Mary A. Baribeault

Print Name: Mary A. Baribeault
Notary Public, State of Commonwealth of Massachusetts
My Commission Expires My Commission Expires June 16, 2000

PINELLAS COUNTY FLA.
OFF.REC.BK 9302   PG 1157

## EXHIBIT "A"

### LEGAL DESCRIPTION

Lots 1, 2, 3, 4, 5, 6, 7 and 8, HAAS SUBDIVISION, according to the Plat thereof on file in the Office of the Clerk of the Circuit Court in and for Pinellas County, Florida, recorded in Plat Book 48, Page 66; said lands situate, lying and being in Pinellas County, Florida.

Lot 3, BLACKBURNS SUBDIVISION, according to the Plat thereof on file in the Office of the Clerk of the Circuit Court in and for Pinellas County, Florida, recorded in Plat Book 24, Page 62; said lands situate, lying and being in Pinellas County, Florida.

ORLANDO/61277.1



**Doc Type Group**



Legal Documents

**Document Type**



Assignment of Lease and Rents - Assignment

**Loan Number**



9 8 2 0 0 3 7 2 6

**Library**



A

**Doc Date**



0 3 / 2 9 / 9 6

**Class**



Servicing

**HEADER**



N

User : FISLAM

RCG#:101.1- ALR Y
LaSalle #: 989976 /989976 PREVERE
Issuer/Pool: 1055/2 GMAC97C1

# GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION
## (Assignor)
## and
### LaSalle National Bank, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1
#### (Assignee)

## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

DATED:                    _____
PROPERTY LOCATION:     _____
COUNTY & STATE: Pinellas, FL
NEW YORK SECTION:
    BLOCK:
    LOT:
PIN # (If Required):

PREPARED BY AND RECORD AND RETURN TO:
S. Richardson, RCG, Inc.
505 San Marin Drive, #110A
Novato, California 94945
415-898-7200
Attn: GMAC97C1 LASALLE 1055/2 PREVERE

## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

For Value Received, **GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION,** the undersigned holder of a(n) ASSIGNMENT OF LEASES AND RENTS **(herein "Assignor")** whose address is 31 West 52nd Street New York New York 10019, does hereby grant, sell, assign, transfer and convey, without recourse unto **LaSalle National Bank, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1** (herein Assignee") whose address is 135 S. LaSalle Street, 16th Floor, Attn. Mtg Custody Chicago Illinois 60674. the mortgage loan documents identified below, hereto (the "Asset"), together with the promissory note(s), related thereto together with all amendments, supplements and modifications thereto ("collectively, the "Loan Documents and Collateral"), recorded in the real estate records of Pinellas County/jurisdiction, in the Commonwealth or State of FL, described as follows:

ASSIGNMENT OF LEASES AND RENTS

|  |  |
|---|---|
| Borrower Name(s): | HARRISON BENNETT PROPERTIES, INC., A FLORIDA CORPORATION |
| Original Lender: | THE PAUL REVERE LIFE INSURANCE COMPANY, A MASSACHUSETTS CORPORATION |
| Trustee (if DOT): | |
| Date of Document: | 3/29/96 |
| Date of Recording: | 4/05/96 |
| Book/Volume: | 9302   Page No.: 1148 |
| Instr/Ref: | 96-093185 |
| Other #: | |
| Township/Borough: | |

Subject to the right and equity of redemption, if any there be of said mortgagor and their heirs and assigns in the same.

In the event the property securing this loan is in the state of New York, this Assignment is not subject to the requirements of Section 275 or Section 255 of the Real Property Law because it is an assignment within the secondary mortgage market. The Assignee is not acting as a nominee of the mortgagor and the Mortgage continues to secure a bona fide obligation.

RCG#: 101.1-ALR Y
LaSalle #: 989976/ 989976 PREVERE
Issuer/Pool: 1055/2 LASALLE GMAC97C1

Page 2-RCG#:101.1-ALR Y
LaSalle #: 989976/ 989976 PREVERE
Issuer/Pool: 1055/2LASALLE GMAC97C1

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever. subject only to the terms and conditions of the above-described ASSIGNMENT OF LEASES AND RENTS.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective the _18_ day of _March_, 199_7_

Witness(s)

Name: _Christopher_
_Tomola_
_authorized_
_signatory_

ASSIGNOR:
GERMAN AMERICAN CAPITAL CORPORATION,
A MARYLAND CORPORATION

By: _____
Name: _____Robert D. Burns_____
Title: _____Authorized Signatory_____

STATE OF _New York_ }
                     }ss:
COUNTY OF _New York_ }

On the _18_ day of _March_, 199_7_, before me, personally came _Christopher Tomola, Robert Burns_, personally known to me, to be the person whose name is subscribed to the within instrument, who being by me duly sworn, did depose and say that he/she resides at 31 West 52nd Street New York New York 10019, and that he/she is the _authorized signatory_ of GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION and who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or the entity on behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Notary Public: _____        [notary seal]

My Commission Expires: _____

JOYCE C. LANDRY
Notary Public, State of New York
N . 01LA3...
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Aug. 23, _1999_

*109007*

*Legal*

*N/D*

CLERK OF COURT
LAFAYETTE, LA
FILED AND RECORDED
95 APR -4   3:20

FILE NO.
95-010879

**ASSIGNMENT OF LEASES AND RENTS** TAB

O.C. "DAN" GUILLIOT
CLERK OF COURT

This **ASSIGNMENT OF LEASES AND RENTS** ("Assignment") is made as of the date hereinafter set forth by **CIRCUIT INVESTORS -MATTESON LIMITED PARTNERSHIP**, a Texas limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Assignor") to **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation (T.I.N. 04-1768571) having a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Assignee").

1.    Purpose

This Assignment is made in connection with a loan in the original principal amount of up to **THREE MILLION SIX HUNDRED SEVENTY-FOUR THOUSAND SIX HUNDRED SEVENTY-NINE and 00/100 ($3,674,679.00)** Dollars (the "Loan") made to Assignor by Assignee for the purpose of securing the following obligations and indebtedness, up to a maximum principal amount outstanding at any one or more times, from time to time, not to exceed U.S. $50,000,000.00 (the "Maximum Amount").

a.    Payment of the indebtedness evidenced by that certain promissory note of even date in the aggregate maximum principal amount as indicated above (the "Note") and secured by a mortgage, assignment of leases and security agreement of even date (the "Mortgage") which encumbers Assignor's interest in a certain parcel of land located at 5264 Johnson Street, Lafayette, Louisiana (hereinafter called the "Property") and more particularly described in Exhibit A attached hereto.

b.    Payment of all other sums with interest thereon becoming due and payable to Assignee under the provisions of this Assignment, the Note, the Mortgage and any other documents or instruments evidencing or securing the Loan (all such documents, including but not limited to the Note, the Mortgage and this Assignment, being collectively referred to herein as the "Loan Documents").

c.    The performance and discharge of each and every obligation, covenant and agreement of Assignor herein and in the Loan Documents and in any and all leases affecting the Property.

2.    Grant

FOR VALUE RECEIVED, and in order to secure the payment and performance of said obligations and indebtedness, up to the Maximum Amount, to the fullest extent permitted by La. R.S. 9:4401, Assignor hereby assigns, transfers, pledges and hereby grants to Assignee a continuing security interest in and to all of its rights, interest and privileges which Assignor has or may have as lessor in any and all leases now in existence, or hereafter executed affecting any

Lafayette, Louisiana

portion of the Property, including any modifications, extensions or renewals thereof; together with all rents, income, issues and profits, revenues, royalties, bonuses, accounts receivable, advance rentals and tenant security deposits arising from said leases and any extensions and renewals thereof, further including Assignor's rights to enforce such leases and to receive and collect payments and proceeds thereunder; and together with all rents, income, issues and profits due or to become due from the Property, and from any and all leases for the use and occupancy of the Property or any part thereof which may be made in the future during the term of this Assignment, whether or not recorded; and together with and including Assignor's entire interest in any other lease, rental or occupancy agreement now existing or which may be made hereafter affecting the Property (all of which present and future leases, subleases, rental and occupancy agreements and renewals thereof whether or not identified in Exhibit B are made subject to this Assignment and are herein referred to as "Leases"). Assignor hereby also assigns to Assignee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by lessees in lieu of rent. This Assignment includes an assignment of any and all guarantees of the lessees' obligations under leases covered hereby. Notwithstanding any provisions herein to the contrary, this Assignment is intended to be an absolute assignment from Assignor to Assignee upon the occurrence of an Event of Default (as such term is defined in the Mortgage). All rents, income, profits and payments (i) arising from the Leases, (ii) arising from the use, enjoyment and occupancy of the Property, or (iii) otherwise secured by this Assignment are hereinafter collectively referred to as the "Rents." A description of each Lease now in effect is attached as Exhibit B.

3.     Authorization to Lease

Assignor is hereby authorized to lease space at the Property to tenants subject to the terms and conditions contained herein and in any other Loan Document.

4.     Assignor's Agreements

Assignor hereby represents, covenants and agrees:

a.     Each Lease set forth on Exhibit B has been duly executed and is valid and enforceable and each Lease hereafter entered into by Landlord shall be duly executed and be valid and enforceable.

b.     There is no default under any of the Leases set forth on Exhibit B, nor has there been any action, or failure to act which, with the passage of time, or the giving of notice, or both, would constitute a default under any of the Leases set forth on Exhibit B, nor are there any offsets invoked or defenses asserted, or which could in the future be invoked or asserted with respect to the payment of any portion of the Rents.

c.     None of the Rents have been or will be anticipated or prepaid by more than thirty (30) days in advance of their due date.

Lafayette, Louisiana                    -2-

d.      Assignor shall deliver to Assignee within fifteen (15) days following written request by Assignee a rent roll certified correct by Assignor stating the names of each tenant, the term and rent of each Lease, whether or not the rent under each Lease is current, and whether any other default under the Lease has occurred or is occurring. Rental concessions such as free rent, above standard tenant improvements, moving allowances, lease buyouts, or any other monetary inducements must be noted on the rent roll. Assignee has previously received a certified rent roll, which rent roll Assignor hereby warrants and represents is true and correct as of the date of this Assignment.

e.      Certified copies of all Leases affecting the Property, along with information concerning the credit of each tenant, must be submitted to Assignee for prior written approval, which approval shall not be unreasonably withheld or delayed. Assignee's failure to approve or disapprove of a lease submitted within fifteen (15) business days shall be deemed approval provided Assignor has made reasonable efforts to contact Assignee before and during such 15-day period. The Leases shall be approved upon the satisfaction of the following requirements:

(i)      The Leases must be in form and substance satisfactory to Assignee.

(ii)     The tenants thereunder must be satisfactory to Assignee.

(iii)    The tenants thereunder and their guarantors are solvent and not subject to any bankruptcy, insolvency, receivership or reorganization proceedings.

f.      Except as already provided on Exhibit B, Assignor shall deliver to Assignee within ten (10) business days following written request by Assignee conformed copies of all Leases or other instruments affecting the Property.

g.      Assignor shall not surrender, cancel, modify or terminate any Lease, exercise any option which might lead to such termination or change, consent to the release of any party liable thereunder or consent to or permit any violation, default, assignment or subletting of any Lease by a tenant other than as permitted by such Lease without the prior written consent of Assignee, which approval shall not be unreasonably withheld, conditioned or delayed. Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage or other encumbrance, or any other Lease, now or hereafter affecting the Property, without Assignee's prior written consent.

h.      No other assignment of any interest in the Leases or Rents has been made by Assignor, and Assignor shall not pledge, mortgage or further assign any Lease or the Rents as security for any obligation other than to Assignee in connection with the transaction of which this is a part.

i.      Assignor shall observe and perform within applicable grace periods all of the obligations imposed upon Assignor in said Leases, shall not do or permit to be done anything

to impair the validity thereof and shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed.

j.    This Assignment is irrevocable.

k.    Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized, and does not conflict with or constitute a default under any law, judicial order or other agreement affecting the Assignor or the Property.

l.    Assignor will promptly notify Assignee of any default by Assignor or any tenant under any Lease and shall send copies to Assignee of all notices of default which Assignor shall send or receive thereunder. Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.

m.    All subsequent Leases affecting the Property shall be and are hereby made subject to all of the terms of this Assignment without the need for a further or supplemental assignment.

n.    Assignor shall assign and transfer to Assignee any and all further Leases upon all or any part of the Property and agrees to execute and deliver, at the written request of Assignee, all such further assurances and assignments as Assignee shall from time to time reasonably require.

o.    The terms of the Leases have not been changed from the terms in the copies of such Leases submitted to Assignee for approval.

5.    Assignee's Remedies Upon Default

Upon or at any time after an Event of Default (as such term is defined in the Mortgage) by Assignor, or a default by Assignor as lessor under any Lease beyond any applicable cure and grace period, Assignee, without in any way waiving such default, may at its option, enter and take possession of the Property to the fullest extent allowed by law, in which event Assignee shall have the right to have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may seem proper to Assignee, and to do all things required of or permitted to the landlord under said Leases (including the right to demand, sue for and otherwise collect all Rents), and to apply such Rents (to the extent required of or permitted to the landlord under the Leases) to the payment of: (a) the cost of such alterations, renovations, repairs and replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, and keeping the same properly insured and (b) all taxes, charges, claims, assessments, water rents and any other liens which may be prior to this Assignment or the Loan Documents, and premiums for said insurance, with interest on all such items, and (c) the indebtedness secured hereby, together with all costs and reasonable attorneys' fees, in such order of priority as to any of such items, as

Lafayette, Louisiana                    -4-

Assignee in its sole discretion may determine, statute, law, custom or use to the contrary notwithstanding. Assignee shall have the additional right, at any time and for any reason, whether or not an Event of Default exists, to directly collect and receive the benefit of all obligations and all proceeds and/or payments assigned to Assignee under this Assignment, as such amounts and/or obligations become due and payable. In order to permit the foregoing, from and after an Event of Default Assignor unconditionally agrees to deliver to Assignee, immediately following demand, any and all records and other documentation, in the form requested by Assignee, with regard to the Leases. Assignee shall have the further right, where appropriate and within Assignee's sole discretion, to file suit, either in its own name or in the name of Assignor, to enforce any obligations and/or to collect any and all such proceeds and payments that may now and in the future be due and owing under the Leases. Assignor hereby grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.

Assignee's remedies upon any Event of Default shall be cumulative in nature and nothing under this Assignment shall be construed as to limit or restrict the options and remedies otherwise available to Assignee following an Event of Default, or to in any way limit or restrict the rights and ability of Assignee to proceed directly against Assignor and/or against any co-makers, guarantors, sureties and/or endorsers of the Notes, and/or to proceed against any other collateral directly or indirectly securing said indebtedness.

6.    No Assumption of Assignor's Obligations

Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after any default hereunder, or from any act or omission of Assignee in managing the Property after default. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases, or under or by reason of this Assignment, and Assignor shall and does hereby agree to indemnify Assignee for and to hold Assignee harmless from any and all liability, loss or damage which it may or might incur under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby, and Assignor shall reimburse Assignee therefor within thirty (30) days following written demand, and upon the failure of Assignor to do so, Assignor shall be in default under this Assignment and the Loan Documents. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the

Lafayette, Louisiana                          -5-

Mortgage), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or other person.

7.    Condition of Assignment

Upon the payment in full of all indebtedness secured hereby and the performance of all of the obligations, covenants and agreements contained herein, this Assignment shall become null and void and of no effect, and until such payment and performance, this Assignment shall itself constitute conclusive evidence of the validity, effectiveness and continuation of this Assignment. Assignor hereby directs and requires all tenants to pay such rents to Assignee and Assignor shall have no right or claim against tenants for any such rents so paid by tenants to Assignee.

8.    Subordination, Non-Disturbance and Attornment

Assignee reserves the right to require that all Leases be subordinate to the Loan. Assignee may require that certain Leases be made superior to the Loan and that certain provisions of such superior leases be made subject to the Loan. Assignee may further require the execution of subordination, attornment and non-disturbance agreements on a pre-approved form from tenants specified by Assignee.

9.    Cross Default

A default by Assignor beyond the expiration of applicable grace and notice periods in the performance of any obligation, covenant or agreement herein or under any Leases or the breach of any representation or warranty contained herein shall constitute an Event of Default under and as defined in the Loan Documents.

10.    Certain Definitions

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note secured by the Mortgage," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, and the word "Loan" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage, this Assignment and the Loan Documents. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

11.    Notices.  All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

|  |  |
|---|---|
| Assignee: | The Paul Revere Life Insurance Company<br>c/o The Paul Revere Investment Management Corporation<br>18 Chestnut Street<br>Worcester, Massachusetts 01608-1528<br>Attention:  Real Estate Investments |
| with a copy to: | Pepe & Hazard<br>Goodwin Square<br>Hartford, Connecticut 06103-4302<br>Attention:  Timothy J. Boyce, Esq. |
| Assignor: | Circuit Investors-Matteson Limited Partnership<br>c/o Cardinal Capital Partners, Inc.<br>8411 Preston Road, 8th Floor<br>Dallas, Texas 75225<br>Attention:  Gil Besing |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Steven Shore |

12.    Miscellaneous

a.    Assignee may take or release any other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of its rights hereunder.

b.    In the event of foreclosure of the Mortgage by sale or otherwise, Assignee is hereby authorized to sell Assignor's interest in the Leases with the Property or to assign the same without consideration to the purchaser at said sale or to any other claimant to the title to the Property by virtue of a foreclosure of the Mortgage; and there shall be no liability to account to Assignor for any rents or profits accruing after the vesting of title in another following such foreclosure.

Lafayette, Louisiana

-7-

c.      This Assignment shall be governed and construed under the internal laws of the State of Louisiana, without giving effect to the conflicts of law provisions thereof.

d.      Nothing herein contained and no act done or omitted by Assignee pursuant to the powers and rights granted it herein shall be deemed to be a waiver by Assignee of its rights and remedies under this Assignment or any of the Loan Documents, and this Assignment is expressly made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the indebtedness secured hereby and to enforce any other security therefor owned by Assignee may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by Assignee hereunder.  The continued receipt by Assignee of any Rents pursuant to this instrument following the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

e.      The full payment of the Note secured by the Mortgage and full performance of the Mortgage and the duly recorded release and discharge of the Mortgage shall constitute simultaneous release and discharge of this Assignment.  In case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms of the Mortgage shall prevail.

f.      If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

g.      Nothing herein contained, nor any collection of Rents under the Leases, whether by Assignee or by a receiver, shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee.  In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

h.      All the covenants and agreements hereinabove set forth on the part of either party shall apply to and bind their respective heirs, successors and permitted assigns as well as any subsequent owner of the Property.

i.      All exhibits attached hereto are by this reference incorporated fully into this Assignment.

j.      Assignor authorizes Assignee to give notice in writing of this instrument at any time to any tenant under any of the Leases.

k.      Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any lessee thereunder.  Assignor shall not transfer or convey title to the leased premises to any lessee without the prior written consent of Assignee, and where such consent is given or where under applicable law the requirement for such consent is not enforceable, Assignor shall require the lessee, in writing, to assume and agree to pay Assignor's Note in accordance with the terms, covenants and conditions of the Note and the Mortgage.  In no event

shall any such transfer or conveyance operate to release or relieve Assignor from any liability to Assignee unless Assignee specifically agrees otherwise in writing.

l.       If any Lease provides for the abatement of rent during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be in such amounts and forms and written by such companies as shall be satisfactory to Assignee, in addition to any rental insurance required under the Mortgage.

.m.       This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

n.       This Assignment is subject to the exculpation provisions and exceptions therefrom contained in the Note, which provisions are incorporated herein by this reference.

IN WITNESS WHEREOF, this Assignment has been executed by Assignor on this 27th day of February, 1995.

ASSIGNOR:

CIRCUIT INVESTORS-MATTESON LIMITED PARTNERSHIP, a Texas limited partnership

By:     CIRCUIT GENERAL PARTNER #4, INC., a Texas corporation, General Partner

By: _____

Title: _PResident_____

STATE OF _Texas_
COUNTY OF _Dallas_

BE IT KNOWN, that on this _27_ day of February, 1995, before me, the undersigned Notary Public, duly commissioned, qualified and sworn within and for the State and County aforesaid, personally came and appeared _Gill. Besing_ to me known to be the identical person who executed the above and foregoing instrument, who declared and acknowledged to me, Notary, in the presence of the undersigned competent witnesses, that he is the _President of_ Circuit General Partner #4, Inc., a Texas corporation as general partner of Circuit Investors-Matteson Limited Partnership, a Texas limited partnership, that as such duly authorized officer, by and with the authority of the Board of Directors of said Corporation, he signed and executed the foregoing instrument, as his free and voluntary act and deed of said Corporation, for and on behalf of said Corporation, for the uses, purposes and benefits therein expressed.

WITNESSES:

_Ashley Stattam_

_Stacy Suurdine_



_Terie L. Rasmussen_

NOTARY PUBLIC
MY COMMISSION EXPIRES: _3-12-98_

TERIE L. RASMUSSEN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-12-98

flafx\27098\6-059.ASG\022695\lb

EXHIBIT A

## MAIN PARCEL

A certain tract of land containing 3.504 acres, known as Lot 2B, Acadiana Square Shopping Center, located in Section 68, Township 10 South, Range 4 East, City of Lafayette, Lafayette Parish, Louisiana, being more fully described as follows:

Commencing at the projected intersection of the more easterly right-of-way of Fountainhead Drive and the more northerly right-of-way of Johnston Street (U.S. Highway 167), proceed along said right-of-way of Johnston Street a bearing of North 41 degrees 36 minutes 31 seconds East, a distance of 704.00 feet to a point; thence continue along said right-of-way of Johnston Street a bearing of North 41 degrees 35 minutes 16 seconds East, a distance of 646.20 feet to a point; thence proceed along a bearing of North 48 degrees 25 minutes 04 seconds West, a distance of 247.67 feet to a point; thence proceed along a bearing of North 13 degrees 41 minutes 34 seconds West, a distance 23.34 feet to a point, said point hereinafter to be known as the Point of Beginning; thence proceed along a bearing of South 74 degrees 26 minutes 08 seconds West, a distance of 248.86 feet to a point; thence proceed along a bearing of North 15 degrees 33 minutes 52 seconds West a distance of 225.06 feet to a point; thence proceed along a bearing of South 74 degrees 26 minutes 08 seconds East a distance of 8.15 feet to a point; thence proceed along a bearing of North 15 degrees 33 minutes 52 seconds West, a distance of 379.64 feet to a point on the southerly right-of-way of Target Loop; thence proceed along the southerly right-of-way of Target Loop a bearing of North 75 degrees 32 minutes 27 seconds East a distance of 260.35 feet to a point; thence proceed along a bearing of South 13 degrees 41 minutes 34 seconds East a distance of 600.00 feet to the Point of Beginning; all as shown on the current Replat of Acadiana Square Shopping Center, dated February 13, 1994, last revised December 12, 1994, by C. H. Fenstermaker & Associates, Inc., a copy of which is recorded under Act No. 94-045525 in the Lafayette Parish Court House, Lafayette, Louisiana.

## SERVITUDE PARCEL

That certain non-exclusive servitude interest acquired pursuant to Reciprocal Easement and Operation Agreement executed by CAP-Lafayette Investors Limited Partnership, Toys "R" Us, Inc. and Lowe's Home Center, Inc., dated April 25, 1990, recorded as File No. 90-12433; as amended by First Amendment to Reciprocal Easement and Operation Agreement, dated January 20, 1993, recorded as File No. 93-003289; as further amended by Second Amendment to Reciprocal Easement and Operation Agreement, dated January 31, 1994, recorded as File No. 94-010707.

## EXHIBIT B

Lease between Assignor, as landlord, and Circuit City Stores, Inc., as tenant, dated February 22, 1995.

RafA27098\6-059.ASG\022695\lb

Lafayette, Louisiana

RECORDING REQUESTED BY

*After Recording Return to:*
Richardson Consulting Group
505 A San Marin Dr., #110
Novato, CA 94945

98 - 044559

O.C. *DAV* GULLIOT
CLERK OF
COURT RECORDER

LAFAYETTE LA
FILED AND RECORDED

98 OCT 12  AM 10: 03

RCG# 133
KLC# 172790
GMAC 97-C1

Space Above This Line For Recorder's Use

ASSIGNMENT

Effective as of August 2 2, 1997, and FOR VALUE RECEIVED, the receipt and
sufficiency of which are acknowledged, the undersigned, the beneficiary or the successor to the
beneficiary named below, absolutely sells, delivers, sets over, grants, conveys, assigns and
transfers, without recourse, representation or warranty, except as set forth in that certain Asset
*Purchase Agreement* dated as of August 8, 1997 (the "Purchase Agreement"), by and between
GERMAN AMERICAN CAPITAL CORPORATION, a Maryland corporation (the "Purchaser")
and THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, and
THE PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY, a Massachusetts
corporation (collectively, the "Seller"), which limits the Purchaser's remedies upon a breach by
the Seller solely to those expressly set forth in Article 5 of the Purchase Agreement, to the
Purchaser, all its right, title and interest in and to (i) that certain Mortgage, Assignment of Leases
and Security Agreement (First), executed by CIRCUIT INVESTORS - MATTESON LIMITED
PARTNERSHIP, a Texas limited partnership (the "Mortgagor") in favor of The Paul Revere Life
Insurance Company, as original beneficiary, and recorded on April 4, 1995 as File
No. 95-010878, in the Conveyance Records of Lafayette Parish (the "Records"), as the same may
have been amended from time to time (the "First Mortgage"); (ii) that certain Mortgage,
Assignment of Leases and Security Agreement (Second), executed by the Mortgagor in favor of
The Paul Revere Life Insurance Company, as original beneficiary, and recorded on April 4, 1995
as File No. 95-010880 in the Records, as the same may have been amended from time to time
(the "Second Mortgage"); and (iii) that certain Assignment of Leases and Rents, executed by the
Mortgagor in favor of The Paul Revere Life Insurance Company, as original beneficiary, and
recorded on April 4, 1995 as File No. 95-010879 in the Records, as the same may have been
amended from time to time (the "Assignment of Leases").

TOGETHER WITH all right, title and interest in and to the note of the of the Mortgagor
dated February 27, 1995 in the original principal amount of $3,674,679.00 (the "Note") or other
obligations secured thereby, the money due and to become due thereon, and all rights accrued or
to accrue thereunder.

TOGETHER WITH all rights, remedies, collateral instruments or other documents in and
or granted in favor of the undersigned or its predecessors in interest in connection with the loan
secured by the First Mortgage, Second Mortgage and Assignment of Leases (the "Loan"),
including, without limitation: (i) any loan agreement, assignments of rents and leases, security
agreements, UCC Financing Statements, regulatory agreements, assignments of management



COPY

agreement, assignments of stock or partnership units, tax and insurance escrows, cash collateral or similar accounts held by or for the benefit of the undersigned, letters of credit, certificates of deposit or deposits or escrows of any kind, all guaranties, pledges, security interests, mortgages, deeds of trust, or other rights, interests or other collateral securing or guaranteeing payment of such Loan; (ii) all other rights and remedies of the undersigned in connection with the Loan, whether provided by contract or otherwise available under applicable law or in equity, including without limitation, all rights and remedies provided under any loan agreements, indemnities or other instruments or documents made, issued or delivered to or in favor of the undersigned or its predecessors in interest in connection with the Loan, all as the same may have been amended, assigned, reinstated, extended or endorsed from time to time; and (iii) to the extent not duplicative of the foregoing, the Mortgage Loan File (as defined in the Asset Purchase Agreement) related to the Loan.

Executed as a sealed instrument this ___22___ day of August, 1997.

THE PAUL REVERE LIFE INSURANCE COMPANY

By: _____

Its: _____Authorized Signatory_____

**COPY**

STATE OF NEW YORK
COUNTY OF _NEW YORK_____, ss

     Be it known, that on this _1 1st_ day of August, 1997, before me, the undersigned Notary
Public, duly commissions, qualified and sworn within and for the State and County aforesaid,
personally came and appeared _James C. Glascock Jr_, to me known to be the identical person
who executed the above and foregoing instrument, who declared and acknowledged to me,
Notary, in the presence of the undersigned competent witnesses, that he is _Authorized Signatory_
of The Paul Revere Life Insurance Company, a Massachusetts corporation, that as such duly
authorized officer, by and with the authority of the Board of Directors of the corporation, he
signed and executed the foregoing instrument, as his free and voluntary act and deed of said
corporation, for and on behalf of said corporation, for the uses, purposes and benefits therein
expressed.

                              _Frank D. Carvill_
                          Notary Public
                          My Commission Expires: _2/5/98_

WITNESSES

                                   FRANK T. CARVILL
                            Notary Public, State of New York
                               No. 01CA5055238
                            Qualified in New York County
                       Commission Expires February 5, 1998

COPY



```
Job : 100
Date: 3/30/2011
Time: 3:52:49 PM
```