| | |
|---|---|
| William H. Schwarzschild, III (VSB No. 15274)<br>R. Joseph Noble (VSB No. 77138)<br>**WILLIAMS MULLEN**<br>Williams Mullen Center<br>200 South 10th Street, Suite 1600<br>Post Office Box 1320<br>Richmond, Virginia 23218-1320<br>Tel: 804.420.6489<br>Fax: 804.420.6507<br>tschwarz@williamsmullen.com<br>jnoble@williamsmullen.com | Todd E. Duffy, Esq.<br>Dennis J. Nolan, Esq.<br>**ANDERSON KILL & OLICK, P.C.**<br>1251 Avenue of the Americas<br>New York, New York 10020-1182<br>Tel:  212.278.1000<br>Fax:  212.278.1733<br>tduffy@andersonkill.com<br>dnolan@andersonkill.com |

*Attorneys for the State of California,*
*State Board of Equalization*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>**CIRCUIT CITY STORES, INC.,** *et al.,*<br><br>                Debtors. | Chapter 11<br><br>Case No. 08-35653 (KRH)<br><br>Jointly Administered |

**MOTION OF THE STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION TO (i) RECONSIDER AND VACATE PRIOR ORDER OF THE COURT EXPUNGING CLAIM NUMBER 13049; AND (ii) DEEM CLAIM NUMBER 13049 TIMELY FILED**

The State of California, State Board of Equalization (the "BOE"), by and through its counsel, respectfully submits this Motion (the "Motion"), pursuant to section 502(j) of title 11 of the United States Code (§§ 101-1532) (the "Bankruptcy Code") and Rules 3008 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that the Court: (i) reconsider and vacate its prior order, dated March 31, 2010 (the "Expungement Order"), expunging the BOE proof of claim numbered 13049 (the "Disallowed Claim") [Docket Number 7067]; and (ii) enter an order deeming the Disallowed Claim timely filed.  In support of its Motion, the BOE respectfully states as follows:

NYDOCS1-965281.7

**INTRODUCTION**

1.   Cause exists for, and the equities of this case warrant, under section 502(j) of the Bankruptcy Code, the Court's reconsideration of the Expungement Order because the Debtors failed to serve the BOE with their objection to the Disallowed Claim (the "Claims Objection"), as well as the Expungement Order.  It was not until six months after the Court entered the Expungement Order that the BOE learned that the Disallowed Claim had been extinguished.  Following the breakdown of subsequent settlement negotiations with the Debtors, the BOE has promptly sought reconsideration by this Motion.  It cannot be denied that the Debtors violated the BOE's due process rights by obtaining expungement of the Disallowed Claim without any attempt to serve the BOE.

2.   Had the Debtors afforded the BOE the opportunity to respond to the Claims Objection, the BOE would have argued that the Disallowed Claim, which allegedly arrived at the Court four days after the Bar Date (defined below), should be deemed timely because of the principle of "excusable neglect" articulated in *Pioneer Inv. Servs. Co. v. Brunswich Assocs. Ltd. P'ship.,* 507 U.S. 380 (1993).  Initially, the Debtors mailed the Bar Date Order (defined below) to the incorrect address for the BOE.  The BOE ultimately received actual notice of the Bar Date, and promptly prepared the Disallowed Claim.  The BOE mailed the Disallowed Claim almost two full weeks before the Bar Date, but it allegedly arrived untimely, even though two other claims mailed by the BOE either the same day or the day after the Disallowed Claim arrived by the Bar Date.  In light of these circumstances beyond the BOE's control, coupled with the fact that the Debtors will not be prejudiced by the requested relief, the Court should find the BOE's failure to timely file the Disallowed Claim excusable.

3. Accordingly, the Court should reconsider and vacate the Expungement Order and reinstate the Disallowed Claim as timely.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are section 502(j) of the Bankruptcy Code and Bankruptcy Rules 3008 and 9006.

## FACTUAL BACKGROUND

5. On November 10, 2008, Circuit City and its affiliated companies (collectively, the "Debtors") filed with this Court petitions for relief under chapter 11 of the Bankruptcy Code. On November 25, 2008, the Debtors filed a motion to set May 11, 2009 (the "Bar Date") as the last day for governmental units to file pre-petition claims (the "Bar Date Motion"). [Docket # 411]. According to the Affidavit of Service for the Bar Date Motion [Docket # 676], the Debtors served the Bar Date Motion on BOE at the following address:

> CALIFORNIA STATE
> BOARD OF EQUALIZATION
> P.O. BOX 942879
> SACRAMENTO, CA 94279-7072

*See* Declaration of Todd E. Duffy dated April 20, 2011 at Exhibit A (the "Duffy Decl.") at Exhibit A. However, the correct address for BOE (the "BOE Address"), as reflected on the Disallowed Claim form, is:

> STATE BOARD OF EQUALIZATION
> SPECIAL PROCEDURES SECTION, MIC:55
> PO BOX 942879
> SACRAMENTO, CA 94279-0055

NYDOCS1-965281.7                                   - 3 -

*See* Duffy Decl. at Exhibit B.  The omission of the "SPECIAL PROCEDURES SECTION, MIC:55" rendered the address insufficient to ensure that it would arrive at the Special Procedures Unit where all bankruptcy matters are handled.  *See* Declaration of Kenneth L. Parsons dated April 29, 2011 (the "Parsons Decl.") at ¶ 3.

      6.      On or about December 10, 2008, the Court entered an Order granting the Bar Date Motion (the "Bar Date Order").  The Debtors did not serve BOE with the Bar Date Order.  See, Affidavit of Service filed by the Debtors in connection with the Bar Date Order [Docket # 1162].  See Duffy Decl. at Exhibit C.  On December 17, 2008, the Debtors served a Notice of Deadline for Filing Proofs of Claim.  [Docket # 966].  According to the Affidavit of Service [Docket # 1314], the Debtors served BOE at various addresses, but not at the BOE Address.  A true and correct copy of the Affidavit of Service for the Notice of Deadline for Filing Proofs of Claim is annexed to the Duffy Decl. at Exhibit D.  Upon learning of the Bar Date, the BOE employees worked diligently to assemble their proofs of claim and timely file them with the Court.

      7.      On April 29, 2009, well in advance of the May 11, 2009 Bar Date, BOE sent the following claims by regular mail to the Bankruptcy Court for filing:

> A) The Disallowed Claim, a priority tax claim against Circuit City West Coast, Inc., in the amount of $2,846,666.34.  The Court stamped the Disallowed Claim as having been received on May 15, 2009 and designated it as Claim Number 13049 (*See* Duffy Decl. at Exhibit B);
>
> B) Administrative claim against Circuit City Stores Inc., in the amount of $325,605.29 (the "CCSI Admin. Claim").  The Court stamped the CCSI Admin. Claim as having been received on <u>May 11, 2009</u>, the Bar Date, and designated it as Claim Number 13186 (*See* Duffy Decl. at Exhibit E).

8. On April 30, 2009, BOE mailed a separate administrative claim against Circuit City Stores West Coast, Inc., in the amount of $2,525,699.69 (the "CCSWC Admin. Claim"). The Court stamped the CCSWC Admin. Claim as having been received on May 11, 2009, the Bar Date, and designated it as Claim Number 13187. *See* Parsons Decl. at ¶ 11.[1]

9. On February 19, 2010, the Debtors filed Debtors' Sixty-Eighth Omnibus Objection to Claims (Disallowance of Certain Late Claims) (the "Claims Objection"), seeking to expunge the Disallowed Claim on the basis that it was filed after the Bar Date. *See* Duffy Decl. at Exhibit F. The associated Affidavit of Service [Docket # 6708] reveals that the BOE was not served with the Claims Objection. *See* Duffy Decl. at Exhibit G.

10. On or about March 31, 2010, the Court entered the Expungement Order expunging the Disallowed Claim. The Expungement Order directed the Debtors "to serve a copy of this Order on the Claimants included on the exhibits to this Order on or before five (5) business days from the entry of this Order." *See* Duffy Decl. at Exhibit H. The May 11, 2010 Affidavit of Service [Docket # 7486] filed in connection with the Expungement Order shows that BOE was not served with the Expungement Order. *See* Duffy Decl. at Exhibit I.

11. On or about October 28, 2010, approximately seven months after entry of the Expungement Order, Peter Larsen, Esq., Circuit City's outside tax counsel, sent a letter to the BOE referencing the fact that "Claim 13049 was filed late and the bankruptcy court disallowed the claim on March 31, 2010." *See* Parsons Decl. at ¶ 12. This was the first notice that BOE received that the Court disallowed its claim. BOE representatives subsequently spoke with Tim

---

[1] On March 16, 2009, the BOE filed a priority claim against Circuit City Purchasing Company, LLC in the amount of $36,033.68, which the Court designated as Claim Number 12002 (the "CCPC" Claim). The CCSI Admin. Claim, the CCSWC Claim and the CCPC Claim are referred to collectively as the "BOE Claims." The BOE's Claims involve underpayments of sales tax and related penalties and interest owed by these Debtors.

NYDOCS1-965281.7         - 5 -

Gillis, an attorney in the same office as Mr. Larsen, who communicated his desire to compromise the tax issues relating to the Disallowed Claim. *See* Parsons Decl. at ¶ 13. The Debtors and the BOE engaged in settlement discussions, specifically referencing the "late filing issue" as part of those discussions. Circuit City has communicated to the BOE its position regarding certain bad debt adjustments and asserted its disagreement with the amounts claimed by BOE. Although the BOE has requested specific additional documents from the Trustee to consider these debt adjustment assertions, to date, the BOE has not received any documents.

12. On August 24, 2009, the Debtors and the Creditors' Committee filed a Plan (the "Plan") substantively consolidating the various Debtor's estates and providing for the orderly liquidation of the Debtors' remaining assets and the distribution of the proceeds of the liquidation of the Debtors' assets.

13. The Plan provides for the establishment of a Liquidating Trust. The Liquidating Trustee is the Disbursing Agent under the Plan. The Initial Distribution Date is at least five days after the funding of the Liquidating Trust. Plan at 1.73. It is unclear if the Liquidating Trustee has commenced distributions under the Plan.

14. Allowed Priority Tax Claims are to be paid, pursuant to the Plan, in full. *See* Disclosure Statement at Art. VIII.C.1(b); Plan at Art. III.B.2. The Plan provides for the Liquidating Trustee to fund a Priority Tax Claims Reserve in the liquidated Face Amount of all Priority Tax Claims that have not been paid by the Debtors. Plan at Art. V.E.7. As of December 31, 2010, the balance in the Priority Tax Claims Reserve was $29.5 million. *See* Balance Sheet. Objections to priority tax claims remain outstanding, including an objection to the BOE Claims.

15. This Court entered its Order confirming the Plan on September 14, 2010. The Effective Date of the Plan occurred on November 1, 2010.

**RELIEF REQUESTED AND BASIS THEREFOR**

16.     The BOE requests, pursuant to section 502(j) of the Bankruptcy Code, for cause shown and considering the equities of this case, that the Court reconsider and vacate the Expungement Order and allow the Disallowed Claim.

17.     Section 502(j) of the Bankruptcy Code provides, in part, that: "[a] claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case."  11 U.S.C. § 502(j).

18.     Bankruptcy Rule 3008, which implements section 502(j), further provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.  The court after a hearing on notice shall enter an appropriate order." Fed. R. Bankr. P. 3008.[2]  It is within the court's power and discretion to reconsider a previously disallowed claim and if a motion to reconsider is granted, the court must provide notice and hold a hearing before it may vacate or modify the order at issue or take any other appropriate action. Fed. R. Bankr. P. 3008, Advisory Committee's note (1983); *see also In re Fox*, 64 B.R. 148, 151 (Bankr. N.D. Ohio 1986) (recognizing that Bankruptcy Court has substantial discretion in deciding whether to grant a motion to reconsider a claim under section 502(j)).

19.     Although the Bankruptcy Code does not define "cause," courts within this Circuit typically examine "cause" under 502(j) by applying a balancing test utilizing the

---

[2] Section 502(j) permits a motion for reconsideration of a previously allowed or disallowed claim to be brought at any time before a bankruptcy case is closed.  *In re Ambassador Park Hotel,* 61 B.R. 792, 796-97 (N.D. Tex. 1986); *In re Gomez,* 250 B.R. 397, 400 (Bankr. M.D. Fla. 1999); *In re Schaffer,* 173 B.R. 393, 394 (Bankr. N.D. Ill. 1994).  The one-year limitation on reconsideration of certain orders and judgments is not implicated here as "Rule 60 [Federal Rule of Civil Procedure] applies in cases under the Code except that (1) a motion to reopen a case under the Code or for reconsideration of an order allowing or disallowing a claim against the estate <u>entered without a contest</u> is not subject to the one year limitation prescribed in Rule 60(c)….  Fed. R. Bankr. P. 9024 (emphasis added).

"excusable neglect" factors articulated in *Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380 (1993). *See, In re Res. Reclamation Corp. of America,* 34 B.R. 771, 773-74 (9th BAP 1983); *see also In re Cassell*, 206 B.R. 853, 856 (Bankr. W.D. Va. 1997) (recognizing that excusable neglect factors are applicable and provide guidance, applying *Res. Reclamation*). These factors are:

> (1) whether granting the delay will prejudice the debtor or other creditors; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; (5) whether clients should be penalized for their counsel's mistake or neglect; and (6) whether the claimant has a meritorious claim.

*Cassell*, 206 B.R. at 856 (*quoting Res. Reclamation*). Analysis of these factors[3] demonstrates that cause exists to vacate the Expungement Order and allow the Disallowed Claim.

### A.    Granting Reconsideration of the Expungement Order and Allowing the Disallowed Claim Will Not Prejudice The Debtors or Their Creditors

20.    Neither the Debtors nor their creditors will suffer any prejudice if the Court were to allow the Disallowed Claim.

21.    The Debtors and creditors will suffer no prejudice because the Plan is a liquidating plan. *See, e.g., In re Sacred Heart Hosp.,* 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) (holding that the debtor would suffer no prejudice largely because the debtor's plan was a liquidating plan); *In re Crane Rental Co., Inc.*, 341 B.R. 118, 122 (Bkrtcy. D. Mass. 2006) (finding that allowing a late filed claim would not prejudice the debtor because "the Debtor's confirmed plan is a liquidating plan."); *In re BuildNet, Inc.*, 2003 WL 22078079, *3 (Bankr.

---

[3] The Court need not consider the fifth factor, whether clients should be penalized for their counsel's mistake or neglect, because no mistake or neglect on the part of counsel occurred.

M.D. N.C. 2003) (finding that "allowing the Movants' late filed proofs of claim will not prejudice the Debtors. The Plan is a liquidating plan pursuant to which the Debtors' assets are to be sold and distributions made to creditors in accordance with Bankruptcy Code priorities."); *In re Premier Membership Srvcs., LLC*, 276 B.R. 709, 714 (Bankr. S.D. Fla. 2002) (holding that "in a liquidating plan there is very little danger of prejudice.") (citations omitted). Also, the Disallowed Claim, if allowed, would represent a very small fraction of the aggregate allowed priority tax claims. Moreover, it is possible that no distributions will need to be unwound by allowance of the Disallowed Claim. Where no distribution has occurred under a plan, courts have routinely granted motions for reconsideration filed by creditors. *See Res. Reclamation*, 34 B.R. at 772-74; *Fox,* 64 B.R. at 151-52; *Cassell*, 206 B.R. at 858, n. 6. Thus, the Debtors' liability under the Plan will not increase if the Disallowed Claim is permitted. Accordingly, the amount of the Disallowed Claim will not affect the feasibility of the Plan and no prejudice exists. Even if prejudice existed, it would be entirely of the Debtors own making based on their failure to serve the BOE with the Claims Objection and the Expungement Order.

22. The BOE, however, would suffer great prejudice if the Court denied the Motion. Disallowing this claim effectively allows other creditors to "receive a windfall to which they are not entitled on the merits." *Res. Reclamation*, 34 B.R. at 773 (quoting *In re Gibraltar Amusements, Ltd.,* 315 F.2d. 210 (2d Cir. 1963)); *see also, Washington Cty. Broadcasters,* 39 B.R. 77, 79 (Bankr. D. Me. 1984) (holding that "to deny reconsideration of the disallowance of a just claim would result in an undeserved windfall to other creditors").

23. Further, denial of the Motion and allowing the Expungement Order to stand would effectively amount to a default judgment against the BOE, which is disfavored under the law. *Washington Cty.,* 39 B.R. at 79 (granting a motion for reconsideration where it

classified an order disallowing a creditor's claim as, in essence, a default judgment and that "default judgments are not favored in the law").

24.     Since the Debtors and other creditors would not be prejudiced (and creditors would receive an unfair windfall), whereas the BOE would suffer great prejudice, the first factor to establish cause for reconsideration under 502(j) of the Bankruptcy Code is satisfied.

B.     **The BOE Acted Promptly and Reasonably Upon Discovery of the Omnibus Objection and the Resulting Delay was Minimal**

25.     The extent of the delay here is minimal and reasonable because the BOE acted promptly upon learning that its claim had been disallowed. Courts typically grant motions for reconsideration where a movant acts promptly to remedy a situation. *Fox,* 65 B.R. at 152 (granting motion to reconsider where movant acted promptly to file motion).

26.     Although the passage of time is a factor, it is not conclusory standing alone. *Res. Reclamation*, 34 B.R. at 773 (reversing denial of motion to reconsider claim where eight months elapsed between entry of order expunging claims and filing of reconsideration motion). Here, because of the Debtors' failure to serve the Claims Objection and the Expungement Order on the BOE, the BOE did not learn that its claim had been disallowed until October 2010. Since that time, the BOE and the Debtors negotiated the BOE Claims, specifically referencing the Disallowed Claim as part of those discussions. It was not until the end of February 2011 that the BOE learned the Debtors would not consent to allowance of the Disallowed Claim, leading to this Motion. Thus, the BOE's course of conduct was reasonable. *See, e.g., Cassell*, 206 B.R. at 857 (finding delay of almost two years reasonable where creditor

was unaware for a year and half that its claim had been disallowed and, upon learning of disallowance, negotiated with Trustee for six months before filing reconsideration motion).

27. Because the BOE acted promptly and any resulting delay has been minimal, the second factor to establish cause for reconsideration under 502(j) of the Bankruptcy Code is satisfied.

## C. The Delay Resulted From the Debtors' Failure to Serve the Claims Objection and the Expungement Order on The BOE, And Was Therefore Beyond the BOE's Control

28. Two simple facts explain any "delay" in filing the Motion. First, the BOE had no knowledge for seven months that its claim had been objected to and disallowed, because the Debtors failed to properly serve the BOE with both the Claims Objection and the Expungement Order. Second, once the BOE learned in late October 2010 that its claim had been expunged, the BOE had ongoing negotiations with the Debtors, which fell apart at the end of February 2011. Any delay, therefore, was beyond the BOE's reasonable control.

29. Indeed, it was the Debtors' obligation to properly serve the BOE and the affected creditors. "The burden is on the debtors to accurately complete their schedule of names and addresses of creditors." *In re GST Telecom., Inc.*, No. 00-1082-GMS, 2002 WL 1737445, at \*6 (*citing In re Faden*, 170 B.R. 304, 308 (Bankr. S.D. Tex. 1994)). Furthermore, the name and address listed on a creditor's proof of claim serve as definitive markers for the creditor's submission to the court's jurisdiction and for the debtor to properly serve the creditor with subsequent filings. *See In re Anderson*, 330 B.R. 180, 186 (Bankr. S.D. Tex. 2005); *In re Hawthorne*, 326 B.R. 1, 3-5 (Bankr. D.D.C. 2005). It is beyond dispute that the Debtors failed to

provide notice of, or serve BOE with, the Claims Objection or the Expungement Order.[4] "When the rights of specific parties involved in a bankruptcy case become an issue, for example, an objection to a proof of claim… service of the initiating motion or objection on the affected party is required." *In re Boykin*, 246 B.R. 825, 829 (Bankr. E.D. Va. 2000); *see also* Fed. R. Bankr. P. 3007 ("A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant…at least 30 days prior to the hearing."). Here the Debtors made no attempt to serve the BOE with the Claims Objection or the Expungement Order.

30. This Court has previously emphasized the importance of due process:

> Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures ... it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another."

*In re Circuit City Stores, Inc.*, 426 B.R. 560, 566 (Bankr. E.D. Va. 2010) (internal citations omitted).

31. Given that the Debtors refused to stipulate to the timeliness of the Disallowed Claim in late February 2011, it is completely justifiable and reasonable that BOE is now seeking reconsideration of the Expungement Order. Much like the creditor in *Cassell*:

> During this period, Shawsville was making a bona fide effort to negotiate with the Trustee in the hopes that a motion for reconsideration would not be required. Only when it became obvious that the Debtor did not consent… did the necessity of such a motion become apparent.

206 B.R. at 857. The *Cassell* court found the creditor's "course of conduct was reasonable" and "the delay was justifiable." *Id.*

---

[4] Interestingly, the charts attached to both the Claims Objection and the Expungement Order list the correct BOE Address, yet the Debtors failed to serve the BOE. *See* Duffy Decl. at Exhibit J.

32. Here, the BOE was denied due process by the Debtors' failure to serve the Claims Objection and the Expungement Order. Moreover, that failure renders any delay outside the BOE's reasonable control. Therefore, the third factor to establish cause for reconsideration under 502(j) of the Bankruptcy Code is satisfied.

### D. The BOE Has Acted in Good Faith

33. The Court should reconsider the Disallowed Claim because the BOE has acted in good faith.

34. As addressed directly above, BOE can establish its good faith based on the fact that it did not know that the Court disallowed its claim until approximately seven months after the Court issued the Expungement Order. Upon learning of the disallowance, BOE communicated with the Debtors about resolving the outstanding tax claims. After months of negotiations, the Debtors refused to stipulate to the timeliness of the Disallowed Claim. The BOE's good faith is demonstrated by the prompt filing of this Motion after settlement negotiations with the Debtors over the BOE Claims, which specifically incorporated the Disallowed Claim, broke down. *See Fox,* 64 B.R. 148 (granting motion for reconsideration where party promptly moved the court).

35. Therefore, the fourth factor to establish cause for reconsideration under 502(j) of the Bankruptcy Code is satisfied.

### E. The BOE Has A Meritorious Claim

36. The BOE has a meritorious claim against the Debtors. When determining whether to grant or deny a motion for reconsideration, courts should make a predetermination on the merits of the movant's claim. *Res. Reclamation,* 34 B.R. at 774; *In re Cassell,* 208 B.R. at 383; *Fox,* 64 B.R. at 152.

37. The Debtors have not challenged the legitimacy of the Disallowed Claim. Indeed, the documents filed with the Disallowed Claim evidence the Debtors' indebtedness to the BOE. *See* Duffy Decl. at Exhibit D.

38. The only issue with respect to the Disallowed Claim is why was it not filed timely by the Bar Date to begin with. The BOE anticipates that the Debtors will argue that the late filing of the Disallowed Claim renders that claim meritless.

39. However, Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims "where the failure to act was the result of excusable neglect." The Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) expanded the concept of excusable neglect by stating that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388. Further, the Court emphasized that the focus is on the actions of the movant in evaluating an excusable neglect argument and that it is an equitable determination, taking into account all relevant circumstances. *See id.* at 395-98.

40. As set forth above, the "excusable neglect" factors are similar to those utilized in examining cause under section 502(j), *supra* at paragraph 19.[5] Accordingly, the BOE will not duplicate its analysis of each factor, but will supplement that analysis as appropriate. Analysis of the relevant factors associated with excusable neglect weigh heavily in favor of allowing the Disallowed Claim.

   *i. Lack of Prejudice to the Debtors*

---

[5] Courts have emphasized that the cause standard under section 502(j) is as stringent excusable neglect standard. *See Cassell* 206 B.R. at 856.

41. As set forth above in paragraphs 20-23, the Debtors will suffer no prejudice if the Disallowed Claim is considered timely filed. If any prejudice will result, it will only be that the Debtors would be disadvantaged in negotiating a settlement with the BOE. Although the Debtors may dispute the amount owed to the BOE per the Disallowed Claim, the Debtors have not asserted that they do not owe the BOE some amount of the claimed taxes and, thereby, "disallowance of [creditor's] claim would result in a windfall gain to the Debtor." *Cassell*, 206 B.R. at 858. The BOE's actions have not significantly delayed the judicial administration of the case.

      *ii.    Length of Delay and Impact on Judicial Proceedings*

42. The length of the delay in filing the proof of claim is not dispositive. *In re Premier Membership Srvcs., LLC*, 276 B.R. 709, 715 (Bankr. S.D. Fla. 2002). Courts have permitted late claims as much as two years after the bar date where there was no effect on judicial administration. *See, e.g., In re Beltrami Enterprises, Inc.,* 178 B.R. 389 (Bankr.M.D.Pa.1994). Here, the Disallowed Claim was stamped received a mere four days after the Bar Date. As set forth herein, deeming the Disallowed Claim timely filed would not impact judicial proceedings here.

      *iii.    Intervening Circumstances beyond the BOE's Control Caused the Delay of Filing the Claim*

43. The BOE mailed the Disallowed Claim and the CCSI Admin. Claim to the same address on the same day, and only the CCSI Admin. Claim arrived on the Bar Date. In fact, the BOE mailed the CCSWC Claim the day after the Disallowed Claim and that claim managed to arrive before the Disallowed Claim. Because the BOE cannot explain the inner workings of the U.S. Postal Service and given that one claim sent simultaneously and another

claim sent subsequently arrived timely, it was reasonable for the BOE to believe that the Claim would timely arrive at the appointed destination. Unfortunately, for reasons beyond the BOE's control, the Disallowed Claim arrived four days late.

### *iv.   The BOE Acted in Good Faith*

44.   Courts often give little weight to the good faith factor in an excusable neglect analysis. *BOUSA, Inc. v. United States (In re Bulk Oil (USA) Inc.),* 2007 WL 1121739, n. 6 (S.D.N.Y. Apr.11, 2007). Nonetheless, the BOE acted in good faith. First, the BOE did not receive the Bar Date Notice or the Bar Date Order. While the BOE ultimately received actual notice of the Bar Date, it acted promptly in preparing the Disallowed Claim. Second, the facts show that the BOE mailed the Disallowed Claim to the Court just under two weeks before the Bar Date. *See* Parsons Decl. at ¶ 6-9. The CCSI Admin. Claim, mailed the same day as the Disallowed Claim, and the CCSWC Admin. Claim mailed the following day, were timely received by the Court. *See* Parsons Decl. at ¶ 8-11. The BOE acted reasonably by mailing the Disallowed Claim well in advance of the Bar Date, and it had no basis to believe that the Disallowed Claim, mailed April 29 would not be filed with the Court until May 15, a mere four days after the Bar Date.

45.   Therefore, the BOE has a meritorious claim against the Debtors. Accordingly, the Court should grant the Motion.

## CONCLUSION

**WHEREFORE**, in failing to serve the BOE with the Objection, the Debtor, denied the BOE its due process rights and because analysis of the factors associated with excusable neglect mandate vacating the Disallowance Order, the BOE request that this Court

enter an order: (i) vacating the Disallowance Order; (ii) deeming the claim as timely filed; and

(iii) granting such other and further relief that the Court deems just and proper.

Dated:  Richmond, Virginia
        May 3, 2011

**STATE OF CALIFORNIA,**
**STATE BOARD OF EQUALIZATION**

By:  */s/ William H. Schwarzschild, III*
    William H. Schwarzschild, III (VSB No. 15274)
    R. Joseph Noble (VSB No. 77138)
    **WILLIAMS MULLEN**
    Williams Mullen Center
    200 South 10th Street, Suite 1600
    Post Office Box 1320
    Richmond, Virginia 23218-1320
    Tel: 804.420.6489
    Fax: 804.420.6507

    -and-

    Todd E. Duffy, Esq.
    Dennis J. Nolan, Esq.
    **ANDERSON KILL & OLICK, P.C.**
    1251 Avenue of the Americas
    New York, New York 10020-1182
    Tel: 212.278.1000
    Fax: 212.278.1733

    *Counsel for the State of California,*
    *State Board of Equalization*

14953869_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 3rd day of May, 2011, caused the service of a copy of the foregoing Motion of the State of California, State Board of Equalization to (i) Reconsider and Vacate Prior Order of the Court Expunging Claim Number 13049; and (ii) Deem Claim Number 13049 Timely Filed to be sent to the following parties, by first class mail, postage prepaid, at the following addresses and electronically to the parties set forth on the Court's ECF Service List, in this case.

>Lynn L. Tavenner, Esquire
>Paula S. Beran, Esquire
>Tavenner & Beran, PLC
>20 North Eighth Street, 2nd Floor
>Richmond, VA  23219
>
>Jeffrey N. Pomerantz, Esquire
>Andrew W. Caine, Esquire
>Pachulski Stang Ziehl & Jones LLP
>10100 Santa Monica Boulevard, 11th Floor
>Los Angeles, CA 90067-4100
>
>Robert J. Feinstein, Esquire
>John A. Morris, Esquire
>Pachulski Stang Ziehl & Jones LLP
>780 Third Ave., 36th Floor
>New York, NY 10017
>
>  *Counsel for the Liquidating Trustee*
>
>Robert B. Van Arsdale, Esq.
>701 E. Broad St., Suite 4304
>Richmond, Virginia 23219
>
>  *Office of the U. S. Trustee*

                    /s/ William H. Schwarzschild, III___