Stephen G. Murphy (Mass. BBO # 542427)
Counsel to the Commissioner
Massachusetts Department of Revenue
Litigation Bureau
100 Cambridge Street, P. O. Box 9565
Boston, MA 02114
(617) 626-3305
Attorney for Navjeet K. Bal,
Commissioner of Revenue for
the Commonwealth of Massachusetts

**Hearing (status) date: June 9, 2011, at 2:00 p.m.**
**Response deadline: May 9, 2011, at 4:00 p.m.**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653 (KRH) |
| | ) | |
| DEBTORS | ) | (Jointly Administered) |

## RESPONSE BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE TO LIQUIDATING TRUST'S OBJECTION TO CLAIM NO. 14832 FILED BY THE COMMONWEALTH OF MASSACHUSETTS

TO THE HONORABLE KEVIN R. HUENNEKENS, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Navjeet K. Bal, as she is Commissioner of Revenue for the Commonwealth of Massachusetts (hereinafter, "MDOR"), and responds in opposition to the *Liquidating Trust's Objection to Claim No. 14832 Filed by the Commonwealth of Massachusetts* (hereinafter, the "Objection"). As set forth herein, Claim No. 14832 should be allowed in the amounts and in the classifications set forth therein. In connection therewith, MDOR states as follows:

## I.    FACTUIAL BACKGROUND

1.    On November 20, 2008, the debtor, Circuit City Stores, Inc. and several of its affiliates (hereinafter, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date").

2.      On or about March 8, 2010, MDOR filed an amended proof of claim in the priority unsecured amount of $1,849,689.15 and in the general unsecured amount of $529,535.16, which claim has been designated as claim no. 12832 (the "MDOR Claim"). This claim consists of assessments for additional taxes, together with interest up to the Petition Date, for Massachusetts corporate taxes under M.G.L. c. 62 for the years 2003-2007 and for Massachusetts sales taxes under M.G.L. c. 64H for the periods from January 1, 2005 through November 30, 2008, as determined through several audit examinations conducted by MDOR of the Debtor's returns, books and records.

3.      On September 10, 2010, the United States Bankruptcy Court for the Eastern District of Virginia entered an Order (the "Confirmation Order") confirming the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims, as modified by the Confirmation Order (the "Plan").

4.      The Plan became effective on November 1, 2010.

*Audit and assessment – March 1, 2000 - February 28, 2003 corporate excise tax*

5.      On or about May 3, 2004, MDOR commenced an audit examination and verification of the three returns filed by the debtor, Circuit City Stores, Inc. (tax id. No. XXX XXX 875)(hereinafter, "Circuit City"), for the periods between March 1, 2000 through February 28, 2003, for the taxes required to be paid under M.G.L. c. 63. This examination included an examination of the books and records, and other materials of Circuit City, including changes to its Federal returns. During the course of this audit, the parties regularly agreed to extend the deadline for additional assessment.

6.      On or about May 26, 2005, MDOR provided Circuit City the audit work papers, and proposed adjustments and findings in a so-called Ten-day letter (the "2001-2003 Ten-day Letter"), which was supplemented on or about July 11, 2005, by further correspondence and additional work papers reflecting certain Federal changes. Among the purposes of these letters is the invitation to the taxpayer for an exit conference to discuss the proposed determinations and to afford the taxpayer an opportunity to present additional information and arguments prior to the issuance of a notice of intent to assess. A copy of the 2001-2003 Ten-day Letter, together with its July 11, 2005, supplement, are annexed hereto as Exhibit 1 and are incorporated herein by this reference.

7.      In this instance, Circuit City did not request an exit conference, and based upon proposed adjustments to Circuit City's returns for the periods in question as found through the audit examination process, MDOR issued to Circuit City on or about July 31, 2005, a *Notice of Intent to Assess* additional taxes for the period ending February 28, 2001 ($30,450 in tax), February 28, 2002 ($28,862 in tax), and February 28, 2003 ($163,992 in tax)(the "2001-2003 NIA"). As also explained in this notice, Circuit City had an opportunity to confer with MDOR pursuant to M.G.L. c. 62c, § 26(b) prior to final assessment. Circuit City had a period of thirty days or until August 30, 2005, in which to request such a conference. A copy of the 2001-2003 NIA is annexed hereto as Exhibit 2 and is expressly incorporated herein by this reference.

8.      On September 1, 2005, MDOR received from or on the behalf of Circuit City a DR-1 Appeals Form, in which Circuit City requested both a conference pursuant to M.G.L. c. 62C, § 26(b) and settlement consideration under M.G.L. c. 62c, § 37C. As is done in the ordinary course in such circumstances, the matter was referred and transferred to the MDOR Office of Appeals.

9.      In due course, on or about November 30, 2006, Circuit City and MDOR through its Office of Appeals entered into a settlement agreement concerning the 2001-2003 NIA. This agreement provided in substance Circuit City's agreement that the additional tax to be assessed for the periods of March 1, 2000 through February 28, 2002 would be $59,312 ($30,450 for the year ending February 28, 2001 and $28,862 for the year ending February 28, 2002), plus statutory accruals thereon; that the Net Operating Losses available for use by Circuit City for the tax year ending February 28, 2001 and available for carryover for five subsequent tax years would be $155,495,110; that the Net Operating Losses available for use by Circuit City for the tax year ending February 28, 2002 and available for carryover for five subsequent tax years would be $260,266.974; and that the additional tax for the period ending February 28, 2003 shall be assessed as proposed in the 2001-2003 NIA, but "that [Circuit City] will have full appeal rights regarding this period."

10.     To the extent that Circuit City has not yet enjoyed the full benefit of the agreed upon NOLs for the tax years ending February 28, 2001 and February 28, 2002, the cause would appear to be that Circuit City has yet to claim them as a deduction for any particular tax year in which they would be eligible to be used. The extent of their use for any particular tax year would be in accordance with applicable nonbankruptcy law, including being subject to the Massachusetts apportionment.

11.     On or about January 23, 2007, MDOR assessed Circuit City additional corporate excise taxes under the income measure of M.G.L. c. 63, § 39 for the tax year ending February 28, 2001 in the amount of $30,450, plus statutory additions, for the tax year ending February 28, 2002 in the amount of $28,862, plus statutory additions, and for the tax year ending February 28, 2003 in the amount of $163,992, plus statutory additions. In conjunction with these assessments,

MDOR issued to Circuit City on or about January 24, 2007 a *Notice of Assessment* for additional corporate taxes under M.G.L. c. 63 (the "2001-2003 NOA"). A copy of the 2001-2003 NOA is annexed hereto as Exhibit 3 and is expressly incorporated herein by this reference.

12.     Under applicable non-bankruptcy law, which in this instance would be the tax laws of the Commonwealth of Massachusetts, once a tax has been assessed, no relief can be granted from the tax unless the taxpayer has filed with MDOR an application for abatement of the tax. M.G.L. c. 62c, §§ 37, 39 & 41.

13.     On or about May 25, 2007, Circuit City filed with MDOR an application for abatement of the additional taxes assessed under the 2001-2003 NOA for the tax year ending February 28, 2003, in the tax amount of $163,992 (the "2003 Abatement Application").

14.     On or about July 27, 2007, MDOR issued to Circuit City notice of the denial of the 2003 Abatement Application.

15.     Under applicable nonbankruptcy law (M.G.L. c. 62C, § 39), a person aggrieved by the refusal of MDOR to abate or refund any tax, in whole or in part, may within sixty days after the date of notice of the decision by MDOR appeal the decision by filing a petition with the Appellate Tax Board.

16.     On September 24, 2007, Circuit City filed a petition with the Appellate Tax Board seeking relief from the additional assessment of taxes for the period ending February 28, 2003 under the 2001-2003 NOA in a case styled as *Circuit City Stores, Inc. v. Commissioner of Revenue*, (Massachusetts) Appellate Tax Board, Docket No. C293686 (the "ATB Proceeding").

17.     MDOR answered the petition and made discovery requests to Circuit City, to which Circuit City provided some responses. Circuit City has not conducted any discovery in the case. Prior to trial in this matter, Circuit City filed its bankruptcy petition, and since then the

proceedings in this case have been effectively stayed, with a series of status conferences to monitor events in the bankruptcy proceedings.

*Audit and assessment – March 1, 2003 - February 28, 2006 corporate excise tax*

18.     On or about August 22, 2007, MDOR commenced an audit examination and verification of the three returns filed by Circuit City for the periods between March 1, 2003 and February 28, 2006, for the taxes required to be paid under M.G.L. c. 63. This examination included an examination of the books and records, and other materials of Circuit City. During the course of this audit, the parties regularly agreed to extend the deadline for additional assessment.

19.     On or about October 3, 2008, MDOR provided Circuit City the audit work papers, and proposed adjustments and findings in a so-called Ten-day letter (the "2004-2006 Ten-day Letter"). Among the purposes of these letters is the invitation to the taxpayer for an exit conference to discuss the proposed determinations and to afford the taxpayer an opportunity to present additional information and arguments prior to the issuance of a notice of intent to assess. A copy of the 2004-2006 Ten-day Letter, which describes the matters that gave rise to the proposed additional assessments, is annexed hereto as Exhibit 4 and is expressly incorporated herein by this reference.

20.     In this instance, Circuit City did not request an exit conference, and based upon proposed adjustments to Circuit City's returns for the periods in question as found through the audit examination process, MDOR issued to Circuit City on or about October 20, 2008, a *Notice of Intent to Assess* additional taxes for the period ending February 28, 2004 ($194,777 in tax), February 28, 2005 ($506,223 in tax), and February 28, 2006 ($463,970 in tax)(the "2004-2006 NIA"). As also explained in this notice, Circuit City had an opportunity to confer with MDOR pursuant to M.G.L. c. 62c, § 26(b) prior to final assessment. Circuit City had a period of thirty

days or until November 19, 2008, in which to request such a conference. A copy of the 2004-2006 NIA is annexed hereto as Exhibit 5 and is expressly incorporated herein by this reference.

21.     Circuit City did not request a pre-assessment conference.

22.     On or about November 25, 2008, MDOR assessed Circuit City additional corporate excise taxes under the income measure of M.G.L. c. 63, § 39 for the tax year ending February 28, 2004 in the amount of $194,777, plus statutory additions, for the tax year ending February 28, 2005 in the amount of $506,223, plus statutory additions, and for the tax year ending February 28, 2006 in the amount of $463,970, plus statutory additions. In conjunction with these assessments, MDOR issued to Circuit City on or about May 5, 2009 a *Notice of Assessment* for additional corporate taxes under M.G.L. c. 63 (lines 1-3 thereon) (the "2004-2006 NOA")[1]. A copy of the 2004-2006 NOA is annexed hereto as Exhibit 6 and is expressly incorporated herein by this reference.

23.     Circuit City has not filed an application for abatement, in whole or in part, for assessments set forth in the 2004-2006 NOA.

*Audit and assessment – March 1, 2006 - February 28, 2008 corporate excise tax*

24.     On or about December 3, 2008, MDOR commenced an audit examination and verification of the two returns filed by Circuit City for the periods between March 1, 2006 and February 28, 2008, for the taxes required to be paid under M.G.L. c. 63. This examination included an examination of the books and records, and other materials of Circuit City. During the

---

[1] Notice of these assessments was combined with the notice of additional assessments for sales/use taxes for the periods from January 1, 2005 through October 31, 2008. A delay or even a failure to provide notice to a taxpayer of an assessment does not affect the validity of the tax or its assessment. M.G.L. c. 62C, § 26(b) ("Failure to receive the notice provided by this paragraph shall not affect the validity of the tax.")

course of this audit, the parties regularly agreed to extend the deadline for additional

assessment[2].

25.     On or about January 6, 2010, MDOR provided Circuit City the audit work papers,

and proposed adjustments and findings in a so-called Ten-day letter (the "2007-2008 Ten-day

Letter"). Among the purposes of these letters is the invitation to the taxpayer for an exit

conference to discuss the proposed determinations and to afford the taxpayer an opportunity to

present additional information and arguments prior to the issuance of a notice of intent to assess.

A copy of the 2007-2008 Ten-day Letter, which describes the matters that gave rise to the

proposed additional assessments, is annexed hereto as Exhibit 7 and is expressly incorporated

herein by this reference.

26.     In this instance, Circuit City did not request an exit conference, and based upon

proposed adjustments to Circuit City's returns for the periods in question as found through the

audit examination process, MDOR issued to Circuit City on or about January 18, 2010, a *Notice*

*of Intent to Assess* additional taxes for the period ending February 28, 2007 ($194,119 in tax)

(the "2007 NIA"). As also explained in this notice, Circuit City had an opportunity to confer with

MDOR pursuant to M.G.L. c. 62c, § 26(b) prior to final assessment. Circuit City had a period of

thirty days or until February 17, 2010, in which to request such a conference. A copy of the 2007

NIA is annexed hereto as Exhibit 8 and is expressly incorporated herein by this reference.

27.     Circuit City did not request a pre-assessment conference.

28.     On or about February 24, 2010, MDOR assessed Circuit City additional corporate

excise taxes under the income measure of M.G.L. c. 63, § 39 for the tax year ending February 28,

2007 in the amount of $194,119, plus statutory additions, and for statutory additions connected

with the original return filed by Circuit City for the period. In conjunction with these

---

[2] After November 20, 2008, such consents were also unnecessary per M.G.L. c. 62C, § 26(b).

assessments, MDOR issued to Circuit City on or about February 25, 2010 a *Notice of Assessment* for additional corporate taxes under M.G.L. c. 63 (the "2007 NOA"). A copy of the 2007 NOA is annexed hereto as Exhibit 9 and is expressly incorporated herein by this reference.

29.     Circuit City has not filed an application for abatement, in whole or in part, for assessments set forth in the 2007-2008 NOA.

*Audit and assessment – January 1, 2005 – July 31, 2007 sales and use tax*

30.     On or about August 28, 2007, MDOR commenced an audit examination and verification of the multiple returns filed by Circuit City for the periods between January 1, 2005 through July 31, 2007, for the taxes required to be paid under M.G.L. c. 64H (sales tax) and 64I (use tax). This examination included an examination of the books and records, and other materials of Circuit City. During the course of this audit, the parties regularly agreed to extend the deadline for additional assessment.

31.     On or about February 20, 2009, MDOR provided Circuit City the audit work papers, and proposed adjustments and findings in a so-called Ten-day letter (the "1/1/2005-7/31/2007 Ten-day Letter"). Among the purposes of these letters is the invitation to the taxpayer for an exit conference to discuss the proposed determinations and to afford the taxpayer an opportunity to present additional information and arguments prior to the issuance of a notice of intent to assess. A copy of the 1/1/2005-7/31/2007 Ten-day Letter, which describes the matters that gave rise to the proposed additional assessments, is annexed hereto as Exhibit 10 and is expressly incorporated herein by this reference.

32.     In this instance, Circuit City did not request an exit conference, and based upon proposed adjustments to Circuit City's returns for the periods in question as found through the audit examination process, MDOR issued to Circuit City on or about March 7, 2009, a *Notice of*

*Intent to Assess* additional sales and use taxes for the periods running from January 1, 2005

through July 31, 2007 in the aggregate tax and interest (up to the Petition Date) of $288,289.10

(hereinafter, the "2005-2007 Sales NIA"). As also explained in this notice, Circuit City had an

opportunity to confer with MDOR pursuant to M.G.L. c. 62c, § 26(b) prior to final assessment.

Circuit City had a period of thirty days or until April 6, 2009, in which to request such a

conference. A copy of the 2005-2007 Sales NIA is annexed hereto as Exhibit 11 and is expressly

incorporated herein by this reference.

33.    Circuit City did not request a pre-assessment conference.

34.    On or about April 12, 2009, MDOR assessed Circuit City additional sales and use

taxes under M.G.L. c. 64H & 64I for the periods running from January 31, 2005 through March

31, 2007 in the aggregate tax amount of $229,700. In conjunction with these assessments,

MDOR issued to Circuit City on or about May 5, 2009, a *Notice of Assessment* for additional

sales and use taxes for those periods (lines 5-35 thereon) (the "2005-2007 Sales NOA"). A copy

of the 2005-2007 Sales NOA is annexed hereto as Exhibit 12 and is expressly incorporated

herein by this reference.

35.    Circuit City has not filed an application for abatement, in whole or in part, for

assessments set forth in the 2005-2007 Sales NOA.

*Audit and assessment – August 1, 2007 – November 30, 2008 sales and use tax*

36.    On or about February 6, 2009, MDOR commenced an audit examination and

verification of the multiple returns filed by Circuit City for the periods between August 1, 2007

through November 30, 2008, for the taxes required to be paid under M.G.L. c. 64H (sales tax)

and 64I (use tax). This examination included an examination of the books and records, and other

materials of Circuit City. During the course of this audit, the parties regularly agreed to deadline the period for additional assessment.

37.     On or about February 26, 2009, MDOR provided Circuit City the audit work papers, and proposed adjustments and findings in a so-called Ten-day letter (the "8/1/2007-11/30/2008 Ten-day Letter"). Among the purposes of these letters is the invitation to the taxpayer for an exit conference to discuss the proposed determinations and to afford the taxpayer an opportunity to present additional information and arguments prior to the issuance of a notice of intent to assess. A copy of the 8/1/2007-11/30/2008 Ten-day Letter, which describes the matters that gave rise to the proposed additional assessments, is annexed hereto as Exhibit 13 and is expressly incorporated herein by this reference.

38.     In this instance, Circuit City did not request an exit conference, and based upon proposed adjustments to Circuit City's returns for the periods in question as found through the audit examination process, MDOR issued to Circuit City on or about March 13, 2009, a *Notice of Intent to Assess* additional sales and use taxes for the periods running from August 1, 2007 through November 30, 2008 in the aggregate tax and interest (up to the Petition Date) of $120,761.56 (hereinafter, the "2007-2008 Sales NIA"). As also explained in this notice, Circuit City had an opportunity to confer with MDOR pursuant to M.G.L. c. 62c, § 26(b) prior to final assessment. Circuit City had a period of thirty days or until April 12, 2009, in which to request such a conference. A copy of the 2007-2008 Sales NIA is annexed hereto as Exhibit 14 and is expressly incorporated herein by this reference.

39.     Circuit City did not request a pre-assessment conference.

40.     On or about April 19, 2009, MDOR assessed Circuit City additional sales and use taxes under M.G.L. c. 64H & 64I for the periods running from August 1, 2007 through

November 30, 2008 in the aggregate tax amount of $113,405. In conjunction with these assessments, MDOR issued to Circuit City on or about April 21, 2009, a *Notice of Assessment* for the period of November 2008, and then on or about May 5, 2009, a *Notice of Assessment* for the periods of August 1, 2007 through October 31, 2008 (lines 36-50) for additional sales and use taxes for those periods (together the "2007-2008 Sales NOA"). A copy of the 2007-2008 Sales NOA is annexed hereto as Exhibit 15 and is expressly incorporated herein by this reference.

41.     Circuit City has not filed an application for abatement, in whole or in part, for assessments set forth in the 2007-2008 Sales NOA.

## II.     LEGAL STANDARD

43.     When the non-bankruptcy law that creates a tax obligation allocates the burden of proof, the burden of proof in an objection to the tax claim in a bankruptcy proceeding is allocated in the same manner. *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000). The MDOR Claim arises under the tax laws of Massachusetts and under those laws the burden is upon the taxpayer (and in this instance, Circuit City and the Liquidating Trust) to establish that the claim should not be allowed against the estate. *M & T Charters, Inc. v. Commissioner of Revenue*, 404 Mass. 137, 140 (1988), and *Towle v. Commissioner of Revenue*, 397 Mass. 599, 603 (1986). "In the absence of substantial, credible evidence establishing that the subject assessment was excessive in amount or illegal, the assessment is presumed to be correct," *Pippins v. Commissioner of Revenue*, Mass. A.T.B. No. 203199, at 8, 1997 Mass. Tax LEXIS 13 (1997), *affirmed* 44 Mass. App. Ct. 1108 (1998).

44.     A proof of claim filed in accordance with the Bankruptcy Rules is prima facie evidence of the validity and the amount of the claim. Fed. R. Bank. P. Rule 3001(f); *In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir. 1993), *cert denied*, 506 U.S. 891 (1993);

*United States v. Braunstein*, 209 B.R. 152, 155, 157 (Bankr. D. Mass. 1997). To rebut the

presumption that attaches to a proof of claim, the objecting party must come forward with

"substantial evidence" in support of its asserted grounds. *Hemingway Transport*, 993 F.2d at 925.

The mere filing of an objection to a proof of claim with nothing more is in itself "insufficient to

overcome the rebuttable presumption." *In re White*, 168 B.R. 825, 828 (Bankr. D. Conn. 1994).

45.    The basis of the MDOR Claim is statutory – the statutes being the tax laws of the

Commonwealth. "Courts have consistently rejected the argument that [the Rule 3001(c)]

documentation requirement extends to claims based upon statutory, rather than written,

obligations." *United States v. Braunstein (In re Pan)*, 209 B.R. 152, 156 (D. Mass.

1997)("insufficient documentation" not a basis for objection to or for disallowance of IRS

responsible person assessment). *See*, also, *State Board of Equalization v. Los Angeles*

*International Airport Hotel Associates (In re Los Angeles International Airport Hotel*

*Associates)*, 106 F.3d 1479, 1480 (9th Cir. 1997)("insufficient documentation" not a basis for

objection to or for disallowance of state use tax assessment) and *In re White*, 168 B.R. at 829

(same for estimated federal income taxes).

46.    "What claims of creditors are valid and subsisting obligations against the

bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of

overruling federal law, is to be determined by reference to state law." *Vanston Bondholders*

*Protective Comm. v. Green*, 329 U.S. 156, 161 (1946). "Unless some federal interest requires a

different result, there is no reason why [the state] interests should be analyzed differently simply

because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440

U.S. 48, 55 (1979).

47.     Although as a general matter the evidentiary standard in a contested tax

proceeding is usually by the preponderance of the evidence, in certain instances the taxpayer

must meet a higher evidentiary standard. One instance of a greater evidentiary burden on a

taxpayer is found in M.G.L. c. 62C, § 3A, which provides that:

> In applying the laws referred to in section 2, the commissioner may, in his discretion,
> disallow the asserted tax consequences of a transaction by asserting the application of the
> sham transaction doctrine or any other related tax doctrine, in which case the taxpayer
> shall have the burden of demonstrating by clear and convincing evidence as determined
> by the commissioner that the transaction possessed both: (i) a valid, good-faith business
> purpose other than tax avoidance; and (ii) economic substance apart from the asserted tax
> benefit. In all such cases, the taxpayer shall also have the burden of demonstrating by
> clear and convincing evidence as determined by the commissioner that the asserted
> nontax business purpose is commensurate with the tax benefit claimed. Nothing in this
> section shall be construed to limit or negate the commissioner's authority to make tax
> adjustments as otherwise permitted by law.

## III.     THE GROUNDS ASSERTED IN THE OBJECTION ARE INSUFFICIENT AND INADEQUATE TO DISALLOW THE MDOR CLAIM OR ANY PORTION OF IT

48.     The Objection does not begin to list specific grounds in its support until the 26th

paragraph, where it leads with an assertion of the applicability of the documentation requirement

under Federal Rules of Bankruptcy Procedure Rule 3001(c). However, the MDOR Claim is not

based upon any writing as that concept is used in Rule 3001(c), but is a tax claim based upon the

tax laws of the Commonwealth of Massachusetts and therefore it is not subject to the

documentation requirement. *See, ¶* 45 above.

49.     While it is not necessary, MDOR nonetheless has in this response provided

evidence (exhibits 3, 6, 9, 12 & 15) of the assessments that are asserted in the MDOR Claim. The

proof of claim itself and the information contained therein is also evidence of those assessments.

14

50.     The Objection is brought under Section 502 of the Bankruptcy Code[3]. The core question, then, is whether the assessments are enforceable against the debtor or property of the estate under applicable law. Under applicable nonbankruptcy law, a taxpayer is required to pay a tax at the time when a tax return is required to be filed or, in the case of an assessment under M.G.L. c. 62C, § 26 (such as those constituting the MDOR Claim), by the thirtieth day following the notice of tax due, together with interest and penalties. M.G.L. c. 62C, § 32. The taxes at issue were duly assessed and have not been abated, and consequently they are properly collectible under applicable nonbankruptcy law and may be collected through, *inter alia*, an action in the nature of contract. M.G.L. c. 62C, § 47.

51.     The MDOR Claim (which does not include interest that was not matured on the Petition Date) is under applicable nonbankruptcy law enforceable against the debtor and property of the estate. The Objection has not even raised the existence of a Federal interest that might require a different result. Consequently, under Section 502 of the Bankruptcy Code the MDOR Claim is an allowed and allowable claim, and there are no grounds to disallow the claim in whole or in part.

52.     The Objection does, however, attempt to raises allegations that appear intended to attack the legality and the amounts of the taxes at issue, which are matters outside the scope of Section 502 of the Bankruptcy Code and the relief available in a claims objection.

53.     Under applicable nonbankruptcy law, other than through statutory abatement procedure, and with it the adjudication by specialized administrative tribunal reviewable by the Massachusetts Appeals Court and, when appropriate, the Supreme Judicial Court, the legality of a tax cannot be attacked. M.G.L. c. 62C, § 41.

---

[3] The Objection also invokes Section 503 of the Bankruptcy Code, but no portion of the MDOR Claim is for an administrative expense.

54.     As a general proposition, the Federal district courts do not have subject matter jurisdiction over the assessment, levy or collection of any tax under State law. 28 U.S.C. § 1341. Section 505 of the Bankruptcy Code, however, does provide a limited discretionary exception to this general prohibition on the exercise of jurisdiction over such questions. However, the Liquidating Trust has not chosen to proceed under Section 505.

55.     Under Section 505, the bankruptcy court has concurrent jurisdiction with the nonbankruptcy tribunal to determine the legality or the amount of the tax. If and when the Liquidating Trust seeks relief from the court under Section 505, one question to be addressed is whether and to what extent the court should abstain, especially as there is a case now pending before the Massachusetts specialized administrative tribunal that, as MDOR has conducted its discovery and Circuit City evidently choose not to conduct any, would appear to be ready for trial[4].

56.     Other proceedings, whether through Section 505 of the Bankruptcy Code or through the proceedings established under the laws of Massachusetts, are required for the consideration of the three issues the Objection identifies as grounds Circuit City may have to attack the legality of the assessments presented in the MDOR Claim. Moreover, the brief discussions of those assertions that appear in the Objection are themselves insufficient to establish an abatement of the assessments. Nonetheless, for at least informational purposes, MDOR will briefly address these arguments albeit not as extensively or in depth as it would in a brief in a Section 505 proceeding, but this may provide some understanding about the likelihood of success for Circuit City's assertions.

*Add-back*

57.    The Liquidating Trust contests the legality of the add-back and imputation of

certain royalty income by MDOR in the assessments. In abbreviated form like some other

businesses in the 1990s, Circuit City transferred certain intangibles, notably its trademarks, to an

affiliate without apparent nexus to Massachusetts, and then the affiliate charged Circuit City with

royalties for the use of those marks based upon a percentage of sales. Circuit City claimed those

royalty payments on its Massachusetts returns. At some of the royalties were returned to Circuit

City as dividends that under a provision of the Massachusetts tax laws would not otherwise be

taxed.

58.    Like Circuit City, a great number of multi-state (and multi-national) companies

devised the same scheme to avoid Massachusetts taxation, with the royalty income's tax home in

a jurisdiction that either did not tax such income or did so at rates substantially less than the

Massachusetts tax rate for ordinary corporate income. In audit, MDOR disputed many of these

and some of the companies contested the assessments as "sham transactions", and in due course

a body of case law was developed[5]. In addition to the reports promulgated by the

(Massachusetts) Appellate Tax Board, the Massachusetts jurisprudence on this type of

structuring consists now directly of at least four cases: *Syms Corp. v. Commissioner of Revenue*,

436 Mass. 505 (2002); *Sherwin-Williams Co. v. Commissioner of Revenue*, 438 Mass. 71 (2002);

*IDC Research, Inc. v. Commissioner of Revenue*, 78 Mass. App. Ct. 352 (2010); and *The

Talbots, Inc. v. Commissioner of Revenue*, 79 Mass. App. Ct. 159 (2011). Although not

immediately applicable, a fifth case now holds that in like circumstances, the affiliate (which

would not be filing any Massachusetts returns in this structure), would now be subject to

---

[4] MDOR will defer at this time the analysis any issues of timeliness or what, if any, of the procedural requirements
under applicable nonbankruptcy law, including the necessity of an abatement application, may be necessary under
Section 505.

Massachusetts taxation for and based upon the royalty payments. *Geoffrey, Inc. v. Commissioner of Revenue*, 453 Mass. 17 (2009)[6].

59.    In the Objection, the Liquidating Trust only cites the sole case that upheld a trademark transfer-royalty payment restructuring, *Sherwin-Williams*[7]. Rather than providing the rule, *Sherwin-Williams* is certainly now no more than a limited exception to the prevailing rule and outcomes in these cases, which has been to uphold the ATB's findings in favor of MDOR.

60.    The Liquidating Trust has the burden of establishing that Circuit City falls within the *Sherwin-Williams* exception to the rule of disallowance of these transactions as sham transactions. The burden of proof for the Liquidating Trust, however, is now greater than what was faced by the likes of the Sherwin-Williams Co., Syms Corp., IDC Research and Talbots, as in codifying the sham transaction doctrine in M.G.L. c. 62C, § 3A, with an effective date of March 5, 2003, set the evidentiary standard that the taxpayer must meet as "clear and convincing evidence." The tax years at issue in those other cases predated the statutory change and the cases were decided under the "preponderance of evidence" standard.

61.    The Objection presents no facts or evidence of the valid, good-faith business purpose other than tax avoidance, the economic substance apart from the asserted tax benefit, and that the asserted nontax business purpose is commensurate with the tax benefit claimed. In fact, the Objection does not even articulate whatever Circuit City's "business reason" was for undertaking this arrangement. Meanwhile, the businesses of Sherwin-Williams and Circuit City were fundamentally different. The core business of Sherwin-Williams was the development,

---

[5] Upon information and belief, the claims filed in this case by some of the other taxing authorities involved assessments based upon this issue and analogous objections may have been raised.
[6] *Geoffrey* is an application of the SJC's earlier decision that the imposition an income-based excise on an out-of-State entity is not determined by the "physical presence" test, but instead by the "substantial nexus" test in *Capital One Bank v. Commissioner of Revenue*, 453 Mass. 1 (2008).

manufacture, distribution and sale of paint on a world-wide basis. It was essential to that

business that the can of paint sold under its name, whether it is in Richmond, Virginia, Natick,

Massachusetts, or Bathurst, New Brunswick, is of the same tint, texture, and quality wherever it

may be purchased. For a range of reasons, including internal business motivations and local legal

requirements, it had over the years entered into a myriad of business arrangements for the

production and distribution of its products. While some of its product was manufactured and also

distributed by itself, it also contracted or licensed others to manufacture and sell Sherwin-

Williams products. For those parties, consumer expectations about Sherwin-Williams products

was an important components to their agreements.

62.      Without centralized management of its trademarks and intellectual property,

Sherwin-Williams had difficulty managing them. For instance, a Canadian joint venture had to

be abandoned when it was discovered that one of its marks, "Canada Paint Company", had been

lost. *Sherwin-Williams*, 438 Mass. at 78-79. In its 1991 corporate reorganization of its intangible

assets, including its trademarks, the SJC found that control was consolidated with the benefits

and burdens of owning the intellectual property transferred to the new entity, which "entered into

genuine obligations with unrelated third parties for use of the " intellectual property, and

incurred and paid substantial liabilities to unrelated parties to maintain, manage and defend the

intellectual property, and invested or otherwise used the royalty income for additional income as

it, rather than the parent, saw fit. *Sherwin-Williams* 438 Mass. at 86.

63.      In contrast with Sherwin-Williams and paint, Circuit City was a chain of stores in

the United States (and, upon information and belief, perhaps a limited number in Canada) and

---

[7] In *Sherwin-Williams*, the SJC overturned the ATB decision in favor of MDOR. However, on substantially the same facts, including perhaps even the same expert witnesses, New York reached an opposite conclusion. *Sherwin-Williams Co. v. Tax Appeals Tribunal*, 12 A.D.3d 112, 784 N.Y.S.2d 178 (N.Y. App. Div. 3d Dep't 2004).

one that was not franchised to any significant degree if at all or (unlike a Sears) an extensive

lines of store brand name products. The complexity of managing Circuit City's trademarks paled

in comparison to the multi-national Sherwin-Williams (and a product of numerous mergers and

acquisitions in its 135 year history). Unlike the joint ventures foreign and domestic Sherwin-

Williams entered into that clearly were within the scope of its core business purposes, the third-

parties Circuit City contracted the use of its marks included the likes of Daytona USA, Mattel

(Driving Team), NASCAR and Roush Corp. This would appear instead to have been more in the

nature of Circuit City advertisement and the associating of Circuit City with others for marketing

purposes since there are limited shopping opportunities in a race car.

64.     The Liquidating Trust has not presented in the Objection any grounds and

certainly no sufficient grounds to abate any portion of the assessments at issue arising from this

issue.

*"Alternative Location Sales"*

65.     Massachusetts shares a border with New Hampshire. At the times relevant hereto,

Massachusetts assessed a sales tax of five (5%) percent on most retail sales. In New Hampshire,

broad-based taxes, such as a sales tax, have historically and continue to be an anathema and that

state does not have a sales tax. Not infrequently, New Hampshire retailers advertise in

Massachusetts that purchases there are "tax-free" in order to induce Massachusetts residents

drive to New Hampshire to make purchases in their stores that would otherwise be subject to

Massachusetts sales tax if purchased closer to home. While a Massachusetts resident who makes

a purchase of a product in New Hampshire that otherwise would be taxable if purchased in

Massachusetts and brings it home is still required to file and pay a use tax, doing so defeats the

entire reason for the drive to New Hampshire in the first place.

66.    Several years ago, Circuit City devised a program whereby a customer could buy an item in one store, but then pick it up at another store location. As applied in the Massachusetts stores, this greatly facilitated the New Hampshire avoidance (or evasion) of the Massachusetts sales tax, and Circuit City's sales associates not only advised customers of this option but, as one witness testified in the trial at the ATB, the Circuit City sales associate even provided driving directions to the New Hampshire store.

67.    Until approximately 1995, Circuit City had remitted to MDOR Massachusetts sales taxes for sales made in a Massachusetts store but with merchandise picked up in a New Hampshire store. Then, Circuit City stopped doing so, and in due course this was discovered by MDOR in an audit examination of Circuit City. As a result of that audit, MDOR assessed Circuit City additional sales taxes that should have been paid from those transactions.

68.    Circuit City filed an application for abatement of that assessment, which was denied. It then filed a petition with the Appellate Tax Board. After the trial of that case, the Board upheld the assessment and issued a report of its decision.

69.    Circuit City appealed the Board's decision, and the Massachusetts Supreme Judicial Court transferred the case from the Appeals Court on its own initiative.

70.    On June 25, 2003, the SJC issued its decision upholding the Board's decision. *Circuit City Stores, Inc. v. Commissioner of Revenue*, 439 Mass. 629 (2003). Although acknowledging that other grounds might exist in support of the result, the focus of the SJC's analysis for its decision was that the "transfer of title" for tax purposes occurred at the cash register in Massachusetts.

"The events transpiring at the cash register in Massachusetts reflect a significant degree of understanding between Circuit City and its customers that a sale, and not a mere deposit on an order, has occurred. The customer sales receipt, although not a document of title, contains a description of the item or items purchased, as well as the time and date of

the sale. The record suggests that, in an ordinary case, any period of warranty relevant to the purchase begins as of this date. The purchase price reflected on the receipt represents full consideration paid for the merchandise. From the vantage point of the customer, the sales receipt represents proof of his or her right to the purchased merchandise.

"The physical retention of the merchandise by Circuit City is not dispositive of "the time and place at which the seller completes his performance with reference to the physical delivery of the goods" under the UCC. G.L. c. 106, § 2-401 (2)."

*Circuit City*, 439 Mass. at 636.

"Here, Circuit City performed its obligations with respect to delivery when the sale was entered as an alternative location sale into Circuit City's DPS system and the purchased merchandise was "reserved" for the customer at the designated location. It was the customer from that point on who assumed responsibility for acquiring physical receipt of the purchased merchandise. The time of such receipt was placed by Circuit City within the customer's control and packaged as a sales option offered as part of Circuit City's over-all philosophy to "wow the customer." See 3A R.A. Anderson, Uniform Commercial Code § 2.401.90 (3d ed. rev. 2002) (seller always obligated to deliver goods, but performance of this duty may range from merely making goods available to buyer, shipping goods to buyer, delivering goods at specified destination, making delivery of documents of title, or transferring title without delivery of goods or documents).

It is clear that, under the UCC, no title can pass under a contract for sale "prior to their identification to the contract." G. L. c. 106, § 2-401 (1) This was also true in common law. See *G.E. Lothrop Theatres Co., v. Edison Elec. Illuminating Co.,* 290 Mass. 189, 193, 195 N.E. 305 (1935) ("title cannot pass until goods are set apart and appropriated to the contract"). We reject, however, Circuit City's argument that "identification to the contract" cannot be made in alternative location sales prior to the time that the merchandise is physically removed from inventory and the serial number is scanned in the New Hampshire store. The reserve notation marked on the customer sales receipt for the purchased merchandise sufficiently reflects its status of being set aside, or identified, to that particular transaction. The Circuit City district manager described the reserving system as moving merchandise to a "phantom" location to await customer pick up, and, indeed, the situation presented to the customer is just as though the merchandise actually is set aside and waiting for the customer at the pick-up counter. The purchased merchandise in the alternative location sales at issue is, by its nature, fungible. Because customers do not choose items in a store such as Circuit City by a particular serial number, but only by make and model, identification by serial number is unnecessary to the sale. See *Chokelv. First Nat'l Supermarkets, Inc.* 421 Mass. 631, 637, 660 N.E.2d 644 (1996); *Cushing v. Breed*, 96 Mass. 376, 14 Allen 376, 380 (1867)."

*Circuit City*, 439 Mass. at 638-639 (footnotes omitted).

71.     In response to the SJC's decision, the tax department of Circuit City requested the

IT department of Circuit City to make a programming change to the cash register receipts. As the

IT Project manager of Circuit City Stores, Inc., Ben Bishop described it in an affidavit prepared

for Circuit City[8]:

> In the fall of 2003, Circuit City's Tax department requested that a new comment
> be added on certain Circuit City customer receipts to provide explicitly when title to
> goods passes to customers in the case of alternative location sales ("ALSs")….
>
> Circuit City began printing the following comment (the "title agreement") on all
> customer receipts beginning with the Q9.2 release of Circuit City's point of sale system
> (its distributive process system or "DPS") on November 20, 2003:
>
> Title
> It is expressly agreed that transfer of title of merchandise to customer and
> commencement of any manufacturer warranty period occurs upon actual, physical
> transfer of possession of goods to customer.
>
> The same DPS release modified a comment that references the particular line item
> of the customer receipt that is subject to an ALS, deleted the word "Reserved" from such
> comment and printed instead "Pick up your [specified item] at Store xxxx," where
> "xxxx" was the Circuit City store's four-digit numeric store identifier.

72.     Obviously, of course, the customer would not be in no position to see (and

assuming that the customer would look) the new special comment until after he has paid for the

merchandise and received the receipt. With the customer, there is no conscious "meeting of the

minds" and certainly none before the customer completes his performance (payment) of the

contract. It is certainly reasonable to expect that it continued to be that as the district manager

testified in the earlier case "although a store manager has the ability manually to override the

DPS system in order to sell the reserved merchandise to a different customer prior to pick up,

---

[8] Paragraphs 5-7, *Affidavit of Ben Bishop, IT Project Manager of Circuit City Stores, Inc.*, dated December 7, 2006,
filed by defendant in *Alan LeBovidge, Commissioner of Revenue v. Circuit City Stores, Inc.*, Suffolk Superior Court,
Civil Action No. 06-4494.

such action is counter to company policy and would create 'a nightmare'." *Circuit City*, 439

Mass. at 639, note 15.

73.     Circuit City had multiple opportunities to present its case as to why now these

sales are not subject to Massachusetts tax – at the opportunities for an exit conference for either

assessment; the opportunities for pre-assessment conferences for either assessment; the

opportunities for filing abatement applications for either assessment. Circuit City chose not to do

any of these. Meanwhile, it is not apparent as to how the insertion of a self-serving paragraph

below the material information of purchased product and price on a cash register receipt alters

the understanding of the customer that "that a sale, and not a mere deposit on an order, has

occurred."

74.     Leaving aside the procedural issues, the Objection has not in substance or even in

outline presented an adequate basis for disturbing the assessments that stem from this issue. It

may never be able, as ultimately for its success it needs this court to predict that the highest court

in the Commonwealth, the SJC, would follow a principle that "form dictates substance," and

consider such a principle applicable to these facts.

*Net Operating Losses*

75.     While parties to the November 2006 settlement agreement agreed to certain Net

Operating Losses for the tax years ending on February 28, 2001 and February 28, 2002 (the

"2001-2002 NOLs"), Circuit City has never claimed them or any portion of them for any

particular tax year. Circuit City has had several opportunities to claim those deductions,

including on the returns that it has filed, any amended returns that it could have filed, at the

multiple exit conference opportunities for the corporate tax assessments, at the multiple pre-

assessment conference opportunities for the corporate tax assessments, and, of course, by filing

an abatement application after one of the corporate tax assessments. First Circuit City, and now the Liquidating Trust, has never done any of those acts, and no one has claimed those deductions for any particular tax period.

76.    "[A] taxpayer is not entitled to an exemption unless he shows that he comes within either the express words or the necessary implication of some statute conferring this privilege upon him." *Animal rescue League of Boston v. Assessors of Bourne*, 310 Mass. 698, 332 (1941). As reiterated by the Supreme Judicial Court in *Macy's East, Inc. v. Commissioner of Revenue*, 441 Mass. 797, 804 (2004):

> "We have frequently recognized that an exemption from taxation 'is a matter of special favor or grace,' and that statutes granting exemptions from taxation are therefore to be strictly construed." *South Boston Savings Bank v. Commissioner of Revenue*, 418 Mass. 695, 698 (1994), citing *State Tax Comm'n v. Blinder,* 336 Mass. 698, 703 (1958) ("an exemption [is] . . . to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command"). "The burden is on the taxpayer to demonstrate entitlement to an exemption claimed." *South Boston Savings Bank v. Commissioner of Revenue*, supra.

77.    A deduction from taxable income is a form of exemption from taxation. An obvious threshold step for a taxpayer in establishing that his claim "properly falls clearly and unmistakably within the express words of a legislative command" is to make a claim of the deduction for a particular tax period.

78.    As of this time, neither Circuit City nor the Liquidating Trust has claimed a deduction for any of the 2001-2002 NOLs for any tax period. Like many other items in life and business, if one does not use a deduction, in time you will lose it.

79.    It is the obligation of the taxpayer that seeks the benefit of a deduction to claim the deduction. In the case of an NOL, a taxpayer may have reasons for using some or all of those losses for a particular tax year, including perhaps what the Massachusetts apportionment factor is

for any particular year. MDOR or any other taxing authority is not the one to make those decisions[9].

80.    If and when a proper claim is made for the use as a deduction(s) the 2001-2002NOLs, and if such use is otherwise permissible and proper under applicable nonbankruptcy law, there appear to be no reason why MDOR will not agree to an adjustment in its claim accordingly. The prerequisite act(s), however, have not occurred and consequently no adjustments (either voluntarily or as a matter of partial claim disallowance) are presently proper.

## IV.    AUTHORITY TO SETTLE OR COMPROMISE

81.    Assuming that the Liquidating Trust, as successor in interest to the Circuit City, does not seek relief from any of the tax assessments at issue in the Objection through the statutory abatement process existing under applicable nonbankruptcy law, compromise and settlement of the taxes at issue in the MDOR Claim would only be available pursuant and in accordance with to the provisions of M.G.L. c. 62c, § 37C. That section provides in pertinent part as follows:

> The commissioner [of revenue] may accept a lesser amount than the proposed or assessed tax liability in full and final settlement thereof; provided, however, that the following conditions are met:
>
> (1) The commissioner finds that the settlement is in the best interests of the commonwealth, taking into account potential hazards of litigation and the likelihood of a finding of liability against the taxpayer; and
> (2) the commissioner and the taxpayer agree in writing to the settlement.
>
> Any settlement under this section which is entered into after the commissioner has denied or is deemed to have denied an application for abatement filed pursuant to section 37 and which proposes to abate $200,000 or more of the tax, not including interest and penalties, shall be submitted to the attorney general for review. Any such settlement

---

[9] While Circuit City failed to decide how to use the 2001-2002 NOLs, the complaint as presented in the Objection is now that MDOR failed to do it for Circuit City, which assumes that MDOR might have divined how Circuit City would have used them. This is not dissimilar to an individual who puts his money into a vending machine but does not press a button for a selection, and then complains that the machine did not give him his preferred soda.

proposal shall take effect 21 days after its receipt by the attorney general, unless the attorney general objects in writing to the settlement. In the event the attorney general objects to the settlement proposal, such settlement shall not take effect until the objection is resolved by the commissioner and the attorney general.

The commissioner of revenue shall report to the attorney general each settlement which is described in this section and which abates more than $200,000 in tax. The report shall include the identity of the taxpayer, the type and amount of the tax, the amount of interest and penalties, and such other information as is necessary to convey the terms of and reasons for each such settlement. The report shall be prepared on an annual basis and submitted to the attorney general within 60 days of the department of revenue's fiscal year end.

82.    The Commissioner has in turn delegated to some of her subordinates the authority to enter into compromises and settlements in her name based the amount of tax and the amount of tax, interest and penalties to be abated. It is presently unknown what amount, if any, would be compromised, so it is uncertain what level of delegation is authorized to compromise and settle this matter.

83.    As counsel to the Commissioner, communications and negotiations regarding any settlement or compromise should be directed to the undersigned, until further notice.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE,** Navjeet K. Bal, as she is Commissioner of Revenue for the

Commonwealth of Massachusetts, respectfully requests that this Honorable Court deny the

*Liquidating Trust's Objection to Claim No. 14832 Filed by the Commonwealth of Massachusetts,*

enter an Order allowing the MDOR Claim No. 14832 and directing the Liquidating Trust to pay

the same forthwith with interest from the Effective Date in accordance with the Plan and

Confirmation Order, and for such other and further relief as may be just and meet.


                                   **Respectfully submitted,**

**Dated: May 9, 2011**                      **NAVJEET K. BAL**
                                    **COMMISSIONER**
                                    **MASSACHUSETTS DEPARTMENT OF
REVENUE**

                                    **By her attorneys,**

                                    **MARTHA COAKLEY**
                                    **ATTORNEY GENERAL OF
MASSACHUSETTS**

                                    **Kevin W. Brown, General Counsel**
                                    **Special Assistant Attorney General**


                                  * // Stephen G. Murphy //*
                                  **Stephen G. Murphy (BBO # 542427)**
                                  **Counsel to the Commissioner**
                                  **Massachusetts Department of Revenue**
                                  **Litigation Bureau**
                                  **100 Cambridge Street, P. O. Box 9565**
                                  **Boston, MA 02114**
                                  **(617) 626-3305**
                                  **Email: murphys@dor.state.ma.us**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**

_____

| | ) | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **CIRCUIT CITY STORES, INC., _et al.,_** | ) | **Case No. 08-35653 (KRH)** |
| | ) | |
| **DEBTORS** | ) | **(Jointly Administered)** |

_____)

## CERTIFICATE OF SERVICE

I, Stephen G. Murphy, hereby certify that I have this day served a copy of the within

RESPONSE BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE

TO LIQUIDATING TRUST'S OBJECTION TO CLAIM NO. 14832 FILED BY THE

COMMONWEALTH OF MASSACHUSETTS, electronically upon filing upon the parties or

persons appearing on the accompanying SERVICE LIST as indicated.


_// Stephen G. Murphy  //__
Stephen G. Murphy, Esquire
Dated: May 9, 2011

**SERVICE LIST**
**In re CIRCUIT CITY STORES, INC.,** *et al.,*
<u>**Chapter 11, Case No. 08-35653 (KRH) Jointly Administered**</u>

- Robin S. Abramowitz    abramowitz@larypc.com
- Angela Sheffler Abreu    aabreu@mccarter.com, mreynolds@mccarter.com
- Benjamin C. Ackerly    backerly@hunton.com, cloving@hunton.com
- Robert D. Albergotti    robert.albergotti@haynesboone.com,
  kim.morzak@haynesboone.com;john.middleton@haynesboone.com
- Christopher M. Alston    alstc@foster.com, ristj@foster.com
- Mark K. Ames    mark@taxva.com, amanda@taxva.com
- Heather Lynn Anderson    Heather.Anderson@dol.lps.state.nj.us
- Tara B. Annweiler    tannweiler@greerherz.com
- Joel S. Aronson    jsaronson@ridberglaw.com
- Ethel Fay Hong Badawi    ethel.badawi@btlaw.com
- Henry P. Baer    CSommer@fdh.com, csommer@fdh.com
- Peter Barrett    peter.barrett@kutakrock.com,
  lynda.wood@kutakrock.com;sara.abrams@kutakrock.com;charisse.matthews@kutakrock.com
- Raymond William Battaglia    rbattaglia@obht.com
- Philip C. Baxa    pbaxa@sandsanderson.com, sfarrior@sandsanderson.com
- William D. Bayliss    bbayliss@williamsmullen.com
- Thomas O. Bean    tbean@mwe.com
- Brett Christopher Beehler    bbeehler@mrrlaw.net, lsansbury@mrrlaw.net
- Christopher R. Belmonte    cbelmonte@ssbb.com,
  asnow@ssbb.com,pbosswick@ssbb.com
- Paula S. Beran    pberan@tb-lawfirm.com, dleadbeater@tb-lawfirm.com;stavenner@tb-lawfirm.com;jsnyder@tb-lawfirm.com;ltavenner@tb-lawfirm.com;sdigiorgio@tb-lawfirm.com
- Anne G. Bibeau    ABibeau@vanblk.com
- Ambika Joline Biggs    abiggs@bakerlaw.com
- Jason B. Binford    jbinford@krcl.com, ecf@krcl.com
- Ron C. Bingham    rbingham@stites.com, dclayton@stites.com
- Patrick M. Birney    pbirney@rc.com, jcarrion@rc.com
- Paul M. Black    pblack@spilmanlaw.com,
  vskevington@spilmanlaw.com;scormany@spilmanlaw.com
- Daniel F. Blanks    dblanks@mcguirewoods.com
- Paul S. Bliley    pbliley@williamsmullen.com,
  rcohen@williamsmullen.com;hpollard@williamsmullen.com
- Sarah Beckett Boehm    sboehm@mcguirewoods.com,
  kcain@mcguirewoods.com;lneilson@mcguirewoods.com
- Wanda Borges    borgeslawfirm@aol.com
- James Edward Bowman    Jim@jebowman.com, ecfnoticing@jebowman.com
- Anne Elizabeth Braucher    abraucher@mcmillanmetro.com

- Jess R. Bressi    jbressi@luce.com
- James J. Briody    jim.briody@sablaw.com, kim.smith@sablaw.com
- William A. Broscious    wbroscious@kbbplc.com
- Gillian N. Brown    gbrown@pszjlaw.com
- Heather D. Brown    hbrown@kkgpc.com, jwest@kkgpc.com
- Martin A. Brown    martin.brown@lawokc.com
- Steven L. Brown    brown@wolriv.com
- Timothy Francis Brown    brownt@arentfox.com, giaimo.christopher@arentfox.com
- Mark E. Browning    bk-mbrowning@oag.state.tx.us, sherri.simpson@oag.state.tx.us
- Linda Sharon Broyhill    lbroyhill@reedsmith.com, nkatzen@reedsmith.com
- Andrew M. Brumby    abrumby@shutts-law.com, rhicks@shutts-law.com
- Kristen E. Burgers    keburgers@venable.com
- James Winston Burke    jburke@orrick.com
- William A. Burnett    aburnett@williamsmullen.com
- Darek S. Bushnaq    dsbushnaq@venable.com
- Marc A. Busman    mbusman@busmanandbusman.com
- Aaron R. Cahn    cahn@clm.com
- Jonathan T. Cain    jtcain@mintz.com, kcraun@mintz.com
- Judy Bamberger Calton    jcalton@honigman.com
- Andrea Kristin Campbell    campbell.andrea@arentfox.com, lane.katie@arentfox.com;dowd.mary@arentfox.com
- Paul K. Campsen    pkcampsen@kaufcan.com
- Robert A. Canfield    bcanfield@canfieldbaer.com, bhochfelder@canfieldbaer.com;jcooper@canfieldbaer.com;kkruck@canfieldbaer.com;hwells@canfieldbaer.com
- Peter J. Carney    jlerner@whitecase.com,jrubalcava@whitecase.com
- William H. Casterline    wcasterlinejr@blankeith.com, bford@bklawva.com
- William B. Cave    wcave@hophabcave.com
- Ashley M. Chan    achan@hangley.com, ecffilings@hangley.com
- Eugene Chang    echang@steinlubin.com
- Jeffrey Chang    jchang@changlawpllc.com
- Wm. Joseph A. Charboneau    jcharboneau@mglspc.com, aford@mglspc.com
- Emily M. Charley    echarley@hansonbridgett.com
- Sara L. Chenetz    chenetz@blankrome.com
- Dominic L. Chiariello    dc@chiariello.com
- Charles W. Chotvacs    cwchotvacs@gmail.com, aconway@taubman.com;Pollack@ballardspahr.com
- Anthony J. Cichello    acichello@kb-law.com
- City of Newport News, Virginia    jdurant@nngov.com
- Darrell William Clark    dclark@stinson.com, cscott@stinson.com
- Robert D. Clark    rclark@douglas.co.us
- James E. Clarke    vaecf@atlanticlawgrp.com, rbailey@atlanticlawgrp.com
- Tiffany Strelow Cobb    tscobb@vorys.com, bjtobin@vorys.com
- Mindy D. Cohn    mcohn@winston.com
- Andrew Lynch Cole    acole@fandpnet.com
- Ken Coleman    Ken.Coleman@allenovery.com

- Michael A. Condyles     michael.condyles@kutakrock.com,
  lynda.wood@kutakrock.com;kimberly.pierro@kutakrock.com;jeremy.williams@kutakrock.com
- Mark B. Conlan     mconlan@gibbonslaw.com
- Andrew S. Conway     aconway@taubman.com
- David V. Cooke     bankruptcy.david@denvergov.org
- Eric C. Cotton     hsmith@ddr.com
- Robert K. Coulter     robert.coulter@usdoj.gov, USAVAE.ALX.ECF.BANK@usdoj.gov
- David H. Cox     dcox@jackscamp.com, phaynes@jackscamp.com
- Franklin R. Cragle     fcragle@hf-law.com
- John M. Craig     johncraigg@aol.com, russj4478@aol.com
- Catherine Elizabeth Creely     ccreely@akingump.com
- William C. Crenshaw     bill.crenshaw@bryancave.com
- Michael Callahan Crowley     mcrowley@asm-law.com
- Paul McCourt Curley     pcurley@canfieldbaer.com, tchilders@canfieldbaer.com
- Ryan C. Day     ryan.day@leclairryan.com
- Jenelle Marie Dennis     dennisj@ballardspahr.com, pollack@ballardspahr.com
- Christopher M. Desiderio     cdesiderio@nixonpeabody.com
- Jaime Sue Dibble     jdibble@stinson.com, lbigus@stinson.com
- David H. Dickieson     ddickieson@schertlerlaw.com,
  panos@craigmacauley.com;mdesmery@craigmacauley.com
- Louis E. Dolan     LDOLAN@nixonpeabody.com,
  was.managing.clerk@nixonpeabody.com;eramirez@nixonpeabody.com;dvilmenay@nixonpeabody.com;DSKLAR@nixonpeabody.com;cdesiderio@nixonpeabody.com;DPrivott@nixonpeabody.com
- John T. Donelan     jtdlaw@verizon.net
- Jennifer V. Doran     jdoran@haslaw.com, calirm@haslaw.com
- Seth A. Drucker     sdrucker@honigman.com
- Joseph M. DuRant     jdurant@nngov.com
- Ronald G. Dunn     bstasiak@gdwo.net
- Sara B. Eagle     eagle.sara@pbgc.gov, efile@pbgc.gov
- David W. Earman     davidearman@courtsq.com
- Carl A. Eason     bankruptcy@wolriv.com
- Robert C. Edmundson     redmundson@attorneygeneral.gov
- Elizabeth A. Elam     betsyelam@toase.com,
  wenditaylor@toase.com;lmares@toase.com;kkalos@toase.com
- Tara L. Elgie     telgie@hunton.com
- Kristin Elliott     kelliott@kelleydrye.com,
  KDWBankruptcyDepartment@kelleydrye.com
- Matthew J. Ellis     mellis@batsonnolan.com
- Bradford F. Englander     benglander@wtplaw.com, wbatres@wtplaw.com
- Augustus C. Epps     aepps@cblaw.com, lthompson@cblaw.com
- David J. Ervin     dervin@kelleydrye.com,
  KDWBankruptcyDepartment@kelleydrye.com
- Belkys Escobar     Belkys.Escobar@loudoun.gov,
  Courtney.Sydnor@loudoun.gov;bankrupt@loudoun.gov;Brian.Boone@loudoun.gov

- Michael P. Falzone    mfalzone@hf-law.com, jbsmith@hf-law.com
- John T. Farnum    farnumj@gtlaw.com
- Oscar Baldwin Fears    bfears@law.ga.gov, jjacobs@law.ga.gov
- Robert J. Feinstein    rfeinstein@pszjlaw.com,
  rorgel@pszjlaw.com;dharris@pszjlaw.com
- John D. Fiero    jfiero@pszjlaw.com
- Scott D. Fink    Bronationalecf@weltman.com
- J. David Folds    dfolds@mckennalong.com, sparson@mckennalong.com
- Douglas M. Foley    dfoley@mcguirewoods.com
- Christine McAteer Ford    cford@mdpcelaw.com
- Gina M Fornario    gfornario@nixonpeabody.com,
  khall@nixonpeabody.com;sf.managing.clerk@nixonpeabody.com
- Jeremy S. Friedberg    jeremy.friedberg@llff.com, ecf@llff.com;gordon.young@llff.com
- Jeremy S. Friedberg    jsf@llff.com, ecf@llff.com;gordon.young@llff.com
- Ellen A. Friedman    efriedman@friedumspring.com,
  ramona.neal@hp.com;ken.higman@hp.com
- Mark J. Friedman    mark.friedman@dlapiper.com
- Gary V. Fulghum    gfulghum@sblsg.com, jschmeltz@sblsg.com;jrapp@sblsg.com
- Victoria D. Garry    victoria.garry@ohioattorneygeneral.gov
- Rand L. Gelber    RGelberMD@aol.com
- Stephanie N. Gilbert    sgilbert@wilsav.com
- S. Sadiq Gill    sgill@vanblk.com
- Karen L. Gilman    KGILMAN@WOLFFSAMSON.COM
- Lawrence H. Glanzer    glanzer@rlglegal.com, stephanie@rlglegal.com
- Brad R. Godshall    bgodshall@pszjlaw.com
- Matthew A. Gold    courts@argopartners.net
- Douglas R. Gonzales    dgonzales@wsh-law.com
- Anitra D. Goodman Royster    anitra.royster@nelsonmullins.com,
  betsy.burn@nelsonmullins.com,raina.steward@nelsonmullins.com;terri.gardner@nelson
  mullins.com
- Kimbell D. Gourley    kgourley@idalaw.com, sprescott@idalaw.com
- Jeffrey J. Graham    jgraham@taftlaw.com,
  dwineinger@taftlaw.com;ecfclerk@taftlaw.com;docket@taftlaw.com
- Gregory D. Grant    ggrant@shulmanrogers.com,
  lsmith@shulmanrogers.com;THsu@shulmanrogers.com
- William A. Gray    bgray@sandsanderson.com,
  kwalters@sandsanderson.com;rarrington@sandsanderson.com
- Peter A. Greenburg    pgreenburg@aol.com
- Steven H. Greenfeld    steveng@cohenbaldinger.com, CBGLawBethesda@gmail.com
- David A. Greer    dgreer@davidgreerlaw.com, ecf@davidgreerlaw.com
- Elizabeth L. Gunn    egunn@durrettecrump.com,
  sryan@durrettecrump.com;bberlauk@durrettecrump.com;dbbankruptcy@gmail.com
- Richard E. Hagerty    richard.hagerty@troutmansanders.com,
  sharron.fay@troutmansanders.com;anne.clark@troutmansanders.com;;barbara.webne@tr
  outmansanders.com

- Jerry Lane Hall    jerry.hall@pillsburylaw.com,
  patrick.potter@pillsburylaw.com;dania.slim@pillsburylaw.com
- Paula A. Hall    hall@bwst-law.com, marbury@bwst-law.com
- Aaron L. Hammer    ahammer@freebornpeters.com
- Gina Baker Hantel    agbankcal@ag.tn.gov
- Jason William Harbour    jharbour@hunton.com
- Michael E. Hastings    michael.hastings@leclairryan.com, tonya.whitt@leclairryan.com
- Jonathan L. Hauser    jonathan.hauser@troutmansanders.com
- David Emmett Hawkins    dhawkins@velaw.com
- Dion W. Hayes    dhayes@mcguirewoods.com
- Melissa S. Hayward    mhayward@lockelord.com
- Andrew H. Herrick    aherrick@albemarle.org
- William Heuer    wheuer@duanemorris.com
- Robert B. Hill    kcummins@hillrainey.com
- John E. Hilton    jeh@carmodymacdonald.com, pjf@carmodymacdonald.com
- Christopher Julian Hoctor    choctor@gregkaplaw.com, nferenbach@gregkaplaw.com
- Matthew E. Hoffman    mehoffman@duanemorris.com,
  lltaylor@duanemorris.com;lstopol@levystopol.com
- David D. Hopper    ddhopper@chlhf.com, scilino@chlhf.com
- Brian D. Huben    brian.huben@kattenlaw.com,
  carole.levine@kattenlaw.com;dustin.branch@kattenlaw.com;adelle.shafer@kattenlaw.co
  m;donna.carolo@kattenlaw.com
- Lisa Taylor Hudson    lhudson@sandsanderson.com
- F. Marion Hughes    marion.hughes@smithmoorelaw.com
- Jessica Regan Hughes    jhughes@seyfarth.com,
  swells@seyfarth.com;wdcdocketing@seyfarth.com
- Martha E. Hulley    martha.hulley@leclairryan.com,
  erik.gustafson@leclairryan.com;sarahleitner.kelly@leclairryan.com
- John T. Husk    johnhusk@aol.com, nre98@aol.com
- Richard Iain Hutson    rhutson@weinstocklegal.com
- Alexander Xavier Jackins    ajackins@seyfarth.com
- Thomas Neal Jamerson    tjamerson@hunton.com, tomjam2003@yahoo.com
- Russell R. Johnson    russ4478@aol.com
- Christopher A. Jones    cajones@wtplaw.com, wbatres@wtplaw.com
- Nathan Jones    heather@usdrllc.com
- Dexter D. Joyner    caaustin@comcast.net
- Gary M. Kaplan    gkaplan@fbm.com, calendar@fbm.com
- Douglas D. Kappler    dkappler@rdwlawcorp.com
- Lawrence Allen Katz    lakatz@venable.com
- Adam K. Keith    akeith@honigman.com, tsable@honigman.com
- Gerald P. Kennedy    gerald.kennedy@procopio.com
- Brian F. Kenney    bkenney@milesstockbridge.com
- Erin Elizabeth Kessel    ekessel@spottsfain.com,
  kligon@spottsfain.com;jwest@spottsfain.com;rchappell@spottsfain.com;tmoore@spottsf
  ain.com;eanderson@spottsfain.com;jstern@spottsfain.com
- Dena Sloan Kessler    dkessler@bakerlaw.com

- Thomas G. King    tking@KreisEnderle.com,
  dholmgren@KreisEnderle.com;sfazio@KreisEnderle.com
- Jeffrey E. Klusmeier    Jeff.Klusmeier@ago.mo.gov
- Jennifer Larkin Kneeland    jkneeland@linowes-law.com, klevie@linowes-
  law.com;gduvall@linowes-law.com;aevert@linowes-law.com;jwright@linowes-
  law.com;5temp@linowes-law.com
- Travis A. Knobbe    tknobbe@spilmanlaw.com, trjohnson@spilmanlaw.com
- Kurt M. Kobiljak    kkobi@aol.com
- Michael S. Kogan    mkogan@ecjlaw.com, rfraire@ecjlaw.com
- Jamie M. Konn    jamie.konn@dlapiper.com,
  kevin.kobbe@dlapiper.com;jodie.buchman@dlapiper.com
- Charles Gideon Korrell    gkorrell@dl.com
- Leonidas Koutsouftikis    lkouts@magruderpc.com, mcook@magruderpc.com
- Jason M. Krumbein    jkrumbein@krumbeinlaw.com,
  mkrumbein@krumbeinlaw.com;a30156@yahoo.com;sdanielslaw@verizon.net
- Darryl S. Laddin    bkrfilings@agg.com
- Anne C. Lahren    alahren@pendercoward.com
- Kevin A. Lake    klake@mcdonaldsutton.com
- Benjamin Joseph Lambiotte    blambiotte@gsblaw.com
- John J. Lamoureux    jlamoureux@carltonfields.com,
  lmccullough@carltonfields.com;tpaecf@cfdom.net
- Ian S. Landsberg    ilandsberg@lm-lawyers.com
- Jennifer Langan    jlangan@patreasury.org
- David Wayne Lannetti    dlannetti@vanblk.com,
  kjerald@vanblk.com;drichards@vanblk.com
- Jennifer Ellis Lattimore    jlattimore@eckertseamans.com
- Garren Robert Laymon    glaymon@mglspc.com
- Stephen E. Leach    sleach@ltblaw.com,
  ndysart@ltblaw.com;msarata@ltblaw.com;rrosado@ltblaw.com;xrubinstein@ltblaw.com
- Richard E. Lear    richard.lear@hklaw.com, kimi.odonnell@hklaw.com
- Robert L. Lehane    rlehane@kelleydrye.com,
  KDWBankruptcyDepartment@KelleyDrye.com
- Stephen K. Lehnardt    skleh@lehnardt-law.com
- Justin D. Leonard    jleonard@balljanik.com
- Fredrick J. Levy    fjlevy@olshanlaw.com,
  mmarck@olshanlaw.com;ssallie@olshanlaw.com
- Dennis T. Lewandowski    dtlewand@kaufcan.com
- Nancy F. Loftus    Nancy.Loftus@fairfaxcounty.gov
- James V. Lombardi    jvlombardi@rossbanks.com
- Henry Pollard Long    hlong@hunton.com
- John E. Lucian    lucian@blankrome.com
- Donald K. Ludman    dludman@brownconnery.com
- Christine D. Lynch    clynch@goulstonstorrs.com
- Thomas Ryan Lynch    tlynch@babc.com
- Andrew Edward Macfarlane    aem@aemlegal.com
- Nicholas B Malito    nmalito@hgg.com

- Curtis Gilbert Manchester    cmanchester@reedsmith.com,
  shicks@reedsmith.com;dlynch@reedsmith.com;sharris@reedsmith.com;kklein@reedsmith.com
- Robert M. Marino    rmmarino@rpb-law.com, rmmarino1@aol.com
- Joel T. Marker    joel@mbt-law.com
- Jeremy W. Martin    jeremymartin2007@gmail.com
- Richard M. Maseles    edvaecf@dor.mo.gov
- Gary E. Mason    gmason@masonlawdc.com
- Lyndel A. Mason    LMason@chfirm.com, chps.ecfnotices@gmail.com
- Bruce J. Matson    bruce.matson@leclairryan.com,
  kim.lord@leclairryan.com;stacy.beaulieu@leclairryan.com
- Richard C. Maxwell    rmaxwell@woodsrogers.com
- David McCall    bankruptcy@ntexas-attorneys.com
- Michael Keith McCrory    mmcrory@btlaw.com
- Neil E. McCullagh    nmccullagh@spottsfain.com,
  jstern@spottsfain.com;eanderson@spottsfain.com;rchappell@spottsfain.com;jwest@spottsfain.com;ekessel@spottsfain.com;acrouch@spottsfain.com;jolmsted@spottsfain.com;kligon@spottsfain.com;tmoore@spottsfain.com
- W. Clarkson McDow, Jr.    USTPRegion04.RH.ECF@usdoj.gov
- David R. McFarlin    dmcfarlin@whmh.com, psmith@whmh.com
- Annemarie G. McGavin    annemarie.mcgavin@bipc.com
- Frank F. McGinn    ffm@bostonbusinesslaw.com
- Robert P. McIntosh    Robert.McIntosh@usdoj.gov
- Thomas John McIntosh    thomas.mcintosh@hklaw.com
- John D. McIntyre    jmcintyre@wmlawgroup.com,
  wedwards@wmlawgroup.com;dpower@wmlawgroup.com;nfetzer@wmlawgroup.com
- John G. McJunkin    jmcjunkin@mckennalong.com, sparson@mckennalong.com
- Joshua D. McKarcher    jmckarcher@cov.com
- Jennifer McLain McLemore    jmclemore@cblaw.com, avaughn@cblaw.com
- Janet M. Meiburger, Esq.    admin@meiburgerlaw.com
- Philip James Meitl    pj.meitl@bryancave.com, john.leininger@bryancave.com
- Stephen A. Metz    smetz@shulmanrogers.com
- C. Christopher Meyer    cmeyer@ssd.com
- Kalina Boyanova Miller    kmiller@wileyrein.com, rours@wileyrein.com
- Stephan William Milo    smilo@wawlaw.com,
  hvanlear@wawlaw.com;jjohnson@wawlaw.com;wlevin@wawlaw.com;krichman@wawlaw.com
- Luder F. Milton    lmilton@eckertseamans.com
- Satchidananda Mims    smims21@hotmail.com
- Robert Kenneth Minkoff    rminkoff@jefferies.com, mrichards@jefferies.com
- Malcolm M. Mitchell    mmmitchell@vorys.com,
  sbanerjee@vorys.com;kdlehman@vorys.com;cmbrosius@vorys.com
- Byron Z. Moldo    bmoldo@ecjlaw.com, tmelendez@ecjlaw.com
- Joseph T. Moldovan    bankruptcy@morrisoncohen.com
- Denise S. Mondell    denise.mondell@ct.gov
- Robert Field Moorman    rmoorman@moormanlaw.com, robmoorman@comcast.net

- Mindy A. Mora    mmora@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- Erika L. Morabito    emorabito@pattonboggs.com
- Valerie P. Morrison    vmorrison@wileyrein.com, rours@wileyrein.com
- Michael D. Mueller    mmueller@cblaw.com, avaughn@cblaw.com
- Mark X. Mullin    mark.mullin@haynesboone.com, dian.gwinnup@haynesboone.com
- Anne C. Murphy    murphyac@doj.state.wi.us, gurholtks@doj.state.wi.us
- Mona M. Murphy    mona.murphy@akerman.com, crystal.gaymon@akerman.com
- Stephen G. Murphy    Murphys@dor.state.ma.us
- Thomas Francis Murphy    tmurphy@dclawfirm.com, rgreenberg@dclawfirm.com;vcoleman@dclawfirm.com
- Robert Ryland Musick    bmusick@t-mlaw.com, clobou@t-mlaw.com
- James D. Newbold    James.Newbold@illinois.gov
- Kevin M. Newman    knewman@menterlaw.com
- Steven H. Newman    snewman@katskykorins.com
- Troy N. Nichols    lexbankruptcy@wyattfirm.com
- Alan Michael Noskow    anoskow@pattonboggs.com
- Darlene M. Nowak    nowak@marcus-shapira.com
- Sean P. O'Brien    spobrien@gustlaw.com
- Michael John O'Grady    mjogrady@fbtlaw.com, lbaker@fbtlaw.com;jbwells@fbtlaw.com
- Tracey Michelle Ohm    tohm@stinson.com, tmackey@stinson.com
- Mary E. Olden    molden@mhalaw.com, akauba@mhalaw.com
- Laura Otenti    lotenti@pbl.com
- Ronald Allen Page    rpage@rpagelaw.com, rpage@rpagelaw.com
- Justin F. Paget    jpaget@hunton.com
- Craig M. Palik    cpalik@yahoo.com, cpalik@mhlawyers.com;pparson@mhlawyers.com;dmoorehead@mhlawyers.com;jmackie@mhlawyers.com;dtayman@mhlawyers.com
- R. Chase Palmer    cpalmerplf@gmail.com
- Constantinos G. Panagopoulos    cgp@ballardspahr.com
- Min Park    mpark@cblh.com
- Paul J. Pascuzzi    ppascuzzi@ffwplaw.com
- Bhavik Dalpat Patel    bdp@macdowelllaw.com
- Peter M. Pearl    ppearl@sandsanderson.com
- Frank T. Pepler    fpepler@peplermastromonaco.com
- Christopher L. Perkins    christopher.perkins@leclairryan.com, stacie.hooten@leclairryan.com;stacy.beaulieu@leclairryan.com;parris.sorrell@leclairryan.com;deborah.dip@leclairryan.com
- Rhett E. Petcher    rpetcher@seyfarth.com
- Loc Pfeiffer    loc.pfeiffer@kutakrock.com, lynda.wood@kutakrock.com;sheree.edington@kutakrock.com;kimberly.pierro@kutakrock.com
- Keith L. Phillips    Keith@pf-law.com, beth@pf-law.com;Abbie@pf-law.com;dweekley@pf-law.com

- Kimberly A. Pierro    kimberly.pierro@kutakrock.com,
  sheree.edington@kutakrock.com;sara.abrams@kutakrock.com;lynda.wood@kutakrock.com;michael.condyles@kutakrock.com
- David M. Poitras    dmp@jmbm.com
- Jeffrey N. Pomerantz    jpomerantz@pszjlaw.com
- Courtney E. Pozmantier    cpozmantier@ktbslaw.com, mtuchin@ktbslaw.com
- Daniel M. Press    dpress@chung-press.com, pressdm@gmail.com
- Daniel D. Prichard    dprichard@dowlohnes.com, kcornell@dowlohnes.com
- William Daniel Prince    wprince@t-mlaw.com
- Raymond Pring    rpring@grossspringlaw.com,
  rahurley@grossspringlaw.com;hsessler@grossspringlaw.com
- Jeremy L. Pryor    jeremypryor@carrellrice.com
- Julie Ann Quagliano    quagliano@sfmlawfirm.com, harvell@sfmlawfirm.com
- Albert F. Quintrall    a.quintrall@quintrall.com
- John B. Raftery    jraftery@offitkurman.com
- Vivienne Rakowsky    vrakowsky@ag.nv.gov,
  dwright2@ag.nv.gov;tplotnick@ag.nv.gov;ahansen@ag.nv.gov
- Andrew Rapp    arapp@wpblaw.com
- Victoria A. Reardon    reardonv@michigan.gov, jacksonst@michigan.gov
- Michael Reed    othercourts@mvbalaw.com
- Linda Dianne Regenhardt    lregenhardt@baileygary.com,
  cmarchant@baileygary.com;mcollins@baileygary.com
- Thomas W. Repczynski    trepczynski@offitkurman.com, cdixon@offitkurman.com
- Thomas David Rethage    thomas.rethage@eeoc.gov
- James W. Reynolds    jim.reynolds@ofplaw.com
- Kenneth R. Rhoad    krhoa@gebsmith.com
- Matthew Righetti    matt@righettilaw.com
- Fred B. Ringel    fbr@robinsonbrog.com
- Henry Buswell Roberts    hbroberts@live.com, droberts1949@live.com
- Philip M. Roberts    mroberts@bdlaw.org
- Terri A. Roberts    pcaocvbk@pcao.pima.gov
- Wendy Michele Roenker    wroenker@cityofchesapeake.net
- James H. Rollins    jim.rollins@hklaw.com, avis.francis@hklaw.com
- Martha E. Romero    romero@mromerolawfirm.com
- Jeremy Brian Root    jroot@bklawva.com,
  tmartin@bklawva.com;wcasterlinejr@bklawva.com
- Edward L. Rothberg    rothberg@hooverslovacek.com, mayle@hooverslovacek.com
- David R. Ruby    druby@mcsweeneycrump.com, bankruptcyassistant@t-mlaw.com;druby@ecf.epiqsystems.com
- David R. Ruby    druby@t-mlaw.com, bankruptcyassistant@t-mlaw.com;druby@ecf.epiqsystems.com
- Frederick Francis Rudzik    rudzikf@dor.state.fl.us
- Michael F. Ruggio    mruggio@polsinelli.com
- Eric Christopher Rusnak    eric.rusnak@klgates.com, klgatesbankruptcy@klgates.com
- Jeremy W. Ryan    jryan@saul.com
- John M. Ryan    jryan@mclfirm.com, ghorner@mclfirm.com;lbrennan@clrfirm.com

- Denyse Sabagh    dsabagh@duanemorris.com
- Travis Aaron Sabalewski    tsabalewski@reedsmith.com,
  shicks@reedsmith.com;docketingecf@reedsmith.com;dlynch@reedsmith.com
- Michael J. Sage    msage@omm.com, kzeldman@omm.com
- Rebecca L. Saitta    rsaitta@wileyrein.com, rours@wileyrein.com
- D. Marc Sarata    msarata@ltblaw.com,
  ndysart@ltblaw.com;sleach@ltblaw.com;rrosado@ltblaw.com;xrubinstein@ltblaw.com
- Troy Savenko    tsavenko@kaplanfrank.com, nferenbach@kaplanfrank.com
- Jeffrey Scharf    jeff@taxva.com, tacspc@gmail.com;amanda@taxva.com
- Nancy R. Schlichting    nrs@lolawfirm.com, lginsberg@lolawfirm.com
- Ann E. Schmitt    aschmitt@culbert-schmitt.com
- Paul Michael Schrader    pschrader@fullertonlaw.com
- James R. Schroll    jschroll@beankinney.com, ncoton@beankinney.com
- William H. Schwarzschild    tschwarz@williamsmullen.com
- Douglas Scott    BankruptcyCounsel@gmail.com
- Richard D. Scott    richard@rscottlawoffice.com
- Erick Frank Seamster    eseamster@wallacepledger.com
- Sheila L. Shadmand    slshadmand@jonesday.com
- Jeffrey M. Sherman    jsherman@jackscamp.com,
  emoyer@jackscamp.com;jtsikerdanos@jackscamp.com
- Mark D. Sherrill    mark.sherrill@sutherland.com
- Gilbert D. Sigala    sigalaw1@aol.com
- Glenn H. Silver    ctbghs@aol.com
- Kevin L. Sink    ksink@nichollscrampton.com
- Leslie A. Skiba    lskiba@kaplanfrank.com, nferenbach@kaplanfrank.com
- John C. Smith    jsmith@durrettecrump.com,
  sryan@durrettecrump.com;dbbankruptcy@gmail.com
- John Ronald Smith    jrsmith@hunton.com
- Eric J. Snyder    esnyder@sillerwilk.com
- Rhysa Griffith South    sou06@co.henrico.va.us
- Matthew V. Spero    matthew.spero@rivkin.com
- David K. Spiro    dspiro@hf-law.com, rmcburney@hf-law.com
- Leonard E. Starr    lstarr@Starr-Law.com, gadams@Starr-Law.com
- Aryeh E. Stein    astein@wtplaw.com
- Richard F. Stein    richard.f.stein@irscounsel.treas.gov,
  USAVAE.RIC.ECF.BANK@usdoj.gov
- Dawn C. Stewart    dstewart@thestewartlawfirm.com
- Jonathan S. Storper    jstorper@hansonbridgett.com
- Peter E. Strniste    pstrniste@rc.com, kcooper@rc.com
- William Daniel Sullivan    dsullivan@butzeltp.com
- Lisa P. Sumner    lsumner@poyners.com, cjeckel@poyners.com
- Jeffrey L. Tarkenton    jtarkenton@wcsr.com,
  toross@wcsr.com;MDesgrosseilliers@wcsr.com
- Lynn L. Tavenner    ltavenner@tb-lawfirm.com, dleadbeater@tb-
  lawfirm.com;jsnyder@tb-lawfirm.com;stavenner@tb-lawfirm.com;sdigiorgio@tb-
  lawfirm.com

- Mark D. Taylor    mdtaylor@kilpatricktownsend.com
- Robert D. Tepper    rtepper@sabt.com, pcoover@sabt.com
- Roy M. Terry    rterry@durrettecrump.com,
  sryan@durrettecrump.com;dbbankruptcy@gmail.com
- Lucy L. Thomson    lthomson2@csc.com
- Alison Ross Wickizer Toepp    atoepp@reedsmith.com,
  dlynch@reedsmith.com;dflippen@reedsmith.com;docketingecf@reedsmith.com;;kklein
  @reedsmith.com
- Dylan G. Trache    dtrache@wileyrein.com, rours@wileyrein.com
- Khang V. Tran    khang.tran@hoganlovells.com
- Suzanne J. Trowbridge    sjt@goodwingoodwin.com
- Ronald M. Tucker    rtucker@simon.com,
  cmartin@simon.com,rwoodruff@simon.com,psummers@simon.com,antimm@simon.co
  m
- Robert B. Van Arsdale    Robert.B.Van.Arsdale@usdoj.gov
- John P. Van Beek    jvanbeek@goldmanvanbeek.com,
  awinokurzew@goldmanvanbeek.com;hcurrier@goldmanvanbeek.com;mfaulkner@gold
  manvanbeek.com
- Christian K. Vogel    Christian.Vogel@leclairryan.com,
  kim.lord@leclairryan.com;stacy.beaulieu@leclairryan.com
- Kimberly Sullivan Walker    kwalker@fulbright.com, kimsullywalker@aol.com
- Madeleine C. Wanlsee    mwanslee@gustlaw.com, rstein@gustlaw.com
- Gilbert Barnett Weisman    notices@becket-lee.com
- Mitchell B. Weitzman    mweitzman@jackscamp.com, swatson@jackscamp.com
- Arthur S. Weitzner    arthur@weitzner.com
- H. Elizabeth Weller    Dallas.Bankruptcy@publicans.com
- Jennifer J. West    jwest@spottsfain.com,
  rchappell@spottsfain.com;kligon@spottsfain.com;jstern@spottsfain.com;tmoore@spotts
  fain.com;eanderson@spottsfain.com;acrouch@spottsfain.com;jolmsted@spottsfain.com;
  ekessel@spottsfain.com
- Robert S. Westermann    rwestermann@hf-law.com
- David B. Wheeler    davidwheeler@mvalaw.com
- Brenda M. Whinery    bwhinery@mcrazlaw.com
- Reid Steven Whitten    rwhitten@fulbright.com
- Nicholas W. Whittenburg    nwhittenburg@millermartin.com,
  mcsmith@millermartin.com
- Michael L. Wilhelm    ECF@w2lg.com
- Amy Pritchard Williams    amy.williams@klgates.com, hailey.andresen@klgates.com
- Jeremy S. Williams    jeremy.williams@kutakrock.com
- Walter Laurence Williams    walter.williams@wilsonelser.com
- Thaddeus D. Wilson    thadwilson@kslaw.com, pwhite@kslaw.com
- William A. Wood    trey.wood@bgllp.com, chris.tillmanns@bgllp.com
- Gordon S. Woodward    gwoodward@schnader.com
- J. Christian Word    chefiling@lw.com;robert.klyman@lw.com
- Richard S. Yarow    richard_yarow@yahoo.com
- Hale Yazicioglu    hyazicioglu@jshllp.com

- Martin J. Yeager    myeager@beankinney.com
- Meredith Linn Yoder    myoder@parkerpollard.com,
  sscarce@parkerpollard.com;treid@parkerpollard.com
- Craig Benson Young    craig.young@kutakrock.com,
  lynda.wood@kutakrock.com;whitney.corbett@kutakrock.com;neo.tran@kutakrock.com
- Jonathan W. Young    young@wildman.com
- German Yusufov    pcaocvbk@pcao.pima.gov, alison.moreno@pcao.pima.gov
- Erica S. Zaron    cao.bkc@miamidade.gov
- Peter G. Zemanian    pete@zemanianlaw.com
- Sheila G. deLa Cruz    sdelacruz@hf-law.com, jbsmith@hf-law.com