# EXHIBIT A – PART 2

which Tenant desires to affix to the Building shall be subject to Landlord's prior written consent, which shall not be unreasonably withheld or delayed. In the event of an assignment or subletting as a result of which Tenant is no longer occupying any portion of the Premises, Tenant's signs may be replaced by signs identifying the appropriate assignee or subtenant, provided that the specific design of such signage shall be subject to Landlord's consent, which consent shall not be unreasonably withheld, conditioned or delayed. Tenant acknowledges that nothing contained herein shall (i) prohibit Landlord from erecting additional pylon sign structures on the periphery of the Shopping Center, or (ii) require Landlord to include Tenant's signage on any such additional pylon sign structures. Tenant also acknowledges that any replacement of its face panels on Tenant's Shared Pylon shall be at Tenant's expense and that the design of Tenant's replacement face panels shall be consistent with Tenant's prior face panel and/or consistent with the design of the remainder of the then existing face panels on Tenant's Shared Pylon.

(b) <u>Communications Equipment.</u> Tenant may, from time to time, install, maintain and/or replace any satellite dishes or antennas on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided same shall not adversely and materially affect the roof or the structural elements thereof. Upon removal by Tenant of any satellite dishes or antennas, Tenant shall repair any damage done in connection with such removal. Any such satellite dishes or antennas shall comply with all applicable laws and ordinances and all requirements of the OEA and shall be located in such a manner or otherwise screened so that they will not be seen from any public right-of-way. Any such screening shall be subject to the approval of Landlord, which approval shall not be unreasonably withheld or delayed. If it is necessary to penetrate the roof of the Premises to install such satellite dishes or antennas, such penetrations shall be made by Landlord's roof contractor at Tenant's cost and expense provided that Landlord's roof contractor is competent in the trade and approved by the roof manufacturer, and further provided that Tenant shall not incur any costs greater than market costs for any such roof penetration by Landlord's roof contractor. Landlord hereby acknowledges that, subject to obtaining required approvals from the City, it has approved the initial location of Tenant's satellite dish, but reserves the right to require screening, as

aforesaid, after installation of such dish to the extent necessary so that it will not be seen from any public right-of-way.

    9.    <u>Taxes</u>.

    (a)    <u>Taxes Contemplated Hereunder</u>.  The term "Real Estate Taxes" shall mean all general real estate taxes and assessments (including special assessments which are generally applicable to all property owners in the vicinity of the Premises and not in the nature of "impact fees" imposed only against and in connection with the development of the Shopping Center) and other ad valorem taxes, rates and levies paid upon or with respect to the Shopping Center, including the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes.  Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord <u>provided</u> <u>that</u> Tenant shall be responsible for the payment of any local, county, municipal, state or federal tax or charge directly imposed upon the rent or other charges payable by Tenant under this Lease.

    (b)    <u>Payment of Real Estate Taxes</u>.  At such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes (calculated in the same manner as Tenant's Pro Rata Share of CAM Charges in paragraph 7(c)) levied against the tax parcel on which the Premises are located (the "Tax Parcel").  Notwithstanding anything to the contrary provided herein, Tenant's Pro Rata Share of Real Estate Taxes in any Lease Year shall not include more than $.45 per square foot of Floor Area of the Building for the Initial Special Assessments (as defined in paragraph 4(b)(ii)(B)) above).  Furthermore, in the event any Initial Special Assessments are payable in installments of more than ten (10) years, Tenant's obligation to contribute to such Initial Special Assessments shall cease after the tenth (10th) year of such installments and in no event shall Tenant be obligated or liable for any installment due after the twelfth Lease Year.  Tenant's Pro Rata Share of Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's payment is due.  In the event the Real Estate Taxes for the Tax Parcel on which the Premises are located

is allocated are excessive relative to the Real Estate Taxes payable with respect to the other tax parcels comprising the Shopping Center, Tenant's Pro Rata Share of Real Estate Taxes shall be equitably adjusted to insure that Tenant is not paying a disproportionate percentage of the overall Real Estate Taxes of the Shopping Center and that in no event shall the amount of Tenant's Pro Rata Share of Real Estate Taxes exceed the amount Tenant would be required to pay if the entire Shopping Center, excluding the Mervyn's Parcel, the Home Depot Parcel and the Cub Foods Parcel, as shown on the Site Plan, were a single parcel assessed at the sum of the values of all the separate tax parcels comprising the Shopping Center. Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes within thirty (30) days after Tenant's receipt of Landlord's statement therefor, accompanied by the tax bill on the basis of which such statement is rendered. Landlord shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost may be added thereto, become due or be imposed by operation of law for the nonpayment or late payment thereof. In no event shall Tenant be liable for any discount forfeited or penalty incurred as a result of late payment by another tenant or by Landlord. Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease, and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. Landlord shall remain primarily responsible for such payment notwithstanding the fact that such payment may be made by a tenant of Landlord's Premises or other third party pursuant to an agreement to which Tenant is not a party. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due thereon and in such event Tenant may deduct the cost thereof, plus interest at the lesser of fifteen percent (15%) per annum or the highest rate permitted by State law (the "Default Rate"), from the next installment(s) of Base Rent due hereunder.

(c)    Contest of Real Estate Taxes and/or Assessed Valuation of Property. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in

the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within thirty (30) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction.  In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof.  If any other tenant of the Shopping Center desires to also contest any Real Estate Taxes, Tenant shall cooperate and coordinate with such tenant's efforts.  If Landlord elects not to contest Real Estate Taxes and, as a direct result of Tenant's contest of Real Estate Taxes, such Real Estate Taxes are increased above the amount assessed prior to commencement of such contest by Tenant: (i) if tenants occupying more than fifty percent (50%) of the leased Floor Area in the Shopping Center participate in such contest, Tenant's share of any such increase shall be determined in the same manner as Tenant's Pro Rata Share of Real Estate Taxes, or (ii) if tenants occupying fifty percent (50%) or less of the leased Floor Area in the Shopping Center participate in such contest, Tenant (pro rata with all other tenants participating in such contest) shall pay one hundred percent (100%) of any such increase.

        (d)    <u>Payment Following Appeal</u>.  As and to the extent required by Landlord's lender or under Minnesota law, Real Estate Taxes shall be paid by Tenant (which payment may be made under protest) during the proceedings described in (c) above.  Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, to the extent the payment or partial payment of same may have been lawfully deferred during the prosecution of such proceedings.  Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement (out of the overpayment only) of all costs, fees and expenses it incurs in such protest or reassessment.

       10.    <u>Maintenance, Repairs and Replacements</u>.  Except (i) for costs covered by the Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be

received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents or employees), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of the roof membrane, the trash areas, and the exterior and interior non-structural elements of the Building, including, but not limited to, repairs and/or replacements to all utility systems which serve only the Premises (such as the HVAC system) and to those portions of the lines for common utilities (such as sewer and plumbing lines) within or beneath the Premises and extending up to the points of intersection with trunk lines in the Common Areas. During the last five (5) years of the Term of the Lease, Tenant shall be obligated to so install or construct such alteration or incur such expenditure; provided, however, that if Tenant is required to expend any sum in satisfaction of its obligations to repair or replace the HVAC system hereunder, and if the resulting improvement to the HVAC system cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term, then Tenant shall be reimbursed by Landlord by that amount of the cost associated with such repair or replacement for the period beyond the remainder of the Term payable at the end of the Term. Landlord shall maintain all structural elements of the Premises (whether or not same serve only the Premises), including, without limitation, the roof structure, floor slab (to the extent repairs are necessitated by sub-surface conditions), foundation, structural portions of load bearing walls and structural portions of exterior structural walls, but shall have no other responsibility for maintenance, repair or replacements to the Premises or any part thereof; provided, however, this provision is in no way intended to limit Landlord's obligation to maintain, repair and replace any and all elements, both structural and non-structural, of the Common Areas pursuant to the terms of this Lease. In addition to the Landlord's maintenance and repair obligations set forth herein and otherwise set forth in this Lease, Landlord agrees to maintain the Other Improvements immediately surrounding the Building, including sidewalks and landscaping. Should either party fail to perform its obligations under this paragraph 10, the other party may, at its option, effect such maintenance, replacements or repairs, provided that such curing party shall have given the nonperforming party thirty (30) days' prior written notice, except in the case

of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required); but further provided that such thirty (30) day period (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as the party required to effect such cure has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. The nonperforming party shall reimburse the other party on demand for the reasonable and actual amount so expended (as evidenced by detailed invoice), plus interest at the Default Rate. However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement. All maintenance, repairs or replacements shall be done by Tenant or Landlord lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. In order for Landlord and Tenant to effectively perform their maintenance, repair and replacement obligations hereunder, Tenant and Landlord, as applicable, shall assign to the other party any and all manufacturers' and contractors' warranties relating to such work performed on behalf of the other party to the party who is required to maintain same under the Lease.

     11.   <u>Payment of Utility Bills</u>.  Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. Landlord shall pay when due all utility charges incurred in the operation of the Common Areas and the Shopping Center, subject to reimbursement pursuant to paragraph 7(b).

     12.   <u>Alterations</u>.  During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent but subject to the terms of the OEA, to (i) reduce, change or eliminate its tower entry feature or make any interior alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly-sized stores and (ii) make any interior nonstructural alterations or modifications it may desire. With Landlord's consent, which shall not be unreasonably

withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, to alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements. Landlord's withholding of consent as to any exterior or structural alteration or modification (other than those which Tenant is permitted to make without Landlord's consent pursuant to clause (i) above) shall be deemed reasonable if same is materially inconsistent with the then-existing architecture of the Shopping Center, or reduces the value or structural integrity of the Premises or materially adversely affects utility systems not exclusive to Tenant or if Landlord or Tenant is unable to procure any consent required under the OEA. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 13) and made and completed at Tenant's cost in a workmanlike manner and in compliance with all applicable law. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within thirty (30) days following Tenant's delivery of such plans and specifications to Landlord. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes.

13. <u>Mechanics' Liens</u>. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lien, as applicable, against the Premises or the Shopping Center. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises or Shopping Center, the party on account of whose actions such lien has been filed shall indemnify, defend and hold harmless the other party to this Lease from and against any claims, costs, liability, loss or damage, including reasonable attorneys' fees, incurred as a result of the filing of such lien, and

further shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto. Notwithstanding the foregoing, Landlord shall not be required to remove such lien unless the continued existence of such lien, pending dispute by Landlord, poses a material risk to Tenant's use or operations in or continued possession of the Premises.

    14.    Insurance.

        (a)    Property Damage.

          (i) During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the period of time prior to the Commencement Date that such builder's risk insurance is in effect, Tenant shall not be required to contribute towards the premiums for fire and extended coverage insurance for the Shopping Center. Landlord and any "mortgagee" (as defined in paragraph 21 below) shall be named in such policy as additional insureds as their respective interests may appear.

          (ii)    During the Main Term and all Option Periods, Landlord shall keep in full force and effect a policy of fire and extended coverage insurance covering loss or damage to all buildings and improvements in the Shopping Center not separately insured by the occupant thereof (whether or not occupied or fully constructed), including the Premises and all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Area (such areas sometimes collectively referred to as the "Additional Areas"). Such insurance shall also include rent interruption insurance coverage, providing for the payment to Landlord of the Base Rent and other charges payable under this Lease for a period of not less than, nor more

227314 7

than, twelve (12) months, the proceeds of which shall be payable to Landlord in the event Tenant exercises any right of abatement of rent permitted under this Lease, which abatement shall in no event exceed twelve (12) months notwithstanding any provision of this Lease to the contrary.   The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center.  Such fire and extended coverage insurance shall be in the amount of at least one hundred percent (100%) of the replacement value of such buildings and improvements, excluding excavations, footings and foundations (with an amount attributable to the Premises of not less than the Tenant Improvement Allowance), with a commercially reasonable deductible. Tenant shall be named in such policy as an additional insured.  Such policy shall not name any Mortgagee of Landlord as Mortgagee unless said Mortgagee has executed and delivered to Tenant a Subordination Non-Disturbance and Attornment Agreement providing for distribution of casualty insurance proceeds and condemnation proceeds in accordance with this Lease or, if Mortgagee's interest is subordinate to this Lease, such Mortgagee has otherwise agreed that casualty and condemnation proceeds shall be distributed in accordance with this Lease.  The cost of the premiums for the fire and extended coverage insurance shall be an element of CAM Charges.  At any time, and from time to time during the Term, provided the Premises are separately insurable, Tenant may obtain one or more bids for fire and extended coverage insurance for the Premises (only) from an insurance carrier meeting the rating requirements of subparagraph (f) below which is comparable to the insurance coverage procured by Landlord, with a commercially reasonable deductible which complies with the requirements of OEA.  If any such bid is in an amount which is less than Tenant's pro rata share of the premiums for the fire and extended coverage insurance procured by Landlord, then Landlord shall either (a) permit Tenant to obtain, pursuant to such bid, separate fire and extended coverage insurance for the Premises at Tenant's sole cost and expense, which insurance must meet all the applicable requirements of this paragraph 14, but which may contain a commercially reasonable deductible

approved by Landlord and its Mortgagee, in which case Tenant shall not be required to contribute towards the premiums for Landlord's fire and extended coverage insurance for the Shopping Center as part of the CAM Charges, or (b) limit Tenant's contribution of its pro rata share of the premiums for Landlord's fire and extended coverage insurance for the buildings and improvements in the entire Shopping Center to the amount of such bid, for the period covered by the bid. Upon the expiration of the period covered by the bid, Tenant shall be entitled either to repeat the foregoing procedure by securing new bid(s) for such insurance coverage or to resume paying its pro rata share of Landlord's premiums for the insurance for the entire Shopping Center.

(b)     _Liability Insurance_.  During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and any Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c)     _Workers' Compensation Insurance._   To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d)     _Self-Insurance_.  Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant is then occupying the Premises and has a net worth, verified as of the end of Tenant's most recent quarterly reporting period, of not less than Two Hundred Million and No/100 Dollars ($200,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision unless

Tenant is no longer a publicly-held corporation).  To the extent applicable, Tenant shall also satisfy the self-insurance requirements of the OEA.  If Tenant elects to self-insure, it shall not be required to contribute towards the premiums for Landlord's fire and extended insurance for the Shopping Center as part of the CAM Charges.

(e)    Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction.  During the Term, Landlord shall keep in full force and effect, policies of (1) commercial general liability insurance, and (2) fire and extended coverage insurance, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (such areas here sometimes collectively referred to as the "Additional Areas").  The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center.  Said policies shall name Tenant, and any lender, investor or other stakeholder which is designated by Tenant from time to time, as an additional insured to the fullest extent Tenant and such stakeholder have insurable interests.  The limits of such policies shall be the same as those set forth in subparagraphs (a) and (b) above, as applicable, provided that Landlord shall be able to adjust the limits of such policies to reflect changing conditions and the resulting insurance coverages which are then customary among owners of the "power" shopping centers in the Twin City area.  The cost of the premiums for coverages relating to Common Areas shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage materially in excess of that coverage which is customary from time to time among owners of "power" shopping centers in the Twin City area unless such coverage is reasonably required by Landlord's Mortgagee.  Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center, including the Additional Areas and areas leased to third

party tenants or sold to third party occupants, are insured with substantially similar coverages to those required for the Premises and the Common Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever Tenant may be assured that all of Tenant's Preferred Areas, the Southwest Quadrant of the Shopping Center and not less than 400,000 square feet of Floor Area in the Shopping Center (inclusive of the Floor Area in the Southwest Quadrant) will be reconstructed in equal or superior condition within the time frame set forth in paragraph 15 and that, with respect to any portion of the Shopping Center or the Mervyn's Parcel that is not reconstructed, the damaged portion and/or the balance of any damaged building improvements shall be demolished and the cleared area will be restored to either a hard surface or a landscaped condition and, thereafter, maintained as Common Area until a replacement building is erected. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep, or cause its general contractor to keep, in full force and effect, with regard to the Shopping Center, at least the minimum insurance coverages set forth below:

1)     Workers' Compensation - Statutory Limits;
       Employers Liability - $500,000;

2)     Automotive Liability for all vehicles with limits of $2,000,000; and

3)     Commercial General Liability to include premises operations and products/completed operations coverage with limits of $2,000,000.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured, if commercially available, and such builder's risk policy shall name Tenant a loss payee.

(e)     Policy Provisions. Except as otherwise approved in writing by Landlord, all policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than A-/X. Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk"

227314.7                              -28-

or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 14. Except to the extent of any commercially reasonable deductible, Landlord shall not be entitled to self-insure against any of the risks recited herein. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the Premises and Tenant's or Landlord's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14.

(f)     <u>Waiver of Right of Recovery and Subrogation</u>. To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(g)     <u>Evidence of Insurance</u>. Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to casualty insurance), (ii) upon delivery of the Land (as to liability insurance and Tenant's builder's risk insurance) and (iii) no less than annually thereafter, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable).

(h)    Indemnities.    Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

Except if arising from the negligent or willful acts of Tenant or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises, or other buildings within Landlord's Premises or resulting from the use thereof by Landlord, its agents or employees.

15.    Damage by Fire or Other Casualty.

(a)    First Ten (10) Lease Years.    In the event of an insured fire or other casualty, causing destruction or damage to the Improvements, Common Areas, in Tenant's Preferred Area, and/or Additional Areas in the Southwest Quadrant occurring during the first ten (10) Lease Years, this Lease shall not terminate except as expressly set forth herein. The insurance proceeds attributable to the damage to the Improvements shall be delivered to the Escrow Agent pursuant to subparagraph (i) below and Base Rent and other charges shall be abated for a period not to exceed twelve (12) months in proportion to the impact of the damage on Tenant's ability to conduct business at the Premises, as reasonably determined by Tenant and as such impact may change during the reconstruction of the Premises. In the case of a casualty occurring with respect to the other Common Areas or Additional Areas, there shall be no rental abatement and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the delivery to the Escrow Agent of the applicable insurance proceeds, Tenant shall complete reconstruction of the Building and Other Improvements, and Landlord shall complete reconstruction of the Common Areas in Tenant's Preferred Area and Additional Areas in the Southwest Quadrant (including

227314.7

substantially equivalent value in equipment, furniture and fixtures), to that condition existing immediately prior to such casualty, in the reconstructing party's reasonable discretion, with, in event of any Tenant reconstruction, such alterations as may be permitted under paragraph 12 hereof. In the event, subject to force majeure, the Premises, Common Areas in Tenant's Preferred Area and/or Additional Areas in the Southwest Quadrant, as applicable, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by the party with repair and restoration obligations within two hundred seventy (270) days after receipt of any required governmental permits, for which permits the party with repair obligations shall make prompt application following such destruction or damage, and the availability of the applicable insurance proceeds (if not self-insured), then the other party, at its option, by giving written notice to the party with repair obligations, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction, shall be made available to the notifying party. Notwithstanding the foregoing, Landlord shall have three hundred and sixty-five (365) days to complete restoration of those portions of the Shopping Center not included within Tenant's Preferred Area or the Southwest Quadrant.

(i)    Application of Funds. All insurance (or self-insurance) proceeds received on account of such damage or destruction, less the cost, if any, of such recovery, shall be applied pursuant to the terms of this Lease to the payment of the cost of such restoration, repair, replacement, rebuilding, or alteration (the "Work"), including expenditures made for temporary repairs or for the protection of property pending the completion of permanent restoration, repair, replacement, rebuilding, or alteration, and, if required by any Mortgagee, shall be held by Mortgagee or a mutually agreeable third-party escrow agent (which is, for these purposes, the "Escrow Agent"), in an interest-bearing account in a federally insured financial institution or institutions such that all funds are deposit insured (or otherwise assured in a manner acceptable to the parties), to be paid out, as provided below, from time to time (but no more often than once monthly), as the Work progresses, upon Tenant's written request in event

of work by Tenant, or Landlord's written request in event of work by Landlord, accompanied by a certificate of the architect or engineer in charge of the Work (the "Certificate"), dated not more than seven (7) days prior to such request, stating that the sum then requested either has been paid by Tenant or Landlord, as applicable, or is justly due to the named contractors, subcontractors, materialmen, engineers, architects, or other persons (whose addresses shall also be stated) who have rendered services or furnished materials for certain portions of the Work. If the insurance coverage contains a deductible, Landlord shall, simultaneously with the delivery of the insurance proceeds by the insurer, deposit the amount of such deductible with Escrow Agent and such amount shall be disbursed by Escrow Agent as part of the insurance proceeds. The Certificate shall give a brief description of such services and materials, shall list the several amounts so paid or owing to each of such persons, shall state the cost of the Work at the date of the requisition, and shall state that no part of such expenditures has been or is being made the basis for any other request for payment. The Certificate shall state also that, except for the amounts listed therein, there is no outstanding indebtedness known to such architect or engineer, after due inquiry, for labor, wages, materials, supplies, or services in connection with the Work which, if unpaid, might become the basis of a vendor's, mechanic's, laborer's, materialman's, or similar lien upon the Work or upon the Premises or any part thereof.

(ii)    Disbursement. Upon compliance with the foregoing provisions of paragraph 15(a)(i), the Escrow Agent shall pay, out of the escrowed funds, to the persons named in the Certificate the respective amounts stated to be due to them or shall pay to Tenant, in the event of Tenant work, or Landlord, in the event of Landlord work, the amount stated to have been paid by Tenant or Landlord, as applicable; provided, however, that such payments shall not exceed in amount the cost of the relevant Work as stated in the Certificate. If the insurance proceeds or reconstruction funds paid by Tenant or Landlord, as applicable, to the Escrow Agent exceed the amount required to pay the total cost of the Work, the party paying such amount to the Escrow Agent, as applicable, after payment of all costs of the Work, shall be entitled to receive or retain, as applicable, such excess.

(b)    <u>After First Ten (10) Years</u>.  In the event of an insured fire or other casualty, causing destruction or damage to the Improvements, Common Areas in Tenant's Preferred Area and/or Additional Areas in the Southwest Quadrant occurring after the first ten (10) lease years, which has a repair and reconstruction cost of fifty percent (50%) or more of the then-total reconstruction cost of any of said areas (a "Material Casualty"), or in the event of any uninsured casualty which has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall have the option of terminating this Lease, in which case, provided that the Tenant Improvement Allowance has been paid to Tenant, the insurance proceeds (other than those maintained by Tenant with respect to its leasehold improvements, inventory, equipment and other personal property) which may be payable with regard to such damage or destruction shall be paid to Landlord.  Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty.

In the event the repair and reconstruction cost is less than fifty percent (50%) or more of the then total reconstruction cost of the Improvements, Common Areas in the Southwest Quadrant and/or Additional Areas in the Southwest Quadrant or Tenant <u>does not</u> elect to terminate this Lease as set forth above, then, the insurance proceeds shall be delivered to the Escrow Agent pursuant to subparagraph (a)(i) above, and Base Rent and other charges shall be abated for a period not to exceed twelve (12) months in proportion to the impact of the damage on Tenant's ability to conduct business at the Premises, as reasonably determined by Tenant and as such impact may change during the reconstruction of the Premises.  Subject to force majeure, within two hundred seventy (270) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and the delivery to the Escrow Agent of the insurance proceeds with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, and shall restore the Premises (including equipment, furniture and fixtures).  Should the repair and reconstruction cost be less than fifty percent (50%) or more of the then total reconstruction cost of the Improvements,

Common Areas in the Tenant's Preferred and/or Additional Areas in the Southwest Quadrant or Tenant elect to maintain this Lease in full force and effect, Landlord shall reconstruct all such Common Areas and Additional Areas in the manner specified by subparagraph (a) above regardless of the amount of damage to same. Additionally, Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center leased to third party tenants or sold to third party occupants are subject to substantially similar reconstruction obligations to those of the Premises (for a period of ten (10) years or longer), Common Areas and Additional Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever, in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that all of Tenant's Preferred Areas, the Southwest Quadrant of the Shopping Center and not less than 400,000 square feet of Floor Area in the Shopping Center (inclusive of the Southwest Quadrant) will be reconstructed in accordance with this paragraph 15 and that, with respect to any portion of the Shopping Center or the Mervyn's Tract that is not reconstructed, the damaged portion and/or the balance of any damaged building improvements shall be demolished and the cleared area will be restored to either a hard surface or a landscaped condition and, thereafter, maintained as Common Area until a replacement building is erected. Notwithstanding the foregoing, Landlord shall have three hundred and sixty-five (365) days to complete restoration of those portions of the Shopping Center not included within Tenant's Preferred Area or the Southwest Quadrant.

(c)    <u>Last Two (2) Years of Main Term or Option Period</u>. Notwithstanding the foregoing, if any damage or destruction which has a repair and reconstruction cost of twenty-five percent (25%) or more of the total reconstruction cost of the Premises occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's or Landlord's option, such option to be exercised by giving not less than thirty (30) days' prior written notice, and Landlord shall receive the proceeds of any insurance (other than that maintained by Tenant with respect to its leasehold improvements, inventory, equipment and other personal property) which may be

payable with regard to such destruction or damage to the Improvements. Notwithstanding the foregoing, if Landlord so terminates this Lease and, within thirty (30) days thereafter, Tenant exercises the next available Renewal Option (if any), such termination shall be deemed revoked and this Lease shall continue in full force and effect and the insurance proceeds shall be made available for reconstruction of the Improvements as provided in (a) and (b) above.

(d)   Termination by Landlord if Tenant is Not Operating. Notwithstanding anything to the contrary provided in this Paragraph 15, Landlord shall have the right to terminate this Lease following a Material Casualty to the Improvements, if, at the time of such Material Casualty, a majority of the Premises was not open for business and Tenant, within thirty (30) days after receipt of written notice from Landlord of Landlord's election to terminate, does not agree in writing to open not less than a majority of the Premises for business following such restoration. If Landlord terminates this Lease pursuant to the foregoing provision, (i) Landlord shall be entitled to receive the proceeds of insurance pursuant to the terms of subsection (c) above, and (ii) Landlord shall reimburse Tenant for the unamortized portion of any unreimbursed costs incurred by Tenant in connection with the construction or renovation of the Improvements (including, without limitation Tenant improvements and fixtures [other than removable trade fixtures]). Following a Material Casualty which would entitle Landlord to terminate this Lease pursuant to this subparagraph 15(e), Tenant, upon receipt of written request from Landlord, will provide Landlord with Tenant's calculation of the amount of the unamortized cost which will be owed to Tenant upon such termination. For purposes of calculating Tenant's unamortized costs of an improvement to the Premises, Tenant shall utilize an amortization period equal to the lesser of (A) the remainder of the Main Term (or Renewal Term, if appropriate) when the improvement was put in service or (B) the useful life of the applicable improvement as determined for federal income tax purposes. Landlord shall notify Tenant of its election to terminate this Lease as permitted in this paragraph within sixty (60) days following the occurrence of the applicable casualty and Tenant shall have sixty (60) days following receipt of such notice in which to notify Landlord as to whether it covenants to open at least a majority of the Premises for business following restoration. Landlord's termination shall be effective

227314.7

upon the earlier of sixty (60) days following delivery of notice to Tenant or the date on which Tenant notifies Landlord that it does not intend to reopen.

16.    Condemnation.

(a)    Definition of Taking and Substantial Taking. For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, the Shopping Center, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or Shopping Center and Common Areas (including the accessways to and from the Shopping Center) as, when taken or razed by Landlord following a taking, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, or (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of 4.25 spaces (ninety percent (90%) of which spaces shall be for full-sized automobiles) per 1,000 square feet of ground-floor gross leasable area or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking.

(b)    Tenant's Rights Upon Taking or Substantial Taking. In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and Landlord shall have all rights in any compensation or damages payable in connection with such Taking, except for