# EXHIBIT A – PART 4

written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

      (b)    <u>Bankruptcy</u>.  Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

    30.  <u>Landlord's Remedies</u>.  After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

      (a)    <u>Continue Lease</u>.  Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Ground Rent or Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or

secured, in Landlord's exercise of commercially reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

   (b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

    (i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

    (ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord should have) received in mitigation.

   As used in this paragraph 30(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of Default Rate for past due obligations, and a discount rate to net present value of Default Rate on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

227314 7

(c)    Reimbursement of Landlord's Costs in Exercising Remedies.  Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall either party be obligated to compensate the other for any speculative or consequential damages caused by a failure to perform obligations under this Lease.

(d)    Remedies Are Cumulative.  The various rights and remedies reserved to Landlord herein are cumulative and, subject to constraints imposed by applicable law, Landlord may pursue any and all such rights and remedies and all others.  Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

31.    Events of Landlord's Default; Tenant's Remedies.  Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant hereunder within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or (b) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the

case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity or as otherwise granted in this lease, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against fifty percent (50%) of the Base Rent due Landlord hereunder or (ii) pay into escrow with/Landlord's mortgagee or, if there is no Mortgagee or if it refuses to hold the escrow with another acceptable escrow agent, fifty percent (50%) of the Base Rent due to Landlord under this Lease until such Event of Default, including payment of interest and transaction costs specified in subsection (i) above, is cured by Landlord, at which time the escrowed funds shall be released to Landlord, or (iii) sue for damages, including interest, transaction costs and attorneys' fees as specified in subsection (i) above, and if any judgment for damages is entered and properly docketed in Washington County so as to be a judgment lien against the Shopping Center and is not satisfied within thirty (30) days, Tenant shall have the right to offset the amount of such properly docketed judgment lien against fifty percent (50%) of the Base Rent due Landlord hereunder, except that, in the event that a Mortgagee, or a receiver for a Mortgagee, or a purchaser which forecloses a Mortgage or takes a deed in lieu of foreclosing a Mortgage shall succeed to the interest of Landlord under this Lease, Tenant may not set off against Base Rent any amounts which relate to periods prior to the date on which such party succeeded to Landlord's interest. If Landlord fails to pay Tenant the Tenant Improvement Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in the Construction Provisions in addition to those provided herein; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant and Landlord shall be entitled to the remedies provided therein, in addition to those remedies provided herein. The various rights and remedies reserved to Tenant herein are

227314 7

cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise.

32. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

33. <u>Compliance with Applicable Laws</u>. During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Premises, and of the board of fire underwriters, as to the Premises, except that Tenant shall not be required to make alterations or repairs to the Premises which are the Landlord's responsibility pursuant to paragraph 10. Landlord shall comply with such requirements respecting the Common Areas. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform as to the Common Areas in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the Default Rate from Landlord with the next installment or installments of Base Rent.

227314 7

-61-

34.   <u>Notices</u>.  Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

If to Tenant:          CIRCUIT CITY STORES, INC.
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Corporate Secretary

with a copy to:        CIRCUIT CITY STORES, INC.
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Vice President of Real Estate

If to Landlord:        Robert C. Muir Co.
                       2850 Metro Drive, Suite 509
                       Bloomington, Minnesota  55425
                       Attention:  Mr. Kelly J. Doran

with a copy to:        Robert C. Muir, Co.
                       2424 North Federal Highway, Suite 459
                       Boca Raton, Florida  33431

an additional copy     Dorsey & Whitney
of any notice of       Pillsbury Center South
default to:            220 South Sixth Street
                       Minneapolis, Minnesota  55402
                       Attention:  Loren Knott, Esq.

*Handwritten annotation in right margin:*
Per Rea Hall          5/13/96
(804) 527-4000
       x2697
Do not copy
Michael Chalifoux
Corporate Secretary
or documentation
in future at
Circuit City's
request

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

35.   <u>Brokers</u>.  Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for DORAN MANAGEMENT COMPANY, RCM Minnesota Corporation, and WELSH COMPANIES, which shall be paid a commission by Landlord pursuant to their separate written agreements.  Landlord shall hold

227314.7                           -62-

Tenant harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted by any other real estate broker or finder claiming to be entitled to a commission or other fee except for any broker or finder (other than those mentioned above) hired by Tenant.

36.    Miscellaneous.

(a)    Headings and Gender.  All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease.  The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b)    Construction.  The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c)    Waiver of Jury Trial.  In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d)    Relationship of Landlord-Tenant.  Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e)    Entire Agreement; Merger.  This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein.  This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f)    Attorneys' Fees.  In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed

breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)   Partial Invalidity.  If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)   Consents.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)   Holidays.  If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j)   Applicable Law.  This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k)   Successors and Assigns.  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)   Counterparts.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)   Trademarks and Trade Names.  All trademarks, trade names, service marks, signs and all other marks of identification used by either party in its business shall at all times remain the exclusive property of such party, and the other party shall have no right,

227314.7                                    -64-

interest in, or title to any of such trademarks, trade names, service marks, signs or other marks of identification.

37. <u>Effectiveness of Lease; Tenant's Right to Terminate</u>.  Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that this Lease is expressly conditioned upon the satisfaction (or waiver) of each and all of the following conditions:

(a)     Landlord's delivery to Tenant of: (i) a commitment for leasehold policy of title insurance for the Shopping Center, at Tenant's expense; (ii) copies of all underlying documents referred to in said commitment for title insurance; and (iii) Landlord's most current survey of the Shopping Center and Tenant's approval of the foregoing in writing within thirty (30) days after receiving all of said documents.

(b)     Landlord's delivery simultaneously with the execution hereof of subordination, non-disturbance and attornment agreements in a form satisfactory to Tenant executed by all existing Mortgagees other than the holders of the Temporary Mortgages. Landlord represents that there are none.

(c)     Landlord's delivery of the Land by the date and in the condition specified in the Construction Provisions.

(d)     Tenant's obtaining (or waiving) by **December 31, 1995** evidence satisfactory to Tenant, in its sole discretion, that, but for Tenant's submission of detailed plans and specifications for the Improvements which are in accordance with applicable building codes and the requirements of the site plan approval obtained by Landlord, and in conformance with this Lease, Tenant shall be able to obtain a building permit on or after **February 15, 1996** to construct the Improvements. Each party agrees to apply for its respective approvals and permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; <u>provided</u>, <u>however</u>, that the foregoing shall not be deemed to require either party to initiate litigation or to agree to any conditions imposed upon issuance of any such permit or approval.

227314.7                                    -65-

(e)     Landlord's representations, warranties and covenants, including but not limited to those set forth in paragraph 19 herein, being true and accurate as of the date of delivery of the Land (as defined in the Construction Provisions).

(f)     Prior to delivery of the Land to Tenant, Landlord delivering evidence that the OEA has been fully executed and recorded in the appropriate land records as an encumbrance against the Shopping Center and the Mervyn's Parcel.

(g)     Tenant's obtaining satisfactory assurances, on or before **December 31, 1995**, that adequate utility services (including gas, electricity, telephone, domestic water, fire protection water, storm sewer and sanitary sewer) will be available on or before **July 1, 1996** for connection at the Premises or in close proximity thereto in amounts sufficient to support Tenant's operations.

(h)     Tenant's obtaining satisfactory assurances that all necessary approvals and consents, including approvals or consents from other tenants in the Shopping Center, and all necessary reciprocal use and easement agreements, including the OEA, have been obtained on or before December 31, 1995.

(i)     Landlord's delivery to Chicago Title Insurance Company, as escrow agent, within thirty (30) days after delivery of the Land, or upon commencement of construction by Tenant, whichever first occurs, an irrevocable unconditional letter of credit in the amount of the Tenant Improvement Allowance or a binding, unconditional loan commitment from Landlord's institutional lender giving Tenant direct access to Landlord's construction loan and otherwise in form and substance reasonably acceptable to Tenant, to secure Landlord's payment of the Tenant Improvement Allowance and development of the remainder of the Shopping Center.  If Landlord fails to provide such letter of credit or loan commitment, Landlord shall be in default under this Lease.

(j)     Landlord shall, on or before **December 31, 1995**, have entered into valid and binding lease agreements or purchase agreements with national or regional anchor tenants or purchasers (excluding Tenant) which typically are tenants in "power" shopping centers and which will occupy not less than 365,000 square feet of Floor Area in the Shopping Center which

leases or purchase agreements shall be cancelable only as a result of default, condemnation or failure to meet co-tenancy requirements substantially similar to this co-tenancy requirement. In addition, in order to satisfy the foregoing co-tenancy requirement, each of such tenants or purchasers must have committed to purchaser or lease space designated on the Site Plan and, with respect to a lease, shall have agreed to an initial term of not less than fifteen (15) years.

(k)    Landlord shall, on or before **December 31, 1995**, deliver evidence reasonably satisfactory to Tenant that Landlord's Mortgagee has agreed to fund and Landlord intends to construct and complete on or before **July 1, 1997**, not less than 475,000 square feet of Floor Area in the Shopping Center (including the Premises).

(l)    Landlord shall, on or before **February 1, 1996**, deliver evidence reasonably satisfactory to Tenant that the Temporary Mortgages have been satisfied and removed as encumbrances on the Shopping Center.

(m)    Landlord's delivery on or before **December 31, 1995**, of the documents, in form reasonably satisfactory to Tenant, to be attached as Attachments "13", "14" and "15" to Exhibit "C" pursuant to paragraph 3 of Exhibit "C".

(n)    Landlord's and Tenant's approvals on or before **December 31, 1995**, of a revised Site Plan depicting Tenant's Premises as shown on a revised Floor Plan (Attachment II to Exhibit "C"), a revised Attachment II to Exhibit "C" and a revised Exhibit "K" (Election). When approved by Landlord and Tenant, the revised Site Plan, Attachment II and Exhibit "K" shall supersede and be substituted for those attached to the Lease.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the

227314.7                                    -67-

failure of one or more of the foregoing conditions; provided that, as to every one of such conditions other than those conditions described in subparagraphs (c), (e), (f), (h), (i) and (l), Tenant's right to terminate this Lease shall expire if such termination is not exercised by 5:00 p.m. on **December 31, 1995**, time being of the essence. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

38. <u>Effectiveness of Lease; Landlord's Right to Terminate</u>. Landlord shall not be obligated to proceed with the construction of the Shopping Center unless and until all necessary governmental permits and financing (which shall be reasonably acceptable to Landlord) and the anchor tenants contemplated in paragraph 37(i) above are obtained. Should such permits and financing not be obtained, or determined by Landlord in its reasonable discretion to be obtainable, by **December 31, 1995**, Landlord may so notify Tenant in writing on or before **February 1, 1996**, and this Lease shall thereupon cease and terminate, any money or security deposited hereunder shall be returned to Tenant and each of the parties hereto shall be released and discharged from any and all liability and responsibility hereunder. If this Lease is not terminated by **February 1, 1996**, Landlord's right to terminate the Lease under this Paragraph 38 shall expire.

39. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use reasonable efforts to preserve the confidentiality of this transaction. This confidentiality agreement extends to any developers, lawyers handling this matter, employees or agents. The parties hereto agree to use reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above and such party's bankers and accountants) any of the material terms of this transaction. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any

governmental law or ordinance, but this covenant of confidentiality shall be breached if Landlord, or any of Landlord's developers, agents, lenders, lawyers or other similar parties, discloses the content of, or delivers a copy of this Lease to, any third party without the express written consent of all parties to this Lease. Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease.

40.    Financial Reports. At any time as Landlord shall have a legitimate need for same, i.e. in connection with a proposed sale or refinancing of the Shopping Center, but not more often than once per Lease Year, Tenant shall furnish to Landlord its most recent annual report and, if requested by Landlord, such other public information as Tenant files, from time to time, with the Securities and Exchange Commission; provided that if Tenant is no longer a publicly-held corporation, Tenant shall furnish to Landlord, upon such request, its most recent audited financial statement together with its most recent unaudited financial statement.

WITNESS the following signatures and seals:

LANDLORD

TAMARACK VILLAGE SHOPPING CENTER,
A LIMITED PARTNERSHIP

By:   Tamarack Village Shopping
      Center Corporation, General Partner

ATTEST (WITNESS):

Kelly S. Dorn
Asst. V.P.

By:
Name:   Robert C. Muir
Title:   Pres.

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

Joseph V. Jegdman
Its Assistant Secretary

By:
      Benjamin B. Cummings, Jr.
      Vice President

227314 5

## EXHIBIT "A"

SITE PLAN

232355 7



TAMARACK VILLAGE
CIRCUIT CITY
STORES, INC.

SITE PLAN
EXHIBIT "A"

## EXHIBIT "A-1"

### LEGAL DESCRIPTION

Lots 2 - 6, Block 1 and Outlot A, Tamarack Village.

## EXHIBIT "B"

### INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|---|---|
| Additional Areas | 14(a)(ii) |
| Assessment(s) | Exh. "C", para. 1(a) |
| Base Rent | 4(b) |
| Building | 2 |
| CAM Charges | 7(b) |
| CAM Year | 7(c) |
| Central Area | Preamble of OEA |
| Certificate | 15(a)(i) |
| City | 1 |
| Commencement Date | 4 |
| Common Area Easement | 6(d) |
| Common Area Maintenance | 7(a) |
| Common Areas | 7(a) |
| Concept Plans | Exh. "C", para. 2(b) |
| Construction Term | 3 |
| CPI-U | 4(b)(iii) |
| Date of Taking | 16(a) |
| Default Rate | 9(b) |
| Delivery of the Land | Exh. "C", para. 1(b) |
| Escrow Agent | 15(a)(i) |
| Event of Default (Landlord) | 31 |
| Event of Default (Tenant) | 29 |
| Floor Area | 7(c) |

| __Term__ | __Paragraph where defined__ |
|---|---|
| Foreclosure | 21(a) |
| Grading Plans | Exh. "C", para. 1(b) |
| Ground Rent | 4(a) |
| Hazardous Substances | Exh. "C", para. 1(a) |
| Improvements | 2 |
| Initial Special Assessments | 4(b)(ii) |
| Land | 1 |
| Landlord | Introduction |
| Landlord's Premises | 1 |
| Landlord Work | Exh. "C", para. 1(d) |
| Lease Year | 3 |
| Main Term | 3 |
| Material Casualty | 15(d) |
| Media Play Premises | Exhibit "F" |
| Modified Proctor | Exh. "C", para. 2(a) |
| Mortgage | 21(a) |
| Mortgagee | 21(a) |
| Office Depot Premises | Exhibit "F" |
| Option Periods | 3 |
| Other Improvements | 2 |
| Permissible Building Areas | Exhibit "A" |
| Permitted Encumbrances | Exhibit "F" |
| Permitted Future Exclusives | Exhibit "F" |
| Person | 20 |
| Personalty | 23 |
| Plans and Specifications | Exh. "C", para. 2(b) |
| Possible Taking | Exh. A-2 |

232355 7

-2-

| Term | Paragraph where defined |
|---|---|
| Premises | 1 |
| Real Estate Taxes | 9(a) |
| Renewal Option | 3 |
| Shopping Center | 1 |
| Site Covenants | 19(a)(ix) |
| Site Work | Exh. "C", para. 1(b) |
| Site Plan | 1 |
| Staging Area | 6(a) |
| State | 1 |
| Substantial Completion | Exh. "C", para. 2(e) |
| Substantially All of the Premises | 16(a) |
| Subordinate Mortgagee | 21 |
| Successor | 22 |
| Southwest Quadrant | 5 |
| Taking | 16(a) |
| Tax Parcel | 9(b) |
| Temporary Mortgages | 19(a)(ii) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Exh. "C", para. 3 |
| Tenant's Preferred Area | Exhibit "A" |
| Tenant's Pro Rata Share | 7(c) |
| Tenant's Pro Rata Share of Real Estate Taxes | 9(b) |
| Term | 3 |
| Transfer | Exh. "C", para. 3 |
| Utility and Drainage Plan | Exh. "C", para. 1(c) |
| Work | 15(a)(i) |
| Worth at the time of the award | 30(b) |