# EXHIBIT A – PART 6

<u>Attachment "4"</u>

Grading Plans

Grading Plan/Southwest Quadrant dated 6/27/95 prepared by BRW, Inc., Sheet 7 of 28.

232355 7

<u>Attachment "5"</u>

Construction Schedule[*]

| <u>Landlord's Task</u> | <u>Completion Date</u> |
|---|---|
| 1. Construction of a gravel, all-weather construction access to the Premises, staging area and curbcuts in the SW Quadrant. | April 1, 1996 |
| 2. Completion of Site Work including approval for all curbcuts. | April 1, 1996 |
| 3. Installation of temporary utilities. | April 1, 1996 |
| 4. Landlord's delivery of the Land to Tenant. | April 1, 1996 |
| 5. Site Plan Approval. | December 31, 1995 |
| 6. Construction and installation of permanent utilities servicing the Premises including permanent telephone service. | September 1, 1996 |
| 7. Construction and installation of storm water drainage for the Shopping Center. | August 1, 1996 |
| 8. Construction and installation of paving (including heavy-duty paving) and curbing for Tenant's Preferred Area. | |
| (i) Commencement Date | August 1, 1996 |
| (ii) Completion Date | September 1, 1996 |
| 9. Construction of landscaping at Shopping Center. | |
| (i) Commencement Date | September 1, 1996 |
| (ii) Completion Date | October 1, 1996 |

---

[*] *All dates falling after July 1, 1996 shall be extended one (1) day for each day beyond July 1, 1996 that Tenant has not commenced construction of the Premises*

232355 7

| **Landlord's Task** | **Completion Date** |
|---|---|
| 10.  Construction and installation of exterior lighting in the Shopping Center. | |
|     (i)  Commencement Date | August 1, 1996 |
|     (ii)  Completion Date | September 1, 1996 |
| 11.  Construction and installation of Tenant's Shared Pylon. | September 15, 1996 |

Attachment "6"

Site Work Certification


To:    Circuit City Stores
       9950 Mayland Drive
       Richmond, Virginia 23233
       Attention: Vice President-Real Estate


       Re:    Circuit City Store/Northtown Village
              Lease Agreement dated _____

Ladies and Gentlemen:

       The undersigned, as Landlord under the Lease has caused "delivery of the Land" to occur, and accordingly, completion of the Site Work, all in accordance with the terms of the Lease. Specifically the undersigned hereby certifies that: (i) the grading of the Land and Common Areas has occurred in accordance with the Standards for Grading Work, attached as Attachment "3" to the Lease, and Tenant's building pad has been prepared strictly in accordance with the geotechnical report referred to in the Lease; (ii) the Staging Area is available and (iii) a gravel, all-weather construction access road to the Land no less than 20 feet width has been prepared and is ready for your use.

       All conditions precedent, which are Landlord's responsibility, to issuance of your building permit have been satisfied by the Landlord, and we certify that all elements of the Site Work and delivery of the Land have been satisfied in accordance with the Lease.

                                      TAMARACK VILLAGE SHOPPING
                                      CENTER, A LIMITED PARTNERSHIP

                                      By:  Tamarack Village Shopping Center
                                           Corporation, general partner

                                      By:_____
                                      Its:_____



Attachment "7"

Utilities Specifications

Landlord will provide the following temporary utilities to within five (5) feet of the Premises no later than the date for completion of such temporary utilities set forth in the Construction Schedule:

> water (2" line, with sufficient pressure that pumping is not necessary) and electric power (200 amps, 1-phase, 4-wire, 120 volts, with weatherproof and rainproof fused disconnect switch) for use by Tenant in its construction of the Improvements.

The cost of temporary utilities will either be paid directly by Tenant or deducted from the Tenant Improvement Allowance.

Landlord will provide the following permanent utilities to within five (5) feet of the Premises at Tenant's identified entry points and at depths adequate for Tenant's tie-in without additional cost no later than the date for completion of such permanent utilities set forth in the Construction Schedule:

> gas (if available), conduits for telephone service, permanent electricity (adequate for 800-amp panel, 3-phase, 277/480 volt), sanitary sewer (6" line), domestic water (2" line), fire protection water (8" line, 50 pounds per square inch residual pressure, 2000 gallons per minute or at least sufficient capacity to service Tenant's sprinkler system without the need for any water pump, as approved by Tenant's fire protection consultant).

232355 7

Attachment "8"

**Utility and Drainage**

Grading Plan/Southwest Quadrant dated 6/27/95 prepared by BRW, Inc.

Utility Plan - Sheet 12 of 28

Drainage Plan Sheets 14 + 17 of 28

**Attachment "9"**

Paving Specifications

1.   With respect to parking area and roadway surfacing:

(a)   Pavement design shall be based on a "Design Period" of ten (10) years for the traffic indices specified by Westwood Engineering who shall be compensated by Landlord.

(b)   All pavement design shall conform to the recommendations of an independent soils engineer selected and compensated by Landlord.

(c)   Consideration must be given to heavier use in main drives and service area.

2.   With respect to sidewalks and curbs:

(a)   Landlord shall provide and install all curbs and sidewalks including perimeter curbs and sidewalks.

(b)   All sidewalks and curbs shall be constructed of concrete and shall have a minimum slope of 1.5% and a maximum slope of 3.0% away from the Building. All sidewalks and curbs shall be a minimum of four (4) inches thick, with a rough non-skid texture (as approved by the Landlord's architect with respect to the Common Area), over a suitable granular base. Salt finish is not acceptable. Tenant shall install the sidewalks adjacent to its Premises at its expense, which sidewalks shall conform to the foregoing and to Landlord's sidewalk design.

(c)   Entrance and access roads and other areas as required for suitable drainage, shall have six (6) inch curbs with a minimum of 12-inch gutters; however, next to sidewalks and buildings when drainage is not a factor a straight curb six (6) inches (without gutters) above the finished paving shall be permitted. Parking lot islands and landscape enclosures shall be vertical barrier-type curbs and all integral-type curbs and gutters and vertical barrier-type curbs shall be concrete. Extruded asphalt curbing may not be used.

232355 7

<u>Attachment "10"</u>

Shopping Center Lighting Specifications for the

Southwest Quadrant and Tenant's Preferred Area

Minimum design standards for lighting of the Southwest Quadrant of Shopping Center and Tenant's Preferred Area are as follows:

1.    The Developer shall prepare and submit plans showing the location and height of all light poles, fixtures, type of fixture shielding (if any), circuiting and details of the complete lighting arrangement and equipment.

2.    Illumination as measured at pavement shall be:

    a.    5.0 foot candles minimum maintained within 50' of Tenant's entry.

    b.    One and one-half (1 1/2) foot candles average maintained, measured at grade.

    c.    2.0 foot candles minimum maintained on entry drives.

3.    A sufficient portion of the overall lighting shall be designated as security lighting (i.e., remains on from dusk to dawn).  The security lighting layout and pattern shall be subject to Tenant's approval.

4.    Landlord shall install a seven-day time switch to control all parking area lighting wired to a common house panel.  All security lighting shall be placed on photo-cell switching.

5.    Extended lighting periods for late night and holiday sales will be coordinated through Landlord and subject to all applicable laws and ordinances.

232355 7

Attachment "11"

**Floor Plans**

Circuit City's floor plans for this store location are attached hereto. Landlord shall have the right, as part of its approval of Tenant Plans and Specifications, to approve the HVAC system serving the Premises, which consent shall not be unreasonably withheld and shall be granted provided such HVAC system is a Carrier, Trane or Lennox system. Tenant's roof system shall be warranted for fifteen (15) years. Tenant shall install exterior sillcock at the front and at the loading areas of the Building. Tenant's buildings shall use internal roof drains.

232355 7



<u>Attachment "12"</u>

Approved Contractor List

1.   D. J. Kranz
     2033 West Broadway
     Minneapolis, MN  55411

2.   Weis Construction
     1550 East 79th Street
     Minneapolis, MN  55425-1199

3.   Witcher Construction
     9855 West 78th Street, Suite 270
     Minneapolis, MN  55344

4.   Kraus Anderson
     525 South 8th Street
     Minneapolis, MN  55404-1078

5.   Elder Jones
     1120 East 88th Street
     Bloomington, MN  55420

232355.7

## EXHIBIT "D"

STORE FIXTURES
ALL STORAGE RACKING
ALL SECURITY SYSTEM ITEMS
TELEPHONES AND PAGING SYSTEMS
COMPUTER SYSTEM
OFFICE FURNITURE AND TRASH RECEPTACLES
BATTERY CHARGER
TRASH COMPACTOR
SIGNS (INTERIOR/EXTERIOR)
ANTENNA SYSTEM
ELECTRONIC SWITCHING
AIR COMPRESSOR (ROADSHOP)
SAFE
CONVEYOR
MEDECYLINDER LOCKS (5)
REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES
TACK BOARDS
WATER COOLER
FIRE EXTINGUISHERS
AUDIO ROOM FIXTURES AND SWITCHGEAR
PICTURES
WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS, DOLLIES, ETC.)
TRACK LIGHTS (CANS ONLY, NOT TRACKS)

232355 7

## EXHIBIT "E"
### PYLON SIGNS

232355.7



TAMARACK VILLAGE
ROBERT MUIR COMPANY
KKE ARCHITECTS INC.

94-08-1186-01

20'-0"

CIRCUIT CITY

OfficeMax

TOYS "Я" US

30 SF

30 SF

30 SF

PREFINISHED
METAL SURROUND

BACKLIT SIGN PANEL

TOTAL SIGNAGE
AREA 90 SF

BRICK

BACKLIT GLASS BLOCK
ROUNDED FORM

ROCKFACE BLOCK BASE
WITH LIGHTING ACCESS PANEL

TENANT'S PYLON

EXHIBIT E    1/4"=1'-0"

<u>EXHIBIT "F"</u>
PERMITTED ENCUMBRANCES

A.    The following are the only exclusive uses which Tenant shall permit to be applicable to the Premises under this Lease:

1.    <u>Cub Foods</u> - Cub Foods has a supermarket, grocery store and food store exclusive as provided in Section 5.3.6 of its lease and a drug store or pharmacy exclusive as provided in Section 5.3.5 of its lease, copies of which sections are attached hereto as Exhibit F-1.

2.    <u>Media Play</u> - Media Play has an exclusive, a copy of which is attached as Exhibit F-2.

3.    <u>PETsMART</u> - PETsMART has an exclusive regarding the retail sale of pets, pet food or other pet products or pet services as provided in Section 30 of its lease, and other restrictions as provided in said Section 30, a copy of which is attached hereto as Exhibit F-3.

4.    <u>Office Max or Staples</u> - In the event Landlord enters into a lease with either Office Max or Staples, Tenant agrees that, so long as Office Max or Staples or their respective successors, subtenants and assignees, as applicable, is operating an office product/equipment superstore in its premises at the Shopping Center, neither Tenant nor its respective successors, subtenants or assigns will use the Premises in the future for an office product/equipment supply store such as is operated by Office Max or Staples, as applicable, as of the date of this Lease, in a majority of its stores.

5.    <u>Bed and Bath Exclusive</u> - A primary use exclusive in favor of Linens and Things, Bed Bath and Beyond, Waccamaw Pottery, Home Fest or Home Place with respect to the sale of (i) domestic bedroom and/or bathroom goods (including without limitation linens and towels, area rugs and basket and basket products) and/or (ii) kitchen products and small and hand-held appliances (including without limitation glassware, cookware, kitchen appliances, dinnerware, flatware/cutlery, and other miscellaneous kitchen products) (including by way of example those businesses operated by Bed Bath & Beyond, Linens 'n Things, Waccamaw Pottery, and HomeFest). For purposes of this paragraph, the phrase "primary use" shall mean any business using more than twenty-five percent (25%) of its Floor Area for any of the foregoing uses.

6.    <u>Toys</u> - A primary use exclusive in favor of Tos "R" Us for the sale of toys, outdoor play equipment, children's wheel goods (the foregoing shall not apply to a full line wheel good store) layettes, infant furnishings, family and adult games, video and electronic games, and equipment or computers and accompanying software used primarily for and sold in connection with the operation of video and electronic games. For purposes of this paragraph, the phrase "primary use" shall mean any business using more than

twenty-five percent (25%) of its Floor Area for any of the uses described in the previous sentence. Notwithstanding the foregoing, the clause "computer and accompanying software used primarily for and sold in connection with the operation of video and electronic games" shall not apply to a consumer electronics and appliance retailer occupying at least 20,000 square feet of Floor Area in the Shopping Center, including, but not limited to, Circuit City Stores, Inc.

7.   <u>Sporting Goods</u> - A primary use exclusive in favor of Sportstown, Sports Authority, Gallions or Dick's Sporting Goods with respect to the sale of sporting goods, athletic footwear, athletic apparel and related products as a primary use. For purposes of this paragraph the phrase "primary use" shall mean any business using more than twenty-five percent (25%) of its Floor Area for any of the foregoing uses.

8.   <u>Office Depot</u> - In the event Landlord enters into a lease with Office Depot, Inc., so long as an office supply store has not ceased to be operating in the premises occupied by Office Depot, Inc. in the Shopping Center (the "Office Depot Premises") for a continuous period in excess of six (6) months (excepting any period during which remodeling or restoration work is being conducted with due diligence), no portion of the Premises may be used for a store having as its primary business the sale of office supplies, office equipment, office furniture and/or other office products and related goods. The foregoing shall not be deemed to prohibit Circuit City Stores, Inc., its successors or assigns from using the Premises in whole or in part for the operation of a standard Circuit City Superstore or other similar store for the sale of consumer electronics, household appliances and/or car stereo systems or services.

B.   Permitted Future Exclusive Uses. In addition to the exclusive uses permitted in Section A above, Landlord may grant additional primary use exclusives to other tenants or parcel owners in the Shopping Center provided the following conditions are satisfied:

(a)   Such exclusives must be granted in leases executed on or before July 1, 1997 or in connection with acquisitions closed by July 1, 1997;

(b)   The tenant or owner to which such exclusive is granted will occupy not less than 20,000 square feet of Floor Area in the Shopping Center;

(c)   The exclusive must be a "primary use" exclusive (i.e. Tenant must be permitted to utilize up to twenty-five percent (25%) of the Floor Area of the Premises for any such exclusive use); and

(d)   Tenant has approved such exclusive, which approval shall not be unreasonably withheld by Tenant, taking into consideration the effect of such exclusive on

232355 7                                    -2-

Tenant's then current and potential uses of the Premises and the ongoing operation and profitability of Tenant's business in the Shopping Center.

C.   Permitted Title Exceptions:

1.   Access control with designated access to County State Aid Highway No. 13 (Radio Drive) as evidenced by Washington County Highway Right of Way Plat No. 26 filed as Document No 405439 by Highway Right of Way Plat No. 27 filed as Document No. 405440 by Highway Right of Way Plat No. 30 filed as Document No. 418784 and by Highway Right of Way Plat No. 47 filed as Document No. 423319. Part of the interest of the State of Minnesota has been conveyed to Washington County by deeds filed as Document Nos. 807412 and 829395.

2.   Terms and Conditions of the OEA.

3.   Such easements and rights-of-way as may be dedicated on the final plat of Tamarack Village or otherwise entered into by Landlord in connection with the acquisition and development of the Shopping Center, provided the same are consistent with the Site Plan and do not materially and adversely impair the rights of Tenant under this Lease.

4.   Developer's Agreement and related documents to be entered into with the City of Woodbury provided nothing therein materially and adversely affects Tenant's rights under this Lease or contradicts the terms of this Lease.

5.   Special Assessments

6.   Mortgage dated August 17, 1995 to Center Partners, Ltd.

7.   Mortgage dated August 17, 1995 to Urban Shopping Center, L.P.

## EXHIBIT F-1

5.3.5        As a drug store or pharmacy for three years after the supermarket in the Building opens if at the time of the opening of the supermarket there is a drugstore or pharmacy in the Building  Provided that, any tenant in the Shopping Center with more than 50,000 square feet of leased space may have a pharmacy in that space which is incidental to its main use and after said three year period or if the supermarket does not open with a drug store or pharmacy there shall be no restriction on drug stores or pharmacies, except as provided in the next sentence. Notwithstanding anything to the contrary, no drug store or pharmacy shall be allowed in the Southeast Quadrant (except for the Premises) at any time. If Tenant ceases operating a pharmacy in the Premises for a period in excess of three hundred sixty-five (365) days, the restriction in the immediately preceding sentence shall thereafter be null and void. Landlord and Tenant agree that the restrictions contained in this Section 5.3.5 shall not apply to the buildings designated as "Mervyn's" "Home Depot" or "Montgomery Wards" on the site plan

5.3.6        As a supermarket, grocery store or food store. If Tenant ceases using the Premises as a supermarket for a period in excess of three hundred sixty five (365) days the preceding exclusive in this Section 5.3.6 shall thereafter be null and void. Landlord and Tenant agree that the restrictions contained in this Section 5.3.6 shall not apply to the buildings designated as "Mervyn's", "Home Depot", or "Montgomery Wards" on the Site Plan. Although the restrictions contained in this Section 5.3.6 do not apply to the occupants of the buildings designated as "Mervyn's", "Home Depot" or "Montgomery Wards" on the Site Plan, Landlord shall not lease or sell any of such buildings to any grocery or food wholesaler or to any supermarket, grocery store or food store operator  Prior to conveying any portion of the Shopping Center, except for the buildings designated as "Mervyn's", "Home Depot" or "Montgomery Wards" on the Site Plan together with a reasonable portion of the Common Area serving the applicable building pad, the Landlord shall record a restrictive covenant, in form and content acceptable to Tenant, against the portion of the Shopping Center being so conveyed containing the use restrictions contained in this Section 5.3.6. Such restrictive covenant shall specifically provide for enforcement by Tenant. Prior to conveying any of the buildings designated as "Mervyn's", "Home Depot" or "Montgomery Wards" together with a reasonable portion of the Common Area serving the applicable building pad, the Landlord shall use its best efforts to obtain a written agreement from the purchaser providing that the applicable building and property will not be used or operated as a supermarket grocery store or food store, unless and until it has been initially opened and operated for at least one day as another retail use  Upon any conveyance of any portion of the Shopping Center, subject to the restrictions of this Lease and subject to the execution and recording of the OEA and the applicable restrictive covenant, Tenant shall amend the Memorandum of Lease to delete the property conveyed from the Memorandum of Lease.

## EXHIBIT F-2

(a)  Landlord represents and warrants that it has not, and covenants that it shall not enter into any lease or execute any deed (a "deed" shall refer to any document transferring Landlord's interest in any portion of the Site, including without limitation a ground lease or a contract for deed) for other premises on the Site, except the premises designated on Exhibit C as Montgomery Wards, Home Depot, Mervyn's and Cub Foods (collectively called "Excluded Areas"), which permits the sale and/or rental of prerecorded audio and/or video products or books, or any of them, including but not limited to, records, discs, tapes and/or video recordings, except as an Incidental Use, as defined below, and each lease or deed hereafter made by Landlord for premises on the Site other than any of the Excluded Areas shall prohibit sale or rental of such items, except as an Incidental Use. A use by another occupant of the Center shall be an "Incidental Use" if the portion of such occupant's space in the Center that is used for the sale or rental of all such items by such occupant in the aggregate do not exceed twenty-five percent (25%) of such occupant's floor area.  Notwithstanding the foregoing, it shall not be a violation of this Section 4.8 if Landlord leases space in the Center to a tenant whose primary use is rental of prerecorded video products, provided that such tenant does not sell new (i.e., unused) prerecorded video products in its premises in the Center and does not sell used prerecorded video products, except used inventory from its store in the Center.

11/07/06  TUE 10:44 FAX 18123407800          DORSEY WHITNEY PLLP          ☑005

## EXHIBIT F-3

PETsMART - All other tenants [other than PETsMART] in the Shopping Center shall be prohibited from conducting any primary business in the Shopping Center which consists of the retail sales of pets, pet food or other pet products or pet services. For the purpose of this paragraph, the phrase "primary business" . . . shall mean any business using more than 25% of the Gross Floor Area occupied by any tenant, subtenant or other occupant of any portion of the Shopping Center.