UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| CIRCUIT CITY STORES, INC., et al, | § | Case No. 08-35653-KRH |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | Judge Kevin R. Huennekens |

**GALLERIA ALPHA PLAZA, LTD.'S RESPONSE TO LIQUIDATING TRUST'S TWENTIETH OMNIBUS OBJECTION TO LANDLORD CLAIMS**

COMES NOW Galleria Alpha Plaza, Ltd. ("Galleria"), by and through its undersigned counsel, and files this Response to *Liquidating Trust's Twentieth Omnibus Objection to Landlord Claims (Reduction of Certain Partially Invalid Claims, Reclassification of Certain Classified Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, Disallowance of Certain Duplicate Claims, and Disallowance of Certain Amended Claims*) (Dkt. No. 10072) (the "Objection") regarding the Proofs of Claim filed by Galleria, Claim Nos. 9190 and 14280,[1] and in support respectfully represents:

**I.  SUMMARY**

Galleria asserts (a) an administrative expense claim for certain taxes and rent paid by subtenants to Circuit City prior to its bankruptcy petition, which should have been remitted to

---

[1] The Liquidating Trustee also seeks to expunge claim 14280 as a duplicate of claim 14388.  Galleria has no objection to expunging claim 14280 if claim 14388 survives.

| | |
|---|---|
| Augustus C. Epps, Jr., Esquire (VSB No. 13254) | Keith A. Langley, Esquire (TX Bar No. 11919500) |
| Michael D. Mueller, Esquire (VSB No. 38216) | Rudy A. Dominguez, Esquire (TX Bar No. 24059689) |
| Jennifer M. McLemore, Esquire (VSB No. 47164) | LANGLEY WEINSTEIN LLP |
| CHRISTIAN & BARTON, LLP | 901 Main Street, Suite 600 |
| 909 East Main Street, Suite 1200 | Dallas, Texas 75202 |
| Richmond, Virginia  23219 | Telephone:  (214) 722-7160 |
| Telephone:  (804) 697-4100 | Facsimile:  (214) 722-7161 |
| Facsimile:  (804) 697-4112 | |
| | |
| Counsel for Galleria Alpha Plaza, Ltd. | Counsel for Galleria Alpha Plaza, Ltd. |

Galleria, the prime landlord, but never were, and (b) a general unsecured claim for amounts due prepetition and rejection damages.

The Objection fails to overcome the *prima facie* validity of the amounts claimed by the Galleria, and in any event, Galleria's claims are supported by its proofs of claim and pleadings filed in this proceeding. Accordingly, the Objection should be overruled as to Galleria's claims in its entirety.

## II. BACKGROUND

1. Galleria filed three proofs of claims and various pleadings relating to its claims against Circuit City Stores, Inc. ("Debtor"), — to wit:

- Proof of Claim No. 9190- general unsecured claim for **$2,482,536.52** (the "General Unsecured Claim");
- Proof of Claim No. 14280 – administrative priority expense claim;
- Proof of Claim No. 14388 – administrative priority expense claim;
- Application for Administrative Expense Claim by Galleria (Dkt. No. 3871);
- Joinder of Limited Objection of Dick's Sporting Goods ("Dick's") (Dkt. No. 3871);
- Amended Joinder to Objection of Dick's (Dkt. No. 927); and
- Second Amended Joinder to Objection of Dick's (Dkt. No. 2657).

2. As outlined in Galleria's *Application for Administrative Expense Claim* (Dkt. No. 3871 and Proof of Claim No. 14388, together, referenced herein as the "Administrative Expense Claim"), Galleria and Debtor, entered into a lease (the "Lease") whereby certain non-residential real property located at 13838 Dallas Parkway, Dallas, Texas (the "Premises") was leased from Galleria to Debtor. Debtor, in turn, entered into a certain sublease agreement (the "Dick's Sublease") whereby it sublet a portion of the Premises to Dick's Sporting Goods, Inc. ("Dick's"). Debtor further entered into a certain sublease agreement (the "Lakeshore Sublease") whereby it

2

sublet the remainder of the Premises to Lakeshore Learning Materials, a general partnership, d/b/a Lakeshore Learning Store ("Lakeshore", and together with Dick's, the "Subtenants").

3. Pursuant to both the Dick's Sublease and the Lakeshore Sublease, monthly rent became due and payable in advance on the first day of each calendar month. Under the Dick's Sublease, Dick's was to pay Debtor $69,193.23 in monthly rent and CAM charges, and $18,293.67 in pro-rata property taxes, for a monthly total of approximately $87,486.90. Under the Lakeshore Sublease, Lakeshore was to pay Debtor $21,399.25 in monthly rent and CAM charges, along with $5,500 in pro-rata property taxes, for a monthly total of approximately $26,899.25.

4. Debtor's course of dealing was to remit the monthly rent and CAM charge payments received from the Subtenants to Galleria, but to hold the pro-rata property tax payments until Galleria invoiced Debtor for yearly payment of those taxes.

5. Debtor filed for bankruptcy protection on November 10, 2008 (the "Petition Date"), and filed a motion seeking to reject the Lease and the Dick's and Lakeshore Subleases as of the Petition Date. *See* Debtor's Motion for Order Authorizing Rejection of Unexpired Leases of Nonresidential Real Property (the "Motion to Reject"), at Dkt. No. 21. While the Court granted the Motion to Reject on an interim basis on the Petition Date, it allowed parties-in-interest to object to such relief becoming final. *See* Order Granting Motion to Reject, at Dkt. No. 81.

***Unremitted Taxes***

6. As of the Petition date, upon information and belief, Debtor held approximately **$201,230.37** in pro-rata 2008 real estate taxes paid by Dick's and approximately **$60,500.00** in pro-rata 2008 real estate taxes paid by Lakeshore (together, the "Unremitted Taxes").

3

7. Debtor failed to turn over to Galleria the Unremitted Taxes, and Galleria was forced to pay the taxes owed on the Premises for 2008.

*November Rent*

8. Further, as of the Petition Date Debtor also held approximately $69,193.23 in monthly rent and CAM charges paid by Dick's for November, 2008, and $21,399.25 in monthly rent and CAM charges paid by Lakeshore for November, 2008, (collectively, the "November Rent").

9. Recognizing that its interests could be prejudiced by rejection of the Lease and the Dick's Sublease, Dick's filed its Limited Objection to the Order Granting Motion to Reject on November 20, 2008, at Dkt. No. 275 (the "Dick's Objection"). Galleria filed a joinder, an amended joinder, and a second amended joinder to the same at Docket Nos. 719, 927, and 2657 respectively (together, referenced herein as the "Galleria Joinder").

10. On April 14, 2009, the Debtor announced on the record that Dick's Objection and the Galleria Joinder could be removed from the court's docket because they "have now all been resolved on the same basis that we reported to the Court at the last hearing, the rejection date will be November 30th and all the claims issues will be reserved for another time." See Transcript filed Re: Hearing Held 4/14/2009 filed on April 30, 2009, at Dkt. No. 3221, pg. 3.

11. Debtor failed to turn over to Galleria the November Rent paid by the Subtenants.

*Synopsis of Claims*

12. Based on Debtor's failure to turn over the November Rent and the Unremitted Taxes, Galleria filed the Administrative Expense Claim. Based on Debtor's rejection of the Lease as of November 30, 2008, Galleria filed the General Unsecured Claim.[2]

13. The proofs of claim and pleadings filed in this case by Galleria set forth its claims in the following amounts:

   A. General Unsecured Claim of **$2,482,536.52** for rejection damages and prepetition amounts owed under the Lease.

   B. Administrative Expense Claim of **$352,322.85** – consisting of $261,730.37 for the Unremitted Taxes; and $90,592.48 for the November Rent.

*Partial Assignment of Claims*

14. Since the filing of the Administrative Expense Claim and the General Unsecured Claim, Galleria has entered into a settlement agreement with Dick's. Through this agreement, Galleria assigned to Dick's the portions of the Administrative Expense Claim corresponding to the payments made by Dick's to the Debtor.[3] Galleria has not determined what portion, if any, of the General Unsecured Claim has been assigned to Dick's through the settlement agreement. Galleria does not seek a double recovery for the payments made to it by Dick's that correspond to the General Unsecured Claim. However, this Response will address the entire General

---

[2] There is some overlap between the Administrative Expense Claim and the General Unsecured Claim. To the extent that this Court grants the Administrative Expense Claim, Galleria's General Unsecured Claim would be reduced accordingly.

[3] Thus, Galleria has assigned to Dick's the $201,230.37 in taxes paid by Dick's to the Debtor and the $69,193.23 paid by Dick's to the Debtor for rent in November, which are part of the Administrative Expense Claim. Galleria expects that Dick's will pursue this portion of the Administrative Expense Claim separately, but in an effort to preserve all of Dick's rights, the entire Administrative Expense Claim is addressed by this Response.

Unsecured Claim pending an agreement between Dick's and Galleria as to the exact portion of Galleria's Unsecured Claim assigned to Dick's.[4]

### III. BASIS FOR RELIEF AND MEMORANDUM OF LAW

*Failure to Overcome Presumption of Validity*

15. By the Objection, the Liquidating Trust seeks to reduce Galleria's General Unsecured Claim and expunge Galleria's Administrative Expense Claim. The only reason given for reducing or eliminating Galleria's claims is that they allegedly do not agree with Debtor's books and records.

16. Rule 3001 of the Federal Rules of Bankruptcy Procedure provides that "a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."

17. The Administrative Expense Claim provides a narrative setting forth in detail the composition of the claim made and the legal bases thereof.

18. The General Unsecured Claim also sets forth each item that was included in the claim and breaks down the amounts properly due under the Lease.

19. Nowhere does the Liquidating Trust state why or how the claims should be disallowed and/or reduced nor does the Trust set forth how it arrives at its calculation. Accordingly, the Liquidating Trust has not met the burden of overcoming the *prime facie* validity of Galleria's claims, and Galleria's claims should be allowed as filed in the amounts set forth above and the Liquidating Trust's objection to Galleria's proof of claims should be overruled.

---

[4] This Response is not intended to prejudice Dick's rights with respect to any of the claims assigned by Galleria.

*Administrative Expense Claim*

20. Under Section 503(b) of the Bankruptcy Code, a creditor is allowed an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . ." The Bankruptcy Code and the Fourth Circuit both require that the tenant promptly pay all post-petition obligations for the properties it leases. Section 365(d)(3) of the Bankruptcy Code requires that "the trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease . . . until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365 (d)(3).

21. Instead of being disadvantaged by a lessee's bankruptcy filing, and subsequent failure to pay post-petition rent, taxes, and insurance, a lessor is entitled to an administrative expense priority claims for the full amount of rent, taxes, and insurance provided for by the lease, that remains unpaid on a post-petition basis. *See In re Midway Airlines Corp.,* 406 F.3d 229, 235-37 (4th Cir. 2005); *In re Pudgie's Dev. Of NY, Inc.,* 202 B.R. 832, 836 (Bankr. S.D.N.Y. 1996) ("the provisions of §§ 365(b)(1) and 365(d)(3) unambiguously grant priority status to [landlords as a] . . . class of involuntary claimant[s]"): *see also* 11 U.S.C. § 502(b)(1)(B) (stating that property taxes are "actual, necessary costs and expenses of preserving the estate," and therefore qualify as administrative expense claims). Section 365(d)(3) not only fixes "the amount to be paid by debtor-tenants pending assumption or rejection of the lease at the amount provided in the lease," but it also requires that "these payments [must] be paid at the time required in the lease." *In re Child World, Inc.,* 161 B.R. 571, 575 (S.D.N.Y. 1993); *see also In re Fin. News Network, Inc.,* 149 B.R. 348, 352 n.4 (Bankr. S.D.N.Y. 1993).

22. Further, neither the Unremitted Taxes nor the November Rent that are held by Debtor belongs to the Debtor or its estate. *See In re American Int'l Airways, Inc.,* 44 B.R. 143,

147-48 (Bank. E.D. Pa. 1984) (sublease payments subject to constructive trust and not property of debtor's estate). Instead, these funds, totaling well over $300,000.00, have been paid by Dick's and Lakeshore, are held in constructive trust by Debtor for payment to Galleria. *Leach v. Conner,* No. 13-01-468-CV, 2003 Tex. App. LEXIS 10173, at *22-*27 (Tex. Civ. App. – Corpus Christi Dec. 4, 2003, no pet). (holding that rent paid by tenant to purchaser of property, who was subject to divestment by original owner's statutory right to redemption, was held in constructive trust by purchaser and must be paid following original owner exercising redemption right). At the very least, the Debtor's obligations to Galleria for the November Rent paid by the Subtenants (**$90,595.48**) qualify as an administrative expense claim based on the effective date of the rejection— November 30, 2008. *See Mid-Atl. Supply, Inc. of Virginia v. Three Rivers Aluminum Co.*, 790 F.2d 1121, 1124-26 (4th Cir. 1986).

23. Accordingly, the Unremitted Taxes and the November Rent are all due and payable by Debtor on a post-petition basis under the terms of the Lease, and because the Unremitted Taxes and the November Rent were remitted to Debtor and are held in constructive trust. The Debtor's obligation as a constructive trustee to remit these funds did not evaporate or otherwise disappear with the filing of its bankruptcy petition. If these funds are not recognized as a post-petition obligation, and paid as an administrative expense claim, Debtor will reap an enormous and undeserved windfall, and Dick's and Lakeshore, which are innocent parties to Debtor's wrongdoing will be forced to pay double their fair share.[5]

## IV. NOTICE ADDRESS

24. Galleria designates the following person to whom Debtor should serve a reply, if any, and who Debtor should contact to resolve the Objection on Galleria's behalf:

---

[5] Again, Dick's has made payment to Galleria corresponding to the amounts it previously paid to the Debtor and which are sought in the Administrative Expense Claim.

8

Keith A. Langley
LANGLEY WEINSTEIN LLP
901 Main Street, Suite 600
Dallas, Texas 75202
214.722.7162
214.722.7161 (fax)
klangley@lwllp.com

## V. RELIEF REQUESTED

WHEREFORE, Galleria requests that the Objection be overruled as to Claim Nos. 9190 and 14280, and that this Court grant such other and further relief as this Court deems just and proper.

Dated:  June 2, 2011                    **CHRISTIAN & BARTON, LLP**


/s/ Jennifer M. McLemore
Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

**-and-**

Keith A. Langley, Esquire (TX Bar No. 11919500)
Rudy A. Dominguez, Esquire (TX Bar No. 24059689)
LANGLEY WEINSTEIN LLP
901 Main Street, Suite 600
Dallas, Texas 75202
Telephone:  (214) 722-7160
Facsimile:  (214) 722-7161


*Counsel for Galleria Alpha Plaza, Ltd.*

## CERTIFICATE OF SERVICE

I, Jennifer M. McLemore, hereby certify that on the 2nd day of June 2011, a true and correct copy of the foregoing *Galleria Alpha Plaza, Ltd.'s Response to Liquidating Trust's Twentieth Omnibus Objection to Landlord Claims* has been served electronically using the ECF system on all registered users of the CM/ECF system who have filed notices of appearance in this matter.

/s/ Jennifer M. McLemore
Jennifer M. McLemore

1160479