## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CIRCUIT CITY STORES, INC.**, *et al.*, | ) | **Case No. 08-35653 (KRH)** |
| | ) | **(Chapter 11)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |

## LIQUIDATING TRUST'S RESPONSE IN OPPOSITION TO THE MOTION OF THE STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION TO (I) RECONSIDER AND VACATE PRIOR ORDER OF THE COURT EXPUNGING CLAIM NUMBER 13049; AND (II) DEEM CLAIM NUMBER 13049 TIMELY FILED

Alfred H. Siegel (the "Trustee"), the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" or "Trust"), pursuant to the *Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims* in the above captioned cases of the above referenced estates of Circuit City Stores, Inc. *et al.*, (collectively, the "Debtors") files this response in opposition (the "Response") to The State of California, State Board of Equalization's ("BOE") *Motion to (i) Reconsider and Vacate Prior Order of the Court Expunging Claim Number 13049; and (ii) Deem Claim Number 13049 Timely Filed* (the "Motion to Reconsider") (D.E. No. 10675), and in support thereof states as follows:

## I.     PRELIMINARY STATEMENT

BOE's Motion to Reconsider, filed more than <u>thirteen months</u> after this Court's entry of the Expungement Order,[1] and almost two years after the passing of the Claims Bar Date, seeks to deem timely a previously disallowed late filed claim that lacks substantive merit.  BOE must

---

[1]     For ease of reference, all capitalized terms shall have the same meaning as defined by BOE in the Motion to Reconsider unless otherwise defined herein.

show both that (1) the Expungement Order should be set aside under F.R.B.P. 3008, and (2) the

bankruptcy court should deem its late filed claim as timely based on "excusable neglect" under

F.R.B.P. 9006(b)(1).  BOE's Motion to Reconsider fails to meet those burdens and should be

denied with prejudice because the relief sought therein lacks both a legal and factual basis.

First, the factual record in this case conclusively demonstrates that BOE's prolonged

inaction with respect to BOE's Claim No. 13049 (the "Disallowed Claim") is anything but

excusable given BOE's failure to: (i) timely file the Disallowed Claim despite actual notice of the

order for relief and the Bar Date; (ii) respond to the Debtors' Claims Objection disallowing the

Disallowed Claim despite actual notice of the Claims Objection; (iii) timely move to deem the

Disallowed Claim timely despite actual knowledge that the Disallowed Claim was filed after the

Bar Date; and (iv) timely move to reconsider the Expungement Order despite actual knowledge

of its entry by the Court.  Second, the relief sought in the Motion to Reconsider is barred by the

doctrine of laches as BOE's protracted inaction has prejudiced the Trust's ability to defend the

Disallowed Claim on the merits.  Third, the Disallowed Claim is without merit.  Accordingly,

the Trust respectfully requests that the Court enter an Order denying the Motion to Reconsider

with prejudice.

## II.    FACTS WARRANTING DENIAL OF MOTION TO RECONSIDER
##        AND DENIAL OF REQUEST TO TREAT CLAIM AS TIMELY FILED

The following chronology reveals the BOE's utter failure to act in any diligent,

reasonable or good faith fashion, and the BOE's concession that the Disallowed Claim is

meritless.

1.    On December 11, 2008, the Court entered an Order establishing May 11, 2009 as

the bar date for governmental units to file a proof of claim (the "Governmental Bar Date Order")

(Docket No. 890).  The Governmental Bar Date Order provided in relevant part that:

a.   the Debtors shall serve a notice of bar date in the form attached to the

Governmental Bar Date Order as Exhibit 1 (the "Governmental Bar Date Notice")

by first class mail on or before December 19, 2008 to all known creditors

(Governmental Bar Date Order at ¶7);

b.   the Debtors shall publish the Governmental Bar Date Notice in the national

edition of the Wall Street Journal by no later than December 30, 2008

(Governmental Bar Date Order at ¶8); and

c.   any creditor that is required to file but fails to file a proof of claim in accordance

with the procedures set forth in the Governmental Bar Date Order shall be forever

barred, estopped, and enjoined from asserting any claim against the Debtors that

is in an amount exceeding the undisputed amount scheduled by the Debtors, if

any, or that is of a different nature or classification scheduled by the Debtors

(Governmental Bar Date Order at ¶12).

d.   the Bar Date Notice approved by the Governmental Bar Date Order includes

express, emphasized language warning claimants that claims must be <u>RECEIVED</u>

by the Bar Date. (Governmental Bar Date Order, attached Notice).

2.      On November 12, 2008, the Court appointed Kurtzman Carson Consultants, LLC

("KCC") as claims, noticing, and balloting agent for the Debtors in these Chapter 11 cases.  On

or about December, 2008, the Bar Date was clearly identified and posted by KCC on its website

at www.kcclcc.net/circuitcity (the "KCC Website") under the section of the KCC Website

entitled "Important Dates, Deadlines & Documents."  The items on the "Important Dates,

Deadlines & Documents" section appear in chronological order and the Bar Date is the sixth item

on the list.  Additionally, on or about December, 2008, a link to the Governmental Bar Date

Notice was posted next to the Bar Date in the "Important Dates, Deadlines & Documents" section of the KCC Website.

3.      On December 17, 2008, BOE was served with a copy of the Governmental Bar Date Notice via first class mail.  *See* Affidavit of Service of KCC (Docket No. 1314).  In addition, on December 24, 2008, the Debtors published the Governmental Bar Date Notice in the national edition of the Wall Street Journal.  *See* Affidavit of Publication (Docket No. 1395).

4.      On January 10, 2009, after consulting with its tax counsel (Akerman Senterfitt), Circuit City Stores West Coast Inc. took sales tax deductions on line 10a1 of its Q4 2008 State, Local and District Sales and Use Tax Return on line for bad debt losses on taxable sales for the period of April 1, 2005 through October 31, 2008 (the "Deductions").

5.      On April 24, 2009, the BOE sent Circuit City Stores West Coast, Inc. a letter enclosing its Report of Field Audit and Notice of Determination (the "Assessment").  The notice indicated a tax liability owing by the Debtors in the amount of $2,811,230.23.  The tax assessment consists of $2,537,420.57 relating to the Deductions, $240,779.66 relating to a sales tax assessment for bad debts claimed relating to returned checks and fraud losses ("Bad Check/Fraud Deductions"), and $33,030.00 relating to the tax exempt portion of the audit based on the error factor from the prior audit.  In the Assessment, the auditor noted that "due to the bar date, we are unable to grant the taxpayer additional time to document the bad debts claims" and "the taxpayer does not agree with the audit findings."  Affidavit of Jeff McDonald (the "McDonald Affidavit")[2] at ¶8; Affidavit of Jeff Knopke (the "Knopke Affidavit")[3] at ¶8.

6.      BOE acknowledges having actual knowledge of the Bar Date in this case as early as April 29, 2009, twelve days prior to the Bar Date.  *See* Motion to Reconsider at ¶6-7.

---

[2]      A true and correct copy of the McDonald Affidavit is attached hereto as Exhibit "A."

[3]      A true and correct copy of the Knopke Affidavit is attached hereto as Exhibit "B."

7.      BOE filed the following claims, by regular mail, that were stamped by the Court on or before the May 11, 2009 Bar Date (the "Timely Filed Claims"):

a.      priority claim in the amount of $36,033.68 against Circuit City Purchasing Company, LLC, received on March 16, 2009 (Claim No. 12002);

b.      administrative claim in the amount of $325,605.29 against Circuit City Stores, Inc., received on May 11, 2009 (Claim No. 13186); and

c.      administrative claim in the amount of $2,525,699.69 against Circuit City Stores West Coast, Inc., received on May 11, 2009 (Claim No. 13187).

*See* Claim Nos. 12002, 13186, and 13187 and Motion to Reconsider at ¶7(b), 8.

8.      On May 15, 2009, four days after the Bar Date, KCC received the Disallowed Claim filed as a priority tax claim in the amount of $2,846,666.34 for unpaid tax liability asserted by BOE against Debtor Circuit City West Coast, Inc. (hereinafter the Disallowed Claim collectively with the Timely Filed Claims shall be referred to as the "BOE Claims").  *See* Claim No. 13049 and Motion to Reconsider at ¶7(a).

9.      The underlying basis for the Disallowed Claim is the same amounts assessed in the Assessment, plus an additional $12,908 that the BOE separately assessed the Debtors for hazardous substances tax for the period of January 1, 2008 through December 31, 2008.  Based on its preliminary research, the Trust believes the $12,908 assessment is also without merit. Affidavits of Jeff McDonald and Jeff Knopke at ¶ 9.

10.     On February 19, 2010, the Debtors filed the Claims Objection seeking to expunge the Disallowed Claim on the basis that it was filed after the Bar Date.  *See* D.E. No. 6567 and Motion to Reconsider at ¶9.

11.     The deadline to respond to the Claims Objection was 4:00 p.m. on March 18, 2010 (the "Response Deadline").  *See* Claims Objection at p. 18.

12.     On March 9, 2010, nine days prior to the Response Deadline and sixteen days prior to the Objection Hearing, Peter O. Larsen, Esq., of the law firm of Akerman Senterfitt, the Debtors' outside tax counsel ("Larsen"), advised Roberta Cornell of the BOE's Legal Division, Investigations and Special Operations Branch (MIC 55), through e-mail correspondence, that the Debtors had filed an objection to the Disallowed Claim on the basis that it was filed after the Bar Date.  *See* Affidavit of Peter O Larsen (the "Larsen Affidavit")[4] at ¶8 and Exhibit A thereto.

13.     On March 11, 2010, Larsen attended an in person meeting with Roberta Cornell, Sid Zigelman (BOE's Acting Business Taxes Administrator), and Larry Brammer (BOE's District Administrator for Circuit City) (collectively, the "BOE Representatives") in which he again informed BOE that the Debtors had filed an objection to the Disallowed Claim on the basis that it was filed after the expiration of the Bar Date and that the Disallowed Claim lacked substantive merit in any event.  *See* Larsen Affidavit at ¶9.  In fact, Larsen advised Larry Brammer of these points a second time at a meeting later in the day.  *Id*.

14.     Despite having received actual knowledge on at least two separate occasions that the Debtors had objected to the Disallowed Claim as a late filed claim, BOE failed to file any response to the Claims Objection or request for additional time to respond.  *See generally*, Motion to Reconsider.

15.     The Claims Objection was heard by the Court on March 25, 2010 (the "Objection Hearing").  BOE did not make an appearance at the Hearing.

16.     On March 31, 2010, the Court entered the Expungement Order expunging the Disallowed Claim.  *See* Docket  No. 7067 and Motion to Reconsider at ¶10.

---

[4]          A true and correct copy of the Larsen Affidavit is attached hereto as Exhibit "C."

17.     On August 19, 2010, BOE received actual notice that the Disallowed Claim was expunged pursuant to Expungement Order by virtue of e-mail correspondence sent by Maria Carantzas, Esq. ("Carantzas"), also of Akerman Senterfitt, to Cindy Burba, a BOE BTSI, Technical Advisor to the BOE OH Administrator, who was working on the Circuit City case. *See* Affidavit of Maria Carantzas (the "Carantzas Affidavit")[5] at ¶ 12 and Exhibit A thereto.

18.     On August 31, 2010, Irvin Cooke, BOE's supervising tax auditor on this matter, advised the Debtors through e-mail correspondence to Carantzas that BOE was allowing 100% of the sales tax deductions for bad debt losses on taxable sales and had so informed Ms. Burba, who works for Larry Brammer.  *See* Carantzas Affidavit at ¶ 14 and Exhibit B thereto.  This is an admission by BOE that the Disallowed Claim has no merit.

19.     On October 11, 2010, the Debtors forwarded BOE a copy of the Expungement Order through e-mail correspondence sent from Carantzas to Zoila Saquicela, one of BOE's auditors whose supervisor is Irvin Cooke.  *See* Carantzas Affidavit at ¶ 16 and Exhibit C thereto. That same day, Ms. Saquicela acknowledged the receipt of the Expungement Order and advised the Debtors through e-mail correspondence that she attached the Expungement Order to the reaudit report for further review by BOE.  *Id.* and Exhibit D thereto.

20.      On October 28, 2010, six months prior to BOE's filing of the Motion to Reconsider, the Debtors again informed BOE through letter correspondence sent by Larsen that the Disallowed Claim was expunged pursuant to the Expungement Order.  *See* Larsen Affidavit at ¶ 10 and Exhibit B thereto.

21.     From November, 2010 through January, 2011, the Debtors contacted BOE in an effort to resolve the BOE Claims and were repeatedly advised to contact a different BOE representative, to wit:

---

[5]     A true and correct copy of the Carantzas Affidavit is attached hereto as Exhibit "D."

       a.      on December 7, 2010, the Debtors were informed to deal with Mr. Ken Parsons, BOE's bankruptcy auditor,

       b.      in early January, 2011, the Debtors were informed to deal with Victoria Baker, BOE's in-house counsel, and

       c.      on January 12, 2011, the Debtors were informed to deal with Todd Duffy, Esq., BOE's outside counsel.

*See* Affidavit of Tim Gillis at ¶¶ 4-6 (the "Gillis Affidavit").[6]

22.      On January 12, 2011, during Mr. Gillis' phone conference with Ms. Baker, Mr. Gillis again informed the BOE that the Disallowed Claim was expunged pursuant to the Expungement Order.  Gillis Affidavit at ¶ 7.

23.      On January 27, 2011, more than three months prior to the filing of the Motion to Reconsider, Mr. Gillis contacted Mr. Duffy to discuss global resolution of the BOE Claims. During the January 27, 2011 phone conference, the BOE stated for the first time that it intended to seek reconsideration of the Expungement Order or ask the Court to treat the Disallowed Claim as timely filed.

24.      In late April, 2011, Mr. Gillis contacted Mr. Duffy to discuss the prospect of a proposed global settlement offer to resolve all the BOE claims.  Gillis Affidavit at ¶ 8.

25.      On May 19, 2011, sixteen days after the filing of the Motion to Reconsider, Mr. Gillis conveyed by email to Mr. Duffy the first proposed global settlement agreement offered by either the Debtors or the Trust.  Gillis Affidavit at ¶ 9.  The May 19th E-mail was the first discussion between the Debtor and BOE that contained any dollar figures.  The proposal

---

[6]     A true and correct copy of the Gillis Affidavit is attached hereto as Exhibit ""E."  Mr. Gillis is an attorney with Akerman Senterfitt, the Debtors and Trust's outside tax counsel.

included in the May 19th E-mail did not include any allocation as to the proposed settlement

among the BOE Claims.  *See* Gillis Affidavit at ¶ 9.

26.     Significantly, the Debtor and BOE never agreed (or even discussed): (i)

permitting the Disallowed Claim to be deemed timely; or (ii) staying the time for BOE to file a

motion for reconsideration of the Expungement Order.  *See* Larsen Affidavit at ¶ 12,  Carantzas

Affidavit at ¶ 18; Gillis Affidavit at ¶ 10; McDonald Affidavit at ¶ 12; Knopke Affidavit at ¶ 12.

### III.     THE BOE CAN'T MEET ITS BURDENS TO SUPPORT THE RELIEF REQUESTED IN THE MOTION

It is the BOE's burden to show that (1) the Expungement Order should be set aside under

F.R.B.P. 3008, and (2) the bankruptcy court should deem its late filed claim as timely based on

"excusable neglect" under F.R.B.P. 9006(b)(1).  The Motion fails to meet those burdens and

should be denied with prejudice because: (i) BOE fails to satisfy the requisite standards for relief,

particularly a showing of "excusable neglect"; (ii) the relief sought is barred by laches; and (iii)

the Disallowed Claim is substantively without merit.

A creditor moving for reconsideration of an order disallowing its claim under F.R.B.P.

3008 bears the burden of proving that reconsideration of the claim is appropriate.  *In re Durham*,

329 B.R. 899 (Bankr. M.D. Ga. 2005) (citing *In re Rayborn*, 307 B.R. 710, 720 (Bankr. S.D.

Ala. 2002)).  Similarly, the party seeking to deem a late filed claim as timely bears the burden of

proof.  *In re Circuit City Stores, Inc. (EDC contested matter)*; Case No. 08-35653,  (Docket No.

6465), p. 9 (Bankr. E.D.Va. February 4, 2010) (copy attached hereto as Exhibit F).

### A.     Neither the BOE's Failure to Timely File the Disallowed Claim nor to Seek to Deem the Disallowed Claim Each as Timely Filed Justifies Reconsideration or Relief.

In sum, the BOE faces a stiff burden to justify its requested relief, and fails to satisfy any

of the requisite factors, particularly "excusable neglect."

**1.      Standard for Reconsideration/Treating Late Filed Proof of Claim as Timely**

"A bar date for filing proofs of claim is important to the orderly administration of the case and prevents delays in the distribution of funds to creditors." *In re Computer Learning Centers, Inc.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) (J. Mayer).   "This importance is highlighted by the fact that in order for a claimant to file a proof of claim after the court prescribed bar date, the claimant must establish that the "failure to act was the result of excusable neglect."   *In re Circuit City Stores, Inc.*, Case No. 08-35653, (Docket No. 7664), p. 10 (Bankr. E.D. Va. May 28, 2010) (citing *Pioneer Inv. Serv. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993)).

This Court has previously noted that, "it is not uncommon for courts to disallow a proof of claim filed just a few days after a filing deadline." *In re Circuit City Stores, Inc. (EDC contested matter)*, (Docket No. 6465), p. 9 (citing *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (refusing to enlarge the period for filing a notice of appeal when the litigant mailed the notice three days prior to the expiration of the deadline but the notice did not arrive until three days after the expiration of the deadlines); *In re Dishman*, 257 B.R. 780, 781-83 (Bankr. E.D. Va. 2000) (refusing to enlarge time for filing of complaint where complaint was filed two days late due to a delay in mail delivery caused by inclement weather); *Avnet, Inc. v. Maxwell*, 2006 U.S. Dist. Lexis 39425 (N.D. Ill. May 25, 2006) (refusing to accept late filed proof of claim where claim was faxed to claims agent on bar date and delivered by courier to claims agent one day after the bar date); *In re Yankee Distrib. Co.*, 53 B.R. 222, 223-24 (Bankr. D. Vt. 1985) (motion to allow late proof of claim was denied where proof of claim arrived one day after the bar date)).  *See also*, *In re Sterling Rubber Products Co.*, 316 B.R. 485,

490 (Bankr. S.D. Ohio 2004) (denying allowance of late filed claim where proof of claim was mailed prior to bar date and received one day after bar date).

In *Pioneer,* the Supreme Court reviewed the meaning of the term "excusable neglect" in the context of Chapter 11 bankruptcies and the bankruptcy rules.  The *Pioneer* court concluded that the term, in this context, is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392, (further citations omitted).  In the final analysis, the Supreme Court concluded that the process of determining what types of neglect are considered excusable, "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The Supreme Court established several nonexclusive factors to consider in this analysis: 1) the reason for the delay, including whether it was within the reasonable control of the movant; 2) the danger of prejudice to the debtor; 3) the length of the delay and its potential impact on the judicial proceedings; and 4) whether the movant acted in good faith. *Id.*  The Fourth Circuit has previously stated that excusable neglect is not easily demonstrated. *Thompson v. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996).

BOE's failure to timely file the Disallowed Claim, although only four days late, was conclusively the result of its neglect.  Neglect encompasses inaction caused by "inadvertence, mistake, or carelessness." *Pioneer*, 507 U.S. at 388.  BOE timely received notice of the Bar Date established in these cases through both mail and publication.  Despite acknowledging receiving notice of the Bar Date, BOE failed to timely file the Disallowed Claim or to timely seek for the Disallowed Claim to be deemed timely.  Similarly, BOE failed to timely file the Motion to Reconsider notwithstanding its receipt of multiple notices of entry of the Expungement Order.

As further discussed below, BOE's prolonged inaction is not remotely excusable under the

*Pioneer* factors.

> **2.      BOE's Failure to Timely file the Disallowed Claim and Delays in Filing the Motion to Reconsider the Expungement Order and to Deem Disallowed Claim Timely were Not Beyond its Control, and do Not Constitute "Excusable Neglect".**

When analyzing the reason for delay prong of the *Pioneer* test, courts "must consider not

only the reason for the delay itself, but also whether the reason was beyond the reasonable

control of the claimant."  *In re National Steel*, 316 B.R. 510, 517 (N.D. Ill. 2004).  "The most

important factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the

reason for the failure to file."  *In re Circuit City Stores, Inc.* (Docket No. 6465), p. 11 (citing

*Thompson*, 76 F.3d at 534).  "[T]he four Pioneer factors do not carry equal weight; the excuse

given for the late filing must have the greatest import.  *Id.*   While prejudice, length of delay, and

good faith might have more relevance in a close[] [sic] case, the reason-for-delay factor will

always be critical to the inquiry."  *Id.*  (citing *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir.

2005) (quoting *Graphic Commc'ns. Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d

1, 5-6 (1st Cir. 2001)); *see also Pioneer*, 507 U.S. at 395 (stating that it is also significant

whether or not the reason for the failure to file was "within the reasonable control of the

movant")).

Administrative failure on the part of the claimant is insufficient to warrant a finding of

"excusable neglect." *Id.* (citing *Thompson*, 76 F.3d at 534 ("[A] mere concession of palpable

oversight or administrative failure generally has been held to fall short of the necessary showing.

. . .") (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)); s*ee also In re

Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004); *United States v. Torres*, 372 F.3d 1159, 1163

(10th Cir. 2004); *Graphic Communication International Union Local 12-N v. Quebecor Printing*

*Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (stating that while *Pioneer* provides a more forgiving standard for excusable neglect than prior case law, "there still must be a satisfactory explanation for the late filing" and "the excuse given for the late filing must have the greatest import").

### a.    BOE Could Have and Should Have Timely Filed the Disallowed Claim.

BOE's failure to timely file the Disallowed Claim was not beyond its control. Considering the magnitude of BOE's Disallowed Claim and BOE's knowledge of this bankruptcy case from at least March 16, 2009 (the date BOE's first claim was filed with the Court), it is impossible to justify BOE's delay until the last possible moment to transmit the claim, and to do so via the U.S. Mail.  BOE admits that it had actual notice of the Bar Date as early as April 29, 2009, twelve days prior to the Bar Date.  Motion to Reconsider at ¶7. The Bar Date Notice clearly emphasizes (in bold and underlined type) that claims must be RECEIVED by the Bar Date. BOE fails to provide any explanation for waiting until April 29, 2009 to mail the Disallowed Claim, when it had already prepared and filed a claim in the bankruptcy case as early as March 16, 2009.  BOE also chose to send the claim via regular mail rather than any expedited delivery service.

Once the Disallowed Claim was mailed, BOE argues that the matter was beyond its control.  But BOE could have tried to track the shipment or at least called KCC to ensure that the claim had been received prior to the Bar Date.  If delivery on the final day was in doubt, BOE could have sent another copy by overnight delivery, or faxed a duplicate claim to a local courier who could have hand-delivered the claim to KCC.  In the alternative, BOE might have instantaneously filed a motion on the Bar Date requesting a one or two day extension of the Bar Date, and explaining the situation as contemplated by Fed. R. Bankr. P. 9006(b).  *See Sterling*

*Rubber, supra,*, 316 B.R. at 490 (holding that creditor who mailed proof of claim by U.S. Mail

prior to bar date that was received by court one day after claims bar date lacked excusable

neglect to deem claim timely where creditor failed to: (i) confirm whether claim was received by

clerk on bar date; (ii) seek extension of bar date; and (iii) timely file a motion to deem claim

timely); *In re Circuit City Stores, Inc.*, (Docket No. 6465), p. 12 (denying allowance of

administrative expense claim filed forty days after administrative claims bar date where claimant

had notice of bar date and had the ability to timely file administrative expense claim).

> **b.**   **BOE Could Have and Should Have Timely Sought to Deem the
> Disallowed Claim as Timely.**

Even if the Court disregards BOE's neglect in ensuring that the Disallowed Claim was

timely filed, BOE's delay in seeking to deem the Disallowed Claim as timely cannot be

explained.  BOE failed to confirm whether the Disallowed Claim was timely filed.  Had BOE

taken this minimal investigatory step on the day after the May 11, 2009 Bar Date, it would have

discovered that the Disallowed Claim was not timely.  Having discovered the late filing, BOE

could have then filed its motion to deem the Disallowed Claim timely.  Instead, BOE

inexplicably waited for a period of almost two years after the expiration of the Bar Date to seek

to allow the Disallowed Claim as timely.  During that time, BOE failed to respond to the

Debtors' Claims Objection, the Court entered the Expungement Order expunging the Disallowed

Claim, and the Debtors confirmed their Plan. While BOE's neglect is apparent on its face, BOE

has failed to provide a single cognizant basis for failing to: (i) confirm that the Disallowed Claim

was timely filed; and (ii) timely move to have the Disallowed Claim be deemed timely.  BOE

could have and should have taken these actions well in advance of the confirmation of the

Debtors' Plan, but much less well prior to May 3, 2011.

The allowance of the Disallowed Claim at this juncture would have the same effect as allowing a post-confirmation amendment to an allowed claim seeking to increase the allowed claim by in excess of $2.8M, the face amount asserted by the Disallowed Claim.  A number of opinions have held in the context of amendments to proofs of claim that a post-confirmation amendment to a proof of claim should be prohibited absent some "compelling reason."  *In re Winn Dixie (IRT Partners, L.P. v. Winn-Dixie Stores)*, 639 F.3d 1053, 2011 U.S. App. LEXIS 8896 (11th Cir. April 29, 2011) (holding that confirmation of liquidating plan precluded post-confirmation amendment of a creditor's claim absent compelling circumstances justifying the amendment)(copy attached as Exhibit G); *In re International Horizons, Inc.*, 751 F.2d 1213, 1216-1217 (11th Cir. 1985) ("[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment"); *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993) (holding that confirmation of plan precludes post-confirmation amendments absent some "compelling reason").

In *Winn Dixie*, two creditors sought to amend their claims less than two months after the confirmation of a liquidating plan to include omitted rejection damages.  *Winn Dixie*, 2011 U.S. App. LEXIS 8896, *3.  In the aggregate, the amended claims sought to assert additional indebtedness in excess of $1,000,000.  *Id.*  The 11th Circuit held that the amendments to the claims would not be allowed because the record in the case indicated no reason for the delay related to the requested amendments.  *Id.* at *7.

Here, as in *Winn Dixie*, BOE failed to object to the confirmation of the Debtors' liquidating plan, the Trust has already made distributions to allowed administrative and priority claims under the Plan, and the last date to object to administrative claims passed on March 1, 2011.  Moreover, the amount of indebtedness asserted in the Disallowed Claim and BOE's delay

in filing the Motion to Reconsider are substantially greater[7] than the post-confirmation

amendments ultimately denied in *Winn Dixie*.  Finally, as in *Winn Dixie*, BOE has failed to

provide a single reason to justify BOE's post-confirmation delay in seeking to deem the

Disallowed Claim timely, much less a compelling reason.    Accordingly, BOE's failure to

demonstrate the requisite "excusable neglect" requires that the Motion be denied in its entirety.

> **2.      Reconsidering the Expungement Order and Deeming the Disallowed Claim
> as Timely Will Prejudice the Administration of the Trust and Would Change
> the Facts Relied Upon in Developing the Debtors' Plan.**

In applying the *Pioneer* standard, at least one Court of Appeals has held that the prejudice

outlined in *Pioneer* requires consideration of the following factors: (1) the size of the claim with

respect to the rest of the estate; (2) whether allowing the late claim would have an adverse

impact on judicial administration of the estate; (3) whether the plan was filed or confirmed with

knowledge of the existence of the claim; (4) the disruptive effect that the late filing would have

on the plan or upon the economic model upon which the plan was based; and (5) whether

allowing the claim would open the floodgates to other similar claims.  *In re O'Brien*

*Environmental Energy, Inc.,* 188 F.3d 116, 126-28 (3d Cir. 1999).

At $2,846,666.34, BOE's Disallowed Claim does not represent a large percentage of the

amount of allowed priority claims.  However, under the Debtors' Plan, all allowed priority

claims must be paid in full.  Accordingly, if the Disallowed Claim was deemed timely, the Trust

would be forced to reserve for the full amount of the Disallowed Claim pending resolution of a

lengthy objection on the merits, thereby not only resulting in delay and potential reduction of the

---

[7]        Compare $2.8M indebtedness asserted in Disallowed Claim and seven month post-confirmation delay in
filing Motion to Reconsider with $1M indebtedness and two month post-confirmation delay in filing amendments to
proofs of claim.

anticipated distribution to unsecured creditors, but also potentially requiring this case and the Trust to remain open pending a final resolution.

More importantly, it would be manifestly inequitable to require other creditors who have diligently prosecuted their claims to await distribution until the final disposition of the Disallowed Claim solely due to BOE's near two year delay in seeking to deem the Disallowed Claim timely. *See In re Freightway Corp.,* 171 B.R. 41, 43 (Bankr.N.D.Ohio 1994) (holding that "excusable neglect" did not exist where creditor's post-confirmation amendment of its proof of claim would delay debtor's reorganization).

In this case, the Disallowed Claim was expunged almost six months prior to confirmation of the Debtors' Plan through one of many omnibus objections designed to eliminate claims in preparation for the claims analyses necessary to prove confirmation feasibility. Thus, it is undisputed that the Plan was filed and confirmed without taking into account the allowance of the Disallowed Claim. As the Debtors' Plan consolidated the various estates, the allowance of a priority tax claim in excess of $2.8 million solely against the estate of Circuit City West, Inc. would be a liability that would have likely changed the Debtors' consolidation analysis.

The allowance of the Disallowed Claim is unlikely to disrupt the economic model upon which the plan was based upon. However, it is axiomatic that allowance of the Disallowed Claim at this juncture will substantially prejudice the Trust and its creditors due to, *inter alia*: (i) increased administrative expenses associated with litigating the Disallowed Claim on the merits; (ii) increased administrative burdens associated with modifying both existing and future distributions to the extent all or a portion of the Disallowed Claim is ultimately allowed; and (iii) potential delay in making distributions to creditors arising from liquidation of the Disallowed Claim. *See In re US Airways, Inc.*, Case No. 04-13819-SSM, 2005 Bankr. LEXIS 2828, *10

Case 08-35653-KRH    Doc 11034    Filed 07/20/11    Entered 07/20/11 17:47:16    Desc
Main Document    Page 18 of 143

(Bankr. E.D.Va. December 29, 2005) (J. Mitchell) (holding that proof of claim filed seven months after claims bar date and one month after confirmation of debtor's plan did not constitute excusable neglect where creditor knew or should have known of claims bar date and allowance of late filed claim would seriously prejudice the **efficient post-confirmation administration of the case**) (emphasis added) (a copy of this decision is attached hereto as Exhibit H).

Lastly, deeming the Disallowed Claim timely at this juncture would potentially open the Trust to numerous other late-filed claims.  Early in the case after the Bar Date, but before confirmation, the Debtors objected to and obtained an order from this Court disallowing numerous claims as untimely.  *See* Expungement Order.  Deeming BOE's Disallowed Claim timely at this juncture would potentially nullify prior orders disallowing untimely claims, opening the doors to other creditors with knowledge of the Bar Date to seek allowance of a late filed claim.

The cases cited by the BOE do not support its claim that, due the liquidating nature of the *Second Amended Plan*, the Trust will not suffer prejudice if the Disallowed Claim is deemed timely at this late stage.  For example, while *Premier Membership*, 276 B.R. 709, 714 (Bankr. S.D.Fla. 2002), contains the general language cited by BOE, the late claim at issue was a general unsecured claim.  The court expressly remarked that the result would be different if the late claim at issue was a **priority tax claim** that would be paid ahead of general unsecured creditors (citing to its prior decision in *Intelligent Medical Imaging, Inc.*, 262 B.R. 142 (Bankr, S.D. Fla. 2001)(emphasis added).  *Crane Rental*, 341 B.R. 118, 122 (Bankr. D.Mass. 2006), also contains the general language cited by the BOE, but (i) involved a liquidating plan that was projected to pay all creditors IN FULL, (ii) the debtors conceded that they would suffer no prejudice if the late claim was allowed, and (iii) the claimant agreed not to press other creditors for a refund if

the allowance of its claim resulted in a shortage of available funds to pay all creditors 100% of

their claims.  In the other cases cited by BOE for the same general "prejudice" language, the

plans had not been confirmed and/or no distributions had been made.  *See also*, *In re Circuit*

*City, et al.*, Case No. 08-35653 (Docket No. 6465), p. 9 (Bankr. E.D. Va. February 4, 2010)

(denying motion to deem administrative expense claim timely filed eight months prior to

confirmation of Debtors' liquidating plan due to lack of excusable neglect).

### 3.      BOE Significantly Delayed Seeking to Deem the Disallowed Claim Timely

Weighing the length of delay is an equitable determination, dependent on a case-by-case

basis on the evidence presented.  *National Steel, supra,* 316 B.R. at 519.  The court should

consider the delay in absolute terms, meaning the delay's effect on the judicial proceedings

should not be the only factor considered.  *O'Brien, supra*, 188 F.3d at 130 ("although it is proper

to consider the delay's effect on the judicial proceedings, *Pioneer* teaches that we should

consider the length of the delay in absolute terms . . .").

The length of BOE's deliberate delay in its absolute terms is significant, as the Motion

was filed nearly two years after Disallowed Claim was late filed and over seven months after

confirmation of the Plan.  As discussed above, requiring the Trust to set a $2.8 million reserve

for BOE's Disallowed Claim at this juncture would undermine the decisions made in the case by

the Trust, affect distributions, and delay the administration of this case.

### 4.      BOE Did Not Act in Good Faith

Courts have used the length of a delay in the determination of the good faith of an act.

For instance, in *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 756 (D. N.J. 1999), the

court found that the creditor acted with good faith when it sought leave for its late claim within

one week of learning of the bankruptcy.  BOE, however, waited 2 years until after the filing of

its Disallowed Claim after the Bar Date before filing the Motion to Reconsider.  Over that time, the Debtors, with the knowledge that the Disallowed Claim was expunged, confirmed a Plan, and (as well as their successor, the Trust) negotiated the resolution of numerous claims, and entered into settlement agreements resolving multiple disputes.

The failure of BOE to file a proof of claim "until the proverbial 'eleventh hour'" coupled with an epic delay prior to seeking judicial relief evidences BOE's lack of diligence, if not good faith.  *See Kmart Corp.*, 381 F. 3d at 715-16 (noting that the creditor's failure to send the proof of claim until the day prior to the bar date, failure to follow up with the claims processing agency, and then, following the discovery of the untimeliness of the filing, failure to seek judicial relief for over a month shows a lack of diligence and a weak showing of good faith).

For the aforementioned reasons, BOE is unable to satisfy any of the *Pioneer* factors, in particular, the requisite excusable neglect, as necessary to support either: (i) the reconsideration of this Court's Expungement Order; or (ii) deeming the Disallowed Claim as timely filed.

**B.    Neither the BOE's Failure to Timely File a Response to the Claims Objection or Timely File the Motion to Reconsider the Expungement Order Justifies a Finding of the Excusable Neglect Necessary for Reconsideration or Relief.**

In support of its failure to respond to the Claims Objection and its prolonged delay in filing the instant Motion to Reconsider, BOE alleges that (1) its earliest knowledge of the Claims Objection and the Expungement Order was October 28, 2010, and (2) it engaged in ongoing negotiations with the Debtors related to the Disallowed Claim that "fell apart at the end of February, 2011."  Motion to Reconsider at ¶28.

1.    The "Excusable Neglect" Standard for Reconsideration of the
        Expungement Order

"The Bankruptcy Court's discretion in deciding whether to reconsider a claim is virtually

plenary, as the court may decline to reconsider **without a hearing or notice to the parties**

**involved**." *In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 661 (D. Del. 2007) (citing *In re*

*Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987)) (emphasis added).  As demonstrated in this brief

and the supporting affidavits, this Court would be justified in exercising its discretion to decline

reconsider the Expungement Order.

A bankruptcy court may reconsider an order disallowing a claim for "cause" and

according to the equities of the case.  *Sterling Rubber, supra,* 316 B.R. at 490.   The term "cause"

is not defined in either the Bankruptcy Code or Bankruptcy Rules.  *Rayborn*, *supra*, 307 B.R. at

720.  However, a number of courts have held that a court should follow the guidelines set forth in

the Federal Rules of Civil Procedure governing motions for relief from judgment in instances

where a motion to reconsider is filed outside the time period applicable to motions to alter or

amend a judgment. *Matter of Aguilar*, 861 F.2d 873 (5th Cir. 1988); *In re Pride Companies,*

*L.P.*, 285 B.R. 366 (Bankr. N.D. Tex. 2002).

Here, the Motion to Reconsider was filed more than thirteen months after entry of the

Expungement Order.  Accordingly, in deciding whether "cause" exists to grant BOE's Motion to

Reconsider, the Court should follow the grounds for relief articulated in Fed. R. Civ. P. 60(b)

which provide:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.
> On motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have
> been discovered in time to move for a new trial under Rule 59(b);

{JA634474;1}                                          21

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

BOE's Motion to Reconsider the Expungement Order is based entirely on Rule 60(b)(1)'s "excusable neglect" as none of the remaining grounds are applicable.

**2.      BOE  had Actual Knowledge of the Debtors' Claims Objection Prior to Response Deadline.**

BOE's first allegation is materially false as a mountain of evidence conclusively shows that BOE had actual knowledge of both the Claims Objection and the Expungement Order several months prior to October 28, 2010.  First, BOE had actual knowledge of the Claims Objection in advance of the Response Deadline and Objection Hearing.  Specifically, on March 9, 2009, nine days prior to the Response Deadline and sixteen days prior to the Objection Hearing, BOE was informed of the pending Claims Objection through e-mail correspondence from the Debtors' counsel.  *See* Larsen Affidavit at ¶ 8 and Exhibit A thereto.   BOE was again informed of the pending Claims Objection on March 11, 2009, seven days prior to the Response Deadline and fourteen days prior to the Objection Hearing, through direct face to face communications in Sacramento, California between Mr. Larsen and the BOE Representatives. *See* Larsen Affidavit at ¶ 9.

Despite having received actual knowledge of the Claims Objection on at least two separate occasions in advance of both the Response Deadline and the Objection Hearing, BOE failed to: (i) investigate the Response Deadline; (ii) timely file a response prior to the Response Deadline; (iii) seek an extension of the Response Deadline; or (iv) appear at the Objection

Hearing.  BOE could have and should have sought an extension to respond to the pending

Claims Objection.  At a minimum, upon learning of the Claims Objection, BOE could have and

should have further investigated the Claims Objection to ascertain the Response Deadline and

the date of the Objection Hearing.

Second, BOE had actual knowledge of the Expungement Order in August, 2010 at the

latest, eight months prior to filing the Motion to Reconsider.  On August 19, 2010, the Debtors'

counsel sent BOE's representative an e-mail correspondence wherein it expressly advised BOE

that the Disallowed Claim was expunged by stating the following:

> On May 26, 2010, we had sent you documentation to support
> Circuit City's bad debt sales tax credits claimed on Circuit City's
> Q4 2008 sales tax return. Since that time, we learned from Circuit
> City's bankruptcy counsel that, **on March 31, 2010, the
> Bankruptcy Court granted Circuit City's objection to the
> bankruptcy claim related to these credits.  Thus, the
> bankruptcy court disallowed the claim in its entirety. Based on
> this ruling, it is our understanding that there is no longer a
> pending audit assessment with regards to these credits.**  The
> auditor (Zoila Saquicela) who was reviewing these credits wanted
> to close out the reaudit and wanted to know if we had reached a
> resolution with the Sacramento office with regards to the credits.
> We wanted to confirm with you before responding to the auditor
> that it is our understanding that the assessment related to these
> claims has been removed based on the bankruptcy court's actions.

*See* Carantzas Affidavit at ¶ 12 and Exhibit A thereto (emphasis added).

On August 31, 2010, BOE acknowledged receiving notice of the expungement of the

Disallowed Claim by sending e-mail correspondence to the Debtors advising the Debtors that

BOE would allow 100% of the Deduction previously sought by the Debtors, presumably on the

basis of the Expungement Order.  Thereafter, on October 11, 2010, the Debtors sent a copy of

the Expungement Order to BOE by e-mail correspondence.  *See* Carantzas Affidavit at ¶ 16 and

Exhibit C thereto.  BOE acknowledged receipt of the Expungement Order that same day by a

response e-mail that advised the Debtors that BOE would attach the Expungement Order to the reaudit report for further review.  *Id.* and Exhibit D thereto.

Again, despite having received actual knowledge of the Expungement Order prior to the confirmation of the Debtors' Plan, BOE failed to timely move to reconsider the Expungement Order.  Instead, BOE delayed filing the Motion to Reconsider for a period in excess of six months.  During this delay, the Debtors' confirmed their Plan, the Plan became effective, the deadline to object to administrative claims passed, and the Trust began making distributions under the Plan to various creditors.  BOE could have and should have filed the Motion to Reconsider in advance of confirmation of the Debtors' Plan, or at the very least prior to November 1, 2010, the effective date of the Debtors' Plan.

      **3.**      **Settlement communications with Debtors do not justify BOE's protracted inaction in moving to reconsider the Expungement Order.**

BOE argues that it delayed filing the Motion to Reconsider from October 28, 2010 until May 3, 2011, over a six month delay, because it was engaged in settlement communications with the Trust that included the Disallowed Claim.  Motion to Reconsider at ¶28.  Again, BOE's argument fails to provide a satisfactory explanation for BOE's prolonged delay in seeking to reconsider the Expungement Order.  First, BOE had actual knowledge of the Expungement Order as early as August 19, 2010, three months prior to the settlement communications referenced by BOE.  Thus, BOE could have and should have sought reconsideration of the Expungment Order at that time.

Second, the Debtors and the Trust never agreed to (or even discussed) the allowance of the Disallowed Claim in any settlement communication with the BOE.  On the contrary, in every settlement communication between the parties, the Debtors and the Trust took the unwavering

position that the Disallowed Claim had no settlement value as it was properly expunged as a late filed claim pursuant to the Expungement Order.  Gillis Affidavit at ¶ 10, Larsen Affidavit at ¶ 12.  Moreover, the only global monetary settlement offer ever communicated to BOE by the Trust did not include an allocation as to any of the BOE Claims, and was not communicated to BOE until April, 2011, a year after the entry of the Expungement Order.

Third, even if BOE's reliance on settlement communications with Trust was justifiable, it fails to account for BOE's prolonged delay in filing the Motion to Reconsider.  Specifically, by BOE's own account, any settlement communications relied upon by BOE broke down in February, 2011, more than two months prior to BOE's filing of the Motion to Reconsider.  *See* Motion to Reconsider at ¶28.  BOE fails to provide any justification for delaying filing the Motion to Reconsider by at least two additional months once the settlement discussions BOE allegedly relied upon broke down.  No excuse is given because no excuse exists.

Fourth, reliance on settlement communications with the Debtors and the Trust does not excuse BOE's failure to: (i) timely file the Disallowed Claim; (ii) timely move to deem the Disallowed Claim as timely; or (iii) timely move to reconsider Expungement Order.  The Debtors and the Trust had no legal duty to advise the BOE as to filing deadlines or any other matter with respect to the allowance of the Disallowed Claim.  In this way, BOE's argument is similar to the argument this Court rejected in *Circuit City (EDC contested matter),* p. 7 at Fn. 7 (citing to *In re Jackson*, 98 B.R. 738, 741 (Bankr. D. Md. 1986)) (stating that debtor's counsel is under no duty to respond to creditor inquiries regarding filing deadlines), and *In re First Software Corp.*, 97 B.R. 711, 719 (Bankr. D. Mass. 1988) (affirming the bankruptcy court's rejection of claimant's motion to extend time for filing and stating that debtor's counsel was under no duty to make the claimant aware of the filing deadline).  Even if such a duty existed,

the Debtors more than satisfied such duty by repeatedly informing BOE of the lateness of the

Disallowed Claim more than thirteen months prior to BOE's filing of the Motion to Reconsider.

*See* Larsen Affidavit at ¶¶ 8-9.  In fact, like counsel in the EDC contested matter in these

bankruptcy cases, counsel for Circuit City was very helpful and informative in its

communications with counsel for BOE.  *See Circuit City*, *Id.*  Thus, BOE could have and should

have moved to deem the Disallowed Claim as timely well in advance of the settlement

communications it now uses to excuse its protracted inaction.  As a result of the BOE's failure to

demonstrate the requisite excusable neglect, the Motion should be denied in its entirety.

### C.    **BOE's Requested Relief is Barred by Laches**

BOE's request to reconsider the Expungement Order and deem the Disallowed Claim

timely is barred by the doctrine of laches.  Laches may be asserted where there is a lack of

diligence by the party against whom the defense is asserted and the lack of diligence prejudices

the party asserting the defense.  *Costello v. U.S.*, 365 U.S. 265, 282 (1961).  The defense of

laches has been held to bar late proofs of claim where the creditor fails to pursue its rights in a

timely manner, resulting in prejudice to the debtor.  *See In re Drexel Burnham Lambert Group,

Inc.*, 157 B.R. 532, 538-39 (Bankr. S.D. N.Y. 1993) (laches barred late proof of claim where

creditor waited 19 months after it had notice of bankruptcy to move to present late claim); *In re

Barsky*, 85 B.R. 550, 555 (C.D. Cal. 1988), aff'd, 933 F.2d 1013 (9th Cir. 1991) (laches barred

late proof of claim where creditor waited more than two years after plan confirmation to file

proof of claim).  *See also, French v. Long*, 42 F.2d 45, 47 (4th Cir. 1930) (denying motion to

reconsider filed more than three years after liquidation of claim on account of laches).

Here, BOE's lack of diligence in prosecuting the Disallowed Claim is profound.  BOE

had notice that the Disallowed Claim was filed after the expiration of the Bar Date as early as

May 15, 2009, the date it was stamped and docketed by KCC.  Despite knowledge that the Disallowed Claim was not timely filed, BOE failed to take any action to obtain Court authority to deem the Disallowed Claim as timely filed.  BOE's lack of diligence is evidenced by BOE's epic delay in filing the Motion to Reconsider having now done so: (i) almost two years after the Bar Date; (ii) more than thirteen months after receiving actual notice of the Claims Objection; (iii) more than thirteen months after entry of the Expungement Order; and (iv) more than seven months after confirmation of Debtors' Plan.  BOE's lack of diligence is highlighted by the fact that BOE had actual notice of the Debtors' Claims Objection before the Response Deadline and the Objection Hearing, yet it took no action to respond to the Claims Objection.

The Trust's ability to dispute BOE's Disallowed Claim on the merits has been prejudiced by BOE's unwarranted delay because the passage of time will make it difficult and potentially cost prohibitive for the Trust to obtain the documentary evidence required to challenge the Disallowed Claim.  Specifically, the Trust's substantive defenses to the Disallowed Claim include defending the BOE's Assessment related to the Deductions taken by the Debtors that date back to April, 2005. While the Debtors and the Trust have provided extensive support to the BOE with regard to the Deductions, substantiation of the Deductions in an evidentiary proceeding could require the production of additional data and other electronic information from a third party finance company transacting business with the Debtors.  Finance companies typically do not retain the transactional data the Trust may require to fully defend the Disallowed Claim beyond three or four years.  Further, even if the Trust could locate the entire universe of documents necessary to fully evidence the Trust's defenses, it is probable that the lengthy passage of time may impact the Trust's ability to locate witnesses that could be needed to properly reconcile the transactions making up the Deductions.  Thus, it is axiomatic that BOE's

delay in seeking to deem the Disallowed Claim timely could prejudice the Trust's ability to

dispute the Disallowed Claim on the merits.  Accordingly, the relief sought in BOE's Motion to

Reconsider should be denied  on the basis of laches.

      **D.**      **BOE's Disallowed Claim is Meritless.**

Even if the BOE was entitled to pursue the Disallowed Claim, such an exercise would be

futile because the Disallowed Claim is substantively without merit.  Specifically, on January 10,

2009, after consulting with its tax counsel (Akerman Senterfitt), Circuit City Stores West Coast,

Inc. took sales tax deductions on line 10a1 of its Q4 2008 State, Local, and District Sales and

Use Tax Return on line for bad debt losses on taxable sales for the period of April 1, 2005

through October 31, 2008 (the Deductions defined earlier).  Affidavits of Jeff McDonald and Jeff

Knopke at ¶4.

On April 24, 2009, the BOE sent Circuit City Stores West Coast, Inc. a letter enclosing

its Report of Field Audit and Notice of Determination (the Assessment defined earlier).  The

notice indicated a tax liability owing by the Debtors in the amount of $2,811,230.23.  The tax

assessment consists of $2,537,420.57 relating to the Deductions, $240,779.66 relating to a sales

tax assessment for bad debts claimed relating to returned checks and fraud losses (the Bad

Check/Fraud Deductions defined earlier), and $33,030.00 relating to the tax exempt portion of

the audit based on the error factor from the prior audit.  In the Assessment, the auditor noted that

"due to the bar date, we are unable to grant the taxpayer additional time to document the bad

debts claims" and "the taxpayer does not agree with the audit findings."  *See* Affidavits of Jeff

McDonald at ¶ 8 and Jeff Knopke  at ¶ 8.

As shown by the detailed affidavits of Ms. Carantzas and Messrs. McDonald, Knopke,

Larsen, and Gillis, the Debtors completely cooperated with the BOE's requests in connection

with the audit both before and after the Assessment.  Then on August 31, 2010, Irvin Cooke,

BOE's supervising tax auditor, advised the Debtors through e-mail correspondence that BOE was

withdrawing its Assessment with regard to the Deductions, thus admitting that the Disallowed

Claim is meritless.    As a result, the BOE's Motion should be denied in its entirety.

## IV. CONCLUSION

The factual record in this case conclusively demonstrates that BOE failed to take action

on account of the Disallowed Claim every time action was demanded. as BOE failed to, *inter*

*alia*: (i) timely file the Disallowed Claim despite actual notice of the order for relief and the Bar

Date; (ii) timely move to deem the Disallowed Claim timely despite actual knowledge that the

Disallowed Claim was filed after the Bar Date; (iii) respond to the Debtors' Claims Objection

that sought to disallow the Disallowed Claim despite actual notice of the Claims Objection; and

(iv) timely move to reconsider the Expungement Order despite actual knowledge of its entry by

the Court.  BOE's indifference over the course of two years was neither justified nor excusable,

and on this ground alone, the Motion should be denied in its entirety.

In addition, the prejudice to the Trust arising from BOE's prolonged neglect would be

considerable as deeming the Disallowed Claim timely would: (i) increase the costs of

administering the Trust in order to reconcile prior distributions and setup a reserve for

Disallowed Claim, (ii) potentially expose the Trust to the additional allowance of already

expunged late filed claims; (iii) delay distributions on account of timely filed claims; and (iv)

prejudice the Trust's ability to defend the Disallowed Claim on the merits.

In any event, even if the Court would be otherwise inclined to grant the BOE's Motion to

Reconsider, the affidavits show the Disallowed Claim lacks merit, and would have been denied if

timely asserted anyway.

Accordingly, for all the reasons stated herein, the Trust respectfully requests that the

Court enter an Order: (i) denying the Motion to Reconsider in its entirety with prejudice; and (ii)

grant such further relief as this Court deems just and equitable.


Date: July 20, 2011                              By: _/s/ Lynn L. Tavenner_____
                                                 TAVENNER & BERAN, PLC
                                                 Lynn L. Tavenner (VA Bar No. 30083)
                                                 Paula S. Beran (VA Bar No. 34679)
                                                 20 North Eighth Street, 2nd Floor
                                                 Richmond, Virginia 23219
                                                      (804) 783-8300

                                                 - and -

                                                 PACHULSKI STANG ZIEHL & JONES LLP
                                                 Jeffrey N. Pomerantz, Esq.
                                                 Andrew W. Caine, Esq.
                                                 Jason S. Pomerantz, Esq.
                                                 10100 Santa Monica Boulevard
                                                 Los Angeles, California 90067-4100
                                                 (310) 277-6910

                                                 Counsel to the Circuit City
                                                 Stores, Inc. Liquidating Trust

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Liquidating Trust's Response in Opposition to the Motion of the State of California, State Board of Equalization to (i) Reconsider and Vacate Prior Order of the Court Expunging Claim Number 13049; and (ii) Deem Claim Number 13049 Timely Filed was served on July 20, 2011 via electronic delivery to all of the parties receiving ECF notice in this bankruptcy case and via first-class mail, postage prepaid, on the following:

William H. Schwarzschild, III, Esq.
R. Joseph Noble, Esq.
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA 23219

Todd E. Duffy, Esq.
Dennis J. Nolan, Esq.
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020-1182

*Attorneys for the State of California,*
*State Board of Equalization*

Robert B. VanArsdale, Esq.
701 E. Broad St., Suite 4304
Richmond, Virginia 23219

*Office of the U.S. Trustee*

*/s/ Lynn L. Tavenenr*
Lynn L. Tavenner (Va Bar No. 30083)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

IN RE:                              )
                                    )
CIRCUIT CITY STORES, INC., *et al.*,   )       Case No. 08-35653 (KRH)
                                    )       (Chapter 11)
                                    )       Jointly Administered
Debtors.                            )

## AFFIDAVIT OF JEFF MCDONALD IN SUPPORT OF LIQUIDATING TRUSTEE'S RESPONSE IN OPPOSITION TO STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION'S MOTION TO RECONSIDER

STATE OF VIRGINIA     )
                      ) ss:
COUNTY OF HENRICO     )

JEFF MCDONALD, being duly sworn, deposes and says:

1.  I am currently the Tax Manager for the Circuit City Stores, Inc. Liquidating Trust (the "Trust"), and in that capacity I have personal knowledge of the facts set forth in this Affidavit. Prior to my employ with the Trust, I was employed by Circuit City Stores, Inc. for more than twenty years (Circuit City Stores, Inc. and its related debtors in the above-reference cases are collectively referred to herein as the "Debtors"). Prior to the bankruptcy, I was vice-president of tax and supervised all tax functions of the Debtors.

2.  I make this Affidavit based on my personal knowledge and my review of the books, records, and documents prepared and maintained by the Debtors and the Trust in the ordinary course of their business. I have become familiar with the manner and method in which the Debtors and the Trust maintain their tax related books and records in their regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted. I certify that all of the exhibits attached to this Affidavit are

true and accurate copies of the original documents. I have personal knowledge that the facts stated in this Affidavit are true. I am authorized by the Trust to make this Affidavit.

3.      Based on my review of the bankruptcy court filings, I am aware that the State of California, State Board of Equalization (the "BOE") filed the following claims against the Debtors on or before May 11, 2009, the bar date for a governmental entity to file a proof of claim:

(a)      priority claim in the amount of $36,033.68 against Circuit City Purchasing Company, LLC (Claim No. 12002);

(b)      administrative claim in the amount of $325,605.29 against Circuit City Stores, Inc. (Claim No. 13186);

(c)      administrative claim in the amount of $2,525,699.69 against Circuit City Stores West Coast, Inc. (Claim No. 13187) (Claim Nos. 12002, 13186 and 13187 shall hereinafter be referred to as the "Timely Filed Claims").

4.      On May 15, 2009, BOE filed a priority claim four days after the bar date in the amount of $2,846,666.34 for unpaid tax liability against Circuit City West Coast, Inc. (the "Disallowed Claim"). A copy of the Disallowed Claim is attached as Exhibit A.

5.      During the period between November 1, 2008 and November 14, 2008, Scott Ash and Paula Rose of the Debtors' tax department, under my direction, provided the Debtors' special tax counsel, Pete Larsen of the law firm of Akerman Senterfitt, with data regarding the Debtors' historical sales and charge-offs so that counsel could prepare a spreadsheet calculating Circuit City Stores West Coast Inc.'s California sales tax deductions for bad debt losses on taxable sales for the period of April 1, 2005 through October 31, 2008 (the "Deductions"). Based on counsel's subsequent analysis, the Debtors claimed the Deductions on line 10a1 as

"Bad Debt Losses on Taxable Sales" of Circuit City Stores West Coast Inc.'s Q4 2008 State, Local and District Sales and Use Tax Return that was filed on or about January 10, 2009. A true and correct copy of the Q4 2008 return is attached as Exhibit B.

6.     During the first quarter of 2009, the Debtors were under a general sales and use tax audit by the BOE for the period of July 1, 2005 through November 9, 2008. The Debtors' tax team, under my supervision and led by Jeff Knopke, then the Sales Tax Supervisor of the Debtors, cooperated with the BOE auditors' request for data and documentation during the audit period, including substantiation for Deductions. The audit included the review of the Q4 2008 return and the Deductions in particular.

7.     After the conclusion of the formal audit, beginning in April, 2009, Jeff Knopke was the only employee of the Debtors that was authorized by me to speak to the BOE.

8.     On or about April 24, 2009, the BOE sent Circuit City Stores West Coast, Inc. a letter enclosing its Report of Field Audit and Notice of Determination (the "Assessment"). The notice indicated a tax liability owing by the Debtors in the amount of $2,811,230.23. The tax assessment consists of $2,537,420.57 relating to the Deductions, $240,779.66 relating to a sales tax assessment for bad debts claimed relating to returned checks and fraud losses ("Bad Check/Fraud Deductions"), and $33,030.00 relating to the tax exempt portion of the audit based on the error factor from the prior audit. In the Assessment, the auditor noted that "due to the bar date, we are unable to grant the taxpayer additional time to document the bad debts claims" and "the taxpayer does not agree with the audit findings." A true and correct copy of the April 24, 2009 letter form the BOE and the relevant portions of the Report of Field Audit and Notice of Determination are attached as Exhibit C.

9.     The underlying basis for the BOE's Disallowed Claim filed on May 15, 2009 is the same for the amounts assessed in the Assessment, plus an additional $12,908 that the BOE separately assessed the Debtors for hazardous substances tax for the period of January 1, 2008 through December 31, 2008.  Based on our limited research, I believe the $12,908 assessment is without merit.

10.    After the conclusion of the formal audit, the Debtors and the BOE continued to communicate regarding audit issues, particularly the Deductions and to a lesser extent, the Bad Check/Fraud Deductions.  During the course of the communications from April 2009 through February 2010, at my direction, Jeff Knopke communicated with the BOE auditor Zoila Saquicela regarding the Deductions and the Bad Check/Fraud Deductions.  During the course of those communications, on October 1, 2009, Mr. Knopke provided further explanation and a spreadsheet calculating the Deductions in response to a request for additional documentation, and explained to Ms. Saquicela that the Bad Check/Fraud Deductions that were  taken during the course of the audit related to returned checks and fraud losses and were validly deducted.

11.    On February 2, 2010, Jeff Knopke and Maria Carantzas of the Akerman firm had a telephone conference with BOE auditor Zoila Saquicela.  From that date forward, the Debtors relied on the Akerman firm to correspond with the BOE auditors with regards to the BOE claims and the Deductions in particular.

12.    I am not aware of and have not authorized any discussions by the Debtors concerning the prospect of consensual allowance of the Disallowed Claim or treatment of the Disallowed Claims as timely filed with anyone at the BOE.  I am not aware of and have not authorized any communication with the BOE to stay the time period in which the BOE would be

required to reconsider the Order Sustaining Debtors' Sixty-Eighth Omnibus Objection To Claims

(Disallowance Of Certain Late Claims).

**FURTHER AFFIANT SAYETH NAUGHT.**

Jeff McDonald
Tax Manager
Circuit City Liquidating Trust LLC
P.O. Box 5695
Glen Allen, VA  23058

Phone:  (804) 360-4135
Fax:  (804) 360-4289

STATE OF VIRGINIA  )
         ) ss:
COUNTY OF HENRICO  )

  The foregoing instrument was sworn to and subscribed before me this 28th day of June,
2011 by Jeff McDonald, who is:

  ☒  personally known to me; or

  ☐  produced a driver's license issued by the _____ Department of
Highway Safety and Motor Vehicles as identification; or

  ☐  produced the following identification: _____

NOTARY PUBLIC, STATE OF VIRGINIA

DEBORAH A. WILLIAMS
(Print, Type or Stamp Commissioned Name
of Notary Public)

FORM B10 (Official Form 10) (12/03)

**#13049**

| U. S. BANKRUPTCY COURT EASTERN DISTRICT OF VIRGINIA (RICHMOND) | **PROOF OF CLAIM** |
|---|---|

Name of Debtor
**CIRCUIT CITY STORES WEST COAST, INC.**

Case Number
**08-35654**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**STATE BOARD OF EQUALIZATION**

Name and address where notices should be sent:

**STATE BOARD OF EQUALIZATION
SPECIAL PROCEDURES SECTION, MIC:55
PO BOX 942879
SACRAMENTO CA  94279-0055**

Telephone: **(916) 445-1122**      FAX: **(916) 327-0615**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☒ Check box if the address differs from the address on the envelope sent to you by the court.

FILED

**RICHMOND DIVISION**

**MAY 1 5 2009**

**CLERK
U.S. BANKRUPTCY COURT**

FILED

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
**SR OHB 99-487429; EF EF 42-077383**

Check here
if this claim   ☐ replaces      a previously filed claim, dated:
                ☐ amends

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☒ Taxes
☐ Other (specify)

☐ Retiree benefits as defined in 11 U.S.C § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last four digits of SS #: _____
Unpaid compensation for services performed

from _____ to _____
        (date)          (date)

**2. Date(s) debt incurred:**
**(AS SHOWN ON DATA SUMMARY ATTACHMENT)**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**   $ _____   _____   **2,846,666.34**   **2,846,666.34**
                                                    (unsecured)    (secured)    (priority)       (Total)
☐ If all or part of your claim is secured or entitled to priority, also complete item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral:   $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any:   $ _____

**6. Unsecured Nonpriority Claim** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☒ Check this box if you have an unsecured priority claim

Amount entitled to priority $ **2,846,666.34**
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(3).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. 507(a)(7).
☒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(2).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**RECEIVED**

**MAY 2 0 2009**

**KURTZMAN CARSON CONSULTANTS**

Date
**APRIL 28, 2009**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **State Board of Equalization, by**

*[signature]*

**J. R. WILLIAMS, Authorized Representative**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

SH


☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


**EXHIBIT**
A


0835654090515000000000001

## DATA SUMMARY ATTACHMENT FOR PROOF OF CLAIM OF STATE BOARD OF EQUALIZATION

| Debtor CIRCUIT CITY STORES WEST COAST, INC. | Case Number 08-35654 | Claim Dated APRIL 28, 2009 |
|---|---|---|
| Account Number SR OHB 99-487429; EF EF 42-077383 | Petition Date 11/10/08 | Chapter 11 |

### SUMMARY OF LIABILITY STATEMENT

| CLAIM CLASS | TAX PROGRAM OR REASON | DEBT PERIOD | | TAX | INTEREST (calculated to petition or conversion date) | PENALTY | TOTAL |
|---|---|---|---|---|---|---|---|
| P | 1 | 7/1/05 | - 11/9/08 | 2,811,230.23 | 22,528.11 | | 2,833,758.34 |
| P | 2 | 1/1/08 | - 12/31/08 | 12,908.00 | | | 12,908.00 |
| | | | - | | | | |
| | | | - | | | | |
| | | | - | | | | |
| | | | - | | | | |
| | | | - | | | | |
| | | | - | | | | |
| | | | - | | | | |
| TOTALS | | | | 2,824,138.23 | 22,528.11 | | 2,846,666.34 |

LEGEND
CLAIM CLASS
S   - Secured
P   - Unsecured Priority -11 USC 607(a)(8)
G   - Unsecured NON priority (General)
GAP  - "Gap" Claim -- 11 USC 507(a)(2)
1305 - 11USC 1305

TAX PROGRAM OR REASON
1.   SALES AND USE TAX
2.   HAZARDOUS SUBSTANCES TAX
3.
4.
5.
6.

### SUMMARY OF TAX LIENS

| LIEN CERTIFICATE | DATE RECORDED | COUNTY OR RECORDING AUTHORITY | RECORDING INFORMATION (Document/Instrument #, or Book/Page) | AMOUNT |
|---|---|---|---|---|
| BE | | | | |

The foregoing liens were recorded pursuant to Section 6757 of the California Revenue and Taxation Code and to the extent there is any real or personal property to which the liens created by such recording attach, the amount of the claim in said certificates constitutes a secured claim.

### SUPPLEMENTAL CLAIM PURSUANT TO USC 11 § 726(a)(4) and (5)

In addition to the claim to which this page is attached, the Board of Equalization asserts the following supplemental Chapter 7 claim, pursuant to the noted code sections:

| | | |
|---|---|---|
| USC 11 § 726(a)(4) | $ | 0.00 |
| USC 11 § 726(a)(5) | | 0.00 |
| Total Supplemental Claim | $ | 0.00 |

BOE-401-A (FRONT) (EV. 162-08)

P O BOX 188268
SACRAMENTO, CA 95818-0268
(916) 227-6600

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

**STATE, LOCAL and DISTRICT SALES and USE TAX RETURN**

| BOARD USE ONLY | | |
|---|---|---|
| RA TT | LOC | REG |
| RA TIR | AACS | REF |
| EFF | | |

DUE ON OR BEFORE    FEB 2, 2009   FOR OCT THROUGH DEC 2008      2408

[ FOID 40363052     ]

YOUR ACCOUNT NO
SR Z OHB     99487429                   7

SC2    EFT
BOARD OF EQUALIZATION
P.O. BOX 942879
SACRAMENTO CA 94279-8041

680 S LEMON AVE, WALNUT, CA
CIRCUIT CITY STORES WEST COAST INC
9950 MAYLAND DR
RICHMOND                  VA 23233-1463

E-FILING INFORMATION AND RETURN INSTRUCTIONS (BOE-401-INST) ARE AVAILABLE AT WWW.BOE.CA.GOV OR BY CALLING 800-400-7115. E-FILING IS FASTER, EASIER, AND A SECURE WAY TO FILE YOUR RETURN.

BOE USE

| | | | |
|---|---|---|---|
| 1 | TOTAL (gross) SALES | 1 | $ 288,265,120.00 |
| 2 | PURCHASES SUBJECT TO USE TAX | 2 | 1,015,087.00 |
| 3 | TOTAL (add lines 1 and 2) | | 289,280,207.00 |
| | IF YOU HAVE DEDUCTIONS, FILL OUT LINES 4-11 ON THE BACK PAGE OF THIS RETURN. IF NO DEDUCTIONS, ENTER "0" ON LINE 11 AND PROCEED TO LINE 12. | | |
| 11 | TOTAL NONTAXABLE TRANSACTIONS REPORTED (enter total deductions from line 11 on the back) | 11 | 32,996,176.00 |
| 12 | TRANSACTIONS SUBJECT TO STATE TAX (subtract line 11 from line 3) | 12 | 256,284,031.00 |
| 12 a | IF YOU ARE REQUIRED TO COMPLETE BOE-531-T, SCHEDULE T, enter amount from line 12 column C | 12a | .00 |
| 13 | STATE TAX 6% (multiply line 12 by .06 OR enter line 13 column D from BOE-531-T, Schedule T) | | 15,377,042.00 |
| 14 a | TRANSACTIONS SUBJECT TO COUNTY TAX (add amount in box 61 (back) and line 12 above) | | 256,284,031.00 |
| b | COUNTY TAX 1/4% (multiply line 14a by .0025) | | 640,710.00 |
| 15 | LOCAL TAX ADJUSTMENTS FOR AIRCRAFT COMMON CARRIERS ONLY (see line 15 instructions) | 15 | .00 |
| 16 | TRANSACTIONS SUBJECT TO LOCAL TAX (add or subtract line 15 to/from line 14a) | | 256,284,031.00 |
| 17 | COMBINED STATE AND LOCAL TAX 1% (multiply line 16 by .01) (additional schedules may apply - see line 17 instructions) | | 2,562,844.00 |
| 18 | DISTRICT TAX (from Schedule A1, TOTAL DISTRICT TAX) YOU MUST COMPLETE BOE-531-A1, SCHEDULE A1, if you are engaged in business in a transactions and use tax district | 18 | 1,878,775.00 |
| 19 | TOTAL STATE, COUNTY, LOCAL AND DISTRICT TAX (add lines 13, 14b, 17, and 18) | 19 | 20,459,371.00 |
| 20 | SALES OR USE TAX PAID TO OTHER STATES (Enter the amount of tax paid for merchandise purchased out of state for use in California. The purchase price must be included in line 2 above.) | 20 | .00 |
| 21 | NET TAX (subtract line 20 from line 19) | | 20,459,371.00 |
| 22 | LESS TAX PREPAYMENTS   1st prepayment (Tax only) $ 2,318,567.00 + 2nd prepayment (Tax only) $ 6,073,085.00 = Total Prepayment | 22 | 8,391,652.00 |
| 23 | REMAINING TAX (subtract line 22 from line 21) | | 12,067,719.00 |
| 24 | PENALTY OF 10% (.10) is due if your tax payment is made, or your return is filed after the due date shown above (see line 24 instructions) | PENALTY 24 | .00 |
| 25 | INTEREST: One month's interest is due on tax for each month or fraction of a month that payment is delayed after the due date. The adjusted monthly interest rate is 0.667% | INTEREST 25 | .00 |
| 26 | TOTAL AMOUNT DUE AND PAYABLE (add lines 23, 24, and 25) | 26 | $ 12,067,719.00 |

IF YOU ARE NOT AN EFT FILER AND PAID BY CREDIT CARD AS DESCRIBED ON PAGE 1 OF THE INSTRUCTIONS, CHECK HERE [   ]

I hereby certify that this return, including any accompanying schedules and statements, has been examined by me and to the best of my knowledge and belief is a true, correct and complete return

YOUR SIGNATURE AND TITLE         TAX MANAGER

TELEPHONE NUMBER
( 804 )486-4000

DATE
01/10/2009

PRINT NAME AND TITLE

SC2

PAID PREPARER'S USE ONLY    PAID PREPARERS NAME

PREPARERS TELEPHONE NUMBER
(     )

EFT

**EXHIBIT**
**B**

ill records    PRE   4,576,338
POST 15,883,033

BOE SAC 2.000

1

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

BOE-401-A-BOOK(REV. 302 (6-05))

## STATE, LOCAL and DISTRICT SALES and USE TAX RETURN

| YOUR ACCOUNT NO. | REPORTING PERIOD |
|---|---|
| SR Z OHB   99487429 | FEB 2, 2009  FOR OCT THROUGH DEC 2008 |

### SECTION A. Full Deductions/Exemptions Schedule

| | BOE USE | |
|---|---|---|
| 4  SALES TO OTHER RETAILERS FOR PURPOSES OF RESALE | 50 | $ 1,196,207 00 |
| 5  NONTAXABLE SALES OF FOOD PRODUCTS | 51 | 00 |
| 6  NONTAXABLE LABOR (repair and installation) | 52 | 00 |
| 7  SALES TO THE UNITED STATES GOVERNMENT | 53 | 00 |
| 8  SALES IN INTERSTATE OR FOREIGN COMMERCE | 54 | 00 |
| 9  SALES TAX (if any) INCLUDED ON LINE 1 ON THE FRONT OF THE RETURN | 55 | 00 |
| 10 a 1 BAD DEBT LOSSES ON TAXABLE SALES | 56 | 31,799,969 00 |
| 2 BAD DEBT LENDER LOSSES | 62 | 00 |
| b  COST OF TAX-PAID PURCHASES RESOLD PRIOR TO USE | 57 | 00 |
| c  RETURNED TAXABLE MERCHANDISE | 58 | 00 |
| d  CASH DISCOUNTS ON TAXABLE SALES | 59 | 00 |
| TOTAL FULL DEDUCTIONS/EXEMPTIONS (add lines 4 thru 10d) | | $ 32,996,176 00 |

### SECTION B. Partial Deductions/Exemptions Schedule

10  e  IF YOU ARE REPORTING ANY TRANSACTIONS THAT OCCURRED PRIOR TO 7-1-04, YOU MUST COMPLETE THE PARTIAL STATE TAX EXEMPTION WORKSHEET, PAGE 3 OF BOE-531-T, SCHEDULE T, BEFORE YOU CLAIM ANY OF THESE DEDUCTIONS.

| | | |
|---|---|---|
| 1 AMOUNT SUBJECT TO THE MANUFACTURER'S EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e1 (discontinued 12-31-03). | 63 | $ 00 |
| 2 AMOUNT SUBJECT TO THE TELEPRODUCTION EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e2 | 64 | 00 |
| 3 AMOUNT SUBJECT TO FARM EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e3 | 65 | 00 |
| 4 AMOUNT SUBJECT TO THE DIESEL FUEL USED IN FARMING AND FOOD PROCESSING EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e4 | 66 | 00 |
| 5 AMOUNT SUBJECT TO THE TIMBER HARVESTING EQUIPMENT AND MACHINERY EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e5 | 67 | 00 |
| 6 AMOUNT SUBJECT TO THE RACEHORSE BREEDING STOCK EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e6 | 68 | 00 |
| TOTAL PARTIAL STATE TAX EXEMPTIONS - If you are required to complete the Tax Adjustment and Partial State Tax Exemption Worksheet (BOE-531-T, Schedule T), enter the amount from page 3, column D, box 60. If you are not required to complete the Worksheet, enter the sum of boxes 10e1 through 6 | 60 | 00 |
| STATE TAX EXEMPTION FACTOR - Only for use if Partial State Tax Exemption Worksheet is NOT required | | 8750 |
| TOTAL ADJUSTED PARTIAL DEDUCTIONS/EXEMPTIONS - If you completed Schedule T, enter the amount from page 1, column D, box 61. If you did not complete Schedule T, multiply the amount in box 60 by the State Tax Exemption Factor shown above and enter the result in box 61 | 61 | 00 |

### SECTION C. Other Full Deductions/Exemptions Schedule

| | | |
|---|---|---|
| 10 f OTHER (clearly explain) | 90 | $ 00 |
| 11 TOTAL NONTAXABLE TRANSACTIONS (Add amounts for Sections A, B and C, then enter here and on the front page, line 11) | | $ 32,996,176 00 |

BOE-401-A-2 (6-05)

2

BOE-531-A2 (S1) REV. 3 (10-08)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| DUE ON OR BEFORE | FEB 2, 2009 FOR OCT THROUGH DEC 2008 | 2408 | |
|---|---|---|---|
| FOID 40363052 | | SR Z OHB 99487429 | 7 |

| | | | $ | |
|---|---|---|---|---|
| A1 | Enter amount from line 16 on the front of your *Sales and Use Tax Return* | | $ | 256,284,031 00 |
| A2/A3 | ENTER sales delivered to any location not in a district tax area | 000 | − | 17,059,836 00 |
| A4 | SUBTRACT line A2/A3 from line A1 *(Allocate this amount to the correct district tax areas in column A5)* | | $ | 239,224,195 00 |

PLEASE READ THE INSTRUCTIONS ON PAGE 5 BEFORE COMPLETING THIS SCHEDULE

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| ALAMEDA CO. | 087 | 9,336,110.81 | | 9,336,110.81 | .016 | $ 140,042 00 |
| COLUSA CO. | | | | | | |
| City of Williams (Eff. 4-1-07) | 139 | 789.94 | | 789.94 | .005 | 4 00 |
| CONTRA COSTA CO. | 025 | 3,299,321.54 | | 3,299,321.54 | .01 | 32,993 00 |
| City of Richmond | 096 | 1,565,048.23 | | 1,565,048.23 | .015 | 23,476 00 |
| City of Pinole (Eff. 4-1-07) | 141 | 5,092.34 | | 5,092.34 | .015 | 76 00 |
| City of El Cerrito (Eff. 7-1-08) | 176 | 9,193.03 | | 9,193.03 | .015 | 138 00 |
| EL DORADO CO. | | | | | | |
| City of Placerville | 070 | 3,145.33 | | 3,145.33 | .0025 | 8 00 |
| City of So. Lake Tahoe | 097 | -25.03 | | -25.03 | .005 | 00 |
| FRESNO CO. | 099 | 5,099,213.84 | | 5,099,213.84 | .00725 | 36,969 00 |
| City of Clovis (Expired 9-30-08) | 100 | Discontinued | | | .01025 | 00 |
| City of Selma (Eff. 4-1-08) | 169 | 4,385.01 | | 4,385.01 | .01225 | 54 00 |
| City of Reedley (Eff. 7-1-08) | 177 | 8,169.56 | | 8,169.56 | .01225 | 100 00 |
| City of Sanger (Eff. 7-1-08) | 179 | 3,685.39 | | 3,685.39 | .01475 | 54 00 |
| HUMBOLDT CO. | | | | | | |
| City of Trinidad | 092 | | | | .01 | 00 |
| IMPERIAL CO. | 029 | 1,173.81 | | 1,173.81 | .005 | 6 00 |
| City of Calexico (Expired 3-31-06) | 046 | Discontinued | | | .01 | 00 |
| INYO CO. | 014 | 120.00 | | 120.00 | .005 | 1 00 |
| KERN COUNTY | | | | | | |
| City of Delano (Eff. 4-1-08) | 170 | 7,954.55 | | 7,954.55 | .01 | 80 00 |
| LAKE CO. | | | | | | |
| City of Clearlake | 058 | 34.97 | | 34.97 | .005 | 00 |
| City of Lakeport | 101 | 300.00 | | 300.00 | .005 | 2 00 |
| LOS ANGELES CO. | 036 | 70,921,750.15 | | 70,921,750.15 | .01 | 709,218 00 |
| City of Avalon | 078 | 869.94 | | 869.94 | .015 | 13 00 |
| City of Inglewood (Eff. 4-1-07) | 143 | 29,234.63 | | 29,234.63 | .015 | 439 00 |
| City of South Gate (Eff. 10-1-08) | 182 | 4,475.89 | | 4,475.89 | .02 | 90 00 |

| SUBTOTAL A11a *(Add amounts in column A10 on this page. Enter the total here and on line A11a below)* | $ | 943,763 00 |
|---|---|---|

*Continued on page 2*

| A11a | SUBTOTAL DISTRICT TAX *(Page 1, enter the total from line A11a above.)* | $ | 943,763 00 |
|---|---|---|---|
| A11b | SUBTOTAL DISTRICT TAX *(Page 2, enter the total from line A11b on page 2)* | | 318,515 00 |
| A11c | SUBTOTAL DISTRICT TAX *(Page 3, enter the total from line A11c on page 3)* | | 564,157 00 |
| A11d | SUBTOTAL DISTRICT TAX *(Page 4, enter the total from line A11d on page 4)* | | 52,340 00 |
| A11 | TOTAL DISTRICT TAX *(Add lines A11a, A11b, A11c and A11d. Enter here and on line 16 on the front of your Sales and Use Tax Return.)* | $ | 1,878,775 00 |

BOE-531-A2 (S1)

3

SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB    99487429 | FEB 2, 2009   FOR OCT THROUGH DEC 2009 |

| DISTRICT TAX AREAS | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|
| MADERA CO. (Eff. 4-1-07)        144 | 25,567.23 | | 25,567.23 | .005 | $        128 00 |
| MADERA CO. (Expired 9-30-05)    034 | Discontinued | | | .005 | 00 |
| MARIN CO.                       102 | 21,806.71 | | 21,806.71 | .005 | 109 00 |
| City of San Rafael              126 | 1,125,749.75 | | 1,125,749.75 | .01 | 11,258 00 |
| MARIPOSA CO.                    103 | 7,234.06 | | 7,234.06 | .005 | 36 00 |
| MENDOCINO CO. | | | | | |
| City of Willits                 084 | 3,194.97 | | 3,194.97 | .005 | 16 00 |
| City of Point Arena             085 | 269.94 | | 269.94 | .005 | 1 00 |
| City of Fort Bragg              094 | 360.00 | | 360.00 | .005 | 2 00 |
| City of Ukiah                   122 | 7,501.42 | | 7,501.42 | .005 | 38 00 |
| MERCED CO. | | | | | |
| City of Los Banos               104 | 4,348.65 | | 4,348.65 | .005 | 22 00 |
| City of Merced                  127 | 1,383,708.84 | | 1,383,708.84 | .005 | 6,919 00 |
| MONO CO. | | | | | |
| City of Mammoth Lakes (Eff. 10-1-08)  183 | | | | .005 | 00 |
| MONTEREY CO. | | | | | |
| City of Sand City               105 | 2,182,636.35 | | 2,182,636.35 | .005 | 10,913 00 |
| City of Salinas                 128 | 2,609,968.12 | | 2,609,968.12 | .005 | 13,050 00 |
| City of Del Rey Oaks (Eff. 4-1-07)  145 | | | | .01 | 00 |
| City of Seaside (Eff. 4-1-07)   180 | 1,902.55 | | 1,902.55 | .01 | 19 00 |
| City of Pacific Grove (Eff. 10-1-08)  184 | 3,288.61 | | 3,288.61 | .01 | 33 00 |
| NAPA CO.                        065 | 3,879.48 | | 3,879.48 | .005 | 19 00 |
| NEVADA CO.                      067 | 6,365.02 | | 6,365.02 | .00125 | 8 00 |
| Town of Truckee                 069 | -29.97 | | -29.97 | .00625 | 00 |
| City of Nevada City (Eff. 4-1-07)  147 | 91.05 | | 91.05 | .00625 | 1 00 |
| ORANGE CO.                      037 | 29,217,076.96 | | 29,217,076.96 | .005 | 146,085 00 |
| City of Laguna Beach (Eff. 7-1-06)  135 | 47,659.27 | | 47,659.27 | .01 | 477 00 |
| RIVERSIDE CO.                   026 | 15,402,147.60 | | 15,402,147.60 | .005 | 77,011 00 |
| SACRAMENTO CO.                  023 | 10,471,631.84 | | 10,471,631.84 | .005 | 52,358 00 |
| SAN BENITO CO. | | | | | |
| City of San Juan Bautista       106 | 1,235.00 | | 1,235.00 | .0075 | 9 00 |
| City of Hollister (Eff. 4-1-08) 171 | 331.88 | | 331.88 | .01 | 3 00 |

| SUBTOTAL A11b (Add amounts in column A10 on this page. Enter the total here and on line A11b on page 1 of Schedule A2.) | $        318,515 00 |
|---|---|

Continued on page 3

BOE-531-A2 (S3) REV. 3 (5-09)

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB      99487429 | FEB 2, 2009   FOR OCT THROUGH DEC 2008 |

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| SAN BERNARDINO CO. | 031 | 8,958,453.18 | | 8,958,453.18 | .005 | $    44,792 00 |
| City of Montclair | 108 | 2,298,036.42 | | 2,298,036.42 | .0075 | 17,235 00 |
| City of San Bernardino (Eff. 4-1-07) | 149 | 3,443,276.75 | | 3,443,276.75 | .0075 | 25,825 00 |
| SAN DIEGO CO. | 013 | 14,991,881.06 | | 14,991,881.06 | .005 | 74,959 00 |
| City of El Cajon | 110 | 41,005.45 | | 41,005.45 | .01 | 410 00 |
| City of National City (Eff. 10-1-06) | 137 | 3,314,966.28 | | 3,314,966.28 | .015 | 49,724 00 |
| City of Vista (Eff. 4-1-07) | 151 | 1,734,392.75 | | 1,734,392.75 | .01 | 17,344 00 |
| SAN FRANCISCO CO. | 052 | 3,271,495.40 | | 3,271,495.40 | .0125 | 40,894 00 |
| SAN JOAQUIN CO. | 038 | 30,875.87 | | 30,875.87 | .005 | 154 00 |
| City of Stockton | 112 | 2,631,434.90 | | 2,631,434.90 | .0075 | 19,736 00 |
| City of Manteca (Eff. 4-1-07) | 153 | 1,759,647.59 | | 1,759,647.59 | .01 | 17,596 00 |
| SAN LUIS OBISPO CO. | | | | | | |
| City of Arroyo Grande (Eff. 4-1-07) | 154 | 12,287.10 | | 12,287.10 | .005 | 61 00 |
| City of Grover Beach (Eff. 4-1-07) | 155 | 2,698.06 | | 2,698.06 | .005 | 13 00 |
| City of Morro Bay (Eff. 4-1-07) | 156 | 5,040.65 | | 5,040.65 | .005 | 25 00 |
| City of San Luis Obispo (Eff. 4-1-07) | 157 | 2,395,801.86 | | 2,395,801.86 | .005 | 11,979 00 |
| City of Pismo Beach (Eff. 10-1-08) | 185 | 13,577.03 | | 13,577.03 | .005 | 68 00 |
| SAN MATEO CO. | 019 | 7,150,011.50 | | 7,150,011.50 | .01 | 71,500 00 |
| SANTA BARBARA CO. | 030 | 4,104,158.56 | | 4,104,158.56 | .005 | 20,521 00 |
| SANTA CLARA CO. | 124 | 12,536,500.48 | | 12,536,500.48 | .01 | 125,365 00 |
| SANTA CLARA CO. (Expired 3-31-06) | 064 | Discontinued | | | .01 | 00 |
| SANTA CRUZ CO. | 062 | 3,392,527.87 | | 3,392,527.87 | .0075 | 25,444 00 |
| City of Capitola | 114 | 11,679.52 | | 11,679.52 | .01 | 117 00 |
| City of Scotts Valley | 130 | 10,254.59 | | 10,254.59 | .0125 | 128 00 |
| City of Santa Cruz (Eff. 4-1-07) | 159 | | | | .0125 | 00 |
| City of Santa Cruz (Expired 3-31-07) | 090 | Discontinued | | | .01 | .00 |
| City of Watsonville (Eff. 4-1-07) | 161 | 26,717.94 | | 26,717.94 | .01 | 267 00 |

SUBTOTAL A11c (Add amounts in column A10 on this page. Enter the total here and on line A11c on page 1 of Schedule A2.)    $   564,157 00

Continued on page 4

Page 3

6905CE 2.060

4

BOE-531-A2 (S4) REV 1 (10-06)

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB    99487429 | FEB 2, 2009    FOR OCT THROUGH DEC 2008 |

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| SOLANO CO. | 066 | 3,431,895.50 | | 3,431,895.50 | .00125 | $    4,290 00 |
| SONOMA CO. | 116 | 81,057.67 | | 81,057.67 | .005 | 405 00 |
| City of Sebastopol | 118 | 1,562.38 | | 1,562.38 | .0075 | 12 00 |
| City of Santa Rosa | 120 | 3,191,102.77 | | 3,191,102.77 | .0075 | 23,933 00 |
| STANISLAUS CO. | 059 | 5,271,214.36 | | 5,271,214.36 | .00125 | 6,589 00 |
| City of Ceres (Eff. 4-1-08) | 173 | 2,999.49 | | 2,999.49 | .00625 | 19 00 |
| TULARE CO. (Eff. 4-1-07) | 162 | 11,082.85 | | 11,082.85 | .005 | 55 00 |
| City of Visalia | 163 | 2,219,195.97 | | 2,219,195.97 | .0075 | 16,644 00 |
| City of Farmersville | 164 | 3,858.30 | | 3,858.30 | .01 | 39 00 |
| City of Dinuba | 165 | 3,260.82 | | 3,260.82 | .01 | 41 00 |
| City of Porterville | 166 | 11,982.06 | | 11,982.06 | .01 | 120 00 |
| City of Tulare | 167 | 8,243.27 | | 8,243.27 | .01 | 82 00 |
| TUOLUMNE CO. | | | | | | |
| City of Sonora | 093 | 1,966.45 | | 1,966.45 | .005 | 10 00 |
| YOLO CO. | | | | | | |
| City of West Sacramento | 081 | 11,180.90 | | 11,180.90 | .005 | 56 00 |
| City of Davis | 088 | 6,597.55 | | 6,597.55 | .005 | 33 00 |
| City of Woodland (Eff. 10-1-06) | 138 | 2,304.77 | | 2,304.77 | .005 | 12 00 |
| City of Woodland (Expired 6-30-06) | 075 | Discontinued | | | .005 | 00 |

| SUBTOTAL A11d (Add amounts in column A10 on this page. Enter the total here and on line A11d on page 1 of Schedule A2.) | $    52,340.00 |
|---|---|

BOE-531-F (FRONT) REV 6 (1-07)

SCHEDULE B - DETAILED ALLOCATION BY COUNTY OF 1% COMBINED STATE AND UNIFORM LOCAL USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

| DUE ON OR BEFORE | FEB 2, 2009 | FOR | OCT THROUGH DEC 2008 | 2408 |

[ FOID 40363052 ]          SR Z OHB  | YOUR ACCOUNT NO 99487429 | 7 |

CIRCUIT CITY STORES WEST COAST INC

PLEASE READ INSTRUCTIONS ON BACK BEFORE PREPARING THIS SCHEDULE.
Combined state and uniform local sales and use tax on retail sales of merchandise (not involving installation) made at your permanent place of business in California or combined state and local tax on property purchased ex-tax and used at the place of business should be entered on line B2 below the county schedule.

| A — COUNTY IN WHICH TAXABLE TRANSACTION OCCURRED | B — CODE | C — AMOUNT OF 1% COMBINED STATE AND LOCAL TAX | A — COUNTY IN WHICH TAXABLE TRANSACTION OCCURRED | B — CODE | C — AMOUNT OF 1% COMBINED STATE AND LOCAL TAX |
|---|---|---|---|---|---|
| ALAMEDA | 01 | .00 | PLACER | 31 | .00 |
| ALPINE | 02 | .00 | PLUMAS | 32 | .00 |
| AMADOR | 03 | .00 | RIVERSIDE | 33 | .00 |
| BUTTE | 04 | .00 | SACRAMENTO | 34 | .00 |
| CALAVERAS | 05 | .00 | SAN BENITO | 35 | .00 |
| COLUSA | 06 | .00 | SAN BERNARDINO | 36 | .00 |
| CONTRA COSTA | 07 | .00 | SAN DIEGO | 37 | .00 |
| DEL NORTE | 08 | .00 | SAN FRANCISCO | 38 | .00 |
| EL DORADO | 09 | .00 | SAN JOAQUIN | 39 | .00 |
| FRESNO | 10 | .00 | SAN LUIS OBISPO | 40 | .00 |
| GLENN | 11 | .00 | SAN MATEO | 41 | .00 |
| HUMBOLDT | 12 | .00 | SANTA BARBARA | 42 | .00 |
| IMPERIAL | 13 | .00 | SANTA CLARA | 43 | .00 |
| INYO | 14 | .00 | SANTA CRUZ | 44 | .00 |
| KERN | 15 | .00 | SHASTA | 45 | .00 |
| KINGS | 16 | .00 | SIERRA | 46 | .00 |
| LAKE | 17 | .00 | SISKIYOU | 47 | .00 |
| LASSEN | 18 | .00 | SOLANO | 48 | .00 |
| LOS ANGELES | 19 | .00 | SONOMA | 49 | .00 |
| MADERA | 20 | .00 | STANISLAUS | 50 | .00 |
| MARIN | 21 | .00 | SUTTER | 51 | .00 |
| MARIPOSA | 22 | .00 | TEHAMA | 52 | .00 |
| MENDOCINO | 23 | .00 | TRINITY | 53 | .00 |
| MERCED | 24 | .00 | TULARE | 54 | .00 |
| MODOC | 25 | .00 | TUOLUMNE | 55 | .00 |
| MONO | 26 | .00 | VENTURA | 56 | .00 |
| MONTEREY | 27 | .00 | YOLO | 57 | .00 |
| NAPA | 28 | .00 | YUBA | 58 | .00 |
| NEVADA | 29 | .00 | | | |
| ORANGE | 30 | .00 | | | |

B1. Total 1% combined state and local tax for all counties listed above . . . . . . . . . . . . . . . . . . . . . . . . . . B1 $ .00

B2. Total 1% combined state and local tax on sales made and merchandise consumed at your permanent place of business in California (Do not include any tax allocated to the above counties) . . . . . . . . . . . . . . B2 $ 2,562,844.00

BOARD USE ONLY Tax Area Code

B3. Total 1% combined state and local tax reported on Schedule F . . . . . . . . . . . . . . . . . . . . . . . . . . B3 $ .00

B4. Total 1% combined state and local tax reported on Schedule I . . . . . . . . . . . . . . . . . . . . . . . . . . B4 $ .00

B5. Total 1% combined state and local tax liability (add lines B1, B2, B3, and B4) This total tax must agree with line 17 on the return form . . B5 $ 2,562,844.00

BOE-531-F (1-09)

BOE-531 (FRONT) REV. 6 (4-08)

**SCHEDULE F - DETAILED ALLOCATION BY CITY**
**OF 1% COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

| DUE ON OR BEFORE | FOR | | 2408 |
|---|---|---|---|

[ FOID   40363052   ]

SR Z OHB    YOUR ACCOUNT NO. 99487429    7

SC2

680 S LEMON AVE, WALNUT, CA
CIRCUIT CITY STORES
CIRCUIT CITY STORES WEST COAST INC
9950 MAYLAND DR
RICHMOND                     VA 23233-1463

PLEASE READ INSTRUCTIONS ON REVERSE
BEFORE PREPARING THIS SCHEDULE

1. Using the listing of cities and tax area codes for Schedule F, BOE-531-F1, locate the tax area code for the city/unincorporated area for each location
2. Summarize the 1% combined state and local use tax due by tax area code
3. Enter the tax area code(s) and total 1% combined state and local use tax due for each city/unincorporated tax area code

| A | B | | A | B | | A | B |
|---|---|---|---|---|---|---|---|
| TAX AREA CODE (5 digits) | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) | | TAX AREA CODE (5 digits) | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) | | TAX AREA CODE (5 digits) | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) |
| | 00 | | | .00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | .00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | .00 | | | 00 |
| | 00 | | | .00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | .00 | | | 00 |
| | .00 | | | 00 | | | 00 |
| | .00 | | | 00 | | | .00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | 00 | | | 00 | | | 00 |
| | .00 | | | 00 | | F1 | 00 |

F1. Enter the total 1% combined state and local tax reported in Column(s) B above.
   a) If you are required to file a Schedule B, enter the amount from line F1 above on line B3 of Schedule B
   b) If you are required to file a Schedule E, enter the amount from line F1 above on line E3 of Schedule E
   c) If you are not required to file Schedule B or E, continue to lines F2 & F3

F2. Enter the 1% combined state and local tax reported on Schedule C, or 1% combined state and local tax on sales made and merchandise consumed at your permanent place of business in California

| BOARD USE ONLY Tax Area Code | | | | F2. | 2,562,844.00 |
|---|---|---|---|---|---|

F3. Total 1% combined state and local tax (add lines F1 and F2). This total must agree with line 10 on your Consumer Use Tax Return or line 17 on your Sales and Use Tax Return

F3. $    2,562,844.00

**BE SURE TO ENCLOSE THIS SCHEDULE WITH YOUR SALES AND USE TAX RETURN - MAKE A COPY FOR YOUR RECORDS.**

BOE-531 1.000

SCHEDULE C - DETAILED ALLOCATION BY
SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the
nearest whole dollar

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD ON | IN LIEU | |
| 5795 CHRISTIE AVE | EMERYVILLE | 0011 | 01002 | 087 | | * | 32,861.00 |
| 2480 WHIPPLE RD | HAYWARD | 0127 | 01003 | 087 | | * | 30,348.00 |
| 400 LONGFELLOW CT SUITE B | LIVERMORE | 0114 | 01004 | 087 | | * | .00 |
| 43706 CHRISTY ST | FREMONT | 0062 | 01009 | 080 | | * | 17,577.00 |
| 7153 AMADOR PLAZA ROAD | DUBLIN | 0007 | 01013 | 080 | | * | 13,180.00 |
| 2041 WHITMAN AVE | CHICO | 0075 | 04002 | 000 | | * | 28,838.00 |
| 2030 DIAMOND BLVD | CONCORD | 0006 | 07032 | 025 | | * | 19,464.00 |
| 4300 DELTA GATEWAY BL | PITTSBURG | 0113 | 07037 | 025 | | * | 13,075.00 |
| 4100 KLOSE WAY | RICHMOND | 0103 | 07038 | 025 | | * | 15,704.00 |
| 5355 N BLACKSTONE AVE | FRESNO | 0091 | 10060 | 072 | | * | 51,426.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B,
or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive
Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.00

| OWNER'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| CIRCUIT CITY STORES WEST COAST INC | | | | | | |
| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
| 99487429 | | SR Z | 23233-1463 | 2408 | 1 OF 10 | |

7

BOE-530 D (FRONT) REV 9 (6-96)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the nearest whole dollar

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD ON | IN LIEU | |
| 4230 CALIFORNIA AVE | BAKERSFIELD | 0041 | 15021 | 000 | | * | 46,757.00 |
| 401 N 1ST STREET | BURBANK | 0066 | 19007 | 036 | | * | 32,478.00 |
| 120 EAST COMPTON BLVD | COMPTON | 0039 | 19009 | 036 | | * | 10,643.00 |
| 5660 SEPULVEDA BLVD | CULVER CITY | 0080 | 19011 | 036 | | * | 41,510.00 |
| 14600 OCEANGATE AVE | HAWTHORNE | 0021 | 19016 | 036 | | * | 41,878.00 |
| 745 WEST HUNTINGTON DR | MONROVIA | 0144 | 19024 | 036 | | * | 18,341.00 |
| 2415 VIA CAMPO AVE | MONTEBELLO | 0042 | 19025 | 036 | | * | 46,670.00 |
| 2735 S TOWNE AVE | POMONA | 0074 | 19028 | 036 | | * | 17,424.00 |
| 1251 4th ST | SANTA MONICA | 0020 | 19033 | 036 | | * | 29,262.00 |
| 901 SPRING ST | SIGNAL HILL | 0134 | 19035 | 036 | | * | 19,794.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME

CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 2 OF 10 | |

BOE530A1-0001

8

Case 08-35653-KRH   Doc 11034   Filed 07/20/11   Entered 07/20/11 17:47:16   Desc
Main Document     Page 49 of 143

BOE-530 (FRONT) REV. 20 (4-99)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|
| 25415 CRENSHAW BLVD | TORRANCE | 0051 | 19038 036 | 28,609.00 |
| 2851 EASTLAND CENTER DRIVE | WEST COVINA | 0037 | 19040 036 | 32,647.00 |
| 4950 FACULTY DRIVE | LAKEWOOD | 0025 | 19042 036 | 30,903.00 |
| 4400 SUNSET BOULEVARD | LOS ANGELES | 0019 | 19050 036 | 38,656.00 |
| 6401 CONOGA AVE | WOODLAND HILLS | 0036 | 19050 036 | 30,252.00 |
| 13630 VICTORY BOULEVARD | VAN NUYS | 0038 | 19050 036 | 32,131.00 |
| 1839 S. LA CIENEGA BLVD | LOS ANGELES | 0045 | 19050 036 | 27,292.00 |
| 1145 GAYLEY AVE | LOS ANGELES | 0073 | 19050 036 | .00 |
| 19330 PLUMMER ST | NORTHRIDGE | 0108 | 19050 036 | 36,252.00 |
| TOTAL FOR THIS TAX CODE | | | | 164,583.00 |
| 2180 BELLFLOWER BLVD | LONG BEACH | 0085 | 19060 036 | 22,831.00 |
| 1600 S AZUSA AVE | CITY OF INDUSTRY | 0056 | 19062 036 | 17,119.00 |
| 680 SOUTH LEMON AVE | WALNUT | 0067 | 19062 036 | .00 |
| 505 SOUTH CHERYL LA | CITY OF INDUSTRY | 0122 | 19062 036 | 2.00 |
| TOTAL FOR THIS TAX CODE | | | | 17,121.00 |
| 11758 E FIRESTONE BLVD | NORWALK | 0044 | 19066 036 | 22,682.00 |
| 200 EAST BROADWAY ST | GLENDALE | 0092 | 19070 036 | 28,274.00 |
| 39331 10TH STREET WEST | PALMDALE | 0121 | 19094 036 | 39,236.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR 2 | 23233-1463 | 2408 | 3 OF 10 | |

BOE5KA-1 (00)

9

BOE-530-J (BACK) V. 20 (3-04)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | SUB | ADD ON | IN LIEU | |
| | | | | | | * | |
| 39 NORTH ROSEMEAD BLVD | PASADENA | 0023 | 19998 | 036 | | | 34,577.00 |
| 25610 N THE OLD RD | VALENCIA | 0104 | 19998 | 036 | | | 28,797.00 |
| | TOTAL FOR THIS TAX CODE | | | | | * | 63,374.00 |
| 330 BELLAM BLVD | SAN RAFAEL | 0009 | 21028 | 126 | | | 11,448.00 |
| | | | | | | * | |
| 3275 R STREET | MERCED | 0079 | 24025 | 127 | | | 14,146.00 |
| | | | | | | * | |
| 1910 North Davis Rd | Salinas | 0055 | 27045 | 128 | | | 26,263.00 |
| | | | | | | * | |
| 905 PLAYA AVE | SAND CITY | 0089 | 27072 | 000 | 0019 | | 21,961.00 |
| | | | | | | * | |
| 835 E BIRCH ST | BREA | 0145 | 30012 | 037 | | | 15,539.00 |
| | | | | | | * | |
| 123 ORANGE FAIR MALL | FULLERTON | 0082 | 30013 | 037 | | | 22,559.00 |
| | | | | | | * | |
| 7881 EDINGER AVE | HUNTINGTON BEACH | 0033 | 30014 | 037 | | | 41,623.00 |
| | | | | | | * | |
| 1020 W IMPERIAL HWY | LA HABRA | 0146 | 30016 | 037 | | | 20,551.00 |
| | | | | | | * | |

TOTAL - This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

| OWNER'S NAME CIRCUIT CITY STORES WEST COAST INC | | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER 99487429 | INDUSTRY | TAX CODE SR Z | ZIP CODE 23233-1463 | PERIOD 2408 | PAGE 4 OF 10   EFT |

BT0660A V 5 (3-04)

BOE-530 FRONT (S1) V. 26 (7-08)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

# SCHEDULE C - DETAILED ALLOCATION BY
# SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | AP | ADD ON | IN LIEU | |
| 1101 NEWPORT CENTER DR | NEWPORT BEACH | 0060 | 30017 | 037 | | * | 34,204.00 |
| 12325 Seal Beach Blvd | Seal Beach | 0138 | 30021 | 037 | | * | 19,449.00 |
| 8371 LA PALMA AVE | BUENA PARK | 0022 | 30023 | 037 | | * | 23,616.00 |
| 1407 W CHAPMAN AVE | ORANGE | 0024 | 30030 | 037 | | * | 19,230.00 |
| 13752 JAMBOREE RD | IRVINE | 0084 | 30036 | 037 | | * | 28,079.00 |
| 26542 TOWNE CENTRE DR | FOOTHILL RANCH | 0136 | 30037 | 037 | | * | 10,232.00 |
| 24001 EL TORO RD | LAGUNA HILLS | 0099 | 30038 | 037 | | * | 38,875.00 |
| 30491 AVENIDA DE LAS FLORES | RANCHO SANTA MARGARI | 0125 | 30043 | 037 | | * | 20,010.00 |
| 10271 FAIRWAY DR | ROSEVILLE | 0123 | 31015 | 000 | | * | 24,761.00 |
| 10255 MAGNOLIA AVE | RIVERSIDE | 0043 | 33050 | 026 | | * | 11,589.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE |
|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | EFT 5 OF 10 |

BOE530 F-000

11

BOE-530 (FRONT) REV 20 (3-00)

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED — COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE — COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 5 |
|---|---|---|---|---|---|---|---|
| | | | CO | DBR | AD'D ON | IN LIEU | |
| 72369 HIGHWAY 111 | PALM DESERT | 0101 | 33058 | 026 | | | 24,324.00 |
| | | | | | | * | |
| 78-825 HWY 111 | LA QUINTA | 0126 | 33060 | 026 | | | 21,033.00 |
| | | | | | | * | |
| 12530 DAY STREET | MORENO VALLEY | 0014 | 33061 | 026 | | | 27,399.00 |
| 37610 EUCALYPTUS AVE | MORENO VALLEY | 0148 | 33061 | 026 | | | 11,986.00 |
| | TOTAL FOR THIS TAX CODE * | | | | | | 39,385.00 |
| 40480 WINCHESTER RD | TEMECULA | 0105 | 33062 | 026 | | | 34,785.00 |
| | | | | | | * | |
| 24390 VILLAGE WALK PL | MURRIETA | 0140 | 33065 | 026 | | | 13,543.00 |
| 6397 PATS RANCH RD | MIRA LOMA | 0141 | 33998 | 026 | | | 9,668.00 |
| | | | | | | * | |
| 205 SERPA DR | FOLSOM | 0147 | 34003 | 023 | | | 24,822.00 |
| | | | | | | * | |
| 7980 ARCADIA BLVD | CITRUS HEIGHTS | 0016 | 34012 | 023 | | | 20,980.00 |
| | | | | | | * | |
| 8211 LAGUNA BLVD | ELK GROVE | 0015 | 34013 | 023 | | | 35,153.00 |
| | | | | | | * | |
| 2121 ARDEN WAY | SACRAMENTO | 0017 | 34998 | 023 | | | 24,415.00 |
| | | | | | | * | |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
### CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 6 OF 10 | EFT |

12

BOE 530 J NON I REV 70 (4-08)

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | AREA | ADD ON | IN LEU | |
| 16685 SIERRA LAKES PKWY | FONTANA | 0137 | 36009 | 031 | | | 18,408.00 |
| | | | | | | * | |
| 555 E HOSPITALITY LANE | SAN BERNARDINO | 0102 | 36060 | 031 | | | 34,982.00 |
| | | | | | | * | |
| 5150 NORTH PLAZA LANE | MONTCLAIR | 0034 | 36071 | 031 | | | 24,027.00 |
| | | | | | | * | |
| 12133 MALL BLVD | VICTORVILLE | 0053 | 36072 | 031 | | | 32,166.00 |
| | | | | | | * | |
| 12260 FOOTHILL BOULEVARD | RANCHO CUCAMONGA | 0070 | 36075 | 031 | | | 38,191.00 |
| | | | | | | * | |
| 1138 WEST VALLEY PARKWAY | ESCONDIDO | 0052 | 37004 | 013 | | | 16,180.00 |
| | | | | | | * | |
| 8820 GROSSMONT BLVD | LA MESA | 0048 | 37005 | 013 | | | 27,330.00 |
| | | | | | | * | |
| 1608 SWEETWATER RD | NATIONAL CITY | 0047 | 37006 | 013 | | | 34,369.00 |
| | | | | | | * | |
| 333 NORTH EL CAMINO REAL | ENCINITAS | 0078 | 37018 | 013 | | | 26,690.00 |
| | | | | | | * | |
| 3331 ROSECRANS STREET | SAN DIEGO | 0049 | 37060 | 013 | | | 22,765.00 |
| 3998 CLAIREMONT MESA BLVD | SAN DIEGO | 0050 | 37060 | 013 | | | 24,103.00 |
| 11710 CARMEL MOUNTAIN RD | SAN DIEGO | 0061 | 37060 | 013 | | | 31,271.00 |

TOTAL - This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME

CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | EFT 7 OF 10 | |

PU05FA 1.000

13

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the nearest whole dollar.

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD-ON | IN LIEU | |
| TOTAL FOR THIS TAX CODE * | | | | | | | 78,139.00 |
| 1715 HACIENDA DRIVE | VISTA | 0063 | 37095 | 013 | | | 17,773.00 |
| | | | | | | * | |
| 1200 VAN NESS AVE | SAN FRANCISCO | 0013 | 38001 | 052 | | | 30,777.00 |
| 840 MARKET STREET | SAN FRANCISCO | 0137 | 38001 | 052 | | | .00 |
| TOTAL FOR THIS TAX CODE * | | | | | | | 30,777.00 |
| 2210 DANIELS ST | MANTECA | 0132 | 39002 | 038 | | | 17,669.00 |
| | | | | | | * | |
| 4994 N CLAREMONT AVE | STOCKTON | 0012 | 39060 | 038 | | | 26,910.00 |
| | | | | | | * | |
| 1531 Froom Ranch Way | San Luis Obispo | 0135 | 40023 | 157 | | | 24,652.00 |
| | | | | | | * | |
| 303 GELLERT BLVD | DALY CITY | 0018 | 41015 | 019 | | | 34,565.00 |
| | | | | | | * | |
| 1880 S GRANT STREET | SAN MATEO | 0003 | 41021 | 019 | | | 25,173.00 |
| | | | | | | * | |
| 1731 E Bayshore Rd | E PALO ALTO | 0139 | 41030 | 019 | | | 13,577.00 |
| | | | | | | * | |
| 1535 SOUTH BRADLEY RD | SANTA MARIA | 0093 | 42002 | 030 | | | 13,529.00 |
| | | | | | | * | |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

| OWNER'S NAME | | | | | |
|---|---|---|---|---|---|
| CIRCUIT CITY STORES WEST COAST INC | | | | | |
| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE |
| 99487429 | | SR Z | 23233-1463 | 2408 | EFT 8 OF 10 |

14

## SCHEDULE C - DETAILED ALLOCATION BY SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | AREA | ADD-ON | IN LIEU | |
| 3761 STATE STREET | SANTA BARBARA | 0030 | 42060 | 030 | | | 27,510.00 |
| 1007 COCHRAN RD | MORGAN HILL | 0142 | 43004 | 124 | | * | 14,773.00 |
| 111 E EL CAMINO REAL | SUNNEYVALE | 0004 | 43007 | 064 | | * | 22,938.00 |
| 5353 ALMADEN EXPWY | SAN JOSE | 0001 | 43060 | 007 | | * | 29,218.00 |
| 4080 W STEVENS CREEK BLVD | SAN JOSE | 0002 | 43060 | 007 | | | 30,806.00 |
| 2217 QUIMBY RD | SAN JOSE | 0064 | 43060 | 007 | | | 27,246.00 |
| | TOTAL FOR THIS TAX CODE | | | | | * | 87,270.00 |
| 1664 COMMERCIAL WAY | SANTA CRUZ | 0090 | 44998 | 062 | | * | 34,393.00 |
| 1175 DANA DRIVE | REDDING | 0083 | 45060 | 000 | | * | 22,992.00 |
| 1560 GATEWAY BLVD | FAIRFIELD | 0065 | 48083 | 066 | | * | 14,375.00 |
| 130 NUT TREE PKWY | VACAVILLE | 0149 | 48086 | 066 | | * | 20,142.00 |
| 2805 SANTA ROSA AVE | SANTA ROSA | 0008 | 49060 | 130 | | * | 32,939.00 |
| 3401 DALE ROAD | MODESTO | 0010 | 50012 | 059 | | | 31,180.00 |

TOTAL. This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

**2,562,844.**

| OWNER'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| CIRCUIT CITY STORES WEST COAST INC | | | | | | |
| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | | PERIOD | PAGE |
| 99487429 | | SR Z | 23233-1463 | | 2408 | EFT 9 OF 10 |

15

BOE-530-A (FRONT) REV. 20 (1-06)

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the nearest whole dollar

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | ARE | ADD OR | IN LIEU | |
| 2821 COUNTRYSIDE DR | TURLOCK | 0133 | 50017 | 059 | | | 21,558.00 |
| 3930 S MOONEY BLVD | VISALIA | 0059 | 54056 | 163 | | | 22,748.00 |
| 421 W ESPLANADE DR | OXNARD | 0112 | 56013 | 000 | | | 30,812.00 |
| 600 WEST HILLCREST DR | THOUSAND OAKS | 0058 | 56017 | 000 | | | 14,374.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

OWNER'S NAME
2,562,844.

CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | | 10 OF 10 |

BOE530A (1-06)

16



TATE          IFORNIA
           )ARD OF EQUALIZATION

Ull____         G
485 LEXINGTON AVENUE, SUITE 400
NEW YORK, NY 10017
212-697-4680 • FAX 212-697-5146
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, Ontario/Sacramento

MICHELLE STEEL
Third District, Rolling Hills Estates

JUDY CHU, Ph.D.
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

April 24, 2009

Mr. Jeff Knopke
Circuit City Stores West Coast, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464

IN REPLY REFER TO.
SR-Y-OHB-99-487429

Dear Mr. Knopke:

We are enclosing a copy of the *Report of Field Audit* resulting from our audit of your firm's records and accounts for the permit number referenced above. In a recent discussion, you indicated that you disagree with our audit recommendations. Your contention(s), along with a summary of our recommendations, are included in the report under "Discussion of Audit Findings." If you do not understand any portion of the audit findings, you may contact this office for clarification. If you have not received a copy of the audit working papers, including narrative comments, you may request one from this office.

We are forwarding the audit report to our headquarters office for processing and issuance of a *Notice of Determination* (i.e., billing). If this process results in a material change to the report you will be informed prior to billing. When you receive the *Notice*, you can appeal by filing a *Petition for Redetermination*, if you still believe there is an error in the audit report. The *Notice* includes instructions on how to file a petition.

Interest will continue to accrue monthly on the amount of unpaid tax, and will be added to the current interest amount shown on the *Notice of Determination* "interest through" calculation date. Interest will stop accruing on any tax amounts paid. The payment of all or part of the tax liability shown on the *Notice* will in no way affect your right to protest portions with which you do not agree. If you would like to make a payment before receiving the *Notice*, please refer to the enclosed *Audit Payment Information* sheet and provide the requested information with your payment.

You have six (6) months from the date of payment to file a claim for refund on any disputed amounts. If we find that you are entitled to a refund, any overpayments of tax will be credited to outstanding liabilities on your account at the time the overpayment is approved. Any balance will be refunded with credit interest (on the overpaid tax only) at the rate established for refunds.

Please note, although we have applied commonly accepted auditing procedures during the course of your audit, the auditor may not have examined all of your transactions. There may still be transactions that you are not reporting correctly. If you have any questions as to the application of tax to a particular product or transaction, please contact your auditor in writing and he/she will provide you with a written response.

We appreciate your cooperation during the audit of your records.

Sincerely,

John M. Feeley
John M. Feeley
Area Administrator

Enclosures

Discussed with:

cc:

*When you have been unable to resolve a matter through the normal appeals process or for information on your rights, you may contact the Taxpayers' Rights Advocate Office toll-free at 888-324-2798.*

BOE-79-B REV. 24 (2-05)

**EXHIBIT**

C

6/24/09



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

### Audit Payment Form

**Account No: SR Y OHB 099-487429**

| | |
|---|---|
| Firm Name. | CIRCUIT CITY STORES |
| Owner: | **CIRCUIT CITY STORES WST CST** |
| Owner Type: | Corporation |
| Business Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT |
| | RICHMOND, VA 23233-1464 |
| Mailing Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT |
| | RICHMOND, VA 23233-1464 |

| Case Id: | **429103** |
|---|---|
| Lead Auditor: | **ZOILA R SAQUICELA** |
| Supervisor: | **GIULIO R DISALVO** |
| Board Office: | New York Office |
| Audit Report Date: | **March 31, 2009** |
| Business Code/SIC: | 31 |
| Account Status: | Closed-Out |
| Tax Area Code: | 5900099/0/000 |

**LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS**

| | Tax | Interest to 5/31/09 | Penalty | Total |
|---|---|---|---|---|
| Examination Period: 7/01/05 to 11/09/08 | | | | |
| Total Disclosed by Examination | 2,811,230.23 | 100,577.05 | | 2,911,807.28 |
| Balance as of 5/31/09 | $2,811,230.23 | $100,577.05 | $0.00 | $2,911,807.28 |

While this report is not a bill, payment is encouraged to prevent the accrual of additional interest.

Additional interest will accrue monthly on the unpaid Tax after 5/31/09.

## Total Amount as of 5/31/09 is $2,911,807.28

Payment Amount Included _____

Please Remit your Payment to:

State Board of Equalization
P.O. Box 942879
Sacramento, California
94279-0013

Please include this page with your payment and make your check or money order payable to:
State Board of Equalization.

Always write your account number ( **099-487429** ) on your check or money order.



4/24/09
Page: 1

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

| | | | | |
|---|---|---|---|---|
| Account No: | SR Y OHB 099-487429 | Case Id: | 429103 | A Local Tax Allocation was completed |
| Firm Name: | CIRCUIT CITY STORES | Lead Auditor: | **ZOILA R SAQUICELA** | A Legal Bankruptcy Case Exists |
| Owner: | **CIRCUIT CITY STORES WST CST** | Supervisor: | **GIULIO R DISALVO** | |
| Owner Type: | Corporation | Board Office: | New York Office | |
| Business Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Audit Report Date: | **March 31, 2009** | |
| | RICHMOND, VA 23233-1464 | Business Code/SIC: | 31 | |
| Mailing Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Account Status: | Closed-Out | |
| | RICHMOND, VA 23233-1464 | Tax Area Code: | 590998070000 | |

### LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| Examination Period: 7/01/05 to 11/09/08 | Tax | Interest to 5/31/09 | Penalty | Total |
|---|---|---|---|---|
| **Total Disclosed by Examination** | 2,811,230.23 | 100,577.05 | | 2,911,807.28 |
| **Balance as of 5/31/09**\*\* | \$2,811,230.23 | \$100,577.05 | \$0.00 | \$2,911,807.28 |

\*\*If multiple billings have occurred, the audit liability may not equal the sum of the billings.

### TAXABLE MEASURE DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| | | State, Local County and STTI | Total District |
|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 406,473 | 751,718 |
| 2 | Disallowed claimed bad debts – actual | 33,919,948 | 66,609,301 |
| | | \$34,326,421 | \$67,361,019 |

**Special Instructions**     Attn: 5/11/09 bar date



4/24/09
Page: 2

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:    SR Y OHB 099-487429
Case Id:      429103

### DETAILED ANALYSIS OF TAXABLE MEASURE BY JURISDICTION

| | | ACHC (District) | ACTI (District) | BARTA (District) | BARTC (District) | BARTS (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 15,775 | 15,775 | 15,775 | 10,384 | 5,260 |
| 2 | Disallowed claimed bad debts - actual | 1,316,432 | 1,316,432 | 1,316,432 | 866,689 | 438,754 |
| | | $1,332,207 | $1,332,207 | $1,332,207 | $877,073 | $444,014 |

| | | CCPS (District) | CCTA (District) | ECPS (District) | FCPL (District) | FCTA (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 8,954 | 10,384 | 34,851 | 8,954 | 8,954 |
| 2 | Disallowed claimed bad debts - actual | 747,190 | 866,689 | 2,908,397 | 747,190 | 747,190 |
| | | $756,144 | $877,073 | $2,943,248 | $756,144 | $756,144 |

| | | FCZA (District) | LACT (District) | LATC (District) | MRCD (District) | MTGR (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 8,954 | 112,589 | 112,589 | 1,284 | 24,608 |
| 2 | Disallowed claimed bad debts - actual | 747,190 | 9,395,556 | 9,395,556 | 133,952 | 2,053,513 |
| | | $756,144 | $9,508,145 | $9,508,145 | $135,236 | $2,078,121 |

| | | MTPS (District) | NCGT (District) | OCTA (District) | RCTC (District) | RFEL (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 2,787 | 23,192 | 42,411 | 24,582 | 2,541 |
| 2 | Disallowed claimed bad debts - actual | 442,739 | 2,900,036 | 3,539,139 | 2,051,276 | 264,922 |
| | | $445,526 | $2,923,228 | $3,581,550 | $2,075,858 | $267,463 |

| | | RMGT (District) | SAND (District) | SBAB (District) | SBER (District) | SBRN (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 10,384 | 5,545 | 8,230 | 24,608 | 12,864 |
| 2 | Disallowed claimed bad debts - actual | 866,689 | 462,735 | 686,640 | 2,053,513 | 2,043,562 |
| | | $877,073 | $468,280 | $694,870 | $2,078,121 | $2,056,426 |

| | | SCCT (District) | SCGF (District) | SCHT (District) | SCOS (District) | SCVT (District) |
|---|---|---|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 17,995 | 3,608 | 7,425 | 4,881 | 14,387 |
| 2 | Disallowed claimed bad debts - actual | 1,501,636 | 1,500 | 619,413 | 407,310 | 1,500,136 |
| | | $1,519,631 | $5,108 | $626,838 | $412,191 | $1,514,523 |

4/24/09
Page: 3



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:    SR Y OHB 099-407429
Case Id:    429103

### DETAILED ANALYSIS OF TAXABLE MEASURE BY JURISDICTION

| | SDTC (District) | SFPF (District) | SFTA (District) | SJTA (District) | SLNS (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 34,851 | 5,260 | 5,260 | 5,332 | 4,434 |
| 2 Disallowed claimed bad debts - actual | 2,908,397 | 438,754 | 438,754 | 444,894 | 462,273 |
| | $2,943,248 | $444,014 | $444,014 | $450,226 | $466,707 |

| | SLOG (District) | SLPL (District) | SHCT (District) | SNTA (District) | SNTA (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 688 | 4,100 | 10,383 | 10,383 | 4,881 |
| 2 Disallowed claimed bad debts - actual | 109,402 | 342,049 | 866,385 | 866,385 | 407,310 |
| | $110,090 | $346,149 | $876,768 | $876,768 | $412,191 |

| | SPFG (District) | SRPS (District) | STAT (District) | STCL (District) | SZPL (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 5,332 | 4,881 | 14,268 | 7,023 | 7,425 |
| 2 Disallowed claimed bad debts - actual | 444,894 | 407,310 | 1,190,759 | 585,867 | 619,413 |
| | $450,226 | $412,191 | $1,205,027 | $592,890 | $626,838 |

| | TAHC (District) | TCTA (District) | VPST (District) | VSTA (District) | Total District |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 3,178 | 1,816 | 3,474 | 18,219 | 751,718 |
| 2 Disallowed claimed bad debts - actual | 265,186 | 288,577 | 289,983 | 2,894,301 | 66,609,301 |
| | $268,364 | $290,393 | $293,457 | $2,912,520 | $67,361,019 |

4/26/09
Page: 4



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:  SR Y OHB 099-487429
Case Id:     429103

Reviewed By: _____
Date Reviewed: _____

Statute Date:

A Waiver is attached and the Waiver Period is: 07/01/05 to 06/30/08

First Expiring Period is: 07/01/05, and includes Tax of: $3,024.69

Auditors who worked on the examination:

| OFFICE | AUDITOR ID | CLASS | AUDIT MADE BY | HOURS |
|--------|-----------|-------|---------------|-------|
| OHB | 00000001778 | 3 | ZOILA R SAQUICELA | 124.00 |
| | | | Total Hours | 124.00 |

The Reported Measure during the period of examination is $4,266,722,286.

The Audit findings were discussed with: Tax Manager Jeff Knopke        Tel: (804) 486-2498

The taxpayer **does not agree** with the audit findings.

A copy of this Audit Report was furnished to the taxpayer along with a BOE-0079-B letter.

A credit is not involved but a claim for a refund was secured from the taxpayer and previously submitted to HQ.

A Tax Clearance is not required.

A Cigarette Indicia inspection revealed: None sold

The taxpayer is a Business with more than 50 Employees.

This business sells televisions, computers, or portable DVD players.

The directives provided to the taxpayer are: Pamphlets 17, 70 and 76 and Regulation 1642

## General Comments

**Type of Business Organization**
Corporation.  David McDomas - President, Michael Chalifoux - Vice President, Philip Dunn - Treasurer.  Prior audit through 12/31/04.  The taxpayer filed for bankruptcy on 11/10/08.  The bar date is 5/11/09.

**Class of Business**
Retailer of consumer electronics, computers, appliances, etc.

**Books and Records**
Double entry system that is adequate for sales and use tax purposes. Records regarding bad debts claimed on the returns were not available for verification.  Tax reimbursement is added to the selling price..

**Penalty**
None is recommended.  The taxpayer reported over $4 billion in taxable measure.  We do not believe that the additional taxable measure was the result of negligence.

**Claim for Refund**
The taxpayer filed a claim for refund for bad debts not written off for the period 4/1/05 to 6/30/08.  No dollar amount was stated in the claim.  Due to the short time allowed by the bar date, the taxpayer was not able to supply any documentation in support of their claim.  No refund is recommended.

The overpayment was not caused by carelessness.  Credit interest is recommended.

**Tax Error on Returns**
The $-2,682 tax error on the transcript for 2007 was due to a mathematical error on the





4/24/09
Page: 5

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:      SR Y OHB 099-487429
Case Id:         429103

**Tax Error on Returns (cont.)**
returns.  The taxpayer supplied a claim for refund.  The auditor recommends that the $-2,682 overpayment be applied against this audit.

**Related Accounts**
Circuit City Purchasing (100-463241) was audited through 11/9/08.

Circuit City Stores (17-692815) was last audited through 3/31/01.

**Discussion with Taxpayer**
The audit was discussed with Jeff Knopke, Tax Manager.

**Taxpayer's Position**
The taxpayer believes that the amounts claimed as bad debts were valid deductions representing bad debts written off for bad checks and credit cards.  He believes that the amounts claimed for 4/1/05 to 6/30/08 were actually understated.

**Auditor's Position**
The taxpayer has not provided documentation to support the $33,919,948 in bad debts that were claimed on the returns.  That includes the $31,778,646 that was claimed for 10/1/08 to 11/9/08.

He has also not supplied documenation in support of the claim refund (bad debts).

Due to the bar date, we are unabale to grant the taxpayer additional time to documentthe bad debts claimed.

**Supervisor Comments**
I agree with the auditor's recommendation to not add a penalty. - Giulio DiSalvo, STAII

I agree. - John M. Feeley, Area Administrator

**Franchise Tax Board**
Not applicable.

The fixed assets purchases made by their operational division without tax were not
accrued and reported with their returns but were reported under account #SC OHB 100-
463241, Circuit City Purchasing Co., LLC. This account was set up on 9/1/04 to keep
control of all the fixed assets purchases for all new stores. There were no errors noted.
The ex-tax fixed assets purchases made for all their existing stores were accrued and
reported on line 2 of tax returns. There were no errors noted. *Circuit City Purchasing Co., LLC
was audited by this auditor through 11/9/08.*

## EXPENSE PURCHASES

A cursory review of several expense accounts was made. All expense purchases
were made locally or the tax was accrued, and reported on returns.
Expense purchases made by the operational division for all new stores were reported
under account # SC OHB 100-463241. This account was also audited through 11/9/08,
*See above.*

## BAD DEBTS

Taxpayer claimed bad debt deductions throughout the audit period. Per discussion with
taxpayer the bad debts were related to sales made with bad credit cards and checks. Due
to the fact that taxpayer was busy with their fiscal year end reporting's, and bankruptcy,
taxpayer was not able to provide the back up work papers to support the offset bad debt
deductions with recoveries in computing bad debt reported during the audit. Auditor was
not able to verify the amounts for bad debts; therefore, the bad debt deductions were
disallowed. Schedule 12B lists all amounts disallowed in the audit. Taxpayer does not
agree with this area of the audit, and has indicated that he will file a petition for
redetermination.

## CLAIM FOR REFUND 2Q05 - 2Q08

Taxpayer filed a claim for refund on 7/28/08 in the amount of $unstated for the period
4/1/05 through 6/30/08. However, taxpayer was not able to provide the documentation to
support the claim, and has indicated that they no longer wish to pursue the claim.

## TAX ERRORS / ADDITIONAL TAX ADJUSTMENTS

A math error was noted on the 2Q07 return which resulted in an overpayment of $2,682.
Taxpayer has filed a claim for refund for this amount, and auditor is recommending the
amount be refunded to the taxpayer. This amount is being handled by the Audit
Determination and Refund Section (see exhibit 3).

## BROCHURES & PROMOTIONAL MATERIAL

Brochures & promotional material are distributed as inserts in newspapers. Tax is
accrued and reported on amounts consumed in their stores. No further verification was
done or deemed warranted.

## LOCAL TAXES

Tax collected were properly billed and allocated to the county where the property was
located. Additional liability included in the audit was also allocated to the county of use.

**TRANSIT TAXES**
Transit taxes were properly billed and reported to the county districts whenever it was applicable. The transit taxes were allocated on a % basis based on amounts reported through 9/30/08. The tax matrix was not use since the audit period was through the bankruptcy date of 11/9/08.

NOTE: Reviewer noted errors in the calculation of district tax percentages. As this is a Bankruptcy case Area Administrator wants the corrections to be made in the audit phase. See the attached go-back for corrections recommended by the reviewer. RW

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

IN RE:                              )
                                    )
CIRCUIT CITY STORES, INC., *et al.*,   )      **Case No. 08-35653 (KRH)**
                                    )      **(Chapter 11)**
                                    )      **Jointly Administered**
Debtors.                            )

**AFFIDAVIT OF JEFF KNOPKE IN SUPPORT OF LIQUIDATING TRUSTEE'S RESPONSE IN OPPOSITION TO STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION'S MOTION TO RECONSIDER**

STATE OF VIRGINIA      )
                       ) ss:
COUNTY OF HENRICO      )

JEFF KNOPKE, being duly sworn, deposes and says:

1.      I am currently a Tax Analyst for the Circuit City Stores, Inc. Liquidating Trust (the "Trust"), and in that capacity, I have personal knowledge of the facts set forth in this Affidavit. Prior to my employ with the Trust, I was employed by Circuit City Stores, Inc. (Circuit City Stores, Inc. and its related debtors in the above-referenced cases are collectively referred to herein as the "Debtors"). Prior to the bankruptcy, I was Sales Tax Supervisor of the Debtors.

2.      I make this Affidavit based on my personal knowledge and my review of the books, records, and documents prepared and maintained by the Debtors and the Trust in the ordinary course of their business. I have become familiar with the manner and method in which the Debtors and the Trust maintain their tax related books and records in their regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted. I certify that all of the exhibits attached to this Affidavit are

true and accurate copies of the original documents. I have personal knowledge that the facts stated in this Affidavit are true. I am authorized by the Trust to make this Affidavit.

3.      Based on my review of the bankruptcy court filings, I am aware that the State of California, State Board of Equalization (the "BOE") filed the following claims against the Debtors on or before May 11, 2009, the bar date for a governmental entity to file a proof of claim:

(a)      priority claim in the amount of $36,033.68 against Circuit City Purchasing Company, LLC (Claim No. 12002);

(b)      administrative claim in the amount of $325,605.29 against Circuit City Stores, Inc. (Claim No. 13186);

(c)      administrative claim in the amount of $2,525,699.69 against Circuit City Stores West Coast, Inc. (Claim No. 13187) (Claim Nos. 12002, 13186 and 13187 shall hereinafter be referred to as the "Timely Filed Claims").

4.      On May 15, 2009, BOE filed a priority claim four days after the bar date in the amount of $2,846,666.34 for unpaid tax liability against Circuit City West Coast, Inc. (the "Disallowed Claim"). A copy of the Disallowed Claim is attached as Exhibit A.

5.      During the period between November 1, 2008 and November 14, 2008, Scott Ash and Paula Rose of the Debtors' tax department provided to the Debtors' special tax counsel, Pete Larsen of the law firm of Akerman Senterfitt, with data regarding the Debtors' historical sales and charge-offs so that counsel could prepare a spreadsheet calculating Circuit City Stores West Coast Inc.'s California sales tax deductions for bad debt losses on taxable sales for the period of April 1, 2005 through October 31, 2008 (the "Deductions"). Based on counsel's subsequent analysis, the Debtors claimed the Deductions on line 10a1 as "Bad Debt Losses on Taxable

Sales" of Circuit City Stores West Coast Inc.'s Q4 2008 State, Local and District Sales and Use Tax Return that was filed on or about January 10, 2009. A true and correct copy of the Q4 2008 return is attached as Exhibit B.

6.     During the first quarter of 2009, the Debtors were under a general sales and use tax audit by the BOE for the period of July 1, 2005 through November 9, 2008. I led the Debtors' tax team in responding with the BOE auditors' request for data and documentation during the audit period, including substantiation for Deductions. The audit included the review of the Q4 2008 return and the Deductions in particular.

7.     After the conclusion of the formal audit, beginning in April, 2009, I was the only employee of the Debtors that was authorized by Jeff McDonald, then the vice-president of tax of the Debtors, to speak to the BOE.

8.     On or about April 24, 2009, the BOE sent Circuit City Stores West Coast, Inc. a letter enclosing its Report of Field Audit and Notice of Determination (the "Assessment"). The notice indicated a tax liability owing by the Debtors in the amount of $2,811,230.23. The tax assessment consists of $2,537,420.57 relating to the Deductions, $240,779.66 relating to a sales tax assessment for bad debts claimed relating to returned checks and fraud losses ("Bad Check/Fraud Deductions"), and $33,030.00 relating to the tax exempt portion of the audit based on the error factor from the prior audit. In the Assessment, the auditor noted that "due to the bar date, we are unable to grant the taxpayer additional time to document the bad debts claims" and "the taxpayer does not agree with the audit findings." A true and correct copy of the April 24, 2009 letter form the BOE and the relevant portions of the Report of Field Audit and Notice of Determination are attached as Exhibit C.

9.      The underlying basis for the BOE's Disallowed Claim filed on May 15, 2009 are the same amounts assessed in the Assessment, plus an additional $12,908 that the BOE separately assessed the Debtors for hazardous substances tax for the period of January 1, 2008 through December 31, 2008. Based on our limited research, I believe the $12,908 assessment is without merit.

10.     After the conclusion of the formal audit, the Debtors and the BOE continued to communicate regarding audit issues, particularly the Deductions and to a lesser extent, the Bad Check/Fraud Deductions. During the course of the communications from April 2009 through February 2010, I communicated with the BOE auditor Zoila Saquicela regarding the Deductions and the Bad Check/Fraud Deductions. During the course of those communications, on October 1, 2009, I provided further explanation and a spreadsheet calculating the Deductions in response to a request for additional documentation, and explained to Ms. Saquicela that the Bad Check/Fraud Deductions that were  taken during the course of the audit related to returned checks and fraud losses and were validly deducted.

11.     On February 2, 2010, Maria Carantzas of the Akerman firm and I had a telephone conference with BOE auditor Zoila Saquicela. From that date forward, the Debtors relied on the Akerman firm to communicate with the BOE auditors with regards to the BOE claims and the Deductions in particular.

12.     In all of my communications with the BOE, I never had a single discussion about the prospect of a consensual allowance of the Disallowed Claim. Moreover, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to deem the Disallowed Claim as timely filed. Similarly, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to stay the time period in

which the BOE would be required to reconsider the Order Sustaining Debtors' Sixty-Eighth

Omnibus Objection To Claims (Disallowance Of Certain Late Claims).


**FURTHER AFFIANT SAYETH NAUGHT.**


Jeff Knopke
Tax Analyst
Circuit City Liquidating Trust LLC
P.O. Box 5695
Glen Allen, VA  23058

Phone:  (804) 360-4135
Fax:  (804) 360-4289


STATE OF VIRGINIA        )
                         ) ss:
COUNTY OF HENRICO        )

The foregoing instrument was sworn to and subscribed before me this 28ᵗʰ day of June, 2011 by Jeff Knopke, who is:

☑    personally known to me; or

☐    produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or

☐    produced the following identification: _____

NOTARY PUBLIC, STATE OF VIRGINIA

DEBORAH A. WILLIAMS
(Print, Type or Stamp Commissioned Name of Notary Public)

FORM B10 (Official Form 10) (12/03)

**U. S. BANKRUPTCY COURT EASTERN DISTRICT OF VIRGINIA (RICHMOND)** | **PROOF OF CLAIM** | #13049

| Name of Debtor | Case Number |
|---|---|
| CIRCUIT CITY STORES WEST COAST, INC. | 08-35654 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**STATE BOARD OF EQUALIZATION**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:

STATE BOARD OF EQUALIZATION
SPECIAL PROCEDURES SECTION, MIC:55
PO BOX 942879
SACRAMENTO CA 94279-0055

☐ Check box if you have never received any notices from the bankruptcy court in this case.
☒ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone: (916) 445-1122   FAX: (916) 327-0615

RICHMOND DIVISION
F I L E D
MAY 1 5 2009
CLERK
U.S. BANKRUPTCY COURT

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
SR OHB 99-487429; EF EF 42-077383

Check here if this claim ☐ replaces ☐ amends   a previously filed claim, dated:

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☒ Taxes
☐ Other (specify)

☐ Retiree benefits as defined in 11 U.S.C § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)   (date)

**2. Date(s) debt incurred:**
(AS SHOWN ON DATA SUMMARY ATTACHMENT)

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $_____ _____ 2,846,666.34 2,846,666.34
(unsecured) (secured) (priority) (Total)
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☒ Check this box if you have an unsecured priority claim
Amount entitled to priority $ 2,846,666.34
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(3).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. 607(a)(7).
☒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C § 507(a)(2).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
MAY 2 0 2009
KURTZMAN CARSON CONSULTANTS

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **State Board of Equalization, by** |
|---|---|
| APRIL 28, 2009 | J. R. WILLIAMS, Authorized Representative |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

SH


☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


EXHIBIT
A


0835654090515000000000001

## DATA SUMMARY ATTACHMENT FOR PROOF OF CLAIM OF STATE BOARD OF EQUALIZATION

| Debtor | Case Number | Claim Dated |
|---|---|---|
| CIRCUIT CITY STORES WEST COAST, INC. | 08-35654 | APRIL 28, 2009 |

| Account Number | Petition Date | Chapter |
|---|---|---|
| SR OHB 99-487429; EF EF 42-077383 | 11/10/08 | 11 |

### SUMMARY OF LIABILITY STATEMENT

| CLAIM CLASS | TAX PROGRAM OR REASON | DEBT PERIOD | TAX | INTEREST (calculated to petition or conversion date) | PENALTY | TOTAL |
|---|---|---|---|---|---|---|
| P | 1 | 7/1/05 - 11/9/08 | 2,811,230.23 | 22,528.11 | | 2,833,758.34 |
| P | 2 | 1/1/08 - 12/31/08 | 12,908.00 | | | 12,908.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTALS** | | | 2,824,138.23 | 22,528.11 | | 2,846,666.34 |

LEGEND
CLAIM CLASS
S    - Secured
P    - Unsecured Priority -11 USC 607(a)(8)
G    - Unsecured NON priority (General)
GAP  - "Gap" Claim -- 11 USC 507(a)(2)
1305 - 11USC 1305

TAX PROGRAM OR REASON
1.    SALES AND USE TAX
2.    HAZARDOUS SUBSTANCES TAX
3.
4.
5.
6.

### SUMMARY OF TAX LIENS

| LIEN CERTIFICATE | DATE RECORDED | COUNTY OR RECORDING AUTHORITY | RECORDING INFORMATION (Document/Instrument #, or Book/Page) | AMOUNT |
|---|---|---|---|---|
| BE | | | | |
| | | | | |
| | | | | |

The foregoing liens were recorded pursuant to Section 6757 of the California Revenue and Taxation Code and to the extent there is any real or personal property to which the liens created by such recording attach, the amount of the claim in said certificates constitutes a secured claim.

### SUPPLEMENTAL CLAIM PURSUANT TO USC 11 § 726(a)(4) and (5)

In addition to the claim to which this page is attached, the Board of Equalization asserts the following supplemental Chapter 7 claim, pursuant to the noted code sections:

| | | |
|---|---|---|
| USC 11 § 726(a)(4) | $ | 0.00 |
| USC 11 § 726(a)(5) | | 0.00 |
| Total Supplemental Claim | $ | 0.00 |

BOE-401-A (FRONT) (REV. 162 (6-08))

P O BOX 188268
SACRAMENTO, CA 95818-0268
(916) 227-6600

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

STATE, LOCAL and DISTRICT SALES and USE TAX RETURN

| BOARD USE ONLY | | |
|---|---|---|
| RA TT | LOC | REG |
| RA/BR | AACS | REF |

DUE ON OR BEFORE    FEB 2, 2009  FOR OCT THROUGH DEC 2008    2408

[ FOID 40363052    ]       YOUR ACCOUNT NO

SR Z OHB    99487429    7

EFF

SC2    EFT
BOARD OF EQUALIZATION
P.O. BOX 942879
SACRAMENTO CA 94279-8041

680 S LEMON AVE, WALNUT, CA
CIRCUIT CITY STORES WEST COAST INC
9950 MAYLAND DR
RICHMOND                VA 23233-1463

E-FILING INFORMATION AND RETURN INSTRUCTIONS (BOE-401-INST) ARE AVAILABLE AT WWW.BOE.CA.GOV OR BY CALLING 800-400-7115. E-FILING IS FASTER, EASIER, AND A SECURE WAY TO FILE YOUR RETURN.

BOE USE

| | | | |
|---|---|---|---|
| 1 | TOTAL (gross) SALES | 1 | $ 288,265,120.00 |
| 2 | PURCHASES SUBJECT TO USE TAX | 2 | 1,015,087.00 |
| 3 | TOTAL (add lines 1 and 2) | | 289,280,207.00 |

IF YOU HAVE DEDUCTIONS, FILL OUT LINES 4-11 ON THE BACK PAGE OF THIS RETURN
IF NO DEDUCTIONS, ENTER "0" ON LINE 11 AND PROCEED TO LINE 12.

| | | | |
|---|---|---|---|
| 11 | TOTAL NONTAXABLE TRANSACTIONS REPORTED (enter total deductions from line 11 on the back) | 11 | 32,996,176.00 |
| 12 | TRANSACTIONS SUBJECT TO STATE TAX (subtract line 11 from line 3) | 12 | 256,284,031.00 |
| 12 a | IF YOU ARE REQUIRED TO COMPLETE BOE-531-T, SCHEDULE T, enter amount from line 12 column C | 12a | .00 |
| 13 | STATE TAX 6% (multiply line 12 by .06 OR enter line 13 column D from BOE-531-T, Schedule T) | | 15,377,042.00 |
| 14 a | TRANSACTIONS SUBJECT TO COUNTY TAX (add amount in box 61 (back) and line 12 above) | | 256,284,031.00 |
| b | COUNTY TAX 1/4% (multiply line 14a by .0025) | | 640,710.00 |
| 15 | LOCAL TAX ADJUSTMENTS FOR AIRCRAFT COMMON CARRIERS ONLY (see line 15 instructions) | 15 | .00 |
| 16 | TRANSACTIONS SUBJECT TO LOCAL TAX (add or subtract line 15 to/from line 14a) | | 256,284,031.00 |
| 17 | COMBINED STATE AND LOCAL TAX 1% (multiply line 16 by .01) (additional schedules may apply - see line 17 instructions) | | 2,562,844.00 |
| 18 | DISTRICT TAX (from Schedule A1, TOTAL DISTRICT TAX) YOU MUST COMPLETE BOE-531-A1, SCHEDULE A1, if you are engaged in business in a transactions and use tax district | 18 | 1,878,775.00 |
| 19 | TOTAL STATE, COUNTY, LOCAL AND DISTRICT TAX (add lines 13, 14b, 17, and 18) | 19 | 20,459,371.00 |
| 20 | SALES OR USE TAX PAID TO OTHER STATES (Enter the amount of tax paid for merchandise purchased out of state for use in California. The purchase price must be included in line 2 above.) | 20 | .00 |
| 21 | NET TAX (subtract line 20 from line 19) | | 20,459,371.00 |
| 22 | LESS TAX PREPAYMENTS  1st prepayment (Tax only) $ 2,318,567.00 + 2nd prepayment (Tax only) $ 6,073,085.00 = Total Prepayment | 22 | 8,391,652.00 |
| 23 | REMAINING TAX (subtract line 22 from line 21) | | 12,067,719.00 |
| 24 | PENALTY of 10% (.10) is due if your tax payment is made, or your return is filed after the due date shown above (see line 24 instructions) | PENALTY 24 | .00 |
| 25 | INTEREST: One month's interest is due on tax for each month or fraction of a month that payment is delayed after the due date. The adjusted monthly interest rate is 0.667% | INTEREST 25 | .00 |
| 26 | TOTAL AMOUNT DUE AND PAYABLE (add lines 23, 24, and 25) | 26 | $ 12,067,719.00 |

IF YOU ARE NOT AN EFT FILER AND PAID BY CREDIT CARD AS DESCRIBED ON PAGE 1 OF THE INSTRUCTIONS, CHECK HERE [   ]

I hereby certify that this return, including any accompanying schedules and statements, has been examined by me and to the best of my knowledge and belief is a true, correct and complete return

YOUR SIGNATURE AND TITLE    TAX MANAGER

TELEPHONE NUMBER ( 804 )486-4000

DATE 01/10/2009

PRINT NAME AND TITLE

SC2

PAID PREPARER'S USE ONLY    PAID PREPARERS NAME

PREPARERS TELEPHONE NUMBER ( )

EFT

EXHIBIT
B

ill records    PRE  4,576,338
POST 15,883,033

1

BOE SAC 2.000

BOE-401-A-S (FRONT) REV. 102 (6-05)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## STATE, LOCAL and DISTRICT SALES and USE TAX RETURN

| YOUR ACCOUNT NO. | REPORTING PERIOD |
|---|---|
| SR Z OHB    99487429 | FEB 2, 2009  FOR OCT THROUGH DEC 2008 |

### SECTION A. Full Deductions/Exemptions Schedule

| | | BOE USE | | |
|---|---|---|---|---|
| 4 | SALES TO OTHER RETAILERS FOR PURPOSES OF RESALE | 50 | $ | 1,196,207 00 |
| 5 | NONTAXABLE SALES OF FOOD PRODUCTS | 51 | | 00 |
| 6 | NONTAXABLE LABOR (repair and installation) | 52 | | 00 |
| 7 | SALES TO THE UNITED STATES GOVERNMENT | 53 | | 00 |
| 8 | SALES IN INTERSTATE OR FOREIGN COMMERCE | 54 | | 00 |
| 9 | SALES TAX (if any) INCLUDED ON LINE 1 ON THE FRONT OF THE RETURN | 55 | | 00 |
| 10 a 1 | BAD DEBT LOSSES ON TAXABLE SALES | 56 | | 31,799,969 00 |
| 2 | BAD DEBT LENDER LOSSES | 62 | | 00 |
| b | COST OF TAX-PAID PURCHASES RESOLD PRIOR TO USE | 57 | | 00 |
| c | RETURNED TAXABLE MERCHANDISE | 58 | | 00 |
| d | CASH DISCOUNTS ON TAXABLE SALES | 59 | | 00 |
| | TOTAL FULL DEDUCTIONS/EXEMPTIONS (add lines 4 thru 10d) | | $ | 32,996,176 00 |

### SECTION B. Partial Deductions/Exemptions Schedule

| 10 e | IF YOU ARE REPORTING ANY TRANSACTIONS THAT OCCURRED PRIOR TO 7-1-04, YOU MUST COMPLETE THE PARTIAL STATE TAX EXEMPTION WORKSHEET, PAGE 3 OF BOE-531-T, SCHEDULE T, BEFORE YOU CLAIM ANY OF THESE DEDUCTIONS. | | | |
|---|---|---|---|---|
| 1 | AMOUNT SUBJECT TO THE MANUFACTURER'S EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e1 (discontinued 12-31-03). | 63 | $ | 00 |
| 2 | AMOUNT SUBJECT TO THE TELEPRODUCTION EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e2 | 64 | | 00 |
| 3 | AMOUNT SUBJECT TO FARM EQUIPMENT EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e3 | 65 | | 00 |
| 4 | AMOUNT SUBJECT TO THE DIESEL FUEL USED IN FARMING AND FOOD PROCESSING EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e4 | 66 | | 00 |
| 5 | AMOUNT SUBJECT TO THE TIMBER HARVESTING EQUIPMENT AND MACHINERY EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e5 | 67 | | 00 |
| 6 | AMOUNT SUBJECT TO THE RACEHORSE BREEDING STOCK EXEMPTION - If you are completing Schedule T, enter the amount from Partial State Tax Exemption Worksheet, column D, line 10e6 | 68 | | 00 |
| | TOTAL PARTIAL STATE TAX EXEMPTIONS - If you are required to complete the Tax Adjustment and Partial State Tax Exemption Worksheet (BOE-531-T, Schedule T), enter the amount from page 3, column D, box 60. If you are not required to complete the Worksheet, enter the sum of boxes 10e1 through 6 | 60 | | 00 |
| | STATE TAX EXEMPTION FACTOR - Only for use if Partial State Tax Exemption Worksheet is NOT required | | | 8750 |
| | TOTAL ADJUSTED PARTIAL DEDUCTIONS/EXEMPTIONS - If you completed Schedule T, enter the amount from page 1, column D, box 61. If you did not complete Schedule T, multiply the amount in box 60 by the State Tax Exemption Factor shown above and enter the result in box 61 | 61 | | 00 |

### SECTION C. Other Full Deductions/Exemptions Schedule

| 10 f | OTHER (clearly explain) | 90 | $ | 00 |
|---|---|---|---|---|
| 11 | TOTAL NONTAXABLE TRANSACTIONS (Add amounts for Sections A, B and C, then enter here and on the front page, line 11) | | $ | 32,996,176 00 |

BOE-401-A-S 2-009

2

BOE-531-A2 (S1) REV. 3 (10-08)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| DUE ON OR BEFORE | FEB 2, 2009 FOR OCT THROUGH DEC 2008 | 2408 | |
|---|---|---|---|
| FOID 40363052 | SR Z OHB 99487429 | 7 | |

| | | | | |
|---|---|---|---|---|
| A1 | Enter amount from line 16 on the front of your Sales and Use Tax Return | $ | 256,284,031 00 | |
| A2/A3 | ENTER sales delivered to any location not in a district tax area    000 | − | 17,059,836 00 | |
| A4 | SUBTRACT line A2/A3 from line A1 (Allocate this amount to the correct district tax areas in column A5) | $ | 239,224,195 00 | |

PLEASE READ THE INSTRUCTIONS ON PAGE 5 BEFORE COMPLETING THIS SCHEDULE

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (−) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| ALAMEDA CO. | 087 | 9,336,110.81 | | 9,336,110.81 | .016 | $ 140,042 00 |
| COLUSA CO. | | | | | | |
| City of Williams (Eff. 4-1-07) | 139 | 789.94 | | 789.94 | .005 | 4 00 |
| CONTRA COSTA CO. | 025 | 3,299,321.54 | | 3,299,321.54 | .01 | 32,993 00 |
| City of Richmond | 096 | 1,565,048.23 | | 1,565,048.23 | .015 | 23,476 00 |
| City of Pinole (Eff. 4-1-07) | 141 | 5,092.34 | | 5,092.34 | .015 | 76 00 |
| City of El Cerrito (Eff. 7-1-08) | 176 | 9,193.03 | | 9,193.03 | .015 | 138 00 |
| EL DORADO CO. | | | | | | |
| City of Placerville | 070 | 3,145.33 | | 3,145.33 | .0025 | 8 00 |
| City of So. Lake Tahoe | 097 | -25.03 | | -25.03 | .005 | 00 |
| FRESNO CO. | 099 | 5,099,213.84 | | 5,099,213.84 | .00725 | 36,969 00 |
| City of Clovis (Expired 9-30-08) | 100 | Discontinued | | | .01025 | 00 |
| City of Selma (Eff. 4-1-08) | 169 | 4,385.01 | | 4,385.01 | .01225 | 54 00 |
| City of Reedley (Eff. 7-1-08) | 177 | 8,169.56 | | 8,169.56 | .01225 | 100 00 |
| City of Sanger (Eff. 7-1-08) | 179 | 3,685.39 | | 3,685.39 | .01475 | 54 00 |
| HUMBOLDT CO. | | | | | | |
| City of Trinidad | 092 | | | | .01 | 00 |
| IMPERIAL CO. | 029 | 1,173.81 | | 1,173.81 | .005 | 6 00 |
| City of Calexico (Expired 3-31-06) | 046 | Discontinued | | | .01 | 00 |
| INYO CO. | 014 | 120.00 | | 120.00 | .005 | 1 00 |
| KERN COUNTY | | | | | | |
| City of Delano (Eff. 4-1-08) | 170 | 7,954.55 | | 7,954.55 | .01 | 80 00 |
| LAKE CO. | | | | | | |
| City of Clearlake | 058 | 34.97 | | 34.97 | .005 | 00 |
| City of Lakeport | 101 | 300.00 | | 300.00 | .005 | 2 00 |
| LOS ANGELES CO. | 036 | 70,921,750.15 | | 70,921,750.15 | .01 | 709,218 00 |
| City of Avalon | 078 | 869.94 | | 869.94 | .015 | 13 00 |
| City of Inglewood (Eff. 4-1-07) | 143 | 29,234.63 | | 29,234.63 | .015 | 439 00 |
| City of South Gate (Eff. 10-1-08) | 182 | 4,475.89 | | 4,475.89 | .02 | 90 00 |

| SUBTOTAL A11a (Add amounts in column A10 on this page. Enter the total here and on line A11a below) | $ | 943,763 00 |
|---|---|---|

Continued on page 2

| A11a | SUBTOTAL DISTRICT TAX (Page 1, enter the total from line A11a above) | $ | 943,763 00 |
|---|---|---|---|
| A11b | SUBTOTAL DISTRICT TAX (Page 2, enter the total from line A11b on page 2) | | 318,515 00 |
| A11c | SUBTOTAL DISTRICT TAX (Page 3, enter the total from line A11c on page 3) | | 564,157 00 |
| A11d | SUBTOTAL DISTRICT TAX (Page 4, enter the total from line A11d on page 4) | | 52,340 00 |
| A11 | TOTAL DISTRICT TAX (Add lines A11a, A11b, A11c and A11d. Enter here and on line 18 on the front of your Sales and Use Tax Return) | $ | 1,878,775 00 |

BOE-531-A2 (S1)

3

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB    99487429 | FEB 2, 2009    FOR OCT THROUGH DEC 2008 |

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| MADERA CO. (Eff. 4-1-07) | 144 | 25,567.23 | | 25,567.23 | .005 | $ 128 00 |
| MADERA CO. (Expired 9-30-05) | 034 | Discontinued | | | 005 | 00 |
| MARIN CO. | 102 | 21,806.71 | | 21,806.71 | .005 | 109 00 |
| City of San Rafael | 126 | 1,125,749.75 | | 1,125,749.75 | .01 | 11,258 00 |
| MARIPOSA CO. | 103 | 7,234.06 | | 7,234.06 | .005 | 36 00 |
| MENDOCINO CO. | | | | | | |
| City of Willits | 084 | 3,194.97 | | 3,194.97 | .005 | 16 00 |
| City of Point Arena | 085 | 269.94 | | 269.94 | .005 | 1 00 |
| City of Fort Bragg | 094 | 360.00 | | 360.00 | .005 | 2 00 |
| City of Ukiah | 122 | 7,501.42 | | 7,501.42 | .005 | 38 00 |
| MERCED CO. | | | | | | |
| City of Los Banos | 104 | 4,348.65 | | 4,348.65 | .005 | 22 00 |
| City of Merced | 127 | 1,383,708.84 | | 1,383,708.84 | .005 | 6,919 00 |
| MONO CO. | | | | | | |
| City of Mammoth Lakes (Eff. 10-1-08) | 183 | | | | .005 | 00 |
| MONTEREY CO. | | | | | | |
| City of Sand City | 105 | 2,182,636.35 | | 2,182,636.35 | .005 | 10,913 00 |
| City of Salinas | 128 | 2,609,968.12 | | 2,609,968.12 | .005 | 13,050 00 |
| City of Del Rey Oaks (Eff. 4-1-07) | 145 | | | | .01 | 00 |
| City of Seaside (Eff. 4-1-07) | 180 | 1,902.55 | | 1,902.55 | .01 | 19 00 |
| City of Pacific Grove (Eff. 10-1-08) | 184 | 3,288.61 | | 3,288.61 | .01 | 33 00 |
| NAPA CO. | 065 | 3,879.48 | | 3,879.48 | .005 | 19 00 |
| NEVADA CO. | 067 | 6,365.02 | | 6,365.02 | .00125 | 8 00 |
| Town of Truckee | 069 | -29.97 | | -29.97 | .00625 | 00 |
| City of Nevada City (Eff. 4-1-07) | 147 | 91.05 | | 91.05 | .00625 | 1 00 |
| ORANGE CO. | 037 | 29,217,076.96 | | 29,217,076.96 | .005 | 146,085 00 |
| City of Laguna Beach (Eff. 7-1-06) | 135 | 47,659.27 | | 47,659.27 | .01 | 477 00 |
| RIVERSIDE CO. | 026 | 15,402,147.60 | | 15,402,147.60 | .005 | 77,011 00 |
| SACRAMENTO CO. | 023 | 10,471,631.84 | | 10,471,631.84 | .005 | 52,358 00 |
| SAN BENITO CO. | | | | | | |
| City of San Juan Bautista | 106 | 1,235.00 | | 1,235.00 | .0075 | 9 00 |
| City of Hollister (Eff. 4-1-08) | 171 | 331.88 | | 331.88 | .01 | 3 00 |

| SUBTOTAL A11b (Add amounts in column A10 on this page. Enter the total here and on line A11b on page 1 of Schedule A2) | $ 318,515 00 |
|---|---|

Continued on page 3

BOE-531-A2 (S3) REV. 3 (3-03E)

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB    99487429 | FEB 2, 2009    FOR OCT THROUGH DEC 2008 |

| DISTRICT TAX AREAS | | A5<br>ALLOCATE LINE A4 TO<br>CORRECT DISTRICT(S) | A6/A7<br>ADD (+) / DEDUCT (-)<br>ADJUSTMENTS | A8<br>TAXABLE AMOUNT<br>A5 plus/minus A6/A7 | A9<br>TAX<br>RATE | A10<br>DISTRICT TAX DUE<br>Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| SAN BERNARDINO CO. | 031 | 8,958,453.18 | | 8,958,453.18 | .005 | $    44,792 00 |
| City of Montclair | 108 | 2,298,036.42 | | 2,298,036.42 | .0075 | 17,235 00 |
| City of San Bernardino (Eff. 4-1-07) | 149 | 3,443,276.75 | | 3,443,276.75 | .0075 | 25,825 00 |
| SAN DIEGO CO. | 013 | 14,991,881.06 | | 14,991,881.06 | .005 | 74,959 00 |
| City of El Cajon | 110 | 41,005.45 | | 41,005.45 | .01 | 410 00 |
| City of National City (Eff. 10-1-06) | 137 | 3,314,966.28 | | 3,314,966.28 | .015 | 49,724 00 |
| City of Vista (Eff. 4-1-07) | 151 | 1,734,392.75 | | 1,734,392.75 | .01 | 17,344 00 |
| SAN FRANCISCO CO. | 052 | 3,271,495.40 | | 3,271,495.40 | .0125 | 40,894 00 |
| SAN JOAQUIN CO. | 038 | 30,875.87 | | 30,875.87 | .005 | 154 00 |
| City of Stockton | 112 | 2,631,434.90 | | 2,631,434.90 | .0075 | 19,736 00 |
| City of Manteca (Eff. 4-1-07) | 153 | 1,759,647.59 | | 1,759,647.59 | .01 | 17,596 00 |
| SAN LUIS OBISPO CO. | | | | | | |
| City of Arroyo Grande (Eff. 4-1-07) | 154 | 12,287.10 | | 12,287.10 | .005 | 61 00 |
| City of Grover Beach (Eff. 4-1-07) | 155 | 2,698.06 | | 2,698.06 | .005 | 13 00 |
| City of Morro Bay (Eff. 4-1-07) | 156 | 5,040.65 | | 5,040.65 | .005 | 25 00 |
| City of San Luis Obispo (Eff. 4-1-07) | 157 | 2,395,801.86 | | 2,395,801.86 | .005 | 11,979 00 |
| City of Pismo Beach (Eff. 10-1-08) | 185 | 13,577.03 | | 13,577.03 | .005 | 68 00 |
| SAN MATEO CO. | 019 | 7,150,011.50 | | 7,150,011.50 | .01 | 71,500 00 |
| SANTA BARBARA CO. | 030 | 4,104,158.56 | | 4,104,158.56 | .005 | 20,521 00 |
| SANTA CLARA CO. | 124 | 12,536,500.48 | | 12,536,500.48 | .01 | 125,365 00 |
| SANTA CLARA CO. (Expired 3-31-06) | 064 | Discontinued | | | .01 | 00 |
| SANTA CRUZ CO. | 062 | 3,392,527.87 | | 3,392,527.87 | .0075 | 25,444 00 |
| City of Capitola | 114 | 11,679.52 | | 11,679.52 | .01 | 117 00 |
| City of Scotts Valley | 130 | 10,254.59 | | 10,254.59 | .0125 | 128 00 |
| City of Santa Cruz (Eff. 4-1-07) | 159 | | | | .0125 | 00 |
| City of Santa Cruz (Expired 3-31-07) | 090 | Discontinued | | | .01 | 00 |
| City of Watsonville (Eff. 4-1-07) | 161 | 26,717.94 | | 26,717.94 | .01 | 267 00 |

| SUBTOTAL A11c *(Add amounts in column A10 on this page. Enter the total here and on line A11c on page 1 of Schedule A2.)* | $    564,157 00 |
|---|---|

Continued on page 4

Page 3

9905CE 2.050

4

BOE-531-A2 (S4) REV 1 (10-05)

## SCHEDULE A2 - COMPUTATION SCHEDULE FOR DISTRICT TAX - Long Form

| ACCOUNT NUMBER | REPORTING PERIOD |
|---|---|
| SR Z OHB     99487429 | FEB 2, 2009   FOR OCT THROUGH DEC 2008 |

| DISTRICT TAX AREAS | | A5 ALLOCATE LINE A4 TO CORRECT DISTRICT(S) | A6/A7 ADD (+) / DEDUCT (-) ADJUSTMENTS | A8 TAXABLE AMOUNT A5 plus/minus A6/A7 | A9 TAX RATE | A10 DISTRICT TAX DUE Multiply A8 by A9 |
|---|---|---|---|---|---|---|
| SOLANO CO. | 066 | 3,431,895.50 | | 3,431,895.50 | .00125 | $   4,290 00 |
| SONOMA CO. | 116 | 81,057.67 | | 81,057.67 | .005 | 405 00 |
| City of Sebastopol | 118 | 1,562.38 | | 1,562.38 | .0075 | 12 00 |
| City of Santa Rosa | 120 | 3,191,102.77 | | 3,191,102.77 | .0075 | 23,933 00 |
| STANISLAUS CO. | 059 | 5,271,214.36 | | 5,271,214.36 | .00125 | 6,589 00 |
| City of Ceres (Eff 4-1-08) | 173 | 2,999.49 | | 2,999.49 | .00625 | 19 00 |
| TULARE CO. (Eff. 4-1-07) | 162 | 11,082.85 | | 11,082.85 | .005 | 55 00 |
| City of Visalia | 163 | 2,219,195.97 | | 2,219,195.97 | .0075 | 16,644 00 |
| City of Farmersville | 164 | 3,858.30 | | 3,858.30 | .01 | 39 00 |
| City of Dinuba | 165 | 3,260.82 | | 3,260.82 | .01 | 41 00 |
| City of Porterville | 166 | 11,982.06 | | 11,982.06 | .01 | 120 00 |
| City of Tulare | 167 | 8,243.27 | | 8,243.27 | .01 | 82 00 |
| TUOLUMNE CO. | | | | | | |
| City of Sonora | 093 | 1,966.45 | | 1,966.45 | .005 | 10 00 |
| YOLO CO. | | | | | | |
| City of West Sacramento | 081 | 11,180.90 | | 11,180.90 | .005 | 56 00 |
| City of Davis | 088 | 6,597.55 | | 6,597.55 | .005 | 33 00 |
| City of Woodland (Eff 10-1-06) | 138 | 2,304.77 | | 2,304.77 | .005 | 12 00 |
| City of Woodland (Expired 6-30-06) | 075 | Discontinued | | | .005 | 00 |

| SUBTOTAL A11d (Add amounts in column A10 on this page. Enter the total here and on line A11d on page 1 of Schedule A2.) | $   52,340.00 |
|---|---|

00050342 page

BOE-531-B (FRONT) REV. 6 (1-07)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

SCHEDULE B - DETAILED ALLOCATION BY COUNTY OF 1% COMBINED STATE AND UNIFORM LOCAL USE TAX

| DUE ON OR BEFORE | FEB 2, 2009 | FOR | OCT THROUGH DEC 2008 | 2408 |

[ FOID 40363052 ]

SR Z OHB

YOUR ACCOUNT NO
99487429    |7

CIRCUIT CITY STORES WEST COAST INC

PLEASE READ INSTRUCTIONS ON BACK BEFORE PREPARING THIS SCHEDULE.
Combined state and uniform local sales and use tax on retail sales of merchandise (not involving installation) made at your permanent place of business in California or combined state and local tax on property purchased ex-tax and used at the place of business should be entered on line B2 below the county schedule.

| A COUNTY IN WHICH TAXABLE TRANSACTION OCCURRED | B CODE | C AMOUNT OF 1% COMBINED STATE AND LOCAL TAX | A COUNTY IN WHICH TAXABLE TRANSACTION OCCURRED | B CODE | C AMOUNT OF 1% COMBINED STATE AND LOCAL TAX |
|---|---|---|---|---|---|
| ALAMEDA | 01 | .00 | PLACER | 31 | .00 |
| ALPINE | 02 | .00 | PLUMAS | 32 | .00 |
| AMADOR | 03 | .00 | RIVERSIDE | 33 | .00 |
| BUTTE | 04 | .00 | SACRAMENTO | 34 | .00 |
| CALAVERAS | 05 | .00 | SAN BENITO | 35 | .00 |
| COLUSA | 06 | .00 | SAN BERNARDINO | 36 | .00 |
| CONTRA COSTA | 07 | .00 | SAN DIEGO | 37 | .00 |
| DEL NORTE | 08 | .00 | SAN FRANCISCO | 38 | .00 |
| EL DORADO | 09 | .00 | SAN JOAQUIN | 39 | .00 |
| FRESNO | 10 | .00 | SAN LUIS OBISPO | 40 | .00 |
| GLENN | 11 | .00 | SAN MATEO | 41 | .00 |
| HUMBOLDT | 12 | .00 | SANTA BARBARA | 42 | .00 |
| IMPERIAL | 13 | .00 | SANTA CLARA | 43 | .00 |
| INYO | 14 | .00 | SANTA CRUZ | 44 | .00 |
| KERN | 15 | .00 | SHASTA | 45 | .00 |
| KINGS | 16 | .00 | SIERRA | 46 | .00 |
| LAKE | 17 | .00 | SISKIYOU | 47 | .00 |
| LASSEN | 18 | .00 | SOLANO | 48 | .00 |
| LOS ANGELES | 19 | .00 | SONOMA | 49 | .00 |
| MADERA | 20 | .00 | STANISLAUS | 50 | .00 |
| MARIN | 21 | .00 | SUTTER | 51 | .00 |
| MARIPOSA | 22 | .00 | TEHAMA | 52 | .00 |
| MENDOCINO | 23 | .00 | TRINITY | 53 | .00 |
| MERCED | 24 | .00 | TULARE | 54 | .00 |
| MODOC | 25 | .00 | TUOLUMNE | 55 | .00 |
| MONO | 26 | .00 | VENTURA | 56 | .00 |
| MONTEREY | 27 | .00 | YOLO | 57 | .00 |
| NAPA | 28 | .00 | YUBA | 58 | .00 |
| NEVADA | 29 | .00 | | | |
| ORANGE | 30 | .00 | | | |

B1. Total 1% combined state and local tax for all counties listed above . . . . . . . . . . . . . . . . . . . . . . . . . B1 $ .00

B2. Total 1% combined state and local tax on sales made and merchandise consumed at your permanent place of business in California (Do not include any tax allocated to the above counties) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B2 $ 2,562,844.00

BOARD USE ONLY Tax Area Code

B3. Total 1% combined state and local tax reported on Schedule F . . . . . . . . . . . . . . . . . . . . . . . . . . . . B3 $ .00

B4. Total 1% combined state and local tax reported on Schedule L . . . . . . . . . . . . . . . . . . . . . . . . . . . . B4 $ .00

B5. Total 1% combined state and local tax liability (add lines B1, B2, B3, and B4) This total tax must agree with line 17 on the return form. B5 $ 2,562,844.00

BT505R 1.000

BOE-531-F (FRONT) REV. 6 (4-05)

SCHEDULE F - DETAILED ALLOCATION BY CITY
OF 1% COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

DUE ON OR BEFORE    FOR    2408

[ FOID   40363052   ]

SR Z OHB   YOUR ACCOUNT NO. 99487429   7

SC2

PLEASE READ INSTRUCTIONS ON REVERSE
BEFORE PREPARING THIS SCHEDULE

680 S LEMON AVE, WALNUT, CA
CIRCUIT CITY STORES
CIRCUIT CITY STORES WEST COAST INC
9950 MAYLAND DR
RICHMOND   VA 23233-1463

1.  Using the listing of cities and tax area codes for Schedule F, BOE-531-F1, locate the tax area code for the city/unincorporated area for each location
2.  Summarize the 1% combined state and local use tax due by tax area code
3.  Enter the tax area code(s) and total 1% combined state and local use tax due for each city/unincorporated tax area code

| A TAX AREA CODE (5 digits) | B AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) | A TAX AREA CODE (5 digits) | B AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) | A TAX AREA CODE (5 digits) | B AMOUNT OF 1% COMBINED STATE AND LOCAL TAX (ROUND TO NEAREST DOLLAR) |
|---|---|---|---|---|---|
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |
| | 00 | | 00 | | 00 |

F1. Enter the total 1% combined state and local tax reported in Column(s) B above.
   a) If you are required to file a Schedule B, enter the amount from line F1 above on line B3 of Schedule B
   b) If you are required to file a Schedule E, enter the amount from line F1 above on line E3 of Schedule E
   c) If you are not required to file Schedule B or E, continue to lines F2 & F3

F1. _____ 00

F2. Enter the 1% combined state and local tax reported on Schedule C, or 1% combined state and local tax on sales made and merchandise consumed at your permanent place of business in California

BOARD USE ONLY
Tax Area Code

F2. _____ 2,562,844.00

F3. Total 1% combined state and local tax (add lines F1 and F2). This total must agree with line 10 on your Consumer Use Tax Return or line 17 on your Sales and Use Tax Return

F3. $ _____ 2,562,844.00

BE SURE TO ENCLOSE THIS SCHEDULE WITH YOUR SALES AND USE TAX RETURN - MAKE A COPY FOR YOUR RECORDS.

6

BOE-531-AC (FRONT REV 7 (9-1-05))

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO. | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD ON | IN LIEU | |
| 5795 CHRISTIE AVE | EMERYVILLE | 0011 | 01002 | 087 | | * | 32,861.00 |
| 2480 WHIPPLE RD | HAYWARD | 0127 | 01003 | 087 | | * | 30,348.00 |
| 400 LONGFELLOW CT SUITE B | LIVERMORE | 0114 | 01004 | 087 | | * | .00 |
| 43706 CHRISTY ST | FREMONT | 0062 | 01009 | 080 | | * | 17,577.00 |
| 7153 AMADOR PLAZA ROAD | DUBLIN | 0007 | 01013 | 080 | | * | 13,180.00 |
| 2041 WHITMAN AVE | CHICO | 0075 | 04002 | 000 | | * | 28,838.00 |
| 2030 DIAMOND BLVD | CONCORD | 0006 | 07032 | 025 | | * | 19,464.00 |
| 4300 DELTA GATEWAY BL | PITTSBURG | 0113 | 07037 | 025 | | * | 13,075.00 |
| 4100 KLOSE WAY | RICHMOND | 0103 | 07038 | 025 | | * | 15,704.00 |
| 5355 N BLACKSTONE AVE | FRESNO | 0091 | 10060 | 072 | | * | 51,426.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | | 1 OF 10 |

BOE-531-AC (9-1-05)

7

BOE-530-B FRONT(REV 7 (6-08))                                          STATE OF CALIFORNIA
                                                                  BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.                *Please round cents to the*
Read instructions before preparing.                                                *nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED<br>COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE<br>COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD-ON | IN LIEU | |
| 4230 CALIFORNIA AVE | BAKERSFIELD | 0041 | 15021 | 000 | | * | 46,757.00 |
| 401 N 1ST STREET | BURBANK | 0066 | 19007 | 036 | | * | 32,478.00 |
| 120 EAST COMPTON BLVD | COMPTON | 0039 | 19009 | 036 | | * | 10,643.00 |
| 5660 SEPULVEDA BLVD | CULVER CITY | 0080 | 19011 | 036 | | * | 41,510.00 |
| 14600 OCEANGATE AVE | HAWTHORNE | 0021 | 19016 | 036 | | * | 41,878.00 |
| 745 WEST HUNTINGTON DR | MONROVIA | 0144 | 19024 | 036 | | * | 18,341.00 |
| 2415 VIA CAMPO AVE | MONTEBELLO | 0042 | 19025 | 036 | | * | 46,670.00 |
| 2735 S TOWNE AVE | POMONA | 0074 | 19028 | 036 | | * | 17,424.00 |
| 1251 4th ST | SANTA MONICA | 0020 | 19033 | 036 | | * | 29,262.00 |
| 901 SPRING ST | SIGNAL HILL | 0134 | 19035 | 036 | | * | 19,794.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.          **2,562,844.**

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 2 OF 10 | |

BOE530-B (REV)

8

BOE-530 (FRONT) REV. 20 (4-03)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED — COLUMN 1 | | SUB-OUTLET NO. | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD-ON | IN LIEU | |
| 25415 CRENSHAW BLVD | TORRANCE | 0051 | 19038 | 036 | | | 28,609.00 |
| | | | | | * | | |
| 2851 EASTLAND CENTER DRIVE | WEST COVINA | 0037 | 19040 | 036 | | | 32,647.00 |
| | | | | | * | | |
| 4950 FACULTY DRIVE | LAKEWOOD | 0025 | 19042 | 036 | | | 30,903.00 |
| | | | | | * | | |
| 4400 SUNSET BOULEVARD | LOS ANGELES | 0019 | 19050 | 036 | | | 38,656.00 |
| 6401 CONOGA AVE | WOODLAND HILLS | 0036 | 19050 | 036 | | | 30,252.00 |
| 13630 VICTORY BOULEVARD | VAN NUYS | 0038 | 19050 | 036 | | | 32,131.00 |
| 1839 S. LA CIENEGA BLVD | LOS ANGELES | 0045 | 19050 | 036 | | | 27,292.00 |
| 1145 GAYLEY AVE | LOS ANGELES | 0073 | 19050 | 036 | | | .00 |
| 19330 PLUMMER ST | NORTHRIDGE | 0108 | 19050 | 036 | | | 36,252.00 |
| | TOTAL FOR THIS TAX CODE | | | | * | | 164,583.00 |
| 2180 BELLFLOWER BLVD | LONG BEACH | 0085 | 19060 | 036 | | | 22,831.00 |
| | | | | | * | | |
| 1600 S AZUSA AVE | CITY OF INDUSTRY | 0056 | 19062 | 036 | | | 17,119.00 |
| 680 SOUTH LEMON AVE | WALNUT | 0067 | 19062 | 036 | | | .00 |
| 505 SOUTH CHERYL LA | CITY OF INDUSTRY | 0122 | 19062 | 036 | | | 2.00 |
| | TOTAL FOR THIS TAX CODE | | | | * | | 17,121.00 |
| 11758 E FIRESTONE BLVD | NORWALK | 0044 | 19066 | 036 | | | 22,682.00 |
| | | | | | * | | |
| 200 EAST BROADWAY ST | GLENDALE | 0092 | 19070 | 036 | | | 28,274.00 |
| | | | | | * | | |
| 39331 10TH STREET WEST | PALMDALE | 0121 | 19094 | 036 | | | 39,236.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

| OWNER'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| CIRCUIT CITY STORES WEST COAST INC | | | | | | |
| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
| 99487429 | | SR 2 | 23233-1463 | 2408 | 3 OF 10 | |

BOE530A-1 (REV.)

9

BOE-531-J BONTROY V. XCT-1051

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

# SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | SUB | ADD-ON | IN LIEU | |
| | | | | | | * | |
| 39 NORTH ROSEMEAD BLVD | PASADENA | 0023 | 19998 | 036 | | | 34,577.00 |
| 25610 N THE OLD RD | VALENCIA | 0104 | 19998 | 036 | | | 28,797.00 |
| | TOTAL FOR THIS TAX CODE | | | | | * | 63,374.00 |
| 330 BELLAM BLVD | SAN RAFAEL | 0009 | 21028 | 126 | | | 11,448.00 |
| | | | | | | * | |
| 3275 R STREET | MERCED | 0079 | 24025 | 127 | | | 14,146.00 |
| | | | | | | * | |
| 1910 North Davis Rd | Salinas | 0055 | 27045 | 128 | | | 26,263.00 |
| | | | | | | * | |
| 905 PLAYA AVE | SAND CITY | 0089 | 27072 | 000 | 0019 | | 21,961.00 |
| | | | | | | * | |
| 835 E BIRCH ST | BREA | 0145 | 30012 | 037 | | | 15,539.00 |
| | | | | | | * | |
| 123 ORANGE FAIR MALL | FULLERTON | 0082 | 30013 | 037 | | | 22,559.00 |
| | | | | | | * | |
| 7881 EDINGER AVE | HUNTINGTON BEACH | 0033 | 30014 | 037 | | | 41,623.00 |
| | | | | | | * | |
| 1020 W IMPERIAL HWY | LA HABRA | 0146 | 30016 | 037 | | | 20,551.00 |
| | | | | | | * | |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

| OWNER'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| CIRCUIT CITY STORES WEST COAST INC | | | | | | |
| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
| 99487429 | | SR Z | 23233-1463 | 2408 | 4 OF 10 | |

BOE-531-J (BACK)

BOE-530-B (FRONT) REV. 26 (4-06)

SCHEDULE C - DETAILED ALLOCATION BY
SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO. | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | AR | ADD ON | IN LIEU | |
| 1101 NEWPORT CENTER DR | NEWPORT BEACH | 0060 | 30017 | 037 | | * | 34,204.00 |
| 12325 Seal Beach Blvd | Seal Beach | 0138 | 30021 | 037 | | * | 19,449.00 |
| 8371 LA PALMA AVE | BUENA PARK | 0022 | 30023 | 037 | | * | 23,616.00 |
| 1407 W CHAPMAN AVE | ORANGE | 0024 | 30030 | 037 | | * | 19,230.00 |
| 13752 JAMBOREE RD | IRVINE | 0084 | 30036 | 037 | | * | 28,079.00 |
| 26542 TOWNE CENTRE DR | FOOTHILL RANCH | 0136 | 30037 | 037 | | * | 10,232.00 |
| 24001 EL TORO RD | LAGUNA HILLS | 0099 | 30038 | 037 | | * | 38,875.00 |
| 30491 AVENIDA DE LAS FLORES | RANCHO SANTA MARGARI | 0125 | 30043 | 037 | | * | 20,010.00 |
| 10271 FAIRWAY DR | ROSEVILLE | 0123 | 31015 | 000 | | * | 24,761.00 |
| 10255 MAGNOLIA AVE | RIVERSIDE | 0043 | 33050 | 026 | | * | 11,589.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME

CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 5 OF 10 | |

BOE-530-B (BACK)

11

BOE-530 (FRONT) REV 29 (4-05)

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 5 |
|---|---|---|---|---|---|---|---|
| | | | CO | DR | AD ON | IN DPD | |
| 72369 HIGHWAY 111 | PALM DESERT | 0101 | 33058 | 026 | | | 24,324.00 |
| | | | | | | * | |
| 78-825 HWY 111 | LA QUINTA | 0126 | 33060 | 026 | | | 21,033.00 |
| | | | | | | * | |
| 12530 DAY STREET | MORENO VALLEY | 0014 | 33061 | 026 | | | 27,399.00 |
| 37610 EUCALYPTUS AVE | MORENO VALLEY | 0148 | 33061 | 026 | | | 11,986.00 |
| | TOTAL FOR THIS TAX CODE | | | | | * | 39,385.00 |
| 40480 WINCHESTER RD | TEMECULA | 0105 | 33062 | 026 | | | 34,785.00 |
| | | | | | | * | |
| 24390 VILLAGE WALK PL | MURRIETA | 0140 | 33065 | 026 | | | 13,543.00 |
| 6397 PATS RANCH RD | MIRA LOMA | 0141 | 33998 | 026 | | | 9,668.00 |
| | | | | | | * | |
| 205 SERPA DR | FOLSOM | 0147 | 34003 | 023 | | | 24,822.00 |
| | | | | | | * | |
| 7980 ARCADIA BLVD | CITRUS HEIGHTS | 0016 | 34012 | 023 | | | 20,980.00 |
| | | | | | | * | |
| 8211 LAGUNA BLVD | ELK GROVE | 0015 | 34013 | 023 | | | 35,153.00 |
| | | | | | | * | |
| 2121 ARDEN WAY | SACRAMENTO | 0017 | 34998 | 023 | | | 24,415.00 |
| | | | | | | * | |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 6 OF 10 | EFT |

SUB A CODE

12

BOE-530-J NONT (REV 79 (4-08)

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | PRI | ADD ON | IN LEU | |
| 16685 SIERRA LAKES PKWY | FONTANA | 0137 | 36009 | 031 | | | 18,408.00 |
| | | | | | | * | |
| 555 E HOSPITALITY LANE | SAN BERNARDINO | 0102 | 36060 | 031 | | | 34,982.00 |
| | | | | | | * | |
| 5150 NORTH PLAZA LANE | MONTCLAIR | 0034 | 36071 | 031 | | | 24,027.00 |
| | | | | | | * | |
| 12133 MALL BLVD | VICTORVILLE | 0053 | 36072 | 031 | | | 32,166.00 |
| | | | | | | * | |
| 12260 FOOTHILL BOULEVARD | RANCHO CUCAMONGA | 0070 | 36075 | 031 | | | 38,191.00 |
| | | | | | | * | |
| 1138 WEST VALLEY PARKWAY | ESCONDIDO | 0052 | 37004 | 013 | | | 16,180.00 |
| | | | | | | * | |
| 8820 GROSSMONT BLVD | LA MESA | 0048 | 37005 | 013 | | | 27,330.00 |
| | | | | | | * | |
| 1608 SWEETWATER RD | NATIONAL CITY | 0047 | 37006 | 013 | | | 34,369.00 |
| | | | | | | * | |
| 333 NORTH EL CAMINO REAL | ENCINITAS | 0078 | 37018 | 013 | | | 26,690.00 |
| | | | | | | * | |
| 3331 ROSECRANS STREET | SAN DIEGO | 0049 | 37060 | 013 | | | 22,765.00 |
| 3998 CLAIREMONT MESA BLVD | SAN DIEGO | 0050 | 37060 | 013 | | | 24,103.00 |
| 11710 CARMEL MOUNTAIN RD | SAN DIEGO | 0061 | 37060 | 013 | | | 31,271.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-F, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | | 7 OF 10 |

BU036-A 1-000

13

## SCHEDULE C - DETAILED ALLOCATION BY SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the nearest whole dollar.

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED — COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | JUR | ADD-ON | IN LIEU | |
| TOTAL FOR THIS TAX CODE * | | | | | | | 78,139.00 |
| 1715 HACIENDA DRIVE | VISTA | 0063 | 37095 | 013 | | | 17,773.00 |
| | | | | | * | | |
| 1200 VAN NESS AVE | SAN FRANCISCO | 0013 | 38001 | 052 | | | 30,777.00 |
| 840 MARKET STREET | SAN FRANCISCO | 0137 | 38001 | 052 | | | .00 |
| TOTAL FOR THIS TAX CODE * | | | | | | | 30,777.00 |
| 2210 DANIELS ST | MANTECA | 0132 | 39002 | 038 | | | 17,669.00 |
| | | | | | * | | |
| 4994 N CLAREMONT AVE | STOCKTON | 0012 | 39060 | 038 | | | 26,910.00 |
| | | | | | * | | |
| 1531 Froom Ranch Way | San Luis Obispo | 0135 | 40023 | 157 | | | 24,652.00 |
| | | | | | * | | |
| 303 GELLERT BLVD | DALY CITY | 0018 | 41015 | 019 | | | 34,565.00 |
| | | | | | * | | |
| 1880 S GRANT STREET | SAN MATEO | 0003 | 41021 | 019 | | | 25,173.00 |
| | | | | | * | | |
| 1731 E Bayshore Rd | E PALO ALTO | 0139 | 41030 | 019 | | | 13,577.00 |
| | | | | | * | | |
| 1535 SOUTH BRADLEY RD | SANTA MARIA | 0093 | 42002 | 030 | | | 13,529.00 |
| | | | | | * | | |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

2,562,844.

OWNER'S NAME
CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE |
|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | EPT 8 OF 10 |

14

## SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

*Please round cents to the nearest whole dollar.*

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-OUTLET NO | TAX AREA CODE COLUMN 2 | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|
| | | | CO | AREA | ADD-ON | IN LIEU | |
| 3761 STATE STREET | SANTA BARBARA | 0030 | 42060 | 030 | | 27,510.00 |
| | | | | | * | |
| 1007 COCHRAN RD | MORGAN HILL | 0142 | 43004 | 124 | | 14,773.00 |
| | | | | | * | |
| 111 E EL CAMINO REAL | SUNNEYVALE | 0004 | 43007 | 064 | | 22,938.00 |
| | | | | | * | |
| 5353 ALMADEN EXPWY | SAN JOSE | 0001 | 43060 | 007 | | 29,218.00 |
| 4080 W STEVENS CREEK BLVD | SAN JOSE | 0002 | 43060 | 007 | | 30,806.00 |
| 2217 QUIMBY RD | SAN JOSE | 0064 | 43060 | 007 | | 27,246.00 |
| TOTAL FOR THIS TAX CODE | | | | | * | 87,270.00 |
| 1664 COMMERCIAL WAY | SANTA CRUZ | 0090 | 44998 | 062 | | 34,393.00 |
| | | | | | * | |
| 1175 DANA DRIVE | REDDING | 0083 | 45060 | 000 | | 22,992.00 |
| | | | | | * | |
| 1560 GATEWAY BLVD | FAIRFIELD | 0065 | 48083 | 066 | | 14,375.00 |
| | | | | | * | |
| 130 NUT TREE PKWY | VACAVILLE | 0149 | 48086 | 066 | | 20,142.00 |
| | | | | | * | |
| 2805 SANTA ROSA AVE | SANTA ROSA | 0008 | 49060 | 130 | | 32,939.00 |
| | | | | | * | |
| 3401 DALE ROAD | MODESTO | 0010 | 50012 | 059 | | 31,180.00 |

TOTAL. This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-E, Schedule E. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule E, please enter this Schedule C total on line L2 of Schedule E.

**2,562,844.**

OWNER'S NAME
**CIRCUIT CITY STORES WEST COAST INC**

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE |
|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | EFT 9 OF 10 |

BOE-530-A (FRONT) REV 2 (10-08)

# SCHEDULE C - DETAILED ALLOCATION BY
## SUBOUTLET OF COMBINED STATE AND UNIFORM LOCAL SALES AND USE TAX

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

The original copy of this schedule must be attached to your return.
Read instructions before preparing.

Please round cents to the
nearest whole dollar

| TAXING JURISDICTION IN WHICH PLACES OF BUSINESS ARE LOCATED COLUMN 1 | | SUB-IOUBLET NO | TAX AREA CODE COLUMN 2 | | | | AMOUNT OF 1% COMBINED STATE AND LOCAL TAX COLUMN 3 |
|---|---|---|---|---|---|---|---|
| | | | CO | AD | ADD OR | IN LIEU | |
| 2821 COUNTRYSIDE DR | TURLOCK | 0133 | 50017 | 059 | | | 21,558.00 |
| 3930 S MOONEY BLVD | VISALIA | 0059 | 54056 | 163 | | | 22,748.00 |
| 421 W ESPLANADE DR | OXNARD | 0112 | 56013 | 000 | | | 30,812.00 |
| 600 WEST HILLCREST DR | THOUSAND OAKS | 0058 | 56017 | 000 | | | 14,374.00 |

TOTAL: This Schedule C total must agree with line 17 of your return unless you are provided with either BOE-531, Schedule B, or BOE-531-L, Schedule L. If you receive Schedule B, please enter this Schedule C total on line B2 of Schedule B. If you receive Schedule L, please enter this Schedule C total on line L2 of Schedule L.

| OWNER'S NAME | | | | | | | 2,562,844. |
|---|---|---|---|---|---|---|---|

CIRCUIT CITY STORES WEST COAST INC

| ACCOUNT NUMBER | INDUSTRY | TAX CODE | ZIP CODE | PERIOD | PAGE | EFT |
|---|---|---|---|---|---|---|
| 99487429 | | SR Z | 23233-1463 | 2408 | 10OF 10 | |

BOE5AA-1 (CO)



TATE      IFORNIA
     )ARD OF EQUALIZATION
OH___      G
485 LEXINGTON AVENUE, SUITE 400
NEW YORK, NY 10017
212-697-4680 • FAX 212-697-5146
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, Ontario/Sacramento

MICHELLE STEEL
Third District, Rolling Hills Estates

JUDY CHU, Ph.D.
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

April 24, 2009

Mr. Jeff Knopke
Circuit City Stores West Coast, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464

IN REPLY REFER TO:
SR-Y-OHB-99-487429

Dear Mr. Knopke:

We are enclosing a copy of the *Report of Field Audit* resulting from our audit of your firm's records and accounts for the permit number referenced above. In a recent discussion, you indicated that you disagree with our audit recommendations. Your contention(s), along with a summary of our recommendations, are included in the report under "Discussion of Audit Findings." If you do not understand any portion of the audit findings, you may contact this office for clarification. If you have not received a copy of the audit working papers, including narrative comments, you may request one from this office.

We are forwarding the audit report to our headquarters office for processing and issuance of a *Notice of Determination* (i.e., billing). If this process results in a material change to the report you will be informed prior to billing. When you receive the *Notice*, you can appeal by filing a *Petition for Redetermination*, if you still believe there is an error in the audit report. The *Notice* includes instructions on how to file a petition.

Interest will continue to accrue monthly on the amount of unpaid tax, and will be added to the current interest amount shown on the *Notice of Determination* "interest through" calculation date. Interest will stop accruing on any tax amounts paid. The payment of all or part of the tax liability shown on the *Notice* will in no way affect your right to protest portions with which you do not agree. If you would like to make a payment before receiving the *Notice*, please refer to the enclosed *Audit Payment Information* sheet and provide the requested information with your payment.

You have six (6) months from the date of payment to file a claim for refund on any disputed amounts. If we find that you are entitled to a refund, any overpayments of tax will be credited to outstanding liabilities on your account at the time the overpayment is approved. Any balance will be refunded with credit interest (on the overpaid tax only) at the rate established for refunds.

Please note, although we have applied commonly accepted auditing procedures during the course of your audit, the auditor may not have examined all of your transactions. There may still be transactions that you are not reporting correctly. If you have any questions as to the application of tax to a particular product or transaction, please contact your auditor in writing and he/she will provide you with a written response.

We appreciate your cooperation during the audit of your records.

Sincerely,

*John M. Feeley*

John M. Feeley
Area Administrator

Enclosures

Discussed with:

cc:

*When you have been unable to resolve a matter through the normal appeals process or for information on your rights, you may contact the Taxpayers' Rights Advocate Office toll-free at 888-324-2798.*

BOE-79-B REV. 24 (2-05)

EXHIBIT
C

4/24/09



## State Board of Equalization -   Sales and Use Tax Department

## REPORT OF FIELD AUDIT

### Audit Payment Form

**Account No: SR Y OHB 099-487429**

| | | **Case Id:** | **429103** |
|---|---|---|---|
| Firm Name: | CIRCUIT CITY STORES | Lead Auditor: | ZOILA R SAQUICELA |
| Owner: | CIRCUIT CITY STORES WST CST | Supervisor: | GIULIO R DISALVO |
| Owner Type: | Corporation | Board Office: | New York Office |
| Business Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Audit Report Date: | March 31, 2009 |
| | RICHMOND, VA 23233-1464 | Business Code/SIC: | 31 |
| Mailing Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Account Status: | Closed-Out |
| | RICHMOND, VA 23233-1464 | Tax Area Code: | 5900999/0000 |

**LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS**

| | Tax | Interest to 5/31/09 | Penalty | Total |
|---|---|---|---|---|
| **Examination Period:** 7/01/05 to 11/09/08 | | | | |
| **Total Disclosed by Examination** | 2,811,230.23 | 100,577.05 | | 2,911,807.28 |
| | | | | |
| **Balance as of 5/31/09** | $2,811,230.23 | $100,577.05 | $0.00 | $2,911,807.28 |

While this report is not a bill, payment is encouraged to prevent the accrual of additional interest.

Additional interest will accrue monthly on the unpaid Tax after 5/31/09.

## Total Amount as of 5/31/09 is $2,911,807.28

Payment Amount Included   _____

Please Remit your Payment to:

State Board of Equalization
P.O. Box 942879
Sacramento, California
94279-0013

Please include this page with your payment and make your check or money order payable to:
State Board of Equalization.

Always write your account number ( **099-487429** ) on your check or money order.



4/26/09
Page: 1

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

| | | | |
|---|---|---|---|
| **Account No:** | SR Y OHB 099-487429 | **Case Id:** | 429103 |
| Firm Name: | CIRCUIT CITY STORES | **Lead Auditor:** | **ZOILA R SAQUICELA** |
| **Owner:** | **CIRCUIT CITY STORES WST CST** | **Supervisor:** | **GIULIO R DISALVO** |
| Owner Type: | Corporation | Board Office: | New York Office |
| Business Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Audit Report Date: | **March 31, 2009** |
| | RICHMOND, VA 23233-1464 | Business Code/SIC: | 31 |
| Mailing Address: | 9950 MAYLAND DRIVE-ATTN TAX DEPT | Account Status: | Closed-Cld |
| | RICHMOND, VA 23233-1464 | Tax Area Code: | 590998070000 |

A Local Tax Allocation was completed
A Legal Bankruptcy Case Exists

### LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| Examination Period: 7/01/05 to 11/09/08 | Tax | Interest to 5/31/09 | Penalty | Total |
|---|---|---|---|---|
| **Total Disclosed by Examination** | 2,811,230.23 | 100,577.05 | | 2,911,807.28 |
| | | | | |
| **Balance as of 5/31/09**\*\* | $2,811,230.23 | $100,577.05 | $0.00 | $2,911,807.28 |

\*\*If multiple billings have occurred, the audit liability may not equal the sum of the billings

### TAXABLE MEASURE DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| | | State, Local County and STTI | Total District |
|---|---|---|---|
| 1 | Disallowed sales for resale based on prior audit percentages | 406,473 | 751,718 |
| 2 | Disallowed claimed bad debts – actual | 33,919,948 | 66,609,301 |
| | | $34,326,421 | $67,361,019 |

**Special Instructions**      Attn: 5/11/09 bar date



4/24/09
Page: 2

# State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:    SR Y OHB 099-487429
Case Id:    429103

### DETAILED ANALYSIS OF TAXABLE MEASURE BY JURISDICTION

| | ACHC (District) | ACTI (District) | BARTA (District) | BARTC (District) | BARTS (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 15,775 | 15,775 | 15,775 | 10,384 | 5,260 |
| 2 Disallowed claimed bad debts - actual | 1,316,432 | 1,316,432 | 1,316,432 | 866,689 | 438,754 |
| | $1,332,207 | $1,332,207 | $1,332,207 | $877,073 | $444,014 |

| | CCPS (District) | CCTA (District) | ECPS (District) | FCPL (District) | FCTA (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 8,954 | 10,384 | 34,851 | 8,954 | 8,954 |
| 2 Disallowed claimed bad debts - actual | 747,190 | 866,689 | 2,908,397 | 747,190 | 747,190 |
| | $756,144 | $877,073 | $2,943,248 | $756,144 | $756,144 |

| | FCZA (District) | LACT (District) | LATC (District) | MRCD (District) | MTGR (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 8,954 | 112,589 | 112,589 | 1,284 | 24,608 |
| 2 Disallowed claimed bad debts - actual | 747,190 | 9,395,556 | 9,395,556 | 133,952 | 2,053,513 |
| | $756,144 | $9,508,145 | $9,508,145 | $135,236 | $2,078,121 |

| | MTPS (District) | NCGT (District) | OCTA (District) | RCTC (District) | RFEL (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 2,787 | 23,192 | 42,411 | 24,582 | 2,541 |
| 2 Disallowed claimed bad debts - actual | 442,739 | 2,900,036 | 3,539,139 | 2,051,276 | 264,922 |
| | $445,526 | $2,923,228 | $3,581,550 | $2,075,858 | $267,463 |

| | RMGT (District) | SAND (District) | SBAB (District) | SBER (District) | SBRN (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 10,384 | 5,545 | 8,230 | 24,608 | 12,864 |
| 2 Disallowed claimed bad debts - actual | 866,689 | 462,735 | 686,640 | 2,053,513 | 2,043,562 |
| | $877,073 | $468,280 | $694,870 | $2,078,121 | $2,056,426 |

| | SCCT (District) | SCGF (District) | SCHT (District) | SCOS (District) | SCVT (District) |
|---|---|---|---|---|---|
| 1 Disallowed sales for resale based on prior audit percentages | 17,995 | 3,608 | 7,425 | 4,881 | 14,387 |
| 2 Disallowed claimed bad debts - actual | 1,501,636 | 1,500 | 619,413 | 407,310 | 1,500,136 |
| | $1,519,631 | $5,108 | $626,838 | $412,191 | $1,514,523 |

4/24/09
Page: 3



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:    SR Y OHB 099-407429
Case Id:       429103

### DETAILED ANALYSIS OF TAXABLE MEASURE BY JURISDICTION

| | SDTC (District) | SFPF (District) | SFTA (District) | SJTA (District) | SLNS (District) |
|---|---|---|---|---|---|
| 1  Disallowed sales for resale based on prior audit percentages | 34,851 | 5,260 | 5,260 | 5,332 | 4,434 |
| 2  Disallowed claimed bad debts - actual | 2,908,397 | 438,754 | 438,754 | 444,894 | 462,273 |
| | $2,943,248 | $444,014 | $444,014 | $450,226 | $466,707 |

| | SLOG (District) | SLPL (District) | SHCT (District) | SNTA (District) | SNTA (District) |
|---|---|---|---|---|---|
| 1  Disallowed sales for resale based on prior audit percentages | 688 | 4,100 | 10,383 | 10,383 | 4,881 |
| 2  Disallowed claimed bad debts - actual | 109,402 | 342,049 | 866,385 | 866,385 | 407,310 |
| | $110,090 | $346,149 | $876,768 | $876,768 | $412,191 |

| | SPFG (District) | SRPS (District) | STAT (District) | STCL (District) | SZPL (District) |
|---|---|---|---|---|---|
| 1  Disallowed sales for resale based on prior audit percentages | 5,332 | 4,881 | 14,268 | 7,023 | 7,425 |
| 2  Disallowed claimed bad debts - actual | 444,894 | 407,310 | 1,190,759 | 585,867 | 619,413 |
| | $450,226 | $412,191 | $1,205,027 | $592,890 | $626,838 |

| | TAHC (District) | TCTA (District) | VPST (District) | VSTA (District) | Total District |
|---|---|---|---|---|---|
| 1  Disallowed sales for resale based on prior audit percentages | 3,178 | 1,816 | 3,474 | 18,219 | 751,718 |
| 2  Disallowed claimed bad debts - actual | 265,186 | 288,577 | 289,983 | 2,894,301 | 66,609,301 |
| | $268,364 | $290,393 | $293,457 | $2,912,520 | $67,361,019 |



4/26/09
Page: 4

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

Account No:    SR Y OHB 099-487429
Case Id:    429103

Reviewed By: _____

Date Reviewed: _____

Statute Date:

A Waiver is attached and the Waiver Period is: 07/01/05 to 06/30/08

First Expiring Period is: 07/01/05, and includes Tax of: $3,024.69

Auditors who worked on the examination:

| OFFICE | AUDITOR ID | CLASS | AUDIT MADE BY | HOURS |
|--------|-----------|-------|---------------|-------|
| OHB | 00000001778 | 3 | ZOILA R SAQUICELA | 124.00 |
| | | | Total Hours | 124.00 |

The Reported Measure during the period of examination is $4,266,722,286.

The Audit findings were discussed with: Tax Manager Jeff Knopke        Tel: (804) 486-2498

The taxpayer **does not agree** with the audit findings.

A copy of this Audit Report was furnished to the taxpayer along with a BOE-0079-B letter.

A credit is not involved but a claim for a refund was secured from the taxpayer and previously submitted to HQ.

A Tax Clearance is not required.

A Cigarette Indicia inspection revealed: None sold

The taxpayer is a Business with more than 50 Employees.

This business sells televisions, computers, or portable DVD players.

The directives provided to the taxpayer are: Pamphlets 17, 70 and 76 and Regulation 1642

### General Comments

**Type of Business Organization**
Corporation. David McDomas - President, Michael Chalifoux - Vice President, Philip Dunn - Treasurer. Prior audit through 12/31/04. The taxpayer filed for bankruptcy on 11/10/08. The bar date is 5/11/09.

**Class of Business**
Retailer of consumer electronics, computers, appliances, etc.

**Books and Records**
Double entry system that is adequate for sales and use tax purposes. Records regarding bad debts claimed on the returns were not available for verification. Tax reimbursement is added to the selling price..

**Penalty**
None is recommended. The taxpayer reported over $4 billion in taxable measure. We do not believe that the additional taxable measure was the result of negligence.

**Claim for Refund**
The taxpayer filed a claim for refund for bad debts not written off for the period 4/1/05 to 6/30/08. No dollar amount was stated in the claim. Due to the short time allowed by the bar date, the taxpayer was not able to supply any documentation in support of their claim. No refund is recommended.

The overpayment was not caused by carelessness. Credit interest is recommended.

**Tax Error on Returns**
The $-2,682 tax error on the transcript for 2007 was due to a mathematical error on the



No. 1                                                                                          4/24/09
                                                                                               Page: 5



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

**Account No:**    SR Y OHB 099-487429
**Case Id:**       429103

**Tax Error on Returns (cont.)**
returns. The taxpayer supplied a claim for refund. The auditor recommends that the $-2,682 overpayment be applied against this audit.

**Related Accounts**
Circuit City Purchasing (100-463241) was audited through 11/9/08.

Circuit City Stores (17-692815) was last audited through 3/31/01.

**Discussion with Taxpayer**
The audit was discussed with Jeff Knopke, Tax Manager.

**Taxpayer's Position**
The taxpayer believes that the amounts claimed as bad debts were valid deductions representing bad debts written off for bad checks and credit cards. He believes that the amounts claimed for 4/1/05 to 6/30/08 were actually understated.

**Auditor's Position**
The taxpayer has not provided documentation to support the $33,919,948 in bad debts that were claimed on the returns. That includes the $31,778,646 that was claimed for 10/1/08 to 11/9/08.

He has also not supplied documenation in support of the claim refund (bad debts).

Due to the bar date, we are unabale to grant the taxpayer additional time to documentthe bad debts claimed.

**Supervisor Comments**
I agree with the auditor's recommendation to not add a penalty. - Giulio DiSalvo, STAII

I agree. - John M. Feeley, Area Administrator

**Franchise Tax Board**
Not applicable.

The fixed assets purchases made by their operational division without tax were not accrued and reported with their returns but were reported under account #SC OHB 100-463241, Circuit City Purchasing Co., LLC. This account was set up on 9/1/04 to keep control of all the fixed assets purchases for all new stores. There were no errors noted. The ex-tax fixed assets purchases made for all their existing stores were accrued and reported on line 2 of tax returns. There were no errors noted. *Circuit City Purchasing Co., LLC was audited by this auditor through 11/9/08.*

## EXPENSE PURCHASES

A cursory review of several expense accounts was made. All expense purchases were made locally or the tax was accrued, and reported on returns.
Expense purchases made by the operational division for all new stores were reported under account # SC OHB 100-463241. This account was also audited through 11/9/08. *See above.*

## BAD DEBTS

Taxpayer claimed bad debt deductions throughout the audit period. Per discussion with taxpayer the bad debts were related to sales made with bad credit cards and checks. Due to the fact that taxpayer was busy with their fiscal year end reporting's, and bankruptcy, taxpayer was not able to provide the back up work papers to support the offset bad debt deductions with recoveries in computing bad debt reported during the audit. Auditor was not able to verify the amounts for bad debts; therefore, the bad debt deductions were disallowed. Schedule 12B lists all amounts disallowed in the audit. Taxpayer does not agree with this area of the audit, and has indicated that he will file a petition for redetermination.

## CLAIM FOR REFUND 2Q05 - 2Q08

Taxpayer filed a claim for refund on 7/28/08 in the amount of $unstated for the period 4/1/05 through 6/30/08. However, taxpayer was not able to provide the documentation to support the claim, and has indicated that they no longer wish to pursue the claim.

## TAX ERRORS / ADDITIONAL TAX ADJUSTMENTS

A math error was noted on the 2Q07 return which resulted in an overpayment of $2,682. Taxpayer has filed a claim for refund for this amount, and auditor is recommending the amount be refunded to the taxpayer. This amount is being handled by the Audit Determination and Refund Section (see exhibit 3).

## BROCHURES & PROMOTIONAL MATERIAL

Brochures & promotional material are distributed as inserts in newspapers. Tax is accrued and reported on amounts consumed in their stores. No further verification was done or deemed warranted.

## LOCAL TAXES

Tax collected were properly billed and allocated to the county where the property was located. Additional liability included in the audit was also allocated to the county of use.

**TRANSIT TAXES**
Transit taxes were properly billed and reported to the county districts whenever it was applicable. The transit taxes were allocated on a % basis based on amounts reported through 9/30/08. The tax matrix was not use since the audit period was through the bankruptcy date of 11/9/08.

NOTE: Reviewer noted errors in the calculation of district tax percentages. As this is a Bankruptcy case Area Administrator wants the corrections to be made in the audit phase. See the attached go-back for corrections recommended by the reviewer.

**EXHIBIT C**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653 (KRH) |
| | ) | (Chapter 11) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**AFFIDAVIT OF PETER O. LARSEN IN SUPPORT OF LIQUIDATING TRUSTEE'S
RESPONSE IN OPPOSITION TO STATE OF CALIFORNIA, STATE BOARD OF
EQUALIZATION'S MOTION TO RECONSIDER**

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss: |
| COUNTY OF DUVAL | ) |

PETER O. LARSEN, being duly sworn, deposes and says:

1.      I am a shareholder of the firm Akerman Senterfitt ("Akerman"), which prior to
the confirmation of the *Second Amended Plan* was employed by the debtors in the above-
captioned cases (collectively, the "Debtors"), in the ordinary course of their business pursuant to
the Court's *Order Granting Debtors' Motion For Order Pursuant To Bankruptcy Code Sections
105(A), 327, 330 And 331 Authorizing Debtors To Employ Professionals Utilized In The
Ordinary Course Of Business*, primarily to perform tax consulting services and representation.
Akerman continues to be employed by the Circuit City Stores, Inc. Liquidating Trust (the
"Trust") for the same purpose, continuing Akerman's involvement in several ongoing tax
matters.   I am the Akerman attorney responsible for supervising services for the Trust, and am
familiar with all of the Trust's tax related matters for which Akerman is performing services. My
Akerman colleagues Maria Carantzas and Tim Gillis, and I have been the primary points of

contact between the Debtors, the Trust and the State of California, State Board of Equalization ("BOE").

2.      I make this Affidavit based on my personal knowledge and my review of the books, records, and documents prepared and maintained by Akerman in the ordinary course of its business. I have become familiar with the manner and method in which Akerman maintains its books and records in its regular course of business.  Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.  I certify that all of the exhibits attached to this Affidavit are true and accurate copies of the original documents.  I have personal knowledge that the facts stated in this Affidavit are true.  I am authorized by Akerman and the Trust to make this Affidavit.

3.      BOE filed the following claims against the Debtors on or before May 11, 2009, the bar date for a governmental entity to  file a proof of claim:

(a)      priority claim in the amount of $36,033.68 against Circuit City Purchasing Company, LLC (Claim No. 12002);

(b)      administrative claim in the amount of $325,605.29 against Circuit City Stores, Inc. (Claim No. 13186); and

(c)      administrative claim in the amount of $2,525,699.69 against Circuit City Stores West Coast, Inc. (Claim No. 13187) (Claim Nos. 12002, 13186, and 13187 shall hereinafter be referred to as the "Timely Filed Claims.")

4.      On May 15, 2009, four days after the governmental bar date, BOE filed a late filed priority claim in the amount of $2,846,666.34 for unpaid tax liability against Circuit City

{JA632284;3}                                     2

West Coast, Inc. (the "Disallowed Claim," and together with the Timely Filed Claims, the "BOE Claims").

5.      As part of Akerman's retention, I was tasked to review and potentially resolve the BOE Claims on behalf of the Debtors.

6.      I was traveling to Sacramento, California on March 11, 2010 on another matter on March 8, 2010, so I e-mailed Larry Brammer, District Administrator, Out-of-State District, and asked him if he was interested in discussing a global resolution of the BOE's Claims against the Debtors.   Larry referred me to Roberta Cornell, Legal Division, Investigations and Special Operations Branch (MIC 55).

7.      Ms. Cornell e-mailed me on March 8, 2010 and suggested that we meet regarding the BOE's Claims at the conclusion of my other matter on March 11, 2010.

8.      On March 9, 2010, in advance of my meeting with Ms. Cornell, I sent an e-mail to Ms. Cornell advising her that:

-       Circuit City also has accrued but not yet filed refund claims in the approximate amount of $840,000 for accounts charged off during the period of 11/1/08 through 12/31/09.

-       The BOE filed the Disallowed Claim late as the governmental bar date for filing claims was May 11, 2009 and the Disallowed Claim was not filed/stamped with the Bankruptcy Court until May 15, 2009.

-       The Debtors filed an objection to the Disallowed Claim on the basis that it was filed late and on the underlying merits.

-       The bankruptcy judge can allow a late filed claim only if the BOE proves "excusable neglect" as to why the claim was filed late.

-       This bankruptcy judge has regularly denied requests related to late filed claims.

A true and correct copy of my March 9, 2010 e-mail is attached hereto as Exhibit A.

9.      On March 11, 2010, I met with Roberta Cornell, Sid Zigelman (Acting Business Taxes Administrator III) and Larry Brammer (the "BOE Representatives") regarding the BOE

{JA632284;3}                                  3

Claims and a global resolution of the BOE Claims. At the meeting, I advised the BOE Representatives that the Disallowed Claim was filed late and that the Debtors had filed an objection to the Disallowed Claim on that basis. I also advised the BOE Representatives that substantially all of the Disallowed Claim lacked merit even if timely filed because the Debtors' underlying sales tax deductions based on bad debt losses on taxable sales were proper. At the conclusion of the meeting, BOE asked me to produce on behalf of the Debtors additional information regarding the sales tax deductions and other information related to the Timely Filed Claims. After the meeting, I met with Larry Brammer alone and I again advised him that the Disallowed Claim was filed late.

10.    On October 28, 2010, I forwarded correspondence to the BOE wherein I again advised Larry Brammer at the BOE that the Disallowed Claim was filed late and that the bankruptcy court disallowed the claim on March 31, 2010. A true and correct copy of my October 28, 2010 letter is attached hereto as Exhibit B.

11.    On November 3, 2010, I e-mailed Larry Brammer who in turn e-mailed back to me that I should speak with Keith Meredith regarding the October 28, 2010 correspondence I sent to the BOE. I forwarded Mr. Brammer's request to Tim Gillis of Akerman, and requested that he follow up with Mr. Brammer and Mr. Meredith in an effort to reach a global resolution of the BOE Claims.

12.    Since the March 11, 2010 meeting, I have not had any discussions with the BOE about the prospect of consensual allowance of the Disallowed Claim. Moreover, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to deem the Disallowed Claim as timely filed. Similarly, I have never conveyed to the BOE or

otherwise any agreement on behalf of either the Debtors or the Trust to stay the time period in which the BOE would be required to reconsider the Expungment Order.

**FURTHER AFFIANT SAYETH NAUGHT.**


Peter Larsen

Peter O. Larsen
Shareholder
Akerman Senterfitt
50 N. Laura Street, Suite 3100
Jacksonville, Florida 32202
Phone: (904) 798-3700
Fax: (904) 798-3730


STATE OF FLORIDA           )
                           ) ss:
COUNTY OF DUVAL            )

The foregoing instrument was sworn to and subscribed before me this 27th day of June, 2011, by Peter O. Larsen, who is:

☒      personally known to me; or

☐      produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or

☐      produced the following identification: _____

_____
NOTARY PUBLIC, STATE OF FLORIDA

SUSAN M. SCOTT
Commission # DD 890788
Expires August 29, 2013
Bonded Thru Troy Fain Insurance 800-385-7019

(Print, Type or Stamp Commissioned Name of Notary Public)

Page 1 of 3

## Larsen, Peter (Sh-Jax)

| | |
|---|---|
| **From:** | Larsen, Peter (Sh-Jax) |
| **Sent:** | Tuesday, March 09, 2010 12:31 PM |
| **To:** | 'Cornell, Roberta' |
| **Subject:** | RE: Circuit City--confidential settlement communication |

Roberta, I am the outside attorney for Circuit City with respect to the claims listed below. This email summarizes the claims I would like to discuss and I would like to discuss a global resolution of all claims with expedited payment to the State. From a timing standpoint, my clients from GE will want to talk together after the meeting, so could we do this meeting in the late morning on Thursday? The Circuit City bad debt credits are one of the issues, but the proposal we have would not relate to the specific issues in the GE audit, so I would not discuss any pending GE specific issues at our meeting. If that does not work, then I would still like to meet after the GE meeting.

1. Circuit City West Coast # 99-487429. This claim relates to a sales tax audit for the period of 7/1/05-11/9/08 ($2,811,230.23) and a hazardous substance tax for the period of 1/1/08 - 12/31-08 ($12,908). Of the $2,846,666.34, $2,824,138.23 is tax and $22,528.11 is interest. The bad debt tax portion of the sales tax audit is $2,811,230. CC claimed bad debt credits of $2.5M.

Circuit City also has accrued but not yet filed refund claims in the approximate amount of $840,000 for accounts charged off during the period of 11/1/08 through 12/31/09. The auditor is from the New York office.

The State filed its proof of claim late. During the audit, the auditor bifurcated the audit as of the bankruptcy filing date (11/9/08) and issued an assessment for the period prior to 11/10/08 (prepetition liability). The governmental bar date was 5/11/09. The claim was not filed/stamped with the bankruptcy court until 5/15/09. CC filed an objection to this claim as being late and on the underlying merits. The bankruptcy judge can allow a late filed claim only if the State proves "excusable neglect" as to why the claim was filed late. This bankruptcy judge has regularly denied requests related to late filed claims.

2. Circuit City Stores Inc. #17-692815. This claim relates to sales tax for October 2008 and the first 9 days of November 2008 ($325K). The actual alleged unpaid taxes were from 10/1/08-11/9/08 and not 11/10/08-12/31/08. Since the sales tax is imposed directly on Circuit City, this claim should not be an administrative claim. Circuit City has objected to the claim being an administrative claim and objected to the claim on its underlying merits.

3. Circuit City West Coast # 99-487429 Same as #2. for Circuit City Stores, Inc. but for $2.5M).

This claim involves the same issue as issue number 2 but for a separate entity.

4. Circuit City Purchasing Company (Proof of Claim number). The amount at issue is approximately $36,000. We intend to concede this if we can reach agreement on the other 3 claims at our meeting so we do not intend to discuss this claim in any detail.

Thanks for taking the time to meet with me on Thursday, I look forward to meeting you.



**EXHIBIT**

A

5/18/2011

Peter Larsen
**AKERMAN SENTERFITT**
*50 N. Laura Street, Suite 2500*
*Jacksonville, Florida  32202*

*Telephone:  (904) 598-8602*
*Facsimile:  (904) 798-3730*
*E-mail:  peter.larsen@akerman.com (new address)*

---

**From:** Cornell, Roberta [mailto:Roberta.Cornell@boe.ca.gov]
**Sent:** Monday, March 08, 2010 7:31 PM
**To:** Larsen, Peter (Sh-Jax)
**Subject:** Circuit City

Hi Peter,
I'm the Administrator of the Bankruptcy Unit at the Board of Equalization. I understand that you are interested in discussing our claims filed in the Circuit City bankruptcy case while you are in California later this week.

I'd like to suggest a meeting to take place immediately after your meeting on the GE matter. I have a couple questions. Are you the attorney handling the Circuit City claims? If not, will an attorney be present at the meeting? Also, if you agree to meet, it would be helpful if you could provide some additional information regarding what you want to discuss i.e. bad debt, global settlement, etc.

Let me know if this will work for you and I'll set it up.

*Roberta Cornell*

State Board of Equalization
Legal Division
Investigations and Special Operations Branch (MIC 55)
Phone: (916) 445-9197  FAX: (916) 327-0615

CONFIDENTIALITY NOTICE: This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, then your reading, disseminating, copying, or distributing this email or its contents is strictly prohibited. If you received this message in error, please notify us immediately by replying to the message and deleting it from your computer.
Internet communications cannot be guaranteed to be secure or error-free since the information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. We do not accept responsibility for any errors or omissions present in this email or any attachment as a result of email transmission.

---

**From:** Reilly, Kelly
**Sent:** Monday, March 08, 2010 1:36 PM
**To:** Cornell, Roberta
**Subject:** FW: Circuit City

As discussed.  Please let me know if you and Victoria are available and we'll try to schedule a meeting for Thursday.  Thank you.

---

5/18/2011

**From:** Brammer, Larry
**Sent:** Monday, March 08, 2010 1:19 PM
**To:** Reilly, Kelly
**Subject:** FW: Circuit City

Larry Brammer, C.P.A.
Out-of-State District Administrator
Office 916-227-6682
Cell 916-716-5991

*Confidential information of the California State Board of Equalization – unauthorized use or disclosure is strictly prohibited by law. If you receive this e-mail in error, please immediately notify the Board by return e-mail and delete this message from your computer, without printing the message, and without disclosing its contents to any person other than the sender or recipient. Persons who copy or disclose such confidential information are subject to applicable legal penalties.*

---

**From:** peter.larsen@akerman.com [mailto:peter.larsen@akerman.com]
**Sent:** Monday, March 08, 2010 12:14 PM
**To:** Brammer, Larry
**Subject:** Circuit City

Larry, I will be in a meeting with you and Freda on Thursday for GE. I have another matter I was hoping to address with you while I am in town, maybe separately on Thursday? I also represent Circuit City and the State has two proofs of claim filed in its bankruptcy case, one relating to bad debt credits and one relating to another issue. I would like to discuss with you a global settlement of these claims. Do you have time to meet on Thursday to discuss this matter? Feel free to include anyone you would want. If you agree to this, I will send you background information on this so that you can be ready for the meeting. Thanks

*Peter Larsen*
***AKERMAN SENTERFITT***
*50 N. Laura Street, Suite 2500*
*Jacksonville, Florida 32202*

*Telephone: (904) 598-8602*
*Facsimile: (904) 798-3730*
*E-mail: peter.larsen@akerman.com (new address)*



www.akerman.com | Bio | V Card

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential information, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.

5/18/2011



Peter O. Larsen

Akerman Senterfitt
50 North Laura Street
Suite 2500
Jacksonville, FL 32202
Tel: 904.798.3700
Fax: 904.798.3730

Dir: 904.598.8602
peter.larsen@akerman.com

October 28, 2010

## CONFIDENTIAL
## FOR SETTLEMENT PURPOSES ONLY

Larry Brammer
California State Board of Equalization
450 N Street
Sacramento, CA 94279

**Re:    Circuit City Stores, Inc.**

Dear Larry:

As you are aware, Circuit City is a debtor in a Chapter 11 bankruptcy case pending in Richmond, Virginia. The California State Board of Equalization filed three proofs of claim in the bankruptcy case related to collected but unremitted sales tax reimbursement, Claim 13049 in the amount of $2,846,666.34, Claim 13186 in the amount of $325,605.29, and Claim 13187 in the amount of $2,525,699.69. As you are also aware, Claim 13049 was filed late and the bankruptcy court disallowed the claim on March 31, 2010. The BOE claimed administrative priority for these Claims.

Circuit City filed its bankruptcy petition on November 10, 2008. On November 24, 2008, Circuit City made a payment equal to 90% of its October 2008 tax liability. In its December 22, 2008 Order, the Bankruptcy Court prohibited Circuit City from paying pre-petition non-trust fund taxes without further leave of the Court, thus the remaining 10% of October's liability and liability for the period November 1 through 9, 2008 was not paid and constitutes the basis for the Claims. All post-petition taxes have been timely remitted to the BOE.

As a threshold matter, it is necessary to determine whether the BOE's claims will be afforded administrative priority under Section 507(a)(2) of the Bankruptcy Code (as claimed by the BOE) or treated as unsecured claims of a governmental unit under Section 507(a)(8). If the claims fall within the application of Section 507(a)(8), they will be excluded from inclusion in Section 507(a)(2). See 11 U.S.C. § 503(b)(1)(B).

Section 507(a)(8) applies to unsecured claims of governmental units for certain kinds of prepetition taxes, including excise taxes. See 11 U.S.C. § 503(a)(8)(E). An excise tax is a tax that is imposed on the performance of an act, the engaging in any occupation, or the enjoyment of a privilege.

akerman.com

{JA570479;1}



**EXHIBIT**

B

Larry Brammer
California State Board of Equalization
October 28, 2010
Page 2

---

*See New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714 (4th Cir. 1989), followed by *United States v. Unsecured Creditors' Comm. (In re C-T, Inc.)*, 977 F.2d 137 (4th Cir. 1992). It is well established that the California sales tax is an excise tax imposed upon the retailer for the "privilege of selling tangible personal property at retail." Ca. Rev. & Tax. Code, § 6051. The California sales tax is "not a tax on the sale or because of the sale but . . . an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales." *Xerox Corp. v. County of Orange*, 66 Cal. App. 3d 746, 756 (Cal. App. 4th Dist. 1977), citing *City of Pomona v. State Bd. of Equalization*, 347 P.2d 904 (1959), citing *Livingston Rock & Gravel Co. v. De Salvo*, 288 P.2d 317 (1955); *National Ice etc. Co. v. Pacific F. Exp. Co.*, 79 P.2d 380 (1938); *Graham Bros., Inc. v. Los Angeles*, 44 P.2d 452 (1935); *People v. Herbert's of Los Angeles*, Inc. 39 P.2d 829 (1935). Furthermore, in its December 22, 2008 Order, the Bankruptcy Court found that the taxes at issue in the Claims are not trust fund taxes, but are instead taxes levied directly on Circuit City as taxes on the privilege of conducting a retail business. Thus, the Claims are unsecured claims of a governmental unit under Section 507(a)(8), and are not administrative claims.

Circuit City's Amended Chapter 11 Plan proposes to pay priority tax claims in full, but over a period not to exceed five years, on a quarterly basis with interest at the federal interest on judgments rate which is currently 0.22%. General unsecured claims will be paid from a liquidating trust and will only be paid if all administrative claims, priority claims, and miscellaneous secured claims are paid. Circuit City estimates that the distribution to general unsecured creditors will be 0% to 13.5%.

Furthermore, also at issue is the bad debt sales tax refund claim filed by Circuit City for the period November 2008 through December 2009. The approximate value of this refund claim is $825,000. Circuit City is willing to discuss a global settlement of these issues with the BOE in an informal conference. Please contact me when you have time to discuss these issues.

Sincerely,

Peter O. Larsen

EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653 (KRH) |
| | ) | (Chapter 11) |
| | ) | Jointly Administered |
| Debtors. | ) | |

### AFFIDAVIT OF MARIA CARANTZAS IN SUPPORT OF LIQUIDATING TRUSTEE'S RESPONSE IN OPPOSITION TO STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION'S MOTION TO RECONSIDER

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss: |
| COUNTY OF DUVAL | ) |

MARIA CARANTZAS, being duly sworn, deposes and says:

1.      I am a shareholder of the firm Akerman Senterfitt ("Akerman"), which prior to the confirmation of the *Second Amended Plan* was employed by the debtors in the above-captioned cases (collectively, the "Debtors"), in the ordinary course of their business pursuant to the Court's *Order Granting Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105(A), 327, 330 And 331 Authorizing Debtors To Employ Professionals Utilized In The Ordinary Course Of Business*, primarily to perform tax consulting services and representation. Akerman continues to be employed by the Circuit City Stores, Inc. Liquidating Trust (the "Trust") for the same purpose, continuing Akerman's involvement in several ongoing tax matters. I am one of the Akerman attorneys responsible for providing services for the Trust, and am familiar with all of the Trust's tax related matters for which Akerman is performing services. My Akerman colleagues Pete Larsen, Tim Gillis, and I have been the primary points of contact between the Debtors, the Trust and the State of California, State Board of Equalization ("BOE").

2.      I make this Affidavit based on my personal knowledge and my review of the

books, records, and documents prepared and maintained by Akerman in the ordinary course of its business. I have become familiar with the manner and method in which Akerman maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted. I certify that all of the exhibits attached to this affidavit are true and accurate copies of the original documents. I have personal knowledge that the facts stated in this Affidavit are true. I am authorized by Akerman and the Trust to make this Affidavit.

3.    Based on my review of the bankruptcy court filings, I am aware that the State of California, State Board of Equalization ("BOE") filed the following claims against the Debtors on or before May 11, 2009, the bar date for a governmental entity to file a proof of claim:

(a)    priority claim in the amount of $36,033.68 against Circuit City Purchasing Company, LLC (Claim No. 12002);

(b)    administrative claim in the amount of $325,605.29 against Circuit City Stores, Inc. (Claim No. 13186);

(c)    administrative claim in the amount of $2,525,699.69 against Circuit City Stores West Coast, Inc. (Claim No. 13187) (Claim Nos. 12002, 13186 and 13187 shall hereinafter be referred to as the "Timely Filed Claims.")

4.    On May 15, 2009, four days after the governmental bar date, BOE filed a late filed priority claim in the amount of $2,846,666.34 for unpaid tax liability against Circuit City West Coast, Inc. (the "Disallowed Claim," together with the Timely Filed Claims, the "BOE Claims").

5.    As part of Akerman's retention, I was tasked to review and potentially resolve the

BOE Claims on behalf of the Debtors.

6.     On November 14, 2008, I provided the Debtors with a spreadsheet calculating Circuit City Stores West Coast Inc.'s California sales tax deductions for bad debt losses on taxable sales for the period of April 1, 2005 through October 31, 2008 (the "Deductions").  It is my understanding that Circuit City Stores West Coast Inc. took these Deductions on its Q4 2008 State, Local and District Sales and Use Tax Return on line 10a1.

7.     On December 1, 2009, I filed a California sales tax refund claim for bad debt losses on taxable sales for Circuit City Stores West Coast, LLC for the period of April 1, 2005 through September 30, 2009.

8.     On March 19, 2010, I  filed a second California sales tax refund claim for bad debt losses on taxable sales for Circuit City Stores West Coast, LLC for the period of October 1, 2009 through December 31, 2009 (collectively, the "Refund Claims").

9.     On March 24, 2010, I e-mailed Larry Brammer and Roberta Cornell, BOE representatives with responsibility regarding Circuit City's tax issues, some documentation that my supervising attorney at Akerman, Peter Larsen, told me the BOE requested during a March 11, 2010 face to face meeting related to the BOE Claims and the Refund Claims.  Included in the attachments to my March 24, 2010 e-mail were the following: (i) a copy of refund claims for the periods of April 1, 2005 through September 30, 2009 and October 1, 2009 through December 31, 2009, (ii) summaries of Claim No. 13186 and Claim No. 13187, and (iii) a spreadsheet calculating an annual sales tax deduction for bad debt losses on taxable sales using a high level alternative method to corroborate the Debtors entitlement to the Deductions.

10.     On May 25, 2010, I e-mailed Cindy Burba (BTSI, Technical Advisor to OH Administrator, and who reports to Larry Brammer) to follow up on the documentation that I sent

to Larry Brammer and Roberta Cornell on March 24, 2010, and to see if they had any questions about the materials or if the BOE needed additional documentation to come to a overall settlement on all issues.  In a phone conference that same day, Ms. Burba indicated that she needed the fourth quarter sales tax return for 2008, a copy of the refund claim that included Q2 2005, and the account level spreadsheet calculating the average taxable percentage used in the spreadsheet submitted to the auditor by the Debtors on or about October 1, 2009.

11.     On May 26, 2010, I e-mailed Cindy Burba the documents she requested in the May 25, 2010 phone conference.  On June 16, 2010 and July 20, 2010, I followed up with Ms. Burba by e-mail regarding the May 26th e-mail to make sure the BOE had received all the information it required from the Debtors.  Ms. Burba did not respond by e-mail to any of my e-mails until August 20, 2010.

12.     On August 19, 2010, I again e-mailed Ms. Burba to follow up on my May 26th e-mail and stated as follows:

> On May 26, 2010, we had sent you documentation to support Circuit City's bad debt sales tax credits claimed on Circuit City's Q4 2008 sales tax return. **Since that time, we learned from Circuit City's bankruptcy counsel that, on March 31, 2010, the Bankruptcy Court granted Circuit City's objection to the bankruptcy claim related to these credits.  Thus, the bankruptcy court disallowed the claim in its entirety.  Based on this ruling, it is our understanding that there is no longer a pending audit assessment with regards to these credits.** The auditor (Zoila Saquicela) who was reviewing these credits wanted to close out the reaudit and wanted to know if we had reached a resolution with the Sacramento office with regards to the credits.  We wanted to confirm with you before responding to the auditor that it is our understanding that the assessment related to these claims has been removed based on the bankruptcy court's actions.

(emphasis added).  A true and correct copy of my August 19, 2010 e-mail is attached hereto as Exhibit A.

13.     On August 20, 2010, Ms. Burba sent e-mail correspondence to Mr. Larsen and me

wherein she informed us that she forwarded my August 19th e-mail to Larry Brammer and that

Larry Brammer will discuss the issue with Irvin Cooke, BOE's auditor supervisor.

14.    On August 31, 2010, I explained in an e-mail to Zoila Saquicela, BOE's auditor

(whose supervisor is Irvin Cooke), that we were waiting to hear back from Larry Brammer

before responding to Zoila Saquicela's e-mail.  On August 31, 2010, Mr. Cooke e-mailed me

stating that "I have instructed the auditor (Zoila Saquicela)  to allow 100% of the Bad Debt

deduction in the re-audit. I spoke to Ms. Cindy Burba (BTS1) at HQ who works for Mr. Larry

Brammer." A true and correct copy of the August 31, 2010 e-mail is attached as Exhibit B.

15.    On October 8, 2010, Zoila Saquicela sent me an e-mail requesting that I forward

her any written documentation to verify whether the assessment that has been removed relates to

Circuit City Stores West., Acct. # SR OHB 99-487429.

16.    On October 11, 2010, I e-mailed Zoila Saquicela a copy of the Order Sustaining

Debtors' Sixty-Eighth Omnibus Objection To Claims (Disallowance Of Certain Late Claims)

(the "Expungement Order").  A true and correct copy of the Carantzas October 11, 2010 e-mail

is attached as Exhibit C.  That same day, Ms. Saquicela confirmed receipt of the Expungement

Order by e-mailing me to inform me that she attached the bankruptcy court's order to the reaudit

report for further review.  A true and correct copy of the Saquicela e-mail is attached as Exhibit

D.

17.    On November 10, 2010, Zoila Saquicela sent me an e-mail stating that "I want to

let you know that our bankruptcy auditor, Mr. Ken Parson is dealing with the issue of our

priority claim and has advised me at this point not to pursue the reaudit until further notice.

Therefore, no adjustments were made for the bad debts deductions claimed during 7/1/05

through 11/9/08, and I have indicated the same to our Refund Section-Petition."

18.    In all of my communications with the BOE, I have not had a single discussion about the prospect of a consensual allowance of the Disallowed Claim.  Moreover, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to deem the Disallowed Claim as timely filed.  Similarly, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to stay the time period in which the BOE would be required to reconsider the Expungement Order.

**FURTHER AFFIANT SAYETH NAUGHT.**

Maria Carantzas
Shareholder
Akerman Senterfitt
50 N. Laura Street, Suite 3100
Jacksonville, Florida  32202
Phone:  (904) 798-3700
Fax:  (904) 798-3730

STATE OF FLORIDA        )
                        ) ss:
COUNTY OF DUVAL         )

The foregoing instrument was sworn to and subscribed before me this 27th day of June, 2011 by Maria Carantzas, who is:

[X]    personally known to me; or
[ ]    produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or
[ ]    produced the following identification: _____

NOTARY PUBLIC, STATE OF FLORIDA

(Print, Type or Stamp Commissioned Name of Notary Public)

SUSAN M. SCOTT
Commission # DD 890788
Expires August 29, 2013
Bonded Thru Troy Fain Insurance 800-385-7019

## Carantzas, Maria (Sh-Jax)

**From:**    Burba, Cindy [Cindy.Burba@boe.ca.gov]
**Sent:**    Friday, August 20, 2010 2:58 PM
**To:**    Carantzas, Maria (Sh-Jax)
**Cc:**    Larsen, Peter (Sh-Jax)
**Subject:** RE: Circuit City

Marla,

I have given your question to my supervisor, Larry Brammer, and he will discuss the issue with the Auditor's supervisor next week.  Please hold off on responding to the auditor until Larry has had a chance to look into this. Thank you.

Cindy Burba, BTS I
Technical Advisor to OH Administrator
(916) 227-6677
(916) 227-6641  (fax)

---

**From:** maria.carantzas@akerman.com [mailto:maria.carantzas@akerman.com]
**Sent:** Thursday, August 19, 2010 12:09 PM
**To:** Burba, Cindy
**Cc:** peter.larsen@akerman.com
**Subject:** Circuit City

Cindy:

On May 26, 2010, we had sent you documentation to support Circuit City's bad debt sales tax credits claimed on Circuit City's Q4 2008 sales tax return. Since that time, we learned from Circuit City's bankruptcy counsel that, on March 31, 2010, the Bankruptcy Court granted Circuit City's objection to the bankruptcy claim related to these credits.  Thus, the bankruptcy court disallowed the claim in its entirety. Based on this ruling, it is our understanding that there is no longer a pending audit assessment with regards to these credits.  The auditor (Zoila Saquicela) who was reviewing these credits wanted to close out the reaudit and wanted to know if we had reached a resolution with the Sacramento office with regards to the credits.  We wanted to confirm with you before responding to the auditor that it is our understanding that the assessment related to these claims has been removed based on the bankruptcy court's actions.

Please let us know if you have any questions.

Thanks.

Maria



www.akerman.com| Bio | V Card

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential information, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

**EXHIBIT**

A

8/20/2010

CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.

Akerman Senterfitt
50 N. Laura Street
Suite 2500
Jacksonville, Florida 32202
tel: 904.598.8608
fax:  904.798.3730
maria.carantzas@akerman.com

8/20/2010

## Carantzas, Maria (Sh-Jax)

**From:**   Cooke, Irvin [Irvin.Cooke@boe.ca.gov]
**Sent:**   Tuesday, August 31, 2010 12:39 PM
**To:**   Carantzas, Maria (Sh-Jax); Saquicela, Zoila
**Subject:** RE: CCS audit write-up

Ms. Carantzas:

I have instructed the auditor (Zolia Saquicela) to allow 100% of the Bad Debt deduction in the re-audit. I spoke to Ms. Cindy Burba (BTS1) at HQ who works for Mr. Larry Brammer.

Irvin J. Cooke
**Supervising Tax Auditor**
**State of California**
**Board of Equalization**
**485 Lexington Avenue - Suite 400**
**New York, N.Y. 10017**
**Office (212) 697-4680**
**Direct (212) 551-4083**
**Cell  (917) 287-0996**
**Fax   (212) 697-5146**
**irvin.cooke@boe.ca.gov**

**From:** maria.carantzas@akerman.com [mailto:maria.carantzas@akerman.com]
**Sent:** Tuesday, August 31, 2010 12:25 PM
**To:** Saquicela, Zoila
**Cc:** Cooke, Irvin
**Subject:** RE: CCS audit write-up

I just wanted to let you know that I am waiting to hear back from Larry Brammer before responding to your email. My contact indicated that Larry would be contacting the audit supervisor this week.

**From:** Saquicela, Zoila [mailto:Zoila.Saquicela@boe.ca.gov]
**Sent:** Thursday, August 19, 2010 11:44 AM
**To:** Carantzas, Maria (Sh-Jax)
**Cc:** Cooke, Irvin
**Subject:** FW: CCS audit write-up

Good Morning Ms. Carantzas,

I want to follow up on your email dated 4/27/10.   Have you reach a resolution on the claimed bad debt deductions with Larry Brammer in Sacramento?
I have been instructed to close out the reaudit so please let me know as soon as possible.

Thank you.
Zoila

**From:** Cooke, Irvin
**Sent:** Tuesday, April 27, 2010 10:42 AM
**To:** 'maria.carantzas@akerman.com'
**Cc:** Saquicela, Zoila
**Subject:** RE: CCS audit write-up



EXHIBIT

tabbies

## Carantzas, Maria (Sh-Jax)

| | |
|---|---|
| **From:** | Carantzas, Maria (Sh-Jax) |
| **Sent:** | Monday, October 11, 2010 11:36 AM |
| **To:** | 'Saquicela, Zoila' |
| **Cc:** | Cooke, Irvin |
| **Subject:** | RE: CCS audit write-up |
| **Attachments:** | Order Sustaining Debtors' Sixty-Eighth Omnibus Objection (JA568634).PDF |

Zoila:

As requested, attached is a copy of the bankruptcy court's order granting Circuit City's objection to the State of California's claim (Claim #13049--see the ninth page of the attached document).  This claim related in part to the sales tax bad debt credit that Circuit City claimed.

Please let me know if you have any questions or need anything else.

Thanks.

Maria

---

**From:** Saquicela, Zoila [mailto:Zoila.Saquicela@boe.ca.gov]
**Sent:** Friday, October 08, 2010 1:50 PM
**To:** Carantzas, Maria (Sh-Jax)
**Cc:** Cooke, Irvin
**Subject:** FW: CCS audit write-up

Good Afternoon Ms. Carantzas,

On your email dated 8/19/10 to Cindy Burba, BTSI you indicated that the assessment related to the bad debts have been removed based on the bankruptcy court's actions.  Please forward me any written documentation to verify whether the assessment that has been removed relates to Circuit City Store Wst., Acct. # SR OHB 99-487429.

Thank you.
Zoila

---

**From:** Cooke, Irvin
**Sent:** Tuesday, August 31, 2010 12:39 PM
**To:** 'maria.carantzas@akerman.com'; Saquicela, Zoila
**Subject:** RE: CCS audit write-up

Ms. Carantzas:

I have instructed the auditor (Zolia Saquicela) to allow 100% of the Bad Debt deduction in the re-audit. I spoke to Ms. Cindy Burba (BTS1) at HQ who works for Mr. Larry Brammer.

Irvin J. Cooke
**Supervising Tax Auditor**
**State of California**
**Board of Equalization**
**485 Lexington Avenue - Suite 400**



EXHIBIT

C

## Carantzas, Maria (Sh-Jax)

| | |
|---|---|
| **From:** | Saquicela, Zoila [Zoila.Saquicela@boe.ca.gov] |
| **Sent:** | Monday, October 11, 2010 11:51 AM |
| **To:** | Carantzas, Maria (Sh-Jax) |
| **Cc:** | Cooke, Irvin |
| **Subject:** | RE: CCS audit write-up |

Good Morning Ms. Carantzas,

I reviewed the attached bankruptcy court's order, and will attach it to the reaudit report for further review.

Thank you.
Zoila

---

**From:** maria.carantzas@akerman.com [mailto:maria.carantzas@akerman.com]
**Sent:** Monday, October 11, 2010 11:36 AM
**To:** Saquicela, Zoila
**Cc:** Cooke, Irvin
**Subject:** RE: CCS audit write-up

Zoila:

As requested, attached is a copy of the bankruptcy court's order granting Circuit City's objection to the State of California's claim (Claim #13049--see the ninth page of the attached document).  This claim related in part to the sales tax bad debt credit that Circuit City claimed.

Please let me know if you have any questions or need anything else.

Thanks.

Maria

---

**From:** Saquicela, Zoila [mailto:Zoila.Saquicela@boe.ca.gov]
**Sent:** Friday, October 08, 2010 1:50 PM
**To:** Carantzas, Maria (Sh-Jax)
**Cc:** Cooke, Irvin
**Subject:** FW: CCS audit write-up

Good Afternoon Ms. Carantzas,

On your email dated 8/19/10 to Cindy Burba, BTSI you indicated that the assessment related to the bad debts have been removed based on the bankruptcy court's actions.  Please forward me any written documentation to verify whether the assessment that has been removed relates to Circuit City Store Wst., Acct. # SR OHB 99-487429.

Thank you.
Zoila

---

**From:** Cooke, Irvin
**Sent:** Tuesday, August 31, 2010 12:39 PM



**EXHIBIT E**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653 (KRH) |
| | ) | (Chapter 11) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**AFFIDAVIT OF H. TIMOTHY GILLIS IN SUPPORT OF LIQUIDATING TRUSTEE'S RESPONSE IN OPPOSITION TO STATE OF CALIFORNIA, STATE BOARD OF EQUALIZATION'S MOTION TO RECONSIDER**

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss: |
| COUNTY OF DUVAL | ) |

H. TIMOTHY GILLIS, being duly sworn, deposes and says:

1.     I am a shareholder of the firm Akerman Senterfitt ("Akerman"), which prior to the confirmation of the *Second Amended Plan* was employed by the debtors in the above-captioned cases (collectively, the "Debtors"), in the ordinary course of their business pursuant to the Court's *Order Granting Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105(A), 327, 330 And 331 Authorizing Debtors To Employ Professionals Utilized In The Ordinary Course Of Business*, primarily to perform tax consulting services and representation. Akerman continues to be employed by the Circuit City Stores, Inc. Liquidating Trust (the "Trust") for the same purpose, continuing Akerman's involvement in several ongoing tax matters. I am one of the Akerman attorney responsible for providing services for the Trust, and am familiar with all of the Trust's tax related matters for which Akerman is performing services. My Akerman colleagues Pete Larsen, Maria Carantzas, and I have been the primary points of contact between the Debtors, the Trust and the State of California, State Board of Equalization ("BOE").

2.      I make this Affidavit based on my personal knowledge and my review of the
books, records, and documents prepared and maintained by Akerman in the ordinary course of its
business. I have become familiar with the manner and method in which Akerman maintains its
books and records in its regular course of business.  Those books and records are managed by
employees and agents whose duty is to keep the books and records accurately and completely
and to record each event or item at or near the time of the event or item so noted.  I have personal
knowledge that the facts stated in this Affidavit are true.  I am authorized by Akerman and the
Trust to make this Affidavit.

3.      On and before October 28, 2010, I helped my supervising attorney at Akerman,
Peter Larsen, Esq., prepare correspondence (the "October 28[th] Letter") sent to the State of
California, State Board of Equalization (the "BOE"), wherein Mr. Larsen stated that BOE's
Claim No. 13049 (the "Disallowed Claim") was filed late and was disallowed by an Order
entered by the bankruptcy court on March 31, 2010.  I have never seen and am not aware of any
response by the BOE to the October 28th letter.

4.      I was asked by Mr. Larsen on December 7, 2010 to contact BOE in an effort to
follow up on a potential global resolution of all issues with the BOE.[1]  Accordingly, I thereafter
contacted Mr. Brammer regarding BOE's response to the October 28th Letter.  During that phone
conference in early January, 2011, I was told by Mr. Brammer that Ken Parsons was taking over
the Circuit City matter on behalf of the BOE.

5.      I then called Mr. Parsons on or about January 12, 2011, and was informed by Mr.
Parsons that Ms. Victoria Baker, an in-house attorney at the BOE, had been put in charge of the
Circuit City matter.  Accordingly, on January 12, 2011, I called Ms. Baker and told her that

---

[1]  All capitalized terms shall have the same meaning as defined in the Response unless otherwise defined herein.

Circuit City was interested in resolving all issues with the BOE. During that phone conference, I told Ms. Baker that the Disallowed Claim had been expunged. She advised me that BOE had retained Todd Duffy, Esq. to represent the BOE as its outside bankruptcy counsel to deal with the Disallowed Claim.

6.      After my conversation with Ms. Baker, I promptly contacted Mr. Duffy and was advised by Mr. Duffy that the BOE was preparing to file a motion to set aside the Bankruptcy Court's Order expunging the Disallowed Claim. I advised Mr. Duffy during that phone conference that Circuit City strongly disagreed with the argument the BOE advanced in support of setting aside the Expungement Order.

7.      In late April 2011, I contacted Mr. Duffy to outline the terms upon which Circuit City would be willing to resolve all issues with the BOE, including two refund claims that Circuit City had filed with BOE. The settlement offer included a lump sum payment for the settlement of all claims, but did not discuss any allocation among the BOE Claims.

8.      On May 19, 2011, I sent Mr. Duffy an e-mail with a formal settlement offer on behalf of the Trustee incorporating the terms of the settlement previously discussed with Mr. Duffy. The settlement offer again did not contain any allocation on account of any of the BOE Claims.

9.      In all of my communications with the BOE, I have never had a single discussion about the prospect of the consensual allowance of the Disallowed Claim. Moreover, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to deem the Disallowed Claim as timely filed. Similarly, I have never conveyed to the BOE or otherwise any agreement on behalf of either the Debtors or the Trust to stay the time period in which the BOE would be required to reconsider the Expungement Order.

**FURTHER AFFIANT SAYETH NAUGHT.**

H. Timothy Gillis
Shareholder
Akerman Senterfitt
50 N. Laura Street, Suite 3100
Jacksonville, Florida  32202
Phone:  (904) 798-3700
Fax:  (904) 798-3730


STATE OF FLORIDA            )
                           ) ss:
COUNTY OF DUVAL            )

The foregoing instrument was sworn to and subscribed before me this _2 7_ day of June, 2011, by H. Timothy Gillis, who is:

☑    personally known to me; or

☐    produced a driver's license issued by the _____ Department of Highway Safety and Motor Vehicles as identification; or

☐    produced the following identification: _____


_____
NOTARY PUBLIC, STATE OF FLORIDA

MARY BETH WIMMER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE103574
Expires 8/26/2015

_____
(Print, Type or Stamp Commissioned Name of Notary Public)

**EXHIBIT F**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:    CIRCUIT CITY STORES, INC., *et al.*, | Case No. 08-35653 |
| | Chapter 11 |
| Debtors. | Jointly Administered |

EXPORT DEVELOPMENT CANADA

        Movant,

                                                   CONTESTED MATTER

v.

CIRCUIT CITY STORES, INC.,
*et al.*,

        Respondents.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon consideration of the Motion for Allowance of the Late Filed Administrative Expense Claim of Export Development Canada ("EDC") (Docket No. 2960) (the "Motion"), the Debtors' objections thereto (Docket Nos. 3131, 3154 and 6252) (collectively, the "Objection") and EDC's replies thereto (Docket Nos. 3152, 4186 and 6264) (collectively, the "Reply"); and the Court having reviewed the Motion, the Objection, and the Reply; and the Court having conducted an evidentiary hearing on January 14, 2010 (the "Hearing"), at which the Court considered the arguments advanced by EDC and the Debtors; and upon the record herein, and after due deliberation thereon; and good and sufficient cause appearing therefore, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES THAT:**[1]

BANKRUPTCY CASE BACKGROUND

This is a Chapter 11 case filed by a national retailer. Circuit City Stores, Inc. ("Circuit City") and certain of its subsidiaries (collectively, the "Debtors")[2] filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") on November 10, 2008 (the "Petition Date"). Circuit City was a specialty retailer of consumer electronics. The Debtors have continued as debtors in possession in these jointly administered Chapter 11 cases pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors Committee"). To date, no trustee or examiner has been appointed in these Chapter 11 cases. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at the Debtors' remaining 567 store locations pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). The Agent commenced the going out of business sales pursuant to the Agency Agreement on January 17, 2009; and the going out of business sales were concluded on March 8, 2009,

On September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured

---

[1]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[2]  The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

2

Claims (the "Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the Plan is currently scheduled for March 8, 2010. Generally, the Plan provides for the liquidation of the Debtors under Chapter 11 of the Bankruptcy Code.

## JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

EDC is a provider of credit insurance to Canadian companies that export goods to companies located in the United States. EDC provided credit insurance to TechCraft Manufacturing, Inc. ("TechCraft") pursuant to which EDC insured TechCraft's prepetition sales to the Debtors.

## THE BAR DATE FOR FILING 503(b)(9) CLAIMS

On November 12, 2008, the Court entered an Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107) (the "503(b)(9) Bar Date Order"). The 503(b)(9) Bar Date Order approved the form and substance of the 503(b)(9) bar date notice.[3] The 503(b)(9) Bar Date Order and 503(b)(9) Bar Date Notice established December 19, 2008 as the bar date for

---

[3] The 503(b)(9) Bar Date Notice was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice").

3

filing proofs of claim asserting administrative priority under § 503(b)(9) of the Bankruptcy Code

(the "503(b)(9) Bar Date"). The 503(b)(9) Bar Date Order provided in relevant part:

> 4. The Section 503(b)(9) Bar Date Notice shall be mailed by first class mail, postage prepaid to the Debtors' vendors and suppliers of goods. . . .
>
> 5. The Debtors are permitted, but not required, to publish notice of the Section 503(b)(9) Bar Date as set forth in the Motion.
>
> . . .
>
> 7. Any holder of a Section 503(b)(9) Claim that fails to file a Section 503(b)(9) Claim Request or a Section 503(b)(9) Motion by the Section 503(b)(9) Bar Date and in accordance with the procedure set forth in this Order is forever barred, estopped and permanently enjoined from asserting its Section 503(b)(9) Claim against the Debtors, their estates, or the property of any of them, and such holder shall not be entitled to receive any distribution in these bankruptcy cases on account of such Section 503(b)(9) Claim or receive further notices regarding such Section 503(b)(9) Claim, absent further order of this Court.
>
> . . .
>
> 12. Any Section 503(b)(9) Claim Request or Section 503(b)(9) Motion that is not timely filed and served in accordance with this Order on or before the Section 503(b)(9) Bar Date, so as to be actually RECEIVED by the deadline and in the manner set forth herein, shall be disallowed, and the holder of such Section 503(b)(9) Claim shall be forever barred, estopped, and permanently enjoined from asserting such Section 503(b)(9) Claim against the Debtors, their estates, or the property of any of them, and such holder shall not be entitled to receive any distribution in these bankruptcy cases on account of such Section 503(b)(9) Claim or receive further notices regarding such Section 503(b)(9) Claim, absent further order of this Court.

503(b)(9) Bar Date Order, pp. 3-4, 7.

The 503(b)(9) Bar Date Notice provided in relevant part:

> CONSEQUENCES OF FAILURE TO FILE SECTION 503(b)(9) CLAIM REQUEST
>
> ANY PERSON OR ENTITY HOLDING A SECTION 503(b)(9) CLAIM THAT FAILS TO FILE A SECTION 503(b)(9) CLAIM REQUEST ON OR BEFORE THE BAR DATE[4] SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING A SECTION 503(b)(9) CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR THE PROPERTY OF ANY OF THEM, ABSENT FURTHER ORDER OF THE COURT.

---

[4] The 503(b)(9) Bar Date Notice also provided notice that the 503(b)(9) Bar Date was 5:00 p.m., Pacific Time, on December 19, 2008.

Bar Date Notice, p. 5.

On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these Chapter 11 cases in accordance with 28 U.S.C. § 156(c). On or before November 19, 2008, TechCraft was served with a copy of the 503(b)(9) Bar Date Notice and a 503(b)(9) Claim Request Form (together, the "Bar Date Notice"). *See* Affidavit of Service of KCC (Docket No. 358).[5] In addition, the Debtors published the 503(b)(9) Bar Date Notice in The New York Times (Docket No. 549), The Wall Street Journal (Docket No. 548) and The Richmond Times-Dispatch (Docket No. 547).[6] By no later than December 11, 2008, TechCraft had actually received a copy of the Bar Date Notice. The Debtors did not serve EDC with a copy of the Bar Date Notice because EDC was not a known or reasonably ascertainable creditor and the Debtors had not conducted any business nor had any contact with EDC prior to the Petition Date.

On December 11, 2008, eight days prior to the 503(b)(9) Bar Date, TechCraft forwarded a copy of the Bar Date Notice to EDC by electronic mail (the "TechCraft E-mail"). EDC does not dispute receiving the Bar Date Notice from TechCraft. Upon receipt, EDC uploaded the Bar Date Notice onto its computer system. Both the 503(b)(9) Bar Date Notice and 503(b)(9) Claim Request Form conspicuously included the 503(b)(9) Bar Date in more than one location. Thus, both TechCraft and EDC had actual notice of the deadline prior to the 503(b)(9) Bar Date.

---

[5] The Court may take judicial notice of filings and pleadings in the underlying Chapter 11 cases. *See Pathnet, Inc. v. Nortel Networks, Inc. (In re Pathnet, Inc.)*, 2002 Bankr. LEXIS 1262, at *7 (Bankr. E.D. Va. Aug. 14, 2002) (finding that a court is entitled to take judicial notice of pleadings); *Fletcher v. U.S.*, 174 F.2d 373, 376 (4th Cir. 1949) ("Certainly a judge may take cognizance of the records of his own court."), *cert. denied* 338 U.S. 851 (1948).

[6] The 503(b)(9) Bar Date also was clearly identified and posted by KCC on its website at www.kccllc.net/circuitcity (the "KCC Website") under the section of the KCC Website entitled "Important Dates, Deadlines & Documents" on November 13, 2008. The items on the "Important Dates, Deadlines & Documents" section appear in chronological order and the 503(b)(9) Bar Date is the fourth item on the list. Additionally, on November 13, 2008, a link to the 503(b)(9) Bar Date Notice was posted next to the 503(b)(9) Bar Date in the "Important Dates, Deadlines & Documents" section of the KCC Website. Further, on November 19, 2008, a link to the 503(b)(9) proof of claim form was posted next to the 503(b)(9) Bar Date in the "Important Dates, Deadlines & Documents" section of the KCC Website and at the top of the KCC Website under the heading "503(b)(9) Proof Of Claim Form."

Due process requires that the notice of the applicable bar date be "reasonably calculated, under the circumstances, to apprise an interested party of the pendency of the action." *In re Snug Enters., Inc.*, 169 B.R. 31, 33 (Bankr. E.D. Va. 1994). In the Debtors' cases, sufficient notice was given such that due process rights were met. Moreover, there is no doubt that TechCraft and EDC received the Bar Date Notice and that both TechCraft and EDC had actual knowledge of the 503(b)(9) Bar Date well in advance of its expiration.

THE LATE FILED CLAIM

Prior to the 503(b)(9) Bar Date, TechCraft filed an application for payment of its claim against the Debtors with EDC (the "Application for Payment"). EDC's claims unit processed TechCraft's Application for Payment. EDC ultimately paid TechCraft an agreed upon percentage of its claim. The Application for Payment included a notation in the risk category portion of the form that Circuit City had filed for bankruptcy on November 10, 2008. Because the Application for Payment involved a bankruptcy case, EDC's claims department immediately notified its recovery unit and the person responsible for handling all bankruptcy matters on behalf of EDC (the "EDC Representative") about the Application for Payment.

In the TechCraft E-mail, TechCraft offered to assist EDC in connection with the 503(b)(9) Bar Date Notice and 503(b)(9) Claim Request Form. EDC did not respond to TechCraft's offer of assistance. While EDC's claims unit notified its recovery unit about the Application for Payment and about the related Circuit City bankruptcy case, it failed to notify the EDC recovery unit or the EDC Representative that EDC had received the Bar Date Notice. The EDC Representative had full access to EDC's computer system. The uploaded information available on EDC's computer system clearly set forth the 503(b)(9) Bar Date and included the provided

claim form. However, the EDC Representative did not review the information that had been uploaded onto EDC's computer system by the claims unit.

Prior to the 503(b)(9) Bar Date, the EDC Representative had been directed by counsel for the Debtors to consult the KCC Website, which contained information about the 503(b)(9) Bar Date and the claim form.[7] The EDC Representative testified that she did in fact visit the KCC Website as she had been directed by Debtors' counsel. The EDC Representative testified further that Circuit City was her first bankruptcy case involving section 503(b)(9) of the Bankruptcy Code and that she was not familiar with that provision of the Bankruptcy Code at the time she visited the KCC Website. Accordingly, the EDC Representative did not appreciate the significance of the information with which she was provided on the KCC Website pertaining to the 503(b)(9) Bar Date.

Neither TechCraft nor EDC timely filed a 503(b)(9) claim against Debtors. Although EDC could have requested that TechCraft file a claim, including a 503(b)(9) claim, EDC did not choose to do so. After EDC paid TechCraft, TechCraft assigned its claim to EDC. Thereafter, EDC filed a 503(b)(9) administrative expense claim on January 28, 2009 – forty (40) days after the 503(b)(9) Bar Date had expired.

---

[7] The Court rejects EDC's contention that its failure to timely file its 503(b)(9) claim was somehow the result of communications it had with counsel for the Debtors. Counsel for debtors have no duty to respond to creditor inquires regarding filing deadlines. *See In re Jackson,* 98 B.R. 738, 741 (Bankr. D. Md. 1986) (stating that debtor's counsel is under no duty to respond to creditor inquiries regarding filing deadlines); *see also In re First Software Corp.,* 97 B.R. 711, 719 (Bankr. D. Mass. 1988) (affirming the bankruptcy court's rejection of claimant's motion to extend time for filing and stating that debtor's counsel was under no duty to make the claimant aware of the filing deadline). But even if some duty on the part of Debtors' counsel did exist (which the Court concludes it did not), the e-mail exchange between Debtors' counsel and EDC was not in any way misleading. Rather, it was both informative and helpful in directing EDC to the KCC Website, which conspicuously contained the 503(b)(9) Bar Date and related notices and forms. Debtors' counsel's did not contribute in any way to EDC's neglect, and no actions of Debtors' counsel excuse EDC for its failure to timely file a 503(b)(9) claim.

## EDC FAILED TO ESTABLISH EXCUSABLE NEGLECT

Bankruptcy Rule 3003(c) provides that "the court shall fix [in a Chapter 11 case] and for cause shown may extend the time within which proofs of claim . . . may be filed." Fed. R. Bankr. P. 3003(c)(3). With respect to claims entitled to administrative priority, § 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(b). In addition, if the request for an extension under Bankruptcy Rule 3003(c)(3) or § 503(b) is made after the expiration of the bar date, a claimant must establish not only "cause," but also that "the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b).

"The requirement of a Bar Date in Chapter 11 enables the debtor . . . to establish the universe of claims with which it must deal and the amount of those claims." *In re A.H. Robins Co.,* 129 B.R. 457, 459 (Bankr. E.D. Va. 1991). As Bar Dates in Chapter 11 bankruptcy cases serve such a very important purpose, courts do not allow claims filed by creditors after the bar date, absent special circumstances. *See In re Provident Hosp., Inc.,* 122 B.R. 683, 685 (D. Md. 1990), *aff'd,* 943 F.2d 49 (4th Cir. 1991) (unpublished opinion) ("Because [the claimant] did not timely file his bankruptcy claim after having been given constitutionally sufficient notice, his claim is barred under well-settled authority, 11 U.S.C. 1141(d) and Bankruptcy Rule 3003(c)(2).").[8]

---

[8]  The necessity for the establishment of a bar date can no better be illustrated than by the Debtors' upcoming confirmation hearing. The Debtors must, as a condition for confirmation of their proposed Plan, be able to demonstrate their ability to pay, on the effective date, all of their administrative expenses. *See* 11 U.S.C. § 1129(a)(9). Accordingly, it is imperative that the Debtors know, at this point in their cases, the extent of those asserted expenses.

It is not uncommon for courts to disallow a proof of claim filed just a few days after a filing deadline. *See Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (refusing to enlarge the period for filing a notice of appeal when the litigant mailed the notice three days prior to the expiration of the deadline but the notice did not arrive until three days after the expiration of the deadline). *See also In re Dishman*, 257 B.R. 780 781-83 (Bankr. E.D. Va. 2000) (refusing to enlarge time for filing of complaint where complaint was filed two days late due to a delay in mail delivery caused by inclement weather); *Avnet, Inc. v. Maxwell*, 2006 U.S. Dist. LEXIS 39425 (N.D. Ill. May 25, 2006) (refusing to accept late filed proof of claim where claim was faxed to claims agent on bar date and delivered by courier to claims agent one day after the bar date); *In re Yankee Distrib. Co.*, 53 B.R. 222, 223-24 (Bankr. D. Vt. 1985) (motion to allow late proof of claim was denied where proof of claim arrived one day after the bar date).

As the claimant seeking to file a combined proof of claim and request for payment of that claim as administrative expense after the court-ordered 503(b)(9) Bar Date, EDC bears the burden of proving excusable neglect. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005); *see also Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) ("'[T]he burden of demonstrating excusability lies with the party seeking the extension . . .'") (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)); *see generally In re Circuit City Stores, Inc.*, 2010 WL 56076, at *5 (Bankr. E.D. Va. Jan. 6, 2010) ("If a 'creditor' wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501 [and Bankruptcy Rule 3003], second, have the claim allowed under § 502, and then, third, request administrative expense priority under § 503(a).").

The Supreme Court has established a two-part test to determine whether a claimant's failure to act in accordance with the filing deadline was due to "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship*, 507 U.S. 380, 395 (1993). Under the *Pioneer* framework, a court must first determine whether the claimant's failure to file in a timely manner was the result of neglect. *See id.* at 394; *see also Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761, 765 (Bankr. E.D. Va. 1993) (holding that the Supreme Court had established a two-part inquiry for determining whether a party's failure to act was due to "excusable neglect," the first question being whether the failure to act was due to neglect).

The Court finds that EDC's failure to timely file its claim was the result of its neglect. Neglect encompasses inaction caused by "inadvertence, mistake, or carelessness." *Pioneer*, 507 U.S. at 388. EDC timely received notice of the bar date deadline established in these cases, but, nevertheless, failed to timely file its claim.

The Court must next determine whether EDC's failure to timely file its 503(b)(9) claim was excusable. *See Pioneer*, 507 U.S. at 395. In *Pioneer*, the Supreme Court held that the determination of whether the claimant's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* In this regard, the Supreme Court set forth four factors to be considered when considering a motion to allow a late-filed proof of claim under Rule 9006(b). Those factors include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the claimant; and (4) whether the claimant acted in good faith. *Id.*

The "excusable neglect" standard is not an easy one to satisfy. *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) ("'[E]xcusable neglect' is not easily

10

demonstrated, nor was it intended to be."); *see also In re Best Products Co.*, 140 B.R. 353, 359 (S.D.N.Y. 1992) (characterizing the bar date as a court-imposed statute of limitation that is "peremptory"). As the Supreme Court discussed in *Pioneer*, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" 507 U.S. at 392; *see also Thompson*, 76 F.3d at 534; *In re Best Products Co., Inc.*, 140 B.R. at 358 ("Except when a known creditor is not listed on the schedules and hence fails to receive notice of the filing deadline, the bar date is strictly enforced.") (citing *Wright v. Placid Oil Co.*, 107 B.R. 104, 106 (N.D. Tex. 1989)). "[E]ven upon a showing of 'excusable neglect,' whether to grant an enlargement of time still remains committed to the discretion of the district court." *Thompson*, 76 F.3d at 532 n.2.

"The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file." *Thompson*, 76 F.3d at 534. "[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[] [sic] case, the reason-for-delay factor will always be critical to the inquiry." *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005) (quoting *Graphic Commc'ns. Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001)); *see also Pioneer*, 507 U.S. at 395 (stating that it is also significant whether or not the reason for the failure to file was "within the reasonable control of the movant").

Administrative failure on the part of the claimant is insufficient to warrant a finding of "excusable neglect." *See Thompson*, 76 F.3d at 534 ("[A] mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing. . . .") (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985)); *see also In re*

11

*Century Brass Products, Inc.*, 72 B.R. 68, 70 (Bankr. D. Conn. 1987) (holding that a "[d]elay resulting from a breakdown in creditor's internal procedures . . . does not constitute excusable neglect within the meaning of Rule 9006(b)(2)" of the Federal Rules of Bankruptcy Procedure); *see also In re Figueroa*, 33 B.R. 298, 303 (Bankr. S.D.N.Y. 1983) (holding that courts generally refuse to grant relief when late filing is caused by internal breakdowns because a finding that a breakdown in internal procedures caused the noncompliance shows that the events were not beyond the control of the creditor). "Similarly, preoccupation or an excessive workload does not typically render a mistake excusable." *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005) (citing *Pioneer*, 507 U.S. at 398 (noting that "we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.")); *see also In re Wilmoth*, 412 B.R. 791, 798-800 (Bankr. E.D. Va. 2009).

The Court concludes that EDC's neglect was not excusable. Neither EDC's lack of understanding of § 503(b)(9) of the Bankruptcy Code nor its administrative failure to act on the Bar Date Notice when EDC received notice of it constitutes excusable neglect. The Court finds that EDC's failure to timely file its 503(b)(9) claim was the result of a breakdown in the internal procedures of EDC. For the foregoing reasons, the Court will disallow the late filed 503(b)(9) Claim filed by EDC.

A separate order shall be issued.

ENTERED:    February 4, 2010

_____ /s/ Kevin R. Huennekens _____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 2/4/2010



1 of 59 DOCUMENTS

In Re: WINN-DIXIE STORES, INC., Debtor. IRT PARTNERS, L.P., EQUITY ONE HUNTER'S CREEK, Plaintiffs-Appellants, Cross-Appellees, versus WINN-DIXIE STORES, INC., Defendant-Appellee, Cross-Appellant.

No. 09-12237

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

639 F.3d 1053; 2011 U.S. App. LEXIS 8896; 54 Bankr. Ct. Dec. 166; 22 Fla. L. Weekly Fed. C 2019

April 29, 2011, Decided
April 29, 2011, Filed

**PRIOR HISTORY:** [*1]
Appeals from the United States District Court for the Middle District of Florida. D.C. Docket No. 08-00391-CV-J-12, BKCY No. 05-03817-3F1.
IRT Partners, L.P. v. Winn-Dixie Stores, Inc. (In re Winn-Dixie Stores, Inc.), 414 B.R. 764, 2009 U.S. Dist. LEXIS 30681 (M.D. Fla., 2009)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For IRT Partners, L.P., Appellant: Elliot B. Kula, Kula & Samson, LLP, AVENTURA, FL.

For Equity One Hunter's Creek, Appellant: Elliot B. Kula, Kula & Samson, LLP, AVENTURA, FL; Mark D. Bloom, Elliot H. Scherker, Greenberg, Traurig, P.A., MIAMI, FL.

For Winn-Dixie Stores, Inc., Appellee: Stephen D. Busey, Smith, Hulsey & Busey, JACKSONVILLE, FL; Beau Bowin, Smith Hulsey & Busey, JACKSONVILLE, FL.

**JUDGES:** Before EDMONDSON, HILL and ALARCON, ' Circuit Judges.

* Honorable Arthur L. Alarcon, United State Circuit Judge for the Ninth Circuit, sitting by designation.

**OPINION BY:** HILL

**OPINION**

HILL, Circuit Judge:

Appellants, IRT Partners, L.P. and Equity One, Inc., appeal the district court's order affirming the bankruptcy court's decision to sustain the debtor's, Winn-Dixie Stores, Inc., objections to appellants' attempt to amend their claims post-confirmation of the debtor's reorganization plan. [1] For the following reasons, we affirm the district court's order.

1   Winn-Dixie Stores, Inc., filed a cross-appeal contingent on our reversing the district court. Because we affirm the district [*2] court's decision, we do not address the cross-appeal.

I.

This appeal arises out of a Chapter 11 proceeding commenced by Winn-Dixie Stores, Inc. ("Winn-Dixie"), in 2005. During the course of the proceedings, the bankruptcy court authorized Winn-Dixie to reject its leases with both appellants. After Winn-Dixie sent notices of rejection to appellants, each filed a proof of claim with the bankruptcy court on September 14 and October 31, 2005 respectively. [2] Winn-Dixie objected to these claims.

2   Although appellants filed a motion to extend the rejection claims bar date to November 15, 2005, no hearing was sought and no ruling was made.

639 F.3d 1053; 2011 U.S. App. LEXIS 8896, *;
54 Bankr. Ct. Dec. 166; 22 Fla. L. Weekly Fed. C 2019

The bankruptcy court ruled on Winn-Dixie's objections, reducing appellants' original claims and disallowing any amounts exceeding the reduced claims, without objection, appearance, or appeal by appellants.

After notice to all interested parties, and without objection by either appellant, on November 9, 2006, the bankruptcy court entered an order confirming Winn-Dixie's reorganization plan, which provided that unsecured claims would be paid by distribution of new common stock issued by Winn-Dixie. On December 22, 2006, and January 9, 2007, Winn-Dixie distributed and [*3] appellants accepted these shares of stock in satisfaction of their reduced original claims.

On January 5, 2007, each appellant filed an Amended Proof of Claim, which included the reduced original claim amount and additional claims for rejection damages. IRT Partners, L.P.'s original claim was for $20,364.24, reduced to $11,636.71, and its amended claim was for $185,244.67. Equity One, Inc.'s original claim was for $87,498.59, reduced to $16,913.96, and its amended claim was for $878,478.41. Winn-Dixie filed objections to the attempt to amend the reduced claims and the bankruptcy court sustained these objections, disallowing the amended claims.

II.

In considering Winn-Dixie's objections to appellants' attempts to amend their claims, the bankruptcy court framed the issue as whether the doctrine of *res judicata* barred the amended claims, and held that it did. On appeal to the district court, appellants argued that this framing of the issue was a mistake of law, and that the correct legal question was under what conditions amendments to claims should be allowed under *In re International Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985). Appellants argued that the bankruptcy court's failure to [*4] apply *International Horizons*' five-pronged test for determining when a bankruptcy claim may be amended was reversible error.

The district court, however, agreed with the bankruptcy court that the legal issue on appeal was the *res judicata* effect of Winn-Dixie's confirmed reorganization plan. We agree. The question in this case is not when a claim may be amended in the general case - for which *International Horizons* provides a test - but rather whether a confirmed reorganization plan precludes subsequent efforts to amend prior claims - an issue not addressed by *International Horizons* because it did not involve an attempt to amend a claim *post-confirmation*.

Whether Winn-Dixie's confirmed reorganization plan is entitled to the preclusive effect of res judicata is the threshold issue in this case. If Winn-Dixie's reorganization plan is not entitled to *res judicata* effect, then *In-*

*ternational Horizons* might provide the applicable test for whether appellants' proposed amendments are permissible in this case. But the first question we must resolve is whether Winn-Dixie's reorganization plan is entitled to *res judicata* and precludes subsequent amendment of claims.

Section 4.3(g) of Winn-Dixie's [*5] reorganization plan provides that distributions of its reorganized common stock were intended to be "in *full satisfaction, settlement, release, and discharge of* and in exchange of" allowed claims (emphasis added). Section 12.13 of the plan also provides that:

> [A]ll consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtors . . . not limited to . . . debts of the kind specified in Section 502 of the Bankruptcy Code [which includes rejection damages] . . . [and] *all Persons shall be precluded from asserting against the Debtors . . . any other or further claims, debts, rights, . . . based upon any act, omission, transaction, occurrence or other activity of any nature that occurred prior to the Effective Date [of the Reorganization Plan]* . . . (emphasis added)

This language makes clear that, upon confirmation, the reorganization plan was intended to satisfy all claims - including those for rejection damages - and that appellants would be "precluded from asserting against the Debtors . . . any other or further claims" based on "any omission" that "occurred prior [*6] to the Effective Date of the [Plan]." It is clear that the plan undertook to extinguish all claims, substituting for them a new contractual relationship between Winn-Dixie and its creditors, defined by the terms of the plan itself. The only question is whether the law permits such a result.

At least one circuit has held that it does. In *Holstein v. Brill*, 987 F.2d 1268 (7 Cir. 1993), the Seventh th Circuit held that confirmation of a reorganization plan is equivalent to a final judgment in an ordinary civil action, which extinguishes the claim and substitutes for it a judgment, which defines the new obligations of the parties. The effect of the confirmation of the plan, the Seventh Circuit wrote, is that "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." *Id.* at 1270. As a result, reasoned the court, *res judicata* should preclude post-confirmation amendments absent some "compelling reason." *Id.*

639 F.3d 1053; 2011 U.S. App. LEXIS 8896, *;
54 Bankr. Ct. Dec. 166; 22 Fla. L. Weekly Fed. C 2019

We agree with this reasoning and result. Although amendment should be freely granted prior to confirmation - under the guidance of *International Horizons* - amendment of a creditor's claim after confirmation of a plan can render a plan infeasible [*7] or alter the distribution to other creditors. Therefore, we hold that post-confirmation amendment - while not prohibited - is not favored, and only the most compelling circumstances justify it. In the absence of such compelling reasons, a confirmed reorganization plan should be accorded *res judicata* effect on a creditor's subsequent attempt to amend his claim.

Therefore, confirmation of the Winn-Dixie reorganization plan precludes appellants' post-confirmation attempt to amend their claims unless there are compelling circumstances that militate in favor of the amendments. We find none.

Appellants attempted to amend their claims after they had been reduced by the Bankruptcy Court *without objection* or appeal by them, and after Winn-Dixie's reorganization plan had been confirmed *without objection* by them. The reorganization plan language explicitly sets forth that acceptance of the new common stock constitutes full satisfaction of a claim. Appellants accepted this stock *without objection*. We find nothing in these facts that compels us to permit appellants to object belatedly and amend their claims.

Appellants argue that their original claims contained language reserving the right to amend [*8] and supplement those claims. But such language cannot, as a matter of law, be construed to protect in *perpetuity* appellants' right to amend their claims. Such a construction of this language would truly render illusory all finality achieved by a reorganization plan. We decline to give so broad an interpretation to appellants' purported reservation of rights.

Appellants were in sole possession of the information regarding the amount of their claims and the record reveals no reason for delay in amending those claims. [3] Although appellants assert that they had to mitigate their damages and so did not know for some time how much lost rent to claim, they state in their brief on appeal that such efforts were "concluded in late 2006." Nevertheless, they allowed, without objection, the plan to be confirmed on November 9, 2006, and, without objection, their initial claims to be reduced on November 30, 2006. It was not until two months later, on January 5, 2007, that they filed their amended claims. Such tardiness cannot be excused in this case.

> 3    It is for this reason that we find *In re Telephone Co.*, 308 B.R. 579 (Bankr. M.D. Fla. 2004) inapposite. In that case, the IRS was permitted a post-confirmation [*9] amendment of its claim because it provided adequate notice to the bankruptcy court that the examination of the claim amount was pending and that the debtor was not cooperative, thus producing delay.

We can find no compelling reason that would support amendment of appellants' claims that have been precluded by the *res judicata* effect of Winn- Dixie's confirmed plan. Accordingly, the judgment of the district court upholding the bankruptcy court's decision to sustain Winn-Dixie's objections to amendment of appellants' claims is hereby

AFFIRMED.



LexisNexis®

FOCUS - 23 of 26 DOCUMENTS

**In re: US AIRWAYS, INC., et al. Debtors**

**Case No. 04-13819-SSM, Chapter 11 (Jointly Administered)**

**UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION**

**2005 Bankr. LEXIS 2828**

**December 29, 2005, Decided**
**December 29, 2005, Entered on Docket**

**JUDGES:** [*1] Stephen S. Mitchell, United States Bankruptcy Judge

**OPINION BY:** Stephen S. Mitchell

**OPINION**

**MEMORANDUM OPINION AND ORDER DISALLOWING CLAIMS NO. 5207 AND 5208 FILED BY TIMOTHY C. ALEXANDER**

Before the court is the objection of Timothy C. Alexander to the motion of the reorganized debtors for an order disallowing late-filed claims, including two that Mr. Alexander filed in the total amount of approximately $ 9.7 million. A hearing was held on December 15, 2005, at which Mr. Alexander participated by telephone and represented himself. By separate order, the court granted the debtors' motion with respect to most of the claims but took the matter of Mr. Alexander's claim under advisement. After reviewing the arguments of the parties, the court concludes that the debtor is entitled to an order disallowing Mr. Alexander's claims on the ground that they were filed after the claims bar date.

Background

Mr. Alexander was employed for several years as a pilot by Piedmont Airlines, Inc. ("Piedmont"). On September 12, 2004, Piedmont, together with its parent holding company, US Airways Group, Inc., and three affiliates (including the lead debtor, US Airways, Inc.), filed voluntary petitions in [*2] this court for reorganization under chapter 11 of the Bankruptcy Code. The cases were jointly administered. The court entered an order on September 15, 2004, establishing a claims bar date of February 3, 2005, for creditors other than governmental units. Notice of the bar date was included in the notice of commencement of the case as well as in a separate notice of claims bar date. The bar date order required that actual notice by mail be provided to all persons known to have claims against the debtor. Additionally, the court directed the debtors to give notice to all unknown creditors by publication in *The New York Times* (national edition), *The Wall Street Journal* (national and European editions), and *USA Today* (worldwide).

The debtor represents that Mr. Alexander was mailed a copy of the notice of commencement of the case but concedes he was not sent the separate notice of claims bar date. Mr. Alexander for his part represents that he was not aware of the chapter 11 filing and did not learn of it until late May 2005. In any event, his two claims (Claim No. 5207 for $ 7,503,670.00 and Claim No. 5208 for $ 2,163,422.00), were filed on July 7, 2005 (approximately five months [*3] after the claims bar date). The $ 2.2 million claim states as its basis, "Federal Discrimination Claims, ADA and Title VII," while the $ 7.5 million claim states, "Federal Employment discrimination, HIPPA & PRIA Claims & State Tort Claims."

Mr. Alexander represents that he was hired by Piedmont as a pilot in 1998. In his lawsuit, he alleges that in early 2003 he was placed on disability leave for approximately three months. After being released to return to work, he elected to take leave under the Family Medical Leave Act, beginning April 11, 2003, due to the birth of his first child. While on family medical leave, he received a job offer with another airline, Air Tran Airways, Inc. ("Air Tran"). He accepted the Air Tran offer

and submitted a resignation to US Airways. Air Tran, however, terminated his employment after approximately a month. Mr. Alexander alleges that Air Tran did so based on what Mr. Alexander says was private and derogatory information that Piedmont provided to Air Tran. In his declaration, Mr. Alexander states that he brought an Equal Employment Opportunity Commission (EEOC) complaint against Piedmont in 2003 and received a right to sue letter. However, the copy [*4] of the EEOC Determination dated July 22, 2004, that he supplied clearly shows Air Tran, not Piedmont, as the respondent. The right-to-sue letter dated May 31, 2005, does not list a respondent at all, although it contains a "cc:" notation that a copy was provided to Piedmont Airlines.

In any event, on May 4, 2005, Mr. Alexander filed suit against AirTran, Piedmont, and two Piedmont employees in the United States District Court for the Northern District of Georgia for injunctive relief and monetary damages for alleged violations of the Rehabilitation Act, Family Medical Leave Act, 49 U.S.C. § 44703, and "HIPPA," [1] as well as for state law torts of invasion of privacy, tortious interference with contractual rights and business opportunities, and intentional infliction of emotional distress. In response, the debtor filed a suggestion in bankruptcy on May 24, 2005. Mr. Alexander then filed the two proofs of claim that are at issue, sending copies to the designated claims agent by certified mail. The proofs of claim are dated June 29, 2005, although the cover letter is dated June 31, 2005. The claims were stamped by the claims agent as received on July 7, 2005. [*5]

> 1 More correctly, HIPAA, which is the common abbreviation for the Health Insurance Portability and Accounting Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936. The act is codified in several titles of the United States Code, but the medical record privacy provisions on which Mr. Alexander appears to rely are set forth at 42 U.S.C. § 1320d *et seq.*

A joint plan of reorganization for all the debtors, including Piedmont, was confirmed on September 16, 2005. On November 15, 2005, the debtors filed a motion asking the court to confirm the disallowance of late filed proofs of claims, including the two proofs of claim filed by Mr. Alexander. Mr. Alexander objected to the motion on the ground that he had received "no notification of the bankruptcy and the bar date prior to the deadline."

Discussion

This court recently had occasion to explore the issue of late-filed claims in connection with a motion brought by another creditor in this same case. [*6] *In re US Airways, Inc.,* 2005 Bankr. LEXIS 2696, No. 04-13819-

SSM (Bankr. E.D.Va., November 21, 2005), *available at* http://www.vaeb.uscourts.gov/opinions/ssm/usairways%2004-13819%2011-21-2005.pdf. As explained in that opinion:

> Except for certain scheduled claims that are "deemed" filed, a creditor must file a proof of claim by the claims bar date in order to receive a distribution in a chapter 11 case. Fed.R.Bankr.P. 3002(c). This is subject to two qualifications. First, the creditor must have been provided with constitutionally adequate notice of the claims bar date. *City of New York v. N.Y, New Haven & Hartford R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). And second, even when notice is adequate, the court may allow a late proof of claim upon a proper showing of excusable neglect. *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

2005 Bankr. LEXIS 2696 at *6-7. The question before the court, therefore, is whether Mr. Alexander received constitutionally adequate notice of the bar date, and, even if he did, whether a late filing should nevertheless be allowed based on excusable neglect.

I.

[*7] With respect to the issue of notice, due process requires that a known creditor be provided with actual notice of all important steps in a bankruptcy case. A "known" creditor is a party whose claim is sufficiently choate and grounded in fact and law that it necessarily must be removed from the realm of mere speculation and conjecture. To have a known claim -- at least in those circumstances in which the existence of a claim would not otherwise be obvious from the surrounding circumstances -- a creditor must generally provide the debtor with some communication that reasonably apprises the debtor of the basis for the claim and the creditor's intent to hold the debtor liable for it. A creditor who does not meet this test is not considered a "known" creditor and may be given constructive notice of the claims bar date by, for example, newspaper publication. 2005 Bankr. LEXIS 2696, at 10-11.

The court is unable to conclude that Mr. Alexander was a known creditor of US Airways at the time notice of the claims bar date was give. At the outset, there is considerable ambiguity, to say the least, as to exactly what EEOC claims were made and when they were made. On its face, the EEOC Determination of July 22,

2005 Bankr. LEXIS 2828, *

2004, that [*8] Mr. Alexander was discriminated against under the Americans with Disabilities Act was made in a proceeding in which Air Tran, not Piedmont, was the respondent. It is impossible to tell from the Notice of Right to Sue who the respondent is or what claims were asserted before the EEOC. Since the "Charge Number" referred to in the Determination is different from that in the Notice of Right to Sue,[2] it may well be that the two documents relate to different respondents. Given the "2004" in the Charge Number, the court would assume the charge was brought in that year. Without more, however, the court has no basis for determining whether the charge was brought before or after the chapter 11 filing in September 2004 or what stage the charge was at when the chapter 11 petition was filed. Since the Northern District of Georgia lawsuit was filed *before* the Notice of Right to Sue was issued, the court can only conclude that the claims raised in the lawsuit are somehow different from those referenced in the notice. The bottom line is that Mr. Alexander has not established that he had clearly asserted claims against Piedmont at the time the chapter 11 petition was filed. As this court noted [*9] in its prior opinion, the Constitution does not place upon the shoulders of the debtor the onerous task of broadly speculating as to the identity and theory of recovery of each conceivable or possible creditor. *Id.* (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)).

> 2  The Determination refers to Charge Number 110-2004-01032, while the Notice of Right to Sue refers to Charge Number 110-2004-02790.

After concluding that Mr. Alexander was an unknown creditor, the court must next determine whether Mr. Alexander was provided at least constructive notice of the February 3, 2005, bar date. In the present case, the debtors published notice of the bar date in *The Wall Street Journal*, *The New York Times*, and *USA Today.* This court finds that such notice was reasonably calculated under the circumstances to apprise unknown creditors such as Mr. Alexander of the existence of the applicable bar date and afford him an opportunity to present his claims.

[*10] II.

Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice -- or who receives it but for some reason does not timely act upon it -- may seek leave to file a late claim based on "excusable neglect." The time for filing claims in a chapter 11 case is set by the court. Fed.R.Bankr.P. 3003(c)(3); *see In re Best Prods. Co.*, 140 B.R. 353 at 359 (characterizing the bar date as a court-imposed statute of limitations). However, under Federal Rule of

Bankruptcy Procedure 9006(b)(1), "if a party moves for permission to act after having missed a deadline, the court 'may at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect.'" *Pioneer Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 399, 113 S.Ct. 1489, 1500, 123 L.Ed.2d 74 (1993).

As the Supreme Court has explained, the determination of what constitutes excusable neglect is largely an equitable one, requiring courts to take into account all relevant circumstances surrounding a party's failure to file a proof [*11] of claim prior to the bar date. *Pioneer*, 507 U.S. at 394-95, 113 S.Ct. at 1498. The factors that must be weighed include (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant and; (4) whether the movant acted in good faith. *Id* . The burden of proving excusable neglect is on the creditor seeking to extend the bar date. *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990). Additionally, it has been held that "' excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996).

After carefully considering all the circumstances, the court is unable to find that Mr. Alexander's failure to timely file his proofs of claim should be characterized as excuseable neglect. Given the extensive publicity surrounding US Airways's second chapter 11 filing -- which was widely reported in the press -- it was certainly well within Mr. Alexander's control to have become informed about the case and [*12] to have filed a proof of claim prior to the claim bar date. Additionally, for the reasons stated in the prior opinion, the court can only conclude that the filing of a claim some seven months after the bar date -- and more than a month after the plan was confirmed -- would seriously prejudice the efficient administration of a reorganization case of this magnitude and should not be excused absent rather compelling circumstances, which are simply not present here.

ORDER

For the foregoing reasons, the court finds that US Airways provided Mr. Alexander with constitutionally sufficient notice of the bar dates. The court also finds that Mr. Alexander has failed to demonstrate that his late filed claims should be allowed based on excusable neglect. It is, accordingly,

**ORDERED,**

1. The reorganized debtors' motion (Doc. # 3448) to disallow certain late-filed is granted with respect to

2005 Bankr. LEXIS 2828, *

Claims No. 5207 and 5208 filed by Timothy C. Alexander, and the claims are disallowed as having been filed after the claims bar date.

2. Mr. Alexander is advised that an appeal lies from this order to the United States District Court for the Eastern District of Virginia. Except as provided in Rules 8002(b) [*13] and (c), Federal Rules of Bankruptcy Procedure, any notice of appeal must be filed with the clerk of this court within **10 days** of the entry of this order. The filing fee for a notice of appeal is $ 255.00.

3. The clerk shall mail a copy of this memorandum opinion and order, or give electronic notice of its entry, to the parties listed below.

Date: December 29, 2005

Alexandria, Virginia

/s/ Stephen S. Mitchell

United States Bankruptcy Judge

Entered On Docket: 12/29/2005