Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to Circuit City Stores, Inc.*
*Liquidating Trust*

*Counsel to Circuit City Stores, Inc. Liquidating*
*Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| CIRCUIT CITY STORES, INC., et al.,[1] | : Case No. 08-35653-KRH |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

## LIQUIDATING TRUST'S AMENDED MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 APPROVING SALE OF CERTAIN PATENTS AND OTHER INTELLECTUAL PROPERTY AND RELATED ASSETS AS BEING FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS

The Circuit City Stores, Inc. Liquidating Trust (the "Trust"), through its Trustee, Alfred

H. Siegel, hereby submits this amended motion (the "Amended Motion" or "Motion"), pursuant

to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), amending the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC  (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

*Liquidating Trust's Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363*

*Approving Sale of Certain Patents and Other Intellectual Property and Related Assets as Being*

*Free and Clear of All Liens, Claims and Interests* [Docket No. 11038] (the "Initial Motion").

By the Initial Motion, the Trust requested the entry of an order approving the free and

clear nature of the sale of certain patents, patent applications and other assets of the Trust as

further described and referred to as the "Patent Rights" in that certain July 11, 2011 letter

agreement (as may be amended or modified by the parties, subject to overbidding and the Trust's

approval, the "Agreement," a copy of which was attached to the Initial Motion and is attached

hereto as Exhibit A) between the Trust, as assignor, and Imaging Transfer Co. LLC (the

"Stalking Horse") or other third party(ies) (as applicable, the "Buyer") that may be selected as

the successful bidder or purchaser of the Patent Rights (also referred to herein as the "Purchased

Assets") by the Trust.  As discussed therein, by the Initial Motion, the Trust sought a comfort

order expressly providing that the Plan permits the Trust to sell the Purchased Assets to the

Buyer free and clear of all interests pursuant to section 363(f) of the Bankruptcy Code.

Out of an abundance of caution, the Trust has filed this Amended Motion to clarify that

(i) currently, the Purchased Assets are held by a nondebtor defunct entity, Digital Video Express,

L.P. (the "LP" or "DVE"), a Delaware limited partnership, of which Sky Venture Corporation

("SVC"), a Debtor in these cases, was the sole general partner, and (ii) prior to (or concurrently

with) the consummation of the sale to the Buyer, the Trustee, as successor in interest to SVC,

will, consistent with principles of Delaware limited partnership dissolution law, implement and

carry out the liquidation and distribution of the LP's assets by selling and transferring the

Purchased Assets to the Trust, which will then sell and transfer the same, free and clear of all

claims, liens and interests pursuant to Bankruptcy Code section 363(f), to the Buyer pursuant to

the Agreement.  The net sale proceeds provided to the Trust pursuant to the Agreement will be

administered and held by the Trustee in a segregated account, and subsequently distributed to the

creditors and interest holders of the LP (including the Trust as successor to the Debtors), which

parties will be served with notice of this Motion, in accordance with Delaware state limited

partnership dissolution law.

In short, the Trust has determined that the sale of the Purchased Assets to the Buyer will

maximize the value thereof, and it will administer the proceeds thereof subject to applicable state

law.  The Trust seeks Court approval of the free and clear sale of the Purchased Assets to the

Buyer, and of the related transactions, to the extent that such approval may be necessary.

In support of the Motion, the Trust respectfully represents as follows:

## JURISDICTION

1.     This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 157 and 1334.  Venue of these chapter 11 cases in this District is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Bankruptcy

Code sections 105 and 363 and Bankruptcy Rule 6004.

## GENERAL CASE BACKGROUND

3.     On November 10, 2008 (the "Petition Date"), the above-captioned debtors,

including SVC (the "Debtors"), filed voluntary petitions in this Court for relief under chapter 11

of the Bankruptcy Code.  The Debtors' wholly owned subsidiary, InterTAN Canada, Ltd. (which

operated as The Source by Circuit City) and Tourmalet Corporation (a non-operating holding

company) filed under the *Companies' Creditors Arrangement Act*.

       4.     On November 12, 2008, the Office of the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors.

       5.     On January 16, 2009, the Court authorized the Debtors, among other

things, to conduct going out of business sales at the Debtors' remaining stores pursuant to an

agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent

(the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant

to the Agency Agreement at the Debtors' stores.  As of March 8, 2009, the going out of business

sales at the Debtors' remaining stores had been completed.

       6.     On September 10, 2010, the Court entered its Findings of Fact,

Conclusions of Law and Order (the "Confirmation Order") Confirming Modified Second

Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and

Debtors in Possession and its Official Committee of Creditors Holding General Unsecured

Claims (the "Plan").  Among other matters provided for in the Confirmation Order, in paragraphs

11-16 thereof, a Liquidating Trust is established to effectuate the Plan, and for the benefit of

creditors, to collect, administer, distribute and liquidate the assets of the Debtors' estates that are

to be transferred to the Liquidating Trust on the Effective Date in accordance with the Plan and

Liquidating Trust Agreement.

       7.     The Plan became effective on November 1, 2010, and pursuant to the Plan

and Liquidating Trust Agreement approved therewith, the Trust assumed the right and

responsibility to liquidate the Debtors' remaining assets, analyze, investigate, and if appropriate,

object to claims, and distribute the proceeds to satisfy the allowed claims of creditors. Except as otherwise expressly provided therein, the Confirmation Order (including paragraph 6, p. 24, therein) and the Plan (including Sections V.F.6, p. 29-32, V.I, p. 33) provide that generally, as of the Effective Date, the Consolidated Debtors' estates' assets vested in the Trust free and clear of all liens, claims, encumbrances and interests and may be disposed of by the Trust in its discretion free of any restrictions of the Bankruptcy Code and Bankruptcy Rules. The Debtors' senior secured lenders have been paid in full under the Plan, and the Trust does not believe that any claim, lien, encumbrance or other interest is asserted against any of the Purchased Assets.

8.    Immediately before the Petition Date, former Debtor SVC was the sole general partner of the LP, and no other general partner has been appointed. On the Petition Date, and continuing to the Effective Date, the LP had two limited partners: Debtor Circuit City Stores, Inc. ("CCS") and non-Debtor Zoom Holdings, a California general partnership, of which Zoom Television, Inc. was a general partner (these non-Debtor entities are referred to herein as "Zoom"). The terms and conditions of the LP were governed by an Agreement of Limited Partnership dated May 5, 1995, as amended (the "LP Agreement"). The purpose of the LP, which had been formed in 1995, was to "acquire, finance, develop, manufacture, market, and distribute the Zoom System and related products" (LP Agreement, sec. 2.3) -- a multimedia system which allowed for incremental purchase of the use of movies and other intellectual properties and/or the remote catalog sale of goods. The LP acquired the Zoom System in connection with its formation, at which time its partners transferred all of their Zoom System intellectual property to the LP. As of the Effective Date, the assets vesting in the Trust included, without limitation, any and all interests in or claims against the Partnership that may have been

held by CCS and SVC, as creditors and partners of the LP, including the rights and powers of

Debtor SVC, to carry out any actions necessary or appropriate to complete the final liquidation

and distribution of the dissolved LP's assets.

9.      The LP was not a Debtor, but the chapter 11 petition filing by SVC

triggered a dissolution of the LP (LP Agreement, sec. 15.1 & Delaware Revised Uniform

Limited Partnership Act, sec. 17-801 (bankruptcy of the last remaining general partner of the LP

causes a dissolution of the LP)).   Under the LP Agreement and applicable law, SVC as general

partner was responsible for carrying out the dissolution and wind up of the LP's affairs,

including liquidation of the LP's assets, which includes the Purchased Assets, and distribution of

the proceeds in order of priority of claims and interests.[2]   (Section 15.3(a), LP Agreement,

sections 15.1, 15.3(a).)   As noted above, such powers and management rights have vested in the

Trust pursuant to the Plan and Confirmation Order.

10.      On or about July 11, 2011, after extensive negotiations, the Trust entered

into the Agreement with the Stalking Horse, for its purchase of the Purchased Assets subject to

the terms and conditions of the Agreement, a copy of which is attached hereto as Exhibit A.[3]

The Trust contemplates attempting to foster additional offers (with a broker's assistance) and

engaging in an auction process (if additional bids are received) for the Purchased Assets.   See

Exhibit B (bidding instructions memo prepared by the Trust's advisors, Streambank, LLC).

---

[2]   Generally, the order of priority is:  First, to the payment of the LP's debts and obligations to its creditors (excluding loans to the LP by its partners), including sales commissions and other expenses incident to any sales of the assets of the LP; second, to the establishment of and addition to such reserves as SVC may deem appropriate; third, to the payment of the LP's debts and obligations to the partners in their capacity as creditors (including loans to the LP by partners, pro rata according to the relative amounts of such unpaid loans); fourth, to the partners, to the extent of and in proportion to their respective positive Capital Account balances (adjusted for all distributions and allocations for all periods ending on or before the date of the distribution).

[3]  While a copy of the Agreement has been appended hereto, as noted, the Stalking Horse's offer for the Purchased Assets is subject to overbidding and an auction process as provided in the Agreement.

Notwithstanding the provisions of the Plan and Confirmation Order, the Stalking Horse has

requested a comfort order that any sale of the Purchased Assets will be free and clear of all

interests.

11.    As discussed above, out of an abundance of caution, the Trust has filed

this Amended Motion to clarify that the Purchased Assets will be transferred first from the LP to

the Trust, and then to the Buyer pursuant to the Agreement, and that the net sales proceeds will

be deposited into a segregated account and administered and distributed by the Trust to the

appropriate creditors and interest holders pursuant to applicable state law.  As may be necessary,

the Trust has substantial documentary and testimonial evidence as to the propriety of transferring

the Purchased Assets to the Trust, including testimony from former CCS personnel remaining in

the Trust's employ, establishing that Debtor CCS (one of the two limited partners of the LP) was

the only remaining creditor of the LP as of the Petition Date in that, prepetition, CCS essentially

assumed the liabilities of the LP and made substantial loans in the hundreds of millions of dollars

to the LP to pay off the LP's other creditors.  The only other potential creditor is the Delaware

Secretary of State, for de minimis annual fees.  As noted herein, claims of third parties would be

paid ahead of claims of CCS, with any residual value, going to the partners.  Further, CCS has an

overwhelming balance in its capital account such that CCS has priority over other partners as to

residual distributions.

## <u>RELIEF REQUESTED AND BASIS THEREFOR</u>

12.    By the Motion, the Trust seeks Court approval of the free and clear sale of

the Purchased Assets to the Buyer and related transactions.  As noted above, the Trust believes

that it can sell the Purchased Assets free and clear of all interests and engage in the other

transactions described above without further Court approval.  However, as an accommodation to

the Stalking Horse and to facilitate the sale of the Purchased Assets, the Trust has filed the

Motion seeking an order expressly providing that the sale of the Purchased Assets to any Buyer

will be free and clear of all interests, including any claims, liens and encumbrances that may be

asserted against such property, pursuant to Bankruptcy Code section 363(f), and providing

related relief as set forth in the proposed form of order attached.

13.    Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  Assets of the estate may be sold or administered

outside of the ordinary course of business if a sound business purpose exists for doing so.  In re

WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (citing Stephens Indus., Inc. v. McClung,

789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836

(Bankr. E.D. Va. 1997).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

14.    Under section 363(f) of the Bankruptcy Code, a debtor in possession or

trustee may sell property free and clear of any interest in such property if, among other things:

> (1)    applicable nonbankruptcy law permits sale of such property free
> and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is sold
> is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or

> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) is drafted in the disjunctive, and thus, it permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

15.     Courts have held that the authority of a debtor (or successor thereof) to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

16.     As discussed above, the Plan and Confirmation Order provide generally for the vesting of the Consolidated Debtors' assets into the Trust free and clear of liens, and in any event the Trust does not believe that any party has or asserts a lien or claim against the Purchased Assets.  Based on the foregoing and other circumstances explained above, there is no obstacle to the Court entering a comfort order expressly providing that the sale of the Purchased Assets shall be free and clear of all interests.

17. Notwithstanding the foregoing, if and to the extent that any interest remains against the Purchased Assets, with respect to such interest, at least one of the five conditions of section 363(f) of the Bankruptcy Code will be satisfied. In all events, any such interest will be protected by having it attach to the net proceeds of the sale, subject to any claims and defenses the Trust, the Debtors and estates may possess with respect thereto. Out of an abundance of caution, notice of the Motion will be provided to any parties who are known to the Debtors to have asserted a lien or claim against the Purchased Assets. In the event that such notified parties do not object to the Motion, the Court should deem them to have consented to the sale free and clear of their putative interests, if any.

18. Further, the Trust will provide notice of the Motion to the known creditor of the LP and the non-debtor limited partner of the LP (Zoom). As set forth in the proposed order, the net sale proceeds obtained by the Trust will be held in a segregated account and distributed to such creditors and the LP's partners, as appropriate, pursuant to applicable nonbankruptcy law. Thus, no potential parties-in-interest will be prejudiced in any way.

19. Accordingly, this Court should grant the Motion and approve the sale of the Purchased Assets free and clear of any and all interests under Bankruptcy Code section 363(f), and any potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims. The Trust reserves all of its rights with respect to any such putative claims or interests.

## **NOTICE**

20. Notice of this Motion is being provided to (i) parties-in-interest in accordance with the Case Management Orders, (ii) all entities known to the Debtors to have

previously asserted a lien in any of the Purchased Assets, (iii) known creditors of the LP, (iv)

Zoom, (v) the Stalking Horse, and (vi) prospective bidders for the Purchased Assets.  In light of

the nature of the relief requested, the Trust respectfully submits that no further or other notice is

necessary under the circumstances.

## PRIOR REQUEST

21.     The Amended Motion modifies and/or clarifies the Initial Motion.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court enter an order, substantially

in the form annexed hereto as Exhibit C, authorizing the sale of the Purchased Assets to be free

and clear of all interests, and granting such other and further relief as may be just and proper.

Dated:  August 12, 2011, 2011

By:        */s/ Lynn L. Tavenner*
       Lynn L. Tavenner (VA Bar No. 30083)
       Paula S. Beran (VA Bar No. 34679)
       Tavenner & Beran, PLC
       20 North Eighth Street, Second Floor
       Richmond, VA  23219
       Telephone: 804-783-8300
       Facsimile: 804-783-0178
       Email: ltavenner@tb-lawfirm.com
           pberan@tb-lawfirm.com

       -and-

       Jeffrey N. Pomerantz, Esq.
       Andrew W. Caine, Esq.
       (admitted *pro hac vice*)
       PACHULSKI STANG ZIEHL & JONES LLP
       10100 Santa Monica Boulevard
       Los Angeles, California 90067-4100
       Telephone: 310-277-6910
       Facsimile: 310-201-0760
       Email: jpomerantz@pszjlaw.com
           acaine@pszjlaw.com

       *Counsel for the Circuit City Stores, Inc. Liquidating*
       *Trust*

# EXHIBIT A

**(Stalking Horse Agreement)**

**IMAGING TRANSFER CO. LLC**
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

_July 11_, 2011

Circuit City Stores, Inc. Liquidating Trust
200 Westgate Parkway
Suite 100
Richmond, VA 23233

RE:  Offer to Purchase Certain Intellectual Property Assets of Circuit City Stores, Inc. (the
"**Company**"), currently the subject of Chapter 11 bankruptcy proceedings pending in the
United States Bankruptcy Court for the Eastern District of Virginia as Case No. 08-
35653-KRH ("**Bankruptcy Court**" and "**Bankruptcy Case**," respectively), under the
control of Circuit City Stores, Inc. Liquidating Trust, through Alfred H. Siegel, as
Chapter 11 Trustee (the "**Trustee**")

Dear Sir or Madam:

This letter (**"Letter Agreement"**) outlines the terms and conditions of a proposed purchase by
Imaging Transfer Co. LLC, a Delaware limited liability company ("**Purchaser**"), of certain of
the assets of the Company, all as set forth below.

**1.     Patent Rights**

The assets to be purchased by Purchaser include all present and future right, title, and interest in
and to all of the following (collectively, the "**Patent Rights**"):

        (a)     the U.S. patents, patent applications, and provisional patent applications listed on
Exhibit A attached hereto (the "**U.S. Patents**").

        (b)     the foreign patents, patent applications, and provisional patent applications listed
on Exhibit B attached hereto (the "**Foreign Patents**"); and

        (c)     the additional assets described on the accompanying Assignment of Patent Rights.

**2.     Purchase Price**

At the Closing Date (as defined below), Purchaser will pay Seven Hundred Fifty Thousand
United States Dollars (US $750,000), in immediately available funds (the "**Purchase Price**"), for
the Patent Rights.  There is no financing or other contingency in this offer other than that set
forth in Section 4 below.

## 3.    Limited Warranties

Purchaser will purchase the Patent Rights on an "as is" basis, without any representations or warranties of any kind, except as set forth in this Section 3.  The Company, through the Trustee ("**Assignor**"), represents and warrants as follows:

(a)    Subject to entry of the Sale Order (as defined below), Assignor has the full power and authority, and has obtained all third party consents, approvals and/or other authorizations required to enter into this Letter Agreement and to carry out its obligations hereunder, including the assignment of the Patent Rights to Purchaser; and

(b)    Assignor has obtained previously executed assignments for the Patent Rights as necessary to fully perfect its rights and title therein in accordance with governing law and regulations in each respective jurisdiction.  The sale of the Patent Rights to Purchaser will be free and clear of all liens (including attorneys' liens), claims, mortgages, security interests or other encumbrances, and restrictions to the fullest extent permissible under Section 363(f) of the Bankruptcy Code, except as expressly set forth herein.  Except for the Bankruptcy Case, there are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights relating to the U.S. Patents, and, to Assignor's knowledge, formed after reasonable inquiry and investigation, except for the Bankruptcy Case, there are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights relating to the Foreign Patents.  Except for the preexisting licenses indentified on Exhibit C, there are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights relating to the U.S. Patents and, to Assignor's knowledge, formed after reasonable inquiry and investigation, there are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights relating to the Foreign Patents.

Purchaser acknowledges and agrees that Purchaser and its representatives, before the agreement date, have had access to such information and documents relating to the Patent Rights that Assignor has provided, and that, in determining to acquire the Patent Rights, Purchaser has made its own investigation into the Patent Rights, using publicly available information at the U.S. Patent Office, and, based thereon, Purchaser has made its own independent judgment concerning the purchase of the Patent Rights.  It is therefore expressly understood and agreed that, except for any representations or warranties expressly given by Assignor in Section 3 of this Agreement, Purchaser accepts the condition of the Patent Rights **"as is," "where is"** and **"with all faults"** without any implied representation, warranty or guarantee as to merchantability, fitness for a particular purpose, prospects for the Patent Rights, or as to the condition, scope, extent, type, attributes or value of such property, and Assignor hereby expressly disclaims any and all such implied representations, warranties or guarantees.  Except in the case of fraud, the representations and warranties set forth in this Agreement or in any schedule, exhibit or instrument delivered pursuant to this Agreement by the Assignor shall terminate upon the Closing.

**4.    No Due Diligence; Other Contingencies**

Purchaser has completed its due diligence with respect to the Patent Rights.  There is no due diligence or similar contingency.  However, this offer is contingent upon satisfaction, or waiver by Purchaser in Purchaser's sole discretion, of the following conditions:

(a)    there has been no material adverse change in any of the Patent Rights between the date of this letter and the Closing Date;

(b)    the Sale Order has been entered, and there has been no appeal filed or, if an appeal has been filed, no stay pending appeal has been issued;

(c)    Purchaser is satisfied that, as of the Closing Date, the representations and warranties of Assignor contained in Section 3 are true and correct;

(d)    Purchaser is reasonably satisfied that Assignor has received all approvals and authorizations required and has complied with all obligations of the Circuit City Stores, Inc. Liquidating Trust Agreement dated as of November 1, 2010 by and between Circuit City Stores, Inc. and its affiliated debtors and Alfred H. Siegel, the liquidating trustee (the "**Liquidating Trust Agreement**"); and

(e)    Assignor has complied with all of its other obligations under this Letter Agreement.

**5.    Deposit**

Within three business days of the execution of this Agreement, Purchaser will deposit an amount equal to ten percent (10%) of the Purchase Price (the "**Deposit**") into escrow with the Trustee's law firm, Pachulski Stang Ziehl & Jones LLP (the "**Firm**"), to hold in its client trust account in accordance with the terms of this Agreement and subject to the jurisdiction of the Bankruptcy Court.  At the Closing, the Deposit shall be credited in favor of the Purchaser and applied toward the Purchase Price.  Except as set forth in the following sentence, if this Agreement terminates in accordance with its provisions the Firm shall return the Deposit to Purchaser, within three (3) Business Days of the Firm's receipt of the Purchaser's written request therefor.  If this Agreement is terminated by the Purchaser in breach of this Agreement, or terminates by reason of a Closing having failed to occur on or before the date(s) set forth in Section 9 below by reason of any breach by Purchaser of this Agreement, the Purchaser shall forfeit the Deposit and the Firm shall disburse the Deposit to Assignor, within three (3) Business Days of the Firm's receipt of the Assignor's written request therefor, provided that Purchaser does not object in writing within such three day period.  Such forfeiture of the Deposit shall constitute liquidated damages and shall be Assignor's exclusive remedy for any such breach by Purchaser.  In the event of any dispute over any funds in such escrow, the Firm shall interplead such disputed funds with the Bankruptcy Court.

**6.    Sale of Patent Rights**

The sale of the Patent Rights will be conducted and authorized under Section 363 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and by an order, in a form reasonably

satisfactory to Purchaser, among other things providing Purchaser with the protections of Section 363(m) of the Code; providing that the Patent Rights will be transferred to Purchaser free and clear of any and all security interests, liens (including attorneys' liens), claims, charges, liabilities, obligations and other encumbrances of any nature to the fullest extent permissible under Section 363(f) of the Bankruptcy Code whatsoever except as otherwise provided herein; and specifically waiving the provisions of Bankruptcy Rule 6004(h) (the "**Sale Order**").

7.    **Effectiveness; Bid Process**

(a)    Assignor and Purchaser acknowledge that Assignor has a fiduciary obligation to obtain the highest and best price possible for the Patent Rights, including giving notice of the sale to creditors and other interested parties, providing information about the Patent Rights to responsible bidders, entertaining higher and better offers from responsible bidders (each, a "**Competing Bid**"), and conducting an auction (the "**Auction**").

(b)    To facilitate this process, as soon as reasonably practicable after the date hereof, Assignor shall develop and commence implementation of procedures pursuant to which interested and qualified parties can bid on the Patent Rights prior to and at auction, which procedures shall (i) establish a bid submission deadline (the "**Bid Submission Deadline**") that is no later than August 12, 2011, (ii) establish an Auction date that is no later than five (5) business days after the Bid Submission Deadline, (iii) require that any competing bid(s) be in substantially the same form and substance as this offer, other than the name of the purchaser and the purchase price, (iv) require that any competing bidder deposit at least the amount of the Deposit in a reasonably acceptable third party escrow arrangement, (v) require that, before the Auction may occur, the purchase price in any competing bid exceed the dollar amount of the Purchase Price by One Hundred Thousand United States Dollars (US $100,000), (vi) require Purchaser or any other competing bidder with the next best bid to remain in a backup position prepared to consummate the transactions contemplated by this Agreement in the event that the highest bidder fails to do so in accordance with the terms of such highest bidder's purchase agreement (an "**Alternative Transaction**"), and (vii) be subject to such other customary terms and conditions typical of bankruptcy sale processes as Assignor in its sole discretion may reasonably establish, provided that such terms and conditions are not in conflict with this Letter Agreement (such procedures, the "**Bidding Procedures**"). If there is no higher and better offer made prior to or at the Auction described in the Bidding Procedures, then Assignor shall file with the Bankruptcy Court the appropriate pleadings to obtain an order authorizing the sale of the Patent Rights to Purchaser and containing a finding that Purchaser has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code may be entered, such order to be substantially in the form set forth as Exhibit D (such order, the "**Sale Order**"). In the event that there is a higher and better offer and the Purchaser is not in the backup position, the Purchaser, in its sole and absolute discretion, can elect to do the following (a) immediately terminate its obligations under this Letter Agreement on written notice to Assignor, whereupon the Deposit shall be forthwith returned to Purchaser or (b) continue to participate as a potential buyer. In the event that Purchaser elects either (a) or (b) above and is not the prevailing bidder, Purchaser shall be entitled to an expense reimbursement of $50,000 (the "**Expense Reimbursement**") and the return of the Deposit.

(c)      From the date hereof (and any prior time) and until the completion of the Auction contemplated hereby or as otherwise directed by the Bankruptcy Court, Assignor is permitted to cause its representatives to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates, agents and representatives) in connection with any sale or other disposition of the Patent Rights.   In addition, Assignor shall be fully entitled hereunder, and shall have the responsibility and obligation, to respond to any inquiries or offers to purchase all or any part of the Patent Rights and perform any and all other acts related thereto which are required under the Plan, the Bankruptcy Code or other applicable law, including supplying information relating to the assets of Assignor to prospective Purchasers.  From the Agreement Date until the earlier of (A) the Closing and (B) the termination of this Agreement, Purchaser and Assignor acknowledge and agree that Assignor may inform any and all interested third parties that it intends to submit this Agreement to the Bankruptcy Court in order to obtain entry of the Sale Order.  After distribution of the Bidding Procedures, any and all other bids or offers with respect to the Patent Rights must be presented to Assignor in accordance with the procedures and deadlines set forth in the Bidding Procedures.

## 8.      Closing

Subject to satisfaction, or waiver by Purchaser in its sole discretion, of all of the conditions set forth herein, the closing of the sale of the Patent Rights ("**Closing**") will occur on the third business day after entry of the Sale Order, or on such other date as the parties may mutually agree (the "**Closing Date**").

At the Closing, Purchaser will deliver or cause to be delivered the Purchase Price to Assignor.

At the Closing, Assignor will:

(a)      execute and deliver such instruments and do and perform such other acts and things as may be reasonably necessary or desirable for effecting completely the consummation of the transactions contemplated by this Letter Agreement, including, without limitation, execution, acknowledgment, and recordation of the Assignment of Patent Rights attached as <u>Exhibit E</u>, and other such papers as necessary or desirable for fully perfecting and conveying unto Purchaser the benefit of the transactions contemplated hereby; and

(b)      deliver to Purchaser all reasonably available files and records in Assignor's or any of Assignor's agents' possession related to the Patent Rights, including, without limitation, the following:

(i)      For each item of the Patent Rights that is an issued patent, the original (i) ribbon copy or certificate issued by the applicable government, and (ii) inventor assignment agreements; and

(ii)     For each item of the Patent Rights that is a patent application, (i) a copy of the patent application, as filed, (ii) if unpublished, a copy of the filing receipt and the non-publication request, (iii) the original inventor assignment agreements, and (iv) all files, documents and relating to the investigation, evaluation, preparation, prosecution, maintenance, defense,

filing, issuance, registration, assertion or enforcement of such patent applications.

9.    **Drop Dead Date**

This Letter Agreement shall remain in full force and effect until the first to occur of (a) the termination of this Agreement pursuant to Section 7, (b) the closing of an Alternative Transaction, (c) the fiftieth (50th) calendar day after the date of the Auction in the event that a Sale Order has not been entered on or before such day, unless Purchaser requests otherwise, and (d) the sixty-first (61st) calendar day after the date that Purchaser has been notified that it is the purchaser of the Patent Rights pursuant to Section 7(b) hereof, in the event that the Closing under this Agreement has not occurred. At such time, this Letter Agreement shall terminate and be of no further force or effect (other than for any provisions in respect of the Deposit and the Expense Reimbursement).

Thank you for your consideration.

Sincerely,

**IMAGING TRANSFER CO. LLC**

By _____

By: Melissa Coleman

Title: Authorized Person

**Acknowledged, Agreed, and Accepted:**

Circuit City Stores, Inc. Liquidating Trust

By Alfred H. Siegel, solely in his
capacity as Trustee
of the Circuit City Stores, Inc.
Liquidating Trust, and
not in any individual capacity

**Exhibit A**

**U.S. Patents**

| Patent or application no. | Country | Filing Date | Title of Patent and First Named Inventors |
|---|---|---|---|
| 6078328 | US | 06/08/1998 | Compressed video graphics system and methodology<br><br>Schumann, Robert W. |
| 6285774 | US | 06/08/1998 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| 6912661 | US | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| 6775915 | US | 08/13/2002 | Method and device for determining adequacy of space for television sets<br><br>Stephens, Robert |
| 6738905 | US | 04/14/1999 | Conditional access via secure logging with simplified key management<br><br>Kravitz, David W. |
| 6538969 | US | 06/04/1999 | System and method for implementing open and closed file systems on a storage medium<br><br>Vitkus, Richard A. |
| 6829618 | US | 06/04/1999 | Disc layout and optimization process<br><br>Abraham, Thomas D. |
| 7698570 | US | 10/11/2006 | Digital content distribution system and method<br><br>Schumann, Robert Wilhelm |
| 6658059 | US | 01/18/2000 | Motion field modeling and estimation using motion transform |

| | | | | Iu, Siu-Leong |
|---|---|---|---|---|
| 6975728 | US | 06/22/2000 | | Hierarchical key management <br><br> Eye, Randy |
| 6957344 | US | 07/10/2000 | | Manufacturing trusted devices <br><br> Goldshlag, David Moshe |
| 7464274 | US | 08/08/2005 | | Manufacturing trusted devices <br><br> Goldshlag, David Moshe |
| 6628715 | US | 01/18/2000 | | Method and apparatus for estimating optical flow <br><br> Iu, Siu-Leong |
| 6865747 | US | 03/31/2000 | | High definition media storage structure and playback mechanism <br><br> Mercier, Guillaume |
| 6901514 | US | 06/01/2000 | | Secure oblivious watermarking using key-dependent mapping functions <br><br> Iu, Siu-Leong |
| 09/763917 | US | 08/31/1999 | | Watermarking system and methodology for digital multimedia content <br><br> Iu, Siu-Leong |
| 6240401 | US | 06/05/1998 | | System and method for movie transaction processing <br><br> Oren, Joseph Eugene |
| 6907127 | US | 07/10/2000 | | Hierarchical key management encoding and decoding <br><br> Kravitz, David William |
| 7170941 | US | 05/29/2002 | | Temporal compression <br><br> Shives, Michael |
| 5822291 | US | 11/21/1995 | | Mass storage element and drive unit therefor <br><br> Brindze, Paul L. |
| 7162642 | US | 01/05/2000 | | Digital content distribution system and method <br><br> Schumann, Robert Wilhelm |

| 7203955 | US | 12/22/2004 | High definition media storage structure and playback mechanism<br><br>Mercier, Guillaume |

## Exhibit B

## Foreign Patents

| Patent or application no. | Country | Filing Date | Title of Patent and First Named Inventors |
|---|---|---|---|
| EP99942642.2 | EP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| JP4397123 | JP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| DE69806124 | DE | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DK0954774 | DK | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Artigalas, Max |
| FR0954774 | FR | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| GB0954774 | GB | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| AR1996335882 | AR | 03/22/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CO199614571 | CO | 03/22/1996 | Mass storage element and drive unit therefor<br><br>Brindze, Paul L. |

| | | | |
|---|---|---|---|
| LV9700205 | LV | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| MD9800067 | MD | 03/21/1996 | Multimedia interactive system for transactions control<br><br>Brindze, Paul L. |
| MXPA97007261 | MX | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| OA9770081 | OA | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| RO118098 | RO | 03/21/1996 | Multimedia interactive transactioning system<br><br>Brindze, Paul L. |
| TR01007/97 | TR | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| ZA96/02300 | ZA | 03/22/1996 | Interactive multi-media system<br><br>Brindze, Paul L. |
| CA2319538 | CA | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| EP99908171.4 | EP | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| ZA19990001362 | ZA | 02/19/1999 | Information access control system and method.<br><br>Kravitz, David W. |
| EE9700322 | EE | 03/21/1996 | Interactive multimedia system for organizing transactions<br><br>Brindze, Paul L. |
| HU9900915 | HU | 03/21/1996 | Interactive transaction management multimedia system |

| | | | Brindze, Paul L. |
|---|---|---|---|
| JP08-528656 | JP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| NO1997004351 | NO | 03/21/1996 | Interactive transaction control multi-media system<br><br>Brindze, Paul L. |
| PL322408 | PL | 03/21/1996 | Interactive multimedia device, and a storage component for the interactive media device and method for producing an element of storage<br><br>Brindze, Paul L. |
| SI9620057 | SI | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| SK1284-97 | SK | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| TWI130740 | TW | 02/20/1999 | Information access control system and method<br><br>Kravitz, David W. |

**Exhibit C**

**Licenses**

None.

**Exhibit D**

**Sale Order**

**Exhibit E**

**Form of Assignment of Patent Rights**

For good and valuable consideration, the receipt of which is hereby acknowledged, Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust, its Chapter 11 trustee (**"*Assignor*"**), does hereby sell, assign, transfer, and convey to Imaging Transfer Co. LLC, a Delaware limited liability company, having an address at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808 (**"*Assignee*"**), or its designees, all right, title, and interest that exist today and may exist in the future in and to any and all of the following (collectively, the **"*Patent Rights*"**):

     (a)    the patents, patent applications, and provisional patent applications listed in the table below (the **"*Patents*"**);

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| 6,078,328 | US | 06/08/1998 | Compressed video graphics system and methodology<br><br>Schumann, Robert W. |
| 6,285,774 | US | 06/08/1998 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| EP99942642.2 | EP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| JP4397123 | JP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |

| 6,912,661 | US | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DE69806124 | DE | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DK0954774 | DK | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Artigalas, Max |
| FR0954774 | FR | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| GB0954774 | GB | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| AP19971097 | AP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| AR1996335882 | AR | 03/22/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| BG97101987 | BG | 03/21/1996 | Interactive multimedia system for transactive control |

| | | | |
|---|---|---|---|
| | | | Brindze, Paul L. |
| CO199614571 | CO | 03/22/1996 | Mass storage element and drive unit therefor<br><br>Brindze, Paul L. |
| LV9700205 | LV | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| MD9800067 | MD | 03/21/1996 | Multimedia interactive system for transactions control<br><br>Brindze, Paul L. |
| MXPA97007261 | MX | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| OA9770081 | OA | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| RO118098 | RO | 03/21/1996 | Multimedia interactive transaetioning system<br><br>Brindze, Paul L. |
| TR01007/97 | TR | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| VN1-1997-00970 | VN | 03/21/1996 | Interactive multimedia system for managing transaction<br><br>Brindze, Paul L. |
| ZA96/02300 | ZA | 03/22/1996 | Interactive multi-media system |

| | | | Brindze, Paul L. |
|---|---|---|---|
| 6,775,915 | US | 08/13/2002 | Method and device for determining adequacy of space for television sets<br><br>Stephens, Robert |
| CA2319538 | CA | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| EP99908171.4 | EP | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| ZA19990001362 | ZA | 02/19/1999 | Information access control system and method.<br><br>Kravitz, David W. |
| 6,738,905 | US | 04/14/1999 | Conditional access via secure logging with simplified key management<br><br>Kravitz, David W. |
| 6,538,969 | US | 06/04/1999 | System and method for implementing open and closed file systems on a storage medium<br><br>Vitkus, Richard A. |
| 6,829,618 | US | 06/04/1999 | Disc layout and optimization process<br><br>Abraham, Thomas D. |
| 7,698,570 | US | 10/11/2006 | Digital content distribution system and method<br><br>Schumann, Robert Wilhelm |
| 6,658,059 | US | 01/18/2000 | Motion field modeling and estimation using motion transform<br><br>Iu, Siu-Leong |
| 6,975,728 | US | 06/22/2000 | Hierarchical key |

| | | | management<br><br>Eye, Randy |
|---|---|---|---|
| 6,957,344 | US | 07/10/2000 | Manufacturing trusted devices<br><br>Goldshlag, David Moshe |
| 7,464,274 | US | 08/08/2005 | Manufacturing trusted devices<br><br>Goldshlag, David Moshe |
| 6,628,715 | US | 01/18/2000 | Method and apparatus for estimating optical flow<br><br>Iu, Siu-Leong |
| 6,865,747 | US | 03/31/2000 | High definition media storage structure and playback mechanism<br><br>Mercier, Guillaume |
| 6,901,514 | US | 06/01/2000 | Secure oblivious watermarking using key-dependent mapping functions<br><br>Iu, Siu-Leong |
| 09/763,917 | US | 08/31/1999 | Watermarking system and methodology for digital multimedia content<br><br>Iu, Siu-Leong |
| 6,240,401 | US | 06/05/1998 | System and method for movie transaction processing<br><br>Oren, Joseph Eugene |
| 6,907,127 | US | 07/10/2000 | Hierarchical key management encoding and decoding<br><br>Kravitz, David William |
| PCT/US1999/011796 | WO | 06/07/1999 | Compressed video graphics system and methodology |

| | | | |
|---|---|---|---|
| | | | Schumann, Robert W. |
| PCT/US1999/011797 | WO | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies |
| | | | Schumann, Robert W. |
| EP97101125.9 | EP | 01/24/1997 | Method and apparatus for encrypting and for decrypting data arranged in a data sector |
| | | | Rominger, Friedrich |
| EP0954774 | EP | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector |
| | | | Christopher, Lauren Ann |
| PCT/EP1998/000203 | WO | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector |
| | | | Christopher, Lauren Ann |
| 09/637,641 | US | 08/14/2000 | Temporal compression |
| | | | Shives, Michael Joe |
| 7,170,941 | US | 05/29/2002 | Temporal compression |
| | | | Shives, Michael |
| 60/148,594 | US | 08/13/1999 | Temporal compression in a video compression unit for a camera survelliance system |
| | | | Shives, Michael J. |
| 08/410,132 | US | 03/23/1995 | Interactive multimedia system |
| | | | Brindze, Paul L. |
| 08/550,956 | US | 10/31/1995 | Unable to Verify Title |

| | | | |
|---|---|---|---|
| | | | Unable to Verify Inventors |
| 5,822,291 | US | 11/21/1995 | Mass storage element and drive unit therefor<br><br>Brindze, Paul L. |
| 09/170,959 | US | 10/13/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| 09/170,987 | US | 10/13/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| 09/172,116 | US | 10/13/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| 09/172,188 | US | 10/13/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| 09/172,712 | US | 10/13/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| AU53710/96 | AU | 03/21/1996 | Interactive transaction management multimedia system<br><br>Tully, Geoffrey A. |
| BR9607978 | BR | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CA2215830 | CA | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CN96193914.1 | CN | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CZ1997-2995 | CZ | 03/21/1996 | Personalized transaction management in an interactive multimedia |

|  |  |  | system<br><br>Brindze, Paul L. |
|---|---|---|---|
| EE9700322 | EE | 03/21/1996 | Interactive multimedia system for organizing transactions<br><br>Brindze, Paul L. |
| EP96910542.8 | EP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| HU9900915 | HU | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| IL117565 | IL | 03/20/1996 | Interactive multimedia system<br><br>Brindze, Paul L. |
| JP08-528656 | JP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| LT97-165 | LT | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| NO1997004351 | NO | 03/21/1996 | Interactive transaction control multi-media system<br><br>Brindze, Paul L. |
| NZ305650 | NZ | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| NZ336276 | NZ | 06/14/1999 | Interactive transaction management multimedia |

| | | | system<br><br>Brindze, Paul L. |
|---|---|---|---|
| NZ336277 | NZ | 06/14/1999 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| NZ337388 | NZ | 08/23/1999 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| PCT/US1996/004027 | WO | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| PL322408 | PL | 03/21/1996 | Interactive multimedia device, and a storage component for the interactive media device and method for producing an element of storage<br><br>Brindze, Paul L. |
| SI9620057 | SI | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| SK1284-97 | SK | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CA2437205 | CA | 08/13/2003 | Method and device for determining adequacy of space for television sets<br><br>Stephens, Robert |
| 09/253013 | US | 02/19/1999 | Unable to Verify Title |

| | | | |
|---|---|---|---|
| | | | Unable to Verify Inventors |
| TWI130740 | TW | 02/20/1999 | Information access control system and method<br><br>Kravitz, David W. |
| 60/116,002 | US | 01/15/1999 | Method of authentication of play-media source<br><br>Goldshlag, David Moshe |
| PCT/US1999/003275 | WO | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| 60/075,433 | US | 02/20/1998 | Pirate card rejection mechanisms<br><br>Goldschlag, David M. |
| 09/673,216 | US | 04/15/1999 | Conditional access via secure logging with simplified key management<br><br>Kravitz, David W. |
| 60/081,739 | US | 04/15/1998 | Conditional access via secure logging with simplified key management<br><br>Goldschlag, David M. |
| PCT/US1999/006527 | WO | 04/15/1999 | Conditional access via secure logging with simplified key management<br><br>Kravitz, David W. |
| 60/088,219 | US | 06/05/1998 | Encapsulated file system<br><br>Vitkus, Richard A. |
| PCT/US1999/012447 | WO | 06/04/1999 | System and method for implementing open and closed file systems on a storage medium<br><br>Vitkus, Richard A. |
| 60/088,220 | US | 06/05/1998 | Disc layout and |

| | | | optimization<br><br>Abraham, Thomas D. |
|---|---|---|---|
| 09/880,855 | US | 01/05/2000 | Content packet distribution system<br><br>Schumann, Robert Wilhelm |
| 7,162,642 | US | 01/05/2000 | Digital content distribution system and method<br><br>Schumann, Robert Wilhelm |
| 60/114,833 | US | 01/06/1999 | Digital content protection and distribution system<br><br>Schumann, Robert Wilhelm |
| PCT/US2000/000077 | WO | 01/05/2000 | Digital content distribution system and method<br><br>Schumann, Robert Wilhelm |
| PCT/US2000/000079 | WO | 01/05/2000 | Content packet distribution system<br><br>Schumann, Robert Wilhelm |
| 60/116,078 | US | 01/15/1999 | Motion field medeling and estimation using motion transform<br><br>Iu, Siu-Leong |
| 60/140,211 | US | 06/22/1999 | General purpose key management module for hierarchical key management applications<br><br>Eye, Randy A. |
| 60/143,254 | US | 07/09/1999 | Manufacturing trusted devices without trust or certification of licensed devices with limited manufacturer<br><br>Goldshlag, David M. |
| 60/116,001 | US | 01/15/1999 | Optical flow algorithm with outlier rejection for motion |

| | | | |
|---|---|---|---|
| | | | estimation<br><br>Iu, Siu-Leong |
| 7,203,955 | US | 12/22/2004 | High definition media storage structure and playback mechanism<br><br>Mercier, Guillaume |
| 11/680,557 | US | 02/28/2007 | High definition media storage structure and playback mechanism<br><br>Mercier, Guillaume |
| 60/136,961 | US | 06/01/1999 | Secure oblivious watermarking using key-dependent mapping functions<br><br>Iu, Siu-Leong |
| 60/098,687 | US | 08/31/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| PCT/US1999/019723 | WO | 08/31/1999 | Watermarking system and methodology for digital multimedia content<br><br>Iu, Siu-Leong |
| 5,367,601 | US | 02/16/1994 | Supplemental heat control system with duct temperature sensor and variable setpoint<br><br>Hannabery, Robert T. |
| 60/081,766 | US | 04/15/1998 | Rejection pirated cards: efficient authentication schemes for streaming content<br><br>Goldschlag, David M. |
| 60/097,845 | US | 08/25/1998 | Unable to Verify Title<br><br>Unable to Verify Inventors |
| 60/110,021 | US | 11/25/1998 | Pod-stb copy protection |

| | | | Kravitz, David W. |
|---|---|---|---|
| 60/127,394 | US | 04/01/1999 | High definition digital video disc format |
| | | | Mercier, Guillaume |
| SG53576 | SG | 03/21/1996 | Interactive transaction management multimedia system |
| | | | Brindze, Paul L. |

(b)      all patents and patent applications (i) to which any Patent directly or indirectly claims priority, (ii) for which any Patent directly or indirectly forms a basis for priority, and/or (iii) that were co-owned applications that directly or indirectly incorporate by reference, or were incorporated by reference into, any Patent;

(c)      all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a) and (b);

(d)      all inventions, invention disclosures, and discoveries described in any item in any of the foregoing categories (a) through (c) and all other rights arising out of such inventions, invention disclosures, and discoveries;

(e)      all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (d), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(f)      all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any Patent and/or any

item in any of the foregoing categories (b) through (e), including, without limitation, all causes of action and other enforcement rights for

(i)      damages,
(ii)      injunctive relief, and
(iii)      any other remedies of any kind

for past, current, and future infringement; and

(g)      all rights to collect royalties and other payments under or on account of any Patent and/or any item in any of the foregoing categories (a) through (f).

Assignor represents, warrants and covenants that:

(1)     Assignor has the full power and authority, and has obtained all third party consents, approvals and/or other authorizations required to enter into the Letter Agreement between Assignor and Assignee dated as of _____, 2011, and to carry out its obligations hereunder, including the assignment of the Patent Rights to Assignee; and

(2)     Assignor owns, and by this document assigns to Assignee, all right, title, and interest to the Patent Rights, including, without limitation, all right, title, and interest to sue for infringement of the Patent Rights.  Assignor has obtained and properly recorded previously executed assignments for the Patent Rights as necessary to fully perfect its rights and title therein in accordance with governing law and regulations in each respective jurisdiction.  The sale of the Patent Rights to Purchaser will be free and clear of all liens (including attorneys' liens), claims, mortgages, security interests or other encumbrances, and restrictions to the fullest extent permissible under Section 363(f) of the Bankruptcy Code. Except for the preexisting licenses identified on Schedule 1 hereto, there are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights.

The Patent Rights are free and clear of all liens, claims, mortgages, security interests or other encumbrances, and restrictions to the fullest extent permissible under Section 363(f) of the Bankruptcy Code, except as expressly set forth herein.  There are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights.  Except for the preexisting licenses identified on Schedule 1 hereto, there are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights.

Assignor hereby authorizes the respective patent office or governmental agency in each jurisdiction to issue any and all patents, certificates of invention, utility models or other governmental grants or issuances that may be granted upon any of the Patent Rights in the name of Assignee, as the assignee to the entire interest therein.

Assignor will, at the reasonable request of Assignee and without demanding any further consideration therefore, do all things necessary, proper, or advisable, including without limitation, the execution, acknowledgment, and recordation of specific assignments, oaths, declarations, and other documents on a country-by-country basis, to assist Assignee in obtaining, perfecting, sustaining, and/or enforcing the Patent Rights.  Such assistance will include providing, and obtaining from the respective inventors, prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, powers of attorney, specifications, declarations or other papers, and other assistance reasonably necessary for filing patent applications, complying with any duty of disclosure, and conducting prosecution, reexamination, reissue, interference or other priority proceedings, opposition proceedings, cancellation proceedings, public use proceedings, infringement or other court actions and the like with respect to the Patent Rights.

The terms and conditions of this Assignment of Patent Rights will inure to the benefit of Assignee, its successors, assigns, and other legal representatives and will be binding upon Assignor, its successors, assigns, and other legal representatives.

IN WITNESS WHEREOF this Assignment of Patent Rights is executed at ____ _____ ____ on _____.

**ASSIGNOR:**

**Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust**

By: _____
Name: _____
Title: _____

By Alfred H. Siegel, solely in his
capacity as Trustee
of the Circuit City Stores, Inc.
Liquidating Trust, and
not in any individual capacity

**ATTESTATION OF SIGNATURE PURSUANT TO 28 U.S.C. § 1746**

The undersigned witnessed the signature of _____ _____ _____ to the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust and makes the following statements:

1.     I am over the age of 18 and competent to testify as to the facts in this Attestation block if called upon to do so.

2.     _____ is personally known to me (or proved to me on the basis of satisfactory evidence) and appeared before me on _____ ____ ___, 2011 to execute the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust.

3.     _____ subscribed to the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust.
I declare under penalty of perjury under the laws of the United States of America that the statements made in the three (3) numbered paragraphs immediately above are true and correct.

EXECUTED on __7/13/2011__ (date)

Print Name: _____

By Alfred H. Siegel, solely in his
capacity as Trustee
of the Circuit City Stores, Inc.
Liquidating Trust, and
not in any individual capacity

Schedule 1
Existing License Agreements

The following parties hold preexisting licenses to the Patents:

None.

# EXHIBIT B

**(Bidding Instructions Memo)**



To:      Interested Bidders

From:  Streambank, LLC

Date:  July 12, 2011

Re:      **Circuit City/Divx Patent Portfolio Sale - Bidding Instructions**

---

Streambank, LLC was retained by the Circuit City Stores Inc. Liquidating Trust (The "CC Trust") to liquidate its remaining portfolio of patents (The "Patents"). The core of the portfolio consists of the patent group developed in connection with Circuit City's former Digital Video Express (a/k/a DIVX) initiative.

On July 11, 2011, the CC Trust entered into an Asset Purchase Agreement with Imaging Transfer Co. LLC to sell the Patents for $750,000.00.  The sale is free and clear of liens, claims and encumbrances under section 363 of The Bankruptcy Code subject to the Bankruptcy Court approval.

**<u>Bidding Instructions</u>**

The sale is subject to higher and better bids and an auction.  The key elements of the proposed Bidding Procedures are as follows:

- **Bid Deadline**: August 12, 2011
- **Minimum Bid Amount**: $850,000
- **Auction Date and Place**: August 16, 2011 – location TBD

The following is the procedure for submission of qualified bids:

1. **<u>Bid Form</u>** – Complete & sign the annexed Bid Form

2. **<u>Asset Purchase Agreement</u>** – Sign a form of Asset Purchase Agreement.  The current acceptable form is posted in the dataroom or can be sent upon request. Any changes to the form must be provided in an additional blacklined APA.

3. **<u>Deposit</u>** – A deposit equal to 10% of your bid amount must accompany your bid either by certified check or wire transfer.

4. **<u>Bid Deadline</u>** – Your bid must be received by the 11:59 PM (PST) on August 12, 2011

**Diligence/Dataroom** -- If you would like access to diligence information from our electronic data room, you will need to sign a Confidentiality/Non-Disclosure Agreement. Contact a Streambank representative listed below and you will be provided with the form agreement and instructions for submission.

If you have any questions about the procedures, or if you need any assistance in submitting your bid, please feel free to contact any of the Streambank representatives listed below.

| | | |
|---|---|---|
| Gabe Fried | 781.444.4940 | gfried@streambankllc.com |
| Kirstin DiCecca | 781.444.4940 | kdicecca@streambankllc.com |
| Jack Hazan | 212.610.5663 | jhazan@streambankllc.com |

---

### Circuit City Patent Portfolio Bid Cover Page

---

Date: _____

Name of Bidder: _____

Primary Contact(s):_____

Address: _____

E-Mail Address: _____   Phone Number: _____

1. **Assets & Purchase Price**  Please indicate the package of assets you are bidding on and the amount of your Bid:

☐ All Patents: $_____ (Minimum Bid: $850,000)

☐ Select Patents:      $_____
List Assets (attach additional pages if necessary):
_____
_____
_____

2. **Asset Purchase Agreement (APA)**  All bids must be accompanied by a signed APA, blacklined to show changes from CC Trust's form APA

☐ Signed APA attached hereto.

3. **Good Faith Deposit**  Bids must be accompanied by a deposit equal to 10% of your Bid

Please wire deposit to:

**Bank:** The Private Bank of California
**ABA#:** 122244139
**Account #:** 12000683
**Account Name:** Pachulski Stang Ziehl Young Jones & Weintraub
**Reference:** Circuit City 12304.003

☐ Deposit wired on _____, 2011;        or
☐ Certified or Bank Check Enclosed

(Provide return wiring instructions for deposit return):
_____
_____

4.  **<u>Non-Contingent Bid</u>**  By submission of this bid, bidder acknowledges that the bid is a non-contingent bid for purchase of the specified assets, not subject to any further diligence nor contingent on any financing.   Bidder further acknowledges that the sale of the assets is subject to Bankruptcy Court approval.

5. **<u>Bid Submission</u>**  Bids must be received by the Bid Deadline (**August 12, 2011**).  Bids to be submitted via e-mail and overnight parcel.  (If e-mail is received prior to the Bid Deadline, hard copy can follow on next business day.)

(a) Via email to: jhazan@streambankllc.com, gfried@streambankllc.com, jeffmcdonald@ccltrust.com, & acaine@pszjlaw.com

and

(b) Via Overnight Courier (with original signed APA and Bid Cover Sheet) to:

Streambank LLC
97 Chapel Street, 3rd Floor
Needham, MA 02492
Attn: Gabriel Fried


Bid Submitted on Behalf of Above Named Bidder By:


By: _____

Name: _____

Title: _____

Date: _____

# EXHIBIT C

## (Proposed Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | **:** | Chapter 11 |
| | **:** | |
| CIRCUIT CITY STORES, INC., et al.,[1] | **:** | Case No. 08-35653-KRH |
| | **:** | |
| Debtors. | **:** | (Jointly Administered) |
| | **:** | |
| | **:** | |

## ORDER APPROVING SALE OF CERTAIN PATENTS AND OTHER INTELLECTUAL PROPERTY AND RELATED ASSETS AS BEING FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS

Upon the Amended Motion [Docket No. _____] (the "Motion")[2] of the Circuit City Stores, Inc. Liquidating Trust (the "Trust") for an Order Approving the Sale of Certain Patents and Other Intellectual Property and Related Assets as Being Free and Clear of All Liens, Claims and Interests; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Trust, the beneficiaries thereof, and other parties in interest; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT[3]:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC  (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

[2]    Capitalized terms not otherwise defined herein shall have the meanings and definitions ascribed to such terms in the Motion.

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  If and to the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  If and to the extent that any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.  All statements by the Court at the hearing on the Motion shall constitute additional findings of fact and conclusions of law, as applicable.

A.      As evidenced by the proofs of service filed with the Court, proper and

adequate notice of the Initial Motion and Amended Motion and the sale of the Purchased Assets

has been given, including to any entities known to have asserted any Encumbrance (as defined

below) against the Purchased Assets, the known creditors of the LP, and the nondebtor limited

partner of the LP, Zoom.  No other or further notice is necessary.

B.      The Plan became effective on November 1, 2010, and pursuant to the Plan

and Liquidating Trust Agreement approved therewith and the Confirmation Order, except as

otherwise expressly provided in the Plan or Confirmation Order, the Consolidated Debtors'

estates' assets vested in the Trust free and clear of all liens, claims, encumbrances, assertions of

ownership, or any other rights or interests of any kind ("Encumbrances"), and thus, any and all

assets of the Trust may be disposed of by the Trust free of any Encumbrances of any nature

whatsoever, including any arising under nonbankruptcy law.

C.      Notwithstanding the foregoing, in the event that any party continues to

assert or may assert an Encumbrance against the Purchased Assets, one or more of the standards

set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of

Encumbrances who did not object or who withdrew their objections to the sale of the Purchased

Assets or the Initial Motion or Amended Motion are deemed to have consented to such sale and

the Motion pursuant to Bankruptcy Code section 363(f)(2).  Those holders of any Encumbrances

who did object fall within one or more of the other subsections of Bankruptcy Code section

363(f), and all such objections are without merit.  It is therefore

**ORDERED, ADJUDGED AND DECREED** that:

1.      The Amended Motion is GRANTED.  All objections to the Amended

Motion are hereby overruled.

2.      If and to the extent that Court approval may be required, the transactions

and actions contemplated by the Trust as described in the Amended Motion, including, without

limitation, the Trustee's sale and transfer of the Purchased Assets from the LP to the Trust and

the Trust's sale and transfer of the Purchased Assets to the Buyer, are consistent with and

authorized by the Plan, and are approved and authorized by the Court.

3.      The Trust may sell the Purchased Assets, including without limitation

those listed on Exhibit A hereto, free and clear of all Encumbrances, pursuant to the applicable

purchase agreement (the "Agreement") with the purchaser of the Purchased Assets (the

"Buyer").

4.      At the closing of the sale of the Purchased Assets to the Buyer, subject to

the terms and conditions of the Agreement, except as may be expressly provided otherwise

therein, the Buyer shall acquire the Purchased Assets free and clear of all Encumbrances, with all

such Encumbrances, if any, of any kind or nature whatsoever attaching to the net proceeds of the

sale ("Proceeds") ultimately attributable to the property against or in which the holder of an

Encumbrance claims or may claim an interest in the order of their priority, with the same

validity, force and effect which they now have, subject to any claims and defenses the Trust, the

Debtors and/or the bankruptcy estates may possess with respect thereto.  Subject to the

foregoing, the Proceeds shall be deposited into a segregated account and administered and

distributed by the Trust to the creditors and interest holders of the LP in accordance with

applicable nonbankruptcy law.

5.      The Trust, the Buyer and their respective agents may take all reasonable and necessary actions to implement this Order and consummate the transactions contemplated hereunder and the Amended Motion.

6.      This Order is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report any title or state of title in or to the Purchased Assets.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Encumbrances against the Purchased Assets from their records, official or otherwise.

Dated: _____          _____
      Richmond, Virginia                          The Honorable Kevin R. Huennekens
                                        United States Bankruptcy Judge

**WE ASK FOR THIS:**


_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178

-and-

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey N. Pomerantz (CA Bar No. 143717)
Andrew W. Caine (CA Bar No. 110345)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.  11th Floor
Los Angeles, California  90067-4100
Telephone: 310-227-6910
Facsimile:  310-201-0760

Counsel for the Circuit City Stores, Inc.
Liquidating Trust

## <u>CERTIFICATION</u>

I hereby certify that the foregoing proposed Order has been either served on or endorsed by all necessary parties.

_____

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Tavenner & Beran, PLC
1015 East Main Street, First Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

<u>Exhibit A</u>

Purchased Assets

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| 6,078,328 | US | 06/08/1998 | Compressed video graphics system and methodology<br><br>Schumann, Robert W. |
| 6,285,774 | US | 06/08/1998 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| EP99942642.2 | EP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| JP4397123 | JP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| 6,912,661 | US | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DE69806124 | DE | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DK0954774 | DK | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Artigalas, Max |
| FR0954774 | FR | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| GB0954774 | GB | 01/15/1998 | Method and apparatus for encrypting and for |