Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al,[1] | Case No. 08-35653-KRH |
| Debtor. | (Jointly Administered) |

## ORDER APPROVING SALE OF CERTAIN PATENTS AND OTHER INTELLECTUAL PROPERTY AND RELATED ASSETS AS BEING FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS

Upon the Amended Motion [Docket No. 11122] (the "Motion")[2] of the Circuit City Stores, Inc. Liquidating Trust (the "Trust") for an Order Approving the Sale of Certain Patents and Other Intellectual Property and Related Assets as Being Free and Clear of All Liens, Claims and Interests; and the Court having reviewed the Motion; and the Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

[2] Capitalized terms not otherwise defined herein shall have the meanings and definitions ascribed to such terms in the Motion.

the relief requested in the Motion is in the best interests of the Trust, the beneficiaries thereof, and other parties in interest; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby.

**FOUND AND DETERMINED THAT[3]:**

A.    At the conclusion of the auction of the Purchased Assets, the Trust determined that the bid for the Purchased Assets submitted by Innovative Video Security LLC (the "Buyer") was the highest and best bid for the assets that are the subject of the Motion, pursuant to the Letter Agreement, dated August 12, 2011, a copy of which is annexed as Exhibit "A" hereto (the "Agreement").  The Agreement and the transactions contemplated thereby and otherwise under this Order, including the sale and transfer of the Patent Rights (as defined in the Agreement) from the LP to the Trust, were negotiated and have been and are each undertaken by the Trust, the Buyer and the LP, respectively, at arm's length without collusion or fraud, in good faith, for reasonably equivalent value, and in a manner consistent with applicable law.  The Buyer is not affiliated in any way with the Trust or the Debtors.

B.    As evidenced by the proofs of service filed with the Court, proper and adequate notice of the Initial Motion and Amended Motion and the sale of the Patent Rights has been given, including to any entities known to have asserted any Encumbrance (as defined below) against the Patent Rights, the known creditors of the LP, and the non-debtor limited partner of the LP, Zoom.  No other or further notice is necessary.

C.    The Plan became effective on November 1, 2010, and pursuant to the Plan and Liquidating Trust Agreement approved therewith and the Confirmation Order, except as otherwise expressly provided in the Plan or Confirmation Order, the Consolidated Debtors'

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. If and to the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. If and to the extent that any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact. All statements by the Court at the hearing on the Motion shall constitute additional findings of fact and conclusions of law, as applicable.

_____"), and thus, any and all assets of the Trust may be disposed

of by the Trust free of any Encumbrances of any nature whatsoever, including any arising under

nonbankruptcy law.

D.      Subject to the entry of this Order, the Trust: (i) has full power and

authority to execute the Agreement and all other documents contemplated thereby, including the

transfer of all right, title, and interest in the Patent Rights to the Trust and the subsequent transfer

of all right, title, and interest in the Patent Rights to the Buyer; (ii) has all of the power and

authority necessary to consummate the transactions contemplated by the Agreement, and (iii) has

taken all company action necessary to authorize and approve the Agreement, and related

documents, and the sale of the Patent Rights.  Except as expressly provided for in the Agreement

or this Order, no consents or approvals, including without limitation from the non-debtor limited

partner of the LP, Zoom, are required for the Trust to consummate the sale of the Purchased

Assets under the Agreement.

E.      Notwithstanding the foregoing, in the event that any party continues to

assert or may assert an Encumbrance against the Patent Rights, one or more of the standards set

forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of

Encumbrances who did not object or who withdrew their objections to the sale of the Patent

Rights or the Initial Motion or Amended Motion are deemed to have consented to such sale and

the Motion (including all transfers contemplated thereby) pursuant to Bankruptcy Code section

363(f)(2).  Those holders of any Encumbrances who did object fall within one or more of the

other subsections of Bankruptcy Code section 363(f), and all such objections are without merit.

It is therefore

**ORDERED, ADJUDGED AND DECREED** that:

1.      The Amended Motion is GRANTED.  All objections to the Amended

Motion are hereby overruled.

2.      If and to the extent that Court approval may be required, the transactions and actions contemplated by the Trust as described in the Amended Motion, including, without limitation, the Trustee's sale and transfer of all right, title and interest in the Patent Rights from the LP to the Trust and the Trust's sale and transfer of all right, title and interest in the Patent Rights to the Buyer, are consistent with and authorized by the Plan and applicable non-bankruptcy law, and are approved and authorized by the Court.

3.      The Trust may sell the all right, title and interest in the Patent Rights to the Buyer free and clear of all Encumbrances, pursuant to the Agreement.

4.      At the closing of the sale of the Patent Rights to the Buyer (the "Closing"), subject to the terms and conditions of the Agreement, except as may be expressly provided otherwise therein, the Buyer shall acquire all right, title and interest in the Patent Rights free and clear of all Encumbrances, with all such Encumbrances, if any, of any kind or nature whatsoever attaching to the net proceeds of the sale (the "Proceeds") ultimately attributable to the property against or in which the holder of an Encumbrance claims or may claim an interest in the order of their priority, with the same validity, force and effect which they now have, subject to any claims and defenses the Trust, the Debtors and/or the bankruptcy estates may possess with respect thereto.  Subject to the foregoing, the Proceeds shall be deposited into a segregated account and administered and distributed by the Trust to the creditors and interest holders of the LP in accordance with applicable nonbankruptcy law.

5.      The Trust, the Buyer and their respective agents may take all reasonable and necessary actions to implement this Order and consummate the transactions contemplated hereunder and the Amended Motion.

6.      The Agreement, and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby.

7.     This Order is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report any title or state of title in or to the Purchased AssetsPatent Rights.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Encumbrances against the Patent Rights from their records, official or otherwise.

Dated:_____          _____
         Richmond, Virginia                                    The Honorable Kevin R. Huennekens
                                                                      United States Bankruptcy Judge

**WE ASK FOR THIS:**

*/s/ Lynn L. Tavenner*_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: 804-783-8300
Facsimile: 804-783-0178

-and-

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey N. Pomerantz (CA Bar No. 143717)
Andrew W. Caine (CA Bar No. 110345)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd. 11th Floor
Los Angeles, California 90067-4100
Telephone: 310-227-6910
Facsimile: 310-201-0760

Counsel for the Circuit City Stores, Inc.
Liquidating Trust

## **CERTIFICATION**

I hereby certify that the foregoing proposed Order has been either served on or endorsed by all necessary parties.

*/s/ Lynn L. Tavenner*

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Tavenner & Beran, PLC
20 N. 8th Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

EXHIBIT A

Innovative Video Security LLC
c/o Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806

August 12, 2011

Circuit City Stores, Inc. Liquidating Trust
200 Westgate Parkway
Suite 100
Richmond, VA 23233

RE:    Agreement to Purchase Certain Intellectual Property Assets of Circuit City
Stores, Inc., Circuit City Stores West Coast, Inc., Circuit City Purchasing
Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia,
Inc., Circuit City Stores PR, LLC, Circuit City Properties LLC, Orbyx
Electronics, LLC, Kinzer Technology, LLC, Courchevel, LLC, Abbott
Advertising Agency, Inc., Mayland MN, LLC, Papsco Designs, Inc., Sky
Venture Corp., XSStuff, LLC, and PRAHS, Inc. (collectively, the "**Debtors**"),
currently the subject of Chapter 11 bankruptcy proceedings pending in the
United States Bankruptcy Court for the Eastern District of Virginia as Case
No. 08-35653-KRH ("**Bankruptcy Court**" and "**Bankruptcy Case**",
respectively), under the control of Circuit City Stores, Inc. Liquidating Trust,
through Alfred H. Siegel, as trustee of the Circuit City Stores, Inc. Liquidating
Trust, and not in any individual capacity (the "**Trustee**")

Dear Sir or Madam:

This letter agreement ("**Agreement**") outlines the terms and conditions of a purchase
by Innovative Video Security LLC, a Delaware limited liability company
("**Purchaser**"), of certain of the assets of the Debtors, all as set forth below.

1.    **DEFINITIONS**

1.1    For purposes of this Agreement, in addition to the terms defined elsewhere in
this Agreement, the following terms shall have the meanings specified in this
Section 1.1:

"**Assignment of Patent Rights**" means the Assignment of Patent Rights in
the form attached hereto as Exhibit C.

"**Assignor**" means the Debtors, acting through the Trustee.

"**Business Day**" means any day of the year on which national banking
institutions in San Francisco, California are open to the public for conducting
business and are not required or authorized to close.

"**Closing**" has the meaning set forth in Section 8.

A/74488688.3

"**Closing Date**" has the meaning set forth in Section 8.

"**Code**" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated pursuant thereto.

"**Docket**" means the Debtors' or their agents' list or other means of tracking information relating to the prosecution or maintenance of the Patent Rights throughout the world, including the names, addresses, email addresses, and phone numbers of prosecution counsel and agents, and information relating to deadlines, payments, and filings, which list or other means of tracking information is current as of the Closing Date.

"**Foreign Patents**" means the foreign patents, patent applications, and provisional patent applications listed on Exhibit B attached hereto.

"**Liabilities**" means any debt, liability, Tax or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs, Taxes and expenses relating thereto.

"**Lien**" means any lien (including attorneys' liens), claim (as defined in the Bankruptcy Code), interest, judgment, license, charge, option, pledge, mortgage, deed of trust, security interest or other encumbrance, defect in title or restriction of any kind.

"**Listed Patents**" means all U.S. Patents and all Foreign Patents.

"**Patents**" means, all (a) Listed Patents; (b) patents or patent applications (i) to which any of the Listed Patents claims priority, (ii) for which any of the Listed Patents forms a basis for priority, (iii) that were co-owned applications that incorporate by reference, or are incorporated by reference into, the Listed Patents, and/or (iv) which are subject to a terminal disclaimer with any of the Listed Patents; (c) reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, and registrations of any item in any of the foregoing categories (a) and (b); (d) national (of any country of origin) and multinational patents, patent applications and counterparts relating to any item in any of the foregoing categories (a) through (c), including, without limitation, certificates of invention and utility models; (e) rights provided by multinational treaties or conventions for any item in any of the foregoing categories (a) through (d); and (f) any item in any of the foregoing categories (b) through (d) whether or not expressly listed as Listed Patents and whether or not claims in any of the foregoing have been rejected, withdrawn, cancelled, or the like.

"**Person**" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity.

"**Sale Order**" has the meaning set forth in Section 6.

A/74488688.3

"**Taxes**" means (i) all federal, state, local or foreign taxes, charges or other assessments, including, without limitation, all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, windfall profits, inventory, customs duties capital stock, license, withholding, payroll, employment, social security, unemployment, disability, excise, severance, registration, severance, stamp, occupation, property, add-on minimum, environmental (including taxes under Code §59A) and estimated taxes, or other tax of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, and (ii) all interest, penalties, fines, additions to tax or additional amounts imposed by any taxing authority in connection with any item described in clause (i), in either case, whether disputed or not and including any obligation to indemnify or otherwise assume or succeed to the Tax liability of any other Person.

"**Tax Return**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"**Transaction Documents**" means this Agreement and all other agreements, documents, or instruments or certificates contemplated by this Agreement or to be executed by Assignor or Purchaser in connection with the consummation of the transactions contemplated hereby.

"**Transfer Taxes**" means sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental charges (including any interest and penalty thereon) payable in connection with the sale of the Patent Rights contemplated by this Agreement.

"**U.S. Patents**" means the U.S. patents, patent applications, and provisional patent applications listed on Exhibit A attached hereto.

1.2     Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Dollars.  Any reference in this Agreement to $ shall mean U.S. dollars.

Exhibits/Schedules.  The Exhibits and Schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any matter or item disclosed on one Schedule shall be deemed to have been disclosed on all Schedules.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

Gender and Number.  Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

A/74488688.3

Headings.  The division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement.  All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

Herein.  The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

Including.  The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

2.    **SALE OF PATENT RIGHTS; NO ASSUMPTION OF LIABILITIES**

2.1    Purchase and Sale.  On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall purchase, acquire and accept from Assignor, and Assignor shall sell, transfer, assign, convey and deliver to Purchaser, all right, title and interest of Assignor in and to all of the following (collectively, the "**Patent Rights**"):

(a)    the Patents;

(b)    inventions, invention disclosures, and discoveries described in any of the Patents to the extent that such inventions, invention disclosures and discoveries could be claimed in any of the Patents;

(c)    rights to apply in any or all countries of the world for patents, certificates of invention and utility models, claiming any inventions, invention disclosures, and discoveries described in any of the Patents to the extent that such inventions, invention disclosures and discoveries could be claimed in any of the Patents; and

(d)    causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or the rights described in Section 2.1(c), including, without limitation, all causes of action and other enforcement rights for (i) damages, (ii) injunctive relief, and (iii) any other remedies of any kind for past, current and future infringement, and (iv) rights to collect royalties or other payments under or on account of any of the Patents and/or any of the foregoing.

2.2    No Assumption of Liabilities.  Except as provided in Section 10.1 of this Agreement, Purchaser shall not assume or become responsible for any Liabilities of the Debtors, whether relating to the Patent Rights or otherwise.

2.3    Further Conveyances and Assumptions.  From time to time following the Closing:

(a)    Assignor and Purchaser shall execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and the other Transaction Documents and to otherwise make effective the sale of the Patent Rights and the transactions contemplated hereby and thereby; provided, however, that Assignor shall be under no obligation under this Section to refrain from or postpone the closing of the Bankruptcy Case, appeal any adverse order of the Bankruptcy Court, commence or maintain any legal proceeding, or to incur any material cost or expense;

(b)    Assignor authorizes the respective patent office or governmental agency in each jurisdiction to issue any and all patents, certificates of invention, utility models or other governmental grants or issuances that may be granted upon any of the Patent Rights in the name of Purchaser, as the assignee to the entire interest therein; and

(c)    Assignor will, at the reasonable request of Purchaser and without demanding any further consideration therefore, do all things necessary, proper, or advisable, including without limitation, the execution, acknowledgment, and recordation of specific assignments, oaths, declarations, and other documents on a country-by-country basis, to assist Purchaser in obtaining, perfecting, sustaining, and/or enforcing the Patent Rights. Such assistance will include providing, and obtaining from the respective inventors, prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, powers of attorney, specifications, declarations or other papers, and other assistance reasonably necessary for filing patent applications, complying with any duty of disclosure, and conducting prosecution, reexamination, reissue, interference or other priority proceedings, opposition proceedings, cancellation proceedings, public use proceedings, infringement or other court actions and the like with respect to the Patent Rights.

2.4    <u>Pre- and Post-Closing and Transitional Matters</u>. From and after the Closing, the Assignor shall retain full right and authority to use, enforce, pursue remedies and take actions with respect to any of the Assignor's assets other than the Patent Rights. Assignor shall provide all assistance reasonably requested by Purchaser to ensure a smooth transfer of the Patent Rights at the Closing; provided, however, that Assignor shall be under no obligation under this Section to refrain from or postpone the closing of the Bankruptcy Case, appeal any adverse order of the Bankruptcy Court, commence or maintain any legal proceeding, or to incur any material cost or expense.

**3.    PURCHASE**

3.1   In consideration of the transfer of all of the Patent Rights to Purchaser and the other undertakings set forth herein, Purchaser will pay to Assignor, at the Closing, Six Million Twenty Five Thousand Dollars ($6,025,000.00) (the "**Purchase Price**").   There is no financing or other contingency in this Agreement other than that set forth in Section 5 below.

3.2   Purchaser and Assignor acknowledge and agree that Purchaser has deposited Six Hundred and Two Thousand Five Hundred Dollars ($602,500.00) (the "**Deposit**") into a client trust account maintained by Pachulski Stang Ziehl & Jones LLP (the "**Firm**").   At the Closing, Purchaser will pay Assignor, by wire transfer of immediately available funds to an account designated by Assignor, an amount equal to the Purchase Price, less the Deposit.

### 4.   LIMITED WARRANTIES

Purchaser will purchase the Assignor's right, title and interest in and to the Patent Rights on an "as is" basis, without any representations or warranties of any kind, except as set forth in this Section 4.   The Assignor represents and warrants as follows:

4.1   Subject to entry of the Sale Order, (a) Assignor will have the power, authority and legal capacity to execute and deliver this Agreement, to perform its obligations hereunder, and to consummate the transactions contemplated hereby, (b) this Agreement will have been duly and validly executed and delivered by the Assignor, and (c) assuming the due authorization, execution and delivery by Purchaser, this Agreement constitutes the legal, valid and binding obligations of Assignor, enforceable in accordance with its terms.

4.2   As contemplated by the Liquidating Trust's Amended Motion for the Sale Order filed August 12, 2011, and subject to entry of the Sale Order, on or before the Closing, Assignor will acquire all right, title and interest of Digital Video Express, L.P., a Delaware limited partnership (the "**Partnership**"), in and to the Patent Rights and will file such executed instruments as are necessary to cause title of record for the Listed Patents to reflect the assignment of such Listed Patents to the Partnership and the assignment of the Listed Patents by the Partnership to Assignor, in each case as necessary to establish and perfect the right, title and interest of the Assignor therein.

4.3   Subject to entry of the Sale Order, the sale of the Patent Rights to Purchaser will be free and clear of all liens (including attorneys' liens), claims, mortgages, security interests or other encumbrances, and restrictions to the fullest extent permissible under Section 363(f) of the Bankruptcy Code. Except for the Bankruptcy Case, there are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights and, to Assignor's knowledge, formed after reasonable inquiry and investigation, except for the Bankruptcy Case, there are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights relating to the Foreign Patents.

4.4    There are no existing contracts, agreements, licenses, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights relating to the U.S. Patents and, to Assignor's knowledge, formed after reasonable inquiry and investigation, there are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights relating to the Foreign Patents.

4.5    No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Assignor in connection with the Sale, and no Person is entitled to any fee or commission or like payment from Assignor in respect thereof, other than Streambank, LLC, which payment shall not be payable by Purchaser.

Purchaser acknowledges and agrees that Purchaser and its representatives, before the agreement date, have had access to such information and documents relating to the Patent Rights that Assignor has provided, and that, in determining to acquire the Patent Rights, Purchaser has made its own investigation into the Patent Rights, using publicly available information at the U.S. Patent Office, and, based thereon, Purchaser has made its own independent judgment concerning the purchase of the Patent Rights. It is therefore expressly understood and agreed that, except for any representations or warranties expressly given by Assignor in Section 4 of this Agreement, Purchaser accepts the condition of the Patent Rights "as is," "where is" and "with all faults" without any implied representation, warranty or guarantee as to merchantability, fitness for a particular purpose, prospects for the Patent Rights, or as to the condition, scope, extent, type, attributes or value of such property, and Assignor hereby expressly disclaims any and all such implied representations, warranties or guarantees. The representations and warranties set forth in this Agreement or in any schedule, exhibit or instrument delivered pursuant to this Agreement by the Assignor shall terminate upon the Closing, which termination shall be without prejudice to any claims of Purchaser for intentional fraud or willful misconduct.

5.    NO DUE DILIGENCE; OTHER CONTINGENCIES

Purchaser has completed its due diligence with respect to the Patent Rights. There is no due diligence or similar contingency. However, the Closing is contingent upon satisfaction, or waiver by Purchaser in Purchaser's sole discretion, of the following conditions:

5.1    there has been no material adverse change in any of the Patent Rights between the date of this Agreement and the Closing Date;

5.2    the Sale Order has been entered, and there has been no appeal filed or, if an appeal has been filed, no stay pending appeal has been issued;

5.3    Purchaser is satisfied that, as of the Closing Date, the representations and warranties of Assignor contained in Section 4 are true and correct;

5.4    Purchaser is reasonably satisfied that Assignor has received all approvals and authorizations required and has complied with all obligations of the Circuit

City Stores, Inc. Liquidating Trust Agreement dated as of November 1, 2010 by and between Circuit City Stores, Inc. and its affiliated debtors and Alfred H. Siegel, the liquidating trustee (the "**Liquidating Trust Agreement**");

5.5    Assignor has provided to Purchaser satisfactory evidence that (a) Assignor has caused each of the U.S. Patents not held in the name of the Debtors as of the date of this Agreement to be transferred to the Debtors, (b) such transfers are free and clear of all liens, and (c) the Bankruptcy Court has approved such transfers;

5.6    Assignor has provided to Purchaser a statement, in the form set forth in Treasury Regulation Section 1.1445-2(b)(2), reasonably satisfactory to Purchaser and sufficient to prevent withholding of any portion of the Purchase Price under Section 1445 of the Code;

5.7    Assignor has notified all relevant governmental authorities of the transactions contemplated by this Agreement in the form and manner required by such governmental authorities if the failure to make such notifications or receive any available tax clearance certificate ("**Tax Clearance Certificate**") could result in Purchaser being liable under applicable law for any Taxes of the Debtors.  Before the Closing, Assignor shall provide evidence to Purchaser that (i) all Tax Clearance Certificates have been obtained and (ii) any Tax liabilities related thereto have been paid in full or otherwise satisfied; and

5.8    Assignor has complied with all of its other obligations under this Agreement.

6.    **COURT APPROVAL OF SALE**

The sale of the Patent Rights contemplated by this Agreement is subject to entry by the Bankruptcy Court of an order approving both (a) the transfer of the Patent Rights into the name of the Assignor (as contemplated by Section 5.5) and (b) the sale of Patent Rights to Purchaser as being free and clear of all Liens, such order to be in a form reasonably satisfactory to Purchaser (such order, the "**Sale Order**").

7.    **COVENANTS**

7.1    <u>Reasonable Efforts</u>.    Each of the parties hereto agrees to use their commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary to satisfy the conditions set forth herein as soon as practicable (including commercially reasonable efforts necessary to obtain all transfers of the Patent Rights to the name of the Assignor and to obtain the Sale Order) which are necessary or desirable in connection with the transactions contemplated by this Agreement; provided, however, that Assignor shall be under no obligation under this Section to refrain from or postpone the closing of the Bankruptcy Case, appeal any adverse order of the Bankruptcy Court, commence or maintain any legal proceeding, or to incur any material cost or expense.  No party hereto will take any action for the purpose of delaying, impairing or impeding the receipt of any required consent, authorization, order or approval or the making of any required filing or registration.

7.2   <u>Confidentiality</u>.  Each party acknowledges that the confidential information provided to it in connection with this Agreement and the consummation of the transactions contemplated hereby, is subject to the terms and conditions of those certain Non-Disclosure Agreements, the first by and between Purchaser and the Trustee, dated as of May 27, 2011 and the second by and among Purchaser, the Trustee and certain other parties, dated as of August 12, 2011.

7.3   <u>Exclusivity</u>.  Subject to the provisions of Section 7.4, from the date of this Agreement to the earlier of the Closing, or the date on which this Agreement is terminated in accordance with its terms, each of the Assignor and Trustee covenants and agrees that they will not, directly or indirectly, solicit, initiate or encourage the submission of inquiries, proposals or offers from any Person other than Purchaser or Purchaser's affiliates or representatives relating in any way to (a) make any investment in any of the Patent Rights, (b) make any acquisition of any direct control of any of the Patent Rights, (c) purchase any of the Patent Rights, or (d) enter into any lease, exchange, mortgage, pledge, transfer or other disposition of any of any of the Patent Rights (each, a "**Patent Acquisition Proposal**").  Subject to the provisions of Section 7.4, each of the Assignor and Trustee shall cause its managers, members, employees, investment bankers, attorneys, accountants and other agents ("**Representatives**"), to immediately cease all discussions and negotiations that have taken place prior to the date hereof, if any, with any Persons with respect to any Patent Acquisition Proposal.  Subject to the provisions of Section 7.4, each of the Assignor and Trustee covenants and agrees that in the event either of them or any of their Representatives receive any Patent Acquisition Proposal, they shall promptly (and in any event, within two Business Days) notify Purchaser of same.

7.4   <u>Bid Process</u>.  The offer set forth herein is a competing bid in accordance with the bidding procedures set forth by the Trustee.  If Assignor selects Purchaser's bid as the highest and best bid at the auction provided by the bidding procedures (the "**Auction**"), then Assignor shall seek entry of the Sale Order by the Bankruptcy Court authorizing the sale to Purchaser.  In the event that Purchaser is not the successful bidder at the Auction and the Purchaser's bid is not in the backup position as the second highest bid, the Purchaser, in its sole and absolute discretion, can elect to do the following (a) immediately terminate its obligations under this Agreement on written notice to Assignor, whereupon the Deposit shall be forthwith returned to Purchaser or (b) continue to participate as a potential buyer.  In the event that Purchaser's bid is the second highest bid at the Auction (the "**Backup Bid**"), then this offer shall remain in a backup position prepared to consummate the transactions contemplated by this Agreement in the event that the highest bidder (the "**Highest Bidder**") fails to do so in accordance with the terms of such Highest Bidder's purchase agreement.

7.5   <u>Maintenance of Patent Rights</u>.  Except as otherwise expressly provided in or contemplated by this Agreement (including actions taken to effect a transaction with the Highest Bidder, if the Highest Bidder is not the

Purchaser), on or prior to the Closing Date, Assignor may not, without the prior written consent of Purchaser:

(a) sell, lease or otherwise dispose of, mortgage, hypothecate or otherwise encumber, or release or waive any right with respect to any Patent Rights;

(b) fail to pay any required filing, processing, maintenance or other fee, and use commercially reasonable efforts to maintain the validity of the Debtors' rights in, to, or under any Patent Rights (including, for the avoidance of doubt, the payment of any maintenance fee for which the fee is payable (e.g., the payment window opens) on or prior to the Closing Date even if the surcharge date or final deadline for payment of such fee would be after the Closing Date);

(c) enter into any contract or agreement related to the Patent Rights; or

(d) agree, whether in writing or otherwise, to do any of the foregoing.

## 8. CLOSING

Subject to satisfaction, or waiver by Purchaser in its sole discretion, of all of the conditions set forth herein, the closing of the sale of the Patent Rights ("**Closing**") will occur on the fifth business day after entry of the Sale Order, or on such other date as the parties may mutually agree (the "**Closing Date**").

8.1 At the Closing, Purchaser will deliver or cause to be delivered to Assignor:

(a) the Purchase Price, in accordance with Section 3.2; and

(b) such instruments, duly executed by Purchaser, as reasonably requested by Assignor as may be necessary to confirm Purchase's acceptance of the Patent Rights.

8.2 At the Closing, Assignor will deliver or cause to be delivered to Purchaser:

(a) the Assignment of Patent Rights, duly executed by Assignor, and such other papers as Purchaser may reasonably regard as necessary or desirable for effecting completely the consummation of the transactions contemplated by this Agreement and/or fully perfecting and conveying unto Purchaser the benefit of the transactions contemplated hereby; provided, however, that Assignor shall be under no obligation under this Section to refrain from or postpone the closing of the Bankruptcy Case, appeal any adverse order of the Bankruptcy Court, commence or maintain any legal proceeding, or to incur any material cost or expense;

(b) all reasonably available files and records in Assignor's or any of Assignor's agents' possession related to the Patent Rights, including, without limitation, the following items to the extent in the possession of Assignor:

(1)    For each item of the Patent Rights that is an issued patent, (i) the original ribbon copy or certificate issued by the applicable government, (ii) the original inventor assignment agreements and copies of all other assignments, and (iii) a copy of the Docket for such Patent Right; and

(2)    For each item of the Patent Rights that is a patent application, (i) a copy of the patent application, as filed, (ii) if unpublished, a copy of the filing receipt and the non-publication request, (iii) the original inventor assignment agreements and copies of all other assignments, (iv) a copy of the Docket for such Patent Right, and (v) all files, documents and relating to the investigation, evaluation, preparation, prosecution, maintenance, defense, filing, issuance, registration, assertion or enforcement of such patent applications;

(c)    Any correspondence, filings or other documents pursuant to which any Debtor has (i) put a third party on notice of actual or potential infringement of any of the U.S. Patents or Foreign Patents, (ii) formally invited any third party to enter into a license under any of the U.S. Patents or Foreign Patents, or (iii) initiated any enforcement action with respect to any of the U.S. Patents or Foreign Patents; and

(d)    such other instruments, duly executed by Assignor, as reasonably requested by Purchaser as may be necessary to confirm Assignor's transfer of the Patent Rights to Purchaser.

**9.    TERMINATION**

9.1    This Agreement may be terminated prior to the Closing as follows:

(a)    By mutual consent;

(b)    By either party, if (i) any of the conditions to the obligations of such party set forth in this Agreement shall have become incapable of fulfillment other than as a result of a breach by such party of this Agreement or (ii) the other party shall have materially breached this Agreement;

(c)    By either party, if the Closing shall not have occurred on or prior to 11:59 p.m. Eastern time on October 14, 2011; provided that neither Party may terminate this Agreement pursuant to this Section 9.1(c) if such Party has breached any provision of this Agreement, and provided further that Purchaser shall have the right to extend the date set forth this Section 9.1(c) if the Sale Order has not been granted as of such date.

9.2    In the event that this Agreement is validly terminated in accordance with this Section 9, this Agreement shall terminate and each of the parties shall be relieved of its respective duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Purchaser or Assignor; provided however, that the obligations of the parties set forth in this Section 9.2, Section 7.2, and Section 11 hereof

shall survive any termination of this Agreement and shall be enforceable hereunder. Except as set forth in the following sentence, if this Agreement terminates in accordance with its provisions Assignor shall cause the Firm to return the Deposit to Purchaser within three (3) Business Days following the date of such termination. If this Agreement is terminated by the Purchaser in breach of this Agreement, or is terminated by Assignor due to a material breach of this Agreement by Purchaser, the Purchaser shall forfeit the Deposit and Assignor shall be entitled to obtain the Deposit from the Firm (regardless of whether the Purchaser delivered the highest bid or the Backup Bid). Such forfeiture of the Deposit shall constitute liquidated damages and shall be Assignor's exclusive remedy for any such breach by Purchaser (regardless of whether the Purchaser delivered the highest bid or the Backup Bid). In the event of any dispute over any funds in such escrow, the Firm shall interplead such disputed funds with the Bankruptcy Court.

**10.    TAX MATTERS**

10.1    <u>Transfer Taxes</u>. Purchaser shall be responsible for the payment of all Transfer Taxes associated with the purchase of the Patent Rights, if any. The Debtors, Assignor and their respective affiliates shall cooperate in filing any Tax Returns required to be filed in connection with any Transfer Taxes payable in connection with the transactions contemplated herein, or as may be necessary to permit any Transfer Tax to be assessed and paid on or prior to the Closing in accordance with any available pre sale filing procedure, as well as to obtain any exemption or refund of any such Transfer Tax. Assignor acknowledges that Purchaser shall not be responsible for the payment of any Taxes imposed on the Debtors or the Trustee under any U.S. federal, state or foreign Tax laws applicable to any income or proceeds received or realized by Assignor in respect of any consideration paid by Purchaser hereunder.

10.2    <u>Prorations</u>. All property Taxes or similar ad valorem obligations levied with respect to the Patent Rights for any taxable period that begins before and ends after the Closing Date, whether imposed or assessed before or after the Closing Date, shall be prorated between the Debtors and Purchaser as of 12:01 a.m. (California time) on the day following the Closing Date. The Debtors' portion of such Taxes shall be determined by multiplying the aggregate amount of such Taxes by a fraction, the numerator of which shall be the number of days from and including January 1 to, and including, the Closing Date, and the denominator of which shall be 365. Purchaser's share of such Taxes shall be the aggregate amount of all such bills less the Debtors' share. If the exact amount of any personal property Taxes is not known on the Closing Date, the apportionment shall be based upon a reasonable amount, without subsequent adjustment. Any refund of Taxes paid by the Debtors or Assignor, on the one hand, or the Purchaser, on the other, and received by the other party, shall promptly be paid over to such party.

10.3    <u>Purchase Price Allocation</u>. Within sixty (60) days after the Closing Date, Purchaser shall deliver to the Trustee an allocation detailing the allocation of the Purchase Price among the Patent Rights. If required by applicable law,

Purchaser and the Debtors will each file an Internal Revenue Service Form 8594 "Asset Acquisition Statement under Section 1060" at the times and in the manner as required by Treasury Regulation 1.1060-1 consistent with such certificate of allocation. The allocation will be conclusive and binding on the parties for all Tax purposes, including reporting and disclosure requirements under the Code and any foreign, state, or local Tax authority, unless otherwise required pursuant to a final determination within the meaning of Section 1313 of the Code.

**11.    MISCELLANEOUS**

11.1    <u>Expenses</u>.  Each of Assignor and Purchaser shall bear their own expenses incurred in connection with the negotiation and execution of this Agreement and each other Transaction Document and the consummation of the sale of the Patent Rights and the transactions contemplated hereby.

11.2    <u>Submission to Jurisdiction; Consent to Service of Process</u>.  Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the sale of the Patent Rights, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.7 hereof; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California and any appellate court thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.7.

11.3    <u>Waiver of Right to Trial by Jury</u>.  Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

11.4    <u>Entire Agreement</u>.  This Agreement (including the Schedules and Exhibits hereto and the Non-Disclosure Agreements referenced in Section 7.2) represents the entire understanding and agreement between the parties hereto with respect to the subject matter hereof.

A/74488688.3

11.5   <u>Amendments and Waivers</u>.  This Agreement may be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by both parties.  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

11.6   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia applicable to contracts made and performed in Virginia, and, to the extent applicable, the Bankruptcy Code.

11.7   <u>Notices</u>.  All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or electronic mail (and no notice of failure of delivery was received within a reasonable time after such message was sent) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses, facsimile numbers and e mail addresses (or to such other address, facsimile number or e mail address as a party may have specified by notice given to the other party pursuant to this provision):

If to Assignor, to:

Circuit City Stores, Inc. Liquidating Trust
200 Westgate Parkway
Suite 100
Richmond, VA 23233
Attention:  Jeff McDonald
E mail:  jeffmcdonald@ccltrust.com

With a copy (which shall not constitute notice) to:

A/74488688.3

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA  90067-4100
Attention:  Andrew W. Caine, Esq.
Facsimile:  (310) 201-0760
E mail:  acaine@pszjlaw.com

If to Purchaser, to:

Innovative Video Security LLC
c/o Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806
Attn: Mara Glaser McCahan
Facsimile: 202-373-6001
E mail: mara.glaser-mccahan@bingham.com

With a copy (which shall not constitute notice) to:

Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806
Attn: Brent Salmons
Facsimile: 202-373-6001
E mail:  brent.salmons@bingham.com

11.8    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the sale of the Patent Rights contemplated by this Agreement is not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the sale of the Patent Rights contemplated by this Agreement is consummated as originally contemplated to the greatest extent possible.

11.9    Third Party Beneficiaries.  No Person (other than the parties and their respective successors and affiliates) shall have or be construed to have any legal or equitable right, remedy or claim under or in respect of or by virtue of this Agreement or any provision herein.

11.10   Binding Effect; Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  No assignment of this Agreement or of any rights or obligations hereunder may be made by either Assignor, on the one hand, or Purchaser, on the other hand (by operation of law or otherwise), without the prior written

A/74488688.3

consent of the other parties hereto and any attempted assignment without the required consents shall be void; provided, however, that Purchaser may assign any or all of its rights, interests, and obligations hereunder to one or more of its affiliates, provided, further, however, no such assignment shall relieve Purchaser of its obligations hereunder.  No assignment of any obligations hereunder shall relieve the parties hereto of any such obligations.  Upon any such permitted assignment, the references in this Agreement to Purchaser shall also apply to any such assignee unless the context otherwise requires.

11.11   Capacity.    Assignor's covenants, representations and warranties herein (including as made or qualified in the Schedules hereto) are made by the Assignor in the capacity of a liquidating trust, without personal liability to the trustee thereof, other than with respect to fraudulent or criminal activity with respect to the sale of the Patent Rights contemplated by this Agreement.

11.12   Counterparts.  This Agreement may be executed in one or more counterparts (including by facsimile or electronic mail), each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will   be   deemed   to   constitute   one   and   the   same   agreement.

A/74488688.3

**AGREED TO BY:**

**Innovative Video Security LLC**

By_____

Name: _____

Title: _____

**Acknowledged, Agreed, and Accepted:**

Circuit City Stores, Inc. Liquidating Trust
through Alfred H. Siegel, as trustee of the
Circuit City Stores, Inc. Liquidating Trust,
and not in any individual capacity

_____  8/18/2011

**AGREED TO BY:**

**Innovative Video Security LLC**

By: *Mara Glaser McCa...*

Name: *Mara Glaser McCahen*

Title: *Authorized Signatory*

**Acknowledged, Agreed, and Accepted:**

Circuit City Stores, Inc. Liquidating Trust
through Alfred H. Siegel, as trustee of the
Circuit City Stores, Inc. Liquidating Trust,
and not in any individual capacity

_____

**Exhibit A**

**U.S. Patents**

| Patent or application no. | Country | Filing Date | Title of Patent and First Named Inventors |
|---|---|---|---|
| 6078328 | US | 06/08/1998 | Compressed video graphics system and methodology<br><br>Schumann, Robert W. |
| 6285774 | US | 06/08/1998 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| 6912661 | US | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| 6775915 | US | 08/13/2002 | Method and device for determining adequacy of space for television sets<br><br>Stephens, Robert |
| 6738905 | US | 04/14/1999 | Conditional access via secure logging with simplified key management<br><br>Kravitz, David W. |
| 6538969 | US | 06/04/1999 | System and method for implementing open and closed file systems on a storage medium<br><br>Vitkus, Richard A. |
| 6829618 | US | 06/04/1999 | Disc layout and optimization process<br><br>Abraham, Thomas D. |
| 7698570 | US | 10/11/2006 | Digital content distribution system and method<br><br>Schumann, Robert Wilhelm |
| 6658059 | US | 01/18/2000 | Motion field modeling and |

| | | | estimation using motion transform<br><br>Iu, Siu-Leong |
|---|---|---|---|
| 6975728 | US | 06/22/2000 | Hierarchical key management<br><br>Eye, Randy |
| 6957344 | US | 07/10/2000 | Manufacturing trusted devices<br><br>Goldshlag, David Moshe |
| 7464274 | US | 08/08/2005 | Manufacturing trusted devices<br><br>Goldshlag, David Moshe |
| 6628715 | US | 01/18/2000 | Method and apparatus for estimating optical flow<br><br>Iu, Siu-Leong |
| 6865747 | US | 03/31/2000 | High definition media storage structure and playback mechanism<br><br>Mercier, Guillaume |
| 6901514 | US | 06/01/2000 | Secure oblivious watermarking using key-dependent mapping functions<br><br>Iu, Siu-Leong |
| 09/763917 | US | 07/03/2001 | Watermarking system and methodology for digital multimedia content<br><br>Iu, Siu-Leong |
| 6240401 | US | 06/05/1998 | System and method for movie transaction processing<br><br>Oren, Joseph Eugene |
| 6907127 | US | 07/10/2000 | Hierarchical key management encoding and decoding<br><br>Kravitz, David William |
| 7170941 | US | 05/29/2002 | Temporal compression<br><br>Shives, Michael |
| 5822291 | US | 11/21/1995 | Mass storage element and drive unit therefor |

|  |  |  | Brindze, Paul L. |
|---|---|---|---|
| 7162642 | US | 06/15/2001 | Digital content distribution system and method |
|  |  |  | Schumann, Robert Wilhelm |
| 7203955 | US | 12/22/2004 | High definition media storage structure and playback mechanism |
|  |  |  | Mercier, Guillaume |
| 6975728 | US | 06/22/2000 | Hierarchical Key Management |
|  |  |  | Eye, Randy |
| 2007/0140307 | US | 02/28/2007 | High Definition Media Storage Structure and Playback Mechanism |
|  |  |  | Mercier, Guillaume |
| 2008/0103913 | US | 10/26/2006 | System and method for guided sales |
|  |  |  | Leach, Brian Robert |

**Exhibit B**

**Foreign Patents**

| Patent or application no. | Country | Filing Date | Title of Patent and First Named Inventors |
|---|---|---|---|
| EP1086585 | EP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| JP4397123 | JP | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies<br><br>Schumann, Robert W. |
| DE69806124 | DE | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| DK0954774 | DK | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Artigalas, Max |
| AR001408 | AR | 03/22/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CO4520177 | CO | 03/22/1996 | Mass storage element and drive unit therefor<br><br>Brindze, Paul L. |
| LV12057 | LV | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| MD980067 | MD | 03/21/1996 | Multimedia interactive system for transactions control<br><br>Brindze, Paul L. |

| | | | |
|---|---|---|---|
| MX9707261 | MX | 09/23/1997 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| OA10509 | OA | 09/19/1997 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| RO118098 | RO | 03/21/1996 | Multimedia interactive transactioning system<br><br>Brindze, Paul L. |
| TR97100797 | TR | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| ZA9602300 | ZA | 03/22/1996 | Interactive multi-media system<br><br>Brindze, Paul L. |
| CA2319538 | CA | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| EP1057299 | EP | 02/19/1999 | Information access control system and method<br><br>Kravitz, David W. |
| ZA9901362 | ZA | 02/19/1999 | Information access control system and method.<br><br>Kravitz, David W. |
| EE9700322 | EE | 03/21/1996 | Interactive multimedia system for organizing transactions<br><br>Brindze, Paul L. |
| HU9900915 | HU | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| JP11502661 | JP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| NO974351 | NO | 09/22/1997 | Interactive transaction control multi-media system |

| | | | |
|---|---|---|---|
| | | | Brindze, Paul L. |
| PL322408 | PL | 03/21/1996 | Interactive multimedia device, and a storage component for the interactive media device and method for producing an element of storage<br><br>Brindze, Paul L. |
| SI9620057 | SI | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| SK128497 | SK | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| TW432852 | TW | 02/20/1999 | Information access control system and method<br><br>Kravitz, David W. |
| AU4417199 | AU | 06/04/1999 | System and method for implementing open and closed file systems on a storage medium<br><br>Vitkus, Richard 1. |
| AT219583 | AT | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| AU6209998 | AU | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| EP0855638 | EP | 01/24/1997 | Method and apparatus for encrypting and for decrypting data arranged in a data sector<br><br>Christopher, Lauren Ann |
| EP0954774 | EP | 01/15/1998 | Method and apparatus for encrypting and for decrypting data arranged in a data sector |

| | | | |
|---|---|---|---|
| | | | Christopher, Lauren Ann |
| AU4317999 | AU | 06/07/1999 | System and methodology for tracing to a source of unauthorized copying of prerecorded proprietary material, such as movies |
| | | | Schumann, Robert W. |
| AU2766599 | AU | 02/19/1999 | Information access control system and method |
| | | | Kravitz, David W. |
| AU2959700 | AU | 01/05/2000 | Content distribution system and method |
| | | | Schulman, Robert |
| AU3343400 | AU | 01/05/2000 | Digital content distribution system and method |
| | | | Schumann, Robert |
| AU4408499 | AU | 06/07/1999 | Compressed video graphics sustem and methodology |
| | | | Schumann, Robert |
| AU5371096 | AU | 03/21/1996 | Interactive transaction management multimedia system |
| | | | Brindze, Paul L. |
| BG101987 | BG | 10/22/1997 | Interactive multimedia system for transactive control |
| | | | Brindze, Paul L. |
| BR9607978 | BR | 03/21/1996 | Interactive transaction management multimedia system |
| | | | Brindze, Paul L. |
| CA2215830 | CA | 03/21/1996 | Interactive transaction management multimedia system |
| | | | Brindze, Paul L. |
| CZ9702995 | CZ | 03/21/1996 | Personalized control of transactions in interactive multi-media system |

A/74488688.3

| | | | |
|---|---|---|---|
| | | | Brindze, Paul L. |
| EP0815503 | EP | 03/21/1996 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| IL117565 | IL | 03/20/1996 | Interactive multimedia system<br><br>Brindze, Paul L. |
| LT97165 | LT | 10/22/1997 | Interactive transaction management multimedia system<br><br>Brindze, Paul L. |
| CA2437205 | CA | 08/13/2003 | Method and device for determining adequacy of space for television sets<br><br>Stephens, Robert |
| CA2566052 | CA | 10/30/2006 | System and method for guided sales<br><br>Janzer, Lisa Hendrickson |

**Exhibit C**

**Form of Assignment of Patent Rights**

This Assignment of Patent Rights is entered into pursuant to that certain Agreement dated as of August __, 2011 (the "**Purchase Agreement**") by and between Circuit City Stores, Inc. Liquidating Trust and Assignee (as defined below) and shall remain subject in all respects to the terms and conditions set forth therein and in the Sale Order. Without limitation, the Assignor (as defined below) and the Assignee hereby acknowledge and agree that the provisions of this Assignment of Patent Rights shall not affect or modify the scope or duration of any representations, warranties, covenants, terms and provisions of the Purchase Agreement, and that in the event of a conflict between the terms and provisions of this Assignment of Patent Rights and the terms and provisions of the Purchase Agreement, the terms and provisions of the Purchase Agreement shall prevail, govern and control in all respects. All capitalized but undefined terms used herein shall have the meaning given such terms in the Purchase Agreement.

For good and valuable consideration, the receipt of which is hereby acknowledged, Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Stores PR, LLC, Circuit City Properties LLC, Orbyx Electronics, LLC, Kinzer Technology, LLC, Courchevel, LLC, Abbott Advertising Agency, Inc., Mayland MN, LLC, Papsco Designs, Inc., Sky Venture Corp., XSStuff, LLC, and PRAHS, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust, its Chapter 11 trustee ("**Assignor**"), does hereby sell, assign, transfer, and convey to Innovative Video Security LLC, a Delaware limited liability company, having an address at _____ ("**Assignee**"), or its designees, all right, title, and interest of Assignor that exist today and may exist in the future in and to any and all of the Patent Rights.

Assignor hereby certifies to Assignee that (a) the representations and warranties contained in Section 4 of the Purchase Agreement are true and correct in all respect, on and as of the date hereof, and (b) Assignor has performed and complied with all agreements, obligations and conditions contained in the Purchase Agreement that are required to be performed or complied with by the Assignor on or prior to the date hereof.

Assignor hereby authorizes the respective patent office or governmental agency in each jurisdiction to issue any and all patents, certificates of invention, utility models or other governmental grants or issuances that may be granted upon any of the Patent Rights in the name of Assignee, as the assignee to the entire interest therein.

Assignor will, at the reasonable request of Assignee and without demanding any further consideration therefore, do all things necessary, proper, or advisable, including without limitation, the execution, acknowledgment, and recordation of

specific assignments, oaths, declarations, and other documents on a country-by-country basis, to assist Assignee in obtaining, perfecting, sustaining, and/or enforcing the Patent Rights.  Such assistance will include providing, and obtaining from the respective inventors, prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, powers of attorney, specifications, declarations or other papers, and other assistance reasonably necessary for filing patent applications, complying with any duty of disclosure, and conducting prosecution, reexamination, reissue, interference or other priority proceedings, opposition proceedings, cancellation proceedings, public use proceedings, infringement or other court actions and the like with respect to the Patent Rights.

The terms and conditions of this Assignment of Patent Rights will inure to the benefit of Assignee, its successors, assigns, and other legal representatives and will be binding upon Assignor, its successors, assigns, and other legal representatives.

IN WITNESS WHEREOF this Assignment of Patent Rights is executed at _____ on _____.

**ASSIGNOR:**

**Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust**

By:    _____
Name:  _____
Title: _____

### ATTESTATION OF SIGNATURE PURSUANT TO 28 U.S.C.  § 1746

The undersigned witnessed the signature of _____ to the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust and makes the following statements:

1.    I am over the age of 18 and competent to testify as to the facts in this Attestation block if called upon to do so.

2.    _____ is personally known to me (or proved to me on the basis of satisfactory evidence) and appeared before me on _____ __, 2011 to execute the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust.

A/74488688.3

3.    _____ subscribed to the above Assignment of Patent Rights on behalf of Circuit City Stores, Inc. acting by and through Circuit City Stores, Inc. Liquidating Trust.

I declare under penalty of perjury under the laws of the United States of America that the statements made in the three (3) numbered paragraphs immediately above are true and correct.

EXECUTED on _____(date)

_____

Print Name:  _____