Elizabeth Gunn, VSB No. 71044   *and*   Nels Ackerson, *pro hac vice*
DurretteCrump PLC   Ackerson Kauffman Fex, PC
1111 East Main Street, 16th Floor   1701 K Street, NW, Suite 1050
Richmond, VA 23219   Washington, DC 20006
(804) 775-6900 Telephone   (202) 833-8833 Telephone
(804) 775-6911 Facsimile   (202) 833-8831 Facsimile

*Counsel for Joshua M. Loveall*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653-KRH |
| | ) |
| CIRCUIT CITY STORES, INC., et al. | ) Chapter 11 |
| | ) |
| Debtors, | ) (Jointly Administered) |
| _____ | ) |

**ADDITIONAL RESPONSE TO LIQUIDATING TRUSTEE'S OBJECTION
TO THE CLAIM OF JOSHUA M. LOVEALL UNDER
<u>SECTION 507(A)(4) OF THE U.S. BANKRUPTCY CODE</u>**

Joshua M. Loveall, by counsel, submits this Additional Response in support of his claim for pre-petition employment compensation in the amount of $10,950.00 (the "Claim") pursuant to 11 U.S.C. § 507(a)(4) of the United States Bankruptcy Code, and in further response to the "Trustee's Thirteenth Omnibus Objection to Claims, Reduce to Statutory Cap, or Disallow, as Applicable" (the "Claim Objection")" (ECF No. 10051), and respectfully states as follows:

## BACKGROUND

Section 507(a)(4) gives priority to a maximum amount of $10,950 for "wages, salaries, commissions, including vacation, severance, and sick leave pay earned by an individual" that are "earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first."

The date of filing of the petition by Circuit City Stores, Inc. ("Circuit City" or the "Company") was November 10, 2008 (the "Petition Date"). The date of final liquidation of substantially all of the assets of the Company was March 8, 2009 (the "Liquidation Date").

Mr. Loveall concluded his almost 15-year Circuit City career as Store Director of Circuit City's Port Charlotte, Florida store when he was terminated by the Liquidating Trustee on March 10, 2009, two days after the Liquidation Date. After joining Circuit City as a college student in 1995, he had been promoted to increasingly challenging positions in Maryland, Virginia, Georgia and Florida. As the capstone of his Circuit City career, under his leadership, the Port Charlotte store rose from an "underperforming" status to become one of the five most profitable Circuit City stores in the nation.

In January 2008, Circuit City proposed and Mr. Loveall accepted an enhanced "key associate" employment agreement (the "Retention Agreement" or "Agreement")[1] which added a $15,000 "retention" benefit for the purpose of retaining Mr. Loveall's skills and services by offering him "an incentive to work for the Company's long-term success." The Agreement served the additional purpose of reducing Mr. Loveall's

---

[1] Mr. Loveall's Retention Agreement is identical to the second of the two sample agreements that are attached to the Claim Objection – the one dated January 4, 2008. *See also* Affidavit of Joshua M. Loveall, attached hereto.

2

potential strain and hardship of losing his employment if the Company's recovery plan did not succeed. The Agreement described the $15,000 benefit as "long-term cash compensation" ("Retention Compensation" or "Compensation").

Similar in purpose and effect to a severance plan, the Agreement required a corresponding commitment by Mr. Loveall that, in addition to the other terms of his employment, he "remain continuously employed in a full-time active position with the Company" through specific vesting dates. Mr. Loveall's signature was required immediately below the following statements: "Your signature will also constitute your agreement to the terms and conditions contained in this letter. With this award, we express our confidence in your ability to help shape a Circuit City that will benefit our associates, our customers, and our shareholders in years to come."

The Agreement states that Mr. Loveall's Retention Compensation would become vested and would be paid when Mr. Loveall remained "continuously employed in a full-time active position with the Company through and including the date on which a 'Change of Control' of the Company occurs."

Mr. Loveall earned the promised Retention Compensation, not by merely signing the Agreement, but by performing under it through the date on which his Compensation benefit vested. Like every employment agreement, the employer could not compel performance in an absolute and mandatory sense (if nothing else, the Thirteenth Amendment would prevent that result). Rather the Agreement, as a modification of an ongoing employment agreement between the Company and Mr. Loveall, could only document the consideration that was required of each party. Here, Mr. Loveall's consideration, which the Company induced him to make and the Company accepted, was

3

his agreement to remain a full-time active employee of the Company and his subsequent performance in that capacity through the vesting date.

Mr. Loveall timely filed his proof of claim (claim # 5592) for priority payment under Section 507(a)(4). He was terminated without cause on March 10, 2009, two days after the Liquidation Date; when the Liquidating Trustee determined that his services were no longer needed.

Mr. Loveall requests that his Claim be allowed on a priority basis up to the statutory cap of $10,950 under section 507(a)(4), and that the remaining portion be classified as a general unsecured claim.

The Circuit City Liquidating Trustee has acknowledged in a parallel pleading that this Court's prior holdings require priority treatment of employment severance claims that are parallel to Mr. Loveall's Claim  The Trustee's concession of that issue is contained in the "Liquidating Trust's Thirteenth Omnibus Objection to Certain Priority Claims: Allow up to the Statutory Cap, Reclassify, Disallow as Applicable (Employment Contract Severance Claims) (ECF No. 10051)," which is quoted, *infra*, at 5-6.

Despite the inconsistent position taken in the Thirteenth Omnibus Objection, the Trustee has objected to Mr. Loveall's Claim, thus bringing rise to this proceeding.

## ISSUES FOR DECISION

The Trustee's Claim Objection raises four central issues.

1. When are Severance Benefits or Retention Benefits Earned Under Section 507(a)(4);

2. Is Mr. Loveall's Retention Benefit Subject to this Court's *LandAmerica* and *Matson* Precedents and Therefore Allowed as a Priority Claim under Section 507(a)(4);

4

    3.      Under this District's Precedents Is Mr. Loveall's Post-Termination Dismissal Deemed to Have Accrued Immediately Before the Petition Date; and

    4.      Do Other Sections of the Bankruptcy Code or Other Precedents Limit Mr. Loveall's Section 507(a)(4) Claim.

# ARGUMENT

Under the Agreement and the precedents of this Court and the Fourth Circuit Court of Appeals, Mr. Loveall's Claim should be approved as a priority claim up to the maximum amount of $10,950 under Section 507(a)(4), and the remainder of his Claim should be retained as an general unsecured claim.

**A.    In this Court and the Fourth Circuit, Severance or Retention Benefits Are Earned When They Accrue on the Date They Vest, and the Employee Therefore Becomes Entitled to Receive Them on the Vesting Date for Purposes of Section 507(a)(4).**

### The *LandAmerica* Case

A year ago this Court explained that, "[t]he Bankruptcy Code does not define the term 'earned' and there is no controlling case law directly on point in this jurisdiction." *In re LandAmerica Financial Group, Inc.*, 435 B.R. 343, 347 (Bankr. E.D. Va. 2010).

The *LandAmerica* decision by this Court then held that "severance pay is 'earned' on the day that an employee shows up to work and is terminated by the company without cause." *Id*. at 351. We submit that decision resolved the issue.

This Court rejected the LandAmerica Trustee's theory that the severance pay in that case was earned day-by-day over the tenure of the employee's employment. The *LandAmerica* court held further, "[i]f an employee terminated post petition is covered under a pre-petition severance benefit contract that has not been assumed post-petition,

5

then the severance claim will be deemed to have accrued immediately prior to the Petition Date." *Id.* at n.12 (quoting *In re Dornier Aviation (North America), Inc.,* 2002 WL 31999222 (Bankr. E.D. Va. Dec. 18, 2002)).

Importantly, the Trustee has acknowledged in a parallel pleading[2] that this Court's binding precedent requires employment contract severance claims that are parallel to Mr. Loveall's Claim be allowed on a priority basis:

> Under case law decided by this Court, the Change-in-Control Severance Claims are deemed to have arisen as of the petition date, which is during the priority period set forth in 11 U.S.C. § 507(a)(4). Accordingly, the Change-in-Control Severance Claims should be allowed on a priority basis up to the statutory cap set forth in section 507(a)(4), less any other priority payments received pursuant to section 507(a)(4). The remaining portion of the Change-in-Control Severance Claims should be reclassified as general unsecured claims.

Liquidating Trust's Thirteenth Omnibus Objection (ECF No. 10051) at 4.

### The *Matson* Case

Because *LandAmerica* was a case of first impression, this Court certified its decision to the Fourth Circuit Court of Appeals pursuant to 28 U.S.C. §158(d)(2)(A)(i). Before the Court of Appeals, the case was denominated *Matson v. Alarcon*, 651 F.3d 404, 2011 WL 2624437 (4th Cir. 2011).[3]

The Court of Appeals in *Matson* affirmed the Bankruptcy Court's decision.

In affirming, the Fourth Circuit held that "an employee 'earns' the full amount of 'severance pay' on the date the employee becomes entitled to receive such compensation, subject to satisfaction of the contingencies provided in the applicable severance compensation plan." *Id.* at *1.

---

[2] Liquidating Trust's Thirteenth Omnibus Objection to Certain Priority Claims: Allow up to the Statutory Cap, Reclassify, Disallow as Applicable (Employment Contract Severance Claims).
[3] Because the F.3d publication of *Matson* lacks pagination at this time, page references will be made to the WL publication.

6

The employees in the *LandAmerica* and *Matson* cases became "entitled to receive" severance compensation when the employees were terminated (and the severance plan had remained in effect in the absence of any action by the company to cancel or modify the plan). Thus, the court explained, "In the present case, when the claimants became participants in the plan upon their termination from employment and their signing a severance agreement and release, the claimants earned severance compensation." *Id.* at *4.

After review of the law in other Circuits and considering the legislative history of Section 507(a)(4), the Fourth Circuit repeated, "we remain of the opinion that under 11 U.S.C. § 507(a)(4), an employee 'earns' the entirety of his or her severance compensation on the date that the employee becomes entitled to receive such compensation under the applicable severance compensation plan." *Id.*

The Fourth Circuit has interpreted the word "earned" and the term "severance pay," for all purposes that are relevant here. With respect to the word "earned," the Fourth Circuit stated that the plain and ordinary meaning provides the most reliable indicator of Congressional intent and reasoned as follows:

> While the statute does not define the word "earned," we observe that to "earn" generally means to "receive as equitable return for work done or services rendered," or "to come to be duly worthy of or entitled." *Webster's Third New International Dictionary* 714 (2002).

*Id.* at *3.

Acknowledging that the term "severance pay" also is undefined in connection with Section 507(a)(4), the Fourth Circuit continued:

> [T]hat term generally is defined as "an allowance usually based on length of service that is payable to an employee" upon termination without cause. *See Webster's Third New International Dictionary* 2081 (2002). The purpose of such

7

severance compensation is to "alleviate the consequent need for economic readjustment" and "to recompense [the employee] for certain losses attributable to the dismissal." *Straus-Duparquet, Inc. v. Local Union No. 3, Int'l B'hood of Elec. Workers*, 386 F.2d 649, 651 (2d Cir. 1967).

*Id*.

Concluding its analysis, the *Matson* Court wrote:

In view of the meaning and the purpose of severance compensation, we conclude that the second definition of "earn" described above, to become entitled, represents the ordinary meaning of the manner in which employees "earn" "severance pay," within the intendment of Congress in 11U.S.C. § 507(a)(4)(A).

*Id.* at *4.

Accordingly, the Fourth Circuit affirmed that "the bankruptcy court's holding [in the *LandAmerica* decision] that the severance claims at issue are entitled to priority treatment under 11U.S.C. § 507(a)(4) in amounts no greater than the maximum amount provided by statute." *Id*. at *5.

Mr. Loveall respectfully submits that the *Matson* holding settled the matter with respect to severance benefits, and as explained below for Mr. Loveall's parallel Retention benefits.

**B.      Mr. Loveall's Employee Retention Claim Is Controlled by the *LandAmerica* and *Matson* Precedents and Therefore is Entitled to the Same Section 507(a)(4) Priority.**

The *LandAmerica* and *Matson* analysis applies here, and those precedents govern the application of Section 507(a)(4) to Mr. Loveall's Retention Benefit just as they applied to the employee severance plan benefits in *LandAmerica*.

In *LandAmerica* and in Mr. Loveall's case, the agreement that created the cash compensation benefit was executed and effective before the 180-day pre-petition period.

8

In *LandAmerica* and in Mr. Loveall's case, the employee was required to remain employed through a change of control in order to receive the compensation.

In *LandAmerica* and in Mr. Loveall's case, the employee would have lost the contractual right to compensation if the employee had quit.

In *LandAmerica* and in Mr. Loveall's case, the company retained the right to eliminate the benefit. In *LandAmerica* that could have been done by either canceling or modifying the agreement; in Mr. Loveall's case, the identical remedy was available to the Company by terminating the employee before the vesting date.

In *LandAmerica* and in Mr. Loveall's case, the Company's rationale was to retain the services of the employee so long as those services were needed. In *LandAmerica*, the objective was achieved by making the date of termination of the employee without cause the vesting date; in Mr. Loveall's case, the same objective was achieved by requiring continued employment through a specific vesting date, which of course Mr. Loveall did.

In *LandAmerica* and in Mr. Loveall's case, the contractual compensation was intended to be available at a time when it would ease the employee's burden of lost employment, which in both situations was an inducement to retain valued employees.

As the *Matson* court explained, consistent with its earlier quotation of the *Straus-Duparquet* decision (*supra*, at 8), "employees receive 'severance pay' as compensation for the injury and losses resulting from the employer's decision to terminate the employment relationship. This ordinary understanding of the term 'severance pay' is consistent with the stated purpose of the plan in the present case, namely, to assist employees upon termination." *Matson,* 2011 WL 2624437, at *3.[4]

---

[4] *See also*, *Matson* at *3: "The purpose of such severance compensation is to 'alleviate the consequent need for economic readjustment' and 'to recompense [the employee] for certain

9

In *LandAmerica* and in Mr. Loveall's case, the respective Trustees' proposals have not been consistent with reasonable contractual expectations, common business and employment practices, or good policy.  Therefore, in *LandAmerica*, this Court rejected the Trustee's argument that compensation was "earned" day-by-day from the date the employee entered into the agreement until the date of termination because under that theory, a long-term employee would have received much less under a Section 507(a)(4) claim than a short-term employee.

Here, the Claim Objection proposes an even more unfair and irrational result because a new employee who signed the Retention Agreement in May of 2008 would receive the full $10,950 under a Section 507(a)(4) claim.  But Mr. Loveall, a valued 14-year employee who signed the same Agreement four months earlier but whose contractual right vested and accrued at the same time, would get nothing.

Under the definition of "earned"  in *Webster's Third New International Dictionary*, which this Court and the Fourth Circuit apply, Mr. Loveall did not "come to be duly worthy of or entitled" to anything by merely signing the Agreement in January 2008.  No employee did.  For Mr. Loveall, to become entitled, he was required to continue full-time active employment for the Company through the vesting date.  He did so. Mr. Loveall's Compensation was earned on full performance and was deemed accrued immediately before the Petition Date for purposes of Section 507(a)(4).

---

losses attributable to the dismissal.' *Straus-Duparquet, Inc. v. Local Union No. 3, Int'l B'hood of Elec. Workers*, 386 F.2d 649, 651 (2d Cir. 1967)"; *LandAmerica* at 351: "severance pay is designed to compensate employees for the economic disruption and readjustment that follows termination . . . ." *In re Landmark Land Company,* 136 B.R. 410, 413 (S.D.S.C. 1992).

### C. Under the Law of this District, Mr. Loveall's Claim is Deemed to Have Accrued Immediately Before the Petition Date.

As held most recently in *LandAmerica*, if an employee terminated post-petition is covered under a pre-petition severance benefit contract that has not been assumed post-petition, then the severance claim will be deemed to have accrued immediately prior to the Petition Date. *See In re Dornier Aviation (North America), Inc.,* 2002 WL 31999222 (Bankr. E.D. Va. Dec. 18, 2002).

Mr. Loveall's Claim requires the same result that the Liquidating Trust's Thirteenth Omnibus Objection allowed for executive severance pay benefits that are legally equivalent to Mr. Loveall's Claim in all material respects. *See* excerpt of the Trustee's Thirteenth Omnibus Objection (ECF No. 10051), *supra,* at 6. Under the Trustee's own language, Mr. Loveall's "Change-in-Control Severance Claims are deemed to have arisen as of the petition date, which is during the priority period set forth in 11 U.S.C. § 507(a)(4). Accordingly, the Change-in-Control Severance Claims should be allowed on a priority basis up to the statutory cap set forth in section 507(a)(4), less any other priority payments received pursuant to section 507(a)(4)."

### D. Fourth Circuit Law Does Not Follow Precedents in Some Other Circuits that Apply Other Sections of the Bankruptcy Code, that Might in Those Jurisdictions Affect the Approval of Mr. Loveall's Priority Claim.

Courts in some other circuits address the priority treatment of severance compensation in the context of administrative expense claims under 11 U.S.C. § 503(b)(1)(A). Indeed, some other jurisdictions that have addressed entitlement to severance pay in the context of that section of the Bankruptcy Code have made

11

determinations based on the value of services provided after the debtor files for bankruptcy rather than on the terms of the agreement that created the benefits.

The Fourth Circuit, to the contrary, looks to the terms of the Company's contract under Section 507(a)(4). The courts did so in *LandAmerica* and *Matson*, and the Trustee has proposed no distinction here.[5]

The Fourth Circuit has not followed the line of cases in circuits that have relied on other statutory provisions. In *Matson*, the court cited the law in some "sister circuits" and concluded that limits on severance benefits that might affect the timing or might decrease the benefits for claims such as Mr. Loveall's Retention Compensation, if considered under Section 503(b)(1)(A), do not apply here. The *Matson* court concluded: "[t]herefore, we remain of the opinion that under 11 U.S.C. § 507(a)(4), an employee 'earns' the entirety of his or her severance compensation on the date that the employee becomes entitled to receive such compensation under the applicable severance compensation plan." *Matson,* 2011 WL 2624437, at *4.

The Fourth Circuit and this District, in particular, have recognized congressional intent to provide greater access to recovery from debtor estates of employee benefit claims. The *LandAmerica* Court explained, "Congress has taken an entirely different approach with regard to § 507(a)(4) of the Bankruptcy Code. In lieu of imposing a narrow construction to the statute, Congress created a cap of $10,950 on each individual employee's claim." 435 B.R. at 350.

---

[5] Indeed, in objecting to Mr. Loveall's Claim, the Trustee has not questioned the validity of enforceability of the Agreement. The facts relevant to Mr. Loveall's Agreement, as in *LandAmerica* and *Matson*, show that the Agreement satisfies all relevant components of contract law as applied in Florida and elsewhere, including employment contracts, consideration, performance, promissory estoppel, equitable estoppel, remedies, etc. The questions, therefore, are limited to the application of Section 507(a)(4).

"In construction of code provisions relating to wage priorities courts have liberally construed the statutes to accord possible intent of Congress by giving broad meaning to the provisions of the Code as to relate to the facts rather than narrow restrictive meanings." *In re Seventh Avenue South, Inc.,* 10 B.R. 289, 291 (Bankr. W.D. Va. 1981) (determining that the claimant "earned" her commissions under § 507 of the Bankruptcy Code when all factors necessary for determining commissions had occurred and when the computation was finally made, rather than over the period of employment).

Thus, issues that elsewhere might arise outside of Section 507(a)(4), such as the existence of executory or non-executory severance agreements, or their acceptance or refusal, are not relevant in the context of this Section 507(a)(4) Claim, and indeed to date they have not been raised.

## CONCLUSION

For the reasons stated above, Mr. Loveall's Claim should be approved as a priority claim up to the maximum amount of $10,950 under Section 507(a)(4) and the remainder of his Claim should be retained as a general unsecured claim.

Dated: October 11, 2011                    Respectfully Submitted,

**ACKERSON KAUFFMAN FEX, PC**              **DURRETTECRUMP, PLC**

                                           /s/ Elizabeth L. Gunn
Nels Ackerson, *pro hac vice*              Elizabeth L. Gunn, VSB No. 71044
1701 K Street, NW, Suite 1050              1111 East Main Street, 16th Floor
Washington, DC 20006                       Richmond, VA 23219
(202) 833-8833 Telephone                   (804) 775-6900 Telephone
(202) 833-8831 Facsimile                   (804) 775-6911 Facsimile

*Counsel for Joshua M. Loveall*

# CERTIFICATE OF SERVICE

      I hereby certify that on October 11, 2011, I served true copies of the foregoing Response via ECF Noticing on all parties receiving ECF Notice in these cases and by electronic mail on the parties listed below:

| | |
|---|---|
| Sonnenschein Nath & Rosenthal LLP | Kutak Rock LLP |
| Attn: Robert E. Richards | Attn: Michael A. Condyles |
| 233 S. Wacker Drive | Bank of America Center |
| Suite 7800 | 1111 East Main Street, Suite 800 |
| Chicago, IL 60606-6404 | Richmond, VA 23219-3500 |
| rrichards@sonnenschein.com | michael.condyles@kutakrock.com |

                                            /s/ Elizabeth Gunn