Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted pro hac vice)
PACHULSKI STANG ZIEHL &
JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Counsel to the Circuit City Stores, Inc.
Liquidating Trust

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

Counsel to the Circuit City Stores, Inc.
Liquidating Trust

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | : | Case No. 08-35653 (KRH) |
| Debtors. | : | Jointly Administered |

SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE
CIRCUIT CITY STORES, INC. LIQUIDATING TRUST AND
PNY TECHNOLOGIES, INC.

This settlement agreement and stipulation (this "Agreement") is entered into by and among the Circuit City Stores, Inc. Liquidating Trust (the "Trust"), on the one hand, and PNY Technologies, Inc. ("PNY"), on the other hand ("PNY" and the "Trust" may be referenced herein as the "Parties", and/or each as a "Party").

DOCS_LA:231531.1
ME1 11128377v.2


EXHIBIT F

## GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition Date"), the Debtors in the above-captioned captioned cases (the "Debtors")[1] each filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"); and

WHEREAS, on January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores. On or about March 8, 2009, the going out of business sales concluded; and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

2

DOCS_LA:231531.1
ME1 11128377v.2

WHEREAS, on September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "First Amended Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the First Amended Plan was originally scheduled for November 23, 2009, but was adjourned from time to time; and

WHEREAS, on August 9, 2010, the Debtors and the Creditors' Committee filed the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), and the Plan was confirmed on September 10, 2010; and

WHEREAS, the Plan became effective on November 1, 2010, and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors; and

WHEREAS, the Trust is authorized under the Plan and Liquidating Trust Agreement to settle claims and causes of action, subject to the notice provisions therein.

3

## SETTLEMENT BACKGROUND

WHEREAS, the Debtors and PNY had various business relationships prior to the filing of the Petition Date, relating to the Debtors' operation of Circuit City retail stores;

WHEREAS, on or about December 1, 2008, PNY filed claim number 447 ("Claim No. 447") in the total amount of $1,723,312.08, asserting 503(b)(9) priority as to a portion of the claim, and as a general unsecured, non-priority entitlement as to the balance; and

WHEREAS following objection by the Debtors, the Court approved a stipulation of the Parties that the entirety of Claim No. 447 was, if valid, entitled to general unsecured non-priority status; and

WHEREAS, on or about December 16, 2008, PNY filed claim number 1723 ("Claim No. 1723") as a general unsecured, non-priority claim in an unliquidated amount, arising from prepetition litigation commenced in the District Court of New Jersey, which litigation was stayed by the filing of the Debtors' Cases; and

WHEREAS, on or about August 20, 2009, the Debtors filed their 31st Omnibus Claims Objection, which included an Objection to Claim No. 1723. The Debtors' Objection to Claim No. 1723 was continued from time to time; and

WHEREAS, on March 23, 2010, the Debtors filed a complaint initiating an adversary proceeding against PNY, No. 10-3056 (the "Adversary Proceeding"), pursuant to which the Debtors asserted that they are entitled to recover

4

certain Unpaid Obligations (as defined in the Complaint) and, pursuant to Bankruptcy Code sections 547 and 550, avoid and recover alleged preferential transfers made during the 90-day period prior to the Petition Date, and which incorporated and superceded the Debtors' Objections to Claim Nos. 447 and 1723; and

WHEREAS, rather than proceed with litigation concerning Claim Nos. 447 and 1723 and the Adversary Proceeding, the Parties engaged in good faith, arms' length negotiations to resolve the foregoing in their entireties; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby STIPULATE AND AGREE that:

1. The above recital clauses are incorporated by reference in this Stipulation as if fully set forth herein.

2. **Claim No. 447.** Claim No. 447 shall be reduced to the amount of $538,000, and shall be allowed as a general unsecured non-priority claim in the amount of $538,000. The balance of Claim No. 447 as originally asserted shall be disallowed in its entirety.

3. **Adversary Proceeding.** On the Effective Date, as defined in paragraph 16 below, the Adversary Proceeding shall be dismissed with prejudice as to all counts EXCEPT the objections to Claim No. 1723, which counts shall be dismissed without prejudice. To the extent the Debtors' 31st Omnibus Objection to

5

Claim No. 1723 remains active or pending on the Court's docket, the Trust shall modify or withdraw its Claims Objection to Claim No. 1723, subject to the Trust's right to renew its Objection in accordance with paragraph 5 below. The Parties shall take all necessary steps and file all necessary pleadings with the Court to timely dismiss the Adversary Proceeding and that portion of the 31st Omnibus Claims Objection in accordance with this Agreement.

4. **Contracts.** Any and all contracts by and between the Parties, including but not limited to the Contract, not previously terminated or rejected, shall be deemed rejected as of the Effective Date.

5. **Claim No. 1723.** The Parties reserve all rights with respect to Claim No. 1723, including the Trust's right to timely object to the claim and PNY's right to prosecute the claim fully.

6. **Resolution of Claims and Disputes.** The Parties are entering into this Settlement Agreement to resolve all matters of dispute or potential dispute arising out of claims related to or asserted in, or which could have been asserted in, the Adversary Proceeding and Claim No. 447, and any other claims by and between the Parties, whether or not such claims are known or unknown to the Parties, and whether or not such claims have been asserted by the Parties, EXCEPT those claims asserted by PNY in Claim No. 1723, and any unasserted claims that, as a matter of law, would relate back to the complaint that underlies Claim No. 1723. Any and all other claims against the Trust, the Debtors and/or their estates, collectively or individually, by or on behalf of PNY, expressly including any claim that PNY might

6

DOCS_LA:231531.1
MEI 11128377v.2

be entitled to file under Bankruptcy Code section 502(h), are hereby irrevocably withdrawn, disallowed, and expunged in their entirety except as stated herein. Any and all other claims against PNY, collectively or individually, by or on behalf of the Trust, or the Debtors and their estates are hereby irrevocably withdrawn, released, and expunged in their entirety except as stated herein.

7.  **Trust's Release.** As of the Effective Date, the Trust, without the need for additional documentation or the entry of any additional orders, except as expressly provided in this Settlement Agreement, on behalf of itself, the Debtors and their bankruptcy estates, together with each of their affiliates, parents, agents, subsidiaries, and the successors and assigns of any of them, and any other person or entity that claims or might claim through, on behalf of or for the benefit of any of the foregoing (collectively, the "Trust Releasor"), shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged PNY, its past or present affiliates, attorneys, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (the "PNY Releasees"), from any and all manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trust Releasor or the Debtors, from the beginning of time through the Effective Date, have, have had, may have or may

7

claim to have against any PNY Releasees, including, without limitation, any and all claims asserted in or which could have been asserted in, or which relate to the subject matter of the Adversary Proceeding and Claim No. 447, as well as any and all claims that may have arisen or may relate to any other events, activities, or occurrences that have taken place or take place on or before the Effective Date (collectively, the "Trust's Released Claims"). The Parties intend that this release shall be a general release, subject only to any exclusions set forth herein, and the inclusion of the foregoing specifically included released matters shall not be construed as detracting from the purposefully general nature of this release.

8. **PNY's Release.** Effective on the Effective Date, PNY, without the need for additional documentation or the entry of any additional orders, except as expressly provided in this Settlement Agreement, on behalf of itself and each of its affiliates, parents, agents, subsidiaries, and the successors and assigns of any of them, and any other person or entity that claims or might claim through, on behalf of or for the benefit of any of the foregoing (collectively, the "PNY Releasors"), shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trust, the Debtors, their past or present affiliates, attorneys, directors, employees, officers, parents, agents subsidiaries, and the successors and assigns of any of them (collectively, the "Trust Releasees"), from any and all manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses,

8

damages, judgments, executions, claims and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the PNY Releasors, or any of them, from the beginning of time through the Effective Date, have, have had, may have or may claim to have against any of the Trust Releasees, including, without limitation, any and all claims asserted in or which could have been asserted in, or which relate to the subject matter of the Adversary Proceeding and Claim No. 447, except for PNY's claims or causes of action related to Claim No. 1723, including any claim that PNY might be entitled to filed under Bankruptcy Code section 502(h), as well as any and all claims that may have arisen or may relate to any other events, activities, or occurrences that have taken place or take place on or before the Effective Date (collectively, the "PNY Released Claims"). The Parties intend that this release shall be a general release, subject only to any exclusions set forth herein, and the inclusion of the foregoing specifically included released matters shall not be construed as detracting from the purposefully general nature of this release.

9. As to the mutual releases contained herein, the Trust Releasor and PNY Releasors hereby expressly waive and relinquish, to the fullest extent permitted by law, the benefits of California Civil Code section 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

9

DOCS_LA:231531.1
ME1 11128377v.2

or any similar law in any other jurisdiction.

10. **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations asserted in the Adversary Proceeding, Claim No. 447 or Claim No. 1723.

11. **Expenses.** The Parties shall bear their own costs, expenses and attorneys' fees incurred in connection with the Trust Released Claims, the PNY Released Claims, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by this Court.

12. **No Other Obligations.** The Parties agree that the Parties have no obligation to one another other than as set forth herein.

13. **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid or unenforceable.

14. **Confidentiality.** This Settlement Agreement is confidential and neither the Settlement Agreement nor the terms of the Settlement Agreement shall be

disclosed to any person, except for (a) the Parties and/or (b) any attorneys, professionals, and/or agents of the Parties, without the consent and agreement in writing of the Parties. Notwithstanding the foregoing, it shall not be considered a breach of this paragraph for a Party to disclose the terms hereof to local, state, and federal tax authorities, the Parties' auditors or accountants, or to make such disclosure to any other persons or entities when legally compelled to do so or in connection with litigation arising from or related hereto.

15. **Miscellaneous.**

(a) Nothing contained herein shall be deemed an admission of liability on the part of the Trust or PNY.

(b) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(c) Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

11

(d) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(e) This Settlement Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any choice of law provisions.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(h) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

12

(i) This Settlement Agreement is effective upon the Effective Date (as defined below).

(j) This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Bankruptcy Court.

(k) This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto, including any Chapter 7 trustee or the Liquidating Trustee under the Plan.

16. The "Effective Date" of this Agreement and all of its terms shall be the later of (i) execution by all Parties and (ii) the expiration of the applicable Notice Period, if any, under the Liquidating Trust Agreement.

IN WITNESS WHEREOF, this Agreement is hereby executed as of ~~January~~ February 3, 2011.

ACCEPTED AND AGREED TO BY:

THE CIRCUIT CITY STORES, INC.
LIQUIDATING TRUST

By: _____
TAVENNER & BERAN, PLC
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

Counsel to the Circuit City
Stores, Inc. Liquidating Trust


Dated: January 31, 2011

PNY TECHNOLOGIES, INC.

By: _____
Its  Treasurer

14

DOCS_LA:231531.1
MF1 11128377v.2