## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

## CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO AND REQUEST FOR HEARING ON LIQUIDATING TRUST'S EIGHTEENTH OMNIBUS OBJECTION TO CLAIMS FILED BY TAXING AUTHORITIES INCLUDING CITY AND COUNTY OF SAN FRANCISCO'S CLAIM NUMBERS 14857 & 14858

Comes now the City and County of San Francisco ("San Francisco" or the "City"), by counsel, and submits this response (the "Response") to the Notice of Liquidating Trust's Eighteenth Omnibus Objection to Claims Filed by Taxing Authorities (Reduction of Certain Partially Invalid Claims; Disallowance of Certain Invalid Claims; Disallowance of Certain Duplicate Claims; Reclassification of Certain Claims Disallowance of Certain Late Filed Claims; Disallowance or Reduction of Certain Invalid Claims; and Fixing the Amount of Certain Claims) (docket no. 10062). In support of the Response and its claims, the City respectfully states:

### BACKGROUND

1.    Debtors, Circuit City Stores, Inc. and/or Circuit City Stores West Coast, Inc. aka Circuit City Stores West Etc. ("Circuit City" or "Debtors") conducted business in the City and County of San Francisco. On November 8, 2008, Circuit City filed for bankruptcy protection

Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

Counsel for City and County of San Francisco

David P. Augustine, State Bar No. 223353
Tax Collector - Legal Section
City and County of San Francisco
P.O. Box 7426
San Francisco, CA 94120-7426
Telephone: (415) 554-4495 (Main)
Facsimile: (415) 554-5010
E-Mail: David.Augustine@sfgov.org

Counsel for City and County of San Francisco

under Chapter 11 of the Bankruptcy Code and continued operations in San Francisco as debtors

in possession, which included a prolonged winding down of the business.

2.      As debtor in possession Circuit City was required, among other things, to

continue to pay debts and obligations, which became due in the regular course of business,

including taxes. *See* Title 28 U.S.C. § 960(b)(1). Specifically, Circuit City was required to pay

locally assessed annual personal property tax on its business equipment located within the City

and County of San Francisco, under California Revenue & Taxation Code sections 2901, *et seq.*,

as well as pay local payroll expense taxes as required by the San Francisco Business and Tax

Regulations Code Article 12-A, sections 901, *et seq.*

3.      On June 30, 2009, the City's Tax Collector regularly issued an unsecured personal

property tax bill based on the assessed value of Debtors' business personal property in the

amount of $16,487.49. Payment of the personal property taxes was delinquent if not paid by

August 31, 2009. Circuit City failed to pay the tax bill by the due date, at which time the tax bill

became subject to statutory late payment interest and penalties as stated on the bill. The 2009 tax

bill was not paid and remains unpaid. *Declaration of Richard Simon*, attached hereto as Exhibit

1.

4.      The City, under its authority as a California Charter City and County, and

pursuant to California Constitution, Article XI, Sections 5 and 6, enacted a payroll expense tax

on the privilege of conducting business in San Francisco through employees. *See* San Francisco

Payroll Expense Tax Ordinance, San Francisco Business and Tax Regulation Code Article, 12-A

("Payroll Expense Tax Ordinance"). The complete text of the San Francisco Payroll Expense

Tax Ordinance and the Common Administrative Provision Ordinances cited in this Response are

attached as Exhibits 2 and 3 for the court's assistance. The amount of the payroll expense tax is

2

1.5% of the business operator's payroll expense for work performed in San Francisco. *See* Payroll Expense Tax Ordinance Section 903.1. The Payroll Expense Tax is a self reporting tax: Every business operator subject to the tax is required to report the amount of the tax it incurred to the tax collector annually. *See* San Francisco Business and Tax Regulation Code, Article 6, Section 6.7-2. The business operator is required to pay the tax reported on or before the last day of February of the year immediately following the end of the calendar year for which the tax was due. *Id.* at 6.9-1.

5.     Circuit City, as debtor in possession, filed its payroll expense tax statement for year 2009 late, on March 5, 2010, declaring taxable payroll expense in the amount of $340,888.00 and payroll expense tax due of $5,113.10, but failed to include any payment along with its filing. The 2009 payroll expense tax was not paid and remains unpaid. *Declaration of Loretta Lieberman*, attached hereto as <u>Exhibit 4</u>. Subsequently, the City filed its Proof of Administrative Claim for unpaid payroll expense taxes based upon the amount of payroll tax liability as reported by Debtors' own tax return, including statutory interest and penalties as provided by law.

6.     On or about March 16, 2010, the City's Office of Treasurer and Tax Collector timely filed its post-petition administrative claims for these unpaid taxes (designated claim numbers 14857 and 14858) as follows:

| No. 14857 | $19,439.79 | 2009 Unsecured Personal Property Tax |
| No. 14858 | $8,404.10 | 2009 Year Payroll Expense Tax |

7.     The Liquidating Trust's Eighteenth Omnibus Objection seeks, among other things, to unilaterally reduce the City's timely filed priority administrative expense claim for personal property taxes designated as claim #14857 "to reflect amount of tax based on fair

market value of debtors property subject to tax" (Exhibit C of Eighteenth Omnibus Objection) on

the ground that liabilities "are overstated because they are based on erroneous valuation of real

property." (pg. 7, para. 22 of Eighteenth Omnibus Objection).

8.    With respect to the payroll expense claim designated as claim #14858, the

Liquidating Trust now seeks to expunge entirely the City's payroll expense tax claim on the

grounds that debtors are not liable for the claim (pg. 9, para. 31-32 of Eighteenth Omnibus

Objection).    Specifically, the trust claims "Debtors' books and records reflect no liability."

Exhibit H of Eighteenth Omnibus Objection.

DISCUSSION

A.    <u>The Tax in Claim No. 14857 remains unpaid and is based on the personal
property valuation currently on record with the City and Debtors have
provided no evidence to support of their assertion of reduced property
valuation.</u>

9.    The City's Administrative Claim No. 14857 is for unsecured personal property

tax and is based on the assessed value of business personal property.    The tax assessment was

made in the normal course of the assessment cycle by the City's Assessor, whose office is

charged with the duty to fairly and appropriately value all property located within the City and

County of San Francisco as required under applicable state law.

10.    The Debtors did timely file with the City's Assessment Appeals Board an appeal

of the unsecured personal property taxes at issue here.    That appeal is currently pending.

11.    However, Circuit City provided no information or evidence in support of their

assessment appeal to the City's Assessment Appeals Board. Further, shortly before the hearing

was to take place on the assessment appeal of Circuit City, the Debtors requested and were

granted a postponement of the hearing.    The hearing on the assessment appeal has not been

rescheduled as of the date of this response, and the original valuation of the Debtors' personal

property remains the valuation of record for the City.  *See* Exhibit 5, *Declaration of Dawn Duran*.  Moreover, the Debtors have not provided any information or evidence in support of their request.  Couched in the form of an objection in the Eighteenth Omnibus Objection, the Liquidating Trust seeks to have the City's $19,439.79 administrative claim reduced to $802.47.

12.    The tax bill at issue here was regularly issued by the City's Tax Collector in the normal course of its duties based on the assessed value of the Debtors' business personal property as of the lien date.  Payment of the personal property taxes was delinquent if not paid by August 31, 2009.  Circuit City failed to pay the tax bill by the due date and became subject to statutory late payment interest and penalties as stated on the bill.  The 2009 tax bill was not paid and remains unpaid.  *Declaration of Richard Simon*, attached hereto as Exhibit 1.

13.    The Debtors' request for a reduction in personal property taxes properly assessed and billed by the City should not be granted by this Court without sufficient, detailed and credible evidence in support of the request for the reduction.

B.    The City's payroll expense tax claim is a tax debt due in the regular course of business (Title 28 USC 960 (b)(1)) and is based upon debtor's own written admission of payroll expense tax liability as reported on its filed return.

14.    Circuit City prepared and filed its payroll expense tax statement with the City on March 5, 2010, as it was legally required to do, but failed to include any payment along with its statement. The City subsequently filed its Administrative Claim for payroll expense taxes based upon the amount of payroll expense tax liability as previously reported by the Debtors' own filed tax statement.

15.    Now the Liquidating Trust wishes to disavow any of the Debtors' previously self-reported liability for payroll expense taxes claiming that their books and records reflect no such

liability. This directly contradicts Circuit City's own admission of payroll expense tax liability as previously admitted to in its written statement filed with the City.

CONCLUSION

The Liquidating Trust's request for reduction of the amount of property taxes on the Debtors' unsecured personal property is unsupported and its payroll expense tax liability is required to be paid as regular expenses of administration.  Therefore, the Liquidating Trust's objections to both the City's claims under these circumstances should overruled and the Liquidating Trust should be ordered to pay immediately the City's administrative expense claims in the full amount as filed.

Dated:  December 1, 2011          CITY AND COUNTY OF SAN FRANCISCO


By: /s/ Jennifer M. McLemore
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB no. 47164)
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone:  (804) 697-4100
Fcsimile:  (804) 697-6112

and

David P. Augustine, CA State Bar No. 223353
Tax Collector - Legal Section
City and County of San Francisco
P.O. Box 7426
San Francisco, CA  94120-7426
Telephone: (415) 554-4495
Facsimile: (415) 554-5010

Counsel for City and County of San Francisco

6

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer M. McLemore, hereby certify that on the 1st day of December, 2011, a true and correct copy of the foregoing has been served electronically using the ECF system on all registered users of the CM/ECF system who have filed notices of appearance in this matter.


/s/ Jennifer M. McLemore
Jennifer M. McLemore

## LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Declaration of Richard Simon |
| 2 | San Francisco Payroll Expense Tax Ordinance |
| 3 | Common Administrative Provisions Sections |
| 4 | Declaration of Loretta Lieberman |
| 5 | Declaration of Dawn Duran |

1217554.1

# Exhibit 1

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

## DECLARATION OF RICHARD SIMON IN SUPPORT OF CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO EIGHTEENTH OMNIBUS OBJECTION TO CLAIM NUMBER 14857 [UNSECURED PERSONAL PROPERTY TAX]

I, RICHARD SIMON, state the following:

1.      I am employed by the City and County of San Francisco as Manager of the San Francisco Property Tax and License Section.

Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

Counsel for City and County of San Francisco

David P. Augustine, State Bar No. 223353
Tax Collector - Legal Section
City and County of San Francisco
P.O. Box 7426
San Francisco, CA 94120-7426
Telephone: (415) 554-4495 (Main)
Facsimile: (415) 554-5010
E-Mail: David.Augustine@sfgov.org

Counsel for City and County of San Francisco

2.     The Property Tax and License section is charged with the responsibility for the billing and accounting of assessed property valuations for secured and unsecured property taxes. I have overall administrative oversight of 16employees who work in the Property Tax and Licensing Section of the San Francisco Office of the Treasurer and Tax Collector. I am familiar with the procedures and computer databases that are used in the Property Tax and Licensing Section to record, store, and maintain specific property tax returns and payment information for all secured and unsecured taxpayers.

3.     I searched the computer database of enrolled unsecured property tax assessment values for assessment records pertaining to 1200 Van Ness Avenue, San Francisco, California, assessed to Circuit City Stores, Inc. for the fiscal tax year 2009-2010. This search disclosed the existence a currently unpaid assessment for unsecured property taxes assessment number 09-205029, which is the subject assessment of the objection to claim number 14857. A true and correct copy of the assessment number 09-205029 is marked as Exhibit "A" which is attached hereto and incorporated as though set forth in full.

5. The original valuation of the personal property herein remains the valuation of record for the City.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true of my own personal knowledge. If called as a witness, I could and would testify competently thereto.

Dated: November 30, 2011

_signature_

RICHARD SIMON

-2-

INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| A | Unsecured Property Assessment, Assessment Number 09-205029 |
| B | Application for Changed Assessment, Application Number 2009-5009 |

1217803.1

# EXHIBIT A

**CITY AND COUNTY OF SAN FRANCISCO UNSECURED PROPERTY TAXES**
**FISCAL YEAR 2009-2010**

THESE TAXES WERE DUE AND PAYABLE ON THE LIEN DATE JANUARY 1, 2009
THE DISPOSAL OF PROPERTY AFTER THE LIEN DATE DOES NOT RELIEVE THE ASSESSEE OF THE TAX LIABILITY.

| ASSESSMENT NO. | ACCOUNT NO. | TAX BILL ISSUED | BLOCK | LOT | DESCRIPTION CODE | TAX RATE |
|---|---|---|---|---|---|---|
| 09-205029 | 217983-001 | 03-11-10 | 0691 | 005 | | 1.1630% |

### ASSESSED VALUE AND EXEMPTION

| | |
|---|---|
| LAND | |
| IMP. STRUCTURE | |
| IMP. FIXTURE | 1,203,800 |
| PERS. PROPERTY-OTHER | 213,869 |
| EXEMPTION | |
| NET VALUE | 1,417,669 |
| PENAL ASSMT. | |

CIRCUIT CITY STORES WEST COAST
SARAH HARRIS - TAX DEPT
P O BOX 42304
RICHMOND VA 23242

LOCATION OF PROPERTY **1200 VAN NESS AV**
BUSINESS ADDRESS    **CIRCUIT CITY #242**
ASSESSEE 12:01 A.M. JANUARY 1 AND MAILING ADDRESS
SECTION 2922 R & T CODE

**PAYABLE ANYTIME AFTER RECEIPT, BUT
WILL BE DELINQUENT AFTER 5 P.M.**  ▶ AUG 31, 2009
   **FIRST MAIL DATE:** 6/30/09

REMARKS

**IMPORTANT:** PLEASE READ BACK SIDE FOR
IMPORTANT INFORMATION

### TAXES DUE

| | |
|---|---|
| AD VALOREM | 16,487.49 |
| 10% PEN. SEC. 483 | |
| 25% PEN. SEC. 504 | |
| INTEREST SEC. 506 | |
| TOTAL TAX DUE | 16,487.49 |
| 10% PENALTY | 1,648.74 |
| 1.5% PENALTY PER MO. | 1,236.56 |
| ADMINISTRATIVE COST | 55.00 |
| LIEN FEE | 12.00 |
| TOTAL AMOUNT DUE | 19,439.79 |

)UR CALENDAR . . . there will be NO reminder notices mailed before the
delinquency date stated below.

| S ARE ASSESSED AS FOLLOWS: | |
|---|---|
| ) 10% PENALTY PLUS $35 FEE TO TAX AMOUNT AFTER | AUG 31, 2009 |
| ) ADDITIONAL MONTHLY PENALTY OF 1.5% ON | 11-01-09 |
| ADDITIONAL APPLICABLE FEES MAY ALSO BE REQUIRED | (SEE BELOW) |

A

) TAX BILLS MUST BE PAID WITHIN 30 DAYS FROM THE DATE OF MAILING
TO AVOID PENALTIES AND INTEREST.

**CITY AND COUNTY OF SAN FRANCISCO**
UNSECURED PROPERTY TAX PAYMENT FISCAL YEAR 2009-2010

| ASSESSMENT NO. | ACCOUNT NO. | TAX BILL ISSUED | BLOCK | LOT | |
|---|---|---|---|---|---|
| 09-205029 | 217983-001 | 03-11-10 | 0691 | 005 | DELINQ |

TAXES DUE

MAKE CHECKS PAYABLE AND MAIL TO:
SAN FRANCISCO TAX COLLECTOR
P.O. BOX 7427
SAN FRANCISCO, CA 94120-7427

| **PAY THIS AMOUNT NO LATER THAN** | | |
|---|---|---|
| 08-31-09 | | 16,487.49 |
| ADD 10% PENALTY STARTING | 09-01-09 | 1,648.74 |
| ADD 1.5% PENALTY PER MO. STARTING * | | 1,236.56 |
| ADD ADMINISTRATIVE COST | | 55.00 |
| ADD LIEN FEE | | 12.00 |
| TOTAL AMOUNT DUE | | 19,439.79 |

CIRCUIT CITY STORES WEST COAST
SARAH HARRIS - TAX DEPT
P O BOX 42304
RICHMOND VA 23242

* ADD 1.5% PEN/MO STARTING 11-01-09

09205029 217983001 001648749 00164874 083109 001

**<u>EXHIBIT B</u>**

**APPLICATION FOR CHANGED ASSESSMENT**
City & County of San Francisco, State of California
#1 Dr. Carlton B. Goodlett Place, Room 405, San Francisco, CA 94102-4697

This form contains all the requests for information that are required for filing an application for changed assessment. Failure to complete this application may result in rejection of the application and/or denial of the appeal. Applicants should be prepared to submit additional information if requested by the Assessor or at a time of the hearing. Failure to provide information the Assessment Appeals Board considers necessary may result in the continuance of the hearing.

| APPLICATION NUMBER |
|---|
| 2009-5009 |

**1. APPLICANT'S NAME** (Please type or print in ink)

CIRCUIT CITY STORES, INC
(Last, First, MI)

P.O. BOX 42304
Mailing Address (MUST be applicant's mailing address)

RICHMOND            VA      23242
City                State   Zip Code

_____  _____  _____
Daytime Phone   Alternate Phone   Fax Number

E-Mail Address: _____

**2. AGENT OR ATTORNEY FOR APPLICANT** (Please type or print in ink)

ERNST & YOUNG LLP
(Name of Agent's/Attorney's Firm)

CHARLES LONG
(Person to Contact)(Last, First, MI)

901 EAST CARY STREET STE 1000
Mailing Address

RICHMOND            VA      23219
City                State   Zip Code

704-331-2004  _____  _____
Daytime Phone   Alternate Phone   Fax Number

**AGENT AUTHORIZATION**
If the applicant is a corporation, the agent's authorization must be signed by an officer or authorized employee of the business entity. If the agent is not an attorney licensed in California or a spouse, child, or parent of the person affected, the following must be completed (or attached to this application-see instructions).

Ernst Young _____ is hereby authorized to act as my agent in this application and may inspect assessor's records, enter into stipulations, and otherwise settle issues related to this application.

_____  _____  _____
Date   Signature of Applicant/Officer/Authorized Employee   Title

**3-A SECURED PROPERTY**
ASSESSOR'S PARCEL NO. (list block & lot #)

O R

**3-B UNSECURED PROPERTY**
(attach copy of tax bill)

Assessment No. 09-205009
Account No. 217983-001

**3-C PROPERTY ADDRESS OR LOCATION**

1200 Van Ness Ave

**3-D PROPERTY TYPE:**
☐ Single family residence/ Condo/Townhouse
Is this property an owner-Occupied single family dwelling
☐ YES  ☐ NO
☐ Apartments - # of Units ____
☐ Commercial
☒ Business Personal Property
☐ Possessory Interest
☐ Vacant Land
☐ Other ____

| 4. VALUES FOR: | VALUE ON ROLL | APPLICANT'S OPINION OF VALUE |
|---|---|---|
| LAND | $ | $ |
| IMPROVEMENT STRUCTURES | $ | $ |
| IMPROVEMENT FIXTURES | $ 1,203,800 | $ |
| PERSONAL PROPERTY | $ 213800 | $ 69,000 |
| TOTAL | $ 1,417,600 | $ 69,000 |
| PENALTIES | $ | $ |

**(FOR OFFICE USE ONLY)**

POST MARK
SEP 15 2009
Assessment
Appeals Board

**5. TYPE OF ASSESSMENT BEING APPEALED**
(check one box)

THIS APPEAL IS FOR
THE 09/10 ROLL YEAR
(IMPORTANT- See Instructions for Filing Periods)

A. ☒ Regular Assessment – Value as of January 1st of the current year
B. ☐ Supplemental Assessment (Attach copy)
ROLL YEAR ____
Date of Notice or Tax Bill ____
C. ☐ Roll Change/Escape Assessment/Calamity (Attach copy)
ROLL YEAR ____
Date of Notice or Tax Bill ____

**6. THE FACTS THAT I RELY UPON TO SUPPORT REQUESTED CHANGE IN VA**
may check all that apply. If you are uncertain of which item to check, check "H.
☐ A. DECLINE IN VALUE: Assessor's roll value exceeds the market value as of Janu
☐ B. CHANGE IN OWNERSHIP: (1) ☐ No change in ownership or other reassessab
of ____, (2) ☐ Base Year value for the change of ownership established on t
☐ C. NEW CONSTRUCTION: (1) ☐ No new construction or other reassessable even
☐ D. CALAMITY: Assessor's reduced value incorrect for property damaged by misfor
☒ E. PERSONAL PROPERTY/FIXTURES: Assessor's value of personal property and/or
(1) ☒ All personal property/fixtures, (2) ☐ Only a portion of the personal prope
description of those items.
☐ F. PENALTY ASSESSMENT: Penalty assessment is not justified.
☐ G. CLASSIFICATION: Assessor's classification and/or allocation of value of propert
☐ H. APPEAL AFTER AN AUDIT: Must include description of each property, issues be
opinion of value. (1) ☐ Amount of escape assessment is incorrect (2) ☐ Asses
property at the location is incorrect.
☐ I. OTHER: Explain here or attach explanation:

**7. WRITTEN FINDINGS OF FACT:** Written Findings ☐ ARE requested ☒ ARE NOT requested. (See Information & Instructions for Details and Fees)
**8. CLAIM FOR REFUND:** ☐ YES ☒ NO   Do you want to designate this application as a claim for refund? (Please refer to Information & Instructions)
**9. HEARING OPTIONS:** (See Information & Instructions for Requirement Details and Fees)
☐ A HEARING OFFICER is requested (Only applies to single family residences, cooperatives, condominium, or multiple-family dwellings of four units or less)
☒ A BOARD HEARING is requested (All applicants may request a Board hearing)

I CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING AND ALL INFORMATION HEREON, INCLUDING ANY ACCOMPANYING STATEMENTS OR DOCUMENTS, IS TRUE, CORRECT AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT I AM (1) THE OWNER OF THE PROPERTY OR THE PERSON AFFECTED BY A REASON HAVING A DIRECT ECONOMIC INTEREST IN THE PAYMENT OF THE TAXES ON THIS PROPERTY • THE APPLICANT; (2) AN AGENT AUTHORIZED BY THE APPLICANT UNDER ITEM 6 OF THIS APPLICATION, OR (3) AN ATTORNEY LICENSED TO PRACTICE LAW IN THE STATE OF CALIFORNIA, STATE BAR NO. ____  WHO HAS BEEN RETAINED BY THE APPLICANT AND WHO HAS BEEN AUTHORIZED BY THAT PERSON TO FILE THIS APPLICATION.

Signature: Charles Long
Name and Title (please type or print in ink):
CHARLES LONG

Location Signed: City Charlotte  State NC
☐ Owner ☒ Agent ☐ Attorney ☐ Spouse ☐ Registered Domestic Partner ☐ Child ☐ Parent ☐ Person Affected

Date 9/15/09

Form BOE-305-AH, City and County of San Francisco Version – April 2006

A $30.00 FEE IS REQUIRED TO FILE THIS APPLICATION- See Information/Fees

# Exhibit 2

# ARTICLE 12-A: PAYROLL EXPENSE TAX ORDINANCE

| Sec. 901. | Short Title. |
| Sec. 902. | Operation of Definitions. |
| Sec. 902.1. | "Payroll Expense." |
| Sec. 902.2. | Pass-Through Entity. |
| Sec. 903. | Imposition of Payroll Expense Tax. |
| Sec. 903.1. | Rate of Payroll Expense Tax. |
| Sec. 904. | Apportionment of Payroll Expense. |
| Sec. 905-A. | Small Business Tax Exemption. |
| Sec. 906. | Exemption Provisions. |
| Sec. 906A. | Enterprise Zone Tax Credit. |
| Sec. 906B. | New Jobs Tax Credit. |
| Sec. 906C. | Summer Youth Employment Tax Credit. |
| Sec. 906D. | Garment Manufacturers' Tax Credit. |
| Sec. 906E. | Credit of Surplus Business Tax Revenue. |
| Sec. 906.1. | Biotechnology Exclusion. |
| Sec. 906.2. | Clean Technology Business Exclusion. |
| Sec. 907. | Payments, Returns, Prepayments and Extensions. |
| Sec. 908. | Savings Clause. |

## SEC. 901.  SHORT TITLE.

This ordinance shall be known as the "Payroll Expense Tax Ordinance" and the tax imposed herein shall be known as the "Payroll Expense Tax." (Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80, App. 3/28/80; Ord. 357-88, App. 8/4/88)

## SEC. 902.  OPERATION OF DEFINITIONS.

Except where the context otherwise requires, terms not defined in this Article that are defined in Article 6 shall have the same meaning as given to them in Article 6. (Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 902.1.  PAYROLL EXPENSE.

(a) The term "Payroll Expense" means the compensation paid to, on behalf of, or for the benefit of an individual, including shareholders of a professional corporation or a Limited Liability Company ("LLC"), including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options), compensation for services to owners of pass-through entities, and any other form of compensation, who during any tax year, perform work or render services, in whole or in part in the City; and if more than one individual or shareholders of a professional corporation or members of an LLC, during any tax year performs work or renders services in whole or in part in the City, the term "Payroll Expense" means the total compensation paid including salaries, wages, bonuses, commissions, property issued or transferred in exchange for the performance of services (including but not limited to stock options), in addition to any compensation for services to owners of pass-through entities, and any other form of compensation for services, to all such individuals and shareholders of a professional corporation or members of an LLC.

(b) Any person that grants a service provider a right to acquire an ownership interest in such person in exchange for the performance of services shall include in its payroll expense for the tax year in which such right is exercised an amount equal to the excess of (i) the fair market value of such ownership interest on the date such right is exercised over (ii) the price paid for such interest.

(c) Any individual compensated in his or her capacity as a real estate salesperson or mortgage processor shall be deemed an employee of the real estate broker or mortgage broker for or under whom such individual performs services, and any compensation received by such individual, including compensation by way of

Sec. 902.1.          **San Francisco - Business and Tax Regulations Code**          342

commissions, shall be included in the payroll expense of such broker. For purposes of this Section, "real estate broker" and "mortgage broker" refer to any individual licensed as such under the laws of the State of California who engages the services of salespersons or a salesperson, or of mortgage processors or a mortgage processor, to perform services in the business which such broker conducts under the authority of his or her license; a "salesperson" is an individual who is engaged by a real estate broker to perform services, which may be continuous in nature, as a real estate salesperson under an agreement with a real estate broker, regardless of whether the individual is licensed as a real estate broker under the law of the State of California, a "mortgage processor" is an individual who is engaged by a real estate broker or mortgage broker to perform services which may be continuous in nature, as a mortgage processor under an agreement with such real estate broker or mortgage broker, regardless of whether the mortgage processor is also licensed as a mortgage broker under the laws of the State of California.

(d)  All compensation, including all pass-through compensation for services paid to, on behalf of, or for the benefit of owners of a pass through entity, shall be included in the calculation of such entity's payroll expense tax base for purposes of determining such entity's tax liability under this Article. For purposes of this section, the "pass-through compensation for services" of a pass-through entity shall be the aggregate compensation paid by such entity for personal services rendered by all such owners, and shall not include any return on capital investment. The taxpayer may calculate the amount of compensation to owners of the entity subject to the Payroll Expense Tax, or the taxpayer may presume that, in addition to amounts reported on a W-2 form, the amount subject to the payroll expense tax is, for each owner, an amount that is two hundred percent (200%) of the average annual compensation paid to, on behalf of, or for the benefit of the employees of the pass-through entity whose compensation is in the top quartile (i.e., 25%) of the entity's

employees who are based in the City; provided, the total number of employees of the entity based in the City is not less than four. (Formerly Sec. 902.6; added by Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 902.1 added by Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; renumbered Sec. 6.2-4 and amended by Ord. 26-04; Amended by Proposition Q, § 1, 11/4/2008)

### SEC. 902.2.  PASS-THROUGH ENTITY.

The term "pass-through entity" includes a trust, partnership, corporation described in Sub-chapter S of the Internal Revenue Code of 1986, as amended, limited liability company, limited liability partnership, professional corporation, and on other person or entity (other than a disregarded entity for federal income tax purposes) which is not subject to the income tax imposed by Subtitle A, Chapter 1 of the Internal Revenue Code of 1986, as amended, or which is allowed a deduction in computing such tax for distributions to the owners or beneficiaries of such person or entity. Any person exempt from payment of the Payroll Expense Tax under Section 905-A or 906 of this Article shall not be disqualified from or denied such exemption as result of being a "pass-through entity" under this Section. (Added by Proposition Q, § 1, 11/4/2008) (Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; renumbered Sec. 6.2-5 and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 902.4.
(Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 395-84, App. 9/20/84; Ord. 357-88, App. 8/4/88; Ord. 24-98, App. 1/16/98; renumbered Sec. 6.2-9 and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 902.5.
(Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; renumbered Sec. 6.2-10 and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)





**SEC. 902.6.**
(Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; renumbered Sec. 902.1 by Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 903.   IMPOSITION OF PAYROLL EXPENSE TAX.

(a)   A tax for general governmental purposes is hereby imposed upon every person engaging in business within the City as defined in Section 6.2-12 of Article 6; provided, that such tax shall be levied only upon that portion of the person's payroll expense that is attributable to the City as set forth in Section 904.

(b)   The Payroll Expense Tax is imposed for general governmental purposes and in order to require commerce and the business community to carry a fair share of the costs of local government in return for the benefits, opportunities and protections afforded by the City. Proceeds from the tax shall be deposited in the City's general fund and may be expended for any purposes of the City. (Ord. 275-70, App. 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 493-84, App. 12/13/84; Ord. 357-88, App. 8/4/88; Ord. 250-89, App. 6/22/89; Ord. 24-98, App. 1/16/98; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 903.1.   RATE OF PAYROLL EXPENSE TAX.

The rate of the payroll expense tax shall be 1½ percent. The amount of a person's liability for the payroll expense tax shall be the product of such person's taxable payroll expense multiplied by 0.015. The amount of such tax for Associations shall be 1½ percent of the payroll expense of such Association, plus 1½ percent of the total distributions made by such Association by way of salary to those having an ownership interest in such Association. Amounts paid or credited to those having an ownership interest in such Association prior and in addition to the distribution of ownership profit or loss shall be presumed to be distributions "by way of salary" and for personal services rendered, unless the taxpayer

proves otherwise by clear and convincing evidence. (Added by Ord. 295-90, App. 8/1/90; amended by Ord. 273-93, App. 8/25/93; Ord. 179-94, App. 5/3/94; Ord. 24-98, App. 1/16/98; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 904.   APPORTIONMENT OF PAYROLL EXPENSE.

Where payroll expense is incurred by reason of work performed or services rendered by an individual, wholly within the City, all of the payroll expense for such individual shall be attributable to the City and subject to tax hereunder. Where payroll expense is incurred by reason of work performed or services rendered by an individual partly within and partly without the City, the portion of such payroll expense attributable to the City (and subject to tax hereunder) shall be determined as follows:

(a)   Except as otherwise provided in this section, the portion of such payroll expense attributable to the City shall be the portion of such payroll expense which the total number of working hours employed within the City bears to the total number of working hours within and without the City.

(b)   If the amount of such payroll expense depends on the volume of business transacted by such individual, then the portion of such payroll expense attributable to the City shall be the portion of such payroll expense which the volume of business transacted by such individual in the City bears to the volume of business transacted by such individual within and without the City.

(c)   If it is impracticable, unreasonable or improper to apportion such payroll expenses as aforesaid either because of the particular nature of the services of such individual, or on account of the unusual basis of compensation, or for any other reason, then the amount of such payroll earnings reasonably attributable to work performed or services rendered in the City shall be determined on the basis of all relevant facts and circumstances of the particular case, in accor-



Sec. 904.        **San Francisco - Business and Tax Regulations Code**        344

dance with any rulings or regulations issued or promulgated by the Tax Collector for the purpose.

(d)  If the Tax Collector determines that the percentage of payroll expenses attributable to the City, for any one or more persons, is a relatively stable percentage, the Tax Collector may establish that percentage as a prima facie evidence of payroll expense attributable to the City; provided, that the Tax Collector shall condition the establishment of such fixed percentage upon the obligation of the taxpayer to report immediately to the Tax Collector any significant change in the taxpayer's mode of business which may impact the portion of the person's payroll expense which is attributable to the City; and, provided further, that the Tax Collector may rescind any such fixed percentage at any time by providing written notice to the taxpayer of such rescission. (Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; Ord. 24-98, App. 1/16/98; Ord. 26-04, File No. 031990, App. 2/19/2004)

**Sec. 905.**
(Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 357-88, App. 8/4/88; Ord. 24-98, App. 1/16/98; renumbered Sec. 6.2-12 and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

**SEC. 905-A.  SMALL BUSINESS TAX EXEMPTION.**

(a)  Notwithstanding any other provisions of this Article, "small business enterprises" as hereinafter defined, shall be exempt from payment of the Payroll Expense Tax; provided, however, that small business enterprises shall pay the annual registration fee pursuant to Section 855 of Article 12.

(b)  The term "small business enterprise" shall mean and include any taxpayer:

(1)  Whose tax liability under this Article, but for this exemption provision, would not ex-

ceed $2,500.00 or, effective January 1, 2009 whose taxable payroll expense does not exceed $250,000.00 and:

(2)  Who has filed a tax return by the last date of February for the preceding tax year. If the taxpayer fails to file a return by that date, the taxpayer shall be subject to a penalty as specified in Subsection (d).

(c)  For the 2011 tax year, and each second succeeding tax year the Tax Collector shall increase the ceiling for the Small Business Tax Exemption (rounded to the nearest $10,000.00 increment) to reflect increases in the United States Department of Labor's Bureau of Labor Statistics consumer price index for all urban customers for the San Francisco-Oakland-San Jose area for each of the preceding two tax years.

(d)  In lieu of the penalty specified in Section 6.17-3 of this Article for failing to file a return, any person who otherwise qualifies for the small business exemption set forth in this Section who fails to file a return by the last date of February shall pay a penalty as follows:

(1)  If the person's Payroll Expense Tax liability under this Article, but for the small business exemption under this section, would be less than $1.000.00, the penalty shall be $100.00 plus 10% of the amount of such liability, for each month, or fraction thereof, that the return is delinquent, up to a maximum amount equal to the person's liability for such tax but for the small business exemption;

(2)  If the person's Payroll Expense Tax liability under this Article, but for the small business exemption under this section, would be $1,000.00 or more, then the penalty shall be $250.00 plus 10% of the amount of such liability, for each month, or fraction thereof, that the return is delinquent, up to a maximum amount equal to the person's liability for such tax but for the small business exemption.

(e)  The Tax Collector may, in his or her discretion, reduce the penalty set forth in Subsection (c) to not less than $100.00 upon a showing that the late filing of the return was due



344.1                    **Payroll Expense Tax Ordinance**                    Sec. 906.

to reasonable cause and not due to willful neglect. (Amended by Ord. 397-82, App. 8/12/82; Ord. 357-88, App. 8/4/88; Ord. 273-93, App. 8/25/93; Ord. 179-94, App. 5/3/94; Ord. 195-94, App. 5/13/94; Ord. 267-94, App. 7/29/94; Ord. 429-94, App. 12/23/94; Ord. 24-98, App. 1/16/98; Ord. 63-01, File No. 010274, App. 4/25/2001; Ord. 177-01, File No. 010826, App. 8/17/2001; Ord. 26-04, File No. 031990, App. 2/19/2004; Amended by Proposition Q, § 2, 11/4/2008)

## SEC. 906. EXEMPTION PROVISIONS.

(a) Except as provided in Subsection (b) of this Section, an organization having a formally recognized exemption from income tax pursuant to Sections 501(c) or 501(d) or 401(a) of the Internal Revenue Code of 1986, as amended, as qualified by Sections 502, 503 and 504 of the Internal Revenue Code of 1986, as amended, shall be exempt from taxation under this Article.

(b) Except for an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, an organization otherwise exempt from taxation under Subsection (a) of this Section that is directly engaged within the City in an unrelated trade or business within the meaning of Section 513(a) of the Internal Revenue Code of 1986, as amended, and has, from its own operations, unrelated business taxable income within the meaning of Section 512(a)(1) of the Internal Revenue Code of 1986, as amended, shall pay the Payroll Expense Tax equal to the amount calculated by multiplying the tax which would have been due under this Article if the organization were not an exempt organization by the percentage which its unrelated business receipts bear to its total receipts. If it is impracticable, unreasonable or improper to allocate such organization's payroll expense as aforesaid either because of the particular nature of the organization's unrelated trade or business or the particular nature of the services provided to the organization in connection therewith by its employees, or on account of the unusual basis of compensation, or for any other reason, then the amount of such payroll expense reasonably attributable to work performed or services rendered in the City shall be determined on the basis of all relevant facts and circumstances of the particular case, in accordance with any rulings or regulations issued or promulgated by the Tax Collector for the purpose.

(c) Blind persons licensed under the provisions of Chapter 6A of Title 12 of the United States Code ("Vending Stands for Blind in Federal Buildings") and Article 5 of Chapter 6 of Part 2 of Division 10 of the Welfare and Institutions Code of the State of California ("Business Enterprises for the Blind") need not include in the computation of payroll expense the first $15,000 of payroll expense in any one year which is attributable to their licensed operations within the City.

(d) Skilled Nursing Facilities licensed under the provisions of Title 22, California Administrative Code, Division 5 ("Licensing and Certification of Health Facilities and Referral Agencies") Chapter 3 ("Skilled Nursing Facilities"), shall be exempt from taxation under this Article.

*[INTENTIONALLY LEFT BLANK]*

345

**Payroll Expense Tax Ordinance**

Sec. 906A.

(e)  For only so long as and to the extent that the City is prohibited from imposing the tax under this Article, the following persons shall be exempt from the Payroll Expense Tax:

(1)  Banks and financial corporations exempt from local taxation under Article XIII, Section 27 of the California Constitution and Revenue and Taxation Code Section 23182;

(2)  Insurance companies exempt from local taxation under Article XIII, Section 28 of the California Constitution;

(3)  Persons engaging in business as a for-hire motor carrier of property under Revenue and Taxation Code Section 7233;

(4)  Persons engaging in intercity transportation as a household goods carrier under Public Utilities Code Section 5327;

(5)  Charter-party carriers operating limousines that are neither domiciled nor maintain a business office with the City under Public Utilities Code Section 5371.4;

(6)  Any person upon whom the City is prohibited under the Constitution or statute of the state of California from imposing the Payroll Expense Tax.

(f)  To the extent that any taxpayer has paid a substantially similar tax to any other taxing jurisdiction on any payroll expense taxed under this Article, the tax paid to such taxing jurisdiction shall be credited against the tax due under this Article.

(g)  Nothing in this Article shall be construed as requiring the payment of any tax for engaging in a business or the doing of an act when such payment would be in violation of the Constitution or a statute of the United States or of the Constitution or a statute of the State of California. (Ord. 275-70, 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 395-84, App. 9/20/84; Ord. 357-88, App. 8/4/88; Ord. 423-91, App. 12/19/91; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 906A.  ENTERPRISE ZONE TAX CREDIT.

(a)  A credit against this tax shall be allowed for each person who maintains a fixed place of business within the San Francisco Enterprise Zone and who, between January 1, 1992 and the effective date of this legislation, creates one or more new jobs and hires employees who qualify under Subsection (b) of this Section; provided, however, that in no event shall the tax credit reduce a person's tax liability to less than zero. Moreover, the tax credits shall only serve as an offset against the additional tax that would be paid as a result of additional hiring by a business within the zone. Each person claiming this credit shall file with the Tax Collector, on a form prescribed by the Tax Collector, an affidavit attesting to facts establishing his or her entitlement to the tax credit; said affidavit shall be supported by state tax credit forms (EDD, DSS, and PIC).

(b)  An employee is a "qualified employee" for purposes of computing this tax credit if he or she is newly hired by the taxpayer on or after January 1, 1992 and either (1) is receiving subsidized employment training or services under the terms of the Federal Job Training Partnership Act (JTPA); or (2) is registered in the Greater Avenues for Independence (GAIN) Program; or (3) is certified by the Employment Development Department as eligible for the federal Work Opportunity Credit Program; or (4) is receiving General Assistance.

(c)  The tax credit, for each qualified employee, shall be a varying percentage of the additional tax that would be incurred as a result of additional wages paid for work performed within the Enterprise Zone, and the dollar amount of such tax credit shall depend both upon the duration of employment as of the date payroll taxes are due, and the eligible wages paid, as follows:

(1)  The eligible wages to which the percentage is applied shall be limited to wages paid for work performed by the qualified employee while physically present within San Francisco.

(2)  The percentage to be applied to eligible wages shall depend upon the employee's duration of employment as follows:

Sec. 906A.          **San Francisco - Business and Tax Regulations Code**          346

| Duration of Employment | Credit Allowed on Payroll Tax Liability |
|---|---|
| First 24 months | 100% |
| Second 24 months | 50% |
| Third 24 months | 25% |
| Fourth 24 months | 15% |
| Fifth 24 months | 10% |

(d)  On or after the effective date of this legislation a credit against this tax shall be allowed for each person who maintains a fixed place of business within the San Francisco Enterprise Zone and who hires new employees who qualify under Subsection (f) of this Section; provided, however, that in no event shall the tax credit reduce a person's tax liability to less than zero. Moreover, the tax credits shall only serve as an offset against the tax that would be paid as a result of hiring by a business within the zone. Each person claiming this credit shall file with the Tax Collector, on a form prescribed by the Tax Collector, an affidavit attesting to facts establishing his or her entitlement to the tax credit; said affidavit shall be supported by applicable State tax credit forms (EDD, DSS) and an approved state enterprise zone voucher.

(e)  "Enterprise zone" means the area within the City and County of San Francisco designated as an enterprise zone by the State Department of Housing and Community Development pursuant to Chapter 12.8 (commencing with Section 7070) of Division 7 of Title 1 of the Government Code.

(f)  "Qualified employee" means a San Francisco resident who meets all of the following requirements:

(1)  At least 90 percent of whose services for the taxpayer during the taxable year are directly related to the conduct of the taxpayer's trade or business located in an enterprise zone.

(2)  Performs at least 50 percent of his or her services for the taxpayer during the taxable year in an enterprise zone.

(3)  Is hired by the taxpayer after the date of original designation of the area in which services were performed as an enterprise zone.

(4)  Is any of the following:

(i)  Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a person eligible for services under the Federal Job Training Partnership Act (29 U.S.C. Sec. 1501 et seq.), or its successor, who is receiving, subsidized employment, training, or services funded by the Federal Job Training Partnership Act, or its successor.

(ii)  Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a person eligible to be a voluntary or mandatory registrant under the Greater Avenues for Independence Act of 1985 (GAIN) provided for pursuant to Article 3.2 (commencing with Section 11320) of Chapter 2 of Part 3 of Division 9 of the Welfare and Institutions Code, or its successor.

(iii)  Immediately preceding the qualified employee's commencement of employment with the taxpayer, was an economically disadvantaged individual 14 years of age or older.

(iv)  Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a dislocated worker who meets any of the following:

(aa)  Has been terminated or laid off or who has received a notice of termination or layoff from employment, is eligible for or has exhausted entitlement to unemployment insurance benefits, and is unlikely to return to his or her previous industry or occupation.

(bb)  Has been terminated or has received a notice of termination of employment as a result of any permanent closure or any substantial layoff at a plant, facility, or enterprise, including an individual who has not received written notification but whose employer has made a public announcement of the closure or layoff.

(cc)  Is long-term unemployed and has limited opportunities for employment or reemployment in the same or a similar occupation in the area in which the individual resides, including an individual 55 years of age or older who may have substantial barriers to employment by reason of age.



346.1          **Payroll Expense Tax Ordinance**        Sec. 906A.

(dd) Was self-employed (including farmers and ranchers) and is unemployed as a result of general economic conditions in the community in which he or she resides or because of natural disasters.

(ee) Was a civilian employee of the Department of Defense employed at a military installation being closed or realigned under the Defense Base Closure and Realignment Act of 1990.

(ff) Was an active member of the armed forces or National Guard as of September 30, 1990, and was either involuntarily separated or separated pursuant to a special benefits program.

(gg) Is a seasonal or migrant worker who experiences chronic seasonal unemployment and underemployment in the agriculture industry, aggravated by continual advancements in technology and mechanization.

(hh) Has been terminated or laid off or has received a notice of termination or layoff, as a consequence of compliance with the Clean Air Act.

(v) Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a disabled individual who is eligible for or enrolled in, or has completed a state rehabilitation plan or is a service-connected disabled veteran, veteran of the Vietnam era, or veteran who is recently separated from military service.

(vi) Immediately preceding the qualified employee's commencement of employment with the taxpayer, was an ex-offender. An individual shall be treated as convicted if he or she was placed on probation by a state court without a finding of guilt.

(vii) Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a person eligible for or a recipient of any of the following:

(aa) Federal Supplemental Security Income benefits.

(bb) Aid to Families with Dependent Children.

(cc) Food stamps.

(dd) State and local general assistance.

(viii) Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a member of a federally recognized Indian tribe, band, or other group of Native American descent.

(ix) Immediately preceding the qualified employee's commencement of employment with the taxpayer, was a member of a targeted group, as defined in Section 51(d) of the Internal Revenue Code, or its successor.

(g) The tax credit, for each qualified employee, shall be a varying percentage of the tax that would be incurred as a result of wages paid for work performed within the Enterprise Zone, and the dollar amount of such tax credit shall depend both upon the duration of employment as of the date payroll taxes are due, and the eligible wages paid, as follows:

(1) The eligible wages to which the percentage is applied shall be limited to wages paid for work performed by the qualified employee while physically present within San Francisco.

(2) The percentage to be applied to eligible wages shall depend upon the employee's duration of employment as follows:

| Duration of Employment | Credit Allowed on Payroll Tax Liability |
|---|---|
| First 24 months | 100% |
| Second 24 months | 50% |
| Third 24 months | 25% |
| Fourth 24 months | 15% |
| Fifth 24 months | 10% |

(h) This Section 906A shall expire by operation of law on December 31, 2021, unless extended by the Board of Supervisors or the voters, and the City Attorney shall cause it to be removed from future editions of the Business and Tax Regulations Code. (Added by Ord. 38-92, App. 2/3/92; amended by Ord. 200-93, App. 6/16/93; Ord. 24-98, App. 1/16/98; Ord. 113-08, File No. 080350, App. 6/30/2008)

Sec. 906B.          **San Francisco - Business and Tax Regulations Code**          346.2

## SEC. 906B.   NEW JOBS TAX CREDIT.

(a)   **Purpose.** The purpose of this provision is to increase the number of permanent jobs (which in no case shall be a job lasting less than two years) within the City and County of San Francisco by providing an incentive for businesses to create or relocate jobs in San Francisco that otherwise would be situated elsewhere. The Board of Supervisors encourages business to consider the placement of San Francisco residents in jobs which are created or relocated and which result in tax credits as provided in this Section.

(b)   **General Rule.**

(1)   Any business, as defined in Section 902.2 of Part III of the Municipal Code, shall be allowed a credit against the Payroll Expense Tax for each new job created on or after July 1, 1993; however, in no event shall the tax credit reduce a taxpayer's liability for such tax to less than zero. Each taxpayer claiming the tax credit shall file with the Tax Collector, on a form prescribed by the Tax Collector, an affidavit under penalty of perjury attesting to the facts required by the Tax Collector to establish the taxpayer's entitlement to the tax credit consistent with this Section and regulations adopted by the Tax Collector.

(2)   No business shall be allowed a credit under this Section for any job which previously had been performed in San Francisco for a predecessor employer.

(c)   **Amount of Credit.**

(1)   For purposes of this Section, the amount of the new jobs tax credit for any given year, subject to the conditions below, shall be a percentage of the additional Payroll Expense Tax that otherwise would be due (assuming for this purpose that the Business Tax does not apply) for an individual hired after July 1, 1993 and prior to January 1, 1998 for a job qualifying for the credit based on the employee's duration of employment as follows:

| Duration of Employment | Tax Credit |
| --- | --- |
| First 12 months ...................... | 100% |
| Second 12 months .................... | 50% |

For an individual hired on or after January 1, 1998 for a job qualifying for the credit the credit shall be as follows:

| Duration of Employment | Tax Credit |
| --- | --- |
| First 24 months ...................... | 100% |
| Next 24 months ...................... | 50% |

(2)   For purposes of this Section, "base year liability" for any given tax year shall be the employer's highest Payroll Tax liability (exclusive of any credits granted under this provision) for any prior year from 1992 on.

(3)   No credit shall be allowed for any first year of employment to the extent that such credit would reduce the employer's Payroll Tax Expense liability below that employer's base year liability.

(4)   No credit shall be allowed for any second year of employment to the extent that such credit for second year employment and any credits for first year of employment would reduce the employer's Payroll Tax Expense liability below the employer's previous base year liability.

(5)   No credit shall be allowed for any third or fourth year of employment to the extent that such credit for third or fourth year employment and any credits for first and second year of employment would reduce the employer's Payroll Tax Expense liability below the employer's previous base year liability.

(6)   For purposes of this limitation, it shall be presumed that the employer is liable for the Payroll Expense Tax, regardless of the Business Tax.



347                    **Payroll Expense Tax Ordinance**                    Sec. 906C.

(d)  **Small Business Tax Exemption.** If after the new jobs tax credit the net tax does not exceed $2,500, and the taxpayer is a "small business enterprise" as defined in Section 905-A of this Part, the taxpayer shall be exempt from taxation under this ordinance.

(e)  **Regulations.** The Tax Collector is directed to adopt and promulgate and to enforce rules and regulations relating to the application of this Section including provisions which provide penalties due to fraud, any underpayment of tax, or an intent to evade this ordinance or authorized rules and regulations. The Board of Review shall approve, modify or disapprove the rules and regulations prescribed by the Tax Collector pursuant to this ordinance. Any rules and regulations adopted by the Tax Collector shall also be approved by the City Attorney, and further provided that any modifications determined by the Board of Review shall be approved as to legal form by the City Attorney. The rules and regulations shall become effective 30 days after receipt by the Clerk of the Board, unless the Board of Supervisors disapproves or modifies the regulations. The Board of Supervisors' determination to modify or disapprove a rule or regulation submitted by the Tax Collector pursuant to this ordinance shall not impair the ability of the Tax Collector to submit the same or a similar rule or regulation to the Board of Supervisors if the Tax Collector determines it is necessary to effectuate the purpose of this ordinance.

(f)  **Report on Effect of Tax Credit.** The Tax Collector shall submit a report to the Board of Supervisors on May 31, 1994, and every year thereafter for which the tax credit is available, which evaluates the effect of the tax credit on employment and local tax revenues. The Tax Collector shall also make available to the Board of Supervisors the aggregate information of the dollar value of the new jobs tax credits claimed each year by businesses.

(g)  **Expiration.** The New Jobs Tax Credit provided in this Section shall expire on December 31, 2002, unless the Board of Supervisors extends the credit. (Added by Ord. 199-93, App. 6/16/93; amended by Ord. 188-96, App. 5/8/96; Ord. 24-98, App. 1/16/98; Ord. 389-98, App. 12/24/98)

**SEC. 906C.  SUMMER YOUTH EMPLOYMENT TAX CREDIT.**

(a)  **Purpose.** The purpose of this provision is to increase the number of youth employed during the summer, without displacing current jobs, within the City and County of San Francisco by providing an incentive for businesses to create such temporary summer jobs for youth, with an emphasis on disadvantaged youth.

(b)  **General Rule.**

(1)  Any person subject to the tax under Article 12-A of Part III of the Municipal Code shall be allowed a credit against such tax for each summer job created; however, in no event shall the tax credit reduce a taxpayer's liability for such tax to less than zero. Each taxpayer claiming the tax credit shall file with the Tax Collector, on a form prescribed by the Tax Collector, an affidavit under penalty of perjury attesting to the facts required by the Tax Collector to establish the taxpayer's entitlement to the tax credit consistent with this Section and regulations adopted by the Tax Collector. In no event shall credit be provided for any work performed before the second Sunday in May or after the second Sunday of September of the calendar year.

(2)  Amount of Credit. The amount of the Summer Youth Employment Tax Credit for any given year, subject to the conditions below, shall be a percentage of the additional Payroll Expense Tax that otherwise would be due (assuming for this purpose that the Business Tax does not apply) for an individual hired after May 12, 1996 for a job qualifying for the credit based on the status of the employee as disadvantaged or not disadvantaged.

Disadvantaged . . . . . . . . . . . . . . . . . . . . . . . .   100%
Not Disadvantaged . . . . . . . . . . . . . . . . . . . .   50%

(3)  A summer job as defined in this Section shall not constitute a job performed by a predecessor employee; provided that a prior year's summer job shall not be considered a job performed by a predecessor employee.

(c)  **Definitions.** The following definitions shall apply to terms used in this Section.

(1)  "Summer job" means any new job created after the second Monday of May of the calendar year and before July 1st of that calen-

Sec. 906C.    **San Francisco - Business and Tax Regulations Code**    348

dar year. A job, in addition to its ordinary definition, also includes internships, clerkships, and apprenticeships.

(2)  "Youth" means any individual who, during the duration of the credit period is between the age of 14 and 21.

(3)  "Disadvantaged youth" means any youth whose family income is not greater than 80 percent of the median family income as provided in the most recently published estimate of median family income for San Francisco by the United States Department of Housing and Urban Development or any successor agency.

(d)  **Small Business Tax Exemption.** If, after the Summer Youth Employment Tax Credit, the net tax does not exceed $2,500, and the taxpayer is a "small business enterprise" as defined in Section 905-A of this Article 12-A, Part III of the Municipal Code, the taxpayer shall be exempt from taxation under this ordinance. Solely for the purpose of determining the Summer Youth Employment Tax Credit in the preceding sentence, it shall be presumed that all youths are disadvantaged youths.

(e)  **Special Regulations.** The Tax Collector is directed to formulate, issue and enforce rules and regulations relating to the application of this Section including provisions which provide penalties due to fraud, any underpayment of tax, or an intent to evade this ordinance or authorized rules and regulations. The Board of Review shall approve, modify or disapprove the rules and regulations prescribed by the Tax Collector pursuant to this ordinance. Any rules and regulations adopted by the Tax Collector shall also be approved by the City Attorney, and further provided that any modifications determined by the Board of Review shall be approved as to legal form by the City Attorney. The rules and regulations shall become effective 30 days after receipt by the Clerk of the Board, unless the Board of Supervisors disapproves or modifies the regulations. The Board of Supervisors' determination to modify or disapprove a rule or regulation submitted by the Tax Collector pursuant to this ordinance shall not impair the ability of the Tax Collector to submit the same or a similar

rule or regulation to the Board of Supervisors if the Tax Collector determines it is necessary to effectuate the purpose of this ordinance.

(f)  **Report on Effect of Tax Credit.** The Tax Collector shall submit a report to the Board of Supervisors on or before May 31, 1997, and on the May 31st of every fiscal year thereafter for which the tax credit is available, which evaluates the effect of the tax credit on employment and local tax revenues. The Tax Collector shall also make available to the Board of Supervisors the aggregate information of the dollar value of the Summer Youth Employment Tax credits claimed each year by businesses.

(g)  **Expiration.** The Summer Youth Employment Tax Credit provided in this Section shall expire on December 31, 2001, unless the Board of Supervisors extends the credit. (Added by Ord. 239-96, App. 6/11/96; amended by Ord. 24-98, App. 1/16/98)

## SEC. 906D.  GARMENT MANUFACTURERS' TAX CREDIT.

(a)  **Purpose.** The purpose of this provision is to retain garment manufacturing jobs within the City and County of San Francisco by providing an incentive for businesses to strengthen and revitalize their production and management systems, upgrade the skills and competency of their workers, and invest in new equipment and technologies. This is part of an overall policy adopted by the City and County of San Francisco to enhance the ability of small and medium sized businesses to compete in the global economy, and thereby to retain and expand manufacturing jobs within the City.

(b)  **Credit.** A credit shall be allowed against this tax for any garment manufacturer with gross receipts of not more than $5,000,000 annually that, on or after January 1, 1997, invests in (1) technical equipment for use in the garment manufacturer's business in San Francisco, (2) work reorganization within the garment manufacturer's factory in San Francisco, or (3) training of the garment manufacturer's San Francisco employees.



**Payroll Expense Tax Ordinance**

Each taxpayer claiming the credit shall file with the Tax Collector, on a form prescribed by the Tax Collector, an affidavit attesting to facts establishing his or her entitlement to the tax credit. The affidavit shall be supported by such other documentation as the Tax Collector shall prescribe.

Any taxpayer claiming a credit for employee training shall, prior to commencement of training, obtain preapproval of the training program from the Tax Collector.

(c)  **Definitions.** For purposes of this Section, the following definitions shall apply:

(1)  "Technical equipment" means any equipment used directly in the process of operating and managing a garment factory, including, but not limited to, cutting room equipment, sewing room equipment, press room equipment, and design room equipment. In addition, "technical equipment" means any equipment used to improve the management and operation of the garment factory, including, but not limited to, general office equipment to upgrade the garment manufacturer's accounting, management, and marketing processes. The term "technical equipment" shall include, but not be limited to, computerized pattern-making equipment, cutting tables, electric cutting knives, single-needle sewing machines, overlock machines, special machines, boilers, irons, steam boards, automatic spreaders, pressing and fusing equipment, steam channels, CAD system and CAM system, computers, and management and operational software.

(2)  "Work reorganization" means the conversion within a garment factory from the traditional manufacturing system of progressive bundles to a more productive and efficient system, such as a modular manufacturing system or a unit production system. The costs for which the credit for work reorganization may be taken include, but are not limited to, (A) the costs of constructing or installing new technology; (B) the costs of modifying existing machinery and work spaces, including necessary electrical upgrades; and (C) the costs of accessories and attachments to existing machinery, such as foot pedals, floor mats, incentive boards, rolling bins, and maintenance tools and manuals.

(3)  "Employee training" means any training provided to the taxpayer's employees for purposes of upgrading their skills with respect to the garment manufacturing business. "Employee training" includes, but is not limited to, training to operate technical equipment, as defined in paragraph (1), training and improvement in business and other management skills, and learning and incorporating new or improved production methods or technologies in the garment manufacturing process.

(4)  "Garment Manufacturer" means a person who utilizes commercial sewing techniques and skills to process fabric into finished articles of clothing or apparel to be worn by human beings.

(d)  **Amount of Credit.** Except as otherwise provided in subdivisions (e) and (f), the amount of the credit allowed by this Section 906D for the taxable year shall be the sum of (i) 60 percent of the qualified investment in the taxable year (the "First Year's Credit"), and (ii) 40 percent of the qualified investment in the taxable year immediately preceding such year (the "Second Year's Credit"). For purposes of this Section 906D, the term "qualified investment" means the amount paid or incurred by a garment manufacturer for the purchase or lease of technical equipment for use in the garment manufacturer's business in San Francisco, for work reorganization within the garment manufacturer's factory in San Francisco, and for employee training provided to any employee employed in San Francisco. The credit, including any credit carryover from a prior year, shall not exceed $30,000 per year, and in no event shall the tax credit reduce a taxpayer's tax liability under this Article to less than zero. The tax credit is not transferable.

(e)  **Credit Limitations.**

(1)  With respect to the credit for the purchase or lease of technical equipment, the First Year's Credit shall be allowed only if a garment manufacturer places such equipment in service in San Francisco during the taxable year and keeps such equipment in service in San Francisco through the end of such taxable year, and

the Second Year's Credit shall be allowed only if the garment manufacturer keeps such equipment in service in San Francisco through the end of the taxable year immediately following such taxable year.

(2) With respect to the credit for work reorganization, the First Year's Credit shall be allowed only if a garment manufacturer keeps the factory for which the credit is claimed in service in San Francisco through the end of the taxable year within which such work reorganization is completed, and the Second Year's Credit shall be allowed only if the garment manufacturer keeps such factory in service in San Francisco through the end of the taxable year immediately following such taxable year.

(3) With respect to the credit for employee training, the First Year's Credit shall be allowed only if and to the extent a garment manufacturer employs the specific individuals for which the employee training credit is claimed in San Francisco through the end of the taxable year within which such training is completed, and the Second Year's Credit shall be allowed only if and to the extent the garment manufacturer employs such individuals in San Francisco through the end of the taxable year immediately following such taxable year.

(f)  **Recapture of Credits.**

(1) With respect to the credit for the purchase or lease of technical equipment, the First Year's Credit shall be retroactively disallowed if the technical equipment for which such credit was claimed is disposed of by the garment manufacturer or otherwise ceases to be used in such garment manufacturer's business in San Francisco before the first anniversary of the date upon which the garment manufacturer placed such equipment in service, and the Second Year's Credit shall be retroactively disallowed if such technical equipment is disposed of by the garment manufacturer or otherwise ceases to be used in the garment manufacturer's business in San Francisco before the second anniversary of the date upon which such equipment was placed in service by the garment manufacturer.

(2) With respect to the credit for work reorganization, the First Year's Credit shall be retroactively disallowed if the factory for which such credit was claimed is disposed of or otherwise ceases to remain in service in San Francisco by the garment manufacturer before the first anniversary of the date upon which such work reorganization was completed, and the Second Year's Credit shall be retroactively disallowed if such factory is disposed of or otherwise ceases to remain in service in San Francisco by the garment manufacturer before the second anniversary of date upon which such work reorganization was completed.

(3) With respect to the credit for employee training, the First Year's Credit shall be retroactively disallowed if and to the extent the specific individuals for which the employee training credit was claimed cease to be employed in San Francisco by the garment manufacturer before the first anniversary of the date upon which such training was completed, and the Second Year's Credit shall be retroactively disallowed if and to the extent such individuals cease to be employed in San Francisco by the garment manufacturer before the second anniversary of the date upon which such training was completed.

(g)  **Carryover.** In the case where the credit allowed by this Section exceeds the tax, the excess may be carried over to reduce the tax in the following years and succeeding years, if necessary, until the credit has been exhausted, for up to three years.

(h)  **Other Credits.** The credit provided in this Section shall be in addition to any other credit under Part III to which the taxpayer is entitled for costs to which this credit applies. The credit provided in this Section shall be taken after any other available credits have been exhausted.

(i)  **Expiration; Carryover of Unused Credit.** The credit provided in this Section shall expire on December 31, 2001, unless the Board of Supervisors extends the credit. Any unused credit may continue to be carried forward, as provided in subdivision (g), until the credit has been



351  **Payroll Expense Tax Ordinance**                                    Sec. 906.1.

exhausted, but in no event for more than three years. (Added by Ord. 11-97, App. 1/3/97; amended by Ord. 166-99, File No. 990335, App. 6/18/99)

### SEC. 906E.   CREDIT OF SURPLUS BUSINESS TAX REVENUE.

(a)   **General Rule.** Any business, as defined in Section 902.2 of Part III of the Municipal Code, that does not qualify as a "small business enterprise" under the provisions of Section 905-A (Small Business Exemption), shall be allowed a credit against the Payroll Expense Tax for any taxable year ending within a fiscal year of the City and County of San Francisco immediately following a fiscal year in which the City and County of San Francisco has surplus Business Tax revenue; provided, however, that in no event shall the tax credit allowable pursuant to this Section reduce a taxpayer's liability for such tax to an amount less than zero. For each fiscal year, the Controller shall determine whether the City and County of San Francisco has surplus Business Tax revenue. The Controller's determination whether the City and County of San Francisco has surplus Business Tax revenue shall be made on or before the first business day of September following the close of such fiscal year; provided, however, that for purposes of the 1997/1998 fiscal year, the Controller may make his or her determination on or before December 31, 1998. The Controller shall notify the Tax Collector of his or her determination.

(b)   **Amount of Credit.** For purposes of this Section, the amount of the tax credit for any taxable year shall be $500.00; provided, however, that in no event shall the tax credit allowable pursuant to this Section reduce a taxpayer's liability for such tax to an amount less than zero.

(c)   **Definitions.** The following definitions shall apply to the terms used in this Section.

(1)   For any fiscal year of the City and County of San Francisco, the City and County of San Francisco shall be deemed to have "surplus Business Tax revenue" if and only if the actual Business Tax revenue for such fiscal year exceeds the anticipated Business Tax revenue for such fiscal year.

(2)   For any fiscal year of the City and County of San Francisco, the "actual Business Tax revenue" means the aggregate amount of tax revenue collected pursuant Article 12-A (Payroll Expense Tax Ordinance) and Article 12-B (Business Tax Ordinance) of Part III of the San Francisco Municipal Code, less the amount of such revenue for such year allocable solely to tax rate increases in such year.

(3)   For any fiscal year of the City and County of San Francisco, the "anticipated Business Tax revenue" is an amount equal to the product of (i) the actual Business Tax revenue for the fiscal year immediately preceding such fiscal year, multiplied by (ii) 107.5 percent.

(d)   **Effective Date.** The tax credit provided by this Section shall be allowable in taxable years ending after 1997. (Added by Ord. 391-98, App. 12/24/98)

### SEC. 906.1.   BIOTECHNOLOGY EXCLUSION.

(a)   Any person engaging in biotechnology business within the city may exclude from their payroll expense all compensation paid to, on behalf of or for the benefit of all employees of that person, and all distributions by an Association by way of salary to those having an ownership interest in such Association, who or that perform substantially all work or render substantially all services in direct support of such person's biotechnology business, subject to the conditions and limitations set forth in this Section. For purposes of this Section, outside contractors shall not be considered employees of the biotechnology business. For purposes of this Section, "biotechnolog business" means conducting biotechnology research and experimental development, and operating laboratories for biotechnology research and experimental development, using DNA, cells, and/or bioprocessing techniques, as well as the application thereof to the development of therapeutics, diagnostic products and/or devices to improve human health, animal health, and agriculture.

(b)   For purposes of this section, "DNA" is a nucleic acid sequence, or fragment thereof, that contains the genetic information for cell growth,

Sec. 906.1.        **San Francisco - Business and Tax Regulations Code**        352

division, and function. Examples of DNA include recombinant DNA, RNA, mRNA, antisense, RNAi, genes and ESTs.

(c)   For purposes of this section, "cells" are membrane bound structures containing biomolecules, such as nucleic acids, proteins, and polysaccharides. This definition includes both prokaryotic (bacterial) and eukaryotic (animal or plant) cells. Examples include primary cells, transformed or cultured cells, stem cells, iPS, ESCs, fused cells and cell lines.

(d)   For purposes of this section, "bioprocessing" is the use of microbial, plant, or animal cells or portions thereof, for the production of therapeutics or diagnostics. Bioprocessing includes the extraction of compounds from biomaterials; reaction of biomaterials, such as microbial fermentation, cell culture, cell fusion or biotransformation by enzymes; and separation of product from biomaterials using filtration, purification, precipitation, centrifugation, solvents, chromatography or other means.

(e)   The biotechnology exclusion authorized under this Section shall be available to and may be taken by each person engaging in the biotechnology business in the City for a period of seven and one-half years from the effective date of this Section or the commencement of the person's biotechnology business in the City, whichever is later. The date the Director of Public Health or his or her designee received the person's application for a business registration certificate for the person's biotechnology business shall be presumed to be the date of commencement of such business unless the person establishes a different commencement date to the satisfaction of the Tax Collector.

(f)   In order to be eligible for the payroll expense tax exclusion authorized under this Section, persons wishing to claim the exclusion must:

(1)   Complete and submit an initial application to the Director of the Department of Public Health or his or her designee for review and evaluation. The Director of the Department of Public Health, or his or her designee shall have authority to develop eligibility criteria for the biotechnology exclusion, which shall include participation in the City's First Source Hiring Program as defined in Section 83.4 of the Administrative Code.

(2)   After approval, file an annual affidavit with the Department of Public Health affirming that they continue to meet the eligibility criteria as determined by the Department of Public Health. The affidavit must be filed with the Department of Public Health on or before January 31 of every year after the year the application is first approved.

(3)   Maintain a reasonable method of documentation that can be reviewed or verified objectively that tracks how employees whose compensation qualifies for the payroll expense tax exclusion spend their time at work, and provide such documentation to the Tax Collector upon request.

(4)   File an annual Payroll Expense Tax Return with the Tax Collector regardless of the amount of tax liability shown on the return after claiming the exclusion provided for in this Section.

(5)   File annual affidavits with the Office of Economic and Workforce Development detailing the total number of individuals hired, the number of individuals hired who were referred by the San Francisco Workforce Development System, and the duration of employment for each individual hired. The affidavits must be filed with the Office of Economic and Workforce Development on or before January 31 of every year after the year the application is first approved.

(g)   The biotechnology exclusion authorized under this Section shall expire on the tenth anniversary date of the effective date of this Section. Unless exempted under Sections 906 of this Article, every person engaging in the biotechnology business in the City shall pay the tax imposed under this Article on the full amount of the person's payroll expense attributable to the City from and after the expiration of this Section.

(h)   If a person's taxable payroll for any year does not exceed the small business exemption amount as defined in Section 905-A, the person shall be exempt from payment of the Payroll Expense Tax for that year.



353                    **Payroll Expense Tax Ordinance**                    Sec. 906.2.



[(i)   Reserved.]

(j)   The Tax Collector shall submit an annual report to the Board of Supervisors for each year for which the biotechnology exclusion authorized under this Section is available that sets forth aggregate information on the dollar value of the biotechnology exclusions taken each year, the number of businesses taking the exclusion, the change in the number of biotechnology businesses engaging in business in the City, and any increase or decrease in the number of jobs in the biotechnology business sector compared to the number of jobs in the biotechnology business sector for the immediately preceding calendar year.

(k)   The Assessor-Recorder and the Tax Collector shall jointly prepare and submit an annual report to the Board of Supervisors for each year for which the biotechnology exclusion authorized under this Section is available that sets forth any increases in property taxes resulting from biotechnology businesses location, relocation or expansion to or within the City.

(l)   The Mayor's Office of Economic Development shall coordinate community educational workshops on the biotechnology industry.

(m)   The Controller, after five years from the enactment of this Ordinance, shall perform an assessment and review of the effect of the biotechnology tax exclusion. Based on such assessment and review the Controller shall prepare and submit an analysis to the Board of Supervisors. The analysis shall be based on criteria deemed relevant by the Controller, and may include but is not limited to, data contained in the annual reports to the Board of Supervisors as required by subsections (j) and (a) of Section 1. (Added by Ord. 209-04, File No. 040592, App. 8/12/2004; Ord. 105-10, File No. 091269, App. 5/21/2010)

## SEC. 906.2.   CLEAN TECHNOLOGY BUSINESS EXCLUSION.

(a)   Any person that employs a full-time staff of not more than one hundred employees and is engaging in a clean technology business may exclude from the person's payroll expense all compensation paid to, on behalf of or for the benefit of the person's employees, and all distributions by an association by way of salary to those having an ownership interest in such association, who or that perform substantially all work or render substantially all services in direct support of such person's clean technology business activities,, subject to the conditions and limitations set forth in this Section. For purposes of this Section, outside independent contractors shall not be considered employees of the clean technology business.

(b)   For purposes of this section, the following terms shall have the meanings set forth below:

(1)   The term "person" includes the combination of all domestic subsidiaries, affiliates and other business entities related by ownership including but not limited to partnerships, joint ventures, limited liability companies, corporations and other business organizations of whatever form. Any beneficial ownership of the stock of publicly traded corporations shall not be considered for purposes of this definition.

(2)   The term "business" is as defined in Section 6.2-5 of Article 6 of the San Francisco Business and Tax Regulations Code.

(3)   The term "association" is as defined in Section 6.2-4 of Article 6 of the San Francisco Business and Tax Regulations Code.

(4)   "Clean energy" means energy utilizing energy produced by wind, solar energy, landfill gas, geothermal resources, ocean thermal energy conversion, quantifiable energy conservation measures, tidal energy, wave energy, biomass, biofuels, or hydrogen fuels derived from renewable sources, excluding (A) any fossil fuel based energy production, including but not limited to, clean coal, clean diesel, natural gas and hydrogen from natural gas, (B) any nuclear based energy production, (C) waste to energy via combustion or incineration, or/and (D) other technologies that are detrimental to human health.

(5)   "Clean technology business" means a business in which at least seventy-five percent of

all business activities carried on during the tax year are directly related to one or more of the following activities:

(A)  research and development and/or associated manufacturing applying scientific advances to the production, distribution or storage of clean energy:

(B)  research and development and/or associated manufacturing applying scientific advances to prototype or commercially viable materials and products powered by clean energy, including but not limited to single passenger vehicles and fueling infrastructure:

(C)  research and development and/or associated manufacturing applying scientific advances to prototype or commercially viable techniques, materials and products that materially improve energy efficiency, water conservation or air quality;

(D)  research and development, manufacture and/or installation of solar panels: or

(c)  In order to be eligible for the payroll expense tax exclusion authorized under this Section, persons wishing to claim the exclusion must:

(1)  Complete and submit an initial application to the Director of the Department of the Environment for review and evaluation.

(2)  After approval, file an annual affidavit with the Department of the Environment affirming that they continue to meet the eligibility criteria set forth in regulations adopted by the Department of the Environment. The affidavit must be filed with the Department of the Environment on or before January 31 of every year after the year the application is first approved.

(3)  Maintain a reasonable method of documentation that can be reviewed or verified objectively that tracks how employees whose compensation qualifies for the payroll expense tax exclusion spend their time at work, and provide such documentation to the Tax Collector upon request.

(4)  File an annual Payroll Expense Tax Return with the Tax Collector regardless of the

amount of tax liability shown on the return after claiming the exclusion provided for in this Section.

(5)  For clean technology businesses in business sectors eligible for Green Business recognition from the City under Chapter 15 of the Environment Code and implementing regulations, qualify as a Green Business, and (2) complete and submit all required applications for Green Business recognition at least ninety days prior to the close of the tax year for which the payroll tax exemption is requested.

(d)  The Director of the Department of the Environment shall:

(1)  No later than the effective date of this ordinance, after a public hearing, adopt rules, regulations and forms regarding eligibility and the application process for the payroll tax expense exclusion. The Director of the Department of the Environment may amend such rules, regulations and forms from time to time as necessary.

(2)  Review all applications for completeness and if an application is approved issue a certificate of eligibility to the applicant. The Director's decision on the application shall be final.

(3)  Provide the Tax Collector with a list of persons eligible to claim the tax exclusion authorized under this Section for the preceding tax year by March 1 of each year. The Tax Collector shall grant or deny the tax exclusion on the basis of the Department of the Environment's determination along with the review, at the Tax Collector's option, of the documentation maintained by the employer under Subsection (c)(3) of this Section.

(e)  The clean technology exclusion authorized under this Section shall be available to and may be taken by a person for each tax year that person holds a valid certificate of eligibility for a period of ten years from the effective date of this Section or the commencement of the person's clean technology business in the City, whichever is later. The date the Tax Collector first received the person's application for a business registration certificate for the person's clean technology business shall be presumed to be the date of



355                              **Payroll Expense Tax Ordinance**



Sec. 908.

commencement of such business unless the person establishes a different commencement date to the satisfaction of the Tax Collector.

(f) The clean technology exclusion authorized under this Section shall expire on the fifteenth anniversary date of the effective date of this Section. A person may not use or claim any unused portion of the ten year clean technology exclusion after the expiration date of this Section. Unless exempted under Sections 906 of this Article, every person engaging in a clean technology business in the City shall pay the tax imposed under this Article on the full amount of the person's payroll expense attributable to the City from and after the expiration of this Section.

(g) If a person's calculated liability for the Payroll Expense Tax does not exceed the ceiling specified in Section 905-A for the tax year after applying the clean technology exclusion under this Section, the person shall be exempt from payment of the Payroll Expense Tax for that tax year as provided in Section 905-A.

(h) The effective date of this Section 906.2 shall be January 1, 2006 except that the amendments to Section 906.2 made by Ordinance 08- do not apply to tax years beginning before January 1, 2009.

(i) The Tax Collector shall submit an annual report to the Board of Supervisors for each year for which the clean technology exclusion authorized under this Section is available that sets forth aggregate information on the dollar value of the clean technology exclusions taken each year, the number of businesses taking the exclusion, the change in the number of clean technology businesses engaging in business in the City, and any identifiable increase or decrease in the number of jobs in the clean technology business sector compared to the number of jobs in the clean technology business sector for the immediately preceding calendar year.

(j) The Assessor-Recorder shall submit an annual report to the Board of Supervisors for each year for which the clean technology exclusion authorized under this Section is available that sets forth any identifiable increases in prop-

erty taxes resulting from clean technology businesses location, relocation or expansion to or within the City.

(k) The Controller, after three years from the enactment of this Ordinance, shall perform an assessment and review of the effect of the clean technology tax exclusion. Based on such assessment and review the Controller shall prepare and submit an analysis to the Board of Supervisors. The analysis shall be based on criteria deemed relevant by the Controller, and may include but is not limited to, data contained in the annual reports to the Board of Supervisors as required by subsections (i) and (j) of this Section.

(l) A misrepresentation or misstatement by any person regarding eligibility for the clean technology payroll expense tax exclusion authorized by this section that results in the underpayment or underreporting of the payroll expense tax shall be subject to penalties as provided in Section 6.17-2 of Article 6 of the San Francisco Business and Tax Administrative Code. (Added by Ord. 249-05, File No. 050922, App. 11/10/2005; amended by Ord. 21-06, File No. 051818, App. 2/3/2006; Ord. 313-08, File No. 081449, 12/19/2008)

## SEC. 907. PAYMENTS, RETURNS, PREPAYMENTS AND EXTENSIONS.

Payments, returns, prepayments and extensions for person's subject to this Article shall be as prescribed in the common administrative provisions set forth in Article 6. (Ord. 275-70, App. 9/2/70; amended by Ord. 118-80, App. 3/28/80; Ord. 395-84, App. 9/20/84; Ord. 357-88, App. 8/4/88; Ord. 273-93, App. 8/25/93; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 908. SAVINGS CLAUSE.

No section, clause, part or provision of this Article shall be construed as requiring the payment of any tax for engaging in a business or the doing of an act when such payment or act would constitute an unlawful burden upon or an unlawful interference with interstate or foreign commerce, or which payment or act would be in violation of the United States Constitution or a

Sec. 908.            **San Francisco - Business and Tax Regulations Code**            356

statute of the United States or of the California
Constitution or a statute of the State of Califor-
nia. If any section, clause, part or provision of
this Article, or the application thereof to any
person or circumstance, is held invalid or uncon-
stitutional, the remainder of this Article, includ-
ing the application of such part or provision to
other persons or circumstances, shall not be
affected thereby and shall continue in full force
and effect. To this end, the provisions of this
Article are severable. (Added by Ord. 63-01, File
No. 010274, App. 4/25/2001)

**Sec. 917.1.**
(Ord. 275-70, App. 9/2/70; amended by Ord. 118-
80, App. 3/28/80; Ord. 357-88, App. 8/4/88; Ord.
24-98, 1/16/98; repealed by Ord. 63-01, File No.
010274, App. 4/25/2001)

[The next page is 377]

# Exhibit 3



# ARTICLE 6: COMMON ADMINISTRATIVE PROVISIONS

***Editor's Note:***

*Section 6 is located in Article 1 of this Code.*

Sec. 6.1-1.     Common Administrative Provisions.

Sec. 6.2-1.     Common Definitions.

Sec. 6.2-2.     Agent.

Sec. 6.2-3.     Article.

Sec. 6.2-4.     Association.

Sec. 6.2-5.     Business.

Sec. 6.2-6.     City; City and County.

Sec. 6.2-7.     Controller.

Sec. 6.2-8.     Day.

Sec. 6.2-9.     Employee.

Sec. 6.2-10.    Individual.

Sec. 6.2-11.    Month.

Sec. 6.2-12.    Nexus; "Engaging in Business within the City."

Sec. 6.2-13.    Operator.

Sec. 6.2-14.    Payroll Expense Tax Ordinance; Payroll Expense Tax.

Sec. 6.2-15.    Person.

Sec. 6.2-16.    Representative.

Sec. 6.2-17.    Return.

Sec. 6.2-18.    Successor.

Sec. 6.2-19.    Tax Collector.

Sec. 6.2-20.    Tax Year.

Sec. 6.2-20.5.  Taxpayer

Sec. 6.2-21.    Third-Party Taxes.

Sec. 6.3-1.     Duties of the Tax Collector.

Sec. 6.4-1.     Records; Investigation; Subpoenas.

Sec. 6.5-1.     Request for Financial Information.

Sec. 6.5-2.     Penalties for Failure to Respond to Request for Financial Information.

Sec. 6.6-1.     Certificate of Authority for Third-Party Taxes.

Sec. 6.7-1.     Collection of Third-Party Taxes.

Sec. 6.7-2.     Reporting and Remitting Third-Party Taxes and Stadium Operator Admission Tax.

Sec. 6.8-1.     City, Public Entity and Constitutional Exemptions.

Sec. 6.9-1.     Determinations, Returns and Payments; Due Date of Taxes.

Sec. 6.9-2.     Determinations, Returns and Payments; Returns.

Sec. 6.9-3.     Determinations, Returns and Payments; Prepayments.

Sec. 6.9-4.     Determinations, Returns and Payments; Extension of Time for Filing a Return and Paying Tax.

Sec. 6.9-5.     Determinations, Returns and Payments; Credits and Exemptions.

Sec. 6.9-6.     Filing and Paying by Mail.

Sec. 6.9-7.     Partial Payments.

Sec. 6.10-1.    Collection of Tax; Security.

Sec. 6.10-2.    Collection of Tax from Third-Party.

Sec. 6.10-3.    Collection of Tax; Legal Actions.

Sec. 6.11-1.    Deficiency Determinations; Recomputation; Interest.

Sec. 6.11-2.    Deficiency Determinations; Revocation and Suspension Determinations; Notice and Service.

Sec. 6.11-3.    Determination if No Return Made; Estimate of Liability, Penalties and Interest.

Sec. 6.11-4.    Reserved.

Sec. 6.12-1.    Jeopardy Determinations; Duty of Tax Collector.

Sec. 6.12-2.    Jeopardy Determinations; When Due and Payable; Stay of

Supp. No. 33, December 2010

**San Francisco - Business and Tax Regulations Code**                    134

| | |
|---|---|
| | Collection; Petition for Redetermination; Time of Hearing. |
| Sec. 6.12-3. | Jeopardy Determinations; Service of Notice. |
| Sec. 6.12-4. | Jeopardy Determinations; Effect of Nonpayment. |
| Sec. 6.12-5. | Jeopardy Determinations; Petition for Redetermination. |
| Sec. 6.13-1. | Redeterminations; Petition; Time for Filing; Incomplete Petitions. |
| Sec. 6.13-2. | Redeterminations; Hearing and Notice. |
| Sec. 6.13-3. | Redeterminations; Alteration of Determination. |
| Sec. 6.13-4. | Redeterminations; Finality of Order. |
| Sec. 6.13-5. | Exhaustion of Administrative Remedies. |
| Sec. 6.13-6. | Effect of Tax Collector's Notice of Deficiency. |
| Sec. 6.14-1. | Reserved. |
| Sec. 6.15-1. | Refunds. |
| Sec. 6.15-2. | Refunds; Interest. |
| Sec. 6.15-3. | Refunds; Notice of Denial. |
| Sec. 6.15-4. | Exhaustion of Administrative Remedies; Presentation of Claim for Refund as Prerequisite to Suit; Payment of Disputed Amount and Petition for Refund; Limitations. |
| Sec. 6.16-1. | Rules and Regulations. |
| Sec. 6.17-1. | Penalties and Interest for Failure to Pay. |
| Sec. 6.17-2. | Penalties for Underreporting of Tax. |
| Sec. 6.17-3. | Negligence Penalties for Failure to Register, Misstatements In Registration, Failure to Timely Update Registration, Failure to Allow Inspection of Records Upon Request, and Failure to File a Return; Sanction for Failure to Produce Requested Records. |
| Sec. 6.17-4. | Waiver of Penalties. |
| Sec. 6.17-5. | Costs. |
| Sec. 6.18-1. | Summary Judgment; Notice; Certificate. |
| Sec. 6.18-2. | Summary Judgment; Filing of Certificate; Entry of Judgment. |
| Sec. 6.18-3. | Summary Judgment; Recording of Judgment; Lien. |
| Sec. 6.18-4. | Reserved. |
| Sec. 6.18-5. | Summary Judgment; Additional Penalty. |
| Sec. 6.18-6. | Summary Judgment; Extension of Lien. |
| Sec. 6.18-7. | Summary Judgment; Execution Upon the Judgment. |
| Sec. 6.18-8. | Summary Judgment; Satisfaction of Judgment; Removal of Lien. |
| Sec. 6.19-1. | Civil Actions. |
| Sec. 6.19-2. | Remedies Cumulative. |
| Sec. 6.19-3. | Administrative Penalties and Citations. |
| Sec. 6.19-4. | Violations. |
| Sec. 6.19-5. | Administrative Citation; Issuance. |
| Sec. 6.19-6. | Administrative Citation; Service. |
| Sec. 6.19-7. | Administrative Citation; Contents. |
| Sec. 6.19-8. | Administrative Appeal. |
| Sec. 6.19-9. | Regulations. |
| Sec. 6.19-10. | Judicial Review. |
| Sec. 6.19-11. | Other Remedies Not Affected. |
| Sec. 6.20-1. | Relation to Other License Ordinances. |
| Sec. 6.21-1. | Transferee and Successor Liability. |
| Sec. 6.22-1. | Confidentiality. |
| Sec. 6.23-1. | Severability. |

**SEC. 6.1-1.  COMMON ADMINISTRATIVE PROVISIONS.**

(a)  These common administrative provisions shall apply to Article 6, 7, 9, 10, 10B, 11, 12, 12-A, and 12-B of this Code and to Chapter 105





of the San Francisco Administrative Code, unless the specific language of either Code otherwise requires. Any provision of this Article 6 that references or applies to Article 10 shall be deemed to reference or apply to Article 10B. Any provision of this Article 6 that references or applies to a tax shall be deemed to also reference or apply to a fee administered pursuant to this Article.

(b)  Unless expressly provided otherwise, all statutory references in this Article and the Articles set forth in subsection (a) shall refer to such statutes as amended from time to time and shall include successor provisions.

(c)  For purposes of this Article, a domestic partnership established pursuant to Chapter 62 of the San Francisco Administrative Code shall be treated the same as a married couple. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 71-02, File No. 020193, App. 5/10/2002; Ord. 26-04, File No. 031990, App. 2/19/2004; Amended by Proposition O, § 5, 11/4/2008; Ord. 173-09, File No. 090724, App. 7/21/2009; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.2-1.  COMMON DEFINITIONS.

Except where the context otherwise requires, the terms used in this Article shall have the meaning given to them herein. Definitions used in other City codes shall not govern the interpretation of this Article. (Added by Ord. 18-98, App. 1/16/98)

## SEC. 6.2-2.  AGENT.

The term "agent" means an agent as that term is defined in Title 9, Chapter 1, Article 1 of the Civil Code of the State of California (Sections 2295 et seq.), and includes, without limitation, an actual agent, ostensible agent, general agent, or special agent. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-2 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-15 by Ord. 26-04)

## SEC. 6.2-3.  ARTICLE.

The term "Article" followed by a number means such Article of the Business and Tax Regulations Code of the City and County of San Francisco Municipal Code. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-3 added by Ord. 18-98, App. 1/16/98; renumber Sec. 6.2-20.5 by Ord. 26-04)

## SEC. 6.2-4.  ASSOCIATION.

The term "association" includes a partnership, limited partnership, limited liability company, limited liability partnership and any other form of unincorporated business or enterprise (except a sole proprietorship). (Add by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-4 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-17 by Ord. 26-04)

## SEC. 6.2-5.  BUSINESS.

The term "business" means any activity, enterprise, profession, trade or undertaking of any nature conducted or engaged in, or ordinarily conducted or engaged in, with the object of gain, benefit or advantage, whether direct or indirect, to the taxpayer or to another or others. The term "business" includes nonprofit entities, trade associations and subsidiary or independent entities which conduct operations for the benefit of others and at no profit to themselves. The term "business" also includes an organization having a formally recognized exemption from income taxation pursuant to Section 501(c), 501(d) or 401(a) of the Internal Revenue Code of 1986, as amended, as qualified by Sections 502, 503, 504 and 508 of the Internal Revenue Code of 1986, as amended. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-5 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-19 by Ord. 26-04)

## SEC. 6.2-6.  CITY; CITY AND COUNTY.

The terms "City" and "City and County" shall mean the City and County of San Francisco. (Formerly Sec. 6.2-7; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-6 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-7 by Ord. 26-04)

## SEC. 6.2-7. CONTROLLER.

The term "Controller" means the Controller of the City and County of San Francisco, or his or her designee. (Formerly Sec. 6.2-6; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-7 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-6 by Ord. 26-04)

## SEC. 6.2-8. DAY.

The term "day" means a calendar day. If the last day for performance of any act provided for or required by the Business and Tax Regulations Code is a holiday, as defined in Chapter 7 (commencing with Section 6700) of Division 7 of Title 1 of the California Government Code, or a Saturday or Sunday, the act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed. For purposes of this Section, the Friday in November immediately after Thanksgiving Day is considered a holiday. (Formerly Sec. 6.2-9; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010) (Former Sec. 6.2-8 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-11 by Ord. 26-04)

## SEC. 6.2-9. EMPLOYEE.

The term "employee" means any individual in the service of an employer, under an appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes but is not limited to, all of the enumerated categories in subsections (a) through (f) of California Labor Code Section 3351, regardless of whether Workers' Compensation Benefits, pursuant to Division 4, Part 1, Section 3200 et seq. of the California Labor Code are required to be paid. Nothing herein shall be deemed to incorporate any provisions from said Labor Code relating to scope of employment. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010) (Former Sec. 6.2-9 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-8 by Ord. 26-04)

## SEC. 6.2-10. INDIVIDUAL.

The term "individual" means a natural person, a human being, as distinguished from an artificial person such as a corporation or political subdivision. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-10 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-13 by Ord. 26-04)

## SEC. 6.2-11. MONTH.

The term "month" means a calendar month. (Formerly Sec. 6.2.8; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004) (Former Sec. 6.2-11 added by Ord. 18-98, App. 1/16/98; renumbered Sec. 6.2-21 by Ord. 26-04)

## SEC. 6.2-12. NEXUS: "ENGAGING IN BUSINESS WITHIN THE CITY."

(a) The taxes imposed by Article 12-A (Payroll Expense Tax Ordinance) and the registration fee imposed by Article 12 (Business Registration Ordinance) shall apply to any person engaging in business within the City unless exempted therefrom under such Articles. A person is "engaging in business within the City," within the meaning of this Article, if that person meets one or more of the following conditions:

(1) The person maintains a fixed place of business within the City; or

(2) An employee, representative or agent of the person maintains a fixed place of business within the City for the benefit or partial benefit of the person; or

(3) The person or one or more of the person's employees, representatives or agents owns, rents, leases, or hires real or personal property within the City for business purposes for the benefit or partial benefit of the person; or

(4) The person or one or more of the person's employees, representatives or agents regularly maintains a stock of tangible personal property within the City, for sale in the ordinary course of the person's business; or

(5) The person or one or more of the person's employees, representatives or agents em-





ploys or loans capital on property within the City for the benefit or partial benefit of the person; or

(6)  The person or one or more of the person's employees, representatives or agents solicits business within the City for all or part of any seven days during a tax year; or

(7)  The person or one or more of the person's employees, representatives or agents performs work or renders services within the City for all or part of any seven days during a tax year; or

(8)  The person or one or more of the person's employees, representatives or agents utilizes the streets within the City in connection with the operation of motor vehicles for business purposes for all or part of any seven days during a tax year; or

(9)  The person or one or more of the person's employees, representatives or agents exercises corporate or franchise powers within the City for the benefit or partial benefit of the person; or

(10) The person or one or more of the person's employees, representatives or agents liquidates a business when the liquidators thereof hold themselves out to the public as conducting such business. (Formerly Sec. 854; added by Ord. 63-01, File No. 010274, App. 4/25/2001; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-13.  OPERATOR.

The term "operator" means:

(a)  Any person conducting or controlling a business subject to the tax on transient occupancy of hotel rooms;

(b)  Any person conducting or controlling a business subject to the tax on occupancy of parking space in parking stations in the City, including, but not limited to, the owner or proprietor of such premises, lessee, sublessee, mortgagee in possession, licensee or any other person otherwise conducting or controlling such business;

(c)  Any person conducting or controlling a business subject to the stadium operator occupancy tax in the City;

(d)  Any service supplier required to collect the utility users tax under Article 10; or

(e)  Any service supplier required to collect the access line tax under Article 10B. (Formerly Sec. 6.2-10; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.2-14.  PAYROLL EXPENSE TAX ORDINANCE; PAYROLL EXPENSE TAX.

"Payroll Expense Tax Ordinance" means Article 12-A; "Payroll Expense Tax" means the tax imposed thereunder. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-15.  PERSON.

The term "person" means any individual, firm, company, partnership, limited liability partnership, joint venture, association, proprietorship, social club, fraternal organization, joint stock company, domestic or foreign corporation, limited liability company, estate, trust, business trust, receiver, trustee, trustee in bankruptcy, administrator, executor, assignee, syndicate, or any other group or combination acting as a unit, whether mutual, cooperative, fraternal, non-profit or otherwise. (Formerly Sec. 6.2-2; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-16.  REPRESENTATIVE.

The term "representative" means a representative as that term is used in United States Public Law 86-272, Section 381 of Title 15 of the United States Code, except that such term shall include an independent contractor notwithstanding Section 381(d)(2) of Title 15 of the United States Code. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-17.  RETURN.

The term "return" means any written statement required to be filed pursuant to Articles 6, 7, 9, 10, 10B, 11, 12 or 12-A. (Formerly Sec. 6.2-4; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.2-18.  SUCCESSOR.

The term "successor" means any person who, directly or indirectly purchases or succeeds to the business or portion thereof, or the whole or any part of the stock of goods, wares, merchandise, fixtures or other assets, or any interest therein of a taxpayer quitting, selling out, exchanging or otherwise disposing of his or her business. Any person obligated to fulfill the terms of a contract shall be deemed a successor to any contractor defaulting in the performance of any contract as to which such person is a surety or guarantor. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.2-19.  TAX COLLECTOR.

The term "Tax Collector" means the Tax Collector of the City and County of San Francisco, or his or her designee. (Formerly Sec. 6.2-5; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-20.  TAX YEAR.

The term "tax year" means the year commencing on January 1st of each calendar year ending on December 31st of the same calendar year. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-20.5.  TAXPAYER.

The term "taxpayer" means a person required under the Business and Tax Regulations Code to file a return or pay or remit a tax. (Formerly Sec. 6.2-3; added by Ord. 18-98, App. 1/16/98; renumbered by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.2-21.  THIRD-PARTY TAXES.

The term "third-party taxes" means the transient hotel occupancy tax (Article 7), the parking space occupancy tax (Article 9), the utility users tax (Article 10) and the access line tax (Article 10B). (Formerly Sec. 6.2-11; added by Ord. 18-98, App. 1/16/98; renumbered and amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.3-1.  DUTIES OF THE TAX COLLECTOR.

The Tax Collector shall collect and receive the taxes imposed by the Business and Tax Regulations Code. The Tax Collector shall keep an accurate and separate account of all tax payments received by the Tax Collector, showing the name and address of the taxpayer and the date of the payments. The Tax Collector shall transmit all monies collected pursuant to the Business and Tax Regulations Code to the Treasurer for deposit to the general fund, unless otherwise provided by law. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.4-1.  RECORDS; INVESTIGATION; SUBPOENAS.

(a)  Every taxpayer shall keep and preserve business records as may be necessary to determine the amount of tax for which the person may be liable, including all local, state and federal tax returns of any kind, for a period of 5 years from the date the tax is due or paid, whichever is later.

(b)  Upon request of the Tax Collector, a taxpayer shall produce such business records at the Tax Collector's Office during normal business hours for inspection, examination, and copying. Refusal to allow full inspection, examination, or copying of such records shall subject the taxpayer to all penalties authorized by law, including but not limited to the penalties set forth in Section 6.17-3. As an alternative to production at the Tax Collector's Office, the Tax Collector may agree to inspect, examine, and copy the requested books, papers, and records at the taxpayer's place of business or some other mutually acceptable location, and may require the taxpayer to reimburse the City for the Tax Collector's ordinary and reasonable expenses incurred in the inspection, examination, and copying of such books, papers, and records, including food, lodging, transportation and other related items, as appropriate.

(c)  The Tax Collector may order any person or persons, whether taxpayers, alleged taxpayers, witnesses, or custodians of records, to pro-





duce all books, papers, and records which the Tax Collector believes may have relevance to enforcing compliance with the provisions of the Business and Tax Regulations Code for inspection, examination, and copying at the Tax Collector's Office during normal business hours. As an alternative to production at the Tax Collector's Office, the Tax Collector may agree to inspect, examine, and copy the requested books, papers, and records at the person's place of business or some other mutually acceptable location, and may require the person to reimburse the City for the Tax Collector's ordinary and reasonable expenses incurred in the inspection, examination, and copying of such books, papers, and records, including food, lodging, transportation, and other related items, as appropriate.

(d) The Tax Collector may order the attendance before the Tax Collector of any person or persons, whether taxpayers, alleged taxpayers, witnesses, or custodians of records, whom the Tax Collector believes may have information relevant to enforcing compliance with the provisions of the Business and Tax Regulations Code.

(e) If the taxpayer does not maintain business records that are adequate to determine liability under the Business and Tax Regulations Code, or following a request by the Tax Collector, fails to produce such business records in a timely fashion, the Tax Collector may determine the taxpayer's liability based upon any information in the Tax Collector's possession, or that may come into the Tax Collector's possession. Such determination shall be prima facie evidence of the taxpayer's liability in any subsequent administrative or judicial proceeding.

(f) The Tax Collector may issue and serve subpoenas to carry out these provisions. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 90-99, File No. 990300, App. 4/30/99; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.5-1.   REQUEST FOR FINANCIAL INFORMATION.

(a) In addition to a subpoena issued pursuant to Section 6.4-1, the Tax Collector may, at his or her discretion, send any person, whether as taxpayer, alleged taxpayer, witness, or custodian of records, a written request for financial information relevant to verifying, determining or redetermining any person's tax liability or tax-exempt status. "Financial information" shall include, but not be limited to, bank records, journals, ledgers and local, State and federal tax returns, and shall include information regarding subsidiary, related, affiliated, controlled or controlling persons in possession of information relevant to the Tax Collector's inquiry. The request shall be mailed to the person's last known address as indicated in the Tax Collector's records.

(b) Each person to whom a written request for financial information has been sent pursuant to Subsection (a) of this Section shall complete and return the form, with the information requested, to the Tax Collector within 30 days of the date of the mailing of the written request, or by such other reasonable deadline as the Tax Collector may set forth in the written request. Said person shall provide such financial information that the Tax Collector, in writing, has requested. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 6.5-2.   PENALTIES FOR FAILURE TO RESPOND TO REQUEST FOR FINANCIAL INFORMATION.

Any persons, including taxpayers, alleged taxpayers, witnesses, or custodians of records, who fail to respond to the Tax Collector's written request for financial information shall be subject to any penalties and sanctions provided by law, including but not limited to the penalties and sanctions provided in Section 6.17-3. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.6-1.   CERTIFICATE OF AUTHORITY FOR THIRD-PARTY TAXES.

(a) These additional provisions shall apply to operators under the transient hotel occupancy tax (Article 7), the parking space occupancy tax (Article 9), the utility users tax (Article 10) and the access line tax (Article 10B).

(b)   Every operator who is required to collect or remit any third-party tax must possess a valid certificate of authority issued by the Tax Collector.

(c)   The application for a certificate of authority shall be on a form provided by the Tax Collector and shall set forth the name under which the person transacts or intends to transact business, the location of each of the person's places of business in the City, and such other information as the Tax Collector may require. The application shall be signed by the owner if a sole proprietor, by a member or partner, in the case of an association, or by an executive officer or some person specifically authorized by the corporation to sign the application in the case of a corporation. No person shall operate a business for which a certificate of authority is required under subsection (b) unless and until the Tax Collector has issued that person a certificate of authority. The holder of a certificate of authority must promptly notify the Tax Collector of any changes to the information stated in the certificate of authority application.

(d)   Except as provided in subsections (f), (g), (h), and (j) below, the Tax Collector, within 45 days after the application is complete, shall issue a separate certificate of authority to the operator to collect third-party taxes from customers for each location at which the operator is required to collect such taxes. The certificate will expire on a date certain set by the Tax Collector. The operator must apply for renewal of the certificate, before it expires, if the operator intends to continue to engage in business in the City. Except as provided in subsections (f), (g), (h) and (j), the Tax Collector may issue successive, one-year renewals of an operator's certificate. Each certificate shall state the location of the place of business to which it applies and shall be prominently displayed at such location in plain view of all customers. Certificates of authority may not be assigned or transferred. The operator shall immediately surrender to the Tax Collector the certificate for that location upon the operator's cessation of business at that location or upon the sale or transfer of the business.

(e)   The holder of a certificate of authority to collect parking taxes under Article 9 shall remain presumptively liable for the collection of parking taxes at the location named in the certificate, and for the reporting and remittance of such taxes to the Tax Collector, unless and until the holder of the certificate both (i) notifies the Tax Collector in writing that the holder has ceased to conduct a parking business at such location, and (ii) surrenders the certificate for that location to the Tax Collector.

(f)   The Tax Collector may refuse to issue the certificate where, within the 45-day period referred to in subsection (d) above, the Tax Collector determines that the operator, or any signatory to the application, or any person holding a 10 percent or greater legal or beneficial interest in said operator ("10% owner") is not in compliance with any provision of Articles 6, 7, 9, 10, 10B, 12, 12-A, or 22, including but not limited to any failure to timely collect, report, pay, or remit any tax imposed by this Code, or where any such person is not in compliance with any provision of Sections 1216 through 1223 inclusive of Article 17 of the Police Code.

Solely for purposes of determining under this Section whether any such operator, signatory or 10% owner is not in compliance with such Articles, the Tax Collector may disregard any corporation or association owned or controlled, directly or indirectly, by any such operator, signatory or 10% owner and consider such corporation or association's operations and liabilities as conducted by or as owned by any one or more of such corporation or association's officers, directors, partners, members or owners. For purposes of this Section, (i) the term "owned" means ownership of 50 percent or more of the outstanding ownership interests in such corporation or association, and (ii) the term "controlled" includes any kind of control, whether direct or indirect, whether legally enforceable, and however exercisable or exercised over such corporation or association. A presumption of control arises if the operator, signatory or 10% owner is (or was) an officer, director, partner or member of such corporation or association.



(g)  Further, if any person subject to this Section violates any provision of Articles 6, 7, 9, 10, 10B, 12, 12-A, or 22, or a rule or regulation promulgated by the Tax Collector, including but not limited to any failure to timely collect, report, pay, or remit any tax imposed by this Code, failure to maintain accurate registration information, failure to sign any return or pay any tax when due, or failure to timely respond to any request for information, order for records or subpoena, or for any person subject to Article 9 for failure to comply with the requirements of Article 22 of the Business and Tax Regulations Code or any provision of Sections 1216 through 1223 inclusive of Article 17 of the Police Code, the Tax Collector may, after serving the person with written notice of his or her determination in the manner provided in Section 6.11-2 and an opportunity to be heard pursuant to the notice and review provisions of Section 6.13-1 et seq., revoke or suspend that person's certificate of authority. The Tax Collector may refuse to issue that person a new certificate of authority or to withdraw the suspension of an existing certificate until the person, signatory to the application for the certificate revoked or suspended, signatory to the application for a new certificate or withdrawal of the suspension, and all 10% owners have complied with the provisions of Articles 6, 7, 9, 10, 10B, 12, 12-A, and 22 and corrected the original violation to the satisfaction of the Tax Collector.

(h)  Before any certificate of authority shall be issued to any applicant to engage in the business of renting parking space in a parking station in this City, such applicant shall file with the Tax Collector a bond naming the City as exclusive beneficiary at all times the applicant engages in such business. Such bond shall be in the following amounts:

| Annual gross receipts for parking station | Bond amount |
|---|---|
| Less than $100,000.00 | $20,000 |
| $100,000.00 to $250,000.00 | $50,000 |
| $250,000.01 to $500,000.00 | $100,000 |
| $500,000.01 to $750,000.00 | $150,000 |
| $750,000.01 to $1,000,000.00 | $200,000 |
| $1,000,000.01 to $2,000,000.00 | $400,000 |
| $2,000,000.01 to $4,000,000.00 | $800,000 |

This bond requirement does not apply to an applicant that is a governmental entity.

The Tax Collector may, in his or her discretion, independently establish the annual gross receipts for a parking station and set the bond amount pursuant to the schedule above, based on that determination. If, at the end of any calendar year, the gross receipts for a parking station have increased such that a larger bond amount would be required under the above schedule, the operator shall obtain a new bond in the increased amount by the following April 1. If at the end of any calendar year the gross receipts for the parking station have decreased, the operator may apply to the Tax Collector for a reduction of the bond amount.

(i)  Such bond shall be executed by the applicant as principal, and by a corporation or association which is licensed by the Insurance Commissioner of this State to transact the business of fidelity and surety insurance, as surety. The applicant shall keep the bond in full force and effect for the duration of the certificate of authority and all renewals thereof issued to such applicant. If the bond provides that the term thereof shall be continuous until cancelled, the applicant shall provide the Tax Collector with certification from the surety of the renewal or continuation of the bond at the same time that the applicant files its annual renewal of its Business Registration Certificate, and (i) when applying for renewal of an existing certificate of authority, (ii) when requesting the withdrawal of a suspension of an existing certificate of authority, or (iii) upon written request of the Tax Collector.

(j) The bond shall contain conditions that require the applicant to comply fully with all the provisions of the Business and Tax Regulations Code concerning the collection of third-party taxes from occupants of parking stations and the remittance of such taxes to the Tax Collector. The bond shall be payable to the City in the amount of all unpaid parking taxes on amounts of taxable rents collected by the applicant, together with all administrative collection costs, interest, penalties, and other costs and charges applicable thereto; provided, however, that the aggregate liability of the surety for any and all claims which may arise under such bond shall in no event exceed the face amount of such bond regardless of the amount due and owing to the City. The City may bring an action upon the bond for the recovery of any unpaid parking taxes, administrative collection costs, interest, penalties and other costs and charges at any time prior to the expiration of the period of limitations applicable to the collection of such unpaid taxes by the Tax Collector.

(k) When there is a deficiency determination or jeopardy determination against an operator for third-party taxes, the Tax Collector shall issue the deficiency determination or jeopardy determination against the operator and the operator's surety. The liability of the surety shall not exceed the face value of the bond(s). The Tax Collector shall provide notice of such deficiency determination or jeopardy determination to the operator and the bond surety. An operator's petition for redetermination shall be construed by the Tax Collector as a petition on behalf of both the operator and the surety. The surety may request a hearing before the Tax Collector pursuant to Section 6.13-2. The taxpayer and surety hearing may be consolidated at the discretion of the Tax Collector. The surety may file a separate petition for redetermination. Upon the finality of such determination or decision on petition for redetermination, the operator and the surety shall be liable to the Tax Collector in the amount of the determination or decision on petition for redetermination. The surety's liability shall not exceed the face value of the bond(s). The surety shall be subject to the same requirements as the operator with regard to payment of the tax liability and exhaustion of administrative remedies prior to seeking judicial relief. The Tax Collector may exercise all remedies against the surety that are available to the Tax Collector as to an operator or any other person determined to be liable for a tax.

(l) Before any certificate of authority shall be issued to any applicant to engage in the business of renting parking space in a parking station in this City, the applicant shall comply with Article 22. The applicant shall reimburse the Tax Collector's costs to inspect the parking station to confirm it complies with Article 22. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 8-01, File No. 002018, App. 1/26/2001; Ord. 61-01, File No. 002197, App. 4/20/2001; Ord. 177-01, File No. 010826, App. 8/17/2001; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.7-1. COLLECTION OF THIRD-PARTY TAXES.

(a) Every operator receiving payment of charges from a customer shall collect the amount of the third-party tax from the customer. All amounts of third-party tax so collected shall be considered to be a special fund in trust for the City. For purposes of this Section, a person who otherwise qualifies as an operator under Section 6.2-13 shall not, by reason of the fact that the person is exempt from the tax, be exempted from the other obligations of an operator, including without limitation the obligation to collect and remit to the City all third-party taxes collected from non-exempt customers. An exemption from a third-party tax is enjoyed by the customer, not by the operator responsible for collecting and remitting such taxes. The operator may not exclude from taxation charges claimed to be exempt unless the operator has records of each transaction, which demonstrate: (1) the basis for the claim of exemption, and (2) that an amount was not in fact collected from the exempt customer as a tax.

Where a customer is not the end user of a good or service subject to such tax, the customer shall be deemed an operator. The existence of



such deemed operator shall not relieve any other operator of obligations under the Business and Tax Regulations Code, including without limitation the obligation to collect and remit the tax to the City. The liability of such deemed operator and any other operator for the tax, including applicable interest and penalties accrued through the date of payment, shall be joint and several; provided, the City shall be limited to only one satisfaction thereof.

(b)  Third-party taxes shall be collected, to the extent practicable, at the same time as and along with the collection of charges made in accordance with the regular billing practice of the operator. If the amount paid by a customer is less than the full amount of the charges and tax which has accrued for the billing period, a proportionate share of both the charges and the tax shall be deemed to have been paid.

(c)  Where a customer receives more than one billing, one or more being for different periods than another, the duty to collect shall arise separately for each billing period. In all cases of transactions upon credit or deferred payment, the payment of tax to the Tax Collector may be deferred in accordance therewith, and the operator shall be liable therefor at the time and to the extent that such credits are paid or deferred payments are made in accordance with the rate of tax owing on the amount thereof.

(d)  Any third-party tax imposed upon customers shall be deemed a debt owed by the customer to the City. Any such tax required to be collected from customers which has not been remitted to the Tax Collector shall be deemed a debt owed to the City by the person required to collect and remit such tax to the City.

(e)  The Tax Collector shall have the power to adopt rules and regulations prescribing methods and schedules for the collection and payment of third-party taxes and such methods and schedules shall provide that the fractional part of 1 cent shall be disregarded unless it amounts to one-half of 1 cent or more, in which case the amount (determined without regard to the fractional part of 1 cent) shall be increased by 1 cent.

(f)  The Tax Collector may, in the exercise of his or her discretion, require an operator under this Section to maintain trust accounts for deposit of third-party taxes collected from customers. The Tax Collector may direct an operator regarding how such trust accounts shall be created and maintained, and may prescribe the terms of such accounts. An operator's refusal to comply with the Tax Collector's direction regarding a trust account shall be grounds for revocation of a certificate of authority and/or of any license or permit to do business in San Francisco.

(g)  When third-party taxes are not paid when due, or when there is any deficiency determination or jeopardy determination against an operator for third-party taxes, the Tax Collector may collect said liabilities, including interest and penalties accrued through the date of payment, from any person or persons the Tax Collector determines was responsible for performing the acts of collecting, accounting for, and remitting third-party taxes to the City and failed to do so, or who had the power to control the financial decision-making process by which the operator allocates funds to creditors in preference to the operator's obligation to remit third-party taxes to the City. When the person or persons responsible for the acts of collecting, accounting for, and remitting third-party taxes to the City cannot otherwise be determined, the Tax Collector may presume the President, Chief Executive Officer, and/or Chief Financial Officer of a corporation or any managing partner or member of an association to be a person responsible for performing such acts. The Tax Collector is authorized to name all such persons potentially responsible for performing such acts in a notice of deficiency determination or jeopardy determination and, in such case, the Tax Collector shall identify the person or persons responsible for such acts in the final decision. The final decision shall be based on the information available to the Tax Collector or based on the above presumption. The liability of such persons shall be joint and several with each other and with the operator, and shall be established in the manner provided for under this Article for other determinations. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)



## SEC. 6.7-2.   REPORTING AND REMITTING THIRD-PARTY TAXES AND STADIUM OPERATOR ADMISSION TAX.

(a)   All amounts of utility users taxes under Article 10 are due and payable to the Tax Collector for each month on or before the last day of the month immediately following each respective monthly period. All amounts of stadium operator admission taxes under Article 11 are due and payable to the Tax Collector within 5 days after the event, subject to the provisions of Section 804 of Article 11. All amounts of third-party taxes other than the utility users taxes are due and payable to the Tax Collector for each calendar quarter on or before the last day of the month immediately following each respective quarterly period.

(b)   On or before the last day of the month immediately following each respective period, every operator except the stadium operator shall file a return for the preceding period with the Tax Collector, on such forms as the Tax Collector may prescribe. Stadium Operators shall file a return within the time periods set forth in Section 804 of Article 11. Filing a return that the Tax Collector determines to be incomplete in any material respect may be deemed failure to file a return in violation of this Section.

(c)   Returns shall show the amount of tax required to be collected for the subject period, separately, for each location at which the operator conducts business, and such other information as the Tax Collector requires. The Tax Collector may require returns to show the total number of transactions upon which tax was required to be collected and the amount of tax due on each such transaction, and for each location at which the operator conducts business. The Tax Collector may inspect, examine, and copy records for each such location separately, and may issue deficiency and jeopardy determinations pursuant to this Article for each such location separately, or in combination with one or more other locations at which the operator conducts business. The operator shall file the return, together with remittance of the amount of tax due, with the Tax Collector, at the Tax Collector's Office, on or before the date provided in this Section. Returns and remittances are due immediately upon cessation of business for any reason.

(d)   When a return is filed without full remittance of the amount reported to be due, the amount remaining unpaid, together with any nonpayment penalties, is immediately due and payable and may be collected by the Tax Collector forthwith. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 91-99, File No. 990301, App. 4/30/99; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.8-1.   CITY, PUBLIC ENTITY AND CONSTITUTIONAL EXEMPTIONS.

Nothing in Articles 6, 7, 9, 10, 10B, 11, 12, or 12-A shall be construed as imposing a tax upon:

(1)   The City;

(2)   The State of California, or any county, municipal corporation, district or other political subdivision of the State, except where any constitutional or statutory immunity from taxation is waived or is not applicable;

(3)   The United States of America, or any of its agencies or subdivisions, except where any constitutional or statutory immunity from taxation is waived or is not applicable; or

(4)   Any person exempted from the particular tax by the Constitution or statutes of the United States or the Constitution or statutes of the State of California.

The foregoing exemption from taxation does not relieve an exempt party from its duty to collect, report, and remit third-party taxes. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.9-1.   DETERMINATIONS, RETURNS AND PAYMENTS; DUE DATE OF TAXES.

Except for jeopardy determinations under Section 6.12-2, and subject to prepayments required under Section 6.9-2, all amounts of taxes and fees imposed by Articles 6, 7, 9, 10, 10B, 11,





**Common Administrative Provisions**

and 12-A are due and payable, and shall be delinquent if not paid to the Tax Collector on or before the following dates:

(a) For the transient hotel occupancy tax (Article 7) and the parking space occupancy tax (Article 9), for each calendar quarter, on or before the last day of the month following each respective quarterly period;

(b) For the payroll expense tax (Article 12-A), on or before the last day of February of each year;

(c) For the utility users taxes (Article 10) and the access line tax (Article 10B), for each monthly period, on or before the last day of the following month; and

(d) For the stadium operator admission tax (Article 11), within 5 days after the event, subject to the provisions of Section 804 of Article 11. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.9-2. DETERMINATIONS, RETURNS AND PAYMENTS; RETURNS.

(a) Except as provided in subsection (b) below, on or before the due date, or in the event of a cessation of business within 15 days of such cessation, each taxpayer shall file a return for the subject period on a form provided by the Tax Collector, regardless of whether there is a tax liability owing. A person subject to any tax or required to remit any third-party tax who has not received a return form or forms from the Tax Collector is responsible for obtaining such form(s) and filing a return or returns on or before the due date, or upon the cessation of business. Returns shall show the amount of tax and any third-party tax paid or otherwise due for the related period and such other information as the Tax Collector may require. Each person subject to any tax or required to remit any third-party tax and required to file the return shall transmit the return, together with the remittance of the amount of tax or third-party tax due, to the Tax Collector at the Tax Collector's Office on or before the due date specified in Section 6.9-1.

(b) With respect to each tax year, the Tax Collector may exempt from the annual tax return filing requirement those taxpayers whose liability under the Payroll Expense Tax Ordinance, computed without regard to the small business exemption set forth in Section 905-A of Article 12-A, is less than the Minimum Filing Amount for such tax year. For purposes of this Section, the Minimum Filing Amount shall be an amount of tax liability, computed without regard to such small business exemption, between zero and $2,250. The Tax Collector shall specify the Minimum Filing Amount prior to the beginning of each tax year. If the Tax Collector fails to specify a Minimum Filing Amount prior to the start of a new tax year, the Minimum Filing Amount for such tax year shall be the Minimum Filing Amount for the preceding tax year. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 9-01, File No. 002019, App. 1/26/2001; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.9-3. DETERMINATIONS, RETURNS AND PAYMENTS; PREPAYMENTS.

(a) **Prepayments and Remittances.** Notwithstanding the due dates otherwise provided in Section 6.9-1, taxpayers shall make prepayments and remittances of taxes and third-party taxes to the Tax Collector as follows:

(1) Hotel and Parking Taxes. The Hotel Tax (Article 7) and the Parking Tax (Article 9) shall be remitted monthly. Such monthly remittances shall be due and payable to the Tax Collector on or before the last day of the month immediately following the month for which such remittance is due. Taxes paid in the first 2 monthly remittances of any quarterly period shall be a credit against the total liability for such third-party taxes for the quarterly period. The third monthly remittance of any quarterly period shall be in an amount equal to the total tax liability for the quarterly period, less the amount of any monthly remittance for such quarter actually paid.

(2) Payroll Expense Tax. The Payroll Expense Tax (Article 12-A) shall be paid in biannual or quarterly installments as follows:

(A) **Small Firm Prepayments.** Every person liable for payment of a total Payroll Expense

Tax in excess of $3,750 but less than or equal to $50,000 for any tax year shall pay such tax for the following tax year in 2 installments. The first installment shall be due and payable, and shall be delinquent if not paid on or before, August 1st. The first installment shall be a credit against the person's total Payroll Expense Tax for the tax year in which the first installment is due. The first installment shall be in an amount equal to one-half of the person's estimated Payroll Expense Tax for such tax year. The estimated liability shall be computed by using 52 percent of the person's taxable payroll expense (as defined in Section 902.1 of Article 12-A) for the preceding tax year, and the rate of tax applicable to the tax year in which the first installment is due. The second installment shall be reported and paid on or before the last day of February of the following year. The second installment shall be in an amount equal to the person's total Payroll Expense Tax for the subject tax year, less the amount of the first installment and other tax prepayments for such tax year, if any, actually paid.

(B) **Large Firm Prepayments.** Every person liable for payment of a total Payroll Expense Tax in excess of $50,000 for any tax year shall pay such tax for the following tax year in 4 quarterly installments. The first, second and third quarterly installments shall be due and payable, and shall be delinquent if not paid on or before, May 1st, August 1st and November 1st, respectively. The first, second and third quarterly installments shall be a credit against the person's total Payroll Expense Tax for the tax year in which such first, second and third quarterly installments are due. Such quarterly installments each shall be in an amount equal to one-quarter of the person's estimated Payroll Expense Tax liability for such tax year. The estimated liability for such tax year shall be computed by using 104 percent of the person's taxable payroll expense (as defined in Section 902.1 of Article 12-A) for the preceding tax year, and the rate of tax applicable to the tax year in which the first, second and third quarterly installments are due. The fourth installment shall be reported and paid on or before the last day of February of the following year. The fourth quarterly installment shall be in an amount equal to the person's total Payroll Expense Tax liability for the subject tax year, less the amount of the first, second and third quarterly installments and other tax prepayments, if any, actually paid.

(b) **Tax Prepayment Penalties.** Every person who fails to pay any tax prepayment required under this Section before the relevant delinquency date shall pay a penalty in the amount of 5 percent of the amount of the delinquent tax prepayment per month, or fraction thereof, up to 20 percent in the aggregate, and shall also pay interest on the amount of the delinquent tax prepayment and penalties from the date of delinquency at the rate of 1 percent per month, or fraction thereof, for each month the prepayment is delinquent, until paid.

(c) **Hotel and Parking Taxes.** An operator subject to the Hotel Tax (Article 7) or the Parking Tax (Article 9) shall make monthly remittances in the amount of the actual tax owed.

(d) **Forms and Adjustments.** Tax prepayments required under this Section shall be accompanied by a tax prepayment form prepared by the Tax Collector, but failure of the Tax Collector to furnish the taxpayer with a tax prepayment form shall not relieve the taxpayer from any tax prepayment obligation. The Tax Collector may, in writing, adjust the amount of a tax prepayment if the taxpayer can establish in writing by clear and convincing evidence that the first installment of semi-annual tax prepayments, or first, second or third monthly installment of a quarterly tax prepayment, will amount to more than one-half or one-quarter, respectively, of the person's total tax liability for the tax year in which the installment is due. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.9-4. DETERMINATIONS, RETURNS AND PAYMENTS; EXTENSION OF TIME FOR FILING A RETURN AND PAYING TAX.

(a) For good cause, the Tax Collector, in his or her discretion, may extend, for a period not to exceed 60 days, the time for filing any return



pursuant to this Article or regulations prescribed by the Tax Collector. For prepayments of taxes or for taxes required to be deposited monthly, the Tax Collector may only extend the time for filing a return for a period not to exceed 30 days. As a condition of such extension, the person seeking the extension shall make a payment of not less than 90 percent of such person's estimated liability for such period. For purposes of determining the amount of the conditional payment, the Tax Collector may independently establish the taxpayer's estimated tax liability.

(b)    Failure to make the required estimated prepayment will result in the taxpayer being subject to penalties and interest under Section 6.17-1.

(c)    Notwithstanding subsection (a) of this Section, the Tax Collector may extend any time for filing any return or payment of tax or excuse penalties for any late filing or late payment by a period not to exceed 60 days if billing or other administrative duties of the Tax Collector cannot be performed in a timely manner. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.9-5.    DETERMINATIONS, RETURNS AND PAYMENTS; CREDITS AND EXEMPTIONS.

The credits and exemptions set forth in Articles 6, 7, 9, 10, 10B, 11, 12, 12-A, and 12-C are provided on the assumption that the City has the power to offer such credits and exemptions. If a credit or exemption is invalidated by a court of competent jurisdiction, the taxpayer must pay any additional amount that the taxpayer would have owed but for such invalid credit or exemption. Amounts owed as a result of the invalidation of a credit or exemption that are paid within 3 years after the decision of the court becomes final shall not be subject to interest or penalties. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.9-6.    FILING AND PAYING BY MAIL.

(a)    **Filing by Mail.** Except as otherwise provided in this Section, taxpayers may file any return or other document with or make any payment to, including a prepayment to, the Tax Collector by United States mail.

(b)    **Date of Postmark.** The date of postmark shall be deemed the date of filing for any return or other document, or any payment, delivered to the Tax Collector by United States mail if:

(1)    The postmark is made by the United States Postal Service;

(2)    The postmark date falls within the prescribed period, or on or before the prescribed date, including any extension, for filing the return or other document, or for making the payment;

(3)    The return or other document, or the payment, was, within that time, deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid and properly addressed to the Tax Collector; and

(4)    The Tax Collector receives the return or other document, or the payment, as a result of the timely mailing.

The Tax Collector may provide by regulation for application of this rule to postmarks not made by the United States Postal Service.

(c)    **Registered and Certified Mailing.** The registration of any return or other document, or payment, delivered to the Tax Collector by registered mail shall be prima facie evidence that the return or other document, or payment, was filed with the Tax Collector, and the date of registration shall be deemed the postmark date. The Tax Collector may provide by regulation for the application of this subsection to returns or other documents, or payments, delivered to the Tax Collector by certified mail.

(d)    **Exceptions.** This Section shall not apply to:

(1)    The filing of a document in, or the making of a payment to, any court;

(2) Currency or other medium of payment unless actually received and accounted for; or

(3) Returns or other documents, or payments, which are required under any provision of the Business and Tax Regulations Code or of the Tax Collector's regulations to be delivered or filed by any method other than by mailing.

(e) **Private Delivery Services.** References in this Section to the United States mail and a postmark of the United States Postal Service shall include any designated delivery service and any date recorded or marked as described herein by any designated delivery service.

(1) A "designated delivery service" means any delivery service provided by a trade or business if such service is designated by the Tax Collector for purposes of this Section. The Tax Collector may designate a delivery service only if he or she determines that such service:

(A) Is available to the general public;

(B) Is at least as timely and reliable on a regular basis as the United States mail;

(C) Records electronically to its database, kept in the regular course of its business, or marks on the cover in which any item referred to in this Section is to be delivered or filed, the date on which such item was given to such trade or business for delivery; and

(D) Meets such other criteria as the Tax Collector may prescribe.

(2) The Tax Collector may provide a rule similar to the rule of Subsection (1) with respect to any service provided by a designated delivery service which is substantially equivalent to the United States registered or certified mail. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 6.9-7.   PARTIAL PAYMENTS.

Where a taxpayer owes payments for prior years, the Tax Collector may accept partial payments. The difference between the amount paid by the taxpayer and the total amount due shall be treated as a delinquent tax and shall be subject to penalties and interest on the unpaid balance pursuant to Section 6.17-1.

Unless the taxpayer specifies otherwise, the partial payments shall be applied to the oldest year's deficiency, first to administrative collection costs, interest, penalties and other costs and charges for that year, and the balance, if any, shall be applied to the taxes due for that year. Any remaining portion of the payment shall then be applied to the next oldest year's deficiency in the same manner and order.

The taxpayer may specify that the partial payment be applied to a tax year other than the oldest, but the order of payment between administrative collection costs, interest, penalties, other costs and charges, and taxes due shall remain the same. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 99-99, File No. 990408, App. 4/30/99; Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 6.10-1.   COLLECTION OF TAX; SECURITY.

The Tax Collector, whenever he or she deems it necessary to ensure compliance with the Business and Tax Regulations Code, may require any person subject thereto to deposit with the Tax Collector such security as the Tax Collector may determine. The amount of the security shall be fixed by the Tax Collector, but shall not be greater than twice the person's estimated average liability for the period for which said person files returns, determined in such manner as the Tax Collector deems proper. The amount of the security may be increased or decreased by the Tax Collector subject to the limitations herein provided. The Tax Collector may sell the security at public auction if it becomes necessary to do so in order to recover any tax or any amount required to be collected and remitted to the City, including any interest or penalty due. Notice of the sale shall be served upon the person who deposited the security and upon the taxpayer, if different, personally or by mail; if by mail, service shall be made in the manner prescribed for service of a notice of a deficiency determination as set out in Section 6.11-2 herein, and shall be addressed to the person at said person's address as it appears in the records of the Tax Collector. Upon any sale, any surplus above the amounts



due shall be returned to the person who deposited the security. The return of a cash security shall include interest at a rate equal to the annual fiscal year interest rate earned by the City and County of San Francisco's "Pooled Interest Account" invested and managed by the Treasurer. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.10-2.  COLLECTION OF TAX FROM THIRD PARTY.

If any person is delinquent in the payment of the amount required to be paid by said person, or in the event a determination has been made against any person which remains unpaid, the Tax Collector may, not later than 3 years after the payment became delinquent, give notice thereof by mail or by personal service to any persons in the State of California having in their possession or under their control any credits or other personal property belonging to the delinquent person, or owing any debts to the delinquent person. After receiving such notice, the persons so notified shall, within 5 days of the receipt of the notice, advise the Tax Collector by sworn writing of all such credits, personal property, or debts. Further, the persons so notified shall neither transfer nor make any other disposition of the credits, other personal property, or debts in their possession or under their control at the time they receive the notice until the Tax Collector consents to a transfer or disposition or until 30 days elapse after the person has advised the Tax Collector in a sworn writing of all such credits, personal property, or debts. Unless otherwise required by law, if persons so notified transfer such assets in violation of the provisions of this Section, they shall become indebted to the Tax Collector for the value of the property transferred, or the amount owed to the City by the delinquent, whichever is less. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.10-3.  COLLECTION OF TAX; LEGAL ACTIONS.

(a)  The Tax Collector may bring an action in the courts of this State, or any other state, or of the District of Columbia, or of the United States and its territories or possessions, or any other forum where permitted by law to recover in the name of the City any amount of taxes due and payable under the Business and Tax Regulations Code and remaining unpaid, together with penalties, interest, and costs, including reasonable attorneys' fees.

In any action filed pursuant to this subdivision, the Complaint shall attach a certificate executed by the Tax Collector or his representative that contains the following information: (1) the name of the operator, taxpayer or other person determined to be liable for the tax; (2) the description of the operator's, taxpayer's or other person's business against which the tax has been assessed; (3) the location and/or address of the business; (4) the amount of the tax, penalty and interest remaining unpaid as of the last day of the month prior to the month in which the Complaint is filed; and (5) the fact that the City has complied with all provisions of the Business and Tax Regulations Code in the computation and the levy of the tax, penalty or interest.

In prosecuting such actions, the Tax Collector shall be entitled to all of the provisional remedies provided by law. Any such action shall be commenced within 3 years from the date any amount of taxes became due and payable, or from the date the return is required to be filed or actually filed, whichever period expires later; except in the case of any deficiency determination pursuant to Sections 6.12-1 et seq. or 6.13-1 et seq., in which case any such action shall be commenced within 3 years after such determination became final. However, there shall be no limitation on the time in which such actions may be commenced in cases of fraud, intent to evade the Business and Tax Regulations Code, or failure to file a return.

(b)  When the amount of any tax, penalty or interest which has become due and payable remains unpaid for 15 days, the Tax Collector

may record a tax lien with the Assessor-Recorder, thereby creating a tax lien on all of the assessee's property and rights to property, including realty, personalty, or intangibles. The Tax Collector may record or file such tax lien in the office of the Recorder of any California county, with the California Secretary of State, and with any other California public entity that is otherwise authorized by law to record liens. The Tax Collector may record or file such tax liens in any other office of any other jurisdiction as permitted by law. The tax lien shall identify the Tax Collector as the lienor, and the amount of the lien. Simultaneously with the recording, a copy of the tax lien shall be mailed to or personally served upon the taxpayer or other person determined to be liable for the tax at said person's last known address based upon the information, contained in the Tax Collector records. The tax lien after recordation has the force, effect and priority of a judgment lien and continues for 10 years from the date of recording, unless sooner released or otherwise discharged. This remedy and any other remedies for collection of any taxes, together with all administrative collection costs, interest, penalties and other costs and charges, including reasonable attorneys' fees, are cumulative and may be pursued alternatively and consecutively as the Tax Collector determines. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.11-1.  DEFICIENCY DETERMINATIONS; RECOMPUTATION; INTEREST.

If the Tax Collector determines that a taxpayer has failed to pay or has underpaid a tax, that an operator has failed to collect and remit all of a third-party tax, or that a person other than the taxpayer is jointly and severally liable for any unpaid or underpaid tax, including third-party taxes, the Tax Collector may compute and determine any tax deficiency upon the basis of the return or returns or upon the basis of any other information with the Tax Collector's possession or that may come into the Tax Collector's possession. One or more deficiency determinations may be made of the amount due for one or for more than one period.

The amount of the determination, inclusive of penalties, shall bear interest at the rate of 1 percent per month, or fraction thereof, from the 15th day after the close of the month or the quarterly period for third-party taxes, or from the last day of February following the close of the annual period, for which the amount or any portion thereof should have been returned until the date of payment, or, in the case of stadium operator admission taxes, from the due dates of said tax as set forth in Article 11, Section 804.

In making a determination, the Tax Collector may offset overpayments for a period or periods together with interest on the overpayments, against underpayments for another period or periods, against penalties, and against the interest on the underpayments. The interest on underpayments and overpayments shall be computed in the manner set forth in Section 6.17-1 for underpayments and in Section 6.15-2 for overpayments. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.11-2.  DEFICIENCY DETERMINATIONS; REVOCATION AND SUSPENSION DETERMINATIONS; NOTICE AND SERVICE.

Upon making a determination pursuant to Section 6.11-1, or upon making a determination pursuant to Section 6.6-1 that a certificate shall not be issued or to suspend or revoke a registration, the Tax Collector shall give to the taxpayer or other person affected written notice of the Tax Collector's determination. Except in the case of fraud, intent to evade the Business and Tax Regulations Code or rules and regulations issued or promulgated by the Tax Collector, or failure to file a return, in which case there is no statute of limitations, every notice of a deficiency determination shall be served within 3 years after the date that a return was due for a tax for the reporting period or 3 years after the return was actually filed for that reporting period, which-





ever is later. This limitations period shall apply only to tax periods commencing after December 31, 2007. The notice requirements specified in Board of Supervisors Ordinance No. 26-04 shall continue to apply to obligations arising in prior tax periods. The Taxpayer may agree in writing to extend the period for service of a notice of a deficiency determination otherwise provided in this paragraph.

The notice of any determination under this Section may be served upon the taxpayer or other affected person personally or by mail; if by mail, service shall be (1) to the last known address that appears or is shown in the Tax Collector's records, provided there is such an address in the Tax Collector's record, or (2) to an address that the Tax Collector concludes in his discretion is the last known address of the person(s).

In case of service by mail of any notice required by this Article to be served upon the taxpayer or other person, the service is complete at the time of deposit with the United States Postal Service. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.11-3.  DETERMINATION IF NO RETURN MADE; ESTIMATE OF LIABILITY, PENALTIES AND INTEREST.

If any taxpayer or person responsible for paying a tax or remitting a third-party tax fails to make a timely return or estimated tax prepayment, the Tax Collector may make a determination based upon an estimate of the amount of the total tax liability of the taxpayer. The estimate shall be made for the period or periods in respect to which the person failed to timely make a return, failed to timely make a prepayment or failed to timely remit a tax, and may be based upon any information which is in the Tax Collector's possession or may come into his or her possession. Upon the basis of this estimate, the Tax Collector shall compute and determine the amount required to be paid to the City, adding to the sum thus computed a penalty equal to 20 percent thereof. One or more determinations



may be made for one or more than one period. Any such determination shall be prima facie evidence of the person's liability in any subsequent administrative or judicial proceeding.

In making a determination, the Tax Collector may offset overpayments for a period or periods, together with interest on the overpayments, against underpayments for another period or periods, against penalties, and against the interest on the underpayments. The interest on underpayments and overpayments shall be computed in the manner set forth in Sections 6.17-1 and 6.15-2, respectively. The amount of the determinations, including penalties, shall bear interest at the rate of one percent per month, or fraction thereof, from the date of delinquency until the date of payment.

The Tax Collector shall serve the person or persons determined to be liable for the tax as determined under Section 6.11-3 with written notice of the determination and penalty. The Tax Collector shall serve the notice upon such person(s) personally or by mail. Service by mail shall be (1) to the last known address as indicated in the Tax Collector's records, provided there is such an address in the Tax Collector's record, or (2) to an address that the Tax Collector concludes in his discretion is the last known address of the person(s). (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.11-4.  RESERVED. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Repealed by Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.12-1.  JEOPARDY DETERMINATIONS; DUTY OF TAX COLLECTOR.

If the Tax Collector believes that the collection of any tax or any amount of any third party tax required to be collected and paid to the City or of any determination will be jeopardized, in whole or in part, by delay, the Tax Collector shall serve notice upon the taxpayer or other person determined to be liable therefor of his or her determination of jeopardy and of the tax or

amount of third party tax required to be paid to the City, and demanding immediate payment thereof, together with any interest and penalty determined to be due. The Tax Collector may consider all facts and circumstances relevant to determining whether the collection of any tax will be jeopardized by delay, including but not limited to indications that the taxpayer intends or is taking action to discontinue business activities in the City, dissipate or otherwise remove assets from the City, or sell, exchange, assign or otherwise dispose of personal or business income or property. The Tax Collector also may consider whether the taxpayer is insolvent or likely to become insolvent after the taxes at issue are assessed or collected; whether the taxpayer is or has been uncooperative or unresponsive in connection with any investigation, examination, audit, deficiency determination, assessment or collection action or procedure undertaken by the Tax Collector; what taxable years are at issue; how many taxable years are at issue; and whether the taxes at issue are third-party taxes. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 177-01, File No. 010826, App. 8/17/2001; Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.12-2. JEOPARDY DETERMINATIONS; WHEN DUE AND PAYABLE; STAY OF COLLECTION; PETITION FOR REDETERMINATION; TIME OF HEARING.

(a)  A jeopardy determination of tax, interest or penalty is immediately due and payable upon the service of the notice of jeopardy determination on the taxpayer or other person determined to be liable therefor. A lien for the amount due in the notice of jeopardy determination may be recorded immediately notwithstanding the provisions of Section 6.10-1 et seq., summary judgment pursuant to Section 6.18-1 et seq. may be sought at once, and judicial proceedings for collection may be commenced at once. Prior to service of such notice, the Tax Collector may, notwithstanding the provisions of Section 6.10-1 et seq., record a lien in the amount due as set forth in the notice of jeopardy determination. Immediately upon service of such notice, the Tax

Collector may, notwithstanding the provisions of Section 6.10-1 et seq., seek summary judgment pursuant to Section 6.18 et seq., and may commence a collection action in any court having jurisdiction over the matter.

(b)  The taxpayer may stay the enforcement of a jeopardy assessment by filing with the Tax Collector: (i) a bond in an amount equal to the amount of the assessment (together with interest thereon to the date of payment) payable on the Tax Collector's certification of the amount of the assessment after the Tax Collector makes a final determination of the taxpayer's petition, or (ii) other security of a value as the Tax Collector deems necessary, but not exceeding double the amount of the assessment (together with interest thereon to the date of payment) together with a security agreement that authorizes the Tax Collector to use or dispose of the security to satisfy the amount of the assessment after the Tax Collector makes a final determination of the taxpayer's petition. The taxpayer must also agree to pay the assessment; upon notice and demand by the Tax Collector, after the Tax Collector makes a final determination of the petition. If the penal amount of the bond is less than the assessment, the Tax Collector may collect the part of the assessment that exceeds that penal amount. If the value of other security is less than twice the assessment, the Tax Collector may collect the assessment until the unpaid balance is reduced to twice the value of the security. Any stay pursuant to this subsection shall be effective only against the person on whose behalf the bond or other security is provided.

(c)  Upon filing of the bond or other security, the collection of so much of the jeopardy determination amount as is covered by the bond or other security shall be stayed pending the exercise by the taxpayer or other person determined to be liable for the tax of his or her appeal rights. The person on whose behalf the bond or other security is submitted, shall have the right to waive such stay at any time in respect of the whole or any part of the amount covered by the bond or other security, and if as a result of such waiver any part of the amount covered by the bond or other security is paid, then the bond or





other security shall, at the request of said person, be proportionately reduced. If any portion of the jeopardy determination is abated, the bond or other security shall be proportionately reduced, at the request of the person on whose behalf the bond or other security was provided.

(d)  Where collection of the whole or any amount of a jeopardy determination has been stayed under this Section, the period of limitation on any action to collect from the person on whose behalf the bond or other security has been provided shall be tolled during the period of such stay. (Added by Ord. 18-98, App. 1/16/98; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.12-3.  JEOPARDY DETERMINATIONS; SERVICE OF NOTICE.

Service of notice of a jeopardy determination shall be provided in the manner set forth in Section 6.11-2. (Added by Ord. 18-98, App. 1/16/98)

### SEC. 6.12-4.  JEOPARDY DETERMINATIONS; EFFECT OF NONPAYMENT.

If the amount specified in the jeopardy determination is not paid within 15 days after service of notice thereof upon the person against whom the determination is made, and no petition for redetermination is filed within the 15 days, the delinquency penalty provided in Section 6.17-1 shall attach to the tax or the amount of the tax required to be collected. (Added by Ord. 18-98, App. 1/16/98)

### SEC. 6.12-5.  JEOPARDY DETERMINATIONS; PETITION FOR REDETERMINATION.

Any person against whom a jeopardy determination is made may petition for the redetermination thereof pursuant to Section 6.13-1 et seq. of this Article. The taxpayer shall, however, file the petition for redetermination with the Tax Collector within 15 days after the service of notice of determination. If a petition for redetermination of a jeopardy determination is not filed within the foregoing 15-day period, the determination becomes final at the expiration of that period.

The filing of a petition for redetermination of a jeopardy determination shall not operate to stay collection. Collection may be stayed only as provided in Section 6.12-2 above.

If a timely petition for redetermination of a jeopardy determination is filed, the Tax Collector shall review the matters raised in the petition including, if requested, whether the issuance of the jeopardy determination was warranted under the circumstances. In making this determination, the Tax Collector shall grant the taxpayer or other person determined to be liable for the tax or such taxpayer or person's authorized representative an oral hearing if requested in the petition.

If, in the review process, the Tax Collector determines that the determination of jeopardy was improper or unwarranted, any collection action taken shall be withdrawn, pending the ultimate administrative determination of the amount of the deficiency due from the taxpayer or other person claimed to be liable for the tax claimed to be due in the jeopardy determination notice. Neither the validity of the determination of tax, nor the burden of proof, shall be affected by the Tax Collector's determination that the determination of jeopardy was improper or unwarranted.

The taxpayer or other person determined to be liable for the tax has the right to an oral hearing and determination by the Tax Collector upon the matters raised in the petition within 45 days from the date of the filing of the petition for redetermination, as scheduled by the Tax Collector, unless the taxpayer waives said time period. The 45-day period shall be tolled between the date the Tax Collector serves a written notification under Section 6.13-1(b) that the Tax Collector requires additional information or records to evaluate and decide the petition, and the date the Tax Collector receives that information and those records. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.13-1.  REDETERMINATIONS; PETITION; TIME FOR FILING; INCOMPLETE PETITIONS.

(a)  Any person against whom a determination is made under the Business and Tax Regulations Code may petition the Tax Collector for a redetermination within 30 days after service of the notice thereof, except for a petition for redetermination of a jeopardy determination, which the person may file within 15 days after service of the notice as provided in Section 6.12-5. If a petition for redetermination is not filed within the applicable period, the determination becomes final at the expiration of the period. The final determination may be enforced or collected by any method authorized by law, including but not limited to lien, levy, and judicial enforcement, including provisional remedies and injunctive relief.

(b)  Every petition for redetermination shall be verified by the person against whom the Tax Collector made the determination, stating under penalty of perjury the specific grounds upon which the petition is founded, with specificity sufficient to enable the Tax Collector to understand and evaluate the petition, and verifying the information and authenticating the records upon which the petitioner relies in support of the petition. Any ground for redetermination that is not specified in the petition for redetermination shall be deemed waived by the petitioner in any later judicial proceeding.

If the Tax Collector determines that the petition fails to state specific grounds for redetermination, lacks sufficient specificity to understand and evaluate the petition, or is not accompanied by information and records in support of the petition the Tax Collector reasonably deems necessary to evaluate and decide the petition, the Tax Collector in his or her discretion may either deny the petition as incomplete or may require the petitioner in writing to supplement the petition with additional information or records the Tax Collector deems reasonably necessary to decide the petition. The petitioner shall submit such information and records in support of the petition to the Tax Collector within 30

days of service of the Tax Collector's written request, which shall be served in the manner prescribed in Section 6.11-2. If mailed, service of the notice is complete at the time of deposit with the United States Postal Service. Failure of the petitioner to provide all of the information and records set forth in the written request within the 30-day period shall be sufficient ground for the Tax Collector to deny the petition, and the petitioner shall be subject to the penalties and sanctions provided in Section 6.17-3. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

## SEC. 6.13-2.  REDETERMINATIONS; HEARING AND NOTICE.

If a petition for redetermination is timely filed, the Tax Collector shall reconsider the determination. If requested in the petition, the Tax Collector shall grant the person or the person's authorized representative an oral hearing, and shall give such person or representative not less than 15 days notice of the time and place of the hearing. The Tax Collector may continue the hearing from time to time as may be necessary. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

## SEC. 6.13-3.  REDETERMINATIONS; ALTERATION OF DETERMINATION.

The Tax Collector may decrease or increase the amount of the determination, including the amount of the tax, penalties or interest, before it becomes final. The amount may be increased only if a claim for the increase is asserted by the Tax Collector, and the Tax Collector provides written notice thereof to the person against whom the Tax Collector issued the determination. If the Tax Collector increases the amount before the hearing described in Section 6.13-2, such written notice shall be served at least 15 days before the hearing and the person receiving such notice shall file a supplemental petition for redetermination addressing the increased deficiency amount at least 5 days before the hearing date. The Tax Collector may reschedule the hearing for purposes of allowing the requisite notice of



increase. If the Tax Collector increases the amount after the hearing described in Section 6.13-2, the Tax Collector shall serve notice of such increase before issuing a final decision. Within 15 days of service of such notice, the person against whom a claim for increase is asserted by the Tax Collector may serve a supplemental petition for redetermination contesting the increased deficiency amount. The Tax Collector shall hold an additional oral hearing on the increased amount upon the request of the petitioner. A supplemental petition for redetermination filed pursuant to this Section shall state any additional specific grounds for redetermination applicable to the increased deficiency amount. Any specific ground for redetermination that is not specified in either the initial petition for redetermination or the supplemental petition for redetermination shall be deemed waived by the petitioner in any later judicial proceeding. Nothing in this Section shall preclude a new audit or determination by the Tax Collector of a new or supplemental deficiency. The burden of proof in any proceeding for redetermination or appeal thereof shall be on the taxpayer, who shall have the burden of proving that the Tax Collector's determination is incorrect. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.13-4. REDETERMINATIONS; FINALITY OF ORDER.

The order or decision of the Tax Collector upon a petition for redetermination becomes final 15 days after service upon the petitioner of notice thereof. Service of the order or decision of the Tax Collector shall be served in the manner prescribed in Sec. 6.11-2.

All determinations made by the Tax Collector under Sections 6.13-1 and 6.13-2 of this Article are due and payable at the time they become final, except jeopardy determinations made pursuant to Section 6.12-1 et seq., which become due and payable upon service of the jeopardy determination. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.13-5. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Prior to seeking judicial relief, persons against whom a jeopardy determination or deficiency determination is made must exhaust their administrative remedies by: (i) petitioning to the Tax Collector for redetermination and including all specific grounds supporting the petition for redetermination; (ii) paying the full amount owed as set forth in the final determination; and (iii) presenting a claim for refund to the Controller under Section 6.15-1 et seq., which the City Attorney has denied or which the claimant has deemed denied under Section 6.15-1(d). (Added by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.13-6. EFFECT OF TAX COLLECTOR'S NOTICE OF DEFICIENCY.

The Tax Collector's issuance of a notice of deficiency or failure to issue such a notice for any period may not be treated as precedent for any particular method or manner of reporting or treating any item included or excluded on any return for purposes of any other or future item appearing or reported on a return. The Tax Collector's making of a determination or jeopardy determination as to a person for a period shall not bar the Tax Collector from making further determinations regarding the liability of the person for that period. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.14-1. RESERVED. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Repealed by Ord. 291-10, File No. 101099, App. 11/18/2010)

### Sec. 6.14-2. RESERVED. (Added by Ord. 18-98, App. 1/16/98; repealed by Ord. 26-04, File No. 031990, App. 2/19/2004)

### Sec. 6.14-3. RESERVED. (Added by Ord. 18-98, App. 1/16/98; repealed by Ord. 26-04, File No. 031990, App. 2/19/2004)

### SEC. 6.15-1. REFUNDS.

(a) Except as otherwise provided in subdivision (c) below, the Controller shall refund or cause to be refunded the amount of any tax,

Sec. 6.15-1.   **San Francisco - Business and Tax Regulations Code**   156

interest or penalty that has been overpaid or paid more than once, or has been erroneously or illegally collected or received by the City, provided the person that paid such amount files with the Controller, within the later of 1 year of payment of such amount or when the return accompanying such payment was due, a verified claim in writing therefor, stating under penalty of perjury: (i) the specific amount claimed to have overpaid or paid more than once, or erroneously or illegally collected or received by the City, (ii) the tax periods at issue, and (iii) the grounds upon which the claim is founded, with specificity sufficient to enable the Tax Collector and other responsible City officials to understand and evaluate the claim. The Controller shall enter the claim in the claim register, and shall forthwith forward it to the City Attorney. If the City Attorney determines the claim is insufficient, the City Attorney shall give the claimant written notice of how the claim is insufficient, stating with particularity the defects or omissions therein. The City Attorney shall send the claimant that notice within 20 days after the claimant presents the claim. The City Attorney may reject any and all claims the Controller forwards to the City Attorney, and shall notify the claimant of such rejection. Allowance or compromise and settlement of claims under this Section in excess of $25,000 shall require the written approval of the City Attorney and approval of the Board of Supervisors by resolution. The City Attorney may allow or compromise and settle such claims if the amount is $25,000 or less. No claim may be paid until the Controller certifies that monies are available from the proper funds or appropriations to pay the claim as allowed or as compromised and settled. For purposes of this Section, a claim shall be deemed to accrue on the later of the date the return was due or the tax was paid.

(b)   The claim shall be on a form furnished by the Controller. A claim may be returned to the person if it was not presented using the form. A refund claim may be made only by the taxpayer or other person determined to be liable for the tax or said person's guardian or conservator. No other agent, including the taxpayer's attorney,

may sign a refund claim. Class claims for refunds shall not be permitted. The customer who pays a third-party tax to an operator is the proper party to seek the refund of a disputed third-party tax. No operator or other person responsible for collecting or remitting a disputed third-party tax may obtain a tax refund unless that operator or other person has paid the tax to the Tax Collector pursuant to a deficiency determination or a jeopardy determination in which case the operator or other person who paid the tax, and not the individual customer, may seek a refund. If the claim is approved as set forth in subsection (a) above, the excess amount collected or paid may be refunded or may be credited on any amount due and payable, from the person from whom it was collected or by whom paid and the balance may be refunded to such person, his administrator or executors.

(c)   The City Attorney, in his or her discretion and upon good cause shown, prior to the expiration of the 1-year limitations period, may waive the requirement set forth in subdivision (a) above that a taxpayer file a written verified claim for a refund in any case in which the Tax Collector and City Attorney determine on the basis of other evidence that (i) an amount of tax, interest or penalty has been overpaid or paid more than once, or has been erroneously or illegally collected or received by the City, and (ii) all other conditions precedent to the payment of a refund to the taxpayer have been satisfied.

(d)   The City Attorney shall allow, reject or otherwise act upon a claim for refund in a manner specified in Government Code Section 912.6 within 45 days after it is presented to the Controller. If the claim is amended, the City Attorney shall act on the amended claim within 45 days after the amended claim is presented. The claimant may agree in writing to extend the period within which the City Attorney must act on the claim for refund prior to expiration of the original 45-day period. The claimant may deem the claim for refund denied and seek judicial relief if the City Attorney does not act upon the claim within the 45-day period, or such extended period to which the claimant has agreed.



(e)   The Tax Collector may authorize the Controller to refund tax payments, without a refund claim having been filed, without the need for a refund claim, and without review by the City Attorney, if the Tax Collector determines:

(i)   the tax was paid more than once; or

(ii)   the amount paid exceeds the amount due as a result of an arithmetic or clerical error. The Tax Collector may authorize such a refund no later than 1 year after payment of the tax. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 92-99, File No. 990302, App. 4/30/99; Ord. 57-00, File No. 000183, App. 4/7/2000; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.15-2.   REFUNDS; INTEREST.

(a)   Any amounts refunded shall bear interest at the rate of 2/3 of 1 percent per month or fraction thereof; or the average rate of interest computed over the preceding 6-month period obtained, by the San Francisco Treasurer on deposits of public funds at the time refund is made, whichever rate is lower, and shall be computed from the date of payment to the date of refund.

(b)   If the Controller offsets overpayments for a period or periods against underpayments for another period or periods, against penalties or against interest on the underpayments, the taxpayer will be credited with interest on the amount so applied at the rate of interest set forth above, computed from the date of payment.

(c)   If a taxpayer chooses to apply all or part of a refund against a San Francisco tax liability for a future period, the taxpayer will not be credited with interest on the amount so applied. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.15-3.   REFUNDS; NOTICE OF DENIAL.

If the claim for refund is denied, the City Attorney shall serve or cause to be served notice of such denial upon the taxpayer personally or by mail. The notice of denial of such claim shall be

in a form substantially similar to the form for notice of rejection of claims set forth in Government Code Section 913. If the City Attorney does not serve such a notice of denial of claim, then the statute of limitations for filing a suit for refund shall be as set forth in Section 6.15-4. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.15-4.   EXHAUSTION OF ADMINISTRATIVE REMEDIES; PRESENTATION OF CLAIM FOR REFUND AS PREREQUISITE TO SUIT; PAYMENT OF DISPUTED AMOUNT AND PETITION FOR REFUND; LIMITATIONS.

(a)   Persons claiming they are aggrieved under the Business and Tax Regulations Code must prior to seeking judicial relief: (1) pay the amount of the disputed tax, penalty and interest; (2) if the disputed tax was paid pursuant to the Tax Collector's jeopardy determination or deficiency determination, file a petition for redetermination, pursuant to Section 6.12-5 or Section 6.13-1; and (3) present a claim for refund to the Controller and allow action to be taken on such claim, pursuant to Section 6.15-1.

(b)   Any suit for tax refund shall be commenced no later than 6 months from the date the notice of denial of the claim for refund was personally delivered or deposited in the mail, or within 2 years of accrual of the cause of action if notice of denial of the claim for refund is not served on the person as set forth in Section 6.15-3. Persons claiming they are aggrieved under the Business and Tax Regulations Code may not seek any type of judicial relief other than a refund action. Notwithstanding any other section of this Code, no claim or defense that, for any reason, a tax is not due or cannot be applied under this Code may be raised in any judicial proceeding except as specified in the preceding sentence. (Added by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.16-1.   RULES AND REGULATIONS.

The Tax Collector may promulgate regulations and issue rules, and issue determinations

and interpretations consistent with the provisions of the Business and Tax Regulations Code as may be necessary or appropriate for the purpose of carrying out and enforcing the payment, collection and remittance of taxes and to apply such Code and any rules and regulations promulgated thereunder in a lawful manner. The Tax Collector shall hold a public hearing and allow public comment on any proposed rule or regulation prior to adoption thereof. The Tax Collector shall provide not less than 10 days' notice of such public hearing. A copy of such rules and regulations shall be on file and available for public examination in the Tax Collector's Office. Failure or refusal to comply with any rules and regulations promulgated by the Tax Collector shall be deemed a violation of the Business and Tax Regulations Code. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.17-1.  PENALTIES AND INTEREST FOR FAILURE TO PAY.

(a)  Any person who fails to pay any tax to the City, or any operator or other person who fails to collect and remit any third-party taxes shall pay a penalty of 5 percent of the tax, if the failure is for not more than 1 month after the tax became delinquent, plus an additional 5 percent for each following month or fraction of a month during which such failure continues, up to 20 percent in the aggregate, until the date of payment. Any taxes remaining unpaid for a period of 90 days after notification that the tax is delinquent shall be subject to an additional penalty of 20 percent of the tax or amount of the tax.

(b)  If the failure to pay any tax is due to fraud or an intent to evade the Business and Tax Regulations Code or the Tax Collector's rules and regulations, an additional penalty in the amount of 50 percent of the amount due, in addition to any other penalties and interest, shall be added thereto. A taxpayer or other person against whom a fraudulent failure to pay penalty is asserted is entitled to a notice of such determination to be

issued in accordance with the provisions of Section 6.11-1 et seq. and to the appeal rights set forth in Section 6.13-1 et seq.

(c)  Unpaid taxes and penalties shall also accrue interest at the rate of 1 percent per month, or fraction of a month, from the date the taxes become delinquent through the date the taxpayer or operator pays the delinquent taxes, penalties, interest and fees accrued to the date of payment in full. (Added by Ord. 18-98, App. 1/16/98; amended by Ord. 93-99, File No. 990303, App. 4/30/99; Ord. 26-04, File No. 031990, App. 2/19/2004; Ord. 291-10, File No. 101099, App. 11/18/2010)

### SEC. 6.17-2.  PENALTIES FOR UNDERREPORTING OF TAX.

(a)  **Penalties for Negligence.** If the Tax Collector determines that all or part of any tax required to be reported on any return was underreported and that such underreporting was attributable to negligence, the Tax Collector may impose a penalty in the amount of 5 percent of the amount of the underreported tax, in addition to the tax or amount of tax, if the negligence is for not more than 1 month, with an additional 5 percent for each month or fraction of a month during which such negligence continues, up to 20 percent in the aggregate.

(b)  **Penalties for Intentional Disregard of Rules, Fraud, or Intend to Evade Tax.** When it is determined by the Tax Collector that all or part of any tax required to be reported on any return was underreported and such underreporting was attributable to fraud or an intent to evade the Business and Tax Regulations Code, the Tax Collector may impose a penalty in the amount of 50 percent of the amount of the underreported tax. The taxpayer or other person determined to be liable for penalties pursuant to this Section is entitled to a notice of deficiency determination or jeopardy determination and to the appeal rights as to such determinations.

(c)  **Additional Penalty for Substantial Underreporting.**

(1)  For purposes of this section, "substantial underreporting of tax" means the tax finally



158.1                    **Common Administrative Provisions**                    Sec. 6.17-2.

determined by the Tax Collector under Articles 7,
9, 10, 10B, 11, or 12-A, of this Business and Tax
Regulations Code exceeds the amount of tax
reported on a taxpayer's original or amended
return for a taxable period by 25 percent or more.

(2) If the Tax Collector determines that a
taxpayer has made a substantial underreporting
of tax for any taxable period, the Tax Collector
may impose an additional penalty in an amount
equal to 50 percent of the tax attributable to the
substantially underreported amount. The pen-
alty for substantial underreporting is in addition
to any other penalty imposed under this Article
6.

(3) The additional penalty for substantial
underreporting applies to all taxable periods
ending on or after the effective date of this
Ordinance. (Added by Ord. 18-98, App. 1/16/98;
amended by Ord. 95-99, File No. 990305, App.
4/30/99; Ord. 26-04, File No. 031990, App. 2/19/
2004; Ord. 102-10, File No. 100247, App. 5/21/
2010; Ord. 291-10, File No. 101099, App. 11/18/
2010)

*[INTENTIONALLY LEFT BLANK]*

# Exhibit 4

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF VIRGINIA

## RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

## DECLARATION OF LORETTA R. LIEBERMAN IN SUPPORT OF CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO EIGHTEENTH OMNIBUS OBJECTION TO CLAIM NUMBER 14858 [BUSINESS PAYROLL EXPENSE TAX]

I, LORETTA R. LIEBERMAN, state the following:

1.    I am, and have been since June 2, 2008, employed in the San Francisco Office of the Treasurer and Tax Collector as the Manager of its Business Tax Account Services Section.

---

Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

Counsel for City and County of San Francisco

David P. Augustine, State Bar No. 223353
Tax Collector - Legal Section
City and County of San Francisco
P.O. Box 7426
San Francisco, CA  94120-7426
Telephone: (415) 554-4495 (Main)
Facsimile: (415) 554-5010
E-Mail:  David.Augustine@sfgov.org

Counsel for City and County of San Francisco

2.    The Business Tax Account Services Section is responsible for receiving

and accounting for all tax payments and tax statements (tax returns) that are required to

be made pursuant to the San Francisco Business and Tax Regulations Code.  I have

overall administrative oversight of 15 employees who work in the Business Tax Account

Services Section of the San Francisco Office of the Treasurer and Tax Collector.  I am

familiar with the procedures and computer databases that are used in the Business Tax

Account Services Section to record, store, and maintain specific tax return and tax

payment information for all business tax payers.

3.    I searched the electronic computer database which indicated that Circuit

City Stores West Etc. ("Circuit City" or "Debtors") filed their 2009 Payroll Expense Tax

Statement on March 5, 2010 for the tax year 2009, bearing certificate number 192220.  A

true and correct copy of the 2009 EZ Form is marked as **Exhibit "A"** which is attached

hereto and is incorporated as though set forth in full.  It has paid its annual Business

Registration Fee for every year through 2009.  Tax Collector records show that Circuit

City filed its 2009 San Francisco Payroll Expense Tax Statement on March 5, 2010 and

reported payroll expense tax of $5,113.32.  The return was due on February 28, 2010.

Circuit City did not enclose any payment with its 2009 payroll expense tax statement, and

the tax delinquency for 2009, along with interest and penalties, remains unpaid to this

date.

4.    The amount of the 2009 Payroll Expense Tax delinquency for Circuit City,

including all penalties and accrued interest (at 12%, the rate provided for in the San

Francisco Business and Tax Regulations Code) calculated through March 11, 2010, is $8,404.10.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true of my personal knowledge and that the documents attached are true copies of records maintained by the San Francisco Office of the Treasurer and Tax Collector, and that if called as a witness, I could and would testify competently thereto.

Executed on November 17, 2011 in the City and County of San Francisco, State of California.

LORETTA R. LIEBERMAN

INDEX OF EXHIBITS

EXHIBIT NO.          DESCRIPTION

A          2009 San Francisco Payroll Expense Tax Statement

1217799.1

03/03/3010 10:17 FAX   @002/003



## 2009
**EZ FORM**

### PAYROLL EXPENSE TAX STATEMENT
SAN FRANCISCO TAX COLLECTOR
BUSINESS TAX SECTION
P.O. BOX 7425
SAN FRANCISCO, CA 94120-7425
TAXPAYER ASSISTANCE: (415) 554-4400, www.sfgov.org/tax

**DELINQUENT AFTER
FEBRUARY 28, 2010**

CERTIFICATE NUMBER  192220   95446078501   TAX YEAR 2009

DO NOT WRITE IN PRE-PRINTED AREAS.  USE BLACK INK AND STAY INSIDE BOXES.

CIRCUIT CITY STORES WEST ETC
JEFF MCDONALD TAX DEPT
PO BOX 5695
GLEN ALLEN, VA 23058-

First Statement: Date ceased in SF or sold (immediately)
01 / 09 / 2009
If sold, name, address, and phone number of new owner

Number of taxable San Francisco employees for 2008   60
Contact Number ___-___-___

Complete this form if your 2009 taxable SF payroll expense was $46,866.34 or more, and you are not claiming the Enterprise Zone tax credit.
Note: If the due date falls on a weekend or legal holiday, the deadline to file and/or pay without incurring penalties, interest, and an administrative fee is the close of business on the next business day.

| | | | |
|---|---|---|---|
| 1. | Total gross PAYROLL EXPENSE for the entire business entity. | $ | 340288.00 |
| 2. | Total exempt PAYROLL EXPENSE. | $ | |
| 3. | Total Taxable San Francisco Payroll Expense  (Subtract line 2 from line 1) | $ | 340288.00 |
| 4. | Payroll Expense Tax Calculated (Multiply line 3 by 1.5% or .015) | $ | 5113.31 |
| 5. | NOTE: If line 4 is less than $1,000.00, complete and return the Registration Renewal only. | | |
| 6. | If line 4 is over $3,750.00 enter the amount from line 4.  Otherwise, enter zero.  (See C. on reverse side.) | $ | 5113.32 |
| 7. | 2009 PREPAYMENT PAID (Do not include Registration Fees). If none, enter zero. | $ | |
| 8. | Tax due. (Subtract line 7 from line 6. If line 7 is larger than line 6, enter zero.) | $ | 5113.32 |
| 9. | Amount of overpayment. (If line 7 is larger than line 6, enter difference.)  (See H on reverse side.) | $ | |
| 10. | If filed or postmarked after February 28, 2010, enter LATE FILING PENALTY. | $ | |
| 11. | If paid after February 28, 2010, enter LATE PAYMENT PENALTY  if Line 4 is greater than $3,750.00, add an additional 20% penalty after 5/31/10. (See Table on reverse side.) | $ | |
| 12. | If paid after February 28, 2010, enter INTEREST based on line 8. (See Table on reverse side.) | $ | |
| 13. | If filed or postmarked after February 28, 2010, enter ADMINISTRATIVE FEE of $55.00. | $ | |
| 14. | TOTAL DUE. (Add Lines 8,10,11,12,13.) Make check payable to SF Tax Collector. | $ | 5113.32 |

I hereby certify, under penalty of perjury that I am the authorized representative of this taxpayer and I have examined the foregoing payroll expense tax statement including any accompanying schedules and worksheets, and the information thereon is to the best of my knowledge and belief, true, correct, and full compliant with all of the requirements provided in Articles 6, 12 and 12-A of the San Francisco Business and Tax Regulations Code. I am required by law to complete this form in its entirety and understand this statement is subject to audit.

PRINT NAME _____  TITLE _____ FAX NUMBER _____
X SIGNATURE _____  DATE 3/3/2010   B113-09   12575

THIS STATEMENT MUST BE FILED OR POSTMARKED BY USPS BY FEBRUARY 28, 2010
OR YOU WILL BE SUBJECT TO FEES, PENALTIES, AND/OR INTEREST

NOTE: Payment enclosed must equal the total due on Line 14. (Please write your certificate number on your check.)

If you wish to designate 1% of your tax obligation to the SF Community Challenge Grant Program, fill in this box. This will not increase your tax.

*Exhibit "A"*

# Exhibit 5

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF VIRGINIA

## RICHMOND DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

## DECLARATION OF DAWN DURAN IN SUPPORT OF CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO EIGHTEENTH OMNIBUS OBJECTION TO CLAIM NUMBER 14857 [UNSECURED PERSONAL PROPERTY TAX]

I, DAWN DURAN, state the following:

1.     I am, and at all times stated herein was, employed by the City and County of San Francisco as Administrator of the San Francisco Assessment Appeals Board.

2.     The Assessment Appeals Board is charged with the responsibility for reviewing and acting upon valid appeals of assessed property valuations for secured and unsecured property tax purposes, scheduling hearings, and notifying parties of the results as required by applicable state and local law.  As Assessment Appeals Board Administrator, I have responsibility for

Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

Counsel for City and County of San Francisco

David P. Augustine, State Bar No. 223353
Tax Collector - Legal Section
City and County of San Francisco
P.O. Box 7426
San Francisco, CA  94120-7426
Telephone: (415) 554-4495 (Main)
Facsimile: (415) 554-5010
E-Mail:  David.Augustine@sfgov.org

Counsel for City and County of San Francisco

developing procedures and supervising support staff in implementing and maintaining procedures for tracking and organizing all appeals of assessed property valuations, scheduling hearings on property valuation appeals, and notifying parties of the Assessment Appeals Board decisions on individual appeals.   Under California property tax law, an owner may appeal a reassessment of property by filing an Application for Changed Assessment with the Assessment Appeals Board.   The records of the Assessment Appeals Board contain all applications for changed assessment and correspondence we receive regarding reassessments, in accordance with state law and our local records retention schedule.

      3.    I searched the records of the Assessment Appeals Board to determine whether the assessed owner, Circuit City Stores, Inc., or anyone else acting on its behalf, filed an application for reduction of assessment or otherwise gave written notice of appeal regarding any of the aforementioned assessments of property tax values.   I found the correspondence and an Application for Changed Assessment, application number 2009-5009, marked as Exhibit "A" which is attached hereto and incorporated as though set forth in full.

      5.    Circuit City Stores, Inc. has provided no information or evidence in support of their appeal to the City's Assessment Appeals Board.

      6.    Shortly before the hearing was to take place on the assessment appeal of Circuit City Stores, Inc. the Debtor's authorized agent, acting on the Debtor's behalf, requested and was granted a postponement of the hearing.   The hearing has not been rescheduled to date and the original valuation of the personal property herein remains the valuation of record for the City.

2

7.     A true and correct copy of the Information and Instruction for Application for Changed Assessment is marked as Exhibit "B," which is attached hereto and incorporated as though set forth in full.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true of my own personal knowledge.  If called as a witness, I could and would testify competently thereto.

Dated: November 18, 2011

_____
DAWN DURAN
San Francisco Assessment Appeals Board Administrator

-3-

INDEX OF EXHIBITS

EXHIBIT NO.          DESCRIPTION

A                    Application for Changed Assessment, Application Number 2009-5009,
                     and Correspondence from Ernst & Young dated August 10, 2009

B                    Information and Instruction for Application for Changed Assessment
                     dated June 21, 2010

1217796.1

# **EXHIBIT A**



**APPLICATION FOR CHANGED ASSESSMENT**
City & County of San Francisco, State of California
#1 Dr. Carlton B. Goodlett Place, Room 405, San Francisco, CA 94102-4697
This form contains all the requests for information that are required for filing an application for changed assessment. Failure
to complete this application may result in rejection of the application and/or denial of the request. Applicants should be
prepared to submit additional information if required by the Assessor or at the time of the hearing. Failure to provide
information the Assessment Appeals Board considers necessary may result in the continuance of the hearing.

**APPLICATION NUMBER**

2 0 0 9 - 5 0 0 9

| **1. APPLICANT'S NAME** (Please type or print in ink) | **2. AGENT OR ATTORNEY FOR APPLICANT** (Please type or print in ink) |
|---|---|
| CIRCUIT CITY STORES, INC <br> (Last, First, MI) | ERNST & YOUNG LLP <br> (Name of Agent's/Attorney's Firm) |
| P.O. BOX 42304 <br> Mailing Address (MUST be applicant's mailing address) | CHARLES LONG <br> (Person to Contact)(Last, First, MI) |
| RICHMOND        VA      23242 <br> City          State        Zip Code | 901 EAST CARY STREET STE 1000 <br> Mailing Address |
| | RICHMOND          VA      23219 <br> City              State    Zip Code |
| Daytime Phone    Alternate Phone    Fax Number | 904- 331- 2006l <br> Daytime Phone    Alternate Phone    Fax Number |
| E-Mail Address: | **AGENT AUTHORIZATION** |

**3-A SECURED PROPERTY ASSESSOR'S PARCEL NO.** (list block & lot #)     **O R**     **3-B UNSECURED PROPERTY** (attach copy of tax bill)

Assessment No. 09-20509

Account No. 217983-001

**AGENT AUTHORIZATION**
*If the applicant is a corporation, the agent's authorization must be signed by an officer or authorized employee of the business entity. If the agent is not an attorney licensed in California or a spouse, child, or parent of the person affected, the following must be completed (or attached to this application-see instructions).*

ERNST & YOUNG _____ is hereby authorized
to act as his agent in this application and may inspect assessor's records, enter into stipulations, and otherwise settle issues related to this application.

SEE ATTACHED

_____    _____
Date    Signature of Applicant/Officer/Authorized Employee    Title

**3-C PROPERTY ADDRESS OR LOCATION**

1200 Van Ness Ave

**(FOR OFFICE USE ONLY)**

POST MARK

SEP 1 6 2009

Assessment
Appeals Board

| **3-D PROPERTY TYPE:** | **4. VALUES FOR:** | **VALUE ON ROLL** | **APPLICANT'S OPINION of VALUE** |
|---|---|---|---|
| ☐ Single family residence/ Condo/Townhouse | LAND | $ | $ |
| Is this property an owner-Occupied single family dwelling <br> ☐ YES    ☐ NO | IMPROVEMENT STRUCTURES | $ | $ |
| ☐ Apartments - # of Units ___ | IMPROVEMENT FIXTURES ✓ | $ 1,203,800 | $ |
| ☐ Commercial <br> ☒ Business Personal Property | PERSONAL PROPERTY | $ 213,800 | $ 69,000 |
| ☐ Possessory Interest <br> ☐ Vacant Land | TOTAL | $ 417,600 | $ 69,000 |
| ☐ Other ___ | PENALTIES | | |

**5. TYPE OF ASSESSMENT BEING APPEALED** (check only one box)

THIS APPEAL IS FOR
THE 09/10 ROLL YEAR
(IMPORTANT- See Instructions for Filing Periods)

A. ☒ Regular Assessment – Value as of January 1st of the current year
B. ☐ Supplemental Assessment (Attach copy)
    ROLL YEAR ___
    Date of Notice or Tax Bill ___
C. ☐ Roll Change/Escape Assessment/Calamity
    (Attach copy)
    ROLL YEAR ___
    Date of Notice or Tax Bill ___

**6. THE FACTS THAT I RELY UPON TO SUPPORT REQUESTED CHANGE IN VALUE ARE AS FOLLOWS:** (You may check all that apply. If you are uncertain of which item to check, check "H. Other"). See Instructions.
☐A. DECLINE IN VALUE: Assessor's roll value exceeds the market value as of January 1st of the current year.
☐B. CHANGE IN OWNERSHIP: (1) ☐ No change in ownership or other reassessable event occurred on the date of ___. (2) ☐ Base Year value for the change of ownership established on the date of ___ is incorrect.
C. NEW CONSTRUCTION: (1) ☐ No new construction or other reassessable event occurred on the date of ___. (2) ☐ Base Year value for the new construction established on the date of ___.
☐D. CALAMITY: Assessor's reduced value incorrect for property damaged by misfortune or calamity
☒E. PERSONAL PROPERTY/FIXTURES: Assessor's value of personal property and/or fixtures e (1) ☒ All personal property. (2) ☐ Only a portion of the personal property/fixture description of those items.
☐F. PENALTY ASSESSMENT: Penalty assessment is not justified.
☐G. CLASSIFICATION: Assessor's classification and/or allocation of value of property is incorrect.
H. APPEAL AFTER AN AUDIT: Must include description of each property, issues being appealed opinion of value. (1) ☐ Amount of escape assessment is incorrect (2) ☐ Assessment of property at the location is incorrect.
☐ I. OTHER: Explain here or attach explanation.

A

**7. WRITTEN FINDINGS OF FACT:** Written Findings ☐ ARE requested ☒ ARE NOT requested. (See Information & Instructions for Details and Fee

**8. CLAIM FOR REFUND?** ☐ YES ☐ NO   Do you want to designate this application as a claim for refund? (Please refer to Information & Instr

**9. HEARING OPTIONS:** (See Information & Instructions for Requirement Details and Fees)
☐ A HEARING OFFICER is requested (Only applies to single family residences, cooperatives, condominium, or multiple-family dwellings of four units or less)
☒ A BOARD HEARING is requested (All applicants may request a Board hearing)

*I CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING AND ALL INFORMATION HEREON, INCLUDING ANY ACCOMPANYING STATEMENTS OR DOCUMENTS, IS TRUE, CORRECT AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT I AM (1) THE OWNER OF THE PROPERTY OR THE PERSON AFFECTED, OR (2) AN AGENT AUTHORIZED BY THE APPLICANT, OR (3) AN ATTORNEY LICENSED TO PRACTICE LAW IN THE STATE OF CALIFORNIA. STATE ABOVE.*

| Signature <br> Charles Long | Location Signed City <br> Charlotte | State <br> NC | Date <br> 9/15/09 |
|---|---|---|---|
| Name and Title (please type or print in ink) <br> CHARLES LONG | ☐ Owner ☒ Agent ☐ Attorney ☐ Spouse ☐ Registered Domestic Partner ☐ Child ☐ Parent ☐ Person Affected | | |

Form BOE-305-AH, City and County of San Francisco Version – April 2006         A $30.00 FEE IS REQUIRED TO FILE THIS APPLICATION- See Information/Fees



**ERNST & YOUNG**

Ernst & Young LLP
One James Center
Suite 1000
901 East Cary Street
Richmond , Virginia 23219-4065

Main tel: +1 804 344 6000
www.ey.com

August 10, 2009

Assessment Appeals Board
Attn: Assessor's Office
City Hall, 1 Dr. Carlton B. Goodlett Place, Room 405
San Francisco, CA 94102

POST MARK
AUG 1 2 2009
Assessment
Appeals Board

Notice of Appeal
Circuit City, Inc. and all legal subsidiaries
Account Number: 217983-001

Dear Sirs:

On behalf of our client, Circuit City Inc., we respectively appeal the assessment of the above property. As a result of their protection under the current federal bankruptcy proceedings, we must protect their administrative appeal rights and are using this letter as a means exercising such protection.

Further information will be provided at a later date in support of our opinion of value.

We may be reached at (704) 331-2004 in case you have further concerns or questions.

Very truly yours,

*Charlie*

Charles Long
Authorized Agent

Copy to:     Jeff McDonald, Circuit City
             Jeff Knopke, Circuit City

A member firm of Ernst & Young Global Limited

CITY AND COUNTY OF SAN FRANCISCO UNSECURED PROPERTY TAXES
**FISCAL YEAR 2009-2010.**
THESE TAXES WERE DUE AND PAYABLE ON THE LIEN DATE JANUARY 1, 2009
THE DISPOSAL OF PROPERTY AFTER THE LIEN DATE DOES NOT RELIEVE THE ASSESSEE OF THE TAX LIABILITY.

| ASSESSMENT NO. | ACCOUNT NO. | TAX BILL ISSUED | BLOCK | LOT | DESCRIPTION CODE | TAX RATE |
|---|---|---|---|---|---|---|
| 09-205029 | 217983-001 | 06/30/09 | 0691 | 005 | | 1.1630% |

CIRCUIT CITY STORES WEST COAST
SARAH HARRIS - TAX DEPT
P O BOX 42304
RICHMOND VA        23242

FIRST MAIL DATE: 06-30-09
LOCATION OF PROPERTY 1200 VAN NESS AV
BUSINESS ADDRESS    CIRCUIT CITY #242
ASSESSEE 12:01 A.M. JANUARY 1 AND MAILING ADDRESS
SECTION 2922 R & T CODE

PAYABLE ANYTIME AFTER RECEIPT, BUT
WILL BE DELINQUENT AFTER 5 P.M.  ▶  AUG 31, 2009

REMARKS
IMPORTANT: PLEASE READ BACK SIDE FOR
IMPORTANT INFORMATION

### ASSESSED VALUE AND EXEMPTION

| | |
|---|---|
| LAND | |
| IMP. STRUCTURE | |
| IMP. FIXTURE | 1,203,800 |
| PERS. PROPERTY-OTHER | 213,869 |
| EXEMPTION | |
| NET VALUE | 1,417,669 |
| PENAL ASSMT. | |

### TAXES DUE

| | |
|---|---|
| AD VALOREM | 16,487.49 |
| 10% PEN. SEC. 463 | |
| 25% PEN. SEC. 504 | |
| INTEREST SEC. 506 | |
| TOTAL TAX DUE | 16,487.49 |
| 10% PENALTY | |
| 1.5% PENALTY PER MO. | |
| ADMINISTRATIVE COST | |
| LIEN FEE | |
| TOTAL AMOUNT DUE | 16,487.49 |

**MARK YOUR CALENDAR . . . there will be NO reminder notices mailed before the delinquency date stated below.**

PENALTIES ARE ASSESSED AS FOLLOWS:
ADD 10% PENALTY PLUS $35 FEE TO TAX AMOUNT AFTER   AUG 31, 2009
ADD ADDITIONAL MONTHLY PENALTY OF 1.5% ON        11-01-09
ADDITIONAL APPLICABLE FEES MAY ALSO BE REQUIRED   (SEE BELOW)

**CORRECTED TAX BILLS MUST BE PAID WITHIN 30 DAYS FROM THE DATE OF MAILING TO AVOID PENALTIES AND INTEREST.**

## CITY AND COUNTY OF SAN FRANCISCO
### UNSECURED PROPERTY TAX PAYMENT FISCAL YEAR 2009-2010

| ASSESSMENT NO. | ACCOUNT NO. | TAX BILL ISSUED | BLOCK | LOT | |
|---|---|---|---|---|---|
| 09-205029 | 217983-001 | 06/30/09 | 0691 | 005 | TAXES DUE |

MAKE CHECKS PAYABLE AND MAIL TO:
SAN FRANCISCO TAX COLLECTOR
P.O. BOX 7427
SAN FRANCISCO, CA 94120-7427

**PAY THIS AMOUNT NO LATER THAN** 08-31-09 ⟩  16,487.49

CIRCUIT CITY STORES WEST COAST
SARAH HARRIS - TAX DEPT
P O BOX 42304
RICHMOND VA        23242

| | |
|---|---|
| ADD 10% PENALTY STARTING 09-01-09 | |
| ADD 1.5% PENALTY PER MO. STARTING * | |
| ADD ADMINISTRATIVE COST | |
| ADD LIEN FEE | |
| TOTAL AMOUNT DUE | 16,487.49 |

* ADD 1.5% PENALTY PER MO. STARTING 11-01-09

09205029 217983001 0016648749 00164874 083109 001

## Appointment of Agent

| Appraisal District USE ONLY | Date Received |
|---|---|

**Instructions: You can use this form:**
* To name a tax agent to represent you in property tax matters;
* To direct that tax notices be mailed to a person you name. Read the instructions carefully. This form will be in effect until you file another form with the appraisal district that revokes it or until you file a form that names a different agent.

| **Step 1:** Owner's name and address | Owner's name |
|---|---|
| | **Circuit City Stores, Inc. & legal subsidiaries** |
| | Current mailing address (number and street) |
| | **P.O. Box 42304** |
| | City **Richmond VA 23242** | Telephone number **804-486-4000** |

| **Step 2:** Describe the property | ☒ All property listed for this owner at the above address |
|---|---|
| | ☐ The following property (give account or legal description) |
| | continue on attached pages if needed |

| **Step 3:** Specify the agent's authority for property tax matters (skip to step 6 if you only want to change tax notice mailing) | ☒ General power to represent me in property tax matters concerning this property |
|---|---|
| | ☐ Specified powers: the agent has only the powers specified below |
| | ☐ file notices of protest and present protests before the appraisal review board |
| | ☐ receive confidential information |
| | ☐ negotiate and resolve disputed tax matters |
| | ☐ other action (specify) _____ |

| | Agent's name |
|---|---|
| | **ERNST & YOUNG LLP    % Property Tax Services** |
| | Current mailing address (number and street) |
| | **One James Center, Suite 1000** |
| | **901 East Cary Street** |
| | City, state and zip code **Richmond, VA 23219** | Telephone number **804-344-6000** |

2009-04-28 14:27        Circuit City        804-967-8831 >> 0660472091186679900    P 4/9

Complete steps 6-9 if you want tax notices mailed to an agent.
SKIP TO STEP 10 IF YOU DON'T WANT TO CHANGE TAX NOTICE MAILING.

| | |
|---|---|
| **Step 6:**<br><br>**Check if you want property tax notices delivered to an agent** | ☒  I want my agent to receive all my property tax notices and other communications for this property, including appraisal notices, appraisal review board orders and hearing notices, tax bills, and collections notices<br><br>☐  Specified powers:  the agent has only the powers specified below<br><br>    ☐  All communications from the chief appraiser<br><br>    ☐  All orders, notices, and other communications from the ARB<br><br>    ☐  All tax bills and notices from all taxing entities served by the appraisal district.<br><br>Note:  These notices can affect your legal rights.  The affected offices are not required by law to send you duplicate copies. |
| **Step 7:**<br><br>**Describe the property for which property tax notices will be delivered** | ☒  The following property (give account number or legal description)<br><br>**Please see Step 2.**<br><br>continue on attached pages if needed<br><br>☐  My agent will provide a list<br><br>Note:  The designation of an agent to receive communications only applies to properties you expressly identify and only affects notices generated after the date you file the list identifying the property with the appraisal district. |
| **Step 8:**<br><br>**Name the person who will get the notices** | Name of the person or firm<br>**Circuit City Stores, Inc.** |
| | Current mailing address (number and street)<br>**P.O. Box 42304** |

| City, state and zip code<br>**Richmond VA 23242** | Telephone number<br>**804-486-4000** |
|---|---|

| | |
|---|---|
| **Step 9:**<br><br>**Date the change of delivery ends** | Date<br><br>If you do not fill in a date, tax notices will continue to be mailed to your agent indefinitely.  You must file a statement revoking this form or designate a new agent to end the agent's authority. |
| **Step 10:**<br><br>**Sign the form** | Signature<br><br>_signature_<br><br>Title and firm name if not the property owner | Date the designation took effect<br><br>April 23, 2009 |

This form must be signed by the property owner; a person the owner has specifically authorized to name tax agents; or by a corporate officer (if the owner is a corporation).  A property manager or other agent should attach a copy of the document authorizing the person to designate agents.



April 23, 2009

## GENERAL APPOINTMENT OF AGENCY

I have authorized Ernst & Young to represent Circuit City Store, Inc. and all legal subsidiaries for all property tax matters in the States listed on the attached. Ernst & Young has the general power to represent us in receiving notices of value, filing of returns, obtaining copies of appraisals, tax assessments, or any other information relevant to property tax matters. Ernst & Young is also authorized to negotiate and accept any settlement reached with all assessment and appraisal authorities to including boards of equalization, appraisal review boards, state tax commissions, or other entities exercising authorities or review of property tax assessments, abatements, exemptions or any matter upon which it has administrative jurisdiction.

This appointment of agency remains in effect for tax year 2009 or until revoked in writing by Circuit City, Inc. or Ernst & Young. Please send all correspondence the Circuit City address.

|  |  |
|---|---|
| Signed (Jeff McDonald) | **Ernst & Young LLP** |
|  | Signed (Ernst & Young) |
| Jeff McDonald, VP   Tax | Ernst & Young LLP |
| Printed Name and Title | Printed Name and Title |
| Circuit City Stores, Inc. | Attn: Property Tax Services |
| % Tax Department | One James Center, Suite 1000 |
| Post Office Box 42304 | 901 East Cary Street |
| Richmond, VA 23242 | Richmond VA  23219 |
| Mailing Address | Mailing Address |
| (804) 486-4000 | (804) 344-6000 |
| Telephone | Telephone |
|  | (804) 344-4538 |
| Fax Number | Fax Number |
| April 23, 2009 |  |
| Date |  |



**<u>EXHIBIT B</u>**

---

## CITY AND COUNTY OF SAN FRANCISCO

### Information and Instructions for Application for Changed Assessment

The State Board of Equalization has prepared a pamphlet to assist you in completing this application. You may download a copy of Publication 30, *Residential Property Assessment Appeals*, at www.boe.ca.gov or contact our office for a copy.

Filing this application for reduced assessment does not relieve the applicant from the obligation to pay the taxes on the subject property on or before the applicable due date shown on the tax bill. The Assessment Appeals Board has two years from the date an application is filed to hear and render a decision. If a reduction is granted, a proportionate refund of taxes paid will be made by the County.

Based on the evidence, the Assessment Appeals Board can increase as well as decrease an assessment. The decision of the Board upon this application is final; the Board may not reconsider or rehear any application. However, either the applicant or the assessor may bring timely action in superior court for review of an adverse action.

An application may be amended until 5:00 p.m. on the last day upon which the application might have been timely filed. After the filing period, an invalid or incomplete application may be corrected at the request of the clerk or amendments may be made at the discretion of the Board. Contact our office for information regarding correcting or amending an application.

The Assessment Appeals Board can hear matters concerning an Assessor's allocation of exempt values. However, it cannot hear matters relating to a person's or organization's eligibility for a property tax exemption. Appeals regarding the denial of exemptions are under the jurisdiction of the County Assessor and/or the courts.

The following numbered instructions apply to the corresponding numbers on the application. **Please type or print in ink all information on the application form.**

1. Enter the name and mailing address of the applicant. If applicant is other than the assessee (e.g. leased property), attach an explanation. NOTE: An agent's address may not be substituted for that of the applicant.

2. Provide the name and mailing address of the agent or attorney, if applicable. If the agent is not a California-licensed attorney, you must also complete the agent's authorization section, or an agent's authorization may be attached to this application. An attached authorization must contain all of the following information:
   - The date the authorization is executed.
   - A statement that the agent is authorized to sign and file applications in the calendar year of the application.
   - The specific parcel(s) or assessment(s) covered by the authorization, or a statement that the agent is authorized to represent the applicant on all parcels and assessments located within the county that the application is being filed.
   - The name, address, and telephone number of the agent.
   - The applicant's signature and title.
   - A statement that the agent will provide the applicant with a copy of the application.

3-A. If this application is for the assessment on secured property, enter the Assessor's block and lot number from your assessment notice or from your tax bill. If the property is unsecured (e.g., an aircraft or boat), leave blank and fill in 3-B. **Only one block and lot number allowed per application.**

3-B. If your property is unsecured property, enter the assessment number from your tax bill. *Please attach a copy of the tax bill.* **Only one assessment number allowed per application.**

3-C. Enter a brief description of the property location, such as a street address, city, and zip code, sufficient to identify the property and assessment being appealed.

3-D. Indicate the type of property being appealed. For a single-family dwelling, indicate if the dwelling is owner-occupied.

4. Enter the figures shown on your assessment notice or tax bill for the year being appealed under VALUE ON ROLL. If you are appealing a current year assessment (base year or decline in value) and have not received an assessment notice, or are unsure of the values to enter in this section, please contact the Assessor's office at (415) 554-5596. If you are appealing a calamity reassessment or an assessment related to a change in ownership, new construction, roll change, or escape assessment, refer to the reassessment notice you received.

   Enter your OPINION OF VALUE for each of the applicable categories. **FAILURE TO STATE AN OPINION OF VALUE WILL RESULT IN THE REJECTION OF YOUR APPLICATION.**

5. Check the item that best describes the assessment that you are appealing and indicate the roll year and notice or tax bill date, if appropriate. **CHECK ONLY ONE ITEM PER APPLICATION.**

   A. REGULAR ASSESSMENT – Filing dates for San Francisco County for **2009** are July 2nd through September 15th. Check this box for:
   - Decline in value appeals.
   - Change in ownership and new construction appeals filed **after** 60 days of the mailing of the supplemental assessment notice or supplemental tax bill.

    B.  SUPPLEMENTAL ASSESSMENT - Filing dates are **within 60 days** after the mailing date printed on the supplemental
notice, or the postmark date of the notice, whichever is later.  Check this box for:
- Change in ownership and new construction appeals filed **within 60 days** after the mailing date printed on the
supplemental notice, or the postmark date of the notice, whichever is later.

    C.  ROLL CHANGE/ESCAPE ASSESSMENT - Filing dates are **within 60 days** after the mailing date printed on the assessment
notice, or the postmark date of the notice, whichever is later.  Check this box for:
- Roll corrections.
- Escape assessments, including those discovered upon audit.

    CALAMITY REASSESSMENT - Filing dates are **within 6 months** after the mailing of the assessment notice.  Check the
Roll Change/Escape Assessment/Calamity box for:
- Property damaged by misfortune or calamity.

For SUPPLEMENTAL ASSESSMENT and ROLL CHANGE/ESCAPE ASSESSMENT/CALAMITY REASSESSMENT
appeals, indicate the roll year and provide the date of the notice.  Typically, the roll year is the fiscal year that begins July 1st of the
year in which you file your appeal. *Attach a copy of the supplemental or escape assessment notice.*

6.   Please mark the item that best describes your reason for filing this application.  If you prefer, you may attach a brief explanation.
You are not required to provide evidence with this application.  If you selected DECLINE IN VALUE, be advised that the
application will only be effective for the one year appealed.  Subsequent years will normally require additional filings.  In general,
BASE YEAR is either the year your real property changed ownership or the year of new construction on your property; BASE
YEAR VALUE is the value established at that time.  The base year value may be appealed during the regular filing period for the
year it was placed on the roll or during the regular filing period in the subsequent three years.  CALAMITY REASSESSMENT
includes damage due to unforeseen occurrences such as fire, earthquake, and flood, and does not include damages that occur
gradually due to ordinary natural forces.  A PENALTY assessed by the tax collector for nonpayment of taxes cannot be removed
by the appeals board.  For PERSONAL PROPERTY, indicate whether you are appealing an item, category, or class of property or
portion thereof.  If you are appealing only an item, category, or class of property, please attach a separate sheet identifying what
property will be the subject of this appeal.  APPEAL AFTER AN AUDIT must include a complete description of each property
being appealed, your opinion of value for each property, and the reason for the appeal.  Contact our office to determine what
documents must be submitted.  If you do not submit the required information timely, it will result in the denial of your application.

7.   Written findings of fact are explanations of the Board's decision and will be necessary if you intend to seek judicial review of an
adverse Board decision.  Findings must be requested in writing at any time prior to the commencement of the hearing.  Requests
for a tape recording must be made no later than 60 days after the final determination by the Board.  Contact our office to
determine the fee for these items; do not send payment with your application.  *Please note* neither findings of fact nor taped
recordings are available for Hearing Officer hearings.

8.   Indicate whether you want to designate this application as a claim for refund.  If action in superior court is anticipated, designating
this application as a claim for refund may affect the time period in which you can file suit.  *NOTE*:  If for any reason you decide to
withdraw this application, that action will also constitute withdrawal of your claim for refund.

9.   Either a Hearing Officer or a Board Hearing **must** be selected.  If the subject property is a single family dwelling, condo,
cooperative, or a multiple-family dwelling of four units or less, you may request that your hearing be conducted by an Assessment
Hearing Officer (there are no hearing fees required for the Hearing Officer).  All appeals not heard by a hearing officer will be
heard by the Board and all applicable hearing fees will apply.  If you select the Hearing Officer, you must *bring 3 sets of
supporting documents* to the hearing.  For Board hearings, you are required to *bring 6 sets of supporting documents.*

If the assessed value of the property exceeds $100,000, the Assessor may initiate an "exchange of information" (Revenue and Taxation
Code Section 1606).  You may also request an "exchange of information" between yourself and the Assessor, regardless of the
assessed value of the property.  Such a request must be filed with this application or may be filed any time prior to 30 days before the
commencement of the hearing on this application.  The request must contain the basis of your opinion of value.  Please include
comparable sales, cost, and income data where appropriate to support the value.  Comparable sale information can be obtained from
local real estate agents, appraisers, and mortgage brokers.  When obtaining comparable information, be sure that the sale information is
appropriate for your property's valuation date.

**Original signatures are required** for each application.  Check the box that best describes your status as the person filing this
application.

**RETURN EACH COMPLETED APPLICATION *WITH A $30 FILING FEE TO*:**
**Assessment Appeals Board, City Hall, Room 405**
**#1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102-4697**
Telephone inquires may be directed to (415) 554-6778,  TDD (415) 554-5227