```
                   UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF VIRGINIA

IN RE:                         .    Case No. 08-35653(KRH)
                               .
                               .
CIRCUIT CITY STORES,           .    701 East Broad Street
INC.,                          .    Richmond, VA 23219
                               .
          Debtor.              .
                               .    February 13, 2009
. . . . . . . . . . . . . ..        11:57 a.m.



           TRANSCRIPT OF EXCERPTED PORTION OF MOTION HEARING
                         AGENDA ITEM 30 ONLY
                  BEFORE HONORABLE KEVIN R. HUENNEKENS
                  UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Debtor:            Skadden, Arps, Slate, Meagher
                             & Flom, LLP
                           By:  GREGG M. GALARDI, ESQ.
                           One Rodney Square
                           P.O. Box 636
                           Wilmington, DE 19899-0636

For the Creditors:         Kelley, Drye & Warren, LLP
                           By:  Robert L. LeHane, ESQ.
                           101 Park Avenue
                           New York, NY 10178




Audio Operator:            Gail Fathergill


  Proceedings recorded by electronic sound recording, transcript
                  produced by transcription service.
```
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609)586-2311      Fax No. (609)587-3599**

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For the Creditors: | Allen, Matkins, Leck, Gamble, Mallory & Natsis, LLP<br>By:  IVAN M. GOLD, ESQ.<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111-4074 |
| For T.J. Maxx: | Sands Anderson<br>By:  WILLIAM GRAY, ESQ.<br>P.O. Box 1998<br>Richmond, VA 23218-1998 |
| For 13630 Victory Boulevard, LLC: | Arent Fox<br>By:  CAROLINE T. ENGLISH, ESQ.<br>1050 Connecticut Avenue, NW<br>Washington, DC 20036-5339 |
| For TSA Stores: | Goldman & Van Beek, P.C.<br>By:  BEAU BERTHELOT, ESQ.<br>510 King Street, Suite 416<br>Alexandria, VA 22314 |
| For AmREIT: | Kaplan & Frank, PLC<br>By:  TROY SAVENKO, ESQ.<br>7 East 2nd Street<br>Richmond, VA 23224 |
| For the Creditors: | Dilworth Paxson<br>By:  JESSE N. SILVERMAN, ESQ.<br>1500 Market Street, 3500E<br>Philadelphia, PA 19102 |

---

1    (The following is the requested excerpted portion of the
2                          proceedings)
3         MR. GALARDI:  Good afternoon, Your Honor.
4         THE COURT:  Good afternoon.
5         MR. GALARDI:  For the record, Gregg Galardi on behalf
6    of the debtors.  Your Honor, we had -- while Your Honor was
7    conducting the hearing, and I know we were a little too noisy,
8    so I apologize for that -- we met with the landlords, and I
9    believe we have resolved all of the issues with respect to the
10   lease procedures.  I will read in the modifications that we
11   will then embody in an order and submit to Your Honor.
12        Your Honor, we had asked for a number of dates when
13   we filed this motion.  I guess the good news to report to Your
14   Honor is the going-out-of-business sales are going much faster
15   and better than we had originally thought would happen with
16   this motion, so the bad news is that we may be out of leases
17   sooner and need auction procedures on a much more expedited
18   basis.  We expressed those concerns and the landlords have --
19   who are here today, worked with us on a particular schedule
20   given what Your Honor has offered us as court dates.
21        So, I'll start with what our general procedure would
22   be, and we've advised DJM who is our lease auctioner of this --
23   these procedures, which I think satisfies the landlords,
24   although it's never particularly endorsed they will live with
25   the following.

1           Your Honor, we start backwards.  Your Honor has a
2  March 13th date available for us.  I think we have asked for
3  that.  If we could have a sale hearing with respect to leases
4  that we do, in fact, get bids on for the March 13th, we would
5  start with that date as the general procedure.  Right now, Your
6  Honor, we have 45 leases that we have advised parties that
7  might be subject to procedures.  Today we are going to file a
8  motion rejecting 42 of those, so there's really only three that
9  we know today may have bids.  We'll talk about that, but that
10 leaves roughly 540 properties.

11          So, our idea is to file a motion -- to file under
12 these procedures, to set a sale hearing for any of those
13 leases, the 540 that we do get bids on for the 13th of March.
14 What we did then was back, back from that date to a suggested
15 auction date of March 10th with respect to any properties that
16 we get bids on, and we are asking that all bids for all of
17 those properties -- and again, I'm referring to the 540 that
18 have not yet been noticed out -- all bids for those properties
19 to be received by 4 p.m. on March 5th, which is a Thursday.

20          What we then agreed with the landlords to do is that
21 upon receipt of those bids which require the production by the
22 bidder of adequate protection -- adequate assurance
23 information, we would then turn over with respect to the
24 landlords on those properties after that 4 p.m. deadline so
25 they could get it on the 6th, which is a Friday, a business

1  day, the adequate assurance information that we have, in fact,
2  received from the bidders.  The idea then being is by the 6th
3  they would have it, at the very latest, to review with their
4  clients, which gives them the full week, seven days, to
5  determine whether or not they want to object to adequate
6  assurance on the hearing on the 13th.
7           That'll be our standard for every one of the leases.
8  We also agreed that once we get a bid on the property on the
9  5th, that by noon on the following day, which is the 6th, we
10 would then post on a website the cure amount that we would
11 associate with those leases that we believe are being bid upon
12 so that way we don't have to put out 500 cure amounts only to
13 have landlords object to that.  We would prefer to just wait
14 'til we get the bids and then, they would have the right to
15 object to the curers, the adequate assurance or any other
16 matters that they see fit.
17          Your Honor, again, this goes to Your Honor's
18 schedule.  The debtors have no objection for them to raise
19 objections up to the commencement of the hearing.  We're not
20 concerned about that.  But, we strongly would advise that they
21 do so in writing if they wanted to put something in front of
22 Your Honor.  I don't know if that's acceptable to Your Honor.
23 But, given this time frame, we were comfortable that if we're
24 going to have a contested sale hearing on the 13th that we saw
25 it as not inappropriate for us to say, bring your objections

1  in, we'll deal with them as we've done in this court before.
2  Again, it's really if Your Honor wants a writing, it would be
3  up to Your Honor, and we've suggested that any landlord put a
4  writing.
5       We would think that at the conclusion of the auction
6  on the 10th, they may be very able to write an objection on the
7  11th, or a preliminary objection or whatever they see fit.
8  But, we have no objection to letting them file or come in and
9  object on the 13th, but we defer to Your Honor on whether
10 you're prepared to do that.
11       THE COURT: That would be acceptable to the Court. I
12 prefer to have things in writing. I do read or try to read
13 everything that -- on these hearings and that helped to be
14 prepared. So, it would be beneficial if they get it in, but
15 not required.
16       MR. GALARDI: Right. And, Your Honor, if this was a
17 different environment with the 540, we would have said we might
18 have had five hundred and forty. It think the estimate is
19 probably 50 of those will be sold. So, I think we were just
20 balancing the realty of the circumstance, obviously. With
21 that, would be our standard procedure, Your Honor, as you may
22 also recall.
23       So, then we had the concern of, we are in the month
24 of February, and as I mentioned the store-closing sales are
25 going quicker than, perhaps, originally anticipated. Under the

1  agency agreement, landlords can give us up to ten-days notice
2  of an intent to terminate from a lease.  They also have a
3  requirement that if they're in for a day and a month, they're
4  in for seven.  With that sort of knowledge, what we suggested
5  to the landlords is, by our calculation, we could get a notice
6  as late as February 18th of additional properties to the 45
7  already out there, that the agency agreement may allow to be
8  put back to us by the end of February.
9           To give you an idea of the scope of the daily rent,
10 our rough calculation is, it's roughly $850,000 a day for rent.
11 So, we had an urgency to be able to vacate the premises within
12 that ten-day period.  So, what we agreed with the landlords is
13 that although the standard date for bids will be that March 5th
14 date, when we receive a notice from the agent, if we do receive
15 a notice, that they're going to be out by the end of February.
16          We would then -- and that really goes to between now
17 and February 18th -- those properties we would notify the
18 landlords and we would notify bidders, which we've already --
19 DJM has already done to the extent they've been talking to the
20 bidders, of a bid deadline of February 24th, an auction of
21 February 26th, those dates strategically taken so that if we
22 didn't have any bids, we could vacate the premises by the end
23 of February and not pay March rent, and come back and use Your
24 Honor's March 3rd date for a sale hearing.
25          And the landlords agreed to that.  Again, that's a

1  little bit even shorter on adequate assurance.  Given the
2  shortness of time of the adequate assurance fights that we
3  could have, then we agreed that all parties' rights, the
4  landlords' rights to raise that the notice is just too short at
5  the sale hearing and that they need more time is preserved, and
6  my right to try to go forward is preserved, but hopefully,
7  we'll consensually resolve that.  And that would apply both at
8  the March 13th date, as well as the March 3rd date, but so far
9  we've been able to resolve most issues with the landlords.  So,
10 we feel comfortable with that schedule.

11          Your Honor, as I mentioned already, both with respect
12 to the bid date of March 5th and the bid date of February 24th,
13 the obligation will be the same to distribute whatever adequate
14 assurance information we receive with the bid to the landlords
15 on that evening.  Both bid deadlines will be 4 p.m., so we
16 still have an hour of the business date, plus a little time,
17 and both of those fall on the next day, would be a business
18 day, so we think we can get the landlords the information, so
19 they can discuss it with their client on a business day.

20          Additionally, both with respect to both bid
21 deadlines, we would have a noon deadline the following day so
22 either March 6th or February 25th to post cures with respect to
23 any bids that we do receive so that landlords and other parties
24 can decide what the cure amounts and whether to object to those
25 grounds -- on those grounds.

1          Your Honor, we've also agreed there's been something
2  in the papers, and we've agreed that the minimum bid for any
3  property, whether it be by a landlord or it be by a third party
4  will be the cure amount of a lease, as determined by the Court,
5  not necessarily what's in our piece of paper, because there may
6  be additional causes -- claims that the landlords may have for
7  cure, but a minimum bid for both landlords wanting to bid by
8  the bid deadline and third parties will be the cure amount as
9  ultimately determined by the Court.  And we would think that we
10 should receive bids in excess of that, but that was a landlord
11 issue.
12         Your Honor, we are not going to put into the bid
13 procedures that landlords could show up at the auction and make
14 defensive bids, but we understand our fiduciary obligation that
15 if they do and they put more money than a minimum cure bid, we
16 will, obviously, consider it at the auction.  But, we're not
17 going to insist that they can absolutely have a defensive bid.
18 Landlords will be entitled to appear at the auction on the
19 dates with respect to their properties.  And they can decide
20 whether they'd want to bid at that point, and we will, in the
21 fiduciary obligation and consultation with the committee,
22 determine whether we would want to accept a bid at that point.
23 But, if we're talking cash, cash is usually a good reason to
24 exercise your fiduciary out.
25         Your Honor, with respect to the cure amounts, what

1  we've also agreed is if we get to that sale hearing, that the
2  first sale hearing will be a scheduling conference with respect
3  to disputed cure amounts.  If we say it's X, and they say it's
4  X plus ten, we'll set that for hearing on the disputed amount,
5  but the idea would be that upon assumption and assignment,
6  undisputed cure amounts would be paid over to the landlords.
7           Your Honor, although we've asked sort of a -- we may
8  have asked in our motion, or did ask in our motion, for a
9  determination now that the ten-day stay period be waived, we
10 would -- we're not asking for that now, we would take that
11 issue up when we have a sale hearing.
12          Your Honor, I will quote what I was asked to say.  I
13 am not asking to proceed with backup bidders at this time, so
14 we'll deal with that at a sale hearing, should we do it after
15 consultation, so the order that we will put in doesn't say that
16 we can hold a second bidder out there.  Landlords were
17 concerned about showing up adequate assurance on two bidders
18 and how we do that.  In this instance, we will for now, just
19 take that out, we're not seeking to do that.
20          Your Honor, to facilitate, our bar date notice went
21 out without the landlords having to file rejection damage
22 claims, or they had to file a 30 -- we've talked about whether
23 it's 30 days after the effective date of rejection or some
24 other time.  What we've agreed to is that the bar date for
25 landlords subject to this motion, which is essentially that 576

1  properties will be one single bar date of April 30th, 2009 to
2  file proofs of claim for rejection damages.  We think this
3  whole process will be done by March 31st, which is the sale
4  closing date on the agency agreement.  We're running the
5  auctions, so all of the lease determinations, assumptions and
6  rejections should be done at least 30 days prior to that period
7  of time.  The landlords agreed that that would be an acceptable
8  date.

9          Your Honor, with respect to the rejection, we've also
10 agreed to use commercially reasonable efforts to give them a
11 data that oftentimes they need or wish to have as soon as the
12 lease is rejected.  Again, we are not saying that this is a
13 condition for us to come in and say that the property has been
14 surrendered, but that we would try to cooperate.

15         For example, the utility account numbers, the
16 security account, you know, the locksmith, the lock numbers.
17 To give a sheet of paper, I guess, it's a data sheet or a
18 spreadsheet of that kind of information to the extent we can
19 assemble it and give it at the time of rejection -- and
20 obviously, the further our rejection is, the better we'll be at
21 this -- but, to the extent we can get that, we intend to
22 include it in that notice of rejection that we have as a
23 five-day notice.

24         But, again, that cannot be used against us to say we
25 didn't surrender for failure to give all that information.  We

1 can have those disputes. I'm not trying to prejudice their
2 case. But, we did agree that we would try to cooperate and
3 provide them with that information. If I think I have -- that
4 resolves all of the objections. My understanding is to the
5 lease sale and rejection procedures, Your Honor, we would
6 modify the order, and I don't know if there's a landlord
7 counsel that needed a further clarification, but I thought --
8        THE COURT:  All right.  Any party wish to be heard?
9        MR. LeHANE:  Good afternoon, Your Honor, Robert
10 LeHane, Kelley, Drye and Warren, counsel for approximately 80
11 locations, developers, (indiscernible) and several other
12 landlords. As you can tell from Mr. Galardi's list, we
13 accomplished a great deal, and we really are grateful for the
14 Court's time, grateful for Mr. Galardi's cooperation and the
15 debtor in working through a variety of these issues that were
16 all addressed in the various landlord objections that were
17 filed.
18        I also apologize if any of the noise from our
19 discussions bled out into the courtroom, but it was very
20 productive time, well spent.
21        A few very minor points that are on the rejection
22 notice that we discussed, the rejection notice that was
23 attached to the order included some language to the effect that
24 landlords would not be entitled to claims under 503(b) with
25 respect to abandoned property. We're not asserting that they

1  are or are not, but the debtor has agreed to strike that
2  language from the rejection notice.
3      There was also some language with respect to the
4  extent to which property is abandoned and the landlords may
5  dispose of that limiting the right to do so with respect to
6  only parties that had received notices.  We were going to
7  clarify that to, if there's property in the premises, it's
8  abandoned, landlords can disclose of it free and clear of
9  liability to any third parties, whatsoever.  And those were the
10 very slight modifications to the rejection notices that I
11 believe were not put on the record.
12      Again, thank you to the Court for -- and to
13 Mr. Galardi for his efforts working these out.  We understand
14 that there is a great deal at stake in minimizing the expenses
15 to the estate, and that the timing with respect to when these
16 properties would be coming back from the liquidators has moved
17 around, and we believe this is probably the best possible
18 schedule for all parties.  Thank you.
19      THE COURT:  Thank you.
20      MR. GALARDI:  And Mr. LeHane's comments on the
21 notice, we did agree to that, for the record, Your Honor.
22      THE COURT:  All right.  Thank you, Mr. Galardi.
23      MR. GOLD:  Your Honor, Ivan Gold for a number of
24 landlords.  Mine are all located in California.  I'd just like
25 to join in Mr. LeHane's comments, but in particularly, the only

1  reason I rise is to thank Mr. Galardi for his flexibility this
2  morning.  We have a lot of issues to work out, bit of a moving
3  target caused by the liquidators' acceleration of the schedule,
4  and again, while this schedule's not perfect, I think, for any
5  party, and we will have to stay flexible and continue to engage
6  each other, it does represent, you know, our best efforts to be
7  able to put something together.  And I thank the Court for the
8  time and the brief, perhaps the noisy imposition, but we did
9  get a lot done and covered a lot of mileage this morning.
10 Thank you.
11         THE COURT:  Thank you, Mr. Gold.
12         MR. GRAY:  Good afternoon, Your Honor, William Gray
13 for a number of landlord clients.  I speak here, now, for T.J.
14 Maxx, which is a subtenant, and I think one issue that
15 Mr. Galardi forgot is that the motion seeks to a sale free and
16 clear of all liens or interests.  He's agreed that any
17 subtenant interest would be reserved for the final hearing.
18 Any interest on the ability to sale free and clear of that
19 interest or we believe adequate protection of that interest.
20         THE COURT:  All right.
21         MR. GALARDI:  And that's correct, Your Honor.  Our
22 simple idea is either that sublease will be rejected on the
23 date of the assignment or they'll be able to assert some sort
24 of interest and property, and we'll deal with that at the sale
25 hearing.

1            THE COURT:  Very good.  Thank you, Mr. Gray.
2            MS. ENGLISH:  Hello, Your Honor, my name is Caroline
3  English.  I'm with Arent Fox, and we represent 13630 Victory
4  Boulevard, LLC.  I have nothing substantive.  I just wanted to
5  note my appearance.  We filed our objection late yesterday and
6  didn't get on the agenda.
7            THE COURT:  All right.  Thank you.
8            MS. ENGLISH:  Thank you.
9            MR. BERTHELOT:  Good afternoon, Your Honor, Beau
10 Berthelot on behalf of TSA Stores.  I have nothing substantive,
11 just to note my appearance for the record and that we reserve
12 the rights as stated by Mr. Gray.
13           THE COURT:  All right.  Thank you.
14           MR. BERTHELOT:  Thank you, Your Honor.
15           MR. SAVENKO:  Good afternoon, Your Honor, Troy
16 Savenko on behalf of AmREIT, a Texas real estate investment
17 trust.  Same thing.  Just wanted to note my appearance for the
18 record, as my client came in late last night, and we just filed
19 a joinder to the objections, but the resolutions are
20 acceptable.  Thank you.
21           THE COURT:  Okay, very good.  Thank you.
22           MR. SILVERMAN:  Your Honor, Jesse Silverman for the
23 Mesurage (phonetic) Company and other landlords.  We filed an
24 objection, and I just wanted to note my appearance for the
25 record, and also to preserve our objections raised as to

1  adequate assurance and some other issues that will come up in
2  the context of an actual sale of any of these leases.
3           THE COURT: All right. Thank you. Mr. Galardi, you
4  obviously did a very good job of reciting everything that you
5  all had agreed to, and I applaud your good work in getting all
6  of these issues resolved.
7           MR. GALARDI: Thank you, Your Honor. What we would
8  intend to do is modify the notice, let Mr. LeHane say that,
9  modify the order, circulate it -- again, two members of the
10 cabal are here -- to the parties and submit the order as soon
11 as possible to proceed on that schedule.
12          THE COURT: All right. Very good. How quickly do
13 you need -- do you need that order in today?
14          MR. GALARDI: I think the dates are already fixed in
15 the process for DJM, and so I think we're okay if it gets --
16 Monday, I guess, is a holiday, so Tuesday if we can get it to
17 Your Honor before then, that's fine, I think I'm back here
18 Tuesday anyway on a DIP motion, so we'll have it to you by
19 Tuesday. If I can do it by the end of this afternoon, that's
20 fine, but I think people are trying to catch flights again.
21          THE COURT: All right. Very good. Is there any
22 other business we need to take up today?
23          UNIDENTIFIED ATTORNEY: Not that I know.
24          THE COURT: Thank you.
25          ATTORNEYS: Thank you.

1    COURTROOM DEPUTY:  All rise.  The court is now
2 adjourned.
3              * * * * *
4         **C E R T I F I C A T I O N**
5    I, FELICIA HUTH, court approved transcriber,
6 certify that the foregoing is a correct transcript from
7 the official electronic sound recording of the proceedings
8 in the above-entitled matter, and to the best of my
9 ability.
10
11 /s/ Felicia Huth
12 FELICIA HUTH
13 J&J COURT TRANSCRIBERS, INC.   DATE:  December 1, 2011
14
15
16
17
18
19
20
21
22
23
24
25