LIBER 3998 FG 198

447

Loan #: 99-9000004

129347/CGW

97 JAN -3 PM 3: 25


## BOND-CIRCUIT VII DELAWARE BUSINESS TRUST
### as Assignor

to

## LEGG MASON REAL ESTATE SERVICES, INC.
### as Assignee

## ASSIGNMENT OF LEASE AND RENTS

Dated as of December 30, 1996

PREPARED BY AND UPON RECORDATION RETURN TO:
Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn: Vaughan K. Weikel, Esq.



EXHIBIT
A

VKW089-7.ALR
December 22, 1996

ALR VII - Kent, MI

ASSIGNMENT OF LEASE AND RENTS (herein, together with all modifications, supplements and amendments hereto, called this "**Assignment**"), dated as of December 30, 1996 made by BOND-CIRCUIT VII DELAWARE BUSINESS TRUST, a Delaware business trust, having an address for notice at c/o Bond-Circuit L.P., 2901 Butterfield Road, Oak Brook, Illinois 60521 ("**Assignor**") to LEGG MASON REAL ESTATE SERVICES, INC., a Pennsylvania corporation maintaining an office at Mellon Bank Center, 1735 Market Street, 12th Floor, Philadelphia, Pennsylvania 19103 ("**Assignee**").

### W I T N E S S E T H :

WHEREAS, Assignor and Circuit City Stores, Inc. ("**Lessee**") are parties to that certain Lease, dated as of December 30, 1996 (herein, as it may from time to time be modified, supplemented or amended, is called the "**Lease**") covering the lands and premises more particularly described in Schedule A and all buildings and other improvements now or hereafter located thereon (collectively, the "**Premises**"); and

WHEREAS, simultaneously with the execution and delivery of this Assignment, Assignee is making a mortgage loan to Assignor in the principal amount of $5,783,589.53 (the "**Loan**") as evidenced by a Mortgage Note dated as of the date hereof by Assignor to Assignee (the "**Note**") and secured by a Mortgage, of even date herewith by Assignor to Assignee, covering the Premises (the "**Mortgage**"); and

WHEREAS, Assignor has agreed to execute and deliver this Assignment for the purpose of securing the following (collectively, the "**Obligations**"):  (i) the payment of the principal of, interest on, premium (if any) and all other amounts payable in respect of the Note and the Mortgage and (ii) the performance of the covenants and agreements contained herein and in the Note and the Mortgage;

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    Assignor, as security for the Obligations, has absolutely assigned, transferred, conveyed and set over, and by these presents does hereby presently, unconditionally and irrevocably assign, transfer, convey and set over to Assignee, all of Assignor's estate, right, title and interest in, to and under the Lease, together with all rights, powers, privileges, options and other benefits of Assignor, as the lessor under the Lease, including, without limitation, the immediate and continuing right:

LIBER 3 9 9 8 PG  2 0 0

(a)    to make claim for, receive and collect (and to apply the same to the payment of the Obligations) all rents (including all basic rent and additional rent), income, revenues, issues, profits, insurance proceeds, condemnation proceeds, moneys, security deposits, and damages payable or receivable under the Lease or pursuant to any of the provisions thereof (such rents, income, revenues, issues, profits, proceeds, moneys, security deposits or damages, collectively, the "Rents");

(b)    to accept any offer regarding any condemnation proceeds or insurance proceeds payable in connection with a loss or destruction thereof;

(c)    to make all waivers and agreements of any kind and make any appointments of appraisers or other determinations of any kind; and

(d)    to give all notices, consents, approvals, releases and other instruments.

1.A.    Assignee hereby grants to Assignor a revocable license to exercise any and all rights of landlord under the Lease with respect to the Mortgaged Property (including those set forth in subparagraphs (b) (c) and (d) of paragraph 1 above) in order to enable Assignor to take all actions necessary for the proper management and operation of the Mortgaged Property except for (i) the right to make claim for, receive, collect and receipt for any Rents, insurance proceeds, condemnation awards,  and any other sums payable or receivable under the Lease or pursuant thereto, whether denominated as rent, other expenses, other payments or as the purchase price of the Mortgaged Property or any portion thereof or otherwise, or any proceeds from any of the above, (ii) the right to take any action upon the happening of a default under the Lease, including, without limitation, the commencement, conduct and consummation of proceedings at law or in equity, or (iii) the right to appear in any proceeding, claim, suit or action in connection with the rejection of the Lease, or the right to file or prosecute any claim for damages arising from the rejection of the Lease under the Bankruptcy Code, without having first obtained Assignee's prior written consent to do any of the foregoing. Notwithstanding anything herein to the contrary, (i) in no event shall Assignor be permitted to amend or modify the terms of the Lease without the prior written consent of Assignee, (ii) in no event shall Assignor, without the prior written consent of Assignee, in the exercise of any rights under the Lease or otherwise, take any action in connection with the management and operation of the property which would (a) have a material adverse effect on the rights and benefits of the landlord under the Lease, (b) in any way affect the Rents payable, or any other amount payable, or the term under, the Lease, or (c) in any way reduce the obligations of Tenant under the Lease, and (iii) in no event shall Assignor be permitted to take any action which, under any provision of the Lease, the Mortgage or any Other Security Documents, requires the consent, approval or joinder by Assignee, without first obtaining the consent, approval or joinder of Assignee required by such provision.  Upon or at any time after the occurrence of an Event of Default (as defined in the Mortgage), the license granted to Assignor herein may be revoked by Assignee.

2.    The rights provided the Assignee by this Assignment of Lease and Rents are primary and not secondary and are of equal parity to and arise and exist separately and independently of the Assignee's rights as mortgagee under the Mortgage.  The assignment made

LIBER 3908 PG 201

hereby is neither collateral nor for additional security.  This Assignment and the execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the Lease, nor shall any of the obligations contained in the Lease be imposed upon Assignee.  Upon the payment of the Obligations, this Assignment and all rights herein assigned to Assignee shall cease and terminate and all estate, right, title and interest of Assignor in and to the Lease shall revert to Assignor, and Assignee shall, at the request and at the expense of Assignor, deliver to Assignor an instrument in recordable form canceling this Assignment and reassigning the Lease without recourse, representation or warranty, to Assignor.

3.    Assignor hereby presently, unconditionally and irrevocably designates Assignee to receive, and directs Lessee to pay to Assignee, all payments, payable or receivable under the Lease (including, without limitation, all payments of basic rent and additional rent, and other sums payable to the lessor under the Lease) and no such payment by Lessee under the Lease shall be effective to discharge the obligation of Lessee under the Lease to make such payment unless made to Assignee in accordance with such designation and direction.  All such payments shall be applied as provided in the Mortgage.  Assignor hereby designates Assignee to receive duplicate original copies of all notices, undertakings, demands, statements, offers, documents and other instruments and communications which Lessee is or may be required or permitted to give, make, deliver to or serve upon Assignor under the Lease.  Assignor shall direct Lessee to deliver to Assignee, at its address set forth below or at such other address as Assignee shall designate, duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications and no delivery thereof by Lessee shall be of any force or effect unless made to Assignee and Assignor.

4.    Assignor represents and warrants to Assignee that (a) the Lease is in full force and effect and no default by Assignor, and to Assignor's knowledge no default by Tenant, exists thereunder; (b) Assignor is the sole owner of the entire lessor's interest in the Lease; (c) Assignor has delivered to Assignee a true, correct and complete copy of the Lease as amended to the date hereof; (d) Assignor has full power and authority to execute and deliver this Assignment; (e) Assignor has not executed any other assignment of the subject matter of this Assignment, except in connection with construction financing repaid with proceeds of the Loan; (f) none of the Rents reserved in the Lease have been assigned or otherwise pledged or hypothecated; (g) none of the Rents have been collected for more than one (1) month in advance; and (h) to Assignor's knowledge there exist no offsets or defenses to the payment of any portion of the Rents.

5.    Assignor shall not take any action as the lessor under the Lease or otherwise which is inconsistent with this Assignment, or make any other assignment, designation or direction inconsistent therewith, and any assignment, designation or direction inconsistent therewith shall be void.  Assignor shall, from time to time upon the request of Assignee, execute all instruments of further assurance and all such supplemental instruments with respect to the transactions contemplated hereby as Assignee may specify.

6.    Assignor further agrees with Assignee that Assignor (a) shall observe and perform all the obligations imposed upon the lessor under the Lease and shall not do or permit to be done anything to impair the value of the Lease as security for the Obligations; (b) shall promptly send

copies to Assignee of all notices of default which Assignor shall send or receive thereunder;
(c) shall enforce all of the terms, covenants and conditions contained in the Lease upon the part
of the Lessee thereunder to be observed or performed, short of termination thereof; (d) shall not
execute any other assignment of lessor's interest in the Lease (except as part of a mortgage
expressly permitted pursuant to paragraph 9(g) of the Mortgage and subject to all terms,
conditions and restrictions applicable to such a mortgage); (e) shall not alter, modify or change
the terms of the Lease without the prior consent of Assignee, or cancel or terminate the Lease or
accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of
the Premises or of any interest therein so as to effect a merger of the estates and rights of, or
termination or diminution of the obligations of Lessee thereunder; (f) shall not alter, modify or
change the terms of any guaranty of the Lease or cancel or terminate any such guaranty without
the prior consent of Assignee; and (g) shall not consent to any assignment of or subletting under
the Lease not in accordance with the Lease terms, without the prior consent of Assignee.

7.      Upon or at any time after an Event of Default (as defined in the Mortgage),
Assignee may, at its option, without waiving such Event of Default, without notice and without
regard to the adequacy of the security for the Debt, either in person or by agent or servicer, with
or without bringing any action or proceeding, or by a receiver appointed by a court, enforce its
interest in the Lease and Rents and take possession of the Mortgaged Property (as defined in the
Mortgage) and have, hold, manage, lease and operate the Mortgaged Property on such terms and
for such period of time as Assignee may deem proper and either with or without taking possession
of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all
Rents, including those past due and unpaid with full power to make from time to time all
alterations, renovations, repairs or replacements thereto or thereof as may seem proper to
Assignee and may apply the Rents to the payment of the following in such order and proportion
as Assignee in its sole discretion may determine, any law, custom or use to the contrary
notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including,
without being limited thereto, the salaries, fees and wages of a managing agent and such other
employees or agents as Assignee may deem necessary or desirable and all expenses of operating
and maintaining the Mortgaged Property, including, without being limited thereto, all taxes,
charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for
all insurance which Assignee may deem necessary or desirable, and the cost of all alterations,
renovations, repairs or replacements, and all expenses incident to taking and retaining possession
of the Mortgaged Property; and (b) the Debt, together with all costs and attorneys' fees. For
purposes of this paragraph, Assignor grants to Assignee and the designee of Assignee its
irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned
actions and any or all other actions designated by Assignee for the proper management and
preservation of the Mortgaged Property.  The exercise by Assignee of the option granted it in this
paragraph and the collection of the Rents and the application thereof as herein provided shall not
be considered a waiver of any default by Assignor under the Note, the Mortgage, the Lease, this
Assignment or the Other Security Documents (as defined in the Mortgage).

8.      Assignee shall not be liable for any loss sustained by Assignor resulting from
Assignee's failure to let the Mortgaged Property after an Event of Default or from any other act
or omission of Assignee in managing the Mortgaged Property after default unless such loss is

LIBER 3988 PG 203

caused by the willful misconduct or gross negligence of Assignee.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease.  Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Mortgage and the Other Security Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby, the Note, the Mortgage and the Other Security Documents immediately due and payable.  This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgaged Property by the Lessee or any other parties, or for any dangerous or defective condition of the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

9.    Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

10.    Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

11.    Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Assignee.  In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

12.    Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Assignee" shall mean "Assignee and any subsequent holder of the Note," the word "Note" shall mean "the Note

LIBER 3988 PG 204

and any other evidence of indebtedness secured by the Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Mortgage and all other sums due pursuant to the Note, the Mortgage, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

13.     The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Mortgage, the Note or the Other Security Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the Other Security Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

14.     [Reserved]

15.     If any term or provision of this Assignment or any application hereof shall be invalid or unenforceable, the remainder of this Assignment and any other application of such term or provision shall not be affected thereby.

16.     Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Assignment, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

To Assignee:

At its address shown on
the first page of this Assignment

LIBER 3988 PG 205

with a copy concurrently to:

Eastwick Rose & Wright, P.A.
201 North Charles Street, Suite 2100
Baltimore, Maryland 21201-4190
Attn:  Vaughan K. Weikel, Esquire

<u>To Assignor</u>:

At its address shown on
the first page of this Assignment

with a copy concurrently to:

Bond-Circuit L.P.
2901 Butterfield Road
Oak Brook, Illinois 60521
Attn:  Joseph P. Cosenza

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, or (iii) if sent by certified mail, three (3) days after such notice has been sent by Assignor or Assignee.

17.    This Assignment cannot be modified, changed or discharged except by an agreement in writing, duly acknowledged in form for recording, signed by the party against whom enforcement of such modification, change or discharge is sought.

18.    This Assignment shall bind and inure to the benefit of the parties hereto and their respective successors and assigns and shall run with the Premises.

19.    This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

20.    This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

VKW00061.3
December 23, 1996 (1)

LIBER 3988 PG 206

21.    IT IS EXPRESSLY UNDERSTOOD AND AGREED BY ASSIGNOR AND
ASSIGNEE THAT (A) THIS INSTRUMENT IS EXECUTED AND DELIVERED BY
WILMINGTON TRUST COMPANY, NOT INDIVIDUALLY OR PERSONALLY BUT
SOLELY AS CO-TRUSTEE OF ASSIGNOR, A DELAWARE BUSINESS TRUST (THE
"TRUST"), IN THE EXERCISE OF THE POWER AND AUTHORITY CONFERRED AND
VESTED IN IT; (B) EACH OF THE REPRESENTATIONS, UNDERTAKINGS AND
AGREEMENTS HEREIN MADE ON THE PART OF THE TRUST IS MADE AND
INTENDED NOT AS PERSONAL REPRESENTATIONS, UNDERTAKINGS AND
AGREEMENTS BY WILMINGTON TRUST COMPANY AND WILLIAM J. WADE,
INDIVIDUALLY OR PERSONALLY, TO PERFORM ANY COVENANT, EITHER
EXPRESSED OR IMPLIED, CONTAINED HEREIN, ALL SUCH LIABILITY, IF ANY,
BEING EXPRESSLY WAIVED BY ASSIGNEE AND BY ANY OTHER PERSON
CLAIMING BY, THROUGH OR UNDER THIS INSTRUMENT; AND (C) UNDER NO
CIRCUMSTANCES SHALL WILMINGTON TRUST COMPANY AND WILLIAM J.
WADE BE PERSONALLY LIABLE FOR THE PAYMENT OF ANY INDEBTEDNESS OR
EXPENSES OF THE TRUST OR BE LIABLE FOR THE BREACH OR FAILURE OF ANY
OBLIGATION, REPRESENTATION, WARRANTY OR COVENANT MADE OR
UNDERTAKEN BY THE TRUST UNDER THIS INSTRUMENT OR OTHER RELATED
DOCUMENTS.

LIBER 3988 PG 207

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed and delivered under seal as of the date first above written.

WITNESS/ATTEST:                    ASSIGNOR:

                                   BOND-CIRCUIT VII DELAWARE BUSINESS
                                   TRUST, a Delaware business trust

                                   By:     Wilmington Trust Company, not in its
                                           individual capacity, but solely as co-trustee

                                   By: _____ (SEAL)
                                   Name:    JOHN M. BEESON, JR.
                                   Title:_____ · Vice President_____
                                   1100 North Market Street
                                   Wilmington, Delaware 19890

                                   By:     William J. Wade, not in his individual
                                           capacity, but solely as co-trustee

                                   _____ (SEAL)
                                        William J. Wade
                                        1100 North Market Street
                                        Wilmington, Delaware 19890

VKW089-7.ALR                                              ALR VII - Kent, MI
December 22, 1996

LIBER 3988 PG 208

# ACKNOWLEDGMENTS

STATE OF MARYLAND

CITY OF BALTIMORE

)ss.

27ᵗʰ The foregoing instrument was acknowledged before me this day of December, 1996, by _John M. Beeson Jr_ , the _Vice President_ of Wilmington Trust Company, a Delaware banking corporation, co-trustee of Bond-Circuit VII Delaware Business Trust, a Delaware Business Trust.

_Joyce Ann Long_
, Notary Public

Baltimore, Maryland
My Commission Expires:

JOYCE ANN LONG
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires June 1, 2000

STATE OF MARYLAND

CITY OF BALTIMORE

)ss.

27ᵗʰ The foregoing instrument was acknowledged before me this day of December, 1996, by William J. Wade, co-trustee of Bond-Circuit VII Delaware Business Trust, a Delaware Business Trust.

_Joyce Ann Long_
, Notary Public

Baltimore, Maryland
My Commission Expires:

JOYCE ANN LONG
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires June 1, 2000

VKW089-7.ALR
December 22, 1996

ALR VII - Kent, MI

LIBER 3988 PG 209

Kentwood, Michigan



Schedule
EXHIBIT "A"

Situate in the County of Kent, City of Kentwood, State f Michigan, described as follows:

Part of the East three-quarters of the Northeast one-quarter of Section 13, Town 6 North, Range 11 West, City of Kentwood, Kent County, Michigan, described as: COMMENCING at the Northeast corner of said Section 13; thence North 87°16'44" West 1201.95 feet long the North section line; thence South 02°42'13" West 83.24 feet to the South right of way line of 28th Street (M-21); thence South 28°13'00" West 94.21 feet to the TRUE PLACE OF BEGINNING; THENCE South 61°10'03" East 315.87 feet; thence South 04°43'53" West 29.72 feet; thence South 28°13'05" West 597.66 feet; thence South 83°00'00" West 725.30 feet; thence North 00°03'35" East 810.14 feet along the West line of the East three-quarters of the Northeast one-quarter of said Section 13 to a point being South 00°03'35" West 189.86 feet from the North section line; thence South 43°19'58" East 344.58 feet; thence South 14°00'00" East 17.00 feet; thence South 44°24'23" East 146.55 feet; thence South 53°08'00" East 84.00 feet; thence South 60° 10'00" East 86.00 feet; thence North 28°13'00" East 512.78 feet to the place of beginning.

Together with Non-exclusive Utilities Easement as recorded in Liber 3573 on Page 240, Driveway Access and Light Pole Easement as recorded in Liber 3355 on Page 76, and Wetland Monitoring and Maintenance Easement as recorded in Liber 3355 on Page 71, and with any rights pursuant to the Declaration of Restrictions as recorded in Liber 3355 on Page 58, and the Declaration of Restrictions as recorded in Liber 3573 on Page 253, Kent County Records.

And also together with and subject to an easement for ingress and egress as contained in Covenant Deed recorded in Liber 3826 on Page 1364, Kent County Records.

And also together with and subject to storm easement and specific utility easement and other matters contained in Reciprocal Easement and Operation Agreement recorded in Liber 3826 on Page 1368, Kent County Records.