Neil D. Goldman, Esq. (VSB No. 18352)
John P. Van Beek, Esq. (VSB No. 30897)
Goldman & Van Beek, P.C.
510 King St., Suite 416
Alexandria, Virginia 22314
(703) 684-3260
(703) 548-4742 (facsimile)
ngoldman@ygvb.com
jvanbeek@ygvb.com

Counsel for Sacco of Maine, LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08-35653 |
| | ) | Jointly Administered |
| Circuit City Stores Inc., et al., | ) | Chapter 11 |
| | ) | Hon. Kevin R. Huennekens |
| Debtors. | ) | |
| | ) | |

**RESPONSE OF SACCO OF MAINE, LLC IN OPPOSITION TO THE TWENTY-EIGHTH OMNIBUS OBJECTION TO LANDLORD CLAIMS,**
**OR, ALTERNATIVELY,**
**MOTION OF SACCO OF MAINE, LLC FOR LEAVE TO FILE A LATE PROOF OF CLAIM, NUNC PRO TUNC TO APRIL 2, 2009**

Sacco of Maine, LLC ("Sacco"), by and through its undersigned counsel, hereby opposes the Twenty-Eighth Omnibus Objection to Landlord Claims (the "Twenty-Eighth Objection")(Docket No. 11445) filed by Circuit City Stores, Inc. Liquidating Trust (the "Debtor"). In the Twenty-Eighth Objection, the Debtor asserts that the Proof of Claim for lease rejection damages pertaining to the property subject to a commercial lease between Debtor and Sacco for Location #3740 in Bangor, Maine (the "Sacco Lease" ) filed by Sacco on April 21, 2009 (Claim Number 12315, the "Sacco Claim") was untimely. However, as detailed below, the Sacco Claim was timely filed pursuant to an agreement between the parties read into the record in open court, and approved by this Court.

**THE FACTUAL BACKGROUND**

Debtor filed a motion on February 3, 2009 (the "Bidding and Procedures Motion") seeking orders approving bidding and auction procedures for unexpired non-residential leases, setting sale hearing dates, authorizing and approving sale of certain leases, assumption and assignment of certain leases, and lease rejection procedures (Docket Number 1946, attached as **Exhibit 1**). The Sacco Lease fell squarely within the scope of the Motion, which stated that it applied, inter alia, to **all** unexpired, non-residential, real property leases for Debtor's retail stores. Moreover, the exhibits to the Bidding and Procedures Motion filed February 6, 2009 (Docket Number 1989, Exhibit B-2 to the Declaration of Libeau J. Berthelot, III attached as **Exhibit 2**), which listed the particular leases and landlords subject to the Bidding and Procedures Motion, expressly and explicitly included the Sacco Lease in Exhibit 2 as a "February Lease."

Immediately prior to the hearing on the Motion held February 13, 2009, Debtor's counsel met with counsel for landlords subject to the Motion (including counsel for Sacco), and all parties reached an agreement (the "Agreement") establishing a bar date of April 30, 2009 (the "Lease Rejection Bar Date") for rejection damages for the leases subject to the Motion (the "Subject Leases"), including the Sacco Lease.

Counsel for Sacco, Libeau J. Berthelot, III appeared at the hearing on behalf of Sacco and another Landlord.[1]  The transcript of the hearing, attached as Exhibit B-3 to Mr. Berthelot's declaration, included the following recitation of the Agreement by Gregg M. Galardi, counsel for the Debtor, at page 10, line 20, through p. 11, line 8:

> Your honor, to facilitate, our bar date notice when out with the landlords having to file a 30 – we've talked about whether it's 30 days after the effective date of rejection or some other time. What we've agreed to is

---

[1] See Declaration of Libeau J. Berthelot attached as Exhibit 2 to this submission. Counsel filed a verified statement of multiple creditor representation on February 11, 2009 (Docket No. 2057).

> **that the bar date for the landlords subject to this motion, which is essentially that 576[2] properties will be one single bar date of April 30th, 2009 to file proofs of claims for rejection damages**. We think this whole process will be done by March 31st, which is the sale closing date on the agency agreement. We're running auctions, so all of the lease determinations, assumptions and rejections would be done at least 30 days prior to that period of time. The landlords agreed that would be an acceptable date. (emphasis supplied).

Because the Sacco lease was listed in Exhibit 2 to the Bidding and Procedures Motion, and Sacco was listed as the landlord in that exhibit, there is not a shred of doubt that Sacco was, in Mr. Galardi's words, one of the "landlords subject to this motion" to which the "single bar date of April 30th 2009 to file proofs of claims for rejection damages" applied. On page 16 at lines 3 through 6, the Court acknowledged the agreement and that it resolved the issues. "All right. Thank you. Mr. Galardi, you obviously did a very good job of reciting everything that you all had agreed to, and I applaud your work in getting all of these issues resolved." Consistent with the Agreement, Sacco timely filed its claim on April 21, 2009, **nine (9) days before the applicable bar date of April 30, 2009**.

After the hearing, but later on the same day, the Debtor filed a motion to reject a number of the Subject Leases, including the Sacco Lease. (The "February 13 Rejection Motion," Docket Number 2178, attached as **Exhibit 3**). These leases were rejected by order dated March 3, 2011 (Docket Number 2400, attached as **Exhibit 4**) which incorrectly incorporated terms pertaining to rejection damages claims which predated the Agreement, and contemplated the filing of a claim for rejection damages within thirty (30) days of the later of the date of rejection or the entry of the Order (the "Rejection Order"). Indeed, this time frame was referenced in the quoted section

---

[2] The total number of leases listed in the exhibits to the Bidding and Procedures Motion was 580, including the Sacco lease. The February 13 Rejection Motion sought to reject 54 of those. It is clear that although Mr. Galardi was off in his count by 4 leases, the April 30 date applied to all 580, including those subject to the February 13 Rejection Motion filed hours after the Agreement was read into the record.

3

of Mr. Galardi's recitation, and he stated that it was being superseded by the Agreement. This deadline was in derogation of the April 30, 2009 bar date set forth in both the. Counsel believes that the bar date set forth in the Rejection Order was the result of an error on the part of Debtor's counsel. It appears clear that the February 13 Rejection Motion, and the Rejection Order accompanying it, were prepared prior to the Agreement reached earlier that day. Clearly, they did not reflect the terms of the Agreement. At the hearing, Debtor's counsel noted that a number of the leases were going to be rejected that day. (Tr. page 4, lines 7 and 8). He did not say which leases. Nevertheless, those leases were with "landlords subject to this motion" to which the parties agreed that the April 30, 2009 bar date applied.

Sacco requests that the Court deny the Twenty-Eighth Objection as it pertains to the Sacco Lease because the Sacco Claim was timely filed consistent with the Agreement. Alternatively, to the extent the Court finds that the Sacco Claim was filed late despite the Agreement, Sacco moves the Court, pursuant to Federal Bankruptcy Rule 9006(b), for an order deeming the Sacco Claim to have been timely filed based upon excusable neglect, *nunc pro tunc* to April 2, 2009. The Sacco Claim was filed on April 21, 2009. Assuming that the applicable bar date for the Sacco claim was established in the Rejection Order contrary to the terms of the Agreement, it was filed a mere nineteen (19) days after the April 2, 2009 claims deadline, and nine (9) days prior to the bar date for the filing of over 500 leases subject to the same Bidding as Procedures Motion that applied to the Sacco Lease. The "delay" in filing arose from counsel's knowledge that the Sacco Lease was subject to the Motion, and counsel's reliance on the Agreement establishing the April 30, 2009 bar date. At all times, counsel proceeded to pursue the Sacco Claim in conformity with the deadline established in the Agreement. It was not until receipt of the Twenty-Eighth Objection in November, 2011, some thirty-one (31) months after

the filing of the Sacco Claim, that counsel learned of any issue relating to its timeliness. It appears that that throughout that time, both the Debtor and the Liquidating Trust considered the Claim to be timely. Moreover, the filing of the proof of claim on April 21, 2009 did not prejudice the Debtor since it was filed **prior** to the bar date set for over five hundred other claims of landlords for lease rejection damages (Tr. page 10, line 25 through p. 11, line 2), and well prior to the submission of the initial disclosure statement in August 24, 2009.

I.     **THE SACCO CLAIM WAS TIMELY FILED**

**Relief Sought**

Consistent with the Agreement, the Sacco Claim was timely filed on April 21, 2009, nine days prior to the applicable bar date of April 30, 2009. Therefore, Sacco seeks an order deeming the Sacco Claim as timely filed and denying The Twenty-Eighth Objection as it pertains to the Sacco Claim.

**Basis for Relief Sought**

The Agreement unquestionably applied to the Sacco Lease, as it encompassed all of the Subject Leases. The Sacco Lease not only fell within the scope of the Bidding and Procedures Motion as an unexpired, nonresidential real property lease, but it was expressly identified in the exhibits to the Motion (Exhibit B-2 to Declaration of Libeau J. Berthelot, III). As reflected in the transcript, Mr. Galardi acknowledged and recited the Agreement establishing the Lease Rejection Bar Date for the Subject Leases in open court during the portion of the Hearing pertaining to the Bidding And Procedures Motion, Item 30 on the docket that day.[3] Sacco timely filed its claim on April 21, 2009, notwithstanding the bar date of April 2, 2009 proposed by the Debtor in the Rejection Motion.

---
[3] See Exhibit B-1 to Mr. Berthelot's Declaration.

5

Counsel justifiably relied on the Agreement, which clearly and unambiguously established the bar date of April 30, 2009 for the filing of the Sacco Claim. Counsel filed the Sacco Claim timely  Were this court to find that the Sacco Claim were not timely filed despite the clarity of the Agreement as approved by this Court, it would disrupt the orderly administration of cases by telling counsel that they could not rely on agreements reached, read into the record, and approved by the Court.

## II. DEEMING THE SACCO CLAIM TIMELY FILED AS A RESULT OF EXCUSABLE NEGLECT

### Relief Sought

Alternatively, to the extent the Court finds that the Sacco Claim was not timely filed despite the Agreement, pursuant to Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure ("Rule 9006"), Sacco seeks an order granting leave to file a late proof of claim, effective as of April 2, 2009, as a result of excusable neglect. The assertion that the Sacco claim was not timely filed arose from the **Debtor's** mistake in using the bar date structure that had been superseded by the Agreement when it filed the February 13 Rejection Motion and the Rejection Order. A creditor's confusion about a bar date due to a lack of clarity in notice of the bar date, or error on the part of a Debtor has consistently been held to support permitting a late filing on the ground of excusable neglect. The leading case is <u>Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship</u>, 113 S. Ct. 1489 (1993), in which the Supreme Court affirmed the **reversal** of a trial court decision denying leave to deem a proof of claim filed twenty days after the applicable bar date deemed timely filed as a result of excusable neglect where there was lack of clarity in the notice issued by the court as to the applicable bar date.

**Basis for Relief Sought**

Rule 9006 provides in relevant part:

"Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of **excusable neglect**."  (emphasis supplied).

The excusable neglect standard under this Rule governs "late filings of proofs of claim in Chapter 11 cases" and is thus applicable to the present case.  Pioneer, 113 S. Ct. at 1495.

**Argument**

In finding counsel's neglect excusable in Pioneer, the Supreme Court established standards for evaluating a claim of excusable neglect under Rule 9006 to permit a late-filed proof of claim.  Pioneer, 113 S. Ct. 1489 at 1492.  In Pioneer, counsel responsible for the late filing sought allowance for the claims because while he received notice of the applicable bar date in a "Notice for Meeting of Creditors," he claimed that his withdrawal from his former law firm and the accompanying professional disruptions prevented his access to case-related files and his awareness of the correct bar date.  Id.  The Supreme Court's ensuing analysis produced a multi-factored balancing test, which has been applied by the Fourth Circuit through the following two-step inquiry[4]:

"First, the delay in filing must be due to 'neglect,' which the [Supreme] Court defines to include 'inadvertence, mistake, or carelessness'"…Second, the neglect must be 'excusable.' The excusability determination 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,'" including "[1] the danger of prejudice to the debtor [or non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the

---

[4] In re SPR Corp., 45 F.3d 70, 72 (4th Cir. 1995), *citing* Pioneer, 113 S. Ct. at 1489.

7

movant, and [4] whether the movant acted in good faith." SPR Corp., 45 F.3d at 72.

Ultimately in Pioneer, although "little weight" was given to counsel's professional disruptions, counsel's neglect was "excusable" under the circumstances, in light of the fact that the bar date appeared in an inconspicuous manner, leaving a "'dramatic ambiguity' in the notification." Pioneer, 113 S. Ct. at 1499-1500.

It is noteworthy that the Pioneer court, while not expressly saying so, had to have applied an abuse of discretion standard in evaluating the lower court decision, and affirming the 6th Circuit's reversal of the bankruptcy court's order denying the late filing finding that there was no excusable neglect. Courts have consistently held that "an appellate court reviews a bankruptcy court's determination of a motion under Fed. R. Bankr. P. 9006(b)(1) to file an untimely proof of claim on the grounds of excusable neglect under an abuse of discretion standard." Eric C. Surette, J.D., Annotation, What Constitutes "Excusable Neglect" Under Bankruptcy Fed. R. Bankr. P. 9006(b)(1) Which Will Permit Court to Extend Time for Filing Proof of Claim in Bankruptcy Case – Post-Pioneer Cases §22, 43 A.L.R. Fed. 2d 177 (2010); In re Gantt, 1998 U.S. App. LEXIS 16742 (4th Cir. 1998).[6] On this basis, the holding in Pioneer, in which the Supreme Court affirmed the decision of the 6th Circuit to reverse the decision of the trial court, compels the conclusion that the bankruptcy court's refusal to permit the late filing at issue in Pioneer was an abuse of discretion.

This Court has previously recognized in this case that excusable neglect must be established when seeking the allowance of a late-filed claim. In re Circuit City Stores, Inc., 2010 Bankr. LEXIS 1774 (Bankr. E.D. Va. May 28, 2010) (J. Huennekens) ("in order for a claimant to

---

[6] The 576 leases subjected to the Lease Rejection Bar Date results from an approximate calculation of combining the 540 non-rejected leases with the 42 leases to be rejected.

8

file a proof of claim after the court prescribed Bar Date, the claimant must establish that the 'failure to act was the result of excusable neglect.'");[7] In re Wilmoth, 412 B.R. 791 (Bankr. E.D. Va. 2009) (J. Huennekens).[8]

Applying the balancing test for excusable neglect found in Pioneer and its progeny to the present circumstances, the untimely filing of the Sacco Claim clearly resulted from excusable neglect, thus allowing an extension of time under Rule 9006(b) that would deem its proof of claim effective as of April 2, 2009.

### Analysis of Excusable Neglect:
### Step One - Considering Whether Neglect Exists

The first prong of the test requires a determination as to whether the delay in filing arose from "neglect," which may arise from "inadvertence, mistake, or carelessness." SPR Corp., 45 F.3d at 72, *citing* Pioneer, 113 S. Ct. at 1495. A finding of neglect is not limited to circumstances occurring beyond the filer's control. Id. at 1496.

Late filings may be accepted when caused by neglect arising from "simple, faultless omissions" to "omissions caused by carelessness." Pioneer, 113 S. Ct. at 1495. The scope of such neglect includes "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Id.

Should the Court find that the Sacco Claim was untimely filed despite the Agreement and the Rejection Damages Bar Date Order, the delay occurred due to confusion created by the inconsistency between the Agreement and the Rejection Order, rather than from counsel's calculated scheming, thereby falling within the ambit of Pioneer's definition of neglect as

---

[7] It appears that the claimants made no attempt to establish excusable neglect.
[8] In Wilmoth, there was a 14 month delay in claiming an exemption for a personal injury claim, of which the Debtor's counsel was fully aware. There was no mistake based on a court sanctioned Agreement as to when the exemption was to have been filed.

9

inadvertence, mistake, or carelessness.  Indeed, Mr. Berthelot's notes (Exhibit B-4 to Exhibit 2), and his project status report (Exhibit B-5 to Exhibit 2), indicate a diligent intent to meet the established deadline.  Counsel's understanding of the bar date applicable to the Sacco Claim arose from the Agreement, and if the filing after April 2, 2009 was an omission, it was either faultless or careless.

**Analysis of Excusable Neglect:
Step Two - Considering Whether the Neglect is Excusable**

The second part of the two-step inquiry requires a determination as to whether such neglect, if established, is "excusable."  SPR Corp., 45 F.3d at 72.  This "flexible understanding" of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," which includes the consideration of the following equitable factors set forth as a multi-factor balancing test: (1) "the danger of prejudice to the debtor"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith."  Pioneer, 113 S. Ct. at 1495, 1498.  "These factors are not exclusive, and the standard is a 'totality of the circumstances' inquiry that does not require a rigid, elemental application of each factor."  Wilmoth, 412 B.R. at 797, *citing* Pioneer, 113 S. Ct. at 1493-1494.

*Prejudice to the Debtor*

The Fourth Circuit has evaluated prejudice to the debtor by whether allowing a late-filed claim would set a precedent for "the allowance of hundreds of additional late filed claims" and whether the debtor's reorganization plan would have to be renegotiated.  Herman's, 166 B.R. at 583.

Allowing the Sacco Claim to proceed would not set a precedent precipitating "a flood of similar claims." In re Enron Corp., 419 F.3d 115, 130 (2d Cir. 2005). Certainly, the analysis here must take into account the fact that if the Lease Rejection Bar Date did not apply to the Sacco Lease, the Sacco Claim was filed and known before more than 500 lease rejection claims were even due on April 30, 2009. By filing a late claim in advance of yet another bar date applicable to over five hundred lease rejection claims, Sacco holds a position markedly different from the ordinary late filer who asserts a claim after all other claims are known. Here, Sacco's claim was filed in advance of the due date for many lease rejection claims due under the Rejection Damages Bar Date Order, and before the Debtor could rely on a total of filed proofs of claim in formulating a plan of reorganization. A decision to deem the Sacco claim timely filed would not establish a precedent for any claim filed after April 30, 2009.

Moreover, this is not a case where Sacco is just now *filing* its claim. Deeming the Sacco Claim timely filed as of April 2, 2009 would not expose the Liquidating Trust to claims from previously unknown creditors, but would instead recognize what is at most a ***technically*** late filed claim submitted ***prior*** to the bar date established for similar claims. It would recognize as timely the prior filing of a claim well known to the Debtor, and apparently considered valid through the filing of dozens of previous omnibus objections to creditor claims during the period between the filing of the Sacco Claim and the filing of the Twenty-Eighth Objection.

Sacco filed its claim more than four (4) months before Debtor filed its first disclosure statement[10] and almost a year and a half before the confirmation of Debtor's plan.[11] The filing of

---

[10] See Disclosure Statement with Respect to Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims, filed on August 24, 2009 (Docket Number 4614).
[11] See Notice of Confirmation of Chapter 11 Plan, filed on September 16, 2010 (Docket Entry Number 8591).

the Sacco Claim occurred at an early enough stage in this bankruptcy to lack any meaningful impact upon the reorganization process.

*Length of Delay and Its Potential Impact on Judicial Proceedings*

A bright-line rule deciding "how long is too long" for delay in filing has not been established by courts. Enron Corp., 419 F.3d at 128. The paramount concern involving the length of the delay pertains to the delay's potential impact on bankruptcy proceedings caused by the delay. Id.; US Airways, 2005 Bankr. LEXIS at 26 (finding that the creditors' filing of a proof of claim seven months after the bar date was significant since "the longer the delay, the greater the potential impact on the reorganization proceedings"), *citing* Matter of Clear Corp.*,* 111 B.R. 20 (Bankr. D.P.R. 1990) (allowing a late-filed claim when creditor filed seventeen days late) *compared with* Trump Taj Mahal Assoc. v. Alibraham*,* 156 B.R. 928 (Bankr. D.N.J. 1993) (disallowing claim after creditor failed to file a proof of claim one year after the commencement of the bankruptcy case).

The analysis of the impact a late filing will have on the proceedings includes the stage of development of the case. Thus, late proofs of claim filed during a case's "initial" phase may be allowed since any detrimental effects from the delay will not be considered serious at that point in time. In re Brown, 159 B.R. 710, 718 (Bankr. D.N.J. 1993) (allowing late claims filed four to six months after the final bar date, but before the approval of a disclosure statement and confirmation of a plan, because they occurred during an "early stage" and thus only minimally affected the judicial administration of the case). The insignificant delay of the filing of the Sacco Claim did not hinder the Debtor's reorganization activities as deadlines for claims as to the Subject Leases were scheduled beyond April 2, 2009, and after the date of the filing of the Sacco

Claim. Clearly, the Sacco Claim had no impact upon Debtor's reorganization plan that was not considered in formulating the plan.

Any impact from this delay on judicial proceedings in this case is negligible, especially in light of the fact that claims relating to the Subject Leases would become due nine days **after** the filing of the Sacco Claim. It would be untenable to maintain that the impact of Sacco's late-filed claim could hinder the Debtor with its expectation of the filing of hundreds of claims by landlords shortly thereafter.

Sacco finds itself in a strikingly similar, and slightly more favorable, position to the petitioning creditor in Pioneer, who filed his untimely proof of claim twenty days (20) after the applicable bar date. Here, if the claim is late, it is 19 days late. In Pioneer, the Supreme Court found no evidence that the length of delay prejudiced the administration of that case. Pioneer, 113 S. Ct. at 1500; US Airways, 2005 Bankr. LEXIS 2696 (construing the filing delay in Pioneer as "*only* twenty days"). (emphasis supplied). Likewise, and for reasons discussed above, Sacco's technically late filing less than three weeks after April 2, 2009 and before April 30, when the bulk of the landlord rejection claims were due, fails to impact the proceedings in this case in any meaningful way, if there is any impact at all.

*Reason for the Delay*

This prong of the Pioneer test has been characterized as the most important for determining whether neglect is excusable. Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996) (applying Pioneer's standards for excusable neglect in the context of a delayed filing pursuant to Federal Rule of Appellate Procedure 4(a)(1)). As set forth below, the reason for delay in filing the Sacco Claim weighs in favor of Sacco in accordance with Pioneer's standards for establishing excusable neglect.

As noted, neglect can result from inadvertence, mistake, or carelessness. <u>Pioneer</u>, 113 S. Ct. at 1495. In fact, the Supreme Court explicitly rejected the notion that the movant must be determined "sufficiently blameless" with respect to a delay in filing. <u>Id</u>. at 389, fn. 14; <u>In re Herman's Sporting Goods</u>, 166 B.R. 581 (Bankr. D.N.J. 1994), *citing* <u>Pioneer</u>, 139 S. Ct. at 1495-99 (Even when movant's counsel is remiss in noting the correct bar date provided in a court order, "blamelessness on the part of the movant is no longer the standard of 'excusable neglect,'" since "the Supreme Court meticulously justified its rejection of the standard.'"). With consideration to all equitable factors set forth <u>Pioneer</u>, the <u>Herman's</u> court permitted a landlord to file a late claim nine days after the bar date, despite landlord's counsel's inadvertent belief that the applicable bar date was due thirty days from receipt of the order setting the bar date, when the correct bar date fell thirty days from the date of the order. <u>Herman's</u>, 166 B.R. at 582. Similarly, at the time of filing of the Sacco Claim, counsel justifiably believed that the Lease Rejection Bar Date applied to the Sacco Lease based on the explicit Agreement made on February 13, 2011 and approved by this Court. Sacco's mistake derives from the Debtor's mistake in creating two conflicting bar dates for the Sacco Lease.

Like the counsel in <u>Herman's</u>, Sacco's belief in the timely filing of the Sacco Claim echoes another case in which a late filing was permitted. <u>In re Smith</u>, 200 B.R. 135 (Bankr. S.D. Miss. 1996). In <u>Smith</u>, counsel for a party erroneously believed proofs of claim in two separate bankruptcy cases had been timely filed, when in actuality, only one of the two had been properly submitted. By the time counsel had realized the error and filed a motion for leave to file a proof of claim out of time in the Chapter 11 case, seven weeks had passed since the bar date. <u>Smith</u>, 200 B.R. at 136. After evaluating the multi-factor balancing test under <u>Pioneer</u> for excusable neglect, the <u>Smith</u> court granted plaintiff's motion for leave to file a proof of claim out of time,

14

noting that counsel for the parties had been involved in ongoing discovery and correspondence, which indicated "a full awareness" on the part of the debtors that the plaintiff's claims were being pursued. Id. at 138. As in Smith, Sacco's counsel had been communication with Debtor's Counsel for a period of several months at the time of the filing of the Sacco Claim. See Exhibit 2, ¶3. Moreover, Debtor's Counsel had been aware that counsel was pursuing claims on behalf of Sacco months prior to the filing of the Sacco Claim. The filing of the Sacco Claim came as no surprise to Debtor.

In In re Dartmoor Homes, 175 B.R. 659 (Bankr. N.D. Ill. 1994), a late-filed claim was allowed due to excusable neglect after an evaluation of the balancing test set forth in Pioneer and a finding that although both parties' counsel were deemed equally blameworthy. The creditor's attorney had failed to timely file its claim and the debtor's counsel had omitted the creditor from its schedule of creditors. Since the debtor was aware of the creditor's claim, "to quote a classic rule of baseball, 'a tie goes to the runner'". In In re Infiltrator Sys., 241 B.R. 278 (Bankr. D. Conn. 1999), a late claim was allowed. The debtor was not be prejudiced because negotiations with timely creditors were ongoing, the reorganization plan had not been confirmed, the a large number of unresolved matters still existed, and the debtor's notice was ambiguous. In In re Sage-Dey, Inc., 170 B.R. 46 (Bankr. N.D.N.Y. 1994). a late claim was allowed within six months after the bar date but prior to confirmation of the plan because the creditor had acted in good faith and had reasonably relied on a form erroneously completed by the debtor.

*Good Faith*

Counsel's good faith has been apparent. As noted, in addition to Sacco, Counsel also represented two other parties in interest in this proceeding, and left the Hearing comfortable that the Bar Date applied to filing claims as to all the Subject Leases, including the lease for Sacco.

Counsel promptly to file the Sacco claim, and believed the Sacco Claim had not just been timely filed, but filed early.

Courts rarely have to evaluate this factor since movants are usually found to have acted in good faith. In re BI-LO, LLC, 2010 Bankr. LEXIS 2298 (Bankr. D.S.C. July 30, 2010), *citing* BOUSA, Inc. v. United States (In re Bulk Oil (USA) Inc.), 2007 U.S. Dist. LEXIS 27346, 2007 WL 1121739, n. 6 (S.D.N.Y. Apr. 11, 2007). However, "inaction during the time period allotted for the filing of claims" has been held to demonstrate a lack of good faith. Id., *citing* In re J.S. II, L.L.C., 397 B.R. 383, 389 (Bankr. N.D. Ill. 2008). Counsel has never displayed the inaction or inattention consummate to demonstrating bad faith. To the contrary, counsel has diligently pursued Sacco's claim both before and following the applicable claims bar date.

Far from deliberately flouting established deadlines, Sacco's counsel filed the claim late based on confusion arising from the establishment of a bar date of April 2, 2009 found in the Rejection Order, which contradicted the Agreement and the Rejection Damages Bar Date Order.

Upon learning of the Twenty-Eighth Objection, Sacco has acted promptly in filing this Opposition and Motion.

## **CONCLUSION**

In accordance with the Agreement, Sacco timely filed its claim against Debtor. Alternatively, to the extent the Court finds that the Sacco Claim was untimely, the Court should permit the filing on April 21, 2009 to be deemed timely based upon a finding of excusable neglect. Indeed, the holding of Pioneer suggests that it may be an abuse of discretion to fail to recognize the Sacco Claim.

WHEREFORE, Sacco respectfully requests that this Court enter an order deeming the Sacco Claim as timely filed and denying Debtor's request to disallow the Sacco Claim as a late

filing, or in the alternative, granting leave for Sacco to file a late proof of claim based upon excusable neglect, effective as of April 2, 2009.

Dated: Alexandria, Virginia  
December 29, 2011

Respectfully submitted,

/s/ John P. Van Beek

Neil D. Goldman, Esq. (VSB No. 18352)  
John P. Van Beek, Esq. (VSB No. 30897)  
Goldman & Van Beek, P.C.  
510 King St., Suite 416  
Alexandria, Virginia 22314  
(703) 684-3260  
ngoldman@ygvb.com

Counsel for Sacco of Maine, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
PACHUULSKI STANG ZIEHL & JONES, LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
jpomerantz@pszjlaw.com
acaine@pszjlaw.com


Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com

      /s/ John P. Van Beek
      John P. Van Beek