# Exhibit  1

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTER DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
Circuit City Stores, Inc.,    :    Case No. 08-35653(KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS
105, 363, AND 365 (I) APPROVING BIDDING AND AUCTION
PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL
PROPERTY LEASES, (II) SETTING SALE HEARING DATES AND (III)
AUTHORIZING AND APPROVING (A) SALE OF CERTAIN UNEXPIRED
NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF ALL
INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEX-
PIRED NONRESIDENTIAL REAL PROPERTY LEASES AND (C) LEASE
REJECTION PROCEDURES**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move this Court (the "Motion") for
entry of an order, pursuant to sections 105(a), 363 and
365 of title 11 of the United States Code (the "Bank-
ruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), (i) approving bidding and auction procedures for
sale of certain nonresidential real property leases, (ii)
setting sale hearing dates and (iii) authorizing and ap-
proving (a) the sale of certain nonresidential real prop-
erty leases free and clear of all interests, including
liens, claims, and encumbrances, (b) the assumption and
assignment of certain unexpired nonresidential real prop-
erty leases, and (c) lease rejection procedures for any
leases that are not sold in connection with the foregoing.

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
tribution Company of Virginia, Inc. (2821), Circuit City Proper-
ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
ture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland
MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC
(3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address
is 9950 Mayland Drive, Richmond, Virginia 23233.

In support of the Motion, the Debtors respectfully repre-
sent:

**JURISDICTION AND VENUE**

1.   The Court has jurisdiction to consider the
Motion under 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding under 28 U.S.C. § 157(b).  Venue of these
cases and the Motion in this district is proper under 28
U.S.C. §§ 1408 and 1409.

2.   The predicates for the relief requested
here are Bankruptcy Code sections 105(a), 363, and 365
and Bankruptcy Rules 2002, 6004, 6006, and 9014.

**BACKGROUND**

3.   On November 10, 2008 (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate
their businesses as debtors in possession pursuant to
Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the
United States Trustee appointed a statutory committee of
unsecured creditors (the "Creditors' Committee").  To

3

date, no trustee or examiner has been appointed in these
chapter 11 cases.

**RELIEF REQUESTED**

6.    By this Motion, the Debtors seek approval
for the sale (the "Sale") of unexpired leases of non-
residential real property for all of the Debtors' remain-
ing retail store and distribution center, and other non-
corporate office locations, as identified on Exhibit 2
and Exhibit 3 attached to the Bidding and Rejection Pro-
cedures Order (the "Leases").  To effect the Sale and
dispose of most remaining Leases following the conclusion
of the GOB Sales (as defined herein), the Debtors seek
three types of relief.

7.    First, at the omnibus hearing to be held
on February 13, 2009, (the "Bidding And Rejection Proce-
dures Hearing") the Debtors will seek entry of an order
substantially in the form attached hereto (the "Bidding
And Rejection Procedures Order") approving the bidding
procedures attached to the Bidding And Rejection Proce-
dures Order as Exhibit 1 (the "Bidding Procedures"), and
the rejection procedures described more fully herein.

4

8.    Second, subject to the terms of the Bid-
ding and Rejection Procedures Order, at the omnibus hear-
ings to be held on February 25, 2009, March 20, 2009,
March 30, 2009 and April 14, 2009 (each, a "Sale Hear-
ing"), the Debtors will seek orders (the "Sale Orders")
authorizing and approving the Sale of certain of the
Leases to the highest or best bidder free and clear of
all interests, including liens, claims and encumbrances
(collectively, "Interests"), including the assumption and
assignment of the such Leases.

9.    Finally, the Debtors seek authority under
Bankruptcy Code sections 105(a) and 554 to abandon any
equipment, furniture, or fixtures located at the underly-
ing Lease premises on the Rejection Date (as defined
herein) (the "Abandoned Property").

**BASIS FOR RELIEF**

10.    On January 16, 2009, the Court authorized
the Debtors, among other things, to conduct going out of
business sales at the Debtors' remaining 567 stores pur-
suant to an agency agreement (the "Agency Agreement") be-
tween the Debtors and a joint venture, as agent (the"
Agent").    On January 17, 2009, the Agent commenced going

out of business sales pursuant to the Agency Agreement at
the Debtors remaining stores.

11.   Pursuant to the Agency Agreement, the
Agent has commenced going out of business sales (the "GOB
Sales") to sell the merchandise at each of the Debtors'
567 remaining retail stores and distribution centers (the
"Closing Locations").  The Agency Agreement provides that
the Agent will pay occupancy expenses for the Closing Lo-
cations, including base rent, utilities, CAM, real estate
and use taxes, merchant's association dues and expenses,
and building insurance due under the Leases on a per diem
basis while the GOB Sales are conducted.  Monthly ex-
penses for the Leases are approximately $28 million per
month, and the Debtors accordingly intend to resolve the
status of the Leases as quickly as possible following the
Sale Termination Date for each Lease.

12.   The Agent has indicated (but has not pro-
vided formal notice) to the Debtors that it plans to com-
plete the GOB Sales for certain of the Closing Locations
by approximately February 16, 2009 (such locations, the
"February Closing Locations" and the leases for such lo-

cations, the "February Leases", listed on <u>Exhibit 2</u> to the Bidding and Rejection Procedures Order).

13.    The Agent plans to complete the GOB Sales for the remaining Closing Locations (such locations, the "March Closing Locations" and the leases for such locations, the "March Leases", listed on <u>Exhibit 3</u> to the Bidding and Rejection Procedures Order) at various dates throughout March, but in all cases by no later than March 31, 2009.  However, such date may be extended by mutual agreement of the Debtors and the Agent or shortened upon ten (10) days written notice provided by Agent to Debtors.

14.    The Agency Agreement further provides that the Agent will vacate all of the Closing Locations and shall surrender the keys and premises of each Closing Location to the Debtors within ten (10) days of providing notice of the completion the GOB Sale at such location but in any event by March 31, 2009.  For each Lease, the date on which the Agent intends to vacate the Closing Location covered by such Lease is referred to herein as the "Sale Termination Date" for that Lease.

**A.    Bidding Procedures.**

15.   The Debtors believe that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Leases for the benefit of the Debtors, their estates, their stakeholders, and other interested parties.   Moreover, these procedures are consistent with those previously approved by the Court and reflect comments previously received from counsel to many of the Debtors' lessors.

16.   The Debtors wish to conduct multiple sale processes for the Leases.   This will enable the Debtors to either sell, assume and assign or reject the Leases as quickly as practicable following the Sale Termination Date for each Lease, thereby minimizing the time during which the Debtors are responsible for the occupancy costs associated with each Lease.

17.   The salient terms of the Bidding Procedures are provided below:[2]

(a)   Bid Deadline:  Bids on the February Leases must be sent to the above parties so as to be re-

---

[2]   In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures.

8

ceived not later than 3:00 p.m. (ET) on February 18, 2009
(the "February Bid Deadline"). Bids on the March Leases
must be sent to the above parties so as to be received
not later than 3:00 p.m. (ET) on March 12, 2009 (the
"March Bid Deadline" and, together with the February Bid
Deadline, the "Bid Deadlines").  The Debtors may extend
the Bid Deadlines once or successively, but are not obli-
gated to do so.

       (b)  Due Diligence:  All bidders shall be
afforded an opportunity to participate in the diligence
process and shall acknowledge in their bids that they had
sufficient opportunity to conduct diligence.

       (c)  Bid Requirements: All bids shall be
required to include the following documents: (i) a letter
identifying the full name and identity of the proposed
assignee of each individual Lease subject to the bid, the
amount of the bid, and providing certain Adequate Assur-
ance Information and (ii) a good faith deposit equal to
the greater of 15% of the bid amount or $10,000 for each
Lease on which the bidder submits a bid.  All bids shall
be deemed to be irrevocable until the earlier to occur of
(i) the Closing (as defined herein) or (ii) forty-five
(45) days following the applicable Auction (as defined
herein).

       (d)  Qualified Bids: To be a "Qualified
Bid", a bid must (i) not be conditioned upon obtaining
financing or the outcome of unperformed due diligence by
the bidder, (ii) include a commitment to consummate the
Sale within two days following the applicable Sale Hear-
ing, (iii) be received by the applicable Bid Deadline and
(iv) be an offer to purchase one or more of the Leases
for cash only, except that a Lessor may "credit bid."  In
addition, to be a Qualified Bid, each bidder must be pre-
pared to demonstrate to the Debtors (i) its ability to
consummate the purchase of the Lease(s), (ii) adequate
assurance of future performance under the Lease(s) and
(iii) its ability to otherwise fulfill its obligations
under the Lease(s).

(e)  Auction: If the Debtors receive more
than one Qualified Bid for a February Lease or Leases,
the Debtors will conduct an auction (the "February Lease
Auction") for those February Leases at 10:00 a.m. (ET) on
February 20, 2009.  If the Debtors receive more than one
Qualified Bid for a March Lease or Leases, the Debtors
will conduct auctions for the Leases covered by such
bid(s) on March 16, 2009, March 24, 2009, and April 9,
2009 (the "March Lease Auctions" and, together with the
February Lease Auction, the "Auctions") for those March
Leases[3] at 10:00 a.m. (ET) on such dates.  Bids for March
Leases will be subject to the next March Lease Auction
following the Debtors' receipt of notice of the Sale Ter-
mination Date for those Leases, or at such subsequent
Auction as the Debtors deem appropriate.

(f)  Successful Bids: After the February
Lease Auction, the Debtors will announce for each Febru-
ary Lease for which the Debtors received a Qualified Bid
which bid is the highest or otherwise best bid (the "Suc-
cessful Bid") and which bid is the second highest and/or
best bid, if any (the "Alternate Bid").

(g)  Sale Hearing: The Debtors will sell
the Lease or Leases to the Successful Bidder(s) in the
applicable Auction upon the approval of such Successful
Bid(s) by the Bankruptcy Court at the next Sale Hearing
following the Auction, or at such subsequent Sale Hearing
as the Debtors deem appropriate.

(h)  Bids on Lease Packages: The Debtors
shall have discretion to accept bids for individual Feb-
ruary Leases or for packages of February Leases.

(i)  Closing: The Debtors request that,
absent agreement by the Debtors to the contrary, the
closing (the "Closing")of the Sale of a Lease  shall take
place on or within two (2) business days following the

---

[3]  The Debtors reserve the right, in their sole discretion, to con-
duct a private sale for any Lease(s) or withdraw any Lease(s)
from the auction process.

later of (i) the applicable Sale Hearing, or (ii) the
Sale Termination Date with respect to such Lease.

18. The Debtors propose that any party wishing
to file an objection to the Bidding Procedures be re-
quired to file such objection by February 11, 2009 at
4:00 p.m. (ET), and that such parties be required to
state, with specificity, the legal and factual basis of
any objection, unless otherwise ordered by this Court.

## II. NOTICE, CURE AND REJECTION PROCEDURES

19. The Debtors believe that they are current
on their obligations under the Leases, except with re-
spect to the amounts (the "Proposed Cure Amounts") to be
identified by the Debtors on the Cure Schedules (as de-
fined herein).[4]

20. The Debtors propose that, one business day
prior to each Auction, they will file a list of Leases
subject to such Auction and a schedule (each, a "Cure
Schedule") with the Court listing the Proposed Cure

---

[4] The prepetition amounts reflected in the Cure Schedules will be
calculated based on the assumption that amounts that accrued
prepetition, including in the first nine days of November, 2008,
were properly subject to being cured if a particular Lease is as-
sumed. The Debtors reserve the right to otherwise assert that
all amounts that were billed prepetition are prepetition obliga-
tions.

Amounts for the Leases subject to such Auction.  Concurrently with filing each Cure Schedule with the Court, the Debtors will post the Cure Schedule on the website for the Debtors' claims and noticing agent, www.kccllc.net/circuitcity.

21.  The Debtors propose that unless a party to a Lease files an objection to the Proposed Cure Amount asserting a different cure amount than the Proposed Cure Amount listed on the applicable Cure Schedule, on or before 12:00 p.m. (ET) on the business day immediately preceding the applicable Sale Hearing, then such party should be forever barred from asserting a cure amount different from the Proposed Cure Amount (except for any amounts accruing from the date of the Cure Schedule through the date of assignment).  Any such cure disputes caused by a valid and timely objection will be resolved, as necessary, either at the applicable Sale Hearing or such later date as may be agreed to among the parties or scheduled by the Court.

22.  The Debtors further propose to provide (by email, if available, or U.S. first class mail) the lessor (the "Lessor") of each Lease on which a potential pur-

chaser, other than the Lessor itself, has submitted a
Qualified Bid pursuant to the Bidding Procedures (each, a
"Potential Purchaser") with a notice of Potential Pur-
chaser substantially in the form attached as <u>Exhibit 4</u> to
the Bidding and Rejection Procedures Order (the "Poten-
tial Purchaser Notice").  The Debtors shall provide the
Potential Purchaser Notice to Lessors at the conclusion
of the Auction to which their Lease was subject.  Where
the Potential Purchaser is the Lessor, the Lessor shall
be deemed to have notice of such Potential Purchaser
without receipt of a Potential Purchaser Notice.  Leases
subject to a Potential Purchaser Notice or to a bid by
the Lessor shall not be deemed rejected on the Rejection
Date.

23.  The Potential Purchaser Notice will iden-
tify any Potential Purchasers as potential parties to
which the Leases would be assigned.  Thus, the Potential
Purchaser Notice will give the Debtors the ability to ad-
dress promptly any adequate assurance issues that Lessors
may have with any of the Potential Purchasers of their
respective Leases.  The Debtors propose that the Lessors
of any Lease subject to a Potential Purchaser Notice be

required to file an objection to the assumption and/or
assignment of the Lease (other than objections with re-
spect to the Bidding Procedures described above, which
must be filed by February 11, 2009 as set forth above) by
12:00 p.m. (ET) on the business day immediately preceding
the Sale Hearing at which such Lease is to be assumed and
assigned.  Such parties would be required to state, with
specificity, the legal and factual basis of any objection.
Parties may supplement their objections to assumption and
assignment orally at the Sale Hearing.

     24.  To ensure that the Debtors do not unneces-
sarily expend estate resources on Leases that will not be
assumed and assigned and have no further value to the es-
tates following completion of the GOB Sales, the Debtors
also propose certain rejection procedures.

     25.  The Debtors propose that Leases for which
either (i) no Potential Purchaser has submitted a Quali-
fied Bid or (ii) the Debtors have not served a Rejection
Notice (as defined below), shall be deemed rejected as of
the later of (a) February 28, 2009 for February Leases or
March 31, 2009 for March Leases, (b) the Sale Termination
Date, or (c) the date that the Debtors have surrendered

14

the premises to the applicable Lessor by fulfilling the Rejection Requirements (as defined herein) (such date, the "Outside Rejection Date").

26.  In order to effectively surrender the premises, the Debtors shall be required to use commercially reasonable efforts to (i)(a) disarm the alarm, (b) transmit alarm codes to the applicable Lessor, or (c) advise the Lessor in writing that they are unable to provide the alarm codes despite commercially reasonable efforts to do so and (ii)(a) return keys to the applicable Lessor or (b) advise the applicable Lessor that the keys cannot be returned despite commercially reasonable efforts to do so (such measures, the "Rejection Requirements").

27.  In the event that the Agent provides the Debtors with notice of a Sale Termination Date that is earlier than the Outside Rejection Date, the Debtors may provide the Lessor with notice of rejection, substantially in the form attached as Exhibit 5 to the Bidding and Rejection Procedures Order (the "Rejection Notice"). The Rejection Notice shall specify the date of rejection, which date shall be not less than seven (7) days from the

date the Rejection Notice is received by the Lessor (such
date, the "Early Rejection Date"; the Early Rejection
Date and the Outside Rejection Date, as applicable, are
collectively referred to herein as the "Rejection Date").
In the event that the Debtors provide the Lessor with a
Rejection Notice, the Debtors will surrender the premises
to the Lessor prior to the Early Rejection Date by ful-
filling the Rejection Requirements.

28.  For any Lease that is either subject to a
Potential Purchaser Notice or has been bid upon by the
Lessor and thus is withdrawn from automatic rejection un-
der the Bidding And Rejection Procedures Order, if the
Debtors elect not to sell such Lease, the Debtors request
that rejection of such Lease also be effective as of the
Rejection Date.  If necessary, the Debtors will add a
schedule of any such Leases to the applicable Sale Order.

29.  Additionally, the Debtors have determined
that the abandonment of the Abandoned Property with re-
spect to any unsold Lease that is rejected is appropriate
because such property is of inconsequential value and/or
the cost of removing and storing such property exceeds
its value to the Debtors' estates.  Moreover, the Debtors

believe that the Abandoned Property no longer is neces-

sary for the operation of the Debtors' businesses.

## III. LEASE TERMINATION AGREEMENTS

30.  In the event that a Lessor is the success-

ful bidder for its own Lease, the Debtors request au-

thorization to enter into a Lease termination agreement

with any such Lessor.

### APPLICABLE AUTHORITY

## I.   THE RELIEF REQUESTED IN THE MOTION REFLECTS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT.

31.  Assets of the Debtors may be sold outside

of the ordinary course of business, pursuant to Bank-

ruptcy Code section 363(b)(1), if a sound business pur-

pose exists for doing so.  In re WBQ P'ship, 189 B.R. 97,

102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v.

McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also

Committee of Equity Security Holders v. Lionel Corp. (In

re Lionel Corp.), 722 F. 2d 1063, 1070 (2d. Cir. 1983);

see also The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward

Holding Corp. (In re Montgomery Ward Holding Corp.), 242

B.R. 147, 153 (D. Del. 1999); In re W.A. Mallory Co.,

Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).  In

evaluating whether a sound business purpose exists, "courts consider a variety of factors which essentially represent a business judgment test." Montgomery Ward, 242 B.R. at 153.

32.  By establishing the Bidding Procedures, notice procedures and rejection procedures relating to the Sale of the Leases, the Debtors seek to implement an orderly process to sell or otherwise dispose of the Leases in an efficient manner most beneficial to their estates.  The Debtors are attempting to complete an orderly liquidation of their businesses, which maximizes the return to their creditors and stakeholders and minimizes unnecessary expenses.  Without the procedures requested herein, the Debtors could lose value associated with the Sale of the Leases and could be forced to carry the costs of leases for locations at which the Debtors no longer do business.  The orderly process contemplated by the procedures requested herein, including the Sale of the Leases pursuant to the Bidding Procedures and the rejection of any Lease not subject to a Sale, is accordingly necessary for the Debtors to maximize the value of their estates.

33.   Bankruptcy Code section 365(a) provides
that a debtor, "subject to the court's approval, may as-
sume or reject any executory contract or unexpired
lease."  11 U.S.C. § 365(a).  A debtor's determination to
assume or reject an executory contract or unexpired lease
is governed by the "business judgment" standard.  <u>See</u> <u>Lu-</u>
<u>brizol Enterprises, Inc. v. Richmond Metal Finishers,</u>
<u>Inc.</u>, 756 F.2d 1043, 1046-47 (4th Cir. 1985), <u>cert.</u> <u>de-</u>
<u>nied</u> <u>sub</u> <u>nom.</u>, <u>Lubrizol Enters., Inc. v. Canfield</u>, 475
U.S. 1057 (1986); <u>In re Extraction Technologies of VA,</u>
<u>L.L.C.</u>, 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); <u>see</u>
<u>also</u> <u>In re HQ Global Holdings, Inc.</u>, 290 B.R. 507, 511
(Bankr. D. Del. 2003) (stating that a debtor's decision
to reject an executory contract is governed by the busi-
ness judgment standard and can only be overturned if the
decision was the product of bad faith, whim, or caprice).

34.   Once the Debtors articulate a valid busi-
ness justification, "[t]he business judgment rule 'is a
presumption that in making a business decision the direc-
tors of a corporation acted on an informed basis, in good
faith and in the honest belief that the action taken was
in the best interests of the company.'"  <u>Official Comm.</u>

Of Subordinated Bondholders v. Integrated Res., Inc., 147
B.R. 650, 656 (S.D.N.Y. 1992).

35.   The business judgment rule has vitality in
chapter 11 cases and shields a debtor's management from
judicial second-guessing.  See Comm. Of Asbestos-Related
Litigants and/or Creditors v. Johns-Manville Corp., 60
B.R. 612, 615☐16 (Bankr. S.D.N.Y. 1986) ("[T]he Code fa-
vors the continued operation of a business by a debtor
and a presumption of reasonableness attaches to a
debtor's management decisions.").

36.   As set forth above, the Debtors have
clearly articulated a sound business purpose for seeking
the relief sought in the Motion and have thus satisfied
the business judgment test.  The Sale of the Leases at
the Auctions and the accompanying proposed Bidding Proce-
dures, rejection procedures, and notice procedures are
clearly designed to maximize the value of the Leases for
the Debtors' estates while protecting the Debtors from
incurring unnecessary costs (which may total as much as
$7 million per week) with respect to Leases that are not
readily marketable.  Accordingly, for the reasons de-
tailed herein, the Debtors have determined that the re-

20

lief requested in the Motion is in their best interests
and the best interests of their estates, creditors and
parties in interest.

## II. LEASES SOLD PURSUANT TO A SALE SHOULD BE FREE AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES UNDER BANK-RUPTCY CODE SECTION 363(f)

37.  To facilitate the Sales of the Leases, the
Debtors request authorization to sell the Leases free and
clear of any and all Interests that may be asserted
against such Leases.

38.  Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such inter-
> est;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at
> which such property is sold is greater than the
> aggregate value of all liens on such property;
>
> (4) such interest is in bona fide    dispute;
> or
>
> (5) such entity could be compelled, in a legal
> or equitable proceeding, to accept a money sat-
> isfaction of such interest.

11 U.S.C. § 363(f).

39.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

40.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. W. Va. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

41.  Accordingly, this Court should authorize the Debtors to sell the Leases free and clear of any and all Interests that may be asserted by any parties, with any such Interests attaching to the net proceeds of the Sales of the Leases in the same order and priority as they exist against the such Leases and in accordance with the terms and provisions of the DIP Facility.

### III. ANY PURCHASER SHOULD BE GRANTED THE PROTECTION OF BANKRUPTCY CODE SECTION 363(m).

42.  The disposition of the Debtors' Leases pursuant to the terms reflected in any assumption, as-signment and purchase agreement (an "Agreement") that re-sults from the bids submitted for or at the Auctions, pursuant to the Bidding Procedures, represents an ac-cepted method for the Sale of Leases that has been ap-proved in numerous chapter 11 cases of retailers. See, e.g., In re The Rowe Companies, Case No. 06-11142 (SSM)(Bankr. E.D. Va. Dec. 20, 2006).  Under the Bidding Procedures, any Agreement would be negotiated at arm's-length.  These negotiations will likely involve substan-tial time and energy by the parties and their profession-

als, and any Agreement will undoubtedly reflect give-and-take and compromises by both sides.

43.    Accordingly, the Debtors should be permitted to enter into any Agreement(s) with any purchaser(s).

44.    At the Sale Hearings, the Debtors intend to present evidence that Agreements were negotiated at arm's-length and in good faith, after other parties and their qualifications and proposals were considered, and after the Auction process.  Thus, the Debtors will seek and respectfully request that this Court find that any purchaser acted in good faith within the meaning of Bankruptcy Code section 363(m).

45.    Specifically, Bankruptcy Code section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

24

46.   While the Bankruptcy Code does not define
"good faith", the Fourth Circuit Court of Appeals has
"adopt[ed] the traditional equitable definition that has
been adopted by various courts of appeal: 'one who pur-
chases the assets for value, in good faith, and without
notice of adverse claims.'" <u>Willemain v. Kivitz</u>, 764
F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

47.   Additionally, the Bidding Procedures en-
sure that a prospective purchaser will not be able to ex-
ert any undue influence over the Debtors.  Under the cir-
cumstances, and after considering the record to be pre-
sented by the Debtors at the applicable Sale Hearing,
this Court should find that (i) the Sale of the Leases
pursuant to an Agreement is the result of good faith
arm's-length negotiations, and (ii) the ultimate pur-
chaser is entitled to all of the protections of Bank-
ruptcy Code section 363(m).

## IV.   APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASES IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.

48.   Section 365(f)(2) of the Bankruptcy Code
provides that:

> The trustee may assign an executory contract or
> unexpired lease of the debtor only if –

25

> (A)   the trustee assumes such contract or
> lease in accordance with the provisions of
> this section; and
>
> (B)   adequate assurance of future perform-
> ance by the assignee of such contract or
> lease is provided, whether or not there
> has been a default in such contract or
> lease.

11 U.S.C. § 365(f)(2).

49.   Under section 365(a) of the Bankruptcy
Code a debtor, "subject to the court's approval, may as-
sume or reject any executory contract or unexpired lease
of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1)
of the Bankruptcy Code, in turn, codifies the require-
ments for assuming an unexpired lease or executory con-
tract of a debtor.  It provides:

> If there has been a default in an execu-
> tory contract or unexpired lease of the
> debtor, the trustee may not assume such
> contract or lease unless, at the time of
> the assumption of such contract or lease,
> the trustee –
>
> (A)   cures, or provides adequate as-
> surance that the trustee will promptly
> cure, such default;
>
> (B)   compensates, or provides ade-
> quate assurance that the trustee will
> promptly compensate, a party other than
> the debtor to such contract or lease, for

26

any actual pecuniary loss to such party
resulting from such default; and

(C)   provides adequate assurance of
future performance under such contract or
lease.

11 U.S.C. § 365(b)(1).

50.   Courts give the phrase "adequate assurance
of future performance" a "practical, pragmatic construc-
tion." <u>EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g
Corp. (In re Sanshoe Worldwide Corp.)</u>, 139 B.R. 585, 592
(S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 300 (2d Cir. 1993)
(presence of adequate assurance should be "determined un-
der the facts of each particular case").   To the ex-
tent that any defaults exist under any of the Leases that
are to be assumed and assigned in connection with the
Sale, the Debtors (or the Successful Bidder) would cure
any such default.

51.   The Bidding Procedures are also designed
to ensure that any Potential Purchaser has the financial
resources to perform under the Leases and is required to
provide adequate assurance of future performance under
any Lease for which they render a bid.   Moreover, if nec-
essary, the Debtors will adduce facts at the applicable

Sale Hearing demonstrating the financial wherewithal of
any purchaser, and its willingness and ability to perform
under the Lease(s) to be assumed and assigned to it.

**V.   THE ABANDONMENT OF THE ABANDONED PROPERTY SHOULD BE
AUTHORIZED UNDER BANKRUPTCY CODE SECTION 554.**

52.   Bankruptcy Code section 554(a) provides
that "[a]fter notice and a hearing, the trustee may aban-
don any property of the estate that is burdensome to the
estate or that is of inconsequential value and benefit to
the estate."   11 U.S.C. § 554(a).   Courts give debtors in
possession great deference to their decisions to abandon
under section 554.   See In re Vel Rey Props., Inc., 174
B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court
should give deference to the trustee's judgment in such
matters.").   Unless the property is harmful to the public,
once the debtors in possession have shown that the prop-
erty is burdensome or of inconsequential value and bene-
fit, the court should approve the abandonment.   Id. at
868.

53.   The Debtors believe that the costs of mov-
ing and storing the Abandoned Property would far outweigh
any benefit to their estates.   Moreover, the Debtors be-

lieve that any efforts to move the Abandoned Property
would unnecessarily delay the rejection of the Leases.
Therefore, it is in the Debtors' best interests to aban-
don the Abandoned Property located at the premises cov-
ered by the Leases.

**VI.  THE TEN-DAY STAYS PROVIDED BY BANKRUPTCY RULES 6004
AND 6006 SHOULD BE WAIVED FOR ANY AND ALL ORDERS AP-
PROVING SALE(S) OF THE DEBTORS' ASSETS.**

54.  Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of prop-
erty is stayed until the expiration of 10 days after en-
try of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule
6006(d) provides that: "[a]n order authorizing the trus-
tee to assign an executory contract or unexpired lease
under Sec. 365(f) is stayed until the expiration of 10
days after the entry of the order, unless the court or-
ders otherwise."  Fed. R. Bankr. P. 6006(d).

55.  The Debtors request that the Court waive
the ten-day stays of Bankruptcy Rules 6004 and 6006 with
respect to the Closing of Sales of the Leases following
entry of the Sale Orders or any other order approving a
Sale of the Leases.  A Closing, within two (2) business

days following the later of (i) the applicable Sale Hear-

ing date or (ii) the applicable Sale Termination Date, as

described in the Bidding Procedures, will save the Debt-

ors continued accrual of administrative expenses under

any Leases that are sold, and thus benefit the Debtors'

estates.

### NOTICE

56.   Notice of this Motion has been provided to

those parties who have requested notice pursuant to Bank-

ruptcy Rule 2002 and the Core Group (as defined in the

Order Pursuant to Bankruptcy Code Sections 102 and 105,

Bankruptcy Rules 2002 and 9007, and Local Bankruptcy

Rules 2002-1 and 9013-1 Establishing Certain Notice, Case

Management, and Administrative Procedures (Docket No. 130;

the "Case Management Order")), as well as the Debtors'

landlords.  Under the circumstances, the Debtors submit

that no other or further notice is necessary or required.

### WAIVER OF MEMORANDUM OF LAW

57.   Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law pre-

sented in the Motion and all applicable authority is set

forth in the Motion, the Debtors request that the re-

quirement that all motions be accompanied by a separate

memorandum of law be waived.

### NO PRIOR REQUEST

58.  No previous request for the relief sought

herein has been made to this Court or any other court.

### CONCLUSION

WHEREFORE, the Debtors respectfully request

that the Court enter the Bidding and Rejection Procedures

Order, substantially in the form annexed hereto, granting

the relief requested in the Motion and such further re-

lief as may be just and proper.

Dated: February 3, 2009
      Richmond, Virginia     SKADDEN, ARPS, SLATE, MEAGHER &
                        FLOM, LLP
                        Gregg M. Galardi, Esq.
                        Ian S. Fredericks, Esq.
                        P.O. Box 636
                        Wilmington, Delaware 19899-0636
                        (302) 651-3000

                                - and –

                        SKADDEN, ARPS, SLATE, MEAGHER &
                        FLOM, LLP
                        Chris L. Dickerson, Esq.
                        333 West Wacker Drive
                        Chicago, Illinois 60606
                        (312) 407-0700

                                - and –

                        MCGUIREWOODS LLP

                        /s/ Douglas M. Foley
                        Dion W. Hayes (VSB No. 34304)
                        Douglas Foley (VSB No. 34364)
                        One James Center
                        901 E. Cary Street
                        Richmond, Virginia 23219
                        (804) 775-1000

                        Counsel for Debtors and Debtors
                        in Possession

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653-KRH
et al.,                       :
                              :
            Debtors.          :  Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363, AND**
**365 (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR SALE OF**
**UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES,**
**(II) SETTING SALE HEARING DATES AND (III) AUTHORIZING**
**AND APPROVING (A) SALE OF CERTAIN UNEXPIRED**
**NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF**
**ALL INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES AND**
**(C) LEASE REJECTION PROCEDURES**

        Upon consideration of motion, dated February 3,

2009 (the "Motion"),[1] of Circuit City Stores, Inc. and
certain of its subsidiaries, debtors and debtors in pos-
session in the above-captioned cases (collectively, the
"Debtors"), for orders under sections 105(a), 363 and
365 of title 11 of the United States Code (the "Bank-
ruptcy Code") and Rules 2002, 6004, 6006, and 9014 of
the Federal Rules of Bankruptcy Procedure (the "Bank-
ruptcy Rules"), (i) approving the bidding and auction
procedures for sale of certain nonresidential real prop-
erty leases set forth herein and attached hereto as Ex-
hibit 1 (the "Bidding Procedures"), (ii) setting dates
for sale hearings (the "Sale Hearings"), and (iii) au-
thorizing and approving (a) the sale (the "Sale") of
certain unexpired nonresidential real property leases
(the "Leases", comprising the February Leases and the
March Leases, each as defined in the Motion) free and
clear of all interests, including liens, claims, and en-
cumbrances (collectively, the "Interests"), (b) the as-
sumption and assignment of the Leases, and (c) lease re-
jection procedures for any Leases that are not sold in
connection with the foregoing; and upon the record of

---

[1]      Capitalized terms not otherwise defined herein shall have the
meanings ascribed to them in the Motion.

the hearing held on February 13, 2009 (the "Bidding And Rejection Procedures Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. § § 1408 and 1409.

D.   The relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest.

E.   The notice of the Motion and the Bidding And Rejection Procedures Hearing given by the Debtors constitutes due and sufficient notice thereof.

---

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

F.   The Debtors have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) approve the rejection procedures, (ii) set dates for the Sale Hearings, (iii) approve the manner of notice of the Motion, the Sale Hearings, the assumption and assignment of certain of the Leases, and the rejection of certain of the Leases, (iv) approve the form of notice of the Motion, the Sale Hearings, the assumption and assignment of certain of the Leases, and the rejection of certain of the Leases and (v) approve procedures with respect to objections to Proposed Cure Amounts (as defined below) and to the assumption and assignment of the Leases to be filed with the Court and served on the non-Debtor counterparties thereto.

G.   The Bidding Procedures and the rejection procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Leases.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.   The relief requested in the Motion is GRANTED to the extent set forth herein.

4

2.   The Bidding Procedures, substantially in
the form set forth on <u>Exhibit 1</u> attached hereto and in-
corporated herein by reference as if fully set forth
herein, are hereby approved.

3.   Pursuant to the Bidding Procedures, the
Debtors may, among other things: (i) determine, in their
business judgment, which Qualified Bid is the highest or
otherwise best offer for a Lease or Leases or (ii) re-
ject at any time before entry of an order of the Court
approving a Qualified Bid (such order, a "Sale Order"),
any bid which, in the Debtors' sole discretion, is (a)
inadequate or insufficient, (b) not in conformity with
the Bidding Procedures or applicable law or (c) contrary
to the best interests of the Debtors, their estates, and
their stakeholders.  The Debtors are authorized to ter-
minate the bidding process or the auctions (with respect
to February Leases, the "February Lease Auction," with
respect to March Leases, the "March Lease Auctions," and
collectively, the "Auctions") at any time if they deter-
mine, in their business judgment, that the bidding proc-
ess will not maximize the value of the Leases to be re-
alized by the Debtors' estates.

      4.    The Court shall hold the Sale Hearings on February 25, 2009, March 20, 2009, March 30, 2009 and April 14, 2009 at 10:00 a.m. (ET) in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, at which time the Court shall consider the disposition of certain of the Leases, as set forth in the Bidding Procedures and the Motion.  At each Sale Hearing, pursuant to the terms and conditions set forth in the Motion, the Court will, among other things, (i) approve the Successful Bidder(s) for the respective Lease(s) as to which there are no objections, (ii) confirm the results of the most recent Auction, if any, and (iii) confirm the rejection of the Leases for which the Rejection Date has been determined.  The Sale Hearings or any portion thereof, such as with respect to the proposed assumption and assignment of a particular Lease, may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for such Sale Hearing or on any adjourned date.

5.    Pursuant to the Motion, one business day
prior to each Auction, the Debtors will file a list of
Leases subject to such Auction and a schedule (each, a
"Cure Schedule") of proposed cure amounts (the "Proposed
Cure Amounts") with respect to such Leases with the
Court.  Concurrent with the filing, the Debtors will
post the Cure Schedule on the website for the Debtors'
claims and noticing agent, www.kccllc.net/circuitcity.

6.    To the extent that the Lease counterparty
(the "Lessor") fails to object or otherwise respond to
the Proposed Cure Amount (a "Cure Objection") on or be-
fore 12:00 p.m. (ET) on the business day prior to the
applicable Sale Hearing, the Proposed Cure Amount shall
constitute the sole amount necessary under sections
365(b)(l)(A) and (B) and 365(f)(2)(A) of the Bankruptcy
Code to cure all defaults and pay all actual pecuniary
losses under the Lease and the Lessor is forever barred
and enjoined from asserting a cure amount different from
that set forth on the applicable Cure Schedule (except
for any amounts accruing from the date of the Cure
Schedule through the date of assignment of the Lease).
To the extent that the Lessor has asserted that the cure

amount is other than the Proposed Cure Amount (the "Cure
Amount") and has lodged a timely and valid Cure Objec-
tion, such objection will be resolved either at the ap-
plicable Sale Hearing or such later date as may be de-
termined by the Court.  The Debtors (or the Successful
Bidder, as the case may be) shall pay the undisputed
portion of the Cure Amount for the Lease as soon as
practicable following the Closing.  The disputed portion
of the Cure Amount shall be paid following the earlier
of (i) the date the Debtor (or the Successful Bidder, as
the case may be) and the Lessor reach an agreement as to
the appropriate Cure Amount or (ii) if necessary, the
date of entry of an order by the Court fixing the Cure
Amount. Compliance with this Paragraph of the Order con-
stitutes payment of the Cure Amount as otherwise pro-
vided in this Order.

7.   The Debtors shall provide (by email, if
available, or U.S. first class mail) the Lessor of each
Lease on which a potential purchaser, other than the
Lessor itself, has submitted a Qualified Bid pursuant to
the Bidding Procedures (each, a "Potential Purchaser")
with a notice of Potential Purchaser substantially in

the form attached hereto as <u>Exhibit 4</u> (the "Potential
Purchaser Notice").  The Debtors shall provide the Po-
tential Purchaser Notice to Lessors on or before the
business day upon the conclusion of the Auction to which
their Lease was subject.  The Potential Purchaser Notice
will identify the Potential Purchasers as potential par-
ties to which the Leases would be assigned and provide
that adequate assurance of future performance informa-
tion with regard to such Potential Purchasers will be
made available to the Lessor upon request of the Debt-
ors.

8.   Lessors who wish to contest the assump-
tion and/or assignment of a Lease by a Potential Pur-
chaser on adequate assurance of future performance or
other grounds must file their objections by 12:00 p.m.
(ET) on the business day immediately preceding the Sale
Hearing at which such Lease is to be assumed and as-
signed.  Any such timely filed and valid objections will
be resolved, as necessary, either at the applicable Sale
Hearing or such later date as may be scheduled by the
Court.  Such properly filed objections to assumption and

assignment may be orally supplemented at the Sale Hear-
ing.

9.    If the Lessor for any Lease that is sub-
ject to a Potential Purchaser Notice fails to file and
serve an objection in accordance with the instructions
in the Potential Purchaser Notice or this Order, the
Court may authorize the assumption and assignment of the
applicable Lease at the applicable Sale Hearing and the
Lessor will be deemed to have consented to the assump-
tion and assignment of the Lease to a Potential Pur-
chaser that is selected as the Successful Bidder and
will be forever barred from asserting any other claims
as to such Lease, including, but not limited to, the
propriety or effectiveness of the assumption and assign-
ment of the Lease, against the Debtors or the Successful
Bidder, or the property of either of them.

10.    Any Lease for which either (i) no Poten-
tial Purchaser has submitted a bid or (ii) the Debtors
have not served a Rejection Notice (as defined below),
shall be deemed rejected as of the later of (a) February
28, 2009 for February Leases or March 31, 2009 for March
Leases, (b) the Sale Termination Date or (c) the date

that the Debtors have surrendered the premises to the
Lessor by fulfilling the Rejection Requirements (as de-
fined herein) (such date, the "Outside Rejection Date").

11.  In order to effectively surrender the
premises, the Debtors shall be required to use commer-
cially reasonable efforts to (i)(a) disarm the alarm,
(b) transmit alarm codes to the applicable Lessor, or
(c) advise the Lessor in writing that they are unable to
provide the alarm codes despite commercially reasonable
efforts to do so and (ii)(a) return keys to the applica-
ble Lessor or (b) advise the applicable Lessor that the
keys cannot be returned despite commercially reasonable
efforts to do so (such measures, the "Rejection Require-
ments").

12.  The Debtors may provide the Lessor with
notice of rejection, substantially in the form attached
hereto as Exhibit 5 (the "Rejection Notice").  The Re-
jection Notice shall specify the date of rejection,
which date shall be not less than seven (7) days from
the date the Notice is received by the Lessor (such
date, the "Early Rejection Date") (the Early Rejection
Date and the Outside Rejection Date, as applicable, are

11

collectively referred to herein as the "Rejection
Date"). In the event that the Debtors provide the Les-
sor with a Rejection Notice, Debtors will surrender the
premises to the Lessor prior to the Early Rejection Date
by fulfilling the Rejection Requirements.

13.    The Debtors shall post the results of the
Auctions at www.kccllc.net/circuitcity no later than
12:00 noon (ET) on the business day immediately follow-
ing the conclusion of each Auction.

14.    Upon the failure to consummate a Sale of
a Lease or Leases because of a breach or failure on the
part of the Successful Bidder with respect to such Lease
or Leases, the Debtors are authorized to and shall re-
tain the Successful Bidder's Good Faith Deposit as liq-
uidated damages, and the Alternative Bidder, if any,
with respect to such Lease or Leases shall be deemed the
Successful Bidder and shall consummate the Sale of the
Lease without further order of the Court.

15.    The Debtors are authorized to enter into
lease termination agreements with Lessors who are the
Successful Bidders on their own Leases. Approval of the
lease termination agreements shall be considered at the

applicable Sale Hearing or on such other date agreed upon by the parties.

16.   Unless otherwise provided for by the Debtors, any personal property remaining at a Closing Location as of the date that the assignment, termination or rejection of the respective Lease is effective shall be deemed abandoned to the Lessor, if the Lease is rejected or terminated, or (if agreed to by the Debtors and the assignee) to the assignee, if the Lease is assumed and assigned.  The Lessor or the assignee may retain or dispose of such property without liability or claim by any third party.

17.   Any and all objections as contemplated by the Bidding Procedures and this Order must (a) be in writing, (b) state, with specificity, the legal and factual basis therefor, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 0130) (the "Case

13

Management Order"), (d) be filed with Bankruptcy Court
and (e) be served in accordance with the Case Management
Order so as to be **received** on or before 12:00 p.m. (ET)
on the business day immediately preceding the applicable
Sale Hearing.

18.   The failure of any objecting person or
entity to timely file and serve its objection by the ap-
propriate objection deadline shall be a bar to the as-
sertion, at the applicable Sale Hearing or thereafter,
of any objection to the Motion, the Sale or the Debtors'
transfer of the Leases free and clear of all Interests,
with the exception of any objection to the conduct of
the Auctions or the Debtors' selection of a Successful
Bidder, which may be made two (2) business days follow-
ing the end of the applicable Auction or at the applica-
ble Sale Hearing, whichever is earlier.

19.   This order shall be immediately effective
and enforceable upon its entry and there shall be no
stay of execution of this Order.

20.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

21.  This Court shall retain jurisdiction to

hear and determine all matters arising from the imple-

mentation of this Order.

Dated:  Richmond, Virginia
        February __, 2009


_____

UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and
Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                    /s/ Douglas M. Foley____
                    Douglas M. Foley

**EXHIBIT 1**

(Bidding Procedures)

# CIRCUIT CITY STORES, INC.
## LEASE SALE BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of the interest held by Circuit City Stores, Inc. ("Circuit City") or certain of its affiliates, including certain affiliated chapter 11 debtors and debtors in possession (together with Circuit City, the "Debtors") in certain unexpired nonresidential real property leases (the "Leases").

On February 3, 2009, the Debtors filed their Motion For Orders Under Bankruptcy Code Sections 105, 363, And 365 (I) Approving Bidding And Auction Procedures For Sale Of Unexpired Nonresidential Real Property Leases, (II) Setting Sale Hearing Dates, And (III) Authorizing And Approving (A) Sale Of Certain Nonresidential Real Property Leases Free And Clear Of All Interests, (B) Assumption And Assignment Of Certain Unexpired Nonresidential Real Property Leases, And (C) Lease Rejection Procedures (the "Sale Motion"). On February __ 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") entered an Order Under Bankruptcy Code Sections 105, 363, And 365 (I) Approving Bidding And Auction Procedures For Sale Of Unexpired Nonresidential Real Property Leases, (II) Setting Sale Hearing Dates And (III) Authorizing And Approving (A) Sale Of Certain Unexpired Nonresidential Real Property Leases Free And Clear Of All Interests, (B) Assumption And Assignment Of Certain Unexpired Nonresidential Real Property Leases And (C) Lease Rejection Procedures (the "Bidding And Rejection Procedures Order"). The Bidding and Rejection Procedures Order set (i) hearing dates for February 25, 2009, March 20, 2009, March 30, 2009 and April 14, 2009 or (ii) in each case, such later dates as may be determined by the Bankruptcy Court as the date when the Bankruptcy Court will conduct hearings (each, a "Sale Hearing") to authorize the Debtors to sell, assume, and assign their interests in the Leases.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bids become Qualified Bids (as defined herein), the receipt and negotiation of bids received, the conduct of any subsequent Auctions (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof. In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Assets To Be Sold

The assets proposed to be sold include the Debtors' inter-
est in the Leases identified in the schedule of Leases attached
as <u>Exhibit 2</u> (the "February Leases") and <u>Exhibit 3</u> (the "March
Leases") to the Bidding and Rejection Procedures Order.

### "As Is, Where Is"

Any sale, assignment, or other disposition of each of the
Leases will be on an "as is, where is" basis and without repre-
sentations or warranties of any kind, nature, or description by
the Debtors, their agents, or their estates.

### Free Of Any And All Interests

The Debtors shall request language in any order entered at
a Sale Hearing providing that all of the Debtors' rights, title
and interest in and to the Leases shall be assigned and sold
pursuant to sections 365(f) and 363(f) of title 11 of the United
States Code (the "Bankruptcy Code") free and clear of all inter-
ests, including, without limitation, liens, claims, encumbrances,
mortgages, and security interests, which shall attach to the net
proceeds received by the Debtors as a result of the Sale with
the same force and effect that they now have, subject to the
Debtors claims and defenses and further order of the Bankruptcy
Court.

### Due Diligence

Each Qualified Bidder (as defined herein) shall be deemed
to acknowledge: (a) that it had an opportunity to inspect and
examine the leased premises and to review the Lease(s) and all
other pertinent documents with respect to the Lease(s) prior to
making its offer and that each such Qualified Bidder relied
solely on that review and upon its own investigation and inspec-
tion of the leased premises in making its offer, (b) that Quali-
fied Bidder is not relying upon any written or oral statements,
representations, promises, warranties, or guaranties whatsoever,
whether express, implied, by operation of law, or otherwise of
the Debtors, their agents or representatives; and (c) that the
occupancy of the premises set forth in the Leases may not be
available until the completion of any going out of business sale
at the premises.

## Bid Deadline

A bidder (the "Bidder" and collectively, the "Bidders") who desires to make a bid must deliver the Required Bid Documents (as defined herein) to:

(a)   Counsel for Debtors,
    (i)   Skadden, Arps, Slate, Meagher & Flom, LLP One Rodney Square, Wilmington, Delaware 19889, Attn.: Gregg Galardi, Esq., Fax: (888) 329-3792 (gregg.galardi@skadden.com) and Chris L. Dickerson, Esq. (chris.dickerson@skadden.com), Fax: (312) 407-8680, and

    (ii)   McGuireWoods LLP, One James Center, 901 East Cary Street, 40 Richmond, Virginia 23219, Attn.: Dion W. Hayes, Esq., Fax: (804) 698-2078 (dhayes@mcguirewoods.com) and Douglas M. Foley, Esq., Fax: (757) 640-3957 (dfoley@mcguirewoods.com);

(b)   Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attn.: Director of Real Estate, Fax: (804) 527-4866 ;

(c)   Counsel to the Official Committee of Unsecured Creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 11th Floor, Los Angeles, California 90067-4100, Attn.: Jeffrey N. Pomerantz, Esq., Fax: (310) 201-0760 (jpomerantz@pszjlaw.com);

(d)   Counsel for the Debtors post-petition lender (the "DIP Lender"),
    (i)   Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, Attn.: David S. Berman, Esq., Fax: (617) 880-3456 (dberman@riemerlaw.com), and

    (ii)   LeClair Ryan, Riverfront Plaza, East Tower, 951 East Byrd Street, Eighth Floor, Richmond, Virginia 23219, Attn.: Bruce Matson, Esq., Fax: (804) 783-7269 (bruce.matson@leclairryan.com);

(e)   The Office of the United States Trustee, 701 East Broad Street, Suite 4304, Richmond, VA 23219-1888, Attn.: Robert B. Van Arsdale, Esq., Fax. (804) 771-2330 (Robert.B.Van.Arsdale@usdoj.gov); and

(f)    DJM Realty Services, LLC, 445 Broadhollow Road, Suite
       225, Melville, New York 11747, Attn: James Avallone,
       Fax: (631) 752-1231 (javallone@djmrealty.com).

Bids on the February Leases must be sent to the above parties so
as to be received not later than **3:00 p.m. (ET) on February 18,
2009** (the "February Bid Deadline"). Bids on the March Leases
must be sent to the above parties so as to be received not later
than **3:00 p.m. (ET) on March 12, 2009** (the "March Bid Deadline"
and, together with the February Bid Deadline, the "Bid Dead-
lines").  The Debtors may extend the Bid Deadlines once or suc-
cessively, but are not obligated to do so.

**Bid Requirements**

     All bids must include the following documents (the "Re-
quired Bid Documents"):

(a)    A written offer on Bidder's corporate letterhead (or,
       if on behalf of Bidder by Bidder's legal counsel, then
       on Bidder's legal counsel's letterhead) for the pur-
       chase of one or more of the Leases that must include:
       (i) the full name and identity of the proposed as-
       signee of each individual Lease, (ii) the amount being
       offered for each individual Lease (if more than one
       Lease) in the form of an allocation schedule, (iii)
       the intended use of each premises covered by a Lease
       in Bidder's offer, (iv) adequate assurance of future
       performance information, including, but not limited to:
       (a) federal tax returns for two years, a current au-
       dited financial statement and/or bank account state-
       ments, (b) a description of intended use, and (c) any
       other information that the Debtors may reasonably re-
       quest ("Adequate Assurance Information"), and (v) ex-
       press authorization to provide the Adequate Assurance
       Information to the applicable lessor(s) (each, a "Les-
       sor") on a confidential basis. Such written offer must
       also expressly state that if Bidder is the successful
       Bidder, it is ready, willing, and able to execute an
       individual Agreement of Assumption and Assignment of
       Lease(s).

(b)    In the case of a real estate broker bidding on a
       Lease(s) as agent for a Bidder, the broker must submit
       the Required Bid Documents together with a letter of
       authorization on Bidder's corporate letterhead, exe-
       cuted by an authorized officer of the Bidder, stating

that (i) Bidder exclusively authorizes broker to sub-
mit such offer on behalf of Bidder and that, unless
otherwise agreed to in writing by Debtors, any commis-
sion or fee of any type due and payable to such broker
as a result of an assignment of Lease(s) shall be paid
solely by Bidder and Bidder shall indemnify Debtors,
their estates, the Committee, and the DIP Lender in
this regard, and (ii) Bidder acknowledges that it will
comply with these Bid Procedures.

(c)   In the case of a Lessor bidding on a Lease(s) to which
such Lessor is a party, a written offer on Lessor's
corporate letterhead (or, if on behalf of Lessor by
Lessor's legal counsel, then on Lessor's legal coun-
sel's letterhead) for the purchase of one or more of
the Leases that must include the gross amount offered
for each individual Lease (if more than one Lease) in-
cluding a breakdown identifying that portion which is
payable in cash to the Debtors and that portion, if
any, which is "credit bid".  In the event a Lessor
submits an offer that contemplates a credit bid, such
Lessor may credit bid not less than the full Cure
Amount (as defined in the Bidding and Rejection Proce-
dures Order) and/or any rejection damages claim; pro-
vided, that the Lessor must include as part of its bid
adequate supporting information/documentation to sub-
stantiate (i) the difference between the Proposed Cure
Amount (as defined in the Bidding and Rejection Proce-
dures Order) and the Cure Amount (the "Cure Differ-
ence") and/or (ii) such rejection damages claim; pro-
vided, further, that the Debtors shall have the right
to contest the Cure Difference and/or any rejection
damages claim on any grounds at the Auction and, in
the Debtors' discretion, ascribe no value to any re-
jection damages claim and limit the amount of the
credit bid to the Proposed Cure Amount; provided, fur-
ther, that failure to contest the Cure Difference at
the Auction shall not constitute a waiver of the Debt-
ors' right to contest the Cure Difference in accor-
dance with the Bidding and Rejection Procedures Order
or such other orders as may be entered by the Bank-
ruptcy Court.  Such written offer must expressly state
that if the Lessor is the successful Bidder, it is
ready, willing, and able to execute a reasonable short
form of Lease Termination Agreement(s), and the extent
to which, if any, it agrees to waive and release any
and all claims it may have against the Debtors, in-
cluding claims pursuant to section 502(b)(6) of the

Bankruptcy Code.   In the event a Lessor is the Suc-
cessful Bidder and the Bankruptcy Court determines or
the Debtors and each such Lessor agree that all or a
portion of the Cure Difference is not a valid obliga-
tion of the Debtors, each such Lessor shall, unless
otherwise agreed to by the Debtors and such Lessor,
within three (3) business days of such determination
or agreement, remit payment to the Debtors in the
amount so determined or agreed not to be a valid obli-
gation of the Debtors.   Notwithstanding anything to
the contrary herein, should the Debtors contest any
portion of the Cure Amount or ascribe no value to the
rejection damages claims, such acts shall not affect
whether the status of a bid as a Qualified Bid.

(d)   A good faith deposit equal to the greater of 15% of
the bid amount or $10,000 (the "Good Faith Deposit")
in the form of a certified bank check from a U.S. bank
or by wire transfer (or other form acceptable to the
Debtors in their sole discretion) payable to the order
of Circuit City Stores, Inc. (or such other party as
the Debtors may determine); provided, however, that a
Lessor bidding on its own Lease is exempt from this
requirement.

All written offers must expressly state that the Bidder's
offer is (and all offers will be considered to be) irrevocable
until the earlier to occur of (i) the Closing (as defined herein)
or (ii) forty-five (45) days following the applicable Auction
(unless such bid is sooner expressly rejected in writing by the
Debtors).

### Qualified Bids

A bid will be considered only if the bid:

(a)   is not conditioned on obtaining financing or on
the outcome of unperformed due diligence by the
bidder.

(b)   includes a commitment to consummate the purchase
of the Lease or Leases on or within two business
days following the later of (i) the applicable
Sale Hearing or (ii) the Sale Termination Date
(as defined in the Sale Motion) with respect to
such Lease.

6

      (c)    is received by the February Bid Deadline, for
February Leases, or the March Bid Deadline, for
March Leases.

      (d)    is an offer to purchase one or more of the Leases
for cash only, except that a Lessor can "credit
bid" in accordance herewith.

In addition, to be a Qualified Bid, each Bidder must be
prepared to demonstrate to the Debtors (i) its ability to con-
summate the purchase of the Lease(s), (ii) adequate assurance of
future performance under the Lease(s) and (iii) its ability to
otherwise fulfill its obligations under the Lease(s).

A bid will constitute a Qualified Bid only if it includes
all of the Required Bid Documents and meets all of the above re-
quirements (a "Qualified Bid,"); provided, however, the Debtors
will have the right, in their sole discretion, to entertain bids
for a Lease that do not conform to one or more of the require-
ments specified herein and may deem such bids to be Qualified
Bids.  A bidder from whom the Debtors receive a Qualified Bid
will be designated a "Qualified Bidder".

The February Lease(s) and other pertinent documents will be
available for inspection prior to the February Bid Deadline and
the March Lease(s) and other pertinent documents will be avail-
able for inspection prior to the March Bid Deadline, in each
case during regular business hours or pursuant to arrangements
made with counsel to the Debtors prior to the applicable Bid
Deadline for copies to be delivered to Bidder for inspection.

## Auctions

If the Debtors receive more than one Qualified Bid for a
February Lease or Leases, the Debtors will conduct an auction
(the "February Lease Auction") for those February Leases[1] at
10:00 a.m. (ET) on February 20, 2009 at the offices of Skadden,
Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New
York 10036 or such later time or other place as the Debtors may
notify all Qualified Bidders who have submitted Qualified Bids.

If the Debtors receive more than one Qualified Bid for a
March Lease or Leases, the Debtors will conduct auctions for the

---

[1]   The Debtors reserve the right, in their sole discretion, to conduct a pri-
vate sale for any Lease(s) or withdraw any Lease(s) from the auction proc-
ess.

Leases covered by such bid(s) on March 16, 2009, March 24, 2009,
and April 9, 2009 (the "March Lease Auctions" and, together with
the February Lease Auction, the "Auctions") for those March
Leases at 10:00 a.m. (ET) on such dates at the offices of Skad-
den, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York,
New York 10036 or such later time or other place as the Debtors
may notify all Qualified Bidders who have submitted Qualified
Bids.  Bids for March Leases will be subject to the next March
Auction following the Debtors' receipt of notice of the Sale
Termination Date (as defined in the Sale Motion) for those
Leases, or at such subsequent Auction as the Debtors deem appro-
priate.

Each Auction will be conducted in accordance with the fol-
lowing procedures:

Only the Debtors, members of the statutory committee of un-
secured creditors (the "Creditors' Committee"), the lenders un-
der the Debtors' post-petition financing agreement (the "DIP
Lenders"), those Lessors whose Leases are subject to the Auction
(and their legal and financial advisers) and any Qualified Bid-
ders who have timely submitted Qualified Bids for Leases which
are subject to the Auction will be entitled to attend the Auc-
tion.  A Qualified Bidder may request to attend the Auction
telephonically, provided, however, that the decision to honor
such a request will be at the sole discretion of the Debtors.
Only Qualified Bidders will be entitled to make any subsequent
Qualified Bids at the Auction.

Immediately prior to the commencement of the Auction, with
respect to the Qualified Bid or combination of Qualified Bids
which the Debtors determine to be the highest or otherwise best
offer for a Lease or Leases subject to that Auction, the Debtors
will provide information as to the identity of such Qualified
Bidder(s) and the purchase price associated with such Qualified
Bid(s) to all Qualified Bidders for that Lease who have informed
the Debtors of their intent to participate in the Auction.  Not-
withstanding such determination, the Debtors reserve the right,
in their sole discretion, to determine which bid, or subsequent
bid, is the Successful Bid (as defined herein), following the
conclusion of the Auction based upon a number of factors and
other considerations.

In the event the Debtors receive only a single Qualified
Bid for a particular Lease(s), such Lease(s) will not be subject
to bidding at the Auctions, and the Debtors may seek to assume
and assign such Lease(s) at the Sale Hearing following the ap-
plicable Auction, if such Qualified Bid is otherwise acceptable

8

to the Debtors. In the event the Debtors receive multiple Quali-
fied Bids for a particular Lease, such Lease, unless previously
sold, otherwise disposed of or withdrawn, will be offered for
sale at the applicable Auction, either in bulk or separately.

A minimum Qualified Bid amount for each Lease may be an-
nounced and/or posted prior to the Auction.  Such minimum Quali-
fied Bid amounts may be established based upon a variety of fac-
tors, including: the highest bids received with respect to a
Lease(s) prior to the Auction, the establishment of appropriate
Cure Amounts, if any, arising under section 365 of the Bank-
ruptcy Code, as they pertain to a Lease(s) together with their
estimated related assignment transaction costs so as to make an
assignment of a Lease(s) economically viable. All bidding shall
be in increments determined by the Debtors and their advisors.

All Qualified Bidders who have timely submitted Qualified
Bids will be entitled to be present for all subsequent bids with
the understanding that the true identity of each bidder and the
purchase price of each subsequent bid will be fully disclosed to
all other bidders throughout the entire Auction and put on the
record.

The Debtors may employ and announce at each Auction addi-
tional procedural rules that are reasonable under the circum-
stances for conducting the Auction (e.g., the amount of time al-
lotted to make subsequent bids), provided that such rules are
not inconsistent with these Bidding Procedures, the Bankruptcy
Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), the local rules issued by the United States Bankruptcy
Court for the Eastern District of Virginia (the "Local Bank-
ruptcy Rules") or any order of the Bankruptcy Court entered in
connection herewith.

The Debtors intend to sell their interest to the Bidder
making the highest or otherwise best Qualified Bid at the appli-
cable Auction for each Lease.  Formal acceptance of a bid will
not occur unless and until the Court enters an order approving
and authorizing the Debtors to consummate the assumption and as-
signment and Sale of the Lease(s) to such Bidder or its desig-
nated assignee.

ALL SALES SHALL BE SUBJECT TO APPROVAL OF THE DEBTORS' DIP
LENDERS AND THE BANKRUPTCY COURT.

## Selection Of Successful Bid

At the conclusion of the foregoing steps in the Auctions, or as soon thereafter as practicable, the Debtors, in their sole discretion after consultation with their advisors, the DIP Lenders' advisors and the Creditors' Committee's advisors, will announce for each Lease which bid is the highest or otherwise best bid (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)") and which bid is the second highest or otherwise best bid, if any (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)"). The Successful Bidder shall supplement its Good Faith Deposit within one business day so that, to the extent necessary, such Good Faith Deposit equals twenty percent (20%) of the Successful Bid.

The Debtors reserve the right (i) to determine which Qualified Bid, if any, for any or all of the Leases is the highest or otherwise best bid and (ii) to reject, at any time prior to entry of an order of the Bankruptcy Court approving the bid, any bid which the Debtors, in their sole discretion, deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or these Bidding Procedures, or (z) contrary to the best interests of the Debtors, their estates and creditors. The Debtors will have no obligation to accept or submit for Court approval any offer presented at the Auctions except such written offers as may have been accepted by the Debtors.

The Debtors will sell the Lease(s) to the Successful Bidder(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the applicable Sale Hearing.  The Debtors presentation of a particular Successful Bid to the Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at a Sale Hearing.

## The Sale Hearings

The Sale Hearings will be held before the Honorable Kevin R. Huennekens on February 25, 2009, March 20, 2009, March 30, 2009 and April 14, 2009, in each case at 10:00 a.m. (ET) in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, but may be adjourned or rescheduled in the Debtors' sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing.

10

If the Debtors do not receive any Qualified Bids for a February Lease or Leases by the February Bid Deadline, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing on February 25, 2009 and will proceed with the rejection of such February Leases as set forth in the Sale Motion and the Bidding and Rejection Procedures Order. If the Debtors do not receive any Qualified Bids for a March Lease or Leases by the March Bid Deadline, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing on March 20, 2009 and will proceed with the rejection of such March Leases as set forth in the Sale Motion and the Bidding and Rejection Procedures Order.

If the Debtors receive one or more than one Qualified Bid for a February Lease(s), then, at the Sale Hearing on February 25, 2009, the Debtors will seek approval of the Successful Bid for that Lease(s), and, at the Debtors' election, the Alternate Bid, as well as the Sale, assumption and assignment of the Lease or Leases to the Successful Bidder.

If the Debtors receive one Qualified Bid for a March Lease(s), then, at the Sale Hearing on March 20, 2009, or at such subsequent Sale Hearing as the Debtors deem appropriate, the Debtors will seek approval of such Qualified Bid, as well as the Sale, assumption and assignment of the Lease or Leases to the Qualified Bidder. If the Debtors receive more than one Qualified Bid for a March Lease(s), then, at the Sale Hearing following the Auction to which such Lease(s) was subject, the Debtors will seek approval of the Successful Bid, and, at the Debtors' election, the Alternate Bid, as well as the Sale, assumption and assignment of the Lease or Leases to the Successful Bidder.

### The Closing

Except as otherwise provided in a written offer that has been accepted by the Debtors, upon approval of the Sale, assumption, and assignment of the Lease to the Successful Bidder by the Bankruptcy Court at a Sale Hearing, the closing (the "Closing") of the Sale of a Lease shall take place on or within two business days following the later of (i) the applicable Sale Hearing or (ii) the Sale Termination Date with respect to such Lease. With respect to the Closing, time of performance by the Successful Bidder is of the essence.

Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the Sale because of: (i) failure of a condition precedent beyond the con-

trol of either the Debtors or the Successful Bidder or (ii) a
breach or failure to perform on the part of such Successful Bid-
der(s), then the Debtors shall retain the Good Faith Deposit as
liquidated damages and the Alternate Bid(s) will be deemed to be
the Successful Bid(s) and the Debtors will be authorized, but
not directed, to effectuate a Sale to the Alternate Bidder(s)
subject to the terms of the Alternate Bid(s) of such Alternate
Bidder(s) without further order of the Bankruptcy Court.

The balance of the purchase price shall be paid by the Suc-
cessful Bidder by wire transfer or an endorsed bank or certified
check at the Closing.

## Return Of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders (except
for the Successful Bidder) for Leases will be held in an escrow
account and all Qualified Bids will remain open (notwithstanding
Bankruptcy Court approval of a Sale pursuant to the terms of one
or more Successful Bids by one or more Qualified Bidders), until
the earlier of (i) two business days following the Closing of
the Sale and (ii) forty-five (45) days following the applicable
Sale Hearing (the "Return Date").  Notwithstanding the foregoing,
the Good Faith Deposit, if any, submitted by the Successful Bid-
der(s), will be applied against the payment of the purchase
price upon Closing of the Sale to the Successful Bidder(s).  If
a Successful Bidder breaches its obligations under the Bidding
And Rejection Procedures Order or any agreement entered into
with respect to its Successful Bid or fails to consummate an ap-
proved Sale because of a breach or failure to perform on the
part of such Successful Bidder, the Debtors will not have any
obligation to return the Good Faith Deposit, and such Good Faith
Deposit will irrevocably become property of the Debtors.  On the
Return Date, the Debtors will return the Good Faith Deposits of
all other Qualified Bidders for Leases, together with the ac-
crued interest thereon.

## Reservations Of Rights

The Debtors: (i) may determine which Qualified Bid, if any,
is the highest or otherwise best bid and (ii) may reject at any
time any bid that is: (a) inadequate or insufficient, (b) not in
conformity with the requirements of the Bankruptcy Code, the
Bankruptcy Rules, the Local Bankruptcy Rules or these Bidding
Procedures, or (c) contrary to the best interests of the Debtors,
their estates and creditors as determined by the Debtors in
their sole discretion.

### Miscellaneous Terms of Sale

Unless otherwise indicated by the Debtors at the Auction, Sales of the Leases shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in the premises whether or not owned by the Debtors. The Debtors reserve the right either to sell such personal property to the Successful Bidder or to any other party, to abandon any or all of the personal property located at each of the locations pursuant to the Sale Motion, or to make such other arrangements as may be appropriate.

All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the assignment of the Leases or the sale of personal property of the Debtors in connection therewith shall be the sole responsibility of the Successful Bidder and shall be paid to the Debtors at the Closing of each transaction.

The Debtors, at or before each Auction, may impose or modify the terms and conditions herein as they determine to be in the best interests of the Debtors, their estates, creditors and other parties in interest. The Debtors may revise the procedures herein without Court approval to enable Qualified Bidders to submit Qualified Bids for smaller subsets of Leases of a greater package submitted by such Qualified Bidders, provided no new Leases are included in such package.

**EXHIBIT 2**

(February Leases)

[TO BE FILED PRIOR TO HEARING]

Case 08-35653-KRH    Doc 4946-1    Filed 12/29/11    Entered 12/29/11 15:50:13    Desc
Proposed Order    Page 32 of 45

**EXHIBIT 3**

(March Leases)

[TO BE FILED PRIOR TO HEARING]

# EXHIBIT 4

(Potential Purchaser Notice)

Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
One Rodney Square  
PO Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000

Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB No. 34364)  
MCGUIREWOODS LLP  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000

- and -

Chris L. Dickerson, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
333 West Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700

Counsel to the Debtors and  
Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653-KRH
et al.,                       :
                              :
            Debtors.[1]       :    Jointly Administered
                              :
                              :    Hrg. Date: _____ at
                              :    10:00 a.m. (ET)
                              :    Obj. Due: _____ at
- - - - - - - - - - - - - - x    12:00 p.m. (ET)
```

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC *(cont'd)*

**NOTICE TO COUNTERPARTIES TO LEASES THAT THE DEBTORS HAVE
IDENTIFIED A POTENTIAL PURCHASER OF UNEXPIRED
NONRESIDENTIAL REAL PROPERTY LEASE**

            PLEASE TAKE NOTICE that pursuant to the bid-
ding procedures (the "Bidding Procedures")[2] approved by
the Bankruptcy Court for the Eastern District of Vir-
ginia (the "Bankruptcy Court") in the Order Under Bank-
ruptcy Code Sections 105, 363, And 365 (I) Approving
Bidding And Auction Procedures For Sale Of Unexpired
Nonresidential Real Property Leases, (II) Setting Sale
Hearing Dates And (III) Authorizing And Approving (A)
Sale Of Certain Unexpired Nonresidential Real Property
Leases Free And Clear Of All Interests, (B) Assumption
And Assignment Of Certain Unexpired Nonresidential Real
Property Leases And (C) Lease Rejection Procedures (the
"Bidding And Rejection Procedures Order") (Docket No. __)
entered on February __, 2009, the debtors and debtors in
possession in the above captioned cases (collectively,
the "Debtors") have identified a potential purchasers
(the "Potential Purchaser," as listed on Schedule 1 at-
tached hereto) of a lease or leases to which you are a
counterparty (each, a "Lease").

            PLEASE TAKE FURTHER NOTICE that an auction
(the "Auction") for the Debtors' interest in the Lease
or Leases was held at 10:00 a.m. (ET) on _____, 2009
at the offices of Skadden, Arps, Slate, Meagher & Flom
LLP, 4 Times Square, New York, New York 10036 and that,
following the Auction, the Potential Purchaser was iden-
tified as the Successful Bidder for the Lease.

            PLEASE TAKE FURTHER NOTICE pursuant to the
Bidding Procedures, the Lease to which you are a coun-
terparty will be assumed and assigned to the Potential

---

*(cont'd from previous page)*
      (3360), and Circuit City Stores PR, LLC (5512).  The address for
      Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
      Westminster, Colorado 80031.  For all other Debtors, the address
      is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]    Capitalized terms not otherwise defined herein shall have the
      meanings ascribed to them in the Bidding Procedures.

Purchaser if the sale to the Potential Purchaser is ap-
proved by the Bankruptcy Court at the sale hearing to be
held on _____, 2009 at 10:00 a.m. (ET) (the "Sale
Hearing") in the United States Bankruptcy Court for the
Eastern District of Virginia, 701 East Broad Street,
Room 5000, Richmond, VA 23219.

PLEASE TAKE FURTHER NOTICE that objections, if
any, to the assumption and assignment of a Lease to a
Potential Purchaser must (a) be in writing, (b) state
with specificity the legal and factual basis for such
objection, (c) conform to the Federal Rules of Bank-
ruptcy Procedure, the Local Bankruptcy Rules for the
Eastern District of Virginia, and the Order Pursuant to
Bankruptcy Code Sections 102 and 105, Bankruptcy Rules
2002 and 9007, and Local Bankruptcy Rules 2002-1 and
9013-1 Establishing Certain Notice, Case Management, and
Administrative Procedures (Docket No. 0130) (the "Case
Management Order"), (d) be filed with Bankruptcy Court
and (e) served in accordance with the Case Management
Order so as to be **received** on or before **12:00 p.m. (ET)
on the business day immediately preceding the Sale Hear-
ing.**

PLEASE TAKE FURTHER NOTICE that if an objec-
tion to the assumption and assignment of a Lease is
timely filed and served in accordance with the proce-
dures above, a hearing with respect to the objection
will be held before the Honorable Kevin R. Huennekens,
United States Bankruptcy Judge for the Eastern District
of Virginia at the Bankruptcy Court, 701 East Broad
Street, Room 5000, Richmond, VA 23219, at the Sale Hear-
ing or such other date and time as the Court may sched-
ule.  Only objections conforming to the requirements set
forth herein and timely filed and received will be con-
sidered by the Bankruptcy Court at such hearing.  Such
properly filed objections may be orally supplemented at
the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that if no objec-
tion is timely filed and received with regard to a Lease
or Leases, the non-Debtor counterparty to the Lease will
be deemed to have consented to the assumption and as-
signment of the Lease to a Potential Purchaser that is
selected as the Successful Bidder and will be forever

3

barred from asserting any other claims as to such Lease, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Lease, against the Debtors or the Successful Bidder, or the property of either of them.

PLEASE TAKE FURTHER NOTICE that the Debtors assert that pursuant to 11 U.S.C. § 365, there is adequate assurance that the Proposed Cure Amount set forth on the Cure Schedule filed with the Court and posted on the website of the Debtors' claims and noticing agent, www.kccllc.net/circuitcity will be paid in accordance with the terms of the Sale Order.  Further, the Debtors assert that there is adequate assurance of the Potential Purchasers' future performance under the Lease to be assumed and assigned.  Adequate Assurance Information, which includes information regarding the financial wherewithal of the Potential Purchaser, will be made available upon reasonable request of the Debtors (through their counsel by email to Gregg.Galardi@skadden.com, Ian.Fredericks@skadden.com; and T.Kellan.Grant@skadden.com) and evidence of the same will be adduced, if necessary, at the Sale Hearing. Prior to the date of the Closing, the Debtors may revise their decision with respect to the assumption and/or assignment of any Lease and provide a new notice amending the information provided in this notice.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: _____, 2009
     Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

_____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

## SCHEDULE A

(Potential Purchasers)

**EXHIBIT 5**

(Rejection Notice)

Gregg M. Galardi, Esq.   Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.   Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & MCGUIREWOODS LLP
FLOM, LLP       One James Center
One Rodney Square     901 E. Cary Street
PO Box 636       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:       : Chapter 11
         :
Circuit City Stores, Inc.,  : Case No. 08-35653(KRH)
et al.,       :
         :
    Debtors.[1]  : Jointly Administered
- - - - - - - - - - - - - - - x

**NOTICE OF REJECTION OF UNEXPIRED LEASE AND
ABANDONMENT OF PERSONAL PROPERTY**

---

1 The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution
Company of Virginia, Inc. (2821), Circuit City Properties, LLC
(3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency,
Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311),
Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),
Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit
City Stores PR, LLC (5512).  The address for Circuit City Stores
West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado
80031.  For all other Debtors, the address is 9950 Mayland Drive,
Richmond, Virginia 23233.

1.    <u>ORDER APPROVING REJECTION OF LEASE</u>

PLEASE TAKE NOTICE that on February ___, 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") entered an Order Under Bankruptcy Code Sections 105, 363 and 365 (I) Approving Bidding and Auction Procedures For Sale Of Unexpired Nonresidential Real Property Leases, (II) Setting Sale Hearing Dates, And (III) Authorizing And Approving (A) Sale Of Certain Nonresidential Real Property Leases Free And Clear Of All Interests, (B) Assumption And Assignment Of Certain Unexpired Nonresidential Real Property Leases And (C) Lease Rejection Procedures (the "Order," a copy of which is available at www.kccllc.net/circuitcity).  The Order authorized the above-captioned debtors and debtors-in-possession (the "Debtors") to reject certain unexpired real property leases and abandon certain furniture, fixtures, and equipment owned by the Debtors (the "Abandoned Property"), upon notice to the lessor (the "Lessor"), without further Court approval.  The Debtors have determined to reject the following real property lease (the "Lease") pursuant to the Order:

Location of Lease and Abandoned Property:

[_]

2.    <u>LEASE REJECTION DATE</u>

PLEASE TAKE FURTHER NOTICE that the rejection of the Lease shall become effective on _____, 2009 (the "Rejection Date") or such later date as the Debtors surrender the premises by fulfilling the Rejection Requirements (as defined in the Order).

3.    <u>ABANDONED PROPERTY</u>

PLEASE TAKE FURTHER NOTICE that the Debtors will have until the later of the Rejection Date to remove property belonging to the Debtors from the leased premises.  To the extent that any property remains in the leased premises after the Rejection Date, such property will be deemed Abandoned Property and will be abandoned to the Lessor of

the Lease. The Lessor will be entitled to remove or dispose of such property in its sole discretion without liability to any party which might claim an interest in the Abandoned Property and which was served with a copy of the Rejection Notice.

PLEASE TAKE FURTHER NOTICE that any expense incurred by the Lessor in the removal or disposal of Abandoned Property will not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

4.   OBJECTIONS

PLEASE TAKE FURTHER NOTICE that objections, if any, to rejection of the Lease or abandonment of Abandoned Property must (a) be in writing, (b) set forth, with specificity, the factual and legal basis therefor, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 0130) (the "Case Management Order"), (d) be filed with Bankruptcy Court and (e) served in accordance with the Case Management Order so as to be **received** on or before _____, **2009 at 4:00 p.m. (ET)** (the "Objection Deadline").

5.   RENT

PLEASE TAKE FURTHER NOTICE that the Debtors will pay rent on a per diem basis for those days prior to the Rejection Date of the Lease.

6.   SETOFF

PLEASE TAKE FURTHER NOTICE that if any Debtor has deposited monies with the Lessor as a security or other kind of deposit or pursuant to another similar arrangement, the Lessor will not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of the Court.

7.   DEADLINE TO FILE PROOFS OF CLAIM

PLEASE TAKE FURTHER NOTICE that parties will have until 30 days from the Rejection Date to file a proof of claim for damages arising from such rejection for each respective Lease. Any claims not timely filed will be forever barred. For proof of claim forms and information regarding filing a proof of claim, please go to www.kccllc.net/circuitcity.com.

Dated: _____, 2009
      Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Gregg M. Galardi, Esq.
                    Ian S. Fredericks, Esq.
                    P.O. Box 636
                    Wilmington, Delaware 19899-0636
                    (302) 651-3000

                    - and -

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Chris L. Dickerson, Esq.
                    333 West Wacker Drive
                    Chicago, Illinois 60606
                    (312) 407-0700

                    - and -

                    MCGUIREWOODS LLP

                    _____
                    Dion W. Hayes (VSB No. 34304)
                    Douglas Foley (VSB No. 34364)
                    One James Center
                    901 E. Cary Street
                    Richmond, Virginia 23219
                    (804) 775-1000

                    Counsel for Debtors and Debtors in Possession

**Exhibit 1**

(Order)