IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | § | |
| | § | Case No 08-35653 (KRH) |
| Debtors. | § | |
| | § | Jointly Administered |

**CAPMARK FINANCE, INC.'S REQUEST FOR HEARING**

Capmark Finance, Inc. ("Capmark") on behalf of Bank of America, National Association, Successor by Merger to LaSalle Bank, National Association (f/k/a LaSalle National Bank) as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1998-C2, (the "Trustee"), by and through its counsel Bryan Cave LLP, hereby files its Request for Hearing on its Response to Liquidating Trust's Twenty-Eighth Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Response").

Capmark filed its Objection on December 22, 2011. As set forth in the Response, the objection to proof of claim 9051 should be denied and the claim should be allowed in its entirety.

WHEREFORE, Capmark Finance, Inc. respectfully requests the Court schedule a hearing on its Response and grant such other and further relief as the Court deems just and proper.

Philip J. Meitl (VA Bar No. 73215)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | x . | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | . . | Case No 08-35653 (KRH) |
| Debtors. | . . | |
| | x | Jointly Administered |

**RESPONSE AND REQUEST FOR HEARING TO LIQUIDATING TRUST'S TWENTY-EIGHTH OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS, DISALLOWANCE OF CERTAIN INVALID CLAIMS, DISALLOWANCE OF CERTAIN LATE FILED CLAIMS, AND DISALLOWANCE OF CERTAIN AMENDED CLAIMS)**

Capmark Finance, Inc. ("Capmark") on behalf of Bank of America, National Association, Successor by Merger to LaSalle Bank, National Association (f/k/a LaSalle National Bank) as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1998-C2, (the "Trustee"), by and through its counsel Bryan Cave LLP, hereby files this Response to Liquidating Trust's Twenty-Eighth Omnibus Objection To Landlord Claims (Reduction of Certain Partially Invalid Claims, Disallowance of Certain Invalid Claims, Disallowance of Certain Late Filed Claims, and Disallowance of Certain Amended Claims) (the "Objection"), and states as follows:

1.  The Trustee has objected to the proof of claim number 9051 (the "Claim") filed by Capmark.

2.  The Trustee holds a mortgage on the real property commonly located at 280 SW 196th Street, Lynnwood, WA (Store No. 9051). The mortgagor on the property, WEC 96D Lynnwood Investment Trust, a Delaware business trust (the "Borrower") leased the property to Circuit City Stores, Inc. ("Circuit City") pursuant to a written leased dated November 27, 1996

between Borrower as landlord and Circuit City as Tenant, as it may have been amended. The Lease and the rents thereunder were assigned by the Borrower to its lender in an Absolute Assignment of Leases and Rents, effective as of November 27, 1997 (the "Assignment of Leases and Rents"). The Assignment of Leases and Rents was subsequently conveyed by the lender to the Trustee. A true and correct copy of the Assignment of Leases and Rents is attached hereto and incorporated herein as Exhibit A.

3. Circuit City rejected the Lease.

4. Trustee for Debtors lists the Claim on Exhibit C to its Objection as, being a "Partially Invalid Claim". The Objection states that:

> "certain portions of the Partially Invalid Claims are (i) liabilities already asserted by the Claimant's in other claims; (ii) liabilities that have already been satisfied by the Debtors; or (iii) liabilities for which the Debtors dispute liability.

5. Debtors Objection offers no explanation for Debtors' basis for seeking a reduction of the Claim.

5. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr P. 3001(f).

6. After a creditor has timely and properly filed a proof of claim, the Debtor must produce substantial evidence to rebut this prima facie evidence. See in re Hemingway Transp. Inc. 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence"); In re Harford Sands, Inc. 372 F.3d 637, 640-41 (4th Cir. 2004) (Creditor's filing of proof of claim constitutes prima facie evidence of amount and validity of claim, and burden is on debtor to object to claim and to introduce evidence to rebut its presumptive validity); In re Gran,

964 F.2d 882, 827 (8th Cir. 1992) ("The objection party must then produce evidence rebutting the claimant or else the claimant will prevail.")

7.  In this case, the Claims were filed prior to the Bar Date and in accordance with the Federal Rules of Bankruptcy Procedure and provides sufficient documentary support for the Claims and the calculation of the Claims amounts. The Objection does not challenge the basis for the Claims or provide any evidence whatsoever to supports its objection to the calculation of the Claims amounts.

8.  The Trustee bears the burden of proof for the disallowance of any portion of the Claims. See In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y 1995) Because Trustee has produced no evidence whatsoever in support of the proposed reduction, the Trustee has failed to meet its burden of proof.

WHEREFORE, Capmark respectfully requests that the Court (a) overrule the Objection as it relates to the Claim; (b) allow the Claim as provided in Capmark's proof of claim; and (c) grant Capmark such other and further relief as this Court deems appropriate under the circumstances.

Dated: December 22, 2011

BRYAN CAVE LLP

By:/s/ Philip J. Meitl
Philip J. Meitl (VA Bar No. 73215)
Bryan Cave LLP
1155 F Street NW, Suite 700,
Washington DC 20004
(202) 508-6000 (phone)

*Attorney for Capmark Finance Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby states that on the 22nd day of December, 2011, a true and correct copy of the above foregoing instrument was sent to:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street-Room 4000
Richmond, VA 23219

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
Los Angeles, California 90067-4100
Telephone (310) 277-6910
Telecopy (310) 201-0760

Lynn L. Tavenner, Esq.
Paula D. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone (804) 783-8300
Telecopy: (804) 783-0178

*/s/ Philip J. Meitl*
Philip J. Meitl

*[handwritten notations at top]* 982005545

CT 362811

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of November 27, 1996 by WEC 96D LYNNWOOD INVESTMENT TRUST, a Delaware business trust, having a principal place of business at 6750 Lyndon B. Johnson Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter called the "Assignor" and the expression "Assignor" shall include, wherever the context permits, its successors and assigns) to FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City - Staubach Pass Through Trust, Series 1996-A, having an address at 79 South Main Street, Salt Lake City, Utah 84111, Attention: Corporate Trust Services (hereinafter called the "Assignee").

This Assignment is granted pursuant to the provisions of a Loan Agreement dated as of even date herewith between Assignor, as borrower, and Assignee, as lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement.

### WITNESSETH THAT:

1. **Grant of Assignment.** The Assignor, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, hereby sells, grants, transfers, conveys, sets over and assigns to the Assignee, Assignor's right, title and interest in, to and under all leases, rental agreements, licenses and occupancy agreements (excluding Permitted Subleases, defined below) (the "Leases"), including but not limited to that certain Lease (the "Principal Lease") dated of even date herewith between Assignor, as landlord, and Circuit City Stores, Inc., ("Tenant") as tenant, a memorandum or notice of which is or will be recorded in the appropriate records in the county in which the Property is located, together with all renewals, extensions, replacements, amendments and modifications thereof now or hereafter in existence, with respect to the property described on Exhibit "A" annexed hereto ("Property"); Assignor is the owner of the Property. The term "Leases" (including the Principal Lease) shall not include any Permitted Sublease (defined below) and the term "tenant" shall not include any tenant under a Permitted Sublease, and the term "Rents" (defined below) shall not include sums payable to Tenant pursuant to Permitted Subleases except to the extent that Borrower is a party to, or has rights to proceeds under, any such sublease or occupancy arrangement. For purposes of this Assignment, "Permitted Subleases" shall mean the subleases and subtenancies entered into by Tenant in accordance with Section 17 of the Principal Lease. Assignor agrees that all tenants under the Leases are hereby expressly and irrevocably authorized and directed to pay any and all Rents accruing from and after the date hereof directly to Assignee. In the event the Assignor receives any Rents directly from its tenant(s) from and after the date hereof in violation of the terms of this Agreement or the Loan Agreement, Assignor shall immediately remit such Rents to Assignee to be applied in accordance with the requirements of the Loan Agreement.

TOGETHER with all rents, earnings, issues, income and profits arising from said Leases and any renewals, extensions, replacements, amendments or modifications thereof and together with all rents, earnings, issues, income and profits payable to Assignor for the use and occupation of all or any portion of the Property and from all other leases or occupancy agreements with respect to the Property or any portion thereof which may have heretofore been executed by or for the benefit of Assignor or which may be executed by or for the benefit of Assignor in the future during the term of this Assignment ("Rents");

TOGETHER with all of Assignor's interest in all guaranties of Leases;

TOGETHER with all of Assignor's right, title and interest in, to and under any and all rights, powers, privileges, options and other benefits of Assignor as lessor or grantor of an option under the Leases, including, but not by way of limitation:

    (1)    The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, refunds, rebates, surrender payments, cancellation payments, damages, monies and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

    (2)    The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

ASSIGNMENT OF LEASES AND RENTS - Page 1

VOL. 3240 PAGE 2570



(3) The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to a Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Assignor; notwithstanding the foregoing, Assignee will not accept any offer made by Tenant pursuant to Section 12(b) of the Principal Lease sooner than five (5) days prior to the last day on which Assignor may accept or reject such offer under the Principal Lease, and Assignee agrees to join with Assignor in rejecting such offer if Assignor notifies Assignee prior to the date specified above of its intention to reject such offer and deposits with Assignee an amount equal to the full amount of the Obligations then outstanding or reasonably expected to be outstanding at the time of termination of the Principal Lease, to be applied to repay the full amount of the Obligations at the time of termination of the Principal Lease.

(4) The right to make all waivers and agreements, to give and receive all notices, consents and releases, and to take such action upon the happening of a default under any Lease as Assignor might have taken, including the right to commence, conduct and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

(5) To do any and all other things whatsoever which the Assignor is or may become entitled to do under or by virtue of the Leases or any of them.

Together with full power and authority, in the name of Assignor or otherwise, to demand, receive, enforce, collect or receipt for any or all of the foregoing, to endorse or execute any checks or other instruments or orders, to file any claims and to take any action which Assignee may deem necessary or advisable in connection therewith. Assignor hereby irrevocably constituting Assignee the attorney-in-fact of Assignor for such purposes, which appointment is coupled with an interest and is irrevocable. No exercise by Assignee of any rights of Assignor shall release Assignor from its obligations under the Lease.

This Assignment is a perfected present, absolute, direct and unconditional assignment and transfer of all Assignor's right, title and interest in and to the Leases and the Rents made in consideration of the Loan by Assignee to Assignor and as additional security for the repayment of the Obligations (as hereinafter defined).

2. **Obligations Secured.** The Term "Obligations" shall have the meaning set forth in the Loan Agreement and shall include, without limitation, the following matters:

(1) The payment and performance of all obligations set forth in that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, increases, consolidations, replacements, modifications and amendments thereof, in the original amount of $6,917,625.40, and a Maturity Date of December 1, 2018, given by the Assignor, as maker, to the order of the Assignee;

(2) The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by the Assignor under and pursuant to the Loan Agreement and each of the other Loan Documents;

(3) The payment of all costs, expenses, legal fees and liabilities incurred by Assignee in connection with the enforcement of any of Assignee's rights or remedies under this Assignment and the other Loan Documents;

(4) The payment, performance, discharge and satisfaction of every obligation of the Assignor to Assignee under and pursuant to the Mortgage Security Agreement and Fixture Financing Statement (referred to herein as the "Mortgage") of even date given to Assignee to be recorded and filed herewith;

(5) The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and obligation of the Assignor to the Assignee under this Assignment; and

(6) The payment, performance, discharge and satisfaction of all other liabilities and obligations of the Assignor to the Assignee, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each such liability and obligation of the Assignor under any of the Loan Documents and each

ASSIGNMENT OF LEASES AND RENTS - Page 2

amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

3.  **Warranties and Representations.** The Assignor WARRANTS AND REPRESENTS that it is and shall be in the future the sole owner of the entire lessor's interest in the Leases and that no rent reserved in said Leases has been or will be in the future otherwise assigned or anticipated (except as may be provided in the Loan Agreement).

The Assignor further WARRANTS AND REPRESENTS that as of the date hereof: (a) the Principal Lease and the Permitted Subleases are the only Leases or occupancy agreements affecting any or all of the Property; (b) the Principal Lease is in full force and effect and a true and complete copy thereof together with all amendments and modifications have been previously delivered to the Assignee; (c) no default exists on the part of the Tenant or the landlord in the performance of any of the terms, covenants, provisions or agreements in the Principal Lease; (d) Assignor knows of no condition which with the giving of notice or the passage of time or both would constitute a default on the part of the Tenant or the landlord under the Principal Lease; (e) no security deposit or advance rental payment has been made by Tenant under the Principal Lease; and (f) Assignor has good right and authority to make this Assignment.

4.  **Covenants.** The Assignor covenants with the Assignee as follows:

    4.1  **Perform Lease Obligations.** Assignor shall observe and perform all the material obligations imposed upon the lessor under every Lease and not do or permit to be done anything to impair the security thereof; not collect any of the rent, income and profits arising or accruing under said Leases or from the Property in violation of the Lease or Assignee's rights hereunder or under the Loan Agreement or other Loan Documents; not execute any other assignment of lessor's interest in said Leases or assignment of Rents arising or accruing from said Leases or from the Property; not alter, modify, amend or change the terms of said Leases or cancel or terminate the same or accept a surrender or assignment or subletting thereof without the prior written consent of the Assignee in each instance; not subordinate any such Lease to any mortgage or other encumbrance, or permit, consent or agree to such subordination, without Assignee's prior written consent in each instance; not convey or transfer or suffer or permit a conveyance or transfer of the premises demised by any such Lease or of any interest therein so as to effect directly or indirectly a merger of the estates and rights, or a termination or diminution of the obligations, of any lessee thereunder; not alter, modify or change the terms of any guaranty of any Lease or cancel or terminate any such guaranty without the prior written consent of Assignee in each instance; not consent to any assignment of or subleasing under any Lease (except for Permitted Subleases pursuant to Section 17 of the Principal Lease), without the prior written consent of the Assignee in each instance; not enter into any future Leases without the Assignee's prior written consent in each instance (provided that nothing herein shall be deemed to prohibit the valid exercise by Tenant of any options it may have under the Principal Lease as approved by Assignee as of the date hereof); upon the execution of any new Leases, assign and transfer to the Assignee any and all subsequent Leases upon all or any part of the Property and to execute and deliver at the request of the Assignee all such further assurances and assignments in the Property as the Assignee shall from time to time require to evidence such assignments or otherwise; promptly (but in any event within five (5) business days from Assignor's receipt or sending thereof) deliver to Assignee a copy of any notice from any tenant and any notice from Assignor to any tenant alleging a default under any Lease; promptly (but in any event within five (5) business days from the time Assignor has actual knowledge thereof) notify Assignee if Assignor believes it or any tenant will be unable to fulfill its obligations under any Lease.

    4.2  **License to Operate.** Assignee shall have the right to enter the Property for the purpose of enforcing its interest in the Leases and the Rents, and any income and profits arising therefrom, this Assignment constituting a present, absolute assignment thereof. Assignee grants to Assignor a revocable license to operate and manage the Property; provided, however, Assignee may revoke such license upon and during the continuation of an Event of Default (as such term is defined in the Loan Agreement); provided, further, that such license shall be deemed automatically revoked upon the occurrence of any Bankruptcy Event as that term is defined in the Loan Agreement.

    4.3  **After Default; Remedies.** Upon or at any time after an Event of Default, the Assignee, without in any way waiving such Event of Default, at its option, without further notice, and without regard to waste, the adequacy of the security for the Obligations secured hereby and by the Mortgage, or solvency of the Assignor, may declare all Obligations to be immediately due and payable, may revoke the license described in Section 4.2 above, and may, either in person or by agent, with or without bringing any action or proceedings, or by a receiver appointed by a

ASSIGNMENT OF LEASES AND RENTS - Page 3

9612040124

VOL. 3240 PAGE 2572

court, take possession of the Property and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and, either with or without taking possession of the Property in its own name, demand, sue for, or otherwise collect and receive, all Rents, income and profits of the Property not already collected by Assignee, including those past due and unpaid, with full power (to the extent permitted by the Principal Lease) to make from time to time all improvements, alterations, renovations, repairs and replacements thereto or thereof as may seem proper to the Assignee, and to apply such Rents, income and profits in the following priority:

      (a)    to payment of all reasonable fees of any receiver appointed hereunder,

      (b)    to application of tenant's security deposits as required by applicable law in the state in which the Property are located (the "State"),

      (c)    to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due,

      (d)    to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due,

      (e)    to payment of all expenses for normal maintenance of the Property including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees as the Assignee may deem necessary or desirable, and all expenses of operating and maintaining the Property, including, without being limited thereto, the cost of all improvements, alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and

      (f)    any Rents remaining after application of the above items shall be applied to all sums which the Assignor is responsible to pay under the Mortgage, and the principal sum, interest and indebtedness secured hereby and by the Mortgage, and all other Obligations together with all reasonable costs and reasonable attorneys' fees.

The exercise by the Assignee of the right granted it in this Assignment and the collection of the Rents, income and profits and the application thereof as herein provided shall not be considered a waiver by the Assignee of any default under the other Loan Documents or under said Leases, or this Assignment.

Without limiting the foregoing, the right and license granted to Assignor above to operate and manage the Property shall, at Assignee's option, be revoked and terminated upon the occurrence of an Event of Default. During the continuance of an Event of Default, Assignor shall have no further right to function as lessor under any of the Leases.

In any and all circumstances, the parties hereby acknowledge and explicitly express their intent that the Assignee shall have a perfected security interest in the Leases and Rents upon recordation of this Assignment and notification to any of the tenants under the Leases to pay rent directly to the Assignee.

The right of Assignee to collect and receive the rents and the proceeds of any right assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Assignee shall, to the extent not prohibited by law also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

    **4.4**    **Continuing Effect; Direction to Lessees.** Upon payment in full to the Assignee of the principal sum, interest, and other Obligations, this Assignment shall become and be void and of no effect, but the affidavit of any officer, agent, or attorney of the Assignee made in good faith showing any part of said principal, interest, or other Obligations to remain unpaid or unperformed shall be and constitute prima facie evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon. The discharge of record of the Mortgage shall constitute a discharge of this Assignment and a release of the Assignee's interest in the Leases and Rents assigned hereby and the reassignment thereof (without recourse to the Assignee) to the Assignor and

ASSIGNMENT OF LEASES AND RENTS - Page 4

9612040124                          VOL. 3240 PAGE 2573

all those claiming of record by, through or under the Assignor. The Assignor hereby authorizes and directs the lessees named in said Leases or any other or future lessees or occupants of the Property (except under Permitted Subleases), to pay over to the Assignee all Rents, income and profits arising or accruing under said Leases or from the Property from and after the date hereof and to continue so to do until otherwise notified by the Assignee, or until discharge of this Assignment, whichever is earlier. Subject to the applicable provisions of the Principal Lease, the Assignor further directs such lessees under Leases to pay over to the Assignee any amounts which would be owed by such lessees under Leases to Assignor as a result of a casualty or condemnation or otherwise.

        **4.5**      **No Waiver; Concurrent Rights.** Nothing contained in this Assignment and no act done or omitted by the Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Assignee of its rights and remedies hereunder or any one or more of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms of any of the other Loan Documents. The right of the Assignee to collect said principal sums, interest and indebtedness and to enforce any other security therefor held by it may be exercised by the Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

        **4.6**      **No Liability.** Nothing herein contained shall be construed as constituting Assignee a mortgagee-in-possession in the absence of the taking of actual possession of the Property. In the exercise of powers herein granted to Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor, except for Assignee's gross negligence or willful misconduct. Without limiting the generality of the foregoing, the Assignee shall not be liable for any loss sustained by the Assignor resulting from any act or omission of the Assignee in managing the Property after a default unless such loss is caused by the gross negligence or willful misconduct of the Assignee. The Assignee shall not be obligated to perform or discharge, nor does the Assignee hereby undertake to perform or discharge, any obligation, duty or liability under said Leases, or under or by reason of this Assignment, and the Assignor shall, and does hereby agree to, indemnify the Assignee for, and to hold the Assignee harmless from, any and all liability, loss or damage which is incurred under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said Leases; provided, however, that Assignor shall not indemnify and hold Assignee harmless from liability, loss or damage arising solely from the gross negligence or willful misconduct of the Assignee and incurred either (i) after Assignee has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Assignee was actually in possession of the Property at the time such action arose, (ii) after Assignee has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Assignee has acquired the Property by deed-in-lieu of foreclosure. Should the Assignee incur any such liability under said Leases or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and by the Mortgage and by the other collateral for the Obligations and the Assignor shall reimburse the Assignee therefor immediately upon demand and upon the failure of the Assignor so to do, the Assignee may, at its option, declare all sums secured hereby immediately due and payable. It is further understood that this Assignment shall not operate to place responsibility for the control, care, management or repair of said Property upon the Assignee, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make the Assignee responsible or liable for any waste committed on the Property by tenants or any other parties, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of said Property resulting in loss or injury or death to any tenant, licensee, employee or stranger, except as provided above.

        **4.7**      **Effect of Foreclosure Deed.** Upon the issuance of any deed or deed pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the Leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its agent and attorney in fact, after an Event of Default, to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

        **4.8**      **Upon Termination of Lease in Bankruptcy.** In the event any lessee under any of the Leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state or local statute which provides for the possible termination or rejection of the Leases assigned hereby,

ASSIGNMENT OF LEASES AND RENTS - Page 5

Assignor covenants and agrees that if any of the Leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, in each instance, and any check in payment of damages for termination or rejection of any such Lease shall be made payable to the Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that Assignor will duly endorse to the order of Assignee any such check which is made payable to Assignor, the proceeds of which shall be applied to the indebtedness secured by this Assignment. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its attorney-in-fact, which power is coupled with an interest, after an Event of Default, to so endorse any such checks if Assignor does not do so.

5. **General Provisions.**

    5.1  **Conflicts.** This Assignment is intended to be supplementary to, and not in substitution for, or in derogation of, any assignment of Rents to secure the Obligations contained in the Mortgage or in any other Loan Document. In the event of any conflict or inconsistency in any matters contained in this Assignment and the Loan Agreement or Mortgage, the terms and provisions of the Loan Agreement (or Mortgage) shall govern.

    5.2  **Notices.** Any notice or communications in connection herewith shall be sufficiently given if given in the manner provided for in the Loan Agreement.

    5.3  **Successors and Assigns.** All of the rights, powers, privileges and immunities herein granted and assigned to the Assignee shall also inure to its successors and assigns, including all holders, from time to time, of the Note and all of the burdens created herein shall be binding upon Assignor and its successors and assigns.

    5.4  **Governing Law.** This Assignment and all agreements and instruments executed by Assignor in connection herewith shall be governed by and construed in accordance with the internal laws of the State of New York, except that the laws of the State where the Property are located shall govern the exercise of remedies by the Assignee to the extent specified in the Loan Agreement.

    5.5  **Limited Recourse Provisions.** The liability of the Assignor and its partners, trustees and beneficiaries, or shareholders (as applicable) with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

    5.6  **Severability.** In case any one or more of the provisions of this Assignment, the Note, the Mortgage, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Assignee to the fullest extent now or hereafter permitted by law.

    5.7  **Headings.** Headings and captions in this Assignment are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

    5.8  **Time of Essence.** Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Assignment and each of the other Loan Documents.

    5.9  **No Partnership or Joint Venture.** No provision of this Assignment or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Assignor and Assignee, it being intended that the only relationship created by this Assignment, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.]

ASSIGNMENT OF LEASES AND RENTS - Page 6

9 6 1 2 0 4 0 1 2 4                              VOL. 3240 PAGE 2575

IN WITNESS WHEREOF, the said Assignor executed these presents under seal the day and year first above written.

ASSIGNOR:

WEC 96D LYNNWOOD INVESTMENT TRUST
a Delaware Business Trust

By: WOLVERINE EXCHANGE CORPORATION,
a Delaware corporation,
its sole trustee

[CORPORATE SEAL]

By: _____
Name: Greg L. England
Title: Vice President

FORM OF ACKNOWLEDGMENT

THE STATE OF New York §
                                    §
COUNTY OF New York §

On this the 27 day of November, 1996, before me personally appeared GREG L. ENGLAND, to me known to be the Vice President of WOLVERINE EXCHANGE CORPORATION, a Delaware corporation, as the TRUSTEE of WEC 96D LYNNWOOD INVESTMENT TRUST, a Delaware business trust, the corporation and business trust that executed the within and foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation and business trust, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument on behalf of the said corporation and business trust and that the seal affixed, if any, is the corporate seal of said corporation.

MARIANNA M. ESPOSITO
Notary Public, State of New York
No. 30-482/074
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 199_

Signature: _____
Name (Print): MARIANNA M. ESPOSITO
NOTARY PUBLIC in and for the State of New York
residing at Nassau County, NY
My appointment expires: 9/30/98

THIS INSTRUMENT PREPARED BY AND AFTER RECORDING RETURN TO:

John M. Vasily, Esq.
Debevoise & Plimpton
875 Third Avenue
22nd Floor
New York, New York 10022

96 DEC -4 AM 11: 34
SNOHOMISH COUNTY, WASH.
AUDITOR
DEPUTY
RECORDED

20299873.01
112396 v6
481:14785-16

ASSIGNMENT OF LEASES AND RENTS - Page 7

9612040124

VOL. 3240 PAGE 2576

Lynnwood, Washington

# EXHIBIT A

ALL THAT PORTION OF TRACTS 1 AND 2, BLOCK 11, ALDERWOOD MANOR, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 9 OF PLATS, PAGE 71, RECORDS OF THE AUDITOR OF THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF SAID TRACT 1;
THENCE NORTH 88 DEGREES 20 MINUTES 37 SECONDS WEST ALONG THE NORTHERLY LINE OF SAID TRACTS 1 AND 2, A DISTANCE OF 501.18 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF SAID TRACT 2;
THENCE SOUTH 01 DEGREES 39 MINUTES 27 SECONDS WEST ALONG THE WESTERLY LINE OF SAID TRACT 2, A DISTANCE OF 10.01 FEET TO THE SOUTHWEST CORNER OF THAT CERTAIN TRACT CONVEYED TO THE CITY OF LYNNWOOD BY DEED RECORDED UNDER AUDITOR'S FILE NO. 8611070568, SAID POINT BEING THE TRUE POINT OF BEGINNING;
THENCE CONTINUE SOUTH 01 DEGREES 39 MINUTES 27 SECONDS WEST ALONG THE WEST LINE OF SAID TRACT 2, A DISTANCE OF 696.23 FEET TO THE POINT OF CURVATURE OF A 661.52 FOOT RADIUS CURVE, WHOSE RADIUS POINT BEARS NORTH 13 DEGREES 45 MINUTES 06 SECONDS WEST, SAID POINT BEING ON THE NORTHWESTERLY LINE OF THAT CERTAIN TRACT CONVEYED TO THE CITY OF LYNNWOOD BY DEED RECORDED UNDER AUDITOR'S FILE NO. 9408310516;
THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF 198TH STREET S.W. (ALDERWOOD MALL PARKWAY) ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 29 DEGREES 32 MINUTES 56 SECONDS, AN ARC DISTANCE OF 341.16 FEET TO THE POINT OF CURVATURE OF A 650.00 FOOT RADIUS CURVE;
THENCE CONTINUING NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF 198TH STREET S.W. (ALDERWOOD MALL PARKWAY) ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 45 DEGREES 59 MINUTES 52 SECONDS AN ARC DISTANCE OF 521.83 FEET;
THENCE NORTH 00 DEGREES 42 MINUTES 20 SECONDS EAST ALONG THE WESTERLY LINE OF 198TH STREET S.W. (ALDERWOOD MALL PARKWAY), A DISTANCE OF 31.14 FEET;
THENCE CONTINUING NORTHWESTERLY ALONG THE WESTERLY LINE OF SAID 198TH STREET S.W. (ALDERWOOD MALL PARKWAY), NORTH 35 DEGREES 55 MINUTES 41 SECONDS WEST, A DISTANCE OF 31.14 FEET TO A POINT ON THE SOUTH LINE OF A TRACT OF LAND CONVEYED TO THE CITY OF LYNNWOOD BY DEED RECORDED UNDER AUDITOR'S FILE NO. 8703260350;
THENCE NORTH 88 DEGREES 20 MINUTES 37 SECONDS WEST, A DISTANCE OF 462.75 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON.

U:\CIRCUIT\STAUBAC4\LEGAL.WA                    1

9612040124

VOL. 3240 PAGE 2577