# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| In re: Circuit City Stores, Inc., *et al.* ) | Case No. 08-35653-KRH |
| Inc., ) | Chapter 11 |
| ) | |
| **Debtor** ) | |
| _____ ) | **Jointly Administered** |

## MOTION TO ALLOW LATE FILED PROOF OF CLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES

**COMES NOW** WCC Properties, LLC ("WCC), by counsel, to respectfully move the Court to permit the late filing of a proof of claim in this case (the "Motion"), and in support thereof, shows the Court as follows:

### PARTIES

1.　WCC is a Utah limited liability company with offices at 1660 Union Street, 4th Floor, San Diego, California. It was the landlord under a certain lease of real property to Circuit City Stores West Coast, Inc., of premises in the Las Palmillas Shopping Center in Yuma, Arizona (the "Lease").

2.　Circuit City Stores West Coast, Inc. ("CC"), is one of a number of debtor's subsidiary companies in the instant proceeding.

### JURISDICTION and VENUE

3.　This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding

---

Douglas A. Scott, PLC
Suite 311, 1805 Monument Avenue
Richmond, Virginia 23220
Counsel for WCC Properties, LLC

as defined in 28 U.S.C. § 157(b)(2)(B). The predicates for the Motion are FED.R.BANKR.PROC. 3002 and 9006(b).

## PROCEDURAL BACKGROUND

4. CC voluntarily commenced its Chapter 11 case on November 10, 2008. CC is no longer operating its business but is rather liquidating as a debtor-in-possession.

## FACTS

5. CC rejected the Lease effective on February 23, 2009. The lease rejection Order allowed thirty (30) days from that date, or to March 23, 2009, for WCC to file its lease rejection proof of claim. *See* Docket No. 2400.

6. On June 22, 2009, WCC filed Proof of Claim Number 13480 ("POC"). Its counsel in Tucson, Arizona filed the POC for WCC.

7. It *appears* that WCC's POC was untimely. At least the debtor thinks so, objecting to the WCC proof of claim as, *inter alia*, untimely in its Fourteenth Omnibus Objection to Claims. [Docket 10052].

8. On April 7, 2011, WCC filed a response to the debtor's objection to its POC 13480 [Docket No.10492]. In that response, WCC, by counsel, stated: "Moreover, the claim itself, while filed after the general bar date, *was filed prior to the December 8, 2010 rejection damages bar date*." (Emphasis supplied). Arizona counsel does not believe that he ever received the Lease Rejection Bar Dar Date Order, Docket No. 2400.

2

9. On January 4, 2012, WCC filed an Amended POC to reduce its lease rejection claim as required by 11 U.S.C. § 502(b)(6)(A).

## ARGUMENT

*FED.R.BANKR.PROC. 3002 and 9006(b) provide support under the facts of this matter for the Court to allow a late filed Proof of Claim.*

FED.R.BANKR.PROC. 9006(b) provides, in pertinent part, that the Court can enlarge the time allowed to perform an act after the time to perform that act has expired upon a motion to do so and a finding by the Court that the "failure to act was the result of excusable neglect." This, of course, raises the seminal case interpreting "excusable neglect", *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993).

In permitting a creditor's late filing under Rule 9006(b)(1), the Supreme Court explained that Congress, "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388. The majority in *Pioneer* specifically rejected a "narrow view of 'excusable neglect' under Rule 9006(b)(1), which would have required a showing that the delay was caused by circumstances beyond the movant's control." *Pioneer*, 113 S.Ct. at 1494 n.3. When considering a time enlargement for filing proofs of claim in a Chapter 11 case, the

3

Court looked at the purpose of a reorganization, which it found to be "to preserve rather than to forfeit rights." *Id*. at 1495 (citing Advisory Committee Note to predecessor Rule 10-401(b).)

In *Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761 (Bankr. E.D. Va. 1993), Judge Shelly discussed *Pioneer* at some length:

> The Court stated that the purpose of requiring that "neglect" be "excusable" is to "deter . . . parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve". *Id*. In consideration of the policy against forfeiture in a Chapter 11, the *Pioneer* Court did find "neglect" and granted such a reprieve based on a weighing of the factors in that case. The attorney in *Pioneer* inadvertently failed to file a proof of claim prior to a bar date of which the majority felt he was unaware. However, the Supreme Court found that the movant acted in good faith, there was no prejudice to the non-movant, and there was no disruption to efficient administration of justice. The Court gave little weight to "upheaval in his law practice" experienced by movant's counsel and attached special significance to the fact that the notice of the bar date was outside the ordinary course in bankruptcy cases. The Court found that the peculiar and inconspicuous placement of the bar date in a notice of a creditor's meeting, without any indication of its significance, created a dramatic ambiguity in the notification. *Id.* at 1499-1500.

*Huennekens,* 156 B.R. at 766.

The Supreme Court further held that the second stage of the analysis, that of determining whether a claimant's neglect of a deadline is excusable, is basically an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. These equitable considerations include (1) the danger of prejudice to

4

the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

Not all these factors need favor the moving party. *See In re Keene Corp.*, 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995). As one bankruptcy court concluded, "no single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998).

1. Prejudices to the Debtor.

WCC asserts that its delay in filing its Proof of Claim is *di minimus* in the context of the Debtors' bankruptcy cases and will not prejudice the Debtors or the course of their proceedings. As of January 4, 2012, the Debtors had at least 119 pages of claims objections pending. *See* Docket No. 11632.

The Debtors may argue that if the Debtors are continually subjected to receiving and evaluating late-filed claims, the Debtors will have to incur additional expense and time analyzing these claims that would delay conclusion of the case.

The bankruptcy court in *Keene, supra*, noted that while *Pioneer* did not define "prejudice", the term goes beyond concerns about harm to the debtor, requiring consideration of "the adverse impact that a late claim may have on the judicial

5

administration of the case." 188 B.R. at 910. *Keene* pointed out that cases subsequent to *Pioneer* have evaluated a number of factors in this light, including (1) "the size of the late claim in relation to the estate," (2) "whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Id.*

There is no significant prejudice here. WCC's Amended POC is not particularly substantial in relation to the rest of the claims filed against the estate. There are many similar contested claims. The Court, therefore, should find that this *Pioneer* factor weighs in favor of WCC.

2. Length of Delay and its Potential Impact on Judicial Proceedings

Doubtlessly, the Debtors will say that they rely on the Bar Date to provide a final deadline so that an accurate accounting of their liabilities may be made. That is almost certainly true. It is also true that the requirements of a bar date order in a case of this size may constitute a trap for the unwary, particularly those unschooled in bankruptcy procedure.

The Debtors have been aware of their potential liability to WCC at least since the rejection of the Lease. The Court should find that that the delay in filing the POC will not cause any undue delay in the case. Therefore, the length of delay factor also weighs in WCC's favor.

6

3. Reason for Delay, Including whether it was Within Reasonable Control of Movant

    The Debtors will also argue that it was within WCC's reasonable control to file the POC on a timely basis. But this argument rolls back to the "neglect" issue. The policy implicated in *Pioneer* was to "deter . . . parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve". No deadlines have been *ignored* here: WCC's April 7, 2011 Response to the debtor's objection plainly demonstrates that counsel was aware that there *was* a lease rejection bar date but simply got it wrong. He may not have even received a copy of the Bar Date Order. He thinks not.

    When first engaged by WCC, the undersigned spent literally hours researching the Docket trying to find the Bar Date Order and any reference to a subsequent order related to a "December 8, 2010 rejection damages bar date." Counsel was successful with the former but not the later.

    What has happened is that WCC's counsel inadvertently failed to locate and read the correct Bar Date Order, or for other reasons thought that December 8, 2010 was the correct date. He does not believe that he ever actually received the Bar Date Order. In *Pioneer,* the attorney inadvertently failed to file a proof of claim prior to a bar date of which the majority felt he was unaware. In this case, it is plain that counsel was unaware of the correct Bar Date Order. There is reason to believe that it has become difficult to keep up with the email notices of electronic filings in the larger cases, like this one, and it is often perilous to rely upon the client to forward documents it has received by mail.

7

Does this situation involve inadvertence, mistake or carelessness? Inadvertence? Almost certainly. Excusable? WCC would urge the Court to find that to be the case.

4. Whether WCC Acted in Good Faith

There is no indication that WCC acted in any manner other than in good faith. The Court should find that WCC had a good faith intention to file the Proof of Claim in a timely manner. Accordingly, the good faith factor also favors WCC.

Weighing of the *Pioneer* Factors:

Did WCC act in good faith? Yes.

Was there prejudice to the Debtor? No.

Was there a disruption of the efficient administration of justice? No.

Was the "delay" within the reasonable control of WCC? Possibly.

Three of these considerations weigh heavily in favor of WCC.

It is obvious that WCC was not "freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve", the policy that the *Pioneer* Court was addressing; instead WCC failed to file a timely proof of claim due to mistake about the Bar Date. The act was plainly inadvertent. The balancing of the equities favors WCC, which should be permitted a reasonable opportunity to comply with the requirements of the Bar Date Order.

**WHEREFORE**, WCC respectfully moves the Court to deem its proof of claim timely filed, or, in the alternative, to relieve WCC from the operation of the Bar Date

8

Order by reason of FED.R.CIV.PROC. 60(b), and to award WCC such other and further relief as may be just and proper.

Date: January 4, 2012

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23230
☎ 804.353.0287
BankruptcyCounsel@gmail.com

-and-

Clifford Altfeld, *pro hac vice*
Maya Kashak, *pro hac vice*
Altfeld & Battaile, P.C.
250 North Meyer
Tucson, Arizona 85701
☎ 520.622.7733

Counsel for WCC Properties, LLC


### CERTIFICICATE OF SERVICE

I, the undersigned, do hereby certify that on this day I served the foregoing *via* the Court's ECF facility on those persons whose names appear below.

/s/ Douglas Scott


Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
TAVENNER & BERAN, PLC
20 N. Eighth St., 2nd Floor
Richmond, VA 23219

9

Richard M. Pachulski, Esq.
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100

Robert J. Feinstein, Esq.
John Morris, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017