IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-35653-KRH |
| CIRCUIT CITY STORES, INC., | ) | Jointly Administered |
| et al., | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**RESPONSE TO LIQUIDATING TRUST'S TWENTY-EIGHTH OMNIBUS OBJECTION TO LANDLORD CLAIMS RE: CLAIM NO. 12777**

LBUBS 2002-C4 East Ash Avenue, LLC ("LBUBS"), files this Response (the "Response") to the Liquidating Trust's Twenty-Eighth Omnibus Objection to Landlord Claims [ECF No. 11445] (the "Objection") and, in support of the Response respectfully represents as follows:

**BACKGROUND**

As of the Petition Date, Circuit City Stores, Inc. ("Circuit City") leased that certain property located at 215-255-265 East Ash Avenue, Decatur, Illinois 62526 (the "Property") for Circuit City store no. 3774 pursuant to that certain Lease between Circuit City and Decatur Ash Realty Company, LLC dated November 16, 1999 (the "Lease"). A copy of the Lease is annexed hereto as **Exhibit A**. The owner of the Property on the Petition Date was Decatur Plaza I, LLC (the "Landlord"). Circuit City rejected the Lease effective as of February 23, 2009 or such later date as Circuit City may have vacated the Property (the "Rejection Date") [ECF No. 2400].

A. **Claims Filed by Landlord**

On April 30, 2009, the Landlord timely filed proof of claim no. 12579 (the "First Landlord Claim") asserting an unsecured claim in the amount of $801,161.28 for rejection damages. Landlord also filed claim no. 12777 (the "Second Landlord Claim") on May 1, 2009

for the same amount as was asserted by the First Landlord Claim. The Second Landlord Claim is an exact duplicate of the First Landlord Claim. On March 24, 2011, Landlord assigned all claims of Landlord against Circuit City in any and all respects, including the Second Landlord Claim, to LBUBS pursuant to the Assignment of Claim attached hereto as **Exhibit B**.

On June 4, 2009, Circuit City objected to the First Landlord Claim on the basis that it was duplicative of the Second Landlord Claim in its Tenth Omnibus Objection to Claims [ECF No. 3513, Exhibit D] (the "Tenth Omnibus Objection"). In the Tenth Omnibus Objection, Circuit City indicated that the surviving claim would be the Second Landlord Claim. Accordingly, based on the representation in the Tenth Omnibus Objection that the Second Landlord Claim would survive, the Landlord did not respond to the Tenth Omnibus Objection and the First Landlord Claim was disallowed [ECF No. 4172].

### B.    Claim Filed by Lender

As of the Petition Date, Bank of America N.A., as Trustee for the Registered Holders of LB UBS Commercial Mortgage Trust 2002-C4 Commercial Mortgage Pass Through Certificates Series 2002-C4 (the "Trust") was the holder of a loan (the "Loan") secured by a mortgage (the "Mortgage") encumbering the Property and an Assignment of Rents (the "Assignment of Rents"). The Mortgage, Loan, and Assignment of Rents were subsequently assigned to LBUBS, which is managed by LNR Partners, LLC in its capacity as special servicer of the Loan.

On or about January 30, 2009, LNR Partners, Inc.,[1] filed proof of claim no. 8581 on behalf of and as attorney-in-fact for the Trust pursuant to the Trust's rights under the Lease and the Assignment of Rents (the "Trust Claim"). The Trust Claim expressly asserted a claim "for prepetition rent, postpetition rent, rejection damages, if any, and attorneys fees and other costs and expenses provided for under the Lease."

2

On or about February 28, 2011, the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust") filed its Seventeenth Omnibus Objection to Landlord Claims [ECF No. 10061] (the "Seventeenth Omnibus Objection") wherein the Liquidating Trust sought disallowance of the Trust Claim on the basis that "[c]laimant is lender to landlord and Debtors are addressing claim 12777 regarding general unsecured claims with the landlord."[2]  Based upon the representation that claim 12777, the Second Landlord Claim, would be addressed with the Landlord, the Trust did not respond to the Seventeenth Omnibus Objection and the timely-filed Trust claim was disallowed.  [ECF No. 10785].

## RESPONSE

By the Objection, the Liquidating Trust asserts that Claim 12777, the Second Landlord Claim, was untimely filed and lacks supporting documentation.  (Objection, Exhibits D & E). As the Second Landlord Claim asserts a general unsecured claim, the Objection seems to assert that the General Bar Date of January 30, 2009 (the "General Bar Date") is applicable to the Second Landlord Claim.  (Objection at ¶ 6).

### A.    Claim 12777 Asserts a Timely Rejection Damages Claim

Although the General Bar Date is applicable to pre-petition claims, the General Bar Date is not and cannot be the bar date applicable to rejection damages claims, particularly when the Rejection Date of the Lease was not until at least February 23, 2009 – after the General Bar Date had expired.  The First Landlord Claim was timely filed as a rejection damages claim on April 30, 2009 and accordingly, to the extent that the Objection asserts that the General Bar Date is applicable to Claim 12777, the Objection must be overruled.

---

[1] LNR Partners, LLC is the statutory successor to LNR Partners, Inc.
[2] Seventeenth Omnibus, Exhibit E.

3

The Second Landlord claim is an identical copy of the First Landlord Claim, but was not received by the claims agent until May 1, 2009. To the extent that the Objection asserts that the Second Landlord Claim is untimely because it was not received by the April 30, 2009 rejection damages bar date, such objection must be overruled because an identical claim, the First Landlord Claim, was timely filed. The Liquidating Trust cannot reap a windfall by arguing that the First Landlord Claim was duplicative (and providing that the Second Landlord Claim would survive) and then, nearly three years later, that the Second Landlord Claim was untimely. Accordingly, because the Second Landlord Claim asserts a rejection damages claim and asserts the same claim as was timely asserted by the First Landlord Claim, the Second Landlord Claim is not untimely and the Liquidating Trust's objection must be overruled.

### B. Equitable Estoppel / Reconsideration Pursuant to 11 U.S.C. 502(j)

Moreover, even if the Second Landlord Claim is untimely as a result of having been received by the claims agent on May 1, 2010, the Liquidating Trust has suffered no harm as a result of such filing because the Debtor was aware it was incurring rejection damages when it rejected the Lease and because the Liquidating Trust had notice of the First Landlord Claim and of the Trust Claim, each of which asserted claims arising under the Lease as set forth above.

Indeed, the Debtor obtained disallowance of the First Landlord Claim by representing in the Tenth Omnibus Objection that the Second Landlord Claim would survive. Similarly, the Liquidating Trust obtained disallowance of the Trust Claim by representing in the Seventeenth Omnibus Objection that the Liquidating Trust would instead address the Second Landlord Claim with the Landlord.

In each case, the Trust and the Landlord relied upon the representations that the Second Landlord Claim would survive and be addressed on the merits by the Liquidating Trust and, as a

4

result, acquiesced to the disallowance of the Trust Claim and the First Landlord Claim. The Trust and the Landlord were induced not to contest disallowance of the Trust Claim and the First Landlord Claim based upon an expectation that the Second Landlord Claim would be addressed on the merits and not based on a timeliness objection that could not have been brought as to the Trust Claim and the First Landlord Claim. Accordingly, the doctrine of equitable estoppel bars the assertion now by the Liquidating Trust that the Second Landlord Claim is untimely. *See In re Varat Enters.*, 81 F.3d 1310, 1317 (4th Cir. 1996).

Alternatively, if the Second Landlord Claim is deemed untimely, the Court should reconsider the disallowance of the First Landlord Claim and the Trust Claim pursuant to 11 U.S.C. § 502(j) for cause so as to prevent the Liquidating Trust from reaping a windfall from the use of "gotcha" tactics and the elimination of valid claims through procedural gimmickry. One way or another, a rejection damages claim should be allowed resulting from the rejection by the Debtor of the Lease.

### C. Claim 12777 Asserts a Valid Rejection Damages Claim

With respect to the merits of the rejection damages claim, a true and correct copy of the Lease is attached hereto as Exhibit A. The commencement date of the Lease was December 6, 2000 and the Lease expires by its terms on January 31, 2021. Accordingly, as of the Petition Date, the remaining term of the Lease was 12.22 years. Because 15 percent of 12.22 years is greater than one year's rent, Landlord is entitled to rejection damages based upon a rejection damages period of 1.833 years (the "Damages Period"). During the Rejection Damages Period, Landlord was unable to locate a tenant for the Property and was therefore unable to obtain any replacement rents.

Pursuant to the Lease, the base rent in effect on the Petition Date and during the rejection damages period is $358,419.60 per year (the "Base Rent").  This figure is calculated based upon initial base rent of $341,352 per year during the initial five years of the Lease (Dec. 6, 2000 through Dec. 5, 2005) followed by an increase of the lesser of (i) five percent, or (ii) the percentage increase of the CPI-U (Consumer Price Index - Urban Consumers) during the prior 5 year period.  The CPI-U increased by an amount greater than 5% during the first 5 years of the Lease (see ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt), therefore resulting in an increase of the initial base rent by 5% to $358,419.60 per year.

In addition, the actual property taxes associated with the Property for 2009 were $96,964.34 as set forth on **Exhibit C** hereto (the "Taxes").  Pursuant to the Lease, Circuit City was responsible for the payment of such taxes to Landlord.

Accordingly, the rejection damages due to Landlord pursuant to the Lease total $833,352.61, which is calculated as follows:

**[Base Rent ($358,419.60) + Taxes ($96,964.34)] X Damages Period (1.83) = $833,352.61.**

### CONCLUSION

Accordingly, for the reasons set forth herein, the Objection should be overruled as to Claim 12777, the Second Landlord Claim, and such claim should be allowed in the amount of $833,352.61.

**WHEREFORE**, LBUBS respectfully requests that the Court (a) overrule the Objection as to Claim 12777, (b) enter an order allowing Claim 12777 as a general unsecured claim in the amount of $833,352.61, and (c) grant such other and further relief as is just and proper.

Dated:  February 29, 2012.

Respectfully submitted,

6

**SUTHERLAND ASBILL & BRENNAN LLP**

By: ___/s/ *James J. Briody*___
Mark D. Sherrill (VSB No. 44543)
James J. Briody (VSB No. 32128)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

**-- and --**

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
Jeffrey I. Snyder (admitted *pro hac vice*)
1450 Brickell Avenue.
Suite 2300
Miami, Florida 33131
Tel: (305) 374-7580
Fax: (305) 374-7593

*Counsel for LNR Partners, LLC (statutory successor to LNR Partners, Inc.) as Manager of LBUBS 2002-C4 East Ash Avenue, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 29th day of February, 2012, a true and correct copy of the foregoing has been served electronically using the ECF system on all registered users of the CM/ECF system who have filed notices of appearance in this matter.

By: ___/s/ James Briody___
James J. Briody