# EXHIBIT A

## ASSIGNMENT OF CLAIMS

This Assignment of Claims ("Assignment") is made and entered into as of the date fully executed below and is by and between Inland Mortgage Capital Corporation ("Assignee") and Team Retail Westbank, Ltd. ("Assignor") and is made with reference to the following facts:

## RECITALS

**WHEREAS**, on November 10, 2008 ("Petition Date"), Circuit City Stores, Inc. ("Debtor") filed a voluntary petition for relief under chapter 11 of the United States Code ("Bankruptcy Code").

**WHEREAS**, prior to the Petition Date, Assignee, as lender, made a loan to Assignor, as borrower, in the principal sum of $19,080,000.00 ("Loan"). As security for the Loan, Assignor executed and delivered to Assignee that certain Louisiana First Mortgage and Security Agreement dated July 5, 2007, as amended from time to time, with respect to nonresidential real property located at the Westbank Village Shopping Center in Harvey, Louisiana ("Premises"). In addition, in connection with the Loan, Assignor executed certain other documents in favor of Assignee, including, but not limited to, that certain Assignment of Leases and Rents, dated as of June 16, 2007, as amended from time to time ("Leases and Rents Assignment").

**WHEREAS**, prior to the Petition Date, Assignor, as landlord, and Debtor, as tenant, entered into a lease of nonresidential real property ("Lease") with respect to the Premises.

**WHEREAS**, Debtor ultimately rejected the Lease in its bankruptcy case, which gave rise to certain claims that Assignor had against Debtor.

**WHEREAS**, on January 30, 2009, Assignor filed a general unsecured claim against Debtor in the amount of $780,462.16[1] with respect to amounts due and owing under the Lease as more fully described in and evidenced by the proof of claim designated claim number 8939 filed in Debtor's bankruptcy case ("Claim 8939"). A true and correct copy of Claim 8939 (without exhibits) is attached hereto and incorporated herein by reference as Exhibit 1.

**WHEREAS**, on June 30, 2009, Assignor filed an administrative expense claim against Debtor in the amount of $42,329.10[2] with respect to post-petition amounts due and owing under the Lease as more fully described in and evidenced by the proof of claim designated claim number 13718 filed in Debtor's bankruptcy case ("Claim 13718"). A true and correct copy of Claim 13718 (without exhibits) is attached hereto and incorporated herein by reference as Exhibit 2. Hereinafter, Claim 8939 and Claim 13718 are collectively referred to as the "Claims".

**WHEREAS**, Assignor defaulted with respect to payment of the Loan, and on June 9, 2010, a Consent Judgment ("Judgment") was entered in favor of Assignee and against Assignor

---

[1] Claim 8939 has subsequently been reduced and allowed in the amount of $682,748.35.

[2] Claim 13718 has subsequently been reduced and allowed in the amount of $11,625.19.

pursuant to which judgment was entered against Assignor in the amount of $20,078,838.92, which amount continues to accrue.  A true and correct copy of the Judgment is attached hereto and incorporated herein by reference as Exhibit 3.

**WHEREAS**, pursuant to the Loan documents, including the Leases and Rents Assignment, and pursuant to the Judgment, Assignee is entitled to the Claims and any and all distributions that have been made on the Claims and that will be made on the Claims, and accordingly, Assignee agrees to accept assignment of, and Assignor desires to assign to Assignee, all of Assignor's right, title and interest in the Claims, as set forth below:

1.      Assignment.  In consideration of the mutual covenants and agreements in, and subject to the terms and conditions of, this Assignment, Assignor irrevocably transfers, assigns, grants, and conveys the Claims to Assignee effective as of the date of the Judgment.

2.      Representations and Warranties.  Assignor represents and warrants to Assignee that:  (a) no consent, approval, filing, corporate or other action is required in connection with the execution, delivery and performance of this Assignment; (b) this Assignment has been duly authorized, executed and delivered by Assignor and Assignor has the requisite power and authority to execute, deliver and perform this Assignment and the transactions contemplated by this Assignment are not in contravention of any law, order, regulation or agreement by which Assignor is bound; (c) this Assignment constitutes the valid, legal and binding agreement of Assignor, enforceable against Assignor in accordance with its terms; (d) no payment or other distribution has been received (including, without limitation, by benefit of setoff) by Assignor, or by any third party on behalf of Assignor, in full or partial satisfaction of, or in connection with the Claims, other than the $11,625.19 received by Assignor regarding the allowed amount of Claim 13718, as well as the $34,230.56 for stub rent due regarding the Lease and received by Assignor in 2009, both of which have already been disclosed to Assignee; (e) Assignor owns, has, and is hereby assigning to Assignor good and sole legal and beneficial title to the Claims free and clear of any and all liens, security interests, encumbrances or claims of any kind (other than those held by Assignee) and no portion of the Claims have been sold, assigned or pledged to in whole or in part (other than to Assignee); (f) the Claims are valid, liquidated, non-contingent, undisputed claims against the Debtor in the amount of not less than the allowed claim amounts indicated herein; (g) the Claims are not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action (whether or not under Section 547 of the Bankruptcy Code), in whole or in part; (h) Assignor is not and has never been an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the bankruptcy case; (i) Assignor does not hold any property of or owe any funds or property to the Debtor; (j) Assignor has not engaged in any acts, conduct or omissions that might result in Assignee receiving proportionately less payments or distributions in respect of the Claims or less favorable treatment than any other creditors holding claims of the same class as the Claims; (k) Assignor has no liability or obligation related to or in connection with the Claims or the bankruptcy case; and (l) the Claims have been duly and timely filed by Assignor.

3.      Indemnity.  Assignor agrees to indemnify and hold Assignee and its agents, controlling persons, officers, members, managers, and employees (collectively, the "Assignee

Indemnities") harmless from and against any and all expenses, losses, claims, damages or liabilities which are incurred by Assignee Indemnities, including but not limited to attorneys' fees and expenses, caused by or in any way resulting from (i) Assignor's breach of any of the representations, warranties, or covenants of Assignor herein, (ii) any obligation of Assignor (or any assignee or successor to Assignor) to, in whole or in part, disgorge, or reimburse any party or entity for payments received by Assignor from or on account of Debtor on or prior to the closing date in respect of the Claims, or (iii) any action taken by Assignor with respect to the Assigned Rights after the date hereof resulting in liability to Assignee. IF ASSIGNOR HAS PREVIOUSLY ASSIGNED OR PLEDGED, OR ASSIGNS OR PLEDGES, ANY PORTION OF THE CLAIMS TO ANY PARTY OTHER THAN ASSIGNEE, ASSIGNOR AGREES TO IMMEDIATELY PAY ASSIGNEE UPON DEMAND OF ASSIGNEE, LIQUIDATED DAMAGES IN AN AMOUNT TO BE DETERMINED.

4.    Distributions. Assignor agrees that if Assignor receives any distributions or notices with respect to the Claims, Assignor shall accept the same as Assignee's agent and shall hold the same in trust for the sole benefit of Assignee, and shall deliver to Assignee in the same form received (free of any withholding, set-off, claim or deduction of any kind), within two business days in the case of cash and/or notices and within five business days in the case of securities, in good deliverable form, with the endorsement of Assignor when necessary.

5.    Transferability. The terms of this Assignment shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns. Assignor hereby acknowledges that Assignee may at any time re-assign the Claims, and all rights, title and interest of Assignee in and to this Assignment. All representations and warranties made herein shall survive the execution and delivery of this Assignment and any such re-assignment.

6.    Power of Attorney; Acts. Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's name, place and stead, in all respects with respect to the Claims. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claims and Assignee's rights thereunder pursuant to this Assignment. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such power at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claims' validity or amount in the bankruptcy case. Assignor agrees to take such further action as may be necessary to effect the assignment of the Claims and any payments or distributions on account of the Claims to Assignee, and to take such other actions as may be necessary or advisable to protect the validity of the Claims. Assignor shall act or refrain from acting with respect to the Claims solely in accordance with the written direction of Assignee.

7.    Governing Law; Counterparts. This Assignment shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice of law principles. Any action arising under or relating to this Assignment may be brought in any State or Federal Court located in the State of Delaware, and Assignor consents to and confers personal jurisdiction over, and in any action hereunder Assignor waives the right to demand trial by jury. This Assignment may be executed by any party hereto by facsimile or electronic transmission in any number of counterparts, each of which shall be deemed to be an

3

original, but all such respective counterparts shall together constitute one and the same instrument, represents the complete understanding of the parties hereto with respect to the subject matter hereof and may be amended or modified only in writing signed by the parties hereto.

## CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment and hereby waives its right to raise any objections thereto and its right to receive notice pursuant to Rule 3001 of the Rule of Bankruptcy Procedure. Assignor consents to the substitution of Assignee for Assignor for all purposes in Debtor's bankruptcy case. The Transfers of Claims and notices thereof may be filed by Assignee with the Bankruptcy Court as evidence of the transfer/assignment of the Claims referenced herein.

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment by its duly authorized representative dated as of the 15 day of March , 2012.

INLAND MORTGAGE CAPITAL
CORPORATION

By: _____
Print Name: ARTHUR KENDALL
Title: PRESIDENT
Phone Number: 630-218-5261

4692894

TEAM RETAIL WESTBANK, LTD.

By: _____
Print Name: Worth Williams
Title: Member
Phone Number: 214.972266

# EXHIBIT 1

# ORIGINAL

# 8939

B 10 (Official Form 10) (12/07)

**UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA** | **PROOF OF CLAIM**

Debtor against which claim is asserted: (Check only one box below:)

☒ Circuit City Stores, Inc. (Case No. 08-35653)
☐ Circuit City Stores West Coast, Inc. (Case No. 08-35654)
☐ InterTAN, Inc. (Case No. 08-35655)
☐ Ventoux International, Inc. (Case No. 08-35656)
☐ Circuit City Purchasing Company, LLC (Case No. 08-35657)
☐ CC Aviation, LLC (Case No. 08-35658)
☐ CC Distribution Company of Virginia, Inc. (Case No. 08-35659)
☐ Circuit City Stores PR, LLC (Case No. 08-35660)
☐ Circuit City Properties, LLC (Case No. 08-35661)
☐ Orbyx Electronics, LLC (Case No. 08-35662)
☐ Kinzer Technology, LLC (Case No. 08-35663)
☐ Abbott Advertising, Inc. (Case No. 08-35665)
☐ Mayland MN, LLC (Case No. 08-35666)
☐ Patapsco Designs, Inc. (Case No. 08-35667)
☐ Sky Venture Corporation (Case No. 08-35668)
☐ XSStuff, LLC (Case No. 08-35669)

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**TEAM RETAIL WESTBANK LTD**

Name and address where notices should be sent:

NameID: 5069495    PackID: 452910

TEAM RETAIL WESTBANK LTD
ATTN WORTH R WILLIAMS
9362 HOLLOW WAY RD
DALLAS TX 75220

Telephone number: 469-364-8850

Name and address where payment should be sent (if different from above):

Team Retail Westbank LTD
Attn: Worth R.Williams
9362 Hollow Way Rd
Dallas, TX  75220

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ **780,462.16**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **attached Lease Agreement**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier — 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan — 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units — 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date:
1/29/09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Paul B. Geilich, Attorney, 972-788-1600

FOR COURT USE ONLY

RECEIVED
JAN 3 0 2009
KURTZMAN CARSON CONSULTANTS

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

083565308121B100410338197

PAUL B. GEILICH
Direct Dial: 972.419.4765
Direct Fax: 972.239.0138
Email: pgeilich@wgblawfirm.com



**W R I G H T**

**G I N S B E R G**

**B R U S I L O W**

*A Professional Corporation*

14755 PRESTON ROAD, SUITE 600
DALLAS, TEXAS 75254
(972) 788-1600
(972) 702-0662 (FAX)

January 29, 2009

*VIA FEDERAL EXPRESS*

Circuit City Stores, Inc.
Claims Processing Dept.
Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

      Re:    Circuit City Stores, Inc.; Case No. 08-35653

Dear Sirs:

      Enclosed please find an original and one copy of Proof of Claim to be filed in the above matter. Please return a file-marked copy of the proof of claim in the enclosed, self-stamped envelope.

      Please let me know if you have any questions.

      Very truly yours,

      Paul B. Geilich

PBG:mer
Enclosures

**Proof of Claim  Circuit City**

| | |
|---|---|
| November '08 Rent | $45,910.92 |
| November '08 CAM | $2,264.10 |
| November '08 INS | $3,144.58 |
| 2008 Property Taxes | $52,308.56 |
| 1 Year Rent | $550,931.04 |
| 1 Year CAM | $27,169.20 |
| 1 Year Insurance | $37,734.96 |
| 2009 Property Taxes | $60,998.80 |
| **Total Claim** | **$780,462.16** |

# EXHIBIT 2

B 10 (Official Form 10) (12/08)

#13718

| UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT OF VIRGINIA | PROOF OF ADMINISTRATIVE CLAIM |
|---|---|

| Name of Debtor: CIRCUIT CITY STORES, INC. | Case Number: 08-35653 (KRH) |
|---|---|

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
**Team Retail Westbank, Ltd.**

Name and address where notices should be sent:

Jonathan L. Howell, Esq.
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

Worth Williams Properties, L.C.
Attn: Marsha Akers
9362 Hollow Way
Dallas, Texas 75220
Telephone: 469.364.8850

☑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Administrative Claim:**    $ 42,329.10

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Nonresidential Lease
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**

3a. Debtor may have scheduled account as:
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$_____    Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☑ Other – Specify applicable paragraph of 11 U.S.C. §§507(a)(2) and 503(b)(1).

Amount entitled to priority:

$42,329.10

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| DATE: 6/29/2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

By: _____ Jonathan L. Howell, Attorney-in-Fact



RECEIVED
JUN 30 2009
KURTZMAN CARSON CONSULTANTS

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

|||||||| 0835653090630000000000220



**MUNSCH HARDT**
**KOPF & HARR** PC
ATTORNEYS & COUNSELORS

DALLAS | HOUSTON | AUSTIN

3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
Web munsch.com

Writer's Direct Dial: 214.855.7501
E-Mail: jhowell@munsch.com
Direct Fax: 214.978.5337

June 29, 2009

**VIA FEDERAL EXPRESS**

Circuit City Stores, Inc., et al.
Claims Processing Dept.
Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA  90245

Re:    *Circuit City Stores, Inc., et al., Case No. 08-35653 (KRH)*

Dear Sir/Madame:

Enclosed, please find the original and one (1) copy of the Administrative Expense Request of Team Retail Westbank, Ltd. for filing in the above-referenced case.

Please cause the original Administrative Expense Request to be filed in the above-referenced case, and please return a file-stamped copy thereof to me in the enclosed, self-addressed, postage prepaid envelope.

Very truly yours,

MUNSCH HARDT KOPF & HARR, P.C.

By: _____
Jonathan L. Howell

JLH:pd

Enclosures

MHDocs 2152001_1 7680.4

 STATEMENT OF CLAIM 

1.　　Circuit City Stores, Inc. (the "Debtor"), the debtor in Bankruptcy Case 08-35653 (KRH) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Eastern District of Virginia, leased nonresidential real property from Team Retail Westbank, Ltd. ("Team Retail") pursuant to that certain *Lease Agreement* (as amended, the "Lease") dated on or about July 5, 2007, which is attached hereto as "Exhibit A" and incorporated herein. Under the Lease, the Debtor leased approximately 30,247 square feet of retail space (the "Premises") at the Westbank Village Shopping Center (the "Shopping Center"), located at the southeast corner of Manhattan Boulevard and Westbank Expressway in Harvey, Louisiana.

2.　　Under the Lease, the Debtor was obligated to make monthly rental payments ("Base Rent") to Team Retail for $45,910.92 for its use of the Premises. Additionally, the Debtor was obligated to make monthly payments of $2,264.10 for common area maintenance ("CAM") and monthly payments of $3,144.58 for insurance charges. Payments for Base Rent, CAM, and insurance charges were due at the first of each month. True and correct copies of Team Retail's receivables, evidencing amounts of Base Rent, CAM, and monthly insurance costs are attached hereto as "Exhibit B". Along with Base Rent, CAM, and insurance charges, the Lease obligated the Debtor to reimburse Team Retail for its proportional share of annual property taxes shortly after Team Retail pays the Shopping Center's taxes each year.

3.　　On November 1, 2008, the Debtor failed to pay Base Rent, CAM, and insurance charges. Following the commencement of the Bankruptcy Case, Team Retail paid its 2008 *ad valorem* taxes totaling $117,304.49. As contemplated by the Lease, the Debtor was obligated to reimburse Team Retail for its proportional share of $52,308.56 (the "2008 Taxes"). In March and May 2009, the Debtor made a partial payment to Team Retail aggregating $10,361.44, leaving an unpaid balance of $41,947.12.

4.　　On or about March 4, 2009, Team Retail received the *Notice of Rejection of Unexpired Leases and Abandonment of Personal Property* [Docket No. 2414] (the "Lease Rejection Notice"), thereby notifying Team Retail that the Debtor was rejecting the Lease. In accordance with the Rejection Notice, the effective date of the rejection was March 11, 2009.

5.　　On or about May 1, 2009, the Jefferson Parish Assessor issued its 2009 appraisal value of the Shopping Center altering its appraisal value. To date, however, Team Retail's tax rate has not changed. A true and correct copy of Jefferson Parish Assessor's 2009 appraisal is attached hereto as "Exhibit D". Applying the 2009 appraisal value of the Shopping Center and Team Retail's 2008 tax rate, the Debtor's proportional share of the 2009 *ad valorem taxes* equals $60,998.80 (the "2009 Taxes").

6.　　Pursuant to Section 365(d)(3) and 503(b) of the Bankruptcy Code, Team Retail is entitled to an administrative expense priority claim equal to $30,294.00, which is the pro rata amount of the Base Rent for November 11, 2008 through November 30, 2008. *See In re Midway Airlines Corp.*, 406 F.3d 229, 235-37 (4th Cir. 2005). Although Base Rent for November 2008 was due on the first day of month, such requirement does not affect Section 365(d)(3)'s mandate that the Debtor timely perform its postpetition obligations under the Lease. *See In re Goody's Family Clothing*, 401 B.R. 571, 575 (S.D.N.Y. 1993).

7.　　Additionally, Team Retail is entitled to an administrative expense priority claim in the amount of $3,556.39, which is the pro rata amount of CAM and insurance charges for November 11, 2008 through November 30, 2008. *See In re Midway Airlines Corp.*, 406 F.3d at 235-37. While CAM and insurance charges for November 2008 were due on the first day of

 **STATEMENT OF CLAIM** 

each month, this prepayment requirement does not affect Section 365(d)(3)'s requirement that the Debtor timely perform its obligations. *See In re Goody's Family Clothing*, 401 B.R. at 575.

8.      Furthermore, Team Retail is entitled to an administrative expense priority claim in the amount of $8,478.71. The Debtor occupied or used the Premises from November 11, 2008 through March 10, 2009. In return, the Debtor was obligated to pay pro rated *ad valorem* taxes equal to $18,840.15.[1] But, with the exception of March and May 2009 payments totaling $10,361.44, the Debtor failed to do so. *See id.*

| Postpetition Obligation | Unpaid Amount |
|---|---|
| Base Rent | $30,294.00 |
| CAM | $1,488.72 |
| Insurance | $2,067.67 |
| Property Taxes | $8,478.71 |
| Total Administrative Claim (w/o Attorney's Fees) | $42,329.10 |

9.      Altogether, Team Retail is entitled to an administrative expense priority claim equal to $42,329.10 (the "Claim"). As a part of the Claim, Team Retail is also entitled to attorney's fees and costs, as more fully described in the Lease and as allowed by law. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007).

10.      Team Retail's filing of this Proof of Administrative Claim and this Statement of Claim is without prejudice to any and all of its rights, including: (i) the right to revise the amount of the Claim; (ii) the right to assert any further administrative expense claim or other postpetition claim; and (iii) any and all rights against any other person or entity that may be liable with the Debtor to Team Retail. Team Retail expressly reserves the right to hereafter amend and/or supplement this Proof of Administrative Claim and this Statement of Claim at any time, in any manner, and for any purpose including, but not limited to, the fixing of or supplementation to the amounts reflected herein.[2] This Proof of Administrative Claim is not an election of remedies, and does not amend, but rather supplements, any previously filed proof of claim of Team Retail. This Statement of Claim is expressly incorporated by reference into, and thereby made a part of, Team Retail's Proof of Administrative Claim.

---

[1] This calculation is the sum of (1) the 2008 Taxes pro rated from November 10, 2008 through December 31, 2008, and (2) the 2009 Taxes pro rated from January 1, 2009 through March 10, 2009. To avoid unnecessary speculation, Team Retail consents to using its 2008 tax rate in calculating taxes for 2009.

[2] If, however, Team Retail's tax rate increases in 2009, Team Retail waives its right to amend its Proof of Claim based solely on an increased 2009 tax rate.

# EXHIBIT 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INLAND MORTGAGE CAPITAL CORPORATION | * | CIVIL ACTION NO. 10-01570 |
| | * | |
| | * | SECTION "N" |
| VERSUS | * | |
| | * | JUDGE ENGELHARDT |
| TEAM RETAIL WESTBANK, LTD. | * | |
| | * | MAGISTRATE CHASEZ |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CONSENT JUDGMENT

Considering the joint motion of Inland Mortgage Capital Corporation, a Maryland

corporation ("IMCC"), and Team Retail Westbank, Ltd. ("Team Retail") for the entry of a

consent judgment;

IT IS ORDERED, ADJUDGED AND DECREED that judgment be entered in favor

of Inland Mortgage Capital Corporation, as Plaintiff, and against Team Retail Westbank,

Ltd., as Defendant, in the following amounts:

### WESTBANK VILLAGE – LOAN #1459

| | |
|---|---|
| Principal Balance at 12/31/08 | $16,493,505.11 |
| Interest 12/01/08 through 12/31/08 | $   114,515.24 |
| | $16,608,020.35 |
| Default Interest 01/01/09 through 01/27/09 @ 16.07% | $    200,168.17 |

1421602-1

| | | |
|---|---|---:|
| Paydown Letter of Credit 01/28/09 | $ | (513,296.00) |
| | | $16,294,892.52 |
| | | |
| Default Interest 01/28/09 through 04/09/10 @ 16.07% | $ | 3,139,629.17 |
| Balloon Late Charge | $ | 830,401.02 |
| Draw funded 08/14/09 | $ | 3,740.00 |
| Draw funded 08/27/09 | $ | 4,500.00 |
| Draw Fees for Draw 14 & 15 | $ | 1,873.84 |
| Recording Fees | $ | 175.00 |
| Site Inspections | $ | 418.65 |
| Attorney's Fees paid to date | $ | 39,813.27 |
| Less: Unapplied Funds | $ | (236,604.55) |
| | | |
| Total Amount Due 04/09/10 | | $20,078,838.92 |
| | | |
| Interest Per Diem: | $ | 7,184.51 |

Accordingly, as of April 9, 2010, the total amount due and owing under by Team Retail to

IMCC is TWENTY MILLION SEVENTY-EIGHT THOUSAND, EIGHT HUNDRED

THIRTY-EIGHT AND 92/100 ($20,078,838.92) DOLLARS, together with interest per diem

of SEVEN THOUSAND ONE HUNDRED EIGHTY-FOUR AND 51/100 ($7,184.51)

DOLLARS, all costs, fees (including reasonable attorneys' fees), expenses and charges that

continue to accrue and are incurred after April 9, 2010, until all of the obligations of Team

Retail to IMCC are paid in full.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be

entered in favor of IMCC and against Team Retail, recognizing and maintaining as a valid

mortgage that certain Louisiana First Mortgage and Security Agreement dated July 5,

2007, by Borrower in favor of IMCC passed before Marsha L. Akers, Notary Public, and

recorded in the Official Records of Jefferson Parish, Louisiana on July 6, 2007, under Entry

Number 10742612 as MOB 4337, Page 371 (the "Original Mortgage"), as amended by that

certain First Amendment to Louisiana First Mortgage and Security Agreement dated

March 17, 2008, by Team Retail in favor of IMCC passed before dual Notaries Public, and

recorded in the Official Records of Jefferson Parish, Louisiana on March 25, 2008, under

Entry Number 10818045 as MOB 4365, Page 889 (the "Mortgage Amendment"; the

Original Mortgage as amended by the Mortgage Amendment is the "Mortgage"), which

Mortgage encumbers the following described immovable property located in the Parish

of Jefferson, hereinafter to-wit:

### TRACT A-1

A certain tract or Parcel of land, situated in Jefferson Parish, Louisiana, in that part known as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, in an area bounded by Manhattan Boulevard, Westbank Expressway, Green Leaf Drive, and Gretna Boulevard, designated as Tract A-1 and described as follows:

Commencing at the intersection of the southerly right of way line of the Westbank Expressway and the Easterly right of way line of Manhattan Boulevard; thence South 29°23'49" East a distance of 795.00 feet to a point, thence North 60°36'11" East a distance of 250.00 feet to the POINT OF BEGINNING. Thence continue North 60°36'11" East a distance of 78.62 feet; thence go North 36°13'40" West a distance of 320.80 feet to a point; thence North 60°36'11" East a distance of 235.89 feet to a point; thence South 29°23'49" East a distance of 8.00 feet to a point; thence North 60°36'11" East a distance of 211.50 feet to a point; thence South 29°23'49" East a distance of 12.00 feet to a point; thence North 60°36'11" East a distance of 42.00 feet to a point; thence South 29°23'49' East a distance of 60.00 feet to a point; thence North 60°36'11" East a distance of 61.11 feet to a point; thence South 30°55'31" East a distance of 443.87 feet to a point; thence South 53°55'49" West a distance of 579.73 feet to a point; thence go North 29°23'49" West a distance of 122.52 feet to a point; thence go South 60°36'11" West a distance of 27.00 feet to a point; thence go North 29°23'49" West a distance of 150.00 feet to the POINT OF BEGINNING.

All as shown on a survey and resubdivision plan by Dufrene Surveying & Engineering Inc. dated April 18, 2007.

### TRACT E

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods

and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "E" according to boundary survey by Meuer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, and also according to a plat of survey by Gilbert, Kelly & Couturie, Inc., James H. Couturie, Registered Land Surveyor, dated August 5, 1993, a print of which is attached to an Act of Sale by Don Carter's All-Star Lanes -- New Orleans, A Louisiana Partnership in Commendam to Fazzio Rainbow Lanes Westbank, Inc., bearing various dates in August, 1993, and registered at COB 2878, folio 669, Entry No. 93-46340 on the records of Jefferson Parish, Louisiana, as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 720.00 feet to the point of beginning. Run thence North 60° 36 minutes 11 seconds East, a distance of 320.00 feet (title), 319.66 feet (actual) to a point; thence South 36° 07 minutes 49 seconds East (title), 36° 13 minutes 40 seconds East (actual), a distance of 75.52 feet (title), 75.53 feet (actual to a point; thence South 60° 36 minutes 11 seconds West (actual and title), a distance of 328.75 feet (title); 328.60 (actual) to a point; thence North 29° 23 minutes 49 seconds West, a distance of 75.00 feet to the point of beginning; hereinafter called "Tract E."

## TRACT TB1A

A certain tract or Parcel of land, situated in Jefferson Parish, Louisiana, in that part known as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, in an area bounded by Manhattan Boulevard, Westbank Expressway, Green Leaf Drive, and Gretna Boulevard, designated as Tract TB1A and described as follows:

Commencing at the intersection of the southerly right of way line of the Westbank Expressway and the Easterly right of way line of Manhattan Boulevard, thence go South 29°23'49" East a distance of 510.00 feet to a POINT OF BEGINNING. Thence go North 60°36'11" East a distance of 173.38 feet to a point; thence North 29°23'49" West a distance of 64.84 feet to a point; thence North 60°36'11"East a distance of 113.34 feet to a point; thence South 36°13'40" East a distance of 276.80 feet to a point; thence South 60°36'11" West a distance of 319.64 feet to a point on the easterly right of way line of Manhattan Boulevard; thence North 29°23'49" West along the easterly right of way line of Manhattan Boulevard a distance of 210.00 feet to a POINT OF BEGINNING.

421602-1

4

All as shown on a survey and resubdivision plan by Dufrene Surveying &
Engineering Inc. dated August 2, 2007.

### TRACT C-2

A CERTAIN TRACT OR PORTION OF LAND situated in the Parish of
Jefferson, State of Louisiana, in that part thereof known as HUNT FOOD
AND WESSON OIL SNOWDRIFT COMPANY PROPERTY, said tract is
designated as Tract C-2, in the area bounded by Manhattan Boulevard,
Westbank Expressway, Tract A, and an undesignated portion, being part
of the resubdivision of Tract C in accordance with the plan of Surveys,
Inc., Richard T. Dading, Land Surveyor, dated December 14, 1984,
approved by the Jefferson Parish Council by Ordinance No. 16339, dated
February 27, 1985, registered in COB 1202, folio 52, Entry No. 8509986,
Jefferson Parish, said tract commences at a distance of 795 feet from the
intersection of Manhattan Boulevard and the Westbank Expressway and
measures thence 150 feet front on Manhattan Boulevard, the same width
in the rear, by a depth of 250 feet between equal and parallel lines.

All as more fully shown on the survey of Richard T. Dading, Land
Surveyor, dated January 7, 1985, and is designated to read as follows, to-
wit:

One certain portion of ground situated in the Parish of Jefferson, State of
Louisiana, in that part known as Hunt Foods and Wesson Oil Snowdrift
Company Property and designated as Lot C-2 bounded by Westbank
Expressway (U.S. Highway 90), Manhattan Boulevard, and Tract "A",
and more fully designated as follows:

Commencing at the intersection of the South Right of Way line of the
Westbank Expressway (U.S. Highway 90) and the East right of way line of
Manhattan Boulevard; thence measure S 29°23'49" along the East right of
way line of Manhattan Boulevard a distance of 795.00 feet to the point of
beginning; thence measure N60°36'11"E a distance of 250 feet to a point;
thence measure S29°23'49"E a distance of 150.00 feet to a point; thence
measure S60°36'11"W a distance of 250.00 feet to a point, said point being
on the East right of way line of Manhattan Boulevard, thence measure
N29°23'49"W along said right of way line a distance of 150.00 feet to the
point of beginning.

### RECIPROCAL RIGHTS PARCELS

Those certain mutual reciprocal servitudes of passage and parking created
under that certain Mutual Reciprocal Servitude of Passage and Parking
and Restrictive Covenants by Ashy-Brown-Pettit and Ashly-Brown-Pettit-
Wilson dated April 24, 1974, recorded under Entry No 638290 in COB 812,

1421602-1                                  5

folio 582 on April 24, 1974 (cross servitude); as amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All Star Lanes - New Orleans and H.J. Wilson Co., Inc. dated April 24, 1979, recorded under Entry No. 881209 in COB 960, folio 563 on July 5, 1979; as further amended and re-stated by Act of Amendment to Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson and Don Carter's All Star Lanes - New Orleans dated June 13, 1980, recorded under Entry No. 926270 in COB 983, folio 487 on June 13, 1980; and as further amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All-Star Lanes - New Orleans and H.J. Wilson Co., Inc. dated January 16, 1981, recorded under Entry No. 957426 in COB 999, folio 1 on February 23, 1981, affecting Tract A, Tract E, T-B-1 and Tract T-B-2, and the property more fully described as follows:

### TRACT W-2

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Jefferson Parish, Louisiana, that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "W-2" according to a survey and resubdivision prepared by John E. Walker, Civil Engineer dated at New Orleans, January 18, 1974, a copy of which is attached to an ordinance of Jefferson Parish, recorded as Entry No. 631721, of the records of the Parish of Jefferson, State of Louisiana, as follows:

Commencing at the intersection of the South right-of-way line of Mary Poppins Drive and the east right-of-way line of the Westbank Expressway, as shown on the above described plat, thence South 30° 53 minutes 18 seconds East a distance of 153.58 feet to the point of beginning; thence continue South 30° 53 minutes 18 seconds East a distance of 502.55 feet along the South right-of-way line of Mary Poppins Drive to a point and corner; thence South 60° 36 minutes 11 seconds West a distance of 61.11 feet to a point and corner; thence North 29° 23 minutes 49 seconds West a distance of 60 feet to a point and corner; thence South 60° 36 minutes 11 seconds West a distance of 42.00 feet to a point and corner, thence North 29° 23 minutes 49 seconds West a distance of 20.00 feet to a point and corner; thence South 60° 36 minutes 36 seconds West a distance of 207.50

feet to a point and corner, thence North 29° 23 minutes 49 seconds West a distance of 220.93 feet to a point and corner; thence South 60° 36 minutes 11 seconds West a distance of 208.54 feet to a point and corner; thence North 29° 23 minutes 49 seconds West a distance of 125.00 feet to a point and corner; thence South 52° 48 minutes 42 seconds West a distance of 150.00 feet to a point and corner; thence North 29° 23 minutes 49 seconds West a distance of 175.00 feet to the east right-of-way line of Westbank Expressway; thence along the east right-of-way line of Westbank Expressway North 52° 48 minutes 42 seconds East a distance of 203.83 feet to the beginning of a curve; thence along the arc of a curve to the right having a radius of 7,489.44 feet, a distance of 267.10 feet to a point and corner; thence South 29° 23 minutes 49 seconds East a distance of 127.33 feet to a point; thence along the arc of a curve to the left having a radius of ten feet, a distance of 15.71 feet to a point; thence North 60° 36 minutes 11 seconds East a distance of 177.52 feet to the point of beginning; hereinafter called "Tract W-2."

TRACT T-A

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "T-A" according to a map on file and of record in the office of the Clerk of Court and Recorder for Jefferson Parish, Louisiana, being more particularly described as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 175.00 feet to the point of beginning; thence South 29° 23 minutes 49 seconds East, a distance of 50.00 feet to a point and corner; thence North 60° 36 minutes 11 seconds East, a distance of 173.38 feet to a point and corner; thence South 29° 23 minutes 49 seconds East, a distance of 175.00 feet to a point and corner; thence South 29° 23 minutes 49 seconds East, a distance of 45.16 feet to a point; thence North 60° 36 minutes 11 seconds East, a distance of 114.00 feet to a point and corner; thence South 36° 07 minutes 49 seconds East, a distance of 31.39 feet to a point and corner; thence North 60° 36 minutes 11 seconds East a distance of 235.89 feet to a point and corner;

thence North 29° 23 minutes 49 seconds West, a distance of
220.93 feet to a point and corner; thence South 60° 36
minutes 11 seconds West, a distance of 208.54 feet to a point
and corner; thence North 29° 23 minutes 49 seconds West, a
distance of 125.00 feet to a point and corner; thence South
52° 48 minutes 42 seconds West, a distance of 325.00 feet to
the point of beginning.

## TRACT C-1

A CERTAIN TRACT OR PARCEL OF LAND, together with all the
buildings and improvements thereon, situated in Jefferson Parish,
Louisiana, in that part thereof sometimes referred to as the Hunt Foods
and Wesson Oil Snowdrift Company Property, on the west bank of the
Mississippi River, above the City of Gretna, and formerly being
designated as Tract "C" according to boundary survey by Meurer,
Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated
March 12, 1979, a copy of which is attached to Ordinance No. 13828,
recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana,
as follows:

Commencing at the Southwest corner of Parcel J-IA, which
is the northeast corner of the intersection of Manhattan
Boulevard and Westbank Expressway, thence South 29° 23
minutes 49 seconds East, a distance of 945.00 feet to a point
of beginning. Run thence North 60° 36 minutes 11 seconds
East, a distance of 250.00 feet to a point; thence North 29° 23
minutes 49 seconds West a distance of 150.00 feet to a point;
thence North 60° 36 minutes, 11 seconds East a distance of
78.75 feet to a point; thence South 36° 7 minutes 49 seconds
East a distance of 264.68 feet to a point; thence South 53° 32
minutes 11 seconds West a distance of 362.41 feet to a point;
thence North 29° 23 minutes 49 seconds West a distance of
155.31 feet to a point of beginning, all according to survey
by Richard T. Dading, Registered Land Surveyor, dated
December 14, 1984, and annexed to Jefferson Parish
Ordinance of Resubdivision No. 16339, registered in
Jefferson Parish, Louisiana, COB 1202, folio 52, Entry No.
8509986.

## TRACT C-2

A CERTAIN TRACT OF PARCEL OF LAND, together with all the
buildings and improvements thereon, situated in Jefferson Parish,
Louisiana, in that part thereof sometimes referred to as the Hunt Foods
and Wesson Oil Snowdrift Company Property, on the west bank of the

Mississippi River, above the City of Gretna, and formerly being designated as Tract "C" according to boundary survey by Meuer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to Ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, as follows:

> Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 795.00 feet to the point of beginning.  Run thence North 60° 36 minutes 11 seconds East a distance of 250.00 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 150.00 feet to a point; thence South 60° 36 minutes 11 seconds East a distance of 250.00 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 150.00 feet to a point of beginning, all according to survey by Richard T. Dading, Registered Land Surveyor, dated December 14, 1984, and annexed to Jefferson Parish Ordinance of Resubdivision No. 16339, registered in Jefferson Parish, Louisiana, COB 1202, folio 52, Entry No. 8509986.

### TRACT T-B-3

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and formerly being designated as Tract "T-B" according to a map on file in the office of the Clerk of Court and Recorder for Jefferson Parish, Louisiana, being more particularly described as follows:

> Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East a distance of 400.00 feet to a point of beginning.  Run thence North 60° 36 minutes 11 seconds East a distance of 173.38 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 110.00 feet to a point; thence South 60° 36 minutes 11 seconds West a distance of 173.38 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 110.00 feet to a point; thence South 60° 36 minutes 11 seconds West a distance of 173.38 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 110.00 feet to a point of beginning; all in

accordance with a plat of survey by Ralph P. Fontcuberta, Registered Land Surveyor, dated May 27, 1981 and attached to Jefferson Parish, Ordinance of Resubdivision No. 14825, registered in Jefferson, Louisiana, COB 1009, folio 301, Entry No. 980510.

### 9" SERVITUDE

A certain 9 inch predial servitude created pursuant to Agreement Establishing Predial Servitude by and between Hong Thi Le, wife of/and Cac Thanh Le and Manhattan Square Shopping Center Associates, L.L.C. dated June 8, 2001, recorded under Entry No. 10130278 in COB 3054, folio 4 on June 8, 2001, affecting the property more fully described as follows:

ONE CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon situated in the Parish of Jefferson, State of Louisiana. Said portion of ground is designated as LOT T-B-3C on a plan of resubdivision by BFM Corporation, Land Surveyor, dated January 10, 1997, approved as a minor resubdivision under docket No. MWS-26-97 filed in COB 2956, folio 316 and which lot measures as follows:

LOT T-B-3C part of original Parcel X, Wesson Oil Snowdrift Company Tract, said parcel being bounded by Manhattan Boulevard on the West, Mary Poppins Drive on the East, Westbank Expressway on the North and Tract "E" on the South, commences at a distance of 400 feet from the intersection of the Westbank Expressway and Manhattan Boulevard and measures thence 110 feet front on Manhattan Boulevard, same width in the rear by a depth between equal and parallel lines of 173.38 feet.

(b)  All buildings, structures, and improvements of every nature whatsoever now or hereafter situated on the Land, and all items and fixtures attached to and/or forming integral or component parts of the Land in accordance with the Louisiana Civil Code, and all filings, building materials, machinery, equipment, furniture and furnishings and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and used or intended to be used in connection with or with the operation of said property, buildings, structures or other improvements, including all extensions, additions, improvements, betterments, renewals, substitutions, replacements and accessions to any of the foregoing, whether such fixtures, fittings, building materials, machinery, equipment, furniture, furnishings and personal property actually are located on or adjacent to the Land or not, and whether in storage or otherwise, and wheresoever the same may be located (the "Improvements");

(c)     All accounts (as presently or hereafter defined in the Louisiana
Uniform Commercial Code (the "UCC")), general intangibles, goods,
contracts and contract rights relating to the Land and Improvements,
whether now owned or existing or hereafter created, acquired or
arising, including without limitation, all construction contracts,
architectural services contracts, management contracts, leasing agent
contracts, purchase and sales contracts, put or other option contracts,
and all other contracts and agreements relating to the construction of
improvements on, or the operation, management and sale of all or
any part of the Land and Improvements;

(d)     Together with all servitudes, easements, rights of way, gores of land,
streets, ways, alleys, passages, sewer rights, waters, water courses,
water rights and powers, and all estates, leases, subleases, licenses,
rights, titles, interests, privileges, liberties, tenements, hereditaments,
and appurtenances whatsoever, in any way belonging, relating or
appertaining to any of the property hereinabove described, or which
hereafter shall in any way belong, relate or be appurtenant thereto,
whether now owned or hereafter acquired by the Mortgagor, and the
reversion and reversions, remainder and remainders, rents, issues
and profits thereof, and all the estate, right, title, interest, property,
possession, claim and demand whatsoever at law, as well as in
equity, of the Mortgagor of, in and to the same, including but not
limited to:

    (i)     All rents, royalties, profits, issues and revenues of the
Land and Improvements from time to time accruing,
whether under leases or tenancies now existing or
hereafter created; and

    (ii)    All judgments, awards of damages and settlements
hereafter made resulting from condemnation
proceedings or the taking of the Land and
Improvements or any part thereof under the power of
eminent domain, or for any damage (whether caused
by such taking or otherwise) to the Land and
Improvements or any part thereof, or to any rights
appurtenant thereto, including any award for change
of grade or streets. Lender hereby is authorized on
behalf of and in the name of Mortgagor to execute and
deliver valid acquittances for, and appeal from, any
such judgments or awards. Lender may apply all such
sums or any part thereof so received, after the payment
of all its expenses, including costs and attorneys' fees,
on any of the indebtedness secured hereby in such

manner as it elects or, at its option, the entire amount
or any part thereof so received may be released;

(e)    Any and all licenses, development permits, utility supply
agreements, sewer and water discharge permits and agreements, and
other licenses, permits and agreements relating to the use,
development, construction, occupancy and operation of the Land
and Improvements, whether now or hereafter issued or executed,
and all modifications, amendments, replacements or reissuances of
the foregoing;

(f)    All cash and non-cash proceeds and all products of any of the
foregoing items or types of property described in (a), (b), (c), (d) or
(e) above, including, but not limited to, all insurance, contract and
tort proceeds and claims, and including all inventory, accounts,
chattel paper, documents, instruments, equipment, fixtures,
consumer goods and general intangibles acquired with cash
proceeds of any of the foregoing items or types of property described
in (a), (b), (c), (d) or (e) above.

The Mortgaged Property is commonly known as Westbank Village
Shopping Center located in the City of Harvey, Jefferson Parish,
Louisiana.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be

entered in favor of IMCC and against Team Retail, recognizing and maintaining as a valid

security agreement and interest pursuant to La. R.S. 10:9-101, et seq. set forth in the

Mortgage and accompanying UCC filings:

(i)    UCC Financing Statement recorded in the Official Mortgage Records

of Jefferson Parish, Louisiana on July 6, 2007, under Mortgage Instrument Number 26-

297324 with Team Retail (as debtor) and IMCC (as secured party) (the "UCC-1").

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be

entered in favor of IMCC and against Team Retail, recognizing and maintaining as a valid

pledge and assignment of leases and rents pursuant to La. R.S. 9:4401, et seq. that certain

Assignment of Leases and Rents, dated as of June 16, 2007, by Team Retail in favor of

IMCC passed before M. Renee Hayes, Notary Public, and recorded in the Official Records of Jefferson Parish, Louisiana on July 6, 2007, under Entry Number 10742613 as COB 3196, Page 20 (the "Original Assignment"), as amended by that certain First Amendment to Assignment of Leases and Rents dated March 17, 2008, by Team Retail in favor of IMCC passed before dual Notaries Public, and recorded in the Official Records of Jefferson Parish, Louisiana on March 25, 2008, under Entry Number 10818046 as COB 3224, Page 558.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this judgment shall not operate as a dismissal of this action and the Court shall retain jurisdiction pending the judicial sale of the property described above.

New Orleans, Louisiana, this __9th__ day of _____June_____, 2010.

_____
UNITED STATES DISTRICT JUDGE