Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

- and –

Robert J. Feinstein, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x

In re:                                        :    Chapter 11
                                              :
CIRCUIT CITY STORES, INC., et al.,   :    Case No. 08-35653 (KRH)
                                              :
                       Debtors.          :
- - - - - - - - - - - - - -          :    Jointly Administered
                                              x

## LIQUIDATING TRUST'S OBJECTION TO CLAIM NO. 1723
## FILED BY PNY TECHNOLOGIES, INC.

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the

Second Amended Joint Plan of Liquidating of Circuit City Stores, Inc. and its Affiliated

Debtors and Debtors in Possession and its Official Committee of Creditors Holding

General Unsecured Claims (the "Plan") in the above-captioned cases, hereby files this

objection (the "Objection") to Claim No. 1723 (the "Claim") filed by PNY Technologies,

Inc. ("PNY"), and hereby moves this court (the "Court"), pursuant to sections 105, 502 and

503 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the

"Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for an order disallowing the

Claim in its entirety.  In support of the Objection, the Liquidating Trust states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Objection under 28

U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

The statutory and legal predicates for the relief requested herein are Bankruptcy Code

sections 105, 502 and 503, Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## GENERAL BACKGROUND

2.      On November 10, 2008 (the "Petition Date"), the debtors in the

above-captioned cases (the "Debtors")[1] filed voluntary petitions in this Court for relief

under chapter 11 of the Bankruptcy Code.

3.      On November 12, 2008, the Office of the United States Trustee for

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,

*(cont'd)*

the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

4.       On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

5.       On December 10, 2008, the Court entered that certain Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order").

6.       Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009 (the "General Bar Date").  The deadline for governmental units to file claims that arose before November 10, 2009 was 5:00 p.m. (Pacific) on May 11, 2009 (the "Governmental Bar Date").  Pursuant to the Claims Bar Date Order, this Court approved the form and manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date Order (the "Claims Bar Date Notice").

7.       On December 17 and 19, 2008, KCC served a copy of the Claims Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy

_____
*(cont'd from previous page)*
  LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

3

Rule 2002, all of the Debtors' scheduled creditors in these cases, the Debtors' equity

holders, and certain other parties (Docket No. 1314).  In addition, the Debtors published

the Claims Bar Date Notice in <u>The Wall Street Journal</u> (Docket No. 1395) and <u>The</u>

<u>Richmond Times-Dispatch</u> (Docket No. 1394).

       8.     On January 16, 2009, the Court authorized the Debtors, among other

things, to conduct going out of business sales at the Debtors' remaining 567 stores

pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a

joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going

out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had

been completed.

       9.     On August 9, 2010, the Debtors and the Creditors' Committee filed

the Plan, which provides for the liquidation of the Debtors' assets and distribution of the

proceeds thereof under chapter 11 of the Bankruptcy Code.

       10.     On September 10, 2010, the United States Bankruptcy Court,

Eastern District of Virginia, signed an Order confirming the Plan.

       11.     The Plan became effective on November 1, 2010 (the "Effective

Date"), and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the

Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and

distribute the proceeds to creditors, including entering into settlement agreement, the

prosecution of Causes of Action and objections to claims.

    **<u>BACKGROUND REGARDING RELATIONSHIP OF CIRCUIT CITY AND PNY</u>**

       12.     Prior to the commencement of the Debtors' bankruptcy cases, the

4

Debtors were a leading specialty retailer of consumer electronics and operated large

nationwide electronics stores that sold, among other things, televisions, home theatre

systems, computers, camcorders, furniture, software, imaging and telecommunications

products, and other audio and video electronics.

13.     While the parties had prior business dealings going back to at least

2001, on May 16, 2006, Circuit City and PNY entered into a "Master Dealer Agreement."

In addition, over the course of their relationship, Circuit City and PNY entered into

numerous side agreements, addenda and letter agreements, both subject to, and outside of,

the terms of the Master Dealer Agreement (collectively, the "PNY Agreements"),

including that certain Product Addendum dated August 8, 2006 (the "Product

Addendum").  Copies of the Master Dealer Agreement and Product Addendum are

attached hereto as Exhibits B and C, respectively, and filed under seal.[2]  Pursuant to the

PNY Agreements, Circuit City purchased certain goods from PNY for resale by Circuit

City through its retail channels.

14.     Prior to the Petition Date, on October 27, 2008, PNY commenced an

action against Circuit City, in the United States District Court for the District of New

Jersey, Case No. 2:08-cv-05281 (the "Litigation"), seeking a judgment in excess of

$10,000,000 based upon the Debtor's alleged breach of an agreement concerning Flash

Cards (as defined in the underlying agreement referenced in the Litigation), breach of the

implied covenant of good faith and fair dealing, promissory estoppel, negligent

---

[2]  Due to a confidentiality provision in the Master Dealer Agreement, the Liquidating Trust is providing a
copy of the Master Dealer Agreement and Product Addendum to PNY and is concurrently filing a motion
with the Court to file the Master Dealer Agreement and Product Addendum under seal.

DOCS_LA:233353.2 46346-001

misrepresentation, unjust enrichment, fraud, failure to pay, book account, and account

stated.  The Litigation was stayed upon commencement of the Debtors' bankruptcy cases.

15.    On December 16, 2008, PNY filed the Claim seeking payment of

damages claimed in the Litigation.  In addition, also in December of 2008, PNY filed

claim number 447 ("Claim No. 447"), in the amount of $1,723,312.08.

16.    On March 23, 2010, the Debtors filed a complaint (the "Complaint")

commencing an adversary proceeding against PNY (Adv. No. 10-3056) ("Adversary

Proceeding").  In the Adversary Proceeding, the Debtors asserted that they were entitled to

recover certain unpaid obligations and avoid and recover alleged preferential transfers

made to PNY during the 90-day period prior to the Petition Date.

17.    On or about February 8, 2011, PNY and the Liquidating Trust

entered into a settlement agreement ("Settlement Agreement") concerning the Adversary

Proceeding and Claim No. 447 whereby the parties agreed, among other things, to dismiss

the Adversary Proceeding with prejudice as to all counts except for the Trustee's right to

challenge the Claim.  A true and correct copy of the Settlement Agreement is attached

hereto as Exhibit D.  After the Settlement Agreement had been negotiated and signed, the

Liquidating Trust filed a dismissal of the Adversary Proceeding (the "Rule 41 Dismissal").

A true and correct copy of the Rule 41 Dismissal is attached hereto as Exhibit E.

18.    On October 21, 2011, the Liquidating Trust filed an objection to the

Claim [Docket No. 11388] (the "Omnibus Objection").  PNY filed a response to the

Omnibus Objection [Docket No. 11473] (the "Omnibus Response"), asserting that (i) the

Settlement Agreement required any objection to be by way of an adversary proceeding and

(ii) the Settlement Agreement prohibited a books and records objection to the Claim.  A

true and correct copy of the Omnibus Response is attached hereto as Exhibit F.  As the

Liquidating Trust always intended to file a more thorough stand alone objection to the

Claim, and included the Claim in the October, 2011 Omnibus Objection through a

miscommunication, the Liquidating Trust withdrew the Omnibus Objection as it related to

the Claim so that it could prepare a more extensive objection, given the amount asserted by

PNY.

### LIQUIDATING TRUST'S RIGHT TO OBJECT TO THE CLAIM

19.    The Liquidating Trust is Not Required to Commence an Adversary

Proceeding to Object to the Claim.  PNY asserted in the Omnibus Response that "pursuant

to Rule 7001 of the Federal Rules of Bankruptcy Procedure, the express terms of the Rule

41 Dismissal, and the Terms of the Settlement Agreement incorporated by reference

therein, require the Trustee to commence an adversary proceeding . . . to challenge PNY's .

. . Claim."  Omnibus Response at ¶14.  This is a blatant misrepresentation of Bankruptcy

Rule 7001, the Rule 41 Dismissal and the Settlement Agreement.  Nothing in any of the

foregoing requires that the Liquidating Trust's objection be in the form of an adversary

proceeding.

20.    Rule 7001 lists the types of proceedings that are properly adversary

proceedings.  Notably, none of the ten specified proceedings are objections to proofs of

claim.  Indeed, such a requirement would contradict Rule 3007 of the Bankruptcy Rules,

which specifically provides that an objection to a claim may be accomplished, as the term

suggests, through an objection.  While Rule 3007 provides that an objection may properly

be included as part of an adversary proceeding, no rule requires that an objection be made

in an adversary proceeding.

21.    Similarly, the Rule 41 Dismissal contains no requirement, much less a suggestion, that the Liquidating Trust would further object to the Claim by way of an adversary proceeding rather than an objection.  In addition, the Rule 41 Dismissal is not controlling as to the terms of the Settlement Agreement, as the best evidence of the terms of the Settlement Agreement is the Settlement Agreement itself.

22.    Finally, nothing in the Settlement Agreement requires that the Liquidating Trust bring an objection exclusively through an adversary proceeding.  Indeed, the Settlement Agreement suggests the contrary providing: "**Claim No. 1723**.  The Parties reserve all rights with respect to Claim No. 1723, including the Trust's right to timely object to the claim and PNY's right to prosecute the claim fully."  Settlement Agreement at ¶5.  The "Trust's right to timely object to the claim" clearly includes objecting to the Claim through an objection.  While the Settlement Agreement suggests that the Liquidating Trust <u>may</u> object to the Claim in an adversary ("the Adversary Proceeding shall be dismissed with prejudice as to all counts EXCEPT the objections to Claim No 1723, which counts shall be dismissed without prejudice"), nothing in the Settlement Agreement dictates such an action as the exclusive means of objecting to the Claim.  Settlement Agreement at ¶3.

23.    <u>The Settlement Agreement Does Not Prohibit This Objection</u>.  In response to the Liquidating Trust's Omnibus Objection, which sought disallowance on a "books and records" basis, PNY asserted that such an objection is prohibited by the Settlement Agreement.  To the contrary, the Settlement Agreement contains no such prohibition; in fact, it expressly "reserves <u>all</u> rights with respect to Claim No. 1723" with

no qualifiers whatsoever.  Settlement Agreement at ¶5.  It is worth noting that PNY does

not cite a single line from the Settlement Agreement in support of its argument that the

Settlement Agreement prohibits a books and records objection.

24.     In making its argument, PNY relies on a sentence in the Rule 41

Dismissal, quoted above, that provides: "this requested dismissal is without prejudice to

the Trustee's rights, all of which are expressly reserved, to object to the validity and extent

of PNY's Claim No. 1723 . . . based solely on other grounds for objection."  Rule 41

Dismissal at 2.  To the extent there is any ambiguity between the Settlement Agreement

and the Rule 41 Dismissal, it is the Settlement Agreement that controls.  The Rule 41

Dismissal drafted subsequent to and separately from the Settlement Agreement does not

and cannot modify the terms of the Settlement Agreement.

25.     Regardless, the "other grounds for objection" provided for in the

Rule 41 Dismissal can only mean other grounds for objection than were asserted in the

Complaint and Adversary Proceeding, a point conceded by PNY.  As the only objection to

the Claim in the Complaint and Adversary Proceeding was based on section 502(d) of the

Bankruptcy Code, the Rule 41 Dismissal at most clarified that the Liquidating Trust

retained all its rights to object to the Claim, other than those based on section 502(d),

which objection could not be brought in light of the Settlement Agreement anyway as it

would no longer exist.  As the Complaint did not object to the Claim on any other ground

that 502(d), PNY fully misrepresents the Complaint when it states, without citing to a

specific paragraph: "The grounds for disallowance in the Adversary Proceeding centered

on a 'books and records' general denial of liability."  Omnibus Response at ¶17.

26.    Accordingly, objecting to the Claim through a claim objection on the bases set forth herein is appropriate.

## OBJECTION TO THE CLAIM

27.    The Claim Does Not Have *Prima Facie* Validity.  When a claim is based upon a writing, Rule 3001(c) of the Bankruptcy Rules requires that the original writing or a duplicate be filed with the proof of claim.  Bankruptcy Rule 3001(c); *In re Consolidated Pioneer Mortgage*, 178 B.R. 222, 225-26 (9th Cir. B.A.P. 1995).  If the writing is not included, there shall be no *prima facie* presumption of validity of the claim.  *In re Henry,* 311 B.R. 813, 817 (Bankr. W.D. Wash. 2004).  *Id.*

28.    Moreover, if an objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." *Official Comm. of Unsecured Creditors v. Fairchild Dornier GMBH* (*In re Dornier Aviation* (*N. Am.*) *Inc.*), Adversary No. 02-8199-SSM, 2005 Bankr. LEXIS 561, 2005 WL 4781236, at * 11 (Bankr. E.D. Va. Feb. 8, 2005) (citing 11 U.S.C. § 502(a)-(b); Fed. R. Bankr. P. 3001(f); *C-4 Media Cable S., L.P. v. Reds  T. V. & Cable, Inc.* (*In re C-4 Media Cable S., L.P.*), 150 B.R. 374, 377 (Bankr. E.D. Va.1992)). *See also, In re Hold*, 931 F. 2d. 620, 623 (9th Cir. 1991); *In re Fidelity Mortgage Holding Company, Ltd.*, 837 F. 2d 696, 698 (5th Cir. 1988) ("the claimant must . . . 'prove the validity of the claim by a preponderance of the evidence.'  The ultimate burden of proof always rests upon the claimant.").

29.    PNY thus bears the burden to present admissible evidence to prove the validity of the asserted Claim.  As the Claim consists entirely of unsupported allegations, in the form of a state court complaint, PNY has failed to satisfy its burden to establish the validity of the Claim.

30.     <u>The Liquidating Trust Disputes Liability Entirely</u>.  There is no
evidence in the books and records of the Debtors to support any the liability to PNY as
asserted in the state court complaint (the "State Court Complaint").  Indeed, the relevant
information in the Debtors' records suggests that it was PNY that breached the Master
Dealer Agreement for refusing to ship the required number of memory or video cards to
the Debtors during the later stages of the Debtors' existence.

31.     <u>On its Face, the Claim is Overstated</u>.  The Claim asserts liability of
"at least $10,000,000" based on the complaint that PNY filed against Circuit City in state
court (the "State Court Complaint"). *Claim at 1*. Not only are these merely unproven
allegations, but  the State Court Complaint also only specifies damages of $2,299,544
based upon book account and account stated.  The balance of the Claim is based on mere
allegations of additional damages and sums to be determined at trial based on lost profits,
punitive damages and attorneys' fees.

32.     Nothing in the State Court Complaint or the Claim provides
sufficient information for the Liquidating Trust to analyze the liability alleged.  Indeed,
even the $2,299,544 figure demanded in the State Court Complaint is presented without
any accounting of the amount demanded or other support to explain or establish the basis
therefore.

33.     <u>The State Court Complaint Seeks Damages Unavailable to PNY By
Virtue of the Parties' Master Dealer Agreement</u>.  Reserving all its rights to fully object to
allegations in the State Court Complaint and provide defenses thereto, the Liquidating
Trust has preliminarily identified provisions in the PNY Agreements that would

11

substantially limit the Claim: (i) paragraph 5(e) of the Master Dealer Agreement provides

that Circuit City shall not be liable to vendor for any loss of profits or revenue or for any

incidental, special, consequential or punitive damages resulting from any performance,

non-performance, breach or termination of the Master Dealer Agreement; and (ii)

paragraph 7(c) provides for termination of the Agreement, without liability or further

obligation, upon the filing of a bankruptcy petition.  While the Product Addendum

amended paragraph 7(a) and (b) of the Master Dealer Agreement, nothing modified

paragraph 7(c) or (d).  Finally, PNY's claim for relief based on Promissory Estoppel is

inappropriate where there is a written contract that provides the promises between the

parties and sets forth limitations on damages for breach of those promises.

## RESERVATION OF RIGHTS

34.    The Liquidating Trust reserves the right to modify, supplement

and/or amend this Objection upon the receipt of additional information..

## WAIVER OF MEMORANDUM OF LAW

35.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there

are no novel issues of law presented in the Motion, the Liquidating Trust requests that the

requirement that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

36.    No previous request for the relief sought herein has been made to

this Court or any other court.

WHEREFORE, the Liquidating Trust respectfully requests that the Court

enter an Order in the form attached hereto as Exhibit A sustaining this Objection and

disallowing the Claim, and granting such other and further relief as the Court deems

appropriate.


Dated: Richmond, Virginia          TAVENNER & BERAN, PLC
      April 24, 2012


                    */s/ Lynn L. Tavenner*
                    Lynn L. Tavenner (VA Bar No. 30083)
                    Paula S. Beran (VA Bar No. 34679)
                    20 North Eighth Street, 2nd Floor
                    Richmond, Virginia 23219
                    (804) 783-8300


                           - and -

                    PACHULSKI STANG ZIEHL & JONES LLP
                    Jeffrey N. Pomerantz, Esq.
                    Andrew W. Caine, Esq.
                    10100 Santa Monica Boulevard, 13th Floor
                    Los Angeles, California 90067-4100
                    (310) 277-6910

                    *Counsel to the Circuit City Stores, Inc.*
                    *Liquidating Trust*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing proposed Objection of the Circuit City Stores, Inc. Liquidating Trust to Claim No. 1723 Filed By PNY Technologies, Inc. to be served in accordance with the Case Management Order and via first-class mail, postage prepaid, to the following:

PNY Technologies, Inc.
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Gadi Cohen
Chairman of the Board, CEO and President
PNY Technologies, Inc.
299 Webro Road
Parsippany, NJ 07054-0218

McCarter & English, LLP
Attn:   Clement J. Farley
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
          Counsel for PNY Technologies, Inc.

McCarter & English, LLP
Attn:  Michael J. Reynolds
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
          Counsel for PNY Technologies, Inc.

Neil E. McCullagh
Spotts Fain PC
411 East Franklin Street
Suite 600
Richmond, VA 23218-1555
          Counsel for PNY Technologies, Inc.

14

DOCS_LA:233353.2 46346-001

_/s/ Lynn L. Tavenner_
Lynn L. Tavenner, Esquire (VA. Bar No. 30083)
Paula S. Beran, Esquire (VA. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

DOCS_LA:233353.2  46346-001

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

- and –

Robert J. Feinstein, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Liquidating Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| - - - - - - - - - - - - - - | x | |
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al., | : | Case No. 08-35653 (KRH) |
| | : | |
| Debtors. | : | |
| - - - - - - - - - - - - - - | : | Jointly Administered |
| | x | |

**ORDER SUSTAINING LIQUIDATING TRUST'S OBJECTION TO
CLAIM NO. 1723 FILED BY PNY TECHNOLOGIES, INC.**

THIS MATTER having come before the Court[3] on the *Liquidating Trust's*

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

DOCS_LA:233353.2 46346-001

*Objection to Claim No. 1723 Filed by PNY Technologies, Inc.* (the "Objection"), which

asks that Claim No. 1723 (the "Claim") be disallowed for the reasons set forth in the

Objection; and it appearing that due and proper notice and service of the Objection as set

forth therein was good and sufficient, and that no other further notice or service of the

Objection need be given; and it appearing that the relief requested in the Objection is in the

best interest of the Liquidating Trust, the Debtors' estates and creditors and other parties-

in-interest; and after due deliberation thereon good and sufficient cause exists for the

granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.    The Objection is SUSTAINED.

2.    The Claim is forever disallowed in its entirety for all purposes in

these bankruptcy cases.

3.    The Liquidating Trust shall serve a copy of this Order on the

claimant PNY Technologies, Inc. on or before five (5) business days from the entry of this

Order.

4.    This Court shall retain jurisdiction to hear and determine all matters

arising from or relating to this Order.

Dated: Richmond, Virginia
_____, 2012

_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

17

DOCS_LA:233353.2 46346-001

WE ASK FOR THIS:

TAVENNER & BERAN, PLC

_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                          - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4100
(310) 277-6910
                          - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Lynn L. Tavenner
Lynn L. Tavenner

18

DOCS_LA:233353.2 46346-001

**EXHIBIT B (filed under seal)**

DOCS_LA:233353.2  46346-001

**EXHIBIT C (filed under seal)**

EXHIBIT D

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted pro hac vice)
PACHULSKI STANG ZIEHL &
JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Counsel to the Circuit City Stores, Inc.
 Liquidating Trust

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

Counsel to the Circuit City Stores, Inc.
 Liquidating Trust

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| - - - - - - - - - - - - - - | x | |
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al., | : | Case No. 08-35653 (KRH) |
| | : | |
| Debtors. | : | |
| - - - - - - - - - - - - - - | : | Jointly Administered |
| | x | |

## SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST AND PNY TECHNOLOGIES, INC.

This settlement agreement and stipulation (this "Agreement") is

entered into by and among the Circuit City Stores, Inc. Liquidating Trust (the

"Trust"), on the one hand, and PNY Technologies, Inc. ( "PNY"), on the other hand

("PNY" and the "Trust" may be referenced herein as the "Parties", and/or each as a

"Party").

DOCS_LA:231531.1
MEI 11128377v.2



083565311030300000000000010

## GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition Date"), the

Debtors in the above-captioned captioned cases (the "Debtors")[1]  each filed a

voluntary petition in the United States Bankruptcy Court for the Eastern District of

Virginia (the "Court") under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"); and

WHEREAS, on November 12, 2008, the Office of the United States

Trustee for the Eastern District of Virginia appointed a statutory committee of

unsecured creditors (the "Creditors' Committee"); and

WHEREAS, on January 16, 2009, the Court authorized the Debtors,

among other things, to conduct going out of business sales at the Debtors' remaining

567 stores pursuant to an agency agreement (the "Agency Agreement") between the

Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent

commenced going out of business sales pursuant to the Agency Agreement at the

Debtors remaining stores.  On or about March 8, 2009, the going out of business

sales concluded; and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation,
LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353),
Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC.(n/a), XSStuff, LLC (9263), Mayland MN, LLC
(6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512).

2

WHEREAS, on September 29, 2009, the Debtors and the Creditors Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "First Amended Plan"). The associated disclosure statement (the "Disclosure Statement") was approved on September 24, 2009. Confirmation of the First Amended Plan was originally scheduled for November 23, 2009, but was adjourned from time to time; and

WHEREAS, on August 9, 2010, the Debtors and the Creditors' Committee filed the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), and the Plan was confirmed on September 10, 2010; and

WHEREAS, the Plan became effective on November 1, 2010, and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors; and

WHEREAS, the Trust is authorized under the Plan and Liquidating Trust Agreement to settle claims and causes of action, subject to the notice provisions therein.

3

## SETTLEMENT BACKGROUND

WHEREAS, the Debtors and PNY had various business relationships prior to the filing of the Petition Date, relating to the Debtors' operation of Circuit City retail stores;

WHEREAS, on or about December 1, 2008, PNY filed claim number 447 ("Claim No. 447") in the total amount of $1,723,312.08, asserting 503(b)(9) priority as to a portion of the claim, and as a general unsecured, non-priority entitlement as to the balance; and

WHEREAS following objection by the Debtors, the Court approved a stipulation of the Parties that the entirety of Claim No. 447 was , if valid, entitled to general unsecured non-priority status; and

WHEREAS, on or about December 16, 2008, PNY filed claim number 1723 ("Claim No. 1723") as a general unsecured, non-priority claim in an unliquidated amount, arising from prepetition litigation commenced in the District Court of New Jersey, which litigation was stayed by the filing of the Debtors' Cases; and

WHEREAS, on or about August 20, 2009, the Debtors filed their 31st Omnibus Claims Objection, which included an Objection to Claim No. 1723. The Debtors' Objection to Claim No. 1723 was continued from time to time; and

WHEREAS, on March 23, 2010, the Debtors filed a complaint initiating an adversary proceeding against PNY, No. 10-3056 (the "Adversary Proceeding"), pursuant to which the Debtors asserted that they are entitled to recover

4

certain Unpaid Obligations (as defined in the Complaint) and, pursuant to

Bankruptcy Code sections 547 and 550, avoid and recover alleged preferential

transfers made during the 90-day period prior to the Petition Date, and which

incorporated and superceded the Debtors' Objections to Claim Nos. 447 and 1723;

and

WHEREAS, rather than proceed with litigation concerning Claim Nos.

447 and 1723 and the Adversary Proceeding, the Parties engaged in good faith, arms'

length negotiations to resolve the foregoing in their entireties; and

NOW THEREFORE, for good and valuable consideration, the receipt

and sufficiency of which is hereby acknowledged, the Parties hereby STIPULATE

AND AGREE that:

1.      The above recital clauses are incorporated by reference in this

Stipulation as if fully set forth herein.

2.      **Claim No. 447.** Claim No. 447 shall be reduced to the amount of

$538,000, and shall be allowed as a general unsecured non-priority claim in the

amount of $538,000. The balance of Claim No. 447 as originally asserted shall be

disallowed in its entirety.

3.      **Adversary Proceeding.** On the Effective Date, as defined in

paragraph 16 below, the Adversary Proceeding shall be dismissed with prejudice as

to all counts EXCEPT the objections to Claim No. 1723, which counts shall be

dismissed without prejudice. To the extent the Debtors' 31st Omnibus Objection to

5

Claim No. 1723 remains active or pending on the Court's docket, the Trust shall

modify or withdraw its Claims Objection to Claim No. 1723, subject to the Trust's

right to renew its Objection in accordance with paragraph 5 below. The Parties shall

take all necessary steps and file all necessary pleadings with the Court to timely

dismiss the Adversary Proceeding and that portion of the 31st Omnibus Claims

Objection in accordance with this Agreement.

    4.    **Contracts.** Any and all contracts by and between the Parties,

including but not limited to the Contract, not previously terminated or rejected, shall

be deemed rejected as of the Effective Date.

    5.    **Claim No.** 1723. The Parties reserve all rights with respect to Claim

No. 1723, including the Trust's right to timely object to the claim and PNY's right to

prosecute the claim fully.

    6.    **Resolution of Claims and Disputes.** The Parties are entering into

this Settlement Agreement to resolve all matters of dispute or potential dispute

arising out of claims related to or asserted in, or which could have been asserted in

the Adversary Proceeding and Claim No. 447, and any other claims by and between

the Parties, whether or not such claims are known or unknown to the Parties, and

whether or not such claims have been asserted by the Parties, EXCEPT those claims

asserted by PNY in Claim No. 1723, and any unasserted claims that, as a matter of

law, would relate back to the complaint that underlies Claim No. 1723. Any and all

other claims against the Trust, the Debtors and/or their estates, collectively or

individually, by or on behalf of PNY, expressly including any claim that PNY might

6

be entitled to file under Bankruptcy Code section 502(h), are hereby irrevocably

withdrawn, disallowed, and expunged in their entirety except as stated herein. Any

and all other claims against PNY, collectively or individually, by or on behalf of the

Trust, or the Debtors and their estates are hereby irrevocably withdrawn, released,

and expunged in their entirety except as stated herein.

　　　　7.　　**Trust's Release.** As of the Effective Date, the Trust, without the

need for additional documentation or the entry of any additional orders, except as

expressly provided in this Settlement Agreement, on behalf of itself, the Debtors and

their bankruptcy estates, together with each of their affiliates, parents, agents,

subsidiaries, and the successors and assigns of any of them, and any other person or

entity that claims or might claim through, on behalf of or for the benefit of any of the

foregoing (collectively, the "Trust Releasor"), shall be deemed to have irrevocably

and unconditionally, fully, finally and forever waived, released, acquitted and

discharged PNY, its past or present affiliates, attorneys, directors, employees,

officers, parents, agents, subsidiaries, and the successors and assigns of any of them

(the "PNY Releasees"), from any and all manner of actions, causes of action, suits,

costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises,

variances, trespasses, damages, judgments, executions, claims and demands

whatsoever, of whatever kind or nature, whether known or unknown, suspected or

unsuspected, in law or equity, which the Trust Releasor or the Debtors, from the

beginning of time through the Effective Date, have, have had, may have or may

7

claim to have against any PNY Releasees, including, without limitation, any and all

claims asserted in or which could have been asserted in, or which relate to the

subject matter of the Adversary Proceeding and Claim No. 447, as well as any and

all claims that may have arisen or may relate to any other events, activities, or

occurrences that have taken place or take place on or before the Effective Date

(collectively, the "Trust's Released Claims"). The Parties intend that this release

shall be a general release, subject only to any exclusions set forth herein, and the

inclusion of the foregoing specifically included released matters shall not be

construed as detracting from the purposefully general nature of this release.

8.      **PNY's Release.** Effective on the Effective Date, PNY, without the

need for additional documentation or the entry of any additional orders, except as

expressly provided in this Settlement Agreement, on behalf of itself and each of its

affiliates, parents, agents, subsidiaries, and the successors and assigns of any of them,

and any other person or entity that claims or might claim through, on behalf of or for

the benefit of any of the foregoing (collectively, the "PNY Releasors"), shall be

deemed to have irrevocably and unconditionally, fully, finally and forever waived,

released, acquitted and discharged the Trust, the Debtors, their past or present

affiliates, attorneys, directors, employees, officers, parents, agents subsidiaries, and

the successors and assigns of any of them (collectively, the "Trust Releasees"), from

any and all manner of actions, causes of action, suits, costs, debts, liabilities,

obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses,

8

damages, judgments, executions, claims and demands whatsoever, of whatever kind

or nature, whether known or unknown, suspected or unsuspected, in law or equity,

which the PNY Releasors, or any of them, from the beginning of time through the

Effective Date, have, have had, may have or may claim to have against any of the

Trust Releasees, including, without limitation, any and all claims asserted in or

which could have been asserted in, or which relate to the subject matter of the

Adversary Proceeding and Claim No. 447, except for PNY's claims or causes of

action related to Claim No. 1723, including any claim that PNY might be entitled to

filed under Bankruptcy Code section 502(h), as well as any and all claims that may

have arisen or may relate to any other events, activities, or occurrences that have

taken place or take place on or before the Effective Date (collectively, the "PNY

Released Claims"). The Parties intend that this release shall be a general release,

subject only to any exclusions set forth herein, and the inclusion of the foregoing

specifically included released matters shall not be construed as detracting from the

purposefully general nature of this release.

9.     As to the mutual releases contained herein, the Trust Releasor and

PNY Releasors hereby expressly waive and relinquish, to the fullest extent permitted

by law, the benefits of California Civil Code section 1542, which provides:

> **A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.**

9

or any similar law in any other jurisdiction.

      10.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations asserted in the Adversary Proceeding, Claim No. 447 or Claim No. 1723.

      11.    **Expenses.**  The Parties shall bear their own costs, expenses and attorneys' fees incurred in connection with the Trust Released Claims, the PNY Released Claims, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by this Court.

      12.    **No Other Obligations.**  The Parties agree that the Parties have no obligation to one another other than as set forth herein.

      13.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid or unenforceable.

      14.    **Confidentiality.**  This Settlement Agreement is confidential and neither the Settlement Agreement nor the terms of the Settlement Agreement shall be

10

DOCS_LA:231531.1
MEl 11128377v.2

disclosed to any person, except for (a) the Parties and/or (b) any attorneys, professionals, and/or agents of the Parties, without the consent and agreement in writing of the Parties. Notwithstanding the foregoing, it shall not be considered a breach of this paragraph for a Party to disclose the terms hereof to local, state, and federal tax authorities, the Parties' auditors or accountants, or to make such disclosure to any other persons or entities when legally compelled to do so or in connection with litigation arising from or related hereto.

      15.   **Miscellaneous.**

         (a)   Nothing contained herein shall be deemed an admission of liability on the part of the Trust or PNY.

         (b)   Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

         (c)   Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

11

(d)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(e)     This Settlement Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any choice of law provisions.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

12

DOCS_LA:231531.1
MEI 11128377v.2

(i)     This Settlement Agreement is effective upon the

Effective Date (as defined below).

(j)  This Settlement Agreement shall not be modified,

altered, amended or vacated without the written consent of all parties hereto or order of the Bankruptcy Court.

(k)  This Agreement shall inure to the benefit of and be

binding upon the successors and assigns of the Parties hereto, including any Chapter 7 trustee or the Liquidating Trustee under the Plan.

16.     The "Effective Date" of this Agreement and all of its terms shall be

the later of (i) execution by all Parties and (ii) the expiration of the applicable Notice Period, if any, under the Liquidating Trust Agreement.

13

IN WITNESS WHEREOF. this Agreement is hereby executed as of January

**3**, 2011.

ACCEPTED AND AGREED TO BY:

THE CIRCUIT CITY STORES, INC.
LIQUIDATING TRUST

By:

TAVENNER & BERAN, PLC
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street. 2nd Floor
Richmond. Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

Counsel to the Circuit City
Stores. Inc. Liquidating Trust

Dated: January 31 , 2011

PNY TECHNOLOGIES, INC.

By:

Its    Treasurer

14

DOCS_LA:231531.1
MF) 11128377v.2

EXHIBIT E

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

- and –

Robert J. Feinstein, Esq.
John A. Morris, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Liquidating Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| ALFRED H. SIEGEL, AS TRUSTEE OF THE | ) |
| CIRCUIT CITY STORES, INC. LIQUIDATING | ) Adv. Pro. No. 10-03056 |
| TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PNY TECHNOLOGIES, INC., | ) |
| Defendant. | ) |
| | ) |

## STIPULATION OF VOLUNTARY DISMISSAL

Comes now Alfred H. Siegel, the duly appointed trustee of the Circuit City Stores, Inc.

Liquidating Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation

of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its

Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), by

counsel, and pursuant to Bankruptcy Procedure Rule 7041 and Federal Rule of Civil

Procedure 41, moves to dismiss with prejudice the complaint against PNY Technologies, Inc.

("PNY"). As a point of clarification, and as memorialized in the parties' settlement

agreement, this requested dismissal is without prejudice to the Trustee's rights, all of which

are expressly reserved, to object to the validity and extent of PNY's Claim No. 1723, which

claim is addressed in the complaint (as the Litigation Claim) in this adversary proceeding

based solely on other grounds for objection. As evidenced by the endorsement herein, PNY

consents to the dismissal provided for herein.

Dated: Richmond, Virginia
    Feb. 14          , 2011

TAVENNER & BERAN, PLC


        /s/ Paula S. Beran
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

*Counsel to Plaintiff*
*Alfred H. Siegel, Trustee of the Circuit City Stores,*
*Inc. Liquidating Trust*

Seen and Agreed:

McCARTER & ENGLISH, LLP

By: _____
Michael Reynolds, Esq.
4 Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Counsel to PNY Technologies, Inc.

EXHIBIT F

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Robert H. Chappell, III, Esquire (VSB #31698)
Neil E. McCullagh, Esquire (VSB #39027)
Erin E. Kessel, Esquire (VSB #65360)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Phone:  (804) 697-2000
Fax: (804) 697-2100

Attorneys for PNY Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Case No. 08-35653 (KRH) |
| | : | |
| | : | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | : | |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | |

**CLAIMANT PNY TECHNOLOGIES, INC.'S RESPONSE TO LIQUIDATING
TRUSTEE'S TWENTY-THIRD OMNIBUS OBJECTION TO CLAIMS
(DISALLOWANCE OF CERTAIN INVALID UNLIQUIDATED CLAIMS)
[Document No. 11388]**

**PRELIMINARY STATEMENT**

Claimant PNY Technologies, Inc. ("PNY"), by and through its undersigned counsel,

hereby responds to the Liquidating Trustee's (hereinafter, the "Trustee"), Twenty-Third

Omnibus Objection to Claims (Disallowance of Certain Invalid Unliquidated Claims) (the

ME1 12567865v.1

0835653111112300000000000001

"Objection"). PNY's "litigation claim" results from Circuit City's failure to honor promises it made to induce PNY to pay Circuit City millions of dollars and make other costly concessions in connection with marketing of "flash memory" cards. PNY first asserted the claim in an action in the District of New Jersey commenced prior to the commencement of the Circuit City Chapter 11 proceedings.

As a threshold matter, PNY respectfully asserts that its litigation claim (Claim No. 1723) must be adjudicated of an adversary proceeding rather than merely lodging a "books and records" objection to the claim as asserted by the Trustee resulting in a contested matter. The "books and records" objection is in any event insufficient in general and precluded by prior proceedings in the case.

As explained below, this is the third objection filed by the Debtors and/or the Trustee relating to PNY's litigation claim.  The Debtors first attempt to disallow PNY's litigation claim came before the Court by way of the Debtors' Thirty-First Claims Objection.  The Debtors objected to, and disclaimed any liability for PNY's claim based on a bald "books and records" objection.  The Debtors' objection to PNY's litigation claims was subsequently consolidated into an adversary proceeding styled, <u>Circuit City Stores Inc. v. PNY Technologies, Inc.</u>, Case No. 10-3056.  In that adversary proceeding, the Debtors again alleged no liability for PNY's claim based on a "books and records" review.

In February 2011, PNY and the Trustee entered into a binding settlement agreement ("Settlement Agreement") in the adversary proceeding.  Among other things, the settlement preserved the Trustee's right to later challenge PNY's litigation claim, "on some other ground" other than a "books and records" objection, and, in the event of such a challenge, PNY preserved its right to prove up the extent and validity of its claim on the merits.

ME1 12567865v.1

The Trustee's instant Objection is nothing more than an attempt to selectively dishonor the material provisions of the bargained for agreement memorialized in the Settlement Agreement.  PNY respectfully submits that, in accordance with the terms of the Settlement Agreement, in order to disallow its litigation claim the Trustee must come forward with some defense to the allegations supporting PNY's claim. The assertion of a "books and records" objection to the claim is simply insufficient grounds for disallowance.  This Court is bound to follow the plain language of the Settlement Agreement and enforce its provisions.

As stated below, PNY respectfully requests that this Court overrule the Trustee's "books and records" objection to PNY's litigation claim, and direct the Trustee to commence an adversary proceeding if he intends to challenge the extent or validity of the litigation claim. Otherwise, the Court should allow Claim 1723 in accordance with 11 U.S.C. § 502(a) and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.


## BACKGROUND

1.       PNY commenced an action on October 27, 2008, against the Debtor, in the United States District Court for the District of New Jersey ("District Court"), Case No. 2:08-cv-05281 (the "Litigation"), seeking a judgment against Circuit City Stores, Inc. (the "Debtor"), in excess of $10,000,000 based upon the Debtor's breach of an agreement concerning Flash Cards (computer memory small "card" devices for insertion into computer devices) that was entered into by PNY and the Debtor in or about August 2006.  In addition to breach of contract, there are additional counts against the Debtor for breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, unjust enrichment, fraud, failure to

ME1 12567865v.1

pay, book account, and account stated (the "Complaint").  A true and correct copy of PNY's

Complaint is attached hereto and incorporated herein as <u>Exhibit A</u>.

      2.      On October 30, 2008, the Debtor was served with the Summons and Complaint.

A true and correct copy of the Proof of Service is attached hereto and incorporated herein as

<u>Exhibit B</u>.

      3.      On November 10, 2008, the Debtor filed a petition under Chapter 11 of the United

States Code (the "Petition Date").

      4.      On November 14, 2008, the Debtor filed its Suggestion of Bankruptcy in the

District Court advising the Court that its bankruptcy case had been filed.  A true and correct copy

of the Debtor's Suggestion of Bankruptcy is attached hereto and incorporated herein as <u>Exhibit

C</u>.  On November 21, 2008, the District Court entered an Order administratively terminating the

Litigation and staying the action based on the Debtor's filing of its voluntary petition.  A true and

correct copy of the District Court's Order is attached hereto and incorporated herein as <u>Exhibit

D</u>.

      5.      On December 16, 2008, PNY timely filed a Proof of Claim form seeking payment

of a $10,000,000 unsecured claim relating to the damages claimed in the Litigation.   (the

"Litigation Claim") (Claim No. 1723).  PNY attached the Complaint to the Proof of Claim.  It is

acknowledged that PNY's claim is presently unliquidated.  A true and correct copy of PNY's

Proof of Claim is attached hereto and incorporated herein as <u>Exhibit E</u>.

      6.      On August 20, 2008, the Debtors' filed their Thirty-First Omnibus Claims

Objection, which included an objection to the Litigation Claim (Docket No. 4585).  The Debtors

classified the Litigation Claim as a "Legal Claim" that the Debtors sought to disallow and

expunge based solely on their review of "the Legal Claims and the bases upon which they are

ME1 12567865v.1

asserted and …the Debtors' books and records …."  Based solely on that cursory review and without any further explanation, the Debtors baldly asserted that they disclaimed "any liability for the alleged Legal Claims."  PNY filed a response to the Debtors' Objection to the Litigation Claim.  Subsequently, the Debtors' Objection to the Litigation Claim was continued from time to time by this Court.

7.    On March 23, 2010, the Debtors filed a complaint commencing an adversary proceeding against PNY (Adv. No. 10-3056) ("Adversary Proceeding").   In the Adversary Proceeding the Debtors asserted that they were entitled to recover certain unpaid obligations and avoid and recover alleged preferential transfers made to PNY during the 90-day period prior to the Petition Date.  The Complaint in the Adversary Proceeding incorporated and included the Debtors' Objection to PNY's Litigation Claim.  See Complaint, Adv. No. 10-3056.

8.    On September 10, 2010, this Court entered an Order confirming the Debtors' Second Amended Joint Plan of Liquidation ("Confirmation Order").  (Docket No. 8555).  The Plan became effective on November 1, 2010, and pursuant to the Plan and the Liquidating Trust Agreement approved therewith, The Liquidation Trust assumed the right and responsibility to liquidate the Debtors' remaining assets and distribute the proceeds to creditors.

9.    Subject to certain notice provisions, Article 11.4.D. of the Liquidating Trust Agreement approved by this Court in conjunction with the Plan authorizes the Trustee to settle claims and causes of action such as the PNY Adversary Proceeding without seeking formal approval of this Court under Rule 9019 of the Federal Rules of Bankruptcy Procedure.

10.    On or about February 8, 2011, PNY and the Trustee entered into a settlement agreement ("Settlement Agreement") concerning the Adversary Proceeding whereby the parties agreed, among other things, to dismiss the Adversary Proceeding with prejudice as to all counts

ME1 12567865v.1

except for the Trustee's right to challenge PNY's Litigation Claim.  A true and correct copy of the Settlement Agreement is attached hereto and incorporated herein as <u>Exhibit F</u>.

11.      Through the Settlement Agreement, the parties further stipulated and agreed that they were reserving all rights with respect to the Litigation Claim, including PNY's right to prosecute the claim fully.  <u>Id.</u> at ¶¶ 3, 5.  The parties also entered into and exchanged general releases ( the "Releases"), whereby all matters of dispute or potential dispute arising out of claims related to, or asserted in, or which could have been asserted in the Adversary Proceeding, whether known or unknown, were irrevocably withdrawn, released and expunged in their entirety, except for those claims asserted by PNY in its Litigation Claim, and any unasserted claims that, as a matter of law, would relate back to the underlying Complaint filed in the District Court action.  <u>Id.</u> at ¶ 7, 8.

12.      On or about February 14, 2011, the Trust filed its Stipulation of Voluntary Dismissal in the Adversary Proceeding ("Rule 41 Dismissal").  (Docket No. 33).  The Rule 41 Dismissal states in relevant part: "As a point of clarification, and as memorialized in the parties' settlement agreement, this requested dismissal is without prejudice to the Trustee's rights, all of which are expressly reserved, to object to the <u>validity and extent</u> of PNY's Claim No. 1723, which claim is addressed in the complaint (as the Litigation Claim) in this adversary proceeding based solely on <u>other grounds for objection</u>." (emphasis added).  A true and correct copy of the Rule 41 Dismissal is attached hereto and incorporated herein as <u>Exhibit G</u>.

13.      On October 21, 2011, the Trustee filed the instant Objection.  Through the Objection, the Trustee re-asserts that PNY's Litigation Claim should be disallowed, because, according to the Trustee, the Litigation Claim asserts claims "for which the Debtors do not have liability."  <u>See</u> Objection as ¶ 23.  The Trustee's basis of his general denial of liability arising

6

from the Litigation Claim is again based on his review of the Litigation Claim and his review of

the Debtors' books and records.  Id. at ¶ 24.   These are same grounds the Debtor raised when

they filed their original Objection to PNY's Litigation Claim in August 2008, and the same

grounds for disallowance that were merely repeated in the Complaint in the Adversary

Proceeding.  The Trustee offers no other or further basis or grounds for his Objection to PNY's

Litigation Claim.

14.      As stated below, The Court must overrule the Trustee's Objection to PNY's

Litigation Claim.  The Trustee's latest attempt to disallow the Litigation Claim, without the

benefit of a trial on the merits, violates the express terms of the Settlement Agreement entered

into by the parties in February 2011.  Moreover, PNY submits that, pursuant to Rule 7001 of the

Federal Rules of Bankruptcy Procedure, the express terms of the Rule 41 Dismissal, and the

terms of the Settlement Agreement incorporated by reference therein, require the Trustee to

commence an adversary proceeding should he wish to challenge PNY's Litigation Claim, and

not by way of an Omnibus Claims Objection.


## ARGUMENT

15.      It is established bankruptcy law that a settlement agreement entered into by a

debtor, or a trustee, and a creditor, compromising a claim or cause of action asserted in a

bankruptcy case or an adversary proceeding is an enforceable contract, binding upon all of the

parties to the agreement.  See In re Frye, 216 B.R. 166, 170-71 (Bankr. E.D. Va. 1997).  In Frye,

the court held that a settlement agreement once entered into by the parties is binding on all

parties pending approval by the court.  Frye, 216 B.R. at 173-74.[1]

---

[1]  Based on the express terms of the Liquidating Trust Agreement approved by this Court in conjunction with the
confirmed Plan of Liquidation, this Court's approval was not necessary to approve or effectuate the settlement

ME1 12567865v.1

16.    In the Settlement Agreement, the parties conclusively resolved the dispute and set forth the parties rights and obligations with respect to the Litigation Claim.  The Trustee bargained for his right to subsequently challenge the Litigation Claim *on other grounds* than those stated in the Complaint in the Adversary Proceeding.  PNY agreed to dismiss the Adversary Proceeding without prejudice subject to that reservation of rights.

17.    The grounds for disallowance in the Adversary Proceeding centered on a "books and records" general denial of liability as stated in this Claims Objection, and disallowance under section 502(d) of the Bankruptcy Code.  The instant Claims Objection merely re-states the grounds for disallowance of the Litigation Claim that the Debtor and the Trustee released in the Settlement Agreement and in direct contravention of the express terms of the Rule 41 Dismissal.

18.    PNY bargained for and received the right to support its claim through a trial on the merits in the event the Trustee mounted a subsequent challenge to the Litigation Claim on some other ground than those grounds stated in the Adversary Proceeding.  The Trustee's current Objection is simply nothing more than an attempt to selectively dishonor that material provision of the bargained for agreement that is memorialized in the Settlement Agreement.  PNY respectfully submits that this Court is bound to follow the plain language of the Settlement Agreement and enforce its provisions.  This Court can not now make a different or better deal for the Trustee by allowing the Trustee the right to seek disallowance of PNY's Litigation Claim by baldly asserting grounds that he has already released in the Settlement Agreement.  If the Trustee has "other grounds" to challenge the claims asserted by PNY in its Litigation Claim, then the Trustee should assert that challenge by way of an adversary proceeding and afford PNY a full and fair opportunity to prove up and liquidate the Litigation Claim during a trial on the merits, consistent with the terms of the Settlement Agreement.

reached between the Trustee and PNY.

8

19.     PNY entered into and agreed to the Rule 41 Dismissal of the Adversary Proceeding based on the express language that any subsequent challenge by the Trustee of the Litigation Claim so long as the challenge was based on the "extent and validity" of the Litigation Claim based "on other grounds" than those stated in the Complaint in the Adversary Proceeding. See Rule 41 Dismissal.

20.     PNY would not have entered into the Settlement Agreement or agreed to the Rule 41 Dismissal if the Trustee could merely re-assert the same general denial in a subsequent Omnibus Claims Objection.  At the time the Settlement Agreement was entered into, the parties intended that any other or further objection for the Litigation Claim would be based on some other grounds for disallowance raised by the Trustee which would then be fully and fairly resolved at trial.  The Trustee has failed to raise "any other grounds" for his objection to the PNY Litigation Claim other than the grounds he has already released in the Adversary Proceeding.  Thus, PNY respectfully submits that this Court should overrule the Trustee's Objection to PNY's Litigation Claim.[2]

21.     PNY also respectfully requests that the Court direct the Trustee to commence an adversary proceeding should he wish to challenge the extent of validity of the Litigation Claim, and to address directly, by way of his complaint in the adversary proceeding, the allegations asserted by PNY in the Complaint filed in the District Court if he intends to challenge PNY's Litigation Claim.

---

[2]   Moreover, Rule 7001 of the Federal Rules of Bankruptcy Procedure suggests that a trustee's challenge to the "extent or validity" of a creditor's interest in property must be brought by way of an adversary proceeding.  See FED.R.BANKR. P. 7001(2); Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995).  The object of Rule 7001 is to give the creditor full and fair notice and an opportunity to defend its claims in an adversary proceeding.

ME1 12567865v.1

22.     PNY reserves its right to file supplemental or additional responses as needed or as required by the Federal Rules of Civil Procedure and/or the Federal Rules of Bankruptcy Procedure to any other or further challenges to PNY's Litigation Claim.

**WHEREFORE**, Claimant PNY Technologies, Inc. respectfully requests that the Court overrule the Trustee's Objection as it relates to the PNY's Litigation Claim  and grant such other and further relief as this Court deems just and proper.

PNY TECHNOLOGIES, INC.

By: /s/ Neil E. McCullagh
Counsel

Robert H. Chappell, III, Esquire (VSB #31698)
Neil E. McCullagh, Esquire (VSB #39027)
Erin E. Kessel, Esquire (VSB #65360)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Phone:  (804) 697-2000
Fax: (804) 697-2100

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Counsel for PNY Technologies, Inc.

ME1 12567865v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2011, a copy of the foregoing Response was served on the following, constituting all necessary parties, by the means indicated:

By email (to acaine@pszjlaw.com) and Federal Express Next Business Day delivery to:

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

By email (to pberan@tb-lawfirm.com) and by Hand to:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, VA 23219


/s/ Neil E. McCullagh

ME1 12567865v.1

William J. Heller
Mark H. Anania
**McCARTER & ENGLISH LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

*Attorneys for Plaintiff PNY Technologies, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| **PNY TECHNOLOGIES, INC.** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| **v.** | : | **COMPLAINT AND LOCAL** |
| | | **RULE 11.2 CERTIFICATION** |
| **CIRCUIT CITY STORES, INC.,** | : | |
| **Defendant.** | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff PNY Technologies, Inc. ("PNY" or "Plaintiff") for its complaint against

Defendant Circuit City Stores, Inc. ("Circuit City" or "Defendant") alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      PNY is a Delaware corporation with its principal place of business at 299 Webro

Road, Parsippany, New Jersey 07054.

2.      Circuit City is a corporation organized and existing under the laws of the

Commonwealth of Virginia with its principal place of business in Virginia.



EXHIBIT

A

ME1 7629562v.5

3.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action based on diversity of citizenship.  The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

4.      The Court has personal jurisdiction over Defendant Circuit City because Defendant is present and doing business in the State of New Jersey.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 because Circuit City is subject to personal jurisdiction in this Judicial District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this Judicial District.

## ALLEGATIONS COMMON TO ALL CLAIMS

6.      PNY is a leading manufacturer and supplier of products used in and with computers.  Among PNY's product lines are Flash Cards, which are computer memory sold as small "card" devices for insertion into computer devices.

7.      Circuit City is a major national retailer of computer and other products, including Flash Cards.

8.      In or about August 2006, PNY and Circuit City entered into an agreement concerning Flash Cards ("the Flash Card Agreement").

9.      The Flash Card Agreement had a term of twenty-four months, with automatic renewals for like periods unless either party gave notice of termination.

10.     Under the Flash Card Agreement, Circuit City agreed to buy from PNY, advertise and resell to its customers PNY Flash Card products, and represented and agreed, among other things, to run a minimum of two advertising placements per month for PNY Flash Card products during the term of the Flash Card Agreement.  Sales volume at retail is determined based on the

2

frequency of print advertisements, among other things; therefore, the promise to provide the print ads was an important inducement for PNY to enter into the Flash Card Agreement.

11.    In consideration of Circuit City's promises, representations, obligations and covenants as reflected in the Flash Card Agreement, and in reliance thereon, PNY agreed to pay to Circuit City an advance called "Marketing Development Funds" of two million dollars, payable in two installments of one million dollars each in November, 2006 and February, 2007. PNY paid those amounts to Circuit City on time and in accordance with the Flash Card Agreement.  Upon information and belief, Circuit City took those payments into reported income for the fiscal year(s) when received.

12.    In further consideration of Circuit City's promises, representations, obligations and covenants as reflected in the Flash Card Agreement, and in reliance thereon, PNY also agreed to provide and did provide to Circuit City additional marketing development funds, price and margin protection, allowances, rebates, price protection, and point-of-sale (POS) allowances, all of which constituted substantial discounts off of the price of PNY Flash Cards and/or cash payments to Circuit for the privilege of selling PNY Flash Card products to Circuit City.

13.    Under the Flash Card Agreement, PNY first sold to Circuit City Flash Cards under the POLAROID® brand, which PNY sold under a private label agreement with Polaroid. When sales of the POLAROID® branded product did not meet Circuit City's expectations, PNY, although it was not obligated to do so, at substantial and unanticipated cost to itself, and in further reliance upon Circuit City's promises, representations, obligations and covenants in the Flash Card Agreement, accepted the return of the POLAROID® branded product in order to further the relationship with Circuit City.   As a result, Circuit City was protected against any losses in connection with the purchase of PNY's POLAROID® branded product.  To mitigate its

3

ME1 7629562v.5

losses from these POLAROID® branded products, PNY resold the POLAROID® branded
products to other customers at a lower price, as the market price for Flash Card products had
dropped.

14.     PNY thereafter continued to supply Flash Card products under the PNY® brand
in furtherance of the Flash Card Agreement and in further reliance upon the promises,
representations, obligations and covenants of Circuit City in the Flash Card Agreement.

15.     During the term of the Flash Card Agreement, and in breach of its promises,
representations, obligations and covenants in the Flash Card Agreement, Circuit City stopped
running the required minimum ads for PNY brand Flash Card products.

16.     Nothing in the Flash Card Agreement allowed Circuit City to unilaterally reduce
or eliminate the required minimum ads for PNY Flash Card products.

17.     As a direct and proximate result of Circuit City's breach of its promises,
representations, obligations and covenants in the Flash Card Agreement and its unauthorized
cessation of the ads for PNY Flash Card products, PNY had to resort to in-store activity, namely,
POS rebates and allowances, and other costly programs in order to compete with other Flash
Card brands that Circuit City sold and for which it was advertising.

18.     By pulling PNY ads and not running the minimum ads as required by the Flash
Card Agreement, Circuit City not only breached its promises, representations, obligations and
covenants in the Flash Card Agreement but also placed PNY at a significant competitive
disadvantage.  PNY had to pay additional POS benefits to Circuit City that were not
contemplated when it entered into the Flash Card Agreement.  In addition, ads influence buyers
to come into Circuit City stores to buy the advertised products.  By advertising competitors'
products and by refusing or failing to advertise PNY Flash Card products, PNY sold fewer units

4

than it otherwise would have sold if Circuit City had run the PNY ads as required, and further

cost PNY additional and unanticipated damages due to the price protection that PNY provided to

Circuit City.

19.     PNY gave notice of Circuit City's breach to representatives of Circuit City,

namely, Executive Vice President John Kelly and Vice President of Merchandising Elliott

Becker.  At a meeting in or about April 2008, attended by Messrs. Kelly and Becker from Circuit

City and Messrs Gadi Cohen, CEO of PNY, and Tony Gomez, Vice President of Sales and

Marketing of PNY, Mr. Gomez made a presentation confirming the damages that Circuit City

had caused to PNY by its breaches of the Flash Card Agreement.  Upon seeing and hearing the

Gomez presentation, Mr. Becker told Mr. Cohen and Mr. Gomez that PNY had done its

homework, and confirmed, and thus admitted, the accuracy of the information provided to

Circuit City at that meeting.

20.     Also at the same April 2008 meeting, Messrs. Kelly and Becker admitted to PNY

that Circuit City had charged Mr. Becker with the responsibility to maximize gross margin dollar

contributions for Circuit City; that Circuit City was an exclusive location for PNY's competitor,

SanDisk, before PNY entered into the Flash Card Agreement in or about August 2006; that

SanDisk was unhappy with PNY for beginning sales at Circuit City and, as a result, undercut

PNY in pricing to Circuit City (which enabled Mr. Becker to maximize gross margin, as Circuit

City had charged him to do); and – perhaps most important – admitted that Circuit City had

entered into the Flash Card Agreement not for the purpose of fulfilling the Flash Card

Agreement according to its terms, but with the undisclosed intention and ulterior motive of using

PNY to extract greater benefits and higher margin from PNY's competitor, SanDisk in

furtherance of its plan to increase gross margins.  In essence, Circuit City used PNY to break the

5

exclusivity deal it allegedly had with SanDisk and as leverage to extract lower prices from
SanDisk.

21.     By not selling through the PNY Flash Cards that Circuit City did buy from PNY,
Circuit City compounded the damages to PNY because PNY had agreed to provide, and did
provide, price protection to Circuit City in a falling market.

22.     PNY's costs for fulfilling the Flash Card Agreement, and in providing the benefits
to Circuit City under the Flash Card Agreement exceed $10,000,000.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

23.     Plaintiff repeats and realleges paragraphs 1 through 22 of this Complaint as if
fully set forth herein.

24.     PNY fully performed under the Flash Card Agreement.

25.     Circuit City has breached its promises, representations, obligations and covenants
in the Flash Card Agreement.

26.     As a direct and proximate result of Circuit City's breach, PNY has suffered
damages.

**SECOND CLAIM FOR RELIEF**
**Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

27.     PNY repeats and realleges paragraphs 1 through 22 of this Complaint as if fully
set forth herein.

28.     The actions of Circuit City, as particularly set forth above, constitute a breach of
the implied covenant of good faith and fair dealing.

29.     As a direct and proximate result of Circuit City's breach, PNY has suffered
damages.

6

ME1 7629562v.5

## THIRD CLAIM FOR RELIEF
### Promissory Estoppel

30.     PNY repeats and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

31.     Circuit City promised PNY that if PNY continued to make and supply products and provide the substantial discounts, allowances, marketing development funds and other benefits that Circuit City would purchase PNY Flash Card products and would advertise PNY Flash Card products at least twice monthly.

32.     Circuit City knew or should have known that its promises, representations and agreements would induce action on the part of PNY.

33.     Circuit City knew that PNY would and did make payments to Circuit City over the period from in or about August 2006 and thereafter in reliance on Circuit City's promises, representations, obligations and covenants in the Flash Card Agreement and otherwise.

34.     PNY's reliance on Circuit City's agreements, promises and representations was reasonable under the circumstances.  PNY did so rely, do its detriment.  As a direct and proximate result, PNY has been damaged.

## FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation

35.     PNY repeats and realleges paragraphs 1 through 22 and 31 – 34 of this Complaint as if fully set forth herein.

36.     The aforesaid representations and promises made by Circuit City were untrue.

37.     Circuit City breached a duty to PNY in making representations and warranties that were untrue.

7

ME1 7629562v.5

38.     As a result of PNY's reasonable reliance on Circuit City's negligent

misrepresentations, PNY has been damaged.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

39.     PNY repeats and realleges paragraphs 1 through 22 and 31 – 34 of this Complaint

as if fully set forth herein.

40.     By its conduct, Circuit City acted in bad faith and was unjustly enriched by

making promises and agreements with PNY that it never intended to fulfill, and/or for ulterior

motives unrelated to the purchase and sale of PNY Flash Cards.

41.     PNY's continued provision of monetary benefits to Circuit City conferred a

substantial benefit on Circuit City.

42.     Circuit City will be unjustly enriched if it is permitted to retain the payments and

benefits made by PNY, to which is was not entitled.

## SIXTH CLAIM FOR RELIEF
### Fraud

43.     PNY repeats and realleges paragraphs 1 through 22, 31 – 34 and 40 - 42 of this

Complaint as if fully set forth herein.

44.     Circuit City represented to PNY that it wanted to add PNY Flash Card products to

Circuit City's product line.  Those representations were made in the summer of 2006 by Edward

Maitland, a buyer for Circuit City, to Tony Gomez at PNY.

45.     As a result of Circuit City's representations, PNY entered into the Flash Card

Agreement and provided Circuit City with substantial benefits.

46.     In or about 2006 Circuit City was encountering financial difficulties which

continue to this day.

8

47.     Messrs. Kelly and Becker of Circuit admitted to PNY that Circuit City entered into the Flash Card Agreement for the ulterior and then-undisclosed motive of extracting greater profits from another and preferred supplier, SanDisk, a competitor of PNY.

48.     At the time Circuit City made its representations to PNY in or about 2006, it knew or should have known that they were false, and that Circuit City was using PNY as a foil to extract greater profits from a preferred supplier and to extract cash from PNY (in the form of an advance marketing development and other payments) to buoy its flagging income when it had no intention of fulfilling the Flash Card Agreement in accordance with its terms.

49.     At the time Circuit City made the representations to PNY, Circuit City knew that the representations were material to PNY.

50.     At the time Circuit City made the representations, Circuit City knew that they were false.

51.     In making the representations to PNY, Circuit City intended to induce PNY to enter into and perform an agreement under which PNY would not get the benefits of its bargain, but under which Circuit City would not only get the benefit of its bargain with PNY, but also would increase its profits from dealing with a PNY competitor.

52.     PNY relied upon the false representations of Circuit City in performing the Flash Card Agreement.

53.     PNY has suffered damages as a direct and proximate result of Circuit City's conduct.

9

## SEVENTH CLAIM FOR RELIEF
### Breach of Contract

54.     Plaintiff PNY entered into an agreement with Circuit City for the purchase of PNY products.  Under that agreement, PNY agreed to sell, and Circuit City agreed to buy and pay for those PNY products.

55.     PNY has provided all of the products required under the agreement and otherwise has performed all of its obligations under the agreements for the purchase and sale of PNY products.

56.     Circuit City paid certain of the amounts owed in accordance with the agreement for the purchase and sale of PNY products.

57.     Circuit City has failed to pay all amounts due and owing to PNY.

58.     PNY has demanded that Circuit City make payment, but that demand has not been met.

59.     PNY has given Circuit City notice of its breach and opportunities to cure.

60.     Circuit City has failed to cure its breaches of the Agreement.

61.     Circuit City has breached the agreement for the purchase and sale of PNY products, as a direct and proximate result of which PNY has been damaged.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract – Goods Sold and Delivered

62.     PNY repeats the allegations of the Seventh Count as if set forth at length herein.

63.     PNY sues Circuit City for products sold and delivered by PNY to Circuit City upon the promise by Circuit City to pay the agreed amounts.  Payment has been demanded and has not been made.

10

## NINTH CLAIM FOR RELIEF
### Failure to Pay

64.     PNY repeats the allegations of the Seventh and Eighth Count as if set forth at length herein.

65.     PNY sues Circuit City for the reasonable value of products sold and delivered to Circuit City, upon the promise of Circuit City to pay a reasonable price for same. Payment has been demanded and has not been made.

## TENTH CLAIM FOR RELIEF
### Book Account

66.     PNY repeats the allegations of the Seventh through Ninth Counts as if set forth at length herein.

67.     There is due from Circuit City the sum of $2,299,534.24, plus interest, on a certain book account. Payment has been demanded and has not been made.

## ELEVENTH CLAIM FOR RELIEF
### Account Stated

68.     PNY repeats the allegations of the Seventh through Tenth Counts as if set forth at length herein.

69.     Circuit City, being indebted to PNY in the sum of $2,299,534.24 upon an account stated between them, did promise to pay PNY said sum upon demand. Payment has been demanded and has not been made.

11

ME1 7629562v.5

## PRAYER FOR RELIEF

WHEREFORE, PNY Technologies, Inc. prays that this Court enter judgment against

Defendant as follows:

    A.    Awarding PNY its damages, compensatory and punitive;

    B.    Awarding PNY its costs and expenses of this action;

    C.    Awarding PNY its attorneys' fees; and

    D.    Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: October 27, 2008

s/ William J. Heller
William J. Heller
Mark H. Anania
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

*Attorneys for Plaintiff PNY Technologies, Inc.*

12

# CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I hereby certify that the matter in controversy is not the subject of any other action

or proceeding pending in any court, or of any pending arbitration.


Respectfully submitted,


Dated:  October 27, 2008            s/ William J. Heller

                                  William J. Heller

                                  Mark H. Anania

                                  **McCARTER & ENGLISH, LLP**

                                  Four Gateway Center

                                  100 Mulberry Street

                                  Newark, New Jersey 07102

                                  (973) 622-4444

                                  *Attorneys for Plaintiff PNY Technologies, Inc.*

AO 440 (Rev. 04/08)  Civil Summons

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

|  |  |  |
|---|---|---|
| PNY TECHNOLOGIES, INC. | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. |
| CIRCUIT CITY STORES, INC. | ) | |
| Defendant | ) | |

**Summons in a Civil Action**

To: *(Defendant's name and address)*

    CIRCUIT CITY STORES, INC.
    9950 MARYLAND DRIVE
    RICHMOND, VIRGINIA  23233

A lawsuit has been filed against you.

       Within  20  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

    WILLIAM J. HELLER, ESQ.
    McCARTER & ENGLISH, LLP
    FOUR GATEWAY CENTER, 100 MULBERRY STREET
    NEWARK, NJ  07102

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

 

_____
Name of clerk of court

Date: _____        _____
Deputy clerk's signature

 

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

AO 440 (Rev. 04/08) Civil Summons (Page 2)

### Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____
_____ ; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
       who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
_____ ; or

    (4) returning the summons unexecuted to the court clerk on _____ ; or

    (5) other *(specify)* _____
_____
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00_____ .

Date: _____

                                                    _____
                                                       Server's signature

                                                       _____
                                                    Printed name and title

                                                       _____
                                                    Server's address

**JS 44** (Rev. 12/07, NJ 5/08)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff **Morris**

County of Residence of First Listed Defendant

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

William J. Heller, Esq./McCarter & English, LLP
Four Gateway Center, 100 Mulberry Street
Newark, NJ 07102
Phone: 973-622-4444   Email: wheller@mccarter.com

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): **28 U.S.C. § 1332**

Brief description of cause: **Breach of Contract**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) (See instructions):

JUDGE                     DOCKET NUMBER

Explanation:

DATE **10/27/2008**

SIGNATURE OF ATTORNEY OF RECORD **s/William J. Heller**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.   (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.   Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.   Example:   U.S. Civil Statute: 47 USC 553
                                                                                     Brief Description: Unauthorized reception of cable service

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Provide a brief explanation of why the cases are related.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

SERVICE OF: SUMMONS, COMPLAINT, CIVIL COVER SHEET, RULE 7.1 DISCLOSURE STATEMENT
EFFECTED (1) BY ME: _CARROLL O. NEUNER_
TITLE: PROCESS SERVER                      DATE: 30 Oct 2008
                                                 4:45 PM

CHECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE:

[✓] Served personally upon the defendant: _Accepted By Daphene Nicholson Legal Assistant_

CIRCUIT CITY STORES, INC

Place where served:

_9950 MAYLAND Dr   Richmond, VA   23233_

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein. Name of person with whom the summons and complaint were left:

Relationship to defendant: _____

Description of person accepting service:

SEX: _F_ AGE: _30_ HEIGHT: _5'6_ WEIGHT: _150_ SKIN: _Black_ HAIR: _Black_ OTHER: ____

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service

## STATEMENT OF SERVER

TRAVEL $ _____    SERVICES $ _____    TOTAL $ _____

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Return of Service and Statement of Server is true and correct.

DATE _Oct, 30, 20 08_     _Carroll O Neuner_ L.S.
                          SIGNATURE OF _____
                          GUARANTEED SUBPOENA SERVICE, INC.
                          2009 MORRIS AVENUE
                          UNION, NJ 07083

ATTORNEY:    WILLIAM J HELLER, ESQ
PLAINTIFF:   PNY TECHNOLOGIES, INC
DEFENDANT:   CIRCUIT CITY STORES, INC
VENUE:       DISTRICT OF NEW JERSEY
DOCKET:      08 CV 5281 (WJM)

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**EXHIBIT**

B

AO 440 (Rev. 04/08)  Civil Summons (Page 2)

## Proof of Service

4:45 PM

I declare under penalty of perjury that I served the summons and complaint in this case on  30 Oct 2008 ,
by:

(1) personally delivering a copy of each to the individual at this place, _____
_____ ; or

(2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

(3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
  Daphene Nicholson    Legal Assistant    ; or

(4) returning the summons unexecuted to the court clerk on _____; or

(5) other (specify) _____
_____

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00    .

Date:  30 Oct 2008

Server's signature

CARROLL O NEUNER
Printed name and title

Private Process Server
2009 Morris Avenue
Union, NJ 07083
(800) 672-1952
Server's address

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

PNY TECHNOLOGIES, INC., )
)
)
    Plaintiff )
)   Civil Action No. 08cv5281 (WJM)
  v. )
)
CIRCUIT CITY STORES, INC.)
)
    Defendant. )

## SUGGESTION OF BANKRUPTCY
## AND NOTICE OF OPERATION OF AUTOMATIC STAY

PLEASE BE ADVISED that on November 10, 2008,
Circuit City Stores, Inc., and certain of its direct and
indirect subsidiaries (collectively the "Debtors"),[1] filed
voluntary petitions for reorganization relief under chapter
11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101
*et seq.*, as amended (the "Bankruptcy Code"), in the United
States Bankruptcy Court for the Eastern District of
Virginia, Richmond Division (the "Bankruptcy Court"). The

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company,
LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of
Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer
Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC
(n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512). The address for Circuit City Stores West Coast, Inc. is 9250
Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

EXHIBIT

C

Debtors' bankruptcy cases are being jointly administered under In re Circuit City Stores, Inc., Case No. 08-35653 (E.D. Va.). As a result of the filing, any further action against the Debtors is stayed under Bankruptcy Code section 362.

PLEASE BE FURTHER ADVISED that any action taken against the Debtors or their property without <u>first</u> obtaining relief from the automatic stay from the Bankruptcy Court may be subject to findings of contempt and the assessment by the Bankruptcy Court of penalties, fines, and/or sanction, as may be appropriate.

Dated: November 14, 2008

Respectfully submitted,

/s/ Suzette T. Rodriguez
Suzette T. Rodriguez, Esq.
LeClairRyan, A Professional
Corporation
Two Penn Plaza East
Newark, New Jersey 07105
(973) 491-3306
(973) 491-3552 (facsimile)

## CERTIFICATE OF SERVICE

I, Suzette T. Rodriguez, an attorney, certify that I have served the following parties with SUGGESTION OF VOLUNTARY BANKRUPTCY AND NOTICE OF OPERATION OF AUTOMATIC STAY via ECF and First Class Mail:

> William J. Heller, Esq.
> McCarter & English, LLP
> Four Gateway Center
> 100 Mulberry Street
> Newark, New Jersey 07102
> *Counsel for Plaintiff PNY Technologies, Inc.*

Dated: November 14, 2008

/s/ Suzette T. Rodriguez
Suzette T. Rodriguez, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------

PNY TECHNOLOGIES, INC.,                    CIVIL ACTION 08-5281 WJM


                    Plaintiff,

                    V.
                                           **ORDER**
CIRCUIT CITY STORES, INC.

                    Defendant.
------------------------------


        It appearing that proceedings in the above matter have been
stayed pending the filing of an voluntary Chapter 11 Petition on
November 10, 2008 in the United States Bankruptcy Court for the
Eastern District of Virginia, Richmond Division, bearing Docket
No. 08-35653.

        It is on this 21st day of November, 2008

        **ORDERED** that the Clerk administratively terminate the action
in his records, without prejudice to the right of the parties to
reopen the proceedings for good cause shown for the entry of any
stipulation of order, or for any other purpose required to obtain
a final determination of the litigation.


                                        s/William J. Martini
                                        _____
                                        WILLIAM J. MARTINI, U.S.D.J.


EXHIBIT

D

FORM B10 (Official Form 10) (9/97)

| United States Bankruptcy Court | for the Eastern | District of | Virginia | **PROOF OF CLAIM** |
|---|---|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| **Circuit City Stores, Inc.** | **08-35653** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | | |
|---|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>**PNY Technologies, Inc.** | ☐ | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
| Name and address where notices should be sent:<br>**McCarter & English, LLP**<br>**Attn: Clement J. Farley**<br>**Four Gateway Center**<br>**100 Mulberry Street**<br>**Newark, New Jersey 07102-4096** | ☐<br><br>☐ | Check box if you have never received any notices from the bankruptcy court in this case<br><br>Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone number: **(973) 622-4444** | | This Space Is for Court Use Only |

**COPY**

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>If this claim ☐ amends     a previously filed claim, dated: |
|---|---|

| 1. | **Basis for Claim:** | |
|---|---|---|
| | ☒ Goods Sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| | ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| | ☐ Money loaned | Your SS #: _____  _____  _____ |
| | ☐ Personal injury/wrongful death | |
| | Taxes | Unpaid compensation for services performed |
| | ☐Other _____ | from _____ to _____<br>     (date)        (date) |

| 2. | **Date debt was incurred:**<br>**August 2006** | 3. | **If court judgment, date obtained:** |
|---|---|---|---|

| 4. | **Total Amount of Claim at Time Case Filed:**     **at least $10,000,000** |
|---|---|
| | If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.<br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. |

| 5. | **Secured Claim:** | 6. | **Unsecured Priority Claim:** |
|---|---|---|---|
| | ☐ Check this box if your claim is secured by collateral (including a right of setoff)<br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle<br>     ☐ Other _____<br><br>Value of Collateral:  $ _____<br><br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____ | | ☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ _____<br>Specify the priority of the claim:<br>☐ Wages, salaries, commissions (up to $4,000),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).<br>☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for Personal, family, or household use – 11 U.S.C. § 507(a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| 7. | **Credits:** The amount of all payments on this claim has been credited and deducted for the Purpose of making this proof of claim. | This Space Is for Court Use Only |
|---|---|---|
| 8. | **Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.<br>DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | **RECEIVED**<br><br>DEC 16 2008<br><br>KURTZMAN CARSON CONSULTANTS |
| 9. | **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a Stamped, self-addressed envelope and copy of this proof of claim. | |

| Date:<br><br>12/15/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>**McCarter & English, LLP**<br><br><br>By: Clement J. Farley, A Member of the Firm | |
|---|---|---|

10 – Proof of Claim – Bankruptcy Court
4/98 P4/98

ME1 7965771v.1

**EXHIBIT**

E

Page 1

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

**The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules**

## DEFINITIONS

*Debtor*
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

*Proof* of Claim
A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

*Secured* Claim
A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

*Unsecured* Claim
If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

*Unsecured Priority Claim*
Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form

1. **Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

3. **Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment

4. **Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5. **Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above.)

6. **Unsecured Property Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

7. **Credits**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

8. **Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

10 – Proof of Claim – Bankruptcy Court
4/98 P4/98

Page 2

ME1 7965771v.1

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for PNY Technologies, Inc.

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 08-35653 |
| | : | |
| | : | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al.[1], | : | |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |

## ATTACHMENT TO PROOF OF CLAIM

1.      The undersigned, having offices at Four Gateway Center, 100 Mulberry Street,

Newark, New Jersey 07102, are attorneys for PNY Technologies, Inc. (the "Claimant"), and are

authorized to make this Proof of Claim on its behalf against the estate of Circuit City Stores, Inc.

(the "Debtor").

2.      The post office address of the Claimant, and the address to which all notices

should be mailed, is as follows:

---

[1] The Debtors are as follows: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc.,
Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company
of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco
Designs, Inc., Sky Venture Corp., PRAHS, INC., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx
Electronics, LLC, and Circuit City Stores PR, LLC.

ME1 7965770v.1

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Attn: Clement J. Farley

3.     The Claimant is unaware of anyone else who has filed a Proof of Claim relating to this claim.

4.     The Claimant is the current holder of the claims set forth herein.

5.     On November 10, 2008, the Debtor filed a petition under Chapter 11 of the United States Code (the "Petition Date").

## Background of Claim

6.     The Claimant commenced an action on October 27, 2008, against the Debtor, in the United States District Court for the District of New Jersey, Case No. 2:08-cv-05281 (the "Litigation") seeking a judgment against the Debtor in excess of $10,000,000 based upon the Debtor's breach of an agreement concerning Flash Cards (computer memory small "card" devices for insertion into computer devices) that was entered into by the Claimant and the Debtor in or about August 2006.  In addition to breach of contract, there are additional counts against the Debtor for breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, unjust enrichment, fraud, failure to pay, book account and account stated (the "Complaint").  A true and correct copy of the Claimants's Complaint is attached hereto and incorporated herein as Exhibit A.

ME1 7965770v.1

## The Amount of the Claim

7.      No sums have been paid to the Claimant on account of the prepetition claims the

Claimant has against the Debtor in at least the amount of $2,299,534.24 for amounts due to the

Claimant on a certain book account, plus other sums that would be awarded for compensatory

damages, punitive damages, attorneys' fees, costs and expenses.  As no judgment has been

entered against the Debtor, the amount due and owing is estimated to be at least as much as

claimed in the Complaint, which is in excess of $10,000,000.

8.      The Claimant hereby reserves its right to amend this Proof of Claim for purposes

of amending amounts due or re-classifying the character of the claim (i.e., over-secured, under-

secured, priority, etc.).

McCARTER & ENGLISH, LLP
Attorneys for PNY Technologies, Inc.

By: _____

        CLEMENT J. FARLEY
        A Member of the Firm

DATED:  12/15/08

ME1 7965770v.1

Case 08-35653-KRH    Doc 11864-5    Filed 11/28/11    Entered 11/28/11 11:54:48    Desc
Exhibit(s) Exhibit E - PNYS FGO    Page 6 of 23

# Exhibit A

William J. Heller
Mark H. Anania
**McCARTER & ENGLISH LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

*Attorneys for Plaintiff PNY Technologies, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - x

PNY TECHNOLOGIES, INC.          :     Civil Action No.

      **Plaintiff,**          :

                      **COMPLAINT AND LOCAL**

v.          :     <u>**RULE 11.2 CERTIFICATION**</u>

CIRCUIT CITY STORES, INC.,          :

      **Defendant.**          :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff PNY Technologies, Inc. ("PNY" or "Plaintiff") for its complaint against

Defendant Circuit City Stores, Inc. ("Circuit City" or "Defendant") alleges as follows:

### <u>PARTIES; JURISDICTION AND VENUE</u>

    1.     PNY is a Delaware corporation with its principal place of business at 299 Webro

Road, Parsippany, New Jersey 07054.

    2.     Circuit City is a corporation organized and existing under the laws of the

Commonwealth of Virginia with its principal place of business in Virginia.

ME1 7629562v.5

3.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action based on diversity of citizenship.  The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

4.      The Court has personal jurisdiction over Defendant Circuit City because Defendant is present and doing business in the State of New Jersey.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 because Circuit City is subject to personal jurisdiction in this Judicial District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this Judicial District.

## ALLEGATIONS COMMON TO ALL CLAIMS

6.      PNY is a leading manufacturer and supplier of products used in and with computers.  Among PNY's product lines are Flash Cards, which are computer memory sold as small "card" devices for insertion into computer devices.

7.      Circuit City is a major national retailer of computer and other products, including Flash Cards.

8.      In or about August 2006, PNY and Circuit City entered into an agreement concerning Flash Cards ("the Flash Card Agreement").

9.      The Flash Card Agreement had a term of twenty-four months, with automatic renewals for like periods unless either party gave notice of termination.

10.     Under the Flash Card Agreement, Circuit City agreed to buy from PNY, advertise and resell to its customers PNY Flash Card products, and represented and agreed, among other things, to run a minimum of two advertising placements per month for PNY Flash Card products during the term of the Flash Card Agreement.  Sales volume at retail is determined based on the

2

frequency of print advertisements, among other things; therefore, the promise to provide the print
ads was an important inducement for PNY to enter into the Flash Card Agreement.

11.    In consideration of Circuit City's promises, representations, obligations and
covenants as reflected in the Flash Card Agreement, and in reliance thereon, PNY agreed to pay
to Circuit City an advance called "Marketing Development Funds" of two million dollars,
payable in two installments of one million dollars each in November, 2006 and February, 2007.
PNY paid those amounts to Circuit City on time and in accordance with the Flash Card
Agreement.  Upon information and belief, Circuit City took those payments into reported income
for the fiscal year(s) when received.

12.    In further consideration of Circuit City's promises, representations, obligations
and covenants as reflected in the Flash Card Agreement, and in reliance thereon, PNY also
agreed to provide and did provide to Circuit City additional marketing development funds, price
and margin protection, allowances, rebates, price protection, and point-of-sale (POS) allowances,
all of which constituted substantial discounts off of the price of PNY Flash Cards and/or cash
payments to Circuit for the privilege of selling PNY Flash Card products to Circuit City.

13.    Under the Flash Card Agreement, PNY first sold to Circuit City Flash Cards
under the POLAROID® brand, which PNY sold under a private label agreement with Polaroid.
When sales of the POLAROID® branded product did not meet Circuit City's expectations, PNY,
although it was not obligated to do so, at substantial and unanticipated cost to itself, and in
further reliance upon Circuit City's promises, representations, obligations and covenants in the
Flash Card Agreement, accepted the return of the POLAROID® branded product in order to
further the relationship with Circuit City.   As a result, Circuit City was protected against any
losses in connection with the purchase of PNY's POLAROID® branded product.  To mitigate its

3

losses from these POLAROID® branded products, PNY resold the POLAROID® branded products to other customers at a lower price, as the market price for Flash Card products had dropped.

14.    PNY thereafter continued to supply Flash Card products under the PNY® brand in furtherance of the Flash Card Agreement and in further reliance upon the promises, representations, obligations and covenants of Circuit City in the Flash Card Agreement.

15.    During the term of the Flash Card Agreement, and in breach of its promises, representations, obligations and covenants in the Flash Card Agreement, Circuit City stopped running the required minimum ads for PNY brand Flash Card products.

16.    Nothing in the Flash Card Agreement allowed Circuit City to unilaterally reduce or eliminate the required minimum ads for PNY Flash Card products.

17.    As a direct and proximate result of Circuit City's breach of its promises, representations, obligations and covenants in the Flash Card Agreement and its unauthorized cessation of the ads for PNY Flash Card products, PNY had to resort to in-store activity, namely, POS rebates and allowances, and other costly programs in order to compete with other Flash Card brands that Circuit City sold and for which it was advertising.

18.    By pulling PNY ads and not running the minimum ads as required by the Flash Card Agreement, Circuit City not only breached its promises, representations, obligations and covenants in the Flash Card Agreement but also placed PNY at a significant competitive disadvantage.  PNY had to pay additional POS benefits to Circuit City that were not contemplated when it entered into the Flash Card Agreement.  In addition, ads influence buyers to come into Circuit City stores to buy the advertised products.  By advertising competitors' products and by refusing or failing to advertise PNY Flash Card products, PNY sold fewer units

4

than it otherwise would have sold if Circuit City had run the PNY ads as required, and further

cost PNY additional and unanticipated damages due to the price protection that PNY provided to

Circuit City.

19.    PNY gave notice of Circuit City's breach to representatives of Circuit City,

namely, Executive Vice President John Kelly and Vice President of Merchandising Elliott

Becker.  At a meeting in or about April 2008, attended by Messrs. Kelly and Becker from Circuit

City and Messrs Gadi Cohen, CEO of PNY, and Tony Gomez, Vice President of Sales and

Marketing of PNY, Mr. Gomez made a presentation confirming the damages that Circuit City

had caused to PNY by its breaches of the Flash Card Agreement.  Upon seeing and hearing the

Gomez presentation, Mr. Becker told Mr. Cohen and Mr. Gomez that PNY had done its

homework, and confirmed, and thus admitted, the accuracy of the information provided to

Circuit City at that meeting.

20.    Also at the same April 2008 meeting, Messrs. Kelly and Becker admitted to PNY

that Circuit City had charged Mr. Becker with the responsibility to maximize gross margin dollar

contributions for Circuit City; that Circuit City was an exclusive location for PNY's competitor,

SanDisk, before PNY entered into the Flash Card Agreement in or about August 2006; that

SanDisk was unhappy with PNY for beginning sales at Circuit City and, as a result, undercut

PNY in pricing to Circuit City (which enabled Mr. Becker to maximize gross margin, as Circuit

City had charged him to do); and – perhaps most important – admitted that Circuit City had

entered into the Flash Card Agreement not for the purpose of fulfilling the Flash Card

Agreement according to its terms, but with the undisclosed intention and ulterior motive of using

PNY to extract greater benefits and higher margin from PNY's competitor, SanDisk in

furtherance of its plan to increase gross margins.  In essence, Circuit City used PNY to break the

5

exclusivity deal it allegedly had with SanDisk and as leverage to extract lower prices from
SanDisk.

21.    By not selling through the PNY Flash Cards that Circuit City did buy from PNY,
Circuit City compounded the damages to PNY because PNY had agreed to provide, and did
provide, price protection to Circuit City in a falling market.

22.    PNY's costs for fulfilling the Flash Card Agreement, and in providing the benefits
to Circuit City under the Flash Card Agreement exceed $10,000,000.

### FIRST CLAIM FOR RELIEF
### Breach of Contract

23.    Plaintiff repeats and realleges paragraphs 1 through 22 of this Complaint as if
fully set forth herein.

24.    PNY fully performed under the Flash Card Agreement.

25.    Circuit City has breached its promises, representations, obligations and covenants
in the Flash Card Agreement.

26.    As a direct and proximate result of Circuit City's breach, PNY has suffered
damages.

### SECOND CLAIM FOR RELIEF
### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

27.    PNY repeats and realleges paragraphs 1 through 22 of this Complaint as if fully
set forth herein.

28.    The actions of Circuit City, as particularly set forth above, constitute a breach of
the implied covenant of good faith and fair dealing.

29.    As a direct and proximate result of Circuit City's breach, PNY has suffered
damages.

6

ME1 7629562v.5

## THIRD CLAIM FOR RELIEF
### Promissory Estoppel

30.     PNY repeats and realleges paragraphs 1 through 22 of this Complaint as if fully set forth herein.

31.     Circuit City promised PNY that if PNY continued to make and supply products and provide the substantial discounts, allowances, marketing development funds and other benefits that Circuit City would purchase PNY Flash Card products and would advertise PNY Flash Card products at least twice monthly.

32.     Circuit City knew or should have known that its promises, representations and agreements would induce action on the part of PNY.

33.     Circuit City knew that PNY would and did make payments to Circuit City over the period from in or about August 2006 and thereafter in reliance on Circuit City's promises, representations, obligations and covenants in the Flash Card Agreement and otherwise.

34.     PNY's reliance on Circuit City's agreements, promises and representations was reasonable under the circumstances.  PNY did so rely, do its detriment.  As a direct and proximate result, PNY has been damaged.

## FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation

35.     PNY repeats and realleges paragraphs 1 through 22 and 31 – 34 of this Complaint as if fully set forth herein.

36.     The aforesaid representations and promises made by Circuit City were untrue.

37.     Circuit City breached a duty to PNY in making representations and warranties that were untrue.

7

38.     As a result of PNY's reasonable reliance on Circuit City's negligent

misrepresentations, PNY has been damaged.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

39.     PNY repeats and realleges paragraphs 1 through 22 and 31 – 34 of this Complaint

as if fully set forth herein.

40.     By its conduct, Circuit City acted in bad faith and was unjustly enriched by

making promises and agreements with PNY that it never intended to fulfill, and/or for ulterior

motives unrelated to the purchase and sale of PNY Flash Cards.

41.     PNY's continued provision of monetary benefits to Circuit City conferred a

substantial benefit on Circuit City.

42.     Circuit City will be unjustly enriched if it is permitted to retain the payments and

benefits made by PNY, to which is was not entitled.

## SIXTH CLAIM FOR RELIEF
### Fraud

43.     PNY repeats and realleges paragraphs 1 through 22, 31 – 34 and 40 - 42 of this

Complaint as if fully set forth herein.

44.     Circuit City represented to PNY that it wanted to add PNY Flash Card products to

Circuit City's product line.  Those representations were made in the summer of 2006 by Edward

Maitland, a buyer for Circuit City, to Tony Gomez at PNY.

45.     As a result of Circuit City's representations, PNY entered into the Flash Card

Agreement and provided Circuit City with substantial benefits.

46.     In or about 2006 Circuit City was encountering financial difficulties which

continue to this day.

8

47.     Messrs. Kelly and Becker of Circuit admitted to PNY that Circuit City entered into the Flash Card Agreement for the ulterior and then-undisclosed motive of extracting greater profits from another and preferred supplier, SanDisk, a competitor of PNY.

48.     At the time Circuit City made its representations to PNY in or about 2006, it knew or should have known that they were false, and that Circuit City was using PNY as a foil to extract greater profits from a preferred supplier and to extract cash from PNY (in the form of an advance marketing development and other payments) to buoy its flagging income when it had no intention of fulfilling the Flash Card Agreement in accordance with its terms.

49.     At the time Circuit City made the representations to PNY, Circuit City knew that the representations were material to PNY.

50.     At the time Circuit City made the representations, Circuit City knew that they were false.

51.     In making the representations to PNY, Circuit City intended to induce PNY to enter into and perform an agreement under which PNY would not get the benefits of its bargain, but under which Circuit City would not only get the benefit of its bargain with PNY, but also would increase its profits from dealing with a PNY competitor.

52.     PNY relied upon the false representations of Circuit City in performing the Flash Card Agreement.

53.     PNY has suffered damages as a direct and proximate result of Circuit City's conduct.

9

## SEVENTH CLAIM FOR RELIEF
### Breach of Contract

54.     Plaintiff PNY entered into an agreement with Circuit City for the purchase of
PNY products.  Under that agreement, PNY agreed to sell, and Circuit City agreed to buy and
pay for those PNY products.

55.     PNY has provided all of the products required under the agreement and otherwise
has performed all of its obligations under the agreements for the purchase and sale of PNY
products.

56.     Circuit City paid certain of the amounts owed in accordance with the agreement
for the purchase and sale of PNY products.

57.     Circuit City has failed to pay all amounts due and owing to PNY.

58.     PNY has demanded that Circuit City make payment, but that demand has not been
met.

59.     PNY has given Circuit City notice of its breach and opportunities to cure.

60.     Circuit City has failed to cure its breaches of the Agreement.

61.     Circuit City has breached the agreement for the purchase and sale of PNY
products, as a direct and proximate result of which PNY has been damaged.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract – Goods Sold and Delivered

62.     PNY repeats the allegations of the Seventh Count as if set forth at length herein.

63.     PNY sues Circuit City for products sold and delivered by PNY to Circuit City
upon the promise by Circuit City to pay the agreed amounts.  Payment has been demanded and
has not been made.

10

## NINTH CLAIM FOR RELIEF
### <u>Failure to Pay</u>

64.     PNY repeats the allegations of the Seventh and Eighth Count as if set forth at length herein.

65.     PNY sues Circuit City for the reasonable value of products sold and delivered to Circuit City, upon the promise of Circuit City to pay a reasonable price for same. Payment has been demanded and has not been made.

## TENTH CLAIM FOR RELIEF
### <u>Book Account</u>

66.     PNY repeats the allegations of the Seventh through Ninth Counts as if set forth at length herein.

67.     There is due from Circuit City the sum of $2,299,534.24, plus interest, on a certain book account. Payment has been demanded and has not been made.

## ELEVENTH CLAIM FOR RELIEF
### <u>Account Stated</u>

68.     PNY repeats the allegations of the Seventh through Tenth Counts as if set forth at length herein.

69.     Circuit City, being indebted to PNY in the sum of $2,299,534.24 upon an account stated between them, did promise to pay PNY said sum upon demand. Payment has been demanded and has not been made.

11

Case 08-35653-KRH    Doc 11864-5    Filed 04/24/12    Entered 04/24/12 15:40:28    Desc
Exhibit(s) Exhibit E PNYS POC 89    Page 18 of 23
Case 2:08-cv-05261-WJM-CCE    Document 43-1    Filed 02/12/2001    Page 42 of 23

## PRAYER FOR RELIEF

WHEREFORE, PNY Technologies, Inc. prays that this Court enter judgment against

Defendant as follows:

A.    Awarding PNY its damages, compensatory and punitive;

B.    Awarding PNY its costs and expenses of this action;

C.    Awarding PNY its attorneys' fees; and

D.    Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  October 27, 2008

s/ William J. Heller
William J. Heller
Mark H. Anania
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

*Attorneys for Plaintiff PNY Technologies, Inc.*

ME1 7629562v.5

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

       I hereby certify that the matter in controversy is not the subject of any other action or proceeding pending in any court, or of any pending arbitration.

       Respectfully submitted,

Dated:  October 27, 2008

       s/ William J. Heller
       William J. Heller
       Mark H. Anania
       **McCARTER & ENGLISH, LLP**
       Four Gateway Center
       100 Mulberry Street
       Newark, New Jersey 07102
       (973) 622-4444

       *Attorneys for Plaintiff PNY Technologies, Inc.*

AO 440 (Rev. 04/08) Civil Summons

# UNITED STATES DISTRICT COURT

### for the

### District of New Jersey

| | |
|---|---|
| PNY TECHNOLOGIES, INC. | ) |
| Plaintiff | ) |
| v. | ) |
| CIRCUIT CITY STORES, INC. | ) |
| Defendant | ) |

Civil Action No.

## Summons in a Civil Action

To: *(Defendant's name and address)*

CIRCUIT CITY STORES, INC.
9950 MARYLAND DRIVE
RICHMOND, VIRGINIA  23233

A lawsuit has been filed against you.

   Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

WILLIAM J. HELLER, ESQ.
McCARTER & ENGLISH, LLP
FOUR GATEWAY CENTER, 100 MULBERRY STREET
NEWARK, NJ  07102

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_____
Name of clerk of court

Date: _____

_____
Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

Case 08-35653-KRH   Doc 11464   Filed 04/24/12   Entered 04/24/12 15:49:28   Desc
Exhibit(s) Main Document NYS Page 92 Page 21 of 23
Case 2:08-cv-05281-WJM-CCC   Document 1-2   Filed 10/27/2008   Page 2 of 2

AO 440 (Rev. 04/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

(1) personally delivering a copy of each to the individual at this place, _____
_____ ; or

(2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

(3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
_____ ; or

(4) returning the summons unexecuted to the court clerk on _____ ; or

(5) other *(specify)* _____
_____
_____.

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Case 08-35653-KRH   Doc 11495   Filed 04/24/12   Entered 04/24/12 15:40:28   Desc
Exhibit(s) Main Document PNY Page 93 of 111   Page 22 of 23
Case 2:08-cv-05281-WJM-CCC   Document 1-2   Filed 10/27/2008   Page 1 of 2

JS 44 (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PNY TECHNOLOGIES, INC.

**DEFENDANTS**
CIRCUIT CITY STORES, INC.

(b) County of Residence of First Listed Plaintiff **Morris**

County of Residence of First Listed Defendant

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, Telephone Number and Email Address)

William J. Heller, Esq./McCarter & English, LLP
Four Gateway Center, 100 Mulberry Street
Newark, NJ 07102
Phone: 973-622-4444   Email: wheller@mccarter.com

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332

Brief description of cause: Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S)
(See instructions):

JUDGE

DOCKET NUMBER

Explanation:

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 10/27/2008 | s/William J. Heller |

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

     (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

     (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.      **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.      **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.      **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**      Example:      U.S. Civil Statute: 47 USC 553
     Brief Description: Unauthorized reception of cable service

VII.      **Requested in Complaint. Class Action.** Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.      **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Provide a brief explanation of why the cases are related.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted pro hac vice)
PACHULSKI STANG ZIEHL &
JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy: (310) 201-0760

Counsel to the Circuit City Stores, Inc.
Liquidating Trust

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

Counsel to the Circuit City Stores, Inc.
Liquidating Trust

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| - - - - - - - - - - - - - - x | | |
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al., | : | Case No. 08-35653 (KRH) |
| | : | |
| Debtors. | : | |
| - - - - - - - - - - - - - - x | : | Jointly Administered |

**SETTLEMENT AGREEMENT AND STIPULATION BY AND AMONG THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST AND PNY TECHNOLOGIES, INC.**

This settlement agreement and stipulation (this "Agreement") is

entered into by and among the Circuit City Stores, Inc. Liquidating Trust (the

"Trust"), on the one hand, and PNY Technologies, Inc. ("PNY"), on the other hand

("PNY" and the "Trust" may be referenced herein as the "Parties", and/or each as a

"Party").

DOCS_LA:231531.1
ME1 11128377v.2



## GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition Date"), the

Debtors in the above-captioned captioned cases (the "Debtors")[1]  each filed a

voluntary petition in the United States Bankruptcy Court for the Eastern District of

Virginia (the "Court") under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"); and

WHEREAS, on November 12, 2008, the Office of the United States

Trustee for the Eastern District of Virginia appointed a statutory committee of

unsecured creditors (the "Creditors' Committee"); and

WHEREAS, on January 16, 2009, the Court authorized the Debtors,

among other things, to conduct going out of business sales at the Debtors' remaining

567 stores pursuant to an agency agreement (the "Agency Agreement") between the

Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent

commenced going out of business sales pursuant to the Agency Agreement at the

Debtors remaining stores.  On or about March 8, 2009, the going out of business

sales concluded; and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation,
LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353),
Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC.(n/a), XSStuff, LLC (9263), Mayland MN, LLC
(6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC
(5512).

WHEREAS, on September 29, 2009, the Debtors and the Creditors
Committee filed the First Amended Joint Plan of Liquidation of Circuit City Stores,
Inc. and its Affiliated Debtors and Debtors In Possession and its Official Committee
of Creditors Holding General Unsecured Claims (the "First Amended Plan"). The
associated disclosure statement (the "Disclosure Statement") was approved on
September 24, 2009. Confirmation of the First Amended Plan was originally
scheduled for November 23, 2009, but was adjourned from time to time; and

WHEREAS, on August 9, 2010, the Debtors and the Creditors'
Committee filed the Second Amended Joint Plan of Liquidation of Circuit City
Stores, Inc. and its Affiliated Debtors and Debtors In Possession and its Official
Committee of Creditors Holding General Unsecured Claims (the "Plan"), and the
Plan was confirmed on September 10, 2010; and

WHEREAS, the Plan became effective on November 1, 2010, and
pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Trust
assumed the right and responsibility to liquidate the Debtors' remaining assets and
distribute the proceeds to creditors; and

WHEREAS, the Trust is authorized under the Plan and Liquidating
Trust Agreement to settle claims and causes of action, subject to the notice
provisions therein.

3

DOCS_LA:231531.1
MEI 11128377v.2

## SETTLEMENT BACKGROUND

WHEREAS, the Debtors and PNY had various business relationships prior to the filing of the Petition Date, relating to the Debtors' operation of Circuit City retail stores;

WHEREAS, on or about December 1, 2008, PNY filed claim number 447 ("Claim No. 447") in the total amount of $1,723,312.08, asserting 503(b)(9) priority as to a portion of the claim, and as a general unsecured, non-priority entitlement as to the balance; and

WHEREAS following objection by the Debtors, the Court approved a stipulation of the Parties that the entirety of Claim No. 447 was , if valid, entitled to general unsecured non-priority status; and

WHEREAS, on or about December 16, 2008, PNY filed claim number 1723 ("Claim No. 1723") as a general unsecured, non-priority claim in an unliquidated amount, arising from prepetition litigation commenced in the District Court of New Jersey, which litigation was stayed by the filing of the Debtors' Cases; and

WHEREAS, on or about August 20, 2009, the Debtors filed their 31st Omnibus Claims Objection, which included an Objection to Claim No. 1723. The Debtors' Objection to Claim No. 1723 was continued from time to time; and

WHEREAS, on March 23, 2010, the Debtors filed a complaint initiating an adversary proceeding against PNY, No. 10-3056 (the "Adversary Proceeding"), pursuant to which the Debtors asserted that they are entitled to recover

4

DOCS_LA:231531.1
MEI 11128377v.2

certain Unpaid Obligations (as defined in the Complaint) and, pursuant to

Bankruptcy Code sections 547 and 550, avoid and recover alleged preferential

transfers made during the 90-day period prior to the Petition Date, and which

incorporated and superceded the Debtors' Objections to Claim Nos. 447 and 1723;

and

          WHEREAS, rather than proceed with litigation concerning Claim Nos.

447 and 1723 and the Adversary Proceeding, the Parties engaged in good faith, arms'

length negotiations to resolve the foregoing in their entireties; and

          NOW THEREFORE, for good and valuable consideration, the receipt

and sufficiency of which is hereby acknowledged, the Parties hereby STIPULATE

AND AGREE that:

      1.    The above recital clauses are incorporated by reference in this

Stipulation as if fully set forth herein.

      2.    **Claim No. 447.**  Claim No. 447 shall be reduced to the amount of

$538,000, and shall be allowed as a general unsecured non-priority claim in the

amount of $538,000. The balance of Claim No. 447 as originally asserted shall be

disallowed in its entirety.

      3.    **Adversary Proceeding.**  On the Effective Date, as defined in

paragraph 16 below, the Adversary Proceeding shall be dismissed with prejudice as

to all counts EXCEPT the objections to Claim No. 1723, which counts shall be

dismissed without prejudice. To the extent the Debtors' 31st Omnibus Objection to

5

Claim No. 1723 remains active or pending on the Court's docket, the Trust shall
modify or withdraw its Claims Objection to Claim No. 1723, subject to the Trust's
right to renew its Objection in accordance with paragraph 5 below. The Parties shall
take all necessary steps and file all necessary pleadings with the Court to timely
dismiss the Adversary Proceeding and that portion of the 31st Omnibus Claims
Objection in accordance with this Agreement.

4. **Contracts.** Any and all contracts by and between the Parties,
including but not limited to the Contract, not previously terminated or rejected, shall
be deemed rejected as of the Effective Date.

5. **Claim No. 1723.** The Parties reserve all rights with respect to Claim
No. 1723, including the Trust's right to timely object to the claim and PNY's right to
prosecute the claim fully.

6. **Resolution of Claims and Disputes.** The Parties are entering into
this Settlement Agreement to resolve all matters of dispute or potential dispute
arising out of claims related to or asserted in, or which could have been asserted in
the Adversary Proceeding and Claim No. 447, and any other claims by and between
the Parties, whether or not such claims are known or unknown to the Parties, and
whether or not such claims have been asserted by the Parties, EXCEPT those claims
asserted by PNY in Claim No. 1723, and any unasserted claims that, as a matter of
law, would relate back to the complaint that underlies Claim No. 1723. Any and all
other claims against the Trust, the Debtors and/or their estates, collectively or
individually, by or on behalf of PNY, expressly including any claim that PNY might

6

DOCS_LA:231531.1
MEI 11128377v.2

be entitled to file under Bankruptcy Code section 502(h), are hereby irrevocably

withdrawn, disallowed, and expunged in their entirety except as stated herein. Any

and all other claims against PNY, collectively or individually, by or on behalf of the

Trust, or the Debtors and their estates are hereby irrevocably withdrawn, released,

and expunged in their entirety except as stated herein.

      7.    **Trust's Release.** As of the Effective Date, the Trust, without the

need for additional documentation or the entry of any additional orders, except as

expressly provided in this Settlement Agreement, on behalf of itself, the Debtors and

their bankruptcy estates, together with each of their affiliates, parents, agents,

subsidiaries, and the successors and assigns of any of them, and any other person or

entity that claims or might claim through, on behalf of or for the benefit of any of the

foregoing (collectively, the "Trust Releasor"), shall be deemed to have irrevocably

and unconditionally, fully, finally and forever waived, released, acquitted and

discharged PNY, its past or present affiliates, attorneys, directors, employees,

officers, parents, agents, subsidiaries, and the successors and assigns of any of them

(the "PNY Releasees"), from any and all manner of actions, causes of action, suits,

costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises,

variances, trespasses, damages, judgments, executions, claims and demands

whatsoever, of whatever kind or nature, whether known or unknown, suspected or

unsuspected, in law or equity, which the Trust Releasor or the Debtors, from the

beginning of time through the Effective Date, have, have had, may have or may

7

DOCS_LA:231531.1
MEI 11128377v.2

claim to have against any PNY Releasees, including, without limitation, any and all claims asserted in or which could have been asserted in, or which relate to the subject matter of the Adversary Proceeding and Claim No. 447, as well as any and all claims that may have arisen or may relate to any other events, activities, or occurrences that have taken place or take place on or before the Effective Date (collectively, the "Trust's Released Claims"). The Parties intend that this release shall be a general release, subject only to any exclusions set forth herein, and the inclusion of the foregoing specifically included released matters shall not be construed as detracting from the purposefully general nature of this release.

8.    **PNY's Release.** Effective on the Effective Date, PNY, without the need for additional documentation or the entry of any additional orders, except as expressly provided in this Settlement Agreement, on behalf of itself and each of its affiliates, parents, agents, subsidiaries, and the successors and assigns of any of them, and any other person or entity that claims or might claim through, on behalf of or for the benefit of any of the foregoing (collectively, the "PNY Releasors"), shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trust, the Debtors, their past or present affiliates, attorneys, directors, employees, officers, parents, agents subsidiaries, and the successors and assigns of any of them (collectively, the "Trust Releasees"), from any and all manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses,

8

DOCS_LA:231531.1
MEI 11128377v.2

damages, judgments, executions, claims and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the PNY Releasors, or any of them, from the beginning of time through the Effective Date, have, have had, may have or may claim to have against any of the Trust Releasees, including, without limitation, any and all claims asserted in or which could have been asserted in, or which relate to the subject matter of the Adversary Proceeding and Claim No. 447, except for PNY's claims or causes of action related to Claim No. 1723, including any claim that PNY might be entitled to filed under Bankruptcy Code section 502(h), as well as any and all claims that may have arisen or may relate to any other events, activities, or occurrences that have taken place or take place on or before the Effective Date (collectively, the "PNY Released Claims"). The Parties intend that this release shall be a general release, subject only to any exclusions set forth herein, and the inclusion of the foregoing specifically included released matters shall not be construed as detracting from the purposefully general nature of this release.

9.     As to the mutual releases contained herein, the Trust Releasor and PNY Releasors hereby expressly waive and relinquish, to the fullest extent permitted by law, the benefits of California Civil Code section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

9

DOCS_LA:231531.1
MEI 11128377v.2

or any similar law in any other jurisdiction.

10.   **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations asserted in the Adversary Proceeding, Claim No. 447 or Claim No. 1723.

11.   **Expenses.** The Parties shall bear their own costs, expenses and attorneys' fees incurred in connection with the Trust Released Claims, the PNY Released Claims, the Adversary Proceeding, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by this Court.

12.   **No Other Obligations.** The Parties agree that the Parties have no obligation to one another other than as set forth herein.

13.   **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid or unenforceable.

14.   **Confidentiality.** This Settlement Agreement is confidential and neither the Settlement Agreement nor the terms of the Settlement Agreement shall be

DOCS_LA:231531.1
ME1 11128377v.2

disclosed to any person, except for (a) the Parties and/or (b) any attorneys, professionals, and/or agents of the Parties, without the consent and agreement in writing of the Parties. Notwithstanding the foregoing, it shall not be considered a breach of this paragraph for a Party to disclose the terms hereof to local, state, and federal tax authorities, the Parties' auditors or accountants, or to make such disclosure to any other persons or entities when legally compelled to do so or in connection with litigation arising from or related hereto.

15.     **Miscellaneous.**

(a)     Nothing contained herein shall be deemed an admission of liability on the part of the Trust or PNY.

(b)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(c)     Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

11

DOCS_LA:231531.1
MEI 11128377v.2

Case 08-35653-KRH   Doc 11494-6   Filed 04/24/12   Entered 04/24/12 15:49:28   Desc
Exhibit(s) Exhibit Document Page 106 of 111

Case 08-35653-KRH   Doc 11794-6   Filed 04/26/11   Entered 04/26/11 15:44:48   Desc
Main Document Settlement Agreement   Page 12 of 14

(d)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(e)     This Settlement Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any choice of law provisions.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     The United States Bankruptcy Court for the Eastern District of Virginia shall retain exclusive jurisdiction (and the parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

12

DOCS_LA:231531.1
MEI 11128377v.2

(i)      This Settlement Agreement is effective upon the
Effective Date (as defined below).

(j)    This Settlement Agreement shall not be modified,
altered, amended or vacated without the written consent of all parties hereto or order
of the Bankruptcy Court.

(k)   This Agreement shall inure to the benefit of and be
binding upon the successors and assigns of the Parties hereto, including any Chapter
7 trustee or the Liquidating Trustee under the Plan.

16.    The "Effective Date" of this Agreement and all of its terms shall be
the later of (i) execution by all Parties and (ii) the expiration of the applicable Notice
Period, if any, under the Liquidating Trust Agreement.

13

IN WITNESS WHEREOF, this Agreement is hereby executed as of January

**3**, 2011.

ACCEPTED AND AGREED TO BY:

THE CIRCUIT CITY STORES, INC.
LIQUIDATING TRUST

By: _____
TAVENNER & BERAN, PLC
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910

Counsel to the Circuit City
Stores, Inc. Liquidating Trust


Dated: January 31, 2011

PNY TECHNOLOGIES, INC.

By: _____
Its _____


14

DOCS_LA:231531.1
MF1 11128377v.2

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy: (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

– and –

Robert J. Feinstein, Esq.
John A. Morris, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Liquidating Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

| | |
|---|---|
| ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST, | ) ) ) Adv. Pro. No. 10-03056 |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| PNY TECHNOLOGIES, INC., | ) ) |
| Defendant. | ) ) |
| | ) |

**EXHIBIT**

tabbies

G

## STIPULATION OF VOLUNTARY DISMISSAL

Comes now Alfred H. Siegel, the duly appointed trustee of the Circuit City Stores, Inc.

Liquidating Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation

of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its

Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), by

counsel, and pursuant to Bankruptcy Procedure Rule 7041 and Federal Rule of Civil

Procedure 41, moves to dismiss with prejudice the complaint against PNY Technologies, Inc.

("PNY"). As a point of clarification, and as memorialized in the parties' settlement

agreement, this requested dismissal is without prejudice to the Trustee's rights, all of which

are expressly reserved, to object to the validity and extent of PNY's Claim No. 1723, which

claim is addressed in the complaint (as the Litigation Claim) in this adversary proceeding

based solely on other grounds for objection. As evidenced by the endorsement herein, PNY

consents to the dismissal provided for herein.

Dated: Richmond, Virginia      TAVENNER & BERAN, PLC
     Feb. 14     , 2011

                       /s/ Paula S. Beran
                 _____
                 Lynn L. Tavenner (VA Bar No. 30083)
                 Paula S. Beran (VA Bar No. 34679)
                 20 North Eighth Street, 2nd Floor
                 Richmond, Virginia 23219
                 (804) 783-8300

                 - and -

                 PACHULSKI STANG ZIEHL & JONES LLP
                 Jeffrey N. Pomerantz, Esq.
                 Andrew W. Caine, Esq.
                 10100 Santa Monica Boulevard
                 Los Angeles, California 90067-4100
                 (310) 277-6910

                 *Counsel to Plaintiff*
                 *Alfred H. Siegel, Trustee of the Circuit City Stores,*
                 *Inc. Liquidating Trust*

8x

Seen and Agreed:

McCARTER & ENGLISH, LLP

By: _____

Michael Reynolds, Esq.
4 Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Counsel to PNY Technologies, Inc.