Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

     - and –

Robert J. Feinstein, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - -    x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC., et al.,  :    Case No. 08-35653 (KRH)
                              :
        Debtors.              :
- - - - - - - - - - - - - -    :    Jointly Administered
                              x

## OBJECTION OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST TO CLAIM NO. 14787 FILED BY CHASE BANK USA, NATIONAL ASSOCIATION

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through Alfred

H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second

Amended Joint Plan of Liquidating of Circuit City Stores, Inc. and its Affiliated Debtors and

Debtors in Possession and its Official Committee of Creditors Holding General Unsecured

Claims (the "Plan") in the above-captioned cases, hereby files this Objection  (the "Objection")

to proof of claim number 14787 ("Claim No. 14787") filed by Chase Bank USA, National

Association ("Chase"), and hereby moves this court (the "Court"), pursuant to sections 105, 502

and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the

"Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Local Bankruptcy Rule 3007-1, for an order, the proposed form of which is attached

hereto as Exhibit A, granting the relief sought by this Objection, and in support thereof states as

follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Objection under 28 U.S.C. §§

157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and

legal predicates for the relief requested herein are Bankruptcy Code sections 105, 502 and 503,

Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## BACKGROUND

**General Background of Bankruptcy Cases**

2.      On November 10, 2008 (the "Petition Date"), the debtors in the above-

captioned cases (the "Debtors")[1] filed voluntary petitions in this Court for relief under chapter 11

of the Bankruptcy Code.

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit
City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux
International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311),
PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx
Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

3.      On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

4.      On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  The going out of business sales concluded on or about March 8, 2009

5.      On September 29, 2009, the Debtors and the Creditors' Committee filed the First Amended Joint Plan Of Liquidation Of Circuit City Stores, Inc. And Its Affiliated Debtors And Debtors In Possession And Its Official Committee Of Creditors Holding General Unsecured Claims (Docket No. 5124).  The associated disclosure statement (Docket No. 5103) (the "Disclosure Statement") was approved on September 24, 2009.

6.      On August 9, 2010, the Debtors and the Creditors' Committee filed the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (Docket No. 8252) (the "Plan").  The Plan was confirmed on September 14, 2010.

7.      The Plan provides for the liquidation of the Debtors under chapter 11 of the Bankruptcy Code and distribution of the proceeds from such liquidation to the Debtors' creditors.  The Plan became effective on November 1, 2010, and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Trust assumed the right and responsibility

3

to liquidate the Debtors' remaining assets and distribute the proceeds to creditors, and in connection therewith, the Trust is authorized under the Plan and Liquidating Trust Agreement to pursue and litigate objections to claims.

**Chase Background**

        8.     On or about January 16, 2004, Chase and the Debtors entered into that certain Consumer Credit Card Program Agreement dated January 16, 2004 (the "Agreement"). A copy of the Agreement is attached hereto as <u>Exhibit B</u> and filed under seal[2]. Pursuant to the Agreement, Chase operated a credit card program for the Debtors involving, among other things, the issuance of private label credit cards and co-branded credit cards, bearing the name and/or marks of the Debtors (the "Circuit City Credit Cards") to individual cardholders (the "Cardholders"), and the extension of credit by Chase to Cardholders for purchases at establishments owned by Debtors and other merchants accepting Circuit City Credit Cards. The Agreement is governed by New York law.

        9.     On December 24, 2008, the Court approved that certain Stipulation, Agreement and Order pursuant to Section 105(a) of the Bankruptcy Code Regarding Credit Card Program and for Related Relief (Docket No. 1271)(the "Initial Stipulation"), which provided for, among other things, the continuation by Chase of certain prepetition practices under the Agreement, the treatment of Cardholder accounts, and the creation of a reserve account by Chase (the "Reserve"), the remainder of which was thereafter returned by Chase to the Debtors.

---

[2] Due to a confidentiality in the Agreement, the Liquidating Trust is providing a copy of the Agreement to Chase and is concurrently filing a motion with the Court to file the Agreement under seal.

10.      Pursuant to the Initial Stipulation, Circuit City Credit Cards were no longer accepted at the Debtors' stores.

11.      On February 27, 2009, the Court entered that certain Stipulation, Agreement and Order for the Rejection and Termination of Consumer Credit Card Agreement Program, which provided that the Agreement was rejected as of February 28, 2009 (Docket No. 2338) (the "Rejection Order").

12.      On January 30, 2009, Chase filed a proof of claim asserting a general unsecured claim in an unliquidated amount against the Debtors for certain joint marketing promotional fees incurred under the Agreement ("Claim No. 9281").

13.      After entry of the Rejection Order, on April 29, 2009, Chase filed a second proof of claim asserting a general unsecured claim against the Debtors in the amount of $37,182,615.00 ("Claim No. 12402").

14.      On or about January 7, 2010, Chase filed its amended proof of claim asserting a general unsecured claim against the Debtors for damages from rejection of the Agreement in the amount of $33,789,082.00 ("Claim No. 14787" or the "Amended Claim").[3]  A copy of Claim No. 14787 is attached hereto as Exhibit C.  Claim No. 14787 is comprised of the following categories and amounts of alleged damages:

---

[3]  Claim Nos. 9281 and 12402 have been disallowed as amended claims by previous objections.  See Docket Nos. 6363 and 7292.

| | Alleged Rejection Damages | Alleged Amounts |
|---|---|---|
| 1 | Personnel costs related to the closing of Chase's Richmond and Kennesaw sites | $8,601.082.00 |
| 2 | IT/facility costs related to the closing of Chase's Richmond and Kennesaw sites; | $1,187,044.00 |
| 3 | Present value of costs of product trade | $509,386.00 |
| 4 | Unamortized costs related to platform conversion | $20,846,025.00 |
| 5 | Unamortized bounties for twelve months after termination; | $2,114,886.00 |
| 6 | Surplus plastic and other supplies; and | $292,671.00 |
| 7 | Attorneys' fees and disbursements | $237,988.00 |
| | **TOTAL** | **$33,789,082.00** |

## BASES FOR OBJECTION

15.     After reviewing Claim No. 14787, the Trust has determined that it is comprised entirely of claims for lost profits and consequential and indirect damages that are not causally related to the rejection of the Agreement, were not within the contemplation of the parties when they entered into the Agreement, and are speculative and/or overstated in amount. Accordingly, Claim No. 14787 should be disallowed in its entirety.

## ARGUMENT

### Summary of Argument

16.     Claim No. 14787 seeks recovery of certain damages allegedly related to the rejection of the Agreement, comprised almost entirely of consequential and other causally unrelated damages.

17.     As set forth above, the Agreement was rejected by the Debtors on February 28, 2009. Rejection of the Agreement by the Debtors amounts to a breach immediately prior to the Petition Date. *Stewart Foods v. Broecker (In re Stewart Foods)*, 64 F.3d 141, 144 (4th Cir. 1995); *In re Enron Corp.*, 349 B.R. 96, 106 (Bankr. S.D.N.Y.); *In re Riodizio, Inc.*, 204 B.R. 417, 425 (Bankr. S.D.N.Y. 1997). The other party, Chase, then holds a general unsecured

claim for rejection damages against the Debtors. *Stewart Foods*, 64 F.3d at 144. Under general contract law, damages are intended to give the benefit of the bargain to non-breaching parties by awarding a sum of money that will put them in as good a position as they would have been in had the contract been performed. *Enron Corp.*, 349 B.R. at 106; RESTATEMENT (SECOND) OF CONTRACTS § 347, Comment a (1981).

18.     Although lost profits and consequential and indirect damages may be recovered in certain circumstances under the Agreement, the damages asserted in Claim No. 14787 are not recoverable under the Agreement and applicable New York law. *See* Agreement § 11.26. Consequential and indirect damages must be causally related to the alleged breach, and must have been within the contemplation of the parties in order to be recoverable. Further, the alleged damages must be provable to a reasonable degree of certainty in order to be recovered under New York law.

19.     Each of the alleged items of damage set forth in Claim No. 14787 is for lost profits and consequential and indirect damages that was not reasonably contemplated by the parties, and is not causally related to the rejection of the Agreement. Thus, the asserted damages are not recoverable under New York law. Further, the damages contained in Claim No. 14787 are overstated, speculative, and cannot be proven with reasonable certainty.

A.     **Chase Bears the Burden to Prove the Validity of its Claim**

20.     Section 502(a) of the Bankruptcy Code, provides in relevant part, that "[a] claim, . . . proof of which is filed under [11 U.S.C. § 501] is deemed allowed, unless a party in interest . . . objects." With certain exceptions, section 502(b) of the Bankruptcy Code requires that:

7

if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

21.     Federal Rule of Bankruptcy Procedure 3001(c) provides that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim."  If the supporting documentation required by Rule 3001 is not attached, then the proof of claim is not *prima facie* evidence of the validity and amount of the claim.  *In re Los Angeles Int'l Airport Hotel Assoc.*, 196 B.R. 134, 139 (9th Cir. B.A.P. 1996), *aff'd*, 106 F.3d 1479 (9th Cir. 1997).

22.     If an objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim. ."  *Official Comm. of Unsecured Creditors v. Fairchild Dornier GMBH* (*In re Dornier Aviation* (*N. Am.*) *Inc.*), Adversary No. 02-8199-SSM, 2005 Bankr. LEXIS 561, 2005 WL 4781236, at * 11 (Bankr. E.D. Va. Feb. 8, 2005) (citing 11 U.S.C. § 502(a)-(b); Fed. R. Bankr. P. 3001(f); *C-4 Media Cable S., L.P. v. Reds  T. V. & Cable, Inc.* (*In re C-4 Media Cable S., L.P.*), 150 B.R. 374, 377 (Bankr. E.D. Va.1992)). *See also,  In re Hold*, 931 F. 2d. 620, 623 (9th Cir. 1991); *In re Fidelity Mortgage Holding Company, Ltd.*, 837 F. 2d 696, 698 (5th Cir. 1988) ("the claimant must . . . 'prove the validity of the claim by a preponderance of the evidence.'  The ultimate burden of proof always rests upon the claimant.").  Thus, the burden is on Chase to provide admissible evidence proving the validity of the asserted claim.

**B.      Chase's Alleged Damages Were Not Proximately Caused By the Rejection of the Contract, and Were Not Reasonably Contemplated by the Parties**

8

23.    Chase's alleged consequential and indirect damages are not recoverable, as the basis for the alleged damages does not meet the strict requirements set forth by applicable New York law.  Consequential damages, including lost profits, as damages for breach of contract have been permitted in New York only in unusual circumstances and under precise rules of law.

24.    First, it must be demonstrated with certainty that the damages were caused by the breach and, second, that the alleged loss is capable of proof with reasonable certainty. *EPN Ingenieria S.A. de C.V. v. GE,* 1996 U.S. Dist. LEXIS 13687 (S.D.N.Y. Sept. 17, 1996), *aff'd* 1997 U.S. App. LEXIS 14979 (2d Cir. N.Y. June 20, 1997).  The damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. *Id.*  In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.  *Int'l Gateway Exch., LLC v. Western Union Fin. Servs.*, 333 F. Supp. 2d 131, 150 (S.D.N.Y. 2004).

25.    Chase has not shown, and cannot show, that the damages it seeks in Claim No. 14787 are directly traceable to the rejection of the Agreement.  Instead, Chase seeks to recover speculative damages that cannot be measured with any reasonable certainty, many of which are wholly unrelated to the rejection of the Agreement.  Further, recovery of the types of damages sought in Claim No. 14787 was not within the contemplation of the parties at the time the Parties entered into the Agreement, and these damages are therefore unrecoverable.

**C.    Unamortized Costs Related to Platform Conversion Are Wholly Unrelated to the Rejection of the Agreement.**

26.    Chase seeks $20,846,025.00, the vast majority of Claim No. 14787, for the unamortized costs related to platform conversion.  This portion of the claim appears to seek

9

recovery of the costs associated with converting the Debtors' original credit card platform to Chase's "core" platform infrastructure.  This platform conversion was initiated by Chase in March 2007, and completed in August 2008 – months prior to the Petition Date and the rejection of the Agreement.  The Agreement does not oblige or contemplate Chase to undertake this conversion, and was undertaken by Chase at its sole volition, with no direction by for from the Debtors.  Thus, recovery of the costs related to platform conversion could not have been within the contemplation of the parties at the time the Parties entered into the Agreement, and any alleged damages related to Chase's platform conversion are wholly unrelated to and could not have been proximately caused by the Debtors' rejection of the Agreement in February of 2009.  These alleged damages are therefore unrecoverable.

27.    Causation is an essential element of a claim for damages resulting from breach of contract, regardless of whether the plaintiff claims general or consequential damages. *Carco Group, Inc. v. Maconachy*, 2010 U.S. App. LEXIS 13574, 4-5 (2d Cir. N.Y. July 2, 2010). Damages for breach of contract must be "directly and proximately caused" by the breach.  *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d. Cir. N.Y. 2004)(citing *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 4 N.E. 264, 266 (N.Y. 1886) (emphasis omitted)). They must not "be so remote as not to be directly traceable to the breach, or . . . the result of other intervening causes." *Id.* at 526 (citation omitted). Further, the fact of damages caused by the breach must be "reasonably certain."  *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 110 (2nd Cir. 2007)(citation and emphasis omitted).

28.    Courts are first required to engage in an analysis of proximate cause to test whether the breach caused the loss at issue. *Maconachy*, 2010 U.S. App. LEXIS at 4-5.

10

Damages "may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed." *Nat'l Mkt. Share*, 392 F.3d at 526. *See also Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261, 493 N.E.2d 234, 502 N.Y.S.2d 131 (1986) (stating, in considering "loss of future profits as damages for breach of contract," that damages "must be . . . directly traceable to the breach, not remote or the result of other intervening causes").

29.     For example, the Court in *Maconachy* found that the district court erred by failing to analyze evaluate the existence of proximate cause between the breach of an employment contract and the plaintiff's lost profit damages, and further failed to discuss whether any potential intervening causes might have broken the link between the breach and the damages suffered. 2010 U.S. App. LEXIS at 4-5.  The district court's failure to articulate a causal link between the employee's breach and the plaintiff's consequential damages proved fatal, and the appellate court noted that the plaintiff's losses could have been caused by a variety of reasons, and that there was no evidence presented that the breach itself caused any of the damages. *Id.* at 6-7.

30.     Likewise, here, any proximate cause analysis will inevitably show that the costs relating to platform conversion could not have been proximately caused by Debtors' rejection of the Agreement.  Indeed, Chase initiated and completed the platform conversion, and incurred the related costs, well before the rejection of the Agreement.

31.     Further, recovery of the costs related to platform conversion could not have been within the contemplation of the parties at the time the Parties entered into the Agreement, and these damages are therefore unrecoverable.  The decision to make this platform

11

conversion was made by Chase, with no direction by the Debtors.  The Agreement does not

oblige or contemplate Chase to undertake this conversion, and was undertaken by Chase at its

sole volition.

32.     These claims are not damages borne from the rejection of the Agreement,

but expenses and costs solely attributable to Chase's business decision.  Because the costs of

platform conversion are not directly traceable to the rejection of the Agreement, and were not

contemplated by the Parties, but are instead the result of Chase's independent decision made two

years before the Debtors' rejection, recovery of the conversion costs are barred under New York

law.

**D.      Costs Related to Chase's Decision to Close the Kennesaw and Richmond
        Sites Are Unrelated to the Rejection and Were Not Reasonably Within the
        Parties' Contemplation.**

33.     Chase made an independent business decision to open call centers in

Richmond, Virginia and Kennesaw, Georgia (collectively, the "Call Centers").  These Call

Centers were not required under the Agreement.  These Call Centers were used by Chase to

serve certain of its customers, including customers other than the Debtors.  Chase, however,

seeks to recover from the Debtors damages it allegedly incurred as a result of its business

decision to close its Richmond and Kennesaw locations.  Specifically, Chase's Amended Claim

seeks $8,601,082.00 for personnel costs and $1,187,044.00 for IT/facility costs related to its

decision to close the Call Centers.

34.     Chase should not be permitted to recover costs related to its decision to

close the Call Centers, as the alleged damages constitute consequential and indirect damages that

are wholly unrelated to the Debtors' rejection of the Agreement.  As explained above,

12

consequential damages must be causally related, in that they are directly and proximately caused by the breach in question. *Nat'l Mkt. Share, Inc.*, 392 F.3d at 525. Consequential damages must also reasonably be within the parties' contemplation at the time they entered into the Contract. *Int'l Gateway Exch.*, 333 F. Supp. 2d at 150.

35.    Chase's claim for damages related to its decision to close the Call Centers fails to meet both of these requirements for recovery under New York law. It was Chase's business decision to close these Call Centers; the rejection of the Agreement did not cause Chase to incur these costs. The rejection of the Agreement may have made these sites unessential to and/or unprofitable for Chase, but the damages sought in Claim No. 14787 were not directly caused by the rejection. Chase opened the Call Centers for its own convenience, and not for the Debtors' benefit, or out of any obligation under the Agreement. In fact, the Call Centers were not a requirement of the Agreement and were not in any way tied to the Agreement. Recovery of damages for lost profits and other costs associated with Chase's decision to close the Call Centers was not, and could not have been within the contemplation of the Debtors at the time the parties entered into the Agreement.

36.    Further, the damages listed in Claim No. 14787 related to these closings may be overstated, as Chase has failed to provide any information regarding its calculation of its damages related to the closings of the two Call Centers and whether it made any attempts to mitigate such damages.

13

**E.**    **Chase's Alleged Damages are Overstated in Value and Speculative.**

    **1.**    **The Present Value of the Product Trade Costs Are Overstated and Speculative.**

       37.    Chase seeks $509,386.00 for the present value of product trade costs. These claims are apparently for the costs associated with transferring the customers from the Debtors' branded credit card to another branded credit card.  Chase has not provided any information regarding the methodology utilized to calculate these claims and whether such claims are reasonable.  Without any additional support, these costs are unrecoverable under New York law, as they are purely speculative, and cannot be stated with any reasonable certainty.

    **2.**    **The Unamortized Bounties for Twelve Months After Termination Are Overstated**

       38.    Chase seeks $2,114,886.00 for unamortized bounties for twelve months after rejection of the Agreement.  These amounts are solely for lost profits that Chase predicted or anticipated it would earn under the Agreement.  Chase has failed to provide any support for these alleged contingent speculative damages.  Without any additional support, such damages appear overstated, and cannot be proven with any reasonable certainty, and are therefore unrecoverable.  *See* supra, ¶¶ 18-21.

    **3.**    **The Costs for Surplus Plastic and Other Supplies Are Speculative and Overstated.**

       39.    Chase seeks $292,671.00 for surplus plastic and other supplies.  These claims also are not recoverable as consequential damages, as these costs were not reasonably within the parties' contemplation at the time they entered into the Agreement, and are not causally related to the rejection of the Agreement.  Further, Chase has failed to mitigate its

damages with respect to the surplus plastic and supplies, and therefore the claim is overstated in amount.

**4.    The Attorneys' Fees Are Overstated and Not Recoverable.**

40.    Chase also seeks recovery of attorneys' fees in the amount of $237,988.00 in connection with its Amended Claim.  Chase has not submitted any bills or other information regarding how this time was calculated or incurred.

41.    That "professional fees of creditors paid from a bankruptcy estate must be reasonable is a principle so firmly fixed as to hardly require citation of authority." *In re US Airways, Inc., et al.*, Case No. 04-13819, Docket No. 2490, at p. 5 of 8 (citing, e.g., section 506(b) of the Bankruptcy Code (A copy of the decision is attached hereto as Exhibit D.)  *See In re Tobacco Row Phase IA Development, L.P.*, 338 B.R. 684, 694-5 (Bankr. E.D.Va. 2005); In re Valley Historic Ltd. Partnership, 307 B.R. 508, 512 (Bankr. E.D.Va. 2001).

42.    In determining the reasonableness of professional fees under section 330 of the Bankruptcy Code, the Court shall consider:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E).

43.    "Based on the statutory language alone, under 11 U.S.C. § 330(a)(3), a bankruptcy court is directed to consider at least five (5) factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project." *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Financial Services, Inc.),* 427 F.3d 804, 811-12 (10th Cir. 2005). *See also, Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)(providing for the "lodestar" analysis).

44.    While the Bankruptcy Code does not specify a unit of time, "hours appear to be a useful measure for comparison with other professionals' services, for determining a rate, and especially for evaluating whether the actual amount of time spent was reasonable." *Houlihan*, 427 F.3d at 812.

45.    Accordingly, Chase has failed to present the requisite information and documentation to demonstrate the reasonableness of the attorneys' fees claimed.

## RESERVATION OF RIGHTS

46.    The Trust reserves the right to modify, supplement and amend this Objection as it pertains to any claim of Chase.

## NOTICE

47.    Notice of this Objection has been provided to Chase and to parties-in-interest in accordance with the Court's Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures

16

(Docket No. 6208) (the "Case Management Order").  The Trust submits that, under the circumstances, no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

48.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Objection, the Trust requests that the requirement that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

49.    No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Trust respectfully requests that the Court enter an Order sustaining this Objection and granting such other and further relief as the Court deems appropriate.

Dated:    April 24, 2012

*/s/ Lynn L. Tavenner*

Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, P.L.C.
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
          pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
          acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2012, I caused the foregoing Objection of the Circuit City Stores, Inc. Liquidating Trust to Claim No. 14787 Filed By Chase Bank USA, National Association to be served in accordance with the Case Management Order and via certified mail (return receipt requested), and/or via first-class mail, postage prepaid, to the following:

<u>By Certified Mail (Return Receipt Requested) and First-Class Mail:</u>

Chase Bank USA, National Association
Attn: Daniel P. Tierney, General Manager
201 North Walnut Street
3 Christina Center
Wilmington, DE 19801

Chase Bank USA, National Association
Attn: Officer or Managing/General Agent
200 White Clay Center Dr.
Newark, DE 19711

Chase Bank USA, National Association
Attn:   Keith W. Shuck, President
White Clay Center
Building 200
Route 273
Newark, DE 19711

<u>By First-Class Mail upon:</u>

Weil, Gotshal, & Manges LLP
Attn:   Gary T. Holtzer, Esq.
        Joseph Gelb, Esq.
        Aliza Reicher, Esq.
767 Fifth Avenue
New York, NY 10153
        Counsel for Chase Bank USA, National Association

Kutak Rock LLP
Attn:   Michael A. Condyles
        Kimberly A. Pierro
Bank of America Center
1111 East Main Street
Suite 800
Richmond, VA 23219-6192
        Counsel for Chase Bank USA, National Association

　　　　*/s/ Lynn L. Tavenner*
Lynn L. Tavenner, Esquire (VA. Bar No. 30083)

19

**EXHIBIT A**

**(Form of Order)**

Jeffrey N. Pomerantz, Esq.                    Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Andrew W. Caine, Esq.                         Paula S. Beran, Esq. (VA Bar No. 34679)
(admitted *pro hac vice*)                     TAVENNER & BERAN, PLC
PACHULSKI STANG ZIEHL & JONES LLP             20 North Eighth Street, 2nd Floor
10100 Santa Monica Boulevard                  Richmond, Virginia 23219
Los Angeles, California 90067-4100            Telephone: (804) 783-8300
Telephone: (310) 277-6910                     Telecopy:  (804) 783-0178
Telecopy:   (310) 201-0760

                    - and –

Robert J. Feinstein, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - -     x
In re:                         :    Chapter 11
                               :
CIRCUIT CITY STORES, INC., <u>et al.</u>,    :    Case No. 08-35653 (KRH)
                               :
                Debtors.       :
- - - - - - - - - - - - - -    :    Jointly Administered
                               x

## ORDER SUSTAINING LIQUIDATING TRUST'S OBJECTION TO CLAIM NO. 14787 OF CHASE BANK USA, NATIONAL ASSOCIATION

THIS MATTER having come before the Court on the Liquidating Trust's

Objection to Claim No. 14778 filed by Chase Bank USA, National Association (the

"Objection"); and it appearing that due and proper notice and service of the

Objection as set forth therein was good and sufficient and that no other further notice

or service of the Objection need be given; and the Court having reviewed the

Objection, Claim No. 14787, any response to the Objection, if any, and all related

documents; and it appearing that the relief requested on the Objection is in the best

interest of the Debtors' estates and creditors and other parties-in-interest; and after

due deliberation thereon good and sufficient cause exists for the granting of the relief

as set forth herein,

**IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:**

1.      The Objection is SUSTAINED.

2.      Claim No. 14787 filed by Chase Bank USA, National Association is

disallowed in its entirety for all purposes in these bankruptcy cases.

3.      The Liquidating Trust's rights to object to any claim (filed or not) that

have been or may be asserted against the Debtors on any grounds governing law

permits are not waived and are expressly reserved.

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from or related to implementation or interpretation of this Order.

Dated: Richmond, Virginia

_____, 2012

                    _____
                    HONORABLE KEVIN R. HUENNEKENS
                    UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178

-and-

Jeffrey N. Pomerantz (CA Bar No. 143717)
Andrew W. Caine (CA Bar No. 110345)
*admitted pro hac vice*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.  11th Floor
Los Angeles, California  90067-4100
Telephone: 310-277-6910
Facsimile:  310-201-0760

*Counsel for the Circuit City Stores, Inc. Liquidating Trust*

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

___*/s/ Lynn L. Tavenner*_____
Lynn L. Tavenner

## **EXHIBIT B**

**(Agreement )**


**(To Be Filed Under Seal)**

**<u>EXHIBIT C</u>**

**(Proof of Claim No. 14787)**

Claim #14787  Date Filed: 1/7/2010

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Eastern___ DISTRICT OF Virginia___ | PROOF OF CLAIM |
|---|---|

| Name of Debtor (the person or other entity to whom the debtor owes money or property): Circuit City Stores, Inc. | Case Number: 08-35653-KRH |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Chase Bank USA, National Association | ☒ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: Chase Bank USA, National Association - Attn: Daniel P. Tierney 201 North Walnut Street, 3 Christina Center Wilmington, DE 19801 Telephone number: (302) 282-6926 | Court Claim Number: 12402___ *(If known)* Filed on: 04/29/2009___ |

| Name and address where payment should be sent (if different from above): Telephone number: | Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. Check this box if you are the debtor or trustee in this case. |
|---|---|

| 1. Amount of Claim as of Date Case Filed: $ See attachment___ | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

**2. Basis for Claim:** See attachment___
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____

    **3a.** Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____  Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____  Basis for perfection: _____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

Priority side:

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 1/4/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Print: Daniel P. Tierney, General Manager, Chase Bank USA, National Association Signature: *Daniel P. Tierney* | FOR COURT USE ONLY RECEIVED JAN 07 2010 KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

☐ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☒ No copy to return

0835653100107000000000008

**KUTAK ROCK LLP**

SUITE 800
BANK OF AMERICA CENTER
1111 EAST MAIN STREET

RICHMOND, VIRGINIA 23219-3500

804-644-1700
FACSIMILE 804-783-6192

www.kutakrock.com

ATLANTA
CHICAGO
DENVER
DES MOINES
FAYETTEVILLE
IRVINE
KANSAS CITY
LITTLE ROCK
LOS ANGELES
OKLAHOMA CITY
OMAHA
PHILADELPHIA
SCOTTSDALE
WASHINGTON
WICHITA

KIMBERLY A. PIERRO
kimberly.pierro@kutakrock.com
(804) 644-1700

January 6, 2010

**VIA FEDEX**

Circuit City Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

     Re:   *In re Circuit City Stores, Inc.*, Case No. 08-35653-KRH
             Amendment to Proof of Claim 12402

Dear Sir/Madam:

     Enclosed herein please find an original executed Amended Proof of Claim to be filed on behalf of Chase Bank USA, National Association which amends that certain proof of claim numbered 12402 which was filed on April 29, 2009.

     Please file stamp the enclosed copy of the proof of claim and return same to my attention in the enclosed envelope.

     Please do not hesitate to contact me if you have any questions.

                    Sincerely,

                    Kimberly A. Pierro

Enclosure

cc:   Michael A. Condyles, Esq.
       Joseph W. Gelb, Esq. (w/ encl.)
       Gregg M. Galardi, Esq. (w/ encl.)
       Douglas M. Foley, Esq. (w/ encl.)

4820-5381-7861.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------------------x

In re         :   Chapter 11
           :
CIRCUIT CITY STORES, INC., *et al.*,  :   Case No. 08-35653 (KRH)
           :
     Debtors.    :   (Jointly Administered)
           :

-------------------------------------------------------------x

## ATTACHMENT TO AMENDED PROOF OF CLAIM
## OF CHASE BANK USA, NATIONAL ASSOCIATION

1.  This amended proof of claim is made for and on behalf of Chase Bank USA, National Association, as successor by merger with Bank One Delaware, National Association ("Chase").

2.  On November 10, 2008 (the "Commencement Date"), Circuit City Stores, Inc. ("Circuit City" or the "Debtor"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") each commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

3.  On January 30, 2009, Chase filed a proof of claim [Claim No. 9281] (the "First Claim") in Circuit City's chapter 11 case, pursuant to which Chase asserted a general unsecured claim against Circuit City for (i) certain joint marketing promotional fees (the "Promo Fees") incurred under that certain Consumer Credit Card Program Agreement, dated as of January 16, 2004, between Circuit City and Chase (as the same has been amended from time to time, the "Program Agreement"), to the extent the Promo Fees are determined not to constitute an administrative expense of Circuit City, and (ii) certain returns, chargebacks, adjustments, and other credits, incurred under

the Program Agreement and applicable law, relating to prepetition sales (collectively, the "Credits").

4.      On April 29, 2009, Chase filed a proof of claim [Claim No. 12402] (the "Second Claim") in Circuit City's chapter 11 case asserting a general unsecured claim against the Debtor in the aggregate amount of $37,182,615.00.

5.      On August 21, 2009, the Debtors filed their Thirty-Fifth Omnibus Objection to Claims (Disallowance of (i) Certain Amended Claims; and (ii) Certain Duplicate Claims) seeking the disallowance of the First Claim and providing for the survival of the Second Claim, asserting that the Second Claim is an amended version of the First Claim (the "Objection").  Chase filed a response stating that it did not object to the disallowance of the First Claim pursuant to the Objection, however it did object to the extent that the Objection seeks to expunge, disallow, reduce in amount or otherwise affect in any manner the Second Claim.  Although the Debtors have indicated that they agree with Chase's interpretation of the limitations of the Objection, to date, the Objection has not been resolved.

## Program Agreement

6.      Prior to the Commencement Date, Chase and Circuit City entered into the Program Agreement.  Pursuant to the Program Agreement, Chase operated a credit card program for the benefit of Circuit City (the "Credit Card Program") involving, among other things, (a) the issuance by Chase of both private label credit cards and co-branded credit cards, each bearing the name and/or marks of Circuit City (both private label and co-branded cards, collectively, the "Circuit City Credit Cards") to individuals ("Cardholders") meeting the credit and other criteria established from time to time by

2

Chase, and (b) the extension of credit by Chase to Cardholders for purchases at establishments owned by Circuit City and other merchants accepting Circuit City Credit Cards.

7.      On December 24, 2008, the Court approved that certain Stipulation, Agreement and Order Pursuant to Section 105(a) of the Bankruptcy Code Regarding Credit Card Program and for Related Relief [Docket No. 1271] (the "Initial Stipulation"), which provided for, among other things, the continuation by Chase of certain prepetition practices under the Program Agreement, the treatment of Cardholder accounts, and the creation of a reserve account by Chase (the "Reserve"). Chase has used the Reserve in conformity to the Initial Stipulation and, in October 2009, returned the remainder of the reserve to Circuit City.

8.      On January 16, 2009, counsel to Circuit City provided counsel to Chase with notice of a Complete Liquidation (as defined in the Initial Stipulation). That same day, Circuit City filed with the Court that certain Agency Agreement, dated January 15, 2009 [Docket No. 1606] (the "Agency Agreement"), by and between Great American Group WF, LLC, Hudson Capital Partners LLC, SB Capital Group, LLC and Tiger Capital Group, LLC, Circuit City Stores West Coast, Inc. and its other direct and indirect subsidiaries. Pursuant to the Order Approving Agency Agreement, Store Closing Sales and Related Relief [Docket No. 1634], the Court authorized the Debtors to commence the liquidation of the merchandise at all of their stores and certain distribution centers pursuant to the terms of the Agency Agreement. The sale of all of the merchandise located in the Debtors' 567 retail store locations and certain distribution centers (the "Liquidating Stores") commenced on January 17, 2009. Agency Agreement, § 6.1.

9.      Pursuant to the Initial Stipulation, Circuit City Credit Cards were no longer to be accepted at the Debtors' stores.

10.     On January 20, 2009, Chase moved (a) pursuant to section 365(d)(2) of the Bankruptcy Code, to compel rejection of the Program Agreement under which the Circuit City Credit Cards were issued, and (b) pursuant to section 362(d) of the Bankruptcy Code, to obtain limited relief from the automatic stay (the "Motion"). Circuit City and Chase subsequently entered into discussions to resolve the Motion amicably.

11.     On February 26, 2009, the Court approved that certain Stipulation, Agreement and Order for the Rejection and Termination of Consumer Credit Card Program Agreement [Docket No. 2338] (the "Rejection Stipulation"), effective as of February 28, 2009.

12.     Pursuant to paragraph 4 of the Rejection Stipulation, Chase is authorized to file this amended proof of claim pursuant to section 365 of the Bankruptcy Code and Rule 3002 of the Federal Rules of Bankruptcy Procedure to recover damages resulting from the rejection of the Program Agreement. The following chart lists the components of Chase's claim for Rejection Damages (as defined in the Rejection Stipulation), which updates the amounts of the components of Chase's claim:

| Rejection Damages | Amount |
|---|---|
| Personnel costs related to closing of Kennesaw and Richmond sites | $8,601,082 |
| IT/Facility costs related to closing of Kennesaw and Richmond sites | $1,187,044 |
| Present value of costs of product trade | $509,386 |
| Unamortized costs related to platform conversion | $20,846,025 |

4

| | |
|---|---:|
| Unamortized bounties for twelve months after termination | $2,114,886 |
| Surplus plastic and other supplies | $292,671 |
| Attorneys' fees and disbursements<br><br>• Weil, Gotshal & Manges LLP (from January 16, 2009 through November 30, 2009)<br><br>• Kutak Rock LLP (from January 16, 2009 through December 10, 2009) | • $167,212<br><br>• $70,776 |

13.    Accordingly, Chase hereby asserts a general unsecured claim against the Debtor for Rejection Damages in the aggregate amount of $33,789,082.

14.    Chase expressly reserves all rights to amend, modify and/or supplement this amended proof of claim in any respect, including without limitation, with respect to filing a further amended proof of claim for additional claims, including without limitation, claims for interest, fees and related expenses (including attorneys' fees) that are not ascertainable at this time. Chase expressly reserves the right to amend modify and/or supplement this amended proof of claim and to assert any and all other claims of whatever kind or nature that they or any of them have, or they or any of them may have, against the Debtor for Rejection Damages that come to Chase's attention or arise after the filing of this amended proof of claim. The filing of this amended proof of claim shall not be deemed a waiver of any such claims. In filing this amended proof of claim, Chase expressly reserves all rights and causes of action, including without limitation, contingent or unliquidated rights that it may have against the Debtor. The description of claims and the classification thereof herein is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Chase under the Program Agreement. This amended proof of claim is filed without prejudice to the

5

filing by Chase of additional proofs of claim or requests for payment with respect to any other indebtedness, liability or obligation of the Debtor.

        15.    The filing of this amended proof of claim is not and shall not be construed as an election of remedies or limitation of rights or remedies.  In filing this amended proof of claim, Chase does not waive or release:  (i) its rights and remedies against any other person or entity who may be liable for all or part of the claims set forth in this amended proof of claim, whether an affiliate or subsidiary of the Debtor, a guarantor, an assignee or otherwise, (ii) any obligation owed to it, or any right to any security that may be determined to be held by it for its benefit or (iii) any past, present or future defaults or events of default by the Debtor or any other person or entity.

## Miscellaneous

        16.    No judgment has been rendered on this claim.

        17.    The amounts of all payments on this claim have been credited and deducted for the purpose of making this amended proof of claim.

        18.    Chase believes that this claim is not subject to any setoff or counterclaim.

        19.    Chase reserves the right to assert that all or any portion of the claim asserted herein is entitled to administrative expense priority.

        20.    All notices concerning this amended proof of claim should be sent to:

        Chase Bank USA, National Association
        201 North Walnut Street
        3 Christina Center
        Wilmington, DE 19801
        Attn:   Daniel P. Tierney

-and-

Weil, Gotshal, & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:   Gary T. Holtzer, Esq.
        Joseph Gelb, Esq.

Dated:  January  4  , 2010

By: _____
    Daniel P. Tierney, General Manager
    Chase Bank USA, National Association

*Penalty for Presenting Fraudulent Claim: Fine of up to $500,000 or imprisonment for up to 5 years, or
both.  18 U.S.C. §§ 152 and 3571.*

**<u>EXHIBIT D</u>**

**(Decision)**

*In re US Airways, Inc., et al.*, Case No. 04-13819, Docket No. 2490

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
US AIRWAYS, INC., *et al.*            )      Case No. 04-13819-SSM
                                      )      Chapter 11 (Jointly Administered)
                    Debtors           )

**MEMORANDUM OPINION**

The issue before the court is the debtor's liability for certain professional fees that

were passed on to it as part of the cure payments the debtor was required to make under

§ 1110 of the Bankruptcy Code in connection with complex aircraft financing arrangements

known as Enhanced Equipment Trust Certificates ("EETCs").  The fees in question, which

total $554,896, were assessed by EETC participants known as "liquidity providers" and

"policy providers" and were paid by the debtor under protest.  A hearing was held on June

23, 2005, at which U.S. Bank National Association ("U.S. Bank") – the entity to which the

payment was made – and the debtor were each represented by counsel.  The liquidity

provider (Morgan Stanley Capital Services, Inc.) and the policy provider (MBIA Insurance

Corp.)  whose professional fees were at issue had not been made parties to the controversy

and were not present.[1]

---

[1]  However, ABN AMRO Bank, N.V., which is the liquidity provider for the 1998 series
EETCs, was present in support of the conditional objection it filed to the cure dispute
hearing.  Although none of its claimed expenses were directly at issue, it expressed a
concern that the court's ruling not set an adverse precedent/

1

## Background

US Airways, Inc., is the seventh largest airline in the United States.  Together with its parent holding company and three affiliates,[2] it filed a voluntary chapter 11 petition in this court on September 12, 2004, and continues to operate as a debtor in possession.[3]

Over 100 of the debtor's aircraft are financed through complex arrangements known as Enhanced Equipment Trust Certificates.  Fundamentally, an EETC is a security

> ! that relies on the credit of a single corporate issuer,
> ! that is secured by aircraft as collateral,
> ! that utilizes a liquidity facility to provide up to 18 months of missed interest payments, and
> ! that utilizes structural enhancements to provide improved loan-to-value ratios for the more senior levels, or tranches, of debt securities.

Ronald Scheinberg, "Enhanced Equipment Trust Certificates in the Downturn: An Assessment for Banks," 121 Banking L.J. 108, 109 (2003).  Some of the aircraft that are the subject of the EETCs are leased to US Airways, while others are owned by US Airways but mortgaged.  U.S. Bank is the indenture trustee, pass-through trustee, or subordination agent for six different series of EETCs issued by the debtor.[4]  For the purpose of the present discussion, it suffices that US Airways has direct privity of contract only with the indenture trustee.  The rights and obligations of the liquidity provider and the policy provider are set

---

[2]  The debtors are US Airways Group, Inc., US Airways, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., and Material Services Co., Inc.

[3]  This is the company's second chapter 11 filing in approximately two years.  The previous case was filed in August 2002 and resulted in a confirmed plan of reorganization in March 2003.  The circumstances of the prior filing have no bearing, however, on the present dispute.

[4]*See* 121 Banking L.J. at 110 for a helpful diagram showing the relationship of the various participants to a typical EETC transaction.

2

forth in a separate intercreditor agreement to which the providers, the subordination agent,

and the pass-through trustee are parties, but the debtor is not.  The liquidity provider, as

noted, guarantees up to 18 months of interest payments.  The policy provider (typically an

insurance company) guarantees a portion of the principal payments.  Under the intercreditor

agreement, the fees and expenses of the liquidity provider and the policy provider are paid

first from payments received by the indenture trustee before funds are distributed to the

pass-through trustees for distribution to the holders of the certificates.  Legal fees incurred

by the liquidity provider and the policy provider are billed to the indenture trustee, who in

turn includes them in the payment due from the debtor.

The present dispute arises because the debtors filed with the court unilateral

agreements under § 1110(a) of the Bankruptcy Code agreeing to pay the amounts due on

certain aircraft leases and mortgages in order to retain possession of the aircraft.[5]  In the

agreements, the debtors stated the amounts they believed necessary to cure defaults.  U.S.

Bank filed responses disputing the cure amounts due with respect to 37 Boeing aircraft and

106 Airbus aircraft (95 of which were financed through six series of EETCs).  The debtors

paid the full amounts demanded by U.S. Bank under protest in order to prevent certain

certificate holders (the Class C certificates) from being shorted, which would have

jeopardized important global settlements the debtors has previously reached with two

holders of those certificates, Airbus Industries and General Electric Commercial Aviation

---

[5]  Under § 1110 of the Bankruptcy Code, the automatic stay with respect to enforcement of a
security interest or lease in an aircraft terminates 60 days after a chapter 11 petition is filed
unless, prior to that time, the trustee or debtor in possession "agrees to perform all
obligations under of the debtor" under the security agreement or lease and cures any default.

3

Services.  The total amount paid by the debtor under protest was approximately $2.3 million.

By the time of the hearing, however, the dispute had been narrowed to $87,345.49 in

expenses that had been billed by Morgan Stanley as the liquidity provider for the 2000-3

series of EETCs, and $467,551.14 in expenses that had been billed by MBIA Insurance

Corporation as the policy provider for the 2001-1 series of EETCs.[6]  The bulk of the

disputed expenses consist of legal fees charged by Morgan Stanley's law firm, Cadwalader,

Wickersham & Taft, LLP, and by MBIA's law firm, Latham & Watkins, LLP, and its

financial adviser, Rothschild.  The Cadwalader invoices were attached by Morgan Stanley to

its payment request but for each month contain only the bare statement "For Professional

Services Rendered," with no description of the work performed, hours expended, or hourly

rate.  MBIA has not provided copies of Latham & Watkins's invoices but did provide a

summary showing the hours billed and billing rate of each attorney and paralegal but no

description of the work performed.  The summary also shows the monthly amount billed by

Rothschild, but with no description of the work performed.

## Discussion

With respect to the payments made under protest, the debtors seek a determination

that because Morgan Stanley and MBIA have failed to demonstrate the reasonableness of

the legal fees passed through to the debtors, such fees should be disallowed, and U.S. Bank

should be required to refund them.  More broadly, the debtors seek a ruling that the legal

---

[6]  Although the debtor's summary chart (Exhibit C) showing the disputed amounts appears
to identify the MBIA expense as pertaining only to the 2001-1 series EETCs, the summary
prepared by MBIA (Exhibit J-4) appears to allocate the Latham & Watkins and Rothschild
fees across four series of EETCs (2000-1, 2000-2, 2000-3, and 2001-1)

fees of the EETC liquidity providers and policy providers are subject to review by the court

and a mechanism by which such fees can be challenged prior to payment.

## A.

That professional fees of creditors paid from a bankruptcy estate must be reasonable

is a principle so firmly fixed as to hardly require citation of authority.   § 506(b), Bankruptcy

Code (oversecured creditor may recover "reasonable" fees provided for under agreement); *In*

*re Valley Historic L.P.*, 307 B.R. 508 (Bankr. E.D. Va. 2003) (oversecured creditor's request

for fees must be evaluated for reasonableness); *In re Continental Airlines, Inc.*, 138 B.R. 439,

442 (Bankr. D. Del. 1992) ("Under section 1110 of the Bankruptcy Code, amounts required

to be paid by a debtor to lessors of aircraft to cure prepetition defaults under the leases

include reasonable attorney's fees.") (dicta), *rev'd on other grounds*, 150 B.R. 334 (D. Del.

1993).[7]  U.S. Bank does not contend otherwise.[8]  Its position, rather, is that as subordination

agent it has no discretion with respect to distribution of payments it receives from the debtor

and no duty or power to police the legal fees of the liquidity provider or policy provider or

---

[7]  The debtor cites the unreported decision in *In re Midway Airlines, Inc.*, 1991 WL 277767
(Bankr. N.D. Ill., Dec. 17, 1991) as additional authority that legal expenses included in
§ 1110 cure payments must be reasonable.  In that case, however, the fees reviewed by the
court were not cure payments under the original leases but rather arose under standstill and
forebearance agreements that the debtor airline and the aircraft lessors had entered into after
the debtor failed to cure existing payment defaults.  It was the provision of the standstill
agreement allowing reimbursement to the lessors of "approved" attorney's fees that
provided the immediate underpinning for the court's review of the challenged fees.  *Id.* at *6.

[8]  *See*, e.g., § 3.7(i) of the Intercreditor Agreement for the series 2001-1 EETCs (Exhibit F at
p. 52), which gives MBIA as policy provider a right to reimbursement for, among other
expenses, "any and all charges, fees, costs and expenses and disbursements that the Policy
Provider may *reasonably* pay or incur, including *reasonable* attorneys' and accountants' fees
and expenses ... in connection with the enforcement, defense or preservation of any rights in
respect of any of the Operative Agreements[.]" (emphasis added).

5

go behind their certifications as to the amount of their expenses.[9]  This position was echoed

by ABN AMRO (even though none of its expenses were at issue in the hearing).  Stripped to

its essentials, ABN AMRO's argument – which presumably would have mirrored Morgan

Stanley's or MBIA's, had they been present – is that because the debtor is not a party to the

intercreditor agreement between ABN AMRO and U.S. Bank, the debtor has no right to

challenge or adjust the amount of legal fees U.S. Bank is required to pay ABN AMRO under

the terms of the agreement.

The problem, of course, is that if the court were to accept the arguments both of U.S.

Bank and pf ABN AMRO (as surrogate for Morgan Stanley and MBIA), the legal fees

imposed on the bankruptcy estate would be rendered effectively unreviewable, no matter

how unreasonable they were.  The court, needless to say, is not prepared to go that far.  The

court does agree with U.S. Bank, however, that U.S. Bank is not the appropriate party from

which to seek a refund.  As the court reads the applicable documents, U.S. Bank is simply a

conduit of the contracting parties for distributing the payments made by the debtor and has

no discretion to refuse payment of the expenses certified to it by the liquidity and policy

providers prior to making payment to the pass-through trustees.  For that reason, the court

declines to order U.S. Bank to refund the challenged fees.

---

[9]  *See, e.g.,* § 3.1(d) of the Intercreditor Agreement for the Series 2001-1 EETCs (Exhibit F
at p. 34), "[T]he Subordination Agent shall be fully protected in relying on any of the
information set forth in a Written Notice provided by any Trustee, any Liquidity Provider or
the Policy Provider ... and shall have no independent obligation to verify, calculate or
recalculate any amount set forth in any Written Notice[.]"

## B.

This conclusion does not, however, leave the debtor without a remedy. Notwithstanding the lack of contractual privity between the debtor and the liquidity and policy providers, there is no question that the legal and other professional fees incurred by the providers were never intended or expected to be borne by them but rather by the debtor. That reality is sufficient, in the court's view, to give the debtor standing to challenge them. The difficulty here, however, is that the providers have not been made parties to the controversy.   Without their joinder or, alternatively (and perhaps more appropriately), the commencement of a separate proceeding against them to determine the reasonableness of the fees, the court cannot, consistent with due process, make a ruling that would disallow such fees or require their disgorgement.  Accordingly, although the court declines at this time to grant the relief sought by the debtors, such ruling is without prejudice to the debtor's right to examine the liquidity and policy providers and their professionals under Rule 2004 to determine if the fees charged were reasonable and, if not, to bring an action for the recovery of amounts collected in excess of what was reasonable.

A separate order will be entered consistent with this opinion.


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

Copies to:

Brian P. Leitch, Esquire
Arnold & Porter LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Counsel for the debtor in possession

Lawrence E. Rifken, Esquire
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102-4215
Local counsel for the debtor in possession

Malcolm Mitchell, Esquire
Vorys, Sater, Seymour & Pease, L.L.P.
277 South Washington Street, Suite 310
Alexandria, VA 22314
Local counsel for the Official Committee of Unsecured Creditors

Julie A. Manning, Esquire
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Counsel for U.S. Bank National Association

Stephen E. Leach, Esquire
Leach Travell, P.C.
1921 Gallows Road, Suite 425
Vienna, VA 22182
Local Counsel for U.S. Bank National Association

Craig E. Reimer, Esquire
Mayer, Brown, Rowe & Maw, LLP
71 South Wacker Drive
Chicago, IL 60606
Counsel for ABN AMRO Bank, N.V.

Bradford F. Englander, Esquire
Linowes and Blocher, LLP
1010 Wayne Ave., Tenth Floor
Silver Spring, MD 20910
Local counsel for ABN AMRO Bank, N.V.

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314