IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT COURT OF VIRGINIA
RICHMOND DIVISION

RICHMOND DIVISION
F I L E D
JUN 1 3 2012
CLERK
US BANKRUPTCY COURT

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CIRCUIT CITY STORES, INC., et al. | : | Case No. 08-35653-KRH |
|  | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Related Doc. No. 11851 |
|  | : |  |

## DECLARATION OF PAUL BREGMAN

1.      I am the manager of Condan Enterprises, LLC ("Condan"), a New York limited liability company and the former landlord of Circuit City Stores, Inc., *et al.*, the debtors herein (collectively, "Circuit City") with respect to the Circuit City store that was previously located at the Smith Grove Shopping Center, Lake Grove, New York (the "Premises"), pursuant to a lease (the "Lease") by and between Circuit City and Condan.

2.      I submit this declaration in response to the objection (the "Objection") interposed by Circuit City [ECF Doc. # 11851] to Claim No. 3252, the claim of Condan (the "Condan Claim") in the amount of $1,340,794.53, resulting from the rejection of the Lease. I am fully familiar with the facts surrounding the Lease and the attempts of Condan to relet the Premises.

3.      Circuit City rejected the Lease as of December 31, 2008 (the "Rejection Date"). Immediately following the Rejection Date, Condan retained GVA Williams to relet the Premises.  A copy of an Exclusive Listing Agreement between Condan and GVA Williams, dated January 28, 2009, which expired January 1, 2010, is annexed hereto as Exhibit A.

4.     Despite GVA Williams efforts, and my own efforts on behalf of Condan, Condan could not secure a new tenant for the Premises during 2009.

5.     As a result, during early 2010, Condan terminated its relationship with GVA Williams and retained Ripco Real Estate Corp. ("Ripco"). Ripco is one of the largest real estate brokers on Long Island and works with the majority of "big box" tenants on Long Island.   A copy of Exclusive Listing Agreement between Condan and Ripco, dated as of February 1, 2010, is annexed hereto as Exhibit B.

6.     Ripco was also unsuccessful in securing a tenant for the Premises through January, 2011. However, during February, 2011, with the assistance of Ripco, Condan commenced negotiations with the supermarket chain Aldi's Inc. to lease a portion of the Premises. On July 26, 2011, effective April 5, 2012, Aldi's entered into a lease with Condan for 19,000 of the 37,000 square feet that was previously subject to the Lease.

7.     As of this date, Condan still has approximately 18,000 square feet of the Premises available with no prospective tenant. Ripco is still looking to secure prospective tenants for this remaining space.

8.     As made clear from the aforementioned, since the Rejection Date, Condan has continually sought to mitigate the damage caused by the rejection by Circuit City of the Lease.

9.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 6, 2012

_____/s/ Paul Bregman_____
PAUL BREGMAN

## EXCLUSIVE LEASING LISTING AGREEMENT

1.  In consideration of the listing for lease of the real property hereinafter described as "Smith Grove Shopping Center" Route 347 & Alexander Ave in Smithtown, NY (the "Property") by Williams Real Estate of Connecticut LLC (GVA Williams), a Connecticut limited liability company ("Broker"), and Broker's agreement to use its best efforts to effect a lease or leases of same, the undersigned Condan Enterprises LLC ("Owner") hereby grants to Broker the exclusive right to negotiate a lease or leases of the Property for a period commencing on January 2**Ω**, 2009 and ending midnight July 2**Ω**, 2009, unless sooner terminated as herein provided (the "Term"). The lease(s) shall be submitted to prospective tenants on the following terms: Fixed base rent: $30.00 per square foot net of CAM and real estate taxes and other terms acceptable to Owner. Reference herein to the Building shall be understood to include portions of the Building.

2.  NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER.

3.  Broker shall use its best efforts to lease the Property to tenants acceptable to Owner upon terms acceptable to Owner in its sole discretion. Broker shall perform its responsibilities hereunder in accordance with the highest standards of care, diligence and loyalty in the industry. Broker shall provide Owner with monthly leasing activity reports in the form specified by Owner and with weekly oral leasing activity reports or, in each instance, at such other times as Owner may otherwise reasonably require from time to time. Broker shall provide Owner market data and comparative lease information on a regular basis and upon request by Owner. Broker shall attend leasing meetings on frequency determined by Owner.

4.  Broker agrees to refer in writing to Owner all inquiries it receives relating to the Property and to conduct all negotiations together with Owner. Broker will present to Owner all bona fide offers and conduct all negotiations under Owner supervision, direction, and control, with such participation by Owner and Owner counsel as Owner directs. Broker will provide Owner with appropriate analysis and comparison of each offer and counteroffer and recommend to Owner which offer to accept; but all final business and legal decisions shall be made solely by Owner; and all binding agreements shall be executed and delivered solely by Owner

5.  Owner shall be free to reject any proposed transaction for any reason; and, if Owner does not effect a lease of any portion of the Building during the term hereof (or any extension), Owner shall owe Broker no compensation for Broker's services hereunder.

6.  Owner agrees to pay Broker a leasing commission in accordance with Broker's Schedule of Lease Commissions and payment terms (the "Schedule A"), a copy of which is executed by Owner, attached hereto and hereby made a part hereof. Subject to the terms of the Schedule A, a commission shall be earned for services rendered if, during the Term: (a) the Property is leased to a tenant. Anything in this Agreement to the contrary notwithstanding, no commission shall be earned by or due to Broker in the event Owner enters into a lease with (i) any of the entities listed on Schedule B attached, or (ii) any present or future tenant, subtenant or occupant of the Property. Broker is authorized and shall use its best efforts, to solicit the cooperation of other real estate brokers and to work with them on a cooperating basis for the lease of the Property, regardless of whether such brokers represent prospective tenants or act as Brokers subagents. In the event that the tenant is procured by another licensed real estate broker working with or through Broker, Owner shall pay to Broker as provided for herein, out of which Broker shall compensate such cooperating broker pursuant to a separate agreement between Broker and such cooperating broker.

7.  Owner further agrees to pay Broker a commission in accordance with the Schedule A, if, within, six months after the expiration or termination of the Term the Building is leased to, or negotiations continue, resume or commence and thereafter continue leading to the execution of a lease contract with any person or continue, resume or commence and thereafter continue leading to the execution of a lease contract with any person or entity (including his/her/its successors, assigns or affiliates) with whom Broker has negotiated directly prior to the expiration or termination of the Term. Owner, in its sole discretion may authorize Broker to continue negotiation with such persons or entities and Broker agree to perform its duties as if this Agreement had not been terminated. Broker agrees to submit a list of such persons or entities to Owner with whom Broker has negotiated not later than ten (10) calendar days following the expiration or termination of the Term, provided, however, that if a written offer has been submitted to Owner it shall not be necessary to include the offeror's name on the list.

8.  In the event (i) Owner ceases or withdraws from negotiations at any stage and refuses to execute and deliver a lease for any reason (or for no reason), (ii) a lease fails to be executed, delivered, received and accepted by Owner and tenant (iii) the term of the lease fails to commence or (iv) the tenant fails to take possession of the premises, whether any such failure is by reason of any default or act of omission or commission, intentional, willful or otherwise, by either of the proposed parties to the Lease, or by reason of any lack of any approval or consent that may be deemed necessary, appropriate or advisable by either party or by any of their successors or assigns, then and in any such event the Broker will waive, or does hereby waive, all claims and demands, in law or in equity, for any commission, compensation or other reimbursement whatsoever including damages of any kind whatsoever in connection with the Lease and all negotiations prior thereto.

9.  Owner and Broker agree that the Building will be offered in compliance with all applicable federal, state and local anti-discrimination laws and regulation.

10.    Owner agrees to cooperate with Broker in effecting a lease of the Property and immediately to refer to Broker all inquiries of anyone interested in the Property. All negotiations are to be through Broker. Broker is exclusively authorized to advertise the Property and exclusively authorized to place a sign(s) on the Property if, in Broker's opinion such would facilitate the leasing of the Property. Owner represents that it is the owner of the Property. Owner and its counsel will be responsible for determining the legal sufficiency of a /lease contract and any other documents relating to any transaction contemplated by this Agreement.

11.    Owner acknowledges that Broker is an active brokerage firm and that in some cases it may represent prospective tenants provided however in no event may Adam Zeiber or any member of his team represent any prospective tenant with who Owner may be negotiating a lease without Owner's consent which may be *withheld in Owner's sole discretion. Owner desires that the Property be presented to such persons or* entities, and consents to the dual representation created thereby. Broker shall not disclose the confidential information of one principal to the other.

12.    Broker (i) warrants and represents that it is licensed and authorized to transact business as a real estate broker in the State of New York; and (ii) agrees to defend, indemnify and hold the Owner harmless from any loss, cost, liability or expense, including reasonable attorney's fees and disbursements, in connection with the claim or claims or any other broker or agent including, without limitation, any cooperating broker pursuant to paragraph 6 above, and arising out of any acts of agreements of Broker with respect to the Lease, the Premises, the subject matter of the Lease or any negotiations thereto, provided that the Broker's liability shall not exceed the total sums paid or payable hereunder. In the event Owner in good faith pays a commission to another broker in connection with the Lease, Broker hereby waives its Commission to the extent of such payment. If at the time a commission is due and payable to Broker, another broker is, or *may be, claiming a commission with respect to the Lease,* Owner may withhold any payments due, and may deposit same in court, whereupon Owner shall be released of all liability for commissions, compensation or other reimbursement due broker to the extent of such deposit.

13.    The Broker shall maintain and keep on file with Owner evidence of comprehensive public liability insurance in an amount not less than $1,000,000 with a combined single limit for Bodily Injury, Personal Injury, and Property Damage., including errors and omissions insurance, in such form and amount as may be approved by Owner from time to time. The certificates shall contain a provision that coverage afforded under the policies will not be canceled or modified until at least thirty (30) day's prior written notice has

Broker ─── been given to Owner. XXXXXXXXX shall continue to maintain and furnish Owner with current Certificates of Insurance during the term of the Agreement. The insurance policies required by the Agreement shall name, Owner as additional insured under the policy.

14.    *Any claims asserted by Broker arising out of or relating to this Agreement will be limited to a claim against* Owner. Broker hereby agrees that in no event shall any claim be asserted against any employee, agent, officer, director, partner, principal or shareholder of Owner personally in connection with the negotiation and performance of this Agreement. The term, Owner, shall include all of the principals, agents, partners, shareholders, officers, directors and employees of Owner. The term, Broker, shall include all of the principals, agents, partners, shareholders, officers, directors, employees and co-brokers of Broker. Broker represents that the party executing this Agreement has authority to bind the entity designated. The term Tenant shall include the party first named herein, and any parent, affiliate, subsidiary, or other companies under substantial common ownership or control.

15.    This Agreement shall not be assigned by the Broker without the prior written consent of Owner. Owner may assign its rights and obligations to any successor owner/ tenant and upon such assignment shall be relieved of any liability hereunder after the effective date of such assignment.

16.    Each signatory to this Agreement represents and warrants that he/she has full authority to sign this Agreement on behalf of the party for whom (s) he signs and that this Agreement binds such party.

17.    This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written. No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by both Owner and Broker. This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties.

18.    Subject to the provisions of paragraph 7 hereof, Owner may terminate this Agreement upon thirty (30) days written for any reason or for no reason.

19.    *This contract shall be interpreted and enforced in accordance with the laws of the State of New York.*

20.    The parties hereto agree to comply with all applicable federal state and local laws, regulations, codes ordinances and administrative orders having jurisdiction over the parties, Building or the subject matter of this Agreement including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investment in Real Building Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and The Americans With Disabilities Act.

The undersigned Owner hereby acknowledges receipt of a copy of this Agreement.

APPROVED this 28th _____ day of January 2009

Broker: Williams Real Estate of Connecticut LLC

By: _____
     Cory R. Gubner

Title: President & CEO

Address: 1055 Washington Blvd.
           Stamford, CT 06901
Telephone: (203) 324-0800

Owner:    Condan Enterprises LLC

By: _____
     Paul A. Bregman

Title: Manager _____

Address: 255 Executive Drive, Suite 302
           Plainview, NY 11803
Telephone: (516) 349-1091

SCHEDULE A
LEASE COMMISSIONS

For the building at: "Smith Grove Shopping Center" Route 347 & Alexander Avenue in Smithtown, NY

**NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER**

LEASES

Commissions shall be due upon lease execution and payable by Owner in accordance with the following rates and terms:

IMPROVED PROPERTY

5% of the fixed base rent for years 1-5 for any lease below 10,000 sf,
4% of the fixed base rent for years 1-5 for any lease over 10,000 sf.
2.5% of the fixed base rent for years 6-10.
No commission shall be paid for any term in excess of ten (10) years.

The above rate is subject to the following additional provision:

*Expansion or Additional Space during the term of the lease:*
On an expansion or leasing of additional space, Owner shall pay a leasing commission in accordance with the provisions of this Schedule, however in no event shall a commission be paid for any term beyond the initial ten (10) year term.

PAYMENT TERMS

Anything in this Lease to the contrary notwithstanding, a commission shall be earned by Broker in connection with a lease when the following conditions have been met: (i) the Lease is executed and delivered by Owner and Tenant wherein Tenant warrants that Broker is the sole broker with whom Tenant has negotiated; (ii) any rights of the Owner or Tenant to terminate and cancel the Lease before the commencement of the term have expired without being exercised, (iii) Tenant has taken possession of the Premises (iv) Tenant has commenced regular monthly payments of rent (not taking into account advance rentals paid, if any, upon signing or prior to possession); (v) Tenant has legally opened the Premises; (vi) and Tenant is not in default under the terms and conditions of the Lease.

Commissions shall be payable as follows:

For stores of less than 10,000 sf:
Payment #1 - 1/2 of the Commission due for the Primary Term upon satisfaction of Paragraph 2 (i) – (vi):

Payment #2 - 1/2 of the Commission four (4) months following the Payment #1 as set forth above.

*For stores of more than 10,000 – 20,000 sf:*
Payment #1 - 1/3 of the Commission due for the Primary Term upon satisfaction of Paragraph 2 (i) – (vi):

Payment #2 - 1/3 of the Commission three (3) months following the Payment #1 as set forth above;

Payment #3 - 1/3 of the Commission three (3) months following the Payment #2 as set forth above;

For stores of more than ~~10,000~~ – 20,000 sf: AND ABOVE,

Payment #1 - 1/4 of the Commission due for the Primary Term upon satisfaction of Paragraph 2 (i) – (vi):

Payment #2 - 1/4 of the Commission three (3) months following the Payment #1 as set forth above:

Payment #3 - 1/4 of the Commission three (3) months following the Payment #2 as set forth above:

Payment #4 - 1/4 of the Commission three (3) months following the Payment #3 as set forth above.

Anything in this Agreement to the contrary notwithstanding, in the event Owner enters into a lease which contains a rent concession of ninety (90) days or more beginning from the commencement date of the lease and subject to the satisfaction of all other conditions set forth in (i) – (iii) and (v) above, Owner agrees to pay Broker Payment #1 in accordance with the Payment Terms herein, it being understood that if tenant fails to satisfy condition (iv) above

following the rent concession period and tenant is in default of the lease, Owner shall have no obligation to pay the balance of the commission until tenant satisfies all conditions (i) – (v)

In the event Owner enters into a lease which contains a right to tenant to terminate the lease on or before the end of the fifth (5th) lease year ("Kickout Option"), then the Owner agrees to pay sixty-five percent (65%) of the Commission for the period covering the term preceding the effective date of the Kickout Option. By way of example, if Owner enters into a ten (10) year term and the lease provides that tenant may Kickout during any period before the end of the fifth (5th) lease year, Owner shall pay sixty-five percent (65%) of the commission due for the ten year term based on the Payment Terms set forth herein and the balance shall be paid within thirty (30) days following the last date that the tenant is permitted to terminate the lease pursuant to the Kickout Option. If the tenant elects to exercise its Kickout Option, then Broker waives all rights to the any further commissions for such lease. In the event the lease provides that if tenant exercises its Kickout Option it shall pay Owner the unamortized Broker commissions, then and in such event, Owner agrees to pay Broker the full commission for such lease subject to the Payment Terms herein.

APPROVED this _____28th_____ day of January 2009

Broker: Williams Real Estate of Connecticut LLC

By: _____
    Cory R. Gubner

Title: President & CEO

Address: 1055 Washington Blvd.
         Stamford, CT 06901
Telephone: (203) 324-0800

Owner:   Condan Enterprises LLC

By: _____
    Paul A. Bregman

Title: _Manager_____

Address: 255 Executive Drive, Suite 302
         Plainview, NY 11803
Telephone: (516) 349-1091

GVA Williams Exclusive agreement - Smith Grove Shopping Center_rv_2009-01-23_clean

SCHEDULE A
OWNER'S EXCLUSIVE TENANT'S

1.    Syms
2.    Michaels
3.    Violets Blue
4.    Any tenant whose restaurant/store is operated by Jim DeVilio (current owner & operator of El Dorado
       Restaurant (Port Jefferson Station)
5.    Five Below
6.    Harbor Freight
7.    Gold Class Cinema
8.    Hand and Stone Spa
9.    Robeks Smoothies
10.   Tropical Smoothies
11.   Hurricane Grill
12.   Sally Beauty

## EXCLUSIVE LISTING AGREEMENT

1.  In consideration of the listing for lease of the real property hereinafter described as "Smith Grove Shopping Center" Rt. 347 and Nesconset Highway in Lake Grove, New York 11755 (the "Property") by Ripco Real Estate Corp., ("Broker"), and Broker's agreement to use its best efforts to effect a lease or leases of same, the undersigned Condan Enterprises LLC ("Owner") hereby grants to Broker the exclusive right to lease the stores in the Property under the terms and conditions set forth herein for a period commencing on February 1, 2010 and ending midnight August 1, 2010, unless sooner terminated as herein provided (the "Term").

2.  NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. COMPENSATION IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER.

3.  Broker shall use commercially reasonable efforts to lease the Property to tenants acceptable to Owner upon terms and conditions acceptable to Owner in its sole discretion. Broker shall keep Owner informed of leasing activity and shall provide upon request of Owner but not less than on a monthly basis a leasing activity report. Upon request of Owner, Broker shall attend leasing meetings with Owner.

4.  Broker agrees to refer in writing to Owner all inquiries it receives relating to the Property and to conduct all negotiations together with Owner. Broker will present to Owner all bona fide offers and conduct all negotiations under Owner supervision, direction, and control, with such participation by Owner and Owner counsel as Owner directs. Broker acknowledges and agrees that Broker shall have no authority whatsoever to bind Owner in any manner. Broker will provide Owner with appropriate analysis and comparison of each offer and counteroffer and recommend to Owner which offer to accept; but all final business and legal decisions shall be made solely by Owner; and all binding agreements shall be executed and delivered solely by Owner

5.  Owner agrees to pay Broker a leasing commission in accordance with Schedule A annexed hereto and made part hereof ("Commission"). A Commission shall be earned by Broker in connection with a lease when all of the following conditions have been met: (i) a Lease is executed and delivered by Owner and Tenant wherein Tenant warrants that Broker or co-broker (as defined hereafter) is/are the sole broker(s) with whom Tenant has negotiated; (ii) any rights of the Owner or Tenant to terminate and cancel the Lease before the commencement of the term have expired without being exercised; (iii) Tenant has taken possession of the Premises; (iv) Tenant has commenced regular monthly payments of fixed minimum rent (not taking into account advance rentals paid, if any, upon signing or prior to possession); (v) Tenant is not in monetary default under any of the terms and conditions of the Lease. Anything in this Agreement to the contrary notwithstanding, no Commission shall be earned by or due Broker in the event Owner enters into a lease with any of the entities listed on Schedule B annexed hereto and made part hereof or for any lease, extension or renewal with any present tenant, subtenant or occupant of the Property or affiliates thereof (collectively "Excluded Tenant") unless Broker at the specific request of Owner is actively involved in the lease negotiations with any Excluded Tenants. In the event Owner has entered into a separate brokerage agreement with another broker for an Excluded Tenant, Owner and Broker shall endeavor to work out a mutually agreeable commission to compensate Broker for participating in procuring Excluded Tenant, it being understood that the Commission rates herein this Agreement shall not apply to Excluded Tenants unless otherwise expressly set forth in writing between the parties. Owner may cease or withdraw from negotiations at any time and refuse to execute and deliver a lease for any reason (or for no reason) and in any such event the

1

CDN - RIPCO Exclusive Listing Agt - Smith Grove SC_2010-03-03_clean.doc

Broker agrees to waive all claims and demands, in law or in equity, for any Commission or other reimbursement whatsoever including damages of any kind whatsoever in connection with the Lease and all negotiations prior thereto.

6.    Broker is authorized and shall use its best efforts, to solicit the cooperation of other real estate brokers and to work with them on a cooperating basis for the lease of the Property, regardless of whether such brokers represent prospective tenants or act as Brokers subagents. In the event that the tenant is procured by another licensed real estate broker working with or through Broker (the "co-broker"), Owner shall pay to Broker as provided for herein, out of which Broker shall compensate such cooperating broker pursuant to a separate agreement between Broker and such cooperating broker. Broker agrees to indemnify and hold Owner harmless from the claim or claims of any cooperating broker with whom Broker has dealt.

7.    Owner further agrees to pay Broker a Commission in accordance with the Schedule A, if within six (6) months after the expiration or termination of this Agreement negotiations continue, resume or commence and thereafter continue leading to the execution of a lease between Owner and any person or entity (including his/her/its successors, assigns or affiliates) with whom Broker has negotiated directly prior to the expiration or termination of this Agreement (and the conditions of Paragraph 5 above hereof have otherwise been satisfied.) Notwithstanding the foregoing, in no event shall Broker be entitled to any Commission or other compensation for any lease which is not executed within one (1) year after the expiration or termination of this Agreement. Owner, in its sole discretion may authorize Broker to continue negotiation with such persons or entities and Broker agree to perform its duties as if this Agreement had not been terminated. Broker agrees to submit a list of such persons or entities to Owner with whom Broker has negotiated not later than ten (10) calendar days following the expiration or termination of this Agreement provided, however, that if a written offer has been submitted to Owner it shall not be necessary to include the prospective tenant's name on the list.

8.    Owner and Broker agree that the Property will be offered in compliance with all applicable federal, state and local anti-discrimination laws and regulation.

9.    Owner represents that it is the fee owner of the Property. Owner and its counsel will be responsible for determining the legal sufficiency of a lease with any prospective tenant and any other documents relating to any transaction contemplated by this Agreement.

10.    Owner agrees to reasonably cooperate with Broker in effectuating a lease with any prospective tenant of the Property and shall promptly refer all inquiries to Broker. Broker is exclusively authorized to advertise the Property at Broker's sole cost and expense and to place a sign(s) on the Property, subject to Owner's consent as to the size and location of such sign(s), if in Broker's opinion such sign(s) would facilitate the leasing of the Property. Owner may elect to negotiate through Broker. Anything to the contrary notwithstanding, if Owner may elect to negotiate directly with any tenant, however such negotiation shall not relieve Broker from participating in negotiations with Owner and Tenant at Owner's discretion, nor shall such direct negotiation serve to waive any requirement to pay a Commission under the terms set forth under this Agreement.

11.    Owner acknowledges that Broker is an active brokerage firm and in some cases Broker may represent prospective tenants for other properties. Broker agrees to promptly notify Owner if Broker is exclusively representing any other owner of a shopping center within a one (1) mile radius of the Property (the "Radius Area").

2

12.     Broker warrants and represents that it is licensed and authorized to transact business as a real estate broker in the State of New York and agrees to defend, indemnify and hold the Owner harmless from any loss, cost, liability or expense, including reasonable attorney's fees and disbursements, in connection with the claim or claims or any other broker or agent including, without limitation, any cooperating broker pursuant to paragraph 6 above, and arising out of any acts of agreements of Broker with respect to the Lease, the Premises, the subject matter of the Lease or any negotiations thereto, provided that the Broker's liability shall not exceed the total sums paid or payable hereunder.

13.     *The Broker shall maintain and keep on file with Owner evidence of comprehensive public liability insurance in an amount not less than $1,000,000 per occurrence and $2,000,000 aggregate for Bodily Injury, Personal Injury, Property Damage and Professional Liability coverage in an amount not less than $1,000,000 per occurrence and $2,000,000 aggregate, in such form and amount as may be reasonably approved by Owner.* Broker shall maintain Worker's Compensation insurance or similar insurance to the extent required by law. The certificates shall contain a provision that coverage afforded under the policies will not be canceled or modified until at least thirty (30) day's prior written notice has been given to Owner. Broker shall continue to maintain and furnish Owner with current Certificates of Insurance during the term of the Agreement.

14.     Any claims asserted by Broker arising out of or relating to this Agreement will be limited to a claim against Owner. Broker hereby agrees that in no event shall any claim be asserted against any employee, agent, officer, director, partner, principal or shareholder of Owner personally in connection with the negotiation and performance of this Agreement. The term "Owner" shall include all of the principals, agents, partners, shareholders, officers, directors and employees of Owner. The term "Broker" shall include all of the principals, agents, partners, shareholders, officers, directors, employees and co-brokers of Broker. Broker represents that the party executing this Agreement has authority to bind the entity designated. The term "Tenant" shall include the party first named herein, and any parent, affiliate, subsidiary, or other companies under substantial common ownership or control. In the event Landlord defaults in the payments herein agreed to and Broker commences an action or proceeding to enforce this Agreement, then and in that event the successful party therein shall be entitled to reasonable attorney's fees and costs and disbursements of such action or proceeding. If the Broker is successful it shall be entitled to interest at the rate of Twelve (12%) percent per annum on the unpaid balance of the Commission until paid in full.

15.     *All notices and communications under this Agreement shall be in writing and shall be deemed to be properly given when delivered personally or sent by certified mail, return receipt requested or by a nationally recognized delivery service (with proof of receipt available), to Broker at the office of Broker or to Owner at the office of Owner, or to such other address as either party may specify in writing to the other.*

16.     This Agreement shall not be assigned by the Broker without the prior written consent of Owner. Owner may assign its rights and obligations to any successor owner/ tenant and upon such assignment shall be relieved of any liability hereunder after the effective date of such assignment.

17.     *Each signatory to this Agreement represents and warrants that he/she has full authority to sign this Agreement on behalf of the party for whom (s)he signs and that this Agreement binds such party.*

3

18.    This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, negotiations and agreements, whether oral or written.  No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by both Owner and Broker.  This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties.

19.    Subject to the provisions of Paragraph 7 above, Owner may terminate this Agreement upon thirty (30) days written notice if (i) Broker fails to comply with Paragraphs 12 and 13 above following ten (10) days' notice to Broker; or (ii) Broker notifies Owner that Broker is exclusively representing another shopping center within the Radius Area; or (iii) Owner reasonably believes that Broker has failed to provide the services as set forth in this Agreement .

20.    This Agreement shall be interpreted and enforced in accordance with the laws of the State of New York.

21.    The parties hereto agree to comply with all applicable federal state and local laws, regulations, codes ordinances and administrative orders having jurisdiction over the parties, Building or the subject matter of this Agreement including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investment in Real Building Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and The Americans With Disabilities Act.

Agreed to this _8th_ day of ___March___, 2010

BROKER                                              OWNER

Ripco Real Estate Corp.                             Condan Enterprises LLC
Broker:                                             Owner

By _____                        By _____
                                                    Paul A. Brennan

Title _____                       Manager
                                                    Title
_3/8/10_____                                 _3/11/10_____
Date                                                Date

4

## SCHEDULE A
## LEASE COMMISSIONS

For the building at: "Smith Grove Shopping Center" Rt. 347 and Nesconset Highway, Lake Grove, New York 11755

**NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER**

**LEASES**

Commissions shall be due upon lease execution and payable by Owner in accordance with the following rates and terms:

**IMPROVED PROPERTY**

A) Commission Rates:

5% of the fixed minimum rent for lease years 1-5 for any lease containing less than 10,000 sf,
4% of the fixed minimum rent for lease years 1-5 for any lease containing 10,000 - 20,000 sf,
3.5% of the fixed minimum rent for lease years 1-5 for any lease containing more than 20,000 sf,
3% of the fixed minimum rent for lease years 6-15.

B) For any lease containing 10,000 sf or more, in the event there is a Co-Broker, the Commission percentage set forth above shall be increased by one-half percent (1/2%). In addition, subject to paragraph C below, Landlord shall pay a 3% Commission on all leases in excess of 10,000 sf for any renewal option.

C) Anything to the contrary notwithstanding, in no event shall any Commission be due Broker for any lease for any term in excess of fifteen (15) years, inclusive of any renewal options.

**PAYMENT TERMS**

Commissions shall be payable as follows:
A)      For stores containing 10,000 sf or less:
1.      Payment #1 - 1/2 of the Commission shall be paid within thirty (30) days following the satisfaction of the conditions in Paragraph 5 above;

2.      Payment #2 - 1/2 of the Commission four (4) months following the Payment #1 as set forth above.

B)      For stores containing more than 10,000 sf:
1.      Payment #1 - 1/3 of the Commission shall be paid within thirty (30) days following the satisfaction of Paragraph 5 above;

2.      Payment #2 - 1/3 of the Commission three (3) months following the Payment #1 as set forth above;

3.      Payment #3 - 1/3 of the Commission three (3) months following the Payment #2 as set forth above;

5

C) The Commission is subject to the following additional provisions:

1.    In the event any tenant for whom Broker has earned a Commission under this Agreement leases additional space in the Property within five (5) years from the commencement of the original lease with such tenant, Owner agrees to pay a Commission for such additional space in accordance with the provisions of this Schedule. In no event shall a Commission for any additional space be paid for any term in excess of ten (10) years.

2.    In the event Owner enters into a lease which contains a right to tenant to terminate the lease on or before the end of the fifth (5th) lease year ("Kickout Option"), then the Owner agrees to pay sixty-five percent (65%) of the Commission for the period covering the term preceding the effective date of the Kickout Option. By way of example, if Owner enters into a ten (10) year term and the lease provides that tenant may Kickout during any period before the end of the fifth (5th) lease year, Owner shall pay sixty-five percent (65%) of the Commission due for the ten year term based on the Payment Terms set forth herein and the balance shall be paid within thirty (30) days following the last date that the tenant is permitted to terminate the lease pursuant to the Kickout Option. If the tenant elects to exercise its Kickout Option, then Broker waives all rights to the any further commissions for such lease. In the event the lease provides that if tenant exercises its Kickout Option it shall pay Owner the unamortized Broker Commissions, then and in such event, Owner agrees to pay Broker the full Commission for such lease subject to the Payment Terms herein.

3.    Except as expressly provided in Paragraph 6 above, Owner shall have no obligation to pay Broker any Commission or fee for any of the Excluded Tenant's listed in Schedule B below.

Agreed to this ___5Th___ day of March 2010

BROKER

Ripco Real Estate Corp.
Broker:

_____
By

_____
Title

_____
Date

OWNER

Condan Enterprises LLC
Owner

Paul A. Bregman
By

Manager
Title

_____
Date

6

## SCHEDULE B
## OWNER'S EXCLUDED TENANT'S

1.    Sym's
2.    Fortunoff
3.    Wild by Nature

# WILK AUSLANDER

Wilk Auslander LLP
1515 Broadway
New York, NY 10036

T  212 981 2300
F  212 752 6380
wilkauslander.com

Eric Snyder
Partner
(212) 981-2328
esnyder@wilkauslander.com

June 12, 2012

VIA FED EX
Clerk of the Court
United States Bankruptcy Court
Eastern District of Virginia
701 East Broad Street
Suite 4000
Richmond, VA 23218-1888

      Re:    In re Circuit City Stores, Inc., *et al.*, Case No. 08-35653-KRH

Dear Sir or Madam:

      My firm represents Condan Enterprises LLC, creditor in the above-referenced case ("Condan"). Pursuant to my telephone call today with the Ms. Delores Jones, enclosed for filing is a Declaration of Paul Bregman, Condan's manager, in response to the Objection interposed by Circuit City to the creditor's claim [ECF Doc. # 11851].

      As I am not admitted in the Eastern District of Virginia and do not have a password for electronic filing in this court, I was advised by Ms. Jones to forward the Declaration to the Clerk for filing.

      Thank you for your attention to this matter. Please let me know if you have any questions.

Respectfully submited,

Eric J. Snyder

EJS:js
Enclosure

611351v1