# EXHIBIT "A"

**MENTER, RUDIN & TRIVELPIECE, P.C.**
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498
Telephone:   (315) 474-7541
Facsimile:   (315) 474-4040
Kevin M. Newman
Adam F. Kinney

and

Augustus C. Epps, Jr. (VSB 13254)
Michael D. Mueller (VSB 38216)
Jennifer M. McLemore (VSB 47164)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone:   (804) 697-4100
Facsimile: (804) 697-4112

*Attorneys for Landover (Landover Crossing), LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

------------------------------------------------------------------

In re:

CIRCUIT CITY STORES, INC., *et al.*

                                                    Debtors.

------------------------------------------------------------------

Case No. 08-35653-KRH
Jointly Administered
Chapter 11 Proceedings

DECLARATION OF STANLEY WERB IN SUPPORT OF LANDOVER (LANDOVER
CROSSING), LLC'S RESPONSE TO THE LIQUIDATING TRUST'S FORTY-FIRST
OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN INVALID
CLAIMS-MITIGATION)

*STATE OF NORTH CAROLINA* )
                                                ) *SS:*
*COUNTY OF WAKE* )

STANLEY WERB, being duly sworn, deposes and says:

1.     I am the Manager of Rivercrest Realty Associates, LLC ("Rivercrest").

Rivercrest is the managing agent of Landover (Landover Crossing), LLC (the "Landlord").

{29090/22754/AFK/00515466.DOCX}

7.     The Debtor is liable to the Landlord under the Lease for rent through August 2009. The Lease further provides that the Landlord shall be entitled to expenses and reasonable attorneys' fees. The cover page, relevant provisions, and signature page of the Lease are attached hereto as Schedule "A."

8.     Furthermore, the Sublease provides that the Subtenant shall be a month to month tenant and liable to the Debtor for holdover rent and related expenses. The cover page, relevant provisions, and signature page of the Sublease are attached hereto as Schedule "B."

9.     The Landlord has incurred attorneys' fees with regard to regaining possession of the Premises in an amount in excess of $12,000 as of early May, 2012.

10.    Landover opposes any reduction of Claim No. 3266 or Claim No. 14664.

_____
Stanley Werb, Manager
Rivercrest Realty Associates, LLC

Sworn to before me this _81_ day

of ___June_____, 2012.

_____
Notary Public

CHRISTINE L. COGAR
NOTARY
My Comm. Expires
May 9, 2014
PUBLIC
CHATHAM COUNTY, NC

# SCHEDULE "A"

## TABLE OF CONTENTS

1. Leased Property.............................................1

2. Construction of Building and Improvements.................2

3. Easements.................................................3

4. Lease Term...............................................10

5. Rent....................................................11

6. Alterations.............................................12

7. Maintenance, Repairs and Replacements...................13

8. Signs...................................................14

9. Tenant's Property and Waiver of Landlord's Lien.........15

10. Insurance...............................................15

11. Assignment and Subletting...............................19

12. Compliance with Applicable Laws.........................21

13. Payment of Utility Bills................................22

14. Taxes...................................................22

15. Condemnation............................................25

16. Damages to the Property by Fire or Other Casualty.......27

17. Holding Over............................................30

18. "For Rent" Signs........................................31

19. Events of Tenant's Default..............................31

20. Landlord's Remedies.....................................32

21. Events of Landlord's Default............................34

22. Waiver..................................................35

23. Successors and Assigns..................................35

24. Landlord's Warranties, Representations and Covenants.....35

25. Holidays................................................39

26. Applicable Law..........................................39

27. Notices.................................................39

28. Amendments..............................................39

29. Subordination and Attornment............................39

30. Certificates............................................41

31. Mechanic's Lien.........................................42

32. Use.....................................................43

33. Rules and Regulations...................................43

34. Memorandum of Lease.....................................44

35. Force Majeure...........................................44



36. Brokers..................................................44

37. Change of Landlord.....................................44

38. Development and Maintenance of Shopping Center by
    Landlord..............................................45

39. Common Area Maintenance...............................46

40. Miscellaneous.........................................49

41. Effectiveness of Lease; Tenant's Right to Terminate......51

## EXHIBITS

A       Legal Description of Parcel

B       Plat of Shopping Center

B-1     Tenant's "As-Built" Survey

C       Construction Provisions

D       Tenant's Exterior Building Signage

E       Permitted Encumbrances

F       Tenant's Trade Fixtures

G       Subordination, Non-Disturbance and Attornment Agreement

H       Memorandum of Lease

Final 12/30/87

<u>LEASE</u>

THIS LEASE, made as of the __13__ day of December, 1987, by and
between GLM/LANDOVER ASSOCIATES LIMITED PARTNERSHIP, a Maryland
limited partnership (the "Landlord"), and CIRCUIT CITY STORES,
INC., a Virginia corporation (the "Tenant").

W I T N E S S E T H :

That for and in consideration of the mutual covenants herein
contained and other good and valuable considerations, the receipt
and sufficiency of which are hereby acknowledged, the parties
hereto agree as follows:

1.   <u>Leased Property</u>.  Landlord hereby demises and leases to
Tenant all that certain parcel of land consisting of approxi-
mately 32,500 square feet, located near the southeast corner of
Landover Road and Brightseat Road, lying and being in Prince
George's County, State of Maryland (the "Parcel"), as more par-
ticularly described herein on Exhibit "A" a copy of which is
attached hereto and incorporated herein by this reference, and
delineated by crosshatching on that plot plan of the Landover
Shopping Center ("the Shopping Center") attached hereto as Exhi-
bit "B" and incorporated herein by this reference, together with
that building to be constructed thereon by Tenant, improvements
and fixtures located thereon by Tenant or to be located thereon
and all appurtenances thereunto belonging, now in existence or
hereafter acquired (the Parcel and said building, improvements
and fixtures provided by Tenant and appurtenances are sometimes
collectively referred to as the "Property"), and further together
with and subject to the easements set forth in Paragraph 3 below.
The description of the Property may be adjusted in accordance
with Tenant's "as-built" survey which shall be reasonably
approved by Landlord's architect and attached hereto as Exhibit
"B-1" upon completion of the Building (as described in Paragraph
2 below).



Tenant's equipment, furniture and fixtures); provided, however, if the damage or destruction is unable with due diligence to be restored by Tenant within six (6) months from the date of receipt of required governmental permits, but in no event more than 365 days after the date of casualty, Tenant and Landlord shall each have the option (exercisable within sixty (60) days of such casualty) to terminate this Lease upon the date which is sixty (60) days from the occurrence of such casualty. In the event of such election to terminate, Landlord shall have the right to receive and retain any and all proceeds of any insurance payable in respect of such destruction or damage. If neither Landlord nor Tenant elects to terminate this Lease in accordance with the foregoing, and the insurance proceeds in the hands of Landlord or Landlord's first or second Mortgagee exceeds the amount required to pay the cost of the Work, Tenant, after payment of all such costs of the Work, shall be entitled to retain such excess.

(e) <u>Last Two Years</u>. If any such casualty or loss described in Paragraph 16(d) above, occurs within the last two (2) years of the Term or any Option Period and Tenant is unable to feasibly conduct its business as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's election (exercisable within sixty (60) days of the occurrence of the casualty) by written notice to Landlord within sixty (60) days of the occurrence of the casualty, and Landlord shall receive and have the full right to retain the proceeds of any insurance which may be payable with regard to such destruction or damage.

17. <u>Holding Over</u>. Tenant agrees that, at the termination or earlier expiration of this Lease, it will deliver to Landlord peaceable possession of the Property. Landlord need not give Tenant any Lease expiration notices. No holding over by Tenant, nor acceptance of Base Rent or additional rent by Landlord, shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions of this Lease (except that Tenant shall not be entitled to any Option

-30-

Periods under Paragraph 4(b)), and at 150% of the monthly Base
Rent Tenant had been paying during the last Lease Year.

18.  "For Rent" Signs.  Tenant hereby permits Landlord during
the last 12 months of the Lease Term or Option Period, as the
case may be, unless Tenant has exercised its next renewal option,
to place one (1) "For Rent" or "For Sale" sign, not exceeding
four feet by four feet in size, on the parking lot of the Prop-
erty.  Tenant will also allow Landlord or its agents to show the
Property, exterior and interior, to prospective tenants, purchas-
ers, or mortgagees during reasonable business hours by prior
notice, provided same does not materially interfere with the con-
duct of Tenant's business.

19.  Events of Tenant's Default.  Any of the following
occurrences, conditions or acts shall constitute an "Event of
Default" under this Lease:

(a)  Failure to Pay Rent; Breach; Abandonment.  Tenant shall
(i) fail to make any money payments provided hereunder, including
without limitation, payments for rent, taxes, insurance or Land-
lord's Operating Cost of the Common Area, when due, or shall fail
to maintain the insurance coverages required hereunder, for a
period of ten (10) days after the receipt of written notice from
Landlord to Tenant and Tenant's Mortgagee (as defined below), if
any, that same is overdue; or (ii) fail to observe or perform any
other provisions of this Lease and if such failure shall continue
for thirty (30) days after receipt of written notice from Land-
lord to Tenant and Tenant's Mortgagee (if any) specifying such
default and demanding that the same be cured (unless such default
cannot be cured solely by the payment of money and cannot with
due diligence be wholly cured within such period of thirty (30)
days, in which case Tenant shall have a longer period to cure the
default, so long as Tenant proceeds promptly to commence the cure
of same within such thirty (30) day period, and diligently prose-
cutes the cure to completion).

If Tenant elects to mortgage its leasehold interest
hereunder, Landlord, upon receipt of written notice of such
mortgagee ("Tenant's Mortgagee"), agrees to give Tenant's Mort-
gagee simultaneous notice of, and the same opportunity to cure, a



default hereunder as are afforded Tenant and to accept any such timely cure by such mortgagee.

(b) Bankruptcy. Tenant shall be adjudicated bankrupt or insolvent, or if a receiver or trustee in involuntary bankruptcy or other similar officer shall be appointed to take charge of any substantial part of Tenant's property and such proceeding is not dismissed within ninety (90) days after it is begun, or if Tenant voluntarily files a petition in bankruptcy or for reorganization under any provisions of the Bankruptcy Code now or hereafter enacted, and providing a plan for a debtor to settle, satisfy or extend the time for the payment of debts, or Tenant shall voluntarily make an assignment for the benefit of its creditors.

20. Landlord's Remedies. After the occurrence of an Event of Default, Landlord shall have the right to exercise the following remedies:

(a) Continue Lease. Landlord shall have the option to continue this Lease in full force and effect and not terminate the Tenant's right to possession of the Property, in which event Landlord shall have the right to collect Base Rent, additional rent and other amounts under this Lease when due, and Landlord shall have such other rights as are provided for in this Lease and such rights as are permitted by law.

(b) Terminate Lease. Landlord may terminate this Lease. In the event of such termination, Landlord shall be entitled to recover from Tenant:

(i) The worth at the time of judgment of any obligation which has accrued prior to the date of termination; and

(ii) The worth at the time of the judgment of the amount by which the unpaid rent and additional charges which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided; and

(iii) The worth at the time of judgment of the amount by which the unpaid rent and additional charges for the balance of the term after the time of award exceeds the amount of such rental loss that Tenant proves could be reasonably

-32-



avoided; and

(iv)  As used in clauses (i) and (ii) of this Paragraph 20(b) the term "worth at the time of the judgment" shall be computed by allowing interest at the rate of ten percent (10%) per annum and, as used in clause (iii) of this Paragraph 20(b), the term "worth at the time of the award" shall be computed by discounting such amount at the prime rate of the Federal Reserve Bank of Richmond, Virginia (the "Prime Rate") at the time of the award, plus one percent (1%).

(c)  <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>.  Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable expenses as Landlord may incur in recovering possession of the Property, placing the same in good order and condition and repairing the same for reletting, all other reasonable expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any default by Tenant hereunder, (including, but not limited to, reasonable attorneys' fees, brokerage fees or reletting expenses), and any other amount necessary to compensate Landlord for all the detriment proximately caused by the Tenant's failure to perform Tenant's obligations under this Lease or which in the ordinary course of things would be likely to result therefrom.

(d)  <u>Other Remedies</u>.  Landlord may exercise any other remedy or right now or hereafter available to a landlord against a defaulting tenant under the law of Maryland and not otherwise specifically reserved herein.

(e)  <u>Mitigation of Damages</u>.  Landlord shall be under no obligation to observe or perform any covenant of this Lease on its part to be observed or performed which accrued after the date of any default by Tenant hereunder until Tenant cures or commences to cure such default.  Landlord shall, however, have the duty to mitigate its damages in accordance with the applicable provisions, if any, of Maryland law.

(f)  <u>Remedies Are Cumulative</u>.  The various rights and remedies reserved to Landlord herein, including those not specifically described by statutory law in force and effect at the time



("Tenant's Prorata Share"). In no event, however, shall Tenant's payments toward Landlord's Operating Costs include any expense related to Landlord's pylon sign, unless Tenant makes use of sign panels on such pylon sign. Changes in applicable floor areas shall result in corresponding prorata adjustments. The remaining costs shall be borne by Landlord and/or other tenants.

(f) <u>Examination of Landlord's Records</u>. Tenant shall have the right, from time to time, but not more often than once as to any Lease Year, within two (2) years after the end of such Lease Year, to examine and make copies of the records pertaining to Landlord's Operating Costs. Tenant's right of examination shall be exercised during reasonable business hours at Landlord's principal records office on at least ten (10) days' prior notice to Landlord. If such examination shall disclose any overcharge by Landlord, Landlord shall promptly reimburse Tenant for any overpayment of Tenant's proportion of Landlord's Operating Cost of the Common Areas made under such overcharge; and if such overcharge is in excess of three percent (3%) of Tenant's actual proportion of Landlord's Operating Cost of the Common Areas, Landlord shall reimburse Tenant for the reasonable cost of the audit.

40. <u>Miscellaneous</u>.

(a) <u>Headings and Gender</u>. The captions of sections of this Lease are for convenience only and are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease, and the masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and



agent or of partnership or of joint venture or of any association between Landlord and Tenant.

   (e) <u>Entire Agreement</u>.  This Lease (together with the exhibits attached hereto) covers, in full, each and every agreement of every kind of nature whatsoever between the parties hereto concerning this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature are merged herein.

   (f) <u>Waiver of Certain Landlord Rights</u>.  Landlord hereby expressly waives any and all rights granted by or under any present or future laws to levy or distrain for rent, in arrears, in advance or both, upon all goods, merchandise, equipment, fixtures, furniture and other personal property of Tenant of any subtenant or licensee of Tenant in the Property, delivered or to be delivered thereto.

   (g) <u>Notices Affecting the Property</u>.  Landlord and Tenant each covenant to promptly forward to the other any notice or other communication received by such party from any owner of property adjoining, adjacent or nearby to the Property or Landlord's Premises or from any municipal or governmental authority in connection with any hearing or other administrative procedure relating to the use of the Property, Landlord's Premises or any such property.

   (h) <u>Antennae Installation, Maintenance and Removal</u>.  To the extent permitted by law, Tenant may, from time to time, install, maintain and/or replace any antennae on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided same shall not adversely and materially affect the roof or the structural elements thereof or the appearance of the building.  Upon removal by Tenant of any antennae, Tenant shall repair any damage done in connection with such removal.

   (i) <u>Counterparts</u>.  This Lease may be executed in counterparts and all such executed counterparts shall constitute one (1) lease, binding on both Landlord and Tenant notwithstanding that Landlord and Tenant may not be signatories to the original or to the same counterpart.

(j)   **Attorneys' Fees**.   In the event either party shall elect
to commence any action·or proceeding against the other party by
reason of any breach or claimed breach of any provision of this
Lease, to commence any action or proceeding in any way connected
with this Lease, or to seek a judicial declaration of rights
under this Lease, the person prevailing in such action or pro-
ceeding shall be entitled to recover from the other person or to
be reimbursed for the prevailing person's reasonable attorneys'
fees and costs.

41.   **Effectiveness of Lease; Tenant's Right to Terminate**.
Notwithstanding the execution of this Lease or any provision of
this Lease to the contrary, the parties hereto agree that the
obligations of the respective parties under this Lease are
expressly conditioned upon the complete satisfaction (or waiver)
of each and all of the following conditions:

(a)   Landlord acquiring title to the Shopping Center (as def-
ined below) on or before January 20, 1988, unless Tenant agrees
in writing to extend said date.

(b)   The title to the Parcel being subject only to the "Per-
mitted Exceptions" (as set forth on Exhibit "E" attached hereto)
as of the date of Landlord's acquisition of the Shopping Center.

(c)   The Parcel and this Lease being in compliance with all
applicable laws and ordinances as of the date of Landlord's
acquisition of the Shopping Center.

(d)   Tenant obtaining all required city, Prince George's
County and State of Maryland permits, approvals and licenses (if
any) to construct a store on the Parcel.   Tenant agrees to use
due diligence and expend necessary amounts to secure such per-
mits, approvals and licenses.

(e)   Landlord's delivery of a Non-Disturbance and Attornment
Agreement (the "NDA Agreement") executed by the holder of any
Mortgage (as defined herein) presently secured by the Shopping
Center in a form reasonably satisfactory to Tenant and containing
the substantive provisions set forth in Paragraph 29 hereof or
Exhibit "G" hereto, on or before 30 days after the date of Land-
lord's acquisition of the Shopping Center.   Tenant agrees to make
reasonable modifications to this Lease requested by Landlord's

WITNESS the following signatures and seals:

"Landlord"

GLM/LANDOVER ASSOCIATES LIMITED
  PARTNERSHIP,
a Maryland limited partnership

By:  GLM LANDOVER EQUITY
       CORPORATION,
       GENERAL PARTNER

By: _____

Its: _____


"Tenant"

CIRCUIT CITY STORES, INC.,

a Virginia Corporation


By: _____

Its: _____

                              (SEAL)

# SCHEDULE "B"

SUBLEASE

THIS SUBLEASE, dated the 2⁹ᵗʰ day of September, 2005, between CIRCUIT CITY
STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond,
Virginia 23233-1464 ("Sublandlord") and MALL OF DECORATION, INC., a Maryland
corporation, having an office at 6607 Spring Crest Drive, Greenbelt, Maryland  20770
("Subtenant").

W I T N E S S E T H :

1.     PREMISES.

       Sublandlord hereby subleases to Subtenant, and Subtenant hereby subleases from
Sublandlord, those certain premises ("Premises") crosshatched on Exhibit A attached hereto and
made a part hereof, consisting of approximately 32,652 rentable square feet of ground floor
space in the building (the "Building") located at 8503 Landover Road, Landover, Maryland,
within the shopping center know as Landover Shopping Center (the "Shopping Center") and
being the premises which were leased to Sublandlord under the Prime Lease dated December 13,
1987, as amended (the "Prime Lease") between 5035 Associates Limited Partnership, successor
to GLM/Landover Associates Limited partnership, as landlord ("Landlord") and Sublandlord, as
tenant. This Sublease does not include any right under the Prime Lease to (i) extend the term of
the Prime Lease, (ii) purchase the Premises, or (iii) terminate the Prime Lease, all of which rights
are reserved to Sublandlord.


2.     TERM.

       A.     Term.  The term of this Sublease ("Term") shall be the period of approximately
three (3) years and three (3) months commencing on November 1, 2005 ("Commencement
Date"), and ending at midnight on January 30, 2009 ("Expiration Date"), unless sooner
terminated as herein provided.  The "Rent Commencement Date" shall be the date which is
ninety (90) days after the Commencement Date.

       B.     Possession.  Sublandlord shall tender possession of the Premises to Subtenant
within five (5) business days following the (i) execution and delivery of this Sublease by both
parties, (ii) the delivery by Subtenant to Sublandlord of all insurance certificates required
pursuant to Section 15 hereof, and (iii) payment by Subtenant of the Security Deposit, as
hereinafter defined, and the first month's Base Rent.  If Subtenant shall fail to deliver the items
required under clauses (ii) and (iii) above, Sublandlord shall have the right to withhold
possession of the Premises until delivery by Subtenant of such items and sums, but the
Commencement Date and the Rent Commencement Date shall not be delayed.

       C.     Agreement.  Subtenant shall execute and deliver to Sublandlord an agreement
setting forth the Commencement Date and Rent Commencement Date within five (5) business
days after Sublandlord's request therefor.

1

In the event of a default by Sublandlord hereunder, Sublandlord shall reimburse Subtenant for all reasonable attorneys' fees incurred by Subtenant in enforcing its rights hereunder with respect to such default.

.20.     WAIVER OF JURY TRIAL AND RIGHT TO COUNTERCLAIM.

SUBLANDLORD AND SUBTENANT EACH HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY SUMMARY OR OTHER ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS SUBLEASE, THE RELATIONSHIP OF SUBLANDLORD AND SUBTENANT, THE PREMISES OR THE USE AND OCCUPANCY THEREOF, OR ANY CLAIM OF INJURY OR DAMAGES. SUBTENANT ALSO HEREBY WAIVES ALL RIGHT TO ASSERT OR INTERPOSE A COUNTERCLAIM (OTHER THAN A COMPULSORY COUNTERCLAIM) IN ANY PROCEEDING OR ACTION TO RECOVER OR OBTAIN POSSESSION OF THE PREMISES; HOWEVER, THE FOREGOING SHALL NOT BE DEEMED A WAIVER BY SUBTENANT OF SUCH RIGHT OF ACTION, AND SUBTENANT SHALL HAVE THE RIGHT TO BRING SUCH ACTION IN A SEPARATE PROCEEDING.

21.     END OF TERM.

At the expiration or sooner termination of the Term, Subtenant shall quit and surrender to Sublandlord the Premises, broom clean, free of all occupants, and in good condition, ordinary wear and tear and damage by fire and any other insured casualty excepted. At such expiration or sooner termination, Subtenant shall remove from the Premises all property of Subtenant, including its sign(s), and, at the option of Sublandlord, shall remove all alterations and other improvements made by Subtenant to the Premises, and Subtenant shall repair all damage to the Premises caused by any and all such removal and restore the Premises to the condition in which they were prior to the installation of the items so removed, including the areas where Subtenant affixed its sign(s). Any property of Subtenant not so removed may be deemed to be abandoned, or Sublandlord may remove the same and restore any damage, at Subtenant's expense.

22.     HOLDOVER.

If Subtenant remains in possession of the Premises after the expiration or termination of the Term, Subtenant shall be deemed to be occupying the Premises as a tenant from month to month at the sufferance of Sublandlord subject to all of the provisions of this Sublease, except that the Base Rent shall be at a monthly rate equal to the greater of (i) the rent which Sublandlord owes for such period under the Prime Lease, or (ii) twice the monthly Base Rent in effect during the last month of the Term. Subtenant shall give to Sublandlord at least thirty (30) days' prior written notice of any intention to quit the Premises.

Notwithstanding the foregoing provisions of this Section 22, if Subtenant holds over after the expiration or termination of the Term and Sublandlord desires to regain possession of the Premises, then Sublandlord, at its option, may forthwith reenter and take possession of the Premises without process, or by any legal process in force in the jurisdiction in which the Shopping Center is located. Any rental amounts for such hold over period which are deposited into Sublandlord's rental account shall not be deemed accepted by Sublandlord if Sublandlord promptly returns such rental amounts to Subtenant. Nothing herein shall limit Sublandlord's right to recover damages pursuant to this Sublease and such other damages as are available to Sublandlord at law or in equity (including but not limited to any and all liability to Landlord or otherwise caused by such holdover).

23.   BROKERAGE.

Subtenant and Sublandlord each represents to the other that, except for Realty Strategy Associates ("Sublandlord's Broker") and Agronsky & Company, LLC ("Subtenant's Broker"), no broker or other person had any part, or was instrumental in any way, in bringing about this Sublease. Each agrees to pay and indemnify, defend and hold harmless the other from and against, any claims made by any other broker or other person for a brokerage commission, finder's fee, or similar compensation, by reason of or in connection with this Sublease, and any loss, liability, damage, cost and expense (including, without limitation, reasonable attorneys' fees) in connection with such claims if such broker or other person claims to have had dealings with the indemnifying party. Sublandlord shall pay any commission due Sublandlord's Broker, and Subtenant shall be responsible for obtaining payment from Sublandlord's Broker pursuant to separate agreement. Neither Subtenant's Broker nor Sublandlord's Broker is a third party beneficiary of this Agreement.

24.   FINANCIAL STATEMENTS AND ESTOPPEL CERTIFICATES.

Subtenant shall, within five (5) days after each and every request by Sublandlord, execute, acknowledge and deliver to Sublandlord either or both of the following: (a) an annual financial statement, and (b) a statement in writing (i) certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), and the Commencement Date, Rent Commencement Date and Expiration Date, (ii) specifying the dates to which the Base Rent and Additional Rent have been paid, (iii) stating whether or not, to the best knowledge of Subtenant, Sublandlord is in default under this Sublease, and, if so, specifying each such default, (iv) stating whether or not, to the best knowledge of Subtenant, any event has occurred which with the giving of notice or passage of time, or both, would constitute a default by Sublandlord under this Sublease, and, if so, specifying each such event, (v) stating whether Subtenant has exercised any option(s) to extend the Term of this Sublease, and, if so, specifying each such extension, and (vi) any other matter as may be reasonably requested. Any such statement delivered pursuant to this Section 24 may be relied upon by any prospective assignee or transferee of the leasehold estate under the Prime Lease.

20

to deliver such Guaranty, or the subsequent insolvency or bankruptcy of such guarantor under any applicable federal or state bankruptcy or insolvency law, shall be an event of default hereunder.

IN WITNESS WHEREOF, Sublandlord and Subtenant have hereunto executed this Sublease as of the day and year first above written.

SUBLANDLORD:

CIRCUIT CITY STORES, INC.

By: _____

~~Michael E. Foss~~

~~Executive Vice President~~

STEVEN E. JACKSON
VICE PRESIDENT, REAL ESTATE

SUBTENANT:

MALL OF DECORATION, INC., a
Maryland corporation

By: _____
     Mei Ji Zheng
     President

C:\Client Files\Circuit City\Surplus Property\Landover\2005 09 28 Sublease Landover.doc

26