*Lease w/ Spirit Halloween Superstores*

## TEMPORARY LEASE AGREEMENT

This Lease is made and entered into this 21st day of August 2009, by and between SACCO of Maine LLC, with an address at 149-46 Powells Cove Blvd., Whitestone, NY 11385 ("Landlord"), and Cann Did Investments, LLC ("Tenant"), 405 Western Ave #319, South Portland, ME 04106

1. **Premises.** In consideration of the mutual covenants, conditions and agreements in this Lease, Landlord leases to Tenant, and Tenant leases from Landlord, the following described premises ("Premises"):
former Circuit City building at 668 Stillwater Avenue, Bangor, Maine 04401.

2. **Term.** The term of this Lease ("Term") shall begin on August 25, 2009 ("Commencement Date") and end November 7, 2009 ("Expiration Date"). Tenant shall open and conduct its business at the Premises from approximately September 4, 2009 through November 1, 2009.

In the event Landlord enters into a permanent lease for the Premises (permanent lease being defined as having a lease term of at least 12 consecutive months) and such permanent tenant requires possession of the Premises prior to the expiration date of this Lease, then Landlord shall have the right to terminate this Lease by giving written notice to Tenant not later than July 15, 2009. In the event Landlord fails to so notify Tenant of its election to terminate this Lease, Landlord shall be deemed to have waived such right of termination.

3. **Rent.** Total rent ("Rent") for the Term is $ 18,000 (Eighteen Thousand Dollars) payable to Landlord at the above address as follows: $ 18,000 (Eighteen Thousand Dollars) due upon signing.

4. **Personal Property.** Tenant shall furnish at his own expense all personal property to be used by Tenant on the Premises.

5. **Permitted Use.** Tenant shall use the Premises only for the retail sale of Halloween related merchandise, including but not limited to, costumes, masks, wigs, makeup, accessories, decorations, party goods, home decorations, and any other item then being sold in a majority of Tenant's other stores operated under the same trade name as the Premises. Tenant shall carry on no other business on said Premises without the prior written consent of Landlord. Tenant's business in the Premises shall be conducted under the trade name "Spirit Halloween Superstores," or any other trade name under which Tenant operates.

6. **Utilities.** Tenant agrees to pay for all electric, power, gas, telephone, fire alarm monitoring fees, garbage or trash collection supplied to the Premises during the Term of this Lease. In the event any such utility is disrupted so that Tenant cannot operate the Premises, and such disruption



is caused by the acts or negligence of Landlord, its agents, employees or contractors, then all Rent shall abate thereafter until such utility service is restored.

7.  Subletting. Tenant shall not sublet the whole or any part of the Premises without first obtaining the prior written consent of Landlord.

8.  Maintenance and Repairs. Landlord represents that the electrical system, HVAC system, plumbing system, fire sprinkler and alarm systems (if required by local fire code), lighting fixtures, and physical structure of the Premises are in good working order. Landlord shall at all times at its sole cost and expense keep and maintain the Premises in good condition, order and repair, including the parking lot, roof, foundation and structural portions of the Premises, as well as the mechanical, electrical, HVAC or other utility systems servicing the Premises, unless such repairs are necessitated by the intentional acts or omissions of Tenant.

9.  Liens. Tenant shall not permit any liens to be filed against the Premises on account of the furnishing of any labor, material or supplies, or for any other cause or reason. In the event liens are filed, then Tenant shall promptly cause the same to be released, bonded or satisfied in full within ten (10) days of the date of such filing.

10. Indemnification. Tenant shall indemnify and hold harmless Landlord from and against any and all claims, actions, damages, liability and expenses in connection with loss of life or personal injury arising from or out of Tenant's occupancy or use of the Premises or any part thereof, occasioned wholly or in part by an negligent act or omission of Tenant, its agents, contractors or employees. Notwithstanding the foregoing, Tenant shall have no obligation to indemnify or hold Landlord harmless against claims for loss of life or personal injury sustained as a consequence of the acts or omissions of Landlord or of its agents, servants, or employees.

11. Tenant's Insurance. Tenant shall carry, at his own expense, (i) commercial general liability insurance in an amount of not less than $1,000,000 per occurrence, with a $2,000,000 general aggregate for bodily injury and property damage, and (ii) all risk property insurance covering Tenant's trade fixtures, inventory and other personal property for the full replacement cost thereof. Landlord shall be named as an additional insured on the aforesaid liability insurance and shall be provided with evidence confirming such coverage.

12. Landlord's Insurance. Landlord shall carry commercial property insurance, including special form perils endorsement, insuring the building of which the Premises is a part, in an amount not less than the full replacement cost. In addition, Landlord shall carry commercial general liability insurance for the property of which the Premises is a part, in at least the same amounts required of Tenant.

13. Hazardous Materials. Tenant agrees not to maintain, keep, store or permit the maintenance or storage of any dangerous, flammable or hazardous material on the Premises (other than reasonable and customary amounts as permitted under existing fire and safety rules and regulations) and further agrees to comply with all fire and safety rules and regulations, provided such compliance does not require Tenant to install or modify any fire protection, fire detection or fire alarm systems in the Premises. Any such

installations or modifications shall be the sole responsibility of the Landlord.

14. Casualty. If all or any part of the Premises shall be damaged or destroyed by fire, earthquake or other casualty so as to render the Premises untenantable in Tenant's sole opinion, then this Lease shall terminate, at the written option of Landlord or Tenant, from the date of such casualty, and upon such notice Tenant shall at once surrender the Premises and all interest therein to the Landlord, and shall not be liable for any further payments of Rent as of the date of such casualty. Any portion of the Rent applicable to the time period after the date of such casualty shall be refunded to Tenant.

15. Quiet Enjoyment. Landlord represents and warrants that Landlord has the right, power and lawful authority to enter into this Lease for the full Term hereof. Tenant, upon paying the Rent required under this Lease, shall peaceably and quietly hold and enjoy the Premises during the full Term hereof.

16. Signage. Beginning August 1st (or upon the mutual execution and delivery of this Lease if such date is later than August 1st), Tenant shall have the right to place temporary professionally prepared banner signs containing Tenant's trade name on the front facade and sides (if applicable) of the building of which the Premises is a part and on any available monument or pylon sign located on the shopping center property, such signage to comply with the terms contained in Exhibit "A" attached hereto. Upon the removal of the signs at the end of the Term, Tenant will make all necessary repairs to return the building and monuments to their original conditions prior to the installation of signs, reasonable wear and tear excepted.
    In addition to the above banner signs, Tenant shall have the right to place at the Premises signage stating "Halloween Store Opening Soon" (or similar language) immediately upon the mutual execution and delivery of this Lease.
    Upon Landlord's written request, Tenant agrees to display a single "For Lease" or "For Sale" sign, not to exceed 24" x 24" (such sign to be provided by Landlord), and further agrees to make the Premises available for showing upon not less than 24 hours prior notice.

17. Governmental Approvals. In the event any governmental authorities require Tenant to (i) make modifications to the Premises so that Tenant can conduct business at the Premises, or (ii) obtain licenses or permits, and the costs for such modifications or licenses and permits exceed a cumulative total of $2,000.00, then Tenant shall have the right to terminate this Lease by giving written notice to Landlord. In the event Tenant so elects to terminate this Lease, Landlord shall refund to Tenant all Rent and deposits (if any) paid to Landlord. Landlord may, however, elect to pay all costs above the amount of $2,000.00, in which event Tenant's notice of termination shall be void, provided Landlord notifies Tenant in writing of such election no later than two (2) days following Landlord's receipt of Tenant's notice of termination.

18. Zoning. Landlord represents and warrants that the Premises is zoned for retail. In the event Tenant is unable to obtain the necessary governmental approvals to operate its business at the Premises, this Lease shall be considered null and void and Landlord shall refund to Tenant all Rent and deposits (if any) paid to Landlord.

(12)

19. Default. In the event Tenant shall be in default in the payment of any installment of Rent herein reserved more than five (5) days after the due date of such installment, or in the event Tenant shall be default in the performance of any other of the terms, covenants, conditions or provisions herein contained binding upon Tenant after Landlord has given Tenant fifteen (15) days prior written notice of such non-performance, Landlord shall have the right (in addition to all other rights and remedies provided by law) to terminate this Lease, to re-enter and take possession of the Premises, peaceably or by force, and to remove any property therein, without liability for damage to, and without obligation to store, such property.

20. Notices. Any notice required or permitted under this Lease shall be in writing and, except as specifically provided otherwise herein, shall be deemed to have been duly given and delivered (a) one (1) business day after the date on which the same has been delivered prepaid to a national courier service guaranteeing next day service, or (b) three (3) days after deposit in the United States mail, registered or certified, return receipt requested, postage prepaid, in each case addressed to the party to whom such notice is given at the address set forth herein.

21. Attorneys' Fees. If either Landlord or Tenant institutes any action or proceeding against the other to enforce any provision of this Lease, the non-prevailing party shall reimburse the prevailing party for all reasonable costs and expenses incurred by the prevailing party in the performance of this Lease, including court costs, expenses and reasonable attorneys' fees.

22. Entire Agreement. There are no oral or written agreements or representations between Landlord and Tenant except as expressly set forth in this Lease. No modifications of this Lease will be binding upon Landlord or Tenant unless in writing and signed by each party. The terms, covenants and conditions contained herein shall inure to the benefit of, and be binding upon, Landlord and Tenant, and their respective heirs, successors and assigns.

23. Severability. If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

24. Governing Law. This Lease shall be construed in accordance with the laws of the state in which the Premises is located.

[Remainder of this page intentionally left blank.]

(13)

25.  **Time of the Essence.** Time is of the essence with respect to the performance of each, every and all of the terms, conditions, promises and provisions of this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written.

LANDLORD:


By:

Name:
Title:
Date:

Landlord's Address:


Landlord's Federal Tax ID#:

TENANT:
(Cann Did Investments, LLC)

By:
    Diana I. Dunbar, Owner
Date:

(14)

Exhibit "A" - Signage
(668 Stillwater Avenue, Bangor, Maine 04401)

Tenant shall have the right, at Tenant's sole cost and expense, to place a 6' x 35" or smaller temporary professionally prepared banner(s) on the Premises. All signage shall be subject to applicable zoning and permitting.

See attachment with banner graphics.

LANDLORD:

By:
Name:
Title:
Date:

TENANT:
(Cann Did Investments, LLC)

By:
    Diana I Dunbar, owner
Date:

—

—

—

—

_PAGE _6_