McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Robert H. Chappell, III, Esquire (VSB #31698)
Neil E. McCullagh, Esquire (VSB #39027)
Erin E. Kessel, Esquire (VSB #65360)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Phone: (804) 697-2000
Fax: (804) 697-2100

Attorneys for PNY Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 08-35653 (KRH) |
| | : | |
| | : | Chapter 11 |
| CIRCUIT CITY STORES, INC., <u>et al.</u>, | : | |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |

**CLAIMANT PNY TECHNOLOGIES, INC.'S RESPONSE TO LIQUIDATING
TRUSTEE'S OBJECTION TO CLAIM NO. 1723**

**PRELIMINARY STATEMENT**

Claimant PNY Technologies, Inc. ("PNY"), by and through its undersigned counsel, hereby responds to the Liquidating Trustee's (hereinafter, the "Trustee") Objection to Claim No. 1723 filed by PNY ("Objection"). PNY's "litigation claim" results from Circuit City's failure to honor promises it made to induce PNY to pay Circuit City millions of dollars and make other costly concessions in connection with marketing of "flash memory" cards. PNY first asserted

the claim in an action in the District of New Jersey commenced prior to the commencement of the Circuit City Chapter 11 proceedings.

This is the fourth objection filed by the Debtors and/or the Trustee relating to Claim No. 1723. Through this latest Objection, the Trustee asserts that PNY's claim should be disallowed because: (i) PNY has not submitted sufficient proof as to the validity of its claim; (ii) that PNY's claim is overstated; and (iii) PNY is barred from seeking damages based on the Master Dealer Agreement entered into between PNY and the Debtors in May 2006. See Objection at ¶¶ 27-33.

As explained below the Trustee's grounds for objection lack merit. PNY's claims are not barred by the terms of the Master Dealer Agreement, which does not apply to the agreement on which PNY's claim is based. Moreover, PNY's claims and damages are prima facie valid and arise from the Debtors' material breach of contract relating to the purchase, advertising and resale of PNY's Flash Card products, and are supported by the Declaration of Gadi Cohen, PNY's President and Chief Executive Officer submitted herewith (hereinafter, the "Cohen Declaration"). At this point in the proceeding, the Trustee, as Objector, carries the burden to introduce some evidence into the record to show that the allegations in PNY's claim are somehow legally insufficient. The Trustee has failed to meet his burden. Accordingly, this Court should overrule the Trustee's Objection and allow Claim No. 1723 in an amount of $8,250,000.

**RESPONSE TO OBJECTION**

*The Master Dealer Agreement Does Not Bar PNY's Claims for Damages*

1. Through his Objection the Trustee contends that certain provisions of the Master Dealer Agreement bar PNY's claims for loss of profits or revenue, or for incidental, special,

2

consequential or punitive damages relating to the performance, non-performance, breach or termination of the Master Dealer Agreement.  See Trustee's Objection at ¶ 33.

2.    As an initial matter, PNY submits that its claim does not arise from a breach of the Master Dealer Agreement.  The claim arises from the Debtors' breach of Product Addendum #2671 (hereinafter, the "Flash Card Agreement") entered into on August 8, 2006 between PNY and the Debtors.  Thus, the Trustee's argument that paragraphs 5(e) or sections 7(c) or (d) somehow limit PNY's right to seek compensatory, incidental, consequential or lost profits is unavailing.

3.    In addition, by its express terms, the provisions of the Master Dealer Agreement only apply with respect to "any other product or program addenda "*referencing this Agreement*" that may be entered into from time to time by the parties (each a "Product Addendum").  See Trustee's Objection, Exhibit B at ¶ 1 (emphasis added).  The Product Addendum (#2671) dated August 8, 2006, makes no reference to the Master Dealer Agreement.  See Trustee's Objection, Exhibit C; Cohen Declaration, Exhibit B, in Support of PNY's Claim No. 1723.  Thus, by its own terms sections 5(e) and sections 7(c) and (d) of the Master Dealer Agreement do not apply to the Flash Card Agreement, or PNY's claims, which arise from the breach of the Flash Card Agreement by Circuit City.[1]

---

[1] The Trustee seems to recognize as much in other sections of his Objection.  The Trustee admits that Circuit City and PNY entered into numerous side agreements over the course of their business relationship, some subject to, and others outside the terms of the Master Dealer Agreement.  See Trustee's Objection at ¶ 13.  Moreover, the Master Dealer Agreement and Product Addendum 2671 were not entered into by the parties contemporaneously.  The Master Dealer Agreement is dated May 16, 2006 and was executed by Mr. Anthony Gomez, PNY's Vice President of Sales & Marketing on the same date, whereas Product Addendum 2671 is dated August 8, 2006, and was executed by Mr. Gomez on August 28, 2006.

ME1 13673672v.3

*Circuit City's Breach of Product Addendum #2671*

4. As stated in PNY's Proof of Claim, PNY's claim is based on the damages PNY incurred arising from the Debtors' pre-petition breach of the Flash Card Agreement entered into by PNY and the Debtors in August 2006.

5. In or about March 2006, PNY and the Debtors commenced negotiations with the intent of entering into a long term contract concerning the sale of the PNY Flash Cards. In July 2006, the Debtors presented PNY with a Term Sheet. See Cohen Declaration at ¶ 2, Exhibit A. Pursuant to the Term Sheet, the parties agreed that Circuit City would buy, advertise and resell to its retail customers PNY Flash Card products, and represented and agreed, among other things, to run a minimum of two advertising placements per month for PNY Flash Card products during the term of any new Flash Card Agreement. Sales volume at retail is determined based on the frequency of print advertisements, among other things; therefore, the promise to provide the print ads was an important inducement for PNY to enter into the Flash Card Agreement. PNY also understood that Circuit City would devote 50% of its advertisements for Flash Card products to promote PNY's products. Id. at ¶ 3.

6. In consideration of Circuit City's promises and representations made during the negotiations for the new Flash Card Agreement, and in reliance on those representations, PNY agreed to pay to Circuit City "Marketing Development Funds" of one million eight hundred thousand dollars, payable in two installments of nine hundred thousand dollars each in November, 2006 and February, 2007. The Marketing Development Funds were consideration for Circuit City's promises to place at least two (2) ad placements per month for PNY's Flash Cards. Id. at ¶ 4.

7. In further consideration of Circuit City's promises and representations made

4

ME1 13673672v.3

during the negotiations for the New Flash Card Agreement, PNY also agreed to provide Circuit City additional marketing development funds, price and margin protection, allowances, rebates, price protection, and point-of-sale (POS) allowances, all of which constituted substantial discounts off of the price of PNY Flash Cards and/or cash payments to Circuit City relating to the contemplated sales of the PNY Flash Card products in return for the contemplated ad placements for PNY's Flash Cards. Id. at ¶ 5.

8. The parties contemplated that a rollout under a new agreement would take place in or about October 2006. The parties needed to allow time for SKU set-up and assignment for the PNY Flash Cards, inventory build-up by Circuit City, and time for PNY's Flash Cards to reach the Circuit City stores after receipt by the Circuit City Distribution Centers. See Cohen Declaration, Exhibit A, page 2.

9. On or about August 8, 2006, PNY and Circuit City memorialized the agreements reached during the negotiations that began in March 2006, and entered into a Flash Card Agreement (Product Addendum #2671). The Flash Card Agreement had a term of twenty-four months, with automatic renewals for like periods unless either party gave notice of termination. See Cohen Declaration, Exhibit B.

10. Paragraph 3 of the Flash Card Agreement reflects the Marketing Development Funds referenced above. The advance was increased to two million dollars, payable in two installments of one million dollars each in November, 2006 and February, 2007 in consideration for Circuit City's promises and representations to advertise PNY's Flash Card products at least twice per month for the duration of the Flash Card Agreement. PNY paid those amounts to Circuit City on time and in accordance with the Flash Card Agreement. Id. at ¶ 3.

ME1 13673672v.3

11. The Flash Card Agreement also contains a "Stock Balancing" provision which enabled Circuit City to return any overstock of the Flash Card products for 100% of the net price paid in accordance with Circuit City's return policies. If Flash Cards were returned by Circuit City due to any overstock of product, Circuit City could reduce its account balance with PNY dollar-for-dollar at 100% of the net price paid by Circuit City for PNY's products. Therefore, PNY had the risk of return if the volume of sales of Flash Cards through Circuit City was less than the amounts Circuit City ordered. See Cohen Declaration at ¶ 9; Exhibit B, at ¶ 7.

12. Circuit City materially breached the Flash Card Agreement in April 2007 by reneging on its promises to devote 50% of its advertising to PNY's Flash Cards. In 2007 Circuit City placed two-hundred fifteen (215) ads for Flash Cards. Of those 215 advertisements, only forty (40) advertisements were for PNY Flash Card Products. The remaining 175 ads were placed on behalf of PNY's competitor, Sandisk. In essence, PNY only received 19% of the ad placements for Flash Card products made by Circuit City in 2007, not the 50% promised by Circuit City as an inducement for PNY to enter into the agreement. Circuit City also failed to run a minimum of two ads per month for PNY's Flash Cards for the months of July, October, November and December, 2007. See Cohen Declaration at ¶¶ 10, 11; Exhibit C. Circuit City's breach of the Flash Card Agreement continued into 2008. Circuit City did not place a single ad for PNY's Flash Cards in 2008, despite the minimum requirement of two ads per month under the Flash Card Agreement. Instead, Circuit City ran Flash Card ads solely for the benefit of Sandisk in that calendar year. See Cohen Declaration at ¶ 12; Exhibit D.

*PNY's Damages Resulting From Circuit City's Breach of Product Addendum #2671*

13. Circuit City's breach of the Flash Card Agreement damaged PNY. PNY lost

6

ME1 13673672v.3

more than 75% of its year-over-year sales volume in 2008 as compared to 2007 because of Circuit City's breach of the Flash Card Agreement. See Cohen Declaration at ¶ 13; Exhibit E. Because of the dramatic drop in sell-through numbers PNY was forced to expend additional funds on back-end funding to support its Flash Card products at the Circuit City stores. In order to move inventory at the stores, PNY was forced to discount its Flash Card products through point-of sale programs in which PNY guaranteed Circuit City a certain fixed margin on the sale of the Flash Cards, even though the product was being discounted by PNY. The need for the additional point-of-sale promotions was directly caused by the lack of advertising of the PNY Flash Cards. PNY has determined that the losses associated with the additional point-of-sale support necessary to turn the inventory in the Circuit City's stores amounts to not less than $1,650,000. See Cohen Declaration at ¶¶ 14, 15.

14. Likewise, PNY suffered further damages caused by Circuit City's failure to advertise as promised. Under the Flash Card Agreement PNY had to guarantee Circuit City price protection for all Flash Card inventory held in the Circuit City stores and in the Distribution Centers. Price protection meant that Circuit City could claim a credit against its open account payable in the event PNY needed to lower the price to meet competitors' pricing. When inventory is turning as planned, generally this is not a problem. But because the inventory wasn't moving at Circuit City's stores due to the lack of advertising, the price protection caused PNY significant losses. PNY has determined that its direct losses associated with the additional price protection caused by the breach of the Flash Card Agreement amount to not less than $1,100,000. See Cohen Declaration at ¶ 16. PNY is also entitled to a return of the Marketing Development Funds, in the amount of $1,750,000 due to Circuit City's failure to place the advertisements as promised for the period April 2007 through October 2008. Id. at ¶ 17. In sum,

7

PNY has incurred direct damages in the amount no less than $4,500,000 as a result of Circuit City's breach of the Flash Card Agreement. See Cohen Declaration at ¶ 18.

15. PNY has, in addition to the losses described above, incurred lost profits as a result of Circuit City's conduct because PNY could have sold the Flash Cards at higher net prices through other channels. PNY believes the lost profits it can prove would be in an amount not less than $3,750,000. See Cohen Declaration at ¶ 19.

16. Moreover, in its Proof of Claim and in the attached State Court Complaint attached to the Trustee's Objection as Exhibit F, PNY stated that it has evidence based on admissions of certain Circuit City senior executives that Circuit City's actions were deliberate and that Circuit City was simply using PNY to extract the Marketing Development Funds from PNY and then return to favoring PNY's competitor SanDisk. See Exhibit F to Trustee's Objection to Claim No. 1723 (State Court Complaint) at ¶¶ 19, 20.

## ARGUMENT

17. The burden of proof for claims filed in bankruptcy cases rests on different parties at different times. Initially, the claimant must allege facts sufficient to support a legal basis for its claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid. See Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir. 1992); see also In re Pan, 209 B.R. 152, 155 (D. Mass. 1997); In re Feinberg, 442 B.R. 215, 220-21 (Bankr. S.D.N.Y. 2010).

18. PNY met its burden by alleging sufficient facts to support its claim for relief, which included a demand for damages based on the Debtors' pre-petition breach of the Flash Card Agreement. That is all PNY needed to do to establish the prima facie validity of Claim No. 1723. The Trustee's lament -- that the allegations are unproven -- rings hollow. The reason the

allegations have not been proven is due to the intervening bankruptcy filed by the Debtors in November 2008. Once the bankruptcy was filed, the automatic stay precluded PNY from proceeding in the prosecution of the State Court Action.

19. Notwithstanding the Trustee's complaint, it is beyond dispute that Claim No. 1723 provided the Trustee with more than sufficient notice of the existence and nature of PNY's claim for relief, provided the factual context for the Debtors' liability, and contained a demand for damages. This information appears in the State Court Complaint which was attached to and incorporated by reference in Claim No. 1723.

20. Thus, the Trustee can not continue to claim that Claim No 1723 should be disallowed on his bald assertion of a "books and records" objection. In order to defeat PNY's claim the Trustee must now come forward with sufficient evidence to defeat the allegations in the claim. See In re Holm, 931 F.2d 620, 623 (9th Cir. 1991). The Trustee has failed to do so.

21. It is settled law that once a claimant establishes the prima facie validity of its proof of claim, the burden shifts to the objector to produce evidence sufficient to contest the validity of the prima facie claim. Allegheny Int'l, at 173. The objector must provide credible evidence that negates as least one of the allegations necessary for the claim's legal sufficiency. Id. In order to defeat a prima facie claim the objector must offer evidence to defeat the claim which has the same probative weight as the allegations contained in the proof of claim. In re Holm, 931 F.2d at 623.

22. The Trustee has failed to meet his burden in his Objection to Claim No. 1723. The Trustee has not come forward with any evidence that disputes or challenges the sufficiency of the allegations contained in Claim No. 1723. The Trustee does not dispute the existence of the Flash Card Agreement, offers no evidence that would negate the legal sufficiency of the

9

allegations contained in the State Court Complaint relating to the breach of the Flash Card Agreement by Circuit City, and has not offered any defense to the claims asserted by PNY in the State Court Complaint.

23. Instead, the Trustee claims that the State Court Complaint does not provide sufficient information for the Trustee to analyze the liability alleged, or alternatively that the Complaint does not supply sufficient information as to the damages incurred by PNY as a result of the Debtors' breach of the Flash Card Agreement.  See Objection at 31, 32.  Yet, the Trustee does not offer any information to the Court as to what investigation he undertook or what analysis he performed concerning the allegations in the State Court Complaint.

24. It seems that the Trustee believes that once he lodges a naked objection to a claim the burden immediately shifts to a claimant to prove the validity of its claim by a preponderance of the evidence.  That is simply not how the burden shifting scheme under section 502(a) works.  Before the burden shifts to the claimant, the objector must produce some evidence sufficient to contest the prima facie validity of the claim. See Allegheny Int'l, 954 F.2d 173 (explaining when and how the burdens shift between the parties under section 502(a)); see also Mulvania v. I.R.S., 214 B.R. 1, 5-6 (9th Cir. BAP 1997).  The Trustee has failed to meet his burden in this contested matter.

25. Despite the infirmities in the Trustee's Objection and to remove any doubt as to the validity of Claim 1723, PNY has submitted the Cohen Declaration as further evidence in support of Claim No. 1723.  In the Declaration, Mr. Cohen, the President and Chief Executive Officer for PNY, explains the circumstances leading to Product Addendum 2671, the Debtors breach of the Agreement and the damages PNY incurred as a result of the breach.

10

26.     Finally, as explained above, the Trustee is simply mistaken that paragraph 5(e) or paragraphs 7(c) or (d) of the Master Dealer Agreement bar PNY's right to seek compensatory, incidental, or consequential damages, or damages resulting from PNY's lost profits. Those terms of the Master Dealer Agreement simply do not apply to the damages sought by PNY in Claim No. 1723.

WHEREFORE, Claimant PNY Technologies, Inc. respectfully requests that the Court overrule the Trustee's Objection as it relates to the Claim No. 1723 and grant such other and further relief as this Court deems just and proper.

PNY TECHNOLOGIES, INC.

By: /s/ Neil E. McCullagh
     Counsel

Robert H. Chappell, III, Esquire (VSB #31698)
Neil E. McCullagh, Esquire (VSB #39027)
Erin E. Kessel, Esquire (VSB #65360)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Phone:  (804) 697-2000
Fax: (804) 697-2100

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Counsel for PNY Technologies, Inc.

11

ME1 13673672v.3

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 26, 2012, a copy of the foregoing Response was served on the following, constituting all necessary parties, by the means indicated:

By Email (to pberan@tb-lawfirm.com and ltavenner@tb-lawfirm.com) and by Hand to:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, VA 23219

By Email (to Robert.B.Van.Arsdale@usdoj.gov ) and by Hand to:

Robert B. Van Arsdale, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

                                        /s/ Neil E. McCullagh