**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | : |
| | : |
| | : Case No. 08-35653 |
| | : |
| | : Chapter 11 |
| CIRCUIT CITY STORES, INC., et al.[1], | : |
| | : |
| Debtors. | : **Jointly Administered** |
| | : |
| | : |

**DECLARATION OF GADI COHEN, PURSUANT TO 28 U.S.C. §1746,**
**IN SUPPORT OF PNY TECHNOLOGIES, INC.'s CLAIM NO. 1723**

**GADI COHEN**, of full age, hereby certifies and states as follows:

1.        I am President and Chief Executive Officer of PNY Technologies, Inc. ("PNY").

From my review of the files and my personal involvement in this matter, I am fully familiar with

the facts set forth herein and am authorized to make this Declaration in support of PNY's Claim

No. 1723, filed in these bankruptcy proceedings seeking damages against Circuit City Stores

("Circuit City" or the "Debtors"), for breach of a pre-petition agreement concerning PNY Flash

Cards entered into with the Debtor in August 2006 (the "Flash Card Agreement").

2.        In or about March 2006, PNY and the Debtors commenced negotiations with the

intent of entering into a longer term contract concerning the sale of the PNY Flash Cards. In July

2006, the Debtors presented PNY with a Term Sheet. A true and correct copy of the Term Sheet

is attached hereto as Exhibit A. The parties contemplated a term of twenty-four months for the

---

[1] The Debtors are as follows:  Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., PRAHS, INC., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

new agreement, with automatic renewals for like periods unless either party gave notice of termination.

3.      Pursuant to the Term Sheet, the parties agreed that Circuit City would buy, advertise and resell to its retail customers PNY Flash Card products, and represented and agreed, among other things, to run a minimum of two advertising placements per month for PNY Flash Card products during the term of any new Flash Card Agreement.  Sales volume at retail is determined based on the frequency of print advertisements, among other things; therefore, the promise to provide the print ads was an important inducement for PNY to enter into the Flash Card Agreement.  PNY also understood that Circuit City would devote 50% of its advertisements for Flash Card products to promote PNY's products.

4.      In consideration of Circuit City's promises and representations made during the negotiations for the new Flash Card Agreement, and in reliance thereon, PNY agreed to pay to Circuit City an advance called "Marketing Development Funds" of one million eight hundred thousand dollars, payable in two installments of nine hundred thousand dollars each in November, 2006 and February, 2007.  The Marketing Development Funds were consideration for Circuit City's promises to place at least two (2) ad placements per month for PNY's Flash Cards, as reflected in the Term Sheet.

5.      In further consideration of Circuit City's promises and representations made during the negotiations for the New Flash Card Agreement, and reliance thereon, PNY also agreed to provide Circuit City additional marketing development funds, price and margin protection, allowances, rebates, price protection, and point-of-sale (POS) allowances, all of which constituted substantial discounts off of the price of PNY Flash Cards and/or cash

payments to Circuit City relating to the contemplated sales of the PNY Flash Card products in return for the contemplated ad placements for PNY's Flash Cards as reflected in the Term Sheet.

6.      The parties contemplated that a rollout under a new agreement would take place in or about October 2006.  This additional roll-out timeline is reflected on page 2 of the Term Sheet.  The parties needed to allow time for SKU set-up and assignment for the PNY Flash Cards, inventory build-up by Circuit City, and time for PNY's Flash Cards to reach the Circuit City stores after receipt by the Circuit City Distribution Centers.

7.      On or about August 8, 2006, PNY and Circuit City entered into a Flash Card Agreement.  A true and correct copy of the Flash Card Agreement is attached hereto as Exhibit B.  The Flash Card Agreement had a term of twenty-four months, with automatic renewals for like periods unless either party gave notice of termination.  See Exhibit B ¶ 10.

8.      Paragraph 3 of the Flash Card Agreement reflects the Marketing Development Funds referenced above.  The advance was increased to two million dollars, payable in two installments of one million dollars each in November, 2006 and February, 2007 in consideration for Circuit City's promises and representations to advertise PNY's Flash Card products at least twice per month for the duration of the Flash Card Agreement.  PNY paid those amounts to Circuit City on time and in accordance with the Flash Card Agreement.

9.      The Flash Card Agreement also contains a "Stock Balancing" provision which enabled Circuit City to return any overstock of the Flash Card products for 100% of the net price paid in accordance with Circuit City's return policies.  If Flash Cards were returned by Circuit City due to any overstock of product, Circuit City could reduce its account balance with PNY dollar-for-dollar at 100% of the net price paid by Circuit City for PNY's products.  See Exhibit B

at ¶ 7. Therefore PNY had the risk of return if the volume of sales of Flash Cards through Circuit City was less than the amounts Circuit City ordered.

10.    Circuit City materially breached the Flash Card Agreement in April 2007 by reneging on its promises to devote 50% of its advertising to PNY's Flash Cards. Attached hereto as Exhibit C, is a true and correct summary of the Circuit City ad placements for Flash Cards for 2007 (the "2007 Ad Summary"). As the chart shows Circuit City placed two-hundred fifteen (215) ads for Flash Cards in 2007. Of those 215 advertisements, only forty (40) advertisements were for PNY Flash Card Products. The remaining 175 ads were placed on behalf of Sandisk. Said differently, only 19% of the ad placements for Flash Cards were devoted to PNY Flash Cards in 2007, not the 50% promised by Circuit City.

11.    The 2007 Ad Summary also shows that Circuit City failed to run a minimum of two ads per month for PNY's Flash Cards for the months of July, October, November and December 2007. The holiday shopping months of November and December are especially important months for ad placements because of the heavier volume of retail shoppers in that period.

12.    Circuit City's breach of the Flash Card Agreement continued into 2008. Attached hereto as Exhibit D is a true and correct summary of the Circuit City ad placements for Flash Cards for 2008 (the "2008 Ad Summary"). Circuit City did not place a single ad for PNY's Flash Cards in 2008, despite the minimum requirement of two ads per month under the Flash Card Agreement. Instead, Circuit City ran Flash Card ads for the benefit of Sandisk in that calendar year.

13.    Circuit City's breach of the Flash Card Agreement damaged PNY. Attached

4

hereto as <u>Exhibit E,</u> is a true and correct copy of PNY's sell-through report for Flash Cards for the period September 2006 through January 2009 ("Sell-Through Report").  The Sell-Through Report demonstrates the dramatic and precipitous drop in sales for PNY Flash Cards between early 2007 when Circuit City did some advertising and late 2007, when Circuit City did little advertising of PNY Flash Cards and 2008 when Circuit City did no advertising for the PNY Flash Cards.  In 2007, Circuit City sold 448,575 PNY Flash Cards.  In 2008, when Circuit City ran no ads for the PNY Flash Cards sales dropped to 111,114 units.  In sum, PNY lost more than 75% of its year-to-year sales volume in Flash Cards because of Circuit City's breach of the Flash Card Agreement.

14.    Because of the dramatic drop in sell-through numbers PNY was forced to expend additional funds on back-end funding to support its Flash Card products at the Circuit City stores.  Back-end funding consists of price protection, point-of-sale rebates and discounts vendors must pay retailers to turn inventory at the retail outlets.  Because Circuit City breached the Flash Card Agreement and did not advertise as promised, the value of PNY's inventory began to erode.

15.    In order to move inventory at the stores, PNY was forced to discount its Flash Card products through point-of-sale programs in which PNY guaranteed Circuit City a certain fixed margin on the sale of the Flash Cards, even though the product was being discounted by PNY.  For example, if a PNY product was priced at $10.00 retail and Circuit City's cost was $9.00 to purchase the product, then a sale at the $10.00 retail price netted Circuit City an 11% margin.  However, if PNY had to run a point-of-sale in-store promotion to sell its Flash Cards and Circuit City lowered the retail price to $8.00 in-store to turn inventory, then Circuit City had a right to a credit of $2.00 on its open accounts payable with PNY for every unit sold during the

promotion to protect Circuit City's margin. The need for the additional point-of-sale promotions was directly caused by the lack of advertising of the PNY Flash Cards. PNY has determined that the losses associated with the additional point-of-sale support necessary to turn the inventory in the Circuit City's stores amounts to not less than $1,650,000.

16.     Likewise, PNY suffered further damages caused by the failure of Circuit City to advertise as promised. Under the Flash Card Agreement PNY had to guarantee Circuit City price protection for all Flash Card inventory held in the Circuit City stores and in the Distribution Centers. Price protection meant that Circuit City could claim a credit against its open account payable in the event PNY needed to lower the price to meet competitors' pricing. When inventory is turning as planned, generally this is not a problem. But because the inventory wasn't moving at Circuit City's stores because of the lack of advertising, the price protection caused PNY significant losses. PNY has determined that the direct losses associated with the additional price protection caused by the breach of the Flash Card Agreement amount to not less than $1,100,000.

17.     PNY further submits that it is entitled to return of the Marketing Development Funds, in the amount of $1,750,000 due to Circuit City's failure to place the advertisements as promised for the period April 2007 through October 2008.

18.     In sum, PNY has incurred direct damages in the amount no less than $4,500,000 as a result of Circuit City's breach of the Flash Card Agreement.

19.     PNY has in addition incurred lost profits as a result of Circuit City's conduct because PNY could have sold the Flash Cards at higher net prices through other channels. PNY believes the lost profits it can prove would be in an amount not less than $3,750,000.

20.     PNY has evidence based on admissions of Circuit City executives that Circuit City's actions were deliberate and that Circuit City was using PNY to extract the Marketing Development Funds from PNY and then return to favoring PNY's competitor SanDisk. See Exhibit F to Trustee's Objection to Claim No. 1723 (State Court Complaint) at ¶¶ 19, 20.

I certify under penalty of perjury under the laws of the United States that the foregoing statements made by me are true and correct.

Dated: June 25, 2012
Parsippany, New Jersey

_____
Gadi Cohen

ME1 13671057v.3



## CC / PNY Term Sheet

**Length** – 2 years.

**Termination -** Either party can terminate the agreement upon 30 days written notice, after the first full calendar year.

**Ad placement** – Minimum 2 ad placements per month.

**Payment terms** – Net 90 days

**MDF fixed payments** - $900K per quarter for the 1st 2 quarters.
 1st payment =  November 1, 2006
 2nd payment  = February 1, 2007

 (Automatically deducted from PNY's A/P balance)

**MDF accrual payments** = 9% per month for net cost purchases sell – through. Beginning  April 1, 2007.

| Quarter | Payment due date |
| --- | --- |
| 4/2007 – 6/2007 | 7/1/2007 |
| 7/2007 – 9/2007 | 10/1/2007 |
| 10/2007 – 12/2007 | 1/1/2008 |
| 1/2008 – 3/2008 | 4/1/2008 |
| 4/2008 – 6/2008 | 7/1/2008 |
| 7/2008 – 9/2008 | 10/1/2008 |

 (Automatically deducted from PNY's A/P balance)

**Price protection** – Price protection will be given to CC on all: on-hand, in transit, and on order goods at time of price move by the market share leader according to NPD.

**Stock balance returns** – When mutually agreed to by both parties.


EXHIBIT
A

## Roll-out Time Line

| Week of | Action |
| --- | --- |
| 7/16 | New items set-up |
| 7/16 | PNY to send (2) samples of each new sku |
| 7/23 | New items sent to CC's photo studio for images |
| 7/30 | Initial forecast sent to PNY |
| 9/3 | Orders placed by CC, sent to PNY |
| 9/10 | Products ship from PNY to CC |
| 9/17 | Product receipt in CC's DC |
| 9/24 | Product ships to CC stores |
| 10/1 | October POG release |
| 10/1 | PNY launches on CC.com |
| 10/8 | 1st ad |

## PRODUCT ADDENDUM [#2671]

This Addendum is entered into as of the Effective Date: 08/08/2006 (the "Effective Date") between Circuit City Stores, Inc. ("Circuit City") and PNY TECHNOLOGIES INC ("Vendor") to set forth certain terms of sale to Circuit City by Vendor of the Products referenced in the attached Product Exhibit.

1.   **PAYMENT TERMS.**
(a)      The price for each Product sold under this Product Addendum is set forth on the Product Exhibit. The Parties may add additional Products to this Addendum or amend the Product Exhibit for existing Products under this Addendum via an additional Product Exhibit referencing this Addendum. Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price in effect at the time of the receipt of the Products at a Circuit City location. Any listing of suggested retail prices is for point of reference only. This is not an agreement to sell the Products at a certain price, and Circuit City reserves the right, in its sole discretion, to establish the price at which it will sell the Products.

(b)      Payment terms are Net 90 days: Receipt Of Goods. Payment will be made by check in U.S. dollars. Payment terms discounts are: 1.0% in 60 days. All discounts are considered to be earned by Circuit City at the time of payment and will not be repayable as a result of Product returns for any reason.

2.   **FREIGHT.**
Unless otherwise set forth by Circuit City in a Purchase Order, freight will be FOB Destination Freight Prepaid. The destination will be set forth in the applicable Purchase Order. Vendor will reimburse Circuit City for charges incurred by Circuit City associated with shipments not in accordance with the terms stated herein.

3.   **FUNDING ALLOWANCES.**
(a)      For the period from the Effective Date of this Agreement until February 1, 2007, Vendor will provide marketing funding to Circuit City in the amount of $2,000,000.00 as payment of the "Key City" fund. Such amount will be collected via chargeback deducted from Circuit City's accounts payable balance on the following schedule: $1,000,000.00 on 11/01/2006, and $1,000,000.00 on 02/01/2007.

(b)      After April 1, 2007, and for the remainder of the term of this Product Addendum, Vendor shall provide Circuit City with marketing funding equal to 5.00% of the gross invoice price of all purchases less returns of Product , price protection, POS rebates, price variances, and short shipments hereunder ("Marketing Development Funds" or "MDF"). MDF will be accrued by Circuit City's Advertising Accounting department and paid by Vendor to Circuit City in the form of a billback issued quarterly in arrears beginning 7/1/2007.

(c)      In the event funding allowances create a debit balance, such amounts will be payable in accordance with the terms of the agreement.

4.   **PRICE INCREASE TIMING.**
Except as otherwise stated herein, the price for all Products purchased hereunder shall be the lower of the price in effect at the time of the actual receipt of the Products at a Circuit City location or the lowest price in effect during the shipment or receipt window (as applicable) as set forth in Circuit City's Purchase Order.

5.   **PRICE PROTECTION.**
In the event that Vendor lowers its price for the Products, price protection will be provided to Circuit City for all Products in inventory or in transit to Circuit City at the time of the price reduction. Price protection for Products in inventory will be taken as a reduction of Circuit City's account balance with Vendor, calculated based on the difference between the original invoice price paid by Circuit City and the lower price announced by Vendor. Price protection for Products in transit will be taken at the time payment is due on the Vendor's original invoice, calculated based on the difference between the original invoice price and lower price announced by Vendor while the Product was en route. In the event price protection for Products in inventory creates a debit balance, such amounts will be payable in accordance with the terms of the Master Dealer Agreement.

6.   **RETURNS OF NONCONFORMING PRODUCTS; PRODUCT RECALLS.**
In addition to any other rights it may have at law or in equity, Circuit City may refuse and/or return, at Vendor's expense, any Products which are (i) goods that are nonconforming with the applicable Purchase Order or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City, (ii) shipped in excess of or not covered by the Purchase Order, or (iii) not shipped in standard packaging or containers (collectively, "Refused Products"). Circuit City also has the right to refuse and/or return, at Vendor's expense, any Products subject to a Product recall ("Recalled Products"). If Circuit City has made payment to Vendor for the Refused Products or Recalled Products, then, at Circuit City's option, Vendor will credit or refund such payments to Circuit City promptly upon Vendor's receipt of the Refused Products or Recalled Products, or Circuit City's notice of refusal, whichever occurs first. In the event a refusal or return of Refused Products or Recalled Products creates a debit balance, such amounts will be payable via check within 30 days of notification.

7.   **STOCK BALANCING.**
Vendor will provide Circuit City, on a case by case basis, as mutually agreed to in writing by both parties the ability to return any overstock of product for 100% of the net price paid ("Stock Balancing Returns"). This stock balancing

EXHIBIT

tablos*

B

will be taken as a reduction of Circuit City's account balance with Vendor and in accordance with Circuit City's return policies. In the event stock balancing returns creates a debit balance, such amounts will be payable via check within 30 days of notification.

8.      **CUSTOMER RETURNS**.

Circuit City may return to Vendor any Product returned by a Customer in accordance with Circuit City's return policies as they may exist from time to time ("Customer Returns"). All Customer Returns will be at Vendor's expense. Customer Returns will be accepted by Vendor for at least 12 months after the Product is discontinued. Discontinuation will mean the date of Circuit City's receipt of the last shipment of the Product. All return shipments will be sent FOB Origin, Freight Pre-paid. Except as otherwise set forth below Customer Return amounts will be deducted from Circuit City's Vendor accounts payable balance based on 100% of the invoice price paid for such Customer Returns. In the event Customer Returns result in a debit balance, such amounts will be payable via check within 30 days of notification.

9.      **PROCEDURES FOR RETURNS**.

All Products returned to Vendor for any reason including but not limited to Customer Returns, Stock Balancing Returns, Refused Products, Recalled Products or returns on termination will be returned in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. Return authorizations will be required, however, Vendor will, upon request by Circuit City, provide a blanket authorization for the same. Without limiting the generality of the foregoing, Returned Products will be packed by Circuit City to avoid damage in transit, but the Returned Products original packaging is not required. No deduction or credit memo will be taken by Vendor for any missing parts, unless otherwise specifically agreed by the parties. In the event the return of any Returned Products creates a debit balance, such amounts will be payable via check within 30 days of notification.

10.     **TERM AND TERMINATION**.

This Product Addendum will commence on the Effective Date and will continue until the earlier of (i) a period of 24 months, which term will automatically renew for like periods unless either party terminates this Product Addendum by giving notice to the other party at least 90 days prior to the end of the initial or any renewal term of this Product Addendum; (ii) termination by either party with or without cause upon not less than 90 days notice to the other party.

**CIRCUIT CITY STORES, INC.**

By:

Name:
Title:

Date:        8/20/06

**PNY TECHNOLOGIES, INC.:**

Name: <u>Anthony Gomez</u>

Title: <u>VP Sales & Marketing</u>

Date:        5/25/06

**2007 Ad Summary**





EXHIBIT

| Category | Brand | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | % of Skus on Ad |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Flash Drives | PNY | 2 | 0 | 2 | 2 | 1 | 1 | 1 | 2 | 5 | 0 | 5 | 2 | 23 | 14% |
| | Sandisk | 5 | 6 | 4 | 7 | 3 | 3 | 7 | 3 | 7 | 6 | 5 | 5 | 61 | 37% |
| | Kingston | 3 | 3 | 7 | 4 | 3 | 5 | 4 | 3 | 3 | 0 | 1 | 3 | 39 | 24% |
| | Sony | 0 | 3 | 0 | 3 | 1 | 4 | 5 | 7 | 4 | 6 | 3 | 6 | 42 | 25% |
| | | 10 | 12 | 13 | 16 | 8 | 13 | 17 | 15 | 19 | 12 | 14 | 16 | 165 | |
| SD | PNY | 3 | 7 | 5 | 3 | 3 | 3 | 0 | 5 | 8 | 0 | 1 | 2 | 40 | 29% |
| | Sandisk | 2 | 8 | 4 | 9 | 5 | 7 | 12 | 6 | 9 | 11 | 12 | 11 | 96 | 71% |
| | | 5 | 15 | 9 | 12 | 8 | 10 | 12 | 11 | 17 | 11 | 13 | 13 | 136 | |
| MicroSD | PNY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% |
| | Sandisk | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 100% |
| | | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | |
| CF | PNY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% |
| | Sandisk | 2 | 5 | 5 | 9 | 4 | 8 | 10 | 9 | 6 | 7 | 7 | 4 | 76 | 100% |
| | | 2 | 5 | 5 | 9 | 4 | 8 | 10 | 9 | 6 | 7 | 7 | 4 | 76 | |
| | | 17 | 32 | 27 | 37 | 22 | 31 | 39 | 35 | 42 | 30 | 34 | 34 | 380 | |

| Total Summary 2007 | | |
|---|---|---|
| Flash Drives | PNY | 23 |
| | Sandisk | 61 |
| | Kingston | 39 |
| | Sony | 42 |

| SD | PNY | 40 |
|---|---|---|
| | Sandisk | 96 |

| MicroSD | PNY | 0 |
|---|---|---|
| | Sandisk | 3 |

| CF | PNY | 0 |
|---|---|---|
| | Sandisk | 76 |

| TOTAL SKUS ON AD | | |
|---|---|---|
| PNY | 63 | 17% |
| Sandisk | 236 | 62% |
| Kingston | 39 | 10% |
| Sony | 42 | 11% |
| Total | 380 | |

**2008 Ad Summary**





| Category | Brand | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | % of Skus on Ad |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Flash Drives | PNY | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 5 | 3 | 0 | 0 | | 30 | 19% |
| | Sandisk | 5 | 5 | 6 | 3 | 8 | 9 | 4 | 6 | 4 | 3 | 1 | | 54 | 34% |
| | Kingston | 5 | 3 | 7 | 5 | 3 | 4 | 3 | 7 | 4 | 2 | 1 | | 44 | 28% |
| | Sony | 4 | 4 | 4 | 4 | 1 | 4 | 6 | 1 | 1 | 1 | 0 | | 30 | 19% |
| | | 18 | 15 | 20 | 15 | 15 | 20 | 16 | 19 | 12 | 6 | 2 | 0 | 158 | |
| SD | PNY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0% |
| | Sandisk | 10 | 12 | 16 | 14 | 15 | 14 | 11 | 11 | 11 | 6 | 3 | | 123 | 100% |
| | | 10 | 12 | 16 | 14 | 15 | 14 | 11 | 11 | 11 | 6 | 3 | 0 | 123 | |
| MicroSD | PNY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0% |
| | Sandisk | 0 | 0 | 2 | 0 | 0 | 0 | 4 | 0 | 4 | 2 | 0 | | 12 | 100% |
| | | 0 | 0 | 2 | 0 | 0 | 0 | 4 | 0 | 4 | 2 | 0 | 0 | 12 | |
| CF | PNY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0% |
| | Sandisk | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 10 | 6 | 3 | 2 | | 29 | 100% |
| | | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 10 | 6 | 3 | 2 | 0 | 29 | |
| | | 28 | 27 | 38 | 29 | 30 | 34 | 39 | 40 | 33 | 17 | 7 | 0 | 322 | |

| Total Summary 2007 | | |
|---|---|---|
| Flash Drives | PNY | 30 |
| | Sandisk | 54 |
| | Kingston | 44 |
| | Sony | 30 |
| SD | PNY | 0 |
| | Sandisk | 123 |
| MicroSD | PNY | 0 |
| | Sandisk | 12 |
| CF | PNY | 0 |
| | Sandisk | 29 |

| TOTAL SKUS ON AD | | |
|---|---|---|
| PNY | 30 | 9% |
| Sandisk | 218 | 68% |
| Kingston | 44 | 14% |
| Sony | 30 | 9% |
| Total | 322 | |

EXHIBIT



| Sum of Sell-Thru | Column Labels | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Row Labels | Aug-06 | Sep-06 | Oct-06 | Nov-06 | Dec-06 | Jan-07 | Feb-07 | Mar-07 | Apr-07 | May-07 | Jun-07 | Jul-07 | Aug-07 | Sep-07 | Oct-07 | Nov-07 | Dec-07 | Jan-08 | Feb-08 |
| Flash Cards | | | 12522 | 65119 | 151217 | 33366 | 33368 | 48175 | 45665 | 41706 | 22486 | 41321 | 34347 | 33529 | 11744 | 38691 | 64177 | 17849 | 5967 |
| Flash Drives | 831 | 10240 | 6379 | 7950 | 13654 | 5051 | 6015 | 18714 | 6321 | 7292 | 4497 | 7565 | 12739 | 11466 | 6492 | 13448 | 15812 | 17956 | 16428 |
| **Grand Total** | **831** | **10240** | **18901** | **73069** | **164871** | **38417** | **39383** | **66889** | **51986** | **48998** | **26983** | **48886** | **47086** | **44995** | **18236** | **52139** | **79989** | **35805** | **22395** |
| | | 10240 | 18901 | 73069 | 164871 | 38417 | 39383 | 66889 | 51986 | 48998 | 26983 | 48886 | 47086 | 44995 | 18236 | 52139 | 79989 | 35805 | 22395 |

| Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 | Dec-08 | Jan-09 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10740 | 8265 | 9260 | 8238 | 5336 | 9266 | 4228 | 2553 | 19642 | 9770 | 1865 | 790412 |
| 7814 | 10729 | 11464 | 9075 | 13875 | 27198 | 13115 | 10099 | 8129 | 1448 | 976 | 302772 |
| **18554** | **18994** | **20724** | **17313** | **19211** | **36464** | **17343** | **12652** | **27771** | **11218** | **2841** | **1093184** |
| 18554 | 18994 | 20724 | 17313 | 19211 | 36464 | 17343 | 12652 | 27771 | 11218 | 2841 | 1093184 |