# LEASE AGREEMENT

This lease agreement ("Lease") is between Mallview Plaza Company, Ltd., an Ohio limited liability company ("Landlord") having an address at c/o Carnegie Management and Development Corporation, 27500 Detroit Road, Suite 300, Westlake, Ohio 44145 and CDI Media Group, LLC, an Ohio limited liability group ("Tenant"), having an address at 34675 Melinz Parkway, Unit 104A, Eastlake, Ohio 44095. Hereinafter, Mallview Plaza Company, Ltd. and CDI Media Group, LLC shall be referred to as "the Parties."

## WITNESSETH:

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Premises</u>:  Landlord hereby leases to Tenant and Tenant hereby leases from Landlord that certain space having an area of approximately 26,435 square feet, located at 2190 West 4th Street, Mansfield, Ohio 44905 ("Premises") located in the Mallview Plaza Shopping Center ("Shopping Center") as more particularly described on the floor plan attached hereto and incorporated herein and marked as Exhibit "A."

2.    <u>Term</u>:  The term of this lease shall commence upon the execution of the Lease by both parties and shall expire at midnight on May 9, 2011 ("Term").

3.    <u>Use</u>:  Tenant shall use the Premises exclusively for a retail store selling electronic and computer equipment on April 29th, April 30th, May 1st, May 6th, May 7th and May 8th during the Term of this Lease.  Tenant's hours of operation on these dates shall not commence earlier than 9:00 a.m. and shall not extend beyond 9:00 p.m.  Tenant shall not do or permit anything to be done in or about the Premises, nor shall Tenant bring or keep anything therein which is not within the permitted use of the Premises and which will increase the existing rate of or affect any fire or other insurance upon the Shopping Center or any of its contents, or cause a cancellation of any insurance policy covering said Shopping Center or any part thereof.  Tenant shall not do or permit anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other tenants or occupants of the Shopping Center or injure or annoy other tenants or occupants of the Shopping Center, or allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose; nor shall Tenant cause, maintain or permit any nuisance in, on, or about the Premises.  A copy of the Shopping Center Rules and Regulations are attached hereto and incorporated herein and marked as Exhibit "B." Tenant shall not use the Premises, or permit anything to de done in or about the Premises which will in any way conflict with or violate any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated. Tenant shall bear all expenses to comply with all laws, statutes, ordinances, or governmental rules or regulations.  Any such violation of this provision by Tenant, its agents, servants, employees, invitees, or guests shall be deemed to be a default by the

*Landlord's initials* _____     *Tenant's initials* _____

Tenant and in addition, may result in termination of the Lease at Landlord's option. Tenant shall have the right to enter the Premises only upon full execution of this Lease and upon Landlord's receipt of evidence of Tenant's insurance as set forth in Paragraph 12 herein. Landlord makes no representation that the Premises may be used for their intended purposes. Tenant further agrees not to violate any other tenant exclusives in the Shopping Center, a copy of which is attached hereto and incorporated herein and marked as Exhibit "C."

Provided Tenant is not default of any of the terms or conditions set forth in this Lease at the expiration of the Term of the Lease, Tenant shall have one (1) two (2) week Option to extend the Term of the Lease. Tenant must notify Landlord one week in advance, in writing, of its election to exercise the Option to extend the Term of the Lease. Within 48 hours of exercise of the Option, Tenant shall deposit an additional One Thousand Dollar utility deposit under the same terms and conditions stated in Section 6 of this Lease.

4.   Rent:  Tenant hereby agrees to pay Landlord as rent for the Premises the sum of Four Thousand and 00\100 Dollars ($4,000.00), which is Two Thousand and 00/100 ($2,000.00) per week ("Rent"). The Rent shall be paid in full and is due upon execution of this Lease and prior to Tenant's entry into the Premises. Upon termination or expiration of the Lease, Tenant shall remove all Personal Property from the Premises. In the event Tenant fails to remove all Personal Property, Landlord, in its sole discretion may deem said items to:  (i) be classified as abandoned and, upon such classification, shall become Landlord's property; or (ii) shall be classified as Tenant's property and Tenant shall pay or reimburse Landlord for the removal and storage of said personalty. Rent for the Option shall be Four Thousand and 00/100 Dollars ($4,000.00) payable when Tenant exercises its Option.

5.   Security Deposit:  Intentionally deleted.

6.   Utilities:  Tenant shall be responsible for payment of all utilities used in the Premises during the term of the Lease, including electricity, water, sewer and gas. Prior to Tenant's occupancy of the Premises, Tenant shall deposit with the Landlord a One Thousand and 00/100 Dollar ($1,000.00) utility deposit. Landlord will take actual readings of the meters prior to Tenant taking Possession and immediately following Tenant's vacating the Premises. If the utility charges are less than the utility deposit, Landlord shall refund the difference. It the Utility Charges are more than the Utility Deposit, Tenant shall immediately pay any overage due to Landlord.

7.   Tenant's Work:  Landlord shall do no work in connection with the Premises, in that the Tenant is leasing the Premises in its "AS-IS" and "WHERE-IS" condition. Tenant is responsible for all work necessary for Tenant to occupy the Premises, which shall include cleaning and erecting temporary walls in the Premises. Tenant will be permitted to install its fixtures and any temporary/grid/peg wall that are deemed necessary to assure security in the Premises, provided same shall be removed by Tenant at the end of the Lease Term and all damage to the Premises caused by the removal of same shall be repaired by Tenant at Tenant's sole cost and expense. The

Landlord's initials _____   Tenant's initials _IG-A_

Premises shall be returned to the Landlord in the same condition or better than that at the commencement of the Lease Term.  Tenant shall also be responsible for restoring any damage to the common areas created by its tenancy.

8.  <u>Landlord Maintenance and Repairs</u>:  Tenant agrees to lease the Premises in its "**AS-IS**" and "**WHERE-IS**" condition, with all faults.  Landlord shall not be required or obligated to make any repairs during the Term.

9.  <u>Tenant Maintenance and Repairs</u>:  Tenant shall be responsible, at Tenant's sole cost and expense, for all maintenance and repair of the Premises, including, but not limited to, the maintenance and repair of the HVAC system, the storefront, the interior walls of the Premises, and the electrical and plumbing systems located within the Premises. Tenant shall not make any alterations in the Premises without the prior written consent of Landlord.

10.  <u>Assignment and Subletting</u>:  Tenant shall not be permitted to assign or sublease any part of the Premises during the Lease Term.

11.  <u>Signage:</u>  Tenant shall be permitted to install a "banner" above the entrance of the Premises subject to Landlord's prior written approval.  The banner shall only be installed during the Lease Term and shall be professionally prepared and shall be removed upon the expiration of the Lease.  The banner may be installed over the Landlord's existing "For Lease" banner, however upon expiration of the term and removal of Tenant's banner the Landlord banner must remain in place in the same condition as prior to Tenant's banner installation.  Upon expiration of the Term of this Lease, Tenant shall repair any and all damage caused by the installation and removal of the signage.

12.  <u>Insurance:</u>   Tenant shall, at Tenant's sole cost and expense, obtain and keep in force during the Term of this Lease, a policy of comprehensive public liability insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto.  Such insurance shall be in the amount of not less than $1,000,000.00 for injury, death or property damage per occurrence and in the amount of not less than $2,000,000.00 for injury, death or property damages as an aggregate.  The limit of any such insurance shall not, however, limit the liability of the Tenant hereunder.  Tenant may provide this insurance under a blanket policy, provided that said insurance shall have an aggregate per location endorsement.  If Tenant shall fail to procure and maintain said insurance, Landlord may, but shall not be required to, procure and maintain same, at the sole expense of Tenant.  Insurance required hereunder shall be in companies rated A:XII or better in "Best's Key Rating Guide", or as reasonably consented to in writing by Landlord. Tenant shall advise Landlord from time to time as to the name of its Insurance Carrier and its Insurance Broker. If the Premises contain plate glass, storefront and/or interior, if applicable, Tenant shall carry plate glass insurance. If the Tenant fails to insure the leased Premises as stated in this Article 12 herein and a claim occurs, then the Tenant

Landlord's initials _____   Tenant's initials _IGA_

unconditionally indemnifies Landlord for all damages and claims and the Tenant is liable for the entire loss.

Tenant shall deliver to Landlord, prior to right of entry into the Premises, copies of policies of liability insurance required herein or certificates evidencing the existence and amounts of such insurance with loss payable clauses satisfactory to Landlord. No policy shall be cancelable or subject to reduction of coverage upon no less than ten (10) days prior written notice to Landlord. All such policies shall be written as primary policies not contributing with and not in excess of coverage which Landlord may carry and shall name Landlord and Carnegie Management and Development Corporation as additional insureds, as their interests may appear. Tenant shall name Landlord's lender as an additional insured within thirty (30) days of written request by Landlord. At the commencement of occupancy and, thereafter, on Landlord's request, Tenant shall provide Landlord with "evidence" of insurance (i.e., a "certificate" of insurance [ACORD 25 form]) or a copy of the Tenant's insurance policy. All policy renewals shall be sent to Landlord annually. Landlord and Carnegie Management and Development Corporation must be notified in writing within thirty (30) days of any cancellation or change of policy.

13.    Subrogation: As long as their respective insurers so permit and regardless of fault, Landlord and Tenant hereby mutually waive their respective rights of recovery against each other for any loss insured by fire, extended coverage, business interruption or other property insurance policies existing for the benefit of the respective Parties. Loss to Tenant's property shall be submitted by Tenant to Tenant's insurance carrier. Likewise, loss to Landlord's property shall be submitted by Landlord to Landlord's insurance carrier. Each Party shall apply to their insurers to obtain said waivers. Each Party shall obtain any special endorsements, if required by their insurer to evidence compliance with the aforementioned waiver, and shall provide a copy to the other Party.

14.    Hold Harmless:    Tenant shall indemnify and hold harmless Landlord against and from any and all claims arising from Tenant's use of the Premises or from the conduct of its business or from any activity, work or other things done, permitted or suffered by the Tenant in or about the Premises unless Landlord has been adjudicated negligent, reckless, or to have committed any intentional act of misconduct as determined by a court of competent jurisdiction. Tenant shall further indemnify and hold harmless Landlord against and from any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any act, omission of duty or negligence of the Tenant, or any officer, agent, employee, and from all costs, reasonable attorneys' fees and liabilities incurred in or about the defense of any such claim or any action or proceeding brought thereon and in case any action or proceeding be brought against Landlord by reason of such claim, Tenant upon notice from Landlord shall defend the same at Tenant's sole cost and expense. Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons in, upon or about the Premises, from any cause other than Landlord's negligence; and Tenant hereby waives all claims in respect thereof against Landlord. Tenant shall give prompt notice to Landlord in case of

Landlord's initials _____    Tenant's initials _____

casualty or accidents in or around the Premises or common areas.

The Tenant shall reimburse the Landlord's attorneys' fees and expenses both broadly and with specificity (e.g., for actions and proceedings, including appeals, and in-house counsel fees and expenses). The reimbursement obligation should cover attorneys' fees and expenses incurred in connection with: (i) any litigation the Tenant commences against the Landlord, unless the Tenant obtains a final judgment; (ii) the Landlord (or its employees) acting as a witness in any proceeding involving the lease or the Tenant; (iii) reviewing anything that the Tenant asks the Landlord to review or sign; and (iv) bankruptcy proceedings.

Landlord or its agents shall not be liable for any loss or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the building in which the Premises are located or from the pipes, appliances or plumbing works therein or on the roof, street or subsurface or from any other place resulting from dampness or any other cause whatsoever, unless caused by or due to the negligence of Landlord, its agents, servants or employees.

    15.   <u>Tenant's Default</u>:   The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

A.   The failure by Tenant to make any payment of Rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of three (3) days after written notice thereof by Landlord to Tenant. Late charges shall be assessed for Tenant's failure to make payments as required herein equal to ten percent (10%) of all overdue amounts. Tenant agrees that Landlord's monthly invoice shall be considered written notice of Rent or any other payment due. Landlord may, at its sole election, accept a partial payment of Rent or any other required payment hereunder, but any such acceptance shall not serve as or be deemed an agreement to accept a lesser payment or lower rent and shall not cure or nullify the event of default, and further, shall not be construed as an accord and satisfaction.

B.   The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease or any of its Exhibits, notes and loans, to be observed or performed by the Tenant where such failure shall continue for a period of ten (10) days after written notice thereof by Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than ten (10) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commences such within said ten (10) day period and thereafter diligently prosecutes such cure to completion.

    16.   <u>Landlord's Remedies</u>:   In the event of any such default or breach by Tenant, Landlord may elect, in its sole discretion, one or more of the following remedies at any time thereafter, with or without notice or demand and without specifying or offering a cure period, except as expressly set forth herein, and without limiting Landlord

*Landlord's initials* _____    *Tenant's initials* _____

in the exercise of any other right or remedy which Landlord may have by reason of such default or breach:

A.    Assume control of the Premises, enter into the Premises and/or terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Tenant shall immediately surrender and relinquish all rights to possession of the Premises to Landlord. Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to: the balance due under the Lease of all Rent, Utilities, and any additional charges due hereunder; the cost of recovering possession of the Premises; collection charges; costs to change locks and utilities; expenses of reletting, including necessary cleaning, renovation and alteration of the Premises, including advertising and brokers' commissions; reasonable attorneys' fees; the worth at the time of award by the appropriate court of the amount by which the unpaid Rent, Utilities, and other charges called for herein for the balance of the Term. Unpaid installments of Rent or other sums shall bear interest from the date due at the maximum legal rate; or

B.    Maintain Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises. In such event, Landlord shall be entitled to enforce all of Landlord's rights and remedies under this Lease, including the right to recover the Rent, Utilities, and any other charges as may become due hereunder. In the event Tenant has abandoned the Premises, the Landlord reserves the right to enter Premises and make alterations to the Premises in anticipation of reletting the Premises or for any other purpose while still enforcing the right to recover the Rent, Utilities, and any other charges as may become due hereunder.

C.    Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the State in which the Premises are located.

17.    <u>Hazardous Materials</u>: Notwithstanding anything to the contrary set forth herein, Tenant shall not use the leased Premises, the building, or the grounds surrounding the building for the storage or disposal of Hazardous Material or toxic wastes, and Tenant shall indemnify and hold Landlord harmless from any and all claims, demands, liabilities, cost, expenses, penalties, damages and losses, including, without limitation, reasonable attorneys' fees, resulting from the existence of Hazardous Materials on the Premises or discharged from the Premises or penetrating any surface or subsurface rivers or streams crossing or adjoining the Premises or the aquifer underlying the Premises. This indemnity shall survive the termination or expiration of this Lease. Tenant further covenants that Tenant shall not bury, nor inject, nor pour upon the surface or in or upon the land or into any public or private sewer or drainage facility, any Hazardous Material or toxic waste. Hazardous Materials as used in this Lease means any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such under any statute, law, ordinance, rule or regulation of any local, state or federal authority having jurisdiction over the Premises or its use, including but not limited to any

Landlord's initials _____    Tenant's initials _____

material, substance or waste which is: (a) defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. 1317) as amended; (b) defined as a hazardous waste under Section 1004 of the Federal Resource Conservation and Recovery Act (44 U.S.C. 6901, *et. seq.*) as amended; or (c) defined as hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, (42 U.S.C. 9601, *et. seq.*) as amended.

18.    Notice:  All notices and demands which may or are to be required or permitted to be given by either party to the other as stated herein shall be made in writing, and shall be sent Overnight Carrier, addressed as provided below, or to such other place as either party may from time to time designate in a written notice to the other party, except for Rent or other Lease payment invoices from Landlord, which may be sent by ordinary United States' mail only to Tenant at the address stated herein. All notices and demands shall be deemed given at the time the same is deposited with an official United States Post Office, or received and dated by the Overnight Carrier.

Notices shall be sent:

to Landlord at:        Mallview Plaza Company, Ltd.
                       c/o Carnegie Management and
                       Development Corporation
                       27500 Detroit Road, Suite 300
                       Westlake, Ohio 44145
                       (440) 892-6800-telephone
                       (440) 892-6804-facsimile
                       Attn:  Rustom R. Khouri, President


to Tenant at:          CDI Media Group, LLC
                       34675 Melinz Parkway, Unit 104A
                       Eastlake, Ohio  44095
                       Attn:  *Igor Abramovsky*
                       Telephone:  *440 - 870-9314*
                       Facsimile:  *440 - 946-2890*
                       Tax I.D. No.:  *26 - 0872307*

19.    Liability of Landlord:  Notwithstanding anything to the contrary as may be provided throughout this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Landlord, that if Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed and is thereby deemed to be in default and, as a consequence of such default, Tenant recovers a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levy thereon against the right, title, and interest of Landlord in the Shopping Center in which the Premises are located, as the same may then be encumbered, and neither Landlord nor any of its agents, officers, members or shareholders shall be liable for any deficiency. The Landlord's responsibilities under the Lease are limited to those expressly set forth herein and there are no implied covenants, representations or

Landlord's initials _____        Tenant's initials _____

warranties of the Landlord other than those expressly stated herein. It is understood that in no event shall Tenant or its successors or assigns have: (i) any claim against any affiliate, partner, member, manager, officer, director, employee or agent of Landlord; (ii) any right to levy execution against any property of Landlord other than its interest in the Shopping Center in which the Premises are located as hereinbefore expressly provided. The foregoing applies not only to claims under the express terms of this Lease, but also to claims of any kind whatsoever arising from the relationship between the Parties or any rights and obligations they may have relating to the property, the Lease, or anything related to either.

20.   Force Majeure:  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required in this Lease by reason of strikes, lockouts, labor troubles, inability to procure materials, scarcity of labor or materials for any reason, failure of power, restrictive governmental laws or regulations, governmental delays, fire, riots, insurrection, war, weather-related delays, including normal extended periods of rain or snow, or any other reason of a like nature beyond Landlord's reasonable control and not the fault of the Landlord in performing work or doing acts required under the terms of this Lease, then performance of such act shall be excused for the period of delay and the period for performance of any such act shall be extended for a period equivalent to the period of such delay.  If Landlord is delayed as provided herein during the Lease Term, Landlord shall not be liable to Tenant for any losses or damages resulting therefrom.   Unless otherwise specifically stated in this Lease to the contrary, the provisions of this Article shall not operate to excuse Tenant from the prompt payment of Rent, Utilities, or any other payments required by the terms of this Lease.

21.   Entry by Landlord:  Landlord reserves, and shall at any and all reasonable times have, the right to enter the Premises to inspect the same, to submit said Premises to lease or sale, to repair the Premises and any portion of the Shopping Center of which the Premises are a part that Landlord may deem necessary or desirable, without abatement of Rent, except where Landlord has been negligent, reckless or has committed an intentional act of misconduct, and may, for the purpose, erect scaffolding and other necessary structures where reasonably required by the character of the work to be performed, always providing that the business of the Tenant shall not be interfered with unreasonably. Tenant hereby waives any claim for damages or for any injury or inconvenience to or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby, except where Landlord is negligent, reckless or has committed an intentional act of misconduct.  For each of the aforesaid purposes, Landlord shall at all times have the right to use any and all means which Landlord may deem proper to open said doors in an emergency, in order to obtain entry to the Premises without liability to Tenant except for any failure to exercise due care for Tenant's property and any entry to the Premises obtained by Landlord by any of said means, or otherwise, shall not under any circumstances be construed or deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an eviction of Tenant from the Premises or any portion thereof.

22.   Default by Landlord:  Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event

Landlord's initials _____   Tenant's initials _____

later than thirty (30) days after written notice by Tenant to Landlord and to the holder of any first mortgage or deed of trust covering the Premises whose name and address shall have theretofore been furnished to Tenant in writing, specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance, then Landlord shall not be in default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion. In no event shall Tenant have the right to terminate this Lease or delay any obligations under this Lease including, but not limited to, Minimum Rent, Utilities, and other charges payable hereunder as a result of Landlord's default and Tenant's remedies shall be limited to damages and/or an injunction.

23.    <u>General Provisions</u>:

a.    <u>Valid reasons for the Landlord's Withholding of Consent</u>. Landlord may validly withhold consent in connection with any provision of this Lease, including but not limited to: (a) Landlord's mortgagee disapproves of such action; (b) the proposed action violates any Reciprocal Easement Operating Agreements governing the Premises; (c) impairs the commercial viability of the Premises; (d) interferes with or violates other tenants' rights, including Exclusives granted; or (e) adversely impacts the Shopping Center or the reasonable financial and/or commercial expectations of the Landlord in operating the Shopping Center. Preconditions to Tenant asking for any such consent are that Tenant has no existing or pending default under the Lease, the Tenant has delivered estoppel certificates and copies of all relevant documents concerning such request to Landlord and Tenant agrees to pay any expenses incurred by Landlord in connection with any such consent, including legal costs and reasonable attorneys' fees. The Landlord's consent to anything is not a representation or warranty that the matter consented to complies with law or will be appropriate for the Tenant's needs. In connection with any such conditions that must be satisfied for Tenant to request and secure any such consent, Tenant shall be required to cause said conditions to remain satisfied for the balance of the Lease Term after such consent has been granted. If it is later determined that the Landlord's reason for denying consent was not "reasonable," the only remedy of Tenant shall be specific performance by the Landlord and not monetary damages.

b.    <u>Waiver.</u> The waiver by Landlord of any term, covenant or condition set forth in this Lease and the subsequent acceptance of Rent hereunder by Landlord shall not be deemed to be a waiver of any preceding default by Tenant of any term, covenant or condition of this Lease, other than the failure of the Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of such preceding default at the time of the acceptance of such Rent.

c.    <u>Marginal Headings.</u> The marginal headings and article titles to the articles of this Lease are not a part of the Lease and shall have no effect upon the construction or

Landlord's initials _____        Tenant's initials _____

interpretation of any part hereof.

    d.    <u>Time.</u>  Time is of the essence of this Lease and each and all of its provisions in which performance is a factor.

    e.    <u>Successors and Assigns.</u>  The covenants and conditions contained in this Lease, subject to the provisions as to assignment, apply and bind the heirs, successors, executors, administrators and assigns of the Parties hereto.

    f.    <u>Recordation.</u>  Neither Landlord nor Tenant shall record this Lease, but a short form memorandum hereof, which shall exclude financial information of the Parties hereto, may be recorded at the request of Landlord. Any such memorandum of lease shall be subject to and subordinate to any existing or future mortgage of the Landlord on the Premises. If the Tenant obtains a memorandum of lease, then the Tenant shall covenant to execute and deliver to Landlord a termination of memorandum of lease in recordable form if the lease terminates early.

    g.    <u>Inability to Perform.</u>  This Lease and the obligations of the Tenant hereunder shall not be affected or impaired because the Landlord is unable to fulfill any of its obligations hereunder or is delayed in doing so, if such inability or delay is caused by reason of strike, labor troubles, acts of God, or any other cause beyond the reasonable control of the Landlord.

    h.    <u>Cumulative Remedies.</u>  No remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity.

    i.    <u>Choice of Law.</u>  This Lease shall be governed by the laws of the State of Ohio. Any lawsuit between or against the Parties to this Lease shall be brought within the Lorain County Court of Common Pleas in the State of Ohio or within the Federal District Court, Northern District of Ohio.

    j.    <u>Attorneys' Fees.</u>  In the event of any action or proceeding brought by either Party against the other under this Lease, the prevailing Party shall be entitled to recover the fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable as attorneys' fees. In addition, should it be necessary for Landlord to employ legal counsel to enforce any of the provisions contained in this Lease, Tenant agrees to pay all attorneys' fees and court costs reasonably incurred.

**Landlord's initials** _____   **Tenant's initials** _____

k.    <u>Sale of Premises by Landlord.</u>  In the event of any sale of the Premises by the Landlord, Landlord shall be and is hereby entirely free and relieved of all liability under any and all of the covenants and obligations in or derived from this Lease arising out of any act, occurrence or omission occurring after the consummation of such sale; provided that this Lease is assumed by Owner, and the purchaser, at such sale or any subsequent sale of the Premises shall be deemed, without any further agreement between the Parties or their successors in interest or between the Parties and any such purchaser, to have assumed and agreed to carry out any and all of the covenants and obligations of the Landlord under this Lease.

l.    <u>Subordination, Attornment.</u>  Upon request of the Landlord, Tenant will, in writing, subordinate its rights hereunder to the lien of any mortgage or deed of trust, to any bank, insurance company or other lending institution, now or hereafter in force against the Premises, and to all advances made or hereafter to be made upon the security thereof. Upon request and at no additional cost, Tenant will promptly provide Landlord or such lender with signed estoppel certificates, with copies of the Lease and all amendments thereto attached, and such other information as lender might reasonably request. The Tenant will execute the form of Subordination/Non-Disturbance/Attornment Agreement required by Landlord's mortgagee or lender and return such executed form as directed within five (5) days of receipt thereof. In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any mortgage or deed of trust made by the Landlord covering the Premises, the Tenant shall attorn to the purchaser upon any such foreclosure or sale of, and recognizing such purchaser as the Landlord under this Lease. Any mortgagee can unilaterally subordinate its mortgage to the lease, in whole or in part, and the Tenant shall be bound by such subordination, whether or not the Tenant has been notified of it.

m.    <u>Tenant's Statements.</u>  Intentionally deleted.

n.    <u>Landlord's Manager.</u> Landlord may elect, from time to time, to appoint a Manager of the Shopping Center. Said Manager and its employees and agents are authorized to act, in all circumstances, on behalf of Landlord hereunder, but shall not, under any circumstances, have any liability on its own behalf or on behalf of Landlord in connection with the Shopping Center, the Lease or the Premises or otherwise under any provision of this Lease.

24.    <u>Brokers:</u>  Tenant represents and warrants that there are no claims for brokers' commissions or finders' fees in connection with its execution of this Lease other than Joe Khouri of Sky Realty brokerage whose fee shall be paid by Tenant pursuant to a separate agreement, and Tenant agrees to defend, indemnify, save and hold Landlord, its lenders, heirs, successors and assigns harmless from any liability that may arise from such claims, including reasonable attorneys' fees. This indemnity shall survive the expiration

Landlord's initials _____    Tenant's initials _____

or earlier termination of this Lease.

25.     Prior Agreements:  This Lease contains all of the agreements of the Parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understandings pertaining to any such matters shall be effective for any purpose.  No provision of this Lease may be amended or added to except by an agreement in writing signed by the Parties hereto.  This Lease shall not be effective or binding on any Party until fully executed by all Parties hereto.

27.     Partial Invalidity:  Any provision of this Lease which shall prove to be invalid, void, or illegal shall in no way affect, impair, or invalidate any other provision of this Lease or remedies at law or in equity.

28.     Authority:   Each individual executing this Lease on behalf of their respective limited liability company hereby represents and warrants that they are duly authorized to execute and deliver this Lease on behalf of their respective limited liability company, in accordance with the bylaws or operating agreements of said limited liability companies, and that this Lease is binding upon said limited liability companies.

29.     Integration Clause:  This contract constitutes the entire agreement and final expression of the Parties, Tenant and Landlord, with respect to such terms as included herein. Any prior statements, advertising, print or internet materials, agreements or understandings, written or otherwise, of the Parties are deemed merged into this document and incorporated herein. Execution of this Lease acknowledges full satisfaction or waiver of any condition precedent relating to this Lease, unless otherwise noted.

IN WITNESS WHEREOF, the parties hereby set their hands this _25_ th day of _APRIL_ , 2011.


**TENANT**

CDI Media Group, LLC
*an Ohio limited liability company*

By: _____

Name Printed: _Igor Abramovsky_

Its: _CEO_

Date: _04/19/2011_

**LANDLORD**

Mallview Plaza Company, Ltd.
*an Ohio limited liability company*

By:   Carnegie Management and
Development Corporation, its
Manager

By: _____
Rustom R. Khouri, President

Landlord's initials _____   Tenant's initials _____

Date: _April 25, 2011_

## TENANT ACKNOWLEDGMENT

STATE OF OHIO                    )
                                 ) ss:
COUNTY OF _Cuyahoga_             )

BEFORE ME, a Notary Public, in and for said county and state, personally appeared _Igor Abramovsky_, the _CEO_ of CDI Media Group, LLC, an Ohio limited liability company, who executed the foregoing instrument, who acknowledged that he did sign the foregoing instrument for and on behalf of said company, being thereunto duly authorized and that the same is his free act and deed individually and as such officer and the free act and deed of said limited liability company.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Westlake_, _OH_, this _19_ day of _April_, 2011.

_Katherine J. Baginski_
                              Notary Public        KATHERINE J. BAGINSKI
                                                   NOTARY PUBLIC, STATE OF OHIO
                                                   Recorded in Cuyahoga County
                                                   My Comm. Expires Feb, 6, 2013

## LANDLORD ACKNOWLEDGMENT

STATE OF OHIO                    )
                                 ) ss:
COUNTY OF CUYAHOGA               )

BEFORE ME, a Notary Public, in and for said county and state, personally appeared Rustom R. Khouri, the President of Carnegie Management and Development Corporation, the Manager of Mallview Plaza Company, Ltd., the limited liability company which executed the foregoing instrument, who acknowledged that he did sign the foregoing instrument for and on behalf of said limited liability company, being thereunto duly authorized and that the same is his free act and deed individually and as such officer and the free act and deed of said limited liability company.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at Westlake, Ohio, this _25th_ day of _April_, 2011.

Landlord's initials _____        Tenant's initials _____

_____
Notary Public

STEVEN M. EDELMAN
NOTARY PUBLIC • STATE OF OHIO
Recorded in Cuyahoga County
My commission expires Jan. 22, 2013

Landlord's initials _____   Tenant's initials _____

# EXHIBIT "A"

# FLOOR PLAN



## EXHIBIT "B"
## MALLVIEW PLAZA SHOPPING CENTER
## BUILDING RULES AND REGULATIONS

1.  All glass shall be cleaned at intervals sufficient to maintain the same in a clean condition.

2.  All lamps shall be inspected at regular intervals and all lamps shall be promptly replaced when no longer properly functioning.

3.  All tenants shall use their best efforts to require their respective employees, invitees and licensees to comply with all regulations with respect to the Common Areas, including, but not by way of limitation, posted speed limits, directional markings and parking stall markings.

4.  All surfaces which are painted or otherwise finished shall be cleaned at regular intervals and repainted or otherwise refinished when necessary.

5.  During any Tenant construction and at any time when the store is closed due to renovation or redecorating, the Tenant shall keep the windows of the store covered on the inside with a non-transparent single-colored or decorative paper or with visqueen or other suitable opaque material in a manner, that prevents visibility from the exterior, and shall continuously keep the Premises, its exterior and the Common Area free and clear of trash, refuse, mud and construction and workers' materials and debris and the areas swept in a broom-clean condition. If Tenant fails to do so after written notice from Landlord, then Landlord shall be permitted, but not obligated, after a reasonable time for Tenant to correct, to perform such actions and all costs thereof shall be immediately reimbursed by Tenant. In addition, Tenants may be subject to penalties, including the right of Landlord to collect additional rent over the Base Rent at the rate of one-thirtieth $(1/30^{th})$ of the monthly base rental amount for each day that such condition remains uncorrected.

6.  All of the Common Area shall be maintained free from any obstructions not required, including the prohibition of the sale or display of merchandise or services outside the exterior walls of buildings within the Shopping Center, except in areas specifically designed within the Shopping Center for such purposes or promotional or special events by Landlord, unless the Tenant's lease specifically allows for pre-approved outdoor sales.

7.  All tenants shall have their window displays and exterior signs installed and maintained in accordance with lease requirements and adequately illuminated continuously during such hours as the Shopping Center shall be open for business to the general public as determined by Landlord.

Landlord's initials _____    Tenant's initials _____

8.  All floor area, including vestibules, entrances and returns, doors, fixtures, windows and plate glass shall be maintained in a safe, neat and clean condition.

9.  All trash, refuse and waste materials shall be regularly removed from the Premises of each occupant of the Shopping Center and, until removal, shall be stored; (a) in adequate containers, which such containers shall be located so as not to be visible to the general public shopping in the Shopping Center, and (b) so as not to constitute any health or fire hazard or nuisance to any occupant. No burning of trash, refuse or waste materials shall occur. Trash haulers will not remove old furniture, building materials, hot water heaters, tires, etc. These items must be disposed of at tenant's own expense.

10. No portion of the Shopping Center shall be used for lodging purposes.

11. Neither sidewalks nor walkways shall be used to display, store or place any merchandise, equipment or devices, except for promotional or special events as specifically permitted by Landlord in advance.

12. No advertising or other medium or device shall be utilized which can be heard or experienced outside of the Premises, including, without limiting the generality of the foregoing, flashing lights, loud speakers, searchlights, phonographs, radios, or televisions except for promotional or special events as specifically permitted by Landlord in advance.

13. No use shall be made of the Shopping Center or any portion or portions thereof which would; (a) violate any law, ordinance or regulation; (b) constitute a nuisance; (c) constitute an extra hazardous use; or (d) violate, suspend or void any policy or policies or insurance on the Shopping Center or any part thereof.

14. No person shall use any roadway or walkway, except as means of egress from or ingress to any premises and parking areas within the Shopping Center, or adjacent public streets. Such use shall be in an orderly manner, in accordance with the directional or other signs or guides. Roadways shall not be used at a speed in excess of twenty (20) miles per hour and shall not be used for parking or stopping, except for the immediate loading or unloading of passengers. No walkway shall be used for other than pedestrian travel except as set forth in the Lease.

15. No person shall use any parking areas, except for the temporary parking of motor vehicles, during the period of time such persons or the occupants of such vehicles are customers or business invitees of the retail establishments within the Shopping Center. All motor vehicles shall be parked in an orderly manner within the painted lines defining the individual parking places. During peak periods of business activity, limitations may be imposed, as determined by the Landlord, as to the length of time for parking use. Such limitations may be made in specified areas.

16.    No person shall use any utility area, truck facility or other area reserved for use in connection with the conduct of business, except for the specific purpose for which permission to use such areas is given.

17.    No employee or any business in the Shopping Center shall use any area for motor vehicle parking, except the area or areas specifically designated for employee parking for the particular period of time such use is to be made. No tenant shall designate any area for employee parking, except such area or areas as designated in writing by Landlord. No tenant shall attempt to self-designate parking areas or spaces for specific uses.

18.    No person, without the prior written consent of Landlord, shall do any of the following in or on any part of the Common Areas:

(a)    Vend, peddle or solicit order for sale or distribution of any merchandise, device, service, periodical, book, pamphlet or other matter whatsoever.

(b)    Exhibit any sign, placard, banner, notice or other written material.

(c)    Distribute any circular, booklet, survey, petition, handbill, placard or other material.

(d)    Solicit membership in any organization, group or association or contribution for any purpose.

(e)    Parade, rally, patrol, picket, demonstrate or engage in any conduct that might tend to interfere with or impede the use of any of the Common Areas by any permittees, create a disturbance, attract attention, or harass, annoy, disparage or be detrimental to the interest of any of the retail establishments within the Shopping Center.

(f)    Use any part of the Common Areas for any purpose when none of the retail establishments within the Shopping Center are open for business or employment.

(g)    Throw, discard or deposit any paper, glass or extraneous matter of any kind, except in designated receptacles, or create litter or hazards of any kind.

(h)    Use any soundmaking device of any kind or create or produce in any manner noise or sound that is annoying, unpleasant or distasteful to any permittee.

(i)    Deface, damage or demolish any sign, light (standard or fixture), landscaping material or other improvement within the Shopping Center or the property of any permittee situated within the Shopping Center.

19.    Tenant shall at all times use its best efforts to secure and monitor the open-air, outside sales area to prohibit trespassing and/or injury in said area. Tenant shall install necessary security cameras or similar devices appropriate for securing and monitoring said area. Tenant shall indemnify and hold harmless Landlord against and from any and all claims arising from Tenant's use of the open-air, outside sales area.

The listing of specific items as being prohibited is not intended to be exclusive, but to indicate in general the manner in which the right to use the Common Areas solely as a means of access and convenience in shopping at the retail establishments in the Shopping Center is limited and controlled by the Landlord.

Landlord shall have the right to remove or exclude from or to restrain (or take legal action to do so) any unauthorized person from, or from coming upon, the Shopping Center or any portion thereof, and prohibit, abate and recover damages arising from any unauthorized act, whether or not such act is in express violation of the prohibitions listed above. In so acting, such party is not the agent of any other party or occupant of the Shopping Center, unless expressly authorized or directed to do so by such other party of occupant in writing.

Landlord's initials _____    Tenant's initials _____

# EXHIBIT "C"
## EXCLUSIVE USES

(e) (i) Landlord shall not operate, lease or permit any other store located in the Shopping Center, or on any property now or hereafter owned or leased by Landlord or any affiliated or related company of Landlord which is contiguous or adjacent to the Shopping Center (or would be except for an intervening road, street or alley), to be used for the sale of items carried in a modern toy store, including without limitation toys; outdoor play equipment; wheel goods; layettes; infant, children's and juvenile food, health and beauty aids, furniture, furnishings, clothing, apparel and accessories and sporting goods; candy; infant, children's and juvenile books and records; family and adult games; video and electronic games and game equipment; or computers and accompanying software used primarily for game purposes.

(ii) Notwithstanding the provisions of subparagraph (i) hereof, the restrictions set forth therein shall not apply to a store covering in excess of 18,000 square feet of Gross Leasable Floor Area if such sale is "incidental" to the business of the tenant or occupant therein (it being agreed that for purposes of this subparagraph (ii), "incidental" shall mean a use for the sale and/or display of such items, which occupies, in the aggregate as to all such items, not in excess of the lesser of (1) 1,500 square feet of Gross Leasable Floor Area of such store, or (2) fifteen percent (15%) of the Gross Leasable Floor Area of such store). Notwithstanding anything contained herein, in no event shall any store in the Shopping Center engage in the sale and/or display of video and electronic games and game equipment and/or computers and accompanying software used primarily for game purposes which occupy, in the aggregate as to all such items, in excess of 100 square feet of Gross Leasable Floor Area.

(f) Landlord shall not hereafter operate, lease, rent or permit any other premises in the Shopping Center or on any property now or hereafter owned or leased by Landlord or any affiliated or related company of Landlord which is contiguous or adjacent to the Shopping Center (or would be except for an intervening road, street or alley), to be used or occupied as a theater of any kind; a sports or other entertainment viewing facility (whether live, film, audio/visual or video); an automobile body and fender shop; an automobile repairs shop

(mechanical or otherwise) or any business servicing motor vehicles, including, without limitation, any quick lube oil change services, tire centers, or any business selling gasoline or diesel fuel at retail or wholesale; a restaurant serving meals primarily for on premises consumption; a catering or banquet hall; a fast food restaurant incorporating a coin or token operated amusement room; a so-called "head shop"; a bowling alley; a recreational and/or fitness facility, whether providing exercise, recreational, educational or fitness activities, or any combination of the foregoing; a billiard or bingo parlor or any establishment conducting games of chance; a sales office, showroom or storage facility for boats, automobiles or other vehicles; an establishment serving alcoholic beverages for on premises consumption; a pawn shop; a dry cleaning or laundry plant (except for an establishment which receives and dispenses items for launder and/or dry cleaning but the processing of such items is done elsewhere); a funeral parlor; a massage parlor; a discotheque or dancehall; a recycling facility or stockyard; a health spa, exercise facility, or similar type business; a recreational and/or fitness facility, whether providing exercise, recreational, educational or fitness activities, or any combination of the foregoing; a skating rink; a car wash; a health clinic or other medical rehabilitative facility; an offtrack betting establishment; a house of worship; an amusement arcade or game room; a business selling so-called "second hand goods"; a junkyard; a so-called "flea market"; for office (excluding office space used in connection with and ancillary to a permitted retail use hereunder); industrial; governmental or other public use; factory; manufacturing; warehouse (excluding any warehousing incidental to the operation of permitted retail uses hereunder); hotel/motel; or residential purposes; or as a training or educational facility which for purposes hereof shall mean a beauty school, barber school, reading room, place of instruction, or any other activity, facility, school or program catering primarily to students or trainees as opposed to shoppers.

(g)   Tenant shall have and enjoy, during the Lease Term, quiet and undisturbed possession and use of the Demised Premises and all appurtenances thereto, as contemplated in this Lease.

Landlord's initials _____   Tenant's initials _____

(h)  All utility lines servicing the Demised Premises and remainder of the Shopping Center, and the sanitary and storm sewer facilities and lines, are and shall be sufficient in size and capacity to meet the collective requirements of Tenant and the other users thereof.

(i)  Landlord shall not operate, lease, rent or permit any other premises in the Shopping Center or on any property now or hereafter owned or leased by Landlord or any affiliated or related company of Landlord which is contiguous or adjacent to the Shopping Center (or would be except for an intervening road, street or alley), to be used or occupied as an adult book store or a store selling or exhibiting pornographic materials.  As used herein, "an adult book store or store selling or exhibiting pornographic materials" shall include, without limitation, a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational, or a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto.

(j)  Landlord shall not operate, lease, rent or permit any other premises in the Shopping Center or on any property now or hereafter owned or leased by Landlord or any affiliated or related company of Landlord which is contiguous or adjacent to the Shopping Center (or would be except for an intervening road, street or alley), to be used or occupied for any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse.

(k)  To the best of Landlord's knowledge, there are no Hazardous Materials extant on the Land or any portion thereof.

Landlord's initials _____    Tenant's initials _____

(1) Landlord possesses the financial resources required to perform Landlord's Work and otherwise comply fully with the terms and conditions of this Lease.

(m) All mortgages, deeds of trust and other liens affecting the real property covered by the REA (hereinafter defined) or any portion thereof are subordinate of record to the REA.

Section 14.02. (a) Reference is made to that certain Reciprocal Easement Agreement dated June 9 , 1977 established by The Lane Company,  as amended by that certain Amendment to Reciprocal Easement Agreement dated August 20, 1980 between The Lane Company and The Stambaugh-Thompson Realty Company, and as further amended by that certain Second Amendment to the Reciprocal Easement Agreement dated December 29, 1995 between Town and Country, A California Limited Partnership (as successor in interest to The Lane Company) and Mallview Plaza Company, Ltd. (as successor in interest to The Stambaugh-Thompson Realty Company) affecting the Shopping Center, a full and complete copy of which is annexed hereto as Exhibit Q and made a part hereof (the "REA"). Landlord represents that it has succeeded to all of the right, title and interest of Mallview Plaza Company, Ltd. under the REA. Any change or modification to the REA shall be subject to Tenant's prior written consent. Landlord, at its cost and expense, shall take all steps necessary to ensure that all future mortgages and related liens are subordinated of record to the REA.

(b) Landlord shall during the Lease Term (i) perform all of the terms, covenants and conditions of the REA on Landlord's part to be performed, and (ii) defend, indemnify and hold harmless Tenant from and against any and all claims, demands, causes of action, suits, damages, liabilities and expenses of any nature arising out of or in connection with the enforcement of or a claimed breach by Landlord of any covenant, term, condition or provision of the REA.

(c) Whenever pursuant to the REA, consent shall be required by or requested from Landlord, or an election is to be made by Landlord under the REA which consent or election would adversely affect Tenant and its use and enjoyment of the Demised Premises pursuant to this Lease in more than an immaterial

Landlord's initials _____    Tenant's initials _____